# EXHIBIT 1

## Walthery and Twinney Well Sampling Results
## (NJDEP-SITE220-026052; 026053; 026055; 026057)

## June 23, 1992 Letter from William Mowell to John Horan
## (NJ-WG012572-012577)

## Village of Ridgewood Municipal Well Sampling Results
## (SH-WK-RIDGEWOOD-009195-009198)



**ACCUTEST**®
L A B O R A T O R I E S

**578 LIVINGSTON AVENUE • NORTH BRUNSWICK, N.J. 08902 • (201) 249-0100**

TO:    Handex Corporation
       703 Ginese Drive
       Morganville, New Jersey    07751

       ATTN:  Greg Reuter

DATE:            7-27-87

JOB No.:         87-3394

P. O. No.:

SAMPLE RECEIVED: 7-15-87

| ANALYSIS REPORT | | | | |
|---|---|---|---|---|
| Sample No. | Date Collected | Time Collected | Collected By | Point of Collection |
| 7080 | 7-14-87 | 1015 | KM | Ridgewood Shell, Rte 17 S, Walthery Well, Water sample |
|  |  |  |  |  |
|  |  |  |  |  |

EPA APPROVED, NJDEP CERTIFIED

Vincent J. Pugliese
ENV. LAB. MGR.



**ACCUTEST®**
L A B O R A T O R I E S
578 LIVINGSTON AVENUE • NORTH BRUNSWICK NJ 08902 • (201) 249-0100

ANALYSIS REPORT FOR VOLATILE ORGANICS BY GC/MS

```
CLIENT    : HANDEX/SHELL WALTHERY          METHOD        : EPA 624
SAMPLE ID.: WATER FOR VOA #7080            ANALYSIS DATE: 07/20/87
DATA FILE : >A5524                         ANALYST       : J.M.
```

| | COMPOUND | RESULT (UG/L) | MDL (UG/L) |
|---|---|---|---|
| 1) | ACROLEIN | ND | 100 |
| 2) | ACRYLONITRILE | ND | 100 |
| 3) | BENZENE | ND | 5.0 |
| 4) | BROMOFORM | ND | 5.0 |
| 5) | BROMODICHLOROMETHANE | ND | 5.0 |
| 6) | BROMOMETHANE | ND | 5.0 |
| 7) | CARBON TETRACHLORIDE | ND | 5.0 |
| 8) | CHLOROBENZENE | ND | 5.0 |
| 9) | CHLOROETHANE | ND | 5.0 |
| 10) | 2-CHLOROETHYL VINYL ETHER | ND | 5.0 |
| 11) | CHLOROFORM | ND | 5.0 |
| 12) | CHLOROMETHANE | ND | 5.0 |
| 13) | cis-1,3-DICHLOROPROPENE | ND | 5.0 |
| 14) | DIBROMOCHLOROMETHANE | ND | 5.0 |
| 15) | 1,2-DICHLOROBENZENE | ND | 5.0 |
| 16) | 1,3-DICHLOROBENZENE | ND | 5.0 |
| 17) | 1,4-DICHLOROBENZENE | ND | 5.0 |
| 18) | 1,1-DICHLOROETHANE | ND | 5.0 |
| 19) | 1,2-DICHLOROETHANE | ND | 5.0 |
| 20) | 1,1-DICHLOROETHYLENE | ND | 5.0 |
| 21) | trans-1,2-DICHLOROETHYLENE | ND | 5.0 |
| 22) | trans-1,3-DICHLOROPROPENE | ND | 5.0 |
| 23) | 1,2-DICHLOROPROPANE | ND | 5.0 |
| 24) | ETHYLBENZENE | ND | 5.0 |
| 25) | METHYLENE CHLORIDE | ND | 5.0 |
| 26) | 1,1,2,2-TETRACHLOROETHANE | ND | 5.0 |
| 27) | TETRACHLOROETHYLENE | 40 | 5.0 |
| 28) | TOLUENE | 2.8 JB | 5.0 |
| 29) | 1,1,1-TRICHLOROETHANE | 11 | 5.0 |
| 30) | 1,1,2-TRICHLOROETHANE | ND | 5.0 |
| 31) | TRICHLOROETHYLENE | ND | 5.0 |
| 32) | TRICHLOROFLUOROMETHANE | ND | 5.0 |
| 33) | VINYL CHLORIDE | ND | 5.0 |
| 34) | m-XYLENE | ND | 5.0 |
| 35) | p,o-XYLENE | ND | 5.0 |

ADDITIONAL COMPOUNDS

| | | | |
|---|---|---|---|
| 36) | 1,2-DIBROMOMETHANE (EDB) | ND | 5.0 |
| 37) | DI-ISOPROPYL ETHER | 1.7 J | 5.0 |
| 38) | METHANOL (BY GC/FID) | ND | 1000 |
| 39) | METHYL TERT BUTYL ETHER | 84 | 5.0 |
| 40) | TERTIARY BUTYL ALCOHOL | ND | 5.0 |

```
J  =BELOW METHOD DETECTION LIMIT       B=ANALYTE WAS ALSO FOUND IN
MDL=METHOD DETECTION LIMIT               METHOD BLANK INDICATING
ND =NON DETECTABLE                       POSSIBLE/PROBABLE LAB
```



# ACCUTEST®
## L A B O R A T O R I E S

**578 LIVINGSTON AVENUE • NORTH BRUNSWICK, N.J. 08902 • (201) 249-0100**

TO:  Handex Corporation
703 Ginesi Drive
Morganville, New Jersey   07751

ATTN:  Greg Reuter

DATE:  **8-7-87**

JOB No.:  **87-3524**

P. O. No.:

SAMPLE RECEIVED:  **7-22-87**

| Sample No. | Date Collected | Time Collected | Collected By | Point of Collection |
|---|---|---|---|---|
| **ANALYSIS REPORT** | | | | |
| 7328 | 7-21-87 | 1225 | KM | Shell S/S, Ridgewood, Rte 17S, Twinny Well, |
| | | | | water sample |
| | | | | |

EPA APPROVED, NJDEP CERTIFIED

Vincent J. Pugliese
ENV. LAB. MGR.



**ACCUTEST®**
L A B O R A T O R I E S
578 LIVINGSTON AVENUE • NORTH BRUNSWICK, NJ 08902 • (201) 249-0100

## ANALYSIS REPORT FOR VOLATILE ORGANICS BY GC/MS

```
CLIENT    : HANDEX TWINNY WELL          METHOD        : EPA 624
SAMPLE ID.: WATER FOR VOA #7328         ANALYSIS DATE : 07/28/87
DATA FILE : >B3312                      ANALYST       : CJD
```

| | COMPOUND | RESULT (UG/L) | MDL (UG/L) |
|---|---|---|---|
| 1) | ACROLEIN | ND | 100 |
| 2) | ACRYLONITRILE | ND | 100 |
| 3) | BENZENE | ND | 5.0 |
| 4) | BROMOFORM | ND | 5.0 |
| 5) | BROMODICHLOROMETHANE | ND | 5.0 |
| 6) | BROMOMETHANE | ND | 5.0 |
| 7) | CARBON TETRACHLORIDE | ND | 5.0 |
| 8) | CHLOROBENZENE | ND | 5.0 |
| 9) | CHLOROETHANE | ND | 5.0 |
| 10) | 2-CHLOROETHYL VINYL ETHER | ND | 5.0 |
| 11) | CHLOROFORM | ND | 5.0 |
| 12) | CHLOROMETHANE | ND | 5.0 |
| 13) | cis-1,3-DICHLOROPROPENE | ND | 5.0 |
| 14) | DIBROMOCHLOROMETHANE | ND | 5.0 |
| 15) | 1,2-DICHLOROBENZENE | ND | 5.0 |
| 16) | 1,3-DICHLOROBENZENE | ND | 5.0 |
| 17) | 1,4-DICHLOROBENZENE | ND | 5.0 |
| 18) | 1,1-DICHLOROETHANE | ND | 5.0 |
| 19) | 1,2-DICHLOROETHANE | ND | 5.0 |
| 20) | 1,1-DICHLOROETHYLENE | ND | 5.0 |
| 21) | trans-1,2-DICHLOROETHYLENE | 3.2 J | 5.0 |
| 22) | trans-1,3-DICHLOROPROPENE | ND | 5.0 |
| 23) | 1,2-DICHLOROPROPANE | ND | 5.0 |
| 24) | ETHYLBENZENE | ND | 5.0 |
| 25) | METHYLENE CHLORIDE | 4.2 JB | 5.0 |
| 26) | 1,1,2,2-TETRACHLOROETHANE | ND | 5.0 |
| 27) | TETRACHLOROETHYLENE | 20 | 5.0 |
| 28) | TOLUENE | 4.0 JB | 5.0 |
| 29) | 1,1,1-TRICHLOROETHANE | ND | 5.0 |
| 30) | 1,1,2-TRICHLOROETHANE | ND | 5.0 |
| 31) | TRICHLOROETHYLENE | 2.3 J | 5.0 |
| 32) | TRICHLOROFLUOROMETHANE | ND | 5.0 |
| 33) | VINYL CHLORIDE | ND | 5.0 |
| 34) | m-XYLENE | ND | 5.0 |
| 35) | p,o-XYLENE | ND | 5.0 |

### ADDITIONAL COMPOUNDS

| | | | |
|---|---|---|---|
| 36) | 1,2-DIBROMOMETHANE (EDB) | ND | 5.0 |
| 37) | DI-ISOPROPYL ETHER | ND | 5.0 |
| 38) | METHANOL (BY GC/FID) | ND | 1000 |
| 39) | METHYL TERT BUTYL ETHER | 145 | 5.0 |
| 40) | TERTIARY BUTYL ALCOHOL (BY GC/FID) | ND | 50 |

```
J  =BELOW METHOD DETECTION LIMIT         B=ANALYTE WAS ALSO FOUND IN
MDL=METHOD DETECTION LIMIT                 METHOD BLANK INDICATING
ND =NON DETECTABLE                         POSSIBLE/PROBABLE LAB
```

# VILLAGE OF RIDGEWOOD
### BERGEN COUNTY, NEW JERSEY



June 23, 1992

John D. Horan, Esq.
Stoldt & Horan
Continental Plaza
401 Hackensack Avenue
Hackensack, NJ 07601

Re: Preliminary Letter
    Twinney and Walthery Water Supply Wells
    Gasoline Contamination and Treatment

Dear Mr. Horan:

You have asked for my opinion to qualify and quantify the costs associated with the planning, design, construction, operation, and maintenance of the Twinney Treatment Facility (which treats both the Twinney and Walthery Wells). More specifically, to define the costs associated with the extra degree of treatment required to remove the gasoline related compounds from the potable water supplied by the Twinney and Walthery water supply wells. The costs presented herein are a determination of the cost to the Village of Ridgewood as a result of the contamination of two of its groundwater supply wells with gasoline related compounds.

