# EXHIBIT 12

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**IN RE METHYL TERTIARY BUTYL ETHER**
**("MTBE") PRODUCTS LIABILITY**
**LITIGATION**

**This document relates to:**

*New Jersey Department of Environmental*
*Protection, et al. v. Atlantic Richfield Co., et al.,*
No. 08 Civ. 00312

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/29/16

**Master File No. 1:00-1898**
**MDL 1358 (SAS)**
**M21-88**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

### CASE MANAGEMENT ORDER NO. 123

This CMO memorializes rulings made at the April 26, 2016 status conference, as well as other agreements reached by the Parties regarding preliminary discovery for Phase II of this case.

**1)   MTBE DISCHARGE INFORMATION:**  By May 2, 2016, each Defendant shall produce the MTBE discharge/detection site information that was previously agreed on and memorialized in the Parties' February 26, 2016, email exchange.

**2)   EXCHANGE OF INITIAL DISCOVERY:**

    a)   **By Plaintiffs:** By September 19, 2016, Plaintiffs shall:

        i)   Supplement their prior productions of the following State databases, to the extent the database has been updated since its last production:

           (1)   NJEMS

           (2)   SDWIS (Safe Drinking Water Information System)

           (3)   PWTA (Private Well Testing Act)

           (4)   Potable Well Letters

    (5)    Spill Fund

    (6)    UST Fund

    (7)    Public Funding Tracking

    b)    **By Defendants**:  By September 19, 2016, each Defendant shall produce the following information for each site identified on Plaintiffs' MTBE release site list as of April 13, 2010, to the extent each Defendant has such information within its possession, custody or control:

    i)    The dates/time periods during which defendant owned the underground storage tanks;

    ii)    The dates/time periods during which defendant operated the site;

    iii)    The dates/time periods during which defendant supplied gasoline that may have contained MTBE to the site;

    iv)    The dates/time periods during which defendant conducted environmental investigation and/or remediation;

    v)    Any groundwater sampling data that relates to any sites on the Plaintiffs' MTBE release site list as of April 13, 2010, that has not already been produced in this action or is not included in the 2016 Hazsites database update.  To the extent such data has been cumulatively collected or reported (*e.g.*, in a recent site report), production of such cumulative data shall suffice.  To the extent such data is maintained in electronic format that allows users to sort or filter the data (such as Excel or Access), such data shall be produced in such format.

    vi)    The regulatory status (NFA, RAO, or open/closed spill numbers);

    vii)    Whether an LSRP has been assigned and, if so, the identity of the LSRP;

    viii)    Any public or private well sampling associated with the site; and

    ix)    Any sensitive receptors within ½ mile of the site, as identified in site-related reports.

**3)**    **OTHER INITIAL DISCOVERY:**  Plaintiffs or Defendants may serve any written discovery request it deems necessary (i) to effectuate production of the

information set forth in Section 2, above; (ii) to facilitate creation of the updated Master Site List required by Section 4, below; or (iii) to assist in the process of determining a discovery or trial procedure consistent with this Order. Any such discovery request shall be served so as to be timely responded to by no later than September 19, 2016.

**4)**    **UPDATED MASTER SITE LIST:**

**(A)** By October 14, 2016, Plaintiffs shall provide a list of all MTBE release sites that they wish to be included in the case. This list shall become the Master Release Sites List for this case. Plaintiffs may not add any additional sites to this Master Release Sites List after October 14, 2016, but may delete sites therefrom.

**(B)** Although the Master Release Sites List is conclusive as to release sites, nothing in this CMO shall preclude Plaintiffs from pursuing claims for damages and injunctive relief for receptor sites, including but not limited to, private wells and public water systems. Furthermore, nothing in this CMO shall prevent Defendants from objecting to or opposing any such claims.

**5)**    **STIPULATED SITE DISMISSALS**

a)    In light of Plaintiffs' settlement with a number of Defendants, the parties shall confer regarding sites for which all liability has been settled. Such sites shall be removed from the Master Site List.

b)    The parties shall additionally confer regarding sites (or categories of sites) that may be amenable to stipulated or voluntary resolution.

c)    Defendants Request: Nothing in this CMO shall preclude defendants from moving for summary judgment or partial summary judgment as to certain sites, group of sites, and/or claims, subject to a schedule set by the Court.

6)    Within 30 days after October 14, 2016, the parties shall begin meeting and conferring to develop a proposed approach to any necessary additional Phase II discovery and Phase II trial structure consistent with CMO 124. As soon as is practicable thereafter, the Parties shall provide the Court with a joint proposed Case Management Order consistent with this Order. To the extent they cannot reach agreement, the Parties shall submit two competing proposed Case Management Orders.

SO ORDERED:

Shira A. Scheindlin

3

U.S.D.J.

Dated: New York, New York
       April 29, 2016

# EXHIBIT 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X

                      :

IN RE METHYL TERTIARY BUTYL   :
ETHER ("MTBE") PRODUCTS     :
LIABILITY LITIGATION          :

------------------------------------------------- :

                      :

This document relates to:      :

                      :

*Commonwealth of Puerto Rico, et al. v.*  :
*Shell Oil Co., et al.*, 07 Civ. 10470    :

                      :

*New Jersey Dep't of Envtl. Prot. v. Atlantic*  :
*Richfield Co.*, 08 Civ. 0312        :

                      :

------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/29/16

ORDER

Master File No. 1:00-1898
MDL 1358 (SAS)
M21-88

SHIRA A. SCHEINDLIN, U.S.D.J.:

## CASE MANAGEMENT ORDER NO. 124

       WHEREAS both the *New Jersey*, 08 Civ. 0312, and *Puerto Rico I*, 07

Civ. 10470, cases have been partially remanded to their respective district courts

for a Phase I trial on certain focus sites;

       WHEREAS the parties have begun to engage in discovery for any trial

or trials following the Phase I trial pursuant to Case Management Orders

("CMOs") Nos. 122, 123;

       WHEREAS future discovery can be better focused with a defined

structure for any future trials;

       WHEREAS justice requires the efficient resolution of all litigation

consistent with the requirements of due process;

It is hereby ORDERED that any and all claims that remain following the Phase I trials shall be resolved in a single trial ("Phase II"), so long as such a trial protects the constitutional rights of all parties. The parties are directed to meet and confer on the structure of a Phase II trial in each case by the dates set in CMO No. 122 section 2 and CMO No. 123 section 6. Any dispute regarding the structure of such a trial will be resolved by the Court after full briefing, if required. Because the *New Jersey* and *Puerto Rico I* cases differ, the parties are not required to reach the same structure for a Phase II trial in each of those cases.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             April 29, 2016

