UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X
                            :

IN RE: METHYL TERTIARY BUTYL  :
ETHER ("MTBE") PRODUCTS      :
LIABILITY LITIGATION           :          **OPINION AND ORDER**
------------------------------------------------- :
                            :          **Master File No. 1:00–1898**
This document relates to:      :          **MDL 1358 (SAS)**
                            :          **M 21-88**
Hope Koch, et al. v. John R. Hicks, et al., :
05 Civ. 5745 (SAS)           :
                            :
------------------------------------------------- X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

This case is one of dozens in a multi-district litigation ("MDL"), in which numerous plaintiffs are seeking relief from contamination or threatened contamination of groundwater from various defendants' use of the gasoline additive methyl tertiary butyl ether ("MTBE").[1]  This opinion relates only to *Hope*

---

[1]      For a full recitation of plaintiffs' fact allegations see *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 175 F. Supp. 2d 593 (S.D.N.Y. 2001) ("*MTBE I*") (concerning preemptive effect of Clean Air Act); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 209 F.R.D. 323 (S.D.N.Y. 2002) ("*MTBE II*") (denying class certification); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 342 F. Supp. 2d 147 (S.D.N.Y. 2004) ("*MTBE III*") (federal agent jurisdiction); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 341 F. Supp. 2d 351 (S.D.N.Y. 2004) ("*MTBE IV*") (declining to abstain); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 341 F. Supp. 2d 386 (S.D.N.Y. 2004) ("*MTBE V*")

1

Dockets.Justia.com

*Koch, et al. v. John R. Hicks, et al.*, 05 Civ. 5745.

On June 30, 2004, Hope and Frank Koch ("*Koch* plaintiffs") filed a class action complaint in Circuit Court for Harford County, Maryland claiming that John R. Hicks, operator of the Crossroads Exxon located at 2800 Fallston Road, in Fallston Maryland ("Crossroads Exxon"), and Exxon Mobil Corporation ("ExxonMobil") caused substantial property damage and materially increased the health risks to homeowners and/or residents of properties in the vicinity of the Crossroads Exxon through "unlawful and wrongful storage of MTBE."[2] The *Koch* plaintiffs asserted causes of action for: (1) public nuisance, (2) private nuisance, (3) trespass to property, (4) a violation of section 4-409 of Maryland's Environment Article, (5) negligence, and (6) "medical monitoring."[3]

---

(bankruptcy jurisdiction); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 361 F. Supp. 2d 137 (S.D.N.Y. 2004) ("*MTBE VI*") (sovereign immunity); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 364 F. Supp. 2d 329 (S.D.N.Y. 2004) ("*MTBE VII*") (preemption constitutes a colorable federal defense for purposes of the federal officer removal statute).

[2]     6/30/04 Class Action Complaint, *Koch, et al. v. Hicks, et al.*, No. 12-C-04-1834 (Md. Cir. Harford County) ("*Koch* Complaint") ¶ 1, Ex. 4 to Notice of Removal of ExxonMobil Corporation ("ExxonMobil's Removal Notice").

[3]     *Id.* ¶¶ 32-68. The fourth count alleging a violation of section 4-409 of Maryland's Environment Article was voluntarily dismissed by the plaintiffs on October 4, 2004 after initial discovery had begun. *See* Docket Report for *Koch, et al. v. Hicks, et al.*, No. 12-C-04-1834 (Md. Cir. Harford County).

On September 1, 2004, Stephen and Traci A. Wagner, William and Joann Bellington, and Ernesto and Phyllis Ercolano ("*Wagner* plaintiffs") filed their second class action complaint against ExxonMobil and Hicks.[4] Plaintiffs had dismissed their first complaint when it was removed to federal court by ExxonMobil.[5] In this second complaint, plaintiffs dropped their strict liability claim and asserted causes of action for: (1) negligence, (2) private nuisance, (3) trespass, and (4) violation of section 4-409 of Maryland's Environment Article.[6] They alleged that defendants had "threatened and/or recklessly contaminated and poisoned the individual wells that supply water in the Fallston/Baldwin area of Harford County, Maryland."[7]

---

[4]     ExxonMobil was served with the *Wagner II* Complaint on September 15, 2004 and Hicks was served with the Complaint on September 20, 2004. *See* ExxonMobil's Removal Notice ¶ 11.

[5]     Their first complaint was filed on July 1, 2004 against the same defendants asserting causes of action for: (1) strict liability for a "defective product" that was "abnormally dangerous," (2) negligence, (3) private nuisance, and (4) tresspass. 8/12/04 Class Action Complaint, *Wagner, et al. v. Hicks, et al.*, No. 12-C-04-1851 (Md. Cir. Harford County) ("*Wagner I* Complaint") ¶¶ 92-129. On August 12, 2004, *Wagner I* was removed by ExxonMobil and then voluntarily dismissed pursuant to Rule 41(a)(1) on September 1, 2004.

[6]     9/1/04 Class Action Complaint, *Wagner, et al. v. Hicks, et al.*, 12-C-04-2448 (Md. Cir. Harford County) ("*Wagner II* Complaint") ¶¶ 50-73, Ex. 4 to ExxonMobil's Removal Notice.

[7]     *Id.* ¶ 33.

On September 22, 2004, Judge Emory A. Plitt of the Circuit Court for Harford County, on his own initiative, consolidated the two Complaints, *Koch* and *Wagner II*, pursuant to Maryland Rule 2-503.[8] The Consolidation Order stated that the two cases, "involving common questions of law, fact, and subject matter, are . . . consolidated for all future purposes."[9] The court assigned a new consolidated docket number to the cases: Docket No. 12-C-04-1834 (the original docket number for *Koch*).

On September 24, 2004, the *Koch* plaintiffs wrote to Judge Plitt stating they were concerned about the effect of consolidation on removal and requesting that he vacate his order. They proposed the order be re-issued with the following language: "The above-captioned case and the case of *Wagner v. Hicks*, Case No. 12-C-04-2448, involving common questions of law, fact, and subject

---

[8]     Rule 2-503 states in relevant part that "[w]hen actions involve a common question of law or fact or a common subject matter, the court, on motion or on its own initiative, may order a joint hearing or trial or consolidation of any or all of the claims, issues, or actions." On September 4, 2004, ExxonMobil asked Judge Plitt to schedule a conference to coordinate motions in the *Koch* action with motions in the recently filed *Wagner II* action, noting that it was a competing class action. *See* Defendant ExxonMobil Corporation's Preliminary Response to Class Certification and Request for Scheduling Conference at 1-2, Ex. 8 to Plaintiffs' Reply to ExxonMobil's Memorandum in Opposition to Plaintiffs' Motions to Remand ("Reply Mem."). But ExxonMobil did not move for consolidation.

