UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
                                :

IN RE: METHYL TERTIARY BUTYL  :
ETHER ("MTBE") PRODUCTS      :
LIABILITY LITIGATION           :        **OPINION AND ORDER**
------------------------------------------------------- :
                                :        **Master File No. 1:00–1898**
**This document relates to:**      :        **MDL 1358 (SAS)**
                                :        **M 21-88**
**HOWARD GRAHAM and RHEA**  :
**MCMANNIS v. SHELL OIL CO. and**  :
**EXXON MOBIL CORP.,**         :
**06 Civ. 1379 (SAS)**           :
------------------------------------------------------- X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation                                                             Doc. 1055

        This case is one of dozens in a multi-district litigation ("MDL"), in which numerous plaintiffs are seeking relief from contamination, or threatened contamination, of groundwater from various defendants' use of the gasoline additive methyl tertiary butyl ether ("MTBE"). The parties have already engaged in extensive motion practice, and familiarity with the Court's previous opinions is assumed.[1] This opinion relates only to *Howard Graham and Rhea McMannis v.*

---

       [1]     *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,* No. M21-88, MDL 1358, 2005 WL 3005794 (S.D.N.Y. Nov. 9, 2005); *In re MTBE Prods. Liab. Litig.,* 399 F. Supp. 2d 340 (S.D.N.Y. 2005); *In re MTBE Prods. Liab. Litig.,* 399 F. Supp. 2d 325 (S.D.N.Y. 2005); *In re MTBE Prods.*

*Shell Oil Co. and Exxon Mobil Corp.*, 06 Civ. 1379 ("*Graham v. Shell*").

## II.   BACKGROUND

In 2000 and 2001, three MTBE lawsuits were filed in Illinois state

court: *England, et al. v. Atlantic Richfield Co., et al.*,[2] *Village of East Alton v.*

*Premcor Refining Group Inc. et al.*,[3] and *Misukonis, et al. v. Atlantic Richfield*

*Co., et al.*[4] Defendants timely removed *England* and *Village of East Alton* on the

basis of federal question jurisdiction, but they did not remove *Misukonis* from

*Liab. Litig.*, No. M21-88, MDL 1358, 2005 WL 1529594 (S.D.N.Y. Jun. 28, 2005); *In re MTBE Prods. Liab. Litig.*, No. M21-88, MDL 1358, 2005 WL 1500893 (S.D.N.Y. Jun. 24, 2005); *In re MTBE Prods. Liab. Litig.*, 402 F. Supp. 2d 434 (S.D.N.Y. 2005); *In re MTBE Prods. Liab. Litig.*, 399 F. Supp. 2d 242 (S.D.N.Y. 2005); *In re MTBE Prods. Liab. Litig.*, 233 F.R.D. 133 (S.D.N.Y. 2005); *In re MTBE Prods. Liab. Litig.*, 379 F. Supp. 2d 348 (S.D.N.Y. 2005); *In re MTBE Prods. Liab. Litig.*, No. M21-88, MDL 1358, 2005 WL 106936 (S.D.N.Y. Jan. 18, 2005); *In re MTBE Prods. Liab. Litig.*, No. M21-88, MDL 1358, 2005 WL 39918 (S.D.N.Y. Jan. 6, 2005); *In re MTBE Prods. Liab. Litig.*, 364 F. Supp. 2d 329 (S.D.N.Y. 2004); *In re MTBE Prods. Liab. Litig.*, 361 F. Supp. 2d 137 (S.D.N.Y. 2004) ("*MTBE VI*"); *In re MTBE Prods. Liab. Litig.*, 341 F. Supp. 2d 386 (S.D.N.Y. 2004) ("*MTBE V*"); *In re MTBE Prods. Liab. Litig.*, 341 F. Supp. 2d 351 (S.D.N.Y. 2004) ("*MTBE IV*"); *In re MTBE Prods. Liab. Litig.*, 342 F. Supp. 2d 147 (S.D.N.Y. 2004) ("*MTBE III*"); *In re MTBE Prods. Liab. Litig.*, 209 F.R.D. 323 (S.D.N.Y. 2002) ("*MTBE II*"); *In re MTBE Prods. Liab. Litig.*, 175 F. Supp. 2d 593 (S.D.N.Y. 2001) ("*MTBE I*").

   [2]   No. 00-L-331 (Ill. 3d Cir. Madison Co. Apr. 11, 2000).

   [3]   No. 01-L-1171 (Ill. 3d Cir. Madison Co. July 20, 2001).

   [4]   No. 01-L-1472 (Ill. 3d Cir. Madison Co. Sept. 20, 2001).

2

Illinois state court.[5]

*Misukonis* became the instant case. On November 17, 2003, the *Misukonis* plaintiffs filed the Fourth Amended Complaint in Madison County Circuit Court. The *Misukonis* plaintiffs alleged negligence, strict liability for defective product, and conspiracy, and requested a declaratory judgment ordering the action to be maintained as a class action.[6] On March 30, 2005, Judge Phillip Kardis of the Third Judicial Circuit Court in Madison County, Illinois approved a stipulated settlement among the named plaintiffs, Frances Misukonis and Frank and Dolores Provaznik, and seven of the nine defendants: Atlantic Richfield Company, BP Corporation North America, Inc., BP Products North America, Inc., CITGO Petroleum Corporation, Chevron U.S.A. Inc., Conoco, Inc., and Phillips Petroleum Company (merged into ConocoPhillips Company) ("settling defendants"). Pursuant to the settlement agreement, the Fourth Amended

---

[5]     On October 16, 2000, after removal, the Judicial Panel on Multidistrict Litigation transferred *England* to this Court for inclusion in *In re MTBE Products Liability Litigation*, pursuant to Rule 7.4 of the Rules of the Judicial Panel on Multidistrict Litigation and 28 U.S.C. § 1407. *See England*, No. 00-370 (S.D. Ill.). *Village of East Alton* was not transferred to this Court and on November 15, 2001, Judge David Herndon, U.S. District Judge for the Southern District of Illinois, remanded *Village of East Alton* to state court. *See Village of East Alton*, No. 01-596 (S.D. Ill.).

