```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------- X
                                   :
IN RE: Methyl Tertiary Butyl       :
Ether ("MTBE") Products Liability  :    Master File No:
Litigation                         :       1:00-1898
                                   :
This Document Relates To:          :    14cv6228 (DLC)
Commonwealth of Pennsylvania v.    :
Exxon Mobil Corporation, et al.,   :    OPINION AND
Case No. 1:14-cv-6228              :       ORDER
                                   :
                                   :
--------------------------------- X
```

APPEARANCES:

For plaintiff Commonwealth of Pennsylvania:
James A. Donahue, III
Neil F. Mara
Pennsylvania Office of Attorney General
14th Fl. Strawberry Square
Harrisburg, PA 17120

Yechiel Michael Twersky
Daniel Berger
Tyler E. Wren
Berger & Montague, PC
1818 Market St Suite 3600
Philadelphia, PA 19103

Stewart L. Cohen
Eric S. Pasternack
Robert L. Pratter
Michael Coren
Cohen, Placitella & Roth
2001 Market Street, Suite 2900
Philadelphia, PA 19103

Michael Axline
Tracey L. O'Reilly
Molly McGinley Han
Miller, Axline & Sawyer
1050 Fulton Avenue, Suite 100
Sacramento, CA 95825

For defendants Shell Oil Company, et al., and on behalf of all
moving defendants:
Peter C. Condron
Harmon L. Cooper
Ruben F. Reyna
Crowell & Moring LLP
1001 Pennsylvania Ave., NW
Washington, DC 20004

DENISE COTE, District Judge:

This case is part of a consolidated multi-district
litigation ("MDL") relating to the contamination of groundwater
caused by releases of gasoline containing methyl tertiary butyl
ether ("MTBE").  In this action, the Commonwealth of
Pennsylvania ("Commonwealth") alleges that the defendants, which
include dozens of gasoline manufacturers, distributors, and
sellers, are liable for actual or threatened MTBE contamination
in Pennsylvania's drinking water.  Certain of the defendants in
this MDL have moved for partial summary judgment regarding the
Commonwealth of Pennsylvania's request for investigation costs
and restoration damages at 42 of the 71 Focus Sites for which
litigation is currently ongoing in this MDL.[1]  Their motion does
not affect Pennsylvania's request for recovery of past costs
expended for any of these sites.  For the following reasons, the
motion is granted.

---

[1] A list of moving defendants can be found in the footnote to the
defendants' notice of this motion, docketed at ECF No. 950, Case
No. 1:14-cv-6228.  The body of that notice includes a list of
the focus sites at issue in the motion.

**Background**

The following facts are taken from the documents submitted in connection with this motion.  They are taken in the light most favorable to the plaintiff, as the non-moving party, unless otherwise noted.

MTBE was blended into gasoline from the 1980s to 2000s, at least in part to increase gas's octane, which is meant to reduce tailpipe emissions of carbon monoxide.  Gasoline containing MBTE was widely distributed in Pennsylvania for use in motor vehicles.  MTBE can and did enter the environment through spills, leaks, and other releases of gasoline from various storage and delivery systems, such as underground storage tanks at gas stations.  Compared to other ingredients of gasoline, MTBE does not easily adhere to soil particles and is highly soluble in water.  Once in water, MTBE dissolves easily and moves through the ground quickly.  As a result, it penetrates deeply into underground aquifers; this contamination can spread underground over great distances.  Once contamination occurs, MTBE is difficult to remove and can make drinking water unfit for consumption, due to its foul taste and odor and potential adverse health effects.

A.   This Lawsuit

The Commonwealth initiated this case in Pennsylvania state court on June 19, 2014.  It was removed to the United States District Court for the Eastern District of Pennsylvania on July 17.  On July 30, the United States Judicial Panel on Multidistrict Litigation ("Panel") transferred the case to this District for pretrial proceedings pursuant to 28 U.S.C. § 1407. On November 6, 2015, the Commonwealth filed its second amended complaint ("SAC").  The Commonwealth's remaining claim is for negligence.  In addition to past costs, the SAC seeks to recover the costs of future testing of "potentially affected groundwater for the presence of MTBE" as well as future "treatment and remediation of all groundwater containing detectable levels of MTBE until restored to non-detectable levels."  It seeks damages that reflect the "full cost of restoring the waters of the Commonwealth to their original condition prior to the contamination of such waters with MTBE."

