ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #
DATE FILED: 7/26/06

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ X
:
IN RE: METHYL TERTIARY BUTYL :
ETHER ("MTBE") PRODUCTS :
LIABILITY LITIGATION : OPINION AND ORDER
------------------------------------------------------ :
:
: Master File No. 1:00–1898
This document relates to: : MDL 1358 (SAS)
: M 21-88
Hope Koch, et al. v. John R. Hicks, et :
al., 05 Civ. 5745 (SAS) :
:
:
------------------------------------------------------ X

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I. INTRODUCTION

In this consolidated multi-district litigation, plaintiffs seek relief from defendants' alleged contamination, or threatened contamination, of groundwater with the gasoline additive methyl tertiary butyl ether ("MTBE"). The parties have already engaged in extensive motion practice, and familiarity with the Court's previous opinions is assumed.[1] This opinion relates only to *Hope Koch, et al. v.*

---

[1]   *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. M21-88, MDL 1358, 2006 WL 928997 (S.D.N.Y. Apr. 7, 2006); *In re MTBE Prods. Liab. Litig.*, No. M21-88, MDL 1358, 2005 WL 3005794 (S.D.N.Y. Nov. 9, 2005); *In re MTBE Prods. Liab. Litig.*, 399 F. Supp. 2d 340 (S.D.N.Y. 2005); *In re MTBE Prods. Liab. Litig.*, 399 F. Supp. 2d 325 (S.D.N.Y. 2005); *In re MTBE Prods. Liab. Litig.*, No. M21-88, MDL 1358, 2005 WL 1529594 (S.D.N.Y. Jun. 28, 2005); *In re MTBE Prods. Liab. Litig.*, No. M21-88, MDL 1358, 2005 WL

1

Returned to chambers for scanning on 6/28/06.
Scanned by chambers on _____.

In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation    Doc. 1110

*John R. Hicks, et al.*, 05 Civ. 5745.

Hope and Frank Koch, Robert and Gail Kurtz, Alora and Drake M. Roche, Jennifer and Timothy Stevens, residents of Fallston, Maryland, bring this putative class action in Maryland against John R. Hicks and Exxon Mobil Corporation[2] ("Exxon") based on state law claims of (1) public nuisance, (2) private nuisance, (3) trespass to property, (4) negligence, (5) strict liability for an abnormally dangerous activity, and (6) medical monitoring.[3] The claims arise from the alleged contamination of plaintiffs' water supply due to unsafe storage and leakage from defendants' underground storage tanks at the Crossroads Exxon

---

1500893 (S.D.N.Y. Jun. 24, 2005); *In re MTBE Prods. Liab. Litig.*, 402 F. Supp. 2d 434 (S.D.N.Y. 2005); *In re MTBE Prods. Liab. Litig.*, 399 F. Supp. 2d 242 (S.D.N.Y. 2005); *In re MTBE Prods. Liab. Litig.*, 233 F.R.D. 133 (S.D.N.Y. 2005); *In re MTBE Prods. Liab. Litig.*, 379 F. Supp. 2d 348 (S.D.N.Y. 2005); *In re MTBE Prods. Liab. Litig.*, No. M21-88, MDL 1358, 2005 WL 106936 (S.D.N.Y. Jan. 18, 2005); *In re MTBE Prods. Liab. Litig.*, No. M21-88, MDL 1358, 2005 WL 39918 (S.D.N.Y. Jan. 6, 2005); *In re MTBE Prods. Liab. Litig.*, 364 F. Supp. 2d 329 (S.D.N.Y. 2004); *In re MTBE Prods. Liab. Litig.*, 361 F. Supp. 2d 137 (S.D.N.Y. 2004) ("*MTBE VI*"); *In re MTBE Prods. Liab. Litig.*, 341 F. Supp. 2d 386 (S.D.N.Y. 2004) ("*MTBE V*"); *In re MTBE Prods. Liab. Litig.*, 341 F. Supp. 2d 351 (S.D.N.Y. 2004) ("*MTBE IV*"); *In re MTBE Prods. Liab. Litig.*, 342 F. Supp. 2d 147 (S.D.N.Y. 2004) ("*MTBE III*"); *In re MTBE Prods. Liab. Litig.*, 209 F.R.D. 323 (S.D.N.Y. 2002) ("*MTBE II*"); *In re MTBE Prods. Liab. Litig.*, 175 F. Supp. 2d 593 (S.D.N.Y. 2001) ("*MTBE I*").

