USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/27/08

# ARNOLD & PORTER LLP

Matthew T. Heartney
Matthew_Heartney@aporter.com

213.243.4150
213.243.4199 Fax

44th Floor
777 South Figueroa Street
Los Angeles, CA 90017-5844

February 22, 2008

*VIA LNFS AND E-MAIL*

Hon. Shira A. Scheindlin
United States District Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1620
New York, New York 10007-1312

00 Civ 1898

Re: *In re MTBE Products Liability Litigation,* MDL 1358
Response to Pre-Motion Conference Letter

Dear Judge Scheindlin:

On February 1, 2008, defendants consented to amendments to Orange County Water District's ("District") Second Amended Complaint ("SAC") implementing the Court's directives from the December 11, 2007 teleconference, limited to paragraphs 104 and 106. In the discussions leading up to this agreement, the District said nothing about any desire to make other changes to its pleadings. Upon receiving the District's February 19, 2008 pre-motion letter, defendants first learned that plaintiff also seeks to make substantive amendments in 27 other paragraphs of the SAC. Defendants ask that leave for these amendments be denied.

<u>Significance of the Proposed Amendments</u>

A redline comparison of the District's proposed amendments is submitted as Exhibit A. Plaintiff's letter characterizes these changes as merely "descri[bing] more precisely . . . the nature of the District's injury," and, in an e-mail, its counsel asserted that the changes are "consistent with the District's prior briefing." *See* Ex. B. If not meant to change the District's claims and allegations, the amendments would be unneeded and superfluous. Instead, they reveal the District's plan to alter its lawsuit in the hope of salvaging its claims from defendants' long-pending statute of limitations motion.

The District's SAC, and its two prior complaints, describe broadly its alleged powers and duty to protect the groundwater within its territory. *E.g.,* SAC, ¶ 1: "the District seeks to protect *the groundwater resources of northern Orange County* from oil industry pollution" (emphasis added); *see id.,* ¶ 3 (claiming damages "to investigate, monitor, prevent, abate, or contain *any contamination of, or pollution to, groundwaters within the District*" (emphasis added)); ¶ 4 (District was "created . . . to maintain, replenish, and manage groundwater resources" within its territory). In both its complaint and other pleadings, the District has rested its lawsuit on

In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation                    Doc. 1716

# ARNOLD & PORTER LLP

language from its enabling Act allowing it to "sue and be sued" and to "commence, maintain, intervene in . . . any and all actions . . . to prevent interference with water or water rights used or useful to lands within the district, or diminution of the quantity or pollution or contamination of the water supply . . . ." Cal. Water Code App. 40-2(2) & (9); *see id.*, 40-2(6) (powers granted "for the purpose of managing the groundwater basin and managing . . . regulating and protecting the groundwater supplies within the district").

In past briefing, the District repeatedly affirmed its alleged right (and duty) to "protect[] *all groundwater within the District's territory.*" 12/16/05 Letter to the Court from M. Axline, Ex. C (emphasis added). Pl's Opp. To Defs' Prim. Jurisdiction Motion, at 8 ("the legislature has specifically tasked the District with insuring the quality of the groundwater within the District's service area"); *see* ¶ 5 (the "District is concerned with all groundwater in its service area"). The District also has emphasized its obligation to "protect the common interests of *all* groundwater users in the Lower Santa Ana Basin." Pl's Opp. To Rule 12(b)(6) Motion, at 17 (emphasis added). Such users, it has said, are not limited to public water supply agencies but include "any person or entity that withdraws groundwater from within the District's territory." *Id.*, 4 n. 3.

Now, the District turns its back on all of this. By replacing the term "groundwater" (variously) with phrases such as "principal aquifer," "public drinking water supplies," and "usable water," the District evidently hopes to salvage its statute of limitations opposition by arguing that its jurisdiction is limited only to parts of the groundwater basin under its management, and only some of the groundwater found there. Plaintiff nowhere explains or justifies this about-face, describing it as mere "clarification."

## Why the Amendments Are Improper

Factors justifying denial of leave to amend include "undue delay, bad faith or dilatory motive . . . , undue prejudice to the opposing party [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Plaintiff's amendments fail this test.

*Dilatory conduct and lack of good faith.* When filing its case some five years ago, the District knew full well what rights and duties it possessed to protect the groundwater basin, and no doubt articulated its understanding of these facts in its three complaints and voluminous other pleadings filed up to the present. Today, the District knows nothing that it did not know before; the *only* new fact is its urgent need to construct arguments to oppose defendants' motion in upcoming briefing. "The burden is on the party who wishes to amend to provide a satisfactory explanation for [its] delay," *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990), and courts often treat a party's unexplained attempt to amend its complaint timed to defeat a

Hon. Shira A. Scheindlin
February 22, 2008
Page 3

pending summary judgment motion as dilatory and not in good faith. *E.g.*, *Schlacter-Jones v. Gen. Tel. of Cal.*, 936 F.2d 435, 443 (9th Cir. 1991), *overruled in part on other grounds* ("timing" of amendment, "after the parties had conducted discovery and a pending summary judgment motion had been fully briefed, weighs heavily against allowing leave").

*Prejudice to the parties and the Court.* When defendants filed their statute of limitations motion in February 2006, the District's case rested on (1) allegations that "over four hundred confirmed MTBE release sites" were "contaminating and threatening" the groundwater basin, and (2) its asserted power to "protect all groundwater within the District's territory." SAC, ¶ 4; *see* 12/16/05 Axline letter. Defendants focused their motion on the two principal "injuries in fact" alleged in the District's complaint -- its purported injury when MTBE "contaminate[d] groundwater resources . . . managed by the District," and its need to expend resources to "assess, evaluate, . . . abate [and] cleanup" the alleged MTBE release sites. Defs' Mem. Supporting Statute of Limitations Motion, at 3-4, 17-20; Defs' Reply, at 3-5; *see* SAC ¶ 72 ("the District must investigate MTBE releases from *all* underground gasoline storage tanks within its territory"). When the Court ordered supplemental briefing in 2006, defendants kept the same focus for their motion. Defs' Supp. Brief re Statute of Limitations, at 3, 7-16.

The prejudice from the District's new tactic to defendants, and the Court, is self-evident. Defendants may only "refile and renew" their motion "on the same record" that existed before, and limited additional briefs will be filed -- two by plaintiff and one by defendants. If the amendments are allowed, the District no doubt will argue that the focus of defendants' motion on its now-repudiated allegations regarding its jurisdiction over the groundwater basin as a whole renders the motion meritless. Were this argument to be accepted and the pending motion denied on this basis, defendants would have to conduct discovery into plaintiff's changed allegations regarding its powers, and to file a new motion addressing them. Other already-decided motions, such as primary jurisdiction, also might need to be reopened.

Sincerely,

*[signature]*

Matthew T. Heartney

cc: All counsel via LNFS

*[handwritten]* The Clerk of the Court is directed to docket this letter and attached exhibits.

SO ORDERED:

*[signature]*

Shira A. Scheindlin, U.S.D.J.

Dated: February 27, 2008

# Exhibit A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**In Re: Methyl Tertiary Butyl Ether ("MTBE")**
**Products Liability Litigation**

**This Document Relates To:**

ORANGE COUNTY WATER DISTRICT,

Plaintiff,

vs.

UNOCAL CORPORATION, INDIVIDUALLY AND
FORMERLY KNOWN AS UNION OIL COMPANY
OF CALIFORNIA; UNION OIL COMPANY OF
CALIFORNIA, INDIVIDUALLY AND DBA
UNOCAL [DOE 1]; TOSCO CORPORATION;
CONOCOPHILLIPS COMPANY; CHEVRON
U.S.A. INC., individually and doing business as
CHEVRON PRODUCTS COMPANY AND
CHEVRON CHEMICAL COMPANY;
CHEVRONTEXACO
CORPORATION; TEXACO REFINING AND
MARKETING INC., now known as TMR
COMPANY; EQUILON ENTERPRISES
LLC; SHELL OIL COMPANY, individually and doing
business as SHELL OIL PRODUCTS US; EXXON
MOBIL CORPORATION, individually and formerly
known as EXXON CORPORATION, and doing
business as EXXONMOBIL REFINING AND
SUPPLY COMPANY, EXXON CHEMICAL U.S.A.,
and EXXONMOBIL CHEMICAL CORPORATION;
MOBIL CORPORATION; ULTRAMAR, INC.;
VALERO REFINING
COMPANY - CALIFORNIA; VALERO
MARKETING AND SUPPLY COMPANY [DOE 2];
ATLANTIC RICHFIELD COMPANY, individually
and doing business as ARCO PRODUCTS
COMPANY (formerly known as ARCO
PETROLEUM COMPANY) and also known as
ARCO; BP PRODUCTS NORTH AMERICA, INC.;
BP WEST COAST LLC [DOE 3]; TESORO

Master File C.A. No. 1:00-Civ.
1898

MDL 1358 (SAS)

Case No. 04 Civ. 4968 (SAS)

transferred from:
United states District Court for
the Central District of California,
Santa Ana Division,
Case No. SACV 03-1742 JVS
(ANx)

Removed from:
Superior Court of California,
County of Orange,
Case No. 03CC00176

**~~SECOND~~THIRD AMENDED**
**COMPLAINT**

**JURY TRIAL DEMANDED**

- 1 -

PETROLEUM CORPORATION [DOE 4]; TESORO
REFINING AND MARKETING COMPANY, INC.
[DOE 5]; PETRO-DIAMOND, INC. [DOE 6];
SOUTHERN COUNTIES OIL CO. [DOE 7];
CITGCO PETROLEUM CORPORATION [DOE 8];
ARCO CHEMICAL COMPANY [DOE 201];
LYONDELL CHEMICAL COMPANY,
INDIVIDUALLY AND FORMERLY KNOWN AS
ARCO CHEMICAL COMPANY; G&M OIL
COMPANY, INC.; 7-ELEVEN, INC.; USA
GASOLINE CORPORATION; DOES 9-200; AND
DOES 202-1000, INCLUSIVE.

