USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/7/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
:
IN RE: METHYL TERTIARY BUTYL :
ETHER ("MTBE") PRODUCTS : **OPINION AND ORDER**
LIABILITY LITIGATION :
------------------------------------------------------- : Master File No. 1:00-1898
: MDL 1358 (SAS)
This document relates to: : M21-88
:
*County of Suffolk, et al. v. Amerada Hess* :
*Corp. et al.*, 04 Civ. 5424 :
:
------------------------------------------------------- X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

**I. INTRODUCTION**

      Groundwater is the only significant source of safe drinking water in Suffolk County, the easternmost county of Long Island, New York.[1] The water comes from a complex system of underground aquifers made of porous sand and gravel formations.[2] For thousands of years, these aquifers have collected water from rain, melted snow, and melted ice from glaciers. Today, the water is drawn from the aquifers by the Suffolk County Water Authority ("SCWA"), which owns

---

      [1]     *See* 43 Fed. Reg. 26611 (June 21, 1978) (designating the aquifer system underlying Nassau and Suffolk Counties, Long Island, New York as "the principal source of drinking water for these counties").

      [2]     *See* Suffolk County Water Authority, *Education Center: Frequently Asked Questions*, http://www.scwa.com/education/faq.cfm.

-1-

In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation    Doc. 1813

almost five hundred groundwater wells across Suffolk County and provides water to over one million people.

Over one hundred and fifty of the wells have been contaminated with methyl tertiary butyl ether ("MTBE"), a chemical compound that oil companies began to add to gasoline in 1979.[3] The wells became contaminated after gasoline was spilled, leaked or otherwise released into the environment. For example, various studies have shown that leaking underground storage tanks are a main source of MTBE groundwater contamination.[4] Once a tank leaks gasoline with MTBE into the ground, the chemical migrates because MTBE does not cling to soil (unlike other gasoline components) and it is chemically attracted to water.

---

[3] *See* Sixth Amended Complaint, *County of Suffolk, et al. v. Amerada Hess Corp. et al.*, 04 Civ. 5424 ("Compl.") ¶ 70 (alleging that 152 of 478 active wells have been contaminated by MTBE).

[4] *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323, 330 n.5 (S.D.N.Y. 2002) ("A government study conducted over an eight-year period from 1993-2000 concluded that releases from underground gasoline storage systems ['USTs'] are the main source of MTBE groundwater contamination."). "In addition to USTs, there are many other potential sources of MTBE contamination, such as discharge of unburned fuel from water craft (especially 2-stroke engines); gasoline spills from automobile and tanker truck accidents; gasoline spills and drips when refueling automobiles, lawnmowers, tractors and other machines; plus leaks from pipelines and aboveground storage tanks." U.S. Environmental Protection Agency, *MTBE (methyl tertiary-butyl ether) and Underground Storage Tanks*, http://www.epa.gov/OUST/mtbe/index.htm.

Thus, when MTBE comes in contact with rain or other water moving through the soil, it dissolves and migrates away from the release site. "The region of contamination created by such a water flow is called a 'plume.'"[5]

In 2002, SCWA and the County of Suffolk sued various oil companies for their use and handling of MTBE.[6] Plaintiffs have asserted the following claims against the defendants: (1) violation of section 8(e) of the Toxic Substances Control Act, 15 U.S.C. § 2607(e); (2) public nuisance; (3) strict liability for design defect; (4) strict liability for failure to warn; (5) negligence; (6) private nuisance; (7) violation of New York's General Business Law; (8) violation of New York's Navigation Law; and (9) trespass.[7]

On June 15, 2007, I issued an opinion setting a bellwether trial of ten wells.[8] Defendants now move for summary judgment on the property tort claims (*i.e.*, the claims of public nuisance, design defect, failure to warn, negligence,

---

[5] *In re MTBE*, No. 04 Civ. 4968, 2007 WL 700819, at *3 n.30 (S.D.N.Y. Mar. 7, 2007).

[6] *See id.* at *20 (listing the dates on which plaintiffs sued various defendants in this action).

[7] *See* Compl. ¶ 4.

