UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
                                                        :
IN RE: METHYL TERTIARY BUTYL                            :
ETHER ("MTBE") PRODUCTS                                 :   **OPINION AND ORDER**
LIABILITY LITIGATION                                    :
                                                        :   Master File No. 1:00-1898
-------------------------------------------------------  :  MDL 1358 (SAS)
                                                        :   M21-88
This document relates to:                               :
                                                        :
*City of Riverside v. Atlantic Richfield Co., et*       :
*al.*, 04 Civ. 4969                                     :
                                                        :
*Quincy Community Services District v.*                 :
*Atlantic Richfield Co., et al.*, 04 Civ. 4970          :
                                                        :
*People of the State of California, et al. v.*          :
*Atlantic Richfield Co., et al.*, 04 Civ. 4972          :
                                                        :
*California-American Water Co. v. Atlantic*             :
*Richfield Co., et al.*, 04 Civ. 4974                   :
                                                        :
*Martin Silver, et al. v. Alon USA Energy,*             :
*Inc., et al.*, 04 Civ. 4975                            :
                                                        :
*Village of Island Lake v. Ashland Inc., et al.*,       :
04 Civ. 2053                                            :
                                                        :
------------------------------------------------------- X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

**I.      INTRODUCTION**

       A majority of the defendants in fifty-nine actions involving contamination of well water with the gasoline additive methyl tertiary butyl ether

1

In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation

Doc. 1883

("MTBE"), which were consolidated before this Court as part of a multi-district litigation, have entered into an aggregate settlement agreement. Settling defendants agreed to pay $423 million toward the cost of cleaning up existing MTBE contamination, and to cover seventy percent of the cost of treating any contamination that arises in the future.[1] The six cases in the caption were transferred from California and Illinois and are part of the settlement.

Under California and Illinois law, before a settling defendant can be insulated against claims for contribution by non-settling defendants, the court must determine that a settlement was made in good faith. Accordingly, settling defendants filed a motion for determination of a good faith settlement on May 8, 2008. Non-settling defendant ExxonMobil claims it needs more information to evaluate whether to contest the motion, and has brought the instant motion for discovery of: (1) the monetary value of the agreement to pay future treatment costs; (2) the allocation of the aggregate settlement amount among settling defendants; and (3) the allocation of the aggregate settlement amount among all plaintiffs other than those in California and Illinois. For the reasons that follow,

---

[1] This settlement does not include any funds from Lyondell Chemical Company or Equistar Chemicals LP, which reached a settlement with plaintiffs after the instant settlement was reached and submitted to the Court.

2

the motion is denied, except as set forth below.

## II.   APPLICABLE LAW

Section 877.6 of the California Code of Civil Procedure provides:

> (a) Any party to an action wherein it is alleged that two or more parties are joint tortfeasors shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors . . . (c) A determination by the court that the settlement was made in good faith shall bar any joint tortfeasor from any further claims against the settling tortfeasor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault.[2]

In the court proceeding, "the party asserting the lack of good faith shall have the burden of proof on that issue."[3]

When determining whether a settlement is made in good faith, California courts consider factors enunciated in *Tech-Bilt Inc. v. Woodward-Clyde*, which include: "a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability," the amount of the settlement payment, the allocation of the settlement among plaintiffs, "and a recognition that the settlor should pay less in settlement than [it] would if [it] were found liable after a trial."[4]

---

[2]   Cal. C.C.P. § 877.6.

[3]   *Id.*

[4]   *Tech-Bilt, Inc. v. Woodward-Clyde*, 38 Cal.3d 488, 499 (1985).

3

The key determination is whether the settlement is "grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be," or in other words, whether "the settlement is so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable objectives of the statute."[5]

Similarly, under Illinois' Joint Tortfeasor Contribution Act, a tortfeasor who settles with a claimant in good faith is "discharged from all liability for any contribution to any other tortfeasor."[6] Illinois courts have articulated four factors relevant to the determination of good faith:

> (1) whether the amount paid was within a reasonable range of the settlor's fair share; (2) whether there was a close personal relationship between the settling parties; (3) whether the plaintiff sued the settlor; and (4) whether a calculated effort was made to conceal information about the circumstances surrounding the settlement agreement.[7]

A settlement will not be found to be in good faith if there is evidence of collusion or fraud, or if it conflicts with the policies of the statute to encourage settlement

---

[5] *Id.* at 499-500.

[6] 740 Ill. Comp. Stat. 100/2(d).

[7] *Wreglesworth v. Arctco, Inc.*, 317 Ill. App. 3d 628, 634 (1st Dist. 2000).

