UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
                                                        :
IN RE: METHYL TERTIARY BUTYL                            :
ETHER ("MTBE") PRODUCTS                                 :   OPINION AND ORDER
LIABILITY LITIGATION                                    :
                                                        :   Master File No. 1:00-1898
-------------------------------------------------------- :   MDL 1358 (SAS)
                                                        :   M21-88
This document relates to:                               :
                                                        :
*County of Suffolk v. Amerada Hess, et al.*,            :
04 Civ. 5424                                            :
                                                        :
------------------------------------------------------- X



**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I. INTRODUCTION

The County of Suffolk and the Suffolk County Water Authority ("SCWA") have sued numerous gasoline refiners, distributors, retailers, and manufacturers of the gasoline additive methyl tertiary butyl ether ("MTBE"), seeking recovery for contamination of their well water with MTBE. Plaintiffs allege claims in product liability, tort, the Toxic Substances Control Act ("TSCA") and the New York Navigation Law. Over one hundred lawsuits from around the country arising out of MTBE contamination in public and private wells have been consolidated before this Court in a multi-district litigation ("MDL"). This action was designated as a focus case and, after extensive discovery and motion practice,

In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation                                                                                        Doc. 1893

the trial date is set for September 15, 2008.

On May 13, 2008, this Court issued an Opinion and Order denying summary judgment for the defendants. Defendant ExxonMobil now moves for certification of the Court's denial of summary judgment on claims against gasoline refiners and MTBE manufacturers for immediate appeal pursuant to section 1292 of title 28 of the United States Code ("section 1292"). For the reasons that follow, ExxonMobil's motion is denied.

## II. LEGAL STANDARD

It is a "basic tenet of federal law to delay appellate review until a final judgment has been entered."[1] However, a court, in its discretion, may certify an interlocutory order for appeal if the order "[1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation."[2]

When considering certification, district courts must carefully evaluate

---

[1] *Koehler v. Bank of Bermuda, Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996).

[2] 28 U.S.C. § 1292(b).

2

whether each of the above conditions are met.³ Courts place particular weight on the last of these three factors: whether immediate appeal will materially advance the ultimate termination of the litigation.⁴ "An immediate appeal is considered to advance the ultimate termination of the litigation if that 'appeal promises to advance the time for trial or to shorten the time required for trial.'"⁵

Section 1292 is "a rare exception to the final judgment rule that generally prohibits piecemeal appeals . . . [and] is reserved for those cases where an immediate appeal may avoid protracted litigation."⁶ The Second Circuit has urged courts "to exercise great care in making a § 1292(b) certification."⁷ "[O]nly

---

³ *See, e.g., Wausau Bus. Ins. Co. v. Turner Constr. Co.*, 151 F. Supp. 2d 488, 491 (S.D.N.Y. 2001) (denying motion for certification where defendant could not demonstrate substantial grounds for difference of opinion as to controlling questions of law).

⁴ *See Koehler,* 101 F.3d at 865-66; *Lerner v. Millenco, L.P.*, 23 F. Supp. 2d 345, 347 (S.D.N.Y. 1998) ("The Court of Appeals has emphasized the importance of the third consideration in determining the propriety of an interlocutory appeal.").

⁵ *In re Oxford Health Plans, Inc.*, 182 F.R.D. 51 (S.D.N.Y. 1998) (quoting 16 Charles A. Wright & Arthur Miller, Federal Practice and Procedure § 3930 p. 432 (2d ed.1996)).

⁶ *Koehler,* 101 F.3d at 865-66.

⁷ *Westwood Pharm., Inc. v. National Fuel Gas Distrib. Corp.*, 964 F.2d 85, 89 (2d Cir. 1992).

3

'exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'"[8] Indeed, even where the three statutory criteria of section 1292(b) appear to be met, district courts have "unfettered discretion to deny certification" if other factors counsel against it.[9]

## III. THE MAY 13 OPINION AND ORDER

The May 13 Opinion and Order resolved several motions for summary judgment regarding proof of causation. Defendants brought two omnibus motions, both arguing that plaintiffs' product liability claims against MTBE manufacturers and gasoline refiners failed as a matter of law because plaintiffs could not identify the manufacturers or refiners of the MTBE and gasoline that had contaminated their well water. The only entities against whom

---

[8] *Flor v. BOT Fin. Corp.*, 79 F.3d 281, 284 (2d Cir. 1996) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)).

