UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
                                                        :
IN RE: METHYL TERTIARY BUTYL                            :
ETHER ("MTBE") PRODUCTS                                 :  **OPINION AND ORDER**
LIABILITY LITIGATION                                    :
                                                        :  Master File No. 1:00-1898
------------------------------------------------------- :  MDL 1358 (SAS)
                                                        :  M21-88
This document relates to:                               :
                                                        :
*County of Suffolk v. Amerada Hess Corp., et*           :
*al.*, 04 Civ. 5424                                     :
                                                        :
------------------------------------------------------- X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

Under Rule 702 of the Federal Rules of Evidence, a party must

demonstrate, *inter alia*, that its expert's "testimony is the product of reliable

principles and methods."[1] On May 7, 2008, I granted defendants' motion to

exclude the testimony of plaintiff's expert Dr. William S. Cain on the ground that

his testimony was based on an unreliable method.[2] On May 21, 2008, plaintiffs

---

[1]     Fed. R. Evid. 702. The party offering the expert must prove by a "preponderance of proof" that the proffered testimony satisfies Rule 702. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 592 n.10 (1993) (citing *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987)).

[2]     *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. 04 Civ. 5424, 2008 WL 1971547 (S.D.N.Y. May 7, 2008).

1

filed a "Motion for Reconsideration and Clarification of the Court's Opinion."[3] On June 2, 2008, defendants filed a brief in response with the Court's permission.[4]

For the reasons that follow, plaintiffs' motion is denied in part and granted in part.

## I. BACKGROUND

Plaintiffs offered Dr. Cain as an expert to "testify about the level at which people can perceive MTBE in their water because of its odor or taste."[5] According to Dr. Cain:

> It is my opinion that MTBE can be detected by smell and/or taste in drinking water at levels at or below 1 part per billion (ppb). At concentrations at or below 1 ppb, MTBE can impart a distinctive taste and odor to water.[6]

In reaching this conclusion, Dr. Cain used the following methodology:

---

[3] *See* Motion for Reconsideration and Clarification Re William S. Cain ("Pl. Mem.").

[4] *See* Defendants' Opposition to Plaintiffs' Motion for Reconsideration and Clarification Re William S. Cain ("Def. Mem."). This opposition was submitted on behalf of Lyondell Chemical Company, Equistar Chemicals, LP, Exxon Mobil Corporation, Getty Properties Corp, and Total Petrochemicals USA, Inc.

[5] *In re MTBE*, 2008 WL 1971547, at *1.

[6] *Id.* at *1 (quoting 2/1/07 Expert Report of William S. Cain, Ph.D. at 2).

2

*First*, Dr. Cain selected one study to focus on from the dozens of reported studies on the human threshold for detecting MTBE. *Second*, Dr. Cain discussed potential flaws in this study which had found a taste and odor threshold for MTBE of 15 ppb and then applied "correction factors" to lower the threshold for detecting MTBE.[7]

I found that Dr. Cain's methodology of applying "correction factors" was unreliable.[8] Plaintiffs wanted "Dr. Cain to present scientific testimony about the threshold at which people can detect MTBE," but his testimony was "not based on a method that has *scientific* validity."[9] Indeed, I would be "surprised were Dr. Cain to submit such a report to his colleagues for discussion or review, or if he were to use it as a model for his students to follow when explaining research and studies in his field."[10] Because "the final question to answer is whether the expert 'employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field,'"[11] Dr. Cain's testimony could not be presented to the jury.

---

[7] *Id.* at *6.

[8] *See id.* at *9.

[9] *Id.* at *12 (emphasis in original).

[10] *Id.*

[11] *Id.* at *11 (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)).

3

## II. LEGAL STANDARD ON A MOTION FOR RECONSIDERATION

Motions for reconsideration in the Southern District of New York are governed by Local Civil Rule 6.3. Under this rule:

> A notice of motion for reconsideration or reargument of a court order determining a motion shall be served within ten (10) days after the entry of the court's determination of the original motion . . . . There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked . . . .[12]

Reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."[13]

"The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked–matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."[14] Thus, "a motion to reconsider should not be granted where the moving party seeks solely to relitigate

---

[12] Local Civ. R. 6.3.

[13] *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (quotation marks omitted).

[14] *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). *Accord In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir. 2003); *Eisemann v. Greene*, 204 F.3d 393, 395 n.2 (2d Cir. 2000) ("To be entitled to reargument, a party must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion.") (quotation marks and citation omitted).

4

an issue already decided."[15] "A motion for reconsideration is not a substitute for appeal."[16]

## III. PLAINTIFFS' MOTION FOR RECONSIDERATION IS DENIED

In arguing for reconsideration, plaintiffs offer two arguments. *First*, they contend that Dr. Cain had a "reasonable basis" for selecting the Stocking Study as the starting point for his analysis.[17] *Second*, plaintiffs argue that Dr. Cain's application of "correction factors" is based on a reliable methodology.

