USDC SDNY
DOCUMENT
ELECTRONICALLY FILED

7/16/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
  :
IN RE: METHYL TERTIARY BUTYL     :
ETHER ("MTBE") PRODUCTS          :   **OPINION AND ORDER**
LIABILITY LITIGATION             :
  :   **Master File No. 1:00-1898**
------------------------------------------------------- :   **MDL 1358 (SAS)**
  :   **M21-88**
This document relates to:        :
  :
*Tonneson, et al. v. Sunoco, Inc., et al.*, 03  :
Civ. 8284                        :
*Basso, et al. v. Sunoco, Inc., et al.*, 03 Civ.  :
9050                             :
------------------------------------------------------- X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

I.  **INTRODUCTION**

  Dave Tonneson purchased vacant land along scenic Route 9W near

the Hudson River as an investment. After discovering that the drinking water

wells on the property had been contaminated with the gasoline additive methyl

tertiary butyl ether ("MTBE"), Tonneson sued the corporation that owned a nearby

Sunoco gasoline station seeking various forms of relief including compensatory

and punitive damages.[1] Defendants Sunoco, Inc. and Sunoco, Inc. (R&M) now

---

[1] The property is also owned by Hudson Highlands Realty Restoration, LTD, a development company that is co-owned by Dave Tonneson and his brother. For the sake of ease, I will only refer to "Tonneson" as the plaintiff in this opinion even though the development company is also named as a plaintiff in the complaint.

In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation    Doc. 1915

1

"requests that the Court grant summary judgment dismissing all of Tonneson's claims and causes of action regarding the 2.2-acre parcel of vacant land . . . ."[2]

For the reasons that follow, defendants' motion for summary judgment is denied.

## II. BACKGROUND

The following facts are presented in the light most favorable to Tonneson.[3] Tonneson purchased vacant property along Route 9W and intended to develop it into a "28-unit townhouse project using modular homes."[4] "Modular homes are pre-manufactured homes that are delivered to the building site via truck, and placed on the home site with a crane."[5] "Tonneson has more than 12

---

[2] Sunoco Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment Dismissing Certain Plaintiffs' Claims for Lost Profits on the Development of Real Estate ("Def. Mem.") at 20. *See also* Sunoco Defendants' Reply Memorandum of Law in Further Support of Their Motion for Summary Judgment Dismissing Certain Plaintiffs' Claims for Lost Profits on the Development of Real Estate ("Reply Mem.") at 11.

[3] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor [on a summary judgment motion].").

[4] Plaintiffs' Opposition to Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment Dismissing Certain Plaintiffs' Claims for Lost Profits on the Development of Real Estate ("Pl. Mem.") at 2 (citation omitted).

[5] *Id.* (citation omitted).

2

years of experience using modular homes, and was, in fact, the only builder approved by the modular home manufacturer to pick up and set his own modular homes."[6]

In April 2003, two wells developed by Tonneson to provide drinking water for the modular homes were sampled for MTBE. "MTBE was detected in Well No. 1 at 190 ppb and Well No. 2 at 2,200 ppb."[7] Tonneson then attempted to find an alternative source of water for the proposed townhouses "including Town of Highlands municipal or well water from another townhouse development nearby called Corbin Hills."[8] "After these efforts were unsuccessful, Tonneson reached an agreement with the adjacent residential property developer, Corbin Hills, to sell the property."[9] "The final purchase price, and completion of the contract, is contingent upon Tonneson obtaining final approval for the townhouse project from the Town of Highlands planning board."[10]

---

[6] *Id.* (citation omitted).

[7] *Id.* at 3 (citation omitted).

[8] *Id.* (citation omitted).

[9] *Id.* (citation omitted).

[10] *Id.* (citation omitted).

3

In the complaint, Tonneson asserted the following claims against defendants:

(1) design defect,

(2) negligence,

(3) trespass,

(4) nuisance,

(5) intentional interference with right to appropriate,

(6) violation of section 349 of New York General Business Law,

(7) outrageous conduct causing the infliction of emotional distress, and

(8) various violations of article 12 of the New York State Navigation Law.[11]

If Tonneson proves these claims to a jury by a preponderance of the evidence, Tonneson seeks the following relief:

(1) compensatory damages,

(2) punitive damages,

---

[11] Tonneson also asserted a "claim" of declaratory relief. "However, declaratory relief is not a claim but only a remedy that Congress has created so that the court 'may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *In re MTBE Prods. Liab. Litig.*, 247 F.R.D. 420, 422 (S.D.N.Y. 2007) (citing 28 U.S.C. § 2201).

