# Exhibit 9

# CONSOLIDATED, AMENDED AND RESTATED

# MASTER LEASE

DATED AS OF

NOVEMBER 2, 2000

BETWEEN

GETTY PROPERTIES CORP., AS LANDLORD,

AND

GETTY PETROLEUM MARKETING INC., AS TENANT

This CONSOLIDATED, AMENDED AND RESTATED MASTER LEASE (together with all Exhibits and Schedules attached hereto, this "Restated Lease") is made and entered into as of November 2, 2000 between Getty Properties Corp., a Delaware corporation, whose address is 125 Jericho Turnpike, Jericho, New York 11753 (formerly known as Getty Realty Corp.,) (as further defined hereinafter, "Landlord"), and Getty Petroleum Marketing Inc., a Maryland corporation whose address is 125 Jericho Turnpike, Jericho, New York 11753 (as further defined hereinafter, "Tenant").

## RECITALS

A. Pursuant to that certain Master Lease, dated February 1, 1997, between Landlord and Tenant (the "1997 Master Lease") and the Post-Reorganization Leases (as hereinafter defined), Landlord leased to Tenant, in addition to other properties, the lands described in Exhibit A and subleased or sub-subleased to Tenant, in addition to other properties, the lands described on Exhibit B (all such lands described on Exhibit A and Exhibit B being referred to hereinafter collectively as the "Land"), together with all right, title and interest of Landlord, if any, in and to: (a) all buildings, structures and other improvements and appurtenances then located on the Land; (b) the land lying in the bed of any street or highway in front of or adjoining the Land to the center line of such street or highway; (c) the appurtenances and all the estate and rights to the Land; (d) any strips or gores adjoining the Land; and (e) any furnishings, fixtures, equipment or other personal property attached or appurtenant to any improvements then located on the Land (all of the foregoing, as they exist as of the Restatement Effective Date, including all Improvements (as hereinafter defined) together with Landlord's right, title and interest in and to all easements, covenants, rights of way and similar rights benefiting the Land, collectively, the "Premises", as further defined hereinafter, and individually, a "Property," as further defined hereinafter).

B. Landlord and Tenant desire, as of the Restatement Effective Time (as hereinafter defined), to incorporate and consolidate the 1997 Master Lease and the Post-Reorganization Leases (individually and collectively, the "Original Lease") into a single document and to further amend and restate the Original Lease, all as set forth in this Restated Lease and desire that, from and after the Restatement Effective Time, all rights and obligations of Landlord and Tenant shall be governed by this Restated Lease such that this Restated Lease shall consolidate, supersede and restate in their entirety the Original Lease from and after the Restatement Effective Time.

C. This Restated Lease is intended to constitute a single lease of the Premises and may not be severed, bifurcated, divided, or otherwise split in any manner whatsoever.

D. Landlord and Tenant acknowledge that (i) the entering into of this Restated Lease is of primary importance to Tenant, and Tenant would not have entered into (or caused any of its Affiliates or Subsidiaries to enter into) the Merger Agreement (as hereinafter defined) without there having been such an agreement, and (ii) the agreement between Landlord and Tenant to treat this as a single lease in all respects is of primary importance to Landlord, and neither Landlord nor any of its Affiliates or Subsidiaries would have entered into this Restated Lease without there being such an agreement and such treatment of this Restated Lease.

status" or similar terms, even if such letters have qualifications such as "at this time," "does not meet state standards," or the like.

1.11 Commencement Date. The term "Commencement Date" means (a) with respect to those Properties leased or subleased to Tenant by the 1997 Master Lease, February 1, 1997; (b) with respect to those Properties leased to Tenant by the 1998 Master Lease, December 22, 1998 with respect to certain of such Properties and otherwise the date set forth on Exhibit A thereto; (c) with respect to those Properties leased to Tenant by the April 1999 Master Lease, April 6, 1999; and (d) with respect to those Properties leased to Tenant by the September 1999 Master Lease, (i) October 6, 1999 with respect to the Property having a street address of 592 Route 70, Brick, New Jersey and (ii) September 30, 1999 with respect to the Property having a street address of 650 Route 15 South, Lake Hopatcong, New Jersey.

