UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

─────────────────────────────────────────────

| | |
|---|---|
| In Re: Methyl Tertiary Butyl Ether ("MTBE") Productions Liability Litigation | Master File C.A. No. 1:00-1898 (SAS) MDL 1358 |

**This document refers to:**

      All cases.

─────────────────────────────────────────────

### GETTY PETROLEUM MARKETING INC'S
### RESPONSE TO GETTY PROPERTIES CORP.'S
### LOCAL RULE 56.1 STATEMENT AND
### STATEMENT OF ADDITIONAL MATERIAL FACTS

Defendant Getty Petroleum Marketing Inc. ("GPMI") submits the following as and for its response to Defendant Getty Properties Corp.'s ("Properties") Local Rule 56.1 Statement of Undisputed Material Facts and its Statement of Additional Material Facts.

### RESPONSE TO PROPERTIES' STATEMENT OF MATERIAL FACTS

1.    Admitted.

2.    Admitted.

3.    Denied. GPMI admits that the Reorganization Agreement was executed by Properties and GPMI, specifically denies Properties' characterization of the document and respectfully refers the Court to the document to establish the contents thereof. GPMI further specifically denies that, prior to the distribution, Properties was not a fully integrated company involved in the distribution and retail sale of gasoline. (GPMI Ex. "6").

4. Denied. GPMI admits that the Information Statement was furnished by Properties, specifically denies Properties' characterization of the document, and respectfully refers the Court to the document to establish the contents thereof. (GPMI Ex. "5").

5. Denied. GPMI admits that the Reorganization Agreement was executed by Properties and GPMI, creating two distinct companies, but specifically denies Properties' characterization of the document and respectfully refers the Court to the document and the nature of the transaction for the substance thereof. For example, Properties did not divest itself of all petroleum-related assets, retaining a Maryland and Pennsylvania-based home heating oil business. (GPMI Ex. "5").

6. Denied. Upon the formation of GPMI, consistent with the Information Statement, 100% of the outstanding GPMI common stock shares were distributed to the holders of Getty Common Stock.

7. Denied. GPMI admits that the Information Statement was furnished by Properties, specifically denies Properties' characterization of the document and the transaction, and respectfully refers the Court to the document to establish the substance thereof. GPMI admits that Properties transferred to GPMI a substantial portion of its "Marketing Business," as that term is defined in the Reorganization Agreement, but retained certain petroleum marketing business assets, such as a Maryland and Pennsylvania-based home heating oil business. (GPMI Ex. "6").

8. Denied. GPMI admits that the March 13, 1997 Liebowitz letter was issued to the stockholders of Getty Petroleum Corp., specifically denies Properties' characterization of the document and respectfully refers the Court to the document to establish the substance thereof. (McGahren Dec., Ex. "F").

9. Denies except admits that Getty Petroleum Corp. transmitted a letter to the IRS dated March 12, 1996 and respectfully refers the Court to said document to establish the substance thereof. (McGahren Dec., Ex. "E").

10. Denies except admits that Getty Petroleum Corp. transmitted a letter to the IRS dated March 12, 1996 and respectfully refers the Court to said document to establish the substance thereof. (McGahren Dec., Ex. "E").

11. Denied. GPMI admits that the Reorganization Agreement was executed by Properties and GPMI, admits that Getty Petroleum transferred significant, but not all, marketing assets to GPMI and denies Properties' characterization of the document and respectfully refers the Court to the document to establish the terms thereof. (GPMI Ex. "6").

12. Denied. GPMI admits that the Reorganization Agreement was executed by Properties and GPMI, admits that certain "Marketing Equipment," as defined in the agreement, was transferred to GPMI, specifically denies Properties' characterization of the document and respectfully refers the Court to the document to establish the contents thereof. (GPMI Ex. "6").

13. Denied. GPMI admits that, pursuant to the terms of the agreement, GPMI acquired specific assets detailed in the agreement and respectfully refers the Court to the document to establish the terms thereof. (GPMI Ex. "6").

14. Denied. GPMI admits that the definition provided is contained in the Reorganization Agreement. (GPMI Ex. "6").

15. Denied. GPMI admits that the 1997 Master Lease was executed by Properties and GPMI, specifically denies Properties' characterization of the document and respectfully refers the Court to the document to establish the contents thereof. (GPMI Ex. "7").

16. Admitted.

17. Admitted.

18. Denied on the grounds that prior to the Spinoff transaction, Getty Petroleum operated a fully integrated petroleum distribution and retail business which included ownership and leasehold interests in terminal and gasoline station sites. GPMI admits that the Reorganization Agreement was executed by Properties and GPMI, and respectfully refers the Court to the document to establish the contents thereof. (GPMI Ex. "6").

