UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
:
IN RE: METHYL TERTIARY BUTYL :
ETHER ("MTBE") PRODUCTS : OPINION AND ORDER
LIABILITY LITIGATION :
:
-------------------------------------------------------- : Master File No. 1:00-1898
: MDL 1358 (SAS)
This document relates to: : M21-88
:
*Tonneson, et al. v. Sunoco, Inc., et al.*, 03 :
Civ. 8284
*Basso, et al. v. Sunoco, Inc., et al.*, 03 Civ. :
9050 :
:
-------------------------------------------------------- X

SHIRA A. SCHEINDLIN, U.S.D.J.:

I. INTRODUCTION

The plaintiffs in these cases, residents and business owners in the

In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation — Doc. 2180

hamlet of Fort Montgomery, New York, live in the vicinity of two gasoline

stations — a Sunoco station and a privately owned Mobil-branded station —

found or suspected to have leaked gasoline containing methyl tertiary butyl ether

("MTBE") into the soil. After water from plaintiffs' private wells tested positive

for contamination with MTBE, a chemical compound that certain companies

began adding to gasoline in 1979,[1] plaintiffs brought these actions against the gas

---

[1] *See* Application for Methyl Tertiary Butyl Ether, Decision of the Administrator, 44 Fed. Reg. 12,242, 12,243 (Mar. 6, 1979).

1



station owners and suppliers for strict product liability, negligence, trespass, nuisance, intentional interference with the right to appropriate water resources, unfair competition under New York General Business Law, outrageous conduct causing the infliction of emotional distress, and violation of Article Twelve of the New York State Navigation Law under negligence, strict liability and nuisance theories.

Defendants ExxonMobil Corporation ("Mobil") and Sunoco Inc. ("Sunoco") now move for summary judgment on certain claims brought by three classes of plaintiffs: Mobil contends that the class of plaintiffs living near the Sunoco station failed to adduce sufficient evidence that Mobil caused MTBE contamination on their properties; Sunoco contends that a separate class of plaintiffs living near the Mobil station failed to adduce sufficient evidence that Sunoco caused MTBE contamination on their properties; both defendants contend that the DeSpirito plaintiffs failed to adduce sufficient evidence of MTBE contamination by either defendant. For the reasons set out below, defendants' motions are granted.

## II. BACKGROUND[2]

---

[2] For more discussion of the factual background of these cases, see *In re Methyl Tertiary Butyl Ether Products Liability Litigation*, 528 F. Supp. 2d 303, 305-08 (S.D.N.Y. 2007).

In 2000, testing revealed MTBE contamination in nearly fifty private residential wells in the hamlet of Fort Montgomery, New York.[3] State and private investigations of the contamination centered around two gas stations as potential sources: a Sunoco station and a privately owned Mobil-branded station.[4] A number of homes that obtain water from private wells in Fort Montgomery are located within a quarter of a mile of the Sunoco station, and in close proximity to the Mobil station.[5]

To determine the sources of the MTBE contaminations, Mobil, Sunoco and plaintiffs each retained separate hydrogeology experts. According to plaintiffs' expert Dr. Stepen W. Wheatcraft, there are two major MTBE plumes[6] in the Fort Montgomery area: a larger plume emanating from the Sunoco station and

---

[3] *See id.* at 306.

[4] *See id.*

[5] *See id.*

[6] For a definition of a "plume," see *In re Methyl Tertiary Butyl Ether Products Liability Litigation* ("*MTBE Causation*"), No. 00-CV-1898, 2008 WL 2047611 (S.D.N.Y. May 13, 2008) ("As rain and other water move through the soil, water-soluble contaminants may be carried along with the moving water. The region of contamination created by such a water flow is called a 'plume.'" (quotation marks omitted)).

