UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

In Re: Methyl Tertiary Butyl Ether ("MTBE")          Master File C.A. No.
Products Liability Litigation                                    1:00-1898 (SAS)
                                                                          MDL 1358
_____

*This Document Relates to:*

*Basso, et al. v. Sunoco, Inc., et al.*, No. 03-Civ-9050
*Tonneson, et al. v. Sunoco, Inc., et al.*, No. 03-Civ-8248

**EXXON MOBIL CORPORATION'S PROPOSED JURY INSTRUCTIONS**

Pursuant to CMO 35 and Rule 51 of the Federal Rules of Civil Procedure, Exxon Mobil Corporation ("ExxonMobil") proposes the following preliminary and final jury instructions. ExxonMobil's proposed preliminary jury instructions are set forth in Section I. Proposed final jury instructions are set forth in Section II. ExxonMobil reserves the right to amend these proposed preliminary and final jury instructions.

Dockets.Justia.com

## I.      PROPOSED PRELIMINARY JURY INSTRUCTIONS

ExxonMobil proposes that the following preliminary jury instructions be read to the jury before the commencement of the trial:

### PROPOSED PRELIMINARY JURY INSTRUCTION NO. 1

<u>Introduction</u>

Members of the jury, we are about to start the trial of this case, about which you have heard some details during jury selection.  Before the trial begins, however, there are certain instructions you should have in order to understand what you will hear and see and how you should conduct yourself during the trial.

Authority:  N.Y. Pattern Jury Instructions 1:1

**PROPOSED PRELIMINARY JURY INSTRUCTION NO. 2**

<u>Parties</u>

The parties who bring a lawsuit are called the plaintiffs.  In this action the plaintiffs are the following individuals who live in Fort Montgomery, New York: Keith and Sandra Bogardus, Donna Boyce, Ronald and Joan Buccholz, Anna Burley and Stacey Camacho.  The plaintiffs are suing to recover for property damages and emotional distress.  The party against whom the suit is brought is called the defendant.  In this action the defendant is Exxon Mobil Corporation.

Authority:  N.Y. Pattern Jury Instructions 1:2 (as modified)

**PROPOSED PRELIMINARY JURY INSTRUCTION NO. 3**

<u>Openings and Evidence</u>

When I have completed these opening instructions to you, the attorneys will make opening statements to you in which each will outline for you what they expect to prove. The purpose of such opening statements is to tell you about each party's claims so that you will have a better understanding of the evidence as it is introduced. What is said in such opening statements is not evidence. The evidence upon which you will base your decision will come from the testimony of witnesses here in court or in the form of photographs, documents, or other exhibits introduced as evidence. Plaintiffs make an opening statement first, and are followed by defendant. After the opening statements, plaintiffs will introduce evidence in support of their claim. Normally a plaintiff must produce all of his witnesses and complete his entire case before defendant introduces any evidence, although exceptions are sometimes made to that rule in order to accommodate a witness. After plaintiffs have completed the introduction of all of their evidence, defendant may present witnesses and exhibits. If it does so, plaintiffs may be permitted to offer additional evidence for the purpose of rebutting defendant's evidence. Each witness is first examined by the party who calls that witness to testify, and then the opposing party is permitted to question the witness.

Authority: N.Y. Pattern Jury Instructions 1:3.

**PROPOSED PRELIMINARY JURY INSTRUCTION NO. 4**

<u>Summations</u>

Upon completion of the introduction of evidence, the attorneys will again speak to you in a closing statement or summation.  In summing up, the lawyers will point out what they believe the evidence has shown, what inferences or conclusions they believe you should draw from the evidence and what conclusions they believe you should reach as your verdict.  What is said by the attorneys in summation, like what is said by them in their opening statements, or in the making of objections or motions during the trial, is not evidence.  Summations are intended to present the arguments of the parties based on the evidence.  Under our system, the defendant sums up first, followed by the plaintiff.

Authority:  N.Y. Pattern Jury Instructions 1:5.

## PROPOSED PRELIMINARY JURY INSTRUCTION NO. 5

### Objections

During the course of the trial, it may happen that counsel for the plaintiffs or the defendant may ask a question or offer an exhibit into evidence, and the other party may object to the question or the offer of that exhibit into evidence. When an objection is made, it is my duty to rule on that objection according to the law. If I overrule the objection, the question may be answered or the exhibit received into evidence. If I sustain the objection, the question cannot be answered and the exhibit cannot be received into evidence. In either case, the mere fact that the plaintiffs' or the defendants' counsel has made an objection should not influence you in any way.

By overruling an objection and allowing evidence to be introduced over the objection of an attorney, the Court does not, unless expressly stated, indicate any opinion as to the weight or effect of such evidence. You, the jurors, are the sole judges of the credibility of all witnesses and the weight and effect of all of the evidence.

On the other hand, if I sustain an objection to a question or the admission of an exhibit, you must ignore that question and must not guess what the answer to the question might have been. In addition, you must not consider any evidence that I have ordered stricken from the record.

Authority: 3 O'Malley, Grenig & Lee, Federal Jury Practice & Instructions, § 101.49 (5th ed. 2000) (as modified).

**PROPOSED PRELIMINARY JURY INSTRUCTION NO. 6**

<u>Depositions – Use As Evidence</u>

During the trial of this case, certain testimony may be presented to you by way of deposition, consisting of sworn recorded answers to questions asked of the witness in advance of the trial by one or more of the attorneys for the parties to the case. Such testimony is entitled to the same consideration, and is to be judged as to credibility, and weighed, and otherwise considered by you, the jury, insofar as possible, in the same way as if the witness had been present, and had testified from the witness stand.

Authority: 3 O'Malley, Grenig & Lee, <u>Federal Jury Practice & Instructions</u>, § 105.02 (5th ed. 2000) (as modified).

**PROPOSED PRELIMINARY JURY INSTRUCTION NO. 7**

<u>Stipulations of Fact</u>

The plaintiffs and defendant have stipulated – that is, they have agreed – that certain facts are as counsel have stated.  Thus, when I or counsel state that "the following facts have been stipulated to by the parties," You should treat those facts as having been proved.

Authority: Model Jury Instructions (Civil) Eight Circuit § 2.3 (1999) (as modified).

**PROPOSED PRELIMINARY JURY INSTRUCTION NO. 8**

<u>What Is Not Evidence</u>

I instruct you that in deciding the facts of this case, you are not to consider any of the following as evidence: statements and arguments of counsel for the plaintiffs or the defendant; questions and objections of counsel for the plaintiffs or the defendant; any testimony that I instruct you to disregard, and anything that you may see or hear when the Court is not in session, even if what you see or hear is done or said by one of the parties or by one of the witnesses.

