**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation | Master File No. 1:00-1898 MDL 1358 (SAS) |

---

This document refers to:

*Oyster Bay Water District v. Amerada Hess Corp., et al. (08-CV-9994)*

---

### HUNTSMAN PETROCHEMICAL CORPORATION'S
### THIRD AMENDED MASTER ANSWER AND AFFIRMATIVE DEFENSES

Pursuant to the Master Answer agreement among the parties and CMO #6, defendant Huntsman Petrochemical Corporation ("HPC") answers the complaints in MDL 1358 cases for which an answer is presently required, and in which it has been properly named and served, as follows:

## I.   STATEMENTS REGARDING SELECT ALLEGATIONS

### A.   Basic Defendant Information

Defendant HPC, formerly known as Huntsman Corporation, and formerly known as Texaco Chemical Company, is a Delaware corporation organized in 1984. HPC maintains its headquarters in Salt Lake City, Utah. From 1984 through June 27, 2006, HPC (named Texaco Chemical Company from 1984 through 1994) manufactured MTBE at a plant located in Port Neches, Texas, for sale to the oil refining industry. From approximately 1994 to present, HPC has operated another MTBE plant in Port Neches. HPC has never refined, distributed, marketed, blended, stored or sold gasoline anywhere in the United States.

### B.   Allegations Regarding Properties and Behavior of MTBE

9351169

HPC admits that MTBE is an aliphatic ether that does not occur naturally.  HPC admits that there are various methods for the production of MTBE and that one method of production is from methanol and isobutylene.

HPC states that solubility and mobility are relative properties and that while MTBE and other ethers may be more soluble and mobile in water than certain gasoline components, such as the BTEX compounds, they are less soluble and mobile in water than other components sometimes blended into gasoline, such as ethanol.  HPC further states that MTBE's behavior in the environment -- and its behavior relative to other gasoline constituents -- is dependent on a variety of factors, including the nature or method of its release, the geological setting, and environmental and microbial factors.

HPC states that while under certain conditions MTBE may biodegrade less readily than some other components of gasoline, MTBE has been found to naturally attenuate and biodegrade in numerous ways.

C.      **Allegations Regarding Properties and Behavior of TBA**

HPC admits that TBA is the product of the hydrolysis of isobutylene. HPC admits that TBA can be an intermediate product of MTBE biodegradation.

HPC states that solubility and mobility are relative properties and that TBA is more soluble and mobile in water than certain gasoline components, such as the BTEX compounds. HPC further states that TBA's behavior in the environment -- and its behavior relative to other components of gasoline -- is dependent on a variety of factors, including the nature or method of its release, the geological setting, and environmental and microbial factors.

9351169

2

**D.**      **Allegations Regarding Taste and Odor**

HPC admits that individuals vary in their ability to detect the taste and odor of MTBE in water.  HPC states that responsible federal and state regulatory agencies have considered and adopted standards fully protective of MTBE taste and odor concerns.

**E.**      **Allegations Regarding Health Effects of MTBE**

Plaintiffs' allegations of dire human health concerns from MTBE are unsubstantiated. MTBE has been studied publicly by scientists and government agencies for more than 20 years. MTBE has never been reliably linked to cancer, and there is no consensus in the scientific field that it is carcinogenic; indeed, major world health organizations have long refused to list MTBE as a human carcinogen.  HPC states that responsible federal and state regulatory agencies have considered and adopted standards fully protective of any alleged health concerns related to MTBE.

**F.**      **Allegations Regarding Storage and Handling of Gasoline**

HPC admits that it is commonly known that gasoline is sometimes released into the environment from USTs and other means, and states that, according to reports, major oil companies have spent hundreds of millions of dollars or more over the past 30 years to eliminate or reduce leaks, and to improve leak detection.  HPC states that it is aware that most adults understand that gasoline should be handled carefully and should not be spilled.

**G.**      **Allegations Regarding Knowledge of MTBE Contamination at Particular Locations In 1980s**

The complaints purport to describe various publicly reported incidents of MTBE contamination in New Jersey, New York and Maine in the 1980s. HPC states that it was widely known among government regulators in the 1980s that various incidents involving MTBE contamination – including the ones plaintiffs' complaints regularly list – had occurred.

9351169

3

HPC admits that the 1986 Garrett and Moreau paper described MTBE presence in certain wells in Maine. HPC admits that information about MTBE was known to government and the scientific community, as the 1986 Garrett and Moreau paper illustrates.

