**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------------- x

| | |
|---|---|
| In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation | Master File No. 1:00-1898<br>MDL 1358 (SAS)<br>M21-88 |
| ---------------------------------------------------------------------- x | ECF Case |

**This document relates to the following case:**

*City of New York v. Amerada Hess Corp., et al.*
Case No. 04 Civ. 3417

# PLAINTIFF CITY OF NEW YORK'S RESPONSE TO DEFENDANTS' OBJECTION TO FOCUS WELL TRIAL PLAN AND REQUEST FOR SINGLE TRIAL OF ALL WELLS AT ISSUE

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii

I.  INTRODUCTION ........................................................................................................... 1

II.  ARGUMENT ................................................................................................................... 3

   a.  The Trial Order Comports with the Federal Rules of Civil Procedure and Due Process ...... 3

   b.  The Trial Order Does Not Violate the Seventh Amendment's Reexamination Clause ......... 4

   c.  The Trial Order's Provisions Concerning Punitive Damages Comport with Due Process.... 5

      i.  The Trial Order Does Not Allow Multiple Juries to Award Punitive Damages for the Same Conduct ................................................................................................................... 5

      ii.  There Is No Constitutional Right to Have a Jury Determination of Punitive Damages Expressed in Absolute Dollars......................................................................................... 7

   d.  The Trial Order Allows for Meaningful Due Process Review of the Proportionality of Any Punitive Damages Award ............................................................................................... 8

   e.  The Selected Focus Wells Are Representative and *Chevron* is Inapposite ........................... 8

   f.  Defendants Prematurely and Incorrectly Object to the Preclusive Effect of Trial Results .. 10

   g.  The Trial Order Is Fair to All Parties................................................................................. 11

III.  CONCLUSION............................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Cases**

*Angelo v. Armstrong World Industries, Inc.*,
  11 F.3d 957 (10th Cir. 1993) ............................................................................................... 11

*Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*,
   532 U.S. 424 (2001) .............................................................................................................. 7

*County of Suffolk v. Amerada Hess Corp*, (*In re MTBE Prods. Liab. Litig.*),
  No. 1:00-CV-1898, Dkt. # 1430 (S.D.N.Y. Jun. 15, 2007) ............................................. passim

*Dukes v. Wal-Mart, Inc.*,
  509 F.3d 1168 (9th Cir. 2007) ............................................................................................... 4

*Dukes v. Wal-Mart Stores, Inc.*,
  222 F.R.D. 137 (N.D. Cal. 2004) .......................................................................................... 3

*Hilao v. Estate of Marcos*,
  103 F.3d 767 (9th Cir. 1996) ................................................................................................. 4

*In re Chevron*,
  109 F.3d 1016 (5th Cir. 1997) ..................................................................................... 4, 9, 10

*Microsoft Corp. v. Bristol Tech., Inc.*,
  250 F.3d 152 (2d Cir. 2001) .................................................................................................. 7

*National R.R. Passenger Corp. v. Pennsylvania Public Utility Com'n*,
  288 F.3d 519 (3d. Cir. 2002) ............................................................................................... 10

*Philip Morris USA v. Williams*,
  549 U.S. 346 (2007) .............................................................................................................. 6

*Simon v. Philip Morris, Inc.*,
  200 F.R.D. 21 (E.D.N.Y. 2001) ............................................................................................ 3

*Stevens v. Owens-Corning Fiberglas Corp.*,
  49 Cal. App. 4th 1645 (1996) ............................................................................................ 7, 8

**Statutes**

Fed. R. Civ. P. 42 ......................................................................................................................... 3

**Constitutional Authorities**

U.S. Const. .................................................................................................................................passim

U.S. Const. amend. VII ............................................................................................................passim

**Other Authorities**

Alexandra D. Lahav, *Bellwether Trials*,
  76 Geo. Wash. L. Rev. 576 (2008) ........................................................................................... 4

