Exhibit B



16682668
Oct 15 2007
7:32PM

# 07-3043-cv

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT



COUNTY OF SUFFOLK and SUFFOLK COUNTY WATER AUTHORITY,

*Plaintiffs-Appellees,*

*v.*

ATLANTIC RICHFIELD COMPANY, BP PRODUCTS NORTH AMERICA, INC., CHEVRON U.S.A., INC., CHEVRONTEXACO CORPORATION, COASTAL EAGLE POINT OIL COMPANY, CONOCO PHILLIPS COMPANY, EL PASO MERCHANT ENERGY, L.P., EQUISTAR CHEMICALS, LP, EXXON MOBIL CORPORATION, formerly known as Exxon Corporation, formerly known as Mobile Corporation, GETTY PETROLEUM MARKETING, INC., HESS CORPORATION, IRVING OIL CORPORATION, IRVING OIL LIMITED, LYONDELL CHEMICAL COMPANY, MARATHON PETROLEUM COMPANY, MOTIVA ENTERPRISES, LLC, SHELL OIL COMPANY, SHELL OIL PRODUCTS COMPANY, SHELL OIL PRODUCTS COMPANY LLC, SHELL TRADING

*(Additional Caption On the Reverse)*

*On Appeal from the United States District Court
for the Southern District of New York*

## BRIEF FOR PLAINTIFFS-APPELLEES

Robin Greenwald, Esq.
Robert Gordon, Esq.
WEITZ & LUXENBERG, P.C.
180 Maiden Lane
New York, New York 10038
212-558-5500

*Attorneys for Plaintiffs-Appellees
County of Suffolk and
Suffolk County Water Authority*

(US) COMPANY, TEXACO, INC., TEXACO REFINING AND MARKETING COMPANY, INC., TEXACO REFINING & MARKETING (EAST), INC., PREMCOR REFINING GROUP, INC., TOTAL PETROCHEMICALS USA, INC., TRMI HOLDINGS INC., TMR COMPANY, VALERO ENERGY CORPORATION, doing business as Valero Marketing and Supply Company, VALERO MARKETING AND SUPPLY COMPANY and VALERO REFINING AND MARKETING COMPANY, VALERO REFINING COMPANY,

*Defendants-Appellants.*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ......................................................................... iii

PRELIMINARY STATEMENT ..................................................................1

JURISDICTIONAL STATEMENT ...........................................................2

    I.    The District Court's Denial Of Defendants' Motion To Remand The Suffolk Case To State Court Does Not Provide An Avenue Of Appellate Jurisdiction Over The Instant Appeal ...........4

    II.   The Trial Plan Order Is Not Reviewable As A Collateral Order Under Section 1291 ..................................................................6

    III.  The Trial Plan Order Does Not Constitute "Extraordinary Circumstances" Warranting Mandamus Jurisdiction.............................7

STATEMENT OF THE CASE..................................................................7

STATEMENT OF FACTS .......................................................................10

SUMMARY OF ARGUMENT ................................................................13

ARGUMENT ...........................................................................................16

    I.    There Is No Appellate Jurisdiction To Hear The Instant Appeal .........16

        A.   The First Argument Defendants Assert For Appellate Jurisdiction Is Neither Relevant To Nor Properly The Subject Of This Appeal ...............................................................16

            1.    Defendants should not be permitted to raise the same issues in multiple for a and in multiple filings for appellate review of interlocutory orders before this Court.........16

            2.    The District Court properly denied Defendants' motion to remand *Suffolk* ......................................................18

**Page**

B. An Immediate Review of the Trial Plan Order At This State of the Litigation Would Be Premature and Contravene the Finality Requirement of Section 1291 of Title 28 ..........................................................................20

    1. The Trial Plan Order Is Not A Final Decision Of A District Court As Requited By 28 U.S.C. § 1291 .................20

    2. The District Court's Trial Plan Order Pursuant To Rule 42(b) Does Not Satisfy The Collateral Order Doctrine For Appealability Of *Cohen v. Beneficial Industrial Loan Corp.* ..........................................................22

    3. Immediate Review Of The Trial Plan Order IS Inconsistent With The Purpose Of The Collateral Order Doctrine Because Any Alleged Harm That May Be Perpetuated By The Order Is Purely Speculative ...........................................................................24

C. Defendants Cannot Satisfy The Stringent Standard for the Extraordinary Remedy of Mandamus ...........................................26

II. The District Court Properly Ordered a Simple Plan for Trial..............33

A. The District Court's Order Allows for Neither Reexamination or "One-Way" Issue Protection ...........................38

B. The District Court's Order Provides a Logical and Appropriate Approach to Punitive Damages ................................41

C. Mandamus Relief is Unwarranted...................................................44

CONCLUSION........................................................................................................46

CERTIFICATE OF COMPLIANCE.....................................................................48

## <u>TABLE OF AUTHORITIES</u>

### <u>FEDERAL CASES</u>

*American Express Warehousing*, 380 F.2d 277 (2d Cir. 1967).....................29

*Aref v. United States of America*, 452 F.3d 202 (2d Cir. 2006) ........ 27, 29, 45

*In re Austrian, German Holocaust Litigation*, 250 F.3d 156
    (2d Cir. 2001)...........................................................................................29

*Barr Laboratories, Inc. v. Abbott Laboratories*, 978 F.2d 98
    (3d Cir. 1992)...........................................................................................23

*Beeck v. Aquaslide N' Dive Corp.*, 562 F.2d 537 (8th Cir. 1977) ........... 36, 37

*In re Bendectin Litigation*, 857 F.2d 290 (6th Cir. 1988).................. 35, 36, 37

*In re Beverly Hills Fire Litigation*, 695 F.2d 207 (6th Cir. 1982)........... 36, 37

*Bowie v. Sorrell*, 209 F.2d 49 (4th Cir. 1953) .................................................36

*California v. Atlantic Richfield Co. (In re: MTBE Products Liability
    Litigation)*, 488 F.3d 112 (2d Cir. 2007)....................................... 9, 10, 19

*Caterpillar, Inc. v. Lewis*, 519 U.S. 61 (1996) ...............................................18

*Chevron U.S.A., Inc.*, 109 F.3d 1016 (5th Cir. 1997)....................... 31, 32, 33

*Cimino v. Raymark Industries, Inc.*, 151 F.3d 297 (5th Cir. 1998)......... 34, 35

*Cohen v. Beneficial Industrial Loan Corp.*,
    337 U.S. 541 (1949)......................................... 6, 22, 23, 24, 26

*Colonial Times, Inc. v. Gasch*, 509 F.2d 517 (D.C. Cir. 1975).....................30

*Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*,
    532 U.S. 424 (2001)...............................................................................25

*Coopers and Lybrand v. Livesay*, 437 U.S. 463 (1978) .................................20

*Crummett v. Corbin*, 475 F.2d 816 (6th Cir. 1973) ........................................23

*In re Department of Investigation of the City of New York*,
    85 F.2d 65 (2d Cir. 1988) ...........................................................30

*In re F.C.C.*, 217 F.3d 125 (2d Cir. 2000)......................................27

*Ex parte Fahey*, 332 U.S. 258 (1947) .............................................43

*Gaffney v. Riverboat Services of Indiana, Inc.*, 451 F.3d 424
    (7th Cir. 2006) .........................................................................21

*Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison*,
    955 F. Supp. 248 (S.D.N.Y. 1997) ...........................................28

*Ibeto Petrochemical Industries Ltd. v. M/T Beffen*, 475 F.3d 56
    (2d Cir. 2007).................................................................... 22, 23

*Jacobson v. Cohen*, 1995 WL 296733 (S.D.N.Y. May 16, 1995).................28

*Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468 (5th Cir. 1986)......... 34, 37

*Leonhard v. U.S.*, 633 F.2d 599 (2d Cir. 1980) .............................................18

*In re Master Key Antitrust Litigation*, 528 F.2d 5
    (2d Cir. 1975)..................................................................... 21, 22, 25

*Microsoft Corp. v. Bristol Tech., Inc.*, 250 F.3d 152 (2d Cir. 2001).............24

*Moss v. Associated Transport, Inc.*, 344 F.2d 23 (6th Cir. 1965) .................23

*O'Dell v. Hercules, Inc.*, 904 F.2d 1194 (8th Cir. 1990) ...............................23

*Philip Morris USA v. Williams*, 549 U.S. ___, 127 S.Ct. 1057
    (Feb. 20, 2007)..................................................................... 41, 42

*In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293 (7th Cir. 1995) ....................30

*Ruby v. Secretary of the U.S. Navy*, 365 F.2d 385 (9th Cir. 1966),
    *cert. denied*, 386 U.S. 1011 (1967) ...........................................18

iv

*SEC v. Chestman*, 861 F.2d 49 (2d Cir. 1988) .................................................23

*Sachs & Co. v. Edelstein*, 494 F.2d 76 (2d Cir. 1974) ..................... 28, 31, 32

*Sanford v. Johns-Manville Sales Corp.*, 923 F.2d 1142
    (5th Cir. 1991) .................................................................... 35, 37

*Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355 (2d Cir. 2003) ................28

*Simon v. Philip Morris, Inc.*, 200 F.R.D. 21 (E.D.N.Y. 2001)............... 33, 34

