UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE METHYL TERTIARY BUTYL ETHER PRODUCTS LIABILITY LITIGATION<br><br>This document pertains to:<br><br>*City of New York v. Hess Corp., et al.,*<br>**Case No. 04-CIV-3417** | Master File No. 1:00-1898<br>MDL 1358 (SAS), M21-88 |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO BAR PUNITIVE DAMAGES BASED ON THE MARKET SHARE AND COMMINGLED PRODUCT THEORIES

This brief is filed on behalf of the Defendants listed on the attached Appendix A.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ................................................................................................... 1

STATEMENT OF UNDISPUTED FACTS ............................................................. 5

ARGUMENT ......................................................................................................... 7

I. THE CITY CANNOT SEEK PUNITIVE DAMAGES
ON THE MARKET SHARE THEORY OF LIABILITY ............................................. 7

II. THE CITY CANNOT SEEK PUNITIVE DAMAGES
ON THE COMMINGLED PRODUCT THEORY ...................................................... 8

    A.    The Relevant Characteristics of the Market Share Theory and
the Commingled Product Market Share Theory Are Identical............................. 9

    B.    The Factors that Preclude Punitive Damages on the Market Share Theory
Also Preclude Punitive Damages on the Commingled Product Theory............. 10

        1.    Allowing Punitive Damages on the Commingled Product Theory
Would Magnify Inevitable Inequities and Inaccuracies ......................... 11

        2.    Allowing Punitive Damages on the Commingled Product Theory
Would Create an Incentive To Ignore Other Liable Parties ................... 13

    C.    Any Differences Between the Market Share and Commingled Product
Theories Would Not Justify Punitive Damages on the Latter Theory ............... 14

III. CONSTITUTIONAL PROTECTIONS PRECLUDE PUNITIVE DAMAGES ON
EITHER THE MARKET SHARE OR COMMINGLED PRODUCT THEORIES ..... 18

    A.    The Due Process Clause Precludes Punitive Damages Without a Showing
that the Defendant Actually Caused the Plaintiff's Asserted Harm ................... 19

    B.    By Definition, a Plaintiff Relying on the Market Share or
Commingled Product Theories Cannot Prove Actual Causation ....................... 21

CONCLUSION .................................................................................................... 22

APPENDIX .......................................................................................................... 23

# TABLE OF AUTHORITIES

## CASES

*Action Marine, Inc. v. Continental Carbon Inc.*,
481 F.3d 1302 (11th Cir. 2007) ................................................................ 19

*BMW of North America v. Gore*,
517 U.S. 559 (1996) ................................................................ 19, 21

*Bobby Kitchens, Inc. v. Mississippi Insurance Guaranty Association*,
560 So. 2d 129 (Miss. 1989) ................................................................ 8

*Collins v. Eli Lilly & Co.*,
342 N.W.2d 37 (Wis.), *cert denied*, 469 U.S. 826 (1984) ............................ 8, 14, 17

*DiSorbo v. Hoy*,
343 F.3d 172 (2d Cir. 2003) ................................................................ 19

*Fabri v. United Techs. International, Inc.*,
387 F.3d 109 (2d Cir. 2004) ................................................................ 19

*Hymowitz v. Eli Lilly & Co.*,
73 N.Y.2d 487 (1989) ................................................................ passim

*In re MTBE Products Liability Litigation*,
2008 U.S. Dist. LEXIS 38792 (S.D.N.Y. May 13, 2008) ............................ passim

*In re MTBE Products Liability Litigation*,
517 F. Supp. 2d 662 (S.D.N.Y. 2007) ................................................... passim

*In re MTBE Products Liability Litigation*,
447 F. Supp. 2d 289 (S.D.N.Y. 2006) ................................................... passim

*In re MTBE Products Liability Litigation*,
379 F. Supp. 2d 348 (S.D.N.Y. 2005) ........................................................ 1

*Magallanes v. Superior Court*,
167 Cal. App. 3d 878, 880 Cal. Rptr. 547 (1985) ......................................... 8

*O'Connor v. GCA Corp.*,
332 F. Supp. 1246 (S.D.N.Y. 1971) ...................................................... 19

*Philip Morris USA v. Williams*,
549 U.S. 346 (2007) ................................................................ 19, 20, 21

*Prozeralik v Capital Cities Commc'ns, Inc.*,
    82 N.Y.2d 466, 626 N.E.2d 34, 605 N.Y.S.2d 218 (1993) ......................................7

*Roginsky v. Richardson-Merrell, Inc.*,
    378 F.2d 832 (2d Cir. 1967) ......................................7

*Ross v. Louise Wise Services*,
    8 N.Y.3d 478, 836 N.Y.S.2d 509 (2007) ......................................7

*Rowley v. First Columbia Life Insurance*,
    741 F. Supp. 1259 (S.D. Miss. 1989) ......................................8

*Shackil v. Lederle Laboratoriess*,
    116 N.J. 155, 561 A.2d 511 (1989) ......................................8

*Sindell v. Abbott Laboratoriess*,
    26 Cal. 3d 588 *cert. denied*, 499 U.S. 912 (1980) ......................................15

*State Farm Mutual Automobile Insurance Co. v. Campbell*,
    538 U.S. 408 (2003) ......................................19, 20, 21

*Stevens v. Owens-Corning Fiberglass Corp.*,
    49 Cal. App. 4th 1645 (Cal. App. 1996) ......................................8

*U.S. ex rel. Evergreen Pipeline Construction Co. v. Merritt Meridian Construction Corp.*,
    95 F.3d 153 (2d Cir. 1996) ......................................19

*Walker v Sheldon*,
    10 N.Y.2d 401, 179 N.E.2d 497, 223 N.Y.S.2d 488 (1961) ......................................7

## FEDERAL RULES

Fed. R. Civ. P. 54(b) ......................................4

Fed. R. Civ. P. 56 ......................................4

## INTRODUCTION

Under New York law, if the Plaintiff City of New York seeks to hold defendants liable on either the market share theory of liability or the "commingled product theory of market share liability," the City may not seek an award of punitive damages. Based on prior rulings of this Court and the New York Court of Appeals, as well as constitutional constraints, the City should be barred from seeking or recovering punitive damages if liability is based on either the market share or commingled product theories.

