UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X

IN RE METHYL TERTIARY BUTYL ETHER
PRODUCTS LIABILITY LITIGATION

This document pertains to:

*City of New York v. Amerada Hess Corp., et al.,*
Case No. 04-CV-3417

Master File No. 1:00-1898
MDL No. 1358 (SAS)
M21-88

## <u>GULF OIL LIMITED PARTNERSHIP'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ...................................................................................... ii

SUMMARY OF ARGUMENT ................................................................................. 1

UNDISPUTED MATERIAL FACTS WARRANTING SUMMARY JUDGMENT ................... 1

LEGAL STANDARD ............................................................................................. 3

ARGUMENT ....................................................................................................... 4

    I.    PLAINTIFF HAS ADDUCED NO EVIDENCE TO SUPPORT ITS
        CONSPIRACY AND UNFAIR OR DECEPTIVE PRACTICES CLAIMS ...................... 4

    A.   <u>Plaintiff Cannot Show that GOLP Participated in Any Conspiracy</u>. .................................. 4

    B.   Plaintiff Cannot Show that GOLP Violated General Business Law §349 .......................... 6

    II.   PLAINTIFF CANNOT MEET ITS TRADITIONAL CAUSATION BURDEN. .............. 7
        A.   Legal Standards for Plaintiff's Contamination Claims ................................................. 7
        B.   Applicable Legal Standard for Traditional Causation in MDL 1358 ......................... 9
        C.   Well No. 5 ...................................................................................................... 9
        D.    Well 39 Section.................................................................................................12
        E.   Station 6 .......................................................................................................... 13
        F.   Well No. 22 ...................................................................................................... 17
        G.   Other Service Station...........................................................................................17

CONCLUSION ..................................................................................................... 19

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)..........................................................................................................4

*City of New York v. Milhelm Attea & Bros., Inc.,*
550 F. Supp. 2d 332 (E.D.N.Y. 2008) ...............................................................................8

*D D'Amico v. City of New York,*
132 F.3d 145 (2d Cir. 1998)..............................................................................................4

*Durove v. Fabian Transport, Inc.,*
No. 04 Civ. 7000 (RJH), 2004 WL 2912891 (S.D.N.Y. Dec. 14, 2004)...........................8

*Gristede's Foods, Inc. v. Unkechauge Nation,*
532 F. Supp. 2d 439 (E.D.N.Y. 2007) ...............................................................................6

*Gussack Realty Co. v. Xerox Corp.,*
224 F.3d 85 (2d Cir. 2000)................................................................................................8

*Higazy v. Templeton,*
505 F.3d 161 (2d Cir. 2007)..............................................................................................3

*Humphrey v. Diamant Boart, Inc.,*
556 F.Supp.2d 167 (E.D.N.Y. 2008) .................................................................................8

*In re MTBE Prod. Liab. Litig.,*
379 F.Supp.2d 348 (S.D.N.Y. 2005) (Scheindlin, J.) .......................................................8

*In re MTBE Prod. Liab. Litig.,*
591 F.Supp.2d 259 (S.D.N.Y. 2008) (Scheindlin, J.) .......................................................9

*Jeffreys v. Rossi,*
275 F.Supp. 2d 463 (S.D.N.Y. 2003) (Scheindlin, J.), *aff'd*, 426 F.3d 529 (2d Cir.
2005) ..................................................................................................................................4

*Kashi v. Gratsos,*
790 F.2d 1050 (2d Cir. 1986)............................................................................................4

*McClellan v. Smith,*
439 F.3d 137 (2d Cir. 2006)..............................................................................................4

*Newman v. RCN Telecom Servs., Inc.,*
238 F.R.D. 57 (S.D.N.Y. 2006) ........................................................................................6

*Pahuta v. Massey-Ferguson, Inc.*,
   170 F.3d 125 (2d Cir. 1999)................................................................................8

*Scribner v. Summers*,
   84 F.3d 554 (2d Cir. 1996)................................................................................8

*Vermont Teddy Bear Co. v. 1-800 Beargram Co.*,
   373 F.3d 241 (2d Cir. 2004)................................................................................4

*Voss v. Black & Decker*,
   59 N.Y. 2d 102, 107 (N.Y. 1983) .......................................................................8

**FEDERAL STATUTES**

Fed. R. Civ. P. 56(c) ..............................................................................................3

**STATE STATUTES**

N.Y. Nav. Law §181 ..............................................................................................1, 7, 8

New York General Business Law §349 ...................................................................1, 6

## SUMMARY OF ARGUMENT

In its April 13, 2009 letter, Plaintiff stated that it will not pursue claims under any theory against Gulf Oil Limited Partnership ("GOLP") as to Well Nos. 26, 39, and 45, and that it will not seek to hold GOLP liable under the commingled product theory. *Decl. of Christopher J. Garvey ("Garvey Decl"),* Ex. 1 (Apr. 13, 2009 Letter from Susan Amron to James Pardo, Ex. A at 3 ("*Plaintiff's Causation Letter*")). As to Plaintiff's remaining claims, it is undisputed that GOLP never engaged in conduct that constituted a conspiracy and/or a violation of New York General Business Law §349, and Plaintiff has offered no evidence that GOLP ever supplied gasoline to a service station identified as a past or potential future source of contamination to the remaining Focus Wells. Therefore, GOLP is entitled to summary judgment on all of Plaintiff's claims, including conspiracy, violation of New York General Business Law §349, strict liability for design defect, strict liability for failure to warn, negligence, trespass, public nuisance, private nuisance, and violation of the New York Navigation Law.

