# Exhibit 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: Methyl Tertiary Butyl Ether ("MTBE") Product Liability Litigation<br><br>This Document Relates To:<br><br>All cases listed in Schedule A, attached hereto. | MDL No. 1358 (SAS) |

## AFFIDAVIT OF ALICE J. KUHNE

I, ALICE J. KUHNE, depose and state as follows:

1.  I am the Treasurer of Catamount Management Corporation, the sole general partner of Gulf Oil Limited Partnership ("GOLP")(incorrectly referred to by plaintiffs as Gulf Oil, LP). I submit this affidavit in support of GOLP's Response to Plaintiffs' Preliminary Set of Interrogatories Re: Defendant Identification.

2.  In 1988 Catamount Petroleum Limited Partnership ("Catamount") was formed. Catamount's business from 1988 through 1993 was the wholesale marketing and trading of unbranded petroleum products. Catamount did not own any storage or distribution facilities. In December, 1993, pursuant to the Plan of Reorganization of Cumberland Farms, Inc. ("CFI") under Chapter 11 of the United States Bankruptcy Code, CFI and Catamount entered into a Joint Venture Agreement and a Second Amended and Restated Agreement of Limited Partnership. To implement the Joint Venture Agreement, CFI contributed to Catamount certain petroleum marketing and distribution assets, including CFI's rights to the "Gulf" trademark and tradename, which CFI acquired from Chevron U.S.A., Inc. in 1986 (the "Chevron/Gulf Assets"). Pursuant to the Second Amended and Restated Agreement of Limited Partnership, Catamount changed its name to GOLP. Since December, 1993,

GOLP's activities have been limited to petroleum marketing and distribution. GOLP does not explore for or extract crude oil, nor does GOLP own or operate any refineries. GOLP is not in the business of manufacturing or formulating gasoline containing MTBE. GOLP does not manufacture or sell MTBE.

3. GOLP has undertaken a good faith effort to respond to this preliminary discovery in accordance with the directives of the Court issued May 11, 2004. GOLP does not represent, and expressly disclaims, that the responses to interrogatories are complete and/or based upon an exhaustive review of documents and other information. GOLP obtained this information through interviews of personnel believed likely to have the relevant knowledge and from a review of readily available documents believed likely to contain responsive information. Specifically, GOLP has conducted a series of computer searches of its current trading system, which stores information concerning trades made from 2002 to the present, and has also run these searches on an older database, covering the years 2000 to 2002. Searching earlier databases would require extensive programming efforts that GOLP has not undertaken, in part because GOLP does not believe that the quality, quantity or reliability of the data would be any better or different than the information provided for the years 2000-2004. The same would be true for any hard copy review, which would have the added downside of being quite burdensome, particularly because most inventory purchase records are maintained either by vendor by year or by product by month, and not by terminal. GOLP has also interviewed various employees who were involved with inventory, operations, exchanges, trading, and records management.

4. Terminals from which GOLP believes gasoline was or may have been supplied to customers in states in which a plaintiff has a lawsuit are listed in Tab 1. For several of the terminals listed in Tab 1, GOLP has also attached the results of computer searches intended to identify the suppliers of products to those terminals for the years which computer database searching could be conducted without extensive programming or reprogramming. The identification of a "supplier"

2

simply reflects what that GOLP's records indicate as to the seller of gasoline products to GOLP; it does not necessarily indicate the manufacturer of the product. GOLP does not maintain records of the suppliers of any terminals with which GOLP has or had an exchange agreement, as that supply is the responsibility of the terminal owner or operator. In addition, GOLP has provided only limited supply information for terminals that are supplied primarily by pipeline, as that information could not be generated through the computer searches conducted by GOLP. Collection of that information: (a) would require manual searches of monthly records not maintained by terminal; (b) would not necessarily result in the identification of the actual supplier or manufacturer of the gasoline product; and (c) would not likely identify "suppliers" other than those already named as defendants in these actions or not otherwise identified in GOLP's disclosures herein. As a result, GOLP has not undertaken that further manual document review

5.   In addition, the information attached at Tab 1 does not include information relating to a limited number of exchange and/or thru-put relationships that are no longer active relationships. GOLP did not undertake to research the existence and content of hard copy documents relating to inactive exchange relationships, because these documents, if any exist, would not reveal the suppliers of those terminals. GOLP did not undertake to research the existence of thru-put relationships that became inactive prior to 2000, because supplier information for those thru-put relationships would not reasonably be accessible for the reasons stated in Paragraph 3.

I DECLARE UNDER PENALTY OF PERJURY THIS ___ DAY OF JULY, 2004, THAT THE FOREGOING IS TRUE AND CORRECT.

_____<br>Alice J. Kuhne

LIBA/1394382 1