UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

In re:  Methyl Tertiary Butyl Ether ("MTBE")          Master File No. 1:00-1898
Products Liability Litigation                                   MDL 1358 (SAS)
                                                                          M21-88

-------------------------------------------------------x

**This document relates to:**

*City of New York v. Amerada Hess Corp.,*
*et al.*, 04 Civ  3417

-------------------------------------------------------x


## ORAL ARGUMENT REQUESTED


## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE REGARDING APPLICATION OF THE COMMINGLED PRODUCT THEORY, CONSIDERATION OF FAULT OF NONPARTIES BY JURY, AND PROOF OF DATE OF HARM


**This brief is filed on behalf of Defendants listed on the attached Appendix A.**

# TABLE OF CONTENTS

I.      INTRODUCTION ...............................................................................................1

II.     BACKGROUND OF CAUSATION RULINGS IN MDL 1358.......................................2

III.    THE CITY'S BACK-AND-FORTH CAUSATION THEORIES .......................................4

IV.     SOURCES OF CONTAMINATION ...............................................................................5

V.      ARGUMENT…………………………………………………………………….......6

        A.      The Court Should Not Permit the City to Pursue Alternative Liability Theories
                Unless the City First Establishes That It Has No Other Remedy. ...........................6

        B.      In the Alternative, the Court Should Clarify Two Important Aspects of a Trial
                Involving Any Sort of Market Share. ...................................................................10

                1.      The Court Should Instruct the Jury to Apportion Liability to Spillers
                        Who Caused the Harm to Preserve Defendants' Right to Avoid Joint
                        Liability Under a Market-Based Allocation. ..................................................10

                2.      The City Must Prove the Dates of Each Release. .........................................14

VI.     CONCLUSION...............................................................................................................18

# TABLE OF AUTHORITIES
## FEDERAL CASES

*In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831 (2d. Cir. 1992) .....................................13

*In re DES Cases*, 789 F. Supp. 552 (E.D.N.Y. 1992)..................................................................7, 16

*In re E. & S. Districts Asbestos Litigation*, 772 F. Supp. 1380 (E.D.N.Y. 1991)....................12, 13

*E. & S. Districts Asbestos Litigation*, 772 F. Supp. 1380 (E.D.N.Y. 1991) ..................................13

*Gray v. Cleaning Sys. & Suppliers*, 834 F. Supp. 123 (S.D.N.Y. 1993) .........................................12

*Hall v. E. I. Du Pont de Nemours & Co.*, 345 F. Supp. 353 (E.D.N.Y. 1972) .................................7

*Hamilton v. Accu-Tek*, 62 F. Supp. 2d 802 (E.D.N.Y. 1999) ...........................................................7

*Johnston v. Bankers Standard Insurance Co.*, 877 F.2d 1146 (2d Cir. 1989)...............................10

*In re MTBE Prod. Liability Litigation*, 517 F. Supp. 2d 662 (S.D.N.Y. 2007) ........................6, 13

*In re MTBE Products Liability Litigation*, 379 F. Supp. 2d 348 (S.D.N.Y. 2005).................2, 3, 6, 10, 11, 13...............................................................................................................................

*In re MTBE Products Liability Litigation*, 447 F. Supp. 2d 289 (S.D.N.Y. 2006)......2, 3, 6, 11, 13

*In re MTBE Products Liability Litigation*, 591 F. Supp. 2d 249 (S.D.N.Y. 2008)......1, 2, 3, 4, 7, 8 10, 14, 15, 16 .................................................................................................................................

## STATE CASES

*Brenner v. Am.. Cyanamid Co.,* 263 A.D.2d 165, 699 N.Y.S.2d 848, 853 (N.Y. App. Div. 4th Dep't 1999)..........................................................................................................8, 9

*Conley v. Boyle Drug Co.*, 570 So.2d 275 (Fla. 1990) ....................................................................6

*In re DES Market Share Litigation*, 79 N.Y.2d 299, 591 N.E.2d 226 (1992) ...............................16

*Gannon Personnel Agency v. City of New York*, 394 N.Y.S.2d 5, 57 A.D.2d 538 (N.Y. App. Div. 1st Dept. 1977).......................................................................................................12

*Garret v. Holiday Inns, Inc.*, 58 N.Y.2d 253, 447 N.E.2d 717 (1983) ..........................................12

*Hamilton v. Beretta U.S.A. Corp.,* 96 N.Y.2d 222, 241, 727 N.Y.S.2d 7, 19 (2001).....................8

*Hymowitz v. Eli Lilly & Co.*, 73 N.Y.2d 487, 539 N.E.2d 1069 (1989) .........................6, 8, 14, 16

*Rutherford v. Owens Illinois, Inc.*, 941 P.2d 1203 (Cal. 1997) ....................................................13

