**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------- x

In Re: Methyl Tertiary Butyl Ether ("MTBE")        Master File No. 1:00-1898
Products Liability Litigation                      MDL 1358 (SAS)
                                                   M21-88
-------------------------------------------------------------------- x   ECF Case

**This document relates to the following case:**

*City of New York v. Amerada Hess Corp., et al.*
Case No. 04 Civ. 3417

-------------------------------------------------------------------- x

**PLAINTIFF CITY OF NEW YORK'S OPPOSITION TO
DEFENDANTS' MOTION TO BAR PUNITIVE
DAMAGES BASED ON THE MARKET SHARE AND
COMMINGLED PRODUCT THEORIES**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ......................................................................................... ii

**INTRODUCTION** ...................................................................................................... 1

**ARGUMENT** .............................................................................................................. 3

   **I.**      **The City Need Not Choose – And Has Not Chosen – Between Theories Of Causation in its Complaint** ........................................................... 3

  **II.**     **Punitive Damages Are Permitted Under the Commingled Product Theory, Even if Not the Market Share Theory** ............................................... 5

      A.    Under the Commingled Product Theory, Many or All Defendants Actually Caused the Harm, Not Just One ....................................................... 5

      B.    Allowing Punitive Damages Under the Commingled Product Theory Will Not Magnify Inequities or Inaccuracies ................................... 9

      C.    Allowing Punitive Damages Under the Commingled Product Theory Will Not Create an Incentive to Ignore Other Liable Parties .......... 15

 **III.**    **Constitutional Considerations Do Not Bar Punitive Damages Under the Commingled Product Theory** .................................................................. 16

 **IV.**    **Defendants' Motion is a Motion in Limine, Not a Summary Judgment Motion.** ........................................................................................................... 19

**CONCLUSION** ........................................................................................................ 22

# TABLE OF AUTHORITIES

## Federal Cases

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................................................. 19

*BMW v. Gore*,
517 U.S. 559 (1996) ................................................................................................. 17

*Fassbinder v. Pennsylvania Railroad Company*,
322 F.2d 859 (3d Cir. 1963) ...................................................................................... 4

*In re Agent Orange Prod. Liab. Litig.*,
597 F.Supp. 740 (E.D.N.Y. 1984) ........................................................................... 13

*In re MTBE*,
447 F.Supp.2d 289 (S.D.N.Y. 2006) ................................................................. passim

*In re MTBE*,
517 F.Supp.2d 662 (S.D.N.Y. 2007) ................................................................. passim

*In re MTBE*,
591 F.Supp.2d 259 (S.D.N.Y. 2008) ................................................................. passim

*Keywell Corp. v. Piper & Marbury LLP*,
51 Fed.Appx. 337 (2d Cir. 2002) ............................................................................ 21

*Luce v. United States*,
469 U.S. 38 (1984) ................................................................................................... 19

*On Davis v. The Gap, Inc.*,
246 F.3d 152 (2d Cir. 2001) .................................................................................... 21

*Philip Morris USA v. Williams*,
549 U.S. 346 (2007) ........................................................................................... 16, 17

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
538 U.S. 408 (2003) ................................................................................................. 18

*West v. Goodyear Tire & Rubber Co.*,
167 F.3d 776 (2d. Cir 1999) .................................................................................... 21

*West v. Goodyear Tire & Rubber Co.*,
973 F.Supp.385 (S.D.N.Y. 1997) ............................................................................ 21

**State Cases**

*Brown v. Superior Ct.,*
    44 Cal.3d 1049 (1988) ................................................................... 14

*Collins v. Eli Lilly & Co.,*
    116 Wis.2d 166, 342 N.W.2d 37, *cert. den.* 469 U.S. 826 (1984)............... 6, 10, 15, 16

*Home Ins. Co. v. American Home Prods. Corp.,*
    75 N.Y.2d 196, 551 N.Y.S.3d 481 (1990) .................................... 20

*Hymowitz v. Eli Lilly & Co.,*
    73 N.Y.2d 487, 541 N.Y.S.2d 941 (1989) .......................................... *passim*

*Magallanes v. Superior Ct.,*
    167 Cal.App.3d 878 (1985) ........................................................ 6

*Matott v. Ward,*
    48 N.Y.2d 455, 423 N.Y.S.2d 645 (1979) .................................... 14

*Randi A.J. v. Long Island Surgi-Center,*
    842 N.Y.S.2d 558 (2007)........................................................... 20

*Ross v. Louise Wise Services, Inc.,*
    8 N.Y.3d 478, 836 N.Y.S.2d 509 (2007) .................................... 20

*Sindell v. Abbott Labs,*
    26 Cal.3d 588, *cert. den.,* 499 U.S. 912 (1980) ........................ 6, 10

*Summers v. Tice,*
    33 Cal.3d 80 (1948) ............................................................... 6, 7

*Walker v. Sheldon,*
    10 N.Y.2d 401, 223 N.Y.S.2d 488 (1961) .................................. 20

**Federal Rules**

Fed.R.Civ.P. 56(c) ...................................................................... 3, 18

**Local Rules**

Local Civil Rule 56.1 .................................................................. 3, 18

**Other Authorities**

N.Y. Pattern Jury Instr. – Civil 2:278 ................................................................................ 19

