# Exhibit 1




24643886

Apr 13 2009
4:51PM

| | THE CITY OF NEW YORK | |
|---|---|---|
| **MICHAEL A. CARDOZO**<br>*Corporation Counsel* | **LAW DEPARTMENT**<br>100 CHURCH STREET<br>NEW YORK, NY 10007 | **SUSAN E. AMRON**<br>Phone: (212) 788-1578<br>Fax: (212) 788-1619<br>E-mail: samron@law.nyc.gov |

April 13, 2009

By Email

James A. Pardo, Esq.
McDermott Will & Emery LLP
340 Madison Avenue
New York, New York 10173-1922

    Re: *City of New York v. Amerada Hess, et al.*, 04 CV 3417 (SDNY)
       *In re MTBE Products Liability Litigation*, MDL 1358

Dear Mr. Pardo:

    On a conference call with the Court and defendants on March 16, 2009, the City of New York ("the City") agreed to clarify for defendants its theories of causation for the focus wells, the defendants which the City intends to establish at trial are liable under each such causation theory, and any temporal limitation on each defendant's liability. The City's clarifications for each of the wells are attached as Exhibit A.

              Very truly yours,

              Susan E. Amron

              Susan E. Amron
              Deputy Chief
              Environmental Law Division

c:  All counsel (by LNFS)

**EXHIBIT A**
*City of New York v. Amerada Hess Corp, et al.*, 04 CV 3417 (SDNY)
**Plaintiff the City of New York's Clarification of Theories of Causation for Focus Wells**

I.   **Defendants Liable Under Traditional Causation Theories:**

    A.   <u>Station 6 (Wells 6, 6A, 6B, 6D, 33)</u>

        Amerada Hess Corp.[1]
        BP Defendants[2]
        Citgo Defendants[3]
        ConocoPhillips Defendants[4]
        Exxon Mobil Defendants[5]
        Getty Properties Corp.[6]
        Getty Petroleum Marketing, Inc.[7]

---

[1] The term "Amerada Hess Corp." refers to Amerada Hess Corporation and its subsidiaries and alter egos including, but not limited to: Hess Corporation.

[2] The term "BP Defendants" refers to BP Products North America, Inc., BP America, Inc., BP Amoco Chemical Co., Inc., BP Amoco Corp., and Atlantic Richfield Co., and their predecessor entities and alter egos including, but not limited to: Amoco Oil Company, Sohio Oil Company, BP Oil Inc., BP Oil Company and BP Exploration and Oil Inc.

[3] The term "Citgo Defendants" refers to CITGO Petroleum Corporation and CITGO Refining and Chemicals Company LP.

[4] The term "ConocoPhillips Defendants" refers to ConocoPhillips Company, Tosco Corporation, and Tosco Refining Company, Inc. and their predecessor entities and alter egos including, but not limited to: Conoco Inc., Phillips Petroleum Company, and Phillips 66 Company.

[5] The term "Exxon Mobil Defendants" refers to Exxon Mobil Corp., ExxonMobil Oil Corp., and Mobil Corp. and their predecessor entities and alter egos including, but not limited to: Exxon Corporation, Mobil Oil Corporation, Mobil Corporation, ExxonMobil Chemical Company, and ExxonMobil Pipeline Company.

[6] The term "Getty Properties Corp." refers to Getty Properties Corporation and its predecessor entities and alter egos including, but not limited to: Getty Oil Company, Power Test Corporation, Getty Petroleum Corp., Getty Realty Corp., and the former petroleum marketing operation of Getty Properties Corporation (before the 1997 spin-off).

[7] The term "Getty Petroleum Marketing, Inc." refers to Getty Petroleum Marketing Inc. and its predecessor entities and alter egos including, but not limited to: Getty Oil Company, Power Test Corporation, and Getty Petroleum Corp.

    Gulf Oil Limited Partnership[8]
    Shell Defendants[9]
    Sunoco Defendants[10]

 B. <u>Well 5</u>

    Amerada Hess Corp.
    BP Defendants
    ConocoPhillips Defendants
    Exxon Mobil Defendants
    Getty Properties Corp.
    Getty Petroleum Marketing, Inc.
    Gulf Oil Limited Partnership
    Sunoco Defendants

 C. <u>Well 22</u>

    Gulf Oil Limited Partnership
    Chevron Defendants[11]

 D. <u>Well 26</u>

    None

 E. <u>Well 39</u>

    Exxon Mobil Defendants
    Getty Properties Corp.

---

[8] The term "Gulf Oil Limited Partnership" refers to Golf Oil Limited Partnership and its predecessor entities and alter egos including, but not limited to: Catamount Petroleum LP.

[9] The term "Shell Defendants" refers to Equilon Enterprises LLC (d/b/a Shell Oil Products US); Motiva Enterprises LLC; Shell Oil Company; Shell Oil Products Company LLC; Shell Trading (US) Company; Texaco Refining and Marketing (East) Inc.; TMR Company (f/k/a Texaco Refining and Marketing Inc.); TRMI Holdings Inc., and their predecessor entities and alter egos including, but not limited to: Shell Petroleum, Inc., Star Enterprise and Equiva Services LLC.

[10] The term "Sunoco Defendants" refers to Sunoco, Inc. and Sunoco, Inc. (R&M) and their predecessor entities and/or alter egos including, but not limited to: Sun Oil Company and Sun Company, Inc..

