**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------X

In re:  Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

-----------------------------------------------------X

**This Document Relates To**:
*Orange County Water District v. Unocal*
*Corporation, et al.,* S.D.N.Y. No. 04 Civ. 4968
(SAS)

-----------------------------------------------------X

**Master File No. 1:00-1898**
**MDL NO. 1358 (SAS)**
**M21-88**

**DEFENDANTS' FURTHER**
**SUPPLEMENTAL**
**MEMORANDUM IN SUPPORT OF**
**SUMMARY JUDGMENT MOTION**
**BASED ON STATUTE OF**
**LIMITATIONS**

# TABLE OF CONTENTS

Page

Preliminary Statement.................................................................................................1

Argument ....................................................................................................................5

I.    ACCORDING TO THE DISTRICT'S OWN CRITERIA, ITS CLAIMS ARE
TIME-BARRED AT THE VAST MAJORITY OF FOCUS PLUME
STATIONS. ........................................................................................................5

    A.    The District's Accrual Test Based On MTBE Detections In Offsite
Monitoring Wells. ................................................................................... 6

    B.    The District's Accrual Test Based On MTBE Detections In Production
Wells. ...................................................................................................... 9

        1.    Plume 7 -- accrual based on alleged MTBE detection in A-29. ...............10

        2.    Plume 3 -- accrual based on alleged MTBE detection in
OCWD-M10 ..............................................................................11

        3.    Plume 9 -- accrual based on alleged MTBE detection in HB-13..............12

II.    UNDER GOVERNING LAW, THE DISTRICT'S CLAIMS AT FOCUS
PLUME STATIONS ACCRUED WHEN MTBE FIRST REACHED
GROUNDWATER AT LEVELS AT OR ABOVE CALIFORNIA'S
SECONDARY MCL. ..........................................................................................15

    A.    The District's Attempts To Base Accrual On When It "Reasonably
Should Have Acted" Have Produced Arbitrary And Ad Hoc Times Of
Accrual Flatly Contrary To Governing Law....................................... 16

    B.    California Law Does Not Postpone Accrual Until MTBE Is Detected
In Off-Site Wells Or Production Wells................................................ 18

        1.    Because the District claims to be charged with protecting "all
groundwater" in its territory, accrual is not postponed until
MTBE is detected offsite of the station property or in
production wells....................................................................19

        2.    The District's accrual criteria concede that MTBE detected in
groundwater at 5 ppb causes alleged "injury." ..........................22

C.      The Discovery Rule Does Not Postpone Accrual Of The District's
        Claims. ........................................................................................................ 24

Conclusion ............................................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*BellSouth Telecomm. v. W.R Grace & Co.,*
    77 F.3d 603 (2d Cir. 1996)......................................................................18

*Cal. Dept. of Toxic Subs. Control v. Neville Chem. Co.,*
    358 F.3d 661 (9th Cir. 2004) .................................................................18

*In re MTBE,*
    457 F. Supp. 2d 455 (S.D.N.Y. 2006) (*Cognizable Interest Op.*)..........4, 18, 19

*In re MTBE,*
    475 F. Supp. 2d 286 (S.D.N.Y. 2006) (*Limitations Op.*)...............5, 16, 17, 22, 23, 24

*In re MTBE,*
    2007 WL 700819 ....................................................................................21

*In re MTBE Prod. Liab. Litig.,*
    2007 WL 1601491 ..................................................................................23

*Nodine v. Shiley Inc.,*
    240 F.3d 1149 (9th Cir. 2001) ...............................................................17

*Platt Elec. Supply, Inc. v. EOFF Elec. Inc.,*
    522 F.3d 1049 (9th Cir. 2008) ...............................................................18

*Roseville Plaza Ltd. P'ship v. United States Gypsum Co.,*
    811 F. Supp 1200 (E.D. Mich. 1992)......................................................18

**STATE CASES**

*Beck Dev. Co. v. S. Pac. Transp. Co.,*
    44 Cal. App. 4th 1160 (1996) ................................................................21

*County of Santa Clara v. Atl. Richfield Co.,*
    137 Cal. App. 4th 292 (2006) ................................................................19

*Davies v. Krasna,*
    14 Cal. 3d 502 (1975) ......................................................................8, 17

*Detroit Bd. of Educ. v. Celotex,*
    196 Mich. App. 694, 493 N.W.2d 513 (1992)..........................................18

*Gutierrez v. Modfid*,
   39 Cal. 3d 892 (1985) ..................................................................25

*Spellis v. Lawn*,
   200 Cal. App. 3d 1075 (1988) .......................................................17

*Walker v. Pacific Indemnity Co.*,
   183 Cal. App. 2d 513 (1960) .........................................................17

*Wilshire Westwood Assoc. v. Atl. Richfield Co.*,
   20 Cal. App. 4th 732 (1993) .........................................................21

## STATUTES AND RULES

Cal. Water Code App. § 40-2(2) & (9) ..................................................20

Cal. Water Code § 13304 .....................................................................21

Cal. Water Code § 13304(a) .................................................................22

Cal. Water Code § 13304(a)-(c) ...........................................................21

Fed. R. Civ. Proc. 30(b)(6) .........................................................9, 13, 14

Defendants[1] respectfully submit this further supplemental memorandum in support of their summary judgment motion based on the statute of limitations.

## Preliminary Statement

Following the current briefing, defendants' statute of limitations motion, filed in the spring of 2006, will finally be submitted for decision. This briefing addresses the accrual dates designated by plaintiff Orange County Water District (the "District") in response to the Court's orders at the January 15, 2009, January 29, 2009, and February 26, 2009 conferences, including the impact of those dates (and the criteria used to select them) on defendants' motion. In all, the District has supplied accrual dates for 45 stations, comprised of 40 stations from focus plumes chosen by the District and five stations from focus plumes chosen by defendants.

This brief analyzes two issues. First, applying the District's own two-part accrual criteria, its claims are time-barred at a large majority of focus plume stations. The District's criteria -- as set forth in pre-conference correspondence to the Court and in other letters by the District -- are unambiguous. For service stations at which offsite monitoring wells were installed, accrual occurs (according to the District) when MTBE was detected in any such well above California's secondary MCL (5 ppb). For all remaining stations (those, according to the District, at which "no offsite monitoring wells" were installed), accrual allegedly occurs upon the "first detection" of MTBE in a production well that the District claims is "associated" with the station by being part of the same plume.

The actual accrual dates that flow from these criteria bear virtually no resemblance to the dates chosen by the District. Taking first the group of 24 stations to which dates were assigned using the first criterion, the District gave only two stations accrual dates before the May 6, 2000

---

[1] Defendants joining this memorandum are listed on Attachment A hereto.

limitations cutoff, and both were from focus plumes chosen by defendants.[2]  But undisputed

monitoring well data tell a far different story.  MTBE was detected in one or more offsite

monitoring wells in excess of 5 ppb -- *before* May 6, 2000 -- at all but seven stations, thus

establishing that the District's claims are time-barred under its own criteria.  Even more striking,

the pre-May 6, 2000 MTBE detections ignored by the District very often were larger (indeed, up

to ten, hundreds, and sometimes thousands of times larger) than those used by the District to

select its dates.  Several of the District's dates rest on MTBE detections in offsite wells *below* 5

ppb, in violation of its own criteria.

