## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
IN RE: METHYL TERTIARY BUTYL ETHER
PRODUCTS LIABILITY LITIGATION
------------------------------------------------------------X
This document relates to the following cases:
*City of New York*
*v. Amerada Hess Corp., et al.*, 04 Civ. 3417

------------------------------------------------------------X

Master File C.A. No. 1:00-1898
MDL 1358 (SAS)
M21-88

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
### JOINT MOTION IN LIMINE TO EXCLUDE EVIDENCE
### OF CUSTOMER TASTE AND ODOR COMPLAINTS

## I.  PRELIMINARY STATEMENT

Plaintiff alleges that MTBE concentrations at levels below New York's maximum contaminant level ("MCL") of 10 ppb cause the water to taste or smell bad to consumers, such that they complain about and reject it. Significantly, after more than five years of discovery, the City is unable to causally connect any taste or odor complaint to the presence of MTBE in the customer's water or anywhere in the distribution system for that matter. Plaintiff's taste and odor expert concedes he cannot and will not make any such connection. So do Plaintiff's Rule 30(b)(6) witness on taste and odor issues, its Lab Director and its Director of Drinking Water Quality.

This Court has ruled that for Plaintiff to prove its claimed injuries relating to taste and odor, it must establish a causal link between the proffered complaints and MTBE through evidence -- "other than statements of their belief [that the complaints likely resulted from

MTBE]" -- that the complaints "are actually due to MTBE contamination."[1] In re *Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, No. 1:00-1898, MDL 1358, 458 F. Supp. 2d 149, 159 & n. 57 (S.D.N.Y. 2006).

Since Plaintiff can establish no causal link, Plaintiff may not use any customer complaint evidence as proof of past damages.[2] Likewise, Plaintiff may not now use any such evidence to ask the jury to speculate about future damages, i.e., that some customer **may** complain about the taste and odor of her water at some point after 2016 (the earliest time at which any of these wells might actually be pumped) **if** the focus wells are ever actually turned on and **if** they actually serve customers at that time. To admit such evidence would cause irreparable prejudice to the defendants. Accordingly, Plaintiff's taste and odor evidence, in the form of customer complaint cards (including derivative databases and spreadsheets) and testimony relating thereto, should be excluded from evidence at trial.

## II. **CUSTOMER COMPLAINT EVIDENCE**

Aesthetic complaints relating to the water provided by Plaintiff to its customers exist in the form of so-called "customer complaint cards". Notations on a card begin when a customer

---

[1] Based on this 2006 ruling (which applies to this case and the three other focus cases) and Plaintiff's subsequent failure to connect the complaints to the actual presence of MTBE, moving Defendants believe that the City is precluded from submitting to the jury any claim for damages relating to taste and odor complaints (e.g., on any claim for sub-MCL damages). Defendants, therefore, reserve the right to move for a directed verdict on Plaintiff's claims for sub-MCL damages related to taste and odor.

[2] Moreover, as set forth in the Defendants' Motion to Exclude Evidence of Past Damages filed concurrently herewith, the City admits that it has no past damages for any of the five focus wells selected by Defendants. Further, the focus wells chosen by Plaintiff (the Station 6 wells) have not served water to customers since the City acquired them and, as such, the City admits it has received no complaints in connection with the water from those wells. *City Responses to Defendants' Requests for Admissions* (Nov. 14, 2006)("Plaintiff has never received complaints from customers because of MTBE contamination in the #6 well.").

2

calls the DEP hotline (now 311), and include the customer's name, address, a narrative description of the reason for the call, the location at which a water sample may have been taken, (e.g., kitchen tap, bathroom tap, hydrant), and comments, if any, by the person taking the sample.[3] Transcript of Virginia Murray Deposition ("Murray Dep."), dated November 19 & 20, 2008, at 72:22-73:14 & 140:21-142:9, attached hereto as **Exhibit A**.

Plaintiff's expert taste and odor witness, Harry Lawless, did not review any of the City's taste and odor complaint cards, nor did he speak to any City employees about customer complaints. Transcript of Lawless Deposition dated April 9, 2009 ("Lawless Dep."), attached as **Exhibit B**, at 58:8-22 & 58:23-59:4. Dr. Lawless admits that he will offer no opinion at trial linking any specific customer complaint to the presence of MTBE, at any level, in the City's wells. *See id.* at 58:23-59:4.

