UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X    Master File C.A. No. 1:00-1898
IN RE: METHYL TERTIARY BUTYL ETHER           MDL 1358 (SAS)
PRODUCTS LIABILITY LITIGATION                M21-88
------------------------------------------------------------X
This document relates to the following cases:
*City of New York*
*v. Amerada Hess Corp., et al.*, 04 Civ. 3417


------------------------------------------------------------X


MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
NOTICE OF JOINT MOTION AND MOTION *IN LIMINE*
TO EXCLUDE EVIDENCE OF PROTECTED LOBBYING CONDUCT[1]

I.     PRELIMINARY STATEMENT

As a matter of law, Defendants cannot be held liable for statements made to influence government action, even if those statements are alleged to have been deceptive. Defendants' right to engage in lobbying of state and federal governmental units is conferred by Article I of the United States Constitution and is protected by legal precedent known as the *Noerr-Pennington* doctrine. It is, therefore, well-settled that the introduction of evidence at trial which impinges on Defendants' constitutionally guaranteed right to lobby or petition the government is forbidden.

Defendants anticipate that Plaintiff will impermissibly attempt to introduce an array of evidence concerning Defendants' constitutionally protected lobbying activities. Indeed, a review of the operative complaint reveals that Plaintiff will try to convince the jury that Defendants'

---

[1] This motion is filed on behalf of Lyondell Chemical Company, Equistar Chemicals, LP, Crown Central LLC, TOTAL Petrochemicals USA, Inc., ExxonMobil Corporation, ExxonMobil Oil Corporation and Mobil Corporation.

lawful advocacy regarding MTBE to the government provides a basis for Plaintiff's tort and products liability claims. For example, Plaintiff asserts that "[d]efendants . . . aggressively *lobbied* EPA that the Products were safe substances, even though Defendants, by their own evidence, knew that MTBE posed substantial risks to groundwater." (Fourth Amend. Compl., ¶ 108). Plaintiff similarly contends that "ARCO Chemical, now Defendant Lyondell, openly promoted the environmental benefits of MTBE as a gasoline additive, without disclosing its known dangers and risks to groundwater, *to state legislatures and regulators* in Colorado, Arizona, and Nevada." *Id.* at 103. Plaintiff will also likely attempt to introduce evidence that Defendants formed an MTBE Committee to lobby the EPA to convince it that further tests of MTBE were not required. *Id.* at 105.

Under the *Noerr-Pennington* doctrine, Defendants have an absolute right to lobby the government without fear of suffering adverse consequences. As such, evidence of Defendants' lobbying activities is irrelevant and must be precluded at trial. In addition to the lack of relevance to the claims actually before the Court in this case, the admission of any evidence pertaining to Defendants' lobbying activities will confuse the issues, mislead the jury, and prejudice Defendants. Moreover, the introduction of such evidence is also likely to spur mini-trials, extending the length of a trial which is already expected to consume a significant amount of the Court's time and resources. Accordingly, all evidence, reference, and argument respecting Defendants' lobbying efforts and attempts to influence the government, including alleged misrepresentations or omissions, should be precluded from entry into evidence.

## II. ARGUMENT

### A. Legal Standard

Only relevant evidence is admissible at trial. Fed. R. Evid. 402; *see also Arlio v. Lively*, 474 F.3d 46, 52 (2d Cir. 2007). Federal Rule of Evidence 401 defines "relevant evidence" as

2

"evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. To satisfy Rule 401, the evidence must be probative of the proposition for which it is offered and the proposition itself must be of consequence to the determination of the action. *United States v. Kaplan*, 490 F.3d 110, 121 (2d Cir. 2007). The party seeking to admit evidence "has the burden of showing that the prerequisites for its admissibility are met." *Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627, 632 (2d Cir. 1994).

Even if relevant, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403; *Guidi v. Inter-Continental Hotels Corp.*, No. 95 Civ. 9006, 2003 U.S. Dist. LEXIS 6385, at *5-6 (S.D.N.Y. April 16, 2003). Evidence which by its very nature "chills the exercise of First Amendment rights is properly viewed as presumptively prejudicial." *United States Football League v. National Football League*, 634 F. Supp. 1155, 1181 (S.D.N.Y. 1986). Moreover, it is clear that the Court should exercise its discretion to exclude evidence where, if admitted, would result in a "mini-trial" on a collateral issue. *See United States v. Bowe*, 360 F.2d 1, 15-16 (2d Cir. 1966); *United States v. Graziano*, 558 F. Supp. 2d 304, 324 (E.D.N.Y. 2008) (excluding evidence on Rule 403 grounds which was purportedly relevant to motive in prosecution for arson because such evidence could lead to a unnecessary mini-trial on collateral issue).

