UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation<br><br>This document pertains to:<br><br>*City of New York v. Amerada Hess Corp. et al.*,<br>Case No. NY-04-CV-03417 | Master File No. 1:00-1898<br>MDL 1358 (SAS)<br>M21-88 |

### DECLARATION OF STEPHEN J. RICCARDULLI IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE PLAINTIFF FROM INTRODUCING EVIDENCE OR ARGUMENT: (1) RELATING TO NON-PARTIES AGAINST DEFENDANTS; OR (2) RELATING ONLY TO ONE DEFENDANT AGAINST MULTIPLE DEFENDANTS

STEPHEN J. RICCARDULLI, an attorney duly licensed to practice law in the State of New York and in the United States District Court for the Southern District of New York, hereby declares the following under penalties of perjury:

1. I am a member of the law firm McDermott Will & Emery LLP, counsel for defendant Exxon Mobil Corporation (hereinafter "ExxonMobil") in the above-captioned matter. I respectfully submit this Declaration in further support of Defendants' *Motion in Limine to Preclude Plaintiff From Introducing Evidence or Argument: (1) Relating to Non-Parties Against Defendants; or (2) Relating Only to one Defendant Against Multiple Defendants* (hereinafter "Motion") that is being filed concurrently herewith in the above-referenced cases on behalf of Mobil Corporation; ExxonMobil Oil Corporation; Mobil Corporation; Lyondell Chemical Company; Equistar Chemicals, LP; Crown Central LLC; and Total Petrochemicals USA, Inc (collectively "Defendants"). This Declaration authenticates the exhibits attached and referenced in Defendants' Motion. In accordance with this Court's Individual Rules and Procedures, only the relevant parts of each exhibit are attached.

2.  Attached at Exhibit A are true and correct copies of the relevant pages from the September 26, 2001 transcript from the trial in the case of *South Tahoe Public Utility District vs. Atlantic Richfield Company, et al.*, No. 999128 in the Superior Court of the State of California, San Francisco County (pp. 93:22-25, 94:1-2). The attached copy was made at the direction of the undersigned on or around May 11, 2009.

3.  Attached at Exhibit B are true and correct copies of the relevant pages from the October 1, 2001 transcript of Plaintiff's opening statement at the trial in the case of *South Tahoe Public Utility District vs. Atlantic Richfield Company, et al.*, No. 999128 in the Superior Court of the State of California, San Francisco County (pp. 480:2-5, 483:17-18; 485:10). The attached copy was made at the direction of the undersigned on or around May 11, 2009.

Dated: New York, New York
May 11, 2008

_____
STEPHEN J. RICCARDULLI

EXHIBIT A

```
                    SUPERIOR COURT OF CALIFORNIA

                      COUNTY OF SAN FRANCISCO

            BEFORE THE HONORABLE CARLOS T. BEA, JUDGE PRESIDING

                         DEPARTMENT NUMBER 514

                              ---oOo---
```

SOUTH TAHOE PUBLIC UTILITY )
DISTRICT, )
        PLAINTIFFS, ) CASE NO. 999128
VS. )
ATLANTIC RICHFIELD CO., ET )
AL., )
        DEFENDANTS. )

COPY

### REPORTER'S TRANSCRIPT OF PROCEEDINGS

WEDNESDAY, SEPTEMBER 26, 2001

**APPEARANCES OF COUNSEL:**

FOR PLAINTIFFS:

    MILLER, SHER & SAWYER
    UNIVERSITY PARK OFFICES
    100 HOWE AVENUE, SUITE S120
    SACRAMENTO, CA 95825-8218
    BY: **DUANE MILLER, ESQ.**
        **VICTOR SHER, ESQ.**

FOR DEFENDANTS SHELL OIL, TEXACO, EQUILON:

    SEDGWICK, DETERT, MORAN & ARNOLD
    ONE EMBARCADERO CENTER, 16TH FLOOR
    SAN FRANCISCO, CA 94111-3765
    BY: **STEPHEN JONES, ESQ.**

FOR DEFENDANTS TOSCO:

    LATHAM & WATKINS
    633 WEST FIFTH STREET, SUITE 4000
    LOS ANGELES, CA 90071-2007
    BY: **JOHN LYONS, ESQ.**
        **JON ANDERSON, ESQ.**

REPORTED BY: RHONDA L. AQUILINA, CSR #9956, RMR, CRR

DOCUMENTS WERE ATLANTIC RICHFIELD, NOT ARCO CHEMICAL COMPANY DOCUMENTS.

