# EXHIBIT A

```
                              7AV5MTBf.txt
                                                                          1
         7AV5MTB1
    1    UNITED STATES DISTRICT COURT
    1    SOUTHERN DISTRICT OF NEW YORK
    2    ------------------------------x
    2
    3    IN RE:  METHYL TERTIARY BUTYL            00 MDL 1358
    3    ETHER ("MTBE") PRODUCTS                  Master File C.A.
    4    LIABILITY LITIGATION                     No. 1:00-1898(SAS)
    4
    5    ------------------------------x
    5
    6                                             October 31, 2007
    6                                             10:10 a.m.
    7
    7    Before:
    8
    8                        HON. SHIRA A. SCHEINDLIN,
    9
    9                                             District Judge
   10
   11
   12
   13
   14
   15
   16
   17
   18
   19
   20
   21
   22
   23
   24
   25
                           SOUTHERN DISTRICT REPORTERS, P.C.
                                    (212) 805-0300
                                                                          2
         7AV5MTB1
    1                              APPEARANCES
    1
    2
    2    WEITZ & LUXENBERG, P.C.
    3         Plaintiffs' Liaison Counsel
    3    ROBIN L. GREENWALD
    4    ROBERT J. GORDON
    4    STEVEN J. GERMAN
    5    LEMUEL M. SROLOVIC
    5
    6    BARON & BUDD
    6         Attorneys for Plaintiffs
    7         Suffolk County Water Authority
    7         United Water of New York
    8    SCOTT SUMMY
    8
    9    SHER LEFF LLP
    9         Co-lead attorneys for Plaintiffs
   10    VICTOR M. SHER
   10
   11    MICHAEL A. CARDOZO
   11         Corporation Counsel of the
   12         City of New York
                                    Page 1
```


```
                              7AV5MTBf.txt
 2              THE COURT:  I'm done.  I'm moving on to well
 3    contention interrogatories.
 4              No, defendants do not have to point the finger and
 5    tell you who they can -- no, no, that's over too.  We've solved
 6    another waste of time.  Do you want to still be heard,
 7    Mr. Walsh?
 8              MR. WALSH:  No, your Honor, I'm going to follow
 9    Mr. Garvey's roll and retreat.
10              THE COURT:  That's good.  So now we actually have a
11    couple real questions and then we just get to the schedule.
12              We have a question about Dr. Belpoggi.  We have a
13    question about where she should be deposed and whether her lab
14    should be inspected.  I wish I could tell you my instinct.
15    Both sides have good arguments.  I did wonder about the twelve
16    and the five.  In one of the letters you said twelve people
17    would have to fly to Italy and then the response letter says it
18    couldn't be more than five.  Why is it twelve or why is it
19    five?
20              MR. WALLACE:  Frankly, your Honor, we don't know how
21    popular this deposition will be.
22              THE COURT:  It depends on the month, doesn't it?
23              MR. WALLACE:  And the location.
24              THE COURT:  Yes, for me.  Bologna in December isn't
25    bad.  But anyway, go ahead.
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                  (212) 805-0300
```

72

```
      7av1mtb2
 1              MR. WALLACE:  My, frankly, best guess is somewhere
 2    around eight.
 3              THE COURT:  Eight.  Just lawyers?
 4              MR. WALLACE:  I'm sorry, no, that includes the
 5    three -- the reporter, the videographer and the translator.  So
 6    eight people is my best guess.
 7              THE COURT:  Would have to go that way.  From just the
 8    defense side.  And then probably a plaintiff's lawyer would go
 9    too.  So that's at least nine people traveling, as opposed to
10    one, and I understand the problem.  You don't want to lose her
11    by annoying her, so to speak, and you think maybe that's what
12    defendants are doing is trying to annoy her enough so she drops
13    out because it would cost her a week, you said, by the time she
14    flies here, flies there.  They want three days with this woman?
15              MS. GREENWALD:  That's right.
16              THE COURT:  That's ridiculous.  Who agreed to three
17    days?
18              MS. GREENWALD:  You know, that's a whole other issue.
19    We agreed to it because they asked for it, and we have tried
20    very hard to agree to most of their requests.
21              THE COURT:  Well, if they want three days, they ought
22    to go there, but if we cut it back to two days, will she come
23    here?  Is it that easy to solve?  Because I can see how the
24    time adds up for her to fly both ways plus three days, and I
25    don't see why they need three days, so if we cut back to two
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                  (212) 805-0300
```

