**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE METHYL TERTIARY BUTYL ETHER**<br>**PRODUCTS LIABILITY LITIGATION**<br><br>**This document pertains to:**<br><br>*City of New York v. Amerada Hess Corporation, et*<br>*al.,* No. 04 Civ. 3417 (SAS) | Master File No. 1:00-1898<br>MDL 1358 (SAS)<br>M21-88 |

### DEFENDANTS' MEMORANDUM IN SUPPORT OF JOINT MOTION *IN LIMINE* TO PRECLUDE EVIDENCE REGARDING TRADE-ASSOCIATION ACTIVITIES UNTIL AND UNLESS PLAINTIFFS ESTABLISH PREDICATE FACTS

Plaintiff City of New York ("City" or "Plaintiff") alleges that Defendants participated in a civil conspiracy to conceal certain information about MTBE. Plaintiff claims that Defendants furthered this alleged conspiracy through one or more trade associations and seeks to hold Defendants liable for the actions of those trade associations and their various members. But a jury could not properly find that a conspiratorial agreement existed based upon Defendants' mere membership in a trade association; instead, Plaintiff must show that: (1) the trade association(s) possessed unlawful goals, and (2) each Defendant had a specific intent to further those illegal aims. *See NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 920 (1982); *Pfizer Inc. v. Giles (In re Asbestos Sch. Litig.)*, 46 F.3d 1284, 1290 (3d Cir. 1994) (Alito, J.).

Unless the jury in this case could *properly* impute trade-association conduct to Defendants, evidence about that conduct is irrelevant and prejudicial and, therefore,

inadmissible. *See* Fed. R. Evid. 401, 402 and 403.[2]  Absent careful screening of the evidence, a

jury might impermissibly find Defendants liable by association – in violation of the First

Amendment – rather than on Defendants' own conduct.  The Court, therefore, should preclude

Plaintiff from introducing evidence of, or making argument about, alleged activities or conduct

of the American Petroleum Institute ("API"), the Oxygenated Fuels Association ("OFA"), the

MTBE Committee and/or any other industry trade association unless and until Plaintiff first

shows that the trade association's activities are imputable to Defendants under the governing

law.

## FACTUAL BACKGROUND

Plaintiff's Fourth Amended Complaint seeks to hold Defendants liable for using MTBE,

which Plaintiff alleges impacted certain of its water supply wells.  Plaintiff alleges, among other

things, that Defendants' membership in certain trade associations[3] establishes a civil conspiracy

and supports a finding that they are liable for the allegedly tortious acts of other MTBE gasoline

---

[2]  Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Under Federal Rule of Evidence 402, "[e]vidence which is not relevant is not admissible."  The party seeking to admit the evidence "has the burden of showing that the prerequisites for its admissibility are met." *Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627, 632 (2d Cir. 1994).  Even if relevant, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.

[3]  Notably, membership in the various trade associations is not identical as between the Defendants.  For example, while the pre-merger Exxon Corporation may have been a member of a given trade association, the pre-merger Mobil may have elected not to join.  Furthermore, both companies may have foregone membership in a given trade association.  Put simply, membership cannot be presumed as to any Defendant, but, rather, must be established by Plaintiff prior to the proffer of "trade association evidence" to satisfy the requirement(s) of Federal Rule of Evidence 401.  Accordingly, where Plaintiff seeks to present evidence of trade association activity at trial, it must first establish the bare fact of a Defendant's membership in the same.

manufacturers and sellers. (*See* Fourth Am. Compl., ¶¶ 86, 95, 98, 99, 104-107, 111-112, 149-155) Specifically, Plaintiff alleges that Defendants and other MTBE gasoline manufacturers "secretly shared with one another their knowledge of the dangers and risks posed by manufacturing, marketing, distributing, designing, supplying, and selling the Products,[4] as well as their knowledge of leaking underground storage tanks, within other ways, the confines of private trade associations such as API." (*Id.* at ¶ 95)   Then, Plaintiff contends, these MTBE gasoline manufacturers intentionally withheld information, suppressed industry research, and/or intentionally made misrepresentations about MTBE's safety in order to advance the industry-wide conspiracy. (*Id.* at ¶¶ 98-99, 104-107).   Interestingly, according to Plaintiff, actual trade association membership is/was not a predicate for culpability to inure to a Defendant for allegedly tortious trade association activities – rather, Plaintiff contends, "[d]efendants who were not actual members of the MTBE Committee benefitted from, and publicly and/or silently consented to, the Committee's actions and representations." (*Id.*, at ¶ 104.)

