UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation<br><br>This document pertains to:<br><br>*City of New York v. Amerada Hess Corp. et al.,*<br>Case No. NY-04-CV-03417 | Master File No. 1:00-1898<br>MDL 1358 (SAS)<br>M21-88 |

**DEFENDANTS' REPLY TO PLAINTIFF CITY OF NEW YORK'S OPPOSITION TO DEFENDANTS' MOTION TO BAR PUNITIVE DAMAGES BASED ON THE MARKET SHARE AND COMMINGLED PRODUCT THEORIES**

This brief is filed on behalf of the Defendants listed on the attached Appendix A.

# INTRODUCTION

The Court has already held that a plaintiff substituting market share for actual causation does so at the expense of a punitive recovery. Plaintiff does not contest the point.

Eager to avoid that trade-off—but admittedly unable in many instances to prove actual causation—Plaintiff urges that it may recover punitive damages under the Court's commingled product theory of market share. Plaintiff wants the Court to find that its commingled product theory is sufficiently different from "traditional" market share to avoid the punitive-damages bar. But Plaintiff's arguments are unavailing. Permitting punitive damages in the context of commingled product market share would present the same constitutional and equitable concerns as in the context of "traditional" market share. Punitive damages are available in neither.

This Court held that New York adopted the market share theory of causation to deal with "an unprecedented identification problem" where a plaintiff "cannot determine who injured them because the offending product is fungible *or commingled* with other identical products . . . ." *In re MTBE Prods. Liab. Litig.*, 517 F. Supp. 2d 662, 670 (S.D.N.Y. 2007) (emphasis added). In such circumstances, "one party must bear the inequity of situation." *Id.* Rather than leaving the innocent plaintiff without compensation for its injury, New York courts place the burden of causation on the proven wrongdoer "despite a flawed apportionment of liability." *Id.* at 670-71. To hold otherwise would result in a "windfall" for defendants escaping liability despite their unlawful behavior. *Id.* at 670.

But the Court recognized that the absence of proof of actual causation that defines market share liability precludes an award of punitive damages. The equitable scale shifts back in a defendant's favor if a plaintiff seeks more than compensation for its harm. The purpose of punitive damages "is not to make the victim whole but to punish the defendant and to deter egregious conduct." *Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp.*, 95 F.3d

153, 160 (2d Cir. 2006). Since a defendant's liability for compensatory damages based on market share does not reflect the harm that defendant actually caused, the Court held that "[a]llowing punitive damages would magnify any inaccuracies between the harm done and the relief provided by particular defendants." *In re MTBE*, 517 F. Supp. 2d at 671.

To avoid this important holding, Plaintiff's argument boils down to this: *every* defendant caused actual harm under the commingled product theory, while only *one* defendant caused actual harm under a traditional market share theory. But that distinction is a false one, and it fails to overcome the constitutional and equitable concerns that underlie the Court's holding in the context of traditional market share. Plaintiff's argument is flawed in two major respects.

First, even accepting Plaintiff's attempted distinctions between the two forms of market share recovery, punitive damages in the commingled product context still violates due process. Even if *every* Defendant's product was in every leak or spill—in other words, even if every Defendant's product did actually cause *some* harm—the ***apportionment*** of liability based on market share is still a substitute for the unknown ***extent*** of harm each Defendant's product actually caused. Plaintiff cannot believe—and does not attempt to argue—that the apportionment of liability based on market share accurately reflects the amount of each Defendant's product in any particular leak or spill. Indeed, if the City could prove the amount of each Defendant's product in any particular spill or leak, there would be no need or justification for the commingled product theory. And that is the source of the due process problem. Due process requires that punitive damages "be reasonable and proportionate to the amount of harm" each Defendant caused. *See State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 426 (2003). But when market share substitutes for an unknown (and unknowable) "amount of harm,"

2

it is impossible to measure the proportionality of a punitive award. There is thus no way to impose punitive liability without offending due process.

Second, Plaintiff's distinction between the commingled product theory and traditional market share liability is a false one. It simply is not true in the commingled product cases that *every* defendant actually caused harm. Nor is it true in traditional market share cases that only *one* of multiple defendants caused harm. Rather, in both theories, many defendants—but not all of them—likely caused harm; all defendants bear liability even though some may have caused no harm at all. If there are actual distinctions between the two forms of market share liability, they are immaterial to the punitive-damages analysis.

Finally, it bears mention that liability under the commingled product theory is not automatic. Before a jury can hold any Defendant liable under that theory, Plaintiff must first prove the predicate facts to justify the imposition of liability on that basis. Thus, even if punitive damages were available in the commingled product context, it would be premature to permit a jury to consider punitive damages before the jury has found the predicate facts for imposing liability based on the commingled product theory.

