UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation<br><br>This document pertains to:<br><br>*City of New York v. Amerada Hess Corp. et al.,* Case No. NY-04-CV-03417 | Master File No. 1:00-1898<br>MDL 1358 (SAS)<br>M21-88 |

## DEFENDANTS' JOINT MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF FUTURE INJURY OR DAMAGE TO WELLS 5, 22, 26, 39 AND 45

## INTRODUCTION

Plaintiff City of New York ("City") has produced documents and testimony projecting future MTBE concentrations and associated treatment costs for wells 5, 22, 26, 39 and 45. Under New York law, damages may not be speculative and the fact of an injury giving rise to damages must first be proven to a reasonable degree of probability.  Application of this rule requires the Court to exclude from trial all purported evidence of future impacts to wells 5, 22, 26, 39 and 45 because the City cannot state with any degree of probability that it plans to serve water to customers from these wells.  Indeed, these wells no longer pump water to the City's distribution system and the City has no definite plans for their use.  Moreover, the City's consultants have affirmatively recommended that certain of these wells *never* be used again. Therefore, projections about whether these wells *might* contain MTBE *when* or *if* they are activated and projections as to the associated costs of treatment have no relevance if they City cannot demonstrate that its rights to use these wells have been impacted by MTBE.  At best, the City can state that it *might* be injured in the future *if* it activates these wells and when they are pumped, *if* they become contaminated with the levels of MTBE its experts are projecting.  Such speculation is insufficient to show injury or damage under New York law.

## LEGAL STANDARD

Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Under Federal Rule of Evidence 402, "[e]vidence which is not relevant is not admissible."  Evidence is relevant if it "tends to prove or disprove a matter properly provable in the case." *United States v. Torniero*, 735 F.2d 725, 730 (2d Cir. 1984) (internal quotations omitted); *see also Bensen v.*

*Amer. Ultramar*, No. 92 Civ. 4420, 1996 U.S. Dist. LEXIS 10647, at *14 (S.D.N.Y. July 26, 1996) ("[R]elevancy is a relationship between a proffered item of evidence and a fact that is of consequence to the determination of the action." (internal quotations omitted)).    The party seeking to admit the evidence "has the burden of showing that the prerequisites for its admissibility are met." *Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627, 632 (2d Cir. 1994).

Even if relevant, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence."    Fed. R. Evid. 403; *United States v. Royer*, 549 F.3d 886, 901 (2d Cir. 2008) ("Federal Rule of Evidence 403 allows relevant evidence to be excluded by the trial court if its probative value is substantially outweighed by such dangers as unfair prejudice." (internal quotations omitted)); *United States v. Bowe*, 360 F.2d 1, 15 (2d Cir. 1966) ("A trial judge has discretion to exclude evidence which is only slightly probative if its introduction would confuse and mislead the jury by focusing its attention on collateral issues and if it would unnecessarily delay the trial."); *Guidi v. Inter-Continental Hotels Corp.*, No. 95 Civ. 9006, 2003 U.S. Dist. LEXIS 6385, at *5-*6 (S.D.N.Y. Apr. 16, 2003) (excluding evidence where "likelihood of jury confusion [was] great").    "Unfair prejudice" in the context of Federal Rule of Evidence 403, "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Bermudez*, 529 F.3d 158, 170 (2d Cir. 2008) (citing *Old Chief v. United States*, 519 U.S. 172, 180 (1997)).

**ARGUMENT**

**I.** **Evidence of Possible Future Damage to Wells 5, 22, 26, 39 and 45 is Too Speculative Because it is Based on Conjecture and Guess Work.**

Plaintiff has alleged claims for damages[1] based on strict liability for defective design and for failure to warn, negligence, civil conspiracy,[2] public nuisance, private nuisance, trespass and New York Navigation Law § 181. *4th Am. Compl.* Actual injury is an essential element of every one of these claims. *Frank v. DaimlerChrysler Corp.*, 741 N.Y.S.2d 9, 12 (N.Y. App. Div. 2002) (strict liability, negligence); *Copart Indus. v. Consol. Edison Co.,* 41 N.Y.2d 564, 568 (N.Y. 1977) (public nuisance "consists of conduct or omissions which offend, interfere with or cause damage to the public ...."); *Id.*, 41 N.Y.2d at 570 (private nuisance requires "an interference substantial in nature" with the plaintiff's property interests); N.Y. Nav. Law § 181(5) (authorizing "any injured person" to bring claim against discharger). After over five years of discovery, the City has not offered anything but speculation as to potential injury or damage concerning wells 5, 22, 26, 39 and 45.

