UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

This document pertains to:

*City of New York v. Amerada Hess Corp. et al.*,
Case No. NY-04-CV-03417

Master File No. 1:00-1898
MDL 1358 (SAS)
M21-88

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JOINT MOTION *IN LIMINE* TO PRECLUDE PLAINTIFF FROM OFFERING EVIDENCE OR ARGUMENT CONCERNING ANY POLICY OR REQUIREMENT TO TREAT MTBE CONTAMINATION TO ANY LEVEL OTHER THAN THE NEW YORK STATE <u>MAXIMUM CONTAMINANT LEVEL</u>**

# INTRODUCTION

Plaintiff City of New York ("Plaintiff") has produced documents and provided deposition testimony referencing internal policies of the New York City Department of Environmental Protection (NYCDEP) to treat methyl-tertiary butyl ether ("MTBE") detected in its water supply to a fraction of the 10-part-per billion ("ppb") New York State maximum contaminant level ("MCL"). Any such testimony or evidence is highly prejudicial and misleading since it suggests to the jury that these actions are legally required or otherwise necessary—a result that is in stark contrast to the actual requirements of New York's regulatory scheme.

As the Court noted in its October 10, 2006 Opinion & Order on Defendants' motion for summary judgment for lack of standing, state and federal regulatory authorities promulgate water quality standards – known as Maximum Contaminant Levels – which establish the highest amount of any contaminant that may be present in drinking water provided to the public. In New York, the State Department of Health has set the current MCL for MTBE at 10 ppb. *In re MTBE Prods. Liab. Litig.*, 458 F. Supp. 2d 149, 153 (S.D.N.Y. 2006). It is this standard, and no other, that defines what level of MTBE may exist in the potable drinking water that Plaintiff provides to its customers and constituents. 10 NYCRR §§ 5-1.1(ay), 5-1.50. Therefore, the Court should exclude at trial all evidence, testimony or argument regarding any *other standard* (including internal NYCDEP policies) to remove MTBE to any other level. Such evidence is very misleading as to the determination of whether Plaintiff has been damaged under New York law and its admission at trial would only cause jury confusion and prejudice to Defendants.

## LEGAL STANDARD

Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Under Federal Rule of Evidence 402, "[e]vidence which is not relevant is not admissible." Evidence is relevant if it "tends to prove or disprove a matter properly provable in the case." *United States v. Torniero*, 735 F.2d 725, 730 (2d Cir. 1984) (internal quotations omitted); *see also Bensen v. Amer. Ultramar*, No. 92 Civ. 4420, 1996 U.S. Dist. LEXIS 10647, at *14 (S.D.N.Y. July 26, 1996) ("[R]elevancy is a relationship between a proffered item of evidence and a fact that is of consequence to the determination of the action." (internal quotations omitted)). The party seeking to admit the evidence "has the burden of showing that the prerequisites for its admissibility are met." *Potamkin Cadillac Corp. v. B.R.I Coverage Corp.*, 38 F.3d 627, 632 (2d Cir. 1994).

Even if relevant, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403; *United States v. Royer*, 549 F.3d 886, 901 (2d Cir. 2008) ("Federal Rule of Evidence 403 allows relevant evidence to be excluded by the trial court if its probative value is substantially outweighed by such dangers as unfair prejudice." (internal quotations omitted)); *United States v. Bowe*, 360 F.2d 1, 15 (2d Cir. 1966) ("A trial judge has discretion to exclude evidence which is only slightly probative if its introduction would confuse and mislead the jury by focusing its attention on collateral issues and if it would unnecessarily delay the trial."); *Guidi v. Inter-Continental Hotels Corp.*, No. 95 Civ. 9006, 2003 U.S. Dist.

LEXIS 6385, at *5-*6 (S.D.N.Y. Apr. 16, 2003) (excluding evidence where "likelihood of jury confusion [was] great"). "Unfair prejudice" in the context of Federal Rule of Evidence 403, "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Bermudez*, 529 F.3d 158, 170 (2d Cir. 2008) (citing *Old Chief v. United States*, 519 U.S. 172, 180 (1997)).

## ARGUMENT

Evidence that any standard other than the New York MCL applies to the permissible level of MTBE in drinking water that the City may serve to its customers is irrelevant and highly prejudicial. Whether or not the City has been damaged as a matter of law requires an analysis of the actions it is legally required to take when MTBE is detected in its wells, and the City is *not* required to take a well out of service when MTBE is detected below the MCL, nor even when it is detected *on a single occasion* above the MCL. *See* 10 NYCRR § 5-1.52, tbl. 3. Nor is the City legally required to filter MTBE out of drinking water to levels below the MCL of 10 ppb.

The City does not dispute this reality when communicating with its customers. The City of New York's Annual Water Quality Reports are replete with references to MCLs for various contaminants and explanations as to why individual exceedances of the MCL do not constitute a violation requiring removal of a well. *See, e.g. New York City 2007 Drinking Water Supply and Quality Report*, at 14 n.13 (explaining that "[n]o MCL violation occurred" despite a detection of tetrachloroethylene or PCE above the New York MCL) (copy available at: http://www.nyc.gov/html/dep/pdf/wsstate07.pdf).

