# EXHIBIT 6

*Text or summary was published* in the notice of proposed rule making, I.D. No. EDU-28-01-00009-P, Issue of July 11, 2001.
*Revised rule making(s) were previously published in the State Register on* August 29, 2001.
*Final rule as compared with last published rule:* No changes.
*Text of rule and any required statements and analyses may be obtained from:* Mary Gammon, Legal Assistant, Office of Counsel, Education Department, Albany, NY 12234, (518) 473-8296, e-mail: legal@mail.nysed.gov
*Assessment of Public Comment*
Since publication of a Notice of Revised Rule Making in the *State Register* on August 29, 2001, the State Education Department has received the following comments:
COMMENT:
The proposed amendment requires school districts to record period by period attendance in middle schools where scheduled instruction is departmentalized. This requirement appears to run contrary to findings in literature concerning approaches to attendance problems in middle schools and would impose a costly administrative burden. In addition, the requirement will differentiate between middle schools in terms of attendance recordkeeping.
DEPARTMENT RESPONSE:
The proposed amendment calls for period-by-period attendance in grades nine through twelve and in those middle school grade levels where instruction is departmentalized. This requirement addresses two fundamental purposes of critical importance to both school personnel and to parents. One purpose is to verify that individual students are complying with Education Law in relation to compulsory attendance. Secondly, it addresses the need to know the whereabouts of every student for safety and other reasons. While high school students may have more mobility in terms of leaving school campuses, the ability of middle school students to find areas on campus to go to in lieu of class needs to be recognized. This is especially true in schools where students in middle level grades change classrooms for scheduled, departmentalized instruction. Since the grade level at which departmentalized instruction begins varies from school district to school district, it is not possible to treat all middle schools in exactly the same way. To abandon period-by-period attendance for all middle schools would run contrary to the responsibility of school personnel to know the whereabouts of all students.
COMMENT:
What will attendance data collected by schools be used for in the future?
DEPARTMENT RESPONSE:
Cumulative attendance data, specifically a district's average daily attendance, will continue to be used to determine State Aid reimbursement. However, another primary purpose for these new requirements is to use data to identify individual and group attendance patterns in order to provide programs and services to improve attendance. Consequently, the attendance data collected by schools will be used primarily by school districts to monitor the effectiveness of their comprehensive attendance policies.
COMMENT:
How did the Department estimate costs for implementation of the regulations for schools outside of New York City?
DEPARTMENT RESPONSE:
The Department's cost estimate addresses expenses that would be incurred in the development and adoption of a district's comprehensive attendance policy. It was estimated that this process would call for five meetings (four for planning and one for adoption by the board of education) with a cost of $50 per meeting for a total of $250. To this amount, the cost of $500 for the required public hearing was added and resulted in a total cost per district of $750. Since school districts, BOCES, and charter schools are required to develop policies, the $750 total was multiplied by 750 to come up with the total cost of $562,500 for implementation in public schools outside of New York City. This estimate does not reflect costs for implementation which will vary significantly across these local educational agencies.
COMMENT:
Further clarification is needed with respect to the term "departmentalized schools."
DEPARTMENT RESPONSE:
The Department plans to provide guidance to the field concerning the meaning of this term. In essence, it refers to schools which provide, in all or some of their grades, scheduled instruction that focuses on one or more of the academic disciplines and that requires the changing of classrooms during which direct continuous teacher supervision is not possible.

COMMENT:
The Board of Regents should delay action on the adoption of the proposed amendment in order to allow for further comment.
DEPARTMENT RESPONSE:
A delay in action will not be recommended. The Department has published both a Notice of Proposed Rule Making on July 11, 2001 and a Notice of Revised Rule Making on August 29, 2001. Taken together, these actions established a public comment period of approximately eleven weeks. In addition, the express terms were introduced in draft form to the Board of Regents at their April meeting. There has been ample time for comment and reaction. In addition, any postponement at this point would significantly decrease the time available for schools to develop their comprehensive attendance policies.
COMMENT:
Support was expressed for the requirement that attendance be taken in each period of scheduled instruction for students in grades nine through twelve or in departmentalized schools and this information would be reported to a centralized location at the school level. While some school districts may have to make a significant investment to comply with this new requirement, most districts currently track attendance in a similar manner and the impact will therefore be minimal.
DEPARTMENT RESPONSE:
The Department concurs with this comment.
COMMENT:
Support was expressed for the provision in the proposed amendment that would give each school district flexibility to define excused and unexcused absences in their attendance policy and determine that an excused absence, for which the pupil has performed any assigned make-up work, would not be counted as an absence for the purpose of determining the pupil's eligibility for course credit.
DEPARTMENT RESPONSE:
The Department concurs with this comment.
COMMENT:
The proposed regulation should be amended to assure wider input from school staff in the development of the attendance policy. Language should be added to require that the plan be developed through a process that provides for the participation of parents, school personnel designated by their collective bargaining agent, if any, and appropriate members of the community.
DEPARTMENT RESPONSE:
The Department believes that an amendment to the proposed regulation is not necessary and that the issue of collaboration in development of the attendance policy is best addressed in Department guidance to the field.

