# EXHIBIT 1

Title 40—Protection of Environment
CHAPTER I—ENVIRONMENTAL PROTECTION AGENCY
SUBCHAPTER C—AIR PROGRAMS
[FRL 411-8]
PART 79—REGISTRATION OF FUELS AND FUEL ADDITIVES

Requirements

On March 7, 1974, the Environmental Protection Agency published a notice of proposed rulemaking in the FEDERAL REGISTER (39 FR 8929) setting forth proposed regulations for the registration of fuels and fuel additives. Pursuant to this notice, many written comments were received during an extended public comment period. The proposed registration requirements have been reviewed in the light of these comments, and numerous changes have been made. The Agency's responses to the issues raised in the comments are set forth below.

*Definition of fuels and designation of engine oils for registration.* Industry trade associations and other interested persons have asserted that the definition of fuels contained in the regulations is impermissibly broad. They contend that section 211 of the Clean Air Act, as amended, authorizes registration of fuels for use in motor vehicles only and that the definition of fuel must be confined to substances or materials intended for use as a source of propulsion for motor vehicles. They object, therefore, to the designation of additives used in motor vehicle engine oils as subject to registration.

First, neither the language nor the legislative history of section 211 supports limiting the registration authority of section 211(a) to motor vehicle fuels and additives. While only motor vehicle fuels are subject to regulation under section 211(c), the Administrator's authority to require registration of "any fuel or fuel additive" was established in the Clean Air Act of 1967 and retained in the 1970 Amendments. EPA has designated only motor vehicle fuels for registration at this time, but this choice is dictated by research priorities and not by a lack of authority to regulate other types of fuels.

Section 79.2(c) of the registration regulations contains the definition of "fuel" as promulgated in the original fuel registration regulations issued in 1970. The word "fuel" is defined as "any material which is capable of releasing energy or power by combustion or other chemical or physical reaction." EPA believes that this broad definition of fuel reflects the intent of Congress in providing for the registration of fuels and fuel additives to grant authority encompassing all materials which might affect the emission products of combustion and thus the public health and welfare.

The function of motor vehicle engine oils is to lubricate the cylinder walls and the intake and exhaust valves of both standard piston and rotary engines. Although these oils are not introduced into the combustion chamber for the purpose of providing power for the engine, a portion of the oil is in fact combusted in the normal operation of the engine. This quantity increases in older, partially worn engines.

Most of the parties commenting on the regulations conceded that engine oils are combusted in the normal operation of both standard piston and rotary engines. They argued, however, that the quantities of engine oil consumed in the piston engine are not great enough to have a significant impact on emissions or emission control devices. While a relatively large volume of engine oil is deliberately introduced into the fuel and combustion process of the rotary engine, some persons commenting asserted that EPA should wait until larger numbers of rotary engines appear on the market.

The total quantity of engine oils consumed in vehicles is, of course, less than that of gasoline. However, the concentrations of additives containing various elements, especially metals, whose emission products are of concern to EPA are much higher in engine oils than in gasoline. Engine oils contain large quantities of additives, averaging 15 percent of total product volume and ranging as high as 40 percent. Gasoline additives, by contrast, average only 0.1 percent of total product volume. Considering both the consumption rates and the average additive content of engine oils and gasoline, the combustion and emission products of engine oil additives are, on the average, somewhat lower than that of gasoline additives; but they are of the same order of magnitude and are readily detectable in the exhaust.

There is ample evidence in the literature that lubricant composition and additive materials influence exhaust composition. Some investigators have found that lubricant consumption greatly increased emission of polynuclear aromatic hydrocarbons,[1,2] Another researcher found zinc and barium in exhaust particles due to lubricant trace metals.[3] High lubricant consumption in rotary engines has also been a matter of considerable concern. A current EPA-funded program seeks to determine the impact on diesel exhaust products of the current commercial practice of adding used motor oil to diesel fuel.[4] EPA must monitor the composition of engine oil additives to guard against the introduction into engine oil of additives which could result in exhaust products damaging to emission control devices, as well as to insure that potentially toxic (as, for example, carcinogenic) products in significant levels do not enter the ambient air, particularly in regions of high traffic density.

