UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

In Re: Methyl Tertiary Butyl Ether ("MTBE")      Master File No. 1:00-1898
Products Liability Litigation                                       MDL 1358 (SAS)
                                                                    M21-88
------------------------------------------------------------------- x   ECF Case

**This document relates to the following case:**

*City of New York v. Amerada Hess Corp., et al.*
Case No. 04 Civ. 3417

------------------------------------------------------------------- x

**PLAINTIFF CITY OF NEW YORK'S MEMORANDUM OF LAW IN SUPPORT
OF MOTION *IN LIMINE* NO. 8 TO EXCLUDE EVIDENCE OR ARGUMENT
CONCERNING TREATMENT COSTS ASSOCIATED WITH OTHER VOCS**

## I.     INTRODUCTION

Plaintiff the City of New York (the "City") hereby moves the Court *in limine* for an order that Defendants shall not make reference, offer any evidence, or make any argument concerning the cost to treat volatile organic compounds ("VOCs") other than MTBE[1] present in groundwater drawn from the wells at issue.

The parties agree that air stripping or granular activated carbon (GAC) can, in general, remove both MTBE and certain other VOCs (including perchloroethylene ("PCE")) from drinking water. But they also agree that each such compound has certain characteristics that make removal more (or less) efficient, requiring design and operational differences, and therefore resulting in significantly different costs of building, operating and maintaining treatment facilities depending on which compounds are present. In general, MTBE is much less readily removed by either form of treatment than, for example, PCE – and costs associated with MTBE removal are accordingly substantially greater. *See, e.g.,* Rebuttal Report of Marnie A. Bell (the City's expert) at p. 3-16 ("facility sizing and operating parameters are controlled by MTBE, which is by far, the more difficult of the two VOC's to remove"); Revised Expert Report of David W. Hand (defendants' expert) at Table 5 (attributing $910,000 for 3 years of treatment in Well 6D for MTBE, but only $147,000 for PCE for same period).[2]

Nevertheless, Defendants apparently intend to argue that any recovery by the City for treatment costs associated with the removal of MTBE from contaminated groundwater should be

---

[1] The term "MTBE" means methyl tertiary butyl ether and its degradation byproducts including tertiary butyl alcohol (TBA). Including TBA is important because Defendants' claim that MTBE degrades to TBA. If so, then the City's treatment costs must take MTBE-related TBA into account.

[2] An excerpt from the Rebuttal Report of Marnie A. Bell is attached to the Declaration of Nicholas G. Campins as Exhibit 1. An excerpt from the Revised Expert Report of David W. Hand is attached to the Declaration of Nicholas G. Campins as Exhibit 2.

- 1 -

reduced by the costs that would be incurred for treatment of other VOC's affecting the same groundwater (even though treatment installed to remove only the non-MTBE VOC would not necessarily be effective at treating water contaminated with MTBE).  For example, in its recent letter to the Court concerning trial structure, counsel for ExxonMobil stated:  "ExxonMobil does not concede that these alleged past damages for Station 6 are recoverable, as the vast majority relate to the design of a treatment system that the City's own consultant (Marnie Bell) concedes were required to treat a dry cleaning solvent known as PCE."  *See* Exh. 3 to Decl. of Nicholas G. Campins in support of this Motion at n. 2.

      The Court should not allow such evidence or argument.  When the jury finds Defendants responsible for the MTBE contamination at issue, it will have to assess damages in an amount sufficient to remediate the MTBE contamination they caused.  Whether or not treatment installed to remediate MTBE also happens to eliminate other VOCs from the groundwater (including PCE or any other contaminant) is not relevant to the issues in this litigation.  Defendants have no evidence suggesting that treatment was or will be installed solely to remove other VOCs or that such treatment would effectively remove MTBE from the same water.  Evidence regarding the clean-up costs for other VOCs is not relevant to any issue in dispute and should be excluded. *See* Fed. R. Evid. 401-402; *U.S. v. Kaplan*, 490 F.3d 110, 120-21 (2d Cir. 2007).  Likewise, to the extent such evidence is expert-related, it has no valid connection to the pertinent inquiries, will not assist the trier of fact and should be excluded.  *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591-92 (1993).

      For much the same reason, presentation of evidence concerning the collateral issue of treatment of other VOCs would be prejudicial, confusing, misleading and a waste of time.  The

Court should exercise its discretion under Federal Rule of Evidence 403 to exclude it. *See U.S. v. Townsend*, 987 F.2d 927, 930-31 (2d. Cir. 1993); *U.S. v. Schatzle*, 901 F.2d 252, 256 (2d Cir. 1990).

Accordingly, evidence concerning treatment costs associated with VOCs other then MTBE should be excluded from trial.

## II.     ARGUMENT

### a. Legal Standard

Irrelevant evidence is not admissible. Fed. R. Evid. 402. Evidence that does not have any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence is not relevant. *See* Fed. R. Evid. 401. To be relevant, evidence must meet two distinct requirements: "(1) the evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action." *Kaplan*, 490 F.3d at 121.

