**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------- x

In Re: Methyl Tertiary Butyl Ether ("MTBE")   Master File No. 1:00-1898
Products Liability Litigation                 MDL 1358 (SAS)
                                              M21-88
------------------------------------------------------------------- x   ECF Case
**This document relates to the following case:**

*City of New York v. Amerada Hess Corp., et al.*
Case No. 04 Civ. 3417

------------------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF CITY OF NEW YORK'S MOTION *IN LIMINE* NO. 4
TO EXCLUDE EVIDENCE AND ARGUMENT RELATING TO THE RISKS,
TOXICITY OR ANY OTHER PROPERTIES OF ANY NON-MTBE SUBSTANCE**

## INTRODUCTION

Plaintiff the City of New York (the "City") hereby moves the Court *in limine* for an order that Defendants shall not make reference to, offer any evidence regarding, or make any argument that common substances to which an individual might be exposed over the course of a lifetime are more risky, comparably risky, or more or comparably harmful to health relative to MTBE. Evidence and argument concerning the toxicity, risk to health, consumption patterns, or any other testimony relating to non-MTBE substances is distracting, confusing and has no tendency to make the existence of any fact of consequence to the determination of this action more or less probable than it would be without the evidence, and should therefore be excluded.  Fed. R. Evid. 401, 402, 403.  In particular, the dangers of unfair prejudice, confusion of the issues, or misleading the jury, or considerations of undue delay, waste of time, or needless presentation of cumulative evidence associated with such evidence and argument substantially outweigh their probative value, in violation of Federal Rules of Evidence, Rule 403.  Specifically, the Court should exclude:

(1) All testimony regarding the health or environmental risks of specific non-MTBE chemicals, including testimony comparing or relating theoretical risks to human health from low levels of MTBE in drinking water to the risks posed by other toxic substances;

(2) All testimony explaining toxicological principles by reference to a specific chemical other than MTBE, e.g. Tylenol, alcoholic beverages, lead, and cigarettes;

(3) All testimony suggesting that toxic substances other than MTBE are less regulated by the state and federal government and/or are not being treated as matters of concern by the City;

  (4) All testimony suggesting that toxic substances other than MTBE are voluntarily ingested or ingested in greater quantities by large numbers of people, including by the City's drinking water consumers;

  (5) Any other testimony concerning chemicals not at issue in this case.

The City bases this motion on the ground that any attempt by Defendants to convey information or introduce evidence as to the dangers of peanut butter, sunlight, alcoholic beverages, solvents other than MTBE, artificial sweeteners, etc., would be irrelevant, raise substantial disputes over collateral matters, confuse the issues before the jury, and would be prejudicial to the City, even if this Court were to sustain an objection and instruct the jury not to consider such facts.  Fed. R. Evid. 403.

## ARGUMENT

The City anticipates that Defendants will attempt to introduce evidence and argument concerning a number of potentially toxic substances that are not at issue in this case.  In many toxic tort cases involving a hazardous product, whether that product is asbestos, DBCP, MTBE, or some other dangerous substance, defendants routinely attempt to minimize the health risk of the subject product by contending that everyday household items like peanut butter, sunshine, alcoholic beverages, or chlorinated water *may* also create statistically significant increases in health risk.  By introducing this extraneous and irrelevant information, sometimes referred to as the "peanut butter and sunshine defense," defendants attempt to distract the jury – and deprecate the plaintiff's risk of harm – with collateral, irrelevant issues.

This Court may exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  Fed. R. Evid. 403.  The "peanut butter and sunshine defense" has been excluded in similar toxic tort cases concerning

- 2 -

asbestos because it is a transparent attempt to introduce collateral issues, which – especially when coupled with rebuttal evidence – tend to divert the course of trial into a time-consuming dispute over the relative merits and risks posed by peanut butter, soft drinks, tanning, broccoli, etc., and in particular whether or not those substances are in any way *comparable* to the substance that is really at issue in the case.  For example, the court refused to allow defendants' experts to wander down the side roads of the postulated dangers of diet soft drinks and peanut butter in *City of Greenville v. W.R. Grace & Company,* 640 F.Supp. 559 (D.S.C. 1986), *aff'd* 827 F.2d 975 (4th Cir. 1987):

