**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------- x

In Re: Methyl Tertiary Butyl Ether ("MTBE")          Master File No. 1:00-1898
Products Liability Litigation                                    MDL 1358 (SAS)
                                                                             M21-88
-------------------------------------------------------------------- x   ECF Case

**This document relates to the following case:**

*City of New York v. Amerada Hess Corp., et al.*
Case No. 04 Civ. 3417

-------------------------------------------------------------------- x

**PLAINTIFF CITY OF NEW YORK'S OPPOSITION TO DEFENDANTS' JOINT
MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND ARGUMENT
REGARDING PLAINTIFF'S PAST AND FUTURE INVESTIGATION AND
TREATMENT COSTS UNTIL IT PROVES ACTUAL INJURY**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

I.    INTRODUCTION ..................................................................................................... 1

II.   LEGAL STANDARD ................................................................................................ 3

III.   ARGUMENT ............................................................................................................ 4

   A.   The City Will Have No Difficulty Establishing Actual Injury at Trial ........................... 4

   B.   The City Has Substantial, Legally Protected Interests in the Water Drawn by its Wells ........................................................................................................................... 6

   C.   Defendants' Misstate the Law Regarding Actual Injury ................................................ 9

      1.   Injuries to Real Property and Statutorily Protected Interests of the Type Suffered by the City Are Clearly Sufficient to Prove Actual Injury ................................................. 9

      2.   Well 6D Is Injured as a Matter of Law ........................................................................ 12

      3.   Actual Injury Is Not a Required Element of the City's Trespass and Nuisance Claims ................................................................................................................................ 12

   D.   Bifurcation Would Result in Having to Repeat Witnesses and Evidence ..................... 13

   E.   Evidence of Past and Future Investigation and Treatment Costs Is Relevant and Not Unfairly Prejudicial, Confusing or Misleading ......................................................... 14

IV.   CONCLUSION ...................................................................................................... 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Cook v. Rockwell Intern. Corp.*,
   273 F.Supp.2d 1175 (D. Colo. 2003) ...................................................................... 13

*Costantino v. David M. Herzog, M.D., P.C.*,
   203 F.3d 164 (2d Cir. 2000) .......................................................................... 4, 14

*Dallas v. Goldberg*,
   143 F.Supp.2d 312 (S.D.N.Y. 2001) ................................................................ 3, 13

*In re MTBE*,
   2008 WL 1971538, * 4 (S.D.N.Y. May 7, 2008) .............................................. 3, 14

*In re MTBE*,
   457 F.Supp.2d 455 (S.D.N.Y. 2006) ..................................................................... 7

*In re MTBE*,
   458 F.Supp.2d 149 (S.D.N.Y. 2006) ............................................................. *passim*

*In re MTBE*,
   593 F.Supp.2d 549 (S.D.N.Y. 2008) ............................................................. *passim*

*In re MTBE*,
   2005 WL 1500893, * 3 (S.D.N.Y. June 24, 2005) ........................................... 7, 10

*In re MTBE*,
   2007 WL 700819, * 2-3 (S.D.N.Y. March 7, 2007) ............................................. 7

*N.Y. State Nat. Org. for Women v. Terry*,
   886 F.2d 1339 (2d Cir. 1989) ........................................................................... 13

*Olin Corp. v. Certain Underwriters at Lloyd's London*,
   468 F.3d 120 (2d Cir. 2006) ............................................................................... 9

*Puello v. BCIS*,
   511 F.3d 324 (2d Cir. 2007) ............................................................................... 7

*State of N.Y. v. Shore Realty Corp.*,
   759 F.2d 1032 (2d Cir. 1985) ........................................................................... 13

*Union Carbide Corp. v. Montell N.V.*,
   28 F. Supp. 2d 833 (S.D.N.Y. 1998) .............................................................. 3, 14

*United States v. Blum*,
    62 F.3d 63 (2d Cir. 1995) ........................................................................ 4, 14

*Vichare v. AMBAC Inc.*,
    106 F.3d 457 (2d Cir. 1996) ..................................................................... 3, 14

**STATE CASES**

*Burger v. Singh*,
    816 N.Y.S.2d 478 (App. Div. 2006) ............................................................ 13

*Frank v. DaimlerChrysler Corporation*,
    741 N.Y.S.2d 9 (App. Div. 2002) ................................................................ 9

*Hathorn v. Natural Carbonic Gas Co.*,
    112 N.Y.S. 374 (App. Div. 1908) ................................................................ 7

*Hathorn v. Natural Carbonic Gas Co.*,
    194 N.Y. 326 (1909) ................................................................................... 7

*Keeler v. Tubbs*,
    147 N.Y.S.2d 166 (Sup. Ct. 1955) .............................................................. 7

