# EXHIBIT 1

# McDermott
# Will&Emery

Boston  Brussels  Chicago  Düsseldorf  London  Los Angeles  Miami  Munich
New York  Orange County  Rome  San Diego  Silicon Valley  Washington, D.C.

Peter J. Sacripanti
Attorney at Law
psacripanti@mwe.com
212.547.5583

May 7, 2009

**BY ELECTRONIC MAIL AND HAND DELIVERY**

The Honorable Shira A. Scheindlin
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1620
New York, New York  10007-1312

> Re:   City of New York v. Amerada Hess, et al.
> *Proposal for Trial Structure*

Dear Judge Scheindlin:

As indicated at this week's conference, I write with a proposal that may reduce trial time in the *City of New York* ("City") case by at least one-half (and likely more), and that will focus the jury upfront on whether the City can meet its threshold burden of proving that it has, in fact, been damaged by ExxonMobil.

The City has estimated that trial will take at least sixty days, not including its own cross-examinations and "reply" case.  Candidly, its estimate probably is conservative.  The City's Exhibit List alone is more than 1,200 pages long.  Because of the settlement of other defendants this list will likely shrink, but undoubtedly will remain voluminous.  There are 110 witnesses named just between the City and ExxonMobil.  In a nutshell, **because this case is really only about "threatened" MTBE contamination**, our proposal is the same one that the Court itself suggested in *Suffolk County*:  Rule 42(b) bifurcation, with the issue of "damages" tried first.[1]

**The City's Damage Case**

The City's damage case can be divided into two parts.  In the first part, the City seeks approximately $900,000 in past costs for a cluster of wells it calls Station 6.[2]  The City has

---

[1]   We have conferred with counsel for the other non-settling defendants and they do not object to this proposal.

[2]   ExxonMobil does not concede that these alleged past damages for Station 6 are recoverable, as the vast majority relate to the design of a treatment system that the City's own consultant (Marnie Bell) concedes were required to treat a dry cleaning solvent known as PCE.  In any event, these alleged damages have been more than covered by the prior and pending settlements in this case.  In addition, ExxonMobil is considering making an offer of judgment to the City for the amount of $900,000.  Of note, the theory on which the City wishes to proceed

The Honorable Shira A. Scheindlin
May 7, 2009
Page 2

specifically disclaimed any other past damages.[3]   We submit therefore, that the recovery of $900,000 in past costs is not what is driving this case to trial.

So what is the City's real damage claim?  It is based upon a mountain of **hypothetical assumptions** about future damage to wells that had been abandoned (at the advice of the City's own consultant) or removed from service for various reasons not involving MTBE.  Indeed, none of the City's 68 wells pump water to customers.  Over the course of the last 10+ years since the City purchased its well system from the former Jamaica Water Supply Company in 1996, it has systemically replaced the well water being served to customers in Queens with surface water from the City's upstate reservoirs due to a host of *other* problems and contamination (*e.g.,* dry cleaning chemicals), but *not* MTBE.  However, given that MTBE was detected in these wells at some point in the past, the City has created a damages theory based upon a series of fanciful assumptions.  **First,** the City claims it *may* need to bring some of these wells back into service *if* there is a drought in the future *or* when it *may* need to take one of its upstate aqueducts out of service for repair.  **Second,** should one of those hypothetical scenarios come to fruition (and not one witness can say for sure they will and there is significant evidence that they will not) the City predicts through mathematical modeling that MTBE will be present in these wells at high levels never before seen that will require very expensive remediation.   When these various contingencies might occur (if ever) is anyone's guess – other than Station 6[4] none of the preliminary work to design treatment systems for these wells has been funded, or even budgeted, and may never occur – but what is known is that Station 6 is not slated to come online until 2019, at the earliest.   Because Station 6 is the City's first (and only) "pilot project" for reactivating the wells, it is fair to say that this case is about the threat of future MTBE detections that may only occur no less than a decade from today and, according to the City's experts, sometime between 2021-2040.[5]   That is, if the system is ever reactivated at all.

---

against ExxonMobil as to past costs for Station 6 is the Court's commingled products liability theory.  As such, under that theory, ExxonMobil could only be held liable at trial for a percentage of those past costs corresponding to its applicable market share.

