UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- x

In Re: Methyl Tertiary Butyl Ether ("MTBE")        Master File No. 1:00-1898
Products Liability Litigation                      MDL 1358 (SAS)
                                                   M21-88
---------------------------------------------------------------------- x   ECF Case
**This document relates to the following case:**

*City of New York v. Amerada Hess Corp., et al.*
Case No. 04 Civ. 3417

---------------------------------------------------------------------- x

**PLAINTIFF CITY OF NEW YORK'S OPPOSITION TO DEFENDANTS'
JOINT MOTION IN *LIMINE* TO EXCLUDE EVIDENCE OF
PROTECTED LOBBYING CONDUCT**

**I.     INTRODUCTION**

Invoking the *Noerr-Pennington* doctrine, Defendants seek an order excluding evidence of their "constitutionally protected lobbying conduct." (Defendants' Motion in *Limine* To Exclude Evidence of Protected Lobbying Conduct, filed May 11, 2009 at 1 (hereinafter, "MIL"). This Court should deny Defendants' motion in its entirety. Documents and testimony showing Defendants' lobbying conduct, including statements to state and federal legislatures and the EPA, are not barred from admission by the *Noerr-Pennington* doctrine, which is not a *per se* evidentiary ban, rather they are validly admissible at trial because they are relevant to Plaintiff the City of New York's ("the City's") claims and the Defendants' affirmative defenses, and because they are far more probative than prejudicial.

**II.    BACKGROUND**

The City alleges and will prove at trial that: (1) Defendants publicly promoted the safety of MTBE and gasoline containing MTBE by making representations to state legislatures about

the environmental benefits of MTBE, while not disclosing the danger and risk that MTBE posed to groundwater (Fourth Amended Complaint, ¶ 102); (2) Defendants lobbied EPA that MTBE and gasoline containing MTBE were safe substances, even though Defendants, by their own evidence knew that MTBE posed substantial risks to groundwater (*Id.* ¶ 108); (3) ARCO Chemical, now Lyondell, openly promoted the environmental benefits of MTBE as a gasoline additive, without disclosing its known dangers and risks to groundwater, to state legislatures and regulators in Colorado, Arizona and Nevada (*Id.* ¶ 103.); (4) Defendants formed an MTBE Committee to lobby the EPA to convince it that further tests of MTBE were not required.  (*Id.* ¶ 105.)

## III. ARGUMENT

### A. Noerr-Pennington is Not an Automatic Evidentiary Bar and It Does Not Bar Evidence That Is Relevant and Probative

Defendants contend that because they "cannot be held liable for statements made to influence government action, even if those statements are alleged to have been deceptive," the "introduction of evidence at trial which impinges on Defendants' constitutionally guaranteed right to lobby or petition the government is forbidden." (MIL, p.1.)  Defendants misconstrue the *Noerr-Pennington* doctrine and misread cases applying it. *See Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 143-46 (1961); *United Mine Workers of America v. Pennington*, 381 U.S. 657, 671-73 (1965).  No federal or state court has barred such evidence under the circumstances in this case.

The *Noerr-Pennington* doctrine bars civil liability where the basis of the claim consists of "petitioning legislatures, administrative bodies, and the courts." *Tuosto v. Phililip Morris USA, Inc.*, 2007 WL 2398507 at *5 (S.D.N.Y. Aug 21, 2007) (citations omitted).  The doctrine

originated in the antitrust context, but has been applied to other areas of law.  *See Noerr Motor Freight*, 365 U.S. at 143-46; *Pennington*, 381 U.S. 671-73*; Hamilton v. Accu-tek,* 935 F.Supp. 13071316-17 (E.D.N.Y. 1996).  The doctrine shields conduct seeking to influence government action from liability, but it does not operate as a *per se* ban on all evidence of such advocacy. *See Telcor Communications, Inc. v. Southwestern Bell Telephone,* 305 F.3d 1124, 1137-39 (10th Cir. 2002); *In re Brand Name Prescription Drugs Litigation,* 186 F.3d 781, 789 (7th Cir. 1999); *Tuosto,* 2007 WL 2398507 at *5; *Mason v Texaco,* 741 F.Supp 1472, 1500-01 (D.Kan 1990); *Cipollone v. Ligett Group,* 668 F.Supp. 408, 409-11 (1987 D.N.J.).

