**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------- x

In Re: Methyl Tertiary Butyl Ether ("MTBE")        Master File No. 1:00-1898
Products Liability Litigation                                    MDL 1358 (SAS)
                                                                         M21-88
------------------------------------------------------------------- x  ECF Case

**This document relates to the following case:**

*City of New York v. Amerada Hess Corp., et al.*
Case No. 04 Civ. 3417

------------------------------------------------------------------- x

**PLAINTIFF CITY OF NEW YORK'S OPPOSITION TO LYONDELL CHEMICAL COMPANY'S MOTION *IN LIMINE* TO EXCLUDE ANY ARGUMENT OR EVIDENCE ATTRIBUTING THE ACTS OF LIABILITY OF ATLANTIC RICHFIELD COMPANY TO ARCO CHEMICAL COMPANY OR LYONDELL CHEMICAL COMPANY**

## I. INTRODUCTION

Plaintiff the City of New York ("the City") respectfully submits this opposition to Defendant Lyondell Chemical Company's ("Lyondell") motion *in limine* to exclude any argument or evidence attributing the acts or liability of Atlantic Richfield Company to ARCO Chemical Company or Lyondell Chemical Company. This Court should deny Lyondell's motion in its entirety. Evidence of pre-spin-off documents, testimony and argument showing the knowledge and acts of employees of the ARCO Chemical Company division of Atlantic Richfield before June 9, 1987 is clearly proper to establish that those employees took such knowledge with them to the post-spin-off entity. The City seeks to introduce such information to establish, among other things, the knowledge of and notice to these employees about the harmful properties of MTBE. Such information must be admitted because it is relevant to the City's claims including strict liability for product defect/design defect, failure to warn, negligence and violation of the Toxic Substances Control Act, and its probative value substantially outweighs any prejudice to Lyondell.

## II. BACKGROUND

MTBE was approved for use as a gasoline additive in March 1979, almost ten years prior to the purported separation of the ARCO Chemical Company and Atlantic Richfield. On July 21, 1986, ARCO Chemical Company submitted official "ARCO" comments to the US EPA on a report regarding MTBE that was to be used by the EPA to determine what tests should be conducted on MTBE. (Declaration of Lesley E. Williams, sworn to May 26, 2009 at ¶ 2 (hereinafter "Williams Decl.").) A letter accompanying the comment stated, "[a]fter consultation with individuals from the scientific and business areas within ARCO Chemical Company and in Atlantic Richfield, comments have been prepared on the MTBE information review." ARCO Chemical Company spoke officially to the EPA both for itself and for Atlantic Richfield presenting a unified "ARCO" view.

In this document, ARCO Chemical represented to the EPA that "moderate water solubility is reported. However, an ARCO Technical Bulletin states that MTBE is only slightly soluble in water, but is miscible with most organic solvents." *See id.* This document was authored by Eugene C. Capaldi, who was an employee of ARCO Chemical Company at the time the document was written, and continued with ARCO Chemical Company after it became a subsidiary, and after it was purchased by Lyondell.

Prior to June 9, 1987, ARCO Chemical Company was an unincorporated operating division of Atlantic Richfield, and was known as "ARCO Chemical Company" even though it was a component of Atlantic Richfield Company. (Declaration of Joseph T. Lee ("Lee Decl."), ¶ 3.) ARCO Chemical Company became a subsidiary corporation known as "ARCO Chemical Company" on June 9, 1987. (Lee Decl. ¶ 4.) Atlantic Richfield continued to own 80 million shares of ARCO Chemical Company's common stock representing 80.1 % of the outstanding shares. *McMullin v. Beran*, 765 A.2d 910 (S.Ct. Del. 2000). Atlantic Richfield then transferred substantially all of the assets and liabilities of the oxygenates and polystrenics business of the ARCO Chemical division to ARCO Chemical Company, the subsidiary. (Lee Decl. ¶ 4.) Thus, ARCO Chemical Company, the subsidiary, continued the same business operations that ARCO Chemical Company, the division of Atlantic Richfield Company, had carried out. This relationship continued for over ten years until ARCO Chemical Company was finally purchased on July 28, 1998 by Lyondell Chemical Company. (Lee Decl. ¶ 5.)

