UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

Master File No. 1:00-1898
MDL 1358 (SAS)
M21-88

This document pertains to:

*City of New York v. Amerada Hess Corp. et al.*,
Case No. NY-04-CV-03417

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 8 TO EXCLUDE EVIDENCE OR ARGUMENT CONCERNING TREATMENT COSTS ASSOCIATED WITH OTHER VOCS

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ..................................................................................................... ii

I.   PRELIMINARY STATEMENT ...................................................................................... 1

II.  ARGUMENT .................................................................................................................... 2

    A.   Legal Standard ........................................................................................................ 2

    B.   Evidence Concerning Costs to Clean Up Other VOCs is Relevant and
         Necessary for the Jury to Assess the Credibility of the City's Claims ................... 3

    C.   Evidence Concerning Costs to Clean Up Other VOCs is Relevant to the
         Amount of Damages (if Any) the City May Recover .............................................. 8

    D.   Evidence Concerning Costs to Clean Up Other VOCs Will Not Result in
         Any Unfair Prejudice and Will Not Waste Unnecessary Time ............................. 11

III. CONCLUSION ............................................................................................................... 12

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abdus-Sabur v. Port Authority of New York & New Jersey*, 00 Civ. 5496, 2001 U.S. Dist. LEXIS 14745 (S.D.N.Y. Sept. 20, 2001)..................................................................................3

*Central Hudson Gas & Electric v. Turecamo*, 496 F. Supp. 2d 331 (S.D.N.Y. 2007)..........2, 8, 11

*Feitshans v. Kahn*, 06 Civ. 2125, 2008 U.S. Dist. LEXIS 11330 (S.D.N.Y. Feb. 6, 2008)............2

*Iberville Parish Waterworks District No. 3 v. Novartis Crop Prot., Inc.*, 45 F. Supp. 2d 934 (S.D. Ala. 1999).........................................................................................................7

*In re MTBE Products Liability Litigation*, 458 F. Supp. 2d 149 (S.D.N.Y. 2006)................1, 7, 8

*In re MTBE Products Liability Litigation*, 568 F. Supp. 2d 376 (S.D.N.Y. 2008).........................8

*Perry v. Ethan Allen, Inc.*, 115 F.3d 143 (2d Cir. 1997)................................................................3

*United States v. Torniero*, 735 F.2d 725 (2d Cir. 1984)................................................................2

## STATE CASES

*Curiale v. Peat, Marwick, Mitchell & Co.*, 630 N.Y.S.2d 996 (1st Dep't 1995).........................11

## FEDERAL STATUTES

Fed. R. Evid. 401 ..........................................................................................................................2

Fed. R. Evid. 402 ..........................................................................................................................2

Fed. R. Evid. 403 ..........................................................................................................................3

## MISCELLANEOUS

New York Jury Pattern Instructions Civ. 2:277 (2008) ...............................................................11

I.      PRELIMINARY STATEMENT

In 1987, almost 10 years before Plaintiff acquired its Queens Groundwater Wells, Malcolm Pirnie—the City's consultants and now experts in this case—recommended to the Jamaica Water Supply Company ("JWS") that it abandon all these wells. This recommendation—over 20 years ago—was in recognition of the widely known fact that groundwater beneath Queens was (and remains) grossly contaminated by numerous pollutants— other than MTBE. In 1999, before MTBE was ever detected in any Station 6 wells, the City proposed water treatment to remove Volatile Organic Compounds ("VOCs"). Today, the Plaintiff's own expert on damages admits that the City would install treatment at Station 6 to remove the VOC tetrachloroethylene ("PCE") even "if there was no MTBE present in the wells."

Accordingly, Plaintiff's argument that "Defendants have no evidence suggesting that treatment was or will be installed solely to remove other VOCs" is blatantly false and misleading. *Plt's Mem.* at 2. Its further argument that "there are no issues regarding other VOCs or any other alleged contaminant" is a gross mischaracterization of the undisputed facts in this case. *Id.* at 4. It is undisputed that prior to 1999, treatment at Station 6 was initially proposed for other contaminants—and not MTBE. In addition, there is no dispute of fact that *all* the wells at Station 6 were taken out of service before 1987 because of "other contamination," *i.e.,* iron, manganese and other VOCs. There can be no doubt that the cost to treat other VOCs in these wells is relevant to and probative of disputed issues of fact which must be decided by this jury.

