UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation

Master File No. 1:00-1898
MDL 1358 (SAS)
M21-88

This document pertains to:

*City of New York v. Amerada Hess Corp. et al.*,
Case No. NY-04-CV-03417

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO 10. TO EXCLUDE EVIDENCE OR ARGUMENT RELATING TO PRIOR REGULATORY ENFORCEMENT ACTIONS AGAINST THE CITY CONCERNING CITY-OWNED UNDERGROUND STORAGE TANKS

## **INTRODUCTION**

In its opening brief, Plaintiff argues that evidence related to regulatory enforcement actions against the City concerning City-owned underground storage tanks ("USTs") would prejudice Plaintiff and confuse the jury with irrelevant information. *Plaintiff City of New York's Memorandum of Law in Support of Motion in Limine No. 10 to Exclude Evidence and Argument Relating to Prior Regulatory Enforcement Actions Against the City Concerning City-Owned Underground Gasoline Storage Tanks* ("*Pl.'s Mem.*"), at 2-3. At the same time, Plaintiff concedes that "evidence of releases from USTs, whether owned by the City or others, may be relevant under certain circumstances." *Id.* at 3. Defendants intend to use the challenged evidence for limited purposes unquestionably falling within those "certain circumstances." Specifically, Defendants will show (1) that as early as 1993, Plaintiff was aware that gasoline containing MTBE had leaked from City-owned tanks and contaminated groundwater, and (2) that Plaintiff's failure to comply with State and Federal tank regulations contributed to the release of MTBE gasoline to the environment.

Plaintiff's early knowledge of MTBE's characteristics and non-compliance with State and Federal regulations are probative of several of Defendants' defenses, including failure to prove proximate cause and cause in fact; the existence of superseding, supervening and/or intervening causes; and Plaintiff's own contributory negligence. *See, e.g. Defendant Exxon Mobil Corporation's Seventh Amended Master Answer and Affirmative Defenses*, ¶¶ 17, 42, 52. The evidence Plaintiff seeks to exclude by this motion is highly relevant to these discrete issues, and the limited manner in which Defendants intend to use it will protect against Plaintiff's concerns of confusion, waste of time, and undue prejudice.

## LEGAL STANDARD

A motion *in limine* refers to "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds. *Command Cinema Corp. v. VCA Labs, Inc.*, 464 F. Supp. 2d 191, 200 (S.D.N.Y. 2006). Courts considering a motion *in limine* may reserve judgment until trial, when admission of particular pieces of evidence can be placed in the appropriate factual context. *Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Group*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996).

As a general rule, "[a]ll relevant evidence is admissible." Fed. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401; *see also United States v. Torniero*, 735 F.2d 725, 730 (2d Cir. 1984) (evidence is relevant if it "tends to prove or disprove a matter properly provable in the case" (internal quotations omitted)). Evidence relevant to the determination of an action *may* be ruled inadmissible under Federal Rule of Evidence 403, but only if certain risks, such as unfair prejudice, confusion or undue delay, *substantially outweigh* the probative value of such evidence. *See* Fed. R. Evid. 403; *see also George v. Celotex Corp.*, 914 F.2d 26, 30 (2d Cir. 1990) ("Because Rule 403 permits the exclusion of probative evidence, it is an extraordinary remedy that must be used sparingly."); *Baker v. Canadian National/Illinois Cent. R.R.*, 536 F.3d 357, 369 (5th Cir. 2008) (unfair prejudice does not mean evidence that is "merely adverse to the opposing party" and "district courts should apply Rule 403 sparingly").

# ARGUMENT

A series of State and Federal laws and regulations dating back to the 1980's-1990's dictate the requirements to be followed by owners and operators of petroleum underground storage tanks. These laws and regulations apply with the same force of law to Plaintiff as they do to the Defendants in this case. On more than one occasion, however, Plaintiff City of New York has failed to comply with certain of these requirements. Evidence of such failure is relevant both to the City's knowledge regarding releases of MTBE-gasoline from USTs and the City's contribution to the MTBE groundwater contamination allegedly threatening its wells.

