**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------- x

In Re: Methyl Tertiary Butyl Ether ("MTBE")       Master File No. 1:00-1898
Products Liability Litigation      MDL 1358 (SAS)
     M21-88
------------------------------------------------------------------- x      ECF Case

**This document relates to the following case:**

*City of New York v. Amerada Hess Corp., et al.*
Case No. 04 Civ. 3417

------------------------------------------------------------------- x

**PLAINTIFF CITY OF NEW YORK'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING ALLEGED POTENTIAL HUMAN HEALTH EFFECTS ASSOCIATED WITH MTBE**

**INTRODUCTION**

Plaintiff the City of New York ("the City") hereby submits its opposition to Defendants' joint motion *in limine* to exclude evidence and argument regarding potential human health effects associated with MTBE. Defendants' challenge is not a *Daubert* challenge to the reliability of Dr. Burns' potential testimony on the human health effects of MTBE, but is instead a Rule 402/403 challenge to the relevancy of any evidence as to the potential human health effects associated with MTBE. *See* Defendants' Motion at 8-9 (Applicable Law). The pertinent inquiry in this litigation, to which the potential human health effects of MTBE are plainly relevant, is whether or not the City has the right to deliver clean drinking water to its residents and a substantial property interest in delivering water free of Defendants' pollution.

As the EPA pointed out in an Advance Notice of Proposed Rulemaking concerning the use of MTBE as a fuel additive in gasoline, "there have been *no* human or animal health effects studies concerning the ingestion of MTBE in drinking water." Federal Register, Advance Notice of Proposed Rulemaking (March 24, 2000) at p. 16098 (Exhibit 1 to Declaration of Marnie Riddle ("Riddle Dec.")). Even the American Petroleum Institute noted the "obvious," and unanswered, "question of oral ingestion of contaminated water" (Minutes of Toxicology Committee Meeting, January 11, 1984, at p. 4) (Exhibit 2 to Riddle Dec.) and later pointed out that "[t]he contamination of groundwater by gasoline-associated compounds raises numerous questions of relevance . . . Is the water 'safe' to drink? . . . to bathe in? … to wash fruit and vegetables? … to cook with? … to water pets and livestock? … to irrigate crops? … to water the lawn?" (Hydrocarbon Contamination of Groundwater, Toxicology Overview. September 7, 1984) (Exhibit 3 to Riddle Dec.). The answers to these questions remain unsettled, leaving the

City with no choice but to evaluate for itself the reasonableness of treating MTBE in drinking water to as low a level as possible.

Whether or not MTBE has potential human health effects is therefore relevant to, at the very least, the issue of whether the City should recover damages for the presence of MTBE in groundwater at levels below the maximum contaminant level ("MCL") set by the State of New York. The City is thus entitled to present evidence making clear that it has a reasonable basis for serving water to its residents that is as free of MTBE as possible. The jury need not decide conclusively whether or not MTBE is a human carcinogen, but rather whether the weight of the evidence presented concerning the potential health effects of MTBE renders the City's actions in delivering MTBE-free water (or water containing minimal MTBE) reasonable. Thus, evidence of MTBE's potential human health effects is relevant, and Defendants' Motion to exclude such evidence should be denied.

## **LEGAL STANDARD**

As a general matter, "all relevant evidence is admissible under the Federal Rules of Evidence unless specifically excluded." *United States v. Perez*, 387 F.3d 201, 209 (2d Cir. 2004) (citing Fed. R. Evid. 402). The "standard of relevance established by the Federal Rules of Evidence is not high[]." *See Ventura Assocs. v. Int'l Outsourcing Servs.*, 2009 U.S. Dist. LEXIS 21541, *4 -*5 (S.D.N.Y. 2009) (citations omitted). Evidence "having *any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" is relevant. *See* Fed. R. Evid. 401 (emphasis added); *see also Royal Ins. Co. of Am. v. Joseph Daniel Const.*, 208 F. Supp. 2d 423, 428 (S.D.N.Y. 2002) (noting that it is a "direct relationship" between an issue and the evidence). In order for evidence or testimony to be relevant, "it must relate to an issue in the case or be

sufficiently pertinent to a material fact in the case." *See Allstate Ins. Co. v. Gonyo*, 2009 U.S. Dist. LEXIS 36597, *7 – *8 (N.D.N.Y 2009).

