UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

| | |
|---|---|
| In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation | Master File No. 1:00-1898<br>MDL 1358 (SAS)<br>M21-88 |
| ------------------------------------------------------------------- x | ECF Case |
| **This document relates to the following case:** | |
| *City of New York v. Amerada Hess Corp., et al.*<br>Case No. 04 Civ. 3417 | |

------------------------------------------------------------------- x

**PLAINTIFF CITY OF NEW YORK'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' JOINT MOTION *IN LIMINE* TO PRECLUDE
PLAINTIFF FROM OFFERING EVIDENCE OR ARGUMENT CONCERNING
ANY POLICY OR REQUIREMENT TO TREAT MTBE CONTAMINATION TO
ANY LEVEL OTHER THAN THE NEW YORK STATE MAXIMUM
CONTAMINANT LEVEL**

### I.  INTRODUCTION

Defendants' motion in limine unreasonably asks this Court to bar Plaintiff the City of New York ("the City") from presenting any evidence referring to the City's putative "internal policies," or any other requirement, to treat MTBE to anything other than exactly 10 ppb, the current maximum contaminant limit ("MCL"). (Defendants' Motion ("Defs' Mtn.") at 1.) Defendants attempt to justify this request by making the legal argument that the City's injury is defined solely by the MCL – an argument this Court has already rejected. *See In re MTBE,* 458 F.Supp.2d 149, 158 (S.D.N.Y. 2006) ("the MCL does not define *whether* an injury has occurred") (emphasis in original).

Evidence of the standards and policies guiding the City's water treatment practices is directly relevant to the determination of whether and how the City has been injured by the presence of MTBE in its groundwater. As a matter of law, once treatment has begun for any given

contaminated groundwater source, levels of contamination must be reduced, *not* merely to the MCL, but to the "lowest practical level." Evidence of this requirement, as well as the City's actions and expenditures in meeting it, is plainly relevant to the determination of the City's injury. Evidence of the City's policy to serve equally contaminant-free water to all of its customers is, likewise, useful to explain both the real-world ramifications of MTBE contamination and reasons why contamination even at levels below the MCL may constitute actual injury to the City. For these reasons, Defendants' motion to exclude any and all such evidence should be denied.

## II. ARGUMENT

### A. Legal Standard

The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain evidence. *See Luce v. United States,* 469 U.S. 38, 41 n. 4 (1984) (noting that, "[a]lthough the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials"); *Palmieri v. Defaria,* 88 F.3d 136, 141 (2d Cir.1996); *Nat'l. Union Fire Ins. Co. v. L.E. Myers Co. Group,* 937 F.Supp. 276, 283 (S.D.N.Y.1996). As a general matter, "all relevant evidence is admissible under the Federal Rules of Evidence unless specifically excluded." *United States v. Perez*, 387 F.3d 201, 209 (2d Cir. 2004) (citing Fed. R. Evid. 402). The "standard of relevance established by the Federal Rules of Evidence is not high[]." *See Ventura Assocs. v. Int'l Outsourcing Servs.*, 2009 U.S. Dist. LEXIS 21541, *4-5 (S.D.N.Y. 2009) (citations omitted). Evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" is relevant. *See* Fed. R. Evid. 401; *see also In re MTBE,* 2008 WL 1971538, *4 (S.D.N.Y. May 7, 2008) (same). A district court will "exclude evidence on

a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *United States v. Ozsusamlar,* 428 F.Supp.2d 161, 164 (S.D.N.Y.2006).

Rule 403 counter-balances Rules 401 and 402, and provides for the exclusion of relevant evidence if "its probative value is *substantially outweighed* by the danger of *unfair prejudice*, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *See* Fed. R. Evid. 403 (emphasis added). The rule envisions a "balancing test that affords the trial court broad discretion," and the balancing test is designed to favor admission of relevant evidence. *See PRL USA Holdings, Inc. v. United States Polo Ass'n*, 520 F.3d 109, 119 (2d Cir. 2008); *see, e.g., Leopold v. Baccarat, Inc.*, 174 F.3d 261, 270 (2d Cir. 1999) (holding that where both the danger of unfair prejudice and probative value were substantial the district court's determination to admit the evidence did not exceed its allowable discretion); *Highland Capital Mgmt., L.P. v. Schneider*, 2008 U.S. Dist. LEXIS 63874, *33 (S.D.N.Y. 2008) (holding that taped internal conversations between plaintiffs' employees were not prejudicial and were "relevant and useful to the jury in *understanding the circumstances of the transaction*, as well as plaintiffs' state of mind at the time of the transaction") (emphasis added). Further, a court should exclude evidence on a motion in limine "only when the evidence is clearly inadmissible *on all potential grounds*." *See Loussier v. Universal Music Group, Inc.*, 2005 U.S. Dist. LEXIS 37545, *4 (S.D.N.Y. July 14, 2005) (internal citation omitted) (emphasis added).

