UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
IN RE: METHYL TERTIARY BUTYL ETHER
PRODUCTS LIABILITY LITIGATION
------------------------------------------------------------X
This document relates to the following cases:
*City of New York*
*v. Amerada Hess Corp., et al.*, 04 Civ. 3417

------------------------------------------------------------X

Master File C.A. No. 1:00-1898
MDL 1358 (SAS)
M21-88


# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JOINT MOTION IN LIMINE TO EXCLUDE THE OPINIONS OF HARRY LAWLESS

Defendant Exxon Mobil Corporation[1] hereby submit the following Reply Memorandum in support of Defendants' Joint Motion *In Limine* to Exclude the Opinion of Plaintiffs' Expert Harry T. Lawless.

## I. PLAINTIFF HAS FAILED TO MEET ITS BURDEN OF PROVING THAT DR. LAWLESS'S OPINIONS "FIT" THE QUESTION THE JURY MUST DECIDE IN THIS CASE

To avoid the exclusion of Harry Lawless's testimony at trial, Plaintiffs were required to come forward with evidence that his opinion (that 10% of the population might be able to *detect* MTBE in drinking water at concentrations as low as 1-2 ppb) sufficiently "fits" the elements of Plaintiff's claim as to avoid the risk of jury confusion and unfair prejudice. Specifically, they needed to prove how Dr. lawless' opinion is sufficiently relevant to a case where the issue before the jury will be whether consumers will *object to, reject or complain about* water containing low levels of MTBE and where the City has now expressly conceded that it "has no intention of pursuing any claims based on past customer complaints, as it 'cannot be determined' from the City's complaints data 'whether past taste and odor complaints are attributable to the presence of MTBE.'" Plaintiff's Response at p. 20 & ¶ 14. The City has not met and cannot meet its burden.

To distract the Court from this problem, Plaintiff's Response focuses almost exclusively on Defendants' secondary argument relating to the propriety of Dr. Lawless's logistic regression methodology. Indeed, the City devotes more than two-thirds of its 25-page Response to a challenge which took up only four pages of the Defendants' Motion to Exclude. The City, in fact, does not address Defendants' primary "fit" argument until page 18 of its Response. Even

---

[1] Defendants' Joint Motion to Exclude was filed on behalf multiple defendants, many of whom have reached settlement agreements with Plaintiff. This Reply is being submitted on behalf of ExxonMobil Corporation, ExxonMobil Oil Corporation and Mobil Corporation (collectively "ExxonMobil").

then, Plaintiff completely ignores the legal authority presented by the defense (i.e., *Bonton v. City of New York*, No. 03-2833, 2004 WL 2453603 (S.D.N.Y. Nov. 3, 2004)(Scheindlin, J.)) and offers no case law of its own to support its conclusory assertion that Dr. Lawless's opinion will assist the trier of fact.. Astoundingly, Plaintiff even devoted an entire page to presenting Dr. Lawless's credentials and qualifications -- something Defendants' never challenged. *See* Defs' Joint Motion to Exclude at 3.

The City attached to its Response three so-called "Declarations" in support of its response to the Defendants' secondary argument, including one from Harry Lawless himself and one from a never-before-identified EPA statistician. All three "Declarations" are nothing more than late, improper expert reports. *See, infra,* Section III. Because Defendants do not wish the Court to be distracted from the main issue by needlessly reviewing hundreds of pages of improper and irrelevant declarations and exhibits, they hereby withdraw their secondary argument (the challenge to the reliability of Lawless's logistic regression methodology).[2] Accordingly, the Court, need not consider pages 1 through 17 of Plaintiff's Response and may also disregard the inappropriate "Declarations" of Harry Lawless and Andrew Schulman in their entireties. In short, the Court may now limit its analysis to Defendants' primary argument, namely that Lawless's testimony on detection thresholds is irrelevant and will not assist the trier of fact because the only threshold relevant to water providers is the level at which customers will object to or reject water, a question upon which Lawless will admittedly offer no opinion.

