UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation<br><br>This document pertains to:<br><br>*City of New York v. Amerada Hess Corp. et al.*, Case No. NY-04-CV-03417 | Master File No. 1:00-1898<br>MDL 1358 (SAS)<br>M21-88 |

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING PLAINTIFF'S PAST AND FUTURE INVESTIGATION AND TREATMENT COSTS UNTIL IT PROVES ACTUAL INJURY

## **INTRODUCTION**

Defendants' Motion is straightforward: Plaintiff cannot recover its claimed investigation and treatment costs unless it proves actual injury. In a groundwater contamination case, the plaintiff cannot prove actual injury unless it first establishes that it is *using* the groundwater. All groundwater in New York is held in trust by the State. Plaintiff's protected interest is not the groundwater itself, but rather a license to appropriate that water for reasonable use – *i.e.*, a usufructuary right. The word "usufructuary" is derived from the Latin *ususfructus*, meaning "use and enjoyment." *Merriam-Webster's Collegiate Dictionary* (10th ed. 1993). Because a usufructuary right is the right to *use* (in this case, to *use* groundwater), Plaintiff cannot prove the actual injury required by New York law unless it is *using* the groundwater and the presence of MTBE interferes with that *use*. Plaintiff concedes that it is not using the groundwater beneath Queens, but nevertheless proclaims that it "will have no difficulty establishing actual injury at trial" (Plaintiff's Opposition ("Pl. Opp.") at 4). Plaintiff's position is that it can prevail on its claims for past (and future) investigation and treatment costs without proving that MTBE has actually interfered with (or likely will interfere with) its use of the wells. New York law says otherwise. Without proof of actual injury, evidence about Plaintiff's alleged past and future costs for investigation and remediation simply is irrelevant.

Moreover, until Plaintiff proves actual injury, any possible probative value that evidence of Plaintiff's alleged costs may have is substantially outweighed by the danger of confusing and misleading the jury and causing unfair prejudice to Defendants. A jury hearing that Plaintiff has (or allegedly will) spend millions of dollars on investigation and treatment costs may be inclined

to find injury where none, in fact, exists.[1] The unfair prejudice to Defendants is, we submit, obvious and substantially outweighs the potential inefficiency of having a few witnesses return to testify about damage amounts in the event that Plaintiff successfully meets it burden to prove actual injury in the first instance.

## ARGUMENT

### I. PLAINTIFF HAS NO RIGHT TO RECOVER INVESTIGATION AND TREATMENT COSTS UNLESS IT FIRST PROVES THAT MTBE HAS INTERFERED WITH ITS RIGHT TO REASONABLY USE GROUNDWATER.

Plaintiff acknowledges that the mere presence of MTBE in its wells does not constitute injury; rather, interference with Plaintiff's use of its wells is essential. (Pl. Opp. at 10 ("to prove actual injury as a matter of New York property law, the City must show that its Wells are being impacted by the continuing migration of MTBE in groundwater and that such contamination is impacting its planned use of the water.").) Despite this admission, Plaintiff argues that it need not prove interference with the use of its wells because (1) it is entitled to recover economic costs incurred in the exercise of statutory duties; (2) actual injury is not required for its nuisance and trespass claims; and (3) it is injured as a matter of law because Well 6D had MTBE detections exceeding the State's maximum contaminant level ("MCL"). All of Plaintiff's arguments fail under New York law.[2]

---

[1] At the May 28, 2009, conference, the Court considered the effect that evidence of $1 million in past damages, as opposed to hundreds of millions of dollars in future damages, may have on jurors' minds. (May 28, 2009, Tr. at 48:17 – 50:2.) Implicit in the Court's discussion was a recognition that jurors may be more or less likely to find Plaintiff to be harmed depending on the amount of damages Plaintiff claims.

[2] Plaintiff also inexplicably states that *Olin Corp. v. Certain Underwriters at Lloyd's of London*, 468 F.3d 120 (2d Cir. 2006), is illustrative of New York's law regarding actual injury. (Pl. Opp. at 9.) *Olin* did not address the types of harm that constitute actual injury as an element of tort claims, but rather interpreted the meaning of "property damage" in an insurance contract. 468 F.3d at 127-32.

### A. Contamination at Levels Above the MCL Does Not, by Itself, Constitute "Injury" Unless It Interferes With Use of the Groundwater.

