UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation<br><br>This document pertains to:<br><br>*City of New York v. Amerada Hess Corp. et al.*,<br>Case No. NY-04-CV-03417 | Master File No. 1:00-1898<br>MDL 1358 (SAS)<br>M21-88 |

REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION *IN LIMINE* TO EXCLUDE NON-EXPERT TESTIMONY OF
KATHLEEN BURNS AND MARCEL MOREAU

# INTRODUCTION

Defendants have moved to prevent Plaintiff's experts Kathleen Burns and Marcel Moreau from providing inappropriate, non-expert testimony about certain factual issues of which they have no specialized or personal knowledge. Plaintiff's Opposition does not establish that Burns's and Moreau's testimony about what Defendants and other petroleum companies knew, intended and did with regard to MTBE are appropriate topics of expert testimony. Instead, Plaintiff's Opposition mostly discusses aspects of Burns's and Moreau's testimony that Defendants are not seeking to exclude, while ignoring the many opinions each of these witnesses have stated regarding the state of mind and conduct of Defendants and other members of the petroleum industry.

Plaintiff now asserts that "[n]either expert will testify regarding any party's intent or regarding any ultimate legal conclusion in the case." (Plaintiff's Opposition ("Pl. Opp.") at 1.) If Plaintiff no longer intends to elicit such testimony from these witnesses – and if Plaintiff will so stipulate – Defendants can withdraw their Motion. However, to the extent that Plaintiff still intends to use Burns and Moreau to inappropriately testify about non-expert facts of which they have no personal knowledge, the Court should prevent it from doing so.

# ARGUMENT

I.  **The Testimony Defendants Are Moving to Exclude Is Not Based On Burns's and Moreau's Expertise.**

Defendants' Motion is aimed at precluding Burns and Moreau from testifying about specific issues – namely petroleum industry members' state of mind and conduct of which they have no specialized or personal knowledge – and does not seek to exclude all of their anticipated testimony. Plaintiff asserts that both experts "offer opinions grounded in their professional

expertise and knowledge of highly technical fields of inquiry." (Pl. Opp. at 9.) That may be a true statement about Burns's testimony about the health effects of MTBE and Moreau's testimony about the potential for underground storage tanks to leak – but Defendants are not seeking to preclude their testimony about those admittedly technical issues. Rather, Defendants' Motion seeks to prevent Burns and Moreau from testifying about matters for which they are incompetent to testify.

A review of the opinions of Mr. Moreau illustrates the point. Moreau's December 19, 2008, report contains four sections. (Declaration of Amanda Goad ("Goad Decl."), Ex. C (Moreau Report) at 3.) The first two address (1) the components of USTs and leakage and (2) efficacy of leak detection methods. Defendants do not dispute that these are likely appropriate areas of testimony. However, the next two topics are inappropriate: (3) the petroleum marketing industry's knowledge concerning USTs and (4) petroleum industry knowledge about MTBE, actions taken, and warnings provided. Similarly, Defendants do not challenge the bulk of Dr. Burns's technical testimony regarding toxicological studies of MTBE. However, Defendants are moving to preclude the portions of her testimony that address industry knowledge and intentions, as well as the sections in her original report dealing with product stewardship and the actions of water providers. (Goad Decl., Ex. A (Burns Report) at 46-57 and 69-71.)

Plaintiff has not explained how these witnesses' expertise in toxicology and underground storage tanks qualifies them to testify about Defendants' or other industry members' use of MTBE, internal communications, participation in industry trade groups, or communications with government agencies. Indeed, Burns and Moreau are not qualified by either specialized or personal knowledge to testify about such historical facts. They are not experts on the petroleum industry or the history of MTBE and, with the exception of Moreau's testimony about his 1986

paper on MTBE,[1] they have no firsthand knowledge of the facts about which they will testify. Like the "Rezulin historian" whose testimony was found inadmissible in *In re Rezulin Products Liability Litigation*, these experts will do "no more than counsel for plaintiff will do in argument, i.e., propound a particular interpretation of [Defendants'] conduct." 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004); *see also In re Prempro Prods Liab. Litig.*, 554 F. Supp. 2d at 880 (excluding expert testimony that "was simply a regurgitation of an exhibit" and was something "any layperson could have done.").

