UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

Master File No. 1:00-1898
MDL 1358 (SAS)
M21-88

This document pertains to:

*City of New York v. Amerada Hess Corp. et al.*,
Case No. NY-04-CV-03417

REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING ALLEGED POTENTIAL HUMAN HEALTH EFFECTS ASSOCIATED WITH MTBE

# ARGUMENT

Plaintiff City of New York ("City") asserts that the testimony of expert Kathleen Burns and other evidence pertaining to the toxicology of MTBE is relevant to their case because the City has the "right to deliver clean drinking water to its residents and a substantial property interest in delivering water free of Defendants' pollution." *Plaintiff City of New York's Memorandum of Law in Opposition to Defendants' Joint Motion in Limine to Exclude Evidence and Argument Regarding Alleged Potential Human Health Effects Associated with MTBE* ("*Pl.'s Mem.*") at 1.[1] But we must question whether health effects evidence is truly relevant here.

There are *no* personal injury claims asserted in this case. Why then did the City feel compelled to hire its own independent expert for purposes of this litigation to examine the toxicological science with respect to MTBE? Why is it now bringing in a witness to present evidence contrary to its own employee's testimony that the City relies on the health regulations set by the State of New York? *See Defendants' Memorandum of Law in Support of their Motion for Summary Judgment On All Claims for Lack of Justiciability* (Jan. 23, 2006), at 5 ("regulations are proposed and analyzed...[and] our job is to make sure that the drinking water meets that standard" (quoting Arthur Ashendorff)). Why is the City of New York so anxious to impose upon itself an obligation to treat its water to a level well beyond the New York State mandates? Can the City name a single other contaminant in its water supply as to which it has imposed upon itself such a burden or hired an independent expert? Has it been intentionally

---

[1] It is curious that the Plaintiffs repeatedly rely upon an Advance Notice of Proposed Rule Making issued by EPA more than nine years ago, which has never resulted in any actual regulations. *See Pl.'s Mem.* at 1. EPA's ANPRM has never resulted in any testing requirements, regulation of use or sale of MTBE, or the issuance of any federal Maximum Contaminant Limit. One has to wonder at the evidentiary value of statements and questions made by EPA in the preliminary announcement of a long-abandoned regulatory effort.

lying to its customers when it has said in its annual Water Quality reports that its water is perfectly safe even though it contains detectable amounts of chlorinated solvents and volatile organic compounds, including MTBE? Can the City name a single customer who has expressed concern for his/her health as a result of trace amounts of MTBE below the state MCL?

Plaintiffs file lawsuits to obtain money. Plaintiff's counsel could write a much higher number on the chalkboard in front of a jury if it can somehow justify or rationalize a supposed intention to go well above and beyond the Federal and State requirements for clean water. It is time to strip away the pretense underlying the Plaintiff's damages model. Plaintiff may be entitled to argue to the Court that in order to be returned to the condition they would have been in but for the spillage of MTBE-gasoline its water ought to be cleansed of all traces of MTBE. That argument may or may not be acceptable under the law. But they should not be permitted to present alarming and emotionally charged evidence of dubious reliability, using words such as "*cancer*" or "*birth defects*" to provide some manufactured justification for their alleged damages. Those words, particularly when uttered by a purported expert, will have far too great an emotional impact. The limited probative value of evidence as to MTBE's health effects will be substantially outweighed by the risk of both jury confusion and unfair prejudice to the Defendants in this case.

The Plaintiff has failed to cite a single case in which evidence as to a product's potential health risks was admitted despite the lack of any pending claims of personal injury, emotional distress, or fear of personal injury. The attempt to submit such evidence in this case would seem to be unprecedented.

It should be noted that the Plaintiff has not challenged any of the following important statements made by the Defendants in their opening moving papers:

- The New York State MCL (10 ppb) is a health-based standard.[2]

- The difference between the projected treatment costs for compliance with the MCL and removing all detectable traces of MTBE is as much as $300 million.

- The City has never undertaken an independent examination of the medical science with respect to any other contaminants in its water.

- The City has repeatedly told its customers that compliance with State and Federal MCLs is assurance of safe and clean water.

- The City has never undertaken to treat its water to eliminate any other contaminant beyond the requirements of MCLs.

- Neither the National Toxicology Program, the International Agency for Research on Cancer, the European Union nor California's Proposition 65 Commission, after thorough examination of the science, has ever said either that the existing science is inadequate or that MTBE poses a risk of cancer or other chronic health effects for humans.

