UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
IN RE: METHYL TERTIARY BUTYL ETHER
PRODUCTS LIABILITY LITIGATION
-----------------------------------------------------------X
This document relates to the following cases:

*City of New York v. Amerada Hess Corp., et al.,*
No. 04 Civ. 3417

-----------------------------------------------------------X

Master File C.A. No. 1:00-1898
MDL 1358 (SAS)
M21-88

# DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF PROTECTED LOBBYING CONDUCT

## INTRODUCTION

Defendant ExxonMobil[1] has moved pursuant to the *Noerr-Pennington* doctrine to preclude Plaintiff City of New York from presenting at trial any evidence, testimony, or argument regarding alleged efforts by ExxonMobil and others to influence government action regarding MTBE. In arguing that evidence of ExxonMobil's protected lobbying activities should be introduced at trial, Plaintiff: (1) misconstrues the *Noerr-Pennington* doctrine; (2) ignores the allegations it makes in its Complaint, as well as in its Opposition; and (3) fails to articulate an appropriate basis upon which this Court should grant an exception to well-established precedent. Indeed, the fallacy of Plaintiff's contentions is highlighted by Plaintiff's failure to directly counter any of the controlling arguments made in ExxonMobil's Motion. For these reasons, ExxonMobil's Motion should be granted.

## ARGUMENT

I. **The *Noerr-Pennington* Doctrine Precludes The Admission Of Lobbying Evidence In Precisely This Type Of Case**

Plaintiff contends that the *Noerr-Pennington* doctrine is inapplicable to this case because Plaintiff's claims (e.g., negligence, trespass, conspiracy) are not premised upon ExxonMobil's lobbying conduct, per se. Pl. Opp. at 5. This contention ignores both Plaintiff's own allegations, as well as the relevant legal authority regarding application of the *Noerr-Pennington* doctrine and the rationale underlying the protection itself.

---

[1] Defendant's Joint Motion to Exclude was filed on behalf of multiple defendants, many of whom have reached settlement agreements with Plaintiff. This reply is being submitted on behalf of ExxonMobil Corporation, ExxonMobil Oil Corporation and Mobil Corporation (collectively, "ExxonMobil").

1

First, Plaintiff's Complaint puts ExxonMobil's lobbying activity relating to MTBE squarely at issue, by alleging the impropriety of such efforts by ExxonMobil and others. *See* Motion at 2; Fourth Amend. Compl. at ¶¶ 102, 103, 108. Indeed, Plaintiff's own Opposition reinforces that such evidence is central to its various legal theories. Plaintiff spells out that it aims to establish ExxonMobil's liability in this case by proving, through evidence of Defendants' protected petitioning activities, that ExxonMobil did not disclose "the danger and risk that MTBE posed to groundwater;" and that ExxonMobil "lobbied EPA that MTBE and gasoline containing MTBE were safe substances." *See* Opp. at 1-2. Moreover, these allegations are incorporated into and integral to each of Plaintiff's causes of action, from conspiracy through failure to warn. Simply put, the very allegations Plaintiff will seek to prove at trial are, by Plaintiff's own admission, inextricably intertwined with evidence of ExxonMobil's protected lobbying activity.

Second, as discussed at length in ExxonMobil's Motion, courts in multiple jurisdictions, including the Southern District of New York, have utilized the doctrine in a variety of cases, including those involving the same type of state law tort claims made by Plaintiff here. *See Tuosto v. Philip Morris USA Inc.*, No. 5 Civ. 9384 (PKL), 2007 U.S. Dist. LEXIS 61669, at *14 (S.D.N.Y. Aug. 21, 2007) ("*Noerr-Pennington* has also been applied to bar liability in state common law tort claims, including negligence and products liability claims, for statements made in the course of petitioning the government"); *Dr. Reddy's Labs, Ltd. v. Aaipharma, Inc.*, No. 01 Civ. 10102 (LAP), 2002 U.S. Dist. LEXIS 17287, at *39-40 (S.D.N.Y. Sept. 19, 2002) ("While *Noerr-Pennington* has traditionally applied to antitrust claims, courts have expanded use of the

doctrine to encompass state law tort claims that arise from government action."). Plaintiff has not bothered to respond to these arguments or present any contrary authority.[2]

## II.   Plaintiff Misconstrues and Misapplies "Footnote 3" Regarding "Purpose and Character" Evidence

Plaintiff's argument is premised largely on footnote three of the *Pennington* decision, which suggests an evidentiary caveat to the doctrine's provision of immunity from liability for lobbying conduct. Although this footnote discusses, in theory, the notion that lobbying activity may "be introduced if it tends reasonably to show the purpose and character of the particular transactions under scrutiny," there is widespread agreement that this caveat is and must be limited. *See e.g.,* Robert P. Faulkner, *Evidence of First Amendment Activity at Trial: The Articulation of a Higher Evidentiary Standard*, 42 UCLA L. Rev. 1, 30 (1994) (citing *U.S. v. Johns Manville Corp.*, 259 F. Supp. 440, 443 (E.D. Pa. 1966) (arguing for a heightened evidentiary standard to protect First Amendment rights, notwithstanding the 'rather infamous Footnote 3'").[3] Ignoring this, Plaintiff's mechanical and misguided interpretation of this footnote seeks to eviscerate the rule and erode important constitutional protections that the rule was explicitly crafted to safeguard.

