UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re: Methyl Tertiary Butyl Ether ("MTBE")　　　Master File No. 1:00-1898
Products Liability Litigation　　　　　　　　　　 MDL 1358 (SAS)
　　　　　　　　　　　　　　　　　　　　　　　　 M21-88

This document pertains to:

*City of New York v. Amerada Hess Corp. et al.*,
Case No. NY-04-CV-03417


# DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF FUTURE INJURY OR DAMAGE TO WELLS 5, 22, 26, 39 AND 45

## INTRODUCTION

New York law does not award speculative damages, and the fact of an injury giving rise to damages must first be proven to a reasonable degree of probability. As the City cannot prove to a reasonable degree of probability that it will incur the damages alleged, any such evidence should be excluded as a matter of law. Critically, the City admits "it is true that today, the City does not need to turn on the Defendant Focus Wells" and "it cannot predict when the next drought, system failure, or other water supply outage will occur necessitating the use of the wells." *Plaintiff City of New York's Memorandum of Law in Opposition to Defendants' Joint Motion in Limine to Exclude Evidence of Future Injury or Damage to Wells 5, 22, 26, 39 and 45* (May 26, 2009) ("*Pl. Mem.*") at 1. The City also admits that its "use of the groundwater system is largely contingent on particular facts and circumstances, not on any specific timeline." *Id.* at 14. These admissions are fatal to its claims for injury or damage to these wells, particularly because the facts and circumstances relating to whether the City may ever use its wells again are within its own control. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 564, n.2 (1992).

It is undisputed that the City has disclaimed past damages for these wells, essentially admitting that it has not been injured by any historic detections of MTBE. *Plaintiff City of New York's Memorandum of Law in Opposition to Defendants' Joint Motion in Limine to Exclude Evidence of Past Costs or Injury Associated With Wells 5, 22, 26, 39 and 45* (May 26, 2009) at 2. Because the City is now only seeking damages in connection with alleged future detections of MTBE in these wells, its claims have been essentially reduced to claims for "threatened" MTBE contamination. But regardless of whether the City's claims for damage to these wells are classified as claims for "threatened" MTBE contamination or not, the damages alleged are too speculative because the City cannot state to a reasonable degree of probability that it will ever use these wells again and, with respect to certain wells, it is clear the City will not.

**ARGUMENT**

A.  **The City Only Offers the Possibility that it Will Pump Wells 5, 22, 26, 39 and 45 in the Future Despite Evidence to the Contrary.**

The City admits (even though its Rule 30(b)(6) witness was unwilling to do so) that none of Defendants' focus wells are included in its only affirmative plans for potential treatment of groundwater in Queens, its Dependability Study. *Pl. Mem.* at 5. So the City's argument that its claims for damage in connection with these wells are not speculative because it has a permit to use them and because it can demonstrate a general intent to maintain and upgrade its groundwater system in case of a drought or an "unplanned outage" (*Pl. Mem.* at 4-9) is both irrelevant and misleading. A review of the facts pertaining to each well conclusively determines that the City does not and will not require treatment systems on these wells which is the "damage" it is seeking to recover in this lawsuit:

**Wells 5 and 22**

The City did not address or even attempt to rebut the testimony of its Rule 30(b)(6) witness, William Meakin, that the City does *not* intend to replace the treatment equipment currently installed on these wells with new treatment designed specifically to remove MTBE, in the event it needs to use these wells in the future. *Def. Mem.* at 8; Kalnins Temple Decl., Ex. B (*Meakin Deposition*) at 117:19-118:6. Instead, the City throws up facts about the historic effectiveness of the air stripper installed at well 5 for removing MTBE. Of course, the City fails to mention that when this well was pumping the water with the low levels of MTBE it refers to at page 10 of its Opposition, no customers ever complained about it. Undoubtedly, this is why the City is not claiming any past damage for those MTBE detections and the City's Rule 30(b)(6) witness confirmed that this air stripper will stay in place.

