UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE METHYL TERTIARY BUTYL ETHER
PRODUCTS LIABILITY LITIGATION

Master File No. 1:00-1898
MDL 1358 (SAS)
M21-88

This document relates to:

*City of New York v. Amerada Hess Corporation, et al.*,
No. 04-CV-3417 (SAS)

# MEMORANDUM OF LAW IN OPPOSITION TO CITY OF NEW YORK'S MOTION TO EXCLUDE TESTIMONY AND OPINION OF DEFENDANTS' EXPERT FLETCHER G. DRISCOLL

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1
LEGAL STANDARD .................................................................................................................. 1
ARGUMENT ................................................................................................................................ 2
I.   DR. DRISCOLL CAN TESTIFY AS TO THE FACTS CONTAINED IN THE CONSENT ORDERS ........................................................................................................ 2
     A.   Dr. Driscoll Did Not "Interpret" or Render Opinions Regarding "Legal" Aspects of the Complaint or Consent Orders ..................................................... 3
     B.   Dr. Driscoll Has Superior Experience Drafting and Interpreting Consent Orders ............................................................................................................. 5
II.   DR. DRISCOLL'S OPINION THAT STATION 6 WILL BE ONLY MINIMALLY AFFECTED BY MTBE IN THE FUTURE IS THE PRODUCT OF RELIABLE PRINCIPLES AND METHODS ........................................................... 7
     A.   Dr. Driscoll Was Not Required to *Quantify* the Length of Time MTBE Will Be Present in the Station 6 Wells ......................................................... 8
     B.   Dr. Driscoll's Opinions Are Reliable and Should be Permitted. ................... 8
III.   DR. DRISCOLL PRODUCED ALL DOCUMENTS REQUIRED UNDER THE FEDERAL RULES AND EXPERT PROTOCOL. ...................................................... 11
CONCLUSION ........................................................................................................................... 12

## PRELIMINARY STATEMENT

Exxon Mobil Corporation ("ExxonMobil") hereby opposes the City's motion pursuant to Federal Rule of Evidence ("FRE") 702 to exclude the testimony of ExxonMobil's expert, Fletcher G. Driscoll. As detailed below, Driscoll's opinions satisfy the requirements set forth in FRE 702, and articulated in *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993), and its progeny.

## LEGAL STANDARD

Federal Rule of Evidence 702 imposes three basic criteria for the admissibility of expert testimony: "qualifications, reliability, and fit." *Adesina v. Aladan Corp.*, 438 F. Supp. 2d 329, 341 (S.D.N.Y. 2006). The witness must be **qualified** as an expert on the subject matter; the expert's methodology must be **reliable**; and the expert's proposed testimony must **"fit"** – *i.e.*, it "must assist the trier of fact" – because "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591.

The Court is tasked with determining, in the first instance, whether a witness's proposed "expert testimony" meets these three criteria. *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 562 (S.D.N.Y. 2008) (Scheindlin, J.). Indeed, "*Daubert* charged district courts with a 'gatekeeping' function to 'ensure that any and all scientific testimony or evidence admitted in not only relevant, but reliable.'" *In re: MTBE Prods. Liab. Litig.*, 2008 U.S. Dist LEXIS 37331, at *9 (S.D.N.Y. May 7, 2008) (citations omitted).

The reliability test also applies when an expert's testimony is not scientific in nature. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). In such a situation, the test ensures that an expert "whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *In re: MTBE*, 2008 U.S. Dist. LEXIS, at *10.

## ARGUMENT

I. **DR. DRISCOLL CAN TESTIFY AS TO THE FACTS CONTAINED IN THE CONSENT ORDERS.**

   A. **Dr. Driscoll Did Not "Interpret" or Render Opinions Regarding "Legal" Aspects of the Complaint or Consent Orders.**

The City seeks to strike portions of Dr. Driscoll's report that reference a legal complaint filed by the USEPA in 2002 and state and federal Consent Orders regarding City-owned underground storage tanks. *See Declaration of Stephen J. Riccardulli* ("*Riccardulli Decl.*"), A (*2002 USEPA Complaint*); *Riccardulli Decl.* Ex. B. (*1994 NYSDEC Consent Order*); *Riccardulli Decl.* Ex. C. (*2006 USEPA Consent Decree*). In support of its motion, the City argues that because neither Dr. Driscoll nor his primary staff member is a lawyer, neither has the experience or qualifications necessary to interpret these documents. Pl.'s Mem. at 3. Plaintiff's motion misses the mark. Contrary to the City's contention, Dr. Driscoll did not "render opinions [regarding] or interpret[ing] the various legal documents referenced in his March Report." *Id.* Instead, Dr. Driscoll relied on the facts presented in the USEPA Complaint and the NYSDEC and USEPA consent orders to render an opinion regarding sources of MTBE in the relevant geographic area in Queens, New York.

