UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
IN RE: METHYL TERTIARY BUTYL ETHER
PRODUCTS LIABILITY LITIGATION
---------------------------------------------------------------X
This document relates to the following cases:
City of New York
v. Amerada Hess Corp., et al., 04 Civ. 3417

---------------------------------------------------------------X

Master File C.A. No. 1:00-1898
MDL 1358 (SAS)
M21-88

DECLARATION OF FLETCHER
G. DRISCOLL IN OPPOSITION
TO CITY OF NEW YORK'S
MOTION TO EXCLUDE
TESTIMONY AND OPINIONS OF
DEFENDANT'S EXPERT
FLETCHER G. DRISCOLL

I, FLETCHER G. DRISCOLL, declare:

1. I have been retained on behalf of defendant Exxon Mobil Corporation ("ExxonMobil") in the matter of City of New York v. Amerada Hess, et. Al. I make this Declaration from my personal knowledge, and if called to do so, could and would testify completely to the matters set forth below.

2. During the past nearly 30 years, I have performed scientific, technical, project management, and expert witness work at numerous Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") and Resource Conservation and Recovery Act ("RCRA") sites in many states. As part of this work, I have reviewed many Consent Orders under which the scientific and technical work was to be performed. In many of these cases I have provided opinions whether the work was conducted in compliance with the Consent Orders and CERCLA regulations. Currently, Fletcher Driscoll & Associates ("FDA") is working on five projects that are under Consent Orders. In two of these projects, FDA helped negotiate the language and terms of the Consent Orders with the United States Environmental Protection

Agency ("EPA") and state agencies under which it has worked. The purpose of FDA's involvement in the negotiations was to insure that sufficient work should be done to meet the agencies' goals, as well as to carefully and fully define the technical work that should be conducted, and when it should be accomplished.

3. In the late 1980s and early 1990s I was the director of the Groundwater Consultants Division (800-person staff) and Director of Training for Arcadis (formerly Arcadis Geraghty & Miller, or "AG&M"). In this position I directed and participated in numerous company continuing education programs which focused on how compliance with EPA's 1984 underground storage tank ("UST") regulations was to be achieved nationwide by AG&M's clients and staff.

4. In late 1986 and early 1987 I was an instructor on an EPA training team charged with instructing the staff at the EPA's ten regional offices on how to use provisions in the 1986 New Technical Enforcement Guidance Document in investigations at RCRA and CERCLA sites.

5. I have been retained several times to evaluate the adequacy of the work performed by consultants as required by EPA Consent Orders.

6. In the mid-1990s I served as project manager for investigating the reason for spills at 300 UST sites in nineteen states as part of the sale of 500 stations.

7. I have served as an Expert Witness for litigation involving many types of hydrocarbon sites, including tank farms, railroad yards, service stations, and creosote-producing facilities.

8. My principal publication is the most widely used reference for monitoring well and water well construction with more than 150,000 copies of this 1,100 page text in print.

9. The purpose of my testimony in regard to New York's operation of UST sites is to demonstrate that the City failed to take timely action as specified in the 1984 amendments to the RCRA. As stated in my report "these regulations set into motion aggressive investigation and re-equipping of petroleum storage facilities in the United States from the late 1980s up to 1998. By December 1993 release detection requirements were to be implemented, and upgrades in replacement of existing USTs were required by December 1998. Additionally, NYSDEC created a Petroleum Bulk Storage Program in 1985 which required registration of USTs by December 27, 1986 and tank tightness testing for many tanks by December 1987 (NYSDEC, 2009)." *Expert Report of Fletcher Driscoll, Mar. 9, 2009, p. 12.*

10. Non-compliance with federal and state UST regulations in a timely manner sometimes results in legal actions being taken by federal and state agencies in the form of Consent Orders. These actions, often accompanied by substantial penalties, generally force the offending party to take action, usually under strict timelines. My testimony, based on the relevant agency complaints, focuses on the failure of the City to comply in a timely manner with federal and state regulations. These failures, as listed in the complaints, are merely recited in my report and I make no attempt at evaluating the legal aspects of the failures as cited by the relevant agencies. The conclusion drawn in my Expert Report that the City "failed to properly manage its UST network during the period of peak MTBE use in New York," *Expert Report of Fletcher Driscoll, Mar. 9, 2009, p. 14*, is based directly on the information provided in the Consent Orders.

I, Fletcher G. Driscoll, hereby declare under penalty of perjury under the laws of the United States, that the foregoing is true and correct.

Executed this 3rd day of June, 2009 at Dellwood, Minnesota.

*Fletcher G. Driscoll*

FLETCHER G. DRISCOLL