UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ X
In re: Methyl Tertiary Butyl Ether ("MTBE") : **Master File No. 1:00-1898**
Products Liability Litigation **MDL No. 1358 (SAS)**
: **M21-88**

:

This Document Relates To: The Honorable Shira A. Scheindlin
*Orange County Water District v. Unocal* :
*Corporation, et al.*, Case No. 04 Civ. 4968 :
(SAS).
:

------------------------------------ X

# DEFENDANTS' FURTHER SUPPLEMENTAL
# REPLY MEMORANDUM IN SUPPORT OF SUMMARY
# JUDGMENT MOTION BASED ON STATUTE OF LIMITATIONS

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | THE DISTRICT SUFFERED AN "INJURY" CAUSING ITS CLAIMS TO ACCRUE WHEN MTBE REACHED GROUNDWATER IN WHICH IT CLAIMS AN INTEREST AT LEVELS ABOVE THE 5 ppb MCL | 1 |
| II. | THE DISTRICT'S REPUDIATION OF ITS PRIOR DEPOSITION TESTIMONY AND REPRESENTATIONS TO THE COURT CANNOT DEFEAT SUMMARY JUDGMENT. | 3 |
| III. | THE DISCOVERY RULE OR CONTINUING TORT DOCTRINE CANNOT SALVAGE THE DISTRICT'S CLAIMS. | 9 |
| Conclusion | | 10 |

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*BellSouth Telecomm. v. W.R. Grace & Co.*,
    77 F.3d 603 (2d Cir. 1996)......................................................................................9

*Cal. Dept. of Toxic Substances Control v. Neville Chem. Co.*,
    358 F.3d 661 (9th Cir. 2004) ...................................................................................9

*Cleveland v Policy Mgmt. Sys. Corp.*,
    526 U.S. 795 (1999)..................................................................................................5

*Major League Baseball Prop., Inc. v. Salvino, Inc.*,
    542 F.3d 290 (2d Cir. 2008)......................................................................................6

*In re MTBE*,
    MDL 1358, 2007 WL 700819 (S.D.N.Y. March 7, 2007) ......................................3

*In re MTBE Prods.*,
    457 F. Supp. 2d 455 (S.D.N.Y. 2006)......................................................................1

*In re MTBE Prods.*,
    475 F. Supp. 2d 286 (S.D.N.Y. 2006)...........................................................2, 9, 10

*New Mexico v. Gen. Elec. Co.*,
    322 F. Supp. 2d 1237 (D.N.M. 2004) ......................................................................8

*Perma Research & Dev. Co. v. Singer Co.*,
    410 F.2d 572 (2d Cir. 1969)......................................................................................5

*Seneca Meadows Inc. v. ECI Liquidating, Inc.*,
    983 F. Supp. 360 (W.D.N.Y. 1997)..........................................................................9

*Vill. of Milford v. K-H Holding Corp.*,
    390 F.3d 926 (6th Cir. 2004) ...................................................................................9

**STATE CASES**

*Aas v. Superior Court*,
    24 Cal. 4th 627 (2000) .............................................................................................2

*Beck Dev. Co. v. S. Pac. Transp. Co.*,
    44 Cal. App. 4th 1160 (1996) ........................................................................................2

*County of Santa Clara v. Atl. Richfield Co.*,
    137 Cal. App. 4th 292 (2006) ...........................................................................2, 9, 10

*Davies v. Krasna*,
    14 Cal. 3d 502 (1975) ...................................................................................................1

*Jolly v. Ely Lilly & Co.*,
    44 Cal. 3d 1103 (1988) ................................................................................................9

*Wilshire Westwood Assocs. v. Atl. Richfield Co.*,
    20 Cal. App. 4th 732 (1993) ........................................................................................2

**STATUTES AND RULES**

42 U.S.C. § 9658 ..................................................................................................................9

Cal. Civ. Proc. Code §§ 1822.50-1822.60 ..........................................................................4

Cal. Water Code § 13304(a) ................................................................................................8

Cal. Water Code § 13304(b) ................................................................................................4

Fed. R. Civ. Proc. 30(b)(6) ......................................................................................1, 3, 4, 5

Over multiple rounds of briefing, the District assiduously avoided addressing the controlling California authorities, and the opinions by this Court, which demonstrate that its claims are time-barred.[1] The District's opposition again fails to do so. Applying the straightforward standard established by California law, its claims should now be dismissed.

