| | | | |
|---|---|---|---|
| | | | remediation," "remedial technologies," or "fate and transport analysis." (See discussion in ¶ 2 above.) |
| Exxon #3738 17474 Brookhurst St. Fountain Valley | 31. MTBE was not detected in well NB-DOLD on August 4, 2000. However MTBE was allegedly detected in well NB-DOLD on August 2, 2005 at 0.04 ppb. (Costley 2009 Decl. Ex. 1D.)<br><br>Prior to May 6, 2000, MTBE was detected at this station in on-site monitoring wells from at least July 5, 1996, at levels up to 26,000 ppb. (*Id.*; Sartoris 2006 Decl. Ex. 15.) Moreover, the USTs were removed and the station closed in 1992. A Bank of America Drive Through Automated Teller Machine was constructed at the site in 1999 and remains in operation. (EXMO_3738_011825-28.) | 31. Mr. Costley's accrual date is based solely on detections of MTBE in monitoring wells that are "on site" under even Mr. Costley's definition of that term. *See* Costley Decl., Ex. 1D. Levels of contamination reflected in the monitoring well data cited by Mr. Costley are consistent with core remedial activities at almost any site. Because these wells are part of the remedial activities, they do not provide any indication as to whether MTBE has escaped remediation at this station. The most recent remediation reports for the Exxon #3738 site do not indicate that further efforts to define the plume or expand the area of remediation are underway or anticipated. Therefore, in my opinion, the first real hydrogeologic evidence that MTBE had escaped was when MTBE had been detected in the production well associated with Plume 6. (Bolin Decl., ¶ 34.) | 31. Mr. Bolin testified that an MTBE detection in a monitoring well "near the site boundary... indicate[s] there is off-site contamination." (Bolin Dep. 357:4-16.)<br><br>Mr. Bolin is mistaken in claiming that there are no "further efforts to define the plume or expand the area of remediation ... underway or anticipated." (Bolin Decl. ¶ 34) Documents produced in the litigation reveal continuing assessment activities by ExxonMobil and the Orange County Health Care Agency with regard to this station. (Finsten 2009 Reply Decl. ¶ 7, Ex. 6.)<br><br>Although Mr. Bolin purports to offer his "opinion as a hydrogeologist with extensive experience in remediation," he testified during his deposition that he is "not an expert in remediation," "remedial technologies," or "fate and transport analysis." (See discussion in ¶ 2 above.) |
| **PLUME NO. 7** **A-29** | 32. Plume 7 was previously addressed in the 2008 round of supplemental briefing, and Defendants' undisputed facts supporting their position regarding this plume can be found in their 56.1 statement submitted in that briefing at ¶¶ 43-47. In ¶¶ 43-44 | 32. From October 1995 until August 1997, A-29 had eight detections of MTBE ranging from 4.30 ppb to 1.00 ppb. (Bolin Decl., Ex. 16, Plaintiff Orange County Water District's Second Supplemental Responses | 32. The District's second accrual criteria states that accrual occurs when MTBE is detected in a production well associated with the plume *at any level*. In applying this criterion to other Plumes, the District relies on purported MTBE |

| | | | |
|---|---|---|---|
| 100 N. Beach | therein, the District acknowledged the detections in A-29 prior to May 6, 2000 as detailed below.

MTBE was not detected in well A-29 on December 14, 2005 (the District's accrual date for stations in plume 7), but instead was detected in well A-29 on October 4, 2005 by the District's litigation consultant, Friedman & Bruya, at 0.09 ppb. (Pl.'s Second Supp. Responses to Defs.' Preliminary Interrogatories re Standing (May 2, 2008) at Ex. 1A ("Friedman & Bruya Detections").) Since May 2000, testing by the District's laboratory was "ND" (non-detect) for MTBE on each of the 30 occasions this well was sampled. (Finsten 2009 Decl. Ex. 7 (Data for MTBE testing in well A-29.))

