| | | |
|---|---|---|
| | on-site monitoring wells from at least May 11, 1998 at 19,000 ppb. (*See* OCWD-MTBE-001-268681.) | almost any site. Because these wells are part of the remedial activities, they do not provide any indication as to whether MTBE has escaped remediation at this station. The most recent remediation reports for the Unocal #5792 do not indicate that further efforts to define the plume or expand the area of remediation are underway or anticipated. Therefore, in my opinion, the first real hydrogeologic evidence that MTBE had escaped was when MTBE had been detected in the production well associated with this plume. (Bolin Decl., ¶ 54.) | site boundary... indicate[s] there is off-site contamination." (Bolin Dep. 357:4-16.)

Mr. Bolin is mistaken in claiming that there are no "further efforts to define the plume or expand the area of remediation ... underway or anticipated" at this station. (Bolin Decl. ¶ 54.) Whenever new information becomes available during the remediation process, consultants and/or regulators evaluate what additional or different investigation or remedial actions, if any, are required. (London Decl. ¶ 4.) In this way, appropriate action can and has been taken at any stage in the remediation process leading up to final case closure. (London Decl. ¶ 6.) At this station, an amended Corrective Action Plan was submitted in March 2009 to enhance the existing remediation system (operating since 2005) with the installation of additional ozone sparging wells. (London Decl. ¶ 5.) This change in strategy was based in part on evaluation of the ongoing groundwater data collected at the site. (*Id.*)

Although Mr. Bolin purports to offer his "opinion as a hydrogeologist with extensive experience in remediation," he testified during his deposition that he is "not an expert in remediation," "remedial technologies," or "fate and |

| | | | |
|---|---|---|---|
| | | | transport analysis." (See discussion in ¶ 2 above.) |
| Unocal #4727 3501 Cerritos Los Alamitos | 57.  The District contends that its claims at this station are not ripe (Costley 2009 Decl. Ex. 1E.)<br><br>Prior to May 6, 2000, MTBE was detected at this station in an at least two offsite monitoring wells at levels greater than the California Secondary MCL: RMC-6 and RMC-7, as follows:<br><br>MTBE was first detected in wells RMC-6 and RMC-7 on May 29, 1996, and was subsequently detected intermittently at RMC-6 and continuously at RMC-7 through May 6, 2000. (OCWD-MTBE-001-268651-268653.)  The peak detection at RMC-6 was 46 ppb (OCWD-MTBE-001-268652) and the peak detection at RMC-7 was 80,000 ppb. (OCWD-MTBE-001-268653.) | 57.  Exhibit 1E to Mr. Costley's Declaration identifies five stations at which the District concluded that its claims were not ripe.  Mr. Costley identifies "off-site" wells with pre-May 6, 2000, MTBE detections above 5 ppb, but does not address the fact that the District's injury does not accrue unless and until there is evidence *both* that MTBE has escaped remediation *and* that the escaped MTBE has contaminated or threatens to contaminate drinking water.  The District's conclusion that its claims with respect to stations listed in Costley Exhibit 1E are not ripe was based upon absence of current evidence that MTBE released from these stations has contaminated or threatens to contaminate drinking water.  Mr. Costley simply does not address this necessary element of a claim by the District.  (Bolin Decl., ¶ 13.) | 57.  *See* discussion of the District's accrual criteria in ¶ 53 *supra*.<br><br>Mr. Bolin's present declaration concludes that there is an "absence of current evidence that MTBE released from [Unocal #4727] has contaminated or threatens to contaminate drinking water." (Bolin 2009 Decl. ¶ 13.)  However, in his deposition last year, Mr. Bolin testified that he "believe[d] that the [drinking water] wells that are in proximity to [Unocal # 4727] are threatened, insofar that there's been a release of MTBE and TBA into groundwater from the site.  It's -- it's escaped the site.  It's moved off site. And it -- there is potential for being captured by one or more of the [drinking water] wells." (Bolin Dep. 4456:12-4457:5.)<br><br>Although Mr. Bolin purports to offer his "opinion as a hydrogeologist with extensive experience in remediation," he testified during his deposition that he is "not an expert in remediation," "remedial technologies," or "fate and transport analysis." (See discussion in ¶ 2 above.) |
| **DEFS.' PLUME NO. 2** | 58.  The District's accrual contentions for Defendants' Plume 2 fail to recognize the | 58.  Exhibit 1E to Mr. Costley's Declaration identifies five stations at | |

