UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x
In re: Methyl Tertiary Butyl Ether ("MTBE") : **Master File No. 1:00-1898**
Products Liability Litigation　　　　　　　　　**MDL No. 1358 (SAS)**
　　　　　　　　　　　　　　　　　　　　: **M21-88**
　　　　　　　　　　　　　　　　　　　　:
This Document Relates To:　　　　　　　　　The Honorable Shira A. Scheindlin
*Orange County Water District v. Unocal* :
*Corporation, et al.,* Case No. 04 Civ. 4968
(SAS).　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
------------------------------------- x

**DECLARATION OF MARGARET R. EGGERS, PHD, PG, CHG
IN SUPPORT OF DEFENDANTS' FURTHER SUPPLEMENTAL REPLY
MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT MOTION BASED
ON THE STATUTE OF LIMITATIONS**

I, Margaret R. Eggers, PHD, PG, CHG, hereby declare:

1. I am a hydrogeologist and owner of Eggers Environmental, Inc., Oceanside, California. I am a Professional Geologist in the States of California, Texas and Arkansas, and a Certified Hydrogeologist in the State of California. Details of my qualifications and relevant experience have been presented in previous declarations, most recently in my declaration dated March 8, 2007.

2. I make this declaration in support of Defendants' further supplemental reply memorandum in support of summary judgment motion based on the statute of limitations. My opinions below are based on publicly available documents and my professional knowledge and experience.

3. I have reviewed Plaintiff's Supplemental Declaration of David Bolin regarding Summary Judgment Motion on Statute of Limitations, dated June 3rd, 2009.

4. In his June 3rd, 2009 declaration, Mr. Bolin attempts to create an artificial distinction between an "*offsite*" monitor well associated with what he refers to as "*core remedial activities*" and an "*offsite*" monitor well installed to determine whether MTBE contamination has "*escaped*" remediation. However, no such technical distinction exists. Groundwater monitor wells that are part of the overall site investigation and remediation, including wells installed crossgradient or downgradient of the plume[1], are part of the remedial activities that monitor the progress of remediation and assess the

---

[1] The CalEPA Field Manual "Guidelines for Hydrogeologic Characterization of hazardous Substance Release Sites" describes the types of wells which could be installed at a site including "*wells at either side of the plume to define the lateral extent of contamination,*" and "*one or more wells at the down-gradient edge of the plume to monitor its migration.*" All types of well suggested by CalEPA would be considered part of the "core remedial activities."
(www.dtsc.ca.gov/SiteCleanup/upload/SMP_Guidelines_Hydrogeologic_Characterization_Vol1.pdf),

- 1 -

efficacy of the remedial system. These monitor wells help to determine if the remedial system should be modified or added to.

5. While site specific conditions will govern the selection of an appropriate remediation technology, various regulatory guidance documents define generally what constitutes the key activities included in the site investigation and remediation process. For example, the California State Water Resources Control Board Resolution 92-49 (a copy of which I understand was previously submitted to the Court in prior briefing) outlines the key steps that must occur after a release such as site assessment, soil and groundwater investigation, and selection of an appropriate cleanup and abatement alternative. Resolution 92-49 states that the Regional Water Board shall "[*r*]*equire the discharger to conduct investigation, and cleanup and abatement, in a progressive sequence...*" [II.A.1] which includes "*Implementation of cleanup and abatement action (to implement the selected alternative and to monitor in order to verify progress)*" [II.A.1.d]; "*Monitoring (to confirm short- and long-term effectiveness of cleanup and abatement).*" [II.A.1.e]; and "*Require the discharger to extend the investigation, and cleanup and abatement, to any location affected by the discharge or threatened discharge*" [II.A.3]. Given the broad nature of the regulatory view of these key activities, there would be no rational instance where a monitor well would be installed at or nearby a site and not used as part of the characterization and cleanup and abatement activities.

6. Other guidance documents also indicate that the network of monitor wells, including downgradient wells, are part of the remedial system. Downgradient wells are

part of the well network used to monitor the effectiveness of a remedial system. This is described in the EPA's guide to Pump-and-Treat remediation systems[2]:

> *"An appropriately designed monitoring program is essential for measuring the effectiveness of a pump-and-treat system in meeting hydraulic containment and aquifer restoration objectives. In general, containment monitoring involves (1) measuring hydraulic heads to determine if the pump-and-treat system creates inward gradients that prevent ground-water flow and dissolved contaminant migration across the containment zone boundary, <u>and (2) ground-water quality monitoring to detect any contaminant movement or increase of contaminant mass across the containment zone.</u>"* {emphasis added}

7. In summary, groundwater monitor wells installed in and around a contaminant plume are part of the remediation process. Contrary to Mr. Bolin's suggestion that offsite wells should be installed to "*detect MTBE escaping remediation*", I have not been involved with a situation or seen a regulatory directive where monitor wells were installed and were not considered part of the ongoing remedial process.

8. The process of characterizing and remediating a site is an iterative process. An integral facet of that remedial process is the ongoing monitoring and evaluation of the remedial system to make sure that remedial goals are being achieved. If monitoring wells installed downgradient of the plume indicate that the plume has continued to migrate, the Responsible Party (RP) and the Regional Board or local oversight agency will evaluate the need for modifications and/or additions to the existing remedial system

---

[2] "Pump-and-Treat Ground-Water Remediation: A Guide for Decision Makers and Practitioners", EPA/625/R-95-005, July 1996. http://www.epa.gov/nrmrl/pubs/625r95005/625r95005.pdf

to increase and extend the remedial effort. Such actions might include, the installation of additional groundwater capture wells, and changes or redistribution of pumping within the existing remedial system. In addition, as described in paragraph 10 of my previous declaration[3], if a water supply well is impacted, the Regional Board or local oversight agency continues to oversee the remedial effort, and as part of that remedial process, has the authority to require the RP to provide a replacement water source for that well, such as paying for the relocation and drilling of a new well, replacement of a private well with municipal water hook-up, or installation of well-head treatment as stated in Section 13304 of the Water Code. Whatever remedial decisions are made, the Water Board or local oversight agency and the RP are aware that further modifications to the remedial system may be required to meet remediation goals as part of the ongoing remedial effort.

9. My opinions set forth in this declaration are based on my education, experience and expertise. My opinions may be supplemented or modified if I am asked to address additional issues.

10. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on June 17, 2009 at Oceanside, California.

_____
Margaret R. Eggers, PhD, PG, CHG

---

[3] Declaration of Margaret R. Eggers in Support of Defendants' Supplemental Brief Regarding the Statute of Limitations, dated February 14, 2007.