UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X
In re: Methyl Tertiary Butyl Ether ("MTBE") : Master File No. 1:00-1898
Products Liability Litigation              MDL No. 1358 (SAS)
                                           M21-88
                                        :

This Document Relates To:               : The Honorable Shira A. Scheindlin
*Orange County Water District v. Unocal
Corporation, et al.*, Case No. 04 Civ. 4968 :
(SAS).
                                        :

                                        :
------------------------------------- X

## DECLARATION OF SHARI LONDON IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BASED ON THE STATUTE OF LIMITATIONS

1

OC\1017603.2

# DECLARATION OF SHARI LONDON

I, Shari London, hereby declare:

1.  I am a Site Manager in the Risk Management and Remediation group of ConocoPhillips Company ("ConocoPhillips"), a defendant in this litigation. I have been an employee of ConocoPhillips since January 2003. Prior to joining ConocoPhillips, I had fourteen years of related experience in the retail petroleum industry, in environmental consulting, remediation management, Underground Storage Tank System ("UST") construction and maintenance. I have personal knowledge of the matters stated herein, and if called upon to testify, could and would competently do so.

2.  Where ConocoPhillips carries out investigation and remediation activities in California as a responsible party, it does so subject to the oversight and directives of the Regional Water Quality Control Board or other regulatory agency, and pursuant to guidance documents issued by such agencies. ConocoPhillips works cooperatively with the responsible regulatory agency, and with full recognition of their statutory powers to direct the activities of a responsible party such as ConocoPhillips.

3.  Under regulatory guidance, a responsible party is required to conduct investigation and remediation activities through a progressive series of phases, adjusted as needed, to accommodate site-specific circumstances and any revelations afforded by ongoing data collection. Remediating gasoline constituents (including MTBE and TBA) constitutes an iterative process that includes, as core components, advancement of soil borings, construction of monitoring wells, analysis of soil and groundwater samples from borings and monitoring wells, remediation well installation, feasibility testing, evaluation of remedial alternatives, and a variety

of potential remediation activities to reduce concentrations of contaminants in soil, soil vapor, or groundwater.

4. At each stage in this process, and whenever new information becomes available, the consultants and/or regulators must evaluate what additional or different investigation or remedial actions, if any, may be required. Therefore, each monitoring well installed, and the ongoing collection of sampling data from each well, constitutes a core part of the investigation and remedial activities being conducted at the site.

5. Oftentimes, as new information becomes available, decisions to install additional monitoring wells or to institute different active remediation technology are made years after an initial remediation program is commenced. For example, at Station 5792, an amended CAP was submitted in March 2009 to enhance the existing remediation system (operating since 2005) with the installation of additional ozone sparging wells. As another example, a new form of active remediation recently commenced at Station 7470: injection of hydrogen peroxide into select onsite wells. In both cases, the change in strategy was based in part on evaluation of the ongoing groundwater data collected at the site.

6. I am aware that an employee of Plaintiff Orange County Water District has suggested that a distinction can be drawn between monitoring wells installed "for the purpose of plume delineation" and those that "appear[] to be placed to detect MTBE escaping remediation." This is simply not correct. Monitoring well installation is part of the iterative investigation process at the site, and the data collected are used to further refine the site conceptual model to determine whether data gaps are present or whether additional remedial actions should be considered In fact, whenever any new data become available - whether from a monitoring well installed on or off the station property or from other sources -- that indicates that an adjustment

3

to the remediation measures being taken at the site is called for, appropriate action both can be and has been taken at any stage in the process leading up to final case closure.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on June 16, 2009 at Santa Ana, California.

/s/ Shari London
Shari London