**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------- x

In Re: Methyl Tertiary Butyl Ether (ôMTBEö)          Master File No. 1:00-1898
Products Liability Litigation                        MDL 1358 (SAS)
                                                     M21-88
---------------------------------------------------------------------- x     ECF Case

**This document relates to the following case:**

*City of New York v. Amerada Hess Corp., et al.*
Case No. 04 Civ. 3417

---------------------------------------------------------------------- x

## PLAINTIFF CITY OF NEW YORK'S PROPOSED JURY INSTRUCTIONS FOR PHASE III and IV (EXHIBIT 5 OF THE PROPOSED PRETRIAL ORDER)

Plaintiff the City of New York (the ôCityö) hereby submits its Proposed Jury Instructions for

Phase III and IV of this trial.  The City reserves the right to amend these proposed jury instructions.

## I.   Proposed Final Instructions for Phase III

The City proposes that the following final jury instructions be read to the jury following closing statements and before deliberation in Phase III:

### PROPOSED FINAL INSTRUCTION NO. 1

### <u>General introduction</u>

Now that you have heard the evidence and the argument in Phase III, it is my duty to instruct you about the applicable law.  It is your duty to follow the law as I will state it and to apply it to the facts as you find them from the evidence in the case.  Do not single out one instruction as stating the law, but consider the instructions as a whole.  You are not to be concerned about the wisdom of any rule of law stated by me.  You must follow and apply the law.

The lawyers have properly referred to some of the governing rules of law in their arguments. If there is any difference between the law stated by the lawyers and as stated in these instructions, you are governed by my instructions.

Nothing I say in these instructions indicates that I have any opinion about the facts.  You, not I, have the duty to determine the facts.

You must perform your duties as jurors without bias or prejudice as to any party.  The law does not permit you to be controlled by sympathy, prejudice, or public opinion.  All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just decision, regardless of the consequences.

Authority:  3 Kevin F. O'Malley, Jay E. Grenig, Hon. William C. Lee, *Federal Jury Practice & Instructions*, § 103.01 (5th Ed., 2000 & rev. 2009) (as modified).

## PROPOSED FINAL INSTRUCTION NO. 2

### "Direct" and "circumstantial" evidence—Defined

Generally speaking, there are two types of evidence that are generally presented during a trialô direct evidence and circumstantial evidence.  õDirect evidenceö is the testimony of a person who asserts or claims to have actual knowledge of a fact, such as an eyewitness. õIndirect or circumstantialö evidence is proof of a chain of facts and circumstances indicating the existence or nonexistence of a fact.

As a general rule, the law makes no distinction between the weight or value to be given to either direct or circumstantial evidence.  Nor is a greater degree of certainty required of circumstantial evidence. You are simply required to find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial.

Authority:  3 Kevin F. O'Malley, Jay E. Grenig, Hon. William C. Lee, *Federal Jury Practice & Instructions*, § 104.05 (5th Ed., 2000 & rev. 2009).

**PROPOSED FINAL INSTRUCTION NO. 3**

**Preponderance of the evidence**

Plaintiff the City of New York (õthe Cityö) has the burden to prove the elements of its claims by a preponderance of the evidence.  If the City does not establish an element of its claims by a preponderance of the evidence, you should find for defendants ExxonMobil Corporation, ExxonMobil Oil Corporation, and Mobil Corporation (collectively õExxonMobilö or õDefendant.ö) as to that claim.

ExxonMobil has the burden of establishing proving the elements of  its affirmative defenses.

To prove a claim by a preponderance of the evidenceö means to prove that something is more likely so than not so.   In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your minds belief that what is sought to be proved is more likely true than not true.

This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been proved by a preponderance of the evidence you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You may have heard of the term õproof beyond a reasonable doubt.ö  That is a stricter standard that applies in criminal cases. It does not apply in civil cases such as this.  You should,

therefore, put it out of your minds.

Authority:  3 Kevin F. O'Malley, Jay E. Grenig, Hon. William C. Lee, *Federal Jury Practice & Instructions*, § 104.01 (5th Ed., 2000 & rev. 2009) (as modified); Opinion and Order in this Action, Scheindlin, S. (June 9, 2009) at 18-19 (õRather, the City must prove, by a preponderance of the evidence, that MTBE of the particular defendant was actually in the commingled product that caused the contamination.ö).  *See also Glew v. Cigna Group Ins.*, 590 F.Supp.2d 395 (E.D.N.Y. 2008) (õWhile there has been some dispute as to the burden of proof, in this Court's view, the proper standard is the same as other civil cases in the federal court, namely, by a preponderance of the evidence.ö); *Yi v. Sterling Collision Centers, Inc.*, 480 F.3d 505, 507 (7th Cir. 2007) (presumption that preponderance standard applies in federal civil cases); *Mathis v. Hargrove*, 888 A.2d 377, 391 n. 5, 166 Md.App. 286 (Md. 2005) (preponderance of the evidence is the proper standard for civil action); *Rixmann v. City of Prior Lake*, 723 N.W.2d 493, 495 (Minn.App. 2006); *Mutual of Enumclaw Ins. Co. v. McBride*, 667 P.2d 494, 295 Or. 398 (Or. 1982) (burden of proof on issue of fraud to void a fire insurance policy is by a preponderance of the evidence; it does not require clear and convincing proof).  *See also Ramsey v. United Mine Workers of America*, 401 U.S. 302 (1971) (plaintiff in an antitrust action against a labor union need only prove his case by a preponderance of the evidence; pro-vision of 29 U.S.C.A. § 106 requiring õclear proofö only applies to question of authorization, participation or ratification of acts); *Ellis v. Brotherhood of Railway Clerks*, 685 F.2d 1065, 1071 (9th Cir. 1982) (in a civil case, the party with the burden of proof must persuade the trier of fact by a preponderance of the evidence; no higher standard is required simply because a constitutional issue is involved). *See, e.g., Nissho-Iwai Co. v. M/T Stolt Lion*, 719 F.2d 34, 38 (2d Cir.1983) (õpreponderanceö means that õupon all the evidence í   the facts asserted by the plaintiff are more probably true than falseö), *quoting Porter v. American Export Lines, Inc.*, 387 F.2d 409, 410ó411 (3d Cir.1968). *See also South-East Coal Co. v. Consolidation Coal Co.*, 434 F.2d 767, 777ó78 (6th Cir.1970), cert. denied, 402 U.S. 983 (1971); *Henry v. Dept. Corrections*, 131 Fed.Appx. 847, 850 (3d Cir. 2005) (õmore likely than notö; quoting Black's Law Dictionary); *Mathis v. Hargrove*, 2005, 888 A.2d 377, 391 n. 5, 166 Md.App. 286 (õevidence which, when considered and compared with the evidence opposed to it, has more convincing force and produces in the mind of the trier of fact a belief that it is more likely true than not); *Ralston Oil & Gas Co. v. July Corp.*, 719 P.2d 334 (Colo.App.1985) (proof by a preponderance of the evidence means evidence that leads the trier of fact to find that the existence of the fact is more probable than not).

### PROPOSED FINAL INSTRUCTION NO. 4

### <u>Substantial Factor</u>

The requirement that the defendant's actions must be the cause of the plaintiff's injury is common in the law and applies to all of plaintiffs' claims other than TSCA. Tort liability usually depends on proof that a defendant's conduct was both the factual cause and the proximate cause of a plaintiff s injury. For example, in a negligence claim, to carry the burden of proving a prima facie case, the plaintiff must generally show that the defendant's negligence was a substantial cause of the events which produced the injury.

The substantial factor standard for causation, adopted in New York, recognizes that often many acts can be said to have caused a particular injury, and requires only that defendant's actions be a substantial factor in producing the injury. A plaintiff need not eliminate every other possible cause, and the fact that another possible cause concurs with defendant's negligent act or omission to produce an injury does not relieve defendant from liability. In strict products liability, it is the product defect or the failure to warn, rather than the defendant's conduct, that must be shown to be a substantial cause of the plaintiff's injuries.

Thus, in this case, the City need not prove that ExxonMobil or gasoline containing MTBE, as the case may be, is the only cause of its injury. Rather ExxonMobil, or gasoline containing MTBE, as the case may be, need only be a substantial contributor to the City's injury. That is, a non-trivial contributor.

Authority: *In re MTBE*, 591 F.Supp.2d 259, 265-68 (S.D.N.Y 2008); *In re MTBE*, 517 F.Supp.2d at 668; Restatement (Second) of Torts § 433 (1977). Restatement (Third) of Torts: Prod. Liab. § 15, cmt. a (1998); *Mortensen v. Memorial Hospital*, 105 A.D.2d 151, 483 N.Y.S.2d 264, 269 (1st Dep't 1984). *Accord Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 316, 434 N.Y.S.2d 166, 414 N.E.2d 666 (1980); see also *Capicchioni v. Morrissey*, 205 A.D.2d 959,

613 N.Y.S.2d 499 (3d Dep't 1994) (holding that jury instruction implying that defendant must be the sole cause of a car accident was reversible error); See *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 106, 463 N.Y.S.2d 398, 450 N.E.2d 204 (1983); *Summers v. Tice*, 33 Cal.2d 80, 199 P.2d 1 (1948).

