**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------- x

In Re: Methyl Tertiary Butyl Ether (ōMTBEö)        Master File No. 1:00-1898
Products Liability Litigation                              MDL 1358 (SAS)

                                                                  M21-88

-------------------------------------------------------------------- x     ECF Case

**This document relates to the following case:**

*City of New York v. Amerada Hess Corp., et al.*
Case No. 04 Civ. 3417

-------------------------------------------------------------------- x

    **PLAINTIFF CITY OF NEW YORK'S PHASE III TRIAL MEMORANDUM**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION................................................................................................1

II.   ARGUMENT ....................................................................................................1

    A.   **Legal Standards Applicable to the City's Trespass Claim**..............................1

    B.   **Legal Standards Applicable to the City's Public Nuisance Claim**í í í í í í í í 5

    C.   **Legal Standards Applicable to the City's Negligence Claim**......................9

    D.   **ExxonMobil is Liable for Strict Liability Design Defect**..........................11

    E.   **ExxonMobil is Liable for Strict Liability for Failure to Warn**..............14

    F.   **ExxonMobil is Liable for Private Nuisance**.......................................15

    G.   **ExxonMobil Is Liable Under the New York Navigation Law**.................16

    H.   **ExxonMobil Is Liable Under the Toxic Substances Control Act**..........17

    I.   **ExxonMobil Bears the Burden of Allocating Damages to Other Parties**í í í í í .18

    J.   **ExxonMobil Is Liable for Punitive Damages**..............................................22

III.  CONCLUSION .................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Bigelow v. Acands, Inc.,*
   601 N.Y.S.2d 478 (App. Div. 1993) ......................................................................................22

*Board of Educ. v. Sargent, Webster, Crenshaw & Folley,*
   71 N.Y.2d 21(1997) ...............................................................................................................20

*Buley v. Rexnord Process Machinery Div.,*
   482 N.Y.S.2d 104 (App. Div. 1984) ......................................................................................14

*Burger v. Singh,*
   816 N.Y.S.2d 478 (App. Div. 2006)........................................................................................2

*Burke v. Dow Chemical Co.,*
   797 F. Supp.1128 (E.D.N.Y. 1992)........................................................................................10

*Burlington Northern and Santa Fe Ry. Co. v. US.,* ___ U.S. ___,
   129 S.Ct. 1870 (May 4, 2009) ...............................................................................................21

*Chlystun v. Kent,*
   586 N.Y.S2d 410 (1992) ........................................................................................................23

*City of New York v. Bilynn Realty Corp.,*
   499 N.Y.S.2d 1011 (App. Div. 1986) ..................................................................................6, 8

*City of New York v. Casbar, Nicobel LLC,*
   2009 WL 1026593, *2 (N.Y. Sup. April 15, 2009)..................................................................8

*Copart Indus., Inc. v. Consol. Edison Co.,*
   41 N.Y.2d 564 (1977).....................................................................................................*passim*

*Cover v. Cohen,*
   61 NY2d 261 (1984) ...............................................................................................................12

*Ferebee v. Chevron Chemical Co.,*
   736 F.2d 1529 (DC Cir. 1984) ...............................................................................................10

*George v. Parke-Davis,*
   107 Wash.2d 584 (1987) .........................................................................................................20

*Gerdowsky v. Crain's New York Business,*
   593 N.Y.S.2d 514 (App. Div. 1993) ......................................................................................10

*Gruber v. Craig,*
  618 N.Y.S2d 84 (App. Div. 1994) .......................................................................23

*Hartford Accident & Indemnity Co. v. Hempstead,*
  48 N.Y.2d 218 (1979) ........................................................................................23

*Hathorn v. Natural Carbonic Gas Co.,*
  112 N.Y.S. 374 (App. Div. 1908) .........................................................................4

*Hathorn v. Natural Carbonic Gas Co.,*
  194 N.Y. 326 (1909) ...........................................................................................4

*Hellert v. Town of Hamburg,*
  857 N.Y.S.2d 825 (App. Div. 2008) ....................................................................3

*Home Ins. Co. v. American Home Products Corp.,*
  75 N.Y.2d 196 (1990) ........................................................................................23

*Hymowitz v. Eli Lilly,*
  73 N.Y.2d at 510 ................................................................................................20

*Hyosung v. Sumagh,*
  25 F.Supp.2d 376 (S.D.N.Y. 2008) ....................................................................21

*In re Joint Southern and Eastern Dist. Asbestos Litig.,*
  741 F.Supp. 50 (E.D.N.Y.1990) ........................................................................22

*In re MTBE,*
  175 F.Supp.2d 593 (S.D.N.Y. 2001) ...................................................................6

*In re MTBE,*
  517 F.Supp.2d 662 (S.D.N.Y. 2007) .................................................................24

*In re MTBE,*
  2005 WL 1500893, * 3 (S.D.N.Y. 2005) .............................................................7

*In re MTBE,*
  2007 WL 1601491 (S.D.N.Y.  June 04, 2007) ..................................................13

*In re MTBE,*
  2008 WL 1971538, * 2 (May 7, 2008) ..........................................................12, 13

*In re MTBE,*
  2009 WL 1649668, * 5 (June 9, 2009) ..............................................................24

*In re MTBE*,
  379 F.Supp.2d 348 (S.D.N.Y. 2005) ............................................................*passim*

*In re MTBE*,
  447 F.Supp.2d 289 (S.D.N.Y 2006) .............................................................*passim*

*In re MTBE*,
  457 F.Supp.2d 455 (S.D.N.Y. 2006) .................................................................3

*In re MTBE*,
  510 F.Supp.2d 299 (S.D.N.Y. 2007) ...............................................................18

*In re MTBE*,
  517 F.Supp.2d 662 (S.D.N.Y. 2007) .............................................................9, 22

*In re MTBE*,
  559 F.Supp.2d 424 (S.D.N.Y. 2008) ...............................................................18

*In re MTBE*,
  568 F.Supp.2d 376 (S.D.N.Y. 2008) ...............................................................13

*In re MTBE*,
  591 F.Supp.2d 259 (S.D.N.Y. 2008) ...........................................................*passim*

*In re "Agent Orange" Prod. Liab. Litig.*,
  597 F.Supp. 740 (E.D.N.Y 1984) ...................................................................19

*Incorporated Village of Freeport v. Jefferson Indoor Marina, Inc.*,
  556 N.Y.S.2d 150 (App. Div. 1990) ..............................................................6, 8

*Keeler v. Tubbs*,
  147 N.Y.S.2d 166 (Sup. Ct. 1955) ...................................................................4

*Kronos, Inc. v. AVX Corp.*,
  81 N.Y.2d 90 (1993) ...................................................................................1, 3

*Ligo v. Gerould*,
  665 N.Y.S.2d 223 (App. Div. 1997) .................................................................2

*Lugo v. LJN Toys, Ltd.*,
  75 N.Y.2d 850 (1990) ..................................................................................12

*Martin v. Abbott Laboratories*,
  102 Wash.2d 581 (1984) ..............................................................................20

*McCormack v. Abbott Laboratories,*
  617 F.Supp.1521 (D.C. Mass. 1985)................................................................20

*Micallef v. Miehle Co.,*
  39 N.Y.2d 376 (1976)........................................................................................12

