**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------- x

In Re: Methyl Tertiary Butyl Ether ("MTBE")        Master File No. 1:00-1898
Products Liability Litigation                      MDL 1358 (SAS)
                                                   M21-88
-------------------------------------------------------------------- x   ECF Case

**This document relates to the following case:**

*City of New York v. Amerada Hess Corp., et al.*
Case No. 04 Civ. 3417

-------------------------------------------------------------------- x


**PLAINTIFF CITY OF NEW YORK'S OBJECTIONS TO DEFENDANT EXXON MOBIL**
**CORPORATION'S PROPOSED PHASE III JURY INSTRUCTIONS**

Plaintiff, the City of New York ("the City") hereby submits its objections to Defendant

Exxon Mobil Corporation's ("ExxonMobil") proposed jury instructions.

**PROPOSED FINAL JURY INSTRUCTION NO.1**
<u>Burden of Proof - Clear and Convincing Evidence</u>

In this action, the City claims MTBE will be detected in the Station 6 wells when they are put in service.  In Phase II, you found that the City would use its Station 6 wells on _____.  The City has the burden of proof on each of its claims.  That is - the City must prove by clear and convincing evidence that MTBE will be detected in each of the Station 6 wells when they are used in the future.  This means the evidence satisfies you that it is highly probable that MTBE will be detected in each of the Station 6 wells when they are used in the future.

It is not enough to find that a preponderance of the evidence is in the plaintiff's favor. A preponderance of the evidence means that a party only needs to prove that the evidence supporting its case more nearly represents what actually will happen than the evidence which is opposed to it. Here, the City must establish its case by clear and convincing evidence and satisfy you that the evidence makes it highly probable that what it claims will occur is actually going to happen.

If, upon hearing all of the evidence, you are satisfied that by clear and convincing evidence there is a high probability that MTBE will be detected in each of the Station 6 wells when they are used in the future, you must decode for the City.  If you are not satisfied that there is such a high probability, you must decide for ExxonMobil.


Authority: N.Y. Pattern Jury Instructions 1:64 (as modified); *Askey* v. *Occidental Chern. Corp.,* 477 N.Y.S.2d 242 (4th Dept 1984); *Caudle* v. *Towers, Perrin, Forster & Crosby, Inc.,* 580 F. Supp. 2d 273 (S.D.N.Y. 2008); *Schultz* v. *Harrison Radiator,* 660 N.Y.S.2d 685 (N.Y. 1997); *Kihl* v. *Pfeffer,* 47 AD.3d 154 (2d Dept 2007); *Finnes* v. *Chase Manhattan Auto. Fin. Corp.,* 50 AD.3d 18 (2d Dep't 2008); *Lujan* v. *Defenders of Wildlife,* 504 U.S. 555 (1993); *Whitmore* v. *Arkansas,* 495 U.S. 149 (1990).


**OBJECTIONS TO PROPOSED FINAL JURY INSTRUCTION NO.1**

The City objects to this instruction in its entirety on the grounds that it employs the

incorrect standard of proof, is confusing to the jurors and misstates the law.  Clear and

convincing evidence is not the appropriate burden of proof in any phase of this case.  Rather, the

appropriate burden of proof for Plaintiff, the City of New York ("the City") in Phase III and all

other phases is preponderance of the evidence, which is the standard burden of proof in a civil

case such as this, as well as the burden of proof this Court has held applies to Phase I of this

action.  *See* July 6, 2009 Opinion and Order in this Action at pp. 26-27 ("the reasonable certainty

requirement does not require a plaintiff to meet a heightened burden of proof"); Opposition to

Defendant's Pretrial Memorandum for Phase I filed in 00-cv-1898 Dkt# 2550 (June 15, 2009) at
1-10 Opinion and Order in this Action (Scheindlin, S.) (June 9, 2009) at 18-19 ("Rather, the City
must prove, by a preponderance of the evidence, that MTBE of the particular defendant was
actually in the commingled product that caused the contamination."); *In re Methyl Tertiary Butyl
Ether (MTBE) Products Liability Litigation* Slip Copy, 2008 WL 5188193 (S.D.N.Y., Dec. 09,
2008) (Plaintiffs bear the burden of proving elements of a prima facie case, by a preponderance
of the evidence.); *In re MTBE*, 591 F.Supp.2d 259, 266 (S.D.N.Y. 2008) (same); Restatement
(Second) of Torts § 433 (1977); *Glew v. Cigna Group Ins.*, 590 F.Supp.2d 395 (E.D.N.Y. 2008)
("While there has been some dispute as to the burden of proof, in this Court's view, the proper
standard is the same as other civil cases in the federal court, namely, by a preponderance of the
evidence."); *Seneca Meadows, Inc. v. ECI Liquidating, Inc.* 427 F.Supp.2d 279 (W.D.N.Y. 2006)
(preponderance of the evidence is plaintiff's burden of proof in TCE contamination case
involving CERCLA); 16 Lee S. Kreindler, Blanca I. Rodriguez, David Beekman & David C.
Cook, *New York Law of Torts*, § 20.2 (as a general rule, plaintiff in a tort case (including product
liability) has the burden of proving each element of the tort by preponderance of the evidence;
plaintiff in a tort case must also establish damages by a preponderance of the evidence—this
includes punitive damages, as New York does not require a higher burden of proof on punitive
damages); *Yi v. Sterling Collision Centers, Inc.*, 480 F.3d 505, 507 (7th Cir. 2007) (presumption
that preponderance standard applies in federal civil cases); *Mathis v. Hargrove*, 888 A.2d 377,
391 n. 5, 166 Md.App. 286 (Md. 2005) (preponderance of the evidence is the proper standard for
civil action); *Rixmann v. City of Prior Lake*, 723 N.W.2d 493, 495 (Minn.App. 2006); *Mutual of
Enumclaw Ins. Co. v. McBride*, 667 P.2d 494, 295 Or. 398 (Or. 1982) (burden of proof on issue
of fraud to void a fire insurance policy is by a preponderance of the evidence; it does not require

3

clear and convincing proof); *see also Ramsey v. United Mine Workers of America*, 401 U.S. 302

(1971) (plaintiff in an antitrust action against a labor union need only prove his case by a

preponderance of the evidence; pro-vision of 29 U.S.C.A. § 106 requiring "clear proof" only

applies to question of authorization, participation or ratification of acts); *Ellis v. Brotherhood of

Railway Clerks*, 685 F.2d 1065, 1071 (9th Cir. 1982) (in a civil case, the party with the burden of

proof must persuade the trier of fact by a preponderance of the evidence; no higher standard is

required simply because a constitutional issue is involved).  As noted in the City's Opposition to

Defendant's Phase One Pretrial Memorandum, clear and convincing evidence is not appropriate

in this action, a civil tort case involving environmental contamination that asserts defective

product claims, property tort claims, negligence claims and claims based on statutory violations.

*See* Plaintiff's Opposition, filed in 00-cv-1898 Dkt# 2550 (June 15, 2009) at 1-10.

Finally the City objects to this instruction on the grounds that it requires the city to prove

that Station 6 or the wells in Station 6 will be activated at all, much less on a specific date.  *See*

Plaintiff's Objections to Defendant's Jury Instructions for Phase One, filed in 00-cv-1898 Dkt#

2547 (June 15, 2009).

## PROPOSED FINAL JURY INSTRUCTION NO. 2

### Necessity of Proving That Defendant's Conduct Caused Plaintiff's Harm

Plaintiff must prove that ExxonMobil's conduct caused its injury. In this case, Plaintiff
may prove causation in two ways.  First, Plaintiff can establish causation if you find, by clear and
convincing evidence, that some part of the MTBE that will be detected in the Station 6 wells
when they are used on [DATE] came from gasoline with MTBE that was leaked or spilled from
a service station at issue in this case that was owned or operated by ExxonMobil at the time of
the spill or leak. This is traditional causation. Second, Plaintiff can establish causation if you
find, by clear and convincing evidence, that some part of the MTBE that will be detected in the
Station 6 wells on [DATE] came from gasoline with MTBE that, although manufactured by

others, also contained MTBE from gasoline that was manufactured by ExxonMobil. This is "commingled product" causation.

Authority: 6/9/09 Decision and Order.

## OBJECTIONS TO PROPOSED FINAL JURY INSTRUCTION NO.2

The City objects to this instruction in its entirety on the grounds that it is confusing to the jurors and misstates the law.   The City objects to this instruction on the grounds that it employs an erroneous standard of proof, clear and convincing evidence, when the correct burden of proof is preponderance of the evidence.  *See* Objections to Proposed Final Jury Instruction No.1, *supra*. The City objects to this instruction on the grounds that it suggests that the City must show a specific day when the wells of Station 6 will be turned on.

The City objects to this instruction on the ground that it mischaracterizes and mis-defines "commingled product theory."  *See* Opinion and Order dated June 9, 2009; *In re MTBE*, 591 F.Supp.2d 259, 265-68 (S.D.N.Y 2008); *In re MTBE*, 517 F.Supp.2d at 668.  For example, the Court has never defined the commingled product in this case as "gasoline manufactured by others that also contains ExxonMobil gasoline;" rather, the Court has referred to gasoline containing MTBE that contains the commingled product of multiple manufacturers, including ExxonMobil.  *See id.*

Finally, the City objects to this instruction on the grounds that it purports to require ExxonMobil to own or operate a service station only "at the time of the spill," rather than at the time of the spill or afterwards until the spill is cleaned up.

