**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------- x

In Re: Methyl Tertiary Butyl Ether ("MTBE")                Master File No. 1:00-1898
Products Liability Litigation                              MDL 1358 (SAS)
                                                          M21-88
-------------------------------------------------------------------- x    ECF Case
**This document relates to the following case:**

*City of New York v. Amerada Hess Corp., et al.*
Case No. 04 Civ. 3417

-------------------------------------------------------------------- x

## PLAINTIFF CITY OF NEW YORK'S OPPOSITION TO DEFENDANT'S
## PRETRIAL MEMORANDUM FOR PHASE III

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ............................................................................................... ii

**I. INTRODUCTION** ........................................................................................................1

**II. ARGUMENT** ..............................................................................................................2

    A.  Additional Staging of the Case is Inappropriate ......................................................2

    B.  The Proper Burden of Proof in this Case is Preponderance of the Evidence ............................2

    C.  The City Will Prove Actual Injury ........................................................................4

    D.  The City Will Be Able to Prove Causation ............................................................6

    E.  ExxonMobil Is Liable for Trespass ......................................................................6

    F.  ExxonMobil Is Liable for Public Nuisance ..........................................................8

    G.  ExxonMobil Is Liable for Negligence ................................................................10

    H.  ExxonMobil Is Liable for Strict Liability Design Defect ......................................12

    I.  ExxonMobil Is Liable for Strict Liability for Failure to Warn ................................14

    J.  ExxonMobil Is Liable for Private Nuisance ........................................................16

    K.  ExxonMobil Is Liable Under the New York State Navigation Law ......................17

    L.  ExxonMobil Is Liable Under the Toxic Substances Control Act ..........................18

**III.  CONCLUSION** .........................................................................................................19

## TABLE OF AUTHORITIES

**Federal Cases**

*Burke v. Dow Chemical Co.*,
   797 F. Supp.1128 (E.D.N.Y. 1992) ........................................................................ 11

*Ferebee v. Chevron Chemical Co.*,
   736 F.2d 1529 (DC Cir. 1984) ............................................................................... 11

*Glew v. Cigna Group Ins.*,
   590 F.Supp.2d 395 (E.D.N.Y. 2008) ........................................................................ 3

*In re MTBE*,
   175 F.Supp.2d 593 (S.D.N.Y. 2001) ........................................................................ 8

*In re MTBE*,
   2007 WL 1601491 (S.D.N.Y.  June 04, 2007) ........................................................ 14

*In re MTBE*,
   2008 WL 1971538, (May 7, 2008) .................................................................. 13, 14

*In re MTBE*,
   447 F.Supp.2d 289 (S.D.N.Y 2006) ................................................................ *passim*

*In re MTBE*,
   457 F.Supp.2d 455 (S.D.N.Y. 2006) .................................................................... 4, 7

*In re MTBE*,
   510 F.Supp.2d 299 (S.D.N.Y. 2007) ...................................................................... 18

*In re MTBE*,
   517 F.Supp.2d 662 (S.D.N.Y. 2007) ...................................................................... 10

*In re MTBE*,
   559 F.Supp.2d 424 (S.D.N.Y. 2008) ...................................................................... 18

*In re MTBE,*
   568 F.Supp.2d 376 (S.D.N.Y. 2008) ...................................................................... 14

*In re MTBE*,
   591 F.Supp.2d 259 (S.D.N.Y. 2008) ............................................................... *passim*

*Knaust v. City of Kingston*,
   193 F.Supp.2d 536 (N.D.N.Y. 2002) ........................................................................ 8

ii

*N.Y. State Nat. Org. for Women v. Terry,*
   886 F.2d 1339 (2d Cir. 1989) .................................................................. 9

*New York ex rel. Spitzer v. Cain,*
   418 F.Supp.2d 457 (S.D.N.Y. 2006) ....................................................... 9

*Olin Corporation v. Certain Underwriters at Lloyd's London,*
   468 F.3d 120 (2d Cir. 2006)...................................................................... 5

*Scribner v. Summers,*
   84 F.3d 554 (2d Cir. 1996)........................................................................ 6

*Seneca Meadows, Inc. v. ECI Liquidating, Inc.,*
   427 F.Supp.2d 279 (W.D.N.Y. 2006) ...................................................... 3

*State of New York v. Shore Realty Corp.,*
   759 F.2d 1032 (2d Cir.1985)........................................................... *passim*

## State Cases

*Buley v. Rexnord Process Machinery Div.,*
   482 N.Y.S.2d 104 (App. Div. 1984) ...................................................... 15

*City of New York v. Bilynn Realty Corp.,*
   499 N.Y.S.2d 1011 (App. Div. 1986)................................................. 9, 10

*City of New York v. Casbar, Nicobel LLC,*
   2009 WL 1026593, *2 (N.Y. Sup. April 15, 2009) ............................... 10

*Copart Indus., Inc. v. Consol. Edison Co.,*
   41 N.Y.2d 564 (1977) ............................................................................... 8

*Cover v. Cohen,*
   61 N.Y.2d 261 (1984) ............................................................................. 13

*Gerdowsky v. Crain's New York Business,*
   593 N.Y.S.2d 514 (App. Div. 1993) ...................................................... 10

*Hathorn v. Natural Carbonic Gas Co.,*
   112 N.Y.S. 374 (App. Div. 1908) ............................................................ 8

*Hathorn v. Natural Carbonic Gas Co.,*
   194 N.Y. 326 (1909) ................................................................................. 7

