```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/6/09
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

IN RE METHYL TERTIARY BUTYL
ETHER ("MTBE") PRODUCTS
LIABILITY LITIGATION

**OPINION AND ORDER**

00 MDL 1898 (SAS)

------------------------------------------------------- X

This Document Relates to:

------------------------------------------------------- X

CITY OF NEW YORK, *et al.*,

      Plaintiffs,

  - against -

EXXON MOBIL CORPORATION,

      Defendant.

04 Civ. 3417 (SAS)

------------------------------------------------------- X

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.  INTRODUCTION

      In 2003, the City of New York (the "City") filed a Complaint against various corporations for their use and handling of the gasoline additive methyl tertiary butyl ether ("MTBE"), alleging that MTBE contaminated – or threatened

1

to contaminate – the City's groundwater.[1] Defendant Exxon Mobil Corporation ("Exxon") now brings a motion to compel the production of budget documents and documents concerning environmental sustainability studies that the City claims are protected from disclosure under the deliberative process privilege. For the reasons that follow, the City must produce some – but not all – of the disputed documents.

## II. BACKGROUND

The City and its Department of Environmental Protection ("DEP") have engaged in substantial planning concerning environmental sustainability, addressing both budget realities and the environmental needs of the population.[2] At the upcoming trial, the jury will determine whether the City intends in good faith to build a water treatment facility in an area known as "Station 6."

The City has withheld or partially redacted seven categories of documents related to sustainability planning: 1) presentations submitted from DEP

---

[1] This Opinion assumes familiarity with facts discussed in this Court's previous opinions in this case. For a general discussion of the MTBE litigation, see *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp. 2d 348, 364-67 (S.D.N.Y. 2005).

[2] *See* 6/8/09 Declaration of Robin Levine, General Counsel, DEP ("Levine Decl."), ¶¶ 4-9, Ex. 9 to 6/9/09 Letter from Ramin Pejan, counsel for the City, to the Court ("Pl. Let."); 6/9/09 Declaration of Joseph R. Murrin, Assistant Commissioner for Budget, DEP ("Murrin Decl."), ¶¶ 4-7, Ex. 10 to Pl. Let.

to the Deputy Mayor and his office; 2) internal draft DEP responses to questions submitted by the City Council; 3) an internal DEP debriefing e-mail for then-DEP Commissioner Emily Lloyd; 4) a draft presentation from then-DEP Commissioner Lloyd to the Deputy Mayor regarding long term strategic planning; 5) an internal DEP-wide governance report; 6) draft chapters of the City's long term sustainability plan, PlaNYC; and 7) correspondence concerning budget deliberations.[3] The City claims that disclosure of the materials would hamper its internal decision-making process. In support of its assertion of privilege, the City has submitted declarations from Robin Levine – general counsel to DEP – and Joseph Murrin – an assistant commissioner of DEP.[4] The declarations do not state whether Murrin acted pursuant to guidelines for the application of the privilege issued by the Commissioner of DEP.

## III. APPLICABLE LAW

The deliberative process privilege protects from disclosure "'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are

---

[3]   *See* Levine Decl. ¶ 3; Murrin Decl. ¶ 3.

[4]   *See* Levine Decl. ¶ 1; Murrin Decl. ¶ 1.

formulated."[5] The privilege is intended "'to enhance the quality of agency decisions, by protecting open and frank discussion among those who make them within the Government.'"[6]

In order to qualify for the privilege, a document must be "predecisional" and "deliberative."[7] A document is predecisional if it was "'prepared in order to assist an agency decisionmaker in arriving at his [or her] decision.'"[8] The agency claiming privilege "must be able to demonstrate that . . . the document for which . . . privilege is claimed related to a specific decision facing the agency."[9] Moreover, the privilege does not extend to "'purely factual'

---

[5] *National Council of La Raza v. Department of Justice* ("*NCLR*"), 411 F.3d 350, 356 (2d Cir. 2005) (quoting *Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 76 (2d Cir. 2002)).

[6] *Tigue*, 312 F.3d at 76 (quoting *Department of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001)).

[7] *NCLR*, 411 F.3d at 356 (quoting *Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999)).

[8] *Id.* (quoting *Grand Cent. P'ship*, 166 F.3d at 482). Such materials include "recommendations, draft documents, proposals, suggestions, and other subjective documents [that] reflect the personal opinions of the writer rather than the policy of the agency." *Grand Cent. P'ship*, 166 F.3d at 482.

[9] *Tigue*, 312 F.3d at 80 (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 n.18 (1975)).

