UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

IN RE METHYL TERTIARY BUTYL
ETHER ("MTBE") PRODUCTS
LIABILITY LITIGATION

------------------------------------------------------- X

This Document Relates to:

------------------------------------------------------- X

CITY OF NEW YORK, *et al.*,

        Plaintiffs,

    - against -

EXXON MOBIL CORPORATION,

        Defendant.

------------------------------------------------------- X

**OPINION AND ORDER**

**00 MDL 1898 (SAS)**

**04 Civ. 3417 (SAS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/14/09

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

**I.    INTRODUCTION**

      In my June 9, 2009 Opinion, I held that the City of New York ("the

City") may seek punitive damages for claims that proceed under the commingled

product theory.[1] I also determined that a defendant's liability resulting from its

---

    [1]    *See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.* ("*In re
MTBE*"), No. 00 MDL 1898, 04 Civ. 3417, 2009 WL 1649668 (S.D.N.Y. June 9,

1

contribution to a defective commingled product is merely several, as opposed to joint and several.[2] However I did not decide "which party bears the burden of proof for apportionment" of liability for such claims.[3] The City now moves for a ruling *in limine* that defendant bears this burden and defendant ExxonMobil Corporation ("Exxon") – the only remaining non-settling defendant – argues that this burden should be placed on the City.[4] The City also moves *in limine* for a ruling that defendant should be held jointly and severally liable for the City's damages. For the reasons that follow, I once again hold that liability is several only, and I now hold that defendant bears the burden of establishing a reasonable basis for apportioning liability.

## II.   APPLICABLE LAW

### A.   Motion in Limine

---

2009). This Opinion assumes familiarity with facts discussed in this Court's previous opinions in this case. For a general discussion of the MTBE litigation, see *In re MTBE*, 379 F. Supp. 2d 348, 364-67 (S.D.N.Y. 2005). For a detailed discussion of the gasoline distribution network that supplies gas to much of New York, see *In re MTBE*, 591 F. Supp. 2d 259, 269-73 (S.D.N.Y. 2008).

[2]     *See In re MTBE*, 2009 WL 1649668, at *7.

[3]     *Id.* at *6 n.56.

[4]     *See* 6/17/09 Letter from Victor M. Sher, counsel for the City, to the Court ("Pl. Ltr."); 6/21/09 Letter from Peter J. Sacripanti, counsel for Exxon, to the Court ("Def. Ltr.").

2

The Federal Rules of Evidence favor the admission of all relevant evidence.[5] Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[6] A district court will "exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds."[7] "Indeed, courts considering a motion in limine may reserve judgment until trial, so that the motion is placed in the appropriate factual context."[8] Moreover, a court's ruling regarding a motion in limine "'is subject to change when the case unfolds . . . . Indeed even if nothing unexpected happens at trial, the district judge is free – in the exercise of sound judicial discretion – to alter a previous in limine ruling.'"[9]

## B.    Joint and Several Liability

In *Burlington Northern and Santa Fe Railway Co. v. United States*,

---

[5]    *See* Fed. R. Evid. 402.

[6]    Fed. R. Evid. 401.

[7]    *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164 (S.D.N.Y. 2006).

[8]    *United States v. Chan*, 184 F. Supp. 2d 337, 340 (S.D.N.Y. 2002).

[9]    *Palmeri v. Defaria*, 88 F.3d 136, 139 (2d Cir. 1996) (quoting *Luce v. United States*, 469 U.S. 38, 41-42 (1984)).

the Supreme Court recently wrote,

> "When two or more persons acting independently caus[e]
> a distinct or single harm for which there is a reasonable
> basis for division according to the contribution of each,
> each is subject to liability only for the portion of the total
> harm that he has himself caused. . . . But where two or
> more persons *cause* a single and indivisible harm, each is
> subject to liability for the entire harm."[10]

"In other words, apportionment is proper when 'there is a reasonable basis for

determining the contribution of each cause to a single harm.'"[11]

