**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------- x

| | |
|---|---|
| In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation | Master File No. 1:00-1898 MDL 1358 (SAS) M21-88 |

--------------------------------------------------------------------- x    ECF Case

**This document relates to the following case:**

*City of New York v. Amerada Hess Corp., et al.*
Case No. 04 Civ. 3417

--------------------------------------------------------------------- x

### PLAINTIFF CITY OF NEW YORK'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF MEENA NAINAN, THOMAS MILTON, NORMAN NOVICK, MICHAEL ROMAN, GARY STUMPF, AND HENRY THOMASSEN TO QUASH PLAINTIFF'S TRIAL SUBPOENAS

Dockets.Justia.com

<u>**TABLE OF CONTENTS**</u>

**TABLE OF AUTHORITIES** ......................................................................................... iii

**I.    INTRODUCTION** ........................................................................................... 1

**II.   BACKGROUND AND EVIDENTIARY MATTERS** ..................................... 2

   **A. Movants' Rejection of the City's Offer to Coordinate Their Appearances and Pay Their Transportation and Lodging Costs.** ...................................................... 2

   **B. The Roman, Stumpf, and Novick, Declarations Should Be Stricken and Disregarded.**............................................................................................................. 3

   **C. The Nainan, Milton and Thomassen Declarations Establish that Those Movants Knowingly Agreed to Testify as ExxonMobil.** ............................................... 3

   **D. The Nature of Each Corporate Representative's Testimony and its Relevance.** .......... 4

      **1. Michael Roman** ......................................................................................... 4

      **2. Gary Stumpf** .............................................................................................. 5

      **3. Norman Novick** ........................................................................................ 6

      **4. Meena Nainan** .......................................................................................... 7

      **5. Thomas Milton** ......................................................................................... 9

      **6. Henry Thomassen** ................................................................................... 10

**III.  ARGUMENT** ................................................................................................ 11

   **A. The City Needs the Corporate Representatives' Live Testimony.**................................ 11

   B. The Court's June 24, 2009 Subpoena Order Correctly Applied the Law. .................. 13

      **1.  The Court Correctly Held that Parties and Officers May Be Compelled to Travel More than 100 Miles.**............................................................................... 14

      **2.  Pursuant to Rule 30(b)(6) and Rule 45 Movants' Are Officers and Parties.**........ 15

      **3. The Two Cases Cited By Movants Do Not Support Movants' Position and Are Not Controlling.** ........................................................................................... 17

　　　4.　**Movants' Policy Based Arguments and Hardship Claims Should Be Rejected.**................................................................................................... 18

　　C.　**Meena Nainan Is an Officer or Party of ExxonMobil:　During the June 25 Conference The Court Held that There is No Difference With State Court Procedures**. ................19

　　D.　**Milton's Status as a Former Employee Provides No Basis for Excusing Him.**........... 21

　　E.　**Thomassen's Status as a Former Employee Provides No Basis for Excusing Him.**..... 21

　　F.　**In the Alternative, Mr. Roman Is a Current Officer of ExxonMobil with Nationwide Responsibilities.** ........................................................................................................ 21

IV.　　**CONCLUSION** ............................................................................................................ 22

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Black Horse Lane Association v. Dow Chemical Corp.*,
    228 F.3d 275 (3d Cir. 2000)................................................................. 18

*Blackrock Inc. v. Schroders PLC*,
    2007 WL 1573933, at *9 (S.D.N.Y. May 30, 2007)................................. 12

*Capitol Records, LLC v. VideoEgg, Inc.*,
    611 F. Supp. 2d 349 (S.D.N.Y. 2009) ............................................... 14, 15

*Chao v. Tyson Foods, Inc.*,
    255 F.R.D. 556 (N.D.Ala. 2009)........................................................... 18

*DiRienzo v. Philip Servs. Corp.*,
    294 F.3d 21 (2d Cir. 2002)................................................................. 12

*Gotlin v. Lederman*,
    616 F. Supp. 2d 376 (E.D.N.Y. 2009) ................................................... 3

*Herbert Ltd. P'ship v. Elec. Arts, Inc.*,
    325 F. Supp. 2d 282 (S.D.N.Y. 2004).................................................... 14

*In re MTBE Prods. Liability Litig.*,
    510 F. Supp. 2d 299 (S.D.N.Y. 2007)..................................................... 8

*In re MTBE Prods. Liability Litig.*,
    559 F. Supp. 2d 424 (S.D.N.Y. 2008)..................................................... 8

*In re Vioxx Prods. Liab. Lit.*,
    438 F. Supp. 2d 664 (E.D. La. 2006)................................................ 14, 22

*Kolb v. Suffolk County*,
    109 F.R.D. 125 (E.D.N.Y. 1985) (Scheindlin, M.J.) ............................... 12

*Napier v. Bossard*,
    102 F.2d 467 (2d Cir. 1939)................................................................. 12

*Price Waterhouse LLP v. First Am. Corp.*,
    182 F.R.D. 56 (S.D.N.Y 1998)........................................................ 14, 15

*Reilly v. Natwest Markets Grp. Inc.*,
    181 F.3d 253 (2d Cir. 1999)................................................................. 19

*Square D Co. v. Breakers Unlimited, Inc.*,
    2009 WL 1702078, * 2 (S.D. Ind. June 11, 2009) ............................................................. *passim*

*Sterling Fifth Assoc. v. Carpentile Corp., Inc.*,
    2003 WL 22227960, at *5 (S.D.N.Y. Sept. 26, 2003) ................................................. 3

*United States v. IBM*,
    90 F.R.D. 377 (S.D.N.Y. 1981) ................................................................................... 12

## OTHER AUTHORITIES

15 U.S.C. § 2607(e) ........................................................................................................ 8

15 USC. § 2614(3)(B) ..................................................................................................... 8

28 U.S.C. § 1407(b) ........................................................................................................ 14

28 U.S.C. § 1746 ............................................................................................................. 3

California Code of Civil Procedure § 2025.230 ................................................... *passim*

California Code of Civil Procedure § 2025(d)(6)(2000) ................................................ 20

Section 8(e) of the Toxic Substances Control Act ................................................... 8, 9

