UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

This document pertains to:

*City of New York v. Amerada Hess Corp. et al.*,
Case No. NY-04-CV-03417

Master File No. 1:00-1898
MDL 1358 (SAS)
M21-88

# EXXON MOBIL CORPORATION'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF CITY OF NEW YORK'S MOTION TO STRIKE THE SUPPLEMENTAL EXPERT REPORT OF THOMAS MAGUIRE AND TO EXCLUDE EVIDENCE OR ARGUMENT THAT A CITY-OWNED PROPERTY IS THE SOURCE OF MTBE CONTAMINATION AT STATION 6

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT .................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 1

ARGUMENT .................................................................................................................. 4

    I. DEFENDANT PROPERLY FULFILLED ITS OBLIGATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 26(e)(2) TO SUPPLEMENT MR. MAGUIRE'S EXPERT REPORT ................................................................................................. 4

        A. Mr. Maguire's Supplemental Report Did Not Exceed Any Permissible Scope. ........... 4

        B. Mr. Maguire's Supplemental Report Was Timely In Spite of Delayed Production of Mr. Terry's Modeling Files. ................................................................................. 7

    II. THERE IS ABSOLUTELY NO BASIS FOR PRECLUSION HERE. ........................... 10

    III. PLAINTIFF'S *MOTION IN LIMINE*, AS TITLED, IS UNTIMELY AND OVERLY BROAD ............................................................................................................... 11

CONCLUSION ............................................................................................................ 14

# TABLE OF AUTHORITIES

## CASES

*City of New York v. Amerada Hess Corp. (In re MTBE Prods. Liab. Litig.)*,
  No. 04-CV-3417, slip. op. (S.D.N.Y. June 20, 2009) ............... 7, 10, 12, 13

*Cullen v. Village of Pelham Manor*, 2008 U.S. Dist. LEXIS 109037 (S.D.N.Y. Nov. 25, 2008) ............... 5, 10

*DiPirro v. United States*, 43 F. Supp. 2d 327 (W.D.N.Y. 1999) ............... 8, 10

*Ebewo v. Martinez*, 309 F. Supp. 2d 600 (S.D.N.Y. 2004) ............... 10

*Houlihan v. Invacare Corp.*, 2006 U.S. Dist. LEXIS 32980 (E.D.N.Y. May 24, 2006) ............... 11

*Johnson Electric North America Inc. v. Mabuchi Motor America Corp.*, 77 F. Supp. 2d 446 (S.D.N.Y. 1999) ............... 5, 10

*Lorme v. Delta Airlines*, 251 Fed. Appx. 691 (2d Cir. 2007) ............... 10

*Sandata Technologies, Inc. v. Infocrossing, Inc.*, 2007 U.S. Dist. LEXIS 85176 (S.D.N.Y Nov. 11, 2007) ............... 5

*State of New York v. The Shinnecock Indian Nation*, 2006 U.S. Dist. LEXIS 97248 (E.D.N.Y. Oct. 13, 2006) ............... 10

## RULES

Fed. R. Civ. P. 26(a) ............... 7

Fed. R. Civ. P. 26(e) ............... 5, 7

## PRELIMINARY STATEMENT

Plaintiff's motion conflates two distinct issues – (1) an expert's continuing obligation to supplement his or her opinions under Federal Rule of Civil Procedure 26(e), and (2) this Court's order permitting defendants to respond to Mr. David Terry's March 23, 2009 Rebuttal Report. Plaintiff City of New York ("City") would prefer, of course, to focus solely on the latter and thus to ignore one glaring, overwhelming problem of its own making: Mr. Terry's modeling files and simulations were produced weeks **after** Mr. Maguire was required to serve his report.[1] Unwilling to risk a subsequent finding that it had not complied with Rule 26, Defendant Exxon Mobil Corporation ("Defendant") served the Supplemental Expert Report of Thomas F. Maguire on June 1, 2009 – at the time, still a month and a half ahead of trial (and, indeed, more than two months ahead of the current trial date). Contrary to Plaintiff's allegations, this report was neither untimely nor beyond the scope permitted by this Court, but rather served to address both of the open issues listed above.

