**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------- x

In Re: Methyl Tertiary Butyl Ether ("MTBE")        Master File No. 1:00-1898
Products Liability Litigation                                    MDL 1358 (SAS)
                                                                        M21-88
------------------------------------------------------------------- x    ECF Case

**This document relates to the following case:**

*City of New York v. Amerada Hess Corp., et al.*
Case No. 04 Civ. 3417

------------------------------------------------------------------- x

**PLAINTIFF CITY OF NEW YORK'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT EXXON MOBIL CORPORATION'S MOTION
FOR SUMMARY JUDGMENT OF PLAINTIFF'S CLAIMS RELATED TO
STATION 6 BASED ON THE STATUTE OF LIMITATIONS**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .........................................................................................1

SUMMARY OF ARGUMENT ...........................................................................................2

FACTS ................................................................................................................................3

LAW ...................................................................................................................................5

   Summary Judgment ....................................................................................................5

   Statute of Limitations ................................................................................................7

   Injury ..........................................................................................................................8

ARGUMENT ......................................................................................................................9

   The City Cannot Have Been Injured Before Its Wells Were Contaminated By MTBE ....9

   ExxonMobil Cannot Redefine "Injury" As the City's Damages .......................12

   At Most, ExxonMobil's Evidence Creates a Triable Issue of Fact ....................15

   CONCLUSION ........................................................................................................17

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Adickes v. S.H. Kress & Co.,*
   398 U.S. 144 (1970).................................................................................. 7

*American Home Assurance Co. v. Hapag-Lloyd Container Line, GmbH,*
   446 F.3d 313 (2d Cir. 2006)...................................................................... 6

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 255 (1986).................................................................................. 7

*Bouboulis v. Transport Workers Union of Am.,*
   442 F.3d 55 (2d Cir.2006)......................................................................... 6

*Chira v. Columbia Univ.,*
   289 F.Supp.2d 477 (S.D.N.Y. 2003)....................................................... 10

*Group Health Inc. v. Blue Cross Ass'n,*
   739 F.Supp. 921 (S.D.N.Y. 1990)......................................................... 7, 8

*In re MTBE,*
   2007 WL 1601491 (S.D.N.Y. June 4, 2007) ................................... *passim*

*In re MTBE,*
   2009 WL 1952497 (S.D.N.Y. July 6, 2009) ................................. 2, 8, 13

*In re MTBE,*
   457 F.Supp.2d 455 (S.D.N.Y. 2006)....................................................... 14

*In re MTBE,*
   475 F.Supp.2d 286 (S.D.N.Y. 2006)....................................................... 13

*In re MTBE,*
   593 F.Supp.2d 540 (S.D.N.Y. 2008)................................................... 9, 16

*Jeffreys v. City of New York,*
   426 F.3d 549 (2d Cir. 2005)...................................................................... 6

*Masson v. New Yorker Magazine, Inc.,*
   501 U.S. 496 (1991).................................................................................. 7

*McClellan v. Smith,*
   439 F.3d 137 (2d Cir. 1996)................................................................... 6, 7

*Morton's Market, Inc. v. Gustafson's Dairy, Inc.*,
198 F.3d 823 (11th Cir. 1999) ................................................................................ 15

*Richardson v. New York State Dept. of Correctional Services*,
180 F.3d 426 (2d Cir. 1999) ................................................................................. 7

*Williams v. Utica Coll. of Syracuse Univ.*,
453 F.3d 112 (2d Cir.2006) ................................................................................. 6

**STATE CASES**

*County of Santa Clara v. Atlantic Richfield Co.*,
137 Cal.App.4[th] 292 (2006) ........................................................................ 2, 13, 14

*Giardina v. Parkview Homeowners' Association*,
680 N.Y.S.2d 354 (4th Dept. 1998) ...................................................................... 10

*In re N.Y. County DES Litig.*,
89 N.Y.2d 506 (1997) ..................................................................................... 10

*Whitney v. Quaker Chem. Corp.*,
90 N.Y.2d 845 (1997) ..................................................................................... 10

**OTHER AUTHORITIES**

CPLR § 214-c ............................................................................................. 10

**FEDERAL RULES**

Fed.R.Civ.P. 56(c) ......................................................................................... 5

