# EXHIBIT 2



Feb 23 2006
4:46PM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

IN RE: METHYL TERTIARY BUTYL ETHER
("MTBE") PRODUCTS LIABILITY LITIGATION

This documents relates to:

City of New York v. Amerada Hess Corp., et al., 04 Civ. 3417
United Water of New York v. Amerada Hess, et al., 04 Civ. 2389
Suffolk County Water Authority v. Amerada Hess, et al., 04 Civ. 3417

DECLARATION OF MICHAEL A. PRINCIPE, PH.D IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS FOR LACK OF JUSTICIABILITY

Master File No. 1:00-1898
MDL 1358 (SAS)
M21-88

------------------------------------------------------------ x

I, MICHAEL PRINCIPE, Ph.D., submit this declaration in support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment on All Claims for Lack of Justiciability, in the above-referenced action on the basis of my personal knowledge and information routinely provided to me in the course of work by members of my staff.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury, that the following is true and correct::

**Qualifications**

1.  I am the Deputy Commissioner and Director of the Bureau of Water Supply ("BWS") in the New York City Department of Environmental Protection ("DEP"), a position I have held since May 2001. Prior to being appointed to this position, I served as the Acting Deputy Commissioner and Director from July 2000 to May 2001. As Deputy Commissioner, I manage BWS and am ultimately responsible for operating the City of New

York's ("the City") water supply systems and ensuring the continuous delivery of high quality water to City residents, including customers served by the groundwater system that the City owns and operates in and around Jamaica, Queens. I submit this affidavit in opposition to Defendants' Motion for Summary Judgment for All Claims for Lack of Justiciability in which they assert that contamination of drinking water at a level below regulatory maximum contaminant level standards cannot cause harm to the water supplier.

2. From 1988 to July 2000, I served as Director of BWS's Division of Drinking Water Quality Control, where I managed all drinking water quality programs. Before being appointed to Director of Drinking Water Quality Control in 1988, I served as Chief Limnologist for DEP from 1983 to 1988 and, prior to that, as Staff Limnologist from 1981 to 1983.[1]

3. I received my Bachelor of Science in Natural Resources from Cornell University in 1973, my Master of Science in Environmental Science, specializing in water resources, from the State University of New York's College of Environmental Science & Forestry in Syracuse, N.Y. in 1981, and my Ph.D. in Biology from the City University of New York's Graduate School and University Center in New York, N.Y. in 1991.

## Public Water Suppliers Must Act Before An MCL Is Exceeded

4. I understand that the Defendants urge this Court to adopt the maximum contaminant level ("MCL") prescribed by the New York State Department of Health ("NYSDOH") as the threshold for establishing whether or not a water supply has been injured by methyl tertiary butyl ether ("MTBE"). However, from a public policy, as well as from a

---

[1] "Limnology" is the study of lakes and reservoirs.

practical standpoint, defendants' uninformed assertion that harm to a water supply does not occur until after the MCL is exceeded is untenable. Indeed, in order to properly manage a system that serves drinking water to over nine million people, it is imperative that the City engage in proactive measures to control, track, or reduce levels of contamination well before such levels exceed, or even approach, the MCL prescribed by NYSDOH. Once an MCL is exceeded, a water supplier may have waited too long to act. Furthermore, while implementing proactive measures is always a critical component of operating a water supply system, such measures become absolutely essential when a specific contaminant such as MTBE is identified as a pervasive problem in the City's water supply.

5. Among the various federal, state and local laws and regulations with which the City's water system must comply is Part 5 of the New York State Sanitary Code ("NYSSC"), found in Chapter 1 of Title 10 of the New York State Codes, Rules and Regulations ("NYCRR"), that concerns the quality of drinking water supplies. Part 5 of the NYSSC contains MCLs set by NYSDOH for designated drinking water supply contaminants, including MTBE at issue in this litigation. The MCL is defined as the "maximum permissible level of a contaminant in water which is delivered to any user of a public water system," 10 NYCRR § 5-1.1(ak). It serves as a trigger for when certain public notification and other actions need to be taken by the City and other public water providers in the State. Moreover, the MCL serves as a public health maximum that once reached arguably creates a health risk that water suppliers ought to avoid by keeping the water supply well below the MCL The MCL for MTBE is 10 parts per billion, or 10 micrograms per liter ("$\mu g/l$").

6. The actions that an exceedance of the MCL may trigger include notification to the public of the exceedance and its potential effect, increased monitoring of the

3

contaminant at issue or related contaminants, application of different treatment techniques, and notification and/or certification to NYSDOH of the exceedance. Both the MCL and the responsive actions vary according to the contaminant at issue, whether the contaminant level equals or exceeds the applicable MCL for that contaminant, and the amount of the exceedance of the MCL.

