UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
:
In re: METHYL TERTIARY BUTYL ETHER       :  Master File No. 1:00-1898
("MTBE") PRODUCTS LIABILITY              :  MDL 1358 (SAS)
LITIGATION                               :  M21-88
:
------------------------------------------------------------ x
:
**This document relates to:**                :
:
*City of Merced Redevelopment Agency v.* :
*ExxonMobil Corp. et al.*, No. 08 Civ. 6306 (SAS) :
:
------------------------------------------------------------ x

# UNITED STATES OF AMERICA'S REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF THE CONSTITUTIONALITY OF
# SECTION 1503 OF THE ENERGY POLICY ACT OF 2005

LEV L. DASSIN
Acting United States Attorney for the
Southern District of New York
Attorney for United States as Intervenor
86 Chambers Street, Third Floor
New York, New York 10007
Telephone:  (212) 637-2709
Facsimile:  (212) 637-2702

SARAH S. NORMAND
Assistant United States Attorney

    -  Of Counsel -

**Table of Contents**

Preliminary Statement. ................................................................................................................... 1

      A.      The Statute Is Constitutional as Applied to the Facts of
             This Case, and the Court Therefore Should Reject Plaintiff's
             Facial Constitutional Challenge. ............................................................................ 2

      B.      Contrary to Plaintiff's Argument, Congress Need Not Explicitly
             State the Constitutional Basis of Its Enactments. .................................................... 7

Conclusion. ..................................................................................................................................... 9

## Table of Authorities

Cases                                                                                                       Page

Arango v. Guzman Travel Advisors Corp., 621 F.2d 1371 (5th Cir. 1980). .................................. 5

Ayotte v. Planned Parenthood of N. New England, 546 U.S. 320 (2006). ..................................... 2

Blockbuster, Inc. v. Galeno, 472 F.3d 53 (2d Cir. 2006). ............................................................... 5

Caterpillar Inc. v. Lewis, 519 U.S. 61 (1996). ....................................................................... 3, 4, 5

Crowell v. Benson, 285 U.S. 22 (1932). ......................................................................................... 6

Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567 (2004). ............................................. 4

Higazy v. Templeton, 505 F.3d 161 (2d Cir. 2007). ....................................................................... 7

Louisville & Nashville Railroad v. Mottley, 211 U.S. 149 (1908). ................................................ 4

McConnell v. Fed. Election Comm'n, 540 U.S. 93 (2003). ........................................................... 6

Mesa v. California, 489 U.S. 121 (1989). ........................................................................... 3, 4, 6, 8

Mossman v. Higginson, 4 Dall. 12, 1 L. Ed. 720 (1800). ............................................................... 9

Nolan v. Boeing Co., 919 F.2d 1058 (5th Cir. 1990). ..................................................................... 4

Rust v. Sullivan, 500 U.S. 173 (1991). ........................................................................................... 3

Saadeh v. Farouki, 107 F.3d 52 (D.C. Cir. 1997). ......................................................................... 5

Schlumberger Industries, Inc. v. Nat'l Sur. Corp, 36 F.3d 1274 (4th Cir. 1994). .......................... 6

Singh v. Daimler-Benz AG, 9 F.3d 303 (3d Cir. 1993). ................................................................. 5

State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523 (1967). ....................................................... 3

Teledyne, Inc. v. Kone Corp., 892 F.2d 1404 (9th Cir. 1989). ...................................................... 5

United States v. Martignon, 492 F.3d 140 (2d Cir. 2007). ............................................................ 8

United States v. Moghadam, 175 F.3d 1269 (11th Cir. 1999). ...................................................... 8

United States v. Salerno, 481 U.S. 739 (1987). ................................................................................. 3

Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480 (1983). ............................................. 8, 9

Washington State Grange v. Washington State Republican Party,
    28 S. Ct. 1184 (2008) ......................................................................................................... 3

Woods v. Cloyd W. Miller Co., 333 U.S. 138 (1948). ..................................................................... 7

Statutes

28 U.S.C. § 1331. .............................................................................................................................. 4

28 U.S.C. § 1332. .............................................................................................................................. 5

