UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation

Master File No. 1:00-1898
MDL 1358 (SAS)
M21-88

This document pertains to:

*City of New York v. Amerada Hess Corp. et al.*,
Case No. NY-04-CV-03417

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT EXXON MOBIL CORPORATION'S MOTION FOR SUMMARY JUDGMENT OF PLAINTIFF CITY OF NEW YORK'S CLAIMS RELATED TO STATION 6 BASED ON THE STATUTE OF LIMITATIONS

## SUMMARY

We begin by noting what Defendants' motion is not about, and what is now undisputed.

What this motion is not about are the alleged characteristics of MTBE, or when the City (or even ExxonMobil) learned of those characteristics. Rather, this motion is about the City's **conduct** in approving the construction of a MTBE-specific remediation system at Station 6 in September 1999, more than three years before filing this lawsuit. That **conduct** establishes the City's actual knowledge of its "injury" – or its "damage," "harm" or the equivalent (the parties disagree on what is the appropriate word) – long before the applicable bar date here.

What is undisputed is that the remediation system that Malcolm Pirnie recommended the City begin building in September 1999 is identical, in all material respects concerning MTBE, to the remediation system for which the City now seeks to recover in this litigation. Again, call it "injury," "damage" or "harm," the key point is that the City had actual knowledge of it almost a decade ago, long before the bar date in this case.

The City's singular response is that its conduct in September 1999 proves nothing more than that the City had acquired actual knowledge of its "damage," but not its "injury," at that time. In fact, according to the City, until MTBE is detected in a well above the applicable Maximum Contaminant Level (and only Well 6D has ever experienced this), whether and when the City suffered "injury" – and thus whether and when the statute of limitations accrued – remains an open issue for the jury to decide. The result is an illogical, Gordian Knot argument where the City is seeking to recover for "damages" that it contends began in 1999, for an alleged "injury" that the City argues did not occur until months or year later, if the jury in this case says that it has occurred at all.

# ARGUMENT

## I. THE COURT ALREADY HAS HELD THAT ACTUAL CONTAMINATION IS NOT A PREREQUISITE FOR "INJURY."

The City contends that it "[c]annot have been injured before its wells were contaminated by MTBE." (*Response* at 9). While we certainly might endorse the City's argument in response to the "non-detect" threat claims that the City (and myriad other MTBE plaintiffs) have asserted against us for years, the fact is that it misstates the Court's prior rulings and, in any event, misses the point here.

Although the Court has questioned the probability of recovery on pure threat claims, it also has held that the threat of future contamination may suffice as a present, actionable "injury." And if a cause of action can be asserted for a well that has never had an MTBE detection (but is allegedly threatened), then certainly the applicable statute of limitations for that claim must also apply. Given the Court's prior rulings, the actual presence of MTBE in a well cannot be a prerequisite for injury.

Indeed, the Court's prior rulings on the "MCL" issue, and on City Wells 38 and 38A, prove our point. Because the MTBE detected in those wells had never exceeded the MCL, the question of whether those wells had been "injured" was an open issue for the jury to decide – at least under the Court's MCL decision. *In re MTBE Prods. Liab. Litig.*, 2007 U.S. Dist. LEXIS 40484, at *41 (S.D.N.Y. June 4, 2007). Nevertheless, the Court dismissed the City's claims for those wells as time-barred by the statute of limitations because the City's **conduct** in taking the wells out of service – irrespective of the level of MTBE detected in the wells – proved that the City was aware of its alleged injury before the applicable bar date. *Id.* at *46. In fact, the level of MTBE detected in wells 38 and 38A played no part in their dismissal on statute of limitations grounds.

Similarly, it is the City's **conduct** with respect to its Station 6 wells that is relevant for statute of limitations purposes here. How do we know that the City was aware of the future threat (and present "injury") to the Station 6 wells in September 1999? Because at that time it undertook the affirmative act of contracting with a consulting firm (Malcolm Pirnie), and paying that firm to commence designing the very treatment system that it now seeks to recover for here. If taking wells out of service is conduct sufficient to establish knowledge of injury (and commencement of the statute of limitations), certainly contracting for the design of a treatment system is a similar indicator of knowledge.

II. CALL IT "INJURY" OR "DAMAGE" (OR SOMETHING ELSE), THE CITY'S KNOWLEDGE THAT IT WOULD CONSTRUCT STATION 6 DIFFERENTLY BECAUSE OF MTBE, AND ITS CONDUCT IN RESPONSE TO THAT KNOWLEDGE, IS WHAT IS DISPOSITIVE FOR PURPOSES OF THE STATUTE OF LIMITATIONS.

