# Exhibit 1

PRELIMINARY
REPORT

IN THE MATTER OF

JEFF ALBAN, ET AL. v. EXXON MOBIL CORP., ET AL.

Circuit Court for Baltimore County

Case No.: 03-C-06-010932 OT

Prepared by: Kenneth M. Rudo, Ph.D, Toxicologist

June 27, 2007

## EXPERT REPORT OF KENNETH M. RUDO

After reviewing the numerous documents provided to me by Plaintiffs' counsel, including, but not limited to, the *Expert Report In The Matter of Jeff Alban, et al. v. ExxonMobil Corp., et al.*, prepared by Ira L. Whitman, Ph.D., P.E. I have reached the following opinions, all of which I hold to a reasonable degree of scientific certainty.

1. I am a North Carolina State Environmental Toxicologist responsible for performing human risk assessments for the protection of public health from exposure to chemicals and groundwater, soil, and air, including private and public drinking water wells. I have been performing this public service function for my state for over 18 years. A copy of my curriculum vitae summarizing my qualifications is attached hereto and incorporated herein as Exhibit 1.

2. Human health risk assessments involve determination of the degree of both short and long-term health risks for cancer and noncancerous adverse health effects. In performing these risk assessments, I utilize techniques based on commonly and generally-accepted scientific principles in the field of toxicology to calculate the level of exposure from ingestion, dermal absorption, and inhalation of chemicals in the home. My methodology includes the use of established United States Environmental Protection Agency ("EPA") exposure factors, peer reviewed scientific literature, and actual contaminant concentrations present in drinking water.

2

3. I have reviewed the medical and scientific literature addressing methyl tertiary butyl ether or "MTBE." A list of references upon which I rely is attached hereto as Exhibit B and is incorporated herein.

4. MTBE is considered a probable human carcinogen and is a known animal carcinogen. Animal studies indicate that many different tumors associated with MTBE may also occur in humans. The animal studies indicate that certain cancers such as leukemia and lymphoma can arise from exposure to MTBE via pathways compatible with those associated with drinking water. These cancers are malignant end points that may arise from exposure to MTBE for less than lifetime duration. The animal studies also identified testicular tumors, hepatocellular (liver) adenomas and carcinomas, and renal tubular adenomas and carcinomas as being associated with exposure to MTBE. Given the results of these studies and in the absence of epidemiological evidence of MTBE effects on humans, the safest allowable level of MTBE exposure is zero.

5. I have examined the laboratory analytical results of well testing as published in the expert report by Ira L. Whitman, Ph.D., P.E., and other documents produced by the Defendants in this case for volatile organic compounds ("VOCs"), including MTBE conducted at a large number of domestic wells since the Exxon gasoline spill/discharge in January and February, 2006.

6. There are numerous homes in the Jacksonville area that currently have measurable levels of MTBE and other carcinogenic contaminants in their drinking water. It is my opinion that MTBE and other contaminant levels in drinking water pose an increased cancer risk to a reasonable degree of scientific probability and

3

certainty. In addition to the increased cancer risk from ingestion of contaminated water, bathing and showering also poses an increased cancer risk via dermal exposure and inhalation of MTBE-laden vapors and mists. The combination of these pathways of exposure increases the overall cancer risks and they may possibly double the risk from ingestion of MTBE-contaminated drinking water alone.

7. Because no human studies currently exist regarding the long-term exposure to low levels of MTBE, the approach most protective of human health must include the testing for the levels of MTBE by monitoring supply wells of the area by regular sampling and analysis and providing clean drinking water to the residents and work places in the affected area. To safeguard against any existing health risk to individuals within the affected area, I recommend for all of the Plaintiffs in this community, a medical monitoring program designed by a qualified physician for residents of the area, potentially-affected visitors and members of a suitable control population.

8. To further safeguard against any existing increased health risks to individuals within the affected area, I recommend for this community and all Plaintiffs included in this case, bi-monthly private well sampling for a minimum of five years, performed by a certified Maryland laboratory, testing both volatile organic chemicals ('VOCs") and semi-volatile chemicals. Additionally, as numerous Exxon monitoring wells have tested positive for benzene and other contaminants which pose even higher human health risks from both short-term and long-term exposure, the necessity for medical monitoring and bimonthly private well sampling is ever greater.

9. I have contacted local certified laboratories which conduct certified private well sampling, and the cost for each test is approximately $245.00.

10. It is my opinion that due to the significant contamination in the Plaintiffs' drinking wells and in the monitoring wells located in the Plaintiffs' community, all homeowners in this community would significantly benefit from a whole house point of entry filtration system. *I have contacted certified filter sales firms that install point of entry ( POE ) systems and the cost for each POE system is approximately $7,000.00.*

11. All of the above opinions are held to a reasonable degree of scientific certainty. As discovery progresses and I continue to review various documents and/or perform various scientific studies pertaining to this case, I reserve the right to amend this preliminary report.

_____
KENNETH M. RUDO