USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/25/2009

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X

IN RE METHYL TERTIARY BUTYL
ETHER ("MTBE") PRODUCTS
LIABILITY LITIGATION

OPINION AND ORDER

00 MDL 1898 (SAS)

-------------------------------------------------------- X

This Document Relates to:

-------------------------------------------------------- X

CITY OF NEW YORK, *et al.*,

    Plaintiffs,

- against -

04 Civ. 3417 (SAS)

EXXON MOBIL CORPORATION,

    Defendant.

-------------------------------------------------------- X

In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation     Doc. 2766

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.     INTRODUCTION

        In 2003, the City of New York (the "City") filed a Complaint against various corporations for their use and handling of the gasoline additive methyl tertiary butyl ether ("MTBE"), alleging that MTBE contaminated – or threatened

1

to contaminate – the City's groundwater supply.[1] The trial of this case began on August 3, 2009. Defendant Exxon Mobil Corporation ("Exxon") – the only remaining non-settling defendant – moves for summary judgment on the ground that the City's claims are untimely under New York law.[2] For the reasons that follow, this motion is denied.

I.  **BACKGROUND**

This is Exxon's second motion for summary judgment on these claims based on the statute of limitations. As I explained in the first motion, "the limitations dates for the City's damages claims are October 31, 2000."[3] In Wells 6, 6A and 6B, the first detections of MTBE were found in 2002, within the limitations period; in Wells 6D and 33, the first detections were found in April of 2000, prior to the limitations period, in concentrations of 1.5 parts per billion

---

[1] This Opinion assumes familiarity with facts discussed in this Court's previous opinions in this case. For a general discussion of the MTBE litigation, see *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.* ("*In re MTBE*"), 379 F. Supp. 2d 348, 364-67 (S.D.N.Y. 2005).

[2] *See* Defendant ExxonMobil's Memorandum of Law in Support of Exxon's Motion for Summary Judgment of Plaintiff's Claims Related to Station 6 Based on Statute of Limitations ("Def. Mem.").

[3] *In re MTBE*, No. 00 Civ. 1898, 2007 WL 1601491, at *8 (S.D.N.Y. June 4, 2007).

("ppb") and .73 ppb respectively.[4] In 1999, the City began to design the Station 6 treatment facility to treat these five wells for MTBE, even though there were no MTBE detections in any of these wells prior to April 18, 2000.[5]

In the first motion, this Court determined that there were triable issues of fact regarding whether the City knew that low-levels of MTBE contamination, detected prior to the limitations period, constituted an injury.[6] In this motion, Exxon argues that the City's *actions* in the pre-limitations period – specifically, its decision in 1999 to design the Station 6 treatment facility to treat MTBE in these wells – show that it knew that the low-level detections were injurious prior to October 31, 2000. Exxon argues that this knowledge in 1999 started the limitations clock, even though MTBE had not yet been detected in any of the wells. Exxon further argues that the City's claims are time-barred because the City could have brought its Station 6 and future injury claims in 1999, prior to the limitations cut-off date. Specifically, Exxon argues, *first*, that the City's claimed injury is the cost of designing and building Station 6 to treat MTBE.

---

[4]   *See* MTBE Expert Report of Malcolm Pirnie, Expert for the City, Ex. 3 to Declaration of Marnie E. Riddle in Opposition to Defendant's Motion, at 7-9.

[5]   *See* Exxon's Local Rule 56.1 Statement, ¶¶ 11, 16-17.

[6]   *See In re MTBE*, 2007 WL 1601491, at *9.

3

Because the City decided to do this in 1999, and expended funds toward that effort at the time, Exxon argues that the claims are time-barred. Exxon argues, *second*, that because the City projected its future injuries in 1999, it could have brought its *future* injury claims at that time. For all these reasons, Exxon argues that the limitations period for the City's Station 6 claims began to run in 1999, even though the City had not detected MTBE in *any* of these wells until 2000.

## II. APPLICABLE LAW

### A. Summary Judgment

Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[7] An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[8] A fact is material when it "might affect the outcome of the

---

[7] Fed. R. Civ. P. 56(c).

[8] *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted).

