**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------- x

In Re: Methyl Tertiary Butyl Ether ("MTBE")       Master File No. 1:00-1898
Products Liability Litigation                               MDL 1358 (SAS)
                                                         M21-88

----------------------------------------------------------------- x    ECF Case

**This document relates to the following case:**

*City of New York, et. al., v. Amerada Hess Corp., et al.*
Case No. 04 Civ. 3417

----------------------------------------------------------------- x

**PLAINTIFFS' AMENDED PROPOSED JURY INSTRUCTIONS FOR PHASE III**

       Plaintiffs hereby submit their Proposed Jury Instructions for Phase III of this trial. Plaintiffs

reserve the right to amend these proposed jury instructions.

Dockets.Justia.com

# I. Proposed Final Instructions for Phase III

Plaintiffs propose that the following final jury instructions be read to the jury following closing statements and before deliberation in Phase III:

## PROPOSED FINAL INSTRUCTION NO. 1

INTRODUCTORY REMARKS

A. Juror Attentiveness

Members of the jury, you are about to decide the fact issues raised in Phase III of this case. Before you do that, I will instruct you on the law. Please pay close attention to me. I will go slowly and will be as clear as possible.

B. Role of the Court

You have now heard all of the evidence in this phase of the trial as well as the final arguments of the lawyers for the parties. My duty at this point is to instruct you as to the law. It is your duty to accept these instructions of law and apply them to the facts as you determine them, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration.

On these legal matters, you must take the law as I give it to you. If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the Jury room. You will receive a copy of these instructions to take with you into the Jury room.

You should not be concerned about the wisdom of any rule that I state. Regardless of any opinion that you may have as to what the law may be or ought to be - it would violate your sworn

duty to base a verdict upon any view of the law other than the one I give you.

C. Role of the Jury

As I have said, your role is to consider and decide the fact issues in this phase of the trial. You, the members of the jury, are the sole and exclusive judges of the facts. You pass upon the evidence; you determine the credibility or believability of the witnesses; you resolve whatever conflicts may be in the testimony; you draw whatever reasonable inferences and conclusions you decide to draw from the facts as you have determined them; and you determine the weight of the evidence.

In determining the facts, you must rely upon your own recollection of the evidence. What the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions, is not evidence. Nor is anything I may have said during the trial or may say during these instructions about a fact issue to be taken instead of your own independent recollection. What I say is not evidence. It is your own independent recollection of the evidence that controls. Similarly, remember that a question put to a witness is never evidence.

Only the answer is evidence. However, you may not consider any answer that I directed you to disregard or that I directed struck from the record. If there is any difference or contradiction between what any lawyer has said and what you decide the evidence showed, or between anything I may have said and what you decide the evidence showed, it is your view of the evidence - not the lawyers' and not mine - that controls.

Because you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your decision should be. The rulings I have made during the trial are not indicative of my views of what your decision should be as to whether the plaintiff or the defendant have presented the more convincing evidence.

I also ask you to draw no inference from the fact that upon occasion I asked questions of certain witnesses.  These questions were intended only for clarification or to move things along.  They were not intended to suggest any opinions on my part as to the decision you should render or whether any of the witnesses may have been more credible or less credible than any of the other witnesses.  It is important that you understand that I wish to convey no opinion as to the decision you should render in this phase of the trial, and that if I did convey such an opinion, you would not be obliged in any way to follow it.

In determining the facts, you must weigh and consider the evidence without regard to sympathy, prejudice, or passion for or against any party.  I will later discuss with you how to pass upon the credibility - or believability - of the witnesses.

Authority:  Phase I Instructions.

**PROPOSED FINAL INSTRUCTION NO. 2**

**"Direct" and "circumstantial" evidence—Defined**

There are two kinds of evidence: direct and circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally experienced through his own senses - something seen, felt, touched, heard, or tasted.  Direct evidence may also be in the form of an exhibit where the fact to be proven is its present existence or condition.

Circumstantial evidence is evidence that tends to prove a disputed fact by proof of other facts.  There is a simple example of circumstantial evidence which is often used in this courthouse.  Assume that when you came into the courthouse this morning the sun was shining and it was a nice day.  Assume that the courtroom blinds were drawn and you could not look outside.  As you were sitting here, someone walked in with an umbrella that was dripping wet. Then a few minutes later another person also entered with a wet umbrella.  Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining.  So you have no direct evidence of that fact.  But on the combination of facts which I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence.  You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.

Circumstantial evidence is of no less value than direct evidence; the law makes no distinction between direct evidence and circumstantial evidence but simply requires that your verdict must be based on a preponderance of all the evidence presented.

It is for you to decide whether a fact has been proven by circumstantial evidence. In

making that decision, you must consider all the evidence related to that fact in the light of reason, common sense and your experience.

Keep in mind that the mere existence of an inference against the defendant does not relieve the plaintiff of the burden of establishing its claims by a preponderance of the evidence. In order for the plaintiff to prevail on a claim, you must still believe from the credible evidence that the plaintiff has sustained the burden cast upon it.

Authority:  Phase I Jury Charge.

## PROPOSED FINAL INSTRUCTION NO. 3

### <u>Preponderance of the evidence</u>

In this phase of the trial, the plaintiff - the City- has the burden of proving most of its claims by a preponderance of the evidence. If you find that the plaintiff has failed to establish a claim by a preponderance of the evidence, you must decide against it on that claim.

However, it is important to point out that it is ExxonMobil that has the burden of proving its affirmative defenses, including its statute of limitations defense by a preponderance of the evidence. ExxonMobil has the burden of proving its market share under the commingled product theory by a preponderance of the evidence.

Establishing a fact by a preponderance of the evidence means proving that the fact is more likely true than not true. A preponderance of the evidence means the greater weight of the evidence. It does not mean the greater number of witnesses or the greater length of time taken by either side. The phrase refers to the quality of the evidence, that is, its convincing quality, the weight, and the effect that it has on your minds. The law requires that for a plaintiff to prevail on a claim, the evidence that supports the claim must appeal to you as more nearly representing what took place than the evidence opposed to the claim. If it does not, or if it weighs so evenly that you are unable to say that there is a preponderance on either side, then you must decide the question in favor of the defendant. It is only if the evidence favoring the plaintiffs claim outweighs the evidence opposed to it that you can find in favor of the plaintiff.

Some of you have heard of proof "beyond a reasonable doubt," which is the proper standard of proof for a *criminal* trial. However, a plaintiff in a *civil* case does not have to satisfy that requirement, and therefore you should put it out of your mind.

Authority: Phase I Jury Charge; 3 Kevin F. O'Malley, Jay E. Grenig, Hon. William C. Lee, *Federal Jury Practice & Instructions*, § 104.01 (5th Ed., 2000 & rev. 2009) (as modified); Opinion and Order in this Action, Scheindlin, S. (June 9, 2009) at 18-19 ("Rather, the City must prove, by a preponderance of the evidence, that MTBE of the particular defendant was actually in the commingled product that caused the contamination."). *See also Glew v. Cigna Group Ins.*, 590 F.Supp.2d 395 (E.D.N.Y. 2008) ("While there has been some dispute as to the burden of proof, in this Court's view, the proper standard is the same as other civil cases in the federal court, namely, by a preponderance of the evidence."); *Yi v. Sterling Collision Centers, Inc.*, 480 F.3d 505, 507 (7th Cir. 2007) (presumption that preponderance standard applies in federal civil cases); *Mathis v. Hargrove*, 888 A.2d 377, 391 n. 5, 166 Md.App. 286 (Md. 2005) (preponderance of the evidence is the proper standard for civil action); *Rixmann v. City of Prior Lake*, 723 N.W.2d 493, 495 (Minn.App. 2006); *Mutual of Enumclaw Ins. Co. v. McBride*, 667 P.2d 494, 295 Or. 398 (Or. 1982) (burden of proof on issue of fraud to void a fire insurance policy is by a preponderance of the evidence; it does not require clear and convincing proof). *See also Ramsey v. United Mine Workers of America*, 401 U.S. 302 (1971) (plaintiff in an antitrust action against a labor union need only prove his case by a preponderance of the evidence; pro-vision of 29 U.S.C.A. § 106 requiring "clear proof" only applies to question of authorization, participation or ratification of acts); *Ellis v. Brotherhood of Railway Clerks*, 685 F.2d 1065, 1071 (9th Cir. 1982) (in a civil case, the party with the burden of proof must persuade the trier of fact by a preponderance of the evidence; no higher standard is required simply because a constitutional issue is involved). *See, e.g., Nissho-Iwai Co. v. M/T Stolt Lion*, 719 F.2d 34, 38 (2d Cir.1983) ("preponderance" means that "upon all the evidence … the facts asserted by the plaintiff are more probably true than false"), *quoting Porter v. American Export Lines, Inc.*, 387 F.2d 409, 410–411 (3d Cir.1968). *See also South-East Coal Co. v. Consolidation Coal Co.*, 434 F.2d 767, 777–78 (6th Cir.1970), cert. denied, 402 U.S. 983 (1971); *Henry v. Dept. Corrections*, 131 Fed.Appx. 847, 850 (3d Cir. 2005) ("more likely than not"; quoting Black's Law Dictionary); *Mathis v. Hargrove*, 2005, 888 A.2d 377, 391 n. 5, 166 Md.App. 286 ("evidence which, when considered and compared with the evidence opposed to it, has more convincing force and produces in the mind of the trier of fact a belief that it is more likely true than not); *Ralston Oil & Gas Co. v. July Corp.*, 719 P.2d 334 (Colo.App.1985) (proof by a preponderance of the evidence means evidence that leads the trier of fact to find that the existence of the fact is more probable than not).

# PROPOSED FINAL INSTRUCTION NO. 4

## **Substantial Factor**

The requirement that the defendant's actions must have caused the plaintiff's injury is common in the law.

