**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------- x

In Re: Methyl Tertiary Butyl Ether ("MTBE")     Master File No. 1:00-1898
Products Liability Litigation                                    MDL 1358 (SAS)
                                                                           M21-88
---------------------------------------------------------------------- x     ECF Case

**This document relates to the following case:**

*City of New York, et. al., v. Amerada Hess Corp., et al.*
Case No. 04 Civ. 3417

---------------------------------------------------------------------- x

### PLAINTIFFS' PROPOSED CURATIVE INSTRUCTIONS AND SUPPLEMENTAL PROPOSED JURY INSTRUCTIONS FOR PHASE III

     Plaintiffs hereby submit their Curative Instructions and Supplemental Proposed Jury Instructions for Phase III of this trial. Plaintiffs reserve the right to amend these proposed instructions.

# PROPOSED CURATIVE INSTRUCTIONS FOR PHASE III

In light of the Court's September 18, 2009 oral rulings, Plaintiffs propose that the following curative instructions be read to the jury:

## PROPOSED CURATIVE INSTRUCTION NO. 1

### Curative Instruction regarding Mohr's Mutagenicity Testimony

You will recall that ExxonMobil's expert witness, Dr. Sandra Mohr gave opinions concerning the mutagenicity and genotoxicity of MTBE or, in laymen's terms, how MTBE affects DNA. Dr. Mohr said that mutagenicity studies have little to no relevance to cancer in humans and are of little value to the field of toxicology generally. Dr. Mohr also testified that the study of DNA adducts as indicators of disease and as indicators of cancer simply "hasn't panned out." Dr. Mohr said that the study she reviewed "showed that MTBE is at best a weak mutagen and may not be particularly mutagenic at all."

I am now instructing you to disregard all testimony given by Dr. Mohr on the mutagenicity and genotoxicity of MTBE and I am striking all such testimony with one exception. The one exception is Dr. Mohr's statement that certain papers in the toxicology field have questioned whether MTBE is strongly mutagenic and her testimony that one study of the methodology of a study that found MTBE to be mutagenic has been criticized. Accordingly, with the exception noted above, Dr. Mohr's opinions and conclusions about whether MTBE damages DNA and about DNA adducts are stricken from the record. You may not rely on them or place any weight on them whatsoever and you must disregard them.

*Authority*: Oral Ruling at the September 18, 2009 Hearing, Rough Transcript at pp. 5064 – 5069.

# PROPOSED CURATIVE INSTRUCTION NO. 2

## Curative Instruction regarding Mohr's IARC Testimony

You will also recall that Dr. Mohr offered several opinions concerning the carcinogenicity of MTBE or, in laymen's terms, the potential of MTBE to cause cancer. During that testimony, Dr. Mohr referred to the International Agency for Research on Cancer (IARC), which is part of the World Health Organization. Dr. Mohr testified that "the IARC says that MTBE is not a human carcinogen." Dr. Mohr misspoke when she said the IARC had decided, and I stress the word "decided," that MTBE is not a human carcinogen. In fact, the IARC has made no decision whatsoever about whether MTBE is or is not a carcinogen. Accordingly, Dr. Mohr's statement that "the IARC says that MTBE is not a human carcinogen," is hereby stricken from the record. You may not rely on it or place any weight on it whatsoever and should disregard it in its entirety.

*Authority*: Oral Ruling at the September 18, 2009 Hearing, Rough Transcript at pp. 5062 - 5064; official IARC website: http://www.iarc.fr/.

# PROPOSED CURATIVE INSTRUCTION NO. 3

## Curative Instruction regarding Whitelaw's Testimony

You will recall that the City's expert witness, Dr. Ed Whitelaw, stated opinions concerning the societal costs of MTBE use, such as the cost of damages or remediation of MTBE compared with the costs of remediation of ethanol. However, with respect to clean-up costs of ethanol, Dr. Whitelaw simply assumed that ethanol has no such costs, but he did not provide a basis for assuming that the costs were zero. Accordingly, you may not consider Dr. Whitelaw's opinion of whether ethanol has cleanup costs. You may of course, consider the other evidence and expert testimony bearing on the cleanup costs of ethanol, but in doing so you may not rely on the opinions expressed by Dr. Whitelaw concerning ethanol. You may still consider all of Dr. Whitelaw's opinions concerning the external costs of adding MTBE to gasoline.

*Authority*: Oral Ruling at the September 18, 2009 Hearing, Rough Transcript at pp. 5070 – 5077.

# PROPOSED CURATIVE INSTRUCTION NO. 4

## Curative Instruction regarding Map Shown in Phase III(d) Opening

You will recall that during his Phase III(d) opening, Mr. Sher displayed a map displaying ExxonMobil stations within a certain radius of Station 6. That map was supposed to be followed by a map displaying Mr. Terry's final capture zone. That map was inadvertently not displayed. Without the second map to put it in context, the first map had the potential to confuse you. I now ask you to look at the second map that should have been displayed at the end of Mr. Sher's opening.

Mr. Sher will now quickly explain the map that was inadvertently not shown to you during his opening statement last week.

*Authority*: Oral Ruling at the September 18, 2009 Hearing, Rough Transcript at pp. 5036 - 5048.

