**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------- x

In Re: Methyl Tertiary Butyl Ether ("MTBE")          Master File No. 1:00-1898
Products Liability Litigation                                    MDL 1358 (SAS)
                                                                          M21-88
---------------------------------------------------------------------- x     ECF Case

**This document relates to the following case:**

*City of New York, et al. v. Amerada Hess Corp., et al.*
Case No. 04 Civ. 3417

---------------------------------------------------------------------- x

**PLAINTIFFS' OPPOSITION TO EXXONMOBIL CORPORATION'S MOTION**
***IN LIMINE* TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING (I)**
**JOINT AND SEVERAL LIABILITY AND PUNITIVE DAMAGES AND (II) TO**
**PROHIBIT THE PROPOSED TESTIMONY OF DR. FOGG AND MR. BURKE**

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ...................................................................................... ii

I.      **INTRODUCTION**.................................................................................................1

II.     **ARGUMENT**........................................................................................................1

        A.      ExxonMobil's Motion Is An Improper Attempt To Seek Judgment
                As A Matter Of Law ..................................................................................1

        B.      The City Has Presented Ample Evidence To Support An Award Of
                Punitive Damages ......................................................................................3

                1.      The Evidence Demonstrates That ExxonMobil Knew MTBE Was
                        Hazardous To Human Health.............................................................3

                2.      ExxonMobil Is Precluded From Arguing That The EPA Approved
                        Or Endorsed The Use Of MTBE .......................................................6

        C.      Evidence Of Similar Wrongful Conduct Is Admissible To Demonstrate
                Reprehensibility ........................................................................................7

                1.      The City's Experts Should Be Permitted To Testify Regarding
                        ExxonMobil's Supply Of Gasoline Containing MTBE To Other Areas ...........8

                2.      ExxonMobil's Widespread Manufacture, Distribution And Sale Of
                        Gasoline Containing MTBE Is Relevant To Show Repeated Conduct .............9

                3.      The City's Proposed Jury Instruction Provides The Required Safeguard
                        Under Philip Morris To Ensure That The Jury Does Not Actually
                        Punish ExxonMobil For Its Wrongful Out-Of-State Conduct........................10

        D.      The City Is Entitled To Present Evidence of ExxonMobil's Net Worth,
                Without Any Geographic Limitations ................................................................12

III.    **CONCLUSION** ...........................................................................................14

**TABLE OF AUTHORITIES**

**State Cases**

Prozeralik v. Capital Cities Comm'ns, Inc.,
  82 N.Y.2d 466 (Ct. App. 1993) ............................................................................................... 3

Rose v. Brown & Williamson Tobacco Corporation,
  809 N.Y.S.2d 784 (Sup. Ct. 2005) ................................................................................... 12, 13

Rupert v. Sellers,
  368 N.Y.S.2d 904 (App. Div. 1975) ..................................................................................... 13

**Federal Cases**

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986) ................................................................................................................ 2

BMW of North America v. Gore,
  517 U.S. 559, 116 S. Ct. 1589 (1996) ..................................................................................... 7

Greenbaum v. Svenska Handelsbanken, NY,
  979 F. Supp. 973 (S.D.N.Y. 1997) .......................................................................................... 2

Hall v. Consolidated Freightways Corp. of Delaware,
  337 F.3d 669 (6th Cir. 2003) ................................................................................................... 2

In re MTBE,
  2009 WL 1952497, * 5 (S.D.N.Y. July 6, 2009) ...................................................................... 7

In re MTBE,
  2009 WL 2634749, * 3 (S.D.N.Y. August 25, 2009) ............................................................... 7

In re MTBE,
  488 F.3d 112 (2d Cir. 2007) ................................................................................................... 7

In re MTBE,
  593 F.Supp.2d 549 (S.D.N.Y. 2008) ...................................................................................... 7

Mickle v. Morin,
  297 F.3d 114 (2d Cir. 2002) ................................................................................................... 2

