UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE METHYL TERTIARY BUTYL ETHER
PRODUCTS LIABILITY LITIGATION

This document relates to:

*City of New York v. Amerada Hess Corporation, et al.*,
No. 04 Civ. 3417 (SAS)

Master File No. 1:00-1898
MDL 1358 (SAS)
M21-88

# EXXON MOBIL DEFENDANTS' MEMORANDUM IN
# SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW

Dockets.Justia.com

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. iii

ARGUMENT ...................................................................................................................... 1

I. THE CITY FAILED TO PROVE AN ACTUAL AND IMMINENT LEGALLY COGNIZABLE INJURY TO ITS PROPERTY INTEREST. ........................................... 1

II. THE CITY FAILED TO PROVE CAUSATION UNDER NEW YORK LAW OR THE OTHER APPROACHES ENUNCIATED BY THE COURT. ................................... 4

    A. The City Has Not Proven "Direct Spiller" Causation. .......................................... 4

    B. The City Has Not Proven Traditional Causation. ................................................. 5

    C. The Court's Commingled Product Theory Of Causation Is Not Recognized In New York And, In Any Event, the City Failed To Prove That ExxonMobil's Product Caused The City's Alleged Injury .......................................................... 6

    D. Even If New York Recognized A Commingled Product Theory, The Court Erred By Placing The Burden Of Apportionment On ExxonMobil. ...................... 8

III. STATE-LAW LIABILITY WOULD CONFLICT WITH THE 1990 FEDERAL CLEAN AIR ACT AMENDMENTS. ............................................................................... 9

IV. THE COURT SHOULD GRANT JUDGMENT AS A MATTER OF LAW IN FAVOR OF EXXONMOBIL ON THE CITY'S DESIGN DEFECT CLAIM.. ............. 11

    A. No Reasonable Jury Could Find That Ethanol Was A Feasible, Safer Alternative to MTBE .......................................................................................... 11

    B. The City Failed To Prove That Its Harm Was Caused By A Foreseeable "Use" Of the Product ..................................................................................................... 14

V. THE COURT SHOULD GRANT JUDGMENT AS A MATTER OF LAW IN FAVOR OF EXXONMOBIL ON THE CITY'S FAILURE-TO-WARN CLAIM. .......... 15

VI. THE COURT SHOULD GRANT JUDGMENT AS A MATTER OF LAW IN FAVOR OF EXXONMOBIL BASED ON THE STATUTE OF LIMITATIONS ........... 17

VII. THE COURT SHOULD GRANT JUDGMENT AS A MATTER OF LAW IN
FAVOR OF EXXONMOBIL ON THE OTHER COMMON-LAW CLAIMS ................... 18

    A. The City Failed To Prove Its Negligence Claim ............................................................ 18

    B. The City Failed To Prove Its Private Nuisance Claim ................................................ 20

    C. The City Failed to Prove Its Public Nuisance Claim .................................................. 21

    D. The City Failed to Prove Its Trespass Claim .............................................................. 22

CONCLUSION ........................................................................................................................... 24

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In Re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1223 (E.D.N.Y 1985) ............................ 6

*Barrett v. Black & Decker Inc.*, No. 06 CIV 1970, 2008 U.S. Dist. LEXIS 108787
    (S.D.N.Y. Aug. 5, 2008) ............................................................................................ 3

*Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001) ....................................... 15

*City of N.Y. v. Amerada Hess Corp. (In Re MTBE Prods. Liab. Litig.)*, No. 04 Civ. 3417,
    2009 U.S. Dist. LEXIS 52432 (S.D.N.Y. June 9, 2009) ............................................. 7

*City of N.Y. v. Amerada Hess Corp. (In Re MTBE Prods. Liab. Litig.)*, No. 04 Civ. 3417,
    2009 U.S. Dist. LEXIS 59287 (S.D.N.Y. July 6, 2009) ............................................. 1

*City of N.Y. v. Amerada Hess Corp. (In Re MTBE Prods. Liab. Litig.)*, No. 04 Civ. 3417,
    2009 U.S. Dist. LEXIS 61382 (S.D.N.Y. July 14, 2009) ............................................. 9

