# EXHIBIT A

Dockets.Justia.com


Jan 23 2006
5:47PM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In Re: Methyl Tertiary Butyl Ether ("MTBE")     Master File No. 1:00 – 1898
Products Liability Litigation     MDL 1358 (SAS): M21-88

---

**This document refers to the following New York cases:**

*City of New York v. Amerada Hess Corp., et al., 04 Civ. 3417*
*United Water of New York v. Amerada Hess Corp., et al., 04 Civ. 2389*
*Suffolk County Water Authority v. Amerada Hess Corp., et al., 04 Civ. 3417*

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS FOR LACK OF JUSTICIABILITY

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

SUMMARY OF ARGUMENT .............................................................................................. 2

ARGUMENT ....................................................................................................................... 4

I. PLAINTIFFS' "LEGALLY PROTECTED INTEREST" IS THE RIGHT
   TO SERVE POTABLE (NOT PURE) DRINKING WATER ............................................ 4

II. PLAINTIFFS' LEGALLY PROTECTED INTEREST IS NOT IMPAIRED
    BY THE "SMALL AMOUNTS" OF MTBE AT ISSUE HERE ...................................... 7

   A. The Presence Of MTBE At Levels Below New York's Applicable
      MCLs Is Not Article III Injury in Fact .............................................................. 7

   B. 250 of 263 Wells Never Have Had MTBE Above the Applicable MCL ............... 9

      1. United Water New York ............................................................................ 10
      2. City of New York ...................................................................................... 10
      3. Suffolk County Water Authority ................................................................ 11
      4. Suffolk County .......................................................................................... 13
      5. Summary ................................................................................................... 14

III. PLAINTIFFS CANNOT CREATE A LEGALLY PROTECTED INTEREST IN
     DRINKING WATER THAT CONTAINS LESS THAN 10 PPB OF MTBE ................ 15

   A. SCWA Cannot Rely On Its Own Internal Business Policies To Create a
      "Legally Protected Interest" That Conflicts With Existing Law ....................... 16

   B. Plaintiffs Cannot Demand A "Legally Protected Interest" That Would Allow
      Juries to Override (and Undermine) Existing Drinking Water Regulations ........ 18

   C. Plaintiffs Cannot Demand a "Legally Protected Interest" For MTBE That
      Contradicts Their Own Practices For MTBE and Other Contaminants ............... 21

CONCLUSION .................................................................................................................. 23

APPENDICES A-C ................................................................................................. *Attached*

# TABLE OF AUTHORITIES

## Cases

Brooks v. E.I. Du Pont de Nemours & Co., 944 F. Supp. 448 (E.D.N.C., 1996),
aff'd, 204 F.3d 1122 (11th Cir. 1999)......................................................................8

Bunger v. U.S. Blind Stitch Mach. Co., 8 F.R.D. 362 (S.D.N.Y. 1948)......................12

Cereghino v. Boeing Co., 873 F. Supp. 398 (D. Oregon 1994)..................................8

Creadore v. Shades of Light and Mario Indus., 2002 U.S. Dist. LEXIS 25351
(S.D.N.Y. 2002)..........................................................................................16

Gleason v. Town of Bolton, 14 Mass. L. Rep. 678 (Mass. Super. Ct. May 23, 2002)..........7

Hartwell Corp. v. Superior Court of Ventura County, 27 Cal. 4th 256 (Cal. 2002)........9, 18

Iberville Parish Waterworks Dist. No. 3 v. Novartis Crop Prot., Inc., 45 F. Supp. 2d 934
(S.D. Ala. 1999).......................................................................................7, 12

Laborers Local 17 v. Philip Morris, 191 F.3d 229 (2d Cir. 1999)..............................13

Lueke v. Union Oil Co., 2000 Ohio App. LEXIS 4845 (Ct. App. Oct. 20, 2000)...............8

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992)...........................................4

