# EXHIBIT C

Dockets.Justia.com


May 29 2008
4:47PM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In Re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

MDL No. 1358
Docket No. M21-88
Master File C.A. No.
1:00-1898 (SAS)

---

**This document relates to:**

*County of Suffolk v. Amerada Hess Corp., et al.*, 04 Civ. 05424

# MEMORANDUM OF LAW IN SUPPORT OF CERTAIN DEFENDANTS' MOTION TO CERTIFY THE COURT'S MAY 13, 2008 OPINION AND ORDER FOR INTERLOCUTORY APPEAL

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................... 1

BACKGROUND: THE THREE LEGAL ISSUES IN QUESTION ............................. 3

ARGUMENT ................................................................................................................. 7

I.    This Case Merits Certification Under the Criteria of § 1292(b) ................... 7

     A.    The 5/13/08 Order Involves "Controlling Issues of Law." ................ 7

     B.    There Is "Substantial Ground for Difference of Opinion" .............. 8

          1.    The Causation Issues Here Are Particularly Difficult
and Are Issues of First Impression That Should Be
Certified to the Second Circuit for Certification to
the New York Court of Appeals ............................................ 9

          2.    *Agent Orange* Is Persuasive Conflicting Authority
on the Availability of a Commingled-Product
Theory of Causation ............................................................. 13

     C.    An Immediate Appeal "Would Materially Advance The
Ultimate Termination of the Litigation" ........................................ 15

II.    None Of The Other Discretionary Considerations Counsels Against
Certification ................................................................................................. 17

CONCLUSION ........................................................................................................... 20

# TABLE OF AUTHORITIES

Page

## CASES

*In re "Agent Orange" Product Liability Litigation*, 597 F. Supp. 740 (E.D.N.Y. 1984) ..................................................................................................................... 13

*In re "Agent Orange" Product Liability Litigation*, 611 F. Supp. 1223 (E.D.N.Y. 1985), *aff'd*, 818 F.2d 187 (2d Cir. 1987) ........................................................... 2, 13

*In re Citigroup Pension Plan ERISA Litigation*, No. 05 Civ. 5296, 2007 U.S. Dist. LEXIS 27004 (S.D.N.Y. Apr. 4, 2007) ............................................................. 9, 15

*County of Suffolk v. Amerada Hess Corp. (In re MTBE Prods. Liab. Litig.)*, 447 F. Supp. 2d 289 (S.D.N.Y. 2006) ............................................................. *passim*

*County of Suffolk v. Amerada Hess Corp. (In re MTBE Prods. Liab. Litig.)*, No. 1:00-1898, 2007 U.S. LEXIS 45543 (S.D.N.Y. June 15, 2007) ...................... 15, 18

*County of Suffolk v. Amerada Hess Corp. (In re MTBE Prods. Liab. Litig.)*, No. 04-Civ.-5424, 2008 U.S. Dist. LEXIS 38792 (S.D.N.Y. May 13, 2008) .......... *passim*

*County of Westchester v. Commissioner of Transport*, 9 F.3d 242 (2d Cir. 1993) ............ 12

*Federated Rural Electric Insurance Exchange v. R.D. Moody & Associates, Inc.*, 391 F. Supp. 2d 1228 (M.D. Ga. 2005), *rev'd on other grounds*, 468 F.3d 1322 (11th Cir. 2006) .......................................................................................... 12

*Healey v. Firestone Tire & Rubber Co.*, 663 N.E.2d 901 (N.Y. 1996) ............................... 9

*Home Insurance Co. v. America Home Products Corp.*, 873 F.2d 520 (2d Cir. 1989) ........................................................................................................................... 12

*Hymowitz v. Eli Lilly & Co.*, 539 N.E.2d 1069 (N.Y. 1989) ........................................ 9, 11

*In re Initial Public Offering Securities Litigation*, No. 21 MC 92, 2008 U.S. Dist. LEXIS 24148 (S.D.N.Y. Mar. 26, 2008) ............................................................. 3, 4

*Johnstown v. Bankers Standard Insurance Co.*, 877 F.2d 1146 (2d Cir. 1989) ................ 12

*Koehler v. Bank of Bermuda*, 101 F.3d 863 (2d Cir. 1996) ................................................ 7

*Mortensen v. Memorial Hospital*, 483 N.Y.S.2d 264 (App. Div. 1984) ............................. 6

