# EXHIBIT C – Part 3

Dockets.Justia.com



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In Re: Methyl Tertiary Butyl Ether ("MTBE")  　　　MDL No. 1358
Products Liability Litigation　　　　　　　　　　　　Docket No. M21-88
　　　　　　　　　　　　　　　　　　　　　　　　　Master File C.A. No.
　　　　　　　　　　　　　　　　　　　　　　　　　1:00-1898 (SAS)

---

**This document relates to:**

*County of Suffolk v. Amerada Hess Corp., et al.*, 04 Civ. 05424

### REPLY OF EXXON MOBIL CORPORATION TO PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO CERTAIN DEFENDANTS' MOTION TO CERTIFY THE COURT'S MAY 13, 2008 OPINION AND ORDER FOR INTERLOCUTORY APPEAL

# INTRODUCTION

Plaintiffs are unable to find support for any of the three propositions of law as to which Exxon Mobil Corporation ("ExxonMobil")[1] seeks certification, under 28 U.S.C. § 1292(b), with respect to the Court's decision in *County of Suffolk v. Amerada Hess Corp. (In re MTBE Prods. Liab. Litig.)*, No. 04-Civ.-5424, 2008 U.S. Dist. LEXIS 38792 (S.D.N.Y. May 13, 2008) ("5/13/08 Order"). Plaintiffs are also unable to refute that the Court's own articulation of the "commingled product" theory of causation has shifted dramatically less than four months before trial. Plaintiffs are thus constrained to cast irrelevant aspersions against ExxonMobil in the apparent hope of distracting the Court from the real issues that guide the certification decision.

But those distractions do nothing to alter the basic facts that counsel heavily in favor of certification. The commingled-product theory markedly departed from fundamental principles of New York tort law even before the theory was recently modified so drastically. And that significant leap across traditional tort principles is the *only basis* for much of the liability Plaintiffs seek to establish at trial in a case that the Court intends to serve as a bellwether for the resolution of the remaining cases in this MDL. If MTBE liability requires the inauguration of a new causation theory under New York law, that decision should come from the New York Court of Appeals—and it should come before this Court, the parties, and a jury expend months and significant financial resources engaging in a potentially "fruitless" trial (*see Koehler v. Bank of Bermuda, Ltd.*, 101 F.3d 863, 866 (2d Cir. 1996)) that will provide no benefit whatsoever to the other pending cases if it occurs under a heavy cloud of legal uncertainty. Furthermore, the New York Court of Appeals has a strong interest in developing its own state law, and this Court

---

[1] Although they originally joined in the instant motion, Defendants Lyondell Chemical Company and TOTAL Petrochemicals USA, Inc., no longer seek certification. Accordingly, this reply is filed only on behalf of ExxonMobil.

should defer to it rather than develop new tort rules on its own. *See County of Westchester v. Comm'r of Transp.*, 9 F.3d 242, 245 (2d Cir. 1993); *Home Ins. Co. v. Am. Home Prods. Corp.*, 873 F.2d 520, 522 (2d Cir. 1989).

ExxonMobil has shown that the 5/13/08 Order (1) involves a controlling question of law (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal from the Order may materially advance the ultimate termination of the litigation. An interlocutory appeal will be particularly useful here because a final resolution of the causation issue "will permit the parties to direct their attention and energy to the remaining unresolved issues in the case, and will provide a firm basis for further proceedings." *In re Beker Indus. Corp.*, 89 B.R. 336, 341 (S.D.N.Y. July 18, 1998). The Court should therefore grant ExxonMobil's request for § 1292(b) certification.

## ARGUMENT

### I. SECTION 1292(b) CERTIFICATION IS PROPER IN THIS CASE.

#### A. The 5/13/08 Order Involves "Controlling Issues Of Law."

ExxonMobil has shown that this case is appropriate for certification because the appeal would involve "controlling issues of law." *See* 28 U.S.C. § 1292(b).

