# EXHIBIT D

Dockets.Justia.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

In re: Methyl Tertiary Butyl Ether ("MTBE")　　　　Master File No. 1:00-1898
Products Liability Litigation　　　　　　　　　　　　MDL 1358 (SAS)
　　　　　　　　　　　　　　　　　　　　　　　　　M21-88

------------------------------------------------------x

**This document relates to:**

*City of New York v. Amerada Hess Corp.,
et al.*, 04 Civ 3417

------------------------------------------------------x



Apr 27 2009
5:38PM

## ORAL ARGUMENT REQUESTED

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE REGARDING APPLICATION OF THE COMMINGLED PRODUCT THEORY, CONSIDERATION OF FAULT OF NONPARTIES BY JURY, AND PROOF OF DATE OF HARM

**This brief is filed on behalf of Defendants listed on the attached Appendix A.**

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................1

II. BACKGROUND OF CAUSATION RULINGS IN MDL 1358............................2

III. THE CITY'S BACK-AND-FORTH CAUSATION THEORIES............................4

IV. SOURCES OF CONTAMINATION ......................................................................5

V. ARGUMENT..............................................................................................................6

    A. The Court Should Not Permit the City to Pursue Alternative Liability Theories Unless the City First Establishes That It Has No Other Remedy. ..........................6

    B. In the Alternative, the Court Should Clarify Two Important Aspects of a Trial Involving Any Sort of Market Share. ................................................................10

        1. The Court Should Instruct the Jury to Apportion Liability to Spillers Who Caused the Harm to Preserve Defendants' Right to Avoid Joint Liability Under a Market-Based Allocation. ................................................10

        2. The City Must Prove the Dates of Each Release. .........................................14

VI. CONCLUSION........................................................................................................18

# TABLE OF AUTHORITIES
## FEDERAL CASES

*In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831 (2d. Cir. 1992) ..................................13

*In re DES Cases*, 789 F. Supp. 552 (E.D.N.Y. 1992)..................................................................7, 16

*In re E. & S. Districts Asbestos Litigation*, 772 F. Supp. 1380 (E.D.N.Y. 1991)....................12, 13

*E. & S. Districts Asbestos Litigation*, 772 F. Supp. 1380 (E.D.N.Y. 1991) ................................13

*Gray v. Cleaning Sys. & Suppliers*, 834 F. Supp. 123 (S.D.N.Y. 1993) ......................................12

*Hall v. E. I. Du Pont de Nemours & Co.*, 345 F. Supp. 353 (E.D.N.Y. 1972) ...............................7

*Hamilton v. Accu-Tek*, 62 F. Supp. 2d 802 (E.D.N.Y. 1999) .........................................................7

*Johnston v. Bankers Standard Insurance Co.*, 877 F.2d 1146 (2d Cir. 1989)..............................10

*In re MTBE Prod. Liability Litigation*, 517 F. Supp. 2d 662 (S.D.N.Y. 2007) ........................6, 13

*In re MTBE Products Liability Litigation*, 379 F. Supp. 2d 348 (S.D.N.Y. 2005)..................2, 3, 6,
    10, 11, 13...................................................................................................................................

*In re MTBE Products Liability Litigation*, 447 F. Supp. 2d 289 (S.D.N.Y. 2006)......2, 3, 6, 11, 13

*In re MTBE Products Liability Litigation*, 591 F. Supp. 2d 249 (S.D.N.Y. 2008).......1, 2, 3, 4, 7, 8
    10, 14, 15, 16 ............................................................................................................................

## STATE CASES

*Brenner v. Am.. Cyanamid Co.*, 263 A.D.2d 165, 699 N.Y.S.2d 848, 853 (N.Y. App. Div.
    4th Dep't 1999) ....................................................................................................................8, 9

*Conley v. Boyle Drug Co.*, 570 So.2d 275 (Fla. 1990) ..................................................................6

*In re DES Market Share Litigation*, 79 N.Y.2d 299, 591 N.E.2d 226 (1992) .............................16

*Gannon Personnel Agency v. City of New York*, 394 N.Y.S.2d 5, 57 A.D.2d 538 (N.Y.
    App. Div. 1st Dept. 1977).........................................................................................................12

