**EXHIBIT  D –**

**Part 2**

Dockets.Justia.com

principles – would distort New York law. *See Johnston v. Bankers Standard Ins. Co.*, 877 F.2d 1146, 1153 (2d Cir. 1989) ("a federal court sitting in diversity [should] construe and apply state law as [it] believe[s] the state's highest court would, . . . not to adopt innovative theories that may distort established state law.") (citations omitted).

**B.     In the Alternative, the Court Should Clarify Two Important Aspects of a Trial Involving Any Sort of Market Share.**

As explained above, the Court should not permit the City to pursue a theory of alternative liability based on market share without first showing the absence of a remedy against known spillers or leakers. But if the Court holds otherwise, then it should clarify two conditions for a liability allocation based upon market share. First, the jury should be instructed to apportion liability to any spillers or leakers who actually caused the City's alleged harm, whether or not those entities are parties to the litigation. Second, the City must prove the dates of each alleged MTBE release.

**1.     The Court Should Instruct the Jury to Apportion Liability to Spillers Who Caused the Harm to Preserve Defendants' Right to Avoid Joint Liability Under a Market-Based Allocation.**

If the Court denies Moving Defendants' motion to disallow the use of market share or commingled product where a traditional remedy is available, it should instruct the jury to apportion fault to both party and non-party station owners and operators whose acts or omissions caused the releases that have affected the City's wells. Otherwise, refiners and manufacturers may be subject to liability for more than their several shares.

The Court has stated consistently that liability is several – not joint and several – under the commingled product theory. Damages are to be assessed severally against each defendant based on its share of the relevant market at the time of the injury. *In re MTBE Prods. Liab. Litig.*, 591 F. Supp. 2d at 274 n. 72; 379 F. Supp. 2d at 378. The Court ruled that liability must

be several to prevent "disproportionate hardship to defendants" and because it would be unfair to hold a defendant jointly and severally liable for an injury it may have played no part in causing. *See In re MTBE Prods. Liab. Litig.*, 447 F. Supp. 2d at 301; *In re MTBE Prods. Liab. Litig.*, 379 F. Supp. 2d at 378. As the Court recognized in 2006, it would be "fundamentally unfair" to allow plaintiffs to invoke joint and several liability without proof that each liable defendant actually caused a substantial portion of the alleged damages: "Plaintiffs want the benefit of dispensing with product identification . . . but also want to take advantage of joint and several liability . . . . This would be fundamentally unfair." 447 F. Supp. at 303.

The purpose of several liability is to avoid this fundamental unfairness by holding a tortfeasor liable only for its individual share of "fault." *See* Restatement (Third) of Torts: Apportionment of Liability § E19 cmt. i (2000) ("The principal purpose of several liability is to limit the liability of any tortfeasor to that tortfeasor's comparative share of the plaintiff's damages." ). Indeed, to ensure that the severally liable defendant does not bear more than its fair share, the Restatement (Third) of Torts recognizes that the jury may assign shares of fault not only to other parties, but also to nonparties. It notes:

> When one or more defendants may be held severally liable, the fact finder may assign comparative responsibility to nonparties . . . . Those persons do not have to be joined in the case as parties to have responsibility assigned to them.

*Id.,* § D19 cmt. e.

New York law approves this fault-allocation procedure. For example, in personal injury cases, a jointly liable defendant who is less than 50% at fault can seek to limit its liability for noneconomic damages pursuant to CPLR 1601(1). New York's Pattern Jury Instructions for such cases specifically direct the jury to consider the fault of nonparties. *See* New York PJI 2:275.1 (3d. ed. 2008) ("There is also a claim by the defendants that AB (a non-party) was at

fault . . . . You must decide what part, if any, of the total fault . . . AB should bear. "); *see also*

*Zakshevsky v. City of New York,* 562 N.Y.S.2d 371, 373, 149 Misc. 2d 52, 55 (N.Y. Sup. Ct.

1990) (holding that City correctly sought addition of nonparty tortfeasor to the verdict form in

slip-and-fall case where the City's liability for noneconomic damages under CPLR 1601 was

limited to its equitable share).

