# EXHIBIT E

Dockets.Justia.com

# McDermott
# Will & Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Peter J. Sacripanti
Attorney at Law
psacripanti@mwe.com
212.547.5583

June 4, 2009

**BY ELECTRONIC MAIL AND HAND DELIVERY**

The Honorable Shira A. Scheindlin
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1620
New York, New York 10007-1312

    Re:    Master File C.A. No. 1:00-1898 (SAS), M21-88, MDL No. 1358 (SAS)
             City of New York v. Amerada Hess Corp., et al, Case No. 04 Civ. 3417

Dear Judge Scheindlin:

        We understand that the Court is working on an decision concerning its "'commingled product' theory of market share liability,"[1] and very much appreciate Your Honor sharing with us some of the Court's "thinking" on where this theory may be heading. It is in this same spirit of openness and candor that we now write to share our thoughts – and, truth be told, our concerns – about the possibility that the Court may reverse its prior holdings (that a defendant held liable under "commingled product" would be severally liable for only its share of damages) and allow plaintiff City of New York to seek to hold ExxonMobil jointly and severally liable for all damages under the commingled product theory. *See* 5/28/09 Hearing Tr. at 13.

        Under the Court's longstanding articulation of the commingled product theory, and particularly its repeated rulings that liability under the theory was "several" only, ExxonMobil would not be required to prove up any other entity's equitable share of the relevant market. ExxonMobil has taken discovery, retained experts, and prepared for trial in reliance on those prior rulings that liability under the "commingled product" theory was several only. To change course now – after the parties have relied on the Court's prior articulations of the theory – would unfairly prejudice ExxonMobil because it never had an opportunity to prepare its defense under a "joint and several" liability scheme.

        For the reasons we explain below, the only way to alleviate that prejudice would be to: (1) reopen fact and expert discovery so that ExxonMobil could develop evidence of the other refiners' equitable share, including the shares of settling defendants; and (2) permit ExxonMobil

---

[1] *See, e.g., In re MTBE Prods. Liab. Litig.*, 447 F. Supp. 2d 289, 301 (S.D.N.Y. 2006).

to assert third-party claims against non-parties.[2] A shift to joint and several liability would also necessitate supplemental briefing on the availability of punitive damages.[3]

### A. Background: The Court Has Held for Four Years that the Commingled Product Theory Permitted Only Several Liability, Based on Market Share.

The Court stated at the May 28 conference that the its prior decisions about remedy under the "commingled product" theory "haven't all been consistent." *See* 5/28/09 Hearing Tr. at 13. Your Honor is being unfairly self-critical – every one of your prior decisions about "remedy" have been substantively identical. In at least three published opinions going back to 2005, and as recently as last May, the Court has stated that a defendant held liable under the commingled product theory would be severally liable only for its market share:

> "In fashioning the commingled product theory, I also stated that liability is several only and is apportioned by proof of a defendant's share of the market at the time of the injury." *In re MTBE*, 591 F. Supp. 2d 249, 274 n.72 (S.D.N.Y. 2008).

> "Under this [commingled product] theory, defendants are not subject to joint and several liability because . . . the application of the rule may cause disproportionate hardship to defendants.'" *In re MTBE*, 447 F. Supp. 2d 289, 301 (S.D.N.Y. 2006).

> "These MTBE cases suggest the need for one more theory, which can be viewed as a modification of market share liability, incorporating elements of concurrent wrongdoing. . . . Under such a theory, defendants would be severally liable because joint and several liability is unjust where 'there [are] so large a number of actors, each of whom contributed a relatively small and insignificant part of the total harm, that the application of the rule [of joint and several liability] may cause disproportionate hardship to defendants.'" *In re MTBE*, 379 F. Supp. 2d 348, 377-78 (S.D.N.Y. 2005) (quoting Restatement (Second) of Torts § 433B(2) cmt. e (1965)).

---

[2] To be clear, alleviating the prejudice that would result from such an abrupt shift to joint and several liability would not cure the legal error of permitting the case to go forward on that basis.

