# EXHIBIT G

Dockets.Justia.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
IN RE: METHYL TERTIARY BUTYL ETHER
PRODUCTS LIABILITY LITIGATION
------------------------------------------------------------X
This document relates to the following cases:
*City of New York
v. Amerada Hess Corp., et al.*, 04 Civ. 3417

------------------------------------------------------------X

Master File C.A. No. 1:00-1898
MDL 1358 (SAS)
M21-88

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' NOTICE OF JOINT MOTION AND MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF PROTECTED LOBBYING CONDUCT[1]

## I. PRELIMINARY STATEMENT

As a matter of law, Defendants cannot be held liable for statements made to influence government action, even if those statements are alleged to have been deceptive. Defendants' right to engage in lobbying of state and federal governmental units is conferred by Article I of the United States Constitution and is protected by legal precedent known as the *Noerr-Pennington* doctrine. It is, therefore, well-settled that the introduction of evidence at trial which impinges on Defendants' constitutionally guaranteed right to lobby or petition the government is forbidden.

Defendants anticipate that Plaintiff will impermissibly attempt to introduce an array of evidence concerning Defendants' constitutionally protected lobbying activities. Indeed, a review of the operative complaint reveals that Plaintiff will try to convince the jury that Defendants'

---

[1] This motion is filed on behalf of Lyondell Chemical Company, Equistar Chemicals, LP, Crown Central LLC, TOTAL Petrochemicals USA, Inc., ExxonMobil Corporation, ExxonMobil Oil Corporation and Mobil Corporation.

lawful advocacy regarding MTBE to the government provides a basis for Plaintiff's tort and products liability claims. For example, Plaintiff asserts that "[d]efendants . . . aggressively *lobbied* EPA that the Products were safe substances, even though Defendants, by their own evidence, knew that MTBE posed substantial risks to groundwater." (Fourth Amend. Compl., ¶ 108). Plaintiff similarly contends that "ARCO Chemical, now Defendant Lyondell, openly promoted the environmental benefits of MTBE as a gasoline additive, without disclosing its known dangers and risks to groundwater, *to state legislatures and regulators* in Colorado, Arizona, and Nevada." *Id.* at 103. Plaintiff will also likely attempt to introduce evidence that Defendants formed an MTBE Committee to lobby the EPA to convince it that further tests of MTBE were not required. *Id.* at 105.

Under the *Noerr-Pennington* doctrine, Defendants have an absolute right to lobby the government without fear of suffering adverse consequences. As such, evidence of Defendants' lobbying activities is irrelevant and must be precluded at trial. In addition to the lack of relevance to the claims actually before the Court in this case, the admission of any evidence pertaining to Defendants' lobbying activities will confuse the issues, mislead the jury, and prejudice Defendants. Moreover, the introduction of such evidence is also likely to spur mini-trials, extending the length of a trial which is already expected to consume a significant amount of the Court's time and resources. Accordingly, all evidence, reference, and argument respecting Defendants' lobbying efforts and attempts to influence the government, including alleged misrepresentations or omissions, should be precluded from entry into evidence.

## II. ARGUMENT

### A. Legal Standard

Only relevant evidence is admissible at trial. Fed. R. Evid. 402; *see also Arlio v. Lively*, 474 F.3d 46, 52 (2d Cir. 2007). Federal Rule of Evidence 401 defines "relevant evidence" as

2

"evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. To satisfy Rule 401, the evidence must be probative of the proposition for which it is offered and the proposition itself must be of consequence to the determination of the action. *United States v. Kaplan*, 490 F.3d 110, 121 (2d Cir. 2007). The party seeking to admit evidence "has the burden of showing that the prerequisites for its admissibility are met." *Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627, 632 (2d Cir. 1994).

Even if relevant, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403; *Guidi v. Inter-Continental Hotels Corp.*, No. 95 Civ. 9006, 2003 U.S. Dist. LEXIS 6385, at *5-6 (S.D.N.Y. April 16, 2003). Evidence which by its very nature "chills the exercise of First Amendment rights is properly viewed as presumptively prejudicial." *United States Football League v. National Football League*, 634 F. Supp. 1155, 1181 (S.D.N.Y. 1986). Moreover, it is clear that the Court should exercise its discretion to exclude evidence where, if admitted, would result in a "mini-trial" on a collateral issue. *See United States v. Bowe*, 360 F.2d 1, 15-16 (2d Cir. 1966); *United States v. Graziano*, 558 F. Supp. 2d 304, 324 (E.D.N.Y. 2008) (excluding evidence on Rule 403 grounds which was purportedly relevant to motive in prosecution for arson because such evidence could lead to a unnecessary mini-trial on collateral issue).

