# EXHIBIT H

Dockets.Justia.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE METHYL TERTIARY BUTYL ETHER PRODUCTS LIABILITY LITIGATION<br><br>**This document pertains to:**<br><br>*City of New York v. Amerada Hess Corporation, et al.,* No. 04 Civ. 3417 (SAS) | Master File No. 1:00-1898<br>MDL 1358 (SAS)<br>M21-88 |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF JOINT MOTION *IN LIMINE* TO PRECLUDE EVIDENCE REGARDING TRADE-ASSOCIATION ACTIVITIES UNTIL AND UNLESS PLAINTIFFS ESTABLISH PREDICATE FACTS**

Plaintiff City of New York ("City" or "Plaintiff") alleges that Defendants participated in a civil conspiracy to conceal certain information about MTBE. Plaintiff claims that Defendants furthered this alleged conspiracy through one or more trade associations and seeks to hold Defendants liable for the actions of those trade associations and their various members. But a jury could not properly find that a conspiratorial agreement existed based upon Defendants' mere membership in a trade association; instead, Plaintiff must show that: (1) the trade association(s) possessed unlawful goals, and (2) each Defendant had a specific intent to further those illegal aims. *See NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 920 (1982); *Pfizer Inc. v. Giles (In re Asbestos Sch. Litig.)*, 46 F.3d 1284, 1290 (3d Cir. 1994) (Alito, J.).

Unless the jury in this case could *properly* impute trade-association conduct to Defendants, evidence about that conduct is irrelevant and prejudicial and, therefore,

1

inadmissible. *See* Fed. R. Evid. 401, 402 and 403.[2] Absent careful screening of the evidence, a jury might impermissibly find Defendants liable by association – in violation of the First Amendment – rather than on Defendants' own conduct. The Court, therefore, should preclude Plaintiff from introducing evidence of, or making argument about, alleged activities or conduct of the American Petroleum Institute ("API"), the Oxygenated Fuels Association ("OFA"), the MTBE Committee and/or any other industry trade association unless and until Plaintiff first shows that the trade association's activities are imputable to Defendants under the governing law.

## FACTUAL BACKGROUND

Plaintiff's Fourth Amended Complaint seeks to hold Defendants liable for using MTBE, which Plaintiff alleges impacted certain of its water supply wells. Plaintiff alleges, among other things, that Defendants' membership in certain trade associations[3] establishes a civil conspiracy and supports a finding that they are liable for the allegedly tortious acts of other MTBE gasoline

---

[2] Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Under Federal Rule of Evidence 402, "[e]vidence which is not relevant is not admissible." The party seeking to admit the evidence "has the burden of showing that the prerequisites for its admissibility are met." *Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627, 632 (2d Cir. 1994). Even if relevant, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

[3] Notably, membership in the various trade associations is not identical as between the Defendants. For example, while the pre-merger Exxon Corporation may have been a member of a given trade association, the pre-merger Mobil may have elected not to join. Furthermore, both companies may have foregone membership in a given trade association. Put simply, membership cannot be presumed as to any Defendant, but, rather, must be established by Plaintiff prior to the proffer of "trade association evidence" to satisfy the requirement(s) of Federal Rule of Evidence 401. Accordingly, where Plaintiff seeks to present evidence of trade association activity at trial, it must first establish the bare fact of a Defendant's membership in the same.

manufacturers and sellers. (*See* Fourth Am. Compl., ¶¶ 86, 95, 98, 99, 104-107, 111-112, 149-155) Specifically, Plaintiff alleges that Defendants and other MTBE gasoline manufacturers "secretly shared with one another their knowledge of the dangers and risks posed by manufacturing, marketing, distributing, designing, supplying, and selling the Products,[4] as well as their knowledge of leaking underground storage tanks, within other ways, the confines of private trade associations such as API." (*Id.* at ¶ 95) Then, Plaintiff contends, these MTBE gasoline manufacturers intentionally withheld information, suppressed industry research, and/or intentionally made misrepresentations about MTBE's safety in order to advance the industry-wide conspiracy. (*Id.* at ¶¶ 98-99, 104-107). Interestingly, according to Plaintiff, actual trade association membership is/was not a predicate for culpability to inure to a Defendant for allegedly tortious trade association activities – rather, Plaintiff contends, "[d]efendants who were not actual members of the MTBE Committee benefitted from, and publicly and/or silently consented to, the Committee's actions and representations." (*Id.*, at ¶ 104.)

