# EXHIBIT I –
# Part 2

Dockets.Justia.com

The City also tracked bills in Congress in March 2000 that would have prohibited "distribution of water contaminated with MTBE" by water purveyors and required "testing and remediation of contaminated water sources." In April 2000, the City was asked to provide comments to AWWA on a draft "position paper" calling for a ban on MTBE in gasoline. Comments submitted by City employees demonstrate their familiarity with MTBE issues:

> Is the problem so much the MTBE in the fuel? or that the fuel is leaking? or both? Clearly MTBE getting into water supplies (at least when it is at levels high enough to cause health or aesthetic concerns) is NOT a good thing, but petroleum in water supplies isn't a good thing either....

(LR 56.1 ¶ 31.)

Finally, the City was aware of the properties of MTBE and its potential effects on groundwater from another source: multiple environmental investigations of its own underground storage tanks that had leaked gasoline – and MTBE – into the Queens aquifer. (LR 56.1 ¶ 32.)

## ARGUMENT

Summary judgment should be granted if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of demonstrating the absence of any genuine issue of material fact initially rests on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, to defeat summary judgment, the non-moving party must go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "If the evidence is merely colorable..., or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The mere existence of some factual dispute is insufficient to defeat summary judgment; there must be a **genuine** issue of **material** fact. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

13

The City asserts eight causes of action, each seeking money damages as a result of its alleged injuries: (1) public nuisance; (2) strict liability for design defect; (3) strict liability for failure to warn; (4) negligence; (5) private nuisance; (6) violation of GBL § 349; (7) violation of the Navigation Law; and (8) trespass. Under the governing law, New York's three-year statute of limitations (CPLR 214, 214-c), there are no genuine disputes of material fact. For far more than three years prior to initiating this litigation, the City was aware of every fact it needed to assert all of its claims. The City knew that there was MTBE in the Queens system; it knew that its wells had been impacted by MTBE; it knew that it had taken wells out of service due to MTBE; and it knew that MTBE came from gasoline releases. Yet the City failed to file suit within the statutorily-mandated period. Summary judgment is warranted.

## I. CPLR 214-c BARS PLAINTIFFS' TORT CLAIMS.

Statutes of Limitations are an absolute bar to recovery. They "represent a legislative judgment that ... occasional hardship is outweighed by the advantage of barring stale claims." 1 Weinstein-Korn-Miller, NY Civil Practice, ¶ 201.01. *Accord Duffy v. Horton Mem. Hosp.*, 66 N.Y.2d 473, 476-77, 497 N.Y.S.2d 890, 893 (1985); *Connell v. Hayden*, 83 A.D.2d 30, 41, 443 N.Y.S.2d 383, 392 (2d Dep't 1981); *Chase Secs. Corp. v. Donaldson*, 325 U.S. 304, 314 (1945) (limitations periods "spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and the evidence has been lost"). Statutes of limitations apply with equal force to bar claims by the state, its subdivisions, and municipalities. CPLR 201; *City of Buffalo v. Watkins*, 422 N.Y.S.2d 563 (Sup. Ct. Erie Cty. 1979) (barring late-filed claim by municipality).[7]

---

[7] Although Defendants need not show prejudice to receive the protection of the limitations period, Mr. Ashendorff's testimony emphasizes the critical role the statute plays. When asked whether the City was informed that JWSC had detected MTBE prior to the 1996 acquisition, Mr. Ashendorff responded: "I don't recall. I really don't. This is ten years ago, the specifics of the

The New York Legislature has determined that a three-year window, measured from the time that the plaintiff first learned of its injury, is the appropriate time frame in which tort actions for property damage must be commenced. CPLR 214-c. The Legislature also has determined that for statutory claims, a three-year statute of limitations, measured from the time plaintiff first learns of its injury, is appropriate. CPLR 214(2). Because the City failed to file suit within these legislatively-mandated time frames, its claims are time-barred and subject to dismissal.

