# EXHIBIT I – Part 3

Dockets.Justia.com


Apr 14 2006
2:40PM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE METHYL TERTIARY BUTYL ETHER
PRODUCTS LIABILITY LITIGATION

Master File No. 1:00-1898
MDL 1358 (SAS)
M21-88

This document pertains to:

**ORAL ARGUMENT REQUESTED**

*City of New York v. Amerada Hess Corp., et al.*,
Case No. 04-CIV-3417

# DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT BASED ON THE STATUTE OF LIMITATIONS

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................ii

ARGUMENT........................................................................................................................2

I.   THE CITY PRESENTS NO ADMISSIBLE EVIDENCE ESTABLISHING THE
     EXISTENCE OF ANY GENUINE ISSUE OF MATERIAL FACT..............................2

     A.  Plaintiff Had The Burden of Demonstrating a "New Injury" Within The
         Limitations Period ...............................................................................................2

     B.  Plaintiff Has Not Met Its Burden of Demonstrating a "New Injury." ...................4

     C.  "Policy" Requires Enforcement Of CPLR 214-c. ................................................6

II.  THE CITY'S GBL § 349 CLAIM MUST BE DISMISSED ..........................................7

III. THE CITY'S NAVIGATION LAW CLAIMS ARE TIME-BARRED BECAUSE
     IT IS SEEKING DAMAGES, NOT INDEMNIFICATION............................................7

IV.  THE CITY'S "EQUITABLE CLAIMS" ALSO ARE TIME-BARRED........................8

CONCLUSION ...................................................................................................................10

# TABLE OF AUTHORITIES

## CASES

*Alamio v. Town of Rockland,*
   302 A.D.2d 842, 755 N.Y.S.2d 754 (3d Dep't 2003) ................................................. 9

*Boyle v. Kelley,*
   42 N.Y.2d 88, 396 N.Y.S.2d 834 (1977) ................................................................... 9

*Cada v. Baxter Healthcare Corp.,*
   920 F.2d 446 (2d Cir. 1990) ..................................................................................... 7

*Carpenter v. Matsushita Electric Corp.,*
   234 A.D.2d 683, 650 N.Y.S.2d 1021 (3d Dep't 1996) ............................................. 3

*Chira v. Columbia University,*
   289 F. Supp. 2d 477 (S.D.N.Y. 2003) ...................................................................... 6

*Colodney v. New York Coffee & Sugar Exch.,*
   4 A.D.2d 137, 163 N.Y.S.2d 283 (1st Dep't 1957) ................................................... 9

*Conroy v. New York State Department of Correctional Services,*
   333 F.3d 88 (2d Cir. 2003) ................................................................................... 2, 5

*Coughlin v. IBM Corp.,*
   225 A.D.2d 256, 650 N.Y.S.2d 477 (3d Dep't 1996) ............................................ 3, 6

*Di Stefano v. Nabisco, Inc.,*
   282 A.D.2d 704, 724 N.Y.S.2d 444 (2d Dep't 2001) ............................................ 3, 4

*Eastern States Health & Welfare Fund v. Philip Morris, Inc.,*
   188 Misc. 2d 638, 729 N.Y.S.2d 240 (N.Y. Cty. 2000) ........................................ 4, 6

*Galway v. Metropolitan Elevated Railway,*
   128 N.Y. 132 (1891) ................................................................................................. 4

*Giardina v. Parkview Homeowners' Association,*
   255 A.D.2d 878, 680 N.Y.S.2d 354 (4th Dep't 1998) ............................................... 3

*Grossjahann v. Geo. B. Wilkins & Sons, Inc.,*
   244 A.D.2d 808, 666 N.Y.S.2d 271 (3d Dep't 1997) ................................................ 8

*Jensen v. General Electric Co.,*
   82 N.Y.2d 77, 603 N.Y.S.2d 420 (1993) ........................................................... 4, 5, 7

*Keys v. Leopold,*
   241 N.Y. 189 (1925) ................................................................................................. 9

*Klein v. Bower*,
 421 F.2d 338 (2d Cir. 1970) .................................................................................................. 9

*Kozemko v. Griffith Oil Co.*,
 256 A.D.2d 1199, 682 N.Y.S.2d 503 (4th Dep't 1998) ........................................................ 8

