UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation | Master File No. 1:00-1898<br>MDL 1358 (SAS)<br>M21-88 |
| **This document pertains to:**<br><br>*City of New York v. Amerada Hess Corp. et al.*,<br>Case No. NY-04-CV-03417 | |

### NOTICE OF MOTION OF EXXON MOBIL CORPORATION'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING (I) JOINT AND SEVERAL LIABILITY AND PUNITIVE DAMAGES AND (II) TO PROHIBIT THE PROPOSED TESTIMONY OF DR. FOGG AND MR. BURKE

PLEASE TAKE NOTICE that Defendant Exxon Mobil Corporation, by and through its attorneys, McDermott Will & Emery LLP, will move this Court on a date and time to be determined at the Courthouse located at 500 Pearl Street, New York, New York 10007, for an order excluding evidence and argument regarding punitive damages and to prohibit the proposed testimony of Dr. Fogg and Mr. Burke. Defendant's motion is based upon its Memorandum of Law filed concurrently herewith, and any reply brief or oral argument that may be submitted or made by Defendant in connection with this motion.

Dated: New York, NY
       September 25, 2009

Respectfully submitted,

Peter John Sacripanti
James A. Pardo
Stephen J. Riccardulli (SR 7784)
MCDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, NY 10173
Tel. (212) 547-5400
Fax (212) 547-5444

Jennifer Kalnins Temple (JK 3274)
MCDERMOTT WILL & EMERY LLP
18191 Von Karman Avenue
Suite 500
Irvine, CA  92612-7108

*Counsel for Defendant Exxon Mobil Corporation*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In Re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

**This document pertains to:**

*City of New York v. Amerada Hess Corp., et al.*
Case No. 04 Civ. 3417

Master File No. 1:00-1898
MDL 1358 (SAS)
M21-88

# EXXON MOBIL CORPORATION'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING (I) PUNITIVE DAMAGES AND (II) TO PROHIBIT THE PROPOSED TESTIMONY OF DR. FOGG AND MR. BURKE

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ........................................................................................................................ 1

    I.  PLAINTIFF HAS FAILED TO MEET NEW YORK'S DEMANDING PUNITIVE DAMAGES STANDARD, WHICH REQUIRES CLEAR AND CONVINCING PROOF OF WILLFUL OR WANTON CONDUCT CLOSE TO CRIMINALITY CAUSING SUBSTANTIAL DAMAGE ............................................................................................ 1

    II.  THE TESTIMONY AND OTHER EVIDENCE THAT PLAINTIFFS PROPOSE TO OFFER WITH RESPECT TO REPREHENSIBILITY SHOULD BE PRECLUDED ...... 6

CONCLUSION ..................................................................................................................... 9

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Carvel Corp. v. Noonan*, 350 F.3d 6 (2d Cir. 2003) .................................................................. 2

*Ebron v. United States*, 2008 U.S. Dist. LEXIS 70120 (S.D.N.Y. September 17, 2008) ............... 7

*In re MTBE Products Liability Litigation*, 517 F. Supp. 2d. 662 (S.D.N.Y. 2007) ..................... 8

*Philip Morris USA v. Williams*, 549 U.S. 346 (2007) ............................................................. 7, 8

*Roginsky v. Richardson-Merrell, Inc.*, 378 F.2d 832 (2d Cir. 1967) .......................................... 2

*Time Warner Cable of N.Y. City v. Papathanasis*, 1998 U.S. Dist. LEXIS 22672
    (S.D.N.Y. 1998) ......................................................................................................................... 1

*United States v. Hooker Chemicals & Plastics Corp.*, 850 F. Supp. 993 (W.D.N.Y. 1994) ...... 4, 5

## STATE CASES

*Acker v. Garson*, 759 N.Y.S.2d 609 (N.Y. App. Div. 3rd Dep't 2003) ....................................... 2

*Boomer v. Atlantic Cement Co.*, 340 N.Y.S.2d 97 (N.Y. Sup. Ct. 1972) .................................... 3

