UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation<br><br>**This document pertains to:**<br><br>*City of New York v. Amerada Hess Corp. et al.*,<br>Case No. NY-04-CV-03417 | Master File No. 1:00-1898<br>MDL 1358 (SAS)<br>M21-88 |

**MEMORANDUM OF EXXON MOBIL CORPORATION
(A) IN FURTHER SUPPORT OF ITS MOTION *IN LIMINE* TO EXCLUDE EVIDENCE
AND ARGUMENT REGARDING (I) PUNITIVE DAMAGES AND (II) TO PROHIBIT
THE PROPOSED TESTIMONY OF DR. FOGG AND MR. BURKE AND
<u>(B) IN REPLY TO PLAINTIFFS' OPPOSITION TO THAT MOTION</u>**

**PRELIMINARY STATEMENT**

This memorandum is submitted on behalf of Exxon Mobil Corporation ("ExxonMobil"), in further support of its motion *in limine* to exclude evidence relating to punitive damages ("Motion") and in reply to Plaintiffs' Opposition to that Motion.[1]

In its opposition to the Motion, Plaintiffs ("the City") seek to establish three propositions:

(1) That the Motion is wrongly made as a motion *in limine*, because, the City says, it should be a Rule 50 motion;

(2) That the evidence currently in the record is sufficient to meet New York's demanding legal standard for considering an award of punitive damages; and

(3) That the proposed (and never disclosed) opinions of Dr. Fogg and Mr. Burke and other putative evidence about ExxonMobil's alleged shipment of gasoline containing MTBE into other jurisdictions somehow is relevant to the issue of punitive damages.

In each instance, the City misses the dispositive point. We reply *seriatim*.

**ARGUMENT**

**I.   THE MOTION IS PROPERLY A MOTION *IN LIMINE***

The City argues for a page and a quarter that the Motion is really a Rule 50 motion and not an *in limine* motion. (City Opp. Memo. at 2-3).

The Court has made it clear that motions to preclude evidence as to punitive damages are motions *in limine*, not summary judgment motions under Rule 56. *In re MTBE Products Liab. Lit.*, 517 F. Supp. 2d 662, 664-67 (S.D.N.Y. 2007) (treating defendants' motion to dismiss claims for punitive damages as a motion in limine.) Rule 50 applies the same standard after trial as Rule

---

[1] For ease of reference, cites to ExxonMobil's opening memorandum on this motion, dated September 25, 2009 will appear as "Exxon's Memo.," and cites to Plaintiffs' Opposition Memorandum dated September 30, 2009, will appear as "City Opp. Memo."

56 applies before trial. It is true that Rule 50 applies to "issues" while Rule 56 applies to a claim or a "part" of a claim, and we grant that use of the word "issue" in Rule 50 <u>might</u> <u>be</u> a way to distinguish the Court's prior ruling that an *in limine* motion is the proper way to proceed. However, given that Rule 50 and Rule 56 are substantively the same, such a distinction is far from clear, and, we believe, a distinction that the Court, not us or the City (which ignores the Court's prior ruling), should venture to draw.

In any event, what the City overlooks is that ExxonMobil is seeking to preclude evidence (and hence preclude another phase of this trial). Such relief is traditionally what *in limine* motions seek.[2]

## II. THE EVIDENCE IN THE RECORD DOES NOT SUPPORT AN AWARD OF PUNITIVE DAMAGES, AND HENCE THE PREDICATE FOR THE PROPOSED TESTIMONY OF DR. FOGG AND BURKE AND FOR ANOTHER PHASE OF TRIAL FAILS

The City claims that the evidence to date in this case is enough to support a jury award of punitive damages and, hence, that further trial days are needed to consider the testimony of Dr. Fogg and Mr. Burke and other evidence about ExxonMobil's alleged "reprehensibility." (City Opp. Memo. at 3-7).

