# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

CITY OF NEW YORK, *et al.*,

        Plaintiffs,

  - against -

EXXON MOBIL CORPORATION,

        Defendant.

------------------------------------X

**AMENDED**
**JURY**
**CHARGE**
**PHASE III**

04 Civ. 3417 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

I.     **INTRODUCTORY REMARKS**

    A.     **Juror Attentiveness**

        Members of the jury, you are about to decide the fact issues raised in Phase III of this case. Before you do that, I will instruct you on the law. Please pay close attention to me. I will go slowly and will be as clear as possible.

    B.     **Prior Instructions**

        Each of the instructions I gave you with respect to Phase I continue to apply here. I will not take the time to read them to you again. However, you should not hesitate to consult the written instructions I provided for Phase I as you deliberate on Phase III.

0

## II. THE INTERROGATORY QUESTIONS

### A. General Instructions for All Claims

The instructions regarding injury, causation and contribution as set forth in this section of the charge apply to all the claims in this case unless otherwise indicated. Except where the instructions specifically indicate otherwise, in order to find ExxonMobil liable for any of these claims, you must find that the City has been injured and that ExxonMobil was a cause of or contributed to the City's injury as those terms are defined in this section of the charge.

#### 1. Injury (Question 1)

Except where the instructions specifically indicate otherwise, for each claim discussed below, the City must show, by a fair preponderance of the credible evidence, that it has been, or will be, injured. In Phase I, you found that the City intends, in good faith, (a) to begin construction of the Station 6 treatment facility within the next fifteen years and (b) to use the water supplied by the Station 6 wells for back-up purposes within the next fifteen to twenty years. In Phase II, you found by a fair preponderance of the credible evidence that MTBE will peak at a level of ten parts per billion in the combined outflow of Station 6 in 2033, assuming the wells are turned on within the next fifteen to twenty years. The first question you must now answer is whether the City is, or will be, injured by the

MTBE that will be in the combined outflow of the Station 6 wells, given that (a) the City intends, in good faith, to use the water from the Station 6 wells within the next fifteen to twenty years to serve as a back-up source of drinking water and (b) MTBE will peak at a level of 10 parts per billion in the combined outflow of the Station 6 wells in 2033. Specifically, the question is whether the City has proven, by a fair preponderance of the credible evidence, that a reasonable water provider in the City's position would treat the water to reduce the levels, or minimize the effects, of the MTBE in the combined outflow of the Station 6 wells in order to use that water as a back-up source of drinking water.

It is not enough for the City to prove that any MTBE, no matter how little, will be in the combined outflow of the Station 6 wells. I have already ruled that the City's water is not injured, or otherwise harmed, merely because it has been contaminated by a small amount of MTBE. It is up to you to determine whether the level of MTBE that you have found will be in the Station 6 wells in the future will constitute an injury to the City.

### 2a.   Direct Spiller *Causation* (Question 2)

ExxonMobil is or was the owner or controller of underground storage tank systems located at the following stations in Queens County, New York:   84-04 Parsons Blvd; 113-21 Merrick Blvd; 138-50 Hillside Ave; 165-01

Hillside Ave; 162-35 N Conduit; 177-90 S Conduit.   The City alleges that MTBE leaked from these underground storage systems and injured, or will injure, its Station 6 wells.   ExxonMobil denies this.   If you find that the City has proven, by a fair preponderance of the credible evidence, that (a) at the time that ExxonMobil owned or controlled some or all of these underground storage systems, they leaked gasoline containing MTBE and that (b) these leaks caused, or will cause, an injury to the City's Station 6 wells, then you will find that ExxonMobil was a cause of the City's injury as a direct spiller.

An act or omission is regarded as a cause of an injury if it is a substantial factor in bringing about the injury, that is, if it has such an effect in producing the injury that reasonable people would regard it as a cause of the injury.   There may be more than one cause of an injury, but to be substantial, it cannot be slight or trivial.   You may, however, decide that a cause is substantial even if you assign a relatively small percentage to it.

