UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation

Master File No. 1:00-1898
MDL 1358 (SAS)
M21-88

This document pertains to:

*City of New York v. Amerada Hess Corp. et al.*,
Case No. NY-04-CV-03417

# EXXON MOBIL CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE* TO PRECLUDE THE TESTIMONY OF MR. BURKE IN PHASE IV

## INTRODUCTION

Should there be a punitive damages phase of the trial (Phase IV), Plaintiffs intend to offer the testimony of Bruce Burke[1], who previously testified as an expert in this trial, regarding gasoline distribution systems in California and Exxon Mobil Corporation's ("ExxonMobil") relative ranking in the industry in terms of total refining capacity and nationwide retail market share. ExxonMobil moves this Court for a ruling preventing Plaintiffs from introducing this testimony in Phase IV on the grounds that:

(1) Mr. Burke's testimony is expert testimony which was not timely disclosed;

(2) his testimony is irrelevant because it fails to establish any causal link between ExxonMobil's conduct and incidents of MTBE contamination of drinking water sources in California or elsewhere; and

(3) any possible probative value to Mr. Burke's testimony is substantially outweighed by the dangers of confusing and misleading the jury, causing unfair prejudice to ExxonMobil, and wasting time.

Mr. Burke submitted three expert reports in this case, none of which addressed the topics on which he opined in his *de benne esse* deposition this past weekend. Mr. Burke recently was preparing his fourth expert report for this case when this Court advised the parties that it would not permit Mr. Burke – or Dr. Fogg – to supplement their opinions. Plaintiffs now seek to circumvent this Court's clear directive and put Mr. Burke's supplemental expert opinions into evidence under the guise of "percipient" testimony.

---

[1] ExxonMobil separately has moved to preclude evidence and argument regarding punitive damages and the testimony of Dr. Fogg and Mr. Burke. This motion presents additional grounds for excluding Mr. Burke on the basis of the testimony he gave at a *de benne esse* deposition on October 10, 2009. The complete transcript of this deposition is appended as Attachment A.

There can be no doubt that Mr. Burke's "percipient" testimony is expert opinion in a thinly-veiled disguise. Mr. Burke admits to relying on the same sources to prepare his new expert report as formed the basis of his "percipient" testimony. Mr. Burke and an associate recently spent three days researching ExxonMobil's ranking in annual refining capacity, ExxonMobil's ranking in national retail market share, ExxonMobil's use of MTBE at its California refineries and ExxonMobil's product distribution from its refineries in California. Miraculously, what took days of research is now purportedly "percipient" witness testimony that Mr. Burke possesses as personal knowledge. Plaintiffs' transparent attempt to introduce undisclosed expert opinions should be rejected.

Additionally, efforts to introduce less-contested predicate facts must be barred as irrelevant – e.g., the geographic locations of Exxon and Mobil's U.S. refineries and pipeline systems in California. Given the breadth of these apparently uncontested facts, ExxonMobil would be forced to defend its actions nationwide. Such evidence has no probative value given the absence of proof linking ExxonMobil's gasoline to any incidents of MTBE contamination of public supply wells, and is highly prejudicial.[2] Absent such proof of causation, all of Mr. Burke's proffered testimony is irrelevant.

---

[2] Despite Plaintiffs' assertions, Dr. Fogg has not linked ExxonMobil gasoline or releases to any incidents of MTBE contamination of drinking water supplies in California or elsewhere. No such opinions are disclosed in any of his expert reports.

2

## ARGUMENT

### I. MR. BURKE'S TESTIMONY IS EXPERT TESTIMONY THAT WAS NOT TIMELY DISCLOSED.

#### A. Burke's Testimony Is Based On Hearsay, Not Personal Knowledge.

The testimony of Bruce Burke that Plaintiffs intend to introduce during Phase IV is expert testimony based on technical or specialized knowledge that was not properly disclosed before trial. The Court has already decided that, should there be a Phase IV, Plaintiffs may not present expert testimony that was not previously disclosed in expert reports. 10/8/09 Tr. 6734:11-6735:2; 6741:10-12 ("All I know that I have concluded is that they can't start with whole new proofs from experts about the transportation system. That's not going to happen."). The Court also decided that Plaintiffs could not supplement the expert disclosures of Mr. Burke, but could present percipient witness testimony about refineries and distribution systems in California. 10/2/09 Tr. at 6529:11-6532:6. Plaintiffs now intend to introduce testimony of Mr. Burke, ostensibly in the role of a percipient witness, about topics and opinions that were never disclosed in his three expert reports. It is clear from his recent testimony that Mr. Burke's knowledge is based on work he has done as an expert -- including reviewing various hearsay materials – and not his own first-hand, percipient knowledge. *See* Attachment A at 10, 15, 19-20, 26-27, 29, 36-37, 93-94. Thus, the jury should not be permitted to hear Mr. Burke's testimony in Phase IV.

