UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE METHYL TERTIARY BUTYL ETHER
PRODUCTS LIABILITY LITIGATION

This document relates to:

*City of New York v. Amerada Hess Corporation, et al.,*
No. 04 Civ. 3417 (SAS)

Master File No. 1:00-1898
MDL 1358 (SAS)
M21-88

# DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR JUDGMENT AS A MATTER OF LAW

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................... ii

ARGUMENT ................................................................................................................... 1

I.  THE HAS CITY FAILED TO OFFER EVIDENCE THAT SUPPORTS A FINDING THAT MTBE DETECTIONS BELOW THE MCL CONSTITUTE AN INJURY. ............................................................................................................. 1

II. THE CITY HAS FAILED TO PROVE THAT EXXONMOBIL IS THE LEGAL CAUSE OF ITS ALLEGED INJURY. ................................................................. 2

    A. The City's Expert Was Unable To Connect An ExxonMobil-Specific Spill To the City's Alleged Injury ............................................................................ 2

    B. The City Has Not Proven Traditional Causation. ........................................ 3

    C. The City's Evidence In Support of the Commingled Product Theory of Causation Is Insufficient. ............................................................................ 4

III. TRIAL EVIDENCE SUPPORTS A FINDING THAT STATE-LAW LIABILITY WOULD CONFLICT WITH FEDERAL LAW. ................................................. 5

IV. TRIAL EVIDENCE PROVED THAT THERE WAS NO FEASIBLE, SAFER ALTERNATIVE TO MTBE. ............................................................................... 7

V. THE CITY OFFERED NO EVIDENCE IT SUFFERED INJURY FROM EXXONMOBIL'S ALLEGED FAILURE TO WARN. ...................................... 7

VI. TRIAL EVIDENCE PROVED THAT THE CITY'S CLAIMS ARE TIME-BARRED. ........................................................................................................... 8

VII. THE CITY FAILED TO PROVE ITS REMAINING COMMON-LAW CLAIMS. ............ 9

    A. Negligence ................................................................................................... 9

    B. Trespass ..................................................................................................... 10

    C. Private and Public Nuisance ...................................................................... 10

CONCLUSION ............................................................................................................. 11

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Colon v. BIC USA, Inc.*, 199 F. Supp. 2d 53 (S.D.N.Y. 2001) ..........................................................7

*Davis v. City of N.Y.*, 228 F. Supp. 2d 327 (S.D.N.Y. 2002) ............................................................1

*In re MTBE Prods. Liab. Litig.*, 457 F. Supp. 2d 324 (S.D.N.Y. 2006) ...........................................6

*In re MTBE Prods. Liab. Litig.*, 591 F. Supp. 2d 249 (S.D.N.Y. 2008) ...........................................9

*Norfolk S. Ry. v. Shanklin*, 529 U.S. 344 (2000) ...............................................................................5

*Scribner v. Summers*, 84 F.3d 554 (2d Cir. 1996) ...........................................................................10

## STATE CASES

*Philips v. Sun Oil Co.*, 121 N.E.2d 249 (N.Y. 1954) ......................................................................10

## STATUTES

42 U.S.C. § 7545(k)(1) ........................................................................................................................5

The City of New York's Opposition brief is much like the case it has put on—full of unsupported contentions. Plaintiff has not proven the elements of its claims and "there is no legally sufficient evidentiary basis for a reasonable jury to find" otherwise. *See Davis v. City of N.Y.*, 228 F. Supp. 2d 327, 330 (S.D.N.Y. 2002) (Scheindlin, J.) (quoting FED. R. CIV. P. 50(a)). The Court must enter judgment for ExxonMobil.

## ARGUMENT

### I. THE CITY HAS FAILED TO OFFER EVIDENCE THAT SUPPORTS A FINDING THAT MTBE DETECTIONS BELOW THE MCL CONSTITUTE AN INJURY.

