UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re: Methyl Tertiary Butyl Ether
("MTBE") Products Liability Litigation

Master File No. 1:00-1898
MDL No. 1358 (SAS)
M21-88

-----------------------------------------------------------------X

This Document Relates To:

*Village of Island Lake, a municipal corporation,
v. Ashland Co., et al.,* Case No. 04-CV-0205

-----------------------------------------------------------------X

## DECLARATION OF ROBERT GORDON

Robert Gordon, an attorney duly admitted to practice law in the State of New York and in this Court, hereby declares the following under penalty of perjury:

1. I am with the law firm of Weitz & Luxenberg, P.C. I am co-counsel representing the Settling Plaintiffs subject to the Settlement Agreement dated September 1, 2009, as reflected in Exhibit "A" (the "Settlement") and including the Illinois Plaintiff whose settlement is the subject of this motion. This Declaration is submitted in support of the Motion for Determination of Good Faith Settlement. As a result, I have personal knowledge of the facts set forth in this Declaration.

2. I have served as Plaintiffs' Co-Lead Counsel in all of the MTBE cases consolidated as part of the multi district litigation proceeding, MDL 1358, pending in the Southern District of New York.

3. I am familiar with and have taken an active role in settlement discussions between the parties ultimately resulting in the Settlement as well as prior settlements.

4. Settlement talks between Plaintiffs and Defendants in MDL 1358 began in August 2007 with the assistance of Special Settlement Master Geronemus. This Court entered an order selecting Mr. Geronemus as Special Settlement Master dated March 12, 2007.

5. Numerous meetings occurred in January and February of 2007 between counsel for Plaintiffs and those Defendants participating in the mediation efforts. These effort extended through the Spring of 2007, and included lengthy discussions about the various legal, factual and technical issues relating to Plaintiffs' claims, Defendants' defenses, and potential settlement. During the mediation process, Plaintiffs made a number of settlement demands which were countered by Defendants.

6. My co-counsel at Baron & Budd, P.C. and I were able to make settlement progress in connection with certain refiner/manufacturer Defendants. As a result, additional negotiating sessions, both formal and informal, occurred throughout the Summer and Fall 2007.

7. In early December 2007, a proposed outline of settlement terms for certain refiner/manufacturer Defendants that was acceptable to Plaintiffs was reached ("2008 Settlement"). Although most of the refiner/manufacturer Defendants accepted the terms of the proposed settlement, certain refiner/manufacturer Defendants chose not to accept the proposed outline of settlement terms.

8. The 2008 Settlement provided for a substantial cash payment and a future treatment obligation of eligible wells under certain circumstances. I, and the other co-counsel for Settling Plaintiffs, believe that the settlement compensation provided constituted a fair and reasonable settlement under all of the circumstances, including the time of the settlement in relation to the rest of the litigation.

9. During the period from late December 2007 through February 2008, counsel for

Plaintiffs referred to above, in consultation with the Plaintiffs, continued to work with a larger group of counsel for Settling Defendants to negotiate and draft the final settlement documentation, including the Settlement Agreement, Release, and Treatment Protocol. These negotiations also were conducted in good faith and at arms length, resulting in final settlement terms that implemented the outline of terms that were agreed upon in December of 2007 in a manner that is consistent, workable, and reasonable. In late February 2008, the resulting final settlement documentation was forwarded to the respective clients for review and execution if they determined to accept them. Ultimately, this settlement was consummated after protracted, arms length negotiations between sophisticated and competent parties and legal counsel. As a result, this Court granted the motion for a determination of good faith Settlement in July, 2008.

10. ExxonMobil elected not to participate in the 2008 Settlement. However, the 2008 Settlement formed the background and context for the settlement currently before the Court between the settling parties. Following the 2008 Settlement and during the course of preparation for trial of the *County of Suffolk* (Case No. 04-CV-5424), I, my co-counsel, Baron & Budd, P.C., and counsel for ExxonMobil, continued to discuss settlement of this case. Through these negotiations, the settling parties agreed to the Settlement Agreement dated September 1, 2009, attached as Exhibit "A". The Settlement Agreement with ExxonMobil provides for a similar cash-and-treatment scheme.

11. For both the 2008 Settlement and the Settlement now before the Court, I was part of the extensive effort by Plaintiffs' counsel to develop an objective method based on verifiable information to fairly distribute to each Settling Plaintiff an appropriate share of the proceeds of the cash portion of the settlement. In order to establish objective criteria for allocation of the cash portion of the settlement among all Settling Plaintiffs, I and my co-counsel retained

Professor Samuel Issacharoff. Professor Issacharoff, of New York University Law School, is a renowned expert in mass tort litigation and settlement, had been retained prior to that time to work generally on the MTBE litigation, and was very familiar with the facts and legal issues in the matter. He worked with us to develop a formula which utilizes, among other criteria: (1) the number of wells with detections of MTBE or TBA; (2) the levels of those detections in those wells; (3) the operating capacity of the well(s); (4) the length of time over which detections occurred; (5) how recently the detections occurred; (6) whether the last detection was so remote as to create a statute of limitations issue; (7) the relationship of the detections to applicable regulatory standards; (8) whether any regulatory agency had ordered the wells to modify or cease operations, or whether the wells otherwise modified or ceased operations because of MTBE/TBA contamination; (9) the historical use of the wells; (10) whether the Settling Plaintiffs' case was a focus case in the MDL requiring active discovery and expenditure of Plaintiffs's costs and time; (11) how close a Plaintiffs case was to trial; and (12) whether Settling Plaintiff was foregoing natural resource damage claims in settling their case. All Settling Plaintiffs were informed of this approach and agreed to it. In addition, all Settling Plaintiffs were informed of the resulting allocation of settlement proceeds to each and every Settling Plaintiff resulting from the formula, including the amounts allocated to each and every Settling Plaintiff, and agreed to them. This formula was used to finalize the 2008 Settlement, which was approved by this Court.

12. The Settlement Agreement is a good faith settlement under any applicable standard. It was arrived at as a result of arms-length negotiations conducted by multiple competent counsel on both sides for over three years. There was no bad faith or collusion involved with the negotiation of this settlement. In my view, this Settlement Agreement is a patently reasonable resolution of these disputed claims in light of all of the circumstances.

13.  I have substantial experience with complex negotiations that address difficult technical issues as well as disputed matters of both fact and law. The negotiations in this case were difficult and protracted, but were conducted entirely in good faith and at arms length.

THE FOREGOING IS DECLARED UNDER THE PENALTY OF PERJURY.

New York, New York
October __1__, 2009

_____
Robert Gordon