------------------------------------------------------------ X
               :

IN RE METHYL TERTIARY BUTYL ETHER   :
PRODUCTS LIABILITY LITIGATION        :
               :  Master File No. 1:00-1898
------------------------------------------------------------ X  MDL 1358 (SAS), M21-88
               :

This document relates to:              :

*Village of Island Lake v. Amerada Hess Corp., et*  :
*al. (f/k/a City of Crystal Lake, et al.)*, Case No. 04- :
*CV-02053*                                    :

------------------------------------------------------------ X

## DECLARATION OF PETER JOHN SACRIPANTI IN SUPPORT OF SETTLING DEFENDANTS' MOTION FOR DETERMINATION OF A GOOD FAITH SETTLEMENT

Peter John Sacripanti, an attorney duly admitted to practice law in the State of New York, hereby declares the following under penalty of perjury:

1.     I am a partner with the law firm of McDermott Will & Emery LLP. My firm is counsel for Exxon Mobil Corporation ("ExxonMobil") with respect to the lawsuits filed against ExxonMobil and other defendants relating to the production of gasoline containing Methyl Tertiary Butyl Ether (MTBE). I have served as Defendants' Liaison Counsel in all of the MTBE cases consolidated as part of a multidistrict litigation proceeding, MDL 1358, *In re Methyl Tertiary Butyl Ether Products Liability Litigation*, pending in the Southern District of New York. I have taken a very active role in discussions between defendants and certain plaintiffs regarding settlement of many of the cases comprising MDL 1358. As a result, I have personal knowledge of the facts set forth in this Declaration, except as to those matters stated on information and belief, and, as to those matters I believe them to be true.

2. I make this declaration in support of the motion by Settling Defendants for a determination by the Court that the settlement agreement dated as of September 1, 2009 ("Settlement Agreement") is a good faith settlement under Illinois law. A true and correct copy of this Settlement Agreement is annexed hereto as Exhibit A.

A. **Mediation**

3. Beginning in or about August 2006, plaintiffs and defendants began exploring a possible settlement of the multitude of cases consolidated as part of MDL 1358. In an effort to facilitate settlement, the Court appointed David Geronemus, Esq. of JAMS as the Special Settlement Master. Representatives of the plaintiffs and the defendants signed a mediation agreement with Mr. Geronemus and JAMS in December 2006. This Court confirmed the selection of David Geronemus as Special Settlement Master by an Order dated March 12, 2007.

4. Numerous meetings were conducted in January and February of 2007 involving the Special Settlement Master, the various counsel representing plaintiffs in MDL 1358, and the various counsel representing those defendants in the MDL who were participating in the mediation process, which comprised most of the defendants. Along with several of my partners, I participated actively in the ongoing settlement activities. During the confidential mediation sessions, the respective positions of the parties with respect to the law, facts, technical issues, and theories of damages were communicated, discussed, and disputed. Further, settlement demands and offers were made during the mediation sessions on behalf of certain plaintiffs and certain defendants. The understanding of the parties' respective positions that was arrived at during these mediation sessions was essential in laying the groundwork for the initial settlement demands and offers that were made as well as for the further discussions that were to occur.

5.  Mediation efforts continued throughout the Spring of 2007. These efforts included large scale meetings between the parties with the mediator as well as numerous discussions with the Special Settlement Master and/or between opposing counsel.

6.  The settlement discussions that had occurred before the Summer of 2007 indicated that a greater level of progress had been made between lawyers with Baron & Budd P.C., Weitz & Luxenberg, P.C., and Sher Leff LLP (hereinafter Settling Plaintiffs' Counsel) and counsel for certain refiner/manufacturer defendants. As a result, with the encouragement of the Special Settlement Master, additional discussions occurred under the general auspices of the Special Settlement Master throughout the Summer and Fall of 2007 between representatives of the plaintiffs and certain of the defendants in an effort to overcome obstacles to settlement identified in the discussions with the Special Master.

7.  These discussions were numerous, extended over many months, and involved both in-person negotiating sessions and telephone conference calls. These sessions often involved multiple lawyers for several defendants and multiple lawyers for plaintiffs. In addition, a subgroup of lawyers for these plaintiffs and defendants conducted separate discussions about technical issues that would have to be addressed if any settlement involved the treatment of wells. These discussions subsequently were disclosed to the refiner/manufacturer defendants who participated in the mediation process.

## B. Other Defendants Reach a Settlement

8.  Negotiations continued and in early December of 2007 an outline of proposed settlement terms acceptable to the plaintiffs was drafted. These proposed settlement terms were proposed to all of the refiner/manufacturer defendants that participated in the mediation process, including those refiner/manufacturer defendants who have since chosen not to join the

settlement. The refiner/manufacturer defendants who participated in the mediation process had until December 7, 2007 to indicate whether the proposed terms were acceptable or not. If acceptable, efforts would then be commenced to negotiate and draft final settlement documentation.

9. As of December 7, 2007, certain defendants including ExxonMobil had chosen not to accept the proposed outline of settlement terms.

10. Upon information and belief, soon thereafter the defendants who had decided to settle appointed a committee of lawyers from different firms to negotiate and draft the terms of the final settlement agreement, the forms of release, the treatment protocol, escrow agreement, and other settlement documentation. Upon information and belief, these efforts began in December 2007 and involved numerous and extensive negotiating sessions in person in New York City and Washington, D.C., and by phone throughout January and February of 2008. The completed settlement documentation was then circulated to the respective parties who had agreed to the proposed outline of settlement terms to decide whether or not to enter into the Settlement Agreement by executing the settlement documentation. Upon information and belief, the settlement agreement resulting from these efforts was a comprehensive settlement between the settling parties that resolved entirely their current and any future claims concerning the presence of MTBE and/or TBA in the water accessed by the settling plaintiffs. Moreover, this settlement was reached through protracted, hard-fought, arms-length negotiations between competent counsel from multiple law firms on both sides, with everyone, to my knowledge, acting in good faith. This Court granted the motion for a determination of good faith regarding that agreement (to which ExxonMobil was not a party) in July 2008.

C.  **The Current Settlement**

11. As noted, ExxonMobil decided not to settle as part of the settlement entered into by most of the other defendants. However, ExxonMobil was a part of those negotiations and played an active role until the very end when it decided not to accept the terms. Thus, those negotiations formed the background for the settlement currently before the Court. Indeed, after that settlement was final, ExxonMobil continued to prepare for the trial of *County of Suffolk v. Amerada Hess Corp.* (Case No. 04-CV-5424) while also continuing to discuss settlement with the plaintiffs who settled with the other defendants. As the Court is aware, while the parties refined their positions in preparation for the *County of Suffolk* trial, an agreement was reached to settle that case. Thereafter, discussions still continued between myself and Mr. Robert Gordon, Esq., as did extensive factual and legal analysis in the cases covered by the settlement now before the Court. As a result, the parties further refined their positions and the settlement now being presented to the Court was reached. In short, the process of reaching this settlement has taken just over three years (commencing as part of the joint effort that began in 2006). The parties have always acted at arm's length and, in my judgment, in good faith, and this settlement is the product of those intensive discussions and extensive analyses on a well by well basis, and on an issue by issue basis.

Dated: New York, New York
October 26, 2009

_____
Peter John Sacripanti