UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                :

IN RE METHYL TERTIARY BUTYL ETHER    :
PRODUCTS LIABILITY LITIGATION             :
                                               :   Master File No. 1:00-1898
------------------------------------------------------------ X   MDL 1358 (SAS), M21-88
                                               :

This document relates to:                       :

*Village of Island Lake v. Amerada Hess Corp., et*  :
*al. (f/k/a City of Crystal Lake, et al.), Case No. 04-*  :
*CV-02053*                                                    :
                                               :
------------------------------------------------------------ X

## MEMORANDUM OF LAW IN SUPPORT OF SETTLING DEFENDANTS' MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT

The Exxon Mobil Corporation Defendants have entered into a Settlement Agreement dated as of September 1, 2009 (the "Settling Defendants")[1] with certain Plaintiffs in MDL 1358 that are represented by Baron & Budd, P.C., and Weitz and Luxenberg PC (the "Settling Plaintiffs").[2] Settling Defendants, through the undersigned attorneys, hereby submit this memorandum of law in support of their motion that this Court determine that the subject Settlement Agreement generally, and as applied to the one specific Illinois case captioned above,

---

[1] The Settling Defendants are comprised of: (1) Exxon Mobil Corporation, f/k/a Exxon Corporation; (2) Exxon Mobil Corporation, d/b/a ExxonMobil Refining and Supply Company, Exxon Chemical U.S.A., ExxonMobil Chemical Corporation and/or ExxonMobil Chemical U.S.A.; (3) Exxon Mobil Chemical Company; ExxonMobil Oil Corporation; (4) ExxonMobil Pipeline Company; (5) ExxonMobil Chemical Company, Inc. (individually and f/k/a Mobil Chemical Company); and (6) Mobil Corporation.

[2] The full listing of Settling Plaintiffs and cases can be found in Exhibit A of the Settlement Agreement now being considered by this Court.

is a good faith settlement pursuant to the laws of Illinois sufficient to bar joint tortfeasor liability claims against Settling Defendants.[3]

## I. INTRODUCTION

After extensive, arm's length and good faith negotiations, the Settling Defendants reached an aggregate settlement agreement with Settling Plaintiffs identified above that resolves all of their claims against the Settling Defendants in this Court. The terms of this Settlement Agreement generally and as they pertain to the Illinois Plaintiffs whose settlement is the particular subject of this motion have been agreed to by the Settling Plaintiffs. The Settlement Agreement is attached as Exhibit A to the Declaration of Peter John Sacripanti (hereinafter "Sacripanti Declaration"), and its terms are outlined below. In order to acquire protection from any alleged joint tortfeasor claims, the Settling Defendants seek this Court's determination that the negotiated Settlement Agreement with Plaintiffs was entered into in good faith and comports with the applicable requirements of Illinois law as set forth below.

### A. Litigation Overview

These cases are part of MDL 1358 now pending in the United States District Court, Southern District of New York. The MDL proceedings involve over one hundred actions brought by certain public and private entities from various states as well as individuals in the State of Wisconsin. In each of these actions, including the Settling Plaintiffs' cases here, claims were brought against various petroleum companies for their design, manufacture, supply, use, handling, and/or distribution of Methyl Tertiary Butyl Ether ("MTBE"), a chemical compound added to gasoline. Plaintiffs have alleged that MTBE has contaminated, or threatens to

---

[3] All similar joint tortfeasor claims are dismissed by operation of law in the cases other than those that originated in Illinois without the requirement of a good faith determination and, therefore, a motion in those cases is not necessary.

contaminate, water supplies which are accessed, accessible, managed, owned, operated, used, and/or protected by Plaintiffs (including but not limited to wells or aquifers owned, operated, used and/or protected by Plaintiffs). The actions were transferred to this Court by the Judicial Panel on Multidistrict Litigations pursuant to §1407 of Title 28 of the United States Code.[4]

### B. Background: The Court-Ordered Mediation Process and Prior Settlements

In the Fall of 2006, the parties and the Court concluded that a mediation could be helpful in an effort to bring the parties together and potentially reach a settlement. David Geronemus, Esq. was selected as the mediator and extensive meetings occurred in January and February of 2007, even before the formal order appointing Mr. Geronemus Special Settlement Master was entered on March 12, 2007. After the Court's order, the parties continued meetings and discussions with the Special Settlement Master in an attempt to explore and make progress on settlement. These negotiations were wide-ranging and conducted at arm's length and in good faith and all parties to the litigation were invited to participate in the mediation process. *See* Sacripanti Decl. ¶¶ 3-7, 11.

