USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/16/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------- X
                                                 :
IN RE: METHYL TERTIARY BUTYL    :
ETHER ("MTBE") PRODUCTS         :
LIABILITY LITIGATION             :          **OPINION AND ORDER**
----------------------------------------------- :
                                                 :          **Master File No. 1:00-1898**
This document relates to:        :          **MDL 1358 (SAS)**
                                                 :          **M21-88**
*Orange County Water District v.*  :
*Unocal, et al.*, 04 Civ. 4968    :
                                                 :
----------------------------------------------- X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

In this consolidated multi-district litigation ("MDL"), plaintiffs seek

relief from contamination, or threatened contamination, of groundwater from

various defendants' use of the gasoline additive methyl tertiary butyl ether

("MTBE") and/or tertiary butyl alcohol ("TBA"), which is a product formed by the

natural degradation of MTBE in water. The parties have already engaged in

extensive motion practice, and familiarity with the Court's previous opinions is

assumed.[1] In this case, plaintiff Orange County Water District ("OCWD"), which

In Re: Methyl Tertiary Butyl Ether Products Liability Litigation                    Doc. 2885

_____

[1]    For a thorough recitation of plaintiffs' factual allegations, see, for
example, *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 379 F.
Supp. 2d 348, 364-67 (S.D.N.Y. 2005).

is responsible for maintaining groundwater quality, alleges that defendants' use and handling of MTBE has resulted in contamination and threatened future contamination of groundwater within its geographic region.

Defendants have moved for summary judgment on the ground that OCWD's common law claims are time-barred. OCWD filed this action on May 6, 2003, and a three-year statute of limitations is in effect. The parties dispute when the statute of limitations begins to run.

OCWD argues that the statute of limitations does not begin to run until MTBE contamination escapes remedial efforts undertaken by other government agencies that OCWD contends must respond before it does to reported MTBE releases. However, because OCWD's common law claims are based on its property rights in the groundwater within its geographic region, its claims accrue when that groundwater is appreciably harmed, and not when OCWD begins to remediate that harm. OCWD's property rights are not dependent on remedial efforts by other agencies.

OCWD was appreciably harmed as a matter of law when MTBE was detected in monitoring wells at or above California's Maximum Contaminant Level ("MCL"). Most releases occurring prior to May 6, 2000, resulted in such contamination before that date. As a result, the vast majority of OCWD's common

2

law claims are time-barred. However, with regard to three specific releases, there is a genuine issue of material fact as to whether OCWD should have been aware that it had suffered appreciable harm. OCWD's common law claims based on these releases may be timely if the statute of limitations was tolled by the discovery rule. Finally, OCWD is entitled to proceed with its common law claims for injuries it suffered due to releases occurring after May 6, 2000.

## II.    BACKGROUND

### A.    Procedural History

In 2006, defendants first moved for summary judgement on the ground that OCWD's claims are time-barred.[2] In deciding that motion, I divided the causes of action into three categories based on the date that MTBE was released at a particular site. I denied defendants' motion for summary judgment "as to claims arising from releases which occurred after May 6, 2000."[3] I granted the motion "as to claims arising from releases which occurred prior to May 6, 2000, where OCWD acted in response to an MTBE contamination."[4]

---

[2]    *See In re MTBE Prods. Liab. Litig.*, 475 F. Supp. 2d 286, 288 (S.D.N.Y. 2006).

[3]    *Id.* at 299.

[4]    *Id.*

3

With respect to releases which occurred prior to May 6, 2000, but where OCWD had not acted in response to an MTBE contamination, I invited further briefing on two issues: "(1) which of those releases did not result in appreciable harm before May 6, 2000, either because the MTBE did not reach the groundwater or because MTBE was not detected at a level that required, or should have required, OCWD to take action; and (2) whether the statute of limitations should be tolled based on the discovery rule."[5] The parties have now fully briefed those issues.

In this round of briefing, defendants originally argued that both OCWD's common law and statutory claims were time-barred.[6] Since that time, OCWD amended its complaint so that with respect to its statutory claims it only seeks "to recover reasonable costs actually incurred since May 6, 2000" and "declaratory relief with respect to future expenses it may incur."[7] In response, defendants have withdrawn their summary judgment motion with respect to

---

[5]    *Id.*

[6]    *See* Defendants' Supplemental Brief Regarding the Statute of Limitations at 5-6.

[7]    OCWD's Third Amended Complaint ("Compl.") ¶ 106.

4

OCWD's claims under the Orange County Water District Act.[8]

## B. Facts

### 1. OCWD

While OCWD owns many monitoring wells (*i.e.*, wells used to monitor groundwater contamination), unlike other plaintiffs in this MDL, OCWD does not own any production wells (*i.e.*, wells used to provide water to the public).[9] OCWD is a "special water agency" created by California statute and charged with the responsibility to "maintain, replenish, and manage groundwater resources" within its geographic area.[10] OCWD is statutorily authorized to "prevent interference [with] . . . [or] diminution . . . [or] pollution or contamination" of that groundwater.[11] OCWD is also empowered "to conduct any

---

[8] *See* Defendants' Second Supplemental Brief in Support of Motion for Summary Judgment Based on the Statute of Limitations ("Def. 2008 Br.") at 1 n.2 ("Because the District amended its complaint to address the principal points raised in defendants' motion regarding its statutory cause of action, this brief discusses only its common law claims."); CAL. WATER CODE § 40-8(c) (making "the person causing or threatening to cause . . . contamination or pollution . . . liable to [OCWD]" and giving OCWD the power to recover remediation costs for that contamination "in a civil action").