## BACKGROUND

The Village of Ridgewood provides potable water to approximately 60,000 persons in Ridgewood, Glen Rock, Wyckoff, and Midland Park. On an average day about seven million gallons of water is pumped from 58 wells which are located in the four towns served. Over the past several years both the Federal and State regulatory agencies have been developing more stringent drinking water standards that have impacted the Village's system and initiated a program to bring the system into compliance with these standards.

The Village retained the consulting firm of Havens and Emerson, Inc. to conduct a study of the water system to determine the impact of the regulations and to develop a plan for meeting these regulations. This study resulted in a document titled the SAFE DRINKING WATER ACT IMPACT ANALYSIS which was completed in April 1990. This report presented a plan for the Village to follow in order to bring the system into compliance with the drinking water regulations.

The report specifically discusses the situation of required treatment for the Twinney and Walthery wells, which like many of

RDG-VILL-0031

SH-NJ-WG012572

the other wells in the system are impacted by Volatile Organic
Contaminants (VOCs); more specifically, many of the wells are
impacted by Tetrachloroethylene (PCE) and Trichloroethylene (TCE).
Additionally, the Twinney and Walthery wells are also contaminated
with levels of gasoline related compounds which are also volatile
and organic by nature. (Throughout the remainder of this letter PCE
and TCE will be referred to as VOCs while the gasoline related
compounds will be referred to as such.) The VOCs and the gasoline
related products are both able to be removed from the water by
aerating the water (passing air by the water as it cascades down
over packing inside of an air stripping column). However, the VOCs
that are present in the Twinney and Walthery wells are able to be
removed from the water far more easily than the gasoline related
compounds.

The overall treatment plan for the water system included the
construction of a treatment facility at the location of the Twinney
well with an interconnecting pipeline to bring the water from the
Walthery well to the Twinney location for treatment and pumping
into the water system. This was determined to be the most cost
effective solution to the treatment of these two wells and allows
the two wells contaminated with gasoline related compounds to be
treated at the same location. The Twinney and Walthery wells were
ranked with a high priority in the overall treatment plan because
of their level of contamination and the high production rate of the
Twinney well. Therefore, the Twinney treatment facility was slated
to be one of three facilities to be designed and constructed under
Phase 1, Stage A (Phase 1A) of the overall system treatment plan.
Phase 1 was divided into two stages to account for the immediate
need to construct treatment facilities for the associated wells
that would allow those wells to be put back into service. Design of
the Phase 1A facilities was begun in the summer of 1990 and
completed by the fall. Bidding, award, and construction followed
and were completed by late 1991. Three interconnecting pipelines
were also designed under Phase 1A but were bid, awarded, and are
being constructed under a separate construction contract.

COSTS

Since the Twinney and Walthery wells would have required
treatment as a result of the levels of VOCs, the cost analysis
presented herein looks to quantify the extra cost associated with
providing a higher degree of treatment needed to remove the
gasoline related compounds from the water pumped from these wells.
The costs are broken down into categories that represent the lost
revenue to the Village as a result of the wells being out of
service and the portion of the costs associated with the design,
construction, operation, and maintenance of the Twinney treatment
facility; up and above the costs that would have been required to
only treat for the VOCs that are present.

The Twinney treatment facility was constructed in 1991 to allow
the Ridgewood Water Department to utilize the Twinney well to meet
peak summertime water demands and had been out of service since the

gasoline contamination was detected in the water pumped from the both wells in June 1987. The Walthery transmission main (pipeline) is part of a separate construction contract and is currently (spring 1992) being installed. This pipeline will allow the water pumped from the Walthery well to flow to the Twinney treatment facility for aeration treatment. The pipeline is comprised of two segments. The first portion of the pipeline utilizes an existing water distribution pipe that has been isolated from the water system to allow it to carry the untreated well water. The second portion of the pipeline is new and requires the installation of about 1000 feet of pipe. By utilizing the existing portion of pipe the Village is able to reduce the overall costs of providing treatment for the Walthery well. The Walthery well has also been out of service because of the presence of gasoline related compounds in June 1987.


LOST REVENUE

Since the wells have been out of service starting in June of 1987 the Ridgewood water system has faced water supply restrictions on two occasions. Both of these occasions occurred during peak summertime demand periods of 1988 and 1991. When extremely high water demands occur for an extended period of time officials have to make determinations of the water systems capabilities of meeting the demands. During 1988 officials at the State level determined that the drought conditions of that summer warranted the restriction of water usage through the State of New Jersey to compensate for the high demand and lack of available water. Ironically, since the Ridgewood system is a groundwater supply, these restrictions were not necessary for its system. However, the Ridgewood system had to comply with these restrictions. Thus, it is not felt that these restrictions were in any way attributable to any loss in revenue because of the gasoline contamination.

The dry conditions in northern New Jersey during the summer of 1991 however, caused Ridgewood officials to impose water usage restrictions from July 4 through September 1. These restrictions were brought about as a result of continued high demands, hot and dry weather, and the continued drop of water levels in the water supply wells. Had the Twinney and Walthery wells been able to supply the system, the imposition of these restrictions may have been able to be delayed. This would have allowed the system to sell more water and generate more revenue. Daily demands dropped an average of one million gallons per day (1 MGD) from June to July of 1991 and another three MGD in August. How much would the Twinney and Walthery wells have helped to deter the water usage restrictions? How much did the restrictions reduce the demand in the system and thus decrease the resultant

RDG-VILL-0033

SH-NJ-WG012574

revenue? The answers to these questions are not readily obtainable. Therefore, a simplified approach to the lost revenue has been taken as shown on Worksheet 1. The approach presented therein is a reasonable and objective way of calculating the lost revenue of the Water Department. The flowrate from the Twinney and Walthery wells, based on past operating conditions, was totalled and multiplied by the cost of water during the summer of 1991 to arrive at a cost to the Village of $48,240 for lost revenue.

DESIGN AND CONSTRUCTION

Since the Twinney treatment facility has been designed and constructed and the Walthery pipeline has been designed and is currently under construction, the associated costs of the design and construction of these facilities is quite well defined. The difficulty herein lies in trying to cull the costs associated solely with the gasoline contamination from the costs of the whole treatment facility and pipeline. The Walthery pipeline would have been required to be constructed since the two wells are impacted with high levels of VOCs and because the wells would still have to be treated. Thus, the cost associated with this pipeline are not a result of the gasoline contamination.
Similarly, the Twinney treatment facility had to be constructed to treat the Twinney and Walthery wells for VOCs. However, the facility that was designed and constructed has greater treatment capabilities for removing the gasoline related compounds and therefore, is a more elaborate and expensive facility than a facility sized to remove the level of VOCs that are present in the Twinney and Walthery wells. The Twinney treatment facility was part of a contract to design and construct three treatment facilities. One of the two other facilities is very similar to the arrangement that would have been required at the Twinney well site for the treatment of just VOCs. This facility is the East Ridgewood treatment facility, which treats the East Ridgewood and Paramus wells. There would have been only minor differences between these two facilities if the Twinney facility were to have been sized to remove only VOCs. Therefore, a comparison of the costs to construct these facilities yields a very close estimate of the additional cost to provide the added degree of treatment for the gasoline related compounds. The cost comparison is as follows:

| | |
|---|---|
| Twinney Treatment Facility Costs | $ 1,112,020 |
| E. Ridgewood Treatment Facility Costs | $   663,177 |

RDG-VILL-0034

SH-NJ-WG012575

Differential                        $   448,843

Design costs for these types of facilities usually run in the neighborhood of ten percent of the construction costs. Since the design contract was a lump sum contract for all three facilities and since it would be difficult to cull out the costs associated with the added treatment, this percentage was utilized to approximate the associated design costs as follows:

0.1 x $448,843 = $44,884

OPERATIONS AND MAINTENANCE

The Twinney treatment facility was put into active operation during the spring of 1992 and the Walthery pipeline will be completed by the early summer of 1992. There will be costs associated with operation and maintenance (O&M) of the facility that need to be determined for the equipment performing the extra degree of treatment. The only equipment that exclusively operates as a result of the added degree of treatment is the pumping and monitoring equipment associated with the second stage stripping tower. (The tower height needed to strip the gasoline related compounds from the water was too high to be accommodated at the site, therefore the tower height had to be divided amongst two towers. Water is pumped from the wells into the first tower where it cascades down through the tower into a clearwell or collection basin. From here the water is repumped to the top of the second tower.) It is this repumping cost that is directly attributable to the gasoline contamination. A portion of the blower and monitoring equipment costs are further attributable to the gasoline contamination. The O&M costs of the remainder of the equipment would have been required for VOC treatment alone. The O&M costs are estimated in Worksheet 2 to be $166,480. This is based on a 20 year life of the facility and the treatment of the gasoline related compounds. This is a preliminary estimate that will be investigated further before these costs are considered final.

COST SUMMARY

The following is a summary of the costs (described above) that have been expended by the Village of Ridgewood as a result of the contamination of the Twinney and Walthery water supply wells with gasoline related compounds.