# EXHIBIT 14

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------ X
IN RE: METHYL TERTIARY BUTYL
ETHER ("MTBE") PRODUCTS
LIABILITY LITIGATION
------------------------------------------------------
This document relates to:

*All Cases*
------------------------------------------------------ X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/11/10
```

**CASE MANAGEMENT**
**ORDER #60**

**Master File No. 1:00-1898**
**MDL 1358 (SAS)**
**M21-88**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

This Order memorializes the rulings made during the status

conference held on March 4, 2010.

1.  *City of Riverside, Quincy Community Services District, City of Fresno,*

    *California-American Water Co., Silver, Machin,* and *City of Merced*

    *Redevelopment Agency*:

    A.  In cases where the Plaintiffs have not identified sources of alleged

        MTBE contamination, they shall do so by no later than April 5, 2010.

    B.  In each case, the parties shall submit a joint proposed scheduling order

        to the Court by no later than April 5, 2010.

2.  *Yosemite Springs, City of Pomona,* and *Village of Roanoke*:

    A.  In cases where the Plaintiffs have not identified sources of alleged

        MTBE contamination, they shall do so by no later than April 30,

        2010.

B.     In each case, the parties shall submit a joint proposed scheduling order to the Court by no later than April 5, 2010.

2.   *New Jersey*:

A.     The parties shall select forty (40) sites in total for full discovery.  Each party shall select twenty (20) sites by no later than August 1, 2010.  Plaintiffs shall select ten (10) receptor sites (*e.g.*, a well or a small group of closely related wells) and ten (10) release sites (*e.g.*, a gas station).  The receptor sites may include multiple release sites.

B.     After the parties take full discovery, which may include depositions, on the forty (40) "Discovery" sites, the parties shall select sites for trial based on what they have learned.  Each side will select ten (10) sites by no later January 1, 2011 for a total of twenty (20) "Trial" sites.

3.   *Puerto Rico*: The parties are directed to be ready to discuss a discovery schedule and picking sites for discovery and trial by the next status conference.

4.   *Orange County Water District*:

A.     Each focus plume may contain a small number of closely related wells.  Accordingly, OCWD is not required to drop any wells from its focus plumes.

B.    The issue is whether each release site identified as part of a focus plume contributed to contamination of the wells associated with that plume. If OCWD provides no proof that a particular release site contributed to such contamination, and OCWD will not drop the release site from that focus plume, then defendants may file a motion for partial summary judgement on that site.

5.    *Incorporated Village of Mineola, West Hempstead Water District, Carle Place Water District, Town of Southampton, Village of Hempstead, Town of East Hampton, Westbury Water District:*

A.    Defendant Bartco is granted leave to make its motion for summary judgement in the *West Hempstead* case. The motion shall be made by no later than April 15, 2010. Plaintiff's opposition is due May 13, 2010. Defendant Bartco's reply is due May 27, 2010.

B.    The remaining parties – plaintiffs and the Bartco and Tartan defendants – shall jointly propose a discovery schedule by no later than April 5, 2010. Discovery shall be completed by October 1, 2010. At defendants' request, the parties are directed to bring any discovery disputes to the attention of the Court rather than to Special Master Warner.

C.    Defendants shall have until April 1, 2010 to amend their answer.

      D.    Defendants shall answer outstanding discovery requests by no later than April 5, 2010.

6.    The next all-cases status conference is scheduled for April 14, 2010 at 4:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:
    New York, New York
    March 9, 2010

### -Appearances-

**Liaison Counsel for Plaintiffs:**

Robin Greenwald, Esq.
Robert Gordon, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, New York  10038
Tel: (212) 558-5500
Fax: (212) 344-5461

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
McDermott Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, New York  10020
Tel: (212) 547-5583
Fax: (212) 547-5444

# EXHIBIT 15

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation | Master File No. 1:00 - 1898 MDL 1358 M21-88 |

**This Document Relates to:**

*New Jersey Department of Environmental Protection, et al. v. Atlantic Richfield Co., et al.*
No. 1:08-cv-00312

### [PROPOSED] ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR LEAVE TO FILE A FIFTH AMENDED COMPLAINT

Plaintiffs' Unopposed Motion for Leave to File a Fifth Amended Complaint is granted.

The Clerk of the Court is directed to file plaintiffs' Fifth Amended Complaint.

New defendants Lukoil North America LLC, Lukoil Pan Americas, LLC, and PJSC (formerly OAO) Lukoil shall respond to the Fifth Amended Complaint. Defendants Lukoil Americas Corporation and Getty Petroleum Marketing Inc. shall respond to the new allegations in the Fifth Amended Complaint.

Answers previously filed by all other defendants are deemed answers to the Fifth Amended Complaint.

SO ORDERED:

Vernon S. Broderick
United States District Judge

Dated: New York, New York
September 28 , 2016

# EXHIBIT 16

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

|  |  |
|---|---|
| | Case No.: SACV 03-01742-CJC(ANx) |
| ORANGE COUNTY WATER DISTRICT, | |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION |
| v. | |
| UNOCAL CORPORATION, *et al.*, | |
| Defendants. | |

## I. INTRODUCTION

Plaintiff Orange County Water District ("OCWD") brought this action against various oil and gasoline companies on May 6, 2003. Plaintiff claims that Defendants' gasoline stations released the carcinogenic compound Methyl Tertiary Butyl Ether

1   ("MTBE") into the groundwater Plaintiff manages.  In 2004, the action was transferred to

2   the Multidistrict Litigation Court ("MDL Court") in the Southern District of New York.

3   In March 2016, the action was returned to this Court.

4

5        While the parties were before the MDL Court, they conducted fact discovery,

6   expert discovery, and motion practice.  (Dkt. 97 at 4.)  One of the motions the MDL

7   Court considered was a motion for partial summary judgment brought by OCWD.  *See In*

8   *re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 824 F. Supp. 2d 524

9   (S.D.N.Y. 2011).  In its motion, OCWD requested recovery of certain costs it had

10  incurred under the Orange County Water District Act ("OCWD Act").  On June 20, 2011,

11  the MDL Court issued an order denying OCWD's motion and ordering OCWD to show

12  cause why summary judgment should not be granted in favor of Defendants on the

13  OCWD Act claim.  *In re MTBE*, 824 F. Supp. 2d at 535–36.  Then, on October 25, 2011,

14  the MDL Court issued an order granting partial summary judgment for Defendants on the

15  OCWD Act claim.  *In re MTBE*, 279 F.R.D. 131 (S.D.N.Y. 2011).  Three years later, on

16  December 18, 2014, the MDL Court granted summary judgment in Defendants' favor on