[9]     9/23/04 Order of Consolidation ("Consolidation Order") at 1, Ex. A to Plaintiffs' Memorandum of Law in Support of Motion to Remand ("Pl. Mem.").

matter, are, pursuant to Maryland Rule 2-503, consolidated for all pre-trial discovery, pre-trial motions practice, and for trial; but both cases are not consolidated as a single action."[10] Judge Plitt denied the *Koch* plaintiffs' request by letter stating "The Order of Consolidation that I issued shall stand as is. If as the matter progresses there is some need to separate any claims, Rule 2-503 provides appropriate mechanisms to do that."[11] That same day, he sent a separate letter to both sets of plaintiffs regarding pending motions and their requests for class certification.[12] In that letter, he made clear that each stage was to occur jointly for the consolidated cases and explained that if he decided class certification was appropriate he would determine what attorneys would be counsel for the class.[13]

On October 15, 2004, ExxonMobil removed the consolidated action to the District Court of the District of Maryland claiming that the district court had

---

[10]     9/24/04 *Koch* Plaintiffs' Proposed "Revised Order of Consolidation," Ex. 2 to ExxonMobil's Removal Notice.

[11]     9/28/04 Letter from Judge Emory A. Plitt to Marshall N. Perkins, Counsel for *Koch* Plaintiffs ("9/28/04 Letter from Judge Plitt to Perkins") at 1, Ex. 3 to ExxonMobil's Removal Notice.

[12]     *See* 9/28/04 Letter from Judge Emory A. Plitt to All Counsel ("9/28/04 Letter from Judge Plitt to All Counsel") at 1-2, Ex. 4 to ExxonMobil's Removal Notice.

[13]     *See id.* at 2.

jurisdiction "with respect to claims asserted in one of two actions recently consolidated by court order."[14] ExxonMobil relied on *MTBE III*, holding that this Court has federal agent jurisdiction over the MTBE cases under 28 U.S.C. § 1442(a).[15] ExxonMobil claimed that the *Wagner* plaintiffs essentially admitted *Wagner I* was removable when they dismissed their Complaint after removal.[16] It then claimed that *Wagner II* was removable just as *Wagner I* was and that *Koch* became removable once it was consolidated with *Wagner II*.[17]

The *Koch* plaintiffs twice moved to remand their action to state court. *First*, they claimed that the removal notice as to the *Koch* action was untimely.[18] *Second*, they claimed that ExxonMobil failed to comply with Local Rule 103.5.a of the United States District Court for the District of Maryland at the time of

---

[14]     ExxonMobil's Removal Notice ¶ 1. ExxonMobil's removal notice with respect to the *Wagner II* Complaint was filed within the thirty-day time period allowed by 28 U.S.C. § 1446(a). Defendant Hicks consented to ExxonMobil's Notice of Removal. *See* John R. Hicks' Consent to Removal, Ex. 6 to ExxonMobil's Removal Notice.

[15]     *See* ExxonMobil's Removal Notice ¶ 8 (citing *MTBE III*).

[16]     *See id.* ¶ 5.

[17]     *See id.* ¶ 7.

[18]     *See Koch* Plaintiffs' Motion to Remand ¶ 2.

removal.[19] In a later filing, the *Koch* plaintiffs also claimed that ExxonMobil's Notice of Removal violated 28 U.S.C. § 1446(a).[20]

On June 17, 2005, the Judicial Panel on Multidistrict Litigation transferred this case to this Court for inclusion in *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, pursuant to Rule 7.4 of the Rules of the Judicial Panel on Multidistrict Litigation and 28 U.S.C. § 1407.

## II. APPLICABLE LAW

### A. Removal and Remand

Section 1447(c) of Title 28 provides: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." When a party challenges the removal of an action from state court, the burden falls on the removing party "to establish its right to a federal forum by 'competent proof.'"[21] "In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute

---

[19]     *See Koch* Plaintiffs' Second Motion to Remand ¶ 2.

[20]     Reply Mem. at 1.

[21]     *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979) (quoting *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

narrowly, resolving any doubts against removability."[22] If the removing party cannot establish its right to removal by "competent proof," the removal is improper, and the district court must remand the case to the court in which it was filed.[23]

A defendant may remove a civil action filed in state court to federal court if the claims "arise under" federal law.[24] A case "arises under" federal law when federal law provides for the cause of action,[25] or where "the vindication of a right turns on some construction of federal law."[26] The complaint must affirmatively allege a federal claim.[27] In determining if this federal claim exists,

---

[22] *Somlyo v. J. Lu-Rob Enterprises, Inc.*, 932 F.2d 1043, 1046 (2d Cir. 1991) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941)). *See also Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 31 (2002) (noting that "statutory procedures for removal are to be strictly construed").

[23] *See, e.g., Kings Choice Neckwear, Inc. v. DHL Airways, Inc.*, No. 02 Civ. 9580, 2003 WL 22283814, at *2 (S.D.N.Y. Oct. 2, 2003) (citations omitted).

[24] 28 U.S.C. § 1441(a).

[25] *See Merrell Dow Pharm. Inc. v. Thompson et al.*, 478 U.S. 804, 808 (1986).

[26] *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9 (1983).

[27] *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). Two exceptions to the well-pleaded complaint rule permit removal of state law actions: when the claims are completely preempted by federal law and when Congress "expressly so provides" for removal of those claims. *Id.* at 8. Neither of these

courts will "examine the 'well-pleaded' allegations of the complaint and ignore potential defenses."[28] The presence of a federal defense does not raise a federal question, "even if the defense is anticipated in the plaintiff's complaint, and even if . . . the federal defense is the only question truly at issue."[29]

"A case is removable when the initial pleading enables the defendant to 'intelligently ascertain' removability from the face of such pleading."[30] This standard "does not require a defendant to look beyond the initial pleading for facts giving rise to removability."[31] Nor does it require a defendant to "guess" whether the action is removable.[32]

---

exceptions is relevant here.

[28] *Id.*

[29] *Marcus v. AT&T Corp.*, 138 F.3d 46, 53 (2d Cir. 1998) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987)). *Accord City of Rome v. Verizon Communications, Inc.*, 362 F.3d 168, 174 (2d Cir. 2004).

[30] *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 206 (2d Cir. 2001) (holding that pleading which provided incomplete address information did not allow the defendant to "intelligently ascertain" removability; the defendant was not required to research the missing address of another named defendant to discover removability) (quotation marks omitted).