[6]     11/17/03 Fourth Amended Complaint, *Misukonis*, 01-L-1472 (Ill. 3d Cir. Madison Co.) ("Fourth Amended Complaint").

3

Complaint was dismissed with prejudice as to the settling defendants, but it remained in effect against Shell Oil Company ("Shell") and Exxon Mobil Corporation ("Exxon").

On September 14, 2005, the court granted plaintiffs' motion to file a Fifth Amended Complaint, dated August 30, 3005, "instanter."[7] The Fifth Amended Complaint substituted the settling plaintiffs with Howard Graham and Rhea McMannis.[8] In the new Complaint, plaintiffs alleged negligence and nuisance and sought a declaratory judgment seeking an order that the action be maintained as a class action.[9] McMannis alleged that she owns a private well

---

[7] *See* 9/14/05 Order, 01-L-1472 (Ill. 3d Cir. Madison Co.).

[8] Rhea McMannis was a plaintiff in *England.* In 2001, after *England* was transferred to the MDL, tests on water samples from her well failed to show any MTBE contamination and there were no allegations of any known releases of gasoline containing MTBE occurring near her residence. *See MTBE I*, 175 F. Supp. 2d at 608. This Court dismissed McMannis from *England* finding that "general allegations concerning the chemical characteristics of MTBE and the widespread MTBE contamination of groundwater throughout the country" were insufficient to establish a "present threat of imminent harm" as to her. *Id.* at 608-10 (also noting that McMannis had not presented statistics of MTBE detection rates for private wells in the county or even state; that Madison County was not a participant in the reformulated gasoline program (a Congressional program whereby gasoline companies were required to sell oxygenated gasoline); and that ethanol was the "primary oxygenate used in the Midwest").

[9] 8/30/05 Fifth Amended Complaint, *Howard Graham and Rhea McMannis v. Shell Oil Co. and Exxon Mobil Corp*, 01-L-1472 (Ill. 3d Cir. Madison Co.) ("Fifth Amended Complaint") ¶¶ 33-57.

4

located within 3000 feet of a station owned or controlled by Shell. Graham

alleged that he owns a private well that relies on groundwater and is within 3000

feet of a well owned or controlled by Exxon. Both plaintiffs alleged that their

wells are at risk of contamination from MTBE and/or tert butyl alcohol ("TBA").[10]

Defendants claim that the Fifth Amended Complaint is essentially a

new case. They claim that the "new case" is removable on five separate grounds[11]:

(1) the Class Action Fairness Act of 2005 ("CAFA") which authorizes removal of

certain putative class actions;[12] (2) the Energy Policy Act of 2005 ("Energy Policy

Act"), which allows removal of certain claims related to MTBE;[13] (3) diversity

jurisdiction;[14] (4) federal agent jurisdiction;[15] and (5) federal question

---

[10]     *See id.* ¶ 39. TBA is a product resulting from the degradation of
MTBE. *See id.* ¶ 11.

[11]     *See* 9/28/05 Notice of Removal, *Graham v. Shell Oil Co.*, No. 05-703
(S.D. Ill.) ("Notice of Removal") ¶¶ 21-86.

[12]     *See* Pub. L. No. 109-2, 119 Stat. 4 (codified in relevant part at 28
U.S.C. § 1332(d) and 1453(b)) (2005).

[13]     *See* Pub. L. No. 109-58, 119 Stat. 594 (codified in scattered sections
of 16 U.S.C. and 42 U.S.C.) (2005).

[14]     *See* 28 U.S.C. § 1332(a).

[15]     *See* 28 U.S.C. § 1442(a)(1) (2006).

jurisdiction.[16]

## III. APPLICABLE LAW

### A. Removal and Remand

Section 1447(c) of Title 28 provides: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." When a party challenges the removal of an action from state court, the burden falls on the removing party "to establish its right to a federal forum by 'competent proof.'"[17] "In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability."[18] If the removing party cannot establish its right to removal by competent proof, the removal is improper,

---

[16]     *See* 28 U.S.C. § 1331.

[17]     *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979) (quoting *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

[18]     *Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1046 (2d Cir. 1991) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941)). *Accord Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 31 (2002) (noting that "statutory procedures for removal are to be strictly construed").

and the district court must remand the case to the court in which it was filed.[19]

A defendant may remove a civil action filed in state court to federal court if the claims arise under federal law.[20] A case arises under federal law when federal law provides for the cause of action,[21] or where the state-law claim necessarily raises a "stated federal issue" that is substantial and disputed "which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."[22] In determining if this federal claim exists, courts will "examine the 'well-pleaded' allegations of the complaint and ignore potential defenses."[23] The presence of a federal defense

---

[19] *See United Food & Commercial Workers Union, Local 919 v. Centermark Props. Meriden Square*, 30 F.3d 298, 301 (2d Cir. 1994) (citing *R.G. Barry Corp.*, 612 F.2d at 655). *See also Klein v. Vision Lab Telecomms., Inc.*, 399 F. Supp. 2d 528, 531 (S.D.N.Y. 2005); *Kings Choice Neckwear, Inc. v. DHL Airways, Inc.*, No. 02 Civ. 9580, 2003 WL 22283814, at *2 (S.D.N.Y. Oct. 2, 2003).

[20] *See* 28 U.S.C. § 1441(a) (2006).