Pursuant to a protocol overseen by the MDL Court, the parties identified 75 Focus Sites for discovery and the first trial in the litigation out of over 5,000 contaminated sites. Seventy-one Focus Sites remain at issue.  Forty-two of those

Sites are the subject of this motion.[2]  At each of these Sites, MTBE was detected in the soil or groundwater and Pennsylvania's Department of Environmental Protection ("DEP") oversaw investigations and remedial work to clean up MTBE contamination. Pennsylvania has not identified additional remediation work that needs to be done at the 42 Sites but seeks $16 million to undertake further investigations to determine whether restoration work is required.

B.  Claim for Future Investigative Costs

The motion divides the 42 Sites into two groups.  For 39 of the 42 Sites, Pennsylvania seeks an award of money to investigate whether restoration work should be done ("Investigation Sites"); it does not seek any other award for future damages.  DEP has closed its files for 33 of the 42 Sites.  In some instances, these closures took place more than a decade ago.  DEP's witnesses have testified that they have no plans to reopen the closed sites and that they are unaware of any additional remedial work required at them.

Pennsylvania's expert Anthony Brown contends, however, that investigations are necessary at the 39 Sites to measure the full plume of contamination and thus the full extent of any

_____

[2] Plaintiff's expert identified no costs for future investigation or restoration at 17 sites.

groundwater contamination. Without the investigations, plaintiff's expert is unable to opine whether future restoration activity will be needed at any of the 39 Sites or the extent of that work.

Pennsylvania's DEP continues its work at eight Sites subject to this motion ("Open Sites"). Five of the Open Sites overlap with the 39 Investigation Sites.[3] Pennsylvania's expert does not know what additional investigation work may be required or whether any restoration work will be necessary when DEP has allowed the work at those Sites to conclude.

C.   Recent Proceedings and This Motion

Fact and expert discovery with respect to the 75 focus sites was completed in late 2022. On February 25, 2025, the moving defendants filed for partial summary judgment on the Commonwealth's claim for future investigative costs at the 42 Focus Sites. Three other motions for partial summary judgment were filed on the same day -- two by defendants and one by the Commonwealth. On February 26, the Panel reassigned the MDL to this Court. An Order of March 6 set a briefing schedule for this motion and other motions for summary judgment. This motion was fully briefed on April 11.

---

[3] The parties' submissions report that DEP has closed its files on 33 and separately on 34 of the Sites. The dispute is not material for purposes of this motion.

## Discussion

The defendants move for summary judgment regarding any claim for future investigation costs at 42 Sites.  They contend that Pennsylvania has not carried its burden of proving an ongoing or future injury at these sites for which additional restoration work will be necessary and that, as a result, any claim for costs to further investigate contamination would be speculative.  Because Pennsylvania has not shown that it is entitled to recover damages to investigate whether any further restoration work is needed at these sites, the motion is granted.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law." Choi v. Tower Rsch. Cap., LLC, 2 F.4th 10, 16 (2d Cir. 2021) (citation omitted).  "[S]ummary judgment must be rejected if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Indemn. Ins. Co. of N. Am. v. Unitrans Int'l Corp., 98 F.4th 73, 77 (2d Cir. 2024) (citation omitted).  "The court's role with respect to such a motion is not to resolve disputed questions of fact but solely to determine whether, as

to any material fact, there is a genuine issue to be tried." Moll v. Telesector Res. Grp., Inc., 94 F.4th 218, 227 (2d Cir. 2024) (citation omitted). "[R]eliance upon conclusory statements or mere allegations" is insufficient to defeat the motion, however. Id. at 228 (citation omitted). Summary judgment will be granted if "after adequate time for discovery, the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Id. at 228 (citation omitted).

Pennsylvania has alleged that the defendants negligently manufactured, distributed, promoted, and sold gas containing MTBE, which was ultimately released into the environment. It seeks damages in the form of restoring the Commonwealth's groundwater to its pre-release condition, including the costs of investigating the extent of contamination.

In Pennsylvania, the elements of negligence include duty, breach of that duty, "a causal connection between the conduct and the resulting injury," and "actual loss or damage to the plaintiff." Brewington v. City of Philadelphia, 199 A.3d 348, 355 (Pa. 2018). The plaintiff has a burden to prove these elements by a preponderance of the evidence. Walters v. UPMC Presbyterian Shadyside, 187 A.3d 214, 221 (Pa. 2018). "It is basic to tort law that an injury is an element to be proven."