[2]   Exxon Mobil Corporation was formerly known as Exxon Corporation.

[3]   *See* First Amended Class Action Complaint ("Complaint") ¶¶ 44-95.

gasoline station ("Crossroads Exxon"), operated by Hicks.[4] On April 7, 2006, I denied Exxon's and Hicks' motions to dismiss ("April 7 Opinion").[5] Exxon now moves for partial reconsideration of the April 7 Opinion. Exxon argues that the Court made clear errors of law in holding that plaintiffs stated legally feasible claims of trespass and medical monitoring under Maryland law. For the following reasons, Exxon's motion is denied.

## II. LEGAL STANDARD

Motions for reconsideration are governed by Local Rule 6.3. Reconsideration is appropriate where "the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."[6] "A motion for reconsideration may also be granted to 'correct a clear error or prevent manifest injustice.'"[7]

---

[4] *See id.* ¶¶ 1, 4-5.

[5] *See In re MTBE Prods. Liab. Litig.*, 2006 WL 928997.

[6] *In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir. 2003) (quotations omitted) (upholding Bankruptcy Court's denial of a motion for reconsideration as petitioners had not presented factual matters or controlling precedents that were overlooked).

[7] *In re Terrorist Attacks on September 11, 2001*, No. 03 MDL 1570, 2006 WL 708149, at *1 (S.D.N.Y. Mar. 20, 2006) (quoting *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983)).

3

Local Rule 6.3 should be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court."[8] A motion for reconsideration "is not a substitute for appeal."[9] Courts have repeatedly been forced to warn counsel that such motions should not be made reflexively, to reargue "'those issues already considered when a party does not like the way the original motion was resolved.'"[10] The purpose of Local Rule 6.3 is to "'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'"[11]

## III. DISCUSSION

### A. Trespass

---

[8] *DGM Invs., Inc. v. New York Futures Exch., Inc.*, 288 F. Supp. 2d 519, 523 (S.D.N.Y. 2003) (quotation omitted). *Accord Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (a court will deny the motion when the movant "seeks solely to relitigate an issue already decided.").

[9] *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 207 F. Supp. 2d 292, 296 (S.D.N.Y. 2002) (quotation omitted).

[10] *Joseph v. Manhattan & Bronx Surface Transit Operating Auth.*, No. 96 Civ. 9015, 2006 WL 721862, at *2 (S.D.N.Y. Mar. 22, 2006) (quoting *In re Houbigant, Inc.*, 914 F. Supp. 997, 1001 (S.D.N.Y. 1996)).

[11] *Naiman v. New York Univ. Hosps. Ctr.*, No. 95 Civ. 6469, 2005 WL 926904, at *1 (S.D.N.Y. Apr. 1, 2005) (quoting *Carolco Pictures, Inc. v. Sirota*, 700 F. Supp. 169, 170 (S.D.N.Y. 1988)).

"A trespass is a tort involving 'an intentional or negligent intrusion upon or to the possessory interest in property of another.'"[12] Exxon argues that "an action lies in trespass only to remedy an interference with a plaintiff's interest in the exclusive possession of property" and that landowners do not have an exclusive possessory interest in or right to the groundwater.[13] Exxon concedes that Maryland recognizes a duty not to impair a landowner's ownership rights through groundwater contamination and that tortious interference with groundwater amounts to tortious interference with property rights.[14] However, Exxon argues that, in Maryland, plaintiffs do not have an exclusive possessory interest in that water, and that the possessory right of the landowner extends only to the nonliquid