Plaintiff Orange County Water District (the "District") alleges that at all relevant times:

## I. SUMMARY OF THE CASE.

1. By this action the District seeks to protect the ~~groundwater resources of~~**public water supplies in** northern Orange County from oil industry pollution. The California State Legislature has charged the District with preventing pollution and contamination of the water supply of the District. The ~~groundwater resources~~**useable water** managed by the District ~~supply~~**supplies** approximately 75 percent of the water needs to more than 2 million residents in the cities of Anaheim, Buena Park, Cypress, Costa Mesa, Fountain Valley, Fullerton, Garden Grove, Huntington Beach, Irvine, La Palma, Los Alamitos, Newport Beach, Orange, Placentia, Santa Ana, Seal Beach, Stanton, Tustin, Villa Park, Westminster and Yorba Linda. ~~However, expanding~~ **The District exercises its authority under the act in cooperation with other agencies charged with protecting groundwater, including the Santa Ana Regional Water Quality Control Board and the Orange County Health Care Agency. Expanding** plumes of methyl tertiary butyl ether and its degradation byproducts ("MTBE") and tertiary butyl alcohol ("TBA")**, some of which have escaped remediation efforts, are contaminating, or threatening to** contaminate ~~the District's groundwater resources, including various aquifers in various~~

- 2 -

~~sub-basins, polluting in dispersed locations~~, substantial portions of the ~~common water supply managed by the District.~~**principal (deep) aquifer used for public water supplies.** Groundwater typically occurs in the District service area at 20 to 100 feet or more below the surface. **Groundwater used to supply public water typically occurs at greater depths and may be shielded by clay layers occurring between the shallow aquifer an deeper aquifers.** Because of the distance, relatively low precipitation rates, and potential presence of intermittent clay layers which retard downward movement, **and intervening efforts at remediation,** there may be a significant delay between the release of gasoline and its occurrence in ~~groundwater~~**useable water supplies**.

2.    The defendants in this action are the designers, formulators, manufacturers, refiners, promoters, marketers, distributors, suppliers, and retailers of the MTBE and TBA and gasoline containing MTBE and TBA that contaminates and pollutes ~~groundwater resources~~**useable public water supplies** replenished and managed by the District. Defendants knowingly and willfully promoted and marketed MTBE and TBA and gasoline containing MTBE and TBA, when they knew or reasonably should have known that these compounds would reach groundwater, pollute public water supplies, render drinking water unusable and unsafe, and threaten the public health and welfare as they have done within the District.

3.    The District files this lawsuit to recover compensatory and all other damages, including all necessary funds to investigate, monitor, prevent, abate, or contain any contamination of, or pollution to, ~~groundwaters~~**the principal aquifer** within the District from MTBE and TBA; to protect the quality of the ~~common~~**public drinking** water supplies of the District; to prevent pollution or contamination of that water supply; and to assure that the responsible parties -~~-~~ and not the District nor the public -- bear the expense.

- 3 -

## II. PLAINTIFF.

4. The District is a special water agency created by the Legislature in 1933 to maintain, replenish, and manage groundwater ~~resources.~~used for common water supplies. The Legislature expressly granted the District the right, and duty, among other things, to conduct any investigations of the quality of the groundwaters within the district to determine whether those waters are contaminated or polluted, and to perform any necessary investigation, cleanup, abatement, or remedial work to prevent, abate, or contain any threatened or existing contamination or pollution of the surface or groundwaters of the district, and recover the costs of any such activities from the persons responsible for the contamination or threatened contamination. (Cal. Water Code App. § 40-8). The District has suffered injury in fact, including expending funds necessary to investigate, clean up, abate, and/or remediate the MTBE and/or TBA contamination caused by Defendants.

5. The Legislature has also expressly granted the District the right, and duty, among other things, to litigate in order to protect ~~groundwater resources~~useable public water supplies and to represent the rights of water users within its territory. In particular, the District has the right, and duty, to commence, maintain, intervene in and compromise any and all actions and proceedings to prevent interference with water or water rights used or useful to lands within the district, or diminution of the quantity or pollution or contamination of the water supply of the district, or to prevent any interference with the water or water rights used or useful in the district which may endanger or damage the inhabitants, lands or use of water in the district. (Cal. Water Code App. § 40-2). The District owns land overlying groundwater at various locations within the District and has water rights therein. Water users within the District pump at least 320,000 acre-feet of groundwater each year. There are over four hundred confirmed MTBE release sites

- 4 -

in the District. **Many of these sites are** contaminating and threatening the water supplies of

overlying owners and other water users within the District. The District and the water users it

represents have suffered injury in fact as a result of MTBE and/or TBA contamination and threat

of contamination in~~of drinking~~ water ~~supply~~ wells ~~in the District's groundwater resources~~.

     6.     The District has protectable legal interests in the groundwaters within the

District's territory, including the right to extract groundwater, which have been injured as a result

of contamination of such groundwaters by MTBE and/or TBA. The relief sought in this action

will remedy the injury suffered by the District.

### III. DEFENDANTS.

     7.     The defendants in this action are all corporate ~~member§~~**members** of the

petroleum industry. As described below, defendants include refiners of gasoline containing

MTBE and/or TBA that contaminates and pollutes ~~groundwaters~~**useable public waters**

**supplies** within the District; manufacturers and promoters of MTBE and/or TBA; suppliers of

gasoline containing MTBE and/or TBA that contaminates and pollutes ~~groundwaters~~**useable**

**public waters suppliers** within the District; and owners and operators of gasoline facilities that

have released MTBE and/or TBA that contaminates and pollutes ~~groundwaters~~**useable public**

**water supplies** within the District;

     8.     When reference in this complaint is made to any act or omission of the

defendants, it shall be deemed to mean that the officers, directors, agents, employees, or

representatives of the defendants committed or authorized such act or omission, or failed to

adequately supervise or properly control or direct their employees while engaged in the

management, direction, operation or control of the affairs of defendants, and did so while acting

within the scope of their employment or agency.

- 5 -

9.     Plaintiff is ignorant of the true names and/or capacities of the defendants sued herein under the fictitious names DOES 9 through 200 and 202 through 1000, inclusive.

**A.     Refiner Defendants.**

10.     The following defendants owned and operated gasoline refineries in Southern California that have provided, at all times relevant to this complaint, gasoline containing MTBE and/or TBA to areas affecting the District's ~~groundwater~~useable public water supplies:

11.     Unocal Corporation ("Unocal"), individually and formerly known as Union Oil Company of California, is a Delaware corporation with its principal place of business in El Segundo, California, doing business in California. Plaintiff is informed and believes that Unocal Corporation is a successor in interest to Union Oil Company of California. Plaintiff is informed and believes that Unocal holds a patent for reformulated gasoline containing MTBE used in California.

12.     Union Oil Company of California ("Union Oil") is a California corporation with its principal place of business in El Segundo, California. Plaintiff is informed and believes that since approximately 1985 this defendant has done business under the name "Unocal," and that Unocal is a wholly-owned, operating subsidiary of Unocal Corporation, a holding company incorporated in Delaware. Union Oil Company of California is named in place of DOE 1.

13.     Tosco Corporation ("Tosco") is a Nevada corporation with its principal place of business in Bartlesville, Oklahoma, and doing business in California.

14.     ConocoPhillips Company ("ConocoPhillips Co.") is a Delaware corporation with its principal place of business in Houston, Texas, and doing business in California. Plaintiff is informed and believes that ConocoPhillips Co. is the successor in interest to Tosco.

15. Chevron U.S.A. Inc., individually and doing business as Chevron Products Company and Chevron Chemical Company ("Chevron U.S.A."), is a Pennsylvania corporation with its principal place of business in San Ramon, California, and doing business in California.

16. ChevronTexaco Corporation ("ChevronTexaco") is a Delaware corporation with its principal place of business in San Ramon, California, doing business in California.

17. Texaco Refining and Marketing Inc., now known as TMR Company ("Texaco"), is a Delaware corporation with its principal place of business in Houston, Texas, and doing business in California.

18. Equilon Enterprises LLC, ("Equilon") is a Delaware company with its principal place of business in Houston, Texas and doing business in California. Plaintiff is informed and believes that Equilon is a successor in interest to certain Shell-related and Texaco-related entities.

19. Shell Oil Company, individually and doing business as Shell Oil Products US ("Shell") is a Delaware corporation with its principal place of business in Houston, Texas, and doing business in California.

20. Exxon Mobil Corporation, individually and formerly known as Exxon Corporation and doing business as ExxonMobil Refining and Supply Company, Exxon Chemical U.S.A., and ExxonMobil Chemical Corporation ("Exxon Mobil"), is a New Jersey corporation with its principal place of business in Houston, Texas and doing business in California. Plaintiff is informed and believes that Exxon Mobil was formed as a result of a merger in 1999 of Mobil Corporation and Exxon Corporation. Plaintiff is informed and believes that Exxon Mobil Corporation is the successor corporation to Exxon Corporation, which prior to the merger with

- 7 -

Mobil Corporation in 1999 supplied, exchanged and/or otherwise provided gasoline containing MTBE and/or TBA to gasoline stations in Southern California.