[8] *See In re MTBE*, No. 00 Civ. 1898, 2007 WL 1791258, at *1 (S.D.N.Y. June 15, 2007). Since then, the number of focus wells that the jury will consider has changed to eighteen wells.

private nuisance, and trespass) arising from the contamination of two of these wells referred to as "Samuel Street No. 4" and "Wheeler Road No. 1." Defendants argue that these claims are barred by New York's statute of limitations. For the reasons below, this motion is denied.

## II. LEGAL STANDARD ON SUMMARY JUDGMENT

Under Rule 56(b) of the Federal Rules of Civil Procedure, "[a] party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim."[9] Rule 56(c) states: "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[10]

The key issue on a summary judgment motion is whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[11] As the Supreme Court has explained, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and

---

[9] Fed. R. Civ. P. 56(b).

[10] Fed. R. Civ. P. 56(c).

[11] *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[12] For example, plaintiffs may fail to present evidence that would allow a reasonable jury to find that they had filed a timely complaint. Summary judgment in such a situation must be entered because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[13]

## III. PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

### A. New York's Statute of Limitations

Under New York law, when property is damaged from the latent effects of exposure to a substance, plaintiffs must file their tort claims to recover damages within three years from the start of either (1) the date that they discovered the injury to the property or (2) the date when the injury should have been discovered by the plaintiff through the exercise of reasonable diligence, whichever is earlier.[14] As I have previously explained, "courts routinely apply this

---

[12] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[13] *Id.* at 322-23.

[14] *See* N.Y. C.P.L.R. 214 (setting a three year statute of limitation for actions to recover damages for injury to property); *id.* 214-c (setting two triggers

rule to cases alleging groundwater contamination" and this rule applies to this case given the allegations about how MTBE harmed plaintiffs' water.[15]

Thus, in determining whether a statute of limitations bars a claim arising from wells contaminated by MTBE, two questions must be answered. *First*, when was the property injured? *Second*, when did the plaintiffs discover that injury or when should they have discovered the injury? With respect to the first question, I have also held that plaintiffs' groundwater is not injured, or otherwise harmed, merely because it has been contaminated with a small amount of MTBE:

> The fact is that even clean, clear, good-tasting water contains dozens of contaminants at low levels. On its journey through the water cycle as rain, surface water, and groundwater in an aquifer, water collects many contaminants of various types: bacteria, parasites, heavy metals, organic compounds (including MTBE), inorganic compounds, and even radioactive substances. This water is eventually pumped from a well to a treatment facility, where many of these contaminants are removed or reduced in concentration before the water is pumped to a consumer's home.[16]

The level at which MTBE contamination has become so significant as to harm

---

for determining the date of accrual for damages caused by the latent effects of exposure to any substance upon or within the property (*i.e.*, actual or constructive knowledge of the injury)).

[15]  *In re MTBE*, 2007 WL 1601491, at *5.

[16]  *Id.* at *6.

plaintiffs' wells is an issue of fact for the jury to resolve.[17]

Of course, "there does come a point where the concentration levels are so significant as to warrant discovery of a cognizable injury as a matter of law."[18] New York has set a legal limit on the amount of a hazardous substance that is allowed in drinking water with its Maximum Contaminant Level ("MCL").[19] Once a particular well contains more MTBE than allowed by state law, a jury would be required to find that plaintiffs' well was injured as a matter of law. Once plaintiffs know, or should have known, that the MTBE in a certain well has exceeded this amount, the statute of limitations begins to run and they have three years to file an action seeking to recover damages to their property.

## B.     Samuel Street No. 4

Defendants' argument with respect to Samuel Street No. 4 is

---

[17]     The point at which plaintiffs knew, or should have known, that a particular level of MTBE was harmful is also a question for the jury to answer. *See id.* at *12 n.99 ("Take, for example, a detection at 0.6 ppb in 1995. No evidence shows conclusively that plaintiffs knew before the limitations date that concentrations as low as 0.6 ppb would be harmful. (Indeed, a jury may find that such low concentrations are not/were not harmful.)").

[18]     *Id.* at *7.