4

and to ensure the equitable apportionment of damages among tortfeasors.[8]

California courts have recognized that "motions for further discovery" may be appropriate to ensure that the non-settling parties and the court can adequately evaluate the good faith of a settlement.[9] However, discovery is limited to information relevant to the *Tech-Bilt* factors that was "available at the time of settlement."[10] Discovery under Illinois law is also limited, and "[c]ourts have repeatedly and consistently held that a separate evidentiary hearing is not required and that a trial court need not . . . rule on the relative liabilities of the parties before making a good faith determination."[11]

## III. DISCUSSION

The settling parties submitted extensive information about the settlement, including the eight hundred page settlement agreement and numerous declarations from counsel. The submissions provide information pertaining to most of the *Tech-Bilt* factors: the actual settlement amount, its allocation among

---

[8] *See Johnson v. United Airlines*, 203 Ill.2d 121, 134 (2003).

[9] *City of Grand Terrace v. Superior Court*, 192 Cal. App. 3d 1251, 1265 (4th Dist. 1987).

[10] *Tech-Bilt*, 38 Cal.3d at 499.

[11] *Johnson*, 203 Ill. 2d at 139.

the plaintiffs in these six cases, a rough approximation of plaintiffs' total damages, an explanation of the settlement negotiation process, and discussion of the uncertainties of litigation and other factors making early settlement attractive. In addition to these disclosures, ExxonMobil requests discovery of three types of information it contends is necessary to evaluate good faith.

### A. Information Submitted by Settling Parties

#### 1. Rough Approximation of Total Recovery

Declarations from counsel explain that discovery in these cases has been very limited, and it is difficult to accurately project the damages plaintiffs could expect to recover at trial. Nevertheless, supplemental declarations from Sher and Summy provide a means to estimate damages in each of the cases on the basis of a study by the American Petroleum Institute ("API") projecting the costs of treating MTBE-contaminated wells. Settling parties applied a linear regression analysis to the API figures to calculate treatment costs at the flow rate of plaintiffs' wells, and came up with low, median, and high estimated costs of treating each of plaintiffs' currently contaminated wells.[12] The cost of treating all contaminated wells for each plaintiff is, according to the settling parties, a rough

---

[12] *See* Supplemental Declaration of Victor M. Sher ¶ 7.

approximation of the total recovery each plaintiff could expect at trial.

### 2. Amount of the Settlement Payment

The declarations of Summy and Sher set forth the amount of money the settlement allocates to the plaintiffs in each of the six above-captioned cases.[13] The allocations, which are based on the estimated cost of treating plaintiffs' contaminated wells, were made according to a formula disclosed in the Sher and Summy declarations.

Under the formula a "grade" was assigned to each currently contaminated well based on factors including "the level of detections in [the] wells, the operating capacity and historical use of the well(s), the length of time over which detections occurred, how recently the detections occurred, [and] the

---

[13] City of Riverside, which has four contaminated wells, will receive $1,014,097; Quincy Community Services District, which has one contaminated well, will receive $2,663,840; California-American Water Company, which has three contaminated wells, will receive $8,029,550; M&P Silver Family Partners, which has two contaminated wells, will receive $3,937,202; Riverview Water District, which has four contaminated wells, will receive $11,415,569; California Water System Company, which has twenty-seven contaminated wells, will receive $49,716,872; and Village of Island Lake (the sole Illinois plaintiff), which has three contaminated wells, will receive $3,834,158. The following plaintiffs have no wells that are currently or formerly contaminated, and will receive $264,853 each: Citrus Heights Water District, Del Paso Manor Water District, Fair Oaks Water District, Florin Resource Conservation District, and Rio Linda Elverta Community Water District. *See* Declaration of Victor M. Sher ¶¶ 15-16.

relationship of the detections to applicable regulatory standards."[14] These factors are all relevant to the projected cost of treatment. The declarations also state the amount of money allocated to each grade, and explain the assignment of grades to each contaminated well.

Because the settling parties have disclosed the amount of money allocated to each plaintiff as well as the estimated costs of treating each plaintiffs' contaminated wells, the court and the non-settling parties can evaluate the share of plaintiffs' estimated damages that the settling defendants will pay.[15] This information, along with the disclosure of the settlement agreement itself and the declarations of settling parties' counsel, is more than sufficient for the settling parties to make a prima facie showing of a good faith settlement.[16]

### B. Discovery Requested By ExxonMobil

#### 1. Value of the Future Treatment Protocol

---

[14] *Id.* ¶ 10.

[15] As discussed below in Section III.B.1, in addition to the set amounts of money allocated to treat plaintiffs' currently contaminated wells, settling defendants agreed to pay seventy percent of treatment costs for wells that become contaminated in the future.