[9] *National Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F. Supp. 2d 139, 162-63 (E.D.N.Y. 1999) (assuming the statutory criteria were met but nonetheless denying certification). These factors include: (1) the time an appeal would take; (2) the need for a stay pending appeal and the effect on the litigation that would result from a stay; (3) the probability of reversal on appeal; (4) the effect of a reversal on the remaining claims; (5) the benefit of further factual development and a complete record on appeal; and (6) the probability that other issues may moot the need for interlocutory appeal. *See id.* at 163.

4

plaintiffs could prove causation, defendants argued, were those defendants who owned or operated retail gasoline stations where gasoline leaks had occurred, and where evidence showed that the leaks had led to contamination.

In the May 13 Opinion and Order, I held that gasoline refiners and MTBE manufacturers could be liable for plaintiffs' injuries under the basic principle of product liability law that everyone in the chain of distribution may be liable for injuries caused by a defective product. The fact that the gasoline released into the environment from gas stations throughout Suffolk County was a fungible, commingled product containing MTBE and gasoline from numerous manufacturers and refiners was not fatal to plaintiffs' claims. Rather, I held that all manufacturer and refiner defendants could be liable for contamination in each well, unless a particular defendant could prove that its product could not have been in the commingled gasoline alleged to have caused contamination at the time and place the gasoline was released into the environment.[10]

## IV. DISCUSSION

In seeking interlocutory appeal in this action three times in less than

---

[10] *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. 00 Civ. 1898, MDL No. 1358, 2008 WL 2047611, at *8 (S.D.N.Y. May 13, 2008).

5

one year,[11] defendants have ignored the principle that section 1292 was "not intended as a vehicle to provide early review of difficult rulings in hard cases."[12] ExxonMobil has not identified any exceptional circumstances warranting certification of the May 13 Order for interlocutory appeal. The questions the order presents, although difficult, are not appropriate for interlocutory appellate review. Further, appellate review would neither dispose of the litigation nor advance the time for trial, but would instead delay the upcoming trial without significantly limiting its scope.

### A.   Controlling Questions of Law

ExxonMobil argues that the following questions should be certified to the New York Court of Appeals:

---

[11]   In the fall of 2007, defendants sought interlocutory appeal of the Court's trial plan order and of the Court's order denying remand of this action to state court. The Second Circuit declined to review both orders. ExxonMobil also petitioned the Second Circuit to withdraw its mandate and review the denial of remand *en banc*, but the Circuit refused to do so. In 2005, defendants also sought certification pursuant to section 1292 for appeal of the Court's omnibus denial of motions to dismiss in many cases in the MDL. By contrast, "[t]he public record of the Second Circuit for the years 1994 and 1995 reveals a total for the two years of 35 motions for leave to appeal under § 1292(b), of which only eight were granted." *Koehler*, 101 F.3d at 866.

[12]   *German v. Federal Home Loan Mortgage Corp.*, 896 F. Supp. 1385, 1398 (S.D.N.Y. 1995).

6

(1) Whether New York law would permit Plaintiffs to establish causation under a "commingled product" theory without establishing which specific manufacturers' products reached the capture zone of a particular well, merely because all manufacturers' products were at some point commingled in gasoline that reached Suffolk County;

(2) Whether New York law would permit Plaintiffs to resort to a "commingled product" theory against all manufacturers whose MTBE or MTBE-containing gasoline reached Suffolk County, even where Plaintiffs can establish traditional causation against one or more solvent defendants capable of making Plaintiffs whole;

(3) Whether New York law would permit Plaintiffs to establish causation under a "commingled product" theory against defendants whose contribution to Plaintiffs' alleged injury was, at most, "very small," rather than "substantial."[13]

Although ExxonMobil describes these as "pure questions of law" requiring no detailed "study [of] the record,"[14] the commingled product theory of liability was developed in response to the unique and complex facts of this case. The May 13 Opinion and Order denied summary judgment based on a voluminous record including supplemental briefing and numerous exhibits from plaintiffs and

---

[13] Memorandum of Law in Support of Certain Defendants' Motion to Certify the Court's May 13, 2008 Opinion and Order for Interlocutory Appeal ("Def. Mem.") at 7-8.