### A. Whether Dr. Cain Had a "Reasonable Basis" for Relying on the Stocking Study Is Irrelevant

In the opinion issued on May 7, 2008, I wrote:

> Over the last three decades, there have been more than thirty reported studies on the human threshold for detecting MTBE. Of these many studies, Dr. Cain selected one to serve as the basis for his opinion: a 1998 consumer panel study by Andrew Stocking and others of MTBE odor detection, commissioned by the Oxygenated Fuels Association (the "Stocking Study").[18]

In a footnote, I also commented that Dr. Cain's "methodology in selecting the study may be unreliable because it relies solely on the studies' conclusions for

---

[15] *Shrader*, 70 F.3d at 257.

[16] *In re MTBE*, No. 00 Civ. 1898, 2007 WL 2979642, at *2 (S.D.N.Y. Oct. 10, 2007).

[17] *See* Pl. Mem. at 1-7.

[18] *In re MTBE*, 2008 WL 1971547, at *6.

5

selection and declares that the studies with lower thresholds used better methodology."[19]

Plaintiffs spend the first half of their brief arguing that Dr. Cain had a "reasonable basis" for selecting the Stocking Study. While Plaintiffs do not argue that I overlooked any controlling decisions, they do contend that I made one factual mistake. In particular, plaintiffs argue that "[a]s of 2007, approximately *nine* studies had been performed to determine the levels of MTBE in water that can be detected by test subjects . . . ."[20] Because I had relied on the defendants' representation in their brief when stating that "there have been more than thirty reported studies on the human threshold for detecting MTBE,"[21] defendants respond:

> Plaintiffs accuse Defendants of miscalculating the number of reported studies about the taste and odor threshold of MTBE and misleading the Court, claiming that only nine such studies have been performed. What Defendants stated in their *Motion In Limine*, however, was that "more than thirty reported *experiments*" (as opposed to "studies") have been conducted. Defendants were correct–there have been at least 31 experiments

---

[19] *Id.* at *6 n.48.

[20] Pl. Mem. at 2.

[21] *In re MTBE*, 2008 WL 1971547, at *6.

6

conducted as part of 11 reported studies on the taste and odor threshold of MTBE (not 9 as Plaintiffs contend).[22]

In other words, it appears that I incorrectly used the word "studies" as a synonym for "experiments" in its previous opinion. While there may have been over thirty experiments, there have been less than a dozen reported studies.

However, nothing in my decision to exclude Dr. Cain's testimony depended on whether there have been nine, eleven or even thirty-one reported studies on the taste and odor threshold of MTBE. As I noted in the opinion, I did not resolve the "the reliability of his selection" of the Stocking Study, because Dr. Cain's methodology of applying "correction factors" to this one study was unreliable.[23] For the same reason, I will not resolve on this motion whether Dr. Cain used a reliable method in selecting the Stocking Study as the only study on which to base his expert report.[24]

---

[22] Def. Mem. at 8 n.5 (emphasis in original) (citations omitted).

[23] *In re MTBE*, 2008 WL 1971547, at *6 n.48.

[24] However, it is worth noting that while plaintiffs argue that Dr. Cain had a "reasonable basis" for selecting the Stocking Study, this is not the standard that they must satisfy. Under Rule 702, the question is whether the method used in selecting the study is "reliable," which means plaintiffs must demonstrate that Dr. Cain was using "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field" when he selected the Stocking Study. *Kumho*, 526 U.S. at 152.

7

## B. Using "Correction Factors" Is an Unreliable Method

In the previous opinion, I summarized Dr. Cain's methodology by stating :

> The Stocking Study found a general population threshold of 15 ppb for the detection of MTBE. In contrast, Dr. Cain has opined that MTBE can be detected at 1 ppb . . . . Dr. Cain arrived at his conclusion by identifying three major flaws in the methodology of the Stocking Study and then applying "corrective factors."[25]

As I explained: "There are a number of problems with dividing the results of the Stocking Study by five to determine the 'true' threshold for detecting MTBE but the most fundamental one is that it lacks scientific rigor."[26] Because the critical question is whether Dr. Cain's methodology uses "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field,"[27] I further explained:

> Most importantly, Dr. Cain cannot name another scientist who has ever employed, much less approved of, such a method (*i.e.*, dividing the results of one study by five because another study on an unrelated chemical showed that the subjects' threshold decreased by "almost a factor of five" with repeated testing). Nor has Dr. Cain attempted to report this method in any peer-reviewed journal or "in some public way" so that other scientists could

---

[25] *In re MTBE*, 2008 WL 1971547, at *9.