(3) declaratory judgment,

(4) fees incurred in pursuing this action,

(5) any other relief as may be deemed necessary, just and proper by the Court.

## III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IS DENIED

Defendants have moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, which states:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.[12]

The key issue on a summary judgment motion is whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[13] As the Supreme Court has explained, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[14]

---

[12] Fed. R. Civ. P. 56(c).

[13] *Anderson*, 477 U.S. at 248.

[14] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

5

Defendants argue that summary judgment should be granted in their favor for three reasons. *First*, "Tonneson has suffered no cognizable injury due to MTBE and any lost profits are not 'directly traceable' to Sunoco . . . ."[15] *Second*, "[t]he Court should grant Sunoco summary judgment on all claims relating to the Property because . . . the evidence of lost profits is too speculative to be tried . . . ."[16] *Third*, "neither the Property itself nor any reasonably specific claim of lost profits are mentioned in the Complaint, and the claim was time-barred when Tonneson first raised it."[17]

### A. Tonneson Has Suffered a Cognizable Injury Directly Traceable to Defendants

While defendants argue that plaintiffs have not suffered a "cognizable injury," this argument has no merit. A reasonable jury could find that property with drinking wells that have been contaminated with MTBE is worth less than property with drinking wells that have not been contaminated. "The turpentine-like taste and odor of MTBE . . . can make such drinking water

---

[15] Def. Mem. at 2. *See also id.* at 13-17; Reply Mem. at 9-11.

[16] Def. Mem. at 2. *See also id.* at 7-12; Reply Mem. at 2-9.

[17] Def. Mem. at 2. *See also id.* at 17-19.

unacceptable to consumers."[18] Studies have also shown that inhalation and exposure to MTBE causes cancer in animals and it may cause cancer in humans such as leukemia and lymphoma.[19]

Moreover, the injury to Tonneson's property is directly traceable to the gas station owned by Sunoco, Inc. and Sunoco, Inc. (R&M). Plaintiffs allege that defendants stored gasoline containing MTBE in underground storage tanks.[20] "In October 1999, Sunoco removed an old underground fuel storage tank from its Fort Montgomery gas station and discovered certain petroleum contaminants in the soil and groundwater surrounding the tank."[21] "After detecting MTBE in the station well, Sunoco's consultants tested residential wells in the surrounding area,

---

[18] U.S. Envtl. Prot. Agency, *Achieving Clean Air and Clean Water: The Report of the Blue Ribbon Panel on Oxygenates in Gasoline* 13, 77 (1999) available at h ttp:// www.epa.gov/oms/consumer/fuels/oxypanel/r99021.pdf.

[19] *See In re MTBE*, No. 00 Civ. 1898, 2008 WL 2607852, at *4 n.38 (S.D.N.Y. 2008) (citing *In re MTBE*, 241 F.R.D. 435, 437 n.2 (S.D.N.Y. 2007)).

[20] *See In re MTBE*, 528 F. Supp. 2d 303, 306-08 (S.D.N.Y. 2007) (discussing the background of this action).

[21] *Id.* at 306.

revealing MTBE concentrations in forty-one potable wells [near the station]."[22]

"The Sunoco station closed in October 2002."[23]

This evidence is more than sufficient for a reasonable jury to find that Tonneson has suffered a cognizable injury directly traceable to defendants.

### B. A Reasonable Jury Could Return a Verdict for Tonneson

Defendants argue:

> In New York, lost profits arising from the development of real property may be recovered only if the injured party can establish to a reasonable certainty that the prospective development would have been profitable. This rule accords with the general principle that "consequences which are contingent, speculative or merely possible are not proper to be considered in estimating . . . damages and may not be proved."[24]

"Summary Judgment is appropriate on Tonneson's lost profit claims," defendants argue, "because his alleged damages are too speculative as a matter of law."[25]

The problem with defendants' argument is that lost profits are merely a way of measuring compensatory damages – there is no such thing as a "lost

---

[22]    *Id.* at 307.

[23]    *Id.*

[24]    Def. Mem. at 7 (quoting *Briggs v. New York Central and Hudson River RR. Co.*, 177 N.Y. 59, 62 (1903)) (additional citations omitted).