1.12 Condemnation. The term "Condemnation" means any taking of title to any Property or any part of any Property by exercise of any right of eminent domain by, or by any similar proceeding or act of, any Government, quasi-public authority or private corporation having the power and legal authority to do so. For the purposes of this definition, the effective date of any such condemnation shall be deemed to be the later of: (a) the date when title to the applicable Property or part thereof is transferred by such proceeding or act of the condemning authority, and (b) the date when Tenant or the applicable Subtenant or other occupant is no longer permitted to occupy such Property.

1.13 Construction Work. The term "Construction Work" means any alteration, modification, demolition, or other construction or reconstruction work, or the construction or reconstruction of any new Improvements, or repair of any existing Improvements, located on, under or at any Property.

1.14 Contamination. The term "Contamination" means recoverable free liquid hydrocarbons, dissolved hydrocarbon components, absorbed and vapor phase hydrocarbon, or other environmental contamination that is required to be Remediated under applicable Environmental Laws.

1.15 County. The term "County" means the county where any Property is located.

1.16 CPI. The term "CPI" means the United States Department of Labor, Bureau of Labor Statistics "Consumer Price Index" for Urban Wage Earners and Clerical Workers (CPI-W) published for New York - Northern New Jersey - Long Island, NY-NJ-CT-PA, with a base of 1982-1984 = 100, or the successor index thereto. If the CPI ceases to be published, and there is no successor thereto, such other index as Landlord and Tenant shall agree upon in writing shall be substituted for the CPI. The CPI for any calendar month shall be deemed to mean the CPI last published before such calendar month.

1.17 CPI Adjustment Factor. As of any date of determination, the term "CPI Adjustment Factor" means the greater of (a) 1.00 or (b) the following fraction:

accordance with Tenant's reasonable instructions, to perform such work as such person shall reasonably deem necessary or desirable, and as Tenant shall reasonably approve, to preserve and protect the applicable Property from injury or damage and to support the same by proper foundations, or (b) perform or cause to be performed, without cost or expense to Landlord in its capacity as Landlord under this Restated Lease, work of the nature described in clause (a) to the extent reasonably necessary under the circumstances. Tenant shall not, by reason of any excavations or work described in this Section, have any claim against Landlord in its capacity as Landlord under this Restated Lease for damages or for indemnity or for suspension, diminution, abatement or reduction of any Rent or any claim against the owner of any Fee Estate subject to a Third Party Lease or a Power Test Lease with respect to the same.

7.5 Cooperation by Landlord. Upon Tenant's request, subject to the provisions of any Permitted Exception, or any Third Party Lease, Landlord shall, without cost to Landlord, promptly join in and execute and cause the Leemilt's Lessor, the Power Test Lessor and the Gettymart Lessor to join in and execute (or assist Tenant in obtaining the requisite consent of a Third Party Lessor) any instruments including, but not limited to, applications for building permits, demolition permits, alteration permits, consents, zoning, rezoning or use approvals, amendments and variances, easements, encumbrances, and/or liens (excluding Mortgages) against any Property (Fee Estate and Leasehold Estate), and such other instruments as Tenant may from time to time request in connection with Construction Work or to enable Tenant from time to time to use and operate the Premises in accordance with this Restated Lease, provided each of the foregoing is in reasonable and customary form and does not cause the Fee Estate or Landlord's leasehold interest in any Fee Estate owned by a Third Party Lessor, the Leemilt's Lessor, the Power Test Lessor, or the Gettymart Lessor to be encumbered as security for any obligation and does not otherwise expose the Fee Estate or Landlord's leasehold interest in any Fee Estate owned by a Third Party Lessor, the Leemilt's Lessor, the Power Test Lessor, or the Gettymart Lessor, to any material risk of forfeiture during or after the Term or any liens, encumbrances or easements subsequent to Term. Tenant shall reimburse Landlord's Legal Costs and all other actual out-of-pocket costs incurred by Landlord in performing under this Section.