19. Admitted.

20. Denied. GPMI admits that the cited definition is a mere portion of the definition of the term "Marketing Liabilities" in the 1997 Reorganization Agreement and respectfully refers the Court to the agreement to establish the complete and accurate substance thereof. (GPMI Ex. "6").

21. Denied. The cited provision does not so provide. (GPMI Ex. "6," § 3.01).

22. Denied. GPMI admits that the cited definition is a portion of the definition of the term "Marketing Liabilities" in the 1997 Reorganization Agreement and respectfully refers the Court to the document to establish the complete and accurate substance thereof. (GPMI Ex. "6").

23. Denied. GPMI respectfully refers the Court to the Information Statement, and the Reorganization Agreement and Master Lease to which it refers, to establish the complete and accurate substance of said documents. (GPMI Exs. "5," "6," and "7").

24. Denied. GPMI admits that the Information Statement was furnished by Properties, specifically denies Properties' characterization of the document, and respectfully refers the Court to the document, and the underlying documents to which it refers, to establish the complete and accurate substance thereof. (GPMI Ex. "5").

25. Denied. GPMI admits that the Information Statement was furnished by Properties, specifically denies Properties' characterization of the document, and respectfully refers the Court to the document, and the underlying documents to which it refers, to establish the complete and accurate substance thereof. (GPMI Ex. "5").

26. GPMI admits that the 1997 Reorganization Agreement and Master Lease, as well as the 2000 Amended Master Lease and Environmental Indemnity Agreement which were executed by Properties and GPMI, specifically allocated environmental liabilities between the parties. GPMI respectfully refers the Court to these documents to establish the substance thereof. (GPMI Exs. "6," "7," "9," and "10").

27. Denied. GPMI admits that the 1997 Reorganization Agreement and Master Lease, as well as the 2000 Amended Master Lease and Environmental Indemnity Agreement which were executed by Properties and GPMI, specifically allocated environmental liabilities between the parties. GPMI respectfully refers the Court to these documents to establish the substance thereof. (GPMI Exs. "6," "7," "9," and "10").

28. Denied. GPMI admits that the Information Statement was drafted by Properties, specifically denies Properties' characterization of the document, and respectfully directs the Court to the document, and the documents to which it refers, to establish the substance thereof. (GPMI Ex. "5").

29. Denied. GPMI admits that the IRS letter was transmitted by Properties, specifically denies Properties' characterization of the document, and respectfully refers the Court to the document to establish the substance thereof. (McGahren Dec., Ex. "E").

30. GPMI admits that the term "Indemnified Environmental Liabilities" is defined in the Reorganization Agreement as set forth in Properties' statement and otherwise denies paragraph 30 of the statement. (GPMI Ex. "6").

31. Admits that the 734 Broadway Station site is not a Schedule 1.07(b) site listed in the Master Lease or a Schedule "D" or "E" Site in the 1997 Master Lease but denies that GPMI is liable for any claims related thereto. GPMI respectfully refers the Court to the 2000 Amended Master Lease and Indemnity Agreement to establish the parties' respective liabilities thereunder. (GPMI Exs. "9" and "10").

32. Admitted, except GPMI asserts that this site was closed or otherwise disposed of and never transferred to GPMI and therefore, pursuant to the terms of the Environmental Indemnity Agreement, Properties retained liability therefore. (GPMI Ex. "10," Section 10).

33. Denied. GPMI admits that the Reorganization Agreement was executed by Properties and GPMI, that Properties retained liability for "Retained Liabilities," specifically denies Properties' characterization of the document and respectfully refers the Court to the document to establish the complete and accurate substance thereof. (GPMI Ex. "6").

34. Denied. GPMI admits that the Reorganization Agreement was executed by Properties and GPMI, that GPMI retained liability for "Marketing Liabilities" as defined therein, specifically denies Properties' characterization of the document and respectfully refers the Court to the document to establish the substance thereof. (GPMI Ex. "6").

35. Admitted. Additional relevant provisions of the Master Lease are annexed to the Harrington Declaration as Exhibit "7."

36. Denied, except admits that pursuant to the Master Lease, Properties leased or subleased to GPMI certain terminal and gasoline service station sites and respectfully refers the Court to the Master Lease to establish the substance thereof. (GPMI Ex. "7").

37. Denied. GPMI admits that the 1997 Master Lease was executed by Properties and GPMI, that the respective parties retained certain liabilities thereunder, specifically denies Properties' characterization of the document and respectfully refers the Court to the document to establish the substance thereof. (GPMI Ex. "7").

38. Admitted. Additional relevant provisions of the Amended Master Lease are annexed to the Harrington Declaration as Exhibit "9."