3

a smaller plume emanating from the Mobil station.[7] Dr. Wheatcraft concluded that these Sunoco and Mobil plumes caused the MTBE contaminations found in plaintiffs' wells.[8] However, Dr. Wheatcraft noted that "[b]etween the Sunoco and Mobil stations, there has been a significant area where monitoring wells have been consistently sampled and found to have no MTBE present."[9] Dr. Wheatcraft concluded, therefore, that "the Sunoco and Mobil stations represent *two physically separate and distinct plumes.*"[10] In accordance with this conclusion, Dr. Wheatcraft attempted to determine whether the Sunoco station or the Mobil station was the likely source for the MTBE contamination found on each of plaintiffs' properties. Dr. Wheatcraft opined that the Mobil station was the likely source of MTBE contamination for the Boyce and Burley family properties in the *Tonneson* action and the Bogardus, Buchholz and Camacho/Guadalupe family properties in the *Basso* action (collectively, the "Mobil plaintiffs").[11] Dr. Wheatcraft opined

---

[7] *See* 3/2/07 Expert Report of Stephen W. Wheatcraft ("Wheatcraft Report") at 7, Ex. A to Declaration of Stephen J. Riccardulli in Support of Defendants' Motion for Summary Judgment on Certain Plaintiffs' Claims for Lack of Causation ("Riccardulli Decl.").

[8] *See id.* at 32.

[9] *Id.* at 33.

[10] *Id.* at 7, 33 (emphasis added).

[11] *See id.* at 40, 41, 52, 53.

4

that the Sunoco station was the likely source of MTBE contamination for the Gee, Gibney, Hanningan, Hay, Hubeny, Stanley, Tonneson/Hudson Highlands and Zervas family properties in the *Tonneson* action and the Schrieve family property in the *Basso* action (collectively, the "Sunoco plaintiffs").[12] At deposition, Dr. Wheatcraft confirmed that it was not his opinion that the Mobil station was a likely source of contamination for the properties owned by the Sunoco plaintiffs.[13]

Sunoco retained Steven C. Hart as an expert hydrogeologist. Like Dr. Wheatcraft, Mr. Hart identified the Mobil station as a likely source of contamination for the Mobil plaintiffs' properties but no other properties.[14] Similarly, he did not identify the Sunoco station as a likely source for the contamination found on the Mobil plaintiffs' properties. Because Mr. Hart did not conduct a well-by-well analysis to determine whether there was commingling

---

[12] *See id.* at 42, 44-49; 4/27/07 Addendum to Expert Report of Stephen W. Wheatcraft, Ex. B to Riccardulli Decl. at 5.

[13] *See* 2/26/08 Deposition of Stephen W. Wheatcraft at 264, Ex. L to Riccardulli Decl. ("Q: Other than Burley, Bogardus, Buchholz, Camacho, and Boyce [i.e., the Mobil plaintiffs], do you suggest that the Mobil service station in Fort Montgomery is the source of contamination in the wells of any other plaintiffs in the Tonneson and Basso case? [Dr. Wheatcraft]: No.").

[14] *See* 3/25/08 Expert Report and Deposition of Steven C. Hart ("Hart Report") at 32-35, Ex. C to Declaration of Jennifer Kalnins Temple in Support of Defendants' Reply Memorandum in Support of Defendants' Motion for Summary Judgment on Certain Plaintiffs' Claims for Lack of Causation ("Temple Decl.").

between the Mobil and Sunoco plumes, Mr. Hart expressed "no opinion on whether the two plumes [were] physically separate or commingled."[15] Finally, Mr. Hart noted that no MTBE detections had been found in the DeSpirito family well and opined that the DeSpirito well had not been, and would not be, impacted from MTBE releases at the Sunoco station.[16]

William Morse, Sunoco's in-house environmental engineer assigned to the Ft. Montgomery station, testified during his deposition that, in light of the groundwater structure in Fort Montgomery, it was "possible" that MTBE released from the Mobil station contaminated the Sunoco plaintiffs' properties and it was "possible" that MTBE released from the Sunoco station contaminated the Mobil plaintiffs' properties.[17] Gary Trombly, the project manager for Sunoco's environmental consultant, stated that after investigating whether releases from the Mobil station may have been a source of MTBE contamination in the Sunoco area, he concluded that the size of the Mobil releases was "somewhat limited" and offered no opinion on whether the Mobil station was a likely source of

---

[15] *Id.* at 276.

[16] *See id.* at 32.