Authority: 3 O'Malley, Grenig & Lee, <u>Federal Jury Practice & Instructions</u>, § 101.44 (5th ed. 2000) (as modified).

## PROPOSED PRELIMINARY JURY INSTRUCTION NO. 9

### Jury Conduct

You will not be required to remain together while the Court is in recess. It is important, however, that you obey the following instructions during the recesses of the Court:

1.      Do not talk to each other about this case or about anyone involved with this case until the end of the trial when you go to the jury room to decide on your verdict.

2.      Do not talk with anyone else about this case or about anyone involved with this case until the trial has ended and you have been discharged as jurors. "Anyone else" includes members of your family and your friends. You may tell people you are a juror, but do not tell them anything else about the case.

3.      Outside the courtroom, do not let anyone tell you anything about the case, or about anyone involved with it until the trial has ended. If someone should try to talk to you about the case during the trial, please report it to me immediately.

4.      During the trial you should not talk with or speak to any of the parties, lawyers or witnesses involved in this case – you should not even pass the time of day with any of them. Please do not consider it rude because they do not speak to you. It is important not only that you do justice in this case, but that you also give the appearance of doing justice.

5.      It is possible that this case will be covered by the media or receive publicity. Therefore, I instruct you that you are not to read any news stories or articles about the case, or about anyone involved with it, or listen to any radio or television reports about the case or about anyone involved with it. Similarly, if you are contacted by the media regarding this case, I instruct you not to talk to the media before reaching a verdict.

6.      Do not do any research, such as checking dictionaries, reference books or the Internet, or make any investigation about the case on your own.

7.      Do not make up your mind during the trial about what the verdict should be. Keep an open mind until after you have gone to the jury room to decide the case and you and the other jurors have discussed all the evidence.

8.      If you need to tell me something, simply give a signed note to the marshal to give to me.


Authority: 3 O'Malley, Grenig & Lee, <u>Federal Jury Practice & Instructions</u>, § 101.11 (5th ed. 2000) (as modified).

**PROPOSED PRELIMINARY JURY INSTRUCTION NO. 10**

<u>Province of Judge and Jury</u>

After all the evidence has been heard and arguments and instructions are finished, you will meet to make your decision.  You will determine the facts from all the testimony and other evidence that is presented.  The conclusion that you reach will be your verdict.  You are the sole and exclusive judge of the facts.  Neither I nor anyone else may invade your province.

I shall endeavor to preside impartially and not to express any opinion concerning the facts.  The law permits me to comment on the evidence in the case during the trial or while instructing the jury.  Such comments are only expressions of my opinion as to the facts.  Any views of mine on the facts are totally irrelevant.  You may disregard these comments entirely, because you are to determine for yourself the weight of the evidence and the credibility of the witnesses.

On the other hand, and with equal emphasis, I instruct you that you are bound to accept the rules of law that I will give you whether you agree with them or not.


Authority: 3 O'Malley, Grenig & Lee, <u>Federal Jury Practice & Instructions</u>, § 101.10 (5th ed. 2000) (as modified).

## PROPOSED PRELIMINARY JURY INSTRUCTION NO. 11

<u>Weighing Testimony</u>

The law does not require you to accept all of the evidence I shall admit, even though that evidence may be competent.  In determining what evidence you will accept, you must make your own evaluation of the testimony given by each of the witnesses, and determine the degree of weight you choose to give to his or her testimony.  The testimony of a witness may fail to conform to the facts as they occurred because he or she is intentionally telling a falsehood, because he or she did not accurately see or hear that about which he or she testifies, because his or her recollection of the event is faulty, or because he or she has not expressed himself or herself clearly in giving his or her testimony.

There is no magical formula by which one may evaluate testimony.  You bring to this courtroom all of the experience and background of your lives.  In your everyday affairs you determine for yourselves the reliability or unreliability of statements made to you by others.  The same tests that you use in your everyday dealings are the tests which you apply in your deliberations.  The interest or lack of interest of any witness in the outcome of this case, the bias or prejudice of a witness, if there be any, the appearance or manner in which the witness gives his testimony on the stand, the opportunity that the witness had to observe the facts concerning which he testifies, the probability or improbability of the witness testimony when viewed in the light of all of the other evidence in the case, are all items for you to consider in determining the weight, if any, you will assign to that witness' testimony.

If such considerations make it appear that there is a discrepancy in the evidence, you will have to consider whether the apparent discrepancy may be reconciled by fitting the two stories

together.  If, however, that is not possible, you will then have to determine which of the conflicting versions you will accept.

Authority: N.Y. Pattern Jury Instructions 1:8.

**PROPOSED PRELIMINARY JURY INSTRUCTION NO. 12**

<u>Use of Notes</u>

You may take notes and then use the notes taken by you during the trial.  However, the notes should not be substituted for your memory.  Remember, notes are not evidence.  If your memory should differ from your notes, then you should rely on your memory and not on your notes.

Authority: 3 O'Malley, Grenig & Lee, <u>Federal Jury Practice & Instructions</u>, § 103.02 (5th ed. 2000) (as modified).

## II.     PROPOSED FINAL JURY INSTRUCTIONS

ExxonMobil proposes that the following final jury instructions be read to the jury after the closing statements:

### PROPOSED FINAL JURY INSTRUCTION NO. 1

#### Province of the Court and Jury

Now that you have heard the evidence and the arguments of the parties, it becomes my duty to instruct you as to the applicable law.

It is your duty as jurors to follow the law as I will state it, and to apply that law to the facts as you find them from the evidence in this case.  Do not single out one instruction as stating the law, but consider the instructions as a whole.  You are not to be concerned with the wisdom of any rule of law stated by me, or whether you agree or disagree with any rule of law stated by me.  You must follow and apply the law as I give it to you.

Nothing I say in these instructions is to be taken as an indication that I have an opinion about the facts of the case.  You, not I, have the duty to determine the facts.

You must perform your duties as jurors without bias or prejudice as to any party.  The law does not permit you to be governed by sympathy, prejudice, or public opinion.  The parties expect that you will carefully and impartially consider all of the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

Authority: 3 O'Malley, Grenig & Lee, Federal Jury Practice & Instructions, § 103.01 (5th ed. 2000) (as modified).

**PROPOSED FINAL JURY INSTRUCTION NO. 2**

<u>Role of the Jury</u>

As members of the jury, your role is to decide and pass upon the fact issues in the case. You are the sole judges of the facts. Because that is so important, you may hear me repeat it more than once. You must determine the facts from what you consider to be the believable or credible evidence. You must determine the weight and significance of the evidence, both the testimony and the exhibits. You must decide the credibility and truthfulness of the witnesses. You must draw whatever reasonable inferences may be drawn from the facts as you find them. And you have the job of resolving whatever conflicts may exist in the evidence.