## H.    Allegations Regarding Participation In Industry Associations or Lobbying Activities

The chemical properties of ethers like MTBE have been known in the public arena for many years. Plaintiffs' claim that Defendants somehow hid this information from them, or from federal or state regulators, is baseless. HPC denies that it had any agreement with another defendant to withhold from plaintiffs or government regulators information concerning MTBE.

HPC states that prior to 1990, Congress was preparing to take action to address the Nation's smog problem. HPC admits that federal government agencies were aware of MTBE's chemical characteristics in 1986 or earlier, and that EPA held public meetings about MTBE in 1986.

HPC admits that one or more representatives of HPC may have participated in the Oxygenated Fuels Association ("OFA"). HPC admits that a Testing Consent Order was entered with EPA in or about 1988 by various major oil companies.

In response to plaintiffs' allegation that Congress adopted the Reformulated Gasoline (RFG) Program as part of the 1990 Amendments to the Clean Air Act "[a]s a result of tremendous lobbying efforts by the industry, including Defendants," HPC states that many major oil companies in fact actively resisted the RFG Program's requirement of oxygen content levels.

## I.    Allegations Regarding Requirements and Effects of the 1990 Clean Air Act Amendments

HPC states that although the 1990 Clean Air Act Amendments ("CAAA") did not literally require use of MTBE as a gasoline additive, in practical terms the CAAA certainly did

compel MTBE's use.  EPA and Congress knew that the oxygen requirements of the Act could not and would not be met without MTBE.

HPC states that beginning in the late 1970s, following the U.S. EPA's mandate to reduce lead in gasoline, most U.S. refiners began evaluating oxygenates and octane enhancers such as ethanol and MTBE.  In 1990, with the amendments to the Clean Air Act, the federal government mandated an increase in the use of oxygenates (up to 2.7% oxygen content) to meet ambient carbon monoxide air requirements in winter gasoline in many cities (beginning in 1992).  In 1995, various oxygenates were extended by regulation to year-round use for severe, non-attainment ozone areas in the United States.  Reformulated gasolines used since that time have sometimes contained between 10% and 15% MTBE by volume, or up to 10% ethanol, to meet government mandates on oxygenate content.

HPC denies that ethanol was available in sufficient supply to fully meet the demand for oxygenated gasoline in the RFG and oxyfuel regions when the Amendments requiring 2% oxygen content in year-round gasoline in areas using RFG became effective.

HPC states that several government agencies have concluded that the use of MTBE in gasoline has contributed substantially to reducing air pollution.

**J.**     **Allegations Regarding MTBE-Related Actions Taken By State or Federal Governmental Bodies**

HPC states that in 2000, EPA provided advance notice of its intent to initiate a rulemaking pursuant to the Toxic Substances Control Act ("TSCA") to eliminate or limit the use of MTBE as a fuel additive.  No such rulemaking was ever initiated.  HPC states that certain state legislatures or regulatory bodies have passed laws or adopted regulations to limit or eliminate the use of MTBE in gasoline.  The details of such laws are a matter of public record.

**K.**     **Allegations Regarding Plaintiffs' Claimed Inability To Identify Relevant Sources of Gasoline Leaks Or Spills Affecting a Given Site**

Gasoline leaks, whether containing MTBE or not, are frequently traceable to a specific "point source," limited to the immediate geographic area of the source, and remediable.

HPC denies that gasoline can never be traced from a contamination site to its terminal or refinery source.

### L.     Allegations Purporting To Quote Or Summarize Documents

Numerous paragraphs in each complaint purport to quote from or summarize documents, statutes and regulations. These written materials speak for themselves. The documents, statutes and regulations referenced by plaintiffs, which are not attached to the complaints, are the best evidence of their content, and HPC therefore denies plaintiffs' attempts to summarize or characterize the contents of these written materials.

### M.     Allegations Regarding Defendants Unrelated To HPC

HPC is without knowledge or information sufficient to form a belief as to the truth of the matters averred in the complaints regarding the specific statements, acts or omissions of defendants unrelated to HPC.

### N.     Allegations Regarding Particular Claims or Counts

In response to the portions of the complaints purporting to state particular common law or statutory claims, HPC incorporate each paragraph of this Master Answer as if fully restated herein. HPC denies it is liable for any legal claim in any MDL 1358 complaint.