I.      **INTRODUCTION**

Defendants' assertion that the "*only way*" to try this case without violating their constitutional rights is to try all of Plaintiff's 39 hit wells in a single trial, (*see* Defendants' Objection to Focus Well Trial Plan ("Objection") at 3) fundamentally misconstrues the Seventh Amendment, Due Process and fairness. None mandates such rigid procedural formalism. The Constitution readily permits a carefully tailored trial management plan like the one established by the Court in Case Management Order No. 42 ("CMO"), which adopts the bellwether approach taken in *County of Suffolk v. Amerada Hess Corp*, (*In re MTBE Prods. Liab. Litig.*), No. 1:00-CV-1898, Dkt. # 1430 (S.D.N.Y. Jun. 15, 2007) ("Trial Order").[1] Such a plan properly takes into account the need for expeditious resolution, judicial economy, and the convenience of the Court, the jury and the parties.

Defendants' objections to the Trial Order arise almost entirely from their misreading of sentences out of context, thereby ignoring the Court's careful attention to the Seventh Amendment and Due Process. A proper reading of the Trial Order reveals no basis for abandoning it. As set forth in the CMO, the Trial Order and at the October 2 and October 30, 2008 status conferences, the trial plan for this action contains the following salient features:

(1) Each side selects 5 representative wells for bellwether trial (the parties have already completed this process). CMO at ¶¶ 3, 5.

(2) The bellwether trial will decide "all issues with respect to" the representative wells, including all legal issues necessary to determine compensatory and punitive damages. Trial Order at 6.

(3) The bellwether trial will bind only the parties to this litigation. *See* Trial Order at 8 ("there is no other plaintiff who will benefit from the trial"); *see also id.* at 8 n.16.

---

[1] Attached as Exhibit A.

(4) During the bellwether trial, the jury will make findings regarding "common issues of tort liability." Trial Order at 9.  For example, the jury might decide issues like (a) whether defendants knew of the dangers of MTBE at various points in time or (b) whether defendants provided adequate warnings regarding the dangers of MTBE.  *See id.* at 11-12.

(5) To the extent that these findings on common issues result in a jury verdict for *either side* or as to a particular defendant, the Court will enter an appealable judgment.  *Id.* at 11. These appealable judgments will be given preclusive effect in any subsequent trials regarding the remaining wells.  *Id.* at 12-13.  The preclusive effect of any appealable judgment after verdict will therefore be mutual, leaving no room for reexamination of common issues actually decided in the bellwether trial by a subsequent jury.  *Id.* at 13.[2]

(6) Plaintiff may seek punitive damages for the representative wells.  Trial Order at 16.  At the conclusion of the representative trial, the Court will allow the jury only to award a ratio or multiplier, rather than a dollar figure.  The Court will then assess whether the jury award was proportionate.  *Id.* at 19.

   a. The Court will carefully instruct the jury concerning the existence of the remaining wells in accordance with relevant Due Process jurisprudence.  *Id.* at 16-17.

   b. If additional trials prove necessary, the Court will evaluate later punitive damages awards, if any, in light of the first or earlier awards.  If the total award

---

[2] If there is no appealable judgment entered with regard to the trial or a particular cause of action, for example, because the jury deadlocks, then there are no factual findings and hence no reexamination issues with subsequent juries.  *See* Trial Order at 12 n. 22.

for all wells is disproportionate or excessive, the Court will strike the later awards before entering an appealable judgment. *Id.* at 19.

As detailed below, the Trial Order definitively answers Defendants' meritless objections and Defendants have pointed to no subsequently decided controlling legal authority or compelling factual distinctions between this litigation and *Suffolk* justifying reconsideration by the Court. The matter requires no further analysis; the Court should overrule Defendants' objections and confirm its adoption of the Trial Order.[3]

## II. ARGUMENT

### a. The Trial Order Comports with the Federal Rules of Civil Procedure and Due Process

Federal Rule of Civil Procedure 42(b) provides the Court's authority to sever issues for trial. *See id.* ("For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, [or] claims").[4] This "almost unlimited" power to bifurcate and sever issues and claims for trial is critical to managing complex litigation. *Simon v. Philip Morris, Inc.*, 200 F.R.D. 21, 27-32 (E.D.N.Y. 2001). As detailed in the Second Cir. Brief at 34-35, the plan here resembles closely those ordered by several courts that recognize the efficiency in separating general liability from damages phases.[5]