*In re Steinhardt Partners, L.P.*, 9 F.3d 230 (2d Cir. 1993) ...........................28

*Travelers Indemnity Co. v. Miller Manufacturing Co.*,
    276 F.2d 955 (6th Cir. 1960) ...................................................21

*In re United States*, 10 F.3d 931 (2d Cir. 1993) ...........................................30

*United States v. Afram Lines*, 159 F.R.D. 408 (S.D.N.Y. 1994)...................28

*United States v. Coppa*, 267 F.3d 132 (2d Cir. 2001) ...................................30

*United States v. Helmsley*, 864 F.2d 266 (2d Cir. 1988) ........................ 25, 29

*In re von Bulow*, 828 F.2d 94 (2d Cir. 1987).......................................... 29, 30

*In re W.R. Huff Asset Management Co., LLC.*, 409 F.3d 555
    (2d Cir. 2005)...........................................................................27

*Will v. Hallock*, 546 U.S. 345 (2006) ...........................................................22

## **DOCKETED CASES**

*In re: Amerada Hess Corp, et al.*, Docket No. 07-4290-OP ..........................10

*In re: Amerada Hess Corp, et al.*, Docket No. 07-4308-OP ..........................10

*County of Suffolk et al. v. Amerada Hess et al.*,
    Civil Action No. 04-CV-5424 .......................................... *passim*

*In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, Master File No. 1:00-1898 (SAS) .............................................. 6

## FEDERAL STATUTES

Fed. R. App. P. 21(b)(1) .................................................................. 6

Fed. R. App. P. 32(a)(7) ................................................................. 48

Fed. R. Civ. P. 42 .......................................................................... 28

Fed. R. Civ. P. 42(b) ............................................................ *passim*

Fed. R. Civ. P. 54(b) ..................................................................... 29

15 U.S.C. § 2601 *et seq* ................................................................. 2

28 U.S.C. § 1291 ............................................ 6, 12, 14, 20, 21, 46

28 U.S.C. § 1292 ........................................................................... 12

28 U.S.C. § 1331 ............................................................................. 2

28 U.S.C. § 1367 ........................................................................... 10

28 U.S.C. § 1442(b) ....................................................................... 7

28 U.S.C. § 1651(b) ..................................................................... 12

## MISCELLANEOUS

Alan Wright & Arthur R. Miller, Federal Practice And Procedure § 2392 (3d ed. 1998 & Supp. 2007) .......................................... 21

## PRELIMINARY STATEMENT

The Defendants in this case -- the country's largest oil refineries and suppliers of gasoline -- made a business decision to use methyl tertiary butyl ether ("MTBE") as a gasoline additive for oxygenated motor gasoline.  They made this decision despite widespread internal industry forecasts that this chemical would contaminate the nation's groundwater and, therefore, drinking water supplies of communities across the country.  Defendants did not share their forecasts with the government, public water providers, downstream handlers of gasoline or the public generally.  The industry's studies and premonitions turned out to be true -- as a result of Defendants' widespread use of MTBE in gasoline, there are thousands of drinking water wells contaminated with MTBE throughout the country.

Plaintiff Suffolk County Water Authority is one of the many innocent public water providers that has been injured by Defendants' business decision.  In the Suffolk County Water Authority drinking water well system alone, approximately 182 of its 525 water supply wells are currently contaminated with MTBE.  Because at extremely low concentration levels MTBE imparts a foul taste and odor in drinking water, because of MTBE's health concerns, and because the cost to install, operate and maintain a treatment system for a single well to remove the MTBE is in the millions of dollars, Plaintiffs seek damages, *inter alia*, for treatment of its MTBE-contaminated wells to remove the MTBE from the water

before the drinking water is distributed to their customers.  Moreover, because Defendants knew all about MTBE's taste and odor and health impacts and that MTBE as a gasoline additive would cause widespread groundwater contamination, and thus drinking water contamination, throughout the country well before deciding to use MTBE as a gasoline additive, Plaintiffs also seek punitive damages.

As a result of the enormity of the problem -- and thus the large number of wells at issue in just this one case -- the United States District Court for the Southern District of New York, the Honorable Shira A. Scheindlin, entered an order for the trial of some of the 182 contaminated wells ("Trial Plan Order" or "Order") in *County of Suffolk et al. v. Amerada Hess et al.,* Civil Action No. 04-CV-5424 ("*Suffolk*").  The Order is not a collateral order.  It is an order within the sound discretion of the District Court to ensure an orderly trial of a large, multi-issue case.  It is an order that complies with the dictates of the Seventh Amendment.

## JURISDICTIONAL STATEMENT

The District Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because the Sixth Amended Complaint contains a federal question under the Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2601 *et*

*seq*.  Because the District Court has jurisdiction over the *Suffolk* case, it had jurisdiction to issue the Trial Plan Order at issue on this appeal.

This Court, however, does not have jurisdiction to hear this appeal.  There is nothing collateral about the District Court's Trial Plan Order because it does not finally determine any claim or rights separable from those intrinsic to the *Suffolk* action.  Rather, it is an interlocutory order setting forth the orderly trial of a large case.  Defendants cannot through the back door try to invoke this Court's jurisdiction by arguing that the District Court did not have jurisdiction to issue the Trial Plan Order.  Their argument is not only substantively incorrect, but raising such an argument in this appeal is an abuse of the rules and procedures of this Court and is one more instance of the Defendants' effort to game the judicial process to forestall the now impending trial in the *Suffolk* case.

Moreover, the Trial Plan Order does not warrant mandamus relief as it does not constitute a usurpation of power by the District Court, nor is its entry an abuse of the District Court's discretion.  Because the Defendants have made the jurisdiction of the District Court an issue in this appeal (even though they seek separate review of this very issue through two mandamus petitions) and because the absence of appellate jurisdiction is at the heart of this appeal, Plaintiffs address these jurisdictional issues more fully in Point I of the Argument and only summarize them below.

I.    **The District Court's Denial Of Defendants' Motion To Remand The
      *Suffolk* Case To State Court Does Not Provide An Avenue Of Appellate
      Jurisdiction Over The Instant Appeal.**

Defendants seem to believe they can raise through the back door of this
appeal an issue that they have brought squarely before this Court in separate
petitions for mandamus.  But Defendants cannot litigate the same issue in multiple
courts and/or multiple appeals whenever it suits them.

First, at the time of filing the instant appeal, Defendants stated in their Form
C Statement as one of the issues on appeal "[w]hether the District Court had
subject-matter jurisdiction to enter the Trial Order."  Yet at that time, Defendants'
motion in the district court to remand for lack of subject matter jurisdiction had
been on file for only one week, and Plaintiffs had not yet filed their opposition to
that motion, much less the District Court having had the opportunity to consider
Defendants' arguments.   Because of the premature nature of the Defendants'
appeal, Plaintiffs moved to dismiss the instant appeal in this Court.  That motion is
pending.  For this reason alone, Defendants should not be permitted to pursue the
merits of this appeal.

To compound their errors in this appeal, Defendants filed their merits brief
in this Court on the issue of the District Court's lack of subject matter jurisdiction
*before* the District Court issued its 72-page decision denying their own motion for

remand.  Accordingly, Defendants have not even addressed the legal analyses and authorities in the District Court's decision.

Additionally, the appendix in this appeal necessarily does not even contain the District Court's decision denying remand, let alone numerous other relevant documents necessary for appellate review of the District Court's denial of Defendants' remand motion.  Such an appendix would include, *inter alia*, (1) Memorandum of Law in Support of Third Party Marathon Ashland Petroleum LLC's Motion to Stay Proceedings, dated April 19, 2004; (2) Third-Party Defendant Marathon Ashland's Memorandum of Law in Opposition to Plaintiffs' Motion for Remand of *Suffolk* to state court, dated May 28, 2004; (3) Plaintiffs' request to amend their complaint to add a cause of action under TSCA; (4) relevant District Court transcript references, including Defendants' failure to object to Plaintiffs' amendment of the complaint; and (5) Defendants' answer to the TSCA allegations.

Defendants' effort to game the appellate process is further evident because, in petitions separate from the instant appeal, with separate appeal numbers, they now seek mandamus of the District Court's denial of their motion to remand *Suffolk*.  In two petitions, filed on October 4 and 5, 2007, Defendants ask this Court to resolve the very same issues that Defendants ask this Court to decide here.  The

instant appeal on the merits of the Trial Plan Order is not the appropriate forum to address the merits of the District Court's denial of remand.[1]

Even if this Court were to consider the propriety of the District Court's remand denial, the law is clear that the federal TSCA claim conferred federal jurisdiction over the *Suffolk* action, and the District Court has jurisdiction to preside over *Suffolk*.

## II.   The Trial Plan Order Is Not Reviewable As A Collateral Order Under Section 1291.

The Order being appealed from sets forth the order of the trial, under Rule 42(b) of the Federal Rules of Civil Procedure, for one of over eighty cases in the federal multi-district litigation entitled *In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, Master File No. 1:00-1898 (SAS)("MDL 1358").   Federal courts routinely refuse to hear appeals from such Rule 42(b) interlocutory orders because they are not final orders.