Early in this multidistrict litigation, Defendants moved to dismiss product liability claims to the extent the plaintiffs could not identify the particular manufacturers whose products caused plaintiffs' alleged injuries. The Court denied defendants' motion to dismiss, holding that New York plaintiffs could assert claims based on a theory of collective liability. *In re MTBE Prods. Liab. Litig.,* 379 F. Supp. 2d 348 (S.D.N.Y. 2005). Later, the Court held that while the "evidentiary record has not been developed enough to determine whether plaintiffs may proceed on alternative theories of liability," plaintiffs were not foreclosed from invoking the market share theory of liability or what the Court termed "the 'commingled product theory' of market share liability" if plaintiffs would otherwise be left without a remedy due to their inability to recover from defendants or others on a traditional theory of liability. *In re MTBE Prods. Liab. Litig.,* 447 F. Supp. 2d 289, 301-05 (S.D.N.Y. 2006). Still later, in the *Suffolk County* case, the Court ruled that "plaintiffs may rely on the commingled product theory, which this Court developed to address the particular facts of this case, to prove their claims against gasoline and MTBE manufacturers." *In re MTBE Prods. Liab. Litig.,* 2008 LEXIS 38792 at *17-18 (S.D.N.Y. May 13, 2008).

In this case, the City of New York invoked the market share theory of liability. In the latest complaint, the City expressly asserts that theory. The complaint does not mention the "commingled product theory." In response to recent interrogatories asking what theory it invokes, the City merely referred to the latest complaint and otherwise refused to answer. Thus, the City seems to eschew the "commingled product theory" of market share liability. Regardless of which alternative theory of liability the City ultimately invokes, the City should be precluded from recovering punitive damages on either a market share theory of liability or the "commingled product" theory.

Defendants do not concede that either the market share or commingled product theory can be properly applied in this case. To the contrary, defendants reserve all objections to both theories. Here, defendants limit this motion to the narrow ground that punitive damages cannot be permitted if, and to the extent that, the City seeks to hold defendants liable based on either theory.

This Court already held in the *Suffolk County* case that punitive damages are not allowed to the extent plaintiffs rely on the market share theory: "When the New York plaintiffs rely on market share liability to prove causation for a particular well, they are precluded from arguing that punitive damages are available for that well, and are further precluded from presenting evidence that is relevant solely to punitive damages as to that well." *In re MTBE Prods. Liab. Litig.,* 517 F. Supp. 2d 662, 672 (S.D.N.Y. 2007). The Court based that holding largely on the decision of the New York Court of Appeals in *Hymowitz v. Eli Lilly & Co.,* 73 N.Y.2d 487 (1989). The *Hymowitz* court allowed claims for liability without proof of which defendant's product caused a plaintiff's harm, but the court did not allow punitive damages on those claims. To the contrary, as this Court explained, the *Hymowitz* court "indicated that it clearly did not

want to place an undue burden on manufacturers beyond that required to provide fair compensation to plaintiffs." *In re MTBE,* 517 F. Supp. 2d at 668.

The Court should reach the same result in this case, for all the same reasons and more, whether the City relies on the market share theory or the commingled product theory. This Court explained in the *Suffolk* case that the market share theory might apply if plaintiffs cannot identify the defendants responsible for the product that allegedly caused their damages because the product is fungible or commingled: "The problem that allows plaintiffs to rely on market share liability is that they cannot determine who injured them because the offending product is *fungible or commingled* with other identical products (or both) and therefore cannot be identified as emanating from a particular defendant." 517 F. Supp. 2d at 670 (emphasis added). The same "problem" would also be a prerequisite for applying the commingled product theory. Indeed, as the foregoing passage makes clear, it was the alleged "commingled" nature of the product that led the Court to adopt the market share theory. Notwithstanding any differences between the market share and commingled product theories of liability, both are limited to cases in which plaintiffs cannot identify the defendant whose product caused their injury. That lack of actual proof of causation, and the absence of a nexus between the injury and the conduct of any particular defendant, should bar punitive damages against defendants under either theory.

This bar against punitive damages is not only a matter of New York law, it is also firmly rooted in federal constitutional limits on punitive damages. A line of U.S. Supreme Court cases makes clear that punitive damages are permissible only if, and to the extent that, there is a rational relationship between the punitive award and the actual damages a defendant caused to the particular plaintiff. A plaintiff cannot meet that constitutional standard when the plaintiff relies on the market share or commingled product theories to substitute for proof of actual

causation.  By definition, those theories apply only where a plaintiff is unable to prove by direct evidence which defendant's conduct or product caused the alleged harm.  Conversely, under both theories, defendants face liability for compensatory damages without proof that they caused or contributed to the actual harm.  Thus, it is inevitable under either theory that defendants whose conduct or products did not cause the harm will nonetheless face liability for damages in accordance with their market shares.  In these circumstances, even if it is permissible to require defendants to pay a portion of compensatory damages, it would be unconstitutional to punish them for harm they did not cause.

Accordingly, the defendants listed in Appendix A hereby move *in limine* to preclude the City from arguing that punitive damages are available and from presenting evidence relevant solely to punitive damages.  In the alternative, defendants move for summary judgment on the City's claims for punitive damages.[1]

---

[1]     In the *Suffolk* case, the Court held that the appropriate motion for defendants to file to bar plaintiffs' demand for punitive damages was a motion *in limine* based on the Court's "inherent authority to manage the course of trials."  *In re MTBE*, 517 F. Supp. 2d at 666-67.  Defendants therefore file this submission as a motion *in limine*.  The Court also recognized, however, that "the Second Circuit has repeatedly endorsed the use of summary judgment as to punitive damages 'claims.'"  *Id.* at 666 n.17 (citations omitted).  Thus, in the alternative, defendants file this motion as one for partial summary judgment under Fed. R. Civ. P. 56 and 54(b).