## UNDISPUTED MATERIAL FACTS WARRANTING SUMMARY JUDGMENT

Plaintiff asserts nine causes of action against GOLP, including: (1) strict liability for defective design; (2) strict liability for failure to warn; (3) negligence; (4) civil conspiracy; (5) public nuisance; (6) private nuisance; (7) trespass; (8) violation of the New York Navigation Law; and (9) violation of New York General Business Law §349. *See* GOLP's Local Rule 56.1 Statement in Support of Motion for Summary Judgment on Plaintiff's Claims ("L.R. 56.1") ¶1.[1] *See* Pl.'s Fourth Am. Compl. ("*4th Am. Compl.*"), Master File No. 1:00-cv-1898, Docket No. 1350.

---

[1] Plaintiff did not assert any claim against GOLP for violation of the Toxic Substances and Controls Act. L.R. 56.1 ¶2; *See 4th Am. Compl.*

GOLP is a marketer and distributor of retail gasoline products, also known as "downstream handler." L.R. 56.1 ¶3; *Garvey Decl.*, Ex. 2 (*Aff. of Alice J. Kuhne to GOLP's Resp. to Pl's Prelim. Set of Interrogs Re: Def. Identification*, ¶2). As a downstream handler, GOLP does not and did not own, operate, lease or control any service stations or own any underground storage tanks ("USTs") within the Relevant Geographic Area ("RGA"). L.R. 56.1 ¶4; *Garvey Decl.*, Ex. 3 (*Decl. of Gulf Oil Limited Partnership Pursuant to Case Management Order No. 4 ("CMO 4 Decl.")*, ¶2). Furthermore, GOLP's business did not include the refining, manufacture, or production of MTBE or MTBE gasoline. L.R. 56.1 ¶5; *Garvey Decl.*, Ex. 4 (*GOLP's Objections and Resps. to Pl. City of New York's First Set of Reqs. for Admis. and Related Interrogs. to All Defs.* at 4-5 (Sept. 29, 2008)). GOLP was never a member of the American Petroleum Institute ("API"), the Oxygenated Fuels Association ("OFA"), or the MTBE Committee, never engaged in lobbying efforts concerning the use of oxygenates in gasoline, never provided testimony to Congress concerning MTBE, never made representations concerning the benefits or detriments of MTBE as an oxygenate, and never conducted any studies concerning MTBE. L.R. 56.1 ¶6; *Garvey Decl.*, Ex. 5 (*GOLP's Disclosure Pursuant to June 9, 2005 Directive* (Sept. 15, 2005) ("*Membership Disclosure*")); and L.R. 56.1 ¶7, *Garvey Decl.*, Ex. 6 (*GOLP's Resps. to Interrogs. Nos. 42, 43, and 67 of Plaintiff's Second Set of Interrogs. and Reqs. for Produc. to All Defs.* (Sept. 10, 2007) ("*Resps. to 2nd RFPs*")).

The parties and the Court have narrowed the claims at issue in the upcoming trial. On December 1, 2008, this Court ordered that a "focus trial" proceed on ten of Plaintiff's supply wells, five selected by Plaintiff and five by Defendants. *See* Case Management Order No. 42, Master File No. 1:00-cv-1898, Docket No. 2164. Plaintiff selected Well Nos. 6, 6A, 6B, 6D, and

33, collectively referred to as "Station 6," and Defendants selected Well Nos. 5, 22, 26, 39, and 45 ("Defendants' Focus Wells") (collectively, "Focus Wells").

Plaintiff contends that the expert reports of David Terry, Donald Cohen, Gary D. Beckett, and Marcel Moreau identify the stations that Plaintiff claims have caused or will cause contamination to the Focus Wells.[2] L.R. 56.1 ¶8; *Garvey Decl.*, Ex. 1 (*Plaintiff's Causation Letter* at 4). On March 9, 2009, John H. Guswa submitted an expert report on behalf of GOLP ("Guswa Report") concerning Plaintiff's allegations about past and future sources of contamination to Well Nos. 5 and 22. L.R. 56.1 ¶9, *Garvey Decl.*, Ex. 7 (*Mar. 9, 2009 Expert Report of John H. Guswa* at 3 ("*Guswa Report*")).

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact as to any material fact and that the movant is entitled to summary judgment as a matter of law." Fed. R.

---

[2] This Motion addresses opinions and service station locations identified in the following expert reports: (1) Expert Report Donald K. Cohen, CPG and Marnie A. Bell, P.E., served on Feb. 7, 2009 ("Cohen Report"); (2) Corrected Expert Report of David B. Terry, served on Mar. 4, 2009 ("Terry Report") (correcting Expert Report of David B. Terry, served on Feb. 6, 2009); (3) Site-Specific Expert Report of Marcel Moreau, served on Feb. 6, 2009 ("Moreau Site-Specific Report"); and (4) Expert Report of G.D. Beckett, served on Feb. 6, 2009 ("Beckett Report") (collectively, "Initial Reports").