*Shackil v. Lederle Laboratories*, 561 A.2d 511 (N.J. 1989)..........................................................6

*Sindell v. Abbott Laboratories*, 607 P.2d 924 (Cal. 1980)............................................................6

*Zakshevsky v. City of New York*, 562 N.Y.S.2d 371, 149 Misc. 2d 52 (N. Y. Sup. Ct. 1990) ....................................................................................................................................12

## I.      INTRODUCTION

The law in New York and elsewhere is clear that the market share theory of liability alleged by the City of New York is available to a plaintiff only where it cannot prove who caused its injury.  The result is no different should the Court allow the City to switch horses and rely instead on what this Court has termed "the commingled product theory of market share liability." This Court should not permit the City to resort to any form of market share liability without first establishing that it has no way of recovering against the spillers or leakers who actually caused its alleged damages.

When this Court first articulated the commingled product theory of causation, it recognized that a plaintiff could resort to the theory only if it could not prove actual causation. But the Court later issued an opinion in the *Suffolk* case that altered this conclusion.  *In re MTBE Prods. Liab. Litig.,* 591 F. Supp. 2d 249, 267-68 (S.D.N.Y. 2008) ("2008 *Suffolk* Opinion").  In this opinion, the Court held that a plaintiff may pursue the commingled product theory in addition to traditional remedies.

The Court should revisit this holding.  New York law does not allow the City to pursue refiners of gasoline with MTBE and manufacturers of MTBE under alternative liability theories – whether market share or commingled product – without first establishing that it would be impossible or impractical to pursue claims against leaking service stations based upon proof of actual causation.

Alternatively, if the Court allows the City to use the commingled product theory when traditional remedies are available to it, then two issues require further clarification.

First, because defendants can be held only severally liable for the City's injuries under either the market share or the commingled product theories, the jury should be instructed that it must consider the fault of all leakers and spillers, including the City and non-parties, whose acts

or omissions contributed to the City's injury.  The jury also should be permitted to allocate fault on the verdict form to those leakers and spillers.  Otherwise, the several liability of each refiner or manufacturer under the commingled product theory could be disproportionate to the risk of harm it supposedly created, which contradicts the premise underlying the theory.

Second, under either the market share or the commingled product theory, the City bears the burden of proving the date when the risk of harm occurred.  This is a part of its basic *prima facia* case.  Failure to impose this burden on the City also would subject Defendants to liability merely by virtue of supplying gasoline at any time from 1979 to 2003, effectively destroying the right to exculpation.

## II.    BACKGROUND OF CAUSATION RULINGS IN MDL 1358

The Court has issued three decisions since 2005 that have created and modified new theories of alternative liability.  *See In re MTBE Prods. Liab. Litig.,* 591 F. Supp. 2d at 267-68; *In re MTBE Prods. Liab. Litig.,* 447 F. Supp. 2d 289, 301-305 (S.D.N.Y. 2006); *In re MTBE Prods. Liab. Litig.,* 379 F. Supp. 2d 348, 377-79 (S.D.N.Y. 2005).  Suggesting that traditional causation principles might preclude recovery against manufacturers and refiners not tied to a particular spill, the Court articulated an alternative theory of liability –the commingled product theory – to allow plaintiffs to overcome the burdens of traditional causation.  The Court initially placed strict conditions on the application of this alternative form of liability, consistent with limitations recognized generally for alternative theories of liability.

Like every opinion from other courts that have allowed some form of alternative liability, the Court initially – and properly – limited the availability of the commingled product theory to situations where a plaintiff was otherwise unable to obtain relief.  But where a plaintiff could identify a point source that led to the contamination of a well and had the ability to recover

against those responsible for such spills, it could not resort to alternative liability theories.  *See In re MTBE Prods. Liab. Litig.,* 379 F. Supp. 2d at 371; 447 F. Supp. 2d at 302 ("[I]f a traditional tort theory provides plaintiffs with a remedy that makes them whole, it is inappropriate to apply alternative theories of liability that do not require plaintiffs to identify the actual tortfeasor.").[1]

That clear ruling changed when the Court issued its 2008 *Suffolk* Opinion.  The Court departed from other cases on alternative liability and reversed its own prior position by holding that a plaintiff may seek damages from manufacturers based on the commingled product theory regardless of whether it can recover, or even has recovered, damages for the same injury from identified tortfeasors based on ordinary theories of liability:

> I have previously stated that alternative liability theories – particularly market share liability – should not be applied unless plaintiffs have no other remedy.  If a jury determines under traditional causation principles that an identified tortfeasor caused the contamination in a well, I held that plaintiffs cannot pursue other tortfeasors with respect to that well under alternative liability theories.  While this reasoning may apply to some claims (e.g., public or private nuisance), I now conclude that plaintiffs may pursue product liability or negligence claims against manufacturers for placing a dangerous product into the stream of commerce, ***regardless of whether*** plaintiffs can identify a retailer whose leaking tank spilled gasoline into a well's capture zone.