## INTRODUCTION

New York law does not preclude an award of punitive damages where Plaintiff City of New York ("the City") seeks to hold Defendants liable under the commingled product theory.  Punitive damages are permissible because the commingled product theory – unlike the market share theory – does not, as a matter of course, impose liability on innocent defendants.[1]  In the fact patterns described by Defendants (and by this Court, in holding punitive damages unavailable in conjunction with a plaintiff's reliance on the market share theory), a market-share approach was used to apportion damages among many defendants, only *one* of whom had caused the harm.  *See In re MTBE,* 517 F.Supp.2d 662, 670-671 (S.D.N.Y. 2007); and cases cited in Defendants' Memorandum at 8 n. 5.  Imposing punitive damages on all of these defendants, the majority of whom were acknowledged to be innocent, has therefore been considered unfair under the *unmodified* market share theory.  Where, in contrast, the defendants held liable are those who *actually* contributed to a harmful product, there is no inherent unfairness in imposing punitive damages.

Defendants' Motion to Bar Punitive Damages Based on the Market Share and Commingled Product Theories ("Defs' Motion") elides the fundamental difference between the commingled product theory and the market share theory.  The commingled product theory was developed, in the words of this Court, because "market share liability may not apply to cases where the product is *commingled into a joint product* – making it

---

[1] In this brief, the City does not concede that punitive damages are always inappropriate under the market share theory.  Instead, the City seeks to distinguish the commingled product theory from the market share theory, inasmuch as the equitable considerations on which this Court based its ruling in *In re MTBE*, 517 F.Supp.2d 662 (2007) (barring punitive damages where a plaintiff relies on the market share theory), are not of concern under the commingled product theory.

difficult to apportion liability based on market share – and the product does not have a long latency…." *In re MTBE*, 447 F.Supp.2d 289, 301 (S.D.N.Y. 2006), emphasis added. New York courts have adopted the market share theory, on the other hand, "when the product in question is fungible, and as a result, the plaintiff cannot identify *which defendant* proximately caused her harm." *Id.* at 299, emphasis added. Under the commingled product theory, *all* of the commingling defendants are "deemed to have caused the harm," whereas under market share, the harmful product was "manufactured by a single defendant that cannot be identified. *Id.* at 301; *In re MTBE,* 591 F.Supp.2d 259, 267 (S.D.N.Y. 2008). Defendants' equitable concerns therefore vanish under the commingled product theory, as discussed below.

The line of U.S. Supreme Court cases cited by Defendants do not support Defendants' argument that due process concerns preclude an award of punitive damages under the commingled product theory. Those cases establish only that the amount of punitive damages cannot exceed the amount of compensatory damages by an unreasonable ratio, and that punitive damages must be related to the conduct that harmed the plaintiff, and not on acts performed lawfully elsewhere or on conduct that harmed other parties. Furthermore, the commingled product theory does not, as Defendants claim, render a defendant liable whose conduct or products did not cause the harm (Memorandum in Support of Defendants' Motion to Bar Punitive Damages ("Defs' Memo") at 4); rather, under the commingled product theory, defendants *are* "deemed to have caused the harm." *In re MTBE,* 447 F.Supp.2d at 301.

Finally, in response to Defendants' claim that they are moving in the alternative for summary judgment on the City's claims for punitive damages, the City notes that

Defendants' Motion is structured as a motion *in limine*, not as a motion for summary judgment.  It does not attempt to "show that there is no genuine issue of material fact" (Fed.R.Civ.P. 56(c)), or describe "material facts as to which the moving party contends there is no genuine issue to be tried" (Local Civil Rule 56.1).  Instead, it presents a purely legal argument that as a matter of law – not fact – the City should not be entitled to punitive damages if it pursues the commingled product theory.  The City, therefore, responds to Defendants' Motion as a motion *in limine*, not as a motion for summary judgment.

Thus, Defendants' motion *in limine* relies on a false parallel between the commingled product theory and the market share theory, such that punitive damages would be unfair under the commingled product theory for the same reasons they may be unfair under the market share theory.  The commingled product theory eliminates those inequities, and for this reason, among others as discussed below, the City should be permitted to present evidence and argument at trial supporting an award of punitive damages.

## ARGUMENT

### I.   The City Need Not Choose – And Has Not Chosen – Between Theories Of Causation in its Complaint

At the outset, Defendants' suggestion that the City's Complaint must explicitly reference the commingled product theory (*see* Defs' Memo at 8) is specious.  As this Court explained in *In re MTBE*, 517 F.Supp.2d 662, 668-670 (S.D.N.Y. 2007), "[m]arket share liability is an evidentiary tool that allows a plaintiff to prove causation, which is an element of a claim." *Id.* at 668.  It "serves the same function as the doctrine of *res ipsa*

*loquitur,* or the *Strickland* doctrine that presumes counsel's conduct harmed a defendant, or any number of areas of law where parties may satisfy a particular element of a claim by proving other facts. *Id.* at 669. Commingled product liability is an analogous "evidentiary tool" that, like *res ipsa loquitur,* need not be pleaded explicitly in a complaint. *See Fassbinder v. Pennsylvania Railroad Company*, 322 F.2d 859, 863 (3d Cir. 1963) ("like any other rule of evidence [*res ipsa loquitur*] is brought into play where the situation presented makes it applicable. It does not have to be pleaded in the complaint or 'noticed' by specific designation to the adverse party at pre-trial or at trial, since it is neither a cause of action nor a ground for recovery, nor an 'issue.'")