[11] The term "Chevron Defendants" refers to Chevron USA Inc., ChevronTexaco Corporation, TRMI-H LLC (f/k/a TRMI Holdings Inc.), Texaco, Inc and their predecessor entities, alter egos, and subsidiaries including, but not limited to: Gulf Oil Corporation, Chevron Products Company, Unocal, and Chevron Corporation

      Getty Petroleum Marketing, Inc.

F.    <u>Well 45</u>

      BP Defendants
      Exxon Mobil Defendants
      Shell Defendants

II.    <u>**Defendants Liable Under Commingled Product Theory of Causation (All Wells)**</u>:

      All Defendants except Golf Oil Limited Partnership, Getty Properties Corp., and Getty Petroleum Marketing, Inc.

III.    <u>**Temporal Aspects of Defendants' Liability (All Wells)**</u>

      At trial, the City will demonstrate that MTBE-gasoline released in or in the vicinity[12] of the capture zone of a well at any time before 2004, when the New York State ban of MTBE became effective, contributed to, and continues to contribute to, MTBE contamination of the well, for which defendants are liable. Because MTBE-gasoline supplied into the City's Relevant Geographic Area (specified in section II.C.3. of Case Management Order 4, dated October 19, 2004 ("RGA")) was repeatedly commingled from multiple sources and at multiple locations from the point of manufacture and throughout the gasoline distribution system reaching the retail service stations in the RGA, over time any defendant that supplied MTBE or MTBE-gasoline into the distribution system that supplied the RGA also supplied MTBE-gasoline into the RGA. When commingled MTBE-gasoline was released in the RGA, each release contained MTBE-gasoline manufactured by multiple defendants. Over time, MTBE-gasoline from each such defendant is present in each release occurring during the time that that defendant was supplying MTBE-gasoline.

      Gasoline regularly spills and leaks from underground storage systems through numerous pathways, including tanks, piping, and vapor recovery systems, in varying amounts with varying levels of detection. For releases reported to the New York State Department of Environmental Conservation ("DEC"), virtually all releases began before – and commonly substantially before – the date the release was reported, and the actual date the release began or the amount of MTBE-gasoline released can almost never be determined. For this reason, the date the release was reported to DEC (and the date reflected in the DEC-assigned spill number) does not reflect the date the release began. Further numerous releases have never been reported to DEC. For example, in 2008, DEC reported that, based on inspections and monitoring it conducted at 52 gasoline stations that had never reported releases of MTBE-gasoline, located in the neighboring counties of Nassau and Suffolk in recharge zones of public water supply wells,

---

[12] The actual release site need not fall in the capture zone if the subsequent migration of MTBE in the subsurface reaches the capture zone.

areas of particular sensitivity to MTBE contamination, it discovered 33 unreported releases at the 52 stations and MTBE in groundwater above the New York State drinking water standard – in several instances orders of magnitude above the standard – at 53% of the Nassau stations studied despite their never having reported releases.  By definition, the date such unreported releases began and the amount of MTBE-gasoline released can not be determined.

Once discovered and reported, the vast majority of releases in the RGA were not appropriately remediated, allowing MTBE to continue to contaminate the groundwater.  The high solubility of MTBE and relatively high concentrations of MTBE in reformulated gasoline allow MTBE to readily dissolve in groundwater and migrate rapidly and widely through the aquifers.  Once MTBE enters the groundwater, it is highly resistant to biodegradation, and persists for decades.  Groundwater in the RGA is particularly vulnerable to persistent MTBE contamination, given the relative stability of the aquifer system.  As a result, MTBE has been called "ubiquitous" in the RGA's shallow aquifers, even by defendants' experts.

For the reasons summarized above, and based on the expert reports and expert and percipient witness testimony the City will offer at trial, and the deposition designations, exhibit lists, and witness lists the City has submitted and/or will submit in accordance with Case Management Order 47, the City will demonstrate at trial that each defendant that (1) manufactured MTBE and/or (2) refined gasoline with MTBE and distributed it so that it could have reached the RGA is liable under a commingled product theory of causation for MTBE contamination in each of the ten focus wells after the date that that defendant began supplying MTBE or MTBE-gasoline into the distribution system that supplied the RGA.  The City will also demonstrate at trial that each defendant that supplied, owned, operated, leased, or otherwise contracted with a gasoline station where a release contributed to MTBE contamination in any of the ten focus wells is liable under traditional theories of causation for such MTBE contamination in that well after the date that that defendant first supplied, owned, operated, leased, or otherwise contracted with that gasoline station.

The dates defendants began supplying MTBE or MTBE-gasoline into the distribution system that supplied the RGA are known to defendants, are contained (to the extent provided) in defendants' discovery responses, and are summarized in the expert report of Bruce Burke.  The gasoline stations where a release contributed to MTBE contamination in a focus well are identified in the expert reports of David Terry, Donald Cohen, G.D. Beckett, and Marcel Moreau.  The dates defendants first supplied, owned, operated, leased, or otherwise contracted with a gasoline station where a release contributed to MTBE contamination in any of the ten focus wells are known to defendants and are contained (to the extent provided) in defendants' discovery responses and declarations submitted pursuant to Case Management Order 4.