 As to the 21 stations to which dates were assigned using the second criterion, this

criterion applies by its express terms only to stations with "no off-site monitoring wells."   Not

only did the majority of these stations in fact have offsite monitoring wells but, at ten of them,

MTBE was detected above 5 ppb *before* the limitations cutoff.  At these stations as well, the

District's claims are time-barred applying its own criteria.

 The stations assigned accrual dates using the District's second criterion raise further

dispositive issues.  First, as to five stations from the District's Plumes 3 and 7, the accrual dates

assigned by the District rest on alleged "first" MTBE detections in well OCWD-M10 (Plume 3)

and City of Anaheim well A-29 (Plume 7) after the limitations cutoff.  But, the District's own

testing detected MTBE in both wells on multiple occasions *before* May 6, 2000.  Second, the

District assigned accrual dates to five more stations from its Plume 9 by treating as an MTBE

"detection" certain raw instrument data from testing of in Huntington Beach well HB-13 that

failed to meet the OCWD laboratory's quality control requirements for reporting purposes, and

---

[2] When the District issued its current accrual dates, only ten stations from focus plumes designated by defendants remained in its case.  The District assigned accrual dates before May 6, 2000 to two stations (effectively removing them from its case) and dropped five more stations as "not ripe."  At present, only three of defendants' focus plume stations remain.

was reported both to the City of Huntington Beach (the well's owner) and in the District's WRMS and LIMS databases as "non-detect." In his recent deposition, the District's lab director confirmed that these data do not constitute an MTBE "detection."

In all, applying the District's own criteria to undisputed facts, its claims are time-barred at 34 of the 45 focus plume stations, requiring that they be dismissed from its lawsuit.[3]

Second, and even more fundamentally, the District's chosen accrual dates bear no relationship to when its claims accrued under California law. For the reasons discussed below and in prior briefing, California law establishes straightforward accrual rules that, when applied to undisputed facts, require the across-the-board dismissal of the focus plume stations.

Like the District's statute of limitations positions in each of the prior rounds of briefing, the District's new criteria -- and even more so, its inconsistent manner of applying them -- are meant to ensure that its claims will not accrue until the District decides to assert them. But no such one-sided outcome is permitted by California law. California courts apply a straightforward and objective standard to determine when accrual occurs -- when plaintiff first becomes "entitled to a legal remedy." For purposes of the District's tort claims addressed by this motion, accrual is triggered under this standard when MTBE first "physically intrudes" into groundwater over which the District claims jurisdiction, or in which it claims a property interest, at levels constituting actionable "contamination." Based on this test, the District's claims at the focus plume stations are plainly time-barred.

---

[3] Exhibit 3 to the Supplemental Declaration of William Costley submitted herewith summarizes the status of each focus plume station under the District's criteria. In addition to stations that are time-barred, its claims at five stations have never accrued under these criteria. These are Plume 9, Chevron 9-5401, Huntington Beach ARCO, Unocal 5226, USA Gasoline 141; and Plume D1, Unocal 5792.

The accrual criteria now offered by the District postpone accrual until a much later time - - when MTBE released at a particular service station allegedly has moved outside the station's boundaries and is detected (first criterion) in groundwater at an offsite monitoring well or (second criterion) in a nearby water supply well.  These criteria fail as a matter of law.

First, as the Court has recognized, the District's claims arise under California law only when its "property" suffers alleged physical injury.  *In re MTBE*, 457 F. Supp. 2d 455, 459-62 (S.D.N.Y. 2006) (hereinafter "*Cognizable Interest Op.*")  Its claims thus accrue for limitations purposes when, and only when, this alleged injury first takes place.  Assuming *arguendo* that the District possesses sufficient jurisdiction over, or a property interest in, MTBE-impacted groundwater found in offsite monitoring wells or nearby production wells, the District surely possesses the same jurisdiction and rights as to MTBE-impacted groundwater inside the station's boundaries.  Second, the District's purported excuse to postpone accrual until MTBE moves off the station property -- its assertion that such MTBE has "escaped" the remedial authority granted to the Regional Board and local oversight agencies -- is squarely contradicted by California law.  Under the Porter-Cologne Water Quality Act, the Regional Board and local agencies have comprehensive power to "require complete cleanup of all waste discharged and the restoration of affected water to background conditions."  (Further Supplemental Declaration of James J. Finsten ("Finsten 2009 Decl.") Ex. 1 (Cal. State Water Res. Control Bd. Resolution No. 92-49).)  No meaningful distinction exists between the statutory authority and remedies available to these agencies to remediate MTBE contamination within a station's boundaries as compared to MTBE that is found elsewhere.  As such, no basis exists to postpone accrual until MTBE moves outside the station property.

- 4 -

The December 2006 opinion by the Court strongly urged the District to "define with . . . specificity what level of contamination it claims constitutes appreciable harm." *In re MTBE*, 475 F. Supp. 2d 286, 295 n.59 (S.D.N.Y. 2006) (hereinafter "*Limitations Op.*"). Through its newly-adopted criteria, the District has done just that. Like the Court's statute of limitations opinions in the New York cases, the District concedes that it suffers a purported "injury" when MTBE is detected in groundwater at a level equal to California's secondary MCL, or 5 ppb. When coupled with the District's many admissions that it is "charg[ed] [with] protecting all groundwater within [its] territory," its adoption of the 5 ppb threshold confirms that its focus plume claims are time-barred.

### Argument

## I.   ACCORDING TO THE DISTRICT'S OWN CRITERIA, ITS CLAIMS ARE TIME-BARRED AT THE VAST MAJORITY OF FOCUS PLUME STATIONS.

At the January 29, 2009, teleconference, the Court directed the District to submit its final position specifying for each focus plume station "this is the accrual date *and this is why*." (Jan. 29, 2009 Hr'g Tr. at 27 (emphasis added).) Once submitted, the Court emphasized, "that's stuck" and cannot be changed again. *Id.* at 29; *see id.* at 24 (the Court: "[t]here comes a time when you absolutely have to commit, and the time is, to me, long past"). Defendants here analyze the District's March 13, 2009 accrual table.[4]

In response to the Court's order, the District adopted a two-part accrual test. Under its first criterion, accrual occurs when "MTBE was first detected in off-site monitoring wells at levels suggesting MTBE had escaped remedial efforts." (Finsten 2009 Decl. Ex. 3 (Feb. 17,

---

[4] The March 13 table was created *after* February 26, 2009, when the Court directed the District to disclose the particular well on which each station's accrual date is based. (Feb. 26, 2009 Status Conference Hr'g Tr. 45:22-50:24.) Compared to the District's original accrual table dated February 6, 2009, the District changed its accrual date at not fewer than 16 stations.