Likewise, Deputy Chief of the New York City Department of Environmental Protection for Water Quality Field Operations, Virginia Murray, whom Plaintiff designated as its 30(b)(6) witness on taste and odor, admits that she knows of no instances where a taste and odor complaint from Queens was determined to be attributable to MTBE:

11  Q. Are there any instances
12  that you can recall in your career with
13  the City of New York where a taste and
14  odor complaint registered by a resident
15  in Queens was identified as having been
16  caused by gasoline constituents,
17  including MTBE, in the distribution

---

[3] The data contained in the cards can be uploaded by Plaintiff into its Lab Information Management System ("LIMS") water quality database. From there, the data can also be exported into spreadsheet formats and other databases. *See* Murray Dep. at 143:8-22.

18 system?

19    A.    I don't think so.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

19    Q.    And the focus of my

20    question -- and if I have been inartful,

21    I apologize. I'm asking if you, as an

22    employee of the City, can recall

23    instances where you or your fellow

24    employees associated customer taste and

1    odor complaints in Queens with the

2    presence of MTBE in any well?

3    A.    No.

Murray Dep. at 121:11-19 & 96:19-97:3. Ms. Murray confirms that the City did not even test water samples for MTBE (or any other VOCs) at the tap in "the vast majority" of cases and did not, in any event, make any correlations between the complaints and MTBE. *See id.* at 85:4-15, 96:4-97:17, 119:8-17 & 425:8-17. Indeed, for the 14-year period from 1994 to 2008, Murray was only able to identify a single instance in which data relating to volatile organic compounds was measured from the water entering a customer's home. Moreover, she concedes that that instance did not involve a taste or odor complaint at all, but rather a complaint about an oily or greasy "sheen" in the customer's water.[4] *See id.* at 48:1-49:12.

---

[4]    Ms. Murray never reviewed any actual complaint cards herself because "they were too voluminous," and because if you've seen one, you've seen 'em all. Murray Dep. at 59:18-60:4; 139:11-140:5 ("I have seen so many sample cards and so many complaint cards in my 13 years, there was no need for me to look at complaint cards. You see one complaint card, you know what's there.") *See id.* 50:13-51:3; 54:19-21 & 59:12-17. She did not review any of the response letters from the City to the complaining customers reporting the results of sampling tests. *Id.* at 55:10-23 & 61:20-62-4. Nor did she review any laboratory samples or QA/QC data or speak to any City employees about the results of the testing performed. *Id.* at 54:14-18 & 57:11-58:2.

Similarly, Ian Hurley, the City's Laboratory Director formerly responsible for supervising and directing the collection and analysis of drinking water samples within the City's distribution system, confirmed that in his 13-year career with the City he is aware of no instances where the City ever found MTBE in the water supply to a complaining customer's tap:

24    Q.    In your career working in

90

1  the laboratory for the City of New York,

2  can you ever recall any instance where

3  you have become aware of the detection

4  of MTBE in a complaining customer's tap

5  water?

6    A.    I'm not aware of that.

Transcript of Ian Hurley Deposition, dated October 30, 2008, attached hereto as **Exhibit C,** at 89:24-90:6; *see also id.* at 90:23-91:23 & 94:18-95:3.

Finally, less than three weeks ago, Steven Schindler, the City's Director of Drinking Water Quality, admitted in his deposition that the City's lab told him that it has never linked a taste and odor complaint to MTBE. See Transcript of Steven Schindler Deposition, dated April 23, 2009, attached hereto as **Exhibit D,** at 72:7-15.

## III.    ARGUMENT

### A.    Evidence of Taste and Odor Complaints Must Be Excluded Absent Testimony Causally Linking the Complaints to the Actual Presence of MTBE

This Court has already ruled that, absent proof of a nexus between taste and odor complaints and MTBE as the cause of the complaints, Plaintiff cannot go to the jury with its claimed injuries relating to taste and odor. *See In re: MTBE Litigation,* 458 F. Supp.2d at 159

5

("plaintiffs have not presented any evidence (other than statements of their belief) that such complaints are actually due to MTBE contamination. Unless plaintiffs can produce evidence that these complaints are due to MTBE contamination, such speculation will be insufficient to defeat summary judgment in favor of defendants as to plaintiffs' claimed injuries relating to taste and odor.").