B. The *Noerr-Pennington* Doctrine Precludes The Use Of Evidence Or Testimony Concerning Defendants' Attempts to Influence Government Action Concerning MTBE.

Under the *Noerr-Pennington* Doctrine, efforts to influence government are considered protected speech and are afforded heightened protections under the First Amendment. *See Eastern R.R. Presidents Conference v. Noerr Freight Co.*, 365 U.S. 127 (1967); *United Mine Workers v. Pennington*, 381 U.S. 657 (1965). Although first applied in the antitrust context, the doctrine has since been extended to bar liability for common law tort claims premised on petitioning activity – including the type of negligence and product-liability claims asserted in this case. *See, e.g., Clark Consulting, Inc. v. Financial Solutions Partners LLC*, No. 05 Civ. 06296 (SAS), 2005 U.S. Dist. LEXIS 28642, *12 (S.D.N.Y. November 17, 2005) (Sheindlin, J.) ("courts have extended the *Noerr-Pennington* doctrine so that it shields parties from state tort liability as well as antitrust liability when they petition the government for action favorable to them."); *Friends of Rockland Shelter Animals, Inc. v. Mullen*, 313 F. Supp. 2d 339, 343 (S.D.N.Y. 2004) (holding *Noerr-Pennington* doctrine applicable in economic tort case outside antitrust context); *Dr. Reddy's Labs., Ltd. v. AaiPharma Inc.*, No. 01 Civ. 10102, 2002 U.S. Dist. LEXIS 17287 at *40 (S.D.N.Y. Sept. 19, 2002) (holding *Noerr-Pennington* applies to tortuous interference claims); *Hamilton v. Accu-Tek*, 935 F. Supp. 1307, 1316-1317 (E.D.N.Y. 1996) (holding *Noerr-Pennington* applies in action for negligence, product liability, and fraud). Moreover, the protections afforded by the *Noerr-Pennington* doctrine broadly encompass all types of advocacy designed to influence government action, including the petitioning of administrative agencies and state legislatures. *See Tuosto v. Philip Morris USA, Inc.*, No. 05 Civ. 9384, 2007 U.S. Dist. LEXIS 61669, *14 (S.D.N.Y. Aug. 21, 2007). The protection applies even where, as here, a defendant's advocacy is alleged to be unethical, deceptive, or misleading. *Noerr*, 365 U.S. at 140; *see also Tuosto*, 2007 U.S. Dist. LEXIS 61669 at *15.

The evidence Plaintiff will seek to introduce falls squarely within the category of evidence which should be excluded under the *Noerr-Pennington* doctrine. In essence, Plaintiff will attempt to utilize Defendants' efforts to lobby USEPA and state legislatures, among other governmental actors, to prove Plaintiff's tort and product liability claims. Plaintiff alleges that certain defendants (all of which are competitors with one another) have joined together to petition the government to act in a certain way, – i.e., to approve MTBE for use in certain gasoline – that benefited each defendant economically and caused injury to Plaintiff. This is precisely the type of conduct that the *Noerr-Pennington* doctrine protects from litigation's scrutiny.

### C. There Are No Exceptions Which Apply To Limit The Application Of The *Noerr-Pennington* Doctrine In This Case.

No exception applies to limit the application of the *Noerr-Pennington* doctrine to the evidence Plaintiff seeks to admit. Although Plaintiff may allege that statements or representations made by Defendants during the course of their lobbying were untrue, such allegations are irrelevant to the *Noerr-Pennington* analysis. It is well-established that "[e]ven lobbying activities that are unethical or result in deception are not actionable under the *Noerr-Pennington* doctrine." *Friends of Rockland*, 313 F. Supp. at 344; *see also Armstrong Surgical Ctr. v. Armstrong County Memorial Hospital*, 185 F.3d 154, 163-163 (3d Cir. 1999) ("liability for injuries caused by state [regulatory] action is precluded even where it is alleged that a private party urging the action did so by bribery, deceit, or other wrongful conduct that may have affected the decision making process.").