WELL, I SUPPOSE -- DO YOU THINK, AS I START READING THESE, THEY'LL BE REPETITIVE OBJECTIONS, AND I'LL BE ABLE TO GET THROUGH THEM A LITTLE FASTER? I'M JUST TRYING TO SCHEDULE -- I WOULD LIKE TO KEEP FRIDAY TO YOURSELVES AND NOT HAVE YOU COME BACK.

**MR. MILLER:** THERE ARE VARIOUS REASONS WHY WE'RE GOING TO BE HERE FRIDAY ANYWAY, I BELIEVE. MAYBE I'M NOT SPEAKING FOR EVERYONE, BUT MANY OF US.

**THE COURT:** PARDON ME. I DIDN'T CATCH WHAT YOU SAID.

**MR. MILLER:** YOUR HONOR, MANY OF US WILL BE IN SAN FRANCISCO ON FRIDAY FOR OTHER REASONS ANYWAY.

**THE COURT:** ANYWAY, SO YOU CAN BE HERE?

**MR. MILLER:** CERTAINLY PLAINTIFFS CAN BE ANY DAY YOU WANT. YOUR TIME IS OURS.

**MR. ANDERSON:** AND I THINK SPEAKING ONLY FOR MYSELF, TO BE HERE FRIDAY --

**THE COURT:** IDENTIFY YOURSELF FOR THE RECORD.

**MR. ANDERSON:** YOUR HONOR, I'M JON ANDERSON, LATHAM AND WATKINS, FOR TOSCO.

MR. LYONS IS TRAVELLING BACK FROM OUR OFFICE, AND HE'S TRAVELLING HOME TONIGHT. WE'RE FROM LOS ANGELES, SO I'M GOING HOME. I'LL HAVE TO COME BACK FOR FRIDAY AS OPPOSED TO STAYING FOR TOMORROW. BUT IF THE GROUP VOTES FOR FRIDAY, I CAN GO WITH IT.

**THE COURT:** WELL, YOU FOLKS KNOW YOUR PAPERS A LOT BETTER THAN I DO, SINCE I HAVEN'T READ THEM YET. THERE ARE THREE

DOCUMENTS WHICH ARE ABOUT AN INCH AND-A-QUARTER THICK, AND TO DO JUSTICE TO THEM I'M GOING TO HAVE TO SPEND SOME TIME WITH THEM. SO PERHAPS WE HAVE TO GO BACK ON WHAT WE SAID AND GIVE YOU TOMORROW OFF, LIKE WE AGREED TO DO, AND HAVE YOU -- BECAUSE I DO WANT TO DO THIS BEFORE THE JURY COMES IN MONDAY. I HAVE TO DO IT.

MR. MILLER: YES, YOUR HONOR, WE WOULD APPRECIATE THAT. AND SINCE THESE PAPERS WERE KIND OF HANDED TO US AT THE BEGINNING OF THE DAY, WE, OF COURSE, DIDN'T GET A CHANCE -- I DON'T PROPOSE TO WRITE ANY BRIEF THAT COVERS EVERY SINGLE EXHIBIT AND FURTHER BURDENS THE COURT, BUT THERE MAY BE A CASE OR TWO WE BELIEVE WOULD BE PARTICULARLY SALIENT AND HELPFUL THAT WE WOULD LIKE TO GET TO THE COURT, AND WE RECOGNIZE WE NEED TO DO THAT FAIRLY SOON.

ALL RIGHT. SO IT'S STARTING TO LOOK TO ME LIKE THE BEST THING TO DO, FOLLOWING THE ADVICE THAT MR. JONES GAVE ME, IS THAT FIRST OF ALL READ THE LYONDELL BRIEF AND MAKE RULINGS, THEN I'LL READ THE SHELL BRIEF AND THEN THE ULTRAMAR AND TOSCO BRIEF, RIGHT?