73

```
      7av1mtb2
 1    days and, you know, it's always good to come to New York, too.
 2    Maybe she should just come here and save nine people traveling.
 3    But I don't think three days makes sense.  If you really want
 4    three days, go to her.
 5              What is it, Mr. Wallace?
 6              MR. WALLACE:  If you give us that direction, three
                                   Page 34
```

```
                                 7AV5MTBf.txt
  7      days we have to do it in Italy, two days we'll do it here,
  8      let's meet with the plaintiffs and we'll figure out which is
  9      preferable.  The only reason that three days were requested --
 10              THE COURT:  I know, translating.  I know.  I try cases
 11      all the time with translators.  It's slow.
 12              Anyway, does that help, to say if it's two days, it's
 13      New York, if it's three days, it's Italy?  It's not a big
 14      difference, but...
 15              MS. GREENWALD:  It is a burden for Dr. Belpoggi, and I
 16      guess the fact is is that the defendants asked us at the
 17      beginning of expert discovery to enter into a protocol.
 18              THE COURT:  I know.  And you did write about that.  It
 19      should be nearest to the expert, but this is Italy, it's far,
 20      it's a hardship.  I mean, you know, we get a little older each
 21      year, and the jet lag gets harder, as far as I'm concerned,
 22      than it used to.  But anyway, it is hard.  Everybody's really
 23      busy right now and to fly off to Italy is quite exhausting.
 24              MS. GREENWALD:  That's true.
 25              THE COURT:  And she is only one person and New York
                           SOUTHERN DISTRICT REPORTERS, P.C.
                                     (212) 805-0300
```
74
```
         7av1mtb2
  1      isn't so bad either.  You can buy her a nice ticket.  I'm
  2      figuring nine compared to one, you can buy her a nice ticket
  3      and it will be a nice ride.  Might be easier for her to come.
  4              MR. WALLACE:  And we'll pay for that nice ticket.
  5              THE COURT:  Whoo.  I think she ought to grab it,
  6      frankly.  That sort of did it.  Two days, nice ticket.  Try to
  7      get her to do it.
  8              MS. GREENWALD:  Let us talk.  Thank you, your Honor.
  9              THE COURT:  See if you can resolve it.
 10              MS. GREENWALD:  Thank you.
 11              THE COURT:  Now comes the lab inspection.  This one
 12      confuses me too.  The plaintiffs make some good points and say
 13      you were able to prepare your reports without seeing this, your
 14      experts had no trouble criticizing her work without seeing the
 15      actual size, a lot of what they do want to see is available on
 16      the website.  Again, I get this little slight sense of, you
 17      know, trying to drive her out of the case or one thing or
 18      another, but what's the real need to see this?  The experts
 19      were able to comment without it and a lot of stuff is on the
 20      website.  People don't really like people tromping through
 21      their labs.  Why do you need to do it?  After all, it's a bit
 22      tangential anyway, but why do you need to do it?
 23              MR. WALLACE:  Actually, it's really quite important,
 24      your Honor.  This is an issue of sum and substance.
 25              THE COURT:  The animal slides in this trial?
                           SOUTHERN DISTRICT REPORTERS, P.C.
                                     (212) 805-0300
```
75
```
         7av1mtb2
  1              MR. WALLACE:  Well, if Dr. Belpoggi is going to take
  2      the stand and tell the jury that she concluded that MTBE can
  3      cause cancer in humans based on this test, it's very important.
  4              THE COURT:  Is she going to say that, in this trial,
  5      that MTBE can cause cancer in humans, based on her animal
  6      studies?  Are you really offering that at this trial?  Because
  7      I'm not going to allow that anyway.  Do we need that in this
  8      trial?  We've got enough problems.
  9              Conferring is good.  They're conferring.
 10              (Pause)
 11              MR. ISSACHAROFF:  Your Honor, we can't say exactly.
```

7AV5MTBf.txt

12    It depends on the nature.  She's a rebuttal expert.
13             THE COURT:  I know she's a rebuttal expert.
14             MR. ISSACHAROFF:  If they try to put on evidence that
15    MTBE is not harmful or in some fashion go after -- The problem
16    is, she's the author of the definitive study, and if they are
17    going to go after the study and say the health risks are
18    exaggerated, the MCL doesn't really correspond to any known
19    health risk, then at that point she should be able to defend
20    the work that she's done.  She should be able to say, I've
21    conducted a study, it was published in a peer review journal,
22    and subject to whatever Daubert motions they want to make ahead
23    of time, which seem unfruitful in this area, she should be able
24    to defend her study.  The idea --
25             THE COURT:  But can't she defend her study without
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