The Court has addressed such conspiracy allegations before in these cases.   In its recent causation decision, the Court specifically noted that Plaintiffs sought to use evidence of trade-association activities to establish liability: "[Plaintiffs] assert that evidence regarding…lobbying activities ***by an industry association*** that may have concealed known risks associated with MTBE, establish that [Defendants] acted in concert or pursuant to a tacit agreement."   *See County of Suffolk v. Amerada Hess Corp. (In re MTBE Prods. Liability Litig.)*, No. 04-cv-5424, 2008 U.S. Dist. LEXIS 38792, at *54-55 (S.D.N.Y. May 13, 2008) (emphasis added). Importantly, in that decision, the Court held that Plaintiffs had failed to produce evidence

---

[4] Plaintiff defines the "Products" as MTBE; all petroleum products containing MTBE; and any degradation byproducts of commercial grade MTBE, including but not limited to tertiary butyl alcohol. (4th Am. Compl. ¶ 68.)

3

"sufficient to support the conclusion that all refiner defendants participated in a common plan to conceal the risks of MTBE from the public." *Id.* at *58.

## LAW AND ARGUMENT

It is well established that a party cannot be held liable based solely on its membership in an association, some members of which committed a tortious act. *Claiborne Hardware*, 458 U.S. at 920. This rule stems from the First Amendment, which precludes the imposition of "liability on an individual solely because of his association with another." *Id.* at 918-19. It also recognizes the practical notion that a "member of a trade group or other similar organization does not necessarily endorse everything done by that organization or its members." *Pfizer*, 46 F.3d at 1290. Given these constitutional and practical considerations, the United States Supreme Court held that "[f]or liability to be imposed by reason of association alone, it is necessary to establish that the group itself possessed unlawful goals and that the individual held a specific intent to further those illegal aims." *Claiborne Hardware*, 458 U.S. at 920.

The Supreme Court also "emphasized that this intent must be judged 'according to the strict law.'" *Id.* at 919 (quoting *Noto v. United States*, 367 U.S. 290, 299-300 (1961)). Thus, "[a]ttendance at a meeting of an organization does not necessarily signify approval of *any* of that organization's activities." *Pfizer*, 46 F.3d at 1290 (emphasis in original) (holding that attendance by three of four of Pfizer's in-house attorneys not sufficient to show Pfizer's intent to further illegal aims); *see also Taylor v. Airco, Inc.*, 503 F. Supp. 2d 432, 446-47 (D. Mass. 2007) (defendants not responsible for actions of an association just because the defendants "sent representatives to meetings and conferences"). Nor can donations to a trade union satisfy the intent requirement, because donations do not establish an illegal purpose; they are just as likely to reflect a general purpose or a specific legal purposes of the trade association. *Pfizer*, 46 F.3d at 1290. This federal law comports with New York law, under which parallel activity of

4

association members alone is insufficient evidence of a conspiracy. *See Hymowitz v. Eli Lilly & Co.*, 539 N.E.2d 1069, 1074-75 (N.Y. 1989); *see also County of Suffolk*, 2008 U.S. Dist. LEXIS 38792, at *54-56 (holding that parallel activity alone "does not constitute a common plan" to support a concert of action theory).

Then-Judge Alito's decision in *Pfizer* illustrates how this "strict law" applies in practice. The court in *Pfizer* granted a writ of mandamus vacating the trial court's ruling that an asbestos manufacturer may be liable under conspiracy and concert-of-action theories based on its financing and conduct in an industry trade group that had allegedly disseminated false information about the hazards of asbestos. *Pfizer*, 46 F.3d at 1290. The Third Circuit held that the district court "was clearly wrong" when it denied Pfizer's motion for partial summary judgment on the conspiracy and concert-of-action claims because the plaintiffs based those claims solely upon Pfizer's association with the Safe Buildings Alliance ("SAB"), a lobbying and public education organization. *Id.* at 1294. Further, the Third Circuit determined that the district court's decision threatened Pfizer's First Amendment rights:

> The district court's holding suggests Pfizer—based solely on its limited and (as far as the record reflects) innocent association with the SBA—could be held liable, as the plaintiffs have urged, for all of the allegedly tortious acts committed by all of the defendants, whether before or after the SBA was formed. The implications of such a holding are far-reaching. Joining organizations that participate in public debate, making contributions to them, and attending their meetings are activities that enjoy substantial First Amendment protection. But the district court's holding, if generally accepted, would make these activities unjustifiably risky and would undoubtedly have an unwarranted inhibiting effect upon them.