## ARGUMENT

### I. PLAINTIFF CONCEDES THAT IT CANNOT SEEK PUNITIVE DAMAGES IF IT PURSUES A MARKET SHARE THEORY.

Defendant moved for an order prohibiting Plaintiff's from seeking punitive damages if it pursues either a market share theory or a commingled product theory. Plaintiff does not contest that punitive damages are unavailable with respect to any recovery based on traditional market share. The Court should grant that aspect of Defendants' motion as undisputed, premised on the Court's prior holding. *See In re MTBE*, 517 F. Supp. 2d at 662.

3

## II. A PUNITIVE AWARD PREMISED ON COMMINGLED PRODUCT LIABILITY VIOLATES DUE PROCESS.

### A. Even Assuming a Legitimate Distinction Between Commingled Product and Traditional Market Share Liability, Punitive Damages Still Violate Defendants' Due Process Rights.

#### 1. Any Allocation of Damages Based on Market Share Renders Impossible the Task of Ensuring That Punitive Damages Are Proportionate to the Extent of Harm Actually Caused.

Even if the commingled product theory establishes that *every* Defendant contributed to *every* alleged harm, a punitive damages award still violates Defendants' due process rights, because the Constitution prohibits punitive damages that are disproportionate to actual harm caused by a particular defendant. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 580 (1996).

Plaintiff urges that there is no due process problem, because under the commingled product theory, every defendant actually caused harm. Even if that predicate fact were true, it misses the point. As this Court held, "[i]t is likely that each defendant's contribution to the total volume of MTBE-containing gasoline in any particular well was very small." *In re MTBE Prods. Liabl. Litig.*, 447 F. Supp. 2d 289, 303 (S.D.N.Y. 2006). "Yet, there is no *de minimus* exception to liability under the commingled product theory." *In re MTBE Prods. Liab. Litig.*, 591 F. Supp. 2d 249, 280 (S.D.N.Y. 2008). Thus, under the commingled product theory, Defendants with "very small" contributions to the Plaintiff's actual harm are still held severally liable for their entire market share. *Id.* at 274 n.72.

Plaintiff's argument, then, elides the important distinction between determining *whether* a Defendant actually caused harm and determining the *amount* of actual harm caused. By using market share as a substitute for traditional fault allocation, the commingled product theory ensures that the innocent plaintiff is not denied a recovery merely because it cannot quantify the extent of a particular defendant's actual responsibility for damages (however small that

4

responsibility may, in reality, be). But Plaintiff fails to explain how the fact-finder at trial, or the Court in a post-trial review, could ensure through market share that the ratio between the amount of actual harm caused and any punitive award was a fair one. Indeed, the ratio is indeterminable. Thus, even if market share can serve as a vehicle for imposing compensatory damages, it cannot, in keeping with due process, serve as a meaningful measure of actual harm for purposes of the all-important ratio.

### 2. Vague Allegations of "Potential Harm" Do Not Solve the Problem.

Plaintiff tacitly acknowledges the proportionality problem and seeks to address it indirectly by pointing to the Supreme Court's statement that "it may be appropriate to consider the reasonableness of a punitive damages award in light of the *potential* harm the defendant's conduct could have caused . . . ." Pl's. Opp. at 17 (quoting *Philip Morris USA v. Williams*, 549 U.S. 346, 354 (2007)). Plaintiff suggests that since *every* Defendant caused the actual damage under the commingled product theory, then *every* Defendant potentially caused harm equal to its market share. But Plaintiff misreads the critical language from *Philip Morris*.

First, the Supreme Court's reference to "potential harm" refers not to a particular defendant's capacity to bear a greater responsibility for the plaintiff's actual harm, but instead to the total harm that the plaintiff might have suffered had it not somehow *avoided* it. *See Gore*, 517 U.S. at 582 ("[T]here is no suggestion that Dr. Gore . . . was threatened with any additional potential harm by BMW's nondisclosure policy."); *see also Kauffman v. Maxim Healthcare Servs., Inc.*, 509 F. Supp. 2d 210, 219 (E.D.N.Y. 2007) (potential harm for the purposes of a punitive damages refers to unrealized potential harm had a defendant's tortious plan succeeded). Here, MTBE concentrations were fairly standard among gasoline suppliers, so the risk of harm to Plaintiff was not a function of the presence of any particular supplier's product in the MTBE-containing gasoline that allegedly caused Plaintiff's damages.