Damages cannot be awarded on the basis of conjecture or guess work. NEW YORK JURISPRUDENCE 2D, DAMAGES, §14 (2005), *citing Schneider v. State,* 327 N.Y.S.2d 60 (3d Dept. 1971). *See also Niagara Mohawk v. Ferranti-Packard*, 607 N.Y.S.2d 808, 810 (N.Y. App. Div. 1994); *Askey et al. v. Occidental Chemical Corp. et al.,* 477 N.Y.S.2d 242, 247 (N.Y. App. Div. 1984) ("Consequences which are contingent, speculative, or merely possible are not properly

---

[1]  Plaintiff also asserts a citizen suit claim under the Toxic Substances Control Act, for which the only relief sought (and permitted) is injunctive.

[2]  New York does not recognize civil conspiracy as an independent tort, *Shared Communications Servs. of ESR, Inc. v Goldman Sachs & Co.,* 803 N.Y.S.2d 512, 613 (N.Y. App. Div. 2005); *Frank v. DaimlerChrysler Corp.*, 741 N.Y.S.2d 9, 17 (N.Y. App. Div. 2002).

considered in ascertaining damages"); *State of New York v. Fermenta ASC Co. et al.,* 630 N.Y.S. 2d 884, 890-91 (1995) ("Damages for the prospective consequences of a tortuous injury are recoverable only if the prospective injury may with reasonable probability be expected to flow from the past harm, and consequences which are contingent, speculative, or merely possible are not properly considered"); *Plainview Water Dist. v. Exxon Mobil Corp.,* 856 N.Y.S.2d 502, 2008 NY Slip Op 50152U, *26 (N.Y. Sup. Ct. 2008) (holding that plaintiff failed to prove that threatened MTBE impacts are "'certainly impending,' 'actual and at hand' and 'real and immediate' as required by New York law" and finding no imminent threat as a matter of law where over 6 years had elapsed without the threat occurring). *Tronolone v. Praxair,* 833 N.Y.S.2d 816 (N.Y. App. Div. 2007) (new trial ordered on damages where plaintiff's prospective need for surgery was not established with reasonable probability).

In assessing the sufficiency of an "injury-in-fact" under Article III, the Supreme Court has ruled that an injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *In re: MTBE Prods. Liabil. Litigation,* 458 F. Supp 2d 149, 153 (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992)). When considering imminent harm rather than actual harm, *Lujan* further cautions that the "imminence" requirement is "stretched beyond the breaking point when, as here, the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff's own control." *Lujan,* 504 U.S. 555 at 564, n. 2.

The City's experts engage in extensive modeling and postulation regarding the threat of future impacts to these wells and the costs of new treatment systems for them; evidence that is irrelevant if City isn't using the wells and has no definitive plans for doing so. Indeed, none of City's groundwater wells actively pump water to customers. ***Maybe*** the City will decide to re-

activate its wells.  If it does activate its wells, *maybe* Wells 5, 22, 26, 39, and/or 45 will be selected for use.  If any of these wells are activated at some hypothetical date in the future, *maybe* these wells will contain MTBE, and *maybe* they will contain MTBE at a level that requires treatment, and *maybe* the existing treatment systems will be insufficient to treat the levels of MTBE projected.

Presently, none of the wells has an MTBE detection over the applicable MCL.[3]  Because MTBE has not impaired the City's rights to use these wells, it has disclaimed any past damages associated with those MTBE detections.  *See Declaration of Jennifer Kalnins Temple* ("Kalnins Temple Decl."), Ex. A at 4, 72, 89, 169, 206 (*Plaintiff City of New York's Responses and Objections to Defendants' Well Specific Discovery Responses* (Oct. 24, 2008)) ("The City does not seek to recover past damages for Well No. [5, 22, 26, 39, 45]").  As the City is not seeking past damages as to these wells, the only possible injury or damage the City can claim for these wells is the future cost associated with treating them for MTBE if they are turned on, and if MTBE is detected at a level that requires treatment when they are.  But after 5+ years of litigation, the City still cannot say with any certainty whether it will ever pump these wells again, a factor which is entirely within its control.  With no probable plan to use these wells, and no evidence that pre-existing treatment systems will be insufficient to address future concentrations of MTBE that may be detected, any evidence relating to MTBE impacts associated with these wells is impermissible speculation and highly prejudicial.