Moreover, when Defendants' moved for summary judgment on the City's claims for lack of standing, Defendants noted in particular that (at that time) the City of New York followed the New York MCL when describing its obligations relating to water quality by quoting from the

- 3 -

deposition of the former Director of Drinking Water Quality for the City of New York, Arthur Ashendorff. *See Defendants' Memorandum of Law in Support of their Motion for Summary Judgment On All Claims for Lack of Justiciability* (Jan. 23, 2006) at 5 ("regulations are proposed and analyzed...[and] our job is to make sure that the drinking water meets that standard"); *see also Declaration of Jennifer Kalnins Temple* ("Kalnins Decl."), Ex. A (*Deposition of Arthur Ashendorff* (Oct. 19, 2005)), at 293:2-10.

Since the Court's Opinion & Order on that motion, a number of significant factual developments have occurred relating to this issue. The City no longer pumps water to customers from its groundwater system. None of the focus wells were retired because of MTBE. However, now the City has produced documents and provided deposition testimony that reference a shift in its internal policies such that **if** and **when** the City returns any of its wells to service, it is considering the treatment of any future MTBE detections to 10% of the MCL, although this policy decision has not been finalized. More specifically, meeting minutes produced by the City dated June 30, 2008, reference a "preliminary decision" of the City to filter from water certain chemicals (including MTBE) to "10 percent of the MCL, 90 percent of the time." *See* Kalnins Temple Decl., Ex. B (*Minutes of Groundwater Project Team Meeting – May 27, 2008*), at 5. At his April 23, 2009 deposition, City witness Steven Schindler, acting Director of Drinking Water Quality for the Bureau of Water Supply (who has been designated by the City as a witness who will provide opinion testimony on the "quality of water supplied to City consumers") could not articulate what this policy meant, nor could he say whether a final decision had been made with respect to this policy:

> Q. What does it mean to treat a carcinogen to 10 percent of the MCL 90 percent of the time?

> A. Well, it would mean to provide adequate treatment to ensure they do not exceed 10 percent of the MCL in 90 percent of the samples that are collected.
>
> Q. And do you know how the city would go about ensuring that level of treatment?
>
> A. Well, it would be through a -- an engineering design analysis. I'm not as I said earlier, I'm not an expert on – on treatment, but there would be treatment processes that would be able to achieve these levels.
>
> Q. And when it says a preliminary decision has been made, do you know if this decision has changed from being a preliminary to a final decision?
>
> A. I don't know.

*See* Kalnins Decl., Ex. C (*Deposition of Steven Schindler* (Apr. 23, 2009)), at 170:20-171:16.

That Plaintiff has an internal policy to do other than what is required by law is not probative of whether it has suffered a legally cognizable injury, and, therefore, is irrelevant to the present case. *Torniero*, 735 F.2d at 730; *Bensen*, No. 92 Civ. 4420, 1996 U.S. Dist. LEXIS 10647, at *14. Moreover, evidence or argument that the City plans to hold itself to a higher standard than the 10-ppb MCL is so prejudicial as to substantially outweigh any possible probative value. Fed. R. Evid. 403; *Royer*, 549 F.3d at 901. Statements concerning this policy will inevitably lead the jury to surmise that this policy or practice will be necessary for one reason or another. At best, the jury may conclude that that reason is a legal requirement (which it is not). At worst, the jury will be misled regarding the State-determined, safe level of MTBE in drinking water. The City has never alleged that the MCL has been improperly determined or is insufficient for the protection of human health. Furthermore, "[m]aximum contaminant levels are established to ensure that the water is safe for people to drink." *See New York State Department of Health Drinking Water Program: Frequently Asked Questions* (copy available at: http://www.health.state.ny.us/environmental/water/drinking/faq_def.htm).

The likelihood that confusion will ensue by permitting Plaintiff to offer testimony regarding its internal policies for treating MTBE to levels other than the New York MCL substantially outweighs any probative value of introducing such evidence. *See* Fed. R. Evid. 403; *Guidi v. Inter-Continental Hotels Corp.*, No. 95 Civ. 9006, 2003 U.S. Dist. LEXIS 6385, at *5-*6. To avoid confusion, misdirection and delay, this Court has the discretion to prevent entry of irrelevant or misleading evidence. *Bowe*, 360 F.2d at 15. In an already complicated case, evidence of Plaintiff's tentative policy (which may be "final" by the time of trial) to treat MTBE detections to a fraction of the MCL poses a significant risk of confusion that substantially outweighs any limited probative value.

## CONCLUSION

For all of the foregoing reasons, Defendants' motion to exclude evidence or argument of Plaintiff's internal policies regarding detections of MTBE below the New York State maximum contaminant level should be granted.

Dated: New York, New York
May 11, 2009

Respectfully submitted,

_____
Jennifer Kalhins Temple (JK 3274)
McDermott Will & Emery LLP
18191 Von Karman Avenue, Suite 500
Irvine, CA 92612-7108
Tel: (949) 757-7128
Fax: (949) 851-9348

Peter J. Sacripanti (PS 8968)
James A. Pardo (JP 9018)
McDermott Will & Emery LLP
340 Madison Avenue
New York, NY 10173-1922

*Attorneys for the Exxon Mobil Corporation Defendants and on behalf of all remaining Defendants*