# Department of Environmental Conservation

## NOTICE OF ADOPTION

**Oxygenated Fuels Program**
I.D. No. ENV-26-01-00006-A
Filing No. 1157
Filing date: Oct. 5, 2001
Effective date: 30 days after filing

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:
*Action taken:* Amendment of section 200.9 and Subpart 225-3 of Title 6 NYCRR.
*Statutory authority:* Environmental Conservation Law, sections 1-0101, 3-0301, 19-0103, 19-0105, 19-0301, 19-0303 and 19-0305
*Subject:* Oxygenated Fuels Program in the New York City consolidated metropolitan statistical area (CMSA) and the Syracuse metropolitan statistical area (MSA).
*Purpose:* To remove the requirement for the program on the basis that both areas are in attainment with the carbon monoxide (CO) National Ambient Air Quality Standards (NAAQS).
*Text or summary was published* in the notice of proposed rule making, I.D. No. ENV-26-01-00006-P, Issue of June 27, 2001.

*Final rule as compared with last published rule:* No changes.
*Text of rule and any required statements and analyses may be obtained from:* Steven Botsford, Department of Environmental Conservation, Division of Air Resources, 625 Broadway, Albany, NY 12233-3251, (518) 402-8396, e-mail: srbotsfo@gw.dec.state.ny.us
*Additional matter required by statute:* Pursuant to art. 8 of the State Environmental Quality Review Act, a short environmental assessment form, a negative declaration and a coastal assessment form have been prepared and are on file. Pursuant to art. 5 of the Environmental Conservation Law, this rule has been approved by the State environmental board prior to adoption.

*Assessment of Public Comment*

The New York State Department of Environmental Conservation (Department) is proposing to amend 6 NYCRR Subpart 225-3, Fuel Composition and Use - Gasoline, (proposed rule amendment) to remove the requirement in the rule that the oxygenated gasoline program be implemented in the New York portion of the New York City Metropolitan Statistical Area, hereafter referred to as the New York Metropolitan Area, and in Onondaga County during the months of November through February. The Department also proposes to shorten the period that Reid Vapor Pressure controls be imposed on gasoline distributed in the New York Metropolitan Area in the event of an exceedance of the Carbon Monoxide National Ambient Air Quality Standard (CO NAAQS), from September 16th through April 30th, to November 1st through the last day of February. Revisions to Section 200.9, Referenced Material, are also proposed, to parallel the changes to Subpart 225-3.

The Department also proposes to revise the State Implementation Plan and Redesignation Request for Onondaga County as Attainment for Carbon Monoxide, hereafter referred to as the proposed SIP revision, by substituting the automobile inspection and maintenance program for the oxygenated fuels program as a contingency measure for Onondaga County, in the event of an exceedance of the CO NAAQS.

The public comment period on these proposals began on June 27th, 2001 and ended at the close of business August 6th 2001. Included in this comment period were two public hearings, held July 30th and 31st of 2001. The hearings were held at Onondaga Community College, Syracuse, New York, and at U. S. Environmental Protection Agency Region 2 headquarters at 290 Broadway, New York City, New York, respectively.

The Department sought comments from all interested persons, companies, and organizations regarding the proposed rule amendments and SIP Revision. Notices of the hearing were published in the New York *State Register*, the Environmental Notice Bulletin, and several newspapers throughout the State. The Department also direct mailed over 400 copies of the hearing notice to parties that had previously expressed interest in being informed of such actions such as public hearings regarding rulemakings and SIP revisions.

The Department also solicited public comment on a proposed revision to the State Implementation Plan for ozone during these same public hearings and comment period. The proposed revision to the State Implementation Plan for ozone are independent of the proposed rule amendments and SIP Revision, and are not addressed here. They will be discussed in a separate document.