Finally, many of the comments suggest that EPA should not require registration of particular fuels or additives such as engine oil additives unless EPA has reason to believe that their emission prod-

[1] Begeman, C. R. and J. M. Colucci, SAE Trans., 79, 1682 (1970).
[2] Gross, G., Final Report on CRC-APRAC Project CAPE-6-68, Oct. 31, 1973.
[3] Ninomiya, J. S., W. Bergman, and B. H. Simpson, Paper No. EN-106, presented at the Second International Clean Air Congress, Washington, D.C., Dec. 6-11, 1970.
[4] EPA grant 802425-01-02, Pennsylvania State University, May 1974.

ucts impair the effectiveness of emission control devices or endanger public health or welfare. These comments misconceive the purpose of the registration requirements. The principal purpose of section 211(a) is to provide the Agency with information on fuel or additive composition before the emission products of such materials develop into a problem possibly requiring regulation under section 211(c). Thus, the fact that the rotary engine, for example, is not yet in widespread use has little bearing on whether to require registration of additives for engine oils. The regulations being promulgated, therefore, retain the requirement of registration of additives for motor vehicle engine oil. An effort has been made, however, to reduce the reporting burden imposed by the regulations where possible.

*Testing to determine the effect of fuels or fuel additives on emission control systems or the public welfare.* Section 79.6 (b) of the proposed regulations states that the Administrator may require a fuel manufacturer or an additive manufacturer to conduct tests in accordance with protocols based on generally accepted test methods and procedures in order to determine the fuel's or additive's effects on emissions, emission control performances of motor vehicles, or the extent to which such emissions affect welfare. Several persons commented that this provision is unauthorized because section 211(b)(2)(A) authorizes requiring tests "to determine potential public health effects" of a fuel or additive and does not refer to requiring tests to ascertain the effects on emissions, emission control systems, or public welfare.

EPA believes that requiring the latter tests is amply supported by section 211 (b)(2)(B) which requires a registrant to furnish "such other information as is reasonable and necessary to determine the emissions resulting from the use of the fuel or additive contained in such fuel, the effect of such fuel or additive on the emission control performance of any vehicle or engine, or the extent to which such emissions affect the public health or welfare." It is clear from the legislative history of section 211 that the authority of section 211(b)(2)(B) is not limited to obtaining information already developed by the registrant but extends to information that could readily be developed by test methods and procedures having general acceptance in the scientific community.

The specific authority of section 211 (b)(2)(A) to require tests to determine "potential public health effects . . . (including, but not limited to, carcinogenic, teratogenic, or mutagenic effects) . . ." is directed at an area of more esoteric information where test procedures and research parameters are not well established or generally accepted. Consequently, testing requirements in the field of potential public health effects may not be imposed until such time as the Administrator has prescribed specific protocols and procedures for conducting the research. These protocols and procedures will be proposed for public com-

ment. Requests to registrants for information to be developed by generally accepted test methods will not be subject to notice and comment procedures.

*Fuel "processors".* Several commentators asserted that a fuel "processor" may not be required to perform tests because the word "processor" appears only in section 211(a), which prohibits any fuel or additive manufacturer or processor from selling unregistered fuels or additives, but is omitted from section 211(b)(2), which authorizes the Administrator to require tests.

By enacting section 211 (a) and (b), Congress intended to establish authority for the Administrator to obtain information on health and welfare effects and effects on emission control devices of fuels and additives from the firms and individuals who introduce such fuels and additives into the marketplace. The combining of additives and/or fuels holds the potential of creating previously unidentified combustion by-products, and those who engage in this activity must be viewed in the same light as those who produce the substances which are combined. That the Congress chose to apply the broadest possible scope to its prohibition against marketing unregistered fuels or additives does not, in the Agency's view, suggest that the Administrator was to be barred from obtaining necessary information from those who in fact produce new fuels or additives by combining other fuels or additives. Broad applicability of the registration regulations is essential to assure that EPA receives complete information on the composition of designated fuels and additives from those who sell or introduce such products into commerce.