Because of the complexity of Rule 702 evidence and its potential to mislead, courts have also held that such evidence must "fit" the facts of the case to assist the trier of fact under Federal Rule of Evidence 702. *Daubert*, 509 U.S. at 591. "The study of the phases of the moon, for example, may provide valid scientific "knowledge" about whether a certain night was dark, and if darkness is a fact in issue, the knowledge will assist the trier of fact. However (absent creditable grounds supporting such a link), evidence that the moon was full on a certain night will not assist the trier of fact in determining whether an individual was unusually likely to have behaved irrationally on that night." *Id.* Rule 702's "helpfulness" standard therefore requires a valid connection to the pertinent inquiry as a precondition of admissibility. *Id.* at 591-92.

Finally, Federal Rule of Evidence 403 "requires that evidence be excluded, even if relevant, if the jury will place undue weight on that evidence, to the neglect of their duty to

evaluate the trial evidence for themselves." *U.S. v. Awadallah*, 401 F.Supp.2d 308, 318-19 (S.D.N.Y. 2005). Pursuant to Rule 403, evidence that raises side issues that will distract the jury from the important issues in the litigation should be excluded as prejudicial, confusing and misleading. *See Townsend*, 987 F.2d at 931 (evidence about reason defendant felt obliged to intercept telephone communications was properly excluded as tangential because statute only required intentional interception rather than evil motive). Rule 403 also provides the Court with discretion to exclude evidence of collateral issues that would result in undue delay. *Schatzle*, 901 F.2d at 256 (holding that district court was well within its discretion in concluding that the potential delay from allowing a mini-trial on collateral issue outweighed any likely probative value such an inquiry would yield on main issues).

### b. Evidence Concerning Costs To Clean Up Other VOCs Is Not Relevant, Does Not Assist the Trier of Fact And Should Be Excluded

The issues in this case all concern MTBE; there are no issues regarding other VOCs or any other alleged contaminant. Indeed, to the extent there has been testimony concerning PCE, the experts have agreed that costs associated with MTBE removal are greater than those for PCE (other things being equal), even applying similar technologies (i.e., air stripping or carbon treatment). *See, e.g.,* Rebuttal Report of Marnie A. Bell (the City's expert) at p. 3-16 ("facility sizing and operating parameters are controlled by MTBE, which is by far, the more difficult of the two VOC's to remove"); Revised Expert Report of David W. Hand (defendants' expert) at Table 5 (attributing $910,000 for 3 years of treatment in Well 6D for MTBE, but only $147,000 for PCE for same period). Whether PCE is removed from groundwater that is being treated for MTBE removal is not relevant because, as the City's expert puts it, MTBE will control treatment costs. *See* Rebuttal Report of Marnie A. Bell (the City's expert) at p. 3-16.

Moreover, the fact that treatment for MTBE also removes PCE (or any other VOC) is a fact from which the defendant tortfeasors in this case can not justly benefit.  As this Court has previously held each defendant whose conduct is proven to have been a substantial factor in producing plaintiff's injury, MTBE contamination of the groundwater, is liable for that injury regardless of whether there are others who also may have contributed to the injury:

> The substantial factor standard for causation, adopted in New York, recognizes that often many acts can be said to have caused a particular injury, and requires only that defendant's actions be a substantial factor in producing the injury.  A plaintiff need not eliminate every other possible cause, and the fact that another possible cause concurs with defendant's negligent act or omission to produce an injury does not relieve defendant from liability.

*In re MTBE*, 591 F.Supp.2d 259, 266 (S.D.N.Y. 2008).

Here, there are no claims regarding contamination by other VOCs, no defendant or cross-defendant named in connection with such contamination of the groundwater and the City is not required to name any such defendant.  Evidence concerning the treatment that may be installed or the costs involved in treating other VOCs from the groundwater is not relevant to this action which solely concerns MTBE groundwater contamination.

A simple hypothetical demonstrates that Defendants' position is meritless.  Consider an example in which two accidents occur, both of which damage a plaintiff's car.  In the first incident, the passenger-side door is badly scratched by defendant 1, causing damages that will require $300 to repair.  Before any repairs are made, the plaintiff's car is struck by driver 2, who completely destroys the same door, requiring its complete replacement at a cost of $1,000.  In an action between the plaintiff and driver 2, there would be no basis for driver 2 to assert that his or her responsibility for damage to the car door should be reduced by the $300 cost to repair the scratch caused by driver 1.  That evidence and argument that might be offered by driver 2 is

simply not relevant to driver 2's liability and responsibility to pay the full $1,000 to replace the car door.