> The Court can easily see how such evidence could turn a five-day trial into a five-week trial because Greenville would certainly be entitled to probe the basis of Dr. Crump's statistics on peanut butter, introduce rebuttal peanut butter witnesses, etc. … Allowing Dr. Crump to meander into peanut butter and soft drinks would undoubtedly have confused the issues, unduly delayed the trial and misled the jury. … Even if Dr. Crump's non-asbestos testimony had any relevance (which the Court doubts), it is the type of testimony for which Rule 403 was written. A respected federal judge with significant asbestos litigation experience has also excluded the identical collateral testimony in an asbestos property damage case. *The Corporation of Mercer University v. National Gypsum Co., et al.,* No. 85-126-3-MAC (S.D.Ga.).

*Id.* at 571-572 (excluding evidence regarding toxins present in peanut butter because probative value of such evidence was "substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay or waste of time.")

Defendants clearly intend to introduce such evidence.  The expert reports of Susan N. Mohr, Joseph V. Rodricks and Douglas McGregor all contain testimony drawing the jury's attention to non-MTBE chemicals that are not at issue in this case and regarding which the City will be entitled to present rebuttal evidence at trial.

The Expert Report of Susan N. Mohr, M.D., M.P.H. (dated March 9, 2009) (appended to the Declaration of Marnie E. Riddle in Support of Motion in Limine No. 4 as Exhibit 1) ("Mohr Report") contains, for example, the following statements: "We do not expect the same behavior (toxicity) from a person who drinks an 8 ounce glass of an alcoholic beverage as we do from one

who drinks one drop of alcohol in an 8 ounce glass of water, nor do we assign as a society the same consequences to those behaviors.  It is well recognized that acetaminophen (sold as Tylenol and other brands) causes liver failure and death in humans, but not at the doses recommended for fever and pain relief."  (Mohr Report at 17.)  "People are exposed to cancer causing agents every day of their lives.  Some foods, medications and even sunlight can cause cancer."  (Mohr Report at 19.)

In the Expert Report of Joseph V. Rodricks, Ph.D., DABT, dated March 9, 2009 (appended to the Declaration of Marnie E. Riddle in Support of Motion in Limine No. 4 as Exhibit 2) ("Rodricks Report"), the witness states:  "Prolonged, excessive consumption of alcoholic beverages can lead to both psychological and physical dependency (alcoholism), but these effects are almost certainly associated only with the abusive use of beverages. Ethanol can produce toxic effects on the gastrointestinal system, the nervous system, the cardiovascular system, and the liver (Table 2)."  (Rodricks Report at 23.)

And the Expert Report of Douglas McGregor, Ph.D., dated March 9, 2009 (appended to the Declaration of Marnie E. Riddle in Support of Motion in Limine No. 4 as Exhibit 3) ("McGregor Report") contains the following statements: "A recent review of developmental neurotoxicity of industrial chemicals lists a few that are recognised causes of neuro-developmental disorders and sub-clinical brain dysfunction. These are: lead, methyl mercury, polychlorinated biphenyls (PCBs), arsenic and toluene and all were said to be more damaging during foetal development (Grandjean & Landrigan, 2006). In the case of toluene, the high exposures *in utero* that were associated with structural defects closely resembling the foetal alcohol syndrome resulted from solvent sniffing by the pregnant women (reviewed in IARC, 1999b). The other organic material listed, PCBs, was a contaminant of cooking oils in two incidents, one in Japan, the other in Taiwan."  (McGregor Report at 31.)

Whether or not any of the chemicals mentioned in these experts' reports is more or less toxic than MTBE simply has no bearing whatsoever on any disputed fact of consequence to the determination of this action.  Pursuant to Fed. R. Evid. Rules 401 and 402, this irrelevant evidence is inadmissible and should be excluded.  Moreover, the introduction of evidence regarding other chemicals that are not MTBE is likely to confuse the jury and mislead them as to the nature of MTBE, the only chemical at issue in this case, because the jury may be led to believe, for instance, that one drop of MTBE in an 8 ounce glass of water is equivalent to "one drop of alcohol in an 8 ounce glass of water." (*See* Mohr Report at 17.)  Because the introduction of relative toxicity evidence will not only mislead the jury, but consume an undue amount of time as shown below, such evidence should be excluded.  Fed. R. Evid. 403.