*N.Y. Rubber Co. v. Rothery*,
    132 N.Y. 293 (1892) ................................................................................... 13

*People v. Van Buren*,
    4 N.Y.3d 640 (2005) ................................................................................... 7

*State v. Schenectady Chemicals, Inc.*,
    479 N.Y.S.2d 1010 (App. Div. 1984) ................................................... *passim*

*Sweet v. City of Syracuse*,
    129 N.Y. 316 (1891) ................................................................................... 7

*Westphal v. City of New York*,
    78 N.Y.S. 56 (App. Div. 1902) ................................................................... 7

**OTHER AUTHORITIES**

N.Y.C. Admin. Code § 24-302 ........................................................... *passim*

N.Y. Comp. Codes R. & Regs. tit. 10, § 5-1.12 ................................. *passim*

N.Y. Comp. Codes R. & Regs. tit. 10, § 5-1.30 .......................................... 8

N.Y. Comp. Codes R. & Regs. tit. 10, § 5-1.71 ................................................................. 8

N.Y. Comp. Codes R. & Regs. tit. 10, § 5-150 .................................................................. 8

N.Y. Comp. Codes R. & Regs. tit. 10, § 5-151 .................................................................. 8

N.Y. Comp. Codes R. & Regs. tit. 10, § 5-160 .................................................................. 8

N.Y. Comp. Codes R. & Regs. tit. 10, § 40-2.160 ............................................................. 9

N.Y. Comp. Codes R. & Regs. tit. 10, § 170.3 ................................................................... 9

**FEDERAL RULES**

Federal Rule of Civil Procedure 42(b) .............................................................................. 3

Fed. R. Evid. 401 ........................................................................................................ 3, 14

Fed. R. Evid. 402 .............................................................................................................. 3

Fed. R. Evid. 403 ........................................................................................................ 3, 14

## I.  INTRODUCTION

Defendants' Motion rests on their oft-repeated[1] but incorrect assertion that "there is no evidence that MTBE has interfered" with Plaintiff City of New York's ("the City") wells and that the City's claims of future injury are "highly speculative."  *See* Deft's Memo of Law, filed in 1:00-cv-01898, Dkt # 2396 (May 11, 2009) at 9.  As explained below in Section III.A and in the City's Opposition to Defendants' Motion *In Limine* to Exclude Evidence of Future Injury or Damage to Wells 5, 22, 26, 39, and 45, Defendants are simply wrong.  The Court should deny the motion.

*First*, Wells 6, 6A, 6B, 6D and 33 are a part of Station 6, a long-planned facility to bring six City wells back into service and provide up to ten million gallons per day to the public.  The return to service of the wells comprising Station 6 is necessary to provide residents with a City-owned, reliable, and predictable water supply.  Each of these wells has unquestionably suffered MTBE contamination already, and the City's experts have proffered testimony that the wells will stay contaminated until at least 2040.  The water drawn from the Wells will need extensive – and expensive – treatment before it is served to the public.

Likewise, the City needs the water from Wells 5, 22, 26, 39 and 45 to ensure an adequate supply of water is available to its residents in the event of drought or other emergency.  Like the Station 6 wells, each of these wells has tested positive for MTBE and will require treatment.

Far from speculative, the City's injury is therefore presently occurring.  It flows ineluctably from the fact that the City's residents need this water; that the MTBE contamination in the City's Wells is real and will last for decades; that the MTBE must be removed before it is served to the public and that the MTBE will be very expensive to remove.

---

[1]Indeed, Defendants' Motion is simply a variation on the reverse bifurcation approach proposed by Mr. Sacripanti to the Court in his May 7, 2009 letter.  Mr. Sacripanti's May 7 Letter and the City's May 14, 2009 Response are attached to Exhibits 1 and 2 to the Declaration of Nicholas Campins ("Campins Decl.").

*Second*, Defendants' Motion is based on the incorrect assumption that the City does not have substantial, legally protected interests in the water drawn from its wells.  To the contrary, as is explained in Section III.B, the City has extensive real property interests and statutory rights in the water drawn from its wells.

*Third*, Defendants' motion is premised on a fundamental misapprehension of the law regarding actual injury.  As set forth in Section III.C, injuries to real property and statutorily protected interests of the type suffered by the City are actionable.  Moreover, this Court has held that while the actionable level of MTBE in a well *below the MCL* depends on "site-specific" factors, *see, e.g., In re MTBE*, 593 F.Supp.2d 549, 552 (S.D.N.Y. 2008) ("the issue of when the water suppliers are harmed by MTBE contamination is fact-specific in a variety of ways")*,* exceedance of the MCL constitutes actual injury as a matter of law, *see, e.g., In re MTBE*, 593 F.Supp.2d 540, 544 (S.D.N.Y. 2008) ("once a particular well contains more MTBE than allowed by state law, a jury would be required to find that plaintiffs' well was injured as a matter of law"). Water drawn from Well 6D has already exceeded the MCL, a fact conceded even by Defendants. That the City has already suffered actionable injury is therefore established as a matter of law. *See* Section III.C.2.  Defendants are also wrong when they suggest that actual injury is an element of all of the City's claims; the City is not required to show actual injury to prove its trespass and public nuisance claims.  *See* Section III.C.3.