[3]   The City admits that it has no past damages for any of the five "focus" wells selected by defendants.  *City Interrogatory Responses* (Oct. 24, 2008) ("The City does not seek to recover past damages for Well No. [5, 22, 26, 39, 45]").

[4]   Since 2000, the City has been working with its consultant Malcolm Pirnie to "cluster" five of the focus wells (wells 6, 6A, 6B, 6D and 33) into a treatment plant called "Station 6."  The stated purpose of this "Demonstration Plant" is to demonstrate to the people of Queens that its groundwater can be filtered free of various contaminants (namely, drying cleaning chemicals) for future use as a potable water supply.

[5]   The City's own documents establish that the likelihood of any well ever being used again as source of drinking water is extremely small.  Indeed, it has been recommended that the wells never be used as a water supply again.  It also bears noting that MTBE detections in the City's wells have been uniformly trending downward for years and, since 2003, have all been below 3 ppb (and most below 1 ppb) with the exception of one well.  The City's own consultants predicted (in 2007) that MTBE would be gone from the Station 6 wells in 3-4 years.  Nevertheless, for purposes of this litigation only, the City's experts now speculate that MTBE levels in all of its groundwater wells will exceed New York's Maximum Contaminant Level (10 ppb) 10, 20, and even 30 years from now.

The Honorable Shira A. Scheindlin
May 7, 2009
Page 3

        In short, this is a "threatened well" case.  These "threatened well" claims present an opportunity to structure the trial in a way that not only makes sense as a matter of law and fact, but that will result in a significantly fairer, more efficient, and shorter trial.

**<u>Try Damages First</u>**

        Our proposal is the same one that was discussed by the Court in *Suffolk County*:  bifurcate and try the issue of future damages first.  After all, what is the point of putting 68 "product liability" witnesses (18 experts; 50 fact witnesses) before the jury – evidence that will take at least two months of trial time – if, in the end, the City cannot meet its burden of proving damages?  Put another way, how does "product liability" matter if the City cannot first convince the jury that its long-idled wells face a present, imminent threat of future damages because of MTBE, and that this future threat exists because of ExxonMobil?

        The benefits of a bifurcated, damages-first approach are obvious.  Unlike "product liability," the "damages" case is notably discrete:  44 witnesses (at most), and an exponentially smaller set of exhibits.  Indeed, the damages issue almost certainly can be tried in 4-6 weeks.

        By having the jury decide the issue of "damages" first, the Court greatly increases the probability of the case being resolved in significantly less time than 3-4 months.  If the jury finds that the City cannot prove that its wells face an imminent threat of future damages, the case ends in approximately 4-6 weeks.  On the other hand, a jury finding in the City's favor on damages will be extremely instructive to both sides because a value will have been put on the case well in advance of a full 12-week investment of the Court's time.  As a likely consequence, it may result in some resolution of the case before more trial time becomes necessary.  Moreover, a jury finding on the issue of whether the City's ten focus wells are "threatened" by MTBE contamination will be instructive both as to the viability of the City's claims for "threatened" contamination of its non-focus wells and to the viability of the other cases consolidated in MDL 1358 with claims for "threatened" MTBE contamination.  The opportunity for this valuable guidance for both the City's case and the rest of the MTBE docket may be lost if products liability is tried first.  Finally, putting this dispositive issue first not only makes sense as a matter of law (proof of damages is a required element for every one of the City's claims) and fact (ditto), it is an approach that is encouraged by both Rule 42(b) and the Manual for Complex Litigation.  *Manual for Complex Litigation, Fourth*, § 11.632 ("severance of certain issues for separate trial under 42(b) can reduce the length of trial, particularly if the severed issue is dispositive of the case.").

        Neither possibility exists without bifurcation in a way that moves the issue of "damages" upfront.  I can think of no more unnecessary expenditure of the Court's resources, and the time of jurors, than devoting months of trial time to pressing (and defending) "product liability" allegations when, in the end, the jury may conclude that the "product" itself has not damaged the City.

The Honorable Shira A. Scheindlin
May 7, 2009
Page 4


       I appreciate the Court's time and attention to this proposal and, of course, am available to discuss at the Court's convenience.

                                       Respectfully submitted,

                                       *Peter John Sacripanti*

                                       Peter John Sacripanti

cc:    Vic Sher
       Susan Amron
       Alan Hoffman
       M. Coy Connelly
       Ben Krowicki