In *United Mine Workers of America v. Pennington*, one of two Supreme Court cases in which the *Noerr-Pennington* doctrine originated, the Supreme Court explicitly distinguished between a cause of action based on lobbying activities (which was barred by the doctrine) and evidence of lobbying activity to show the underlying character or circumstances of a situation or activity (as intended here to counter some of defendants' affirmative defenses and as elements of plaintiffs claims for violation of TSCA, strict liability for product defect/design defect, failure to warn, and punitive damages):

> "It would of course still be within the province of the trial judge to admit this evidence, if he deemed it probative and not un-duly prejudicial, under the 'established judicial rule of evidence that testimony of prior or subsequent transactions, which for some reason are barred from forming the basis for a suit, may nevertheless be introduced if it tends reasonably to show the purpose and character of the particular transactions under scrutiny."

*Pennington*, 381 U.S. at 670 n3.

Federal courts have widely followed this approach.  For example, in *In re Brand Name Prescription Drugs Antitrust Litigation*, the Seventh Circuit held that a district judge in a large scale price-fixing case brought by retail pharmacies against drug manufacturers erred in treating the *Noerr-Pennington* doctrine as a rule of evidence that automatically forbids the introduction

of evidence. 186 F.3d at 789. According to the Circuit Court, the trial court should have allowed the introduction of evidence (specifically testimony of a corporate executive) relating to the drug manufacturers' efforts to obtain governmental protection to show that the industry ha[d] indeed jumped the gun and begun to cartelize before getting government sanction for cartelization." *Id.* The Circuit Court went on to note "[s]uch evidence can be excluded under Fed.R.Evid. 403 if confusing or highly prejudicial . . . but there is no blanket rule of inadmissibility." *Id.* (internal citations omitted); *see also MCI Communications Corp. v. AT&T, Co.*, 708 F.2d 1081, 1160 (7th Cir. 1983) (refusing to invoke *Noerr-Pennington* as a complete evidentiary bar and admitting evidence of the conduct influencing the government because plaintiff sought to introduce accounts of this conduct as evidence of the business decisions that had already been made and that were relevant to charges.) Similarly, in *Telcor Comm. v. Southwestern Bell Telephone Co.*, the Tenth Circuit upheld a district court's admission of evidence of a defendant's petition of a state government body because it was offered, not for the improper purpose of showing that the defendant violated the antitrust laws by misleading the government body, but rather for the proper purpose of supporting the claim that southwestern bell acted for an improper monopolistic purpose. 305 F.3d at 1136-39; *See also Cipollone*, 668 F.Supp. at 409-10 (denying defendant cigarette companies' motion in *limine* to exclude evidence pursuant to *Noerr-Pennington* that defendants provided false and misleading information to congress.).

**B. Noerr-Pennington Does Not Bar the City from Introducing at Trial Evidence of Defendants' Lobbying Activities in this Case**

In this case, the City alleges claims for strict liability for design defect and/or defective product, failure to warn, negligence, civil conspiracy, public nuisance, private nuisance, trespass, violation of the New York Navigation Law, and violation of Section 8(e) of the Toxic

Substances Control Act.  The City does not allege any claims arising out of Defendants' lobbying activity.  Documents and testimony showing Defendants' statements to state and federal government bodies and the EPA are not barred from admission by the *Noerr-Pennington* doctrine, rather they are validly admissible at trial because they are relevant to elements of the City's claims and the Defendants' affirmative defenses, and because they are far more probative than prejudicial.

Relevant evidence is admissible under the Federal Rules of Evidence unless specifically excluded.  Fed.R.Evid. 402; *United States v. Perez*, 387 F.3d 201, 209 (2d Cir. 2004); *Ventura Assocs. v. Int'l Outsourcing Servs.*, 2009 WL 691066, *2 (S.D.N.Y. March 17, 2009).  Evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" is relevant.  *See* Fed. R. Evid. 401 (emphasis added).  In order for evidence or testimony to be relevant, "it must relate to an issue in the case or be sufficiently pertinent to a material fact in the case."  *See Allstate Ins. Co. v. Gonyo*, 2009 WL 1212481, *3 (N.D.N.Y April 30, 2009).

Relevant evidence may be excluded only if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  *See* Fed. R. Evid. 403 (emphasis added).  The rule affords the trial court broad discretion, but the balancing test is designed to favor admission of relevant evidence.  *See PRL USA Holdings, Inc. v. United States Polo Ass'n*, 520 F.3d 109, 119 (2d Cir. 2008).