Many of the key ARCO Chemical employees who worked on MTBE when ARCO Chemical Company was a division of Atlantic Richfield continued their same positions uninterrupted when ARCO Chemical Company became a subsidiary. For example, Eugene Capaldi, George Yogis, Edward Dineen, and William Piel were all authors of key documents to the

EPA as well as industry trade groups regarding MTBE. Each of these individuals has testified that they remained employed with ARCO Chemical from as early as the 1970's until retirement. (*See* Williams Decl. ¶¶ 3-6 (Deposition of Eugene Capaldi dated Sept. 19, 2000 at 12:13-14:16, *South Tahoe Public Utility District v. Atlantic Richfield Co., et al.*; Deposition of George Yogis dated Sept. 14, 2000 at 12:11-23, *South Tahoe Public Utility District v. Atlantic Richfield Co., et al.*; Deposition of Edward Dineen dated Sept. 27, 2000 at 8:10-9:18, *South Tahoe Public Utility District v. Atlantic Richfield Co., et al.*; Deposition of Willam Piel dated Sept. 22, 2000 at 14:8-15:22, *South Tahoe Public Utility District v. Atlantic Richfield Co., et al.*))

The City and Atlantic Richfield have settled their claims in this case.

### III. ARGUMENT

Relevant evidence is admissible under the Federal Rules of Evidence unless specifically excluded. Fed.R.Evid. 402; *United States v. Perez*, 387 F.3d 201, 209 (2d Cir. 2004); *Ventura Assocs. v. Int'l Outsourcing Servs.*, 2009 WL 691066, *2 (S.D.N.Y. March 17, 2009). Evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" is relevant. *See* Fed. R. Evid. 401 (emphasis added). In order for evidence or testimony to be relevant, "it must relate to an issue in the case or be sufficiently pertinent to a material fact in the case." *See Allstate Ins. Co. v. Gonyo*, 2009 WL 1212481, *3 (N.D.N.Y April 30, 2009).

Relevant evidence may be excluded only if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *See* Fed. R. Evid. 403 (emphasis added). The rule affords the trial court broad discretion, but the

balancing test is designed to favor admission of relevant evidence. *See PRL USA Holdings, Inc. v. United States Polo Ass'n*, 520 F.3d 109, 119 (2d Cir. 2008).

  A. **This Court Should Permit Argument and Evidence Showing the Knowledge of Employees of ARCO Chemical Company Prior to June 9, 1987 Because the Knowledge of Those Employees is Relevant to the City's Claims**

The City is entitled to introduce documents and testimony showing the knowledge or acts of employees of the ARCO Chemical Company division of Atlantic Richfield prior to June 9, 1987, especially if those employees continued as employees at the ARCO Chemical Company subsidiary corporation. Many of these employees had substantial roles in the development and use of MTBE. Such information is admissible pursuant to Federal Rule of Evidence 402 because it is highly relevant to the City's claims, including strict liability for product defect/design defect, failure to warn, negligence and violation of the Toxic Substances Control Act. For example, the knowledge these employees had of the properties of MTBE is relevant to the notice prong of the TSCA claim, as well as to the reasonable measures prong of the failure to warn claim. In addition, the employees, the research, the corporate records, everything that ARCO Chemical Company possessed with respect to MTBE as a division of Atlantic Richfield remained with ARCO Chemical Company after the separation. When ARCO Chemical Company was transferred from a division to a corporation, the people who had the notice and knowledge of harms and risks of MTBE were not fired and did not disappear. In fact, most continued in their old positions at the "new" subsidiary.

  B. **Evidence of the Acts and Liabilities of ARCO Chemical Prior to June 9, 1987 is Relevant to the City's Claims Because ARCO Chemical Expressly Assumed the Liabilities of the Oxygenates Business When It Became a Subsidiary of Atlantic Richfield and Continued The Same Business That It Pursued When It Was a Division of Atlantic Richfield**

Evidence of the acts and liabilities of ARCO Chemical Company prior to its becoming a subsidiary on June 9, 1987 is relevant to the City's claims because ARCO Chemical

Company/Lyondell is liable to the City under the doctrine of successor liability. It does not matter that the City also sough relief from the predecessor cooperation, Atlantic Richfield. *See In re MTBE Products Liability Litigation*, 2008 WL 3163634 at *4 (S.D.N.Y. Aug. 6, 2008) (where successor liability governs when a plaintiff can bring a claims against a successor corporation, it does not prevent a plaintiff from also suing the predecessor corporation). Exceptions allowing plaintiffs to pursue a successor corporation are designed to protect injured plaintiffs by ensuring them a source of recovery not to protect the corporations. *Id.*

It is well settled under New York Law that a corporation may be held liable for the torts of its predecessor if (1) it expressly or impliedly assumed the predecessor's tort liability; (2) there was an actual or *de facto* consolidation or merger of the seller and purchaser; (3) the purchasing corporation was a mere continuation of the selling corporation; or (4) the transaction is entered into fraudulently to escape such obligations. *See Connolly v. Dresdner Ba*nk, 2009 WL 1138712, at *3-4(S.D.N.Y April 27, 2009) (citing *Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239, 245 (1983)). *See also New York v. National Service Industries, Inc.*, 460 F.3d 201, 205 (2d Cir. 2006); *In re MTBE Products Liability Litigation*, 2008 WL 3163634, at *3-6 (Aug. 6, 2008).