*First*, in ruling on Defendants' motion for summary judgment for lack of justiciability, the Court has already acknowledged that such evidence is relevant to the jury's ability to assess the credibility of the City's allegations that MTBE (as opposed to some other chemical) has caused it injury. *In re MTBE Prods Liab. Litig.*, 458 F. Supp. 2d 149, 160 (S.D.N.Y. 2006) ("Factual issues regarding why [a treatment] system was installed, the costs of the improvement,

and the extent to which the costs of current filtration are due to MTBE contamination (or to other contaminants) are likely triable issues inappropriate for resolution through summary judgment.")

**Second,** were the jury to find that MTBE has caused the City injury in connection with a well contaminated by other VOCs, such evidence will be relevant to the jury's assessment of the amount of damage that the City may have suffered due to MTBE. That is because New York law only awards damages in an amount sufficient to put the plaintiff in "as good a position as he was in before the accident." *Cent. Hudson Gas & Elec. v. Turecamo,* 496 F. Supp. 2d 331, 349 (S.D.N.Y. 2007). Thus, if the evidence shows that the City was planning to install a treatment system for the purpose of treating other VOCs, the Defendants, if found liable, would not be required under New York law to compensate the City for the entire cost of that treatment system, but rather only that portion (*e.g.,* certain design elements or maintenance costs) that can fairly be attributable to the presence of MTBE.

## II.   ARGUMENT

### A.   Legal Standard

Evidence should be excluded based on a motion *in limine* only when it is clearly inadmissible on all potential grounds. *See Feitshans v. Kahn,* 06 Civ. 2125 (SAS), 2008 U.S. Dist. LEXIS 11330, *2 (S.D.N.Y. Feb. 6, 2008) (Scheindlin, J.). As a general rule, "[a]ll relevant evidence is admissible." FED. R. EVID. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401; *see also U.S. v. Torniero,* 735 F.2d 725, 730 (2d Cir. 1984) (evidence is relevant if it "tends to prove or disprove a matter properly provable in the case") (internal citations omitted).

Evidence that is relevant to the determination of an action may be ruled inadmissible under Federal Rule of Evidence 403, but only if certain risks, such as unfair prejudice, confusion, or delay, substantially outweigh the probative value of such evidence. *See* FED. R. EVID. 403. As the Second Circuit has noted, "for relevant evidence to be excluded on this basis, the imbalance must be substantial, and the prejudice must be unfair." *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 151 (2d Cir. 1997). Of course, all testimony has the potential to be damaging, but that is not in and of itself grounds for exclusion under Rule 403. *See e.g., Abdus-Sabur v. Port Auth. of New York and New Jersey*, 00 Civ. 5496, 2001 U.S. Dist. LEXIS 14745, * 8 (S.D.N.Y. Sept. 20, 2001). Indeed, prejudice is only unfair if it has an "undue tendency to suggest decision on an improper basis." FED. R. EVID. 403 Advisory Committee Notes (1973).

### B. Evidence Concerning Costs to Clean Up Other VOCs is Relevant and Necessary for the Jury to Assess the Credibility of the City's Claims.

In this lawsuit the City is attempting to recover costs associated with treatment systems proposed before MTBE was detected in its wells. The City's Station 6 Treatment Plant was proposed to treat PCE and other contaminants, but because MTBE was subsequently detected in the Station 6 wells, the City is attempting to foist the costs of this entire treatment plant onto Defendants.

The City boldly claims that "Defendants have no evidence suggesting that treatment was or will be installed solely to remove other VOCs" (*Plt's Mem.* at 2) when it knows the record of evidence in this case is replete with facts detailing that the City (prior to when MTBE was first detected in these wells) planned to construct treatment facilities at Station 6 to remove historic levels of iron, manganese and PCE contamination.