### A.  Evidence of Regulatory Enforcement Actions from the 1990's Is Relevant to Plaintiff's Knowledge Regarding UST Leaks and Contamination of Groundwater by MTBE.

Evidence is relevant if it "tends to prove or disprove a matter properly provable in the case." *United States v. Torniero*, 735 F.2d 725, 730 (2d Cir. 1984) (internal quotations omitted). The City has alleged that Defendants "had a strict duty to warn against *latent dangers* resulting from foreseeable uses" of the allegedly defective product. *4th Amend. Comp.* ¶ 136 (emphasis added). In addition, Plaintiff's expert, Marcel Moreau, is expected to argue that the Defendants had specialized knowledge that USTs leaked. *See Declaration of Jennifer Kalnins Temple* ("Kalnins Temple Decl."), Ex. A (*Expert Report of Marcel Moreau, Dec. 19, 2008*), at 51 ("Any company that owned substantial numbers of underground petroleum storage systems in the latter part of the twentieth century knew or should have know that these storage systems were common sources of groundwater contamination."). However, evidence stemming from a 1994 Consent Order between the New York State Department of Environmental Conservation (NYSDEC) and the City of New York will show that as early as 1993 the City was aware that USTs leaked, that groundwater contamination with MTBE could result, and that tank testing procedures were

available, and in fact required, to minimize these exact risks. The jury must be allowed to consider Plaintiff's knowledge of these facts because such evidence argues against the allegation that Defendants' failure to warn was the legal cause of Plaintiff's claimed injuries. *See Liriano v. Hobart Corp.*, 92 N.Y.2d 232, 241 (1998) ("where the injured party was fully aware of the hazard through general knowledge, observation or common sense ... lack of a warning about that danger may well obviate the failure to warn as a legal cause of an injury resulting from that danger").

In April 1994 the City of New York signed a Consent Order with NYSDEC to address certain on-going violations of USTs regulations. Among these violations was the City's failure "prior to December 28, 1987, to test approximately 1048 underground petroleum storage tanks for tightness at 397 facilities that are under its responsibility, as required by 6 NYCRR 613.5." *See* Kalnins Temple Decl., Ex. B (*NYSDEC Vehicle Refueling Facility Order on Consent, Apr. 21, 1994*), at 7. To comply with the consent order, the City of New York was required to meet certain deadlines for site assessment, tank testing, and investigation and remediation at a number of these sites. *Id.* at 8-9. As an example, one site covered by the consent order—the 113th New York City Police Precinct located at 167-02 Baisley Boulevard, Queens, NY—was out of compliance with requirements to address a failed tank tightness test. *See* Kalnins Temple Decl., Ex. C (*Preliminary Predesign Investigation Report for New York Police Department Precinct No. 113, Jan. 1993*), at 5-1, tbls. 1, 2. Groundwater test results from June 1993 reveal that MTBE was discovered in a monitoring well in the vicinity of the former tank field at a concentration of 550 ppb. *See* Kalnins Temple Decl., Ex. D (*NYCDDC UST Program Contract PW 348-23 System Performance Data for the 113th and 120th Precincts, Aug. 14, 2001*), at fig.

1, tbl 3, p. 5. Additional sites investigated pursuant to the 1994 Consent Order demonstrate the presence of leaking tanks and MTBE groundwater contamination as early as 1995 and 1996.