Rule 403 counter-balances Rules 401 and 402, and provides for the exclusion of relevant evidence if "its probative value is *substantially outweighed* by the danger of *unfair prejudice*, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *See* Fed. R. Evid. 403 (emphasis added). The rule envisions a "balancing test that affords the trial court broad discretion," and the balancing test is designed to favor admission of relevant evidence. *See PRL USA Holdings, Inc. v. United States Polo Ass'n*, 520 F.3d 109, 119 (2d Cir. 2008); *see, e.g., Leopold v. Baccarat, Inc.*, 174 F.3d 261, 270 (2d Cir. 1999) (holding that where both the danger of unfair prejudice and probative value were substantial the district court's determination to admit the evidence did not exceed its allowable discretion).

Relevant evidence should only be excluded if it has "'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *See Highland Capital Mgmt., L.P. v. Schneider*, 2008 U.S. Dist. LEXIS 63874, *33 (S.D.N.Y. 2008) *quoting* Fed. R. Evid. 403 advisory committee notes (holding that taped internal conversations between plaintiffs' employees were not prejudicial and were "relevant and useful to the jury in *understanding the circumstances of the transaction*, as well as plaintiffs' state of mind at the time of the transaction") (emphasis added). Further, a court should exclude evidence on a motion *in limine* "only when the evidence is clearly inadmissible *on all potential grounds*." *See Loussier v. Universal Music Group, Inc.*, 2005 U.S. Dist. LEXIS 37545, *4 (S.D.N.Y. July 14, 2005) (internal citation omitted) (emphasis added).

## ARGUMENT

Defendants attempt to generate the false impression that the City is attempting to turn this "complicated enough property damage case" involving MTBE contamination into a personal injury or fear-of-cancer case. (*See* Transcript of Court Conference of October 31, 2007 ("10/31/07 Transcript") (Exhibit A to Declaration of Inbal Paz in Support of Defendants' Motion) ("Paz Dec.") at 76, lines 4-5, quoted in Defendants' Motion at 3; *see also* Defendants' Motion at 1.)  Not so.  The potential human health effects of MTBE, including its potential carcinogenicity, *are* relevant to several issues in the case, particularly the reasonableness of the City's treatment of MTBE to levels below the MCL.  Defendants acknowledge as much, claiming the City "feels morally compelled to remove all traces of MTBE from the wells in Queens" and speculating about the City's possible motivations.  (Defendants' Motion at 2; *see also* Defendants' Motion at 10, speculating that the City will "claim that Dr. Burn's [sic] opinion gives them justification for going 'above and beyond' the MCL regulatory requirements.")  The jury will find it difficult to determine whether those actions are reasonable if it cannot hear evidence regarding MTBE's potential health effects in humans.

Such evidence does not turn this case into a "risk of cancer case."  The distinction between a "risk of cancer case," and a case in which human health effects of a substance are relevant, is plainer than Defendants admit.  Although this Court did not permit an expert to state "that MTBE can cause cancer in humans, based on her animal studies," the same expert would be allowed to "defend her study *without* that ultimate comment that MTBE causes cancer and can cause cancer in humans based on my animal studies."  10/31/07 Transcript at 75:5-6, 75:25-76:2, emphasis added.  This Court has never forbidden an expert from testifying as to the potential human health effects of MTBE, but only from drawing certain conclusions about cancer

based solely on animal studies. Moreover, the Court never "expressed its gut (judicial) instinct by saying that . . . the jury should not be asked to consider the possibility that MTBE is a human carcinogen." (Defendants' Motion at 11.) Instead, the Court simply said that the conclusory leap to human cancer "because of animal studies is problematic anyway, and that is subject to Daubert." (10/31/07 Transcript at 76:6-8.) Talking about health risks "in a generalized way," on the other hand, was not barred. (*Id.* at 76:17-18.)

In fact, as this Court expressly acknowledged to be true, "this issue of health risks is almost inevitable in the trial. The jury will hear about it." *See id.* at 77:21-24. The issue is inevitable in part because the City is entitled to explore evidence relevant to the issue of whether Defendants misled regulators and the public regarding the import of the studies that were performed by or sponsored by members of Defendants' industry. For instance, Dr. Burns must be permitted to testify as to the flaws and omissions apparent on the face of Defendants' toxicology-related documents, which will undoubtedly arise at trial if Defendants attempt to represent that MTBE has no adverse effects on human health. *See, e.g.,* Expert Report of Kathleen M. Burns, Ph.D., dated February 6, 2009 ("Burns Report") (Exhibit 4 to Riddle Dec.) at 17-20 (critiquing the poor quality of and frank misrepresentations contained in the industry-sponsored Biles study); 31 (critiquing defendants' argument regarding alpha-2-microglobulin). Given this inevitability, Defendants cannot possibly succeed on a motion to exclude all health effects evidence on relevancy grounds.