**B.     The MCL Does Not Define the City's Injury, and Evidence Supporting Treatment to Other Levels Is Relevant to a Determination of Injury**

In moving to exclude evidence of any City policies to treat MTBE in drinking water to levels below the MCL, Defendants are attempting to pre-argue the question of "[w]hether or not

the City has been damaged as a matter of law" by MTBE contamination at levels below the MCL by claiming that the MCL's 10 ppb standard, "and no other, . . . defines what level of MTBE may exist in the potable drinking water that Plaintiff provides to its customers and constituents." (Defs' Mtn. at 1.) But that argument depends on the Court first deciding that the City's injury is defined solely by the MCL, a ruling this Court has expressly declined to adopt before trial. *In re MTBE,* 458 F.Supp.2d 149, 158 (S.D.N.Y. 2006) ("the MCL does not define *whether* an injury has occurred") (emphasis in original), *citing, e.g., German v. Federal Home Loan Mortgage Corp.,* 885 F.Supp. 537, 558-59 (S.D.N.Y 1995 (denying summary judgment where contamination was below regulatory MCL); *Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 478 n. 11 (S.D. Ohio 2004) (despite contamination below MCL, "the [plaintiffs] still may have suffered diminution in their property values"); *City of Tulsa v. Tyson Foods, Inc.*, 258 F.Supp.2d 1263, 1297 n. 26 (N.D. Okla. 2003) (common law claims only required a showing that water quality was affected, "which required plaintiffs to incur costs in assessment and treatment of the Water Supply"). Moreover, the extent and nature of the City's injury is a fact-specific determination to be finally made at trial, not in passing in ruling on a motion *in limine. See In re MTBE,* 593 F.Supp.2d 549, 552 (S.D.N.Y. 2008) ("the issue of when the water suppliers are harmed by MTBE contamination is fact-specific in a variety of ways . . .").

In support of their argument, Defendants cite only to authority defining what the MCL is and what must be done when the MCL is exceeded for a given chemical. (*E.g.,* Defs' Mtn. at 1, 3, citing *In re MTBE*, 458 F.Supp.2d 149, 153 (S.D.N.Y. 2006) (mentioning the MCL for MTBE), 10 NYCRR § 5-1.52, tbl. 3 (setting MCL for MTBE), and *New York City 2007 Drinking Water Supply and Quality Report* at 14 n. 13 (stating that no MCL violation has occurred)). These authorities do not stand for the proposition that evidence relating to other

standards is irrelevant, but instead simply define the MCL for MTBE. Because the extent and nature of the City's injury has not been deemed to hinge on the MCL, relevant evidence cannot be restricted to only evidence relating to the MCL.

The presence of MTBE in groundwater, even at levels below the MCL, is an injury under several different theories. Not all of the City's causes of action depend on the existence of a statutory violation of the MCL. A trespass claim, for instance, may be maintained even in the absence of any physical damage at all. *Burger v. Singh*, 816 N.Y.S.2d 478, 480 (App. Div. 2006); 75 Am. Jur. 2d Trespass § 186; *see also State v. Fermenta ASC Corp*, 656 N.Y.S.2d 342, 346 (App. Div. 1997) (trespass claim supported by the fact that defendants' actions in directing consumers to apply a compound to the soil were substantially certain to result in the entry of a contaminant into plaintiff's wells); *New York Rubber Co. v. Rothery*, 132 N.Y. 293, 295-96 (1892) (error to refuse to instruct the jury that plaintiff's right to recover nominal damages does not depend on showing actual injury). The same is true of the City's public nuisance claim. In *State v. Fermenta ASC Corp.*, 630 N.Y.S.2d 884 (Sup. Ct. 1995), the court held that "there is no requirement that the State prove actual, as opposed to threatened, harm from the nuisance in order to obtain abatement." *Id.* at 890. Even "when a harm feared does not yet exist," a plaintiff may obtain equitable relief on a showing of "a menace of imminent and substantial import to the public welfare." *Id.* at 891. Furthermore, State regulations require the City to monitor and treat contamination where there is "any deleterious change in raw water quality," 10 N.Y. Comp. Codes R. & Regs. § 5-1.12, whether or not the MCL has been exceeded.