---

[2] Defendants do not, however, concede the propriety of Dr. Lawless applying regression analysis to the Stocking Study data to obtain anything other than the group (50%) mean threshold. To the contrary, should Dr. Lawless be permitted to testify at trial over Defendants' objections, the Defendants reserve the right to and will, in fact, vigorously cross-examine Dr. Lawless on this issue.

## II. WITH NO EVIDENCE OF PAST TASTE AND ODOR DAMAGES, PLAINTIFF'S ONLY HOPE IS FOR THE JURY TO SPECULATE THAT TASTE AND ODOR DAMAGES MAY OCCUR SOME NEBULOUS POINT IN THE DISTANT FUTURE

Once the mud thrown at the wall is cleared, Plaintiff's motive is simple: although it concedes that it has no evidence of any actual customer taste and odor complaints tied to the presence of MTBE in its wells or distribution system, it nonetheless wants to ask the jury to award damages because some customer in the distant future may complain about the taste or odor of her water if and when the wells are ever turned on and actually serving customers and if those wells contain any MTBE. The City, therefore, presents Dr. Lawless as a last-ditch effort to swap the burden of proof and persuade the Court that such speculation is permissible. It is not.

### A. To Get to the Jury on Taste and Odor Issues, the Plaintiff Bears the Burden of Connecting the Presence of MTBE to Consumer Rejection

The City seems to forget that it bears the burden of proving, by competent, non-speculative evidence, the level at which its consumers will reject its water, because rejection is the only standard relevant to damages according to Plaintiff's own expert witness. Let the record be clear: Dr. Lawless himself specifically opines that there is a difference between detection thresholds and rejection thresholds and that the former (detection) is almost always lower than the latter (rejection). *See* Lawless Report (**Exhibit B** to Motion to Exclude) at ¶ 10; Lawless Dep. (**Exhibit A** to Motion to Exclude) at 50:16-51:20, 267:7-268:2, 316:19-317:12. He also admitted that he cannot and will not testify that any of Plaintiff's customers will ever object to the taste or odor of water containing as much as 15ppb of MTBE. See **Exhibit B** to Motion to Exclude at ¶¶ 13 & 15. Plaintiff's Response never once contests these two concessions. Instead, Plaintiff tries to mask the concessions by asserting that (1) no data are available concerning rejection or objection thresholds so detection is the next best thing; and (2) by submitting a self-

serving "supporting Declaration" of a City employee, who offers for the first time the lay opinion (in outright contradiction to the expert opinion of Dr. Lawless) that in the "real world" of water providers, there is "no validity to Defendants' attempt to distinguish between detection, and objection or rejection of drinking water with taste or odor attributable to MTBE." *See* Schindler Declaration at 16 & 20. The Court should disregard these contentions for several reasons.

*First*, Plaintiff's statement that no studies have been done to determine a rejection threshold range for MTBE is wrong. Indeed, the study published in 1997 by Melissa Dale for the American Water Works Association confirmed that low levels of MTBE were "not necessarily displeasing" and that "MTBE was perceived but was not considered 'objectionable.'" at levels as high as 15 ppb. *See* **Exhibit C** to Motion to Exclude at 5. According to the Dale study, consumer taste and odor rejection will not come into play until the concentration of MTBE is in the range of 50 ppb for taste and odor. *See id.* Moreover, even if no rejection threshold testing existed, "next best" does not suffice in the world of relevance. In other words, detection does not become the relevant standard just because the desired science might not be available.[3] *Second*, the self-serving opinions offered by Mr. Schindler, the City's own employee, regarding the "real world" application of detection versus rejection thresholds are speculation in the purest sense, masquerading as expert testimony. For the additional reasons set forth, *infra*, Section III, the Declaration is improper and should be disregarded in its entirety. *Third*, the Plaintiff wants the Court and jury to indulge a default presumption that recognition

---

[3] Let us not forget that Dr. Lawless suggested to the City that a "rejection threshold" study should be performed. The City chose not to accept his advice. *See* Lawless Dep. (**Exhibit A** to Motion to Exclude) at 38:10-39:22 & 40:9-16. His suggestion proves that Dr. Lawless himself recognized that the existing science as to "detection" thresholds did not answer the question of consumer acceptability.

equates to objectionability, and in the process to impose upon Defendants the burden of proving otherwise. In the face of Dr. Lawless' own distinction between the two concepts, no such presumption is appropriate, and Plaintiff can provide no reason in law why it should be relieved of the burden of proof as to a key element of its case.