Plaintiff wrongly contends that Well 6D is injured as a matter of law because it had MTBE detections above the applicable MCL (*i.e.*, 10 ppb). While this Court has held that a detection above the MCL triggers the statute of limitations, it has not held that, as a matter of law, such an exceedance proves injury *in a well that a plaintiff has never used*. *In re MTBE Prods. Liab. Litig.*, 593 F. Supp. 2d 540, 544-45 (S.D.N.Y. 2008). New York law is clear that a well owner's protected interest in groundwater is only to its *use* of the groundwater. *E.g.*, *Friedland v. State*, 314 N.Y.S.2d 935, 937 (N.Y. App. Div. 1970); *Westphal v. New York*, 78 N.Y.S. 56, 75 A.D. 252, 256 (N.Y. App. Div. 1902). Indeed, groundwater contamination at levels above the applicable MCL does not necessarily constitute "injury" under New York law. *Hellert v. Town of Hamburg*, 857 N.Y.S.2d 825, 828 (N.Y. App. Div. 2008) (granting summary judgment to defendant on trespass, nuisance and negligence claims where contamination "detected in the groundwater samples taken from plaintiffs' properties exceeded drinking water standards[,] because it was undisputed that *none of the plaintiffs used groundwater or well water for drinking purposes or, indeed, for any other purpose*." (emphasis added)); *State v. Fermenta ASC Corporation*, 630 N.Y.S.2d 884, 891 (N.Y. Sup. Ct. 1995) (plaintiff failed to prove public nuisance claim because evidence did not establish that contamination at levels above the MCL would harm the public). The MCL provides no bright-line rule defining whether MTBE in Plaintiff's wells – at levels above, or below, the MCL – interferes with its legally protected interest in the water. *In re MTBE Prods. Liab. Litig.*, 458 F. Supp. 2d 149, 158 (S.D.N.Y. 2006).

### B. Actual Injury Is an Essential Element of Trespass and Nuisance.

Plaintiff also incorrectly argues that it need not prove actual injury to prevail on its trespass and nuisance claims. A property owner may recover nominal damages for a physical

invasion of property that has caused no harm. *Burger v. Singh*, 816 N.Y.S.2d 478, 480 (N.Y. App. Div. 2006). But even if Plaintiff is entitled to recover nominal damages on its trespass claim, evidence about costs incurred for investigation and treatment would be irrelevant. Furthermore, as the common law has developed to permit a cause of action for trespass based the migration of "invisible particles" onto or under land, proof of actual harm has been required. *In re MTBE Prods. Liab. Litig.*, 457 F. Supp. 2d 298, 314 (S.D.N.Y. 2006) (citing The Law of Torts P1.23 (3d ed. 1996), and collecting cases). Consistent with these developments in the common law, New York courts recognize a cause of action for trespass based on groundwater contamination, but only where the presence of a contaminant interferes with a property owner's *use* of the groundwater. *See State v. Fermenta ASC Corporation*, 630 N.Y.S.2d 884, 894-95 (N.Y. Sup. Ct. 1995) (plaintiff established trespass where presence of a contaminant in its operating wells at levels exceeding the State's MCL – which required it to take the wells out of service and install filtration systems – constituted "tangible and appreciable injury."); *cf. Hellert v. Town of Hamburg*, 857 N.Y.S.2d 825, 828 (N.Y. App. Div. 2008) (holding plaintiffs could not prove claims for trespass, private nuisance, and negligence where contamination exceeded the MCL because "it was undisputed that none of the plaintiffs used groundwater or well water for drinking purposes or, indeed, for any other purpose.") The bottom line is that, under New York law, Plaintiff here cannot prove "trespass" unless it first establishes that the presence of MTBE in its wells (at any level) actually has interfered with its *use* of the wells.