Nor has Plaintiff explained how Burns and Moreau are qualified to testify about Defendants' or other companies' knowledge, beliefs or intentions, or to opine about whether such companies behaved in a responsible manner. As a matter of law, no expert can be qualified to testify about a party's state of mind or to opine about whether they behaved in a responsible or ethical manner because such issues are not appropriate subjects of expert testimony. *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, No. 03-6025, 2009 U.S. Dist. LEXIS 23560, at *124 (D.N.J. Mar. 25, 2009); *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 182-83 (S.D.N.Y. 2008); *In re Baycol Prods. Litig.*, 532 F. Supp. 2d 1029, 1069 (D. Minn. 2007); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 547.

## II. The Testimony Defendants Are Moving to Exclude Is Not Beyond the Understanding of an Average Juror.

Furthermore, Plaintiff has provided no explanation for why the testimony that Defendants' Motion actually seeks to exclude – as opposed to the other, technical aspects of their testimony – will be helpful to the jury. For example, Plaintiff defends Dr. Burns's testimony about toxicological studies as helpful to the jury in understanding scientific evidence beyond the

---

[1] Defendants are not asking to Court to preclude Mr. Moreau's testimony regarding his co-authoring of the paper, "MtBE as a Ground Water Contaminant," which was presented at and published in the proceedings of a 1986 API and National Water Well Association conference.

average person's normal understanding. (Pl. Opp. at 6.) Defendants do not dispute that, to the extent MTBE's health effects are relevant to the case,[2] expert testimony about toxicological studies is appropriate, and Dr. Burns is qualified to provide such testimony. This Motion does not seek to preclude Dr. Burns from testifying about the design and findings of toxicological studies on MTBE or to prevent her from offering expert opinions about the health risks of MTBE. However, Dr. Burns's testimony will go beyond these technical issues and her areas of expertise to include testimony about the knowledge and intentions of the petroleum industry members who have conducted health effects studies. To use an example cited in Plaintiff's Opposition (at page 6), Dr. Burns does not merely interpret and critique the conclusions industry members have drawn from toxicological studies. Rather, she crosses the line into inappropriate non-expert testimony when she opines that:

> The arguments industry has made with regard to testicular cancer, kidney cancer, and other evidence regarding cancer is typical of their actions to dismiss evidence of the harmful MTBE effects that were observed in their own studies and other studies. The common practice across many industries of creating scientific uncertainty to avoid regulation or responsibility, when in fact there is little uncertainty, has been well documented ....

(Goad Decl., Ex. A at 32.) Burns also inappropriately opines:

> In light of the cancer evidence, it was irresponsible for industry to market and distribute MTBE, given their knowledge that the public would be exposed to it via drinking water.

(Goad Decl., Ex. A. at 37.) Although it may be appropriate for Dr. Burns to explain the technical facts and conclusions of the relevant toxicological studies, the jury is fully capable of interpreting the evidence and deciding whether Defendants tried "to avoid regulation or responsibility" and whether they behaved irresponsibly.

---

[2] Defendants have separately moved to exclude evidence of MTBE's purported health risks as irrelevant in this case. *See* Defendants' Motion in Limine to Exclude Evidence and Argument Regarding Alleged Potential Human Health Effects Associated with MTBE.

Plaintiff similarly argues that Mr. Moreau's testimony about technical issues – which Defendants do not seek to preclude – will be helpful to the jury. (*See* Pl. Opp. at 7-8.) However, Defendants' Motion does not ask the Court to preclude Mr. Moreau's testimony regarding the design of underground storage tank systems at retail service stations, the effectiveness of tank upgrades and leak detection methods, or any of the subjects in his site-specific report. (*See generally* Goad Decl., Ex. C at 4-26; Goad Decl., Ex. D (Excerpt from Moreau's Site-Specific Report).) Rather, Defendants' Motion is aimed at preventing Moreau from reciting a biased and largely irrelevant history of the communications, knowledge, intentions, and actions of petroleum industry companies, most of which are not standing trial as defendants in this action. (*See generally* Goad Decl., Ex. C, at 26-74.) As just one of many examples of Moreau's inadmissible testimony, at pages 46 and 47 of his expert report, Moreau describes an internal Shell memorandum authored by Shell employee Curt Stanley. According to Moreau, Mr. Stanley's "goal in writing the paper was to describe strategies that could reduce costs associated with MtBE contamination in California." (Goad Decl., Ex. C. at 46.) Moreau goes on to opine about Mr. Stanley's suggestions:

> Although these solutions would involve some careful planning and execution, they are not technically sophisticated. If the petroleum marketing industry had been willing to acknowledge that MtBE posed a serious threat to groundwater quality rather than whitewashing the issue . . . , these measures could have been implemented many years before.