- Each of those agencies has expressed serious concerns with respect to the reliability of the Ramazzini Foundation experiment upon which Plaintiff's expert intends to rely.

- There have been no consumer complaints with respect to health fears attributable to sub-MCL levels of MTBE.

- The Plaintiff never considered consulting Dr. Burns until it hired a lawyer to pursue this litigation.

- The results of the battery of health effects tests conducted by industry pursuant to a Consent Agreement reached with U.S. EPA has not led to the issuance by EPA of any federal MCL or restrictions on MTBE's use.

---

[2] In fact, in its *Opposition to Defendants' Joint Motion in Limine to Preclude Plaintiff from Offering Evidence or Argument Concerning Any Policy or Requirement to Treat MTBE Contamination to Any Level Other Than the New York State Maximum Contamination Level* ("Pl.'s Opp."), the City admits that it "has never alleged that the MCL has been improperly determined, and has no intention to do so in the course of trial...." Pl.'s Opp. at 8-9 (internal citations and quotations omitted). This admission and Plaintiff's failure to address the issue in the present motion warrants, at the least, an order from this Court that Plaintiff may not offer evidence or argument at trial that the New York State MCL for MTBE is not protective of human health.

- EPA fully appreciated and accounted for the potential that people might be exposed to MTBE via drinking water ingestion when negotiating the testing protocols in the Consent Agreement.

Reference to this Court's 2006 decision on *Defendants' Motion for Summary Judgment for Lack of Standing* can also be instructive. That decision was entered with respect to all of the so-called focus cases, including the City of New York. This Court concluded that although the Maximum Contaminant Limit did not necessarily define "injury" or the Plaintiffs' common law duty with respect to the delivery of clean water, the Plaintiffs would not escape summary judgment unless they produced evidence that customer complaints they received could be proven to have arisen from tastes and odors imparted by MTBE contamination. The important point is that Plaintiffs did not argue in opposition to that particular motion that some health effects risks other than or beyond those recognized by regulatory authorities attributable to levels of MTBE below the MCL could constitute an injury to their property rights. Nor did they argue at that time that the common law would require them to indulge a presumption that there is no safe level of any contaminant in the face of contrary regulatory determinations.[3]

The outcome of the Court's Rule 403 calculus should not be influenced by the arguments in Plaintiff's Opposition, all of which had been anticipated by the Defendants in their opening papers. The simple facts are that if MTBE's potential human health effects are relevant at all, they are barely so. Such relevance, if any, depends upon the City's suspicious and incongruous intention to treat MTBE down to "non-detect" levels. Even if relevant, the evidence which Plaintiffs intend to present as to health effects is incredibly weak, given the contradictory pronouncements by every major health organization in the world. The words "cancer" and "birth

---

[3] The City of New York now, of course, finds itself in the position of having to make such an argument because it has no proof of any customer complaints with respect to taste and odor, and its taste and odor expert has been subjected to *Daubert* attack.

- 4 -

defects" will have an undeniable emotional impact upon jurors listening to a case pertaining to the chemical contamination of water supplies, particularly when uttered by a purported expert, and particularly if those jurors are themselves consumers of City water. There can be but one conclusion: the probative value of the evidence intended to be presented by the Plaintiff as to MTBE's alleged human health effects, even if relevant, is substantially outweighed by the risk of jury confusion and unfair prejudice to the Defendants.

## CONCLUSION

For the foregoing reasons, Defendants' motion to exclude evidence or argument regarding alleged potential human health effects associated with MTBE should be granted.

Dated: New York, New York
June 2, 2009

Respectfully submitted,

Jennifer Kalnins Temple (JK 3274)
McDermott Will & Emery LLP
18191 Von Karman Avenue, Suite 500
Irvine, CA 92612-7108
Tel: (949) 757-7128
Fax: (949) 851-9348

McDermott Will & Emery LLP
Peter J. Sacripanti (PS 8968)
James A. Pardo (JP 9018)
Stephen J. Riccardulli (SR 7784)
340 Madison Avenue
New York, NY 10173-1922

*Attorneys for the Exxon Mobil Corporation Defendants*

## CERTIFICATE OF SERVICE

Lisa A. Gerson, pursuant to 28 U.S.C. 1746, hereby declares under penalty of perjury, that on the 2nd day of June, 2009, I caused to be served by electronic means upon counsel for plaintiff, a true and correct copy of REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING ALLEGED POTENTIAL HUMAN HEALTH EFFECTS ASSOCIATED WITH MTBE.

Lisa A. Gerson