---

[2] Plaintiff's discourse on Fed. R. Evid. 402 and 403 does nothing to rebut ExxonMobil's argument for the instant order *in limine*, nor does it somehow establish the admissibility of the subject evidence here. The Federal Rules of Evidence are not in conflict with the *Noerr-Pennington* doctrine. *Noerr's* protection is rooted in the First Amendment, and establishes that protected lobbying activity cannot serve as the basis for tort liability. There is nothing in Rules 402 and 403 that overrides this protection.

[3] Other scholars and courts have echoed this same concern. *See e.g.* Daniel R. Fischel, *Antitrust Liability for Attempts to Influence Government Action: The Basis and Limits of the Noerr-Pennington Doctrine*, 45 U. Chi. L. Rev. 80, 121 (1977-78) ("For courts to exercise this right and admit evidence of conduct not in itself unlawful to show the anticompetitive purposes of other acts would seriously undermine the protection afforded by *Noerr*."); *Lamb Enters. v. Toledo Blade Co.*, 461 F.2d 506 (6th Cir. 1972).

In particular, Plaintiff ignores authority that establishes the need for such a limitation in light of the chilling effect the introduction of evidence concerning lobbying activity may have on First Amendment rights. Because the admission of *Noerr*-protected evidence – even for a limited purpose – can undermine a party's constitutional rights, it has been held that "the exclusion of 'purpose and character' evidence consisting of conduct clearly embraced should be the rule rather than the exception…" *U. S. Football League v. Nat. Football League*, 634 F. Supp. 1155, 1180-81 (S.D.N.Y. 1986). Such evidence "by its very nature chills the exercise of First Amendment rights, [and] is properly viewed as presumptively prejudicial." *Id.*, citing *Feminist Women's Health Ctr. v. Mohammed*, 586 F.2d 530, 543 n.7 (5th Cir. 1978) (holding evidence inadmissible where evidentiary value was "far outweighed" by defendants' First Amendment interests); *see also Schwab v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 992 1084 (E.D.N.Y. 2006) (motions *in limine* appropriate with respect to evidence that may qualify for protection under *Noerr-Pennington*); *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, MDL 99, 1995 WL 509666 at *2 (N.D. Ill. Aug. 18, 1995) (noting that plaintiffs must "address significant evidentiary concerns," including risk of undue prejudice, if they intend to introduce evidence of lobbying activities).

But Plaintiff's argument that evidence of ExxonMobil's lobbying activity is relevant to demonstrate the "purpose and character" of Defendant's conduct does more than just ignore the presumptively prejudicial nature of the evidence it seeks to introduce. Plaintiff's allegations and argument betray its statement that it hopes to introduce this evidence to support a "fraud-on-the-EPA" theory in support of its TSCA, product liability, failure to warn and conspiracy claims. *See, e.g.* Opp. at 3, 7. Of course, this gambit is also forbidden under the law.

4

In *Buckman Co. v. Plaintiff's Legal Committee*, 531 U.S. 341 (2001), the United States Supreme Court held that a party in a tort action cannot prove fraud on an agency in a way that might invalidate agency action because such assertions are preempted. In other words, the Environmental Protection Agency ("EPA") is the proper entity to determine whether it was defrauded, and as a consequence that its regulations were invalid, in light of the power vested in the EPA to police frauds allegedly committed against it.[4] Accordingly, here, only the EPA is vested with the power to judge whether ExxonMobil's alleged conduct was fraudulent. *See e.g., Silver v. Nat'l Presto Indus. Inc.*, 884 F.2d 1393 (6th Cir. 1989). Of course, the EPA has never made such a determination. Therefore, a proffer of evidence that ExxonMobil somehow defrauded the EPA by misrepresenting MTBE's characteristics is improper because it commits to the jury the responsibility to decide whether the EPA would have taken remedial measures that would have prevented the alleged injury. Indeed, federal law expressly precludes a private individual from seeking to police fraud allegedly perpetrated against a government agency under state law. *See Buckman*, 531 U.S. at 347-52.[5]

---

[4] *See* National Environmental Policy Act of 1969, 42 U.S.C. §4321 *et seq.*; Reorganization Plan No. 3 of 1970, U.S.C.C.A.N., 91st Congress (2d session, Vol. 3, 1970); 40 C.F.R. §§ 22.1 *et seq.*; 40 C.F.R. §§ 179.3 *et seq.*; *Dow Chem. Co. v. U.S.*, 476 U.S. 227, 233, 106 S. Ct. 1819, 1824 (1986) ("Regulatory or enforcement authority generally carries with it all the modes of inquiry and investigation traditionally employed or useful to execute the authority granted."); *Nathan Kimmel Inc. v. DowElanco*, 275 F.3d 1199, 1205 (9th Cir. 2002) (holding that Congress has afforded the EPA "substantial enforcement powers" enabling it to make "a measured response to suspected fraud against it.").