### Wells 26, 39 and 45

The City also did not refute any of the evidence demonstrating that it has no intention of ever using wells 26, 39 and 45 in the future. In particular, the City failed to address the testimony of its Rule 30(b)(6) witness that well 45 will never be used for drinking water because its pumping will cause salt water intrusion into the drinking water aquifer. *Def. Mem.* at 8; Kalnins Temple Decl., Ex. B (*Meakin Deposition*) at 407:23-408:13 (well 45 is "definitely not part" of the 55-MGD Project). Defendants do not dispute the City has a permit to use this well; it is irrelevant in the face of the fact that the City has said it will *not* use it. So to claim millions of dollars in damages for treatment to remove MTBE from this well is particularly outrageous.

Similarly, the City does not refute the fact or offer any evidence that despite the advice of its consultants never to use wells 26 and 39 again, that it *will* use these wells for drinking water. *Def. Mem.* at 8. In fact, the City admits that its consultants have recommended these wells not be used. *Pl. Mem.* at 8. So again, reference to the permit the City has to use these wells is, in fact, meaningless here. The City attempts to mislead the Court by suggesting that the reason these wells cannot be used again is because of MTBE. *Pl. Mem.* at 8. The evidence clearly demonstrates nothing of the sort. More than once now Defendants have had to correct the record that well 39 has never even had a detection of MTBE. Hearing Tr. (May 21, 2009) at 21:11-21. And MTBE was only detected *once* in Well 26 at 0.61 ppb in *July 2005*, almost four years ago. *Def. Mem.* at 5. The City knows MTBE is *not* the reason it cannot use these wells, but more importantly, it cannot refute that it has no plans to use them again. *Pl. Mem.* at 9.

The record of evidence is clear—the City cannot state with any degree of probability that it will put wells 5 and 22 back into service should a drought occur, but even if it does, it does *not* intend to replace the treatment systems already installed with the expensive new treatment

systems recommended by its litigation expert. Further, the City does not refute that wells 26, 39 and 45 will *never* be used again to provide drinking water to residents of Queens.

**B.  Whether or Not the City's Claims for Future Injury or Damage are Classified as Claims for "Threatened" MTBE Contamination, the Evidence is Impermissible Speculation.**

The City argues that it need not demonstrate "imminence" because these wells are "already contaminated." *Pl. Mem.* at 12. It also claims that defendants are attempting to "transform the City's focus well trial into a 'threatened well' case and, for the first time, have this Court hold that a plaintiff who has *actually detected* MTBE both in and around its drinking water wells must make a further showing of imminent injury." *Id.* (emphasis in original).

First, the problem for the City is not whether the wells contain MTBE or not (the City continually forces Defendants to correct the record about well 39), but that these detections have not, and will not, cause the City any injury or damage. The City has disclaimed past damages for those detections and the possibility of future damages is pointless speculation when the City does not currently intend to use its wells. *See Hellert v. Town of Hamburg*, 857 N.Y.S.2d 825, 828 (N.Y. App. Div. 2008) ("immaterial that certain metals detected in the groundwater samples taken from plaintiffs' properties exceeded drinking water standards because it was undisputed that none of the plaintiffs used groundwater or well water for drinking purposes"). Thus, even if the City's claims of injury and damage to these wells are considered to be current as opposed to threatened injury (and the City does not explain how that can be given its disclaimer of past damages for *past* detections), the standard to be applied to the evidence requires its exclusion. *See State of New York v. Fermenta ASC Co. et al.*, 630 N.Y.S. 2d 884, 890-91 (1995) ("Damages for the prospective consequences of a tortuous injury are recoverable only if the prospective injury may with reasonable probability be expected to flow from the past harm, and

consequences which are contingent, speculative, or merely possible are not properly considered"); *see also Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 281 (S.D.N.Y. 2008) (dismissing claims for negligence and breach of fiduciary duty based on future risk of identity theft and stating that New York "has required a high degree of probability that a future injury will occur before allowing a plaintiff to recover damages for the potential injury."); *Askey v. Occidental Chem. Corp.*, 477 N.Y.S.2d 242, 247 (4th Dep't 1984) ("Damages for the prospective consequences of a tortious injury are recoverable only if the prospective consequences may with reasonable probability be expected to flow from the past harm.")