For example, in his Report, Dr. Driscoll summarized the facts contained in the Consent Decree between the USEPA and the City. *See Riccardulli Decl.* Ex. D. (*March 9, 2009 Expert Report*), at 13-14. Each of the bulleted statements was pulled directly from the federal 2006 Consent Decree:

> "In 2006 the USEPA and New York City agreed to a Consent Decree in which the City did not admit any liability in regard to the 2002 Complaint and in return agreed to:

- o  Pay a $1.3 million civil penalty [*Riccardulli Decl.* Ex. C, ¶ 8],

- o  Comply with upgrade or permanent closure requirements within one year [*Id.* ¶ 10(a) & (b)],

- o  Comply with release detection and notification requirements within 30 days [*Id.* ¶ 10 (c) & (d)],

- o  Implement a Centralized Monitoring Program for release detection at Police, Fire, and Transportation Department USTs [*Id.* ¶ 11],

- o  Submit quarterly status reports to the USEPA regarding the Centralized Monitoring Program [*Id.* ¶ 23 (b)], and

- o  Submit quarterly status reports regarding compliance with tank requirements [*Id.* ¶ 23 (c) & (d)]."

*Compare March 29, 2009 Expert Report*, Riccardulli Decl. Ex. D, and *2006 USEPA Consent Order*, Riccardulli Decl. Ex. C. Dr. Driscoll similarly summarized the USEPA Complaint and NYSDEC Consent Order. *See Riccardulli Decl.* Ex. D. at 13-14.

Dr. Driscoll applied his extensive experience as a hydrogeologist[1] to analyze the facts detailed in the Consent Orders and Complaint. In doing so, Dr. Driscoll reached the following opinion (the only opinion contained in pages 12-14 of the March 29 Expert Report): "In summary, the Consent Orders and Complaints by the USEPA and NYSDEC demonstrate that New York City failed to properly manage its UST network during the period of peak MTBE use in New York. Because the City failed to implement various UST upgrades and leak detection requirements, numerous MTBE releases were probably not detected in a timely fashion." *Id.* at 14.

---

[1] The City's Motion does not question Dr. Driscoll's qualifications and/or experience as a hydrogeologist.

Where, as here, an expert's opinion is "non-scientific" and based on an expert's experience, the test for reliability is flexible. As the Supreme Court explained while discussing *Daubert's* reliability factors as applied to non-scientific experts, "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience." *Kumho Tire Co.*, 526 U.S. at 156. The district court must determine whether the expert's testimony is "properly grounded, well-reasoned, and not speculative," and the expert must "show how his or her experience . . . led to his conclusion." *Fed. R. Evid. 702 Advisory Committee Note*.

This Court reached a similar conclusion while deciding Defendants' motion to strike Plaintiffs' expert, Robert Reynolds, in the *County of Suffolk* and *United Water New York* matters. *In re: MTBE*, 2008 U.S. Dist. LEXIS 37331 (S.D.N.Y. May 7, 2008). There, Reynolds formed various conclusions relying on "facts and data on ethanol and MTBE technical properties, pricing, export and import levels, and processing methods." *Id.* at *23. The facts and data were pulled from "government compiled statistics on ethanol properties and pricing from EPA, the U.S. Department of Energy's Energy Information Agency, and the U.S. International Trade Commission . . . ." *Id.* at *23 n.58. In denying Defendants' motion, the Court held that because Reynolds utilized "his business experience to assess the facts and form conclusions," his testimony was reliable. *Id.* at *25, 30-31.

Similar to Reynolds in *County of Suffolk*, Dr. Driscoll used his extensive experience to analyze the facts detailed in the Complaint and Consent Orders to render his opinions. Dr.

Driscoll's methodology clearly satisfies the Daubert reliability test as applied to non-scientific opinions.[2]

### B.   Dr. Driscoll Has Superior Experience Interpreting Consent Orders.

Even if the Court determines that Dr. Driscoll interpreted the Complaint and Consent Orders, he is qualified to do so. The City contends that neither Dr. Driscoll nor his staff is qualified to "interpret legal documents like consent orders and legal complaints." Pl.'s Mem. at 3. As support, the City cites to two questions and answers (taken out of context) from two days of testimony from Dr. Driscoll's deposition. A further examination of the deposition testimony, however, demonstrates Dr. Driscoll's "superior knowledge, skill and experience" relative to Consent Orders.