In January 2009, moreover, the Court ordered the District to submit its final position for each focus plume station, specifying "this is the accrual date *and this is why*." Defendants' May 2009 brief demonstrated that, applying the District's own criteria, its claims are time-barred at nearly all stations. The District responds with a remarkable and unprincipled repudiation of both its accrual criteria as disclosed to the Court and the very specific accrual "facts" that its Rule 30(b)(6) witnesses asserted in depositions last year addressing these stations. As controlling authority holds, no issue of fact barring summary judgment is created by a party's repudiation of its past testimony. In addition, the District's accrual position fails as a matter of law.

I. **THE DISTRICT SUFFERED AN "INJURY" CAUSING ITS CLAIMS TO ACCRUE WHEN MTBE REACHED GROUNDWATER IN WHICH IT CLAIMS AN INTEREST AT LEVELS ABOVE THE 5 ppb MCL.**

Under California law, a plaintiff suffers "appreciable harm" resulting in accrual when "events have developed to a point where plaintiff is entitled to a legal remedy." *Davies v. Krasna*, 14 Cal. 3d 502, 513 (1975). As this Court recognized, under California's economic loss rule, the District's alleged injury underlying its lawsuit is the "present, physical MTBE contamination of the groundwater[] in which [the District] asserts a possessory right." *In re MTBE Prods.*, 457 F. Supp. 2d 455, 462 (S.D.N.Y. 2006); *see id.* at 460 (noting the District's claim that it "has [a] valid property interest[] arising from its usufructary and statutory rights, and that contamination of groundwater by MTBE directly injures those rights"). More generally,

---

[1] Defendants joining this memorandum are listed on Attachment A hereto.

California courts hold that, in "action[s] involving tortious injury to property, the injury is considered to be to the *property itself* rather than to the property owner." *Beck Dev. Co. v. S. Pac. Transp. Co.*, 44 Cal. App. 4th 1160, 1216 (1996) (emphasis added); *Wilshire Westwood Assocs. v. Atl. Richfield Co.*, 20 Cal. App. 4th 732, 739 (1993) (same). Accordingly, the District's claims accrued when, and only when, "present, physical contamination" of groundwater in which it claims an interest first occurred.[2] *E.g., County of Santa Clara v. Atl. Richfield Co.*, 137 Cal. App. 4th 292, 317 (2006). Because no distinction exists between the District's purported jurisdiction over, or property interest in, groundwater underneath a station property into which MTBE intrudes, and groundwater located elsewhere in which MTBE may later be detected, the District's claims accrued when MTBE was first detected in groundwater at levels sufficient to produce "injury." Defendants' May 4, 2009 Brief at 20-22.[3]

The Court's December 2006 opinion required the District to specify "what level of contamination [in groundwater] it claims constitutes appreciable harm." *In re MTBE Prods.*, 475 F. Supp. 2d 286, 295 n.59 (S.D.N.Y. 2006) ("*Limitations Op.*"). While the District equivocated (claiming, for example, that harm depends "not only upon the levels of MTBE but also the location and likely fate of the MTBE (*see* Plaintiff's Jan. 16, 2007 Brief at 1-2)), defendants responded directly by pointing out that, based upon the District's allegations, groundwater suffers purported "appreciable harm" when MTBE exceeds California's secondary MCL of 5 ppb (established in 1999). Defendants' Feb. 14, 2007 Brief at 2-3, 7, 10-11. Belatedly, in

---

[2] The California Supreme Court's *Aas* opinion cited by the District confirms this conclusion. *Aas v. Superior Court*, 24 Cal. 4th 627, 635, 645, 652-53 (2000); *see County of Santa Clara*, 137 Cal. App. 4th at 320 ("*Aas* rejected the homeowners' argument that property damage should not be required . . ."; "'[w]hether the economic loss rule applies depends on whether property damage has occurred . . .'") (quoting *Aas*, 24 Cal. 4th at 649, 650).