MTBE was first detected in well A-29 on October 21, 1995 at 3.7 ppb, and was detected in well A-29 on seven more occasions prior to May 6, 2000, always at or above 1 ppb. (Pl.'s Second Supp. Responses to Defs.' Preliminary Interrogatories re Standing (May 2, 2008) at Ex. 1A ("Water Supply Wells").) Due to these detections, the City of Anaheim shut down well A-29 for some period of time between 1996 and 1999. (Bolin 2008 Supp. Decl. ¶ 11; Sartoris 2006 Decl. Ex. 2 at 6; Ex. 6 at 850:13-851:9.) | to Defendants Preliminary Interrogatories re Standing at Ex. 1A "Water Supply Wells".) None of these MTBE detections exceeded any regulatory limits in place at that time. Specifically, in 1991 the State of California set an Action Level of 35 ppb for MTBE, and the Action Level was the only regulatory limit for MTBE until the Secondary Maximum Contaminant Level of 5 ppb was set in 1999. MTBE was not detected in A-29 from August 1997 until October 2005 when MTBE was again detected at 0.09 ppb. The MTBE detections in A-29 from 1995 to 1997 were also below the 15 to 45 ppb range that the District understood to be the taste and odor threshold for MTBE in drinking water at the time. (Bolin Decl., ¶ 36.) | detections that are up to 100 times lower that any existing regulatory limit (*i.e.*, California's 5 ppb secondary MCL). Thus, the District relies on purported detections of .12 ppb (Plume 1), .08 ppb (Plume 2), .13 ppb (Plume 4), .04 ppb (Plume 6) and .07 ppb (Plume 7). Its reliance on these miniscule detections rests on its assertion that "[w]hen MTBE is detected in a drinking water well . . . there is no doubt that MTBE has escaped remediation." (Pl's Supp. Opp. Re Statute of Limitations (Mar. 28, 2008), at 17. Applying the same logic, the far more substantial MTBE detections in well A-29 before May 6, 2000 establish accrual for purposes of the District's own criterion. |
| Arco #1994
100 N. Beach | 33. MTBE was not detected in well A-29 on December | 33. Mr. Costley cites sporadic detections from | 33. See ¶ 32 *supra* for discussion of pre-May 6, |

| Blvd. Anaheim | 14, 2005. However, MTBE was detected in well A-29 on October 9, 2005 at 0.09 ppb. (Costley 2009 Decl. Ex. 1C.)  Prior to May 6, 2000, MTBE was detected in A-29 beginning on October 12, 1995 at 3.7 ppb. See ¶ 32 *supra*.  MTBE has never been detected in groundwater at this station. However, MTBE was detected in on-site soil monitoring from at least November 18, 1998. (*See* Finsten 2008 Supp. Decl. Ex 27.) | 1995 to 1997 of low levels of MTBE in production City of Anaheim Well A-29 prior to May 6, 2000, to assert that the District's claims are time-barred for these stations. *See* Costley Decl., Ex. 1C. From October 1995 until August 1997, A-29 had eight detections of MTBE ranging from 4.30 ppb to 1.00 ppb. (Bolin Decl., Ex. 16, Plaintiff Orange County Water District's Second Supplemental Responses to Defendants Preliminary Interrogatories re Standing at Ex. 1A "Water Supply Wells".) None of these MTBE detections exceeded any regulatory limits in place at that time. Specifically, in 1991 the State of California set an Action Level of 35 ppb for MTBE, and the Action Level was the only regulatory limit for MTBE until the Secondary Maximum Contaminant Level of 5 ppb was set in 1999. MTBE was not detected in A-29 from August 1997 until October 2005 when MTBE was again detected at 0.09 ppb. The MTBE detections in A-29 from 1995 to 1997 were also below the 15 to 45 ppb range that the District understood to be the taste and odor threshold for MTBE in drinking water at the time. (Bolin Decl., ¶ | 2000 MTBE detections in well A-29.  Mr. Bolin asserts that MTBE was not detected in groundwater at ARCO #1994 "because the environmental consultant never sampled groundwater for MTBE." While no sampling was made of the groundwater, repeated soil sampling found no MTBE present below 20 feet below ground surface in a location at which groundwater is not present until at least 85 feet below ground surface. Mr. Bolin himself testified that he had "not seen any data indicating a detection of MTBE below 20 feet." (Bolin Dep. 772:16-773-6; 780:7-781:5.) Mr. Bolin's implication that MTBE would have been detected if groundwater had been sampled is speculative and without any factual basis.  Although Mr. Bolin purports to offer his "opinion as a hydrogeologist with extensive experience in remediation," he testified during his deposition that he is "not an expert in remediation," "remedial technologies," or "fate and transport analysis." (See discussion in ¶ 2 above.) |