| | | |
|---|---|---|
| | off-site monitoring wells for the site that had detections of MTBE above 5 ppb prior to May 6, 2000.  (Costley 2009 Decl. Ex. 1E.) | which the District concluded that its claims were not ripe.  Mr. Costley identifies "off-site" wells with pre-May 6, 2000, MTBE detections above 5 ppb, but does not address the fact that the District's injury does not accrue unless and until there is evidence *both* that MTBE has escaped remediation *and* that the escaped MTBE has contaminated or threatens to contaminate drinking water.  The District's conclusion that its claims with respect to stations listed in Costley Exhibit 1E are not ripe was based upon absence of current evidence that MTBE released from these stations has contaminated or threatens to contaminate drinking water.  Mr. Costley simply does not address this necessary element of a claim by the District.  (Bolin Decl., ¶ 13.) | |
| Arco #6160 13361 Harbor Blvd. Garden Grove | 59.  The District contends that its claims at this station are not ripe (Costley 2009 Decl. Ex. 1E.)

Prior to May 6, 2000, MTBE was detected at this station in at least two off-site monitoring wells at levels greater than the California Secondary MCL of 5 ppb: MW-6 and MW-7.  (*See* OCWD-MTBE-001-267278 - 267279.)

MTBE was first detected in | 59.  Exhibit 1E to Mr. Costley's Declaration identifies five stations at which the District concluded that its claims were not ripe.  Mr. Costley identifies "off-site" wells with pre-May 6, 2000, MTBE detections above 5 ppb, but does not address the fact that the District's injury does not accrue unless and until there is evidence *both* that MTBE has escaped | 59.  *See* discussion of the District's accrual criteria in ¶ 53 *supra*.

When deposed as the District's Rule 30(b)(6) representative last year, Mr. Bolin unequivocally defined "off-site contamination" as "[d]etections of MTBE in a well outside the boundaries of the property."  (Bolin Dep. 356:2-22; *see also id.* 1888:25-1890:3; 1933:12-1934:3.)  Mr. Bolin also testified that an MTBE |

| | | |
|---|---|---|
| | MW-6 at 200 ppb and in MW-7 at 26 ppb on April 4, 2000, the first testing event at either well.  (*Id.*) | remediation *and* that the escaped MTBE has contaminated or threatens to contaminate drinking water.  The District's conclusion that its claims with respect to stations listed in Costley Exhibit 1E are not ripe was based upon absence of current evidence that MTBE released from these stations has contaminated or threatens to contaminate drinking water.  Mr. Costley simply does not address this necessary element of a claim by the District. (Bolin Decl., ¶ 13.) | detection in a monitoring well "near the site boundary… indicate[s] there is off-site contamination." (*Id.* 357:4-16.)<br><br>Mr. Bolin's present declaration concludes that there is an "absence of current evidence that MTBE released from [Arco #6160] has contaminated or threatens to contaminate drinking water." (Bolin 2009 Decl. ¶ 13.)  However, in his deposition last year, Mr. Bolin identified four "nearby"drinking water wells that "are threatened" by contamination from Arco #6160.  (Bolin Dep. 4178:14-4180:14, Ex. 291.)<br><br>Although Mr. Bolin purports to offer his "opinion as a hydrogeologist with extensive experience in remediation," he testified during his deposition that he is "not an expert in remediation," "remedial technologies," or "fate and transport analysis." (See discussion in ¶ 2 above.) |
| **DEFS.' PLUME NO. 3** | 60.  The District's accrual contention for Defendants' Plume 3 fails to recognize the off-site monitoring wells for the site that had detections of MTBE above 5 ppb prior to May 6, 2000.  (Costley 2009 Decl. Ex. 1E.) | 60.  Exhibit 1E to Mr. Costley's Declaration identifies five stations at which the District concluded that its claims were not ripe.  Mr. Costley identifies "off-site" wells with pre-May 6, 2000, MTBE detections above 5 ppb, but does not address the fact that the District's injury does not accrue unless and until there is | |