## PROPOSED FINAL INSTRUCTION NO. 5

### <u>Other Tortfeasors/Settled Parties</u>

You may have heard counsel for the parties mention other companies who, in addition to ExxonMobil, contributed the injuries to the City in this case.  The only company whose wrongdoing is relevant in your deliberations is ExxonMobil, because it the only defendant remaining in this case.  You should put the acts and omissions of others who may have contributed to the City's harm out of your mind.


Authority:  *In Re: New York County Data Entry Worker Product Liability Litigation,* 162 Misc.2d 263, 616 N.Y.S.2d 424 (N.Y. Sup. Ct. 1994); FRE 408.

## PROPOSED FINAL JURY INSTRUCTION NO. 6

### Pre-existing Contamination and Concurrent Cause

There may be more than one cause of an injury. Where the independent and negligent acts or omissions of two or more parties cause injury to another, each of those negligent acts or omissions is regarded as a cause of that injury provided that it was a substantial factor in bringing about that injury.  If you find that the independent acts or omissions of two or more parties *including* ExxonMobil have caused the City's injury, you should regard ExxonMobil's negligent acts or omissions as a cause of the City's injury, provided that it was a substantial factor in bringing about that injury.

The level of pre-existing contamination, if any, is irrelevant to the issue of the City's injury.

The City is entitled to recover for all damage caused by MTBE migrating into its groundwater, regardless of the existence of pre-existing contamination.  On all of the City's claims that require it to prove that it has been injured, evidence of any pre-existing contamination with substances other than MTBE in the City's wells or ground water is irrelevant to the City's injury.  Thus, in determining whether the city has been injured, you may not determine that the City is less injured, or not injured, because there is contamination in the wells or groundwater from substances other than MTBE.  You should consider pre-existing contamination only in the damages context.

Authority:  NY PJI 2:71; *Cornell v. Exxon*, 162 A.D.2d 892, 558 N.Y.S.2d 647 (App Div. 3d 1990) ("Chauncy also claims that since plaintiffs discovered their water supply was contaminated with bacteria upon purchasing their property, the subsequent gasoline contamination is irrelevant on the issue of detriment to their property. This claim is unpersuasive. As Supreme Court noted, bacterial contamination of a water supply can be neutralized by the use of chlorine treatment, while gasoline contamination cannot be treated but must be prevented from entering the water supply. The preexisting bacterial contamination is but a factor to be

weighed by a jury in their determination of damages.ö); *see also Walker Drug Co., Inc. v. La Sal Oil Co.,* 972 P.2d 1238, 1248 (Utah, 1998) (õThe Walkers are entitled to recover for all damage caused by new gasoline migrating onto the property during the limitations period, regardless of the existence of pre-existing contaminationö)

## PROPOSED FINAL INSTRUCTION NO. 7

### <u>General verdict</u>

Upon retiring to the jury room, you will select one of your number to act as your foreperson. The foreperson will preside over your deliberations, and will be your spokesman here in Court.

Forms of verdict have been prepared for your convenience. [Read forms of verdict].

You will take these forms to the jury room and, when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form that sets forth the verdict upon which you unanimously agree; and then return with your verdict to the courtroom.

Authority:  3 Kevin F. O'Malley, Jay E. Grenig, Hon. William C. Lee, *Federal Jury Practice & Instructions*, § 106.04 (5th Ed., 2000 & rev. 2009) (as modified).

## PROPOSED FINAL INSTRUCTION NO. 8

### <u>Strict Liability for Design Defect</u>

To prove a design defect claim, a plaintiff must show that the product at issue was not reasonably safe as designed because there was a substantial likelihood of harm and it was feasible to design the product in a less harmful manner. .  Thus, a manufacturer that sells a product in a defective condition is liable for injury that results from use of that product when the product is used for its intended or reasonably foreseeable purpose.

A product is defective if it is not reasonably safeô that is, if the product is so likely to be harmful to people  or property that a reasonable person who had actual knowledge of its potential for producing injury to people or property would conclude that it should not have been marketed in that condition.

Things you may consider in determining whether gasoline containing MTBE is not reasonably safe include, for example:  the need to remediate MTBE from groundwater and drinking water supplies, harm to the environment, in other words: the ease with which MTBE reaches ground water, how it spreads farther and faster than other chemicals in gasoline, the length of time MTBE persists in ground water, its taste and odor that makes water containing MTBE unacceptable to consumers, the fact that studies have shown that exposure to MTBE  may be harmful  to people and may make them sick , and the cost of removing MTBE from drinking water.  But, this is not a personal injury case, the  City does not need to prove that MTBE causes cancer or any other disease for you to find that it is not reasonably safe.

A product may be defective as a result of a defective design. The burden of proving that the product was defective and that the defect was a substantial factor in causing plaintiff's injury is on the plaintiff.

Here, the plaintiff, the City, claims that the gasoline containing MTBE manufactured by defendant ExxonMobil was defective because (1) MTBE is a toxic compound that easily contaminates groundwater and drinking water supplies; (2) ExxonMobil knew about the dangers that MTBE posed to ground water since the 1980s and that underground gasoline storage systems have a propensity to leak; and (3) despite this knowledge, ExxonMobil did not make station owners aware of the dangerous properties of MTBE when seeking to use it as a gasoline additive. ExxonMobil denies that the gasoline containing MTBE was defectively designed and contends that there was no feasible alternative to using MTBE in gasoline.

Whether the product should have been marketed in that condition depends upon a balancing of the risks involved in using the product against (1) the product's utility and its costs, and (2) the risks, utility and costs of alternative designs as compared to the product the defendant did market.

It is not necessary to find that the defendant ExxonMobil knew of the product's potential for hurting people and property for you to decide that it was defectively designed. It is sufficient that a reasonable person who did in fact know of the product's potential for hurting people and property would have concluded that the product should not have been marketed in that condition.

If you find that, at the time the gasoline containing MTBE was made, distributed and sold it was not defectively designed, then you will find that the gasoline containing MTBE was not defective and you need proceed no further in your deliberations on this issue.

If you find that, at the time the gasoline containing MTBE was made, distributed and sold, the gasoline containing MTBE was defective because it contained a design defect, then you will proceed to consider whether the defect caused plaintiff's injury, that is, whether a reasonable person would regard it as a cause of the injury.

The City claims that MTBE has contaminated its wells and that by introducing Gasoline containing MTBE into a commingled product distribution system, ExxonMobil caused such contamination.  ExxonMobil claims that the City has not proved that MTBE contaminated its wells and has not proved that ExxonMobil caused such contamination.  If you find that one or more of the City's wells were contaminated with MTBE as a result of ExxonMobil's distribution of gasoline containing MTBE into a commingled product system, then you must find that the City's one or more of the City's Wells were contaminated by ExxonMobil under the commingled product theory.

Alternatively, the City also claims that ExxonMobil directly owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater and for that reason ExxonMobil directly caused the contamination in its wells.  ExxonMobil denies that it owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater.  If you find that ExxonMobil owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater and contaminated one or more of the City's wells, then you must find that ExxonMobil proximately caused the contamination of one or more of the City's wells.

If you find that the defect was not a substantial factor in causing plaintiff's injury, you need proceed no further in your deliberations on this issue.

Authority PJI 2:120 N.Y. Pattern Jury Instr.--Civil 2:120; *In re MTBE*, 2008 WL 1971538, * 2 (May 7, 2008); *In re Methyl Tertiary Butyl Ether (""MTBE") Products Liability Litigation,* 568F.Supp.2d 376 S.D.N.Y.,2008 (A reasonable jury could find that property with drinking wells that have been contaminated with MTBE is worth less than property with drinking wells that have not been contaminated. ōThe turpentine-like taste and odor of MTBE ... can make such drinking water unacceptable to consumers.ö Studies have also shown that inhalation and exposure to MTBE causes cancer in animals and it may cause cancer in humans such as leukemia and lymphoma) *citing U.S. Envtl. Prot. Agency, Achieving Clean Air and Clean Water:*

*The Report of the Blue Ribbon Panel on Oxygenates in Gasoline* 13, 77 (1999) available at http:// www. epa. gov/ oms/ consumer/ fuels/ oxypanel/ r 99021. pdf.; *In re MTBE*, No. 00 Civ. 1898, 2008 WL 2607852, at *4 n. 38 (S.D.N.Y.2008) (*citing In re MTBE*, 241 F.R.D. 435, 437 n. 2 (S.D.N.Y.2007)); *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 2007 WL 1601491 (S.D.N.Y., June 04, 2007) (Gasoline is a mixture of hundreds of compounds. Compared to the other components of gasoline, MTBE is extremely soluble in water, and relatively slow to degrade into other compounds. Due to its solubility, MTBE moves faster and farther in groundwater than other gasoline components. Due to its low degradation rate, it persists longer in soil and water than other gasoline components. These properties alone are not problematic, but MTBE also imparts an unpleasant taste and odor to drinking water that can be perceived at concentrations much lower than other gasoline components, and some studies suggest that it may be carcinogenic to animals and/or humans.); *Lugo v. LJN Toys, Ltd.*, 75 NY2d 850; *Micallef v. Miehle Co.*, 39 NY2d 376; Restatement (Second) of Torts § 402A, Comment i (1965) (ōThe article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. Good whiskey is not unreasonably dangerous merely because it will make some people drunk, and is especially dangerous to alcoholics; but bad whiskey, containing a dangerous amount of fuel oil, is unreasonably dangerous. Good tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful; but tobacco containing something like marijuana may be unreasonably dangerous. Good butter is not unreasonably dangerous merely because, if such be the case, it deposits cholesterol in the arteries and leads to heart attacks; but bad butter, contaminated with poisonous fish oil, is unreasonably dangerous.ö).