*Mondello v. Newsday, Inc.,*
  774 N.Y.S.2d 794 (App. Div. 2004).................................................................2

*Motorola Credit Corp. v. Uzan,*
  509 F.3d 74 (2d Cir.2007)................................................................................22

*New York Trap Rock Corporation v. Town of Clarkstown,*
  299 N.Y. 77 (1949)........................................................................................6, 7

*N.Y. State Nat. Org. for Women v. Terry,*
  886 F.2d 1339 (2d Cir. 1989)....................................................................*passim*

*New York ex rel. Spitzer v. Cain,*
  418 F.Supp.2d 457 (S.D.N.Y. 2006) ...............................................................8

*New York Rubber Co. v. Rothery,*
  132 N.Y. 293 (1892) ......................................................................................1, 2

*People ex rel. Bennett v. Laman,*
  277 N.Y. 368 (1938) ..........................................................................................8

*People v. Van Buren,*
  4 N.Y.3d 640 (2005) ..........................................................................................7

*Schipani v. McLeod,*
  541 F.3d 158 (2d Cir. 2008) ...........................................................................22

*Scribner v. Summers,*
  84 F.3d 554 (2d Cir. 1996)............................................................................1, 3

*Shiffman v. Empire Blue Cross and Blue Shield,*
  681 N.Y.S.2d 511 (App. Div. 1998).................................................................2

*State v. Fermenta ASC Corp.,*
  656 N.Y.S.2d 342 (App. Div. 1997).................................................................3

*State of New York v. Shore Realty Corp.,*
  759 F.2d 1032 (2d Cir.1985)........................................................................6, 8

*State v. Johnson*,
    846 N.Y.S.2d 671 (App. Div. 2007) ...................................................................5, 14

*State v. Schenectady Chemicals, Inc.*,
    479 N.Y.S.2d 1010 (App. Div. 1984) ..................................................................6, 7

*Strauss v. Belle Realty*,
    65 N.Y.2d 399 (1985) ............................................................................................10

*Taft v. Shaffer Trucking, Inc.*,
    383 N.Y.S.2d 744 (App. Div. 1976) .......................................................................20

*Voss v. Black & Decker Mfg.*,
    59 N.Y.2d 102 (1983) ............................................................................................12

*Wheelock v. Noonan*,
    108 N.Y. 179 (1888) ...............................................................................................5

*Williams v. Niske*,
    81 N.Y.2d 437 (1993) ............................................................................................22


**Statutes**

15 U.S.C. § 2602(2), (8) .............................................................................................17

15 U.S.C. § 2607(e) ....................................................................................................17

15 U.S.C. § 2619 .........................................................................................................17

15 U.S.C. §2614(3)(B) ................................................................................................17

15 USC. § 2614(3)(B) .................................................................................................18

N.Y. General Obligation Law § 15-108 .....................................................................21

N.Y. Envtl. Conserv. Law §§ 27-0913(1), 27-0914(1) and 27-0914(2) ......................8

N.Y. Nav. Law § 172(8) ..............................................................................................16

N.Y. Nav. Law § 181(1) ..............................................................................................16

N.Y. Navig. § 172 ..........................................................................................................9

N.Y.C. Admin. Code § 17-142 .................................................................................7, 8

N.Y.C. Admin. Code § 24-302 ..................................................................................6, 7

New York City Administrative Code Section 24-303 .............................................9

New York Navigation Law Section 173 .................................................................9

Section 20(a)(1) of TSCA ......................................................................................17

**Other Authorities**

14 N.Y. Prac., New York Law of Torts § 10.24 .....................................................21

75 Am. Jur. 2d Trespass § 186 ...............................................................................2

87 C.J.S. Trespass § 132 .........................................................................................2

N.Y. Pattern Jury Instr.--Civil 2:125 ....................................................................10

NY Pattern Jury Instruction 2:120 ........................................................................14

NY Pattern Jury Instructions 3:16 .........................................................................15

NYPJI 2:10A ..........................................................................................................11

Rest. 2d Torts § 821C (2)(b) ..................................................................................6

Restatement (Second) of Torts § 402A ..................................................................13

## I.   INTRODUCTION

In preparation for Phase Three, Plaintiff the City of New York (the "City") wishes to draw the Court's attention to the following legal questions:

(1)      What are the legal standards applicable to the City's trespass claim?

(2)      What are the legal standards applicable to the City's public nuisance claim?

(3)      What are the legal standards applicable to the City's other clams?

(4)      Which party bears the burden of establishing the portion of damages that should be assigned to ExxonMobil? [1]

(5)      What are the legal standards applicable to punitive damages?

The City provides answers to each of these questions below.

## II.   ARGUMENT

### A.  Legal Standards Applicable to the City's Trespass Claim

To establish a claim for trespass under New York law, a plaintiff need only show that it has a real property right and that the defendant intentionally infringed that right.  *See Scribner v. Summers*, 84 F.3d 554, 557 (2d Cir. 1996) ("Under New York law, trespass is the intentional invasion of another's property"); N.Y. Pattern Jury Instr.--Civil 3:8 (same).  The City need only show that it has property rights and that ExxonMobil intentionally infringed such rights.

#### 1. Proof of Actual Injury Is Not Required

Under well-established New York law, proof of actual injury or damages is not required to show a trespass.  *See, e.g., Kronos, Inc. v. AVX Corp*., 81 N.Y.2d 90, 95 (1993) (nominal damages "protect a landowner's right to be free of trespass"); *New York Rubber Co. v. Rothery*, 132 N.Y. 293, 295-96 (1892) (it is error to limit the issue to the interference with the plaintiff's present use of water rights and to refuse to instruct the jury that plaintiff's right to recover nominal damages does

---

[1] The three remaining defendants are referred to throughout as "ExxonMobil" or "Defendant."

not depend on showing actual injury); *Burger v. Singh*, 816 N.Y.S.2d 478, 480 (App. Div. 2006) ("nominal damages are presumed from a trespass"); *Mondello v. Newsday, Inc.*, 774 N.Y.S.2d 794, 794-95 (App. Div. 2004) ("[e]ven without pleading actual damages for trespass, a plaintiff is entitled to nominal damages"); *Shiffman v. Empire Blue Cross and Blue Shield*, 681 N.Y.S.2d 511, 512 (App. Div. 1998) (same); *Ligo v. Gerould*, 665 N.Y.S.2d 223, 224 (App. Div. 1997) ("same); *see also* 87 C.J.S. Trespass § 132 ("[e]very trespass gives a right to at least nominal damages"); 75 Am. Jur. 2d Trespass § 186 (same).