## PROPOSED FINAL JURY INSTRUCTION NO. 3
Commingled Product Causation

In Phase 2, you found that the City would use its Station 6 wells on [DATE], and that MTBE would be present in the wells on that date. You must now determine whether, when the City uses the Station 6 wells on [DATE], MTBE from gasoline specifically manufactured by ExxonMobil will be in the commingled product that will be detected in the Station 6 wells on that date. It is not enough for the Plaintiff to merely prove that MTBE from the gasoline products of many refiners and manufacturers will be detected in Plaintiff's Station 6 wells on [DATE] . Plaintiff must prove that among the MTBE detected in the Station 6 wells on [DATE] will be MTBE molecules from gasoline that was actually manufactured by ExxonMobil. To find that Plaintiff has established commingled product causation against ExxonMobil, you must find that the MTBE detected in the Station 6 wells on [DATE] came from the gasoline products of many other gasoline manufacturers besides ExxonMobil.

Authority: 6/9/09 Decision and Order.

## OBJECTIONS TO PROPOSED FINAL JURY INSTRUCTION NO.3

The City objects to this instruction in its entirety on the grounds that it is confusing to the jurors and misstates the law.  The City objects to this instruction on the grounds that it employs an erroneous standard of proof, clear and convincing evidence, when the correct burden of proof is preponderance of the evidence.  *See* Objections to Proposed Final Jury Instruction No.1, *supra*.

The City objects to this instruction on the grounds that it suggests the City must show a specific day when the wells of Station 6 will be turned on.

Finally, the City objects to this instruction on the ground that it mischaracterizes and mis-defines "commingled product theory."  *See* Opinion and Order dated June 9, 2009; *In re MTBE*, 591 F.Supp.2d 259, 265-68 (S.D.N.Y 2008); *In re MTBE*, 517 F.Supp.2d at 668.  For example, the Court has never stated that the City has to prove that ExxonMobil molecules are in a particular well—only that spills in the capture zone more likely than not include product manufactured by ExxonMobil and that these spills could get to the wells.  *See id.*  The Court has also never stated that under the commingled product theory, MTBE must come from the gasoline products of many other gasoline manufacturers in addition to ExxonMobil.   For the same

reason, the City objects to the phrase "actually manufactured by ExxonMobil" because the City

has to prove only that it is more likely than not that the gasoline at issue contained ExxonMobil

product, not that it contained ExxonMobil product to 100% certainty.

## PROPOSED FINAL JURY INSTRUCTION NO. 4
### Determination of Market Share

(to be given only if Plaintiff establishes "commingled product causation")
If you find that Plaintiff has proven commingled product causation, you must determine
what ExxonMobil's market share was on the date that ExxonMobil's product entered the
groundwater that was in the capture zone of the Station 6 wells on [DATE].

Authority: 6/9/09 Decision & Order

## OBJECTIONS TO PROPOSED FINAL JURY INSTRUCTION NO.4

The City objects to this instruction in its entirety on the grounds that it is confusing to the

jurors and misstates the law.  The City objects to this instruction because it does not make clear

to the jury that the burden of proof in showing ExxonMobil's market share rests with

ExxonMobil.  *See* Letter dated June 8, 2009 from V.Sher to Hon S. Scheindlin.  The City objects

to this instruction on the ground that it is assumes ExxonMobil is only severally liable rather than

jointly and severally liable for the Cities injuries.  The Court has yet to resolve this issue, but the

City contends that ExxonMobil is both jointly and severally liable.  *See, e.g.*, *id.*  The City

objects to this instruction on the ground that the use of the phrase "market share" is erroneous as

a matter of law because it does not account for ExxonMobil's control of the market.  A more

appropriate allocation for purposes of commingled product theory is equitable allocation.  The

City objects to this instruction to the extent that it suggests that the City must show that

ExxonMobil's product entered the groundwater in the capture zone of the Station 6 wells on a

specific date.  Finally, the words "capture zone" and "market share" are undefined and thus

confusing to the jury.

7

### PROPOSED FINAL JURY INSTRUCTION NO. 5
<u>Definition of Market Share</u>

To be determined after guidance from the Court.


### OBJECTIONS TO PROPOSED FINAL JURY INSTRUCTION NO.5

The City objects to this instruction in its entirety on the grounds that it is incomplete and for all of the reasons enumerated in its objections to Proposed Final Instruction No. 4.  *See* Objections to Proposed Final Instruction No.4, *supra*.


### PROPOSED FINAL JURY INSTRUCTION NO. 6
<u>Proximate Causation</u>

An act or omission is regarded as a cause of an injury if it was a substantial factor in bringing about the injury, that is, if it had such an effect in producing the injury that reasonable people would regard it as the cause of the injury.

Authority: N.Y. Pattern Jury Instructions 2:70 (3d ed. 2009); comments to N.Y. Pattern Jury Instructions 2:70; *Mack v. Altmans Stage Lighting Co.*, 470 N.Y.S.2d 664, 667 (N.Y. App. Div. 1984) (citing Restatement, Torts 2d § 433)

### OBJECTIONS TO PROPOSED FINAL JURY INSTRUCTION NO.6

The City objects to this instruction on the grounds that the phrase "if it had such an effect in producing the injury that reasonable people would regard it as ***the*** cause of the injury" is erroneous as a matter of law as well as prejudicial to the City.  The correct formulation of this phrase in the substantial factor test for proximate causation in New York is "if it had such an effect in producing the injury that reasonable people would regard it as ***a*** cause of the injury." *See In re MTBE*, 591 F.Supp.2d 259, 265-68 (S.D.N.Y 2008) ("The substantial factor standard for causation, adopted in New York, recognizes that often many acts can be said to have caused a particular injury, and requires only that defendant's actions be a substantial factor in producing the injury.  A plaintiff need not eliminate every other possible cause, and the fact that another

possible cause concurs with defendant's negligent act or omission to produce an injury does not relieve defendant from liability."); *In re MTBE*, 517 F.Supp.2d at 668; Restatement (Second) of Torts § 433 (1977). Restatement (Third) of Torts: Prod. Liab. § 15, cmt. a (1998); *Mortensen v. Memorial Hospital*, 483 N.Y.S.2d 264, 269 (App. Div. 1984); *Accord Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 316 (1980); *see also Capicchioni v. Morrissey*, 613 N.Y.S.2d 499, 500 (App. Div. 1994) (holding that jury instruction implying that defendant must be the sole cause of a car accident was reversible error); *see also Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 106 (1983); *Summers v. Tice*, 33 Cal.2d 80, 84-88 (1948). Furthermore, when the product at issue in this case is commingled, no one defendant's action is "the" unitary cause.

## PROPOSED FINAL JURY INSTRUCTION NO. 7
### Statutory Strict Liability – New York Navigation Law

Under New York law, any person who has discharged petroleum shall be strictly liable, without regard to fault, for all cleanup and removal costs and all damages. The plaintiff alleges that its Station 6 wells will be impacted in the future by MTBE that was present in gasoline that was actually discharged by ExxonMobil. To find ExxonMobil strictly liable, you must find that ExxonMobil actually discharged the gasoline that the City contends will result in future MTBE detections in its Station 6 wells. If you find that ExxonMobil did not actually discharge the gasoline that will result in future MTBE detections in the Station 6 wells, or if you find that some other person discharged the gasoline that will be detected in the Station 6 wells in the future, you must find for ExxonMobil.

Authority: N.Y. Pattern Jury Instructions 10:5.

## OBJECTIONS TO PROPOSED FINAL JURY INSTRUCTION NO.7

The City objects to this instruction in its entirety on the grounds that it is confusing to the jurors and misstates the law. Furthermore, the City objects to ExxonMobil's characterization of the City's injury as future injury. As noted in Plaintiff's opposition to Defendant's Pretrial Memorandum for Phase One, the City has suffered present injury. *See* Plaintiff's Opposition to Defendant's Pretrial Memorandum filed in 00-cv-1898 Dkt# 2550 (June 15, 2009) at 1-10.

Among other things, there already is MTBE contamination in the groundwater and in many of the wells.  *See id.*  It is true that the treatment plant will be built in the future, and that the treatment plant is a future remedy for the City's injury, but the injury itself exists now, in the present, and will continue to exist into the future, unless and until it is properly treated.

The City objects to this instruction on the grounds that it requires the City to show a specific day when the wells of Station 6 will be turned on.

The City objects to this instruction on the ground that ExxonMobil misconstrues the contours of the City's Navigation Law claim.  In this claim, the City seeks to recover for damages it suffered as a result of an oil spill caused by leaking underground storage systems. A private party injured by an oil spill has the right to recover its losses from the responsible party.

The City claims that gasoline containing MTBE is a petroleum product and that ExxonMobil directly owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater and for that reason ExxonMobil directly caused the contamination in one or more of its wells.

Under New York's Navigation Law, "any person who has discharged petroleum shall be strictly liable, without regard to fault, for all cleanup and removal costs and all direct and indirect damages, no matter by whom sustained …"  N.Y. Nav. Law § 181(1).  A "discharge" is "any intentional or unintentional action or omission resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of petroleum into the waters of the state or onto lands from which it might flow or drain into said waters..."  N.Y. Nav. Law § 172(8). "Petroleum" includes "oil or petroleum of any kind and in any form including, but not limited to, oil, petroleum, fuel oil, oil sludge, oil refuse, oil mixed with other wastes and crude oils, gasoline and kerosene."  N.Y. Nav. Law § 172(15).   And a "person" is defined to include among other

things "public or private corporations" and "companies." N.Y. Nav. Law § 172(14).

Contamination of groundwater is a type of damage covered by this statute.  *In re MTBE*, 591

F.Supp.2d at 282.