*Incorporated Village of Freeport v. Jefferson Indoor Marina, Inc.*,
   556 N.Y.S.2d 150 (App. Div. 1990) ........................................................... 9, 10

*Keeler v. Tubbs*,
   147 N.Y.S.2d 166 (Sup. Ct. 1955) ............................................................. 8

*Lugo v. LJN Toys, Ltd.*,
   75 N.Y.2d 850 (1990) ............................................................................... 12

*Micallef v. Miehle Co.*,
   39 N.Y.2d 376 (1976) ............................................................................... 12

*New York Trap Rock Corporation v. Town of Clarkstown*,
   299 N.Y. 77 (1949) ................................................................................... 9

*People ex rel. Bennett v. Laman*,
   277 N.Y. 368 (1938) ................................................................................. 9

*Plainview Water Dist. v. ExxonMobil Corp. et al.*,
   No. 9975-01, 2008 NY Slip Op. 50152U at 25 (N.Y. Sup. Ct. Jan. 9, 2008) ............... 9

*State v. Cronin*,
   717 N.Y.S.2d 828 (2000), cited in 379 F.Supp.2d at 428, n. 440 ........................... 17

*State v. Schenectady Chemicals, Inc.*,
   479 N.Y.S.2d 1010 (App. Div. 1984) ........................................................... 8

*Strauss v. Belle Realty*,
   65 N.Y.2d 399 (1985) ............................................................................... 10

*Voss v. Black & Decker Mfg.*,
   59 N.Y.2d 102 (1983) ............................................................................... 13

**Federal Statutes**

15 U.S.C. § 2607(e) .......................................................................................... 18, 19

15 U.S.C. § 2614(3)(B) .................................................................................... 18

15 U.S.C. § 2619(c)(2) ..................................................................................... 18

**State Statutes**

N.Y. Nav. Law § 172(8) ................................................................................... 17

N.Y.C. Admin. Code § 24-302 .......................................................................... 9

N.Y. Envtl. Conserv. Law §§ 27-0913(1), 27-0914(1) and 27-0914(2) ...................................... 10

**Other Authorities**

16 Lee S. Kreindler, Blanca I. Rodriguez, David Beekman & David C. Cook, *New York Law of Torts*, § 20.2 ....................................................................................................... 3

N.Y. Pattern Jury Instr.--Civil 2:12 ........................................................................... 11

N.Y. Pattern Jury Instr.--Civil 2:120 ......................................................................... 13

N.Y. Pattern Jury Instr.--Civil 2:125 ......................................................................... 10

NYPJI 2:10A .................................................................................................................. 12

NY Pattern Jury Instruction 2:120 ............................................................................. 15

N.Y. Pattern Jury Instr.--Civil 3:8 ............................................................................... 6

NY Pattern Jury Instructions 3:16 .............................................................................. 16

Rest. 2d Torts § 821C (2)(b) ......................................................................................... 9

Restatement (Second) of Torts § 402A ...................................................................... 14

## I.  INTRODUCTION

ExxonMobil's pretrial briefing has devoted inordinate space to trying to convince the Court that the City's injury is speculative future injury, and that the City must meet its arbitrarily selected "clear and convincing" burden of proof standard for all issues in all phases of this trial.   The Court recently rejected ExxonMobil's attempt to impose that standard on the City for Phase I.  *See* July 6, 2009 Opinion and Order in this Action at pp. 26-27 ("the reasonable certainty requirement does not require a plaintiff to meet a heightened burden of proof – *i.e.* the clear and convincing evidence standard").  Because ExxonMobil's argument is legally meritless, the Court should likewise reject it for Phase III.   ExxonMobil's attempt to impose a higher burden of proof on the City is nothing more than a smokescreen through which ExxonMobil hopes to hide its tortious and unlawful behavior in this case.  In fact, ExxonMobil's gasoline containing MTBE already has caused the contamination of the groundwater in Jamaica, Queens, beneath the Station 6 site.  The City already has been injured by ExxonMobil's tortious and unlawful conduct.  The City will build *Station 6* as a future remedy for its injuries, but the *injuries* are present injuries.  Some injuries clearly will be ongoing, absent remediation of the MTBE contamination in the City's waters.

Attempting to squeeze further mileage out of the purported speculative nature of the City's proofs and injuries, Defendant now requests a staging plan for Phase III in which the parties would address "actual future harm" and "caus[ation] by ExxonMobil" before addressing the rest of the elements of the City's claims and damages.  Defendant's staging proposal should be rejected outright by this Court as unnecessary, illogical, prejudicial to the City and confusing to the jurors.

Furthermore, this Court should reject Defendant's argument that the Court should hold the City to a clear and convincing burden of proof standard in this case.  Indeed, the appropriate burden of proof for this trial, as in all instances involving environmental contamination that assert

1

defective product claims, property tort claims, negligence claims and claims based on statutory violations is preponderance of the evidence. The City has been injured by ExxonMobil and will show actual present injury at trial. The City will show that ExxonMobil's unlawful and tortious acts caused its injuries. And, as discussed below, the City will prevail on the merits of each of its claims.

## I.  ARGUMENT

### A.  Additional Staging of the Case is Inappropriate

This Court should deny ExxonMobil's staging request because no such staging is necessary. This Court should allow the City to prove the merits of its prima facie claims, then damages and punitive damages, as the Court previously decided. *See* Transcript of Hearing dated June 2, 2009 at 87-89. Separate staging of actual injury and causation before the other elements of the City's claims would be prejudicial to the city and is illogical and unnecessary because causation and injury will be addressed as necessary elements of each of plaintiffs' claims. Addressing causation and actual injury out of context will only confuse the jury.