material"[10] or subjective discussions insofar as they were later adopted or incorporated in a final agency opinion.[11] A document is deliberative if it is "'actually . . . related to the process by which policies are formulated.'"[12] Factors used to determine whether a document is deliberative include "whether the document '(i) formed an essential link in a specified consultative process, (ii) reflects the personal opinions of the writer rather than the policy of the agency, and (iii) if released, would inaccurately reflect or prematurely disclose the views of the agency.'"[13]

The deliberative process privilege is merely a qualified privilege; thus "'when the existence of [the] privilege is established, there is a need to balance the public interest in nondisclosure against the need of the particular litigant for

---

[10] *Grand Cent. P'ship*, 166 F.3d at 482 (quoting *Hopkins v. U.S. Dep't of Housing & Urban Dev.*, 929 F.2d 81, 85 (2d Cir. 1991)).

[11] *See NCLR*, 411 F.3d at 356 (citing *Sears*, 421 U.S. at 161).

[12] *Id.* (quoting *Grand Cent. P'ship*, 166 F.3d at 482).

[13] *Grand Cent. P'ship*, 166 F.3d at 482 (quoting *Providence J. Co. v. U.S. Dep't of the Army*, 981 F.2d 552, 559 (1st Cir. 1992)). *Accord Tigue*, 312 F.3d at 80 (requiring that a privileged document "'bear on the formulation or exercise of policy-oriented judgment'" (quoting *Grand Cent. P'ship*, 166 F.3d at 482)).

access to the privileged information.'"[14] Factors favoring disclosure include

> (1) the relevance of the requested materials to the [requesting party's] case, (2) the importance of the materials to the [requesting party's] case, including the availability of the information from alternative sources, (3) the strength of the [requesting party's] case . . . , and (4) the importance [of disclosure] to the public interest.[15]

Factors against disclosure include (1) threats to public safety, (2) the invasion of government officials' privacy, (3) the weakening of government programs, and (4) the chilling of internal candor.[16] "[T]he burden of persuasion rests on the party seeking to prevent disclosure."[17]

"The claim of deliberative-process privilege must be lodged by the head of the agency after personal consideration of the allegedly privileged material" or by a "'subordinate with high authority'" pursuant to "guidelines on

---

[14] *MacNamara v. City of New York*, 249 F.R.D. 70, 79 (S.D.N.Y. 2008) (quoting *United States v. United States Currency in the Sum of Twenty One Thousand Nine Hundred Dollars*, No. 98 Civ. 6168, 1999 WL 993721, at *2 (E.D.N.Y. Sept. 21, 1999)).

[15] *Id.* at 80 (citing *King v. Conde*, 121 F.R.D. 180, 191-93 (E.D.N.Y. 1988) (Weinstein, J.)).

[16] *Cf. id.* (describing similar factors specifically applied to law enforcement (citing *King*, 121 F.R.D. at 191-93)).

[17] *King*, 121 F.R.D. at 191.

the use of the privilege" issued by the head of the agency.[18] "The assertion of the privilege by an attorney is therefore improper."[19]

## IV. DISCUSSION

### A. Assertion of Privilege

Exxon correctly states that the City has failed to assert the deliberative process privilege in the proper manner.[20] As noted above, the declarations submitted by the City in support of the assertion of privilege were signed by Robin Levine – general counsel of DEP – and Joseph Murrin – an assistant commissioner of DEP. It is never appropriate for the general counsel of a government agency to serve as the reviewing authority prior to the assertion of the deliberative process privilege. An attorney is an advocate for the agency and has every incentive to withhold documents from an adversary. The requirement that the head of an agency be the deciding authority rests on the notion that the decisionmaker is in the best position to know what documents were prepared to

---

[18]   *Resolution Trust Corp. v. Diamond*, 137 F.R.D. 634, 641 (S.D.N.Y. 1991) (quoting *Mobil Oil Corp. v. Department of Energy*, 102 F.R.D. 1, 5 (N.D.N.Y. 1983)). *Accord Morrissey v. City of New York*, 171 F.R.D. 85, 89 n.3 (S.D.N.Y. 1997) (collecting cases).

[19]   *Id.* (citing, *inter alia*, *Mobil Oil*, 102 F.R.D. at 6).

[20]   *See* 6/15/09 Letter from James A. Pardo, counsel for Exxon, to the Court, at 3-4.