The rules of causation described in the Second Restatement of Torts

are used to establish whether a tortfeasor's acts are a legally sufficient "cause" to

support joint and several liability.[12] Under those rules, "the actor's negligent

conduct is a legal cause of harm to another if . . . his conduct is a *substantial factor*

in bringing about the harm."[13] "The actor's negligent conduct is not a substantial

---

[10]    129 S. Ct. 1870, 1881 (2009) (quoting *United States v. Chem-Dyne Corp.*, 572 F. Supp. 802, 810 (S.D. Ohio 1983) (internal citations omitted) (emphasis added)). *Accord* Restatement (Second) of Torts § 875 (finding joint and several liability appropriate when each tortfeasor is a "legal cause" of an indivisible harm).

[11]    *Burlington N.*, 129 S. Ct. at 1881 (quoting Restatement (Second) of Torts § 433A(1)(b), at 434).

[12]    Restatement (Second) of Torts § 875 cmt. b.

[13]    *Id.* § 831. *Accord id.* § 875 cmt. e ("[I]t is implicit that any one of a number of persons whose tortious conduct is a *substantial factor* in causing harm is liable for the harm" (emphasis added)).

4

factor in bringing about harm to another if the harm would have been sustained even if the actor had not been negligent," unless the conduct "itself is sufficient to bring about harm to another."[14]  "What sets the commingled theory apart from the traditional theory of causation," by contrast, "is that the [plaintiff] need not show that each individual defendant's contribution, *taken alone*, would have caused an injury."[15]  Rather, "the [plaintiff] need only show that the . . . defendant's MTBE *contributed* to th[e] commingled product" that caused the injury.[16]

When the commingled product theory was first introduced, this Court discussed – by way of example – a situation in which *ten* manufacturers each supplied ten percent of the gas to an underground storage tank that leaked and contaminated plaintiff's property.[17]  In such a scenario, "defendants would be

---

[14]     *Id.* § 832.

[15]     *In re MTBE*, 2009 WL 1649668, at *6.

[16]     *Id.* In the context of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675, courts impose joint and several liability even though no proof of causation is required. *See Burlington N.*, 129 S. Ct. at 1880-882.  However reliance on CERCLA cases "to support the application of joint and several liability when there are numerous tortfeasors . . . is misplaced," as CERCLA presents a unique context in which "Congress *intended* those proven to be 'partially culpable to bear the cost of uncertainty.'"  *In re MTBE*, 447 F. Supp. 2d 289, 303 n.61 (S.D.N.Y. 2006) (quoting *O'Neil v. Picillo*, 883 F.2d 176, 179 (1st Cir. 1989)).

[17]     *See In re MTBE*, 379 F. Supp. 2d at 377-78.

severally liable because joint and several liability is unjust where 'there [are] so large a number of actors, each of whom contribute[d] a relatively small and insignificant part of the total harm, that the application of the rule [of joint and several liability] may cause disproportionate hardship to defendants.'"[18]

## C.   Burden of Proving Apportionment

Under the commingled product theory, liability is "apportioned by proof of a defendant's share of the market at the time of the injury.'"[19] "'A defendant must be able to exculpate itself by proving that its product was not present at the relevant time or in the relevant place, and therefore could not be part of the commingled or blended product.'"[20] "[A]pportionment should be based, as near as possible, on each defendant's share of the actual market that supplied gasoline to the commingled product that contaminated the City's wells."[21]

---

[18]   *Id.* at 378 (quoting Restatement (Second) of Torts § 433B(2) cmt. e). *Accord In re MTBE*, 447 F. Supp. 2d 289, 301 (S.D.N.Y. 2006). *See also* Restatement (Second) of Torts § 433B(2) & cmt. e (noting that cases applying joint and several liability on the sole ground that "the tortious conduct of two or more actors has combined to bring about harm to the plaintiff . . . all have involved a small number of tortfeasors, *such as two or three*." (emphasis added)).