## FEDERAL RULES

Fed. R. Civ. P. 30(b)(6) ........................................................................................ *passim*

Fed. R. Civ. Pro. 43(c) ................................................................................................... 3

Fed. R. Civ. Pro. 45 .............................................................................................. *passim*

## I. INTRODUCTION

In its June 24, 2009 Order, the Court correctly decided that the City could subpoena corporate representatives of ExxonMobil who are located more than 100 miles from the district. *See* Order, No. 1:04-CV-3417, Dkt. # 324 (S.D.N.Y. Jun. 24, 2009) ("Subpoena Order") (Exh. 1 to July 20, 2009 Declaration of Nicholas G. Campins ("N. Campins Decl.").[1]  At the June 25, 2009 status conference, the Court extended its ruling to state court equivalents of Rule 30(b)(6).  *See* 6/25/2009 Hearing Transcript at 82:18-83:10 (Exh. 2 to N. Campins Decl.).  In doing so, the Court considered the legal arguments advanced by Thomas Milton, Norman Novick, Michael Roman, Gary Stumpf, Henry Thomassen, and Meena Nainan (collectively, "Movants") regarding the Court's subpoena power and rejected them.  As discussed below, Movants' burdensomeness arguments are meritless.  The motion to quash should be denied in its entirety.

Movants' objections to the Subpoena Order arise almost entirely from their misreading of sentences out of context, thereby ignoring the Court's careful attention to the relevant case law and applicable rules.  A proper reading of the Subpoena Order reveals that Movants' objections are meritless.  Each Movant provided binding testimony on behalf of ExxonMobil pursuant to Federal Rule of Civil Procedure 30(b)(6) or California Code of Civil Procedure § 2025.230.  By providing such testimony, Movants became the voice of ExxonMobil within the scope of their designation. Rule 30(b)(6) provides that when served with a Rule 30(b)(6) notice, the "named organization must then designate *one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf*."  Fed. R. Civ. P. 30(b)(6) (emphasis added).  Accordingly, Movants

---

[1] The term "ExxonMobil" is used by the Parties and the Court to refer to ExxonMobil Corporation, ExxonMobil Oil Corporation, and Mobil Corporation.  At times in their Memorandum, Movants' appear to assert that Mobil Corporation is not a part of "ExxonMobil." *See* Movants' Memo. at 3.  Mobil Corporation is a named party in this action and for convenience the parties refer to all three ExxonMobil corporate entities as "ExxonMobil."

are officers of ExxonMobil and they consented to testify for ExxonMobil and are parties. Likewise, with regard to Ms. Nainan, California Code of Civil Procedure § 2025.230 provides that the organization "shall designate and produce at the deposition those of *its officers, directors, managing agents, employees, or agents who are most qualified to testify on its behalf.*" Cal. Code. Civ. P. § 2025.230 (emphasis added). Therefore, because Movants agreed to testify as ExxonMobil, they are parties and officers of ExxonMobil subject to the Court's jurisdiction at locations more than 100 miles from the district under Rule 45.

As discussed more below, it is apparent that Movants' Motion, which is paid for by ExxonMobil, is at least in part an attempt by ExxonMobil to gain an unfair tactical advantage at trial. For example, ExxonMobil has listed Mr. Stumpf as a witness that it will be calling live at trial. Unless Mr. Stumpf plans to resist his employer's efforts to call him live, Mr. Stumpf's Motion is plainly meritless. Likewise, Messrs. Thomassen and Novick travelled to New York, New York to provide deposition testimony in 2007. If Messrs. Thomassen and Novick can travel to New York for the convenience of ExxonMobil's New York-based attorneys, surely they can do so for the convenience of the jury and the Court.

Furthermore, as discussed below, each Movant has highly relevant testimony, which the City needs for its proof and the Second Circuit has held that in person trial testimony is vastly preferred to deposition testimony.

## II. BACKGROUND AND EVIDENTIARY MATTERS

### A. Movants' Rejection of the City's Offer to Coordinate Their Appearances and Pay Their Transportation and Lodging Costs.

In an effort to resolve this matter, the City offered to minimize the burden of complying with the subpoenas on Movants. The City offered to work closely with Movants' counsel to minimize the amount of time they would need to be in New York during trial and offered to pay

Movants' transportation and lodging costs.  *See* Exh. 3 to N. Campins Decl.  In response, Movants' summarily rejected the City's offer and filed this motion.  When assessing the terms of the subpoenas, the Court should take the rejected offer into account.

**B.   The Roman, Stumpf, and Novick, Declarations Should Be Stricken and Disregarded.**

For reasons set forth in the City's Motion to Strike filed concurrently herewith, the declarations of Michael Roman, Gary Stumpf, and Norman Novick should be stricken and should not be considered for any purpose.  In brief, the declarations do not contain any of the statutorily required language for unsworn declarations i.e., they do not contain the word "perjury" or the phrase "true and correct."  *See* 28 U.S.C. § 1746; Fed. R. Civ. Pro. 43(c); s*ee Gotlin v. Lederman*, 616 F. Supp. 2d 376, 389 n.7 (E.D.N.Y. 2009) (declaration that did not state that it is "true and correct" and made under "penalty of perjury" inadmissible); *Sterling Fifth Assoc. v. Carpentile Corp., Inc.*, 2003 WL 22227960, at *5 (S.D.N.Y. Sept. 26, 2003) (holding that where declaration contained the statement it was made under penalty of perjury but failed to state that its contents were "true and correct" that it was "is hard if not impossible" "to rely on the language" it contained).

**C.   The Nainan, Milton and Thomassen Declarations Establish that Those Movants Knowingly Agreed to Testify as ExxonMobil.**

With regard to the remaining Movants, from their declarations it is clear that they agreed to testify on behalf of ExxonMobil and with full knowledge that their testimony would bind ExxonMobil.  *See, e.g.,* Decl. of M. Nainan, No. 1:04-CV-3417, Dkt. # 358-3 (S.D.N.Y. July 16, 2009) at ¶ 5 ("It was explained to me at the time that I would be testifying on behalf of Mobil Oil Corporation and that my answers would be binding on the corporation"); Decl. of T. Milton, No. 1:04-CV-3417, Dkt. # 358-17 (S.D.N.Y. July 16, 2009) at ¶ 5 (same); and Decl. of H. Thomassen, No. 1:04-CV-3417, Dkt. # 358-20 (S.D.N.Y. July 16, 2009) at ¶  5 (same).