## STATEMENT OF FACTS

CMO 47 required Mr. Maguire to submit his Phase II report – *i.e.*, his response to the modeling performed by the City's expert, Mr. Terry – on March 9, 2009. This report was timely served. However, in his report, Mr. Maguire noted that Plaintiff's hydrogeologic experts, including Mr. Terry, "rely upon the application of computer models" and that, as of March 9th, "electronic files regarding these analyses [had] not been provided." *See Declaration of Lisa*

---

[1] There is no dispute of fact. Terry produced the first wave of his modeling files and simulations on March 23, 2009, two weeks after Mr. Maguire's initial report was due, and continued to produce modeling files through May 14, 2009. *See Plaintiff City of New York's Memorandum of Law in Support of Its Motion to Strike the Supplemental Report of Thomas Maguire and to Exclude Evidence or Argument That a City-Owned Property is the Source of MTBE Contamination at Station 6* ("Pl.'s Mem"), at 4 n.2 & n.3.

*Gerson in Support of Defendant's Opposition to Plaintiff City of New York's Motion to Strike the Supplemental Report of Thomas Maguire and to Exclude Evidence or Argument That a City-Owned Property is the Source of MTBE Contamination at Station 6* ("Gerson Decl."), Ex. A (*March 9, 2009 Expert Report of Thomas Maguire*) at 4. Mr. Maguire further explained:

> In the absence of these files a comprehensive assessment of the methodology and attendant opinions offered by Cohen/Bell and Terry cannot presently be made. Accordingly, **it will be necessary (and therefore I reserve the opportunity) to supplement the opinions expressed herein**, based upon a review of these electronic files.

*Id.* (emphasis added). Simply put: the answer to Plaintiff's contention about untimeliness is that it was impossible for Mr. Maguire to provide these supplemental opinions in his March 9th report because Plaintiff had yet to produce the computer simulations or data on which these opinions are based. Plaintiff cannot "sandbag" Defendant with a late production of data required by our expert, and then complain (and move to strike) that expert when he is finally permitted to see, analyze and opine on that production.

As reflected in his March 9th report, the crux of Mr. Maguire's opinions was, and still remains, that Mr. Terry's analysis "is highly speculative and unreliable, in part, for the following reasons: a) the fidelity of the contaminant transport model was not tested through a calibration or validation process; [and] b) a robust sensitivity analysis was not conducted ...."[2] *Id.* at 5-6; *see also id.* at 10, 12-13; *compare* Gerson Decl., Ex. B (*June 1, 2009 Supplemental Expert Report of Thomas Maguire*) at 1-2 ("Based upon my analysis of the newly produced files and materials

---

[2] Mr. Maguire was able to perform a partial analysis "in the limited instances where Mr. Terry provides simulated MTBE concentrations prior to 2009...." *Gerson Decl.*, Ex. A at 5-6. The referenced simulated MTBE concentrations were not the electronic files required for a complete analysis, but rather two graphics appended to Mr. Terry's report at figures 14 and 15. *Id.* at 17. From these figures, Mr. Maguire **attempted** a calibration and validation analysis, although noting that electronic files were required to perform a comprehensive analysis. *Id.* at 17 n.12.

supplied by Mr. Terry since March 9, 2009, it is clear that his models, simulations and predictions do not accurately reflect observed (known) conditions.... [T]hese errors ... make Mr. Terry's models scientifically unreliable and, in part, for this reason they cannot accurately predict the future concentration or duration of MTBE in the City's wells during the period 2009 through 2040."). However, Mr. Maguire was unable to perform a comprehensive analysis supporting this opinion – *i.e.*, the calibration and validation of Mr. Terry's model – until Mr. Terry's electronic files were produced. *See Gerson Decl.*, Ex. A at 17 & n.12 ("Without Mr. Terry's electronic files, a critical analysis of his models is limited to interpretation of the text and graphs included in his report. A more comprehensive analysis of Mr. Terry's models can be conducted once the electronic files have been received."); *see also id.* at 5-6, 10, 12-13; *Gerson Decl.*, Ex. C (*May 4, 2009 Deposition of Thomas Maguire*) at 83:24-84:18 ("the majority of the work that I'm doing is reviewing these modeling files that were produced by Mr. Terry ... after my report was issued, almost a month after. ... [N]ot having the opportunity to look at the modeling files, I reserved opinions with respect to any detailed analysis I would conduct of those modeling files.").