## PRELIMINARY STATEMENT

After arguing unsuccessfully that the City of New York ("the City") brought this case too early, before its claims were ripe, ExxonMobil now argues in its Motion for Summary Judgment ("MSJ") that the City brought this case too *late.* But this Court has already ruled on "the issue of what knowledge is necessary for a plaintiff's MTBE claims to accrue," and thus when the statute of limitations is triggered: "a plaintiff's claims accrue when it first knows of both (1) the presence of MTBE at a level sufficient to constitute an injury and (2) the harmful impact of MTBE on drinking water." *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 2007 WL 1601491, *6 (S.D.N.Y. June 4, 2007). To no avail, ExxonMobil has attempted to put a new spin on an old motion for summary judgment, now arguing that the City's "injury" – always, in ExxonMobil's motion, framed in scare quotes – accrued *not* when its wells were in fact contaminated with MTBE at a harmful level, but rather when its consultant began to design the Station 6 treatment facility.   As ExxonMobil acknowledges in its brief, the City's planning process for Station 6 may have begun before the City knew that MTBE was present in its wells.  But for purposes of the statute of limitations, the City's claims accrued when the above two conditions were met, and *not* when the City's injury merely loomed on the horizon.

ExxonMobil's eleventh-hour attempt to redefine the City's injury has no basis in law or in the history of this case, and serves solely to fabricate a statute of limitations issue where none exists.  At most, a triable issue of fact remains as to when and whether the statute of limitations was triggered.  The matter is thus not appropriate for resolution by summary judgment, and ExxonMobil's motion should therefore be denied.

## SUMMARY OF ARGUMENT

The City's "injury" is not, as ExxonMobil now asserts in its motion, the particular design parameters of the Station 6 treatment facility.  The City's injury remains, as it has been throughout this case, the "wrongful invasion of personal or property rights" by ExxonMobil.  *In re MTBE*, 2009 WL 1952497, *5, n. 53 (S.D.N.Y. July 6, 2009), citing *Schmidt v. Merchants Despatch Transp. Co.*, 270 N.Y. 287, 300 (1936); *see id.* at n. 54, citing *Blanco v. American Tel. & Tel. Co.,* 90 N.Y.2d 757, 772 (1997).  The wrongful invasion of the City's rights at issue in this case is the contamination of its wells with MTBE.  *See id.* at *5.  Therefore, this Court has ruled in the context of a similar motion for summary judgment that "a plaintiff's claims accrue when it first knows of both (1) the presence of MTBE at a level sufficient to constitute an injury and (2) the harmful impact of MTBE on drinking water."  *In re MTBE,* 2007 WL 1601491, *6.

ExxonMobil contends that the City's consultant designed Station 6 to treat MTBE in 1999 because "the presence of methyl-tertbutyl-ether (MTBE) is a widespread concern," "numerous potential sources of MTBE exist within 1 mile of Station 6," and MTBE "may be present in the raw water when the [Station 6] wells are pumped over the long term." (Memorandum of Law in Support of Motion for Summary Judgment ("MSJ") at 4).  But until MTBE is *present* in the City's wells at levels sufficient to cause an injury (a determination to be made by the jury), the statute of limitations does not begin to run.  *In re MTBE,* 2007 WL 1601491, *3, 6.  None of the facts set forth in ExxonMobil's motion support a motion for summary judgment as to the statute of limitations, because none of these facts demonstrate that the City was injured prior to the statutory cut-off date.  What ExxonMobil repeatedly refers to as the City's "injury" is in fact the City's damages – i.e., what the City must do to remedy the injury.  *See County of Santa Clara v. Atlantic Richfield Co.*, 137 Cal.App.4[th] 292, 319-321

(2006) (cost of remediating, removing and abating lead paint was properly characterized as *damages*, not as the physical injury to person or property on which plaintiffs' negligence and strict liability causes of action must be based).

ExxonMobil simply cannot redefine "injury" *ipse dixit* so as to create a statute of limitations issue where none exists. The City's claimed injury is the contamination of its wells with MTBE at a level sufficient to constitute an injury, a level which is subject to determination by the finder of fact. Without facts demonstrating that the City knew or should have known of the *presence* of MTBE at an injurious level prior to the statutory cut-off date, ExxonMobil's motion for summary judgment must fail.

Instead of demonstrating such facts, ExxonMobil has supported its motion for summary judgment with facts showing only that the City's consultant proactively anticipated that MTBE might someday become a problem at the Station 6 wells, and therefore informed the City about the technology that it considered best suited to treat MTBE. *See* ExxonMobil MSJ at 4-5. Nothing in the design proposal for Station 6 suggests that the City was injured by MTBE in any Station 6 wells in 1999. To the extent that MTBE was detected in wells 6D and 33 at low levels prior to October 31, 2000, an issue ExxonMobil attempts to resurrect here, a triable issue of fact clearly remains as to whether the City's claims had accrued by that point. *See* 2007 WL 1601491 at *14, Table 3, line E (explaining that the question of whether the statute of limitations barred recovery for a well in which MTBE was first detected in 1998 at 1.5 ppb and subsequently in 2002 at 20 ppb will "be resolved by the trier of fact.")