7. Depending on the contaminant and level of contamination, the public notification, monitoring, or treatment processes must be completed within as little as 24 hours to as long as one year. Compliance can be very expensive, particularly where notification to users is required within 24 hours because of the cost of overnight mailing and immediate publication of notices. Moreover, the City often must either pay fines and/or enter into a consent decree to engage in scheduled treatment to rectify the exceedance. Separate and apart from the regulatory requirements, notification tends to reduce consumer confidence in the safety of their drinking water, potentially giving rise to legal actions by the public as a result of providing notification.

8. This combination of public notification, monitoring, and treatment on tight timetables makes reaching or exceeding an MCL in public drinking water supplies an expensive, resource-intensive event that the City must make every effort to avoid. Consequently, the City routinely takes action to address the contamination if potential exists for the contaminant to reach or exceed the MCL.

9. For these reasons, as mentioned, the City, as is typical of responsible public water suppliers, tries to act well before an MCL is exceeded to avoid potential exceedances. These actions use agency resources, cost public funds, and can require substantial and continuing operational changes. To ensure that it is providing clean, safe water, the City has

taken steps under a variety of circumstances with a variety of contaminants throughout its water supplies to monitor and/or reduce contaminant levels and avoid MCL exceedances.

**The City Has Acted With Respect To Its Groundwater Well System Before MCLs Were Exceeded**

10. In particular, DEP has carried out preventative measures with respect to MTBE contamination in its groundwater system. In 1998, for example, DEP detected MTBE in excess of the then 50 µg/l MCL at a distribution sampling site in Queens. Soon after detection of this MCL exceedance, DEP determined the source of the MTBE to be Well 10, which showed MTBE at levels in excess of 270 µg/l before being removed from service. However, in Well 10A, a different well on the same property as Well 10, DEP detected MTBE at levels of far below the MCL. In consultation with the New York State Department of Environmental Conservation ("DEC"), NYSDOH and the New York City Department of Health, however, DEP also removed Well 10A from service for nearly three years – even though this source would have provided water below the MCL – in order to prevent the MTBE contamination in Well 10 from spreading. Thus, one specific situation where a well may be injured by MTBE even if it falls below the MCL is where pumping the well would potentially draw in a known plume, further contaminating the well.

11. Another circumstance where DEP removed wells from service before MTBE could exceed the MCL was Well 53. In the late 1990s, NYSDOH proposed lowering the MCL for MTBE from 50 µg/l to 10 µg/l. After the 10 µg/l MCL was proposed but before NYSDOH formally adopted it, DEP began using this lower number to, among other things, ensure that the quality of its drinking water reflected the regulators' most current and accurate understanding of the potential water quality impacts caused by MTBE. Consequently, when

5

DEP detected rising levels of MTBE in Well 53 from 13.9 µg/l in August 17, 1999 to 35.8 µg/l in February 25, 2000, DEP began shortly thereafter to pump the well at only half its normal pumping rate and use the well only when absolutely necessary, both steps taken in advance of the levels reaching the 50 µg/l MCL still in effect at that time. That action required DEP to change and monitor the pumping and provide an alternate water supply. Eventually, DEP removed Well 53 from service entirely, requiring similar expenditure of resources. That was done in accordance with a policy that DEP had adopted of removing from service any well whose raw water had MTBE detected above the NYSDOH proposed level of 10 µg/l even though the MCL at that time was 50 µg/l.

    12. Given that the City takes actions to avoid reaching or exceeding MCL for contaminants in public drinking water supplies, the MCL cannot be considered the threshold for when injury to drinking water begins. Instead, injury to the City's water supply from a contaminant often occurs in advance of the contaminant exceeding the MCL. Well before that point, the City needs to take actions to safeguard its water supply and meet its obligation to provide safe drinking water. With respect to the City's groundwater system and MTBE contamination, those actions have included turning off wells, arranging to provide surface water in lieu of groundwater, performing additional monitoring in a search for sources of a release or other nearby or potential releases, sampling and discharging water from alternative wells that need to be brought on line to replace shut down wells, running water to waste to get rid of potentially contaminated water, treating or preparing to treat water through the use of air strippers, granulated activated carbon systems or other means, and/or engaging in the public notification process outline above.

13. In sum, the MCL is not a measure of when injury to the City has occurred. Accordingly, the MCL also does not grant license for defendants to pollute public drinking water supplies with contaminants at levels below the MCL. Just because some of the City's wells may contain MTBE at levels below the MCL does not mean that such levels are acceptable or that the City should sit back and idly wait until the MCL is exceeded before taking steps to protect its residents and consumers.

Dated: February 21, 2006

New York, NY

*Michael A. Principe*
MICHAEL A. PRINCIPE, Ph.D.