28 U.S.C. § 1332(a). ......................................................................................................................... 5

28 U.S.C. § 1332(d)(2). .................................................................................................................... 5

28 U.S.C. § 1447(c). ......................................................................................................................... 4

Section 1503 of the Energy Policy Act of 2005,
    Pub. L. No. 109-58, 119 Stat. 594, 1076. ................................................................. passim

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
:
In re: METHYL TERTIARY BUTYL ETHER : Master File No. 1:00-1898
("MTBE") PRODUCTS LIABILITY : MDL 1358 (SAS)
LITIGATION : M21-88
:
------------------------------------------------------------ x
:
**This document relates to:** :
:
*City of Merced Redevelopment Agency v.* :
*ExxonMobil Corp. et al.*, No. 08 Civ. 6306 (SAS) :
:
------------------------------------------------------------ x

# UNITED STATES OF AMERICA'S REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF THE CONSTITUTIONALITY OF SECTION 1503
# OF THE ENERGY POLICY ACT OF 2005

The United States of America ("United States" or "Government") respectfully submits this reply memorandum of law in further support of the constitutionality of Section 1503 of the Energy Policy Act of 2005, Pub. L. No. 109-58, 119 Stat. 594, 1076 ("EPACT").

**Preliminary Statement**

Plaintiff's argument that Section 1503 of the EPACT is unconstitutional is based on two fundamentally flawed premises: (1) that the Court should assess the facial constitutionality of the statute, without regard to whether the statute is constitutional as applied to the facts of this case, and (2) that Congress must explicitly state in a statute the constitutional authority for its action. Contrary to plaintiff's first claim, a court need not consider whether a statute is constitutional in all conceivable applications in order to determine that the statute passes constitutional muster. Because Section 1503 constitutionally grants removal jurisdiction under the facts of this case—both because defendants have raised a federal defense and because

there is minimal diversity between the parties—the statute is constitutional as applied here, and plaintiff's facial challenge must fail. As to plaintiff's second claim, it is immaterial that Section 1503 contains no express reference to "federal defenses" or "minimal diversity." It is well established that Congress may enact a jurisdictional statute without identifying the specific Article III basis for its action. The Court accordingly should uphold the constitutionality of Section 1503.

A. **The Statute Is Constitutional as Applied to the Facts of This Case, and the Court Therefore Should Reject Plaintiff's Facial Constitutional Challenge**

Plaintiff essentially asks the Court to strike down Section 1503 as facially unconstitutional, without regard to whether the Court constitutionally may exercise jurisdiction under the facts presented here. See Plaintiff's Brief in Response to United States of America's Memorandum of Law ("Pl. Resp.") at 4-5 ("[I]f § 1503 is constitutionally sound, the Court has jurisdiction. If § 1503 is not constitutionally sound, it cannot provide a basis for jurisdiction."). Because the statute is constitutional as applied to the facts of this case, plaintiff's facial challenge should be rejected.

"[I]t is axiomatic that a statute may be invalid as applied to one state of facts and yet valid as applied to another." Ayotte v. Planned Parenthood of N. New England, 546 U.S. 320, 329 (2006) (citation and internal quotation marks omitted) (overturning lower court's facial invalidation of New Hampshire's parental notification law, in preference for a more tailored injunctive remedy). In order to establish the facial invalidity of a statute outside the First Amendment context, "the challenger must establish that no set of circumstances exists under which the Act would be valid. The fact that [a statute] might operate unconstitutionally under

some conceivable set of circumstances is insufficient to render it wholly invalid . . . ." United States v. Salerno, 481 U.S. 739, 745 (1987), quoted in Rust v. Sullivan, 500 U.S. 173, 183 (1991); see also Washington State Grange v. Washington State Republican Party, 128 S. Ct. 1184, 1190 (2008) ("While some Members of the Court have criticized the Salerno formulation, all agree that a facial challenge must fail where the statute has a 'plainly legitimate sweep.'") (citation omitted).