The City makes much ado about what it believes is our "rhetorical sleight of hand" (*Response* at 9), as though we might wave a magic wand and trick the Court into mistaking "damage" with "injury."

Candidly, we believe it is of no consequence whether the City's actions in September 1999 are categorized as "damage" or "injury." The dispositive point is the City's **knowledge**, as evinced by its **conduct** at that time. Conduct proving knowledge was the key factor in the Court's prior decision to dismiss Wells 38 and 38A as time-barred, and it is the key factor here. The City was told in September 1999 that MTBE posed a threat to its Station 6 wells. It was advised to build a treatment system to address potential MTBE detections in the future. It responded by authorizing its consultant to commence the design of that treatment system.

We respectfully submit that it simply defies logic to contend, as the City does, that its conduct beginning in September 1999 indicates knowledge of "damage," but not of "injury." It

defies logic for the City to proclaim that while it knew it was "damaged" beginning in September 1999, it did not know yet that it was "injured" – or, remarkably, still may now know because (in the City's view) that "is subject to determination by the finder of fact." (*Response* at 3).

Several weeks ago, the City's trial counsel told the Court how MTBE would effect its Station 6 project:

> MR. SHER: Let me step back a second. Our story in Station 6 is that we intended to build Station 6 to address other contaminants, and then MTBE came along **and made it a much more expensive** –

*July 2, 2009 Status Conference Tr.* at 45:14-17 (emphasis added). Fair enough. Defendants dispute Mr. Sher's point, but for now we accept it as true for purposes of this motion. Mr. Sher's "story" (and our point) is that this case has always been about the "delta" – *i.e.*, the difference – between the Station facility that the City "intended to build . . . to address other contaminants," and the "much more expensive" Station 6 facility the City now says it must construct because of future MTBE. *Id.* Call that difference "injury" or "damage," the dispositive point is that the City's alleged need to construct Station 6 *differently* (and how it must do so) has not changed since the City first acquired actual knowledge of it in September 1999.

The City's September 1999 decision to retain a consultant, and to commence the design of a treatment system at Station 6 specifically in response to predicted MTBE impacts in the future, was sufficient to commence the applicable three-year statute of limitations at that time.[1] Because every one of the City's claims in this case accrued long before the applicable bar date (October 31, 2000), those claims are time-barred as a matter of law and must be dismissed.

---

[1] Because the City seeks to recover damages (and not the equitable remedy of indemnification) under the Navigation Law, New York's six-year statute of limitations for claims based in equity simply has no application here.

## CONCLUSION

The only "sleight of hand" taking place here is the City's contention that although it allegedly has been incurring "damage" since 1999, it cannot suffer "injury" unless and until MTBE is detected in its wells at levels that (to this very day) the City cannot say constitute a legally cognizable injury.

This case is about the City's professed need to build Station 6 differently because of MTBE. The Court has previously ruled that actual knowledge sufficient to commence the statute of limitations may be proven by the City's **conduct.** The City's conduct beginning in September 1999 proves that it had actual knowledge of its professed need to build Station 6 differently a full 13 months before the bar date here. Accordingly, the City's claims in this case are time-barred as a matter of law and must be dismissed.

August 12, 2009
New York, New York

Respectfully submitted by:

McDermott Will & Emery LLP

Peter John Sacripanti
James A. Pardo
Stephen J. Riccardulli
Lisa A. Gerson
340 Madison Avenue
New York, NY 10017-4613
(212) 547-5400

Jennifer Kalnins Temple
McDermott Will & Emery LLP
18191 Von Karman Avenue, Suite 500
Irvine, CA 92612-7108

*Counsel for Exxon Mobil Corporation*

## CERTIFICATE OF SERVICE

Lisa A. Gerson, pursuant to 28 U.S.C. 1746, hereby declares under penalty of perjury, that on the 12th day of August, 2009, I caused to be served by electronic means upon counsel for plaintiff, a true and correct copy of: REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT EXXON MOBIL CORPORATION'S MOTION FOR SUMMARY JUDGMENT OF PLAINTIFF CITY OF NEW YORK'S CLAIMS RELATED TO STATION 6 BASED ON THE STATUTE OF LIMITATIONS.

*Lisa A. Gerson*
Lisa A. Gerson