4

suit under the governing law."[9] "It is the movant's burden to show that no genuine factual dispute exists."[10]

### B. Statute of Limitations

"The statute of limitations is normally an affirmative defense on which the defendant has the burden of proof."[11] "The defendant's normal burden includes showing when the cause of action accrued."[12] "Where it does not conclusively appear that a plaintiff had knowledge of facts from which the injury could reasonably be inferred, the complaint should not be dismissed on motion and the question should be left to the trier of fact."[13]

"There can be no doubt that a cause of action accrues only when the forces wrongfully put in motion produce *injury*. Otherwise . . . a cause of action

---

[9] *Bouboulis v. Transport Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quotation marks omitted).

[10] *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

[11] *Bano v. Union Carbide Corp.*, 361 F.3d 696, 710 (2d Cir. 2004) (applying New York statute of limitations and citing N.Y.C.P.L.R. § 3018(b)).

[12] *Id.*

[13] *Id.* (quotation marks omitted).

5

might be barred before liability arose."[14] As a general rule, therefore, "the date of injury is the benchmark for determining the accrual of a cause of action."[15] "For purposes of toxic tort claims, the date of injury is interpreted [in New York law] as the date of first exposure to the hazardous substance."[16] The "first exposure" rule was amended by statute, however, in order to avoid the harsh result of barring some toxic tort claims prior to the plaintiff's *discovery* of the injury. Under the amended New York law, and preemptive Federal law, the statute of limitations shall not begin to run in toxic tort cases until the plaintiff knew, or should have known, of the injury.[17] Where applicable, these remedial statutes may provide a

---

[14] *Schmidt v. Merchants Despatch Transp. Co.*, 270 N.Y. 287, 300 (1936) (emphasis added).

[15] *Blanco v. American Telp. & Telp. Co.*, 90 N.Y.2d 757, 767 (1997).

[16] *Freier v. Westinghouse Elec. Corp.*, 303 F.3d 176, 184 (2d Cir. 2002).

[17] The common law property tort claims for which the City seeks damages are generally governed by the three year limitations period of section 214(4) of the New York Civil Practice Law and Rules ("CPLR"). This provision, however, is altered by the discovery rule of section 214-c(2), which provides that the date on which the three year limitation period begins to run for "an action to recover damages for . . . injury to property caused by the latent effects of exposure to any substance . . . shall be computed from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier." N.Y.C.P.L.R. § 214-c (McKinney 2003). Section 9658 of Title 42 of the United States Code "provides a uniform standard for determining the accrual dates of claims of [property damage] due to exposure to hazardous substances." *Freier*,

6

*later* start date than the "first exposure" rule, but, as the plain language[18] and remedial purpose of the statutes establish, they can never provide an *earlier* start date than the date of the injury.

In interpreting the New York discovery-rule statute in a prior ruling, I explained that "[a] plaintiff's claims accrue when it first knows of both (1) the *presence* of MTBE at a level sufficient to constitute an injury and (2) the harmful impact of MTBE [at that level] on drinking water."[19] I further explained that because "New York, like other states, does not have a zero-tolerance policy on

---

303 F.3d at 194. That section establishes a "federally required commencement date," 42 U.S.C. § 9658(a)(1), to start the running of the applicable state period of limitations governing such a claim. That date is defined as "the date the plaintiff knew (or reasonably should have known) that the . . . property damages . . . were caused or contributed to by the hazardous substance or pollutant or contaminant concerned." 42 U.S.C. § 9658(b)(4)(A). The Second Circuit, in a diversity case arising exclusively under New York law, held that the federally required commencement date "preempt[s] state law accrual rules if, under those rules, accrual would occur earlier than" under the federal statute. *Freier*, 303 F.3d at 196.

[18] For example, the statutes both refer to the injury in the past tense, which makes it plain that the statutes only apply where an injury has already occurred. *See* 42 U.S.C. § 9658(b)(4)(A) (defining the federal commencement date as "the date the plaintiff *knew* (or reasonably *should have known*) [that] the . . . property damages . . . *were caused or contributed* to by the hazardous substance or pollutant or contaminant concerned" (emphasis added). *Accord* N.Y.C.P.L.R. § 214-c (McKinney 2003) (discussing actions for "injury to property *caused* by the latent effects of exposure to any substance . . ." (emphasis added)).