The "substantial factor" standard for causation recognizes that often many acts can be said to have caused a particular injury, and requires only that defendant's actions be a substantial factor in producing the injury. A plaintiff need not eliminate every other possible cause, and the fact that another cause may have happened at the same time as the defendant's negligent act or omission does not relieve defendant from liability. In this case, the City may satisfy its burden by showing that the ExxonMobil's product or ExxonMobil's failure to warn, rather than the ExxonMobil's conduct, that was a substantial cause of the plaintiff's injuries. The City may also satisfy its burden by showing that ExxonMobil directly owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater and for that reason ExxonMobil directly caused the contamination in the Station 6 wells.

Thus, in this case, the City need not prove that ExxonMobil or gasoline containing MTBE is the *only* cause of its injury. Rather, ExxonMobil or gasoline containing MTBE need only be a substantial contributor to the City's injury. "Substantial" in this instance does not mean "more than half" or any other particular percentage; as long as the contribution is more than trivial, it is substantial.

Authority: *In re MTBE*, 591 F.Supp.2d 259, 265-68 (S.D.N.Y 2008); *In re MTBE*, 517 F.Supp.2d at 668; Restatement (Second) of Torts § 433 (1977). Restatement (Third) of Torts: Prod. Liab. § 15, cmt. a (1998); *Mortensen v. Memorial Hospital*, 105 A.D.2d 151, 483 N.Y.S.2d

264, 269 (1st Dep't 1984). *Accord Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 316, 434 N.Y.S.2d 166, 414 N.E.2d 666 (1980); see also *Capicchioni v. Morrissey*, 205 A.D.2d 959, 613 N.Y.S.2d 499 (3d Dep't 1994) (holding that jury instruction implying that defendant must be the sole cause of a car accident was reversible error); See *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 106, 463 N.Y.S.2d 398, 450 N.E.2d 204 (1983); *Summers v. Tice*, 33 Cal.2d 80, 199 P.2d 1 (1948).

**PROPOSED FINAL INSTRUCTION NO. 5**

**<u>Other Tortfeasors/Settled Parties</u>**

You may have heard counsel for the parties mention other companies who, in addition to ExxonMobil, contributed to the City's injury in this case. The only company whose wrongdoing is relevant in your deliberations is ExxonMobil, because it the only defendant remaining in this case. You should put the acts and omissions of others who may have contributed to the City's harm out of your mind.

Authority: *In Re: New York County Data Entry Worker Product Liability Litigation,* 162 Misc.2d 263, 616 N.Y.S.2d 424 (N.Y. Sup. Ct. 1994); FRE 408.

# PROPOSED FINAL JURY INSTRUCTION NO. 6

## Pre-existing Contamination and Concurrent Cause

There may be more than one cause of an injury. Where the independent and negligent acts or omissions of two or more parties cause injury to another, each of those negligent acts or omissions is regarded as a cause of that injury, provided that it was a substantial factor in bringing about that injury. If you find that the independent acts or omissions of two or more parties *including* ExxonMobil have caused the City's injury, you should regard ExxonMobil's negligent acts or omissions as a cause of the City's injury, provided that it was a substantial factor in bringing about that injury.

The level of pre-existing contamination, if any, is irrelevant to the issue of the City's injury.

The City is entitled to recover for all damage caused by MTBE migrating into its groundwater, regardless of the existence of pre-existing contamination. On all of the City's claims that require it to prove that it has been injured, evidence of any pre-existing contamination with substances other than MTBE in the City's wells or ground water is irrelevant to the City's injury. Thus, in determining whether the city has been injured, you may not determine that the City is less injured, or not injured, because there is contamination in the wells or groundwater from substances other than MTBE.

Authority: NY PJI 2:71; *Cornell v. Exxon*, 162 A.D.2d 892, 558 N.Y.S.2d 647 (App Div. 3d 1990) ("Chauncy also claims that since plaintiffs discovered their water supply was contaminated with bacteria upon purchasing their property, the subsequent gasoline contamination is irrelevant on the issue of detriment to their property. This claim is unpersuasive. As Supreme Court noted, bacterial contamination of a water supply can be neutralized by the use of chlorine treatment, while gasoline contamination cannot be treated but must be prevented from entering the water supply. The preexisting bacterial contamination is but a factor to be weighed by a jury in their determination of damages."); *see also Walker Drug Co., Inc. v. La Sal Oil Co.,* 972 P.2d 1238, 1248 (Utah, 1998) ("The Walkers are entitled to recover for all damage

caused by new gasoline migrating onto the property during the limitations period, regardless of the existence of pre-existing contamination")

**PROPOSED FINAL INSTRUCTION NO. 7**

**<u>General verdict</u>**

The foreperson will preside over your deliberations, and will be your spokesman here in Court.

Forms of verdict have been prepared for your convenience. [Read forms of verdict].

You will take these forms to the jury room and, when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form that sets forth the verdict upon which you unanimously agree; and then return with your verdict to the courtroom.

Authority:  3 Kevin F. O'Malley, Jay E. Grenig, Hon. William C. Lee, *Federal Jury Practice & Instructions*, § 106.04 (5th Ed., 2000 & rev. 2009) (as modified).

# PROPOSED FINAL INSTRUCTION NO. 8

## Strict Liability for Design Defect

To prove a design defect claim, a plaintiff must show that the product at issue was not reasonably safe as designed because there was a substantial likelihood of harm and it was feasible to design the product in a less harmful manner. Thus, a manufacturer that sells a product in a defective condition is liable for injury that results from use of that product when the product is used for its intended or reasonably foreseeable purpose.

A product is defective if it is not reasonably safe—that is, if the product is so likely to be harmful to people or property that a reasonable person who had actual knowledge of its potential for producing injury to people or property would conclude that it should not have been marketed in that condition.

Things you may consider in determining whether gasoline containing MTBE is not reasonably safe include, for example: the need to remediate MTBE from groundwater and drinking water supplies, harm to the environment (in other words, the ease with which MTBE reaches groundwater, how it spreads farther and faster than other chemicals in gasoline, the length of time MTBE persists in groundwater), whether MTBE's taste and odor makes water containing MTBE unacceptable to consumers, the fact that studies have shown that exposure to MTBE may be harmful to people and may make them sick, and the cost of removing MTBE from drinking water. But, this is not a personal injury case. The City does not need to prove that MTBE causes cancer or any other disease for you to find that it is not reasonably safe.

A product may be defective as a result of a defective design. The burden of proving that the product was defective and that the defect was a substantial factor in causing plaintiff's injury is on the plaintiff.

Here, the plaintiff, the City, claims that the gasoline containing MTBE manufactured by defendant ExxonMobil was defective because (1) MTBE is a toxic compound that easily contaminates groundwater and drinking water supplies; (2) ExxonMobil knew about the dangers that MTBE posed to ground water since the 1980s and that underground gasoline storage systems have a propensity to leak; (3) despite this knowledge, ExxonMobil did not take any steps to mitigate the dangers of MTBE when using it as a gasoline additive and (4) feasible alternatives, such as ethanol, could have been used in place of MTBE. ExxonMobil denies that the gasoline containing MTBE was defectively designed and contends that there was no feasible alternative to using MTBE in gasoline.

Whether the product should have been marketed in that condition depends upon a balancing of the risks involved in using the product against (1) the product's utility and its costs, and (2) the risks, utility and costs of alternative designs as compared to the product the defendant did market. Thus, whether MTBE should have been marketed depends on (1) its utility and costs and (2) the risks, utility and costs of alternative designs, such as ethanol, compared to gasoline containing MTBE, which ExxonMobil did market.

It is not necessary to find that the defendant ExxonMobil knew of gasoline containing MTBE's potential for hurting people and property for you to decide that it was defectively designed. It is sufficient that a reasonable person who did in fact know of the product's potential for hurting people and property would have concluded that gasoline containing MTBE should not have been marketed in that condition.

If you find that, at the time the gasoline containing MTBE was made, distributed and sold it was not defectively designed, then you will find that the gasoline containing MTBE was not defective and you need proceed no further in your deliberations on this issue.

If you find that, at the time the gasoline containing MTBE was made, distributed and sold, the gasoline containing MTBE was defective because it contained a design defect, then you will proceed to consider whether the defect caused plaintiff's injury, that is, whether a reasonable person would regard it as a cause of the injury.

The City claims that MTBE has contaminated its wells and that by introducing Gasoline containing MTBE into a commingled product distribution system, ExxonMobil caused such contamination. ExxonMobil claims that the City has not proved that MTBE contaminated its wells and has not proved that ExxonMobil caused such contamination. If you find that one or more of the City's wells were contaminated with MTBE as a result of ExxonMobil's manufacture and distribution of gasoline containing MTBE into a commingled product system, then you must find that the City's one or more of the City's Wells were contaminated by ExxonMobil under the commingled product theory.

The City also claims that ExxonMobil directly owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater and for that reason ExxonMobil directly caused the contamination in its wells. ExxonMobil denies that it owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater. If you find that ExxonMobil owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater and contaminated one or more of the City's wells, then you must find that ExxonMobil proximately caused the contamination of one or more of the City's wells.

If you find that the defect was not a substantial factor in causing plaintiff's injury, you

need proceed no further in your deliberations on this issue.