**PROPOSED SUPPLEMENTAL INSTRUCTIONS FOR PHASE III**

Plaintiffs propose that the following supplemental jury instructions be read to the jury following closing statements and before deliberation in Phase III:

**PROPOSED SUPPLEMENTAL FINAL INSTRUCTION NO. 1**

**Direct Spiller Negligence**

As a retailer of gasoline with MTBE, ExxonMobil had a duty of care to ensure that the gasoline containing MTBE was properly stored and dispensed. ExxonMobil directly owned or controlled underground storage tank systems at the following stations in Queens County, New York: 133-44 150th Street; 168-07 Baisley Blvd; 129-01 Guy R. Brewer Blvd; 117-04 Sutphin Blvd; 117-07 Guy Brewer Blvd (Guy Brewer Blvd & Foch Blvd); 113-21 Merrick Blvd; 112-05 Sutphin Blvd; 137-21 Liberty Ave; 126-01 101 St. Ave; 118-03 101 St. Ave; 118-11 Atlantic Ave; 155-25 Styler Rd.; 138-50 Hillside Ave; 138-19/138-17 Hillside Ave; 138-69 Queens Blvd; 162-35 N Conduit; 177-90 S Conduit; 84-04 Parsons Blvd; and 165-01 Hillside Ave.

The City contends that ExxonMobil failed to reasonably ensure that the gasoline containing MTBE was properly stored and dispensed at those stations. The City further contends that those underground storage tank systems leaked gasoline containing MTBE into the soil and groundwater and for that reason ExxonMobil directly caused contamination in its wells. ExxonMobil denies that the underground storage tank systems that it owned leaked gasoline containing MTBE into the soil and groundwater. If you find that ExxonMobil owned or controlled underground storage tank systems that leaked gasoline containing MTBE into the soil and groundwater and contaminated one or more of the City's wells, then you must find that ExxonMobil proximately caused the contamination of the City's wells.

If, however, you find that ExxonMobil used reasonable care in storing and dispensing

6

MTBE gasoline, you must find that ExxonMobil was not negligent.

*Authority:*  N.Y. Pattern Jury Instr.--Civil 2:10; N.Y. Pattern Jury Instr.--Civil 2:125.

# PROPOSED SUPPLEMENTAL FINAL INSTRUCTION NO. 2

## **Negligence- Direct Spiller Foreseeability**

Negligence requires both a reasonably foreseeable danger of injury to another and conduct that is unreasonable in proportion to that danger. A person is only responsible for the results of his or her conduct if the risk of injury is reasonably foreseeable. The exact occurrence or exact injury does not have to be foreseeable; but injury as a result of negligent conduct must be not merely possible, but be probable.

There is negligence if a reasonably prudent person could foresee injury as a result of his or her conduct, and acted unreasonably in the light of what could be foreseen. On the other hand, there is no negligence if a reasonably prudent person could not have foreseen any injury as a result of his or her conduct, or acted reasonably in the light of what could have been foreseen.

In this case, if you find that ExxonMobil knew that underground storage tank systems leak and knew or should have known of the danger MTBE posed to groundwater and drinking water supplies, you must find that it was foreseeable that MTBE could contaminate the City's groundwater and drinking water supplies.

*Authority*: NYPJI 2:12.

## PROPOSED SUPPLEMENTAL FINAL INSTRUCTION NO. 3

### Res Ipsa Loquitur – Focus Gas Stations

The City must prove by a preponderance of the evidence that ExxonMobil was negligent as a MTBE gasoline spiller. The City may do this by circumstantial evidence, that is, by proving facts and circumstances from which negligence may be reasonably inferred. If you find that the underground storage tank systems at ExxonMobil's gasoline stations were in the exclusive control of ExxonMobil, and if the circumstances surrounding the spills and/or leaks were of such a nature that in the ordinary course of events it would not have occurred if ExxonMobil had used reasonable care, the law permits, but does not require, you to infer negligence.

The requirement of exclusive control is not rigid. It implies control by ExxonMobil of such kind that the probability that the spills and/or leaks were caused by someone else is so remote that it is fair to permit an inference that ExxonMobil was negligent.

ExxonMobil is the owner of underground storage tank systems that were at the following stations located in Queens County, New York: 84-04 Parsons Blvd; 113-21 Merrick Blvd; 138-50 Hillside Ave; 165-01 Hillside Ave; 162-35 N Conduit; 177-90 S Conduit. The City contends that ExxonMobil's ownership of these underground storage tank systems gave ExxonMobil exclusive control of them. The City further contends that gasoline leaks and releases of the type which occurred at those stations would not have occurred if ExxonMobil had used reasonable care.

If you find by a preponderance of the evidence that the underground storage tank systems at one or more of those stations, at the time of the spills and leaks, were in the exclusive control of ExxonMobil, and that the circumstances of the spills and leaks were such that in the ordinary course of events they would not have occurred if reasonable care had been used by ExxonMobil, then you may infer that ExxonMobil was negligent. However, if taking into consideration all of the evidence

9

in the case you conclude that the spills and leaks were not due to ExxonMobil's negligence, then you must find for ExxonMobil (on this issue).

*Authority:* NYPJI 2:65.

Dated: New York, New York

September 19, 2009

                            MICHAEL A. CARDOZO
                            Corporation Counsel of the City of New York
                            Attorney for Plaintiff City of New York
                            100 Church Street
                            New York, New York 10007
                            (212) 788-1568


                            <u>/s/ *NICHOLAS G. CAMPINS*</u>
                            VICTOR M. SHER *(pro hac vice)*
                            TODD E. ROBINS *(pro hac vice)*
                            NICHOLAS G. CAMPINS *(pro hac vice)*
                            MARNIE E. RIDDLE *(pro hac vice)*

                            SHER LEFF LLP
                            450 Mission Street, Suite 400
                            San Francisco, CA 94105
                            (415) 348-8300

                            *Attorneys for Plaintiffs*