Philip Morris USA v. Williams,
    549 U.S. 346, 127 S. Ct. 1057 (2007)....................................................................... 8, 10, 11, 12

Reeves v. Sanderson Plumbing Products, Inc.,
    530 U.S. 133 (2000)........................................................................................................... 2

State Farm Mutual Automobile Insurance Company v. Campbell,
    538 U.S. 408, 123 S. Ct. 1513 (2003)............................................................................. 7, 8, 12

TVT Records v. The Island Def Jam Music Group,
    257 F.Supp.2d 737 (S.D.N.Y. 2003)................................................................................ 12, 13

**Rules**

F.R.C.P. 50(a)(1)...................................................................................................................... 2

**Other Authorities**

New York Pattern Jury Instruction -- Civil 2:278 ............................................................. 3

I.        **INTRODUCTION**

ExxonMobil's motion is a disguised and improper Rule 50 motion which uses as a

linchpin an argument this Court has repeatedly rejected and has precluded ExxonMobil from

making.  The City has presented overwhelming evidence that demonstrates that ExxonMobil

*knew* that MTBE was hazardous to groundwater and was a cancer risk to humans at low levels

but, nonetheless, continued to market and sell MTBE for many years *without* disclosing the

dangers.  This evidence more than satisfies the requirement that a reasonable jury could find by

clear and convincing evidence that ExxonMobil's conduct was malicious or, at a minimum,

wanton and reckless, in conscious disregard for the health and safety of others, thereby providing

a basis to award punitive damages.

If the jury finds that the City is entitled to an award of punitive damages, as a matter of

law the City is entitled to present evidence of similar wrongful conduct to demonstrate the

reprehensibility of ExxonMobil's conduct.  Tellingly, ExxonMobil presents no authority to the

contrary.  For each of the reasons set forth herein, ExxonMobil's motion should be denied in its

entirety and the City should be permitted to offer the testimony of Dr. Fogg and Mr. Burke

regarding ExxonMobil's widespread manufacture, distribution and sale of gasoline containing

MTBE in other geographic regions.

II.       **ARGUMENT**

A.       **ExxonMobil's Motion Is An Improper Attempt To Seek Judgment As A**
          **Matter Of Law.**

Although ExxonMobil purports to seek an order *in limine* prohibiting the City's punitive

damages witnesses from testifying, ExxonMobil actually seeks judgment as a matter of law that

the City has not met its burden of proof on its punitive damages claim.  Mot. at 5.  ExxonMobil's

1

motion is therefore an improper and premature Rule 50 motion.  For this reason alone,

ExxonMobil's motion should be denied.  If, however, the Court is inclined to address the

substantive issue of whether the City has presented sufficient evidence to permit a jury to award

punitive damages in connection with the current motion, ExxonMobil should not be permitted to

re-argue this same point as part of a Rule 50 motion, which it has stated it intends to bring.

Regardless of whether this issue is addressed now or later in connection with a Rule 50

motion, the Court may only grant a motion for judgment as a matter of law if "a reasonable jury

would not have a legally sufficient evidentiary basis to find for the party on that issue."  F.R.C.P.

50(a)(1).  A Rule 50 motion may only be granted where, viewing all evidence in the light most

favorable to the nonmoving party and drawing all factual inferences in the nonmovant's favor,

the evidence allows only one reasonable conclusion.  Reeves v. Sanderson Plumbing Products,

Inc., 530 U.S. 133, 150 (2000); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986).

If reasonable minds could differ, the motion should be denied.  Hall v. Consolidated Freightways

Corp. of Delaware, 337 F.3d 669, 672 (6th Cir. 2003).  Moreover, in ruling on a Rule 50 motion,

the court may not make credibility determinations or weight the evidence.  Reeves, 530 U.S. at

150-151; Mickle v. Morin, 297 F.3d 114, 120 (2d Cir. 2002).