*City of N.Y. v. Amerada Hess Corp. (In Re MTBE Prods. Liab. Litig.)*, No. 04 Civ. 3417,
    2009 U.S. Dist. LEXIS 62649 (S.D.N.Y. July 21, 2009) ............................................. 5

*City of N.Y. v. Amerada Hess Corp., (In Re MTBE Prods. Liab. Litig.)*, 2009 U.S. Dist.
    LEXIS 78081 (S.D.N.Y. Aug. 25, 2009) ............................................................... 17

*Colon v. BIC USA, Inc.*, 199 F. Supp. 2d 53 (S.D.N.Y. 2001) ....................................... 15

*County of Suffolk v. Amerada Hess Corp. (In Re MTBE Prods. Liab. Litig.)*, 447 F. Supp.
    2d 289 (S.D.N.Y. 2006) ................................................................................... 7, 9

*County of Suffolk v. Amerada Hess Corp. (In Re MTBE Prods. Liab. Litig.)*, 591 F. Supp.
    2d 249 (S.D.N.Y. 2008) ................................................................................... 6, 9, 19

*Davis v. City of N.Y.*, 228 F. Supp. 2d 327 (S.D.N.Y. 2002) ....................................... 1

*Eastern R.R. Presidents Conference v. Noerr Freight Co.*, 365 U.S. 127 (1967) ............. 15

*Erony v. Alza Corp.*, 913 F. Supp. 199, 200 (S.D.N.Y. 1995) ..................................... 15

*Figueroa v. Boston Sci. Corp.*, 254 F. Supp. 2d 361 (S.D.N.Y. 2003) ............................ 15

*Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276 (2d Cir. 1998) ............. 1

*Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85 (2d Cir. 2000) .................................. 20, 21

*Kalinowski v. Ryerson*, 242 A.D. 43, 45, [272 N.Y.S. 759] (4th Dept. 1934), *aff'd* 270
    N.Y. 532 (1936) ............................................................................................. 6

*Knaust v. City of Kingston*, 193 F.Supp.2d 536 (N.D.N.Y. 2002).................................................4

*Mehra v. Bentz*, 529 F.2d 1137 (2d Cir. 1975) ...........................................................................6

*In Re MTBE Prods. Liab. Litig.*, 175 F. Supp. 2d 593 (S.D.N.Y. 2001).................................3, 11

*In Re MTBE Prods. Liab. Litig.*, 457 F. Supp. 2d 324 (S.D.N.Y. 2006).....................................10

*In Re MTBE Prods. Liab. Litig.*, 458 F. Supp. 2d 149 (S.D.N.Y. 2006)...................................1, 2

*In Re MTBE Prods. Liab. Litig.*, 2007 U.S. Dist. LEXIS 40484 (S.D.N.Y. June 4, 2007) ...........17

*Scribner v. Summers*, 84 F.3d 554 (2d Cir. 1996) ......................................................................23

*Tornheim v. Fed. Home Loan Mortgage Corp.*, 988 F. Supp. 279 (S.D.N.Y. 1997).....................3

*United Mine Workers v. Pennington*, 381 U.S. 657 (1965)........................................................15

## STATE CASES

*Akins v. Glens Falls City Sch. Dist.*, 424 N.E.2d 531 (N.Y. 1981) ...............................................3

*Copart Indus. v. Consol. Edison Co.*, 362 N.E.2d 968 (N.Y. 1977)........................................3, 20

*Corcoran v. Banner Super Market*, 227 N.E.2d 304, 305 (N.Y. 1967).......................................19

*Healey v. Firestone Tire & Rubber Co.*, 663 N.E.2d 901 (N.Y. 1996).........................................5

*Hellert v. Town of Hamburg*, 857 N.Y.S.2d 825 (N.Y. App. Div. 2008).....................................3

*Hymowitz v. Eli Lilly & Co.*, 539 N.E.2d 1069 (N.Y. 1989) ....................................................6, 9

*Lugo v. LJN Toys, Ltd.*, 552 N.E.2d 162 (N.Y. 1990) ................................................................14

*Morejon v. Rais Construction Co.*, 851 N.E.2d 1143 (N.Y. 2006)..............................................19

*New York v. Fermenta ASC Corp.*, 630 N.Y.S.2d 884 (N.Y. Sup. Ct. 1995)..............................22