Niagara Mohawk Power Corp. v. Ferranti-Packard Transformers, Inc.,
607 N.Y.S.2d 808 (4th Dept. 1994)..................................................................16

Paredes v. County of Fresno, 203 Cal. App. 3d 1 (5th Dist. 1988)............................16

People v. Malmud, 164 N.Y.S.2d 204 (2d Dept. 1957)...........................................6

Rose v. Union Oil Co., 1999 U.S. Dist. LEXIS 967 (N.D. Cal. February 1, 1999)...............8

Sweet v. Syracuse, 129 N.Y. 316 (1891).........................................................4

Tracy Dev. Co. v. Becker, 212 N.Y. 488 (1914)..................................................4

U.S. v. Grimaud, 220 U.S. 506 (1911)............................................................6

Van der Jagt v. O'Neill, 699 F.2d 1166 (D.C. Cir. 1983).......................................4

Vernon Vill. Inc. v. Gottier, 755 F. Supp. 1142 (D. Conn. 1990)...............................8

# INTRODUCTION

The year is 1975. Steven Spielberg's *Jaws* has emptied the nation's beaches. NBC has introduced America to *Saturday Night Live*. Willie Horton, in his last full year with the Detroit Tigers, is leading the team in batting average. And somewhere in Rockland County, New York, a public water provider finds high levels of manganese contamination in its "Piermont 25" well. It takes the well out of service.

It is now 2002. Piermont 25 has remained out of service for 27 years because of manganese and other regulated contaminants, but this year something new is found in the well: methyl tertiary butyl ether ("MTBE"). The detection, 1.8 parts per billion ("ppb"), is a fraction of the 50 ppb that New York law says is acceptable for safe drinking water. Subsequent tests reveal no MTBE, and Piermont 25 remains MTBE-free to this day. The manganese and other contaminants, however, linger on . . . precluding use of the well.

Twelve months later the well's owner – a multi-billion dollar company called United Water – sues the petroleum industry. It demands a treatment system (and money damages) for Piermont 25 and eight other wells where MTBE has been detected in the past – each time at levels far below New York's safe drinking water standards. And although this treatment system will not remove MTBE from Piermont 25 (there is none), it <u>will</u> remove the manganese and other contaminants that have plagued United Water's wells for the past 31 years.

What did the petroleum industry do that impaired United Water's ability to serve water from a well that it idled 31 years ago for manganese? The answer is *nothing* – and it applies to every one of plaintiffs' 263 wells, including the vast majority (250) that <u>never</u> have had MTBE above what New York law says is acceptable for drinking water. Plaintiffs have suffered no injury in fact because of MTBE. Their claims are not justiciable and must be dismissed.

Westphal v. City of New York, 75 A.D. 252 (2d Dept. 1902) ........................................................ 4

In re: Wildwood Litig., 52 F.3d 499 (4th Cir. 1995) ...................................................................... 9

Z.A.O., Inc. v. Yarbrough Drive Ctr Joint Venture, 50 S.W.3d 531 (Tex. App. 2001) ................. 8

## Rules, Regulations and Statutes

Fed. R. Evid. 1006 ......................................................................................................................... 9

H.R. 1540 ("*Drinking Water Standards Preservation Act of 2005*") ...................................... 18-20

N.Y. Comp. Codes R. & Regs. tit. 10 § 5-1.50 *et seq* .................................................................. 6

## SUMMARY OF ARGUMENT

Article III requires plaintiffs to establish that a "legally protected interest" has been impaired by defendants. Even plaintiffs do not contend that their "legally protected interest" is in "pure" or contaminant-free water. In fact, plaintiffs routinely remind their customers that such water does not exist:

> *Drinking water, including bottled water, may reasonably be expected to contain at least small amounts of some contaminants.*

United Water New York, *Annual Water Quality Report 2004*, p. 6 (LR 56.1 ¶1; Exh. A).[1]

Instead, plaintiffs' only legally protected interest is the right to serve drinking water that complies with federal and state law – including the "Maximum Contaminant Levels" ("MCL") promulgated by expert regulatory authorities that define what levels of contaminants can safely be in potable drinking water. New York's MCL for MTBE is 10 ppb (formerly 50 ppb).