*In re MTBE Products Liability Litigation*, 379 F. Supp. 2d 348 (S.D.N.Y. 2005) ...... 3, 4, 5

# TABLE OF AUTHORITIES
(continued)

Page

*Mullins v. City of New York*, No. 04-2979, 2008 U.S. Dist. LEXIS 2206
(S.D.N.Y. Jan. 10, 2008) ..................................................................................... 9

*N. Fork Bank v. Abelson*, 207 B.R. 382 (E.D.N.Y. 1997) ........................................... 8

*National Union Fire Insurance Co. v. Stroh Cos.*, 265 F.3d 97 (2d Cir. 1989) .......... 12

*Transport Workers Union, Local 100 v. N.Y. City Transit Authority*, 358 F. Supp.
2d 347 (S.D.N.Y. 2005) .................................................................................. 8, 15

*Weber v. United States*, 484 F.3d 154 (2d Cir. 2007) .................................................. 7

*In re Worldcom, Inc.*, No. M47, 2003 WL 21498904 (S.D.N.Y. June 30, 2003) ......... 8

## STATUTES

28 U.S.C. § 1292 ........................................................................................................... 7

## RULES AND REGULATIONS

22 N.Y. Codes, Rules, & Regs. § 500.27 ................................................................... 12

## MISCELLANEOUS

Edward J. Schwartzbauer and Sidney Shindell, *Cancer and the Adjudicative
Process: The Interface of Environmental Protection and Toxic Tort Law*, 14
Am. J. L. & Med. 1, 38 (1988) .......................................................................... 13

## INTRODUCTION

Less than four months before the scheduled bellwether trial in this action, the Court has issued an Opinion and Order fundamentally shifting the landscape on the critical and dispositive question of causation. *See County of Suffolk v. Amerada Hess Corp. (In re MTBE Prods. Liab. Litig.)*, No. 04-Civ.-5424, 2008 U.S. Dist. LEXIS 38792 (S.D.N.Y. May 13, 2008) ("5/13/08 Order"). In doing so, the Court has departed from the controlling law of New York—and, indeed, from the Court's prior decisions in this case—in three significant ways: (1) by establishing a presumption that the methyl tertiary butyl ether ("MTBE") detected in every well at issue in this lawsuit was the commingled product of every gasoline refiner and MTBE manufacturer whose product may have reached Suffolk County, New York, anytime between the years 1979 and 2003 —even without evidence that the specific refiners' and manufacturers' products actually reached the *capture zones* of the wells in question at any time; (2) by permitting Plaintiffs[1] to pursue a theory of alternative causation even if other known sources of the alleged contamination would provide Plaintiffs with complete relief; and (3) by establishing a presumption that each such refiner and manufacturer contributed *sufficiently* to the alleged contamination to justify liability, even if the amounts of their respective products that could have ever reached any particular well were very small.

The Court has recognized, on at least two occasions, that the difficult issues of causation in this case have caused "much confusion." *See id.* at *16 (5/13/08 Order at 12); *County of Suffolk v. Amerada Hess Corp. (In re MTBE Prods. Liab. Litig.)*, 447 F. Supp. 2d 289, 295 (S.D.N.Y. 2006). For over three years, the Court and the parties have spent considerable resources briefing these causation issues and pursuing extensive discovery on issues related to

---

[1] "Plaintiffs" refers to Plaintiffs County of Suffolk and Suffolk County Water Authority.

market share, product tracing, and the country's gasoline delivery system. After these Herculean efforts, the Court has now developed a causation theory that not only departs from the Court's prior decisions, but also finds no supportive precedent in New York law (or, to our knowledge, the law of any other jurisdiction). Indeed, "this Court developed" the "commingled product theory . . . to address the particular facts of this case," *County of Suffolk*, 2008 U.S. Dist. LEXIS 38792, at *18 (5/13/08 Order at 13), and, in doing so, implicitly declined to follow Judge Weinstein's rejection of alternative liability under analogous circumstances. *See In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1223, 1263 (E.D.N.Y. 1985), *aff'd*, 818 F.2d 187 (2d Cir. 1987).