First, the issues ExxonMobil seeks to certify are "'pure' question[s] of law" that require no detailed "study [of] the record." *See In re Worldcom, Inc.*, No. M47, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003). In a misleading effort to infuse factual complexity into the mix, Plaintiffs urge that the Second Circuit would need to burrow through three years of discovery to understand the "comprehensive, voluminous factual record." (Pls.' Opp. at 3.) But the factual foundation for the Court's commingled-product theory is undisputed and requires no study of the "factual record." The Court understood that factual predicate more than three years ago—*before the extensive discovery*—when it first developed the commingled-product theory:

> The process of manufacturing and distributing petroleum products involves complex arrangements whereby defendants trade, barter or otherwise exchange product for delivery throughout parts of the country. *MTBE-containing gasoline from various refiners is commingled during its transmission* via pipeline from refineries to distribution centers

*In re MTBE Prods. Liab. Litig.*, 379 F. Supp. 2d 348, 365 (S.D.N.Y. 2005) (emphasis added). Even Plaintiffs acknowledge (when it suits their purposes) that the Court's legal holdings are "based on uncontested facts." (*See* Pls.' Opp. at 6.) Thus, the Second Circuit would not have to grapple with factual disputes; the three questions ExxonMobil has identified are purely legal.[2]

ExxonMobil has also established that a resolution of the causation issues "'would materially affect the outcome of the litigation.'" *See, e.g., Enron Corp. v. J.P. Morgan Sec., Inc. (In re Enron Corp.)*, No. 01-16034, 2008 U.S. Dist. LEXIS 7340, at *10 (S.D.N.Y. Jan. 25, 2008) (citation omitted). Astonishingly, Plaintiffs suggest that resolution of the causation issue will not "materially affect the litigation's outcome." (Pls.' Opp. at 3.) If that were true, one would be left to wonder why Plaintiffs spent "over three years of discovery to garner the evidentiary record" that they claim supports the commingled-product theory. (*See id.*) And Plaintiffs are simply incorrect to suggest that clarification by the Second Circuit and the New York Court of Appeals would eliminate only three of the 18 focus wells (*cf.* Pls.' Opp. at 3-4);

---

[2] Notably, in focusing on whether the Court's "commingled product" theory comports with New York law, Plaintiffs fail even to acknowledge the other two important legal questions presented by ExxonMobil's request for certification:

(2) Whether New York law would permit Plaintiffs to resort to a "commingled product" theory against all manufacturers whose MTBE or MTBE-containing gasoline reached Suffolk County, even where Plaintiffs can establish traditional causation against one or more solvent defendants capable of making Plaintiffs whole; and

(3) Whether New York law would permit Plaintiffs to establish causation under a "commingled product" theory against defendants whose contribution to Plaintiffs' alleged injury was, at most, "very small," rather than "substantial."

(*See* Motion at 7-8.)

the only wells that would remain for trial in the absence of the commingled-product theory are those for which Plaintiffs can demonstrate liability under traditional causation theories against ExxonMobil, at most seven.[3] An immediate appeal could, in fact, resolve liability for the vast majority of the allegedly injured wells at issue in this action alone, beyond the bellwether trial.

And, importantly, the Court's causation rulings are not limited just to this action; they presumably apply directly to all New York cases within the MDL, and the plaintiffs in the non-New York cases will certainly rely on the Court's causation rulings in their efforts to extend the law in other jurisdictions. These considerations weigh heavily in favor of certification before numerous cases within the MDL are derailed by what may be an erroneous extension of New York law. *See In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 1997 U.S. Dist. LEXIS 11937, at *9 (S.D.N.Y. Aug. 12, 1997) ("Because the district court's efficiency concerns are great in large, complex cases, certification may be more freely granted in so-called 'big cases.'").

The Court has written extensively—now three times—and held numerous oral arguments on the critical and dispositive questions that affect Plaintiffs' ability to establish causation. (*See* Motion at 3-7.) As Plaintiffs would have it, the Court devoted these exhaustive efforts on a legal issue that is not even controlling. But Plaintiffs simply cannot prevail on the vast majority of their wells in the absence of an alternative-causation theory. They know as much, which is why they spent more than three years trying to convince the Court to adopt some form of alternative

---

[3] Plaintiffs provide no explanation for their statement that a reversal on causation would eliminate only three wells from the case, and they are wrong. Requiring Plaintiffs to prove traditional causation under New York law would eliminate at least three of the nine "no-source" wells, for which Plaintiffs already have admitted they cannot establish causation against ExxonMobil. It also would eliminate at least eight other "source" wells for which Plaintiffs have identified an alleged "source" other than ExxonMobil. In short, reversal would eliminate at least 11 of the 18 wells at issue in the bellwether trial.