*Garret v. Holiday Inns, Inc.*, 58 N.Y.2d 253, 447 N.E.2d 717 (1983) .........................................12

*Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 241, 727 N.Y.S.2d 7, 19 (2001) .....................8

*Hymowitz v. Eli Lilly & Co.*, 73 N.Y.2d 487, 539 N.E.2d 1069 (1989) ..........................6, 8, 14, 16

*Rutherford v. Owens Illinois, Inc.*, 941 P.2d 1203 (Cal. 1997) ........................................................ 13

*Shackil v. Lederle Laboratories*, 561 A.2d 511 (N.J. 1989) ............................................................ 6

*Sindell v. Abbott Laboratories*, 607 P.2d 924 (Cal. 1980) ............................................................. 6

*Zakshevsky v. City of New York*, 562 N.Y.S.2d 371, 149 Misc. 2d 52 (N. Y. Sup. Ct. 1990) ........................................................................................................................ 12

# I. INTRODUCTION

The law in New York and elsewhere is clear that the market share theory of liability alleged by the City of New York is available to a plaintiff only where it cannot prove who caused its injury. The result is no different should the Court allow the City to switch horses and rely instead on what this Court has termed "the commingled product theory of market share liability." This Court should not permit the City to resort to any form of market share liability without first establishing that it has no way of recovering against the spillers or leakers who actually caused its alleged damages.

When this Court first articulated the commingled product theory of causation, it recognized that a plaintiff could resort to the theory only if it could not prove actual causation. But the Court later issued an opinion in the *Suffolk* case that altered this conclusion. *In re MTBE Prods. Liab. Litig.*, 591 F. Supp. 2d 249, 267-68 (S.D.N.Y. 2008) ("2008 *Suffolk* Opinion"). In this opinion, the Court held that a plaintiff may pursue the commingled product theory in addition to traditional remedies.

The Court should revisit this holding. New York law does not allow the City to pursue refiners of gasoline with MTBE and manufacturers of MTBE under alternative liability theories – whether market share or commingled product – without first establishing that it would be impossible or impractical to pursue claims against leaking service stations based upon proof of actual causation.

Alternatively, if the Court allows the City to use the commingled product theory when traditional remedies are available to it, then two issues require further clarification.

First, because defendants can be held only severally liable for the City's injuries under either the market share or the commingled product theories, the jury should be instructed that it must consider the fault of all leakers and spillers, including the City and non-parties, whose acts

or omissions contributed to the City's injury. The jury also should be permitted to allocate fault on the verdict form to those leakers and spillers. Otherwise, the several liability of each refiner or manufacturer under the commingled product theory could be disproportionate to the risk of harm it supposedly created, which contradicts the premise underlying the theory.

Second, under either the market share or the commingled product theory, the City bears the burden of proving the date when the risk of harm occurred. This is a part of its basic *prima facia* case. Failure to impose this burden on the City also would subject Defendants to liability merely by virtue of supplying gasoline at any time from 1979 to 2003, effectively destroying the right to exculpation.

## II. BACKGROUND OF CAUSATION RULINGS IN MDL 1358

The Court has issued three decisions since 2005 that have created and modified new theories of alternative liability. *See In re MTBE Prods. Liab. Litig.*, 591 F. Supp. 2d at 267-68; *In re MTBE Prods. Liab. Litig.*, 447 F. Supp. 2d 289, 301-305 (S.D.N.Y. 2006); *In re MTBE Prods. Liab. Litig.*, 379 F. Supp. 2d 348, 377-79 (S.D.N.Y. 2005). Suggesting that traditional causation principles might preclude recovery against manufacturers and refiners not tied to a particular spill, the Court articulated an alternative theory of liability –the commingled product theory – to allow plaintiffs to overcome the burdens of traditional causation. The Court initially placed strict conditions on the application of this alternative form of liability, consistent with limitations recognized generally for alternative theories of liability.