Indeed, consideration of the fault of nonparties by a jury in allocating damages generally

is neither novel nor controversial under New York practice. The Court has previously

recognized that "[s]ubtraction of the share of a non-party from fault allocated to others is

traditional in New York and elsewhere." *Gray v. Cleaning Sys. & Suppliers,* 834 F. Supp. 123,

127 (S.D.N.Y. 1993). New York law so requires because "principles allowing apportionment

among tortfeasors reflect the important policy that responsibility for damages to an injured

person should be borne by those parties responsible for the injury, in proportion to their

respective degrees of fault." *Garret v. Holiday Inns, Inc.,* 58 N.Y.2d 253, 258-59, 447 N.E.2d

717, 720 (1983).

Importantly, New York courts have recognized that the exclusion of wrongdoers from a

jury's apportionment of responsibility impermissibly increases a defendant's share of damages

beyond its actual fault. *See Gannon Personnel Agency v. City of New York,* 394 N.Y.S.2d 5, 7-8,

57 A.D.2d 538, 540 (N.Y. App. Div. 1st Dep't 1977) (holding that the trial court's refusal to

allow the jury to allocate fault to a judgment-proof wrongdoer likely inflated the proportion of

responsibility assigned to the remaining defendants). Judge Weinstein recognized that "*Gannon*

demonstrates the benefit of instructing the jury to apportion responsibility among *all* possible

tortfeasors" and that "all possible tortfeasors should be included on the verdict sheets" because

"[t]his accords with the practice of both state and federal courts in New York." *In re E. & S.*

*Dists. Asbestos Litig.*, 772 F. Supp. 1380, 1399-1400 (E.D.N.Y. 1991) (emphasis added), *aff'd in part, rev'd in part sub nom., In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831 (2d Cir. 1992).

Indeed, the Second Circuit noted in *Brooklyn Navy Yard* that Judge Weinstein's inclusion on "the verdict sheets [of] all possible asbestos-supplying tortfeasors [was] in keeping with the evidence introduced and with New York practice." 971 F.2d at 844-45 (affirming the trial court's reallocation of bankrupts and nonparties' shares of fault to the non-settling, joint and severally liable defendants). As the Second Circuit noted, Judge Weinstein "gave the parties 'wide latitude to introduce evidence to establish who substantially contributed to the alleged injuries,' allowing the defendants 'to argue that the damages were caused at least in part, if not entirely, by other manufacturers not present at trial.'" *Id.* (quoting *E. & S. Dists. Asbestos Litig.*, 772 F. Supp. 1380, 1399 (E.D.N.Y. 1991)).

When an alternative theory of liability dispenses with proof of actual causation, a court should be especially concerned that the named parties are held liable only in proportion to their respective degrees of fault. *See Rutherford v. Owens Illinois, Inc.*, 941 P.2d 1203, 1221 (Cal. 1997) ("[T]he probability that any one defendant is responsible for plaintiff's injury decreases with an increase in the number of possible tortfeasors."). Consideration of nonparty responsibility is in keeping with the Court's finding that several liability is necessary under the commingled product theory to safeguard against the imposition of a disproportionate hardship on any defendant. *See In re MTBE Prods. Liab. Litig.*, 447 F. Supp. 2d at 303; *In re MTBE Prods. Liab. Litig.*, 379 F. Supp. 2d at 378. Prohibiting the jury from apportioning fault to nonparties whose acts, omissions or products actually caused the harm would run counter to this goal because it would artificially inflate the fault assessed to defendants held liable under the

commingled product theory. *See In re MTBE,* 517 F. Supp. 2d at 671 ("[Market share] liability is several only, and should not be inflated when all participants in the market are not before the court in a particular case.") (quoting *Hymowitz,* 73 N.Y.2d at 512-13, 539 N.E.2d at 1079). *See also* pages 7-9, *supra.*

In addition, to the extent evidence may establish that the City itself caused or contributed to its own injuries through releases of gasoline with MTBE from its own facilities, the verdict form should enable the jury to reduce defendants' several liability by apportioning liability to the City for its own comparative fault. *See* N.Y. CPLR § 1411.

Moving Defendants therefore ask the Court to confirm that if the City is allowed to pursue both traditional causation and a market-based theory of causation in the same trial, then the jury will be instructed to allocate a share of responsibility to all companies and individuals – the City, defendants, and nonparties – that are potentially liable under traditional theories of liability. This includes those it finds are responsible for the release of gasoline with MTBE into groundwater that caused or contributed to the City's alleged injury.