[3] ExxonMobil's *Motion in Limine Regarding Application of the Commingled Product Theory, Consideration of Fault of Nonparties by Jury and Proof of Date of Harm* (4/27/09) [Dkt. No. 107] is not yet fully briefed. Reply papers are due next week. However, because both sides briefed this Motion with the understanding that the "commingled product" theory was "several liability" only – neither side anticipating the potential shift to joint and several liability – the papers submitted no longer may be on point. Accordingly, ExxonMobil suggests that the briefing schedule be suspended pending the Court's ruling on whether liability remains several or is being changed to joint and several. Alternatively, we request that the deadline for filing a reply brief be deferred until 14 days after the Court issues its decision.

The Court confirmed the point in a thorough colloquy at the August 2007 status conference:

> THE COURT: I know, but even for this [commingled product], I did say everybody's responsible but I'm not going to impose joint and several liability. All right, so that –
>
> MR. ISSACHAROFF: If that's the case –
>
> THE COURT: That's the case.

See 8/30/07 Hearing Tr. at 113-16 (the full colloquy is attached at Exhibit A).

In short: the Court not only has repeatedly held that liability under the "commingled product theory" is several only, it has taken the extra step of explicitly rejecting "joint and several" liability under the theory. Far from being "[in]consistent," the Court's prior rulings on this point could not be more clear. And, as explained below, ExxonMobil relied on these rulings.

### B. The Court Was Correct in Refusing to Impose Joint and Several Liability on Defendants Held Liable Under the Commingled Product Theory.

The Court's reason for disallowing joint and several liability under a commingled product theory remains sound. The Court relied on Restatement (Second) of Torts § 433B(2) cmt. e (1965), which explains that "if a hundred factories each contribute a small, but still uncertain, amount of pollution to a stream, to hold each of them liable for the entire damage because he cannot show the amount of his contribution may perhaps be unjust." This fact pattern certainly illustrates our point, but the facts alleged here are even more compelling against imposition of "joint and several" liability. Unlike the "factories" in the comment to the Restatement, ExxonMobil (in its capacity as a product manufacturer) discharged no pollutant into anyone's water. Rather, the discharges typically occurred (according to the City) from underground storage tanks operated by service stations and, in this case, by the City of New York itself. These discharges are beyond ExxonMobil's control as the product manufacturer. It would, indeed, be unjust to hold ExxonMobil liable for all of plaintiff's claimed damages merely because ExxonMobil may be unable to quantify the amount of its manufactured product (if any) that might have been commingled into the gasoline that was leaked or spilled by some other entity at the other end of the distribution chain.[4] A change in the Court's prior position would be legal error.

---

[4] The difficulty of making such proof against myriad parties and non-parties is compounded by the fact – which the City's own experts freely acknowledge – that the City cannot identify "when" any particular discharge actually occurred. The result is that ExxonMobil must prove up each entity's participation in the market not for a discrete time period (e.g., any particular year) but, in this case, for the entire time period 1979 to 2003.

C. **Even If Legally Sound, Joint and Several Liability at This Juncture Would Be Unfairly Prejudicial to ExxonMobil.**

Even if joint and several liability were available under the law, switching to that remedy at this late date would severely prejudice ExxonMobil in two important ways.

1. **ExxonMobil Had No Reason to Take Discovery About Other Defendants' Equitable Share of the Relevant Market.**

Under a "several" liability scheme, the equitable share of other potential tortfeasors is immaterial to the apportionment of damages to ExxonMobil. But if liability becomes joint and several, ExxonMobil has the right, under N.Y. GEN. OBLIG. LAW § 15-108, to a jury determination of the settling defendants' equitable share of the relevant market. *See Williams v. Niske*, 615 N.E.2d 1003, 1005 n.1 (N.Y. 1993). The Court would then determine after trial the proper amount by which to off-set any award of compensatory damages:

> If the settlement figure is below the settling defendant's equitable share, the nonsettling defendants pay only their equitable share of the verdict. If the settlement exceeds the settling defendant's equitable share, the nonsettling defendants pay only the difference between the settlement and verdict, equitably apportioned among them. If the settlement exceeds the verdict, the nonsettling defendants have no liability at all.

*Id.* at 1005.