B.  The *Noerr-Pennington* Doctrine Precludes The Use Of Evidence Or Testimony Concerning Defendants' Attempts to Influence Government Action Concerning MTBE.

Under the *Noerr-Pennington* Doctrine, efforts to influence government are considered protected speech and are afforded heightened protections under the First Amendment. *See Eastern R.R. Presidents Conference v. Noerr Freight Co.*, 365 U.S. 127 (1967); *United Mine Workers v. Pennington*, 381 U.S. 657 (1965). Although first applied in the antitrust context, the doctrine has since been extended to bar liability for common law tort claims premised on petitioning activity – including the type of negligence and product-liability claims asserted in this case. *See, e.g., Clark Consulting, Inc. v. Financial Solutions Partners LLC*, No. 05 Civ. 06296 (SAS), 2005 U.S. Dist. LEXIS 28642, *12 (S.D.N.Y. November 17, 2005) (Sheindlin, J.) ("courts have extended the *Noerr-Pennington* doctrine so that it shields parties from state tort liability as well as antitrust liability when they petition the government for action favorable to them."); *Friends of Rockland Shelter Animals, Inc. v. Mullen*, 313 F. Supp. 2d 339, 343 (S.D.N.Y. 2004) (holding *Noerr-Pennington* doctrine applicable in economic tort case outside antitrust context); *Dr. Reddy's Labs., Ltd. v. AaiPharma Inc.*, No. 01 Civ. 10102, 2002 U.S. Dist. LEXIS 17287 at *40 (S.D.N.Y. Sept. 19, 2002) (holding *Noerr-Pennington* applies to tortuous interference claims); *Hamilton v. Accu-Tek*, 935 F. Supp. 1307, 1316-1317 (E.D.N.Y. 1996) (holding *Noerr-Pennington* applies in action for negligence, product liability, and fraud). Moreover, the protections afforded by the *Noerr-Pennington* doctrine broadly encompass all types of advocacy designed to influence government action, including the petitioning of administrative agencies and state legislatures. *See Tuosto v. Philip Morris USA, Inc.*, No. 05 Civ. 9384, 2007 U.S. Dist. LEXIS 61669, *14 (S.D.N.Y. Aug. 21, 2007). The protection applies even where, as here, a defendant's advocacy is alleged to be unethical, deceptive, or misleading. *Noerr*, 365 U.S. at 140; *see also Tuosto*, 2007 U.S. Dist. LEXIS 61669 at *15.

The evidence Plaintiff will seek to introduce falls squarely within the category of evidence which should be excluded under the *Noerr-Pennington* doctrine. In essence, Plaintiff will attempt to utilize Defendants' efforts to lobby USEPA and state legislatures, among other governmental actors, to prove Plaintiff's tort and product liability claims. Plaintiff alleges that certain defendants (all of which are competitors with one another) have joined together to petition the government to act in a certain way, – i.e., to approve MTBE for use in certain gasoline – that benefited each defendant economically and caused injury to Plaintiff. This is precisely the type of conduct that the *Noerr-Pennington* doctrine protects from litigation's scrutiny.

C.  **There Are No Exceptions Which Apply To Limit The Application Of The *Noerr-Pennington* Doctrine In This Case.**

No exception applies to limit the application of the *Noerr-Pennington* doctrine to the evidence Plaintiff seeks to admit. Although Plaintiff may allege that statements or representations made by Defendants during the course of their lobbying were untrue, such allegations are irrelevant to the *Noerr-Pennington* analysis. It is well-established that "[e]ven lobbying activities that are unethical or result in deception are not actionable under the *Noerr-Pennington* doctrine." *Friends of Rockland*, 313 F. Supp. at 344; *see also Armstrong Surgical Ctr. v. Armstrong County Memorial Hospital*, 185 F.3d 154, 163-163 (3d Cir. 1999) ("liability for injuries caused by state [regulatory] action is precluded even where it is alleged that a private party urging the action did so by bribery, deceit, or other wrongful conduct that may have affected the decision making process.").