The Court has addressed such conspiracy allegations before in these cases. In its recent causation decision, the Court specifically noted that Plaintiffs sought to use evidence of trade-association activities to establish liability: "[Plaintiffs] assert that evidence regarding...lobbying activities *by an industry association* that may have concealed known risks associated with MTBE, establish that [Defendants] acted in concert or pursuant to a tacit agreement." *See County of Suffolk v. Amerada Hess Corp. (In re MTBE Prods. Liability Litig.)*, No. 04-cv-5424, 2008 U.S. Dist. LEXIS 38792, at *54-55 (S.D.N.Y. May 13, 2008) (emphasis added). Importantly, in that decision, the Court held that Plaintiffs had failed to produce evidence

---

[4] Plaintiff defines the "Products" as MTBE; all petroleum products containing MTBE; and any degradation byproducts of commercial grade MTBE, including but not limited to tertiary butyl alcohol. (4th Am. Compl. ¶ 68.)

"sufficient to support the conclusion that all refiner defendants participated in a common plan to conceal the risks of MTBE from the public." *Id.* at *58.

## LAW AND ARGUMENT

It is well established that a party cannot be held liable based solely on its membership in an association, some members of which committed a tortious act. *Claiborne Hardware*, 458 U.S. at 920. This rule stems from the First Amendment, which precludes the imposition of "liability on an individual solely because of his association with another." *Id.* at 918-19. It also recognizes the practical notion that a "member of a trade group or other similar organization does not necessarily endorse everything done by that organization or its members." *Pfizer*, 46 F.3d at 1290. Given these constitutional and practical considerations, the United States Supreme Court held that "[f]or liability to be imposed by reason of association alone, it is necessary to establish that the group itself possessed unlawful goals and that the individual held a specific intent to further those illegal aims." *Claiborne Hardware*, 458 U.S. at 920.

The Supreme Court also "emphasized that this intent must be judged 'according to the strict law.'" *Id.* at 919 (quoting *Noto v. United States*, 367 U.S. 290, 299-300 (1961)). Thus, "[a]ttendance at a meeting of an organization does not necessarily signify approval of *any* of that organization's activities." *Pfizer*, 46 F.3d at 1290 (emphasis in original) (holding that attendance by three of four of Pfizer's in-house attorneys not sufficient to show Pfizer's intent to further illegal aims); *see also Taylor v. Airco, Inc.*, 503 F. Supp. 2d 432, 446-47 (D. Mass. 2007) (defendants not responsible for actions of an association just because the defendants "sent representatives to meetings and conferences"). Nor can donations to a trade union satisfy the intent requirement, because donations do not establish an illegal purpose; they are just as likely to reflect a general purpose or a specific legal purposes of the trade association. *Pfizer*, 46 F.3d at 1290. This federal law comports with New York law, under which parallel activity of

4

association members alone is insufficient evidence of a conspiracy. *See Hymowitz v. Eli Lilly & Co.*, 539 N.E.2d 1069, 1074-75 (N.Y. 1989); *see also County of Suffolk*, 2008 U.S. Dist. LEXIS 38792, at *54-56 (holding that parallel activity alone "does not constitute a common plan" to support a concert of action theory).