### A. The City Was Required to File Suit Within Three Years of Discovering Its Alleged Injuries.

CPLR 214(4) requires that an action to recover damages for injury to property "must be commenced within three years." CPLR 214-c(2) instructs how that three-year period is calculated in cases, like this one, that seek to recover for injury to property caused by exposure to contaminants:

> Notwithstanding the provisions of section 214, the three year period within which an action to recover damages for ... injury to property caused by the latent effects of exposure to any substance..., in any form, ... upon or within property must be commenced shall be computed from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier.

Accordingly, the City needed to file its tort claims within three years of the date it discovered or should have discovered its alleged injuries – *i.e.*, that the Queens groundwater system had been impacted by MTBE. *Kozemko v. Griffith Oil Co.*, 256 A.D.2d 1199, 682 N.Y.S.2d 503 (4th Dep't 1998) ("[t]he applicable Statute of Limitations for an action to recover damages for injury to property caused by petroleum contamination is three years, computed from the date of discovery of the injury or from the date when, through the exercise of reasonable diligence, such injury should have been discovered"); *Boswell v. Leemilt's Petroleum, Inc.*, 252

---

meetings, the discussions, what papers were transferred at that time or not transferred at that time. I honestly don't remember the details.... That's ten years ago." (LR 56.1 ¶ 11)

15

A.D.2d 889, 676 N.Y.S.2d 313, 314 (3d Dep't 1998) (in gasoline contamination case, "the claim must be deemed to have accrued when plaintiffs either knew or should have known that contamination had actually occurred by its entry onto their property"); *Jensen v. General Elec. Co.*, 82 N.Y.2d 77, 603 N.Y.S.2d 420 (1993) (CPLR 214-c applies to nuisance claims); *Williams v. Dow Chem. Co.*, 2004 U.S. Dist. LEXIS 10940, *11 n.1 (S.D.N.Y. 2004) ("CPLR 214-c applies to nuisance claims based on the exposure of property to hazardous materials").

### B. The City Has Known of Its Alleged Injury for More Than a Decade.

In a tort action, "accrual occurs when the claim becomes enforceable, *i.e.*, when all elements of the tort can be truthfully alleged in a complaint." *Snyder v. Town Insulation, Inc.*, 81 N.Y.2d 429, 432, 599 N.Y.S.2d 515, 516 (1993). Put another way, "[a]ll that is necessary to start the limitations period is that plaintiff be aware of the *primary condition* for which damages are sought." *Whitney v. Quaker Chem. Corp.*, 90 N.Y.2d 845, 847, 660 N.Y.S.2d 862, 863 (1997) (emphasis added); *In re N.Y. County DES Litig. (Wetherill v. Eli Lilly & Co.)*, 89 N.Y.2d 506, 655 N.Y.S.2d 862 (1997); *MRI Broadway Rental, Inc. v. United States Mineral Prods. Co.*, 92 N.Y.2d 421, 681 N.Y.S.2d 783 (1998). In an action alleging property damage from contamination, a plaintiff need only be aware that there has been some invasion of its property rights. *Oliver Chevrolet, Inc. v. Mobil Oil Corp.*, 249 A.D.2d 793, 794, 671 N.Y.S.2d 850, 851 (3d Dep't 1998). Here, once the City became aware of the primary condition forming the basis of its claims – that gasoline or MTBE had encroached upon its interests or property – the three-year limitations period began to run. *Id.*

In *Oliver*, the record showed that plaintiffs had been aware that gasoline had been discharged from a service station's tanks onto their property in 1973 and again in 1984, and that they had seen holes in the station's tanks, but they failed to file suit until 1994. Plaintiffs

claimed their action was timely because, although they had known of the earlier contamination, they did not know their groundwater had been contaminated until 1992. The court rejected plaintiffs' argument and found the claims time-barred under CPLR 214-c. The critical fact was plaintiffs' knowledge that their property had been impacted by gasoline: "even if plaintiff was not actually cognizant of the precise nature or extent of the damage when the spills were initially detected, it was unquestionably aware that some amount of leakage had occurred, and thus that there had been 'a wrongful invasion of ... [its] property rights.'" 249 A.D.2d at 794, 671 N.Y.S.2d at 851. The court reasoned that "even were we to embrace plaintiff's contention that the[ir] observations were insufficient to constitute actual knowledge of the injury, at the very least they should have placed a reasonable person on notice of the need to undertake further investigation to ascertain the scope of the contamination." Id. at 795, 671 N.Y.S.2d at 851.