*LaSala v. Needham & Co.*,
 2006 U.S. Dist. LEXIS 7388 (S.D.N.Y. 2006) ..................................................................... 9

*Lessord v. General Electric Co.*,
 258 F. Supp. 2d 209 (W.D.N.Y. 2002) ................................................................................. 3

*MRI Broadway Rental, Inc. v. United States Mineral Products Co.*,
 92 N.Y.2d 421, 681 N.Y.S.2d 783 (1998) ........................................................................ 3, 6

*In re MTBE*,
 209 F.R.D. 323 (S.D.N.Y. 2002) ........................................................................................ 10

*In re MTBE*,
 379 F. Supp. 2d 348 (S.D.N.Y. 2005) .................................................................................. 8

*Medoy v. Warnaco Employees' Long Term Disability Insurance Plan*,
 2006 U.S. Dist. LEXIS 7635 (E.D.N.Y. 2006) .................................................................. 10

*Neri v. R.J. Reynolds Tobacco Co.*,
 185 F. Supp. 2d 176 (N.D.N.Y. 2001) .................................................................................. 6

*Norris v. Grosvenor Marketing Ltd.*,
 803 F.2d 1281 (2d Cir. 1986) ............................................................................................... 9

*Oeffler v. Miles, Inc.*,
 241 A.D.2d 822, 660 N.Y.S.2d 897 (3d Dep't 1997) ........................................................... 3

*Oliver Chevrolet, Inc. v. Mobil Oil Corp.*,
 249 A.D.2d 793, 671 N.Y.S.2d 850 (3d Dep't 1998) ........................................................... 8

*State v. Stewart's Ice Cream Co.*,
 64 N.Y.2d 83, 484 N.Y.S.2d 810 (1984) ........................................................................... 7, 8

*Town of Guilderland v. Texaco Refining & Marketing Inc.*,
 159 A.D.2d 829, 552 N.Y.S.2d 704 (3d Dep't 1990) ........................................................... 8

*Whitney v. Quaker Chemical Corp.*,
 90 N.Y.2d 845, 660 N.Y.S.2d 862 (1997) ............................................................................ 6

## STATUTES

CPLR 214-c ................................................................................. 1, 4, 6, 7, 10

GBL § 349 ................................................................................................. 7

To its credit (and in sharp contrast to the other New York focus plaintiffs), the City concedes what its own documents show, what its witnesses said, and what the undisputed evidence demonstrates. Thus, the City admits that "prior to October 31, 2000, the City knew that MTBE was present at high levels in certain wells within its Queens groundwater system and took remedial action to address MTBE contamination at certain wells." Pl. Br. at 3. It concedes that 21 Queens wells had known MTBE detections prior to October 31, 2000 (Plaintiff's L.R. 56.1 Statement ("Pl. LR 56.1") ¶ 9); that it detected MTBE in its wells in 1996 (*id.* ¶ 12); that Jamaica Water Supply, the prior owner, detected it even earlier (*id.* ¶¶ 10-11); that it took wells out of service due to MTBE in 1998 (*id.* ¶ 17); and that it knew all the characteristics of MTBE gasoline the City says render it "defective" prior to October 31, 2000. (*Id.* ¶¶ 18, 24-25, 28.)

The City also does not dispute that its causes of action (except for its Navigation Law and "equitable" claims) are governed by a three-year statute of limitations (CPLR 214-c) that began to run when the City discovered its injury more than three years prior to filing suit. The City seeks to avoid complete dismissal by noting that, after October 31, 2000, some Defendants sold MTBE gasoline in Queens; some gasoline releases occurred; and some of the City's wells continued to have MTBE detections. But the City's assertions fall far short of a "new," "separate and distinct," "qualitatively different" injury necessary to restart the limitations period.

Moreover, the City offers no evidence that any gasoline release that might have occurred after October 31, 2000 had any impact on any of its wells, and merely muses that "rising levels" of MTBE in three wells that had detections prior to October 31, 2000 "could be" attributable to new gasoline releases. But the City's only "evidence" of "rising MTBE levels" — its own statute of limitations chart — merely purports to show the first and last detections of MTBE in a well, without showing the highest detection, or the level as of October 31, 2000, the limitations

date. In reality, the undisputed evidence establishes that MTBE levels in the City's wells generally almost uniformly have been declining. *Compare* Defendants' Motion for Summary Judgment on Justiciability, Appendix C (also appended hereto, showing date wells first exceeded MCL) *with* Condron Decl. Exh. 8 (showing date and level of most recent MTBE detections).