*Booth v. Hanson Aggregates N.Y., Inc.*, 16 A.D.3d 1137 (N.Y. App. Div. 4th Dep't 2005) ........ 3

*Gellman v. Seawane Golf & Country Club, Inc.* 24 A.D.3d 415 (N.Y. App. Div. 2d Dep't
    2005) ..................................................................................................................................... 2, 3

*Fortnow v. Hughes Hubbard & Reed, LLP*, 2005 NY Slip Op 52140U (N.Y. Sup. Ct.
    2005) ..................................................................................................................................... 1, 2

*Home Ins. Co. v. Am. Home Prods. Corp.*, 75 N.Y.2d 196 (1990) ........................................... 1, 2

*Hymowitz v. Eli Lilly & Co.*, 73 N.Y.2d 487 (1989) ..................................................................... 8

*Karen S. v. Streitferdt*, 172 A.D.2d 440 (N.Y. App. Div. 1st Dep't 1991) ................................. 2

*Prato v. Vigliotta*, 253 A.D.2d 749 (N.Y. App. Div. 2d Dep't 1998) .......................................... 3

*Prozeralik v. Capital Cities Comm'ns, Inc.*, 82 N.Y.2d 466 (1993) ............................................ 2

*Randi A.J. v. Long Is. Surgi-Center*, 46 A.D.3d 74 (N.Y. App. Div. 2d Dep't 2007) ................ 1

*Taylor v. Dyer*, 190 A.D.2d 902 (N.Y. App. Div. 3d Dep't 1993) .................................................. 2

*Taylor v. Leardi*, 120 A.D.2d 727 (N.Y. App. Div. 2d Dep't 1986) ................................................ 3

## **STATUTES**

42 U.S.C. § 7545 ............................................................................................................................. 4

## PRELIMINARY STATEMENT

This memorandum is submitted on behalf of Exxon Mobil Corporation ("ExxonMobil") in support of its motion *in limine* to exclude evidence and argument relating to punitive damages. As we demonstrate below: (i) the alleged conduct of ExxonMobil and any resulting "damage" found by the jury do not even come close to satisfying the standard for an award of punitive damages under New York law; and (ii) any testimony regarding MTBE contamination by ExxonMobil in wells other than those involved in this trial is speculative and incompetent and should not be permitted.

## ARGUMENT

**I.  PLAINTIFF HAS FAILED TO MEET NEW YORK'S DEMANDING PUNITIVE DAMAGES STANDARD, WHICH REQUIRES CLEAR AND CONVINCING PROOF OF WILLFUL OR WANTON CONDUCT CLOSE TO CRIMINALITY CAUSING SUBSTANTIAL DAMAGE.**

"The standard for an award of punitive damages in New York is a demanding one." *Time Warner Cable of N.Y. City v. Papathanasis*, 1998 U.S. Dist. LEXIS 22672, *17 (S.D.N.Y. 1998) (finding that allegation of selling cable pirating equipment was an insufficient basis upon which to award punitive damages). Under New York law, to recover punitive damages the City must prove by clear and convincing evidence that ExxonMobil acted with actual malice or conscious disregard for the City's rights. *Home Ins. Co. v. Am. Home Prods. Corp.*, 75 N.Y.2d 196, 203 (1990); *see also Randi A.J. v. Long Is. Surgi-Center*, 46 A.D.3d 74, 86 (N.Y. App. Div. 2d Dep't 2007) (standard of proof for punitive damages is clear and convincing evidence); *Fortnow v. Hughes Hubbard & Reed,* LLP, 2005 NY Slip Op. 52140U, at *5, 10 Misc. 3d 1064A, 814 N.Y.S.2d 561, 2005 N.Y. Misc. LEXIS 2917 (N.Y. Sup. Ct. 2005) (same); *Home Ins. Co.*, 75 N.Y.2d at 203 (punitive damages "are intended as punishment for gross misbehavior for the good of the public and have been referred to as a sort of hybrid between a display of ethical