---

[2] The City's footnote detour into the burden of proof (City Opp. Mem. at 2, n.1) deserves no more than a footnote response. The *Greenbaum* decision cited by the City (*Greenbaum v. Svenska Handelsbanken*, NY, 979 F. Supp. 973 (S.D.N.Y. 1997)) has been specifically rejected by the Second Department, limited by the Supreme Court of New York County and not considered by the only court empowered to clarify the issue – the New York Court of Appeals. *Randi A.J. V. Long Island Surgi-Center*, 46 A.D. 2d 74, 86, 842 N.Y.S. 2d 558, 568 (2d Dept. 2007) (rejecting *Greenbaum* and holding that trial court erred in failing to charge the jury that the burden was "clear and convincing evidence."); *Rose v. Brown & Williamson Tobacco Corp*., 10 Misc. 3d 680, 705, 809 N.Y.S. 2d 784, 802-03 (N.Y. Sup. Ct. 2005). In any event, since the City indicates that it will win under either standard (City Opp. Memo. at 2, n.1), we urge the Court to take it at its word, apply the "clear and convincing" standard that New York law says is the correct standard.

Quite literally, the City has ignored the law governing punitive damages in New York. As every New York practitioner knows, for conduct to be *potentially* punishable by punitive damages in New York that conduct has to approach criminality. Specifically, the conduct must have been "morally reprehensible," "of such wanton dishonesty as to imply criminal indifference to civil obligations," and "close to criminality." *Fortnow v. Hughes Hubbard & Reed, LLP*, 2005 N.Y. Slip. Op. 52140U, at *5 (N.Y. Sup. Ct. 2005); *Roginsky v. Richardson-Merrell, Inc.*, 378 F.2d 832, 834 (2d Cir. 1967), *see also Home Ins. Co. v. Am. Home Prods. Corp.*, 75 N.Y.2d 196, 203 (1990).

The conduct that the City contends may support going to Phase IV does not come close to the New York standard. For example, the City argues that ExxonMobil was aware of the alleged "hazardous" characteristics of MTBE in the 1990's but continued to manufacture, distribute and sell gasoline containing MTBE. City Opp. Memo. at 3. Among the alleged known "hazards" is that MTBE creates a risk of cancer. What the City fails to recognize is that the existence of that risk remains in dispute today. Indeed, the scientific and governmental communities continue to investigate the health risks, if any, associated with MTBE. The trial record is replete with evidence regarding the various governmental agencies and international authorities who have <u>not</u> classified MTBE as a human carcinogen. More to the point however, is that for purposes of this case, no one has ever been diagnosed has having developed cancer from exposure to MTBE. Trial Tr. at 2982:4-7 (Schindler).

Similarly, the scientific community in not in agreement regarding the levels at which MTBE will be perceived in drinking water. Indeed, the City conceded at trial that it could not attribute a single taste or odor complaint to the presence of MTBE. Trial Tr. 2991:12-17. Moreover, the testimony of the City's expert witnesses confirmed that the City will never be

injured by people tasting or smelling MTBE in drinking water because the jury's Phase II finding confirmed that MTBE will never be detected in Station 6 well water above 10 ppb. Plaintiffs' expert Dr. Lawless testified that he believes the taste and odor threshold for MTBE is 14-15 ppb. Trial Tr. 2888:20-25. The City's other expert, Dr. Rudo, testified that based on his experience MTBE would not be objectionable at levels below 50 ppb. Trial Tr. 3280:6-12.

Notwithstanding the City's characterization of the evidence, for purposes of the instant motion, the fact remains that the City has not suffered a "serious" or "permanent" injury which would justify an award of punitive damages. *United States v. Hooker Chemicals & Plastics Corp.*, 850 F. Supp 993, 998 (W.D.N.Y. 1994). The City's sole alleged injury is for an interference with its usufructuary right to appropriate groundwater. In Phase II of the trial, the jury found that the future levels of MTBE in the Station 6 wells will peak at a level of 10 ppb – a level equal to the New York State Maximum Contaminant Level. As such, the presence of MTBE does not constitute an injury as a matter of law. Even if the jury were to conclude that levels below the MCL constitute an injury Phase III, such an injury -- attributable to very low levels of MTBE -- would not be sufficient to justify the imposition of punitive damages.

Nor would such an injury be permanent. Indeed, the City's claims are based on the need to build the Station 6 facility to treat a variety of other contaminants, including MTBE. Assuming treatment is necessary, it would only be temporary in nature.