### 2b. Manufacturer, Refiner, Supplier or Seller *Causation*
### (Question 3)

You must next consider whether MTBE from gasoline that was manufactured, refined, supplied or sold by ExxonMobil was a *cause* of the City's injury.   If you find that ExxonMobil's conduct in manufacturing, refining,

3

supplying, or selling gasoline containing MTBE was a substantial factor in causing the City's injury, then you will find that ExxonMobil was a *cause* of the City's injury in its capacity as a manufacturer, refiner, supplier or seller.   In making this decision, you should consider how much, if any, of the gasoline containing MTBE that was delivered to the locations that are the sources of the MTBE that injured, or will injure, the Station 6 wells came from gasoline containing MTBE that was manufactured, refined, supplied or sold by ExxonMobil.   **In evaluating this, you may consider, as circumstantial evidence, ExxonMobil's percentage share of the retail and/or supply market for gasoline containing MTBE in Queens or to any other region that you determine is relevant.**

An act or omission is regarded as a cause of an injury if it is a substantial factor in bringing about the injury, that is, if it has such an effect in producing the injury that reasonable people would regard it as a cause of the injury.   There may be more than one cause of an injury, but to be substantial, it cannot be slight or trivial.   You may, however, decide that a cause is substantial even if you assign a relatively small percentage to it.

If you decide that ExxonMobil's conduct was a *cause* of the City's injury as a direct spiller or in its capacity as a manufacturer, refiner, supplier or seller, then you need not decide whether ExxonMobil also *contributed* to the City's

injury as a manufacturer or refiner. If you decide that ExxonMobil's conduct was not a *cause* of the City's injury as a direct spiller or as a manufacturer, refiner, supplier or seller, you will next determine whether ExxonMobil *contributed* to the City's injury as a manufacturer or refiner.

### 2c.  Manufacturer or Refiner *Contribution* (Question 4)

If the City shows, by a fair preponderance of the credible evidence, (1) that the MTBE that injured or will injure the City comes from many refiners and manufacturers, whether because the gasoline from any source is commingled at the source and includes ExxonMobil MTBE product or because the MTBE product in the ground came from multiple sources – one of which is an ExxonMobil source – and it is now commingled in the groundwater; (2) that the combined, commingled MTBE product of many refiners and manufacturers injured, or will injure, the City; and (3) that when the commingled MTBE product injured or will injure the City it included or will include some MTBE from gasoline containing MTBE that was manufactured or refined by ExxonMobil, then you will find that ExxonMobil *contributed* to the City's injury in its capacity as a manufacturer or refiner.

A commingled product is one that contains material that is manufactured or refined by more than one company. What sets manufacturer or

refiner contribution apart from direct spiller causation is that, to prove manufacturer or refiner contribution: (a) the City need not show that MTBE from an ExxonMobil underground storage system leaked and contributed to its injury; and (b) the City need not show that ExxonMobil's contribution, taken alone, would have injured the City.   Rather, the City need only show that ExxonMobil manufactured or refined gasoline containing MTBE that *contributed* or *will contribute* to the commingled MTBE product that injured, or will injure, the City. What sets manufacturer or refiner *contribution* apart from manufacturer, refiner, supplier or seller *causation* is that, to prove manufacturer   or refiner contribution: (a) the City need not show that ExxonMobil's *contribution*, taken alone, would have injured the City, but (b) in considering the scope of ExxonMobil's contribution, you should consider only the gasoline containing MTBE that was manufactured or refined by ExxonMobil and you must exclude from your consideration any gasoline containing MTBE that was merely supplied or sold by ExxonMobil.

       To show that ExxonMobil's product is part of the commingled product that injured, or will injure, the City, the City must show that at least some amount of MTBE from gasoline that was refined or manufactured by ExxonMobil was, or will be, in the commingled product at the time and place of the City's

injury. To show that the commingled product injured, or will injure, the City, the City must show that the commingled product was a substantial factor in bringing about the injury.

  **B. Specific Instructions for Each Claim**

    **1. Strict Products Liability Claim (Questions 5 & 6)**

A manufacturer, wholesaler, distributor, retailer, processor of materials, or maker of a component part that sells a product in a defective condition is liable for injury that results from use of the product when the product is used for its intended or reasonably foreseeable purpose.