During his *de benne esse* deposition, Mr. Burke testified about several topics that were not covered his expert reports. *See* Attachment A at 44-47. Specifically, Mr. Burke testified about the location of ExxonMobil refineries in the United States (Attachment A at 13-15), ExxonMobil's ranking in the industry in terms of relative refining capacity (Attachment A at 17-18), ExxonMobil's use of MTBE in California (Attachment A at 19-20), common carrier

3

pipelines in California (Attachment A at 21-36, 40-43), and ExxonMobil's ranking in the industry in terms of its relative share of the nationwide retail market (Attachment A at 38-39). Mr. Burke's knowledge of these subjects is based on hearsay, not first-hand personal knowledge, and thus is not admissible under Federal Rule of Evidence 602.

Specifically, Mr. Burke testified that his knowledge about ExxonMobil's refineries and refining capacity is based on a database maintained by his company, not first-hand knowledge. This database compiles information from the Oil and Gas Journal, as well as reports of the Energy Information Administration and the National Petrochemical and Refiners Association. Attachment A at 10, 15, 93-94. He also testified that his knowledge about ExxonMobil's use of MTBE in California is based on reports of the California Energy Commission, not his personal knowledge. Attachment A at 19-20. His knowledge of the common carrier pipelines in California is based on analyses he performed as a consultant; but he never worked as a consultant for the pipeline company, Kinder Morgan. Attachment A at 26-27, 29, 51. And his knowledge of ExxonMobil's national retail market share is not based on his personal knowledge, but rather on data published in the National Petroleum News. Attachment A at 36-37. While it may be appropriate for an *expert witness* to rely on such sources, the testimony of a *fact witness* must be based on personal knowledge. *Compare* Fed. R. Evid. 703 to Fed. R. Evid. 602.

**B.   Burke's Testimony Is Informed By His Recent Expert Work In This Case.**

Furthermore, Mr. Burke's so-called "percipient" testimony is unavoidably informed by expert work he recently has done for this case – expert work that was not timely disclosed to ExxonMobil and which the Court already has determined may not be used at trial. At his deposition, Mr. Burke testified that ExxonMobil ranked either number one or number two in terms of total refining capacity during the period from 1985 to 2003. Attachment A at 17-18.

He also testified that Exxon and Mobil combined ranked number one in terms of national retail market share every year from 1985 to 1999 and, after the merger until 2003, that ExxonMobil ranked number one or two in national retail market share. Attachment A at 38-39. These opinions are not based on direct personal knowledge, but rather are based on Mr. Burke's research and calculations as an expert. It is obvious that such testimony is opinion testimony based on specialized knowledge within the scope of Federal Rule of Evidence 702, not facts personally known to the witness under Rule 602 or opinions rationally based on the witness's perception under Rule 701.

Not coincidentally, over the last two to three weeks, Mr. Burke and a colleague each spent about a day and a half preparing an analysis of ExxonMobil's rankings in the industry in terms of refining capacity and national retail market share for the period from 1985 through 2003. Attachment A at 152-155, 166-67. Importantly, Mr. Burke admitted that he undertook this analysis for purposes of creating a supplemental expert report.[3] Attachment A at 116-17. The data sources Mr. Burke and his colleague used to prepare their analysis of ExxonMobil's rankings – the Oil and Gas Journal and National Petroleum News – happen to be the very same sources Mr. Burke testified were the basis of his "percipient" testimony on those rankings. Attachment A at 104-105, 113-14. Although Mr. Burke claimed that he testified on the basis of his general knowledge, and not the expert work he had recently done (*see* Attachment A at 169-70), it is not plausible that his recent research and analysis of ExxonMobil's rankings did not

---

[3] Tables that Mr. Burke created for a supplemental expert report were included by Plaintiffs' counsel in a proposed stipulation that was sent to ExxonMobil's counsel the day before Mr. Burke's *de benne esse* deposition. *See* Attachment A at 104-105, 113-14. This proposed stipulation was marked Exhibit 8 to the Burke deposition (appended here as Attachment B).

influence his testimony. Thus, in addition to being based on inadmissible hearsay, Mr. Burke's testimony about ExxonMobil's rankings should be excluded as untimely expert opinion.