In its Opposition to Defendant's Motion for Judgment as a Matter of Law ("*Pl.'s Opp.*"), the City claims that it is or will be injured because the evidence shows that "the City wishes to serve high-quality water to all of its customers, there are potential health hazards of MTBE, and there are taste and odor issues associated with MTBE in drinking water. *Pl.'s Opp.* at 1. But what the undisputed evidence establishes is that the City routinely tells its customers that "drinking water, including bottled water, may reasonably be expected to contain at least small amounts of some contaminants" (*8/31/09 Tr.* at 2952:21-25); that the City admits it is not possible to serve drinking water with zero contaminants (*id.* at 2962:4-8); and that the City tells its customers that "the state and federal government issues regulations limiting the amount of contaminants that can be served in water" and they do so "to ensure that the tap water is safe." *Id.* at 2952:14-20. Furthermore, the City's alleged concern over a possible carcinogen, MTBE, ought not be credited given the evidence received at trial that the City has knowingly served its customers **known** carcinogens and other potentially harmful compounds on multiple occasions. *8/31/09 Tr.* at 2980:21-25, 2981:1-9 (discussing carcinogenicity of haloacetic acids served to City customers); *id.* at 2963:16-2964:16 (discussing PCE detected in distribution system above

MCL). In short, the City's own conduct and admissions establish, as a matter of law, that the City tolerates contaminants in its water and does not itself consider itself "injured" by the minimal levels of MTBE that the jury has found threaten Station 6.

The City also contends that the population could detect MTBE below the MCL and that "such a rate of impact on taste and odor would raise concerns by the public about the quality of the water supply." *Pl.'s Opp.* at 4 (citing *8/31/09 Tr.* at 2943:4-2943:14). These contentions find no support in the record. Rather, evidence from the City's own witness proves that the City has received **no** taste or odor complaints attributable to MTBE, even though the City has served MTBE to the public on more than one occasion, both above and below the MCL. *See 8/31/09 Tr.* at 2982:4-7, 2991:12-17; *9/1/09 Tr.* at 2990:5-2991:17 (Schindler).

Lastly, the City argues in its Opposition that there was "testimony that a reasonable water provider in the City's position has to treat the water so that its quality is equal to or better than the water in the rest of the system." *Pl.'s Opp.* at 4. This conclusory statement simply finds no support in the trial record.

## II. THE CITY HAS FAILED TO PROVE THAT EXXONMOBIL IS THE LEGAL CAUSE OF ITS ALLEGED INJURY.

### A. The City's Expert Was Unable To Connect An ExxonMobil-Specific Spill To The City's Alleged Injury.

Continuing with its conclusory statements, Plaintiff claims that leaks have occurred at each of the six ExxonMobil-owned-or-controlled stations at issue in this case and that "these leaks caused or will cause, an injury to the City's Station 6 wells." *Pl.'s Opp.* at 5. The only evidence Plaintiff cites in support of this statement is the testimony of David Terry. Plaintiff cites Mr. Terry's testimony as support for the statement that "given the high concentrations of

MTBE found in the soil and groundwater at these sites, a substantial amount of MTBE must have been released at the site and traveled into the capture zone of Station 6." *Id.* at 6 (citing *8/19/09 Tr.* at 1977:7-1990:3). But Mr. Terry's testimony supports no such conclusion. The cited testimony discusses only one of the six ExxonMobil stations—offering no details on the volume of gasoline released—and then goes on for five pages about contamination from the West Side Corporation site and several more pages discussing a study in Nassau and Suffolk Counties on MTBE contamination generally. Nothing in the cited testimony supports a finding by a reasonable jury that ExxonMobil directly, or otherwise, contributed to the City's alleged injury.[1]

Plaintiff argues that "[t]he fact that Mr. Terry's analysis determined this without assigning percentages ... to each of the six separate stations does not render the *combined* contribution insubstantial." *Pl.'s Opp.* at 6. But, likewise, Plaintiff's *ipse dixit* arguments do not render the alleged releases from ExxonMobil's stations a *substantial* cause of Plaintiff's alleged injury. Indeed, going back to Phase 2, the evidence is that Mr. Terry could not state whether a "substantial amount of MTBE" was released at any given site. *See 8/19/09 Tr.* at 2073:24-2075:2, 2163:3-5. Speculation that a release occurred in some amount at each ExxonMobil site does not permit the conclusion that adding those unknown releases together is somehow a substantial cause of the City's alleged injury.