In addition, with the encouragement of the Special Settlement Master, additional discussions continued with the encouragement of the mediator throughout the late Spring, Summer, and Fall of 2007 between representatives of Settling Plaintiffs and Settling Defendants in an effort to overcome obstacles to settlement identified in the discussions with the Special Settlement Master. These discussions subsequently were disclosed to refiner/manufacturer defendants who participated in the mediation process. *See* Sacripanti Decl. ¶¶ 5-7.

Negotiations continued with Settling Plaintiffs' Counsel and in early December of 2007 an outline of proposed settlement terms acceptable to Settling Plaintiffs was drafted. Any

---
[4] For a background description of the MDL claims, see *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp. 2d 348, 364 (S.D.N.Y. 2005).

acceptance of these proposed settlement terms at the time was expressly subject to the completion of an acceptable final settlement agreement and other settlement documentation, including a form of release and treatment protocol. These proposed settlement terms were proposed to all of the refiner/manufacturer defendants that participated in the mediation process, including those refiner/manufacturer defendants, such as the ExxonMobil defendants, who later chose not to join that particular settlement. *See* Sacripanti Decl. ¶¶ 8-9.

The refiner/manufacturer defendants who participated in the mediation process had until December 7, 2007 to indicate whether the proposed terms were acceptable or not. If acceptable, efforts would then be commenced to negotiate and draft final settlement documentation. As noted, certain defendants including ExxonMobil chose not to accept the proposed outline of settlement terms. *See* Sacripanti Decl. ¶¶ 8-9.

After refusing to accept that particular proposed settlement, the ExxonMobil defendants continued to prepare for the trial of *County of Suffolk v. Amerada Hess Corp.* (Case No. 04-CV-5424), the focus case then being readied for trial; however, settlement discussions continued with the Settling Plaintiffs. As a result of those discussions, and further decisions by the Court as the case approached trial, the parties refined their positions and a settlement agreement was reached. *See* Sacripanti Decl. ¶ 11.

### C. Overview of the Terms of the Current Settlement

The settlement now before the Court includes 50 separate cases filed under the laws of 16 different states. The terms of the current settlement agreement are the same as the terms of the other settlements in this case with the exception of the terms related to the particular wells at issue. Generally, under the terms of the Settlement Agreement, the Settling Plaintiffs fully release Settling Defendants from past, present, or future claims of any type or under any theory,

including but not limited to all claims asserted in MDL 1358, arising from: (1) the use of MTBE or Other Authorized Oxygenates[5] in gasoline, at any time and for any reason; (2) the actual or threatened presence of MTBE and/or TBA in water or on property accessed, accessible, managed, owned, operated, used, and/or protected by Releasor (including but not limited to wells or aquifers owned, operated, used and/or protected by Releasor), whether past, present or future or on account of acts or omissions that occurred before or after the Effective Date, due to their use in gasoline, at any time and for any reason; and (3) the actual or threatened presence of gasoline, BTEX[6], Other Authorized Oxygenates, and/or other components of gasoline beyond those released in subsections (1) and (2) above, or other petroleum products or any associated breakdown products thereof, in any well in which as of, or prior to, September 1, 2009 the presence of MTBE or Other Authorized Oxygenates was detected at or in such well at any level. The Settling Plaintiffs do not release claims pertaining to gasoline components other than MTBE or TBA due to spills occurring after September 1, 2009. The Settling Plaintiffs also do not release any claims against the non-settling Defendants, if any remain.