[9] *See In re MTBE Prods. Liab. Litig.*, No. M21-88, MDL 1358, 2007 WL 700819, at *3 (S.D.N.Y. Mar. 7, 2007).

[10] CAL. WATER CODE § 40-2(6).

[11] *Id.* § 40-2(9).

5

investigations of the quality of the surface and groundwaters within the district . . .
to determine whether those waters are contaminated or polluted" and to "expend
available funds to perform any cleanup, abatement, or remedial work required
under the circumstances."[12]

### 2. OCWD'S Regulatory Context

OCWD is one of several agencies with concurrent oversight of the
water supply in and around its service area. California's State Water Resources
Control Board is comprised of nine regional water boards, including the Santa Ana
Regional Water Quality Control Board ("Regional Board").[13] The Regional
Board's territory encompasses several water districts, including OCWD.[14] The
Orange County Health Care Agency ("OCHCA") is a regional public health
agency tasked with investigation and remediation of certain MTBE spill sites.[15]

While it is undisputed that the legislature envisioned that the water
agencies would work in concert with one another to remediate water
contamination, the exact nature of the relationship among OCWD and the other

---

[12]   *Id.* § 40-8(a) & (b).

[13]   *See In re MTBE Prods. Liab. Litig.*, 2007 WL 700819, at *3.

[14]   *See id.*

[15]   *See id.*

6

regulatory agencies presents an unresolved question of fact.[16] Primarily on the

basis of the 1989 Memorandum of Understanding ("MOU") between OCWD and

the Regional Board,[17] OCWD asserts that "[it] relies upon the Regional Board and

local oversight authorities to initiate 'first responses' to reported [MTBE]

releases."[18] Defendants, by contrast, argue that "nothing in [that] MOU permits

[OCWD] to defer action of its own while waiting to see if MTBE purportedly will

escape Regional Board efforts."[19] Because a reasonable fact-finder could accept

either interpretation of this document, I cannot resolve this factual dispute at this

stage of the litigation. However, as discussed below, the question of when

---

[16]     *See, e.g.*, CAL. WATER CODE § 40-8(b) ("[Remedial] action may be taken in default of, or in addition to, remedial work by the person causing the contamination or pollution, or other persons. The district may perform the work itself, by contract, or by or *in cooperation with any other governmental agency*.") (emphasis added).

[17]     *See* 4/19/89 MOU between OWCD and the Regional Board, Ex. 2 to Declaration of Michael Axline, counsel for OCWD, in Support of Plaintiff's Supplemental Brief Regarding Statute of Limitations, ¶ D ("The Regional Board and OCWD are vested with similar powers to investigate, clean-up and protect the quality of the ground water resources within the Groundwater Basin, and share common goals in maintaining, protecting and enhancing the quality of such groundwater resources.").

[18]     Supplemental Declaration of Roy Herndon, Chief Hydrogeologist at OCWD, in Opposition to Statute of Limitations Motion ("Herndon Decl.") ¶ 16 (quotation marks omitted).

[19]     Def. 2008 Br. at 14.

OCWD's claims accrued does not depend on which agency had initial responsibility to remediate MTBE contamination.

## III.  APPLICABLE LAW

### A.  Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[20] "'An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law.'"[21] "[T]he burden of demonstrating that no material fact exists lies with the moving party . . . ."[22]

In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to

---

[20]    Fed. R. Civ. P. 56(c).

[21]    *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 34 (2d Cir. 2008)).

[22]    *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008) (citing *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007)).

point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim."[23] To do so, the non-moving party must do more than show that there is "'some metaphysical doubt as to the material facts,'"[24] and it "'may not rely on conclusory allegations or unsubstantiated speculation.'"[25] However, "'all that is required [from a non-moving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"[26]

In determining whether a genuine issue of material fact exists, the court must "constru[e] the evidence in the light most favorable to the non-moving

---

[23] *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). *Accord In re September 11 Litig.*, No. 21 MC 97, 2007 WL 2332514, at \*4 (S.D.N.Y. Aug. 15, 2007) ("Where the nonmoving party bears the burden of proof at trial, the burden on the moving party may be discharged by showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.") (quotation marks omitted).

[24] *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[25] *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 2d Cir. 2001)).

[26] *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)).

party and draw all reasonable inferences" in that party's favor.[27] However, "[i]t is a settled rule that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'"[28] Summary judgment is therefore "appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."[29]

## B.   California's Statute of Limitations

Because OCWD's claims arise under California law, they are governed by the three-year statute of limitations found in section 338 of the California Code of Civil Procedure.[30] The limitations period begins running when a plaintiff's cause of action accrues.[31] In California, a plaintiff will be deemed to

---

[27]   *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009) (citing *Anderson*, 477 U.S. at 247-50, 255).

[28]   *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997)). *Accord Anderson*, 477 U.S. at 249.

[29]   *Pyke v. Cuomo*, 567 F.3d 74, 76 (2d Cir. 2009).

[30]   *See* California Code Civ. Pro. § 338(a) (claims "created by statute" must be commenced within three years); *id.* § 338(b) (claims for "trespass or injury to real property").