RDG-VILL-0035

SH-NJ-WG012576

| ITEM | COST |
|------|------|
| LOST REVENUE | $ 48,240 |
| DESIGN | $448,843 |
| CONSTRUCTION | $ 44,884 |
| SUBTOTAL (1991 dollars) | $541,967 |
| SUBTOTAL (1992 dollars) | $574,485 |
| OPERATING & MAINTENANCE | $166,480 |
| TOTAL | $740,965 |

The estimated cost of $740,965 ($740,000) is a fair estimation of the costs attributable to the additional treatment that is required to remove the gasoline contamination from the water supplied by the Twinney and Walthery water supply wells and the costs associated with the loss of revenue to the Village as a result of not being able to operate these wells since June of 1987. This cost is preliminarily based on the estimation of a 20 year life cycle for the O&M costs of the treatment of the gasoline related contamination. I will follow up on this preliminary estimation and finalize this letter in the near future.

Very truly yours,

William G. Mowell
Environmental Engineer

# Twinny Treatment Facility

## Combined Raw

| Date | PCE | TCE | MTBE | 1,1,1 TCA | cis-1,2 DCE |
|---|---|---|---|---|---|
| 05/15/01 | 3.3 | 0 | 3.7 | 0 | 0 |
| 06/12/01 | 3.79 | 0 | 4.84 | 0 | 0 |
| 08/28/07 | 5.04 | 0 | 0 | 0 | 0 |
| 09/11/07 | 6.69 | 0 | 0 | 0 | 0 |
| 09/25/07 | 6.05 | 0 | 0 | 0 | 0 |
| 10/09/07 | 6.11 | 0 | 0 | 0 | 0 |
| 10/23/07 | 4.78 | 0 | 0 | 0 | 0 |
| 11/06/07 | 6.28 | 0 | 0 | 0 | 0 |
| 11/20/07 | 4.63 | 0 | 0 | 0 | 0 |
| 12/04/07 | 5.68 | 0 | 0 | 0 | 0 |
| 12/18/07 | 4.95 | 0 | 0 | 0 | 0 |
| 01/02/08 | 5.66 | 0 | 0 | 0 | 0 |
| 04/22/08 | 4.48 | 0 | 0 | 0 | 0 |
| 05/07/08 | 3.86 | 0 | 0 | 0 | 0 |
| 05/20/08 | 3.38 | 0 | 0 | 0 | 0 |
| 06/03/08 | 3.01 | 0 | 0 | 0 | 0 |
| 06/17/08 | 2.47 | 0 | 0 | 0 | 0 |
| 07/15/08 | 3.38 | 0 | 0 | 0 | 0 |
| 07/29/08 | 3.29 | 0 | 0 | 0 | 0 |
|  | 2.4 | 0 | 0 | 0 | 0 |
| 08/12/08 | 3.8 | 0 | 0 | 0 | 0 |
| 08/26/08 | 4.9 | 0 | 0 | 0 | 0 |
| 09/09/08 | 6 | 0 | 0 | 0 | 0 |
| 09/23/08 | 3.7 | 0 | 0 | 0 | 0 |
|  | 3.1 | 0 | 0 | 0 | 0 |
|  | 2.84 | 0 | 0 | 0 | 0 |
|  | 4.7 | 0 | 0 | 0 | 0 |
|  | 5.12 | 0 | 0 | 0 | 0 |
| 1005010 | 5.15 | 0 | 0 | 0 | 0 |

## Treated

| Date | PCE | TCE | MTBE | 1,1,1 TCA | cis-1,2 DCE |
|---|---|---|---|---|---|
| 12/21/92 | 0 | 0 | 0 | 0 | 0 |
| 12/28/94 | 0 | 0 | 0 | 0 | 0 |
| 04/18/95 | 0 | 0 | 0 | 0 | 0 |
| 02/01/96 | 0 | 0 | 0 | 0 | 0 |
| 05/15/01 | 0 | 0 | 0 | 0 | 0 |
| 05/17/01 | 0 | 0 | 0 | 0 | 0 |
| 05/12/01 | 0 | 0 | 0 | 0 | 0 |
| 07/10/01 | 0 | 0 | 0 | 0 | 0 |
| 07/24/01 | 0 | 0 | 0.45 | 0 | 0 |
| 08/07/01 | 0 | 0 | 0 | 0 | 0 |
| 07/11/01 | 0 | 0 | 0 | 0 | 0 |
| 06/20/02 | 0 | 0 | 0 | 0 | 0 |
| 07/08/03 | 0 | 0 | 0.81 | 0 | 0 |
| 08/19/03 | 0 | 0 | 0.84 | 0 | 0 |
| 05/02/03 | 0 | 0 | 0.71 | 0 | 0 |
| 08/16/03 | 0 | 0 | 0.54 | 0 | 0 |
| 06/30/03 | 0 | 0 | 0 | 0 | 0 |
| 10/28/03 | 0 | 0 | 0.68 | 0 | 0 |
| 09/22/04 | 0 | 0 | 0.54 | 0 | 0 |
| 06/16/04 | 0 | 0 | 0.51 | 0 | 0 |
| 07/20/04 | 0 | 0 | 0.48 | 0 | 0 |
| 06/03/04 | 0 | 0 | 0 | 0 | 0 |
| 08/31/04 | 0 | 0 | 0.64 | 0 | 0 |
| 05/24/05 | 0.59 | 0 | 0.4 | 0 | 0 |
| 08/07/05 | 0 | 0 | 0.56 | 0 | 0 |
| 07/19/05 | 0 | 0 | 0 | 0 | 0 |
| 07/05/05 | 0 | 0 | 0 | 0 | 0 |
| 06/02/05 | 0 | 0 | 0 | 0 | 0 |
| 08/05/05 | 0 | 0 | 0 | 0 | 0 |
| 08/30/05 | 0 | 0 | 0 | 0 | 0 |
| 09/27/05 | 0 | 0 | 0 | 0 | 0 |
| 11/22/05 | 0 | 0 | 0 | 0 | 0 |
| 04/25/06 | 0 | 0 | 0 | 0 | 0 |
| 05/09/06 | 0 | 0 | 0 | 0 | 0 |
| 06/06/06 | 0 | 0 | 0 | 0 | 0 |
| 06/20/06 | 0 | 0 | 0 | 0 | 0 |
| 07/18/06 | 0 | 0 | 0 | 0 | 0 |
| 08/01/06 | 0 | 0 | 0 | 0 | 0 |
| 06/15/06 | 0 | 0 | 0 | 0 | 0 |
| 06/29/06 | 0 | 0 | 0 | 0 | 0 |
| 09/12/06 | 0 | 0 | 0 | 0 | 0 |
| 09/26/06 | 0 | 0 | 0 | 0 | 0 |
| 10/10/06 | 0 | 0 | 0 | 0 | 0 |
| 10/24/06 | 0 | 0 | 0 | 0 | 0 |
| 11/07/06 | 0 | 0 | 0 | 0 | 0 |
| 03/13/07 | 0 | 0 | 0 | 0 | 0 |
| 03/27/07 | 0 | 0 | 0 | 0 | 0 |
| 04/04/07 | 0 | 0 | 0 | 0 | 0 |
| 04/17/07 | 0 | 0 | 0 | 0 | 0 |
| 05/22/07 | 0 | 0 | 0 | 0 | 0 |
| 06/05/07 | 0 | 0 | 0 | 0 | 0 |
| 06/19/07 | 0 | 0 | 0 | 0 | 0 |
| 07/03/07 | 0 | 0 | 0 | 0 | 0 |
| 08/14/07 | 0 | 0 | 0 | 0 | 0 |
| 08/28/07 | 0 | 0 | 0 | 0 | 0 |
| 09/11/07 | 0 | 0 | 0 | 0 | 0 |