17  the OCWD Act claim.  *In re MTBE*, 67 F. Supp. 3d 619 (S.D.N.Y. 2014).

18

19       OCWD now moves for reconsideration of the MDL Court's October 25, 2011 and

20  December 18, 2014 orders, which resolved the OCWD Act claim in Defendants' favor

21  (collectively, "MDL Court Orders").  (Dkt. 284 [hereinafter, "Mot."].)  OCWD asserts

22  that reconsideration is warranted based on an intervening California Court of Appeal

23  decision, *Orange Cty. Water Dist. v. Alcoa Glob. Fasteners, Inc.*, 12 Cal. App. 5th 252

24  (Ct. App. 2017).  Because *Alcoa* constitutes an intervening change in the controlling law,

25  OCWD's motion is **GRANTED**.[1]

26

27

28  [1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for February 12, 2018, at 1:30 p.m. is hereby vacated and off calendar.

## II. BACKGROUND

The following is a summary of facts relevant to OCWD's motion.

### 1. The OCWD Act Claim

In its Fourth Amended Complaint, OCWD brought a claim under the OCWD Act "'to recover reasonable costs actually incurred since May 6, 2000,' and 'declaratory relief with respect to future expenses OCWD may incur.'" *In re MTBE*, 824 F. Supp. 2d at 528–29 (citing Fourth Amended Complaint ¶ 106).

OCWD brought this claim under Section 40-8 of the OCWD Act, which provides as follows:

(a) The district *may conduct any investigations of the quality of the surface and groundwaters within the district which the district* determines to be necessary and appropriate to determine whether those waters are contaminated or polluted.

(b) The district *may expend available funds to perform any cleanup, abatement, or remedial work* required under the circumstances which, in the determination of the board of directors, is required by the magnitude of the endeavor or the urgency of prompt action needed *to prevent, abate, or contain any threatened or existing contamination* of, or pollution to, the surface or groundwaters of the district. This action may be taken in default of, or in addition to, remedial work by the person causing the contamination or pollution, or other persons. The district may perform the work itself, by contract, or by or in cooperation with any other governmental agency.

(c) If, pursuant to subdivision (b), the contamination or pollution is cleaned up or contained, the effects thereof abated, or *in the case of threatened contamination or pollution, other necessary remedial action is taken, the person causing or threatening to cause that contamination or pollution shall be liable to the district to the extent of the reasonable costs* actually incurred in cleaning up or containing the contamination or pollution, abating the

1    effects of the contamination or pollution, or taking other remedial action.
2    The amount of those costs, together with court costs and reasonable
     attorneys' fees, shall be recoverable in a civil action by, and paid to, the
3    district. In any such action, the necessity for the cleanup, containment,
4    abatement, or remedial work, and the reasonableness of the costs incurred
     therewith, shall be presumed, and the defendant shall have the burden of
5    proving that the work was not necessary, and the costs not reasonable.

6

7    Cal. Water Code § 40-8 (emphases added).

8

9        In summary, the OCWD Act allows OCWD to recover costs incurred pursuant to
10   its power to perform "cleanup, abatement, or remedial work" to prevent threatened or
11   existing contamination to surface or groundwaters. *Id.; see also Alcoa Glob. Fasteners*,
12   12 Cal. App. 5th at 346.

13

14       **2. OCWD's Motion for Summary Judgment and the June 20, 2011 Order**

15

16       While it was before the MDL Court, OCWD filed a motion for partial summary
17   judgment to recover certain costs it had incurred pursuant to the OCWD Act. *In re*
18   *MTBE*, 824 F. Supp. 2d at 534. OCWD requested recovery for two specific categories of
19   costs: (1) costs incurred to conduct testing for MTBE at drinking water production wells,
20   and (2) costs incurred to commission reports from consultants who investigate and
21   characterize groundwater impacts from MTBE. *Id.*

22

23       The MDL Court held in an order issued on June 20, 2011 that the plain language of
24   the OCWD Act prohibits recovery for the requested costs. The MDL Court interpreted
25   the Act as expressly distinguishing between "investigations to determine whether water is
26   contaminated and subsequent efforts to remediate water found to be contaminated or
27   threatened." *Id.* at 534–35 (internal quotations omitted). Under the terms of the Act,
28   "[t]he costs incurred for remediation are recoverable, but the costs incurred for

investigation are not." *Id*. at 535. "Testing and report-commissioning constitute investigatory-work, not 'remedial action.'" *Id*. Because the MDL Court found that the requested costs were investigatory, the Court determined they were not recoverable and denied OCWD's motion for summary judgment. *Id*. Further, the MDL Court ordered OCWD to show cause why it should not grant Defendants summary judgment on the claim. *Id*. at 535–36.

### 3. The MDL Court's October 25, 2011 Order

On October 25, 2011, following its order to show cause, the MDL Court issued an order granting partial summary judgment for Defendants on the OCWD Act claim. *In re MTBE*, 279 F.R.D. at 138. The MDL Court reiterated its "previous finding that the plain language of the OCWD Act prohibits recovery of OCWD's investigatory costs." *Id*. at 135. The MDL Court clarified, however, that it was entering summary judgment only as to the specific costs incurred for testing and for commissioning consultant reports, and OCWD was not precluded from seeking future relief for remedial costs. *Id*. ("I find that OCWD's claims are ripe with respect to the costs of production well testing and the commissioning of the consultant reports. OCWD moved for summary judgment with respect to those costs. As stated above, I am granting partial summary judgment on those claims in defendants' favor. This finding, however, will not prejudice OCWD's ability to seek future relief for other remedial costs."). In effect, the MDL Court did not dismiss the claim entirely, but left open the opportunity for OCWD to identify and recover any other remedial costs.

### 4. The MDL Court's December 18, 2014 Order

More than three years after the MDL Court issued its October 25, 2011 order, the Court again considered OCWD's claim under the OCWD Act. On December 18, 2014,

the MDL Court issued an order granting summary judgment in favor of Defendants on the claim. *In re MTBE*, 67 F. Supp. 3d 619, 634 (S.D.N.Y. 2014). The MDL Court found that OCWD had not "presented or timely identified any new remedial costs incurred under the OCWD Act." *Id.* The MDL Court again reiterated her conclusion that "the District cannot recover investigative costs, which are the only types of costs under the OCWD Act that the District has identified in this action." *Id.* at 635. This order foreclosed OCWD from recovering any costs or other relief under its OCWD Act claim.