[31] *Id.*

[32] *Richstone v. Chubb Colonial Life Ins.*, 988 F. Supp. 401, 403 (S.D.N.Y. 1997) ("a defendant must be able to ascertain easily the necessary facts to support his removal petition. To allow a document with less information to satisfy the statute would require the movant to 'guess' as to an actions'

A court must thus consider the complaint at the time of removal to determine if removal was appropriate in the first place.[33] If the basis for federal subject matter jurisdiction later falls away, "[t]he modern rule . . . is that a federal court [has] the power to hear claims that would not be independently removable even after the basis for removal jurisdiction is dropped from the proceedings."[34] There is "a judicial reluctance to make jurisdiction hinge on fortuities or *ex parte* tactical moves."[35]

## B.    Federal Agent Jurisdiction

---

removability, thus encouraging premature, and often unwarranted, removal requests") (citations omitted).

[33]    *See Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939). *See also Vera v. Saks & Co.*, 335 F.3d 109, 116 (2d Cir. 2003) ("we generally evaluate a defendant's right to remove a case to federal court at the time the removal notice is filed").

[34]    *Watkins v. Grover*, 508 F.2d 920, 921 (9th Cir. 1974) (finding that where a case was removed to federal court based on federal officer jurisdiction, the district court could retain jurisdiction to hear the state law claims against the remaining defendants even when the federal officers were dismissed).

[35]    *Murphy v. Kodz*, 351 F.2d 163, 167 (9th Cir. 1965) (finding that in a case properly brought in federal court, the "plaintiff's subsequent reduction of his claim to less than the jurisdictional amount" did not "disturb the diversity jurisdiction of a federal court"). *Accord New Jersey Dep't of Envtl. Prot. v. Gloucester Envtl. Mgmt. Serv. Inc.*, 719 F. Supp. 325, 334 (D. N.J. 1989) ("If a court dismissed the federal defendant from . . . a case [removed pursuant to section 1442(a)(1)], it must use its discretion to decide whether to remand the remaining ancillary claims to state court or to maintain jurisdiction over those claims.").

The federal officer removal statute, 28 U.S.C. § 1442(a), can override the well-pleaded complaint rule.[36] The action must still raise an issue of federal law, but it may be in the federal officer's defense. Thus, persons acting under color of any federal office or agency may remove a case to federal court despite the absence of a federal cause of action when their removal petition alleges a colorable federal defense and there is a causal nexus between the federal direction and the conduct at issue.[37]

## C. Procedural Requirements for Removal

In addition to demonstrating the presence of federal jurisdiction, a

---

[36]    *See Mesa v. California*, 489 U.S. 121, 136 (1989).

[37]    *See Jefferson County v. Acker*, 527 U.S. 423, 431 (1999) ("Suits against federal officers are exceptional in this regard. Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint."). *See also Mesa*, 489 U.S. at 133-35; *In re Agent Orange Prod. Liab. Litig.*, 304 F. Supp. 2d 442, 446 (E.D.N.Y. 2004); 16 James Wm. Moore et al., Moore's Federal Practice ("Moore's"), ¶ 107.15[1][b][ii]. The requirement for a federal defense is broadly construed; a defense need only be colorable, not clearly sustainable. *See Jefferson County*, 527 U.S. at 431 ("We . . . do not require the officer virtually to 'win his case before he can have it removed.'") (citation omitted); *Colorado v. Symes*, 286 U.S. 510, 519 (1932) (where a defendant seeks removal pursuant to the federal officer removal statute, "no determination of fact is required but it must fairly appear from the showing made that [the defendant's removal] claim is not without foundation and is made in good faith").

defendant must comply with the removal procedures in 28 U.S.C. § 1446.[38]

Specifically, section 1446(b) requires a defendant to file a notice of removal thirty

days after receiving the initial pleading.[39]

The thirty-day period is strictly construed.[40] It is "triggered by formal

service" of the summons and complaint.[41] However, section 1446(b) also states:

---

[38]    In most instances ascertaining whether a particular state court action is removable is a simple task. *See* 14C Charles Alan Wright, et al., Federal Practice and Procedure § 3733 at 357 (1998) ("Fed. Prac.") (noting that it is sensible to apply "the same liberal rules [for] testing the sufficiency of a pleading . . . to appraising the sufficiency of a defendant's notice of removal" because "in most instances the district court can ascertain easily" whether the case is removable). Despite its procedural complexity, this case is no exception; the mythical imagery and literary flourishes of the papers submitted to the court do not obscure the basic procedural rules which must be applied here. *See e.g.*, Pl. Mem. at 7 ("[ExxonMobil] is caught between Scylla and Charybdis"); 12/1/04 Letter from Marshall S. Perkins, Counsel for *Koch* plaintiffs, to Judge Marvin J. Garbis, U.S. District Judge for the District of Maryland (ExxonMobil's arguments are an "apogee of sophistry" and "Machiavellian"); Surreply to Plaintiffs' Motion to Remand ("Surreply"), at 3 (plaintiffs "doth protest too late").

[39]    The statute provides in pertinent part: "[A] notice of removal of a civil action or proceeding shall be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b).

[40]    *See Maybruck v. Haim*, 290 F. Supp. 721, 723 (S.D.N.Y. 1968) ("the 30-day limit for the filing of the removal petition . . . is mandatory and cannot be extended by this Court") (citations omitted).

[41]    *Whitaker*, 261 F.3d at 202 ("the commencement of the removal period [can] only be triggered by formal service of process, regardless of whether the statutory phrase 'or otherwise' hints at some other proper means of receipt of the

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

Thus, section 1446(b) provides that where an initial pleading is not removable as originally filed, a notice of removal may be filed if a later event makes it subject to removal.[42] Likewise, when a case is removable, but the grounds in the initial complaint are "obscured, omitted, or misstated," a defendant "has thirty days from the revelation of grounds for removal to file a notice of removal."[43] The purpose of the thirty-day rule is:

> "to deprive the defendant of the undeserved tactical advantage that [it] would have if [it] could wait and see how [it] was faring in state court before deciding whether to remove . . .; and to prevent the delay and waste of resources involved in starting a

---

initial pleading") (citing *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-55 (1999)).

    [42]    *See Cottman Transmission Systems LLC v. Bence*, No. 03-5467, 2004 WL 98594 (E.D. Pa. Jan. 15, 2004) (finding that the case became removable on entry of a consolidation order permitting plaintiffs' claims to be aggregated thereby causing the amount in controversy to reach $75,000).