[21] *See Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986); *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 13 (1983).

[22] *Grable & Sons Metal Prods., Inc., v. Darue Eng'g & Mfg.*, __ U.S. __, 125 S. Ct. 2363, 2368 (2005). *Accord Broder v. Cablevision Sys. Corp.*, 418 F. 3d 187 (2d Cir. 2005).

[23] *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). Two exceptions to the well-pleaded complaint rule permit removal of state law actions: when the claims are completely preempted by federal law and when Congress

7

does not raise a federal question, "even if the defense is anticipated in the plaintiff's complaint, and even if . . . the federal defense is the only question truly at issue."[24]

"A case is removable when the initial pleading enables the defendant to 'intelligently ascertain' removability from the face of such pleading."[25] This standard "does not require a defendant to look beyond the initial pleading for facts giving rise to removability."[26] Nor does it require a defendant to "guess" whether the action is removable.[27] There is "a judicial reluctance to make jurisdiction hinge on fortuities or *ex parte* tactical moves."[28]

"expressly [] provides" for removal of those claims. *Id.* at 8.

[24] *Marcus v. AT&T Corp.*, 138 F.3d 46, 53 (2d Cir. 1998) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987)). *Accord City of Rome v. Verizon Commc'ns, Inc.*, 362 F.3d 168, 174 (2d Cir. 2004).

[25] *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 206 (2d Cir. 2001) (quotation marks omitted).

[26] *Id.*

[27] *Richstone v. Chubb Colonial Life Ins.*, 988 F. Supp. 401, 403 (S.D.N.Y. 1997) ("A defendant must be able to ascertain easily the necessary facts to support his removal petition. To allow a document with less information to satisfy the statute would require the movant to 'guess' as to an actions' removability, thus encouraging premature, and often unwarranted, removal requests.") (citations omitted).

[28] *Murphy v. Kodz*, 351 F.2d 163, 167 (9th Cir. 1965) (finding that in a case properly brought in federal court, the "plaintiff's subsequent reduction of his

8

## B. Federal Agent Jurisdiction

The federal officer removal statute can override the well-pleaded complaint rule.[29] "Suits against federal officers may be removed despite the nonfederal cast of the complaint," but the federal officer's defense must raise an issue of federal law.[30] Thus, persons acting under color of any federal office or agency may remove a case to federal court, despite the absence of a federal cause of action, when their removal petition alleges a colorable federal defense and there is a causal nexus between the federal direction and the conduct at issue.[31]

---

claim to less than the jurisdictional amount" did not "disturb the diversity jurisdiction of a federal court"). *Accord New Jersey Dep't of Envtl. Prot. v. Gloucester Envtl. Mgmt. Serv. Inc.*, 719 F. Supp. 325, 334 (D.N.J. 1989) ("If a court dismissed the federal defendant from . . . a case [removed pursuant to section 1442(a)(1)], it must use its discretion to decide whether to remand the remaining ancillary claims to state court or to maintain jurisdiction over those claims.").

[29]     *See Mesa v. California*, 489 U.S. 121, 136 (1989).

[30]     *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). *Accord Mesa*, 489 U.S. at 133-35; *In re Agent Orange Prod. Liab. Litig.*, 304 F. Supp. 2d 442, 446 (E.D.N.Y. 2004); 16 James Wm. Moore et al., Moore's Federal Practice ("Moore's"), ¶ 107.15[1][b][ii].

[31]     The requirement for a federal defense is broadly construed; a defense need only be colorable, not clearly sustainable. *See Jefferson County*, 527 U.S. at 431 ("We . . . do not require the officer virtually to 'win his case before he can have it removed.'") (citation omitted); *Colorado v. Symes*, 286 U.S. 510, 519 (1932) (where a defendant seeks removal pursuant to the federal officer removal statute, "no determination of fact is required but it must fairly appear from the showing made that [the defendant's removal] claim is not without foundation and is made in good faith").

## C. Procedural Requirements for Removal

In addition to demonstrating the presence of federal jurisdiction, a

defendant must comply with the removal procedures in section 1446 of Title 28.

Specifically, section 1446(b) requires a defendant to file a notice of removal thirty

days after receiving the initial pleading.[32]

The thirty-day period is strictly construed.[33] It is "triggered by formal

service" of the summons and complaint.[34] The purpose of the thirty-day rule is:

> "to deprive the defendant of the undeserved tactical advantage
> that [it] would have if [it] could wait and see how [it] was faring
> in state court before deciding whether to remove . . . and to
> prevent the delay and waste of resources involved in starting a
> case over in a second court after significant proceedings . . . in the
> first court."[35]

---

[32]    The statute provides in pertinent part: "[A] notice of removal of a
civil action or proceeding shall be filed within thirty days after receipt by the
defendant, through service or otherwise, of a copy of the initial pleading setting
forth the claim for relief upon which such action or proceeding is based." 28
U.S.C. § 1446(b).

[33]    *See Somlyo*, 932 F.2d at 1046 ("federal courts rigorously enforce the
statute's thirty-day filing requirement").

[34]    *Whitaker*, 261 F.3d at 202 ("the commencement of the removal period
[can] only be triggered by formal service of process, regardless of whether the
statutory phrase 'or otherwise' hints at some other proper means of receipt of the
initial pleading") (citing *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526
U.S. 344, 354-55 (1999)).

[35]    *Yankee Bank for Fin. & Sav., FSB v. Hanover Square Assocs.-One
Ltd. P'ship*, 693 F. Supp. 1400, 1411 (N.D.N.Y. 1988) (quoting *Wilson v.*

However, section 1446(b) also states:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be *ascertained* that the case is one which is or has become removable.[36]

Thus, when a case is removable, but the grounds in the initial complaint are "obscured, omitted, or misstated," a defendant "has thirty days from the revelation of grounds for removal to file a notice of removal."[37] This provision preserves the defendant's right to remove a case to federal court upon receiving notice that the case is removable.[38] In order to satisfy section 1446(b), a defendant must show (1)

---

*Intercollegiate (Big Ten) Conference Athletic Assoc.*, 668 F.2d 962, 965 (7th Cir. 1982)).