8

Kazatsky v. King David Mem'l Park, Inc., 527 A.2d 988, 995 (Pa. 1987).  And "the plaintiff bears the burden of proof to establish all damages." Mader v. Duquesne Light Co., 241 A.3d 600, 617 (Pa. 2020).  "[T]he law does not permit a damages award to be based on mere guesswork or speculation." Vinculum, Inc. v. Goli Techs., LLC, 310 A.3d 231, 254 (Pa. 2024) (citation omitted).  "[S]peculative damages are not cognizable under Pennsylvania law" if "the uncertainty concerns the fact of damages, rather than the amount." Hickey v. Univ. of Pittsburgh, 81 F.4th 301, 316 (3d Cir. 2023) (emphasis omitted) (citation omitted).

In related litigation in this MDL, this Court has already awarded summary judgment and dismissed a plaintiff's claims for payment for investigation work when the plaintiff has not offered evidence of "any specific deleterious environmental impact" or identified what restoration measures "would eventually need to be performed." In re: MTBE Prods. Liab. Litig., No. 08cv312, 2014 WL 630636, at *3 (S.D.N.Y. Feb. 18, 2014)("Ridgewood").  In that case, the court could not "allow plaintiffs to seek costs incidental to primary restoration where there is no evidence that restorative measures are necessary or will even be implemented." Id.

9

The defendants have shown that they are entitled to summary judgment on the claim by the plaintiff for future investigation costs for the 42 Sites. Pennsylvania seeks $16 million for investigative work to be conducted over a two-year period following the entry of final judgment. It relies on the testimony of its expert, Brown, to support this claim for damages. Tellingly, the plaintiff has not offered any evidence from any DEP witness that more work is required at 39 of the 42 Sites. Nor has Brown spoken with anyone from DEP or been asked to evaluate DEP's investigations or its work. He did not conduct any ecological studies at any of the Sites. For the 39 sites where the Commonwealth seeks to recover investigative costs, Brown has opined either that additional remediation of soil and groundwater is not required, that it is "possibly" required,[4] or that he does not know whether it is. He admits that he does not know whether additional contamination requiring restoration work will be discovered upon further investigation. Similarly, with respect to the eight Open Sites, Brown did not know what if any restoration work would need to be done in addition to DEP's remediation efforts that are underway. Any claim by Pennsylvania for restoration damages would therefore be

---

[4] For some of these Sites, Brown opined that the need for further restoration is "possible", which he said meant that he could not say it was more likely than not.

speculative.  Pennsylvania has not shown that it is entitled in these circumstances to an award of the costs of further investigation to determine whether an injury requiring restoration might be located.

Pennsylvania offers several arguments in opposition to this motion.  First, it points out that the defendants have not offered evidence to dispute several of the facts it believes are relevant to its request of investigation costs at the 42 Sites. These uncontested facts include that MTBE contaminated each Site.  It also emphasizes that the defendants do not dispute that the amount of investigative costs it seeks are reasonable. The costs it seeks range from roughly $177,00 to $1 million per Site.  Finally, the defendants do not dispute Brown's opinion that the extent of MTBE contamination at the 42 Sites has not yet been delineated.

None of the facts on which Pennsylvania relies bridge the gap in its proof.  As the plaintiff, it bears the burden of proving an ongoing injury from MTBE contamination and the need for the restoration damages.  The fact that MTBE was once identified as a contaminant on the site is not sufficient when remediation work has been completed or is ongoing.  A need for future restoration damages remains entirely speculative, and as

11

a result, an award for future investigative work at the 42 Sites is unwarranted.

Next, the plaintiff makes several arguments related to Pennsylvania's regulatory framework for addressing the environmental impact of the kind of pollution at issue here. See Kowall v. U.S. Steel Corp., Inc., 325 A.3d 802, 814 (Pa. Super. Ct. 2024) (denying summary judgment on a claim for "response costs," including for investigation, under the Hazard Sites Cleanup Act ("HSCA")[5]); Lehigh Gas & Oil Co. v. Pa. Dep't of Env't Res., 671 A.2d 241, 247 (Pa. Commw. Ct. 1995) (affirming an administrative order requiring remediation under the Storage Tank and Spill Prevention Act).  The plaintiff has sued the defendants for allegedly tortious conduct under the common law, however, so Pennsylvania's statutes and regulations have minimal relevance to this motion.  Importantly, the Commonwealth cites no Pennsylvania authority for the proposition that the common law allows recovery for investigative costs where the plaintiff cannot prove that any restoration is necessary at all.[6]

---

[5] The HSCA excludes petroleum and petroleum products from the definition of hazardous substance.  35 Pa. Cons. Stat. § 6020.103.