---

[12] *Mitchell v. Baltimore Sun Co.*, 883 A.2d 1008, 1014 (Md. Ct. Spec. App. 2005) (quoting *Ford v. Baltimore City Sheriff's Office*, 814 A.2d 127, 129 (Md. Ct. Spec. App. 2002)). *See also Brazerol v. Hudson*, 277 A.2d 585, 587 (Md. 1971); *Patapsco Loan Co. v. Hobbs*, 98 A. 239, 241 (Md. 1916) ("Every unauthorized entry upon the property of another is a trespass."); Restatement (Second) of Torts § 158 ("One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally (a) enters land in the possession of the other, or causes a thing or a third person to do so, or (b) remains on the land, or (c) fails to remove from the land a thing which he is under a duty to remove.").

[13] Exxon Mobil Corporation's Memorandum in Support of Its Motion for Partial Reconsideration ("Def. Mem.") at 3. *Accord* Exxon Mobil Corporation's Memorandum in Support of Its Motion to Dismiss the Amended Complaint ("Exxon Mem. MTD") at 19.

[14] *See* Def. Mem. at 3-4 (citing *Exxon Corp. v. Yarema*, 516 A.2d 990, 1002 (Md. Ct. Spec. App. 1986)).

parts of the subsoil.[15]

I addressed Exxon's argument in its entirety in the April 7 Opinion.[16] I found that plaintiffs have an ownership right to the water beneath the land. Tortious interference with groundwater amounts to tortious interference with property rights even if those rights are *limited* by the reasonable use doctrine.[17] I found that it makes no sense to allow a trespass claim where a defendant walks onto a plaintiff's land and deposits contaminants in the well and not allow a case where a defendant deposits MTBE in plaintiffs' source of drinking water without walking onto the property. Maryland *allows* claims for trespass where a defendant caused an invading substance to enter a plaintiff's property without actually

---

[15] *See id.* at 6.

[16] *See In re MTBE Prods. Liab. Litig.*, 2006 WL 928997, at *8-9.

[17] *See* Def. Mem. 3-4 (claiming that the a landowner's right to the groundwater in Maryland is limited "to a reasonable exercise" of that right). *But see Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.*, 625 A.2d 1021, 1034 (Md. 1993) (noting that the Maryland Court of Appeals has never decided whether in Maryland a property owner owns "absolutely all of the percolating waters beneath the surface of the land, just as he own[s] the soil and minerals beneath the surface and the air and sky above it" or whether "[u]nder the more modern American Rule, the landowner is limited to a reasonable exercise of the owner's proprietary right in the water").

entering itself.[18] I predicted that Maryland courts confronted with Exxon's argument would reject it as "hyper-technical"[19] and rely on the Restatement and modern tort law to allow plaintiffs' trespass claim to proceed.[20]

Exxon's argument also does nothing to defeat plaintiffs' claim that the release of MTBE caused damage to plaintiffs' *real property* in addition to destroying the drinking water resource. Plaintiffs allege that MTBE contamination has leaked "into the soil, into the groundwater, and/or into the water supply wells of affected properties."[21] Plaintiffs also allege that "defendants . . . caused gasoline and its constituent parts to enter (or infringe) upon property (including real property) owned (or controlled) by Plaintiffs," that plaintiffs are in possession

---

[18] *See Rockland Bleach & Dye Works Co. v. H. J. Williams Corp.*, 219 A.2d 48, 55 (Md. 1966) (noting that where surface water that invaded plaintiff's property was "accompanied by large quantities of mud and other debris" an action in trespass would lie) (citing *Cahill v. Baltimore City*, 48 A. 70 (Md. 1901); *Guest v. Commissioners of Church Hill*, 45 A. 882 (Md. 1900)).

[19] *Yarema*, 516 A.2d at 1004.

[20] *See, e.g., New Mexico v. General Electric Co.*, 335 F. Supp. 2d 1185, 1231 (D.N.M. 2004) ("A trespass may be committed on or beneath the surface of the earth and contemplates actual physical entry or invasion. . . . For groundwater contamination to be actionable under trespass, the contamination must have reached Plaintiff's property and damaged it.") (citing Restatement (Second) of Torts § 159).