21.     Mobil Corporation ("Mobil") is a Nevada corporation with its principal place of business in Houston, Texas, and doing business in California.

22.     Ultramar, Inc. ("Ultramar") is a Nevada corporation with its principal place of business in San Antonio, Texas, and doing business in California, and is a successor in interest to Beacon Oil Company.

23.     Valero Refining Company - California (erroneously named as "Valero Refining Company" in the original complaint, hereafter abbreviated as "Valero") is a Delaware corporation with its principal place of business in San Antonio, Texas, and doing business in California.

24.     Valero Marketing and Supply Company ("VMSC") is a Delaware corporation with its principal place of business in San Antonio, Texas, and doing business in California. VMSC is named in place of DOE 2.

25.     Atlantic Richfield Company, individually and doing business as ARCO Products Company (formerly known as ARCO Petroleum Company) and also known as ARCO ("ARCO"), is a Delaware corporation, with its principal place of business in Los Angeles, California, and doing business in California. Among other things, ARCO undertook a national campaign extolling the purported environmental benefits of MTBE-based gasoline, including providing its formulas for such gasoline to other refiners.

26.     BP Products North America, Inc. ("BP") is a Delaware Corporation with its principal place of business in Chicago, Illinois, and doing business in California.

- 8 -

27. BP West Coast LLC ("BP West Coast") is a Delaware limited liability company with its headquarters in Los Angeles, California. BP West Coast is named in place of DOE 3.

28. Tesoro Petroleum Corporation ("Tesoro") is a Delaware corporation with its principal place of business in San Antonio, Texas, and doing business in California. Tesoro is named in place of DOE 4.

29. Tesoro Refining and Marketing Company, Inc. ("Tesoro Refining"), is a wholly owned subsidiary of Tesoro, is a Delaware corporation with its principal place of business in San Antonio, Texas, doing business in California. Tesoro Refining is named in place of DOE 5.

**B. Supplier Defendants.**

30. At all times relevant herein the following defendants supplied gasoline containing MTBE and/or TBA which affected the District's ~~groundwater~~useable public water supplies:

31. Petro-Diamond, Inc., ("Petro-Diamond") is a Delaware Corporation with its principal place of business in Irvine, California. Petro Diamond is named in place of DOE 6.

32. Southern Counties Oil Co. ("Southern Counties"), is a California Corporation with its principal place of business in Orange, California.    Southern Counties is named in place of DOE 7.

33. Citgo Petroleum Corporation ("Citgo") is a Delaware corporation with its principal place of business in Tulsa, Oklahoma, and doing business in California. Citgo is named in place of DOE 8.

34. The defendants identified in paragraphs 10 through 33 and DOES 9 through 200 will be collectively referred to as the "Refiner/Supplier Defendants." Among other things, these defendants (1) designed, formulated, manufactured, compounded, refined, provided product information and/or instructions for use, packaged, promoted, marketed, distributed, transported,

exchanged and/or sold gasoline containing MTBE and/or TBA in the State of California that is contaminating and polluting ~~groundwaters~~useable public water supplies within the District; (2) negligently designed, constructed, fabricated, installed, owned, operated, controlled, inspected, and/or repaired gasoline delivery systems (defined wherever used in this Complaint as including, but not limited to, gasoline stations and other gasoline storage, transfer, delivery and dispensing systems) from which MTBE and/or TBA is contaminating or polluting ~~groundwaters~~useable public water supplies within the District; (3) were legally responsible for and committed each of the multiple tortious and ongoing wrongful acts alleged in this Complaint; (4) participated in one or more enterprises to promote MTBE and/or TBA and/or gasoline containing MTBE and/or TBA; (5) negligently and/or intentionally failed and refused to take appropriate remediation action to abate MTBE and/or TBA plumes formed after MTBE and/or TBA escaped from their gasoline delivery systems; and (6) in doing the tortious and wrongful acts alleged in this Complaint, acted in the capacity of aider, abettor, co-conspirator, joint-venturer, partner, agent, principal, successor-in-interest, surviving corporation, fraudulent transferee, fraudulent transferor, controller, alter-ego, licensee, licensor, patent holder and/or indemnitor of each of the other defendants.

## C. MTBE/TBA Manufacturer and Supplier Defendants.

35. The following defendants manufactured and/or supplied MTBE and/or TBA which was added to gasoline that was distributed to and sold in areas affecting the District's ~~groundwater~~useable public water resources:

36. ARCO Chemical Company is a corporation with its principal place of business in Los Angeles, California. ARCO Chemical Company is named in place of DOE 201.

37. Lyondell Chemical Company, individually and formerly known as ARCO Chemical Company (collectively, "Lyondell") is a corporation with its headquarters in Houston,

- 10 -

Texas, and doing business in California. Plaintiff is informed and believes that Lyondell is a successor in interest to ARCO Chemical Company.

38. Defendants BP, BP West Coast, Chevron U.S.A., CITGO, ConocoPhillips Co., Equilon, ExxonMobil, Shell, Tesoro, Tesoro Refining, Tosco, Valero Refining Company - California, Valero Marketing and Supply Company, and Petro-Diamond also manufactured and/or supplied MTBE and/or TBA for use in gasoline.

39. The defendants identified in paragraphs 35 through 38 and DOES 202 through 250 will be collectively referred to as the "Manufacturer/Supplier Defendants." The Manufacturer/ Supplier Defendants, and each of them: (1) designed, formulated, manufactured, compounded, refined, provided product information and/or instructions for use, packaged, promoted, marketed, distributed, transported, exchanged and/or sold MTBE and/or TBA in the State of California that is contaminating and polluting the ~~groundwaters~~useable public water supplies within the District; (2) were legally responsible for and committed each of the multiple tortious and ongoing wrongful acts alleged in this Complaint; (3) participated in one or more enterprises to promote MTBE and/or TBA and/or gasoline containing MTBE and/or TBA; and (4) in doing the tortious and wrongful acts alleged in this Complaint, acted in the capacity of aider, abettor, co-conspirator, joint-venturer, partner, agent, principal, successor-in-interest, surviving corporation, fraudulent transferee, fraudulent transferor, controller, alter-ego, licensee, licensor, patent holder and/or indemnitor of each of the other defendants.

**D. Owner/Operator Defendants.**

40. The following defendants own and operate gasoline delivery systems (as defined above) in areas affecting the District:

- 11 -

41.    G&M Oil Company, Inc. is a California Corporation, with its principal place of business in Huntington Beach, California, doing business in California.

42.    7-Eleven, Inc. is a Texas corporation with its principal place of business in Dallas, Texas, doing business in California.

43.    USA Gasoline Corporation is a California corporation with its principal place of business in Agoura, California, doing business in California.

44.    The Refiner/Supplier Defendants, and each of them, also owned and operated gasoline delivery systems.

45.    The defendants identified in paragraphs 40 through 44 and DOES 251 through 1000 will be collectively referred to as the "Owner/Operator Defendants." The Owner/Operator Defendants, and each of them, (1) negligently designed, constructed, fabricated, installed, owned, operated, controlled, inspected, and/or repaired gasoline delivery systems from which MTBE and/or TBA is contaminating or polluting ~~groundwaters~~useable public water supplies within the District; (2) were legally responsible for and committed each of the multiple tortious and ongoing wrongful acts alleged in this Complaint; (3) participated in one or more enterprises to promote, market, distribute, and sell MTBE and/or TBA and/or gasoline containing MTBE and/or TBA; and (4) in doing the tortious and wrongful acts alleged in this Complaint, acted in the capacity of aider, abettor, co-conspirator, joint-venturer, partner, agent, principal, successor-in-interest, surviving corporation, fraudulent transferee, fraudulent transferor, controller, alter-ego, licensee, licensor, patent holder and/or indemnitor of each of the other defendants.

## IV. ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION.

**A.    The Contaminants: MTBE and TBA.**

46.     MTBE is an additive to gasoline. As used herein, MTBE consists not only of methyl tertiary butyl ether, but also the contaminants in commercial grade MTBE as well as the following oxygenates and ethers, including, but not limited to, TAME, DIPE, and ETBE.

47.     TBA is present in some gasoline. TBA is variously a gasoline constituent, an impurity in commercial grade MTBE, and a degradation or breakdown product of MTBE.

48.     MTBE and TBA contaminate the environment through leaks and spills from gasoline delivery systems. Once released to the environment from gasoline delivery systems, MTBE and TBA have unique characteristics that cause extensive environmental contamination and a corresponding threat to the public health and welfare. In particular, the fate and transport of MTBE and TBA in the subsurface differs significantly from that of gasoline constituents that have historically been of environmental and/or toxicological concern, specifically the "BTEX compounds" (benzene, toluene, ethylbenzene, and xylene).

49.     Once released into the subsurface, MTBE and TBA separate from other gasoline constituents in the presence of moisture. In contrast to the BTEX compounds, MTBE and TBA have a strong affinity for water. If MTBE and/or TBA are released into the environment in sufficient quantities, MTBE and/or TBA have the capacity to migrate through the soil, the groundwater, penetrate deeper within the aquifer, and cause persistent contamination that can threaten the potability of drinking water wells. There is a potentially lengthy delay, based on site specific factors, between the time MTBE and/or TBA are released and the time they accumulate in potentially usable ground water in sufficient quantities to contaminate public drinking water resources.