[19]     *See* 10 N.Y. Comp. Codes R. & Regs. § 5-1.1(a1) (2006) ("MCL means the maximum permissible level of a contaminant in water which is delivered to any user of a public water system.").

straightforward.[20] Prior to December 24, 2003, New York had set a MCL for unspecified organic contaminants, which included MTBE, of 50 ppb.[21] In the summer of 1989, MTBE was detected at 88 ppb at the well.[22] Thus, defendants argue that the well was injured as a matter of law in 1989 and the three year statute of limitations now bars plaintiffs' property tort claims.[23]

Plaintiffs agree that they cannot bring claims related to a release of gasoline that caused significant MTBE contamination in 1989 but argue that a second release of gasoline occurred around 2000.[24] Each distinct release of gasoline (*e.g.*, from two different storage tanks) gives rise to separate claims.[25]

---

[20] *See* Defendants' Memorandum of Law in Support of Motion for Summary Judgment on Samuel Street No. 4 and Wheeler Road No. 1 Based on the Statute of Limitations ("Def. Mem.") at 9-14.

[21] *See In re MTBE*, 458 F. Supp. 2d 149, 153 n.22 (S.D.N.Y. 2006). On December 24, 2003, the New York State Department of Health revised the MCL for MTBE to 10 ppb. *See id.* (citing 10 N.Y. Comp. Codes R. & Regs. § 5-1.52, Table 3).

[22] *See* Def. Mem. at 3, 10.

[23] *See id.* at 10.

[24] Plaintiffs' Memorandum of Law in Opposition to Defendants' Memorandum of Law in Support of Motion for Summary Judgment on Samuel Street No. 4 and Wheeler Road No. 1 Based on the Statute of Limitations ("Pl. Mem.") at 4.

[25] *See In re MTBE*, 2007 WL 1601491, at *5 ("each injury that plaintiffs can prove is separate and distinct from a prior contamination will be treated as a

Plaintiffs are not barred from filing claims related to a second release of gasoline because only the claims arising from the first release are barred by the statute of limitations.

Based on plaintiffs' evidence, a reasonable jury could find that a second release of gasoline injured Samuel Street No. 4 around 2000. Plaintiffs submit that all possible sources of the spill (*e.g.*, gas stations with underground storage tanks) are 690 to 800 feet from the well, and it took approximately two years for the MTBE to travel from these possible sources to the well.[26] MTBE was first detected at Samuel Street No. 4 in 1989.[27] The concentrations peaked at 101 ppb in 1989 and then fluctuated between twenty ppb and five ppb until 1996.[28] The concentrations fell below five ppb from 1997 to 1998.[29] Finally, the

---

separate claim").

[26] *See* Pl. Mem. at 3 (citing Phase I Report of Charles B. Sosik at 17 (June 22, 2007) ("Sosik I"), Ex. B to Declaration of Steven J. German in Support of Plaintiffs' Opposition to Defendants' Memorandum of Law in Support of Motion for Summary Judgment on Samuel Street No. 4 and Wheeler Road No. 1 Based on the Statute of Limitations ("German Decl.")).

[27] *See* Sosik I at 17.

[28] *See id.*

[29] *See id.*

concentrations were below reporting limits from 1999 though mid-2000.[30]

All of this evidence is consistent with a single release of gasoline containing MTBE that occurred prior to 1989. After the release, the plume of contamination traveled towards the well and was first detected in 1989. The levels of MTBE then began to decrease as the remainder of the plume continued to make its way towards the well.

In 2000, concentrations of MTBE began to increase again and, by 2002, they reached a peak concentration of 114 ppb.[31] After this, the levels of MTBE again began to decline.[32] In fact, when the MTBE concentrations detected at Samuel Street No. 4 from 1989 to 2007 are plotted on a graph, the data has two clear peaks – one in 1989 and one in 2002 – followed by similar declines.[33] Such evidence is sufficient to support plaintiffs' theory that there was a second release of gasoline in or after 2000.