[16] *See City of Grand Terrace*, 192 Cal. App. 3d at 1261 (settling parties need only show that there is a bona fide settlement to make prima facie showing of a good faith settlement).

8

In addition to $423 million to pay for treatment of wells currently contaminated with MTBE, the settling defendants agreed to pay seventy percent of treatment costs for wells that become contaminated in the future. The settling parties call this agreement the "future treatment protocol." No dollar value is assigned to the future treatment protocol because it is impossible to know how many wells will become contaminated. The monetary value of the agreement is important to non-settling defendants, however, because they can claim it as a set-off against any damages awarded at trial for future treatment.

Setting a present monetary value for future treatment is not necessary to determine whether the settlement agreement was made in good faith for two reasons. *First*, in contrast to cases cited by ExxonMobil where the value of the entire settlement was contingent on future events, this settlement includes a fixed sum allocated to each plaintiff in addition to any contingent consideration.[17] The monetary payments, together with the settling defendants' promise to pay seventy

---

[17] *See, e.g., Arbuthnot v. Relocation Realty Service Corp.*, 227 Cal. App. 3d 682 (Ct. App. 1991) (only consideration for settlement was assignment of rights); *see also Abbott Ford, Inc. v. Superior Court*, 43 Cal. 3d 858 (1987) (under sliding-scale agreement, settling defendant's payment was contingent on amount paid by other defendants after trial, but parties were required to assign value at settlement). Notably, none of the cases cited by any party involved a future payment obligation contingent on future events.

9

percent of treatment costs that arise in the future, are a sufficient basis for the Court to determine the settlement's good faith.

*Second*, even though the future amount to be paid is unknown, as noted the settling defendants are committed to paying seventy percent of future treatment costs. Therefore non-settling defendants know the key information for the good faith inquiry: the current value of the settlement of each case, and the proportion to be paid by the settling defendants of any future damages that may materialize.[18]

I recognize that many California courts, considering the value of assignments of contribution and indemnity rights in settlement, agree that "valuation . . . should normally take place at the settlement stage so that the good faith of the overall settlement may be fully evaluated."[19] However, "where valuation is unnecessary to assess good faith," certain courts have found that valuation can take place "once a finding of liability makes such a determination

---

[18] *See City of Grand Terrace*, 192 Cal. App. 3d at 1262 ("[s]ettlor's percentage of liability is the touchstone question to be considered by the trial court").

[19] *Erreca's v. Superior Court*, 19 Cal. App. 4th 1475, 1499 (Ct. App. 1993).

10

necessary."[20] Unlike an assignment of contribution and indemnity rights in settlement, the future treatment obligation may involve actual future payment by the settling defendants. Not only is valuation of the future treatment protocol unnecessary to assess good faith, it is impossible. The value of the protocol and the amount to be set off from an award of future damages cannot be determined unless and until such damages materialize.

### 2. Allocation Among Defendants

To determine whether the settlement amount is grossly disproportionate to the settling defendant's share of liability, the court and non-settling defendants must be able to estimate that share. ExxonMobil requests discovery of settling defendants' allocation of the settlement payment among themselves – which was made pursuant to a confidential formula[21] – in order to determine their estimated share of liability.

The problem with this request is that the allocation formula will not

---

[20] *Aero-Crete, Inc. v. Superior Court*, 21 Cal. App. 4th 203, 209 (Ct. App. 1993).

[21] *See* Declaration of Sheila L. Birnbaum in Support of Settling Defendants' Motion for Determination of a Good Faith Settlement ¶ 8. The formula is also unknown to settling plaintiffs, and is being held by Special Settlement Master David Geronemus, who will verify each defendant's compliance with the agreement. *See id.*

shed any light on settling defendants' share of liability in the six cases at issue, because it is "an aggregate allocation of the total amount paid to settle 59 cases" and is "not broken down by case."[22] If each defendant's payment were to be broken down by case, some defendants may have paid more than their share of liability in one case and less in another. However, "this theoretical variation is something that Settling Defendants worked out among themselves."[23] Therefore, the allocation of the settlement payment among defendants is not relevant to determining the settling defendants' individual or combined share of liability in each of the six cases at issue.

In addition, the confidentiality of the defendants' allocation is a key provision of the settlement, and one of the dual goals of the California and Illinois statutes is to promote settlement.[24] Where, as here, the written settlement agreement has been disclosed, confidential provisions should not have to be produced unless they are essential to determining the good faith of the settling

---

[22] Response of Settling Defendants to Memorandum of Non-Settling Defendants Seeking Discovery in Connection with the Motion for Determination of Good Faith Settlement at 6.