[14] *In re Worldcom, Inc.*, No. M-47, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003).

7

defendants. Without a detailed study of the facts in the record about the gasoline distribution system in which gasoline is commingled for common transport, and the defendants' contributions to this system, the above questions could not be meaningfully addressed.

An issue of law can also be considered controlling if it "substantially affects a large number of cases."[15] This is arguably true here, since this action is the first focus case to be tried in the MDL and by definition litigants in the other MDL cases will look to the rulings in this case for guidance. However, since the ruling ExxonMobil seeks to certify was based on New York law, it only directly affects the cases in the MDL originating in New York.[16] Further, the May 13 Opuinion and Order is unlikely to have precedential value outside this MDL, since the rulings are grounded in the unique facts of the manufacture and distribution of MTBE-containing gasoline. Even if the issues to be certified could be considered

---

[15] *Genentech, Inc. v. Novo Nordisk A/S*, 907 F. Supp. 97, 99 (S.D.N.Y. 1995) (also noting that a question of law may be deemed controlling if its reversal will terminate an action, such as questions of personal or subject matter jurisdiction).

[16] It is worth noting that more than ninety percent of the defendants originally named in this action have reached a settlement with the plaintiffs. Indeed, ExxonMobil is one of only three remaining defendants, and is the only remaining gasoline refiner defendant.

controlling questions of law, however, ExxonMobil has not demonstrated that the other requirements of section 1292 have been met.

## B. ExxonMobil Has Not Shown the Existence of a Substantial Ground for Difference of Opinion

"A 'substantial ground for difference of opinion' cannot be grounded merely in a claim that the Court's decision was wrong."[17] Rather, there must be substantial doubt that the district court's order was correct.[18] A movant can establish substantial doubt by showing that there is conflicting authority on the issue, or that "the issue is particularly difficult and one of first impression for the Second Circuit."[19]

ExxonMobil argues that *In re Agent Orange Product Liability Litigation*, which also involved product liability claims against manufacturers of a commingled liquid product, conflicts with this Court's ruling on the commingled product theory. In that class-action litigation, Judge Jack B. Weinstein held that

---

[17] *Metzermacher v. National R.R. Passenger Corp.*, 487 F. Supp. 2d 27, 29 (D. Conn. 2007).

[18] *See Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 426 F. Supp. 2d 125, 129 (S.D.N.Y. 2005).

[19] *In re Citigroup Pension Plan Erisa Litig.*, No. 05 Civ. 5296, 2007 WL 1074912, at *2 (S.D.N.Y. April 4, 2007).

9

use of an alternative theory of liability was justified – despite the lack of clear causal links between Agent Orange pesticide and plaintiffs' illnesses – in part because "the likelihood that a *particular* manufacturer contributed to a plaintiff's injury is increased because the herbicides of many manufacturers were mixed together and because many plaintiffs were repeatedly exposed to Agent Orange."[20]

After Judge Weinstein approved a class-action settlement, however, he dismissed the claims of individual plaintiffs who had opted out of the class because they were unable to prove causation.[21] The court stated that the "most serious deficiency in plaintiffs' case is their failure to present credible evidence of a causal link between their exposure to Agent Orange and the various diseases from which they are allegedly suffering."[22] The bulk of the lengthy opinion discusses the inadequacy of plaintiffs' epidemiological evidence. The court also noted, however, that because each plaintiff was unable to prove "(1) that his disease is due to Agent Orange, or (2) that any particular defendant produced the

---

[20] *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 828 (E.D.N.Y. 1984).

[21] *See In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1223, 1260 (E.D.N.Y. 1985).

[22] *Id.* at 1229.

10

Agent Orange to which he was exposed . . . there is no possible theory of law on which these individual opt-out plaintiffs can recover."[23]

These two sentences are not enough to constitute conflicting authority establishing substantial doubt as to whether this Court's May 13 Opinion and Order is correct. The court did not discuss the issue of manufacturer identification or applicable causation theories in any further detail. And although the *Agent Orange* litigation is relevant in that it involved an allegedly defective commingled product, the nature of plaintiffs' individual claims for personal injuries is distinguishable from plaintiffs' claims for widespread groundwater contamination in the instant case. Therefore the rulings in *Agent Orange*, taken in context, do not establish substantial doubt that the Order is correct.