[26] *Id.*

[27] *Kumho*, 526 U.S. at 152.

8

offer criticisms or suggestions. Indeed, Dr. Cain has never used it in his day-to-day work, or applied it to any study other than the Stocking Study, which only occurred after he was hired by the plaintiffs as their expert.[28]

In their motion for reconsideration, plaintiffs reiterate the problems that Dr. Cain identified with the Stocking Study. For example, plaintiffs argue that the Stocking Study only gave subjects one opportunity to sniff each concentration of water containing MTBE. Dr. Cain "opined that if those [subjects] had been given more opportunities to sniff each concentration, the panelists would have been able to detect lower concentrations."[29] Plaintiffs argue that this phenomenon has been repeatedly documented.[30] Likewise, plaintiffs again point out that the Stocking Study included older participants who presumably had lost some of their ability to detect odor and taste. "Dr. Cain testified that he estimated a reduction factor of two to account for the older participants."[31]

Although Dr. Cain may have identified valid flaws in the Stocking Study, plaintiffs are unable to show that these flaws warrant the application of "correction factors" to the study. Their arguments fail to show that Dr. Cain

---

[28] *In re MTBE*, 2008 WL 1971547, at *9.

[29] Pl. Mem. at 8.

[30] *See id.* at 8-11.

[31] *Id.* at 11.

9

"employs . . . the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[32] Indeed, plaintiffs apparently concede that Dr. Cain's method has "(1) not been tested, (2) [has] not been subjected to peer review and publication, (3) [has] not identified a known or potential rate of error, and (4) [has] not gained general acceptance in the relevant community."[33] Plaintiffs have still not named "another scientist who has ever employed, much less approved of, such a method."[34] In fact, plaintiffs do not even argue that prior to this litigation Dr. Cain used "correction factors" in his work.[35]

In short, I excluded Dr. Cain's opinion from trial because plaintiffs failed to show that he was using "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field"[36] when he applied "correction factors" to the Stocking Study. Plaintiffs do not point out any

---

[32] *Kumho*, 526 U.S. at 152.

[33] *In re MTBE*, 2008 WL 1971547, at *11 (citing *Daubert*, 509 U.S. at 593-94).

[34] *Id.* at *9.

[35] While plaintiffs have argued that Dr. Cain "based his opinion here on work performed well before his involvement with MTBE litigation," Pl. Mem. at 12, this is obviously different from arguing that, prior to this litigation, Dr. Cain has used "correction factors" in his day-to-day work.

[36] *Kumho*, 526 U.S. at 152.

10

controlling decisions or material facts that I overlooked in reaching this decision. Their motion for reconsideration is therefore denied.

## IV. PLAINTIFFS' MOTION FOR CLARIFICATION IS DENIED

At the end of their motion, plaintiffs write:

> If the Court denies this request [for reconsideration], however, Plaintiffs ask the Court to clarify its May 7, 2008 ruling granting Defendants' motion in limine to specify that Dr. Cain may still offer certain opinions at trial. Defendants' motion challenges only the correction of the Stocking data (as discussed above); Dr. Cain should, therefore, be allowed to offer at the very least any opinions that do not rely on the challenged correction.
>
> For example, Dr. Cain reviewed data provided by SCWA and offered opinions about the levels of other chemicals found in SCWA drinking water. To arrive at these opinions, Dr. Cain simply looked up published threshold values for those chemicals. Ex. F (Cain Depo.) at 343. He did not apply any further reduction factors. *Id.* at 346-349. Those opinions were not challenged by Defendants and have nothing to do with his opinion about the proper "threshold" value for MTBE.[37]

Defendants oppose this request and maintain that "Dr. Cain's opinions should be excluded in their entirety."[38]

Plaintiffs' motion for "clarification" is not properly submitted under Local Civil Rule 6.3, which only allows a "motion for reconsideration or

---

[37] Pl. Mem. at 13.

[38] Def. Mem. at 11.

11

reargument of a court order."³⁹ The Rule does not allow a party to move for "clarification." Indeed, the only obvious rule that allows for clarification of a court's order is Rule 60 of the Federal Rules, but even this rule does not permit the type of clarification that plaintiffs are seeking in their motion.

In particular, Rule 60 allows a court to clarify a previous order because it gives a court the power to correct "a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record."⁴⁰ Rule 60(a) "permits the correction not only of clerical mistakes, but also of inadvertent errors arising from oversight or omission."⁴¹ "The general purpose of Rule 60(a) is to afford courts a means of modifying their judgments in

---

³⁹ Local Civ. R. 6.3.