[25]    Reply Mem. at 2.

8

profit claim."[26] I have previously emphasized the difference between a plaintiff's claims and the various forms of relief that may be awarded.[27] This distinction is important because "Rule 56 was designed to provide a mechanism by which unsupportable *claims* can be terminated before trial."[28] A "claim" is the legal theory under which relief is sought.[29] "A single claim may support multiple types of relief, including declaratory judgments, injunctions, compensatory damages, and punitive damages."[30]

A simple question can be asked when determining whether a party has properly identified a claim: What common law or statute did the defendants allegedly violate? For example, New York common law prohibits negligence and trespass. Thus, plaintiffs may bring negligence and trespass claims against defendants in their complaints. Likewise, New York General Business Law § 349

---

[26] *See, e.g.*, Def. Mem. at 8 (referring to "lost profit claims"); *id.* at 9 (same); *id.* at 10 (same); *id.* at 12 (same); *id.* at 17 (referring to "lost profit claim").

[27] *See In re MTBE Prods. Liab. Litig.*, 517 F. Supp. 2d 662, 664-66 (S.D.N.Y. 2007).

[28] *Id.* at 664 (quotation marks and citation omitted) (emphasis in original). *See generally* Bradley Scott Shannon, *A Summary Judgment Is Not A Dismissal!*, 56 DRAKE L. REV. 1, 1-15 (2007).

[29] *See In re MTBE*, 517 F. Supp. 2d at 664.

[30] *Id.* at 665. *See also* Bradley Scott Shannon, *Action Is an Action Is an Action Is an Action*, 77 WASH. L. REV. 65, 89-102 (2002).

prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service."[31] It would be proper to refer to a "Section 349 claim" or even, for the sake of ease, "a deceptive act claim."

But there is no such thing as a "punitive damage claim," a "declaratory relief claim," a "*res ipsa loquitur* claim," or a "market share liability claim" – all of which have been referred to at various times in this multidistrict litigation – because it makes no sense to say that the law prohibits them. "Punitive damages are a monetary remedy 'aimed at deterrence and retribution,'"[32] while "declaratory relief is not a claim but only a remedy that Congress has created so that the court 'may declare the rights and other legal relations of any interested party . . . .'"[33] *Res ipsa loquitur* is "only an evidentiary method of proving negligence,"[34] and "[m]arket share liability is an evidentiary tool that allows a plaintiff to prove causation, which is an element of a claim."[35]

---

[31] N.Y. Gen. Bus. Law § 349 (a).

[32] *In re MTBE*, 517 F. Supp. 2d at 666 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003)).

[33] *In re MTBE*, 247 F.R.D. at 422 (quoting 28 U.S.C. § 2201).

[34] *In re MTBE*, 241 F.R.D. at 438 n.7.

[35] *In re MTBE*, 517 F. Supp. 2d at 668.

The law does not prohibit lost profits. Rather, determining lost profits is one method that juries use to place plaintiffs in the same position that they would have been had defendants not violated the law – *i.e.*, award compensatory damages. Thus, a plaintiff may not bring, and defendants may not move for summary judgment on, "lost profit claims."

A review of the complaint shows that the claims brought by Tonneson are straight-forward: (1) design defect, (2) negligence, (3) trespass, (4) nuisance, (5) intentional interference with right to appropriate, (6) violation of section 349 of New York General Business Law, (7) outrageous conduct causing the infliction of emotional distress, and (8) various violations of article 12 of the New York State Navigation Law. If a jury finds that Tonneson has proven one or more of these claims (*i.e.*, defendants violated the law), the next question will be what relief should be awarded to Tonneson.

"Establishing the appropriate measure of damages for injuries suffered from environmental conditions on neighboring land *is separate and distinct from offering the requisite proof of the underlying claim*."[36] "A court may award property damages to address necessary restoration and repairs, lost rental

---

[36] Mark S. Dennison, "Recovery of Damages For Injury To Landowner's Property From Environmental Condition on Neighboring Land," 37 *Am. Jur. Proof of Facts* 3d 439, § 10 (2008) (emphasis added) (available on Westlaw).