7.6 USTs. Landlord shall complete UST Upgrades for each of the USTs at the Properties set forth on Schedule 2 and, to the extent required by Law, the Property set forth on Exhibit C. Tenant shall be responsible for all repair, maintenance, replacement and removal of all USTs listed on Schedule 2 for which UST Upgrades have been completed and all other USTs at the Premises, except Tenant shall not be responsible for the removal or closure in place of the USTs at the Property set forth on Exhibit C. At the time that an UST Upgrade is completed at a particular Property set forth in Schedule 2 and Exhibit C, except for Landlord's obligations under Section 9.1 to Remediate, if any, Landlord shall no longer have any responsibility or obligation with respect to such UST and Tenant shall be solely responsible therefor. In the event that Tenant exercises the Renewal Option in the First Renewal Term for the Premises pursuant to the express provision of Section 2.1, on or before the first day of such First Renewal Term, Landlord shall by a Bill of Sale (containing a representation by Landlord that it has complied with its UST Upgrade obligations under this Restated Lease) transfer the USTs under the Properties listed on Exhibit C (to the extent such USTs have not already been removed from such Properties) and Schedule 2 to Tenant for nominal consideration, except the foregoing shall not apply to any USTs owned by any Third Party Lessor.

8. PROHIBITED LIENS.

8.1 Tenant's Covenant. If at any time during the Term, whether during the period of construction or reconstruction of buildings, or at any other time, any Prohibited Liens shall be filed against any Property or any part thereof relating to work authorized or approved by Tenant or Subtenant or their respective agents, contractors, or employees in respect of such Property, Tenant shall, at its expenses cause the same to be discharged, by payment, bonding or otherwise as provided by Law, within forty-five (45) days after Tenant receives Notice from Landlord that the Prohibited Lien was filed (but in any case within fifteen (15) days after receipt of Notice from Landlord of commencement of foreclosure proceedings), except for such liens that may have been incurred by Landlord arising from Landlord's, a Third Party Lessor's, the Leemilt's Lessor's, the Power Test Lessor's or the Gettymart Lessor's actions. Nothing herein contained shall in any way prejudice the rights of Tenant to contest to final judgment or decree any such Prohibited Lien prior to payment thereof pursuant to the provisions of Article 11 hereof. The mere existence of a Prohibited Lien shall not be construed as a Non-Material Default under this Restated Lease unless Tenant fails to take action as aforesaid. Should a Prohibited Lien be filed against the Premises or any Property as a result of the actions of Landlord, the Leemilt's Lessor, the Power Test Lessor, or the Gettymart Lessor, Landlord shall, at its sole cost and expense, likewise cause such Prohibited Lien to be cleared of record.

8.2 Protection of Landlord. Notice is hereby given that Landlord shall not be liable for any labor or materials furnished or to be furnished to Tenant upon credit, and that no mechanic's or other lien for any such labor or materials shall attach to or affect the Fee Estate or Landlord's leasehold interest in any Fee Estate subject to a Third Party Lease, the Leemilt's Lease, a Power Test Lease, or the Gettymart Lease. Nothing in this Restated Lease shall be deemed or construed in any way to constitute Landlord's consent or request, express or implied, by inference or otherwise, to any contractor, subcontractor, laborer, equipment or material supplier for the performance of any labor or the furnishing of any materials or equipment for any improvement, alteration or repair of, or to, any Property, or any part thereof , nor as giving Tenant any right, power or authority to contract for, or permit the rendering of, any services, or the furnishing of any materials that would give rise to the filing of any liens against the Fee Estate or Landlord's leasehold interest in any Fee Estate subject to a Third Party Lease, the Leemilt's Lease, or a Power Test Lease, or the Gettymart Lease. Nothing contained in the preceding sentence shall be deemed to require Landlord's consent to such matters. Tenant shall Indemnify Landlord against any Construction Work performed on any Property for or by Tenant, including any Prohibited Lien arising from such Construction Work performed by or on behalf of Tenant or Subtenant or their respective agents, contractors, or employees.

9. ENVIRONMENTAL MATTERS.

9.1 Landlord Remediation. Landlord shall, at Landlord's expense, Remediate the Contamination at or emanating from the Properties set forth on Schedule 3 and any Contamination resulting from the UST Upgrades at the Properties set forth on Schedules 2 and Exhibit C. Landlord's obligation to Remediate Contamination at any of the Properties on Schedule 2, Schedule 3 and Exhibit C shall continue until Closure is obtained for the particular Properties. Landlord shall be entitled to the benefit of any government reimbursement funds that

may be available for such Remediation of Contamination by Landlord. Landlord or its agents shall control administrative efforts to recover such reimbursement at Landlord's sole cost and expense.