39. Denied. The Amended Master Lease obligated Properties to assume liability for all claims related to various categories of sites specified in the Amended Master Lease and related 2000 Environmental Indemnity Agreement. GPMI respectfully refers the Court to said documents to establish the terms thereof. (GPMI Ex. "9").

40 GPMI admits that GPMI and Properties entered into an Environmental Indemnity Agreement and respectfully refers the Court to the document to establish the substance thereof. Additional relevant provisions of the document are annexed to the Harrington Declaration as Exhibit "10."

41. Denied. GPMI admits that GPMI and Properties entered into the Environmental Indemnity Agreement,, specifically denies Properties' characterization of the entire document to establish the complete and accurate substance thereof. (GPMI Ex. "10").

42. Denied. GPMI admits that since 1997 it has operated a petroleum distribution and marketing business consisting predominantly of assets acquired and/or leased from Properties. Pursuant to the Amended Master Lease and Licensing Agreement between the parties, the real

estate and Getty trademark assets shall revert to Properties upon the termination of the Master Lease and License Agreement. (GPMI Ex. "4," p. 14). GPMI admits that the Information Statement was furnished by Properties, specifically denies Properties' characterization of the document, and respectfully refers the Court to the document, as the agreements to which it refers, to establish the substance thereof. (GPMI Ex. "5").

43. GPMI admits that, from its creation in March 1997, GPMI has been a regional gasoline distributor in the Northeast and Mid-Atlantic states and otherwise denies the statement.

44. GPMI admits that the statement accurately describes a portion of GPMI's business operation but denies that it is an accurate description of GPMI's business operations.

45. Denied. (GPMI Memorandum of Law, Section IV(B)).

46. Admitted.

47. GPMI admits that prior to 1992, Getty Petroleum Corp. leased office space, a two bay garage and parking area at the Northville Terminal in Setauket, New York but terminated the lease in or about November 1992. (Guarino Dec.).

48. Denied. GPMI denies that Getty Terminals Corp. operated the terminal at 19 Terminal Road after December 1992, at which time Getty Petroleum Corp. and/or Getty Terminals Corp. terminated the lease for this site. (Guarino Dec.).

49. Denied. GPMI is not responsible for discharges from the 19 Terminal Road property because the property was closed, sold or otherwise disposed of prior to GPMI's formation. (GPMI Ex. "10,", ¶ IV (1)).

## STATEMENT OF ADDITIONAL MATERIAL FACTS

50. In 1985, PowerTest Corp., a Long Island-based gasoline distributor and retailer, acquired from Texaco Inc. the "Getty" brand, and certain Getty marketing assets (terminals and gasoline stations) located in the Northeast and Mid-Atlantic states.

51. PowerTest changed its name to Getty Petroleum Corporation ("Getty Petroleum") and operated its expanded gasoline distribution and retail business.

52. In March 1997, Getty Petroleum created and transferred to GPMI certain non-real estate petroleum distribution and marketing assets. (McGahren Dec., Ex. "J," ¶ 3).

53. Getty Petroleum retained title to the gasoline-related real estate assets (terminals, service stations, etc.) and a Maryland and Pennsylvania-based home heating oil business (GPMI Ex. "6," p. 1), as well as the rights to the "Getty" trademark (GPMI Ex. "4").

54. In 1997 Getty Petroleum transformed itself into a publicly traded REIT, changing its name to Getty Realty Corp. and ultimately Getty Properties Corp. (McGahren Dec., Ex. "J," ¶ 3).

55. Properties is the largest publicly traded real estate investment trust specializing in the ownership and leasing of service stations, convenience stores and petroleum distribution terminals in the United States. (GPMI Ex. "2"; www.gettyrealty.com).

56. Properties owns or leases over 1,050 service stations and convenience stores and nine petroleum distribution terminals in 13 states. (GPMI Ex. "2"; www.gettyrealty.com).

57. In 2005 Properties "celebrated its 50th anniversary in the [gasoline] business, 20th anniversary on the New York Stock Exchange and 5th year as a real estate investment trust." (GPMI Ex. "3," p. 2).

58. Properties continues to own the "Getty" trademark and licenses same to GPMI

9

pursuant to a license agreement. (GPMI Ex. "4").

59. Properties expressly retained its "home heating oil business in Pennsylvania and Maryland." (GPMI Ex. "5," p. 9; Ex. "6," p. 1).

60. Prior to the GPMI transaction, Properties engaged in the "divestment of non strategic and uneconomic retail outlets," leaving it with a "strategic core of more than 1,100 properties." (GPMI Ex. "1," p. 6). Properties divested itself of approximately 1,000 terminals and/or gasoline station locations. These divested sites were never leased to GPMI. (Stendardi Dec., ¶ 5; GPMI Ex. "12").