[17] *See* 10/4/06 Deposition of William Morse at 53-54, Ex. 11 to Declaration of Tracy L. O'Reilly in Support of Plaintiffs' Opposition to Defendant ExxonMobil Corporation's Motion for Summary Judgment on Certain Plaintiffs' Claims for Lack of Causation ("O'Reilly Decl.").

contamination in the Sunoco area.[18] Ted Masters testied that EnviroTrac, a company hired by the State of New York to conduct MTBE tests in the area, did not conduct any analysis of the MTBE contamination associated with the Mobil station.[19]

Mobil now moves for summary judgement on all claims brought by the Sunoco plaintiffs against Mobil; Sunoco moves for summary judgment on all claims brought by the Mobil plaintiffs against Sunoco; both Sunoco and Mobil move for summary judgment on all claims brought by the DeSpirito family.

## III. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[20] An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the

---

[18] *See* 2/1/07 Deposition of Gary Trombly, Jr. at 270, Ex. 12 to O'Reilly Decl.

[19] *See* 1/11/07 Deposition of Ted Masters, Ex. 14 to O'Reilly Decl.

[20] Fed. R. Civ. P. 56(c).

7

nonmoving party.'"[21] A fact is material when it "'might affect the outcome of the suit under the governing law.'"[22]

The party moving for summary judgment bears the burden of showing the absence of any factual dispute.[23] In turn, to defeat summary judgment, the non-moving party must raise an issue of material fact by putting forth "sufficient evidence supporting the claimed factual dispute...to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"[24] The non-moving party "'may not rely on conclusory allegations or unsubstantiated speculation.'"[25] When deciding a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party.[26] "If there is any evidence in the

---

[21] *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quoting *Stuart v. American Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998)).

[22] *Bouboulis v. Transport Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).

[23] *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

[24] *McClellan*, 439 F.3d at 144 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)).

[25] *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2002)).

[26] *See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 456 (2d Cir. 2007).

8

record that could reasonably support a jury's verdict for the non-moving party," summary judgment is inappropriate.[27]

## IV. APPLICABLE LAW

Plaintiffs bear the burden of proving causation, like every other element of a prima facie case, by a preponderance of the evidence.[28] Under the traditional theory of causation[29] in New York law, "identification of the exact defendant whose product injured the plaintiff is . . . generally required."[30] "The identity of the manufacturer of a defective product may be established by circumstantial evidence," but such evidence cannot be "speculative or

---

[27] *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citing *Pinto v. Allstate Inc. Co.*, 221 F.3d 394, 398 (2d Cir. 2000)).

[28] *See* Restatement (Second) of Torts § 433 (1977); *MTBE Causation*, 2008 WL 2047611, at *3.

[29] In *MTBE Causation*, I discussed the distinction under New York law between the traditional theory of causation and alternative theories of causation, such as the "commingled theory" and the "market share" theory of liability. *MTBE Causation*, 2008 WL 2047611, at *8-9. The commingled theory applies where "the gasoline that has contaminated plaintiffs' wells was undeniably the commingled product of numerous manufacturers." *Id.* at * 9. Here, the plaintiffs have stipulated that there was no manufacture commingling between the Sunoco and Mobil gasolines, so the commingled theory does not apply. *See* 9/5/08 Stipulation Regarding Defendants' Motion for Summary Judgment Re: Causation, Ex. K to Riccardulli Decl. Similarly, plaintiffs do not argue that the market share theory applies. Rather, plaintiffs rely on the traditional theory of causation.

[30] *Healey v. Firestone Tire & Rubber Co.*, 87 N.Y.2d 596, 601 (1996).

9

conjectural."[31] And "the circumstantial evidence . . . must establish that it is *reasonably probable, not merely possible or evenly balanced*, that the defendant was the source of the offending product."[32]

## V. DISCUSSION

Plaintiffs have not provided sufficient evidence to allow a reasonable jury to conclude that it is reasonably probable that Mobil caused an injury to the Sunoco plaintiffs or that Sunoco caused an injury to the Mobil plaintiffs. Plaintiffs' expert hydrogeologist, Dr. Wheatcraft, concluded that there were two "physically separate and distinct" MTBE plumes emanating from the Sunoco and Mobil stations, which had not commingled.[33] He opined that the only likely source for the Sunoco plaintiffs' contamination was the Sunoco station and that the only likely source for the Mobil plaintiffs' contamination was the Mobil station.