With respect to any factual matters, you must rely upon your own recollection of the evidence. What the parties or attorneys may have said with respect to matters in evidence, whether in questioning witnesses or in argument, is not to be substituted for your own recollection or evaluations of the evidence. Similarly, anything that I may have said during the trial or during these instructions as to any factual matter is not to be substituted for your own recollection or judgment.

During the trial, I have been called upon to make rulings on various questions. There may have been objections or motions may have been made to strike answers. These are matters of law and you should not consider them. It is the duty of the attorneys on each side of the case to object when the other side offers testimony or evidence that the attorney believes is not properly admissible. Therefore, you should draw no inference from the fact that the attorneys objected to specific testimony or evidence. Nor should you draw any inference from the fact that I may have sustained or overruled an objection.

If at any time I instructed you to disregard anything that was said, you must follow that instruction. If at any time I instructed you that the parties stipulated that a fact was true, you must accept that fact as true. You should not draw any inference from the fact that upon occasion I asked questions of certain witnesses. Those questions were intended only to clarify or speed up matters and were not intended to suggest any opinions on my part as to the verdict that you should render or as to the credibility of any witness.

From time to time, the attorneys and I may have had side bar conferences and other conferences out of your hearing. None of these conferences should enter into your deliberations at all.

You are to conduct your duty as jurors in an atmosphere of complete fairness and impartiality, without, bias, prejudice or sympathy for or against the plaintiffs or defendant. You are to evaluate the evidence calmly and objectively. Your verdict must be based solely upon the evidence, or lack of evidence, developed at this trial.

Authority: MFJI, Instructions 71-3, 71-4 and 71-10 (as modified).

## PROPOSED FINAL JURY INSTRUCTION NO. 3

<u>Evidence</u>

What then, does the evidence that you are about to consider consist of? It is the testimony of witnesses who appeared before you, together with documents and other objects that may have been received into evidence. Evidence is also admissions and stipulations of fact. Statements and arguments of counsel are not evidence. The law recognizes two types of evidence, direct and circumstantial evidence. Direct evidence is where a person testifies as to what they themselves saw or heard or that which they have knowledge of by virtue of their own senses. Circumstantial evidence consists of proof of facts and circumstances from which, in terms of common experience, one may reasonably infer the ultimate fact sought to be established. Such evidence, if believed, is of no less value that direct evidence.

The evidence in this case consists of the sworn testimony of all the witnesses, no matter which side called them, together with the exhibits which I have admitted in evidence. Now, questions are not evidence. The evidence is the answers. The questions are useful only to the extent that they permit you to understand the meaning and significance of the answers. The exhibits received in evidence are also evidence. Any evidence as to which an objection was sustained by me and any answers or argument that I ordered to be stricken out and disregarded by you must be disregarded by you entirely because I have ruled that as a matter of law it is not evidence in this case.

Now, in assessing whether any party proved something, you are instructed that you need not rely totally on direct evidence, or statements by a witness that he knows something by virtue of his own senses – because he saw, felt or heard something. The law also permits inferences to

be drawn by you from all the surrounding facts of a given situation. This is referred to as circumstantial evidence, as distinguished from direct evidence.

In the case of circumstantial evidence, proof is given of facts and circumstances, from which one may infer other connected facts that reasonably follow in our common experience as inhabitants of this earth. It is applying reason and common sense based upon facts established to your satisfaction. In simple terms, you reason from an established fact to another fact as a logical consequence.

I will give you an example of circumstantial evidence. Assume that when you came into the courthouse this morning, the sun was shining and it was a nice day. Assume that the courtroom blinds are drawn and you cannot look outside. As you are sitting here, someone walks in with an umbrella which is dripping wet. Somebody else then walks in with a raincoat which is dripping wet. Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But on the combination of facts which I have asked you to assume, it would be reasonable and logical for you to conclude that between the time you arrived at the courthouse and the time these people walked in, it had started to rain.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from an established fact the existence or the nonexistence of some other fact. All evidence is important, and you should, of course, consider all evidence whether direct or circumstantial, in making your decision.


Authority: MFJI, Instructions 74-1 and 74-2; *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711 (1983).

**PROPOSED FINAL JURY INSTRUCTION NO. 4**

<u>Competent Evidence</u>

Any evidence to which I have sustained an objection and evidence that I have ordered stricken is not evidence and must be entirely disregarded. Also, if certain testimony was received for a limited purpose – such as for the purpose of assessing a witness's credibility – you must follow the limiting instructions I have given.

Authority: 3 O'Malley, Grenig & Lee, <u>Federal Jury Practice & Instructions</u> § 103.30; MFJI, Instruction 74-1 (as modified).

## PROPOSED FINAL JURY INSTRUCTION NO. 5

<u>Credibility of Witnesses</u>

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You may be guided by the appearance and conduct of the witnesses, or by the manner in which the witness testifies, or by the character of the testimony given, or by evidence contrary to the testimony.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worth of belief. Consider each witness' intelligence, motive, state of mind, and demeanor or manner while testifying.

Consider the witness' ability to observe the matters as to which the witness has testified, and whether the witness impresses you as having an accurate recollection of these matters. Also, consider any relation each witness may have with either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which the testimony of each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses may or may not cause you to discredit such testimony. Two or more persons seeing an event may see or hear it differently.

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, as you may think it deserves.  In short, you may accept or reject the testimony of any witness, in whole or in part.

Authority: 3 O'Malley, Grenig & Lee, <u>Federal Jury Practice & Instructions</u> § 105.01 (5th ed. 2000) (as modified).

**PROPOSED FINAL JURY INSTRUCTION NO. 6**

<u>Impeachment</u>

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something, that is inconsistent with the witness' present testimony.

If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

If a witness is shown knowingly to have testified falsely about any material matter, you have a right to distrust such witness' other testimony and you may reject all the testimony of that witness or give such credibility as you may think it deserves.

An act or omission is "knowingly" done, if voluntary and intentionally, and not because of mistake or accident or other innocent reason.

Authority: 3 O'Malley, Grenig & Lee, <u>Federal Jury Practice & Instructions</u> § 103.30 (5th ed. 2000) (as modified).

**PROPOSED FINAL JURY INSTRUCTION NO. 7**

<u>Prior Inconsistent Statement</u>

Evidence that, at some other time while not under oath a witness who is not a party to this action has said or done something inconsistent with the witness' testimony at trial, may be considered for the sole purpose of judging the credibility of the witness. However, such evidence may never be considered as evidence of proof of the truth of any such statement.