**O.**     **Allegations Regarding Claimed Injuries or Damages**

Some complaints make claims about contamination of specific wells or water resources, and others do not. HPC is without knowledge or information sufficient to form a belief as to the truth of the matters averred in the complaints regarding specific incidents of alleged contamination. HPC believes publicly available documents and discovery to be supplied by plaintiffs will demonstrate that many of the wells or water resources at issue have not been impacted by MTBE, or have been impacted only at levels well below state action standards for MTBE.

With regard to alleged damages, the allegations require no further answer. To the extent that further answer is deemed necessary, HPC admits that plaintiffs seek the relief mentioned in the complaints, but denies that plaintiffs are entitled to any relief.

**P.**     **Plaintiffs' Demands for Jury Trials**

Plaintiffs in all actions have demanded a trial by jury of all claims asserted in the complaints. These jury demands require no answer. To the extent any answer is deemed necessary, HPC admits that the plaintiffs demand jury trials, but denies that they are entitled to them on some or all of their claims.

**Q.**     **Plaintiffs' Allegations of Intentional, Willful, Deliberate, or Negligent Acts**

HPC denies that it intentionally, willfully, deliberately, or negligently committed any acts that caused or foreseeably could have caused harm to plaintiffs or any other party.

**R.**     **Certain Plaintiffs' Allegations of Ownership of Groundwater Resources**

To the extent that plaintiffs allege that they own or have the authority to protect groundwater, groundwater resources, water resources, water supplies, water rights, or drinking water wells, or any other right in and to water or groundwater, HPC denies these allegations and

9351169

7

denies that these plaintiffs have standing to bring any claim based on allegations of property damage on behalf of themselves or any other person or entity.

### S.    Response To TSCA Allegations

HPC generally denies that it has violated TSCA. TSCA does not require submission of the sort of data that plaintiffs allege HPC should have submitted to EPA regarding incidences of releases of gasoline or the occurrence of MTBE. EPA's 2000 Advance Notice of Proposed Rulemaking placed no legal obligation of disclosure on HPC. Moreover, an Advance Notice of Proposed Rulemaking is not a rule promulgated under TSCA and therefore cannot provide the basis for a TSCA citizen suit.

Even if information about gasoline releases or the occurrence of MTBE were within the scope of TSCA, there could be no violation for failure to submit such information because EPA already has extensive information on those topics, and under EPA guidelines there is no need to report information to EPA under TSCA when EPA already is aware of essentially the same information. EPA is well-informed about releases from service stations and the occurrence of MTBE. EPA has a special department, the Office of Underground Storage Tanks, which gathers and publishes information about the extent of releases of gasoline and the occurrence of MTBE. Likewise, EPA receives voluminous data on those subjects from other federal agencies.

HPC further denies that plaintiffs have complied with the statutory requirements for filing a citizen suit under TSCA.

### II.    RESERVATION OF RIGHT TO AMEND

HPC reserves the right to amend this Second Amended Master Answer.

### III.    AFFIRMATIVE DEFENSES APPLICABLE TO ALL CASES

For its separate defenses to the complaints in MDL 1358 cases for which an answer is presently required, and in which it has been properly named and served, HPC states as follows:

9351169

8

1. Plaintiffs' claims are barred in whole or in part by the doctrine of federal preemption.

2. At all relevant times, HPC's actions and products complied with and were undertaken pursuant to applicable federal, state, and local laws, rules, regulations and specifications.

3. Plaintiffs' claims are barred in whole or in part because federal, state and/or local authorities and agencies have mandated, directed, approved and/or ratified the alleged actions or omissions of HPC.

4. All acts and conduct of HPC, as alleged in the complaints, conformed to and were pursuant to statutes, government regulations and industry standards, and were based upon the state of knowledge existing at all material times alleged in the complaints.

5. The relief sought by plaintiffs' complaints is, in whole or in part, within the particular expertise of and is being addressed by federal and state governments, and their relevant agencies, and thus this Court should decline to exercise jurisdiction over this matter pursuant to the doctrine of primary jurisdiction.

6. Plaintiffs have failed to exhaust their administrative remedies.

7. Plaintiffs have a plain, common, adequate and speedy remedy at law. The equitable causes of action alleged in the complaints are thus barred.