---

[3] In addition, the Brief for Plaintiffs-Appellees in *County of Suffolk v. Amerada Hess Corp.*, (*In re MTBE Prods. Liab. Litig.*), No. 07-3043-cv (2d Cir., filed Oct. 15, 2007) ("Second Cir. Brief") and Plaintiff's Supplemental Submission regarding Trial Order filed in *Suffolk* on May 14, 2007 ("Suppl. Submission"), attached as Exhibits B and C, address these issues in depth and are hereby incorporated by reference.

[4] Federal Rule of Civil Procedure 42(b) was amended in 2007 as part of the general restyling of the Federal Rules. The Amendment was not intended to alter its meaning. *See* Fed. R. Civ. P. 42 advisory committee's notes.

[5] In addition to the authorities cited in the Second Cir. Brief, *see also Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D. 137, 188, 188 n. 59 (N.D. Cal. 2004) (approving a trial plan in which liability of punitive damages is assessed in phase one of a class action, and stating that punitive damages

- 3 -

As the Court explained in the Trial Order, a bellwether trial like this one "allows a court and jury to give the major arguments of both parties due consideration without facing the daunting prospect of resolving every issue in every action." Trial Order at 4-5. Several courts have found that bellwether trials can proceed without violating the parties' substantive or procedural due process rights. *See Hilao v. Estate of Marcos*, 103 F.3d 767, 771, 780-82 (9th Cir. 1996); *In re Chevron*, 109 F.3d 1016, 1017, 1019 (5th Cir. 1997) ("*Chevron*"); *see also Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1191-93 (9th Cir. 2007) (examining *Hilao* and finding that it provides a method to protect the "due process rights of all involved parties"); *c.f.* Alexandra D. Lahav, *Bellwether Trials*, 76 Geo. Wash. L. Rev. 576, 578, 589, 592 (2008) (bellwether trials in mass tort cases "realize the democratic policies animating the jury right and the aims of the substantive law"). As this Court previously held, the Trial Order therefore comports with the Federal Rules of Civil Procedure and Due Process.

### b. The Trial Order Does Not Violate the Seventh Amendment's Reexamination Clause

Despite Defendants' insistence to the contrary, under the Trial Order the jury's findings on common liability issues will have preclusive effect in subsequent trials if the Court enters an appealable judgment. *See* Trial Order at 12; *see also id.* at 12 n. 22 (collecting cases). For example, should Plaintiff succeed in establishing common liability for particular defendants (*e.g.* by showing that they manufactured a defective product) and succeed in establishing all other facts necessary for a favorable verdict for those defendants (*e.g.*, well-specific causation and damages) and there are subsequent trials regarding the remaining wells, issue preclusion will apply to those defendants who suffered an adverse verdict in the first trial. Thus juries in

---

will only be available to class members who are able to establish eligibility for an award of lost pay).

subsequent trials on the remaining wells will not reexamine the findings of an earlier jury.  In contrast, for a particular defendant subject to common liability but who evades a prior adverse verdict (*e.g.* the jury finds that defendant manufactured a defective product, but did not cause Plaintiff's damages), there will be no appealable judgment, no jury finding, and hence Plaintiff will need to prove that defendant's liability in front of a subsequent jury.

This does not mean, as Defendants contend, that supposed reexamination "applies only in the event of an initial defense verdict." Objection at 4.  Rather, as noted above, those findings will equally bind Plaintiff.  Nothing in the Trial Order supports Defendants' assumption that Plaintiff could continue to try the questions submitted to the first jury until they get a verdict for Plaintiff.  For example, if a jury entered an appealable defense verdict for a particular Defendant on the basis that the Defendant never manufactured gasoline containing MTBE, Plaintiff could not re-litigate that finding in subsequent trials.