The Trial Plan Order does not satisfy the collateral order doctrine for appealability of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), either because the Order does not determine finally claims or rights separable from or collateral to the rights asserted in the *Suffolk* case.   Rather, it is the mechanism by which the rights asserted in the *Suffolk* case will be heard by a jury.

---

[1] Nor is the District Court's denial of Defendants' remand motion appropriate to review pursuant to Defendants' mandamus petitions, to which Plaintiffs will respond if asked by this Court to do so.   Fed. R. App. P. 21(b)(1).

III.    The  Trial  Plan  Order  Does  Not  Constitute  "Extraordinary Circumstances" Warranting Mandamus Jurisdiction.

Mandamus is an extraordinary remedy preserved for situations in which a district court's action amounts to a usurpation of power or a clear abuse of discretion.  The Trial Plan Order does not fit into either of these narrow categories and, to the contrary, is an appropriate exercise of the District Court's discretion to ensure an orderly and manageable trial of what would otherwise be an extremely lengthy trial in the absence of the Order.

## STATEMENT OF THE CASE

Plaintiffs filed this action in the New York Supreme Court on August 19, 2002.  At that time Plaintiffs sued many, but not all, of the Defendants named in the current caption.  One of the Defendants not named in the original complaint is Marathon Ashland.  In 2004, wanting to be in federal court but too late to seek removal, Defendants through Defendant Lyondell Chemical Company filed a third party complaint against Marathon Ashland on March 22, 2004.  Marathon Ashland then removed *Suffolk* to federal court on March 30, 2004, based on federal officer jurisdiction under 28 U.S.C. § 1442(b).  A. 69.  On June 16, 2004, *Suffolk* was transferred to MDL 1358.  A. 85.

Plaintiffs moved to remand *Suffolk* to state court.  Defendants opposed Plaintiffs' remand motion, arguing that the federal court had jurisdiction over the case and that there were no federal abstention issues relevant to the state law

7

claims.  The District Court agreed with Defendants and, as a result, *Suffolk* remains one of approximately eighty cases in MDL 1358 brought on behalf of public water providers and private well owners whose drinking water wells are contaminated with MTBE.

The District Court designated *Suffolk* as one of four focus cases in MDL 1358 over three years ago.  Since that designation, the District Court has issued thirty-six substantive opinions and orders, issued thirty case management orders, held over thirty-five status conferences and set *Suffolk* for trial to begin on March 3, 2008.  Opinion and Order of Shira A. Scheindlin denying remand, dated September 17, 2007 ("Remand Order") at 3.[2]  *Suffolk* is the first case in MDL 1358 to be tried.  The District Court has sought an intra-district designation to preside over the *Suffolk* trial.

Under Case Management Order No. 20, signed on August 25, 2006, the District Court granted Plaintiffs leave to amend their complaint to add claims under TSCA.  Plaintiffs gave the requisite 60-day notice of intent to sue under TSCA to Defendants, and on October 16, 2006, the *Suffolk* Plaintiffs amended their complaint to add a TSCA cause of action.  A. 94–160.  Defendants did not oppose Plaintiffs' filing of the Sixth Amended Complaint.

_____

[2] Because Defendants appealed the District Court's Remand Order before it was issued, the Joint Appendix does not include the Remand Order.  Accordingly, together with the filing of their merits brief, Plaintiffs will file a motion to supplement the Joint Appendix to add the Remand Order.

On May 24, 2007, this Court issued its decision in *California v. Atlantic Richfield Co.* (*In re: MTBE Products Liability Litigation*), 488 F.3d 112 (2d Cir. 2007)("*Atlantic Richfield*"). That appeal, brought by the State of New Hampshire and the People of the State of California, both formerly parties in MDL 1358, challenged the District Court's jurisdiction over them as sovereigns. This Court held, *inter alia*, that Defendants in this case are not federal officers sufficient to confer federal officer jurisdiction. *Id.* at 131-32.

Despite the fact that Defendants removed the case to federal court and that the *Suffolk* action has federal question jurisdiction under section 1331 of Title 28, Defendants moved before the District Court on July 6, 2007, for remand of the *Suffolk* case to state court. A. 301. On July 13, 2007, only one week after filing its motion asking the District Court to remand *Suffolk*, Defendants filed this appeal, and on July 24, 2007, they filed their Form C Statement stating as one of the issues on appeal "[w]hether the District Court had subject-matter jurisdiction to enter the Trial Order," the very same issue Defendants had moved the District Court to consider two weeks earlier. On September 13, 2007, Defendants filed their merits brief in support of the instant appeal. Although their remand motion was still pending in the District Court, Defendants nevertheless asked this Court to consider the very same question.

On September 17, 2007, the District Court denied Defendants' remand motion. In denying the motion, the District Court ruled that Plaintiffs' addition of a federal claim before the decision in *Atlantic Richfield* conferred subject matter jurisdiction in the federal court. Remand Order at 44. In addition, the District Court held that it was within its discretion under 28 U.S.C. § 1367 to exercise supplemental jurisdiction over the non-federal claims in the Sixth Amended Complaint. Remand Order at 48-69.

On October 4, 2007, some of the Defendants filed a new petition for a writ of mandamus from the District Court's denial of remand, *In re: Amerada Hess Corp, et al.*, Docket No. 07-4290-OP. On October 5, 2007, other Defendants filed a third mandamus petition from the same denial of remand *In re: Amerada Hess Corp, et al.*, Docket No. 07-4308-OP. In their new mandamus petitions, as here, Defendants argue that the District Court did not have subject matter jurisdiction to permit Plaintiffs to amend their complaint in October 2006 to add a claim over which the District Court has original jurisdiction because this Court recently determined that the original basis for removal was improper in *Atlantic Richfield*.

## STATEMENT OF FACTS

The District Court's Order sets out a simple and manageable trial plan, in keeping with the Seventh Amendment. Because each of the 182 wells involves

10

individualized causation and injury issues, the District Court wisely decided to conduct trials of subsets of wells. It is not "fracturing Plaintiffs' eight tort claims," as Defendants portray. Nor is it a traditional "bellwether" proceeding: Plaintiffs do not intend to extrapolate findings from this trial to any other plaintiffs' cases. Order at 8 n. 16, A. 355, n. 16.

According to the District Court's trial plan, all tort claims will be presented in the first trial, which comprises all legal issues presented to a single jury to determine the damages to a subset of wells. The jury would first make findings regarding "common issues of tort liability," Order at 9, A. 356, which include, for example, whether gasoline containing MTBE is a defective product and whether Defendants failed to warn of MTBE's dangers, Order at 11, A. 358, as well as whether Defendants' conduct supports an award of punitive damages, Order at 15, A. 362. These questions may be answered without regard for which particular wells are at issue. Plaintiffs must affirmatively prove these common issues as to all Defendants to recover damages.

The trial plan contemplates that Plaintiffs will present evidence on these issues only once. If the jury determines that Defendants marketed a defective product in the trial of Wells 1-10, for example, there would be no need to ask the same question with respect to Wells 11-20. The District Court explained that Defendants would be precluded from relitigating these issues in subsequent trials,

recognizing that "[s]ubsequent trials regarding the remaining wells will involve issues identical to those actually litigated and decided in the first trial."  A. 358, n. 21.

If the jury finds one or more Defendants liable in the general liability phase, it then must decide whether Plaintiffs were harmed by the MTBE in their drinking water wells and, if so, assess compensatory damages.  A. 356.  And if the jury has determined that punitive damages are appropriate, it will specify a punitive damages award expressed as a multiplier of compensatory damages.  A. 362.

Defendants filed its appeal of the Trial Plan Order on July 13, 2007.  A. 369. The bases stated for appellate jurisdiction are:  28 U.S.C. § 1292 and the All Writs Act, 28 U.S.C. § 1651(b).  *Id.*  Defendants did not ask the District Court to certify this interlocutory order for appeal under Section 1292(b), nor did they make any motion for clarification or reconsideration of the Trial Plan Order.  While Defendants assert Section 1292 in their Notice, their brief argues that they are invoking this Court's jurisdiction under 28 U.S.C. § 1291.

The Trial Plan Order is not a collateral order.  Nor does the Trial Plan Order constitute a usurpation of the District Court's power justifying mandamus relief. Rather, in every way the Trial Plan Order is an interlocutory order under Federal Rule of Civil Procedure 42(b) designed simply to structure a manageable and understandable jury trial.

On July 6, 2007, barely a week before they filed the current appeal, Defendants filed a motion in the District Court seeking remand of *Suffolk* to the state court, A. 301, even though they themselves back in May 2004 removed the *Suffolk* case to federal court.   A. 69.   The District Court denied Defendants' remand motion in its September 17, 2007, decision.   On October 4 and 5, 2007, Defendants filed two new petitions for a writ of mandamus in this Court of the District Court's denial of their remand motion.

## SUMMARY OF ARGUMENT

Despite Defendants' protestations that the Trial Plan Order is "effectively unreviewable on later appeal," Brief of Defendants-Appellants ("Brief") at 20, all of the issues about which Defendants complain are reviewable after the first trial; none of the issues is appealable now.   This Court does not have jurisdiction to hear Defendants' appeal for three reasons.