## STATEMENT OF UNDISPUTED FACTS

The City's latest complaint alleges that defendants are liable on a market share theory.

The Fourth Amended Complaint alleges as follows:

<u>Theories of Liability</u>

64.     Market share liability is an appropriate theory for liability in this case.  Market share liability means that for all acts, omissions, and conduct set forth in this Complaint, and for all damages arising therefrom, each Defendant is liable to the City in an amount equal to its respective share of the United States national market for the Products defined in paragraph 54.

65.     Market share liability applies to this case because identification of the manufacturer or manufacturers who produced the Products is impossible, because the MTBE in the Products is fungible, and because Defendants control a substantial share of the market for the Products.

66.     Identification is impossible because Defendants trade, barter, or otherwise exchange their Products with one another such that even when the source of an MTBE plume is identified, the identity of the manufacturers or manufacturers of the products forming the plume cannot be determined.

*4th Am. Compl. ¶¶64-66.*

These allegations make clear that the City does not plan to attempt to prove at trial which defendant manufactured the MTBE or the gasoline containing MTBE that caused its alleged damages.  To the contrary, the City states affirmatively that it "cannot" identify the defendants whose products caused the alleged harm.  *Id.* ¶ 66.  As noted, the City's latest complaint states: "identification of the manufacturer or manufacturers who produced the Products is <u>impossible</u>, because the MTBE in the Products is fungible ...."  *Id.* ¶ 65 (emphasis added).

In addition, the City has refused, on two occasions, to identify any facts in discovery to prove that any particular defendant caused its alleged damages; it has taken inconsistent

positions on the theories of liability it asserts; and it has refused to provide any facts or documents that would entitle it to rely on any theory of alternative liability.[2]

Despite being unable to carry the usual burden of proving actual causation, the City seeks to impose punitive damages indiscriminately against all defendants. Thus, the City's latest complaint prays for "a judgment against all Defendants awarding the City [*inter alia*] punitive damages in an amount to be determined at trial ...." *4th Am. Compl. pp. 36-37.* Notably, the City has refused to provide any evidence that would support an award of punitive damages against any defendant. Rather, in response to discovery requests for such evidence, the City merely

---

[2]       In October 2006, the City along with the plaintiffs in two other cases (*Suffolk* and *United Water New York*) responded to interrogatories concerning market share issues by objecting that all of defendants' requests were "premature, call[ed] for expert opinion, and [sought] privileged attorney work product." *Plfs' Objections and Responses to Defs' Joint Interrogatories Concerning Market Share Claims in New York Focus Cases* (Oct. 25, 2006) (attached as Exhibit A to Wallace Declaration). The City refused to provide any substantive answers. In June 2008, after the Court issued its opinion on the commingled product theory in the *Suffolk* case, the City served supplemental responses that said, *inter alia*, "[i]n light of the Court's opinion, ... the City is no longer seeking damages based on the theory of market share liability" and that "[a]t this time, the City seeks damages for all wells at issue ... based on the commingled product theory...." *City of NY's Revised Supplemental Responses and Objections to Defs' First Joint Interrogatory Nos. 1-7, 9, 12-13* (June 10, 2008) (attached as Exhibit B to Wallace Declaration). More recently, at the end of discovery, defendants served new interrogatories and document requests on the City regarding causation, market share liability and the commingled product theory. Again, the City refused to provide substantive responses except to refer to the allegations set forth in its latest complaint. *Plf City of NY's Responses and Objections to Defs' Contention Interrogatories and Doc. Requests on Causation, Theories of Liability and Apportionment of Damages* (Dec. 19, 2008) (attached as Exhibit C to Wallace Declaration). The latest complaint expressly alleges claims based on the market share theory and makes no mention of the commingled product theory. *4th Am. Compl. p. 13.* In the latest responses, the City answered a question asking which theory of liability it invokes by stating "the City refers Defendants to the Fourth Amended Complaint [which asserts the market share theory].... For further answer, the City's proof of Defendants' legal responsibility for damages will be consistent with the causation theories set forth in the Court's Orders ..., such further orders as the Court may issue and New York law." Exhibit C, Response 3. The City recently committed to supplement its latest discovery responses, but it has not done so as yet.

referred defendants to its latest complaint.[3]  The complaint is not evidence, of course.  Moreover, even if the allegations in the complaint were all proven, those allegations would not support an award of punitive damages.  Nonetheless, despite the lack of evidence of either causation or the sort of quasi-criminal conduct necessary for punitive damages under New York law,[4] the City still purports to invoke both market share liability and punitive damages together.

## ARGUMENT

## I.    THE CITY CANNOT SEEK PUNITIVE DAMAGES ON THE MARKET SHARE THEORY OF LIABILITY

As noted, this Court already ruled in the *Suffolk* case that punitive damages are not available under New York law to the extent a plaintiff relies on the market share theory of liability.  The Court stated in that case: "I find that allowing such damages where causation is established by market share liability would be inconsistent with New York law."  *In re MTBE*, 517 F. Supp. 2d at 672.  The Court concluded: "When the New York plaintiffs rely on market share liability to prove causation for a particular well, they are precluded from arguing that punitive damages are available for that well, and are further precluded from presenting evidence

---

[3]    *See Plf City of NY's Responses and Objections to Certain Defs' First Set of Interrogatories and Doc Requests Regarding Punitive Damages* (Dec. 19, 2008) (attached as Exhibit D to Wallace Declaration).