Despite the improper introduction by Plaintiff of certain contentions and opinions on rebuttal, this Motion also addresses the additional retail service stations identified in the Rebuttal Report of David B. Terry ('Terry Rebuttal Report'), served on March 23, 2009. Specifically, the Terry Rebuttal Report identified additional retail service stations and specific releases as potential contributors to future contamination at the Station 6 Wells and Defendant Focus Well Nos. 5 and 22. *See Garvey Decl.*, Ex. 8 (*Apr. 9, 2009 Letter from James A. Pardo to the Honorable Shira A. Scheindlin*) ("*Pardo Letter to the Court*"). The identification of additional sources and releases in the Rebuttal Report were improper and should be stricken. *Id.* Should the Court choose not to strike those portions of the Rebuttal Report, GOLP reserves the right to renew its motion for summary judgment on claims relating to those stations and releases or to move to exclude evidence concerning those stations and releases at an appropriate time. Furthermore, GOLP reserves the right to renew its motion for summary after the Court rules on any *Daubert* challenge to Terry's Initial and/Rebuttal Report opinions.

Civ. P. 56(c). An issue of fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Jeffreys v. Rossi*, 275 F.Supp. 2d 463, 473 (S.D.N.Y. 2003) (Scheindlin, J.), *aff'd*, 426 F.3d 529 (2d Cir. 2005). A fact is material when it "might affect the outcome of the suit under governing law." *Jeffreys*, 426 F.3d at 553. It is the movant's burden to show that no material fact exists. *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

To defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. Although, in determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving part and draw all justifiable inferences in that party's favor, *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006), mere conclusory allegations, conjecture, and unsupported speculation are insufficient to create a genuine issue of material fact. *Jeffreys*, 426 F. 3d at 554; *D D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). Plaintiff cannot rely simply on its pleadings, but must present evidence in admissible form, by authenticated document, deposition, affidavit, or other means which creates a genuine issue factual issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## ARGUMENT

### I.   PLAINTIFF HAS ADDUCED NO EVIDENCE TO SUPPORT ITS CONSPIRACY AND UNFAIR OR DECEPTIVE PRACTICES CLAIMS

#### A. Plaintiff Cannot Show that GOLP Participated in Any Conspiracy.

To prove civil conspiracy, Plaintiff must show that a defendant: (1) participated in an agreement to commit an unlawful act or a lawful act by unlawful means; (2) intentionally engaged in an overt act performed in furtherance of the scheme; and (3) the overt act caused

injury. *Kashi v. Gratsos*, 790 F.2d 1050, 1055 (2d Cir. 1986). Here, Plaintiff's conspiracy claims are based on allegations that refiners and other producers of MTBE gasoline knew of the dangers of MTBE but intentionally suppressed or withheld that information from Plaintiff and the public. *See, e.g.*, *4th Am. Compl.* at ¶¶83-113; 148-156. Plaintiff claims that various industry participants utilized the API, OFA, and the MTBE Committee in furtherance of the conspiracy, that individual Defendants lobbied Congress to approve the use of the MTBE in connection with the 1990 Clean Air Act Amendments, and that Defendants intentionally withheld or suppressed information concerning the potential risks of utilizing MTBE as oxygenate. *See id.* at ¶¶93, 96, 102-107.

While GOLP is not agreeing or implying that these contentions have any merit, Plaintiff has presented no evidence that GOLP engaged in the referenced conduct or any other conduct amounting to a civil conspiracy. GOLP was never a member of the AFI, the OFA, or the MTBE Committee. L.R. 56.1 ¶6; *Garvey Decl.*, Ex. 5 (*Membership Disclosures*). GOLP never lobbied Congress concerning MTBE or other oxygenates, never testified before Congress concerning MTBE, never represented to the public that MTBE was a safe gasoline additive, never advertised the use of the MTBE an oxygenate, and never conducted studies concerning MTBE. L.R. 56.1 ¶7; *Garvey Decl.*, Ex. 6 (*Resps. to 2nd RFPs*).

Moreover, no Plaintiff expert contends that GOLP was affiliated in any way with an industry-wide conspiracy. Furthermore, the City offered no admissible evidence in response to GOLP's contention interrogatory concerning the conspiracy claim. L.R. 56.1, ¶10; *Garvey Decl.*, Ex. 9 (*City's Response to Interrogatory No. 2 of GOLP's Responses to Requests for Admission, Interrogatories, and Requests for Production ("Plaintiff's Contention Interrogatory Responses")*). The City's response simply referred GOLP to the Fourth Amended Complaint,

which, other than defining GOLP as a corporate entity, does not reference GOLP at any other point. *Id.*

There is simply no evidence in the record to support a claim that GOLP participated in any conspiracy or that GOLP engaged in any act in furtherance of any alleged conspiracy. Therefore, GOLP is entitled to summary judgment on Plaintiff's civil conspiracy claim.

B.   Plaintiff Cannot Show that GOLP Violated General Business Law §349

To prove a violation of New York General Business Law §349 ("GBL §349"), Plaintiff must show that:  (1) a defendant engaged in deceptive acts or practices directed at consumers; (2) the acts or practices were misleading in a material way; and (3) Plaintiff suffered injury as a result. *Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 450 (E.D.N.Y. 2007). Furthermore, to recover under the statute, Plaintiff must show that GOLP's deceptive acts or practices were the actual cause of its injury. *Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 63 (S.D.N.Y. 2006).  Here, Plaintiff alleges that Defendants "made statements and representations that MTBE was environmentally safe, when in fact they knew or should have known that MTBE posed a substantial threat to groundwater resources," and that Defendants "engaged in the practice of suppressing, omitting, or denying any and all evidence, whether it be by their own researchers or independent researchers, that MTBE gasoline posed a substantial danger to groundwater resources." *See 4th Am. Compl.* at ¶¶188-189.