*In re MTBE Prods. Liab. Litig.,* 591 F. Supp. 2d at 275 (emphasis added).

---

[1]  The Court orally reaffirmed these rulings regarding the applicability of the an alternative theory of causation when a plaintiff can obtain recovery under traditional tort principles:

> That can't be true because we agreed long ago that if they can identify somebody, they are not entitled to use an alternative theory . . . .  I ruled.  That is called a ruling.  I said if you can identify a defendant, you don't get this option . . . .  [Y]ou can't do that if you can identify somebody.  So that is a ruling.

(July 26, 2007 Tr. at 82:18-83:8.) (status conference)

The Court's departure from its earlier ruling is contrary to New York law.  It also enables the most peculiar result that a plaintiff may pursue several liability against some defendants (manufacturers liable on the commingled product theory), plus joint and several liability against some of those same defendants (manufacturers who are also liable on traditional causation theories for releases of the product), plus joint and several liability against others (non-manufacturers who are liable on traditional theories for releases of the product), all for the same injury.  This is because the commingled product theory imposes several liability on those manufacturers and refiners who cannot be tied to any particular spill.  This is in contrast to traditional causation principles, which impose joint and several liability on spillers, retailers, and "entities higher in the chain of distribution" of a product, if defective, that can be traced to a particular spill.  *See id*. at 268, 277.

### III.     THE CITY'S BACK-AND-FORTH CAUSATION THEORIES

The City first relied on market share liability, then on commingled product theory, then back to market share, and now, it seems, back to commingled product.  It originally alleged market share liability, (Pl's Fourth Am. Compl. ¶¶ 64-67), and defined the relevant geographic market as the "market that supplied the New York Harbor, which include[d] part of Eastern New Jersey."  (*See* Letter from Steven J. German, Esq. to Stuart A. Raphael, Esq. (Dec. 13, 2006) (Ex. 1)).  The City thereafter abandoned its reliance on market share liability and adopted the version of the commingled product theory the Court articulated in the 2008 *Suffolk* Opinion.  (*See* Pl's Rev. Suppl. Resp. to Defs.' Joint Interrogs., # 1-7, 9, 12-13 (June 10, 2008) (Ex. 2)).  The City briefly reverted to market share.  (*See* Pl's Resp. to Defs' Contention Interrogs., # 3, 4, 6, (Dec. 19, 2008) (Ex. 3)).  Once a final deadline was imposed by the Court, the City settled on commingled product in addition to traditional causation theories.  Specifically, in its Court-

ordered response of April 13, 2009, the City says that it will rely on "traditional causation principles" to prove its case against specific, named defendants as to 9 of the 10 wells scheduled for trial in June.  But it also says it will rely on the "Commingled Product Theory of Causation (All Wells)" as to "[a]ll Defendants except Golf (sic) Oil Limited Partnership, Getty Properties Corp, and Getty Petroleum Marketing, Inc."  (Letter from Susan E. Amron, Esq.  to James A. Pardo Esq. (April 13, 2009) (Ex. 4)).

## IV.   SOURCES OF CONTAMINATION

On February 7, 2009, the City served the Expert Report of Donald K. Cohen and Marnie A. Bell and the Expert Report of David Terry.  Among other things, the Cohen and Bell report describes the opinions of Mr. Cohen and Ms. Bell as to sources of the MTBE currently in the wells that are scheduled to be tried in June.  The Terry report describes Mr. Terry's opinions as to sites that he says will contribute MTBE to the wells in the future.

The sources identified by the City's experts include gasoline stations owned, operated or branded by some of the defendants named in this case, as well as some station owners and operators not named as defendants.  According to the City's letter of April 13, it expects to have evidence of the sources of gasoline releases that allegedly caused or contributed to its injuries sufficient to pursue traditional claims against a total of 11 currently named defendants.  *Id*.  It has not named others whom its experts have identified as sources of contamination.

In addition, the City itself is one of the primary owners of leaking USTs in Queens. Defendants expect to introduce evidence at trial that the City failed to implement various UST upgrades and leak detection requirements mandated by state and federal regulations.  As a consequence, the City itself was responsible for releases of MTBE to groundwater at numerous City-owned sites throughout Queens.

Defs' Brief on Motion in Limine

# V.   ARGUMENT

## A.   The Court Should Not Permit the City to Pursue Alternative Liability Theories Unless the City First Establishes That It Has No Other Remedy.