At any rate, the City has hardly "eschewed" the commingled product theory. As Defendants point out in the Rule 56.1 Statement filed concurrently with their Motion,[2] the City's supplemental responses stated that "[a]t this time, the City seeks damages for all wells at issue . . . based on the commingled product theory." (City of NY's Revised Supplemental Responses and Objections to Defendants' First Joint Interrogatory Nos. 1-7, 9, 12-13 (June 10, 2008), attached as Exhibit B to the Declaration of Richard Wallace with Exhibits In Support of Defendants' Motion.) If anything, the City has "eschewed" the market share theory, as it stated that "the City is no longer seeking damages based on the theory of market share liability" in light of the Court's opinion in *In re MTBE,* 447 F.Supp.2d 289. *Id.* Furthermore, Defendants have already obtained a chart containing the City's theories of causation for the focus wells and the defendants which the City will establish at trial are liable under each theory, and can no longer claim ignorance of the

---

[2] Because, as discussed in detail in Section IV, *infra*, Defendants' Motion is a motion *in limine*, not a motion for summary judgment, the City considers Defendants' Rule 56.1 Statement an improper submission.

City's theories.  (*See* Letter from Susan E. Amron to James A. Pardo, re: *City of New York v. Amerada Hess, et al.*, 04 CV 3417 (SDNY); *In re MTBE Products Liability Litigation*, MDL 1358 (April 13, 2009), attached as Exhibit 1 to the Declaration of Marnie Riddle with Exhibits in Opposition to Defendants' Motion to Bar Punitive Damages Based on the Market Share and Commingled Product Theories ("Declaration of Marnie Riddle").)

> **II.     Punitive Damages Are Permitted Under the Commingled Product Theory, Even if Not the Market Share Theory**

The commingled product theory differs from the market share theory in at least one fundamental respect:  of the defendants held liable under the commingled product theory, all defendants, not just a single defendant, blended their products into the product that caused harm, and therefore all defendants, not just a single defendant, proximately caused the harm.  Punitive damages are not allowed under the market share theory because they would be imposed unfairly on many defendants who did not cause the plaintiff's actual harm as well as the single defendant who did.  Given that under the commingled product theory, all of the defendants held liable are deemed to have actually caused the harm, this rationale for excluding punitive damages does not apply.

> A.     Under the Commingled Product Theory, Many or All Defendants Actually Caused the Harm, Not Just One

Where a plaintiff's injury has been caused by a product that cannot be traced back to a single manufacturer because many manufacturers have "blended" or "commingled" their products into a single, unitary product, the facts of the case may not "precisely fit the parameters" of the unmodified market share theory.  *In re MTBE,* 447 F.Supp.2d at 301.  In the cases cited by Defendants, the market share theory has typically been applied

where a plaintiff's injury was caused by a product made by a single manufacturer who could not be conclusively identified following discovery.  *See, e.g., Sindell v. Abbott Labs*, 26 Cal.3d 588, 595, *cert. den.,* 499 U.S. 912 (1980) (plaintiffs were harmed by pills that were each made by one manufacturer of diethylstilbestrol ("DES")); *Hymowitz v. Eli Lilly & Co.,* 73 N.Y.2d 487 (1989) (same); *Collins v. Eli Lilly & Co.,* 116 Wis.2d 166, 342 N.W.2d 37, 54, *cert. den.* 469 U.S. 826 (1984) (same); *Magallanes v. Superior Ct.,* 167 Cal.App.3d 878 (1985) (same).

The commingled product theory differs from market share liability in at least one critical respect, bearing major implications for defendants' exposure to punitive damages. As this Court has explained the difference,

> When holding all manufacturers of the generic pill liable under market share, courts recognized that all but one of them did *not* cause the plaintiff's injury.  Here, by contrast, because the gasoline that has contaminated plaintiffs' wells was undeniably the commingled product of numerous manufacturers, there is a good chance that many of the defendants held liable, if not the majority, actually *did* cause plaintiffs' injury.

*In re MTBE,* 591 F.Supp.2d at 275, emphasis in original.  This distinction separates the commingled product theory from alternative liability theories used with *Summers v. Tice*-like fact patterns, in which "there is uncertainty as to which of the defendants caused the injury," but only one of the defendants actually did cause it.  *In re MTBE,* 591 F.Supp.2d at 267, n. 31, citing *Summers v. Tice*, 33 Cal.3d 80 (1948).   In *Summers*, the plaintiff and two defendants were hunting; the two defendants shot simultaneously at the same bird, and plaintiff was struck *once*.  It was impossible to determine which hunter had fired the single bullet, but it was clear that only one of them directly caused the injury.   Both defendants were held liable, however, in order to allow the clearly-injured plaintiff to recover where linking causation to one defendant and not the other was impossible.

*Summers v. Tice, supra,* at 86.   Here, under the commingled product theory, it is *not* the case that only one Defendant, out of several, caused the injury.   Instead, "because the product alleged to have caused the harm is undeniably a *blended* product manufactured by multiple defendants, rather than a product manufactured by a single defendant that cannot be identified," *all* of those multiple defendants in fact caused the injury, and *all* may be held liable without ensnaring any innocent defendants.   *In re MTBE,* 591 F.Supp.2d at 267.