2009 Letter from M. Axline to J. Anderson.) *Accord* Finsten 2009 Decl. Ex. 4 (Feb. 23, 2009 Pls.' Pre-Conf. Reply Letter) at 3-4.)  Under this criterion, an MTBE detection "consistent with California's 5 ppb MCL" is treated as a sufficient "level" of MTBE to trigger accrual.  (*E.g.*, Finsten 2009 Decl. Ex. 5 (Feb. 6, 2009 Letter from M. Axline to Hon. Shira Scheindlin).)  The District's dates based on this criterion frequently rest on MTBE detections equal to or only slightly above 5 ppb and, in several instances, accrual is based on detections *below* 5 ppb.[5]

The District's second criterion applies only to "stations with no off-site monitoring wells."  (Finsten 2009 Decl. Ex. 3; *see also id.* Ex. 4 at 3-4.)  At such stations, accrual occurs upon "the first detection of MTBE in a drinking water production well associated with the station."  (*Id.* Ex. 4 at 4.)  Under this criterion, any MTBE detection is treated as triggering accrual, regardless of level.

Applying these criteria, the undisputed facts demonstrate that the District's claims accrued at the vast majority of focus plume stations before the limitations cutoff.

### A.   The District's Accrual Test Based On MTBE Detections In Offsite Monitoring Wells.

The District's March 13 table lists accrual dates based on its first criterion for a total of 24 stations.  At two of these, the District's accrual date is before May 6, 2000, leaving 22 stations with accrual dates after this cutoff.

Data showing when, and at what levels, MTBE has been detected in offsite monitoring wells are reported in a station's periodic remediation reports submitted as required by law to the Regional Board or local regulators.  Exhibit 1A to the concurrently filed Further Supplemental

---

[5] The District's accrual dates for the following stations rest on the offsite MTBE detections shown in parentheses:  plume 1: Exxon 4282 (5.6 ppb), G&M Oil 4 (5.1 ppb), Mobil 18-G6B (14.4 ppb); plume 3: ARCO 1912 (7.6 ppb); plume 10: Shell 8990 (14 ppb).  In three stations, the District's date rests on offsite detections *below* 5 ppb -- plume 2: Mobil 18-JMY (4.9 ppb); plume 9: Unocal 5226 (1.5 ppb); defendant plume 1: Unocal 5792 (4.0 ppb).

Declaration of William Costley ("Costley 2009 Decl.") compares the MTBE detections on which the District's accrual dates rest with data showing earlier MTBE detections in offsite monitoring wells at the stations in question *before* May 6, 2000. Only detections exceeding the 5 ppb threshold are cited. At 15 of the stations to which the District assigned post-May 6, 2000 accrual dates based on this criterion, at least one, and often several, offsite monitoring wells had detections above 5 ppb before the May 6, 2000 cutoff.

Even more striking, the pre-May 6, 2000 detections identified on Exhibit 1A very often are, by any objective standard, far more substantial than those utilized by the District. This is true whether one looks at the level of MTBE detected, the frequency with which such detections are repeated in later testing, or the number of offsite wells at which MTBE was detected. The following examples (*see* Costley 2009 Decl. Ex. 2) illustrate this point.

Beacon Bay Car Wash (plume 8). In the District's original (February 6) accrual table, this was the *sole* station to which the District assigned a pre-May 6, 2000 accrual date, *i.e.*, June 25, 1996. Its "final" (March 13) table changed this date to January 16, 2003, i.e., a date *after* the limitations cutoff. (*See supra*, p. 5 n. 4.) Monitoring data confirm the District's original date. On June 25, 1996, MTBE was detected in offsite monitoring well MW-8 at 7,200 ppb, and MTBE was again detected in this well on 12 more occasions before May 6, 2000, all of which were far above 5 ppb. (*See* Costley 2009 Decl. Ex. 2.) In addition, offsite monitoring well MW-7 had another 11 MTBE detections above 5 ppb before May 6, 2000. (*See id.*) By contrast, the District's accrual date rests on a single MTBE detection on January 16, 2003 in offsite well MW-9 at 18 ppb. *Id.* In later testing, MTBE was not detected again in this well. *Id.*

Mobil 18-JMY (plume 2). At this station, MTBE was detected repeatedly at levels above 5 ppb before May 6, 2000 in no fewer than four offsite monitoring wells (BH-5,

MW-14, MW-17, MW-19). *Id.* The highest pre-May 6, 2000 detection was 200,000 ppb in well

BH-5, with wells MW-14, MW-17 and MW-19 having detections of 29 ppb, 1,000 ppb and 11

ppb. *Id.* The District's date, however, rests on an MTBE detection of 4.9 ppb on November 7,

2001 in offsite well MW-15. *Id.* MTBE was not detected again in this well. *Id.*

        <u>Shell 6502 (plume 9).</u> MTBE was not detected in offsite well B-46, the well

designated by the District, on September 6, 2000, the District's chosen date. *Id.* However,

MTBE was detected at 10 ppb in that well three months earlier, on June 6, 2000. *Id.* Over the

next five years, MTBE was detected below 5 ppb or not at all in B-46.[6] *Before* May 6, 2000,

however, MTBE was detected repeatedly at much higher levels in offsite monitoring wells B-7

(4,800 ppb peak), B-8 (230 ppb peak), B-11 (200 ppb peak), and B-21 (450 ppb peak). *Id.*

        These examples illustrate the District's manipulation of its own criteria. Nothing allows

the District to ignore repeated, and far more substantial, MTBE detections before the May 6,

2000 cutoff in favor of isolated, low-level detections after that date. Under the District's criteria,

its claims are time-barred at each station at which pre-May 6, 2000 MTBE detections were made

in offsite wells above 5 ppb.

        The District's second criterion applies only to "stations where no off-site monitoring

wells were installed." (Finsten 2009 Decl. Ex. 5.) However, many stations to which the District

assigned accrual dates based on this criterion *do* have offsite monitoring wells -- and detections

of MTBE above 5 ppb in those wells before May 6, 2000. Under California law, a claim accrues

when "events have developed to the point where plaintiff is entitled to a legal remedy." *Davies*

*v. Krasna*, 14 Cal. 3d 502, 513 (1975). Through its first criterion, the District necessarily

concedes that this standard is satisfied when MTBE is detected in a station's offsite wells above

_____

[6] Five years after the accrual date selected by the District, MTBE was again detected just above 5
ppb (5.8 ppb peak) in three of the last ten monitoring events through March 2008. *Id.*

5 ppb.  Where this occurred *before* May 6, 2000, the District cannot manufacture a post-May 6, 2000 accrual date by purporting to apply its second criterion.

This circumstance is illustrated by ARCO #1887 (plume 1).  According to the District, its claims accrued when MTBE allegedly was detected in City of Newport Beach production well NB-TAMD on August 3, 2005.  (Costley 2009 Decl. Ex. 1B.)  During Rule 30(b)(6) "focus plume" depositions, however, the District's witness identified three offsite monitoring wells at this station, and cited MTBE detections in these wells as purportedly showing that MTBE had "escaped remediation."  (Finsten 2009 Decl. Ex. 10 (Deposition Testimony of David Bolin) at 3058:5-3059:5.)  Each of these wells had pre-May 6, 2000 detections above 5 ppb, including multiple detections in wells MW-15 and MW-17. [7]

Exhibit 1B to the Costley 2009 Decl. lists ten stations at which the District based its accrual date on the second criterion despite monitoring data showing pre-May 6, 2000 MTBE detections in offsite wells above 5 ppb.  The District's claims at these stations are time-barred.[8]

**B.    The District's Accrual Test Based On MTBE Detections In Production Wells.**

The District's March 13 table lists accrual dates for 21 stations based on its second criterion.  Defendants first examine the District's accrual dates assigned to stations in its Plumes 7, 3 and 9.  Defendants then examine the underpinnings of this criterion.