Here, establishing the requisite causal connection requires expert evidence, as Courts in the Second Circuit have routinely held that when the causal link between the proffered evidence and the alleged injury is sufficiently beyond the knowledge of a lay juror, a plaintiff must provide expert testimony to establish causation. *Hackl Enterprises, Inc. v. Dresser-Rand Co.*, 130 Fed. Appx. 495, 497 (2d Cir. 2005) (holding expert testimony required to establish cause of turbine falling off trailer); *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 46 (2d Cir. 2004) (holding expert testimony required to establish causation causal link between exposure to chemicals and death); *Fane v. Zimmer, Inc.*, 927 F.2d 124, 131 (2d. Cir. 1991) (holding expert testimony required to establish causal link between the placement of an internal fixation device and a broken bone); *Leboeuf v. Safeguard Ins. Co.*, 2007 WL 4151551, *2 (N.Y. Sup. Ct. 2007) (holding expert testimony required to establish causation for exposure to mold). Underlying the requirement is the prevention of jury confusion, unwarranted speculation and resulting prejudice. *See Hackl*, 130 Fed. Appx. at 497.

Plaintiff's burden of connecting individual customer complaint cards to the presence of MTBE in that customer's water requires intimate knowledge of the City's complex water distribution system and its sampling and testing protocols. These are well beyond the knowledge of the average lay juror. Plaintiff's expert witness, however, concedes that he will not connect

any of the complaints to the presence of MTBE in a customer's tap or in the distribution system. *See* Lawless Dep. at 58:23-59:4.

Even if the Court decides that expert testimony is not required, the City's own corporate designee on taste and odor issues and two other high-ranking City employees responsible for water quality both admit that no such causal connection has been or can be made. Accordingly, the requisite causal nexus does not exist, rendering irrelevant and inadmissible the customer complaint cards and any testimony relating to them.

## B. The Taste and Odor Evidence Must be Excluded to Avoid Impermissible Jury Speculation and Resulting Unfair Prejudice to the Defense

Evidence should be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury. Fed. R. Evid. 403; *United States v. Malpeso*, 115 F.3d 155, 163 (2d Cir. 1997). In keeping with this mandate, a jury is not permitted to speculate when weighing evidence at trial. *Radiation Dynamics, Inc. v. Goldmuntz*, 464 F.2d 876, 886-87 (2d Cir. 1972) (affirming District Court's directed verdict because evidence was tenuous and conjectural and could only lead to jury speculation). Indeed, a jury's role as the finder of fact does not entitle it to return a verdict based only on confusion, speculation or prejudice. *Newmont Mines Ltd. v. Hanover Ins. Co.,* 784 F.2d 127, 132 (2d Cir.1986) (quoting *Mallis v. Bankers Trust Co.,* 717 F.2d 683, 688-89 (2d Cir.1983)).

Because Plaintiff has not and cannot offer any evidence connecting any existing customer complaints to MTBE, any assessment of past taste and odor damages based on the complaint cards would be purely speculative. So, too, would any assessment of future damages. Indeed, the risk of unfair prejudice to the defense related to speculative future damages is even more egregious, particularly because the wells at issue may never be turned on and may never contain

.

7

MTBE, even if turned on at some nebulous point in the distant future. The complaint cards, therefore, are substantially more prejudicial than probative of any issue in this case and should be excluded from evidence under Rule 403.

## IV.   CONCLUSION

For each of the foregoing reasons, Defendants respectfully request that this Court exclude from evidence Plaintiff's customer complaint cards (and any derivative databases or spreadsheets) and any testimony relating thereto.

Dated: May 11, 2009                        **BLANK ROME LLP**

/s/ Jeffrey S. Moller_____
Alan J. Hoffman
Jeffrey S. Moller
Beth L. Haas
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 885-5000
*Attorneys for Defendants,
Lyondell Chemical Company and
Equistar Chemicals, LP*

8