Indeed, the *only* exception to the protections afforded by *Noerr-Pennington* is for "sham" petitions to the government – that is, situations in which persons use the governmental process itself – "as opposed to the outcome of that process" – to cause direct harm or to harass another

party. *Alfred Weissman Real Estate, Inc. v. Big V. Supermarkets, Inc.*, 707 N.Y.S.2d 647, 654 (App. Div. 2000) (*citing City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 380 (1991)). Since such an assertion amounts to an abuse of process claim, it follows that where the defendant in fact *intended* to cause the government to act (as alleged here), and in fact *caused* the government to act (as also alleged here), the effort by definition, was not a sham. *See Real Estate Investors v. Columbia Pictures*, 508 U.S. 49, 56-59 (1993). Since, by definition, a sham must involve a baseless abuse of process, "a successful effort to influence government action cannot be considered a sham." *Id.* at 58.

Plaintiffs obviously do not suggest that Defendants' alleged lobbying was not "genuinely intended to influence the government." Instead, they claim precisely the opposite – that Defendants colluded to misinform the government about MTBE in order to induce the government to create a market for MTBE and maximize sales. Fourth Amend. Compl. At ¶ 109. Thus, based on Plaintiff's own allegations – inaccurate and frivolous as they are – the subject lobbying activity concerning MTBE fits squarely within the protections provided by the *Noerr-Pennington* doctrine and is not subject to any exceptions.[2]

---

[2] Plaintiff will likely attempt to argue that the *Noerr-Pennington* doctrine is inapplicable to exclude categories of evidence. This argument is a misinterpretation of the doctrine. Courts recognize the need to exclude evidence pursuant to the *Noerr-Pennington* doctrine in order to safeguard a defendant's constitutional rights. *See Schwab v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 992, 1084 (E.D.N.Y. 2006) (*rev'd on other grounds*) (court will hear motions *in limine* with respect to evidence that may qualify for protection under *Noerr-Pennington*); *United States v. Johns-Manville Corp.*, 259 F. Supp. 440, 454 (E.D.Pa. 1966) (noting that it would be illogical and constitutionally impermissible to permit an inference of unlawfulness to be drawn from lawful lobbying activity); *see also* Robert P. Faulkner, *Evidence of First Amendment Activity at Trial: The Articulation of a Higher Evidentiary Standard*, 42 UCLA L. Rev. 1, 30 (1994) (arguing for necessity of high evidentiary standard to protect first Amendment Rights under *Noerr-Pennington*).

### D. The Introduction Of Evidence Of Defendants' Lobbying Activities Would Be Prejudicial, Mislead The Jury, And Cause Undue Delay.

Even if Plaintiff were to argue that evidence of Defendants' lobbying activities is relevant to show Defendants' intent or knowledge, such evidence should be excluded because its probative value is substantially outweighed by the danger of unfair prejudice. Indeed, a party's attempted proffer of *Noerr-Pennington* evidence at trial triggers significant First Amendment concerns. As such, because the doctrine is "designed to protect the exercise of First Amendment rights," admissibility should be governed by Fed. R. Evid. 403, and evidence of lobbying activity should be "***properly viewed as presumptively prejudicial.***" *U.S. Football League*, 634 F. Supp. at 1180-1181; *see also Feminist Women's Health Center v. Mohammed*, 586 F.2d 530, 543 n.7 (5th Cir. 1978) (holding evidence inadmissible where evidentiary value was "far outweighed" by defendants' First Amendment interests). Finally, such evidence should be excluded if its introduction would result in a "mini-trial" on a collateral issue. *See Bowe*, 360 F.2d 1, 15-16 (2d Cir. 1966); *Graziano*, 558 F. Supp. 2d at 324.

Here, introduction of evidence of Defendants' lawful lobbying activities should be regarded as presumptively prejudicial and excluded. Not only would the introduction of such evidence potentially impinge on Defendants' First Amendment rights, but it has a high probability of confusing and misleading the jury since there is no nexus between Defendants' lobbying efforts and the alleged injury. Indeed, the negative connotations evoked by evidence of lobbying could, in itself, cause the jury to draw impermissible inferences. In any event, the introduction of evidence of Defendants' petitioning of the government would likely squander Court time and resources as it would give rise to "mini-trials" on these discrete, collateral issues.

## III. CONCLUSION

For each of the foregoing reasons, Defendants respectfully request that all evidence, reference, and argument respecting Defendants' lobbying efforts and attempts to influence the government, including alleged misrepresentations or omissions, should be precluded from entry into evidence.

Dated: May 11, 2009

**BLANK ROME LLP**

/s/ Jeffrey S. Moller
Alan J. Hoffman
Jeffrey S. Moller
Beth L. Haas
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 885-5000
*Attorneys for Defendants,*
*Lyondell Chemical Company and*
*Equistar Chemicals, LP*