MR. ANDERSON: YOUR HONOR, THE TOSCO BRIEF -- THIS IS JON ANDERSON AGAIN.

THE TOSCO BRIEF SIMPLY IDENTIFIES THREE DIFFERENT CATEGORIES OF DOCUMENTS: ONE WOULD BE DOCUMENTS THAT ARE NON-PARTIES; THE SECOND CATEGORY IS DOCUMENTS OF PARTIES OTHER THAN TOSCO, AND BOTH HAVE SIMILAR ISSUES AS FAR AS THEIR RELEVANCE TO TOSCO AND BEING HEARSAY; AND THE THIRD IS A SINGLE GOVERNMENT DOCUMENT. I DON'T RECALL WHAT EXHIBIT NUMBER THAT WAS, BUT WE REFER TO THAT IN OUR VERY SHORT BRIEF WHERE WE HAVE ADDITIONAL QUESTIONS ON

THAT.

AS A GENERAL COMMENT THOUGH, YOUR HONOR -- AND I THINK ULTRAMAR WOULD JOIN IN THIS CONCEPT -- IN TERMS OF THE OPENING STATEMENT AND ARGUMENT WHEN WE GET TO THAT POINT, THERE HAVE BEEN A LOT OF REFERENCES TO, QUOTE, DEFENDANTS OR THE OIL INDUSTRY. AND WITHIN THE GROUP OF DEFENDANTS, AND WITHIN THOSE WHO ARE INVOLVED IN THE OIL INDUSTRY, THERE ARE VERY SIGNIFICANT DISTINCTIONS IN THIS CASE AS TO WHAT EVIDENCE APPLIES TO WHICH DEFENDANT.

AND WE WOULD GENERALLY REQUEST THAT WHEN REFERENCES ARE MADE IN OPENING STATEMENT, THAT THEY BE DEFENDANTS SPECIFICALLY, AS OPPOSED TO SIMPLY GROUPING ALL THE DEFENDANTS TOGETHER, FOR REASONS WE'VE SEEN WITH THESE DOCUMENTS, TO THE EXTENT WE'VE GONE THROUGH THEM TODAY.

MR. SHER: YOUR HONOR, I THOUGHT WE COVERED THAT WITH YOUR LIMITING INSTRUCTION WHICH WAS BEFORE MR. ANDERSON JOINED US.

MR. ANDERSON: NO, I'VE BEEN HERE THE ENTIRE TIME.

THE LIMITING INSTRUCTIONS I THINK ASSUMED THAT MR. MILLER IN HIS OPENING STATEMENT WOULD BE DEFENDANT-SPECIFIC AS YOU TALKED ABOUT THE EVIDENCE, AND NOT THAT THE JURY HAS TO SORT THAT OUT LATER ON.

THE COURT: WELL, IN THE ASBESTOS CASES WE ALWAYS TELL THE PLAINTIFFS DON'T REFER TO THE ASBESTOS INDUSTRY, AND REFER TO DEFENDANTS INDIVIDUALLY, BECAUSE THEY ALL HAVE A RIGHT TO HAVE A CASE TRIED AGAINST THEM INDIVIDUALLY.

MR. ANDERSON: THAT'S OUR POINT.

THE COURT: THAT'S A BAJI INSTRUCTION, SO DO THAT. I THINK YOU SHOULD DO THAT. I MEAN, YOU CAN'T -- I DON'T KNOW VERY MUCH