76

7av1mtb2
1     that ultimate comment that MTBE causes cancer and can cause
2     cancer in humans based on my animal studies?  That's sort of
3     way out.  We don't have a risk of cancer case here and we don't
4     want to have one.  We've got a complicated enough property
5     damage case.  I don't know that we need that.  Does she need to
6     go that far or can she generalize health risks?  Because the
7     leap to can cause cancer in humans because of animal studies is
8     problematic anyway, and that is subject to Daubert.  This
9     leaped conclusion, it's tough.  Can cause cancer in humans
10    based on animal studies is always difficult.
11             MR. ISSACHAROFF:  But that's a standard protocol
12    that's used in these scientific studies and --
13             THE COURT:  Yes and no.  It kind of depends, if we're
14    in a cancer case, so to speak.  If we have a real live
15    plaintiff who's claiming that and that's the best proof that
16    the person can come up with.  But we're not there.  We don't
17    have a risk of cancer case we want to try.  You want to talk
18    about health risks, I sort of understand in a generalized way,
19    but I don't know if we need to go that far.  That would be a
20    real sideshow to start talking about risk of cancer, fear of
21    cancer and all that.
22             MR. SUMMY:  Basically what she will testify to is
23    about her study and that MTBE can cause health problems, not
24    that anybody's got cancer from it, but she will generalize it
25    because the whole point of it is is, jury, that's why you
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

77

7av1mtb2
1     should award damages to filter the water because people
2     shouldn't be exposed to it.  It's not a specific causation
3     argument; it's more of a general causation argument.  And
4     that's what she does.  It's to rebut the fact that they say
5     MTBE doesn't cause health problems, when it does.  And that's
6     what it is.  But it's not proving that anybody's got cancer,
7     it's not saying that anybody's going to get cancer.  It's
8     generalized health problems, and that's why the water's got to
9     be filtered.  That's what we've proffered her for.
10             THE COURT:  So what the plaintiffs are saying is that
11    if the defendants are going to say through their experts that
12    there's no health risks from this stuff anyway, even if it's
13    there, it presents no health risks, they do want to be able to
14    call her on rebuttal to say there are health risks, not
15    necessarily going to say I'm going into a whole long
16    explanation of why my animal studies support the fact that

Page 36

7AV5MTBf.txt

17  somebody's going to come down with cancer or a particular form
18  of cancer but I think my studies show there's a health risk,
19  even though right now it's based on animal studies. I don't
20  know.
21             MR. WALLACE: From our perspective, your Honor, this
22  issue of health risks is almost inevitable in the trial. The
23  jury will hear about it.
24             THE COURT: That's true, to some degree.
25             MR. WALLACE: And if I may be allowed just a moment to
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

78

7av1mtb2
1   describe Dr. Belpoggi's study, it was done at a laboratory in
2   Italy called the Ramazzini Foundation Laboratory.
3              THE COURT: I read it in your letters.
4              MR. WALLACE: And you probably read then also that
5   that laboratory also did another study on a common sweetener
6   called aspartame.
7              THE COURT: Yes.
8              MR. WALLACE: Well, that study, exactly like the MTBE
9   study, concluded that aspartame was a carcinogen to animals
10  because they discovered a certain higher incidence of lymphomas
11  and leukemias, and they concluded that the lymphomas and
12  leukemias were attributable to the aspartame.
13             When the European Food Safety Commission reviewed the
14  study, it discovered that the colony of animals used in this
15  laboratory had a chronic lung infection, and it concluded the
16  increased incidence -- and I'm quoting now -- "The increased
17  incidence of lymphomas and leukemias reported in treated rats
18  was unrelated to aspartame, given the high background incidence
19  of chronic inflammatory changes in the lungs."
20             THE COURT: Right. But you've got it. You've got the
21  cross-examination ready. You've got the impeachment ready.
22  You just told it to us. If these were the jurors, I'm sure
23  they would agree with you.
24             MR. WALLACE: What the pathologists want --
25             THE COURT: Say again? What the pathologists want?
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

79

7av1mtb2
1              MR. WALLACE: Yes, your Honor. We have two
2   pathologists, and the leading pathologist is Dr. McConnell. He
3   was the director of toxicology testing for the National
4   Institute of Environmental Health Sciences. He was at
5   Dr. Belpoggi's Ramazzini lab when the MTBE study was being
6   conducted, and he has reported since that he actually heard
7   sounds from the rats which led him to wonder if they were
8   diseased. And it's the disease, the chronic lung disease, that
9   the European Food Safety Commission discovered in this colony
10  of rats.
11             THE COURT: But still, you already have what you need.
12  You have the impeachment. You have the European studies, you
13  have Dr. McConnell maybe, whatever name you said -- did you say
14  McConnell?
15             MR. WALLACE: Yes, your Honor.
16             THE COURT: You did. Okay. You have Dr. McConnell,
17  you have the European study, you have what you need.
18             MR. WALLACE: We certainly have a lot of ammunition.
19  But if Dr. McConnell can look at the slides, he can determine
20  whether the lymphomas and leukemias that were reported, and --
21             THE COURT: In the aspartame study?
                              Page 37