*Id.* (internal citations omitted).[5]

---

[5] The *Pfizer* court relied heavily on *Claiborne Hardware*, in which activists boycotted allegedly racist businesses, some resorting to violence. The Supreme Court refused to hold all boycott members liable for the violence because "[t]here is a 'profound national commitment' to the

Defendants' participation in certain organizations and/or trade associations enjoys the same First Amendment protections, and imposing liability for that participation would likewise be unconstitutional. Hence, unless Plaintiff satisfies the strict standards for imputing a trade association's activities to its members – *i.e.*, that the association itself had unlawful goals and that Defendants specifically intended to further those goals – evidence regarding the alleged conduct or activities of the API, OFA, MTBE Committee and similar trade organizations has no bearing on ExxonMobil's alleged liability in this case. Permitting Plaintiff to introduce evidence of trade-association activities before first proving the predicate facts justifying imputation to Defendants would be unduly prejudicial, creating a risk that the jury would decide the claims against Defendants based on the conduct of a non-party, or of other defendants, rather than on Defendants' own actions. Such "[g]uilt by association is just what Fed. R. Evid. 403 was intended to exclude." *United States v. Wassner*, 141 F.R.D. 399, 405 (S.D.N.Y. 1992).

The Eighth Circuit recognized the problem of permitting a jury to consider the alleged misdeeds of a defendant's associates without proof linking the defendant to those misdeeds. *See United States v. Flynn*, 852 F.2d 1045 (8th Cir. 1988). The court was "disturbed" by the district court's admission of evidence of the crimes of the defendant's associates without "linking" the defendant "to these acts." *Id.* at 1054. The court held that admission of "every bad act of an enterprise, including those in which the defendant does not participate,…magnifies the potential for imputing guilt to a defendant solely on the basis of the company he keeps[,] and Fed. R. Evid.

---

principle that 'debate on public issues should be uninhibited, robust, and wide-open." 458 U.S. at 913 (citation omitted). The Third Circuit in *Pfizer* recognized that "the constitutionally protected conduct in *Claiborne Hardware* was of much greater social importance" than the asbestos manufacturer's participation in a trade association, but "nothing in the Supreme Court's opinion . . . lends support to the suggestion that the standard it enunciated was not meant to have general applicability." *Pfizer*, 43 F.3d at 1291.

403 is implicated." *Id*[6] The rationale is no different in the civil context; liability by association is no less offensive to the First Amendment than guilt by association—especially when, as here, the civil claims include punitive damages.

Given the risk of prejudice, the Court should preclude Plaintiff from introducing evidence or argument about any particular trade association's activities until Plaintiff first proves, under the standard set forth in *Claiborne Hardware*, the predicate facts from which a jury could impute those activities to Defendants.

## CONCLUSION

For the foregoing reasons, the Court should issue an order precluding any direct or indirect mention before the jury of the activities of API, OFA, MTBE Committee, or other trade association unless Plaintiff first establishes by competent, admissible evidence, facts sufficient to prove that (1) the trade association(s) possessed unlawful goals; and (2) Defendants held a specific intent to further those illegal aims.

---

[6] *Accord United States v. Lopez-Mendina*, 461 F.3d 724, 741-42 (6th Cir. 2006) (guilt-by-association evidence violates Rules 401, 402 and 403); *United States v. Polasek*, 162 F.3d 878, 887 (5th Cir. 1998) ("we repeatedly have characterized guilt by association evidence as 'highly prejudicial' and 'damaging'") (citations omitted); *United States v. McAfee*, 8 F.3d 1010, 1018 (5th Cir. 1993) ("It is the practice of this Circuit to exclude highly prejudicial evidence that attempts to taint a witness's character through guilt by association.").

Dated: New York, New York
     May 11, 2009

Respectfully submitted,

Peter John Sacripanti (PS 8968)
James A. Pardo (JP 9018)
Stephen J. Riccardulli (SR 7784)
Lauren Handel (LH 0755)
McDermott Will & Emery LLP
340 Madison Avenue
New York, New York 10173

*Attorneys for Exxon Mobil Corporation and
on behalf of all remaining Defendants*