5

Second, the City misses the main point of this case, which is that "the Constitution's Due Process Clause forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties, ... *i.e.*, injury that it inflicts upon those who are, essentially, strangers to the litigation." 549 U.S. at 354. That holding should bar punitive damages on the commingled product theory because liability under that theory is based on mere participation in a market, and is calculated in accordance with market shares. Thus, actual damages would be assessed based not on actual or potential injury that a given defendant inflicted on the particular plaintiff, but rather on a measure of the risk of harm that a defendant caused within a market. If punitive damages were allowed, then those damages would necessarily reflect potential harm to others in the market, which is what the Supreme Court held would be unconstitutional.

B. **Plaintiff's Distinctions Between Commingled Product Market Share and Traditional Market Share Are Illusory.**

As shown above, even assuming Plaintiff articulated meaningful distinctions between commingled product and traditional market share liability, the ultimate resort to allocation of liability for compensatory damages based on market share renders it impossible to impose punitive liability in keeping with due process. In fact, however, the fundamental similarities between the two theories, above and beyond reliance on market share to allocate damages, establishes that the Court's holding with respect to traditional market share applies with equal force in the context of the commingled product theory. Under both the commingled product theory and the market share theory, any award of punitive damages runs the unacceptable risk of punishing Defendants that did not actually cause the harm *at all*.

1. **Plaintiff's Distinction Rests on the Incorrect Assumption That Under the Commingled Product Theory, Every Defendant Actually Caused Harm.**

Plaintiff insists that it avoids due process problems because *every* Defendant caused actual harm to Plaintiff. Pl's. Opp. at 16. But even Plaintiff cannot keep its arguments straight; in the same brief Plaintiff acknowledges that "many" Defendants caused its harm. *See id.* at 9-10 ("The commingled product theory . . . [applies] to a joint commingled product that contains all *or many* of the harmful products made by defendants.") (emphasis added); *see also id.* at 8 ("[A]ny gasoline spill or leak undoubtedly contained product manufactured *by many*, if not all, Defendants in this case.") (emphasis added). This Court has also implicitly recognized that the commingled product theory runs the risk of assigning liability to Defendants that did not actually cause Plaintiff's harm. *In re MTBE*, 591 F. Supp. 2d at 275 ("[B]ecause the gasoline that has contaminated plaintiffs' wells was undeniably the commingled product of numerous manufacturers, there is a good chance that *many* of the defendants held liable, *if not the majority*, actually did cause plaintiffs' injury.") (emphasis added).

Plaintiff justifies its desire to impose punitive damages on Defendants that did not cause its harm in two ways. First, it argues that the inequities in a commingled product case are less prominent than the inequities in a market share case. This is supposedly because in a commingled product case, most defendants actually caused harm (so only a few did not), while in a market share case only one defendant actually caused harm (so all the rest did not). Thus, Plaintiff argues that "[i]t is far less likely under the commingled product theory that a given defendant could be held liable for damages it did not cause." *See id.* Even if the distinction were factually accurate (and it is not), it does not change the essential problem: permitting punitive damages would still punish defendants that caused no harm. The fact that there may be fewer innocent defendants does not make it any more acceptable to punish them.

7

Second, Plaintiff argues that since even traditional causation can never be established with "absolute certainty," the Court should have no qualms about imposing punitive damages on Defendants held liable under a commingled product theory. *See* Pl's. Opp. at 14. Plaintiff points to the Court's recognition that "the law imposes liability even where "the cause and effect relationship . . . [can] not be established with scientific certainty." *In re MTBE*, 591 F. Supp. 2d at 289-90, *cited in* Pl's. Opp. at 14-15. Of course, there is no dispute that a jury can find traditional causation based on proof that does not rise to the level of scientific certainty, and once the Plaintiff establishes traditional causation by a preponderance of the evidence, any uncertainty about causation no longer matters. By contrast, when a Defendant's liability is based on the commingled product theory, there has been no finding of actual causation. While the Court may be willing to impose liability because of the "good chance" that a particular Defendant's product was in the mix, *see id.* at 275, the presumption of causation based upon market presence is always an equitable *substitute for*—not a means of establishing—traditional causation. Thus, a finding of liability based upon the commingled product theory does nothing to undermine the Court's prior holding that "a plaintiff who seeks punitive damages should also be required to identify the defendants that caused the harm rather than lumping all defendants together to find the deepest pockets among them." *In re MTBE*, 517 F. Supp. 2d at 671.