---

[3]  In some cases, these wells have only ever had *one* detection of MTBE (*i.e.,* Well 26 at 0.61 ppb in July 2005) or have *never* had a detection (*i.e.,* Well 39) (the detection on the City's June 2005 Court-ordered Statute of Limitations Chart actually relates to a detection of MTBE in a monitoring well).

### A.    The City Has No Definite Plan to Ever Pump These Wells Again.

Plaintiff alleges that it intends to "address the presence of MTBE in Well No. [5, 22, 26, 39, 45] by providing appropriate treatment to address MTBE and enable the City to provide high quality water from Well No. [5, 22, 26, 39, 45] to customers *when* it pumps water from the Well into distribution." Kalnins Temple Decl., Ex. A at 5, 73, 92, 172, 208. However, the City can offer no proof that it is reasonably probable that it will use these wells at a time when MTBE will impact the wells at levels requiring treatment.

Discovery has shown that the City has hired contractors to study the possible uses of its now idle groundwater system under a project called the "Water Supply Dependability Study." One of the purposes of the project has been to study whether the groundwater system can be used as an alternative source of water if, for example, parts of its upstate system need to be idled for maintenance or repair.[4]  Specifically, the City is considering a proposal by its consultants to pump 55 million gallons per day of Queens groundwater through the clustering of wells for treatment (the "Jamaica Phase I Groundwater Project").  This Project is currently in the "10% design stage" with the final design not scheduled to be completed until late 2011.  Kalnins Temple Decl., Ex. B (*Rule 30(b)(6) Deposition of William Meakin* (Apr. 23, 2009)) at 365:4-9. Completion of the design does not mean that the Jamaica Phase I Groundwater Project is guaranteed to go forward.  Once the Department of Environmental Project ("DEP") "has enough" information to select which of the Dependability projects it believes should go forward, the DEP will make a recommendation to the City as to one or more of these projects.  Kalnins Temple Decl., Ex. B (*Meakin Deposition* (Apr. 22, 2009)) at 107:7-14.   Should the City

ultimately decide to go forward with construction of the Jamaica Phase I Groundwater Project (at some unspecified date in the future), construction will require an additional 9–15 years.[5]   Under this schedule, these wells would not be reactivated any earlier than 2020–2025.   The notion that MTBE will be detected in these wells at that time at levels requiring treatment rests on speculative mathematical modeling.   But this motion rests on something more concrete— regardless of the credibility or accuracy of that mathematical modeling—the City cannot state with any degree of probability that it will use wells 5, 22, 26, 39 or 45 in the future.

Indeed, work on the Dependability Study has not progressed to a point where the City can even identify which—if any—of the focus wells may be re-activated after 2020.   This is confirmed by the City's Rule 30(b)(6) Person Most Knowledgeable on the subject who testified that the City *has not made any final decision* as to *which wells* could or would be utilized. Kalnins Temple Decl., Ex. B (*Meakin Deposition* (Apr. 23, 2009)) at 438:7-23.  And that poses a problem for the City under New York law. *Fermenta,* 630 N.Y.S. 2d at 890–91.

**B.      The City's Consultants Have Recommended the Wells Not Be Used.**

Understandably, the City's Rule 30(b)(6) witness could not state for certain whether, for example, in 2012 the Mayor will decide to fund construction of a new tunnel or authorize development of the wells.  Indeed, a veritable avalanche of speculation surrounds the status of this project: which wells may be developed, or when—if at all—any of these proposals may proceed to completion.  Significantly, however, the City's consultants are recommending that

---

[4]   Among other possibilities its consultants have studied are the construction of a redundant parallel tunnel to bring upstate water to the City, as well as various interconnections with neighboring water systems.