ASSESSMENT OF COMMENTS

The hearing record consists of the testimony received on the proposed rule amendment and SIP revision. Two individuals provided testimony at the hearings. Both of these commentators submitted written comments in addition to their oral comments. Additional written comments were received from one organization, prior to the end of the comment period. All comments received expressed support of the proposed rule revision. No comments were received in opposition to either the proposed rule amendment or SIP revision. A list of the commentators and a summary of the comments and the Department's responses follow:

LIST OF COMMENTATORS:

1. Mr. Fred Anderson, Issues Advisor, Exxon Mobil Refining and Supply Co. - Fuels Marketing Department, P.O. Box 2180 (Room 2659), Houston, TX 77252

2. Mr. David Coburn, Director, Onondaga County Office of the Environment, John H. Mulroy Civic Center, 421 Montgomery Street (14th Floor), Syracuse, NY 13202

3. Ms. Cathy Kenny, Associate Director, New York State Petroleum Council, 150 State Street, Albany, NY 12207

The numbers listed before the name of the commentator correspond to the number(s) found at the end of each comment presented in this document, to help identify the commentator, and have no other meaning.

SUMMARY OF COMMENTS AND RESPONSES

Comment: The commentator strongly supports the Department's proposal to remove the oxygenated fuels program in the New York Consolidated Metropolitan Statistical Area and the Syracuse Metropolitan Statistical Area and hopes the rule amendment will be made final as soon as possible. (1)

Response: The Department appreciates the support.

Comment: Onondaga County desires to replace the oxygenated fuel contingency measure with an alternative that would be more cost-effective and environmentally friendly. The County supports the proposed rule amendment and SIP revision. (2)

Response: The Department appreciates the support.

Comment: The proposed rule revision will provide certainty to the marketplace before the onset of the oxygenate season. The commentator, on behalf of membership organizations, supports the proposed rule amendment and views this regulatory action as timely. (3)

Response: The Department appreciates the support.

## PROPOSED RULE MAKING
## NO HEARING(S) SCHEDULED

**Managed Harvest of White-Tailed Deer in Suffolk County**
**I.D. No.** ENV-43-01-00002-P

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following proposed rule:
*Proposed action:* Amendment of section 1.24 of Title 6 NYCRR.
*Statutory authority:* Environmental Conservation Law, section 11-0903(7)
*Subject:* Managed harvest of white-tailed deer in Suffolk County.
*Purpose:* To make an adjustment to the special January firearms season dates to better match population status, and hunter and agricultural community desires.
*Text of proposed rule:* Amend 6 NYCRR Part 1 Section 1.24, Special season for deer of either sex in Suffolk County, as follows:
Section 1.24 through Subdivision 1.24(a) remains unchanged.
Amend Subdivision 1.24(b) to read as follows:
    (b) Open season and times. Deer may be taken, Monday through Friday from sunrise to sunset beginning on the Monday following the first Saturday in January through the [Friday following the third Saturday] *last weekday* in January.
Subdivisions 1.24(c) and (d) remain unchanged.
Subdivision 1.24(e), paragraphs (1) through (3) remain unchanged.
Subdivision 1.24(e), paragraph (4) is repealed.
Subdivision 1.24(e), paragraphs (5) and (6) are renumbered as paragraphs (4) and (5).
Subdivision 1.24(e), renumbered paragraph (5) through end of Section 1.24 remains unchanged.
*Text of proposed rule and any required statements and analyses may be obtained from:* Daniel Rosenblatt, Regional Wildlife Manager, Department of Environmental Conservation, State University of New York, Bldg. 40, Stony Brook, NY 11790, (631) 444-0305, e-mail: dlrosenb@gw.dec.state.ny.us
*Data, views or arguments may be submitted to:* Same as above.
*Public comment will be received until:* 45 days after publication of this notice.
*Additional matter required by statute:* State Environmental Quality Review Act (Environmental Conservation Law art. 8). The establishment of hunting and trapping regulations is addressed by a final programmatic impact statement (FPIS) on wildlife game species management (DEC 1980) and supplemental findings (DEC 1994). The proposed action does not involve significant departure from established and accepted practices as described in the FPIS and does not establish any new program or major reordering of priorities.
*This action was not under consideration at the time this agency's regulatory agenda was submitted.*
*Regulatory Impact Statement*
1. STATUTORY AUTHORITY:
    Section 11-0303 of the Environmental Conservation Law directs the Department of Environmental Conservation to develop and carry out programs that will maintain desirable species in ecological balance, and to observe sound management practices. This directive is to be met with regard to ecological factors, the compatibility of production and harvest of wildlife with other land uses, the importance of wildlife for recreational purposes, concerns for public safety, and the need for adequate protection