The Act does not define either "manufacturer" or "processor" as used in section 211, and nothing in the legislative history suggests that Congress intended to distinguish between manufacturers and processors for the purpose of reporting or testing requirements under the registration program. Indeed, there is no indication that the terms "manufacturer" and "processor" were meant to denote separate classes of producers. EPA has considered the term "manufacturer" to include "processor," and the existing registration regulations reflect that view. We find no legal or policy considerations compelling a departure from this interpretation in the revised regulations. To eliminate any further confusion of terminology, EPA has deleted the term "processor" from the definition of fuel manufacturer.

*Registration of packaged additives.* A group of persons commenting has recommended that packaged additives sold to consumers for addition to fuels be exempted from reporting and registration. Although the usage of packaged additives is limited, EPA has an obligation to be aware of the composition of every additive being used in motor vehicles in order to take appropriate action if an ingredient harmful to health, welfare, or an emission control device is included. This can only be assured by requiring the registration of all packaged additives. The reporting burden for manufacturers of packaged additives should be reduced in some cases by the more limited classes of information required from additive manufacturers who use only registered components with or without substances containing only hydrogen and carbon.

EPA has also consulted with representatives of the Consumer Product Safety Commission and was advised that regulation of packaged additives under the Federal Hazardous Substances Act does not require submission to that Agency of the information required under EPA's registration program.

*Test fuels or additives; spot purchases from foreign sources.* The Agency concurs with the recommendation of a number of persons commenting to exempt fuels and additives in test or developmental status from registration, and provisions exempting such fuels and additives not offered for sale to the public have been added. Also, an exemption for factory fill fuel has been included. The possibility of spot purchases of fuels of foreign manufacture to ease shortages is recognized, and a provision for simplified reporting of such purchases has been added. From time to time, a fuel manufacturer or processor may find himself in a special or unusual situation where he needs to use a registered additive which he has not previously reported. A provision for the use under such circumstances of any additive on the list of registered additives has been included.

*Information required for registering fuels and additives.* Many fuel or additive producers commented that the registration requirements impose an excessive burden. This objection is based in part on a misunderstanding of the regulations. In other cases, EPA has modified the requirements to avoid duplicative reporting of information where possible and to eliminate information requirements where the utility of the data is marginal at this time.

Some parties overlooked the fact that all information specified in Subpart D was to be furnished only to the extent such information is already known to the manufacturer, as was stated in §§ 79.11(f) and 79.21(e). The regulations being promulgated have been modified to clarify this point. The phrase "to the extent known to the manufacturer" has been shifted to the specific listings of desired information in Subpart D. In addition, the intent of this phrase has been clarified by explaining that (1) specified data are to be furnished only if known to the manufacturer "as a result of testing conducted for reasons other than fuel or additive registration or reporting" and (2) specified information is considered to be "known" only when "a report thereon has been prepared and circulated or distributed outside the research department or division."

Since a number of persons misinterpreted the request for information regarding any analytical technique that can be used to detect the presence of an additive in a fuel and to measure its concentration as a requirement to develop such a technique, it has been reworded to state that the manufacturer shall submit a suitable technique only if one is already known to him. It has also been pointed out that in some cases an additive manufacturer cannot be sure of the final chemical reaction products in his additive. Such a manufacturer may furnish the chemical composition "to the extent known," provided he also furnishes a description of the manufacturing process resulting in the final reaction products of the additive.

Several changes affecting the requirements and procedures for the registration of fuel additives have been made. New developments in additives containing carbon, hydrogen, and oxygen make it technically impossible to justify their exemption from registration in spite of recommendations to this effect. Some compounds having only carbon, hydrogen, and oxygen are known to have toxic or carcinogenic properties. B-propriolactane is a widely known carcinogen; some epoxides are also known to have toxic effects. Unsaturated carbonyl compounds which may be generated as partial combustion products are highly toxic and may also have carcinogenic activity. Thus, it is important to monitor the composition of fuel additives which contain only carbon, hydrogen, and oxygen. The additive definition has, however, been changed to exclude substances containing only carbon and/or hydrogen to avoid any uncertainty concerning the status of refinery blending streams. Refinery process chemicals are also excluded from the registration requirements.