Here, Defendants' efforts to point the finger at other VOCs that may be present in the City's water supply make essentially the same argument as hypothetical driver 2. Simply because removal of MTBE (like replacement of the car door) may also result in the removal of other VOCs (like repair of the scratch), does not permit Defendants to argue for, or obtain, any offset or diminution to the City's damage claim.[3]

Nor can defendants complain that the City is obtaining some undeserved windfall because a damage award related to the cost of MTBE removal will provide an added benefit of removing PCE. As between an innocent plaintiff and a wrongdoing defendant, the policy underlying New York tort law has always favored the innocent plaintiff. *See Hymowitz v. Eli Lilly and Co.*, 73 N.Y.2d 487, 507 (1989) ("it would be inconsistent with the reasonable expectations of a modern society to say to these plaintiffs that because of the insidious nature of an injury that long remains dormant, and because so many manufacturers, each behind a curtain, contributed to the devastation, the cost of injury should be borne by the innocent and not the wrongdoers"); *In re MTBE*, 447 F.Supp.2d 289, 302 (S.D.N.Y. 2006) ("if defendants breached a duty to avoid an unreasonable risk of harm resulting from the use of their products, innocent water providers-and ultimately innocent water users-should not be denied relief from the contamination of their water supply because they cannot identify the producer, refiner, or supplier of the MTBE-containing gasoline that caused the contamination").

---

[3] Whether defendants may have a claim for contribution from the parties responsible for other VOC contamination is not part of this case and should not and cannot affect the City's rights to recover damages when proven in the present action.

Evidence concerning the costs to treat other VOCs present in groundwater has no tendency in reason to prove or disprove any disputed fact material to this case. The evidence is therefore not relevant and should be excluded. *See* Fed. R. Evid. 401-402; *U.S. v. Kaplan*, 490 F.3d at 121. Likewise, to the extent such evidence is expert-related, it has no valid connection to the pertinent inquiry, does not "fit" the facts of the case, and will not assist the trier of fact and should be excluded. *See Daubert*, 509 U.S. at 591-92.

### c. Evidence Regarding other VOCs Will Result in Unfair Prejudice, Confuse the Jury and Necessitate Mini-Trials Creating Undue Delay

Introduction of evidence concerning treatment costs for other VOCs could lead the jury to consider the costs to eliminate other VOCs in its determination of the appropriate damage award to the City relating to the costs to remove MTBE, even though there is no legal basis to conclude that the treatment costs for other VOCs have any bearing on the costs to eliminate MTBE. The intended prejudicial and unfair nature of Defendants' efforts to present evidence of other VOC impacts is illustrated by the fact that Defendants' expert, David W. Hand, has not even tried to identify or allocate costs related to PCE at Station 6. *See* April 23, 2009 Deposition of David W. Hand, p. 115 ("rough" transcript).[4] It is thus apparent that Defendants' evidence in this regard will be wholly speculative. Similarly, introduction of evidence regarding treatment of other VOCs may improperly confuse the jury with regard to the issues that are actually in dispute, concerning MTBE.

Therefore, even if there were some marginal relevance to evidence concerning the cost or process for removal of other VOCs, which there is not, the probative value of such evidence is

---

[4] An excerpt is attached as Exhibit 4 to Declaration of Nicholas G. Campins. The City has not yet received a final version of Dr. Hand's deposition. Accordingly the City has cited to an excerpt of the rough transcript. The City is hopeful that it will receive a final version in time for its reply in support of this motion and upon receiving it, will provide it to the Court.

...

substantially outweighed by the probability that introduction of the evidence would result in substantial undue prejudice to the City, confusion of the jury and an unnecessary waste of the Court's time. Fed. R. Evid. 403; *Awadallah*, 401 F.Supp.2d at 318-19; *Townsend*, 987 F.2d at 931. The Court should exercise its discretion and exclude evidence concerning treatment of other VOCs.

Finally, because there will invariably be disputes concerning the costs to treat other VOCs in groundwater, the jury will have to sit through one or more mini-trials on such issues. Unnecessary trial time will be wasted with these side issues even though they are not probative of the actual issues in dispute. The Court should exercise its discretion to exclude evidence of collateral issues that would waste time and result in undue delay. *Schatzle*, 901 F.2d at 256.

//

//

### III.     CONCLUSION

For the foregoing reasons, the City respectfully requests that the Court issue an order excluding any argument or evidence concerning the cost to treat any other VOCs also present in groundwater drawn from the wells at issue.


Dated: San Francisco, California
       May 11, 2009

            MICHAEL A. CARDOZO
            Corporation Counsel of the City of New York
            Attorney for Plaintiff City of New York
            100 Church Street
            New York, New York 10007
            (212) 788-1568


            /s/ *NICHOLAS G. CAMPINS*
            VICTOR M. SHER *(pro hac vice)*
            TODD E. ROBINS *(pro hac vice)*
            JOSHUA G. STEIN *(pro hac vice)*
            LESLEY E. WILLIAMS (LW8392)
            NICHOLAS G. CAMPINS *(pro hac vice)*
            MARNIE E. RIDDLE *(pro hac vice)*

            SHER LEFF LLP
            450 Mission Street, Suite 400
            San Francisco, CA 94105
            (415) 348-8300

            *Attorneys for Plaintiff City of New York*