The aforementioned and similar evidence regarding other potentially-toxic substances is properly excluded in part due to a practical consideration:  each time a Defendant introduces evidence relating to a non-MTBE substance, the City is entitled to present rebuttal evidence or evidence contextualizing this non-MTBE substance.  This process is likely to consume substantial trial time, and an elaborate discussion of the relative risks and dangers posed by non-MTBE substances will only serve to confuse and distract the jury from the only relevant chemical at issue. A discussion of whether non-MTBE substances are regulated by government authorities or treated with concern by the City, similarly, will invite days of rebuttal testimony and argument regarding irrelevant regulatory schemes and the City's policies regarding a host of substances other than MTBE, none of which are at issue in this case. The City's claims in this action relate solely to groundwater contamination with MTBE, and the fact that certain other contaminants have been occasionally detected in the City's wells has no significance to this action.

Plaintiff's causes of action are based on MTBE – not on lead, alcohol, foods, benzene,

PCBs, or sunlight. These substances are not at issue in this litigation. Defendants should not be permitted to put other substances on trial because doing so creates great potential for dramatic impact, distraction, and prejudice. The jurors' greater familiarity with and personal exposure to substances like alcoholic beverages, pharmaceutical products and sunlight creates fertile ground from which misperceptions and misunderstandings of the nature of MTBE may arise as the result of expert testimony on unrelated substances. Therefore, testimony and argument relating to the dangers of such substances should be excluded.

## CONCLUSION

For the foregoing reasons, this Court should exclude evidence and argument concerning the toxicity, risk to health, consumption patterns, or any other testimony relating to non-MTBE substances, because the probative value of that evidence is far outweighed by the prejudice and potential to mislead the jury thereby created.

Dated: San Francisco, California
      May 11, 2009

            MICHAEL A. CARDOZO
            Corporation Counsel of the City of New York
            Attorney for Plaintiff City of New York
            100 Church Street
            New York, New York 10007
            (212) 788-1568

            /s/ *MARNIE E. RIDDLE*
            VICTOR M. SHER *(pro hac vice)*
            TODD E. ROBINS *(pro hac vice)*
            JOSHUA G. STEIN *(pro hac vice)*
            LESLEY E. WILLIAMS (LW8392)
            NICHOLAS G. CAMPINS *(pro hac vice)*
            MARNIE E. RIDDLE *(pro hac vice)*

            SHER LEFF LLP
            450 Mission Street, Suite 400
            San Francisco, CA 94105
            (415) 348-8300

            *Attorneys for Plaintiff City of New York*

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the following documents were served on Liaison Counsel via Electronic Mail, and on all counsel of record by posting them directly to CM/ECF and LexisNexis File & Serve on the 11th day of May, 2009:

1) PLAINTIFF CITY OF NEW YORK'S NOTICE OF MOTION AND MOTION *IN LIMINE* NO. 4 TO EXCLUDE EVIDENCE AND ARGUMENT RELATING TO THE RISKS, TOXICITY OR ANY OTHER PROPERTIES OF ANY NON-MTBE SUBSTANCE

2) MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF CITY OF NEW YORK'S MOTION *IN LIMINE* NO. 4 TO EXCLUDE EVIDENCE OR ARGUMENT RELATING TO THE RISKS, TOXICITY OR ANY OTHER PROPERTIES OF ANY NON-MTBE SUBSTANCE

3) [PROPOSED] ORDER GRANTING PLAINTIFF CITY OF NEW YORK'S MOTION *IN LIMINE* NO. 4 TO EXCLUDE EVIDENCE AND ARGUMENT RELATING TO THE RISKS, TOXICITY OR ANY OTHER PROPERTIES OF ANY NON-MTBE SUBSTANCE

4) DECLARATION OF MARNIE E. RIDDLE IN SUPPORT OF PLAINTIFF CITY OF NEW YORK'S MOTION *IN LIMINE* NO. 4 TO EXCLUDE EVIDENCE OR ARGUMENT RELATING TO THE RISKS, TOXICITY OR ANY OTHER PROPERTIES OF ANY NON-MTBE SUBSTANCE

KRISTIN MEYERS