*Finally*, Defendants' motion is also based on the incorrect assumption that bifurcation will promote efficiency.  Where, as here, evidence of injury and damages are intertwined, bifurcation is an inefficient waste of time.  For example, if Defendants' motion is granted, the parties will have to call several witnesses twice and will have to explain the background of each well more than once. Moreover, because Defendants concede that the City has been injured as a matter of law with

respect to at least one of its Station 6 wells, the City will inevitably present evidence regarding the issue of damages to the jury.  Because Defendants' proposed trial structure will accomplish nothing and will waste time, the Court should deny the request to bifurcate.  *See* Section III.D.

## II.        LEGAL STANDARD

The party seeking bifurcation bears the burden of establishing that it is warranted.  *Dallas v. Goldberg*, 143 F.Supp.2d 312, 315 (S.D.N.Y. 2001).  Bifurcation is appropriate "where the evidence offered on two different issues will be *wholly distinct*."  *Vichare v. AMBAC Inc.*, 106 F.3d 457, 466 (2d Cir. 1996) (emphasis added).  When "issues of liability and damages are intertwined," none of the interests promoted by Federal Rule of Civil Procedure 42(b) are furthered and bifurcation is inappropriate.  *Vichare*, 106 F.3d at 466-67; *see also Union Carbide Corp. v. Montell N.V.*, 28 F. Supp. 2d 833, 837 (S.D.N.Y. 1998) (fact that resources would be wasted by bifurcation, as a result of having to repeat presentation in two proceedings of the same evidence weighs against bifurcation).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401; *see also In re MTBE*, 2008 WL 1971538, * 4 (S.D.N.Y. May 7, 2008).  Under this "liberal standard," all relevant evidence is admissible unless it is expressly precluded by federal law or contrary federal rule.  *See In re MTBE*, 2008 WL 1971538, * 4; Fed. R. Evid. 402.

Evidence may be excluded under Federal Rule of Evidence 403 only if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.  *Id.*  "Because virtually all evidence is prejudicial to one party or

another," to justify exclusion "the prejudice must be *unfair*" and must involve adverse effects beyond tending to prove a fact or issue that justifies admission. *Costantino v. David M. Herzog, M.D., P.C.*, 203 F.3d 164, 174-75 (2d Cir. 2000). Evidence is not confusing if it aids the jury in making its "ultimate determination." *See United States v. Blum*, 62 F.3d 63, 68 (2d Cir. 1995).

## III.  ARGUMENT

### A. The City Will Have No Difficulty Establishing Actual Injury at Trial

Wells 6, 6A, 6B, 6D and 33 are part of Station 6. Station 6 is a long-planned facility that will bring six City wells back into service and provide up to ten million gallons of potable water per day to the public. *See* 4/17/2008 Depo. of J. Roberts at 55:9-19; 4/22/2009 Depo. of W. Meakin at 196:15-22 (Exhs. 3-4 to Campins Decl.). Station 6 represents a central and crucial step in revitalizing the City's groundwater wells in Queens and the City is in the process of preparing to put the wells back into service. For example, the City has secured a renewal of its permit to operate the wells, *see* Depo. of J. Roberts at 70:13-14, has completed the early stages of the design process for Station 6, *see* 4/22/2009 Depo. of W. Meakin at 222:22-23, and has earmarked funds for the final detailed design and engineering work, *see* Depo. of J. Roberts at 72:15-21 (Exhs. 5-6 to Campins Decl.). All of these concrete steps demonstrate the City's absolute commitment to restoring this water resource and the City's desire to place Station 6 into operation as soon as possible. *See id.* at 76:20-22 (Exh. 5 to Campins Decl.).

Save for a well not at issue in this litigation (Well 6C, which draws from the currently MTBE free deeper Lloyd Aquifer), all of the wells supplying Station 6 *already contain* MTBE. Well 6D has shown concentrations as high as 350 ppb, Wells 6A and 6B have had detections of between 6.5-8.9 ppb and Wells 6 and 33 have had detections of between 2.1 and 2.3 ppb. *See* Figures 7-3 to 7-7 from 2/7/2009 Expert Report of D. Cohen and M. Bell (Exh. 7 to Campins

Decl.). All of these detections have occurred without the Wells being in active service. When the Wells are put into production, the City's expert analyses establish that water supplying Station 6 will have MTBE detections far in excess of the MCL (with MTBE concentrations peaking at around 35 ppb) and that treatment will be required until at least 2040. *See* 4/20/2009 Second Corrected Report of D. Terry at 11-12, 18-19 (Exh. 8 to Campins Decl.).