Here, evidence of Defendants' lobbying activity, including their statements to federal and state legislatures and the EPA, shows the purpose and character of the transactions at issue in this case.  *See Pennington*, 381 U.S. at 670 n.3.  For example, evidence that Defendants, through

participation in industry trade groups as well as individually, sought to conceal the adverse environmental risks associated with adding MTBE to gasoline is relevant on multiple grounds at issue in this case. Defendants' misrepresentations show that Defendants intentionally failed to warn the government, the public, and the operators of gasoline stations concerning danger of MTBE to groundwater and drinking water supplies. This evidence is relevant, among other things to the City's claims for strict liability for design defect and/or defective product, failure to warn, and negligence. It is also relevant to the City's claim for violation of TSCA, because what Defendants' told or did not tell the government is directly at issue as an element of that claim. Defendants' deceitful statements to legislators and agencies help demonstrate course of conduct and malice. Defendants' knowledge of their own mendacity also directly supports the malice prong of punitive damages.

Defendants' various affirmative defenses also put their lobbying conduct directly in issue. For example, in its Seventh Amended Master Answer and Affirmative Defenses, Defendant ExxonMobil asserts: "Plaintiff's claims are barred in whole or in part because federal, state and/or local authorities and agencies have mandated, directed, approved and/or ratified the alleged actions or omissions of ExxonMobil. (Seventh Amended Master Answer and Affirmative Defenses at ¶ 3.)

Finally, the probative value of evidence of Defendants' lobbying conduct is far greater than any danger of unfair prejudice to Defendants, waste of time or confusion of the issues. *See PRL USA Holdings,* 520 F.3d at 119. Despite Defendants' contention that introduction of evidence of defendants lobbying conduct will result in numerous mini-trials, the City plans to present such evidence in an efficient fashion as each situation requires.

### C. Defendants' Misrepresentations to Federal and State Legislatures and the EPA Fall Within the Exception to *Noerr-Pennington* for Illegal/Unethical Conduct

Finally, evidence of the Defendants' misrepresentations and omissions to federal and state legislatures and the EPA are admissible because they fall within the exception to the *Noerr-Pennington* doctrine for unethical/illegal conduct. *See, e.g., Truosto*, 2007 WL 2398507 at *5; *Hamilton*, 935 F.Supp. at 1317. The "unethical exception" denies *Noerr-Pennington* protection where the political activity involved "illegal, corrupt or unethical means." *Id.* Here, Defendants statements to federal and state legislatures and the EPA that MTBE was safe, when, in fact, they knew by their own tests and evidence that MTBE posed substantial risks to groundwater, were unethical. They were also unlawful because they violated section 8 of the TSCA,[1] among other things. They do not merit *Noerr-Pennington* protection, because they "exceed[ed] the boundaries of the protection afforded." *Cipollone*, 668 F.Supp. at 411. Overtly corrupt conduct such as bribing a public official has been ruled outside the protection of the doctrine, as has false information when filed with an administrative agency with deceptive intent, as was the case with Defendants' statements to the EPA here. *See Friends of Rockland Animal Shelter Animals, Inc. v. Mullen*, 313 F.Supp.2d 339, 343 (S.D.N.Y. 2004).

---

[1] Sending knowingly false information to the EPA is also a criminal violation of 18 U.S.C. § 1001. *See* 18 U.S.C. § 1001 (2006) ("Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; (2) makes any materially false, fictitious, or fraudulent statement or representation; or (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry; shall be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both. If the matter relates to an offense under chapter 109A, 109B, 110, or 117, or section 1591, then the term of imprisonment imposed under this section shall be not more than 8 years.")

## IV.     CONCLUSION

For the foregoing reasons, Defendants' motion *in limine* to exclude evidence of protected lobbying conduct should be denied in its entirety.

Dated: San Francisco, California
         May 26, 2009

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Attorney for Plaintiff City of New York
100 Church Street
New York, New York 10007
(212) 788-1568


 /s/ *LESLEY E. WILLIAMS*
VICTOR M. SHER *(pro hac vice)*
TODD E. ROBINS *(pro hac vice)*
JOSHUA G. STEIN *(pro hac vice)*
NICHOLAS G. CAMPINS *(pro hac vice)*
MARNIE E. RIDDLE *(pro hac vice)*
LESLEY E. WILLIAMS (LW8392)

SHER LEFF LLP
450 Mission Street, Suite 400
San Francisco, CA 94105
(415) 348-8300

*Attorneys for Plaintiff City of New York*

- 9 -

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the following document was served on Liaison Counsel via Electronic Mail, and on all counsel of record by posting it directly to CM/ECF and LexisNexis File & Serve on the 26th day of May, 2009:

1. **PLAINTIFF CITY OF NEW YORK'S OPPOSITION TO DEFENDANTS' JOINT MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF PROTECTED LOBBYING CONDUCT**

*/s/ Kristin Meyers*
KRISTIN MEYERS