Here, Lyondell admits that ARCO Chemical Company expressly assumed the liabilities of the oxygenates business when Atlantic Richfield transferred the assets and liabilities of the oxygenates and polystrenics business of the ARCO Chemical Company, division, to ARCO Chemical Company, the subsidiary. (Lee Decl. ¶ 4.) This includes the liabilities of MTBE. Thus, ARCO Chemical Company/Lyondell is liable for the acts and liabilities of its predecessor on this ground alone. *See Connolly*, 2009 WL 1138712, at *2-3. In addition, ARCO Chemical Company, the subsidiary, impliedly assumed the liabilities of MTBE when it ratified the prior torts of the

ARCO Chemical Company division of Atlantic Richfield by continuing to make misrepresentations about MTBE and promoting its sale without warning of its deleterious properties.

Finally, ARCO Chemical Company, the subsidiary, and Lyondell are liable for the acts committed by ARCO Chemical Company, the division, prior to June 9, 1987 because ARCO Chemical Company, the subsidiary corporation, continued in the same business as a successor subsidiary as it did when it was an unincorporated division of Atlantic Richfield. *See, e.g., Societe Anonyme Dauphitex v. Schoenfelder Corp.*, 2007 WL 3253592 (S.D.N.Y. Nov. 7, 2007). It even continued in this business when it was purchased by Lyondell in 1998. To put it succinctly: ARCO Chemical Company was a mere continuation of ARCO Chemical Company. *See id.* Thus, documents and testimony showing the acts and knowledge of ARCO Chemical Company prior to June 9, 1987 are relevant to the liability of ARCO Chemical Company and Lyondell on the City's claims in this case.

Lyondell erroneously argues that evidence of ARCO Chemical Company's corporate relationship with Atlantic Richfield should be barred as irrelevant and prejudicial because ARCO Chemical Company/Lyondell and Atlantic Richfield "have maintained entirely different business operations" and Lyondell "has never sold or delivered gasoline (with or without MTBE) to any jobbers, brokers, traders, or service stations in Queens County, New York, and has not owned any gasoline storage terminals, service stations or underground storage tanks in Queens County." (MIL at 3; Lee Decl. at ¶¶ 9-10.) Lyondell's arguments are unavailing for several reasons. First, the City alleges that Lyondell manufactured a defective product and failed to warn the City, the public and users about the hazards of MTBE when it seeps into groundwater and drinking water. The City does not seek to hold Lyondell liable merely as a seller or deliverer of MTBE-laden gasoline in Queens County, New York. Second, contrary to Lyondell's assertion that ARCO Chemical and

Atlantic Richfield are not and have not been in the same business, MTBE was developed specifically as a gasoline additive. ARCO Chemical lobbied and promoted the use of MTBE as an oxygenate specifically for use in gasoline. (Williams Decl. at ¶ 6 (Piel Depo 66:17-23, 67:5-24, 68:10-20.)) ARCO Chemical promoted MTBE as a "key ingredient in environmentally cleaner gasoline" (first as an octane booster when lead was phased out and later as an oxygenate) in documents it provided to its customers. ((Williams Decl. at ¶ 7) (Hersig Depo (Sept 29, 2000) 16:25-18:12 and Ex. 1 LAN 0607977-83.)) Both ARCO Chemical and Atlantic Richfield were involved in the development of MTBE.

The design, manufacture and distribution of MTBE and failure to warn of its dangers commenced in the 1960's when ARCO Chemical, as a division of Atlantic Richfield, first developed and patented MTBE. This wrongful conduct continued throughout the 1970s, 80s, 90s and 00s. Thus, the evidence that supports the City's claims of wrongdoing by ARCO Chemical/Lyondell spans the time period from when ARCO Chemical was a division of Atlantic Richfield to when it was later separated into its own subsidiary and even later when it was acquired by Lyondell. Because there was a pattern of behavior over a period of time, it would be improper and unfair to limit the City's evidence to only those wrongful acts committed by ARCO Chemical Company once it was ostensibly separated from Atlantic Richfield.