Since 1999, the City has been planning to cluster its chosen focus wells (wells 6, 6A, 6B, 6D and 33) and route water produced from these wells through a treatment plant called "Station

6," but MTBE was not detected in any of these wells until 2000. *See* Declaration of Jennifer Kalnins Temple, Ex. A (Plaintiff's Undisputed Facts 24, 26, 235, 239, 243, 247, 251 in its Proposed Pre-Trial Order). The wells were acquired by the City from JWS in 1996, but none of them have been in service since before 1987 due to contamination by iron, manganese and other VOCs including PCE. *Id.* at 206; *see also* Kalnins Temple Decl., Ex. B (Expert Report of Cohen and Bell) at 2.3.2 ("The other wells were taken offline in previous years due to high iron and manganese levels as well as the appearance of volatile organic compounds"). The City's consultant, Malcolm Pirnie, (with whom its damages expert Marnie Bell is employed) recommended in 1987 to JWS that these wells be abandoned because of these other contaminants. Kalnins Temple Decl., Ex. C (1987 Master Water Supply Plan Update Report, NYC2_0001409-10 at Table 3-5 entitled "Wells to be Abandoned"). The source of the PCE detected in the Station 6 wells (which have been above the New York Maximum Contaminant Level for years) is unconfirmed, but a likely source is West Side Corporation, a former storage and distribution facility for dry cleaning chemicals. Kalnins Temple Decl., Ex. A (Plaintiff's Undisputed Facts 222-229 in its Proposed Pre-Trial Order). The City wants to bring these wells back to active service to address flooding in the area and to "demonstrate" to the local community that despite historic contamination by for example, dry cleaning chemicals, potable water can be derived from the wells through the Station 6 treatment plant.[1] The City's own testifying expert on damages admitted these facts both in her expert report filed in this case (Kalnins Temple Decl., Ex. B (Cohen and Bell Report) at 2.6.2), as well as at her deposition:

---

[1] The City purchased the Jamaica Water Supply Company in 1996 to replace the well water residents of south-east Queens were drinking with upstate reservoir water. It did so after 1996, however, this resulted in increased groundwater levels which caused flooding in local buildings, utilities and subways.

> Q. Have you historically taken PCE concentrations into account in your design proposals for station 6?
>
> A. I mean -- at station 6, yes, we have acknowledged that PCE is there and also must be treated.
>
> Q. So the design that you've proposed for station 6 in your expert report will treat PCE in the water detected at station 6 wells; correct?
>
> A. Correct, it's intended that treatment at that site will also treat for PCE.
>
> Q. And did you discount from your proposed costs for MTBE treatment the cost associated with treating PCE?
>
> A. Well, MTBE is the driver for the VOC process at that site, and all those costs will be incurred regardless of whether PCE is present or not present.
>
> Q. So is it your testimony that if MTBE was never detected in the wells at station 6, the City doesn't need to put treatment on the station 6 wells if it wants to deliver that water to customers?
>
> A. No, that's not my testimony. If there was no MTBE treatment there -- or if there was no MTBE present in the wells, the City would still install VOC treatments for PCE removal.

Kalnins Temple Decl., Ex. D (Deposition of Marnie Bell (Apr. 20, 2009) at 240:20-242:2).

The jury needs to be able to assess the credibility of the City's damages theory. Defendants have previously argued that the City's usufructuary rights to potable water has not been impaired by the low levels of MTBE detected in its wells and that the City cannot create a legally protected interest in drinking water that contains less than 10 ppb of MTBE, especially when those levels have done nothing to impair the ability of the City to serve that water to customers. *See Defendants' Motion for Summary Judgment for Lack of Justiciability* (filed Jan. 23, 2006) at 10-11. The Station 6 wells, like most of the City's groundwater wells, have never

been in service since the City acquired them in 1996.[2] Therefore, the City has not received any taste or odor complaints in connection with these wells. How then has MTBE affected the City's rights to use the well water at Station 6?

The City will argue that the levels of MTBE detected in well 6D (unlike the other Station 6 wells) have historically been above the MCL since first detected in 2000, although well 6D has not been tested since 2007 to confirm whether, in fact, any MTBE levels remain. Kalnins Temple Decl., Ex. A (Plaintiff's Undisputed Facts 247-249 in its Proposed Pre-Trial Order). The City will further argue that once MTBE was detected in the Station 6 wells, the work its consultants were already undertaking to design a treatment system at Station 6 had to address the levels of MTBE detected which affected certain aspects of the treatment design. For example, it is the opinion of the City's expert on treatment costs that an air stripper installed to treat MTBE (as opposed to other VOCs) will have "increased space requirements, operational complexity, and capital costs." Kalnins Temple Decl., Ex. B (Cohen-Bell Report) at 9.3.2.