This and similar evidence is relevant to the jury's determination of whether Defendants are liable due to an alleged failure to warn of MTBE-gasoline's dangers and specifically counters Mr. Moreau's expected testimony regarding Defendants' specialized knowledge. Its exclusion at trial would greatly prejudice Defendants by impeding their ability to defend against the claim. *See Liriano*, 92 N.Y.2d at 241. And, contrary to the allegations presented in Plaintiff's motion, it is the *City's* attempt to hide its early knowledge and regulatory failures, not the presentation of evidence of the same, that would be misleading to the jury. *See Pl.'s Mem.*, at 1. Because this evidence is highly relevant and the risks of confusion or delay are minimal, if any, the jury should be permitted to review this evidence at trial. *See* Fed. R. Evid. 403.

**B.     Evidence of Plaintiff's Non-Compliance With State and Local UST Regulations Is Relevant to Issues of Causation and Plaintiff's Comparative Negligence.**

In a negligence action under New York law, juries are required to consider "whether [the] plaintiff was negligent, and if so to what extent [its] negligence contributed to" the alleged damage. *See Bruni v. City of New York*, 2 N.Y.3d 319, 327-28 (2004) (ordering new trial where jury was not charged on comparative negligence). Through the present motion, Plaintiff attempts to keep from the jury evidence of its own comparative fault—*i.e.*, evidence that the City failed to comply with regulations intended to prevent the release of gasoline from USTs, evidence that MTBE-gasoline was in fact released from City-owned tanks within the vicinity of its supply wells, and evidence that the City was deficient in its remediation of such releases.

Plaintiff's expert, David Terry, writes, and can be expected to repeat at trial, the following:

> The presence of additional sites in which significant releases occurred would add additional MTBE mass to the ground-water system which is not explicitly represented in the model. There is reason to suspect that additional, unreported MTBE sources are present within the Station 6 capture zone, based on the results of a recent study of nearby Nassau County...."

*See* Kalnins Temple Decl., Ex. E (*Second Errata to February 6, 2008 Expert Report of David B. Terry, P.G*), at 9. In fact, far more relevant than *suspected* releases based on evidence from "nearby Nassau County," are *known* releases that have occurred at City-owned sites not just within Queens County, but within Mr. Terry's own zones of capture. *See* Kalnins Temple Decl., Ex. F (*Expert Report of Fletcher G. Driscoll, Ph.D., Mar. 9, 2009*), at 14-15, tbl. 2-2. These known release sites include a significant number of non-compliant sites covered under the NYSDEC's 1994 Consent Order—sites that were in violation of tank testing requirements.

That Plaintiff's own tanks went un-tested for a number of years following implementation of the 1987 regulations is highly probative of whether Plaintiff's negligence contributed to the alleged contamination of its wells with MTBE. Plaintiff's experts seemingly agree with the probative value of tank testing results; both Marcel Moreau and G.D. Beckett have pointed to tanks test failures as some evidence of Defendants' culpability. *See, e.g.* Kalnins Temple Decl., Ex. G (*Appendix B of Expert Site Specific Report of Marcel Moreau, Feb. 6, 2009*) ("[t]welve tanks tested in Feb. 1986 and all failed;" "tightness testing NOT conducted on any USTs;" "[t]he facility has a history of failed tank tests."); Kalnins Temple Decl., Ex. H (*Expert Report of G.D. Beckett, C.Hg., Feb. 6, 2009*), at tbl. 1 (listing tank test failures at several Defendants' service stations).

In addition, the 1994 Consent Order required Plaintiff to "perform all necessary investigations and remediations at [listed] sites." Kalnins Temple Decl., Ex. B, at 9. Mr. Beckett expresses the opinion that, "the majority of parties responsible for release sites did not execute adequate actions to protect the groundwater resource from MTBE contamination" and that "few [remediation efforts] were likely effective for downstream migration of MTBE into the wider aquifer." Kalnins Temple Decl., Ex. H, at 4, 6. Although Mr. Beckett's expert report focuses attention on the Defendants' sites, his theories should apply no differently to the City-owned, non-compliant UST locations covered by the 1994 Consent Order. Again using the 113th Police Precinct as an example, although the City had commenced on-site remedial efforts by June 1993, NYSDEC still found it necessary to include the site in the April 1994 Consent Order requiring additional investigation and remediation. Defendants should be permitted to explore the adequacy of Plaintiff's "actions to protect the groundwater resource from MTBE contamination," and the challenged evidence is what will permit Defendants to do so.