Because, as Defendants point out, this is not a case based on specific illnesses or injuries to private citizens (Defendants' Motion at 3-4), the Court need not determine whether any of the evidence cited by Dr. Burns or other experts in the case is probative of causation per se. Dr. Burns' reliance on animal studies, in the absence of a statement that those studies indicate

definite carcinogenicity in humans, does not render her opinions irrelevant or unfairly prejudicial. Animal studies have been deemed admissible and useful, even if not probative of causation, in many non-personal-injury contexts. For instance, in a products liability case, "a cause-effect relationship need not be clearly established by animal or epidemiological studies before a doctor can testify that, in his opinion, such a relationship exists." *Ferebee v. Chevron Chemical Co.*, 736 F.2d 1529, 1535 (D.C. Cir. 1984). *See also Villari v. Terminix Intern., Inc.*, 692 F.Supp. 568, 571 (E.D.Pa. 1988) ("the plaintiffs refer to numerous U.S. agencies and scientific organizations that routinely rely on animal studies in assessing risks to humans. I find, by the weight of the plaintiffs' submissions, that a substantial portion of the scientific community relies on animal studies of this type in assessing health risks to humans."); *In re Silicone Gel Breast Implants Products Liability Litigation*, 318 F.Supp.2d 879, 890-891 (C.D.Cal. 2004) (holding that animal studies may be admissible, *quoting* Cornell University, Program on Breast Cancer and Environmental Risk Factors in New York State, Fact Sheet No. 45 at p. 49, *Environmental Chemicals and Breast Cancer Risk* (2002) ("Animal studies...are important to help predict cancer risk when human studies are unavailable")).

In her report, Dr. Burns has described studies that address whether MTBE can cause cancer and other effects in animals. Contrary to Defendants' insinuations, Dr. Burns does *not* generalize from those studies to say that MTBE can therefore cause cancer in humans. Instead, she simply points out that "[s]tudy results showing statistically significant increases in cancer in two or more species meet important criteria established by USEPA for determining that a chemical is likely to pose carcinogenic risks to humans." Burns Report at p. 28. This testimony does not "subtly swap the burden of proof on the issue of health to the Defendants,"

(Defendants' Motion at 11) but simply renders an expert opinion based on the available facts, the appropriate weight of which will be determined by the jury.

## CONCLUSION

Defendants have not demonstrated that evidence dealing with potential human health effects of MTBE will confuse or unfairly prejudice the jury. Because Dr. Burns has not drawn the conclusion that animal studies prove that MTBE causes cancer in humans, but instead indicated only that health effects in humans are likely, her opinions are not more prejudicial than probative. Evidence of potential human health effects is highly relevant to whether or not the City acted reasonably in deciding to remove MTBE from drinking water to levels below the MCL. For all of these reasons, Defendants' Motion to exclude evidence relating to the potential human health effects of MTBE should be denied.

Dated: San Francisco, California
      May 26, 2009

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Attorney for Plaintiff City of New York
100 Church Street
New York, New York 10007
(212) 788-1568


 /s/ MARNIE E. RIDDLE
VICTOR M. SHER (*pro hac vice*)
TODD E. ROBINS (*pro hac vice*)
JOSHUA G. STEIN (*pro hac vice*)
LESLEY E. WILLIAMS (LW8392)
NICHOLAS G. CAMPINS (*pro hac vice*)
MARNIE E. RIDDLE (*pro hac vice*)

SHER LEFF LLP
450 Mission Street, Suite 400
San Francisco, CA 94105
(415) 348-8300

*Attorneys for Plaintiff City of New York*

**CERTIFICATE OF SERVICE**

I hereby certify that true and correct copies of the following documents were served on Liaison Counsel via Electronic Mail, and on all counsel of record by posting them directly to CM/ECF and LexisNexis File & Serve on the 26th day of May, 2009:

1. **PLAINTIFF CITY OF NEW YORK'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING ALLEGED POTENTIAL HUMAN HEALTH EFFECTS ASSOCIATED WITH MTBE**

2. **DECLARATION OF MARNIE E. RIDDLE IN SUPPORT OF PLAINTIFF CITY OF NEW YORK'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING ALLEGED POTENTIAL HUMAN HEALTH EFFECTS ASSOCIATED WITH MTBE**

KRISTIN MEYERS