Evidence of non-MCL standards and requirements, not just the MCL itself, is thus relevant to demonstrate the existence of all of the City's claims – including the reasoning and facts that dictate the City's compliance with those standards. Given that the MCL does not define whether

the City has been harmed, evidence of other standards will help explain to the jury whether or not the City is injured, and in what way, by the presence of MTBE in groundwater at levels both above and below the MCL. In order for a jury to determine whether the City has been injured by the presence of MTBE at levels below the MCL, it must first determine whether or not the City is reasonable to treat MTBE contamination at levels below the MCL. Doing so will require an investigation and examination of the standards and policies discussed in the following section.

### C. As a Matter of Both Law and Equity, the MCL is Not the Only Applicable Standard With Which the City Must Comply

Under New York law, "adding new treatment systems to a public water supply requires the approval of the New York State Department of Health (NYSDOH)." Rebuttal Report of Marnie A. Bell, P.E. ("Bell Rebuttal"), dated April 7, 2009 (Exhibit 1 to the Declaration of Marnie Riddle ("Riddle Dec."), at 2-3. NYSDOH then "reviews all plans and specifications for compliance with the *Recommended Standards for Water Works*, *2003 Edition* . . . Additionally, the NYSDOH has the authority to impose additional requirements (not specifically listed in the *Recommended Standards for Water Works*) that it deems necessary to adequately protect public health and safety." *Id.* Where treatment has been placed on a well, NYSDOH issues permits that are consistent with the *Recommended Standards for Water Works*, *2003 Edition*. Those *Standards* specify that "[i]n *all* cases, public exposure to organic contamination must be minimized," and that "[w]here treatment is proposed, *best available technology* shall be provided to reduce organic contaminants to the *lowest practical levels*." Recommended Standards for Water Works, 2003 Edition (Ten States, 2003) (Exhibit 2 to Riddle Dec.), Policy Statement on Control of Organic Contamination for Public Water Supplies (emphasis added). In describing packed tower aeration design, the *Recommended Standards for Water Works* makes clear that

"lowest practical levels" are in fact *below* the MCL: "[t]he [aeration] tower shall be designed to reduce contaminants to *below* the maximum contaminant level (MCL) and to the lowest practical level." Exhibit 2 to Riddle Dec., section 4.5.5.1(b) (emphasis added). Thus, once the City has begun treating a water source for MTBE contamination, the MCL no longer applies; instead, the "lowest practical level" dictates the extent of treatment (and, by extension, the City's injury). For this reason alone, Defendants' argument that standards reducing MTBE to levels below the MCL are irrelevant must fail: not only are such standards highly relevant to determining the City's injury, but they are a legal *requirement*.

Furthermore, "[i]t is the policy of NYCDEP that, to the extent feasible, water provided in the future from any wells within the groundwater system for extended periods of time, be as pure and clean, in terms of toxic chemical contaminants, as the water from the surface supply system." Declaration of Steven C. Schindler ("Schindler Dec.") in Opposition to Defendants' Motion to Exclude the Testimony of Harry T. Lawless, May 13, 2009 (Exhibit 3 to Riddle Dec), at ¶12. The City maintains this policy in part because "the majority of the water users served by NYCDEP do not receive water with MTBE contamination." *Id.* at ¶9; *see also* Deposition of James Roberts, April 17, 2009 (Exhibit 4 to Riddle Dec.)at 16:3-8 ("utilization of the water from the groundwater system would be contingent upon the quality of that water being … equal to or as close to equal to the quality of the water from our surface water supplies."); Deposition of Stephen Schindler, April 23, 2009 (Exhibit 5 to Riddle Dec.) at 123:6-15 (goal for groundwater "is to achieve less than one part per billion of MTBE," as consumers in the Cat/Del system do consistently). Moreover, "NYCDEP must treat for MTBE to achieve concentrations below 1-2 ppb in order to ensure public acceptance of the long-term use of the groundwater supply." *Id.* at ¶19. Thus, to ensure that some customers are not forced to receive lower-quality water while

other customers receive higher-quality water, the City attempts to provide water with the lowest feasible levels of MTBE to all of its customers. The existence of such policies is directly relevant to the jury's determination of the City's injury.