Plaintiff's assertion that the Court's Cain Opinion states the standard for relevance as to taste and odor is misplaced and misguided for two reasons. *First*, unlike here, the Defendants when challenging Cain did not address the vital distinction between rejection and detection because Cain's methodology was so patently unreliable that the Defendants did not need to address the issue of ultimate relevance. The Defendants, and by extension the Court, were simply assuming arguendo that detection was relevant. *Second*, although the Court in the Cain Opinion used the word "detect", the first paragraph of the quotation cited by Plaintiff on page 19 of its Response shows that objection or "rejection" was at the heart of the Court's reasoning: "it is conceivable that a jury would conclude that a reasonable company would not take steps to remove MTBE from the water if only [a given percentage] of the population *found it unpleasant to drink*." "Unpleasant" is a descriptor for rejection or consumer acceptability, not just detection.

### B. Dr. Lawless's Opinions, Absent Proof of Actual Complaints, will Result in Impermissible Jury Speculation

Evidence should be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury. Fed. R. Evid. 403; *United States v. Malpeso*, 115 F.3d 155, 163 (2d Cir. 1997). In keeping with this mandate, a jury is not permitted to speculate when weighing evidence at trial. *Radiation Dynamics, Inc. v. Goldmuntz*, 464 F.2d 876, 886-87 (2d Cir. 1972) (affirming District Court's directed verdict because evidence was tenuous and conjectural and could only lead to jury speculation). Indeed, a jury's

role as the finder of fact does not entitle it to return a verdict based only on confusion, speculation or prejudice. *Newmont Mines Ltd. v. Hanover Ins. Co.*, 784 F.2d 127, 132 (2d Cir.1986) (quoting *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 688-89 (2d Cir.1983)).

Because Plaintiff has not and cannot offer any evidence connecting any existing customer complaints to MTBE, any assessment of future taste and odor damages based on Dr. Lawless's testimony alone would be purely speculative. Indeed, the risk of unfair prejudice to the defense related to speculative future damages is even more severe because Dr. Lawless is ostensibly well credentialed.

### III. ULTIMATELY, PLAINTIFF'S RESPONSE IS REALLY JUST A HIGHLY IMPROPER ATTEMPT TO SUBMIT THREE BRAND NEW, UNTIMELY EXPERT REPORTS DISGUISED AS SUPPORTING "DECLARATIONS"

The "Declarations" Plaintiff submits in support of its Response are Plaintiff's attempt to take a second bite at the proverbial apple: they are new or supplemental expert reports badly disguised as supporting Declarations. Failure to disclose or supplement expert submissions in a timely manner are subject to "near automatic exclusion" under Rule 37(c)(1), thereby precluding the submitting party from using the evidence "at trial, at a hearing, ***or on a motion***." See FED. R. CIV. P. 37(c)(1) (emphasis added); see also Lava Trading, Inc. v. Hartford Fire Insurance Co., No. 03-civ-7037, 2005 U.S. Dist. LEXIS 4566, at * 20 (S.D.N.Y. Feb. 14, 2005) (citing Wilson v. Bradlees of New Eng., Inc., 250 F.3d 10, 21 (1st Cir. 2001)). The Court should disregard each of these improper expert reports.

#### A. A New Report from Dr. Lawless

Plaintiff attached to its Response a 10-page, 29-paragraph "Declaration" from Harry Lawless himself, which includes almost 60 pages of exhibits. This "Declaration" attempts to bolster Dr. Lawless's previous submission with new authority and tries to respond to gaps and flaws from his original expert report as identified in the Defendants' Motion to Exclude. It also

offers opinions never before offered by Dr. Lawless which directly contradict the opinions in his expert report. *See* Lawless Declaration ¶ 4 & 14 ("In my opinion, the levels at which detection of MTBE occurs are, or should be, directly relevant to a drinking water supplier interested in maintaining the quality of the product it supplies" and "the assertion that the objection level is higher than the detection level is speculation; it is equally valid to presume that consumers will object to any foreign taste or odor in their water.").