Plaintiff also must first prove actual interference with its usufructuary right – and not the mere presence of MTBE in groundwater – to make out its private nuisance claim. *Hellert*, 857 N.Y.S.2d at 827; *see also Fermenta ASC Corp.*, 630 N.Y.S.2d at 892 ("private nuisance embraces not a mere physical injury to the realty, but any injury to the rights of the owner or

possessor as to his dealing with, possessing, or enjoying such realty"). As explained in Defendants' Motion (at 5-6), the requisite injury for Plaintiff's public nuisance claim is substantial interference with a public right, whether that injury already exists or "may with reasonable probability be expected to flow from the past harm." *Fermenta ASC Corp.*, 630 N.Y.S.2d at 890-91; *see also Copart Indus. v. Consol. Edison Co.*, 41 N.Y.2d 564, 568 (N.Y. 1977). For example, in *Fermenta ASC Corporation*, the court held that groundwater contamination above the MCL did not constitute a public nuisance because the plaintiffs failed to prove "actual harm to humans" or "to establish the requisite probability of apprehended harm to humans." *Id.* at 891.

### C. No Statute or Regulation Gives Plaintiff a Right to Recover Investigation and Treatment Costs Absent Actual Injury.

Plaintiff also contends that its past investigation and treatment costs are relevant evidence of actual injury because it has incurred (or may incur) such costs in the exercise of its obligations under State statutes and regulations. (*See* Pl. Opp. at 7-8, 10-11, 14.) Specifically, Plaintiff argues that investigation and treatment costs constitute injury because it has incurred (or may incur) such costs in the exercise of its obligations under Section 24-302 of the New York City Administrative Code, and under the New York State Department of Health's Sanitary Code regulations (N.Y. Comp. Codes R. & Regs. Titl 10, § 5-1.12). (*Id.* at 10-11.)

#### 1. New York law does not permit public entities to recover costs of carrying out governmental functions unless expressly authorized by statute.

Plaintiff ignores longstanding New York law that a public entity may not recover for expenditures made in furtherance of its governmental functions; it may recover only for actual physical injury to its property interests. *See Koch v. Consol. Edison Co.*, 62 N.Y.2d 548, 560-61 (N.Y. 1984) (holding that City of New York and 14 public benefit corporations could recover for physical harm to their property that had been damaged during blackout, but could *not* recover for

salaries, wages, and benefits of police, fire and other personnel who provided services during the blackout); *In re James "AA"*, 594 N.Y.S.2d 430, 432 (N.Y. App. Div. 1993) ("In the absence of express statutory language or legislative history indicating a contrary legislative intent, the Attorney-General's request for counsel fees … is barred by the general rule, longstanding and still applicable, that public expenditures made in the performance of a governmental function, …, are not recoverable."); *Austin v. Buffalo*, 586 N.Y.S.2d 841, 842 (N.Y. App. Div. 992) (dismissing city's cause of action related to expense incurred in boarding up or demolishing property and removing debris from property); *State v. Long Island Lighting Co.*, 493 N.Y.S.2d 255, 257-59 (N.Y. Sup. Ct. 1985) (dismissing claims for expenses incurred by the State in connection with a road closing). As recognized by the New York Court of Appeals, "certain exceptions to the general rule have been created by statutory enactment" to allow governmental entities to recover costs incurred in carrying out public functions. *Koch*, 62 N.Y.2d at 561.

### 2. Plaintiff has identified no New York statute (or regulation) authorizing it to recover costs associated with protecting water supplies or complying with State Department of Health regulations governing water providers.

Here, there is no statute or regulation authorizing Plaintiff to recover past or future costs incurred in furtherance of its obligations under New York City Administrative Code § 24-302 or Sanitary Code § 5-1.12. New York City Administrative Code § 24-302 charges the Commissioner of the New York Department of Environmental Protection ("DEP") with the obligation and authority to protect the City's water supplies as an exercise of the City's police powers. *People v. Van Buren*, 4 N.Y.3d 640, 644-45 (N.Y. 2005) (discussing history of NYC Admin. Code § 24-302); *see also* N.Y.C. Admin. Code § 24-346 (providing for DEP's enforcement powers and civil penalties). Nothing in this provision or the related sections of the Code (N.Y.C. Admin. Code tit. 24, chapter 3) provides for the DEP to recover its costs in carrying out its statutory obligations. In contrast, Chapter 6 of the same title expressly authorizes

the DEP to recover its costs in responding to hazardous substances emergencies. N.Y.C. Admin. Code § 24-604. The absence of such a cost recovery provision Chapter 3 implies that the DEP has no right to recover its costs incurred in the exercise of its duties to protect the City's water supply. Similarly, nothing in the Sanitary Code creates a cause of action or right for water providers to recover costs incurred in meeting its requirements. *See generally* 10 NYCRR §§ 5-1.1 — 5-6.18. Because Plaintiff has no statutory right to recover any costs it incurs pursuant to the Sanitary Code or its obligation to protect the City's water supplies, proof of such costs would not relieve Plaintiff of its burden to prove an actual injury to its usufructuary interests or to a public right.