(Goad Decl., Ex. C at 47.) Even assuming for the sake of argument that such evidence were relevant – and is not, given that Shell is no longer a defendant in this case – jurors are perfectly capable of deciding for themselves what Mr. Stanley's "goal" was and whether the petroleum industry acknowledged that MTBE posed a threat to groundwater. Moreau's "expert" testimony

on such issues is not helpful to the trier of fact, but rather impermissibly tells jurors what conclusions to reach.

While it may be appropriate for Plaintiff's counsel, in summation, to argue to jurors that they should draw conclusions from the evidence like those stated by Burns and Moreau, it is neither appropriate nor permissible for Plaintiff's expert witnesses to interpret the facts in this manner. *See, e.g., Nimely v. City of New York*, 414 F.3d 381, 397-98 (2d Cir. 2005) (expert testimony that "essentially instructed the jury as to an ultimate determination" did not assist the trier of fact).

## III. The Hearsay Evidence on Which Burns and Moreau Rely Is Not of the Type Normally Relied on By Experts in Their Fields.

Plaintiff argues that Burns and Moreau are entitled to rely on hearsay evidence because experts are permitted to base their opinions on hearsay, as long as the materials are of a type reasonably relied on by experts in their respective fields. (Pl. Opp. at 11 (citing *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1223, 1245 (E.D.N.Y. 1985).) This argument fails because, as explained above and in Defendants' opening memorandum of law, Burns and Moreau are not experts in the petroleum industry's practices, knowledge or intentions with regard to MTBE. Furthermore, experts in Burns's and Moreau's respective fields of expertise do not reasonably rely on the type of hearsay materials on which they base their inadmissible testimony here. Experts on human health, like Dr. Burns, do not generally or reasonably base their expert opinions on unpublished petroleum industry documents produced by parties in litigation. (*See* Goad Decl., Ex. A at 73-78 (listing materials relied on by Burns, including 1979 Memo from Conaway at Texaco to an MTBE committee, 1980 and 1981 memos by S. Ridlon and R. Roth (both of ARCO), and internal Sun Oil memos).) Nor do experts on the design and function of underground storage tank systems, like Mr. Moreau, reasonably rely on unpublished

petroleum industry documents and deposition testimony given by parties to MTBE litigation. (*See, e.g.,* Goad Decl., Ex. C. at 35 (citing exhibit to deposition of ARCO witness and Texaco document), 36 (quoting Shell Oil document), 55 (quoting internal ARCO Chemical Company memorandum).) Moreover, despite Plaintiff's assertions to the contrary, Burns and Moreau rely on hearsay evidence for hearsay purposes – *i.e.*, the truth of the matter asserted. Indeed, because they have no personal knowledge on these issues, Burns and Moreau must rely entirely on industry documents as the basis for their accounts of what petroleum companies did, knew and intended. The Court should not permit Plaintiff to present such inadmissible evidence.

## CONCLUSION

For the foregoing reasons, Defendants' Motion should be granted and the Court should preclude Plaintiff's experts Kathleen Burns and Marcel Moreau from testifying about non-expert facts about the actions, statements, and state of mind of members of the petroleum industry, or from offering opinions about the responsibility of any party, including Plaintiff.

Dated: New York, New York
       June 2, 2009

Respectfully submitted,

*/s/ Lauren Handel*

McDERMOTT WILL & EMERY LLP
Peter J. Sacripanti (PS 8968)
James A. Pardo (JP 9018)
Stephen J. Riccardulli (SR 7784)
Lauren E. Handel (LH 0755)
340 Madison Avenue
New York, NY 10173-1922

Jennifer Kalnins Temple (JK 3274)
18191 Von Karman Avenue, Suite 500
Irvine, CA 92612-7108
Tel: (949) 757-7128
Fax: (949) 851-9348
*Attorneys for the Exxon Mobil Corporation Defendants*

## CERTIFICATE OF SERVICE

Lauren Handel, pursuant to 28 U.S.C. 1746, hereby declares under penalty of perjury, that on the 2nd day of June, 2009, I caused to be served by electronic means upon counsel for plaintiff, a true and correct copy of the following:

REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE TO EXCLUDE NON-EXPERT TESTIMONY OF KATHLEEN BURNS AND MARCEL MOREAU

*/s/ Lauren Handel*

Lauren Handel