[5] While the Second Circuit's decision in *Desiano v. Warner-Lambert & Co.*, 467 F.3d 85 (2d Cir. 2006), *aff'd by equally divided Court sub nom. Warner-Lambert Co. v. Kent*, --- U.S. ---, 128 S. Ct. 1168 (2008), might be read as limiting the *Buckman* doctrine to cases where the alleged fraud on the agency (as opposed to some other tort) was the actual claim, Plaintiffs here have raised conspiracy allegations that are no different in kind from the sort of fraud-on-an-agency allegations that *Buckman* clarifies are expressly preempted. *See* Sixth Am. Compl. ¶197-200. And even if *Desiano* supported an argument that Plaintiffs' allegations are not preempted, the longevity of that decision is questionable: the Supreme Court affirmed *Desiano* without opinion

5

Thus, Plaintiff should not be permitted to thwart the protections of the *Noerr-Pennington* doctrine under the auspices of the overly expansive and suspect footnote three to the *Pennington* decision. Nor should the Court allow a jury to decide whether the EPA was defrauded in violation of the Supreme Court's holding in *Buckman*.

### III.  No Exception To The *Noerr-Pennington* Doctrine Applies To This Case

Plaintiff asserts that ExxonMobil's alleged misrepresentations and omissions to federal and state governments, as well as the EPA, serve to create an exception to the *Noerr-Pennington* protection. Plaintiff ignores both the authority presented in ExxonMobil's Motion which address this issue (Motion at 5-6), **as well as the holdings of the very cases it cites in support of its position**. Opp. at 7. Plaintiff's "spin" with respect to these arguments underscores the weakness of its position.

Specifically, Plaintiff contends that ExxonMobil's "misrepresentations and omissions" during its petitioning of the government presents an exception to the doctrine because it was allegedly "illegal, corrupt, or unethical." Opp. at 7. This argument ignores black letter law – including that upon which Plaintiff relies for this argument. Plaintiff cites *Tuosto* for the proposition that allegedly false statements to the government satisfy the "unethical exception" to the doctrine. Opp. at 7. However, the court in *Tuosto* held that allegedly false and fraudulent statements made in the course of petitioning the government are protected by *Noerr-Pennington*. Indeed, the court expressly held that "*Noerr-Pennington* protection has been extended to all advocacy intended to influence government action, *including to allegedly false statements*. Even statements that may 'fall far of the ethical standards generally approved in this country' are

---

by an equally divided Court, with Chief Justice Roberts not participating. *See Kent*, 128 S. Ct. 1168.

protected by the *Noerr-Pennington* doctrine if they are made in the course of petitioning the government." *Tuosto*, 2007 U.S. Dist. LEXIS at ** 15-16 (citations omitted) (emphasis added). The remaining authority cited by Plaintiff holds the same. See *Cipollone v. Liggett Group, Inc.*, 668 F. Supp. 408, 410-11 (D.N.J. 1987) (holding that bribery not protected by *Noerr-Pennington*, but furnishing false and misleading information to Congress *is* protected politival speech); *Friends of Rockland Shelter Animals, Inc. v. Mullen*, 313 F.Supp.2d 339, 343-44 S.D.N.Y. 2004) (holding that "[e]ven lobbying activities that are unethical or result in deception are not actionable under the *Noerr-Pennington* doctrine" in dismissing plaintiff's claim).

Nor can Plaintiff establish that ExxonMobil engaged in "sham" petitions to the government, *i.e.* those that take advantage of the lobbying process itself, as opposed to the outcome of the process, to cause direct harm to Plaintiff. *See Real Estate Investors v. Columbia Pictures*, 508 U.S. 49, 56-59 (1993). Plaintiff has not, and certainly cannot, claim ExxonMobil engaged in a "sham" lobbying effort. In fact, Plaintiff's alleges the opposite – that the lobbying activity that ExxonMobil allegedly undertook was specifically designed to influence the outcome of government action – namely to promote the sale and use of MTBE to the government – not abuse the lobbying process itself or foreclose Plaintiff from the same access. *See* Fourth Amend. Compl. at 109. Accordingly, the "sham" exception to the *Noerr-Pennington* has no application whatsoever to the instant case.

## CONCLUSION

Because Plaintiff has: (1) misconstrued and mischaracterized relevant law, (2) mischaracterized its own pleadings and allegations; (3) failed to articulate that an exception to the *Noerr-Pennington* doctrine applies to the instant case; and (4) failed to address the salient

arguments in Defendant's Motion, Defendant respectfully submits that its Motion should be granted in its entirety.

Dated: New York, New York
June 2, 2009

Respectfully submitted,

MCDERMOTT WILL & EMERY LLP
Peter J. Sacripanti (PS 8968)
James A. Pardo (JP 9018)
Stephen J. Riccardulli (SR 7784)
Lauren E. Handel (LH 0755)
340 Madison Avenue
New York, NY 10173-1922

Jennifer Kalnins Temple (JK 3274)
18191 Von Karman Avenue, Suite 500
Irvine, CA 92612-7108
Tel: (949) 757-7128
Fax: (949) 851-9348

*Attorneys for the Exxon Mobil Corporation Defendants*