Second, the Court has never definitively ruled that evidence of past MTBE detections is what distinguishes a "threatened" well case from a "contaminated" well case. *Pl. Mem.* at 12. In fact, the Court has stated that "plaintiffs' water is not harmed merely because its water contains a minuscule amount of MTBE" leaving open the question of whether claims for damage in connection with minuscule amounts of MTBE are properly characterized as claims for actual as opposed to threatened MTBE contamination. *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 593 F. Supp. 2d 549, 552 (S.D.N.Y. 2008). In its decision on standing with respect to the private well owners in MDL 1358 I, the Court ruled that the "Non-Detect" Plaintiffs and the "Non-Test" Plaintiff had no standing because neither alleged MTBE detections, nor any known releases of MTBE-gasoline near their wells, but the Court did not say that a plaintiff with MTBE detections necessarily has a claim for actual as opposed to threatened MTBE contamination. *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 175 F. Supp. 2d 593, 608-610 (S.D.N.Y. 2001).

The Court did, however, outline the standard to be applied when assessing standing for purposes of analyzing claims for threatened MTBE contamination. In assessing the sufficiency

of an "injury-in-fact" under Article III of the U.S. Constitution, an injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *In re: MTBE*, 458 F. Supp 2d at 153 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Defendants emphasized in their opening Motion that when considering imminent harm rather than actual harm, *Lujan* cautions that the "imminence" requirement is "stretched beyond the breaking point when, as here, the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff's own control." *Lujan*, 504 U.S. 555 at 564, n. 2. Whether or not the City will ever use its wells again such that it will suffer damage *when or if* future MTBE concentrations are detected is entirely within its own control. As outlined above, the evidence demonstrates the City has no intention of replacing treatment systems on wells 5 or 22 and it will likely never use wells 26, 39 or 45 again. These facts are fatal to the City's claims for future damage to these wells and, therefore, any such evidence relating to these claims must be excluded.

The City cites several cases regarding the calculation of damages for lost future wages based on personal injury actions for the proposition that damages need only be capable of ascertainment with "reasonable certainty" and for the proposition that experts can introduce testimony that assesses future probabilities. *Pl. Mem.* at 3. However, as Plaintiff acknowledges, this Motion is not directed to the credibility of its experts' predictions or opinions. Rather, it is directed to the facts that are entirely within the City's own control—whether it ever uses these wells again so as to be damaged by future MTBE detections.

Contrary to Plaintiff's assertion that the *Tronolone* case cited in Defendants' Motion is "easily distinguished," it is decidedly more on point than the lost future wage cases cited by Plaintiff. In *Tronolone*, Plaintiff's case for damages did not fail because he had a problem

proving "injury" to his shoulder sustained from a fall, rather, he did not prove a reasonable likelihood that the "damage" he sought to be compensated for, the surgery, would ever occur. *Tronolone v. Praxair*, 833 N.Y.S. 2d 816 (4th Dep't 2007). Likewise, even if the City's experts accurately predict future MTBE concentrations in these wells, the City cannot prove that it will require treatment systems to address them. As a result, under any standard, evidence relating to future damage or treatment the City claims it needs for these wells should be excluded. *Hellert*, 857 N.Y.S.2d at 828; *Fermenta,* 630 N.Y.S. at 890-91; *Lujan*, 504 U.S. 555 at 564, n. 2.

## CONCLUSION

For the reasons stated above, Defendants' Motion *in Limine* to exclude evidence of future injury or damage to Plaintiff's wells 5, 22, 26, 39 and 45 should be granted.

Dated: New York, New York
June 2, 2009

Respectfully submitted,

/s/ Jennifer Kalnins Temple

Jennifer Kalnins Temple (JK 3274)
McDERMOTT WILL & EMERY LLP
18191 Von Karman Avenue, Suite 500
Irvine, CA 92612-7108
Tel: (949) 757-7128
Fax: (949) 851-9348

McDERMOTT WILL & EMERY LLP
Peter J. Sacripanti (PS 8968)
James A. Pardo (JP 9018)
Stephen J. Riccardulli (SR 7784)
340 Madison Avenue
New York, NY 10173-1922

*Attorneys for the Exxon Mobil Corporation Defendants*