Indeed, at his deposition, Dr. Driscoll testified as follows:

> Q:   Have you ever -- can you tell me what a consent order is?
>
> A:   Yes, an agreement with the government or with a regulatory body that certain actions will be taken. And the reason the consent order has been enacted is that up until that time, there hasn't been compliance with the particular regulation.
>
> ****
>
> Q:   Do you know why you were asked to review the consent orders as part of your work on this case?
>
> A:   One of the things that we noticed early on in the work that Mr. Terry did is that he seemed to be ignoring the public release sites in this urban environment. And so we wanted to determine how many there were and whether they had been in compliance in the

---

[2] Plaintiff's reliance on *Lamoureux v. Anazaohealth Corp.*, 2009 U.S. Dist. LEXIS 37089 (D. Conn. Apr. 30, 2009) and its progeny is misplaced. Indeed, the Court in *Lamoureax* determined the purported expert was "not an expert in damages analysis or in any of the techniques used to create the damages model." Accordingly, the court precluded the witness from explaining how a complex damage model works and from opining as to the "validity or interpretation of the results." *Id.* at 19. Here, there is no question as to Dr. Driscoll's qualifications to opine as to UST technology and site investigation and remediation technologies.

> same fashion that industry had been urged to update their tank systems and do their remediation and everything else. And so we just wanted to see what role those facilities played in the overall contamination by MTBE of the Queens aquifer.
>
> ****
>
> Q: Does he [Mr. Mitchell] have any familiarity with the RCRA regulations?
>
> A: Well, **I do because obviously we worked on them for many, many years**, and several of the people I have in the company have worked under RCRA orders before at other sites.

*Riccardulli Decl.* Ex. E. (Dep. of Fletcher G. Driscoll, Apr. 30, 2009) at 188:7–192:20 (emphasis added).

It is important to view Plaintiff's motion in the relevant context. Dr. Driscoll is – first and foremost – a professional hydrogeologist. In the normal course of this professional work, Dr. Driscoll is required to interpret and supervise the implementation of the provisions contained in Consent Orders to ensure that remediation activities performed at a site comply with the specific requirements. Similarly, remediation professionals regularly interpret the various federal and state regulations that govern remediation activities and implement those requirements in accordance with federal and state law. The rule of law proposed by the City would effectively require lawyers to opine on anything related to a consent decree. This clearly is not an appropriate result.

Here, it is clear from his testimony that Dr. Driscoll has worked on sites subject to Consent Orders for "many, many years." Dr. Driscoll also explained that his experience with Consent Orders was "mostly under CERCLA." *Riccardulli Decl.* Ex. E. at 190:21. Despite these statements, counsel for the City failed to ask questions at the deposition examining that experience. Had counsel done so, counsel could have examined Dr. Driscoll as to his nearly 30 years of experience performing work at sites subject to CERCLA and RCRA Consent Orders.

*Driscoll Decl.* at ¶ 2. Similarly, counsel could have questioned Dr. Driscoll regarding his experience in ensuring that work being performed at sites was in compliance with Consent Orders and CERCLA regulations. *Id.* at ¶¶ 2, 5. Instead, counsel limited his examination to RCRA Orders and questions seeking legal conclusions as to whether Dr. Driscoll and/or his staff are "qualified to interpret legal documents like consent orders and complaints." *Riccardulli Decl.* Ex. E. at 192:8-192:10; 192:14-192:16.

The record is clear – Dr. Driscoll's has superior knowledge and experience as a hydrogeologist who has performed work subject to various state and federal Consent Orders. Dr. Driscoll's experience working on sites subject to Consent Orders, coupled with his current projects, (*Driscoll Decl.*, ¶ 2), clearly demonstrates his superior knowledge, experience and skill.

## II. DR. DRISCOLL'S OPINION THAT STATION 6 WILL BE ONLY MINIMALLY AFFECTED BY MTBE IN THE FUTURE IS THE PRODUCT OF RELIABLE PRINCIPLES AND METHODS.

Plaintiff's motion is premised on Dr. Driscoll's purported failure to quantify the length of time MTBE will be present in the Station 6 wells. Pl.'s Mem. at 4. Further, Plaintiff argues that because he did not perform site assessments, Dr. Driscoll lacks an adequate factual basis to render these opinions. Plaintiff's motion misses the mark in both respects.