[3] Due to the number of past memoranda or briefs filed on this motion, Defendants will cite to such documents by noting the parties filing it and the date it was filed.

response to the Court's January 2009 order, the District has agreed, adopting California's 5 pbb MCL as the level of MTBE in groundwater constituting "injury" for its claims.

Throughout four years of statute of limitations briefing, the District has never acknowledged or confronted the controlling California opinions -- or this Court's 2006 "cognizable interest" decision -- which establish unequivocal accrual dates for its claims. Nor does it do so here.[4] The District's claims are plainly time-barred.

## II. THE DISTRICT'S REPUDIATION OF ITS PRIOR RULE 30(b)(6) DEPOSITION TESTIMONY AND REPRESENTATIONS TO THE COURT CANNOT DEFEAT SUMMARY JUDGMENT.

The Court informed the District at the April 2, 2009 conference that its "reconfigur[ing]" and "gerrymandering" of its claims "with a great hope of not having a statute of limitations problem" is unacceptable and must cease. Undeterred, and faced with facts demonstrating that its claims are time-barred under its own criteria, the District again resorts to this practice.

Throughout prior briefing, the District argued that regulators such as the Regional Board lack the needed tools to address MTBE contamination outside the boundaries of the property where it was released, and that such contamination had "escaped" remediation by these regulators. Repeatedly, the District quoted Mr. Axline's 2006 statement to the Court:

> When you talk about remediation in terms of regulatory agencies, they go to a site where there is a reported spill and they attempt to remediate that mass at that site . . . . When they're not [successful], some of that contamination *moves off site* and *it then becomes unremediable in the sense of those regulatory agencies.*

Oct. 11, 2006 Status Conf. Tr. at 107:16-21 (emphasis added); *see* Plaintiff's Jan. 16, 2007 Brief

---

[4] The District asserts that the Court's primary jurisdiction opinion "contradicts" defendants' position. That opinion, however, accepted *the District's* contention that its authority to remediate MTBE is "parallel" with (not subordinate to) the Regional Board, and that it is free to act "independently" without waiting for action or approval by any regulators. *In re MTBE*, no. 1:00-1898, MDL 1358, 2007 WL 700819 at *7 & nn. 68-70 (S.D.N.Y. March 7, 2007). Because the District's claims accrue as soon as "events . . . develop[] to the point where [it] is entitled to a legal remedy" (*Davies*, 14 Cal. 3d at 513), this opinion confirms that its claims are time-barred.

at 11-12; Plaintiff's March 28, 2008 Brief at 12. Last year, during some 20 days of Rule 30(b)(6) depositions, the District's witness David Bolin again and again cited instances in which MTBE was detected "offsite" (meaning outside property boundaries) as evidence MTBE had "escaped" remedial efforts.[5] *See, e.g.* Defendants' Reply 56.1 Statement ("Reply 56.1") ¶¶ 3, 10, 12, 13, 23, 40, 42-44, 51, 57, 63, 65. He testified in July 2008:

> Q. What do you mean by "off-site contamination"?
>
> A. Detections of MTBE *in a well outside the boundaries of the property*.

Further Supp'l Reply Declaration of James J. Finsten, June 18, 2009, Ex. 8 (Bolin Dep. 356:19-22).