| | | 36.)  MTBE was never detected in groundwater at Arco #1994 because the environmental consultant never sampled groundwater for MTBE at this site. (Bolin Decl., ¶ 36.) | |
|---|---|---|---|
| Unocal #5869 South State College Blvd. Anaheim | 34. MTBE was not detected in well A-29 on December 14, 2005. However, MTBE was detected in well A-29 on October 9, 2005 at 0.09 ppb. (Costley 2009 Decl. Ex. 1C.)  Prior to May 6, 2000, MTBE was detected in A-29 beginning on October 12, 1995 at 3.7 ppb. *See* ¶ 32 *supra*.  Also prior to May 6, 2000, MTBE was detected at this station in on-site monitoring wells from at least August 6, 1996, at 1,200 ppb. (OCWD-MTBE-001-028286.) | 34. Mr. Costley cites sporadic detections from 1995 to 1997 of low levels of MTBE in production City of Anaheim Well A-29 prior to May 6, 2000, to assert that the District's claims are time-barred for these stations. *See* Costley Decl., Ex. 1C. From October 1995 until August 1997, A-29 had eight detections of MTBE ranging from 4.30 ppb to 1.00 ppb. (Bolin Decl., Ex. 16, Plaintiff Orange County Water District's Second Supplemental Responses to Defendants Preliminary Interrogatories re Standing at Ex. 1A "Water Supply Wells".) None of these MTBE detections exceeded any regulatory limits in place at that time. Specifically, in 1991 the State of California set an Action Level of 35 ppb for MTBE, and the Action Level was the only regulatory limit for MTBE until the Secondary Maximum Contaminant Level of 5 ppb was set in 1999. MTBE was not detected | 34. See ¶ 32 *supra* for discussion of pre-May 6, 2000 MTBE detections in well A-29. |

- 43 -

| | | in A-29 from August 1997 until October 2005 when MTBE was again detected at 0.09 ppb. The MTBE detections in A-29 from 1995 to 1997 were also below the 15 to 45 ppb range that the District understood to be the taste and odor threshold for MTBE in drinking water at the time. (Bolin Decl., ¶ 36.) | |
|---|---|---|---|
| **PLUME NO. 8**<br>IRWD-1<br>IRWD-4<br>IRWD-C8<br>IRWD-C9<br>SA-34 | 35. Plume 8 was previously addressed in the 2008 round of supplemental briefing, , and Defendants' undisputed facts supporting their position regarding this plume can be found in their 56.1 statement submitted in that briefing at ¶¶ 48-55. | 35. Defendants' prior response asserts that the lack of an MTBE detection in any wells designated for Plume 8 means that District has not yet suffered a cognizable injury. For purposes of statute of limitations, therefore, defendants concede that the District's claims with respect to Plume 8 are not time-barred.<br><br>2. Defendants' prior response also asserts that the District must prove that MTBE released at the Plume 8 station actually threatens the designated wells in order to sustain the District's claim. This argument is irrelevant for purposes of statute of limitations. | |
| G&M Oil #24<br>3301 Bristol St.<br>Santa Ana | 36. The MTBE detection in well MW-15 on which OCWD's date is based was at 630 ppb. (Costley 2009 | 36. Mr. Costley's accrual date is based solely on detections of MTBE in monitoring wells that are | 36. When deposed as the District's Rule 30(b)(6) representative last year, Mr. Bolin unequivocally defined |

- 44 -

| | | | |
|---|---|---|---|
| | Decl. Ex. 1D.)<br><br>Prior to May 6, 2000, MTBE was detected at this station in on-site monitoring wells from at least September 9, 1998, at 1,015,000 ppb. (*Id.*; Sartoris Decl. Ex. 15.) | "on site" under even Mr. Costley's definition of that term. *See* Costley Decl., Ex. 1D. Levels of contamination reflected in the monitoring well data cited by Mr. Costley are consistent with core remedial activities at almost any site. Because these wells are part of the remedial activities, they do not provide any indication as to whether MTBE has escaped remediation at this station. The most recent remediation reports for the G&M Oil #24 site do not indicate that further efforts to define the plume or expand the area of remediation are underway or anticipated. Therefore, in my opinion, the first real hydrogeologic evidence that MTBE had escaped was when MTBE had been detected in monitoring well MW-15. (Bolin Decl., ¶ 40.) | "off-site contamination" as "[d]etections of MTBE in a well outside the boundaries of the property." (Bolin Dep. 356:2-22; *see also id.* 1888:25-1890:3; 1933:12-1934:3.) Mr. Bolin also testified that an MTBE detection in a monitoring well "near the site boundary… indicate[s] there is off-site contamination." (*Id.* 357:4-16.)<br><br>Mr. Bolin identified a myriad of "off-site wells, wells outside the specific site boundary," with MTBE and/or TBA detections. (Bolin Dep. 1932:25-1934:6.) Bolin further relied on detections in these wells as the basis for his belief that contamination "has escaped remediation" at the station. (*Id.* 1934:7-21.)<br><br>Although Mr. Bolin purports to offer his "opinion as a hydrogeologist with extensive experience in remediation," he testified during his deposition that he is "not an expert in remediation," "remedial technologies," or "fate and transport analysis." (See discussion in ¶ 2 above.) |
| Beacon Bay Car Wash 1501 W. MacArthur Blvd. Santa Ana | 37. The MTBE detection in well MW-9 on which OCWD's date is based was at 18 ppb. (Costley 2009 Decl. Ex. 1A.)<br><br>Prior to May 6, 2000, MTBE was detected at this station in at least two offsite | 37. Mr. Costley cites to MW-8 and MW-7 at the Beacon Bay Car Wash station associated with Plume 8 as examples of where "off-site" wells showed detections of MTBE prior to May 6, 2000. *See* Costley Decl., | 37. When deposed as the District's Rule 30(b)(6) representative last year, Mr. Bolin unequivocally defined "off-site contamination" as "[d]etections of MTBE in a well outside the boundaries of the property." (Bolin Dep. 356:2-22; *see also id.* |