| | | | |
|---|---|---|---|
| | | evidence *both* that MTBE has escaped remediation *and* that the escaped MTBE has contaminated or threatens to contaminate drinking water. The District's conclusion that its claims with respect to stations listed in Costley Exhibit 1E are not ripe was based upon absence of current evidence that MTBE released from these stations has contaminated or threatens to contaminate drinking water. Mr. Costley simply does not address this necessary element of a claim by the District. (Bolin Decl., ¶ 13.) | |
| Mobil #18-FYE 8521 Knott Ave. Buena Park | 61. The District contends that its claims at this station are not ripe (Costley 2009 Decl. Ex. 1E.)<br><br>Prior to May 6, 2000, MTBE was detected at this station in an at least three offsite monitoring wells at levels greater than the California Secondary MCL: MW-5, MW-7, and MW-8, as follows:<br><br>MTBE was first detected in MW-5 at levels above the Secondary MCL on August 20, 1996, and in eleven out of the fourteen subsequent sampling events prior to May 6, 2000. (EXMO_18FYE_001543 - 001545.) MTBE was detected in MW-7 at levels above 5 ppb in September and November 1999, and February 2000. | 61. Exhibit 1E to Mr. Costley's Declaration identifies five stations at which the District concluded that its claims were not ripe. Mr. Costley identifies "off-site" wells with pre-May 6, 2000, MTBE detections above 5 ppb, but does not address the fact that the District's injury does not accrue unless and until there is evidence *both* that MTBE has escaped remediation *and* that the escaped MTBE has contaminated or threatens to contaminate drinking water. The District conclusion that its claims with respect to stations listed in Costley Exhibit 1E are not ripe was based upon absence of current evidence that | 61. *See* discussion of the District's accrual criteria in ¶ 53 *supra*.<br><br>When deposed as the District's Rule 30(b)(6) representative last year, Mr. Bolin unequivocally defined "off-site contamination" as "[d]etections of MTBE in a well outside the boundaries of the property." (Bolin Dep. 356:2-22; *see also id.* 1888:25-1890:3; 1933:12-1934:3.) Mr. Bolin also testified that an MTBE detection in a monitoring well "near the site boundary… indicate[s] there is off-site contamination." (*Id.* 357:4-16.)<br><br>Mr. Bolin's present declaration concludes that there is an "absence of current evidence that MTBE |

(EXMO_18FYE_001549.) MTBE was detected at levels exceeding 5 ppb in MW-8 on several occasions prior to May 6, 2000, beginning on August 27, 1997, then in three subsequent testing events between September 1999 and February 2000. (EXMO_18FYE_001551.) The District acknowledges these multiple on-site and off-site MTBE detections, stating "[t]here's been MTBE detected in every single well drilled for this site, including the on-site wells, the site margin wells, and the offsite wells, with the exception of MW-6 in the northeast corner." (Bolin Dep. 3804:1-5.)

MTBE released from these stations has contaminated or threatens to contaminate drinking water. Mr. Costley simply does not address this necessary element of a claim by the District. (Bolin Decl., ¶ 13.)

Defendants cite to several of my responses to questions during depositions to critique the monitoring wells that I selected for purposes of determining an accrual date. Remedial systems are developed over time, and monitoring wells can convey different information at different times. In responding to defendants' deposition questions I was merely observing that particular monitoring wells referenced by defendants indicated that MTBE had gone beyond the then existing remedial systems between the monitoring well and the release point. I was not addressing in my deposition statements the issue of whether there was hydrogeologic evidence of the type addressed in the accrual chart, which was used to determine both when MTBE could be said to be beyond the scope of any remediation system associated with the site and a current threat to drinking water. (Bolin Decl., ¶ 56.)

released from [Mobil #18-FYE] has contaminated or threatens to contaminate drinking water." (Bolin 2009 Decl. ¶ 13.) However, in his deposition last year, Mr. Bolin claimed, "I don't know what concentration poses a threat to drinking water wells, but I believe that…. there is a threat that exists right here, right now" from Mobil #18-FYE. (Bolin Dep. 3801:20-3802:5.)