## PROPOSED FINAL INSTRUCTION NO. 9

### Strict Liability for Failure to Warn

A manufacturer, wholesaler, distributor, retailer, processor of materials, maker of a component part that sells a product in a defective condition is liable for injury that results from use of the product when the product is used for its intended or reasonably foreseeable purpose. See NY Pattern Jury Instruction 2:120; Jorhnson v. Johnson Chemical CO,m 588 N.Y.S.2d 607; Buley v. Rexnord Process Machinery Div., 482 N.Y.S.2d 104.

A product may be defective as a result of inadequate warnings or instructions. The burden of proving that the product was defective and that the defect was a substantial factor in causing plaintiff's injury is on the plaintiff.

The plaintiff, the City, claims that the gasoline containing MTBE manufactured by defendant ExxonMobil was defective because ExxonMobil failed to warn distributors, customers, station owners, its employees, gasoline truck drivers, the City, water providers, the public, the State of New York and the federal government about MTBE's hazardous and unusual properties.  For example, the City claims that ExxonMobil should have warned distributors, customers, station owners, its employees, gasoline truck drivers, the City, water providers, the public, the State of New York and the federal government that gasoline containing MTBE needed to be stored and handled differently than other gasoline because of its high solubility, high mobility, persistence, taste and odor, all of which makes it more likely to contaminate groundwater and drinking water, as well as the difficulty and cost of removing MTBE from water.  The City also claims that ExxonMobil should have warned station owners and customers that they needed to install monitoring wells and regularly test for MTBE contamination and that once such contamination was detected, it was extremely important to remediate the site

aggressively and quickly.  The City also claims that ExxonMobil should have warned distributors, customers, station owners, its employees, gasoline truck drivers, the City, water providers, the public, the State of New York and the federal government that gasoline stations located near water supplies needed to take special precautions and to upgrade their UST systems earlier than may otherwise have been required by law.   ExxonMobil denies that such warnings were needed.

The manufacturer of a product which is reasonably certain to hurt people or property if used in a way that the manufacturer should reasonably foresee is under a duty to use reasonable care to give adequate warnings of any dangers known to it or which in the use of reasonable care it should have known . Reasonable care means that degree of care which a reasonably prudent person would use under the same circumstances.

If you find that, at the time the gasoline containing MTBE was made, distributed and sold it had adequate warnings about MTBE's hazardous and unusual properties, the need to be handle MTBE differently than other gasoline because of its high solubility, the need to install monitoring wells, the need to regularly test for MTBE contamination, or the need to remediate the site aggressively and quickly once MTBE is detected, or the need for gasoline stations located near water supplies needed to take special precautions and to upgrade their UST systems earlier than required by law,, then you will find that the gasoline containing MTBE was not defective and you need proceed no further in your deliberations on this issue.

If you find that, when ExxonMobil made, distributed and sold the gasoline containing MTBE , the gasoline containing MTBE was defective because it did not contain or was not accompanied by adequate warnings, then you will proceed to consider whether the defect was a substantial factor  incausing the City's injury, that is, whether a reasonable person would regard it

as a cause of the injury.

The City claims that MTBE has contaminated its wells and that by introducing Gasoline containing MTBE into a commingled product distribution system, ExxonMobil caused such contamination. ExxonMobil claims that the City has not proved that MTBE contaminated its wells and has not proved that ExxonMobil caused such contamination. If you find that one or more of the City's wells were contaminated with MTBE as a result of ExxonMobil's distribution of gasoline containing MTBE into a commingled product system, then you must find that the City's one or more of the City's Wells were contaminated by ExxonMobil .

Alternatively, the City also claims that ExxonMobil directly owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater and for that reason ExxonMobil directly caused the contamination in its wells. ExxonMobil denies that it owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater. If you find that ExxonMobil owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater and contaminated one or more of the City's wells, then you must find that ExxonMobil proximately caused the contamination of one or more of the City's wells.

If you find that the defect was not a substantial factor in causing the City's injury, you need proceed no further in your deliberations on this issue.

Authority: N.Y. Pattern Jury Instr.--Civil 2:120; *In re Methyl Tertiary Butyl Ether (""MTBE")
Products Liability Litigation,* 568F.Supp.2d 376 S.D.N.Y.,2008 (A reasonable jury could find
that property with drinking wells that have been contaminated with MTBE is worth less than
property with drinking wells that have not been contaminated. õThe turpentine-like taste and
odor of MTBE ... can make such drinking water unacceptable to consumers.ö Studies have also
shown that inhalation and exposure to MTBE causes cancer in animals and it may cause cancer

in humans such as leukemia and lymphoma) *citing U.S. Envtl. Prot. Agency, Achieving Clean Air and Clean Water: The Report of the Blue Ribbon Panel on Oxygenates in Gasoline* 13, 77 (1999) available at http:// www. epa. gov/ oms/ consumer/ fuels/ oxypanel/ r 99021. pdf.; *In re MTBE*, No. 00 Civ. 1898, 2008 WL 2607852, at *4 n. 38 (S.D.N.Y.2008) (*citing In re MTBE*, 241 F.R.D. 435, 437 n. 2 (S.D.N.Y.2007)); *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 2007 WL 1601491 (S.D.N.Y., June 04, 2007) (Gasoline is a mixture of hundreds of compounds. Compared to the other components of gasoline, MTBE is extremely soluble in water, and relatively slow to degrade into other compounds. Due to its solubility, MTBE moves faster and farther in groundwater than other gasoline components. Due to its low degradation rate, it persists longer in soil and water than other gasoline components. These properties alone are not problematic, but MTBE also imparts an unpleasant taste and odor to drinking water that can be perceived at concentrations much lower than other gasoline components, and some studies suggest that it may be carcinogenic to animals and/or humans.); *Lugo v. LJN Toys, Ltd.*, 75 NY2d 850; *Micallef v. Miehle Co.*, 39 NY2d 376; Restatement (Second) of Torts § 402A, Comment i (1965) ("The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. Good whiskey is not unreasonably dangerous merely because it will make some people drunk, and is especially dangerous to alcoholics; but bad whiskey, containing a dangerous amount of fuel oil, is unreasonably dangerous. Good tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful; but tobacco containing something like marijuana may be unreasonably dangerous. Good butter is not unreasonably dangerous merely because, if such be the case, it deposits cholesterol in the arteries and leads to heart attacks; but bad butter, contaminated with poisonous fish oil, is unreasonably dangerous.").

## PROPOSED FINAL INSTRUCTION NO. 10

### Negligence

Negligence is lack of ordinary care. It is a failure to use that degree of care that a reasonably prudent person would have used under the same circumstances. Negligence may arise from doing an act that a reasonably prudent person would not have done under the same circumstances, or, on the other hand, from failing to do an act that a reasonably prudent person would have done under the same circumstances.  A manufacturer, distributor and retailer of a product owes a duty to use reasonable care in the manufacture, distribution and sale of the product so that it will be reasonably safe for its intended or foreseeable uses. Reasonable care means that degree of care that a reasonably prudent manufacturer, distributor or retailer of such a product would use in the making, storing and dispensing of the product and its materials in order to produce a reasonably safe product.

The City claims that the defendant ExxonMobil negligently manufactured, promoted, distributed, and sold gasoline containing MTBE.  Among other things, the City claims that ExxonMobil negligently failed to test MTBE to determine its potential toxicity to humans by way of drinking water exposure.  The City also claims that ExxonMobil negligently failed to warn distributors, customers, station owners, its employees, gasoline truck drivers, the City, water providers, the public, the State of New York and the federal government about MTBE's hazardous and unusual properties.  For example, the City claims that ExxonMobil should have warned distributors, customers, station owners, its employees, gasoline truck drivers, the City, water providers, the public, the State of New York and the federal government that gasoline containing MTBE needed to be stored and handled differently than other gasoline because of its high solubility, high mobility, persistence, taste and odor, all of which makes it more likely to

contaminate groundwater and drinking water, as well as the difficulty and cost of removing MTBE from water. The City also claims that ExxonMobil should have warned station owners and customers that they needed to install monitoring wells and regularly test for MTBE contamination and that once such contamination was detected, it was extremely important to remediate the site aggressively and quickly. The City also claims that ExxonMobil should have warned distributors, customers, station owners, its employees, gasoline truck drivers, the City, water providers, the public, the State of New York and the federal government that gasoline stations located near water supplies needed to take special precautions and to upgrade their UST systems earlier than may otherwise have been required by law. ExxonMobil denies that such warnings were needed.