In *New York Rubber Company*, the Court of Appeals addressed a property owner's riparian rights in a case in which the defendants argued that the property owner had no right to recover because it did not beneficially use its rights.  The trial court incorrectly instructed the jury that the plaintiff's right to redress for the invasion of its water rights was conditioned on its use of them. *New York Rubber Co.,* 132 N.Y. at 295-96.  The Court of Appeals reversed, holding that:

> The plaintiff's right to recover nominal damages was substantial, though the quantity of damages was not. The defendants probably did leave water enough in the stream for the purposes of the plaintiff's business, as that business had been conducted. But *the plaintiff's title to its water rights, and its right to redress for their invasion, were not conditional upon the beneficial user of them.*

132 N.Y. at 296 (emphasis added) (citations omitted).  A new trial was ordered. *Id.* at 297.

The public policy rationale for the rule that actual injury is not required is as compelling today as it was 100 years ago:

> The charge which makes "the purposes of the plaintiff's business" material to its right to recover and cautions the jury to regard plaintiff's land "as it was, and not with reference to the future," tended to lead the jury to disregard the inviolable character of the plaintiff's property rights, or at least expose them to sacrifice if plaintiff's actual and immediate pecuniary damages were inappreciable.  The plaintiff might thus lose its right to the beneficial use of the water as it was accustomed to flow before defendants began to divert it, simply because it had not as yet found it convenient to use it. *In such a case, nominal damages given confirm the plaintiff's right, but withheld, impeach and may destroy it.*

2

*Id.* at 296-297 (emphasis added); *see also Kronos*, 81 N.Y.2d at 95 (nominal damages "protect a landowner's right to be free of trespass" because a "continuing trespass may ripen into a prescriptive right and deprive a property owner of title to his or her land."). By analogy, if a plaintiff in a groundwater contamination case were denied the opportunity to pursue nominal damages and equitable relief and the plaintiff could not establish actual injury, the trespassers would be given what amounts to a prescriptive easement to continue tortiously contaminating the groundwater. Such a result would be directly contrary to New York law and public policy.[2]

### 2. The City's Property Interest

As owner of the Focus Wells, the City has substantial present possessory property rights to the water they draw. *See, e.g.*, *In re MTBE*, 457 F.Supp.2d 455, 462 (S.D.N.Y. 2006) ("Usufructuary interests are possessory property rights"); *Hathorn v. Natural*

---

[2] ExxonMobil will likely cite *In re MTBE*, 457 F.Supp.2d 298 (S.D.N.Y. 2006) in reply. There the Court interpreted Maryland law and observed that certain courts have limited trespass claims involving invisible contamination by requiring proof of "substantial damage," *id.* at 314 and cited cases applying New Mexico, Kansas and California law, *id.* at 315 n. 124. Of course this case is controlled by *New York* substantive law, which has never required "substantial damage" to prove trespass claims involving invisible contamination. Specifically, the City notes that in interpreting New York law in the context of a trespass case involving the movement of "noxious liquids," the Second Circuit did not require any such proof. *Scribner v. Summers*, 84 F.3d 554, 557-58 (2d Cir. 1996). ExxonMobil's position is contradicted by a decision it often cites: *State v. Fermenta ASC Corp.* There, in a water contamination case involving TCPA, the Court did not state any separate requirement of so-called "substantial damage" but rather to the contrary found that for "purposes of the trespass claim, it is enough that the defendants' actions in directing consumers to apply" the contaminating product "to the soil was substantially certain to result in the entry of TCPA into" the plaintiff's wells and upheld the trial court's decision that the TCPA manufacturers had committed a trespass. 656 N.Y.S.2d 342, 346 (App. Div. 1997). ExxonMobil will likely also cite *Hellert v. Town of Hamburg*, 857 N.Y.S.2d 825 (App. Div. 2008). *Hellert* involved the extraordinary circumstance in which plaintiffs admitted that they had no plans to use the groundwater at issue "for drinking purposes or, indeed, for any other purpose." *Id.* at 828. Clearly that is not the case here and *Hellert* is distinguishable on its face.

*Carbonic Gas Co.*, 194 N.Y. 326, 338 (1909) ("subterranean waters have always been treated as a mineral in the decisions relating to their use and enjoyment."); *Hathorn v. Natural Carbonic Gas Co.*, 112 N.Y.S. 374, 378 (App. Div. 1908) (percolating water found in land belongs to the owner of the land); *Keeler v. Tubbs*, 147 N.Y.S.2d 166, 170 (Sup. Ct. 1955) ("the right of a landowner to sink wells, and gather and use percolating waters as he will is a property right which cannot be taken away from him").  The City's proof of this element at trial will focus on showing that it has present possessory property rights to the water that supplies the Focus Wells.

### 3. Proof of Intent

Applying New York law in 2005, this Court has held that:

> To prevail on a claim for trespass in New York, the trespasser need not intend or expect the damaging consequence of his intrusion, but he must intend the act which amounts to or produces the unlawful invasion, and the intrusion must at least be the immediate or inevitable consequence of what he willfully does, or which he does so negligently as to amount to willfulness. To constitute such a trespass, the act done must be such as will to a substantial certainty result in the entry of foreign matter.

*In re MTBE*, 379 F.Supp.2d 348, 426 (S.D.N.Y. 2005).  Interpreting this requirement in the context of MTBE litigation, this Court found that:

> The New York Plaintiffs assert that defendants intentionally created MTBE, intentionally added it to gasoline, and intentionally transported MTBE-containing gasoline through a distribution system they knew was susceptible to leaks and spills. Defendants allegedly acted, knowing that MTBE had a higher propensity to contaminate groundwater than other gasoline additives, and that unintentional releases of gasoline frequently occurred.
> ...
> [B]ased on the allegations, it could be reasonably inferred that defendants willfully intruded upon plaintiffs' land. First, defendants' intentional creation and distribution of MTBE-containing gasoline could be construed as the act which amounted to or produced the unlawful invasion of plaintiffs' property.  Second, given defendants' alleged awareness of the vulnerabilities in the gasoline distribution and storage system, a reasonable inference is that it was substantially certain that MTBE would enter plaintiffs' property.

*In re MTBE*, 379 F.Supp.2d at 426-27.  The City will show that ExxonMobil intentionally created and distributed gasoline containing MTBE at the same time that it was aware of the vulnerabilities in the gasoline distribution and storage system and that such conduct led to contamination of the water supplying the Focus Wells.

### 4.  Equitable Relief

In its Fourth Amended Complaint, the City specifically requested: "All appropriate injunctive relief to abate the public nuisance and trespass,  including, but not limited to, the installation of remediation technologies on all City wells in the Affected Area" and "the undertaking of prophylactic measures designed to abate the imminent harm that the products pose to all other wells in the Affected Area for so long as the Products cause harm and are present in groundwater and soil in the Affected Area" and for declaratory relief.  Fourth Amended Complaint at Prayer, p. 37, ¶¶ 3-4.  Equitable relief would be especially appropriate in the highly unlikely event that nominal or inadequate damages were awarded by the jury.  *See State v. Johnson*, 846 N.Y.S.2d 671, 675 (App. Div. 2007) ("despite the nominal damages awarded, that the issuance of a permanent injunction was proper"); *id.* (where "it is impossible, or difficult, to ascertain or determine the extent of the injury which may flow from a continuance of the wrong, an injunction is the proper remedy"); *see also Wheelock v. Noonan*, 108 N.Y. 179, 185 (1888) (same); *see also In re MTBE*, 2007 WL 1601491, * 4 (S.D.N.Y. 2007) (trespass claim may "be time-barred as to damages, but not as to equitable relief regarding the need for future remediation");.