The City of New York is a political subdivision of the state that may recover the

remediation costs it has incurred under Navigation Law § 172(5).  *In re MTBE***,** 2007 WL

1601491, *18 (June 4, 2007).  The spillers and dischargers that may be liable under the

Navigation Law for contaminating groundwater include manufacturers and refiners who

"delivered product directly to a gas station or other facility that released gasoline <u>and</u> [were] in a

position to prevent the discharge or effect a cleanup."  *In re MTBE*, 591 F.Supp.2d at 282 n. 111

(*quoting State of New York v. Montayne*, 604 N.Y.S.2d 978, 978 (App. Div. 1993).

The City will show that ExxonMobil is strictly liable for all cleanup and removal costs

and all direct and indirect damages sustained by the City as a result of ExxonMobil's discharge

of gasoline containing MTBE.  ExxonMobil's gasoline products containing MTBE are included

within the definition of "petroleum" contained in the New York Navigation Law, ExxonMobil

falls within the definition of "person" as defined in the Navigation Law, and ExxonMobil's

actions resulting in the release of MTBE-containing gasoline products into the waters of the state

of New York where damage may result to the state's waters and natural resources are defined as

a "discharge" for which ExxonMobil is strictly liable.  *In MTBE*, 379 F.Supp.2d 348, 428

(S.D.N.Y. 2005).

**PROPOSED FINAL JURY INSTRUCTION NO. 8**
<u>Strict Product Liability – Generally</u>

A manufacturer that sells a product in a defective condition is liable for injury that results
from use of the product when the product is used for its intended or reasonably foreseeable
purpose.

A product is defective if it is not reasonably safe – that is, if the product is so likely to be harmful to property that a reasonable person who had actual knowledge of its potential for producing injury would conclude that it should not have been marketed in that condition.

A product may be defective as a result of a defective design or inadequate warnings. The burden of proving that the product was defective is on the plaintiff.  Plaintiff also must prove to you that the defect will be a substantial factor in causing Plaintiff's injury -- in this case the MTBE that the City alleges will be in the Station 6 wells when they are used on [DATE].

Authority: N.Y. Pattern Jury Instructions 2:120 (3d ed. 2009).

## OBJECTIONS TO PROPOSED FINAL JURY INSTRUCTION NO.8

The City objects to this instruction on the grounds that its last sentence is confusing to the jurors and mischaracterizes the law and the facts.  The City also objects to this instruction to the extent that it requires the City to prove that the wells of Station 6 will be activated at all, much less on a specific date.  *See* Objections to Proposed Final Instruction No. 1, *supra*.

## PROPOSED FINAL JURY INSTRUCTION NO. 9
### Strict Product Liability – Design Defect

Plaintiff claims that gasoline manufactured with MTBE was defective because MTBE's characteristics made it more likely to contaminate groundwater when released into the environment than gasoline without MTBE.  Plaintiff also contends that ExxonMobil could have used ethanol in gasoline instead of MTBE, and that ethanol would have been a safer alternative. ExxonMobil denies that gasoline manufactured with MTBE was defectively designed because it contends that (1) gasoline with MTBE functioned properly for its intended purpose as a motor vehicle fuel; (2) gasoline with MTBE functioned properly for its intended purpose to reduce harmful air emissions as required by the Clean Air Act; (3) the Clear Air Act required the use of an oxygenate such as MTBE or ethanol in gasoline, and ExxonMobil had no feasible alternative other than to use MTBE to comply with that requirement; and (4) because no gasoline, whether it contains MTBE or not, is designed to be released into the environment.

A product is defectively designed if a reasonable person who knew or should have known of the product's potential for causing injury and of the feasible alternative designs (if any) would have concluded that the product should not have been marketed in that condition.  Whether the product should have been marketed in that condition depends upon a balancing of the risks involved in using the product against (1) the product's usefulness and costs, and (2) the risks, usefulness and costs of the alternative designs, if any, as compared to the product the defendant did manufacture.

To prevail on its design defect claim here, Plaintiff must prove to you that:

1. Gasoline with MTBE was not reasonably safe when used for its intended or foreseeable purpose; 2. There was a safer, feasible and legally-permissible alternative to MTBE at the time the gasoline with MTBE was manufactured; and 3. The defective design will be a substantial factor in causing the Plaintiff's future injuries.

(1) In determining whether ExxonMobil's gasoline with MTBE was reasonably safe for its intended or reasonably foreseeable use, you must decide whether the benefits of using MTBE in gasoline outweighed the risks. A product is not necessarily defective just because it has inherent risks. There are both risks and benefits to many products and there are instances in which a product's inherent dangers cannot be eliminated without eliminating its benefits. A product is defective only if its risks outweigh its benefits. If you determine that gasoline containing MTBE was reasonably safe for its intended use, you must find that the product was not defectively designed and you need proceed no further in your deliberations.
(2) However, if you find that gasoline with MTBE was not reasonably safe for its intended use, you must go on to consider whether Plaintiff has proven that there was a feasible, safer, available and legally-permissible alternative to MTBE that ExxonMobil could have used in its gasoline during the relevant time period. In this case, Plaintiff contends that ethanol was a feasible, safer and legally-permissible alternative. ExxonMobil contends that while ethanol was legally permitted by the Clean Air Act, it was not feasible to use ethanol in New York during the relevant time period, and that ethanol would not have been safer or better for the environment. If you find that ethanol was not a feasible, safer or available alternative to MTBE in New York during the relevant period of time, you must find that the product is not defectively designed and you need proceed no further in your deliberations.
(3) However, if you find that ethanol was a feasible, safer and available alternative to MTBE in New York during the relevant time period, then you must proceed to consider whether ExxonMobil's past use of MTBE in gasoline will be a substantial factor in causing Plaintiff's future injuries here, if any. That is, whether a reasonable person would regard ExxonMobil's past use of MTBE in gasoline as a cause of the Plaintiff's future injury here. If you find that ExxonMobil's past use of MTBE will not be a substantial factor in causing Plaintiff's future injury, you need proceed no further in your deliberations on this issue.

Authority: N.Y. Pattern Jury Instructions 2:120 (as modified); *Santoro v. Donnelly*, 340 F. Supp. 2d 464 (S.D.N.Y. 2004) (Scheindlin, J.)*; Clinton v. Brown & Williamson Holdings, Inc.*, 498 F. Supp. 2d 639 (S.D.N.Y. 2007); *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102 (1983).

## OBJECTIONS TO PROPOSED FINAL JURY INSTRUCTION NO.9

The City objects to this instruction to the extent that it mischaracterizes the City's claim,

misconstrues how the City intends to prove ExxonMobil's liability for it, misstates the law and

contains improper legal argument.  Furthermore, the City objects to ExxonMobil's

characterization of the City's injury as future injury.  As noted in Plaintiff's opposition to

Defendant's Pretrial Memorandum for Phase One, the City has suffered present injury.  *See*

Plaintiff's Opposition to Defendant's Pretrial Memorandum filed in 00-cv-1898 Dkt# 2550 (June 15, 2009) at 1-10.  Among other things, there already is MTBE contamination in the groundwater and in many of the wells.  *See id.*  It is true that the treatment plant will be built in the future, and that the treatment plant is a future remedy for the City's injury, but the injury itself exists now, in the present, and will continue to exist into the future, unless and until it is properly treated.

Under New York Law, a manufacturer has a duty to design a product so that it avoids an unreasonable risk of harm to anyone who is likely to be exposed to danger when the product is being used as intended.  *Lugo v. LJN Toys, Ltd.*, 75 N.Y.2d 850, 852 (1990); *Micallef v. Miehle Co.*, 39 N.Y.2d 376, 384-85 (1976).  Additionally a manufacturer has the duty to design its product so that it avoids an unreasonable risk of harm when it is being used for an unintended but foreseeable use.  *Micallef*, 39 N.Y.2d at 384-85.  Thus, a manufacturer that sells a product in a defective condition is liable for injury that results from use of the product when the product is used for its intended or reasonably foreseeable purpose.  N.Y. Pattern Jury Instr.--Civil 2:120.

A product is defective if it is not reasonably safe—that is, if the product is so likely to be harmful to persons or property that a reasonable person who had actual knowledge of its potential for producing injury would conclude that it should not have been marketed in that condition.  *See In re MTBE*, 2008 WL 1971538, * 2 (May 7, 2008) (plaintiff must show that the product, as designed, was not reasonably safe because there was a substantial likelihood of harm and it was feasible to design the product in a safer manner); N.Y. Pattern Jury Instr.--Civil 2:120.

A product is defectively designed if a reasonable person who knew or should have known of the product's potential for causing injury and of the feasible alternative designs would have concluded that the product should not have been marketed in that condition. *See id; Voss v. Black*

14

*& Decker Mfg.,* 59 N.Y.2d 102, 108-109 (1983)*; Cover v. Cohen,* 61 NY2d 261, 266-67 (1984).

It is not necessary for the City to show that the ExxonMobil knew of the product's potential for

causing injury to show that it was defectively designed.  It is sufficient that a reasonable person

who did in fact know of the product's potential for causing injury would have concluded that the

product should not have been marketed.  *See In re MTBE*, 2008 WL 1971538 at * 2.  Whether

the product should have been marketed depends upon a balancing of the risks involved in using

the product against the product's usefulness and its costs, and the risks, usefulness and costs of

the alternative designs as compared to the product.  *See Voss*, 59 N.Y.2d at 108-109.

Accordingly, the jury may consider the following types of factors in determining whether

gasoline containing MTBE is reasonably safe:  the need to remediate MTBE from groundwater

and drinking water supplies, harm to the environment, the ease with which MTBE seeps into

ground water and the amount of time MTBE persists in ground water, the turpentine taste and

odor of water containing MTBE, the fact that studies have shown that exposure to MTBE is

likely harmful to human health.  *See In re MTBE,* 568 F.Supp.2d 376, 379 (S.D.N.Y. 2008)

(discussing evidence of carcinogenicity); *In re MTBE*, 2008 WL 2607852, at *4 n. 38 (S.D.N.Y.