### B.  The Proper Burden of Proof in this Case is Preponderance of the Evidence

The appropriate burden of proof for the City in this case is preponderance of the evidence. As this Court noted repeatedly, preponderance of the evidence is the appropriate standard of proof in civil tort cases involving environmental contamination that assert defective product claims, property tort claims, negligence claims and claims based on statutory violations. Opinion and Order in this Action, Scheindlin, S. (June 9, 2009) at 18-19 ("Rather, the City must prove, by a preponderance of the evidence, that MTBE of the particular defendant was actually in the commingled product that caused the contamination."); *In re MTBE*, 591 F.Supp.2d 259, 289 (S.D.N.Y. 2008) ("Defendants' argument ignores the fact that the burden of proof in civil cases is only a preponderance of the evidence.); July 6, 2009 Opinion and Order in this Action at pp. 26-

27; *see also Glew v. Cigna Group Ins.*, 590 F.Supp.2d 395 (E.D.N.Y. 2008) ("While there has

been some dispute as to the burden of proof, in this Court's view, the proper standard is the same

as other civil cases in the federal court, namely, by a preponderance of the evidence."); *Seneca*

*Meadows, Inc. v. ECI Liquidating, Inc.,* 427 F.Supp.2d 279 (W.D.N.Y. 2006) (preponderance of

the evidence is plaintiff's burden of proof in TCE contamination case involving CERCLA); 16

Lee S. Kreindler, Blanca I. Rodriguez, David Beekman & David C. Cook, *New York Law of*

*Torts*, § 20.2 (as a general rule, plaintiff in a tort case (including product liability) has the burden

of proving each element of the tort by preponderance of the evidence; plaintiff in a tort case must

also establish damages by a preponderance of the evidence—this includes punitive damages, as

New York does not require a higher burden of proof on punitive damages).

  The "clear and convincing evidence" standard is inappropriate for this case, in which the

City alleges tort claims and claims related to violations of federal and state statutes.  The clear

and convincing evidence standard is also inappropriate because the City alleges present injuries.

The injuries are ongoing, and the City will continue to be damaged in the future.  *See* Opposition

to Defendant's Pre-trial Memorandum for Phase I filed in 00-1898 Dkt# 2550 (June 15, 2009) at

1-10.  Among other things, there already is MTBE contamination in the groundwater and in

many of the wells, and well 6D is injured as a matter of law.  *See id.*  The City seeks to build

Station 6 to address all of those injuries.  The treatment plant will be built in the future, and the

treatment plant is a future remedy for the City's injuries, but the injuries themselves exist now, in

the present, and will continue to exist into the future unless and until the contamination is

properly treated.  Defendant's suggestion that the fact that Station 6 will address future injuries

as well as present injuries renders the City's proof indeterminate or somehow subjects it to a

higher standard of proof is legally insupportable.  *See* 16 Lee S. Kreindler, Blanca I. Rodriguez,

David Beekman & David C. Cook, *New York Law of Torts*, § 20.2 (as a general rule, plaintiff in a tort case (including product liability) has the burden of proving each element of the tort by preponderance of the evidence; plaintiff in a tort case must also establish damages by a preponderance of the evidence—this includes punitive damages, as New York does not require a higher burden of proof on punitive damages).

### C. The City Will Prove Actual Injury

As the City has repeatedly indicated in other briefing, it will have no trouble proving actual injury in its various claims against Defendant. *See* Plaintiff's Opposition to Defendant's Motion in Limine re: Actual Injury filed in 00-1898 Dkt # 2473 (May 26, 2009) ("Injury MIL Opp."). As owner of the wells 6, 6A, 6B, 6D, 33, 5, 22, 26, 39, 45, the City has substantial possessory property rights to water drawn from them. *See, e.g., In re MTBE*, 457 F.Supp.2d 455, 462 (S.D.N.Y. 2006) ("usufructuary interests are possessory property rights"). The City also has a statutory right and obligation to preserve the purity of water from which any part of the City's water supply is drawn. *See* Plaintiff's Opposition to Defendant's Motion in Limine to Exclude Evidence and Argument Regarding Plaintiff's Past and Future Investigation and Treatment Costs Until It Proves Actual Injury, filed in 00-1898, Dkt. # 2473 (May 26, 2009), at 7. In addition, state regulations require the City to monitor and treat contamination even in instances where contamination is present below the MCL where there are any deleterious changes in raw water quality." *See id*. at 8. Similarly, because it provides drinking water to the public, the City has an interest in providing potable water—e.g., water that does not have offensive taste and odor or contain VOCs such as MTBE. *See id.* at 8. As the Court has held, the level at which MTBE affects the aesthetic acceptability of drinking water requires a "fact-specific" inquiry. *In re MTBE*, 593 F.Supp.2d 549, 551-53 (S.D.N.Y. 2008). Conduct that interferes with the City's statutory

rights and obligations rights injures the City and constitutes actionable harm.  Furthermore, the City's trespass and nuisance claims do not require actual injury to find Defendant liable.   The Second Circuit's decision in *Olin Corporation v. Certain Underwriters at Lloyd's London*, 468 F.3d 120, 130 (2d Cir. 2006) shows that property damage includes "continuing migration of chemicals in groundwater."  *Id.* at 130.  Finally, experts on both sides have recognized that the presence of MTBE in the wells at Station 6 substantially increases the cost of treating the water before the City delivers it to its residents.  *See* MIL Opposition Re: Actual Injury at 5.