assist a decision, what documents express deliberative opinions, and what documents must be protected in order to maintain internal candor. An attorney outside of the decisionmaking process – or at least below its apex – lacks the necessary perspective to assess the applicability of the privilege to individual documents. Therefore, the City has not properly asserted the deliberative process privilege over documents 6-7, 12-13, 19, 27, 33-34, 44, 55-56, 76, 79, 94, 112, 118, and 120 from the City's May 11, 2009 privilege log.[21]

Although a high-level agency official is more likely to be involved in the decisionmaking process, Murrin is still not empowered to assert the deliberative process privilege. That power may be delegated from the head of a government agency only through the promulgation of official guidelines. This is not a mere formality. The assertion of the deliberative process privilege reflects a deviation from the norm of full transparency in litigation; thus it should only be exercised by the head of an agency or through tightly controlled delegation. The burden imposed by these requirements is not without salutary effects, as transaction costs deter reflexive assertion of the privilege and unnecessary government secrecy. Therefore, the City has not properly asserted the deliberative process privilege over documents 1-5, 8-11, 14-18, 20-26, 28-32, 35-43, 45-54,

---

[21] *See* Levine Decl. ¶ 3.

57-58, 60-75, 77-78, 81-83, 85-89, 91-93, 95-101, 104-111, 113-117, 119, 121-23 from the City's May 11, 2009 privilege log and document DJSP2-E00300014 from the City's May 4, 2009 privilege log.[22]

Nevertheless, given the potential importance of the interests at stake, this Court will not deem the privilege entirely waived. Rather, within three business days from the date of this Opinion and Order, the City may assert the deliberative process privilege properly over the documents that remain at issue. Although this is undeniably a short period of time, trial is imminent, and Exxon must have the opportunity to review relevant, unprivileged documents before opening statements.

### B. Privilege Applied

Based on the assumption that the City will assert the privilege properly over a nearly identical set of documents within the deadline imposed above, I will now address the applicability of the privilege to individual documents, in order to hasten the release of unprivileged documents to Exxon. For ease of analysis, I will group the contested documents by category.

#### 1. Presentations Submitted from DEP to the Deputy Mayor

The following documents must be produced in unredacted form:

---

[22] *See* Murin Decl. ¶ 2.

- Documents 12-13, 33-34, and 55-56. These documents – a set of nearly identical PowerPoint presentations – contain broad discussion of the "challenges" facing DEP and do not address any particular policy decision. Although the City argues that general briefing materials "facilitate formulating policy and the decision-making process,"[23] this rationale is not sufficiently specific to support invocation of the deliberative process privilege.[24] Moreover, numerous redactions concern purely factual matter – such as existing budgets, federal fines and sanctions, and construction market conditions – that is categorically excluded from the scope of the privilege. The sole exception is pages NYC-DS-033446 (Doc. 12), NYC-DS-033493 (Doc. 13), NYC-DS-034301 (Doc. 33), NYC-DS-034348 (Doc. 34), and NYC-DS-068083 (Doc. 56). These nearly identical slides include predecisional and deliberative information that is irrelevant to Exxon's case. Thus the City need not disclose this redacted material.

- Document 120. The sole redaction from this PowerPoint presentation

---

[23] Levine Decl. ¶ 4.

[24] *See Tigue*, 312 F.3d at 80 (noting that predecisional information cannot be "'merely part of a routine and ongoing process of agency self-evaluation'" (quoting *Maricopa Audubon Society v. United States Forest Serv.*, 108 F.3d 1089, 1094 (9th Cir. 1997)).

concerns the goals of an existing plan. It is neither predecisional nor deliberative. Thus it is not subject to the deliberative process privilege.

The following document may remain redacted:

- Document 19. This presentation concerns DEP budget deliberations and is – in most cases – unrelated to dependability. The exception is slide two, which concerns past budget performance and must be produced.

### 2. Internal Draft DEP Responses to City Counsel

The following documents may remain redacted:

- Documents 6, 27, 76, 118. This draft testimony contains notes reflecting internal deliberation related to agency policies established in final testimony to the City Counsel. Thus it meets the requirements of the deliberative process privilege. However, redactions on page NYC-DS-067917 (Doc. 6) contain factual statements regarding existing budgets that are relevant to Exxon's case. Therefore this page must be produced in unredacted form.

### 3. Internal DEP Debriefing E-mail

The following documents may remain redacted:

- Document 7. This is an e-mail between DEP employees discussing a number of developing policies. The redacted material is deliberative and predecisional and the need for internal candor outweighs the unlikely

11

relevance of this material to Exxon's case.

### 4. Draft Presentation Regarding Strategic Planning

The following documents must be produced in unredacted form:

- Document 79. This is a PowerPoint presentation describing broad agency goals and tasks that does not address individual policy determinations. Thus it is not predecisional and is not shielded by the deliberative process privilege. However, the e-mail discussion preceding this presentation reflects internal discussions of particular policies and is not relevant to Exxon's case. Therefore, pages NYC-DS-068194 and NYC-DS-068195 may remain redacted.