[19]   *In re MTBE*, 2009 WL 1649668, at *7 (quoting *In re MTBE*, 591 F. Supp. 2d at 274 n.72).

[20]   *Id.* (quoting *In re MTBE*, 447 F. Supp. 2d at 301).

[21]   *Id.*

"[T]he commingled product theory adopts, with slight adjustments, the concurrent wrongdoing theory of liability and the market-share theory of apportioning damages."[22] Under the market share theory, the burden of proving that a defendant's conduct did not contribute to causing the injury is shifted to the defendants. However, courts have taken various approaches to allocating the burden of apportionment among those defendants who fail to exculpate themselves and therefore remain as defendants whose conduct presumably contributed to the injury. "In some states, a plaintiff must prove the actual market share of each defendant."[23] A recent California decision assigned the burden to the plaintiffs because the market share theory marks an "extraordinary departure from

---

[22]    *Id.* at *2. *Accord In re MTBE*, 379 F. Supp. 2d at 379 (noting that the commingled product theory "is similar to market share in that it shifts the burden to defendants to exculpate themselves from liability").

[23]    *City of Philadelphia v. Lead Indus. Ass'n, Inc.*, 994 F.2d 112, 127 (3d Cir. 1993). As an example of a state that requires plaintiffs to make this showing, the Third Circuit cited the decision of the New York Court of Appeals in *Hymowitz v. Eli Lilly & Co. See id.* at 124 n.10 (citing 73 N.Y.2d 487 (1989)). However, the *Hymowitz* Court never explicitly reached this issue. *See* 73 N.Y.2d at 508-13 (apportioning liability on the basis of national market share but not stating which party bears the burden of proof). The Third Circuit also cited the seminal California Supreme Court decision in *Sindell v. Abbott Laboratories. See* 994 F.2d at 124 (citing 26 Cal. 3d 588 (1980)). Although *Sindell* did not explicitly reach the issue, a lower California court has clarified that "it is plain both from . . . the majority [opinion] in *Sindell* and from the logic of the theory underlying market share tort liability itself" that plaintiffs must make this showing. *Ferris v. Gatke Corp.*, 132 Cal. Rptr. 2d 819, 828 (1st Dist. 2003).

7

conventional tort law doctrine . . of [proving] causation."[24]  Given that defendants

may be held liable under the market share theory even though they likely did not

harm a particular plaintiff, the court explained the need for caution when

attributing market share, asserting that "it serves no justice to fashion rules which

allow responsible parties to escape liability while demanding [that] others . . .

compensate [plaintiff for] a loss they did not create."[25]

       Other states place the burden of proving market share on

defendants.[26]  When the burden is on defendants,

> [Many] states impose a rebuttable presumption that all
> defendants have an equal market share, totaling one
> hundred percent.    Each defendant may rebut this
> presumption by showing that its actual market share was
> less. The liability of defendants that cannot prove their
> actual market share then inflates so plaintiff receives a total

---

[24]    *Ferris*, 132 Cal. Rptr. 2d at 828.

[25]    *Id.* (emphasis added) (quotation marks omitted).

[26]    *See, e.g.*, *Smith v. Cutter Biological, Inc.*, 72 Haw. 416, 438 (1991)
("'[T]he cornerstone of market share alternate liability is that *if a defendant can
establish its actual market share*, it will not be liable under any circumstances for
more than that percentage of the plaintiff's total injuries.'" (emphasis added)
(quoting *Conley v. Boyle Drug Co.*, 570 So.2d 275, 285 (Fla. 1990)); *George v.
Parke-Davis*, 107 Wash.2d 584, 592 (1987) (same); *In re "Agent Orange" Prod.
Liab. Litig.*, 597 F. Supp. 740, 820 (E.D.N.Y. 1984) (requiring each defendant to
establish that "its product could not have caused the plaintiffs' injury or,
alternatively, that it should only be responsible for a *proportion of the damage*"
(emphasis added)).

recovery.[27]