**D.  The Nature of Each Corporate Representative's Testimony and its Relevance.**

**1. Michael Roman**

Michael Roman is a Rule 30(b)(6) corporate representative of ExxonMobil.  Exh. 4 to N. Campins Decl.  Mr. Roman's deposition testimony establishes that he is an officer of ExxonMobil with nationwide responsibilities (including New York).  *See* M. Roman Deposition at 12:2 – 12:5 ("I am currently serving as the regulatory and legal advisor for U.S. fuels marketing"); *id.* at 12:8 – 12:15 ("I coordinate our activity relative to legislative and regulatory issues that *need to be worked at a state and federal level*, issues that would impact our fuels marketing business throughout the United States") relevant excerpt attached as Exh. 5 to N. Campins Decl.  Among other things, Mr. Roman agreed to testify on behalf of ExxonMobil (and Heritage Mobil) regarding whether it ever warned gasoline station owners and operators, downstream handlers or customers about MTBE's unusual and hazardous properties (*e.g.* its propensity to contaminate groundwater; the fact that it travels farther and faster than other gasoline constituents; that it is difficult and expensive to remediate; that it renders drinking water unusable because of its unpleasant taste and odor; that gasoline containing it requires different handling than gasoline that does not contain it; that it can cause cancer).  *See* Exh. 4 to N. Campins Decl.  Mr. Roman's deposition testimony took place on March 28, 2007.  During that deposition, Mr. Roman made a number of damaging admissions that show that ExxonMobil failed to warn customers or anyone else for that matter, about MTBE's dangerous and unusual properties.  For example, when asked whether Heritage Mobil provided "any warnings relating to MTBE gasoline, to station owners and its customers, of MTBE's risk to the environment?"  Mr. Roman said:  "The answer is no."  *See* Exh. 6 to N. Campins Decl. at 167:3-167:8.  Mr. Roman's testimony is therefore directly relevant to the City's Second Cause of Action for Strict Liability for Failure to Warn, *see* Fourth Amended Complaint

("4AC") at ¶ 135 – 141, as well as the City's negligence, trespass, private nuisance, design defect, public nuisance, TSCA and malice claims.

### 2. Gary Stumpf

Gary Stumpf is a Rule 30(b)(6) corporate representative of ExxonMobil. Exhs. 7-8 to N. Campins Decl. As discussed above, ExxonMobil intends to call Mr. Stumpf live during trial and his assertion of burden is meritless. Exh. 9 to N. Campins Decl. Mr. Stumpf's deposition testimony establishes that part of his job at ExxonMobil is to be a professional witness and to provide nationwide litigation support for ExxonMobil (including New York). *See* G. Stumpf Deposition at 18:5 – 18:8 ("Basically my job was to handle environmental claims for roughly about three-quarters of the country at the time, and work closely with counsel on litigation matters to provide technical support."); 18:18-18:21 ("Q. … How many times have you been deposed? A. I don't remember the exact number; but my best guess is roughly about 40 times."). *See* Exh. 10 to N. Campins Decl. [2] Mr. Stumpf was deposed regarding ExxonMobil's (including Heritage Mobil's) communications with the EPA's Interagency Testing Committee and ExxonMobil's early knowledge of MTBE's characteristics (e.g. the fact that it travels farther and faster than other gasoline constituents; that it is difficult and expensive to remediate; that it renders drinking water unusable because of its unpleasant taste and odor; that gasoline containing it requires different handling than gasoline that does not contain it; etc.) and ExxonMobil's remediation efforts and use of consultants. Exhs. 7-8 to N. Campins Decl.

Mr. Stumpf's deposition testimony took place on March 22 and June 28, 2007. During that deposition, Mr. Stumpf testified that, among other things, ExxonMobil took no steps in its

---

[2] Movants' claim that providing testimony on ExxonMobil's behalf would "create extreme hardship," *see* Memo. at 7, is especially specious in the case of a professional witness like Mr. Stumpf, who has been deposed over forty times.

remediation program to address the extraordinary hazards associated with MTBE. For example,

ExxonMobil did not direct its consultants to test for and report the presence of MTBE at

remediation sites until after 1991 in the Northeast even though it knew for years that it posed an

extraordinary risk to groundwater and drinking water:

> Q. Did there come a time when Mobil recommended to its outside consultants to start testing for the presence of MTBE, include the testing for MTBE in its samples?
> A Yes.
>
> Q And when did that happen?
> A It varied around the country.
>
> Q Okay. Do you know when that happened specific to the Northeast section of the United States?
> A I believe around -- by interview of our ESL lab, they confirmed that they routinely were testing in 1991 for, and reporting MTBE. And we were starting to send samples to the lab that was starting up at that time.

3/20/2007 G. Stumpf Deposition at 135:2 – 135:14 (Exh. 11 to N. Campins Decl.).

Among other things, Mr. Stumpf's testimony is relevant to the City's negligence, private

nuisance, public nuisance, trespass (especially intent), defective product, failure to warn and

TSCA claims.

**3. Norman Novick**

Norman Novick is a Rule 30(b)(6) corporate representative of ExxonMobil. Exhs. 12-13 to

N. Campins Decl. Mr. Novick's deposition transcript establishes that he voluntarily travelled to

New York, New York to provide deposition testimony in 2007. *See* N. Novick Deposition at 1:11-

15, Exh. 14 to N. Campins Decl. In addition, Mr. Novick's provides global technical advice as

part of his role in ExxonMobil's Global Remediation. *See* N. Novick Deposition at 9:22-10:4,

Exh. 14 to N. Campins Decl. Mr. Novick was deposed regarding ExxonMobil's (including

Heritage Mobil's) knowledge of MTBE's taste and odor properties, remediation of sites

contaminated with MTBE and use of Risk Based Corrective Action (RBCA) procedures. Exhs. 12-

13 to N. Campins Decl.