**After** Mr. Maguire's March 9th report was submitted, the City did two things. First, on March 23, 2009, it produced a rebuttal report from Mr. Terry that disclosed new drought simulation opinions for Wells 5 and 22 – this was the topic of the April 24th conference. The Supplemental Report submitted by Mr. Maguire on June 1st addresses those new drought simulations and, to that extent, is not challenged by the City. *See Pl.'s Mem.* at 2.

Second, beginning on March 23rd, the City **started** to produce the underlying models on which Mr. Terry's earlier analyses and opinions were based – *i.e.*, the information Mr. Maguire did not have at the time his report was due on March 9th. *Id.* at 4 n.2. Moreover, the modeling

files pertaining to Mr. Terry's Rebuttal Report were not served until March 30th, *id.*, and **were still being supplemented by the City as late as May 14**. *Id.* at 4 n.3; *see also Gerson Decl.*, Ex. D (*May 14, 2009 Ltr. From D. Greene to J. Pardo*) at 2; *Gerson Decl.*, Ex. B at 1 (Mr. Maguire reported: "Mr. Terry produced the following materials after issuance of my March 9, 2009 report: .... b) Mr. Terry's electronic modeling files, produced on March 29, 2009 ... d) supplemental electronic modeling files prepared by Mr. Terry and produced on May 14, 2009." This report is, therefore, a supplement to my January 23, 2009 and March 9, 2009 reports."). These productions ultimately comprised more than a terabyte (1,000 gigabytes) of data – a massive amount of information for Mr. Maguire to work through in the two weeks separating the final production of Mr. Terry's modeling files and Maguire's supplemental report.

Ultimately, having finally received the electronic files that the City had yet to produce at the time his March 9th report was due, Mr. Maguire delivered on his statements and in fact performed the analysis he was prohibited from conducting previously. These were **not** new opinions, they were a more detailed explanation of his original opinions served once Mr. Maguire finally had the information necessary to provide that detail.

## ARGUMENT

### I. DEFENDANT PROPERLY FULFILLED ITS OBLIGATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 26(e)(2) TO SUPPLEMENT MR. MAGUIRE'S EXPERT REPORT.

#### A. Mr. Maguire's Supplemental Report Did Not Exceed Any Permissible Scope.

While Plaintiff would like to focus on a single statement made at the April 24, 2009 status conference, the permissible scope of Mr. Maguire's report is only partly dictated by the Court's ruling on that day – *i.e.* the portion of his report responding to Mr. Terry's drought simulations. The scope of Mr. Maguire's duty to supplement his original disclosures, however,

is dictated by Federal Rule of Civil Procedure 26(e). In an abundance of caution, seeking only to avoid the very penalty Plaintiff now requests, Defendant submitted Mr. Maguire's supplemental report just two weeks after receiving the final production of Mr. Terry's modeling files. Defendant should not be penalized for judiciously combining Mr. Maguire's response to the drought simulations with his supplemental report independently required under Rule 26.

A party "**must supplement** or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect...." Fed. R. Civ. P. 26(e)(1). In the context of an expert witness, a "party's duty to supplement extends both to information included in the report and to information given during the expert's deposition." Fed. R. Civ. P. 26(e)(2); *see also Sandata Techs., Inc. v. Infocrossing, Inc.*, 2007 U.S. Dist. LEXIS 85176, at *11 (S.D.N.Y. Nov. 11, 2007) (recognizing that duty to supplement may arise "if the expert subsequently learns of information that was **previously unknown or unavailable**" (emphasis added)).