## FACTS

The document ExxonMobil has attached as Exhibit 2 to the Declaration of James Pardo in support of its MSJ and refers to in paragraph 6 of its Rule 56.1 Statement ("1999 Technical

Memorandum") appears to be an internal draft of a technical memorandum prepared by personnel at Malcolm Pirnie, containing handwritten notes.  ExxonMobil has presented no evidence demonstrating that the City's Department of Environmental Protection received, reviewed, or was provided with a copy of that draft in September 1999, or at any other time for that matter.  Nor has ExxonMobil presented any evidence to indicate that the City received, reviewed, or was provided with a copy of the May 2000 Issues Paper in May of 2000.  Thus, ExxonMobil has simply failed to establish that "the City was told in September 1999" any of the statements made in this internal draft technical memorandum, contrary to the assertions made in ExxonMobil's MSJ (pp. 7-8).

Even if the City *had* been shown the 1999 Technical Memorandum in September 1999 – which did not indicate that any of the City's wells had been injured – the City would not necessarily have acted differently in response.  As defendants including ExxonMobil were already aware, prior to bringing their *previous* motion for summary judgment on statute of limitations grounds in 2006, "[i]n 1999, the City and Malcolm Pirnie initiated a plan to upgrade the existing groundwater treatment facility" at Station 6.  (L.R. 56.1 ¶ 19).  "During the course of the Station 6 project, the City's consultants, Malcolm Pirnie, identified MTBE contamination in both the new and old Well 6D," but neither NYSDEC or any other regulatory agency "ha[d] been able to locate a source of the MTBE contamination" at Well 6D by as late as 2006.   (L.R. 56.1 ¶ 20, 21).

The City is obliged to "engage in proactive measures to control, track, or reduce levels of contamination well before such levels exceed, or even approach, the MCL prescribed by NYSDOH."  (L.R. 56.1 at ¶ 23).  Because "reaching or exceeding an MCL in public drinking water supplies [is] an expensive, resource-intensive event that the City must make every effort to

avoid … . the City routinely takes action to address the contamination if *potential* exists for the

contaminant to reach or exceed the MCL."  (L.R. 56.1 ¶ 24 (emphasis added)).

Such action may therefore *precede* actual detections of MTBE in City wells.  The

following chart reproduces the earliest and latest MTBE detections for Station 6 wells as of

2008, derived from the chart prepared "pursuant to Court ruling of June 9, 2005, for Defendants'

reference in preparing motion pertaining to the statute of limitations," (L.R. 56.1 ¶ 25, 26) and

from the Expert Report of Donald Cohen and Marnie Bell (L.R. 56.1 ¶ 27, 28).  As Well 6C had

not yet had any MTBE detections as of the time either of those documents were prepared, it is

not listed here:

| Well number | Date of first MTBE positive result | First MTBE positive result (µg/L) | Date of latest MTBE positive result | Latest MTBE positive result (µg/L) |
|---|---|---|---|---|
| 6 | 08/28/2002 | 1.0 | 11/09/2006 | 0.78 |
| 6A | 06/04/2002 | 8.9 | 06/29/2004 | 1.3 |
| 6B | 03/26/2002 | 2.0 | 04/3/2007 | 2.4 |
| 6D | 04/18/2000 | 1.5 | 02/28/2007 | 91.0 |
| 33 | 04/18/2000 | 0.73 | 06/28/2004 | 0.63 |

Well 6C accesses a different, deeper aquifer – the Lloyd aquifer – from other Station 6 wells.

(L.R. 56.1 ¶ 30, 33).   Although Well 6C has no MTBE contamination at this time, the water

pumped from Well 6C will be treated, if necessary, by the Station 6 facility.  (L.R. 56.1 ¶ 31,

34).