Applying these well-settled principles, the Court should not reach the question of whether Section 1503 would be constitutional in every case, as the statute is constitutional under the facts of this case, and has a "plainly legitimate sweep." As set forth in the Government's opening memorandum of law, the Court constitutionally may exercise removal jurisdiction here on two alternative grounds. First, defendants (like many other defendants in this multidistrict litigation) have asserted federal defenses, including preemption, which provide "the federal law under which the action . . . arises for Art. III purposes." Mesa v. California, 489 U.S. 121, 136 (1989); see United States' Memorandum of Law in Support of the Constitutionality of Section 1503 of the EPACT ("U.S. Mem.") at 5-8. Second, the parties' "minimal diversity" (which is also common in this MDL) satisfies the diversity clause of Article III. See Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 n.3 (1996) (citing State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 531 (1967)); U.S. Mem. at 9.

Plaintiff does not dispute that defendants have raised federal defenses in their answer; rather, it argues that those defenses needed to be raised in defendants' notice of removal to support jurisdiction under Section 1503. See Pl. Resp. at 4. As explained in the Government's opening brief, however, Article III contains no requirement that the federal

defense that provides the basis for "arising under" jurisdiction be raised in the removal petition and not in a subsequently-filed answer. Any such requirement would derive, if at all, from the statute. See U.S. Mem. at 6-8; Caterpillar, 519 U.S. at 64 (fact that court lacked jurisdiction under general diversity statute at time of removal petition did not deprive court of jurisdiction, where lack of complete diversity was cured before entry of final judgment).[1] Defendants' failure to raise a federal defense in their notice of removal therefore does not deprive the Court of jurisdiction as a constitutional matter, nor does it provide any basis to declare the statute unconstitutional.

Plaintiff similarly does not contest that minimal diversity exists in this case. As set forth in the Government's opening brief, the existence of minimal diversity provides an Article III basis for the Court to exercise removal jurisdiction over plaintiff's claims in this case. U.S. Mem. at 9; see also Nolan v. Boeing Co., 919 F.2d 1058, 1063 (5th Cir. 1990) (rejecting argument that district court's exercise of subject matter jurisdiction over claims removed under

---

[1] Plaintiff notes that in Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 574 (2004), the Supreme Court stated that the "holding of Caterpillar . . . is only that a statutory defect . . . did not require dismissal once there was no longer any jurisdictional defect." But that is precisely the Government's point. See Pl. Resp. at 5 n.3. Defendants' failure to assert federal defenses in their removal notice was, at most, "a statutory defect," and therefore does not undermine the constitutionality of Section 1503. Plaintiff notably does not address the Government's argument that such a statutory defect may be waived if the plaintiff does not file a motion to remand within thirty days. See U.S. Mem. at 7; 28 U.S.C. § 1447(c). Louisville & Nashville Railroad v. Mottley, 211 U.S. 149, 152-53 (1908), cited by plaintiff, see Pl. Br. at 3-4, is also inapposite. There, the Supreme Court declined to interpret the federal question statute to provide jurisdiction in cases where the complaint raised no federal issues, even if it anticipated that the defendant would raise a federal defense. The case involved the proper construction of the federal question statute and not its constitutionality under Article III. In any event, it is clear that Congress may overcome the well-pleaded complaint rule in 28 U.S.C. § 1331, by enacting a removal statute like EPACT § 1503. See Mesa, 489 U.S. at 137 (removal statute "serves to overcome the 'well-pleaded complaint' rule which would otherwise preclude removal even if a federal defense were alleged").

Foreign Sovereign Immunities Act ("FSIA") was unconstitutional, finding that minimal diversity existed between the parties); Teledyne, Inc. v. Kone Corp., 892 F.2d 1404, 1408 (9th Cir. 1989) (existence of constitutional minimal diversity obviated any constitutional objection to federal court jurisdiction over pendent party claim removed under FSIA); Arango v. Guzman Travel Advisors Corp., 621 F.2d 1371, 1378 n.7 (5th Cir. 1980) (FSIA removal provision "does not entail an unconstitutional arrogation of power to the federal courts" because of "established principle that federal courts are constitutionally able (though, in most instances, not statutorily allowed) to entertain actions . . . characterized by only 'minimal diversity'").[2] Article III of the Constitution therefore provides two alternative grounds for the Court to exercise removal jurisdiction in this case.[3]