[19] *In re MTBE*, 2007 WL 1601491, at *7.

7

contaminants in drinking water . . . the mere detection of MTBE in wells at very low levels would not make a reasonable person aware of a legally-cognizable injury sufficient to trigger the statute of limitations."[20] Applying these rules, I divided the City's claims into three categories:[21] in instances where there were

---

[20] *Id.* at *6.

[21] For purposes of that motion, I analyzed the limitations issues separately for each well. *See id. at* *4 ("The question of when (and whether) each release caused the alleged injury of which [plaintiff] complains will require an analysis of factual circumstances specific to each release site."). I also noted, however, that the question of whether the injury to each well should be analyzed separately was a question for the jury, which may turn on the "the degree of interconnection" between the wells. *Id.* The proof presented at this trial, and the questions posed to the jury in Phase II, suggest that the City's injury *for the five wells at issue in this bellwether trial* is not severable by well, but rather depends on the impact of MTBE on the *combined outflow* of all the Station 6 wells. *See* 8/24/09 Transcript ("Tr."). In 1999, the City decided to treat the combined outflow of these wells together in one treatment facility. Accordingly, in Phase II, the jury is asked to determine the peak level of MTBE in the "combined outflow" of the Station 6 wells, assuming that all the Station 6 wells are turned on within the next fifteen to twenty years. *See id.* The Phase II verdict sheet defines "combined outflow" as "the combination of all the water from all the [Station 6] wells that goes into the treatment facility." *Id.* In Phase III, the jury will determine whether the peak level of MTBE contamination in the "combined outflow" is injurious and requires treatment. Thus, the "injury" at issue in this bellwether trial is the injury to the combined outflow of all six wells. In prior decisions, I have explained that "the place the [injury] occurred is the *capture zone* of each well, where the MTBE now contaminating [a] well must have first contaminated the groundwater." *In re MTBE*, 591 F. Supp. 2d 259, 275 (S.D.N.Y. 2008) (emphasis added). Here, the jury is asked in Phase II to determine whether "MTBE will be in the groundwater of the capture zone of the *Station 6 wells*," where the capture zone is defined to "consist[] of the groundwater that will be drawn into the *Station 6 wells* when they begin operation." 8/24/09 Transcript

8

detections prior to October 31, 2000, but the detections were below 10 ppb, I denied summary judgment because there were triable issues regarding whether the City knew that a contamination *at that level* was injurious; in instances where there were detections above 10 ppb prior to the cut-off date, I held that the claims were time-barred as a matter of law; and, significantly, in instances where there were "no MTBE *detections* until after October 31, 2000," I held that the City's claims were "timely" as a matter of law, because no *injury* could have occurred prior to that time, regardless of what the City *knew* at that time.[22]

## III. DISCUSSION

Of the five wells at issue in this litigation, only two had detections prior to October 31, 2000. The highest such detection was 1.5 ppb. Under the first statute of limitations Opinion in this case, the City's claims relating to its

---

("Tr.") (emphases added). The relevant capture zone for determining the place of injury in this case, therefore, is the capture zone of all the Station 6 wells, rather than the capture zone of each well considered separately. The limitations question for the jury, then, should be framed in terms of whether, at any time prior to October 31, 2000, there was sufficient MTBE in the capture zone of *all the Station 6 wells* such that, if the wells were turned on, the combined outflow of the Station 6 wells would contain an injurious level of MTBE. I reemphasize, however, that the issue of whether the injuries to two or more nearby wells are severable is a fact-specific issue and that the decision to consider the injuries to the Station 6 wells together has no bearing on the severability of the wells that are not part of Station 6.

[22] *In re MTBE*, 2007 WL 1601491 at *8.

three wells with no pre-limitations detections are timely as a matter of law and the timeliness of the City's claims relating to its two wells with low-level detections depends on triable factual disputes. Exxon asks this Court to reconsider that decision in light of developments in the City's legal theory and of newly discovered facts relating to the City's early design plans for Station 6.