Authority PJI 2:120 N.Y. Pattern Jury Instr.--Civil 2:120; *In re MTBE*, 2008 WL 1971538, * 2 (May 7, 2008); *In re Methyl Tertiary Butyl Ether (""MTBE"") Products Liability Litigation,* 568F.Supp.2d 376 S.D.N.Y.,2008 (A reasonable jury could find that property with drinking wells that have been contaminated with MTBE is worth less than property with drinking wells that have not been contaminated. "The turpentine-like taste and odor of MTBE ... can make such drinking water unacceptable to consumers." Studies have also shown that inhalation and exposure to MTBE causes cancer in animals and it may cause cancer in humans such as leukemia and lymphoma) *citing U.S. Envtl. Prot. Agency, Achieving Clean Air and Clean Water: The Report of the Blue Ribbon Panel on Oxygenates in Gasoline* 13, 77 (1999) available at http:// www. epa. gov/ oms/ consumer/ fuels/ oxypanel/ r 99021. pdf.; *In re MTBE*, No. 00 Civ. 1898, 2008 WL 2607852, at *4 n. 38 (S.D.N.Y.2008) (*citing In re MTBE*, 241 F.R.D. 435, 437 n. 2 (S.D.N.Y.2007)); *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 2007 WL 1601491 (S.D.N.Y., June 04, 2007) (Gasoline is a mixture of hundreds of compounds. Compared to the other components of gasoline, MTBE is extremely soluble in water, and relatively slow to degrade into other compounds. Due to its solubility, MTBE moves faster and farther in groundwater than other gasoline components. Due to its low degradation rate, it persists longer in soil and water than other gasoline components. These properties alone are not problematic, but MTBE also imparts an unpleasant taste and odor to drinking water that can be perceived at concentrations much lower than other gasoline components, and some studies suggest that it may be carcinogenic to animals and/or humans.); *Lugo v. LJN Toys, Ltd.*, 75 NY2d 850; *Micallef v. Miehle Co.*, 39 NY2d 376; Restatement (Second) of Torts § 402A, Comment i (1965) ("The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. Good whiskey is not unreasonably dangerous merely because it will make some people drunk, and is especially dangerous to alcoholics; but bad whiskey, containing a dangerous amount of fuel oil, is unreasonably dangerous. Good tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful; but tobacco containing something like marijuana may be unreasonably dangerous. Good butter is not unreasonably dangerous merely because, if such be the case, it deposits cholesterol in the arteries and leads to heart attacks; but bad butter, contaminated with poisonous fish oil, is unreasonably dangerous.").

**<u>Strict Liability for Failure to Warn</u>**

A manufacturer, wholesaler, distributor, retailer, or maker of a component part that sells a product in a defective condition is liable for injury that results from use of the product when the product is used for its intended or reasonably foreseeable purpose.

A product may be defective as a result of inadequate warnings or instructions. The burden of proving that the product was defective and that the defect was a substantial factor in causing plaintiff's injury is on the plaintiff.

The plaintiff, the City, claims that the gasoline containing MTBE manufactured and distributed by defendant ExxonMobil was defective because ExxonMobil failed to warn the public, distributors, customers, station owners, its employees, gasoline truck drivers, the City, the United States, New York State, and water providers about all of MTBE's hazardous and unusual properties. For example, the City claims that ExxonMobil should have warned the public, distributors, customers, station owners, its employees, gasoline truck drivers, the City, the United States, New York State, and water providers that gasoline containing MTBE needed to be stored and handled differently than other gasoline because of its high solubility, high mobility, persistence, taste and odor, all of which makes it more likely to contaminate groundwater and drinking water, as well as the difficulty and cost of removing MTBE from water. The City also claims that ExxonMobil should have warned station owners and customers that they needed to install monitoring wells and regularly test for MTBE contamination and that once such contamination was detected, it was extremely important to remediate the site aggressively and quickly. The City also claims that ExxonMobil should have warned the public, distributors, customers, station owners, its employees, gasoline truck drivers, the City, the United States, New

York State and water providers that gasoline containing MTBE posed an additional, incremental environmental risk compared to gasoline without MTBE. The City also claims that ExxonMobil should have warned the public, distributors, customers, station owners, its employees, gasoline truck drivers, the City, the United States, New York State, and water providers that gasoline stations located near water supplies needed to take special precautions and to upgrade their UST systems earlier than may otherwise have been required by law. ExxonMobil denies that such warnings were needed.

The manufacturer of a product has a duty to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known in the use of reasonable care. Reasonable care means that degree of care which a reasonably prudent person would use under the same circumstances. The manufacturer of a product also has a duty to test fully and inspect its products to uncover all dangers that are scientifically discoverable before the product is sold.

If you find that, at the time the gasoline containing MTBE was made, distributed and sold adequate warnings were provided to the public, distributors, customers, station owners, its employees, gasoline truck drivers, the City, the United States, New York State  and water providers concerning MTBE's hazardous and unusual properties, the need to be handle MTBE differently than other gasoline because of its high solubility, the need to install monitoring wells, the need to regularly test for MTBE contamination, the fact that gasoline containing MTBE posed an additional, incremental environmental risk compared to gasoline without MTBE or the need to remediate the site aggressively and quickly once MTBE is detected, or the need for gasoline stations located near water supplies needed to take special precautions and to upgrade their UST systems earlier than required by law, then you will find that the gasoline containing

MTBE was not defective and you need proceed no further in your deliberations on this issue.

If you find that, when ExxonMobil made, distributed and sold the gasoline containing MTBE, the gasoline containing MTBE was defective because it did not contain or was not accompanied by adequate warnings to the public, distributors, customers, station owners, its employees, gasoline truck drivers, the City, the United States, New York State, or water providers, then you will proceed to consider whether the defect was a substantial factor in causing the City's injury, that is, whether a reasonable person would regard it as a cause of the injury.

The City claims that MTBE has contaminated its wells and that by introducing Gasoline containing MTBE into a commingled product distribution system, ExxonMobil caused such contamination. ExxonMobil claims that the City has not proved that MTBE contaminated its wells and has not proved that ExxonMobil caused such contamination. If you find that one or more of the City's wells were contaminated with MTBE as a result of ExxonMobil's manufacture and distribution of gasoline containing MTBE into a commingled product system, then you must find that the City's one or more of the City's Wells were contaminated by ExxonMobil.

The City also claims that ExxonMobil directly owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater and for that reason ExxonMobil directly caused the contamination in its wells. ExxonMobil denies that it owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater. If you find that ExxonMobil owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater and contaminated one or more of the

City's wells, then you must find that ExxonMobil proximately caused the contamination of one or more of the City's wells.

If you find that the defect was not a substantial factor in causing the City's injury, you need proceed no further in your deliberations on this issue.

Authority:  N.Y. Pattern Jury Instr.--Civil 2:120; *Johnson v. Johnson Chemical Co.,* 588 N.Y.S.2d 607; *Buley v. Rexnord Process Machinery Div.,* 482 N.Y.S.2d 104; *George v. Celotex,* 914 F.2d 26, 27 (2d Cir. 1990) ("a manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known. … a manufacturer has a duty to test fully and inspect its products to uncover all dangers that are scientifically discoverable."); *In re Methyl Tertiary Butyl Ether (""MTBE"") Products Liability Litigation,* 568F.Supp.2d 376 S.D.N.Y.,2008 (A reasonable jury could find that property with drinking wells that have been contaminated with MTBE is worth less than property with drinking wells that have not been contaminated. "The turpentine-like taste and odor of MTBE ... can make such drinking water unacceptable to consumers." Studies have also shown that inhalation and exposure to MTBE causes cancer in animals and it may cause cancer in humans such as leukemia and lymphoma) *citing U.S. Envtl. Prot. Agency, Achieving Clean Air and Clean Water: The Report of the Blue Ribbon Panel on Oxygenates in Gasoline* 13, 77 (1999) available at http:// www. epa. gov/ oms/ consumer/ fuels/ oxypanel/ r 99021. pdf.; *In re MTBE,* No. 00 Civ. 1898, 2008 WL 2607852, at *4 n. 38 (S.D.N.Y.2008) (*citing In re MTBE,* 241 F.R.D. 435, 437 n. 2 (S.D.N.Y.2007)); *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation,* 2007 WL 1601491 (S.D.N.Y., June 04, 2007) (Gasoline is a mixture of hundreds of compounds. Compared to the other components of gasoline, MTBE is extremely soluble in water, and relatively slow to degrade into other compounds. Due to its solubility, MTBE moves faster and farther in groundwater than other gasoline components. Due to its low degradation rate, it persists longer in soil and water than other gasoline components. These properties alone are not problematic, but MTBE also imparts an unpleasant taste and odor to drinking water that can be perceived at concentrations much lower than other gasoline components, and some studies suggest that it may be carcinogenic to animals and/or humans.); *Lugo v. LJN Toys, Ltd.*, 75 NY2d 850; *Micallef v. Miehle Co.*, 39 NY2d 376; Restatement (Second) of Torts § 402A, Comment i (1965) ("The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. Good whiskey is not unreasonably dangerous merely because it will make some people drunk, and is especially dangerous to alcoholics; but bad whiskey, containing a dangerous amount of fuel oil, is unreasonably dangerous. Good tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful; but tobacco containing something like marijuana may be unreasonably dangerous. Good butter is not unreasonably dangerous merely because, if such be the case, it deposits cholesterol in the arteries and leads to heart attacks; but bad butter, contaminated with poisonous fish oil, is unreasonably dangerous.").

## PROPOSED FINAL INSTRUCTION NO. 10

### **Negligence**

Negligence is lack of ordinary care. It is a failure to use that degree of care that a reasonably prudent person would have used under the same circumstances. Negligence may arise from doing an act that a reasonably prudent person would not have done under the same circumstances, or, on the other hand, from failing to do an act that a reasonably prudent person would have done under the same circumstances. A manufacturer, distributor and retailer of a product owes a duty to use reasonable care in the manufacture, distribution and sale of the product so that it will be reasonably safe for its intended or foreseeable uses. Reasonable care means that degree of care that a reasonably prudent manufacturer, distributor or retailer of such a product would use in the making, storing and dispensing of the product and its materials in order to produce a reasonably safe product.

The City claims that the defendant ExxonMobil negligently manufactured, promoted, distributed, and sold gasoline containing MTBE. Among other things, the City claims that ExxonMobil negligently failed to test MTBE to determine its potential toxicity to humans by way of drinking water exposure. The City also claims that ExxonMobil negligently failed to warn the public, distributors, customers, station owners, its employees, gasoline truck drivers, the City, the United States, New York State, and water providers about MTBE's hazardous and unusual properties. For example, the City claims that ExxonMobil should have warned the public, distributors, customers, station owners, its employees, gasoline truck drivers, the City, the United States, New York State, and water providers that gasoline containing MTBE needed to be stored and handled differently than other gasoline because of its high solubility, high mobility, persistence, taste and odor, all of which makes it more likely to contaminate groundwater and

drinking water, as well as the difficulty and cost of removing MTBE from water. The City also claims that ExxonMobil should have warned station owners and customers that they needed to install monitoring wells and regularly test for MTBE contamination and that once such contamination was detected, it was extremely important to remediate the site aggressively and quickly. The City also claims that ExxonMobil should have warned the public, distributors, customers, station owners, its employees, gasoline truck drivers, the City, water providers, the State of New York and the federal government that gasoline stations located near water supplies needed to take special precautions and to upgrade their UST systems earlier than may otherwise have been required by law. The City also claims that ExxonMobil should have warned the public, distributors, customers, station owners, its employees, gasoline truck drivers, the City, the United States, New York State, and water providers that gasoline containing MTBE posed an additional, incremental environmental risk compared to gasoline without MTBE. ExxonMobil denies that such warnings were needed.