The City has presented more than sufficient evidence of wrongdoing by ExxonMobil

which would permit a reasonable jury to award punitive damages. [1]  For each of the reasons set

forth below, ExxonMobil's motion should be denied in its entirety.

---

[1] There is a split in authority as to whether the appropriate standard of proof for determining
punitive damages under New York law is the preponderance of the evidence standard or the clear
and convincing evidence standard.  Several courts, including one in the Southern District of New
York, have concluded that the preponderance of the evidence standard applies.  Greenbaum v.
Svenska Handelsbanken, NY, 979 F. Supp. 973, 975-982 (S.D.N.Y. 1997).  Under either
standard, the City has presented substantial evidence which would permit a reasonable jury to
conclude that ExxonMobil's conduct was malicious or, at a minimum, wanton and reckless, in

**B.** **The City Has Presented Ample Evidence To Support An Award Of Punitive Damages.**

ExxonMobil's contention that the City should be precluded from offering evidence of reprehensibility because there is insufficient evidence to permit a jury to find malice is baseless. The evidence presented at trial demonstrates that ExxonMobil's actions were either willful and malicious, or, at a minimum, wanton and reckless, in conscious disregard for the health, safety and rights of others. Prozeralik v. Capital Cities Comm'ns, Inc., 82 N.Y.2d 466, 479 (Ct. App. 1993); New York Pattern Jury Instruction -- Civil 2:278.

**1.** **The Evidence Demonstrates That ExxonMobil Knew MTBE Was Hazardous To Human Health.**

The undisputed evidence demonstrates that ExxonMobil *knew* that MTBE was hazardous to groundwater and to human health in small quantities as early as the mid-1980s, yet continued to manufacture, distribute and sell gasoline containing MTBE notwithstanding the numerous studies in which ExxonMobil participated which revealed its dangers. For example, the evidence presented at trial demonstrates that by no later than the mid-1980s, ExxonMobil *knew* that: (1) MTBE is highly soluble; (2) MTBE travels much farther and faster than BTEX in groundwater; (3) MTBE imparts an offensive taste and odor to water at extremely low concentrations; (4) MTBE is far more expensive and difficult to remediate than BTEX and other gasoline constituents; (5) MTBE does not readily biodegrade; (6) underground storage tank systems leaked frequently and such leaks often went undetected for long periods of time; and (7) safer, feasible alternatives were readily available (including but not limited to meaningful warnings,

---

conscious disregard for the health and safety of others. *See also* Comments to New York Pattern Jury Instruction -- Civil 2:278.

better product management, safer underground storage tank systems and/or the use of ethanol as

an oxygenate).[2]  In face of these known risks, ExxonMobil approved the use of MTBE.[3]

The evidence further establishes that, by the mid-1990s, ExxonMobil *knew* that (1)

studies showed MTBE had already become one of the most common VOC's in the nation's

groundwater; (2) there had been a rapid growth of incidents of public well contamination of

MTBE (including in Santa Monica, California and other areas); (3) a cavalcade of legislation had

begun which led to state bans of MTBE beginning in the late 1990s; and (4) toxicology studies

showed MTBE was a probable human carcinogen.  9/23/2009 TR at p. 5641:13-5649:19 (Exh. D

to September 30, 2009 Declaration of Nicholas G. Campins ("N. Campins Decl.").  Still,

ExxonMobil stated that it would not voluntarily stop using MTBE, but would wait until it had

been banned. 9/23/2009 TR at p. 5657:7-13 (N. Campins Decl. Ex. D).

Importantly, ExxonMobil participated in 1991 studies regarding the cancer affects of

MTBE.  8/27/2009 TR at p. 2811:22-2814:16 (N. Campins Decl Ex. E).  The results of these

studies showed that MTBE was an animal carcinogen and possible cancer risk to humans.