*Pfohl v. Amax*, 222 A.D.2d 1068, (N.Y. App. Div. 1995)..........................................................15

*Phillips v. Sun Oil Co.*, 121 N.E.2d 249 (N.Y. 1954)...........................................................22, 23

*Plainview Water Dist. v. Exxon Mobil Corp.*, 2008 N.Y. Slip. Op. 501520 (N.Y. Sup. Ct. 2008) ..............................................................................................................................4

*Snyder v. Jessie*, 565 N.Y.S.2d 924 (App. Div. 4th Dep't 1990) ................................................23

*Voss v. Black & Decker*, 450 N.E.2d 204 (1983) .......................................................................11

## STATUTES
42 U.S.C. 7545(k)(1) .................................................................................................11

## MISCELLANEOUS

New York Pattern Jury Instruction 2:70 ..................................................................19

New York Pattern Jury Instruction 3:8 ....................................................................23

New York Pattern Jury Instruction 3:16 ..................................................................20

## ARGUMENT

A court should grant judgment as a matter of law against a party when "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue[.]" *Davis v. City of N.Y.*, 228 F. Supp. 2d 327, 330 (S.D.N.Y. 2002) (Scheindlin, J.) (quoting FED. R. CIV. P. 50(a)). A plaintiff fails to overcome Rule 50(a) when "'(1) there is such a complete absence of evidence [to] support [a plaintiff's] verdict that the jury's findings [w]ould only [be] the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair-minded [persons] could not arrive at a verdict against [it].'" *Id.* (quoting *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998)) (brackets in original).

### I. THE CITY FAILED TO PROVE AN ACTUAL AND IMMINENT LEGALLY COGNIZABLE INJURY TO ITS PROPERTY INTEREST.

The City's only legally protected interest is a usufructuary right to appropriate water – in this case, via the Station 6 wells. *City of N.Y. v. Amerada Hess Corp. (In Re MTBE Prods. Liab. Litig.)*, No. 04 Civ. 3417, 2009 U.S. Dist. LEXIS 59287 at *19 (S.D.N.Y. July 6, 2009). The Court has held that whether MTBE at or below New York's maximum contaminant level ("MCL") of 10 ppb is a legally cognizable injury is a question of fact for the jury. *In Re MTBE Prods. Liab. Litig.*, 458 F. Supp. 2d 149, 159 (S.D.N.Y. 2006). ExxonMobil acknowledges that ruling and restates its objection to it. ExxonMobil's position is that MTBE levels at or below the MCL do not constitute injury because they do not impair the City's usufructuary right[2] – such water is legally potable and, in fact, is served by the City. ExxonMobil's position is that

---

[2] ExxonMobil incorporates by reference the arguments and analysis that were presented in *Defendants' Motion For Summary Judgment On All Claims For Lack of Justiciability*, filed January 23, 2006, as well as all associated memoranda, reply papers, letter-briefing and/or oral argument on that motion (copies at *Declaration of James A. Pardo* ["*Pardo Decl.*"], Ex. A).

the jury's Phase 2 verdict that MTBE will peak at 10 ppb (8/26/09 Tr. 22:16-22:25) is dispositive of the "injury" issue and entitles ExxonMobil to judgment as a matter of law.

The Court held that to prove "injury" for MTBE levels below New York's MCL, the City had to prove that it incurred taste or odor complaints or increased costs (*e.g.*, sampling costs) because of such low-level MTBE. *In Re MTBE*, 458 F. Supp. 2d at 159. But the evidence at trial proved that the City has **not** incurred such complaints or costs, and has not been (and will not be) injured from any future MTBE at levels at or below the MCL:

- The City employee responsible for water quality (Mr. Schindler) admitted that despite serving water containing MTBE (8/31/09 Tr. 2991:12-17), the City has never had a taste or odor complaint it can attribute to MTBE (8/31/09 Tr. 2982:4-7) and has never increased sampling frequency because of MTBE (8/31/09 Tr. 2982:18-23);

- Schindler admitted that it was not possible to serve drinking water with zero contaminants (8/31/09 Tr. 2962:4-8), and that the City has served known carcinogens in its drinking water (8/31/09 Tr. 2980:21-25, 2981:1-9);

- The City's taste and odor expert (Dr. Lawless) admitted he could not opine about the ability of City residents to smell or taste MTBE in their water (8/31/09 Tr. 2920:15-20);

- The City's rebuttal toxicology expert (Dr. Rudo) testified that, based on his experience investigating "several thousand" incidents of MTBE in wells, "it's pretty difficult to detect under 50 parts per billion [by taste or odor]." (9/2/09 Tr. 3280:2-25).