Plaintiffs have identified 263 wells at issue in these matters. Of these wells, 250 (95%) never have had MTBE above the applicable MCL. The water in these wells is potable as a matter of law – and plaintiffs serve it to their customers. Because plaintiffs' legally protected interest in serving potable water from these wells has not been impaired by the "small amounts" of MTBE in that water, plaintiffs have not suffered a cognizable "injury in fact" and lack Article III standing to sue defendants for legally using MTBE to oxygenate gasoline.

Plaintiffs' retort is that they have standing to assert claims for any MTBE detection in their water, even if below the applicable MCL. In effect, plaintiffs demand that this Court create a "legally protected interest" in drinking water that contains zero MTBE. Such an interest does not (and cannot) exist as a matter of law, fact and common sense.

---

[1] "Exh.___" refers to the exhibits annexed to the accompanying *Declaration of James A. Pardo*, sworn to January 23, 2006.

- 2 -

**As a matter of law**, courts across the country have rejected the "legally protected interest" plaintiffs demand – dismissing claims that would impose liability for contamination at levels below applicable federal and state MCLs.

**As a matter of fact**, the "legally protected interest" plaintiffs demand is contradicted by their own admission that drinking water "may reasonably be expected to contain at least small amounts of some contaminants." (Exh. A, B, C). Even Congress has proposed legislation to recognize "[i]t is technologically infeasible . . . to provide water with a zero level of contaminants" – and to ban claims that seek to impose liability for contamination at levels below federal and state MCLs. *Drinking Water Standards Preservation Act of 2005*" (Exh. V).

**As a matter of common sense**, the "legally protected interest" plaintiffs demand would "undermine the science-based uniform national system of water quality regulation" (Id.) by allowing individual juries to impose water quality "standards" that are more stringent than federal and state MCLs. Indeed, it is precisely for this reason that The National Association of Water Companies ("NAWC") – which represents water providers – has described the very claims plaintiffs assert here as "dangerous and groundless lawsuits" and called for their ban. NAWC, *"Issue Paper: Support Protecting Our Nation's Drinking Water Standards"* (Exh. AA).

Plaintiffs' only "legally protected interest" is the right to serve potable water that meets federal and state standards – and the only issue here is whether that interest has been impaired by MTBE. Law, facts and common sense say "no." But in the end it this simple, undisputed truth about plaintiffs' conduct that speaks loudest against their claims of impairment: <u>plaintiffs have served water containing "small amounts" of MTBE – and dozens of other regulated contaminants – for years</u>. Plaintiffs' "legally protected interest" has not been impaired by the MTBE alleged here. Their claims must be dismissed.

## ARGUMENT

The "justiciability" doctrine refers to the several Article III requirements (standing, mootness, ripeness, political question, etc.) that limit federal courts to matters presenting an actual "case or controversy." Van der Jagt v. O'Neill, 699 F.2d 1166, 1178-79 (D.C. Cir. 1983). For purposes of this motion, defendants' "justiciability" argument focuses on the "irreducible constitutional minimum" of standing, and specifically on the requirement that plaintiffs have suffered an "injury in fact" – *i.e.*, invasion of a "legally protected interest." Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992).[2]

### I. PLAINTIFFS' "LEGALLY PROTECTED INTEREST" IS THE RIGHT TO SERVE POTABLE (NOT PURE) DRINKING WATER.

Plaintiffs are water providers. They have a usufructuary right to extract water from the ground and serve it to customers (City of New York; Suffolk County Water Authority; United Water New York) or the public (Suffolk County).[3] Plaintiffs do not contend that their water must be contaminant-free before they can serve it. Indeed, plaintiffs repeatedly remind their customers that no drinking water can be contaminant-free:

> Drinking water, including bottled water, may reasonably be expected to contain at least small amounts of some contaminants.