The Moving Defendants[2] respectfully submit that it would unnecessarily consume the Court's and the parties' resources to prepare for and conduct a lengthy bellwether trial under these circumstances. With so much doubt lingering over fundamental legal questions that dramatically impact Plaintiffs' ability to present a *prima facie* case, the better course is for the Court to certify its 5/13/08 Order for interlocutory appeal to the Second Circuit under 28 U.S.C. § 1292(b) and to defer the bellwether trial in the interim.[3] All three of the § 1292(b) factors are present in this case, and no prudential considerations weigh against them. An immediate appeal will afford the Second Circuit an opportunity to certify the Court's groundbreaking theory of causation to the only court that can definitively decide whether it should be the law of New York in this (or any other) case: the New York Court of Appeals.

In short, trial in this action should proceed only after everyone knows how New York would actually apply its causation law—including, perhaps, the Court's "commingled product"

---

[2] "Moving Defendants" refers to Exxon Mobil Corporation, Lyondell Chemical Company and Total Petrochemicals USA, Inc.

[3] An immediate clarification of New York law will also facilitate the resolution of the twenty seven (27) other New York cases pending in this multidistrict litigation.

theory—to this case. Trial based on the Court's prediction that the New York Court of Appeals would accept this theory is no substitute for hearing from the Court of Appeals itself. Indeed, proceeding without guidance from New York's highest court may defeat the very purpose of the bellwether trial the Court has ordered.

## BACKGROUND: THE THREE LEGAL ISSUES IN QUESTION

The Court has issued three decisions since 2005 addressing the law of causation in this case. *See generally County of Suffolk*, 2008 U.S. Dist. LEXIS 38792 (5/13/08 Order); *County of Suffolk*, 447 F. Supp. 2d 289; *In re MTBE Prods. Liab. Litig.*, 379 F. Supp. 2d 348 (S.D.N.Y. 2005). The Court appreciated in 2005 that Plaintiffs often could not "identify the wrongdoer based on the fungible nature of the MTBE-containing gasoline," *In re MTBE*, 379 F. Supp. 2d at 371, so the Court recognized traditional market-share liability[4] as well as a "'commingled product theory' of market share liability" to overcome the burdens of traditional causation. *See id.* at 376-78 (explaining that the "commingled product" theory is a "modification of market share liability"); *County of Suffolk*, 447 F. Supp. 2d at 301 (describing "'commingled product theory' of market share liability" as a "a modified version of market share liability"). In those earlier decisions, the Court placed two important limitations on these exceptions to traditional causation—limitations that Defendants understood to be "law of the case"[5] but that are no longer present in the Court's latest decision.

---

[4] The Court has now held that "market share liability . . . may not even be applicable on these facts, because the product alleged to have caused the harm is undeniably a *blended* product manufactured by multiple defendants, rather than a product manufactured by a single defendant that cannot be identified." *County of Suffolk*, 2008 U.S. Dist. LEXIS 38792, at *17 (5/13/08 Order at 13) (emphasis in original). In any event, "in a letter dated October 2, 2007, Plaintiffs themselves represented to the Court that they did not intend to pursue their claims under market share liability." *Id.* at *17.

[5] This Court has recently recognized that "[t]he law of the case doctrine generally forecloses relitigation of issues expressly or impliedly decided earlier in the proceeding." *In re Initial*

*First*, under the Court's original articulation of the commingled-product theory, Plaintiffs were required to prove that each defendant's product "was present in the *area of contamination and was commingled* with the products of other suppliers." *In re MTBE*, 379 F. Supp. 2d at 378 (emphasis added). Plaintiffs had to establish "that defendants' products were *actually present and contributed* to the injury—a plaintiff cannot just name all or substantially all of the participants in a particular market and expect defendants to exculpate themselves." *County of Suffolk*, 447 F. Supp. 2d at 301 (emphasis added). Proof that the gasoline distribution system delivered commingled product to "Suffolk County" was insufficient to establish that *each* defendant's product was actually included in any discharge of MTBE-containing gasoline that might have ultimately resulted in a detection in a particular well. Indeed, as recently as the November 28, 2007 status conference, the Court recognized that "Suffolk County . . . is not proximate enough." (*See, e.g.*, 11/28/07 Tr. at 113:5-17.)