4

liability theory in these cases. The three legal issues ExxonMobil identified are, indisputably, controlling questions of law.

B. **There Is "Substantial Ground for Difference Of Opinion."**

ExxonMobil has also shown that there is a "substantial ground for difference of opinion," *see* 28 U.S.C. § 1292(b), as to the three legal issues reflected in the 5/13/08 Order. Indeed, the Court has twice written that these causation issues have engendered "much confusion." *See County of Suffolk*, 2008 U.S. Dist. LEXIS 38792, at *16 (5/13/08 Order at 12); *County of Suffolk v. Amerada Hess Corp. (In re MTBE Prods. Liab. Litig.)*, 447 F. Supp. 2d 289, 295 (S.D.N.Y. 2006). And, as ExxonMobil has shown, the Court's own articulation of the commingled-product theory has evolved dramatically over the years, and those major shifts in the applicable law certainly reflect that there is room for disagreement—not just from one court to another, but even within this Court over time. (*See* Motion at 3-7.)

Plaintiffs now want the Court to find that these novel causation rulings are based upon "well-accepted principles of New York tort law . . . ." (*See* Pls.' Opp. at 7.) But no application of "well-accepted principles of New York tort law" would lend itself to a commingled-products theory of causation. The well-accepted principle of New York tort law is that "identification of the exact defendant whose product injured the plaintiff is, of course, generally required." *Hymowitz v. Eli Lilly & Co.*, 539 N.E.2d 1069, 1073 (N.Y. 1989). In only rare cases, such as *Hymowitz* itself, have New York courts allowed a departure from traditional causation. For the most part, New York courts acknowledge that alternative causation theories are "a seldom used exception to the general rule in products liability actions that a plaintiff 'must establish by competent proof . . . that it was the defendant who manufactured and placed in the stream of commerce the injury-causing defective product.'" *Brenner v. Am. Cyanamid Co.*, 699 N.Y.S.2d 848, 852 (App. Div. 1999) (quoting *Healey v. Firestone Tire & Rubber Co.*, 663 N.E.2d 901,

5

903 (N.Y. 1996)); *see also Hamilton v. Beretta U.S.A. Corp.*, 750 N.E.2d 1055, 1066-68 (N.Y. 2001) (declining to apply market-share liability). "Outside the DES context, market share liability has been ***sparingly adopted***." *In re New York State Silicone Breast Implant Litig.*, 631 N.Y.S.2d 491, 493 (Sup. Ct. 1995) (emphasis added).

Indeed, in *Hamilton* the Second Circuit certified the market-share question to the New York Court of Appeals precisely because it was "unclear whether New York's highest court would choose to apportion liability on a market share basis among those handgun manufacturers found negligent." *Hamilton v. Beretta U.S.A. Corp.*, 222 F.3d 36, 46 (2d Cir. 2000). Of course, the New York Court of Appeals then rejected market-share liability in that case. *See Hamilton*, 750 N.E.2d at 1066-68. And when the facts of another case fell "somewhere in between ... *Hymowitz* and ... *Hamilton*," the Second Circuit likewise acknowledged that it was "unclear whether the New York Court of Appeals would permit market share liability...." *Blue Cross & Blue Shield of N. J., Inc. v. Philip Morris USA Inc.*, 344 F.3d 211, 225 n.10 (2d Cir. 2003) (certifying different question of New York law to New York Court of Appeals). Given the lack of clarity and the demonstrated reluctance to extend market-share theories, any attempt to apply it in a commingled-product context should come from a New York state court, not a federal court predicting what a New York court might do. The need for a "prompt resolution of [a] knotty legal problem[]" is exactly the type of scenario where the Second Circuit has recognized the usefulness of § 1292(b) certification. *Weber v. United States*, 484 F.3d 154, 159 (2d Cir. 2007).

Remarkably, Plaintiffs continue to rely on *Agent Orange*—a case that goes against them—as a spring-board for the unprecedented commingled-product theory. As the Court has acknowledged (*see* Motion at 13-14), *Agent Orange* expressly declined to apply such a theory and dismissed claims in part because of the plaintiffs' inability to identify the alleged tortfeasor.