Like every opinion from other courts that have allowed some form of alternative liability, the Court initially – and properly – limited the availability of the commingled product theory to situations where a plaintiff was otherwise unable to obtain relief. But where a plaintiff could identify a point source that led to the contamination of a well and had the ability to recover

against those responsible for such spills, it could not resort to alternative liability theories. *See In re MTBE Prods. Liab. Litig.*, 379 F. Supp. 2d at 371; 447 F. Supp. 2d at 302 ("[I]f a traditional tort theory provides plaintiffs with a remedy that makes them whole, it is inappropriate to apply alternative theories of liability that do not require plaintiffs to identify the actual tortfeasor.").[1]

That clear ruling changed when the Court issued its 2008 *Suffolk* Opinion. The Court departed from other cases on alternative liability and reversed its own prior position by holding that a plaintiff may seek damages from manufacturers based on the commingled product theory regardless of whether it can recover, or even has recovered, damages for the same injury from identified tortfeasors based on ordinary theories of liability:

> I have previously stated that alternative liability theories – particularly market share liability – should not be applied unless plaintiffs have no other remedy. If a jury determines under traditional causation principles that an identified tortfeasor caused the contamination in a well, I held that plaintiffs cannot pursue other tortfeasors with respect to that well under alternative liability theories. While this reasoning may apply to some claims (e.g., public or private nuisance), I now conclude that plaintiffs may pursue product liability or negligence claims against manufacturers for placing a dangerous product into the stream of commerce, ***regardless of whether*** plaintiffs can identify a retailer whose leaking tank spilled gasoline into a well's capture zone.

*In re MTBE Prods. Liab. Litig.*, 591 F. Supp. 2d at 275 (emphasis added).

---

[1] The Court orally reaffirmed these rulings regarding the applicability of the an alternative theory of causation when a plaintiff can obtain recovery under traditional tort principles:

> That can't be true because we agreed long ago that if they can identify somebody, they are not entitled to use an alternative theory . . . . I ruled. That is called a ruling. I said if you can identify a defendant, you don't get this option . . . . [Y]ou can't do that if you can identify somebody. So that is a ruling.

(July 26, 2007 Tr. at 82:18-83:8.) (status conference)

The Court's departure from its earlier ruling is contrary to New York law. It also enables the most peculiar result that a plaintiff may pursue several liability against some defendants (manufacturers liable on the commingled product theory), plus joint and several liability against some of those same defendants (manufacturers who are also liable on traditional causation theories for releases of the product), plus joint and several liability against others (non-manufacturers who are liable on traditional theories for releases of the product), all for the same injury. This is because the commingled product theory imposes <u>several liability</u> on those manufacturers and refiners who cannot be tied to any particular spill. This is in contrast to traditional causation principles, which impose <u>joint and several liability</u> on spillers, retailers, and "entities higher in the chain of distribution" of a product, if defective, that can be traced to a particular spill. *See id.* at 268, 277.

## III. THE CITY'S BACK-AND-FORTH CAUSATION THEORIES

The City first relied on market share liability, then on commingled product theory, then back to market share, and now, it seems, back to commingled product. It originally alleged market share liability, (Pl's Fourth Am. Compl. ¶¶ 64-67), and defined the relevant geographic market as the "market that supplied the New York Harbor, which include[d] part of Eastern New Jersey." (*See* Letter from Steven J. German, Esq. to Stuart A. Raphael, Esq. (Dec. 13, 2006) (Ex. 1)). The City thereafter abandoned its reliance on market share liability and adopted the version of the commingled product theory the Court articulated in the 2008 *Suffolk* Opinion. (*See* Pl.'s Rev. Suppl. Resp. to Defs.' Joint Interrogs., # 1-7, 9, 12-13 (June 10, 2008) (Ex. 2)). The City briefly reverted to market share. (*See* Pl's Resp. to Defs' Contention Interrogs., # 3, 4, 6, (Dec. 19, 2008) (Ex. 3)). Once a final deadline was imposed by the Court, the City settled on commingled product <u>in addition to</u> traditional causation theories. Specifically, in its Court-

ordered response of April 13, 2009, the City says that it will rely on "traditional causation principles" to prove its case against specific, named defendants as to 9 of the 10 wells scheduled for trial in June. But it also says it will rely on the "Commingled Product Theory of Causation (All Wells)" as to "[a]ll Defendants except Golf (sic) Oil Limited Partnership, Getty Properties Corp, and Getty Petroleum Marketing, Inc." (Letter from Susan E. Amron, Esq. to James A. Pardo Esq. (April 13, 2009) (Ex. 4)).