### 2. The City Must Prove the Dates of Each Release.

Again assuming that the Court permits the City to pursue a commingled product theory even in the face of identifiable spillers and leakers, the Court should confirm that the City bears the initial burden of proving when the injury occurred. This is required both so that the jury can determine which companies are in the market and their share at the time and to allow defendants meaningfully to exercise their right to exculpate. *In re MTBE Prods. Liab. Litig.,* 591 F. Supp. 2d at 274, n.2. ("In fashioning the commingled product theory, I also stated that liability is several only and is apportioned by proof of a defendant's share of the market *at the time of injury*")(emphasis added); *id.* at 275 (the "time that the risk of harm – the contamination of

groundwater – occurred is an issue for fact for the jury" and evaluating plaintiff's evidence on this issue "in each well."); *id.* at 279 ("The burden lies with the defendant to exculpate itself *once plaintiffs have shown* that the product was in a completely commingled or blended state *at the time* and place that the harm or risk occurred.") (emphasis added); *id.*at 274 (defendants can exculpate themselves "by proving its product was not present *at the relevant time* or place.") (emphasis added).

Proving when the release that affected a given well occurred, or at least providing a reasonable range for when injury occurred, is a part of the City's *prima facia* case in invoking the commingled product theory. This Court held as much in *Suffolk*:

> [w]hen *a plaintiff can prove* that certain gaseous or liquid products (*e.g.,* gasoline, liquid propane, alcohol) of many refiners and manufacturers were present in a completely commingled or blended state *at the time and place* that the risk of harm occurred, and the commingled product caused plaintiff's injury, each refiner or manufacturer is deemed to have caused the harm.

*In re MTBE Prods. Liab. Litig.*, 591 F. Supp. 2d at 274 (quoting *In re MTBE,*, 447 F. Supp at 301) (emphasis added). The Court made clear in *Suffolk* that, to invoke the commingled product theory, the plaintiff was required to prove: (1) that gasoline was commingled; (2) at the time of injury; (3) at the place of injury; and (4) that the commingled product caused its injury. Placing the burden on the City comports with traditional principles that the plaintiff has the burden of proving the elements of its claims. *Id.* at 266 ("Plaintiffs usually bear the burden of proving causation, like every other element of a prima facie case, by a preponderance of the evidence. In other words, plaintiffs must show that it is more likely than not that the defendant's actions caused their injury.")

In addition, the City's obligation to prove when the risk of harm arose is central to defendants' right to exculpate. This is consistent with the ruling in *Hymowitz*, where it was the

plaintiff's burden in the first instance to present evidence regarding the period during which she was exposed to DES. *See In re DES Market Share Litig.*, 79 N.Y.2d 299, 306, 591 N.E.2d 226, 230 (1992) (stating that "*Hymowitz* simply relaxed the DES plaintiffs' burden of proof on that portion of the causation requirement which would have obligated the plaintiffs to establish the identity of the manufacturer of the drug their mothers ingested"). Although the time span was discrete –the mother's pregnancy – and easily identifiable, it was plaintiff's burden nonetheless. *See Hymowitz*, 73 N.Y.2d at 507, 523, 539 N.E.2d at 1075, 1084 (relaxing element of proximate cause "for the DES plaintiffs who cannot identify the particular manufacturer of the DES *ingested by their mothers*") (emphasis added). Only after the plaintiff established this timing could the defendant effectively attempt to offer evidence of exculpation that it was not in the relevant market.

This Court has reasoned that if "contamination of a particular well occurred <u>prior to</u> the date a defendant entered the market, then the defendant may not be held liable as a matter of law." *In re MTBE Prods. Liab. Litig.*, 591 F. Supp. 2d at 279 (emphasis added). Timing is thus crucial. And if the City cannot show timing, a gasoline supplier – particularly one that participated in the market only briefly – has no reasonable way to exculpate itself. To give meaningful effect to exculpation, the City must bear the burden of proving such dates before any defendant assumes the burden of exculpation. Otherwise, the only defendants that could exculpate themselves are the ones that never participated in the relevant market at all. The City must therefore provide proof of a discrete period, during the alleged years of MTBE usage in New York from 1979 to 2003, during which the harm or a risk of harm occurred.