A shift to joint and several liability would mean that each settling defendant's equitable share becomes relevant to ExxonMobil's defense under § 15-108. Until now, ExxonMobil had no reason to discover facts related to such equitable shares. But if the Court holds that ExxonMobil's potential liability is joint and several, ExxonMobil suddenly, and on the eve of trial, becomes saddled with the "burden of establishing the equitable shares attributable to a settling tortfeasor when seeking to reduce its own responsibility for damages." *See Hyosung Am., Inc. v. Sumagh Textile Co., Ltd.*, 25 F. Supp. 2d 376, 387 (S.D.N.Y. 1998) (Scheindlin, J.). And without an opportunity to conduct additional discovery, ExxonMobil would have to meet that new burden without having had a fair opportunity to develop the relevant facts.

This discovery would be a major undertaking. At minimum, ExxonMobil would require both relevant documents and depositions from each of the settling defendants to establish their respective contributions to the commingled product put into New York Harbor from 1979 through 2003. Such discovery obviously would have to proceed via subpoena. Additionally, and perhaps more significantly, ExxonMobil would have to issue subpoenas and/or FOIA requests for integral information from myriad other non-parties and government agencies: *e.g.*, other refiners (including foreign refiners) that manufactured product that was put into New York Harbor; pipeline companies, terminaling companies, blenders, distributors, and others in the product chain

who may, under a "joint and several" theory, bear some percentage responsibility for the alleged harm.[5]

All of this discovery would take time. Based on ExxonMobil's limited experience with such discovery in calculating its own share in anticipation of a "several" liability case, gathering this discovery would minimally take 45-70 days. ExxonMobil then would have to review and analyze the data, and likely would depose the settling defendants (and non-parties, *see below*) about their contributions to the commingled product pool. Again, based upon our prior experience, it is reasonable to anticipate it would take an additional 45-75 days, or more, to complete all these depositions. Third, ExxonMobil would require new expert submissions and rebuttal on this subject – a period that would, at a minimum, require an additional 60 days. At bottom, any *fair* opportunity for ExxonMobil to develop the relevant facts *must* allow for at least six months of additional discovery to permit us to put on evidence at trial. Anything less would deprive ExxonMobil of its constitutional right to prepare a defense if the Court permits the plaintiff to pursue joint and several liability under the commingled product theory.

### 2. ExxonMobil Had No Reason to Implead the Myriad Other Entities that have an Equitable Share of the Relevant Market.

Section 15-108(a) requires the Court to reduce ExxonMobil's liability by the greater of the settlement payments or "the released tortfeasor[s'] equitable share of the damages." But § 15-108(a) applies only to entities who the plaintiff has given a "release or a covenant not to sue." The statute provides no basis for ExxonMobil to reduce its joint and several liability based on the equitable shares of entities that were never named, and thus have not received a release, in this action. The Court has suggested that these non-parties' equitable shares could be substantial – *e.g.*, that "over fifty percent of gasoline delivered to the New York Harbor comes from foreign sources." *In re MTBE*, 591 F. Supp. 2d at 271 n.54. Hence, switching to joint and several liability increases ExxonMobil's potential liability substantially. For ExxonMobil to avoid disproportionate liability under a "joint and several" scheme, then, it must be permitted to assert contribution actions against those non-parties that have an equitable share of the relevant market.

Up until now, there was no reason for ExxonMobil to do so. Under several liability, ExxonMobil's potential liability was limited to its market share. ExxonMobil had no responsibility for determining the shares of non-parties, so it had no need to assert – and no basis

---

[5] Governmental entities include, but are not limited to EPA, FERC, DOE, Department of Commerce and the Departments of Transportation for New Jersey and New York. Pipeline companies include, but are not limited to: Plantation, Buckeye, Colonial and Sun. Among the known entities potentially having some equitable percentage of the relevant market are at least 30 companies who blended products (or owned blending facilities) in New York Harbor between 1995-2003; 10 companies who imported reformulated gasoline into the Harbor between 1994-2003; 33 companies who imported other gasoline blending components into the Harbor; 6 companies who produced 'neat' MTBE; and 11 companies who imported 'neat' MTBE into the Harbor.

for asserting – contribution claims. But under joint and several liability, the landscape changes entirely.

Had the Court announced joint and several liability from the outset, or reversed its rulings earlier in the litigation, ExxonMobil would have asserted third-party actions against non-parties under FED. R. CIV. P. 14 and conducted discovery designed to establish these would-be defendants market share. And if these entities had then settled, ExxonMobil would have been able to reduce its liability according to their equitable shares under § 15-108. The prejudice from a late switch to joint and several liability is patent.