Indeed, the *only* exception to the protections afforded by *Noerr-Pennington* is for "sham" petitions to the government – that is, situations in which persons use the governmental process itself – "as opposed to the outcome of that process" – to cause direct harm or to harass another

5

party. *Alfred Weissman Real Estate, Inc. v. Big V. Supermarkets, Inc.*, 707 N.Y.S.2d 647, 654 (App. Div. 2000) (*citing City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 380 (1991)). Since such an assertion amounts to an abuse of process claim, it follows that where the defendant in fact *intended* to cause the government to act (as alleged here), and in fact *caused* the government to act (as also alleged here), the effort by definition, was not a sham. *See Real Estate Investors v. Columbia Pictures*, 508 U.S. 49, 56-59 (1993). Since, by definition, a sham must involve a baseless abuse of process, "a successful effort to influence government action cannot be considered a sham." *Id.* at 58.

Plaintiffs obviously do not suggest that Defendants' alleged lobbying was not "genuinely intended to influence the government." Instead, they claim precisely the opposite – that Defendants colluded to misinform the government about MTBE in order to induce the government to create a market for MTBE and maximize sales. Fourth Amend. Compl. At ¶ 109. Thus, based on Plaintiff's own allegations – inaccurate and frivolous as they are – the subject lobbying activity concerning MTBE fits squarely within the protections provided by the *Noerr-Pennington* doctrine and is not subject to any exceptions.[2]

---

[2] Plaintiff will likely attempt to argue that the *Noerr-Pennington* doctrine is inapplicable to exclude categories of evidence. This argument is a misinterpretation of the doctrine. Courts recognize the need to exclude evidence pursuant to the *Noerr-Pennington* doctrine in order to safeguard a defendant's constitutional rights. *See Schwab v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 992, 1084 (E.D.N.Y. 2006) (*rev'd on other grounds*) (court will hear motions *in limine* with respect to evidence that may qualify for protection under *Noerr-Pennington*); *United States v. Johns-Manville Corp.*, 259 F. Supp. 440, 454 (E.D.Pa. 1966) (noting that it would be illogical and constitutionally impermissible to permit an inference of unlawfulness to be drawn from lawful lobbying activity); *see also* Robert P. Faulkner, *Evidence of First Amendment Activity at Trial: The Articulation of a Higher Evidentiary Standard*, 42 UCLA L. Rev. 1, 30 (1994) (arguing for necessity of high evidentiary standard to protect first Amendment Rights under *Noerr-Pennington*).

### D. The Introduction Of Evidence Of Defendants' Lobbying Activities Would Be Prejudicial, Mislead The Jury, And Cause Undue Delay.

Even if Plaintiff were to argue that evidence of Defendants' lobbying activities is relevant to show Defendants' intent or knowledge, such evidence should be excluded because its probative value is substantially outweighed by the danger of unfair prejudice. Indeed, a party's attempted proffer of *Noerr-Pennington* evidence at trial triggers significant First Amendment concerns. As such, because the doctrine is "designed to protect the exercise of First Amendment rights," admissibility should be governed by Fed. R. Evid. 403, and evidence of lobbying activity should be "*properly viewed as presumptively prejudicial.*" *U.S. Football League*, 634 F. Supp. at 1180-1181; *see also Feminist Women's Health Center v. Mohammed*, 586 F.2d 530, 543 n.7 (5th Cir. 1978) (holding evidence inadmissible where evidentiary value was "far outweighed" by defendants' First Amendment interests). Finally, such evidence should be excluded if its introduction would result in a "mini-trial" on a collateral issue. *See Bowe*, 360 F.2d 1, 15-16 (2d Cir. 1966); *Graziano*, 558 F. Supp. 2d at 324.

Here, introduction of evidence of Defendants' lawful lobbying activities should be regarded as presumptively prejudicial and excluded. Not only would the introduction of such evidence potentially impinge on Defendants' First Amendment rights, but it has a high probability of confusing and misleading the jury since there is no nexus between Defendants' lobbying efforts and the alleged injury. Indeed, the negative connotations evoked by evidence of lobbying could, in itself, cause the jury to draw impermissible inferences. In any event, the introduction of evidence of Defendants' petitioning of the government would likely squander Court time and resources as it would give rise to "mini-trials" on these discrete, collateral issues.