Then-Judge Alito's decision in *Pfizer* illustrates how this "strict law" applies in practice. The court in *Pfizer* granted a writ of mandamus vacating the trial court's ruling that an asbestos manufacturer may be liable under conspiracy and concert-of-action theories based on its financing and conduct in an industry trade group that had allegedly disseminated false information about the hazards of asbestos. *Pfizer*, 46 F.3d at 1290. The Third Circuit held that the district court "was clearly wrong" when it denied Pfizer's motion for partial summary judgment on the conspiracy and concert-of-action claims because the plaintiffs based those claims solely upon Pfizer's association with the Safe Buildings Alliance ("SAB"), a lobbying and public education organization. *Id.* at 1294. Further, the Third Circuit determined that the district court's decision threatened Pfizer's First Amendment rights:

> The district court's holding suggests Pfizer—based solely on its limited and (as far as the record reflects) innocent association with the SBA—could be held liable, as the plaintiffs have urged, for all of the allegedly tortious acts committed by all of the defendants, whether before or after the SBA was formed. The implications of such a holding are far-reaching. Joining organizations that participate in public debate, making contributions to them, and attending their meetings are activities that enjoy substantial First Amendment protection. But the district court's holding, if generally accepted, would make these activities unjustifiably risky and would undoubtedly have an unwarranted inhibiting effect upon them.

*Id.* (internal citations omitted).[5]

---

[5] The *Pfizer* court relied heavily on *Claiborne Hardware*, in which activists boycotted allegedly racist businesses, some resorting to violence. The Supreme Court refused to hold all boycott members liable for the violence because "[t]here is a 'profound national commitment' to the

5

Defendants' participation in certain organizations and/or trade associations enjoys the same First Amendment protections, and imposing liability for that participation would likewise be unconstitutional. Hence, unless Plaintiff satisfies the strict standards for imputing a trade association's activities to its members – *i.e.*, that the association itself had unlawful goals and that Defendants specifically intended to further those goals – evidence regarding the alleged conduct or activities of the API, OFA, MTBE Committee and similar trade organizations has no bearing on ExxonMobil's alleged liability in this case. Permitting Plaintiff to introduce evidence of trade-association activities before first proving the predicate facts justifying imputation to Defendants would be unduly prejudicial, creating a risk that the jury would decide the claims against Defendants based on the conduct of a non-party, or of other defendants, rather than on Defendants' own actions. Such "[g]uilt by association is just what Fed. R. Evid. 403 was intended to exclude." *United States v. Wassner*, 141 F.R.D. 399, 405 (S.D.N.Y. 1992).

The Eighth Circuit recognized the problem of permitting a jury to consider the alleged misdeeds of a defendant's associates without proof linking the defendant to those misdeeds. *See United States v. Flynn*, 852 F.2d 1045 (8th Cir. 1988). The court was "disturbed" by the district court's admission of evidence of the crimes of the defendant's associates without "linking" the defendant "to these acts." *Id.* at 1054. The court held that admission of "every bad act of an enterprise, including those in which the defendant does not participate,…magnifies the potential for imputing guilt to a defendant solely on the basis of the company he keeps[,] and Fed. R. Evid.

---

principle that 'debate on public issues should be uninhibited, robust, and wide-open." 458 U.S. at 913 (citation omitted). The Third Circuit in *Pfizer* recognized that "the constitutionally protected conduct in *Claiborne Hardware* was of much greater social importance" than the asbestos manufacturer's participation in a trade association, but "nothing in the Supreme Court's opinion . . . lends support to the suggestion that the standard it enunciated was not meant to have general applicability." *Pfizer*, 43 F.3d at 1291.

403 is implicated." *Id.*[6] The rationale is no different in the civil context; liability by association is no less offensive to the First Amendment than guilt by association—especially when, as here, the civil claims include punitive damages.

Given the risk of prejudice, the Court should preclude Plaintiff from introducing evidence or argument about any particular trade association's activities until Plaintiff first proves, under the standard set forth in *Claiborne Hardware*, the predicate facts from which a jury could impute those activities to Defendants.

## CONCLUSION

For the foregoing reasons, the Court should issue an order precluding any direct or indirect mention before the jury of the activities of API, OFA, MTBE Committee, or other trade association unless Plaintiff first establishes by competent, admissible evidence, facts sufficient to prove that (1) the trade association(s) possessed unlawful goals; and (2) Defendants held a specific intent to further those illegal aims.