Other decisions have reached the same result. See, e.g., Syms v. Olin Corp., 408 F.3d 95, 109-11 (2d Cir. 2005) (property damage claims time-barred where plaintiff had actual and constructive notice of contamination more than three years prior to filing suit); Di Stefano v. Nabisco, Inc., 282 A.D.2d 704, 724 N.Y.S.2d 444 (2d Dep't 2001) (property damage claim brought in 1996 was untimely where plaintiffs knew of contamination by 1992); Boswell, supra, 252 A.D.2d 889, 676 N.Y.S.2d at 314 ("the claim must be deemed to have accrued when plaintiffs either knew or should have known that contamination had actually occurred by its entry onto their property"). Accord In re N.Y. County DES Litig., 89 N.Y.2d 506, 655 N.Y.S.2d 862 (1997) (personal injury claim time-barred where plaintiff was aware of injuries more than three years before filing suit); Neri v. R.J. Reynolds Tobacco Co., 185 F. Supp. 2d 176 (N.D.N.Y. 2001) (personal injury claim time-barred where plaintiff had experienced shortness of breath for years, even though emphysema diagnosed within statutory period; "[t]he fact that [plaintiff's]

symptoms did not reach the point at which he thought it necessary to consult a doctor ... does not dictate otherwise"); *Tarazi v. Exxon Corp.*, 269 A.D.2d 385, 703 N.Y.S.2d 205 (2d Dep't 2000) ("[t]he time for bringing an action for exposure to a toxic substance begins to run under CPLR 214-c(2) when the injured party discovers the primary condition on which the claim is based"); *Chira v. Columbia Univ.*, 289 F. Supp. 2d 477, 484 (S.D.N.Y. 2003) (where plaintiff claimed multiple injuries from toxic exposure, "that some injuries did not manifest themselves until later or that the full extent of his damages were not known does not change the fact that his cause of action accrued earlier").

The record is clear that the City knew of the MTBE contamination in its interconnected Queens well system long before October 31, 2000, three years prior to the date it initiated suit. JWSC had detected MTBE in the wells in 1995. The City had detected at least trace levels of MTBE – levels for which it is now suing Defendants – in no fewer than 21 of its wells prior to October 2000.[8] The City continued to detect MTBE when it took over the JWSC system in 1996. City employees responsible for running the Queens system have had knowledge of MTBE impacts to that system since 1995, when they were JWSC employees, and they brought that knowledge with them when they went to work for the City in May 1996. Indeed, the record demonstrates that City employees even discussed taking legal action to recover damages incurred in connection with MTBE impacts as early as 1998. (LR 56.1 ¶ 20.) Having considered legal action in 1998, the City cannot be heard to say now that it did not know of or appreciate the MTBE contamination on which its claims are based here.

---

[8] The City has asserted claims for wells and groundwater impacted by *de minimis* levels of MTBE, in some cases at a fraction of New York's safe drinking water standards. Defendants vigorously dispute that the City has cognizable claims where levels of MTBE do not exceed New York State safe drinking water standards, because such detections do not rise to the level of an "injury-in-fact." *See* Defs.' Motion for Summary Judgment Based on Justiciability. However, if the City believed that such *de minimis* levels of MTBE were actionable, the Statute of Limitations required it to bring suit within three years of detecting those levels of MTBE.