The City needed to come forward with admissible evidence demonstrating a genuine issue of material fact regarding a "separate and distinct," "qualitatively different" injury after October 31, 2000. It failed to do so. "Mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment." *Conroy v. New York State Dep't of Corr. Servs.*, 333 F.3d 88, 94 (2d Cir. 2003). The City's claims are time-barred.[1]

## ARGUMENT

### I. THE CITY PRESENTS NO ADMISSIBLE EVIDENCE ESTABLISHING THE EXISTENCE OF ANY GENUINE ISSUE OF MATERIAL FACT.

#### A. Plaintiff Had The Burden of Demonstrating a "New Injury" Within The Limitations Period.

The gist of the City's opposition is that "Defendants have not established ... the existing and future injuries to the City's wells are simply continuations of old injuries caused by long-ceased conduct." (Pl. Br. at 7.) The City, however, misapprehends both New York law and its summary judgment burden. Defendants demonstrated that the City knew of its alleged injuries outside the limitations period. (LR 56.1 ¶ 9.) As a decision relied on by the City recognizes, once a defendant meets its "initial burden of showing that the limitations period has expired as to plaintiffs' claims," then "plaintiffs, in order to defeat the motions for summary judgment, must

---

[1] Contrary to the "single injury" allegations of its complaint (¶¶ 120-22), the City now argues "that harm accrues for each well property separately." (Pl. Br. at 13.) Thus, the City effectively concedes its claims are time-barred as to wells with MTBE detections before October 31, 2000 (or December 12, 2001 as to later-named Defendants). (Pl. Br. at 8.) If the Court allows the City to rely on harm to each well or wellfield as a separate and distinct injury, then all claims should be barred for wells and wellfields in which MTBE was detected before the limitations date.

2

demonstrate that there are genuine issues of material fact as to that issue, whether because the limitations period should be tolled, or for some other reason." *Lessord v. General Elec. Co.*, 258 F. Supp. 2d 209, 212-13 (W.D.N.Y. 2002). Where, as here, the plaintiff claims a "new injury," it must come forward with admissible evidence of that "new injury" – one that is "separate and distinct" and "qualitatively different" – to defeat summary judgment. The "new injury" cannot be simply an "outgrowth, maturation, or complication of the original contamination." *Di Stefano v. Nabisco, Inc.*, 282 A.D.2d 704, 705, 724 N.Y.S.2d 444, 446 (2d Dep't 2001).[2]

In *Oeffler v. Miles, Inc.*, 241 A.D.2d 822, 660 N.Y.S.2d 897 (3d Dep't 1997), for example, the plaintiff admittedly was aware she had been injured by an exposure to chemicals more than three years before she filed suit. Like the City here, she tried to avoid the statute of limitations by claiming that she suffered a "new injury" as a result of a later chemical exposure within the limitations period. The court found that her failure to provide evidence of a "new injury" within the limitations period required summary judgment for the defendant:

> While plaintiff asserts that the exposure to each of these chemicals produced a different injury which may well fall within the statutory period, we note that it was "incumbent upon plaintiff[ ] to come forth with factual substantiation of [her] assertions of 'new injury' within the limitations period ... sufficient to demonstrate not only when such injury occurred, but also that it is, in fact, qualitatively different from that sustained earlier."

241 A.D.2d 822, 826, 660 N.Y.S.2d at 900, quoting *Coughlin v. IBM Corp.*, 225 A.D.2d 256, 260, 650 N.Y.S.2d 477, 480 (3d Dep't 1996). *See also Carpenter v. Matsushita Elec. Corp.*, 234

---

[2] The decisions the City cites (Pl. Br. at 7), like *Giardina v. Parkview Homeowners' Ass'n*, 255 A.D.2d 878, 680 N.Y.S.2d 354, 355 (4th Dep't 1998), offer no support at all. In each decision, the plaintiff managed at least to allege a "separate and distinct," "qualitatively different" injury. The City's "new" injury here – MTBE impacts to its wells and the Queens aquifer – is the identical injury the City admittedly knew of before October 31, 2000. Moreover, an increase in the level of a contaminant within the limitations period is not a "separate and distinct" injury from earlier, known levels of contamination. *MRI Broadway Rental, Inc. v. United States Mineral Prods. Co.*, 92 N.Y.2d 421, 681 N.Y.S.2d 783 (1998) (limitations period runs from when substance enters building at any level, not when substance exceeded regulatory standard).