indignation and the imposition of a criminal fine." (internal citation omitted)); *Karen S. v. Streitferdt*, 172 A.D.2d 440, 441 (N.Y. App. Div. 1st Dep't 1991) ("Even where there is gross negligence, punitive damages are awarded only in 'singularly rare cases' such as cases involving an improper state of mind or malice or cases involving wrongdoing to the public."). In this case, the City must demonstrate that ExxonMobil acted with spite, malice, fraudulent or evil motive, or with such a conscious disregard of the interests of others that ExxonMobil's conduct was willful or wanton. *See, e.g., Carvel Corp. v. Noonan*, 350 F.3d 6, 24 (2d Cir. 2003) (citing *Prozeralik v. Capital Cities Comm'ns, Inc.*, 82 N.Y.2d 466, 479, 605 N.Y.S.2d 218, 225 (1993)). "Punitive damages are available only in those limited circumstances where it is necessary to deter defendant and others like it from engaging in conduct that may be characterized as 'gross' and 'morally reprehensible' and of 'such wanton dishonesty as to imply criminal indifference to civil obligations.'" *Fortnow v. Hughes Hubbard & Reed, L.L.P.*, 2005 N.Y. Slip Op. 52140U, at *5 (N.Y. Sup. Ct. 2005) (internal citation omitted).

Conscious disregard for the rights of others may be found only where a defendant's actions were "reckless or wantonly negligent." *Acker v. Garson*, 759 N.Y.S.2d 609, 610 (N.Y. App. Div. 3d Dep't 2003). The Second Circuit has held that "the recklessness that will give rise to punitive damages must be close to criminality," and like criminal behavior, must be "clearly established." *Roginsky v. Richardson-Merrell, Inc.*, 378 F.2d 832, 843 (2d Cir. 1967); *accord Gellman v. Seawane Golf & Country Club*, 24 A.D.3d 415, 418-19, 805 N.Y.S.2d 411, 418 (N.Y. App. Div. 2d Dep't 2005) (requiring the demonstration of "quasicriminal" behavior to support a punitive award). Indeed, even damage caused by a drunk driver is not enough alone to support an award of punitive damages – willful or wanton reckless conduct is required. *Taylor v. Dyer*, 190 A.D.2d 902, 903 (N.Y. App. Div. 3d Dep't 1993).

No New York court has, as far as we can determine, awarded punitive damages for property damage allegedly caused by the accidental release of a contaminant. *See e.g. Prato v. Vigliotta*, 253 A.D.2d 749, 750, 677 N.Y.S.2d 380, 381 (N.Y. App. Div. 2d Dep't 1998) (dismissing punitive damages claim where defendant's underground storage tank had leaked twice); *Taylor v. Leardi*, 120 A.D.2d 727, 728, 502 N.Y.S.2d 514, 516 (N.Y. App. Div. 2d Dep't 1986) (denying punitives for defendant whose blasting caused disturbance to plaintiffs' property); *Boomer v. Atlantic Cement Co., Inc.*, 72 Misc. 2d 834, 837, 340 N.Y.S.2d 97, 101 (N.Y. Sup. Ct. Albany Co. 1972) (same).

Indeed, New York courts routinely deny punitive damage requests based solely on property damage. *Gellman*, 24 A.D.3d at 418-19, 805 N.Y.S.2d at 414 ("While the plaintiffs' evidence demonstrated that the defendant had knowledge that the golf balls from its driving range were causing damage . . . there was no evidence that the defendant's behavior was utterly reckless, malicious, or fraudulent.") *Id.*