In sum, the City can bluster all it wants about business decisions made decades ago in response to legislation carefully considered by and passed by the United States Congress in order to achieve cleaner air. But no matter what the City says, it cannot escape these simple facts:

1. There is no evidence of any personal injury of any kind resulting from exposure to MTBE.

2.      There is no evidence of serious permanent injury to the City's sole property right to reasonably appropriate groundwater at Station 6 one day in the future.  The jury here has found that if the wells are ever used, the level of MTBE in them will never go higher than 10 ppb -- i.e., what New York's MCL, set conservatively to protect human health, says is allowable in "potable" drinking water.  Such levels of MTBE do not even violate a regulation, much less a statute and any conceivable "damage" here is aesthetic – taste and odor – if indeed there is any damage at all.

3.      Finally, despite the City's attempt to inflame the Court (City Opp. Memo. at 6), we have not disregarded the Court's ruling that ExxonMobil cannot argue that the EPA <u>approved</u> the use of MTBE.  We have argued, and believe we are not precluded from arguing, that after a careful weighing of the pros and the cons mandated by Congress, the EPA <u>authorized</u> the use of MTBE in gasoline (at the same time mandating that refiners use one or more of a short list of authorized additives, of which MTBE was one).  (Exxon's Memo. at 4-5).

To call conduct "quasi-criminal" or "close to criminality" when that conduct did not violate a regulation (much less a statute) caused no serious or permanent damage, and consisted of use of a substance authorized by the Federal Government for the very purpose to which it was put, in circumstances where the defendant was compelled by law to use at least one such substance, would strip all meaning out of the word "criminal."

**III.   THE EVIDENCE PROFFERED BY THE CITY WITH RESPECT
        TO REPREHENSIBILITY SHOULD NOT BE ALLOWED**

As an initial matter, since the predicate for punitive damages fails (see Point II) above, there is no need for further evidence.  But, in any event, the proffered evidence should not be admitted into evidence.

By arguing the absence of any proof that ExxonMobil harmed anyone in any other jurisdiction "misses the point" (City Opp. Memo. at 10), the City all but concedes that it has no valid evidence of any such injury. Its *ipse dixit*, that it needs no such evidence because ExxonMobil has "missed the point," is an unsupported assertion devoid of citation which departs from the very test that *Phillip Morris* established and the City itself concedes it must meet. To quote the City quoting *Phillip Morris*:

> <u>Evidence of actual harm to nonparties</u> can help to show that the conduct that harmed the plaintiff also posed a substantial risk of harm to the general public, and so was particularly reprehensible. *Phillip Morris USA v. Williams*, 549 U.S. 346, 355, 127 S. Ct. 1057 (2007).
>
> That is precisely what the City seeks to do here.

(City Opp. Memo. at 8) (emphasis added).

Any doubt that the City is planning to lead the jury to concluding that ExxonMobil actually caused harm in other jurisdictions is removed by the City's proffered instruction, which reads in part:

> In arriving at your decision as to the amount of punitive damages you should consider . . . Exxon Mobil's awareness of what harm the conduct caused . . . and the actual harm . . . created by ExxonMobil's conduct including the harm to individuals or entities other than plaintiff the City. However, **although you may consider the harm to individuals or entities other than plaintiff the City in determining the extent to which ExxonMobil's conduct was reprehensible, you may not add a specific amount to your punitive damages award to punish ExxonMobil for the harm ExxonMobil caused to others.**

(City Opp. Memo. at 11) (emphasis in the original).

Thus, in one breath the City acknowledges it must show actual harm by ExxonMobil's conduct in the other jurisdictions to satisfy the *Phillip* Morris test and in the next argues that it doesn't. This type of inconsistency should not obscure what is truly going on here. Indeed, what the City is trying to do should be patently clear. It has no evidence whatsoever that ExxonMobil caused any harm in any other jurisdiction. It says that it has evidence of supply by ExxonMobil

into other jurisdictions. It says it has evidence of harm in those other jurisdictions. But it has no evidence of the causal link. Obviously, it wants the jury to draw the causal link that it cannot prove – that ExxonMobil caused injury in other jurisdictions.