A product is defective if it is not reasonably safe _ that is, if the product is so likely to be harmful to persons or property that a reasonable person or company who had actual knowledge of its potential for producing injury would conclude that it should not have been marketed in that condition.

A product may be defective as a result of a defective design or inadequate warnings or instructions. The burden of proving that the product was defective and that the defect was a substantial factor in causing plaintiff's injury is on the plaintiff.

      **a. Defective Design (Questions 5a & 5b)**

To prevail on a product liability claim for defective design, the City

7

must prove, by a fair preponderance of the credible evidence, that (1) gasoline containing MTBE was not reasonably safe for its intended or reasonably foreseeable purpose or in light of the reasonably foreseeable harms caused by its use; (2) there was a safer, feasible alternative design at the time it was marketed; and (3) the defective design was a substantial factor in causing the City's injury. Plaintiff bears the burden of proof on each of these elements for its defective design claim.

The City claims that gasoline containing MTBE was a defectively designed product because (1) MTBE is a toxic compound that easily contaminates groundwater and drinking water supplies in part because underground gasoline storage systems have a propensity to leak and (2) gasoline containing ethanol was a feasible and safer alternative to gasoline containing MTBE.   ExxonMobil denies these claims and denies that gasoline containing MTBE was defectively designed because it contends that (1) gasoline with MTBE functioned properly for its intended purpose as a motor vehicle fuel; (2) gasoline with MTBE functioned properly for its intended purpose to reduce harmful air emissions as required by the Clean Air Act; and (3) the Clear Air Act required the use of an oxygenate such as MTBE or ethanol in gasoline, and ExxonMobil had no feasible alternative other than to use MTBE to comply with that requirement.   ExxonMobil also contends

that it was not feasible to use ethanol in New York during the relevant time period and that ethanol would not have been a safer or better alternative.

A product is not reasonably safe if the product is so likely to be harmful to persons or property that a reasonable person or company who had actual knowledge of its potential for producing injury would conclude that it should not have been marketed in that condition.

A product is defectively designed if a reasonable person who knew or should have known of the product's potential for causing injury and also knew or should have known of the feasible alternative design would have concluded that the product should not have been marketed in that condition. Whether the product should have been marketed in that condition depends upon a balancing of the risks involved in using the product against (1) the product's usefulness and its costs, and (2) the risks, usefulness and costs of the alternative design as compared to the product the defendant did market.

It is not necessary to find that ExxonMobil knew of the product's potential for causing injury in order for you to decide that it was defectively designed. It is sufficient that a reasonable person who did in fact know of the product's potential for causing injury would have concluded that the product should not have been marketed in that condition.

If you find that, at the time the gasoline containing MTBE was marketed, the product was reasonably safe or that there was no feasible, safer alternative design, then you will have found that there is no design defect.

If you find that, at the time the gasoline containing MTBE was marketed, the product was not reasonably safe and that there was a feasible, safer alternative design, then you will have found that the product was defectively designed and you will proceed to consider wether the defective design was a substantial factor in causing the City's injury.

      i.    **Direct Spiller and/or Manufacturer, Refiner, Supplier or Seller *Causation* (Question 5c)**

If you find that ExxonMobil was a *cause* of the City's injury – either as a direct spiller or in its capacity as a manufacturer, refiner, supplier or seller – then you will consider whether the design defect in ExxonMobil's gasoline containing MTBE was a substantial factor in causing the City's injury. If you find that the design defect in ExxonMobil's gasoline containing MTBE was a substantial factor in causing the City's injury, then you will find for the City on the design defect claim and you should proceed to the failure to warn claim. If you find that the design defect in ExxonMobil's gasoline containing MTBE was not a substantial factor in causing the City's injury, then you will find that the design

defect was not a *cause* of the City's injury.

### ii. Manufacturer or Refiner *Contribution* (Question 5d)

If you find that ExxonMobil *contributed* to the City's injury as a manufacturer or refiner, as defined in Section II(A)(2)(c) above, and you also find that the design defect in the commingled MTBE product was a substantial factor in causing the City's injury, then you will find for the City on this design defect claim. If you find that ExxonMobil did not *contribute* to the City's injury as a manufacturer or refiner, or you find that the design defect in the commingled product was not a substantial factor in causing the City's injury, then you will find for ExxonMobil on the design defect claim. No matter how you decide the design defect claim, you must now consider the City's failure to warn claim.