## II. MR. BURKE'S TESTIMONY IS IRRELEVANT, MISLEADING, UNFAIRLY PREJUDICIAL AND WILL WASTE TIME.

### A. Mr. Burke's Testimony Does Not Establish That ExxonMobil's Gasoline Containing MTBE Likely Reached Drinking Water Sources.

Mr. Burke's testimony also is inadmissible because it is not relevant to any issue to be determined in Phase IV, the punitive damages phase of the trial. *See* Fed. R. Evid. 402. In support of punitive damages, Plaintiffs intend to introduce evidence of MTBE contamination in California and nationwide to establish that ExxonMobil's conduct was reprehensible. However, Mr. Burke's testimony does not establish a causal link between ExxonMobil's refining or sale of gasoline and any incidents of MTBE contamination of drinking water sources in California or elsewhere.

Mr. Burke's opinions about ExxonMobil's refining capacity and retail market share can tell the jury nothing about whether gasoline refined by ExxonMobil contaminated drinking water sources anywhere. Burke testified that ExxonMobil had the largest or second largest total refining capacity during the period from 1985 to 2003. In this context, refining capacity refers to the total volume of crude oil that can be processed by a refinery to create a variety of products, not limited to gasoline. Attachment A at 16, 85. That ExxonMobil's refineries may have been able to process more crude oil than other companies' refineries says nothing about how much gasoline ExxonMobil produced (either in terms of total volume or as a percentage of all gasoline refined in the United States), how much gasoline containing MTBE ExxonMobil produced, or where any ExxonMobil-refined gasoline was delivered. Likewise, that ExxonMobil may have had the largest or second largest share of the retail gasoline market nationwide says nothing

6

about where ExxonMobil's retail stations were located, which stations had gasoline containing MTBE, or which stations had releases of gasoline containing MTBE that contaminated drinking water supplies.

Similarly, Mr. Burke's testimony about the common carrier pipelines in California can tell the jury nothing about whether gasoline containing MTBE refined or manufactured by ExxonMobil contaminated drinking water sources in that state. Mr. Burke testified only that there are two common carrier pipeline systems in California, that gasoline shipped on those pipelines is commingled, and that ExxonMobil's refineries in California contributed gasoline containing MTBE to both pipelines. Such testimony does not establish that ExxonMobil-refined gasoline reached any location in California at any point in time, and certainly does not establish that ExxonMobil-refined gasoline containing MTBE reached a release site that impacted a drinking water well. Mr. Burke had no knowledge about basic aspects of the pipelines' operations, such as their gathering points or whether Exxon's and Mobil's refineries had the capability to directly inject product into the pipelines. *See* Attachment A at 70-74. Mr. Burke admitted that he does not know how much of the gasoline shipped on those systems is commingled, as opposed to being segregated. Attachment A at 72, 75-76. While he was somewhat familiar with the proprietary pipelines and terminals in California, including Mobil's proprietary pipeline in Southern California, he had no knowledge of Mobil gasoline shipments on its proprietary pipeline system from its Torrance Refinery. Attachment A at 60, 72-73. He also gave no testimony about the amount or percentage of gasoline produced by Exxon's former Benicia Refinery or ExxonMobil's (formerly Mobil's) Torrance Refinery or the amount of gasoline each refinery shipped on the common carrier pipelines. *See* Attachment A at 111, 126-

27. In sum, Mr. Burke's testimony is irrelevant to the issue of whether ExxonMobil-refined gasoline was present in a commingled product that impacted drinking water wells in California.

### B. Whatever Probative Value Mr. Burke's Testimony May Have Is Substantially Outweighed By The Risks Of Misleading The Jury, Unfair Prejudice To ExxonMobil, And Waste Of Time.

Even if Mr. Burke's testimony had some relevance – and it does not – it should be excluded because: (1) it will mislead the jury into believing, without credible proof, that ExxonMobil's gasoline was distributed to release sites that caused MTBE contamination of drinking water; (2) it will cause unfair prejudice to ExxonMobil in having to defend against expert testimony that was never disclosed in discovery, and was only disclosed days ago towards the end of trial; and (3) it will waste time in forcing ExxonMobil to present evidence about the complexities of the national and California gasoline supply and distribution systems to refute the incorrect notion that ExxonMobil gasoline is present in every well that has ever been contaminated with MTBE.

### CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court grant its motion *in limine* and preclude Plaintiffs from introducing the testimony of Bruce Burke in Phase IV.

Dated: New York, New York
October 13, 2009

_____
Peter John Sacripanti
James A. Pardo
Stephen J. Riccardulli
Lauren E. Handel
McDermott Will & Emery LLP
340 Madison Avenue
New York, NY 10017-4613
(212) 547-5400

*Counsel for Exxon Mobil Corporation*

8