### B. The City Has Not Proven Traditional Causation.

The City has not even attempted to support its case for traditional causation. Rather, in a section entitled "The City Has Proven Traditional Causation," the Plaintiff retreats to evidence of

---

[1] Not only does the cited testimony fail to support Plaintiff's argument, a portion of it was struck by the Court as speculative. *8/19/09 Tr.* at 1990:4-7.

a commingled product. *See Pl.'s Opp.* at 6-7. Plaintiff recognizes that "[t]he issue is whether ExxonMobil-supplied gasoline was **more likely than not a substantial factor** contributing to the City's injury." *Id.* at 7 (emphasis added). But evidence that ExxonMobil was the **supplier** of approximately 25% of the gasoline sold in all of New York **State** certainly does not make it more likely than not that any gasoline spilled, at any time, from any service station in Queens, was supplied (or manufactured) by ExxonMobil.[2] No reasonable jury could find otherwise.

### C. The City's Evidence In Support of the Commingled Product Theory of Causation is Insufficient.

We refrain from repeating the arguments from our opening brief. The Court is well aware of ExxonMobil's objection to the submission of this case to the jury on the commingled product theory, which is not the law of New York.

It is, however, necessary to correct the record on one major point the City argues pertaining to the testimony of ExxonMobil witness John O'Brien. Mr. O'Brien's testimony simply does not support the argument that "ExxonMobil gasoline made it to virtually every station in the area." *Cf. Pl.'s Opp.* at 7; *see also id.* at 6 (alleging Mr. O'Brien presented testimony to support the statement that "ExxonMobil-produced gasoline makes it to virtually every gas station."). Rather, the cited exchange proceeded as follows:

| | |
|---|---|
| Q: | But over time odds are that Exxon gasoline does make it to virtually every station, isn't that right, due to trades and exchanges over time and oil refineries taking title to other refiners' product, correct? |
| A: | They certainly take title to other refiners' manufactured product, that's correct. |
| Q: | And they trade in exchange? |
| A: | Yes, they do. |
| Q: | So Exxon could be distributing Shell gasoline or BP gasoline, correct? |

---

[2] To be clear, gasoline supplied by ExxonMobil is not synonymous with gasoline manufactured by ExxonMobil.

- 4 -

| | | |
|---|---|---|
| A: | That's correct. | |
| Q: | And Shell and BP can distribute Exxon gasoline? | |
| A: | That's correct. | |
| Q: | So at any point in time in the BP underground tank there could be Exxon gasoline, right? | |
| A: | **There could be, but I don't think you could say that with certainty in all cases.** | |
| COURT: | Do you have any way of estimating what percentage of product is commingled as opposed to not commingled. | |
| A: | No, I don't think there is, your Honor, because it just varies depending on the size of the cargoes, who put it in, what tanks it went into. | |

*9/15/09 Tr.* at 4508:1-23 (emphasis added).[3] O'Brien testified that product "could" have been commingled, but would not have been "in all cases." He offered no testimony from which a jury could find it probable that ExxonMobil's product was commingled at the time and place of the alleged release sources here at issue.

### III. TRIAL EVIDENCE SUPPORTS A FINDING THAT STATE-LAW LIABILITY WOULD CONFLICT WITH FEDERAL LAW.

The City ignores that Congress explicitly directed the EPA, when approving oxygenates for the RFG program, to "tak[e] into consideration the cost of achieving such emission reductions"—and not only economic costs, but also "any **nonair-quality** and other air-quality related health and **environmental impacts** and energy requirements." 42 U.S.C. § 7545(k)(1) (1991) (emphasis added). The law presumes that the EPA promulgated its regulations in keeping with its obligation to balance the competing considerations. *See, e.g., Norfolk S. Ry. v. Shanklin*, 529 U.S. 344, 357-58 (2000) (finding preemption and refusing to second-guess agency's compliance with balancing test imposed by federal statute even where facts tended to show failure to follow specific statutory criteria). Black-letter preemption law precludes the City from

---

[3] It is also worth noting that Mr. O'Brien was not being asking about gasoline containing MTBE.

using New York tort law to override the EPA's congressionally authorized decision to approve MTBE as an oxygenate.