In return for Settling Plaintiffs' release and attendant dismissals of their cases with prejudice, Settling Defendants, *inter alia*, have agreed to (1) pay seventeen million five hundred thousand dollars and zero cents ($17,500,000.00), and (2) to participate, under certain defined circumstances, in the future treatment of eligible wells in the event of certain triggering events. *See* Exhibit A to Sacripanti Decl.

---

[5] "Other Authorized Oxygenate" means any chemical compound certified for use as an oxygenate under the provisions of the Clean Air Act Amendments of 1990 or as a Renewable Fuel under the provisions of the Energy Policy Act of 2005, including but not limited to, tertiary butyl alcohol ("TBA"), diisopropyl ether ("DIPE"), ethanol, methanol, tertiary amyl methyl ether ("TAME"), and ethyl tertiary butyl ether ("ETBE"), whether used in gasoline at any time as an octane enhancer, oxygenate pursuant to the requirements of the Clean Air Act Amendments of 1990, or for any other reason, and any associated breakdown products thereof.

[6] "BTEX" means benzene, toluene, ethyl benzene, trimethyl benzene, and all xylenes.

## II. THE SETTLEMENT BETWEEN SETTLING DEFENDANTS AND SETTLING PLAINTIFFS IS A GOOD FAITH SETTLEMENT

### A. The Substantive Law of the Transferor States Will Be Applied To The Settlements Of State Law Claims Giving Rise To Potential Claims For Contribution And Indemnity

The district court to which an action is transferred pursuant to 28 U.S.C. § 1407(a) must apply the substantive law of the jurisdictions from which these cases originated and were transferred (the "Transferor States"), including the Transferor States' choice of law rules. *In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 903 (E.D. La. 2007). Due to the fact that the state law claims in these cases pertain to the use and marketing of gasoline containing MTBE in the respective states, and the contamination or threatened contamination of wells and groundwater in those same states, it is likely that under any available choice of law rules, the substantive law of the respective Transferor States will be applied to those state law claims. Indeed, this Court has, for example, already performed a state-by-state analysis of the substantive state law as it pertained to the MTBE claims. *See, e.g., In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp. 2d 348.

Likewise, the respective substantive law of each Transferor State will determine the preclusive impact of the Settlement Agreement on the potential state law contribution and indemnity claims, if any. *White v. ABCO Eng'g Corp.*, 221 F.3d 293, 307 (2d Cir. 2000). As explained below, under applicable state law, this settlement will have the effect of protecting the Settling Defendants from such claims. Further, in analyzing questions of federal law in connection with any cognizable federal claims, a multi-district transferee court will apply the law of the circuit where it is located so long as that law is not divergent from predominant interpretation. *Moore v. Sulzer Orthopedics, Inc.*, 337 F. Supp. 2d 1002, 1009 (N.D. Ohio 2004). Thus, to the extent that any federal claims are relevant, the rules in the Second Circuit will apply.

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, CCH Prod. Liab. Rep. P17, 292 (S.D.N.Y. 2005). Decisions in the Southern District have indicated that similar protection against contribution and indemnity claims is available for any federal claim that is the subject of a settlement.[7]

### B. This Court Can Make Any Necessary Findings Regarding the Settlement

Illinois law requires that a court determine that a settlement was entered into in good faith in order for a party to obtain protection against alleged joint tortfeasor liability. *See* 740 ILCS 100/2 (a tortfeasor who settles with a claimant in good faith "is discharged from all liability for any contribution to any other tortfeasor"); *Johnson v. United Airlines*, 784 N.E.2d 812, 818 (Ill. 2003) ("when a trial court is notified that a settlement has been reached and a good-faith ruling is sought, the trial court should rule on the good faith of the settlement as soon as practicable, apart from and in advance of any trial on the tort issues").