[31]   *See San Francisco Unif. Sch. Dist. v. W.R. Grace & Co.*, 44 Cal. Rptr. 2d 305, 309 (Cal. Ct. App. 1995) ("[S]tatute of limitation commences when the last element essential to the cause of action occurs.")

10

have suffered injury sufficient to give rise to a cause of action when it has suffered some "appreciable and actual harm."[32] "In an action involving tortious injury to property," such as trespass or nuisance, the relevant injury is "harm to the property itself."[33] Although the harm incurred must be more than nominal, a plaintiff need not have ascertained the full scope of its injury and "'neither the speculative nor uncertain character of the damages nor the difficulty of proof will toll the period of limitation.'"[34]

However, the limitation period may be tolled by the discovery rule, under which a cause of action will not accrue until a plaintiff either actually discovers its injury or should have discovered its injury "through the exercise of reasonable diligence."[35] In determining whether a plaintiff has or should have

---

[32] *Id.*

[33] *Beck Dev. Co. v. Southern Pac. Transp. Co.*, 52 Cal. Rptr. 2d 518, 556 (Cal. Ct. App. 1996). *Accord Starrh and Starrh Cotton Growers v. Aera Energy LLC*, 63 Cal. Rptr. 3d 165, 170 (Cal. Ct. App. 2007) ("A permanent trespass is an intrusion on property under circumstances that indicate an intention that the trespass shall be permanent. In these cases, *the law considers the wrong to be completed at the time of entry* and allows recovery of damages for past, present, and future harm in a single action, generally the diminution in the property's value. *The cause of action accrues and the statute of limitations begins to run at the time of entry.*") (emphasis added).

[34] *San Francisco Unif. Sch. Dist.*, 44 Cal. Rptr. 2d at 309 (quoting *Davies v. Krasna*, 535 P.2d 1161, 1168 (Cal. 1975)).

[35] *Id.*

11

discovered its injury California courts consider both the plaintiff's "actual knowledge as well as knowledge that could reasonably be discovered through the investigation of sources open to [the plaintiff]."[36] Generally, a plaintiff "need not be aware of the specific 'facts' necessary to establish the claim,"[37] and once a plaintiff "has a suspicion of wrongdoing" it will be deemed to have discovered its injury.[38]

## IV. DISCUSSION

### A. OCWD's Appreciable Harm Argument

OCWD argues that it is not harmed until MTBE escapes remedial efforts being overseen by other government agencies.[39] This is incorrect. OCWD's injury is not dependent on its remedial obligations. OCWD's common

---

[36]     *City of Santa Clara v. Atlantic Richfield Co.*, 40 Cal. Rptr. 3d 313, 334 (Cal. Ct. App. 2006) (citing *Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 928 (Cal. 1988)).

[37]     *Jolly*, 751 P.2d at 928.

[38]     *Id.*

[39]     *See, e.g.*, Response of OCWD to Defendants' Further Supplemental Memorandum Regarding Summary Judgment Motion on Statute of Limitations ("Pl. 2009 Resp.") at 2 ("OCWD has consistently explained in this case that it suffers 'appreciable, nonspeculative present injury' sufficient to support a cause of action only when MTBE escapes remediation at a particular location and contaminates, or threatens to contaminate, drinking water.").

12

law claims derive from its property rights in the groundwater within its territory.[40]
The relevant injury occurs, therefore, when this property is appreciably harmed,
and not when OCWD begins to incur the cost of remediating the harm to that
property.[41]

---

[40] Earlier in this litigation, OCWD argued, and this Court accepted, both that OCWD has usufructuary rights in the groundwater that it alleges defendants have contaminated, *see In re MTBE Prods. Liab. Litig.*, 457 F. Supp. 2d at 461, and that these rights are not subservient to the rights of other agencies such as the Regional Board, *see In re MTBE Prods. Liab. Litig.*, 2007 WL 700819, at *4. Furthermore, it is on the basis of these property rights that OCWD is able to pursue its common law claims. *See In re MTBE Prods. Liab. Litig.*, 457 F. Supp. 2d at 461-62, 466; *see also Aerojet-General Corp. v. Superior Court*, 257 Cal. Rptr. 621, 629 (Cal. Ct. App. 1989) (holding that the state's usufructuary property right in water was "sufficient for standing to claim damages caused by environmental pollution") (citations omitted); *Selma Pressure Treating Co. v. Osmose Wood Preserving Co. of Am.*, 271 Cal. Rptr. 596, 606 (Cal. Ct. App. 1990) (allowing the state to sue on a theory of public nuisance for contamination of groundwater where the state has a usufructuary interest in that water).