## Twinny Well Raw

| Date | PCE | TCE | MTBE | 1,1,1 TCA | cis-1,2 DCE |
|---|---|---|---|---|---|
| 11/19/88 | 7.08 | 0.65 | 0 | 0 | 3.4 |
| 11/19/88 | 1.9 | 0 | 0 | 0.2 | 0 |
| 04/29/87 | 3.4 | 0 | 0 | 0 | 0 |
| 07/20/88 | 0.6 | 0 | 0 | 0 | 0 |
| 07/15/92 | 0.6 | 0 | 8.2 | 0 | 0 |
| 07/15/92 | 0 | 0 | 1.7 | 0 | 0 |
| 12/28/94 | 0 | 0 | 0 | 0 | 0 |
| 02/01/96 | 1.82 | 0 | 3.6 | 0 | 0 |
| 09/14/96 | 1.51 | 0 | 3.36 | 1.32 | 0 |
| 02/10/98 | 1.07 | 0 | 1.08 | 0 | 0 |
| 02/10/98 | 1.11 | 0 | 0 | 0 | 0 |
| 02/11/98 | 1.28 | 0 | 1.53 | 0 | 0 |
| 02/11/98 | 1.86 | 0 | 2.15 | 0 | 0 |
| 02/12/98 | 1.72 | 0 | 6.59 | 0 | 0 |
| 02/12/98 | 1.89 | 0 | 2.71 | 0 | 0 |
| 02/13/98 | 2.44 | 0 | 3.86 | 0 | 0 |
| 02/13/98 | 2.47 | 0 | 5.64 | 0 | 0 |
| 02/14/98 | 2.41 | 0 | 4.74 | 0 | 0 |
| 02/14/98 | 2.47 | 0 | 5.49 | 0 | 0 |
| 02/15/98 | 3.21 | 0 | 6.41 | 0 | 0 |
| 02/15/98 | 4.58 | 0 | 8.41 | 0 | 0 |
| 02/18/98 | 4.41 | 0 | 8.83 | 0 | 0 |
| 02/20/98 | 4.53 | 0 | 6.84 | 0 | 0 |
| 02/24/98 | 4.34 | 0 | 12.1 | 0 | 0 |
| 02/24/98 | 28.3 | 1.22 | 197 | 1.91 | 0 |
| 03/03/98 | 4.35 | 0 | 8.07 | 0 | 0 |
| 03/04/98 | 4.97 | 0 | 7.81 | 0 | 0 |
| 05/08/01 | 3.3 | 0 | 4.84 | 0 | 0 |
| 06/12/01 | 3.79 | 0 | 4.97 | 0 | 0 |
| 07/05/01 | 3.3 | 0 | 3.3 | 0 | 0 |
| 06/01/01 | 2.94 | 0 | 4.84 | 0 | 0.61 |
| 07/19/05 | 3.79 | 0.52 | 1.38 | 0 | 0 |
| 06/20/02 | 3.92 | 0 | 4.84 | 0 | 0 |
| 07/08/03 | 3.92 | 0.34 | 1.97 | 0 | 0 |
| 08/19/03 | 3.8 | 0 | 2.33 | 0 | 0 |
| 06/05/03 | 6.69 | 0 | 1.77 | 0 | 0 |
| 08/19/03 | 3.92 | 0 | 1.56 | 0 | 0 |
| 06/30/03 | 3.26 | 0 | 0 | 0 | 0 |
| 10/28/03 | 3.53 | 0 | 0.64 | 0 | 0 |
| 06/22/04 | 2.19 | 0 | 0.49 | 0 | 0 |
| 07/06/04 | 3.16 | 0 | 2.8 | 0 | 0 |
| 07/18/06 | 4.48 | 0 | 0.95 | 0 | 0 |
| 06/03/04 | 0.96 | 0 | 0.44 | 0 | 0 |
| 08/31/04 | 1.66 | 0 | 0.67 | 0 | 0 |
| 05/24/05 | 0.69 | 0 | 0.54 | 0 | 0 |
| 05/07/05 | 0.61 | 0 | 0.77 | 0 | 0 |
| 07/21/05 | 1.68 | 0 | 1.24 | 0 | 0 |
| 07/05/05 | 2.67 | 0 | 1.28 | 0 | 0 |
| 06/02/05 | 4.2 | 0 | 0 | 0 | 0 |
| 08/16/05 | 4.88 | 0 | 0 | 0 | 0 |
| 08/16/05 | 6.41 | 0 | 0 | 0 | 0 |
| 09/13/05 | 3.92 | 0 | 0 | 0 | 0 |
| 09/27/05 | 5.1 | 0 | 0 | 0 | 0 |
| 11/22/05 | 5.28 | 0 | 0 | 0 | 0 |
| 04/25/06 | 1.31 | 0 | 0.64 | 0 | 0 |
| 05/08/06 | 3.17 | 0 | 1.22 | 0 | 0 |
| 06/06/06 | 1.7 | 0 | 0 | 0 | 0 |
| 06/20/06 | 3.08 | 0 | 0.4 | 0 | 0 |
| 07/18/06 | 1.68 | 0 | 0 | 0 | 0 |
| 08/01/06 | 3.88 | 0 | 0.36 | 0 | 0 |
| 08/01/07 | 3.37 | 0 | 0 | 0 | 0 |

## Watherry Well Raw

| Date | PCE | TCE | MTBE | 1,1,1 TCA | cis-1,2 DCE |
|---|---|---|---|---|---|
| 07/05/83 | 18.33 | 0 | 0 | 11.22 | 0 |
| 05/20/87 | 3 | 0 | 0 | 12 | 0 |
| 07/15/88 | 49.3 | 0 | 0 | 8.7 | 0 |
| 07/17/90 | 44.6 | 0.8 | 2.2 | 8.9 | 0.98 |
| 02/10/98 | 36.2 | 1.23 | 73.3 | 3.22 | 0.62 |
| 02/11/98 | 35.7 | 1.35 | 180 | 2.81 | 0 |
| 02/13/98 | 35.1 | 0 | 237 | 2.43 | 0 |
| 02/11/98 | 34.2 | 1.35 | 209 | 2.32 | 0.6 |
| 02/15/98 | 35 | 1.25 | 213 | 2.18 | 0.55 |
| 03/03/98 | 33 | 1.13 | 148 | 0 | 0.53 |
| 03/10/98 | 33.2 | 0 | 114 | 4.3 | 0 |
| 04/08/02 | 0.92 | 0 | 0 | 2.4 | 6.4 |
| 04/08/02 | 26 | 0 | 1.9 | 2.1 | 3.3 |
| 04/08/02 | 22 | 0 | 8.7 | 2 | 2.1 |
| 04/08/02 | 21 | 0 | 28 | 1.5 | 2.8 |
| 04/08/02 | 2 | 0 | 30 | 1.3 | 2.3 |
| 04/08/02 | 17 | 0 | 31 | 1.3 | 1.8 |
| 04/10/02 | 19 | 0 | 27 | 1.3 | 1.8 |
| 04/10/02 | 20 | 0 | 0.7 | 1.1 | 1.6 |
| 04/15/02 | 18 | 0.3 | 3.111 | 0.5 | 1.5 |
| 11/27/06 | 204 | 0.3 | 0 | 0.27 | 0.7 |
| 12/13/06 | 18.8 | 0.32 | 0 | 0.29 | 0.34 |
| 04/24/07 | 20.4 | 0.32 | 0 | 0.29 | 0.87 |
| 05/01/07 | 20 | 0.34 | 0 | 0.3 | 0.28 |
| 04/18/07 | 18.6 | 0.4 | 0 | 0.25 | 0.29 |
| 05/08/07 | 20.8 | 0.33 | 0 | 0.25 | 0.24 |
| 05/15/07 | 20.6 | 0.33 | 0 | 0.2 | 0 |
| 05/30/07 | 13.9 | 0.25 | 0 | 0 | 0 |
| 06/05/07 | 14.53 | 0.21 | 0 | 0.27 | 0 |
| 06/13/07 | 10.12 | 0 | 0 | 0 | 0 |
| 06/19/07 | 10.8 | 0 | 0 | 0.27 | 0 |
| 06/27/07 | 9.44 | 0.25 | 0 | 0.29 | 0 |
| 07/11/07 | 16.95 | 0.26 | 0 | 0 | 0 |
| 07/11/07 | 11.45 | 0.25 | 0 | 0.26 | 0 |
| 07/17/07 | 12.18 | 0 | 0 | 0.29 | 0 |
| 08/14/07 | 12.69 | 0.29 | 0 | 0.24 | 0 |
| 08/28/07 | 10.86 | 0.21 | 0 | 0.24 | 0 |
| 09/11/07 | 8.22 | 0 | 0 | 0.2 | 0 |
| 09/11/07 | 9.71 | 0 | 1.02 | 0 | 0 |
| 10/09/07 | 9.1 | 0 | 14.6 | 0.37 | 0 |
| 10/23/07 | 9.69 | 0.25 | 9.75 | 0.35 | 0 |
| 11/06/07 | 9.5 | 0 | 10.2 | 0.27 | 0 |
| 11/20/07 | 9.37 | 0.21 | 6.78 | 0.21 | 0 |
| 12/04/07 | 11.2 | 0.21 | 10.2 | 0 | 0 |
| 12/18/07 | 10.2 | 0 | 5.38 | 0 | 0 |
| 04/22/08 | 14.8 | 0 | 3.71 | 0 | 0 |
| 05/07/08 | 9.75 | 0.24 | 5.69 | 0 | 0 |
| 05/20/08 | 10.2 | 0 | 6.89 | 0 | 0 |
| 06/03/08 | 6.78 | 0 | 8 | 0 | 0 |
| 06/17/08 | 5.38 | 0 | 7.8 | 0 | 0 |
| 07/15/08 | 3.71 | 0 | 9.9 | 0 | 0 |
| 07/29/08 | 5.69 | 0 |  | 0 | 0 |
| 08/12/08 | 8.9 | 0 |  | 0 | 0 |
| 08/26/08 | 7.8 | 0 |  | 0 | 0 |
| 09/09/08 | 9.9 | 0 |  | 0 | 0 |