## 5. The MDL Court's Suggestion to Remand

On September 29, 2015, the MDL Court issued a Suggestion to Remand the action from the Southern District of New York to the Central District of California. (Dkt. 318-6 [Declaration of Whitney Jones Roy] Ex. 9.) The MDL Court suggested the remand of "all remaining claims as to the focus plume sites." (*Id.*) The Court attached as "Exhibit 1" a "list of the *remaining* claims for relief and Defendants at each focus plume site to be remanded." (*Id.* at Ex. 1 (emphasis added).) The list in Exhibit 1 did not include the OCWD Act claim, which had been dismissed at the time of the remand.

The Court also noted in the Suggestion to Remand that "[a]ll other claims for relief were either decided against the plaintiff or stipulated as dismissed. . . so no other claims or Defendants remain at these sites for purposes of trial after remand." (*Id.*) Based on the MDL Court's suggestion, the Judicial Panel on Multidistrict Litigation remanded the claims for the focus plume sites to this Court.

//
//
//
//

**6. *Alcoa***

On June 1, 2017, the California Court of Appeal analyzed the OCWD Act in an opinion for an unrelated case, *Orange Cty. Water Dist. v. Alcoa Glob. Fasteners, Inc.*, 12 Cal. App. 5th 252, 347–49 (Ct. App. 2017). In *Alcoa*, OCWD brought a claim under the OCWD Act and sought "to recover costs associated with . . . a proposed $200 million effort intended to address groundwater contamination in northern Orange County, California caused by volatile organic compounds (VOC's) and other chemicals." *Id*. at 268. The *Alcoa* trial court had rejected OCWD's requests under the Act for costs incurred for "installing monitoring and extraction wells." *Id*. at 346. "The [trial] court reasoned that such costs fell within the [OCWD's] power to conduct "investigations" under the OCWD Act, section 8, subdivision (a)." *Id*. "Because the OCWD Act allows recovery of costs incurred pursuant to the [OCWD's] power to perform cleanup, abatement, or remedial work under the OCWD Act, section 8, subdivision (b)—not investigations under subdivision (a)—the [trial] court found that the monitoring and extraction well costs were not recoverable." *Id*.

The California Court of Appeal concluded that "the trial court incorrectly restricted the scope of recoverable costs under the OCWD Act." *Id*. The Court of Appeal held that "[i]t was error for the trial court to conclude the two subdivisions are mutually exclusive," because OCWD could undertake action that would fall under both its powers to conduct investigations and to remediate. *Id*. The Court of Appeal further explained what kinds of actions could be recoverable:

> [A] remedial action involves much more than simply the physical cleanup or containment process itself. It involves investigation, planning, design, development, and documentation. Because these activities are part of remedial action, the costs of such activities are recoverable.

*Id*.

1    In its discussion, the *Alcoa* Court also analyzed the MDL Court's interpretation of

2    the OCWD Act, which defendants there had invoked.  The *Alcoa* Court determined that

3    the MDL Court had "adhered to a strict and unwarranted distinction between

4    investigatory costs and remedial action."  *Id*. at 348.  The *Alcoa* Court could not

5    determine whether the MDL Court's ultimate conclusion about the specific costs before it

6    was sound, but ultimately declined to adopt the MDL Court's interpretation of the

7    OCWD Act.  *Id*. at 348–49 ("Because we do not have the relevant record before us, we

8    cannot comment on the MTBE Litigation court's conclusion regarding the specific costs

9    at issue in that litigation.  But we are not persuaded that its conclusion should affect our

10   interpretation of the OCWD Act discussed above.").

11

12    Plaintiff now moves the Court to reconsider and set aside the MDL Court Orders

13   resolving the OCWD Act claim in Defendants' favor.  Plaintiff argues that the *Alcoa*

14   decision "invalidates the legal basis for the MDL Court's order[s] dismissing the

15   District's OCWD Act claim."  (Mot. at 2.)

16

17   **III.  LEGAL STANDARD**

18

19    Plaintiff invokes Federal Rule of Civil Procedure 54(b) as a basis to reconsider the

20   MDL Court's order dismissing Plaintiff's OCWD Act claim.  Rule 54(b) provides that

21   "any order or other decision, however designated, that adjudicates fewer than all the

22   claims [at issue in an action] does not end the action . . . and may be revised at any time

23   before the entry of a judgment adjudicating all the claims."  This Rule, the Ninth Circuit

24   has explained, "explicitly grants courts the authority to modify their interlocutory

25   orders."  *Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461, 465 (9th Cir. 1989).

26

27    Rule 54(b) does *not* describe the standard for reconsideration of an interlocutory

28   order or otherwise detail in what circumstances revised orders should issue.  Those

-8-

1    standards are similar to the ones set by Rules 59 and 60.  *Lyden v. Nike Inc.*, No. 3:13-cv-
2    00662-HZ, 2014 WL 4631206, at *1 (D. Ore. Sept. 15, 2014) ("Rule 54(b) does not
3    address the standards a district court should apply when reconsidering an interlocutory
4    order, but several district courts in the Ninth Circuit have applied standards of review
5    substantially similar to those used under Rules 59(e) and 60(b).").  Reconsideration is
6    appropriate under Rules 59 and 60 when "the district court (1) is presented with newly
7    discovered evidence, (2) committed clear error or the initial decision was manifestly
8    unjust, or (3) if there is an intervening change in controlling law[, or] other, highly
9    unusual circumstances warranting reconsideration."  *Sch. Dist. No. 1J, Multnomah Cty.,*
10   *Oregon v. ACandS, Inc.*, 5 F.3d 1255, 1262-63 (9th Cir. 1993).

12        The Local Rules impose similar restrictions.  Local Rule 7-18 provides that "a
13   motion for reconsideration may be made only on the grounds of (a) a material difference
14   in fact or law from that presented to the Court before such decision that in the exercise of
15   reasonable diligence could not have been known to the party moving for reconsideration
16   at the time of such decision, or (b) the emergence of new material facts or a change of
17   law occurring after the time of such decision, or (c) a manifest showing of a failure to
18   consider material facts presented to the Court before such decision."  Local Rule 7-18.[2]

20   //

---

[2] Defendants cite the law of the case doctrine as a discretionary basis to decline reconsideration of the
MDL Court's order. (Dkt. 318 at 13.) Defendants claim that, under the law of the case doctrine,
reconsideration of a transferee court's order is inappropriate. (*Id.*) Defendants' argument is overstated.
The law of the case doctrine does generally preclude a court "from reconsidering an issue previously
decided by the same court, or a higher court in the identical case." *In re Oreck Corp. Halo Vacuum &
Air Purifiers Mktg. & Sales Practices Litig.*, 282 F.R.D. 486, 491 (C.D. Cal. 2012) (citation and
quotations omitted). But, "[a] court may have discretion to depart from the law of the case where: (1)
the first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the