    [43]    Moore's ¶ 107.30[3][a][ii]. *Accord Lovern v. General Motors Corp.*, 121 F.3d 160, 162 (4th Cir. 1997) ("the statute does not preclude defendants from removing a case where their discovery of the grounds of federal jurisdiction is belated because facts disclosing those grounds were inadequately or mistakenly stated in the complaint").

case over in a second court after significant proceedings . . . in the first court."[44]

Conversely, the second sentence of section 1446(b) preserves the defendant's right to remove a case to federal court upon receiving notice that the case is removable.[45]

In order to satisfy section 1446(b), a defendant must show (1) that the original complaint was not removable on its face at the time it was filed[46] and (2) that another "paper" changed the status of the case, making it clear that the complaint was removable.[47] In addition, "the 'amended pleading, motion, order or

---

[44] *Yankee Bank for Fin. & Sav., FSB v. Hanover Square Associates-One Ltd. P'ship*, 693 F. Supp. 1400, 1411 (N.D.N.Y. 1988) (quoting *Wilson v. Intercollegiate (Big Ten) Conference Athletic Assoc.*, 668 F.2d 962, 965 (7th Cir. 1982)).

[45] *See Whitaker*, 261 F.3d at 204.

[46] *See In re Willis*, 228 F.3d 896, 897 (5th Cir. 2000) ("thirty-day period begins running on receipt of complaint only when complaint explicitly discloses [basis for federal jurisdiction]").

[47] The phrase "other paper" generally refers to "documents generated within the state court litigation." *Zbranek v. Hofheinz*, 727 F. Supp. 324, 326 (E.D. Tex. 1989). This includes documents produced in consolidated cases. *See Growth Realty Companies v. Burnac Mortgage Investors, Ltd.* 474 F. Supp. 991, 996 (D. P.R. 1979) (under 28 U.S.C. § 1446(b), "the phrase 'other paper' cannot refer to pleadings filed in a separate, distinct case, in which the parties are not the same and which has not been consolidated as allowed by the local laws of Civil Procedure with the case at the bar"). In addition, the types of document can be anything from a deposition, to an amended pleading, to a letter between the parties. *See* Fed. Prac. § 3732 at 309-10 (1998) (noting that "depositions, answers

14

other paper' must emanate from either the voluntary act of the plaintiff in the state court, or other acts or events not the product of the removing defendant's activity."[48]

Defendants wishing to remove a case to federal court must also comply with the filing requirements in 28 U.S.C. § 1446(a), which states in relevant part:

> A defendant or defendants desiring to remove any civil action . . . from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal . . . together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

Procedural rules such as the directions found in section 1446(a) are not jurisdictional and "the failure to file all the state court papers . . . [is] curable in the federal court if there is a motion to remand."[49]

---

to interrogatories, and requests for admissions, amendments to ad damnum clauses of the pleadings, and correspondence between the parties and their attorneys or between the attorneys are usually accepted as 'other paper' sources that initiate a new thirty day period of removability" and collecting cases).

[48] *Potter v. Carvel Stores of New York, Inc.*, 203 F. Supp. 462, 467 (D. Md. 1962), *aff'd*, 314 F.2d 45 (4th Cir. 1963) (citations omitted).

[49] Fed. Prac. § 3733 at 351(collecting cases that hold failure to file papers is not a jurisdictional defect and may be cured). *See also Covington v. Indemnity Ins. Co.*, 251 F.2d 930, 932-33 (5th Cir. 1958) (finding that omission of certain state court papers from the removal notice was merely "modal and formal,"

Further complicating the procedural landscape, courts often issue local rules governing removal. For example, Local Rule 103.5.a of the United States District Court for the District of Maryland states that "[a]ny party effecting removal shall file with the notice true and legible copies of all process, pleadings, documents and orders which have been served upon that party." District courts generally have the inherent power to decide when a departure from their local rules should be excused or overlooked. As the Second Circuit has held, the district court can ask whether the application of the letter of local rules to a particular case would cause an unjust result.[50] Because Second Circuit precedent controls this Court's interpretation of federal law in this multi-district litigation, if faced with potential unfairness, this Court may tailor the local rules to best achieve a just outcome.[51]

---

not jurisdictional, and it could be cured); *Flores v. Baldwin*, No. Civ.A. 301CV2873P, 2002 WL 1118504, at *4 (N.D. Tex. May 28, 2002) (finding that failure to file certain state court documents with the removal notice was not a basis for remand and that it could be easily cured).

[50] *See Somlyo*, 932 F.2d at 1045-48 (finding that fairness demanded that noncompliance with local rules be excused where a timely removal notice which "did not have a civil cover sheet and legal backing" in violation of the local rules was not corrected until fifteen days after the thirty-day limit).

[51] *See In re Methyl Tertiary Butyl Ether Products Liab. Litig.*, No. M21-88, MDL 1358, 2005 WL 106936, at *5 (S.D.N.Y. Jan. 18, 2005) (citing *Union of Needletrades, Indus. & Textile Employees v. INS*, 336 F.3d 200, 210 (2d Cir.

## D.    Supplemental Jurisdiction

Finally, a district court may exercise "supplemental jurisdiction" over non-federal causes of action in a validly removed case, if they arise from the same case or controversy as the federal claims in the case.[52] "Supplemental jurisdiction is not mandatory."[53] A district court may decline to exercise supplemental jurisdiction if:

> 1) the claim raises a novel or complex issue of State law,
> 2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> 3) the district court has dismissed all claims over which it has original jurisdiction, or
> 4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.[54]

On the other hand, a district court may retain jurisdiction over the action even if the federal law claims are deleted.  In these circumstances, a court must consider "economy, convenience, fairness, and comity" in deciding whether to retain

---

2003)).

[52]    28 U.S.C. § 1367(a).

[53]    *Arthur Glick Truck Sales, Inc. v. H.O. Penn Mach. Co.*, 332 F. Supp. 2d 584, 585 (S.D.N.Y. 2004).

[54]    28 U.S.C. § 1367(c).

jurisdiction over state law claims.[55]

## III. DISCUSSION

ExxonMobil claims that this Court has jurisdiction over *Wagner II* and "by extension" over the consolidated action.[56] ExxonMobil claims the causes of action asserted in *Wagner II* were based on the presence of MTBE in fuel and that it has been acting under federal direction "in connection with the conduct that was the gravamen of the *Wagner II* Complaint."[57] In contrast, the causes of action in the original *Koch* Complaint were not based on the content of fuel but solely on the unsafe storage of gasoline containing a contaminant. When the two cases were consolidated for all purposes, the Consolidation Order was the first paper from which it could be ascertained that the *Koch* action was removable under section 1446(b). As a result, ExxonMobil claims that the *Koch* Complaint was timely

---

[55]    *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1191 (2d Cir. 1996) (finding that it was not an abuse of discretion for district court to retain jurisdiction over state-law claims when federal claim was dismissed nine days before trial); *Raucci v. Town of Rotterdam*, 902 F.2d 1050, 1055 (2d Cir. 1990) (upholding decision of district court to retain jurisdiction over state law claims where, by the time the federal claims were dismissed, discovery had been completed, the court had decided three dispositive motions, the case was ready for trial, and the state-law claims involved only settled principles).