[36]    28 U.S.C. § 1446(b) (2006) (emphasis added).

[37]    Moore's ¶ 107.30[3][a][ii]. *Accord Lovern v. General Motors Corp.*, 121 F.3d 160, 162 (4th Cir. 1997) ("The statute does not preclude defendants from removing a case where their discovery of the grounds of federal jurisdiction is belated because facts disclosing those grounds were inadequately or mistakenly stated in the complaint.").

[38]    *See Powers v. Chesapeake & Ohio Ry. Co.*, 169 U.S. 92, 100-01 (1898) (noting that the removal statute permits and requires "the defendant to file a petition for removal as soon as the action assumes the shape of a removable case in the court in which it was brought"); H. Rep. 352, 81st Cong. (1st Sess. 1949) *reprinted in* 1949 U.S. Code & Cong. Serv. at 1254, 1268 (explaining that the addition of the provision allowing removal when the initial pleading does not state a removable case was meant to codify the finding in *Powers*, 169 U.S. 92, to allow

that the original complaint was not removable on its face at the time it was filed[39]

and (2) that another paper changed the status of the case, making it clear that the

complaint was removable.[40]

## D. Revival Exception

There is one narrow judicially-created exception to the thirty-day

rule, known as the revival exception.[41]  This exception allows removal after the

thirty day period has run where an amended pleading changes the nature of a case

so drastically that the amendment "in effect begins a new case."[42]  A defendant

removal of an action *whenever* removability is disclosed).

[39]     *See In re Willis*, 228 F.3d 896, 897 (5th Cir. 2000) ("thirty-day period
begins running on receipt of complaint only when complaint explicitly discloses
[basis for federal jurisdiction]").

[40]     *See* 14C Charles Alan Wright, et al., Federal Practice and Procedure §
3733 at 309-10  (1998) (noting that "depositions, answers to interrogatories, and
requests for admissions, amendments to ad damnum clauses of the pleadings, and
correspondence between the parties and their attorneys or between the attorneys
are usually accepted as 'other paper' sources that initiate a new thirty day period
of removability," and collecting cases).  The phrase "other paper" generally refers
to "documents generated within the state court litigation." *Zbranek v. Hofheinz*,
727 F. Supp. 324, 326 (E.D. Tex. 1989).

[41]     *See Wilson*, 668 F.2d at 965.

[42]     *Id.* at 966. *Accord Johnson v. Heublein Inc.*, 227 F.3d 236, 242 (5th
Cir. 2000) (upholding district court's decision to deny remand based on the revival
doctrine where the allegations contained in the amended complaint bore "no
resemblance whatsoever to the allegations of the original complaint [and] [t]he
parties to the original action [were] now aligned in a completely different

12

must rely on the revival exception where the complaint was initially removable,

making section 1446(b) inapplicable. "The right to revive must be determined in

each case with reference to its purposes and those of the 30-day limitation on

removal to which it is an exception, and against a background of general

considerations relating to the proper allocation of decision-making responsibility

between state and federal courts."[43] Where the pleading amendments do not

change the "target" of a plaintiff's attack, the basic legal theory of the case, or the

"nature of the relief sought" there is no revival.[44] Thus, where the addition of new

parties, the enactment of a new law, or the addition of claims does not change the

essential nature of the action, revival is not warranted.[45] In contrast, where the

manner").

[43]     *Wilson*, 668 F.2d at 965.

[44]     *Id.* at 966. *Accord Casale v. Metropolitan Transp. Auth.*, No. 05 Civ.
4232, 2005 WL 3466405, at *4 (S.D.N.Y. Dec. 19, 2005) (finding that the
addition of a claim under 42 U.S.C. § 1983 to a pre-existing claim under Article
78 of New York's Civil Practice Law and Rules did not warrant application of the
revival doctrine, where the additional claim rested on the same allegation that
defendants had deprived plaintiff of a liberty interest in violation of the Fourteenth
Amendment).

[45]     *See, e.g.*, *Louisiana Farm Bureau Cas. Ins. Co. v. Michelin Tire
Corp.*, 207 F. Supp. 2d 524, 526 (M.D. La. 2002) (refusing to apply the revival
doctrine after addition of a plaintiff, where the lawsuit still arose from the same
"alleged explosion of the Michelin tire and the injuries" suffered by plaintiffs);
*Tully v. American Fed. of Gov. Employees Local 3148*, No. 00-7664, 2001 WL
253034, at *2 (E.D.N.Y. Mar. 9, 2001) (finding that where plaintiffs removed a

newly added claims "bear no resemblance" to the original allegations or the parties are realigned such that, for example, co-defendants become plaintiffs, a district court may apply the revival exception.[46]

## E.    CAFA and the Energy Policy Act

CAFA authorizes removal of certain putative class actions commenced on or after February 18, 2005.[47]   A court must look to state law to

---

cause of action from the complaint and the "basic legal theory of plaintiff's action – that the defendants failed to adequately represent him in various grievances with his employer" remained the same, application of the revival exception was not warranted); *Camino Camper of San Jose, Inc. v. Winnebago Indus., Inc.*, 715 F. Supp. 964, 965-66 (N.D. Cal. 1989) (finding passage of the Judicial Improvements and Access to Justice Act did not revive defendants time to remove); *Clarson v. Southern Gen. Life Ins. Co.*, 694 F. Supp. 847 (M.D. Fla.1987) (where substitution of a plaintiff, necessitated by the original plaintiff's death and addition of several causes of action did not change the essential nature of the suit, the amended complaint was "not sufficiently different so that continued litigation in state court would be unjust to defendant, given defendant's voluntary submission to state court jurisdiction" on the earlier complaint); *Frye v. General Fin. Corp.*, 35 B.R. 742 (N.D. Ill. 1983) (finding that where plaintiffs added thirty-six named plaintiffs, three defendants, and new allegations of misconduct to their complaint, the revival doctrine was not warranted as the "gravamina" or the "vital essences" of the complaint had not been changed).