[6] If a jury were to award the Commonwealth investigation costs, the Commonwealth does not contend that it could recover in this

It is true that compliance with regulatory standards does not provide a license to pollute up to regulatory threshold.  In re:  MTBE Prods. Liab. Litig., 725 F.3d 65, 109 (2d Cir. 2013). It is also true that the Storage Tank and Spill Prevention Act, which permitted the state to close sites for regulatory purposes, does not provide immunity from liability for closed sites.  In re: MTBE Prods. Liab. Litig., No. 14cv6228, 2024 WL 1994205, at *15 (S.D.N.Y. May 6, 2024).  It nonetheless remains the plaintiff's burden to show the existence of pollution -- that is, an injury -- that would entitle it to an award of restoration damages under the common law at the 42 Sites and an accompanying award of future investigatory expenses in connection with that award.  As explained, its speculation that it may be entitled to such damages will not suffice to defeat this motion for summary judgment.

Finally, the plaintiff relies on several cases in which investigative costs related to MTBE contamination were awarded pursuant to claims brought under the common law.  But those decisions addressed the distinct issue of whether the claim was prudentially ripe, not whether the plaintiff could meet its burden at trial to prove an injury and damages.  In re: MTBE,

---

litigation the costs of restoration if any contamination were discovered through the post-trial investigation.

725 F.3d at 111 ("Whether a particular damages model is supported by competent evidence sufficient to render it non-speculative is analytically distinct from whether the underlying claim is ripe for adjudication."); In re: MTBE Prods. Liab. Litig., No. 08cv312, 2022 WL 2967103, at *4 (S.D.N.Y. July 27, 2022) (declining to address the defendant's argument about proving future restoration damages because it is "an argument about whether damages sought are too speculative, not about whether the underlying claim is ripe for adjudication." (citation omitted)); New Hampshire v. Exxon Mobil Corp., 126 A.3d 266, 308 (N.H. 2015) (holding the plaintiff's claim for future costs was ripe because the record showed contamination in hundreds of wells at the time of trial). This motion raises a different issue, which is whether the plaintiff has raised a triable issue of fact as to injury redressable by future investigation costs. It has not.

The plaintiff's efforts to distinguish Ridgewood fail as well. The Commonwealth argues that the decision did not bear on whether the plaintiff could recover investigative costs "independent of primary restoration damages." But the court did deny the Ridgewood plaintiffs' attempt to "seek costs incidental to primary restoration" after explaining that they did "not seek to recover the costs of primary restoration" but rather for the

14

defendant to "pay for more investigation." Ridgewood, 2014 WL
630636, at *3.  The Commonwealth's brief denies the
investigative costs are "incidental" to restoration costs but
describes them instead as "a necessary part of any competent
effort to address known groundwater contamination."  That
distinction is immaterial, if it is a distinction at all.  The
plaintiff has identified no purpose of investigation other than
to inform restoration efforts.  Like in Ridgewood, the
"[p]laintiff['s] claims rest on an expert report which states
that further investigation may reveal the necessity of
additional remediation or for primary restoration -- or may
reveal nothing." Id. at *3 (citation omitted).  Without more,
the Commonwealth has not "set forth specific facts showing that
there is a genuine issue for trial." Bustamante v. KIND, LLC,
100 F.4th 419, 432 (2d Cir. 2024) (citation omitted).

    The plaintiff argues that the defendants are essentially
asking for a ruling that investigative costs are never
recoverable unless accompanied by evidence that the
investigation is likely to result in proof of a need for
restoration.  It explains that the proposed investigation would
collect further data about the location of, or "delineate,"
plumes of contamination that is already known to exist.  But the
Commonwealth cannot establish that these damages would redress

15

its claimed injury if it does not even know whether any restoration work will need to be done at all. The plaintiff cites a prior decision of this court that evaluated claims for future MTBE-related costs and explained that "recovery of damages based on future consequences of a present injury may be had only if such consequences are reasonably certain." In re: MTBE Prods. Liab. Litig., 643 F.Supp.2d 446, 456 (S.D.N.Y. 2009) (citation omitted) (applying New York law). Here, the plaintiff's expert has straightforwardly acknowledged that any future consequences of MTBE contamination at the Sites at issue are not reasonably certain. See id. ("If the proof does not establish a greater than 50% chance, the injured party's award must be limited to damages for harm already manifest." (citation omitted)). Accordingly, the Commonwealth cannot meet at its burden to recover future investigative costs.

## Conclusion

The moving defendants' February 25, 2025 motion for partial summary judgment as the Commonwealth's claim for future investigative costs is granted.

Dated:     New York, New York
           April 30, 2025

                                 _____
                                       DENISE COTE
                           United States District Judge

16