[21] Complaint ¶ 20.

of such property, and that "defendants knew or should have known [the discharge of contaminants] was migrating into plaintiffs' drinking water supply and property."[22] In reaching its April 7 ruling, this Court accepted all factual allegations in the Complaint as true, and drew all reasonable inferences in plaintiffs' favor.[23] Plaintiffs have alleged an intentional or negligent intrusion upon their possessory property interest.

Exxon has not pointed to any new statute or cases that were overlooked. Exxon has failed to identify any case where a trespass claim was barred on these grounds. The secondary sources and cases cited by Exxon were fully considered in the April 7 Opinion. As noted, a motion for reconsideration "is not a substitute for appeal."[24] Exxon's motion for reconsideration of the April 7 Opinion regarding trespass is denied.

### B. Medical Monitoring

In the April 7 Opinion, I predicted that while Maryland courts have not definitively ruled on whether medical monitoring is a valid cause of action in

---

[22] *Id.* ¶¶ 59, 60, 62.

[23] *See Ontario Pub. Serv. Employees Union Pension Trust Fund v. Nortel Networks Corp.*, 369 F.3d 27, 30 (2d Cir. 2004) (citation omitted).

[24] *RMED Int'l, Inc.*, 207 F. Supp. 2d at 296 (quotation omitted).

8

Maryland, the courts are likely to permit an equitable claim for medical monitoring where plaintiffs can meet the requirements for a monitoring sub-class.[25] In arguing that the Court made a clear error of law, Exxon merely repeats its earlier argument that Maryland does not recognize a medical monitoring claim.[26] Exxon attempts to bolster its argument by re-asserting that the Supreme Court's decision in *Metro-North Commuter Railroad Co. v. Buckley*,[27] rejecting a medical monitoring claim, "marks a turning point" in the recognition of medical monitoring claims.[28] *Metro-North* is distinguishable from this case.[29]

In *Metro-North*, the Court held that a lump sum award of damages for medical monitoring to an asymptomatic plaintiff was not provided for by the

---

[25] *See In re MTBE Prods. Liab. Litig.*, 2006 WL 928997, at *12 (citing *Phillip Morris v. Angeletti*, 752 A.2d 200, 252 (Md. 2000) and explaining that while the Maryland Court of Appeals vacated class certification for a medical monitoring class in *Angeletti*, the court noted that "a medical monitoring claim might legitimately be framed as one seeking equitable relief").

[26] *See* Exxon Mem. MTD at 17-18; Def. Mem. at 10.

[27] 521 U.S. 424 (1997).

[28] Def. Mem. at 8.

[29] Indeed, *Metro-North* was considered by the Maryland Court of Appeals in *Phillip Morris v. Angeletti*, the case relied on by this Court. *See Angeletti*, 752 A.2d at 250.

9

Federal Employers' Liability Act ("FELA").³⁰ In dicta, the Court laid out several policy reasons against creating a full blown cause of action for medical monitoring. Specifically, the Court was concerned about the potential for a flood of litigation resulting in awards for *lump sum* damages that would deplete funds needed to compensate those who actually suffered physical injuries.³¹ The Court noted, however, that many of the courts authorizing the recovery of costs for medical monitoring have imposed limitations on the remedy that address these policy concerns. For example, in *Petito v. A.H. Robins, Co.*, the Florida Court of Appeals for the Third District noted that under certain prescribed circumstances Florida recognizes a cause of action for future expenses for medical diagnosis.³² The

---

³⁰ *See Metro-North*, 521 U.S. at 444 (noting that the Federal Employers' Liability Act does not contain an *"unqualified"* rule of lump-sum damages for medical monitoring and that the Court was not deciding whether more finely tailored medical cost recovery rules could be accommodated under the Act).

³¹ *See id.* at 442-43.

³² *See* 750 So. 2d 103, 106-07 (Fla. Dist. Ct. App. 1999) (noting that "a trial court may use its equitable powers to create and supervise a fund for medical monitoring purposes if the plaintiff proves the following elements: (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles").