50.     MTBE and TBA spread farther and faster than other components of gasoline, resist biodegradation, and are difficult and costly to remove from groundwater and drinking water supplies.

## B.     Regulatory Standards Applicable to MTBE and TBA.

51.     No federal or state agency has approved either MTBE or TBA as an additive to drinking water. No federal or state agency has approved releasing MTBE or TBA to groundwater.

52.     Along with its other vile properties, MTBE can render water supplies undrinkable by changing the taste and odor of water into a foul smelling liquid with a turpentine odor and chemical taste unfit for human consumption. The State of California has established a Secondary Maximum Contaminant Level ("MCL") for MTBE of 5 parts per billion ("ppb"). This means that the law prohibits using water containing MTBE at or above this level for public drinking water systems because of MTBE's aesthetic properties. Some individuals, however, can smell and taste MTBE in water at significantly lower levels.

53.     MTBE also presents a significant public health threat. Because of MTBE's potential for causing cancer, the State of California has established a Primary (health) MCL for MTBE of 13 ppb. This means that the law prohibits using water containing MTBE at or above this level for public drinking water systems because of MTBE's threat to public health.

54.     TBA also presents a significant threat to public health. The State of California has set an Action Level for TBA of 12 parts per billion in water, based on an interim assessment performed by the California Office of Environmental Health Hazard Assessment. The interim assessment concluded that exposure to TBA at levels above 12 ppb in water creates an unacceptable public health risk of cancer.

- 14 -

55.     Former California Governor Gray Davis ordered state agencies to phase out MTBE use in motor fuel in California, to achieve 100% removal no later than December 31, 2003. Because of MTBE's threat to drinking water, the federal government has also announced its intent to "significantly reduce or eliminate" MTBE from gasoline in an Advance Notice of Proposed Rulemaking published in the Federal Register.

## C.     Defendants' Promotion of MTBE and TBA.

56.     The Refiner/Supplier and Manufacturer/Supplier Defendants, all of whom have promoted the use of gasoline containing MTBE and/or TBA for its purported environmental benefits, knew or should have known of the grave harm and threat to the public health and welfare represented by the proliferating use of this compound, including (among other things): widespread pollution of groundwater with MTBE and/or TBA, contamination of public drinking water by these compounds, drinking water supplies rendered unfit and unusable for consumption, public health threatened, and increased costs to public water suppliers and their customers.

57.     Despite knowing that MTBE and/or TBA pollution was inevitable unless adequate precautions were taken, and despite the availability of reasonable alternatives (including but not limited to adequate warnings) defendants chose not to warn customers, retailers, regulators or public officials, including the District. As production and sales of these compounds and gasoline containing them increased, defendants failed to take any reasonable, appropriate, and special precautions to store gasoline containing MTBE and/or TBA safely, or to prevent, detect and clean-up spills and leaks of gasoline containing this product. Despite knowing the risk of harm posed by MTBE and/or TBA, defendants also failed to warn purchasers, the public, regulators, and/or the District that without such precautions more and more MTBE and/or TBA would be released

- 15 -

into the environment and cause, among other significant adverse effects, long term groundwater contamination, pollution of water supplies, and threats to public health and safety.

58.     The Refiner/Supplier Defendants further exacerbated the situation by continuing unreasonable and negligent acts, including providing gasoline containing MTBE and/or TBA to gasoline stations without either providing appropriate warnings or taking other precautions adequate to prevent releases of MTBE and/or TBA to the subsurface, knowing that release to the environment of this compound would be inevitable because a substantial percentage of those gasoline stations would store such gasoline without taking reasonable, appropriate or special precautions, including by placing the gasoline in inadequate and leaking gasoline delivery systems, and without taking reasonable, appropriate, or special measures to monitor, detect, and respond to releases of MTBE and/or TBA to soil and/or groundwater, and without taking reasonable, appropriate or special precautions to investigate, contain and clean up releases of these compounds.

59.     The Refiner/Supplier and Manufacturer/Supplier Defendants took affirmative actions that led to the contamination of the District's ~~groundwater resources~~**public water supplies** with MTBE and/or TBA, including but not limited to, making representations to downstream users of MTBE, TBA and/or gasoline containing MTBE and/or TBA, as well as to the public and government agencies, that such products were environmentally sound and appropriate for widespread production, distribution, sale and use.  Indeed, defendants represented that gasoline containing MTBE could be handled the same as ordinary gasoline, and required no special measures to protect against or respond to suspected releases to the subsurface.

60.     The manufacturers, refiners, and suppliers of MTBE, TBA, and gasoline containing MTBE and/or TBA had a duty (which they breached) to test MTBE and TBA

thoroughly to determine their environmental fate and transport characteristics, and potential human health impacts before they sold MTBE, TBA and/or gasoline containing MTBE and/or TBA, and had a further duty (which they also breached) to take precautions necessary to assure that gasoline containing MTBE and/or TBA was properly stored and instituted all necessary measures to contain and promptly abate the inevitable spills and leaks. Nonetheless, the defendants, and each of them, failed adequately to test, store, warn about, or control gasoline containing MTBE and/or TBA, and, among other things, failed to abate groundwater contamination caused by MTBE and/or TBA, including contamination in and pollution to the District's ~~groundwater resources~~**public water supplies**.

61.     The Refiner/Supplier and Manufacturer/Supplier Defendants, their agents and employees created, participated in, and/or facilitated the flow of MTBE, TBA and/or gasoline containing one or more such compounds into gasoline distribution, storage, and dispensing systems that they knew could not safely contain such products. The widespread problems of leaking gasoline delivery systems were well known to the defendants prior to the introduction of MTBE and TBA. At least as early as the mid-1960's, these defendants knew, or reasonably should have known, that gasoline delivery systems suffer significant and widespread leaks and failures, and release gasoline products into the environment, including into groundwater.

62.     Before introducing MTBE and/or TBA into gasoline delivery systems, the Refiner/Supplier and Manufacturer/Supplier Defendants knew, or reasonably should have known, among other things, that MTBE and/or TBA released into the environment would mix easily with groundwater, move great distances, resist biodegradation and/or bioremediation, render drinking water unsafe and/or non-potable, cause significant expenses to remove from public drinking water supplies, and otherwise threaten the public health and welfare. The

- 17 -

defendants knew, or they reasonably should have known, that the gasoline distribution and retail system statewide - and in the vicinity of the District - contained leaking gasoline delivery systems. They knew, or they reasonably should have known, that gasoline facilities, including those in the vicinity of the District, commonly lacked adequate storage facilities for gasoline containing MTBE and/or TBA, and that the operators of these facilities were unaware of either the special hazards of MTBE and/or TBA or the steps necessary to eliminate or mitigate those hazards.

63. At all times relevant to this action:

(a) the Manufacturer/Supplier Defendants, and each of them, sold, exchanged, supplied, distributed, delivered and/or otherwise provided MTBE and/or TBA to the Refiner/Supplier Defendants, the Refiner/Supplier Defendants, and each of them, sold, exchanged, supplied, distributed, delivered and/or otherwise provided gasoline containing MTBE and/or TBA to retail gasoline stations and/or other gasoline delivery systems within or near the District's boundaries. Such sales, exchanges, supplies, distributions, deliveries and/or other provisions of gasoline containing MTBE and/or TBA to such facilities occurred over time through the end of 2002 and, for at least certain defendants, beyond;

(b) gasoline containing MTBE and/or TBA was released to the subsurface from retail gasoline facilities owned and/or operated by the Owner/Operator Defendants, and each of them, and from other facilities at dispersed locations within or near the District's boundaries. Such releases of gasoline containing MTBE and/or TBA have occurred over time, have been discovered or have become discoverable at

- 18 -

various times, and are still occurring, all in varying amounts at different locations, impacting various aquifers in various sub-basins within the District; and

(c) MTBE and TBA take time to migrate from release points to locations within the subsurface at which they have an appreciable impact on groundwater resources. MTBE and TBA have over time migrated in the subsurface from dispersed release points at or near the surface at retail gasoline facilities within or near the District's boundaries, causing pollution, contamination, and substantial damage to the District's ~~groundwater resources~~**public water supplies**, causing appreciable injury to the District within the three years before the filing of this Complaint, and damaging the District at such times and in amounts to be proved at trial.

## FIRST CAUSE OF ACTION

### (Strict Liability Against All Defendants)

64. The District refers to paragraphs 1 through 63 above, and by this reference incorporates them as though set forth in full.

65. The Refiner/Supplier Defendants, and each of them, designed, formulated, manufactured, compounded, refined, provided product information and/or instructions for use, packaged, labeled, promoted, marketed, distributed, transported, exchanged and/or sold gasoline containing MTBE and/or TBA.

66. The Refiner/Supplier and Manufacturer/Supplier Defendants, and each of them, designed, formulated, manufactured, compounded, refined, provided product information and/or instructions for use, packaged, labeled, promoted, marketed, distributed, transported, exchanged and/or sold MTBE and/or TBA, which was intended by said defendants, and each of them, to be used as a gasoline additive.

- 19 -

67.     The Owner/Operator Defendants took delivery of, stored and sold the gasoline containing MTBE and/or TBA which is contaminating and polluting groundwater **used for public water supplies** in and near the District.

68.     The Refiner/Supplier and Manufacturer/Supplier Defendants, and each of them, represented, asserted, claimed and warranted that gasoline containing MTBE and/or TBA could be used in the same manner as gasoline not containing these compounds, and/or that gasoline containing MTBE and/or TBA did not require any different or special handling or precautions.

69.     Defendants, and each of them, knew that said product(s) were to be purchased and used without inspection for defects.