Defendants contend that this second increase in MTBE contamination is an outgrowth or complication of the first release of gasoline and, thus, should be

---

[30] *See id.*

[31] *See id.*

[32] *See id.*

[33] *See* SCWA's Data of MTBE Concentrations in Samuel St. Well No. 4 and a Graphic Depiction thereof, Ex. C to German Decl.

barred.³⁴ According to defendants, "MTBE released into the subsurface can fluctuate and result in higher MTBE detections in the future even absent a new release of gasoline."³⁵ For example, "older releases of MTBE can continue to impact groundwater even without a fresh release of gasoline in response to either a rise in the water table or introduction of transport water through the unsaturated zone."³⁶ Defendants further support their conclusion by arguing that "MTBE was present in the Samuel Street wellfield consistently since 1989 and in Well No. 3 throughout 1999 and 2000, when the levels in Well No. 4 temporarily subsided."³⁷

As I have previously explained, determining how a particular well became contaminated may be complicated:

> The process by which MTBE moves from multiple release points, through soil and groundwater and a network of aquifers, and into plaintiffs' wells is complex. Further, these actions are somewhat unique among groundwater actions in that they present hundreds

---

³⁴ *See* Def. Mem. at 4-5. *See also In re MTBE*, 2007 WL 1601491, at *4 (holding that when the "injuries are merely an outgrowth, maturation or complication of the prior contamination," then the injuries constitute a single claim) (quoting *Bimbo v. Chromalloy Am. Corp.*, 640 N.Y.S.2d 623, 623 (3d Dep't 1996)).

³⁵ Def. Mem. at 4.

³⁶ Def. Mem. at 5 (quotation marks and citation omitted).

³⁷ Defendants' Reply in Support of Their Motion for Summary Judgment on Samuel Street No. 4 and Wheeler Road No. 1 Based on Statute of Limitations ("Def. Reply") at 4.

of wells, some of which are interconnected, and thousands of MTBE detections at varying concentrations.[38]

Thus, defendants' argument may have validity and they may present their theory to the jury. Nonetheless, "the inquiry here is limited to whether a reasonable finder of fact could reach any *other* conclusion" than the one offered by defendants.[39] Because a reasonable jury could find that a second release of gasoline occurred in or around 2000, defendants' motion for summary judgment on the claims arising from Samuel Street No. 4 must be denied.[40]

## C. Wheeler Road No. 1

Defendants argue that New York's statute of limitations bars the

---

[38] 2007 WL 1601491, at *4.

[39] *In re MTBE*, 2007 WL 1601491, at *7 (emphasis in original) (citing Arthur R. Miller, *The Pretrial Rush to Judgment: Are the "Litigation Explosion," "Liability Crisis," and Efficiency Clichés Eroding Our Day in Court and Jury Trial Commitments?*, 78 N.Y.U. L. Rev. 982, 1019 (2003)).

[40] *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether [s]he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor."). *Accord In re MTBE*, 2007 WL 1601491, at *7 ("Defendants may still present their case to a jury and they may well prevail in light of the evidence presented. Nonetheless, the question here is not whether the defendants will *likely* prevail, but whether they *must* prevail as a matter of law.") (emphasis in original).

claims arising from the contamination of Wheeler Road No. 1 for four reasons.[41]

*First*, in June 1992, SCWA had a Granular Activated Carbon system ("GAC system") installed at the well in order to filter various contaminants in the water including MTBE. *Second*, in July 1989, SCWA issued a press release that stated *inter alia*:

> The Suffolk County Water Authority Lab in Hauppauge, which is state-certified and the largest groundwater testing facility in the nation, regularly tests samples from all SCWA wellsites for 265 contaminants. In recent years, as traces of MTBE have been discovered more frequently in raw water samples, some wells have been put "on watch" for additional tests. SCWA Lab Director Karen Randazzo directs field operators to take samples more frequently at these locations.
>
> "In several cases, our instruments, which can detect traces of MTBE amounting to less than one ppb, have found levels of between one and four ppb," Randazzo said. "These levels are far below the current 50 ppb standard. Nevertheless, although removing MTBE involves considerable expense, we frequently treat the water at these locations with carbon filtration, which results in a finished product with no detectable MTBE, before delivering any of it to our customers."[42]

---

[41] Defendants also appear to argue that these same reasons bar claims arising from Samuel Street No. 4, although they clearly focus these arguments on Wheeler Road No. 1. *See* Def. Mem. at 14. For the sake of ease, I only refer to Wheeler Road No. 1 in my analysis.

[42] Suffolk County Water Authority Press Release, SCWA Supports Total Ban of MTBE (July 30, 1999), Ex. 9 to Declaration of James A. Pardo in Support of Defendants' Motion for Summary Judgment on Samuel Street No. 4 and Wheeler Road No. 1 Based on the Statute of Limitations ("Pardo Decl.").