[23] *Id.*

[24] *See Tech-Bilt*, 38 Cal. 3d at 494-96; *Johnson*, 203 Ill.2d at 134.

12

parties.[25]

The absence of an estimate of settling defendants' share of liability in these cases, however, presents a problem for the Court. I recognize that (a) proportional liability was determined in the aggregate rather than on a case-by-case basis, (b) at the time of settlement, the means of allocating liability in these cases were highly contested, and (c) only limited discovery has been conducted in these cases. Further, as California courts have long recognized, "a 'good faith' settlement does not call for perfect or nearly perfect apportionment of liability."[26] However, there must be *some* way to measure whether the settlement amount is "a rough approximation of . . . the settlor's proportionate liability."[27]

Therefore, should Exxon-Mobil decide to contest the good faith of the settlement, the settling parties must produce some estimate, however broad or preliminary, of the range of proportional liability a jury might assign to the settling

---

[25] By contrast, in the one case cited by ExxonMobil in which settling parties were ordered to produce confidential settlement terms, the written settlement agreement had not previously been disclosed. *See Mediplex of California, Inc. v. Superior Court*, 34 Cal. App. 4th 748, 750 (Ct. App. 1995).

[26] *Abbott Ford*, 43 Cal. 3d at 874.

[27] *Tech-Bilt*, 38 Cal. 3d at 499.

13

defendants at trial.[28] The parties should support this estimate with a declaration explaining the basis for the estimate.

### 3. Allocation Among Plaintiffs Outside California and Illinois

ExxonMobil also seeks disclosure of the amounts allocated to all other plaintiffs in cases outside of California and Illinois, claiming that without this information "there is no way for the Court to ensure that the [non-settling defendants] will receive appropriate set-offs."[29] It does not explain how the amounts to be received by plaintiffs in *other cases* will help determine whether the settlement amounts in *these cases* are in the "ballpark." The settling parties have disclosed the overall settlement amount, the amounts the plaintiffs in the six cases at issue here will receive, and the formula used to allocate money to each settling plaintiff. It is not clear to the Court what purpose would be served by disclosure of allocations to plaintiffs in cases where no good faith determination is required.

## IV. CONCLUSION

For the reasons described above, ExxonMobil's motion is denied,

---

[28] Solely as an illustration, the settling parties could assert that settling defendants would likely be found to be collectively liable for seventy percent (or ten percent) of the damages.

[29] Reply Memorandum of Law in Support of the Non-Settling Defendants' Motion for Discovery in Aid of Good Faith Settlement Evaluation at 5.

14

except as noted above.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         June 11, 2008

## -Appearances-

**Liaison Counsel for Plaintiffs:**

Robin Greenwald, Esq.
Robert Gordon, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, New York 10038
Tel: (212) 558-5500
Fax: (212) 344-5461

**Counsel for Plaintiffs City of Riverside, Quincy Community Services District, California-American Water Company, Citrus Heights Water District, Del Paso Manor Water District, Fair Oaks Water District, Florin Resource Conservation District, Rio Linda Elverta Community Water District, M&P Silver Family Partners II, Lakeside Water District, and California System Water Company:**

Victor Sher, Esq.
Sher Leff LLP
450 Mission Street, Suite 400
San Francisco, California 94105
Tel: (415) 348-8300
Fax: (415) 348-8333

**Counsel for Plaintiff Village of Island Lake:**

Scott Summy, Esq.
Baron & Budd, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219
Tel: (214) 521-3605
Fax: (214) 520-1181

**Liaison Counsel for Defendants and Counsel for ExxonMobil:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
McDermott Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, New York 10020
Tel: (212) 547-5583
Fax: (212) 547-5444

**Liaison Counsel for Settling Defendants and Counsel for Defendants Chevron U.S.A. Inc., Motiva Enterprises LLC, Shell Oil Company, and TMR Company:**

Richard E. Wallace, Esq.
Wallace King Domike & Reiskin, PLLC
2900 K Street, N.W., Harbourside
Washington, D.C. 20007
Tel: (202) 204-1000
Fax: (202) 204-1001

**Counsel for Defendant ConocoPhillips and on Behalf of Settling Defendants:**

John J. Lyons, Esq.
Latham & Watkins LLP
633 West Fifth Street, Suite 4000
Los Angeles, California 90071
Tel: (213) 485-1234
Fax: (213) 891-8763

**Counsel for Defendants BP Products North America Inc., Atlantic Richfield Company, BP West Coast Products LLC and BP Amoco Chemical Company and on Behalf of Settling Defendants:**

J. Andrew Langan, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601
Tel: (312) 861-2000
Fax: (312) 861-2200