In addition, ExxonMobil argues that "[t]here is . . . nothing in New York law to suggest that its courts would recognize the commingled-products theory."[24] However, this Court held several years ago, in a 2005 Opinion and Order denying defendants' motion to dismiss, that New York would likely allow

---

[23] *Id.* at 1263.

[24] Def. Mem. at 11.

11

plaintiffs to prove their claims through the commingled product theory.[25] As I stated in the May 13 Opinion and Order, the New York Court of Appeals, when it adopted market share liability nearly twenty years ago, noted that New York courts had in the past "modif[ied] the rules of personal injury liability, in order 'to achieve the ends of justice in a more modern context.'"[26]

The May 13 Opinion and Order also explained that the commingled product theory is closer to traditional causation than market share liability, because in the instant case it is undisputed that the product allegedly causing plaintiffs' injury was manufactured by a number of defendants.[27] By contrast, market share liability as adopted by the New York Court of Appeals in *Hymowitz v. Eli Lilly & Co.* imposed liability on *all* manufacturers of a product even though the plaintiffs' injury was most likely caused by a *single* manufacturer.[28] ExxonMobil has not cited any law indicating that New York would *not* allow plaintiffs to prove their claims using the commingled product theory, nor any New

---

[25] *See In re MTBE Prods. Liab. Litig.*, 379 F. Supp. 2d 348, 425 (S.D.N.Y. 2005).

[26] *In re MTBE*, 2008 WL 2046711, at *8 (quoting *Hymowitz v. Eli Lilly & Co.*, 73 N.Y.2d 487, 507 (1989)).

[27] *See id.* at *5, *9.

[28] *See* 73 N.Y.2d 487 (1989).

12

York decisions that otherwise create substantial doubt that the May 13 Opinion and Order is incorrect.

Finally, ExxonMobil argues that the May 13 Opinion and Order involves difficult issues of first impression in New York that should be decided by state courts rather than federal courts. The fact that a case raises issues of first impression, however, is not enough to demonstrate a substantial difference of opinion.[29] This argument is therefore unavailing.

### C. Appellate Review Will Not Advance the Ultimate Termination of the Litigation

Most importantly, immediate appeal will not "materially advance the ultimate termination of the litigation."[30] After four years of motion practice and extensive discovery this action is slated for trial in September 2008. Reversal of the May 13 Order would not obviate the need for trial. If this Court's rulings allowing product liability claims against gasoline refiners and MTBE manufacturers to proceed were reversed, many fact-intensive claims against ExxonMobil would remain for trial. These include product liability claims against ExxonMobil as a retailer and supplier of an allegedly defective product,

---

[29] *See Flor*, 79 F.3d at 284.

[30] 28 U.S.C. § 1292(b).

negligence and New York Navigation Law claims for spills of gasoline at Exxon or Mobil gas stations that may have led to contamination in a number of the focus wells, and claims against ExxonMobil for violation of TSCA.

District courts have found that certification under section 1292 will materially advance the ultimate termination of the litigation when reversal would end the litigation.[31] In the instant case, by contrast, reversal would mean only that certain issues would not be tried, while trial of the remaining issues would be indefinitely delayed pending a decision from *both* the Second Circuit to certify questions to the New York Court of Appeals, and from the Court of Appeals itself.

## V. CONCLUSION

ExxonMobil's motion for certification for interlocutory appeal is therefore denied. The Clerk of the Court is directed to close this motion (docket # 1860).

---

[31] *See, e.g., Mullins v. City of New York*, No. 04 Civ. 2979, 2008 WL 118369, at *2 (S.D.N.Y. Jan. 10, 2008) ("if the Court of Appeals reverses this court . . . the litigation will end"). *Accord Koehler*, 101 F.3d at 866 (finding that interlocutory appeal was improvidently granted where "either way we rule, a remand will be required").

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
June 13, 2008

## -Appearances-

**Liaison Counsel for Plaintiffs and Counsel for County of Suffolk and Suffolk County Water Authority:**

Robin Greenwald, Esq.
Robert Gordon, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, New York 10038
Tel: (212) 558-5500
Fax: (212) 344-5461

**Liaison Counsel for Defendants and Counsel for ExxonMobil:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
McDermott Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, New York 10020
Tel: (212) 547-5583
Fax: (212) 547-5444