⁴⁰ Fed. R. Civ. P. 60(a). While Rule 60(b)(6) is a catch-all provision that authorizes the court to relieve a party from an order for "any other reason that justifies relief," Fed. R. Civ. P. 60(b), courts have found that "[r]elief is available under Rule 60(b)(6) only where exceptional circumstances have denied the moving party a full and fair opportunity to litigate his claim and have prevented the moving party from receiving adequate redress." *Harley v. Zoesch*, 413 F.3d 866, 871 (8th Cir. 2005).

⁴¹ *In re Marc Rich & Co. A.G. v. United States*, 739 F.2d 834, 836 (2d Cir. 1984) (internal quotation omitted).

12

order to ensure that the record reflects the actual intentions of the court."[42] As the Second Circuit has explained:

> The relevant distinction is "between what is erroneous because the thing spoken, written or recorded is not what the person intended to speak, write or record, and what is erroneous because the person later discovers that the thing said, written or recorded was wrong. The former comes within Rule 60(a); the latter does not."[43]

Thus, even if plaintiffs had submitted this motion under Rule 60(a), it would be denied because plaintiffs are not arguing that the opinion issued on May 7, 2008, contains a mistake, error or omission that does not reflect the Court's intent in issuing it.

## V. DR. CAIN MAY GIVE LIMITED TESTIMONY AT TRIAL

What plaintiffs really seek is not "clarification" but permission to use some portion of Dr. Cain's testimony in light of this Court's determination that applying "correction factors" to a scientific study is an unreliable method under Rule 702. This is understandable given my previous determination that:

> The Court has no doubt that "scientific, technical, or other specialized knowledge will assist the trier of fact to understand

---

[42] *Ferguson v. Lion Holding, Inc.*, No. 02 Civ. 4258, 2007 WL 2265579, at *3 (S.D.N.Y. Aug. 6, 2007).

[43] *In re Marc Rich*, 739 F.2d at 837 (quoting *Allied Materials Corp. v. Superior Prods. Co.*, 620 F.2d 224, 226 (10th Cir. 1980)).

13

> the evidence." Nor does the Court have any doubt that Dr. Cain is "a witness qualified as an expert by knowledge, skill, experience, training, or education."[44]

I will therefore treat plaintiffs' request as a *motion in limine*, "a motion that the Supreme Court has recognized as stemming from the 'district court's inherent authority to manage the course of trials,'"[45] to admit portions of Dr. Cain's testimony at trial in light of the Court's previous opinion.

Having again reviewed the reports submitted by Dr. Cain, he may testify about the following. *First*, Dr. Cain may testify about factual issues that have not been disputed by defendants. This testimony is very limited. For example, Dr. Cain could testify about the taste and odor thresholds of other chemicals found in plaintiffs' well water, based on reported thresholds in any well known scientific treatise. In other words, Dr. Cain could testify that "the value for chlorine in the book is 5, and what is in the well is 2, then it is my expert opinion that [the chemical] wouldn't be tasted because it is below the threshold values for

---

[44] *In re MTBE*, 2008 WL 1971547, at *5 (quoting Fed. R. Evid. 702).

[45] *In re MTBE*, 517 F. Supp. 2d at 666-67 (quoting *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (treating defendants' motion, which was improperly filed as a summary judgment motion under Rule 56, as a motion *in limine*)).

14

chlorine."[46] *Second*, if the defendants offer the Stocking Study as evidence during the trial, plaintiffs will be permitted to use Dr. Cain as a rebuttal witness to testify about the flaws in the study.[47] However, even if Dr. Cain is testifying as a rebuttal witness, he may not testify about the levels at which he believes people can detect MTBE since the method he used to calculate those levels is unreliable.

## VI. CONCLUSION

Plaintiffs' motion is denied in part and granted in part. The Clerk of the Court is directed to close this motion (docket ## 1843 and 1862).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
June 24, 2008

---

[46] 6/12/08 Transcript of MTBE Conference at 18. At the June 12th conference, I also stated that I would go over the expert reports "one more time with a fine-tooth comb." *Id.* Having again reviewed the reports, I have found nothing else about which Dr. Cain could testify.

[47] *See id.* at 17.

15

-Appearances-

**Liaison Counsel for Plaintiffs:**

Robin Greenwald, Esq.
Robert Gordon, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, New York 10038
Tel: (212) 558-5500
Fax: (212) 344-5461

**Liaison Counsel for Defendants and Counsel for ExxonMobil:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
McDermott Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, New York 10020
Tel: (212) 547-5583
Fax: (212) 547-5444

**Counsel for Defendants Lyondell Chemical Company and Equistar Chemicals, LP:**

Alan J. Hoffman, Esq.
Jeffrey S. Moller, Esq.
Jerry D. Bernstein, Esq.
Blank Rome LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Tel: (212) 885-5000
Fax: (212) 885-5001