11

value or property devaluation, depending on the type of action brought and the specific facts and circumstances of the case."[37] "There are many ways, however, to determine the proper measure of damages for wrongful occupation of property, and courts are very flexible in choosing a measure of recovery which is most appropriate to the particular facts of the case."[38]

In this case, defendants have focused on one way that the Court may instruct the jury to award compensatory damages, referred to plaintiffs' claims as "lost profit claims" and now move for summary judgment under Rule 56. However, the tactic of "rewriting the complaint" or presenting new "claims" is one that courts properly reject.[39] Once defendants' misrepresentation of Tonneson's claims is corrected, it becomes obvious that the summary judgment motion must be denied.

---

[37] *Id.* (citation omitted).

[38] *Id.* (quotation marks and citation omitted).

[39] *See, e.g., In re Philip Servs. Corp. Sec. Litig.*, 383 F. Supp. 2d 463, 474 (S.D.N.Y. 2004) ("Such characterizations either contradict the plain meaning of the allegations in the Complaint or rely on convoluted inferences favoring [defendant]."); *In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d 281, 332-33 (S.D.N.Y. 2003) ("A plain reading of the Complaint shows that there are no such claims . . . . While it is perfectly proper to use shorthand phrases to describe these claims, the Defendants have rewritten the Complaints in a way that they believe favors dismissal.").

12

Tonneson must establish that he was harmed in order to prove certain claims, such as design defect and negligence. Yet defendants concede that Tonneson was harmed if only because they contend that he could simply install a treatment system to filter the drinking water.[40] Thus, even under defendants' theory, Tonneson should be compensated by an amount equivalent to purchasing and maintaining a treatment system. For this reason alone, defendants have failed to demonstrate that a reasonable jury must return a verdict in their favor.[41]

Moreover, defendants' argument that plaintiffs should only receive compensatory damages equivalent to the cost of a filtration system assumes that purchasers of modular homes would place the same value on a home with a treatment system that filters MTBE out of the drinking water as a home with uncontaminated drinking water. If the jury finds that this assumption is not true, then Tonneson would have been harmed by the decrease in the price due to the MTBE contamination that people are now willing to pay for modular homes on the property.[42]

---

[40] See Def. Mem. at 1, 2, 4; Rep. Mem. at 1.

[41] *See Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

[42] Of course, there are other factors that could affect the jury's award of compensatory relief including, for example, the uncertainty that the property owner will receive the necessary government approvals to build the homes or the

13

Tonneson has testified that he was harmed by the profits that he lost as a result of the contamination. His deposition testimony relies heavily on his twelve years of experience using modular homes for residential construction projects in Ft. Montgomery.[43] "Tonneson had, in fact, already sought preliminary cost estimates from the manufacturer of the modular townhouses that he intended to use to develop this property."[44] He also reviewed current price sheets for other modular homes in the area when confirming his costs estimates. Tonneson took into consideration that the townhouses and condominiums completed by Corbin Hills adjacent to Tonneson's property sold in 2002 and 2003 for prices ranging from approximately $250,000 to $330,000.[45] Finally, Tonneson estimates that he would have received "a gross income of about 12,000,000 to 12,600,000 in sales."[46] Extrapolating from these numbers, Tonneson estimates that he would have sold his twenty-eight modular homes for, on average, approximately $428,000 to $450,000.

---

length of time it takes to build them (*i.e.*, the time value of money). Determining these fact issues is also the jury's responsibility.

[43] *See* Def. Mem. at 7 (citations omitted).

[44] *Id.* (citation omitted).

[45] *See id.* at 7-8 (citation omitted).

[46] *Id.* at 7-8 (citation omitted).

14

Defendants argue that Tonneson is trying to "shoot the moon"[47] – that is, run up his estimate of damages. It is certainly true that in this case, as in all cases, plaintiff has an incentive to exaggerate the harm that he suffered now that he is involved in litigation.[48] Indeed, a strong cross-examination of Tonneson will undoubtedly reveal the weaknesses in his testimony.

But at this stage, I cannot resolve disputes over a witness's credibility. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether [she] is ruling on a motion for summary judgment or for a directed verdict."[49] All of the evidence and all inferences from that evidence must be viewed in the light most favorable to Tonneson.

In this case, the jury will be instructed that the goal of compensatory damages is to place the plaintiff in the same position he would have occupied had the wrongful conduct not occurred. In so doing, the jury will be allowed to consider, *inter alia*, the profits that Tonneson argues that he lost once his property was contaminated with MTBE. In sum, the evidence is sufficient for Tonneson to

---

[47] Reply Mem. at 1.