9.1.1 Negotiations. Landlord or its agents shall conduct all negotiations with the Government for the Remediation of the Contamination for which Landlord is responsible under Section 9.1; provided, however, Tenant may attend, but not actively participate in any such negotiations, and provided further that Tenant may take such actions as may be necessary to ensure that it can continue to operate the Property, such actions to be at Tenant's sole cost and expense. Landlord shall not negotiate Closure limits less stringent than required by applicable Law. Tenant agrees that it shall not independently negotiate with the Government in connection with Landlord's Remediation of Contamination under Section 9.1. Further, Tenant shall not negotiate Closure limits more stringent than required by applicable Law. Landlord shall provide Tenant with copies of any correspondence or documents it provides to or receives from the Government relating to its Remediation of Contamination under Section 9.1. Tenant shall provide Landlord with copies of any correspondence or documents it provides to or receives from the Government relating to Landlord's Remediation of Contamination under Section 9.1.

9.1.2 New Contamination. If New Contamination is discovered at or emanating from any of the Properties being Remediated by Landlord under Section 9.1, but prior to Closure, Tenant shall make all reporting or notification required by the Environmental Laws, shall promptly notify Landlord, and shall act promptly to minimize the effects of the New Contamination. If Landlord reasonably determines that such New Contamination will make Landlord's Remediation at the applicable Properties more expensive, more difficult or will extend the time required to complete the Remediation, Landlord and Tenant agree to secure promptly the services of an environmental consultant (the "Environmental Consultant"), mutually acceptable to Landlord and Tenant, who shall make an assessment of the Contamination and New Contamination, including the remaining cost to complete Landlord's Remediation absent the New Contamination and an estimate of the cost of the additional work that will be required due to the New Contamination. Based upon this assessment, the Environmental Consultant shall make an apportionment of the costs and Tenant shall begin paying Landlord for the additional expenses incurred by Landlord in remediating the New Contamination. At Tenant's election, and with Landlord's consent, which shall not be unreasonably withheld, Tenant may assume the Remediation of the New Contamination. Further, Landlord and Tenant may negotiate a transfer of the Remediation responsibility for the Contamination and New Contamination from Landlord to Tenant with the costs of such Remediation continuing to be shared between Landlord and Tenant as set forth in this Section. If such transfer of Remediation responsibility is made, Tenant shall execute and deliver to Landlord a release of Remediation liability for the Contamination, and such release shall include an assignment to Tenant of Landlord's rights to

reimbursement from the state reimbursement fund, if any for the applicable Property. Tenant covenants to pay to Landlord within forty-five (45) days of receipt of Notice from Landlord, with evidence of payment by Landlord, all costs associated with Landlord's Remediation of the New Contamination as Remediation work is performed and as invoices for such work are presented to Landlord.

9.1.3 Access. Tenant shall provide for and permit access, at no cost to Landlord, as Landlord and its employees, agents, and contractors may require to each of the Properties under Schedule 2, Schedule 3 and Exhibit C, as is required for Landlord to meet all environmental obligations for Remediation of Contamination or for UST Upgrades. Such access shall include the right to conduct such tests, take such groundwater or soil samples, excavate, remove, dispose of, and treat the soil and groundwater, and undertake such other actions as are necessary in the sole judgment of Landlord. Landlord shall expeditiously remove from the applicable Property as soon as reasonably practicable or as required by Environmental Law all drums containing drill cuttings, soil, debris or liquids generated from Landlord's Remediation or investigation activities. Landlord shall restore the surface and existing structures, if any, on the applicable Premises to a condition substantially similar to that at the time immediately prior to the action taken by Landlord and shall replace or repair damage to Tenant's equipment and personal property on such Property caused by Landlord or its contractors. Landlord shall, to the extent practical, undertake the actions necessary to complete its Remediation of Contamination in a manner that will not unreasonably disrupt the operations of Tenant on the applicable Property. In no event, however, shall Landlord have liability to anyone, including Tenant, for business disruption, lost profits, or consequential damages arising from such actions or access. Landlord or its contractors shall provide Tenant as much advance notice as possible of all potentially disruptive or intrusive activities to be taken on any of the applicable Properties. Such notice may be in the form of a periodic schedule of activities. No advance notice shall be required for non-disruptive activities, such as periodic monitoring of wells. Landlord and Tenant agree to cooperate on the placement and the location of Landlord's Remediation equipment. Any cost or expense to repair or replace monitoring and Remediation equipment resulting from the acts or omissions of Tenant or Subtenant or their respective employees, agents, licensees, invitees, Subtenants and contractors shall be the responsibility of Tenant.