61. GPMI and Properties executed the Reorganization and Distribution Agreement. (GPMI Ex. 6).

62 Pursuant to Article 3.01 of the Reorganization Agreement, GPMI assumed the "Marketing Liabilities" and Properties (described as "Getty") retained the "Retained Liabilities" as those terms are defined in the Reorganization Agreement. (GPMI Ex. "6," p. 21).

63. GPMI and Properties executed the 1997 Master Lease. (GPMI Ex. 7).

64. Under the Master Lease, Properties leased to GPMI only those specific gasoline properties identified in Exhibits A and B thereto as of the Commencement Date (February 1, 1997). (GPMI Ex. "7," p. 1, ¶¶ A, B).

65. 1,037 terminals and/or stations were leased to GPMI under the Master Lease. (GPMI Ex. "5," p. 15).

66. Pursuant to paragraph 7.6 of the Master Lease, Properties retained liability for 473 leased stations (Exhibit "D" Sites) until Properties upgraded the UST systems to comply with the enhanced 1998 EPA UST regulations, at which time responsibility for these UST systems was transferred to GPMI, "except for Landlord's obligation under Paragraph 9.3 to remediate."

(GPMI Ex. "7," p. 13).

67. Pursuant to paragraph 9.3 of the Master Lease, Properties retained ongoing and future obligations with respect to "Exhibit E" sites: 694 leased sites which contained existing environmental contamination requiring remediation. (GPMI Ex. "7," p. 15)

68. Of the original 1,037 sites leased to GPMI (GPMI Ex. "5'" p. 15), Properties expressly retained liability, and agreed to indemnify GPMI, for at least 694 sites (Schedule "D" and "E" Sites). (GPMI Ex. "7," p. 15).

69. Pursuant to the Reorganization Agreement, GPMI maintains the Getty Petroleum books and records in the event Properties required access to same to defend claims or lawsuits arising from these "Retained Liabilities." (GPMI Ex. "6," p. 33, § 7.02).

70. Properties issued the 1997 Information Statement. (GPMI Ex. "5").

71. In an unrelated lawsuit between the parties now pending in New Jersey state court, Leo Liebowitz, Properties' Chairman and CEO, testified that "GPMI had no liabilities at the time of the transfer of assets" and that "it was the [Properties'] board of directors and management's intention to form <u>this new corporate entity. That was Lily White, no liabilities</u>." (GPMI Ex. "8," p. 20, l. 5-11).

72. Properties issued its 1997 Annual Report. (GPMI Ex. "1").

73. GPMI and Properties executed the 2000 Consolidated, Amended and Restated Master Lease. (GPMI Ex. "9," p. 1).

74. As of November 2000, Properties retained liability to remediate at least the 408 sites reflected on Schedule 3 (12 of which are located in Suffolk County), as well as the remaining properties listed on Schedule 2 and Exhibit C. (GPMI Ex. "9," Sch. 2, 3 and Ex. C.).

75. GPMI and Properties executed the November 2, 2000 Environmental Indemnity

11

Agreement. (GPMI Ex. "10").

76. There are over 1,000 terminals and service stations "closed, sold or otherwise disposed of" (i) before the February 1, 1997 to GPMI Spinoff and (ii) between February 1, 1997 and November 2, 2000 Lukoil transaction for which Properties retains liability; 44 of which are located in Suffolk County. (Stendardi Dec., ¶ 5; GPMI Ex. "12," pp. 13, 18).

77. GPMI and Properties executed the Amended and Restated Trademark License Agreement. (GPMI Ex. "4").

78. Under the License Agreement, Properties expressly retained "control of the nature and quality of goods, services and related uses associated with the Licensed Marks." (GPMI Ex. "4," p. 8). The License Agreement requires GPMI to comply with Properties' written "Quality Standards" for petroleum products and station operations. (*Id.,* pp. 6-8 and Schedule B thereto). Properties expressly reserved the right to conduct periodic inspections of GPMI stations and to receive specimen samples of gasoline for testing. (*Id.,* p. 8).

79. Upon expiration of the License Agreement, the "Getty" trademark and all the real estate marketing assets revert back to Properties. (*Id.,* p. 14).

Dated: White Plains, New York
July 17, 2008

            BLEAKLEY PLATT & SCHMIDT, LLP

         BY:_____/s William P. Harrington_____
           WILLIAM P. HARRINGTON (WH-5262)
           MATTHEW G. PARISI (MP-2188)
           *Attorneys for GPMI*
           ONE NORTH LEXINGTON AVENUE
           P.O. BOX 5056
           WHITE PLAINS, NY 10602-5056
           (914) 949-2700