In an attempt to rebut their own expert's conclusion, plaintiffs rely on three pieces of evidence. *First*, they rely on the testimony of Messrs. Hart, Morse, Trombly, and Masters. However, as discussed above, Messrs. Hart and Morse

---

[31] *Id.*

[32] *Id.* at 601-02 (emphasis added).

[33] Wheatcraft Report at 7, 33.

10

expressed no view on whether the plumes were separate or commingled; Mr. Trombly stated only that it was "possible" that the Mobil plume contaminated the Sunoco properties; and Mr. Masters never investigated the Mobil station. Taken together, and assuming its truth, the foregoing testimony establishes only that it was "possible" that releases from the Mobil station contaminated the Sunoco plaintiffs' properties. Under New York law, more is required: plaintiffs must adduce sufficient evidence to allow a jury to conclude that "it is reasonably probable, not merely possible or evenly balanced, that the defendant was the source of the offending product."[34] No expert so testified.

*Second*, in an attempt to argue that Mobil-released MTBE likely spread through the entire Fort Montgomery groundwater system, plaintiffs cite to test results showing significant levels of MTBE contamination in the Mobil plaintiffs' wells and to Dr. Wheatcraft's testimony that MTBE travels easily through groundwater. The difficulty with this argument is that plaintiffs' expert, Dr. Wheatcraft, was aware of this evidence and still concluded that the plumes were physically separate and distinct. Thus, this evidence does not give rise to a genuine dispute of material fact.

---

[34] *Healey*, 87 N.Y.2d at 601-02.

11

*Third*, plaintiffs argue that Dr. Wheatcraft's testimony was based on incomplete evidence, both because MTBE testing can return negative results for contaminated wells and because Dr. Wheatcraft's testimony is now outdated and cannot account for current conditions in Fort Montgomery. Beyond the fact that plaintiffs have not pointed to any recent testing results that would have altered Dr. Wheatcraft's conclusions, and have not sought to redepose Dr. Wheatcraft based on any such evidence, plaintiffs seem to misunderstand the proper allocation of the burden of proof on causation. Contrary to plaintiffs' assertion, defendants do *not* need to "establish that the Sunoco station is the only possible source for contamination of [the Mobil] plaintiffs' properties."[35] Rather, plaintiffs bear the burden of adducing sufficient evidence to allow a reasonable jury to conclude that it was reasonably probable that the Mobil station caused the Sunoco plaintiffs' injuries and that the Sunoco station caused the Mobil plaintiffs' injuries. Plaintiffs have adduced no such evidence. Therefore, defendants' motion for summary judgment on these claims is granted. Finally, because plaintiffs have not attempted to rebut defendants' evidence that the DeSpirito family suffered no injury, summary judgment on this claim is granted as well.

---

[35] 11/18/08 Plaintiffs' Opposition to Defendant ExxonMobil Corporation's Motion for Summary Judgment on Certain Plaintiffs' Claims for Lack of Causation, at 6.

## VI. CONCLUSION

For the foregoing reasons, defendants' motion is granted. The Clerk of the Court is directed to close this motion (docket #2072).

SO ORDERED:

*[signature]*

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
December 9, 2008

## -Appearances-

### Liaison Counsel for Plaintiffs:

Robin Greenwald, Esq.
Robert Gordon, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, New York 10038
Tel: (212) 558-5500
Fax: (212) 344-5461

### Counsel for Plaintiffs:

Michael D. Axline, Esq.
Tracey L. O'Reilly, Esq.
Miller, Axline & Sawyer
1050 Fulton Avenue, Suite 100
Sacramento, California 95825
Tel: (916) 488-6688
Fax: (916) 488-4288

John A. Sarcone III, Esq.
The Sarcone Law Firm
222 Bloomingdale Road, Suite 302
White Plains, New York 10605
Tel: (914) 686-8200
Fax: (914) 686-8988

### Liaison Counsel for Defendants and Counsel for ExxonMobil and on Behalf of Sunoco, Inc. and Sunoco, Inc. (R&M):

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
Anthony A. Bongiorno
McDermott Will & Emery LLP
50 Rockefeller Plaza, 11th Floor

New York, New York 10020
Tel: (212) 547-5583
Fax: (212) 547-5444

Anthony A. Bongiorno
McDermott Will & Emery LLP
28 State Street
Boston, MA 02109
(617) 535-4000