Where the witness is a party to the case, and by such statement or other conduct admits some fact or facts against the witness' interest, then such statement or other conduct, if knowingly made or done, may be considered as evidence of the truth of the fact or facts so admitted by such party, as well as for the purpose of judging the credibility of the party as a witness. An act or admission is "knowingly" done, if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

Authority: 3 O'Malley, Grenig & Lee, <u>Federal Jury Practice & Instructions</u> § 105.09 (5th ed. 2000).

**PROPOSED FINAL JURY INSTRUCTION NO. 8**

<u>All Persons Equal Before the Law</u>

This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. This action is between the plaintiffs, who are residents of Fort Montgomery, New York, and defendant, Exxon Mobil Corporation.

Do not let bias, prejudice or sympathy play any part in your deliberations. Plaintiffs and defendant and all other persons are equal before the law and must be treated as equals in a court of justice.

The mere fact that ExxonMobil is a corporation does not mean it is entitled to any lesser consideration by you. All litigants are equal before the law, and corporations, big or small, are entitled to the same fair consideration as you would give any other individual party.

Authority: 3 O'Malley, Grenig & Lee, <u>Federal Jury Practice & Instructions</u> § 103.30 (5th ed. 2000); MFJI, Instruction 72-1 (as modified).

**PROPOSED FINAL JURY INSTRUCTION NO. 9**

<u>Duty to Deliberate – Unanimous Verdict</u>

The verdict must represent the considered judgment of each of you.  In order to return a verdict, it is necessary that each juror agree.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without disregarding individual judgment.  You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all time that you are not partisans.  You are judges – judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

Authority: 3 O'Malley, Grenig & Lee, <u>Federal Jury Practice & Instructions</u> § 106.01 (5th ed. 2000); *United States v. Silvern*, 484 F.2d 879, 883 (7th Cir. 1973).

**PROPOSED FINAL JURY INSTRUCTION NO. 10**

<u>Communications Between Court and Jury</u>

If it becomes necessary during your deliberations to communicate with the Court, you may send me a note through the marshal, signed by your foreperson or by one or more of the members of the jury. I will then respond as promptly as possible, either in writing or by having you return to the courtroom so I can address you orally. No member of the jury should attempt to communicate with the Court by any means other than a signed note, and the Court will never communicate with any member of the jury on any subject touching the merits of the case other than in writing, or orally here in open Court.

Bear in mind also that you are never to reveal to any person – not even to the Court – how the jury stands, numerically or otherwise, on the questions before you, until you have reached a unanimous verdict in this case.

Authority: 3 O'Malley, Grenig & Lee, <u>Federal Jury Practice & Instructions</u> § 106.08 (5th ed. 2000) (as modified).

**PROPOSED FINAL JURY INSTRUCTION NO. 11**

<u>Burden of Proof – General Rule</u>

This is a civil case and as such each plaintiff has the burden of proving the material allegations of his complaint by a preponderance of the evidence.

If after considering all of the testimony you are satisfied that the plaintiff has carried his or her burden on each essential point as to which he or she has the burden of proof, then you must find for the plaintiff on his or her claims. If after such consideration you find the testimony of both parties to be in balance or equally probable, then the plaintiff has failed to sustain his or her burden and you must find for the defendant.

Authority: MFJI, Instruction 77-1.

**PROPOSED FINAL JURY INSTRUCTION NO. 12**

<u>Burden of Proof – Preponderance of the Evidence</u>

The party with the burden of proof on any given issue has the burden of proving every disputed element of his claim to you by a preponderance of the evidence. If you conclude that the party bearing the burden of proof has failed to establish his or her claim by a preponderance of the evidence, you must decide against him or her on the issue you are considering.

What does a "preponderance of evidence" mean? To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents. In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is evenly divided between the parties – that it is equally probable that one side is right as it is that the other side is right – then you must decide that issue against the party having this burden of proof. That is because the party bearing this burden must prove more than simple equality of evidence – he or she must prove the element at issue by a preponderance of the evidence. On the other hand, the party with this burden of proof need prove no more than a preponderance. So long as you find that the scales tip, however slightly, in favor of the party with this burden of proof – that what the party claims is more likely true than not true – then that element will have been proved by a preponderance of evidence.

Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial.  That requirement does not apply to a civil case such as this and you should put it out of your mind.

Authority: MFJI, Instruction 73-2.

**PROPOSED FINAL JURY INSTRUCTION NO. 13**

<u>Necessity of Proving Causal Nexus Between Wrong and Damage</u>

If you determine that defendant is liable for the wrong, the damages for which defendant can be required to compensate each plaintiff are only those damages which that plaintiff has shown by a preponderance of the evidence to have been a direct consequence of the wrong.  The wrong must, in the words of the law, have been a proximate cause of the damage.

A "proximate cause" is defined by the law as a cause which, in natural or continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the injury would not have occurred.

Authority: Matthew Bender,  §§ 4.01, 4.02

**PROPOSED FINAL JURY INSTRUCTION NO. 14**

<u>Strict Product Liability</u>

You are instructed that the law imposes liability upon a seller of a product which causes injury to the person or property of another due to a defect in the product, thus making the product unreasonably dangerous. It is not necessary for the plaintiffs to show that the defendant acted unreasonably or negligently: rather, the focus is upon the product itself. A product is unreasonably dangerous when it is dangerous to an extent beyond which would be contemplated by the ordinary consumer who purchases the product.

Thus, if you find that gasoline containing MTBE had a defect which made it unreasonably dangerous and that the defect proximately caused the injury to the plaintiffs, then your verdict should be for the plaintiffs.

If you determine, after considering all of the evidence, direct and circumstantial, that the accident which resulted in the plaintiffs' injuries would not have occurred in the ordinary course of things but for the existence of a defect in the product, then you can infer that the cause of the accident arose from a defect in the manufacture of the product.

The plaintiffs must prove that at the time of the incident the product was not in a substantially changed condition with respect to the defect alleged.

In other words, the plaintiffs must prove, by a preponderance of the evidence, that the product was not substantially changed in a manner that made the product unreasonably dangerous between the time that the product left the manufacturer and the time of the accident.

Matthew Bender, § 2.02 (as modified).

**PROPOSED FINAL JURY INSTRUCTION NO. 15**

<u>Strict Liability Defined</u>

The term "strict liability" in these instructions means that kind of liability which the law imposes on suppliers who place into the stream of commerce articles which cause injury, without regard to negligence.

Authority: Matthew Bender §2.04.