8. Plaintiffs are barred from seeking strict liability for design defect as any attempt to reexamine the mandatory cost-benefit analysis delegated to and performed by the EPA pursuant to its obligations under the Clean Air Act (CAA) would be impermissible given that Congress, through Section 211 of the CAA, authorized the EPA, and not the courts, to perform the cost-benefit analysis.

9.    If it is determined that plaintiffs or anyone on whose behalf plaintiffs are allegedly suing, was injured, as set forth in the complaints, which HPC denies, HPC alleges that such hardship is outweighed by the convenience and public service rendered by HPC's actions.

10.    Each purported cause of action asserted in the complaints is barred under the doctrine of primary assumption of risk in that the general public, by and through its elected representatives and their appointees, knew and understood the alleged risks of harm presented by the use of MTBE, if any, and elected nevertheless to proceed to require the use of gasoline oxygenates and to specifically permit the use of MTBE as a gasoline oxygenate.

11.    To the extent that plaintiffs have received or may receive the requested relief from a governmental agency, HPC asserts their entitlement to an appropriate set-off or reduction of any judgment against them.

12.    The appropriate forum for plaintiffs' claims is an administrative agency, and therefore all proceedings before this Court should be stayed pending administrative resolution of the issues.

13.    The claims set forth in the complaints fail, in whole or in part, based on the doctrine of election of remedies.

14.    Each purported cause of action of the complaints as applied to HPC is barred because the relief sought therein would pose unreasonable barriers and substantial burdens on interstate and/or international commerce in violation of the Commerce Clause of the United States Constitution and/or the North American Free Trade Agreement.

15.    The complaints fail to state a claim upon which relief may be granted and should, therefore, be dismissed pursuant Fed. R. Civ. P. 12(b)(6).

9351169

16.     Because plaintiffs have not suffered any cognizable harm and have not incurred any present damages, there is no current case or controversy and thus, plaintiffs' claims are not ripe for adjudication.

17.     Plaintiffs suffered no losses or injuries that were proximately caused by HPC.

18.     HPC's conduct was not the cause in fact of any injuries alleged by plaintiffs.

19.     Plaintiffs have failed to state a cause of action for nuisance because they have neither alleged nor suffered any particularized injury.

20.     The alleged injuries and damages, if any, suffered as a result of conduct legally attributable to HPC is *de minimus* and therefore any injunction would pose a disproportionate hardship on HPC, as well as on the public, in comparison to the injury and or damages allegedly suffered by plaintiffs.  Accordingly, plaintiffs are not entitled to injunctive relief as to HPC as a matter of law.

21.     Plaintiffs do not have a legally cognizable injury unless or until the alleged MTBE contamination exceeds state action levels.

22.     Plaintiffs may not seek attorneys' fees as an element of relief.

23.     Plaintiffs have failed to properly present any claim for attorneys' fees.

24.     Because plaintiffs have sued multiple parties, under multiple causes of action, with divisible damages, the claim for attorneys' fees must be proportioned between same.

25.     The claims set forth in the complaints are barred, in whole or in part, by the mootness doctrine.

26.     The complaints and each purported cause of action are barred, in whole or in part, by the defense of laches.  Plaintiffs' unreasonable and inexcusable delay in filing these actions caused substantial prejudice to HPC.

27.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations.

28.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of repose.

29.     Plaintiffs are estopped by their conduct from asserting any of the purported claims alleged against HPC in the complaints.

30.     Plaintiffs have not investigated the cause of the alleged harm or attempted to identify the actual party or parties responsible for their alleged injuries.

31.     Plaintiffs cannot establish the required predicates for their theories of collective liability, and therefore their defendant-identification burden remains.   In the event that the defendant-identification burden is shifted in the future, HPC denies that it contributed to the contamination at issue.

32.     Plaintiffs' theories of collective liability fail because HPC entered into no agreement, tacit or otherwise, with any other defendant to commit any tortious act.

33.     Plaintiffs' claims against HPC fail because HPC is not liable for the acts or omissions of previous owners of MTBE plants, nor is HPC liable for the acts or omissions of the parent corporations of previous owners or operators of such plants.

34.     Plaintiffs' claims are barred in whole or in part by the doctrine of waiver.

35.     Plaintiffs assumed the risk of all acts, injuries, and damages that plaintiffs now assert against HPC.

36.     HPC is entitled to total or partial indemnity from those individuals or entities who are responsible for plaintiffs' injuries or damages, if any, in an amount in direct proportion to their relative culpability.