In sum, subsequent juries will not reexamine any matter already litigated and determined that comprises part of an appealable judgment, rendering the possibility of issue preclusion mutual.  The Trial Order in no way violates the Seventh Amendment's Reexamination Clause. *See* Trial Order at 13; *see also id.* at 13 n. 24.

    c. **The Trial Order's Provisions Concerning Punitive Damages Comport with Due Process**

      i. **The Trial Order Does Not Allow Multiple Juries to Award Punitive Damages for the Same Conduct**

Each contaminated well represents a distinct harm to Plaintiff and an independent tort claim, which provides an independent basis for punitive damages.  As noted in the Trial Order, plaintiff could have brought a separate lawsuit alleging damage to each separate well.  *See id.* at 18 (*citing* 4/27/07 TR at 38).  Therefore the jury in the first trial will award punitive damages, if

5

any, based on a particular defendant's liability for contaminating the representative wells. Juries in subsequent trials will base any punitive damages award on particular defendants' liability for contaminating the remaining wells.

The jury will likely know of the existence of the remaining wells and Defendants' overall conduct. Under the Trial Order, plaintiff will present the jury with all evidence of Defendants' alleged egregious conduct in the liability phase of the first trial and the jury will determine whether Defendants' conduct supports an award of punitive damages. *Id.* at 16. If the jury finds punitive damages appropriate, it will specify a punitive damages award for the first subset of wells expressed as a multiplier of compensatory damages. Trial Order at 15, 16, 19. Successive juries would not determine eligibility (which is a component of the common issues phase); rather, they would determine only the appropriate multiplier to apply to calculate punitive damages for the set of wells tried before them. *Id*. Each jury (including the first one) will be carefully

> instructed that it is only hearing evidence as to a subset of the wells that [P]laintiff[] allege[s] have suffered damage as a result of MTBE contamination. Each jury will be further instructed that it cannot consider *damage* to wells other than those currently on trial because there will be no proof at that trial as to whether those other wells sustained any damage, nor proof of who is responsible for damage, if any, to the other wells.

Trial Order at 16-17. These jury instructions are "not unusual," *see id.* at 17, and this approach comports with the Supreme Court's guidance in *Philip Morris USA v. Williams*, which instructs that punitive damages may be assessed based upon evidence of the reprehensibility of Defendants' overall conduct, but that the damages awarded must relate only to the harms *sub judice*. 549 U.S. 346, 353-54 (2007); *see also id.* at 355 (evidence of harm to nonparties and to the general public is admissible to show reprehensibility as long as the amount of punitive damages relates to the plaintiff's harm); Second Cir. Brief at 41-42.

In addition, although the amount of punitive damages should be left to the discretion of the jury, *Microsoft Corp. v. Bristol Tech., Inc.*, 250 F.3d 152, 155 (2d Cir. 2001), the amount of punitive damages imposed by the jury is not itself a "fact" within the meaning of the Seventh Amendment's Reexamination Clause.  *See Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 437 (2001).  Because the jury's award does not constitute a finding of "fact," Defendants' Seventh Amendment concerns lack merit.  *Id.*

### ii. There Is No Constitutional Right to Have a Jury Determination of Punitive Damages Expressed in Absolute Dollars

Defendants assert that they have a constitutional right to have "[p]unitive [d]amages [e]xpressed in [a]bsolute [d]ollars," but they cite no legal authority for the novel assertion that the Supreme Court's punitive damages jurisprudence mandates such rigid procedural formalism. *See* Objection at 6.  Instead, the weight of authority argues for the exact opposite conclusion. *See* Suppl. Submission at 2-5.

While Defendants' failure to refer to any authority makes it difficult to understand their argument, it appears that Defendants speculate that if a jury were aware of the total compensatory and punitive damages awards in dollar amounts rather than ratios, it would consider the appropriate factors and conceivably award a smaller amount of damages, while if the same jury considers compensatory damages awards in dollar amounts and uses ratios to assess punitive damages, it would not.  Defendants' provide no clear basis for this speculation.  Plaintiff suggests that clear jury instructions regarding punitive damages will avoid any such imagined pitfalls.  *See* Second Cir. Brief at 43-44; *see also Stevens v. Owens-Corning Fiberglas Corp.*, 49 Cal. App. 4th 1645, 1663 (1996) ("juries are capable of properly evaluating the impact of other awards against the defendant when weighing the deterrent effect of a punitive damage

award"). Moreover, the Supreme Court punitive damages jurisprudence has focused on ratios, *not* dollar amounts. *See* Suppl. Submission at 2-5 (citing cases).