The first argument Defendants raise in support of reversal of the Trial Plan Order is essentially a request that the Order be vacated because the District Court lacked jurisdiction to issue it.   Defendants' argument should be rejected preliminarily because it is premature – Defendants filed this appeal and filed their merits brief in this appeal *before* the District Court even issued its remand decision.   This Court should not permit such appeals of interlocutory orders (or in this case, an anticipatory order).   Moreover, Defendants should not be permitted to

raise the issue of whether *Suffolk* should be remanded to state court in multiple forums at the same time.  Because Defendants have done just that twice now – first asking this Court to review the issue of remand before the issue was even decided by the District Court and now asking this Court to consider this same question both in this appeal (couched in terms of appellate jurisdiction) and in their two petitions for mandamus of the denial of their remand motion – the Court should deny this manufactured jurisdictional basis for appellate jurisdiction.

Moreover, an order denying remand is a non-reviewable interlocutory order. Finally, even if this Court were to reach the merits of the District Court's remand denial, the Sixth Amended Complaint in *Suffolk*, which adds a cause of action over which the federal court has original jurisdiction, confers subject matter jurisdiction in the District Court and, thus, the District Court had jurisdiction to issue the Trial Plan Order.

Defendants' argument that the Trial Plan Order is reviewable under Section 1291 of Title 28 fairs no better.  The Order does not end the litigation or finally resolve an issue that is collateral to the merits of the litigation.  To the contrary, the Trial Plan Order is intertwined with the merits of the case, serving as the mechanism by which this large case will be managed for trial.  Appellate courts routinely reject appellate review of such Rule 42(b) orders because they are classically interlocutory.

Defendants' arguments highlight the speculative nature of their appeal, rendering it non-reviewable under section 1291.  They argue that they will be harmed by successive juries' award of a punitive damages multiplier.  But without knowledge of that multiplier, or for that matter if the jury will even award punitive damages, this Court might never have to address this issue at all.  The speculative nature of this appeal highlights the reasons why appellate courts reject appeals from non-final judgments.

Defendants have not presented a compelling case for the Court of Appeals to exercise its mandamus power here either.  A district court's exercise of its discretion to manage and structure trials is not novel and does not create unprecedented questions of law.  Indeed, there is a large body of precedent for trial plans similar to the District Court's Order.  And, more important, Defendants may challenge the propriety of the trial plan on appeal after judgment.  Mandamus relief is unwarranted here.

Even if this Court reaches the merits of Defendants' appeal, Defendants actually agree with Plaintiffs that the District Court can enter an Order setting out a trial plan:

> If the District Court wishes to avoid trying liability for all 182 wells at one time, it can try smaller groups of wells under Rule 42(b), so long as it does not ask subsequent juries to reexamine an initial jury's verdict of exoneration.

Brief at 31.  Now that such a plan has been ordered, Defendants argue that the District Court's Trial Plan Order threatens their Seventh Amendment and due process rights.  Their objections to the Order arise from willfully reading sentences out of context and ignoring the District Court's careful attention to the Seventh Amendment's prohibition against reexamination.  Their recasting of the Court's opinion provides no basis for vacating the Order.

## ARGUMENT

**I.** **There Is No Appellate Jurisdiction To Hear The Instant Appeal.**

**A.** **The First Argument Defendants Assert For Appellate Jurisdiction Is Neither Relevant To Nor Properly The Subject Of This Appeal.**

**1.** **Defendants should not be permitted to raise the same issues in multiple fora and in multiple filings for appellate review of interlocutory orders before this Court.**

The impropriety of Defendants' first jurisdictional argument is evidenced by the fact that Defendants filed their brief and made their arguments in this Court *before* the District Court even issued its decision on remand.  Therefore, Defendants could not have considered the District Court's ruling before attempting to invoke this Court's jurisdiction.  Furthermore, the impropriety of Defendants' appeal is highlighted by the fact that Defendants have filed separate petitions for mandamus before this Court, filed on October 4 and 5, 2007, on the very same issue that they raise on this appeal (couched here in jurisdictional terms).  Defendants cannot raise the same issues in multiple fora, as they have done here.

16

Defendants brought to this Court the issue of the District Court's lack of jurisdiction to issue the Trial Plan Order before the District Court had even ruled on Defendants' remand motion.  They are now raising the remand issue again in separately filed mandamus petitions before this Court – one of the obvious reasons why appellate courts do not permit appeals of interlocutory orders.  Thus, not only are Defendants substantively wrong regarding the District Court's jurisdiction to enter the Trial Plan Order, but to allow Defendants to maintain this appeal would establish a dangerous precedent of permitting litigants to file an appeal of an issue that the same party brought in the district court before that issue is resolved by the district court and/or to file multiple appeals at the same time, on the same issue in the same case.  The result of such precedent could potentially be different panels of this Circuit resolving the exact same issue.

While case law does not address the specific, unique circumstances of litigants seeking judicial review of the same issue in both the district court and appellate courts and/or through multiple appellate court filings simultaneously, case law has considered similar issues in the context of whether a district court is divested of jurisdiction when an appeal is filed.  "Where the deficiency in a notice of appeal, by reason of untimeliness, lack of essential recitals, or reference to a non-appealable order, is clear to the district court, it may disregard the purported notice of appeal and proceed with the case, knowing that it has not been deprived

of jurisdiction." *Ruby v. Secretary of the U.S. Navy*, 365 F.2d 385, 389 (9th Cir. 1966) (*en banc*), *cert. denied*, 386 U.S. 1011 (1967); *see also Leonhard v. U.S.*, 633 F.2d 599, 610 (2d Cir. 1980) ("[w]e see no efficiency to be gained by allowing a party arbitrarily to halt the district court proceedings by filing a plainly unauthorized notice which confers on this Court the power to do nothing but dismiss the appeal"). Furthermore, even though the District Court has now decided the remand motion, allowing this interlocutory appeal to proceed would encourage future appellants to seek prematurely review of an issue that is pending in the District Court.

No court has allowed an appeal to proceed under the circumstances here. This Court should not sanction such abuse of the appellate process by Defendants.

### 2. The District Court properly denied Defendants' motion to remand *Suffolk*. [3]

As a preliminary matter, an order denying remand is an interlocutory order that is not reviewable on appeal. *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 72 (1996) ("An order denying a motion to remand, 'standing alone' is 'obviously . . . not final

---

[3] Because the District Court's denial of remand is before this Court on Defendants' petitions for a writ of mandamus and on their motion for a stay of the District Court's proceedings in *Suffolk*, filed on October 4 and 5, 2007, Plaintiffs here refer to their Memorandum of Law filed in Opposition to Defendants' Remand Motion with the District Court, reproduced in the appendix, A. 371-401, and the District Court's Remand Order.

and appealable' as of right").   Thus, there is no appellate jurisdiction over the

District Court's denial of remand of the *Suffolk* case here.

Moreover, as stated above, since the filing of Defendants' merits brief, the

District Court in fact issued its decision and order on remand in *Suffolk*.   While

Plaintiffs steadfastly believe that this issue is not properly before this Court on the

instant appeal, the District Court's opinion comprehensively analyzes why the

federal court has subject matter jurisdiction over the *Suffolk* case, even though this

Circuit ruled in *Atlantic Richfield* that the basis for Defendants' removal of *Suffolk*

– federal officer jurisdiction – does not confer subject matter jurisdiction in the

instant case.   As the District Court explains, if the *Suffolk* plaintiffs' Sixth

Amended complaint was validly filed, then there is no question that the federal

court has jurisdiction to try the case.   Indeed, Defendants conceded this fact at the

oral argument on their remand motion.   Remand Order at 13.   The District Court

then proceeds, in over thirty pages of legal analysis and authorities, to conclude

that it had jurisdiction to permit Plaintiffs to amend their complaint in October

2006 to add the TSCA claim, thus providing federal question jurisdiction in the

federal court.   Remand Order at 13-14.[4]   There is nothing to add to that analysis

---

[4] The arguments Plaintiffs made against remand in the District Court, including
both distinguishing the cases cited by Defendants and citing numerous cases that
establish that their amendment to add a federal TSCA claim confers subject-matter
jurisdiction in the District Court, even though this Circuit later determined that the

here.   Defendants are simply legally incorrect that the District Court does not have

jurisdiction to try *Suffolk*.

**B.    An Immediate Review of the Trial Plan Order At This Stage of the Litigation Would Be Premature and Contravene the Finality Requirement of Section 1291 of Title 28.**

**1.    The Trial Plan Order Is Not A Final Decision Of A District Court As Required By 28 U.S.C. § 1291.**

Section 1291 grants "jurisdiction of appeals from all final decisions of the

district courts."   28 U.S.C. § 1291.   The Supreme Court explained this finality

requirement in *Coopers and Lybrand v. Livesay*, 437 U.S. 463 (1978), noting that

"[f]ederal appellate jurisdiction generally depends on the existence of a decision by

the District Court that *ends the litigation* on the merits and leaves nothing for the

court to do but execute the judgment." *Id.* at 467 (internal quotations omitted)

(emphasis added).