[4]    New York law bars punitive damages unless the actions of the defendant "'evince a high degree of moral turpitude and demonstrate such wanton dishonesty as to imply a criminal indifference to civil obligations.'"  *Ross v. Louise Wise Servs*, 8 N.Y.3d 478, 489, 836 N.Y.S. 2d 509, 516 (2007), *quoting Walker v Sheldon*, 10 N.Y.2d 401, 404, 179 N.E.2d 497, 223 N.Y.S.2d 488 (1961) (citations omitted).  Even intentional wrongdoing, without more, cannot support a punitive damages verdict in New York.  Rather, the conduct must have "'the character of outrage frequently associated with crime.'"  *Ross*, 8 N.Y.3d at 489, *quoting Prozeralik v Capital Cities Commc'ns, Inc.,* 82 N.Y.2d 466, 479, 626 N.E.2d 34, 605 N.Y.S.2d 218 (1993); *see also, e.g., Roginsky v. Richardson-Merrell, Inc.,* 378 F.2d 832, 843 (2d Cir. 1967) ("the recklessness that will give rise to punitive damages must be close to criminality, … [and] like criminal conduct, it must be clearly established") (internal citation omitted).

that is relevant solely to punitive damages as to that well." *Id.*[5]  Here, the City's current

complaint asserts only the market share theory, not commingled product market share.  Thus, the

Court's prior decision establishes that the City may not pursue punitive damages here.

## II.   THE CITY CANNOT SEEK PUNITIVE DAMAGES ON THE COMMINGLED PRODUCT THEORY

It is not clear whether the City intends to rely on the commingled product theory.  As

noted, the City's latest complaint asserts only the market share theory.  *4th Am. Compl. p. 13.*  In

discovery, the City initially invoked the market share theory; then disclaimed that theory and

invoked the commingled product theory; and then refused to specify which theory it asserts and

instead merely cited to its complaint which alleges only the market share theory.[6]  Even if the

Court were to allow the City to proceed on the commingled product theory, punitive damages

should nevertheless be barred.

---

[5]      As defendants argued in the motion that led to that ruling in the *Suffolk* case, the bar against punitive damages on a market share theory is well-supported.  *See, e.g., Magallanes v. Super. Ct.*, 167 Cal. App. 3d 878, 880 Cal. Rptr. 547 (1985) (expressly holding that punitive damages may not be awarded in a case where liability is based on the market share theory); *Collins v. Eli Lilly & Co.*, 342 N.W. 2d 37, 54 (Wis.), *cert denied*, 469 U.S. 826 (1984) (same); *see also Hymowitz*, 73 N.Y.2d at 511-13 (allowing market share liability but not mentioning punitive damages; implicitly barring punitive damages sub silencio by holding that recovery under a market share theory should not be "inflated ... to increase a defendant's liability beyond its fair share of responsibility"); *cf. Shackil v. Lederle Labs.*, 116 N.J. 155, 561 A.2d 511, 540-41 (1989) (O'Hern, J., dissenting) ("I agree that punitive damages are inappropriate in this setting of market-share responsibility"); *Rowley v. First Columbia Life Ins.*, 741 F. Supp. 1259, 1262 (S.D. Miss. 1989) (punitive damages not available in case where liability against insurers was predicated on their participation in a market that guaranteed the debts of other associated insurance companies); *Stevens v. Owens-Corning Fiberglass Corp.*, 49 Cal. App. 4th 1645, 1669-70 (Cal. App. 1996) (same); *Bobby Kitchens, Inc. v. Mississippi Ins. Guar. Ass'n*, 560 So. 2d 129, 133 (Miss. 1989) (same).

[6]      *Compare* interrogatory responses served in October 2006 which refused to specify any theory (Wallace Decl. Ex. A) *with* responses served in June 2008 which disclaimed the market share theory in favor of the commingled product theory (*id.* Ex. B) *with* responses served in December 2008 which refused to specify a theory but referred to the latest complaint, which invokes only the market share theory (*id.* Ex. C).

*Memo in Support of Defs' Motion To Bar Punitive Damages*

**A.    The Relevant Characteristics of the Market Share Theory and
the Commingled Product Market Share Theory Are Identical**

The same characteristics of the market share theory that make punitive damages

impermissible on that theory also define the commingled product theory.  The chief

characteristic – the lack of proof of an actual connection between the plaintiff's injury and the

conduct of any particular defendant – is the predicate for both theories.  Thus, under both

theories, liability may be imposed on defendants without direct proof that gasoline they

manufactured actually caused or contributed to any injury to the plaintiff.  *In re MTBE*, 447 F.

Supp. 2d at 299-301.  Both theories grant plaintiffs an evidentiary presumption of causation, and

may shift the burden to defendants to try to exculpate themselves.  *Id.*  Thus, both entail an

inevitable risk that a defendant will be held liable even if its product did not cause or contribute

to the plaintiff's injury.  By the same token, both theories pose an inescapable risk that the

damages allocated to any given defendant will be disproportionate to the harm, if any, that the

defendant's product actually caused.  *See In re MTBE*, 517 F. Supp. 2d at 668-71.

In addition, according to this Court's prior rulings, liability and damages under both

theories are to be apportioned in accordance with each liable defendant's market share, as

distinct from the actual damage that any defendant caused.  In describing the market share

theory, this Court stated:  "Once [the prerequisites for market share liability] are established,

each defendant is severally liable for the portion of the judgment that represented its share of the

market at the time of the injury, unless it proves that it could not have made the product that

caused the plaintiff's harm."  *In re MTBE,* 447 F. Supp. 2d at 299-300.  Just so, in describing the

commingled product theory, the Court stated:  "In fashioning the commingled product theory, I

also stated that liability is several only and is apportioned by proof of a defendant's share of the

market at the time of the injury." *In re MTBE*, 2008 LEXIS 38792 at *38 n.72 (*citing In re MTBE*, 447 F. Supp. 2d at 301).

In these and other respects that are critical to the punitive damages analysis, the two theories are identical.[7] Likewise, the factors this Court cited in holding that punitive damages are not allowed on the market share theory apply with equal force to the commingled product theory.