Again, without conceding that these contentions have any merit, Plaintiff has adduced no evidence that GOLP engaged in the referenced conduct or any other conduct amounting to an unfair or deceptive business practice.  As noted above, GOLP never made representations concerning the safety of MTBE, never lobbied Congress concerning MTBE, never conducted studies concerning MTBE, and never participated in any trade organization that Plaintiff claims

engaged in unlawful or deceptive conduct.  L.R. 56.1 ¶7; *Garvey Decl.*, Ex. 6 (*Resps. to 2nd RFPs*).

Moreover, no Plaintiff expert contends that GOLP engaged in deceptive practices, that GOLP was aware of the risks of using MTBE as an oxygenate, or that GOLP suppressed or withheld any information concerning MTBE.  Furthermore, the City offered no admissible evidence in response to GOLP's contention interrogatory concerning the GBL 349 claim.  L.R. 56.1, ¶10; *Garvey Decl.*, Ex. 9 (*City's Response to Interrogatory No. 3 of Plaintiff's Contention Interrogatory Responses*).  Again, the City's response simply referred GOLP to the Fourth Amended Complaint, which, other than defining GOLP as a corporate entity, does not reference GOLP at any other point.  *Id.*  Therefore, GOLP is entitled to summary judgment all claims under G.B.L §349.

## II.  PLAINTIFF CANNOT MEET ITS TRADITIONAL CAUSATION BURDEN.

GOLP is further entitled to summary judgment on all remaining claims concerning contamination to the Focus Wells.  Plaintiff can present no evidence that any service station released MTBE gasoline supplied by GOLP within or in the vicinity of the capture zone of any Focus Well.  Therefore, there is no genuine issue of material fact as to whether gasoline supplied by GOLP caused contamination to any Focus Well and GOLP is entitled to summary judgment.

### A.    Legal Standards for Plaintiff's Contamination Claims

Plaintiff asserts seven causes of action against GOLP regarding contamination to the Focus Wells, including (1) strict liability for defective design; (2) strict liability for failure to warn; (3) negligence; (4) public nuisance; (5) private nuisance; (6) trespass; and (7) violation of the New York Navigation Law (New York Oil Spill Prevention, Control, and Compensation Act), N.Y. Nav. Law §181.  *See 4th Am. Compl*, ¶¶130-191.  However, as described below,

Plaintiff has adduced no evidence that gasoline supplied by GOLP caused contamination to any

Focus Wells.  The elements of each claim are as follows:

- Strict Liability for Design Defect:  Plaintiff must show that (1) the defendant breached its duty to market safe products when (2) it marketed a product designed so that it was not reasonably safe and (3) that the defective design was a substantial factor in causing the plaintiff's injury. *Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 132 (2d Cir. 1999) (citing *Voss v. Black & Decker*, 59 N.Y.2d 102, 107 (N.Y. 1983)).

- Strict Liability for Failure to Warn:  Plaintiff must establish that (1) the defendant had a duty to warn; (2) the defendant breached that duty to warn in a manner that rendered the product defective; (3) the defect was the proximate cause of the plaintiff's injury; and (4) the plaintiff suffered loss or damage. *Humphrey v. Diamant Boart, Inc.*, 556 F.Supp.2d 167, 178 -179 (E.D.N.Y. 2008).

- Negligence:  Plaintiff must establish: (1) the existence of a duty on the defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof. *Durove v. Fabian Transport, Inc.*, No. 04 Civ. 7000 (RJH), 2004 WL 2912891, at *4 (S.D.N.Y. Dec. 14, 2004).

- Public Nuisance:  Plaintiff must establish conduct or omissions which offend, interfere with or cause damage to the public in the exercise of rights common to all, in a matter such as to offend public morals, interfere with use by the public of a public place or endanger or injure the property, health, safety or comfort of a considerable number of persons. *City of New York v. Milhem Attea & Bros., Inc.*, 550 F. Supp. 2d 332, 349 -350 (E.D.N.Y. 2008).

- Private Nuisance:  Plaintiff must show (1) an interference substantial in nature; (2) intentional in origin; (3) unreasonable in character; (4) with a person's property right to use and enjoy land; (5) caused by another's conduct in acting or failing to act. *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 93 (2d Cir. 2000) (citing *Scribner v. Summers*, 84 F.3d 554 (2d. Cir. 1996).

- Trespass:  Plaintiff must show that a defendant committed an act that amounts to or produces an unlawful invasion of Plaintiff's property. *See In re MTBE Prod. Liab. Litig.*, 379 F.Supp.2d 348, 426 (S.D.N.Y. 2005) (Scheindlin, J.).

- Navigation Law:  Plaintiff much show that a defendant "discharger" discharged petroleum that caused damages to Plaintiff. *See In re MTBE Prod. Liab. Litig.*, 379 F.Supp.2d 348, 427 (S.D.N.Y. 2005) (Scheindlin, J.).  A "discharge" is "any intentional or unintentional action or omission resulting in the release[e] . . . of petroleum into the water of the state." *Id.* (summarizing Article 12 of the New York Navigation Law). A "discharger" includes "a party who is in a position to halt [a] a discharge, to effect an immediate cleanup or to prevent the discharge in the first place." *Id.*

Plaintiff has conceded it will not proceed against GOLP at trial under the commingled product theory, therefore, a necessary element to establish each of these claims is to show that GOLP supplied a service station with gasoline and that there is a genuine issue whether that station released GOLP-supplied gasoline that caused MTBE contamination to a Focus Well. Plaintiff cannot meet this burden.