As the Court has explained repeatedly, alternative theories of liability that would relax the product-identification requirement are warranted only when an innocent and highly-deserving plaintiff would otherwise be "left without a remedy."  *In re MTBE Prod. Liab. Litig.*, 379 F. Supp. 2d at 376; *In re MTBE Prod. Liab. Litig.*, 447 F. Supp. 2d at 298, 300 ("otherwise without recourse" and "without a remedy"); *In re MTBE Prod. Liab. Litig.*, 517 F. Supp. 2d 662, 668 (S.D.N.Y. 2007) (explaining need "to provide fair compensation to plaintiffs").  Indeed, it was the absence of traditional causation that prompted the New York Court of Appeals to adopt market share liability in the first place.  *See Hymowitz v. Eli Lilly & Co.,* 73 N.Y.2d 487, 503, 507, 539 N.E.2d 1069, 1073, 1076 (1989) (noting that DES caused "serious medical problems"; that "extant common-law doctrines, unmodified, provide no relief for the DES plaintiff unable to identify the manufacturer of the drug that injured her"; and that the Legislature revived barred claims in spite of the identification problem, thereby signaling the need for "a remedy for injuries caused by DES").

To invoke such theories, a plaintiff must be "shorn of *any* remedy."  *Sindell v. Abbott Labs,* 607 P.2d 924, 928 (Cal. 1980) (emphasis added); *Conley v. Boyle Drug Co.*, 570 So.2d 275, 286 (Fla. 1990) (market share liability inappropriate "[w]here a plaintiff can identify a specific tortfeasor as causing her injury and traditional remedies are thus available"); *Shackil v. Lederle Labs.*, 561 A.2d 511, 524-27, 529 (N.J. 1989) (market share liability unjustified for DPT vaccine manufacturers because national fund provided relief).

New York law provides that "a plaintiff's inability to identify the particular defendant whose tortious act or omission caused his or her injury" is a prerequisite for dispensing with

traditional causation requirements.  *Hamilton v. Accu-Tek*, 62 F. Supp. 2d 802, 839 (E.D.N.Y. 1999) (Weinstein, J.) ("With the exception of concerted action liability, [New York] collective liability theories function essentially as default rules triggered by the plaintiff's inability to identify the particular defendant whose tortious act or omission caused his or her injury."), *rev'd on other grounds*, 264 F.3d 21 (2d Cir. 2001); *see also Hamilton*, 62 F. Supp. 2d. at 950 (approving jury instruction that: "If it is proven (by any party) that a handgun manufactured by a particular manufacturer was used in the shooting of a particular plaintiff, you must assess 100% of the damages against that manufacturer.  If that manufacturer is not a defendant, each of the defendants would have to be assessed a zero percentage of the national market share for that gun."); *In re DES Cases*, 789 F. Supp. 552, 564 (E.D.N.Y. 1992) (Weinstein, J.) (noting that "one-hundred percent liability will still be assessed against a single manufacturer where it can be shown that its product was the only one taken by the plaintiff's mother."); *Hall v. E. I. Du Pont de Nemours & Co.*, 345 F. Supp. 353, 383 (E.D.N.Y. 1972) (refusing to apply enterprise liability where manufacturers of blasting caps that injured plaintiffs were known).

The commingled product theory shares the same theoretical underpinnings as traditional market share liability and is subject to the same limitations.  Both theories depart from common law tradition to allow recovery against a refiner or manufacturer without proof that its product actually caused the harm, even while recognizing that not every refiner or manufacturer could have caused the harm.  *In re MTBE Prods. Liab. Litig.,* 591 F. Supp. 2d at 269 ("Plaintiffs' argument that a reasonable jury could conclude, under traditional causation principles, that it was likely that *all* defendants' product was part of *every* gallon of gasoline that caused MTBE contamination, is not supported by the evidence in the record.").  Like market share, liability under the commingled product theory is not based on proof of individual causation.  *See also*

*Hymowitz*, 73 N.Y.2d at 594, 539 N.E.2d at 1074 ("In a products liability action, identification of the exact defendant whose product injured the plaintiff is, of course, generally required.").

As with market share, the remedy under the commingled product theory is proportional liability premised on the amount of the risk of harm a defendant has created in the relevant market. As with market share, the Court has held that this proportional liability under the commingled product theory is to be measured by each liable defendant's share of the market. *In re MTBE Prods. Liab. Litig*., 591 F. Supp. 2d at 274 n. 72 (citing *In re MTBE,* 447 F. Supp. 2d at 301) ("In fashioning the commingled product theory, I also stated that liability is several only and is apportioned by proof of a defendant's share of the market at the time of the injury."). As with market share, the commingled product theory should not apply where a defendant's share of the market does not "correspond to the amount of risk created by its alleged tortious conduct." *Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 241, 727 N.Y.S.2d 7, 19 (2001). Thus, *Hamilton* rejected market share liability for gun manufacturers because each "engaged in different marketing activities that allegedly contributed to the illegal handgun market in different ways and to different extents." *Id.* at 241, 727 N.Y.S.2d at 19. *Hamilton* explained that New York courts reject market share liability in cases where "differing degrees of risk were created . . . ." *Id.* at 242, 727 N.Y.S.2d at 20 (*citing, inter alia, Brenner*).