The problem apparent in both *Summers v. Tice* and the market share context – i.e., that only one defendant actually caused the injury, but additional, undoubtedly innocent defendants are held liable anyway – disappears completely under the commingled product theory, because "a reasonable jury could conclude, based on the evidence in the record, that *all* defendants contributed to the commingled gasoline that caused contamination in plaintiffs' wells." *In re MTBE,* 591 F.Supp.2d at 268, emphasis added. In fact, the City's expert has already testified that "for the Defendants that supplied MTBE gasoline into the gasoline distribution system that supplied the RGA, over time it is a virtual certainty that their MTBE-gasoline is present in any release that occurred while they were doing that supplying."  (Expert Rebuttal Report of Bruce F. Burke, February 6, 2009, at p.2, attached as Exhibit 2 to the Declaration of Marnie Riddle.) Where the evidence shows that *all* defendants contributed to the injury, additional evidence may also show that any or all of those defendants engaged in conduct that would support an award of punitive damages.

Defendants argue that "fungible" and "commingled" – and by extension, the market share theory and the commingled product theory – should have no practical

distinction because, for example, fungible DES pills "were essentially commingled on reaching a given pharmacy" and, insofar as a plaintiff happened to take more than one DES pill originating with different manufacturers, the drugs "became commingled within the plaintiffs."[3]  (Defs' Memo at 15.)  But as this Court has explained, in the DES context, "each pill alleged to have caused plaintiffs' injuries was manufactured by only one defendant."  *In re MTBE,* 591 F.Supp.2d at 267, n. 34.  In this case, "the product alleged to have caused the harm is undeniably a *blended* product manufactured by multiple defendants, rather than a product manufactured by a single defendant that cannot be identified."  *Id.* at 267.

That "a given DES plaintiff could have taken pills of multiple manufacturers" (Defs' Memo at 15) has roughly the same import as the fact that a given well could in theory be impacted by multiple gasoline spills or underground MTBE plumes.  On the manufacturers' end, the distinction between market share and commingled product still holds.  The DES manufacturers each made distinct, fungible, interchangeable products that were mixed together, if at all, only under circumstances beyond those manufacturers' control and without their knowledge.  The gasoline manufacturers and refiners in this case "mix[ed] their products together for transportation in a common pipeline system." *In re MTBE,* 591 F.Supp.2d at 264.  Any one DES pill was made by just one manufacturer who cannot be identified; any one gasoline spill or leak undoubtedly contained product manufactured by many, if not all, Defendants in this case.

---

[3] Defendants' argument can also be read as an argument that the *Hymowitz* court should have applied the commingled product theory.  But in that case it might not have ruled out punitive damages, for all the reasons this Court explained in *In re MTBE,* 591 F.Supp.2d at 267-268.

In light of the foregoing, the critical difference between the market share theory and the commingled product theory is plainly the same difference that permits punitive damages to be recovered when a plaintiff relies on the commingled product theory. As explained below, neither of the two rationales stated by Defendants for precluding punitive damages under the market share theory applies under the commingled product theory.

B.   Allowing Punitive Damages Under the Commingled Product
     Theory Will Not Magnify Inequities or Inaccuracies

The inequities arising under market share liability stem from the fact that only one defendant in fact caused the harm, whereas under the commingled product theory, *all* defendants actually caused the harm. As this Court has explained, market share liability was developed in the context of plaintiff's inability to identify which of several manufacturers had produced the specific item that caused plaintiff's harm. *In re MTBE,* 591 F.Supp.2d 259, 275. The problem giving rise to market share liability arises when, "due to the incidence of mass production and marketing of various drugs and fungible goods," which are for all intents and purposes identical and interchangeable save their sources, "consumers are many times harmed by a product which is not easily traceable to a specific manufacturer." *Hymowitz v. Eli Lilly & Co.*, 73 N.Y.2d 487, 516-517 (1989). The market share model assumes that each plaintiff was harmed by only one (or very few) of these fungible goods (e.g., "the particular pill ingested by the plaintiff's mother"). *Id.* at 516.

The commingled product theory, on the other hand, does not link plaintiff's injury to a *single* interchangeable item, the maker of which cannot be identified, but rather to a joint *commingled* product that contains *all* or *many* of the harmful products made by

9

defendants.  *In re MTBE,* 591 F.Supp.2d at 275; *In re MTBE,* 447 F.Supp.2d at 301.

Therefore, although courts recognize that only one defendant actually caused a plaintiff's

injury under the market share theory (591 F.Supp.2d at 275), under the commingled

product theory, "*each* refiner or manufacturer is deemed to have caused the harm" (447

F.Supp.2d at 301, emphasis added).  The risk of pinning liability on an innocent

defendant, unavoidable under the market share theory in a fungible-product context, is

not inherent in the commingled product theory.

 The market share theory's inequities appear, and "fairness disappears[,] with the

decreasing probability that any one of the defendants actually caused the injury. This is

particularly true when applied to DES where the chance that a particular producer caused

the injury is often very remote."  *Hymowitz, supra*, 73 N.Y.2d at 506, citing *Sindell v.