---

[7] During the deposition, the District's deponent acknowledged the pre-May 6, 2000 detections at two of these wells. (Finsten 2009 Supp. Decl. Ex. 10 at 3071:21-3072:19 (MW-15), 3072:21-3073:15 (MW-17).)  MTBE was also detected above 5 ppb in offsite well BC-1 on December 28, 1999.  *See* L.R. 56.1 Statement.

[8] The District's March 13, 2009 table identifies five stations from defendants' focus plumes as "not ripe."  However, *all five* of these stations had offsite detections of MTBE above 5 ppb prior to May 6, 2000.  As such, these stations are time-barred under the District's own criteria, and should be dismissed with prejudice. (Costley 2009 Supp. Decl. Ex. 1C.)

1.    **Plume 7 -- accrual based on alleged MTBE detection in A-29.**

In the District's table, its accrual dates for the two plume 7 stations rest on an alleged

"first" MTBE detection in City of Anaheim well A-29 on December 14, 2005.  However, in a

revised listing of focus plumes, the District sought to drop well A-29 from plume 7 and to add

two other wells.  (Finsten 2009 Decl. Ex. 6 (Feb. 20, 2009 Letter from T. O'Reilly to J.

Anderson.)  At the April 2, 2009 conference, the Court ordered that well A-29 will continue to be

part of plume 7 for this motion.  (April 2, 2009 Hr'g Tr. 50:14-51:13.)

In fact, MTBE was not detected in well A-29 in December 2005.  Instead, according to

the District's interrogatory answers cited as the basis for its accrual table, MTBE reportedly was

detected in well A-29 on October 4, 2005 by the District's litigation consultant, Friedman &

Bruya, at the extremely low level of 0.09 ppb.  This is the *only* alleged detection of MTBE in

well A-29 after the limitation cut-off.  Since May 2000, testing by the District's laboratory was

"ND" (non-detect) for MTBE on each of the 30 occasions this well was sampled.  (Finsten 2009

Decl. Ex. 7 (Data for MTBE testing in well A-29).)

More to the present point, the alleged October 2005 detection was not the "first"

detection" of MTBE in well A-29 -- the second criterion's trigger for accrual.  Fully a decade

earlier, on October 21, 1995, the District's laboratory detected MTBE in this well at 3.7 ppb (a

level 41 times higher than the purported 2005 detection).  Over the next several years, MTBE

was detected in well A-29 on seven more occasions, always at or above 1 ppb.  (*See* O'Reilly

2008 Decl. Ex. 2 (Pl.'s Second Supp. Responses to Defs.' Preliminary Interrogatories re

Standing) at Ex. 1A ("Water Supply Wells").)  Due to these detections, the City of Anaheim shut

down well A-29 for some period of time between 1996 and 1999.  (*See* Decl. of David Bolin,

March 28, 2008 ("Bolin 2008 Decl.") ¶ 11; Decl. of Melanie Hanson Sartoris, March 9, 2006

("Sartoris 2006 Decl.") Ex. 2 at 6; Ex. 6 at 850:13-851:9.)

According to the District, "[w]hen MTBE is detected in a drinking water well . . . there is no doubt that MTBE has escaped remediation." (Pl.'s Supp. Opp. Br. Re Statute of Limitations (Mar. 28, 2008) ("Pl.'s 2008 Supp. Br." at 17.)[9]   With respect to plume 7, the District asserts that the "[s]tations designated for the Plume" are "generally upgradient of well A-29 and/or within the predicted capture zone of the well, " and so allegedly are potential sources of MTBE in this well. (Bolin 2008 Decl. ¶ 11; Finsten 2009 Decl. Ex. 10 at 683:3-6; 693:14-17.) Accepting *arguendo* the District's contentions, the MTBE detections in well A-29 before May 6, 2000 would demonstrate -- under the District's assumptions -- that MTBE had "escaped" remediation at the stations "associated" with this well, and had travelled to where it "threatened" drinking water. No more is needed for its claims to have accrued before May 6, 2000.

### 2. Plume 3 -- accrual based on alleged MTBE detection in OCWD-M10

The March 13 table identifies accrual dates for three plume 3 stations based on an alleged "first detection" of MTBE in monitoring well OCWD-M10 on May 7, 2002. Notably, plume 3 contains no production wells. Instead, the March 13 table purports to apply the District's second accrual criterion to this plume as though its monitoring well was instead a production well. (Finsten 2009 Decl. Ex. 11 (Deposition Testimony of Roy Herndon) at 3971:1-9, 3972:12-20.)

Although MTBE was detected in well OCWD-M10 in May 2002, this was not the "first detection" in this well. The District's interrogatory answers report an MTBE detection in well OCWD-M10 equal to 1 ppb on September 12, 1995, some seven years earlier.[10] (O'Reilly 2008

---

[9] The District also has asserted: "when MTBE . . . is detected in a drinking water well . . . OCWD reasonably assumes that the contaminant has migrated offsite from a source(s) within the capture zone of the drinking water well . . . whether those sources are undergoing remediation or not." (Bolin 2008 Decl. ¶ 4.)

[10] In prior supplemental briefing, the District acknowledged this earlier detection, stating: "MTBE was first detected in OCWD-M10 on September 12, 1995." (Pl.'s 2008 Supp. L.R. 56.1 Statement ¶ 21.)

Decl. Ex. 2 at Ex. 1A, "Orange County Water District Owned Monitoring Wells" p.5.)  Other

documents from the District's laboratory report three additional pre-May 6, 2000 detections in

this well on June 12, 1997 (at 0.51 ppb), July 7, 1997 (at 0.7 ppb) and February 1, 1999 (at 0.61

ppb).  (*See* Sartoris 2006 Decl. Ex. 10, pp. 2, 4; Finsten 2009 Decl. Ex. 8.)

Under the District's second criterion, accrual occurs upon "the first detection" of MTBE

in a well "associated with" a station, regardless of the level.  This criterion mirrors the District's

contention that even a single MTBE detection in a production well at any level demonstrates that

MTBE has "escaped" remediation at stations included in the same plume, and has moved to

where it "threaten[s]" drinking water sources.  (Bolin 2008 Decl. ¶ 7 ("Since MTBE has been

detected in OCWD-M10, it is likely that MTBE has escaped remediation capture at one or more

of the stations [included in Plume 3] and is contaminating OCWD-M10").)  This occurred in

well OCWD-M10 on multiple occasions before the May 6, 2000 cutoff.   Accordingly, the

District's claims for plume 3 stations accrued before that cutoff, and are now time-barred.