1  ABOUT THE CASE, BUT YOU CAN'T TAR ALL DEFENDANTS WITH THE SAME
2  BRUSH. IN VIEW OF POSITIONS TAKEN AGAINST MTBE BY TOSCO WE'VE
3  HEARD OF TODAY, AND THE ARCO SITUATION, I THINK IT MIGHT BE
4  MISLEADING TO THE JURY TO JUST REFER THAT ALL DEFENDANTS KNEW
5  ALL THIS STUFF, YET THEY DID THIS.
6  **MR. MILLER:** I DON'T THINK I WOULD APPROACH OPENING
7  STATEMENT THAT WAY, YOUR HONOR, BUT I IMAGINE IT WOULD BE VERY
8  DIFFICULT TO GET THROUGH THIS WHOLE TRIAL WITHOUT USING THE
9  WORDS "OIL COMPANIES" OR "OIL INDUSTRY" AT SOME POINT, AND I'M
10 SURE THERE ARE APPROPRIATE SETTINGS FOR THOSE WORDS.
11 SO, AGAIN, AS TO THESE DOCUMENTS, YOU'VE CLEARLY INSTRUCTED
12 ME THAT I'M TO GO THROUGH AND EXPLAIN BRIEFLY WHO IT'S AGAINST,
13 WHICH I WILL ENDEAVOR TO DO.
14 **THE COURT:** MR. DE RECAT?
15 **MR. DE RECAT:** THANK YOU, YOU YOUR HONOR.
16 JUST SO YOU DON'T GET CONFUSED, ULTRAMAR DID NOT SUBMIT A
17 BRIEF. WE'RE SIMPLY JOINING IN THE OBJECTIONS OF TOSCO.
18 **THE COURT:** ULTRAMAR DID NOT SUBMIT A BRIEF?
19 **MR. DE RECAT:** WE DID NOT SUBMIT AN INDEPENDENT BRIEF, BUT
20 WE WILL JOIN IN THE SAME ISSUES RAISED AND OBJECTIONS SUBMITTED
21 BY TOSCO.
22 **THE COURT:** OH, OKAY.
23 **MR. DE RECAT:** WE FIGURED YOU HAD ENOUGH PAPER.
24 **MR. MILLER:** YOUR HONOR, IF YOU'RE GOING TO REVIEW THEIR
25 BRIEFS, I THINK WE PROBABLY SHOULD HAVE AN OPPORTUNITY TO SUBMIT
26 SOMETHING QUICKLY SO THAT YOU HAVE OUR POSITION IN WRITING AS
27 WELL. BECAUSE IF YOUR DECISION IS GOING TO BE BASED ON PAPERS,
28 I'M SURE YOU RECOGNIZE THE NEED TO GIVE US A CHANCE WHICH WE

EXHIBIT B

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

BEFORE THE HONORABLE CARLOS T. BEA, JUDGE PRESIDING

DEPARTMENT NUMBER 514

---oOo---

| | |
|---|---|
| SOUTH TAHOE PUBLIC UTILITY DISTRICT, <br><br> PLAINTIFFS, <br><br> VS. <br><br> ATLANTIC RICHFIELD CO., ET AL., <br><br> DEFENDANTS. | CASE NO. 999128 <br><br> PAGES 467 - 583 <br> VOLUME 4 |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

MONDAY, OCTOBER 1, 2001

APPEARANCES OF COUNSEL:
FOR PLAINTIFFS:

    MILLER, SHER & SAWYER
    UNIVERSITY PARK OFFICES
    100 HOWE AVENUE, SUITE S120
    SACRAMENTO, CA 95825-8218
    BY: DUANE MILLER, ESQ.
        VICTOR SHER, ESQ.

FOR DEFENDANTS SHELL OIL, TEXACO, EQUILON:

    SEDGWICK, DETERT, MORAN & ARNOLD
    ONE EMBARCADERO CENTER, 16TH FLOOR
    SAN FRANCISCO, CA 94111-3765
    BY: STEPHEN JONES, ESQ.

FOR DEFENDANTS TOSCO:

    LATHAM & WATKINS
    633 WEST FIFTH STREET, SUITE 4000
    LOS ANGELES, CA 90071-2007
    BY: JOHN LYONS, ESQ.
        JON ANDERSON, ESQ.