Finally, Plaintiff fails to address Defendants' argument that exculpation procedures in the commingled product and traditional market share contexts are essentially identical. Plaintiff urges that a manufacturer can exculpate itself from commingled product liability by showing that "it could not have been part of the commingled or blended product," while a defendant can exculpate itself in a market share context by showing it was not part of the relevant market. Pl's. Opp. at 13. But Plaintiff fails to explain why this distinction makes a difference. Since the

premise of the commingled product theory is that it is impossible to identify a specific Defendant's MTBE within a blended product, the Defendant may still exculpate itself only by showing what it must show for exculpation in the traditional market share context—that "its product was not present at the relevant time or in the relevant place . . . ." *In re MTBE,*, 447 F. Supp. 2d at 301.

### 2. Plaintiff's Distinction Incorrectly Assumes That Under Traditional Market Share, Only One Defendant Actually Caused Harm.

Plaintiff clings to the tenuous distinction that only *one* defendant actually caused harm in the traditional market share context, despite conceding that DES plaintiffs ingested pills manufactured by multiple defendants. Plaintiff argues that since each single pill caused actual harm, and each single pill was manufactured by only one defendant, only one defendant caused actual harm to a DES plaintiff. In contrast, Plaintiff states that each MTBE-containing gasoline spill—which Plaintiff equates to a DES pill—contains the product of multiple Defendants, so multiple Defendants caused Plaintiff actual harm. Yet again, Plaintiff presses a distinction without a difference. Whether a DES plaintiff would have suffered the same injuries if her mother had ingested only a single pill is an interesting medical curiosity, but it has no practical relevance to the issue—because the mothers of DES plaintiffs typically ingested numerous pills that were commingled in a way that is functionally equivalent to the MTBE-containing gasoline that Plaintiff claims caused its damages here.

Plaintiff also attempts to distinguish DES liability under traditional market share by comparing the manufacturers' role in the commingling process as between DES and MTBE-containing gasoline. Pl's. Opp. at 8. Plaintiff argues that a pharmacy's or patient's mixing of multiple brands of DES was "under circumstances beyond those manufacturers' control and without their knowledge," while Defendants in this case knowingly delivered MTBE-gasoline in

9

a commingled state. *Id.* But considerations of a defendant's degree of 'culpability' have never mattered to market share theories. Nothing in *Hymowitz* suggests that approach, nor is there any reason to suppose that the DES defendants at issue in *Hymowitz* lacked the control to differentiate their products or were unaware that pharmacies and patients would commingle them. Instead, *Hymowitz* suggests the defendants marketed DES in a fashion very similar, for present purposes, to the way in which gasoline manufacturers do. *See Hymowitz*, 539 N.E.2d at 1075.

### 3. Allowing Punitive Damages Under Both Traditional Market Share and the Commingled Product Theory Creates the Incentive to Ignore Other Liable Parties.

Market share and commingled product causation create the same incentive for Plaintiff to abandon traditional causation. Both relieve Plaintiff of its burden of proving causation by shifting the burden to Defendants. *See In re MTBE*, 517 F. Supp. 2d at 670-71. The problem, however, is that a "flawed apportionment of liability" occurs by shifting the burden. *Id.* at 670. Naturally, Plaintiff will want to shed its traditional burdens and impose them on Defendants if it can. Thus, this Court expressed concern about creating "an incentive to rely on" market share when a plaintiff could use greater efforts and establish traditional causation. *Id.* at 671. The Court alleviated its concern by disallowing punitive damages in market share causation cases. Since the commingled product theory also shifts the causation burden, the same incentive exists. As in traditional market share, disallowing punitive damages in commingled product cases minimizes the Plaintiff's incentive to exploit the non-traditional causation theory where it has a means of proving traditional causation.

## CONCLUSION

Defendants respectfully request an Order prohibiting Plaintiff from seeking punitive damages to the extent Plaintiff relies on the market share or commingled product theories.

Dated: New York, New York
May 11, 2009

Respectfully submitted,

Peter John Sacripanti (PS 8968)
James A. Pardo (JP 9018)
Stephen J. Riccardulli (7784)
McDermott Will & Emery LLP
340 Madison Avenue
New York, New York 10173

Attorneys for the Exxon Mobil Corporation
Defendants and on behalf of all remaining
Defendants identified on Appendix A

# **APPENDIX A**

Crown Central LLC

Equistar Chemicals, LP

Exxon Corporation

ExxonMobil Corporation

ExxonMobil Chemical Company, Inc.

ExxonMobil Oil Corporation

Exxon Mobil Pipe Line Company

Lyondell Chemical Company

Mobil Corporation

Total Petrochemicals USA, Inc.