[5]   Kalnins Temple Decl., Ex. B (*Meakin Deposition* (Apr. 23, 2009)) at 367:17 – 368:13.  City documents place the estimate somewhere between 126 months and 176 months, or 10 to 15 years.  NYC-DS2-0014173 to NYC-DS2-0014175.

certain of the Defendants' focus wells *not* be used for a host of reasons, including their placement in the shallow Upper Glacial Aquifer, or the likelihood that their pumping will cause saltwater intrusion.[6]

With respect to wells 26 and 39, the City's consultants are recommending against their use for the Project because they are screened in the Upper Glacial aquifer and therefore have a "higher susceptibility to surface contamination." Kalnins Temple Decl., Ex. C (*D. O'Rourke Memorandum to Tracey Liberi dated March 27, 2008*) at pp. 1-2, 6, 7. Similarly, Well 45 is not recommended for the Project because if pumped it will pull salt water into the drinking water aquifer. *Id.* at 8. The City's Rule 30(b)(6) witness definitively testified that well 45 is "definitely not part" of the Phase I Groundwater Project. Kalnins Temple Decl., Ex. B (*Meakin Deposition* (Apr. 23, 2009)) at 407:23-408:13.

Wells 5 and 22 provide a unique example. They are not designated for the Project because they already have existing treatment systems in place. The City's Rule 30(b)(6) witness testified that the City has no plans to remove the existing treatment systems on these wells so they can "be up and ready for an emergency." Kalnins Temple Decl., Ex. B (*Meakin Deposition* (Apr. 22, 2009)) at 117:19-118:6. This testimony directly conflicts with the testimony of the City's litigation expert that these systems should be removed and that new treatment systems should be installed in anticipation of future hypothetical MTBE detections.[7] Evidence that the City is entitled to millions of dollars for brand new treatment systems for these two wells clearly

---

[6]   In fact, the current proposal for the Project contemplates the drilling of new wells, rather than use existing wells in the Upper Glacial Aquifer.

[7]   Kalnins Temple Decl., Ex. D (*Deposition of Marnie Bell* (Apr. 21, 2009)) at 466:18-466:23 ("Q. [D]oes your proposed design for well 22 relative to the GAC technology include any components of the pre-existing equipment? A. No. We assumed that all new facilities would be provided.").

should not be presented to a jury, not only because it is based on rank speculation, but because it contradicts the City's own testimony that new treatment systems will *not* be installed on these wells. Such testimony is highly prejudicial and confusing.

Simply put, the City of New York has offered no evidence that a future use for these wells is anything more than contingent, speculative, or merely possible, but *not* reasonably probable. Even the City's testifying expert on damages acknowledged the speculative nature of the City's claimed need for treatment on Wells 5, 22, 26, 39 and 45:

> "Q.     And assuming in this case that the City were to fail to recover the money that you've indicated is necessary for treatment in this case, would it be your opinion that the City should still install the treatment systems you've proposed for the focus wells? …
>
> A.     It's my opinion on station 6 that treatment should be installed regardless whether the City recovers money or not.  In regards to the other focus wells, the City needs to decide if those wells will be used, if they desire to use those wells for treatment.  And I think the City really needs to make that decision on whether they want to proceed with treatment on the other wells."

Kalnins Temple Decl., Ex. D (*Bell Deposition* (Apr. 21, 2009)) at 622:10-623:9.

As the Supreme Court held in *Lujan,* noted above, the "imminence" requirement of Article III standing is "stretched beyond the breaking point when, as here, the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff's own control." *Lujan*, 504 U.S. 555 at 564, n. 2.  Without being able to show to a reasonable degree of probability that the City will use these wells in the future and that when used, the wells will have MTBE at a level requiring treatment, and that current treatment systems will be insufficient to treat the hypothetical levels of MTBE, such speculative evidence of "damage" or "injury" must be excluded.  *Fermenta,* 630 N.Y.S. 2d at 890–91.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that its motion to exclude

evidence or argument of future injury or damage to Wells 5, 22, 26, 39 and 45 be granted.

Dated: New York, New York
      May 11, 2009

Respectfully submitted,

_____
Jennifer Kalnins Temple (JK 3274)
MCDERMOTT WILL & EMERY LLP
18191 Von Karman Avenue, Suite 500
Irvine, CA 92612-7108
Tel: (949) 757-7128
Fax: (949) 851-9348

Peter J. Sacripanti (PS 8968)
James A. Pardo (JP 9018)
MCDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, NY 10173-1922

*Attorneys for the Exxon Mobil Corporation*
*Defendants and on behalf of all remaining*
*Defendants*