In operations under the current regulations, additive manufacturers have understood that they are not required to furnish information about purchased components, provided such information can be obtained from the component manufacturer upon request; and a provision covering this has been inserted in these regulations. Another new provision will permit an additive manufacturer to register only the individual components of mixtures of additives that he markets only to fuel manufacturers rather than each of the mixtures, provided he will identify the components in any particular mixture upon request.

In addition, an additive manufacturer who sells under his own name a registered additive purchased from another manufacturer or a blend of such registered additive with other such registered additives and/or substances containing only carbon and/or hydrogen will be required to register his additive(s) but will not be required to furnish annual reports thereafter. This change is intended to limit potential duplicative reporting of information.

To ease the reporting burden on manufacturers of motor vehicle engine oil additives, those manufacturers are exempted from the requirement to furnish the chemical compounds in each additive to be registered and will be required to give a breakdown by chemical element only. Information on the chemical elements contained in such additives is considered sufficient for the program at this time.

Certain changes in fuel manufacturer reporting requirements have been made. The provision for reporting geographic variation in additive usage has been eliminated because of the difficulty and/or impossibility of obtaining meaningful and useful data. The only data to be required on a quarterly basis will be on additive usage, as is being provided under the current regulations, and fuel production. In addition, quarterly reports will be for calendar quarters. Other data as listed in Subpart D are to be furnished on an annual basis.

The types of gasoline being designated have been reduced to three: (1) Unleaded; (2) leaded, premium; and (3) leaded, nonpremium. The Agency feels that at the present time there is sufficient leaded premium gasoline on the market to warrant its classification but will consider elimination of this classification when the amount of leaded, premium gasoline sold is substantially reduced. The designated grades of motor vehicle diesel fuels have been reduced to two: (1) grade 1-D and (2) grade 2-D.

As requested by a number of persons commenting, time limits in which EPA will take specified actions to register fuels or additives have been set forth.

*Procedural issues; confidentiality of information.* Several persons requested that EPA hold a hearing on the record with the right of cross examination by interested members of the public. It is well established that a formal hearing is not required unless the statute calls for rulemaking on the record after opportunity for an agency hearing. To adopt the requirements of formal procedural rulemaking would be contrary to congressional intent and would serve only to delay the issuance of the regulations. In addition, neither the Administrative Procedure Act nor section 211 of the Clean Air Act requires that any public hearing, formal or informal, be held in addition to the opportunity to submit written comments on the proposed amendments to the fuel registration regulations. While the Agency recognizes that oral presentations may be beneficial in particular cases where a hearing is not required by law, the parties requesting a hearing have made no showing that the issues involved in the fuel registration program compel a departure from the procedures for informal rulemaking calling for written submissions only.

There is similarly no legal requirement that an environmental impact statement be prepared on the proposed amendments. See Amoco Oil v. EPA, 501 F.2d 722, 749-50 (D.C. Cir. 1974). Moreover, the Agency's published statement of policy that such statements will be prepared voluntarily in connection with specified rulemaking activities is applicable (a) to regulations proposed after October 15, 1974, and (b) to major regulatory actions involving establishment of substantive standards or criteria (39 FR 16186). The proposed amendments to the fuel registration program at issue in this rulemaking are excluded from the policy statement on both grounds.

Concern has been expressed that the provisions of EPA's regulations on Public Information (40 CFR Part 2) referenced in § 79.3 of the proposed registration regulations may not afford notice to a registrant that a request has been made for release of information considered by the registrant to be a trade secret. The preliminary determination as to potential exemption from disclosure on grounds of trade secrecy is made in this case by the Office of Fuel and Fuel Additive Registration. If the information "may be exempt" from disclosure, the matter is referred to the EPA Office of General Counsel, and the registrant is notified. It has been the policy of the Office of Fuel and Fuel Additive Registration to regard all information designated by the registrant as trade secret as potentially exempt. Thus, the registrant would be notified of any request for data that would call the trade secret status of such information into question.