Furthermore, as experts on both sides have recognized, the presence of MTBE in the Wells at Station 6 substantially increases the costs associated with treating the water before the City delivers it to residents. *See, e.g.*, Rebuttal Report of M. Bell (City's expert) at p. 3-16 ("[F]acility sizing and operating parameters are controlled by MTBE, which is by far, the more difficult of the two VOC's to remove."); Revised Expert Report of D. Hand (defendants' expert) at Table 5 (attributing $910,000 for 3 years of treatment in Well 6D for MTBE, but only $147,000 for PCE for same period) (Exhs. 9-10 to Campins Decl.).

In short, with regard to the Station 6 Wells, the City has already provided ample evidence that (1) the City needs this water to ensure a reliable, predictable and secure source of water for its residents, (2) the City is in the process of bringing the wells back on line, the contamination in each of the wells is real and will last for decades once pumping resumes, and (3) MTBE substantially increases the costs of the treatment facility necessary for this water to be served to the City's residents. The City will therefore easily prove at trial that it has been injured by the MTBE contamination in the water drawn by the Station 6 wells and that it will continue to incur damages arising from that injury for decades to come.

With regard to the Wells selected by Defendants, the injury to such wells is addressed in detail in the City's Opposition to Defendants' Motion *In Limine* to Exclude Evidence of Future Injury or Damage to Wells 5, 22, 26, 39, and 45, and the City will not repeat those arguments here.

In brief, the City needs the water from Wells 5, 22, 26, 39 and 45, to ensure an adequate supply of water in the event of drought or other emergency.  *See, e.g.*, 4/17/2008 Depo. of J. Roberts at p. 88:12-89:6 (Exh. 11 to Campins Decl.).  Like the Station 6 Wells, each of these wells has tested positive for MTBE.  *See* Figures 7-16, 7-22, 7-24, 7-26, and 7-28 from 2/7/2009 Expert Report of D. Cohen and M. Bell (Exh. 12 to Campins Decl.).  Expert analyses indicate that when such wells are turned on, MTBE contamination at Wells 5, 22, 39 and 45 will persist for decades:  Well 5 (until 2027); Well 22 (until 2035); Well 39 (until 2020); Well 45 (until 2040).  *See* 4/20/2009 Second Corrected Report of D. Terry at 19 (Exh. 8 to Campins Decl.).

In sum, the City has presented ample evidence that the level of injury at each well at issue supports actual, compensable injury to the City's property rights and its statutory rights to protect the purity of waters that supply the City's drinking supply and to take action to address deleterious changes in water quality.  *See* Sections III.B- III.C.

**B.   The City Has Substantial, Legally Protected Interests in the Water Drawn by its Wells**

Defendants argue that because the City is not currently serving the contaminated water from the Wells to its residents, the City has no legally protected interest in the water.  *See* Deft's Memo of Law at 4-5.  Under Defendants' view, New York law allows tortfeasors to pollute subterranean waters beneath a water provider's wells with abandon, and unless a public water provider actually serves the contaminated water to its residents, the public water providers have no legally protected interests in such water.  New York law does not support Defendants' bright-line argument, but instead vests the City with substantial property and statutory rights in the water it draws from the wells at issue.

As owner of Wells 6, 6A, 6B, 6D, 33, 5, 22, 26, 39, and 45, the City has substantial possessory property rights to water drawn from them.  *See, e.g.*, *In re MTBE*, 457 F.Supp.2d 455,

462 (S.D.N.Y. 2006) ("Usufructuary interests are possessory property rights"); *Hathorn v. Natural Carbonic Gas Co.*, 194 N.Y. 326, 338 (1909) ("subterranean waters have always been treated as a mineral in the decisions relating to their use and enjoyment.");  *Hathorn v. Natural Carbonic Gas Co.*, 112 N.Y.S. 374, 378 (App. Div. 1908) (percolating water found in land belongs to the owner of the land); *Keeler v. Tubbs*, 147 N.Y.S.2d 166, 170 (Sup. Ct. 1955) ("the right of a landowner to sink wells, and gather and use percolating waters as he will is a property right which cannot be taken away from him").  Defendants' strained view of New York property law is unsupportable.[2]