There is also substantial evidence that ARCO Chemical Company and Atlantic Richfield, notwithstanding their ostensible separate status, continued to work together ratifying prior misrepresentations, making new misrepresentations, promoting the sale of MTBE without adequate warnings, intentionally suppressing unfavorable evidence regarding MTBE hazards.

### C. Evidence of the Acts and Liabilities of ARCO Chemical Prior to June 9, 1987 is Far More Probative than it is Prejudicial

Lyondell argues that evidence attributing the acts or liability of Atlantic Richfield prior to June 9, 1987 to ARCO Chemical Company/Lyondell would prejudice Lyondell because the jury will mistakenly believe that Atlantic Richfield and ARCO Chemical Company/Lyondell are part of the same or a single enterprise. (MIL at 6.) On the contrary, the jury is entitled to hear evidence that explains the corporate relationship of ARCO Chemical Company, the division of Atlantic Richfield and ARCO Chemical Company, the subsidiary corporation, and Lyondell. It is also entitled to hear about employees who worked on the development of MTBE at the first entity and brought their findings and knowledge to the second company. The documents, testimony and argument the City seeks to introduce are far more probative than prejudicial. Changes in corporate structure did not change the reality that the knowledge of these employees and their role developing and promoting MTBE was continuous. To simply excise half or even three-quarters of this story by simply omitting all references to the pre-June 9, 1987 ARCO Chemical Company universe will confuse the jury and prejudice the City.

Both ARCO Chemical Company and Atlantic Richfield are responsible for the development of MTBE. Theirs is a pattern of behavior that started prior to June 9, 1987 at ARCO Chemical Company, the division, and continued after the company became a subsidiary. Employees of ARCO Chemical Company, the division, took actions and gained knowledge about the properties of MTBE prior to June 9, 1987, and they continued to develop and make use of this knowledge in their jobs after ARCO Chemical Company became a subsidiary.

### IV. CONCLUSION

For the foregoing reasons, the Court should deny Lyondell's motion in its entirety. Evidence of pre-spin-off documents, testimony and argument showing the knowledge and acts of

employees of the ARCO Chemical Company division of Atlantic Richfield before June 9, 1987, is clearly proper to establish that those employees took such knowledge with them to the post-spin-off entity.

Dated: San Francisco, California
      May 26, 2009

                                  MICHAEL A. CARDOZO
                                  Corporation Counsel of the City of New York
                                  Attorney for Plaintiff City of New York
                                  100 Church Street
                                  New York, New York 10007
                                  (212) 788-1568


                                  /s/ *LESLEY E. WILLIAMS*
                                  VICTOR M. SHER *(pro hac vice)*
                                  TODD E. ROBINS *(pro hac vice)*
                                  JOSHUA STEIN *(pro hac vice)*
                                  LESLEY E. WILLIAMS (LW8392)
                                  NICHOLAS G. CAMPINS *(pro hac vice)*
                                  MARNIE E. RIDDLE *(pro hac vice)*

                                  SHER LEFF LLP
                                  450 Mission Street, Suite 400
                                  San Francisco, CA 94105
                                  (415) 348-8300

                                  *Attorneys for Plaintiff City of New York*

**CERTIFICATE OF SERVICE**

I hereby certify that true and correct copies of the following documents were served on Liaison Counsel via Electronic Mail, and on all counsel of record by posting them directly to CM/ECF and LexisNexis File & Serve on the 26th day of May, 2009:

1. **PLAINTIFF CITY OF NEW YORK'S OPPOSITION TO LYONDELL CHEMICAL COMPANY'S MOTION *IN LIMINE* TO EXCLUDE ANY ARGUMENT OR EVIDENCE ATTRIBUTING THE ACTS OF LIABILITY OF ATLANTIC RICHFIELD COMPANY TO ARCO CHEMICAL COMPANY OR LYONDELL CHEMICAL COMPANY**

2. **DECLARATION OF LESLEY E. WILLIAMS IN SUPPORT OF PLAINTIFF CITY OF NEW YORK'S OPPOSITION TO LYONDELL CHEMICAL COMPANY'S MOTION *IN LIMINE* TO EXCLUDE ANY ARGUMENT OR EVIDENCE ATTRIBUTING THE ACTS OF LIABILITY OF ATLANTIC RICHFIELD COMPANY TO ARCO CHEMICAL COMPANY OR LYONDELL CHEMICAL COMPANY**

*/s/ Kristin Meyers*

KRISTIN MEYERS