Defendants do not dispute that treatment of MTBE may be more expensive than treatment for other VOCs (to the extent the levels detected require treatment at all)[3] (see II.C,

---

[2] These wells may never be reactivated; if they are put back into service, the earliest they can be reactivated is 2019.

[3] Note 1 in Plaintiff's Motion bears comment because it is indicative of the subterfuge Plaintiffs play with the facts concerning the contaminants at issue in these cases. The City claims "[i]ncluding TBA is important because Defendants' claim that MTBE degrades to TBA. If so, then the City's treatment costs must take MTBE-related TBA into account." First, Defendants make no claims whatsoever about TBA in this lawsuit; it is Plaintiff who has made allegations (albeit unsupported) about TBA contamination. *4th Am. Compl.*, ¶ 68. However, because the City has no evidence of any TBA detections requiring treatment, its damages expert did not formulate an opinion on costs associated with TBA treatment. Accordingly, Defendants' filed a Motion *in Limine* seeking to exclude evidence and argument regarding damage caused by TBA. *See Declaration of Jennifer Kalnins Temple filed in Support of Defendants' Motion in Limine to Exclude Evidence and Argument Regarding Damage Caused by TBA* (filed May 11, 2009), Ex. A (*Expert Report Donald K. Cohen & Marnie A. Bell* (Feb. 7, 2009)) at 9-5.

*infra*), but the jury needs to put in perspective the reasons why the Station 6 wells have been out of service—Malcolm Pirnie historically advised the City that the iron, manganese and PCE levels had contaminated these wells beyond any economic means of repair—and to assess whether in comparison to that factual backdrop the levels of MTBE detected (less than 10 ppb with the exception of well 6D) have really impacted the City's ability to use each of these wells.

In their *Motion for Summary Judgment for Lack of Justiciability*, Defendants cited the case of *Iberville Parish Waterworks Dist. No. 3 v. Novartis Crop Prot., Inc.*, 45 F. Supp. 2d 934 (S.D. Ala. 1999). In that case, the Court noted that the treatment system sought by plaintiffs—granular activated carbon ("GAC") filtration—not only would remove Atrazine (the chemical for which defendants in that case were alleged to be responsible) but also would have the "ancillary benefit" of removing most of the other organic contaminants in plaintiffs' water supplies. *Id.* at 938, n. 2. "Such a result calls the very premise of Plaintiffs' suit into question—why, after all, should Novartis bear the cost of removing contaminants for which it has no responsibility whatsoever." *Id.*

In its consideration of the *Iberville Parish* decision, this Court distinguished the City's case (and the other New York focus cases) because it appeared from the *Iberville* facts that little of the treatment costs actually incurred by the plaintiffs there were due to the alleged Atrazine contamination, that some of the expenses claimed as an injury had yet to be fully incurred, and taste/odor complaints were not at issue in *Iberville*. *In re MTBE*, 458 F. Supp. 2d at 155. Now that discovery has fully developed in the City's case, the facts in the *Iberville* case are strikingly similar to the City's case. The City does not claim damages relating to taste or odor complaints received in connection with Station 6 water because these wells have never been in service.

Moreover, it's clear that the genesis of the proposed Station 6 Treatment Plant was to address contamination other than MTBE and that the City intends for it to treat PCE (*supra* at 5-6).

The Court has already held that the above type of evidence is relevant to the jury's assessment of whether MTBE (as opposed to some other chemical) has really caused the City injury. *In re MTBE Prods Liab. Litig.*, 458 F. Supp. 2d 149, 160 (S.D.N.Y. 2006) ("Factual issues regarding why [a treatment] system was installed, the costs of the improvement, and the extent to which the costs of current filtration are due to MTBE contamination (or to other contaminants) are likely triable issues inappropriate for resolution through summary judgment.") The City should not be permitted to hide from the jury or the Court these highly relevant facts that reveal whether or not its claims for damage caused by MTBE are credible.

### C. Evidence Concerning Costs to Clean Up Other VOCs is Relevant to the Amount of Damages (if Any) the City May Recover.