Lastly, Plaintiff objects to a line of questioning posed to Dr. Daniel Walsh regarding various regulatory enforcement actions and consent orders. *See Pl.'s Mem.* at 2. Dr. Walsh, who was designated by Plaintiff to provide opinion testimony on the "[i]nvestigation and remediation of petroleum spills in the City, including spills with MTBE," Kalnins Temple Decl., Ex. I (*Ltr. From S. Amron to J. Pardo, Feb. 6, 2009*), at 2, opined at his deposition that while "[i]t's not uncommon for groundwater contamination to leave the property, ... it is very uncommon for that contamination to be chased [off-site] by the responsible party." Kalnins Temple Decl., Ex. J (*Deposition Transcript of Daniel Walsh, May 4, 2009*), at tr. 109:8-12. The "responsible part[ies]" to whom Dr. Walsh refers are not limited to the Defendants in this case, as demonstrated by the evidence Plaintiff is attempting to exclude.

Defendants must be permitted to counter evidence of their alleged culpability for MTBE detected in or threatening Plaintiff's wells with evidence that Plaintiff's failure to properly maintain USTs, store gasoline, and remediate releases is a possible contributing cause. What Plaintiff deems "unduly prejudicial," *Pl.'s Mem.* at 3, is simply evidence that paints Plaintiff in a bad light. However, evidence should not be excluded under Federal Rule of Evidence 403 simply because it is "adverse to the opposing party." *Baker*, 536 F.3d at 369. The evidence Defendants intend to use—in the limited manner described above—is highly relevant to issues "properly provable in the case," *Torniero*, 735 F.2d at 730, and any risks of prejudice, confusion or delay simply do not "substantially outweigh" that probative value. *See* Fed. R. Evid. 403.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to exclude evidence or argument relating to prior regulatory enforcement actions against the City concerning City-owned underground storage tanks should be denied.

Dated: New York, New York
       May 26, 2009

Respectfully submitted,

McDERMOTT WILL & EMERY LLP
Peter J. Sacripanti (PS 8968)
James A. Pardo (JP 9018)
Stephen J. Riccardulli (SR 7784)
Lauren E. Handel (LH 0755)
340 Madison Avenue
New York, NY 10173-1922

Jennifer Kalnins Temple (JK 3274)
18191 Von Karman Avenue, Suite 500
Irvine, CA 92612-7108
Tel: (949) 757-7128
Fax: (949) 851-9348

*Attorneys for the Exxon Mobil Corporation Defendants*

- 9 -

BLANK ROME LLP
Alan J. Hoffman
Jeffrey S. Moller
Beth L. Haas
John J. DiChello

The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 885-5000

*Attorneys for Defendants Lyondell Chemical Company and Equistar Chemicals, LP*

## **CERTIFICATE OF SERVICE**

Lisa A. Gerson, pursuant to 28 U.S.C. 1746, hereby declares under penalty of perjury, that on the 26th day of May, 2009, I caused to be served by electronic means upon counsel for plaintiff, a true and correct copy of the following:

DECLARATION OF JENNIFER KALNINS TEMPLE IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 10 TO EXCLUDE EVIDENCE OR ARGUMENT RELATING TO PRIOR REGULATORY ENFORCEMENT ACTIONS AGAINST THE CITY CONCERNING CITY-OWNED UNDERGROUND STORAGE TANKS

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 10 TO EXCLUDE EVIDENCE OR ARGUMENT RELATING TO PRIOR REGULATORY ENFORCEMENT ACTIONS AGAINST THE CITY CONCERNING CITY-OWNED UNDERGROUND STORAGE TANKS.

_____
Lisa A. Gerson