Defendants claim, without providing supporting argument or authority, that the City's "internal policy to do other than what is required by law is not probative of whether it has suffered a legally cognizable injury, and, therefore, is irrelevant to the present case." Defs' Mtn. at 5. The cases Defendants cite in support of that statement offer only the definition of relevance, not the proposition that the City's internal policies are not relevant. *See* Defs' Mtn. at 5, citing *United States v. Torniero*, 735 F.2d 725, 730 (2d Cir. 1984) ("Relevance is a question of law to be decided by the trial judge, who ultimately will make the final determination if proffered evidence tends to prove or disprove a matter 'properly provable in the case.' . . . If the court concludes that evidence is relevant, it may then make an evaluation whether exclusion is nevertheless warranted because the evidence is unduly prejudicial."); *Bensen v. American Ultramar, Ltd.*, 1996 WL 422262, *5 (S.D.N.Y., July 29, 1996) ("relevancy is a relationship between a proffered item of evidence and a 'fact that is of consequence to the determination of the action.'").

Evidence of the City's water treatment practices is not "so prejudicial as to substantially outweigh any possible probative value." (Defs' Mtn. at 5.) "Because virtually all evidence is prejudicial to one party or another," to justify exclusion under Federal Rule of Evidence 403 "the prejudice must be unfair." *Costantino v. David M. Herzog, M.D., P.C.*, 203 F.3d 164, 174 (2d Cir. 2000). Defendants have made no showing that any such prejudice – if any exists at all – would be unfair, given that the foregoing legal and equitable considerations compel and inform the City's water treatment practices. Because, as Defendants point out, "[t]he City has never

alleged that the MCL has been improperly determined" (Defs' Mtn. at 5), and has no intention to do so in the course of trial, it is unlikely that the jury "will be misled" regarding the *State's* maximum level for MTBE in drinking water. (Defs' Mtn. at 5.) Finally, because – as discussed above – the MCL does not define the City's injury, other evidence pertaining to the type and extent of the City's injury due to the presence of MTBE in its groundwater is both relevant and probative, and should be admitted.

### III.  CONCLUSION

For the foregoing reasons, the City respectfully requests that Defendants' motion *in limine* to preclude evidence or argument concerning any policy or requirement to treat MTBE to a level other than the MCL be denied.

Dated: San Francisco, California
       May 26, 2009

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Attorney for Plaintiff City of New York
100 Church Street
New York, New York 10007
(212) 788-1568


*/s/ MARNIE E. RIDDLE*
VICTOR M. SHER *(pro hac vice)*
TODD E. ROBINS *(pro hac vice)*
JOSHUA STEIN *(pro hac vice)*
LESLEY E. WILLIAMS (LW8392)
NICHOLAS G. CAMPINS *(pro hac vice)*
MARNIE E. RIDDLE *(pro hac vice)*

SHER LEFF LLP
450 Mission Street, Suite 400
San Francisco, CA 94105
(415) 348-8300

*Attorneys for Plaintiff City of New York*

# CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the following documents were served on Liaison Counsel via Electronic Mail, and on all counsel of record by posting them directly to CM/ECF and LexisNexis File & Serve on the 26th day of May, 2009:

1. PLAINTIFF CITY OF NEW YORK'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' JOINT MOTION *IN LIMINE* TO PRECLUDE PLAINTIFF FROM OFFERING EVIDENCE OR ARGUMENT CONCERNING ANY POLICY OR REQUIREMENT TO TREAT MTBE CONTAMINATION TO ANY LEVEL OTHER THAN THE NEW YORK STATE MAXIMUM CONTAMINANT LEVEL

2. DECLARATION OF MARNIE E. RIDDLE IN SUPPORT OF PLAINTIFF CITY OF NEW YORK'S OPPOSITION TO DEFENDANTS' JOINT MOTION *IN LIMINE* TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING ANY POLICY OR REQUIREMENT TO TREAT MTBE CONTAMINATION TO ANY LEVEL OTHER THAN THE NEW YORK STATE MAXIMUM CONTAMINANT LEVEL

KRISTIN MEYERS