The time for expert submissions has long since expired, and Plaintiff's expert had an affirmative obligation, at the risk of exclusion, to disclose all sources and assumptions on which his methods and conclusions were based in his expert report and during depositions. See Point Productions A.G. v. Sony Music Entertainment, Inc., No. 93-Civ-4001, 2004 U.S. Dist. LEXIS 2676 (S.D.N.Y. Feb. 23, 2004) (striking additional expert affidavits submitted in response to opposing party's motion in limine challenging the expert's anticipated testimony). The Court must not grant Dr. Lawless a second bite at the apple by considering this new report.

### B. A Report of a Never-Before-Identified EPA Statistician

Plaintiff also attached the "Declaration" of one Andrew Schulman, an EPA statistician who has never been identified by Plaintiff or any other party as an expert witness in this case. *See* Exhibit 2 to Plaintiff's Response. Mr. Schulman begins his so-called Declaration with a recitation of his credentials (much like an expert report). *See* Schulman Declaration at 1-3. Mr. Schulman then declares: "The Defendants' assertion in their Joint Motion that Dr. Lawless' analysis 'suffers fatally from a methodology problem' is, in my opinion, unjustified and incorrect." *See* Schulman Declaration at ¶ 7. After offering this nugget of legal advice, Mr. Schulman then goes on to offer three more pages of unabashed expert opinions on ASTM

methodology, linear regression analysis and interpretation of the Stocking Study.[4] *See* Schulman Declaration ¶¶ 8-12. Given that Mr. Schulman is neither a lawyer nor a judge, nor an expert witness in this case, his Declaration and the opinions it contains are grossly improper and should be excluded from consideration.

### C. A Report of a Lay Opinion Witness Which Offers Expert Opinions and Exceeds the Scope of The Opinions He Testified He Will Offer

In addition, Plaintiff attached the "Declaration" of the City's Director of Water Quality, Steven Schindler. Although Schindler was named by plaintiff as a City employee who may be called upon to give "<u>lay</u> opinion" testimony under Rule 701, his declaration is full of gratuitous commentary and brass speculation on topics that require <u>expert</u> opinion testimony (e.g., "it is more likely than not that the public will object to any taste or odor attributable to the presence of a toxic chemical constituent, and "NYCDEP must treat for MTBE to achieve concentrations below 1-2 ppb in order to ensure public acceptance of the long-term use of groundwater supply." *See* Schindler Declaration at 8 & 16.

Under Federal Rule of Evidence 701, lay opinion testimony is "limited to those opinions or inferences that are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of the fact in issue." United States v.

---

[4] Mr. Schulman's Declaration can be ignored because it is addressed entirely to the now-abandoned argument respecting the reliability of Dr. Lawless' methodology. Defendants note, however, that Schulman's prior work provides firm support for the proposition that detection and objection levels should not be equated. Mr. Schulman is the author an EPA paper entitled "Statistical Analysis of MTBE Odor Detection Thresholds in Drinking Water." *See* Exhibit 2 to Plaintiff's Response. In this paper, he confirms the importance of the distinction between rejection thresholds and detection thresholds in consumer testing. Specifically, Schulman states:
> Studies of taste or odor must distinguish between detection, recognition and rejection of a contaminate sample. A consumer may detect that one sample is different from another, but not recognize an odor or reject either samples as undrinkable.

*See* Exhibit 2 to Plaintiff's Response at 12.

Awadallah, 401 F. Supp. 2d 308, 314 (S.D.N.Y. 2005) (Scheindlin, J.), *aff'd*, 2006 U.S. App. LEXIS 1867 (2d Cir. N.Y., Jan. 26, 2006). A trial judge should exclude lay witness opinion testimony that is not based on the witness's actual perception or which would not be helpful or would confuse, mislead, or prejudice the jury, or would waste time. *See United States v. Garcia*, 291 F.3d 127, 140 (2d Cir. 2002); *see also United States v. Kaplan*, 490 F.3d 110, 18-19 (2d Cir. 2007) (excluding lay opinion testimony because the government's evidence failed to demonstrate that the lay opinion testimony was "rationally based on the perception of the witness."); *Bensen v. American Ultramar*, No. 92 Civ. 4420, 1996 U.S. Dist. LEXIS 10647, at *39-42 (S.D.N.Y. July 29, 1996) (excluding opinion testimony under Rule 701 on the basis that the proffered opinions "cannot be considered helpful to a jury in carrying out its legitimate functions, namely, the determination of a fact in issue.").