### 3. Plaintiff brought this case in its capacity as a property owner, not to recover for interference with its statutory or regulatory obligations.

Even if New York law permitted Plaintiff to recover for costs incurred in the exercise of its obligation to protect the groundwater and comply with the Sanitary Code – and it does not – Plaintiff has never before alleged such interests as a basis for its claims. Nowhere in Plaintiff's Complaint has it taken the position now stated in opposition to Defendants' Motion that it has "special statutory rights to the subterranean waters that supply its wells" (Pl. Opp. at 7). Indeed, it is clear from Plaintiff's Complaint and the positions it has taken consistently throughout this litigation that its claims are premised on alleged interference with its rights as the owner of the former Jamaica Water System wells. For example, in opposition to Defendants' motion to dismiss based on primary jurisdiction, the City of New York stated, "Plaintiffs seek remediation of their wells – the construction of monitoring and wellhead treatment facilities, among other things – in which they have usufructuary rights. They do *not* seek remediation of releases that affect generally the natural resources properly confided to the stewardship of the State." (Pls.

Opp., at 8 (Feb. 24, 2005).) The Court should not allow Plaintiff to change its claims on the eve of trial after more than five years of litigation.

Moreover, Plaintiff should not be permitted to manufacture, for purposes of trial, a *post hoc* "Sanitary Code" theory of damages that has no basis in fact. Plaintiff asserts that it is injured because Section 5-1.12 requires it to take actions in response to "deleterious changes in raw water quality." (Pl. Opp. at 11.) However, apart from now taking this position for purposes of litigation, there is no evidence that Plaintiff has taken or planned to take any action in connection with its supposed obligations under Sanitary Code Section 5-1.12. For example, there is no evidence that Plaintiff formally notified the State Department of Health when it discovered MTBE in any of the focus wells. Yet, under Sanitary Code Section 5-1.12, when a water provider determines "that any deleterious changes in raw water quality have occurred" it "shall notify the State," which is defined to mean the Department of Health. N.Y. Comp. Codes R. & Regs., tit. 10, §§ 5-1.12(a); 5-1.1(bk). Nor is there any evidence that Plaintiff has complied with Section 5-1.12(a)(5) which requires water providers "submit a written report to the State within 30 days of the onset of the foregoing conditions summarizing the findings outlined in paragraphs (1) through (4) of this subdivision."[3] Even if, as a matter of law, Plaintiff's costs to comply with regulations constituted actual injury – and they would not – Plaintiff cannot prove that it did, in fact, take any action for purposes of complying with Sanitary Code Section 5-1.12.

## II. EXCLUDING EVIDENCE OF PLAINTIFF'S INVESTIGATION AND TREATMENT COSTS UNTIL PROOF OF ACTUAL INJURY WILL PREVENT UNFAIR PREJUDICE TO DEFENDANTS AND PROMOTE EFFICIENCY.

The court has discretion under Federal Rule of Civil Procedure 42(b) to bifurcate the trial when doing so would be "in furtherance of convenience or to avoid prejudice, or when separate

---

[3] In quoting N.Y. Comp. Codes R. & Regs., tit. 10, § 5-1.12, Plaintiff tellingly failed to include this subparagraph (a)(5). (*See* Pl. Opp. at 8.)