First, it is the City's burden to prove that MTBE will impact the Station 6 wells if and when they are brought on line in 2016 or 2017. *See, e.g. Cruz v. United States*, 1998 U.S. Dist. LEXIS 233, at *32 (S.D.N.Y. Jan. 14, 1998) ("Plaintiff has the burden of proof as to damages."). Second, the City ignores other of Dr. Driscoll's opinions – and the underlying analyses performed – that support his opinion that Station 6 will be only minimally affected by MTBE in the future. Accordingly, Plaintiff's motion to exclude these opinions should be denied.

### A. Dr. Driscoll Was Not Required to *Quantify* the Length of Time MTBE will be Present in the Station 6 Wells.

To prove its claims with respect to Station 6, the City has the burden of proving that MTBE will be detected in the Station 6 Wells if and when they are brought on line. Further, the City must prove that the MTBE will be present in the Station 6 Wells at levels sufficient to require treatment. New York law is clear, the City has the burden of proving that MTBE will affect the Station 6 Wells in the future; ExxonMobil does not.

In support of its claims, the City proffers three experts who opine as to the future impact of MTBE to the Station 6 Wells – *i.e.*, Bell, Cohen and Terry. Dr. Driscoll was retained to rebut these experts' opinions. In doing so, Dr. Driscoll is not required to specifically quantify the length of time that MTBE will be present in the Station 6 Wells. Plaintiff's contention is meritless and unsupported in law.

### B. Dr. Driscoll's Opinions are Reliable and Should be Permitted

The City seeks to strike certain of Dr. Driscoll opinions – *i.e.*, that "[a]ttenuation and transport factors suggest MTBE concentrations at Station 6 will be non-detectable when pumping commences in 2016 or 2017," *Riccardulli Decl.* Ex. D. at 32, and that "[b]ecause MTBE concentrations at nearby gas stations have decreased rapidly and presently have minimal on-site MTBE concentrations, the sites will not serve as sources of MTBE when Station 6 wells begin being pumped in 2016 or 2017, at least 12 years after use of MTBE ceased," *id.* at 33, – because Dr. Driscoll "does not have an adequate factual basis, and has not conducted any analysis that would support these opinions." Pl.'s Mem. at 4. Specifically, the City argues that it was necessary for Dr. Driscoll to conduct a complete an assessment of site files to render these opinions.

The City is playing a game of semantics. Indeed, the City's motion is based on Dr. Driscoll's alleged failure to review "site files"[3] – *i.e.*, the individual files related to the investigation and/or remediation of gasoline contamination at a UST site. The City ignores the fact that Dr. Driscoll reviewed numerous environmental documents and data – the type contained in site files – that were necessary for him to render his opinion. Tasked with rebutting the opinions of certain of Plaintiff's experts, it was not necessary for Dr. Driscoll to conduct a complete assessment of the site files themselves.

The "assessment" suggested by the City would be necessary, for example, to determine whether a release actually occurred at a UST site. Dr. Driscoll was not asked to perform that task. Instead, he was tasked with responding to certain of Plaintiff's experts who opined as to the length of time MTBE would be present in Queens. In rendering his opinions, Dr. Driscoll relied on the documents – contained in site files or otherwise – relevant to the issue of whether MTBE will be present in 2016 or 2017.

For example, Dr. Driscoll references in his report his analysis regarding "attenuation factors and data" he considered: "The attenuation factors and data that I have considered above suggests that MTBE will not be detected when Station 6 becomes fully operational." *Riccardulli Decl.* Ex. D. at 32. This reference is to Dr. Driscoll's analysis contained in Section 3 of his March Report in which he discusses various attenuation factors present in the hydrogeologic

---

[3] Despite its arguments, the City concedes that Dr. Driscoll's March Report includes an analysis of three sites within the Station 6 capture zone. Pl.'s Mem. at 5 n.1. Yet, counsel didn't refer Dr. Driscoll to this section of the March Report to clarify any questions regarding his testimony.

environment found on Long Island. *See id.* at 19. This discussion incorporates Dr. Driscoll's earlier opinion which was developed using field data[4] at the City's Jamaica Well No. 10:

> The geologic and hydraulic characteristics of the aquifers underlying Queens County favor the rapid transport of MTBE through the groundwater system. The Upper Glacial (shallow) aquifer is the most susceptible to MTBE releases. If control and remediation of the sources are effective, however, the volume of contaminated water and its residence time are limited in this aquifer.

*Id.* at 19-20.