Now, the District unveils a new position. Remediation systems ordered by the Regional Board "are not dependent upon property boundaries." District's Opposition, June 3, 2009 ("Opp.") at 3. Further, "[w]ells are 'onsite' or 'offsite' in relation to remediation, not property boundaries." *Id.*, at 4; Declaration of D. Bolin, June 3, 2009 ("Bolin Decl."), ¶ 4 ("The term 'site' . . . does not mean the boundaries of the property where a release occurred"). Without explaining his diametrically opposed Rule 30(b)(6) testimony, Mr. Bolin dismisses MTBE detections in wells "outside the boundaries of property" (his definition of "off-site" last year) as "not off-site." Reply 56.1 ¶¶ 3, 7, 13, 21, 23, 29, 45, 47, 65. Today, he purports to classify wells as "onsite" and "off-site" depending on whether they "appear" to him to be "associated with the core remedial activities at [the] station." *E.g.*, Bolin Decl., ¶¶ 10, 12, 14, *et seq.* Only MTBE detections fitting this definition, he claims, are evidence that MTBE has "escaped." *Id.*

---

[5] This testimony reiterated the District's long-standing (but erroneous) position that only it, and not the Regional Board, is able to obtain access to offsite properties. In fact, the Regional Board's authority to gain access to offsite properties using a "warrant" procedure provides much quicker and easier access than filing an eminent domain lawsuit, the sole authority available to the District. Cal. Water Code §13304(b); *see* Cal. Civ. Proc. Code §§1822.50-1822.60 (procedure for obtaining warrant).

Fundamentally, long-established law precludes the District from avoiding summary judgment by submitting a declaration contradicting its prior deposition testimony. *Cleveland v Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999) ("a party cannot create a genuine issue of fact . . . to survive summary judgment simply by contradicting his . . . own previous sworn statement"); *see Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969). Such contradictions go beyond Mr. Bolin's purported reclassification of wells outside the station property as "not offsite." During deposition testimony last year, Mr. Bolin or other Rule 30(b)(6) deponents frequently cited the same monitoring wells that defendants used in their May 2009 brief to apply the District's accrual criteria as evidence that MTBE had moved "offsite" and thereby "escaped" remedial efforts.[6] *E.g.*, Reply 56.1 ¶¶ 3, 10, 12, 13, 23, 40, 42-44, 51, 57, 63, 64. Such admissions bar the District from again "gerrymandering" its claims to avoid the statute of limitations. Defendants' Reply 56.1 statement reviews the District's admissions and other undisputed facts requiring that its claims at particular stations be dismissed.

In addition, the District's new-found accrual position fails as a matter of law. This purported analysis turns on whether particular off-property wells are, or are not, deemed by the District's declarant to be "associated with core remedial activities" at a station. Bolin Decl. ¶ 4; *see e.g., id.* ¶¶ 10, 12, 14, *et seq.*; *see also* Opp. at 2-4. If a well *is* considered to be "associated with core remedial activities," no MTBE detection in that well (regardless of timing or

---

[6] The District's opposition repeats language in its initial February 6, 2009 letter, which described its first accrual criterion as triggered by an MTBE detection in an "off-site monitoring well" that is "not part of central remediation efforts . . . ." *E.g.*, Opp. at 2-3. But, when defendants questioned this vague language, the District abandoned it and, in its February 23, 2009 Pre-Conference Letter, restated this criterion as "the date on which *MTBE was first detected at off-site monitoring wells at levels indicating that MTBE had escaped* [*i.e.*, above the 5 ppb MCL]." Further Supp'l Declaration of James J. Finsten, May 4, 2009 ("Further Supp'l Finsten Decl."), Ex. 4; *see also id.*, Ex. 3 (Feb. 17, 2009 Letter to J. Anderson) (accrual dates based on "the dates on which *MTBE was first detected in off-site monitoring wells at levels suggesting MTBE had escaped remedial efforts*"). The District is bound by its subsequent statements, including its Pre-Conference Letter to the Court.

magnitude) purportedly provides evidence that "MTBE has escaped." If, however, a well is *not* considered to be "associated with core remedial activities," any MTBE detection above 5ppb (or, in some cases, even below 5 ppb) demonstrates that MTBE has "escaped," even a single detection that is never repeated.