| HEP | monitoring wells at levels greater than the California Secondary MCL: MW-7 and MW-8, as follows:

MTBE was first detected in well MW-7 on September 26, 1996 at 23 ppb, and was detected in that monitoring well above the MCL during all but one quarterly monitoring event through May 6, 2000. (SARWQCB-MTBE-026490-91.) MTBE was first detected in MW-8 on June 25, 1996 at 7,200 ppb (the District's accrual date for this station in its February 6, 2009 letter) and was detected in that monitoring well during every quarterly monitoring event through May 6, 2000 with detections as high as 34,000 ppb. (*See* SARWQCB-MTBE-026492-93.) | Ex. 1A. MW-8 and MW-7, however, do not indicate that MTBE has escaped remediation at this site. Groundwater contour maps demonstrate that the shallow groundwater flow is principally to the Southwest at this station. (Bolin Decl., Ex. 18.) These wells are located 10 to 12 feet from the boundary of the site where the release occurred, are not downgradient from the MTBE source, and appear to have been installed as part of remedial efforts to characterize the plume. MW-9, on the other hand, is 45 feet from the property boundary, is the furthest downgradient well from the source, and had a detection of MTBE at 18 ppb in 2003. The most recent remediation reports for the Beacon Bay Car Wash, Santa Ana do not indicate that further efforts to define the plume are underway or anticipated. In my opinion as a hydrogeologist with extensive experience in remediation, this detection in MW-9 is the first real indication at this site that MTBE has escaped active remediation efforts and is threatening drinking water sources. (Bolin Decl., ¶ 38.) | 1888:25-1890:3; 1933:12-1934:3.) Mr. Bolin also testified that an MTBE detection in a monitoring well "near the site boundary... indicate[s] there is off-site contamination." (*Id.* 357:4-16.)

Although now asserting that detections in MW-7 and MW-8 "do not indicate that MTBE has escaped remediation at this site," (Bolin 2009 Decl. ¶ 38) Mr. Bolin testified at his deposition that contamination was "outside the site boundary. And by that I believe it's escaped the site." (Bolin Dep. 1953:7-9.) Mr. Bolin further testified that "contamination has escaped off site, in off-site wells, and …. It's outside the remedial reaches of ongoing activities at … the site and, therefore, has escaped remediation." (*Id.* 1954:1-6.)

Although Mr. Bolin purports to offer his "opinion as a hydrogeologist with extensive experience in remediation," he testified during his deposition that he is "not an expert in remediation," "remedial technologies," or "fate and transport analysis." (See discussion in ¶ 2 above. |
|---|---|---|---|
| Mobil #18-HEP | 38. The MTBE detection in well MW-14 on which | 38. Mr. Costley's accrual date is based | 38. Mr. Bolin testified that an MTBE detection in a |