Although Mr. Bolin purports to offer his "opinion as a hydrogeologist with extensive experience in remediation," he testified during his deposition that he is "not an expert in remediation," "remedial technologies," or "fate and transport analysis." (See discussion in ¶ 2 above.)

| **DEFS.' PLUME NO. 4** | 62.  The District's accrual date for Defendants' Plume 4 fails to recognize the off-site monitoring wells for the site that had detections of MTBE above 5 ppb prior to May 6, 2000.  (Costley 2009 Decl. Ex. 1A.) | 62.  Mr. Costley cites MW-8 and MW-10 at the Arco #6036 station associated with Defendants' Bellwether Plume 4 as examples of where "off-site" wells showed detections of MTBE prior to May 6, 2000.  *See* Costley Decl., Ex. 1A.  These wells, however, do not indicate that MTBE has escaped remediation at this site. Groundwater contour maps demonstrate that the shallow groundwater flow is principally to the East - Southeast at this station.  (Bolin Decl., Ex. 26.)  MW-8 and MW-10 are located in close proximity to the station, in the sidewalk and the street in front of the station.  By contrast, VA-2D is located approximately a sufficient distance downgradient from the release site, is the furthest downgradient well, and is one of the deepest monitoring wells at this site.  The most recent remediation reports for the Arco #6036 station do not indicate that further efforts to define the plume or expand the area of remediation are underway or anticipated. In my opinion as a hydrogeologist with extensive experience in remediation, this detection in VA-2D is the first real indication at this site that MTBE has escaped active | |

| | | remediation efforts and is threatening drinking water sources. (Bolin Decl., ¶ 52.) | |
|---|---|---|---|
| Arco #6036 13142 Golden West St. Westminster | 63.  MTBE was not detected in well VA-2D on August 16, 2001. (Costley 2009 Decl. Ex. 1A.)  However MTBE was detected in that well on May 31, 2005 at 37 ppb. (*Id.*)<br><br>Prior to May 6, 2000, MTBE was detected at this station in at least two offsite monitoring wells at levels greater than the California Secondary MCL: MW-8 and MW-10 as follows:<br><br>MTBE was first detected in MW-8 at levels exceeding 5 ppb beginning on September 29, 1999 and in two subsequent testing events prior to May 6, 2000. (OCWD-MTBE-001-267072.)  MTBE was detected in MW-10 at levels ranging from 16-86 ppb in three testing events between June 12 and December 10, 1996, again at 70 ppb on March 5, 1998, 63 ppb on December 10, 1999, and 48 ppb on March 24, 2000. (OCWD-MTBE-001-267076.) | 63.  Mr. Costley cites MW-8 and MW-10 at the Arco #6036 station associated with Defendants' Bellwether Plume 4 as examples of where "off-site" wells showed detections of MTBE prior to May 6, 2000. *See* Costley Decl., Ex. 1A. These wells, however, do not indicate that MTBE has escaped remediation at this site. Groundwater contour maps demonstrate that the shallow groundwater flow is principally to the East - Southeast at this station. (Ex. 26.) MW-8 and MW-10 are located in close proximity to the station, in the sidewalk and the street in front of the station. By contrast, VA-2D is located a sufficient distance downgradient from the release site, is the furthest downgradient well, and is one of the deepest monitoring wells at this station.  The most recent remediation reports for the Arco #6036 station do not indicate that further efforts to define the plume or expand the area of remediation are underway or anticipated. In my opinion as a hydrogeologist with extensive experience in remediation, this detection in VA-2D is | 63.  *See* discussion of the District's accrual criteria in ¶ 53 *supra*.<br><br>When deposed as the District's Rule 30(b)(6) representative last year, Mr. Bolin unequivocally defined "off-site contamination" as "[d]etections of MTBE in a well outside the boundaries of the property." (Bolin Dep. 356:2-22; *see also id.* 1888:25-1890:3; 1933:12-1934:3.)  Mr. Bolin also testified that an MTBE detection in a monitoring well "near the site boundary… indicate[s] there is off-site contamination." (*Id.* 357:4-16.)<br><br>Although now asserting that detections in MW-8 and MW-10 "do not indicate that MTBE has escaped remediation at this site," (Bolin 2009 Decl. ¶ 52), in his deposition, Mr. Bolin also testified that MTBE contamination had "escaped remediation" based on detections in "four off-site well locations," specifically identifying wells "MW-8, -9, -10 and VA2[S&D]."(Bolin Dep. 4334:2-20, 4352:13-4353:10.)  During this testimony, Mr. Bolin erred in identifying when MTBE was first detected in wells MW-8 and MW-10, as both of these wells had MTBE detections above 5 ppb prior |