In addition, the City claims that ExxonMobil was also negligent because (1) as a manufacturer, distributor, and retailer of gasoline with MTBE, ExxonMobil had a duty of care to ensure that the gasoline containing MTBE was properly distributed, stored, and dispensed; (2) ExxonMobil failed to reasonably ensure that the gasoline containing MTBE which they manufactured, distributed, and retailed was properly distributed, stored, and dispensed and (3) ExxonMobil showed complete disregard for, and was reckless of, the rights and safety of others, in failing to do so.

In considering any lack of reasonable care on ExxonMobil's part, you must keep in mind that merely because ExxonMobil may have complied with certain minimum  legal  standards, such as EPA regulations, does not mean that ExxonMobil is not liable to the City for negligence. Similarly, just because  EPA or another part of the government  failed to take action regarding the possibility that MTBE could contaminate groundwater, does not mean that ExxonMobil's actions were reasonable if it knew that MTBE posed a danger to groundwater and that

underground gasoline storage systems have a propensity to leak.

If you find that the gasoline containing MTBE was not reasonably safe for its intended or foreseeable uses or that ExxonMobil failed to used reasonable care in adequately warning station owners and others as noted earlier in this instruction or that ExxonMobil failed to use reasonable care in manufacturing, storing and distributing gasoline containing MTBE, or failed to ensure that station owners and others properly stored, dispensed or transported MTBE, you will find that ExxonMobil was negligent and must then determine whether ExxonMobil's negligence caused the City's injury.

The City claims that MTBE has contaminated its wells and that by introducing Gasoline containing MTBE into a commingled product distribution system, ExxonMobil caused such contamination. ExxonMobil claims that the City has not proved that MTBE contaminated its wells and has not proved that ExxonMobil caused such contamination. If you find that one or more of the City's wells were contaminated with MTBE as a result of ExxonMobil's distribution of gasoline containing MTBE into a commingled product system, then you must find that the City's one or more of the City's Wells were contaminated by ExxonMobil under the commingled product theory.

Alternatively, the City also claims that ExxonMobil directly owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater and for that reason ExxonMobil directly caused the contamination in its wells. ExxonMobil denies that it owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater. If you find that ExxonMobil owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater and contaminated one or more of the

City's wells, then you must find that ExxonMobil proximately caused the contamination of one or more of the City's wells.

If, however, you find that the gasoline containing MTBE was reasonably safe for its intended or foreseeable uses or that ExxonMobil used reasonable care in manufacturing, distributing, transporting, selling, storing and dispensing it, you will find that ExxonMobil was not negligent.

Authority: N.Y. Pattern Jury Instr.--Civil 2:125; N.Y. Pattern Jury Instr.--Civil 2:125; See Ferebee, 736 F.2d at 1542. Burke v. Dow Chemical Co.797 F.Supp. 1128, 1142 E.D.N.Y.,1992 (As a general rule, compliance with federal standards does not, in and of itself, immunize a manufacturer or retailer from state law tort liability.)

## PROPOSED FINAL INSTRUCTION NO. 11

### Gross Negligence or Willful Misconduct

In this case, you must decide whether defendant was guilty of gross negligence or willful misconduct. Negligence is a failure to exercise ordinary care. Gross negligence and willful misconduct are more than the failure to exercise reasonable care.

Gross negligence means a failure to use even slight care, or conduct that is so careless as to show complete disregard for the rights and safety of others.

Willful misconduct occurs when a person intentionally acts or fails to act knowing that its conduct will probably result in injury or damage. Willful misconduct also occurs when a person acts in so reckless a manner or fails to act in circumstances where an act is clearly required, so as to indicate disregard of the consequence of his or her action or inaction.

Here, the City claims that ExxonMobil knew that underground storage systems had very high leak rates and that MTBE was extremely hazardous to groundwater and harmful to human health before it decided to put MTBE into gasoline.  The City further claims that while in possession of this knowledge regarding MTBE's hazards, both directly and by and through agents, ExxonMobil actively concealed MTBE's hazardous properties from the United States, New York State, the City, other state governments, downstream users, distributors and consumers, concealing the truth from them by failing to warn them about MTBE's hazardous and unusual properties; intentionally omitting information about MTBE's properties from regulatory disclosures and communications; undermining third party studies such as the Maine Report that tried to sound the alarm regarding MTBE's hazardous and unusual properties; suppressing and failing to disclose their own internal studies and analyses that exposed the hazards of MTBE despite legal duties to the United States, the City and others that required them

to do so; intentionally withholding funding for industry studies regarding MTBE∅s impact on groundwater and human health in an effort to prevent the truth about MTBE from coming out. ExxonMobil denies all such claims in their entirety.

The City also claims that ExxonMobil made affirmative misstatements concerning MTBE to the United States, New York State, the City, other state governments, downstream users, distributors and consumers. For example, the City claims that ExxonMobil represented that gasoline containing MTBE could be treated like any other gasoline (when in fact it had unusual properties that rendered it far more hazardous); that no special handling of gasoline containing MTBE was required (when in fact it was); that MTBE was not harmful to human health (when in fact it is); that they were good product stewards (when in fact they were not); that gasoline containing MTBE would not reach groundwater in large quantities (when they knew it would); and that they would timely remediate any MTBE contamination that resulted from their use of it in gasoline (when in fact they had no intention of remediating any site they did not directly own and even then, they would pursue the lowest cost form of remediation regardless of its effectiveness). ExxonMobil denies all such claims.

The City further claims that by the time ExxonMobil chose to use MTBE as an oxygenate in reformulated gasoline, it knew that the introduction of higher concentrations of MTBE into gasoline would result in widespread groundwater contamination that would be extremely difficult and costly to remediate and that an ever increasing quantity of MTBE would contaminate drinking water rendering it unfit for human consumption (both because of its offensive taste and odor and because of its threat to human health). The City claims that despite this in-depth knowledge of the hazards of MTBE, ExxonMobil, both directly and by and through agents, co-conspirators, and joint-venturers, knowingly produced, distributed, marketed, and

25

promoted MTBE and gasoline containing MTBE, while consciously disregarding MTBE's

harmful impact on groundwater and human health.  ExxonMobil denies all such claims.

The City also claims that ExxonMobil, through agents, co-conspirators, joint-venturers,

and downstream handlers, placed gasoline containing MTBE into underground storage systems

that ExxonMobil knew would leak and that ExxonMobil, through agents, co-conspirators, joint-

venturers, and downstream handlers, also failed to timely upgrade underground storage systems

to avoid leaks and to advise downstream handlers of their gasoline that upgrades were

immediately needed to address MTBE's unique hazards and that ExxonMobil failed to adopt

MTBE-specific procedures for the remediation of suspected and known releases of MTBE,

instead treating MTBE releases like slower moving BTEX releases, all but guaranteeing its

proliferation in groundwater.  The City further claims that ExxonMobil knew that when such

gasoline containing MTBE reached groundwater, it would make its way to drinking water

supplies, resulting in extraordinary treatment costs and/or human exposure and related health

impacts.  When confronted repeatedly with the truth about MTBE, instead of discontinuing its

use and issuing appropriate warnings, throughout the relevant period, ExxonMobil continued to

actively promote MTBE and MTBE gasoline to the public and government agencies as

environmentally sound products appropriate for widespread production, distribution, sale, and

use and ExxonMobil continued to intentionally or recklessly trumpet MTBE gasoline's

purported environmental benefits while downplaying its risks. ExxonMobil denies all such

claims.

In sum, you must decide whether ExxonMobil knew that there was a high risk that

MTBE would harm people or property and that it chose to use MTBE in gasoline anyway in

conscious or reckless disregard of the rights and safety of the City and its citizens.  If you decide

that ExxonMobil acted with conscious or reckless disregard for the rights and safety of the City and its citizens, then you will find that ExxonMobil was guilty of gross negligence or willful misconduct.  If you decide that ExxonMobil did not consciously or recklessly disregard the rights and safety of the City and its citizens, then you then you will find that ExxonMobil was not guilty of gross negligence or willful misconduct.

Authority:  NYPJI 2:10A

## PROPOSED FINAL INSTRUCTION NO. 12

### <u>Negligence--Foreseeability</u>

Negligence requires both a reasonably foreseeable danger of injury to another and conduct that is unreasonable in proportion to that danger. A person is only responsible for the results of his or her conduct if the risk of injury is reasonably foreseeable. The exact occurrence or exact injury does not have to be foreseeable; but injury as a result of negligent conduct must be not merely possible, but be probable.

There is negligence if a reasonably prudent person could foresee injury as a result of his or her conduct, and acted unreasonably in the light of what could be foreseen. On the other hand, there is no negligence if a reasonably prudent person could not have foreseen any injury as a result of his or her conduct, or acted reasonably in the light of what could have been foreseen.

In this case, if you find that ExxonMobil knew that underground storage systems had high leak rates or  knew or should have known of the danger MTBE posed to groundwater and drinking water supplies, you must find that it is foreseeable that MTBE from ExxonMobil could contaminate the City's groundwater and drinking water supplies.