### B.  Legal Standards Applicable to the City's Public Nuisance Claim

A public nuisance is "conduct or omissions which offend, interfere with or cause damage to the public in the exercise of rights common to all in a manner such as to offend public morals *or* interfere with the use by the public of a public place *or* endanger or injure the property, health,

safety or comfort of a considerable number of persons." *Copart Indus., Inc. v. Consol. Edison Co.*, 41 N.Y.2d 564, 568 (1977) (emphasis added); *see also In re MTBE*, 175 F.Supp.2d 593, 627 n. 51 (S.D.N.Y. 2001) (same).   New York law expressly recognizes that "the seepage of chemical wastes into a public water supply constitutes a public nuisance." *State v. Schenectady Chemicals, Inc*., 479 N.Y.S.2d 1010, 1013 (App. Div. 1984).  Likewise, the "release or threat of release of hazardous waste into the environment unreasonably infringes upon a public right and thus is a public nuisance as a matter of New York law." *State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1051 (2d Cir.1985); *In re MTBE*, 175 F.Supp.2d at 627 n. 51.

As explained below, because the City is a municipality authorized by statute and common law to bring claims for public nuisance, *see* N.Y.C. Admin. Code § 24-302 (statute), *New York Trap Rock Corporation v. Town of Clarkstown*, 299 N.Y. 77, 83 (1949) (common law); *N.Y. State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1361 (2d Cir. 1989) (same), it is excused from proving a number of facts that a private party in the same position would have to prove.  For example, the City need not prove any injury or damages to itself to obtain an injunction to abate a public nuisance, Rest. 2d Torts § 821C (2)(b).  Instead, it need only show the threat of harm to its citizens, *N.Y. State Nat. Org. for Women*, 886 F.2d at 1361; *Shore Realty Corp.*  759 F.2d at 1051, or in the alternative, that ExxonMobil violated applicable statutes, *Incorporated Village of Freeport v. Jefferson Indoor Marina, Inc.*, 556 N.Y.S.2d 150, 152 (App. Div. 1990); *City of New York v. Bilynn Realty Corp.*, 499 N.Y.S.2d 1011, 1013 (App. Div. 1986); *Shore Realty Corp.*, 759 F.2d at 1051, to prove a public nuisance and obtain equitable relief.

### 1.  Proof of Special Injury is Not Required

Where, as here, a municipality has authority to maintain a public nuisance action, proof of special injury is not required.  *See* Rest. 2d Torts § 821C (2)(b) ("In order to maintain a proceeding

to enjoin to abate a public nuisance, one must í   (b) have authority as a public official or public agency to represent the state or a political subdivision in the matterö); *see also State v. Schenectady Chemicals, Inc.*, 479 N.Y.S.2d at 1014 (action may be maintained by one who is õclearly authorizedö to commence legal proceedings to abate a public nuisance); *c.f. Copart Industries, Inc.*, 41 N.Y.2d at 568 (special damage required for *individual* to maintain an action for public nuisance). Here, the City is expressly authorized by statute to maintain an action for nuisance in these precise circumstances:  õIt shall be the duty of the commissioner to preserve the purity of all waters from which any part of the city water supply is drawn, and to protect such supply and the lands adjacent thereto *from* injury or *nuisance*.ö  N.Y.C. Admin. Code § 24-302 (emphasis added); *see also* N.Y.C. Admin. Code § 17-142 (defining nuisance to include whatever may render õhuman í   drink unwholesomeö); *c.f. In re MTBE*, 2005 WL 1500893, * 3 (S.D.N.Y. 2005) (discussing statutorily authorized public nuisance claims under California law).

The City also has inherent authority to maintain an action for public nuisance to protect the health of its citizens.  *See New York Trap Rock Corporation v. Town of Clarkstown*, 299 N.Y. 77, 83 (1949) (municipality has inherent authority to bring public nuisance action to protect the health of its citizens); *N.Y. State Nat. Org. for Women*, 886 F.2d at 1361 (the City õis a proper party to bring an action to restrain a public nuisance that allegedly may be injurious to the health and safety of its citizensö).  As the Court of Appeals recognized in upholding the Cityøs authority to maintain a police force outside of city limits to protect its water supply, õthe protection of the public water supply is integral to the public health and welfare.ö  *People v. Van Buren*, 4 N.Y.3d 640, 649 (2005).  The Cityøs authority to maintain an action for public nuisance without a showing of õspecial injuryö is therefore beyond question.

The City therefore does not need to show "actual, as opposed to threatened, harm" to prove its public nuisance claim and obtain injunctive relief. *N.Y. State Nat. Org. for Women*, 886 F.2d at 1361; *N.Y. v. Shore Realty Corp.* 759 F.2d 1032, 1051 (2d Cir. 1985) (collecting cases); *New York ex rel. Spitzer v. Cain*, 418 F.Supp.2d 457, 483 (S.D.N.Y. 2006) (same); *see also People ex rel. Bennett v. Laman,* 277 N.Y. 368, 380 (1938) (injunction appropriate where health of the people is menaced by the deprivation of "food commodity, or its service in a contaminated state").

### 2. Because ExxonMobil Violated Applicable Statutes No Proof of Harm to the City or the Public is Required

Because the City will show that ExxonMobil's conduct violated several statutes, the City is not required to show harm or threatened harm to the public.  Specifically, in a public nuisance action brought by a municipality, upon showing that a defendant has violated a statute, the plaintiff need not show "injury to the public" to obtain injunctive relief.  *See Incorporated Village of Freeport*, 556 N.Y.S.2d at 152 ("no special injury or damage to the public need be alleged, and the commission of the prohibited act is sufficient to warrant granting the injunction"); *City of New York*, 499 N.Y.S.2d at 1013 (same); *City of New York v. Casbar, Nicobel LLC*, 2009 WL 1026593, *2 (N.Y. Sup. April 15, 2009) (holding that where conduct "violates a statutory scheme designed to protect the public health, that the conduct constitutes a violation and may be considered a public nuisance subject to the Administrative Code" "relief may be granted without a demonstration of special damages or injury to the public. The proof of the violation alone is sufficient grounds for the issuance of injunctive relief"); *Shore Realty Corp.*, 759 F.2d at 1051 (violations of N.Y. Envtl. Conserv. Law §§ 27-0913(1), 27-0914(1) and 27-0914(2) constituted public nuisance per se).

Here, the City will show that ExxonMobil violated several applicable statutes.  For example, ExxonMobil's conduct is illegal pursuant to New York City Administrative Code Section 17-142:

The word "nuisance", shall be held to embrace public nuisance, as known at

> common law or in equity jurisprudence; *whatever is dangerous to human life or detrimental to health*; whatever building or erection, or part or cellar thereof, is overcrowded with occupants, or is not provided with adequate ingress and egress to and from the same or the apartments thereof, or is not sufficiently supported, ventilated, sewered, drained, cleaned or lighted in reference to its intended or actual use; and *whatever renders* the air or human food or *drink, unwholesome. All such nuisances are hereby declared illegal.*

*Id.* (emphasis added).   The City will show that ExxonMobil intentionally made MTBE, intentionally added it to gasoline, and intentionally transported MTBE-containing gasoline through a distribution system it knew was susceptible to leaks and spills and such conduct rendered water designated for use for human drink unwholesome and endangering human life and health. ExxonMobil also owned and controlled underground storage systems that released MTBE and other petroleum products directly into the environment, which further rendered human drink unwholesome.  Pursuant to Administrative Code Section 17-142 such conduct was illegal. *Id.*  For the same reasons, ExxonMobil violated New York City Administrative Code Section 24-303, which provides:

> a. It shall be unlawful for any person to throw or *deposit, or cause to be thrown or deposited any* dead animal or other *offensive matter or anything whatever* in either of the reservoirs or in any lake, pond or stream, or in any aqueduct or pipe from or through which the water supply of the city shall be drawn.