July 1, 2008) (*citing In re MTBE*, 241 F.R.D. 435, 437 n. 2 (S.D.N.Y. 2007)); *In MTBE*, 2007

WL 1601491 (S.D.N.Y.  June 04, 2007) (discussing properties of MTBE); *see also* Restatement

(Second) of Torts § 402A, Comment i (discussing considerations in dangerousness inquiry).

The City, will prove that the gasoline containing MTBE manufactured by defendant

ExxonMobil was defective because among other things MTBE is a toxic compound that easily

contaminates groundwater and drinking water and ExxonMobil knew of the dangers that MTBE

posed to groundwater and that underground gasoline storage tanks have a propensity to leak

before it manufactured gasoline containing MTBE and feasible, much safer alternatives to

MTBE, like ethanol were readily available.

Thus, the City will prove that at the time the gasoline containing MTBE was marketed, the gasoline containing MTBE was defective because it contained a design defect, and that this defect caused the City's injury. The City will prove causation on this claim using the traditional causation theories and commingled product theory. *See In re MTBE,* 591 F.Supp.2d at 266*; In re MTBE,* 447 F.Supp.2d at 301. The City will also show that ExxonMobil directly owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater contaminating the City's Wells.

Finally, the City further objects to this instruction as erroneously stating that the Clean Air Act required the use of MTBE. For the reasons that are stated in the City's Memorandum of Law in Support of Its First Motion *in Limine*, 00-cv-1898 Dkt# 2399 (5/11/2009), the instruction is erroneous as a matter of law.

### PROPOSED FINAL JURY INSTRUCTION NO. 10
#### Strict Liability – Failure to Warn

Plaintiff claims that gasoline with MTBE manufactured and sold by ExxonMobil was defective because ExxonMobil failed to warn of MTBE's potential to contaminate groundwater if gasoline was illegally released into the environment. ExxonMobil contends that it was not necessary to provide a warning specifically about the risks of MTBE because (1) the release of any gasoline to the environment, with or without MTBE, is illegal in New York State, and (2) it was already providing warnings to gasoline distributors and retailers that no gasoline, with or without MTBE, should be allowed to leak into the environment, and (3) because it is common knowledge that all gasoline must be handled carefully, and that no gasoline should be allowed to leak into the environment, no special warning was necessary merely because gasoline contained MTBE.

The manufacturer of a product which is reasonably certain to be harmful if used in a way that the manufacturer should reasonably foresee is under a duty to use reasonable care to give adequate warning of any danger known to it, or which in the use of reasonable care it should have known and which the user of the product ordinarily would not discover. Reasonable care means that degree of care which a reasonably prudent person would use under the same circumstances.

If you find that, at the time ExxonMobil manufactured gasoline with MTBE, no additional warnings were necessary, then you will find that gasoline manufactured with MTBE was not defective and you need proceed no further in your deliberations on this issue. However, if you find that ExxonMobil's gasoline with MTBE was defective because of inadequate warnings, then you will proceed to consider whether the lack of adequate warnings will be a substantial factor in causing MTBE to be present in Plaintiff's Station 6 wells when they are used in the future, that is, whether a reasonable person would regard the lack of warning(s) as a cause of the future injury. In determining whether inadequate warnings will be the cause of Plaintiff's future injury, you are to consider whether that injury would not occur in the future if adequate warnings had been provided by ExxonMobil in the past. If you find that the lack of adequate warnings will not be a substantial factor in causing Plaintiff's injury in the future, you need proceed no further in your deliberations on this issue.

Authority: N.Y. Pattern Jury Instructions 2:120 (as modified); comments to same.

## OBJECTIONS TO PROPOSED FINAL JURY INSTRUCTION NO.10

The City objects to this instruction on the grounds that it mischaracterizes the City's claim, misconstrues how the City intends to prove ExxonMobil's liability for it, misstates the law and contains improper legal argument. Furthermore, the City objects to ExxonMobil's characterization of the City's injury as future injury. As noted in Plaintiff's opposition to Defendant's Pretrial Memorandum for Phase One, the City has suffered present injury. *See* Plaintiff's Opposition to Defendant's Pretrial Memorandum filed in 00-cv-1898 Dkt# 2550 (June 15, 2009) at 1-10. Among other things, there already is MTBE contamination in the groundwater and in many of the wells. *See id.* It is true that the treatment plant will be built in the future, and that the treatment plant is a future remedy for the City's injury, but the injury itself exists now, in the present, and will continue to exist into the future, unless and until it is properly treated.

A manufacturer, wholesaler, distributor, and retailer that sells a product in a defective condition is liable for injury that results from use of the product when the product is used for its intended or reasonably foreseeable purpose. *See* NY Pattern Jury Instruction 2:120; *Johnson v. Johnson Chemical Co.* 588 N.Y.S.2d 607, 610 (App. Div. 1992); *Buley v. Rexnord Process*

*Machinery Div.*, 482 N.Y.S.2d 104, 105 (App. Div. 1984).  A product may be defective as a result of inadequate warnings or instructions.  *Id.*   The manufacturer of a product which is reasonably certain to hurt people or property if used in a way that the manufacturer should reasonably foresee is under a duty to use reasonable care to give adequate warnings of any dangers known to it or which in the use of reasonable care it should have known. NY Pattern Jury Instruction 2:120.

Here, the City will show that the gasoline containing MTBE manufactured by defendant ExxonMobil was defective because ExxonMobil failed to warn distributors, customers, station owners, its employees, gasoline truck drivers, the City, water providers, the public, the State of New York and the federal government about MTBE's hazardous and unusual properties.  For example, the City will prove that ExxonMobil should have warned distributors, customers, station owners, its employees, gasoline truck drivers, the City, water providers, the public, New York State and the federal government that gasoline containing MTBE needed to be handled differently than other gasoline because of its high solubility which makes it more likely to contaminating groundwater and drinking water; that they needed to install monitoring wells and regularly test for MTBE contamination; and that once such contamination was detected, it was extremely important to remediate the site aggressively and quickly.

As discussed above in the City's discussion of the causation in its design defect claim, the City will prove causation by under the commingled product theory and traditional theories of causation.   *In re MTBE*, 591 F.Supp2d at 266; *In re MTBE*, 447 F.Supp.2d at 301.

**PROPOSED FINAL JURY INSTRUCTION NO. 11**
Product Liability – Negligence

Plaintiff claims that ExxonMobil negligently designed gasoline to contain MTBE. Negligence is a failure to use reasonable care. Negligence may arise from doing an act that a reasonably prudent person would not have done under the same circumstances, or, on the other hand, from failing to do an act that a reasonably prudent person would have done under the same circumstances. A designer of a product owes a duty to use reasonable care to design that product so that it will be reasonably safe for its intended or foreseeable use. Reasonable care, in this context, means the level of care that a reasonably prudent gasoline designer in ExxonMobil's circumstances would use in designing the product. In addition, ExxonMobil can be held responsible for negligence only if it was reasonably foreseeable to ExxonMobil that the future injury alleged by Plaintiff would result from ExxonMobil's design of gasoline containing MTBE, and if it acted unreasonably despite that foreseeable risk. The exact occurrence or exact injury does not have to be foreseeable; but it must be probable – and not merely possible – that injury will result from the negligent conduct. Thus, to find ExxonMobil negligent, you must find that it was probable that its conduct would cause injury similar to that alleged by the Plaintiff. If you find that the gasoline with MTBE was reasonably safe for its intended or foreseeable use or that ExxonMobil used reasonable care in designing it, you will find that ExxonMobil was not negligent and you need not consider this issue further. However, if you find that the gasoline with MTBE that ExxonMobil manufactured and sold was not reasonably safe for its intended and foreseeable uses because ExxonMobil failed to use reasonable care in designing it, you will find that ExxonMobil was negligent and must go on to determine whether the ExxonMobil's negligence was a substantial factor causing Plaintiff's injury.

Authority: N.Y. Pattern Jury Instructions 2:10, 2:12, 2:125; *Cacciola v. Selco Balers, Inc.*, 127 F. Supp. 2d 175, 185 (E.D.N.Y. 2001) (foreseeability of injury as an element of negligence in product liability)

**OBJECTIONS TO PROPOSED FINAL JURY INSTRUCTION NO.11**

The City objects to this instruction on the ground that it mischaracterizes the City's claim, misconstrues how the City intends to prove ExxonMobil's liability for it, misstates the law and contains improper legal argument. Furthermore, the City objects to the ExxonMobil's characterization of the City's injury as future injury. As noted in Plaintiff's opposition to Defendant's Pretrial Memorandum for Phase One, the City has suffered present injury. *See* Plaintiff's Opposition to Defendant's Pretrial Memorandum filed in 00-cv-1898 Dkt# 2550 (June 15, 2009) at 1-10. Among other things, there already is MTBE contamination in the groundwater and in many of the wells. *See id.* It is true that the treatment plant will be built in

the future, and that the treatment plant is a future remedy for the City's injury, but the injury itself exists now, in the present, and will continue to exist into the future, unless and until it is properly treated.

A negligence claim has four elements: (1) duty, (2) breach, (3) causation and (4) damages.  *In re MTBE*, 517 F.Supp.2d 662, 668 (S.D.N.Y. 2007).  Negligence arises from breach of a duty.  *Strauss v. Belle Realty*, 65 N.Y.2d 399, 402 (1985).  Whether ExxonMobil owes a duty of care to the City is a matter of law.  *See Gerdowsky v. Crain's New York Business*, 593 N.Y.S.2d 514, 515-16 (App. Div. 1993).  A manufacturer, distributor and retailer of a product owes a duty to use reasonable care in the manufacture, distribution and retail of the product so that it will be reasonably safe for its intended or foreseeable uses. *See* N.Y. Pattern Jury Instr.-- Civil 2:125.