Injury at levels below the MCL is addressed in detail in the City's Opposition to Defendants' Motion *In Limine* to Preclude Evidence or Argument Concerning Any Policy or Requirement to Treat MTBE Contamination to Any Level Other than the New York MCL and in the City's Opposition to Defendants' Motion *In Limine* to Exclude Evidence of Future Injury or Damage to Wells 5, 22, 26, 39, and 45.  Briefly, this Court has expressly declined to equate injury with the MCL, *In re MTBE,* 458 F.Supp.2d 149, 158 (S.D.N.Y. 2006) ("the MCL does not define *whether* an injury has occurred"), and has held that the extent and nature of the City's injury is a fact-specific determination to be made at trial, not in a motion *in limine*, *see In re MTBE,* 593 F.Supp.2d 549, 552 (S.D.N.Y. 2008) ("the issue of when the water suppliers are harmed by MTBE contamination is fact-specific in a variety of ways.").  For the reasons stated above, both the facts and the law support a finding that the City was harmed at all of its trial wells, even those that have not yet had detections above the MCL.

Defendant already has contaminated the water and ground in and around Station 6 with MTBE.  The City already has run certain wells in Station 6 for pilot testing and found them contaminated with MTBE.  Well 6D is injured as a matter of law.  The City already has been injured in its ability to provide clean water to its population and to have a backup system, akin to

a hospital generator, that would provide sources of clean drinking water in time of drought or outage in the system.  And, finally, the City's trespass and nuisance claims do not even require proof of actual injury.  *See* Injury MIL Opp. at 7-8.

### D.  The City Will Be Able to Prove Causation

As already indicated, the City will prove causation by using both the commingled product theory and traditional causation.  The City will show that gasoline containing MTBE that caused injury is a commingled product of which ExxonMobil's product comprised a substantial portion.  *In re MTBE*, 591 F.Supp.2d 259, 266, 276 (S.D.N.Y. 2008); *In re MTBE*, 447 F.Supp.2d 289, 301 (S.D.N.Y 2006).  The City will show that the MTBE contained in that commingled product has contaminated its wells and that by introducing Gasoline containing MTBE into a commingled product distribution system, ExxonMobil caused such contamination.  *See id.*  The City's experts will address *both* causation via the commingled product of which ExxonMobil's product was a part, and direct, traditional causation via physical spills from Exxon and Mobil branded service stations.  Under the commingled product theory, the City will prove – by a reasonable preponderance of the evidence – that ExxonMobil's product was more likely than not present in the commingled product that led to the contamination of the City's wells.  In other words, the City will prove that ExxonMobil was one of the "many refiners and manufacturers" whose product was present in the commingled product.  *In re MTBE*, 591 F.Supp.2d 259, 275 (S.D.N.Y. 2008).

### E.  ExxonMobil Is Liable for Trespass

To establish a claim for trespass under New York law, a plaintiff need only show that it has a real property right and that the defendant intentionally infringed that right.  *See Scribner v. Summers*, 84 F.3d 554, 557 (2d Cir. 1996) ("Under New York law, trespass is the intentional invasion of another's property"); N.Y. Pattern Jury Instr.--Civil 3:8 (same).  Exxon has constructed

a version of the trespass claim that requires the City to prove both a *future* physical invasion and that ExxonMobil, "in the future, will *intend* that this physical invasion occur."  *See* ExxonMobil Phase 3 Trial Memorandum at 10, emphasis in original.  This contortion of the definition of a trespass so as to require the City to prove ExxonMobil's *future* state of mind is untenable.   The City will show that ExxonMobil intentionally created and distributed gasoline containing MTBE at the same time that it was aware of the vulnerabilities in the gasoline distribution and storage system and that such conduct led to contamination of the water supplying the Focus Wells.

Knowledge of the specific existence of Station 6 on ExxonMobil's part, or an intent to physically invade Station 6 in particular, is not required.  As this Court has stated, "[t]o prevail on a claim for trespass in New York, the trespasser need not intend or expect the damaging consequence of his intrusion, [but] he must intend the act which amounts to or produces the unlawful invasion, and the intrusion must at least be the immediate or inevitable consequence of what he willfully does, or which he does so negligently as to amount to willfulness. To constitute such a trespass, the act done must be such as 'will to a substantial certainty result in the entry of foreign matter.'" *In re MTBE*, 379 F.Supp.2d at 426.  All the City must show, therefore, is that ExxonMobil intended the *act* that eventually produced the invasion, not the invasion itself, while substantially certain that the physical invasion would occur.

The physical invasion that the City must show is not an "invasion of a Station 6 facility" as ExxonMobil claims (*see* ExxonMobil's Phase 3 Trial Memorandum at 10) but the water from which the City's wells draw.  As owner of the Focus Wells, the City has substantial present possessory property rights to the water they draw.  *See, e.g.*, *In re MTBE*, 457 F.Supp.2d 455, 462 (S.D.N.Y. 2006) ("Usufructuary interests are possessory property rights"); *Hathorn v. Natural Carbonic Gas Co.*, 194 N.Y. 326, 338 (1909) ("subterranean waters have always been treated as a

mineral in the decisions relating to their use and enjoyment."); *Hathorn v. Natural Carbonic Gas Co.*, 112 N.Y.S. 374, 378 (App. Div. 1908) (percolating water found in land belongs to the owner of the land); *Keeler v. Tubbs*, 147 N.Y.S.2d 166, 170 (Sup. Ct. 1955) ("the right of a landowner to sink wells, and gather and use percolating waters as he will is a property right which cannot be taken away from him").  This is the property right that the City will show ExxonMobil has invaded to prove its trespass claim.