### 5. Internal DEP Governance Report

The following document may remain redacted:

- Document 44. This is an internal governance report containing only a single redaction. That redaction expresses the views of DEP staff concerning a draft budget proposal. Thus it is both predecisional and deliberative concerning budget priorities.

### 6. Draft Chapters of PlaNYC

The following documents must be produced in unredacted form:

- Document 94. This is a draft of the PlaNYC long-term sustainability report.

The redacted portions of this document fall into two categories. *First*, the City has redacted nearly the entire section of the report concerning water quality. Although of questionable relevance to Exxon's case, this redaction cannot be justified by the deliberative process privilege as it does not contain predecisional or deliberative discussion. Some of the redacted material is actually included in the final report, demonstrating the overbreadth of the City's redactions. To the extent that individual edits to the document are noted in tracked changes, these reflect decisions concerning incidental language, not policy. *Second*, the City has redacted budgetary information and targeted completion dates for a number of projects. Although not included in the final report text, the City has not indicated that these are not *final* budgets or targets. As the burden to sustain the privilege falls on the City, the Court cannot presume that these figures are predecisional or deliberative. Rather they appear to be evidence marshaled in support of particular statements. As established figures, these data have become facts. The exception is the set of figures found on page NYC-DS-068317, which is expressly described as non-final and may therefore remain redacted.

- Document 112. These e-mails contain verification of figures found in the

13

PlaNYC draft. They do not discuss how the figures were determined; they merely establish the figures' source. Therefore, these e-mails are neither predecisional nor deliberative and must be disclosed in unredacted form.

### 7. Correspondence Concerning Budget Deliberations.

The following document may remain redacted:

- Documents 1-4, 18, 23-26, 28, 31, 32, 35, 40, 42-43, 45-47, 49, 52- 54, 57-58, 64, 66-69, 70-71, 73, 81-82, 85-87, 92-93, 97, 100-101, 113-117. The redactions in these documents contain staff commentary concerning budget priorities and adjustments. Redacted statements include discussions of specific figures, instructions to other staff, descriptions of stages of deliberations and negotiations, meeting notes, and counter-proposals. They are predecisional and deliberative concerning the final determination of budget proposals. However, due to the heightened relevance of information concerning Tunnel 3 and Station 6, figures and commentary describing those two projects in Document 20 must be released unredacted.

- Documents 8-11, 21. These documents contain provisional budget figures for a ten-year capital plan and single-year budgets. In the context of ongoing negotiations, these proposals are predecisional and deliberative. However, due to the heightened relevance of figures concerning Tunnel 3

and Station 6, figures and commentary describing those two projects in Documents 8 and 11 must be released unredacted.

- Documents 14, 29, 36-37, 38, 61, 65, 91, 99, 108-11, 121-123. These are various drafts of a PowerPoint presentation concerning budget goals, rationales, risk evaluations, funding proposals and projections. They are both predecisional and deliberative, as they present arguments in favor of particular budget outcomes.

- Documents 15-16, 22, 39, 50, 51, 60, 62-63, 72, 83, 88, 89, 95-96, 98, 104-07 and 119. These documents are large spreadsheets prepared for budget negotiations. As they express the bargaining position of one actor within a larger decisionmaking process, they are both deliberative and predecisional.

- Document 30. This is a set of responses to specific questions concerning DEP budget requests. As justifications for a bargaining position, it is both deliberative and predecisional.

- Document 41. This document contains both employee e-mails regarding budget priorities and adjustments and related PowerPoint slides. These documents are properly redacted, as they are predecisional and deliberative discussions concerning the final determination of budget proposals.

## V.     CONCLUSION

For the reasons previously stated, the City must produce the documents designated above to Exxon in unredacted form.  Should the City wish to continue to continue to assert the deliberative process privilege over *any* documents in this case, it must assert the privilege properly within three business days of the entry of this Opinion and Order.

SO ORDERED:

_____
Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           July 6, 2009

## - Appearances -

**For Plaintiff:**

Victor M. Sher, Esq.
Todd E. Robins, Esq.
Joshua G. Stein, Esq.
Nicholas G. Campins, Esq.
Marnie E. Riddle, Esq.
Sher Leff LLP
450 Mission Street, Suite 400
San Francisco, California  94105
(415) 348-1568

Susan E. Amron
Ramin Pejan
Assistant Corporation Counsel
100 Church Street
New York, New York
(212) 788-1568

**For Defendant Exxon Mobil Corp.**

Peter John Sacripanti, Esq.
James Anthony Pardo, Esq.
Stephen Joseph Riccardulli, Esq.
Lauren Erica Handel, Esq.
Inbal Paz, Esq.
McDermott, Will & Emery
50 Rockefeller Plaza
New York, New York 10020
(212) 547-5444