The Third Restatement of Torts provides that "when, under applicable

law, a person is severally liable to an injured person for an *indivisible* injury, the

injured person may recover only the severally liable person's comparative-

responsibility share of the injured person's damages."[28]  An injury is divisible,

however, "[w]hen damages for an injury can be divided by causation."[29]  "A party

---

[27]      *City of Philadelphia*, 994 F.2d at 127 (citing *Smith*, 72 Haw. at 823).
*Accord Martin v. Abbott Labs.*, 102 Wash. 2d 581, 598 (1984) (adopting
"modified market share" liability, in which plaintiff must join only one defendant
who produced or marketed injury-causing product and then shifting the burden to
the defendant to prove its percentage share of market and thereby lower
presumptive equal share of market); *Collins v. Eli Lilly & Co.*, 116 Wis. 2d 166,
(1984) (adopting a modified market-share theory of liability in which each
defendant is liable in proportion to its "respective contribution" to the result, as
measured by various factors).  The Third Circuit did not decide how the burden
should be allocated because it declined to apply the market share theory. *See City
of Philadelphia*, 994 F.2d at 127-28.

[28]      Restatement (Third) of Torts: Apportionment of Liability § 11
(emphasis added).

[29]      *Id.* § 26.  In discussing the similarities between the commingled
product theory and the concurrent wrongdoing theory, this Court has frequently
referred to these types of injury as "indivisible." *See, e.g.*, *In re MTBE*, 2009 WL
1649668, at *6 n.55; *In re MTBE*, 591 F. Supp. 2d at 245.  In those discussions,
the injury was called "indivisible" in the sense that it was caused by a single,
*commingled* mass, the individual molecules of which could not be identified by
manufacturer.  Those decisions further clarified – however – that liability would
be apportioned by market share and that the relevant market would be narrowly
defined in such a way that each defendant's market share represents – as near as
possible – the amount of its MTBE in the commingled mass that caused the injury.

alleging that damages are divisible has the burden to prove that they are divisible."[30] "The burden to prove the magnitude of each part is on the party who seeks division."[31]

The allocation of the burden of proof can create inequities for either party in a case. On the one hand, "[s]hifting the burden of proof to defendants to prove the magnitude of the parts may be unfair to defendants because it can impose full liability on a defendant who caused only part of the damages."[32] On the other hand, placing the burden of proof on plaintiff could unfairly deny the plaintiff any recovery simply because plaintiff is unable to carry the burden of

_See In re MTBE_, 2009 WL 1649668, at *7. By dividing liability by market share rather than by each party's "responsibility" – which relates to such matters as relative "awareness or indifference with respect to the risks created by the conduct," Restatement (Third) of Torts: Apportionment of Liability § 8(a) – this Court has apportioned liability in a manner similar to _divisible_ injuries, rather than indivisible injuries. _See_ Restatement (Third) of Torts: Apportionment of Damages § 26 (apportioning liability for divisible injuries by "the amount of damages separately _caused_" by each actor's conduct (emphasis added)). Further, by defining the market in such a way that each defendant is liable in proportion to its share of the gasoline in the commingled product that caused the injury, this Court has devised a way for the damages to be "divided by causation." _Id._ In both respects, prior decisions of this Court have treated the injury as _divisible_ within the meaning of the Third Restatement of Torts.

[30]    Restatement (Third) of Torts: Apportionment of Liability § 26 cmt. h.

[31]    _Id._

[32]    _Id._

apportionment. The principal rational for "shifting the burden of proof to the

defendant" is that the burden should be placed "on culpable rather than innocent

parties."[33] A second rational is that defendants are often in a better position to

know their relative contribution to the harm than are plaintiffs.[34] In order to

balance these concerns, the most "attractive solution is to place the burden of

proof on the party seeking to avoid responsibility for the entire injury, along with

relaxing the burden of production."[35]