Among other things, at his deposition, Mr. Novick testified that he authored Exhibit O to his deposition. *See* N. Novick Deposition at 143:2-143:14 (Exh. 15 to N. Campins Decl). Exhibit O establishes that "natural attenuation" means "remediation" without "human intervention" and that the practice involves developing "technical evidence" to demonstrate that the contamination will eventually go away. Exh. 16 to N. Campins Decl. In other words, Mr. Novick's testimony at trial will help establish that "natural attenuation" means doing nothing other than trying to convince regulators that nothing needs to be done. The second page of Exhibit O makes clear that ExxonMobil considers natural attention to be a "best practice" because it "can substantially reduce site costs." Exh. 16 to N. Campins Decl. Mr. Novick's testimony is relevant to the City's negligence, private nuisance, public nuisance, trespass (especially intent), defective product, failure to warn and TSCA claims.

### 4. Meena Nainan

Meena Nainan is a California Code of Civil Procedure § 2025.230 corporate representative of ExxonMobil. Exh. 17 to N. Campins Decl.[3] An environmental remediation specialist, Ms. Nainan has worked for ExxonMobil in a variety of locations throughout the United States including New Jersey, Virginia, Pennsylvania, California and Puerto Rico. 8/11/2000 Deposition at 14:6 – 17:2 (Exh. 18 to N. Campins Decl.). Ms. Nainan was deposed on August 11, 2000 in *Communities for a Better Environment vs. Unocal Corporation et al.,* Case No.

---

[3] Movants' curiously assert that Ms. Nainan was not deposed as a Representative of "ExxonMobil." *See* Movants' Memo. at 2. Mobil Corporation is a named party in this action and for convenience the parties refer to all three ExxonMobil corporate entities as "ExxonMobil." *See* Note 1, supra. Moreover, in her deposition transcript, Ms. Nainan specifically states she is employed by ExxonMobil. 8/11/2000 Deposition at 9:18 (Exh. 18 to N. Campins Decl.)

997013 (S.F. Superior Court). Ms. Nainan's deposition notice clearly stated that "the deponent is not a natural person." Exh. 17 to N. Campins Decl at p. 4. Ms. Nainan agreed to be deposed on topics related to site remediation, including Topic 2: "Discuss the testing methods available for determining if MTBE is present in ground water including whether these tests have ever been employed by or on behalf of Mobil and the approximate costs of each testing method." *Id*. at p. 5. This topic was not limited to California and is directly relevant to the City's negligence, trespass, nuisance, navigation law, and TSCA claims, because it bears on whether heritage Mobil tested for the presence of MTBE at remediation sites. This topic is also relevant to the City's failure to warn and design defect claims, as it bears on heritage Mobil's warnings to consultants and state regulatory agencies related to testing. Ms. Nainan was also deposed on the results of surveys and studies conducted by Mobil regarding MTBE in California, the number of leaking underground storage systems in California, and the identity of sites in California. *Id.* at 4-5. Because Mobil conducted such surveys and because the results of such surveys were never reported to EPA or to state regulators, it is directly relevant to the City's claim that ExxonMobil failed to report pursuant to Section 8(e) of TSCA, which is not geographically limited to New York.[4] It is also directly relevant to the City's failure to warn claim as ExxonMobil did not warn its customers,

---

[4] Section 8(e) of the Toxic Substances Control Act provides that "Any person who manufactures, processes, or distributes in commerce a chemical or mixture and who obtains information which reasonably supports the conclusion that such substance or mixture presents a substantial risk of injury to health or the environment shall immediately inform the [EPA] Administrator of *such information* unless such person has actual knowledge that the Administrator has been adequately informed of *such information*." 15 U.S.C. § 2607(e), emphasis added. The City will show that ExxonMobil failed or refused to submit reports, notices, or other information to the EPA regarding the adverse environmental or health-related impacts of the regulated substance, in this case MTBE. *See* 15 USC. § 2614(3)(B); *In re MTBE Prods. Liability Litig.*, 510 F. Supp. 2d 299, 316 (S.D.N.Y. 2007). Once the City proves that ExxonMobil withheld information from the EPA, the burden of persuasion will shift to ExxonMobil to show that it had *actual knowledge* that the EPA already was informed. *In re MTBE Prods. Liability Litig.*, 559 F. Supp. 2d 424, 434 (S.D.N.Y. 2008).

regulators, or the public of the results of its surveys which showed that MTBE was a far more prolific contaminant than other constituents of gasoline.

For example, during her deposition, Ms. Nainan testified that Sensitive Receptor Surveys performed by ExxonMobil contamination were never provided to the federal government. 8/11/2000 Deposition at 105:1 – 105:18; 105:20 – 106:11 (Exh. 19 to N. Campins Decl.). This testimony demonstrates that ExxonMobil failed to report crucial survey data regarding MTBE in violation of Section 8(e) of TSCA. Likewise, Ms. Nainan testified regarding nationwide testing requirements, including federal testing requirements and testing requirements in New Jersey and California. 8/11/2000 Deposition at 44:24 – 45:25; 46:10 – 51:11 (Exh. 20 to N. Campins Decl.). Among other things, Ms. Nainan admitted that ExxonMobil did not begin testing for MTBE in California on a routine basis until after April 1996, in response to an express directive from the State water resources board. *See, e.g.,* 8/11/2000 Deposition at 50:7 -51:13 (Exh. 20 to N. Campins Decl.). Ms. Nainan also testified about heritage Mobil's nationwide tank replacement and testing programs, including New York. *See, e.g.,* 8/11/2000 Deposition at 109:17-118:15 (Exh. 21 to N. Campins Decl.); *id.* at 118:5 (referencing New York regulations).