While preclusion of an expert's opinions is a "drastic remedy," it still was an outcome that Defendant had no wish to risk. *See, e.g., Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*, 77 F. Supp. 2d 446, 458 (S.D.N.Y. 1999) ("refusing to admit evidence that was not disclosed in discovery is a drastic remedy and will apply only in situations where the failure to disclose represents a flagrant bad faith and callous disregard of the rules"). Therefore, having received **previously unavailable** information – Mr. Terry's modeling files – Mr. Maguire sought to do exactly what is required of him under Rule 26. His supplemental report simply provided further detail to his initial report, which responded (as best it could given the lack of files at the time) to Mr. Terry's modeling. *See Cullen v. Vill. of Pelham Manor*, 2008 U.S. Dist. LEXIS 109037, at *58 n.16 (S.D.N.Y. Nov. 25, 2008) (denying sanctions for allegedly untimely

is dictated by Federal Rule of Civil Procedure 26(e). In an abundance of caution, seeking only to avoid the very penalty Plaintiff now requests, Defendant submitted Mr. Maguire's supplemental report just two weeks after receiving the final production of Mr. Terry's modeling files. Defendant should not be penalized for judiciously combining Mr. Maguire's response to the drought simulations with his supplemental report independently required under Rule 26.

A party "**must supplement** or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect...." Fed. R. Civ. P. 26(e)(1). In the context of an expert witness, a "party's duty to supplement extends both to information included in the report and to information given during the expert's deposition." Fed. R. Civ. P. 26(e)(2); *see also Sandata Techs., Inc. v. Infocrossing, Inc.*, 2007 U.S. Dist. LEXIS 85176, at *11 (S.D.N.Y. Nov. 11, 2007) (recognizing that duty to supplement may arise "if the expert subsequently learns of information that was **previously unknown or unavailable**" (emphasis added)).

While preclusion of an expert's opinions is a "drastic remedy," it still was an outcome that Defendant had no wish to risk. *See, e.g., Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*, 77 F. Supp. 2d 446, 458 (S.D.N.Y. 1999) ("refusing to admit evidence that was not disclosed in discovery is a drastic remedy and will apply only in situations where the failure to disclose represents a flagrant bad faith and callous disregard of the rules"). Therefore, having received **previously unavailable** information – Mr. Terry's modeling files – Mr. Maguire sought to do exactly what is required of him under Rule 26. His supplemental report simply provided further detail to his initial report, which responded (as best it could given the lack of files at the time) to Mr. Terry's modeling. *See Cullen v. Vill. of Pelham Manor*, 2008 U.S. Dist. LEXIS 109037, at *58 n.16 (S.D.N.Y. Nov. 25, 2008) (denying sanctions for allegedly untimely

supplemental expert disclosure that "expand[ed] upon the conclusions in [the] expert report and render[ed] it more complete"). **These were not new opinions.** *Compare Gerson Decl.*, Ex. A at 5-6, *with Gerson Decl.*, Ex. B at 1-2. Rather, Mr. Maguire was finally able to provide the comprehensive analysis, based specifically on Mr. Terry's modeling files, that he could not previously perform. Specifically, as promised, Mr. Maguire completed the validation and calibration exercises he was previously unable to perform because the City had not provided the underlying data. *See Gerson Decl.*, Ex. B at 1-2. Had Mr. Maguire simply waited to express the reasoning and detail contained in the June 1st report for the first time at trial, Defendant has no doubt that Plaintiff would have jumped up to object.

Plaintiff has argued also that Mr. Maguire's Supplemental Report "hardly mention[ed] the drought simulation for wells 5 and 22." *Pl.'s Mem.* at 2. The volume of material, or lack thereof, that Defendant relies upon to respond to Mr. Terry's drought simulations hardly is relevant to whether the supplemental report is objectionable. Regardless, what Plaintiff fails to acknowledge in its motion, but admitted at the April 24th conference, is that there are numerous aspects to Mr. Terry's drought simulations; Mr. Maguire responded to each of these, although perhaps not explicitly labeling them as such. At the April 24th conference the Court explored the scope of the drought simulations and expressed concern about a number of the changes in Mr. Terry's March 23rd Rebuttal Report:

> THE COURT: In some ways I am troubled, I was troubled. We haven't even talked about change in capture zones. That's why I keep trying to pin Mr. Greene down as to what in the world is the report. There are so many changes with respect to the new analysis of 5 and 22 that you need to commit.
>
> \*\*\*
>
> You're saying all the other things I pointed out, such as the change in capture zone, the additional sites, eliminating sites, that's all part of the drought analysis?