## LAW

### Summary Judgment

Summary judgment is only appropriate where the record "show[s] that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed.R.Civ.P. 56(c).  An issue of fact is genuine if "'the evidence is such that a

reasonable jury could return a verdict for the nonmoving party,'" (*Williams v. Utica Coll. of Syracuse Univ.,* 453 F.3d 112, 116 (2d Cir.2006) (quoting *Stuart v. American Cyanamid Co.,* 158 F.3d 622, 626 (2d Cir.1998)) and a fact will be deemed material where it "'might affect the outcome of the suit under the governing law.'" *Bouboulis v. Transport Workers Union of Am.,* 442 F.3d 55, 59 (2d Cir.2006) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The moving party bears the burden of demonstrating that no genuine issue of material fact exists. *See, e.g., Jeffreys v. City of New York,* 426 F.3d 549, 554 (2d Cir. 2005).  In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact that does "not rely on conclusory allegations or unsubstantiated speculation." *Id.* (quoting *Fujitsu Ltd. v. Federal Express Corp.,* 247 F.3d 423, 428 (2d Cir.2001)) (quotation marks omitted).  In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor.  *See id.* (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505).  "It is a settled rule that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'" *McClellan,* 439 F.3d at 144 (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997)).  Summary judgment is therefore inappropriate "[i]f there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party[.]" *American Home Assurance Co. v. Hapag-Lloyd Container Line, GmbH,* 446 F.3d 313, 315-16 (2d Cir. 2006 ) (citing *Marvel Characters, Inc. v. Simon*, 3120 F.3d 280, 286 (2d Cir. 2002)).  "[A]ll that is required [from a nonmoving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth

at trial." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 1996) (quoting *First National Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968).

On a motion for summary judgment, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 US at 255. Where conduct could be interpreted in several ways, one supporting the motion and one controverting it, summary judgment must be denied. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991) (where libel plaintiff denied making quoted statement, reporter's notes insufficient for summary judgment). "[S]ummary judgment is appropriate only where application of the law to those undisputed facts will reasonably support only one ultimate conclusion." *Richardson v. New York State Dept. of Correctional Services*, 180 F.3d 426, 437-438 (2d Cir. 1999). If reasonable minds could differ as to the inferences to be drawn from *even undisputed facts*, summary judgment should be denied. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

**Statute of Limitations**

As ExxonMobil stated in its brief, the Court is familiar with the applicable statutes of limitations here, as discussed in *In re MTBE*, 2007 WL 1601491, *2-4. In short, the City's common law property tort claims are governed by the New York Civil Practice Law and Rules ("CPLR") three year limitations period, but "to the extent they seek equitable relief, plaintiffs' claims are subject to the six-year omnibus statute of limitations of section 213(1)." *Id.* at *4. The six-year statute of limitations applies to the City's claim for indemnity under the Navigation Law. *Id.* at *4, n. 32.

"It is hornbook law that the time of injury is the relevant inquiry under New York law for purposes of the statute of limitations." *Group Health Inc. v. Blue Cross Ass'n*, 739 F.Supp. 921,

927 (S.D.N.Y. 1990), citing *Klein v. Dow Corning Corp.,* 661 F.2d 998, 999 (2d Cir. 1981).

Given that ExxonMobil was first named as a defendant in the City's complaint filed October 31,

2003 (*In re MTBE*, 2007 WL 1601491, *20, Table 4), common law property tort claims arising

subsequent to October 31, 2000 and claims seeking equitable relief arising subsequent to October

31, 1997 are not barred by the statute of limitations.

**Injury**

As this Court recently explained "[u]nder New York law, the injury in a toxic tort case is

sustained at the time the noxious substance entered the body, not the time when the harm

manifests. 'The exposure rule is premised upon the proposition that … injury in a toxic tort case

accrues upon exposure to the toxic substance, because it is at that point that there has been a

wrongful invasion of personal or property rights.'" *In re MTBE*, 2009 WL 1952497, *5, citing

*Snyder v. Town Insulation, Inc.* 81 N.Y.2d 429 (1993), *Schmidt v. Merchants Despatch Transp.

Co.*, 270 N.Y. 287, 300 (1936), quoting *Blanco v. American Tel. & Tel. Co.*, 90 N.Y.2d 757, 772

(1997).

In a case applying New York law, this Court found a cognizable injury to "property with

drinking wells that have been contaminated with MTBE," because the well owner "has a

property interest in the use of the water therein and may recover damages for an injury to this

usufructuary property interest." *In re MTBE,* 2009 WL 1952497, *5, quoting *In re MTBE,* 568

F.Supp.2d 376, 379 (S.D.N.Y. 2008), citing *Westphal v. City of New York* , 78 N.Y.S. 56, 59 (2d

Dep't 1902). In a case applying analogous California law, this Court held that whether or not a

plaintiff "'has suffered an injury turns on whether such contamination caused or should have

caused [the District] to act' … an injury occurred if 'the MTBE detected in the groundwater was

such that [the Water District] took, or should have taken, steps to investigate, clean up, abate,

and/or remediate the alleged contamination.'"  *Id.*, quoting *In re MTBE*, 475 F.Supp.2d 286, 295
(S.D.N.Y. 2006).