Because the Court constitutionally may exercise jurisdiction here, it need not (and should not) consider whether it could do so in a case in which neither minimal diversity nor a federal defense was present. See Singh v. Daimler-Benz AG, 9 F.3d 303, 311-12 (3d Cir. 1993) (declining to reach question of whether general diversity statute, 28 U.S.C. § 1332(a), would

---

[2] Plaintiff quotes out of context the court's statement in Saadeh v. Farouki, 107 F.3d 52, 54 (D.C. Cir. 1997), that "Congress has never granted the district courts the full measure of diversity jurisdiction permitted by the Constitution . . . ." Pl. Resp. at 5-6. Saadeh was referring to 28 U.S.C. § 1332 and its predecessor, which the Supreme Court has interpreted to require complete diversity. See Caterpillar, 519 U.S. at 68. To the extent plaintiff contends that Congress has never enacted any statute that relies on minimal diversity to satisfy Article III, that plainly is not the case, as the cases in text demonstrate. See also Blockbuster, Inc. v. Galeno, 472 F.3d 53, 59 (2d Cir. 2006) (noting that Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), "requires only minimal diversity of the parties").

[3] Plaintiff contends that the Tenth Amendment and "vertical separation of powers" preclude jurisdiction here, because Congress cannot grant jurisdiction to federal courts beyond the scope of Article III. Pl. Resp. at 7-8. This argument simply begs the question of whether Congress could grant Article III "arising under" or diversity jurisdiction under the facts presented here.

violate Article III if one alien were to sue another in federal court, as minimal diversity existed in the case, and therefore constitutional issue was not squarely presented); Schlumberger Industries, Inc. v. Nat'l Sur. Corp, 36 F.3d 1274, 1278 n.8 (4th Cir. 1994) (noting fact that minimal diversity existed between parties as one reason (along with resolution of the case on statutory grounds) to avoid question of "the viability of constitutional pendent party jurisdiction").

Under the doctrine of constitutional avoidance, moreover, statutes should be construed in a manner that avoids constitutional doubt. See McConnell v. Fed. Election Comm'n, 540 U.S. 93, 180 (2003) ("When the validity of an act of the Congress is drawn in question, and . . . a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.") (citing, inter alia, Crowell v. Benson, 285 U.S. 22, 62 (1932)); Mesa, 489 U.S. at 136-37 (interpreting federal officer removal statute to require averment of federal defense, partly to avoid construction "which raises serious constitutional doubt"). Plaintiff asks this Court to construe Section 1503 as "attempting to confer on federal courts the power to hear all state common law claims involving MTBE, regardless of whether they 'arise under' federal law or involve citizens of different states." Pl. Resp. at 3 (emphasis in original). The Court need not adopt such an expansive interpretation of the statute, as both federal defenses and minimal diversity are present in this case.[4] Nor should the Court reach such constitutional questions

---

[4] Plaintiff's reliance on the general principle that jurisdictional statutes are to be "construed narrowly," Pl. Resp. at 3 & n.2, is curious. It is the Government's argument, and not plaintiff's, that is based on a narrow construction of the statute. In any event, there is no question here of Congress's intent to allow removal of claims relating to allegations of MTBE contamination, such as plaintiff's claims in this case. By its terms, Section 1503 plainly authorizes removal of post-enactment "[c]laims and legal actions . . . related to allegations involving actual or threatened contamination by [MTBE]." Rather, the issue is whether Congress

unnecessarily.  See, e.g., Higazy v. Templeton, 505 F.3d 161, 179 n.19 (2d Cir. 2007) ("principles of judicial restraint caution us to avoid reaching constitutional questions when they are unnecessary to the disposition of a case").[5]

Because the statute is constitutional as applied to the facts of this case, and because the Court may construe the statute in a manner that comports with Article III, plaintiff's facial challenge to the statute should be rejected.