Exxon first argues that the City's conduct in designing a treatment plant to treat these wells for MTBE shows that the City knew of its injury in 1999. To the extent Exxon is arguing that the statute of limitations begins to run at the time of the City's knowledge of an anticipated injury – even if this is *before* the time of the actual injury – Exxon's argument fails. One cannot *know* of an injury that does not exist. In 1999, when there was no detection of MTBE in any of these wells, the City began to design a treatment plant to treat these wells for MTBE because the City *anticipated* that MTBE would, or *might*, enter the wells. Such preventive action plainly does not start the limitations clock. Rather, under New York law, the clock cannot start to run until the *injury* occurs, regardless of when one begins to take preventive steps to thwart or mollify an anticipated injury.

Exxon next argues that the City's injury is the *design and construction costs* of Station 6, which the City first incurred in 1999. This argument fares no better. The design and construction costs of the Station 6

10

treatment plant is *not* the City's injury. The injury is the *contamination* of the City's groundwater. As I have stated on several occasions, except where there is a statutory duty to treat the contamination, "the City is *injured by a concentration of MTBE in its groundwater* if a reasonable public water provider would take action to monitor, test and/or treat groundwater containing that level of MTBE."[23] The MTBE contamination is the *injury*; the design and construction costs are *damages* the City seeks to recover for remediating the injury. The clock starts, at the earliest, when the injury occurred, not when the City first incurred costs in anticipating and preparing to ameliorate the injury.

Exxon argues, finally, that because the City's claims are exclusively for future injuries, the clock should begin to run when these *future* injury claims could have first been brought, which was in 1999. This argument fails because the City could not have brought the claims it now brings until it was actually injured. Under New York law, a plaintiff who alleges that an injury is ongoing or recurring traditionally had two choices: (a) it could bring successive suits each time the injury recurred on the theory that "a cause of action for a continuous or recurring wrong accrues anew every day, or for each injury"[24]; or (b) it could bring a single

---

[23] 7/29/09 Tr. at 55, Bench Decision.

[24] 75A New York Jurisprudence, Limitations and Laches § 267 (2007).

11

suit that seeks to recover all past and future damages arising from the recurring injury. In the latter type of suit, "so far as [future] damages may be reasonably anticipated, they may be included in a recovery for the original injury, though even at the time of the trial they may not yet exist."[25] The New York Court of Appeals recently foreclosed the first option, however, by holding that the applicable statute of limitations begins to run for all *future* claims at the time the recurring injury was *first* inflicted.[26] Accordingly, to avoid the time bar for future claims, plaintiffs alleging a continuing toxic tort must bring one timely suit that seeks to recover all past and future damages.

As I explained in a recent opinion, the City brings a traditional recurring injury claim, which seeks past and future damages for a recurring injury that has *already begun* and that will recur in the future.[27] As I further explained, a recurring injury claim is very different from a pure future injury claim, which seeks damages for an injury that has *not yet begun*. When a plaintiff brings a

---

[25] *Schmidt*, 270 N.Y. at 300.

[26] *See Jensen v. General Elec. Co.*, 82 N.Y.2d 77, 82 (1993) (holding that when the New York Legislature enacted section 214-c, it intended to abrogate the continuing tort doctrine for claims alleging ongoing toxic torts).

[27] *See In re MTBE*, 04 Civ. 3417, 2009 WL 1952497, at *6 (S.D.N.Y. July 6, 2009).

12

future injury claim that is not predicated on any past or current injury, the plaintiff must show that the future injury is *imminent* and the plaintiff must establish its future damages by *clear and convincing* evidence.[28] By contrast, when the plaintiff brings a traditional recurring injury claim that seeks future damages for a recurring injury that has *already begun*, the plaintiff must show future damages only by a preponderance of the evidence and need not show that the future harm is imminent.[29] The City brings a recurring injury claim because it alleges a "*present injury* . . . that its Section 6 wells *have already been contaminated* by MTBE at a level that requires remediation."[30]

---

[28] *See id.* at *7.