In addition, the City claims that ExxonMobil was also negligent because (1) as a manufacturer, distributor, and retailer of gasoline with MTBE, ExxonMobil had a duty of care to ensure that the gasoline containing MTBE was properly distributed, stored, and dispensed; (2) ExxonMobil failed to reasonably ensure that the gasoline containing MTBE which they manufactured, distributed, and retailed was properly distributed, stored, and dispensed and (3) ExxonMobil showed complete disregard for, and was reckless of, the rights and safety of others, in failing to do so.

In considering any lack of reasonable care on ExxonMobil's part, you must keep in mind that merely because ExxonMobil may have complied with certain minimum legal standards, such as EPA regulations, does not mean that ExxonMobil is not liable to the City for negligence.

Similarly, just because  EPA or another part of the government failed to take action regarding the possibility that MTBE could contaminate groundwater, does not mean that ExxonMobil's actions were reasonable if it knew that MTBE posed a danger to groundwater and that underground gasoline storage systems  have a propensity to leak.

If you find that the gasoline containing MTBE was not reasonably safe for its intended or foreseeable uses or that ExxonMobil failed to used reasonable care in adequately warning station owners and others as noted earlier in this instruction or that ExxonMobil failed to use reasonable care in manufacturing, storing and distributing gasoline containing MTBE, or failed to ensure that station owners and the public properly stored, dispensed or transported MTBE, you will find that ExxonMobil was negligent and must then determine whether ExxonMobil's negligence caused the City's injury.

The City claims that MTBE has contaminated its wells and that by introducing Gasoline containing MTBE into a commingled product distribution system, ExxonMobil caused such contamination.  ExxonMobil claims that the City has not proved that MTBE contaminated its wells and has not proved that ExxonMobil caused such contamination.  If you find that one or more of the City's wells were contaminated with MTBE as a result of ExxonMobil's distribution of gasoline containing MTBE into a commingled product system, then you must find that the City's one or more of the City's Wells were contaminated by ExxonMobil under the commingled product theory.

The City also claims that ExxonMobil directly owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater and for that reason ExxonMobil directly caused the contamination in its wells.  ExxonMobil denies that it owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing

MTBE into the soil and groundwater.  If you find that ExxonMobil owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater and contaminated one or more of the City's wells, then you must find that ExxonMobil proximately caused the contamination of one or more of the City's wells.

If, however, you find that the gasoline containing MTBE was reasonably safe for its intended or foreseeable uses or that ExxonMobil used reasonable care in manufacturing, distributing, transporting, selling, storing and dispensing it, you will find that ExxonMobil was not negligent.

Authority: N.Y. Pattern Jury Instr.--Civil 2:125; N.Y. Pattern Jury Instr.--Civil 2:125; See Ferebee, 736 F.2d at 1542. Burke v. Dow Chemical Co.797 F.Supp. 1128, 1142 E.D.N.Y.,1992 (As a general rule, compliance with federal standards does not, in and of itself, immunize a manufacturer or retailer from state law tort liability.)

## PROPOSED FINAL INSTRUCTION NO. 11

### Gross Negligence or Willful Misconduct

In this case, you must decide whether defendant was guilty of gross negligence or willful misconduct. Negligence is a failure to exercise ordinary care. Gross negligence and willful misconduct are more than the failure to exercise reasonable care.

Gross negligence means a failure to use even slight care, or conduct that is so careless as to show complete disregard for the rights and safety of others.

Willful misconduct occurs when a person intentionally acts or fails to act knowing that its conduct will probably result in injury or damage. Willful misconduct also occurs when a person acts in so reckless a manner or fails to act in circumstances where an act is clearly required, so as to indicate disregard of the consequence of his or her action or inaction.

Here, the City claims that ExxonMobil knew that underground storage systems had very high leak rates and that MTBE was extremely hazardous to groundwater and harmful to human health before it decided to put MTBE into gasoline. The City further claims that while in possession of this knowledge regarding MTBE's hazards, both directly and by and through agents, ExxonMobil actively concealed MTBE's hazardous properties from the public, distributors, customers, station owners, its employees, gasoline truck drivers, the City, the United States, New York State, and water providers, concealing the truth from them by failing to warn them about MTBE's hazardous and unusual properties; intentionally omitting information about MTBE's properties from regulatory disclosures and communications; undermining third party studies such as the Maine Report that tried to sound the alarm regarding MTBE's hazardous and unusual properties; suppressing and failing to disclose their own internal studies and analyses that exposed the hazards of MTBE despite legal duties to the City and others that required them

to do so; intentionally withholding funding for industry studies regarding MTBE's impact on groundwater and human health in an effort to prevent the truth about MTBE from coming out. ExxonMobil denies all such claims in their entirety.

The City also claims that ExxonMobil made affirmative misstatements concerning MTBE to the public, distributors, customers, station owners, its employees, gasoline truck drivers, the City, the United States, New York State, and water providers. For example, the City claims that ExxonMobil represented that gasoline containing MTBE could be treated like any other gasoline (when in fact it had unusual properties that rendered it far more hazardous); that no special handling of gasoline containing MTBE was required (when in fact it was); that MTBE was not harmful to human health (when in fact it is); that ExxonMobil was a good product steward (when in fact it was not); that gasoline containing MTBE would not reach groundwater in large quantities (when they knew it would); and that ExxonMobil would timely remediate any MTBE contamination that resulted from their use of it in gasoline (when in fact ExxonMobil had no intention of remediating any site they did not directly own and even then, they would pursue the lowest cost form of remediation regardless of its effectiveness). ExxonMobil denies all such claims.

The City further claims that by the time ExxonMobil chose to use MTBE as an oxygenate in reformulated gasoline, it knew that the introduction of higher concentrations of MTBE into gasoline would result in widespread groundwater contamination that would be extremely difficult and costly to remediate and that an ever increasing quantity of MTBE would contaminate drinking water rendering it unfit for human consumption (both because of its offensive taste and odor and because of its threat to human health). The City claims that despite this in-depth knowledge of the hazards of MTBE, ExxonMobil knowingly produced, distributed,

marketed, and promoted MTBE and gasoline containing MTBE, while consciously disregarding MTBE's harmful impact on groundwater and human health. ExxonMobil denies all such claims.

The City also claims that ExxonMobil placed gasoline containing MTBE into underground storage systems that ExxonMobil knew would leak and that ExxonMobil also failed to timely upgrade underground storage systems to avoid leaks and to advise downstream handlers of their gasoline that upgrades were immediately needed to address MTBE's unique hazards and that ExxonMobil failed to adopt MTBE-specific procedures for the remediation of suspected and known releases of MTBE, instead treating MTBE releases like slower moving BTEX releases, all but guaranteeing its proliferation in groundwater. The City further claims that ExxonMobil knew that when such gasoline containing MTBE reached groundwater, it would make its way to drinking water supplies, resulting in extraordinary treatment costs and/or human exposure and related health impacts. When confronted repeatedly with the truth about MTBE, instead of discontinuing its use and issuing appropriate warnings, throughout the relevant period, ExxonMobil continued to actively promote MTBE and gasoline containing MTBE as environmentally sound products appropriate for widespread production, distribution, sale, and use and ExxonMobil continued to intentionally or recklessly trumpet MTBE gasoline's purported environmental benefits while downplaying its risks. ExxonMobil denies all such claims.

In sum, you must decide whether ExxonMobil knew that there was a high risk that MTBE would harm people or property and that it chose to use MTBE in gasoline anyway in conscious or reckless disregard of the rights and safety of the City or the public. If you decide that ExxonMobil acted with conscious or reckless disregard for the rights and safety of the City or the public, then you will find that ExxonMobil was guilty of gross negligence or willful

misconduct.  If you decide that ExxonMobil did not consciously or recklessly disregard the rights and safety of the City and the public, then you then you will find that ExxonMobil was not guilty of gross negligence or willful misconduct.

Authority:  NYPJI 2:10A

## PROPOSED FINAL INSTRUCTION NO. 12

### <u>Negligence--Foreseeability</u>

Negligence requires both a reasonably foreseeable danger of injury to another and conduct that is unreasonable in proportion to that danger. A person is only responsible for the results of his or her conduct if the risk of injury is reasonably foreseeable. The exact occurrence or exact injury does not have to be foreseeable; but injury as a result of negligent conduct must be not merely possible, but be probable.

There is negligence if a reasonably prudent person could foresee injury as a result of his or her conduct, and acted unreasonably in the light of what could be foreseen. On the other hand, there is no negligence if a reasonably prudent person could not have foreseen any injury as a result of his or her conduct, or acted reasonably in the light of what could have been foreseen.

In this case, if you find that ExxonMobil knew that underground storage systems had high leak rates or knew or should have known of the danger MTBE posed to groundwater and drinking water supplies, you must find that it is foreseeable that MTBE from ExxonMobil could contaminate the City's groundwater and drinking water supplies.

Authority: NYPJI 2:12

# PROPOSED FINAL INSTRUCTION NO. 13

## Public Nuisance

A public nuisance is conduct or omissions which offend, interfere with or cause damage to the public in the exercise of rights common to all in a manner such as to offend public morals *or* endangers or injure the property, health, safety or comfort of a considerable number of persons. The seepage of hazardous chemicals or petroleum products into a public water supply constitutes a public nuisance. The release or threat of release of hazardous chemicals or petroleum products into the environment unreasonably infringes upon a public right and thus is a public nuisance.