8/27/2009 TR at p. 2822:3-2839:13 (N. Campins Decl Ex. E).  The results of these studies were

not made available to the public health community for 5 years, during which time ExxonMobil

---

[2] *See, e.g.,* PL 2636 (May 6, 1987 internal ExxonMobil memorandum written by Samuel Hetrick); PL 247 (internal ExxonMobil memorandum dated April 6, 1984 from Jack Spell to J.S. Dick); PL 270-PL 271 (internal ExxonMobil memorandum to V. Dugan from B.J. Mickelson dated August 23, 1984); PL 283 (internal ExxonMobil memorandum to JME Mixter from B.J. Mickelson dated February 22, 1985); PL-292 (internal ExxonMobil  memorandum to JME Mixter from B.J. Mickelson dated April 19, 1985); Scala, Curran, and Mickelson (testimony re East Meadow, Jacksonville, Rockaway) 9/2/2009 TR at p. 3235:10-3239:25, p 3243:3-6;(N. Campins Decl. Ex A)  9/9/2009 TR at p. 3902:25-3939:22; (N. Campins Decl Ex. B)  9/4/09 TR at p. 3545:20-3546:10, p. 3549:18-3561:25, p. 3563:7-3567:13; (N. Campins Decl. Ex. C) PL 394;  PL 2436 (toxicology document); PL 323 (document dated May 29, 1986 to R .J . Landry from S .D . Curran re: Exxon Underground Tank Leak Experience); PL 2488 (March 1, 1985 Memorandum from R. G. Weeks to several individuals regarding Ethanol/Gasoline Marketing – Illinois/Minnesota).

kept manufacturing, distributing and selling gasoline containing MTBE.  In 1996, a third cancer

study was performed which, combined with its two earlier studies, allowed toxicologists to

conclude that MTBE was a probable human carcinogen.  Nonetheless, ExxonMobil continued to

manufacture, distribute and sell gasoline containing MTBE.  9/23/2009 TR at p. 5657:7-13 (N.

Campins Decl Ex. D).  By the early 2000s, genetic research showed that MTBE was a probable

human mutagen and, therefore, could cause cancer at the very lowest levels.  9/23/2009 TR at p.

5641:13-5649:19 (N. Campins Decl Ex. D).  Once again, ExxonMobil kept manufacturing,

distributing and selling gasoline containing MTBE.  9/23/2009 TR at p. 5657:7-13 (N. Campins

Decl Ex. D).  This evidence demonstrates that ExxonMobil acted willfully and recklessly, and in

conscious disregard for the health and safety of others.

Moreover, throughout the relevant period, ExxonMobil actively concealed MTBE's

hazardous properties from the public, downstream users, distributors and consumers, water

providers and the City by, among other things: (1) failing to warn them about MTBE's hazardous

and unusual properties; (2) intentionally omitting information about MTBE's properties from

regulatory disclosures and communications; (3) actively suppressing and failing to disclose their

own internal studies and analyses that exposed the hazards of MTBE despite legal duties to the

United States, the City and others that required them to do so; (4) intentionally withholding

funding for industry studies regarding MTBE's impact on groundwater and human health in an

effort to prevent the truth about MTBE from coming out; and (5) making affirmative

misrepresentations to the public regarding MTBE's hazards.[4]

---

[3] PL 302 (June 10, 1985 Memorandum requesting approval for use of MTBE)
[4] *See, e.g.,* Deposition of Robert Larkins 3/6/2008 at p. 467:23 – 468:3 (Didn't "un-inform"
concerning risks of MTBE); (N. Campins Decl. Ex. F)  9/4/2009 TR at p. 3663:25-3676:8; (N.
Campins Decl. Ex. C) 9/3/2009 TR at p. 3491:3-3499:3 (N. Campins Decl. Ex. G) and PL 3087
(1998 interoffice Mobil memorandum containing an MTBE response package (expressly not for

The evidence cited herein represents only a brief summary of all of the evidence presented at trial.  However, even this brief summary illustrates that the City has presented significant evidence demonstrating that ExxonMobil's conduct was either malicious or wanton and reckless, in conscious disregard for the health, safety and rights of others.  Thus, there is ample evidence to support an award of punitive damages.