Most importantly, Mr. Schindler admitted that water containing MTBE at up to 10 ppb was "safe to drink" and would be reported to customers as "safe to drink" by the City. (8/31/09 Tr. 3017:16-24). In sum, the evidence proved that the City serves water containing MTBE below 10 ppb; believes (and tells customers) that such water is "safe to drink;" and has experienced no taste or odor complaints, or increased costs, as a result of such low-level MTBE. The evidence proved that, as a matter of fact, the City has not suffered (and will not suffer) any "injury" due to MTBE at even the **peak** level found by the jury in this case.

In addition, because a well owner's only protected interest in groundwater is its use of that water, even at levels *above* an applicable MCL groundwater contamination does not constitute "injury" absent proof that plaintiff is using the water. *See, e.g., Hellert v. Town of Hamburg*, 857 N.Y.S.2d 825, 828 (App. Div. 2008) (although contamination exceeded MCL, summary judgment granted because none of the plaintiffs used the water "for drinking purposes or, indeed, for any other purpose."). Because the City has never *used* the Station 6 wells, as a matter of law it cannot have suffered any injury to its usufructuary right. Proof of actual "injury" is required for all of the City's claims here. *See Barrett v. Black & Decker Inc.*, No. 06 CIV 1970, 2008 U.S. Dist. LEXIS 108787, at *23-24 (S.D.N.Y. Aug. 5, 2008) (design defect, failure to warn); *Tornheim v. Fed. Home Loan Mtge. Corp.*, 988 F. Supp. 279, 282 (S.D.N.Y. 1997) (trespass)[3]; *Akins v. Glens Falls City Sch. Dist.*, 424 N.E.2d 531, 535 (N.Y. 1981) (negligence); *Copart Indus. v. Consol. Edison Co.*, 362 N.E.2d 968, 971-72 (N.Y. 1977) (nuisance).

We acknowledge the Court's prior ruling that the City already has been "injured" by virtue of MTBE's alleged presence in the "capture zone" of the Station 6 wells, and we respectfully note our objection to it. Because the City is not using Station 6, any "injury" to the City's usufructuary interest must arise, if at all, by virtue of a putative "threat" that MTBE poses to that interest today. But as the Court previously ruled, threat of injury may satisfy the actual injury element only if a plaintiff proves that the threat is imminent and certainly impending. *In Re MTBE Prod. Liab. Litig.*, 175 F. Supp. 2d 593, 610 (S.D.N.Y. 2001) ("[C]ourt must

---

[3] In ruling that "damage is not part of a trespass claim" (*In Re MTBE*, 2009 U.S. Dist. LEXIS 59287, at *31) the Court rejected ExxonMobil's argument that a trespass claim based on migration of groundwater contamination requires proof of actual injury. ExxonMobil respectfully objects to that ruling and incorporates by reference the argument made in the *Reply Memorandum of Law In Support of Defendants' Motion in Limine to Preclude Evidence and Argument Regarding Plaintiff's Past and Future Investigation and Treatment Costs Until It Proves Actual Injury*, at 3-4 (6/2/2009) (*Pardo Decl.* Ex. B).

distinguish between a threat that 'may' pose an imminent endangerment and a threat that is 'certainly impending.'"). ExxonMobil submits that the City has not proven an imminent, certainly impending threat of injury because the jury found only that the City has a good-faith intent to build a treatment system at Station 6 in the next 15-20 years and, assuming it ever builds and uses the Station 6 wells as a back-up water source, that MTBE may peak at a level of 10 ppb twenty-four (24) years from today. As a matter of law, speculative events that may occur, if at all, 15-20 years in the future are not sufficiently "imminent and certainly impending" to support a threat claim. *See e.g., Knaust v. City of Kingston*, 193 F. Supp. 2d 536, 543 (N.D.N.Y. 2002) (threat of water contamination not imminent when no impact had occurred in 5 years); *Plainview Water Dist. v. Exxon Mobil Corp.*, 2008 N.Y. Slip. Op. 501520, at *25 (Sup. Ct. Nassau County 2008) (absence of MTBE impact after six years supports finding against imminent threat).