---

[2] The remaining two Constitutional requirements for standing (*i.e.*, that plaintiffs' "injury in fact" be "fairly traceable" to defendants' actions, and would be redressed by a favorable decision (Lujan, 504 U.S. at 560-561)) are not addressed in this motion. Plaintiffs have not permitted the discovery – particularly about "other contaminants" (see infra, n. 4) – required to challenge standing on these additional grounds. Defendants do not concede that plaintiffs have met, or can meet, their burden of proof on these additional standing requirements.

[3] This case is not about groundwater *per se*. Nobody owns the groundwater beneath New York – it is held in trust for all residents by the State of New York. Tracy Dev. Co. v. Becker, 212 N.Y. 488, 500 (1914); Sweet v. Syracuse, 129 N.Y. 316, 335 (1891); Westphal v. City of New York, 75 A.D. 252, 256 (2d Dept. 1902). Plaintiffs have a usufructuary right to appropriate groundwater for reasonable use. Id. These cases are only about the groundwater that plaintiffs appropriate into their wells and serve to their customers.

(LR 56.1 ¶1; Exh. A [UWNY, *Annual Water Quality Report 2004*, p. 6]; Exh. B [SCWA, *2005 Annual Drinking Water Quality Report*, p. 2 (same)]; Exh. C [NYC, *2004 Drinking Water Supply and Quality Report*, p. 1 (same)].

Because no drinking water can be contaminant-free, federal and state regulatory authorities set standards – known as "Maximum Contaminant Levels" ("MCL") – for the amount of contaminants that can be present in drinking water:

> In order to ensure that the tap water we provide to you is safe to drink, the State and the EPA prescribe regulations that limit the amount of certain contaminants in drinking water provided in public water systems. . . . and New York State has among the strictest requirements in the nation.

SCWA, *2005 Annual Drinking Water Quality Report*, p. 2 (emphasis in original) (Exh. B) (see also Exh. A, p. 6; Exh. C, p. 2). As public water providers, plaintiffs are required to provide water that is "safe to drink" because its contaminants do not exceed the MCLs. Arthur Ashendorff, former Director of Drinking Water Quality for the City of New York's Department of Environmental Protection, described plaintiffs' legal obligation as follows:

> We are a water supplier. The way we believe it works is that regulations are proposed and analyzed and made based – by health officials, EPA, State Health Department, and they set standards that they believe are appropriate to protect public health. And it is our job to make sure that the drinking water meets that standard.

*Deposition of Arthur J. Ashendorff*, pp. 292-293 (Exh. E).

Mr. Ashendorff is correct and, indeed, plaintiffs comply with New York's "strictest requirements" by routinely serving drinking water that contains dozens of regulated contaminants, including MTBE. (Exh. A [UWNY: water provided to customers in 2004 contained 23 regulated compounds, including MTBE]; Exh. B [SCWA: 73 regulated compounds,

including MTBE]; Exh. C [NYC: 41 regulated compounds, including MTBE]).[4] These "requirements" are promulgated by the Department of Health ("NYSDOH") and have the force of law.[5] N.Y. COMP. CODES R. & REGS. tit. 10 § 5-1.50 *et seq.* (May 2004) ("Public Water Systems; Maximum Contaminant Levels") (Exh. F). The current MCL for MTBE is 10 ppb.[6] Id. § 5-1.52, Table 3 (May 2004) (LR 56.1 ¶3; Exh. G). Water that meets these requirements – including water with MTBE at less than 50 ppb (now 10 ppb) – is "potable" and may be served by public water providers. Id. § 5-1.1 ("Potable water means a water which meets the requirements established by this Subpart.") (LR 56.1 ¶2; Exh. F).