But the 5/13/08 Order reverses course on this fundamental requirement of Plaintiffs' case. Where Plaintiffs were once required to establish that a particular defendant's product was "actually present" in the capture zone of a well before they could hold that defendant liable, *see*

---

*Public Offering Sec. Litig.*, No. 21 MC 92, 2008 U.S. Dist. LEXIS 24148, at *10 (S.D.N.Y. Mar. 26, 2008). "While 'application of the doctrine remains a matter of discretion, not jurisdiction,'" *see id.* (quoting *United States v. Becker*, 502 F.3d 122, 127 (2d Cir. 2007)), the Court "decline[d]" in *Initial Public Offering* "to revisit my earlier rulings . . . except where there has been an intervening change in the controlling law." *Id.* Notably, there has been no intervening change in controlling New York causation law since the Court's prior causation decisions in this case. The Court has instead suggested that its recent decision is based on "a fully developed evidentiary record" regarding "the gasoline distribution system" that was not available before. *See id.* at *17 (5/13/08 Order at 13). But the parties and the Court have understood the general working of this distribution system—and the fact that product shipped through the system is typically "fungible" and "commingled"—since at least early 2005. *See In re MTBE*, 379 F. Supp. 2d at 362 ("the commingling of many suppliers' petroleum products [occurs] during transportation and distribution."). While the evidentiary materials submitted by Plaintiffs in opposition to summary judgment no doubt provide further evidence for the undisputed factual conclusion that gasoline is often a commingled product, the Court had already accepted that conclusion years ago.

*County of Suffolk*, 447 F. Supp. 2d at 301, the Court has now held that Plaintiffs can establish a *prima facie* case that "each defendant's gasoline was present within the well's capture zone" merely because "it is likely that *some* of each defendant's gasoline was spilled *somewhere in Suffolk County* . . . ." *County of Suffolk*, 2008 U.S. Dist. LEXIS 38792, at *22, 40 (5/13/08 Order at 16-17, 32) (plain italics in original, bold italics added). The Court has thus held that a defendant's presumed contribution to a commingled product "somewhere in Suffolk County" gives rise to a causal presumption that that defendant's product contributed to every MTBE detection in *every* allegedly contaminated well in Suffolk County (regardless of the level of detection and the time of the detection).[6]

*Second*, the Court originally held that Plaintiffs could resort to a commingled-product theory only to the extent necessary to obtain relief: "If plaintiffs are able to discover which defendants caused their injuries, they will not be permitted to proceed on a theory of collective liability, but must pursue the actual wrongdoers and dismiss the remaining defendants." *In re MTBE*, 379 F. Supp. 2d at 371; *see also County of Suffolk*, 447 F. Supp. 2d at 302 ("[I]f a traditional tort theory provides plaintiffs with a remedy that makes them whole, it is inappropriate to apply alternative theories of liability that do not require plaintiffs to identify the actual tortfeasor."). Less than a year ago the Court reaffirmed its prior rulings on this point:

> THE COURT: That can't be true because we agreed long ago that if they can identify somebody, they are not entitled to use an alternative theory. . . . [Y]ou don't get to use it if you can identify people because then prove causation the old-fashioned way.
>
> . . .

---

[6] The Court reached this conclusion even though it explicitly rejected "Plaintiffs' argument that a reasonable jury could conclude . . . that it was likely that *all* defendants' product was part of *every* gallon of gasoline that caused MTBE contamination." *County of Suffolk*, 2008 U.S. Dist. LEXIS 38792, at *21-22 (5/13/08 Order at 16) (emphasis in original).

> . . . I ruled. That is called a ruling. I said if you can identify a
> defendant, you don't get this option . . . . [Y]ou can't do that if you
> can identify somebody. So that is a ruling.

(7/26/07 Tr. at 82:18-83:8.)[7] In deference to the Court's rulings, the parties spent three years identifying, where possible, the spills and releases that likely resulted in MTBE detections in the focus wells and then briefing and arguing the summary-judgment motions that flowed from that discovery according to the Court's prior articulation of the law. But that articulation has changed; the Court has "now conclude[d] that plaintiffs *may* pursue product liability or negligence claims against manufacturers, . . . regardless of whether plaintiffs can identify a retailer whose leaking tank spilled gasoline into a well's capture zone." *County of Suffolk*, 2008 U.S. Dist. LEXIS 38792, at *42 (5/13/08 Order at 33-34) (emphasis added).

Beyond these two departures from the prior law of the case, the Court's recent decision also disregards the important requirement of New York law that a plaintiff establish that "the defendant's negligence was a *substantial cause* of the events [that] produced the injury." *Mortensen v. Mem'l Hosp.*, 483 N.Y.S.2d 264, 269 (App. Div. 1984) (emphasis added). Although the Court recognized this general principle, *see County of Suffolk*, 2008 U.S. Dist.