6

*In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1223, 1263 (E.D.N.Y. 1985). Plaintiffs' only way around *Agent Orange* is to suggest that the plaintiffs' inability in that case to identify the tortfeasors that caused their injury was not the only basis for Judge Weinstein's holding. (*See* Pls.' Opp. at 5 (Judge Weinstein "did not rule against those individuals, as defendants argue, *solely* because they could not present evidence identifying the manufacturer of the Agent Orange that harmed them") (emphasis in original).) But when Judge Weinstein held that there was "no possible theory of law" permitting recovery for the plaintiffs who had opted out of class-wide settlement, *see* 611 F. Supp. at 1263, he "said what he meant and meant what he said," as this Court recognized. (*See* 11/28/07 Tr. at 104:5-9.)

Finally, Plaintiffs urge that the Court's own evolving understanding of its commingled-product theory is fact-driven—that "the evidentiary record had not been fully developed" when the Court issued its prior rulings. (*See* Pls.' Opp. at 6.) But as explained above, the fact of commingling is not new; it was the very predicate for the Court's original articulation of the commingled-product theory over three years ago. *See In re MTBE*, 379 F. Supp. 2d at 365. Plaintiffs have not explained how the "far more complete factual record" has changed their or the Court's understanding of the ultimate facts or explains *why* the "theories have evolved." (*See* Pls.' Opp. at 6.) ExxonMobil suggests that the Court's articulation of the law has not evolved because of additional *facts*, but instead because of the Court's further consideration of what the *law* should be. That, in turn, is for the New York Court of Appeals, not a federal court, to decide in the first instance. *See County of Westchester*, 9 F.3d at 245; *Home Ins.*, 873 F.3d at 522.

C. An Immediate Appeal "Would Materially Advance the Ultimate Termination of the Litigation."

ExxonMobil has also established that an immediate appeal "would materially advance the ultimate termination of the litigation," *see* 28 U.S.C. § 1292(b), because it "'promises . . . to

shorten the time required for trial.'" *See Transport Workers Union Local 100 v. N.Y. City Transit Auth.*, 358 F. Supp. 2d 347, 350 (S.D.N.Y. 2005) (quoting *In re Oxford Health Plans, Inc.*, 182 F.R.D. 51, 53 (S.D.N.Y. 1998)). To get around this argument, Plaintiffs erroneously equate the advancement of "the ultimate termination of the litigation" with a ruling that promotes the earliest possible trial date. (*See* Pls.' Opp. at 8.) But few interlocutory appeals shorten the time *before* trial, so that cannot be the litmus test under § 1292(b). Instead, Plaintiffs' own cases point out that the goal of certification under § 1292(b) is to shorten or avoid the trial itself—"saving trial court time by avoiding fruitless litigation." *See, e.g., Koehler*, 101 F.3d at 866.

In this bellwether trial, Plaintiffs have failed to identify ExxonMobil as the source of contamination for at least 11 of the 18 focus wells. Hence, if the New York Court of Appeals disagrees with this Court's departure from traditional causation principles—which is a very real possibility given the many differences between this case and *Hymowitz* (*see* Motion at 11 n.8)—then most of Plaintiffs' claims in this bellwether trial, and numerous other claims in other actions in this MDL, would be eliminated. Surely such a result would materially advance the ultimate termination of this and other actions in the MDL, thus satisfying the third prong of § 1292(b).

## II. DEFENDANTS ACCURATELY STATED THE STANDARD FOR § 1292(b) CERTIFICATION.

Plaintiffs argue, confusingly, that ExxonMobil misconstrues the standard for certification under § 1292(b), but they fail to explain how; both sides identify the same three prerequisites. And while Plaintiffs correctly note that certification is reserved for proper cases, *see, e.g., In re Lloyd's*, 1997 U.S. Dist. LEXIS 11937, at \*\* 7-8, even Plaintiffs' cases confirm that certification is appropriate when the three prerequisites are met. *See, e.g., id.* at \*\* 10-18. Indeed, in *Lloyd's* the court noted that the "institutional efficiency of the federal court system is among the chief concerns underlying § 1292(b)" but that "the district court's efficiency concerns are greatest in

8

large, complex cases, [so] certification may be more *freely granted* in so-called 'big' cases." *Id.* at \*9 (citing *Bruce v. Martin*, 712 F. Supp. 442, 445 (S.D.N.Y. 1989)) (emphasis added).