## IV. SOURCES OF CONTAMINATION

On February 7, 2009, the City served the Expert Report of Donald K. Cohen and Marnie A. Bell and the Expert Report of David Terry. Among other things, the Cohen and Bell report describes the opinions of Mr. Cohen and Ms. Bell as to sources of the MTBE currently in the wells that are scheduled to be tried in June. The Terry report describes Mr. Terry's opinions as to sites that he says will contribute MTBE to the wells in the future.

The sources identified by the City's experts include gasoline stations owned, operated or branded by some of the defendants named in this case, as well as some station owners and operators not named as defendants. According to the City's letter of April 13, it expects to have evidence of the sources of gasoline releases that allegedly caused or contributed to its injuries sufficient to pursue traditional claims against a total of 11 currently named defendants. *Id.* It has not named others whom its experts have identified as sources of contamination.

In addition, the City itself is one of the primary owners of leaking USTs in Queens. Defendants expect to introduce evidence at trial that the City failed to implement various UST upgrades and leak detection requirements mandated by state and federal regulations. As a consequence, the City itself was responsible for releases of MTBE to groundwater at numerous City-owned sites throughout Queens.

## V. ARGUMENT

### A. The Court Should Not Permit the City to Pursue Alternative Liability Theories Unless the City First Establishes That It Has No Other Remedy.

As the Court has explained repeatedly, alternative theories of liability that would relax the product-identification requirement are warranted only when an innocent and highly-deserving plaintiff would otherwise be "left without a remedy." *In re MTBE Prod. Liab. Litig.*, 379 F. Supp. 2d at 376; *In re MTBE Prod. Liab. Litig.*, 447 F. Supp. 2d at 298, 300 ("otherwise without recourse" and "without a remedy"); *In re MTBE Prod. Liab. Litig.*, 517 F. Supp. 2d 662, 668 (S.D.N.Y. 2007) (explaining need "to provide fair compensation to plaintiffs"). Indeed, it was the absence of traditional causation that prompted the New York Court of Appeals to adopt market share liability in the first place. *See Hymowitz v. Eli Lilly & Co.*, 73 N.Y.2d 487, 503, 507, 539 N.E.2d 1069, 1073, 1076 (1989) (noting that DES caused "serious medical problems"; that "extant common-law doctrines, unmodified, provide no relief for the DES plaintiff unable to identify the manufacturer of the drug that injured her"; and that the Legislature revived barred claims in spite of the identification problem, thereby signaling the need for "a remedy for injuries caused by DES").

To invoke such theories, a plaintiff must be "shorn of *any* remedy." *Sindell v. Abbott Labs*, 607 P.2d 924, 928 (Cal. 1980) (emphasis added); *Conley v. Boyle Drug Co.*, 570 So.2d 275, 286 (Fla. 1990) (market share liability inappropriate "[w]here a plaintiff can identify a specific tortfeasor as causing her injury and traditional remedies are thus available"); *Shackil v. Lederle Labs.*, 561 A.2d 511, 524-27, 529 (N.J. 1989) (market share liability unjustified for DPT vaccine manufacturers because national fund provided relief).

New York law provides that "a plaintiff's inability to identify the particular defendant whose tortious act or omission caused his or her injury" is a prerequisite for dispensing with

traditional causation requirements. *Hamilton v. Accu-Tek*, 62 F. Supp. 2d 802, 839 (E.D.N.Y. 1999) (Weinstein, J.) ("With the exception of concerted action liability, [New York] collective liability theories function essentially as default rules triggered by the plaintiff's inability to identify the particular defendant whose tortious act or omission caused his or her injury."), *rev'd on other grounds*, 264 F.3d 21 (2d Cir. 2001); *see also Hamilton*, 62 F. Supp. 2d. at 950 (approving jury instruction that: "If it is proven (by any party) that a handgun manufactured by a particular manufacturer was used in the shooting of a particular plaintiff, you must assess 100% of the damages against that manufacturer. If that manufacturer is not a defendant, each of the defendants would have to be assessed a zero percentage of the national market share for that gun."); *In re DES Cases*, 789 F. Supp. 552, 564 (E.D.N.Y. 1992) (Weinstein, J.) (noting that "one-hundred percent liability will still be assessed against a single manufacturer where it can be shown that its product was the only one taken by the plaintiff's mother."); *Hall v. E. I. Du Pont de Nemours & Co.*, 345 F. Supp. 353, 383 (E.D.N.Y. 1972) (refusing to apply enterprise liability where manufacturers of blasting caps that injured plaintiffs were known).