The City acknowledges in its letter of April 13 that a defendant can be held liable only "after the date that that defendant began supplying MTBE or MTBE-gasoline into the

distribution system that supplied the RGA." (Ex. 4, at Ex. A, p. 4). That much certainly is true. But the City seems to suggest that a defendant can be held liable if it was in the market at the time the MTBE was detected, not at the time that the release occurred that gave rise to a later detection. And it further seems to suggest that a defendant can be held liable if it was in the market at any time after the detection, regardless whether the release continued or had ceased (through removal of underground tanks, for example) when the defendant was in the market. (See Ex. 4, Ex. A, pp. 3 - 4).

The evidence at trial will show that companies which made MTBE or gasoline containing MTBE for the New York Harbor market that supplied Queens changed significantly over time. Unless the City can prove the dates of release for the wells scheduled to be tried, it cannot make its *prima facia* case; defendants cannot exculpate themselves; and it will be impossible to establish each defendant's share of the market. All are critical to the application of the Court's commingled product theory of causation.

## VI.  CONCLUSION

The Court should not permit the City of New York to pursue alternative causation when traditional theories of liability are available to it.  Whether the City ultimately relies on market share or on commingled product liability, it should be allowed to pursue such a theory of alternative liability only when the absence of a spiller or leaker forecloses traditional theories of liability.

If the Court disagrees, the Court should clarify that:  (1) the jury will be permitted to allocate fault of to leakers and spillers – whether parties or nonparties – whose acts, omissions or products contributed to the harm; and (2) that the City bears the initial burden of proving the time of the relevant gasoline releases.

Dated: April, 27, 2009
     New York, NY

Respectfully submitted,

By\_\_\_\_/s/  George P. Sibley, III_____
              Counsel

Joseph C. Kearfott
George P. Sibley, III
William P. Childress
HUNTON & WILLIAMS LLP
951 East Byrd Street
Richmond, VA  23219
(804) 788-8200
(804) 788-8218  (fax)

Stuart A. Raphael
HUNTON & WILLIAMS LLP
1751 Pinnacle Drive, Ste. 1700
McLean, VA  22102
(703) 714-7400
(703) 918-4015  (fax)

Counsel for Flint Hills Resources, LP
On behalf of Defendants listed on
Appendix A

## CERTIFICATE OF SERVICE

I certify that on April 27th, 2009, a true and correct copy of this **DEFENDANTS'**
**MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE REGARDING**
**APPLICATION OF THE COMMINGLED PRODUCT THEORY, CONSIDERATION**
**OF FAULT OF NONPARTIES BY JURY, AND PROOF OF DATE OF HARM** was served
via email on liaison counsel and via LexisNexis File & Serve to all other counsel of record. A
copy was provided to the Clerk, Seth Ard, via email.


_/s/_  George P. Sibley, III

## APPENDIX A

This Motion in Limine is submitted on behalf of the following defendants:

Atlantic Richfield Company
BP Products North America Inc.
Chevron Environmental Corp.
Chevron U.S.A. Inc.
CITGO Petroleum Corporation
CITGO Refining and Chemicals Company L.P.
Coastal Eagle Point Oil Company
ConocoPhillips Company
Crown Central LLC
El Paso Merchant Energy-Petroleum Company
Equilon Enterprises LLC
Equistar Chemicals, LP
ExxonMobil Corporation
ExxonMobil Oil Corporation
Flint Hills Resources, LP
Getty Petroleum Marketing Inc.
Getty Properties Corp.
Hess Corporation
Lyondell Chemical Company
Mobil Corporation
Motiva Enterprises LLC
The Premcor Refining Group Inc.
Shell Oil Company
Shell Oil Products Company LLC (d/b/a/ Shell Oil Products Company)
Shell Petroleum, Inc.
Shell Trading (US) Company
Sunoco, Inc.
Sunoco, Inc. (R&M)
Texaco Inc.
Texaco Refining and Marketing (East) Inc.
TOTAL Petrochemicals USA, Inc.
TMR Company (f/k/a Texaco Refining and Marketing Inc.)
Ultramar Energy Inc.
Ultramar Ltd.
Unocal Corporation
Union Oil Company of California
Valero Energy Corporation
Valero Marketing and Supply Company
Valero Refining and Marketing Company