The fact that ExxonMobil could theoretically bring a separate action to pursue contribution claims against other potential tortfeasors does not alleviate the prejudice because: (1) the commingled product theory is novel, and (2) we cannot guarantee that any future contribution claims would be venued in this Court.

The Court has recognized that it "fashioned" the novel commingled product theory to address the particular facts of the MTBE cases:

> [F]rom time to time courts have fashioned new approaches in order to permit plaintiffs to pursue a recovery when the facts and circumstances of their actions raised unforeseen barriers to relief. Those courts made a policy decision that in balancing the rights of all parties, it would be inappropriate to foreclose plaintiffs entirely from seeking relief merely because their actions did not fit the parameters of existing liability theories. These MTBE cases suggest the need for one more theory . . . .
>
> To that end, I shall now describe what I call the "commingled product theory" of market share liability.

*In re MTBE*, 379 F. Supp. 2d at 377. ExxonMobil has noted on many occasions (and respectfully reemphasizes here) its objection to the "commingled product" theory, because "identification of the exact defendant whose product injured the plaintiff is, of course, generally required." *Hymowitz v. Eli Lilly & Co.*, 539 N.E.2d 1069, 1073 (N.Y. 1989). At the very least, we can all agree that the theory is a "new approach[]," *see In re MTBE*, 379 F. Supp. 2d at 377, and that no other court (including the Second Circuit or any New York state court) has yet endorsed it. Moreover, while the theory may be the law of the case here, there is a substantial risk that another court, adjudicating ExxonMobil's contribution claims, would reject or modify the theory – or would find that under the theory liability is several (as this Court has held thus far) and gives rise to no right of contribution.

In other words, the substantial prejudice resulting from the novel basis on which ExxonMobil may be held liable in this case, coupled with the risk that it may never have an opportunity to seek contribution from non-settling co-tortfeasors outside of this litigation, is untenable. The only way to avoid the prejudice, other than maintaining the rule of law the Court

has already articulated, is to permit ExxonMobil to amend its pleadings and join these previously unnamed entities.

### D. A Shift to Joint and Several Liability Would Also Require Supplemental Briefing on the Availability of Punitive Damages.

If the Court revises the commingled product theory to allow plaintiff to pursue ExxonMobil jointly and severally, it should allow ExxonMobil to supplement the briefing on the availability of punitive damages. *See* Defendants' Motion to Bar Punitive Damages Based on the Market Share and Commingled Product Theories (3/24/09) [Dkt. No. 90]. Among other things, ExxonMobil explained that several liability allocated based on market share was incompatible with punitive damages, because there would be no basis for ensuring proportionality between the amount of punitive damages and actual harm caused (as due process requires). Plaintiff, by contrast, defended the propriety of punitive damages precisely *because* liability was several:

> Furthermore, courts have addressed the potential inaccuracy resulting from imposing damages where not all market participants are joined simply by making liability several, rather than joint and several. Thus, the liability of any one defendant will never exceed its market share. . . . . As this Court has held, 'defendants are not subject to joint and several liability,' but rather several liability only, under the commingled product theory. *In re MTBE*, 447 F. Supp. 2d at 301.

*See* Pl.'s Opp. to Defs'. Mot. to Bar Punitive Damages Based on the Market Share and Commingled Product Theories, at 14 (4/30/09) (internal citations omitted) [Dkt. No. 128]. Plaintiff was partially correct: imposing joint and several liability would not overcome the equitable problems and due process concerns that would arise if ExxonMobil is held liable for punitive damages based on any theory that shifts the burden to ExxonMobil of disproving causation. If the Court shifts to joint and several, ExxonMobil would request an opportunity to explain why it would still be improper to permit plaintiff to recover punitive damages.

\* \* \*

In conclusion, ExxonMobil respectfully suggests that the Court hold firm to its original and longstanding position that commingled product liability is several only. But if the Court reverses itself to adopt a "joint and several" standard, ExxonMobil respectfully asks that the Court take measures to alleviate its reliance on the Court's prior holdings. Specifically, the Court should: (1) reopen fact and expert discovery so that ExxonMobil may develop the evidentiary record required to defend itself under the newly enunciated "joint and several" standard; (2) allow ExxonMobil the opportunity to assert third-party claims against non-parties; and (3) allow supplemental briefing on the availability of punitive damages.