## III. CONCLUSION

For each of the foregoing reasons, Defendants respectfully request that all evidence, reference, and argument respecting Defendants' lobbying efforts and attempts to influence the government, including alleged misrepresentations or omissions, should be precluded from entry into evidence.

Dated: May 11, 2009

BLANK ROME LLP

/s/ Jeffrey S. Moller
Alan J. Hoffman
Jeffrey S. Moller
Beth L. Haas
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 885-5000
*Attorneys for Defendants,*
*Lyondell Chemical Company and*
*Equistar Chemicals, LP*

## CERTIFICATE OF SERVICE

I, Jeffrey S. Moller, hereby declare under perjury of law that a true and correct copy of the foregoing Defendants' Notice of Joint Motion and Memorandum of Law in Support of Defendants' Joint Motion *In Limine* to Preclude Plaintiff from Introducing Evidence of Defendants' Protecting Lobbying Conduct was served this 11th day of May, 2009, upon liaison counsel for Plaintiff via electronic mail and upon all other counsel via Lexis-Nexis File and Serve.

/s/ Jeffrey S. Moller
JEFFREY S. MOLLER

[PAGE INTENTIONALLY LEFT BLANK]



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X   Master File C.A. No. 1:00-1898
IN RE: METHYL TERTIARY BUTYL ETHER                              MDL 1358 (SAS)
PRODUCTS LIABILITY LITIGATION                                   M21-88
-----------------------------------------------------------X
This document relates to the following cases:

*City of New York v. Amerada Hess Corp., et al.*,
No. 04 Civ. 3417

-----------------------------------------------------------X


# DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF PROTECTED LOBBYING CONDUCT

## INTRODUCTION

Defendant ExxonMobil[1] has moved pursuant to the *Noerr-Pennington* doctrine to preclude Plaintiff City of New York from presenting at trial any evidence, testimony, or argument regarding alleged efforts by ExxonMobil and others to influence government action regarding MTBE. In arguing that evidence of ExxonMobil's protected lobbying activities should be introduced at trial, Plaintiff: (1) misconstrues the *Noerr-Pennington* doctrine; (2) ignores the allegations it makes in its Complaint, as well as in its Opposition; and (3) fails to articulate an appropriate basis upon which this Court should grant an exception to well-established precedent. Indeed, the fallacy of Plaintiff's contentions is highlighted by Plaintiff's failure to directly counter any of the controlling arguments made in ExxonMobil's Motion. For these reasons, ExxonMobil's Motion should be granted.

## ARGUMENT

### I. The *Noerr-Pennington* Doctrine Precludes The Admission Of Lobbying Evidence In Precisely This Type Of Case

Plaintiff contends that the *Noerr-Pennington* doctrine is inapplicable to this case because Plaintiff's claims (e.g., negligence, trespass, conspiracy) are not premised upon ExxonMobil's lobbying conduct, per se. Pl. Opp. at 5. This contention ignores both Plaintiff's own allegations, as well as the relevant legal authority regarding application of the *Noerr-Pennington* doctrine and the rationale underlying the protection itself.

---

[1] Defendant's Joint Motion to Exclude was filed on behalf of multiple defendants, many of whom have reached settlement agreements with Plaintiff. This reply is being submitted on behalf of ExxonMobil Corporation, ExxonMobil Oil Corporation and Mobil Corporation (collectively, "ExxonMobil").

1

First, Plaintiff's Complaint puts ExxonMobil's lobbying activity relating to MTBE squarely at issue, by alleging the impropriety of such efforts by ExxonMobil and others. *See* Motion at 2; Fourth Amend. Compl. at ¶¶ 102, 103, 108. Indeed, Plaintiff's own Opposition reinforces that such evidence is central to its various legal theories. Plaintiff spells out that it aims to establish ExxonMobil's liability in this case by proving, through evidence of Defendants' protected petitioning activities, that ExxonMobil did not disclose "the danger and risk that MTBE posed to groundwater;" and that ExxonMobil "lobbied EPA that MTBE and gasoline containing MTBE were safe substances." *See* Opp. at 1-2. Moreover, these allegations are incorporated into and integral to each of Plaintiff's causes of action, from conspiracy through failure to warn. Simply put, the very allegations Plaintiff will seek to prove at trial are, by Plaintiff's own admission, inextricably intertwined with evidence of ExxonMobil's protected lobbying activity.