---

[6] *Accord United States v. Lopez-Mendina*, 461 F.3d 724, 741-42 (6th Cir. 2006) (guilt-by-association evidence violates Rules 401, 402 and 403); *United States v. Polasek*, 162 F.3d 878, 887 (5th Cir. 1998) ("we repeatedly have characterized guilt by association evidence as 'highly prejudicial' and 'damaging'") (citations omitted); *United States v. McAfee*, 8 F.3d 1010, 1018 (5th Cir. 1993) ("It is the practice of this Circuit to exclude highly prejudicial evidence that attempts to taint a witness's character through guilt by association.").

7

Dated: New York, New York
May 11, 2009

Respectfully submitted,

*[signature]*

Peter John Sacripanti (PS 8968)
James A. Pardo (JP 9018)
Stephen J. Riccardulli (SR 7784)
Lauren Handel (LH 0755)
MCDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, New York 10173

*Attorneys for Exxon Mobil Corporation and on behalf of all remaining Defendants*

[PAGE INTENTIONALLY LEFT BLANK]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE METHYL TERTIARY BUTYL ETHER
PRODUCTS LIABILITY LITIGATION

This document pertains to:

*City of New York v. Amerada Hess Corp., et al.,*
No. 04 Civ. 3417 (SAS)

Master File No. 1:00-1898
MDL 1358 (SAS)
M21-88



Jun 2 2009
9:46PM

**DEFENDANT EXXON MOBIL CORPORATION'S REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE EVIDENCE REGARDING TRADE-ASSOCIATION ACTIVITIES UNTIL AND UNLESS PLAINTIFF ESTABLISHES PREDICATE FACTS**

# INTRODUCTION

First Amendment law is absolutely clear: a member of a trade association may not be held liable for the activities of that trade association unless (1) the trade association possessed unlawful goals, and (2) the member held a specific intent to further those illegal aims. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 920 (1982); *Pfizer Inc. v. Giles (In re Asbestos Sch. Litig.)*, 46 F.3d 1284, 1290 (3d Cir. 1994). This stringent standard is required to prevent an illegal finding of guilt by association. Thus, Defendant Exxon Mobil Corporation ("ExxonMobil") has a Constitutional right to join trade associations without fear of civil liability for the action of such trade associations' or other members' wrongful activities, in the absence of evidence meeting the *Claiborne Hardware* test.

Unable to refute this legal premise, plaintiff City Of New York ("Plaintiff") responds with two basic arguments, but neither of them defeats ExxonMobil's motion *in limine*. Indeed, neither squarely addresses the argument presented by ExxonMobil, nor the order which this motion seeks.

*First*, Plaintiff urges that ExxonMobil's membership in trade associations is admissible for reasons unrelated to guilt by association, such as proving ExxonMobil's knowledge of the properties of methyl tertiary butyl ether ("MTBE") or proving facts establishing that MTBE is a defective product. But that sort of evidence has nothing to do with the guilt-by-association evidence at issue on this motion. While ExxonMobil preserves all evidentiary objections that it may assert at trial regarding such evidence, the order *in limine* it now seeks is quite narrow and does not reach the categories of evidence Plaintiff describes.

*Second*, Plaintiff contends that certain trade association evidence is admissible as a party admission. This argument misses the mark as well. Whether trade association evidence may (or may not) be ultimately defined as non-hearsay is of no moment to *this* motion *in limine*, and

Plaintiff's attendant argument is simply an effort to distract this Court from the focus of ExxonMobil's motion. Nor does Plaintiff's catalogue of "exhibits" and explication of Fed. R. Evid. 802 suffice to make the two predicate findings required under *Claiborne Hardware*. All Plaintiff has established with its pretrial submission is that ExxonMobil may have been a member of a given trade association. However, the effort to convince the Court that its evidence is sufficient confirms ExxonMobil's fear that Plaintiff will seek to elide the issues and to hold ExxonMobil liable for its mere association with trade groups. That is precisely why the Court should exclude evidence of alleged trade-association misconduct unless and until Plaintiff introduces evidence meeting the predicate *Claiborne Hardware* test.