18

Thus, the City knew all the pertinent information of the primary condition that it needed to commence running of the limitations period during which it needed to file suit – that its system had been impacted by MTBE – more than three years before it actually filed. Such knowledge bars the City from pursuing any claims concerning its long-ago contaminated and inter-connected Queens water supply system. But the City knew far more. The City was fully aware, more than three years prior to filing suit, not only of its alleged injuries, but of all the characteristics it claims render gasoline with MTBE "defective":

- An April 1997 MTBE "briefing document" noted that "**MTBE disperses rapidly in water and is less biodegradable than common gasoline hydrocarbons.... MTBE is highly mobile in soils and therefore will find its way into ground water.**" (LR 56.1 ¶ 13.) A May 19, 1998 e-mail indicates that "**MTBE is a fast moving contaminant,**" and that "**[a]ir stripping or G[ranular] A[ctivated] C[arbon] treatment is not very effective at removing MTBE.**" (LR 56.1 ¶ 18.)

- The City's 1999 Drinking Water "Planning Document" stated: "**Interest in MTBE became heightened when it was learned that the standard could be lowered from the present 50 ug/l to 10 ug/l... . Since MTBE is discharged into groundwater from leaking underground storage tanks or from spills, and this has the potential to be drawn into operating wells, frequent monitoring remains a priority.** (LR 56.1 ¶ 22.)

- The City's March 2000 "MTBE – An Overview" report stated: "MTBE has found its way into ground water supplies via leaking below and above ground gasoline storage tanks.... **Because of its solubility in water, MTBE travels through the aquifer faster than the other, less soluble, components of gasoline and is always the first component of gasoline to be detected....**" (LR 56.1 ¶ 24.)

Even though the limitations period was triggered years earlier by the City's indisputable knowledge of the primary condition – MTBE detections in its Queens well system – the City continued to learn more. The City was even aware of other product liability lawsuits relating to MTBE – *South Tahoe* and *Berisha* – prior to October 2000. DEP's drinking water personnel, particularly Mr. Lipsky, helped to direct 1997-98 AWWA studies that recognized that "**MTBE in drinking water could be a greater concern because of low-level, taste-and-odor**

19

**thresholds.... Very low levels of MTBE could cause severe taste-and-odor problems for utilities, requiring treatment to almost nondetectable levels....**" (LR 56.1 ¶ 28.) And finally, in March 2000, the City Council petitioned the Legislature to ban MTBE. (LR 56.1 ¶ 25.)

In short, the City knew all it needed to know to assert its claims (and more) by the late 1990s at the latest, but it failed to bring suit until October 31, 2003. Having failed to bring its claims in a timely fashion, those claims are barred by CPLR 214-c and should be dismissed.

### C. New York No Longer Recognizes The "Continuing Tort" Exception.

The City cannot salvage its untimely claims by arguing that it is entitled to recover damages incurred in the three years preceding its filing of this suit under a "continuing tort" theory. That theory is no longer viable under New York law for claims such as these. As the New York Court of Appeals concluded in *Jensen v. General Electric Co.*, 82 N.Y.2d 77, 88, 623 N.E.2d 547, 552 (1993), the Legislature eliminated the "continuing tort" or "daily accrual" exception to the Statute of Limitations when it enacted CPLR 214-c.

In *Jensen*, plaintiffs sought damages for groundwater contamination emanating from a factory that allegedly had impacted, and was continuing to impact, their property. The defendant moved to dismiss because plaintiffs had discovered their injury more than three years prior to filing suit. Plaintiffs contended that their claims were timely under the judicially-created "continuing tort" exception, but the Court of Appeals dismissed the claims, holding that "[b]y its terms," the three-year limitations period of CPLR 214-c(2) "applies to actions for 'damages for ... injury to property caused by the latent effects of exposure to any substance.' The all-encompassing sweep of the 'words chosen by the Legislature' leaves no room for judicial insertion of qualification or exceptions by interpretation, especially when the context and evolution of this historic legislation is examined." 82 N.Y.2d at 83, 623 N.E.2d at 549.