3

A.D.2d 683, 650 N.Y.S.2d 1021 (3d Dep't 1996) (summary judgment granted where "plaintiffs have not tendered any admissible proof, of a factual nature, in support of their allegations of later injury"); *Di Stefano*, 282 A.D.2d at 705, 724 N.Y.S.2d at 446; *Eastern States Health & Welfare Fund v. Philip Morris, Inc.*, 188 Misc. 2d 638, 729 N.Y.S.2d 240 (N.Y. Cty. 2000).

The City seeks to avoid both its burden of proof and the dispositive effect of *Jensen v. General Elec. Co.*, 82 N.Y.2d 77, 603 N.Y.S.2d 420 (1993), by arguing that *Jensen* should not apply due to Defendants' alleged "continuing conduct." (Pl. Br. at 9-15.) Neither CPLR 214-c nor *Jensen* contains any such reservation. To the contrary, the Court of Appeals rejected the argument on which the City relies,[3] and held that "[t]he Legislature ... expressed no exception or qualification for continuing wrongs *because none was necessary or intended*." 82 N.Y.2d at 86, 603 N.Y.S.2d at 424 (emphasis added). The Court of Appeals found plaintiffs' claims time-barred because "their causes of action for damages stemming from *continuing nuisance* and *continuing trespass* could have been and should have been timely brought." 82 N.Y.2d at 89, 603 N.Y.S.2d at 425-26 (emphasis added). The City's efforts to distinguish *Jensen*, therefore, are unavailing. To overcome *Jensen*, the burden was on the City to come forward with evidence of a "qualitatively different" injury after October 31, 2000.

### B. Plaintiff Has Not Met Its Burden of Demonstrating a "New Injury."

The City has failed to carry its burden to present evidence of any "qualitatively different" injury. The City submits two items of "evidence" to support its claim: (1) interrogatory responses from certain Defendants indicating that they continued to market MTBE gasoline in

---

[3] The City seeks to draw an immaterial distinction between continuing injuries resulting from affirmative acts and those resulting from omissions. Even the prior continuing injury rule that *Jensen* and CPLR 214-c rejected contained no such distinction. In fact, the continuing nuisance in *Galway v. Metropolitan Elevated Ry.*, 128 N.Y. 132, 141-43 (1891), the decision *Jensen* held to be abrogated by CPLR 214-c, involved affirmative acts (continuous operation of an elevated railway) by the defendants. The rule the City advocates would, therefore, eviscerate *Jensen*.

4

Queens from October 2000 through New York's ban on MTBE on January 1, 2004; and (2) a list of DEC spill numbers that the City says show gasoline releases in that period.[4] In addition, the City incongruously cites a 1997 paper from a California water district to support a "factual assertion" that "unreported spills occurring after October 30, 2000 **could have** leached into the aquifer and harmed the City." (Pl. LR 56.1 Statement of "Additional Facts" ¶ 11) (emphasis added). The City also asserts that "MTBE **can** also contaminate groundwater through small incidental point source releases...." (*Id.* ¶ 12) (emphasis added). From these "facts," the City concludes that Defendants' products "caused additional MTBE contamination of the City's wells" after October 2000. (*Id.* ¶ 13). The City then adds that it "**believes** that many of its wells continue to be imminently threatened," again citing no evidence. (*Id.* ¶ 16.)

None of this raises any genuine issue of material fact. Notably, the City makes no effort to support its conjecture about what "could have" happened with actual facts. It provides no evidence that unreported releases actually took place in Queens and, more importantly, no evidence that any post-October 2000 release – reported or otherwise – impacted the City's wells. The City's "evidence" is precisely the type of "conclusory allegations, speculation [and] conjecture [that] will not avail a party resisting summary judgment." *Conroy*, 333 F.3d at 94.