Moreover, where the state has sanctioned the very conduct that is alleged to have been wrongful, punitive damages are not proper. In *Booth v. Hanson Aggregates New York, Inc.*, 16 A.D.3d 1137, 1137-38, 791 N.Y.S.2d 766, 768 (N.Y. App. Div. 4th Dep't 2005), nineteen plaintiffs alleged that the defendant's operation of a quarry lowered the water table and drained their private wells. *Id.* The plaintiffs asserted causes of action for negligence, trespass, private nuisance, and public nuisance. *Id.* at 1138. The Appellate Division found that the lower court had properly granted the defendant judgment as a matter of law on the issue of punitive damages. *Id.* at 1139. The court reasoned that the defendant's action could not be reckless or wanton because following the draining of the private wells, it had "hired a consultant to conduct an extensive study, which concluded that defendant's activities for the most part did not have a

negative effect on neighboring wells" and applied for and received a renewal of its permit from the NYSDEC to continue its mining operations. *Id.* Although the plaintiff's expert in *Booth* disputed the validity of that study, the court found that "it cannot be said that the conduct of defendant in continuing its operation of the quarry in reliance upon that study and in accordance with the permit issued by the DEC constituted willful or wanton negligence or recklessness." *Id.*

Further, the harm that the product causes must be serious, substantial harm to justify an award of punitive damages under New York law. *United States v. Hooker Chemicals & Plastics Corp.*, 850 F. Supp. 993, 998 (W.D.N.Y. 1994), a case concerning the infamous "Love Canal" site that served as a landfill for toxic waste for years, is instructive. In *Hooker*, a residential community and school were built directly on top of that former landfill. *Id.* In 1978, a noticeable quantity of the chemical residues surfaced and seeped into neighboring homes. *Id.* The chemical waste was present on a playground, prompting the state to declare a health emergency. *Id.* at 1040-41. Reports from years earlier indicated that the defendants previously were informed that children had sustained burn injuries to their faces and eyes as a result of their exposure at the playground. *Id.* at 1037. However, the *Hooker* court denied punitive damages in part because the injuries sustained were not "serious" or of a "permanent" nature. *Id.* at 1068, 1077. The *Hooker* court stated that, "actual awards of punitive damages are rare in the absence of conclusive evidence of serious injury or deliberate flaunting of regulatory standards." *Id.* at 1068; *see also id.* at 1002 (noting that "the State did not present a single case in which punitive damages were awarded absent serious injury").

Here, the regulations issued by the EPA that authorized the use of MTBE in gasoline were promulgated pursuant to a specific statutory command found in 42 U.S.C. § 7545(k)(1)(A). That section provided that EPA, in determining how to achieve the goal of "establishing

requirements for reformulated gasoline [that] require the greatest reduction in emissions," "tak[e] into consideration the cost of achieving such emission reductions, any non air-quality and other air-quality related health and environmental impacts and energy requirements." *Id.* Fulfilling this statutory direction, EPA then authorized the use of MTBE in gasoline and ExxonMobil thereafter used MTBE. It is impossible to comprehend how ExxonMobil's use of MTBE could even be considered negligent because it was behavior authorized by the government after a careful weighing of stated statutory criteria. To call such use of MTBE wanton, and close to criminality, would be ridiculous. Further, there is no evidence that ExxonMobil even negligently – and certainly not wantonly or with criminal indifference – failed to warn or spilled gasoline. Finally, the result of ExxonMobil's actions – possible future contamination in an amount at or below what the State allows by law (*i.e.* 10 ppb) – is not even a regulatory violation; it is not even *malum prohibitum*. To conclude that it is *malum in se* would, again, turn logic on its head. After all is said and done, in the eyes of the State of New York, the City's Station 6 water is potable and, according to what the jury already has told us in this case, is exactly what the City represents that water to be: "safe." If the jury here happens to find that MTBE levels at or below the MCL somehow caused "injury," that injury could only be for the aesthetic quality of the water – possible taste and odor complaints. Whatever that is, it is not serious damage. In sum, there is <u>no</u> basis to permit a jury to award punitive damages here because there is no basis for the jury here to find that either the conduct or the result of that conduct is tantamount to criminality.