The prejudice created by such evidence is not correctible at all, but certainly is not correctible absent a detailed showing, that could take weeks, of the entire market in those jurisdictions, something that ExxonMobil is not prepared to do in any event because it has had no adequate notice of this line of proof. And to compound the problem, the City seeks to "safeguard" ExxonMobil as required by *Phillip Morris* by an instruction quoted above, that suggests the very thing the City cannot prove – actual harm in those other markets caused by ExxonMobil.

Without meaning to reargue any rulings, and as we pointed out in our prior brief (Exxon's Memo at 7-8), the City is trying to get the jury to infer from evidence of supply a causal link to contamination. It looks like market share to us, and market share precludes punitive damages by this Court's previous rulings. (*Id.*). Consequently, it is inconceivable it can be used to support a punitive damage award. The problem is vastly compounded here where there will be evidence only of ExxonMobil's supply (apparently) into widely diverse and broad markets where there has been no discovery (i) of the market or (ii) of the contamination on either a gross or well-by-well basis, or (iii) of the real (as opposed to assumed) cause of that contamination. The thought that ExxonMobil is prepared to take this on at trial with no notice because it has somehow prepared for this (City Opp. Memo. at 9) is frankly, silly. Dr. Fogg's previous reports were not being offered for this purpose, and ExxonMobil had no reason to conduct discovery of vast and diverse markets to respond to those reports. Further, while ExxonMobil as an entity "knows full well" where its assets historically were (City Opp. Memo. at 9), it will be difficult to

fit the entire entity into the courtroom, especially on short notice, to cross examine Mr. Burke. (And, more to the point, without the sarcasm, impossible to prepare the lawyers and the witnesses on such a complex subject on such short notice.) This is the worst type of sandbagging, and should be seen for what it is.[3]

Finally, while the City can cite nothing to prevent this Court from limiting financial evidence to ExxonMobil's economic benefit in New York, it also has no answer to the argument that unless the Court does so, ExxonMobil could be subject to being "punished" many times over if each court allows such punishment without geographical limitation. While the City can and does say that we have shown no support for such a limitation, we believe that the Constitution and the limits it places on punitive damages is very good authority indeed.

## CONCLUSION

This motion should be granted and the Court should preclude all evidence and argument regarding punitive damages, including the testimony of Dr. Fogg and Mr. Burke.

October 2, 2009
New York, New York

/s/ Peter John Sacripanti
Peter John Sacripanti
James A. Pardo
Stephen J. Riccardulli
McDermott Will & Emery LLP
340 Madison Avenue
New York, NY  10017-4613
(212) 547-5400

---

[3] The City's offer to serve supplemental expert report and make Dr. Fogg and Mr. Burke available for deposition will not cure the prejudice to ExxonMobil. To attempt to conduct such broad discovery on an expedited schedule is unfair and will likely result in inaccurate results. Further, to force the jury to wait – after 9 weeks of trial – for such discovery to be completed is inconsiderate at best and burdensome at worst. The City has long contemplated its request to prove punitive damages. The time to develop the proof of reprehensibility has long passed.

- 9 -

                                              Jennifer Kalnins Temple
                                              McDermott Will & Emery LLP
                                              18191 Von Karman Avenue
                                              Suite 500
                                              Irvine, CA  92612-7108
                                              Counsel for Exxon Mobil Corporation

## CERTIFICATE OF SERVICE

Lisa A. Gerson, pursuant to 28 U.S.C. 1746, hereby declares under penalty of perjury, that on the 2nd day of October, 2009, I caused to be served by electronic means upon counsel for plaintiff, a true and correct copy of: MEMORANDUM OF EXXON MOBIL CORPORATION (A) IN FURTHER SUPPORT OF ITS MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING (I) PUNITIVE DAMAGES AND (II) TO PROHIBIT THE PROPOSED TESTIOMNY OF DR. FOGG AND (B) IN REPLY TO PLAINTIFFS' OPPOSITION TO THAT MOTION

Lisa A. Gerson