### b. Failure to Warn or Insufficient Warning (Question 6a)

The City also contends that gasoline containing MTBE was defective due to inadequate warnings because ExxonMobil failed to warn distributors, customers, station owners, its employees, gasoline truck drivers, the City, water providers, and the public that (1) MTBE is a hazardous substance and has a strong taste and odor; (2) gasoline containing MTBE needed to be stored and handled differently than other gasoline because of its high solubility, high mobility,

11

persistence, and taste and odor, all of which the City contends makes gasoline with MTBE more likely to contaminate drinking water than gasoline without MTBE, as well as the difficulty and cost of removing MTBE from water; (3) and that gasoline stations located near water supplies needed to take special precautions to upgrade their underground storage tanks earlier than may otherwise have been required by law.  ExxonMobil denies that warnings were needed beyond those it provided and contends that it was not necessary to provide a warning specifically about the risks of MTBE because (1) the release of any gasoline to the environment, with or without MTBE, is illegal in New York State, and (2) it was already providing warnings to gasoline distributors and retailers that no gasoline, with or without MTBE, should be allowed to leak into the environment, and (3) it is common knowledge that all gasoline must be handled carefully, and that no gasoline should be allowed to leak into the environment, no special warning was necessary merely because gasoline contained MTBE.

    The manufacturer of a product that is reasonably certain to be harmful if used in a way that the manufacturer should reasonably foresee is under a duty to use reasonable care to give adequate warnings to foreseeable users of the product of any danger known to it, or which in the use of reasonable care it should have known, and which the foreseeable user of the product ordinarily would not

discover. Reasonable care means that degree of care which a reasonably prudent person would use under the same circumstances.

If you find that, at the time the gasoline containing MTBE was being marketed by ExxonMobil, no additional safety warnings were necessary, then you will find that there is no failure to warn and you need proceed no further in your deliberations on this issue.

If you find that, at the time the gasoline containing MTBE was being marketed by ExxonMobil, the gasoline was defective because ExxonMobil gave no warnings or insufficient warnings to foreseeable users, then you will proceed to consider whether that alleged failure to warn was a substantial factor in causing or contributing to the City's injury.

      i.    **Direct Spiller and/or Manufacturer, Refiner, Supplier or Seller** *Causation*   **(Question 6b)**

If you find that ExxonMobil was a *cause* of the City's alleged injury – either as a direct spiller or in its capacity as a manufacturer, refiner, supplier or seller – then you will consider whether ExxonMobil's failure to warn or insufficient warning regarding gasoline containing MTBE was a substantial factor in *causing* the City's injury. To prove that a failure to warn or insufficient warning was a substantial factor in *causing* the City's injury, the City must prove,

13

by a fair preponderance of the credible evidence, that if sufficient warning had been provided by ExxonMobil to foreseeable users, then some foreseeable users of gasoline containing MTBE would have taken added precautions in handling or storing the gasoline containing MTBE or would have taken steps to reduce the sale or distribution of gasoline containing MTBE, with the result that ExxonMobil would not have been a *cause* of the City's injury.   If you find that ExxonMobil's failure to warn or insufficient warning was a substantial factor in causing the City's injury, then you will find for the City on the failure to warn claim.   If you so find you do not need to decide whether ExxonMobil's failure to warn or insufficient warning *contributed* to the City's alleged injury.   If you find that ExxonMobil's failure to warn or insufficient warning was not a substantial factor in causing the City's injury, then you will find that the failure to warn or insufficient warning was not a *cause* of the City's injury.   You must then consider whether ExxonMobil's failure to warn or insufficient warning was a substantial factor in *contributing* to the City's injury in ExxonMobil's capacity as a manufacturer or refiner.

### ii.  **Manufacturer or Refiner *Contribution***
### **(Question 6c)**

To prove that a failure to warn or insufficient warning was a substantial factor in *contributing* to the City's injury, the City must prove, by a fair