Moreover, this Court has recognized that ExxonMobil could prevail on its preemption defense if "eliminating MTBE would have prevented the growth of the RFG program" because of **insufficient supplies of an MTBE substitute**. *In re MTBE Prods. Liab. Litig.* 457 F. Supp. 2d 324, 343 (S.D.N.Y. 2006). Perhaps one of the clearest points made in this trial is that there was an insufficient supply of ethanol at the time the RFG regulations went into effect. *See Def.'s Mem.* at 10-11. In an attempt to show otherwise, the City has once again misrepresented the evidence in this case. In opposing Defendant's Rule 50 motion, the City relies on:

- "Bruce Burke's expert opinion that ethanol supplies rose to meet demand during each relevant period...." *Pl.'s Opp.* at 9 (citing *9/10/09 Tr.* at 4090:17-4093:24). In fact, when discussing the years leading up to and including the beginning of the RFG program, Mr. Burke testified: "during this time period [early 1990's] the use of MTBE started to go up quite dramatically ... whereas the **use of ethanol did not change during that period**. *9/10/09 Tr.* at 4092:4-9 (emphasis added).

- Alleged "testimony by Exxon's witness John O'Brien that when the demand for ethanol in fact increased, supply increased to meet it." *Pl.'s Opp.* at 10 (citing *9/15/09 Tr.* at 4484:3-10). However, the cited testimony concerns only supply and demand in California following the 2003 California state ban, (*9/15/09 Tr.* at 4484:3-10), and is irrelevant to the question of whether there was sufficient ethanol supply to meet New York's RFG demand in the 1990's.

ExxonMobil's argument always has been that both MTBE and ethanol were required to meet the RFG requirements. Nothing in Plaintiff's opposition proves that there was sufficient ethanol in the 1990's to meet the entire oxygenate demand created by the RFG program such that ethanol could have supplanted the use of MTBE. In fact, the City's reliance on Plaintiff's Exhibit 477

only proves Defendant's point—both MTBE and ethanol were required in the mid-1990's; the ethanol supply alone was insufficient.[4]

## IV. TRIAL EVIDENCE PROVED THAT THERE WAS NO FEASIBLE, SAFER ALTERNATIVE TO MTBE.

Ethanol was not a feasible, safer alternative to MTBE in the relevant time frame, a point we believe has been well proven in this case. In addition to the arguments of the prior section and, of course, its original brief (*Def.'s Mem.* at 9-14), Defendant points out that Plaintiff's reliance on the experiences of other "companies'" use of ethanol is highly misleading. *See Pl.'s Opp.* at 11. The other "companies" to which Plaintiff refers is but one company—Getty Oil. And, according to Getty employee, Paul Stendardi, Getty **could not use** ethanol during the RFG summer months because of Reid Vapor Pressure restrictions. *9/11/09* Tr. at 4231:20-23. Moreover, it is clear from Mr. Stendardi's testimony that Getty's use of ethanol was a commercially feasible alternative only because ADM paid for Getty's shipment and storage costs. *Id.* at 4239:9-4241:21. The City presented no evidence that these incentives would have been available to ExxonMobil.

## V. THE CITY OFFERED NO EVIDENCE IT SUFFERED INJURY FROM EXXONMOBIL'S ALLEGED FAILURE TO WARN.

The City bore the burden of proving that ExxonMobil's alleged failure to warn was a proximate cause of the City's alleged injury. *See, e.g. Colon v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 84 (S.D.N.Y. 2001). But there has been an utter lack of proof on this point.

---

[4] Plaintiff incorrectly represents that this documents shows ExxonMobil's volume of ethanol used. In fact, this document provides industry-wide numbers. *9/23/09 Tr.* at 5641:19-22 (Eizember).