A federal court may hold a hearing and make any good faith finding required by certain states' laws. *See Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 648 (3d Cir. 2006) (where Third Circuit upheld a good faith determination by the District Court of new Jersey under the Illinois Contribution Act, finding no abuse of discretion). Therefore, this Court is the appropriate court to hold any good faith hearing under the laws of Illinois regarding this settlement, and such a finding would be binding in that jurisdiction.

---

[7] In *Sabater v. Lead Indus. Ass'n, Inc.*, No. 00 CIV. 8026, 2001 WL 1111505, at *5 (S.D.N.Y. Sept. 21, 2001), the court held that because the defendant was released in good faith by the settlement, the co-defendants could not maintain a claim for contribution. *See also Eichenholtz v. Brennan*, 52 F.3d 478 (3d Cir. 1995) (affirming trial court order barring contribution claims against settling joint tortfeasor).

### C. The Settlement Agreement Is a Good Faith Settlement Under the Law of Illinois

Illinois law requires that a settlement be in good faith to protect against a non-settling defendant's claims. *See* 740 ILCS 100/2 (a tortfeasor who settles with a claimant in good faith "is discharged from all liability for any contribution to any other tortfeasor"). Pursuant to case law, Illinois requires that the trial court be notified and rule on good faith as a soon as practicable following the settlement. *Johnson*, 784 N.E.2d at 818. Once the settling parties make a preliminary showing of good faith, the burden of proof shifts to anyone challenging the good faith of the settlement. *Id.* at 818, 820.

A court applying the good faith analysis pursuant to Illinois law looks to the policies of the Illinois statute, 740 ILCS 100/2, and "the totality of the circumstances" of the settlement, in addition to the absence of collusion. *Id.* at 821 ("A settlement will not be found to be in good faith if it is shown that the settling parties engaged in wrongful conduct, collusion, or fraud. Nor will a settlement agreement satisfy the good-faith requirement if it conflicts with the terms of the Act or is inconsistent with the policies underlying the Act.") (citations omitted). The relevant policies considered are the encouragement of settlement, along with the "equitable apportionment of damages among tortfeasors." *Id.* In doing so, the court also examines whether the settlement is "within the range of reasonableness." *In re Nutraquest, Inc.*, 434 F.3d 639, 648 (3d Cir. 2006) (applying Illinois Joint Tortfeasor Contribution Act).

Courts in Illinois have "repeatedly and consistently held that a separate evidentiary hearing is not required and that a trial court need not decide the merits of the tort case or rule on relative liabilities of the parties before making a good faith determination." *Johnson*, 784 N.E.2d at 818 (collecting cases). The determination of a good faith settlement is left to the discretion of the court based upon the totality of the circumstances and does not require "a precise

determination of the overall damages suffered by the plaintiff and the settling tortfeasor's proportionate liability." *Id.*

Here, there was no collusion or wrongful conduct, or any other reason to prevent a finding of good faith. Indeed, the evidence here demonstrates that the Settlement Agreement was arrived at as a result of extensive and difficult negotiations conducted at arm's length and in good faith. *Id.* at 822-23 (defendant's desire to avoid litigation costs and plaintiffs' admitted marginal likelihood of success were sufficient to preliminarily establish good faith for nominal $1,000 payment to each plaintiff; any disparity between the settlement amount and the demand in the Complaint was not an accurate measure of good faith, nor did a small settlement amount alone, or the fact that a settlement was advantageous, require a finding of bad faith); *In re Nutraquest, Inc.*, 434 F.3d at 648-49 (affirming finding of good faith where, *inter alia*, the difference between the $75,000 settlement and the millions of dollars originally claimed by plaintiffs did not undermine a good faith finding since the value of the claims may have been marginal, nothing in the record suggested that the settlement was aimed at frustrating non-settling defendants' contribution claims, and the settlement was not grossly disproportionate).

Additionally, the settlement here is aligned with the policies of encouraging settlement, and the equitable apportionment of damages. *See, e.g., In re Nutraquest, Inc.*, 434 F.3d at 648 (a finding that defendants were not "dumping a 'large and inequitable portion' of their liability onto" the non-settling defendant satisfied the policies of Illinois law, and made it unnecessary for the court "to make detailed findings about how much liability was being shifted to [non-settling defendant] to find good faith."). Thus, the settlement here satisfies any requirements under Illinois law for a settlement to be in good faith.