[41] *See Beck Dev. Co.*, 52 Cal. Rptr. 2d at 556 ("In an action involving tortious injury to property, the injury is considered to be to the property itself rather than to the property owner . . . ."). The California Court of Appeals decision in *Camsi IV v. Hunter Tech. Corp.*, 282 Cal. Rptr. 80 (Cal. Ct. App. 1991), is instructive. In that case, a property owner brought an action against a previous owner of the property for contaminating the soil and groundwater. In pertinent part, plaintiff alleged that "defendant [had] discharged harmful substances . . . into the parcel's soil and groundwater, that a government agency had ordered the [contaminant] be cleaned up, and that as a result of the agency's order [plaintiff] was secondarily liable for the cost of the cleanup and had lost a potential sale of part of the parcel." *Id.* at 82. The court rejected plaintiff's assertion that it was not appreciably harmed until the San Francisco Bay Regional Water Quality Control Board indicated its intent to require cleanup of the contaminant. *See id.* at 84-86. Instead, the court adhered to the traditional rule

OCWD points to the appreciable harm standard announced in my

earlier statute of limitations opinion in this case ("2006 SOL Opinion") in support

of its assertion that it does not suffer appreciable harm until MTBE contamination

escapes remediation by other government agencies.[42] In that Opinion, I explained

that "whether OCWD has suffered an injury turns on whether such contamination

caused or should have caused OCWD to act in furtherance of its charge[] [of]

protecting all groundwater within the District's territory."[43] According to OCWD,

because it does not have to take remedial action until MTBE escaped remediation

_____

that "the harm implicit in a tortious injury to property is harm to the property itself," *id.* at 85, and held that the limitation period commenced when plaintiff "possessed information sufficient . . . to place it on notice of serious contamination problems on the parcel it owned," *id.* at 87.

      Like the plaintiff in that case, OCWD's claims are based upon its allegation that defendants tortiously caused "MTBE and/or TBA to contaminate and pollute ground water resources within the District." Compl. ¶ 78. The fact that the bulk of OCWD's compensatory damages are due to the costs it incurred investigating and remediating MTBE contamination, does not mean that its claims only accrued when it incurred those costs. OCWD was appreciably harmed when the property in which it had an interest was appreciably harmed.

[42]    See Plaintiff's Supplemental Opposition Brief Regarding Statute of Limitations ("Pl. 2008 Br.") at 10-11 ("OCWD has explained throughout this litigation that OCWD's injuries do not occur until MTBE escapes initial remediation by the Regional Board or OCHCA and threatens drinking water sources.").

[43]    *In re MTBE Prods. Liab. Litig.*, 475 F. Supp. 2d at 295 (quotation marks and citation omitted).

14

by other agencies, OCWD is not harmed before that point.[44]

This argument arises from a misinterpretation of the 2006 SOL

Opinion. The standard announced there was designed to aid the parties in

determining what level of MTBE contamination causes appreciable harm to the

groundwater within OCWD's territory.[45] As already described, the appreciable

---

[44] OCWD suggests that a fact-finder must consider a complex set of factors to determine whether MTBE has escaped remedial efforts. *See* Supplemental Declaration of David Bolin, Staff Hydrogeologist at OCWD, in Support of Plaintiff Orange County Water District's Response to Defendants' Further Supplemental Memorandum Regarding Summary Judgment Motion on Statute of Limitations ¶ 6 ("In determining accrual dates . . . I considered a number of factors, including: (1) whether a well appeared to be part of an effort to characterize a plume for remedial purposes; (2) whether a well was downgradient of the site where remediation was occurring; (3) the likely sources of MTBE detected in wells (it is not uncommon for a well to detect MTBE from multiple sources, such as when several service stations with MTBE releases are located at the same intersection); and (4) distance between wells.").

[45] A close reading of the Opinion bears this out. *First*, the standard was suggested in the context of my inquiry into what concentration of MTBE amounts to appreciable harm. *See In re MTBE Prods. Liab. Litig.*, 475 F. Supp. 2d at 293. *Second*, while I recognized that "determining whether OCWD should have taken steps to respond to particular releases is a fact intensive inquiry," I instructed the parties to focus on what level of MTBE contamination was sufficient to harm OCWD. *Id.* at 295. OCWD was directed "to define with greater specificity *what level of contamination* it claims constitutes appreciable harm – i.e., *what level of contamination* should reasonably have caused it to take responsive action." *Id.* at 295 n.59 (emphasis added). *Third*, at the conclusion of the Opinion, OCWD was given the opportunity to submit additional briefing on two specific issues. With respect to appreciable harm, OCWD was permitted to discuss whether certain "releases did not result in appreciable harm before May 6, 2000, either because the MTBE did not reach groundwater or because *MTBE was not detected at a level*

15

harm at issue is the harm to the groundwater within OCWD's territory. Once

OCWD incurred that injury, it does not matter that the bulk of OCWD's damages

occurred at a later date.[46] To avoid confusion, I shall now restate that standard.

OCWD incurred appreciable harm when groundwater within its territory was

sufficiently contaminated with MTBE that a government agency charged with

protecting the quality of that water reasonably should have responded to that

contamination. The fact that other government agencies may have taken initial

responsibility for remediating the contamination of groundwater within OCWD's

geographic area is irrelevant except insofar as it relates to the amount of damages

that OCWD is able to recover.

## B.    Releases Occurring Prior to May 6, 2000

### 1.    Level of Contamination Constituting Appreciable Harm

Because OCWD focused its efforts on arguing that it did not suffer

appreciable harm until MTBE escaped remedial efforts by other agencies, it did

_____

that required, or should have required, OCWD to take action." *Id.* at 299
(emphasis added).