NJ-WK-RIDGEWOOD-009195
NJ-WK-RIDGEWOOD-009196

| # | H | I | O | P | R | T | V | W |
|---|---|---|---|---|---|---|---|---|
| 65 | 09/25/07 | 0 | 08/15/06 | 4.51 | 0.45 | 0 | 10/07/08 | 7.4 |
| 66 | 10/09/07 | 0 | 08/29/06 | 3.79 | 0.29 | 0 | 10/21/08 | 8.7 |
| 67 | 10/23/07 | 0 | 09/12/06 | 3.93 | 0 | 0 | 07/27/10 | 17.8 |
| 68 | 11/06/07 | 0 | 09/26/06 | 4.87 | 0.43 | 0 | 08/01/10 | 16.2 |
| 69 | 11/20/07 | 0 | 10/10/06 | 4.07 | 0.3 | 0 | 08/24/10 | 14.6 |
| 70 | 12/04/07 | 0.43 | 10/24/06 | 3.31 | 0.46 | 0 | 06/07/10 | 14.9 |
| 71 | 12/18/07 | 0 | 11/07/06 | 1.53 | 0 | 0 | 10/05/10 | 16.3 |
| 72 | 01/02/08 | 0 | | 2.38 | 0 | 0 | | 0 |
| 73 | 02/14/08 | 0 | 03/13/07 | 2.76 | 0 | 1.07 | | 0 |
| 74 | 04/22/08 | 0 | 03/27/07 | 4.08 | 0 | 0 | | 0 |
| 75 | 05/07/08 | 0 | 04/24/07 | 4.15 | 0 | 0 | | 0 |
| 76 | 05/20/08 | 0 | 05/08/07 | 4.77 | 0 | 0 | | 0 |
| 77 | 06/03/08 | 0 | 05/22/07 | 4.19 | 0 | 0 | | 0 |
| 78 | 06/17/08 | 0 | 06/05/07 | 4.09 | 0 | 0 | | 0 |
| 79 | 07/01/08 | 0 | 06/19/07 | 3.97 | 0 | 0 | | 0 |
| 80 | 07/15/08 | 0 | 07/03/07 | 4.73 | 0 | 0 | | 0 |
| 81 | 07/29/08 | 0 | 07/17/07 | 6.27 | 0 | 0 | | 0 |
| 82 | 08/12/08 | 0 | 08/14/07 | 4.55 | 0 | 0 | | 0 |
| 83 | 08/26/08 | 0 | 11/03/07 | 2.24 | 0 | 0 | | 0 |
| 84 | 09/05/08 | 0 | 05/07/08 | 2.9 | 0 | 0 | | 0 |
| 85 | 09/23/08 | 0 | 08/12/08 | 1.4 | 0 | 0 | | 0 |
| 86 | 10/07/08 | 0 | 11/04/08 | 1.4 | 0 | 0 | | 0 |
| 87 | 10/21/08 | 0 | 02/24/09 | 1.0 | 0 | 0 | | 0 |
| 88 | 11/04/08 | 0 | 06/01/09 | 5.04 | 0 | 0 | | 0 |
| 89 | 02/24/09 | 0 | 11/03/09 | 0 | 0 | 0 | | 0 |
| 90 | 06/30/09 | 0 | 06/01/10 | 0 | 0 | 0 | | 0 |
| 91 | 07/14/09 | 0 | | 0 | 0 | 0 | | 0 |
| 92 | 07/28/09 | 0 | | 0 | 0 | 0 | | 0 |
| 93 | 08/11/09 | 0 | | 0 | 0 | 0 | | 0 |
| 94 | 08/25/09 | 0 | | 0 | 0 | 0 | | 0 |
| 95 | 09/22/09 | 0 | | 0 | 0 | 0 | | 0 |
| 96 | 10/06/09 | 0 | | 0 | 0 | 0 | | 0 |
| 97 | 10/20/09 | 0 | | 0 | 0 | 0 | | 0 |
| 98 | 11/03/09 | 0 | | 0 | 0 | 0 | | 0 |
| 99 | 03/09/10 | 0 | | 0 | 0 | 0 | | 0 |
| 100 | 05/18/10 | 0 | | 0 | 0 | 0 | | 0 |
| 101 | 06/01/10 | 0 | | 0 | 0 | 0 | | 0 |
| 102 | 07/13/10 | 0 | | 0 | 0 | 0 | | 0 |
| 103 | 07/27/10 | 0 | | 0 | 0 | 0 | | 0 |
| 104 | 08/10/10 | 0 | | 0 | 0 | 0 | | 0 |
| 105 | 08/24/10 | 0 | | 0 | 0 | 0 | | 0 |
| 106 | 09/07/10 | 0 | | 0 | 0 | 0 | | 0 |
| 107 | 09/21/10 | 0 | | 0 | 0 | 0 | | 0 |
| 108 | 10/05/10 | 0 | | 0 | 0 | 0 | | 0 |

NJ-WK-RIDGEWOOD-009197
NJ-WK-RIDGEWOOD-009198

# <u>EXHIBIT 2</u>

## Excerpts of the 1994 Settlement Agreement
## (SH-NJ-XX-081405-081417)

## A complete copy of the Agreement is available upon request of the Court

## SETTLEMENT AGREEMENT,
## INDEMNIFICATION AGREEMENT
## AND RELEASE

THIS SETTLEMENT AGREEMENT, INDEMNIFICATION AGREEMENT

AND RELEASE (hereinafter the "Agreement"), is made by and between the claimant, Village

of Ridgewood ("the Village") and the petitioners, Shell Oil Company, Chevron U.S.A. Inc. and

Sun Refining and Marketing Company ("Settling Petitioners"), collectively referred to as the

"Settling Parties".

## I.
## RECITALS

WHEREAS, the Village provides drinking water for residents of the Village,

Glen Rock, Wyckoff and Midland Park through a series of approximately 58 active potable

wells, two of which are the Twinney and Walthery Wells (hereinafter "the Wells"); and

WHEREAS, the Village asserted that the Twinney and Walthery Wells have been

contaminated and could not longer be used to supply potable water; and

WHEREAS, the Village designed, constructed and currently maintains a treatment

facility at the Twinney Well which treats water pumped from the Twinney and Walthery Wells;

and

WHEREAS, in October 1990 the Village filed two claims with the Administrator

of the New Jersey Spill Fund for damages resulting from the contamination of the Wells along

with claims for taste and odor problems, those claims having been designated as Claim Numbers

90-0102 and 90-0112 (collectively referred to as "Spill Fund Claims"), and

WHEREAS, the Village filed an amendment to the Spill Fund Claims dated

November 30, 1993, and                                              **010120**

SH-NJ-XX-081405

WHEREAS, the potential responsible parties, including the Settling Petitioners, filed a demand for arbitration pursuant to N.J.S.A. 58:10-23, which was assigned Docket No. ESF 9886-93N (hereinafter referred to as "Arbitration"), and

WHEREAS, the Village initiated suit in the Superior Court of New Jersey, Law Division, Bergen County, Docket No. BER-L-780-92 (hereinafter referred to as "Litigation"), seeking recovery of the alleged damages resulting from the contamination of the Wells against alleged potential responsible parties, including the Settling Petitioners, with said allegations in the complaint being denied by the Settling Petitioners; and

WHEREAS, the parties hereto have agreed to settle and compromise their respective claims, it being expressly understood and agreed that the parties have denied and continue to deny liability for the claims asserted in the Arbitration and Litigation;

NOW, THEREFORE, in consideration for the mutual promises contained in this Agreement, it is hereby agreed by and among the settling parties as follows:

1.   **Definitions**

1.1   The "Village" is defined as the Village of Ridgewood and incorporates herein by reference all entities of the Village of Ridgewood, including the Village of Ridgewood Water Department and all Village officials, officers, employees, agents, representatives and assigns.

1.2   The "Wells" are defined as the Twinney and Walthery Wells which are located in the low service area of the Village of Ridgewood's water supply system.

1.3   "NJDEPE" means the New Jersey Department of Environmental Protection and Energy.

010121

SH-NJ-XX-081406

1.4    "Shell" means the defendant, Shell Oil Company, and its subsidiaries, divisions, affiliates, offices, directors, employees, attorneys, agents, representatives, and all persons authorized to act on its behalf.

1.5    "Chevron" means the defendant, Chevron U.S.A. Inc., and its subsidiaries, divisions, affiliates, offices, directors, employees, attorneys, agents, representatives, and all persons authorized to act on its behalf.

1.6    "Sun" means the defendant, Sun Refining & Marketing Company, and its subsidiaries, divisions, affiliates, offices, directors, employees, attorneys, agents, representatives, and all persons authorized to act on its behalf.

1.7    "Settling Petitioners" and/or "Settling Defendants" means the petitioners and defendants, Shell, Chevron, and Sun.

1.8    "Spill Fund Claims" means the two claims, as amended, filed with the Administrator of the New Spill Fund by the Village for damages resulting from the contamination of the Twinney and Walthery Wells which claims have been designated as Claim Numbers 90-0102 and 90-0112.

1.9    "Arbitration" means the currently pending arbitration proceedings before New Jersey Administrative Law Judge Masin resulting from the demand for arbitration filed pursuant to N.J.S.A. 58:10-23 by potential responsible parties, including the Settling Petitioners with respect to the Spill Fund Claims.

1.10    "Litigation" means the lawsuit originally filed in the Superior Court of New Jersey, Law Division, Bergen County, Docket No. BER-L-780-92, against numerous potential responsible parties, including but not limited to Shell, Chevron, Sun, J. H. Ferguson & Sons Inc., Joseph H. Ferguson, Anthony Bolt, Robert Ferguson,

010122

3

SH-NJ-XX-081407

Cumberland Farms Inc., Herbert Rothstein, Crete Equipment Corporation, Peter Soldano, and numerous fictitious corporate and individual entities.

1.11   "Subrogation" means the substitution of one person or entity in place of another with reference to an assigned lawful claim or right.   Under New Jersey law, "subrogation" is an equitable device by which the subrogee, having paid for a loss to subrogor, steps into the shoes of the subrogor to assert any claim that it had against the third party, who, in good conscience, ought to pay for the loss.  See Dome Petroleum Ltd. v. Employers Mut. Liability Ins. Co., 767 F.2d 43 (3rd Cir. 1985).

1.12   "Remediation" means the clean up of groundwater and subsurface soils to specific levels in accordance with industry and NJDEPE practices.

1.13   "Spill Act" means the New Jersey Spill and Compensation Act as set forth in N.J.S.A. 58:10-23.11, *et seq.*

2.     Settlement Consideration

2.1   In full settlement of all legal claims as set forth in the Spill Fund Claims, Arbitration and the Litigation, Settling Petitioners shall collectively pay to the Village the sum of **EIGHT HUNDRED TWENTY-FIVE THOUSAND DOLLARS ($825,000)** (hereinafter "Settlement Payment").  The Settlement Payment payable by the Settling Petitioners shall be made to the Village within twenty (20) calendar days following execution of this Agreement by the Village.

2.2   The Settling Petitioners, through their designated attorney and with the consent of the Village's attorney, will file a substitution of attorney in the Litigation replacing the Village's attorneys.

010123

LC41220L1 KWB

4

SH-NJ-XX-081408

3.   Releases

3.1   The Village shall release and discharge Shell, Chevron and Sun, and their subsidiaries, affiliates, directors, officers, employees, representatives, agents, successors and assigns from any and all claims, suits, contracts, warranties, representations, damages, Spill Fund Claims, actions, Arbitration, Litigation, or causes of action of whatever nature, whether known or unknown, suspected or unsuspected which the Village ever had or now has against Shell, Chevron and Sun by reason of any environmental contamination of the Twinney and Walthery Wells which have or could have been asserted in the Village's Spill Fund Claims, Arbitration, and Litigation.

3.2   The Village further understands and recognizes that it releases Shell, Chevron and Sun from any act occurring from the beginning of creation up to and including the date of said release, where such acts arose out of or in any way concerned or related to the allegations in the Spill Fund Claim, Arbitration, and Litigation, regardless of whether said act or injury respective thereto was known at the time of the execution of the Agreement. The release shall not include any claims relating to or arising out of the interpretation of the terms and conditions of this Agreement.