evidence on remand is substantially different; (4) other changed circumstances exist; or (5) a manifest
injustice would otherwise result." *Id.* (citation and quotations omitted). The Court may therefore depart
from the law of the case under these specified circumstances, which are essentially identical to the
factors identified in the Federal Rules of Civil Procedure and the Local Rules as warranting
reconsideration.

# IV. DISCUSSION

### 1. Jurisdiction

Defendants argue that this Court is without jurisdiction to reconsider the MDL Court's dismissal of the OCWD Act claim. (Dkt. 318 [Opposition] at 10.) Defendants assert that the OCWD Act claim is still before the MDL Court in the Southern District of New York because it is not among the claims that the MDL Court remanded to this District. (*Id.* at 10–11.) In support, Defendants cite to the MDL Court's Suggestion to Remand, which requests that the MDL Panel remand to this District all "remaining claims as to the focus plume cites" and which attaches, as Exhibit 1, a list of the specific claims remanded for each focus site. (*Id.* at 11.) Defendants argue that because Exhibit 1 does not identify the OCWD Act claim, it was not remanded to this District. (*Id.*)

Defendants' argument turns on an unwarranted, hyper-literal reading of the MDL Court's Suggestion to Remand. It is clear by the terms of the Suggestion to Remand that all of the claims relating to the focus plume sites were remanded to this District. The MDL Court suggested that "all *remaining* claims as to the focus plume sites" be remanded, and further clarified that "all *other* claims for relief were either decided against the plaintiff or stipulated as dismissed . . . so no other claims or Defendants remain at these sites for purposes of trial after remand." (Dkt. 318-6 Ex. 9 (emphasis added).) This language clearly indicates that the MDL Court determined that the entire case, as it relates to the focus plume sites, should be remanded to this District for trial. The remand was not limited to the specific, pending claims listed in Exhibit 1. The MDL Court also expressly relinquished jurisdiction over other claims relating to the focus plume sites, including the OCWD Act claim, by clarifying that "no other claims" remain at these sites after remand. This Court therefore has jurisdiction over all claims relating to the focus plume sites.

### 2. **Motion for Reconsideration**

Plaintiff claims that *Alcoa* constitutes an intervening change in the law that warrants reconsideration and invalidates the MDL Court Orders.  The Court agrees.

The MDL Court relied on an interpretation of the OCWD Act that the *Alcoa* Court denounced as erroneous.  The MDL Court's rulings reflect that it consistently adhered to an interpretation of the statute that categorically precludes recovery for investigatory costs.  *In re MTBE*, 824 F. Supp. 2d at 535 ("The costs incurred for remediation are recoverable, but the costs incurred for investigation are not."); *In re MTBE*, 279 F.R.D. at 135 ("the plain language of the OCWD Act prohibits recovery of OCWD's investigatory costs"); *In re MTBE*, 67 F. Supp. 3d at 634 ("the District cannot recover under the OCWD Act costs that are clearly investigative").  This interpretation was rejected by *Alcoa*, which held that the Act does not treat remediation and investigation as mutually exclusive categories.  *Alcoa Glob. Fasteners, Inc.*, 12 Cal. App. 5th at 346 ("[A] remedial action involves much more than simply the physical cleanup or containment process itself.  It involves *investigation*, planning, design, development, and documentation.").

*Alcoa* undoubtedly provides a broader universe of recoverable costs than that afforded under the MDL Court's interpretation.  *Alcoa* rejected a narrow construction of "remediation costs" that is arbitrarily divorced from "investigation costs."  Instead, *Alcoa* embraced the reality that adequate and effective remediation can be implemented only through reasonable investigation and planning.  In fact, as the *Alcoa* Court thoroughly explained, the United States Environmental Protection Agency has set forth standards for environmental remediation programs that require extensive investigation.  *See id*. at 337.  The standards mandate a number of procedural steps, including collection of data, field investigations, treatability studies, and baseline risk assessments.  *Id*. (citing 40 C.F.R. § 300.430(d)(1)).  In short, remedial action is not limited to post-hoc cleanups, but rather

1 | "involves *investigation*, planning, design, development, and documentation." *Id*. at 346.

2 | Consequently, the OCWD Act provides recovery for all of these costs, including any

3 | investigatory costs that are associated with actual or anticipated remediation. *Id*.

4 | ("Because these activities are part of remedial action, the costs of such activities are

5 | recoverable.").

7 | *Alcoa* demonstrates that the MDL Court relied on an incorrect legal standard.

8 | *Alcoa* therefore constitutes an intervening change in the law, which cannot be disregarded

9 | by this Court. *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1222 (9th Cir. 2015) ("We must

10 | follow the decision of the intermediate appellate courts of the state unless there is

11 | convincing evidence that the highest court of the state would decide differently.")

12 | (citations and internal quotations omitted).  Failure to follow *Alcoa* would prejudice

13 | OCWD, because OCWD would have no recourse to recover certain investigatory costs,

14 | which are inextricably linked to remediation, that have been categorically and improperly

15 | excluded in this case.  Reconsideration is therefore warranted.

## V. CONCLUSION

19 | For the foregoing reasons, Plaintiff's motion for reconsideration is **GRANTED**.

20 | The MDL Court Orders are **VACATED**.

24 | DATED:      February 8, 2018

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE

# EXHIBIT 17

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

|  |  |
|---|---|
| **ORANGE COUNTY WATER DISTRICT,**<br><br>        **Plaintiff,**<br>    **v.**<br><br>**UNOCAL CORPORATION, et al.,**<br><br>        **Defendants.** | **Case No.: SACV 03-01742-CJC(DFMx)**<br><br><br>**ORDER GRANTING OCWD'S MOTION FOR RECONSIDERATION OF ORDERS REGARDING NEGLIGENCE CLAIM** |

## I.  INTRODUCTION

    Plaintiff Orange County Water District ("OCWD") filed this action against various oil and gasoline companies on May 6, 2003.  OCWD claims that Defendants' gasoline stations contaminated the groundwater it manages when Defendants used the gasoline

additive methyl tertiary butyl ether ("MTBE") and/or tertiary butyl alcohol ("TBA"), which is a product formed by the natural degradation of MTBE in water.  OCWD brought, among other claims, a cause of action for negligence.  In 2004, the action was transferred to the Multidistrict Litigation Court ("MDL Court") in the Southern District of New York.  In March 2016, the action was remanded to this Court.