[56]    ExxonMobil's Removal Notice ¶ 9.

[57]    *Id.* (citing *MTBE III*).

removed within thirty days of the consolidation.

## A. The Original *Koch* Complaint Was Not Removable on Its Face at the Time It Was Filed

The gravamen of the original *Koch* Complaint was that defendants failed "to safely store MTBE."[58] The Complaint alleged that "[d]efendants' storage of MTBE at the upper Crossroads Exxon . . . produced an underground 'plume' or other leakage of MTBE that . . . contaminated nearby properties."[59] As early as 1980, defendants were aware of groundwater contamination by MTBE.[60] Throughout the 1980s and 1990s, defendants were aware of studies that found MTBE posed a danger to groundwater, including a study that "recommended that MTBE be stored in double-contained facilities."[61] The *Koch* Complaint alleged that ExxonMobil was liable for this contamination as the owner of the property and the entity that exercised "legal authority" over the Crossroads Exxon and that Hicks was liable as the owner and operator of the Crossroads Exxon.[62]

---

[58] *Koch* Complaint ¶ 1. The facts recited herein are mere allegations, and do not constitute findings of the Court.

[59] *Id.* ¶ 15.

[60] *See id.* ¶¶ 18, 19.

[61] *Id.* ¶ 18.

[62] *Id.* ¶¶ 4-5.

While the *Koch* Complaint made limited claims about MTBE leakage that contaminated plaintiffs' property, the Complaint did not allege that ExxonMobil was liable for manufacturing, distributing, or selling MTBE with gasoline. The Complaint provided detail concerning the dangerousness of MTBE and the threat it poses to drinking water, but each allegation was tied to "MTBE leakage" at the Crossroads Exxon.[63] The *Koch* plaintiffs did not allege that the decision to use MTBE was the cause of their injuries.[64] Because of this, ExxonMobil claims it could not discern a basis for federal jurisdiction from the face of the Complaint.

A comparison of the *Koch* Complaint with the contemporaneously filed *Wagner I* Complaint lends credence to ExxonMobil's claim. In stark contrast to the *Koch* Complaint, the gravamen of the *Wagner I* Complaint, filed only one day after the *Koch* Complaint, was ExxonMobil's decision to use MTBE and increase the concentration of MTBE in gasoline, despite specific knowledge that even low concentrations of MTBE in gasoline could cause serious groundwater

---

[63]    *Id.* ¶ 15. For example, the *Koch* Complaint alleged that "MTBE is highly soluble and travels faster and farther in water than other gasoline constituents" but then it notes that "[a]s a result, whenever MTBE is released into the environment it has the ability to infiltrate underground water reservoirs and contaminate wells drawing from underground aquifers." *Id.* ¶ 1.

[64]    *See, e.g., id.* ¶¶ 33, 39, 48, 51, 54.

contamination.[65] The Complaint alleged that ExxonMobil was liable for these decisions in its capacity as a manufacturer, distributor, and seller of petroleum products.[66] It also alleged that ExxonMobil participated in a widespread industry campaign to rush production of MTBE without testing its safety and to convince the Environmental Protection Agency ("EPA") that important environmental testing was not necessary for determining the risks posed by MTBE.[67] Throughout the 1980s and 1990s, both defendants misrepresented the risks posed by MTBE to the public thus "forestalling public scrutiny into their decision to increase the concentration of MTBE in their products without further safety research."[68] They took these actions in order "to establish the fuel as an industry standard, to gain favor with the public, and to increase markets and profits,"[69] despite knowledge of the "terrible downside of the proliferating use of the compound: widespread contamination of water."[70]

---

[65]  *See Wagner I* Complaint ¶ 20.

[66]  *See id.* ¶¶ 18-20.

[67]  *See id.* ¶¶ 39, 49, 51.

[68]  *Id.* ¶¶ 32-33, 42.

[69]  *Id.* ¶ 54.

[70]  *Id.* ¶ 72.

The *Wagner I* Complaint alleged that defendants were strictly liable for using and storing MTBE, ultra-hazardous and abnormally dangerous activities, and for "plac[ing] MTBE, a defective product, in the stream of commerce."[71] In addition, the Complaint alleged a negligence cause of action stating that "[d]espite Defendants' past and current knowledge of MTBE's harmful characteristics, Defendants have placed and continue to place gasoline containing MTBE into the Maryland stream of commerce without taking any special precautions to prevent MTBE contamination of Plaintiffs' drinking water."[72] The Complaint alleged that defendants were liable for storing and selling MTBE-containing gasoline because they "knew or should have known that when MTBE was placed into gasoline systems, there was a strong probability that it would escape into the surrounding environment and contaminate the Plaintiffs water supply."[73]

The *Wagner I* Complaint was clearly modeled after multiple other MTBE actions brought around the country and subsequently removed to federal court by numerous defendants.[74] The *Koch* Complaint made markedly different

---

[71]    *Id.* ¶¶ 94, 97.

[72]    *Id.* ¶ 109.

[73]    *Id.* ¶¶ 104, 111.

[74]    *See, e.g., MTBE III*, 342 F. Supp. 2d at 150, where I listed the causes of action alleged in *Water Authority of Western Nassau v. Amerada Hess Corp. et*

allegations.[75] ExxonMobil was not required to "guess" that the *Koch* Complaint may have asserted allegations concerning the decision to use MTBE.[76] The *Koch* Complaint, on its face, did not put ExxonMobil on notice that the federal officer defense was available to them.

## B.  Jurisdiction over *Wagner II* Pursuant to Section 1446(b)

ExxonMobil claims that, despite the fact the strict liability claims were excised from the *Wagner II* Complaint, "the presence of MTBE in gasoline and the alleged hazard that MTBE represents as a constituent of gasoline" lay at the heart of the claims in *Wagner II*, just as they lay at the heart of the claims in

---

*al.*, No. 03 Civ. 9544, as representative of the claims in dozens of actions before this court at that time: "(1) public nuisance, (2) strict liability for design defect and/or defective product, (3) failure to warn, (4) negligence, (5) private nuisance, . . . (7) violation of New York Oil Spill Prevention, Control and Compensation Act."