[46]    *Heublein Inc.*, 227 F.3d at 242. *But see Rubstello, Inc. v. Transportation Ins. Co.*, No. 05-0688, 2005 WL 1503924, at *4 (E.D. Cal. Jul. 22, 2005) (noting that the "revival exception" has rarely been "used successfully given the stringent qualifications").

[47]    *See* 28 U.S.C. § 1332(d) (note on Effective and Applicability Provisions).

14

determine when a lawsuit was initially commenced for purposes of CAFA.[48] In Illinois, the Seventh Circuit has explained that, typically, "routine changes in class definitions – the sort that relate back to the original pleading for limitations purposes – do not commence new actions."[49]

As a threshold matter, "[s]ubstitution of unnamed class members for named plaintiffs who fall out of the case because of settlement or other reasons is a common and normally an unexceptionable (routine) feature of class action litigation both in the federal courts and in the Illinois courts."[50] Prior to class certification, if the named plaintiffs settle, courts will generally allow substitution of new named plaintiffs.[51] Courts "disregard the jurisdictional void that is created when the named plaintiffs' claims are dismissed and, shortly afterwards, surrogates step forward to replace the named plaintiffs."[52]

---

[48]    *See Braud v. Transport Serv. Co. of Illinois*, __ F.3d __ , 2006 WL 880051 (5th Cir. Apr. 6, 2006) (noting that the courts of appeals that have examined this issue have unanimously held that state law determines when an action is commenced for purposes of CAFA).

[49]    *Knudsen v. Liberty Mut. Ins. Co.* ("*Knudsen II*"), 435 F.3d 755, 757 (7th Cir. 2006) (quotations and citations omitted).

[50]    *Phillips v. Ford Motor Co.*, 435 F.3d 785, 787 (7th Cir. 2006).

[51]    *See id.*

[52]    *Id.*

Thus, the substitution of named plaintiffs only recommences a case if the amended pleading does not relate back to the earlier complaint.[53] "[A] new contention relates back to the original complaint (and hence is not a new claim for relief or cause of action) when the original pleading furnishes the defendant with notice of the events that underlie the new contention."[54] "Under Illinois law . . . an amendment relates back when it arises out of 'the same transaction or occurrence set up in the original pleading.'"[55]

In contrast, where an amendment adds an entirely new defendant, the case may become removable as to that defendant.[56] Or, where "a novel claim" is "tacked on" to an existing action, a court may decide that the action has been

---

[53]     *See id. See also Plubell v. Merck & Co.*, 434 F.3d 1070 (8th Cir. 2006) (holding that amended pleading did not "commence" a new action for the purposes of CAFA because the claims did not change and the replacement representative was a member of the putative class in the original pleading).

[54]     *Knudsen II*, 435 F.3d at 757.

[55]     *Phillips*, 435 F.3d at 787 (citing 735 Ill. Comp. Stat. 5/2-616(b) (2005)). *See also Chandler v. Illinois Central R.R.*, 798 N.E.2d 724, 732-33 (Ill. 2003) (noting that "a liberal construction of the requirements of section 2-616(b) is necessary in order to allow the resolution of litigation on the merits and to avoid elevating questions of form over substance") (quotations and citations omitted); Fed. R. Civ. P. 15(c).

[56]     *See Knudsen v. Liberty Mut. Ins. Co.* ("*Knudsen I*"), 411 F.3d 805, 807-08 (7th Cir. 2005).

recommenced.[57]

The Energy Policy Act allows removal of "claims and legal actions"

filed after August 8, 2005, that allege actual or threatened contamination of

MTBE.[58] The applicability of this section to amended complaints is an issue of

first impression that has not yet been addressed in any court. Nonetheless, the

definitions of claim or action are well-established. "[N]ew legal arguments about

the same events do not amount to a new claim."[59] "One set of facts producing one

injury creates one claim for relief, no matter how many laws the deeds violate."[60]

Thus, the test for whether a new claim or legal action has been filed is similar to

the test for whether the case has been re-commenced. Ultimately, the question is

---

[57]    *Knudsen II*, 435 F.3d at 757. *See also Heaphy v. State Farm Mut. Auto. Ins. Co.*, No. C05-5404, 2005 WL 1950244, at \*3-5 (W.D. Wash. Aug. 15, 2005) (removal under CAFA permitted where a new lead plaintiff who was not a member of the prior putative class was added and new causes of action were asserted).

[58]    42 U.S.C. § 4575 Note.

[59]    *Brannigan v. United States*, 249 F.3d 584, 588 (7th Cir. 2001) ("[I]n both civil and criminal practice it is the underlying events, rather than the legal arguments advanced to obtain relief from those events, that demarcate a 'claim.'").

[60]    *N.A.A.C.P. v. American Family Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992). *Accord Original Ballet Russe, Ltd. v. Ballet Theatre, Inc.*, 133 F.2d 187, 189 (2d Cir. 1943) (noting that a "claim" is used to denote "the aggregate of operative facts that give right to a right enforceable in the courts" and that it replaces the former notion of "cause of action"). *See also* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1324 (3d ed. 2004).

whether plaintiffs have pled fundamentally new facts.