*Petito* court carefully outlined the procedures that should be followed for setting up a medical monitoring fund, such as the appointment of a plan administrator and regular reporting from the monitoring physicians.[33]

For these reasons, *Metro-North*'s holding is more limited than portrayed by Exxon. The case did not create a sea change in the law of medical monitoring claims, which continue to be recognized around the country.[34] Again, Exxon has not cited controlling law that was overlooked by this Court, nor has

---

[33] *See id.* at 107.

[34] *See, e.g., Josephat v. St. Croix Alumina*, No. Civ. 1999-0036, 2000 WL 1679502 (D.V.I. 2000) (certifying a medical monitoring sub-class); *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795 (Cal. 1993) (holding that medical monitoring costs were a compensable item of damages because the residents demonstrated that the need for medical monitoring was a reasonably certain consequence of toxic exposure); *Petito*, 750 So. 2d 103; *Bourgeois v. A. P. Green Indus., Inc.*, 783 So. 2d 1251 (La. 2001) (medical monitoring claim filed before the state legislature eliminated the cause of action); *Redland Soccer Club, Inc. v. Dep't of the Army*, 696 A.2d 137 (Pa. 1997) (establishing elements for prevailing on a claim of medical monitoring); *Bower v. Westinghouse Elec. Corp.*, 522 S.E.2d 424 (W.V. 1999) ("a cause of action exists under West Virginia law for the recovery of medical monitoring costs, where it can be proven that such expenses are necessary and reasonably certain to be incurred as a proximate result of a defendant's tortious conduct").

11

Exxon fulfilled its burden of demonstrating that reconsideration is necessary to correct a clear error. "For an error to be plain, it must, at a minimum, be clear under current law."[35]

## IV. CONCLUSION

For the foregoing reasons, Exxon's motion is denied. The Clerk of the Court is directed to close this motion (docket #1076).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
June 26, 2006

---

[35] *United States v. Weintraub*, 273 F.3d 139, 152 (2d Cir. 2001) (quotations and citations omitted) ("A reviewing court typically will not find such error where the operative legal question is unsettled.").

12

- **Appearances** -

**For Plaintiffs:**

Scott D. Shellenberger, Esq.
Mary V. McNamara-Koch, Esq.
Karyn S. Bergmann, Esq.
Law Offices of Peter G. Angelos, P.C.
100 North Charles Street
Baltimore, MD 21201
Tel: (410) 649-2000
Fax: (410) 649-2101

Charles J. Piven, Esq.
Marshall N. Perkins, Esq.
Law Offices of Charles J. Piven, P.A.
The World Trade Center, Suite 2525
401 East Pratt Street
Baltimore, MD 21202
Tel: (410) 332-0030
Fax: (410) 685-1300

Lon Engel, Esq.
Engel & Engel, P.A.
11 East Lexington Street, Suite 200
Baltimore, MD 21202
Tel: (410) 727-5095

**Liaison Counsel for Plaintiffs:**

Robin Greenwald, Esq.
Robert Gordon, Esq.
C. Sanders McNew, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038

Tel: (212) 558-5500
Fax: (212) 344-5461

**For Defendant Exxon Mobil Corporation:**

Andrew Gendron, Esq.
VENABLE LLP
Two Hopkins Plaza, Suite 1800
Baltimore, MD 21201
Tel: (410) 244-7439
Fax: (410) 244-7742

**Of Counsel for Defendant:**

Archer & Greiner, P.C.
A Professional Corporation
One Centennial Square
P.O. Box 3000
Haddonfield, NJ 08033-0968
Tel: (856) 795-2121
Fax: (856) 795-0574

**Liaison Counsel for Defendants and Counsel for Exxon Mobil Corporation:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
Stephen J. Riccardulli, Esq.
McDermott, Will & Emery LLP
340 Madison Ave.
New York, NY 10017
Tel: (212) 547-5353
Fax: (212) 547-5444