70.     MTBE and/or TBA, and gasoline containing MTBE and/or TBA, are defective products because, among other things:

    (a)     The design and manufacture of these products was defective;

    (b)     The benefits of using MTBE and/or TBA in gasoline, if any, are greatly outweighed by the associated costs and negative impacts imposed on society, consumers, and the environment, and on groundwater ~~resources~~**used for public water supplies** within the District;

    (c)     They cause extensive groundwater contamination by MTBE and/or TBA even when used in their foreseeable and intended manner;

    (d)     Even at extremely low levels, MTBE renders drinking water putrid, foul, and unfit for purveying as drinking water to the public, and TBA also renders drinking water unfit for purveying as drinking water to the public;

    (e)     MTBE and TBA pose significant threats to the public health and welfare;

- 20 -

(f)     The Refiner/Supplier and Manufacturer/Supplier Defendants failed to provide
        adequate warnings of the known and foreseeable risks of MTBE and/or TBA
        and/or gasoline containing MTBE and/or TBA, including but not limited to
        groundwater contamination with MTBE and/or TBA;

(g)     The Refiner/Supplier and Manufacturer/Supplier Defendants failed to conduct
        reasonable, appropriate or adequate scientific studies to evaluate the environmental
        fate and transport and potential human health effects of MTBE and/or TBA; and

(h)     Commercial grade MTBE is defectively manufactured when it contains
        unnecessary but environmentally harmful impurities such as TBA.

71.     MTBE and/or TBA and/or gasoline containing MTBE and/or TBA were used in a
manner in which they were foreseeably intended to be used, and as a proximate result of the
defects previously described, MTBE and/or TBA directly and proximately caused the District to
sustain the injuries and damages set forth in this Complaint within the past three years.

72.     As a direct and proximate result of the acts and omissions of the Refiner/Supplier
and Manufacturer/Supplier Defendants alleged herein, the District has initiated a remedial
program to assess, evaluate, investigate, monitor, abate, clean-up, correct, contain, and remove
MTBE and/or TBA from groundwater ~~resources~~**used for public water supplies** within its
territory, all at significant expense, loss, and damage. In particular, the District must investigate
MTBE releases from all underground gasoline storage tanks within its territory, including those
that have never been reported to regulators as known or suspected sources of releases.

73.     As a further direct and proximate result of the acts and omissions of the
Refiner/Supplier and Manufacturer/Supplier Defendants alleged in this Complaint, the District
has and will sustain substantially increased expenses, all to the District's damage in an amount

- 21 -

within the jurisdiction of this court. The District has and will also incur costs and attorneys' fees in prosecuting this action. The District is entitled to recover all such damages, together with court costs and reasonable attorneys' fees, in this action.

74.     Defendants Chevron U.S.A. Inc.; ChevronTexaco Corporation; Texaco Refining and Marketing Inc.; Equilon Enterprises LLC; Shell Oil Company; ConocoPhillips Company; Unocal Corporation; Union Oil Company of California; Tosco Corporation (after 1996); Exxon Mobil Corporation; Mobil Corporation; Ultramar, Inc. (after 1996); Valero Refining Company - California; Valero Marketing and Supply Company; Atlantic Richfield Company; BP Products North America, Inc.; Arco Chemical Company; and Lyondell Chemical Company knew that it was substantially certain that their alleged acts and omissions described above would threaten public health and cause extensive contamination of common water supplies, public drinking water supplies, and property damage. These defendants committed each of the above described acts and omissions knowingly, willfully, and with oppression, fraud, and/or malice and with conscious disregard of the health and safety of others, and of plaintiff's rights.

75.     This conduct is reprehensible, despicable, and was performed to promote sales of MTBE and/or TBA and/or gasoline containing MTBE and/or TBA in conscious disregard of the known risks of injury to health and property. Defendants acted with willful and conscious disregard of the probable dangerous consequences of that conduct and its foreseeable impact upon the District. Therefore, the District requests an award of exemplary damages in an amount sufficient to punish defendants Chevron U.S.A. Inc.; ChevronTexaco Corporation; Texaco Refining and Marketing Inc.; Equilon Enterprises LLC; Shell Oil Company; ConocoPhillips Company; Unocal Corporation; Union Oil Company of California; Tosco Corporation; Exxon Mobil Corporation; Mobil Corporation; Ultramar, Inc.; Valero Refining Company - California;

- 22 -

Valero Marketing and Supply Company; Atlantic Richfield Company; BP Products North America, Inc.; ARCO Chemical Company; and Lyondell Chemical Company. After the completion of additional investigation and discovery, the District may seek leave of court to amend this Complaint to allege a claim for exemplary damages against additional defendants if warranted by the facts.

## SECOND CAUSE OF ACTION

### (Negligence Against All Defendants)

76.    The District refers to paragraphs 1 through 75 above, and by this reference incorporates them as though set forth in full.

77.    Defendants had a duty to use due care in the design, formulation, manufacture, handling, control, disposal, promotion, marketing, distribution, sale, testing, labeling, use, and provision of product information and/or instructions for use of gasoline containing MTBE and/or TBA and gasoline delivery systems.

78.    The defendants named herein so negligently, carelessly, and/or recklessly designed, formulated, manufactured, handled, controlled (or the lack thereof), disposed, promoted, marketed, distributed, sold, tested (or the lack thereof), labeled, used, provided product information and/or instructions for use, released and/or spilled MTBE and/or TBA, and/or so negligently, carelessly and recklessly dispensed, spilled, and released gasoline containing MTBE and/or TBA and/or so negligently, carelessly, and recklessly dispensed MTBE and/or TBA into gasoline delivery systems, and/or so negligently, carelessly and/or recklessly designed, installed, operated and/or maintained gasoline pipelines and/or gasoline delivery systems for use with gasoline containing MTBE and/or TBA, that they breached their duties and directly and proximately caused MTBE and/or TBA to contaminate and pollute groundwater

- 23 -

~~resources~~**used for public water supplies** within the District resulting in the compensatory and punitive damages alleged in this complaint.

79. Defendants, and each of them, among other things, negligently, carelessly, and/or recklessly failed to: (1) prevent leaks of MTBE and/or TBA through the use of appropriate technology; (2) install and maintain gasoline delivery systems that prevented leaks and facilitated prompt detection and containment of any leaks; (3) monitor and discover leaks as soon as possible; (4) warn those who may be injured as a result of the leak(s); and (5) clean up and abate MTBE and/or TBA spill(s) as thoroughly and as soon as reasonably possible and in a manner necessary to prevent harm and injury.

80. The Refiner/Supplier Defendants exercised control over the Owner/Operator Defendants through a variety of means, including but not limited to, written agreements, inspection rights, prescribing certain procedures and operating practices, training, sale of branded goods, and agreements obligating the respective Owner/Operator Defendants to acquire, store and sell gasoline containing MTBE and/or TBA. Therefore, the Refiner/Supplier Defendants had actual control over the Owner/Operator Defendants with leaking gasoline delivery systems and/or were vicariously liable for the acts and conduct of the Owner/Operator Defendants.

81. The Refiner/Supplier Defendants and Owner/Operator Defendants also undertook tank system testing, tank integrity testing, inventory reconciliation and testing thereby affirmatively undertaking the duty to prevent releases of MTBE and/or TBA from gasoline delivery systems, but they negligently failed to properly discharge these duties.

82. The Refiner/Supplier Defendants and Owner/Operator Defendants further undertook to retain consultants to conduct environmental investigations and cleanups, thereby

- 24 -

affirmatively undertaking the duty to detect and remediate releases of MTBE and/or TBA from gasoline delivery systems, but they negligently failed to properly discharge these duties.

83.     The Refiner/Supplier Defendants knew, or should have known, that certain of the Owner/Operator Defendants had leaking gasoline delivery systems, but nonetheless negligently supplied, sold, and/or entrusted gasoline containing MTBE and/or TBA to these owner/operator defendants knowing that MTBE and/or TBA would leak into the soil and contaminate groundwater, **including groundwater used for public water supplies**.

84.     By their conduct defendants, and each of them, among other things, are:

(a)     Causing and/or permitting the discharge of wastes into groundwater resources, **including groundwater used for public water supplies,** creating conditions of pollution and/or nuisance within the meaning of California Water Code section 13050;

(b)     Using groundwaters, **including groundwater used for public water supplies** in the District for waste disposal, an unreasonable and nonbeneficial use, in violation of California Constitution Article 10, Section 2; and

(c)     Impairing the District's rights to maintain water whose quality is not impaired.

85.     As a direct and proximate result of defendants' acts and omissions as alleged herein, the District has incurred within the past three years, is incurring, and will continue to incur, MTBE and/or TBA investigation, remediation and treatment costs and expenses required to restore its groundwater ~~resources~~**used for public water supplies**, and other damages, in an amount to be proved at trial.

86.     For the reasons alleged in paragraphs 74 through 75, the District is entitled to an award of exemplary and punitive damages against defendants Chevron U.S.A. Inc.;

ChevronTexaco Corporation; Texaco Refining and Marketing Inc.; Equilon Enterprises LLC; Shell Oil Company; ConocoPhillips Company; Unocal Corporation; Union Oil Company of California; Tosco Corporation; Exxon Mobil Corporation; Mobil Corporation; Ultramar, Inc.; Valero Refining Company - California; Valero Marketing and Supply Company; Atlantic Richfield Company; BP Products North America, Inc.; ARCO Chemical Company; and Lyondell Chemical Company.