-13-

*Third*, in March 2000, a lawyer from SCWA testified before Congress and provided an overview of the MTBE contamination in SCWA's wells and stated: "Another continuous detection in 1999 was a well at our Wheeler Road facility, located in the Hauppauge area, where readings of MTBE were between 5 and 10 parts per billion."[43] *Fourth*, by August 1999, SCWA had received nineteen taste and/or odor complaints from customers.

The main problem with the defendants' argument is that the jury has yet to decide when the wells were, in fact, injured.[44] As explained above, and in a previous opinion, the level of MTBE contamination at a well that constitutes an injury is an issue for the jury to determine.[45] For example, the jury might find that the well was not injured until it had a level of MTBE contamination of fifteen ppb given that, in other motions, the defendants have argued that this is the "threshold"

---

[43] Suffolk County Water Authority, Testimony to the House of Representatives Subcommittee on Health and Environment at 4 (Mar. 2, 2000), Ex. 9 to Pardo Decl.

[44] The MTBE concentration at Wheeler Road No. 1 never exceeded the MCL prior to December 24, 2003 (*i.e.*, when the MCL for MTBE was changed from 50 ppb to 10 ppb). See SCWA's Data of MTBE Concentrations in Wheeler Road Well No. 1, Ex. K to German Decl.

[45] *See, e.g., In re MTBE*, 2007 WL 1601491, at *7-8.

level at which people may begin to detect MTBE in the water.[46]

Once the jury has determined when a well has been injured, then the next issue for the jury to decide will be when the plaintiffs knew that they had been injured and when should they have known about the injury. This is also "by definition a fact-intensive inquiry."[47] After these dates are determined, three years will be added to whichever date is earlier, and the statue of limitations will bar recovery for any claims filed after the selected date.[48]

"Defendants may still present their case to a jury and they may well prevail in light of the evidence presented."[49] Indeed, once the jury has heard the evidence and issued its findings, many of the calculations on which defendants'

---

[46] *See, e.g.*, Defendants' Notice of Joint Motion and Motion *In Limine* to Exclude the Opinion of Plaintiffs' Expert William S. Cain, Ph.D.

[47] *In re MTBE*, 2007 WL 1601491, at *8.

[48] Another problem with defendants' argument is that most of the evidence on which they rely is not specific to Wheeler Road No. 1, yet I have held that the claims must be considered on a site-by-site basis because each separate release of gasoline that injures a well gives rise to separate claims. *See In re MTBE*, 2007 WL 1601491, at *4-5. For example, the press release makes no reference to any particular well, but merely shows a general concern about MTBE contamination. The lawyer's congressional testimony refers to "a well" in the same wellfield but not to Wheeler Road No. 1. Likewise, the nineteen complaints about the taste and odor of the water are not specific to any well. While all of this evidence may be presented to the jury, it is insufficient to find that defendants must prevail as a matter of law.

[49] *Id.* at *7.

legal theories rest can be made. At this point, however, defendants' motion for summary judgment must be denied. [50]

## V. CONCLUSION

For the reasons above, defendants' motion for the summary judgment for claims arising from the MTBE contamination of two wells, Samuel Street No. 4 and Wheeler Road No. 1, is denied. The Clerk of the Court is directed to close this motion (docket # 1665).

SO ORDERED:

Dated: New York, New York
May 6, 2008

Shira A. Scheindlin
U.S.D.J.

---

[50] Defendants also argue briefly that "the limitation issues on [SWCA's] Navigation Law claims rise or fall with its tort claims for Samuel Street No. 4 and Wheeler Road No. 1." Def. Reply at 10 (citing *In re MTBE*, 2007 WL 1601491, at *16-17). Thus, summary judgment on the plaintiffs' navigation law claims is also denied.

## -Appearances-

**Liaison Counsel for Plaintiffs:**

Robin Greenwald, Esq.
Robert Gordon, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, New York 10038
Tel: (212) 558-5500
Fax: (212) 344-5461

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
McDermott Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, New York 10020
Tel: (212) 547-5583
Fax: (212) 547-5444