[48] Likewise, defendants always have an incentive to minimize the harm that a plaintiff suffered.

[49] *Anderson*, 477 U.S. at 255.

15

prove his claims and it is the jury's responsibility to determine the harm to the value of Tonneson's property if it awards compensatory damages.

## C. Defendants Received Fair Notice of Plaintiffs' Claims

Defendants' final argument is that:

> The Complaint does not articulate any facts necessary to support Tonneson's claim for lost profit damages relating to the Property, and thereby fails to meet even the lenient pleading standards of Federal Rule of Civil Procedure 8. Because of this failure, Sunoco was denied the requisite fair notice of Tonneson's lost profits claim, and the claim is not properly before the Court. Sunoco is therefore entitled to summary judgment dismissing the claim from this action.[50]

There are at least three problems with this argument. *First*, as explained above, plaintiffs have not alleged a "lost profit claim."

*Second*, Rule 56 states:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.[51]

Under the plain language of the rule, defendants may move for summary judgment on the ground that the evidence is so weak that a reasonable jury could not render a judgment in plaintiff's favor and thus "the movant is entitled to judgment as a

---

[50] Def. Mem. at 17.

[51] Fed. R. Civ. P. 56(c).

16

matter of law."⁵² However, Rule 56 does not allow a court to dismiss claims for lack of notice.⁵³

*Third*, even if the defendants had made this motion under Rule 8 at the beginning of the litigation, dismissal would still be inappropriate because the Federal Rules do not require a plaintiff to specify the relief sought in the complaint. As Judge Posner has explained:

> Although Rule 8(a)(3) of the civil rules requires that a complaint contain 'a demand for judgment for the relief the pleader seeks,' the demand is not itself a part of the plaintiff's claim, and so failure to specify relief to which the plaintiff was entitled would not warrant dismissal under Rule 12(b)(6) (dismissal for failure to state a claim). ⁵⁴

"Any doubt on this score is dispelled by Rule 54(c), which provides that a prevailing party may obtain any relief to which he's entitled even if he has not demanded such relief in his pleadings."⁵⁵

Rule 54(c) states in full:

---

⁵² *Id.*

⁵³ *See generally* Bradley Scott Shannon, *A Summary Judgment Is Not A Dismissal!*, 56 DRAKE L. REV. 1, 1-15 (2007).

⁵⁴ *Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002) (Posner, J.) (citations omitted).

⁵⁵ *In re IPO*, 241 F. Supp 2d at 323 n.41 (quotation marks, citations and alternations omitted).

17

> A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings. Every other final judgment should grant the relief to which each party is entitled, *even if the party has not demanded that relief in its pleadings.*[56]

Under the plain language of the Federal Rules, a party does not need to demand a particular form of relief in the complaint (*i.e.*, the pleadings). It is sufficient for the plaintiff to give notice of her claims and state that she is seeking relief as may be deemed necessary, just and proper by the Court (*i.e.*, relief to which the party is entitled). Tonneson's complaint satisfies these requirements..

## IV. CONCLUSION

For the reasons above, defendants' motion for summary judgment is denied. The Clerk of the Court is directed to close this motion.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
July 16, 2008

---

[56] Fed. R. Civ. P. 54(c) (emphasis added).

## -Appearances-

**Liaison Counsel for Plaintiffs:**

Robin Greenwald, Esq.
Robert Gordon, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, New York 10038
Tel: (212) 558-5500
Fax: (212) 344-5461

**Counsel for Plaintiffs:**

Michael D. Axline, Esq.
Tracey L. O'Reilly, Esq.
Miller, Axline & Sawyer
1050 Fulton Avenue, Suite 100
Sacramento, California 95825
Tel: (916) 488-6688
Fax: (916) 488-4288

John A. Sarcone III, Esq.
The Sarcone Law Firm
222 Bloomingdale Road, Suite 302
White Plains, New York 10605
Tel: (914) 686-8200
Fax: (914) 686-8988

**Liaison Counsel for Defendants and Counsel for ExxonMobil:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
McDermott Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, New York 10020
Tel: (212) 547-5583

Fax: (212) 547-5444

**Counsel for Defendant Sunoco, Inc. and Sunoco, Inc. (R&M):**

Daniel Krainin, Esq.
Beveridge & Diamond
477 Madison Avenue
New York, New York 10022
Tel: (212) 702-5417
Fax: (212) 702-5450