9.1.4 Maintenance of Records. During the course of Landlord's Remediation of Contamination at any of the Properties on Schedule 2, Schedule 3, and Exhibit C, Tenant shall maintain UST inventory and tank line maintenance records for the applicable Premises as required to comply with the Environmental Laws. Landlord shall have the right to review these records as Landlord deems necessary so as to be assured of the integrity of Tenant's UST system at the applicable Properties.

single counsel to represent both Marketing Parent and Tenant is not advisable, (b) the claims and defenses available to Marketing Parent and Tenant with respect to any such claim are not substantially identical, or (c) the inclusion of Marketing Parent as an Indemnitee would cause Landlord to incur more than a de minimis amount of additional cost or expense in discharging its indemnification obligations pursuant to this Article. Notwithstanding anything to the contrary in this Restated Lease, neither party shall be required to Indemnify the other party from or against such other party's intentional acts or negligence.

10.2 Liability of Landlord. Except with respect to the obligations of Landlord pursuant to the Environmental Agreement and Sections 7.6 and 9.1 hereof, Tenant shall be deemed to be in exclusive control and possession of the Premises during the Term as provided in this Restated Lease. Landlord shall not be liable for any injury or damage to any Property or to any Person occurring on or about any Property nor for any injury or damage to any property of Tenant, or of any other person, during the Term, unless caused by Landlord's, the Leemilt's Lessor's, the Power Test Lessor's, or the Gettymart Lessor's wrongful acts and/or omissions or acts of negligence or a breach of Landlord's obligations under this Restated Lease either by Landlord, the Leemilt's Lessor, the Power Test Lessor, the Gettymart Lessor or any of their respective agents, employees, contractors, licensees or invitees. The provisions of this Restated Lease permitting Landlord to enter and inspect any Property are intended to allow Landlord to be informed as to whether Tenant is complying with the agreements, terms, covenants and conditions of this Restated Lease, and to the extent permitted by this Restated Lease, to perform such acts required by Landlord under this Restated Lease and of Tenant if Tenant shall fail to perform. Such provisions shall not be construed to impose upon Landlord any obligation, liability or duty to third parties, but nothing in this Restated Lease shall be construed to exculpate, relieve or Indemnify Landlord from or against any obligation, liability or duty of Landlord to third parties existing at or before the applicable Commencement Date or its obligations arising under Sections 7.6 or 9.1 hereof or the Environmental Agreement.

10.3 Indemnification Procedures. Wherever this Restated Lease requires an Indemnitor to Indemnify an Indemnitee, the following procedures and requirements shall apply:

10.3.1 Prompt Notice. The Indemnitee shall give the Indemnitor prompt Notice of any claim. To the extent, and only to the extent, that both (a) the Indemnitee fails to give prompt Notice and (b) the Indemnitor is thereby prejudiced, the Indemnitor shall, except as otherwise required under a Third Party Lease, be relieved of its indemnity obligations under this Restated Lease.

10.3.2 Selection of Counsel. The Indemnitor shall be required to select counsel reasonably acceptable to the Indemnitee. Counsel to the Indemnitor's insurance carrier shall be deemed satisfactory. Indemnitee may have its own counsel, at Indemnitee's expense, consult with Indemnitor's counsel.