**PROPOSED FINAL JURY INSTRUCTION NO. 16**

<u>Proof of Negligence Not Required</u>

A manufacturer of a product which involves a risk of injury to the user is liable to any person, whether the purchaser or a third person, who without fault on his/her part, sustains an injury caused by a defect in the design, composition or manufacture of the article, if the injury might reasonably have been anticipated.  However, the plaintiff claiming injury has the burden of proving the product was defective, i.e., unreasonably dangerous to normal use, and that the plaintiff's injuries were caused by the defect.

If the product is proven defective by reason of its hazard to normal use, the plaintiff need not prove any particular negligence by the maker in its manufacture or processing; for the manufacturer is presumed to know of the vices in the things he/she makes, whether or not he/she has actual knowledge of them.

Authority: Matthew Bender § 2.10.

**PROPOSED FINAL JURY INSTRUCTION NO. 17**

<u>Strict Liability - Elements</u>

If you find from the greater weight of the evidence (1) that the defendant manufactured and sold the product involved in this action; (2) that at the time of its manufacture and sale it was defective in design and for that reason unreasonably dangerous to the user; (3) that the product was expected to and did reach the ultimate consumer without substantial change in such condition; and (4) that such defective design was the cause of the plaintiff's alleged injuries, then your verdict should be for the plaintiff.

Authority: Matthew Bender § 5.01.

**PROPOSED FINAL JURY INSTRUCTION NO. 18**

<u>Strict Liability – Unreasonable Danger</u>

The manufacturer of gasoline is not a guarantor that no one will get hurt by the product. All that the manufacturer is required to do is design and manufacture a product which is free from defective and unreasonably dangerous conditions.  In order for the plaintiffs to recover from the defendant under the doctrine of strict liability, the plaintiffs must establish, among other things, that the gasoline with MTBE was defectively designed so as to be unreasonably dangerous.  In this connection, you are instructed that gasoline with MTBE is unreasonably dangerous if it is dangerous to an extent beyond which would be contemplated or observed and appreciated by purchasers and users who purchase and use the product with the ordinary knowledge common to the community as to its characteristics.  In considering whether the design is unreasonably dangerous, you may take into account alternative forms of design that were available at the time of the design of this product, if any, and among other things, the knowledge common to those in the industry, the defendant's expertise, the dangers involved and the knowledge that was available to the defendant.

Authority: Matthew Bender § 5.02.

**PROPOSED FINAL JURY INSTRUCTION NO. 19**

<u>Risk Utility</u>

A "design defect" is a condition of the product that renders it unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use. Plaintiffs in this action allege that gasoline containing MTBE was unreasonably unsafe in its design.

It is for you, as the triers of fact, to determine, based on knowledge available at the time of its manufacture, the likelihood that this product would cause harm, whether the seriousness of any such harm outweighed Exxon Mobil Corporation's duty to design a product that would have prevented such harms, and as well the adverse effect that an alternative design – if one was available – would have on the usefulness of the product..

Authority: Matthew Bender §§ 5.05, 5.06.

**PROPOSED FINAL JURY INSTRUCTION NO. 20**

<u>Risk Utility – Two Prong Test</u>

      I instruct you that a product is defectively designed if the plaintiff proves (1) that it failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, or if the plaintiff proves (2) that the product's design proximately caused injury and the defendant fails to prove, in light of the relevant factors, that on balance the benefits of the challenged design outweigh the risk of danger inherent in such design.

Authority: Matthew Bender § 5.07.

## PROPOSED FINAL JURY INSTRUCTION NO. 21

### Risk Utility – Factors to be Considered

In determining whether a product is unreasonably dangerous and therefore defective because of its design, there are a number of factors which you should consider. No one factor by itself will be conclusive.

*First,* you should consider the likelihood that gasoline with MTBE will cause injury.

*Second*, you should consider the seriousness of potential injury in such circumstances.

*Third,* you should consider the ability of ExxonMobil to have eliminated any unsafe characteristics which you find in gasoline with MTBE, without impairing the usefulness of the gasoline or significantly increasing its cost.

*Fourth,* you should consider whether gasoline with MTBE was dangerous to an extent beyond that which would be contemplated by the ordinary user, considering the ordinary knowledge common to the community as to gasoline's characteristics. In this regard, you should consider the question of warnings, for I instruct you that a product can be rendered defective by reason of failure to give warnings as to risks and dangers in the product. A greater degree of danger requires a greater degree of warning. However, you should consider the ability of Exxon Mobil Corporation to notify or warn the user of the danger in a given situation, and the degree to which such warning was meaningful.

In applying these factors to the formula you may find that some cut one way – toward unreasonable danger – and some the other – away from that conclusion. It is for you, the jury, to evaluate them in light of the facts as you find them in the case, and to determine where the correct balance lies. You may of course find there to be other factors which appear from the

evidence to shed light on whether gasoline with MTBE was defective, and if so you may consider them.

Authority: Matthew Bender § 5.08.

**PROPOSED FINAL JURY INSTRUCTION NO. 22**

<u>Duty to design for intended or reasonably foreseeable use</u>

A manufacturer is obligated to exercise that degree of care in the plan or design of a product that will avoid any unreasonable risk of harm to anyone who is likely to be exposed to the danger when the product is used in the manner for which the product was intended, as well as an unintended yet reasonably foreseeable use.

What constitutes "reasonable care" will, of course, vary with the surrounding circumstances and will involve a balancing of the likelihood of harm, and the gravity of harm if it happens, against the burden of the precaution which would be effective to avoid the harm.

Authority: Matthew Bender § 5.11.

**PROPOSED FINAL JURY INSTRUCTION NO. 23**

<u>Strict Liability – Intended and Foreseeable Use Distinguished</u>

The law recognizes a distinction between the intended use and a foreseeable use. Where a particular use should be known to a reasonable manufacturer, such use cannot be labeled unforeseeable. If you should find that the use of the product involved in this action was abnormal, but nonetheless one which may be anticipated, it may yet be foreseeable..

Authority: Matthew Bender § 5.12.

**PROPOSED FINAL JURY INSTRUCTION NO. 24**

<u>Strict Liability – Failure to Warn as Rendering Design Defective</u>

If you believe from the evidence that the gasoline with MTBE carries with it a latent or hidden risk of injury, and that ExxonMobil did not adequately communicate the nature of that risk to potential users of the product, you must find ExxonMobil to have been negligent.

Authority: Matthew Bender § 5.13.

**PROPOSED FINAL JURY INSTRUCTION NO. 25**

<u>Feasible Alternative</u>

In order to prove the existence of a design defect with respect to gasoline with MTBE, plaintiffs must show, by a preponderance of the evidence, that a safer, technically feasible, alternative design was practicable in terms of cost and was available to Exxon Mobil Corporation.

Authority: Matthew Bender § 5.20.