37.     Plaintiffs lack the capacity to sue.

38.     Plaintiffs lack standing to sue.

39.     Plaintiffs' claim is barred because HPC's conduct caused no physical impact to plaintiffs' property.

40.     There is a defect or misjoinder of parties, in that plaintiffs have failed to join indispensable or necessary parties.

41.     Plaintiffs have failed to name the party or parties responsible for the alleged harm.

42.     The claims set forth in the complaints fail, in whole or in part, because of the failure to identify which defendant, if any, proximately caused the alleged harm.

43.     Plaintiffs' claimed injuries were caused in whole or in part by others, whose actions were not controlled by or related to HPC.  Such actions are the superseding, supervening and/or intervening cause of plaintiffs' injuries and therefore plaintiffs may not recover from HPC as a matter of law.

44.     Plaintiffs' claims against HPC fail because plaintiffs' alleged injuries were not caused by HPC; instead plaintiffs' alleged injuries, if any, were caused in whole or part by others whose actions were not controlled by or related to HPC.  Such actions are the superseding, supervening and/or intervening cause of plaintiffs' injuries.

45.     Plaintiffs' claims must be dismissed because they have failed to identify the particular defendant that is responsible for the harms alleged by plaintiffs.

46.     Any MTBE sold or distributed for resale by HPC was properly designed, formulated, prepared and otherwise not defective in any respect.

47.     To the extent required, HPC provided proper warnings, information, and instructions relating to its products pursuant to generally recognized and prevailing standards in existence at the time.

48.     Plaintiffs have failed to allege that HPC's alleged failure to provide an adequate warning proximately caused their injuries.

49.     Plaintiffs' failure to warn claims fail because HPC gave adequate warnings to the purchasers of MTBE that HPC produced and sold.

50.     Any MTBE manufactured, sold, or distributed for resale by HPC was not unreasonably dangerous when made.

51.     The plaintiffs' claims against HPC are barred by the bulk supplier doctrine.

52.     The products at issue were sold to knowledgeable and sophisticated purchasers, and any injury alleged by plaintiffs was caused by such purchasers' failure to observe known standards of care.

53.     Any injury, damage or loss sustained by the plaintiffs was proximately caused by and/or contributed to by their own negligence, carelessness, and/or omissions.

54.     Plaintiffs' claims are barred pursuant to the informed intermediary doctrine.

55.     Plaintiffs' public nuisance claims should be dismissed because there were no acts or omissions by or on behalf of any of the defendants constituting an intentional, unreasonable interference with the plaintiffs' interest in the use and enjoyment of their property.

56.     Plaintiffs' public nuisance claims must be dismissed because plaintiffs have failed to allege "special damages," an absolute prerequisite to the assertion of a public nuisance claim.

57.     HPC owed no duty of care to plaintiffs in connection with the matter alleged in the complaints.

58.    The complaints fail to plead the elements of negligence claims with sufficient clarity, specificity, and particularity.

59.    Plaintiffs' claims are barred to the extent the conduct complained of is protected by the First Amendment to the United States Constitution.

60.    The complaints and each cause of action are barred based on HPC's valid exercise of the right of petition to the federal government, state government(s), and/or their respective deliberative bodies and agencies.

61.    Plaintiffs' claims are barred, in whole or in part, based on plaintiffs' actual or constructive notice of reported spills or releases, if any, from publicly available records.

62.    There is no legal relationship upon which any duty could possibly be owed by HPC to plaintiff, and therefore, plaintiffs' causes of action fail as a matter of law.

63.    The injuries and damages, if any, alleged by plaintiffs are caused in whole or in part to the presence of compounds other than MTBE (e.g., the BTEX compounds).  Under plaintiffs own legal theories, HPC is not liable for damages caused by compounds other than MTBE.  In the event liability is assessed against HPC, such liability must be reduced where, and to the extent that, other compounds – about which plaintiffs do not complain – contributed to the alleged injury.

64.    HPC is not liable for contamination where chemical compounds other than MTBE exceed state actions levels or standards, requiring cleanup or regardless of the presence of MTBE (particularly, but not exclusively, where MTBE is present below state action levels or standards).

65.    Any injury, damage or loss sustained by the plaintiffs in connection with the subject matter of this action was not reasonably foreseeable.