### d. The Trial Order Allows for Meaningful Due Process Review of the Proportionality of Any Punitive Damages Award

The Court carefully crafted the Trial Order to preserve Defendants' right to a due process review of any punitive damages awards. After the initial trial on representative wells and after each subsequent trial on the remaining wells, the Court will have the opportunity to assess the proportionality of the jury award. *Id.* at 19. The Trial Order provides for such review both on an individual trial-level basis and in the aggregate after the completion of each successive trial. *Id.* at 19. If additional trials prove necessary, the Court will have an opportunity to evaluate later punitive damages awards, if any, in light of the first or earlier awards. If the total award for all wells is constitutionally defective, the Court will strike the later awards before entering an appealable judgment. *Id.* at 19. Defendants' concerns are unfounded.

### e. The Selected Focus Wells Are Representative and *Chevron* is Inapposite

The ten focus wells selected for trial are representative. The Court expressly allowed each side to select five representative wells for trial and, to the extent Defendants' objection is predicated on the five wells they selected, they were provided with relevant data and documents and should not be allowed to argue that they are somehow unrepresentative. *See*, *e.g.*, 10/30/2008 TR at 29-30 (admission by J. Pardo that Defendants' possess relevant data and requesting additional data for selection of Defendants' five focus wells). The wells selected by Plaintiff – especially in combination with those selected by Defendants – highlight the legal and factual issues necessary to determine the common issues of tort liability necessary for the resolution of Defendants' liability for the harm caused to remaining wells. *See* 10/30/2008 TR at 23-24, 26-27. The focus wells will also provide guidance on a range of well-specific issues and

may help resolve the remaining claims.  For example, the wells present factual issues related to the date of discovery of MTBE contamination, the presence of other contaminants, past use, and plans for future use.

Furthermore, Defendants' analyses of average MTBE detections in the focus wells are irrelevant and misleading.  Plaintiff selected 5 wells with a range of MTBE detections that include very high detections (Well 6D, with detections up to 350 ppb), low detections (Well 33, maximum past detection of 2.1 ppb) and mid-level detections (Well 6B, historic maximum of 6.5 ppb).  The focus wells therefore represent the range of individual wells, allowing the jury to consider the issues presented by high concentrations, low concentrations and mid-level concentrations and to give guidance about all.  In any event, findings by the jury about well-specific injuries will not receive preclusive effect in subsequent proceedings in this litigation concerning other wells.  *See* Trial Order at 12.  Defendants' objection therefore lacks any factual basis.

As in *Suffolk*, Defendants rely heavily on the Fifth Circuit's decision in *Chevron* for the proposition that use of allegedly "hand-picked" wells to litigate common issues in the context of a single case violates due process and that the wells must be "randomly" selected.  Objection at 7-8.  As pointed out in the Trial Order, *Chevron* concerned whether issues litigated in a bellwether trial could be given preclusive effect in *separate* cases brought by *different* plaintiffs; an issue not presented by the Trial Order.  *See id*. at 7-8.

This litigation does not raise the same issues addressed in *Chevron.*  As the Trial Order points out, "*Chevron* involved approximately three thousand plaintiffs suing a single defendant for harm arising from its acts and omissions."  *See* Trial Order at 8.  In contrast, here only one plaintiff – the City of New York -- sues multiple defendants for harm to approximately 39 hit

- 9 -

wells owned or managed by it.  As in *Suffolk*, the "extrapolation question . . . is thus quite different than the one addressed in *Chevron* – in this action, there is no other plaintiff who will benefit from the trial, to the detriment of the defendants, from any verdict reached in the proposed trial of representative wells."  *Id.*  Indeed, the Trial Order contemplates that "preclusion would attach only *if and when it is proven to a different jury that other wells in fact sustained any harm*," and that "the results of the proposed trial of representative wells will *not* be extrapolated into a finding of liability with respect to any other well involved in this action."  *Id.* at 9.