Defendants fail to articulate how their appeal satisfies the finality

requirement of Section 1291.   Instead, they argue the *merits* of their appeal.   But

the Trial Plan Order does not end the litigation, and without that finality there is no

appellate jurisdiction.   Indeed, the Order, to the contrary, is intertwined with the

merits of the litigation, setting forth an orderly process for the trial in *Suffolk* so

that there can be a final executed judgment.   For this reason, federal courts of

---

original basis for Defendants' removal was invalid, is reproduced in the appendix.
A. 378-385.

appeal generally have refused to hear an appeal from a Rule 42(b) interlocutory order because such an order does not meet the requisite finality mandated by Section 1291. *Travelers Indem. Co. v. Miller Mfg. Co.*, 276 F.2d 955, 955 (6th Cir. 1960) ("[t]he motion of appellee to dismiss the appeal from an order of the District Court granting separate trials . . . is hereby granted on the ground that the order sought to be reviewed is not a final appealable order"); *Gaffney v. Riverboat Services of Indiana, Inc.*, 451 F.3d 424, 442 (7th Cir. 2006) ("[a] separate trial order under Rule 42(b) is interlocutory and non-appealable") (citing *Reinholdson v. Minnesota*, 346 F.3d 847 (8th Cir. 2003)); 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2392 (3d ed. 1998 & Supp. 2007)("[a]n order granting or denying separate trial is not appealable as a final judgment").

This Circuit in *In re Master Key Antitrust Litigation,* 528 F.2d 5, 8 (2d Cir. 1975), reviewed the appealability of an interlocutory order entered, in part, to structure a bifurcated trial pursuant to Rule 42(b).  The order was made in a "complex and protracted" civil case, as Defendants here describe the instant case. This Circuit concluded that it need not review the trial judge's exercise of discretion in making the order, "for an order for a bifurcated trial is likewise not appealable under the theory that it is not a final order."  *Id.* at 14.  The Trial Plan

Order from which Defendants appeal is similarly not a final order and, therefore, is not appealable at this time.

> **2.     The District Court's Trial Plan Order Pursuant To Rule 42(b) Does Not Satisfy The Collateral Order Doctrine For Appealability Of *Cohen v. Beneficial Industrial Loan Corp.***

The collateral order doctrine allows the review of a small class of decisions that "finally determine claims of right separable from, and collateral to, rights asserted in the action." *Cohen*, 337 U.S. at 546.  The collateral order doctrine is "modest [in] scope" and the conditions for its application are, according to the Supreme Court, "stringent." *Will v. Hallock*, 546 U.S. 345, 957 (2006).  It applies only where an interlocutory order (1) *conclusively* determines the disputed question, (2) *resolves* an important issue completely separate from the merits of the action, and (3) is effectively *unreviewable* on appeal from a final judgment.  *Will,* 546 U.S. at 957 (quoting *Coopers & Lybrand*, 437 U.S. at 468); *see also Ibeto Petrochemical Industries Ltd. v. M/T Beffen,* 475 F.3d 56, 62 (2d Cir. 2007).  Thus, it should be applied only to those claims that are "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen*, 337 U.S. at 546.

This Circuit has set a "high threshold" for appeals from interlocutory orders under this doctrine. *In re Master Key*, 528 F.2d at 10.

Defendants' appeal, on its face, does not satisfy the requisite factors for appellate jurisdiction set forth in *Cohen*.   First, the Trial Plan Order *does not conclusively* determine  any question of law or fact in the case.   Second, the Order does not *resolve* an issue separate from the merits of the action – it is the trial mechanism established to try the merits of the case.   Third, the Trial Plan Order made pursuant to Rule 42(b) *is reviewable* on appeal *after* final judgment.   *Barr Laboratories, Inc. v. Abbott Laboratories*, 978 F.2d 98, 101 (3d Cir. 1992)(subsequent to final disposition, plaintiffs challenged the district court's order pursuant to Rule 42(b) to grant defendant's motion to bifurcate trial); *see also*, *O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1197 (8th Cir. 1990); *Moss v. Associated Transport, Inc.*, 344 F.2d 23, 24 (6th Cir. 1965); *Crummett v. Corbin*, 475 F.2d 816, 817 (6th Cir. 1973).

Because of its inherent appealability *after* a final judgment, an order pursuant to Rule 42(b) by its very nature fails the third branch of the collateral order doctrine.   Failure of the third prong alone is fatal to application of the collateral order doctrine.   Just as the appellants in both *Ibeto Petrochemical Industries Ltd.*, 475 F.3d at 62, and *SEC v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988), failed the third prong and thus failed the collateral order doctrine test, the Defendants' appeal here similarly fails the narrowly carved exception for appealability of a collateral order.   Moreover, here all three of these factors fail;

thus, Defendants' jurisdictional argument fails.   In the words of *Cohen*, the Trial Plan Order is not "independent of the cause itself" to warrant appellate jurisdiction before the whole case is adjudicated.  *Cohen*, 337 U.S. at 546.

> **3.    Immediate Review Of The Trial Plan Order Is Inconsistent With The Purpose Of The Collateral Order Doctrine Because Any Alleged Harm That May Be Perpetuated By The Order Is Purely Speculative.**

As explained above, an order that falls short of conclusively determining the fate of a party's constitutional rights does not fit within the collateral order doctrine because it fails the requirement of conclusiveness or finality.  *Cohen*, 337 U.S. at 546.   Defendants' arguments against the Trial Plan Order involve what they believe to be the "unfair" consequences of the *next* trial in *Suffolk*.   Their own arguments illustrate the speculative nature of their appeal.

For example, Defendants complain about potential "excessive" or "multiple" punitive damage awards and a potentially inappropriate punitive damages multiplier as a violation of the Reexamination Clause of the Seventh Amendment. Brief at 29-30.  But if a jury does not award punitive damages, that issue will never be ripe for review.   If the jury does award punitive damages, Defendants can appeal the imposition of a multiplier, or any other issue regarding punitive damages, after judgment is entered following that trial.   In addition, although the amount of punitive damages should be left to the discretion of the jury, *Microsoft Corp. v. Bristol Tech., Inc.*, 250 F.3d 152, 155 (2d Cir. 2001), as the Supreme

Court has held, the amount of punitive damages imposed by the jury is not itself a "fact" within the meaning of the Seventh Amendment's Reexamination Clause. *See*, *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 437 (2001). Because the jury's award does not constitute a finding of "fact," Seventh Amendment concerns are not implicated. *Id.* Similarly, Defendants' arguments regarding the collateral estoppel effect of a judgment is purely speculative: if there is a verdict against Defendants in the first trial collateral estoppel will be raised in the subsequent trial, not this one.

Moreover, the Order being appealed on its face (even if Defendants were substantively correct, which they are not) does not determine Defendants' constitutional rights. In *In re Master Key*, appellants argued that an order that separate trials be held on liability and damages fell within the narrow strictures of the collateral order doctrine because the costs of conducting a series of separate mini-trials as to damages would be prohibitive and would, therefore, force appellants into an unfavorable settlement, thus causing prejudice to the defense by facilitating the appellees' ability to sidestep proof of specific injury, and allowing a showing of generalized harm to suffice. 528 F. 2d at 14. This Court held that appellants' claimed irreparable harm stemming from the bifurcation order, was "entirely too speculative" to suffice as the basis for interlocutory review under the collateral order doctrine. *Id.*; *see also*, *United States v. Helmsley*, 864 F.2d 266,

269-70 (2d Cir. 1988)(finding that requirement that the order be effectively unreviewable on appeal from a final judgment was not met because petitioner's claim of potential unreviewability based on a case pending before the Supreme Court was "too remote and speculative to be persuasive").

In the instant case, it is entirely speculative that the Trial Plan Order will subject Defendants to a deprivation of their constitutional rights.  There is no certainty that Defendants will be found liable at trial or, if found liable, that "multiple" or "excessive" punitive damages will be awarded.   In addition, Defendants' protestations about assessment of punitive damages by "each jury," ignores the fact that different wells will be at issue and the jury cannot directly punish Defendants for those wells:   "By analogy, each jury may consider the alleged harms to other wells as evidence of reprehensibility, but may not directly punish defendants for such alleged harms."  Order at 18, A. 365.

Defendants' appeal of the Trial Plan Order is patently premature as it does not seek review of a decision that is a "*final disposition* of a claimed right," *Cohen*, 337 U.S. at 546 (emphasis added).  Therefore, the Court does not have appellate jurisdiction to hear the appeal.

### C.    Defendants Cannot Satisfy The Stringent Standard for the Extraordinary Remedy of Mandamus.

Defendants' alternative jurisdictional basis for appeal – a writ of mandamus – does not provide this Court with jurisdiction over the appeal either.  Mandamus

is an extraordinary remedy, the touchstones of which are usurpation of power or a clear abuse of a district court's discretion.   *See, e.g., In re W.R. Huff Asset Management Co., LLC*., 409 F.3d 555, 562 (2d Cir. 2005); *In re F.C.C.,* 217 F.3d 125, 133 (2d Cir. 2000).   Defendants have failed to satisfy the stringent requirements for issuance of a writ of mandamus.