**B.   The Factors that Preclude Punitive Damages on the Market Share Theory Also Preclude Punitive Damages on the Commingled Product Theory**

This Court identified two rationales under New York law that preclude punitive damages in the market share liability context.  First, allowing punitive damages under the commingled product theory of liability would magnify the inequities and inaccuracies inherent where liability is imposed notwithstanding the plaintiff's inability to establish which defendant's product actually caused its alleged injuries.  Second, awarding punitive damages under the commingled product theory of liability would create an incentive for plaintiffs to rely on the theory's alternative causation standard, even when direct causation might be shown through greater effort. These same two rationales also apply in the context of the commingled product market share theory.  Therefore, the similarities between the market share and commingled product theories of liability require that punitive damages be barred on the commingled product theory.

---

[7]      In 2006, the Court repeatedly described the commingled product theory as "the 'commingled product theory' of market share liability," indicating that it is merely a variant or iteration of the market share theory, not a new and distinct theory. *In re MTBE*, 447 F. Supp.2d at 294 n.10, 297, 301, 304.  In 2007, the Court said exactly that:

> THE COURT: ...  The commingle[d] product theory had nothing to do with New York and California.  It had to do with Connecticut, Kansas and Indiana.  In fact, New York, California, Florida, Washington, Wisconsin and Hawaii all have adopted a sort of more standard version of market share liability and the commingled product sort of theory is nothing really but a modification or a different iteration of an existing theory.  It is not really a new theory.

*Hearing Tr., June 9, 2005, p. 47.*

---

1.   **Allowing Punitive Damages on the Commingled Product Theory
Would Magnify Inevitable Inequities and Inaccuracies**

In concluding that the New York Court of Appeals would not allow punitive damages in

the context of market share liability, this Court looked to existing New York law, principally the

*Hymowitz* opinion.  This Court said:  "I predict that the New York Court of Appeals would not

allow punitive damages based on its reasoning in *Hymowitz v. Eli Lilly & Co.,* New York's

leading case on market share liability." *In re MTBE,* 517 F. Supp. 2d at 667-68 (footnotes

omitted).  As this Court noted, the New York Court of Appeals in *Hymowitz* held that liability

under the market share theory "is several only, and should not be inflated when all participants in

the market are not before the court in a particular case." *Id.* at 671 (quoting *Hymowitz,* 73

N.Y.2d at 512-13).  This Court adopted the reasoning of the *Hymowitz* court, which applies with

full force to the commingled product theory, as well as the market share theory.

More specifically, this Court found it significant that the Court of Appeals allowed only

several – not joint and several – liability in *Hymowitz,* because New York's highest court

"acknowledged – and sought to minimize – the inequities imposed on defendants when plaintiffs

utilize market share liability." *In re MTBE,* 517 F. Supp. 2d at 671.  This Court explained that

the *Hymowitz* holding "struck a balance between allowing plaintiffs to seek compensation for

their alleged harm and protecting defendants from bearing a disproportionate responsibility to

compensate plaintiffs for harm they may not have caused." *Id.* at 670.  Thus, relying on

*Hymowitz,* this Court held that allowing punitive damages in this setting "would magnify any

inaccuracies between the harm done and the relief provided by particular defendants." *Id.* at 671.

The application of the commingled product theory of liability requires the same result.

Like the market share theory, the commingled product theory is an evidentiary tool that allows

the plaintiff to establish causation where "the offending product is fungible or commingled," *id.*

at 670, and the plaintiff therefore "cannot identify which defendant proximately caused her harm." *Id.* at 668 (*quoting In re MTBE*, 447 F. Supp. 2d at 299) ; *see also In re MTBE*, 2008 U.S. Dist. LEXIS 38792 at *22 (stating that "it is impossible to determine whose product was in any particular spill").  Thus, both theories rest on the same premise and depend on proof of the same basic conditions, namely that the responsible manufacturer cannot be identified.

Moreover, as noted, both theories would impose liability based on market shares rather than direct proof that a given defendant's product caused the plaintiff's damages.  That allocation of liability entails inevitable inaccuracies.  The inaccuracies are compounded by the absence of significant participants in the market.  Just as the *Hymowitz* court noted in cautioning against the inequities of expanding the potential liability of the named defendants, this Court has acknowledged that not all market participants or potentially responsible manufacturers are named as defendants in this case.  Most notably, numerous foreign entities that have supplied gasoline containing MTBE to the New York region are not parties to this action.  *See In re MTBE,* 2008 U.S. Dist. LEXIS 38792 at *35-36 ("overseas companies not named as defendants also supply gasoline to the New York regional market").

The inaccuracies and potential inequities are further compounded by the fact that any given defendant under either theory could be held liable for damages it did not cause, or liable in an amount that does not even approximate the injury or risk that its products caused any given plaintiff.  Under either theory, liability could be imposed against all or most defendants when some of those defendants are actually innocent of causing the plaintiff's alleged injury.  As this Court has recognized, under the commingled product theory, "even drawing all inferences in plaintiffs' favor, no reasonable jury could find, by a preponderance of the evidence, that *each* defendant's gasoline caused the contamination of each well." *Id.* at *35 (emphasis added); *see*

*also id. at* \*21-\*22 ("Plaintiffs' argument . . . that it was likely that *all* defendants' product was part of *every* gallon of gasoline that caused MTBE contamination, is not supported by the evidence in the record") (emphasis in original).

Thus, the apportionment of liability under the commingled product theory, as under the market share theory, is inherently "flawed" as it will necessarily involve "inaccuracies between the harm done and the relief provided by particular defendants." *In re MTBE*, 517 F. Supp. 2d at 671. As this Court already held in barring punitive damages on the market share theory, punitive damages would "magnify any inaccuracies between the harm done and the relief provided by particular defendants." *Id.* The same risk of inequitable inaccuracies that led the Court to preclude punitive damages under the market share theory compels the same result under the commingled product theory.