### B. Applicable Legal Standard for Traditional Causation in MDL 1358

In this Court's May 13, 2008 omnibus Opinion and Order concerning Defendants' various summary judgment motions in the *Suffolk County* focus case, the Court outlined Plaintiff's burden for establishing that a particular release caused contamination to a supply well. *See In re MTBE Prod. Liab. Litig.*, 591 F.Supp.2d 259, 290 (S.D.N.Y. 2008) (Scheindlin, J.). Specifically, the Court stated that Plaintiff must present evidence that: (1) a release occurred within the capture zone of the well; (2) the release was of a volume and depth making it likely that MTBE from the gasoline reached the groundwater flowing toward the well; and (3) the defendant released the gasoline, or the defendant supplied and/or branded the station during the time period in which the gasoline was released by another party. *Id.*

Plaintiff asserts that the reports of Messrs. Terry, Cohen, Beckett, and Moreau identify service stations from which releases occurred that will affect a Focus Well. L.R. 56.1 ¶8; *Garvey Decl.*, Ex. 1 (*Plaintiff's Causation Letter*, Ex. A. at 4). Plaintiff limits its claims to releases of gasoline before 2004, after which MTBE gasoline was no longer sold in New York State.. L.R. 56.1 ¶11; *Garvey Decl.*, Ex. 1 (*Plaintiff's Causation Letter*, Ex. A. at 3).

### C. Well No. 5

Neither Plaintiff nor any of the experts on which it relies have offered evidence that GOLP supplied MTBE gasoline that was subsequently released from a service station within or in the vicinity of the capture zone of Well No. 5.

Plaintiff's expert, David Terry, models hypothetical releases from the following location with which GOLP had a supply relationship at some time, with the year of Mr. Terry's modeled release in parentheses:

- 202-06 Hillside Avenue (1999 release)

L.R. 56.1 ¶12; *Garvey Decl.*, Ex. 10 (*Terry Report* at Table 5).[3]  GOLP supplied gasoline to the service station at 202-06 Hillside Avenue starting in September 2003.  L.R. 56.1 ¶15; *Garvey Decl.*, Ex. 7 (*Guswa Report* at 10); *Garvey Decl.*, Ex. 13 (*Tr. of Dep. of GOLP Rule 30(b)(6) Deponent Ronald R. Sabia ("Sabia Tr.")* at 21:21-22:10).  The only release that Mr. Terry models for this service station location occurred in 1999, which is well before GOLP supplied gasoline to the station.  Therefore, it is undisputed that GOLP did not supply the gasoline in that modeled release.  Furthermore, Mr. Terry does not set forth any evidence that any release occurred during the short time period from September 2003 to December 2003 that GOLP may have supplied MTBE gasoline to this location.  Therefore, there is no evidence that MTBE gasoline supplied by GOLP was released from this location.

Plaintiff's expert, Donald Cohen, identifies the service station at 202-06 Hillside Avenue as one of five stations that "have the <u>potential</u> to have impacted Well No. 5," even though "a

---

[3] Mr. Terry also introduced additional modeled releases and release locations in his Rebuttal Report that he contends may have contributed to contamination at Well 5, including the service station at 241-15 Hillside Avenue, from which Mr. Terry models a 1999 release of gasoline. L.R. 56.1 ¶13; *Garvey Decl., Ex. 8 (Pardo Letter to the Court*, Ex. D); *Garvey Decl.,* Ex. 11 (*Terry Rebuttal Report* at Table 3).  GOLP began supplying this service station on or about March 25, 2004, after the ban on MTBE gasoline went into effect and several years after Mr. Terry's modeled release from this location. L.R. 56.1 ¶14; *Garvey Decl.,* Ex. 12 (*Affidavit of Craig D. Byerlee*).  Thus, Plaintiff has no evidence that GOLP supplied MTBE gasoline that was released into the Well 5 capture zone from this location.  Regardless, the portions of the Terry Rebuttal Report that introduce additional service stations and/or release locations as potential sources of contamination to the Focus Wells should be stricken as improper, *Garvey Decl.*, Ex. 8 (*Pardo Letter to the Court*, Ex. D), and GOLP reserves the right to renew its summary judgment motion concerning those modeled releases.

distinct source or sources cannot be clearly identified." L.R. 56.1 ¶16; *Garvey Decl.*, Ex. 14 (*Cohen Report* at 7-64) (emphases added). Again, GOLP did not supply gasoline to this station prior to September 2003. L.R. 56.1 ¶15; *Garvey Decl.*, Ex. 7 (*Guswa Report* at 10); *Garvey Decl.*, Ex. 13 (*Sabia Tr.* at 21:21-22:10). Mr. Cohen's Report summarizes documentation concerning this station, but does not reference any release of gasoline between September 2003 and December 2003. L.R. 56.1 ¶17; *Garvey Decl.*, Ex. 14 *(Cohen Report at 7-44 to 7-49)*. Thus, Mr. Cohen sets forth no evidence that GOLP ever supplied MTBE gasoline that was released from the 202-06 Hillside Avenue service station.

Plaintiff's expert, Marcel Moreau, summarizes certain information concerning underground storage tanks within the RGA, but to the extent his report references gasoline releases at stations, none are linked to the capture zone of any Focus Well. L.R. 56.1 ¶18; *see Garvey Decl.*, Ex. 15 (*Moreau Site-Specific Report* at 1-7). As to the service station at 202-06 Hillside, Mr. Moreau summarizes various station records, but does not reference any gasoline releases at this location other than a release in 1997. L.R. 56.1 ¶19; *Garvey Decl.*, Ex. 15 (*Moreau Site-Specific Report Appendix B: Site Summary for 202-06 Hillside Avenue*). Therefore, Mr. Moreau's report points to no evidence that gasoline from 202-06 Hillside Avenue—or any other retail service station—released gasoline supplied by GOLP into or in the vicinity of the Well No. 5 capture zone.