Market share liability – and by extension commingled product liability – is not appropriate when the conduct of third-parties materially increases the risk of injury. As explained in *Brenner v. Am. Cyanamid Co.*, 263 A.D.2d 165, 699 N.Y.S.2d 848, 853 (N.Y. App. Div. 4th Dep't 1999), third-party conduct was not a concern in DES cases because of the "exclusive control of DES manufacturers over any risk produced by their product. There was no change in the drug from the point of manufacture to the point of ingestion by the patient." In

other words, DES caused injury to plaintiffs when used as the manufacturer intended.  When a substantial share of the manufacturers responsible for the DES market were named as defendants, therefore, a court had before it the most likely tortfeasors, or at least enough prime suspects to shift to them the burden to prove that their product did not cause the injury.

The "prime suspect" theory fails when the conduct of third-parties determines if an injury occurs.  Thus, the *Brenner* court declined to apply market share liability to lead pigment cases in part because manufacturers lacked control over the landlords and homeowners who allowed walls coated with lead paint to deteriorate.  "Owners and landlords could control such risk by proper maintenance of their property."  699 N.Y.S.2d at 853; Restatement (Third) of Torts, *supra*, § 15 cmt. c (market share liability premised on "absence of other medical or environmental factors that could have caused or materially contributed to the harm").

Where leakers and spillers who caused contamination of a well can be identified, such as in this case – according to the City's own experts – it is *their* acts and omissions that ultimately caused the harm.  Any given defendant's share of the market does not correspond to the risk of harm and cannot be a fair and appropriate proxy for risk.  That makes inappropriate the application of either market share or commingled product theories.

It would be both unjust and legally erroneous to relieve a plaintiff of the burden of proving traditional causation without imposing conditions of recovery that New York law uniformly applies in cases of alternative causation.  Whether the City relies on market share or commingled product, the result should be the same.  Even if the creation of the commingled product theory were consistent with New York law, relaxing the predicate requirements for resorting to market-based fault allocation – in other words, permitting a plaintiff to recover under the commingled product theory even where it can obtain complete relief under traditional

principles – would distort New York law.  *See Johnston v. Bankers Standard Ins. Co.*, 877 F.2d 1146, 1153 (2d Cir. 1989) ("a federal court sitting in diversity [should] construe and apply state law as [it] believe[s] the state's highest court would, . . . not to adopt innovative theories that may distort established state law.") (citations omitted).

> **B.      In the Alternative, the Court Should Clarify Two Important Aspects of a Trial Involving Any Sort of Market Share.**

As explained above, the Court should not permit the City to pursue a theory of alternative liability based on market share without first showing the absence of a remedy against known spillers or leakers.  But if the Court holds otherwise, then it should clarify two conditions for a liability allocation based upon market share.  First, the jury should be instructed to apportion liability to any spillers or leakers who actually caused the City's alleged harm, whether or not those entities are parties to the litigation.  Second, the City must prove the dates of each alleged MTBE release.

> **1.      The Court Should Instruct the Jury to Apportion Liability to Spillers Who Caused the Harm to Preserve Defendants' Right to Avoid Joint Liability Under a Market-Based Allocation.**

If the Court denies Moving Defendants' motion to disallow the use of market share or commingled product where a traditional remedy is available, it should instruct the jury to apportion fault to both party and non-party station owners and operators whose acts or omissions caused the releases that have affected the City's wells.  Otherwise, refiners and manufacturers may be subject to liability for more than their several shares.

The Court has stated consistently that liability is several – not joint and several – under the commingled product theory.  Damages are to be assessed severally against each defendant based on its share of the relevant market at the time of the injury.  *In re MTBE Prods. Liab. Litig.*, 591 F. Supp. 2d at 274 n. 72; 379 F. Supp. 2d at 378.  The Court ruled that liability must

be several to prevent "disproportionate hardship to defendants" and because it would be unfair to

hold a defendant jointly and severally liable for an injury it may have played no part in causing.

*See In re MTBE Prods. Liab. Litig.,* 447 F. Supp. 2d at 301; *In re MTBE Prods. Liab. Litig.,* 379

F. Supp. 2d at 378.  As the Court recognized in 2006, it would be "fundamentally unfair" to

allow plaintiffs to invoke joint and several liability without proof that each liable defendant

actually caused a substantial portion of the alleged damages:  "Plaintiffs want the benefit of

dispensing with product identification . . . but also want to take advantage of joint and several

liability . . . .  This would be fundamentally unfair."  447 F. Supp. at 303.