Abbott Labs., supra,* at 603; *Collins v. Eli Lilly & Co.,* 116 Wis.2d at 184.  In the course

of providing relief to a plaintiff who is "unable to identify the manufacturer of the drug

that injured her" (73 N.Y.2d at 507), innocent defendants will be caught in the net of

liability.  Because those defendants may be forced to pay damages when they caused no

actual harm, certain inequities are inevitable in the market share context that are not

present under the commingled product theory.

 This Court recognized, as did the *Hymowitz* court, "the inequities imposed on

defendants when plaintiffs utilize *market share liability*."  *In re MTBE,* 517 F.Supp.2d at

671, citing *Hymowitz*, 73 N.Y. 2d at 513.  But those inequities derive entirely from the

fact that a defendant may bear "a disproportionate responsibility to compensate plaintiffs

for harm [it] *may not have caused*."  *In re MTBE,* 517 F.Supp.2d at 670.  This risk exists

in a market share case, but not in a commingled product case, because only in the market

share context are defendants who "did *not* cause the plaintiff's injury" unavoidably joined.  *In re MTBE,* 591 F.Supp.2d at 275, emphasis in original.

Defendants state – *ipse dixit* – that "the reasoning of the *Hymowitz* court . . . applies with full force to the commingled product theory."  (Defs' Memo at 11.) Defendants then construct a "straw" commingled product theory, using quotes from prior *In re MTBE* opinions that in fact pertain to the market share theory.  For instance, the *Hymowitz* court, as explained by this Court, allowed plaintiffs to rely on *market share liability* where "the offending product is fungible or commingled with other identical products."  *In re MTBE,* 517 F.Supp.2d at 670, *citing Hymowitz*, 73 N.Y.2d at 512.  This Court explained in other rulings that certain subsets of the above circumstances would give rise to commingled product liability – in particular, where not just *one* but rather *all* (or most) defendants in fact contributed to the injury.  *See In re MTBE,* 447 F.Supp.2d at 301; *In re MTBE,* 591 F.Supp.2d at 275.  This critical distinction, as explained above, distinguishes the market share and commingled product theories for purposes of assessing punitive damages.

Likewise, Defendants quote this Court's explanation that New York law allows the application of *market share liability* to prove causation "when the 'product in question is fungible, and as a result, the plaintiff cannot identify which defendant proximately caused her harm.'"  *In re MTBE,* 517 F.Supp.2d at 668, quoting *In re MTBE,* 447 F.Supp.2d at 299 (quoted in Defs' Memo at 11).  But regardless of the facial or even the substantive similarities between commingled product liability and market share liability, the *inequities* that arise under market share arise from the fact that under market share, innocent defendants are inevitably held liable – and that those defendants may be

11

forced to pay "for harm they may not have caused." *In re MTBE,* 517 F.Supp.2d at 670. The commingled product theory, to the extent it holds liable only those Defendants who *in fact* caused the harm, and allows Defendants to exculpate themselves and join other tortfeasors, sidesteps these inequities.

Defendants mischaracterize as a holding "under the commingled product theory" this Court's statement that "even drawing all the inferences in plaintiffs' favor, no reasonable jury could find, by a preponderance of the evidence, that each defendant's gasoline caused the contamination of each well." *In re MTBE,* 591 F.Supp.2d at 273, quoted in Defs' Memo at 12.  In fact, the Court noted that this was a limitation on proof under *traditional causation principles*.  Under the commingled product theory, in contrast, "[t]he evidence can . . . support an inference that each defendant's gasoline containing MTBE was, at least during certain years, delivered to Suffolk County gas stations in a commingled state."  Thus, "[t]o exempt defendants from liability . . . simply because plaintiffs are unable to deconstruct the molecules of the commingled gasoline to identify the manufacturers of each gallon of spilled gasoline is unjust."  *Id*. at 274. Exempting defendants from punitive damages after a reasonable jury finds that "*all* defendants contributed to the commingled gasoline that caused contamination in plaintiffs' wells" would be unjust in much the same way.  *In re MTBE,* 591 F.Supp.2d at 268.

The commingled product theory incorporates safeguards that minimize both the aforementioned inequities and the "inevitable inaccuracies" that Defendants do not specifically identify.  (Defs' Memo at 12.)  Each defendant is permitted to "offer evidence to exculpate itself from liability 'by proving that its product was not present at

the relevant time or in the relevant place.'" *In re MTBE,* 591 F.Supp.2d at 275, quoting *In re MTBE*, 447 F.Supp.2d at 301. And to ensure that the group of defendants is reasonably complete, "defendants can implead other responsible parties." *In re MTBE,* 447 F.Supp.2d at 301-302, citing *In re Agent Orange Prod. Liab. Litig.*, 597 F.Supp. 740, 828 (E.D.N.Y. 1984).

Under the commingled product theory, defendants may exculpate themselves by showing that their product could not have caused the specific injury at issue, not just by showing that they were not part of the relevant market.[4] The *Hymowitz* court, using a market share analysis only allowed defendants to exculpate themselves upon a showing that they "did not participate in the marketing of DES for pregnancy use" anywhere in the country. *Hymowitz, supra,* 73 N.Y.2d at 512. In fact, the *Hymowitz* court expressly stated that "there should be no exculpation of a defendant who, although a member of the market producing DES for pregnancy use, appears not to have caused a particular plaintiff's injury." *Id.* Under the commingled product theory, in contrast, a defendant can exculpate itself "by proving that its product was not present at the relevant time or in the relevant place, and therefore could not have been part of the commingled or blended product." *In re MTBE,* 447 F.Supp.2d at 301. Defendants in this case did not merely "participate" in the market, selling their own product; rather, they mixed their products together in a given market to create a commingled product that in fact caused harm.