### 3.    Plume 9 -- accrual based on alleged MTBE detection in HB-13

The March 13 table identifies accrual dates for five plume 9 stations based upon a

purported "first detection" of MTBE in City of Huntington Beach production well HB-13 during

2005.[11]   The District's present assertion that MTBE was detected in well HB-13 squarely

contradicts both its Rule 56.1 statement submitted during the prior supplemental briefing and the

March 28, 2008 declaration of its employee, David Bolin, filed in support of that briefing.  (Pl.'s

---

[11] Confusingly, the March 13 table lists three different dates on which MTBE purportedly was
"first detected" -- July 2, 2001, cited accrual date for Chevron #9-5401; August 9, 2001, cited
accrual date for Huntington Beach ARCO; and January 18, 2005 for Thrifty #368, Westminster
Shell, and USA Gasoline #141.  Based on deposition testimony from the District's witnesses,
the "first detection" date intended by the District appears to be January 18, 2005.  (*See* Finsten
2009 Decl. Ex. 2.)

2008 Supp. L.R. 56.1 Statement ¶ 57, *citing* Bolin 2008 Decl. ¶ 13 ("MTBE has not yet been detected in" any plume 9 well, including HB-13).)

In July 2008, four months after his March 2008 declaration, Mr. Bolin testified in a Rule 30(b)(6) deposition of the District concerning Plume 9.  There, he asserted that an entry in the District's Laboratory Information Management System ("LIMS") database constituted a "first detection" of MTBE in well HB-13 on January 18, 2005.  (Finsten 2009 Decl. Ex. 10 at 254:16-256:8, Ex. 14; *Id.* at 392:13-16.)  While the LIMS database reports this sampling event as "ND" (non-detect) for well HB-13, it contains an entry of 0.17 ppb under the heading "Numeric Result," and Mr. Bolin interpreted this entry as an MTBE detection in the well.[12]  (*Id.* at 964:19-965:15, Ex. 49.)  He acknowledged that the LIMS database is maintained by the District's laboratory, that he does not have "access to the LIMS system," that is not familiar with the reporting protocols used for the database, and that he did not consult the District's laboratory in interpreting this entry as an MTBE "detection."  (*Id.* at 392:22-23, 257:5-260:6, 983:20-985:7.  *See also id.* at 997:19-998:8 ("I don't have access to the LIMS database.  I'm not a chemist.  I'm not trained at the procedures or the data or the management of that data.").)

Before Mr. Bolin's deposition, the District plainly did not consider this LIMS entry to constitute an MTBE detection.  In the District's written report of the January 18, 2005 sampling event to the City of Huntington Beach (the well's owner), MTBE is reported as "non-detect" and, in its Water Resources Management System ("WRMS") database which is used to report the District's monitoring results "to the State" and to well owners and water users, this sample result is again reported as "non-detect" for MTBE.  (*Id.* at 257:5-258:18, 373:19-378:16, Ex. 18.)

---

[12] To explain his March 2008 declaration, Mr. Bolin testified that he had seen the LIMS database entry "not long after I started with the District" in 2005 but that he later "thought I made a mistake" in recalling this database entry.  (*Id.* at 949:7-8, 950:2-24.  *See also id.* at 965:16-966:21.)

In his recent Rule 30(b)(6) deposition, the District's laboratory director, Steven Fitzsimmons, explained that the HB-13 entry cited by Mr. Bolin represents "raw data" from the lab's instruments, and did not satisfy requirements for data to be reported.[13]  (Finsten 2009 Decl. Ex. 12 (Deposition Testimony of Steve Fitzsimmons (rough)) at 48:12-49:12, Ex. 20, 54:12-18, 55:12-14.)  Moreover, under the District's monitoring procedures, if testing produces a "first time" MTBE detection in a production well, the District "will go out and resample the well two consecutive times" to confirm this finding.  (*Id.* at 59:24-25, 62:15-63:2.)  No re-sampling and re-testing of well HB-13 took place after the January 18, 2005 sampling event because, as Mr. Fitzsimmons stated, no "first time hit" of MTBE was detected there.  (*Id.* at 63:3-18, 65:2-5; *see also id.* at 60:1 (the January 18, 2005 sample of HB-13 "would not be defined as a first-time hit").)  Since MTBE was not in fact detected in HB-13, the District's accrual dates for Plume 9 stations fail as a matter of law; its claims with respect to them are not ripe under its own criteria.

More generally, the District's second accrual criterion is fatally flawed as a matter of law. This criterion rests on its "assumption" that if MTBE is detected in a focus plume production well, that MTBE must have come from "one or more" stations in that plume.  (*See* Bolin 2008 Decl. ¶ 4; *see also id.* ¶¶ 5-14.)  As explained in prior briefing, this assumption fails for two dispositive reasons.  First, in highly urbanized Orange County, there exist many potential sources of MTBE other than the few stations the District selected to include in any particular plume, and any of these could be responsible for the low-level MTBE detections now cited by the District. (Defs.' 2nd Supp. Br. Re Statute of Limitations (May 9, 2008) ("Defs.' 2008 Supp. Br." ) at 22 & n. 21.)  Second, although the District insists for purposes of this motion that the statute of

---

[13] Mr. Fitzsimmons testified that the "numeric result" upon which Mr. Bolin based accrual are "the actual raw data values," but that, for HB-13, these values "are reported as non-detect" because they were below the lab's reportable detection level (RDL).  (*Id.* at 48:4-16, 49:6-12.)

limitations must be applied on a "station-by-station" basis, its own prior briefing concedes that its "assumption" discussed above at most could purport to show that MTBE allegedly may have "escaped" at "one or more" of the multiple stations in a particular plume.  To establish accrual, the District must have a basis to link MTBE detected in a production well to the particular station in question.  Its "assumption" underlying this criteria cannot supply the needed link.

Depositions conducted since the prior briefing confirm this point.  The District's employees repeatedly conceded that it lacks any basis to trace MTBE detected in any focus plume well back to a particular source, let alone to a specific focus plume station.  (Finsten 2009 Decl. Ex. 10 (Bolin Dep. 693:6-7 (discussing A-29, "[a]ll we've been able to conclude thus far is that MTBE keeps showing up in the well"); 878:24-25 ("[w]e have not been able to identify the specific source that MTBE was detected in the wells" in plume 9); 936:10-937:13 (same); 1181:14-16 (though "MTBE has been detected in" plume 2 production wells, "we don't know exactly which site the contamination has come from"); 1508:11-12 ("[w]e haven't identified which of the stations the detections in [plume 9] are from").)  Quite clearly, the District's second criterion seeks to link MTBE detections in production wells to particular stations based solely on its litigation strategy decision to "associate" these stations with the production well in a self-created "plume."   As a matter of law, this criterion is insufficient to establish accrual for purposes of defendants' motion.

## II.  UNDER GOVERNING LAW, THE DISTRICT'S CLAIMS AT FOCUS PLUME STATIONS ACCRUED WHEN MTBE FIRST REACHED GROUNDWATER AT LEVELS AT OR ABOVE CALIFORNIA'S SECONDARY MCL.

Throughout the three prior rounds of briefing, the District embraced an ever-changing panoply of approaches to the statute of limitations that are united in only a single respect -- each one, if adopted, would assure that the District, *and only the District*, can determine when its claims accrue.  California law permits no such result.  Instead, as defendants have demonstrated,

- 15 -

the District's claims accrued when MTBE "physically intruded" into groundwater as to which
the District claims jurisdiction or a property interest at a level equaling or exceeding California's
5 ppb secondary MCL.[14]

### A. The District's Attempts To Base Accrual On When It "Reasonably Should Have Acted" Have Produced Arbitrary And Ad Hoc Times Of Accrual Flatly Contrary To Governing Law.