REPORTED BY: RHONDA L. AQUILINA, CSR #9956, RMR, CRR
                JO ANN BRYCE, CSR #3321, RMR, CRR

1  SAY ABOUT MTBE AND WHETHER OR NOT IT'S A SIGNIFICANT PROBLEM.
2  THIS DOCUMENT IS A SHELL DOCUMENT, SO THIS IS TO BE
3  CONSIDERED AGAINST SHELL, AS I EXPLAINED EARLIER. I WON'T
4  REPEAT THAT EACH TIME, BUT I WANT TO MAKE SURE AT THE BEGINNING
5  THAT YOU UNDERSTAND THOSE RULES.
6  THIS DOCUMENT IS DATED MAY 13, 1998, AND OF COURSE I'M SURE
7  MOST OF YOU RECOGNIZE THIS IS ONE OF OUR MODERN CREATIONS, AN
8  E-MAIL. IT'S FROM CURT STANLEY. HE IS A HYDROGEOLOGIST. HE'S
9  EMPLOYED BY THE SHELL OIL COMPANY. HE WORKS AT THE SHELL
10 CORPORATE HEADQUARTERS. FOR A LONG TIME HE HAS BEEN ONE OF
11 THEIR PRINCIPAL SCIENTISTS DEALING WITH MTBE. IN FACT, AS THIS
12 DOCUMENT POINTS OUT, HE'S BEEN WORKING ON THE PROBLEM SINCE
13 1980, A LONG TIME BEFORE 1996 WHEN IT BECAME A PROBLEM FOR MY
14 CLIENT.
15 MR. STANLEY WILL TESTIFY IN THIS CASE. AND IN THIS INTERNAL
16 SHELL DOCUMENT, HE STATES, "MTBE IS ONE OF THE BIGGEST
17 ENVIRONMENTAL ISSUES THAT U.S. OIL COMPANIES ARE FACING DUE TO
18 MTBE'S WIDE OCCURRENCE IN GROUNDWATER."
19 NOW, AT THE TIME THIS STATEMENT WAS MADE, MTBE WAS SHOWING
20 UP NOT JUST IN THE NORTHEAST WHERE MTBE WAS FIRST USED -- AND
21 I'M GOING TO EXPLAIN THAT A LITTLE BIT MORE -- BUT ALSO IN
22 CALIFORNIA, BECAUSE THIS IS A 1998 DOCUMENT.
23 SECOND, IT HAS A HIGH MIGRATION POTENTIAL. WHAT DOES THAT
24 MEAN? SOME CHEMICALS, WHEN YOU SPILL THEM ON THE SOIL, STICK TO
25 THE SOIL. THEY DON'T GO ANYWHERE. THEY DON'T REACH WELLS.
26 MTBE IS DIFFERENT. IT DOESN'T ADHERE TO THE SOIL. WHEN IT'S
27 SPILLED, IT CAN GO DOWN THROUGH THE SOIL TO GROUNDWATER AND MOVE
28 WITH GROUNDWATER FOR SIGNIFICANT DISTANCES, EVEN A MILE. AND

1  THOSE TYPES OF SYSTEMS.
2      DID SHELL KNOW A LONG TIME AGO THAT SMALL AMOUNTS OF MTBE
3  COULD CAUSE A PROBLEM WITH DRINKING WATER?  THIS IS ON SHELL OIL
4  COMPANY LETTERHEAD.  IT'S DATED 1983.  IT'S BY MR. KIRKPATRICK
5  WHO SENT A COPY TO CURT STANLEY, THE SAME GENTLEMAN.  HE SENT
6  THE PRIMARY LETTER TO THE AMERICAN PETROLEUM INSTITUTE TO SHARE
7  THIS INFORMATION WITH THEM, AND THEY REPORTED THAT MTBE IN
8  ROCKAWAY, NEW JERSEY -- IT DOESN'T MENTION ROCKAWAY HERE, BUT
9  THE EVIDENCE WILL BE THAT THEY'RE REFERRING TO THAT SITE -- MTBE
10 COULD BE TASTED AT CONCENTRATION OF 7 TO 15 PARTS PER BILLION.
11     SO EVEN IF IT DIDN'T CREATE A HEALTH PROBLEM, IT WOULD HAVE
12 TO BE REMOVED BECAUSE IT COULD BE TASTED.
13     THE EVIDENCE WILL BE OVER TIME THEY LEARNED THAT LEVELS
14 LOWER THAN THIS, ALTHOUGH THE PART PER BILLION IS A SMALL THING,
15 LEVELS LOWER THAN 7 PARTS PER BILLION COULD CAUSE A PROBLEM.
16     SHELL WASN'T THE ONLY ONE WHO OBTAINED INFORMATION ABOUT
17 THESE INCIDENTS.  THIS IS A 1984 DOCUMENT.  IT'S AN ARCO
18 CHEMICAL COMPANY DOCUMENT.  AND AS IT EXPLAINS, IT'S INTERNAL
19 CORRESPONDENCE AND IT'S FROM ONE EMPLOYEE OF ARCO CHEMICAL TO
20 ANOTHER.
21     THEY REPORTED THAT THERE WAS A MEETING ON JUNE 12TH, 1984,
22 THAT REPRESENTATIVES OF SHELL, TEXACO AND ARCO CHEMICAL WERE
23 PRESENT NAMING THEM, AS WELL AS SOME OTHER OIL COMPANIES, AND
24 THEY'RE TALKING TO EACH OTHER ABOUT MTBE.  AND EVEN BACK IN 1984
25 THEY ACKNOWLEDGE THAT IT'S A POTENTIAL GROUNDWATER CONTAMINANT.
26 THEY ACKNOWLEDGE THAT THEY KNOW THAT IT'S ASSOCIATED WITH
27 LEAKING GASOLINE STORAGE TANKS AND THEY'RE SAYING, "WHAT WE NEED
28 TO DO" -- DR. CONAWAY EXPRESSED A DESIRE TO OBTAIN TASTE AND