The regulations promulgated below shall be effective on November 7, 1975. (Sections 211 and 301(a) of the Clean Air Act, 42 U.S.C. 1857f-6c and 1857g).

Dated: October 31, 1975.

JOHN QUARLES,
*Acting Administrator.*

Part 79, Chapter I of Title 40 of the Code of Federal Regulations, is revised to read as follows:

Subpart A—General Provisions

Sec.
79.1 Applicability.
79.2 Definitions.
79.3 Confidentiality of information.
79.4 Requirement of registration.
79.5 Periodic reporting requirements.
79.6 Requirement for testing.
79.7 Samples for test purposes.
79.8 Penalties.

Subpart B—Fuel Registration Procedures

79.10 Notification by fuel manufacturer.
79.11 Information and assurances to be provided by the fuel manufacturer.
79.12 Determination of noncompliance.
79.13 Registration.
79.14 Termination of registration of fuels.

Subpart C—Additive Registration Procedures

79.20 Notification by additive manufacturer.
79.21 Information and assurances to be provided by the additive manufacturer.
79.22 Determination of noncompliance.
79.23 Registration.
79.24 Termination of registration of additives.

Subpart D—Designation of Fuels and Additives

79.30 Scope.
79.31 Additives.
79.32 Motor vehicle gasoline.
79.33 Motor vehicle diesel fuel.

AUTHORITY: Secs. 211 and 301(a) of the Clean Air Act, 42 U.S.C. 1857f-6c and 1857g.

Subpart A—General Provisions

§ 79.1 Applicability.

The regulations of this part apply to the registration of fuels and fuel additives designated by the Administrator, pursuant to section 211 of the Clean Air Act (42 U.S.C. 1857f-6c, asamended by section 9, Pub. L. 91-604).

§ 79.2 Definitions.

As used in this part, all terms not defined herein shall have the meaning given them in the Act:

(a) "Act" means the Clean Air Act (42 U.S.C. 1857 et seq., as amended by Pub. L. 91-604).

(b) "Administrator" means the Administrator of the Environmental Protection Agency.

(c) "Fuel" means any material which is capable of releasing energy or power by combustion or other chemical or physical reaction.

(d) "Fuel manufacturer" means any person who, for sale or introduction into commerce, produces or manufactures a fuel or causes or directs the alteration of the chemical composition of, or the mixture of chemical compounds in, a bulk fuel by adding to it an additive.

(e) "Additive" means any substance, other than one composed solely of carbon and/or hydrogen, that is intentionally added to a fuel named in the designation (including any added to a motor vehicle's fuel system) and that is not intentionally removed prior to sale or use.

(f) "Additive manufacturer" means any person who produces or manufactures an additive for use as an additive and/or sells an additive under his own name.

(g) "Range of concentration" means the highest concentration, the lowest concentration, and the average concentration of an additive in a fuel.

(h) "Chemical composition" means the name and percentage by weight of each compound in an additive and the name and percentage by weight of each element in an additive.

(i) "Chemical structure" means the molecular structure of a compound in an additive.

(j) "Impurity" means any chemical element present in an additive that is not included in the chemical formula or identified in the breakdown by element in the chemical composition of such additive.

§ 79.3 Confidentiality of information.

Information obtained by the Administrator or his representatives pursuant to this part shall be treated, insofar as its confidentiality is concerned, in accordance with regulations in 40 CFR Part 2. Results of tests required under § 79.6(a) to determine potential public health effects of fuels or additives shall in no case be considered confidential.

§ 79.4 Requirement of registration.

(a) *Fuels.* (1) No manufacturer of any fuel designated under this part shall, after the date prescribed for such fuel in this part, sell, offer for sale, or introduce into commerce such fuel unless the Administrator has registered such fuel.

(2) No manufacturer of a registered fuel shall add or direct the addition to

it of an additive which he has not previously reported unless he has notified the Administrator of such intended use, including the expected or estimated range of concentration. If necessary to meet an unforeseen production problem, however, a fuel manufacturer may use an additive that he has not previously reported provided that (i) the additive is on the current list of registered additives and (ii) the fuel manufacturer notifies the Administrator within 30 days regarding such unforeseen use and his plans regarding continued use, including the expected or estimated range of concentration.