In addition to the City's possessory property rights, the City has special statutory rights to the subterranean waters that supply its wells.  *See In re MTBE*, 2005 WL 1500893, * 3 (S.D.N.Y. June 24, 2005) (conduct that interferes with a water provider plaintiff's ability to comply with its statutory obligations or causes it to expend resources to investigate or remediate contamination results in cognizable harm); *see also In re MTBE*, 2007 WL 700819, * 2-3 (S.D.N.Y. March 7, 2007) (discussing California water district's statutory rights).  For example, in 1937, the New York State Legislature expressly provided the City with the right "to preserve the purity of all waters from which any part of the city water supply is drawn, and to protect such supply and the lands adjacent thereto from injury or nuisance."  *See People v. Van Buren*, 4 N.Y.3d 640, 645 (2005).  This right has been codified as New York City Administrative Code Section 24-302.[3]

---

[2] Defendants cite *Sweet v. City of Syracuse* to support their view of the law.  *Sweet*, however, involved a public *lake* and is distinguishable on its face.  129 N.Y. 316, 327-28 (1891).  Another case cited by Defendants, *Westphal v. City of New York*, 78 N.Y.S. 56 (App. Div. 1902), actually undermines Defendants' claim that the City does not have substantial rights in the water it procures: the "suggestion that the city has no authority to use driven wells is hardly of importance enough to be seriously considered.  The method of securing water is purely an incident to the larger purposes of the municipality in procuring a water supply, and is necessarily included in the general powers delegated to the city for this main purpose."  *Id.* at 60.

[3] The word "purity" in Section 24-302 in turn should be construed in accordance with its plain meaning.  *See Puello v. BCIS*, 511 F.3d 324, 327 (2d Cir. 2007).  Purity is commonly understood

Moreover, separate and independent statutory rights flow from the fact that state regulations require the City to monitor and treat contamination even in instances where contamination is present below the MCL where there are any "deleterious changes in raw water quality":

> (a) Whenever the supplier of water determines or is advised by the State that one or more of the MCLs set forth in this Subpart are *or may be exceeded*; . . . *or that any deleterious changes in raw water quality have occurred*; *or that a change in the character of the . . . or aquifer has been observed which may affect water quality*; or that any combination of the preceding exists, *the supplier of water shall notify the State and do the following*:
>
> (1) undertake a study to determine the cause or causes of such conditions, independent of known or anticipated treatment technology;
>
> (2) modify existing or install treatment to comply, to the extent practicable, with sections 5-1.30, 5-1.50, 5-1.51 and 5-1.60 of this Subpart;
>
> (3) initiate water sampling as needed to delineate the extent and nature of the cause of concern;
>
> (4) investigate all or part of the watershed or aquifer to verify any existing or potential changes in the character of the sources of water supply; . . .

N.Y. Comp. Codes R. & Regs. tit. 10, § 5-1.12 (emphasis added); *see also* N.Y. Comp. Codes R. & Regs. tit. 10, § 5-1.71 (duty to prevent contamination).[4]

Similarly, because it provides drinking water to the public, the City has a particular interest in providing potable water, for example water that does not have an offensive taste and odor and

---

as meaning "the condition or quality of being pure; freedom from anything that debases, contaminates, pollutes, etc." *See* "purity," Dictionary.com Unabridged Dictionary (Retrieved May 25, 2009) (Exh. 13 to Campins Decl.). The City therefore has a legal right to keep its water free of contaminants. N.Y.C. Admin. Code § 24-302.

[4] The four regulations referenced in Section 5-1.12(a)(2) relate to treatment and water quality standards. Section 5-1.30 details certain minimum treatment requirements. Sections 5-1.50 and 5-1.51 discuss the applicability of MCLs, set forth MCLs (by reference) and address compliance with MCLs. Section 5-1.60 relates to monitoring of disinfection byproducts in surface water systems or groundwater systems under the direct influence of surface water and is not directly relevant to this litigation. *See* N.Y. Comp. Codes R. & Regs. tit. 10, §§ 5-1.30, 5-150, 5-151, 5-160.

that is not contaminated with VOCs like MTBE.  *See* N.Y. Comp. Codes R. & Regs. tit. 10, § 170.3

(defining potable water); *see also* N.Y. Comp. Codes R. & Regs. tit. 10, § 40-2.160 (every public

water system shall provide "a safe, adequate and aesthetically pleasing supply of water for drinking

and other domestic uses").  As the Court has held, the level at which MTBE affects the aesthetic

acceptability of drinking water requires a "fact-specific" inquiry.  *In re MTBE*, 593 F.Supp.2d 549,

551-53 (S.D.N.Y. 2008).

　　　　In sum, the City has substantial, legally protected property and statutory interests in the

water drawn by its wells.