The goal of compensatory damages in tort cases such as this is to place the Plaintiff in the same position she would have occupied had the wrongful conduct not occurred. *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 568 F. Supp. 2d 376, 383 (S.D.N.Y. 2008); *see also Cent. Hudson Gas & Elect. v. Turecamo*, 496 F. Supp. 2d 331, 349 (S.D.N.Y. 2007) (in a negligence action damages serve a compensatory function and must place the aggrieved party in as good a position as he was in before the accident).

The City's analogy about a car accident is quite apt except that it portrays the facts in reverse to reality. *Plt's Mem.* at 5. Application of the above rule of law to the real facts in this case demonstrates Defendants' point. The City argues that the facts here are like a car accident where Driver #1 causes $300 in damage to a car by denting its door (PCE), while Driver #2 (MTBE) destroys the car door causing $1,000 in damage. If these were the facts, the City argues, why would the costs for PCE treatment be relevant to Driver #3's damages? The

- 8 -

problem for the City is that, as outlined above, the real facts are that PCE and other chemicals "totaled" these wells which is why the City never put the wells into service. Since 1996, absent treatment these wells could not be used and the low level MTBE detected since 2000 is the minor dent in Plaintiff's hypothetical scenario.[4] To argue the opposite is disingenuous and the City is indeed attempting to obtain an undeserved windfall. *Id.* at 6. The City's discussion of *Hymowitz* and "innocent plaintiffs" is inapposite and irrelevant.

Likewise, the City's argument that the expert-related evidence on treatment costs for other VOCs "has no valid connection to the pertinent inquiry" and thus does not "fit" the facts of this case (*Id.* at 7) is mysterious and unsupported. For example, the City claims that Defendants' expert, David W. Hand, has "not even tried to identify or allocate costs related to PCE at Station 6" and that "Defendants' evidence in this regard will be wholly speculative." *Id.* Yet, a review of Table 5 from his Expert Report, attached as Exhibit A to the Campins Declaration, demonstrates that Dr. Hand has very specific opinions about the costs of treatment for MTBE versus PCE. It is Dr. Hand's opinion that none of the Station 6 wells require treatment because the levels have all historically been below the New York MCL (except for Well 6D) and the City has no plans to use them until at least 2019 when it is unlikely MTBE will be present. Kalnins Temple Decl., Ex. E (Revised Hand Report) at 5. If the wells were to be used in 2009, Dr. Hand's opinion is that only well 6D may require treatment (if MTBE is still present) and that the maximum cost of treatment using the most appropriate technology (Granular Activated Carbon ("GAC") filtration) would be $1.953 million. *Id.* If well 6D requires treatment, then Dr. Hand's opinion is that PCE will also require treatment because the most recent sampling has indicated

---

[4] Defendants concede well 6D has had MTBE contamination above the MCL; all other Station 6 wells have had very low detections. All wells have shown declining concentrations over time which makes it unlikely there will be any contamination present in ten (10) years.

PCE levels above New York's MCL of 5 ppb. Parsed more specifically, it is Dr. Hand's opinion that the capital costs associated with installation of the appropriate equipment ($733,000) should be apportioned between each contaminant equally since it is equally effective for either chemical. *Id.* at 8-9, Table 4. However, the City is correct when it states that the costs to remove MTBE from water are usually higher than the costs to remove PCE because of their differential ability to adsorb to filters. *Plt's Mem.* at 4. Therefore, the operation and maintenance costs ("O&M") (associated with, for example, the replacement of GAC filters) are likely to be higher if MTBE is present and thus Dr. Hand outlines how he would differentiate O&M costs between PCE and MTBE on Table 5 attached as Exhibit A to the Campins Declaration.

Given the above, the City's position that the costs for PCE removal are irrelevant since MTBE will "control" treatment makes no sense. *Id.* Just because certain aspects (O&M) of MTBE treatment might be more expensive, does not mean the City may unjustly gain the ancillary benefit of PCE removal if Defendants are found liable for any of the City's alleged damages. The proper measure of damages is the incremental cost for well-head treatment that the jury finds can be fairly attributed to MTBE because then the City will have been restored to its original position "prior to the accident", *i.e.*, in the position of planning for treatment of the Station 6 wells, but without having to incur additional cost to address levels of MTBE that may be present.