The opinions offered here by Mr. Schindler are based on his gross generalizations and speculations, rather than upon his actual knowledge and his perceptions, and will not assist the jury determine a fact in issue, as there is no proof in this case that residents of Queens have ever rejected water because of MTBE. Moreover, these opinions extend far beyond the scope of the three specific lay opinions for which the City offered Mr. Schindler and by which it is now bound. *See* Transcript of Steven Schindler Deposition ("Schindler Dep."), relevant portions of which are attached as Exhibit "A", at 75:22-77:2. Additionally, but not surprisingly, Mr. Schindler's admissions belie the contentions in his Declaration. Specifically, Mr. Schindler declares that, "in [his] experience, residents typically find any indication that a contaminant is present in their drinking water objectionable." Schindler Decl. at ¶ 17. He conceded at deposition, however, that it is not possible to deliver contaminant-free water and that customers

have received water with PCE. *See* Schindler Dep. at 77:3-78:24 & 106:14-107:3. Accordingly, the Court should refrain from considering Mr. Schindler's Declaration.

## IV. CONCLUSION

For the foregoing reasons, the Defendants respectfully request that the Court grant the Defendants' Joint Motion to Exclude the Opinions of Plaintiff's Expert Harry Lawless.

Dated: New York, New York
May 26, 2009

Respectfully submitted,

Peter J. Sacripanti (PS 8968)
James A. Pardo (JP 9018)
Stephen J. Riccardulli (SR 7784)
Lauren E. Handel (LH 0755)
McDermott Will & Emery LLP
340 Madison Avenue
New York, NY 10173-1922

Jennifer Kalnins Temple (JK 3274)
18191 Von Karman Avenue, Suite 500
Irvine, CA 92612-7108
Tel: (949) 757-7128
Fax: (949) 851-9348

Attorneys for the Exxon Mobil Corporation

**EXHIBIT A**

```
    IN THE UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF NEW JERSEY
                    - - -
IN RE:
Methyl Tertiary Butyl    : MDL NO. 1358 (SAS)
Ether ("MTBE")           :
Products Liability       :
Litigation               :
       In Re:

              City of New York
                  -----
   CONFIDENTIAL (Per 2004 MDL 1358 Order)
                  -----
              April 23, 2009
                  -----
```

         Videotaped Transcript of the
deposition of STEVEN SCHINDLER, called for
Oral Examination in the above-captioned
matter, said deposition taken pursuant to
Federal Court Rules, by and before DANA N.
SREBRENICK, a Federally-Approved Certified
Realtime and Certified Livenote Reporter, and
Notary Public for the State of New York, at
the offices of McDermott, Will & Emery, LLP,
340 Madison Avenue, New York, New York,
commencing at 10:00 a.m.

                    - - -


         GOLKOW TECHNOLOGIES, INC.
    877.370.3377 ph|917.591.5672 fax
           deps@golkow.com

JOB NO. 14751

1  that you're going to give expert opinion
2  testimony at trial?
3           MR. PLACHE: Objection.
4           You can answer.
5      A.   It's my understanding that I'm
6  going to be giving opinion testimony at
7  trial.
8      Q.   And with respect to the topic,
9  was it the City Law Department that
10 formulated this topic for you or did you
11 formulate this topic, the quality of water
12 supply to City consumers?
13          MR. PLACHE: Objection.
14          You can answer.
15     A.   The City Law Department
16 formulated the topic.
17     Q.   And did they come to you and
18 say, Mr. Schindler, we need you to provide a
19 specific opinion relative to this topic?
20          MR. PLACHE: Objection.
21     A.   No.
22     Q.   Do you have a specific opinion
23 that you intend to give at trial in this
24 matter?