trials will be conducive to expedition and economy ...." *See In re Simon II Litig.*, 2002 U.S. Dist. LEXIS 25632, *311 (E.D.N.Y. Oct. 22, 2002) (bifurcation orders "will only be reversed for a clear abuse of discretion or a strong showing of prejudice." (citing *United States v. Garber*, 413 F.2d 284, 285 (2d Cir. 1969); *Garber v. Randell*, 477 F.2d 711, 714 (2d Cir. 1973).)) In this case, phasing the trial to resolve the issue of actual injury before evidence about the amount of damages (*i.e.*, Plaintiff's investigation and treatment costs) is appropriate because: (1) the issues are significantly different; (2) there is minimal overlap in the witnesses and documentary evidence relevant to each issue; (3) bifurcation will prevent unfair prejudice to Defendants; (4) Plaintiff will not be prejudiced by bifurcation; and (5) bifurcation will promote efficiency. *See Guidi v. Inter-Continental Hotels Corp.*, 2003 U.S. Dist. LEXIS 5739, *2-*3 (S.D.N.Y. Apr. 8, 2003) (listing factors considered in Rule 42(b) analysis); *In re Simon II Litig.*, 2002 U.S. Dist. LEXIS 25632, *311 (E.D.N.Y. Oct. 22, 2002) ("The presence of any one of the factors conducive to severance mentioned in Rule 42(b) – avoidance of prejudice, convenience, and conduciveness to expedition and economy – suffices to sustain a staging order.")

In this case, the issue of whether Plaintiff has suffered actual injury – *i.e.*, whether MTBE has or imminently will interfere with its use of groundwater or caused substantial harm to the public – is entirely separate from the issue of the amount of compensatory damages it may recover – *i.e.*, what costs it has incurred or will incur to investigate MTBE contamination and treat its well water. Plaintiff's assertion that essentially all witnesses will have to be called back to the stand to testify about the amount of damages is a gross exaggeration. (Pl. Opp. at 13-14.) To the contrary, at most two of Plaintiff's witnesses may offer testimony relevant to both injury and costs – Plaintiff's expert witness on treatment costs, Marnie Bell, and perhaps one other witness who can testify about past costs spent in connection with the Station 6 wells. Only two

defense witnesses may provide testimony on both injury and costs – Defendants' experts David Hand and Susan Tierney.

Whatever small inconvenience may result from having to call witnesses back to testify a second time is substantially outweighed by the benefit of avoiding jury confusion and resulting prejudice to Defendants. Here, argument and evidence that the City of New York has spent or will spend millions of dollars to investigate and treat MTBE in its wells will unfairly prejudice Defendants because such evidence may cause jurors to decide the issue of whether Plaintiff has suffered actual injury on an improper basis – namely, that Plaintiff has been injured simply because it has or will incur costs. *See United States v. Bermudez*, 529 F.3d 158, 170 (2d Cir. 2008) ("Unfair prejudice" in F.R.E. 403, "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.") In contrast, Plaintiff will not be prejudiced by bifurcation because Plaintiff does not need to put on evidence about the costs of investigation and treatment to prove any part of its case other than the amount of damages, and it will be able will be able to present its costs evidence after it establishes actual injury. Furthermore, because injury is an essential element of each of Plaintiff's claims, an early jury verdict on this dispositive issue will promote efficiency. *See* 32-11P Manual for Complex Litigation (Fourth) 11.6 ("severance of certain issues for separate trial under Federal Rule of Civil Procedure 42(b) can reduce the length of trial, particularly if the severed issue is dispositive of the case, and can also improve comprehension of the issues and evidence.").

## CONCLUSION

For the foregoing reasons, Defendants' Motion should be granted and the Court should order a phased trial in which the issue of Plaintiff's injury is tried before any evidence or argument regarding its costs to investigate and treat MTBE contamination is allowed.

Dated: New York, New York
       June 2, 2009

Respectfully submitted,

*/s/ Lauren Handel*

McDERMOTT WILL & EMERY LLP
Peter J. Sacripanti (PS 8968)
James A. Pardo (JP 9018)
Stephen J. Riccardulli (SR 7784)
Lauren E. Handel (LH 0755)
340 Madison Avenue
New York, NY 10173-1922

Jennifer Kalnins Temple (JK 3274)
18191 Von Karman Avenue, Suite 500
Irvine, CA 92612-7108
Tel: (949) 757-7128
Fax: (949) 851-9348
*Attorneys for the Exxon Mobil Corporation Defendants*

## CERTIFICATE OF SERVICE

Lauren Handel, pursuant to 28 U.S.C. 1746, hereby declares under penalty of perjury, that on the 2nd day of June, 2009, I caused to be served by electronic means upon counsel for plaintiff, a true and correct copy of the following:

REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING PLAINTIFF'S PAST AND FUTURE INVESTIGATION AND TREATMENT COSTS UNTIL IT PROVES ACTUAL INJURY

Lauren Handel