Similarly, it is clear that Dr. Driscoll analyzed data from three sites Plaintiff's experts determined to be potential sources of MTBE detected in Station 6 Wells to date. *Id.* at 33. Indeed, Dr. Driscoll discusses the data with respect to service stations located at 105-15 Merrick Boulevard, 108-46 Merrick Boulevard and 165-25 Liberty Avenue. *Id.* at 33-35. His analysis included the review of various hydrogeology documents – cited in the March Report – related to the investigation and/or remediation activities conducted at these sites – *e.g.*, a 2008 document prepared by J.R. Holzmacher P.E., LLC related to the service station located at 108-46 Merrick Boulevard. *Id.* at 33. After analyzing these data, and considering his other analysis regarding natural attenuation factors acting in the hydrogeologic environment, Dr. Driscoll concluded that "[w]hile off-site MTBE concentrations may temporarily exist at some remediated sites, biodegradation, dispersion and other physical and chemical attenuation processes will cause a rapid decline in MTBE concentrations off site . . . . Data presented in Section 3 of this report demonstrate clearly that MTBE tends to exist in wells for only a short time – generally just a few years."

---

[4] Dr. Driscoll also relied on groundwater studies conducted by the USGS, and a recent study conducted at gas stations in New Hampshire. *Riccardulli Decl.* Ex. D. at 20-22.

### III. DR. DRISCOLL PRODUCED ALL DOCUMENTS REQUIRED UNDER THE FEDERAL RULES AND EXPERT PROTOCOL.

As a last-ditch effort, the City asks this Court to exclude Dr. Driscoll's opinions for his alleged failure to produce certain correspondence between Dr. Driscoll and his staff, including meeting agendas and "six or seven faxes" received from his staff. Defendants produced more than 400 documents, databases and spreadsheets reviewed and considered by Dr. Driscoll and his staff in preparing his Expert Reports.[5] As discussed below, Defendants complied with the Federal Rules of Civil Procedure and the Expert Protocol.

The City's motion mischaracterizes the nature of the documents faxed to Dr. Driscoll by his staff. As Dr. Driscoll explained during his deposition, his staff works from various offices throughout the country. In performing their work, certain of his staff members faxed to Dr. Driscoll certain pages from *documents produced by the City* during discovery. *Riccardulli Decl.* Ex. E. at 102:5-102:18. Also his staff sent by fax draft sections of the Expert Report including draft outlines, text, tables, and figures. In essence, the City requests that Dr. Driscoll be excluded because they do not know the specific pages from City-provided documents he reviewed. However, neither the Federal Rules or the Expert Protocol require a party to identify the specific pages of a document reviewed in the course of rendering opinions nor Drafts of the reports. Defendants identified and produced all of the documents and data reviewed by Dr. Driscoll in forming his opinions.

Additionally, the City complains that meeting agendas should have been produced. However, there is simply nothing in the record to suggest that the agendas were "information

---

[5] As the City acknowledges in its Motion, Defendants produced a large volume of documents and data on May 15, 2009. While counsel for the City communicated that it would review the data and might request an additional day of deposition, the City has not made such a request to date.

considered" by Dr. Driscoll in developing his opinions. *See Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) ("a party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind[6]; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense) (internal quotations omitted); *Sandata Tech., Inc. v. Infocrossing, Inc.*, 2007 U.S. Dist. LEXIS 85179, at *36 (S.D.N.Y. Nov. 16, 2007) (finding that expert did not rely on discarded notes and stating, "[t]he mere fact that the expert tossed out his meeting notes, without authorization by, or direction from, [counsel], does not rise to the level of sanctionable conduct...."). Accordingly, the production of the agendas was not required by the Federal Rules or the Expert Protocol.

The City's attempt to inflate these limited instances into the "destruction of evidence" is belied by the record and should be rejected.

## CONCLUSION

For the foregoing reasons, ExxonMobil respectfully requests that the Court deny Plaintiff's motion in its entirety.

---

[6] Here, "the City does not allege that Driscoll or the Defendants destroyed these documents in bad faith." Pl.'s Mem. at 10.

Dated: New York, New York
June 3, 2009

Respectfully submitted,

*[signature]*

McDERMOTT WILL & EMERY LLP
Peter J. Sacripanti (PS 8968)
~~James A. Pardo~~ (JP 9018)
Stephen J. Riccardulli (SR 7784)
Lauren E. Handel (LH 0755)
340 Madison Avenue
New York, NY 10173-1922
Tel: (212) 547-5400
Fax: (212) 547-5444

Jennifer Kalnins Temple (JK 3274)
18191 Von Karman Avenue, Suite 500
Irvine, CA 92612-7108
Tel: (949) 757-7128
Fax: (949) 851-9348

*Attorneys for the Exxon Mobil Corporation Defendants*