Undisputed facts demonstrate that these classifications are arbitrary and unsupported. Certainly, Mr. Bolin, the District's declarant, identifies no adequate or meaningful basis supporting this purported distinction between wells "associated" or "not associated" with "core remedial activities" or his use of this distinction to classify particular wells at stations.[7]

Remediation activities are governed by authoritative regulatory guidance documents. Declaration of Margaret R. Eggers ("Eggers Decl.") ¶ 5; Further Supp'l Finsten Decl., Ex. 1 (State Water Res. Control Bd., Resolution No. 92-49). Such documents spell out in objective terms the central (or "core") activities conducted when a release occurs, which include "site assessment," "[s]oil and water investigation," development and implementation of "preferred cleanup and abatement alternatives" and "monitoring" of the "short- and long-term effectiveness of cleanup and abatement." Further Supp'l Finsten Decl., Ex. 1 at II.A.1. Under such guidance, the installation of *any* monitoring well under agency directives, wherever placed, implements several "core remedial activities" -- by supplying information for "site assessment," evaluation of "abatement alternatives," and "monitoring" of the "short- and long-term effectiveness" of ongoing treatment methods. Importantly, California regulators often require changed or new remediation steps years after an initial remediation plan is adopted when new information is

---

[7] *See Major League Baseball Prop., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008) ("An expert's opinions that are without factual basis and are based on speculation or conjecture are . . . inappropriate material for consideration on a motion for summary judgment"). Notably, in his deposition last year, Mr. Bolin testified on literally *dozens* of occasions that he is "not an expert in remediation," "remedial technologies," or "fate and transport analyses." Reply 56.1, ¶ 2.

obtained. Eggers Decl. ¶ 8; Reply 56.1 ¶¶ 3, 12, 15, 24, 42, 56. Given the remedial process described in agency documents, no well can be singled out as not "associated with core remedial activities."

Mr. Bolin offers no objective definition or explanation that anyone besides himself could apply to determine whether a well is (or is not) "associated with core remedial activities." Ultimately, his classifications boil down to his assumption or belief as to whether a well "appears" to have been "placed to characterize a plume for potential remediation" or, instead, allegedly was "placed to detect MTBE escaping remediation." Bolin Decl., ¶¶ 6, 9. Mr. Bolin, of course, had no involvement in remedial efforts at any station at issue; his attempt to classify individual wells is speculative and ignores the remedial process prescribed in agency documents.[8]

Mr. Bolin, moreover, concedes that monitoring wells used to "characterize" or delineate the size and location of an MTBE plume *are* part of "core remedial activities" under his definition. Bolin Decl., ¶¶ 4, 9. Citing this conclusion, he rejects numerous off-property wells relied on by defendants as purportedly *not* "off-site." *Id.*, ¶ 16 (G&M Oil #4), ¶ 24 (Mobil #18-HDR; well MW-7 that is "150 feet downgradient" not "off-site" because it was installed "to characterize the plume as part of remediation"), ¶ 25 (Mobil #18-JMY), ¶31 (Unocal #7470; well B-12 that is "160 feet downgradient" not "off-site" because it was installed "to characterize the plume as part of remediation"), ¶ 38 (Beacon Bay Car Wash). But exactly the same is true of each of the off-property wells cited by Mr. Bolin as purportedly *not* associated with "core remedial activities." As defendants demonstrate, such wells carry out the "core remedial" purpose of characterizing or delineating the size and location of an MTBE plume, thereby

---

[8] Under undisputed agency guidance documents, any well installed in connection with a particular station is meant to gather information to assist in decisions as to what remedial steps are needed and whether the abatement approach already in place may require modification. *See* Eggers Decl. ¶¶ 6-8. As such, no well is placed to "detect MTBE escaping remediation."

guiding decisions on how best to conduct cleanup.[9] Eggers Decl. ¶¶ 4, 6-7; *E.g.*, Reply 56.1 ¶¶ 3, 6, 24 (citing defendant declarations).