| | | | |
|---|---|---|---|
| 2921 S. Bristol St. Santa Ana | OCWD's date is based was at 101 ppb. (Costley 2009 Decl. Ex. 1D.)<br><br>Prior to May 6, 2000, MTBE was detected at this station in on-site monitoring wells from August 5, 1999, at 67,000 ppb, and at 100,000 ppb on February 7, 2000. (OCWD-MTBE-001-252690.)<br><br>This site received a No Further Action letter on March 16, 2007 (EXMO_18HEP_013933.) OCWD was aware of the agency's intent to grant closure, and even received the letter from the agency notifying of the proposed closure before it occurred, but admittedly never protested or raised any objection whatsoever to site closure (Bolin Dep. 2093:23-2095:13, 2098:12-21; OCWD-MTBE-001-170744.) In 1998, USTs were removed and the site was an unpaved vacant lot from 1998-2003 (EXMO_18HEP_013936.) The District admitted that the tanks were removed in 1998, and indicated there was no evidence of a release of gasoline after that time. (Bolin Dep. 2111:21-2112:10.) The site was developed as a 76-branded station in 2004, after MTBE was ordered out of gasoline in California. (*See* 13 C.C.R. § 2261; OCWD-MTBE-001-252697.) | solely on detections of MTBE in monitoring wells that are "on site" under even Mr. Costley's definition of that term. *See* Costley Decl., Ex. 1D. Levels of contamination reflected in the monitoring well data cited by Mr. Costley are consistent with core remedial activities at almost any site. Because these wells are part of the remedial activities, they do not provide any indication as to whether MTBE has escaped remediation at this station. The most recent remediation reports for the Mobil #18-HEP site do not indicate that further efforts to define the plume or expand the area of remediation are underway or anticipated. Therefore, in my opinion, the first real hydrogeologic evidence that MTBE had escaped was when MTBE had been detected in monitoring well MW-14. (Bolin Decl., ¶ 41.)<br><br>The argument that the District did not object to the issuance of a 2007 No Further Action Letter to Mobil #18-HEP is irrelevant for purposes of statute of limitations as the issuance of an NFA letter is not one of the criteria required for the accrual of the District's claims. Moreover, the argument overlooks the fact that the District has already taken action with | monitoring well "near the site boundary... indicate[s] there is off-site contamination." (Bolin Dep. 357:4-16.)<br><br>Mr. Bolin rejects numerous off-property wells relied on by defendants as "too close" to the station or "too shallow." *E.g.*, Bolin Decl. ¶ 37 (ARCO 3585, 50 feet from station), ¶ 46 (Unocal #5123, 50 feet from station), ¶ 16 (G&M Oil # 4, 65 feet from station), ¶ 24 (Mobil #18-HDR, 65 feet from station), ¶ 31 (Unocal #7470, 65 feet from station), ¶ 29 (Thrifty #008, 100 feet from station), ¶ 31 (Unocal #7470, 160 feet from station). Yet, for the present station, he opines that MTBE detected in MW-14 represents "real hydrogeological evidence that MTBE had escaped" although this well is located approximately 55 feet outside the property and is only 5-20 feet deep. (Finsten 2009 Reply Decl. ¶ 8 Ex. 7.)<br><br>Mr. Bolin does not dispute that this site received a No Further Action letter on March 16, 2007, and does not dispute that OCWD never objected to site closure. (Bolin Dep. 2093:23-2095:13, 2098:12-21.) Similarly, Bolin does not dispute that the tanks were removed in 1998, and indicated there was no evidence of a release of gasoline after that time. (Bolin Dep. 2111:21-2112:10.) |