| | | the first real indication at this site that MTBE has escaped active remediation efforts and is threatening drinking water sources. (Bolin Decl., ¶ 52.) | to May 6, 2000. (*Compare id.* 4353:14-18 *with* Finsten 2009 Reply Decl. ¶ 9 Ex. 8.) Furthermore, while he identifies an MTBE detection in well VA-2D as the basis for accrual at this station, Bolin's deposition notes described this well as "too shallow, insufficient intermediate distance." (Bolin Dep. 4320:12-15, 4322:3-5, Ex. 303.)<br><br>Mr. Bolin is mistaken in claiming that there are no "further efforts to define the plume or expand the area of remediation … underway or anticipated." (Bolin Decl. ¶ 52.) At each stage in the remediation process, and whenever new information becomes available, BP, its consultants, and the regulators, evaluate what additional or different actions, if any may be required. (Fah Decl. ¶¶ 3-4.) When new information becomes available indicating that a modification to the remediation measures being taken at a site is called for, appropriate action will be taken at any stage in the process, even years after an initial remediation program is commenced. (*Id.* ¶¶ 4-5.) (See discussion of new remedial technology proposed in January 2009 at station ARCO # 1887, ¶ 3 above.)<br><br>Although Mr. Bolin purports to offer his "opinion as a hydrogeologist with extensive experience in |
| --- | --- | --- | --- |

| | | | remediation," he testified during his deposition that he is "not an expert in remediation," "remedial technologies," or "fate and transport analysis." (See discussion in ¶ 2 above.) |
|---|---|---|---|
| **DEFS.' PLUME NO. 5** | 64. The District's accrual date for Defendants' Plume 5 fails to recognize the off-site monitoring wells for the site that had detections of MTBE above 5 ppb prior to May 6, 2000.  (Costley 2009 Decl. Ex. 1B.) | 64.  Mr. Costley cites MW-5, MW-6, MW-7 and MW-14 at the Mobil #18-668 station associated with Defendants' Bellwether Plume 5 as examples of where "off-site" wells showed detections of MTBE prior to May 6, 2000, at a site where the District concluded there were no off-site wells, and therefore detections of MTBE in the nearest production well provided the date on which the District's cause of action accrued for releases from the station.  *See* Costley Decl., Ex. 1B.  These wells, however, do not indicate that MTBE has escaped remediation at this site. Groundwater contour maps demonstrate that the shallow groundwater flow is principally to the South to Southwest at this station.  (Ex. 27.) MW-5, MW-6, MW-7 and MW-14 are located in close proximity to the release at the station.  In my opinion as a hydrogeologist with extensive experience in remediation, these wells are associated with the core remedial activities at this station.  The most recent remediation | |