Authority: NYPJI 2:12

## PROPOSED FINAL INSTRUCTION NO. 13

### Public Nuisance

A public nuisance is conduct or omissions which offend, interfere with or cause damage to the public in the exercise of rights common to all in a manner such as to offend public morals *or* endangers or injure the property, health, safety or comfort of a considerable number of persons. The seepage of hazardous chemicals or petroleum products into a public water supply constitutes a public nuisance. The release or threat of release of hazardous chemicals or petroleum products into the environment unreasonably infringes upon a public right and thus is a public nuisance.

. To establish a claim for public nuisance, a Plaintiff that is a municipality needs to show that the defendant's conduct threatens to harm property or that it threatens the health, safety or comfort of a considerable number of persons. However, in the alternative, if a Plaintiff that is a municipality can show that the defendant violated a statute or law, it does not need to show that the defendant's conduct was harmful or threatened to harm property or a considerable number of people.

The City claims that ExxonMobil created and distributed gasoline containing MTBE in a commingled product system that it knew would end up in underground storage systems and contaminate of the City's property and other's property. The City further claims that ExxonMobil manufactured, distributed,sold and supplied gasoline containing MTBE in Jamaica, Queens, New York that contaminated the ground water in Jamaica, Queens, New York with MTBE and has interfered with its ability to provide clean and potable water to the public in the case of emergency or infrastructure difficulties and, as a result threatens the health, safety or comfort of a considerable number of persons City is unable to provide clean and potable water to its residents.. The City also claims that ExxonMobil directly owned or controlled underground storage systems

that were leaky and that those underground storage systems leaked gasoline containing MTBE into

the soil and groundwater and for that reason actually harmed property and threatens to cause more

harm to property and threatens the safety of it citizens by making it more difficult for the City to

supply water to them in the event of service disruption.   ExxonMobil denies all such claims.  If you

find that ExxonMobil's conduct has either harmed property or threatens to cause harm to property

or that its conduct threatens the safety of the City's citizens by making it more difficult for the City

to supply water to them in the event of service disruption, then you must find that ExxonMobil has

created a public nuisance.

Alternatively, you must also find that ExxonMobil has created a public nuisance if you find

that it violated  a statute.  The first statute that the City claims ExxonMobil violated is New York

City Administrative Code Section 17-142.  Section 17-147  provides: "The word "nuisance," shall

be held to embrace public nuisance, as known at common law or in equity jurisprudence; *whatever*

*is dangerous to human life or detrimental to health*; whatever building or erection, or part or cellar

thereof, is overcrowded with occupants, or is not provided with adequate ingress and egress to and

from the same or the apartments thereof, or is not sufficiently supported, ventilated, sewered,

drained, cleaned or lighted in reference to its intended or actual use; and *whatever renders* the air or

human food or *drink, unwholesome. All such nuisances are hereby declared illegal."*

The City claims that ExxonMobil made MTBE,added it to gasoline, and transported MTBE-

containing gasoline through a distribution system it knew was susceptible to leaks and spills and

such conduct rendered water designated for use for human drink unwholesome and endangering

human life and health.  The City also claims that ExxonMobil also owned and controlled

underground storage systems that released MTBE and other petroleum products directly into the

environment, which further rendered human drink unwholesome.  If you find that ExxonMobil's

conduct was dangerous to human life or human health or rendered human drink unwholesome, you must find that ExxonMobil violated   Administrative Code Section 17-142 .   The City further claims that ExxonMobil violated Administrative Code Section 24-303, which provides: "*a. It shall be unlawful for any person to* throw or *deposit, or cause to be thrown or deposited any* dead animal or other *offensive matter or anything whatever* in either of the reservoirs or in any lake, pond or stream, or in any aqueduct or pipe from or through which the water supply of the city shall be drawn." If you find that ExxonMobil deposited or caused to be deposited any offensive matter or anything whatever into water from which the City's water supply shall be drawn, you must find that ExxonMobil violated Administrative Code Section 24-303.   The City further claims that ExxonMobil violated New York Navigation Law Section 173.  New York Navigation Law Section 173 prohibits the discharge of petroleum.  "Petroleum" means oil or petroleum of any kind and in any form including, but not limited to, oil, petroleum, fuel oil, oil sludge, oil refuse, oil mixed with other wastes and crude oils, gasoline and kerosene.  The City claims that gasoline containing MTBE is a petroleum product and that ExxonMobil directly owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater and for that reason ExxonMobil has discharged petroleum in violation of Section 173.  If you find that ExxonMobil discharged gasoline containing MTBE into the environment, then you must find that ExxonMobil violated New York Navigation Law Section 173.

[1]

---

[1] *See also* N.Y. Navig. § 172 ("8. "Discharge" means any intentional or unintentional action or omission resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of petroleum into the waters of the state or onto lands from which it might flow or drain into said waters, or into waters outside the jurisdiction of the state when damage may result to the lands, waters or natural resources within the jurisdiction of the state"); *id.* ("15. "Petroleum" means

If you find that ExxonMobil's conduct violated any statute or that ExxonMobil's conduct

has either harmed property or threatens to cause harm to property or that its conduct threatens the

safety of the City's citizens by making it more difficult for the City to supply water to them in the

event of service disruption, then you must find that ExxonMobil has created a public nuisance.  If

on the other hand you find that ExxonMobil's conduct has not harmed property and does not

threaten to cause harm to property and that its conduct does not threaten the safety of the City's

citizens by making it more difficult for the City to supply water to them in the event of service

disruption, and that ExxonMobil has not violated any statute, then you must find that ExxonMobil

has not created a public nuisance.

Authority:  NY PJI 3:17; *In re MTBE*, 175 F.Supp2d at 627 n.51 (*citing State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1051 (2d Cir. 1895)) ("the release or threat of release of hazardous waste into the environment unreasonably infringes upon a public right and thus is a public nuisance as a matter of New York law"); *State v Schenectady Chemicals, Inc.*, 459 N.Y.S.2d 971, 978 (1983) ("The common law rule has long been that water, like air, is an element in which no person can have an absolute property, yet, it is also, like air free for the use of all, and the law has been diligent and rigorous to maintain it in its natural purity); *Copart Indus., Inc. v. Consol. Edison Co.*, 41 N.Y.2d 564, 567 (1977) (emphasis added); *see also In re MTBE*, 175 F.Supp.2d 593, 627 n. 51 (S.D.N.Y. 2001) (same); *State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1051 (2d Cir.1985); *In re MTBE*, 175 F.Supp.2d at 627 n. 51; *see* N.Y.C. Admin. Code § 24-302 (statute), *New York Trap Rock Corporation v. Town of Clarkstown*, 299 N.Y. 77, 83 (1949) (common law); *N.Y. State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1361 (2d Cir. 1989) (same); Rest. 2d Torts § 821C (2)(b)l; *N.Y. State Nat. Org. for Women*, 886 F.2d at 1361; *State of N.Y. v. Shore Realty Corp.* 759 F.2d 1032, 1051 (2d Cir. 1985); *Incorporated Village of Freeport v. Jefferson Indoor Marina, Inc.*, 556 N.Y.S.2d 150, 152 (App. Div. 1990); *City of New York v. Bilynn Realty Corp.*, 499 N.Y.S.2d 1011, 1013 (App. Div. 1986); *Shore Realty Corp.*, 759 F.2d at 1051; *See* Rest. 2d Torts § 821C (2)(b) ("In order to maintain a proceeding to enjoin to abate a public nuisance, one must í    (b) have authority as a public official or public agency to represent the state or a political subdivision in the matter"); *see also State v. Schenectady Chemicals, Inc.*, 479 N.Y.S.2d at 1014 (action may be maintained by one who is "clearly authorized" to commence legal proceedings to abate a public nuisance); *c.f. Copart Industries, Inc.*, 41 N.Y.2d at 568 (special damage required for *individual* to maintain an action for public nuisance); *c.f. In re MTBE*, 2005 WL 1500893, * 3 (S.D.N.Y. 2005) (discussing statutorily authorized public nuisance claims under California law); *See New York Trap Rock Corporation v. Town of Clarkstown*, 299 N.Y. 77, 83 (1949) (municipal corporation has inherent authority to bring

---

oil or petroleum of any kind and in any form including, but not limited to, oil, petroleum, fuel oil, oil sludge, oil refuse, oil mixed with other wastes and crude oils, gasoline and kerosene").

public nuisance action to protect the health of its citizens); *New York State Nat. Organization for Women*, 886 F.2d at 1361 (the City "is a proper party to bring an action to restrain a public nuisance that allegedly may be injurious to the health and safety of its citizens"); *City of New York v. Milhelm Attea & Bros., Inc.*, 550 F.Supp.2d 332, 350 (E.D.N.Y. 2008) (same).  As the Court of Appeals recognized in upholding the City's authority to maintain a police force outside of city limits to protect its water supply, *People v. Van Buren*, 4 N.Y.3d 640, 649 (2005).  *N.Y. State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1361 (2d Cir. 1989); *State of N.Y. v. Shore Realty Corp.*  759 F.2d 1032, 1051 (2d Cir. 1985) (collecting NY state cases); *New York ex rel. Spitzer v. Cain*, 418 F.Supp.2d 457, 483 (S.D.N.Y. 2006) (same); *see also People ex rel. Bennett v. Laman*  277 N.Y. 368, 380 (1938) ("the injunctive power may be invoked when the health or very existence of the people *is menaced* by the deprivation of an essential food commodity, or *its service in a contaminated state*") (emphasis added). *See Incorporated Village of Freeport v. Jefferson Indoor Marina, Inc.*, 556 N.Y.S.2d 150, 152 (App. Div. 1990) ("no special injury or damage to the public need be alleged, and the commission of the prohibited act is sufficient to warrant granting the injunction"); *City of New York v. Bilynn Realty Corp.*, 499 N.Y.S.2d 1011, 1013 (App. Div. 1986) (same); *City of New York v. Casbar, Nicobel LLC*, 2009 WL 1026593, *2 (N.Y. Sup. April 15, 2009) (holding that where conduct "violates a statutory scheme designed to protect the public health, that the conduct constitutes a violation and may be considered a public nuisance subject to the Administrative Code" "relief may be granted without a demonstration of special damages or injury to the public. The proof of the violation alone is sufficient grounds for the issuance of injunctive relief"); *Shore Realty Corp.*, 759 F.2d at 1051 (violations of N.Y. Envtl. Conserv. Law §§ 27-0913(1), 27-0914(1) and 27-0914(2) constituted public nuisance per se).