*Id.*   Finally, the City will show that ExxonMobil illegally discharged petroleum in violation of New York Navigation Law Section 173.  *See id.* (õdischarge of petroleum is prohibitedö); s*ee also* N.Y. Navig. § 172 ( defining õDischargeö); *id.* (defining õPetroleumö).  Because ExxonMobiløs conduct violated several statutes, the City need not show õspecial damagesö or õinjury to the public.ö

### C.  Legal Standards Applicable to the City's Negligence Claim

A negligence claim has four elements: (1) duty, (2) breach, (3) causation and (4) damages.  *In re MTBE*, 517 F.Supp.2d 662, 668 (S.D.N.Y. 2007).  Negligence arises from breach

of a duty. *Strauss v. Belle Realty*, 65 N.Y.2d 399, 402 (1985).  Whether ExxonMobil owes a duty of care to the City is an issue of law.  *See Gerdowsky v. Crain's New York Business*, 593 N.Y.S.2d 514, 515-16 (App. Div. 1993).  A manufacturer, distributor and retailer of a product owes a duty to use reasonable care in the manufacture, distribution and retail of the product so that it will be reasonably safe for its intended or foreseeable uses. *See* N.Y. Pattern Jury Instr.--Civil 2:125.

Negligence is lack of ordinary care. *See id*.  It is a failure to use that degree of care that a reasonably prudent person would have used under the same circumstances. *See id.*  Negligence may arise from doing an act that a reasonably prudent person would not have done under the same circumstances, or, on the other hand, from failing to do an act that a reasonably prudent person would have done under the same circumstances. *See id.*  Reasonable care means that degree of care that a reasonably prudent manufacturer, distributor or retailer of such a product would use in the making, storing and dispensing of the product and its materials in order to produce a reasonably safe product. *See id.*

Here, the City will show that the defendant ExxonMobil negligently manufactured gasoline containing MTBE and that ExxonMobil breached its duty of care to ensure that the gasoline containing MTBE was properly distributed, stored, and dispensed by failing to ensure that the gasoline containing MTBE which they manufactured, distributed, and retailed was properly distributed, stored, and dispensed was properly stored.  It is important to note that merely because ExxonMobil complied with minimum federal standards does not mean that ExxonMobil is not liable to the City for negligence. *See Ferebee v. Chevron Chemical Co.*, 736 F.2d 1529, 1542 (DC Cir. 1984); *Burke v. Dow Chemical Co.*, 797 F. Supp.1128, 1142 (E.D.N.Y. 1992) (As a general rule, compliance with federal standards does not, in and of itself,

immunize a manufacturer or retailer from state law tort liability.)

Negligence requires both a reasonably foreseeable danger of injury to another and conduct that is unreasonable in proportion to that danger. N.Y. Pattern Jury Instr.--Civil 2:12.  A person is only responsible for the results of his or her conduct if the risk of injury is reasonably foreseeable.  *Id.*  The exact occurrence or exact injury does not have to be foreseeable; but injury as a result of negligent conduct must be not merely possible, but be probable.  *Id.*  Here, ExxonMobil knew that storage tanks containing MTBE has a propensity to leak and knew of the danger MTBE posed to groundwater and drinking water supplies, thus, the damage suffered by the City was foreseeable.

The City will prove causation by using both the commingled product theory and traditional causation.  The City will show that gasoline containing MTBE that caused injury is a commingled product of which ExxonMobil's product comprised a substantial portion.  *In re MTBE*, 591 F.Supp.2d 259, 266, 276 (S.D.N.Y. 2008); *In re MTBE*, 447 F.Supp.2d 289, 301 (S.D.N.Y 2006).  The City will show that MTBE has contaminated its wells and that by introducing Gasoline containing MTBE into a commingled product distribution system, ExxonMobil caused such contamination.  *See Id.*   Second, the City will show that ExxonMobil directly owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater contaminating the City's Wells.

The City will show that ExxonMobil committed gross negligence and willful misconduct.  *See* Section J, *infra.*  Gross negligence means a failure to use even slight care, or conduct that is so careless as to show complete disregard for the rights of others.  *See* NYPJI 2:10A.

### D.  ExxonMobil is Liable for Strict Liability Design Defect

Under New York Law, a manufacturer has a duty to design a product so that it avoids an

11

unreasonable risk of harm to anyone who is likely to be exposed to danger when the product is being used as intended.  *Lugo v. LJN Toys, Ltd.*, 75 N.Y.2d 850, 852 (1990); *Micallef v. Miehle Co.*, 39 N.Y.2d 376, 384-85 (1976).  Additionally a manufacturer has the duty to design its product so that it avoids an unreasonable risk of harm when it is being used for an unintended but foreseeable use.  *Micallef*, 39 N.Y.2d at 384-85.  Thus, a manufacturer that sells a product in a defective condition is liable for injury that results from use of the product when the product is used for its intended or reasonably foreseeable purpose.  N.Y. Pattern Jury Instr.--Civil 2:120.

A product is defective if it is not reasonably safeô that is, if the product is so likely to be harmful to persons or property that a reasonable person who had actual knowledge of its potential for producing injury would conclude that it should not have been marketed in that condition.  *See In re MTBE*, 2008 WL 1971538, * 2 (May 7, 2008) (plaintiff must show that the product, as designed, was not reasonably safe because there was a substantial likelihood of harm and it was feasible to design the product in a safer manner); N.Y. Pattern Jury Instr.--Civil 2:120.

A product is defectively designed if a reasonable person who knew or should have known of the product's potential for causing injury and of the feasible alternative designs would have concluded that the product should not have been marketed in that condition. *See id; Voss v. Black & Decker Mfg.,* 59 N.Y.2d 102, 108-109 (1983)*; Cover v. Cohen,* 61 NY2d 261, 266-67 (1984)*.* It is not necessary for the City to show that the ExxonMobil knew of the product's potential for causing injury to show that it was defectively designed.  It is sufficient that a reasonable person who did in fact know of the product's potential for causing injury would have concluded that the product should not have been marketed.  *See In re MTBE*, 2008 WL 1971538 at * 2*.*  Whether the product should have been marketed depends upon a balancing of the risks involved in using the product against the product's usefulness and its costs, andthe risks, usefulness and costs of the

alternative designs as compared to the product. *See Voss*, 59 N.Y.2d at 108-109.

Accordingly, the jury may consider the following types of factors in determining whether gasoline containing MTBE is reasonably safe: the need to remediate MTBE from groundwater and drinking water supplies, harm to the environment, the ease with which MTBE seeps into ground water and the amount of time MTBE persists in ground water, the turpentine taste and odor of water containing MTBE, the fact that studies have shown that exposure to MTBE is likely harmful to human health. *See In re MTBE,* 568 F.Supp.2d 376, 379 (S.D.N.Y. 2008) (discussing evidence of carcinogenicity); *In re MTBE*, 2008 WL 2607852, at *4 n. 38 (S.D.N.Y. July 1, 2008) (*citing In re MTBE*, 241 F.R.D. 435, 437 n. 2 (S.D.N.Y. 2007)); *In MTBE*, 2007 WL 1601491 (S.D.N.Y. June 04, 2007) (discussing properties of MTBE); *see also* Restatement (Second) of Torts § 402A, Comment i (discussing considerations in dangerousness inquiry).