Negligence is lack of ordinary care. *See id*.  It is a failure to use that degree of care that a reasonably prudent person would have used under the same circumstances. *See id.*  Negligence may arise from doing an act that a reasonably prudent person would not have done under the same circumstances, or, on the other hand, from failing to do an act that a reasonably prudent person would have done under the same circumstances.  *See id.*  Reasonable care means that degree of care that a reasonably prudent manufacturer, distributor or retailer of such a product would use in the making, storing and dispensing of the product and its materials in order to produce a reasonably safe product. *See id.*

Here, the City will show that the defendant ExxonMobil negligently manufactured gasoline containing MTBE, by – among other things – failing to warn distributors, station owners and others about the harmful properties of gasoline containing MTBE, and that ExxonMobil breached its duty of care to ensure that the gasoline containing MTBE was properly

distributed, stored, and dispensed by failing to ensure that the gasoline containing MTBE which

they manufactured, distributed, and retailed was properly distributed, stored, and dispensed.  It is

important to note that merely because ExxonMobil complied with minimum federal standards

does not mean that ExxonMobil is not liable to the City for negligence.  *See Ferebee v. Chevron*

*Chemical Co.*, 736 F.2d 1529, 1542 (DC Cir. 1984); *Burke v. Dow Chemical Co.*, 797 F.

Supp.1128, 1142 (E.D.N.Y. 1992) (As a general rule, compliance with federal standards does

not, in and of itself, immunize a manufacturer or retailer from state law tort liability.)

Negligence requires both a reasonably foreseeable danger of injury to another and

conduct that is unreasonable in proportion to that danger. N.Y. Pattern Jury Instr.--Civil 2:12.  A

person is only responsible for the results of his or her conduct if the risk of injury is reasonably

foreseeable.  *Id.*  The exact occurrence or exact injury does not have to be foreseeable; but injury

as a result of negligent conduct must be not merely possible, but be probable.  *Id.*  Here,

ExxonMobil knew that storage tanks containing MTBE have a propensity to leak and knew of

the danger MTBE posed to groundwater and drinking water supplies; thus, the damage suffered

by the City was foreseeable.

The City will prove causation by using both the commingled product theory and

traditional causation.  The City will show that gasoline containing MTBE that caused injury is a

commingled product of which ExxonMobil's product comprised a substantial portion.  *In re*

*MTBE*, 591 F.Supp.2d 259, 266, 276 (S.D.N.Y. 2008); *In re MTBE*, 447 F.Supp.2d 289, 301

(S.D.N.Y 2006).  The City will show that MTBE has contaminated its wells and that by introducing

Gasoline containing MTBE into a commingled product distribution system, ExxonMobil caused

such contamination.  *See id.*  Second, the City will show that ExxonMobil directly owned or

controlled underground storage systems that were leaky and that those underground storage systems

leaked gasoline containing MTBE into the soil and groundwater contaminating the City's Wells.

The City will show that ExxonMobil committed gross negligence and willful misconduct.

Gross negligence means a failure to use even slight care, or conduct that is so careless as to show

complete disregard for the rights of others. *See* NYPJI 2:10A.


### PROPOSED FINAL JURY INSTRUCTION NO. 12
#### Trespass to Land

(Only to be given if jury finds "traditional causation" established)

A person who, without justification or permission, intentionally causes a thing to go upon the property of another person commits what is known in the law as a trespass and is liable for any damages caused by that trespass. Trespass requires proof of intent.  Plaintiff claims that ExxonMobil, knowing that groundwater will flow from beneath its service stations in Queens to each of Plaintiff's Station 6 wells on [DATE], caused a past release of gasoline at its service stations, and as a result each of Plaintiff's Station 6 wells will be impacted by MTBE when the wells are used on [DATE]. ExxonMobil denies that it is responsible for any past release at its service stations, if any such release occurred; denies that Plaintiff's Station 6 wells will have any MTBE on [DATE] as a result of any act by ExxonMobil; denies that ExxonMobil knew that groundwater beneath its service stations will flow to Plaintiff's Station 6 wells on [DATE]; denies that groundwater beneath its service stations actually will flow to Plaintiff's Station 6 wells on [DATE]; and denies that it ever undertook any act, or failed to undertake any act, with the specific intent to cause MTBE, or any other thing, to go upon or into the Station 6 wells in the past, or at any time.  The first question for you to decide is whether ExxonMobil is responsible for any past release of gasoline containing MTBE at its service stations. If you decide that ExxonMobil is not responsible for any past release of gasoline containing MTBE at these service stations, then there can be no trespass by ExxonMobil and you need proceed no further in your deliberations.  However, if you find that ExxonMobil is responsible for a past release of gasoline containing MTBE at one or more of its service stations, then you must decide if that release(s) will cause MTBE to enter any of Plaintiff's Station 6 wells on [DATE]. If you find that the release(s) will not cause MTBE to enter the Station 6 wells on [DATE], then there can be no trespass by ExxonMobil and you need proceed no further in your deliberations. However, if you find that the release(s) will cause MTBE to enter the Station 6 wells on [DATE] ., then you must decide whether ExxonMobil's conduct was undertaken with the intent to trespass on the Station 6 wells on [DATE].

Intent involves the state of mind with which an act is done. If a person acts voluntarily with the purpose of bringing about a certain result he/she is said to have intended that result. Further, although a person does not act with the purpose of bringing about a result, if he or she acts under circumstances known to him or her that make it substantially certain that the result will follow, the person is said to have intended that result. If you find that ExxonMobil did not

act with the specific intent to cause MTBE to enter Plaintiff's Station 6 wells on [DATE], or if you find that Defendant did not know (or does not know) that groundwater will flow from beneath its service stations to the Station 6 wells on [DATE], or that, although ExxonMobil did (or does) know that groundwater will flow from beneath its service station to the Station 6 wells on [DATE] , that it did not know that this would make it substantially certain that MTBE would enter the Station 6 wells on [DATE] , then Defendant did not commit a trespass. If, however, you find that Defendant did act with the specific intent to cause MTBE from its service stations to enter Plaintiff's Station 6 wells on [DATE], or that Defendant was responsible for spilling gasoline with MTBE under circumstances making it substantially certain that the MTBE would enter each Plaintiff's Station 6 wells on [DATE], then Defendants did commit a trespass.

Authority: N.Y. Pattern Jury Instructions 3:8

## OBJECTIONS TO PROPOSED FINAL JURY INSTRUCTION NO.12

The City objects to this instruction on the grounds that it mischaracterizes the City's claim, misconstrues how the City intends to prove ExxonMobil's liability for it and misstates the law. The City objects that the jury instruction improperly requires the City to show injury to establish its trespass claim. *See* Plaintiff's Trial Memorandum for Phases III filed in 04-cv-0347, Dkt # 327 (June 26, 2009) at 1-5. Furthermore, the City objects to the ExxonMobil's characterization of the City's injury as future injury. As noted in Plaintiff's opposition to Defendant's Pretrial Memorandum for Phase One, the City has suffered present injury. *See* Plaintiff's Opposition to Defendant's Pretrial Memorandum filed in 00-cv-1898 Dkt# 2550 (June 15, 2009) at 1-10. Among other things, there already is MTBE contamination in the groundwater and in many of the wells. *See id.* It is true that the treatment plant will be built in the future, and that the treatment plant is a future remedy for the City's injury, but the injury itself exists now, in the present, and will continue to exist into the future, unless and until it is properly treated.

The City objects to ExxonMobil's statement that this claim applies only if "traditional causation" is established. As noted in the City's Trial Memorandum for Phase III and IV,

trespass is valid whether traditional or commingled product theory causation applies. *See* Plaintiff's Trial Memorandum for Phases III filed in 04-cv-0347, Dkt # 327 (June 26, 2009) at 1-5. The City objects to this instruction on the grounds that it requires the city to prove that Station 6 or the wells in Station 6 will be activated at all, much less on a specific date. *See* Plaintiff's Objections to Defendant's Jury Instructions for Phase One, filed in 00-cv-1898 Dkt# 2547 (June 15, 2009).

To establish a claim for trespass under New York law, a plaintiff need only show that it has a real property right and that the defendant intentionally infringed that right. *See Scribner v. Summers*, 84 F.3d 554, 557 (2d Cir. 1996) ("Under New York law, trespass is the intentional invasion of another's property"); N.Y. Pattern Jury Instr.--Civil 3:8 (same). The City need only show that it has property rights and that ExxonMobil intentionally infringed such rights.

Under well-established New York law, proof of actual injury or damages is not required to show a trespass. *See, e.g., Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 95 (1993) (nominal damages "protect a landowner's right to be free of trespass"); *New York Rubber Co. v. Rothery*, 132 N.Y. 293, 295-96 (1892) (it is error to limit the issue to the interference with the plaintiff's present use of water rights and to refuse to instruct the jury that plaintiff's right to recover nominal damages does not depend on showing actual injury); *Burger v. Singh*, 816 N.Y.S.2d 478, 480 (App. Div. 2006) ("nominal damages are presumed from a trespass"); *Mondello v. Newsday, Inc.*, 774 N.Y.S.2d 794, 794-95 (App. Div. 2004) ("[e]ven without pleading actual damages for trespass, a plaintiff is entitled to nominal damages"); *Shiffman v. Empire Blue Cross and Blue Shield*, 681 N.Y.S.2d 511, 512 (App. Div. 1998) (same); *Ligo v. Gerould*, 665 N.Y.S.2d 223, 224 (App. Div. 1997) ("same); *see also* 87 C.J.S. Trespass § 132 ("[e]very trespass gives a right to at least nominal damages"); 75 Am. Jur. 2d Trespass § 186 (same).