### F.  ExxonMobil is Liable for Public Nuisance

All the City must show in order to recover on its public nuisance claim is that ExxonMobil's actions have led to "conduct or omissions which offend, interfere with or cause damage to the public in the exercise of rights common to all in a manner such as to offend public morals ... *or* endanger or injure the property, health, safety or comfort of a considerable number of persons." *Copart Indus., Inc. v. Consol. Edison Co*., 41 N.Y.2d 564, 568 (1977) (emphasis added); *see also In re MTBE*, 175 F.Supp.2d 593, 627 n. 51 (S.D.N.Y. 2001) (same).   New York law expressly recognizes that "the seepage of chemical wastes into a public water supply constitutes a public nuisance."  *State v. Schenectady Chemicals, Inc*., 479 N.Y.S.2d 1010, 1013 (App. Div. 1984). Likewise, the "release or threat of release of hazardous waste into the environment unreasonably infringes upon a public right and thus is a public nuisance as a matter of New York law."  *State of New York v. Shore Realty Corp*., 759 F.2d 1032, 1051 (2d Cir.1985); *In re MTBE*, 175 F.Supp.2d at 627 n. 51.

It is the threat, not the remedy, that must be "imminent" and "substantial." *See Knaust v. City of Kingston,* 193 F.Supp.2d 536, 543 (N.D.N.Y. 2002).  In the cases cited by ExxonMobil, a plaintiff's public nuisance claim failed because the *harm* was not imminent, not because the plaintiff had not yet remedied the harm.  *See id.*; *Plainview Water Dist. v. ExxonMobil Corp. et al.*, No.

9975-01, 2008 NY Slip Op. 50152U at 25 (N.Y. Sup. Ct. Jan. 9, 2008).  ExxonMobil's argument

that the construction of *Station 6* is not imminent – even if it were true – is irrelevant to the City's

public nuisance claim because the claim requires imminent threatened harm, not imminent

implementation of a remedy.

As explained below, because the City is a municipality authorized by statute and common

law to bring claims for public nuisance, *see* N.Y.C. Admin. Code § 24-302 (statute), *New York*

*Trap Rock Corporation v. Town of Clarkstown*, 299 N.Y. 77, 83 (1949) (common law); *N.Y.*

*State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1361 (2d Cir. 1989) (same), it is excused from

proving a number of facts that a private party in the same position would have to prove.  For

example, the City need not prove any injury or damages to itself to obtain an injunction to abate a

public nuisance, Rest. 2d Torts § 821C (2)(b).  Instead, it need only show the threat of harm to its

citizens, *N.Y. State Nat. Org. for Women*, 886 F.2d at 1361; *Shore Realty Corp.*, 759 F.2d at 1051,

or in the alternative, that ExxonMobil violated applicable statutes, *Incorporated Village of Freeport*

*v. Jefferson Indoor Marina, Inc.*, 556 N.Y.S.2d 150, 152 (App. Div. 1990); *City of New York v.*

*Bilynn Realty Corp.*, 499 N.Y.S.2d 1011, 1013 (App. Div. 1986); *Shore Realty Corp.*, 759 F.2d at

1051, to prove a public nuisance and obtain equitable relief.

Contrary to ExxonMobil's argument, the City does not need to show "actual harm to

humans" (see ExxonMobil's Phase 3 Trial Memorandum at 9) to prove its public nuisance claim

and obtain injunctive relief.  *See also N.Y. State Nat. Org. for Women*, 886 F.2d at 1361; *N.Y. v.*

*Shore Realty Corp.* 759 F.2d 1032, 1051 (2d Cir. 1985) (collecting cases); *New York ex rel. Spitzer*

*v. Cain*, 418 F.Supp.2d 457, 483 (S.D.N.Y. 2006) (same); *see also People ex rel. Bennett v. Laman,*

277 N.Y. 368, 380 (1938) (injunction appropriate where health of the people is menaced by the

deprivation of "food commodity, or its service in a contaminated state").  Because the City will

9

show that ExxonMobil's conduct violated several statutes, the City is not required to show harm or

threatened harm to the public.  Specifically, in a public nuisance action brought by a municipality,

upon showing that a defendant has violated a statute, the plaintiff need not show "injury to the

public" to obtain injunctive relief.  *See Incorporated Village of Freeport*, 556 N.Y.S.2d at 152 ("no

special injury or damage to the public need be alleged, and the commission of the prohibited act is

sufficient to warrant granting the injunction"); *City of New York*, 499 N.Y.S.2d at 1013 (same); *City

of New York v. Casbar, Nicobel LLC*, 2009 WL 1026593, *2 (N.Y. Sup. April 15, 2009) (holding

that where conduct "violates a statutory scheme designed to protect the public health, that the

conduct constitutes a violation and may be considered a public nuisance subject to the

Administrative Code" "relief may be granted without a demonstration of special damages or injury

to the public. The proof of the violation alone is sufficient grounds for the issuance of injunctive

relief"); *Shore Realty Corp.*, 759 F.2d at 1051 (violations of N.Y. Envtl. Conserv. Law §§ 27-

0913(1), 27-0914(1) and 27-0914(2) constituted public nuisance per se).