### D.    Proof of Apportionment

Ordinarily apportionment is proper when "there is a *reasonable basis*

for determining the contribution of each cause to a single harm."[36] However

"[w]hen two or more causes produce a single, indivisible harm, 'courts have

---

[33]    *Id.*

[34]    *See, e.g., Summers v. Tice*, 33 Cal. 2d 80, 88 (1948) (holding that
where two defendants breach a duty to plaintiff – but there is uncertainty regarding
which one caused the injury – the burden is upon each defendant to prove that he
has not caused the harm, in part because – in such circumstances – "defendants are
in a far better position to offer evidence to determine which one caused the
injury"). *Cf. Hymowitz*, 73 N.Y.2d at 507 (concluding that despite plaintiffs' lack
of knowledge concerning the actions of individual defendants, the present
circumstances call for recognition of a realistic avenue of relief for plaintiffs").

[35]    Restatement (Third) of Torts: Apportionment of Damages § 26 cmt.
h.

[36]    *Burlington N.*, 129 S. Ct. at 1881.

refused to make an arbitrary apportionment for its own sake, and each of the

causes is charged with responsibility for the entire harm.'"[37]  The Third

Restatement of Torts states that the burden of production should be low in order to

permit "the factfinder [to] divide damages based on the available evidence."[38]

The Supreme Court recently adopted this approach in a CERCLA

action.[39]  In *Burlington Northern* – discussed above – the district court

apportioned nine percent of the liability for a spill to a defendant even though

neither defendant nor plaintiff argued that the injury was divisible.[40]  The Court of

Appeals reversed on the ground that the finder of fact lacked sufficient evidence to

permit a reasonable apportionment of liability.[41]  The Supreme Court reversed the

Court of Appeals and upheld the district court's apportionment decision "despite

the parties' failure to assist the court in linking the evidence supporting

---

[37]     *Id.* (quoting Restatement (Second) of Torts § 433A cmt. i).

[38]     Restatement (Third) of Torts: Apportionment of Damages § 26 cmt.
h.

[39]     *See Burlington N.*, 129 S. Ct. at 1881-83.

[40]     *See id.* at 1881.  The defendant had insisted that it had no liability and
the plaintiff insisted that the harm was indivisible, with the result that neither party
attempted to establish the defendant's proportion of responsibility for the spill.
*See id.* at 1881.  *See id.*

[41]     *See id.*

12

apportionment to the proper allocation of liability."[42]  The Court determined that the district court had a "reasonable basis for determining the contribution of each" even though the district court "ultimately concluded that this was a classic '*divisible in terms of degree*' case, both as to the time period in which defendants' conduct occurred, and ownership existed, and as to the estimated maximum contribution of each party's activities that released hazardous substances that caused Site contamination."[43]

Similarly, the California Supreme Court explained in *Sindell v. Abbott Laboratories* – the seminal decision concerning apportionment of liability on the basis of market share – that "the difficulty of apportioning damages among the defendant producers in exact relation to their market share does not seriously militate against the [market share approach] . . . . [W]here a correct division of liability cannot be made the trier of fact may make it the best it can."[44]  This approach comports with the traditional American rule on damages, as the Supreme Court stated long ago in *Story Parchment Co. v. Paterson Parchment Paper Co.*:

Where the tort itself is of such a nature as to preclude the

---

[42]     *Id.* at 1882.

[43]     *Id.* (internal citations omitted) (emphasis added).

[44]     *Sindell*, 26 Cal. 3d at 613 (quotation marks omitted).

13

ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of damages as a matter of just and reasonable inference, although the result be only approximate.[45]

## III.   DISCUSSION

### A.   Joint and Several Liability

The City asks this Court to reconsider its decision – repeated over many years and as recently as last month – to assign several liability to a defendant found liable under the commingled product theory. There is no reason to do so.

*First*, the City argues that where there are "a small number of tortfeasors – fewer than 20 in the refiner/manufacturer category," the Second Restatement of Torts urges imposition of joint and several liability.[46] However, in the decision that introduced the commingled product theory, this Court explained

---

[45]   282 U.S. 555, 563 (1931).