### 5. Thomas Milton

Thomas Milton is a Rule 30(b)(6) corporate representative of ExxonMobil. Exh. 22 to N. Campins Decl. Mr. Milton's deposition testimony establishes that he agreed to be a Rule 30(b)(6) corporate representative of ExxonMobil *after* his retirement. 3/30/2007 M. Milton Deposition at 11:21-11:23 (Exh. 23 to N. Campins Decl.). Mr. Milton therefore voluntarily and knowingly agreed to speak for ExxonMobil even though he was no longer employed there. This circumstance should be taken into account when assessing his argument that he is a "retiree" of ExxonMobil. Prior to leaving ExxonMobil, Mr. Milton was a corporate officer and had worldwide responsibilities. *See*

3/30/2007 M. Milton Deposition at 12:12-12:26 (Exh. 23 to N. Campins Decl.) ("I was the manager of Global Remediation for major projects on a worldwide basis.").  Mr. Milton's deposition testimony also establishes that he has conducted substantial in-person business in the New York area as remediation manager for ExxonMobil service stations in the New York area.  3/30/2007 M. Milton Deposition at 14:22-15:15 (Exh. 23 to N. Campins Decl.)

Mr. Milton was deposed regarding the release of MTBE into the environment by ExxonMobil and the related contamination.  Specifically, Mr. Milton testified regarding studies conducted by ExxonMobil relating to such contamination, leak detection, and contamination of public water supplies.  For example, Mr. Milton testified that ExxonMobil's electronic leak detection technologies in the late 1980s did not work very well:

Q.  What type of methods did they use for leak detection in the late 1980s?

A.  As the '80s progressed and the -- we started looking at the new equipment, fiberglass tanks came into play in the early '80s, late '70s.  There was some new leak detection equipment being produced, electronic leak detection systems for lines. There was some leak detection equipment that was also developed for tanks.  *None of it worked very well* initially because it was in the early stages of it so we were still relying primarily on inventory control, but we started to experiment somewhat with some electronic systems.

3/30/2007 M. Milton Deposition at 20:3-20:18 (Exh. 24 to N. Campins Decl.) (emphasis added).

Mr. Milton's testimony is relevant to the City's navigation law, private nuisance, public nuisance, trespass (especially intent), defective product, failure to warn, negligence, and TSCA claims.

**6. Henry Thomassen**

Henry Thomassen is a Rule 30(b)(6) corporate representative of ExxonMobil.  Exh. 25 to N. Campins Decl.  Mr. Thomassen's deposition testimony establishes that he is also a former officer of ExxonMobil, who held the title of Section Head of the Office of the Secretary.  1/16/2007 H. Thomassen Deposition 8:23-9:11 (Exh. 26 to N. Campins Decl.).  Mr. Thomassen deposition

transcript establishes that he travelled to New York, New York to provide deposition testimony in 2007. *See* H. Thomassen Deposition at 1:10-1:13 (Exh. 26 to N. Campins Decl.).

Mr. Thomassen was deposed regarding ExxonMobil's corporate structure and the identification of corporate entities and officers. (Exh. 25 N. Campins Decl.). Mr. Thomassen's testimony is important to explaining to the jury how the divisions of ExxonMobil interact with one another and how corporate decisions are made. Mr. Thomassen's testimony is relevant background information for all of the City's claims.

## III. ARGUMENT

### A. The City Needs the Corporate Representatives' Live Testimony.

As set forth above, Movants' testimony is highly relevant to the City's proof and the City needs their live testimony to prove its case against ExxonMobil. Among other things, the City needs Mr. Roman's testimony to show that ExxonMobil failed to warn customers or anyone else for that matter, about MTBE's dangerous and unusual properties. The City needs Mr. Stumpf's testimony to show that ExxonMobil took no steps in its remediation program to address the extraordinary hazards associated with MTBE. It needs Mr. Novick's testimony to establish that "natural attenuation" involves developing "technical evidence" to demonstrate that the contamination will eventually go away and essentially doing nothing. The City needs Ms. Nainan's testimony to show that heritage Mobil failed to provide crucial survey results to EPA, that it was slow in upgrading tanks and that it did not test for MTBE until it was ordered to do so. It needs Mr. Milton's testimony to show that despite ExxonMobil's claims that it was careful not to release any gasoline into the environment, leaks happened regularly and its leak detection technology did not work very well. The City needs Mr. Thomassen's testimony to help the jury make sense of ExxonMobil's complicated and sprawling corporate structure. Movants' unsupported assertion that

the information sought is "generic and readily available from other sources" is wholly meritless. *See* Movants' Memo at 9. The City has shown substantial need for their testimony.

Likewise, Movants' deposition testimony is inadequate. Movants' depositions were taken for discovery purposes. As the Court is aware, deposition testimony taken for discovery purposes is less focused and often less impactful than live testimony at trial. Moreover, it is the stated preference of the Second Circuit to have live trial testimony. *See Blackrock Inc. v. Schroders PLC*, 2007 WL 1573933, at *9 (S.D.N.Y. May 30, 2007) ("There is a preference in this Circuit for live trial testimony. This preference is even stronger in cases such as this one where the jury's ability to assess the credibility of the witnesses will be particularly important.") (citing *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 30 (2d Cir. 2002)); *Kolb v. Suffolk County*, 109 F.R.D. 125, 127 (E.D.N.Y. 1985) (Scheindlin, M.J.) ("Live testimony is always preferred as it provides the trier of fact the opportunity to observe the demeanor of the witness." (citing *United States v. IBM*, 90 F.R.D. 377, 384 (S.D.N.Y. 1981)). As the distinguished Second Circuit jurist, Judge Learned Hand noted, "[T]he deposition has always been, and still is, treated as a substitute, a second-best, not to be used when the original is at hand." *Napier v. Bossard*, 102 F.2d 467, 469 (2d Cir. 1939). Indeed, the 1996 Rules Advisory Committee notes to Rule 43 note that "the very ceremony of trial and the presence of the fact-finder may exert a powerful force for truthtelling. The opportunity to judge the demeanor a witness face-to-face is accorded great value in our tradition." *Id.* Movants' assertion that the discovery deposition testimony is therefore somehow adequate is meritless.

Movants' citation to the out-of-circuit decision in *Square D Co. v. Breakers Unlimited, Inc.*, 2009 WL 1702078, * 2 (S.D. Ind. June 11, 2009) to support their assertion that deposition testimony may be adequate in certain situations is misplaced. The Second Circuit has stated a clear preference

for live testimony.  Similarly, the dictum in Square D is expressly limited to witnesses who have "very little to say."  *See id.*  As explained above, each of the corporate representatives have highly relevant testimony.