> MR. GREENE: Yes, that's correct, it's all part of the drought analysis.
>
> THE COURT: How about the changing of the data inputs, like unsaturated thickness, velocity, heads, saturated thickness, MTBE percentage values, MTBE contaminants? These seem changed too.
>
> MR. GREENE: I can take those one at a time.
>
> THE COURT: Just tell me whether those changes are part of the drought.
>
> MR. GREENE: Part of the drought. Everything for 5 and 22 was part of the drought simulation, everything.

*Gerson Decl.*, Ex. E (*Transcript of April 24, 2009 Court Conference*) at 63:2-64:12. Admittedly, Mr. Maguire's June 1st Supplemental Report addressed these issues with respect to Station 6 as well. As explained above, this supplemental work was performed as part of the calibration and validation exercises Mr. Maguire previously had performed, but for which he (at that time) lacked the requisite modeling files, and as such, supplementation was required under Rule 26. At minimum, the supplementation of Mr. Maguire's original opinions was a courtesy to Plaintiff keeping with the spirit and objectives of Rule 26 – *i.e.*, full disclosure.

### B. Mr. Maguire's Supplemental Report Was Timely In Spite of Delayed Production of Mr. Terry's Modeling Files.[3]

Rule 26(e)(2) requires an expert to provide supplementation "by the time the party's pretrial disclosures under Rule 26(a)(3) are due," – *i.e.* at least 30 days prior to trial. Fed. R. Civ. P. 26(e)(2), 26(a)(3); *see also City of New York v. Amerada Hess Corp. (In re MTBE Prods. Liab. Litig.)*, No. 04-CV-3417, slip. op. at 11, 20 (S.D.N.Y. June 20, 2009) (the expert's

---

[3] Plaintiff states that "[t]he underlying modeling files for Mr. Terry's ... rebuttal report were produced in strict conformity to the Expert Discovery Protocol." *Pl.'s Mem.* at 4. While that may be true with respect to the initial production of files, Plaintiff cannot avoid the fact that files still were being produced on **May 14, 2009**. *Id.* at 4 n.3. Plaintiff's characterization of these files as containing "minor changes" is misleading and does not negate the fact that Mr. Maguire was presented with a huge quantity of new electronic files only two weeks prior to submitting his supplemental report (and more than two months after his initial report was due).

supplemental declaration "was submitted approximately thirty days after he discovered the problem, and more than thirty days before trial. There has been no egregious delay, prejudice or bad faith involved."). The intent behind Rule 26's strict supplementation requirement is "to eliminate unfair surprise to the opposing party." *DiPirro v. United States*, 43 F. Supp. 2d 327, 340 (W.D.N.Y. 1999). On the day that Defendant served Mr. Maguire's supplemental expert report, trial was a month and a half away, and Mr. Maguire had received the last of Mr. Terry's modeling files only two weeks prior. *See Gerson. Decl.*, Ex. F (*Transcript of June 2, 2009 Status Conference*) at 99 (noting the then-current trial date of July 13th); *Gerson Decl.*, Ex. D at 2.

Moreover, the content and timing of Mr. Maguire's supplemental report was not a surprise to the City. At Mr. Maguire's May 4, 2009 deposition, the City's trial counsel (Mr. Sher) specifically addressed the fact that Mr. Maguire's March 9th report was written prior to significant additional modeling performed by Mr. Terry:

> MR. SHER: I'm going to hand you what we've marked as Maguire Exhibit No. 4. this is the expert rebuttal report of David B. Terry, dated March 23, 2009.
> ***
> This report was not one to which you responded in your [March 9, 2009 Expert Report] **because you hadn't received it yet; is that right?**
> 
> MR. MAGUIRE: That's correct.
> ***
> MR. SHER: And have you developed opinions with respect to the rebuttal reports by Mr. Terry?
> ***
> MR. MAGUIRE: I have not formulated any opinions, as I sit here right now, yet.
> ***
> MR. SHER: How much time have you spent reviewing the rebuttal reports of Mr. Terry?
>
> MR. MAGUIRE: Just the physical time it takes to review the – to read the reports, **but there are attendant files, specifically**

> **modeling files, that are quite voluminous and that's the work that's ongoing presently** that I'm conducting.