## ARGUMENT

### The City Cannot Have Been Injured Before Its Wells Were Contaminated By MTBE

If a claim does not necessarily accrue "upon the mere detection of MTBE in a well," (*In
re MTBE*, 2007 WL 1601491 at *5) then a claim certainly cannot accrue *before* any MTBE has
yet been detected in a well.  The City's claims cannot accrue, and thus the statute of limitations
will not be triggered, unless it "knows of both (1) the presence of MTBE at a level sufficient to
constitute an injury and (2) the harmful impact of MTBE on drinking water." *Id.* at *6.  Both of
these are fact-intensive determinations for the jury.  *In re MTBE*, 593 F.Supp.2d 540, 548
(S.D.N.Y. 2008) ("the level of MTBE contamination at a well that constitutes an injury is an
issue for the jury to determine;" and issue of when plaintiffs knew they had been injured was
also "by definition a fact-intensive inquiry," citing *In re MTBE*, 2007 WL 1691491 at *8).
ExxonMobil has presented no evidence in connection with its motion for summary judgment to
demonstrate that no triable issue of fact remains as to the City's injury and when its claims
accrued.  Instead, the evidence shows nothing more than that the City was aware by 1999 that
MTBE *might* pose a threat to its wells at Station 6, and thus the City took proactive steps to deal
with this threat, by investigating its options at Station 6 well before it was injured.  The
statements in the 1999 Technical Memorandum that ExxonMobil has raised in its motion
indicate *at most* a potential future injury, not an actual present injury, because in 1999 MTBE
had not yet been detected in the Station 6 wells.  The later-occurring injuries to the City's Station
6 wells are either not barred or must be evaluated by the trier of fact.

Section 214-c of the CPLR allows a plaintiff to recover monetary damages for "injury to property caused by the latent effects of *exposure* to any substance or combination of substances, in any form . . . *upon or within property*" so long as plaintiffs' action is commenced within three years "from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury could have been discovered . . . whichever is earlier."  CPLR § 214-c (emphasis added).  *See Giardina v. Parkview Homeowners' Association*, 680 N.Y.S.2d 354, 355 (4th Dept. 1998) (holding that 214-c does not bar claims for damages arising from distinct acts of trespass that occur within the three year limitations period, even though plaintiff had knowledge of prior trespasses by the defendant).  The language of 214-c itself indicates that discovery of an injury, *i.e.* accrual, cannot occur until the toxic substance is actually "upon or within the property."  CPLR § 214-c.  Thus, at a minimum, the City's injury to any given well cannot accrue for statute of limitations purposes until MTBE is present therein, at a level sufficient to cause an injury (a determination to be made by the jury).  *In re MTBE,* 2007 WL 1601491, *6.

In all of the cases cited by ExxonMobil – *Chira v. Columbia Univ.*, 289 F.Supp.2d 477 (S.D.N.Y. 2003), *In re N.Y. County DES Litig.*, 89 N.Y.2d 506 (1997), and *Whitney v. Quaker Chem. Corp.*, 90 N.Y.2d 845 (1997), as well as the *MTBE* case discussed above – the limitations period did not begin to accrue until the plaintiff actually suffered an injury.  In both *Whitney* and *DES*, the limitations period did not begin to accrue until the plaintiff was exhibiting physical symptoms of the injury from which he or she suffered.  None of these cases stands for the principle that a plaintiff who takes precautionary measures in case of a future injury – before that injury has manifested – is time-barred.  The City's evaluation of design options at Station 6 is

10

more closely analogous to the purchase of insurance against a possible future harm – an action which simply does not start the clock running on those possible future claims.

ExxonMobil's argument amounts to nothing more than a rehash of the assertion raised in Defendants' 2006 motion for summary judgment on statute of limitations grounds.  In that motion, "Defendants assert[ed] that *all* of the City's property damage claims relating to its Queens water system are time-barred because the City knew or should have known of the *presence* of MTBE in *some* wells in that system between 1995 and 1999."  *In re MTBE*, 2007 WL 1601491, *8, emphasis in original.  Defendants based that motion on the argument that the statute of limitations began to run as soon as the City knew "that its system had been impacted with MTBE."  *Id.* at *8, n. 62.  The evidence ExxonMobil now raises in support of its motion demonstrates even less knowledge:  only that the City knew that the Station 6 well cluster *might* be impacted with MTBE *sometime in the future*, and thus it proactively learned what kind of treatment facility it would require in that event.