**B.     Contrary to Plaintiff's Argument, Congress Need Not Explicitly State the Constitutional Basis of Its Enactments**

Plaintiff effectively concedes that "Congress <u>could have</u> granted Article III jurisdiction in § 1503 cases involving 'federal defenses' or 'minimal diversity.'" Pl. Resp. at 5 (emphasis in original).  Plaintiff argues, however, that "[t]he absence of any 'federal defense' or 'minimal diversity' language in the text of § 1503 precludes any implication that Congress intended to invoke the full range of Article III powers." Pl. Resp. at 6; see also id. at 3 ("The Court is not free to write 'federal defense' or 'diversity' provisions into § 1503 in an attempt to cure constitutional deficiencies."); id. ("The Court Should Not Attempt to Salvage § 1503 by Supplying Language Not Written by Congress.").  Plaintiff's argument is simply incorrect.

The Supreme Court has made clear that Congress need not identify in a statute the constitutional authority under which the statute is enacted.  See Woods v. Cloyd W. Miller Co.,

---

had the constitutional authority to grant such removal jurisdiction under the circumstances of this case.

[5]     In the event that a future court is presented with a case in which neither minimal diversity nor a federal defense is present, that court will have to evaluate whether Section 1503 can be sustained under Article III based on the facts that are presented in that case.  This Court should not speculate as to how such an analysis would be resolved.

7

333 U.S. 138, 144 (1948) ("The question of the constitutionality of action taken by Congress does not depend on recitals of the power which it undertakes to exercise."). Indeed, the Second Circuit and other courts have recognized that "it does not matter that Congress believes it is legislating under a clause which would not give it the power it seeks as long as it actually has the power to legislate under another." United States v. Martignon, 492 F.3d 140, 149 (2d Cir. 2007); United States v. Moghadam, 175 F.3d 1269, 1277 (11th Cir. 1999) ("the fact that legislation reaches beyond the limits of one grant of legislative power has no bearing on whether it can be sustained under another"). These authorities refute plaintiff's contention that Congress was required to include a "'federal defense' provision" or "'minimal diversity' language" in Section 1503 in order for the statute to pass muster under Article III. See Pl. Resp. at 2.

Plaintiff mistakenly relies on Mesa v. California, 489 U.S. 121 (1989), for the proposition that "defendants may not boot-strap themselves into federal court by asserting federal interests not specifically identified in the removal statute upon which removing defendants rely." Pl. Resp. at 7. Mesa contains no requirement that Congress "specifically identif[y]" the Article III authority for a removal statute.

Plaintiff's reliance on Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 491 (1983), see Pl. Resp. at 7, is similarly misplaced. In Verlinden, the Supreme Court held that the FSIA's jurisdictional provision satisfied the "arising under" clause of Article III, even though the FSIA, like EPACT § 1503, purported to grant jurisdiction over a specific class of cases (those against a foreign sovereign) without explicitly invoking either the "arising under" or "minimal diversity" clauses of Article III. The Verlinden Court rejected the argument that the diversity clause could support a grant of jurisdiction under the facts presented, because the case involved a

8

foreign plaintiff suing a foreign sovereign, and "a foreign plaintiff is not a State or a Citizen thereof," and therefore did not satisfy even minimal diversity. Id. at 492 (quoting Mossman v. Higginson, 4 Dall. 12, 1 L. Ed. 720 (1800)) (alterations and internal quotation marks omitted). The Court also noted, however, that "[s]ince Article III requires only "minimal diversity," . . . diversity jurisdiction would be a sufficient basis for jurisdiction where at least one of the plaintiffs is a citizen of a State." Id. at 492 n.18. Thus, Verlinden actually supports the Government's contention that Section 1503 may be upheld under Article III even absent an express reference in the statute to a federal defense or minimal diversity.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in the Government's opening memorandum of law, the Court should uphold the constitutionality of Section 1503 as applied in this case.

Dated: New York, New York
August 10, 2009

Respectfully submitted,

LEV L. DASSIN
Acting United States Attorney for the
Southern District of New York
Attorney for the United States of America

By:    /s/
SARAH S. NORMAND
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Telephone: (212) 637-2709
Facsimile: (212) 637-2702
sarah.normand@usdoj.gov

9