[29] *See id.*

[30] *Id.* at *6. There can be no dispute that the City's recurring injury has already begun. In an exhibit supplied by the City, there is uncontested evidence that Well 6D had a detection of 350 ppb on January 28, 2003 during pilot testing. *See* MTBE Expert Report of Malcolm Pirnie, Expert for the City, Ex. 3 to Declaration of Marnie E. Riddle in Opposition to Def. Mem., at 7-9. This is 35 times above the maximum contaminant level ("MCL"), which I have held to constitute an injury as a matter of law. Although Exxon has argued that the City cannot be injured by MTBE in the water unless and until it uses the water, I have explained that the City has a property interest in the use of the water, which can be injured by MTBE contamination even when the wells are not in use, provided the City currently intends in good faith to use the water in the future. The jury found, in Phase I, that the City currently intends, in good faith, to treat and use the water in the future. Moreover, the past contamination of the water in well 6D caused the City to monitor and test the well, which further attests to the City's property interest in the use of the water in the capture zone of well 6D. In short, there is no

13

It is commonplace that "different periods of limitation" may apply to different legal theories that seek recovery "for the same injury."[31] In such circumstances, "whether the statute bars recovery under any count depends upon the nature and origin of the liability asserted in that count."[32] As noted, a recurring injury claim is a very different type of claim from a future injury claim and the claims have different elements and standards of proof. Because a recurring injury claim, by definition and unlike a future injury claim, cannot be brought until the recurring injury has begun, the statute of limitations for a recurring injury claim cannot begin to run until the recurring injury first began – regardless of when future damages could have first been proven. Thus, in determining the timeliness

---

doubt that the City has been injured in the past by MTBE contamination at well 6D. Further, because well 6D generates more than one tenth of the combined flow of the Station 6 wells, *see* Joint Pre-Trial Order, Phase I, at 9-10 (stating that Well 6D has a rated capacity of 800 gallons per minute and that wells 6, 6A, 6B, 6D and 33 have a combined rated capacity of 5,400 gallons per minute); 9/24/98 Technical Memorandum for Station 6 Modifications, Ex. 2 to Declaration of James Pardo in Support of Def. Mem., at 2 (stating that well 6C has a rated capacity of 2,000 gallons per minute), the 350ppb detection at well 6D translates into more than a 35ppb detection in the combined flow of the Station 6 wells – which is more than 3.5 times higher than the MCL and constitutes an injury as a matter of law. Thus, there can be no dispute that the City's recurring injury at Station 6 has already begun, even when the injury is measured in terms of the combined flow from the Station 6 wells.

[31] *Schmidt*, 270 N.Y. at 299.

[32] *Id.*

of the City's recurring injury claim, the question is not, as Exxon suggests, when the City first knew of its *future* damages, but rather when the City was first injured by MTBE contamination in its water and first knew that it was so injured.

## IV. CONCLUSION

Accordingly, I adhere to my prior decision: in instances where there were MTBE detections below the MCL prior to October 31, 2000, the City's damages claims are time-barred only if Exxon proves that, prior to October 31, 2000, the City was injured by the detected level of MTBE contamination and the City knew, or should have known, that an MTBE detection at that level was injurious. Insofar as the City seeks injunctive relief, the City's claims are timely for the reasons stated in the prior decision. For the foregoing reasons, Exxon's motion for summary judgment is denied. The Clerk of the Court is directed to close the motion (No. 04 Civ. 3417, document 342; No. 00 MDL 1898, document 2604).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
August 25, 2009

## -Appearances-

### Liaison Counsel for Plaintiffs:

Robin Greenwald, Esq.
Robert Gordon, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, New York 10038
(212) 558-5500

### Counsel for Plaintiff City of New York:

| | |
|---|---|
| Victor M. Sher, Esq. | Susan Amron |
| Todd E. Robins, Esq. | Daniel Greene |
| Joshua G. Stein, Esq. | Assistant Corporation Counsel |
| Nicholas G. Campins, Esq. | 100 Church Street |
| Marnie E. Riddle, Esq. | New York, New York 10007 |
| Sher Leff LLP | (212) 788-1568 |
| 450 Mission Street, Suite 400 | |
| San Francisco, California 94105 | |
| (415) 348-1568 | |

### Liaison Counsel for Defendants and Counsel for Exxon Mobil Corporation:

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
McDermott Will & Emery LLP
340 Madison Avenue
New York, New York 10173
(212) 547-5583