To establish a claim for public nuisance, a Plaintiff that is a municipality, like the City, must show that the defendant's conduct threatens to harm property or that it threatens the health, safety or comfort of a considerable number of persons. However, in the alternative, if a Plaintiff that is a municipality can show that the defendant violated a statute or law, it does not need to show that the defendant's conduct was harmful or threatened to harm property or a considerable number of people.

The City claims that ExxonMobil created and distributed gasoline containing MTBE in a commingled product system that it knew would end up in underground storage systems and contaminate of the City's property and other's property. The City further claims that ExxonMobil manufactured, distributed, sold and supplied gasoline containing MTBE in Jamaica, Queens, New York that contaminated the ground water in Jamaica, Queens, New York with MTBE and has interfered with its ability to provide clean and potable water to the public in the case of emergency or infrastructure difficulties and, as a result threatens the health, safety or comfort of a considerable number of persons City is unable to provide clean and potable water to its residents. The City also claims that ExxonMobil directly owned or controlled underground storage systems

that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater and for that reason actually harmed property and threatens to cause more harm to property and threatens the safety of it citizens by making it more difficult for the City to supply water to them in the event of service disruption.  ExxonMobil denies all such claims.  If you find that ExxonMobil's conduct has either harmed property or threatens to cause harm to property or that its conduct threatens the safety of the City's citizens by making it more difficult for the City to supply water to them in the event of service disruption, then you must find that ExxonMobil has created a public nuisance.

You must also find that ExxonMobil has created a public nuisance if you find that it violated a statute.  The first statute that the City claims ExxonMobil violated is New York City Administrative Code Section 17-142.  Section 17-147  provides: "The word "nuisance," shall be held to embrace public nuisance, as known at common law or in equity jurisprudence; *whatever is dangerous to human life or detrimental to health*; whatever building or erection, or part or cellar thereof, is overcrowded with occupants, or is not provided with adequate ingress and egress to and from the same or the apartments thereof, or is not sufficiently supported, ventilated, sewered, drained, cleaned or lighted in reference to its intended or actual use; and *whatever renders* the air or human food or *drink, unwholesome. All such nuisances are hereby declared illegal."*

The City claims that ExxonMobil made MTBE, added it to gasoline, and transported MTBE-containing gasoline through a distribution system it knew was susceptible to leaks and spills and such conduct rendered water designated for use for human drink unwholesome and endangering human life and health.  The City also claims that ExxonMobil also owned and controlled underground storage systems that released MTBE and other petroleum products directly into the environment, which further rendered water designated for human drink unwholesome.  If you find

that ExxonMobil's conduct was dangerous to human life or human health or rendered human drink unwholesome, you must find that ExxonMobil violated Administrative Code Section 17-142.

The City further claims that ExxonMobil violated Administrative Code Section 24-303, which provides: "*a. It shall be unlawful for any person to* throw or *deposit, or cause to be thrown or deposited any* dead animal or other *offensive matter or anything whatever* in either of the reservoirs or in any lake, pond or stream, or in any aqueduct or pipe from or through which the water supply of the city shall be drawn." If you find that ExxonMobil deposited or caused to be deposited any offensive matter or anything whatever into water from which the City's water supply shall be drawn, you must find that ExxonMobil violated Administrative Code Section 24-303.

The City further claims that ExxonMobil violated New York Navigation Law Section 173. New York Navigation Law Section 173 prohibits the discharge of petroleum. "Petroleum" means oil or petroleum of any kind and in any form including, but not limited to, oil, petroleum, fuel oil, oil sludge, oil refuse, oil mixed with other wastes and crude oils, gasoline and kerosene. The City claims that gasoline containing MTBE is a petroleum product and that ExxonMobil directly owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater and for that reason ExxonMobil has discharged petroleum in violation of Section 173. If you find that ExxonMobil discharged gasoline containing MTBE into the environment, then you must find that ExxonMobil violated New York Navigation Law Section 173.[1]

---

[1] *See also* N.Y. Navig. § 172 ("8. "Discharge" means any intentional or unintentional action or omission resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of petroleum into the waters of the state or onto lands from which it might flow or drain into said waters, or into waters outside the jurisdiction of the state when damage may result to the lands, waters or natural resources within the jurisdiction of the state"); *id.* ("15. "Petroleum" means

If you find that ExxonMobil's conduct violated any statute or that ExxonMobil's conduct

has either harmed property or threatens to cause harm to property or that its conduct threatens the

safety of the City's citizens by making it more difficult for the City to supply water to them in the

event of service disruption, then you must find that ExxonMobil has created a public nuisance.  You

do not need to find that the City has been damaged by ExxonMobil's conduct to find that

ExxonMobil has created a public nuisance.  If on the other hand you find that ExxonMobil's

conduct has not harmed property and does not threaten to cause harm to property and that its

conduct does not threaten the safety of the City's citizens by making it more difficult for the City to

supply water to them in the event of service disruption, and that ExxonMobil has not violated any

statute, then you must find that ExxonMobil has not created a public nuisance.

Authority:  NY PJI 3:17; *In re MTBE*, 175 F.Supp2d 593, 627 n.51 (*citing State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1051 (2d Cir. 1895)) ("the release or threat of release of hazardous waste into the environment unreasonably infringes upon a public right and thus is a public nuisance as a matter of New York law"); *State v Schenectady Chemicals, Inc.*, 459 N.Y.S.2d 971, 978 (1983) ("The common law rule has long been that water, like air, is an element in which no person can have an absolute property, yet, it is also, like air free for the use of all, and the law has been diligent and rigorous to maintain it in its natural purity); *Copart Indus., Inc. v. Consol. Edison Co*., 41 N.Y.2d 564, 567 (1977) (emphasis added); *see also In re MTBE*, 175 F.Supp.2d 593, 627 n. 51 (S.D.N.Y. 2001) (same); *State of New York v. Shore Realty Corp*., 759 F.2d 1032, 1051 (2d Cir.1985); *In re MTBE*, 175 F.Supp.2d at 627 n. 51; *see* N.Y.C. Admin. Code § 24-302 (statute), *New York Trap Rock Corporation v. Town of Clarkstown*, 299 N.Y. 77, 83 (1949) (common law); *N.Y. State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1361 (2d Cir. 1989) (same); Rest. 2d Torts § 821C (2)(b)l;  *N.Y. State Nat. Org. for Women*, 886 F.2d at 1361; *State of N.Y. v. Shore Realty Corp.*  759 F.2d 1032, 1051 (2d Cir. 1985); *Incorporated Village of Freeport v. Jefferson Indoor Marina, Inc.*, 556 N.Y.S.2d 150, 152 (App. Div. 1990); *City of New York v. Bilynn Realty Corp.*, 499 N.Y.S.2d 1011, 1013 (App. Div. 1986); *Shore Realty Corp.*, 759 F.2d at 1051; *See* Rest. 2d Torts § 821C (2)(b) ("In order to maintain a proceeding to enjoin to abate a public nuisance, one must … (b) have authority as a public official or public agency to represent the state or a political subdivision in the matter"); *see also State v. Schenectady Chemicals, Inc.*, 479 N.Y.S.2d at 1014 (action may be maintained by one who is "clearly authorized" to commence legal proceedings to abate a public nuisance); *c.f. Copart Industries, Inc.*, 41 N.Y.2d at 568 (special damage required for *individual* to maintain an action for public nuisance); *c.f. In re MTBE*, 2005 WL 1500893, * 3 (S.D.N.Y. 2005) (discussing statutorily authorized public

---

oil or petroleum of any kind and in any form including, but not limited to, oil, petroleum, fuel oil, oil sludge, oil refuse, oil mixed with other wastes and crude oils, gasoline and kerosene").

nuisance claims under California law); *See New York Trap Rock Corporation v. Town of Clarkstown*, 299 N.Y. 77, 83 (1949) (municipal corporation has inherent authority to bring public nuisance action to protect the health of its citizens); *New York State Nat. Organization for Women*, 886 F.2d at 1361 (the City "is a proper party to bring an action to restrain a public nuisance that allegedly may be injurious to the health and safety of its citizens"); *City of New York v. Milhelm Attea & Bros., Inc.*, 550 F.Supp.2d 332, 350 (E.D.N.Y. 2008) (same). As the Court of Appeals recognized in upholding the City's authority to maintain a police force outside of city limits to protect its water supply, *People v. Van Buren*, 4 N.Y.3d 640, 649 (2005). *N.Y. State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1361 (2d Cir. 1989); *State of N.Y. v. Shore Realty Corp.* 759 F.2d 1032, 1051 (2d Cir. 1985) (collecting NY state cases); *New York ex rel. Spitzer v. Cain*, 418 F.Supp.2d 457, 483 (S.D.N.Y. 2006) (same); *see also People ex rel. Bennett v. Laman* 277 N.Y. 368, 380 (1938) (" the injunctive power may be invoked when the health or very existence of the people *is menaced* by the deprivation of an essential food commodity, or *its service in a contaminated state*") (emphasis added). *See Incorporated Village of Freeport v. Jefferson Indoor Marina, Inc.*, 556 N.Y.S.2d 150, 152 (App. Div. 1990) ("no special injury or damage to the public need be alleged, and the commission of the prohibited act is sufficient to warrant granting the injunction"); *City of New York v. Bilynn Realty Corp.*, 499 N.Y.S.2d 1011, 1013 (App. Div. 1986) (same); *City of New York v. Casbar, Nicobel LLC*, 2009 WL 1026593, *2 (N.Y. Sup. April 15, 2009) (holding that where conduct "violates a statutory scheme designed to protect the public health, that the conduct constitutes a violation and may be considered a public nuisance subject to the Administrative Code" "relief may be granted without a demonstration of special damages or injury to the public. The proof of the violation alone is sufficient grounds for the issuance of injunctive relief"); *Shore Realty Corp.*, 759 F.2d at 1051 (violations of N.Y. Envtl. Conserv. Law §§ 27-0913(1), 27-0914(1) and 27-0914(2) constituted public nuisance per se).