### 2.      ExxonMobil Is Precluded From Arguing That The EPA Approved Or Endorsed The Use Of MTBE.

ExxonMobil argues that its conduct cannot be considered intentional or reckless because the EPA "authorized" the use of MTBE and, thus, punitive damages are not warranted. ExxonMobil attempts to re-argue the Court's rulings on the City's Motion *in Limine* Nos. 1 and 2.  The Court has already ruled that ExxonMobil is precluded from arguing that the EPA approved or endorsed the use of MTBE to rebut the City's argument that ExxonMobil wrongfully used MTBE in gasoline.  See July 15, 2009 Transcript of Proceedings, at 10:17-22. (N. Campins Decl. Ex. H) In so doing, the Court explicitly noted that:

> "[C]ertification of MTBE by the EPA means only that the EPA
> determined that MTBE satisfied the requirements of the Clean Air
> Act.  The EPA made no formal assessment as to its danger with
> respect to its effects on air quality or its unsuitability in
> groundwater or any other issues there as stated in this case.  Exxon
> is, therefore, precluded from arguing that the EPA approved the
> use of MTBE because it is simply untrue."

Id. at 9:14-22.  ExxonMobil's argument is therefore inappropriate, inaccurate and violates the Court's directive to refer specifically to the Court's ruling that is being challenged.

Moreover, the Second Circuit and this Court have already rejected ExxonMobil's

---

use with stations where Mobil did not own tanks); PL 3074 (April 24, 1998 document entitled "EUSA Marketing Environmental Engineering MTBE Survey – Retail Stores"); PL 2607 (February 27, 1987 Dominguez Letter to EPA); PL 5562 (internal Exxon document entitled

argument that federal law required or necessitated the use of MTBE in gasoline.  In re MTBE,

488 F.3d 112,114 (2d Cir. 2007); In re MTBE, 593 F.Supp.2d 549, 551 (S.D.N.Y. 2008).

Indeed, "the EPA identified six other additives, besides MTBE, that could be blended into

reformulated gasoline to meet the requirements imposed by the CAA and the regulations

promulgated thereunder."  In re MTBE, 488 F.3d at 126.

C.      **Evidence Of Similar Wrongful Conduct Is Admissible To Demonstrate**

   **Reprehensibility.**

Contrary to ExxonMobil's contentions, the law entitles the City to present evidence of

similar, out-of-state wrongful conduct to show that ExxonMobil's conduct was reprehensible.

As set forth in BMW of North America v. Gore, 517 U.S. 559, 116 S. Ct. 1589 (1996), "the most

important indicium of the reasonableness of a punitive damages award is the degree of

reprehensibility of the defendant's conduct."  Id. at 575; State Farm Mutual Automobile

Insurance Company v. Campbell, 538 U.S. 408, 419, 123 S. Ct. 1513 (2003).

Under Gore and State Farm, the Supreme Court set forth five factors to consider when

determining reprehensibility:  (1) the harm caused was physical as opposed to economic;[5] (2) the

tortious conduct evinced an indifference to or a reckless disregard of the health or safety of

others; (3) the target of the conduct had financial vulnerability; (4) the conduct involved repeated

actions or was an isolated incident; and (5) the harm was the result of intentional malice,

---

"Emerging Product Quality Issues Meeting" Mobil publicly advocated no ban based on lack of
"sound science," but secretly had concerns).

[5] Pursuant to this Court's previous rulings, contamination of the City's wells constitutes a
physical injury to the City's usufructuary real property interest.  See In re MTBE, 2009 WL
1952497, * 5 (S.D.N.Y. July 6, 2009) (applying New York law and finding that "The owner of a
well has a property interest in the use of the water therein and may recover damages for an injury
to this usufructuary property interest"); see also In re MTBE, 2009 WL 2634749, * 3 (S.D.N.Y.
August 25, 2009) ("The MTBE contamination is the injury; the design and construction costs are
damages the City seeks to recover for remediating the injury.").

trickery, or deceit, or mere accident.  Id.