## II. THE CITY FAILED TO PROVE CAUSATION UNDER NEW YORK LAW OR THE OTHER APPROACHES ENUNCIATED BY THE COURT.

ExxonMobil moves for judgment as a matter of law on the ground that the City has failed to establish that ExxonMobil caused the City's alleged harm.

### A. The City Has Not Proven "Direct Spiller" Causation.

The evidence does not establish that gasoline allegedly spilled at any of the six "Mobil" branded service stations identified by the City's expert, Mr. Terry, will be a substantial factor in causing any MTBE detection in the City's Station 6 wells. Indeed, Mr. Terry admitted at trial that he could not state with any reasonable degree of certainty whether any gasoline spilled from any "ExxonMobil" station would be a substantial factor in causing any MTBE detection at Station 6 in the future. (9/23/09 Tr. 5702:23-5703:5, 5704:5-11, 5706:17-25, 5710:2-8).

B.   **The City Has Not Proven Traditional Causation.**

The City also failed to meet its burden of proving that "it is reasonably probable, not merely possible or evenly balanced" that ExxonMobil manufactured or supplied the gasoline alleged to have caused the City's injury. *See Healey v. Firestone Tire & Rubber Co.*, 663 N.E.2d 901, 903 (N.Y. 1996). The City introduced no direct evidence that any of the BP, Citgo, Atlas or other branded service stations located in Mr. Terry's putative "capture zone" for Station 6 (or anywhere in Queens for that matter) were actually supplied with gasoline made or sold by ExxonMobil. Having no direct evidence that ExxonMobil supplied the relevant stations at the relevant times, the City offered testimony only about ExxonMobil's "wholesale" market share – *i.e.*, data reported on Energy Information Agency 782C forms – as circumstantial evidence that gasoline sold by ExxonMobil was among that discharged (from any station) into groundwater that might be part of any future "capture zone" for Station 6. But the City's expert (Mr. Tallett) admitted that EIA 782C data said nothing about who made the gasoline, and that such data was reported on a state-wide (*i.e.*, all of New York) basis. (9/14/09 Tr. 4307:16-25, 4308:1-13).

We acknowledge the Court's ruling that EIA 782C data may be used as circumstantial evidence for proving traditional causation (*City of N.Y. v. Amerada Hess Corp. (In Re MTBE Prods. Liab. Litig.)*, No. 04 Civ. 3417, 2009 U.S. Dist. LEXIS 62649, at *18 (July 21, 2009)), and reiterate our objection to that ruling. But even accepting Mr. Tallett's opinion that ExxonMobil "wholesaled" about 25% of the gasoline supplied somewhere in New York State (9/14/09 Tr. 4281:8-11), no reasonable jury could conclude – and it would be improper for any jury to infer – that this fact makes it more likely than not that any gasoline spilled, at any time, from any service station in Queens, was supplied by ExxonMobil. "[T]he established rule [is] that a plaintiff must offer evidence that causation was more than 50 percent probable," not

merely 25%. *See In Re "Agent Orange" Prod. Liab. Litig.*, 611 F.Supp. 1223, 1262 (E.D.N.Y 1985). As the Second Circuit has stated:

> The rule in New York is that, while inferences of negligence may be drawn from circumstantial evidence, those inferences must be the only ones which reasonably could be drawn from the evidence presented. If the circumstantial evidence presented lends itself equally to several conflicting inferences, the trier of fact is not permitted to select the inference it prefers, since to do so would be the equivalent of engaging in pure speculation about the facts. '[A] possibility of causation will not suffice to impress liability upon a defendant. Conjecture is not enough. A cause of action must be something more than a guess.'"

*Mehra v. Bentz*, 529 F.2d 1137, 1139 (2d Cir. N.Y. 1975) (quoting *Kalinowski v. Ryerson*, 242 A.D. 43, 45 (272 N.Y.S. 759) (4th Dept. 1934), *aff'd* 270 N.Y. 532 (1936)).