Which brings us back to Article III. Plaintiffs' "legally protected interest" is the right to serve water that complies with federal and state standards for contaminants – including New York's applicable MCLs for MTBE. For purposes of this motion, therefore, the dispositive question is straightforward: *Have defendants tortiously interfered with plaintiffs' ability to serve potable water to their customers?*

The answer, as a matter of law and undisputed fact, is "no."

---

[4] The information cited here about plaintiffs' "other contaminants" comes from their own public water quality reports. Although several witnesses have testified that wells at issue here were removed from (or never put into) service because of contaminants other than MTBE (See, e.g., *Deposition of J. Dydland*, p. 69 [Exh. N]), plaintiffs' counsel has refused to let those witnesses testify about the other contaminants (Id. at pp. 184-185) and Special Master Warner has ruled that such examinations cannot take place (*PTO-17*) – meaning the witnesses must be re-deposed later. Plaintiffs also have refused to identify any other witnesses with knowledge of their "other contaminants." See, e.g., *SCWA's Responses & Objections to Defendants' First Set of Written Discovery re: Well Contamination*, pp. 5-6 (Nov. 11, 2005) (Exh. D).

[5] Agency regulations adopted pursuant to a grant of power from the State Legislature "have the force and effect of an enactment of the Legislature." People v. Malmud, 164 N.Y.S.2d 204, 209 (2d Dept. 1957); see also U.S. v. Grimaud, 220 U.S. 506, 517-22 (1911).

[6] Prior to December 24, 2003, the applicable MCL for MTBE was 50 ppb. (LR 56.1 ¶4). Plaintiffs' complaints were filed before that date and the vast majority of reported MTBE detections at issue here were subject to this 50 ppb regulatory standard.

## II. PLAINTIFFS' LEGALLY PROTECTED INTEREST IS NOT IMPAIRED BY THE "SMALL AMOUNTS" OF MTBE AT ISSUE HERE.

### A. The Presence Of MTBE At Levels Below New York's Applicable MCLs Is Not Article III Injury in Fact.

It is well-settled that the presence of a contaminant in trace amounts below a State's applicable MCL is not a legally cognizable "injury in fact." In Gleason v. Town of Bolton, for example, plaintiff sought damages under various common law tort and statutory claims for MTBE contamination of his water supply. The court found that plaintiff had suffered no compensable injury because the MTBE levels (32 ppb) in plaintiffs' water were below Massachusetts' MCL of 70 ppb, and granted summary judgment to the defendant water provider. Gleason v. Town of Bolton, 14 Mass. L. Rep. 678 (Mass. Super. Ct. May 23, 2002).

Similarly, in Iberville Parish v. Novartis, several public water providers sued to recover the cost of installing and maintaining water treatment systems that they alleged were necessary to remove a chemical (Atrazine) manufactured by defendant Novartis. Because the Atrazine detections were below the applicable MCL, the court concluded that plaintiffs had not met their burden of proving "injury in fact" and granted defendants' motion for summary judgment:

> Because [plaintiffs] are in compliance with the [Safe Drinking Water Act] drinking water standards, it cannot be said that either has suffered any actual invasion of a legally protected interest.

Iberville Parish Waterworks Dist. No. 3 v. Novartis Crop Prot., Inc., 45 F. Supp. 2d 934, 941-42 (S.D. Ala. 1999) (emphasis added).[7]

---

[7] The court in Iberville Parish noted that the treatment system sought by plaintiffs – granular activated carbon ("GAC") filtration – not only would remove Atrazine but also would have the "ancillary benefit" of removing most of the other organic contaminants in plaintiffs' water supplies. Id. at 938, n. 2. "Such a result calls the very premise of Plaintiffs' suit into question – why, after all, should Novartis bear the cost of removing contaminants for which it has no responsibility whatsoever." Id. This reasoning applies to Piermont 25 and virtually all of the other wells at issue here. Why should defendants be required to fund or provide treatment
(continued...)