---

[7] Plaintiffs themselves repeatedly represented to the Court and Defendants that if they could identify make-whole stations and spillers, they would *not* resort to alternative-causation theories against the remaining defendants. (*See, e.g.*, 10/2/07 Letter from S. Summy to Court at 2 ("If the jury identifies a release-source, and that release-source(s) is a Defendant, then specific causation has been established, and the jury moves to damages."); 10/31/07 Tr. at 21:13-25 ("THE COURT: Because I thought Mr. Summy's [10/2/07] letter was clear . . . and he seemed to say [that if] all or part of the MTBE in that well [can] be identified [those] wells . . . are not going to be these joint tortfeasor kind of the whole industry type wells. You are going to have a direct causation case. . . . Is that right, Mr. Summy? MR. SUMMY: That's correct, Your Honor."); 11/29/06 Tr. at 53:23-54:3 ("THE COURT: . . . are you satisfied to say, no, in this case we don't need alternative theories, we don't need market share, we feel we can identify source of spill and it happens to be Exxon . . . . MS. GREENWALD: That is exactly right."); 4/27/07 Tr. at 21:10-21:16 ("THE COURT: Maybe plaintiffs will be smart enough to want to get to trial. If they believe they can identify a particular defendant or set of defendants, they might say we are not seeking any relief against the remaining of the group of 51 with respect to that well. . . . MS. GREENWALD: Right; that's the whole purpose of this exercise.").)

LEXIS 38792, at *12-13 (5/13/08 Order at 10), the Court's decision would permit Plaintiffs to hold every manufacturer liable for making any MTBE-containing gasoline that may have made its way to Suffolk County at any time, even though "[i]t is likely that each defendant's contribution to the total volume of MTBE-containing gasoline in any particular well was *very small*," not substantial. *See County of Suffolk*, 447 F. Supp. 2d at 303 (emphasis added).

As explained below, each of these three issues meets the criteria for certifying the 5/13/08 Order for interlocutory appeal under 28 U.S.C. § 1292(b).

## ARGUMENT

### I. THIS CASE MERITS CERTIFICATION UNDER THE CRITERIA OF § 1292(b).

"[A] court may certify an order for interlocutory appeal if each of the following conditions are met: the order '[1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *In re MTBE Prods. Liab. Litig.*, 399 F. Supp. 2d 320, 322 (S.D.N.Y. 2005) (quoting 28 U.S.C. § 1292(b)). This case easily meets all three of the § 1292(b) criteria. Indeed, the Second Circuit recognizes that certification under § 1292(b) is a useful tool to achieve "the prompt resolution of knotty legal problems." *Weber v. United States*, 484 F.3d 154, 159 (2d Cir. 2007). The knotty problem of causation that has repeatedly arisen in this litigation should be resolved now, to avoid further "protracted litigation." *See Koehler v. Bank of Bermuda*, 101 F.3d 863, 865-66 (2d Cir. 1996).

#### A. The 5/13/08 Order Involves "Controlling Issues of Law."

There are three controlling issues of causation law underlying the 5/13/08 Order that justify § 1292(b) certification:

> (1) Whether New York law would permit Plaintiffs to establish causation under a "commingled product" theory without establishing which specific manufacturers' products reached the capture zone of a particular well,

> merely because all manufacturers' products were at some point commingled in gasoline that reached Suffolk County;
>
> (2) Whether New York law would permit Plaintiffs to resort to a "commingled product" theory against all manufacturers whose MTBE or MTBE-containing gasoline reached Suffolk County, even where Plaintiffs can establish traditional causation against one or more solvent defendants capable of making Plaintiffs whole;
>
> (3) Whether New York law would permit Plaintiffs to establish causation under a "commingled product" theory against defendants whose contribution to Plaintiffs' alleged injury was, at most, "very small," rather than "substantial."