Plaintiffs also take issue with ExxonMobil's reliance on Second Circuit decisions that certify questions to the New York Court of Appeals, because those appeals arose from final judgments rather than § 1292(b) certifications. (*See* Pls.' Opp. at 9 & n.3.) But that distinction is immaterial. Indeed, the recognition that New York has a strong interest in clarifying its own laws is a reason to invoke § 1292(b) to expedite the appellate process in order to facilitate certification from the Second Circuit to the New York Court of Appeals *before* protracted litigation in the federal courts. Indeed, interlocutory certification in *Hamilton* would have resulted in clarification that in that case would have spared the district court of conducting a "four-week jury trial." *See Hamilton*, 222 F.3d at 39. When faced with a similar rule that allowed only an appellate court to certify a question to a state court,[4] another district court found that it "must certify the question" to the court of appeals because state law did not "provide for certification of questions directly to the state supreme court from federal district courts." *Federated Rural Elec. Ins. Exch. v. R.D. Moody & Assocs., Inc.*, 391 F. Supp. 2d 1228, 1233 & n.7 (M.D. Ga. 2005), *rev'd on other grounds*, 468 F.3d 1322 (11th Cir. 2006).

Further, the Second Circuit has the discretion to accept or refuse an interlocutory appeal if this Court grants certification; ExxonMobil must still convince the Second Circuit to accept jurisdiction. That process is a quick one—ExxonMobil must file their petition to the Second Circuit "within ten days" of this Court's certification order. *See* 28 U.S.C. § 1292(b). Thus, if there is any merit to Plaintiffs' contention that ExxonMobil misconstrued the standard for an interlocutory appeal, we suggest that this Court allow the Second Circuit to resolve that question.

---

[4] Only the Second Circuit can certify the question to the New York Court of Appeals. *See* 22 N.Y. Codes, Rules, & Regs. § 500.27(a).

9

## III. STATEMENTS BY MARATHON DURING THE REMOVAL PROCESS ARE IMMATERIAL TO THE ANALYSIS.

Plaintiffs argue that ExxonMobil has somehow waived their right to certify state law questions to the New York Court Appeals because defendants previously removed this action from state court. Plaintiffs' position lacks logical and legal support. First, it was Third-Party Defendant Marathon Oil Company—not ExxonMobil—that removed this action from state court. Second, none of the defendants could have anticipated, at the time of removal, that this Court would depart from traditional causation principles. Indeed, ExxonMobil continues to believe that New York law contradicts the commingled-product theory and that application of New York law *does* require dismissal of most of Plaintiffs' claims.

Further, no case law supports Plaintiffs' waiver argument, which is not surprising since the purpose of certification centers not on a debate about past litigation positions but instead on the federal courts' deference to New York's unique interest in deciding how and when to expand its own laws. *See County of Westchester*, 9 F.3d at 245; *Home Ins. Co.*, 873 F.2d at 522.

## CONCLUSION

For the foregoing reasons, the Court should grant ExxonMobil's motion, certify its 5/13/08 Order for interlocutory appeal, and stay trial of this action while that appeal is pending.

Dated: June 11, 2008

Respectfully submitted,

Peter John Sacripanti (PS 8968)
James A. Pardo (JP 9018)
Stephen J. Riccardulli (SR 7784)
Lauren Handel (LH 0755)
McDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, New York 10173
Tel: 212-547-5400

*Counsel for Defendant Exxon Mobil Corporation*

10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In Re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

This document pertains to:

*County of Suffolk, et al. v. Amerada Hess Corp., et al.,*
Case No. 04-CIV-5424

Master File No. 1:00-1898
MDL 1358 (SAS)
M21-88

## CERTIFICATE OF SERVICE

Lauren Handel, pursuant to 28 U.S.C. 1746, hereby declares under penalty of perjury, that on the 11th Day of June, 2008, I caused to be served by electronic means upon Robin Greenwald of Weitz and Luxenberg, 180 Maiden Lane, New York, NY 10038 and all parties via Lexis Nexis File and Serve, a true and correct copy of the following document:

> *Reply of Exxon Mobil Corporation to Plaintiffs' Memorandum of Law in Opposition to Certain Defendants' Motion to Certify the Court's may 13, 2008 Opinion and Order for Interlocutory Appeal.*

*/s/ Lauren Handel*

Lauren Handel