The commingled product theory shares the same theoretical underpinnings as traditional market share liability and is subject to the same limitations. Both theories depart from common law tradition to allow recovery against a refiner or manufacturer without proof that its product actually caused the harm, even while recognizing that not every refiner or manufacturer could have caused the harm. *In re MTBE Prods. Liab. Litig.*, 591 F. Supp. 2d at 269 ("Plaintiffs' argument that a reasonable jury could conclude, under traditional causation principles, that it was likely that *all* defendants' product was part of *every* gallon of gasoline that caused MTBE contamination, is not supported by the evidence in the record."). Like market share, liability under the commingled product theory is not based on proof of individual causation. *See also*

*Hymowitz*, 73 N.Y.2d at 594, 539 N.E.2d at 1074 ("In a products liability action, identification of the exact defendant whose product injured the plaintiff is, of course, generally required.").

As with market share, the remedy under the commingled product theory is proportional liability premised on the amount of the risk of harm a defendant has created in the relevant market. As with market share, the Court has held that this proportional liability under the commingled product theory is to be measured by each liable defendant's share of the market. *In re MTBE Prods. Liab. Litig.*, 591 F. Supp. 2d at 274 n. 72 (citing *In re MTBE*, 447 F. Supp. 2d at 301) ("In fashioning the commingled product theory, I also stated that liability is several only and is apportioned by proof of a defendant's share of the market at the time of the injury."). As with market share, the commingled product theory should not apply where a defendant's share of the market does not "correspond to the amount of risk created by its alleged tortious conduct." *Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 241, 727 N.Y.S.2d 7, 19 (2001). Thus, *Hamilton* rejected market share liability for gun manufacturers because each "engaged in different marketing activities that allegedly contributed to the illegal handgun market in different ways and to different extents." *Id.* at 241, 727 N.Y.S.2d at 19. *Hamilton* explained that New York courts reject market share liability in cases where "differing degrees of risk were created . . . ." *Id.* at 242, 727 N.Y.S.2d at 20 (*citing, inter alia, Brenner*).

Market share liability – and by extension commingled product liability – is not appropriate when the conduct of third-parties materially increases the risk of injury. As explained in *Brenner v. Am. Cyanamid Co.*, 263 A.D.2d 165, 699 N.Y.S.2d 848, 853 (N.Y. App. Div. 4th Dep't 1999), third-party conduct was not a concern in DES cases because of the "exclusive control of DES manufacturers over any risk produced by their product. There was no change in the drug from the point of manufacture to the point of ingestion by the patient." In

other words, DES caused injury to plaintiffs when used as the manufacturer intended. When a substantial share of the manufacturers responsible for the DES market were named as defendants, therefore, a court had before it the most likely tortfeasors, or at least enough prime suspects to shift to them the burden to prove that their product did not cause the injury.

The "prime suspect" theory fails when the conduct of third-parties determines if an injury occurs. Thus, the *Brenner* court declined to apply market share liability to lead pigment cases in part because manufacturers lacked control over the landlords and homeowners who allowed walls coated with lead paint to deteriorate. "Owners and landlords could control such risk by proper maintenance of their property." 699 N.Y.S.2d at 853; Restatement (Third) of Torts, *supra*, § 15 cmt. c (market share liability premised on "absence of other medical or environmental factors that could have caused or materially contributed to the harm").

Where leakers and spillers who caused contamination of a well can be identified, such as in this case – according to the City's own experts – it is *their* acts and omissions that ultimately caused the harm. Any given defendant's share of the market does not correspond to the risk of harm and cannot be a fair and appropriate proxy for risk. That makes inappropriate the application of either market share or commingled product theories.

It would be both unjust and legally erroneous to relieve a plaintiff of the burden of proving traditional causation without imposing conditions of recovery that New York law uniformly applies in cases of alternative causation. Whether the City relies on market share or commingled product, the result should be the same. Even if the creation of the commingled product theory were consistent with New York law, relaxing the predicate requirements for resorting to market-based fault allocation – in other words, permitting a plaintiff to recover under the commingled product theory even where it can obtain complete relief under traditional