We reiterate our gratitude to the Court for sharing some of its thoughts in advance, and also for its indulgence in allowing us to share ours openly and candidly. We stand ready, of course, to discuss this further at the Court's convenience.

Respectfully submitted,

*Peter John Sacripanti*

Peter John Sacripanti

cc: All Counsel By LNFS, Service on Plaintiffs' Liaison Counsel

# Exhibit A

78udmtb1

```
 1   UNITED STATES DISTRICT COURT
 2   SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 3
 3   IN RE: METHYL TERTIARY BUTYL        MDL 1358
 4   ETHER ("MTBE") PRODUCTS           Master File C.A.
 4   LIABILITY LITIGATION            No. 1:00-1898(SAS)
 5
 5   ------------------------------x
 6
 6                              August 30, 2007
 7                              10:35 a.m.
 7
 8   Before:
 8
 9             HON. SHIRA A. SCHEINDLIN,
 9
10                              District Judge
10
11                APPEARANCES
11   WEITZ & LUXENBERG, P.C.
12        Plaintiffs' Liaison Counsel
12   BY:  ROBIN L. GREENWALD
13        ROBERT J. GORDON
13        WILLIAM WALSH
14
14   MICHAEL A. CARDOZO
15        Corporation Counsel of the
15        City of New York
16        Attorney for City plaintiffs
16   BY:  SUSAN E. AMRON
17
17   SAMUEL ISSACHAROFF
18        Attorney for Plaintiffs
18
19   BARON & BUDD, P.C.
19        Attorney for Plaintiffs
20   BY:  SCOTT SUMMY
21
22
23
24
25
                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300
```

1   MR. EIMER: I want to deal with that also because your
2   Honor also rejected joint and several liability.
3   THE COURT: He said I didn't.
4   MR. ISSACHAROFF: That was for market share, your
5   Honor. For where there is no identifiable source, the Court
6   rejected joint and several liability.
7   THE COURT: Of course. You just said I allowed it for
8   the commingled theory?
9   MR. ISSACHAROFF: You left it open, the commingled
10  theory, your Honor.
11  MR. EIMER: I'm quoting from your Honor's April 2005
12  opinion on the motion to dismiss where you originated the
13  commingled market share theory, and it begins on page 38, which
14  is commingled market share liability where we discussed it.
15  Then on page 39, you elaborated the theory now. You say,
16  "Under such a theory, the defendants would be severally liable
17  because joint and several liability is unjust."
18  THE COURT: Then I don't know why Mr. Issacharoff told
19  me I said something different.
20  MR. ISSACHAROFF: You said, "Under the commingled
21  product theory of market share liability," and I'm reading from
22  447 F.Supp.2d 289 at page --
23  THE COURT: What is the date on that opinion?
24  MR. ISSACHAROFF: This is the main opinion. This is
25  the August 18th opinion, 2006.

114

1   MR. SACRIPANTI: It is not the main opinion, your
2   Honor. Your main opinion was the April motion to dismiss --
3   THE COURT: Absolutely. I don't know what opinion he
4   is reading from.
5   MR. SACRIPANTI: He is referring to the causation
6   opinion, your Honor, where you gave a summary of your market,
7   your commingled. That is what he is reading from.
8   THE COURT: What did I say then?
9   MR. ISSACHAROFF: What you said, your Honor, was:
10  "Under the commingled product theory of market share liability,
11  when a plaintiff can prove that certain gaseous or liquid
12  products, e.g., gasoline, liquid propane, alcohol, but many
13  refiners and manufacturers were present in a completely
14  commingled or blended state at the time and place that the harm
15  or risk of harm occurred and the commingled product caused

16  plaintiff's injury, each refiner or manufacturer is deemed to
17  have caused the harm."
18       THE COURT: Yes.
19       MR. ISSACHAROFF: So, your Honor, it seems to me that
20  there are two ways --
21       THE COURT: I never said anything there about joint
22  and several liability.
23       MR. SACRIPANTI: Where you said it was in April, your
24  Honor.
25       THE COURT: Mr. Eimer read it.