Second, as discussed at length in ExxonMobil's Motion, courts in multiple jurisdictions, including the Southern District of New York, have utilized the doctrine in a variety of cases, including those involving the same type of state law tort claims made by Plaintiff here. *See Tuosto v. Philip Morris USA Inc.*, No. 5 Civ. 9384 (PKL), 2007 U.S. Dist. LEXIS 61669, at *14 (S.D.N.Y. Aug. 21, 2007) ("*Noerr-Pennington* has also been applied to bar liability in state common law tort claims, including negligence and products liability claims, for statements made in the course of petitioning the government"); *Dr. Reddy's Labs, Ltd. v. Aaipharma, Inc.*, No. 01 Civ. 10102 (LAP), 2002 U.S. Dist. LEXIS 17287, at *39-40 (S.D.N.Y. Sept. 19, 2002) ("While *Noerr-Pennington* has traditionally applied to antitrust claims, courts have expanded use of the

doctrine to encompass state law tort claims that arise from government action."). Plaintiff has not bothered to respond to these arguments or present any contrary authority.[2]

## II. Plaintiff Misconstrues and Misapplies "Footnote 3" Regarding "Purpose and Character" Evidence

Plaintiff's argument is premised largely on footnote three of the *Pennington* decision, which suggests an evidentiary caveat to the doctrine's provision of immunity from liability for lobbying conduct. Although this footnote discusses, in theory, the notion that lobbying activity may "be introduced if it tends reasonably to show the purpose and character of the particular transactions under scrutiny," there is widespread agreement that this caveat is and must be limited. *See e.g.*, Robert P. Faulkner, *Evidence of First Amendment Activity at Trial: The Articulation of a Higher Evidentiary Standard*, 42 UCLA L. Rev. 1, 30 (1994) (citing *U.S. v. Johns Manville Corp.*, 259 F. Supp. 440, 443 (E.D. Pa. 1966) (arguing for a heightened evidentiary standard to protect First Amendment rights, notwithstanding the 'rather infamous Footnote 3'").[3] Ignoring this, Plaintiff's mechanical and misguided interpretation of this footnote seeks to eviscerate the rule and erode important constitutional protections that the rule was explicitly crafted to safeguard.

---

[2] Plaintiff's discourse on Fed. R. Evid. 402 and 403 does nothing to rebut ExxonMobil's argument for the instant order *in limine*, nor does it somehow establish the admissibility of the subject evidence here. The Federal Rules of Evidence are not in conflict with the *Noerr-Pennington* doctrine. *Noerr's* protection is rooted in the First Amendment, and establishes that protected lobbying activity cannot serve as the basis for tort liability. There is nothing in Rules 402 and 403 that overrides this protection.

[3] Other scholars and courts have echoed this same concern. *See e.g.* Daniel R. Fischel, *Antitrust Liability for Attempts to Influence Government Action: The Basis and Limits of the Noerr-Pennington Doctrine*, 45 U. Chi. L. Rev. 80, 121 (1977-78) ("For courts to exercise this right and admit evidence of conduct not in itself unlawful to show the anticompetitive purposes of other acts would seriously undermine the protection afforded by *Noerr*."); *Lamb Enters. v. Toledo Blade Co.*, 461 F.2d 506 (6th Cir. 1972).