## ARGUMENT

### I. PLAINTIFF MISCHARACTERIZES THE SCOPE OF EXXONMOBIL'S MOTION.

Plaintiff mischaracterizes ExxonMobil's motion, and claims it "fails to specify what evidence is at issue." Pltf's. Opp. at 2. However, the sort of evidence targeted by ExxonMobil's motion is fairly narrow, and has been clearly defined. First, ExxonMobil does not argue that "evidence vaguely related to trade associations cannot be relevant unless and until the City can meet the elements of a civil conspiracy cause of action." *Id.* ExxonMobil acknowledges that proof of its membership in a trade association may be the foundation for some evidence. Indeed, membership is one of the predicate facts that Plaintiff must establish before even reaching the evidence this motion seeks to preclude—**evidence regarding the wrongful conduct of the trade association and/or its other members.** *See Claiborne Hardware Co.*, 458 U.S. at 920.

ExxonMobil's motion does not seek to preclude evidence of its membership in any trade association, information contained in trade association documents, or evidence of purported state of the art. ExxonMobil reserves all objections to the admissibility of such evidence until the

3

time of trial. Rather, ExxonMobil expressly focuses its motion on the attempted introduction of evidence or argument as to the alleged *conduct or activities* of a trade association. See Def. Motion at 2, 6, 7. ExxonMobil has highlighted the evidence it targets – that which Plaintiff must offer to establish *as fact* the alleged "secret[] shar[ing] with one another the[] knowledge of the dangers and risks of manufacturing [and] marketing" MTBE, "as well as the[] knowledge of leaking underground storage tanks;" and that which Plaintiff aims to present to show that ExxonMobil "intentionally withheld information, suppressed industry research, and/or intentionally made misrepresentations about MTBE's safety in order to advance the industry-wide conspiracy." Def. Motion at 3.

## II. PLAINTIFF MAY NOT USE EVIDENCE OF TRADE-ASSOCIATION ACTIVITIES TO FURTHER THEIR ACTING-IN-CONCERT ALLEGATIONS UNLESS THOSE ACTIVITIES MEET THE *CLAIBORNE HARDWARE* TEST.

### A. ExxonMobil Seeks an Orderly Presentation of Proof to Avoid Unfair Prejudice— Not Outright Exclusion of the Challenged Evidence.

ExxonMobil focuses its motion, discretely, on evidence regarding the alleged *misdeeds* of trade associations that Plaintiff would seek to impute to ExxonMobil via a concert-of-action or conspiracy theory. Importantly, ExxonMobil does not seek to exclude this evidence definitively; rather, ExxonMobil wants to ensure that the jury hears this evidence *only if* Plaintiff first introduces evidence from which the jury could permissibly find the two predicate facts under *Claiborne Hardware* and *Pfizer*. Unless Plaintiff establishes those predicate facts, a finding of liability based on trade-association activity would violate ExxonMobil's First Amendment right of free association. The jury should not hear the challenged evidence unless Plaintiff first makes the necessary predicate showing. That is the only way to ensure that the evidence does not improperly infect the jury's verdict if Plaintiff *fails* to make the predicate showing.

4

The dividing line between the challenged evidence and the type of evidence identified in Section I is clear: if the evidence relates to alleged misconduct of a trade association or another trade-association member, it can have no relevance unless ExxonMobil could legally be held responsible for the trade association or that third party's conduct. And the only way to satisfy the Constitutional, relevancy, and prejudice concerns is to require Plaintiff to meet the two-part *Claiborne Hardware* test, *see Claiborne Hardware Co.*, 458 U.S. at 920; *Pfizer Inc.*, 46 F.3d at 1290, *before* attempting to introduce evidence of a third party's alleged misconduct.

B.  The *Claiborne/Pfizer* Test Applies To Plaintiff's Claims.

Evidence of the conduct of a trade association or its members triggers *Claiborne*. Plaintiff urges that "evidence of statements of trade associations to government regulators and the public...are admissible as non-hearsay against defendants as 'statement[s] by a person authorized by the party to make a statement concerning the subject' under Rule 801(d)(2)(C)." Pltf's. Opp. at 5.[1] This may or may not be true, depending on the particulars of the evidence proffered. But the Federal Rules of Evidence are not at issue here; nor are they in tension with the holding of *Claiborne*. Indeed, the important rights in question in this motion arise under "the First Amendment, which is the supreme law of the land," *see Smith v. California*, 361 U.S. 147, 157 (1959).