The Court in *Jensen* found that CPLR 214-c, enacted in 1986 to establish a "discovery rule" for personal injury and property cases involving exposure to contaminants, eliminated any rationale for the "continuing tort" exception, and the Court "discern[ed] no evidence in explicit words, legislative history or manifest intent that the Legislature chose to exempt continuing nuisance and continuing trespass actions from the comprehensive scope and language of this intensely negotiated legislation." 82 N.Y.2d at 83, 623 N.E.2d at 549-50. To the contrary, "[t]he Legislature presumably also understood that its dramatic new rule of accrual, expressed as governing property damage actions due to the latent effects of exposure from *any* substance, was displacing the rationale for the common-law exception. It expressed no exception or qualification for continuing wrongs because none was necessary or intended." 82 N.Y.2d at 86, 623 N.E.2d at 551. Accordingly, the Court concluded "that the reasonable interpretation of the present statute, from the Legislature's words and actions, is that it intended no continuing-wrong exception to its new comprehensive, across-the-board rules," 82 N.Y.2d at 88, 623 N.E.2d at 552, and so it dismissed all claims for damages as untimely.

Following *Jensen*, federal and state courts have barred claims for damages like those at issue here where a plaintiff knew or should have known of property damage resulting from exposure to or migration of a chemical more than three years prior to filing suit. *See, e.g., Pfohl v. Amax, Inc.*, 222 A.D.2d 1068, 635 N.Y.S.2d 880 (4th Dep't 1995) (plaintiffs' action time-barred where they knew or should have known more than three years prior to filing complaint that properties were impacted, because "[t]he fact that plaintiffs characterize their claims as continuing trespass or nuisance does not relieve them of complying with CPLR 214-c(2)"); *Water Auth. v. Lockheed Martin Corp.*, 276 A.D.2d 624, 625, 714 N.Y.S.2d 726, 728 (2d Dep't 2000) (action barred under CPLR 214-c where water authority knew of contamination in 1989,

21

but did not file suit until 1998); *Rose v. Grumman Aerospace Corp.*, 196 A.D.2d 861, 861, 602 N.Y.S.2d 34 (2d Dep't 1993) (Navigation Law claim untimely under CPLR 214-c where plaintiff should have discovered fuel oil leak more than three years prior to filing suit); *Town of Windsor v. Tesa Tuck, Inc.*, 919 F. Supp. 662, 674-75 (S.D.N.Y. 1996) (dismissing contamination claim because "New York's adoption of the 'discovery' rule altered the preexisting nuisance standard in which a new injury accrued each day of a continuing wrong"). *Cf. Syms v. Olin Corp.*, 408 F.3d 95, 109-11 (2d Cir. 2005) ("New York law no longer recognizes the existence of the continuing tort doctrine in latent exposure cases seeking money damages").

Because the City discovered MTBE in its wells prior to October 31, 2000, its claims are now time-barred. It cannot rely on a "continuing tort" theory to revive its stale claims.

## II. PLAINTIFFS' GBL § 349 CLAIM IS UNTIMELY.

The City's claim under General Business Law § 349, which alleges that Defendants made certain unspecified misrepresentations regarding the characteristics of MTBE, are legally and factually without merit. But in addition, they are time-barred.

GBL § 349 claims are subject to the three-year limitations period for statutory claims in CPLR 214(2). *See Gaidon v. Guardian Life Ins. Co.*, 96 N.Y.2d 201, 727 N.Y.S.2d 30 (2001); *Bello v. New England Fin.*, 3 Misc. 3d 1109A, 787 N.Y.S.2d 676 (Sup. Ct. Nassau Cty. 2004); *Williams v. Dow Chem. Co.*, 2004 U.S. Dist. LEXIS 10940, *16-*21 (S.D.N.Y. 2004); *Blue Cross & Blue Shield v. Philip Morris, Inc.*, 178 F. Supp. 2d 198 (E.D.N.Y. 2001). A GBL § 349 claim accrues when the plaintiff *first* suffers an injury as a result of the allegedly deceptive acts or practices. *Gaidon*, 96 N.Y.2d at 210, 727 N.Y.S.2d at 36; *Beller v. William Penn Life Ins. Co.*, 8 A.D.3d 310, 314, 778 N.Y.S.2d 82, 86 (2d Dep't 2003) (GBL § 349 claim "is governed by a three-year limitations period, which accrues when the plaintiff has been injured by a deceptive