Likewise, the City's assertions about "rising MTBE levels" in three wells are wholly unsupported. There have been no "dramatic increases" in MTBE levels in those wells since October 2000. But even if the City were correct, "rising MTBE levels" would not establish a

---

[4] The City did not provide the Court with the DEC "spill reports" themselves – perhaps due to what they show. One is from 1997, three years **before** the applicable limitations date. Two are from 2004 – **after** MTBE was banned in New York gasoline. Another relates to a K-Mart in Steuben County, about 250 miles from Queens. Many relate to equipment tests with no indication of any gasoline release. And at least 18 of them have been closed by DEC, usually meaning, according to DEC's website, "the records and data submitted indicate that the necessary cleanup and removal actions have been completed and no further remedial activities are necessary." http://www.dec.state.ny.us/website/der/spills/spillsglossary.html.

5

"qualitatively different injury." Under New York law, "it is a settled principle that once a compensable injury has occurred, the time within which an action may be commenced may not be extended merely by the aggravation, or exacerbation, of that injury by continued contact with the same offending product." *Eastern States,* 188 Misc. 2d at 656, 729 N.Y.S.2d at 255, quoting *Coughlin,* 225 A.D.2d at 260. *Accord MRI Broadway,* 92 N.Y.2d 421, 681 N.Y.S.2d 783 (holding limitations accrual date to be installation of asbestos in building, and rejecting argument that claim accrued when friable asbestos increased to level in excess of regulatory standard); *Whitney v. Quaker Chem. Corp.,* 90 N.Y.2d 845, 847, 660 N.Y.S.2d 862, 863 (1997) (plaintiff's contention that symptoms worsened within limitations period did not render claim timely); *Neri v. R.J. Reynolds Tobacco Co.,* 185 F. Supp. 2d 176 (N.D.N.Y. 2001) (same); *Chira v. Columbia Univ.,* 289 F. Supp. 2d 477, 484 (S.D.N.Y. 2003) (in toxic exposure case, "that some injuries did not manifest themselves until later or that the full extent of his damages were not known does not change the fact that his cause of action accrued earlier").

Ultimately, the City fails to provide any evidence supporting its "new injury" argument, and it cannot establish any connection between what it calls "continuing conduct" and any separate and distinct, qualitatively different injury it allegedly suffered after October 31, 2000. Conjecture and mischaracterization of the evidence cannot defeat summary judgment.[5]

### C. "Policy" Requires Enforcement Of CPLR 214-c.

The City further seeks refuge in "policy," claiming that enforcing the limitations would be "unjust." (Pl. Br. at 13.) The City never articulates why it would be unjust to hold it to the

---

[5] The City's argument that proper application of *Jensen* would "grant defendants absolute immunity" is unfounded for several reasons. First, had the City brought a timely action and proved its case, it could have recovered damages for all its alleged injuries. Second, it was the City, not Defendants, that made the tactical choice to try to shortcut proof problems by claiming that the Queens system is "interconnected." Finally, the City has not provided the Court with evidence that any of its wells were damaged by a post-October 2000 gasoline release, rendering its "absolute immunity" argument largely academic.

same standard as any other litigant. Under CPLR 201, compliance with limitations periods is mandatory for **all** plaintiffs, and the City is no exception. Because they protect "important social interests," "[s]tatutes of limitations ... should not be given a grudging application." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 452-53 (2d Cir. 1990). The City offers no explanation as to why it did not file suit earlier, despite admittedly knowing of "high levels" of MTBE in its wells long before October 31, 2000. Enforcing the law visits no injustice on the City.[6]

## II. THE CITY'S GBL § 349 CLAIM MUST BE DISMISSED.

In their opening brief, Defendants demonstrated that the City's GBL § 349 claim was time-barred because it was subject to a three-year limitations period that ran from the date the City **first** suffered an alleged injury. Defs.' Br. at 22-23. The City does not even try to defend the claim, thus conceding the point. The GBL § 349 claim must be dismissed.