### III. THE TESTIMONY AND OTHER EVIDENCE THAT PLAINTIFF PROPOSES TO OFFER WITH RESPECT TO REPREHENSIBILITY SHOULD BE PRECLUDED.

At the September 18, 2009 hearing, the City stated that it wished to put on evidence of reprehensibility in support of its claim for punitive damages. Specifically, it stated that it wished to present two witnesses: one to testify as to "MTBE pollution in other states" and another to testify "about how Exxon supplied MTBE gasoline to those areas." The dialogue is reproduced below:

> MR. CHAPMAN: Your Honor, I sent a reply e-mail because I just got that this morning. It is our position that we will, I think, and are obligated to put on evidence of reprehensibility.
>
> THE COURT: I thought you were going to do that in this phase. I thought we discussed that.
>
> MR. CHAPMAN: We were putting on evidence of malice in this phase. Reprehensibility is different because it goes to other similar bad acts which would not be relevant in this phase if we are going to talk about California or whatever. But the Supreme Court has told us we need to do that.
>
> THE COURT: Right.
>
> MR. CHAPMAN: So we do intend to put on some evidence on that, and I'm happy to –
>
> THE COURT: It is true that the Supreme Court has spoken about the word reprehensibility, and this is not the time for me to pull from my memory the quotes of what they have said, but I think I've written on it maybe in the Suffolk case. The bottom line is Mr. Sacripanti goes on to say: If the Court will permit testimony, I would like a list of plaintiff's witnesses, and we would be prepared to do the same. And we won't know whether the phase is necessary until after the jury's verdict. And, yes, I will want to proceed immediately, you are right about that, Mr. Sacripanti. So let's assume for the sake of argument I get the usual flurry of more letters that I do have to allow this so-called reprehensibility proof. Who is it?
>
> MR. CHAPMAN: It is going to be Dr. Fogg, who is going to testify about other MTBE pollution in other states in groundwater, and it will be Mr. Burke will come back to talk about how Exxon supplied MTBE gasoline to those areas. It

will be very similar proof to what we've had to date. Dr. Fogg in his expert report in fact talked about California.

*Transcript of September 18, 2009 Hearing* at pp. 5029-5030.

This request to introduce such evidence appears to be based on *Philip Morris USA v. Williams*, 549 U.S. 346 (2007), where the Court held:

> Respondent argues that she is free to show harm to other victims because it is relevant to a different part of the punitive damages constitutional equation, namely, reprehensibility. That is to say, harm to others shows more reprehensible conduct. Philip Morris, in turn, does not deny that a plaintiff may show harm to others in order to demonstrate reprehensibility. Nor do we. Evidence of actual harm to nonparties can help to show that the conduct that harmed the plaintiff also posed a substantial risk of harm to the general public, and so was particularly reprehensible—although counsel may argue in a particular case that conduct resulting in no harm to others nonetheless posed a grave risk to the public, or the converse. Yet for the reasons given above, a jury may not go further than this and use a punitive damages verdict to punish a defendant directly on account of harms it is alleged to have visited on nonparties.

*Id.* at 355. This evidence should not be admitted.

First, Mr. Burke's numerous expert reports do not address the issue of Exxon's supply of gasoline into areas other than New York. Consequently, the testimony should not be admitted in any event. *See e.g. Ebron v. United States*, 2008 U.S. Dist. LEXIS 70120, at *7-*8 (S.D.N.Y. September 17, 2008) (expert precluded from testifying as to matters not in his report by operation of Fed. R. Civ. P. 37(c)(1)).

Second, "MTBE pollution in other states" does not show that ExxonMobil harmed anyone, and the added testimony (if admitted into evidence), "about how Exxon supplied MTBE gasoline to those areas" does not supply the missing link. The only apparent purpose of this testimony is to lead the jury to believe that since ExxonMobil supplied gasoline into the various markets, it must be assumed that ExxonMobil contaminated the wells in those markets. However, showing a party provided product into a market, is market share proof, which

precludes the award of punitive damages.[1]  It obviously cannot serve to increase punitive damages under the guise of reprehensibility.  Nor can the experts that plaintiffs seek to call testify as to causation in fact by ExxonMobil's gasoline in those "other states," absent a factual record which, as far as we know, does not exist, because such testimony would be pure speculation, and beyond their competence.