The City claims that if ExxonMobil warned the public to handle MTBE-gasoline differently, "the **small releases** of gasoline ... would not have occurred, and the City's injury could have been prevented." *Pl.'s Opp.* at 14 (emphasis added). The City cites the testimony of Marcel Moreau for this proposition. *Id.* (citing *9/3/09 Tr.* at 3376:6-11).[5] But no witness, including Mr. Moreau, testified that a warning about MTBE would have prevented small releases. More importantly, no witness has attributed the City's alleged injury to "small releases." In fact, Plaintiff has argued that its injuries were the result of releases of "a substantial amount of MTBE" at the relevant sites. *Pl.'s Opp.* at 6. And there is no evidence whatsoever that warning would have prevented these alleged substantial releases.

In addition, the City presents a list of actions that it alleges ExxonMobil could have taken to "prevent MTBE contamination of groundwater" and that "would have prevented the City's injury." *Id.* at 14-15. But a review of the trial testimony shows that Mr. Moreau made no such connection to the City's injury, and, notably, not one of Mr. Moreau's suggested preventative measures was to warn the public about MTBE's alleged dangers. *Id.* The City makes a huge, unsubstantiated leap when it claims that a warning from ExxonMobil would have prevented the City's alleged injury. That speculation is not an adequate basis for permitting the jury to deliberate ExxonMobil's liability.

## VI. TRIAL EVIDENCE PROVED THAT THE CITY'S CLAIMS ARE TIME-BARRED.

The Plaintiff incorrectly states that ExxonMobil "only noted [sic] evidence suggesting that testing and treatment might be required for MTBE in the future." *Pl.'s Opp.* at 16. To the

---

[5] Defendant believes that Plaintiff intended to cite to the transcript at 3356:6-11. Either way, Mr. Moreau's testimony does not support Plaintiff's argument.

- 8 -

contrary, ExxonMobil has presented evidence that prior to the October 31, 2000 cut-off date, the City already knew enough to conclude that in would need to treatment for MTBE imminently (assuming it actually planned to serve the water from those wells) and was taking steps to address that issue. Specifically, in an August 23, 2000 memorandum from Malcolm Pirnie to City employee William Yulinsky, the City's consultant wrote: "Prior to the sampling [of wells 6D and 33], it was assumed that the following compound[s] would be of concern in the treatment plant design ... Metyl-Tert-Butyl-Ether (MTBE). ... As expected due to the urban locale of the wells, VOCs are present in the water ... MTBE was detected in both wells at concentrations well above the New York State Department of Health (NYSDOH) MCL." *Def.'s Exhibit 454*; *see also 9/23/09 Tr.* at 5767:8-5768:24. At trial, Mr. Yulinsky admitted that in August 2000 the City was "looking at station modifications for Station 6 to treat a variety of things," including MTBE. *9/23/09 Tr.* at 5768:1-9. That the City did not complete the treatment plant at that time does not negate the fact that by August 2000, at the latest, it knew that alterations to the Station 6 treatment plant to address MTBE were presently necessary if it wanted to serve water from the Station 6 wells. *Id.* at 5772:25-5773:15.

## VII.   THE CITY FAILED TO PROVE ITS REMAINING COMMON-LAW CLAIMS.

### Negligence

The City's Opposition brief is completely devoid of any evidence to support a finding that ExxonMobil's alleged negligence was a substantial factor in causing the injury it alleges has occurred at Station 6. *See In re MTBE Prods. Liab. Litig.* 591 F. Supp. 2d 249, 266 (S.D.N.Y. 2008). Argument from the City's lawyers that "[t]he City has presented substantial evidence of ExxonMobil's negligence," *see Pl.'s Opp.* at 17, is no substitute for evidence. And the City presented no evidence—substantial or otherwise—that ExxonMobil's negligence was a

substantial factor in causing the alleged injury.