### D. The Court Should Direct Entry of Judgment Under FRCP 54(b) With Respect to the Court's Determination of a Good Faith Settlement

As Illinois law requires that a court determine that a settlement was entered into in good faith in order for a party to obtain protection against alleged joint tortfeasor liability, this Court should enter such a judgment on the basis of Federal Rule of Civil Procedure 54(b). That rule states, in pertinent part:

> When an action presents more than one claim for relief – whether as a claim, counterclaim, crossclaim, or third-party claim – or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Because there is no just reason for delay, this Court should enter final judgment under Rule 54(b) determining that the Settlement Agreement is a good faith settlement, thereby protecting Settling Defendants from any alleged joint tortfeasor claims and effectuating the terms of the Settlement Agreement. (*See* Settlement Agreement at 4, 23.) *See, e.g. AmeriPride Servs. Inc.*, 2007 U.S. Dist. LEXIS 51364, *9, 11-12 (finding good faith of settlement under California law, court entered judgment under Rule 54(b) because there was no reason for delay and that the settling parties were entitled to an order protecting them from contribution actions brought by third parties); *see also Bottoms v. Levin Enters., Inc.*, 2001 U.S. Dist. LEXIS 13434, *3-4 (N.D. Cal. 2001) (finding settlement in good faith under Cal. Code Civ. Proc. §§ 877 and 877.6, court entered judgment pursuant to Fed. R. Civ. P. 54(b)).

There is "no just reason for delay" that would prevent an entry of judgment under Rule 54(b) finding that the Settlement Agreement was made in good faith and that claims for contribution and indemnity are barred. Reviewing the myriad benefits of settlement over protracted litigation, one court explained that "the desirability of promoting settlement of litigated claims, particularly when presented in the context of complex litigation such as that now

before the court, cannot be understated." *Agway, Inc. Employees' 401(k) Thrift Inv. Plan v. Magnuson*, 409 F. Supp. 2d 136, 140 (N.D.N.Y. 2005). The court in *Agway* entered judgment on the good faith of the settlement and the corresponding bar order pursuant to Rule 54(b) because making such determination immediately appealable "would serve the desirable purpose of allowing any disgruntled non-settling defendant to challenge this court's approval of the settlement and the entry of a bar order on appeal at an interlocutory stage when the parties, including significantly [the settling defendant], would be able to determine whether it was required to remain and participate in the litigation." *Id.* at 147-48; *see also Comerica Bank-Detroit v. Allen Indus., Inc.*, 769 F. Supp. 1408, 1410 (E.D. Mich. 1991) ("The inquiry into the issue of contribution protection would not involve any duplication of effort if done separately from the rest of the issues presented in this case.") (internal quotes omitted). Thus, an entry of judgment under Rule 54(b) would help provide finality under the Settlement Agreement.

## III. CONCLUSION

Based on the foregoing and all of the proceedings in these cases, Settling Defendants respectfully request that this Court make a determination that the Settlement Agreement was one made in good faith, and specifically that the settlements between the Illinois Plaintiffs identified herein and the Settling Defendants were made in good faith and were reasonable in accordance with the respective application of Illinois law to those settlements. Accordingly, the proposed order and judgment should be entered pursuant to Rule 54(b).

Dated: New York, New York  
October 26, 2009

Respectfully submitted on behalf of the Settling Defendants,

*[signature]*

Peter J. Sacripanti (PS 8968)  
James A. Pardo (JP 9018)  
Stephen J. Riccardulli (SR 7784)  
MCDERMOTT WILL & EMERY LLP  
340 Madison Avenue  
New York, NY 10173-1922  
Tel: (212) 547-5400  
Fax: (212) 547-5444  

Attorneys for Exxon Mobil Corporation