[46]     *See Nodine v. Shiley, Inc.*, 240 F.3d 1149, 1153 (9th Cir. 2001)
("[Under California law,] [w]here an injury, although slight, is sustained . . . the
statute of limitations attaches at once. It is not material that all the damages
resulting from the act shall have been sustained at that time, and the running of the
statute is not postponed by the fact that the actual or substantial damages do not
occur until a later time.").

not directly allege the level at which MTBE contamination appreciably harms the groundwater within its territory. Defendants argue that OCWD has nevertheless conceded that it was appreciably harmed when MTBE levels exceeded California's secondary MCL.[47] In 1999, the California Department of Health Services set the secondary MCL for MTBE at five parts per billion ("ppb").[48]

Defendants' suggestion that OCWD has conceded that it suffered appreciable harm when MTBE levels reached five ppb is slightly inaccurate. OCWD asserts that its claims accrued when "MTBE was first detected (at concentrations consistent with California's 5 ppb MCL for MTBE) in off-site monitoring wells."[49] It defines an off-site well as one that is "not part of central

---

[47]     *See* Defendants' Further Supplemental Memorandum in Support of Summary Judgment Based on Statute of Limitations ("Def. 2009 Mem.") at 22-24. The California Department of Health Services establishes both primary and secondary MCLs for selected contaminants. The primary MCL is based on the level of contamination "that, in the judgment of the department, may have an adverse effect on the health of persons." CAL. HEALTH & SAFETY CODE § 116275(c)(1). The secondary MCL is based on the level of contamination "that may adversely affect the odor or appearance of the water and may cause a substantial number of persons served by the public water system to discontinue its use, or that may otherwise adversely affect the public welfare." *Id.* § 116275(d).

[48]     *See* CAL. CODE. REGS. tit. 22, § 64449.

[49]     2/6/09 Letter from Michael Axline to the Court ("Feb. Axline Letter"), Ex. 5 to Declaration of James J. Finsten, counsel for Atlantic Richfield Company, BP Products North America, Inc., and BP West Coast Products LLC, in Support of Defendants' Further Supplemental Memorandum in Support of

17

remedial efforts at a given station."[50] OCWD, therefore, has not directly conceded

that it was appreciably harmed whenever MTBE was detected in its water at levels

at or exceeding five ppb. It has only conceded that it was appreciably harmed

when MTBE that *escaped remediation* was detected at that level.

However, an important inference can be drawn from OCWD's theory

of accrual. While OCWD admits that it should have responded when MTBE

detections reached five ppb indicating that MTBE had escaped remediation by

other agencies, it also asserts that this level of MTBE contamination "threaten[ed]

drinking water supplies."[51] According to OCWD, therefore, its statutory

responsibility to protect groundwater was triggered when contamination levels at

monitoring wells within its territory reached five ppb.[52]

---

Summary Judgment Motion Based on the Statue of Limitations ("Finsten Decl."),
at 2.

[50]    *Id.*

[51]    *Id.*

[52]    To be precise, OCWD has only conceded that this level of
contamination threatened groundwater when MTBE was detected above five ppb
in "off-site" monitoring wells. It is theoretically plausible that, due to
hydrogeological diversity, detections in different parts of OCWD's territory would
be more or less likely to appreciably harm OCWD's groundwater. However, the
only distinction OCWD has identified between monitoring wells that it categorizes
as "off-site" and other monitoring wells relates to whether a detection
demonstrated that MTBE had escaped remedial efforts overseen by other
government agencies. *See* Pl. 2009 Resp. at 4 ("Wells are 'on site' or 'off site' in

18

I previously rejected the secondary MCL as defining what constitutes an injury to groundwater within OCWD's territory.[53] However, that decision was based on my concern that OCWD might have been injured at a level below five ppb.[54] The question here is not whether OCWD was injured at a level *below* five ppb, but whether as a matter of law OCWD was injured when contamination levels were *at or above* five ppb. OCWD's representations have now provided a sufficient basis for this Court to determine that OCWD was appreciably harmed as a matter of law when MTBE was detected at or above five ppb at any monitoring well within OCWD's territory.[55]

### 2.    Site-by-Site Analysis

For statute of limitations purposes contamination sites must be analyzed on a site-by-site basis.[56] At the Court's direction, OCWD has identified releases at forty-eight sites associated with the bellwether plumes at issue in this

---

relation to remediation, not property boundaries."). I therefore treat detections in all monitoring wells alike.

[53]    *See In re MTBE Prods. Liab. Litig.*, 458 F. Supp. 2d at 158.

[54]    *See id.*

[55]    Whether MTBE contamination below the MCL constitutes appreciable harm remains a disputed question of fact that cannot be decided at this stage of the litigation.

[56]    *See In re MTBE Prods. Liab. Litig.*, 475 F. Supp. 2d at 292-93.

case.[57] At forty-five of these sites, MTBE was detected at associated monitoring

wells at levels above five ppb before May 6, 2000.[58] Accordingly, OCWD's

[57] *See* Plaintiff's Local Rule 56.1 Statement in Support of Response to Defendants' Further Supplemental Brief on Statute of Limitations ("Pl. Resp. 56.1"). OCWD originally identified fifty-two sites, but later determined that it was not appreciably harmed at four of those sites after May 6, 2000. *See id.* ¶¶ 14, 16, 55, 67 (Arco #3083; Costco #17900; Texaco #3311; Chevron #9-5568). OCWD has also stated that its claims at several of these stations are not ripe. *See* 3/13/09 Letter From Michael Axline to Matthew Heartney, counsel for Atlantic Richfield Company and BP Products North America, Inc., Ex. 2 to Finsten Decl. These determinations are based on the same theory of accrual OCWD used to analyze whether its claims are time-barred, *id.*, and are also incorrect as a matter of law.