3.3   The Village understands that this release is intended to cover all actions, causes of action, claims, damages, demands and losses or injuries now appearing, or at any time which may appear in the future, related to the allegations in the Spill Fund Claim, Arbitration, and Litigation, excluding, however, claims relating to or arising out of this Agreement. This provision is not intended to release claims for actions or omissions of the Settling Petitioners which may occur in the future.

010124

5

SH-NJ-XX-081409

4.    Dismissal

    4.1    In consideration for the Settlement Payment, the Village shall withdraw the Spill Fund Claims with prejudice and without cost to any party.  The Village shall also request that the New Jersey Administrative Judge dismiss the Arbitration with prejudice as being moot.   This withdrawal and request for dismissal shall occur immediately following the Village's receipt of the Settlement Payment from the Settling Petitioners.

5.    Subrogation and/or Assignment

    5.1    The Village hereby assigns all of its legal rights against all potential responsible parties as named in the Spill Fund Claims, Arbitration, and Litigation, as well as all legal rights against all other known or unknown entities which caused contamination in the Twinney and Walthery Wells.  The legal rights assigned shall be all available legal rights, and shall not be limited to any extent.

    5.2    For purposes of this Agreement, the subrogee shall be the Settling Petitioners and the subrogor shall be the Village.

    5.3    Under the rights of subrogation, the Settling Petitioners shall have the right to pursue in the name of the Village against any and all third parties any legal action arising out of the alleged contamination of the Twinney and Walthery Wells in the Village.

    5.4    The Village agrees to cooperate with the Settling Petitioners in the prosecution of any subrogation litigation.  The extent of the required cooperation shall be reasonable, which would include access to the Village's financial construction and remediation reports and records relating to the site assessment and remediation of the

010125

SH-NJ-XX-081410

Wells, along with reasonable assistance to the Settling Petitioners and their designated attorneys during Litigation.

6.    Indemnification

    6.1    The Settling Petitioners shall protect, defend, indemnify and hold harmless the Village, its agents, officers and employees, from and against any claims, including but not limited to counterclaims, cross-claims, or third party claims by any party to the Litigation arising out of, or otherwise relating to the Village's costs for site assessment and remediation of the Wells. This duty to defend, indemnify and hold harmless shall not apply to any personal injury or property damage or other tort action relating to or concerning the Wells, nor to any enforcement action commenced by the NJDEPE.

    (a)    The Settling Petitioners, in indemnifying the Village, shall have the option of assuming the Village's defense with counsel of its own choosing.

    6.2    The Village shall protect, defend, indemnify and hold harmless the Settling Petitioners, their agents, officers and employees, from and against any enforcement action commenced by the NJDEPE, concerning the on-site site assessment and remediation of the contamination to the Wells. This provision is not intended to apply to future spills originating from the Settling Petitioners' sites.

    6.3    The indemnifications described in this Agreement are intended to be complete indemnifications, and therefore shall also include without limitation reasonable counsel fees and disbursements of counsel incurred by the respective parties.

7.    Representations and Warranties

    7.1    The Village has not knowingly taken any action that has or will adversely affect the assignment to and subrogation rights of the Settling Petitioners in regards to the named defendants in the Litigation.

010126

7

SH-NJ-XX-081411

8.   <u>Notices</u>

    8.1    Notices hereunder shall be given only by certified mail, air courier, or facsimile.   Any electronic transmission shall be deemed given when the notice is deposited in the mail and with the air courier, facsimile, electronic transmission service, postage or air courier charges prepaid, with a confirmation of delivery requested, and directed to the party to whom intended at such party's address or such address of such party as may be substituted by notice to the other.

9.   <u>Governing Law</u>

    9.1    This Agreement shall be governed by and be construed in accordance with the laws of the State of New Jersey, including, without limitation, in relation to all matters of formation, interpretation, construction, validity, performance and enforcement.

10.   <u>Sole Agreement/Modification</u>

    10.1    This Agreement constitutes the entire agreement between the Village and the Settling Petitioners with respect to the matters covered hereby and merges and supersedes any prior or contemporaneous agreement, understanding or undertaking, written or oral, by or between the parties regarding these matters.

    (a)    The parties specifically agree that no representations or inducements other than the considerations recited herein have been made.

    (b)    There is no understanding, agreement, or representation which in any way limits, extends or defines the provisions or redefines the provisions herein. Any modifications, extensions or limitations of this Agreement shall be in writing and signed by all parties.

    10.2    The parties represent that they have the sole and exclusive right and authority to resolve the claims asserted in the Spill Fund Claims, Arbitration, and

010127

JC417301.KWR                 8

SH-NJ-XX-081412

Litigation, and that each of them has received independently legal advice from their respective counsel with respect to settling and resolving the Spill Fund Claims, Arbitration, and Litigation, and with respect to executing this Agreement.

**11.**   **Effect of Agreement**

    **11.1**   This Agreement shall bind and inure to the benefit of the parties hereto and their respective successors and assigns.

    **11.2**   No person or entity which is not a party to this Agreement shall acquire any rights hereunder, whether as a purported third party beneficiary or otherwise, except as otherwise herein expressly provided.

**12.**   **Counterparts**

    **12.1**   This Agreement may be executed simultaneous in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.   Copies of the Agreement shall have the same force and effect as an original for any and all purposes.

**13.**   **Miscellaneous**

    **13.1**   At any time, and from time to time, after the signing of this Agreement, each party shall execute such additional instruments and take such action as may reasonably be required by the other party to carry out the intent and purposes of this Agreement.

    **13.2**   Any failure on the part of any party hereto to comply with any of its obligations, agreements, or conditions hereunder may be waived in writing by the party to whom such compliance is owed.

    **13.3**   If any provision of this Agreement is invalid, unlawful or incapable of being enforced or performed, by reason of any rule of law or public policy, all other

JC412301.KWB

010128

SH-NJ-XX-081413

provisions of this Agreement which can be given effect without the invalid, unlawful or unenforceable provision(s) shall, nevertheless, remain in full force and effect, and no other provision shall be deemed to be dependent upon any other covenant or provision unless so expressed herein.

13.4   The parties agree that they shall pay all reasonable attorneys fees, disbursements, and other costs incurred if any other party is required to commence any action to enforce the terms and conditions of the Settlement Agreement and prevails.

IN WITNESS WHEREOF, the Village and Settling Petitioners' authorized agents or officers execute this Agreement having set forth their initial on each respective page.

VILLAGE OF RIDGEWOOD

ATTEST:

Name: _____    By: _____
Title: _____    Name: _____
                          Title: _____

SHELL OIL COMPANY

ATTEST:

Name: _____    By: _____
Title: _____    Name: _____
                          Title: _____

CHEVRON U.S.A. INC.

ATTEST:

Name: **W. J. YOUNG**    By: _____
Title: ASSISTANT SECRETARY    Name: Harry P. Davis Jr.
                              Title: Assistant Secretary

010129

SH-NJ-XX-081414

JC(12)301.KWB

SUN COMPANY, INC. (R&M) formerly
known   as   Sun   Refining   and
Marketing Company

ATTEST:

Name:   THOMAS BROWNLIE, JR.
Title:   SECRETARY

By:
Name:   DAVID JUSTIN
Title:   MKT RISK MANAGER

010130

SH-NJ-XX-081415

provisions of this Agreement which can be given effect without the invalid, unlawful or unenforceable provision(s) shall, nevertheless, remain in full force and effect, and no other provision shall be deemed to be dependent upon any other covenant or provision unless so expressed herein.

13.4    The parties agree that they shall pay all reasonable attorneys fees, disbursements, and other costs incurred if any other party is required to commence any action to enforce the terms and conditions of the Settlement Agreement and prevails.

IN WITNESS WHEREOF, the Village and Settling Petitioners' authorized agents or officers execute this Agreement having set forth their initial on each respective page.

**VILLAGE OF RIDGEWOOD**

ATTEST:

Name: *Heather A. Mailander*          By: *Patrick A. Mancuso*
Title: *Village Clerk*                Name: PATRICK A. MANCUSO
                                      Title: MAYOR
                                      5/6/94

**SHELL OIL COMPANY**

ATTEST:

Name: _____          By: _____
Title: _____          Name: _____
                               Title: _____

**CHEVRON U.S.A. INC.**

ATTEST:

Name: _____          By: _____
Title: _____          Name: _____
                               Title: _____

010131

SH-NJ-XX-081416

provisions of this Agreement which can be given effect without the invalid, unlawful or unenforceable provision(s) shall, nevertheless, remain in full force and effect, and no other provision shall be deemed to be dependent upon any other covenant or provision unless so expressed herein.

13.4    The parties agree that they shall pay all reasonable attorneys fees, disbursements, and other costs incurred if any other party is required to commence any action to enforce the terms and conditions of the Settlement Agreement and prevails.

IN WITNESS WHEREOF, the Village and Settling Petitioners' authorized agents or officers execute this Agreement having set forth their initial on each respective page.

VILLAGE OF RIDGEWOOD

ATTEST:

Name: _____

Title: _____

By: _____

Name: _____

Title: _____

SHELL OIL COMPANY

ATTEST:

Name:  James M. Cawley Jr.

Title:  Senior Litigation Attorney

By: _____

Name:  Joseph M. Greer

Title:  Marketing – Manager Eastern Region

CHEVRON U.S.A. INC.

ATTEST:

Name: _____

Title: _____

By: _____

Name: _____

Title: _____

C10132

SH-NJ-XX-081417

# **EXHIBIT 3**

## **Excerpts of the 1999 Settlement Order**
## **(SH-NJ-XX-048711-048717)**

## **A complete copy of the Order is available upon request of the Court**




**FILED**

JUN 18 1999

LAWRENCE D. SMITH
J.S.C.