While the parties were before the MDL Court, they conducted extensive discovery and motion practice.  (Dkt. 97 at 4.)  One of the motions the MDL Court considered was Defendants' motion for summary judgment on OCWD's negligence claim.  *See In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 475 F. Supp. 2d 286 (S.D.N.Y. 2006).  Defendants argued that the negligence claim was time-barred because their alleged negligent conduct caused injury to OCWD well before the three-year statute of limitations.  The MDL Court granted partial summary judgment for Defendants and held that some of the MTBE releases that occurred before the limitations period were time-barred.  *In re MTBE*, 676 F. Supp. 2d 139, 154 (S.D.N.Y. 2009).  In its reasoning, the MDL Court rejected OCWD's argument that a common law doctrine called "continuous accrual" should apply to its negligence claim.  *See In re MTBE*, 475 F. Supp. 2d at 299 n.81.

The MDL Court issued two decisions regarding Defendants' summary judgment motion on the negligence claim—the first on December 14, 2006, and the second on November 16, 2009 (collectively, "MDL Court Orders").  OCWD now moves for reconsideration of these Orders.  (Dkt. 330 [Motion, hereinafter "Mot."].)  OCWD asserts that on August 4, 2017, several years after the MDL Court Orders were issued, the California Court of Appeals ruled in an unrelated case, *Orange Cty. Water Dist. v. Sabic Innovative Plastics US, LLC*, 14 Cal. App. 5th 343, 396 (Ct. App. 2017), that the doctrine of continuous accrual *does* apply to negligence claims.  OCWD argues that *Sabic*

1  warrants reconsideration of the MDL Court Orders.  The Court agrees and, for reasons

2  more fully explained below, **GRANTS** OCWD's motion for reconsideration.[1]

## II. BACKGROUND

### A. OCWD's Negligence Cause of Action

OCWD's Third Amended Complaint charges Defendants with negligence.  (Dkt. 330-2 ¶¶ 76–86.)  Specifically, OCWD alleges that Defendants negligently failed to carry out the following actions:

> (1) prevent leaks of MTBE and/or TBA through the use of appropriate technology; (2) install and maintain gasoline delivery systems that prevented leaks and facilitated prompt detection and containment of any leaks; (3) monitor and discover leaks as soon as possible; (4) warn those who may be injured as a result of the leak(s); and (5) clean up and abate MTBE and/or TBA spill(s) as thoroughly and as soon as reasonably possible and in a manner necessary to prevent harm and injury.

(*Id.* ¶ 79.)  OCWD asserts that its negligence claim is based on a series of activities, beginning with Defendants' initial use of MTBE and extending to their failure to remediate any contamination or potential contamination.  (Mot. at 8–9.)

### B. The MDL Court's December 14, 2006 Order

In 2006, Defendants sought summary judgment on several of OCWD's claims, including the negligence claim, arguing that they are time-barred.  *See In re MTBE*, 475 F. Supp. 2d at 288.  The MDL Court initially addressed Defendants' motion in its

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for April 16, 2018, at 1:30 p.m. is hereby vacated and off calendar.

1  December 14, 2006 Order. *See generally id.* The MDL Court determined that under

2  California law a three-year statute of limitations applies, which is triggered once OCWD

3  suffered "appreciable harm" from Defendants' conduct. *Id.* at 291–92 (citing California

4  Code Civ. Proc. § 338(a)–(b); *San Francisco Unif. Sch. Dist. v. W.R. Grace & Co.*, 37

5  Cal. App. 4th 1318, 1326 (Cal. Ct. App. 1995)). The MDL Court also noted that because

6  OCWD filed its original Complaint on May 6, 2003, the relevant limitations date for

7  OCWD's claims is May 6, 2000. *Id.*

8

9    The MDL Court then made two findings relevant here. First, the MDL Court

10  analyzed when OCWD can be said to have suffered appreciable harm, *i.e.*, an injury,

11  triggering the limitations period. *Id.* at 293. The MDL Court reasoned that the "mere

12  release of MTBE-blended gasoline" would not cause the requisite harm, but that "OCWD

13  clearly suffered appreciable harm when the level of contamination at a particular location

14  caused OCWD to act, or reasonably should have caused it to act, in response to the

15  contamination." *Id.* The MDL Court further stated that "[b]ecause determining whether

16  OCWD should have taken steps to respond to particular releases is a fact intensive

17  inquiry, it cannot be resolved by summary judgment at this time." *Id.* at 295. The MDL

18  Court then allowed the parties to submit supplemental briefing regarding the precise level

19  of MTBE contamination that reasonably should have caused OCWD to respond, thereby

20  causing appreciable harm and triggering the limitations period. *Id.* at 299.

21

22    Second, the MDL Court found that the common law doctrine of continuous accrual

23  should not apply to OCWD's negligence claim. *Id.* at 299 n.81. OCWD argued that even

24  if the level of contamination at a certain site caused, or should have caused, OCWD to

25  respond before the limitations date, the contamination was still actionable under the

26  continuous accrual doctrine if it continued to exist after the limitations date. *Id.* In

27  response, the MDL Court held that "[t]his argument fails because California's continuing

28

-4-

tort doctrine only applies to claims of continuing nuisance and continuing trespass," and not negligence. *Id.*

### C.  The MDL Court's November 16, 2009 Order

As noted above, the MDL Court allowed the parties to submit supplemental briefing to determine the precise level of MTBE contamination that reasonably should have caused OCWD to respond, triggering the limitations period. *Id.* at 299.  The MDL Court considered the supplemental briefing in an Order issued on November 16, 2009. *In re MTBE*, 676 F. Supp. 2d at 149.

The MDL Court ultimately found that "OCWD was appreciably harmed as a matter of law when MTBE was detected at or above five [parts per billion] at any monitoring well within OCWD's territory." *Id.*  In support, the MDL Court cited a California Department of Health Services regulation, which states that MTBE at a level of five parts per billion "may adversely affect the odor or appearance of the water and may cause a substantial number of persons served by the public water system to discontinue its use, or [] may otherwise adversely affect the public welfare." *Id.* at 148 n.47 (quoting Cal. Health & Safety Code § 116275(d)).  The MDL Court also relied on OCWD's representation that "its statutory responsibility to protect groundwater was triggered when contamination levels at monitoring wells within its territory reached five [parts per billion]." *Id.* at 148.  However, OCWD objected to the MDL Court's determination of when it was appreciably harmed, and argued that it did not suffer appreciable harm merely because its statutory responsibility had been triggered. *Id.*  Instead, OCWD argued that it was appreciably harmed only when it became aware of insufficient remedial efforts by other government agencies that were concurrently overseeing the wells. *Id.* at 148 n.52.

1    The MDL Court rejected OCWD's arguments and dismissed OCWD's negligence

2    claim as to releases of MTBE that were detected in OCWD's monitoring wells at or

3    above five parts per billion prior to the limitations date, May 6, 2000. *Id.* at 154. The