[75]     *Cf. id.* at 156 (finding that federal jurisdiction was appropriate over the MTBE cases pending before the court because "defendants argue[d] that the federal government required them to add MTBE to gasoline" and the use of MTBE was the "conduct upon which plaintiffs' claims [were] based"); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp. 2d 348, 384 (S.D.N.Y. 2005) (characterizing the public nuisance, private nuisance, and trespass claims in MTBE actions from Connecticut as product liability claims because plaintiffs alleged that defendants injured them through water contamination, among other things, and they could only have done so in "their roles as manufacturers and distributors of MTBE-containing gasoline").

[76]     *Richstone*, 988 F. Supp. at 403.

*Wagner I.*[77] ExxonMobil further claims that *Wagner II* was removable pursuant to section 1442(a)(1) because "the petroleum refining industry was required to use oxygenates in gasoline" in areas that were subject to certain congressional programs, namely the Oxy-Fuel Program and the Reformulated Gas Program, and "both Congress and [the] EPA fully understood, expected and knew MTBE had to be used in oxygenated gasoline sold in the United States."[78]

The *Wagner II* Complaint reads as a carefully edited version of the *Wagner I* Complaint. In *Wagner II*, the plaintiffs deleted allegations regarding the manufacture, sale, and distribution of MTBE,[79] defendants' knowledge that MTBE posed a unique and significant threat to groundwater,[80] and that defendants engaged in a widespread industry campaign to misrepresent the risks posed by MTBE to the public and EPA.[81] Finally, plaintiffs eliminated their strict liability claim.

Nonetheless, plaintiffs maintained their allegations concerning the

---

[77]    ExxonMobil's Removal Notice ¶ 15.

[78]    *Id.* ¶ 47.

[79]    *See Wagner I* Complaint ¶¶ 18-20.

[80]    *See id.* ¶ 21.

[81]    *See id.* ¶¶ 39, 49, 51.

dangers of MTBE. For example, plaintiffs alleged that "the greater the MTBE content of gasoline the higher the risk to water" and "even small concentrations of MTBE create an enhanced threat to groundwater."[82] Plaintiffs also alleged that defendants knew that "high levels of MTBE contamination could result from gasoline containing low concentrations of MTBE" and that it "posed an unusual threat to groundwater."[83] In addition, while plaintiffs deleted allegations that both defendants were liable for selling MTBE-containing gasoline and that ExxonMobil was liable for mixing and transporting MTBE-containing gasoline, they continued to allege that defendants were liable for storing gasoline-containing MTBE, presumably asserting that mere storage posed a special risk to groundwater.[84]

The *Wagner* plaintiffs' effort to avoid federal jurisdiction was unavailing. ExxonMobil was on notice of the *Wagner* plaintiffs' claims concerning its decision to use MTBE and the deletions could not hide the fact that the *Wagner II* Complaint was a "challenge to MTBE-in-gasoline and by extension

---

[82]     *Id.* ¶ 70; *Wagner II* Complaint ¶ 23.

[83]     *Wagner I* Complaint ¶¶ 27-29; *Wagner II* Complaint ¶¶ 27-29.

[84]     *See Wagner I* Complaint ¶¶ 104-107; *Wagner II* Complaint ¶ 51.

the decision to include MTBE in gasoline."[85] ExxonMobil believed that the

*Wagner II* Complaint asserted it was liable under Maryland product liability law

for using the gasoline additive MTBE, that MTBE is a hazard, that it should not

have been used, and/or that appropriate warnings should have been given.[86] This

is not surprising given the history of the two Complaints. Indeed, the *Wagner II*

plaintiffs did not respond or otherwise object to these jurisdictional allegations.[87]

ExxonMobil timely removed *Wagner II*, as part of the consolidated

action, on the basis of federal officer jurisdiction.[88] This Court previously held

---

[85]    ExxonMobil's Memorandum in Opposition to Plaintiffs' Motions to Remand ("Opp. Mem.") at 6.

[86]    *See id.*

[87]    On October 23, 2004, presumably in response to removal, the *Wagner* plaintiffs again dismissed their complaint pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure. The *Wagner* plaintiffs' Notices of Dismissal both state that they are "without prejudice." However, pursuant to Rule 41(a)(1), which states that "a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim," a court would likely find that the second dismissal was with prejudice. Plaintiffs cannot "by the mere recital in [their Notice of Dismissal] that such notice is 'without prejudice and without costs,' defeat the express language of [Rule 41(a)(1)]." *Robertshaw-Fulton Controls Co. v. Noma Elec. Corp.*, 10 F.R.D. 32, 34 (D. Md. 1950). This does not change this Court's removal analysis, because, as noted earlier, the basis for removal must be assessed as of the date of removal.

[88]    ExxonMobil made several other claims regarding *Wagner II*'s removability, including federal question jurisdiction and preemption. As I have already rejected these arguments, I will not address them here. *See MTBE V*, 341

that it has federal agent jurisdiction over some, and bankruptcy jurisdiction over all, of the MTBE cases pending before it.[89] There is no question that removal was proper as to *Wagner II*.

### C. Jurisdiction over the Consolidated Action Pursuant to Section 1446(b)

In order to show that it fulfilled the requirements of section 1446(b), ExxonMobil must also show that the consolidation of *Koch* with *Wagner II* was the first moment it was able to ascertain that the *Koch* Complaint, as part of the consolidated action, was removable. An essential premise of this claim is that Judge Plitt's Consolidation Order combined the two actions into one action, thus making removal of the *Koch* Complaint, as part of the consolidated action, appropriate.[90]

---

F. Supp. 2d at 402.

[89]    *See MTBE III*, 342 F. Supp. 2d 147; *MTBE V*, 341 F. Supp. 2d at 416 (finding bankruptcy jurisdiction because Texaco Inc. (predecessor-in-interest to ChevronTexaco) filed for Chapter 11 protection and plaintiffs had alleged "theories of collective liability" causing "defendants [including ChevronTexaco] to be inextricably intertwined"); *MTBE VI*, 361 F. Supp. 2d 137; *MTBE VII*, 364 F. Supp. 2d 329.

[90]    *See, e.g., Cardinal Cas. Co. v. S.E.C.U.R.E.*,  842 F. Supp. 899, 900 (S.D. W.Va. 1994) (where three competing class actions were filed in the Circuit Court of Kanawha County, all "alleging that affected students sustained bodily injuries as a result of their exposure to pesticides at Andrew Jackson Junior High School" the lawsuits were consolidated into a single action).

In opposition to this claim, plaintiffs cite to cases interpreting Rule 42 of the Federal Rules of Civil Procedure, which stand for the proposition that consolidation does *not* effect a merger of the cases for purposes of removal to federal court.[91] This cases are inapposite. They address federal consolidation rather than consolidation under state rules.