## IV. DISCUSSION

Plaintiffs claim that the legal theory of the case has remained unchanged and that defendants' removal is untimely.[61]  Plaintiffs explain that since it was first filed, this case has been "a suit on behalf of well owners complaining of threatened or actual MTBE contamination,"[62] and that the Fifth Amended Complaint merely reduced the scope of the action by (1) dismissing the settling defendants, (2) dropping the count for conspiracy, (3) recasting the strict liability claim as a claim for nuisance, and (4) limiting the class to "well owners who were within 3000 feet of service stations owned or operated by defendants."[63]

Defendants oppose remand claiming that plaintiffs "effectively filed a new case,"[64] because the Fifth Amended Complaint includes new plaintiffs, new claims, new proof, and new relief.[65]   They also argue that the Fifth Amended Complaint does not "relate back" to the original complaint, and for this reason it

---

[61]     *See* Plaintiffs' Memorandum in Support of Remand ("Pl. Mem.") at 6.

[62]     *Id.* at 8.

[63]     *Id.*

[64]     Defendants' Joint Memorandum in Opposition to Plaintiffs' Motion to Remand ("Opp. Mem.") at 2.

[65]     *Id.*

18

commenced a "'new piece of litigation'" for purposes of CAFA and the Energy Policy Act.[66]

The originally filed class action, in *Misukonis*, contained allegations of negligence, strict liability for placing MTBE and MTBE-containing gasoline, a defective and/or unreasonably dangerous product, into the stream of commerce, and conspiracy.[67] The action was removable when filed.[68] Because it was filed in 2001, defendants' removal in 2005 was untimely unless defendants can demonstrate that the Fifth Amended Complaint was effectively a new case thereby permitting removal under either the revival exception, the Energy Policy Act, or CAFA.

## A.     The Revival Exception

Defendants' assertion that the Fifth Amended Complaint involves

---

[66]     *Id.* at 8 (quoting *Knudsen I*, 411 F.3d at 807).

[67]     *See* 9/20/01 Class Action Complaint, *Misukonis*, No. 01-L-1472 (Ill. 3d Cir. Madison Co.) ¶¶ 100-219. *Cf.* Class Action Complaint, *England*, No. 00-L-331 (Ill. 3d Cir. Madison Co.) ¶¶ 53-75 (also alleging negligence, strict liability for placing MTBE and gasoline containing MTBE into the stream of commerce, and conspiracy).

[68]     *See In re MTBE Prods. Liab. Litig.*, 399 F. Supp. 2d 340 (S.D.N.Y. 2005); *MTBE III*, 342 F. Supp. 2d at 150 (finding that federal jurisdiction was appropriate over the MTBE cases because "defendants argued that the federal government required them to add MTBE to gasoline" and the use of MTBE was the "conduct upon which plaintiffs' claims [were] based").

19

new proof, new claims, and new relief is unavailing. Merely naming two new plaintiffs does not restart defendants' removal clock because the essential nature of the case has not changed.[69]

In the Fourth Amended Complaint, plaintiffs' putative class was defined as "[a]ll persons who own real property in the State of Illinois that is not used for commercial purposes upon which a private water supply well exists that provides drinking water."[70] The putative class in the Fifth Amended Complaint is defined as "[a]ll persons who own real property in the State of Illinois that is not used for commercial purposes upon which a private water supply well exists that provides drinking water, and who are within 3000 feet of services stations that are or were owned or operated by Defendants."[71] The only difference is that the Fifth Amended Complaint is more specific than the Fourth Amended Complaint.

Defendants concede that Graham and McMannis "were likely members" of the Misukonis-Provaznik class.[72] Thus, defendants had notice of any possible risk of contamination claims which could have been made by Graham

---

[69] *See, e.g.*, *Louisiana Farm Bureau Cas. Ins. Co.*, 207 F. Supp. 2d at 524; *Frye*, 35 B.R. at 742.

[70] Fourth Amended Complaint ¶ 64.

[71] Fifth Amended Complaint ¶ 47.

[72] Opp. Mem. at 12.

20

and McMannis. The fact that defendants may have to conduct a new investigation into potential sources of contamination or risk of contamination focused on the Graham and McMannis wells does not prove that this is a new action.[73]

The class allegations in the new complaint are also not substantially different. In the Fourth Amended Complaint, plaintiffs brought the action on behalf of the class to certify and determine (1) whether defendants were negligent by adding MTBE to gasoline distributed in Illinois, (2) whether defendants were negligent in failing to warn plaintiffs of the risks posed by MTBE-containing gasoline, (3) whether MTBE was a defective and/or unreasonably dangerous product at the time defendants placed it into the stream of commerce in Illinois, and (4) whether defendants conspired to act in concert when they chose to add MTBE to the gasoline.[74] The alleged common questions of law or fact in plaintiffs' Fifth Amended Complaint duplicate the first three questions in this

---

[73]    *See Schillinger v. Union Pac. R.R. Co.*, 425 F.3d 330, 334 (7th Cir. 2005) ("the potential for a larger amount of legal research and discovery in and of itself is not a significant enough step to create new litigation"). Defendants also noted that Rhea McMannis appeared as a plaintiff in *England*, but was dismissed for lack of standing. *See* 3/8/05 Letter from Peter John Sacripanti, counsel for Exxon, to the Court at 1. This fact is irrelevant to the analysis of whether the addition of McMannis to the Fifth Amended Complaint created a new case.

[74]    *See* Fourth Amended Complaint ¶ 74.

21

list.[75]  Plaintiffs merely dropped the conspiracy allegations.