## **THIRD CAUSE OF ACTION**

### **(Trespass Against All Defendants)**

87. The District realleges paragraphs 1 through 86, inclusive, of this complaint and incorporates them herein by reference.

88. The District is the owner, actual possessor, and/or represents the interests of the owners and/or actual possessors of property rights and interests in the groundwaters within its territory, including the right to appropriate and regulate the use of water and the right to protect such groundwaters from contamination and pollution. Defendants, their agents and employees, knew or in the exercise of reasonable care should have known, that MTBE and/or TBA is extremely hazardous to groundwater **and used for** public water supplies, including the property and other rights of the District and the water users it represents.

89. The defendants so negligently, recklessly and/or intentionally released, spilled, and/or failed to properly control, handle, store, contain, and use gasoline containing MTBE and/or TBA, and/or clean up spills and leaks of MTBE and/or TBA, that they directly and proximately caused MTBE and/or TBA to contaminate the District's property as follows:

(a) The defendants participated in the use, storage, and release of MTBE and/or TBA by owning, controlling, regulating, designing, installing, operating, monitoring,

- 26 -

inspecting and testing, or by failing to do so, the pipelines and/or gasoline delivery systems and thereby proximately caused gasoline containing MTBE and/or TBA to be released into groundwater **used for public water supplies**;

(b)     The Manufacturer/Supplier Defendants negligently provided instructions and/or warnings to the Refiner/Supplier and Owner/Operator Defendants concerning MTBE and/or TBA, knowing that there was a substantial danger that if their instructions and/or warnings were followed that gasoline containing MTBE and/or TBA dispensed into gasoline delivery systems and pipelines would escape into the environment and contaminate groundwater **used for public water supplies**;

(c)     The Refiner/Supplier Defendants negligently delivered (directly or indirectly) gasoline containing MTBE and/or TBA into gasoline delivery systems which they knew, or should have known, were inadequate, old, leaking, and/or defective, and thereby created a substantial known danger that MTBE and/or TBA would be released into the environment and contaminate groundwater **used for public water supplies**; and negligently provided instructions and/or warnings to the Owner/Operator Defendants concerning MTBE and/or TBA, knowing that there was a substantial danger that if their instructions and/or warnings were followed that gasoline containing MTBE and/or TBA dispensed into gasoline delivery systems would escape into the environment and contaminate groundwater, **including groundwater used for public water supplies**;

(d)     Defendants retained consultants and negligently controlled and/or directed their cleanup and remediation activities (or the lack thereof) at gasoline station sites and pipelines, thereby causing and permitting MTBE and/or TBA to contaminate

- 27 -

and pollute the District's property, and defendants failed to warn the appropriate entities and individuals, including the District, of known risks, spills, releases and/or leaks, and/or failed to undertake reasonable, appropriate or necessary action to reduce, remediate, or abate MTBE and/or TBA groundwater contamination.

(e)     Defendants negligently overfilled gasoline delivery systems with gasoline containing MTBE and/or TBA, and/or spilled or released it at gasoline facilities near the District.

(f)     When defendants learned, or reasonably should have learned, that MTBE and/or TBA was a persistent, significant and/or widespread source of groundwater contamination, or threatened to become so, defendants failed to warn the appropriate entities and individuals, including the District, of known risks, spills, releases and/or leaks, and/or failed to undertake reasonable, appropriate or necessary action to reduce, remediate, or abate MTBE and/or TBA groundwater contamination.

90.     The MTBE and/or TBA contamination of ~~groundwater~~**public water supplies** within the District has varied and will vary over time and requires investigation, remediation, abatement, and/or treatment. The District has engaged, is engaging and will engage, in remediation, abatement, investigation, and/or treatment programs and/or in securing replacement water supplies, and has thereby sustained within the past three years, and still is sustaining, and will sustain, the damages alleged herein.

91.     The defendants, and each of them, caused, created, and/or assisted in the creation of the trespass alleged herein.

- 28 -

92.     For the reasons alleged in paragraphs 74 through 75, the District is entitled to an award of exemplary and punitive damages against defendants Chevron U.S.A. Inc.; ChevronTexaco Corporation; Texaco Refining and Marketing Inc.; Equilon Enterprises LLC; Shell Oil Company; ConocoPhillips Company; Unocal Corporation; Union Oil Company of California; Tosco Corporation; Exxon Mobil Corporation; Mobil Corporation; Ultramar, Inc.; Valero Refining Company - California; Valero Marketing and Supply Company; Atlantic Richfield Company; BP Products North America, Inc.; ARCO Chemical Company; and Lyondell Chemical Company.

## **FOURTH CAUSE OF ACTION**

### **(Nuisance Against All Defendants)**

93.     The District realleges paragraphs 1 through 92 of this complaint and incorporates them herein by reference.

94.     The negligent, reckless, intentional and ultrahazardous activity of the defendants, and each of them, alleged herein has resulted in the contamination of and pollution of groundwaters **providing public water supplies** within the District as alleged herein and constitutes a nuisance. The contamination and pollution of such ~~groundwaters~~**public water supplies** with gasoline and MTBE and/or TBA is a public nuisance as defined in Civil Code section 3479, Civil Code section 3480, Health and Safety Code section 5410, and Water Code section 13050, and is abatable. The defendants, and each of them, caused, created, and/or assisted in the creation of the nuisance alleged herein.

95.     The Manufacturer/Supplier and Refiner/Supplier Defendants, their agents and employees marketed, distributed, promoted, and/or sold their products with reckless disregard for

- 29 -

human health, the environment, and for the peace, tranquility, and economic well-being of the public, resulting in the nuisance alleged herein.

96.     The District is specially and adversely affected by the nuisance.

97.     The nuisance caused by defendants, and each of them, has substantially interfered with and obstructed the District's ability to provide a water supply free from unacceptable health risk, taste, odor, color, pollution and contamination, and to protect ~~groundwaters~~**public water supplies** within its territory from such harm.

98.     The District owns, holds and/or represents property rights and interests damaged by the nuisance. The District's injury is separate and distinct from that of the public.

99.     The District has not consented to and does not consent to this nuisance. Defendants, and each of them, knew or should have known, that the District would not consent to this nuisance.

100.    As a direct and proximate result of the nuisance, the District has been damaged within the past three years and is entitled to the compensatory and exemplary damages alleged herein, or to such other appropriate relief the District may elect at trial, including, but not limited to, equitable relief in the form of an order requiring Defendants to abate the nuisance properly as to the District.

101.    For the reasons alleged in paragraphs 74 through 75, the District is entitled to an award of exemplary and punitive damages against defendants Chevron U.S.A. Inc.; ChevronTexaco Corporation; Texaco Refining and Marketing Inc.; Equilon Enterprises LLC; Shell Oil Company; ConocoPhillips Company; Unocal Corporation; Union Oil Company of California; Tosco Corporation; Exxon Mobil Corporation; Mobil Corporation; Ultramar, Inc.; Valero Refining Company - California; Valero Marketing and Supply Company; Atlantic

- 30 -

Richfield Company; BP Products North America, Inc.; ARCO Chemical Company; and Lyondell
Chemical Company.

## FIFTH CAUSE OF ACTION

### (Orange County Water District Act Claim Against All Defendants)

102.    The District refers to paragraphs 1 through 101 above, and by this reference
incorporates them as though set forth in full.

103.    Defendants, and each of them, have caused and are causing the District to conduct
investigations of the quality of the ~~groundwaters~~**water supplies** within the District to determine
whether those waters are contaminated or polluted with MTBE and/or TBA, at substantial cost to
the District in an amount to be proved at trial.

104.    Defendants, and each of them, have caused, **and** are causing, ~~and will cause~~ the
District to perform cleanup, abatement, and/or remedial work needed to prevent, abate, and/or
contain threatened or existing contamination of, or pollution to, the ~~groundwaters~~**public water**
**supplies** of the District, all at substantial cost to the District in an amount to be proved at trial.

105.    Defendants, and each of them, are causing or threatening to cause MTBE and/or
TBA contamination or pollution of ~~groundwater resources~~**public water supplies** within the
District. As a direct and proximate result of the acts and omissions of the defendants alleged in
this Complaint, the District must initiate a remedial program to assess, evaluate, investigate,
monitor, abate, clean up, correct, contain, and/or take other necessary remedial action, all at
significant expense, loss, and damage in amounts to be proved at trial.

106.    As a further direct and proximate result of the acts and omissions of the
defendants alleged in this Complaint, the District ~~will sustain~~**, since May 6, 2000, has sustained**
substantially increased expenses, all to the District's damage in an amount within the jurisdiction

- 31 -

of this court. ~~The District has and will also incur costs and attorneys' fees in prosecuting this action. The~~ Under Section 8 of the Orange County Water District Act, California Water Code Appendix 40-8, the District is entitled to recover ~~all such damages,~~ 'reasonable costs actually incurred' since May 6, 2000, together with court costs and reasonable attorneys' fees, in this action. The District also seeks declaratory relief with respect to future expenses it may incur.

107. Defendants Chevron U.S.A. Inc.; ChevronTexaco Corporation; Texaco Refining and Marketing Inc.; Equilon Enterprises LLC; Shell Oil Company; ConocoPhillips Company; Unocal Corporation; Union Oil Company of California; Tosco Corporation (after 1996); Exxon Mobil Corporation; Mobil Corporation; Ultramar, Inc. (after 1996); Valero Refining Company - California; Valero Marketing and Supply Company; Atlantic Richfield Company; BP Products North America, Inc.; ARCO Chemical Company; and Lyondell Chemical Company knew that it was substantially certain that their alleged acts and omissions described above would threaten public health and cause extensive contamination of common water supplies, public drinking water supplies, and property damage. These defendants committed each of the above described acts and omissions knowingly, willfully, and with oppression, fraud, and/or malice and with conscious disregard of the health and safety of others, and of plaintiff's rights.