10.3.3 Settlement. The Indemnitor may, with the consent of the Indemnitee, not to be unreasonably withheld, settle the claim, except that no consent by the Indemnitee shall be required as to any settlement by which (x) the Indemnitor procures (by payment, settlement, or otherwise) a release of the

# SCHEDULE 14

## Pending Actions and Proceedings

Category (A) lists matters which Tenant is defending and in which Tenant is named as defendant and also, includes matters in which Realty Parent or its Subsidiaries are also named as defendants and Tenant is defending and indemnifying them.

Category (B) lists matters which either Realty Parent or Landlord is defending in which Tenant or its subsidiaries are named as defendants and Realty Parent or Landlord is defending and indemnifying them.

Category (C) lists insurance matters in which Tenant is named as defendant and also, includes matters in which Realty Parent or its Subsidiaries are also named as defendants and Tenant is defending and indemnifying them. In most instances Tenant's liability insurance is subject to a $500,000 deductible or retention, which is secured by letters of credit in favor of the insurer.

Category (D) lists Realty Parent insurance matters in which Tenant or its subsidiaries are named as defendants and Realty Parent or Landlord is defending and indemnifying them.

**A. Getty Petroleum Marketing Inc. Matters**

1. Puget and DiNobile v. Getty Petroleum Marketing Inc.
   USDC The District of Rhode Island
   C.A. No. 00-460-ML
   PMPA action; enjoining foreclosure

2. Gary Alender and GDA, Inc. v. Getty Petroleum Marketing Inc.
   Judicial District of New Britain
   Docket No. CV-00-0503902S
   Breach of Contract involving renewal of marketing documents

3. Iqbal S. Sabharwal and Gurpal S. Paintal and Khushinder Paintal v. Getty Petroleum Marketing Inc. and Edward G. Wickham, Sr.
   Superior Court of New Jersey, Burlington County Law Division
   Docket No. BUR-L-223-00
   Misrepresentation involving sale of business

4. Michael Craig Clark v. Getty Petroleum Marketing Inc. et al.
   USDC for the Eastern District of Pennsylvania
   Civil Action No.: 00-CV-2784
   Pro se action which is indescribable; motion to dismiss for Company granted and motion to dismiss on behalf of the dealer pending.

**B. Getty Realty Corp. and Getty Properties Corp. Matters**

1. State of New York v. Leemilt's Petroleum, Inc., Power Test Realty Company LP., Getty Petroleum Corp., Kyung Park, Metro Resources, Inc., Robert Chase, Nicholas Bartolomeo, Jr., Rami Segal, and Simon Sakin.
THIRD PARTY ACTION:
Metro Resources, Inc., Robert Chase and Nicholas Bartolomeo, Jr. v. Getty Petroleum Corp., Getty Realty Corp., Getty Petroleum Marketing Inc. et al.
State of New York Supreme Court, County of Albany
Index # L-00078-99; RJI # 01-99-059990.
Spill Fund reimbursement.

2. Federal Financial Co. v. Leemilt's Petroleum, Inc. Getty Properties Corp. f/k/a Getty Realty Corp. f/k/a Getty Petroleum Corp. f'/k/a Power Test Corp. and Getty Petroleum Marketing Inc.
Supreme Court of the State of New York, Nassau County
Index No.: 107/99
Environmental

3. Kara Holding Corp. v. Getty Petroleum Marketing Inc., Getty Properties Corp., Getty Realty Corp., Leemilt's Petroleum, Inc. and The Tyree Organization
THIRD PARTY ACTION: above-named defendants as third-party plaintiffs against Island Transportation Corp. and Xerxes Corporation.
USDC, Southern District of New York
Index No.: 99 Civ 0275
Environmental

4. State of New York v. Charles Baccaro Kingston Oil Supply Corp. and Amos Post, Inc.
State of New York Supreme Court, County of Albany
Index No. 526-92
Environmental

5. George B. Shangraw and Carol A. Shangraw v. Exxon Mobil Corp., Getty Petroleum Marketing Inc., Agway Petroleum Corporation, Shell Oil Corporation, Texaco, Inc., Chevron USA, Inc. and Atlantic Richfield Corp.
USDC, District of Vermont
Index # 00-CV-229
Leukemia death/benzene

6. In the Matter of Alleged Violation of Article 12 of the Navigation Law and Article 17 of the Environmental Conservation Law of the State of New York v. Getty Petroleum Marketing Inc., Getty Realty Corp. and Getty Petroleum Corp.
State of New York, Dept. of Environmental Conservation and Administrative Proceeding
DEC File No. R2-0373-98-02
Notice of Hearing (Environmental)

7. Joseph and Maureen Goffredo v. Village of Ridgefield Park. Frances and Albert Knaub. Getty Petroleum Marketing Inc. and Leemilt's Petroleum. Inc. et al.
Ridgefield Park, NJ #56291
Challenge of use of convenience store to sell restaurant food.