**PROPOSED FINAL JURY INSTRUCTION NO. 26**

<u>Feasible Alternative – Duty to Adopt</u>

In determining whether the product could feasibly have been made safer, you are instructed that the manufacturer is held to that degree of skill and of knowledge of developments in the art of the industry then existing when the product was manufactured.

If the product does contain a defect, and the art of the industry at the time of the manufacture was such that by alternate design, construction or preparation, the product could reasonably have been made less hazardous, then a manufacturer has a duty to adopt such alternative.

Authority: Matthew Bender § 5.21.

## PROPOSED FINAL JURY INSTRUCTION NO. 27

<u>Feasible Alternative – Factors to Consider</u>

Plaintiffs allege that gasoline with MTBE was defective in design because a feasible alternative design – ethanol – existed at the time the product was designed, and was available to Exxon Mobil Corporation.

The word "feasibility," for this purpose, includes not only elements of economy, effectiveness and practicality, but also technological possibilities under the state of the manufacturing art at the time of its design.

In determining whether plaintiffs have established their contention, you should consider (1) the likelihood at the time of manufacture or design that the product as made would cause the harm suffered by the plaintiff; (2) the gravity of that harm; (3) how practicable it would have been to produce an alternative that would not have resulted in such harm; (4) the relative costs of such an alternative design; and (5) any new or additional harms that might result from such an alternative.

Authority: Matthew Bender § 5.22.

<u>Strict Liability – Design Defect</u>

A manufacturer that sells a product in a defective condition is liable for injury that results from use of the product when the product is used for its intended or reasonably foreseeable purpose. A product is defective if it is not reasonably safe – that is, if the product is so likely to be harmful to persons and/or property that a reasonable person who had actual knowledge of its potential for producing injury would conclude that it should not have been marketed in that condition.

A product may be defective as a result of a defective design. The burden of proving that the product was defective and that the defect was a substantial factor in causing plaintiff's injury is on each plaintiff.

The first question you must answer is whether Exxon Mobil Corporation's gasoline with MTBE was defective.

Plaintiffs claim that the gasoline with MTBE manufactured by Exxon Mobil Corporation defective because MTBE's characteristics made it more likely to contamination groundwater when released into the environment. Exxon Mobil Corporation denies that gasoline with MTBE was defectively designed and contends that it had to use MTBE because it was the only oxygenate available for use to comply with the requirements of the Clean Air Act. Further, ExxonMobil contends that gasoline with MTBE functioned property for its intended purpose as a motor vehicle fuel.

A product is defectively designed if a reasonable person who knew or should have known of the product's potential for causing injury and of the feasible alternative designs would have concluded that the product should not have been marketed in that condition. Whether the

product should have been marketed in that condition depends upon a balancing of the risks involved in using the product against (1) the product's usefulness and its costs, and (2) the risks, usefulness and costs of the alternative designs as compared to the product the defendant did market.

It is not necessary to find that ExxonMobil knew of the product's potential for causing injury in order for you to decide that it was defectively designed. It is sufficient that a reasonable person who did in fact know of the product's potential for causing injury would have concluded that the product should not have been marketed in that condition.

The first question you must decide is whether gasoline with MTBE was a defective product. In doing so, you must find that there was a feasible alternative to the use of MTBE. If you find that gasoline with MTBE was reasonable safe for its intended or unintended but reasonable foreseeable purpose, you will find that it was not defective, and you need proceed no further in your deliberations.

If you find that Exxon Mobil Corporation's product was defective, you will proceed to consider whether the defect was a substantial factor in causing each plaintiff's injury, that is, whether a reasonable person would regard it as a cause of the injury. If you find that the defect was not a substantial factor in causing each plaintiff's injury, you need proceed no further in your deliberations.

Authority:  N.Y. Pattern Jury Instructions 2:120 (as modified)

## PROPOSED FINAL JURY INSTRUCTION NO. 29

### Strict Liability – Failure to Warn

A manufacturer that sells a product in a defective condition is liable for injury that results from use of the product when the product is used for its intended or reasonably foreseeable purpose. A product is defective if it is not reasonably safe – that is, if the product is so likely to be harmful to persons and/or property that a reasonable person who had actual knowledge of its potential for producing injury would conclude that it should not have been marketed in that condition.

A product may be defective as a result of inadequate warnings. The burden of proving that the product was defective and that the defect was a substantial factor in causing plaintiff's injury is on each plaintiff.

The first question you must answer is whether Exxon Mobil Corporation's gasoline with MTBE was defective.

Plaintiffs claim that gasoline with MTBE manufactured by Exxon Mobil Corporation was defective because ExxonMobil failed to warn of MTBE's characteristics. ExxonMobil denies that such additional warnings were necessary and contends that it is common knowledge that gasoline – with or without MTBE – was not to be handled carefully.

The manufacturer of a product which is reasonably certain to be harmful if used in a way that the manufacturer should reasonably foresee is under a duty to use reasonable care to give adequate warning of any danger known to it or which in the use of reasonable care it should have known and which the user of the product ordinarily would not discover. Reasonable care means that degree of care which a reasonably prudent person would use under the same circumstances.

If you find that, at the time ExxonMobil marketed gasoline with MTBE no warnings regarding any safety hazards were necessary, then you will find that gasoline with MTBE was not defective and you need proceed no further in your deliberations on this issue.

If you find that Exxon Mobil Corporation's product was defective, you will proceed to consider whether the defect was a substantial factor in causing each plaintiff's injury, that is, whether a reasonable person would regard it as a cause of the injury. If you find that the defect was not a substantial factor in causing each plaintiff's injury, you need proceed no further in your deliberations.

If you find that, at the time the gasoline with MTBE was marketed, the gasoline with MTBE was defective because of inadequate warnings, then you will proceed to consider whether the lack of warnings was a substantial factor in causing each plaintiff's well to be contaminated with MTBE, that is, whether a reasonable person would regard it as a cause of the injury. If you find that the defect was not a substantial factor in causing plaintiffs' injury, you need proceed no further in your deliberations on this issue.

Authority: N.Y. Pattern Jury Instructions 2:120 (as modified)

## PROPOSED FINAL JURY INSTRUCTION NO. 30

<u>Trespass to Land</u>

A person who, without justification or permission, intentionally causes a thing to go upon the property of another person commits what is known in the law as a trespass and is liable for any damages caused by that trespass.

Plaintiffs claim that Exxon Mobil Corporation, knowing that an underground stream flowed from the Mobil-branded service station in Fort Montgomery to each plaintiff's property, caused a release of gasoline at the Mobil-branded service station, and as a result each plaintiff's well was contaminated. Exxon Mobil Corporation denies that plaintiff's wells became polluted by any act on the part of Exxon Mobil Corporation, denies that it knew there was an underground stream between the Mobil-branded station and each of plaintiff's properties and denies that it is responsible for any release at the Mobil-branded station, if one occurred.