9351169

66.    If it is determined that plaintiffs or anyone on whose behalf plaintiffs are allegedly suing, was injured, as set forth in the complaints, which HPC denies, HPC alleges that any award of damages must be reduced in proportion to the percentage of fault attributable to the plaintiffs.

67.    If it is determined that plaintiffs or anyone on whose behalf plaintiffs are allegedly suing, was injured, as set forth in the complaints, which HPC denies, HPC alleges that any award of damages shall be reduced in proportion to the percentage of fault attributable to third parties (including but not limited to persons or entities responsible for gasoline leaks or spills).

68.    The injuries alleged in the complaints, if any, may be reasonably apportioned among the defendants, as each defendant's alleged acts and omissions, including those of HPC, are divisible and distinct.  Therefore, no defendant is jointly and severally liable to plaintiffs for any claim alleged in the complaints.

69.    Plaintiffs' claims are barred to the extent that they have unreasonably failed to mitigate their damages, if any.

70.    To the extent that any party has settled or may settle in the future with plaintiffs, HPC asserts its entitlement to an appropriate credit or reduction of any judgment(s) against it.

71.    Plaintiffs' claims for punitive damages violate the provisions of the U.S. Constitution, including but not limited to those provisions requiring due process of law and prohibiting excessive fines.

72.    The Court does not  have personal jurisdiction over HPC.

73.    Plaintiffs are public entities and/or authorities seeking compensation for damages to natural resources under their jurisdiction or purview.  These public entity/authority plaintiffs

9351169

have improperly delegated the power to prosecute these cases to private attorneys on a contingent fee basis. Such delegation is against public policy.

74.   HPC incorporate by reference any affirmative defense, whether general or specific to a specific State, alleged by other defendants in MDL 1358.

75.   The pleading of the defenses described above shall not be construed as an undertaking by HPC of any burden which would otherwise be the responsibility of plaintiffs.

76.   The information plaintiffs claim that HPC should have disclosed under TSCA is not reportable under the TSCA statute or under EPA's guidance interpreting TSCA.

77.   Plaintiffs have failed to comply with the jurisdictional prerequisites for bringing a claim under TSCA.

78.   Plaintiffs cannot demonstrate that EPA was unaware of information plaintiffs allege should have been disclosed under TSCA when plaintiffs' TSCA claim was brought.

79.   Plaintiffs have failed to comply with the notice of citizen suit requirements of the Toxic Substances Control Act and are therefore barred from seeking any relief from HPC for which such notice is a prerequisite.

80.   Plaintiffs' trespass claims fail because HPC's acts or omissions did not constitute or produce any unlawful intrusion on, in or under plaintiffs' property. The alleged unlawful intrusions on, in or under plaintiffs' property were caused by the intervening, supervening, and superseding, intentional acts of others.

## IV.   DEFENSES APPLICABLE TO PARTICULAR STATES

For their separate defenses to the complaints in MDL 1358 cases from particular states (for which an answer is presently required, and in which HPC has been properly named and served), HPC states as follows:

**FLORIDA**

1.      The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, Fla. Stat. Ann. § 95.11 (West 2001).

2.      Plaintiffs' strict liability claims are barred in whole or in part by the Government Rules Defense as set forth in Fla. Stat. Ann. § 768.1256.

3.      Plaintiffs' strict liability claims are barred in whole or in part by the State-of-the Art Defense for products liability as set forth in Fla. Stat. Ann. § 768.1257.

4.      Plaintiffs' strict liability claims fail, in whole or in part, because Florida law only permits such claims when a product is used as intended.

5.      Plaintiffs' claims are barred, in whole or in part, by section 376.308(5), Florida Statutes, if they relate to any discharge or contamination eligible for restoration funding from the Inland Protection Trust Fund.

6.      Recovery is barred or must be reduced, in whole or in part, based on the doctrine of comparative negligence.

7.      Plaintiffs' claims fail, in whole or in part, based on the doctrine of *in pari delicto*.

8.      Plaintiffs' claims fail, in whole or in part, based on the doctrine of unjust enrichment.

9.      Plaintiffs' efforts to impose liability on HPC without proof of causation violate the Due Process and other clauses of the federal and state constitutions.