The distinctions drawn in the case law between mutual and non-mutual issue preclusion further supports this approach.  *See, e.g., National R.R. Passenger Corp. v. Pennsylvania Public Utility Com'n*, 288 F.3d 519, 525 (3d. Cir. 2002) (discussing the bearing of the "mutuality" factor in a case involving offensive mutual estoppel).  *Chevron*'s disapproval of offensive *non-mutual* issue preclusion has no bearing on this case, which implicates only *mutual* issue preclusion.

### f. Defendants Prematurely and Incorrectly Object to the Preclusive Effect of Trial Results

The Trial Order, properly, does not contain an exhaustive analysis of the preclusive effect of a jury verdict in the first trial on subsequent trials.  Obviously, those decisions must await the final judgment in the first trial.  The Trial Order *does*, however, expressly provide that "[t]he verdict reached in this trial will only bind the parties who participate in the trial and then only if a verdict is reached as to that party," Trial Order at 11, and that "the results of the proposed trial of representative wells will not be extrapolated into a finding of liability with respect to any other well involved in this action," *id.* at 9.

Contrary to Defendants' assertion, Plaintiff envisions that the first trial might resolve certain common issues that could very well be identical from trial to trial.  For instance, the jury

- 10 -

might decide issues like (a) whether defendants knew of the dangers of MTBE at various points in time and (b) whether defendants provided adequate warnings regarding the dangers of MTBE. *See* Trial Order at 11-12.  With regard to each of these common issues, the Court has indicated that it will follow requirements for issue preclusion, so any objection that it will not is speculative, if not imaginary.  *See id.* at 11 n. 21.

### g.  The Trial Order Is Fair to All Parties

Defendants finally argue that bifurcation is improper if it is unfair to the parties.  For all of the reasons stated in the Trial Order and discussed above, the trial plan is fair and appropriate.  As explained above, the Trial Order's carefully avoids the reexamination of any issue.  *A fortiori*, the issues are separate and distinct enough to avoid injustice to any party.  The case cited by Defendants, *Angelo v. Armstrong World Industries, Inc.*, 11 F.3d 957 (10th Cir. 1993), supports rather than undermines this point.  There, the Court upheld a reverse bifurcation order, finding that abstract fairness protests similar to those made here about the supposed inability to develop part of the liability story were meritless and that a specific demonstration of the supposed unfairness was required.  *See id.* at 965.  Defendants have made no such demonstration here.

Defendants' final argument -- that they will be unable to present evidence with regard to every well at issue -- is contrary to the Trial Order.  Pursuant to the Trial Order, common issues will be litigated on a common basis, and well-specific issues will be litigated individually.  In conclusion, Defendants fairness objections are meritless.

//


//

### III. CONCLUSION

For the foregoing reasons, the Court should summarily overrule Defendants' objections and confirm its adoption of the Trial Order.

Dated:  San Francisco, California
        February 12, 2009

> MICHAEL A. CARDOZO
> Corporation Counsel of the City of New York
> Attorney for Plaintiff City of New York
> 100 Church Street
> New York, New York 10007
> (212) 788-1568
>
> By:    /s/ Nicholas G. Campins
> VICTOR M. SHER *(pro hac vice)*
> TODD E. ROBINS *(pro hac vice)*
> NICHOLAS G. CAMPINS *(pro hac vice)*
>
> SHER LEFF LLP
> 450 Mission Street, Suite 400
> San Francisco, CA 94105
> (415) 348-8300
>
> *Attorneys for Plaintiff City of New York*

## **CERTIFICATE OF SERVICE**

I, Nicholas G. Campins, hereby declare under penalty of perjury that a true and correct copy of Plaintiff City of New York's Response to Defendants' Objection to Focus Well Trial Plan and Request for Single Trial of All Wells at Issue was served this 12th day of February, 2009 upon Liaison Counsel via Electronic Mail, and upon all counsel via SDNY CM/ECF and LexisNexis File & Serve.

  /s/ Nicholas G. Campins

NICHOLAS G. CAMPINS