A mandamus will be granted only if a petitioner shows "(1) the presence of a novel and significant question of law; (2) the inadequacy of other available remedies; and (3) the presence of a legal issue whose resolution will aid in the administration of justice."   *Aref v. United States of America*, 452 F.3d 202, 206 (2d Cir.   2006) (internal quotations omitted).   "Mere error, even gross error in a particular case, as distinguished from a calculated and repeated disregard of governing rules, does not suffice to support issuance of the writ."   *In re W.R. Huff Asset Management Co., LLC.*, 409 F.3d at 562 (internal quotations omitted). Mandamus is properly granted only for "(1) protection of a superior court's mandate [and] (2) [r]estraining an inferior court from detours into areas in which it lacks jurisdiction."   *In re F.C.C.,* 217 F.3d  at 133.

The Second Circuit has also held that "[t]his Court will grant a mandamus petition only where the petitioner's right to relief is 'clear and indisputable.'"   *Id.* at 134.   The Second Circuit's standard for reviewing writs of mandamus "requires a

showing of an extreme need for reversal." *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 233 (2d Cir. 1993) (internal quotations omitted).

The Trial Plan Order from which Defendants seek a writ of mandamus is a typical exercise of district court discretion that is not a proper subject of mandamus. An order setting forth a trial plan pursuant to Rule 42 is within the sound discretion of the district court. The Order issued by the District Court is neither novel nor violative of any rule or law.

In a futile attempt to support mandamus relief, Defendants first mischaracterize statements of the District Court during the first oral argument on the trial plan issue (and before subsequent briefing on certain issues) to show that the District Court itself "admitted" that the Trial Plan Order is unprecedented. Brief at 50, 54. But as the Trial Plan Order makes clear, over the last decade, bellwether trials have become more common in large actions, and, in particular, mass tort actions. Order at 4, A. 351. Bellwether trials, even ones that could possibly implicate Seventh Amendment concerns, are not foreign to this Circuit. *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 359 (2d Cir. 2003); *Sachs & Co. v. Edelstein*, 494 F.2d 76, 78 (2d Cir. 1974); *Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison*, 955 F. Supp. 248, 252 n.6 (S.D.N.Y. 1997); *Jacobson v. Cohen*, 1995 WL 296733, *1 (S.D.N.Y. May 16, 1995); *United States v. Afram Lines*, 159 F.R.D. 408, 409 (S.D.N.Y. 1994). The Trial Plan Order does not

28

implicate a question of law that is novel and substantial or that is a matter of "first impression" in this Circuit.  *American Express Warehousing*, 380 F.2d 277, 283 (2d Cir. 1967); *In re von Bulow*, 828 F.2d 94, 97-98 (2d Cir. 1987).

Second, Defendants cannot satisfy the extraordinary right to mandamus relief because another adequate remedy is available.  As the District Court noted in the Trial Plan Order, at the end of the first trial in *Suffolk*, the District Court will enter a final judgment with respect to the jury's verdicts on claims relating to the limited group of trial wells, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, that can then be reviewed by this Court.  *See*, Fed. R. Civ. P. 54(b) ("the court may direct the entry of a final judgment as to one or more but fewer than all of the claims . . . only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment"); Order at 9 n. 17, A. 356 n.17; *see also*, *United States v. Helmsley*, 866 F.2d 22 (mandamus would not issue to compel district court to dismiss indictment, or to hold hearing based on extensive  publicity attending grand jury's investigation of tax evasion; post-trial review was available to remedy any prejudice petitioners might suffer based on such publicity).  "If relief may be obtained by direct appeal, mandamus is inappropriate."  *Aref v. United States*, 452 F.3d at 206; *In re Austrian, German Holocaust Litig.*, 250 F.3d 156, 162 (2d Cir. 2001)(same).  Such is the case here.

Relying on a Seventh Circuit case, Defendants argue that when mandamus is sought to protect the Seventh Amendment right to a jury trial in federal civil cases, the requirement of proving irreparable harm is relaxed.  Brief at 53-54.  (citing *In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293 (7th Cir. 1995)).  However, as that case itself shows, irreparable harm is a requirement for mandamus review under Seventh Circuit law, not the law of this Circuit.

Third, "[m]andamus is appropriate 'when the appellate court is convinced that resolution of an important, undecided issue will forestall future error in trial courts, eliminate uncertainty and add importantly to the efficient administration of justice."  *In re von Bulow*, 828 F.2d at 99 (quoting *Colonial Times, Inc. v. Gasch*, 509 F.2d 517, 524 (D.C. Cir. 1975).  The Trial Plan Order does not raise a significant divergence of views among the district courts of this Circuit regarding the correctness of the District Court's ruling, as is typically required for this third prong of the mandamus test.  *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001); *see also*, *In re von Bulow*, 828 F.2d at 99-100 )(finding that "issuing the writ will aid the administration of justice *within this Circuit*")(emphasis added); *In re Department of Investigation of the City of New York*, 85 F.2d 65, 69 (2d Cir. 1988) (same); *see also*, *In re United States*, 10 F.3d 931, 933 (2d Cir. 1993) ("mandamus will eliminate uncertainty as to the delegation of Title III review, thus

avoiding future challenges to wiretapping orders approved by magistrate judges, which may require retrial or the suppression of evidence").

Defendants further rely on *Goldman Sachs & Co. v. Edelstein*, 494 F.2d 76, 78 (2d Cir. 1974) and *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1020 (5th Cir. 1997), in an attempt to show the propriety of mandamus authority "to rectify an erroneous 'bellwether' trial order when the proposed trial plan trampled a defendants' Seventh-Amendment rights."   Brief at 53.   However, in *Goldman Sachs*, the defendants sought to stay the district court's order for a nonjury trial until completion of a jury trial of common issues in a related case.   *Goldman Sachs*, 494 F.2d at 77.  Both cases raised identical claims based on substantially the same proof against Goldman Sachs and both cases were part of a multidistrict litigation.  The first-filed case asserted by far the larger claim and, from the outset until a hearing about 10 days before the court's order, had been treated by the court and the parties as the bellwether case for trial.  At the hearing, the district court announced for the first time that the other case would be tried first before the court without a jury.  *Id.*  The Second Circuit held that where proceeding first with the nonjury trial threatened the destruction of Goldman Sachs's right to a jury trial of the same issues and no rational basis had been shown for not adhering to the anticipated order of trials -- according to which the jury trial was to come first -- mandamus was warranted directing the district court to proceed first with the jury

31

trial or, in the alternative, to consolidate the jury case and the nonjury case for simultaneous trial. *Id.* at 78. The *Goldman Sach's* case is therefore distinguishable from the instant case because the Trial Plan Order does not contemplate a mix of jury trials and nonjury trials, nor have Defendants shown that the Trial Plan Order has no rational basis or deviates from settled expectations about the trials.

Defendants' reliance on *Chevron* fairs no better. In *Chevron*, the court explicitly approved bellwether trials, *Chevron*, 109 F.3d at 1019, but considered what preclusive effects would attach to findings resulting from a bellwether trial. The court concluded that unless the representative plaintiffs were selected by a statistically-valid, random method, the results of a trial of representative plaintiffs could not form the basis for a judgment affecting any action other than those brought by the representative plaintiffs. *Id.* at 1020. As the District Court pointed out in the Trial Plan Order, the *Suffolk County* action does not raise the same concerns as those discussed in *Chevron*:

> *Chevron* involved approximately three thousand plaintiffs suing a single defendant for harm arising from its acts and omissions. Here, by contrast, only two plaintiffs -- Suffolk County and the Suffolk County Water Authority -- are suing more than 50 defendants for harm to approximately 182 wells owned or managed by these two plaintiffs. The extrapolation question in this action is thus quite different than the one addressed in *Chevron* -- in this action, there is no other plaintiff who will benefit from the trial, to the detriment of the

defendants, from any verdict reached in the proposed trial of representative wells.

Moreover, even if the jury finds one or more of the defendants liable with respect to any of the representative wells, that finding would not establish that the particular defendant is responsible for the alleged harm to other wells.  * * * [T]he only preclusive effect would be with respect to common issues of tort liability.  And such preclusion would attach only *if and when it is proven to a different jury that other wells in fact sustained any harm*, and even then, would only bind those defendants who are found to have caused harm to the two plaintiffs by virtue of their tortious conduct.

In short, because the results of the proposed trial of representative wells will *not* be extrapolated into a finding of liability with respect to any other while involved in this action, the proposed trial does not raise the same problems that the *Chevron* Court faced.

A. 355-56 (footnotes omitted; emphasis in original).

Through any lens, Defendants have failed to show a jurisdictional basis for the instant appeal of the Trial Plan Order.

## II.    The District Court Properly Ordered a Simple Plan for Trial.

Defendants do not question the district court's general authority to sever issues for trial as guaranteed by Federal Rule of Civil Procedure 42(b).  This "almost unlimited" power to bifurcate is recognized as critical to managing complex litigation.  Sherman, *supra*, 25 Rev. Litig. 691; *Simon v. Philip Morris, Inc.*, 200 F.R.D. 21, 32 (E.D.N.Y. 2001).  The District Court for the Eastern District of New York has recognized that "[o]n its face, Rule 42(b) encourages the

severing of issues for trial, guaranteeing trial judges optimum flexibility in structuring litigation with an eye toward providing a fair and efficient remedy." *Simon*, 200 F.R.D. at 27.   Indeed, Defendants agree here that the Court acted within its power in ordering the Trial Plan Order.  Brief at 31.