### 2.   Allowing Punitive Damages on the Commingled Product Theory Would Create an Incentive To Ignore Other Liable Parties

In rejecting punitive damages on the market share theory, this Court also cited "[p]ractical considerations" that "weigh in favor of not allowing a jury to award punitive damages where plaintiffs rely on market share liability." *In re MTBE*, 517 F. Supp. 2d at 671. As the Court explained, a plaintiff would have "an incentive to rely on" the market share theory if punitive damages were allowed on that theory even if the plaintiff could, with greater effort, identify parties that are in fact responsible for its alleged damages. *Id.* The same incentives would lead a plaintiff to invoke the commingled product theory if punitive damages were allowed on that theory.

As the Court held in the context of market share liability, where a plaintiff has failed to identify the "actual bad actors" that caused the injury at issue, punitive damages are inappropriate. *Id.*; *see also id.* at 672 (a "plaintiff who seeks punitive damages should . . . be

required [to] identify the defendants that caused the harm rather than lumping all defendants together to find the deepest pockets among them"); *Collins v. Eli Lilly & Co.*, 342 N.W.2d 37, 54 (Wis.), *cert. denied.*, 469 U.S. 826 (1984) (a plaintiff "who has sued multiple defendants and has represented that she cannot prove which defendant actually caused her injuries, may not recover punitive damages").  Restricting punitive damages to cases in which plaintiffs identify the parties that truly caused their harm will encourage them to make the effort to identify those parties.

### C.   Any Differences Between the Market Share and Commingled Product Theories Would Not Justify Punitive Damages on the Latter Theory

In its 2008 opinion on causation, this Court stated that the commingled product theory "is different from market share liability … in an important way":  whereas the market share theory was developed in cases involving fungible products such as DES, the commingled product theory was developed for this case where the product is generally commingled or blended.  *In re MTBE,* 2008 U.S. Dist. LEXIS 38792 at *38-39.  That distinction may be somewhat attenuated.  Regardless, the distinction would not warrant a different rule on punitive damages.

The fact that gasoline is commingled might preclude a plaintiff from identifying the manufacturer or manufacturers.  Under this Court's rulings, that commingling could provide a reason for permitting proof of causation by an alternative theory, subject of course to other prerequisites.  The commingling of the product does not, however, significantly distinguish gasoline with MTBE from DES or other fungible products or justify a different set of rules on punitive damages.  To the contrary, commingling or fungibility are merely the characteristics of certain products such as DES that led courts to allow market share liability while precluding punitive damages.

This Court has described the market share theory of *Hymowitz* as differing from the commingled product theory of the MTBE cases in part because in *Hymowitz*, "each [DES] pill alleged to have caused plaintiffs' injuries was manufactured by only one defendant." *In re MTBE,* 2008 U.S. Dist. LEXIS 38792 at *17 n.34 (italics in original). Defendants respectfully submit that this distinction may not be supported by the *Hymowitz* opinion or the facts underlying it. Rather, the facts in that case suggest that a given DES plaintiff could have taken pills of multiple manufacturers. As the *Hymowitz* court noted, "[a]ll DES was of identical chemical composition. Druggists usually filled prescriptions from whatever was on hand. Approximately 300 manufacturers produced the drug…. Thus the pregnant women who took DES generally never knew who produced the drug they took…." *Hymowitz,* 73 N.Y.2d at 503. *See also Sindell v. Abbott Labs.,* 26 Cal.3d 588, 595, *cert. denied,* 499 U.S. 912 (1980) ("DES was produced from a common and mutually agreed upon formula as a fungible drug interchangeable with other brands of the same product; … it was customary for doctors to prescribe the drug by its generic rather than its brand name and … pharmacists filled prescriptions from whatever brand of the drug happened to be in stock").

Thus, DES plaintiffs may have taken pills made by multiple manufacturers, in which case multiple manufacturers of the same generic drugs could be responsible for the injuries sustained by any given plaintiff. Insofar as different manufacturers of DES used generic components from other manufacturers, the drugs were essentially commingled on reaching a given pharmacy. In addition, to the extent pharmacists mixed generic DES from different manufacturers, the drugs would have been further commingled by the time they reached a given plaintiff. Moreover, insofar as plaintiffs took generic DES from different manufacturers at different times, the drugs of the different manufacturers then became commingled within the plaintiffs. These essential

characteristics -- fungibility and the impossibility of tracing a product from the alleged injury back to a specific manufacturer -- supported market share liability without punitive damages in cases such as *Hymowitz*, and are the same essential characteristics that this Court has cited in support of the commingled product theory.

Previously, the Court also suggested that the commingled product theory differs from the market share theory insofar as exculpation is permitted under the commingled product theory.[8] That distinction, too, may be attenuated for three reasons.

First, in at least some market share cases, courts have allowed exculpation on various grounds.[9] Indeed, this Court, too, has stated that exculpation is permitted under the market share

---

[8]    At a hearing in 2007, the Court stated:

> I think I remember the difference between market share and commingled in my mind. I think the difference in my mind was exculpation. …
>      I was saying I'm going to use a modified market share where you can get out if you can show you were never in this market. I think that is the distinction two-and-a-half years ago between commingled and classic market share. It meant that if you could show that you couldn't have been part of the commingled [product] because you weren't even producing it yet or because you stopped producing it or because you only sent your refined material to the west of the United States not to the east, that was my thinking, and that made sense then. …
>      Now, it is all coming back to me what the distinction was supposed to be, and it had to do with exculpation because in Hymowitz there was no exculpation, there wasn't any. I allowed it under commingled.

*Hearing Tr., August 30, 2007, p. 117-18.*

[9]    Although the *Hymowitz* Court found that the relevant market for DES was national and therefore defendants could not exculpate themselves based on the geographic limits of the distribution of their products within the United States, the court expressly allowed exculpation of defendants who manufactured DES for uses other than pregnancy. 73 N.Y.2d at 511-12 ("if a DES producer satisfies its burden of proof of showing that it was not a member of the market of DES sold for pregnancy use, disallowing exculpation would be unfair and unjust") and n.2 ("If a defendant was not a member of the national market of DES marketed for pregnancy, it is not culpable, and should not be liable"). Moreover, as the *Hymowitz* court noted, courts in other jurisdictions applying market share liability allow exculpation on various grounds. For example, the *Hymowitz* court noted that under the market share approach adopted by the Supreme Court of Wisconsin, "Defendants are allowed … to exculpate themselves by showing that their product could not have caused the injury to the particular plaintiff." *Hymowitz*, 73 N.Y.2d at 510, *citing*

---

theory. *In re MTBE,* 447 F. Supp. 2d at 299-300 (under the market share theory, "each defendant has the burden of exculpation and the damages are apportioned among the remaining defendants according to their share of the market"). To that extent, allowing exculpation under the commingled product theory does not distinguish that theory from the market share theory.