Plaintiff's expert, Gary Beckett, summarizes information concerning various service stations identified by Messrs. Cohen and Terry in their Initial Reports, but does not identify any specific releases as potential sources of contamination to Well 5 or any other Focus Well. L.R. 56.1 ¶20; *Garvey Decl.*, Ex. 16 (*Tr. of Dep. of Gary Beckett* ("*Beckett Tr.*") at 96:16-97:5). As to the service station at 202-06 Hillside, Mr. Beckett states that the "1[st] potential release issue"

occurred in September 7, 1990, but cites no evidence of nor references any subsequent release of gasoline from this location during the time period when GOLP supplied this location. L.R. 56.1 ¶21; *Garvey Decl.*, Ex. 17 (*Beckett Report* at Table 1) (emphasis added). Thus, Mr. Beckett's report sets forth no evidence that 202-06 Hillside Avenue—or other service station—released gasoline supplied by GOLP into or in the vicinity of Well No. 5's capture zone.

Finally, as to the service station at 202-06 Hillside, GOLP's retained expert John H. Guswa opined in his report that there is no record evidence indicating that any release of gasoline from this station occurred between September 2003 and December 2003, the limited time frame in which GOLP supplied MTBE gasoline to that particular station. L.R. 56.1 ¶22; *Garvey Decl.*, Ex. 7 (*Guswa Report* at 10-11). Plaintiff has offered no rebuttal evidence to contradict Dr. Guswa's conclusion.

Therefore, Plaintiff has failed to demonstrate that any service station released GOLP-supplied gasoline within or in the vicinity of the capture zone of Well No. 5, and GOLP is entitled to summary judgment on all of Plaintiff's claims concerning any MTBE contamination at Well No. 5.

> D.   Well 39

Even though Plaintiff's Causation Letter states that Plaintiff is not pursuing GOLP at Well 39, certain Plaintiff experts reference gasoline releases from the service station at 241-15 Hillside Avenue, to which GOLP began supplying gasoline on or about March 25, 2004.[4] L.R.

---

[4] Plaintiff's expert, David Terry, models releases from this location in 1989, 1999, and 2005. *See* L.R. 56.1¶23; *Garvey Decl.*, Ex. 10 (*Terry Report* at Table 5). Plaintiff's expert, Gary Beckett, states that the "1st potential release issue" occurred on July 19, 1989, but cites no evidence of nor references any subsequent release of gasoline from this location. L.R. 56.1 ¶24; *Garvey Decl.*, Ex. 17 (*Beckett Report* at Table 1) (emphasis added). Plaintiff's expert, Marcel Moreau, discusses three release events at this location, occurring in 1989, 1999, and 2005. L.R.

56.1¶14; *Garvey Decl.*, Ex. 12 (*Affidavit of Craig D. Byerlee*).  Because GOLP did not begin supplying the station until after January 1, 2004, the date after which MTBE gasoline was no longer sold in New York State, GOLP never supplied the station with MTBE gasoline. Moreover, Plaintiff will not contend at trial that any post-January 2004 releases caused MTBE contamination to a Focus Well.  L.R. 56.1 ¶11; *Garvey Decl.*, Ex. 1 (*Plaintiff's Causation Letter*, Ex. A. at 3).  Accordingly, neither Plaintiff nor any of the experts on which it relies have offered evidence that GOLP supplied MTBE gasoline that was subsequently released from this service station.

    E.  <u>Station 6</u>

 Plaintiff has failed to show that any service station released MTBE gasoline supplied by GOLP within or in the vicinity of the hypothetical Station 6 capture zone.

 Plaintiff's expert, David Terry, models 37 releases from 22 service stations as potential contributors to future MTBE contamination at Station 6.  L.R. 56.1 ¶26; *Garvey Decl.*, Ex. 10 (*Terry Report* at Table 4).  Of these 22 stations, GOLP only supplied gasoline to the station at 131-07 Merrick Boulevard, to which GOLP supplied gasoline from 2002 through the present. L.R. 56.1¶27; *Garvey Decl.*, Ex. 3 (*CMO 4 Decl.*).  Even though this station is not located within the Malcolm Pirnie Wellhead Protection Plan ("WHPP") ten-year model capture zone or the Cohen historic capture zone, Mr. Terry models gasoline releases from this station in 1997 and 2000 as potentially contributing to future Station 6 contamination.  L.R. 56.1 ¶26; *Garvey Decl*, Ex. 10 (*Terry Report* at Table 4); and L.R. 56.1 ¶28; *Garvey Decl.*, Ex. 18 (*WHPP* at 7); *Garvey Decl.*, Ex. 14 (*Cohen Report, Figure 17* at 7-17).  Regardless of whether this station lies within the actual capture zone of Station 6, both of the modeled releases occurred before GOLP

---

56.1 ¶25; *Garvey Decl.*, Ex. 15 (*Moreau Site-Specific Report Appendix B: Site Summary for 241-15 Hillside Avenue*).

supplied gasoline to the station.  Thus, it is undisputed that GOLP never supplied the gasoline for either of these modeled releases.[5]