The purpose of several liability is to avoid this fundamental unfairness by holding a

tortfeasor liable only for its individual share of "fault."  *See* Restatement (Third) of Torts:

Apportionment of Liability § E19 cmt. i (2000) ("The principal purpose of several liability is to

limit the liability of any tortfeasor to that tortfeasor's comparative share of the plaintiff's

damages." ).  Indeed, to ensure that the severally liable defendant does not bear more than its fair

share, the Restatement (Third) of Torts recognizes that the jury may assign shares of fault not

only to other parties, but also to nonparties.  It notes:

> When one or more defendants may be held severally liable, the fact
> finder may assign comparative responsibility to nonparties . . . .
> Those persons do not have to be joined in the case as parties to
> have responsibility assigned to them.

*Id.,* § D19 cmt. e.

New York law approves this fault-allocation procedure.  For example, in personal injury

cases, a jointly liable defendant who is less than 50% at fault can seek to limit its liability for

noneconomic damages pursuant to CPLR 1601(1).  New York's Pattern Jury Instructions for

such cases specifically direct the jury to consider the fault of nonparties.  *See* New York PJI

2:275.1 (3d. ed. 2008) ("There is also a claim by the defendants that AB (a non-party) was at

fault . . . . You must decide what part, if any, of the total fault . . . AB should bear. "); *see also Zakshevsky v. City of New York,* 562 N.Y.S.2d 371, 373, 149 Misc. 2d 52, 55 (N.Y. Sup. Ct. 1990) (holding that City correctly sought addition of nonparty tortfeasor to the verdict form in slip-and-fall case where the City's liability for noneconomic damages under CPLR 1601 was limited to its equitable share).

Indeed, consideration of the fault of nonparties by a jury in allocating damages generally is neither novel nor controversial under New York practice.  The Court has previously recognized that "[s]ubtraction of the share of a non-party from fault allocated to others is traditional in New York and elsewhere." *Gray v. Cleaning Sys. & Suppliers*, 834 F. Supp. 123, 127 (S.D.N.Y. 1993).  New York law so requires because "principles allowing apportionment among tortfeasors reflect the important policy that responsibility for damages to an injured person should be borne by those parties responsible for the injury, in proportion to their respective degrees of fault."  *Garret v. Holiday Inns, Inc*., 58 N.Y.2d 253, 258-59, 447 N.E.2d 717, 720 (1983).

Importantly, New York courts have recognized that the exclusion of wrongdoers from a jury's apportionment of responsibility impermissibly increases a defendant's share of damages beyond its actual fault.  *See Gannon Personnel Agency v. City of New York*, 394 N.Y.S.2d 5, 7-8, 57 A.D.2d 538, 540 (N.Y. App. Div. 1st Dep't 1977) (holding that the trial court's refusal to allow the jury to allocate fault to a judgment-proof wrongdoer likely inflated the proportion of responsibility assigned to the remaining defendants).  Judge Weinstein recognized that  "*Gannon* demonstrates the benefit of instructing the jury to apportion responsibility among *all* possible tortfeasors" and that "all possible tortfeasors should be included on the verdict sheets" because "[t]his accords with the practice of both state and federal courts in New York."  *In re E. & S.*

*Dists. Asbestos Litig.*, 772 F. Supp. 1380, 1399-1400 (E.D.N.Y. 1991) (emphasis added), *aff'd in part, rev'd in part sub nom., In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831 (2d Cir. 1992).

Indeed, the Second Circuit noted in *Brooklyn Navy Yard* that Judge Weinstein's inclusion on "the verdict sheets [of] all possible asbestos-supplying tortfeasors [was] in keeping with the evidence introduced and with New York practice." 971 F.2d at 844-45 (affirming the trial court's reallocation of bankrupts and nonparties' shares of fault to the non-settling, joint and severally liable defendants). As the Second Circuit noted, Judge Weinstein "gave the parties 'wide latitude to introduce evidence to establish who substantially contributed to the alleged injuries,' allowing the defendants 'to argue that the damages were caused at least in part, if not entirely, by other manufacturers not present at trial.'" *Id.* (quoting *E. & S. Dists. Asbestos Litig.*, 772 F. Supp. 1380, 1399 (E.D.N.Y. 1991)).

When an alternative theory of liability dispenses with proof of actual causation, a court should be especially concerned that the named parties are held liable only in proportion to their respective degrees of fault. *See Rutherford v. Owens Illinois, Inc.*, 941 P.2d 1203, 1221 (Cal. 1997) ("[T]he probability that any one defendant is responsible for plaintiff's injury decreases with an increase in the number of possible tortfeasors."). Consideration of nonparty responsibility is in keeping with the Court's finding that several liability is necessary under the commingled product theory to safeguard against the imposition of a disproportionate hardship on any defendant. *See In re MTBE Prods. Liab. Litig.,* 447 F. Supp. 2d at 303; *In re MTBE Prods. Liab. Litig.,* 379 F. Supp. 2d at 378. Prohibiting the jury from apportioning fault to nonparties whose acts, omissions or products actually caused the harm would run counter to this goal because it would artificially inflate the fault assessed to defendants held liable under the

commingled product theory.  *See In re MTBE,* 517 F. Supp. 2d at 671 ("[Market share] liability is several only, and should not be inflated when all participants in the market are not before the court in a particular case.") (quoting *Hymowitz,* 73 N.Y.2d at 512-13, 539 N.E.2d at 1079).  *See also* pages 7-9, *supra*.