---

[4] A defendant's basis for liability and its path to exculpation bear a close, symmetrical relationship under both theories. Under the commingled product theory, a defendant is liable if it contributed to the commingled product causing the harm, and may exculpate itself by showing that its product was not part of the commingled final product. Under the market share theory, a defendant may be found liable merely through its participation in the relevant market, and may exculpate itself only by showing that it did not participate in that market.

Furthermore, courts have addressed the potential inaccuracy resulting from imposing damages where not all market participants are joined simply by making liability several, rather than joint and several. Thus, the liability of any one defendant will never exceed its market share. *See Hymowitz*, 73 N.Y.2d at 509, discussing *Brown v. Superior Ct.,* 44 Cal.3d 1049, 1072 (1988) (under several liability, unlike joint and several liability, "each defendant's liability for the judgment would be confined to the percentage of its share of the market" and the plaintiff therefore bears the loss if not all potentially liable defendants were joined in the action); *see also In re MTBE,* 591 F.Supp.2d at 274, n. 72; *In re MTBE,* 447 F.Supp.2d at 301 ([d]amages should be apportioned by proof of a defendant's share of the market at the time of the injury"). As this Court has held, "defendants are not subject to joint and several liability," but rather several liability only, under the commingled product theory. *In re MTBE*, 447 F.Supp.2d at 301.

Thus, it is simply untrue that "[u]nder either theory, liability could be imposed against all or most defendants when some of those defendants are actually innocent of causing the plaintiff's alleged injury," as Defendants claim. (Defs' Memo at 12.) In fact, the market share theory expressly contemplates that most defendants are innocent; the commingled product theory attempts to hold liable only those defendants who actually contributed to the product causing injury. For this reason, it is far less likely under the commingled product theory that a given defendant "could be held liable for damages it did not cause." (Defs' Memo at 12.) As this Court pointed out in a slightly different context, the law's chief concern is not whether causation can be established with absolute certainty, but "whether tort and injury bear a close enough relationship to make it equitable to impose financial responsibility upon a defendant." *In re MTBE,* 591

F.Supp.2d at 290, quoting *Matott v. Ward*, 48 N.Y.2d 455, 460 (1979).  Even if tort and injury are too distant under the market share theory to allow punitive damages to be imposed, the commingled product theory brings them much closer together and eliminates Defendants' equitable concerns.

C.       Allowing Punitive Damages Under the Commingled Product
         Theory Will Not Create an Incentive to Ignore Other Liable Parties

The second reason cited by Defendants in support of a bar on punitive damages – i.e., perverse incentives – rests on the assumption that further effort by the plaintiff in a *market share case* might lead to the specific identification of the defendant actually at fault.  *In re MTBE,* 517 F.Supp. at 671 ("[r]estricting punitive damages to cases in which a plaintiff identifies the actual bad actors will encourage plaintiffs to make every effort to identify the particular defendants who caused the harm"); *see also Collins v. Eli Lilly & Co., supra,* 116 Wis.2d at 202.  But because the responsible defendants have already been identified as specifically as possible, this purported incentive simply is not present in a commingled product case.

Here, under the commingled product theory, the City will prove that the products "of many refiners and manufacturers were present in a completely commingled or blended state at the time and place that the harm or risk of harm occurred," *In re MTBE,* 447 F.Supp.2d at 301, and that "[b]ecause gasoline is commingled, it is *impossible* to identify with certainty the refiners of the gasoline released from a leaking UST."  *In re MTBE,* 591 F.Supp.2d at 264, emphasis added.  Where it is *impossible* to identify which molecules of MTBE came from which defendant with certainty, further effort to identify a specific responsible defendant is guaranteed to be fruitless.  Thus, the stated incentive

for restricting punitive damages in *market share* cases – to encourage greater effort in discovery – simply does not exist in a commingled product case.

The *Collins* court disallowed punitive damages only because the plaintiff – in that market share case – could not prove which defendant, among several, actually caused her harm. *Collins, supra*, 116 Wis. at 202 (punitive damages require a showing that the wrongdoer's conduct "actually caused the plaintiff's injuries," and where the plaintiff "has sued multiple defendants and has represented that she cannot prove which defendant"—out of many—"actually caused her injuries," she may not recover punitive damages). But the City has already identified the defendants who actually caused the harm by commingling their products into a blended or commingled product. These defendants are all, in fact, "deemed to have caused the harm" – and therefore this *is* a case in which the plaintiff has identified the actual bad actors. *In re MTBE,* 447 F.Supp.2d at 301. Punitive damages, therefore, are appropriate.