Central to the District's attempts to escape the statute of limitations is its misreading of
the Court's December 2006 opinion as allegedly postponing accrual of its claims until such time
as the District "reasonably should have acted."[15] (*See, e.g.*, Pl.'s 2008 Supp. Br. at 10; Pl.'s
Reply to Defs.' 2nd Supp. Br. Re Statute of Limitations (May 30, 2008) ("Pl.'s 2008 Reply") at
2-3.) Faced with facts demonstrating that "the vast majority of [MTBE] releases . . . occurred
prior to the limitations date" and that "OCWD was likely aware" (or charged with constructive
knowledge) of these releases, the District used its prior briefing to present a litany of purported
excuses as to why it was "reasonable for OCWD *not* to act." (Pl.'s 2008 Reply at 2 (emphasis in
original).) These included, most prominently, the District's alleged "assum[ption]" that the
Regional Board will address any MTBE releases, and the District's supposed "reliance" on this
assumption until after MTBE has "escaped" remedial efforts, the "escaped" MTBE is significant,
and this MTBE allegedly "threatens drinking water sources" -- at which point the District finally

---

[14] Under this standard, the District's claims are time-barred at all but one station, and should be
dismissed on this ground with prejudice. At station ARCO 1994, where MTBE has never been
detected in groundwater, the District's claims have not accrued and should be dismissed without
prejudice.

[15] In fact, the Court's opinion called on the District to define the "*level of contamination*" in
groundwater which the District asserted "constitutes appreciable harm" by specifying what level
of MTBE detection "reasonably should have caused [the District] to take responsive action."
*Limitations Op.*, 475 F. Supp. 2d at 295 n.59. Two years later, when ordered by the Court to
designate accrual dates for focus plume stations (and to explain "this is why"), the District finally
identified California's 5 ppb MCL as a sufficient MTBE "level" in groundwater to constitute
"injury." *See* pp. 22-24 *infra*.

considers it "reasonable" to act.  (Pl.'s 2008 Supp. Br. at 2-3; Bolin 2008 Decl. ¶¶ 5-8, 10.)
Although the District has nowhere explained the legal or factual justification for its current
accrual criteria, it is safe to expect that the District will justify postponing accrual of its claims
until MTBE has been detected in offsite wells or in production wells on the grounds that, before
such detections, it is "reasonable" for the District "not to act."

California courts utilize no such accrual standard.  Instead, "appreciable harm" resulting
in accrual exists when "events have developed to a point where plaintiff is entitled to a legal
remedy . . . ." *Davies v. Krasna*, 14 Cal. 3d 502, 513 (1975).  Under this standard, rather than
evaluate the numerous practical and prudential factors that "reasonably" might bear on when a
plaintiff "should" act, a court must analyze whether, given the facts existing at the relevant time,
plaintiff has suffered sufficient harm to be "entitled to a legal remedy." *Davies*, 14 Cal. 3d at
513 (citing *Walker v. Pacific Indemnity Co.*, 183 Cal. App. 2d 513 (1960)); *e.g., Spellis v. Lawn*,
200 Cal. App. 3d 1075, 1080-81 (1988).  By focusing on plaintiff's entitlement "to a legal
remedy," California law precludes courts from postponing accrual based on whether plaintiff's
damages to date are "speculative" or "uncertain" or whether much larger damages might accrue
in the future -- notwithstanding that such factors are highly relevant to a party's "reasonable"
decision whether to sue. *E.g., Limitations Op.,* 475 F. Supp. 2d at 291 (the Court: "neither the
speculative nor uncertain character of the damages nor the difficulty of proof will toll the period
of limitation" (quoting *Davies*, 14 Cal. 3d at 514)); *see Nodine v. Shiley Inc.*, 240 F.3d 1149,
1153 (9th Cir. 2001) ("where an injury, although slight . . . [is one for which] the law affords a
remedy . . . the statute of limitations attaches at once") (quoting *Spellis*, 200 Cal. App. 3d at
1080-81).  By avoiding the uncertainties inevitable in factors of this kind, California law

"provide[s] a clear accrual date[] so that each party . . . knows when the time to bring suit runs out." *Cal. Dept. of Toxic Subs. Control v. Neville Chem. Co.*, 358 F.3d 661, 666 (9th Cir. 2004).

In *BellSouth Telecomm. v. W.R Grace & Co.*, 77 F.3d 603, 613-14 (2d Cir. 1996), the Second Circuit rejected arguments paralleling those of the District here. At issue was the timeliness of plaintiff's lawsuit to recover "building-wide" abatement of asbestos. Undisputed facts showed plaintiff's awareness before the limitations cutoff that (1) asbestos supplied by defendants was present and (2) "significant portions" of its building were contaminated by asbestos. *Id.* at 613. Plaintiff argued that, despite these facts, its claims did not accrue until the later time when it could "appreciate[] that the ultimate loss is or will be of a kind and magnitude *that justifies a lawsuit.*" *Id.* at 614 (emphasis added). If adopted, the court stated, this rule "would vitiate all discovery statutes of limitations." *Id.* Instead, it held, plaintiff's claims accrued as a matter of law when it "suffers some form of actionable harm." *Id. Accord Roseville Plaza Ltd. P'ship v. United States Gypsum Co.*, 811 F. Supp 1200, 1208 (E.D. Mich. 1992) (rejecting arguments seeking to "postpone accrual until a time of plaintiff's own choosing") (citing *Detroit Bd. of Educ. v. Celotex*, 196 Mich. App. 694, 708, 493 N.W.2d 513 (1992) ("a plaintiff 'cannot circumvent the statute [of limitations] by arguing that its claim did not accrue until a time of its own choosing.'")). Just as here, accrual in *BellSouth* could not be postponed until the plaintiff "reasonably" decided that its injury sufficed to "justif[y] a lawsuit."

**B.      California Law Does Not Postpone Accrual Until MTBE Is Detected In Off-Site Wells Or Production Wells.**

Under the Court's prior rulings, the District's claims accrued when, and only when, it suffered alleged "physical injury" to property. *See Cognizable Interest Op.*, 457 F. Supp. 2d 455, 460-62 (S.D.N.Y. 2006); *e.g., Platt Elec. Supply, Inc. v. EOFF Elec. Inc.*, 522 F.3d 1049, 1054 (9th Cir. 2008) ("harm that results in accrual must be harm of the specific type that is

recoverable as damages on that . . . cause of action"); *see County of Santa Clara v. Atl. Richfield Co.*, 137 Cal. App. 4th 292, 317 (2006). In past motions, the District argued, and the Court agreed, that the District "has valid property interest arising from its usufructary and statutory rights and . . . contamination of groundwater by MTBE directly injures those rights." *Cognizable Interest Op.*, 457 F. Supp. 2d at 460. Through its "replenishment activities," the Court determined, the District has "acquired a usufructory right" in the groundwater" which is injured by the "present, physical MTBE contamination" of such water.[16] *Id.* at 461-62. These rulings leave no room for the District to argue that its claims do not accrue until MTBE is detected in offsite monitoring wells or, allegedly, in nearby production wells. Because the District has contended on myriad occasions that it possesses jurisdiction over, and is entitled to recover damages concerning, "all groundwater within [its] territory," its claims are triggered when MTBE is detected in groundwater at levels constituting actionable "contamination." (Finsten 2009 Decl. Ex. 9 (Dec. 16, 2005 Letter from M. Axline to The Court); *see also* Finsten 2008 Supp. Decl. Ex. 2 (Pl.'s Resp. to Req. for Admission 15); Decl. of Roy Herndon (March 15, 2006) ¶ 5; Mar. 11, 2008 Hr'g Tr. at 6.)