1   FROM THESE INCIDENTS AND OTHER DOCUMENTS CONCERNING THIS
2   THAT YOU WILL SEE, IT WAS LEARNED IT'S NOT JUST A PROBLEM FOR
3   DRINKING WATER. IF YOU TAKE A SHOWER, YOU CAN SMELL THE ODOR OF
4   THE CHEMICAL IF IT'S IN THE WATER AT A LEVEL THAT WILL CAUSE
5   THAT EFFECT. IF YOU MAKE ICE CUBES, THEY'RE NOT ORDINARY ICE
6   CUBES. YOU CAN TELL THE DIFFERENCE. SO IT HAS A WIDE ARRAY OF
7   EFFECTS ON DRINKING WATER.
8       WAS SHELL THE ONLY ONE WHO LEARNED ABOUT THESE TYPES OF
9   INCIDENTS IN THE NORTHEAST? NO.
10      THIS IS A TEXACO DOCUMENT, AGAIN AN INTERNAL DOCUMENT,
11  APRIL 28TH, 1981. I'M SORRY, YEAH, IT SAYS "'81" HERE
12  (INDICATING) AND I SEE "'82" HERE (INDICATING). BUT THIS IS A
13  SHOPPING CENTER IN MILTON, NEW JERSEY, AND PEOPLE WERE GOING UP
14  TO THE DRINKING FOUNTAIN. THEY HAD ALREADY PUT A FILTER ON THE
15  WELL TO TRY TO REMOVE WHAT THEY THOUGHT WERE HYDROCARBONS; IN
16  OTHER WORDS, GASOLINE. WHEN THEY TESTED THE WATER, THEY DIDN'T
17  FIND HYDROCARBONS. WHAT THEY FOUND WAS MTBE AT 200 PARTS PER
18  BILLION AFTER THE FILTER. IT HAD GONE THROUGH THE FILTER THAT
19  THEY HAD PUT THERE IN AN ATTEMPT TO CLEAN UP THE WATER.
20
21
22
23      ALTHOUGH SHELL BY 1990 IN NEW JERSEY ALONE HAD MORE THAN 100
24  TOWNSHIPS AND CITIES WHERE THEY KNEW MTBE HAD BEEN DETECTED IN
25  GROUNDWATER, THEY DIDN'T PUBLISH ANY ARTICLES DISSEMINATING THAT
26  INFORMATION, WHICH IS A NORMAL WAY TO GET THAT INFORMATION OUT.
27      BUT BY 1986 MTBE WAS BEING USED IN MAINE AND TWO SCIENTISTS
28  WITH THE MAINE DEPARTMENT OF ENVIRONMENTAL PROTECTION PRESENTED