(3) Any designated fuel that is (i) in a research, development, or test status; (ii) sold to automobile, engine, or component manufacturers for research, development, or test purposes; or (iii) sold to automobile manufacturers for factory fill, and is not in any case offered for commercial sale to the public, shall be exempt from registration.

(4) A domestic fuel manufacturer may purchase and offer for commercial sale foreign-produced fuel containing unidentified additives provided that within 30 days of his offer for sale he notifies the Administrator of the purchase, the source of purchase, the quantity purchased, and summarized results of any tests performed to determine the acceptability of the purchased fuel to the fuel manufacturer.

(b) Additives. (1) No manufacturer of any additive designated under this part shall, after the date prescribed for such additive in this part, sell, offer for sale, or introduce into commerce such additive for use as an additive unless the Administrator has registered such additive.

(2) Any designated additive that is either (i) in a research, development, or test status or (ii) sold to petroleum, automobile, engine, or component manufacturers for research, development, or test purposes, and in either case is not offered for commercial sale to the public, shall be exempt from registration.

(3) Process chemicals used by refineries during the refinery process are exempted from the requirement for registration.

(4) If an additive manufacturer prepares for sale only to fuel manufacturers a mixture of two or more registered additives (with or without substances containing only carbon and/or hydrogen), he will not be required to register such mixture provided he will, upon request, furnish the Administrator with the names and percentages by weight of all components of such mixture.

§ 79.5 Periodic reporting requirements.

(a) Fuel manufacturers. (1) For each calendar quarter (January through March, April through June, July through September, October through December) commencing after the date prescribed for a particular fuel in Subpart D, fuel manufacturers shall submit to the Administrator a report for each registered fuel showing (i) the range of concentration of each additive reported under § 79.11(a) and (ii) the volume of such fuel produced in the quarter. Reports shall be submitted within 45 days after the close of the reporting period on forms supplied by the Administrator upon request.

(2) Fuel manufacturers shall submit to the Administrator a report annually for each registered fuel providing additional data and information as specified in § 79.31 (c) and (d) in the designation of the fuel in Subpart D. Reports shall be submitted on or before March 31 for the preceding year or part thereof on forms supplied by the Administrator upon request. If the date prescribed for a particular fuel in Subpart D or the later registration of a fuel is between October 1 and December 31, no report will be required for the period to the end of that year.

(b) Additive manufacturers. Additive manufacturers shall submit to the Administrator a report annually for each registered additive providing additional data and information as specified in subparagraphs (c) and (d) in the designation of the additive in Subpart D. Additive manufacturers shall also report annually the volume of each additive produced. Reports shall be submitted on or before March 31 for the preceding year or part thereof on forms supplied by the Administrator upon request. If the date prescribed for a particular additive in Subpart D or the later registration of an additive is between October 1 and December 31, no report will be required for the period to the end of that year. These periodic reports shall not, however, be required for any additive that is (1) an additive registered under another name, (2) a blend or mixture of two or more registered additives, or (3) a blend or mixture of one or more registered additives with one or more substances containing only carbon and/or hydrogen.

§ 79.6 Requirement for testing.

(a) The Administrator may establish procedures and protocols for the conduct of tests to determine potential public health effects of a designated fuel or additive (including, but not limited to, carcinogenic, teratogenic, or mutagenic effects) and may thereafter require a fuel manufacturer or an additive manufacturer to conduct tests in conformance with such test procedures and protocols.

(b) In order to obtain such information as is reasonable and necessary to determine the emissions resulting from the use of a fuel or an additive in a fuel, the effect of such fuel or additive on the emission control performance of any motor vehicle or motor vehicle engine, or the extent to which such emissions affect the public welfare, the Administrator may require a fuel manufacturer or an additive manufacturer to conduct tests in accordance with protocols based on generally accepted test methods and procedures.

(c) Any test required under this section shall be performed in accordance with a time schedule prescribed by the Administrator, after consultation with the manufacturer involved.