### C.  Defendants' Misstate the Law Regarding Actual Injury

#### 1.  Injuries to Real Property and Statutorily Protected Interests of the Type Suffered by the City Are Clearly Sufficient to Prove Actual Injury

　　　　Defendants' motion rests on a fundamental misunderstanding of the law regarding actual

injury.  Injuries to real property of the type suffered by the City are clearly actionable.  *See Olin*

*Corp. v. Certain Underwriters at Lloyd's London*, 468 F.3d 120, 130 (2d Cir. 2006) (applying New

York law and holding that "passive migrating contamination is property damage"); *id.* at 130-32

(collecting cases re same).  The Second Circuit's decision in *Olin Corporation* is illustrative.

Applying New York law in the insurance coverage context to define "property damage" in litigation

involving migrating groundwater contamination, the Court held that "property damage" includes

"continuing migration of chemicals in the groundwater."  468 F.3d at 130.  Indeed, the Court held

that migrating contamination constitutes additional "property damage" as it migrates and held that it

was error to fail to instruct the jury to consider as property damage the passive spread of

contamination up to the point the contamination stopped spreading.  *Id.* at 131-32.[5]  Therefore, by

---

[5] *Frank v. DaimlerChrysler Corporation*, cited by Defendants as supporting their view of the law, actually contradicts it.  741 N.Y.S.2d 9 (App. Div. 2002).  The Court in *Frank* considered

analogy, to prove actual injury as a matter of New York property law, the City must show is that its Wells are being impacted by the continuing migration of MTBE in groundwater and that such contamination is impacting its planned use of the water.  As discussed in Section III.A., the City has established that its Wells are currently being impacted by such contamination and that it plans to bring the Wells online to ensure the security of its water supply.  The City has therefore shown actual injury to its property rights.

Similarly, the City also has the statutory right and obligation "to preserve the purity of all waters from which any part of the city water supply is drawn," N.Y.C. Admin. Code § 24-302, and statutory duty to take action – including testing, monitoring, or treating contaminated wells – *before* contamination reaches the applicable MCL.  N.Y. Comp. Codes R. & Regs. tit. 10, § 5-1.12 (duties to (1) undertake a study to determine the causes of contamination, (2) modify existing treatment or install treatment; (3) initiate water sampling as needed to delineate the extent and nature of the cause of concern; (4) investigate all or part of the watershed or aquifer to verify any existing or potential changes in the water supply are all triggered by deleterious changes in water quality); *In re MTBE*, 458 F.Supp.2d 149, 155, 156 n. 35 (S.D.N.Y. 2006) (citing N.Y. Comp. Codes R. & Regs., tit. 10, § 5-1.12 and holding that New York water purveyor plaintiffs have a duty to take action before contamination reaches the MCL).

Conduct that interferes with the City's statutory rights and obligations injures the City and constitutes actionable harm.  *In re MTBE*, 2005 WL 1500893, * 3 (S.D.N.Y. June 24, 2005)

---

the sufficiency of a design defect claim alleged by a plaintiff related to a defective car seat.  The Court found that the plaintiff had failed to allege actual injury, but in doing so, it implied that the plaintiffs would have stated a claim had they alleged that the seats had "failed," or "been retrofitted or repaired" because of the alleged defect or that they had suffered a "financial loss." *Id* at 17.  Here, the City will easily prove that the defective product failed (it contaminated the City's property), that it must repair the problem (install treatment) and that the City has suffered a financial loss (nearly $1 million dollars in costs plus interest).  *Frank* therefore actually supports the City's contention that it suffered "actual injury" and undermines Defendants' view.

(conduct that interferes with a water provider plaintiff's ability to comply with its statutory obligations or causes it to expend resources to investigate or remediate contamination, results in cognizable harm).  Here there can be no serious doubt that the City has suffered such an injury.  *See* Section III.A, *supra*.

 For much the same reason, Defendants' assertion that the City's "costs to investigate, cure or prevent harm" are irrelevant to proof of actual injury (Deft's Memo of Law at 7) also misses the mark.  As explained above, once there are deleterious changes in raw water quality data, the City is under a regulatory obligation to "undertake a study to determine" the cause of the contamination, to "modify existing or install treatment," to initiate water sampling as needed to delineate the extent and nature of the cause of concern, and "to investigate all or part of the watershed or aquifer to verify any existing or potential changes in the character of the sources of water supply."  The City would not have to take any of these actions but for Defendants' tortious conduct; accordingly, the costs the City has suffered are part of its actual injury.  N.Y. Comp. Codes R. & Regs., tit. 10, § 5-1.12.