The portion of Dr. Hand's deposition cited by the City relates to his opinions in response to the City's expert's contentions on estimated costs for her preferred treatment design—clustering all of the Station 6 wells for treatment. If the water from the wells were blended together, it is the City's expert's opinion that PCE would not be present and, therefore, Dr. Hand

did not form an opinion on the costs associated with the City's design that should be attributable to PCE. What Dr. Hand testified to in that scenario is that if PCE were present, "It would not be up to me to allocate, but I think both parties [if a party responsible for the PCE contamination were present] should pay their fair share." Kalnins Temple Decl., Ex. F (Hand Deposition (Apr. 23, 2009) at 129:12-16. He is correct. Dr. Hand does not have to formulate a specific numerical opinion for each possible permutation of treatment costs that might apply should several future speculative scenarios unfold. Rather, the jury can assess Dr. Hand's opinions relative to apportionment for PCE versus MTBE under his proposed treatment option (GAC) for well 6D and apply that ratio to the costs it believe the City will incur for the Station 6 Treatment Plant, if it deems it appropriate to do so. Indeed, "so long as the figure arrived at has a reasonable basis of computation and is not merely speculative, possible or imaginary, the fact finder has the right to resort to reasonable conjectures and probable estimates and to make the best approximation possible through the exercise of good judgment and common sense in arriving at an award of damages." N.Y. PATTERN JURY INSTR. CIV. 2:277 (2008) (citing *In re Estate of Rothko*, 43 N.Y.2d 305 (N.Y. 1977); *Curiale v. Peat, Marwick, Mitchell & Co.*, 630 N.Y.S.2d 996 (1st Dep't 1995)).

### D. Evidence Concerning Costs to Clean Up Other VOCs Will Not Result in Any Unfair Prejudice and Will Not Waste Unnecessary Time.

Admission of the above-cited evidence will not result in forcing the jury to "sit through one or more mini-trials." *Plt's Mem.* at 8. The clear legal basis for which the jury must consider this evidence is the New York standard for compensatory damages. *Central Hudson Gas,* 496 F. Supp. 2d at 349. It is Defendants and the jury who will be unduly prejudiced if this evidence is excluded from trial because such a ruling will prevent Defendants from explaining to the jury what this case is really all about—a cash grab on the deep-pocketed oil industry for costs to

address the PCE contamination that has historically plagued the City's groundwater system since its acquisition from the Jamaica Water Supply Company in 1996. The jury needs to hear all of the facts and to then decide what it believes the City is really entitled to for damages, if anything.

## III. CONCLUSION

For all the foregoing reasons, Defendants' respectfully request that the Court deny Plaintiff's Motion *in Limine* to exclude evidence or argument concerning treatment costs associated with other VOCs.

Dated: New York, New York
May 26, 2009

Respectfully submitted,

_____
Jennifer Kalnins Temple (JK 3274)
MCDERMOTT WILL & EMERY LLP
18191 Von Karman Avenue, Suite 500
Irvine, CA 92612-7108
Tel: (949) 757-7128
Fax: (949) 851-9348

Peter J. Sacripanti (PS 8968)
James A. Pardo (JP 9018)
MCDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, NY 10173-1922

*Attorneys for the Exxon Mobil Corporation Defendants*

BLANK ROME LLP
Alan J. Hoffman
Jeffrey S. Moller
Beth L. Haas
John J. DiChello
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 885-5000

*Attorneys for Defendants Lyondell Chemical Company and Equistar Chemicals, LP*

## CERTIFICATE OF SERVICE

Lisa A. Gerson, pursuant to 28 U.S.C. 1746, hereby declares under penalty of perjury, that on the 26th day of May, 2009, I caused to be served by electronic means upon counsel for plaintiff, a true and correct copy of the following:

DECLARATION OF JENNIFER KALNINS TEMPLE IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 8 TO EXCLUDE EVIDENCE OR ARGUMENT CONCERNING TREATMENT COSTS ASSOCIATED WITH OTHER VOCS

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 8 TO EXCLUDE EVIDENCE OR ARGUMENT CONCERNING TREATMENT COSTS ASSOCIATED WITH OTHER VOCS

/s/ Lisa A. Gerson
Lisa A. Gerson