Confidential - Per 2004 MDL 1358 Order

Page 76

1  A.  Yes.
2  Q.  And what is your opinion?
3  A.  That New York City has very
4  high quality water and that we do -- that we
5  operate the water supply with the goal of
6  delivering the highest quality water to the
7  consumer.
8  Q.  And are there any other
9  opinions that you intend to give at trial in
10 this matter?
11     MR. PLACHE:  Objection.
12     You can answer that.
13 Q.  For example, with respect to
14 MTBE, do you have a specific opinion as to
15 MTBE that you plan to give at trial in this
16 case?
17 A.  Yes.
18 Q.  And what is that?
19 A.  That it's my opinion that the
20 City should not be delivering water to the
21 consumer that has MTBE present as a
22 contaminant.
23 Q.  And are there any other
24 specific opinions that we haven't just listed

Golkow Technologies, Inc. - 1.877.370.3377

241643c7-508a-493b-a43b-ddf766640998

1   that you plan to give at trial in this case?
2       A.    No.
3       Q.    And with respect to your
4   opinion that the City should not be
5   delivering MTBE to customers, what do you
6   mean by that?
7       A.    I mean that it's in the City's
8   best interest to deliver water that's free of
9   contaminants.
10      Q.    And does the City currently
11  deliver water that is free of contaminants to
12  its consumers?
13      A.    There's contaminants in the
14  water. We make every effort to deliver the
15  highest quality water possible and minimize
16  the amount of contaminants that are in the
17  water.
18      Q.    And in your opinion, is it
19  possible to deliver water to consumers
20  without contaminants?
21      A.    Again, it depends on how you
22  define contaminants, but there's always going
23  to be contaminants present in water. So I --
24  I would say that the answer is no.

1  Q. And when you say it depends on
2  the definition of contaminants, what
3  different definitions would you use that
4  might impact the outcome of that statement?
5  A. Well, there are contaminants
6  that are related to public health. There's
7  contaminants that are related to aesthetic
8  quality of the water. There are contaminants
9  that are naturally found in water that may
10 not have any public health or aesthetic
11 significance.
12 Q. And so then with respect to
13 aesthetic contaminants, what's aesthetic --
14 an aesthetic contaminant in your mind?
15     MR. PLACHE: Objection.
16 A. Color --
17     MR. PLACHE: You can answer.
18 A. Color would be one.
19 Q. Iron?
20 A. Iron would be one.
21 Q. Manganese?
22 A. Yeah.
23 Q. Anything else?
24 A. Taste.

Confidential - Per 2004 MDL 1358 Order

1   A.   I don't believe it has been.

2   Q.   You don't believe MTBE has been
3   delivered to customers as served from the
4   upstate reservoirs?

5   A.   Correct.

6        MR. PLACHE:  Objection.

7        You can answer.

8   Q.   Do you know whether PCE has
9   been delivered to customers from the water
10  delivered through the groundwater system in
11  Queens?

12       MR. PLACHE:  Objection.

13  A.   I believe it has.

14  Q.   And do you know what levels --
15  do you know whether or not PCE has been
16  delivered to customers from the groundwater
17  system in Queens above the MCL?

18       MR. PLACHE:  Objection.

19       You can answer that.

20  A.   I don't know.

21  Q.   And do you know if PCE is a
22  human carcinogen?

23  A.   Yes.

24  Q.   And do you know when it was

```
 1   delivered to customers from the groundwater
 2   system in Queens whether the City of New York
 3   provided any warning to its consumers?
 4              MR. PLACHE:  Objection.
 5              You can answer.
 6        A.    I don't know.
 7        Q.    And do you know if MTBE is a
 8   carcinogen?
 9        A.    No.
10        Q.    And when MTBE was detected in
11   water, delivered to customers in Queens, do
12   you know whether or not the City of New York
13   provided a warning to any of its consumers?
14        A.    Could you repeat that a little
15   slower, please?
16              MS. KALNINS-TEMPLE:  Sure.
17              Actually, we'll have the court
18              reporter read it back.
19              (Whereupon, the question is
20              read back by the reporter.)
21        A.    I guess it's going to depend on
22   what you mean by -- by warning.
23        Q.    Did they provide any written
24   notice to the consumers?
```