Also, having abandoned its claim that the Regional Board cannot remediate MTBE located off-property, the District lacks any meaningful basis to assert that MTBE at particular sites has "escaped" regulators' authority. While Mr. Bolin often asserts that the "most recent remediation" reports for a station do not show that "further efforts" to remediate MTBE are "underway or anticipated," this claim in no way shows that MTBE has "escaped." Under Porter-Cologne Act provisions and State Board guidance, the Regional Boards are authorized to "require complete cleanup . . . [and] restoration of affected water to background conditions." Supp'l Finsten Decl. Ex. 1. Such remediation is not "static" or limited to remedial steps ongoing at any particular time. *E.g.*, *New Mexico v. Gen. Elec. Co.*, 322 F. Supp. 2d 1237, 1271 (D.N.M. 2004) (agency remediation is a "dynamic system" subject to "adjustment" as new information develops); *see* Reply 56.1 ¶¶ 3, 12, 15, 24, 42, 56 (citing defendant declarations). If MTBE reaches production wells, regulators can issue "cleanup and abatement" orders requiring responsible parties to provide "wellhead treatment" or "replacement water service." Cal. Water Code § 13304(a).

In the end, Mr. Bolin's ad hoc rationalizations, based on arbitrary and shifting

---

[9] Mr. Bolin's classification of particular wells is self-evidently result-driven and arbitrary. He rejects numerous off-property wells relied on by defendants as "too close" to the station (including wells as much as **50 feet** (¶37, ARCO #3085; ¶46, Unocal #5123), **65 feet** (¶16, G&M Oil #4; ¶ 24, Mobil #18-HDR; ¶ 31, Unocal #7470), **100 feet** (¶ 29, Thrifty #008) or **160 feet** (¶ 31, Unocal #7470) from the station) or too "shallow." Yet, wells that he classifies as *not* associated with "core remedial activities" are far closer and extremely shallow. *E.g.*, MW-6S at Mobil #18-G6B (only **1-2 feet** outside the property and only 5-25 feet deep), MW-13i at Exxon 7-4283 (approximately **14 feet** outside the property and in the adjacent street), MW-22 at Unocal #5356 (approximately **35 feet** outside the property and only 4-24 feet deep), MW-14 at Mobil #18-HEP (approximately **55 feet** outside the property and only 5-20 feet deep). Reply 56.1 ¶¶ 2, 6, 27, 38. In some wells cited by Mr. Bolin, MTBE was detected only once, sometimes at or even below 5 ppb, with years of non-detect sampling after the single detection.

assumptions and unexplained distinctions, cannot provide the "clear accrual date" required by California law "so that each party . . . knows when the time to bring suit runs out." *Cal. Dept. of Toxic Substances Control v. Neville Chem. Co.*, 358 F.3d 661, 666 (9th Cir. 2004). The law permits no such result. Defendants' May 4, 2009 Brief at 16-18 (citing, *e.g.*, *BellSouth Telecomm. v. W.R. Grace & Co.*, 77 F.3d 603, 613-14 (2d Cir. 1996)).

## III. THE DISCOVERY RULE OR CONTINUING TORT DOCTRINE CANNOT SALVAGE THE DISTRICT'S CLAIMS.

With respect to the discovery rule, the District's opposition consists largely of a verbatim recital of points in prior briefing, which requires no response. As the Court's December 2006 opinion noted, a plaintiff "'need not be aware of the specific 'facts' necessary to establish the claim,' and once a plaintiff 'has a suspicion of wrongdoing' it will be deemed to have discovered its injury." *Limitations Op.*, 475 F. Supp. 2d at 292 (quoting *Jolly v. Ely Lilly & Co.*, 44 Cal. 3d 1103, 1111 (1988)). Moreover, a plaintiff is charged with both "actual knowledge" and "knowledge that could reasonably be discovered through the investigation of sources open to" him. *Id.* at 291-92. (quoting *County of Santa Clara*, 137 Cal. App. 4th at 317). These points dispose of the District's sole new point.[10]