| | | respect to the Mobil #18-HEP by hiring environmental consultants to undertake a preliminary assessment of this station. (Bolin Decl., ¶ 41.) | Although Mr. Bolin purports to offer his "opinion as a hydrogeologist with extensive experience in remediation," he testified during his deposition that he is "not an expert in remediation," "remedial technologies," or "fate and transport analysis." (See discussion in ¶ 2 above.) |
|---|---|---|---|
| Chevron #9-1921 3801 S. Bristol St. Santa Ana | 39. The TBA detection in well MW-13 on which OCWD's date is based was at 41 ppb. (Costley 2009 Decl. Ex. 1A.)<br><br>Prior to May 6, 2000, MTBE was detected at this station in at least four offsite monitoring wells at levels greater than the California Secondary MCL: MW-10, MW-11, MW-14, and MW-16 as follows:<br><br>MTBE was first detected in MW-10 on July 23, 1996 at 11 ppb, and in nine subsequent testing events through May 6, 2000, with a peak detection level of 40 ppb. (SARWQCB-MTBE-004582-83.) MTBE was detected at well MW-11 on April 17, 2000 at 178 ppb (SARWQCB-MTBE-004584), and at MW-16 on June 2, 1999, at 36 ppb (SARWQCB-MTBE-004590). MTBE was detected at MW-14 beginning on July 23, 1996 at 300 ppb, and in fourteen subsequent testing events, with a peak detection of 3,460 ppb. (SARWQCB-MTBE-004587-88.) | 39. Mr. Costley cites MW-10, MW-11, MW-14, and MW-16 at the Chevron #1921 station associated with Plume 8 as examples of where "off-site" wells showed detections of MTBE prior to May 6, 2000. See Costley Decl., Ex. 1A. These wells, however, do not indicate that MTBE has escaped remediation at this site. Groundwater contour maps demonstrate that the shallow groundwater flow is principally to the South and West at this station. (Bolin Decl., Ex. 19.) MW-10 and MW-11 are not downgradient from the release site, and MW-14 is located fairly close to the station at a maximum of 1 foot to the South-West of the station. MW-16 is not directly downgradient and is located fairly close to the station at approximately 60 feet from the release, but this well is not the furthest downgradient monitoring wells associated with remediation at the | 39. When deposed as the District's Rule 30(b)(6) representative last year, Mr. Bolin unequivocally defined "off-site contamination" as "[d]etections of MTBE in a well outside the boundaries of the property." (Bolin Dep. 356:2-22; see also id. 1888:25-1890:3; 1933:12-1934:3.) Mr. Bolin also testified that an MTBE detection in a monitoring well "near the site boundary... indicate[s] there is off-site contamination." (Id. 357:4-16.)<br><br>Although now asserting that detections in MW-10, MW-11, MW-14, and MW-16 "do not indicate that MTBE has escaped remediation at this site," (Bolin 2009 Decl. ¶ 39) Mr. Bolin's notes prepared for his deposition stated, "**MW-14 is [the] farthest downgradient well from probable source (USTs),**" and that MW-13 (the well upon which he now bases accrual) is "not in [the] optimum position/screened interval." (Bolin Dep. 1830:4-13, Ex. 112 (emphasis in original). |

- 48 -

| | | | |
|---|---|---|---|
| | | Chevron #1921 station. Instead, MW-13 is located approximately 60 feet directly downgradient from the release site, is the furthest downgradient well and showed a TBA detection of 41 ppb in 2007. The most recent remediation reports for the Chevron #1921 do not indicate that further efforts to define the plume are underway or anticipated. In my opinion as a hydrogeologist with extensive experience in remediation, this detection in MW-13 is the first real indication at this site that MTBE has escaped active remediation efforts and is threatening drinking water sources. (Bolin Decl., ¶ 39.) | Similarly, Mr. Bolin now asserts that "MW-10 and MW-11 are not downgradient from the release site," and that "MW-16 is not directly downgradient," (Bolin 2009 Decl. ¶ 39) however he identifies no other source that could explain the detection. Moreover, he notes that MW-16 and MW-13 are of equal distance from the release site, "approximately 60 feet." (Id.)<br><br>Mr. Bolin is mistaken in claiming that there are no "further efforts to define the plume or expand the area of remediation … underway or anticipated." (Bolin Decl. ¶ 17.) Consultants and/or regulators may determine that additional monitoring wells or different remediation is necessary, often many years after the last monitoring well was drilled. Where new information developed from one or more wells at the site indicates that an adjustment to the remediation measures should be made, appropriate action can be taken. (Molla Decl. ¶¶ 3-5, Ex.1.)<br><br>Although Mr. Bolin purports to offer his "opinion as a hydrogeologist with extensive experience in remediation," he testified during his deposition that he is "not an expert in remediation," "remedial technologies," or "fate and transport analysis." (See discussion in ¶ 2 above.) |