| | | reports for the Mobil #18-668 do not indicate that further efforts to define the plume or expand the area of remediation are underway or anticipated. Therefore, the first real hydrogeologic evidence that MTBE had escaped was when MTBE had been detected in a production well. (Bolin Decl., ¶ 53.) | |
|---|---|---|---|
| Mobil #18-668 16230 Harbor Blvd. Fountain Valley | 65.  The MTBE detection in well IRWD-16 on which OCWD's date is based was at 0.03 ppb. (Costley 2009 Decl. Ex. 1B.)  However, under the District's accrual criteria, accrual may rest on an MTBE detection in a water production well *only* "[f]or stations where no off-site monitoring wells were installed." (Feb. 6, 2009, Letter from M. Axline to The Hon. Shira Scheindlin.)  Prior to May 6, 2000, MTBE was detected at this station in at least four off-site monitoring wells at levels greater than the California Secondary MCL: MW-5, MW-6, MW-7, and MW-14, as follows:  MTBE was detected in MW-5 on February 18, 1997 at 13 ppb and on August 19, 1998 at 14.8 ppb. (EXMO_18668_028790.) MTBE was detected in MW-6 on May 14, 1996 at 38 ppb, and in 14 subsequent sampling events prior to May 6, 2000, with a peak of 130,000 ppb. (EXMO_18668_028791.) | 65.  Mr. Costley cites MW-5, MW-6, MW-7 and MW-14 at the Mobil #18-668 station associated with Defendants' Bellwether Plume 5 as examples of where "off-site" wells showed detections of MTBE prior to May 6, 2000, at a site where the District concluded there were no off-site wells, and therefore detections of MTBE in the nearest production well provided the date on which the District's cause of action accrued for releases from the station. *See* Costley Decl., Ex. 1B. These wells, however, do not indicate that MTBE has escaped remediation at this site. Groundwater contour maps demonstrate that the shallow groundwater flow is principally to the South to Southwest at this station. (Ex. 27.) MW-5, MW-6, MW-7 and MW-14 are located in close proximity to the release at the station.  In my opinion as a | 65.  When deposed as the District's Rule 30(b)(6) representative last year, Mr. Bolin unequivocally defined "off-site contamination" as "[d]etections of MTBE in a well outside the boundaries of the property." (Bolin Dep. 356:2-22; *see also id.* 1888:25-1890:3; 1933:12-1934:3.)  Mr. Bolin also testified that an MTBE detection in a monitoring well "near the site boundary ... indicate[s] there is off-site contamination." (*Id.* 357:4-16.)  To justify the District's reliance on purported MTBE detections in a production well to establish its accrual date, Mr. Bolin's declaration asserts that "the District concluded there were no off-site wells" at Mobil #18-668. (Bolin 2009 Decl. ¶ 53.) However, in deposition testimony, Mr. Bolin identified MTBE or TBA detections "off-site wells" MW-6, MW-7 and MW-14, three of the monitoring wells cited by defendants as establishing a pre-May 6, 2000 accrual |

| | | | |
|---|---|---|---|
| | MTBE was detected in MW-7 on February 13, 1996 at 46,000 ppb, and in 15 subsequent sampling events prior to May 6, 2000, with a peak of 73,000 ppb. (EXMO_18668_028792.) MTBE was detected in MW-14 on May 14, 1996 at 4,900 ppb, and in 15 sampling events prior to May 6, 2000, with a peak of 130,000 ppb. (EXMO_18668_028799.) | hydrogeologist with extensive experience in remediation, these wells are associated with the core remedial activities at this station. The most recent remediation reports for the Mobil #18-668 do not indicate that further efforts to define the plume or expand the area of remediation are underway or anticipated. Therefore, the first real hydrogeologic evidence that MTBE had escaped was when MTBE had been detected in a production well. (Bolin Decl., ¶ 53.) | date for this station. (Bolin Dep. 3880:2-3882:21, Ex. 256.) In his notes prepared for the deposition, Mr. Bolin identified MW-6, MW-7, and MW-14 as "offsite" in his own handwriting, claimed that "**MTBE [was] detected in all on-site and off-site wells except MW17 (off-site) and MW8,**" and identified specific detections in MW-6 and MW-14 in March 1998. (*Id.* Ex. 256.)<br><br>Although Mr. Bolin purports to offer his "opinion as a hydrogeologist with extensive experience in remediation," he testified during his deposition that he is "not an expert in remediation," "remedial technologies," or "fate and transport analysis." (See discussion in ¶ 2 above.) |
| **DEFS.' PLUME NO. 9** | 66. The District's accrual date for Defendants' Plume 9 admits the site had detections of MTBE above 5 ppb prior to May 6, 2000. (Costley 2009 Decl. Ex. 1A.) | 66. No response necessary. | |
| Chevron #9-5568 12541 Seal Beach Blvd. Seal Beach | 67. The District asserts accrual at this station based on a detection in monitoring well MW-10 at a level of 54 ppb on October 13, 1997. (Costley 2009 Decl. Ex. 1A.) By so stating, the District concedes its claims at this site accrued prior to May 6, 2000, and are barred by the statute of limitations | 67. No response necessary. | |
| **DEFS.'** | 68. The District's accrual | 68. Exhibit 1E to Mr. | |