33

## PROPOSED FINAL INSTRUCTION NO. 14

### Private Nuisance

While landowners in an organized community must tolerate some damage, annoyance and inconvenience from each other, no one may make an unreasonable use of his or her land to the material injury of a neighbor's right to use and enjoy his or her land. When there is such an unreasonable use, the law designates it a private nuisance and permits the injured neighbor to recover damages. A plaintiff seeking to recover damages for private nuisance must show, first, that conduct of the defendant interfered with plaintiff's right to use and enjoy its land, second, that the interference was substantial, third, that defendant's conduct was intentional, and fourth, that defendant's conduct was unreasonable under all of the circumstances.

The City in this case claims that ExxonMobil has unreasonably interfered with plaintiff's use of its property by contaminating the groundwater feeding one or more of its Wells in and around Jamaica in Queens County New York with MTBE The City claims that MTBE has contaminated its wells and that by introducing Gasoline containing MTBE into a commingled product distribution system, ExxonMobil is a substantial cause of such contamination. ExxonMobil claims that the City has not proved that MTBE contaminated its wells and has not proved that ExxonMobil caused such contamination. If you find that one or more of the City's wells were contaminated with MTBE as a result of ExxonMobil's distribution of gasoline containing MTBE into a commingled product system, then you must find that the City's use and enjoyment of one or more of the City's Wells was interfered with by ExxonMobil under the commingled product theory.

Alternatively, the City also claims that ExxonMobil directly owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater and for that reason ExxonMobil directly

caused the contamination in its wells.  ExxonMobil denies that it owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater.  If you find that ExxonMobil owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater and contaminated one or more of the City's wells, then you must find that ExxonMobil interfered with the City's use and enjoyment of one or more of the City's wells.

Defendant denies that its conduct caused any interference, denies that there has been any substantial interference and says that its use of its own property has at all times been reasonable. The burden of proving all the elements of private nuisance is on plaintiff.

Unless you find that defendant interfered with plaintiff's right to use and enjoy its land or groundwater in and around Jamaica Queens County New York, you will find for defendant. If you find that defendant did so interfere, then you must consider whether the interference was substantial. To be substantial, the interference must be real and appreciable, not imagined or petty. The test is not what disturbs or annoys the plaintiff, but whether reasonable persons living in the locality would be appreciably annoyed or disturbed by the interference. If you find that defendant interfered in the plaintiff's use and enjoyment of its land, but that the interference was not substantial, you will find for the defendant. If however, you find that there was a substantial interference, you will next consider whether defendant's conduct was intentional.

Here the City asserts that ExxonMobil intentionally created MTBE, intentionally added it to gasoline, and intentionally transported MTBE-containing gasoline through a distribution system it knew was susceptible to leaks and spills; that ExxonMobil acted, knowing that MTBE had a higher propensity to contaminate groundwater than other gasoline additives, and that

unintentional releases of gasoline frequently occurred.  For example, the City asserts that

defendants knew of a national crisis involving gasoline leaking from multiple sources, such as

underground storage systems and that thousands of gallons of gasoline enter the soil annually

from gasoline-dispensing stations due to consumer and jobber overfills and from leaks.

ExxonMobil claims that its conduct was not intentional.  If you find that ExxonMobil

intentionally created and distributed MTBE-containing gasoline while having an awareness of

the vulnerabilities in the gasoline distribution and storage system, then you must find that

ExxonMobil was substantially certain that MTBE would enter plaintiffs' property and therefore

that ExxonMobil's conduct was intentional.

> If you find that defendant acted for the purpose of interfering with plaintiff's use and
> enjoyment of its land, or that, though defendant did not, it knew that such interference was
> substantially certain to result from its conduct your finding will be that defendant's conduct was
> intentional. If you find that defendant's conduct was not intentional, you will find for defendant.
> However, if you find that defendant's conduct was intentional, you will next consider whether
> defendant's conduct was unreasonable.

> It is in the public interest that each landowner be free to lawfully use its property to the
> fullest possible extent consistent with the right of others to use their own property free from
> unreasonable interference. Thus, whether particular conduct is a nuisance is a question of degree,
> requiring you to consider the need for defendant's conduct, its usefulness and social value, and
> weigh that against the gravity of the harm which the plaintiff suffered and is suffering. In
> determining whether defendant's conduct was unreasonable, you must consider all of the
> circumstances including the nature and purpose of defendant's use and its value to the
> community, extent and frequency of the interference with plaintiff's use, whether the interference

can be avoided or lessened without undue hardship to defendant. No one of these factors is conclusive, but all are to be considered together and in relation to all of the surrounding circumstances. If you find that defendant's conduct was not unreasonable, you will find for defendant. However, if you find that there was an interference with plaintiff's right to use and enjoy its land, that the interference was substantial, un-reasonable, and intentionally caused by defendant's conduct, you will find for plaintiff the City of New York.

Authority:  NYPJI 3:16; Copart Industries, Inc. v. Consolidated Edison Co., 41 NY2d 564; Turner v, Coppola, 424 NYS2d 864;  *In re MTBE*, 379 F.Supp.2d at 426-27.

## PROPOSED FINAL INSTRUCTION NO. 15

### Trespass

A person who, without justification or permission, intentionally goes or causes a person or thing to go upon the property of another person commits what is known in the law as a trespass, and is liable for any damages cause as a result . To establish a claim for trespass under New York law, a plaintiff needs to show that it has a real property right (this can be ownership, leashold etc.) and that the defendant intentionally infringed that right.

The City has established that as owner of the wells in Jamaica, Queens County, New York, the City has property rights to the water they draw.

The first question for you to decide is whether ExxonMobil's conduct caused the MTBE to enter the City's property and contaminate its groundwater. If you find that the MTBE did not enter the City's property or that, if it did, it was not as a result of ExxonMobil's act, there would be no trespass by the ExxonMobil.

The City claims that MTBE has contaminated its wells and that by introducing Gasoline containing MTBE into a commingled product distribution system, ExxonMobil caused such contamination. ExxonMobil claims that the City has not proved that MTBE contaminated its wells and has not proved that ExxonMobil caused such contamination. If you find that one or more of the City's wells were contaminated with MTBE as a result of ExxonMobil's distribution of gasoline containing MTBE into a commingled product system, then you must find that the City's one or more of the City's Wells were contaminated by ExxonMobil under the commingled product theory.

Alternatively, the City also claims that ExxonMobil directly owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater and for that reason ExxonMobil directly

caused the contamination in its wells. ExxonMobil denies that it owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater. If you find that ExxonMobil owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater and contaminated one or more of the City's wells, then you must find that ExxonMobil proximately caused the contamination of one or more of the City's wells.

Intent involves the state of mind with which an act is done. If a person acts voluntarily with the purpose of bringing about a certain result, he or she is said to have intended that result. Further, although a person does not act with the purpose of bringing about a result, if he or she acts under circumstances known to him or her that make it substantially certain that the result will follow, the person is said to have intended that result.

For a plaintiff to prevail on a claim for trespass in New York, the trespasser need not intend or expect the damaging consequence of his intrusion, but he must intend the act which amounts to or produces the unlawful invasion, and the intrusion must at least be the immediate or inevitable consequence of what he willfully does, or which he does so negligently as to amount to willfulness. To constitute such a trespass, the act done must be such as will to a substantial certainty result in the entry of foreign matter.

Here the City asserts that ExxonMobil intentionally created MTBE, intentionally added it to gasoline, and intentionally transported MTBE-containing gasoline through a distribution system it knew was susceptible to leaks and spills; that ExxonMobil acted, knowing that MTBE had a higher propensity to contaminate groundwater than other gasoline additives, and that unintentional releases of gasoline frequently occurred. For example, the City asserts that

defendants knew of a national crisis involving gasoline leaking from multiple sources, such as underground storage systems and that thousands of gallons of gasoline enter the soil annually from gasoline-dispensing stations due to consumer and jobber overfills and from leaks. ExxonMobil claims that its conduct was not intentional.  If you find that ExxonMobil intentionally created and distributed MTBE-containing gasoline while having an awareness of the vulnerabilities in the gasoline distribution and storage system, then you must find that ExxonMobil was substantially certain that MTBE would enter plaintiffs' property and therefore that ExxonMobil's conduct was intentional.