The City, will prove that the gasoline containing MTBE manufactured by defendant ExxonMobil was defective because among other things MTBE is a toxic compound that easily contaminates groundwater and drinking water and ExxonMobil knew of the dangers that MTBE posed to groundwater and that underground gasoline storage tanks have a propensity to leak before it manufactured gasoline containing MTBE and feasible, much safer alternatives to MTBE, like ethanol were readily available.

Thus, the City will prove that at the time the gasoline containing MTBE was marketed, the gasoline containing MTBE was defective because it contained a design defect, and that this defect caused the City's injury. The City will prove causation on this claim using the commingled product theory. *See In re MTBE,* 591 F.Supp.2d at 266; *In re MTBE,* 447 F.Supp.2d at 301. The City will also show that ExxonMobil directly owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing

MTBE into the soil and groundwater contaminating the City's Wells.

### E.  ExxonMobil is Liable for Strict Liability for Failure to Warn

A manufacturer, wholesaler, distributor, and retailer that sells a product in a defective condition is liable for injury that results from use of the product when the product is used for its intended or reasonably foreseeable purpose.  *See* NY Pattern Jury Instruction 2:120; *Johnson v. Johnson Chemical Co.*  588 N.Y.S.2d 607, 610 (App. Div. 1992); *Buley v. Rexnord Process Machinery Div.*, 482 N.Y.S.2d 104, 105 (App. Div. 1984).  A product may be defective as a result of inadequate warnings or instructions.  *Id.*   The manufacturer of a product which is reasonably certain to hurt people or property if used in a way that the manufacturer should reasonably foresee is under a duty to use reasonable care to give adequate warnings of any dangers known to it or which in the use of reasonable care it should have known. NY Pattern Jury Instruction 2:120.

Here, the City will show that the gasoline containing MTBE manufactured by defendant ExxonMobil was defective because ExxonMobil failed to warn distributors, customers, station owners, its employees, gasoline truck drivers, the City, water providers, the public, the State of New York and the federal government about MTBE's hazardous and unusual properties.  For example, the City will prove that ExxonMobil should have warned distributors, customers, station owners, its employees, gasoline truck drivers, the City, water providers, the public, New York State and the federal government that gasoline containing MTBE needed to be handled differently than other gasoline because of its high solubility which makes it more likely to contaminating groundwater and drinking water; that they needed to install monitoring wells and regularly test for MTBE contamination; and that once such contamination was detected, it was extremely important to remediate the site aggressively and quickly.

As discussed above in the City's discussion of the causation in its design defect claim, the City will prove causation by under the commingled product theory and traditional theories of causation.   *In re MTBE*, 591 F.Supp.2d at 266; *In re MTBE*, 447 F.Supp.2d at 301.

### F.   ExxonMobil is Liable for Private Nuisance

A plaintiff seeking to recover damages for private nuisance must show, *first*, that the conduct of the defendant interfered with plaintiff's right to use and enjoy its land, *second*, that the interference was substantial, *third*, that defendant's conduct was intentional, and *fourth*, that defendant's conduct was unreasonable under all of the circumstances.   *See Copart Industries,* 41 NY2d at 570.   To be substantial, the interference must be real and appreciable.   The test is not what disturbs or annoys the plaintiff, but whether reasonable persons living in the locality would be appreciably annoyed or disturbed by the interference. NY Pattern Jury Instructions 3:16.

The City will show that ExxonMobil has substantially and unreasonably interfered with plaintiff's use of its property or water by contaminating the groundwater feeding one or more of its Wells in and around Jamaica in Queens County New York with MTBE.   The City will also show that MTBE has contaminated its wells and that by introducing gasoline containing MTBE into a commingled product distribution system, ExxonMobil is a substantial cause of such contamination.   The City will also show that ExxonMobil directly owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater and for that reason ExxonMobil directly caused the contamination in its wells.

The City will also prove that ExxonMobil acted intentionally because it intentionally created MTBE, intentionally added it to gasoline, and intentionally transported MTBE-containing gasoline through a distribution system it knew was susceptible to leaks and spills; that

ExxonMobil acted, knowing that MTBE had a higher propensity to contaminate groundwater than other gasoline additives, and that unintentional releases of gasoline frequently occurred. *See* Section II.A.3, supra; *In re MTBE*, 379 F.Supp.2d at 426-27.

### G.  ExxonMobil Is Liable Under the New York Navigation Law

Under New York's Navigation Law, "any person who has discharged petroleum shall be strictly liable, without regard to fault, for all cleanup and removal costs and all direct and indirect damages, no matter by whom sustained ï  " N.Y. Nav. Law § 181(1).  A "discharge" is "any intentional or unintentional action or omission resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of petroleum into the waters of the state or onto lands from which it might flow or drain into said waters..." N.Y. Nav. Law § 172(8). "Petroleum" includes "oil or petroleum of any kind and in any form including, but not limited to, oil, petroleum, fuel oil, oil sludge, oil refuse, oil mixed with other wastes and crude oils, gasoline and kerosene." N.Y. Nav. Law § 172(15).   And a "person" is defined to include among other things "public or private corporations" and "companies." N.Y. Nav. Law § 172(14). Contamination of groundwater is a type of damage covered by this statute.  *In re MTBE*, 591 F.Supp.2d at 282.

The City of New York is a political subdivision of the state that may recover the remediation costs it has incurred under Navigation Law § 172(5).  *In re MTBE***,** 2007 WL 1601491, \*18 (June 4, 2007).  The spillers and dischargers that may be liable under the Navigation Law for contaminating groundwater include manufacturers and refiners who "delivered product directly to a gas station or other facility that released gasoline <u>and</u> [were] in a position to prevent the discharge or effect a cleanup." *In re MTBE*, 591 F.Supp.2d at 282 n. 111 (*quoting State of New York v. Montayne*, 604 N.Y.S.2d 978, 978 (App. Div. 1993).

The City will show that ExxonMobil is strictly liable for all cleanup and removal costs and all direct and indirect damages sustained by the City as a result of ExxonMobil's discharge of gasoline containing MTBE.  ExxonMobil's gasoline products containing MTBE are included within the definition of "petroleum" contained in the New York Navigation Law, ExxonMobil falls within the definition of "person" as defined in the Navigation Law, and ExxonMobil's actions resulting in the release of MTBE-containing gasoline products into the waters of the state of New York where damage may result to the state's waters and natural resources are defined as a "discharge" for which ExxonMobil is strictly liable.  *In MTBE*, 379 F.Supp.2d 348, 428 (S.D.N.Y. 2005).