As owner of the Focus Wells, the City has substantial present possessory property rights to the water they draw.  *See, e.g.*, *In re MTBE*, 457 F.Supp.2d 455, 462 (S.D.N.Y. 2006) ("Usufructuary interests are possessory property rights"); *Hathorn v. Natural Carbonic Gas Co.*, 194 N.Y. 326, 338 (1909) ("subterranean waters have always been treated as a mineral in the decisions relating to their use and enjoyment."); *Hathorn v. Natural Carbonic Gas Co.*, 112 N.Y.S. 374, 378 (App. Div. 1908) (percolating water found in land belongs to the owner of the land); *Keeler v. Tubbs*, 147 N.Y.S.2d 166, 170 (Sup. Ct. 1955) ("the right of a landowner to sink wells, and gather and use percolating waters as he will is a property right which cannot be taken away from him").  The City's proof of this element at trial will focus on showing that it has present possessory property rights to the water that supplies the Focus Wells.

The City will show that ExxonMobil intentionally created and distributed gasoline containing MTBE at the same time that it was aware of the vulnerabilities in the gasoline distribution and storage system and that such conduct led to contamination of the water supplying the Focus Wells.

In its Fourth Amended Complaint, the City specifically requested: "All appropriate injunctive relief to abate the public nuisance and trespass, including, but not limited to, the installation of remediation technologies on all City wells in the Affected Area" and "the undertaking of prophylactic measures designed to abate the imminent harm that the products pose to all other wells in the Affected Area for so long as the Products cause harm and are present in groundwater and soil in the Affected Area" and for declaratory relief.  Fourth Amended Complaint at Prayer, p. 37, ¶¶ 3-4.  Equitable relief would be especially appropriate in the highly unlikely event that nominal or inadequate damages were awarded by the jury.  *See State v. Johnson*, 846 N.Y.S.2d 671, 675 (App. Div. 2007) ("despite the nominal damages awarded, that the issuance of a permanent

injunction was proper"); *id.* (where "it is impossible, or difficult, to ascertain or determine the extent

of the injury which may flow from a continuance of the wrong, an injunction is the proper

remedy"); *see also Wheelock v. Noonan*, 108 N.Y. 179, 185 (1888) (same); *see also In re MTBE*,

2007 WL 1601491, * 4 (S.D.N.Y. 2007) (trespass claim may "be time-barred as to damages, but not

as to equitable relief regarding the need for future remediation").

### PROPOSED FINAL JURY INSTRUCTION NO. 13
Private Nuisance

(Only to be given if jury finds "traditional causation" established)

A plaintiff seeking to recover damages for private nuisance must show (1) that conduct of the defendant interfered with plaintiff's right to use and enjoy his land, (2) that the interference was substantial, (3) that defendant's conduct was intentional, and (4) that defendant's conduct was unreasonable under all of the circumstances. Plaintiff in this case claims that past gasoline releases from ExxonMobil's service stations in Queens for which Plaintiff contends Defendant was responsible will unreasonably interfere with its use of the Station 6 wells by causing MTBE to be in those wells on [DATE] . ExxonMobil denies that it has done any act, or failed to do any act, which will cause any interference with Plaintiff's use of the Station 6 wells on [DATE] . The burden of proving all the elements of private nuisance is on Plaintiff. Unless you find that ExxonMobil will interfere with Plaintiff's right to use its Station 6 wells on [DATE] , you will find for ExxonMobil. If you find that ExxonMobil will interfere with that right on [DATE] , then you must determine if that interference will be substantial. To be "substantial," the interference must be real and appreciable, not imagined or petty. The test is not what will disturb or annoy the Plaintiff, but whether a reasonable public water provider would be appreciably annoyed or disturbed by the interference. If you find that ExxonMobil will interfere with Plaintiff's use of its Station 6 wells on [DATE] , but that the interference will not be substantial, you will find for ExxonMobil. If however, you find that there will be a substantial interference, you will next consider whether ExxonMobil's conduct was intentional. If you find that ExxonMobil has acted for the purpose of interfering with Plaintiff's use and enjoyment the Station 6 wells on [DATE] , or that, though ExxonMobil did not act with such a purpose, that it knew that such future interference was substantially certain to result from its conduct, your finding will be that ExxonMobil's conduct was intentional. If you find that ExxonMobil's conduct was not intentional, you will find for ExxonMobil. However, if you find that ExxonMobil's conduct was intentional, you will next consider whether ExxonMobil's conduct was unreasonable. It is in the public interest that each landowner be free to lawfully use property to the fullest possible extent consistent with the right of others to use their own property free from unreasonable interference. Thus, whether particular conduct is a nuisance is a question of degree, requiring you to consider the need for ExxonMobil's conduct, its usefulness and social value, and weigh that against the

gravity of the harm which the Plaintiff says it will suffer in the future. In determining whether ExxonMobil's conduct was unreasonable, you must consider all of the circumstances including the character of the neighborhood, the location of the properties, the nature and purpose of ExxonMobil's activities and its value to the community, the nature, extent and frequency of the interference with Plaintiff's use of the wells, whether the interference can be avoided or lessened without undue hardship to defendant. No one of these factors is conclusive, but all are to be considered together and in relation to all of the surrounding circumstances. If you find that ExxonMobil's conduct was not unreasonable, you will find for ExxonMobil. However, if you find that there was an interference with Plaintiff's right to use its wells, that the interference was substantial, unreasonable, and intentionally caused by ExxonMobil's, you will find for plaintiff.

Authority: N.Y. Pattern Jury Instructions 3:16 (as modified)

## OBJECTIONS TO PROPOSED FINAL JURY INSTRUCTION NO.13

The City objects to this instruction on the grounds that it mischaracterizes the City's claim, misconstrues how the City intends to prove ExxonMobil's liability for it, misstates the law and contains improper legal argument.  Furthermore, the City objects to ExxonMobil's characterization of the City's injury as future injury.  As noted in Plaintiff's opposition to Defendant's Pretrial Memorandum for Phase One, the City has suffered present injury.  *See* Plaintiff's Opposition to Defendant's Pretrial Memorandum filed in 00-cv-1898 Dkt# 2550 (June 15, 2009) at 1-10.  Among other things, there already is MTBE contamination in the groundwater and in many of the wells.  *See id.*  It is true that the treatment plant will be built in the future, and that the treatment plant is a future remedy for the City's injury, but the injury itself exists now, in the present, and will continue to exist into the future, unless and until it is properly treated.

The City objects to ExxonMobil's statement that this claim applies only if "traditional causation" is established.  As noted in the City's Trial Memorandum for Phase III and IV, trespass is valid whether traditional or commingled product theory causation applies.  The City objects to this instruction on the grounds that it requires the city to prove that Station 6 or the

wells in Station 6 will be activated at all, much less on a specific date.  *See* Plaintiff's Objections to Defendant's Jury Instructions for Phase One, Plaintiff's Objections to Defendant's Jury Instructions for Phase One, filed in 00-cv-1898 Dkt# 2547 (June 15, 2009).

A plaintiff seeking to recover damages for private nuisance must show, *first*, that the conduct of the defendant interfered with plaintiff's right to use and enjoy its land, *second*, that the interference was substantial, *third*, that defendant's conduct was intentional, and *fourth*, that defendant's conduct was unreasonable under all of the circumstances.  *See Copart Industries,* 41 NY2d at 570.  To be substantial, the interference must be real and appreciable.  The test is not what disturbs or annoys the plaintiff, but whether reasonable persons living in the locality would be appreciably annoyed or disturbed by the interference. NY Pattern Jury Instructions 3:16.

The City will show that ExxonMobil has substantially and unreasonably interfered with plaintiff's use of its property or water by contaminating the groundwater feeding one or more of its Wells in and around Jamaica in Queens County New York with MTBE.  The City will also show that MTBE has contaminated its wells and that by introducing gasoline containing MTBE into a commingled product distribution system, ExxonMobil is a substantial cause of such contamination.  The City will also show that ExxonMobil directly owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater and for that reason ExxonMobil directly caused the contamination in its wells.

The City will also prove that ExxonMobil acted intentionally because it intentionally created MTBE, intentionally added it to gasoline, and intentionally transported MTBE-containing gasoline through a distribution system it knew was susceptible to leaks and spills; that ExxonMobil acted, knowing that MTBE had a higher propensity to contaminate groundwater

than other gasoline additives, and that unintentional releases of gasoline frequently occurred.

*See* Section II.A.3, supra; *In re MTBE*, 379 F.Supp.2d at 426-27.


## PROPOSED FINAL JURY INSTRUCTION NO. 14
Public Nuisance

A public nuisance is any condition which offends, interferes with or causes damage to the public so as to offend public morals, interfere with the use by the public of a public place or endanger or injure the property, health, safety or comfort of a considerable number of persons. Plaintiff has the burden of proving a public nuisance by clear and convincing evidence.  In a case of alleged groundwater contamination, the plaintiff must prove that the levels of contamination are harmful or potentially harmful to a considerable number of persons. Here, the City claims that the MTBE in the groundwater in Queens creates such a risk of harm.  ExxonMobil denies that any MTBE contamination that may be present in the Station 6 wells in the future will create any such risk of harm to the public.  If you find that the City has proven by clear and convincing evidence that MTBE will be present in the Station 6 wells in the future at levels sufficient to cause substantial harm to humans, you must find for the City. If you do not find by clear and convincing evidence that a considerable number of persons will be substantially and imminently harmed by MTBE in the Station 6 wells, you must find for ExxonMobil.

Authority: State of New York v. Fermenta ASC Corp., 166 Misc. 2d 524 (N.Y. Suffolk County 1995), affirmed 238 A.D.2d 400 (2d Dept. 1997).