### G.  ExxonMobil is Liable for Negligence

A negligence claim has four elements: (1) duty, (2) breach, (3) causation and (4)

damages.  *In re MTBE*, 517 F.Supp.2d 662, 668 (S.D.N.Y. 2007).  Negligence arises from breach

of a duty.  *Strauss v. Belle Realty*, 65 N.Y.2d 399, 402 (1985).  Whether ExxonMobil owes a

duty of care to the City is an issue of law.  *See Gerdowsky v. Crain's New York Business*, 593

N.Y.S.2d 514, 515-16 (App. Div. 1993).  A manufacturer, distributor and retailer of a product

owes a duty to use reasonable care in the manufacture, distribution and retail of the product so

that it will be reasonably safe for its intended or foreseeable uses. *See* N.Y. Pattern Jury Instr.--

Civil 2:125.

Negligence is lack of ordinary care. *See id.*  It is a failure to use that degree of care that a

reasonably prudent person would have used under the same circumstances. *See id.*  Negligence may arise from doing an act that a reasonably prudent person would not have done under the same circumstances, or, on the other hand, from failing to do an act that a reasonably prudent person would have done under the same circumstances.  *See id.*  Reasonable care means that degree of care that a reasonably prudent manufacturer, distributor or retailer of such a product would use in the making, storing and dispensing of the product and its materials in order to produce a reasonably safe product. *See id.*

Here, the City will show that the defendant ExxonMobil negligently manufactured gasoline containing MTBE and that ExxonMobil breached its duty of care to ensure that the gasoline containing MTBE was properly distributed, stored, and dispensed by failing to ensure that the gasoline containing MTBE which they manufactured, distributed, and retailed was properly distributed, stored, and dispensed was properly stored.  It is important to note that merely because ExxonMobil complied with minimum federal standards does not mean that ExxonMobil is not liable to the City for negligence.  *See Ferebee v. Chevron Chemical Co.*, 736 F.2d 1529, 1542 (DC Cir. 1984); *Burke v. Dow Chemical Co.*, 797 F. Supp. 1128, 1142 (E.D.N.Y. 1992) ("As a general rule, compliance with federal standards does not, in and of itself, immunize a manufacturer or retailer from state law tort liability").

Negligence requires both a reasonably foreseeable danger of injury to another and conduct that is unreasonable in proportion to that danger. N.Y. Pattern Jury Instr.--Civil 2:12.  A person is only responsible for the results of his or her conduct if the risk of injury is reasonably foreseeable.  *Id.*  The exact occurrence or exact injury does not have to be foreseeable; but injury as a result of negligent conduct must be not merely possible, but be probable.  *Id.*  Here, ExxonMobil knew that storage tanks containing MTBE has a propensity to leak and knew of the

danger MTBE posed to groundwater and drinking water supplies, thus, the damage suffered by the City was foreseeable.

The City will prove causation by using both the commingled product theory and traditional causation. The City will show that gasoline containing MTBE that caused injury is a commingled product of which ExxonMobil's product comprised a substantial portion. *In re MTBE*, 591 F.Supp.2d 259, 266, 276 (S.D.N.Y. 2008); *In re MTBE*, 447 F.Supp.2d 289, 301 (S.D.N.Y. 2006). The City will show that MTBE has contaminated its wells and that by introducing Gasoline containing MTBE into a commingled product distribution system, ExxonMobil caused such contamination. *See Id.* Second, the City will show that ExxonMobil directly owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater contaminating the City's wells.

The City will show that ExxonMobil committed gross negligence and willful misconduct. Gross negligence means a failure to use even slight care, or conduct that is so careless as to show complete disregard for the rights of others. *See* NYPJI 2:10A.

### H.  ExxonMobil is Liable for Strict Liability Design Defect

Under New York Law, a manufacturer has a duty to design a product so that it avoids an unreasonable risk of harm to anyone who is likely to be exposed to danger when the product is being used as intended. *Lugo v. LJN Toys, Ltd.*, 75 N.Y.2d 850, 852 (1990); *Micallef v. Miehle Co.*, 39 N.Y.2d 376, 384-85 (1976). Additionally a manufacturer has the duty to design its product so that it avoids an unreasonable risk of harm when it is being used for an unintended but foreseeable use. *Micallef*, 39 N.Y.2d at 384-85. Thus, a manufacturer that sells a product in a defective condition is liable for injury that results from use of the product when the product is

used for its intended or reasonably foreseeable purpose.  N.Y. Pattern Jury Instr.--Civil 2:120.

A product is defective if it is not reasonably safe—that is, if the product is so likely to be harmful to persons or property that a reasonable person who had actual knowledge of its potential for producing injury would conclude that it should not have been marketed in that condition.  *See In re MTBE*, 2008 WL 1971538, * 2 (May 7, 2008) (plaintiff must show that the product, as designed, was not reasonably safe because there was a substantial likelihood of harm and it was feasible to design the product in a safer manner); N.Y. Pattern Jury Instr.--Civil 2:120.

A product is defectively designed if a reasonable person who knew or should have known of the product's potential for causing injury and of the feasible alternative designs would have concluded that the product should not have been marketed in that condition. *See id; Voss v. Black & Decker Mfg., 59 N.Y.2d 102, 108-109 (1983); Cover v. Cohen,* 61 N.Y.2d 261, 266-67 (1984). It is not necessary for the City to show that the ExxonMobil knew of the product's potential for causing injury to show that it was defectively designed.  It is sufficient that a reasonable person who did in fact know of the product's potential for causing injury would have concluded that the product should not have been marketed.  *See In re MTBE*, 2008 WL 1971538 at * 2.  Whether the product should have been marketed depends upon a balancing of the risks involved in using the product against the product's usefulness and its costs, and the risks, usefulness and costs of the alternative designs as compared to the product.  *See Voss*, 59 N.Y.2d at 108-109.