[46]   Pl. Ltr. (citing Restatement (Second) of Torts § 433B). A comment to section 433B notes that joint and several liability involving "a small number of tortfeasors, such as two or three" is appropriate, while application to "a hundred factories . . . may perhaps be unjust." Restatement (Second) of Torts § 433B cmt. e. Thus this provision does not support the extension of joint and several liability to a case involving close to twenty defendants.

14

that if *ten* manufactures had an equal share in a spill, then there would be too many tortfeasors to permit joint and several liability.  The Restatement sets an even stricter limitation where it notes that no court has permitted joint and several liability in similar circumstances when there were more than two or three tortfeasors.  The allegation that there are "fewer than twenty" manufactures allegedly at fault is not a reason to depart from this Court's longstanding decision to assign several liability in the commingled product context.

   *Second*, the City argues that joint and several liability is available under the Second Restatement whenever two or more persons cause a single, indivisible harm.[47]  However, the Restatement provision advanced by the City – section 875 – supposes that the tortfeasors "caused" the harm in the sense that their conduct was a substantial factor in the harm.  By contrast, the defining feature of the commingled product theory is that plaintiffs need not show that each defendant's conduct was a substantial factor in the harm.  Rather, the City need only show that each defendant *contributed* to the commingled mass that caused the harm.  Thus, section 875 is not directly on point.[48]

---

[47]  *See id.* (citing Restatement (Second) of Torts § 875).

[48]  In CERCLA cases – which rely on section 875 of the Second Restatement – there is often no need to prove causation.  However, there are independent statutory bases for joint and several liability under CERCLA.  *See,*

*Third*, and most important, liability is several under the Second Restatement when "there is a reasonable basis for determining the contribution of each cause to a single harm."[49]  Provided there is a reasonable basis to determine defendant's share of the market that supplied gasoline to the injury-producing commingled mass, there will be a reasonable basis for determining defendant's contribution to the single harm.  Accordingly, several liability applies.

## B.     Burden of Proof

Because the commingled product theory is novel, there is no precedent establishing the applicable burden of proof.  An examination of similar cases and doctrinal sources lead this Court to predict that the New York Court of Appeals would place the burden of production and persuasion on the defendant, with the important proviso that a defendant need only show a reasonable basis for the apportionment, which is a low burden.

The burden of proving apportionment is ordinarily placed on the

---

*e.g.*, *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1044 (2d Cir. 1985) ("[S]ection 9607(a)(1) unequivocally imposes strict liability on the current owner of a facility from which there is a release or threat of release, without regard to causation.").

49      *Burlington N.*, 129 S. Ct. at 1881.

culpable party.[50]  This is especially true where – as here – the defendant is likely in

a better position than the plaintiff to know the defendant's share of the market.[51]

The logic of assigning the burden of proving market share to the plaintiff under

the market share theory does not support a similar assignment of that burden under

the commingled product theory.  Under market share theory, placement of the

burden on the plaintiff is designed to mitigate the inequity of requiring a defendant

to prove its share of the market in circumstances where it is highly unlikely that

defendant's product caused or even contributed to plaintiff's injury.  By contrast,

under the commingled product theory a plaintiff must first prove that the

defendant's product was in the commingled product that caused it injury.  A

defendant will not be found liable where its activity neither caused nor contributed

---

[50]      *See* Restatement (Third) of Torts: Apportionment of Damages § 26
cmt. h.

[51]      *See In re MTBE*, 591 F. Supp. 2d at 270-73 (describing some of "the
complex business relationships in the oil industry" involved in shipping gasoline
from manufacturers to the retail stations in Suffolk County).  Given that Exxon is
involved in many of these complex business relationships, it has better access to
information relating to its market share than the City does.  *Cf. Ortiz v. Menu
Foods, Inc.*, 525 F. Supp. 2d 1220, 1225 (D. Hawaii 2007) (explaining that
defendant manufacturers of pet food were in better position than plaintiffs to
"provide data which would help determine their market share" because defendants
had much of the data and could more easily obtain additional "information from
their customers regarding the sales price of the pet food and how much pet food
was sold during the time period at issue").

to the harm; thus the potential inequities at the core of the market share decisions are avoided. Under the commingled product theory, there is no reason to depart from the ordinary rule requiring the culpable party to show that there is a reasonable basis for apportioning the harm.