Likewise, Movants are simply wrong when they suggest that the City had the opportunity to take their trial deposition.  In fact, pursuant to Case Management Order No. 19, the City was precluded from taking a trial deposition of these individuals on the same topics as the discovery depositions.  *See id.* at § I ("Discovery of any particular party on a given topic shall not be duplicated later by another party in a separate case except on good cause shown.") (Exh. 27 to Campins Decl.)

Finally, the Court should disregard Movants' gratuitous call for a limitation on the scope of their testimony at trial as not properly before the Court.  Movants' status as corporate representatives is relevant to the propriety of service upon them at locations more than 100 miles from the district.  Movants' request that the Court limit the parties' questioning at trial has nothing to do with the propriety of service on them.  Ironically, Movants claim to bring the motion in their individual capacity, but in the same breath advance a position which would only benefit ExxonMobil and for which they would lack standing if they brought it only in their personal capacity.  Their assertion of a legal position for the benefit ExxonMobil is only further proof that they are instrumentalities of ExxonMobil.

B. **The Court's June 24, 2009 Subpoena Order Correctly Applied the Law.**

Apart from unsupported derogatory statements regarding the Subpoena Order, *see* Movants' Memo at 7 ("Case law in this area is sparse, presumably because few courts have been confronted with such an unsupportable application of the rules."), Movants offer nothing more than a few inapplicable out-of-circuit legal authorities in support of their attempt to undermine it.

1. **The Court Correctly Held that Parties and Officers May Be Compelled to Travel More than 100 Miles.**

Movants contend that even parties or officers of a party may not be compelled to travel more than 100 miles. This proposition was expressly rejected by the Court in the Subpoena Order: "The majority of courts to reach the issue have determined that this rule, by reverse inference, permits the service of a subpoena on a party or a party's officer who is beyond the 100 mile radius, provided no undue prejudice results. This Court Agrees." *Id.* at 2 (*citing In re Vioxx Prods. Liab. Lit.*, 438 F. Supp. 2d 664, 666 (E.D. La. 2006) (collecting cases). Neither Federal Rule of Civil Procedure 45 nor the two cases cited by Movants, *Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349 (S.D.N.Y. 2009) and *Price Waterhouse LLP v. First Am. Corp.*,182 F.R.D. 56, (S.D.N.Y 1998), compel or even argue for a contrary result.

*Capitol Records* involved a motion to transfer venue and it was merely considering the various factors, including availability of witnesses, when it noted that "it is often presumed that employees of a party are available in any venue" but that some courts have held that "non-officer employees of a party are to be considered non-party witnesses." 611 F. Supp. 2d at 366-67. Movants' citation to it as an authority holding that non-officer employees are non-parties' is, therefore, incorrect and misleading. Likewise, the case cited by *Capitol Records* for that proposition, *Herbert Ltd. P'ship v. Elec. Arts, Inc.*, was again, merely noting the disagreement among Courts. 325 F. Supp. 2d 282, 290 (S.D.N.Y. 2004) (citing cases).

Movants' citation to more than decade old case of *Price Waterhouse LLP*, is likewise misplaced. *Price Waterhouse LLP* involved a deposition subpoena of a foreign company under a previous version of Rule 45. Then, as now, Rule 45 provides different procedures for deposition subpoenas and trial subpoenas. Although not applicable here because as an MDL court the Court has nationwide service of process for depositions, *see* 28 U.S.C. § 1407(b), Rule 45 normally

requires deposition subpoenas to issue from the district where the deposition is to be taken, *see* Fed. R. Civ. Pro. 45(a)(2)(B), while it requires that trial subpoenas issue from the location at which trial is to be held, *see* Fed. R. Civ. Pro. 45(a)(2)(A).[5] The holding in *Price Waterhouse LLP* is therefore distinguishable for that reason alone. 182 F.R.D. at 62-64. Furthermore, the subpoenaed entity in that case was a *non-party*, PWC-UK. *Id.* at 61. Movants' are the corporate representatives of a party in this litigation. Movants' citation to *Price Waterhouse LLP* is therefore misplaced. 182 F.R.D. at 62-64.

Finally, unlike the June 24, 2009 Opinion, neither *Capitol Records* nor *Price Waterhouse LLP* are not controlling authority.

2. **Pursuant to Rule 30(b)(6) and Rule 45 Movants' Are Officers and Parties.**

Movants' assertion that Rule 45(c) contains "no exception for Rule 30(b)(6) designees" fundamentally misunderstands the Subpoena Order. The Court did not hold that that Rule 45(c) contained such an exception, but rather that Rule 30(b)(6) designees *are* parties and parties' officers, two categories for which Rule 45(c) does contain express exceptions. *See* Fed. R. Civ. Pro. 45(c)(3)(A)(ii) (Not mandatory for court to quash subpoena requiring "a party" or "a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person."). Specifically, the Court correctly held that 30(b)(6) witnesses are parties and officers of the corporation. *See id.* at 2 ("plaintiffs may serve subpoenas on ExxonMobil or its officers. This includes any 30(b)(6) witnesses designated by ExxonMobil and directors of the corporation.").

It is quite telling that in their memorandum, Movants fail to cite any language from Rule

---

[5] Needless to say, it is far easier to move a deposition, than it is to move a trial. Any balancing of burdens in *discovery* disputes, therefore, is not directly applicable here. *Price Waterhouse* was concerned with discovery burdens.

30(b)(6).  This is likely because it directly contradicts their position:

> **(6) Notice or Subpoena Directed to an Organization.**  In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination.  *The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf*; and it may set out the matters on which each person designated will testify.  A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

Fed. R. Civ. Pro 30(b)(6) (emphasis added).[6]  The text of Rule 30(b)(6) therefore makes plain that 30(b)(6) depositions are conducted (1) on behalf of the corporation and (2) the corporation speaks through "one or more officers, directors, or managing agents, or . . . other persons who consent to testify on its behalf."  *Id.*  Accordingly, by definition, Movants are either officers of ExxonMobil or parties who expressly consented to testify on ExxonMobil's behalf, as the voice of ExxonMobil.  The language of Rule 30(b)(6) could not be plainer.