*Gerson Decl.*, Ex. C at 23:11-24:1, 27:17-28:2, 31:8-17 (emphasis added); *see also id.* at 83:24-84:18. Keep in mind, this deposition was taken just over a month after Plaintiff produced the relevant files (*see Pl.'s Mem.* at 4 n.2) and approximately 10 days **before** the City's final production of modeling files. Recognizing that Mr. Maguire was in the process of reviewing these additional files, Mr. Sher concluded the May 4th deposition session by reserving the right to reopen Mr. Maguire's deposition:

> There are a number of areas that I focused on today where the response from the witness has been, I'm still reviewing the modeling-related materials and I haven't yet formulated opinions on those and I am continuing to work. ... So I am prepared to adjourn today, reserving our rights when he finishes his work to come back and visit those issues with him at the appropriate time.[4]

*Gerson Decl.*, Ex. C at 188:14-189:11. And, in fact, Plaintiff actually did reopen the deposition, and actually did revisit these issues, by deposing Mr. Maguire again on June 30, 2009 – a month after the supplemental report was served.[5] Plaintiff has not been prejudiced. It had a full month to analyze Mr. Maguire's report before taking a full day of additional deposition to question him, in detail, on his supplemental opinions.

---

[4] Plaintiff's statement that Mr. Maguire "was not able to testify in any meaningful way about his then-ongoing work" is disingenuous. *Pl.'s Mem.* at 4. Mr. Maguire testified only that he had not yet formulated new opinions. *Gerson Decl.*, Ex. C at 27:17-28:2. However, to the extent Mr. Maguire was asked specific questions regarding the scope of his ongoing work, he was able to provide that information. *See, e.g., id.* at 187:7-21.

[5] Plaintiff argues that because Mr. Maguire's Supplemental Report files were produced on June 12, 2009, the necessary remedy for the allegedly suffered prejudice is permission for Mr. Terry to testify regarding his full rebuttal opinions. Mr. Terry has now had over six weeks to review these files. The date of their production is in no way relevant to this Court's previous order limiting Mr. Terry's testimony.

## II. THERE IS ABSOLUTELY NO BASIS FOR PRECLUSION HERE.

"The primary reasons for [Rule 26's] strict reporting and supplementation requirements are to eliminate unfair surprise to the opposing party and to avoid unnecessary discovery costs." *DiPirro*, 43 F. Supp. at 340; *see also Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004) (Rule 26 prevents one party from "sandbagging" an opposing party with new evidence). Where, as here, it is alleged that a party has failed to meet the requirements of Rule 26,[6] it is within the district court's sound discretion to determine whether the opposing party was actually prejudiced and whether preclusion of the expert's opinions is warranted. *See City of New York v. Amerada Hess Corp. (In re MTBE Prods. Liab. Litig.)*, No. 04-CV-3417, slip. op. at 11 (S.D.N.Y. June 20, 2009); *Lorme v. Delta Airlines*, 251 Fed. Appx. 691, 692 (2d Cir. 2007) ("the premise ... that the preclusion sanction under Rule 37 is nearly automatic, is not correct").

Preclusion of an expert's opinions for failure to comply with Rule 26 is a "drastic remedy" infrequently ordered by courts in the Second Circuit. *See, e.g., Ebewo*, 309 F. Supp. 2d at 607 ("Courts in this Circuit recognize that preclusion of evidence pursuant to Rule 37(c)(1) is a drastic remedy and should be exercised with discretion and caution."); *State of New York v. The Shinnecock Indian Nation*, 2006 U.S. Dist. LEXIS 97248, at *3 (E.D.N.Y. Oct. 13, 2006) ("courts in the Second Circuit have viewed the imposition of sanctions under [Rule 37] as discretionary and have generally not ordered preclusion"); *Johnson Elec.*, 77 F. Supp. 2d at 458.