In response to defendants' previous motion for summary judgment, this Court held that the City's claim did not accrue for every well in its system at the same time, and that for any particular well, the City's claim could be time-barred only if "the City knew MTBE was present *and* perceived it as hazardous at the detected level" – a question for the trier of fact.  *Id.* at *10, emphasis added.  Thus, the Court found that the City's claim for Well 10 was time-barred *not* simply because the City acted to remove it from service, as ExxonMobil argues (MSJ at 10), but because MTBE was both (1) already physically present in the well and (2) present at a level the City demonstrably perceived as injurious, prior to the cutoff date.  But before MTBE was actually present in the *Station 6* wells at a level sufficient to cause injury, the City's claims could not have started the statute of limitations clock running.

11

**ExxonMobil Cannot Redefine "Injury" As the City's Damages**

ExxonMobil's motion rests entirely on a rhetorical sleight of hand that replaces the City's injury with the measure of the City's damages and calls them the same thing.  Ignoring this Court's repeated explanations that the City's injury is the "wrongful invasion of its property rights," and that this invasion is the contamination of the City's well water with MTBE, ExxonMobil instead tries to redefine injury by fiat, in its brief, as follows:

p. 1 – "the very 'injury' that the City now contends it has incurred (or will incur) here:  namely, the need to construct Station 6 differently because of future MTBE"
p. 1 – "The City will say that … it must design and construct its Station 6 facility differently … that is the City's alleged 'injury' here"
p. 1 – "The City's trial expert, Malcolm Pirnie, has submitted a report that tells us what this putative 'injury' will look like… a Station 6 remedial system that includes components specifically designed to treat MTBE"
p. 1 – "the City has had actual knowledge of the alleged need to construct this very system – its 'injury' in this case – for almost a decade"
p. 4 – "these latter two components – longer air strippers and GAC – are alleged to comprise the City's MTBE-specific 'injury' at Station 6"
p.5 – "The exact same treatment system that, the City now contends, constitutes its Station 6 'injury' here"

But the City has never contended or alleged that the treatment system itself is an injury. The City "contends it has incurred (or will incur)" an injury when its wells are contaminated with MTBE; its "alleged injury" is that contamination; the "injury will look like" wells that are contaminated with MTBE; the City "had actual knowledge" of its injury when it knew its wells were contaminated with MTBE at a harmful level; the City's "MTBE-specific injury at Station 6" is the contamination of the Station 6 wells with MTBE.  ExxonMobil cites or quotes from no City documents or pleadings in support of the above statements.  The design parameters of Station 6 are a consequence, not the cause, of MTBE contamination in the Station 6 wells, and the City's need to build Station 6 is a result of its injury, not the injury itself.  In 1999, the City's injury was a possibility not yet realized, and the City's precautions were simply precautions.

Indeed, ExxonMobil acknowledges that "MTBE had not yet been detected in the Station 6 wells" (MSJ at 4) when the memorandum in question was prepared.

As recently as two months ago, ExxonMobil argued a position precisely opposite to the one it now assumes: "that the cost of treating MTBE – including the design of necessary facilities – is a pure economic loss, which does *not* constitute a cognizable injury." *In re MTBE,* 2009 WL 1952497, *3 (S.D.N.Y. July 6, 2009), emphasis added. Thus, the City "suffered injury when its wells were contaminated by MTBE" (*id.*), not before, and not when it expended costs to treat MTBE contamination – those costs are the measure of the City's damages, not its injury. *See County of Santa Clara v. Atlantic Richfield Co.*, *supra*, 137 Cal.App.4th at 319-321. The "design and implementation of a treatment facility" generate the "definite treatment costs" on which a calculation of damages can be based. *Id.* This Court has acknowledged that the City's present and future injury claims are that Station 6 wells "have already been contaminated by MTBE at a level that requires remediation," or "will become contaminated once they are turned on." *Id.* at *6-7, n.77. The City's injury claim is not and has never been that the risk of potential MTBE contamination in the aquifers feeding Station 6 wells justified the evaluation of treatment options for MTBE contamination – but now that MTBE contamination has become a reality, the design and cost of the treatment facility that will remediate that contamination is relevant to measure the City's damages. *See id.* at *9.