## PROPOSED FINAL INSTRUCTION NO. 14

### <u>Private Nuisance</u>

While landowners in an organized community must tolerate some damage, annoyance and inconvenience from each other, no one may make an unreasonable use of his or her land to the material injury of a neighbor's right to use and enjoy his or her land. When there is such an unreasonable use, the law designates it a private nuisance and permits the injured neighbor to recover damages. A plaintiff seeking to recover damages for private nuisance must show, first, that conduct of the defendant interfered with plaintiff's right to use and enjoy its land, second, that the interference was substantial, third, that defendant's conduct was intentional, and fourth, that defendant's conduct was unreasonable under all of the circumstances.

The City in this case claims that ExxonMobil has unreasonably interfered with plaintiff's use of its property by contaminating the groundwater feeding one or more of its Wells in and around Jamaica in Queens County New York with MTBE. The City claims that MTBE has contaminated its wells and that by introducing Gasoline containing MTBE into a commingled product distribution system, ExxonMobil is a substantial cause of such contamination. ExxonMobil claims that the City has not proved that MTBE contaminated its wells and has not proved that ExxonMobil caused such contamination. If you find that one or more of the City's wells were contaminated with MTBE as a result of ExxonMobil's distribution of gasoline containing MTBE into a commingled product system, then you must find that the City's use and enjoyment of one or more of the City's Wells was interfered with by ExxonMobil under the commingled product theory.

The City also claims that ExxonMobil directly owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater and for that reason ExxonMobil directly caused the

contamination in its wells. ExxonMobil denies that it owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater. If you find that ExxonMobil owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater and contaminated one or more of the City's wells, then you must find that ExxonMobil interfered with the City's use and enjoyment of one or more of the City's wells.

ExxonMobil denies that its conduct caused any interference, denies that there has been any substantial interference and says that its use of its own property has at all times been reasonable. The burden of proving all the elements of private nuisance is on the City.

Unless you find that defendant interfered with plaintiff's right to use and enjoy its land or groundwater in and around Jamaica Queens County New York, you will find for defendant. If you find that defendant did so interfere, then you must consider whether the interference was substantial. To be substantial, the interference must be real and appreciable, not imagined or petty. The test is not what disturbs or annoys the plaintiff, but whether reasonable persons living in the locality would be appreciably annoyed or disturbed by the interference. If you find that defendant interfered in the plaintiff's use and enjoyment of its land, but that the interference was not substantial, you will find for the defendant. If however, you find that there was a substantial interference, you will next consider whether defendant's conduct was intentional.

Here the City asserts that ExxonMobil intentionally created MTBE, intentionally added it to gasoline, and intentionally transported MTBE-containing gasoline through a distribution system it knew was susceptible to leaks and spills; that ExxonMobil acted, knowing that MTBE had a higher propensity to contaminate groundwater than other gasoline additives, and that

unintentional releases of gasoline frequently occurred.  For example, the City asserts that

defendants knew of a national crisis involving gasoline leaking from multiple sources, such as

underground storage systems and that thousands of gallons of gasoline enter the soil annually

from gasoline-dispensing stations due to consumer and jobber overfills and from leaks.

ExxonMobil claims that its conduct was not intentional.  If you find that ExxonMobil

intentionally created and distributed MTBE-containing gasoline while having an awareness of

the vulnerabilities in the gasoline distribution and storage system, then you must find that

ExxonMobil was substantially certain that MTBE would enter plaintiffs' property and therefore

that ExxonMobil's conduct was intentional.

 If you find that defendant acted for the purpose of interfering with plaintiff's use and

enjoyment of its land, or that, though defendant did not, it knew that such interference was

substantially certain to result from its conduct your finding will be that defendant's conduct was

intentional. If you find that defendant's conduct was not intentional, you will find for defendant.

However, if you find that defendant's conduct was intentional, you will next consider whether

defendant's conduct was unreasonable.

 It is in the public interest that each landowner be free to lawfully use its property to the

fullest possible extent consistent with the right of others to use their own property free from

unreasonable interference. Thus, whether particular conduct is a nuisance is a question of degree,

requiring you to consider the need for defendant's conduct, its usefulness and social value, and

weigh that against the gravity of the harm which the plaintiff suffered and is suffering.  In

determining whether defendant's conduct was unreasonable, you must consider all of the

circumstances including the nature and purpose of defendant's use and its value to the

community, extent and frequency of the interference with plaintiff's use, whether the interference

can be avoided or lessened without undue hardship to defendant. No one of these factors is conclusive, but all are to be considered together and in relation to all of the surrounding circumstances. If you find that defendant's conduct was not unreasonable, you will find for ExxonMobil.  However, if you find that there was an interference with plaintiff's right to use and enjoy its land, that the interference was substantial, un-reasonable, and intentionally caused by defendant's conduct, you will find for the City.

Authority:  NYPJI 3:16; Copart Industries, Inc. v. Consolidated Edison Co., 41 NY2d 564; Turner v, Coppola, 424 NYS2d 864;  *In re MTBE*, 379 F.Supp.2d at 426-27.

# PROPOSED FINAL INSTRUCTION NO. 15

## <u>Trespass</u>

A person who, without justification or permission, intentionally goes or causes a person or thing to go upon the property of another person commits what is known in the law as a trespass, and is liable for any damages cause as a result. To establish a claim for trespass under New York law, a plaintiff needs to show that it has a real property right and that the defendant intentionally infringed that right.

The parties have stipulated to the fact that the City is the owner of the wells in Jamaica, Queens County, New York, the City has property rights to the water they draw. You the jury, have found that they will use the water from those wells as a back-up drinking water source.

The first question for you to decide is whether ExxonMobil's conduct caused the MTBE to enter the City's property and contaminate its groundwater. If you find that the MTBE did not enter the City's property or that, if it did, it was not as a result of ExxonMobil's act, there would be no trespass by the ExxonMobil.

The City claims that MTBE has contaminated its wells and that by introducing Gasoline containing MTBE into a commingled product distribution system, ExxonMobil caused such contamination. ExxonMobil claims that the City has not proved that MTBE contaminated its wells and has not proved that ExxonMobil caused such contamination. If you find that one or more of the City's wells were contaminated with MTBE as a result of ExxonMobil's distribution of gasoline containing MTBE into a commingled product system, then you must find that the City's one or more of the City's Wells were contaminated by ExxonMobil under the commingled product theory.

The City also claims that ExxonMobil directly owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing

MTBE into the soil and groundwater and for that reason ExxonMobil directly caused the contamination in its wells.  ExxonMobil denies that it owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater.  If you find that ExxonMobil owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater and contaminated one or more of the City's wells, then you must find that ExxonMobil proximately caused the contamination of one or more of the City's wells.

Intent involves the state of mind with which an act is done. If a person acts voluntarily with the purpose of bringing about a certain result, he or she is said to have intended that result. Further, although a person does not act with the purpose of bringing about a result, if he or she acts under circumstances known to him or her that make it substantially certain that the result will follow, the person is said to have intended that result.

For a plaintiff to prevail on a claim for trespass in New York, the trespasser need not intend or expect the damaging consequence of his intrusion, but he must intend the act which amounts to or produces the unlawful invasion, and the intrusion must at least be the immediate or inevitable consequence of what he willfully does, or which he does so negligently as to amount to willfulness. To constitute such a trespass, the act done must be such as will to a substantial certainty result in the entry of foreign matter.

Here the City asserts that ExxonMobil intentionally created MTBE, intentionally added it to gasoline, and intentionally transported MTBE-containing gasoline through a distribution system it knew was susceptible to leaks and spills; that ExxonMobil acted, knowing that MTBE had a higher propensity to contaminate groundwater than other gasoline additives, and that

unintentional releases of gasoline frequently occurred.  For example, the City asserts that defendants knew of a national crisis involving gasoline leaking from multiple sources, such as underground storage systems and that thousands of gallons of gasoline enter the soil annually from gasoline-dispensing stations due to consumer and jobber overfills and from leaks. ExxonMobil claims that its conduct was not intentional.  If you find that ExxonMobil intentionally created and distributed MTBE-containing gasoline while having an awareness of the vulnerabilities in the gasoline distribution and storage system, then you must find that ExxonMobil was substantially certain that MTBE would enter plaintiffs' property and therefore that ExxonMobil's conduct was intentional.

You have found that the City has real property rights in the Station 6 Wells and the water they draw.  You must know determine whether ExxonMobil intentionally infringed that right by contaminating the groundwater that feeds one or more of the Station 6 Wells with MTBE under either the commingled product theory or directly, if you find that ExxonMobil has so infringed the City's property rights, then you must find for the City and find that ExxonMobil has committed a trespass.  You do not need to find that the City has been damaged by ExxonMobil's infringement of the City's property rights to find that ExxonMobil has committed a trespass.  If on the other hand, you find that ExxonMobil has not so infringed the City's property rights, then you must find that ExxonMobil has not committed a trespass.

Authority NY PJI 3:8; In re MTBE, 379 F.Supp.2d at 426-27; *See Scribner v. Summers*, 84 F.3d 554, 557 (2d Cir. 1996) ("Under New York law, trespass is the intentional invasion of another's property"); *See, e.g., Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 95 (1993) (nominal damages "protect a landowner's right to be free of trespass"); *New York Rubber Co. v. Rothery*, 132 N.Y. 293, 295-96 (1892) (it is error to limit the issue to the interference with the plaintiff's present use of water rights and to refuse to instruct the jury that plaintiff's right to recover nominal damages does not depend on showing actual injury); *Burger v. Singh*, 816 N.Y.S.2d 478, 480 (App. Div. 2006) ("nominal damages are presumed from a trespass"); *Mondello v. Newsday, Inc.*, 774 N.Y.S.2d 794,

794-95 (App. Div. 2004) ("[e]ven without pleading actual damages for trespass, a plaintiff is entitled to nominal damages"); *Shiffman v. Empire Blue Cross and Blue Shield*, 681 N.Y.S.2d 511, 512 (App. Div. 1998) (nominal damage is always presumed from a trespass); *Ligo v. Gerould*, 665 N.Y.S.2d 223, 224 (App. Div. 1997) ("[i]n the absence of proven damages, plaintiffs are entitled to nominal damages in an action for trespass"); *see also* 87 C.J.S. Trespass § 132 ("[e]very trespass gives a right to at least nominal damages"); 75 Am. Jur. 2d Trespass § 186 (in trespass action "the law presumes that a plaintiff has been damaged without the necessity of proof of actual damages"); *See, e.g.*, *In re MTBE*, 457 F.Supp.2d 455, 462 (S.D.N.Y. 2006) ("Usufructuary interests are possessory property rights"); *Hathorn v. Natural Carbonic Gas Co.*, 194 N.Y. 326, 338 (1909) ("subterranean waters have always been treated as a mineral in the decisions relating to their use and enjoyment."); *Hathorn v. Natural Carbonic Gas Co.*, 112 N.Y.S. 374, 378 (App. Div. 1908) (percolating water found in land belongs to the owner of the land); *Keeler v. Tubbs*, 147 N.Y.S.2d 166, 170 (Sup. Ct. 1955) ("the right of a landowner to sink wells, and gather and use percolating waters as he will is a property right which cannot be taken away from him"); *In re MTBE*, 379 F.Supp.2d 348, 426 (S.D.N.Y. 2005); *In re MTBE*, 379 F.Supp.2d at 426-27.