To demonstrate that a defendant's conduct involved repeated actions and, thus, is more reprehensible than if it were an isolated incident, a plaintiff may introduce evidence of out-of-state conduct provided that conduct has a sufficient nexus to the specific harm suffered by the plaintiff.  Id. at 422.  "Evidence of actual harm to nonparties can help to show that the conduct that harmed the plaintiff also posed a substantial risk of harm to the general public, and so was particularly reprehensible."  Philip Morris USA v. Williams, 549 U.S. 346, 355, 127 S. Ct. 1057 (2007).

That is precisely what the City seeks to do here.  Through the testimony of Dr. Fogg and Mr. Burke, the City will demonstrate that ExxonMobil's conduct was not limited to the New York City area, but that ExxonMobil manufactured, distributed and sold gasoline containing MTBE across the county and, in particular, to areas which have suffered significant MTBE contamination of groundwater.  This evidence is directly related to the conduct complained of in this action.  Nonetheless, ExxonMobil seeks to preclude the City from offering any evidence of similar wrongful conduct by ExxonMobil.  Each of ExxonMobil's purported justifications for limiting the City's proposed evidence of reprehensibility are without merit.

1.      **The City's Experts Should Be Permitted To Testify Regarding ExxonMobil's Supply Of Gasoline Containing MTBE To Other Areas.**

ExxonMobil's argument that the City should be precluded from offering evidence of its supply of gasoline containing MTBE to areas other than New York City is a red herring. Evidence of supply to regions other than the New York City area was largely irrelevant to the

liability and damages phase.  In contrast, this evidence is directly relevant in the punitive

damages phase to demonstrate ExxonMobil's repeated wrongful conduct.  The City could not

have properly introduced this evidence in the liability phase of the trial.

Upon the Court's permission and on the date ordered by the Court, the City is prepared to

serve supplemental expert reports from Mr. Burke and Dr. Fogg, solely for the purpose of

demonstrating reprehensibility, which address ExxonMobil's supply of gasoline containing

MTBE in other regions and the resulting MTBE contamination in those regions.  The City will

also make both Mr. Burke and Dr. Fogg available for deposition on their supplemental reports

relating to the reprehensibility analysis.

Finally, ExxonMobil will suffer no prejudice from the introduction of evidence relating

to ExxonMobil's distribution systems and corresponding areas of MTBE contamination.  Dr.

Fogg's previous expert reports already detail significant areas of MTBE contamination

throughout the country, particularly throughout California.  Mr. Burke seeks to offer evidence

regarding ExxonMobil's manufacturing, distribution and retail channels throughout the country,

including specifically into areas with significant MTBE contamination.  ExxonMobil knows full

well the location of its refineries, distribution channels and retail locations.  Obviously, this

information is within the possession of ExxonMobil.  To the extent it disagrees with the evidence

proffered by Mr. Burke, it will have a full opportunity to cross-examine Mr. Burke and/or proffer

its own witnesses to explain its role in manufacturing, distributing and selling gasoline

containing MTBE throughout the nation.

### 2.   ExxonMobil's Widespread Manufacture, Distribution And Sale Of Gasoline Containing MTBE Is Relevant To Show Repeated Conduct.

ExxonMobil next argues that evidence of its nationwide distribution of gasoline

containing MTBE is purportedly irrelevant because it does not show that ExxonMobil harmed

anyone.  ExxonMobil misses the point.  First, ExxonMobil continued to manufacture, distribute

and sell gasoline containing MTBE throughout the nation while ExxonMobil knew it would

represent an enhanced environmental threat (including as a carcinogen).  This evidence, in and of

itself, is sufficient evidence of similar wrongful conduct.