Mr. Tallett's opinion does not even make it *equally* probable that ExxonMobil supplied the gasoline alleged to have caused the City's injury here. In fact, if any circumstantial inference could be drawn from Mr. Tallett's opinion, it is that ExxonMobil, more likely than not, **did not** supply the gasoline alleged to have caused the City's injury – as there is a 75% chance that ExxonMobil-supplied product is not present at any particular location at any point in time.

### C. The Court's Commingled Product Theory of Causation Is Not Recognized in New York and, In Any Event, The City Failed to Prove That ExxonMobil's Product Caused the City's Alleged Injury.

In New York, "identification of the exact defendant whose product injured the plaintiff is, of course, generally required." *Hymowitz v. Eli Lilly & Co.*, 539 N.E.2d 1069, 1073 (N.Y. 1989). The Court fashioned an exception to this traditional rule of causation "to address the particular facts of this case" – *i.e.*, the commingled product theory. *County of Suffolk v. Amerada Hess Corp. (In Re MTBE Prods. Liab. Litig.)*, 591 F. Supp. 2d 249, 268 (S.D.N.Y. 2008). The commingled product theory assumes that "all defendants contributed to the commingled gasoline that caused contamination to plaintiffs' wells" unless a particular defendant meets its "burden" of exculpation. *Id.* ExxonMobil reiterates its consistent objection

to the creation and application of the Court's commingled product theory in this case for all the reasons we have previously articulated.[4]

We acknowledges the Court's prior rulings adopting the theory and applying it here. But even if New York recognized a "commingled product" theory, the City failed to establish causation under the theory because it failed to prove that gasoline made by ExxonMobil was "actually 'present in a completely commingled or blended state at the time and place that the harm or risk of harm occurred.'" *City of N.Y. v. Amerada Hess Corp. (In Re MTBE Prods. Liab. Litig.)*, No. 04-CV-3417, 2009 U.S. Dist. LEXIS 52432, at *20-21 (S.D.N.Y. June 9, 2009) (quoting *County of Suffolk v. Amerada Hess Corp. (In Re MTBE Prods. Liab. Litig.)*, 447 F. Supp. 2d 289, 300 (S.D.N.Y. 2006)). The City relied on testimony from its expert, Bruce Burke, to establish that gasoline actually refined by ExxonMobil was among the commingled product that caused the City's alleged injury at Station 6. But Mr. Burke's testimony did not prove that gasoline made by ExxonMobil was among the commingled gasoline in the USTs located within the putative "capture zone" of the Station 6 Wells at a time when they allegedly leaked. Indeed, Mr. Burke did not know the date of any UST release that might affect Station 6 (9/11/09 Tr. 4175:12-17) and could not tell how long any such release might have lasted (9/11/09 Tr. 4175:18-4176:7). And even if a particular UST release could be determined temporally, Mr. Burke also admitted that:

---

[4] Briefing on the Court's commingled product theory has been extensive. ExxonMobil hereby incorporates the argument and analysis set forth in *Certain Defendants' Motion To Certify The Court's May 13, 2008 Opinion And Order For Interlocutory Appeal*, filed on May 29, 2008, related to *County of Suffolk v. Amerada Hess Corp.*, 04 Civ. 05424, and all associated memoranda and replies; *Defendant's Motion In Limine Regarding Application of the Commingled Product Theory, Consideration of Fault of Nonparties by Jury, and Proof of Date of Harm*, filed April 27, 2009, and all associated memoranda and replies; *Letter-Brief from P. Sacripanti to the Court* (June 4, 2009); *Letter-Brief from P. Sacripanti to the Court* (June 22, 2009); *Letter-Brief from J. Pardo to the Court* (September 20, 2009) (*Pardo Decl.*, Exs. C-E).