Federal and State courts have reached the same conclusion as Gleason and Iberville Parish, finding no compensable "injury in fact" and dismissing claims for water contamination that – like the drinking water plaintiffs serve here – meets the applicable MCLs. See, e.g., Brooks v. E.I. Du Pont de Nemours & Co., 944 F. Supp. 448, 449 (E.D.N.C., 1996) (dismissing common law tort claims on summary judgment; "since the level of contaminants . . . fall below the maximum allowable concentration for all contaminants at issue, the plaintiffs have failed to demonstrate even a *prima facie* showing that they have been damaged[.]"), aff'd, 204 F.3d 1122 (11th Cir. 1999); Rose v. Union Oil Co., 1999 U.S. Dist. LEXIS 967, *9 (N.D. Cal. February 1, 1999) (granting summary judgment to defendant where "the levels of contaminants are far below the relevant MCLs") (citing Price v. United States Navy, 818 F. Supp. 1323, 1325 (S.D. Cal. 1992) (no imminent and substantial endangerment if contamination is below levels considered acceptable by state, and the state has certified that no further remediation is necessary), aff'd 39 F.3d 1011 (9th Cir. 1994)); Cereghino v. Boeing Co., 873 F. Supp. 398, 402 (D. Oregon 1994) (dismissing common law tort claims on summary judgment because "the record before this court contains no evidence controverting plaintiffs' admission that they have not been damaged as a result of TCA contamination. Plaintiffs concede that the amount of TCA in their groundwater is below the statutorily prescribed maximum contaminant level."); Z.A.O., Inc. v. Yarbrough Drive Ctr Joint Venture, 50 S.W.3d 531, 543-44, 551 (Tex. App. 2001) (dismissing common law tort claims because levels of contamination did not exceed state MCLs); Lueke v. Union Oil Co., 2000 Ohio App. LEXIS 4845, *21-22 (Ct. App. Oct. 20, 2000) (affirming dismissal of common law tort claims where petroleum contamination did not exceed state MCLs); see also Vernon

---

systems that will remove other contaminants they did not cause, where the only substance attributed to defendants is (or once was) present at levels New York law says are acceptable?

Vill. Inc. v. Gottier, 755 F. Supp. 1142, 1154-55 (D. Conn. 1990) (granting partial summary judgment against plaintiff who failed to establish that contamination exceeded state MCL and, therefore, failed to rebut record evidence that water was "safe for consumption"); In re: Wildwood Litig., 52 F.3d 499, 503 (4th Cir. 1995) (affirming verdict against plaintiff on private nuisance claim because no evidence of interference with use and enjoyment of property where contaminant levels did not exceed applicable MCL); Hartwell Corp. v. Superior Court of Ventura County, 27 Cal. 4th 256, 276 (Cal. 2002) (holding that damage claims for contamination below state drinking water standards are preempted and therefore barred as a matter of law).

The law is clear. A water provider's only "legally protected interest" is in serving drinking water that meets all federal and state standards, including the applicable State MCL for MTBE. Where MTBE is detected below that MCL its presence does not impair the water provider's "legally protected interest" and, therefore, is not an "injury in fact" for purposes of Article III standing.

### B. 250 of 263 Wells Never Have Had MTBE Above the Applicable MCL.

The undisputed facts establish that the vast majority (95%) of plaintiffs' wells never have been impacted above New York's applicable MCL for MTBE.[8] Because plaintiffs' right to serve water from these wells never has been impaired by MTBE, plaintiffs lack standing to assert any claims against defendants for MTBE.