All three are "'pure' question[s] of law" that require no detailed "study [of] the record." *See In re Worldcom, Inc.*, No. M47, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003). And all three are controlling because they "would materially affect the outcome of the litigation." *See, e.g., N. Fork Bank v. Abelson*, 207 B.R. 382, 389 (E.D.N.Y. 1997). Indeed, if the Court had resolved any of these issues against Plaintiffs, Plaintiffs would have failed in their summary-judgment proofs with respect to several of the wells at issue in this case, necessitating summary judgment with respect to several of the wells included in the bellwether trial (and several others beyond the bellwether trial that have not yet come before the Court). Finally, the causation issues in this case are similar to the causation issues in every other case pending in this multi-district litigation ("MDL")—many of which are also controlled by New York law—so they are "novel issue[s] of great importance to many other [litigants]." *See Transp. Workers Union, Local 100 v. N.Y. City Transit Auth.*, 358 F. Supp. 2d 347, 353 (S.D.N.Y. 2005). As such, "[t]his case may therefore have considerable precedential value." *See id.*

B.  **There Is "Substantial Ground For Difference Of Opinion."**

This Court has recognized two bases for determining that an issue presents substantial ground for difference of opinion: that "requirement . . . may be met when '(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression

for the Second Circuit.'" *In re Citigroup Pension Plan ERISA Litig.*, No. 05 Civ. 5296, 2007 U.S. Dist. LEXIS 27004, at *9-10 (S.D.N.Y. Apr. 4, 2007). This case meets the test under either of these prongs.

1. **The Causation Issues Here Are Particularly Difficult and Are Issues of First Impression That Should Be Certified to the Second Circuit for Certification to the New York Court of Appeals.**

The Court has recognized the implicit difficulties in resolving causation issues in this case, specifically noting that the issue has engendered "much confusion" over the last three years. *See County of Suffolk*, 2008 U.S. Dist. LEXIS 38792, at *16 (513/08 Order at 12); *County of Suffolk*, 447 F. Supp. 2d at 295. The difficulty is a function of the fact that no New York case recognizes the theory the Court has "developed . . . to address the particular facts of this case." *County of Suffolk*, 2008 U.S. Dist. LEXIS 38792, at *18 (5/13/08 Order at 13). This Court recently granted § 1292(b) certification when, in similar circumstances, it "became the first and only court in the Second Circuit to consider" a particular issue. *See Mullins v. City of New York*, No. 04-2979, 2008 U.S. Dist. LEXIS 2206, at *6 (S.D.N.Y. Jan. 10, 2008). The Court should do so again here.

In New York, "identification of the exact defendant whose product injured the plaintiff is, of course, generally required." *Hymowitz v. Eli Lilly & Co.*, 539 N.E.2d 1069, 1073 (N.Y. 1989). While a plaintiff can meet that identification burden through circumstantial evidence, "[t]he circumstantial evidence of identity of the manufacturer of a defective product causing personal injury must establish that it is *reasonably probable*, not merely possible or evenly balanced, that the defendant was the source of the offending product. . . . Speculative or conjectural evidence of the manufacturer's identity is not enough." *Healey v. Firestone Tire & Rubber Co.*, 663 N.E.2d 901, 903 (N.Y. 1996) (emphasis added) (citations omitted).

Plaintiffs concede that they cannot identify the specific manufacturer for a number of the wells at issue. And the Court explicitly rejected "Plaintiffs' argument that a reasonable jury could conclude . . . that it was likely that *all* defendants' product was part of *every* gallon of gasoline that caused MTBE contamination," holding that Plaintiffs' argument "is not supported by the evidence in the record." *County of Suffolk*, 2008 U.S. Dist. LEXIS 38792, at *21-22 (5/13/08 Order at 16) (emphasis in original). Indeed, even the circumstantial evidence does not allow for the "inference[] . . . that each defendant's gasoline caused the contamination of each well." *Id.* at *35 (5/13/08 Order at 28).

Despite the failure of Plaintiffs' proof, the Court's commingled-product theory of alternative liability still enables Plaintiffs to proceed to trial—and with the very presumption that the Court has recognized is unsupported by the evidence: that "*all defendants contributed to the commingled gasoline* that caused contamination in plaintiffs' wells" unless the manufacturers meet *their* "burden" of exculpation. *Id.* at *18 (5/13/08 Order at 14) (emphasis added). The Court developed this theory by predicting that the New York Court of Appeals would do so in these circumstances. But New York case law does not suggest that its highest court would—or that a federal court predicting New York law should—stray so far from established precedent.