1        MR. SACRIPANTI: Where you said it is several.
2        THE COURT: I did.
3        Do you have anything to the contrary?
4        MR. ISSACHAROFF: No. I am just reading from the
5   causation opinion. I apologize, your Honor, I did not bring --
6        MR. EIMER: I think one of the following paragraphs of
7   that same opinion: "Under this theory, the defendants are not
8   subject to joint and several liability because when there are
9   so large number of actors, each of these receives a relatively
10  small, insignificant part of the harm, the application of the
11  rule of joint and several liability can cause disproportionate
12  hardship."
13       THE COURT: That is misleading, then, if you are
14  telling me that I had ever said that because I have been
15  thinking right now about which method I would like to kill
16  myself with, a rope, a gun, poison, because I was hoping I
17  really didn't take two such opposite positions, and apparently
18  I didn't. So I didn't say there was going to be joint and
19  several liability under that theory.
20       MR. ISSACHAROFF: Your Honor, you were extremely clear
21  that for market share --
22       THE COURT: I know, but even for this, I did say
23  everybody's responsible but I'm not going to impose joint and
24  several liability. All right, so that --
25       MR. ISSACHAROFF: If that's the case --

1        THE COURT: That's the case.

[PAGE INTENTIONALLY LEFT BLANK]

# McDermott
# Will&Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Peter J. Sacripanti
Attorney at Law
psacripanti@mwe.com
212.547.5583



Jun 23 2009
11:16AM

June 22, 2009

**BY ELECTRONIC MAIL AND HAND DELIVERY**

The Honorable Shira A. Scheindlin
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1620
New York, New York 10007-1312

    Re:    Master File C.A. No. 1:00-1898 (SAS), M21-88, MDL No. 1358 (SAS)
              City of New York v. Amerada Hess Corp., et al, Case No. 04 Civ. 3417

Dear Judge Scheindlin:

       We respectfully submit this response to Mr. Sher's letter brief of June 17, 2009, by which Plaintiff City of New York ("Plaintiff") asks the Court:

(1)    to hold Defendant Exxon Mobil Corporation ("ExxonMobil") jointly and severally liable under the commingled product theory of market share liability;

(2)    alternatively, to require ExxonMobil to prove that its "contribution to [Plaintiff's] injury was insignificant" in order to avoid joint and several liability (Sher Ltr at 2); and

(3)    in all events, to saddle ExxonMobil with the burden of proving the proper measure of allocating damages.

The Court should decline all three requests.

       As to Plaintiff's first request, the Court repeatedly has held that liability under the commingled product theory is several. The Court invited letter briefing solely on the issue of allocation, and explicitly told Plaintiff not to re-argue the "joint and several liability" issue unless it formally moved for reconsideration – which it has not done. (CITE) Plaintiff has ignored the Court's instruction. What is more, Plaintiff has re-argued for "joint and several liability" mere weeks after acknowledging to the Court that "*liability is several* as among defendants who are manufacturers of gasoline . . . ." (Plaintiff's Memorandum of Law in Support of Motion in Limine No. 6 to Exclude Evidence and Argument Concerning the Liability of Non-Defendant

U.S. practice conducted through McDermott Will & Emery LLP.

**340 Madison Avenue New York New York 10173 Telephone: 212.547.5400 Facsimile: 212.547.5444 www.mwe.com**

The Honorable Shira A. Scheindlin
June 22, 2009
Page 2

Owners/Operators of Underground Storage Tanks, p.1 (Doc. No. 195, filed 5/11/09) (emphasis added).)

The Court also should refuse Plaintiff's alternative request to presume that ExxonMobil's contribution was "significant" and to impose joint and several liability unless ExxonMobil proves the contrary. Again, the Court did not request this argument. More importantly, there is no factual or legal predicate for the Court to make such a presumption and to impose such a burden on ExxonMobil.

Finally, the Court should require Plaintiff to meet its burden of proving allocation for three reasons: (A) placing the burden on ExxonMobil to prove allocation would, effectively, transform several liability into joint and several liability; (B) under New York law, plaintiff bears the burden of proving each defendant's share of the market for purposes of allocation; and (C) placing the burden on ExxonMobil would violate its due process rights, particularly with respect to any award of punitive damages.