3

In particular, Plaintiff ignores authority that establishes the need for such a limitation in light of the chilling effect the introduction of evidence concerning lobbying activity may have on First Amendment rights. Because the admission of *Noerr*-protected evidence – even for a limited purpose – can undermine a party's constitutional rights, it has been held that "the exclusion of 'purpose and character' evidence consisting of conduct clearly embraced should be the rule rather than the exception..." *U. S. Football League v. Nat. Football League*, 634 F. Supp. 1155, 1180-81 (S.D.N.Y. 1986). Such evidence "by its very nature chills the exercise of First Amendment rights, [and] is properly viewed as presumptively prejudicial." *Id.*, citing *Feminist Women's Health Ctr. v. Mohammed*, 586 F.2d 530, 543 n.7 (5th Cir. 1978) (holding evidence inadmissible where evidentiary value was "far outweighed" by defendants' First Amendment interests); *see also Schwab v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 992 1084 (E.D.N.Y. 2006) (motions *in limine* appropriate with respect to evidence that may qualify for protection under *Noerr-Pennington*); *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, MDL 99, 1995 WL 509666 at *2 (N.D. Ill. Aug. 18, 1995) (noting that plaintiffs must "address significant evidentiary concerns," including risk of undue prejudice, if they intend to introduce evidence of lobbying activities).

But Plaintiff's argument that evidence of ExxonMobil's lobbying activity is relevant to demonstrate the "purpose and character" of Defendant's conduct does more than just ignore the presumptively prejudicial nature of the evidence it seeks to introduce. Plaintiff's allegations and argument betray its statement that it hopes to introduce this evidence to support a "fraud-on-the-EPA" theory in support of its TSCA, product liability, failure to warn and conspiracy claims. *See, e.g.* Opp. at 3, 7. Of course, this gambit is also forbidden under the law.

In *Buckman Co. v. Plaintiff's Legal Committee*, 531 U.S. 341 (2001), the United States Supreme Court held that a party in a tort action cannot prove fraud on an agency in a way that might invalidate agency action because such assertions are preempted. In other words, the Environmental Protection Agency ("EPA") is the proper entity to determine whether it was defrauded, and as a consequence that its regulations were invalid, in light of the power vested in the EPA to police frauds allegedly committed against it.[4] Accordingly, here, only the EPA is vested with the power to judge whether ExxonMobil's alleged conduct was fraudulent. *See e.g., Silver v. Nat'l Presto Indus. Inc.*, 884 F.2d 1393 (6th Cir. 1989). Of course, the EPA has never made such a determination. Therefore, a proffer of evidence that ExxonMobil somehow defrauded the EPA by misrepresenting MTBE's characteristics is improper because it commits to the jury the responsibility to decide whether the EPA would have taken remedial measures that would have prevented the alleged injury. Indeed, federal law expressly precludes a private individual from seeking to police fraud allegedly perpetrated against a government agency under state law. *See Buckman*, 531 U.S. at 347-52.[5]

---

[4] *See* National Environmental Policy Act of 1969, 42 U.S.C. §4321 *et seq.*; Reorganization Plan No. 3 of 1970, U.S.C.C.A.N., 91st Congress (2d session, Vol. 3, 1970); 40 C.F.R. §§ 22.1 *et seq.*; 40 C.F.R. §§ 179.3 *et seq.*; *Dow Chem. Co. v. U.S.*, 476 U.S. 227, 233, 106 S. Ct. 1819, 1824 (1986) ("Regulatory or enforcement authority generally carries with it all the modes of inquiry and investigation traditionally employed or useful to execute the authority granted."); *Nathan Kimmel Inc. v. DowElanco*, 275 F.3d 1199, 1205 (9th Cir. 2002) (holding that Congress has afforded the EPA "substantial enforcement powers" enabling it to make "a measured response to suspected fraud against it.").

[5] While the Second Circuit's decision in *Desiano v. Warner-Lambert & Co.*, 467 F.3d 85 (2d Cir. 2006), *aff'd by equally divided Court sub nom. Warner-Lambert Co. v. Kent*, --- U.S. ---, 128 S. Ct. 1168 (2008), might be read as limiting the *Buckman* doctrine to cases where the alleged fraud on the agency (as opposed to some other tort) was the actual claim, Plaintiffs here have raised conspiracy allegations that are no different in kind from the sort of fraud-on-an-agency allegations that *Buckman* clarifies are expressly preempted. *See* Sixth Am. Compl. ¶197-200. And even if *Desiano* supported an argument that Plaintiffs' allegations are not preempted, the longevity of that decision is questionable: the Supreme Court affirmed *Desiano* without opinion

Thus, Plaintiff should not be permitted to thwart the protections of the *Noerr-Pennington* doctrine under the auspices of the overly expansive and suspect footnote three to the *Pennington* decision. Nor should the Court allow a jury to decide whether the EPA was defrauded in violation of the Supreme Court's holding in *Buckman*.