C.  Nothing in The Federal Rules Of Evidence Conflicts With ExxonMobil's First Amendment Rights.

Plaintiff points to nothing in the Rules of Evidence that is in tension with the *Claiborne Hardware* or *Pfizer* decisions. Civil conspiracy in New York requires a plaintiff to establish:

---

[1] ExxonMobil addresses Plaintiff's potential introduction of evidence of protected petitioning activity – which can include statements to "government regulators" – as a basis for its tort claims in its separate *Motion In Limine To Exclude Evidence of Protected Lobbying Conduct*. Accordingly, we do not re-argue the propriety of such a proffer of evidence here, and instead respectfully refer the Court to that Motion.

5

"(1) an agreement to participate in an unlawful act or a lawful act in an unlawful means; (2) an overt act performed in furtherance of the scheme; and (3) an injury caused by the overt act." *In re MTBE Prods. Liab. Litig.*, 175 F. Supp. 2d 593, 633 (S.D.N.Y. 2001). These requirements are perfectly harmonious with First Amendment law. So, too, are the Rules of Evidence. Neither Rule 801 nor Rule 104 provide Plaintiff some detour around what must be shown before imputing a trade association's activities to its members – *i.e.* that the association itself had unlawful goals and that ExxonMobil specifically intended to further that goal.

Indeed, both *Pfizer* and *Claiborne Hardware* may be seen as further mechanisms to deal with the admission of evidence. The Third Circuit in *Pfizer* ensured that evidence regarding the wrongful acts of a trade association never reached the jury unless the plaintiffs satisfied the *Claiborne Hardware* test. *Pfizer*, 46 F.3d at 1290. The Third Circuit thought the issue so important that it granted mandamus to reverse the district court's denial of the defendant's partial summary judgment on conspiracy and concert-of-action claims based on the defendant's membership in a trade association—a denial that would have allowed such trade-association evidence to be introduced as proof of liability of one of its members. *See id.* at 1286-90. The Third Circuit held that "the issuance of a writ of mandamus is appropriate to prevent the harm to First Amendment rights that would occur *if review of the district court's decision had to wait until a final judgment is entered* in this protracted litigation." *Id.* at 1286 (emphasis added).

Likewise, the Supreme Court in *Claiborne Hardware* reversed the judgment against certain defendants based on the erroneous admission of evidence. *Claiborne Hardware*, 458 U.S. at 933-34. In *Claiborne Hardware*, the trial court tried claims against 148 named defendants, but the plaintiffs established that only 16 of them participated in the acts of violence giving rise to the plaintiffs' alleged damages. *Id.* at 890, 897-98. The Supreme Court held that

6

evidence of violent acts, while admissible against the group of violent defendants, was not admissible against the non-violent group merely because both groups belonged to the same association. *Id.* at 933 ("The taint of violence colored the conduct of some of the petitioners. They, of course, may be held liable for the consequences of their violent deeds. The burden of demonstrating that it colored the entire collective effort, however, is not satisfied by evidence that violence occurred or even that violence contributed to the success of the boycott.").

### III. PLAINTIFF HAS NOT SHOWN THE PREDICATE FACTS NECESSARY FOR INTRODUCING TRADE-ASSOCIATION EVIDENCE.

Whatever evidence Plaintiff presents of ExxonMobil's membership in an MTBE Committee (Pltf's. Opp. at 5-7) does not meet the criteria set forth in *Claiborne Hardware*/Pfizer. Thus, while it may show ExxonMobil's membership in a trade association, it does little else. However, Plaintiff has alleged much more than membership. It has alleged, and must now prove, conspiracy. Indeed, Plaintiff has alleged that ExxonMobil can be liable for the "bad acts" of a trade association of which ExxonMobil was not even a member, where it "benefitted from, and publicly and/or silently consented to" the association's actions. Def. Motion at 3. Accordingly, it is what evidence Plaintiff does *not* offer here that is as telling as what it does.