trade act or practice in violation the statute"); *Bello*, 787 N.Y.S.2d at 676 ("[t]he cause of action accrues when the Plaintiff first suffers compensable injury"). No "discovery rule" applies. *Wender v. Gilberg Agency*, 276 A.D.2d 311, 312, 716 N.Y.S.2d 40, 42 (1st Dep't 2000) (for GBL § 349 claims, "the date of discovery rule is not applicable and cannot serve to extend that limitations period").

Though it is far from clear, the City apparently premises its GBL § 349 claim on alleged "misrepresentations" about the properties of MTBE and the alleged need for certain precautions to be taken with gasoline containing MTBE reaching back to the 1970s and 1980s, when certain Defendants sought approval from EPA to use in gasoline. 2d Am. Compl. ¶¶ 78-103, 181-83. The City apparently claims that as a result of those Defendants' unspecified "materially deceptive acts and misleading practices" in the course of gaining EPA approval for MTBE, "the City's property sustained extensive injury." 2d Am. Compl. ¶ 184.

It is beyond question, however, that the *first* injury the City attributes to the alleged misrepresentations took place at least seven years before the City initiated this lawsuit and in any event long before October 31, 2000, the relevant limitations date. The City undeniably has been aware of MTBE detections in its wells since at least June 1996, but it waited until October 2003 to file suit. Because the City's first alleged injury occurred no less than seven years before it filed suit, its claims under GBL § 349 are time-barred. *Gaidon*, 96 N.Y.2d at 210, 727 N.Y.S.2d at 36; *Bello*, 787 N.Y.S.2d at 676; *Beller*, 8 A.D.3d at 314, 778 N.Y.S.2d at 86; *Wender*, 276 A.D.2d at 312, 716 N.Y.S.2d at 42. They should be dismissed.

### III. PLAINTIFF'S NAVIGATION LAW CLAIMS ARE TIME-BARRED.

Liability does not attach under the Navigation Law absent proof that a defendant is responsible for discharging gasoline that caused a plaintiff's injuries; merely making or

supplying gasoline is insufficient for imposing Navigation Law liability. *In re MTBE*, 379 F. Supp. 2d 348, 428 (S.D.N.Y. 2005). The City has adduced no proof that any Defendant discharged gasoline that caused its alleged injuries. But even if it had, its claims are time-barred.

Navigation Law claims are subject to a three-year statute of limitations, with the accrual date computed from discovery of the injury, or when, through the exercise of reasonable diligence, the injury should have been discovered, whichever is earlier. *Kozemko v. Griffith Oil Co.*, 256 A.D.2d 1199, 1200, 682 N.Y.S.2d 503, 504-05 (4th Dep't 1998); *Town of Guilderland v. Texaco Ref. & Mktg. Inc.*, 159 A.D.2d 829, 831, 552 N.Y.S.2d 704, 706 (3d Dep't 1990) ("a suit against a discharger initiated by the damaged party is one for damages caused by injury to property and is subject to a three-year Statute of Limitations"). Again, the record demonstrates that the City has been on notice of its alleged injuries, and therefore its Navigation Law claims, since at least 1996 – more than seven years prior to filing suit. (LR 56.1 ¶ 9.) The record even establishes that City employees considered bringing legal action as early as 1998 to recover costs the City had incurred in connection with the discovery of MTBE impacts to Well 10, yet it never did so. (LR 56.1 ¶ 20.) The City knew by 1998, as Mr. Ashendorff put it, that "when we began to find [MTBE] popping up in significant numbers in Well 10, we realized that this was an issue that had to be dealt with." (LR 56.1 ¶ 20.) The City, however, failed to bring its claims until October 31, 2003 – well outside the three-year limitations period. Having failed to assert its claims in a timely manner, the claims are subject to dismissal.