## III. THE CITY'S NAVIGATION LAW CLAIMS ARE TIME-BARRED BECAUSE IT IS SEEKING DAMAGES, NOT INDEMNIFICATION.

The City now says that it has an "indemnification claim" for "money damages" expended in connection with its Well 10 – and only Well 10 – that is subject to a six-year limitations period. But the six-year statute applies only to Navigation Law claims made by the State for money expended from the Environmental Protection and Spill Compensation Fund, or where a private party seeks costs incurred pursuant to a DEC-ordered cleanup. *State v. Stewart's Ice*

---

[6] In seeking to escape the plain holding of *Jensen* on "policy" grounds, the City relies heavily on the 1986 "Bill Jacket" for CPLR 214-c. (Pl. Br. at 13-14.) But the Court of Appeals in *Jensen* cited that document when **rejecting** the same "continuing tort" argument the City makes here. 82 N.Y.2d at 84, 603 N.Y.S.2d at 423. As Governor Cuomo noted, CPLR 214-c is a "fair and simple rule which permits a person to discover his or her injury before the statutory time period for suit begins to run." *Id.* The City admits it failed to file suit despite knowing of "high levels" of MTBE in the Queens system in the 1990s. Thus, the law is not unfairly depriving the City of an opportunity to seek relief. Likewise, the City's protest that it faces a "Scylla and Charybdis" (Pl. Br. at 12 n.1) lacks merit. Defendants' limitations and justiciability motions simply reveal the logical flaws in the City's case. The City asserts that any amount of MTBE in a well is an actionable injury, yet at the same time claims that such detections do not trigger the limitations period. That, of course, cannot be. Any "Scylla and Charybdis" is of the City's own making.

*Cream Co.*, 64 N.Y.2d 83, 484 N.Y.S.2d 810 (1984); *Town of Guilderland v. Texaco Ref. & Mktg. Inc.*, 159 A.D.2d 829, 831, 552 N.Y.S.2d 704, 706 (3d Dep't 1990). A claim like that here – which the City admits is for "money damages" (Pl. Br. at 15) – "is one for damages caused by injury to property and is subject to a three-year Statute of Limitations." *Guilderland*, 159 A.D.2d at 831, 552 N.Y.S.2d at 706; *Kozemko v. Griffith Oil Co.*, 256 A.D.2d 1199, 1200, 682 N.Y.S.2d 503, 504-05 (4th Dep't 1998).[7] The City knew of MTBE in Well 10 by 1998. Accordingly, its Navigation Law claim is time-barred.

The City's Navigation Law claim for Well 10 suffers from another infirmity. As this Court previously held, Navigation Law claims can be asserted only against a "discharger." *In re MTBE*, 379 F. Supp. 2d 348, 428 (S.D.N.Y. 2005). And in the case of Well 10, the City knows the discharger – "Harry's Auto Repair," at 223rd Street and Linden Boulevard. (LR 56.1 ¶ 19; Condron Decl. Exhs. 2, 3, 5 & 12.) "Harry's" is not a defendant. Because the actual discharger is not before the Court, the City's Navigation Law claim should be dismissed.

### IV. THE CITY'S "EQUITABLE CLAIMS" ALSO ARE TIME-BARRED.

The City says that its claims for equitable relief are "unquestionably timely." The City is mistaken. What is unquestionable is that the principal relief the City seeks is money – $300 million in compensatory damages. Despite its effort to masquerade "wellhead treatment" as "equitable relief," such claims plainly are for damages. And only weeks after trying to stave off

---

[7] *Oliver Chevrolet, Inc. v. Mobil Oil Corp.*, 249 A.D.2d 793, 671 N.Y.S.2d 850 (3d Dep't 1998), is not to the contrary. Like *Stewart's, supra,* which addressed claims for reimbursement by the Environmental Protection and Spill Compensation Fund rather than a damages action, and *Grossjahann v. Geo. B. Wilkins & Sons, Inc.*, 244 A.D.2d 808, 666 N.Y.S.2d 271 (3d Dep't 1997), which involved a plaintiff's claim for amounts it was legally obligated to expend pursuant to a DEC-ordered remediation, the plaintiff in *Oliver* had been ordered by DEC to conduct a spill remediation and sought recovery of the amounts it had spent from the defendant – a classic indemnity claim. 249 A.D.2d at 793, 671 N.Y.S.2d at 851. *Grossjahann* explicitly distinguished *Guilderland, supra,* on the ground that the plaintiff in that case, like the City here, was seeking to recover damages for injury to its own property, rather than to recover costs incurred in a DEC-ordered cleanup, and therefore the three-year limitations period properly applied.