Third, the Supreme Court in the *Phillip Morris* case specifically cautioned:

> How can we know whether a jury, in taking account of harm caused others under the rubric of reprehensibility, also seeks to *punish* the defendant for having caused injury to others?  Our answer is that state courts cannot authorize procedures that create an unreasonable and unnecessary risk of any such confusion occurring.  In particular, we believe that where the risk of that misunderstanding is a significant one – because, for instance, of the sort of evidence that was introduced at trial or the kinds of argument the plaintiff made to the jury – a court, upon request, must protect against that risk.  Although the States have some flexibility to determine what *kind* of procedures they will implement, federal constitutional law obligates them to provide *some* form of protection in appropriate cases.

*Phillip Morris,* 549 U.S. at 356 (emphasis in original).

Here, the proposed testimony is designed to create the impression that ExxonMobil in

---

[1] As *Hymowitz* held, where market share is being used to prove causation, liability is several only.  *Hymowitz*, 73 N.Y.2d 487, 512-13 (1989) ("we eschewed exculpation to prevent the fortuitous avoidance of liability, and thus, equitably, we decline to unleash the same forces to increase a defendant's liability beyond its fair share of responsibility).

This reasoning does not change by calling market share "evidence" of traditional causation (which it is not) instead of an alternative "theory" of causation (which it was intended to be).  Nor does it change this Court's reasoning that:

> Practical considerations weigh in favor of not allowing a jury to award punitive damages where plaintiffs rely on market share liability.  In particular, the theory relies on the assumption that plaintiffs cannot prove which defendant injured them.  Because this method of proof is easier for plaintiffs than proving which defendants actually caused the harm, plaintiffs have an incentive to rely on market share liability, even when they could, with greater effort, identify the particular defendant or defendants that caused their injuries.

*In re MTBE Products Liability Litigation*, 517 F. Supp. 2d. 662, 671 (S.D.N.Y. 2007).

fact caused harm where there is absolutely no evidence that it did. The only reason to proceed in this fashion is so that the jury will hold ExxonMobil responsible for that harm. No instruction can cure these multiple misimpressions.

Finally, if any punitive damages are permitted in this case, then the economic evidence should be limited to ExxonMobil's economic benefit from doing business only in the geographic area involved here – the City of New York. If this jury were enabled to "punish" ExxonMobil on the basis of its nationwide or worldwide economic benefit, and should another jury in another case also do so in the future, ExxonMobil would be subjected to multiple punishment for the same conduct.

## CONCLUSION

The Court should preclude all evidence and argument regarding punitive damages and joint and several liability, including the testimony of Dr. Fogg and Mr. Burke.

September 25, 2009
New York, New York

Peter John Sacripanti
James A. Pardo
Stephen J. Riccardulli
McDermott Will & Emery LLP
340 Madison Avenue
New York, NY 10017-4613
(212) 547-5400

Jennifer Kalnins Temple
McDermott Will & Emery LLP
18191 Von Karman Avenue
Suite 500
Irvine, CA 92612-7108

Counsel for Exxon Mobil Corporation

## **CERTIFICATE OF SERVICE**

Lisa A. Gerson, pursuant to 28 U.S.C. 1746, hereby declares under penalty of perjury, that on the 25th day of September, 2009, I caused to be served by electronic means upon counsel for plaintiff, a true and correct copy of: NOTICE OF MOTION OF EXXON MOBIL CORPORATION'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING (I) JOINT AND SEVERAL LIABILITY AND (II) PUNITIVE DAMAGES AND TO PROHIBIT THE PROPOSED TESTIMONY OF DR. FOGG AND MR. BURKE.

*/s/ Lisa A. Gerson*
Lisa A. Gerson