### Trespass

In support of its trespass claim, Plaintiff suggests that evidence of what ExxonMobil knew and did in the mid-1980's satisfies the intent requirement. *Pl.'s Opp.* at 18. However, under New York law the City must prove an unlawful invasion and "the intrusion must at least be the **immediate or inevitable** consequence of what [the Defendant] willfully does." *Philips v. Sun Oil Co.*, 121 N.E.2d 249, 251 (N.Y. 1954) (emphasis added); *see also Scribner v. Summers*, 84 F.3d 554, 558 (2d Cir. 1996). In the present case, therefore, Plaintiff was required to prove an invasion of its right to draw potable water into the Station 6 wells and that the invasion was at least an inevitable consequence of ExxonMobil's mid-1980's knowledge and conduct. But what the evidence proves, to the contrary, is that all but one of the Station 6 wells was inactive at the time of ExxonMobil's alleged intentional and tortuous conduct, and, therefore, no capture zone existed to invade. *See, e.g. 8/5/09 Tr.* at 569:14-570:12 (with the exception of well 33, station 6 wells not pumped since 1982 or earlier).[6]

### Private and Public Nuisance

Interestingly, the Plaintiff cites not a single piece of evidence in opposing Defendant's Rule 50 motion on the City's private and public nuisance claims. *See Pl.'s Opp.* at 19-20. For example, the City states, **without support**, that "[t]he presence of MTBE in the water for decades to come will require extensive and expensive treatment to remove so the water can be served to the public – a substantial interference with the City's interests" *Id.* at 19. But the

---

[6] Well 33 was last pumped in 1993. *8/5/09 Tr.* at 570:10-12. However, there was no evidence presented at trial of a capture zone for well 33 pumping alone. Therefore, there is no evidence to support a conclusion that Plaintiff's interest in drawing water from well 33 was invaded by Defendant's mid-1980's knowledge and conduct.

evidence shows just the opposite–that MTBE concentrations have been decreasing both nationwide and in the vicinity of Station 6. *See 8/17/09 Tr.* at 1589:1-6, 1592:12-25 (Dr. Fogg previously predicted that MTBE would remain present in the South Tahoe system for 90-120 years. However, he admits that 2003 data shows that concentrations are "essentially zilch."); *8/21/09 Tr.* at 2423:4-2425:22 (Mr. Maguire testified that MTBE was not a pervasive problem and explained, "generally what we are seeing are very low concentrations **if** MTBE is found. There are certain locations where it's not found at all. And in 2004, of all the monitoring wells that USGS has, the maximum concentration was 3.3 parts per billion." (emphasis added)).

Plaintiff argues also, **without support**, that "ExxonMobil's introduction of MTBE into the groundwater in the capture zone of the Station 6 wells, has interfered and will interfere with the City's ability to provide clean and potable water to the public...." *Pl.'s Opp.* at 20. But as Defendant already has shown, the City frequently serves water to its customers containing below-MCL levels of contaminants and tells its customers that such water is safe. *See supra* at 1. Because the jury found in Phase 2 that MTBE concentrations in Station 6 wells will not exceed the State MCL, Plaintiff's conclusory statements are unpersuasive.

## CONCLUSION

For all of the foregoing reasons, ExxonMobil respectfully requests that this Court enter judgment as a matter of law in ExxonMobil's favor.

DATED: October 19, 2009				Respectfully submitted,

				/s/ Peter John Sacripanti
				Peter John Sacripanti
				James A. Pardo
				Stephen J. Riccardulli
				Lisa A. Gerson
				McDermott Will & Emery LLP
				340 Madison Avenue
				New York, NY 10017-4613
				Tel. (212) 547-5400
				Fax (212) 547-5444

				*Counsel for Defendant Exxon Mobil Corporation*

## CERTIFICATE OF SERVICE

Lisa A. Gerson, pursuant to 28 U.S.C. 1746, hereby declares under penalty of perjury, that on the 19th day of October, 2009, I caused to be served by electronic means upon counsel for plaintiff, a true and correct copy of: DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR JUDGMENT AS A MATTER OF LAW.

Lisa A. Gerson