[58] *See* Pl. Resp. 56.1 (Exxon #7-4283; Arco #1887; G & M Oil #4; Texaco #8520; Mobil #18-G6B; Unocal #5376; Shell #204359403; Texaco #121681; Unocal #5399; Mobil #18-HDR; Arco #6131; Mobil #18-JMY; Arco #1912; Arco #1905; Thrifty #376; Unocal #7470; Thrifty #008; Unocal #5356; Thrifty #085; Arco #6116; Exxon #3738; Unocal #5869; G & M Oil #24; Chevron #9-1921; Arco #3805; Chevron #95401; Unocal #5123; Shell #6502; Thrifty #368; Unocal #5226; Westminster Shell #5981; Huntington Beach Arco; USA Gasoline #141; Shell #8990; Four Star Ventures; Shell #4001; Unocal #5792; Unocal #4727; Arco #6160; Mobil #18-FYE; Arco #6036; Mobil #18-668; Arco #3094). Some of these detections occurred at monitoring wells inside the property boundaries of the gas stations. Other detections occurred at monitoring wells outside of these property boundaries. Because OCWD has the right to acquire water rights within its territory regardless of whether that groundwater is within a station's property boundaries, for statute of limitations purposes there is no meaningful distinction between these two types of wells. *See, e.g.*, CAL. WATER CODE § 40-1(a) ("A district is hereby created to be known and designated as 'Orange County Water District,' located entirely within Orange County, California, *including and comprising all of the land within the exterior boundaries of the district*." (emphasis added)); *see also id.* § 40-2(6)(d) (giving OCWD the power to "[a]ppropriate and acquire water and water rights within or outside of the district").

common law claims based on pre-May 6, 2000 releases for these sites are time-barred unless OCWD can show that the statute of limitations was tolled by the discovery rule, which I discuss below.

At three other sites – Thrifty #383, Beacon Bay Car Wash (Fountain Valley), and Arco #1994 – there are no recorded MTBE detections at any monitoring wells.[59] The only recorded detections for these sites occurred at associated production wells.[60] With regard to the first two sites, Thrifty #383 and Beacon Bay Car Wash (Fountain Valley), MTBE was detected in an associated production well at one ppb in 1995.[61] In 2002, MTBE was detected at the same production well at three ppb.[62] With regard to the last site, Arco #1994, MTBE was detected in an associated production well between 1995 and 1997 at levels ranging between 1 ppb and 4.3 ppb.[63] In 2005, it was detected at the same

---

[59]   *See* Pl. Resp. 56.1 ¶¶ 19, 20, 33. At one of these sites, Arco #1994, MTBE was detected in soil prior to 2000. *See id.* ¶ 33. However, this Court has only held that OCWD was appreciably harmed as a matter of law when groundwater contamination within its territory reached five ppb. The detection of MTBE in soil does not show conclusively that groundwater was contaminated.

[60]   *See id.* ¶¶ 19, 20, 33.

[61]   *See id.* ¶¶ 19, 20.

[62]   *See id.*

[63]   *See id.* ¶ 33.

21

production well at .09 ppb.[64]

OCWD has admitted that when MTBE has not been detected at monitoring wells, it is appreciably harmed "when MTBE was first detected in a drinking water production well associated with a station."[65] However, OCWD argues that this general admission should not be applied to these three wells because at the time of the pre-2000 MTBE detections, OCWD did not know that the minimal levels of MTBE that were detected would have a negative effect on the groundwater.[66] Although OCWD does not explicitly argue that the statute of limitations was tolled by the discovery rule at these sites, its argument is most plausible when viewed in that light. OCWD is asserting that it did not have "reason . . . to suspect [the] factual basis" for its claims because it did not know that MTBE would affect the taste and odor of water at certain minimal levels.[67] Because not every release of MTBE harms groundwater, OCWD did not necessarily know that it had been injured just because it was aware that MTBE had

---

[64]   *See id.*

[65]   Feb. Axline Letter, Ex. 5 to Finsten Decl., at 2.

[66]   *See, e.g.*, Pl. Resp. 56.1 ¶ 19 (stating the 1995 MTBE detection "was also below the 15 to 45 ppb range that [OCWD] understood to be the taste and odor threshold for MTBE in drinking water at the time"); *see also id.* ¶¶ 20, 33.

[67]   *Norgart v. Upjohn Co.*, 981 P.2d 79, 88 (Cal. 1999) (citing *Jolly*, 751 P.2d at 927).

22

been detected. On the other hand, at the time of the detection, OCWD may have had reason to suspect that the contamination levels were sufficiently high to negatively affect its groundwater. Accordingly, there is a genuine issue of material fact as to whether OCWD knew at the time of these low-level detections that its water was negatively affected. Defendants' motion for summary judgment is denied as to these three sites.

### 3. Discovery Rule

Even though the vast majority of releases caused OCWD to suffer appreciable harm before May 6, 2000, OCWD's claims are not barred if the statute of limitations was tolled by the discovery rule. Defendants argue that the statute of limitations cannot be tolled by the discovery rule because the data showing detections of MTBE at or exceeding five ppb "were maintained in public files available to [OCWD]."[68]

OCWD does not deny that it had access to these public files. Instead, it responds with two arguments. *First*, OCWD argues that it did not discover that it had been appreciably harmed for several years after it incurred that harm because "[t]he process of 'discovering' whether MTBE has escaped remediation and is threatening a drinking water source is labor intensive and time

_____

[68]   Def. 2009 Mem. at 25.