VINICK & DOCHERTY, ESQS.
Attorneys for Defendant
85 Livingston Avenue
Roseland, New Jersey 07068

(973)994-1955
Our File: 1020-BZ

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: BERGEN COUNTY
DOCKET NO. BER-L-003331-98

VILLAGE OF RIDGEWOOD,          :

              Plaintiff,       :        CIVIL ACTION

                               :        ORDER FOR JUDGMENT

-vs-                           :

SHELL OIL COMPANY, a Delaware  :
corporation, JOHN DOE, (a fictitious
designation),                  :

              Defendants.      :

     This matter having been opened to the Court by John D. Horan, Esq. of Stoldt, Horan & Kowal, P.A., attorneys for the plaintiff, Village of Ridgewood, and Philip B. Vinick, Esq. of Vinick & Docherty, Esqs., attorneys for the defendant, Shell Oil Company, on application by the parties for the entry of an Order for Judgment following Case Management/Settlement Conferences with this Court, and it appearing that the parties consent to the entry of the within Order for Judgment the amount of which this Court deems to be fair and reasonable, and good cause having been shown for the making and granting of this Order;

    It is on this *18* day of _*June*_, 1999;

SH-NJ-XX-048712

ORDERED, as follows:

1.     Judgment shall be entered in favor of the plaintiff, Village of

Ridgewood, and against the defendant, Shell Oil Company, in the sum of $400,000, without

interest or costs.

2.     A Warrant to Satisfy the within judgment shall be filed immediately

following entry and satisfaction of the within judgment.

_____

Lawrence D. Smith, J.S.C.

Consent is hereby given to the form and
entry of the within Order for Judgment

STOLDT, HORAN & KOWAL, P.A.          VINICK & DOCHERTY, ESQS.
Attorneys for Plaintiff                        Attorneys for Defendant

BY: _____        BY: _____
       John D. Horan                               Philip B. Vinick
       DATED: 6/10/99                            A Member of the Firm
                                                        DATED: 6/15/99

2

SH-NJ-XX-048713



1020 BZ

**VINICK & DOCHERTY, ESQS.**
Attorneys for Defendant
85 Livingston Avenue
Roseland, New Jersey 07068
(973)994-1955
Our File: 1020-BZ

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: BERGEN COUNTY
DOCKET NO. BER-L-003331-98

| | | |
|---|---|---|
| VILLAGE OF RIDGEWOOD, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | WARRANT TO SATISFY JUDGMENT |
| -vs- | : | |
| SHELL OIL COMPANY, a Delaware corporation, JOHN DOE, (a fictitious designation), | : | |
| | : | |
| Defendants. | : | |

**TO THE CLERK OF THE ABOVE NAMED COURT:**

**WHEREAS,** Judgment was entered in the above-entitled action in favor of plaintiff, Village of Ridgewood, against defendant, Shell Oil Company, as appears by the record thereof by Order for Judgment, dated June 18, 1999.

**NOW THEREFORE,** this is your warrant and authority to enter on the aforesaid record, this satisfaction of judgment as paid in full.

STOLDT, HORAN & KOWAL, P.A.
Attorneys for Plaintiff

BY: _____
John D. Horan

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

DATED: 6/29/99      _____
JOHN D. HORAN

SH-NJ-XX-048714

AUG. 11. '00 (FRI) 15:58   VINICK AND DOCHERTY ESQS   9739942552   PAGE. 5/7

# RELEASE

lease, dated February 17 , 1998 , is given

by the Releasor(s) VILLAGE OF RIDGEWOOD, a municipal corporation

referred to as "I",

TO   SHELL OIL COMPANY and/or MOTIVA, L.L.C.

referred to as "You".

If more than one person signs this Release, "I" shall mean each person who signs this Release.

1. **Release.** I release and give up any and all claims and rights which I may have against you, This release: all claims, including those which I do not know or suspect to exist which if known may change this release. This release applies to claims arising from anything which has happened up to now. I specifically release the following claims with regard to the "1995 Shell spill" as described in the Complaint entitled Village of Ridgewood vs. Shell Oil Company, a Delaware corporation, John Doe, (a fictitious designation), filed in the Superior Court of New Jersey, Law Division, Bergen County, on April 7, 1998, bearing Docket No. L-003331-9

2. **Payment.** I have been paid a total of $400,000.00**************in full payment for making this Release. I agree that I will not seek anything further including any other payment from you.

3. **Who is Bound.** I am bound by this Release. Anyone who succeeds to my rights and responsibilities, such as my heirs or the executor of my estate, is also bound. This Release is made for your benefit and all who succeed to your rights and responsibilities, such as your heirs or the executor of your estate.

4. **Signatures.** I understand and agree to the terms of this Release. If this Release is made by a corporation its proper corporate officers sign and its corporate seal is affixed.

Witnessed or Attested by:

_Heather A. Mailander_ _____   _Larry Worth_ _____
HEATHER A. MAILANDER, Village Clerk          LARRY D. WORTH, Village Manager

_____ (Seal)

_____ (Seal)

STATE OF NEW JERSEY, COUNTY OF BERGEN          SS.:
I CERTIFY that on February 17, 1999 . Larry D. Worth

personally came before me and stated to my satisfaction that this person (or if more than one, each person):

(a) was the maker of the attached instrument; and
(b) executed this instrument as his or her own act.

Gail F. Battaglia   _Gail F. Battaglia_
Notary Public of New Jersey   (Print name and title below signature)
My Commission Expires July 10, 1997   **Notary Public**

3710—RELEASE - General
Individual or Corporation   Plain Language (Rev. June 1983)

Copyright© 1982 by ALL-STATE LEGAL SUPPLY CO.

SH-NJ-XX-048715

AUG. 11  '00  (FRI) 15:56   VINICK AND DOCHERTY ESQS         9739942552                    PAGE. 6/7

STATE OF NEW JERSEY, COUNTY OF BERGEN                    SS.:
I CERTIFY that on February 17, 1999 ,

  Heather A. Mailander                  personally came before me and stated under oath to my satisfaction that:
(a) this person was the subscribing witness to the signing of the attached instrument;
(b) this instrument was signed by Larry D. Worth

who is Village Manager          of the Village of Ridgewood, a municipal corp.
              the entity named in this instrument, and was fully authorized to and did execute this instrument on its behalf;
and,

(c) the subscribing witness signed this proof under oath to attest to the truth of these facts.

Signed and sworn to before me on                              _Heather A. Mailander_
February             19 99 .                                  (Print name of witness below signature)
_Gail F. Battaglia_                                           Heather A. Mailander,
    (Print name and title below signature)                    Village Clerk
                    Notary Public


                    Gail F. Battaglia
                  Notary Public of New Jersey
              My Commission Expires July 10, 1997


---

## *RELEASE*

| VILLAGE OF RIDGEWOOD, A Municipal Corporation | Dated:   February          , 19 99 |
|---|---|
|  | Record and return to: |
| TO | |
| SHELL OIL COMPANY and/or MOTIVA, L.L.C. | |

SH-NJ-XX-048716

## RESOLUTION NO. 98-290

BE IT RESOLVED by the Village Council of the Village of Ridgewood that the Village Attorney be and he is hereby authorized to settle a certain matter now pending in the Superior Court of New Jersey, Law Division, Bergen County, between the Village of Ridgewood, Plaintiff, and Shell Oil Company, a Delaware Corporation and John Doe (a fictitious designation), Defendants under Docket No. L-003331-98 upon payment to the Village of Ridgewood by the Defendant, Shell Oil Company of the sum of FOUR HUNDRED THOUSAND ($400,000.00) DOLLARS.

APPROVED AS TO FORM:

By: _____
      Sydney V. Stoldt, Jr.
      Village Attorney

NAB/SHELL.RES
File No. 10681-1

I hereby certify that this is a true copy of a resolution passed by the Council on _December 8 1999_

_____
VILLAGE CLERK

I hereby certify that this resolution, consisting of __1__ page(s), was adopted at a meeting of the Village Council of the Village of Ridgewood, held this __8th__ day of __December__, 1998.

| | Moved | Second | Ayes | Nays | Absent | Abstain |
|---------|-------|--------|------|------|--------|---------|
| Harlow | X | | X | | | |
| Miller | | X | X | | | |
| Reilly | | | X | | | |
| iche | | | X | | | |
| Mancuso | | | X | | | |

_____
Patrick A. Mancuso,
Mayor

_____
Heather A. Mailander,
Village Clerk

SH-NJ-XX-048717

## EXHIBIT 4

**Excerpts of Plaintiff's Amended Responses to Defendants' Requests for Admission Related to the Shell Ridgewood Trial Site**

**A complete copy of Plaintiffs' Responses is available upon request of the Court**



Nov 30 2012
07:56PM

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In Re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

**MDL No. 1358**
**Master File C.A. No.**
**1:00-1898 (SAS)**

**This document relates to the following case:**

*New Jersey Department of Environmental*
*Protection v. Atlantic Richfield Co., et al.,*
Case No. 08 Civ. 00312

<u>**PLAINTIFFS NEW JERSEY DEPARTMENT OF ENVIRONMENTAL**
**PROTECTION ("NJDEP"), THE COMMISSIONER OF THE NEW JERSEY**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION, AND THE**
**ADMINISTRATOR OF THE NEW JERSEY SPILL COMPENSATION FUND'S**
**RESPONSES TO DEFENDANTS' REQUESTS FOR ADMISSION RELATED TO**
**SHELL RIDGEWOOD TRIAL SITE**</u>

Plaintiffs New Jersey Department of Environmental Protection ("NJDEP"),

Commissioner of the New Jersey Department of Environmental Protection, and

Administrator of the New Jersey Spill Compensation Fund (collectively, "Plaintiffs"), by

and through their attorneys, Miller, Axline & Sawyer, make the following Responses and

General Objections to Defendants' Requests for Admission Related to Shell Ridgewood

Trial Site ("Requests").

<u>**GENERAL OBJECTIONS**</u>

1.      Plaintiffs object to the Requests on the grounds that they are improper and

violate Federal Rules of Civil Procedure, Rule 36(a) because they include a request to

1

**RESPONSE TO REQUEST FOR ADMISSION NO. 57:**

Plaintiffs object to this Request to the extent it seeks to imply that the East Saddle

River well is not at risk of contamination from MTBE. Subject to the General Objections

and specific objections and without waiver of such objections, Plaintiffs respond as

follows: Admitted.