4    MDL Court also reiterated its determination that the continuous accrual doctrine does not

5    apply to OCWD's negligence claim. *Id.* at 152.

6

7    **D. *Sabic***

8

9    On August 4, 2017, after this action had been remanded to this Court, the

10   California Court of Appeal issued an order in a separate groundwater contamination case

11   brought by OCWD, *Orange Cty. Water Dist. v. Sabic Innovative Plastics US, LLC*, 14

12   Cal. App. 5th 343 (Ct. App. 2017). In *Sabic*, OCWD brought an action against various

13   businesses that allegedly released hazardous substances, including volatile organic

14   compounds and percholorate, at various sites in the so-called "South Basin" area of

15   Orange County, California. *Sabic*, 14 Cal. App. 5th at 354–55.

16

17   OCWD brought, as it did here, a cause of action for negligence, which "rested on

18   allegations that defendants failed to exercise due care in the handling, use, and

19   remediation of hazardous substances." *Id.* at 362. When the *Sabic* parties were before

20   the trial court, the defendants moved for summary adjudication of the negligence claim as

21   barred by the statute of limitations. *Id.* at 394. The defendants argued that OCWD

22   became aware of, or should have known of, the contamination more than three years

23   before it filed the complaint. *Id.* The trial court agreed with the defendants and

24   dismissed the claim. *Id.*

25

26   On appeal, OCWD argued that summary adjudication of its negligence was

27   inappropriate under the doctrine of continuous accrual. OCWD argued that, its complaint

28   alleged a series of negligent acts—from release of the contaminants to failure to

1    remediate—and under the doctrine of continuous accrual the defendants had to meet their

2    burden of showing that their last negligent act occurred outside the statute of limitations.

3    *Id*. at 127–28.  In other words, OCWD argued that it did not matter when they first

4    learned of the contamination, so long as the defendant's last negligent act, *i.e.*, failure to

5    remediate, fell within the limitations period.  *Id*.

6

7          The Court of Appeals agreed with OCWD and reversed the grant of summary

8    adjudication.  The Court of Appeals first discussed the doctrine of continuous accrual

9    under California law:

10

11       Generally speaking, continuous accrual applies whenever there is a
     continuing or recurring obligation: When an obligation or liability arises on

12   a recurring basis, a cause of action accrues each time a wrongful act occurs,
     triggering a new limitations period.  Because each new breach of such an

13   obligation provides all the elements of a claim—wrongdoing, harm, and
     causation—each may be treated as an independently actionable wrong with

14   its own time limit for recovery.  A plaintiff may pursue actionable wrongs

15   for which the statute of limitations has not yet expired, even if earlier

16   wrongs would be barred.  Under the theory of continuous accrual, a series of
     wrongs or injuries may be viewed as each triggering its own limitations

17   period, such that a suit for relief may be partially time-barred as to older

18   events but timely as to those within the applicable limitations period.

19

20   *Id*. at 395 (citations and quotations omitted).

21

22         The Court of Appeals then noted that OCWD's negligence claim identified a series

23   of activities, "spanning the initial handling and use of hazardous substances to their

24   disposal, release, and remediation."  *Id*. at 396.  It reasoned that each of these activities

25   could have contributed to the actionable harm, *i.e.*, groundwater contamination.  *Id*. at

26   397.  "For example, a defendant's negligent release of hazardous substances could cause

27   some groundwater contamination.  A defendant's later negligent remediation effort could

28   cause additional groundwater contamination, in different areas, with different effects."

*Id.* Based on this reasoning, the Court of Appeals found that, "[u]nder the doctrine of continuous accrual, if any of these negligent acts occurred within the statute of limitations, the cause of action is not barred." *Id.* at 396.  The Court of Appeals also noted that California courts had not previously applied continuous accrual to negligence claims, but there was no reasoned justification for declining to apply it here. *Id.* ("We see no reason why the theory of continuous accrual should not apply to negligence claims.")

Relying on *Sabic*, OCWD now brings a motion for reconsideration of the MDL Court Orders. (*See generally* Mot.)  OCWD claims that *Sabic* constitutes an intervening change in the law and establishes that the partial grant of summary judgment on OCWD's negligence claim was inappropriate. (*Id.*)

## III.   LEGAL STANDARD

Plaintiff invokes Federal Rule of Civil Procedure 54(b) as a basis to reconsider the MDL Court Orders.  Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims [at issue in an action] does not end the action . . . and may be revised at any time before the entry of a judgment adjudicating all the claims." This Rule, the Ninth Circuit has explained, "explicitly grants courts the authority to modify their interlocutory orders." *Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461, 465 (9th Cir. 1989).

Rule 54(b) does *not* describe the standard for reconsideration of an interlocutory order or otherwise detail in what circumstances revised orders should issue.  Those standards are similar to the ones set by Rules 59 and 60. *Lyden v. Nike Inc.*, No. 3:13-cv-00662-HZ, 2014 WL 4631206, at *1 (D. Ore. Sept. 15, 2014) ("Rule 54(b) does not address the standards a district court should apply when reconsidering an interlocutory order, but several district courts in the Ninth Circuit have applied standards of review

substantially similar to those used under Rules 59(e) and 60(b).").  Reconsideration is appropriate under Rules 59 and 60 when "the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law[, or] other, highly unusual circumstances warranting reconsideration." *Sch. Dist. No. 1J, Multnomah Cty., Oregon v. ACandS, Inc.*, 5 F.3d 1255, 1262–63 (9th Cir. 1993).

The Local Rules impose similar restrictions.  Local Rule 7-18 provides that "a motion for reconsideration may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision."  Local Rule 7-18.

## IV. DISCUSSION

### A. Appreciable Harm

As an initial matter, the Court finds that the MDL Court erred in holding that OCWD was appreciably harmed as a matter of law when MTBE contamination reached a level of five parts per billion.  Instead, summary judgment on this issue is inappropriate as there is a triable issue of material fact regarding when OCWD suffered appreciable harm.[2]

---

[2] The substantive law governing the statute of limitations is California law, but "[w]hether evidence on a particular issue is sufficient to raise a question of fact for the jury . . . is governed by federal law." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1050 (9th Cir. 2014) (citations omitted).

1   "The elements of a cause of action for negligence are (1) the existence of a duty to