Examples of cases that have addressed state consolidations are instructive. The few federal courts that have considered the effect of state consolidation on jurisdiction have found that, under certain circumstances, where two actions are consolidated into a single action, state-ordered consolidation may affect jurisdiction and removability.[92] For example, a federal court in Alabama

---

[91] *See Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496-97 (1933) (consolidation "does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another"); *McKenzie v. United States*, 678 F.2d 571, 574 (5th Cir. 1982) (finding that consolidation in district court of two separate actions did not give the district court subject matter jurisdiction over one of the actions); *International Soc'y for Krishna v. City of Los Angeles*, 611 F. Supp. 315, 319 (C.D. Cal. 1984) (finding that a separate complaint filed by plaintiffs which did not give rise to federal jurisdiction was not removable merely because it was consolidated in federal court with an action properly in federal court and noting that "[a]ll circuits which have considered the question have said that consolidated cases retain their separate identities"). *See also Cole v. Schenley Industries, Inc.*, 563 F.2d 35, 38 (2d Cir. 1977) (considering the jurisdictional basis of each complaint in a federally consolidated action separately).

[92] *See, e.g., Bley v. Travelers Ins. Co.*, 27 F. Supp. 351, 356 (D. Ala. 1939). *See also* 1 American Jurisprudence §121 at 886 (2d ed. 2005) (gathering

distinguished a state consolidation order from federal consolidations and found that the state consolidation destroyed the identity of each suit and merged them into one, "making a notice of removal within 30 days of consolidation timely."[93] Federal courts in Pennsylvania, Michigan, and Texas have also found that a removal notice that occurred thirty days after a state consolidation order combined two actions into one, thus allowing the defendant to meet the jurisdictional threshold requirements for removal under 28 U.S.C. § 1332, was timely.[94] Similarly, a federal court in Illinois noted that removal under section 1446(b) of a wrongful death case would have been possible thirty days from its consolidation

---

cases where consolidation meant the "uniting of two or more previously distinct actions into one").

[93]     *Bley*, 27 F. Supp. at 356 ("[t]he Federal Act is designed essentially for convenience of trial, and while both have the element of convenience and avoidance of confusion, the [Alabama Code Section] undoubtedly means that two or more actions may be consolidated into one, so that one verdict and one judgment suffices for all").

[94]     *See Cottman Transmission*, 2004 WL 98594, at *2 (a removal notice which occurred within thirty days of consolidation was timely); *Tonyco, Inc. v. Equity Marketing, Inc.*, No. 99-74995, 2000 WL 654957, at *3 (E.D. Mich. Apr. 25, 2000) (finding that had the actions been consolidated in state court, as opposed to federal court, making the amount in controversy sufficient for purposes of diversity jurisdiction, removal would have been appropriate); *Parkhill Produce Co. v. Pecos Valley S. Ry. Co.*, 196 F. Supp. 404, 405 (S. D. Tex. 1961) (finding that an action was removable once a state court order made it removable under section 1446(b), even though this order was over the objections of plaintiffs).

with a "new" civil rights claim, if removal would have been timely as to that civil rights claim itself.[95]

The precise effect consolidation may have on jurisdiction, however, has not been addressed by the Maryland courts. Thus, this Court must carefully predict how the highest court in Maryland would interpret the scope of the Consolidation Order.[96] ExxonMobil notes that "the leading commentator on . . . Maryland Rules . . . has explained that consolidation under Maryland Rule 2-503(a) allows a Maryland Circuit Court 'sufficient flexibility, in the interest of judicial economy, to combine issues, counts or actions in any combination that is practical and fair.'"[97] The effect of consolidation under Rule 2-503 has been

---

[95]    *Hood v. Beacon Therapeutic Diagnostic and Treatment Ctr.*, No. 97 C 1717, 1997 WL 323782 (N.D. Ill. Jun. 9, 1997) (remanding the case because the wrongful death action was consolidated with a year-old civil rights action making post-consolidation removal untimely).

[96]    *See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp. 2d at 369 ("where the substantive law of the forum state is uncertain" this Court must carefully "predict how the highest court of the forum state would resolve uncertainty or ambiguity") (citing *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 199 (2d Cir. 2003)).

[97]    Opp. Mem. at 9-10 (citing P. Niemeyer and L. Schuett, Maryland Rules Commentary 364 (3d ed. 2003)). *See also Farmers & Mechanics Nat. Bank v. Walser*, 558 A.2d 1208, 1217 (Md. 1989) ("the court may resolve the common issues in one action, while also furthering its own interest in effectuating judicial economy, as well as the parties' interest in avoiding the costs of multiple trials").

considered most often in the context of appeals. The question has been whether

consolidated actions should be treated as a single action for purposes of entry of

judgment under Maryland Rule 2-602 when a judgment has only been reached in

one case. Rule 2-602 states that an order "that adjudicates fewer than all the

claims in an action . . . is not a final judgment." Under those circumstances, the

Maryland Court of Appeals has found that "unless the trial court clearly intends

that a joint judgment be entered disposing of all cases simultaneously," cases that

were consolidated under Rule 2-503 "are not to be treated as a single action for

purposes of Rule 2-602."[98] Maryland's highest court has implicitly acknowledged

that cases may be consolidated into a single action where the intent of the judge to

do so is clear.[99] The question arises whether this analysis applies equally to

questions of jurisdiction.

A comparison of the Maryland Rules with those of Pennsylvania may

---

[98] *Yarema v. Exxon Corp.*, 503 A.2d 239, 247 (Md. 1986). *Accord Collins v. Litton Indus.*, 553 A.2d 727, 729 (Md. 1989) ("whether consolidated actions are treated as one on appeal depends upon whether separate judgments were entered"); *Owens-Corning v. Walatka*, 725 A.2d 579 (Md. 1999), *cert. denied, Walatka v. Owens-Corning*, 731 A.2d 971 (Md. 1999), *overruled on other grounds by John Crane, Inc. v. Scribner*, 800 A.2d 727 (Md. 2002) (finding that the use of one docket sheet for entry of orders in consolidated cases was evidence that judge intended judgments entered in consolidated case to be joint for purposes of appeal).

[99] *See Yarema*, 503 A.2d at 247.

also be instructive. Rule 341 of Pennsylvania's Rules of Appellate Procedure states that the judge "may order a joint hearing or trial of any matter in issue in the actions, may order the actions consolidated, and may make orders that avoid unnecessary cost or delay." The Superior Court of Pennsylvania interpreted this to mean that when the actions were "consolidated," as opposed to joined for trial, they were consolidated into a single action.[100] Rule 2-503 is quite similar. It allows for "a joint hearing or trial" or "consolidation of any or all of the claims, issues, or actions." The second option, consolidation, must mean something other than a "joint hearing or trial."

Plaintiffs' claim that Judge Plitt's "subjective" intent to combine these actions was not clear.[101] To the contrary, the Judge's intent to create a single action for "all future purposes" could not be more obvious. The Judge went so far as to deny plaintiffs' request to issue a new order stating that the cases were not consolidated as a single action.[102] He made it clear that he would eventually decide whether a class should be certified for both sets of plaintiffs.[103] Judge Plitt

---

[100] *See Keefer v. Keefer*, 741 A.2d 808, 811 (Pa. 1999).

[101] *See* Pl. Mem. at 5; Reply Mem. at 3.

[102] *See* 9/28/04 Letter from Judge Plitt to Perkins at 1.

[103] *See* 9/28/04 Letter from Judge Plitt to All Counsel at 2.

intended to consolidate these cases into a single action.

Finally, finding that ExxonMobil's removal notice was timely under section 1446(b) does not frustrate the intent of the thirty-day time limit, but instead serves the purpose of the statute. There were no significant proceedings in the *Koch* action before it was consolidated with *Wagner II* and then promptly removed. ExxonMobil did not wait to see how it would fare in state court prior to removing the case. Instead, ExxonMobil promptly removed the consolidated action upon receiving notice that the action was removable.

### D. Supplemental Jurisdiction over *Koch* Pursuant to Section 1367(a)

ExxonMobil finally claims, in the alternative, that even if the consolidation order did not broaden the *Koch* Complaint, the Court can exercise supplemental jurisdiction over it under 28 U.S.C. § 1367(a).[104] ExxonMobil claims that the Consolidation Order found that the *Koch* and *Wagner II* claims involved "common questions of law, fact, and subject matter" and that the claims were so related that they formed part of "the same case or controversy" for purposes of section 1367.[105]

While I am not required to exercise supplemental jurisdiction, I find

---

[104] *See* ExxonMobil's Removal Notice ¶ 56.

[105] *Id.*

33

that it is appropriate to do so here. *First*, this case does not raise especially novel or complex issues of state law. Indeed, the claims are typical of the claims in the rest of the consolidated MTBE cases pending before this court.[106] *Second*, retaining jurisdiction will promote judicial economy, and prevent duplication of effort and inconsistent judgments.[107] *Third*, there are no compelling reasons to decline jurisdiction. Indeed, exercising jurisdiction here will avoid the waste and inconsistency that multi-district litigation is designed to eliminate.[108]

### E. Violation of Local Rule 103.5.a and Section 1446(a)

As noted above, plaintiffs claim that ExxonMobil's Notice of Removal violated section 1446(a) and Local Rule 103.5.a of the District Court of Maryland.[109] ExxonMobil responded that "[t]he failure to attach papers to a notice of removal is a 'minor irregularity' that is curable and does not preclude

---

[106]    *See MTBE III*, 342 F. Supp. 2d at 150. Count seven of the *Koch* Complaint concerning "oil spillage" was dismissed before this case was removed to federal court.

[107]    On September 2, 2005, the Judicial Panel on Multidistrict Litigation conditionally transferred a third case, *Morgan, et al. v. ExxonMobil Corp.*, No. 1:05-108 (D. Md.), involving the same Crossroads Exxon and alleging MTBE contamination.

[108]    As of this date, the Court has jurisdiction over more than ninety MTBE cases.

[109]    *See* Plaintiffs' Memorandum of Law in Support of Koch Plaintiff's Second Motion to Remand at 2; Reply Mem. at 1.

removal."[110]  In addition, ExxonMobil claims that plaintiffs' argument that it violated section 1446(a) was untimely[111] and that any defect may be cured by a later filing.[112]  Because the statute explicitly allows for cure of such procedural defects, ExxonMobil's failure to file the papers either under Local Rule 103.5.a or under section 1446(a) does not defeat this court's jurisdiction.

## IV.  CONCLUSION

For the reasons set forth above, the motions of the *Koch* plaintiffs are hereby denied.  The Clerk of the Court is directed to close these motions (docket #742, 748).  A conference is scheduled for November 18, 2005, at 10:00 a.m. in Courtroom 15C.

SO ORDERED:

---

[110]    Opp. Mem. at 12.

[111]    Plaintiffs made this argument in their Reply Memorandum, which was filed November 19, 2004.  "A district court has no power to remand a case to state court on the basis of a defect in the removal procedure raised for the first time more than thirty days after removal even when a timely petition for remand has been made on other grounds."  *Concorde Fin. Corp. v. Value Line, Inc.*, No. 03 Civ. 8020, 2004 WL 287658 (S.D.N.Y. Feb. 11, 2004).  *See also Hamilton v. Aetna Life & Casualty Co.*, 5 F.3d 642, 643 (2d Cir. 1993) (under [28 U.S.C. § 1447(c)] all motions for remand — except those based on lack of subject matter jurisdiction — must be made within thirty days after removal or they are waived).

[112]    *See* Surreply at 4.

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           September 16, 2005

-Appearances-

**Counsel for Koch Plaintiffs:**

Charles J. Piven, Esq.
Marshall N. Perkins, Esq.
Law Offices of Charles J. Piven, P.A.
The World Trade Center, Suite 2525
401 East Pratt Street
Baltimore, MD 21202
Tel: (410) 332-0030
Fax: (410) 685-1300

Lon Engel, Esq.
Engel & Engel, P.A.
Suite 200
11 East Lexington Street
Baltimore, MD 21202
Tel: (410) 727-5095

**Counsel for Wagner Plaintiffs:**

Peter G. Angelos, Esq.
Mary V. Koch, Esq.
Scott D. Shellenberger, Esq.
Thomas C. Summers, Esq.
Patricia J. Kasputys, Esq.
Law Offices of Peter G. Angelos, P.C.
One Charles Center, 22nd Floor
100 North Charles Street
Baltimore, MD 21202
Tel: (410) 649-2000

**Counsel for Defendant John R. Hicks:**

Paul W. Ishak, Esq.
Stark and Keenan, P.A.
30 Office Street

Bel Air, MD 21014
Tel: (410) 879-2222
Fax: (410) 879-0688

**Counsel for Defendant Exxon Mobil Corporation:**

Andrew Gendron, Esq.
VENABLE LLP
Two Hopkins Plaza, Suite 1800
Baltimore, MD 21201
Tel: (410) 244-7439
Fax: (410) 244-7742

**Liaison Counsel for Plaintiffs:**

Robin Greenwald, Esq.
Robert Gordon, Esq.
C. Sanders McNew, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
Tel: (212) 558-5500
Fax: (212) 344-5461

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
Stephen J. Riccardulli, Esq.
McDermott, Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
Tel: (212) 547-5583
Fax: (212) 547-5444