Defendants' argument that the essential focus of the Complaint has changed is also mistaken.  Defendants argue that the earlier Complaint focused on product liability and whether gasoline with MTBE was defective, but that the Fifth Amended Complaint focuses only on the localities of the Exxon and Shell service stations.[76]  This is not the case.  The Fourth Amended Complaint alleged claims against particular defendants with service stations in Illinois and thus it focused on fact-specific spill information.[77]  Moreover, the Fifth Amended Complaint is not focused solely on the localities of the Exxon and Shell service stations.  The Fifth Amended Complaint alleges, in language identical to that in the Fourth Amended Complaint, that defendants knew of "MTBE's chemical characteristics that make it virtually certain that if MTBE were released into the environment it would contaminate sources of drinking water to a greater degree than other gasoline constituents" and that "[d]espite this knowledge, defendants misrepresented to the public and the government the true nature of MTBE and negligently elected to

[75]    *See* Fifth Amended Complaint ¶ 49.

[76]    *See* Opp. Mem. at 7.

[77]    *See* Fourth Amended Complaint ¶¶ 4-11.

22

promote and market MTBE."[78] Thus, the essential nature of plaintiffs' claims remains the same.

In sum, the Fifth Amended Complaint did not in effect begin a new case. Plaintiffs' effort to recover for MTBE contamination or risk of contamination remained the same in both the Fourth Amended Complaint and the Fifth Amended Complaint. Defendants acknowledge that both the Fourth and Fifth Amended Complaints sought to "recover for alleged contamination or risk of contamination" to plaintiffs' wells.[79] The Fifth Amended Complaint did not change the object of plaintiffs' attack, the legal theory of the case, or the relief sought.[80]

## B. CAFA and the Energy Policy Act

---

[78]     Fifth Amended Complaint ¶ 28. *Cf.* Fourth Amended Complaint ¶ 35 (alleging identical claims).

[79]     Opp. Mem. at 4-5. Defendants contend that because the plaintiffs' *wells* are different than the previous plaintiffs' wells, this is an effectively new case. *See* Opp. Mem. at 10. Defendants note that they will have to mount a "new investigation" of McMannis and Graham's wells, each of the gasoline stations and other sites that could have served as potential sources for contamination, and "evaluate the regional hydrogeology," files from the Illinois Environmental Protection Agency, and "Illinois private well records and files." Affidavit of Ed Alizadeh, President of Geotechnology, Inc., in support of Defendants' Joint Memorandum in Opposition to Plaintiffs' Motion to Remand at 1. As noted, even additional claims that do not change the underlying theory of the case will not suffice to revive the right to remove.

[80]     *See Wilson*, 668 F.2d at 966.

For the same reasons, the Fifth Amended Complaint did not commence a new case for purposes of the Energy Policy Act or CAFA. Generally, passage of a new law providing a new basis for removal does not, by itself, revive a defendant's right to remove.[81] Defendants do not claim, however, that their right to remove was revived by these statutes.[82] Defendants argue instead that the Fifth Amended Complaint re-commenced the action for purposes of CAFA and that claims in the action were newly "filed" for purposes of the Energy Policy Act.[83]

Defendants cannot show that the amendments re-commenced the case. *First*, plaintiffs did not add a new defendant or a novel claim. *Second*, assuming, arguendo, that the substitution of McMannis and Graham as the named plaintiffs would completely alter the facts and proof at issue in the case, defendants cannot show that they lacked notice of the events at issue. Both the

---

[81]    *See, e.g., Camino Camper of San Jose, Inc.*, 715 F. Supp. at 965-66; *Samura v. Kaiser Foundation Health Plan, Inc.,* 715 F. Supp. 970, 972 (N.D. Cal. 1989) (new basis for removal under a federal act did not "undo the original waiver" of removal or warrant application of the revival exception).

[82]    Even if defendants had made the argument that the passage of CAFA or the Energy Policy Act, without an amendment to the complaint, revived their right to remove, a new removal period would have expired thirty days after the effective date of each Act.

[83]    Nonetheless, defendants recognize that the tests for revival and for whether a case was re-commenced are "essentially the same." Opp. Mem. at 6.

Fourth and Fifth Amended Complaints claim that defendants are liable for

negligently breaching their duties to "ensure that MTBE, when used as intended,

would not pose an unreasonable risk to groundwater from which [p]laintiffs and

the Class draw their water."[84] Illinois "allows named plaintiffs to be substituted

with relation back."[85] The Fourth Amended Complaint's class allegations

encompassed Graham and McMannis' claims as they were part of the purported

class. The fact the named individual plaintiffs changed did not alter the

underlying allegations.

Similarly, defendants cannot show that these are newly filed claims

for purposes of the Energy Policy Act. Plaintiffs' addition of a nuisance claim did

not change the essential factual allegations. This new claim is based on the same

factual allegations alleged in the earlier complaints.[86]

---

[84]     *Compare* Fourth Amended Complaint ¶ 44 *with* Fifth Amended
Complaint ¶ 37.

[85]     *Phillips*, 435 F.3d at 788. That the individual facts regarding the
newly named plaintiffs may cause new discovery obligations is not sufficient to
show that this case has been re-commenced.

[86]     *Compare* Fifth Amended Complaint ¶¶ 43-44 ("Defendant, by the
wide-scale production, distribution, and use of the chemicals they place and
distribute in gasoline, including MTBE and/or TBA, performed in a negligent,
reckless, and/or abnormally dangerous manner, has caused contamination of the
nation's groundwater supply" and "[p]laintiffs and members of the proposed class
have suffered and will suffer damages and injury distinct from these harms to the
general public, namely the [p]laintiffs' water supply wells are at risk for MTBE

As noted, courts must "construe the removal statute narrowly,

resolving any doubts against removability."[87]  Here, the purposes of the thirty-day

limit on removal are well-served by a remand.  All defendants but Exxon and Shell

settled with the named plaintiffs.  This necessitated the substitution of named

plaintiffs.  Allowing Exxon and Shell an opportunity to remove now would only

give them an "undeserved tactical advantage" and unnecessarily prolong these

proceedings.[88]  The Fifth Amended Complaint was removed many years after the

action was first filed.  It must be remanded as the removal was untimely.

## C.  Plaintiffs' Request for Attorney's Fees

Plaintiffs also seek their costs and attorneys' fees associated with

Defendants' removal.[89]  Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding

the case may require payment of just costs and any actual expenses, including

---

and/or TBA contamination.") *with* Fourth Amended Complaint ¶ 50-51 ("At the
time [d]efendants placed MTBE and gasoline containing MTBE into the stream of
commerce, it was defective and/or unreasonably dangerous for its intended and
foreseeable uses . . . . As a direct and proximate result of the unreasonably
dangerous and/or defective condition of MTBE or gasoline containing MTBE and
its introduction into the stream of commerce by [d]efendants, the [p]laintiffs'
water supply wells are contaminated or are at risk for MTBE and/or TBA
contamination.").

[87]    *Somlyo*, 932 F.2d at 1046 (quotations and citations omitted).

[88]    *Wilson*, 668 F.2d at 965.

[89]    *See* Plaintiffs' Motion to Remand ¶ 4.

26

attorney fees, incurred as a result of the removal." The purpose of the statute is to prevent "abuse, unnecessary expense, and harassment" as a result of improper removal.[90] "Providing for attorneys' fees when granting a motion to remand serves the purpose of deterring improper removal, whereas awarding fees when denying a motion for remand does not."[91]

The Supreme Court recently provided guidance for the standard governing application of section 1447(c). In *Martin v. Franklin Capital Corp.*, the Court held that an award of attorneys' fees is a matter of discretion with neither a presumption in favor of or against such an award.[92] Instead, the district court must determine whether the removing party lacked an "objectively reasonable basis for seeking removal."[93] "The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general

_____

[90]     *Circle Indus. USA, Inc. v. Parke Constr. Group*, 183 F.3d 105, 109 (2d Cir. 1999).

[91]     *Id.*

[92]     *Martin v. Franklin Capital Corp.*, __ U.S. __, 126 S.Ct. 704, 710 (Dec. 7, 2005).

[93]     *Id.* at 711.

matter, when the statutory criteria are satisfied."[94]  The Court also noted that

"[d]istrict courts retain discretion to consider whether unusual circumstances

warrant a departure from the rule in a given case."[95]

Plaintiffs argue that defendants' removal was "improper and

vexatious," as it only served to prolong the litigation.[96]  Despite the fact that the

motion to remand is granted, I find that an award of costs, disbursements, and

attorneys' fees would not serve "the purpose of deterring improper removal."[97]

Defendants did not lack an objectively reasonable basis for seeking removal.

Defendants raised colorable issues of law regarding revival and two new federal

statutes.  Removability is an evolving and difficult field of law.[98]  Equity does not

require an award of costs and expenses under section 1447(c).

---

[94]  *Id.*

[95]  *Id.*

[96]  Plaintiffs' Motion to Remand ¶ 5.

[97]  *Circle Indus. USA, Inc.*, 183 F.3d at 109.

[98]  *See Sung ex rel. Lazard Ltd. v. Wasserstein*, 415 F. Supp. 2d 393,
398 (S.D.N.Y. 2006) (noting that a motion to remand required the court to delve
into a "thicket of an oft-visited yet unsettled area of the law" ). *See also* Edward
M. Spiro, *Removal Jurisdiction – A Continuing Conundrum*, New York Law
Journal, Apr. 6, 2006, at 3 (explaining that for defendants seeking to remove,
"determining removability can be a tricky business, particularly where there is no
explicit federal claim on the face of the state court pleading").

28

## V. CONCLUSION

For the foregoing reasons plaintiffs' motion to remand is granted.

The Clerk of the Court is directed to close this motion (06 Civ. 1379: attachment

#29, docket #2) and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           April 17, 2006

## - Appearances -

### For Plaintiffs:

Aaron M. Zigler, Esq.
Stephen M. Tillery, Esq.
Christine Moody, Esq.
Korein Tillery
Gateway One on the Mall
701 Market Street, Suite 300
Saint Louis, MO 63101
Tel: (314) 241-4844
Fax: (314) 241-3525

Scott Summy, Esq.
Celeste Evangelesti, Esq.
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Tel: (214) 521-3605
Fax: (214) 520-1181

### Liaison Counsel for Plaintiffs:

Robin Greenwald, Esq.
Robert Gordon, Esq.
C. Sanders McNew, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
Tel: (212) 558-5500
Fax: (212) 344-5461

### For Shell Oil Company:

John Galvin, Esq.
Michael Downey, Esq.
Fox Galvin, LLC
One Memorial Drive, 8th Floor
St. Louis, MO 63102
Tel: (314) 588-7000
Fax: (314) 588-1965

### For Exxon Mobil Corporation:

Edward A. Cohen, Esq.
Roman P. Wuller, Esq.
Robert J. Wagner, Esq.
Thompson Coburn LLP
One US Bank Plaza
St. Louis, MO 63101
Tel: (314) 552-6000
Fax: (314) 552-7000

Craig H. Zimmerman, Esq.
McDermott Will & Emery LLP
227 West Monroe
Chicago, IL 60606
Tel: (312) 372-2000
Fax: (312) 984-7700

### Liaison Counsel for Defendants:

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
Stephen J. Riccardulli, Esq.
McDermott, Will & Emery LLP
340 Madison Ave.
New York, NY 10017
Tel: (212) 547-5353
Fax: (212) 547-5444