108. This conduct is reprehensible, despicable, and was performed to promote sales of MTBE and/or TBA and/or gasoline containing MTBE and/or TBA in conscious disregard of the known risks of injury to health and property. Defendants acted with willful and conscious disregard of the probable dangerous consequences of that conduct and its foreseeable impact upon the District. Therefore, the District requests an award of exemplary damages in an amount sufficient to punish defendants Chevron U.S.A. Inc.; ChevronTexaco Corporation; Texaco

- 32 -

Refining and Marketing Inc.; Equilon Enterprises LLC; Shell Oil Company; ConocoPhillips Company; Unocal Corporation; Union Oil Company of California; Tosco Corporation; Exxon Mobil Corporation; Mobil Corporation; Ultramar, Inc.; Valero Refining Company - California; Valero Marketing and Supply Company; Atlantic Richfield Company; BP Products North America, Inc.; ARCO Chemical Company; and Lyondell Chemical Company. After the completion of additional investigation and discovery, the District may seek leave of court to amend this Complaint to allege a claim for exemplary damages against additional defendants if warranted by the facts.

## SIXTH CAUSE OF ACTION

### (Declaratory Relief Against All Defendants)

109. The District realleges paragraphs 1 through 108, inclusive, and incorporates them herein by reference.

110. Defendants knew, or should have known, that if gasoline containing MTBE and/or TBA was used in a foreseeable and intended manner that MTBE and/or TBA was dangerous and created an unreasonable and excessive risk of harm to human health and the environment.

111. The defendants intentionally, willfully, deliberately and/or negligently failed to properly design, manufacture, distribute, design, control, test, sell, and/or provide accurate product information and/or instructions for use of MTBE and/or TBA and/or gasoline delivery systems and warn users of the substantial and unreasonable threats to human health and safety and the environment which results from the foreseeable and intended use and storage of MTBE and/or TBA.

Document comparison done by DeltaView on Wednesday, February 20, 2008 10:51:48 AM

| Input: | |
|---|---|
| Document 1 | iManageDeskSite://LADMS/LA/455549/1 |
| Document 2 | iManageDeskSite://LADMS/LA/455549/2 |
| Rendering set | WP |

| Legend: | |
|---|---|
| **Insertion** | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| **Moved to** | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 74 |
| Deletions | 59 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 133 |

# Exhibit B



"Mike Axline"
<maxline@toxictorts.org>

02/20/2008 02:18 PM

Please respond to
<maxline@toxictorts.org>

To  Matthew Heartney/Atty/LA/ArnoldAndPorter@APORTER

cc  "Miller, Axline & Sawyer" <toxictorts.org>,
     <JON.ANDERSON@LW.com>, <CCorrell@KSLAW.com>,
     <jparker@sheppardmullin.com>,

bcc

Subject  RE: Proposed amended complaint attached to letter to the
         court

History:        ⟳ This message has been replied to.

Matt

I explained to the Court in my pre-motion conference letter that defendants
had agreed only to the changes in paragraphs 104 and 106, and that with
respect to other changes (which I described and which are easily discernible
from the description), we would move to amend if necessary following a
pre-motion conference.

I am of course hoping that you will elect not to oppose the additional
amendments, thereby making a motion to amend unnecessary, but given the
length of time it took to reach agreement with respect to paragraphs 104 and
106, and the current deadline for our statute of limitations brief, I
thought it best to bring this to Judge Scheindlin's attention along with our
request for extension.

It is not as easy to redline with wordperfect, but if you think it would be
helpful I will endeavor to get you a redline version of the Third Amended
Complaint this afternoon.

As I also explained in my letter, the descriptive changes were made to more
specifically describe the nature of the District's injury, as defendants
have been requesting and as the District has endeavored to accomplish in the
briefing on the statute of limitations.  They are consistent with the
District's prior briefing.

Mike

Miller, Axline & Sawyer / phone (916) 488-6688 / fax (916) 488-4288
This private communication may be confidential or privileged. If you are not
the intended recipient, any disclosure, distribution, or use of information
herein or attached is prohibited.

-----Original Message-----
From: Matthew_Heartney@aporter.com [mailto:Matthew_Heartney@aporter.com]
Sent: Wednesday, February 20, 2008 11:55 AM
To: mike
Cc: Miller, Axline & Sawyer; JON.ANDERSON@LW.com; CCorrell@KSLAW.com;
jparker@sheppardmullin.com; patrick.cafferty@mto.com; William.Temko@mto.com;
Stephanie_Weirick@aporter.com; Melanie Hanson Sartoris; Whitney Roy
Subject: Proposed amended complaint attached to letter to the court

Michael,

Your letter to Judge Scheindlin last night attached a proposed amended
complaint that differs in numerous instances from the proposed third
amended complaint that you provided defendants on January 30, and that
led to my e-mail also attached to your letter to Judge Scheindlin.

Until last night, the District had not informed defendants of any proposed amendments going beyond the proposed complaint provided on January 30, and it appears from my review of the new proposed pleadings that changes have been made throughout the document. To allow defendants to understand in what additional respects the District seeks to amend its complaint, I ask that you promptly provide us with a redlined version of the proposed complaint sent to the judge. Or, if you prefer, defendants ask that the District provide electronic (Word or Wordperfect) versions of (1) its second amended complaint now on file with the Court and (2) its most recent proposed amended complaint so that defendants can prepare their own redline. To allow defendants to respond without delay to your letter to the Court, we ask that the District provide this material to us as quickly as possible.

Further, I note that your letter to Judge Scheindlin refers to the additional changes as "descriptive language that more precisely reflects the nature of the District's injury." Because the Court has directed that defendants' statute of limitation motion be refiled without any change, addition or subtraction from the papers previously filed, and because the District has stipulated that defendants' refiled motion will have the same force and effect as prior to the withdrawal, please confirm whether these additional amendments are intended to result in any change in the substance of the District's prior complaint and, in particular, whether the District's prior statements and representations in the prior briefing about the nature of its claims remain valid and applicable to the proposed third amended complaint. Again, to allow defendants to respond without delay to your letter, please let us know the District's answer to this question when you provide the material requested above.

Thanks very much for your cooperation.

Regards,

Matthew Heartney

-----------------------------------------------------------------------
This communication may contain information that is legally privileged,
confidential or exempt from disclosure.  If you are not the intended
recipient, please note that any dissemination, distribution, or
copying
of this communication is strictly prohibited.  Anyone who receives
this
message in error should notify the sender immediately by telephone or
by return e-mail and delete it from his or her computer.
-----------------------------------------------------------------------

Matthew Heartney                    Matthew_Heartney@aporter.com
Arnold & Porter LLP                 Telephone:  213-243-4150
777 S. Figueroa St., 44th Floor     Fax:        213-243-4199
Los Angeles, CA  90017-5844

For more information about Arnold & Porter LLP, click here:
        http://www.arnoldporter.com

# Exhibit C

# MILLER, AXLINE & SAWYER
A Professional Corporation

DUANE C. MILLER
MICHAEL AXLINE
A. CURTIS SAWYER, JR.

TRACEY L. O'REILLY
TAMARIN E. AUSTIN
EVAN EICKMEYER
DANIEL BOONE

December 16, 2005

## BY ELECTRONIC MAIL and HAND DELIVERY

The Honorable Shira A. Scheindlin
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1620
New York, NY 10007-1312

> Re:  In re MTBE Litigation, MDL 1358 (Scheindlin, J.)
> *Orange County Water District's Response to Defendants' CMO # 15
> Submission*

Judge Scheindlin,

The dispositive motion schedule established by the Court in CMO # 15 is imminently reasonable. Defendants have known since the beginning of this litigation precisely what they will say in the motions, as demonstrated in the "summary of motions" submitted in response to CMO # 15. Dispositive motions by their nature involve primarily legal issues, and defendants' "summary" confirms that this is true (with one exception) for the motions defendants intend to file against the Orange County Water District (the District).

For more than a year, defendants have delayed filing these motions by claiming that they need to conduct additional discovery. During this time the District has produced more than one hundred and fifty thousand pages of documents in response to defendants' discovery requests. Defendants' claim that they need still more time to conduct discovery is almost infinitely flexible. At some point the defendants have to present their arguments. Defendants have had more than a year. As the Court recognized in CMO # 15, that time has arrived.

The exception to this is the defendants' "threatened well" motion. This motion is actually not a dispositive motion at all, but rather an attempt to limit the District's damages claim. Damages discovery has not yet occurred. Defendants have only recently agreed to provide the information that Special Master Warner ordered them to produce in PTO # 9 so that the District

1

can conduct an assessment of the threat posed to wells by MTBE releases from gas stations within the District. Accordingly, the District joins in defendants' suggestion that it would be premature to schedule this motion at this time.

Before responding to the specifics of defendants' objections to the Court's schedule, the District notes that the defendants "summary of motions" improperly equates the District's claims in this case with the much more attenuated and abstract class-action claims addressed by the Court in *In Re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 175 F.Supp.2d 593 (S.D. N.Y. 2001) (hereinafter *In Re MTBE I*).

As this Court noted in its June 22, 2005, Opinion and Order denying defendants' 12(b)(6) motion in the current case:

> The Water Agency Plaintiffs have standing to sue in their own right because they allege injury-in-fact that a favorable judgement would be likely to redress. Plaintiffs allege that defendants' conduct in manufacturing and distributing MTBE-containing gasoline without warning of its adverse environmental and health effects caused the contamination of the underground water supply in their respective service areas. This alleged behavior caused a concrete and particularized injury to plaintiffs because they are statutorily mandate to assure that the lands within the districts have suitable water supplies. Any conduct that interferes with plaintiffs' ability to do so, or causes plaintiffs to expend resources to investigate and /or remediate contamination, results in cognizable harm. Furthermore, a favorable judgement would be likely to redress plaintiffs' injury by enjoining defendants from causing more water contamination and/or ordering them to pay the costs of remediation.") of and right to prosecute public nuisance claims.

Opinion at 11-12 (emphasis added).[1] In fact, as the Court recognized later in the same opinion, the District's statutory powers include the power to prosecute "public nuisance" actions. See Opinion at 15-19.

Defendants' stubborn and narrow focus on "wells" ignores the nature of the District's claims and statutory powers. The District reviewed its statutory authority at some length in

---

[1] Although this section of the opinion addressed an argument directed only at water agency plaintiffs other than the District, it applies equally to the District.

opposing defendants' Rule 12(b)(6) "representational" standing motion, and respectfully refers the Court to that opposition for a more complete exposition of the District's claims and powers. We emphasize here, however, that the District does not itself operate domestic wells. Rather, the District is charged with protecting all groundwater within the District's territory. The District's powers include the power (and obligation) to: "assume the costs and expenses of any and all actions . . . to prevent interference with water . . . or diminution of the quantity or pollution or contamination of the water supply of the district . . . ." Water Code, Appendix 40-2(9).

One of the ways in which the District may act to protect groundwater (in addition to other remediation methods) is by installing treatment systems on existing wells owned by water users within the District that have become contaminated with MTBE. The Act itself specifically envisions use by the District of existing water user wells to remove and remediate pollution in groundwater. Appendix 40-2(6)(l) provides that the District may: "Fix the terms and conditions of any contract under which the owner or operator of a water-producing facility within the district may agree to increase the production of groundwater . . . for the purpose of removing contaminants or pollutants from the groundwater basin."

The District's powers to remediate contamination, and to do so by itself or in cooperation with others, is set forth in some detail in Water Code Appendix 40-8. The Orange County Water District Act also imposes liability for the costs of remediation on any "person causing or threatening to cause . . . contamination or pollution . . . ." Water Code, Appendix 40-8(c). In any action by the District to recover investigation and remediation costs, the Act creates a presumption that the costs were both "necessary" and "reasonable." *Id.*

With this background, the District addresses defendants' "summary of motions."

## II.    **Contamination Below State MCL Motion**

Defendants do not claim that they need additional discovery in order to bring this motion. Rather, they state that they "cannot determine whether a separate motion addressing claims for impacts to wells at levels below the state MCL will be pursued or not" because "[t]he District has not . . . stated whether it is claiming damages for these alleged MTBE levels [below MCL] in the wells, or what injuries might result from such MTBE levels."

The District's claims are not ambiguous. The argument that the District cannot claim damages when wells within the District's service area are contaminated at levels below the MCL is a purely legal argument, and nothing prevents defendants from presenting the argument now in a dispositive motion, so that the Court can resolve the issue.

Hon. Shira A. Scheindlin
Page 4
December 16, 2005

## III. "Justiciability" Motions.

Based on defendants' "summary of motions," defendants apparently wish to re-hash in these motions the same arguments rejected by the Court when it denied defendants' Rule 12(b)(6) motions to dismiss. As described in defendants' summary, these motions are based upon the assertion that the District "has not identified any injury or damage to its own property" and therefore lacks "standing" or the ability to prosecute its claims.

The defendants were able to present these arguments to the Court in their Rule 12(b)(6) motions, and nothing prevents the defendants from presenting the arguments again on January 13, 2006. Defendants argue that they need discovery which "overlaps with some of the discovery needed for Defendants' primary jurisdiction motion," and the "[d]efendants are considering third party discovery relating to claims allegedly assigned to OCWD . . . ."

As the Court noted in its June 22, 2005, Opinion and Order, the District is asserting claims only on behalf of itself. One well owner has assigned its claim to the District, but when the District asserts assigned claims, it does so on its own behalf. Whether the District's claims are legally cognizable is strictly a matter of law, and there is no reason for defendants to delay further any motions arguing that the District's claims are not legally cognizable.

## IV. "Statute of Limitations" Motion.

No further discovery is necessary for defendants to file this motion. If defendants file the motion and lose, they will still have the opportunity to argue the statute of limitations at trial, after discovery, so there is no prejudice to defendants from filing this as a "dispositive" motion now. Additionally, this is not the first time that defendants' have argued that they need additional discovery in order to file this motion. Unfortunately for defendants, the argument gets weaker, not stronger, with repetition.

At the Conference on June 9, 2005, the Court directed plaintiffs in the focus cases to prepare a "first and last detect" chart that would tell defendants the first and last times that MTBE was detected in wells so that defendants could tee up a statute of limitations motion. See Transcript of June 9, 2005, status conference, at 28 - 29 (" THE COURT: Frankly, [the chart] moves us way further along on a statute of limitation motions. Sure, [defendants] want experts and sure [defendants] want test results but frankly that doesn't sound like it is terribly important for the statute of limitations motions. They just need dates and locations. Let's get this motion made and decided.").

4

When defendants protested that they needed additional discovery, the Court stated: " No, don't do that. Let's put interrogatories aside. This is a fairly straightforward motion. It has to do with the dates and the location. You will have dates, locations in my simple list. Now, you want other things for other reasons, but for the simple purpose of a statute of limitations motions, why can't you build a briefing schedule that starts with next Thursday when you will have this list. It is statute of limitations. That is it."

When defendants continued protesting that they wanted to take depositions, that Court noted: "[Plaintiffs have another theory, too. They are saying it a continu[ing] tort and the last hit is as important as the first. You need to respond to that argument. If they are right on that, not much more matters." After further protests, the Court predicted what has now come to pass in defendants' "summary of motions." "Listening to you, I could see this motion will not be made for another year or two or three. We cannot do it that way."

Plaintiffs provided defendants with the charts ordered by the Court within a week of the status conference. Defendants did not schedule depositions or "build a briefing schedule." They simply ignored the Court's directive. Defendants were fully capable of filing this motion within a week of receiving plaintiffs' charts, and there is simply no reason that this motion cannot be filed January 13, 2006, as directed by the Court.

## V.    "Threatened Well" Motion

Defendants have delayed filing their long-promised dispositive motion with respect to "threatened" wells for more than a year, arguing that the District must identify "threatened" wells before defendants can file their motions.[2] As plaintiffs have repeatedly noted, defendants used the term "threatened wells" as a stalking horse for conducting damages discovery, before defendants provide basic damages discovery themselves, and before the District's damages experts had an opportunity to prepare or submit reports. Defendants even refused to provide information that Special Master Warner, in PTO # 9, determined was needed by the District in

---

[2] As we explain below, the District uses the word "pretext" because the "standing" that defendants want to challenge when "threatened wells" are identified is determined based upon injury to the District, not injury to individual wells. Defendants have refused repeated requests from the District to describe with greater particularity why "threatened well" information is necessary to a "standing" motion.

order to comply with defendants' request to identify threatened wells.[3]

Defendants' "summary" confirms that the "threatened well" motion they intend to file has nothing to do with "justiciability" or "standing." Defendants' own summary now discusses "justiciability" motions as separate and distinct from their "threatened wells" motion. The District has never claimed that defendants do not have the right to test the District's damages. Rather, the District's consistent position has been that the District must be allowed to conduct discovery relevant to damages, and be allowed the time to develop expert reports, before motions challenging the District's damages may be brought.

After more than a year of delay, the defendants have finally agreed to produce the information that PTO # 9 directed them to produce. Once the District has received that information and had an opportunity to analyze the information, a timeline for addressing the "threatened well" should be established. In short, the District agrees with defendants that it is premature to establish a briefing schedule for this issue.

Finally, the District emphasizes that the "threatened well" issue, in addition to being used as a stalking horse by defendants, is a red herring. As explained above, the District's statutory charge is to protect the groundwater within its service area, and to address and remediate contamination that threatens that groundwater. Although threats to wells evidence the District's damages, as the Court's opinion of June 9, 2005, recognizes, the District is not seeking to assert claims on behalf of well owners. One well owner within the District has assigned a well claim to the District for a well that has been contaminated above the MCL, but the bulk of the District's claims are as described in the Court's June 22, 2005, Opinion and Order denying defendants' 12(b)(6) motion, as set forth above.

## Conclusion

For the above reasons, the District respectfully requests that the Court reject (with one exception) the defendants' suggestion that the briefing schedule established in CMO # 15 be

---

[3] Defendants' mantra that they provided site remediation files on New Year's eve in 2004 completely ignores the fact that Special Master Warner subsequently found, in PTO # 9, that these site remediation files did not provide all of the information necessary to identify threatened wells, and ordered defendants to produce additional information necessary to identifying "threatened" wells.

Hon. Shira A. Scheindlin
Page 7
December 16, 2005

---

altered. The exception is the defendants' anticipated "threatened well" motion, which the District agrees should not be scheduled at this time.

Respectfully submitted,

Michael Axline
Counsel for Orange County Water District

cc:    Bethany Davis-Noll (via e-mail)
       All counsel (via e-mail and LNFS)

7