8. The Nathan Barry Company v. Texaco. Inc., Getty Petroleum Corp. and Kimber Petroleum Corp., Superior Court of New Jersey, Law Division, Ocean County, Docket No. OCN-L-2196-99.
Point Pleasant, NJ #56255.
Environmental.

C. **Getty Petroleum Marketing Inc.**

1. Gloria Moreno v. A&S Car Wash. Inc. and Getty Gas Station
Date of Loss: 6/29/98; trip and fall. AIG
Supreme Court of New York, County of Queens,
Index No.: 5149/200

2. Floyd and Doris Miles. claimants
Date of Loss: 1/19/00; fuel spill at residence. AIG/claim only (KOSCO)

3. Nereida Rosario. claimant
Date of Loss: 5/14/99; fall down. AIG/claim only
Bridgeport, CT #06751

4. Mehmet Zor, claimant
Date of Loss: 5/2/99; personal injury. AIG/claim only
N. Plainfield, NJ #665

5. Tina Pellegrini-Knight and Stefiny Knight. a minor v. Samuel C. Hickson. Ryder Truck Rental. Getty Petroleum Marketing Inc. and P T Petro Corp.
Date of Loss: 6/6/97; car accident involving P T Petro truck. AIG/no acknowledgment from defense counsel to date.
Commonwealth of MA, Trial Court of the Commonwealth Superior Court Dept.
Civil Action No. 00516

6. Kenneth Rogers. claimant
Date of Loss: 10/3/99; gun shot/personal injury. AIG/claim only
Springfield, MA #641

7. Warren Pena. claimant
Date of Loss: 1/15/00; assault. AIG/claim only
Falmouth, MA #30631

8. Laurie J. Koronowski. claimant
Date of Loss: 1/31/00; slip and fall on ice. AIG/claim only
McConnellsburg, PA #69690

9. Tyrone V. Gomes, claimant
Date of Loss: 5/98; assault and battery. AIG/claim only
Harwich, MA #30615

10. Jack Shamoun v. Samir J. Karoun and Shotmeyer Brothers Gas Corporation t/a Englewood Getty and Getty Oil Corporation
Date of Loss: 11/1/97; assault and battery. AIG. Englewood, NJ #56852
Superior Court of New Jersey, Bergen County.
Docket BER-L-4773-99

11. Frank Micarelli, Jr. v. Kingston Oil Supply Corp. and John G. Moskaluk
Date of Loss: 1/21/98; truck/auto accident. AIG
Supreme Court of New York, Dutchess County
Index No. 346/2000

12. Beulah St. Gelais, claimant
Date of Loss: 7/30/99; trip and fall. AIG/claim only
#58718

13. My Thach and Triet M. Nguyen v. Si V. Le, Frank McKeon and Getty Insurance Company
Date of Loss: 9/12/97; auto/truck accident. AIG
Bucks County, Court of Common Pleas
No. 99005883-23-2

14. Andrew Pite v. Getty Petroleum Marketing Inc.
Date of Loss: 1/15/99; slip and fall on ice. AIG. West Haven, CT #612
Superior Court, J.D. of Ansonia/Milford
Docket No. CV000069 2825

15. Hilda Dixon v. Getty Petroleum Marketing Inc. and Hussain Shahed
Date of Loss: 3/20/99; fall down. AIG. Albany, NY #00058
Supreme Court of New York, Albany County
Index No. 6816-99

16. Robert and Anna Barrett, claimants
Date of Loss: 8/19/99; personal injury. AIG/claim only
Westboro, MA #30688
Plaintiff's attorney threatened to file suit April 2000; our lessee's carrier denied coverage

17. Dorothy Lassiter, claimant
Date of Loss: 4/13/99; trip and fall. AIG/claim only
Clifton, NJ #56868

18. Gloria F. Coons v. Eckerd Drugs and DBTL Realty Corp.
Date of Loss: 5/2/97; fall down. AIG. Catskill, NY #58764
Supreme Court of New York, Albany County
Index No. 1234-99

19. Carolyn Rhinehart v. P T Petro Corp.
Date of Loss: 6/13/97; auto claim. AIG. New Haven, CT
Superior Court J.D. of New Haven at New Haven
Juris No. 26926

20. Jorge Sosa, claimant
Date of Loss: 1/19/99; slip and fall. AIG/claim only
Bloomfield, CT #6722

21. Michael Thomas, claimant
Date of Loss: 5/22/98; personal injury. AIG/claim only
Jersey City, NJ #56872

22. Dolores H. Furlong, claimant
Date of Loss: 12/14/98; fall down. AIG/claim only (claimant not represented by attorney)
Allentown, PA #67227

23. Michael Vega v. F&D Oil Company, Getty Oil Company, et al.
Date of Loss: 8/6/97; personal injury. AIG
Superior Court of New Jersey, Essex County
Docket L-6969-99

24. Kimberly M. Baril v. Getty Petroleum Marketing Inc.
Date of Loss: 10/16/97; trip and fall. AIG. Bristol, CT #582
Superior Court J.D at New Britain
Docket No. CV 98-0486 90055

25. Florence Duncan and Rodney Duncan v. Arlington Getty and Leemilt's Petroleum, Inc.
Date of Loss: 1/26/00; fall down. AIG/new file; defense counsel not yet assigned.
813 Main Street, Poughkeepsie, NY #157
Supreme Court of New York, Dutchess County.
Index No. 2000/3445

26. Margaret Cybularz and Andrew Cybularz v. Bali Petroleum, Inc., Leemilt's Petroleum, Inc. and Getty Petroleum Marketing Inc.
Date of Loss: o/a 10/10/99; slip and fall. AIG. Old Lincoln Hwy., Trevose, PA 67288
Court of Common Pleas, Bucks County, PA
No. 00003033-16-2

27. Beatrice Nairn v. Bronxdale Auto Care, Inc. and Power Test Realty Company Limited Partnership
Date of Loss: 12/12/98; slip and fall. AIG. Bronx, NY #58154
Supreme Court of New York, Bronx County.
Index No. 8041/00

56. Patricia Smith, claimant
Date of Loss: 3/7/00; personal injury. AIG/claim only
[location not known at this time]

57. Mack Johnson, claimant
Date of Loss: 2/3/00; personal injury. AIG/claim only
Bronx, NY #00115

58. Bakary Cisse, claimant
Date of Loss: 2/3/00; personal injury. AIG/claim only
New York, NY #58409

59. William H. Johnson, claimant
Date of Loss: 7/9/00; trip and fall. AIG/claim only
Shrewsbury, PA #69476 (COSS)

60. Wagiuh Mansaur v. Nagui Auto Care, et al. including Getty Gas Station, Getty Petroleum Corp., Inc., Getty Gas Company, Inc., Getty Petroleum Marketing Inc.
Date of Loss: 10/20/98; auto accident/death claim. #56925
Superior Court of New Jersey, Law Division Hudson County
Docket No. L653100

**D. Getty Realty Corp. and Getty Properties Corp.**

1. Eric Parker v. Getty Petroleum Marketing Inc.
Date of Loss: o/a 3/93; personal injury/illness due to exposure to benzene. Crawford/AIG (AIG asserted reservation of rights re indemnity)
Supreme Court of New York, Nassau County.
Index No. 13785/99

2. Howard Gayle v. PT Petro Corp., Getty Petroleum Corp. and Michael Pulitano
Date of Loss: 11/1/96; auto/truck accident. AIG
Supreme Court of New York, Suffolk County.
Index No. 10900/98

3. Michael J. Miller and Joan Hajeck v. Kingston Oil Supply Corp. and Jeff Swinbourne
Date of Loss: 5/10/93; personal injury resulting from truck's power lift gate dropping on pedestrian. Crawford
Supreme Court of New York, Ulster County.
Index No. 96-636