The first question for you to decide is whether Exxon Mobil Corporation's conduct caused the gasoline to pollute each plaintiff's well. If you find that the MTBE that reached each plaintiff's well was not a result of Exxon Mobil Corporation's conduct, there would be no trespass by Exxon Mobil Corporation. On the other hand, if you find that Exxon Mobil Corporation did cause the MTBE to enter each plaintiff's property, you will then consider whether Exxon Mobil Corporation's act was intentional.

Intent involves the state of mind with which an act is done. If a person acts voluntarily with the purpose of bringing about a certain result he/she is said to have intended that result. Further, although a person does not act with the purpose of bringing about a result, if he or she acts under circumstances known to him or her that make it substantially certain that the result will follow, the person is said to have intended that result. If you find that Exxon Mobil

- 52 -

Corporation did not act with the purpose of causing MTBE to enter each plaintiff's property, and you further find that Exxon Mobil Corporation did not know that there was an underground stream, or that, although it did, the existence of the stream did not make it substantially certain that MTBE would enter each plaintiff's property, then Exxon Mobil Corporation did not commit a trespass. If you find however, that Exxon Mobil Corporation did act with the purpose of causing MTBE to enter each plaintiff's property, or that Exxon Mobil Corporation spilled gasoline with MTBE under circumstances making it substantially certain that the MTBE would enter each plaintiff's property, then Exxon Mobil Corporation did commit a trespass.

Authority: N.Y. Pattern Jury Instructions 3:8

**PROPOSED FINAL JURY INSTRUCTION NO. 31**

<u>Negligent Infliction of Emotional Distress</u>

In this action, the plaintiffs seek to recover damages for emotional distress they suffered as a result of a result of being exposed to MTBE.  Plaintiffs claim that they were exposed to MTBE and, therefore, fear that they may develop medical issues in the future.

The first question for you to decide is whether plaintiffs were exposed to MTBE.  If you find that MTBE reach each plaintiff's well and that they were exposed, you will then consider whether plaintiff's fear of future injury has a "rational basis."

"Rational basis" has been defined to mean the clinically demonstrable presence of MTBE in the plaintiff's body or some indication of an MTBE-induced disease, such as a physical manifestation of MTBE exposure.  If you find that plaintiffs were exposed to MTBE, then the second question you must decide is whether each plaintiff suffered DNA adducts because of exposure to MTBE.  If you find that they did not suffer DNA adducts because of exposure to MTBE, then ExxonMobil is not liable to Plaintiffs for emotional distress.


Authority:  N.Y. Pattern Jury Instructions 2:284 (as modified); *DiStefano v. Nabisco*, 2 A.D.3d 484 (2003); *Prato v. Vigliotta*, 253 A.D.2d 746 (1998).

## PROPOSED FINAL JURY INSTRUCTION NO. 32

### Nuisance

Plaintiffs in this case claim that defendant has unreasonably interfered with their use of their land by causing MTBE to impact the potable well on each Plaintiff's property. Defendant denies that ExxonMobil caused any interference, denies that there has been any substantial interference and says that it did not own and/or operate the Mobil-branded service station in Fort Montgomery. The burden of proving all the elements of private nuisance is on plaintiffs.

Unless you find that defendant interfered with each plaintiff's right to use and enjoy his/her land, you will find for defendant. If you find that defendant did so interfere, then you must consider whether the interference was substantial. To be "substantial," the interference must be real and appreciable, not imagined or petty. The test is not what disturbs or annoys the plaintiff, but whether reasonable persons living in the locality would be appreciably annoyed or disturbed by the interference. If you find that ExxonMobil interfered in each plaintiff's use and enjoyment of his/her land, but that the interference was not substantial, you will find for ExxonMobil. If however, you find that there was a substantial interference, you will next consider whether ExxonMobil's conduct was intentional.

If you find that ExxonMobil acted for the purpose of interfering with each plaintiff's use and enjoyment of his/her land, or that, though ExxonMobil did not, it knew that such interference was substantially certain to result from its conduct, your finding will be that ExxonMobil's conduct was intentional. If you find that ExxonMobil's conduct was not intentional, you will find for ExxonMobil. However, if you find that ExxonMobil's conduct was intentional, you will next consider whether Defendant's conduct was unreasonable.

It is in the public interest that each landowner be free to lawfully use property to the fullest possible extent consistent with the right of others to use their own property free from unreasonable interference. Thus, whether particular conduct is a nuisance is a question of degree, requiring you to consider the need for ExxonMobil's conduct, its usefulness and social value, and weigh that against the gravity of the harm which the plaintiffs suffered. In determining whether ExxonMobil's conduct was unreasonable, you must consider all of the circumstances including the character of the neighborhood, the location of the properties, the nature and purpose of ExxonMobil's activities and its value to the community, the nature, extent and frequency of the interference with each Plaintiff's use, whether the interference can be avoided or lessened without undue hardship to defendant. No one of these factors is conclusive, but all are to be considered together and in relation to all of the surrounding circumstances. If you find that ExxonMobil's conduct was not unreasonable, you will find for ExxonMobil. However, if you find that there was an interference with each Plaintiff's right to use and enjoy his/her land, that the interference was substantial, unreasonable, and intentionally caused by ExxonMobil's conduct, you will find for plaintiffs.

Authority: N.Y. Pattern Jury Instructions 3:16 (as modified)

**PROPOSED FINAL JURY INSTRUCTION NO. 33**

<u>Navigation Law</u>

In this action, the plaintiffs seek to recover for damages they suffered as a result of a gasoline spill. A private party injured by a gasoline spill has the right to recover their losses from the responsible party.

The plaintiffs allege that their property was damaged by a gasoline spill caused by Exxon Mobil Corporation. If you find that Exxon Mobil Corporation did not cause or contribute to the gasoline spill, you will find for Exxon Mobil Corporation. If you find Exxon Mobil Corporation's conduct or inaction caused or contributed to the gasoline spill, you will find for plaintiffs and award such an amount that you find will fairly compensate plaintiffs for the property damage they sustained as a result of the gasoline spill. It is not necessary for you to find that Exxon Mobil Corporation owned the property from which the gasoline spill originated to impose liability.


Authority: N.Y. Pattern Jury Instructions 10:5.

**PROPOSED FINAL JURY INSTRUCTION NO. 34**

<u>Consider Damages Only If Necessary</u>

If the plaintiffs have proven by a preponderance of the credible evidence that Exxon Mobil Corporation is liable on the plaintiff's claims, then you must determine the damages to which the plaintiffs are entitled. However, you should not infer that the plaintiffs are entitled to recover damages merely because I am instructing you on the elements of damages. It is exclusively your function to decide upon liability, and I am instructing you on damages only so that you will have guidance should you decide that the plaintiffs are entitled to recovery.


Authority: MFJI, Instruction 73-1.

**PROPOSED FINAL JURY INSTRUCTION NO. 35**

<u>Multiple Claims</u>

You should not award compensatory damages more than once for the same injury. For example, if a plaintiff were to prevail on two claims and establish a one dollar injury, you could not award him or her one dollar compensatory damages on each claim – he or she is only entitled to be made whole again, not to recover more than he or she lost.  Of course, if different injuries are attributed to the separate claims, then you must compensate him or her fully for all of the injuries.

Authority: MFJI, Instruction 77-2 (as modified).

**PROPOSED FINAL JURY INSTRUCTION NO. 36**

<u>Multiple Plaintiffs</u>

There are multiple plaintiffs in this case. Accordingly, you must decide whether each plaintiff is entitled to damages. You need not award damages to all plaintiffs. Similarly, you need not award the same amount of damages to all plaintiffs. Based upon the evidence, you must decide whether each plaintiff is entitled to damages and what amount of damages to be awarded.

Authority: MFJI, Instruction 77-2 (as modified).

## PROPOSED FINAL JURY INSTRUCTION NO. 37

### Compensatory Damages

The purpose of the law of damages is to award, as far as possible, just and fair compensation for the loss, if any, which resulted from the defendant's violation of the plaintiff's rights.  If you find that the defendant is liable on the claims, as I have explained them, then you must award the plaintiff sufficient damages to compensate him or her for any injury proximately caused by the defendant's conduct.

These are known as "compensatory damages." Compensatory damages seek to make the plaintiff whole – that is, to compensate him or her for the damage suffered.  Furthermore, compensatory damages are not limited merely to expenses that a plaintiff may have borne.  A prevailing plaintiff is entitled to compensatory damages for mental anguish, if any, that he or she has suffered because of a defendant's conduct.

I remind you that you may award compensatory damages only for injuries that a plaintiff proves were proximately caused by a defendant's allegedly wrongful conduct.  The damages that you award must be fair and reasonable, neither inadequate nor excessive. You should not award compensatory damages for speculative injuries, but only for those injuries that a plaintiff has actually suffered or which he or she is reasonably likely to suffer in the near future.

In awarding compensatory damages, if you decide to award them, you must be guided by dispassionate common sense.  Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork.  On the other hand, the law does not require a plaintiff to prove the amount of his or her losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

In all instances, you are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

Authority: MFJI, Instruction 77-3 (as modified).

**PROPOSED FINAL JURY INSTRUCTION NO. 38**

<u>Damages to Property</u>

If you should find that a plaintiff is entitled to damages for injury sustained to his or her property, you will award to each plaintiff as damages the difference between the property's market value immediately before and immediately after it was damages, or the reasonable cost of repairs necessary to restore the property to its former condition, whichever is less.

Thus if the reasonable cost of repairs exceeds the reduction in market value, you will award the amount by which the market value was reduced. If the reasonable cost of repairs is less than the reduction in market value, you will award to the plaintiff the reasonable cost of repairs required to restore the property to its condition immediately before it was damagesd.

Authority: N.Y. Pattern Jury Instructions 2:311 (as modified)

**PROPOSED FINAL JURY INSTRUCTION NO. 39**

<u>Punitive Damages</u>

If you should find that Exxon Mobil Corporation is liable for the plaintiff's injuries, then you have the discretion to award, in addition to compensatory damages, punitive damages. You may award punitive damages if the plaintiffs prove by a preponderance of the evidence that the conduct of Exxon Mobil Corporation was malicious and reckless, not merely unreasonable. An act is malicious and reckless if it is done in such a manner, and under such circumstances, as to reflect utter disregard for the potential consequences of the act on the safety and rights of others. The purpose of punitive damages is to punish a defendant for shocking conduct and to set an example in order to deter him or her and others from committing similar acts in the future.

The awarding of punitive damages is within your discretion – you are not required to award them. Punitive damages are appropriate only for especially shocking and offensive misconduct. If you decide to award punitive damages, you must use sound reason in setting the amount – it must not reflect bias, prejudice, or sympathy toward any party. But the amount may be as large as you believe necessary to fulfill the purpose of punitive damages. In this regard, you may consider the financial resources of the defendant in fixing the amount of punitive damages.

Authority: MFJI, Instruction 77-5.

## PROPOSED FINAL JURY INSTRUCTION NO. 40

### Mitigation of Damages

You are instructed that any person who claims damages as a result of an alleged wrongful act of another has a duty under the law to use reasonable diligence under the circumstances to "mitigate," or minimize, those damages.  The law imposes on an injured person the duty to take advantage of reasonable opportunities he or she may have to prevent the aggravation of his or her injuries, so as to reduce or minimize the loss or damage.

If you find Exxon Mobil Corporation is liable to a plaintiff and that the plaintiff has suffered damages, the plaintiff may not recover for any item of damage he could have avoided through such reasonable effort.  If the plaintiff unreasonably failed to take advantage of an opportunity to lessen his or her damages, you should deny recovery for those damages which would have been avoided had he or she taken advantage of the opportunity.

Bear in mind that the question whether the plaintiff acted "reasonably" with respect to the mitigation of damages is one for you to decide, as sole judges of the facts. Although the law will not allow an injured plaintiff to sit idly by when presented with an opportunity to mitigate, this does not imply that the law requires an injured plaintiff to exert himself or herself unreasonably or incur unreasonable expense in an effort to mitigate, and it is defendant's burden of proving that the damages reasonably could have been avoided.  In deciding whether to reduce plaintiff's damages due to some failure to mitigate, therefore, you must weigh all the evidence in light of the particular circumstances of the case, using sound discretion in deciding whether the defendant has satisfied his burden of proving that the plaintiff's conduct was not reasonable..

Authority: MFJI, Instruction 77-7.

**PROPOSED FINAL JURY INSTRUCTION NO. 41**

<u>Verdict Forms – Jury Responsibility</u>

I caution you that nothing said in these instructions and nothing in any form of verdict prepared for your convenience is meant to suggest or convey in any way or manner what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

You will be provided with verdict forms for the plaintiffs to guide you in your calculation of damages in the event that you find that the plaintiffs were entitled for compensation.

You must follow these forms' instructions.

Authority: 3 O'Malley, Grenig & Lee, <u>Federal Jury Practice & Instructions</u> § 106.07 (5th ed. 2000).