**NEW YORK**

10.      The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, N.Y. Civ. Prac. L. & R. § 214.

11.     Plaintiffs' claims pursuant to New York General Business Law § 349 should be dismissed for failure to plead facts sufficient to show that defendants engaged in "consumer-oriented" conduct that had a broad impact on consumers at large which injured the plaintiffs as within the intended ambit of the statute.

12.     Plaintiffs' claims pursuant to New York General Business Law § 349 should be dismissed because plaintiffs are not consumers under § 349.

13.     Plaintiffs' claims pursuant to New York General Business Law § 349 should be dismissed because the alleged deceptive conduct for which the plaintiffs seek redress does not fall within the ambit of the statute, as the plaintiffs' injuries did not arise by reason of any alleged violation of GBL § 349.

14.     Plaintiffs' claims pursuant to New York General Business Law § 349 should be dismissed as compliance with the Federal Trade Commission Act, 15 U.S.C.A. § 45 is a complete defense to an action brought under GBL § 349.

15.     Plaintiffs' claims pursuant to New York General Business Law § 349 should be dismissed because any act or practice of HPC complied with the rules and regulations of, and the statutes administered by, the Federal Trade Commission, or any official department, division, commission or agency of the United States.

16.     Plaintiffs' claims pursuant to New York General Business Law § 349 should be dismissed to the extent HPC did not sell petroleum products directly to consumers in New York.

17.     If HPC is found liable for any non-economic loss allegedly suffered by plaintiffs, and such liability equals fifty percent or less of the total liability of all persons liable, and the aggregate liability of such other persons equals or exceeds fifty percent of the total liability, then, pursuant to Civil Practice Law and Rules Article 16, HPC's liability to plaintiffs for non-

9351169

economic loss shall not exceed their equitable share determined in accordance with the relative culpability of each person causing or contributing to the total liability for such non-economic loss.

18.     Plaintiffs' efforts to impose liability on HPC without proof of causation violate the Due Process and other clauses of the federal and state constitutions.

19.     Plaintiffs' claims pursuant to New York Navigability Law § 181 fail because HPC has never produced, transported, delivered, supplied or stored petroleum and therefore cannot be liable for any discharges of petroleum or petroleum products that occurred during or as the result of the production, transportation, delivery, or storage of petroleum or petroleum products.

20.     Plaintiffs' claims pursuant to New York Navigability Law § 181 fail because HPC has not discharged any petroleum anywhere in the United States.

*       *       *

For each State described above, HPC incorporates by reference any affirmative defense, whether general or specific to another State, alleged herein or by other defendants in MDL 1358.

The pleading of the defenses described above shall not be construed as an undertaking by HPC of any burden which would otherwise be the responsibility of plaintiffs.

**WHEREFORE**, HPC requests entry of judgment dismissing the complaints with prejudice, and awarding HPC its costs and attorneys' fees, and such other relief as the Court may deem just and proper.

DATED this 23rd day of January, 2009.

Respectfully submitted,

Alan L. Sullivan
Amber M. Mettler
Snell & Wilmer LLP
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004
Tel: (801) 257-1900
Fax: (801) 257-1800
asullivan@swlaw.com
amettler@swlaw.com

Robert L. Joyce, Esq.
Littleton Joyce Ughetta Park & Kelly LLP
The Centre at Purchase
One Manhattanville Road, Suite 302
Purchase, NY 10577
Tel: (914) 417-3400
Fax: (914) 417-3401
robert.joyce@littletonjoyce.com

"s/"
_____
Sarah J. Edwards, Esq.
Littleton Joyce Ughetta Park & Kelly LLP
39 Broadway, 34th Floor
New York, NY 10006
Tel: (212) 404-5777
Fax: (212) 232-0088
sarah.edwards@littletonjoyce.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of Huntsman Petrochemical Corporation's Third Amended Master Answer and Affirmative Defenses was served via LexisNexis File & Serve to all other counsel of record on the 23rd day of January, 2009.

Amber M. Mettler

## CERTIFICATE OF SERVICE

I certify that on January 23, 2009, I electronically filed the preceding Third Amended Master Answer and Affirmative Defenses using the CM/ECF system.

This Certificate was executed on January 23, 2009 in New York, N.Y.

"s/"
_____
Sarah J. Edwards, Esq.
Littleton Joyce Ughetta Park & Kelly LLP
39 Broadway, 34th Floor
New York, NY 10006
Tel: (212) 404-5777
Fax: (212) 232-0088
sarah.edwards@littletonjoyce.com