District courts have not shied away from exercising their Rule 42(b) power when appropriate.  The plan here is similar to those ordered by many courts that recognize the efficiency in separating general liability from damages phases.  This approach has been employed for decades without creating the constitutional crisis Defendants fear.  In an attempt to efficiently resolve approximately 3,000 personal injury cases against asbestos manufacturers pending in the Eastern District of Texas, the district court adopted a phased trial plan separating general liability issues from damages issues.  *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 470 (5th Cir. 1986); *see also Cimino v. Raymark Industries, Inc.*, 151 F.3d 297 (5th Cir. 1998) (appeal arising from same set of cases).  These "general liability" issues included determinations regarding:  (1) which asbestos-containing products were capable of producing asbestos dust sufficient to cause harm;  (2) which of the manufacturers' products were defective as marketed and unreasonably dangerous; (3) when each manufacturer knew or should have known of the risks associated with the use of their products; and (4) the amount of punitive damages that should be awarded to the class as punishment for the manufacturers' conduct.  *Id.* at 471.

The Fifth Circuit affirmed the plan to decide common issues in the first phase to be followed by mini-trials on the plaintiff-specific issues of exposure and compensatory damages. *Id.*

A similar phasing approach was used in a trial of 92 consolidated asbestos cases. First, one jury determined that the defendants' products were defective and that defendants were grossly negligent (thus entitling plaintiffs to punitive damages), and determined the percentage that punitive damages should bear to compensatory damages. *Sanford v. Johns-Manville Sales Corp.*, 923 F.2d 1142, 1145 (5th Cir. 1991). In the second portion of trial, a different jury decided the issues of product exposure, producing cause, defendants' percentage responsibility and compensatory damages. *Id.* The Fifth Circuit approved the trial method and observed support for bifurcation — despite Texas policy generally disallowing bifurcation in personal injury cases. *Id.* at 1146 n.7.

Other courts have also recognized the efficiency of ordering a separate trial for an individual issue if a finding for the defendant would render further litigation unnecessary. In a pharmaceutical case, the Sixth Circuit approved ordering a separate trial of the causation issue alone in a products liability case against the manufacturer of Bendectin, a drug alleged to cause birth defects. *In re Bendectin Litigation*, 857 F.2d 290 (6th Cir. 1988). The court rejected arguments that the issue of causation could not be separated from the issue of the manufacturer's

tortious conduct based on tort theories that shift the burden of proof to defendants before causation has been proven.  *Id.* at 309.  Similarly, in a products liability lawsuit against the manufacturer of a swimming pool slide, the defendant argued that it was not the manufacturer of the slide that had injured the plaintiff.  *Beeck v. Aquaslide 'N' Dive Corp.*, 562 F.2d 537 (8th Cir. 1977).  The district court elected to hold a separate trial on the issue of "whether the defendant designed, manufactured or sold the slide in question" because this issue, if resolved in defendant's favor, would exonerate defendant from liability without further litigation.  *Id.* at 539.  The Eighth Circuit affirmed, recognizing that evidence of plaintiff's injuries and damages would have taken several days of trial time and concluding that judicial economy was served by the trial plan.  *Id.* at 542.  *See also In re Beverly Hills Fire Litigation*, 695 F.2d 207, 216 (6th Cir. 1982) (district court's order that causation be determined in a separate trial was justified where trial judge sought to avoid litigating liability and damages if they might be avoided by an adverse finding on the causation issue); *Bowie v. Sorrell*, 209 F.2d 49 (4th Cir. 1953) (approving separate trial on question of validity of release before trial on purportedly released claims).

Here, the District Court's Order has a far simpler scope:  it applies only to two related Plaintiffs who suffered the same injury — rather than dozens of individual plaintiffs with a variety of injuries.  In this case, the District Court

ordered that the first phase of the trial will focus on common general liability issues including whether Defendants were negligent, whether gasoline containing MTBE is a defectively designed product, whether Plaintiffs' claims are preempted, and whether Plaintiffs are entitled to punitive damages.  In this phase, the jury will make findings with respect to "common issues of tort liability," Order at 9, A. 356, arising from the development, manufacturing, or marketing of MTBE and may find such facts without regard for which particular well is at issue.  *See*, *e.g.*, *Jenkins*, 782 F.2d 468; *Sanford*, 923 F.2d 1142; *In re Bendectin*, 857 F.2d 290; *Beeck*, 562 F.2d 537; *In re Beverly Hills Fire*, 695 F.2d 207.  Plaintiffs must affirmatively prove these common issues as to all Defendants to recover damages.

The Trial Plan Order contemplates that the parties will present evidence on these issues only once.  If the jury determines that Defendants marketed a defective product in the trial of Wells 1-10, there would be no need to ask the same question with respect to Wells 11-20.  Defendants would be precluded from relitigating these issues in subsequent trials involving these Plaintiffs' remaining injuries, recognizing that "[s]ubsequent trials regarding the remaining wells will involve issues identical to those actually litigated and decided in the first trial."  Order at 11 n. 21, A. 358 n. 21.  Similarly, if the jury returns a verdict of non-liability, Plaintiffs would be precluded from relitigating these issues.  Order at 11, A. 358. (explaining that the verdict binds the parties who participate).

The Trial Plan Order is nothing more than a broad roadmap of how a subset of the MTBE-contaminated wells in *Suffolk* will be tried in the first trial.  Despite Defendants' suggestions to the contrary, the details of exactly what the first jury will be asked to decide are not included as the Order, *inter alia*, does not include or address the details of the jury questionnaire.  Moreover, the Trial Plan Order does not provide an exhaustive analysis of the preclusive effect of a jury verdict in the first trial on *subsequent* trials in *Suffolk*.  Obviously, those decisions will await the final judgment in the first trial.

### A.    The District Court's Order Allows for Neither Reexamination or "One-Way" Issue Preclusion.

Against the weight of law and logic, Defendants now argue that the Trial Plan Order is rife with constitutional violations.  They first object to the preclusive effect of the general liability findings, which they characterize as "one-way" preclusion.  Brief at 13.  Defendants are apparently displeased that Plaintiffs may proceed to subsequent trials with findings on general liability that Defendants will not be permitted again to challenge.  Defendants' complaint contradicts their acceptance of the goals of separate trials inherent in Rule 42(b):  there would be no gain in efficiency or economy (but there would be a serious Seventh Amendment problem) if Plaintiffs were forced to relitigate common liability questions for each group of ten wells.  Again, the trial plan applies to only one case involving two related plaintiffs.  It is only logical that with respect to those Plaintiffs, the jury

makes liability findings only once that bind the parties until all successive juries complete their assessments of Plaintiffs' damages.  There is no suggestion that the findings be extrapolated to plaintiffs who do not participate in this trial.

Defendants also misread the Order and claim that "a verdict in the first trial in favor of a defendant would have no preclusive effect at all."  Brief at 26, 27. But Plaintiffs are equally bound by those findings; nothing in the Order supports Defendants' assumption that Plaintiffs could continue to try the questions submitted to the first jury until they get a plaintiffs' verdict.

Defendants claim that this plaintiff-friendly reexamination is guaranteed by the following sentence: "However, with respect to a defendant as to whom there was no prior adverse verdict, the subsequent jury will be asked to make findings similar to those asked of a prior jury with respect to the liability of those defendants."  Brief at 27, citing Trial Plan Order at 13.  Defendants argue that this sentence shows that the District Court "explicitly" intends to allow reexamination.

But in the sentences immediately following, the District Court explicitly states that the procedure would <u>not</u> have that effect:

> This procedure does not violate the Seventh Amendment's reexamination clause which forbids a subsequent jury from re-examining a matter already decided by a prior jury.  As defendants argued, if a defendant is not found liable for damages to a particular well, there can [be] no "finding" of general liability as to that defendant.  Thus, *a fortiori*, a subsequent jury would not be re-examining any matter that has already been

39

> decided as to that defendant since *no matter* has been
> decided as to that defendant."

Order at 13, A. 360 (emphasis in original).  Considered in context, the only logical understanding is that the District Court uses the term "verdict" specifically to mean not only findings on the general liability questions but also a finding that the particular Defendant was a cause of the harm to a particular well.  Read with this definition in mind, the Order neatly avoids reexamination: when the first jury does not find that a defendant is both generally liable and liable for harm to a specific well, the second jury may consider whether that defendant is liable for injuries to the successive subset of wells.  And there is nothing in the Order stating the questions of general liability decided in the first trial, whether in favor of the Plaintiffs or the Defendants, will be submitted again to a subsequent jury considering a different set of wells.

Defendants' suggested reading of the plan misconstrues the District Court's stated goals — ordering a complex trial in a way that is manageable for the parties, court, and jury, Order at 6, A. 353, and doing so in a way that comports with the Seventh Amendment.  The Order refers several times to the Seventh Amendment's reexamination clause and explains that the Order does not run afoul of this prohibition against allowing a subsequent jury to re-examine a matter already decided by a prior jury.  *See*, Order, A. 348-68, *passim*.  In fact, the Defendants' interpretation requires a willful *mis*-reading of the Order.  The District Court

expressed attention to Seventh Amendment concerns both in the Order and at oral argument on April 27, 2007.  Any suggestion that the District Court intended explicitly to allow reexamination is nonsensical.

### B.    The District Court's Order Provides a Logical and Appropriate Approach to Punitive Damages.

Defendants express the same fears about the punitives damages determination.  Under the District Court's plan, the first jury would determine whether Defendants' conduct supports an award of punitive damages.  Order at 16, A. 363.  If the jury finds that punitive damages are appropriate, it will specify a punitive damages award for the first subset of wells expressed as a multiplier of compensatory damages.  Order at 15, 16, 19, A. 362, 363, 366.  Successive juries would not determine eligibility (which is a component of the "general liability" phase); rather, they would determine only the appropriate multiplier to be applied to calculate punitive damages for each successive set of wells.  *Id.*

This approach comports with the most recent guidance of the United States Supreme Court, which instructs that punitive damages may be assessed based upon evidence of the reprehensibility of Defendants' overall conduct, but that the damages awarded must relate only to the harms *sub judice*.  *See Philip Morris USA v. Williams*, 549 U.S. ___, 127 S.Ct. 1057, 1062-1063 (Feb. 20, 2007) (slip opinion) (evidence of harm to nonparties and to the general public is admissible to show reprehensibility as long as the amount of punitive damages is related to the

41

plaintiff's harm).   The District Court's plan provides for exactly the kind of specificity contemplated in *Philip Morris USA v. Williams*:   the jury that determines compensatory damages for a subset of wells will also decide the appropriate measure of punitive damages for the harm to those particular wells.

Defendants see danger here, too.  First, they claim — without authority — that they are vested with "rights to have a single jury adjudicate their liability for, and assess any amount of punitive damages," Brief at 50, in a way that allows for a "holistic determination of the proper amount," *id.* at 31.

The District Court's multiplier approach also comes under fire although not fatally.  Oddly, Defendants argue that a jury cannot decide on a multiplier if it considers factors such as reprehensibility of the conduct and the amount of compensatory damages.  Brief at 38.  Why Defendants believe the jury would not consider the appropriate factors when arriving at a multiplier but would consider those factors when calculating a dollar figure is unclear.  Odder still is Defendants' argument that the use of a multiplier somehow prevents the jury from deciding to award no punitive damages at all.  Brief at 37-8.  Either concern is easily assuaged without mandamus relief by instructions to the first jury (1) to consider the appropriate factors and (2) that it may award no punitive damages or it may decide on a multiplier that represents a fraction of compensatory damages.

Defendants' remaining arguments concern issues that are not unique to this case but arise in all litigation and certainly do not warrant the intervention of the Court of Appeal.  Such intervention is a "drastic and extraordinary" remedy that must be "reserved for really extraordinary causes."  *Ex parte Fahey*, 332 U.S. 258, 259-260 (1947).  Defendants point to the possibility that the jury "will fail to grasp the subtlety of the distinction between reprehensibility and damages" to the subset of wells at issue," Brief at 15 -- a risk that arises in any case involving actors that cause harm to others who are not before the jury.  Defendants also note that successive juries may award damages that punish the same conduct.  Brief at 32.  While they correctly observe that it is improper for a jury to award repetitive awards of punitive damages for the same conduct, that is not a danger here.

The jury in the first trial will be asked whether the Defendants' conduct in placing MTBE into gasoline warrants an award of punitive damages.  If the jury answers "yes," that jury and subsequent juries will be asked to determine what is the appropriate multiplier in relation to compensatory damages awarded, if any, for a particular set of wells.  If a subsequent jury decides Plaintiffs are not entitled to any compensatory damages for a set of wells, there would be no corresponding award of punitive damages in connection with that set of wells.  Thus, instead of imperiling Defendants' rights, the Order protects those rights:  punitive damages, if any, are tied to specific awards of compensatory damages for particular injuries,

and the District Court will carefully instruct the jury as to the appropriate considerations that should inform its decision.  As ordered, the Trial Plan Order does not violate Defendants' Seventh Amendment or due process rights.

### C.    Mandamus Relief is Unwarranted.

Nor is the plan novel and unprecedented, as Defendants argue in support of their request for mandamus relief.  As discussed above, a number of courts have exercised authority under Rule 42(b) to separate trials into phases for efficiency and convenience.  Again, Defendants seize on an out-of-context exchange at oral argument as support.  The District Court asked counsel for any caselaw involving a single plaintiff who sought punitive damages from a series of juries in this colloquy with defense counsel:

> THE COURT:  Look for me.  If you can find the same plaintiff who was putting on different trials.  The only way it would happen is if they had different defendants.  We have the same defendants so it may not be analogous anyway.  Look around.  It wouldn't work if you found a case unless it was the same defendant in two jurisdictions and the same plaintiff.  So you can make your argument.  All I will learn for that is if there is no precedent, I will have to write it.  That's it.
> MS. BIRNBAUM:  You will be making precedent.
> THE COURT:  That won't be the first time either.

A. 201.  Defendants characterize this as the District Court's admission that it would be making precedent on issues of first-impression.  Brief at 50.  But a more appropriate characterization of the entire discussion is that the District Court recognized that there may not be another published case involving, as here, a single

plaintiff whose injuries are complex enough to require a series of trials to determine compensatory and punitive damages. *See*, A. 195-202. The fact that the instant case presents new challenges for a manageable trial does not mean that any application of ordinary procedures becomes novel or worthy of appellate court review, much less mandamus relief.

There is no question that "[i]f relief may be obtained by direct appeal, mandamus is inappropriate." *Aref v. U.S.*, 452 F.3d at 206 (*citing In re Austrian & German Holocaust Litig.*, 250 F.3d at 162). Defendants have put forth no explanation or authority for the proposition that they would be irreparably harmed, Brief at 55, by following the ordinary appellate procedure. The harms Defendants foresee are that (1) the punitive damages award may be excessive, Brief at 34-36; (2) the punitive damages award may be expressed in terms of a multiplier rather than a dollar figure, *id.* at 37-38; (3) any appeal would be delayed until trials of all subsets of wells are complete, *id.* at 48; and (4) participation in such a plan is a violation of Defendants' constitutional rights, *id.* at 51. But the mere fact that a process arguably compromises one party's rights — even constitutional guarantees — does not mean that such harm cannot be repaired on appeal. *See*, *Aref v. U.S.*, 452 F.3d at 206 (criminal defendant failed to establish existence of remedies other than mandamus even though he claimed that he would suffer "irreparable harm" caused by violations of his constitutional rights).

## <u>CONCLUSION</u>

There is no appellate jurisdiction over the instant appeal brought pursuant to 28 U.S.C. § 1291 and the All Writs Act.  As a preliminary matter, the Defendants should not be permitted to raise in this appeal of the District Court's Trial Plan Order the District Court's denial of remand when Defendants raised that issue in this Court before the District Court even issued its remand order and in light of the fact that Defendants have two pending mandamus petitions challenging the same remand denial.  Should this Court reach the merits of remand, the District Court has subject matter jurisdiction over *Suffolk* by reason of the Sixth Amended Complaint in *Suffolk*.  Furthermore, the Trial Plan Order from which Defendants appeal is an interlocutory order that is not subject to appellate review.  Finally, the issuance of the Trial Plan Order was within the sound discretion of the District Court, structuring a manageable and constitutionally sound approach to a large, multi-issue case.  Defendants' appeal should be dismissed for want of appellate jurisdiction or, in the alternative, this Court should deny Defendants' request to vacate the Trial Plan Order.

Dated:        October 15, 2007
              New York, New York

Respectfully submitted,

_____
Robin L. Greenwald (RG 85-576)

46

WEITZ & LUXENBERG
180 Maiden Lane
New York, New York 10038
(212) 558-5500

*Counsel for Plaintiffs-Appellees*
*County of Suffolk and Suffolk County*
*Water Authority*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      I certify that this Brief consists of 11,339 typewritten words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), according to the word count of the word-processing system (Microsoft Word 2003) used to prepare this Brief.

2.      I also certify that this Brief complies with the typeface requirements of Fed. R. App. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because this Brief has been prepares in a proportionally spaced typeface using Microsoft Word 2003 in 14-point Times New Roman type style.

_____

**ANTI-VIRUS CERTIFICATION FORM**

*See* Second Circuit Local Rule 32(a)(1)(E)

CASE NAME:___**County of Suffolk v. Atlantic Richfield Company**_____

DOCKET  NUMBER:___**07-3043-cv**_____

I, (please print your name)___**George R. Cuervos**_____, certify  that

I have scanned  for viruses  the  PDF version of the

_____ Appellant's Brief                    _____ Petition for Rehearing En Banc

___✔___ Appellee's Brief                     _____ Petitioner's Brief

_____ Reply Brief

_____ Amicus Brief

that was submitted in this case as an email attachment to <briefs@ca2.uscourts.gov> and that no viruses
were detected.

Please print the **name** and the **version** of the anti-virus detector that you used_____

**Symantec AntiVirus, Version 10.0.0.359**_____

If you know, please print the version of revision and/or the anti-virus signature files _____

_____

**/s/ George R. Cuervos**

(Your Signature)_____

Date: __**10/15/2007**_____