Second, exculpation is functionally equivalent to the process of defining the relevant market under the market share theory. Given that, as a prerequisite for either theory, the particular manufacturers that caused the damages must not be identifiable, the only practical way a defendant could exculpate itself would be to show that it was not in the market at the relevant time or place. As this Court put it, under the commingled product theory, "[e]ach defendant … may offer evidence to exculpate itself from liability 'by proving that its product was not present at the relevant time or in the relevant place.'" *In re MTBE,* 2008 U.S. Dist. LEXIS 38792 at *39-40 (*quoting In re MTBE,* 447 F. Supp. 2d at 301). In essence, the same result would be achieved by defining the relevant geographic and temporal dimensions of the market under the market share theory in a manner that excludes manufacturers that did not deliver products to the market where and when the damages occurred.

Third, allowing exculpation does not eliminate the inevitable inaccuracies for those defendants that cannot exculpate themselves because they were in the market at the relevant time and place. Their mere participation in the market at that time and place does not establish a

---

*Collins v. Eli Lilly,* 342 N.W. 2d at 54. Notably, the Wisconsin Supreme Court, while allowing exculpation, expressly disallowed punitive damages. That court stated:

> The concept of punitive damages embodies a rule for individualized punishment of a wrongdoer whose conduct toward the plaintiff is particularly outrageous. Implicit in this concept is the notion that, where punishment is to be exacted, it must be certain that the wrongdoer being punished because of his conduct actually caused the plaintiff's injuries. Under this rule [the plaintiff], who has sued multiple defendants and has represented that she cannot prove which defendant actually caused her injuries, may not recover punitive damages.

*Collins v. Eli Lilly,* 342 N.W. 2d at 54.

causal connection between their conduct or products and the alleged injuries. Rather, defendants that are not exculpated still face the same inaccuracies and inequities in assessing liability and damages under either the market share or commingled product theories.

Whatever the differences may be between fungible and commingled products, or between the market share and commingled product theories, the differences are far outweighed by the fundamental similarities. As noted already, both theories depend on a showing that the plaintiff cannot identify the manufacturer responsible for the alleged damages, whether because the product is fungible or commingled. Both theories therefore spread liability according to market shares, rather than direct proof of causation. Inevitably, then, both theories entail inaccuracies and impose on defendants potential inequities in the assessment of liability and actual damages. Those are the critical factors that led this Court to conclude that punitive damages are not allowed on the market share theory. Those same factors should therefore bar punitive damages on the commingled product theory, notwithstanding any distinctions between the two theories.

## III.    CONSTITUTIONAL PROTECTIONS PRECLUDE PUNITIVE DAMAGES ON EITHER THE MARKET SHARE OR COMMINGLED PRODUCT THEORIES

In addition to the reasoning of this Court's prior opinions and the New York Court of Appeal's decision in *Hymowitz*, constitutional constraints also bar the imposition of punitive damages on either a market share or a commingled product theory of liability.

Although an alternative theory of liability might substitute for proof of actual causation in determining a defendant's liability for *compensatory* damages, it would be unconstitutional to permit a plaintiff to recover *punitive* damages without direct proof that the defendant in question actually caused the plaintiff's asserted harm. That essential element of proof is necessarily lacking when liability is based on either the market share or commingled product theory.

**A.**     **The Due Process Clause Precludes Punitive Damages Without a Showing that the Defendant Actually Caused the Plaintiff's Asserted Harm**

Punitive damages are not awarded to make a plaintiff whole, but to punish a defendant and deter similar conduct. *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003); *U.S. ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 160-61 (2d Cir. 1996). The Supreme Court made clear in *BMW v. Gore* that due process requires that punitive damages bear a relationship not only to the reprehensibility of the defendant's conduct, but also to the actual damages caused by that conduct. *BMW of North America v. Gore*, 517 U.S. 559, 575 (1996). *See also Fabri v. United Techs. Int'l., Inc.*, 387 F.3d 109, 125-26 (2d Cir. 2004); *DiSorbo v. Hoy,* 343 F.3d 172, 186-87 (2d Cir. 2003).

The degree of reprehensibility of a defendant's conduct is "[p]erhaps the most important indicium of the reasonableness of a punitive damages award," and tying the amount of punitive damages to the gravity of the defendant's conduct "reflects the accepted view that some wrongs are more blameworthy than others." *Gore*, 517 U.S. at 575; *Fabri*, 387 F.3d at 125-26; *DiSorbo*, 343 F.3d at 186-87. Additionally, the degree of reprehensibility of a defendant's conduct not only depends on the facts as they pertain to the plaintiffs, but also depends on the extent of the harm the defendant's conduct has caused. *Philip Morris USA v. Williams,* 549 U.S. 346, 353-54 (2007); *Action Marine, Inc. v. Cont'l Carbon Inc.*, 481 F. 3d 1302, 1319-20 (11th Cir. 2007). Put simply, punitive damages can be assessed to punish a specific wrongdoer only if the wrongdoer has engaged in egregious conduct toward the plaintiff which caused the plaintiff severe injury. *See O'Connor v. GCA Corp.*, 332 F. Supp. 1246, 1247 n.1 (S.D.N.Y. 1971) ("Under New York law punitive damages can only be assessed where there is malice directed against the plaintiff as distinguished from the case where acts are done on behalf of the defendant for business reasons"; citation omitted).

The Supreme Court's decision in *Philip Morris* makes clear that punitive damages must reflect the actual injury or damages that the defendant caused to the particular plaintiff who brought the action, as distinct from other persons who are not plaintiffs. In that case, the Court held that it "would amount to a taking of 'property' from the defendant without due process" if a jury based a punitive damages award "in part upon its desire to *punish* the defendant for harming persons who are not before the court (*e.g.*, victims whom the parties do not represent)." 549 U.S. at 349 (italics in original). The Court went on to rule that "the Constitution's Due Process Clause forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties, … *i.e.*, injury that it inflicts upon those who are, essentially, strangers to the litigation." *Id.* at 353. The Court explained: "we can find no authority supporting the use of punitive damages awards for the purpose of punishing a defendant for harming others. We have said that it may be appropriate to consider the reasonableness of a punitive damages award in light of the *potential* harm the defendant's conduct could have caused. But we have made clear that the potential harm at issue was harm potentially caused *the plaintiff*." *Id.* at 354 (emphasis in original).

The Supreme Court's decision in *State Farm* also held that under the Constitution, punitive damages must be based, at least in part, on proof of actual damages caused to the particular plaintiff. In that case, the Court overturned a punitive award on finding that the defendant was punished for "operations throughout the country [and] … its nationwide policies rather than for the conduct direct toward the [plaintiffs]." 538 U.S. at 420. The Court stated that the "conduct [which might warrant punitive damages] must have a nexus to the specific harm suffered by the plaintiff." *Id.* at 422. More broadly, the Court ruled:

> A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business. Due process does not permit courts, in

the calculation of punitive damages, to adjudicate the merits of other parties'
hypothetical claims against a defendant under the guise of the reprehensibility
analysis ....

*Id.* at 423. The Court concluded: "In sum, courts must ensure that the measure of punishment is

both reasonable and proportionate to the amount of harm to the plaintiff and to the general

damages recovered." *Id.* at 426.

### B. By Definition, a Plaintiff Relying on the Market Share or Commingled Product Theories Cannot Prove Actual Causation

Since due process allows punitive damages only if there is a rational relationship between

the amount of the award and the harm the defendant caused the plaintiff, and since both the

market share and commingled product theories may only be employed where there is no proof of

a relationship between the defendant's conduct and the plaintiff's harm, it necessarily follows

that due process would not allow punitive damages on either the market share or the commingled

product theory.

The fundamental basis for applying these theories conflicts with the due process

requirements for imposing punitive damages. The market share and commingled product

theories allow a plaintiff to obtain compensatory damages where it cannot identify which of

numerous defendants caused its injury. Indeed, the *sine qua non* of both the market share and

commingled product theories is the absence of evidence that a specific defendant's product

caused a particular plaintiff's injury, which is the very evidence that the Supreme Court held in

*BMW v. Gore, State Farm v. Campbell* and *Philip Morris v. Williams* is constitutionally required

for an award of punitive damages.

These decisions make clear that it would violate due process to allow punitive damages

without proof that the defendant caused the plaintiff's injury. Since that sort of proof of

causation is necessarily lacking in a case based on the market share or commingled product

theory, it follows that punitive damages would be unconstitutional in such a case. As a matter of law, therefore, the Court cannot allow punitive damages to the extent this case proceeds on the market share or commingled product theory of liability.

## CONCLUSION

For all the foregoing reasons, defendants respectfully request that the Court grant this motion and enter an order either barring all evidence and arguments on punitive damages, or granting defendants summary judgment on the City's claim for punitive damages, to the extent the City relies on a market share theory or a commingled product theory of liability. That order is necessary to protect defendants from unwarranted, unfair and impermissible punishment for making gasoline that did not cause the City's damages.

Dated:   March 20, 2009

Respectfully submitted,

Richard E. Wallace, Jr.
Peter C. Condron
WALLACE KING DOMIKE & REISKIN PLLC
2900 K Street, N.W.
Washington, D.C.  20007
Telephone:  (202) 204-1000
Facsimile:  (202) 204-1001

Attorneys for Defendants Equilon Enterprises LLC,
Motiva Enterprises LLC, Shell Oil Company, Shell
Oil Products Company LLC d/b/a Shell Oil
Products Company, Shell Petroleum, Inc., Shell
Trading (US) Company, TMR Company f/k/a
Texaco Refining and Marketing Inc., Texaco
Refining and Marketing (East) Inc., Texaco Inc.,
Chevron Environmental Corp. and Chevron U.S.A.
Inc.

On behalf of Defendants listed on Appendix A

## APPENDIX A

The foregoing Motion to Bar Punitive Damages Based on the Market Share and Commingled Product Theories is filed on behalf of the following defendants:

Atlantic Richfield Company
BP Products North America Inc.
Chevron Environmental Corp.
Chevron U.S.A. Inc.
CITGO Petroleum Corporation
CITGO Refining and Chemicals Company L.P.
Coastal Eagle Point Oil Company
ConocoPhillips Company
Crown Central LLC
El Paso Merchant Energy-Petroleum Company
Equilon Enterprises LLC
Equistar Chemicals, LP
ExxonMobil Corporation
ExxonMobil Oil Corporation
Flint Hills Resources, LP
Getty Petroleum Marketing Inc.
Getty Properties Corp.
Hess Corporation
Lyondell Chemical Company
Mobil Corporation
Motiva Enterprises LLC
The Premcor Refining Group Inc.
Shell Oil Company
Shell Oil Products Company LLC (d/b/a Shell Oil Products Company)
Shell Petroleum, Inc.
Shell Trading (US) Company
Sunoco, Inc.
Sunoco, Inc. (R&M)
Texaco Inc.
Texaco Refining and Marketing (East) Inc.
TOTAL Petrochemicals USA, Inc.
TMR Company (f/k/a Texaco Refining and Marketing Inc.)
Ultramar Energy Inc.
Ultramar Ltd.
Unocal Corporation
Union Oil Company of California
Valero Energy Corporation
Valero Marketing and Supply Company
Valero Refining and Marketing Company