Mr. Terry also improperly introduced additional modeled releases in his Rebuttal Report that he contends may have contributed to contamination at Station 6, including the following service station locations, with the dates of modeled releases in parentheses:

- 82-48 Woodhaven Boulevard (1993)

- 178-02 Union Turnpike (1994)

- 166-06 Hillside Avenue (1998)

L.R. 56.1 ¶29; *Garvey Decl.*, Ex. 11 (*Terry Rebuttal* at Table 2).  The portions of the Terry Rebuttal Report that introduce additional service stations and releases—including releases from these three stations—as potential sources of contamination to the Focus Wells should be stricken as improper, and GOLP reserves the renew its motion for summary judgment on those additional locations and/or releases.  *See Garvey Decl.*, Ex. 8 (*Pardo Letter to the Court*).  Moreover, GOLP reserves the right to renew its motion for summary judgment following any *Daubert* challenge to Mr. Terry's Rebuttal Report analysis.

Regardless, as to the service stations at 82-48 Woodhaven Boulevard and 178-02 Union Turnpike, GOLP supplied gasoline to the stations starting in September 2003.  L.R. 56.1 ¶31;

---

[5] In his Rebuttal Report, Mr. Terry for the first time models a 2005 release of gasoline from the service station at 131-07 Merrick Boulevard.  L.R. 56.1 ¶30; *Garvey Decl.*, Ex. 11 (*Terry Rebuttal Report* at Table 4).  The introduction of this additional release is improper in his Rebuttal Report.  Regardless, the modeled release occurred over a year after MTBE gasoline was no longer sold in New York State.  Accordingly, there is no evidence in the record that GOLP supplied MTBE gasoline that was released from this service station location.  Moreover, Plaintiff has stated that it only seeks to pursue claims for gasoline releases that occurred before 2004.  L.R. 56.1 ¶11; *Garvey Decl.*, Ex. 1 (*Plaintiff's Causation Letter*, Ex. A. at 3).  Thus, the 2005 modeled released is improper, irrelevant, and cannot be relied upon by Plaintiff to meet its burden.  Finally, GOLP reserves the right to renew its motion for summary judgment after the Court rules on any *Daubert* challenge to Mr. Terry's opinions, including his Rebuttal Report analyses.

*Garvey Decl.*, Ex. 13 (*Tr. of Dep. of GOLP Rule 30(b)(6) Deponent Ronald R. Sabia ("Sabia Tr.")* at 21:21-22:10).   Thus, GOLP cannot be liable for contamination resulting from a 1993 release at 82-48 Woodhaven Boulevard or a 1994 release at 178-02 Union Turnpike.  Moreover, both stations are located miles outside of the Wellhead Protection Plan 10-year capture zone and the Cohen historic capture zone.  L.R. 56.1 ¶32; *Garvey Decl.*, Ex. 18 (*WHPP* at 7); *Garvey Decl.*, Ex. 14 (*Cohen Report,* Figure 17 at 7-17).  Furthermore, Plaintiff experts Donald Cohen, Marcel Moreau, and Gary Beckett do not reference or discuss either of these service stations in their reports.  Thus, Plaintiff has offered no evidence that GOLP supplied gasoline that was released from either of these service stations into or in the vicinity of the Station 6 capture zone.

As to the station at 166-06 Hillside Avenue, to which GOLP historically supplied gasoline, Plaintiff has offered no evidence that gasoline released from this location reached the capture zone of Station 6 or was likely to have reached groundwater flowing toward Station 6.  Plaintiff expert David Terry does not reference any supporting documentation for the 1998 modeled release, nor does he provide any detail concerning the volume or depth of the release other than conjectural "hypothetical" release volumes.  Furthermore, the station is located outside of the City's WHPP 10-year capture zone prepared by Malcolm Pirnie, and outside of the Cohen historic capture zone.  L.R. 56.1 ¶33; *Garvey Decl.*, Ex. 18 (*WHPP* at 7); *Garvey Decl.*, Ex. 14 (*Cohen Report, Figure 17* at 7-17).  Moreover, Plaintiff experts Donald Cohen, Marcel Moreau, and Gary Beckett do not even reference or discuss this service station in their expert reports, let alone allege that it caused MTBE contamination to a Focus Well.  Therefore, there is no genuine issue of material fact that GOLP-supplied gasoline was released from this location at a volume and depth making it likely that the gasoline reached groundwater flowing toward Station 6.

Mr. Moreau summarizes certain information concerning USTs within the RGA, but to the extent his report references specific gasoline releases at service stations, none are linked to the capture zone of or contamination to any Focus Well. L.R. 56.1 ¶18; *Garvey Decl.*, Ex. 15 (*Moreau Site-Specific Report* at 1-7). As to the station at 131-07 Merrick Boulevard, which GOLP supplied starting in 2002, Mr. Moreau summarizes certain records concerning underground storage tanks at this location. L.R. 56.1 ¶35; *Garvey Decl.*, Ex. 15 (*Appendix B to Moreau Site-Specific Report, Site Summary for 131-07 Merrick Boulevard*). These records do not describe any release of gasoline from 2002 forward, the time in which GOLP supplied the station, as noted above. *Id.* Thus, Mr. Moreau does not offer any evidence that this service station—or any other—released gasoline supplied by GOLP within or in the vicinity of the hypothetical Station 6 capture zone.

Mr. Beckett summarizes information concerning various service stations identified by Messrs. Cohen and Terry in their Initial Reports, but does not identify any specific releases as potential sources of contamination to Station 6 or any other Focus Well. L.R. 56.1 ¶20; *Garvey Decl.*, Ex. 16 (*Beckett Tr.* at 96:16-97:5). As to the service station at 131-07 Merrick Boulevard, Beckett notes that the "1[st] potential release issue" occurred on January 17, 1996, a time that predates GOLP's supply relationship with the station. L.R. 56.1 ¶36; *Garvey Decl.*, Ex. 17 (*Beckett Report* at Table #1). Mr. Beckett cites no evidence of nor references subsequent release of gasoline from this location. *Id.* Thus, Mr. Beckett's report contains no evidence that this station—or any other—released gasoline supplied by GOLP within or in the vicinity of the hypothetical capture zone of Station 6.

Therefore, Plaintiff has failed to demonstrate that any service station released GOLP-supplied gasoline within or in the vicinity of the hypothetical Station 6 capture zone modeled by

Mr. Terry, and GOLP is entitled to summary judgment on all of Plaintiff's claims concerning Station 6.

F.     Well No. 22

Of the four Plaintiff experts whom Plaintiff contends have identified release sources to the Focus Wells, David Terry is the only expert who contends that a GOLP-supplied service station may cause contamination to Well No. 22.  Mr. Terry models a 1993 release from the retail service station at 118-02/118-10 Queens Boulevard as potential source of future contamination to Well 22.  L.R. 56.1 ¶37; *Garvey Decl.*, Ex. 10 (*Terry Report* at Table 5).  This service station is located outside of the Cohen Well 22 historic capture zone—within which Mr. Cohen found "no reported releases"—and outside of the WHPP 10-year capture zone prepared by Malcolm Pirnie.  L.R. 56.1 ¶38; *Garvey Decl.*, Ex. 14 (*Cohen Report* at 7-65) (emphasis added); and L.R. 56.1 ¶39; *Garvey Decl.*, Ex. 14 (*Cohen Report* at 7-67).  Mr. Terry's Well 22 analysis, as well as his other opinions, present patently flawed and unreliable opinions concerning future contamination to the Focus Wells and will be subject to a *Daubert* challenge. Therefore, GOLP expressly reserves the right to renew its motion for summary judgment at an appropriate time.

G.     Other Service Station Locations

One Plaintiff expert, Marcel Moreau, references two service locations that GOLP supplied with gasoline at one time.  Neither he, Plaintiff, nor any other Plaintiff expert allege that these two stations caused contamination to a Focus Well.

Moreau summarizes station records for the following two locations that GOLP has supplied with gasoline:

- 138-19 Hillside Avenue.
- 236-01 Linden Boulevard

L.R. 56.1 ¶40; *Garvey Decl.*, Ex. 15 (*Moreau Site-Specific Report Appendix B: Site Summaries for 138-19 Hillside Avenue and 236-01 Linden Boulevard*).

As to the station at 138-19 Hillside Avenue, GOLP supplied gasoline to this service station starting in September 2003. L.R. 56.1 ¶41; *Garvey Decl.*, Ex. 13 (*"Sabia Tr."* at 21:21-22:10). Moreau only references release events that predate GOLP's supply relationship with the station. L.R. 56.1 ¶42; *Garvey Decl.*, Ex. 15 (*Moreau Site-Specific Report*). Moreover, Mr. Moreau does not state that MTBE was ever detected at this site, nor does he contend that this service station caused contamination at any particular Focus Well. L.R. 56.1 ¶43; *Garvey Decl.*, Ex. 15 (*Moreau Site-Specific Report*). Accordingly, Mr. Moreau offers no evidence that GOLP supplied MTBE gasoline that was released from this service station into or in the vicinity of the capture zone of a Focus Well. Plaintiff experts David Terry, Donald Cohen, and Gary Beckett do not reference or discuss this service station in their reports, let alone contend that this service station was a source of contamination to a Focus Well. Therefore, there is no evidence that GOLP ever supplied gasoline that was released from this service station into or in the vicinity of a Focus Well.

As to the station at 236-01 Linden Boulevard, Mr. Moreau does not discuss any spill events at this station after 1986—a year that predates GOLP's existence—does not state that MTBE was ever detected at this site, and does not allege that this station caused contamination to any Focus Well. L.R. 56.1 ¶44; *Garvey Decl.*, Ex. 15 (*Moreau Site-Specific Report Appendix B: Site Summary for 236-01 Linden Boulevard*). Furthermore, Plaintiff experts David Terry, Donald Cohen, and Gary Beckett do not reference or discuss this service station in their reports, let alone contend that this service station was a source of contamination to a Focus Well.

Therefore, there is no evidence that GOLP ever supplied gasoline that was released from this service station into or in the vicinity of a Focus Well.

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment to GOLP on all claims.

Dated: New York, NY
      April 20, 2009

Respectfully submitted,

By: _Christopher J. Garvey_ (rcr)

Christopher J. Garvey (CG 3323)
Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue
New York, New York  10018
Tel.:  212.813.8800
Fax:  212.355.3333
E-Mail:  cgarvey@goodwinprocter.com

*Attorney for Defendant Gulf Oil Limited Partnership*

## CERTIFICATE OF SERVICE

I certify that, on April 20, 2009, a true copy of the foregoing GULF OIL LIMITED PARTNERSHIP'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT was served electronically on liaison counsel for Plaintiffs and Defendants, and also by Lexis-Nexis File and Serve on all counsel of record in this action.

/s/ **Anthony A. Orlandi**
Anthony A. Orlandi