In addition, to the extent evidence may establish that the City itself caused or contributed to its own injuries through releases of gasoline with MTBE from its own facilities, the verdict form should enable the jury to reduce defendants' several liability by apportioning liability to the City for its own comparative fault.  *See* N.Y. CPLR § 1411.

Moving Defendants therefore ask the Court to confirm that if the City is allowed to pursue both traditional causation and a market-based theory of causation in the same trial, then the jury will be instructed to allocate a share of responsibility to all companies and individuals – the City, defendants, and nonparties – that are potentially liable under traditional theories of liability.  This includes those it finds are responsible for the release of gasoline with MTBE into groundwater that caused or contributed to the City's alleged injury.

## 2.    The City Must Prove the Dates of Each Release.

Again assuming that the Court permits the City to pursue a commingled product theory even in the face of identifiable spillers and leakers, the Court should confirm that the City bears the initial burden of proving when the injury occurred.  This is required both so that the jury can determine which companies are in the market and their share at the time and to allow defendants meaningfully to exercise their right to exculpate.  *In re MTBE Prods. Liab. Litig.,* 591 F. Supp. 2d at 274, n.2.  ("In fashioning the commingled product theory, I also stated that liability is several only and is apportioned by proof of a defendant's share of the market *at the time of injury*")(emphasis added); *id.* at 275 (the "time that the risk of harm – the contamination of

groundwater – occurred is an issue for fact for the jury" and evaluating plaintiff's evidence on this issue "in each well."); *id.* at 279 ("The burden lies with the defendant to exculpate itself *once plaintiffs have shown* that the product was in a completely commingled or blended state *at the time* and place that the harm or risk occurred.") (emphasis added); *id.*at 274 (defendants can exculpate themselves "by proving its product was not present *at the relevant time* or place.") (emphasis added).

Proving when the release that affected a given well occurred, or at least providing a reasonable range for when injury occurred, is a part of the City's *prima facia* case in invoking the commingled product theory. This Court held as much in *Suffolk*:

> [w]hen *a plaintiff can prove* that certain gaseous or liquid products (*e.g.,* gasoline, liquid propane, alcohol) of many refiners and manufacturers were present in a completely commingled or blended state *at the time and place* that the risk of harm occurred, and the commingled product caused plaintiff's injury, each refiner or manufacturer is deemed to have caused the harm.

*In re MTBE Prods. Liab. Litig.,* 591 F. Supp. 2d at 274 (quoting *In re MTBE,*, 447 F. Supp at 301) (emphasis added). The Court made clear in *Suffolk* that, to invoke the commingled product theory, the plaintiff was required to prove: (1) that gasoline was commingled; (2) at the time of injury; (3) at the place of injury; and (4) that the commingled product caused its injury. Placing the burden on the City comports with traditional principles that the plaintiff has the burden of proving the elements of its claims. *Id.* at 266 ("Plaintiffs usually bear the burden of proving causation, like every other element of a prima facie case, by a preponderance of the evidence. In other words, plaintiffs must show that it is more likely than not that the defendant's actions caused their injury.")

In addition, the City's obligation to prove when the risk of harm arose is central to defendants' right to exculpate. This is consistent with the ruling in *Hymowitz*, where it was the

plaintiff's burden in the first instance to present evidence regarding the period during which she was exposed to DES.  *See In re DES Market Share Litig.*, 79 N.Y.2d 299, 306, 591 N.E.2d 226, 230 (1992) (stating that "*Hymowitz* simply relaxed the DES plaintiffs' burden of proof on that portion of the causation requirement which would have obligated the plaintiffs to establish the identity of the manufacturer of the drug their mothers ingested").  Although the time span was discrete –the mother's pregnancy – and easily identifiable, it was plaintiff's burden nonetheless. *See Hymowitz*, 73 N.Y.2d at 507, 523, 539 N.E.2d at 1075, 1084 (relaxing element of proximate cause "for the DES plaintiffs who cannot identify the particular manufacturer of the DES *ingested by their mothers*") (emphasis added).  Only after the plaintiff established this timing could the defendant effectively attempt to offer evidence of exculpation that it was not in the relevant market.

This Court has reasoned that if "contamination of a particular well occurred <u>prior to</u> the date a defendant entered the market, then the defendant may not be held liable as a matter of law." *In re MTBE Prods. Liab. Litig.*, 591 F. Supp. 2d at 279 (emphasis added).  Timing is thus crucial.  And if the City cannot show timing, a gasoline supplier – particularly one that participated in the market only briefly – has no reasonable way to exculpate itself.  To give meaningful effect to exculpation, the City must bear the burden of proving such dates before any defendant assumes the burden of exculpation.  Otherwise, the only defendants that could exculpate themselves are the ones that never participated in the relevant market at all.  The City must therefore provide proof of a discrete period, during the alleged years of MTBE usage in New York from 1979 to 2003, during which the harm or a risk of harm occurred.

The City acknowledges in its letter of April 13 that a defendant can be held liable only "after the date that that defendant began supplying MTBE or MTBE-gasoline into the

distribution system that supplied the RGA." (Ex. 4, at Ex. A, p. 4). That much certainly is true. But the City seems to suggest that a defendant can be held liable if it was in the market at the time the MTBE was detected, not at the time that the release occurred that gave rise to a later detection. And it further seems to suggest that a defendant can be held liable if it was in the market at any time after the detection, regardless whether the release continued or had ceased (through removal of underground tanks, for example) when the defendant was in the market. (See Ex. 4, Ex. A, pp. 3 - 4).

The evidence at trial will show that companies which made MTBE or gasoline containing MTBE for the New York Harbor market that supplied Queens changed significantly over time. Unless the City can prove the dates of release for the wells scheduled to be tried, it cannot make its *prima facia* case; defendants cannot exculpate themselves; and it will be impossible to establish each defendant's share of the market. All are critical to the application of the Court's commingled product theory of causation.

## VI.    CONCLUSION

The Court should not permit the City of New York to pursue alternative causation when traditional theories of liability are available to it.  Whether the City ultimately relies on market share or on commingled product liability, it should be allowed to pursue such a theory of alternative liability only when the absence of a spiller or leaker forecloses traditional theories of liability.

If the Court disagrees, the Court should clarify that:  (1) the jury will be permitted to allocate fault of to leakers and spillers – whether parties or nonparties – whose acts, omissions or products contributed to the harm; and (2) that the City bears the initial burden of proving the time of the relevant gasoline releases.

Dated:  April, 27, 2009
      New York, NY

Respectfully submitted,


By    /s/  George P. Sibley, III
               Counsel

Joseph C. Kearfott
George P. Sibley, III
William P. Childress
HUNTON & WILLIAMS LLP
951 East Byrd Street
Richmond, VA  23219
(804) 788-8200
(804) 788-8218  (fax)

Stuart A. Raphael
HUNTON & WILLIAMS LLP
1751 Pinnacle Drive, Ste. 1700
McLean, VA  22102
(703) 714-7400
(703) 918-4015  (fax)

Counsel for Flint Hills Resources, LP
On behalf of Defendants listed on
Appendix A

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 27th, 2009, a true and correct copy of this **DEFENDANTS'**

**MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE REGARDING**

**APPLICATION OF THE COMMINGLED PRODUCT THEORY, CONSIDERATION**

**OF FAULT OF NONPARTIES BY JURY, AND PROOF OF DATE OF HARM** was served

via email on liaison counsel and via LexisNexis File & Serve to all other counsel of record.  A

copy was provided to the Clerk, Seth Ard, via email.


        /s/   George P. Sibley, III

Defs' Brief on Motion in Limine

**APPENDIX A**

This Motion in Limine is submitted on behalf of the following defendants:

Atlantic Richfield Company
BP Products North America Inc.
Chevron Environmental Corp.
Chevron U.S.A. Inc.
CITGO Petroleum Corporation
CITGO Refining and Chemicals Company L.P.
Coastal Eagle Point Oil Company
ConocoPhillips Company
Crown Central LLC
El Paso Merchant Energy-Petroleum Company
Equilon Enterprises LLC
Equistar Chemicals, LP
ExxonMobil Corporation
ExxonMobil Oil Corporation
Flint Hills Resources, LP
Getty Petroleum Marketing Inc.
Getty Properties Corp.
Hess Corporation
Lyondell Chemical Company
Mobil Corporation
Motiva Enterprises LLC
The Premcor Refining Group Inc.
Shell Oil Company
Shell Oil Products Company LLC (d/b/a/ Shell Oil Products Company)
Shell Petroleum, Inc.
Shell Trading (US) Company
Sunoco, Inc.
Sunoco, Inc. (R&M)
Texaco Inc.
Texaco Refining and Marketing (East) Inc.
TOTAL Petrochemicals USA, Inc.
TMR Company (f/k/a Texaco Refining and Marketing Inc.)
Ultramar Energy Inc.
Ultramar Ltd.
Unocal Corporation
Union Oil Company of California
Valero Energy Corporation
Valero Marketing and Supply Company
Valero Refining and Marketing Company

Defs' Brief on Motion in Limine