### III.    Constitutional Considerations Do Not Bar Punitive Damages Under the Commingled Product Theory

Given the discussion above, which makes clear that the defendants held liable under the commingled product theory are in fact proved to have actually caused the harm at issue, there is no basis for Defendants' claim that punitive damages would be unconstitutional in such a case. Nor do the cited cases support the argument that punitive damages are unconstitutional whenever a plaintiff must rely on an alternative theory of liability (*see* Defs' Memo at 18, 21) – especially in light of the Supreme Court's statements to the contrary in *Philip Morris USA v. Williams*, 549 U.S. 346 (2007), discussed below. Regardless, the commingled product theory is a method by which plaintiffs can "*prove* their claims against gasoline manufacturers," (591 F.Supp.2d at 268)

16

not, as Defendants claim, a theory that "may only be employed where there is no proof…" (Defs' Memo at 21).

Defendants cite *BMW v. Gore*, 517 U.S. 559 (1996) in support of the foregoing propositions. But that case holds that "exemplary damages must bear a 'reasonable relationship' to compensatory damages." *Id.* at 580.  The reasonable relationship contemplated in *Gore* – which defined a ratio between punitive and compensatory damages – cannot be evaluated until compensatory damages have been assessed. Nothing in *Gore* suggests that punitive damages would be inappropriate under an alternative theory of liability due to due process concerns.

In *Philip Morris USA v. Williams*, 549 U.S. 346, 353-354 (2007), the Supreme Court – as Defendants acknowledge – held that the jury's punitive damage award violated due process because the trial court had failed to instruct the jury that it could not use the award to punish Philip Morris for injuries inflicted on "strangers to the litigation."[5]  The Court identified three "fundamental due process concerns to which our punitive damages cases refer – risks of arbitrariness, uncertainty and lack of notice…" *Id.* It did not suggest that due process would be violated by anything other than a traditional theory of causation.  Furthermore, forestalling Defendants' argument entirely, the Court went on to acknowledge that "it may be appropriate to consider the reasonableness of a punitive damages award in light of the *potential* harm the defendant's conduct could have caused," as long as "the potential harm at issue was harm potentially caused *the plaintiff*." *Id.* at 354, emphasis in original.  Under *Philip Morris*, then, "potential harm," not just actual harm, may be sufficient to support an award of punitive damages.  Defendants

---

[5] The City does not claim a right to recover punitive damages on behalf of any party that the City does not already represent, either directly or via its *parens patriae* power.

cannot rely on *Philip Morris* to support their argument that punitive damages must rest on "direct proof that the defendant in question *actually* caused the plaintiff's harm." (*See* Defs' Memo at 18, emphasis added.)

The ruling in *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003) held, using similar reasoning, that "lawful out-of-state conduct may be probative when it demonstrates the deliberateness and culpability of the defendant's action in the State where it is tortious, but that conduct must have a nexus to the specific harm suffered by the plaintiff." *Id.* at 422. In other words, a plaintiff cannot recover punitive damages based on reprehensible conduct that was lawful where it occurred; punitive damages must be based only on the *unlawful* conduct for which a defendant is being held liable. *State Farm* says nothing about alternative theories of causation. Due process considerations in *State Farm* were held to prevent a defendant from being punished "for conduct that may have been lawful where it occurred," and to limit the ratio between punitive and compensatory damages – not to impose a direct theory of causation requirement. *Id.* at 421, 424-425.

The cases require a showing of a relationship between punitive damages and compensatory damages. They do not forbid punitive damages wherever a plaintiff uses an alternative theory of causation to prove its case. Furthermore, the commingled product theory, which holds Defendants liable when they in fact contributed to a plaintiff's injury, does not entail an "absence of evidence" connecting a specific defendant to the injury. (*See* Defs' Memo at 21.) Defendants' due process argument, which depends both on a strained interpretation of these cases and the idea that the City cannot prove actual damages, therefore fails.

**IV.  Defendants' Motion is a Motion in Limine, Not a Summary Judgment Motion.**

Finally, Defendants have moved *in limine* to bar punitive damages, but "[i]n the alternative, [moved] for summary judgment on the City's claims for punitive damages," (Defs' Motion at 1) suggesting that the Second Circuit endorses the latter technique. Defendants' Motion is properly characterized as a motion *in limine,* and not as a motion for summary judgment.  A motion *in limine* is "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered."  *Luce v. United States* (1984) 469 U.S. 38, 40, fn. 2.  Summary judgment, on the other hand, is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). There is a genuine issue of material fact only when there is sufficient evidence that a reasonable juror could find for the party opposing the motion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

For several reasons, Defendants' Motion cannot be deemed a motion for summary judgment.  First, Defendants' Motion does not attempt to "show that there is no genuine issue of material fact" (Fed.R.Civ.P. 56(c)), and Defendants' Rule 56.1 Statement does not describe "material facts as to which the moving party contends there is no genuine issue to be tried" (Local Civil Rule 56.1).  A material fact is one that might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   Under New York law, material facts relevant to an award of punitive damages are those that tend to show whether or not "the acts of the defendant that caused

the injury complained of were (wanton and reckless, malicious).  Punitive damages may

be awarded for conduct that represents a high degree of immorality [add where

applicable:] (and shows such wanton dishonesty as to imply a criminal indifference to

civil obligations)." N.Y. Pattern Jury Instr. – Civil 2:278; *see also Ross v. Louise Wise*

*Services, Inc.,* 8 N.Y.3d 478, 489 (punitive damages warranted where "the defendant's

wrongdoing is not simply intentional but 'evince[s] a high degree of moral turpitude and

demonstrate[s] such wanton dishonesty as to imply a criminal indifference to civil

obligations'") (*quoting Walker v. Sheldon*, 10 N.Y.2d 401, 404 (1961)); *Randi A.J. v.*

*Long Island Surgi-Center*, 842 N.Y.S.2d 558, 564 (2007) ("conduct warranting an award

of punitive damages 'need not be intentionally harmful but may consist of actions which

constitute willful or wanton negligence or recklessness'") (*quoting Home Ins. Co. v.*

*American Home Prods. Corp.*, 75 N.Y.2d 196, 204 (1990).

Instead of listing material facts demonstrating that there is no genuine issue as to

any Defendant's moral turpitude or indifference to civil obligations, Defendants' Rule

56.1 Statement only lists statements from the City's Fourth Amended Complaint and the

City's responses to Defendants' discovery requests, all of which pertain to the City's

*choice of theories* of causation and liability.  (Defendants' Rule 56.1 Statement, ¶¶1—7.)

Defendants argue exclusively that punitive damages are unavailable under either the

market share theory or commingled product theory, and precluded by constitutional

considerations – *not* that there is no genuine issue of material fact as to Defendants'

conduct.  Thus, the Motion is properly characterized as a motion *in limine*, as counsel for

Defendants Richard E. Wallace indicated in his letter of March 25, 2009 to Nicholas G.

Campins, counsel for the City.  (Letter from Richard E. Wallace to Nicholas G. Campins, March 25, 2009, attached as Exhibit 3 to Declaration of Marnie Riddle.)

Second, if the Motion were indeed a motion for summary judgment, it would be barred as untimely.  The deadline for filing motions for summary judgment "not requiring expert evidence" in this case was January 19, 2009 (Case Management Order 47) and this motion was not filed until March 24, 2009.  Defendants cite to no expert evidence in the Motion, Memorandum, Rule 56.1 Statement or Declaration.  Given that no expert evidence was referred to in Defendants' Motion, it could have been filed – if it were indeed a legitimate motion for summary judgment – on the basis of evidence extant as of January 19.  Since, as discussed above, it cites to no such evidence, expert or otherwise, it can only be treated as a motion *in limine*.

Finally, regardless of the Second Circuit's use of summary judgment to evaluate punitive damages claims in factually distinguishable cases,[6] *this* Court has held under near-identical circumstances that a similar motion focused on "whether plaintiffs should be allowed to seek the remedy of punitive damages at trial, not whether plaintiffs' claims

---

[6] In *Keywell Corp. v. Piper & Marbury LLP*, 51 Fed.Appx. 337, 341 (2d Cir. 2002), the Court examined whether the plaintiff had "failed to allege facts demonstrating that Piper's conduct was so outrageous as to evince a high degree of moral turpitude and showing such wanton dishonesty as to imply a criminal indifference to civil obligations," not whether plaintiff's legal theories permitted or precluded an award of punitive damages.  The Court in *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 780-781 (2d. Cir 1999) did not have jurisdiction to review the issue – but it is worth noting that the lower court's grant of summary judgment was predicated on an analysis of the material facts presented, not whether the legal theories asserted would bar punitive damages.  *West v. Goodyear Tire & Rubber Co.*, 973 F.Supp.385, 388-390 (S.D.N.Y. 1997).  Finally, in *On Davis v. The Gap, Inc.*, 246 F.3d 152 (2d Cir. 2001), the Court pointed out that in *statutory copyright infringement actions*, the function of punitive damages is served instead by a statute that "allow[s] increases to an award of statutory damages in cases of willful infringement" – but since the plaintiff "failed to show willfulness," the Court did not need to address the issue in detail.  *Id.* at 172.

should fail for lack of evidence" is a motion *in limine*, not a motion for summary judgment.  *In re MTBE*, 517 F.Supp.2d 662, 666.   Punitive damages "are not a claim" and summary judgment, therefore, is "an ill-suited procedural vehicle" to adjudicate requests for punitive damages.  *Id.*  Given that Defendants' Motion focuses exclusively on whether punitive damages should be available in conjunction with the commingled product theory, not whether the City's claims lack support, the Motion is a motion *in limine*.

## CONCLUSION

For all of the foregoing reasons, the City's reliance on the commingled product theory to prove causation does not bar an award of punitive damages, and the City should therefore be permitted to present evidence and arguments supporting its request for an award of punitive damages in this case.

Dated: April 30, 2009                              Respectfully submitted,


s/ Marnie E. Riddle
VICTOR M. SHER (*pro hac vice*)
TODD E. ROBINS (*pro hac vice*)
JOSHUA G. STEIN (*pro hac vice*)
NICHOLAS G. CAMPINS (*pro hac vice*)
MARNIE E. RIDDLE (*pro hac vice*)
SHER LEFF LLP
450 Mission Street, Suite 400
San Francisco, CA 94105
(415) 348-8300

MICHAEL A. CARDOZO
Corporation Counsel, City of New York
100 Church Street
New York, New York 10007
(212) 788-1568

*Attorneys for Plaintiff City of New York*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of **Plaintiff City of New York's Opposition to Defendants' Motion to Bar Punitive Damages Based on the Market Share and Commingled Product Theories** was served on Liaison Counsel via Electronic Mail, and on all counsel of record by posting it directly to CM/ECF and LexisNexis File & Serve on the 30th day of April, 2009.

KRISTIN MEYERS