        **1.**      **Because the District claims to be charged with protecting "all groundwater" in its territory, accrual is not postponed until MTBE is detected offsite of the station property or in production wells.**

Each of the District's two accrual criteria purports to defer accrual until MTBE has moved outside the service station property -- either (first criterion) to an "offsite" monitoring well (*i.e.*, one located outside the station's boundaries) or (second criterion) to a nearby water production well. (*E.g.*, Finsten 2009 Decl. Ex. 4 at 3-4.) This element of the District's criteria fails as a matter of law.

---

[16] Plaintiff's operative complaint defines its "injuries in fact" giving rise to its lawsuit in just these same terms. Pl's Third Amended Complaint (Feb. 7, 2008) ¶¶ 4-5.

The District apparently views the first criterion -- whether MTBE has been detected in an offsite well above 5 ppb -- as demonstrating that MTBE allegedly has "escaped [the] remedial efforts" being directed at the station by the Regional Board or local regulators. (*Id.* at 3.) For two reasons, accrual of the District's claims cannot be limited on this basis.

First, and most fundamentally, the District's claim to possess jurisdiction over, or a property right in, the groundwater within its territory is not limited only to water outside a service station's boundaries. Assuming *arguendo* that the District possesses sufficient jurisdiction or property rights in groundwater located outside of the station's boundaries to assert its claims, it certainly must possess the same jurisdiction and rights to the water within those boundaries. The District's claim to "jurisdiction" over groundwater within its territory rests on language from its enabling statute authorizing it to "sue or be sued, except as otherwise provided . . . by law" and to "commence, maintain, intervene in, defend and compromise . . . actions and proceedings . . to prevent interference with water or water rights used or useful to lands within the District, or diminution of the quantity or pollution or contamination of the water supply." Cal. Water Code App. § 40-2(2) & (9). Nothing in this language or in the District's statements construing this language limits its jurisdiction only to groundwater outside the boundaries of a site at which alleged contamination has been released. Similarly, the District's alleged "legal right" to extract groundwater rests on what it describes as its "70 years" of continuous groundwater replenishment within its territory. (Axline Decl. In Supp. of Pl.'s Opp'n to Cognizable Interest Mot. (Feb. 23, 2006) Ex. 4 (Resp. No. 1(b).) Based on the District's own calculations, the "amount of water" that it claims to be entitled to extract in return for such replenishment is not less than the entire volume of groundwater within its territory available for extraction. (*Id.*) Because, under California law, accrual of the District's alleged causes of action

is based on "injury . . . to the property itself, rather than to the property owner," the District need not and -- for statute of limitations purposes, may not -- wait until MTBE is detected beyond a station's boundaries to assert these claims. *Beck Dev. Co. v. S. Pac. Transp. Co.*, 44 Cal. App. 4th 1160, 1216 (1996); *Wilshire Westwood Assoc. v. Atl. Richfield Co.*, 20 Cal. App. 4th 732, 739 (1993).

Second, as a matter of law, the remedial authority of the regulatory agencies actually engaged in remediating MTBE releases in the District's territory (the Santa Ana Regional Board and local agencies designated by that Board) is not limited to groundwater beneath the boundaries of a spill location.[17] *See* Cal. Water Code § 13304(a)-(c). (*See also* Decl. of Margaret Eggers In Supp. Of Defs' Supp. Br. (Feb. 15, 2007) (hereinafter "Eggers 2007 Supp. Decl.") ¶¶ 4-14; Defs.' 2007 Supp. Br. at 15, n.13 & n.14.) Under the Porter-Cologne Water Quality Act, these agencies (and not the District) have "primary responsibility for . . . control of water quality" throughout the District, and their mandate includes statutory power "to require complete cleanup of all waste discharged and the restoration of affected water to background conditions." (Finsten 2009 Decl. Ex. 1 (SWRCB Res. No. 92-49) at 1; *see also* Cal. Water Code § 13304.) As demonstrated in past briefing, these agencies are empowered by law to require responsible parties to take, or to undertake themselves, "any cleanup, abatement, or remedial work required" to remove contamination regardless of whether it is present at the original spill

---

[17] With respect to the District's own powers to act, no distinction exists between its purported ability to pursue claims against defendants at stations where offsite detections have been made as opposed to stations where they have not. Except in opposing the present motion, the District has always asserted that its authority to remediate MTBE contamination is "parallel" with (not subordinate to) that of the Regional Board and local regulators, and that it is free to act "independently" without waiting for either action or approval on the part of these agencies. *In re MTBE*, 2007 WL 700819 at *7 & n.68-n.70. In March 2008, when seeking to amend its complaint, the District's counsel unequivocally claimed to have "jurisdiction" to pursue claims at sites already being remediated by the Regional Board (although he asserted that the District has chosen not to do so). March 11, 2008 Tr. at 6.

location or has travelled elsewhere. (*E.g.*, Defs.' 2008 Supp. Br. at 11-14 & n.10; *accord* Eggers 2007 Supp. Decl. ¶¶ 5, 7-9, 16-19.)  Indeed, the District itself acknowledges that "the Regional Board has the power . . . to prevent, clean-up and abate any actual or threatened contamination of . . . groundwater resources within its boundaries." (Pl.'s 2008 Supp. Br. at 11 (quoting MOU with Regional Board).)  No meaningful distinction exists between the authority of these agencies to remediate MTBE found within a station's boundaries compared to MTBE found elsewhere, and no basis exists for the District to treat MTBE located outside a station's boundaries as having "escaped" the regulatory agencies.  In sum, the question of whether contamination is located on, or off, the station property can provide no basis to defer accrual of the District's claims.

Similarly, with respect to the District's second criterion for accrual, the District admittedly operates no production wells used to supply consumers.  By the time MTBE is detected in any such well, such MTBE must already have traveled through the subsurface over the long distances (often up to a mile or more) between the station at which it allegedly was released and the production well in which it is detected.  While traveling this distance, the MTBE must necessarily have been present in the District's alleged "property" -- groundwater located within the District's territory -- for a substantial time.[18]  Accordingly, MTBE's arrival at a production well in no way can trigger accrual of the District's claims.

### 2.     The District's accrual criteria concede that MTBE detected in groundwater at 5 ppb causes alleged "injury."

In its 2006 opinion, the Court emphasized the importance of determining the "level" of MTBE in groundwater which constitutes "appreciable harm." *Limitations Op.*, 475 F. Supp. 2d

---

[18] Moreover, when MTBE is detected in a water production well, the Regional Board enjoys express statutory authority to issue a "cleanup and abatement order" requiring responsible parties to supply "uninterrupted replacement water service" or "wellhead treatment" to the well owner. Cal. Water Code § 13304(a).

at 293, 296.  It was for this reason that the Court rejected two possible accrual standards for the

District's claims: (1) when "MTBE-blended gasoline was released" or (2) when "MTBE was

detected in groundwater."  *Id*. at 293.  As to the first, the Court found that no "appreciable harm"

exists until MTBE "travels . . . through the soil and actually enters the aquifer."  *Id*.  As to the

second, the Court found that "not every detection of MTBE results in a *contamination*," citing as

an example when "the levels of MTBE present in the groundwater [are] sufficiently de minimis .

. . ."  *Id*.  In its 2006 opinion, the Court directed the District to "define with . . . specificity what

level of contamination it claims constitutes appreciable harm."[19]  *Id*. at 295 n. 59.

Today, through its newly-adopted accrual criteria, the District has finally done just that.

In particular, the District selected California's 5 ppb secondary MCL (established in 1999) as the

level of contamination defining "appreciable harm" when MTBE is detected in groundwater.

(Finsten 2009 Decl. Ex. 4 (Feb. 23, 2009 Pre-Conference Reply Letter) at 3; Finsten 2009 Decl.

Ex. 5 (Feb. 6, 2009 Axline Letter) at 2).  This choice is unsurprising, because the District

previously had cited the 5 ppb MCL as "the *maximum* permissible level [of MTBE] in water."

(Pl.'s Opp'n to MCL Motion (Feb. 23, 2006) at 1 n.1. )  In its New York limitations opinion, the

Court reached the same conclusion.  *In re MTBE Prod. Liab. Litig.*, 2007 WL 1601491, at *7

("Once the MTBE concentrations pass the levels established by the state, the statute of

---

[19] Thus, in its 2006 opinion, the Court sought supplemental briefing addressing "whether any
[pre-May 6, 2000] releases did not result in appreciable harm until after that date . . . *because the
level of MTBE present in groundwater had not yet caused an injury*."  *Id*. at 296 (emphasis
added).  The Court stated:

> While this Court need not -- and indeed, on this record cannot --
> determine with specificity *what level of contamination constitutes
> appreciable harm as a matter of law*, OCWD clearly suffered
> appreciable harm *when the level of contamination at a particular
> location caused OCWD to act, or reasonably should have caused it
> to act* . . . .

*Id.* at 293 (emphasis added).

limitations begins to run as a matter of law"). Defendants also pointed in prior briefing to California's 5 ppb MCL as defining when "appreciable harm" exists for purposes of plaintiff's claims. (Defs.' 2008 Supp. Br. at 8-10; Defs.' 2007 Supp. Br. at 10-11)

The District's adoption of the 5 ppb threshold simplifies the statute of limitation analysis needed here. *See Limitations Op.*, 475 F. Supp. 2d at 295 n.59. When coupled with the District's many admissions contending that it is "charg[ed] [with] protecting all groundwater within [its] territory," the District's embrace of the 5 ppb threshold confirms that its claims at the focus plume stations are time-barred.[20]

### C.   The Discovery Rule Does Not Postpone Accrual Of The District's Claims.

California law governing when accrual of a plaintiff's claims can be deferred under the "discovery rule" has been extensively analyzed in past briefing. Here, defendants address the discovery rule only to the extent pertinent to the arguments above.

In its accrual criteria, the District presumably incorporated whatever considerations relating to the discovery rule it believed necessary. (*E.g.*, Pl.'s Supp. Br. Re Statute of Limitations ("Pl.'s 2007 Br.") (January 16, 2007), at 2 (asserting that "the 'discovery rule' in California goes *both* to the accrual of a cause of action *and* to . . . tolling" of the statute of limitation).) Each of the District's two criteria, moreover, rests on circumstances as to which the

---

[20] In its 2006 opinion, the Court determined that the District "suffered an injury prior to the limitations date" with respect to MTBE detected in the Santa Ana River, thereby causing its claims relating to the River to be "time-barred." *Limitations Op.*, 475 F. Supp. 2d at 298-99. The District's 2008 Reply brief asserted, with respect to MTBE detected in the River, that "defendants do not deny that there were significant additional releases prior to May 6, 2007 [*sic*]." (Pl.'s 2008 Reply Br. at 17.) To the contrary, no evidence links MTBE detected in the River to *any* release at any service station, whether located in the District's territory or elsewhere, taking place at any time. The District's chief hydrogeologist notes that the US Geological Survey attributes MTBE detected in the River to "airborne dispersion, rather than [any] stationary source." (Decl. of Roy Herndon (Feb. 28, 2007) ¶ 9.) Defendants' evidence submitted in prior briefing, showing repeated MTBE detections in the River before May 6, 2000, amply supports the Court's conclusion in its 2006 opinion.

District possessed, or had ready access to, contemporaneous information demonstrating when its criteria were satisfied. As to the first criterion, the monitoring well data needed to determine when MTBE was first detected in offsite wells was reported to the Regional Board or local regulators in written reports that were maintained in public files available to the District. *E.g.,* *Gutierrez v. Modfid*, 39 Cal. 3d 892, 896-97 (1985) (discovery rule satisfied when plaintiff had "the opportunity to obtain knowledge [of the facts] from sources open to [its] investigation"). As to the second criterion, the District itself is responsible for MTBE testing in the production wells located in its territory, and all data needed to apply this criterion came from either the District itself or its consultant, Friedman & Bruya.

In prior briefing, defendants demonstrated that the same is true with respect to the accrual standard established by California law. Again, the monitoring data needed to determine when MTBE had physically "intruded" into groundwater at levels above 5 ppb was contained at all relevant times in the public files at the Regional Board or local agencies available to the District.

## Conclusion

For the foregoing reasons, defendants' motion should be granted in all respects.

Dated: May 4, 2009

Respectfully submitted,

ARNOLD & PORTER LLP

By:   s/  Matter T. Bruy

Matthew T. Heartney (MH 3737)
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017  (213) 243-4000
Matthew_Heartney@aporter.com

Attorneys for Defendants Atlantic Richfield Company, BP Products North America Inc., and BP West Coast Products LLC and on behalf of each Defendant listed on Attachment A

## ATTACHMENT  A

**Defendants' Further Supplemental Memorandum in Support of Their Motion for
Summary Judgment Based on the Statute of Limitations**
***Defendants Joining in Motion***

Atlantic Richfield Company
BP Products North America Inc.
BP West Coast Products LLC
Chevron Texaco Corporation (n/k/a Chevron Corporation)
Chevron U.S.A. Inc.(individually and doing business as Chevron Products Co. and
      Chevron Chemical Co.)
CITGO Petroleum Corporation
ConocoPhillips Co., for itself and as successor-in-interest to Tosco Corporation
Lyondell Chemical Company
Moller Investment Group, Inc., formerly known as USA Gasoline Corporation
Shell Oil Company
Texaco Refining & Marketing Inc.
Tesoro Corporation (formerly Tesoro Petroleum Corporation)
Tesoro Refining and Marketing Company (erroneously named as Tesoro Refining and
      Marketing Company, Inc.)
Ultramar Inc.
Union Oil Company of California
Unocal Corporation
Valero Refining Company-California
Valero Marketing and Supply Company