(d) The Administrator may require a fuel manufacturer to perform tests under this section on any fuel registered for such manufacturer or an additive manufacturer to perform tests under this section on any additive registered for such manufacturer. He may not require any test as a prerequisite of registration unless it is part of a test protocol established by regulation a reasonable time prior to notification by the manufacturer.

§ 79.7 Samples for test purposes.

When the Administrator requires for test purposes a fuel or additive which is not readily available in the open market, he may request the manufacturer of such fuel or additive to furnish a sample in a reasonable quantity. The fuel or additive manufacturer shall comply with such request within 30 days.

§ 79.8 Penalties.

Any person who violates section 211(a) of the Act or who fails to furnish any information required under this part shall forfeit and pay to the United States a civil penalty of $10,000 for each and every day of the continuance of such violation, which shall accrue to the United States and be recovered in a civil suit in the name of the United States, brought in the district in which such person does business. The Administrator may, upon application therefor, remit or mitigate any such forfeiture; and he shall have authority to determine the facts upon all such applications.

Subpart B—Fuel Registration Procedures

§ 79.10 Notification of fuel manufacturer.

Any manufacturer of a designated fuel who wishes to have such fuel registered shall notify the Administrator in accordance with § 79.11 at least 60 days prior to the date prescribed for such fuel in Subpart D or, after such prescribed date, at least 30 days prior to the date on which such fuel manufacturer proposes to begin to sell, offer for sale, or introduced into commerce such fuel. If a fuel manufacturer produces more than one grade or brand of a designated fuel, only one notification or report is required for that designated fuel, showing highest, lowest, and average values for all such grades or brands. Each notification shall be signed by the fuel manufacturer or his agent and shall be submitted on such forms as the Administrator will supply on request.

§ 79.11 Information and assurances to be provided by the fuel manufacturer.

Each notification submitted by a fuel manufacturer shall include the following:

(a) The commercial identifying name of each additive that will or may be used in a designated fuel subsequent to the date prescribed for such fuel in Subpart D;

(b) The name of the additive manufacturer of each additive named;

(c) The range of concentration of each additive named, as follows:

(1) In the case of an additive which has been or is being used in the designated fuel, the range during any 3-month or longer period prior to the date of submission;

(2) In the case of an additive which has not been used in the designated fuel, the expected or estimated range;

(d) The purpose-in-use of each additive named;

(e) The description (or identification, in the case of a generally accepted method) of a suitable analytical technique (if one is known) that can be used to detect the presence of each named additive in the designated fuel and/or to measure its concentration therein;

(f) Such other data and information as are specified in the designation of the fuel in Subpart D;

(g) Assurances that the fuel manufacturer will notify the Administrator in writing and within a reasonable time of any change in:

(1) The name of any additive previously reported;

(2) The name of the manufacturer of any additive being used;

(3) The purpose-in-use of any additive;

(4) Information submitted pursuant to paragraph (e) of this section;

(h) Assurances that the fuel manufacturer will not represent, directly or indirectly, in any notice, circular, letter, or other written communication, or any written, oral, or pictorial notice or other announcement in any publication or by radio or television, that registration of the fuel constitutes endorsement, certification, or approval by any agency of the United States.

§ 79.12 Determination of noncompliance.

Whenever the Administrator determines that a notification fails to comply with the regulation of this part, he shall within 30 days (60 days in the case of initial registrations prior to the date prescribed for the fuel in Subpart D) of receipt of the notification inform the noncomplying fuel manufacturer of the reasons for such determination.

§ 79.13 Registration.

(a) If the provisions of this part requiring the submission of information and the giving of assurances have been complied with for a particular fuel, the Administrator shall register that fuel and within 30 days (60 days in the case of initial registrations prior to the date prescribed for the fuel in Subpart D) of receipt of the notification notify the fuel manufacturer of such registration.

(b) The Administrator shall maintain a list of registered fuels, which shall be available to the public upon request.

§ 79.14 Termination of registration of fuels.

Registration may be terminated by the Administrator if the fuel manufacturer requests such termination in writing.

Subpart C—Additive Registration Procedures

§ 79.20 Notification by additive manufacturer.

Except as provided in § 79.23(b), any manufacturer of a designated additive who wishes to have such additive registered shall notify the Administrator in accordance with § 79.21 at least 90 days prior to the date prescribed for such additive in Subpart D or, after such prescribed date, at least 30 days prior to the date on which such additive manufacturer proposes to begin to sell, offer for sale, or introduce into commerce such additive. Each notification shall be signed by the additive manufacturer or his agent and shall be submitted on such forms as the Administrator will supply upon request.

§ 79.21 Information and assurances to be provided by the additive manufacturer.

Each notification submitted by an additive manufacturer shall include the following:

(a) The chemical composition of the additive with the methods of analysis identified, except that

(1) If the chemical composition is not known, full disclosure of the chemical process of manufacture will be accepted in lieu thereof;

(2) In the case of an additive for engine oil, only the name, percentage by weight, and method of analysis of each element in the additive are required;

(3) In the case of a purchased component, only the name, manufacturer, and percent by weight of such purchased component are required if the manufacturer of the component will, upon request, furnish the Administrator with the chemical composition thereof.

(b) The chemical structure of each compound in the additive if such structure is known and is not adequately specified by the name given under "chemical composition." Nominal identification is adequate if mixed isomers are present.

(c) The description (or identification, in the case of a generally accepted method) of a suitable analytical technique (if one is known) that can be used to detect the presence of the additive in any fuel named in the designation and/or to measure its concentration therein.

(d) Fuels in which the use of the additive is recommended and the manufacturer's recommended range of concentration and purpose-in-use in each.

(e) Such other data and information as are specified in the designation of the additive in Subpart D.

(f) Assurances that any change in information submitted pursuant to (1) paragraphs (a), (b), (c), and (d) of this section will be provided to the Administrator in writing within 30 days of such change; and (2) paragraph (e) of this section as provided in § 79.5(b).

(g) Assurances that the additive manufacturer will not represent, directly or indirectly, in any notice, circular, letter, or other written communication or any written, oral, or pictorial notice or other announcement in any publication or by radio or television, that registration of the additive constitutes endorsement, certification, or approval by any agency of the United States.

§ 79.22 Determination of noncompliance.

Whenever the Administrator determines that a notification fails to comply with the regulations of this part, he shall within 30 days (90 days in the case of initial registrations prior to the date prescribed for the additive in Subpart D) of receipt of the notification inform the noncomplying additive manufacturer of the reasons for such determination.

§ 79.23 Registration.

(a) If the provisions of this part requiring the submission of information and the giving of assurances have been complied with for a particular additive, the Administrator shall register that additive and within 30 days (90 days in the case of initial registrations prior to the date prescribed for the additive in Subpart D) of receipt of the notification notify the additive manufacturer of such registration.

(b) Any additive which had been registered under the provisions of this part prior to the promulgation date of these regulations shall be deemed registered under these regulations upon such promulgation date. The information requirements of § 79.21 must be complied with for any such additive within 6 months after the promulgation of this part.

(c) The Administrator shall maintain a list of registered additives, which shall be available to the public upon request.

§ 79.24 Termination of registration of additives.

Registration may be terminated by the Administrator if the additive manufacturer requests such termination in writing.

Subpart D—Designation of Fuels and Additives

§ 79.30 Scope.

Fuels and additives designated and dates prescribed by the Administrator for the registration of such fuels and additives, pursuant to section 211 of the Act, are listed in this subpart. In addition, specific informational requirements under §§ 79.11(f) and 79.21(e) are set forth for each designated fuel or additive. Additional fuels and/or additives may be designated and pertinent dates and additional specific informational requirements prescribed as the Administrator deems advisable.

§ 79.31 Additives.

(a) All additives produced or sold for use in motor vehicle gasoline, motor vehicle diesel fuel, and/or motor vehicle engine oil are hereby designated.

(b) All designated additives must be registered within 6 months after the promulgation of this part, except as provided in § 79.23(b).

(c) In accordance with §§ 79.5(b) and 79.21(e), and to the extent such information is known to the additive manufacturer as a result of testing conducted for reasons other than additive regis-