With regard to injury at levels below the MCL, that subject is addressed in detail in the City's Opposition to Defendants' Motion *In Limine* to Preclude Evidence or Argument Concerning Any Policy or Requirement to Treat MTBE Contamination to Any Level Other than the New York MCL and in the City's Opposition to Defendants' Motion *In Limine* to Exclude Evidence of Future Injury or Damage to Wells 5, 22, 26, 39, and 45.  Briefly, this Court has expressly declined to equate injury with the MCL, *In re MTBE,* 458 F.Supp.2d 149, 158 (S.D.N.Y. 2006) ("the MCL does not define *whether* an injury has occurred"), and has held that the extent and nature of the City's injury is a fact-specific determination to be made at trial, not in a motion *in limine*, *see In re MTBE,* 593 F.Supp.2d 549, 552 (S.D.N.Y. 2008) ("the issue of when the water suppliers are

harmed by MTBE contamination is fact-specific in a variety of ways."). For the reasons stated above, both the facts and the law support a finding that the City was harmed at all of its trial wells, even those that have not yet had detections above the MCL.

In sum, the City needs the water from the wells at issue to ensure a reliable, predictable and secure source of water for its residents, the City is in the process of bringing the wells back on line, the contamination in each of the wells is real and will last for decades once pumping resumes, and MTBE substantially increases the costs of the treatment facilities necessary for this water to be served to the City's customer. *See* Section III.A, *supra*. This level of injury constitutes actual, compensable injury to the City's property rights and its statutory rights to protect the purity of waters that supply the City's drinking supply and to take action to address deleterious changes in water quality. The Court should therefore deny Defendants' motion because it is based entirely on legally unsupportable and unduly narrow view of actual injury.

### 2. Well 6D Is Injured as a Matter of Law

This Court recently held that exceedance of the New York MCL constitutes injury as a matter of law. *In re MTBE*, 593 F.Supp.2d 540, 544 (S.D.N.Y. 2008) (once a well contains more MTBE than allowed by state law, jury must find that plaintiffs' well was injured as a matter of law). Well 6D has had detections as high as 350 ppb and the New York MCL is 10 parts per billion (ppb). *See* N.Y. Comp. Codes R. & Regs. tit. 10, § 5-1.52; *In re MTBE*, 458 F.Supp.2d 149, 153 (S.D.N.Y. 2006). In fact, Defendants concede that Well 6D has exceeded the MCL, *see* Deft's Memo of Law at 9. Well 6D is therefore injured as a matter of law, rendering Defendants' motion nonsensical.

### 3. Actual Injury Is Not a Required Element of the City's Trespass and Nuisance Claims

Although the City will have no difficulty proving actual injury, it is worth noting that under

well-established New York law, the City need not prove actual injury to sustain its trespass claim.
*N.Y. Rubber Co. v. Rothery*, 132 N.Y. 293, 295-96 (1892); *Burger v. Singh*, 816 N.Y.S.2d 478, 480
(App. Div. 2006); *see also Cook v. Rockwell Intern. Corp.*, 273 F.Supp.2d 1175, 1201 (D. Colo.
2003) (same).  Likewise, there is no requirement that the City prove "actual, as opposed to
threatened, harm" to prove its public nuisance claim.  *N.Y. State Nat. Org. for Women v. Terry*, 886
F.2d 1339, 1361 (2d Cir. 1989); *State of N.Y. v. Shore Realty Corp.*  759 F.2d 1032, 1051 (2d Cir.
1985) (collecting NY state cases).[6]

### D.  Bifurcation Would Result in Having to Repeat Witnesses and Evidence

Defendants ask the Court to bar introduction of facts concerning past and future treatment
and investigation costs until after the jury decides that the City "has met its burden to prove the
actual injury element of at least one of its claims."  Deft's Memo of Law at 12.  Defendants cannot
meet their burden of establishing that bifurcation is warranted.  *See Dallas*, 143 F.Supp.2d at 315.
Here, evidence of actual injury and damages are inextricably intertwined.  For example, the City
will present much of its evidence of actual injury (i.e. past MTBE detections, City policies, and the
status of the City's plans for each of the wells, and the City's intended use of the wells) through
both percipient and expert witnesses, and most if not all of these witnesses will also have testimony
relevant to the amount of damages (*e.g.* future costs associated with operation and maintenance of

---

[6] New York has expressly codified the City's standing to protect its water supply from "injury or
nuisance."  N.Y.C. Admin. Code § 24-302; *see also State v. Schenectady Chemicals, Inc.*, 479
N.Y.S.2d 1010, 1014 (App. Div. 1984) (action may be maintained by one who is "clearly
authorized" to commence legal proceedings to abate a public nuisance); *see also N.Y. State Nat.
Org. for Women*, 886 F.2d at 1361.  Defendants' assertion that the "presence of regulated chemicals
in groundwater, even at concentrations above applicable MCLs, does not constitute a public
nuisance unless the contamination has caused actual harm to humans or is reasonably certain to
cause such harm imminently" (Deft's Memo of Law at 6) is therefore not only directly contrary to
the express wishes of the New York State legislature, *see* N.Y.C. Admin. Code § 24-302; it is
completely unsupported by the case they cite.  In *State v. Fermenta ASC Corp.*, 630 N.Y.S.2d 884
(Sup. Ct. 1995), the court actually held that "there is no requirement that the State prove actual, as
opposed to threatened harm, from the nuisance in order to obtain abatement."  *Id.* at 890.

the treatment facilities for such wells).  In addition, the City will also establish the substantiality of

its injury through the testimony of Defendants' current and former employees, as well as the views

held generally among the major refiners.  *See, e.g.,* Exxon internal memorandum EXSPELL 00025

(Jun. 8, 1984) ("According to Shell, approximately 5 parts per *billion* (in water) is the lower level of

detectability for … MTBE") (Campins Decl. at Exh. 14) (emphasis in original).  As demonstrated in

Sections III.A to III.C, *supra*, the City is extremely likely to succeed in showing actual injury and

that Well 6D is injured as a matter of law.  Accordingly, if the Court were to grant Defendants'

motion, it is all but certain that each of these witnesses would be called to the stand twice.

Bifurcation would therefore be a waste of time and the Court's resources and would

unnecessarily burden the jury.  It is clearly inappropriate.  *See Vichare*, 106 F.3d at 466-67; *Union

Carbide Corp.*, 28 F.Supp.2d at 837.

### E.   Evidence of Past and Future Investigation and Treatment Costs Is Relevant and Not Unfairly Prejudicial, Confusing or Misleading

Evidence concerning past and future investigation and treatment costs clearly has a

"tendency to make the existence of any fact that is of consequence to the determination of the action

more probable" and it is therefore relevant.  Fed. R. Evid. 401-402; *see also In re MTBE,* 2008 WL

1971538, * 4 (S.D.N.Y. May 7, 2008).  For all of the reasons stated above, past and future

investigation and treatment costs constitute are relevant and would be relevant even if the inquiry

were improperly limited to actual injury.  N.Y. Comp. Codes R. & Regs., tit. 10, § 5-1.12; *In re

MTBE*, 458 F.Supp.2d at 155, 156 n. 35.  Moreover, because the City will easily establish actual

injury at trial, evidence concerning past and future investigation and treatment costs will aid the

jury in making its ultimate determination as to the amount of damages.  Its probative value can

not possibly be substantially outweighed by the danger of unfair prejudice, confusion of the

issues, or misleading the jury.  Fed. R. Evid. 403; *Costantino*, 203 F.3d at 174; *Blum*, 62 F.3d at

68.

## IV.    CONCLUSION

The Court should deny Defendants' Motion *In Limine* to Exclude Evidence and

Argument Regarding Plaintiff's Past and Future Investigation and Treatment Costs Until It

Proves Actual Injury.

Dated: San Francisco, California
      May 26, 2009

                                    MICHAEL A. CARDOZO
                                    Corporation Counsel of the City of New York
                                    Attorney for Plaintiff City of New York
                                    100 Church Street
                                    New York, New York 10007
                                    (212) 788-1568

                                    */s/ NICHOLAS G. CAMPINS*
                                    VICTOR M. SHER *(pro hac vice)*
                                    TODD E. ROBINS *(pro hac vice)*
                                    JOSHUA STEIN *(pro hac vice)*
                                    LESLEY E. WILLIAMS (LW8392)
                                    NICHOLAS G. CAMPINS *(pro hac vice)*
                                    MARNIE E. RIDDLE *(pro hac vice)*

                                    SHER LEFF LLP
                                    450 Mission Street, Suite 400
                                    San Francisco, CA 94105
                                    (415) 348-8300

                                    *Attorneys for Plaintiff City of New York*

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the following documents were served on

Liaison Counsel via Electronic Mail, and on all counsel of record by posting them directly to

CM/ECF and LexisNexis File & Serve on the 26th day of May, 2009:

1. **PLAINTIFF CITY OF NEW YORK'S OPPOSITION TO DEFENDANTS' JOINT MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING PLAINTIFF'S PAST AND FUTURE INVESTIGATION AND TREATMENT COSTS UNTIL IT PROVES ACTUAL INJURY**

2. **DECLARATION OF NICHOLAS G. CAMPINS IN SUPPORT OF PLAINTIFF CITY OF NEW YORK'S OPPOSITION TO DEFENDANTS' JOINT MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING PLAINTIFF'S PAST AND FUTURE INVESTIGATION AND TREATMENT COSTS UNTIL IT PROVES ACTUAL INJURY**

KRISTIN MEYERS