The District argues that, because the Regional Board and other agencies regulate "thousands" of sites, the District "does not, and cannot, monitor" the "voluminous files" of these agencies. Opp. at 20. But the District itself chose to initiate a lawsuit addressing hundreds of

---

[10] The District cites CERCLA § 9658 as allegedly setting forth a "federal discovery rule." This section, however, merely defers a plaintiff's discovery of claims attributable to a "hazardous substance" until he "knew (or reasonably should have known)" that his harm was caused by this substance. 42 U.S.C. § 9658. This rule is substantially similar to the California rule. *See Vill. of Milford v. K-H Holding Corp.*, 390 F.3d 926, 932 (6th Cir. 2004) (CERCLA's commencement date occurs when plaintiff "knew or should have known of his potential cause of action against the defendant" and is "functionally identical" with Michigan's discovery rule); *Seneca Meadows Inc. v. ECI Liquidating, Inc.*, 983 F. Supp. 360, 364 (W.D.N.Y. 1997) (plaintiff need only know "the fact of the contamination" and not the responsible parties).

stations and, having done so, cannot complain of the burden to comply with California's discovery rule. *See Limitations Op.*, 475 F. Supp. 2d at 292 ("So long as suspicion exists, it is clear that the plaintiff must go find the facts") (quoting *County of Santa Clara*, 137 Cal. App. 4th at 317). This is particularly true because, before May 6, 2000, the District received periodic updates of MTBE detections in its territory from the Regional Board. *Id.* at 294 & n.46.

With respect to the "continuing tort" doctrine, the District postulates that post-May 6, 2000 MTBE releases might not be subject to the statute of limitations but nowhere identifies such releases. Tellingly, *all* of the District's recently-disclosed accrual dates rest on post-May 6, 2000 MTBE *detections*, not evidence of any post-May 6, 2000 *release*. The District also repeats its request for reconsideration of the Court's holding that, with respect to the Santa Ana River, the District "suffered an injury prior to the limitations date." *Id.* at 298-99. The Court's ruling rests on ample proof of pre-May 6, 2000 detections in the River and, while the District suggests that post-May 6, 2000 MTBE detections in the River may have resulted from "new releases," it submits no evidence to support this claim. Defendants' May 4, 2009 Brief at 24, n.20.

## Conclusion

For the foregoing reasons, defendants' motion should be granted in all respects.

Dated: June 18, 2009.

Respectfully submitted,

ARNOLD & PORTER LLP

By: s/ *[signature]*
Matthew T. Heartney (MH 3737)
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017 (213) 243-4000
Matthew_Heartney@aporter.com

Attorneys for Defendants Atlantic Richfield Company, and BP Products North America Inc. and on behalf of each Defendant listed on Attachment A.

# ATTACHMENT A

**Defendants' Further Supplemental Reply Memorandum In Support Of Their Motion for Summary Judgment Based on the Statute of Limitations**
*Defendants Joining in Motion*

Atlantic Richfield Company
BP Products North America, Inc.
BP West Coast Products LLC
Chevron Texaco Corporation (n/k/a Chevron Corporation)
Chevron U.S.A. Inc. (individually and doing business as Chevron Products Co. and Chevron Chemical Co.)
CITGO Petroleum Corporation
ConocoPhillips Co., for itself and as successor-in-interest to Tosco Corporation
Exxon Mobil Corporation
ExxonMobil Oil Company
Lyondell Chemical Company
Moller Investment Group, Inc., formerly known as USA Gasoline Corporation
Shell Oil Company
Texaco Refining and Marketing Inc.
Tesoro Corporation (formerly Tesoro Petroleum Corporation)
Tesoro Refining and Marketing Company (erroneously named as Tesoro Refining and Marketing Company, Inc.)
Ultramar Inc.
Union Oil Company of California
Unocal Corporation
Valero Marketing and Supply Company
Valero Refining Company-California