| | | | |
|---|---|---|---|
| Arco #3085 3361 S. Bristol St. Santa Ana | 40. The MTBE detection in well MW-5 on which OCWD's date is based was at 170 ppb. (Costley 2009 Decl. Ex. 1A.)<br><br>Prior to May 6, 2000, MTBE was detected at this station in at least two offsite monitoring wells at levels greater than the California Secondary MCL: MW-3 and MW-4 as follows:<br><br>MTBE was first detected in well MW-3 at a level of 38 ppb on June 12, 1998, and in all eight subsequent testing events prior to May 6, 2000, including at a level of 2,200 ppb on April 6, 2000. (OCWD-MTBE-001-249434.) MTBE was detected in well MW-4 at a level of 80 ppb on June 12, 1998, and in all eight subsequent testing events prior to May 6, 2000. (OCWD-MTBE-001-249435 - OCWD-MTBE-001-249436.) | 40. Mr. Costley cites MW-3 and MW-4 at the Arco #3085 station associated with Plume 8 as examples of where "off-site" wells showed detections of MTBE prior to May 6, 2000. *See* Costley Decl., Ex. 1A. These wells, however, do not indicate that MTBE has escaped remediation at this site. Groundwater contour maps demonstrate that the shallow groundwater flow is principally to the South to Southeast at this station. (Bolin Decl., Ex. 17.) MW-3 is not downgradient from the release site, and is located fairly close to the station at a maximum of 25 feet to the East of the station. MW-4 is located fairly close to the station at approximately 50 feet from the release. MW-5 is 130 feet directly downgradient from the release site, is the furthest downgradient well and showed an MTBE detection of 170 ppb in 2001. The most recent remediation reports for the Arco #3085 do not indicate that further efforts to define the plume are underway or anticipated. In my opinion as a hydrogeologist with extensive experience in remediation, this detection in MW-5 is the first real indication at | 40. When deposed as the District's Rule 30(b)(6) representative last year, Mr. Bolin unequivocally defined "off-site contamination" as "[d]etections of MTBE in a well outside the boundaries of the property." (Bolin Dep. 356:2-22; *see also id.* 1888:25-1890:3; 1933:12-1934:3.) Mr. Bolin also testified that an MTBE detection in a monitoring well "near the site boundary … indicate[s] there is off-site contamination." (*Id.* 357:4-16.)<br><br>Although now purporting to conclude that detections in monitoring wells installed off the station property (including MW-4, located 50 feet away from the station boundary) "do not indicate that MTBE has escaped remediation at this site," (Bolin 2009 Decl. ¶ 37), Mr. Bolin's notes prepared for his deposition identify MW-4 as not only as an "Off-site Well," but the "farthest south downgradient well." (Bolin Dep. 1988:8-1989:14, Ex. 134.) His notes also cite the June 1998 detection of MTBE in that well as evidence that the "plume already migrated past MW-4" by that time. (*Id.*) In his deposition, Mr. Bolin cited detections in " a number of off-site wells," including "MW-4 to the south of the site" as evidence that contamination "has escaped remediation." (*Id.* 2041:12- |

- 50 -

| | | | this site that MTBE has escaped active remediation efforts and is threatening drinking water sources. (Bolin Decl., ¶ 37.) | 2044:12.) Furthermore, while Bolin claims in his Declaration that MW-3 "is not downgradient from the release site," (Bolin 2009 Decl. ¶ 37) he identifies no other potential source that could explain the detection.<br><br>Mr. Bolin is mistaken in claiming that there are no "further efforts to define the plume or expand the area of remediation ... underway or anticipated." (Bolin Decl. ¶ 26.) At each stage in the remediation process, and whenever new information becomes available, BP, its consultants, and the regulators, evaluate what additional or different actions, if any may be required. (Fah Decl. ¶¶ 3-4.) When new information becomes available indicating that a modification to the remediation measures being taken at a site is called for, appropriate action will be taken at any stage in the process, even years after an initial remediation program is commenced. (*Id.* ¶¶ 4-5.) (See discussion of new remedial technology proposed in January 2009 at station ARCO # 1887, ¶ 3 above.)<br><br>Although Mr. Bolin purports to offer his "opinion as a hydrogeologist with extensive experience in remediation," he testified during his deposition that he is "not an expert in remediation," "remedial technologies," or "fate and |
|---|---|---|---|---|

| | | | |
|---|---|---|---|
| | | | transport analysis." (See discussion in ¶ 2 above.) |
| **PLUME NO. 9**<br>HB-1<br>HB-13<br>HB-14<br>HB-7 | 41. Plume 9 was previously addressed in the 2008 round of supplemental briefing, and Defendants' undisputed facts supporting their position regarding this plume can be found in their 56.1 statement submitted in that briefing at ¶¶ 56-66. In ¶ 57 therein, the District claimed that "MTBE has not yet been detected in" any production wells listed in plume 9. (Pl.'s 2008 Supp. L.R. 56.1 Statement ¶ 57, citing Bolin 2008 Supp. Decl. ¶ 13.)<br><br>Subsequently the District's employee and designated 30(b)(6) witness David Bolin claimed that an entry in the District's Laboratory Information Management System ("LIMS") database constituted a "first detection" of MTBE in well HB-13 on January 18, 2005, the District's accrual date for several stations in plume 9. (Bolin Dep. 254:16-256:8, Ex. 14; *Id.* 392:13-16.) Mr. Bolin interpreted an entry on that date of 0.17 ppb under the heading "Numeric Result" in the LIMS database as an MTBE detection in well HB-13, even though the LIMS database reports this sampling event as "ND" (non-detect) (Bolin Dep. 964:19-965:15, Ex. 49), and the sampling was reported to the well owner and general public as "non-detect." (Bolin Dep. 257:5-258:18; 373:19-378:16, Ex. 18.) Bolin acknowledged that the LIMS database is maintained | 41. Defendants' prior response asserts that the lack of an MTBE detection in any wells designated for Plume 9 means that District has not yet suffered a cognizable injury. For purposes of statute of limitations, therefore, defendants concede that the District's claims with respect to Plume 9 are not time-barred.<br><br>2. Defendants' prior response also asserts that the District must prove that MTBE released at the Plume 9 station actually threatens the designated wells in order to sustain the District's claim. This argument is irrelevant for purposes of statute of limitations.<br><br>Defendants' assert that low level MTBE results reported by the District's laboratory do not constitute a detection of MTBE in HB-13, one of the drinking water wells designated for Bellwether Plume 9. This argument overlooks the distinction between the significance of an MTBE detection in a public drinking water well for purposes of asserting claim rather than for the purpose of reporting water quality data to regulatory agencies. Mr. Fitzsimmons' testimony | 41. Defendants' briefing cited facts and testimony demonstrating that no actual detection of MTBE occurred in well HB-13, the purported detection giving rise to the District's accrual dates under its second criteria. The District's Rule 56.1 statement attempts to argue with these facts, but offers no additional facts that could provide a basis to conclude that the "raw data" (in the words of the District's laboratory director) from the sampling of well HB-13 in fact constitute a detection of MTBE. Importantly, Mr. Bolin's declaration nowhere addresses the points asserted in the District's 56.1 statement, leaving them wholly without any support.<br><br>Portions of the District's 56.1 statement appear to concede that the District's claims with respect to the Plume 9 stations are not ripe. If so, the District's claims with respect to these stations should be dismissed from the case. |

| | | | |
|---|---|---|---|
| | by the District's laboratory, that he does not have "access to the LIMS system" and is not familiar with the reporting protocols used for the database, and that he did not consult the District's laboratory in interpreting this entry as an MTBE "detection." (*Id.* 392:22-23; 257:5-260:7; 983:20-985:7; 997:19-998:8.)<br><br>Recently, the District's laboratory director, Steven Fitzsimmons, confirmed that the January 18, 2005 sampling was not a "first time hit" of MTBE for well HB-13. (Finsten 2009 Decl. Ex. 12 (Deposition of Steve Fitzsimmons (rough) 59:24-60:1, 62:15-63:18, 65:2-5).) The entry cited by Mr. Bolin represents "raw data" from the lab's instruments, and did not satisfy requirements for data to be reported. (*Id.* 48:12-49:12, Ex. 20; 54:12-18; 55:12-14.) | goes to the sufficiency of the data for purposes of reporting to a regulatory agency. Nonetheless, defendants' contention that MTBE has not been detected in HB-13 operates as an admission that the District's claims with respect to HB-13 and associated Plume 9 stations are not time-barred. | |
| Chevron #9-5401<br>5992 Westminster Ave.<br>Westminster | 42. MTBE was not detected in well HB-13 on the District's purported date of accrual. (Costley 2009 Decl. Ex. 1D; *see also* ¶ 41 *supra*.) HB-13 was not tested for MTBE until January 2002. (OCWD-MTBE-001-188803; OCWD-MTBE-001-188808.)<br><br>Prior to May 6, 2000, MTBE was detected at this station in on-site monitoring wells from at least June 13, 1997, at 65,000 ppb. (Costley 2009 Decl. Ex. 1D.) | 42. Mr. Costley's accrual date is based solely on detections of MTBE in monitoring wells that are "on site" under even Mr. Costley's definition of that term. *See* Costley Decl., Ex. 1D. Levels of contamination reflected in the monitoring well data cited by Mr. Costley are consistent with core remedial activities at almost any site. Because these wells are part of the remedial activities, they do not provide any indication as to whether MTBE has escaped | 42. As discussed in ¶ 41 *supra*, the District offers no evidentiary basis to support its claim that MTBE was actually detected in well HB-13. Under the District's position, therefore, its claims at this station have never accrued, and should now be dismissed from its lawsuit.<br><br>Mr. Bolin testified that an MTBE detection in a monitoring well "near the site boundary… indicate[s] there is off-site contamination." (Bolin Dep. 357:4-16.) |