| | | | |
|---|---|---|---|
| **PLUME NO. 10** | contention for Defendants' Plume 10 fails to recognize the off-site monitoring wells for the site that had detections of MTBE above 5 ppb prior to May 6, 2000. (Costley 2009 Decl. Ex. 1E.) | Costley's Declaration identifies five stations at which the District concluded that its claims were not ripe. Mr. Costley identifies "off-site" wells with pre-May 6, 2000, MTBE detections above 5 ppb, but does not address the fact that the District's injury does not accrue unless and until there is evidence *both* that MTBE has escaped remediation *and* that the escaped MTBE has contaminated or threatens to contaminate drinking water. The District's conclusion that its claims with respect to stations listed in Costley Exhibit 1E are not ripe was based upon absence of current evidence that MTBE released from these stations has contaminated or threatens to contaminate drinking water. Mr. Costley simply does not address this necessary element of a claim by the District. (Bolin Decl., ¶ 13.) | |
| Arco #3094 530 N. Brookhurst St. Anaheim | 69. The District contends that its claims at this station are not ripe (Costley 2009 Decl. Ex. 1E.)<br><br>Prior to May 6, 2000, MTBE was detected at this station in an offsite monitoring well, MW-6 at 24 ppb on February 23, 1999, and at levels above 5 ppb in seven subsequent testing events prior to May 6, 2000. (*Id.*; OCWD-MTBE-001-268123.) | 69 Exhibit 1E to Mr. Costley's Declaration identifies five stations at which the District concluded that its claims were not ripe. Mr. Costley identifies "off-site" wells with pre-May 6, 2000, MTBE detections above 5 ppb, but does not address the fact that the District's injury does not accrue unless and until there is | 69. *See* discussion of the District's accrual criteria in ¶ 53 *supra*.<br><br>When deposed as the District's Rule 30(b)(6) representative last year, Mr. Bolin unequivocally defined "off-site contamination" as "[d]etections of MTBE in a well outside the boundaries of the property." (Bolin Dep. 356:2-22; *see also id.* 1888:25-1890:3; 1933:12- |

| | | evidence *both* that MTBE has escaped remediation *and* that the escaped MTBE has contaminated or threatens to contaminate drinking water.  The District's conclusion that its claims with respect to stations listed in Costley Exhibit 1E are not ripe was based upon absence of current evidence that MTBE released from these stations has contaminated or threatens to contaminate drinking water.  Mr. Costley simply does not address this necessary element of a claim by the District.  (Bolin Decl., ¶ 13.) | 1934:3.)  Mr. Bolin also testified that an MTBE detection in a monitoring well "near the site boundary… indicate[s] there is off-site contamination." (*Id.* 357:4-16.)

Although Mr. Bolin purports to offer his "opinion as a hydrogeologist with extensive experience in remediation," he testified during his deposition that he is "not an expert in remediation," "remedial technologies," or "fate and transport analysis." (See discussion in ¶ 2 above.) |
| --- | --- | --- | --- |

Dated: June 18, 2009

Respectfully submitted,

ARNOLD & PORTER LLP

By:  s/  *[signature]*

Matthew T. Heartney (MH 3737)
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017  (213) 243-4000
Matthew_Heartney@aporter.com

Attorneys for Defendants Atlantic Richfield
Company, BP Products North America Inc.,
and BP West Coast Products LLC, and on
behalf of each defendant listed on
Attachment A to Defendants' Further
Supplemental Reply Memorandum in
Support of Their Motion for Summary
Judgment Based on Statute of Limitations