If you find that the City has a real property right in one or more of its Wells and the water they draw and that the ExxonMobil intentionally infringed that right by contaminating the groundwater that feeds one or more of those Wells with MTBE under either the commingled product theory or directly, then you must find for the City and find that ExxonMobil has committed a trespass.

Authority NY PJI 3:8; In re MTBE, 379 F.Supp.2d at 426-27; *See Scribner v. Summers*, 84 F.3d 554, 557 (2d Cir. 1996) ("Under New York law, trespass is the intentional invasion of another's property"); *See, e.g., Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 95 (1993) (nominal damages "protect a landowner's right to be free of trespass"); *New York Rubber Co. v. Rothery*, 132 N.Y. 293, 295-96 (1892) (it is error to limit the issue to the interference with the plaintiff's present use of water rights and to refuse to instruct the jury that plaintiff's right to recover nominal damages does not depend on showing actual injury); *Burger v. Singh*, 816 N.Y.S.2d 478, 480 (App. Div. 2006) ("nominal damages are presumed from a trespass"); *Mondello v. Newsday, Inc.*, 774 N.Y.S.2d 794, 794-95 (App. Div. 2004) ("[e]ven without pleading actual damages for trespass, a plaintiff is entitled to nominal damages"); *Shiffman v. Empire Blue Cross and Blue Shield*, 681 N.Y.S.2d 511, 512 (App. Div. 1998) (nominal damage is always presumed from a trespass); *Ligo v. Gerould*, 665 N.Y.S.2d 223, 224 (App. Div. 1997) ("[i]n the absence of proven damages, plaintiffs are entitled to nominal damages in an action for trespass"); *see also* 87 C.J.S. Trespass § 132 ("[e]very trespass gives a right to at least nominal damages"); 75 Am. Jur. 2d Trespass § 186 (in trespass action "the law presumes that a plaintiff has been damaged without the necessity of proof of actual damages"); *See, e.g.*, *In re MTBE*, 457 F.Supp.2d 455, 462 (S.D.N.Y. 2006) ("Usufructuary interests are possessory property rights"); *Hathorn v. Natural Carbonic Gas Co.*, 194 N.Y. 326, 338 (1909) ("subterranean waters have always been treated as a mineral in the decisions relating to their use and

enjoyment.ö); *Hathorn v. Natural Carbonic Gas Co.*, 112 N.Y.S. 374, 378 (App. Div. 1908) (percolating water found in land belongs to the owner of the land); *Keeler v. Tubbs*, 147 N.Y.S.2d 166, 170 (Sup. Ct. 1955) (öthe right of a landowner to sink wells, and gather and use percolating waters as he will is a property right which cannot be taken away from himö); *In re MTBE*, 379 F.Supp.2d 348, 426 (S.D.N.Y. 2005); *In re MTBE*, 379 F.Supp.2d at 426-27.

**PROPOSED FINAL INSTRUCTION NO. 16**

**New York Navigation law**

In this action, the plaintiff, the City, seeks to recover for damages it suffered as a result of an oil spill caused by leaking underground storage systems . A private party injured by an oil spill has the right to recover its losses from the responsible party.

The City claims that gasoline containing MTBE is a petroleum product and that ExxonMobil directly owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater and for that reason ExxonMobil directly caused the contamination in one or more of its wells. ExxonMobil denies that it owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater.  If you find that ExxonMobil owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater and contaminated one or more of the City's wells, then you must find that ExxonMobil contaminated the City's property.

 If you find ExxonMobil's conduct or inaction caused or contributed to the oil spill, you will find for the City and award such an amount that you find will fairly compensate the City for the property damage it sustained as a result of the oil spill. It is not necessary for you to find that ExxonMobil owned the property from which the oil spill originated to impose liability.

Authority:  NY PJI 10:5

## PROPOSED FINAL INSTRUCTION NO. 17

### <u>Toxic Substances Control Act</u>

Section 8(e) of the Toxic Substances Control Act provides that õAny person who manufactures, processes, or distributes in commerce a chemical or mixture and who obtains information which reasonably supports the conclusion that such substance or mixture presents a substantial risk of injury to health or the environment shall immediately inform the [EPA] Administrator of such information unless such person has actual knowledge that the Administrator has been adequately informed of such information.ö 15 U.S.C. §2607.  TSCA also provides that õit shall be unlawful for any person to . . . (3) fail or refuse to . . . (B) submit reports, notices, or other information . . . as required by this chapter or rule thereunder . . . .ö 15 U.S.C. s 2614(3)(B)

Section 20(a)(1) of TSCA, 15 U.S.C. s2619 (a)(1) permits any person to commence a civil action against any person who is alleged to be in violation of the provisions of TSCA noted above to restrain these violations.

MTBE  and gasoline containing MTBE are chemical substances or mixtures as defined by TSCA, 15 U.S.C. ss 2602(2), (8).

To prevail on a claim under Section 8(e) of the Toxic Substances Control Act (õTSCAö), the City must show that it has standing to sue under TSCA because it is adversely affected by defendant's noncompliance with TSCA.  Proof of injury in fact is sufficient, causation is not required.

The City must also show that proper notice of intention to file a TSCA citizen suit was served on defendant and EPA; that at least 60 days passed after notice was served before the TSCA citizen action was filed in the appropriate United States District Court; that during the 60

days between service of the notice and the filing of the action, no enforcement action has been undertaken by EPA to bring defendant into compliance with the specific TSCA violation that is the subject of the citizen suit.  Defendant ExxonMobil admits that it received such notice.

The City must also show that the material or substance at issue, in this case, MTBE, constitutes a chemical, substance or mixture that is regulated under TSCA and that Defendant's handling of the material or substance constitutes an ongoing violation of a TSCA statutory provision or a regulation promulgated pursuant to such a provision.

Plaintiff must also show that Defendant failed or refused to submit reports, notices, or other information to the EPA regarding the adverse environmental or health-related impacts of the regulated substance, in this case MTBE.   A manufacturer's belief about the quality of the study plays no role in determining whether it should have been reported.  The only question is whether the study, "reasonably supports the conclusion that such substance or mixture presents a substantial risk of injury to health or the environment.

Here the City asserts that ExxonMobil failed to report the following information to the EPA and that such information was required to be reported:

[Incidents to be inserted according to proof, but they will include without limitation: adverse employee health reports; incidents of contamination of drinking water supplies; remediation costs; internal studies and memorandum showing MTBE's risks; litigation incidents, etc.]

Once the City proves that ExxonMobil has withheld information from the EPA, the burden of persuasion shifts to ExxonMobil to show that it had actual knowledge that the EPA already was informed.

Each day a violation continues constitutes a separate violation.

Authority:  15 U.S.C. §2607(e), 2614(3)(B); In re MTBE Products Liability Litigation, 591 F.Supp.2d 259, 265-66 (S.D.N.Y. 2008); In re MTBE, 510 F.Supp.2d 299, 316 (S.D.N.Y. 2007); In re MTBE, 559 F.Supp.2d 424, 438 (S.D.N.Y. 2008).

## PROPOSED FINAL INSTRUCTION NO. 18

### Commingled Product Theory/Alternate Theory of Causation

For the City to prevail on all claims other than the City¢s TSCA claim, the City must show, by a preponderance of the evidence, that Exxon Mobil Corporation¢s actions caused the City¢s injury.  In other words, the City must show that it is more likely than not that Exxon Mobil¢s actions caused its injury.

An injury may have more than one cause.  Where the independent and negligent acts or omissions of two or more parties cause injury to another, each of those negligent acts or omissions can be regarded as a cause of that injury.

A commingled product is a blended product containing portions that were manufactured by multiple defendants.  In this case, the product alleged to have caused the City¢s harm was manufactured by several companies, including ExxonMobil..

The identity of the manufacturer of a defective product may be established by circumstantial evidence.  Such circumstantial evidence must establish that it is reasonably probable that the defendant was the source of the offending product.

If the City shows (1) that the gasoline products of many refiners and manufacturers were present in a completely commingled or blended state at the time and place that the harm or risk of harm occurred, and (2) the commingled product caused the City¢s injury, and if you find, based on a preponderance of the evidence including circumstantial evidence, (3) that Exxon Mobil manufactured part of the commingled product that caused the City¢s injury, and (4) Exxon Mobil does not show that its product could not have been part of the commingled product that caused the City¢s injury, then you must find that the City has met its burden of demonstrating causation.

Authority: In re MTBE, 591 F.Supp2d 259, 266 (S.D.N.Y. 2008); In re MTBE, 447 F.Supp.2d at 301; New York Pattern Jury Instructions § 2:71; New York Pattern Jury Instructions, Div. 2(G)(3), Part V (Liability Where Product Manufacturer Is Difficult to Identify)

## PROPOSED FINAL INSTRUCTION NO. 19

### <u>Proximate Cause (Generally)</u>

An act or omission is regarded as a cause of an injury if it was a substantial factor in bringing about the injury, that is, if it had such an effect in producing the injury that reasonable people would regard it as a cause of the injury.


Authority:  NYPJI 2:70

## PROPOSED FINAL INSTRUCTION NO. 20

### <u>Damages</u>

My charge to you on the law of damages must not be taken as a suggestion that you should find for the plaintiff. It is for you to decide on the evidence presented and the rules of law I have given you whether the plaintiff is entitled to recover from the defendant. If you decide that the plaintiff is not entitled to recover from the defendant, you need not consider damages. Only if you decide that the plaintiff is entitled to recover will you consider the measure of damages.

If you find that the plaintiff is entitled to recover from the defendant, you must render a verdict in a sum of money that will justly and fairly compensate the plaintiff for all losses resulting from the injuries it sustained.

Authority:  NYPJI 2:277

**Proposed Final Instructions for Phase IV**

The City proposes that the following final jury instructions be read to the jury following closing statements and before deliberation in Phase IV:

**PROPOSED FINAL INSTRUCTION NO. 1**

**Punitive Damages**

In addition to awarding damages to compensate the plaintiff the City for its injuries, you may, but you are not required to, award the City punitive damages if you find that the acts of the defendant ExxonMobil that caused the injury complained of were wanton and reckless or malicious. Punitive damages may be awarded for conduct that represents a high degree of immorality and shows such wanton dishonesty as to imply a criminal indifference to civil obligations. The purpose of punitive damages is not to compensate the plaintiff but to punish the defendant for wanton and reckless or malicious acts and thereby to discourage the defendant and other companies from acting in a similar way in the future.

An act is malicious when it is done deliberately with knowledge of the plaintiff's rights, and with the intent to interfere with those rights. An act is wanton and reckless when it demonstrates conscious indifference and utter disregard of its effect upon the health, safety and rights of others.  Here, the City claims that ExxonMobil knew that underground storage systems had very high leak rates and that MTBE was extremely hazardous to groundwater and harmful to human health before it decided to put MTBE into gasoline, and that ExxonMobil learned more about MTBE's impacts on drinking water supplies around the country as it continued to use MTBE in gasoline.  Instead of reconsidering and revising its practices, ExxonMobil actively worked to conceal the truth about MTBE.  The City further claims that while in possession of this knowledge regarding MTBE's hazards, both directly and by and through agents,

ExxonMobil actively concealed MTBE's hazardous properties from the United States, New York

State, the City, other state governments, downstream users, distributors and consumers,

concealing the truth from them by failing to warn them about MTBE's hazardous and unusual

properties; intentionally omitting information about MTBE's properties from regulatory

disclosures and communications; undermining third party studies such as the Maine Report that

tried to sound the alarm regarding MTBE's hazardous and unusual properties; suppressing and

failing to disclose their own internal studies and analyses that exposed the hazards of MTBE

despite legal duties to the United States, the City and others that required them to do so;

intentionally withholding funding for industry studies regarding MTBE's impact on groundwater

and human health in an effort to prevent the truth about MTBE from coming out.  ExxonMobil

denies all such claims in their entirety.

　　　　The City also claims that ExxonMobil made affirmative misstatements concerning

MTBE to the United States, New York State, the City, other state governments, downstream

users, distributors and consumers.  For example, the City claims that ExxonMobil represented

that gasoline containing MTBE could be treated like any other gasoline (when in fact it had

unusual properties that rendered it far more hazardous); that no special handling of gasoline

containing MTBE was required (when in fact it was); that MTBE was not harmful to human

health (when in fact it is); that they were good product stewards (when in fact they were not);

that gasoline containing MTBE would not reach groundwater in large quantities (when they

knew it would); and that they would timely remediate any MTBE contamination that resulted

from their use of it in gasoline (when in fact they had no intention of remediating any site they

did not directly own and even then, they would pursue the lowest cost form of remediation

regardless of its effectiveness).  ExxonMobil denies all such claims.

The City further claims that by the time ExxonMobil chose to use MTBE as an oxygenate in reformulated gasoline, it knew that the introduction of higher concentrations of MTBE into gasoline would result in widespread groundwater contamination that would be extremely difficult and costly to remediate and that an ever increasing quantity of MTBE would contaminate drinking water rendering it unfit for human consumption (both because of its offensive taste and odor and because of its threat to human health).  The City claims that despite this in-depth knowledge of the hazards of MTBE, ExxonMobil, both directly and by and through agents, co-conspirators, and joint-venturers, knowingly produced, distributed, marketed, and promoted MTBE and gasoline containing MTBE, while consciously disregarding MTBE's harmful impact on groundwater and human health.  ExxonMobil denies all such claims.

The City also claims that ExxonMobil, directly and indirectly through the commingled gasoline distribution system, caused gasoline containing MTBE to be placed into underground storage systems that ExxonMobil knew or should have known would leak and that ExxonMobilalso failed to timely upgrade underground storage systems to avoid leaks and to warn or advise downstream handlers of gasoline that upgrades were immediately needed to address MTBE's unique hazards and that ExxonMobil failed to adopt MTBE-specific procedures for the remediation of suspected and known releases of MTBE, instead treating MTBE releases like slower moving BTEX releases, all but guaranteeing its proliferation in groundwater.  The City further claims that ExxonMobil knew that when such gasoline containing MTBE reached groundwater, it would make its way to drinking water supplies, resulting in extraordinary treatment costs and/or human exposure and related health impacts.  When confronted repeatedly with the truth about MTBE, instead of discontinuing its use and issuing appropriate warnings, throughout the relevant period, ExxonMobil continued to actively promote MTBE and MTBE

gasoline to the public and government agencies as environmentally sound products appropriate for widespread production, distribution, sale, and use and ExxonMobil continued to intentionally or recklessly trumpet MTBE gasoline's purported environmental benefits while downplaying its risks. ExxonMobil denies all such claims.

The City further claims that despite its in-depth knowledge of the hazards of MTBE, ExxonMobil, both directly and indirectly, acted to prevent the use of alternatives to MTBE (including ethanol) by third parties in gasoline. ExxonMobil did this by, among other things, refusing to produce blendstocks necessary for gasoline containing alternatives to MTBE and refusing access to pipelines, terminals, tanks and other facilities for the storing and transport of gasoline that they owned, operated or controlled to relevant blendstocks, alternatives to MTBE (including ethanol) and gasoline containing alternatives to MTBE. ExxonMobil denies all such claims.

If you find that ExxonMobil's acts were not wanton and reckless or malicious, you need proceed no further in your deliberations on this issue. On the other hand, if you find that ExxonMobil's acts were wanton and reckless or malicious, you may award the City punitive damages.

In arriving at your decision as to the amount of punitive damages you should consider the nature and reprehensibility of what ExxonMobil did. That would include the character of the wrongdoing, whether ExxonMobil's conduct demonstrated an indifference to, or a reckless disregard of, the health, safety or rights of others, whether the acts were done with an improper motive or vindictiveness, whether the act or acts constituted outrageous or oppressive intentional misconduct, how long the conduct went on, ExxonMobil's awareness of what harm the conduct caused or was likely to cause, any concealment or covering up of the wrongdoing, how often

ExxonMobil had committed similar acts of this type in the past and the actual and potential harm created by ExxonMobil's conduct including the harm to individuals or entities other than plaintiff the City.  However, although you may consider the harm to individuals or entities other than plaintiff the City in deter-mining the extent to which ExxonMobil's conduct was reprehensible, you may not add a specific amount to your punitive damages award to punish ExxonMobil for the harm ExxonMobil caused to others.

The amount of punitive damages that you award must be both reasonable and proportionate to the actual and potential harm suffered by the City, and to the compensatory damages you awarded the City. The reprehensibility of ExxonMobil's conduct is an important factor in deciding the amount of punitive damages that would be reasonable and proportionate in view of the harm suffered by the City and the compensatory damages you have awarded the City.

You may also consider the defendant ExxonMobil's financial condition and the impact your punitive damages award will have on ExxonMobil.

In reporting your verdict, you will state the amount awarded by you as punitive damages.

Authority: NYPJI 2:278

Dated: San Francisco, California

June 26, 2009

                                          MICHAEL A. CARDOZO
                                          Corporation Counsel of the City of New York
                                          Attorney for Plaintiff City of New York
                                          100 Church Street
                                          New York, New York 10007
                                          (212) 788-1568

                                          */s/ LESLEY E. WILLIAMS*
                                          VICTOR M. SHER *(pro hac vice)*
                                          TODD E. ROBINS *(pro hac vice)*
                                          JOSHUA G. STEIN *(pro hac vice)*
                                          LESLEY E. WILLIAMS (LW8392)
                                          NICHOLAS G. CAMPINS *(pro hac vice)*
                                          MARNIE E. RIDDLE *(pro hac vice)*

                                          SHER LEFF LLP
                                          450 Mission Street, Suite 400
                                          San Francisco, CA 94105
                                          (415) 348-8300

                                          *Attorneys for Plaintiff City of New York*