### H.  ExxonMobil Is Liable Under the Toxic Substances Control Act

Section 8(e) of the Toxic Substances Control Act provides that "Any person who manufactures, processes, or distributes in commerce a chemical or mixture and who obtains information which reasonably supports the conclusion that such substance or mixture presents a substantial risk of injury to health or the environment shall immediately inform the [EPA] Administrator of such information unless such person has actual knowledge that the Administrator has been adequately informed of such information."  15 U.S.C. § 2607(e).  TSCA also provides that "it shall be unlawful for any person to . . . (3) fail or refuse to . . . (B) submit reports, notices, or other information . . . as required by this chapter or rule thereunder . . . ."  15 U.S.C. §2614(3)(B).  Section 20(a)(1) of TSCA, 15 U.S.C. § 2619 permits any person to commence a civil action against any person who is alleged to be in violation of the provisions of TSCA noted above to restrain these violations.  MTBE and gasoline containing MTBE are chemical substances or mixtures as defined by TSCA, 15 U.S.C. § 2602(2), (8).

ExxonMobil concedes that it received the notice of intention to file a TSCA citizen suit and that MTBE constitutes a chemical, substance or mixture that is regulated under TSCA. The City will show that it has standing to sue under TSCA because it is adversely affected by defendant's noncompliance with TSCA. Proof of injury in fact is sufficient, causation is not required. *See In re MTBE*, 591 F.Supp.2d at 265-66 (causation requirement "applies to all of plaintiffs' claims *other than* TSCA"); s*ee also In re MTBE*, 559 F.Supp.2d 424, 427 (S.D.N.Y. 2008).

The City will also show that ExxonMobil failed or refused to submit reports, notices, or other information to the EPA regarding the adverse environmental or health-related impacts of the regulated substance, in this case MTBE. *See* 15 USC. § 2614(3)(B); *In re MTBE*, 510 F.Supp.2d 299, 316 (S.D.N.Y. 2007). Under the plain language of the statute, a manufacturer's "belief" about the quality of a study plays no role in determining whether it should have been reported. The only question is whether the study "reasonably supports the conclusion that such substance or mixture presents a substantial risk of injury to health or the environment." *In re MTBE*, 559 F.Supp.2d 424, 438 (S.D.N.Y. 2008)

Once the City proves that ExxonMobil has withheld information from the EPA, the burden of persuasion will shift to ExxonMobil to show that it had actual knowledge that the EPA already was informed. *In re MTBE*, 559 F.Supp.2d at 434. The City will prove each violation of TSCA separately during the course of Phase 3.

**I.   ExxonMobil Bears the Burden of Allocating Damages to Other Parties**

Whether ExxonMobil's liability is several or joint and several, damages under the commingled product theory are "apportioned by proof of a defendant's share of the market at the time a risk of harm was created to a class of potential victims." *In re MTBE,* 379 F.Supp.2d 348, 378. ExxonMobil's liability in combination with other defendants who are not refiners and

manufacturers of MTBE-containing gasoline is joint and several.  As the Court has explained,

"retailers of gasoline containing MTBE … may be jointly and severally liable with

manufacturers for products liability claims."  *In re MTBE*, 591 F.Supp.2d at 281-82.

If ExxonMobil wishes to reduce its share of the liability for the City's total damages, it is

ExxonMobil's burden to do so under any theory.  As this Court has said, "the plaintiff can only

go so far because, as your experts have said over the years, you can't disentangle the molecules"

(5/28/09 Transcript, p. 12, lines 6-8).

### 1.  If ExxonMobil's Liability Is Several-Only, ExxonMobil Bears the Burden of Establishing That Its Share of the Damages Should Be Less Than 100 Percent

The market-share theory, which this court has indicated "offers an equitable solution to the

apportionment of damages," (6/9/09 Opinion at 8) also "shifts the burden to defendants to

exculpate themselves from liability" (*In re MTBE*, 591 F.Supp.2d at 244-45).  This is true

whether the liability a defendant wishes to exculpate itself from is the entirety of the liability at

issue, or only that portion of liability for which other defendants are severally responsible.  To

exculpate itself, a defendant may "prov[e] that its product was not present at the relevant time or

in the relevant place" at all, and thus *fully* exculpate itself (*In re MTBE,* 379 F.Supp.2d at 378).

But even if, as under the market-share theory, ExxonMobil's liability is several-only,

ExxonMobil nonetheless bears the burden of showing, "alternatively, that it should only be

responsible for a proportion of the damage."  *In re "Agent Orange" Prod. Liab. Litig.*, 597

F.Supp. 740, 819-20 (E.D.N.Y 1984), *quoted in In re MTBE,* 447 F.Supp.2d at 300 n. 41.

Cases applying the market-share theory in the apportionment context have consistently

placed the burden of establishing a defendant's market share squarely on the defendant itself,

recognizing that the defendant has far better access than a plaintiff to the information that would

support market-share findings.  For instance, where market share is initially distributed equally among severally-liable defendants, *defendants* have the burden of showing that their actual market share was less than their *pro rata* share.  *See, e.g., McCormack v. Abbott Laboratories*, 617 F.Supp.1521, 1527 (D.C. Mass. 1985) (in apportioning liability among severally-liable defendants, ödefendants are presumed initially to have equal shares of the market. However, *defendants* may rebut this presumption by establishing by a preponderance of the evidence *their individual market share* of DES in the plaintiff's particular geographic market during the time period in question.ö) (emphasis added) (citing the approach taken by the court in *Martin v. Abbott Laboratories*, 102 Wash.2d 581 (1984)); *Hymowitz v. Eli Lilly,* 73 N.Y.2d at 510 (ö[e]ach defendant then has the opportunity to rebut this [equal market share] presumption by showing that its actual market share was less than presumedö).

Where not all tortfeasors were available, courts have even öplaced the burden upon appearing defendants to prove the market share of the absent ones.ö  *See Hymowitz v. Eli Lilly*, 73 N.Y.2d at 510 n. 1 (discussing the Washington courtøs approach in *George v. Parke-Davis*, 107 Wash.2d 584 (1987)).  The fact that ExxonMobil has the right, under New York law, to pursue contribution claims against other tortfeasors not joined in this case simply reinforces the point that the City need only prove its total damages.  *See Board of Educ. v. Sargent, Webster, Crenshaw & Folley*, 71 N.Y.2d 21, 27-28 (1997) (contribution ömay be invoked against concurrent, successive, independent, alternative, and even intentional tortfeasorsö); *Taft v. Shaffer Trucking, Inc.*, 383 N.Y.S.2d 744, 747 (App. Div. 1976) (affirming intentional tortfeasorøs right to bring contribution claim against allegedly negligent third party).  Once the City proves its total damages, it becomes ExxonMobiløs responsibility to diminish its own share relative to any other severally-liable tortfeasors.

**2. Where ExxonMobil's Liability Is Joint and Several With Other Parties, ExxonMobil Has the Burden of Showing That Its Share of Liability Should be Offset**

Again, ExxonMobil's liability vis-à-vis all other defendants in the case who are *not* manufacturers of a product that became part of the commingled product at issue is, and has always been, joint and several. This Court has already held that "defendants proven to have spilled the gasoline that caused contamination in a well may be held *jointly and severally* liable for these claims with the defendants shown under the commingled product theory to have manufactured the gasoline that spilled." *In re MTBE*, 591 F.Supp.2d at 268 (emphasis added). Where, as here, an injury is indivisible, "the burden of proving that a reasonable basis for apportionment exists" belongs to *defendants. Burlington Northern and Santa Fe Ry. Co. v. US.,* ___ U.S. ___, 129 S.Ct. 1870, 1881 (May 4, 2009). As this Court has already held, if "one or more [tortfeasors] seeks to limit his liability on the ground that the harm is capable of apportionment among them, the burden of proof as to the apportionment is upon each such actor." *In re MTBE*, 447 F.Supp.2d at 297, citing Restatement (Second) of Torts § 433B(2).

Finally, if liability is joint and several, ExxonMobil may attempt to show that its share should be offset under General Obligation Law 15-108 – a showing on which it unquestionably has always borne the burden of proof. *See* 14 N.Y. Prac., New York Law of Torts § 10.24 (under GOL § 15-108, "[a]t trial the nonsettling tortfeasors have the burden to prove the respective equitable shares, and they are free to attribute as much of the blame as possible on the nonparty settling tortfeasor."). Under General Obligations Law § 15-108, defendants' burden is no different. *See Hyosung v. Sumagh*, 25 F.Supp.2d 376, 387 (S.D.N.Y. 2008) ("A defendant carries the burden of establishing the equitable shares attributable to a settling tortfeasor when seeking to reduce its own responsibility for damages"), *citing In re Joint Southern and Eastern*

*Dist. Asbestos Litig.,* 741 F.Supp. 50, 51, n. 2 (E.D.N.Y.1990); *Bigelow v. Acands, Inc.,* 601 N.Y.S.2d 478, 480 (App. Div. 1993). "[W]hile the general purpose of General Obligations Law § 15-108(a) is to encourage settlements, the statute is concerned as well with assuring that a nonsettling defendant does not pay more than its equitable share." *Williams v. Niske*, 81 N.Y.2d 437, 443 (1993). Section 15-108 simply codifies that under New York law, a nonsettling tortfeasor bears the burden of establishing the fault of settling tortfeasors for purposes of apportionment. *Schipani v. McLeod*, 541 F.3d 158, 163-164 (2d Cir. 2008), *citing Bigelow v. Acands, Inc.*, 601 N.Y.S.2d 478, 480 (App. Div. 1993) ("[Nonsettling defendant] bore the burden of establishing the equitable shares attributable to the settling defendants *for purposes of reducing the amount of [its] own responsibility for the damages*") (emphasis added). Under both several liability and joint-and-several liability, therefore, it is – and has always been – ExxonMobil's burden to establish other tortious participants' respective shares of liability in order to prove the relative magnitude of its own.

### J.   ExxonMobil Is Liable for Punitive Damages

"Punitive damages are a monetary remedy aimed at deterrence and retribution." *In re MTBE,* 517 F.Supp.2d at 666 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 416 (2003)). The propriety of punitive damages in this case is a question of New York law. *See Motorola Credit Corp. v. Uzan,* 509 F.3d 74, 80 (2d Cir.2007) ("the propriety of an award of punitive damages for the conduct in question, and the factors the [fact-finder] may consider in determining their amount, are questions of state law."). To warrant an award of punitive damages, there must be a showing of recklessness, or a conscious disregard of the rights of others and an appropriate cause of action. *Hartford Accident & Indemnity Co. v. Hempstead*, 48 N.Y.2d 218, 228 (1979); *Gruber v. Craig*, 618 N.Y.S2d 84, 85-86 (App. Div. 1994); *see also*

*Home Ins. Co. v. American Home Products Corp.,* 75 N.Y.2d 196, 204-205 (1990) (allowing

punitive damages in strict product liability case based on failure to warn); *Chlystun v. Kent*, 586

N.Y.S2d 410, 527-28 (1992) (allowing punitive damages based on trespass).

At trial the City will prove that ExxonMobil's tortious conduct warrants punitive

damages.  For example, the City will show that ExxonMobil knew that underground storage

systems had very high leak rates and that MTBE was extremely hazardous to groundwater and

harmful to human health before it decided to put MTBE into gasoline and that ExxonMobil

worked to conceal the truth about MTBE.  The City will also prove that ExxonMobil actively

concealed MTBE's hazardous properties from the United States, New York State, the City,

downstream users, distributors and consumers by failing to warn them about MTBE's hazardous

and unusual properties; intentionally omitting information about MTBE's properties from

regulatory disclosures and communications; undermining third party studies regarding MTBE's

hazardous and unusual properties; suppressing and failing to disclose their own internal studies

and analyses that exposed the hazards of MTBE; and intentionally withholding funding for

industry studies regarding MTBE's impact on groundwater and human health.  The City will also

prove that ExxonMobil made affirmative misstatements concerning MTBE to the same

constituencies.

By way of further example, the City will prove that ExxonMobil placed gasoline

containing MTBE into underground storage systems that ExxonMobil knew would leak and that

ExxonMobil also failed to timely upgrade underground storage systems to avoid leaks and to

advise downstream handlers of their gasoline that upgrades were immediately needed to address

MTBE's unique hazards and that ExxonMobil failed to adopt MTBE-specific procedures for the

remediation of suspected and known releases of MTBE, instead treating MTBE releases like

slower moving BTEX releases, all but guaranteeing its proliferation in groundwater.

### 1. Punitive Damages Are Appropriate in This Case

This Court has made clear that, although punitive damages are unavailable on claims solely supported by a market share theory of liability (*In re MTBE Prods. Liab. Litig.*, 517 F.Supp.2d 662, 670 n. 39 (S.D.N.Y. 2007), punitive damages may be available if the City can prove – using the commingled product theory – that ExxonMobil caused or contributed to the injury, i.e., by showing that ExxonMobil's MTBE was actually "present in a completely commingled or blended state at the time and place that the harm or risk of harm occurred." *In re MTBE*, 2009 WL 1649668, * 5 (June 9, 2009), quoting *In re MTBE*, 447 F.Supp.2d at 300.

Furthermore, "practical and equitable considerations do not support precluding the City from seeking punitive damages in this case." *Id.* at *7. Potential harm, not just actual harm, "is a permissible ground for punitive damages in New York." *Id.* "[T]he defendant's market share clearly reflects the *potential* harm that the defendant imposed on the City, which is a permissible Constitutional ground for punitive damages. That is, if a defendant delivered a certain percentage of MTBE-infused gasoline to the City's stations, then that percentage represents the best measure of the potential harm that the defendant imposed on the City." *Id.* at *8.

Thus, if the City can show ExxonMobil's contribution to its injury by showing that ExxonMobil's product was part of the commingled product that caused that injury, and that ExxonMobil's conduct was reckless or demonstrated disregard for the rights of others, an award of punitive damages against ExxonMobil will be appropriate.

### III. CONCLUSION

The discussion above provides an overview of the legal standards applicable to the City's claims, apportionment and punitive damages. This overview is not intended to be

comprehensive. Should the Court desire additional briefing on any of the points discussed above, the City invites the Court to request such briefing.


Dated: San Francisco, California
June 26, 2009

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
100 Church Street
New York, New York 10007
(212) 788-1578

*/s/ LESLEY E. WILLIAMS*
VICTOR M. SHER *(pro hac vice)*
TODD E. ROBINS *(pro hac vice)*
JOSHUA G. STEIN *(pro hac vice)*
LESLEY E. WILLIAMS (LW8392)
NICHOLAS G. CAMPINS *(pro hac vice)*

SHER LEFF LLP
450 Mission Street, Suite 400
San Francisco, CA 94105
(415) 348-8300

*Attorneys for Plaintiff City of New York*