## OBJECTIONS TO PROPOSED FINAL JURY INSTRUCTION NO.14

The City objects to this instruction on the grounds that it employs an erroneous standard

of proof, clear and convincing evidence, when the correct standard of proof for the City is

preponderance of the evidence.  *See* Objections to Proposed Final Jury Instruction No. 1, *supra*.

The City also objects to this instruction on the grounds that it mischaracterizes the City's claim,

misconstrues how the City intends to prove ExxonMobil's liability for it, misstates the law and

contains improper legal argument.  Furthermore, the City objects to the ExxonMobil's

characterization of the City's injury as future injury.  As noted in Plaintiff's opposition to

Defendant's Pretrial Memorandum for Phase One, the City has suffered present injury.  *See*

Plaintiff's Opposition to Defendant's Pretrial Memorandum filed in 00-cv-1898 Dkt# 2550 (June

29

15, 2009) at 1-10.  Among other things, there already is MTBE contamination in the groundwater and in many of the wells.  *See id.*  It is true that the treatment plant will be built in the future, and that the treatment plant is a future remedy for the City's injury, but the injury itself exists now, in the present, and will continue to exist into the future, unless and until it is properly treated.

A public nuisance is "conduct or omissions which offend, interfere with or cause damage to the public in the exercise of rights common to all in a manner such as to offend public morals *or* interfere with the use by the public of a public place *or* endanger or injure the property, health, safety or comfort of a considerable number of persons."  *Copart Indus., Inc. v. Consol. Edison Co*., 41 N.Y.2d 564, 568 (1977) (emphasis added); *see also In re MTBE*, 175 F.Supp.2d 593, 627 n. 51 (S.D.N.Y. 2001) (same).   New York law expressly recognizes that "the seepage of chemical wastes into a public water supply constitutes a public nuisance."  *State v. Schenectady Chemicals, Inc*., 479 N.Y.S.2d 1010, 1013 (App. Div. 1984).  Likewise, the "release or threat of release of hazardous waste into the environment unreasonably infringes upon a public right and thus is a public nuisance as a matter of New York law."  *State of New York v. Shore Realty Corp*., 759 F.2d 1032, 1051 (2d Cir.1985); *In re MTBE*, 175 F.Supp.2d at 627 n. 51.

As explained below, because the City is a municipality authorized by statute and common law to bring claims for public nuisance, *see* N.Y.C. Admin. Code § 24-302 (statute), *New York Trap Rock Corporation v. Town of Clarkstown*, 299 N.Y. 77, 83 (1949) (common law); *N.Y. State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1361 (2d Cir. 1989) (same), it is excused from proving a number of facts that a private party in the same position would have to prove.  For example, the City need not prove any injury or damages to itself to obtain an injunction to abate a public nuisance, Rest. 2d Torts § 821C (2)(b).  Instead, it need only show the threat of harm to its

citizens, *N.Y. State Nat. Org. for Women*, 886 F.2d at 1361; *Shore Realty Corp.*  759 F.2d at 1051,

or, in the alternative, that ExxonMobil violated applicable statutes, *Incorporated Village of Freeport*

*v. Jefferson Indoor Marina, Inc.*, 556 N.Y.S.2d 150, 152 (App. Div. 1990); *City of New York v.*

*Bilynn Realty Corp.*, 499 N.Y.S.2d 1011, 1013 (App. Div. 1986); *Shore Realty Corp.*, 759 F.2d at

1051, to prove a public nuisance and obtain equitable relief.

  Where, as here, a municipality has authority to maintain a public nuisance action, proof of

special injury is not required.  *See* Rest. 2d Torts § 821C (2)(b) ("In order to maintain a proceeding

to enjoin to abate a public nuisance, one must … (b) have authority as a public official or public

agency to represent the state or a political subdivision in the matter"); *see also State v. Schenectady*

*Chemicals, Inc.*, 479 N.Y.S.2d at 1014 (action may be maintained by one who is "clearly

authorized" to commence legal proceedings to abate a public nuisance); *c.f. Copart Industries, Inc.*,

41 N.Y.2d at 568 (special damage required for *individual* to maintain an action for public nuisance).

Here, the City is expressly authorized by statute to maintain an action for nuisance in these

particular circumstances:  "It shall be the duty of the commissioner to preserve the purity of all

waters from which any part of the city water supply is drawn, and to protect such supply and the

lands adjacent thereto *from* injury or *nuisance.*"  N.Y.C. Admin. Code § 24-302 (emphasis added);

*see also* N.Y.C. Admin. Code § 17-142 (defining nuisance to include whatever may render "human

… drink unwholesome"); *c.f. In re MTBE*, 2005 WL 1500893, * 3 (S.D.N.Y. 2005) (discussing

statutorily authorized public nuisance claims under California law).

  The City also has inherent authority to maintain an action for public nuisance to protect the

health of its citizens.  *See New York Trap Rock Corporation v. Town of Clarkstown*, 299 N.Y. 77,

83 (1949) (municipality has inherent authority to bring public nuisance action to protect the

health of its citizens); *N.Y. State Nat. Org. for Women*, 886 F.2d at 1361 (the City "is a proper party

to bring an action to restrain a public nuisance that allegedly may be injurious to the health and

safety of its citizens").  As the Court of Appeals recognized in upholding the City's authority to

maintain a police force outside of city limits to protect its water supply, "the protection of the public

water supply is integral to the public health and welfare."  *People v. Van Buren*, 4 N.Y.3d 640, 649

(2005).  The City's authority to maintain an action for public nuisance without a showing of

"special injury" is therefore beyond question.

The City therefore does not need to show "actual, as opposed to threatened, harm" to prove

its public nuisance claim and obtain injunctive relief.  *N.Y. State Nat. Org. for Women*, 886 F.2d at

1361; *N.Y. v. Shore Realty Corp.*  759 F.2d 1032, 1051 (2d Cir. 1985) (collecting cases); *New York

ex rel. Spitzer v. Cain*, 418 F.Supp.2d 457, 483 (S.D.N.Y. 2006) (same); *see also People ex rel.

Bennett v. Laman,*  277 N.Y. 368, 380 (1938) (injunction appropriate where health of the people is

menaced by the deprivation of "food commodity, or its service in a contaminated state").

Because the City will show that ExxonMobil's conduct violated several statutes, the City is

not required to show harm or threatened harm to the public.  Specifically, in a public nuisance

action brought by a municipality, upon showing that a defendant has violated a statute, the plaintiff

need not show "injury to the public" to obtain injunctive relief.  *See Incorporated Village of

Freeport*, 556 N.Y.S.2d at 152 ("no special injury or damage to the public need be alleged, and the

commission of the prohibited act is sufficient to warrant granting the injunction"); *City of New York

*, 499 N.Y.S.2d at 1013 (same); *City of New York v. Casbar, Nicobel LLC*, 2009 WL 1026593, *2

(N.Y. Sup. April 15, 2009) (holding that where conduct "violates a statutory scheme designed to

protect the public health, that the conduct constitutes a violation and may be considered a public

nuisance subject to the Administrative Code" "relief may be granted without a demonstration of

special damages or injury to the public. The proof of the violation alone is sufficient grounds for the

32

issuance of injunctive relief"); *Shore Realty Corp.*, 759 F.2d at 1051 (violations of N.Y. Envtl.

Conserv. Law §§ 27-0913(1), 27-0914(1) and 27-0914(2) constituted public nuisance per se).

## PROPOSED FINAL JURY INSTRUCTION NO. 15
### Consider Damages Only If Necessary

If the plaintiff has proven by clear and convincing evidence that ExxonMobil is liable on the plaintiff's claims, then you must determine the damages to which the plaintiff is entitled. However, you should not infer that the plaintiff is entitled to recover damages merely because I am instructing you on the elements of damages. It is exclusively your function to decide upon liability, and I am instructing you on damages only so that you will have guidance should you decide that plaintiff is entitled to recovery.

Authority: MFJI, Instruction 73-1.

## OBJECTIONS TO PROPOSED FINAL JURY INSTRUCTION NO.15

The City objects to this instruction on the grounds that it employs an erroneous standard

of proof, clear and convincing evidence, when the correct standard of proof for the City is

preponderance of the evidence.  *See* Objections to Proposed Final Instruction No. 1, *supra*.

## PROPOSED FINAL JURY INSTRUCTION NO. 16
### Multiple Claims

You should not award compensatory damages more than once for the same injury.  For example, if a plaintiff were to prevail on two claims and establish a one dollar injury, you could not award him or her one dollar compensatory damages on each claim – he or she is only entitled to be made whole again, not to recover more than he or she lost. Of course, if different injuries are attributed to the separate claims, then you must compensate him or her fully for all of the injuries.

Authority: MFJI, Instruction 77-2 (as modified).

## OBJECTIONS TO PROPOSED FINAL JURY INSTRUCTION NO.16

The City objects to this instruction on the grounds that it is prejudicial to the City and

misleading to the jurors.  The City is entitled to be made whole for the injuries it has sustained.

Awarding the City damages for each injury it has sustained in a case with multiple claims is not

erroneous.


## PROPOSED FINAL JURY INSTRUCTION NO. 17
### Compensatory Damages

The purpose of the law of damages is to award, as far as possible, just and fair
compensation for the loss, if any, which resulted from the defendants' violation of the plaintiff's
rights. If you find that defendants are liable on the claims, as I have explained them, then you
must award the plaintiff sufficient damages to compensate it for any injury proximately caused
by the defendants' conduct.

These are known as "compensatory damages." Compensatory damages seek to make the
plaintiff whole – that is, to compensate it for the damage suffered.  I remind you that you may
award compensatory damages only for injuries that a plaintiff proves were proximately caused
by a defendant's allegedly wrongful conduct. The damages that you award must be fair and
reasonable, neither inadequate nor excessive. You should not award compensatory damages for
speculative injuries, but only for those injuries that a plaintiff has actually suffered or which he
or she is reasonably likely to suffer in the near future.  In awarding compensatory damages, if
you decide to award them, you must be guided by dispassionate common sense. Computing
damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary
guesswork. On the other hand, the law does not require a plaintiff to prove the amount of his or
her losses with mathematical precision, but only with as much definiteness and accuracy as the
circumstances permit.

In all instances, you are to use sound discretion in fixing an award of damages, drawing
reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

Authority: MFJI, Instruction 77-3 (as modified).

## OBJECTIONS TO PROPOSED FINAL JURY INSTRUCTION NO.17

The City does not object to this instruction.


## PROPOSED FINAL JURY INSTRUCTION NO. 18
### Damages – Existing Injury

If you find that other chemical contamination will be in the Station 6 wells when they are
used by the Plaintiff on [DATE] and that such contamination will require treatment, the Plaintiff
will only be entitled to recover those costs resulting from the presence of ExxonMobil's MTBE
in the Station 6 wells on [DATE] . Plaintiff may not recover the cost to treat chemical
contamination which existed prior to MTBE being detected in the Station 6 wells and will
require treatment when the Station 6 wells are used by Plaintiff in [DATE]. The Plaintiff can

only recover for damage caused by MTBE. The Plaintiff should be compensated only to the extent that you find Plaintiff's condition was made worse by the future detection of ExxonMobil's MTBE in the Station 6 wells in harmful quantities.

Authority: PJI 2:282 (as modified)

### OBJECTIONS TO PROPOSED FINAL JURY INSTRUCTION NO.18

The City objects to this instruction on the grounds that it requires the city to prove that Station 6 or the wells in Station 6 will be activated at all, much less on a specific date.  *See* Plaintiff's Objections to Defendant's Jury Instructions for Phase One, filed in 00-cv-1898 Dkt # 2547 (June 15, 2009).

Furthermore, the City objects to ExxonMobil's characterization of the City's injury as future injury.  As noted in Plaintiff's opposition to Defendant's Pretrial Memorandum for Phase One, the City has suffered present injury.  *See* Plaintiff's Opposition to Defendant's Pretrial Memorandum filed in 00-cv-1898 Dkt# 2550 (June 15, 2009) at 1-10.  Among other things, there already is MTBE contamination in the groundwater and in many of the wells.  *See id.*  It is true that the treatment plant will be built in the future, and that the treatment plant is a future remedy for the City's injury, but the injury itself exists now, in the present, and will continue to exist into the future, unless and until it is properly treated.

The City objects to this instruction in its entirety on the grounds that it is confusing to the jurors and misstates the law.  The level of pre-existing contamination, if any, is irrelevant to the issue of the City's injury.  *Cornell v. Exxon*, 162 A.D.2d 892, 558 N.Y.S.2d 647 (App Div. 3d 1990) ("Chauncy also claims that since plaintiffs discovered their water supply was contaminated with bacteria upon purchasing their property, the subsequent gasoline contamination is irrelevant on the issue of detriment to their property. This claim is unpersuasive. As Supreme Court noted, bacterial contamination of a water supply can be neutralized by the use

of chlorine treatment, while gasoline contamination cannot be treated but must be prevented from entering the water supply. The preexisting bacterial contamination is but a factor to be weighed by a jury in their determination of damages."); *see also Walker Drug Co., Inc. v. La Sal Oil Co.,* 972 P.2d 1238, 1248 (Utah, 1998) ("The Walkers are entitled to recover for all damage caused by new gasoline migrating onto the property during the limitations period, regardless of the existence of pre-existing contamination").  The City is entitled to recover for all damage caused by MTBE migrating into its groundwater, regardless of the existence of pre-existing contamination.  On all of the City's claims that require it to prove that it has been injured, evidence of any pre-existing contamination with substances other than MTBE in the City's wells or ground water is irrelevant to the City's injury.  Thus, in determining whether the City has been injured, the jury may not determine that the City is less injured, or not injured, because there is contamination in the wells or groundwater from substances other than MTBE.  The jury may consider pre-existing contamination only in the damages context.  *Id.*; NY PJI 2:71.

**The City also objects to ExxonMobil's limitation of damages to costs resulting from the presence of ExxonMobil's MTBE, as opposed to the presence of MTBE from a commingled product.**

### PROPOSED FINAL JURY INSTRUCTION NO. 19
Damages – Measure of Damages

The Plaintiff claims that it will be damaged because MTBE will affect its use of the Station 6 wells when it uses the wells on [DATE]. If you find that ExxonMobil's MTBE will be in the Station 6 wells on [DATE] at levels which cause Plaintiff harm, you will award the lesser of the market value of the Station 6 wells before MTBE was detected in those wells or the reasonable cost of repairs necessary to restore Station 6 to its former condition at the time the City acquired these wells and/or facility.

Authority: PJI 2:311

**OBJECTIONS TO PROPOSED FINAL JURY INSTRUCTION NO.19**

The City objects to this instruction in its entirety on the grounds that it is confusing to the jurors, misstates the law and mischaracterizes the City's injuries in this case.   The City objects to this instruction on the grounds that this measure of damages does not apply to its claims in this case.  In particular, this measure of damages does not apply to the City's nuisances and trespass claims, among others.  *See, e.g., Guzzardi v. Perry's Boats, Inc.*, 460 N.Y.S.2d 78, 80-82 (App. Div. 1983).

Furthermore, the City objects to ExxonMobil's characterization of the City's injury as future injury.  As noted in Plaintiff's opposition to Defendant's Pretrial Memorandum for Phase One, the City has suffered present injury.  *See* Plaintiff's Opposition to Defendant's Pretrial Memorandum filed in 00-cv-1898 Dkt# 2550 (June 15, 2009) at 1-10.  Among other things, there already is MTBE contamination in the groundwater and in many of the wells.  *See id.*  It is true that the treatment plant will be built in the future, and that the treatment plant is a future remedy for the City's injury, but the injury itself exists now, in the present, and will continue to exist into the future, unless and until it is properly treated.

The City objects to this instruction on the grounds that it requires the City to prove that Station 6 or the wells in Station 6 will be activated at all, much less on a specific date.  *See* Plaintiff's Objections to Defendant's Jury Instructions for Phase One, filed in 00-cv-1898 Dkt# 2547 (June 15, 2009).

The City objects to this instruction on the grounds that it requires the jury to find that ExxonMobil's MTBE will be in the wells at a harmful level, rather than MTBE from a commingled product.

**[Proposed Final Instruction No. 20 is missing in Defendant's document.]**

**PROPOSED FINAL JURY INSTRUCTION NO. 21**
<u>Mitigation of Damages</u>

You are instructed that any person who claims damages as a result of an alleged wrongful act of another has a duty under the law to use reasonable diligence under the circumstances to "mitigate," or minimize, those damages. The law imposes on an injured person the duty to take advantage of reasonable opportunities he or she may have to prevent the aggravation of his or her injuries, so as to reduce or minimize the loss or damage. If you find Defendants are liable to plaintiff and that the plaintiff has suffered damages, the plaintiff may not recover for any item of damage it could have avoided through such reasonable effort. If the plaintiff unreasonably failed to take advantage of an opportunity to lessen its damages, you should deny recovery for those damages which would have been avoided had it taken advantage of the opportunity. Bear in mind that the question whether the plaintiff acted "reasonably" with respect to the mitigation of damages is one for you to decide, as sole judges of the facts. Although the law will not allow an injured plaintiff to sit idly by when presented with an opportunity to mitigate, this does not imply that the law requires an injured plaintiff to exert himself or herself unreasonably or incur unreasonable expense in an effort to mitigate, and it is defendant's burden of proving that the damages reasonably could have been avoided. In deciding whether to reduce plaintiff's damages due to some failure to mitigate, therefore, you must weigh all the evidence in light of the particular circumstances of the case, using sound discretion in deciding whether the defendant has satisfied his burden of proving that the plaintiff's conduct was not reasonable.

Authority: MFJI, Instruction 77-7.

**OBJECTIONS TO PROPOSED FINAL JURY INSTRUCTION NO.21**

The City objects to this instruction on the grounds that mitigation of damages does not apply to the City's claims and injuries in this case. The duty of mitigation is not enforced in cases involving intentional or malicious injuries. *See Norske Ameriekalinje v. Sun Printing and Publishing Assoc.*, 226 N.Y.1 (1919); *Clark Operating Corp. v. Yokley*, 466 N.Y.S.2d 204 (Sup. Ct. Kings Cty 1983). Duty of mitigation does not apply to cases involving positive, continuing torts, such as nuisance or trespass. *See Clark*, 466 N.Y.S.2d 204. When, as here, the plaintiff is the victim of such continuing or intentional torts, courts have viewed imposing the duty of mitigation as an inequitable result. *See id.*

Dated:  San Francisco, California

      July 6, 2009

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Attorney for Plaintiff City of New York
100 Church Street
New York, New York 10007
(212) 788-1568


/s/ *LESLEY E. WILLIAMS*         
VICTOR M. SHER *(pro hac vice)*
TODD E. ROBINS *(pro hac vice)*
JOSHUA STEIN *(pro hac vice)*
LESLEY E. WILLIAMS (LW8392)
NICHOLAS G. CAMPINS *(pro hac vice)*
MARNIE E. RIDDLE *(pro hac vice)*

SHER LEFF LLP
450 Mission Street, Suite 400
San Francisco, CA 94105
(415) 348-8300

*Attorneys for Plaintiff City of New York*