Accordingly, the jury may consider the following types of factors in determining whether gasoline containing MTBE is reasonably safe:  the need to remediate MTBE from groundwater and drinking water supplies, harm to the environment, the ease with which MTBE seeps into ground water and the amount of time MTBE persists in ground water, the turpentine taste and odor of water containing MTBE, the fact that studies have shown that exposure to MTBE is

likely harmful to human health.  *See In re MTBE,* 568 F.Supp.2d 376, 379 (S.D.N.Y. 2008) (discussing evidence of carcinogenicity); *In re MTBE*, 2008 WL 2607852, at *4 n. 38 (S.D.N.Y. July 1, 2008) (*citing In re MTBE*, 241 F.R.D. 435, 437 n. 2 (S.D.N.Y. 2007)); *In re MTBE*, 2007 WL 1601491 (S.D.N.Y.  June 4, 2007) (discussing properties of MTBE); *see also* Restatement (Second) of Torts § 402A, Comment i (discussing considerations in dangerousness inquiry).

Nothing in the standard for a design defect claim, therefore, requires the City to "convince the jury that gasoline reformulated with MTBE … did not work for its intended purpose."  *See* ExxonMobil's Phase 3 Trial Memorandum at 11.  Instead, the City will prove that the gasoline containing MTBE manufactured by defendant ExxonMobil was defective because among other things MTBE is a toxic compound that easily contaminates groundwater and drinking water and ExxonMobil knew of the dangers that MTBE posed to groundwater and that underground gasoline storage tanks have a propensity to leak before it manufactured gasoline containing MTBE and feasible, much safer alternatives to MTBE, like ethanol, were readily available.

Thus, the City will prove that at the time the gasoline containing MTBE was marketed, the gasoline containing MTBE was defective because it contained a design defect, and that this defect caused the City's injury. The City will prove causation on this claim using the commingled product theory.  *See In re MTBE,* 591 F.Supp.2d at 266*; In re MTBE,* 447 F.Supp.2d at 301.  The City will also show that ExxonMobil directly owned or controlled underground storage systems that lacked integrity and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater contaminating the City's Wells.

## I.   ExxonMobil is Liable for Strict Liability for Failure to Warn

A manufacturer, wholesaler, distributor, and retailer that sells a product in a defective

condition is liable for injury that results from use of the product *when* the product is used for its intended or reasonably foreseeable purpose.  *See* NY Pattern Jury Instruction 2:120; *Johnson v. Johnson Chemical Co.*  588 N.Y.S.2d 607, 610 (App. Div. 1992); *Buley v. Rexnord Process Machinery Div.*, 482 N.Y.S.2d 104, 105 (App. Div. 1984).  A product may be defective as a result of inadequate warnings or instructions.  *Id.*   The manufacturer of a product which is reasonably certain to hurt people or property if used in a way that the manufacturer should reasonably foresee is under a duty to use reasonable care to give adequate warnings of any dangers known to it or which in the use of reasonable care it should have known. NY Pattern Jury Instruction 2:120.

Here, the City will show that the gasoline containing MTBE manufactured by defendant ExxonMobil was defective because ExxonMobil failed to warn distributors, customers, station owners, its employees, gasoline truck drivers, the City, water providers, the public, the State of New York and the federal government about MTBE's hazardous and unusual properties.  For example, the City will prove that ExxonMobil should have warned distributors, customers, station owners, its employees, gasoline truck drivers, the City, water providers, the public, New York State and the federal government that gasoline containing MTBE needed to be handled differently than other gasoline because of its high solubility which makes it more likely to contaminating groundwater and drinking water; that they needed to install monitoring wells and regularly test for MTBE contamination; and that once such contamination was detected, it was extremely important to remediate the site aggressively and quickly.

As discussed above in the City's discussion of the causation in its design defect claim, the City will prove causation under the commingled product theory and traditional theories of causation.   *In re MTBE*, 591 F.Supp.2d at 266; *In re MTBE*, 447 F.Supp.2d at 301.

**J.   ExxonMobil Is Liable for Private Nuisance**

A plaintiff seeking to recover damages for private nuisance must show, *first*, that the conduct of the defendant interfered with plaintiff's right to use and enjoy its land, *second*, that the interference was substantial, *third*, that defendant's conduct was intentional, and *fourth*, that defendant's conduct was unreasonable under all of the circumstances.  *See Copart Industries*, 41 N.Y.2d at 570.  To be substantial, the interference must be real and appreciable.  The test is not what disturbs or annoys the plaintiff, but whether reasonable persons living in the locality would be appreciably annoyed or disturbed by the interference. NY Pattern Jury Instructions 3:16.

The City will show that ExxonMobil has substantially and unreasonably interfered with plaintiff's use of its property or water by contaminating the groundwater feeding one or more of its wells in and around Jamaica in Queens County New York with MTBE.  The City will also show that MTBE has contaminated its wells and that by introducing gasoline containing MTBE into a commingled product distribution system, ExxonMobil is a substantial cause of such contamination.  The City will also show that ExxonMobil directly owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater and for that reason ExxonMobil directly caused the contamination in its wells.

The City will also prove that ExxonMobil acted intentionally because it intentionally created MTBE, intentionally added it to gasoline, and intentionally transported MTBE-containing gasoline through a distribution system it knew was susceptible to leaks and spills; that ExxonMobil acted knowing that MTBE had a higher propensity to contaminate groundwater than other gasoline additives, and that unintentional releases of gasoline frequently occurred. *See* Section II.A.3, supra; *In re MTBE*, 379 F.Supp.2d at 426-27.

### K.  ExxonMobil Is Liable Under the New York State Navigation Law

ExxonMobil first suggests that it cannot be held liable for a Navigation Law violation because it is not a "discharger" under the Navigation Law's definition.  But ExxonMobil selectively defines "discharge" as an "affirmative act", (*see* EOM Phase 3 Trial Memo at 13, fn. 4) whereas the definition of "discharge" under the Navigation Law *actually* includes "any *intentional or unintentional action or omission* resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of petroleum into the waters of the state or onto lands from which it might flow or drain into said waters..."  N.Y. Nav. Law § 172(8), emphasis added.

Even if "mere delivery" were not enough to give rise to discharger status under the Navigation Law, as ExxonMobil claims (*see* EOM Phase 3 Trial Memo at 13), courts addressing this issue have made clear that it is "mere delivery … *absent other factors* – [that] is not sufficient to render a gasoline supplier a discharger."  *State v. Cronin*, 717 N.Y.S.2d 828 (2000), cited in 379 F.Supp.2d at 428, n. 440.  So long as the City demonstrates "some evidence that the supplier either caused or contributed to the discharge or that it possessed the ability to anticipate and/or prevent the discharge," (*id.*) and the City will so demonstrate, ExxonMobil will be found liable for the discharge.  *See also In re MTBE*, 591 F.Supp.2d at 282 n. 111 (*quoting State of New York v. Montayne*, 604 N.Y.S.2d 978, 978 (App. Div. 1993) (spillers and dischargers that may be liable under the Navigation Law for contaminating groundwater include manufacturers and refiners who "delivered product directly to a gas station or other facility that released gasoline and [were] in a position to prevent the discharge or effect a cleanup.")

Exxon also suggests that the City may have difficulty establishing causation under the Navigation Law.  (*See* EOM Phase 3 Trial Memo at 13.)  As discussed above in section D,

*supra*, the City will show that ExxonMobil's actions causing a discharge of petroleum (including MTBE and MTBE-containing gasoline) caused contamination of groundwater, a type of damage covered by the Navigation Law.  *In re MTBE*, 591 F.Supp.2d at 282.

### L.  ExxonMobil Is Liable Under the Toxic Substances Control Act

The Toxic Substances Control Act ("TSCA") allows equitable relief as well as attorneys' fees and costs.  *See* 15 U.S.C. § 2619(c)(2)  ("The court … may award costs of suit and reasonable fees for attorneys and expert witnesses if the court determines that such an award is appropriate.").

Section 8(e) of the Toxic Substances Control Act provides that "Any person who manufactures, processes, or distributes in commerce a chemical or mixture and who obtains information which reasonably supports the conclusion that such substance or mixture presents a substantial risk of injury to health or the environment shall immediately inform the [EPA] Administrator of *such information* unless such person has actual knowledge that the Administrator has been adequately informed of *such information*." 15 U.S.C. § 2607(e), emphasis added.  The City will show that ExxonMobil failed or refused to submit reports, notices, or other information to the EPA regarding the adverse environmental or health-related impacts of the regulated substance, in this case MTBE.  *See* 15 U.S.C. § 2614(3)(B); *In re MTBE Products Liability Litigation*, 510 F.Supp.2d 299, 316 (S.D.N.Y. 2007).  Once the City proves that ExxonMobil withheld information from the EPA, the burden of persuasion will shift to ExxonMobil to show that it had *actual knowledge* that the EPA already was informed.  *In re MTBE Products Liability Litigation*, 559 F.Supp.2d 424, 434 (S.D.N.Y. 2008).

ExxonMobil, to rebut the City's proof of an 8(e) violation, must show not only that the government "ha[d] been adequately informed of such information," but that *ExxonMobil* had

"actual knowledge" that the government had been thus adequately informed.  *See* 15 U.S.C. §

2607(e).  If the government is determined to have been adequately informed, but ExxonMobil

did not know that at the time it failed to submit the reports required by TSCA, ExxonMobil will

remain liable for an 8(e) violation.


## II.  CONCLUSION

This Court should deny Defendant's staging proposal for Phase III and declare that the

proper burden of proof in this case is preponderance of the evidence.  The City has suffered

present, non-speculative actual injury caused by Defendant's violations of tort and statutory law.

The City will prove Defendant's liability and the damages caused thereby with ease at trial.


Dated:  San Francisco, California
      July 6, 2009

                                      MICHAEL A. CARDOZO
                                      Corporation Counsel of the City of New York
                                      100 Church Street
                                      New York, New York 10007
                                      (212) 788-1578

                                      */s/ LESLEY E. WILLIAMS*
                                      VICTOR M. SHER *(pro hac vice)*
                                      TODD E. ROBINS *(pro hac vice)*
                                      JOSHUA G. STEIN *(pro hac vice)*
                                      LESLEY E. WILLIAMS (LW8392)
                                      NICHOLAS G. CAMPINS *(pro hac vice*)
                                      MARNIE E. RIDDLE (*pro hac vice)*

                                      SHER LEFF LLP
                                      450 Mission Street, Suite 400
                                      San Francisco, CA 94105
                                      (415) 348-8300

                                      *Attorneys for Plaintiff City of New York*