Exxon argues that assigning it the burden would be tantamount to imposing joint and several liability, which this Court has already decided is inappropriate. However, there are numerous differences between several liability with the burden of persuasion concerning market share on the defendant and ordinary joint and several liability. Among other things, if liability were joint and several Exxon would have to both (a) seek contribution from non-parties and bear the risk of their insolvency and (b) prove the share of *settling parties* rather than, as here, simply proving its *own* share.[52]

Although this Court will assign the burden of proof to Exxon, it would cause great inequity if Exxon were to bear the entire cost of this injury. Accordingly, Exxon's burden of production will be low. To satisfy the burden of production, Exxon need only show that there is a reasonable basis for its proposed share. Given that each party intends to call expert witnesses on the topic of market

---

[52]    *See, e.g.*, *In re New York City Asbestos Litig.*, 593 N.Y.S.2d 43, 46-48 (1st Dep't 1993).

18

share,[53] the jury will have sufficient evidence to support a reasonable basis for the

assignment of a market share to defendant, far more evidence than was before the

district court in *Burlington Northern*.[54]  In short, even if this is "a classic 'divisible

in terms of degree' case,"[55] the factfinder will ultimately be asked "to divide

damages based on the available evidence."[56]  Because the threshold for assigning

*some* market share to Exxon is easily met, there is no danger that placing the

burden on Exxon is tantamount to saddling it with joint and several liability.[57]

## IV.  CONCLUSION

---

[53]     *See* 12/9/08 Expert Market Share Report of Martin R. Tallett, Ex. B
to 5/28/09 Declaration of Martin R. Tallett, expert for the City (describing both
parties' market share experts and their intended testimony).

[54]     Although the jury will not be instructed that there is a rebuttable
presumption that Exxon's share of the market is equal to that of other
manufacturers who supplied gasoline to the market, the jury may be instructed – if
necessary – that such an assumption might provide a *reasonable basis* for
assigning a market share to defendant in the absence of any other reliable method
for doing so.

[55]     *Burlington N.*, 129 S. Ct. at 1882 (quotation marks omitted).

[56]     Restatement (Third) of Torts: Apportionment of Damages § 26 cmt.
h.  *See also Sindell*, 26 Cal. 3d at 613 ("[W]here a correct division of liability
cannot be made the trier of fact may make it the best it can." (quotation marks
omitted)).

[57]     Similarly, because the jury will determine Exxon's share of the
commingled gas that caused the injury, there is no Due Process objection to the
imposition of punitive damages, as explained in *In re MTBE*, 2009 WL 1649668,
at *7-8.

For the foregoing reasons, the City's motion *in limine* is granted in part and denied in part. Exxon's liability is several on those claims brought under the commingled product theory. The burden of production and persuasion concerning apportionment rests on Exxon, which must establish a reasonable basis for such apportionment.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            July 14, 2009

20

## -Appearances-

**Liaison Counsel for Plaintiffs:**

Robin Greenwald, Esq.
Robert Gordon, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, New York  10038
(212) 558-5500

**Counsel for Plaintiff City of New York:**

Victor M. Sher, Esq.
Todd E. Robins, Esq.
Joshua G. Stein, Esq.
Nicholas G. Campins, Esq.
Marnie E. Riddle, Esq.
Sher Leff LLP
450 Mission Street, Suite 400
San Francisco, California  94105
(415) 348-1568

Susan Amron
Daniel Greene
Assistant Corporation Counsel
100 Church Street
New York, New York  10007
(212) 788-1568

**Liaison Counsel for Defendants and Counsel for Exxon Mobil Corporation:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
McDermott Will & Emery LLP
340 Madison Avenue
New York, New York  10173
(212) 547-5583