Movants' declarations contain no statements that ExxonMobil somehow fraudulently induced Movants into testifying on its behalf.  Instead, from the declarations, it is clear that Movants agreed to testify on behalf of ExxonMobil and with knowledge that their testimony would bind ExxonMobil.  *See, e.g.*, Decl. of N. Meena at ¶ 5 ("It was explained to me at the time that I would

---

[6] The operative language was nearly identical prior to the 2007 stylistic amendments to the Federal Rules:  "(6) A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate *one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify*. A subpoena shall advise a non-party organization of its duty to make such a designation. The persons so designated shall testify as to matters known or reasonably available to the organization. This subdivision (b)(6) does not preclude taking a deposition by any other procedure authorized in these rules."  Fed. R. Civ. Pro 30(b)(6)(2006).

be testifying on behalf of Mobil Oil Corporation and that my answers would be binding on the corporation"); Decl. of T. Milton at ¶ 5 (same); and Decl. of H. Thomassen at ¶ 5 (same).[7]

3. **The Two Cases Cited By Movants Do Not Support Movants' Position and Are Not Controlling.**

Movants tellingly omit key language from their primary case, *Square D Co. v. Breakers Unlimited, Inc*., in their memorandum to the Court. Movants state that *Square D* held that if the employees "were to move to quash the subpoenas, their motions would be well-taken and, in fact, the granting of those motions would be mandatory under Federal Rule of Civil Procedure 45 (c)(3)(A)(ii)." 2009 WL 1702078, * 1. This is not the entire holding. The Movants omitted the following crucial language:

> If Snyder and Garner were simply fact witnesses in this case, that would be the end of the inquiry. However, they are not; rather, they were Square D's corporate designees under Federal Rule of Civil Procedure 30(b)(6), and it is in that capacity that Breakers wishes to call them at trial. Essentially, then, Breakers is seeking to call Square D itself to testify through the two individuals that Square D has designated to speak for it on the witness stand in this case.
>
> In that sense, then, the relevant question essentially is whether a party may be compelled to attend trial and testify if that party is not subject to being subpoenaed under Rule 45. While the Court recognizes the cases cited by Square D that suggest the contrary, the Court does not believe that Rule 45-or any other Federal Rule of Civil Procedure-provides the last word regarding the situation here.

*Id.* at *1. In fact, directly contrary to Movants' suggestion, the court in *Square D* went on to hold that pursuant to its inherent authority over the parties, "the Court has the authority to require Square D to produce Garner and Snyder to testify at trial." *Id.* at *2. *Square D* therefore supports the City's position, in that it finds that the two employees at issue, Garner and Snyder, were made parties that could be compelled to testify.

---

[7] Although the three declarations subject to the motion to strike are inadmissible and therefore the City does not address them, they similarly contain no language that the Movants were fraudulently induced to testify.

The other out-of-circuit case cited by Movants in support of their position, *Chao v. Tyson Foods, Inc.*, is distinguishable on its face. 255 F.R.D. 556 (N.D.Ala. 2009). The Court in *Chao* expressly adopted the minority view that a subpoena could not issue more than 100 miles from the courthouse to compel anyone including parties or officers to attend trial. *Id.* at 559. This position was directly rejected by the Court in the Subpoena Order. *See id* at 2 ("The majority of courts to reach the issue have determined that this rule, by reverse inference, permits the service of a subpoena on a party or a party's officer who is beyond the 100 mile radius, provided no undue prejudice results. This Court Agrees."); *see also id* (citing cases).

### 4. Movants' Policy Based Arguments and Hardship Claims Should Be Rejected.

Movants claim that requiring them to testify will somehow chill the ability of parties to get Rule 30(b)(6) testimony is clearly overblown. Parties do not have a choice. Rule 30(b)(6) requires that they produce knowledgeable witnesses to testify on their behalf. If parties fail to produce knowledgeable witnesses, they will be subject to sanction. There is no reason to believe that parties will fail to comply with the law.

Movants grossly miscite *Black Horse Lane Association v. Dow Chemical Corp.*, 228 F.3d 275, 304 (3d Cir. 2000). Contrary to Movants' implication, *Black Horse* demonstrates that there *can be* no chilling effect on production of witnesses for depositions pursuant to Rule 30(b)(6). In *Black Horse*, a corporation produced for a deposition pursuant to Rule 30(b)(6) a witness with no knowledge, or no willingness to answer questions. *Id.* at 303-05. The court determined that the witness's inability to give useful information constituted "fail[ure] to appear," under Rule 37(d). *Id.* at 304. The corporation was sanctioned for such a failure. *Id.* at 304-05. Thus, Movants' scenario, in which a corporation will be reluctant to produce proper witnesses for 30(b)(6) depositions rings false, as corporations playing such games will be subject to sanctions. *See also*

*Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 268-69 (2d Cir. 1999) (prohibiting witnesses from testifying at trial when they had not been proffered as witnesses pursuant to a 30(b)(6) deposition notice on same topic and the person proffered was not the most knowledgeable on that topic).

Likewise, Movants' claims of "extreme hardship" are overblown and should not be credited. The City offered to minimize the time Movants would need to be in New York for trial and to pay their travel and lodging, but Movants rejected this offer. Moreover, save for Ms. Nainan, all of the Movants live a short three hour and fifteen minute train ride from New York. Exh. 28 to N. Campins Decl. With regard to Ms. Nainan, her deposition testimony establishes that travel is a regular part of her job. *See* Exh. 18 to N. Campins Decl. at p. 17:1 (stating that at the time of her deposition in California, she was working in Puerto Rico). The City will work diligently with Ms. Nainan's counsel to ensure that any inconvenience to her is minimized. Furthermore, Mr. Stumpf's deposition testimony establishes that part of his job at ExxonMobil is to be a professional witness and to provide nationwide litigation support for ExxonMobil (including New York) and that he has testified over forty times. *See* Exh. 10 to N. Campins Decl. Mr. Stumpf is also being called by ExxonMobil to testify live. (Exh. 9 to N. Campins Decl). Likewise, for the convenience of ExxonMobil's counsel, Messrs. Thomassen and Novick travelled to New York, New York to provide deposition testimony in 2007. (Exhs. 14, 26 to N. Campins Decl). Because they omit these crucial facts from their motion, Movants' claims of hardship should not be credited and the City is prepared to minimize the burden associated with their testimony.

**C. Meena Nainan Is an Officer or Party of ExxonMobil: During the June 25 Conference The Court Held that There is No Difference With State Court Procedures.**

Movants omit to tell the Court that during the June 25, 2009 status conference, the Court found that its June 24, 2009 ruling was not limited to Federal Rule 30(b)(6) witnesses. Here is the

applicable colloquy:

> MR. SHER There's a handful, and I believe that it is less than five of Exxon Mobil related witnesses who were produced as the equivalent of 30(b)(6)'s in prior state court actions and we assume we can treat them, because under the deposition protocol of CMO6 –

> THE COURT: You're using them. Their testimony is standing as 30(b)(6).

> MR. SHER: Right. So to the extent we subpoena those witnesses as well, it would be for appearance here.

> THE COURT: If you're using the transcript or the testimony they gave in another matter where they were produced by Exxon as 30(b)(6), that only seems fair again.

> MR. PARDO: They're not 30(b)(6) in this case.

> THE COURT: But Mr. Pardo, the testimony they gave --we have a CMO that says we don't want to repeat things that have been done in other actions. If they are speaking for Exxon, if they're speaking as a corporation with a voice, they should be here.

6/25/2009 Hearing Transcript at 82:18-83:10 (attached as Exh. 2 to N. Campins Decl.).

With regard to Ms. Nainan, California Code of Civil Procedure § 2025.230 contains a substantially similar phrase to Rule 30(b)(6) and provides that the organization "shall designate and produce at the deposition those of *its officers, directors, managing agents, employees, or agents who are most qualified to testify on its behalf*." Cal. Code Civ. P. § 2025.230 (emphasis added).[8] Accordingly, Nainan is either an officer of ExxonMobil or a party who expressly consented to testify on ExxonMobil's behalf. For the reasons set forth above in Section III.B., the Court's

---

[8] In 2000, the language of California Code of Civil Procedure § 2025(d)(6) (the California Code was subsequently renumbered) read: "If the deponent named is not a natural person, the deposition notice shall describe with reasonable particularity the matters on which examination is requested. In that event, the deponent shall designate and produce at the deposition those of *its officers, directors, managing agents, employees, or agents who are most qualified to testify* on its behalf as to those matters to the extent of any information known or reasonably available to the deponent. A deposition subpoena shall advise a nonparty deponent of its duty to make this designation, and shall describe with reasonable particularity the matters on which examination is requested." Cal. Code Civ. P. § 2025(d)(6) (2000) (emphasis added).

extension of its June 24, 2009 ruling to state court equivalents is well-supported by the law.

**D. Milton's Status as a Former Employee Provides No Basis for Excusing Him.**

Mr. Milton's deposition testimony establishes that he agreed to be a Rule 30(b)(6) corporate representative of ExxonMobil *after* his retirement. Exh. 23 to N. Campins Decl. Milton's declaration also establishes that he knew he was agreeing to testify on ExxonMobil's behalf and to provide binding testimony after his retirement. Decl. of T. Milton at ¶ 5. Mr. Milton therefore voluntarily and knowingly agreed to speak for ExxonMobil even though he retired from his other position with the company. Pursuant to Rule 30(b)(6) he is an officer and party. *Id.* There is no basis to excuse him from testifying.

**E. Thomassen's Status as a Former Employee Provides No Basis for Excusing Him.**

Mr. Thomassen's declaration establishes that not only did he knowingly agree to testify on behalf of ExxonMobil, Decl. of H. Thomassen at ¶ 5, and his deposition establishes that he travelled to New York, New York to do so in January 2007. Exh. 26 to N. Campins Decl. If Mr. Thomassen can travel to New York for the convenience of ExxonMobil's counsel, surely he can travel to New York for the convenience of the Court and the jury. When Mr. Thomassen agreed to do that, there is no evidence from his declaration that he was misled. Pursuant to Rule 30(b)(6) he is an officer and party. *Id.* Mr. Thomassen lives a short train ride away and the City will work with him to minimize any burden associated with testifying.

**F. In the Alternative, Mr. Roman Is a Current Officer of ExxonMobil with Nationwide Responsibilities.**

As an alternative ground for compelling Mr. Roman's attendance, Mr. Roman's deposition testimony establishes that even apart from his Rule 30(b)(6) testimony, he is an officer of ExxonMobil with nationwide responsibilities (including New York). *See* Exh. 5 to N. Campins Decl. Mr. Roman could therefore be compelled to testify even if he had never agreed to be a

Rule 30(b)(6) designee. *See In re Vioxx Prods. Liab. Lit.*, 438 F. Supp. 2d 664,666 (E.D. La. 2006) (collecting cases).[9]

## IV. CONCLUSION

For the reasons set forth above, the Court should deny the Motion Of Meena Nainan, Thomas Milton, Norman Novick, Michael Roman, Gary Stumpf, and Henry Thomassen to Quash Plaintiff's Trial Subpoenas in its entirety.


Dated:  San Francisco, California
       July 20, 2009

                    MICHAEL A. CARDOZO
                    Corporation Counsel of the City of New York
                    100 Church Street
                    New York, New York 10007
                    (212) 788-1578

                    */s/ NICHOLAS G. CAMPINS*
                    VICTOR M. SHER *(pro hac vice)*
                    TODD E. ROBINS *(pro hac vice)*
                    JOSHUA G. STEIN *(pro hac vice)*
                    LESLEY E. WILLIAMS (LW8392)
                    NICHOLAS G. CAMPINS *(pro hac vice)*

                    SHER LEFF LLP
                    450 Mission Street, Suite 400
                    San Francisco, CA 94105
                    (415) 348-8300

                    *Attorneys for Plaintiff City of New York*

---

[9] In the event that the Court finds that a Movant cannot be compelled to travel to the courthouse to testify, the City should be allowed to call that Movant remotely for the reasons articulated in the City's June 15 letter brief to the Court. *See* Exh. 29 to N. Campins Decl.