Thus, production to the opposing party of **additional** information that "expands upon the conclusions in [the] expert report and renders it more complete" hardly can constitute prejudice warranting preclusion. *See Cullen*, 2008 U.S. Dist. LEXIS 109037, at *58 n.16 (denying

---

[6] Defendant does not concede that it violated any order of this Court or failed to meet the requirements of Rule 26. Rather, as explained above, Defendant offered Mr. Maguire's report both to respond to Mr. Terry's drought simulations and to comply with its Rule 26 obligations.

sanctions for allegedly untimely disclosure of supplemental expert discovery); *see also Houlihan v. Invacare Corp.*, 2006 U.S. Dist. LEXIS 32980, at *3 (E.D.N.Y. May 24, 2006) (fact that "failure to provide a timely supplemental expert report stemmed primarily from defendant's delay in providing discovery," weighs against preclusion). Indeed, if any party is prejudiced by this situation it is Defendant. Plaintiff has the benefit of knowing ahead of trial how Mr. Maguire will respond to Mr. Terry's modified and corrected simulations. Moreover, Plaintiff has now had Mr. Maguire's supplemental report for nearly two months; it has had Mr. Maguire's modeling files for a month and a half; and it had both of these pieces ahead of Mr. Maguire's June 30th deposition. While Plaintiff and Mr. Terry will have had at least two months to examine Mr. Maguire's supplemental report by the time of trial, Defendant has received no such benefit with respect to any response Mr. Terry will offer.

### III. PLAINTIFF'S *MOTION IN LIMINE*, AS TITLED, IS UNTIMELY AND OVERLY BROAD.

As titled, Plaintiff's motion seeks to exclude evidence that City-owned property is the source of contamination at Station 6. Despite its exceedingly broad title, Defendant reads Plaintiff's motion *in limine* as seeking the more narrow relief of precluding evidence or argument that Station 24 is or may be a source of "existing" MTBE contamination in Station 6. *See Pl.'s Mem.* at 6 ("defendants cannot be permitted to make arguments at trial that Station 24 is or may be a source of the existing contamination at Station 6."). To the extent that Plaintiff is seeking to exclude testimony or argument regarding **all** city-owned tanks or sites, Defendant objects both on the grounds that this more general motion is highly untimely – motions *in limine* were due on May 11, 2009 – and on the grounds that the City already has conceded that such evidence may

be relevant.[7] *See Gerson Decl.*, Ex. G (*Plaintiff City of New York's Motion in Limine No. 10 to Exclude Evidence or Argument Relating to Prior Regulatory Enforcement Actions Against the City Concerning City-Owned Underground Storage Tanks*) at 3 ("It is important to note that the City is not seeking to exclude evidence concerning releases from City-owned USTs, to the extent such releases are relevant to the issues in this litigation...."); *see also City of New York v. Amerada Hess Corp. (In re MTBE Prods. Liab. Litig.)*, No. 04-CV-3417, slip. op. at 7 (S.D.N.Y. June 20, 2009) ("A district court will 'exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds.'")(citing *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164 (S.D.N.Y. 2006). Given this concession, the Court should, at minimum, reserve decision as to the relevance of City-owned tanks, generally, as issues unfold at trial. *See id.* ("Indeed, courts considering a motion in limine may reserve judgment until trial, so that the motion is placed in the appropriate factual context.")(citing *United State v. Chan*, 184 F. Supp. 2d 337, 340 (S.D.N.Y. 2002).

Turning to what Defendant believes is the more narrow relief Plaintiff seeks, there are three issues to address. First, Defendant concedes that its expert does not intend to argue that Station 24 was the source of past detections of MTBE in the Station 6 wells. To be clear, this concession is limited to **MTBE** detections that occurred in the **past**. Further, it is not the case that Mr. Maguire ruled out all sources other than the three service stations referenced in Plaintiff's motion. *See Gerson Decl.*, Ex. B at 11 ("A local LUST site or sites, including [three

---

[7] Defendant incorporates by reference its arguments in opposition to the City's Motion *in Limine* No. 10. Briefly, evidence of releases from City-owned tanks is relevant both to Plaintiff's failure to warn claim (*i.e.* Plaintiff had knowledge that underground petroleum storage tanks leaked), and to its negligence claims (*i.e.* to show Plaintiff's comparative fault by demonstrating spills from City-owned tanks located within its own expert's capture zone).

service stations], are, more likely than not, the source for prior detections of MTBE in Station 6 wells.").

Second, to the extent Plaintiff seeks to prevent evidence or argument that Station 24 may be a source of MTBE contamination to Station 6 in the future, Plaintiff's own expert has opined that, in a worst case scenario, MTBE from Station 24 could impact Station 6.[8] *See Gerson Decl.*, Ex. H (*July 19, 2007 Memorandum from David Cohen and Julie Kim to Venetia Barnes (NYCDEP)*) at 4 ("The results indicate that pumping Station 24 (prior to activating Station 6) has minor effects on the MTBE plume migration. However, once Station 6 is turned on at year 3, it captures the plumes until little remains after approximately 6 years (or about 3 years after activating Station 6)"). Based on Plaintiff's expert's own opinions and the possibility of agreement by Mr. Maguire, subject to review of the yet undisclosed data, *see supra* n.8, it cannot be said that such evidence is "clearly inadmissible on all potential grounds." *City of New York v. Amerada Hess Corp. (In re MTBE Prods. Liab. Litig.)*, No. 04-CV-3417, slip. op. at 7 (S.D.N.Y. June 20, 2009).

Lastly, to the extent Plaintiff requests an order precluding Defendant from arguing that "existing" MTBE in Station 6 wells has been caused by Station 24, Defendant is at a loss as to what "existing" MTBE contamination Plaintiff refers. In fact, Defendant has received no testing data for the Station 6 wells since April 2007 – over two years ago. Past testing data from the Station 6 wells provides crucial support for Mr. Maguire's opinions regarding the source or sources of **past** MTBE detections in those wells. *See Gerson Decl.*, Ex. B at 11. Therefore, his deposition statements, *see Pl.'s Mem.* at 6, certainly cannot be taken as a concession that Station

---

[8] As for Mr. Maguire's opinions on this issue, they are inevitably affected by the recently produced – on July 22, 2009 – *Final Offsite Plume Delineation and Investigation Report* (March 2009), and the yet to be produced underlying data for that report.

24 has not contributed to **existing** MTBE contamination at Station 6 because, if such contamination exists, Mr. Maguire has never seen the supporting testing data because Plaintiff has not produced it.[9]

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to strike the supplemental report of Mr. Maguire is wholly without merit and should be denied. Furthermore, Plaintiff's motion *in limine* should be denied to the extent it seeks to preclude any evidence other than that Station 24 contributed to **past** MTBE detections at Station 6.

July 29, 2009
New York, New York

*(signature)*
Peter John Sacripanti
James A. Pardo
Stephen J. Riccardulli
Lisa A. Gerson
McDermott Will & Emery LLP
340 Madison Avenue
New York, NY 10017-4613
(212) 547-5400

Jennifer Kalnins Temple
McDermott Will & Emery LLP
18191 Von Karman Avenue
Suite 500
Irvine, CA 92612-7108

*Counsel for Exxon Mobil Corporation*

---

[9] Defendant references such data merely to make a point and has no reason to believe that such testing data exists or, if it does, that it would reflect MTBE contamination in these wells.

# CERTIFICATE OF SERVICE

Lisa A. Gerson, pursuant to 28 U.S.C. 1746, hereby declares under penalty of perjury, that on the 29th day of July, 2009, I caused to be served by electronic means upon counsel for plaintiff, a true and correct copy of the following documents:

1. EXXON MOBIL CORPORATION'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF CITY OF NEW YORK'S MOTION TO STRIKE THE SUPPLEMENTAL EXPERT REPORT OF THOMAS MAGUIRE AND TO EXCLUDE EVIDENCE OR ARGUMENT THAT A CITY-OWNED PROPERTY IS THE SOURCE OF MTBE CONTAMINATION AT STATION 6.

2. DECLARATION OF LISA GERSON IN SUPPORT OF EXXON MOBIL CORPORATION'S OPPOSITION TO PLAINTIFF CITY OF NEW YORK'S MOTION TO STRIKE THE SUPPLEMENTAL EXPERT REPORT OF THOMAS MAGUIRE AND TO EXCLUDE EVIDENCE OR ARGUMENT THAT A CITY-OWNED PROPERTY IS THE SOURCE OF MTBE CONTAMINATION AT STATION 6.

*/s/ Lisa A. Gerson*
Lisa A. Gerson