This court addressed a similar situation in *In re MTBE*, 475 F.Supp.2d 286 (S.D.N.Y., 2006). The plaintiff in that case "became acquainted with MTBE contamination" in advance of the statutory cut-off date, as did the City here. *Id.* at 288. The plaintiff in that case, Orange County Water District ("OCWD"),

> was informed by an employee of the Santa Ana Regional Water Quality Control
> Board ("RWQCB") that MTBE might become the "next big deal" and that it

13

"seems to not degrade, retard, etc. and is reportedly a known carcinogen." Soon after, OCWD began systematic testing for MTBE contamination of the groundwater within its district. Although there was no state or federal requirement to test for MTBE, OCWD believed "proactive monitoring [would] enable[ ] OCWD to predict and prevent *potential* problems."

*Id.* Even though OCWD knew by 1997 "that MTBE had been detected 'with increasing frequency in groundwater and municipal supply wells' generally," and even though "OCWD was aware that state standards for MTBE were not necessarily congruent with taste and odor thresholds," and even though "OCWD detected the presence of MTBE hundreds of times in a variety of locations across the district," (*id.* at 289-290), this Court held that "there is no appreciable harm until MTBE is *present* in the groundwater." *Id.* at 291. Moreover, "not every detection of MTBE results in a *contamination* of the groundwater. The exposure to MTBE may be fleeting. Or, the levels of MTBE present in the groundwater may be sufficiently de minimis such that OCWD did not suffer appreciable harm." *Id.*

This is consistent with the holding of the California appellate court in *County of Santa Clara v. Atlantic Richfield Co.*, *supra*, 137 Cal.App.4th at 317-321, which made plain the distinction between injury and damages. "A tort cause of action accrues only when 'appreciable and actual harm' is caused by the wrongful conduct." *Id.* at 317. The costs for "abatement, removal, replacement, and/or remediation" of a toxic hazard are *not* the injury itself, but are, instead, economic damages. *Id.* at 320-321. Economic losses – e.g., the City's retention and payment of Malcolm Pirnie, Inc. to design a water treatment facility, or any costs expended in the construction of such a facility – "in the *absence of physical injury to property*," do not by themselves trigger the accrual of a cause of action; however, "where the defective product causes physical damage to property courts have also allowed recovery for economic loss." *In re MTBE*, 457 F.Supp.2d 455, 462 (S.D.N.Y. 2006), emphasis in original, citing *Transwestern Pipeline Co.*

14

*v. Monsanto Co.*, 46 Cal.App.4[th] 502 (Cal.Ct. App. 1996), *San Francisco Unified School Dist. v. W.R. Grace & Co.,* 37 Cal.App.4[th] 1318, 1327 n. 5 (Cal.Ct.App. 1995), and *Selma Pressure Treating Co. v. Osmose Wood Preserving Co.,* 221 Cal.App.3d 1601 (Cal.Ct.App. 1990).

The same reasoning applies here.  At most, the Malcolm Pirnie documents indicate that the City was aware that MTBE could pose a problem in the future.  The 1999 Technical Memorandum simply "anticipated" the need to treat for MTBE, a contaminant of "widespread concern" that "may be" present in the Station 6 wells in the future.  *See* EOM MSJ at 7-8.  As indicated above, the City is obliged as a responsible water provider to "engage in proactive measures" to ensure that contaminant levels never approach the MCL, and routinely acts "if *potential* exists for the contaminant to reach or exceed the MCL."  (L.R. 56.1 at ¶ 23, 24).  Contemplating treatment at Station 6 even before an injury occurred was entirely consistent with the City's obligations and standard practices as a responsible water provider, and – in the absence of actual contamination – it does not trigger the statute of limitations.  The treatment and the injury are not the same.

**At Most, ExxonMobil's Evidence Creates a Triable Issue of Fact**

"As a general rule, the issue of when a plaintiff in the exercise of due diligence should have known of the basis for his claims is not an appropriate question for summary judgment." *Morton's Market, Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 832 (11th Cir. 1999).  "[F]acts that bear on constructive knowledge raise questions that must be decided by a jury."  *In re MTBE*, 2007 WL 1601491, *7.  Even if the Technical Memorandum cited by ExxonMobil *did* bear on the City's constructive knowledge of its injury – which, since the City had not yet been injured at that time, it could not – the question of whether the Technical Memorandum

demonstrated the City's knowledge of anything is a question for the trier of fact, and cannot be answered on a motion for summary judgment.

The evidence already presented by the City showing that MTBE was not detected at all in most Station 6 wells until well after the October 31, 2000 cutoff date creates, at a minimum, a triable issue of fact as to when the City was injured and thus when the statute of limitations period began to run.  As this Court previously indicated, claims for wells in which MTBE was not detected until 2002 simply are not barred by the statute of limitations.  2007 WL 1601491 at *14, Table 3, line G.  This is true *even if* there was a known MTBE release near the well prior to the statutory cutoff date; "plaintiffs suffered *no actual injury*," and thus the statutory period did not begin to run, until MTBE was actually detected in that well.  *Id.*  Even if the City was aware that MTBE might someday be detected in the wells – i.e., that it might someday be injured – such knowledge is not equivalent to actually being injured.

Because "at any given moment, MTBE levels vary from one well to the next … it cannot be said that one well's injury is every well's injury."  *In re MTBE*, 2007 WL 1601491 at *4. This Court has already indicated that the question of whether Wells 33 and 6D were already injured by 2000 is a question for the jury.  *Id.; see also In re MTBE,* 593 F.Supp.2d at 548 ("the level of MTBE contamination at a well that constitutes an injury is an issue for the jury to determine.").   The presence of MTBE in Wells 6D and 33 in 2000, therefore, does not demonstrate that there is no triable issue of fact as to the statute of limitations.  As this Court has already explained, whether the City's claims for wells with low detections prior to the cutoff date (as both wells experienced) are barred given subsequent higher detections (as 6B has already experienced and 33 may experience in the future) is a question "[t]o be resolved by the trier of fact."  2007 WL 1601491 at *14, Table 3, line E.

**CONCLUSION**

ExxonMobil's argument for summary judgment ignores this Court's previous holdings that in cases like this one, plaintiffs' claims must be evaluated on a site-by-site, well-by-well basis, and a plaintiff is injured when MTBE is actually present in a well at a level that constitutes an injury.  The fact that the City was aware, *prior* to being injured, that MTBE might threaten its wells at Station 6, and proactively took steps to address the situation should it arise, simply does not trigger the statute of limitations for any of the City's claims.  At the very most, a triable issue of fact remains as to when the City discovered its injury at Wells 6D and 33 – but this Court has already ruled that for wells with the characteristics of the wells at Station 6, the City's claims are either not barred at all, or raise a triable issue of fact.  Thus, summary judgment is not appropriate for the statute of limitations issue raised by ExxonMobil's motion.   The City therefore respectfully requests that the Court DENY ExxonMobil's motion for summary judgment in its entirety.


Dated: San Francisco, California
      July 29, 2009

                                       MICHAEL A. CARDOZO
                                       Corporation Counsel of the City of New York
                                       Attorney for Plaintiff City of New York
                                       100 Church Street
                                       New York, New York 10007
                                       (212) 788-1568


                                       */s/ MARNIE E. RIDDLE*
                                       VICTOR M. SHER *(pro hac vice)*
                                       TODD E. ROBINS *(pro hac vice)*
                                       JOSHUA G. STEIN *(pro hac vice)*
                                       LESLEY E. WILLIAMS (LW8392)
                                       NICHOLAS G. CAMPINS *(pro hac vice)*
                                       MARNIE E. RIDDLE *(pro hac vice)*

17

SHER LEFF LLP
450 Mission Street, Suite 400
San Francisco, CA 94105
(415) 348-8300

*Attorneys for Plaintiff City of New York*

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the following documents were served on

Liaison Counsel via Electronic Mail, and on all counsel of record by posting them directly to

CM/ECF and LexisNexis File & Serve on the 29th day of July, 2009:

1) **PLAINTIFF CITY OF NEW YORK'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT EXXON MOBIL CORPORATION'S MOTION FOR SUMMARY JUDGMENT OF PLAINTIFF'S CLAIMS RELATED TO STATION 6 BASED ON THE STATUTE OF LIMITATIONS**

2) **PLAINTIFF'S RULE 56.1 STATEMENT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF PLAINTIFF'S CLAIMS RELATED TO STATION 6 BASED ON THE STATUTE OF LIMITATIONS**

3) **DECLARATION OF MARNIE E. RIDDLE WITH EXHIBITS IN OPPOSITION TO DEFENDANT EXXON MOBIL CORPORATION'S MOTION FOR SUMMARY JUDGMENT OF PLAINTIFF'S CLAIMS RELATED TO STATION 6 BASED ON THE STATUTE OF LIMITATIONS**

KRISTIN MEYERS