In this action, the plaintiff, the City, seeks to recover for damages it suffered as a result of an oil spill caused by leaking underground storage systems. A private party injured by an oil spill has the right to recover its losses from the responsible party.

The City claims that gasoline containing MTBE is a petroleum product and that ExxonMobil directly owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater and for that reason ExxonMobil directly caused the contamination in one or more of its wells. ExxonMobil denies that it owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater.  If you find that ExxonMobil owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater and contaminated one or more of the City's wells, then you must find that ExxonMobil contaminated the City's property.

 If you find ExxonMobil's conduct or inaction caused or contributed to the petroleum spill, you will find for the City and award such an amount that you find will fairly compensate the City for the property damage it sustained as a result of the petroleum spill. It is not necessary for you to find that ExxonMobil owned the property from which the petroleum spill originated to impose liability.


Authority:  NY PJI 10:5

## PROPOSED FINAL INSTRUCTION NO. 18

### Commingled Product Theory/Alternate Theory of Causation

For the City to prevail on all claims other than its trespass and public nuisance claims, the City must show, by a preponderance of the evidence, that Exxon Mobil Corporation's actions caused the City's injury. In other words, the City must show that it is more likely than not that Exxon Mobil's actions caused its injury.

An injury may have more than one cause. Where the independent and negligent acts or omissions of two or more parties cause injury to another, each of those negligent acts or omissions can be regarded as a cause of that injury.

A commingled product is a blended product containing portions that were manufactured by multiple defendants. In this case, the product alleged to have caused the City's harm was manufactured by several companies, including ExxonMobil.

The identity of the manufacturer of a defective product may be established by circumstantial evidence. Such circumstantial evidence must establish that it is reasonably probable that the defendant was the source of the offending product.

If the City shows (1) that the gasoline products of many refiners and manufacturers were present in a commingled or blended state at the time and place that the harm or risk of harm occurred, and (2) the commingled product caused the City's injury, (3) if you find, based on a preponderance of the evidence including circumstantial evidence, that Exxon Mobil manufactured, blended or supplied part of the commingled product that caused the City's injury, and (4) Exxon Mobil does not show that its product could not have been part of the commingled product that caused the City's injury, then you must find that the City has met its burden of demonstrating causation.

Authority: In re MTBE, 591 F.Supp2d 259, 266 (S.D.N.Y. 2008); In re MTBE, 447 F.Supp.2d at 301; New York Pattern Jury Instructions § 2:71; New York Pattern Jury Instructions, Div. 2(G)(3), Part V (Liability Where Product Manufacturer Is Difficult to Identify)

**PROPOSED FINAL INSTRUCTION NO. 19**

**<u>Proximate Cause (Generally)</u>**

An act or omission is regarded as a cause of an injury if it was a substantial factor in bringing about the injury, that is, if it had such an effect in producing the injury that reasonable people would regard it as a cause of the injury.


Authority:  NYPJI 2:70

**PROPOSED FINAL INSTRUCTION NO. 20**

**<u>Damages - General</u>**

My charge to you on the law of damages must not be taken as a suggestion that you should find for the plaintiff. It is for you to decide on the evidence presented and the rules of law I have given you whether the plaintiff is entitled to recover from the defendant. If you decide that the plaintiff is not entitled to recover from the defendant, you need not consider damages. Only if you decide that the plaintiff is entitled to recover will you consider the measure of damages.

If you find that the plaintiff is entitled to recover from the defendant, you must render a verdict in a sum of money that will justly and fairly compensate the plaintiff for all losses resulting from the injuries it sustained.

Authority:  NYPJI 2:277

## PROPOSED FINAL INSTRUCTION NO. 21

## <u>Compensatory Damages</u>

The purpose of the law of damages is to award, as far as possible, just and fair compensation for the loss, if any, that resulted from ExxonMobil's violation of the City's rights. If you find that ExxonMobil is liable, then you must award the plaintiffs sufficient damages to compensate them for his loss proximately caused by the defendant's conduct.

These are known as "compensatory damages." Compensatory damages seek to make the plaintiff whole--that is, to compensate it for the damages that it has suffered. Furthermore, compensatory damages are not limited merely to expenses that plaintiff may have borne. A prevailing plaintiff is entitled to compensatory damages for any present or future losses incurred by damage to its property.

In awarding compensatory damages, you must be guided by dispassionate common sense. The law does not require the City to prove the amount of their losses with mathematical precision, but only with reasonable certainty and as much definiteness and accuracy as the circumstances permit. Exactitude is not required, particularly if a precise calculation of damages is made difficult by the defendant's conduct. The City may not be denied damages merely because the amount of the loss is uncertain or difficult to determine. If you find that there has been a clear showing of some injury to the City, and that damages are not susceptible of precise measurement because of the ExxonMobil's conduct, you have the latitude to make a just and reasonable estimate of damages based on the relevant data presented to you.

You should award the City a sum of money that compensates it for all actual losses sustained as well as those losses that will be sustained in the future. In determining the amount of damages to award, you may use reasonable assumptions and probable estimates and may

make the best approximation possible through the exercise of good judgment and common sense,

so long as the figure arrived at has a reasonable basis of computation and is not speculative,

possible or imaginary.

In all instances, you are to use sound discretion in fixing an award of damages, drawing

reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

Authority: *McDougald v Garber*,73 NY2d 246, 253-54 (1989) (finding that the goal or damages in negligence cases is to restore the injured party, to the extent possible, to the position they would have occupied had the wrong not occurred); *Matter of Rothko's Estate*, 43 NY2d 305, 323 (1977) (holding that so long as the damages figure arrived at had a reasonable basis of computation and was not merely speculative, possible or imaginary, the jury had the right to resort to reasonable conjectures and probable estimates and to make the best approximation possible through the exercise of good judgment and common sense, particularly where the conduct of the wrongdoers has rendered it difficult to ascertain the damages suffered with precision); *Curiale v Peat, Marwick, Mitchell & Co.,* 630 NYS2d 996 (App. Div. 1995) (same); *see also Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555 (1931); *Perma Research & Dev. Co. v. Singer Co.*, 542 F.2d 111 (2d Cir. 1976); *Autowest Inc. v. Peugeot, Inc.*, 434 F.2d 556, 565 (2d Cir. 1970).

**PROPOSED FINAL INSTRUCTION NO. 22**

**Navigation Law Damages**

[TO BE INSERTED PENDING COURT'S RULING].

Authority:  .

**PROPOSED FINAL INSTRUCTION NO. 23**

**Joint & Several Liability – Traditional Causation**

If you find that ExxonMobil owned or controlled underground storage systems that were leaky and that those underground storage systems leaked gasoline containing MTBE into the soil and groundwater and contaminated one or more of the City's wells and that the City's injury is indivisible, then liability will be joint and several. That means that ExxonMobil is responsible for all of the City's damages. [INSERT DIRECTIONS REGARDING VERDICT FORM]

Authority: *In re MTBE*, 447 F.Supp.2d 289, 297 (S.D.N.Y. 2006) ("When two or more tortfeasors act concurrently or in concert to produce a single injury, they may be held jointly and severally liable"); *Ravo v. Rogatnick*, 70 N.Y.2d 305, 311-12 (1987) (upholding the application of joint and several liability where "the evidence established that plaintiff's brain damage was a single indivisible injury, and defendant failed to submit any evidence upon which the jury could base an apportionment of damage"); Restatement (Second) of Torts § 875 cmt. b.

## PROPOSED FINAL INSTRUCTION NO. 24

### Apportionment of Damages Under the Commingled Product Theory

If the City proves that ExxonMobil's "product was in the commingled product that caused it injury," and you determine that the City should be awarded damages, you must assign a share of those damages to ExxonMobil based on the available evidence. Each side has presented expert and other witnesses offering opinions about the share of the market for which ExxonMobil is responsible. The burden of proving ExxonMobil's share of damages rests on ExxonMobil. To satisfy this burden of proof, ExxonMobil must show a reasonable basis for its proposed share.

If you find that ExxonMobil has failed to show a reasonable basis for its proposed share, then you must find that ExxonMobil is liable for all or 100% of damages. If on the other hand you find that ExxonMobil has shown its market share by a reasonable basis, then you must assign a percentage market share to ExxonMobil for which you find that ExxonMobil is responsible in light of the evidence presented.

Authority: *In re MTBE*, 2009 WL 2058525 (S.D.N.Y., July 14, 2009)

## PROPOSED FINAL INSTRUCTION NO. 25

### <u>Regulatory and legislative intent</u>

You may have heard expert or other testimony and evidence concerning the intent or motives of Congress or the Environmental Protection Agency concerning the use of MTBE. Evidence that expresses the view of only one actor in the legislative or regulatory process, offered after a given bill has passed or after a regulatory agency has promulgated a regulation, is not evidence that you should consider. In the absence of additional substantial factual evidence, you should not consider the sole fact that a legislative or regulatory body has acted or failed to act to indicate that the legislative or regulatory body has approved or condoned the use of MTBE.

To the extent you have heard evidence indicating that the EPA registered and certified MTBE, such registration and certification does not constitute endorsement or approval. Therefore, in determining whether ExxonMobil was at fault, you may not assume that the EPA endorsed or approved the use of MTBE.

Authority: *In re MTBE*, 2009 WL 2176635 (S.D.N.Y., July 21, 2009); Hearing Transcript, 7-15-09.

**PROPOSED FINAL INSTRUCTION NO. 26**

**<u>Federal and New York law did not require MTBE</u>**

Neither federal nor New York law required ExxonMobil to use MTBE.  Therefore, in determining whether ExxonMobil was at fault, you may not assume that ExxonMobil was required by law to use MTBE.

Authority:  Hearing Transcript, 7-15-09.

**PROPOSED FINAL INSTRUCTION NO. 27**

**<u>Intervening acts</u>**

You may have heard testimony and evidence suggesting that an intervening act performed by a party other than ExxonMobil was the sole cause of the City's injury. An intervening act is defined as an act that is so extraordinary under the circumstances, not foreseeable in the normal course of events, or independent of or far removed from a manufacturer's conduct that it severs the causal nexus between the manufacturer's conduct and the injury at issue.

You may not consider evidence of acts performed by the owners or operators of underground storage tanks who are not parties to this case *unless* such evidence shows that the acts were the *sole* cause of the City's injury. The burden of showing that acts by non-party owners or operators of underground storage tanks caused the City's injury rests with ExxonMobil.

Authority: Hearing Transcript, 7-29-09, p. 46-48

**PROPOSED FINAL INSTRUCTION NO. 28**

**<u>Acts by nonparties not relevant to damages</u>**

In calculating ExxonMobil's share of damages, you may not consider evidence of acts by nonparties or liability of nonparties.


Authority:  Hearing Transcript, 7-29-09, p. 48-49

# PROPOSED FINAL INSTRUCTION NO. 29

## Consent Order and Consent Decree – [Only If Needed]

You may have heard testimony or evidence relating to a complaint filed against the City by the United States, a consent decree with the United States settling the complaint and a consent order with the New York State Department of Environmental Conservation, all of which concern underground storage tanks owned by the City.

The complaint, consent decree and consent order are not evidence of the City's liability and you may not consider them as evidence that the City was negligent in any way, or as evidence that the City had knowledge of any obligations relating to underground storage tanks owned by the City.

Authority:  Hearing Transcript, 7-29-09, p. 49-56

## PROPOSED FINAL INSTRUCTIONS FOR PHASE IV

The City proposes that the following final jury instructions be read to the jury following closing statements and before deliberation in Phase IV:

## PROPOSED FINAL INSTRUCTION NO. 1

### Punitive Damages

In addition to awarding damages to compensate the plaintiff the City for its injuries, you may, but you are not required to, award the City punitive damages if you find that the acts of the defendant ExxonMobil that caused the injury complained of were wanton and reckless or malicious. Punitive damages may be awarded for conduct that represents a high degree of immorality and shows such wanton dishonesty as to imply a criminal indifference to civil obligations. The purpose of punitive damages is not to compensate the plaintiff but to punish the defendant for wanton and reckless or malicious acts and thereby to discourage the defendant and other companies from acting in a similar way in the future.

An act is malicious when it is done deliberately with knowledge of the plaintiff's rights, and with the intent to interfere with those rights. An act is wanton and reckless when it demonstrates conscious indifference and utter disregard of its effect upon the health, safety and rights of others. Here, the City claims that ExxonMobil knew that underground storage systems had very high leak rates and that MTBE was extremely hazardous to groundwater and harmful to human health before it decided to put MTBE into gasoline, and that ExxonMobil learned more about MTBE's impacts on drinking water supplies around the country as it continued to use MTBE in gasoline. Instead of reconsidering and revising its practices, ExxonMobil actively worked to conceal the truth about MTBE. The City further claims that while in possession of this knowledge regarding MTBE's hazards, both directly and by and through agents,

ExxonMobil actively concealed MTBE's hazardous properties from the public, the United States, New York State, the City, downstream users, distributors and consumers, concealing the truth from them by failing to warn them about MTBE's hazardous and unusual properties; intentionally omitting information about MTBE's properties from regulatory disclosures and communications; undermining third party studies such as the Maine Report that tried to sound the alarm regarding MTBE's hazardous and unusual properties; suppressing and failing to disclose their own internal studies and analyses that exposed the hazards of MTBE despite legal duties to the United States, the City and others that required them to do so; intentionally withholding funding for industry studies regarding MTBE's impact on groundwater and human health in an effort to prevent the truth about MTBE from coming out.  ExxonMobil denies all such claims in their entirety.

The City also claims that ExxonMobil made affirmative misstatements concerning MTBE to the public, the United States, New York State, the City, other state governments, downstream users, distributors and consumers.  For example, the City claims that ExxonMobil represented that gasoline containing MTBE could be treated like any other gasoline (when in fact it had unusual properties that rendered it far more hazardous); that no special handling of gasoline containing MTBE was required (when in fact it was); that MTBE was not harmful to human health (when in fact it is); that they were good product stewards (when in fact they were not); that gasoline containing MTBE would not reach groundwater in large quantities (when they knew it would); and that they would timely remediate any MTBE contamination that resulted from their use of it in gasoline (when in fact they had no intention of remediating any site they did not directly own and even then, they would pursue the lowest cost form of remediation regardless of its effectiveness).  ExxonMobil denies all such claims.

The City further claims that by the time ExxonMobil chose to use MTBE as an oxygenate in reformulated gasoline, it knew that the introduction of higher concentrations of MTBE into gasoline would result in widespread groundwater contamination that would be extremely difficult and costly to remediate and that an ever increasing quantity of MTBE would contaminate drinking water rendering it unfit for human consumption (both because of its offensive taste and odor and because of its threat to human health). The City claims that despite this in-depth knowledge of the hazards of MTBE, ExxonMobil, both directly and by and through agents, co-conspirators, and joint-venturers, knowingly produced, distributed, marketed, and promoted MTBE and gasoline containing MTBE, while consciously disregarding MTBE's harmful impact on groundwater and human health. ExxonMobil denies all such claims.

The City also claims that ExxonMobil, directly and indirectly through the commingled gasoline distribution system, caused gasoline containing MTBE to be placed into underground storage systems that ExxonMobil knew or should have known would leak and that ExxonMobil also failed to timely upgrade underground storage systems to avoid leaks and to warn or advise downstream handlers of gasoline that upgrades were immediately needed to address MTBE's unique hazards and that ExxonMobil failed to adopt MTBE-specific procedures for the remediation of suspected and known releases of MTBE, instead treating MTBE releases like slower moving BTEX releases, all but guaranteeing its proliferation in groundwater. The City further claims that ExxonMobil knew that when such gasoline containing MTBE reached groundwater, it would make its way to drinking water supplies, resulting in extraordinary treatment costs and/or human exposure and related health impacts. When confronted repeatedly with the truth about MTBE, instead of discontinuing its use and issuing appropriate warnings, throughout the relevant period, ExxonMobil continued to actively promote MTBE and MTBE

gasoline to the public and government agencies as environmentally sound products appropriate for widespread production, distribution, sale, and use and ExxonMobil continued to intentionally or recklessly trumpet MTBE gasoline's purported environmental benefits while downplaying its risks. ExxonMobil denies all such claims.

The City further claims that despite its in-depth knowledge of the hazards of MTBE, ExxonMobil, both directly and indirectly, acted to prevent the use of alternatives to MTBE (including ethanol) by third parties in gasoline. ExxonMobil did this by, among other things, refusing to produce blendstocks necessary for gasoline containing alternatives to MTBE and refusing access to pipelines, terminals, tanks and other facilities for the storing and transport of gasoline that they owned, operated or controlled to relevant blendstocks, alternatives to MTBE (including ethanol) and gasoline containing alternatives to MTBE. ExxonMobil denies all such claims.

If you find that ExxonMobil's acts were not wanton and reckless or malicious, you need proceed no further in your deliberations on this issue. On the other hand, if you find that ExxonMobil's acts were wanton and reckless or malicious, you may award the City punitive damages.

In arriving at your decision as to the amount of punitive damages you should consider the nature and reprehensibility of what ExxonMobil did. That would include the character of the wrongdoing, whether ExxonMobil's conduct demonstrated an indifference to, or a reckless disregard of, the health, safety or rights of others, whether the acts were done with an improper motive or vindictiveness, whether the act or acts constituted outrageous or oppressive intentional misconduct, how long the conduct went on, ExxonMobil's awareness of what harm the conduct caused or was likely to cause, any concealment or covering up of the wrongdoing, how often

ExxonMobil had committed similar acts of this type in the past and the actual and potential harm created by ExxonMobil's conduct including the harm to individuals or entities other than plaintiff the City. However, although you may consider the harm to individuals or entities other than plaintiff the City in determining the extent to which ExxonMobil's conduct was reprehensible, you may not add a specific amount to your punitive damages award to punish ExxonMobil for the harm ExxonMobil caused to others.

The amount of punitive damages that you award must be both reasonable and proportionate to the actual and potential harm suffered by the City, and to the compensatory damages you awarded the City. The reprehensibility of ExxonMobil's conduct is an important factor in deciding the amount of punitive damages that would be reasonable and proportionate in view of the harm suffered by the City and the compensatory damages you have awarded the City.

You may also consider the defendant ExxonMobil's financial condition and the impact your punitive damages award will have on ExxonMobil.

In reporting your verdict, you will state the amount awarded by you as punitive damages.

Authority: NYPJI 2:278

Dated: New York, New York

September 17, 2009

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Attorney for Plaintiff City of New York
100 Church Street
New York, New York 10007
(212) 788-1568


/s/ *NICHOLAS G. CAMPINS*
VICTOR M. SHER *(pro hac vice)*
TODD E. ROBINS *(pro hac vice)*
NICHOLAS G. CAMPINS *(pro hac vice)*
MARNIE E. RIDDLE *(pro hac vice)*

SHER LEFF LLP
450 Mission Street, Suite 400
San Francisco, CA 94105
(415) 348-8300

*Attorneys for Plaintiffs*