Second, the City will demonstrate that ExxonMobil distributed and sold its gasoline

containing MTBE to areas which suffered significant MTBE contamination.  Given that the City

has already demonstrated that virtually *all* underground storage tanks leaked and that

ExxonMobil *knew* its gasoline containing MTBE would go to such tanks (including stations

where tanks had not been upgraded), ExxonMobil's supply of gasoline to these contamination

areas necessarily shows that ExxonMobil contributed to a *commingled MTBE gasoline product*

which caused MTBE contamination.  As the Court explained, this is evidence that ExxonMobil's

product was a substantial factor of the contamination.  Moreover, the Court has already ruled that

the City may seek punitive damages under a commingled product theory.  June 9, 2009 Order

and Opinion, at 19-21.  ExxonMobil's market share analysis is therefore inapplicable.

> **3.      The City's Proposed Jury Instruction Provides The Required**
> **Safeguard Under *Philip Morris* To Ensure That The Jury Does Not**
> **Actually *Punish* ExxonMobil For Its Wrongful Out-Of-State Conduct.**

Next, ExxonMobil argues that evidence of its widespread manufacture, sale and

distribution of gasoline containing MTBE is designed to hold ExxonMobil responsible for harm

to nonparties.  ExxonMobil ignores the ruling in Philip Morris and the City's proposed punitive

damages jury charge.

As explained above, the Supreme Court explicitly made clear in Philip Morris that

10

evidence of harm to nonparties may be used to show that a defendant's conduct was

reprehensible, provided that the jury does not "use a punitive damages verdict to punish a

defendant directly on account of harms it is alleged to have visited on nonparties."  549 U.S. at

355.   At the same time, the Supreme Court recognized that "conduct that risks harm to many

others is likely more reprehensible than conduct that risks harm to only a few.  And a jury

consequently may take this fact into account in determining reprehensibility."  Id.  Therefore, the

Court concluded that states must "provide assurance that juries are not asking the wrong

question, i.e., seeking, not simply to determine reprehensibility, but also to punish for harm

caused strangers," Id.

The City's proposed punitive damages charge provides this required safeguard and

assurance that the jury will not award punitive damages for harm cause to others.  Specifically,

the City proposed the following jury charge to satisfy the concerns set forth in Philip Morris:

> "In arriving at your decision as to the amount of punitive damages
> you should consider the nature and reprehensibility of what
> ExxonMobil did.  That would include the character of the
> wrongdoing, whether ExxonMobil's conduct demonstrated an
> indifference to, or a reckless disregard of, the health, safety and
> rights of others, whether the acts were done with an improper
> motive or vindictiveness, whether the act or acts constituted
> outrageous or oppressive intentional misconduct, how long the
> conduct went on, ExxonMobil's awareness of what harm the
> conduct caused or was likely to cause, any concealment or
> covering up of the wrongdoing, how often ExxonMobil had
> committed similar acts of this type in the past and the actual and
> potential harm created by ExxonMobil's conduct including the
> harm to individuals or entities other than plaintiff the City.
> However, **although you may consider the harm to individuals**
> **or entities other than plaintiff the City in determining the**
> **extent to which ExxonMobil's conduct was reprehensible, you**
> **may not add a specific amount to your punitive damages**
> **award to punish ExxonMobil for the harm ExxonMobil caused**
> **to others."**  (Emphasis added).

The City is entitled to offer evidence of ExxonMobil's wrongful conduct in other

11

geographic areas, provided that the jury is instructed not to award damages for harm to

nonparties, as proposed above.  ExxonMobil's attempt to preclude such evidence outright must

therefore be rejected.

> D.      **The City Is Entitled To Present Evidence of ExxonMobil's Net Worth,**
>
> **Without Any Geographic Limitations.**

Not surprisingly, ExxonMobil cites no authority for its contention that "economic

evidence should be limited to ExxonMobil's economic benefit from doing business only in the

geographic area involved here -- the City of New York."  Mot. at 9.  There is none.  To the

contrary, while State Farm limits the admission of dissimilar out-of-state conduct for the

purposes of determining the degree of reprehensibility of a defendant's conduct and, thus, a

plaintiff's entitlement to an award of punitive damages in the first instance, it does *not* prohibit

or geographically limit evidence of a defendant's net worth for purposes of determining the

*amount* of the punitive damages award.  538 U.S. at 421-424.  Likewise, Philip Morris only

prohibits a jury from actually *punishing* a defendant for out-of-state conduct against nonparties.

549 U.S. at 355.  It does *not* in any way limit the introduction or consideration of evidence of a

defendant's net worth to the geographic region in which the harm occurred.

"[T]his district has construed New York law as permitting evidence of net worth to be

considered as an element of punitive damages even when the defendant is a corporation."  TVT

Records v. The Island Def Jam Music Group, 257 F.Supp.2d 737, 746 (S.D.N.Y. 2003).  There is

no authority which limits this evidence to wealth held in state.  ExxonMobil has not cited, and

cannot cite, any authority to the contrary.[6]

---

[6] Indeed, the only case which appears to have expressly addressed this issue is Rose v.
Brown & Williamson Tobacco Corporation, 809 N.Y.S.2d 784 (Sup. Ct. 2005).  In doing so, the
trial court found that:

12

Moreover, the purpose of presenting evidence of net worth is to "furnish [the jury with] a guide for suitable punishment."  Rupert v. Sellers, 368 N.Y.S.2d 904, 913 (App. Div. 1975); TVT Records, 257 F.Supp.2d at 747 ("It is well-settled, in fact, that evidence of a defendant's net worth is properly considered given the goals of punishment and deterrence served by punitive damages.").  If that evidence is limited only to activity in the geographic region at issue, a defendant could easily cause repeated injuries throughout the country and easily escape any meaningful punishment simply by demonstrating, in each instance, that most of its income is generated in areas outside the city in which the injury at issue occurred.  That is not the law, nor would it serve the goals of punishment and deterrence.

Accordingly, evidence of ExxonMobil's net worth should not be limited to the "economic benefit" it derived from doing business in the City of New York.  The City should be permitted to introduce ExxonMobil's 2008 10-K to demonstrate its net worth.

//

//

---

"There is no rule that would limit the jury's consideration to wealth held in state.  While the Supreme Court in State Farm held that out-of-state conduct that has no nexus to the harm suffered is inadmissible on the question of punitive damages, it did not prohibit consideration of a defendant's out-of-state wealth in fixing the amount of a punitive damages award."

Id. at 809 (citation omitted).  Although the Rose case is a trial court opinion, the City included this citation for the Court's review because it demonstrates that the New York trial court reached the same conclusion, i.e., that there is no authority that limits a jury's consideration of net worth to wealth held in state.

## III.    CONCLUSION

For each of the foregoing reasons, the City respectfully requests that ExxonMobil's

motion *in limine* be denied in its entirety, and that the City be permitted in Phase IV to offer the

testimony of Dr. Fogg and Mr. Burke regarding similar instances of wrongful conduct to

demonstrate the reprehensibility of ExxonMobil's conduct against the City.


Dated:  September 30, 2009

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Attorney for Plaintiff City of New York
100 Church Street
New York, New York 10007
(212) 788-1568


 /s/ *VICTOR M. SHER*
VICTOR M. SHER *(pro hac vice)*
TODD E. ROBINS *(pro hac vice)*
NICHOLAS G. CAMPINS *(pro hac vice)*
MARNIE E. RIDDLE (*pro hac vice*)

SHER LEFF LLP
450 Mission Street, Suite 400
San Francisco, CA 94105
(415) 348-8300

ROBERT S. CHAPMAN *(pro hac vice)*
 GREENBERG, GLUSKER, FIELDS,
CLAMAN & MACHTINGER LLP
1900 Ave. of Stars, 21st Floor
Los Angeles, CA 92886
(310) 553-3610