- MTBE gets to New York Harbor from (1) foreign refineries, (2) regional domestic refineries, (3) Gulf Coast refineries via the Colonial Pipeline, and (4) MTBE manufacturers shipping directly to New York. (9/14/09 Tr. 4415:8-4417:6);

- Only one foreign importer shipped gasoline refined by ExxonMobil to New York Harbor, and he did not know if any went to Queens. (9/11/09 Tr. 4156:6-4157:12);

- ExxonMobil has not operated a refinery in the metropolitan New York area since 1998 (9/11/09 Tr. 4148:20-22);

- While Exxon's Brooklyn terminal was supplied by Exxon's Bayway (NJ) refinery until 1993, he did not know if any of that gasoline went to Queens. (9/11/09 Tr. 4135:14-24, 4213:17-21);

- He could not place Exxon or Mobil refined gasoline into every shipment of commingled product on the Colonial pipeline. (9/11/09 Tr. 4138:19-4139:5);

- Only about 25-30% of what ExxonMobil puts into Colonial makes it to New Jersey – the rest is off-loaded prior to New York Harbor. (9/11/09 Tr. 4178:9-12); and

- He did not know how much Exxon or Mobil refined gasoline went from Colonial to the Buckeye pipeline and, potentially, into Queens. (9/11/09 Tr. 4175:5-11).

Ultimately, Mr. Burke could not say whose gasoline was in a particular station's USTs at any given time (9/11/09 Tr. 4180:24-4181:7), and that about half of the gasoline put into the New York Harbor area – including any gasoline made by ExxonMobil – was sent outside of the New York metropolitan area. (9/15/09 Tr. 4532:24-4533:11). In short: even if the commingled product theory applied in New York (and it does not), the City failed to meet its burden to prove that ExxonMobil-made product was among the gasoline alleged to have been released from any UST, and any service station, at any time, such that it impacted the Station 6 wells or even the putative Station 6 "capture zone."

### D. Even If New York Recognized a Commingled Product Theory, The Court Erred By Placing The Burden Of Apportionment on ExxonMobil.

Because the commingled product theory is a theory of several liability, it "impose[s] a burden of proof on plaintiff to demonstrate the portion of the injury caused by each defendant."

*See County of Suffolk*, 447 F. Supp. 2d at 298 n.34. This requires the City to prove (a) the time of the risk of harm, and (b) ExxonMobil's market share at the time of the risk of harm. The Court previously ruled that the City must prove "the time that the risk of harm – the contamination of groundwater – occurred." *County of Suffolk*, 591 F. Supp. 2d at 275. Moreover, New York law holds that a plaintiff bears the burden of establishing a defendant's actual market share at the time the risk of harm occurred. *Hymowitz*, 539 N.E.2d at 1077-78. Accordingly, it was both prejudicial and erroneous for the Court to shift to ExxonMobil – shortly before trial began – the burden of proving its own apportionment.[5] *City of N.Y. v. Amerada Hess Corp. (In Re MTBE Prods. Liab. Litig.)*, No. 04 Civ. 3417, 2009 U.S. Dist. LEXIS 61382 (S.D.N.Y. July 14, 2009). ExxonMobil respectfully reiterates its objection to that ruling, and incorporates by reference the argument and analysis that were set forth in a letter-brief from Peter Sacripanti to the Court dated June 22, 2009. (*Pardo Decl.*, Ex. E).

### III. STATE-LAW LIABILITY WOULD CONFLICT WITH THE 1990 FEDERAL CLEAN AIR ACT AMENDMENTS.

ExxonMobil has argued that all of the City's claims are preempted because (1) Congress specifically intended for refiners to be able to choose among oxygenates, including MTBE; and (2) eliminating MTBE would interfere with the goals set by Congress in the 1990 Clean Air Act Amendments. ExxonMobil hereby incorporates by reference the argument and analysis set forth in *Defendants' Motion For Summary Judgment Based on Conflict Preemption*, filed July 29, 2005, in *MDL No. 1358*, and all associated memoranda, reply papers, letter-briefing and/or oral argument on that motion. (*Pardo Decl.*, Ex. F). ExxonMobil acknowledges that the Court

---

[5] ExxonMobil also objects to the Court's decision to extend its allocation ruling on liability among defendants (*In Re MTBE*, 2009 U.S. Dist. LEXIS 61382, at *2 (July 14, 2009)) to require that ExxonMobil also establish what portion of the City's alleged *damages* should be allocated to the other contaminants that have impacted the Station 6 wells. (9/18/09 Tr. 5083:24-5084:14).