---

[8] Plaintiffs' highest MTBE detections are taken from their own well sampling data produced in this litigation. For the Court's convenience, and in accordance with Fed. R. Evid. 1006, defendants have reduced this voluminous data into the two charts that are attached as Appendices to this *Memorandum*. The first chart ("*Appendix B*") summarizes the highest MTBE detections for every impacted well (250 total) that has never exceeded the applicable MCL. For those few wells where MTBE was detected above the applicable MCL at some time, the second chart ("*Appendix C*") summarizes the dates on which the first such detection was made. All underlying data for this chart is available to the Court on request.

1. United Water New York

United Water New York ("UWNY") has identified nine (9) wells it contends are at issue in this litigation. *UWNY's Revised November 21, 2005 Chart of MTBE Impacted Wells* (LR 56.1 ¶5; Exh. H). None of these wells ever had MTBE above the applicable MCL, or even above 10 ppb.[9] Because UWNY's legally protected interest in serving potable water from these wells never has been impaired by MTBE, it has suffered no cognizable "injury in fact" and lacks Article III standing to assert any of its claims here.

2. City of New York

City of New York ("the City") has identified thirty-one (31) wells it contends are at issue in this litigation. *NYC's June 16, 2005 Chart of MTBE Impacted Wells* (LR 56.1 ¶7; Exh. I). Twenty-four (24) of these wells never have had MTBE above the applicable MCL.[10] Because the City's interest in serving potable water from these wells has not been impaired by MTBE, it lacks standing to seek relief for the low-level MTBE that appeared in those wells.

As for the City's remaining seven (7) wells, undisputed evidence establishes that six (6) were impacted above the applicable MCL before October 31, 2000 – the accrual date for statute of limitations purposes.[11] (LR 56.1 ¶9; *Appendix C*). Plaintiff's claims for these wells are time-barred by New York's three-year statute of limitation.[12]

Which leaves the City with exactly one (1) well that experienced an initial MTBE impact above the applicable MCL and within the statute of limitations. This single well (#43) perfectly

---

[9] LR 56.1 ¶6; *Appendix B.*

[10] LR 56.1 ¶8; *Appendix B.*

[11] The City initiated this lawsuit by filing a Summons with Notice in New York Supreme Court, Queens County, on October 31, 2003.

[12] Defendants' motion for summary judgment against the City on statute of limitations grounds will be filed on or before February 15, 2006.

illustrates how MTBE has not interfered with plaintiffs' legally protected interest in serving potable drinking water to its customers. More than three (3) years have passed since Well #43 initially was impacted by MTBE in Spring 2002. It has tested "non-detect" for MTBE ever since. (LR 56.1 ¶10; Exh. I, O). So why, according to the City, has it not used Well #43 to provide water to its customers? Because the well was taken out of service in the early 1990s – long before MTBE was detected – due to other contaminants.[13]

In short, the City demands that the petroleum industry pay millions of dollars in damages and equitable relief based on a single well that was out-of-service for other contaminants when MTBE briefly appeared almost four years ago (April 2002); that remains out-of-service because of those other contaminants; and that has remained MTBE-free to this day. Defendants did not impair the City's right to serve potable water from this well – someone else did when they forced Well #43 to be idled because of "other contaminants" more than a decade ago. As a matter of law, fact, and common sense, the City has not suffered a legally cognizable "injury in fact" because of this now non-existent MTBE.

3. Suffolk County Water Authority

Suffolk County Water Authority ("SCWA") has identified 219 wells it contends are at issue in this litigation. *SCWA's June 16, 2005 Chart of MTBE Impacted Wells* (LR 56.1 ¶12; Exh. J). Of those wells, 213 (97%) never have had MTBE above the applicable MCL. (LR 56.1 ¶13; *Appendix B*). Because SCWA's interest in serving potable water from these wells never has been impaired by MTBE, it lacks standing to assert claims for the low-level MTBE in those wells.

---

[13] LR 56.1 ¶11; *Deposition of J. Dydland*, p. 69 (Exh. N); *Deposition of W. Yulinsky*, pp. 99-100, 105-106, 159-160 (Exh. O).