In extrapolating New York law, this Court observed that "New York courts have *often* 'modif[ied] the rules of *personal injury liability*'" to address the problems of proof "'caused by contemporary products and marketing techniques.'" *Id.* at *37 (5/13/08 Order at 29) (quoting *Hymowitz*, 539 N.E.2d at 1075) (emphasis added). But New York courts have only rarely departed from traditional causation theories; indeed, this Court previously noted that courts did so only "from time to time." *See County of Suffolk*, 447 F. Supp. 2d at 301. Furthermore, as the Court's quotation from *Hymowitz* makes clear, the departure from traditional causation

theories—when it has occurred—has been limited to cases involving "personal injury liability," *see Hymowitz*, 539 N.E.2d at 1075; there is no precedent in New York for the development of new causation rules designed to adjust causation burdens in cases involving allegations of (minimal) property damage.[8]

There is therefore nothing in New York law to suggest that its courts would recognize the commingled-products theory that the Court has developed for this case, much less to suggest that New York courts would: (1) shift the burden to manufacturers to exculpate themselves without a threshold showing by Plaintiffs that a particular manufacturer's products were in a well's capture zone; (2) permit this alternative theory of liability to go forward even if Plaintiffs could recover fully from an identifiable party; or (3) permit Plaintiffs to recover against a manufacturer whose product was involved in a particular instance of contamination only in "very small" amounts. *See County of Suffolk*, 447 F. Supp. 2d at 303. By definition, then, the issues are of first impression, and the Court's and the parties' struggles over the past three years to grapple with them and to understand their application establish that the issues are inherently difficult.

These difficult questions of first impression are particularly appropriate for the New York Court of Appeals, rather than this Court or even the Second Circuit, to resolve in the first instance. "[A] federal court sitting in diversity [should] construe and apply state law as we

---

[8] Personal injuries are not the only distinguishing feature of *Hymowitz* and other alternative-liability cases. The gravity of the injuries in *Hymowitz* was characterized by that court as "devastation" inflicted on individuals suffering from "insidious" DES-related illnesses. *See* 539 N.E.2d at 1075. Here, MTBE is but one of numerous contaminants that find their way into Plaintiffs' water wells, and Plaintiffs were in the business of monitoring water quality and remediating contaminants long before MTBE was ever detected in their wells. Moreover, the decision to create an alternative causation theory for DES victims occurred only after the New York legislature had revived time-barred actions to ensure that DES victims could pursue compensation, a history the New York Court of Appeals found "particularly" compelling. *See id.* There is no such legislative policy to provide relief to plaintiffs alleging MTBE-related injuries.

believe the state's highest court would, ..., not to adopt innovative theories that may distort established state law." *Johnstown v. Bankers Standard Ins. Co.*, 877 F.2d 1146, 1153 (2d Cir. 1989) (citation omitted); *see also Nat'l Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 106 (2d Cir. 2001) ("We also share the district court's reluctance to announce such a rule in the absence of clear guidance from state courts."). Thus, a district court confronted with such a novel issue of state law should certify an appeal under § 1292(b) so that the state-law issue can "in turn be certified" to the highest court of the state in question, which "respects [the state's] strong interest in deciding those questions 'rather than having the only precedent on point be that of the federal court, which may be mistaken.'" *See County of Westchester v. Comm'r of Transp.*, 9 F.3d 242, 245 (2d Cir. 1993) (quoting *Home Ins. Co. v. Am. Home Prods. Corp.*, 873 F.2d 520, 522 (2d Cir. 1989)). "New York has a strong interest in deciding" when and how to modify and expand its own laws. *See Home Ins.*, 873 F.2d at 522. But the New York Court of Appeals does not accept certification requests from federal district courts, so the only way to place this issue of state law before the appropriate state court is first to certify the question for interlocutory appeal. *See* 22 N.Y. Codes, Rules, & Regs. § 500.27(a) (New York Court of Appeals accepts certified questions only from "the Supreme Court of the United States, any United States Court of Appeals, or a court of last resort of any other state"); *see also Federated Rural Elec. Ins. Exch. v. R.D. Moody & Assocs., Inc.*, 391 F. Supp. 2d 1228, 1233 & n.7 (M.D. Ga. 2005) (noting that the court "must certify the question to the Eleventh Circuit Court of Appeals because Florida law does not provide for certification of questions directly to the state supreme court from federal district courts"), *rev'd on other grounds*, 468 F.3d 1322 (11th Cir. 2006).