I. **THERE IS NO REASON TO RECONSIDER THE COURT'S CONSISTENT HOLDINGS THAT LIABILITY UNDER THE COMMINGLED PRODUCT THEORY IS SEVERAL ONLY.**

On June 9, 2009, the Court once again confirmed its longstanding position that liability under the commingled product theory is "'*several only* and is apportioned by proof of a defendant's *share of the market* at the time of the injury.'" *City of New York v. Amerada Hess Corp. (In re MTBE Prods. Liab. Litig.)*, No. 04-CV-3417, slip op. at 22 (S.D.N.Y. June 9, 2009) ("6/9/09 Opinion") (quoting *County of Suffolk v. Amerada Hess Corp. (In re MTBE Prods. Liab. Litig.)*, 591 F. Supp. 2d 249, 274, n. 72 (S.D.N.Y. 2008)) (emphasis added). Indeed, for more than four years the Court consistently has held that liability is several only.[1]

Although the Court invited the parties to submit letter-briefs only on the question of allocation, Plaintiff has taken the opportunity to retread settled ground, urging that "there is no reason liability under the commingled product theory should be anything other than joint and several, as it is under the concurrent wrongdoing theory." (Sher Letter at 3.) Without saying so, Plaintiff apparently wants the Court to reconsider four years of unequivocal holdings. The Court should refuse Plaintiff's request for two principal reasons.

First, Plaintiff has failed to follow the Court's procedure for requesting reconsideration. The Local Rules require "[a] notice of motion for reconsideration" and "a memorandum setting

---

[1] *See also County of Suffolk v. Amerada Hess Corp. (In re MTBE Prods. Liab. Litig.)*, 447 F. Supp. 2d 289, 301 (S.D.N.Y. 2006) ("[D]efendants are not subject to joint and several liability because . . . the application of the rule may cause disproportionate hardship to defendants.'"); *In re MTBE Prods. Liab. Litig.*, 379 F. Supp. 2d 348, 377-78 (S.D.N.Y. 2005) (same). The Court confirmed the point in a thorough colloquy at the August 2007 status conference. *See* 8/30/07 Hearing Tr. at 113-16.

forth concisely the matters or controlling decisions which counsel believes the court has overlooked." Loc. Civ. R. 6.3. Plaintiff fails even to acknowledge the standard for reconsideration; it presents no "controlling decisions or data that the court overlooked" and makes no argument of "clear error." *See, e.g., In re S. African Apartheid*, No. 02 MDL 1499 (SAS), 2009 U.S. Dist. LEXIS 47490, at *4 (S.D.N.Y. May 27, 2009).[2]

Second, even if the Court were willing to reconsider this issue now, there would be no basis for resolving it differently. In holding that liability was several only, the Court relied on Restatement (Second) of Torts § 433B(2) cmt. e (1965). *See County of Suffolk v. Amerada Hess Corp. (In re MTBE Prods. Liab. Litig.)*, 447 F. Supp. 2d 289, 301 & n.47 (S.D.N.Y. 2006). That comment explains that "if a hundred factories each contribute a small, but still uncertain, amount of pollution to a stream, to hold each of them liable for the entire damage because he cannot show the amount of his contribution may perhaps be unjust." That is especially the case considering that "no reasonable jury could find, by a preponderance of the evidence, that each defendant's gasoline caused the contamination of each well." *In re MTBE*, 591 F. Supp. 2d at 273. "Plaintiffs want the benefit of dispensing with product identification . . . but also want to take advantage of joint and several liability . . . . This would be fundamentally unfair." *In re MTBE*, 447 F. Supp. 2d at 302-03.

Indeed, unlike the "factories" in the comment to the Restatement, ExxonMobil (in its capacity as a refiner) discharged no pollutant into anyone's water. Rather, the discharges typically occurred (according to Plaintiff) from underground storage tanks operated by service stations and, in this case, by Plaintiff itself. These discharges are beyond ExxonMobil's control as the product manufacturer. It would be manifestly unjust to hold ExxonMobil liable for all of Plaintiff's claimed damages merely because ExxonMobil may be unable to quantify the amount of its manufactured product (if any) that might have been commingled into the gasoline that some other entity at the other end of the distribution chain may have leaked or spilled.[3] Hence, there is no basis for reconsidering the Court's repeated holdings that liability under the commingled

---

[2] Plaintiff apparently hopes to convince the Court that footnote 58 of the 6/9/09 Order left open the question of joint and several liability. (*See* Sher Letter at 1-2 (citing 6/9/09 Order at 22 n.58).) But Plaintiff acknowledges that footnote 58 addressed the argument it raised in "Plaintiff's Memorandum of Law in Support of Motion in Limine No. 6 to Exclude Evidence and Argument Concerning the Liability of Non-Defendant Owners/Operators of Underground Storage Tanks" (Doc. No. 195, filed 5/11/09). That argument, in turn, focused on the joint and several liability "as between manufacturer defendants and retailers" *while acknowledging that "Defendants' liability is several as among defendants who are manufacturers of gasoline and MTBE."* (*Id.* at 1 (emphasis added).) In short, even Plaintiff acknowledged (until now) that the Court had already settled this question.

[3] The difficulty of proof is compounded by the City's acknowledged inability to identify when any particular discharge actually occurred.

product theory is several.[4] Furthermore, given that the commingled product theory "adopts... the market-share theory of apportioning damages," *see* 6/9/09 Opinion at 8, it would be entirely incongruous to impose joint and several liability under that theory.

## II. EXXONMOBIL HAS NO THRESHOLD BURDEN TO PROVE ITS CONTRIBUTION WAS "*DE MINIMIS*" TO AVOID JOINT AND SEVERAL LIABILITY UNDER THE COMMINGLED PRODUCT THEORY.

Tacitly recognizing the futility of seeking reconsideration, Plaintiff tries a different approach. Embedded in its request for joint and several liability is an alternative request that the Court presume that ExxonMobil contributed substantially to Plaintiff's alleged damages, and then shift to ExxonMobil the burden of proving that its contribution to Plaintiff's alleged damages was "*de minimis*." (*See* Sher Letter at 4.) According to Plaintiff, if ExxonMobil fails to meet that burden, it should be held jointly and severally liable.

The factual predicates for Plaintiff's argument are groundless. Plaintiff first acknowledges the Court's concern with imposing joint and several liability when there is more than a "small" number of potential tortfeasors, because each tortfeasor's "'contribution to the total volume of MTBE-containing gasoline in any particular well'" may be "'very small.'" (*Id.* at 3 (quoting *In re MTBE*, 447 F. Supp. 2d at 298-99, 303).) Plaintiff nevertheless argues that this case does involve "a small number of tortfeasors—fewer than 20 in the refiner/manufacturer category." (*Id.*) But the Court has already recognized that the number is much larger: "Many refiners supply the New York area – almost fifty were named as defendants in th[e *County of Suffolk*] case – and overseas companies not named as defendants also supply gasoline to the New York regional market." *In re MTBE*, 591 F. Supp. 2d at 273-74. Furthermore, the Restatement recognizes that placing the burden of apportionment on the defendants is more appropriate when there are only "two or three" defendants, Restatement, *supra*, § 433B(2) cmt. e – not 20, and certainly not 50 or more.[5] Ultimately, Plaintiff wants the Court simply to hold, without supporting evidence, that ExxonMobil's contribution to Plaintiff's alleged damages "is more than merely *de minimis*." (Sher Letter at 6.) That is not a presumption the law permits.

Plaintiff also urges that ExxonMobil should be presumed jointly and severally liable "since only ExxonMobil remains" in the case. (*See id.*) But the size of ExxonMobil's contribution to Plaintiff's alleged damages has nothing to do with the number of remaining defendants in the lawsuit. To the contrary, limiting ExxonMobil's liability is all the more important to protect against the imposition of disproportionate liability when all other potential tortfeasors are absent (whether as a result of a settlement or because Plaintiff failed to name them

---

[4] If the Court were to permit Plaintiff to hold ExxonMobil jointly and severally liable under the commingled product theory, ExxonMobil would suffer undue prejudice unless the Court permitted the additional discovery and other measures detailed in our letter of June 4, 2009.

[5] In fact, when all potential tortfeasors are taken into account (refiners/manufacturers, transporters, blenders, etc.), the number of market participants for apportionment purposes likely expands to more than 100. *P. Sacripanti Letter to Court*, pp. 4-5 & n. 5 (June 4, 2009).