### III. No Exception To The *Noerr-Pennington* Doctrine Applies To This Case

Plaintiff asserts that ExxonMobil's alleged misrepresentations and omissions to federal and state governments, as well as the EPA, serve to create an exception to the *Noerr-Pennington* protection. Plaintiff ignores both the authority presented in ExxonMobil's Motion which address this issue (Motion at 5-6), **as well as the holdings of the very cases it cites in support of its position.** Opp. at 7. Plaintiff's "spin" with respect to these arguments underscores the weakness of its position.

Specifically, Plaintiff contends that ExxonMobil's "misrepresentations and omissions" during its petitioning of the government presents an exception to the doctrine because it was allegedly "illegal, corrupt, or unethical." Opp. at 7. This argument ignores black letter law – including that upon which Plaintiff relies for this argument. Plaintiff cites *Tuosto* for the proposition that allegedly false statements to the government satisfy the "unethical exception" to the doctrine. Opp. at 7. However, the court in *Tuosto* held that allegedly false and fraudulent statements made in the course of petitioning the government are protected by *Noerr-Pennington*. Indeed, the court expressly held that "*Noerr-Pennington* protection has been extended to all advocacy intended to influence government action, *including to allegedly false statements*. Even statements that may 'fall far of the ethical standards generally approved in this country' are

---

by an equally divided Court, with Chief Justice Roberts not participating. *See Kent*, 128 S. Ct. 1168.

protected by the *Noerr-Pennington* doctrine if they are made in the course of petitioning the government." *Tuosto*, 2007 U.S. Dist. LEXIS at ** 15-16 (citations omitted) (emphasis added). The remaining authority cited by Plaintiff holds the same. See *Cipollone v. Liggett Group, Inc.*, 668 F. Supp. 408, 410-11 (D.N.J. 1987) (holding that bribery not protected by *Noerr-Pennington*, but furnishing false and misleading information to Congress *is* protected politival speech); *Friends of Rockland Shelter Animals, Inc. v. Mullen*, 313 F.Supp.2d 339, 343-44 S.D.N.Y. 2004) (holding that "[e]ven lobbying activities that are unethical or result in deception are not actionable under the *Noerr-Pennington* doctrine" in dismissing plaintiff's claim).

Nor can Plaintiff establish that ExxonMobil engaged in "sham" petitions to the government, *i.e.* those that take advantage of the lobbying process itself, as opposed to the outcome of the process, to cause direct harm to Plaintiff. *See Real Estate Investors v. Columbia Pictures*, 508 U.S. 49, 56-59 (1993). Plaintiff has not, and certainly cannot, claim ExxonMobil engaged in a "sham" lobbying effort. In fact, Plaintiff's alleges the opposite – that the lobbying activity that ExxonMobil allegedly undertook was specifically designed to influence the outcome of government action – namely to promote the sale and use of MTBE to the government –not abuse the lobbying process itself or foreclose Plaintiff from the same access. *See* Fourth Amend. Compl. at 109. Accordingly, the "sham" exception to the *Noerr-Pennington* has no application whatsoever to the instant case.

## CONCLUSION

Because Plaintiff has: (1) misconstrued and mischaracterized relevant law, (2) mischaracterized its own pleadings and allegations; (3) failed to articulate that an exception to the *Noerr-Pennington* doctrine applies to the instant case; and (4) failed to address the salient

arguments in Defendant's Motion, Defendant respectfully submits that its Motion should be granted in its entirety.

Dated: New York, New York
June 2, 2009

Respectfully submitted,

*[signature]*

McDERMOTT WILL & EMERY LLP
Peter J. Sacripanti (PS 8968)
James A. Pardo (JP 9018)
Stephen J. Riccardulli (SR 7784)
Lauren E. Handel (LH 0755)
340 Madison Avenue
New York, NY 10173-1922

Jennifer Kalnins Temple (JK 3274)
18191 Von Karman Avenue, Suite 500
Irvine, CA 92612-7108
Tel: (949) 757-7128
Fax: (949) 851-9348

*Attorneys for the Exxon Mobil Corporation Defendants*