Evidence showing ExxonMobil's intent to further the unlawful means of a trade association "must be judged 'according to the strict law.'" *Claiborne Hardware*, 458 U.S. at 919 (quoting *Noto v. United States*, 367 U.S. 290, 299-300 (1961)). Plaintiff's evidence, at most, shows that ExxonMobil (or its heritage companies) was a member of certain trade associations, sent employees to certain trade-associations meetings, and participated in an effort to discourse with the EPA on various issues regarding MTBE. The evidence does not show—or even suggest—that ExxonMobil (or its heritage companies) participated in illegitimate trade-

association activities, adopted the allegedly deceitful statements of the trade association, or even agreed with all of the conclusions (deceitful or otherwise) reached by the trade association. *See In re Welding Fume Prods. Liab. Litig.*, No. 1:03-CV-17000, 2007 U.S. Dist. LEXIS 80806 at *97 (N.D. Ohio. Oct. 30, 2007) ("'[C]ircumstances that are just as consistent with a lawful purpose as with an unlawful undertaking are insufficient to establish a conspiracy,' and it is certainly lawful to associate with other industry participants in trade organizations.") (quoting 15A C.J.S. *Conspiracy* § 37 (Feb. 2007)). Clearly, this evidence is insufficient to meet Plaintiff's burden of establishing a civil conspiracy by clear and convincing evidence. *U.S. v. Univis Lens Co.*, 88 F. Supp. 809, 813 (S.D.N.Y. 1950).

In fact, Plaintiff's evidence does not tell much of a story at all. Plaintiff first points to evidence of the formation and activities of the Oxygenated Fuels Association ("OFA"). Pltf's. Opp. at 5. Plaintiff then offers evidence that heritage Exxon and others met with a representative of OFA regarding the EPA's concerns with MTBE. Pltf's. Opp. at 6. Next, Plaintiff presents evidence that the OFA contacted a staffer at the EPA and informed her that OFA would be "representing producers of MTBE." *Id.* Plaintiff then offers evidence as to how heritage Exxon and others formed an MTBE Committee that was affiliated with – but not a part of – OFA, for the purpose of communicating with the EPA. *Id.* Finally, Plaintiff presents evidence that heritage Exxon informed the EPA that it would rely on the MTBE Committee to remain informed as to developments with MTBE testing. Pltf's. Opp. at 7. That is where evidence regarding ExxonMobil's involvement in the trade association simply stops.[2]

---

[2] Missing from Plaintiff's "evidence" is any suggestion that heritage Mobil was a member of these trade associations and/or that heritage Mobil intended to further the unlawful means of a trade association

8

None of this cited evidence establishes that the trade associations had unlawful goals or that heritage Exxon and/or ExxonMobil held a specific intent to further any illegal aims. And therein lies the danger: if Plaintiff purports to weave together so little "evidence," to then attempt to leap beyond the *Claiborne Hardware/Pfizer* criteria and color the consciousness of a jury with evidence of the misdeeds of nonparties or associations – to which ExxonMobil may or may not have a legitimate connection – and impute those actions to ExxonMobil to establish liability, ExxonMobil has been irreversibly prejudiced.

## CONCLUSION

The point of ExxonMobil's Motion *in Limine* is that allowing Plaintiff to put the cart before the horse would be unfairly prejudicial to ExxonMobil. Thus, this Court should exclude evidence regarding the allegedly wrongful conduct of a trade association as constitutionally inappropriate, irrelevant and unduly prejudicial unless and until Plaintiff shows that (1) the trade association(s) possessed unlawful goals, and (2) ExxonMobil held a specific intent to further those illegal aims. Plaintiff has not made that showing here; nor has Plaintiff shown why such an order *in limine* should not obtain.

June 2, 2009  
New York, New York

Respectfully submitted,

*[signature]*

Peter John Sacripanti (PS 8968)  
James A. Pardo (JP 9018)  
Stephen J. Riccardulli (SR 7784)  
Michael J. Dillon (MD 4553)  
McDermott Will & Emery LLP  
340 Madison Avenue  
New York, NY 10017-4613  
Tel. (212) 547-5400  
Fax 212) 547-5444

*Counsel for Defendant Exxon Mobil Corporation*