## CONCLUSION

For all the foregoing reasons, Defendants' motion for summary judgment should be granted and the Second Amended Complaint should be dismissed.

Dated: Washington, D.C.
       March 6, 2006

Respectfully submitted,

*[signature]*

Richard E. Wallace, Jr.
Peter C. Condron (PC 4818)
WALLACE KING DOMIKE & BRANSON PLLC
1050 Thomas Jefferson Street, N.W.
Washington, D.C. 20007
Telephone: (202) 204-1000
Facsimile: (202) 204-1001

Attorneys for Defendants ChevronTexaco Corporation, Chevron U.S.A., Inc., Equilon Enterprises LLC, d/b/a Shell Oil Products US, Motiva Enterprises LLC, Shell Oil Company, Shell Oil Products Company LLC, Shell Trading (US) Company, Texaco Inc., TMR Company (f/k/a Texaco Refining and Marketing Inc.) and TRMI Holdings, Inc.

*and on behalf of the Defendants listed on Attachment A*

# Attachment A

Defendants' Motion for Summary Judgment Based on the Statute of Limitations in *City of New York v. Amerada Hess Corp., et al.* (04-CV-3417) is filed on behalf of the following defendants:

Amerada Hess Corporation
Atlantic Richfield Company
BP Products North America Inc.
Chevron Texaco Corporation
Chevron USA Inc.
CITGO Petroleum Corporation
CITGO Refining and Chemicals Company, L.P.
Coastal Eagle Point Oil Company
Conocophillips Company, f/k/a Phillips Petroleum Company, individually and as successor-in-interest to Tosco Corporation and d/b/a Phillips 66 Company
Crown Central Petroleum Corporation (n/k/a Crown Central LLC)
Duke Energy Merchants, LLC
El Paso Merchant Energy-Petroleum Company
Equilon Enterprises LLC, d/b/a Shell Oil Products US
Equistar Chemicals LP
Exxon Mobil Corporation
ExxonMobil Oil Corporation
Flint Hills Resources, LP
Giant Yorktown Inc.
Gulf Oil Limited Partnership
Irving Oil Corporation
Irving Oil Limited

La Gloria Oil and Gas Company (n/k/a Tyler Holding Company Inc.)
Lyondell Chemical Company
Marathon Petroleum Company LLC
Marathon Oil Company
Motiva Enterprises LLC
Mobil Corporation
The Premcor Refining Group Inc.
Shell Oil Company
Shell Oil Products Company, LLC
Shell Trading (US) Company
Sunoco, Inc.
Sunoco, Inc. (R&M)
Texaco Inc.
TMR Company (f/k/a Texaco Refining and Marketing Inc.)
TRMI Holdings Inc.
Ultramar Energy Inc.
Ultramar Ltd.
Unocal Corporation
Union Oil Company of California
Valero Energy Corporation
Valero Marketing and Supply Company
Valero Refining and Marketing Company

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of 1) Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment Based on the Statute of Limitations; 2) Defendants' Rule 56.1 Statement in Support of Their Motion for Summary Judgment Based on the Statute of Limitations; and 3) the Declaration of Peter C. Condron in Support of Defendants' Motion for Summary Judgment Based on the Statute of Limitations were served via email upon liaison counsel and via LexisNexis File & Serve to all other counsel of record on the 6th day of March, 2006. A copy was provided to the Clerk, Bethany Davis Noll, via email, and the original and one copy were served via Federal Express to the Clerk.

Peter C. Condron

[PAGE INTENTIONALLY LEFT BLANK]