Defendants' primary jurisdiction motion by insisting that because *"Plaintiffs do not seek remediation of spills"* (Pl. Primary Juris. Opp. at 2), the City now says that the equitable relief it seeks "includes ... *remediating spills* giving rise to future harms." (Pl. Br. at 16.)

Regardless of how the City characterizes its claims, they are time-barred. For limitations purposes, New York law looks to the "principal objective" of a lawsuit: "As to the issue of timeliness, our assessment must focus on whether the principal objective of the action is equitable rather than monetary relief, not on how plaintiffs choose to characterize their claims." *Alamio v. Town of Rockland*, 302 A.D.2d 842, 843, 755 N.Y.S.2d 754, 756 (3d Dep't 2003). If the "principal objective" is to recover damages, the three-year statute of limitations applies to **all** claims – equitable and monetary. *Id.* The City's $300 million damages demand shows the principal motivation behind this suit: money damages. As such, the "equitable" claims fall along with the City's damages claims. *Accord Keys v. Leopold*, 241 N.Y. 189, 192-93 (1925) ("[w]hen a legal and an equitable remedy exists as to the same subject-matter, the latter is under the control of the same statutory bar as the former"); *Colodney v. New York Coffee & Sugar Exch.*, 4 A.D.2d 137, 140, 163 N.Y.S.2d 283, 286 (1st Dep't 1957) (same).

Moreover, this Court has noted that longstanding New York law provides that "[a]ny plaintiff seeking equitable relief must establish as a threshold matter that he has no adequate remedy at law," and "'an equitable claim cannot proceed where the plaintiff has had and let pass an adequate alternative remedy at law.'" *LaSala v. Needham & Co.*, 2006 U.S. Dist. LEXIS 7388, *35 (S.D.N.Y. 2006), citing *Boyle v. Kelley*, 42 N.Y.2d 88, 89, 396 N.Y.S.2d 834 (1977); *Klein v. Bower*, 421 F.2d 338, 344 (2d Cir. 1970); *Norris v. Grosvenor Mktg. Ltd.*, 803 F.2d 1281, 1287 (2d Cir. 1986). *See also Colodney*, 4 A.D.2d at 140, 163 N.Y.S.2d at 286 (plaintiff "cannot enlarge the period of limitation which governs ... by resorting to [an] action in equity").

Money damages unquestionably could compensate the City for wellhead treatment; indeed, the City avers as much. 2d Am. Compl. ¶ 121 (MTBE has "resulted in substantial Costs and Damages from the City's efforts to remediate the wells to enable using them again," "has forced the City to use substantial amounts of taxpayer money to begin purchasing and operating carbon filters, air strippers and other remediation technologies in order to be able to withdraw water from the wells" and "expend taxpayer and/or rate payer money to study, test, and hire experts to track contamination...."). And the City's "on again, off again" spill remediation claims fail for a host of reasons, as explained in Defendants' primary jurisdiction brief and in this Court's prior class certification opinion. *In re MTBE*, 209 F.R.D. 323, 345-46 (S.D.N.Y. 2002).

Finally, even if the City had viable equitable claims that were not merely ancillary to its $300 million damages claim, they would be subject to the six-year limitations period in CPLR 213(1). *Medoy v. Warnaco Employees' Long Term Disability Ins. Plan*, 2006 U.S. Dist. LEXIS 7635, *11 n.4 (E.D.N.Y. 2006). It is undisputed that the City knew of MTBE impacts to the Queens system no later than June 1996. (Pl. LR 56.1 ¶¶ 9, 12.) This suit was not filed until October 31, 2003. Therefore, those claims would be time-barred in any event.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in Defendants' opening brief, Defendants' motion for summary judgment should be granted and the City's claims should be dismissed.

Dated: Washington, D.C.
April 14, 2006

Respectfully submitted,

[signature]

Richard E. Wallace, Jr.
Peter C. Condron (PC 4818)
WALLACE KING DOMIKE & BRANSON PLLC
1050 Thomas Jefferson Street, N.W.
Washington, D.C. 20007
Telephone: (202) 204-1000
Facsimile: (202) 204-1001

Attorneys for Defendants ChevronTexaco Corporation, Chevron U.S.A., Inc., Equilon Enterprises LLC, d/b/a Shell Oil Products US, Motiva Enterprises LLC, Shell Oil Company, Shell Oil Products Company LLC, Shell Trading (US) Company, Texaco Inc., TMR Company (f/k/a Texaco Refining and Marketing Inc.) and TRMI Holdings, Inc.

*and on behalf of the Defendants listed on Attachment A*

# Attachment A

Defendants' Reply Memorandum in Support of their Motion for Summary Judgment Based on the Statute of Limitations in *City of New York v. Amerada Hess Corp., et al.* (04-CV-3417) is filed on behalf of the following defendants:

Amerada Hess Corporation
Atlantic Richfield Company
BP Products North America Inc.
Chevron Texaco Corporation
Chevron USA Inc.
CITGO Petroleum Corporation
CITGO Refining and Chemicals Company, L.P.
Coastal Eagle Point Oil Company
Conocophillips Company, f/k/a Phillips
    Petroleum Company, individually and as
    successor-in-interest to Tosco Corporation
    and d/b/a Phillips 66 Company
Crown Central Petroleum Corporation (n/k/a
    Crown Central LLC)
Duke Energy Merchants, LLC
El Paso Merchant Energy-Petroleum Company
Equilon Enterprises LLC, d/b/a Shell Oil
    Products US
Equistar Chemicals LP
Exxon Mobil Corporation
ExxonMobil Oil Corporation
Flint Hills Resources, LP
Getty Petroleum Marketing Inc.
Giant Yorktown Inc.
Gulf Oil Limited Partnership

Irving Oil Corporation
Irving Oil Limited
La Gloria Oil and Gas Company (n/k/a Tyler
    Holding Company Inc.)
Lyondell Chemical Company
Marathon Petroleum Company LLC
Marathon Oil Company
Motiva Enterprises LLC
Mobil Corporation
The Premcor Refining Group Inc.
Shell Oil Company
Shell Oil Products Company, LLC
Shell Trading (US) Company
Sunoco, Inc.
Sunoco, Inc. (R&M)
Texaco Inc.
TMR Company (f/k/a Texaco Refining and
    Marketing Inc.)
TRMI Holdings Inc.
Ultramar Energy Inc.
Ultramar Ltd.
Unocal Corporation
Union Oil Company of California
Valero Energy Corporation
Valero Marketing and Supply Company
Valero Refining and Marketing Company

# APPENDIX C

## *(from Defendants' Justiciabilty Motion)*

## FIRST MTBE DETECTION ABOVE MCL BEFORE RELEVANT ACCRUAL DATE FOR STATUTE OF LIMITATIONS

| CITY OF NEW YORK ||||| 
|---|---|---|---|---|
| Plaintiff filed lawsuit on October 31, 2003. Relevant accrual date for Statute of Limitations purposes is October 31, 2000. |||||
| Well | Statute of Limitations Accrual Date | Date of First Detection Above MCL | Amount Detected (ppb) | Reference in Evidentiary Record |
| 6D | 10/31/00 | 04/18/00 | 1500 | MP-00024875-880 |
| 10 | 10/31/00 | 02/24/98 | 58.5 | NYC-0015355 |
| 38 | 10/31/00 | 01/18/95 | 130 | NYC-0000561 |
| 38A | 10/31/00 | 08/18/98 | 52.8 | NYC 0000001-7 |
| 39A | 10/31/00 | 04/23/98 | 53.8 | NYC-0015096 |
| 53 | 10/31/00 | 07/18/00 | 76.3 | NYC-0015114 |

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of 1) Defendants' Reply Memorandum in Support of their Motion for Summary Judgment Based on the Statute of Limitations; and 2) Defendants' Response to Plaintiff's "Statement of Additional Facts" Pursuant to Local Rule 56.1 were served via email and FedEx upon liaison counsel and via LexisNexis File & Serve to all other counsel of record on the 14th day of April, 2006. A copy was provided to the Clerk, Bethany Davis Noll, via email, and the original and one copy were served via Federal Express to the Clerk.

_____
Peter C. Condron