23

consuming."[69] This argument is irrelevant, however, given today's ruling that OCWD suffers appreciable harm when groundwater within its territory is sufficiently contaminated with MTBE. The question is not whether OCWD discovered, or should have discovered, that MTBE had escaped remediation. The question is whether OCWD discovered, or should have discovered, that water within its territory had been contaminated with MTBE at a sufficiently high level.

*Second*, OCWD argues that "it cannot reasonably monitor" the "voluminous" public files containing data of MTBE detections.[70] When a plaintiff suspects that it has been injured, the statute of limitations begins to run if the factual basis of the plaintiff's claim is contained in "sources open to" its investigation.[71] However, it is first necessary to determine whether a plaintiff had the requisite inquiry notice to suspect an injury.[72] Here, OCWD had the requisite inquiry notice if its general knowledge regarding MTBE should have reasonably caused it to investigate these public files to determine if its groundwater had been

---

[69]     Pl. 2009 Resp. at 19.

[70]     *Id.* at 20, 22.

[71]     *City of Santa Clara*, 40 Cal. Rptr. 3d at 334 (citing *Jolly*, 751 P.2d at 927).

[72]     *See Norgart*, 981 P.2d at 88 (stating that a plaintiff "has reason to suspect when [it] has notice or information of circumstances to put a reasonable person on inquiry").

24

injured at specific sites.

OCWD's general knowledge about MTBE contamination within its district was summarized in my 2006 SOL Opinion.[73] Importantly, prior to 2000, OCWD had general information both that MTBE was an undesirable contaminant and that there was a threat that MTBE might contaminate significant portions of the groundwater within its district. Given this knowledge, OCWD had the duty to inquire into the possibility of MTBE contamination at the specific sites at issue in this case. This included the duty to search the public files to which it had access. Accordingly, OCWD's argument that the statute of limitations was tolled by the discovery rule fails.

## C. Releases Occurring After May 6, 2000

In the 2006 SOL Opinion, I held that OCWD is not prohibited from bringing claims for injuries caused by MTBE releases occurring after May 6, 2000.[74] OCWD has requested clarification of footnote 81 of that Opinion.[75] That

---

[73] *See In re MTBE Prods. Liab. Litig.*, 475 F. Supp. 2d at 288-90.

[74] *See id.* at 298 ("If plaintiff can show that post-May 2000 releases occurred, and those releases resulted in harm to OCWD, claims relating to contamination from those releases are timely because they relate to conduct and harm occurring within three years of the filing of the Complaint.").

[75] *See* Pl. 2008 Br. at 22.

25

footnote states:

> Although OCWD claims that its injuries do not arise from
> pre-May 2000 contamination, it does argue that if contamination
> is present both before and after the limitations date, any claims
> remain timely because of the continuing tort doctrine. This
> argument fails because California's continuing tort doctrine only
> applies to claims of continuing nuisance and continuing trespass,
> which defendants do not challenge in this motion.[76]

The footnote is straightforward. The fact that a site was contaminated by releases

occurring after May 6, 2000, does not permit defendants to bring claims based on

pre-May 6, 2000 releases that are otherwise time-barred.

However, the inverse is also true. The fact that a single site was

contaminated by releases occurring before May 6, 2000 does not prevent OCWD

from bringing claims related to those sites based on separate and distinct releases

occurring after May 6, 2000. A continuing trespass or nuisance involves a series

of intrusions. These trespasses "are essentially a series of successive injuries, and

the statute of limitations begins anew with each injury."[77] Therefore, if there are

---

[76] *In re MTBE Prods. Liab. Litig.*, 475 F. Supp. 2d at 299 n.81 (citations omitted).

[77] *Starrh and Starrh Cotton Growers*, 63 Cal. Rptr. 3d at 171. *Accord Beck Development Co.*, 52 Cal. Rptr. 2d at 556 ("In general, a permanent nuisance is considered to be a permanent injury to property for which damages are assessed once and for all, while a continuing nuisance is considered to be a series of successive injuries for which the plaintiff must bring successive actions. . . . With respect to a permanent nuisance, the statute of limitations begins to run on the

26

two separate and distinct releases at a single site, each release must be analyzed independently.[78] If the release occurred prior to May 6, 2000, OCWD may only bring its claim based on that release if the release did not cause appreciable harm until after May 6, 2000. However, to the extent that OCWD suffered appreciable harm due to a distinct release that occurred after May 6, 2000, its claim as to the harm caused by that release is not barred by the statute of limitations.

As with releases occurring prior to May 6, 2000, alleged releases occurring after May 6, 2000 must also be analyzed on a site-by-site basis. OCWD has identified thirteen sites where it claims that it was appreciably harmed by releases occurring after May 6, 2000. There are genuine issues of material fact at twelve of those sites.[79]

---

creation of the nuisance and bars all claims after its passage, while each repetition of a continuing nuisance is considered a separate wrong which commences a new period in which to bring an action for recovery based upon the new injury.") (citations omitted).

[78]    *Cf. In re MTBE Prods. Liab. Litig.*, 593 F. Supp. 2d 540, 545 (S.D.N.Y. 2008) ("Each distinct release of gasoline (*e.g.*, from two different storage tanks) gives rise to separate claims.").

[79]    In the round of briefing following my 2006 SOL Opinion, OCWD identified eleven new sites where distinct releases may have occurred after May 6, 2000. *See* Plaintiff's Reply To Defendants' Second Supplemental Brief Regarding Statute of Limitations at 17-18; Plaintiff Orange County Water District's Supplemental Local Rule 56.1 Statement of Material Facts for Which Plaintiff Contends There Is a Genuine Issue of Material Facts for Which Plaintiff Contends

At some sites, OCWD points to direct evidence of spills occurring

after May 6, 2000. For example, with regard to Thrifty #383, OCWD alleges "that

maintenance and repair records" from February 19, 2001 "indicate[] that . . .

'drillers' hit a gasoline product line."[80] OCWD notes, in particular, that the repair

records reflect "that the maintenance contractor purged a gasoline product line and

---

        OCWD has also argued that there were distinct post-May 6, 2000
releases at two sites at which I had determined in my 2006 SOL Opinion that there
were time-barred releases. At one site, Edinger Avenue Chevron Station, OCWD
has provided direct evidence of a release occurring after May 6, 2000. *See*
Herndon Decl. ¶¶ 32-33. OCWD's claim as to this release may not be time-barred.
At the other site, the Santa Ana River, OCWD has provided neither direct nor
circumstantial evidence of specific releases occurring after May 6, 2000. *See id.*
¶¶ 30-31. Its only evidence is Herndon's unsupported statement that "[i]t is
extremely unlikely that the MTBE detected . . . near District recharge areas in
2001 would have originated from the same release or releases that caused sporadic
and anomalous detections in 1997-98." *Id.* ¶ 31. This assertion is speculative and
hence "inappropriate material for consideration on a motion for summary
judgment." *Major League Baseball Properties, Inc. v. Salvino*, 542 F.3d 290, 311
(2d Cir. 2008) (upholding a district court's determination that an expert's
"conclusory" statement did not create a genuine issue of material fact because that
"statement . . . was neither accompanied by any evidentiary citation nor followed
by any elaboration . . ."). Accordingly, Herndon's statement cannot create a
triable issue of material fact, and OCWD's claims as to releases into the Santa Ana
River are time-barred.

[80]     Pl. Supp. 56.1 ¶ 26.b.

replaced a malfunctioning leak detector."[81]  Defendants respond by pointing to

another document suggesting that the broken pipe was a vapor recovery line, as

opposed to a gasoline product line.[82]  The rupturing of such a pipe, defendants

argue, would not result in a release of MTBE gasoline.[83]  Defendants may be

correct.  However, the Court cannot, and should not, resolve the competing

inferences created by these documents on summary judgment.

At other sites, OCWD argues that documented increases in MTBE

concentrations provide circumstantial evidence of MTBE releases occurring after

May 6, 2000.  For example, with regard to Exxon #7-4283, OCWD alleges that

MTBE levels in a monitoring well "increased from 4,000 ppb on May 3, 2000 to

30,600 on June 11, 2003."[84]  Defendants respond that the MTBE levels fluctuated

too much during this time period to be "indicative of a new release."[85]  As with the

previous example, defendants may be correct, but a reasonable jury could find

otherwise.

---

[81]     *Id.*

[82]     *See* Defendants' Response to Plaintiff Orange Country Water
District's Supplemental Local Rule 56.1 Statement ("Def. Resp. 56.1") ¶ 26.

[83]     *See id.*

[84]     Pl. Supp. 56.1 ¶ 4.

[85]     Def. Resp. 56.1 ¶ 4.

29

OCWD has made similar arguments suggesting post-May 6, 2000 releases at twelve sites. Moreover, it has supported each of these arguments with sufficient evidence to raise a genuine issue of material fact as to whether OCWD was appreciably harmed by MTBE releases occurring after May 6, 2000. OCWD is entitled to make these arguments to a jury.

## V. CONCLUSION

For the reasons set forth above, defendants' motion to dismiss OCWD's common law claims is granted as to releases occurring prior to May 6, 2000 where MTBE was detected in monitoring wells at levels at or above five ppb. Defendants' motion is denied as to the three pre-May 6, 2000 releases where there were no MTBE detections in groundwater monitoring wells and detections below five ppb in production wells. Defendants' motion is also denied as to claims arising from the twelve releases where OCWD has created a genuine issue of material fact as to whether separate and distinct releases occurred after May 6, 2000. The Clerk of the Court is directed to close this motion (Docket No. 35).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           November 13, 2009

30

## -Appearances-

**Counsel for Orange County
Water District:**

Michael Axline, Esq.
Tracey O'Reilly, Esq.
Miller, Axline & Sawyer
1050 Fulton Avenue, Suite 100
Sacramento, CA 95825
Tel: (916) 488-6688
Fax: (916) 488-4288

**Counsel for Atlantic Richfield
Company and BP Products North
America, Inc.:**

Matthew T. Heartney, Esq.
Arnold & Porter LLP
777 South Figueroa Street
44th Floor
Los Angeles, CA 90017
Tel: (213) 243-4000
Fax: (213) 243-4199

**Liaison Counsel for Plaintiffs:**

Robin Greenwald, Esq.
Robert Gordon, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
Tel: (212) 558-5500
Fax: (212) 344-5461

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
McDermott Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
Tel: (212) 547-5583
Fax: (212) 547-5444