**REQUEST FOR ADMISSION NO. 58:**

Admit that MTBE has never been detected above New Jersey Maximum

Contaminant Level for MTBE in the Ridgewood Water Department's Paramus well. See

NJ-WKRIDGEWOOD-009118- NJ-WK-RIDGEWOOD-009123.

**RESPONSE TO REQUEST FOR ADMISSION NO. 58:**

Denied. In September 1999, MTBE was detected in the Paramus Well at 689

ug/L. Expert Report of Anthony Brown, Ridgewood Station Site Summary, at Table 1.

**REQUEST FOR ADMISSION NO. 59:**

Admit that MTBE has not been detected above New Jersey Maximum

Contaminant Level for MTBE in the Ridgewood Water Department's Twinney well since

February 1998. See NJ-WK-RIDGEWOOD-009195- NJ-WK-RIDGEWOOD-009198.

**RESPONSE TO REQUEST FOR ADMISSION NO. 59:**

Plaintiffs object to this Request to the extent the Request seeks to imply that the

Twinney well has not been impacted by MTBE since February 1998. Plaintiffs further

object to this Request to the extent the Request seeks to imply that the Twinney well is no

longer at risk from MTBE contamination from the SITE. Subject to the General

Objections and specific objections and without waiver of such objections, Plaintiffs

26

respond as follows: Admitted.

**REQUEST FOR ADMISSION NO. 60:**

Admit that MTBE has not been detected above New Jersey Maximum

Contaminant Level for MTBE in the Ridgewood Water Department's Walthery well since

March 1998. See NJ-WK-RIDGEWOOD-009195- NJ-WK-RIDGEWOOD-009198.

**RESPONSE TO REQUEST FOR ADMISSION NO. 60:**

Plaintiffs object to this Request to the extent the Request seeks to imply that the Walthery

well has not been impacted by MTBE since March 1998. The July 2005 RAW included a

Classification Exception Area (CEA) that acknowledged that the groundwater extracted

by the Walthery Well is adversely impacted with MTBE (EnviroTrac, 2005a; 010772).

Plaintiffs further object to this Request to the extent the Request seeks to imply that the

Walthery well is no longer at risk from MTBE contamination from the SITE. Subject to

the General Objections and specific objections and without waiver of such objections,

Plaintiffs respond as follows: Admitted. Expert Report of Anthony Brown, Ridgewood

Station Site Summary, at Tables 1, 3.

**REQUEST FOR ADMISSION NO. 61:**

Admit that MTBE has not been detected in the Ridgewood Water Department's

Paramus well since September 1999. See NJ-WK-RIDGEWOOD-009118- NJ-WK-

RIDGEWOOD-009123.

**RESPONSE TO REQUEST FOR ADMISSION NO. 61:**

Plaintiffs object to this Request to the extent the Request seeks to imply that the

Paramus well has not been impacted by MTBE since September 1998. Plaintiffs further

object to this Request to the extent the Request seeks to imply that the Paramus well is no longer at risk from MTBE contamination from the SITE. Subject to the General Objections and specific objections and without waiver of such objections, Plaintiffs respond as follows: Admitted.

**REQUEST FOR ADMISSION NO. 62:**

Admit that MTBE has not been detected in the Ridgewood Water Department's Walthery well since April 2008. See NJ-WK-RIDGEWOOD-009195- NJ-WK-RIDGEWOOD-009198.

**RESPONSE TO REQUEST FOR ADMISSION NO. 62:**

Plaintiffs object to this Request to the extent the Request seeks to imply that the Walthery well has not been impacted by MTBE since April 2008. Plaintiffs further object to this Request to the extent the Request seeks to imply that the Walthery well is no longer at risk from MTBE contamination from the SITE. Subject to the General Objections and specific objections and without waiver of such objections, Plaintiffs respond as follows: Admitted.

**REQUEST FOR ADMISSION NO. 63:**

Admit that MTBE has not been detected in the Ridgewood Water Department's Twinney well since October 2006. See NJ-WK-RIDGEWOOD-009195- NJ-WK-RIDGEWOOD-009198.

**RESPONSE TO REQUEST FOR ADMISSION NO. 63:**

Plaintiffs object to this Request to the extent the Request seeks to imply that the Twinney well has not been impacted by MTBE since April 2008. Plaintiffs further object

28

to this Request to the extent the Request seeks to imply that the Twinney well is no

longer at risk from MTBE contamination from the SITE. Subject to the General

Objections and specific objections and without waiver of such objections, Plaintiffs

respond as follows: Admitted.

**REQUEST FOR ADMISSION NO. 64:**

Admit that MTBE has never been detected in Twinney Pond.

**RESPONSE TO REQUEST FOR ADMISSION NO. 64:**

Plaintiffs object to this Request to the extent the Request seeks to imply that the

Twinney Pond is not threatened by MTBE. Plaintiffs further object on the grounds that

there is no record that Twinney Pond has been sampled for MTBE contamination. Expert

Report of Anthony Brown, Ridgewood Station Site Summary, at 52. Subject to the

General Objections and specific objections and without waiver of such objections,

Plaintiffs respond as follows: Admitted.

**REQUEST FOR ADMISSION NO. 65:**

Admit that the Walthery well was used by the Ridgewood Water Department only

during times of peak demand. Ridgewood Water Department 30(b)(6) Dep. Tr. 102:3-

103:13.

**RESPONSE TO REQUEST FOR ADMISSION NO. 65:**

Plaintiffs object to this Request on the grounds that it is vague and ambiguous in

that it fails to define "peak demand." Subject to the General Objections and specific

objections and without waiver of such objections, Plaintiffs respond as follows:

Admitted.

**REQUEST FOR ADMISSION NO. 78:**

Admit that the Shell Defendants satisfied the $1,200,000 administrative penalty

imposed by the NJDEP under the Administrative Consent Order entered into on January

9, 2007. See SH-NJ-BB002539.

**RESPONSE TO REQUEST FOR ADMISSION NO. 78:**

Admitted.

**REQUEST FOR ADMISSION NO. 79:**

Admit that the Shell Defendants have submitted a certification to ensure the self-

guarantee for the remediation funding source required under the Administrative Consent

Order entered into on January 9, 2007 in every year since 2007. See SH-NJBB002539.

**RESPONSE TO REQUEST FOR ADMISSION NO. 79:**

Admitted that certification has been provided for 2008 (SH-NJ-ESI-017563-

017620) and 2010 (SH-NJ-ESI-001100-001105).

**REQUEST FOR ADMISSION NO. 80:**

Admit that the Shell Defendants paid all of NJDEP's outstanding oversight costs

regarding the SITE by July 13, 2010.  See SH-NJ-ESI 004490.

**RESPONSE TO REQUEST FOR ADMISSION NO. 80:**

Admitted.  NJDEP has not waived or released any rights against Shell Defendants

regarding Natural Resource Damages or for costs, other the past oversight costs, incurred

by the State of New Jersey to investigate or remediate the SITE. See SH-NJ-ESI 004490.

**REQUEST FOR ADMISSION NO. 81:**

Admit the NJDEP have never incurred any cost for the sampling or treatment of

the Walthery, Twinney, Paramus or East Saddle River wells of the Ridgewood Water

Department. See Lomerson 30(b)(6) Dep. Tr. 28:2-28:15.

**RESPONSE TO REQUEST FOR ADMISSION NO. 81:**

    Admitted.

**REQUEST FOR ADMISSION NO. 82:**

    Admit that NJDEP has incurred $258,019.37 in PAST COSTS at the SITE. See

Lomerson 30(b)(6) Dep. Tr. 66:19-67:3.

**RESPONSE TO REQUEST FOR ADMISSION NO. 82:**

    Plaintiffs object to this Request to the extent that it implies that after June 14,

2012, Plaintiffs will not incur additional costs related to this SITE. Subject to the specific

objections and the General Objections and without waiver of such objections, Plaintiffs

respond as follows: Denied. NJDEP has incurred $258,794.23 in PAST COSTS at the

SITE through June 14, 2012. See Costs (30)(b)(6) Deposition, Exh. 3.

**REQUEST FOR ADMISSION NO. 83:**

    Admit that NJDEP has recovered $202,445.91 of its PAST COSTS incurred at the

SITE from the Shell Defendants. See Lomerson 30(b)(6) Dep. Tr. 50:13-17.

**RESPONSE TO REQUEST FOR ADMISSION NO. 83:**

    Admitted.

**REQUEST FOR ADMISSION NO. 84:**

    Admit that NJDEP has not recovered $55,573.46 of its past costs incurred at the

SITE. See Summary of MTBE Trial Site Past Costs. See Lomerson 30(b)(6) Dep. Tr.

50:1851:6.

1

**PROOF OF SERVICE VIA LEXISNEXIS FILE & SERVE**
*New Jersey Department of Environmental Protection, et al. v. Atlantic Richfield Co., et al.*

2
United States District Court, Southern District of New York, Case No. 08 Civ. 00312 (SAS)

3
    I, the undersigned, declare that I am, and was at the time of service of the paper(s) herein referred to, over the age of 18 years and not a party to this action.  My business address is 1050

4
Fulton Avenue, Suite 100, Sacramento, CA  95825-4225.

5
    On the date below, I served the following document on all counsel in this action electronically through LexisNexis File & Serve:

6

7
**PLAINTIFFS NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION ("NJDEP"), THE COMMISSIONER OF THE NEW JERSEY DEPARTMENT OF**

8
**ENVIRONMENTAL PROTECTION, AND THE ADMINISTRATOR OF THE NEW JERSEY SPILL COMPENSATION FUND'S RESPONSES TO DEFENDANTS' REQUESTS FOR ADMISSION RELATED TO SHELL RIDGEWOOD TRIAL SITE**

9

10

11
I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

12
    Executed on November 30, 2012, at Sacramento, California.

13

14
CHRISTINA KELLER

15

16

17

18

19

20

21

22

23

24

25

26

27

28