2 exercise due care, (2) breach of that duty, (3) causation, and (4) damages." *Rossetta v.*

3 *CitiMortgage, Inc.*, 18 Cal. App. 5th 628, 637 (Ct. App. 2017).  Because damage is the

4 last element of a negligence cause of action, "the cause of action accrues once any actual

5 and appreciable harm has occurred." *San Francisco Unified Sch. Dist.*, 37 Cal. App. 4th

6 at 1330.  The statute of limitations begins only once appreciable harm has been realized.

7 *Id*.  The general rule is that "the determination of the time when [a] plaintiff suffered

8 damage raises a question of fact." *Adams v. Paul*, 11 Cal. 4th 583, 586 (1995) (quoting

9 *Budd v. Nixen*, 6 Cal. 3d 195, 202 (1971)).  "If the material facts are undisputed, the court

10 may, however, resolve the issue of when the plaintiff suffered manifest and palpable

11 injury as a matter of law." *Id*. (citations omitted).

13   The MDL Court improperly resolved the issue of when OCWD suffered

14 appreciable harm when there are triable disputes of material facts at issue.  The MDL

15 Court held that "OCWD was appreciably harmed as a matter of law when MTBE was

16 detected at or above five [parts per billion]." *In re MTBE*, 676 F. Supp. 2d at 149.  But,

17 there is a dispute of fact as to whether OCWD was in fact injured once the levels reached

18 five parts per billion.  OCWD represents that it has no obligation to take remedial action

19 until the MTBE contamination escapes remediation by other governmental agencies.  *Id*.

20 at 146 (explaining OCWD's argument regarding appreciable harm).  So, according to

21 OCWD, it is not appreciably harmed until it detects that MTBE contamination escaped

22 remedial efforts by other government agencies, causing OCWD to step in and incur the

23 cost of remediation.  Therefore, there is a dispute of material fact as to whether

24 appreciable harm occurs when OCWD is forced to remediate, or at some earlier point in

25 time when the MTBE contamination reaches a certain level.

27 //

28 //

1     The MDL Court improperly ignored this factual dispute. Indeed, the MDL Court

2  inexplicably disregarded its own statements indicating that when OCWD suffered

3  appreciable harm "is a fact intensive inquiry." *In re MTBE*, 475 F. Supp. 2d at 295.

4  Instead, the MDL Court proceeded to rely on a California Department of Health Services

5  regulation and hold as a matter of law that the appreciable harm occurred when MTBE

6  was detected at levels of five parts per billion, regardless of whether this level triggered

7  OCWD's remedial activities. *In re MTBE*, 676 F. Supp. 2d at 146–148. In doing so, the

8  MDL Court failed to consider the disputed material facts regarding when OCWD acted or

9  should have acted to remediate the MTBE contamination.

10

11     In short, when OCWD suffered appreciable harm, *i.e.*, when it should have acted in

12  response to MTBE contamination, is a fact intensive inquiry that cannot be resolved on

13  summary judgment. *See, e.g., City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036,

14  1052 (9th Cir. 2014) (In a water contamination case brought by the city of Pomona, the

15  defendant failed to demonstrate as a matter of law that negligence claim was time-barred.

16  There was a dispute of fact as to whether certain testing and reporting requirements

17  triggered the city's appreciable harm.).[3]

18

19  //

20  //

21  //

22  //

23

24  [3] *City of Pomona* cites, with approval, the MDL Court's December 14, 2006 Order, which indicated that "whether OCWD should have taken steps to respond to particular releases is a fact intensive inquiry,

25  [and] it cannot be resolved by summary judgment at this time." *In re MTBE*, 475 F. Supp. 2d at 295. *City of Pomona* does not mention the MDL Court's subsequent November 16, 2009 Order, which ruled

26  that summary judgment could be granted where releases were detected at or above five parts per billion. So, *City of Pomona* does not endorse the MDL Court's ultimate finding that summary judgment was

27  appropriate as a matter of law. Instead, it approves of only the MDL Court's statements in its 2006 Order that appreciable harm "is a very fact intensive inquiry that is not easily decided on summary

28  judgment." *City of Pomona*, 750 F.3d at 1052 (citing *In re MTBE*, 475 F. Supp. 2d at 295).

Case 1:08-cv-00312-VSB-VF   Document 564-9   Filed 01/02/19   Page 42 of 43
Case 8:03-cv-01742-CJC-DFM   Document 342   Filed 04/10/18   Page 12 of 13   Page ID
#:16849

**B. Continuous Accrual**

The Court also finds that summary judgment on OCWD's negligence claim was inappropriate because the MDL Court failed to apply the doctrine of continuous accrual. When the MDL Court rejected OCWD's request to apply the continuous accrual doctrine, the only justification it gave was that the doctrine does not apply to negligence claims. *See In re MTBE*, 676 F. Supp. 2d at 152. This justification is no longer viable, however, because the California Court of Appeal held in *Sabic* that continuous accrual does apply to negligence claims. *Sabic*, 14 Cal. App. 5th at 396 ("We see no reason why the theory of continuous accrual should not apply to negligence claims.") *Sabic* therefore constitutes an intervening change in the law, warranting reconsideration. Following *Sabic*, if any of the negligent acts alleged in support of OCWD's negligence cause of action occurred within the statute of limitations, the cause of action is not time-barred. *Id.*

Defendants argue that OCWD forfeited its right to assert the continuous accrual doctrine because it failed to raise the argument before the MDL Court. (*See* Dkt. 340 at 6.) But, this argument is belied by the MDL Court's own statements, which expressly acknowledge that OCWD *had* requested to apply continuous accrual to its negligence claim. *See In re MTBE*, 475 F. Supp. 2d at 299 n.81 ("OCWD . . . argue[s] that if contamination is present both before and after the limitations date, any claims remain timely because of the *continuing tort doctrine*.") (emphasis added). Accordingly, the Court finds that OCWD has not forfeited its continuous accrual argument.[4]

---

[4] Defendants also claim that reconsideration of the MDL Court Orders will require significant additional discovery and a continuation of the currently scheduled trial date. (Dkt. 340 at 20–25.) OCWD disputes this contention and represents that much of the same evidence used to prove its other causes of action will support its negligence claim. (Dkt. 341 at 19.) Because there is no evidence of OCWD's bad faith or improper motive, the Court will not consider Defendants' claims of undue delay at this time. But if Defendants' concerns are well founded, they may file an appropriate motion to continue the discovery deadlines or trial in light of the Court's ruling.

Case 1:08-cv-00312-VSB-VF   Document 564-9   Filed 01/02/19   Page 43 of 43
Case 8:03-cv-01742-CJC-DFM   Document 342   Filed 04/10/18   Page 13 of 13   Page ID
#:16850

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion for reconsideration is **GRANTED**. The MDL Court Orders are **VACATED**.

DATED:      April 10, 2018

_____

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE