USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/2/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
                            :

IN RE: METHYL TERTIARY BUTYL   :
ETHER ("MTBE") PRODUCTS      :
LIABILITY LITIGATION           :    **OPINION AND ORDER**
------------------------------------------------------- :
                            :    **Master File No. 1:00-1898**

This document relates to:        :    **MDL 1358 (SAS)**
                            :    **M21-88**

*Orange County Water District v.*   :
*Unocal, et al.*, 04 Civ. 4968      :
                            :
------------------------------------------------------- X

SHIRA A. SCHEINDLIN, U.S.D.J.:


## I. INTRODUCTION

Orange County Water District ("OCWD") alleges that defendants'

In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation       Doc. 2890

use and handling of the gasoline additive methyl tertiary butyl ether ("MTBE")

has resulted in contamination and threatened future contamination of groundwater

in which OCWD has property rights. I recently granted defendants' motion to

dismiss OCWD's common law claims as to releases occurring prior to May 6,

2000 where MTBE was detected in monitoring wells at levels at or above five

parts per billion ("ppb") on the ground that these claims were time-barred.[1] In

---

[1]   *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, No. M21-88, MDL 1358, 2009 WL 3817671, at *7 (S.D.N.Y. Nov. 16, 2009).

1

making this determination, I rejected OCWD's argument that the statute of

limitations was tolled by the discovery rule on the basis of defendants' undisputed

assertion that OCWD had access to public files recording the relevant MTBE

detections. OCWD has now moved for partial reconsideration of that decision on

the ground that the California discovery rule I cited is preempted by the

Comprehensive Environmental Response, Compensations and Liability Act

(CERCLA).

## II.   APPLICABLE LAW

Motions for reconsideration are governed by Local Rule 6.3 and are

committed to the sound discretion of the district court.[2] A motion for

reconsideration is appropriate where "'the moving party can point to controlling

decisions or data that the court overlooked – matters, in other words, that might

---

[2]      *See Patterson v. United States*, No. 04 Civ. 3140, 2006 WL 2067036,
at *1 (S.D.N.Y. July 26, 2006 ) ("The decision to grant or deny a motion for
reconsideration is within the sound discretion of the district court.") (citing
*McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir. 1983)). Although Local Rule
6.3, which governs motions for reconsideration, requires the moving party to file a
motion for reconsideration within ten days of the disputed ruling, this Court
permitted plaintiff to submit this untimely request. *See* Local Rule 6.3 of the
Local Rules of the United States District Courts for the Southern and Eastern
Districts of New York.

reasonably be expected to alter the conclusion reached by the court.'"[3] A motion

for reconsideration may also be granted to "'correct a clear error or prevent

manifest injustice.'"[4]

The purpose of Local Rule 6.3 is to "'ensure the finality of decisions

and to prevent the practice of a losing party examining a decision and then

plugging the gaps of a lost motion with additional matters.'"[5] Local Rule 6.3 must

be "narrowly construed and strictly applied so as to avoid repetitive arguments on

issues that have been considered fully by the Court."[6] Courts have repeatedly

been forced to warn counsel that such motions should not be made reflexively to

---

[3]    *In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir. 2003) (quotation omitted).

[4]    *RST (2005) Inc. v. Research in Motion Ltd.*, No. 07 Civ. 3737, 2009 WL 274467, at *1 (S.D.N.Y. Feb. 4, 2009) (quoting *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

[5]    *Grand Crossing, L.P. v. United States Underwriters Ins. Co.*, No. 03 Civ. 5429, 2008 WL 4525400, at *3 (S.D.N.Y. Oct. 6, 2008) (quoting *S.E.C. v. Ashbury Capital Partners*, No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001)). *Accord Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, 233 F.R.D. 355, 361 (S.D.N.Y. 2005) ("[A] movant may not raise on a motion for reconsideration any matter that it did not raise previously to the court on the underlying motion sought to be reconsidered.").

[6]    *United States v. Treacy*, No. 08 CR 366, 2009 WL 47496, at *1 (S.D.N.Y. Jan. 8, 2009) (quotation marks omitted). *Accord Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (holding that a court will deny the motion when the movant "seeks solely to relitigate an issue already decided.").

reargue "'those issues already considered when a party does not like the way the original motion was resolved.'"[7] A motion for reconsideration is not an "opportunity for making new arguments that could have been previously advanced,"[8] nor is it a substitute for appeal.[9]

## III. DISCUSSION

OCWD has moved "for partial reconsideration of the Court's . . . statute of limitations opinion on the grounds that the discovery rule cited in the Court's opinion has been preempted by . . . [CERCLA]."[10] CERCLA provides that a federally required commencement date will apply to personal injury and property damage claims caused by exposure to hazardous substances "if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the

---

[7] *Makas v. Orlando*, No. 06 Civ. 14305, 2008 WL 2139131, at *1 (S.D.N.Y. May 19, 2008) (quoting *In re Houbigant, Inc.*, 914 F. Supp. 997, 1001 (S.D.N.Y. 1996)).

[8] *Associated Press v. United States Dep't of Defense*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005).

[9] *See Grand Crossing, L.P. v. United States Underwriters Ins. Co.*, No. 03 Civ. 5429, 2008 WL 4525400, at *3 (S.D.N.Y. Oct. 6, 2008).

[10] OCWD's Motion for Partial Reconsideration of Opinion of November 16, 2009 re Statute of Limitations ("OCWD Mot.") at 1.

federally required commencement date."[11] The federally required commencement

date is defined as the "date the plaintiff knew (or reasonably should have known)

that the personal injury or property damages . . . were caused or contributed to by

the hazardous substance or pollutant or contaminant concerned."[12] CERCLA,

therefore, imposes a federal discovery rule that tolls the statute of limitations if a

plaintiff should not reasonably have known that it was harmed by releases of

hazardous substances. The federal rule only applies when it would provide a more

generous statute of limitations than that mandated under state law (*e.g.*, because

state law does not include a discovery rule). Because the federal discovery rule

would not extend the limitations period in this case, it does not preempt state law.

*First*, the one Ninth Circuit case – *O'Connor v. Boeing North*

*American*[13] – that OCWD cites for the proposition that CERCLA's discovery rule

is more generous than California's discovery rule is not controlling,[14] and does not

_____

[11]     42 U.S.C. § 9658(a)(1).

[12]     *Id.* at § 9658(b)(4)(A).

[13]     311 F.3d 1139 (9th Cir. 2002).

[14]     I have discussed elsewhere that pretrial determinations, such as
motions to dismiss, that are not inherently enmeshed with trial proceedings are
governed by the federal law of the transferee circuit. *See, e.g., In re MTBE Prod.
Liab. Litig.*, 2007 WL 700819, at *2 n.13 (S.D.N.Y. Mar. 7, 2007). In addition, to
the extent that determining whether CERCLA's discovery rule is controlling
requires an interpretation of state law, California courts, unlike the Ninth Circuit,

persuade me that CERCLA preempts state law. *O'Connor* had a substantially

different factual background than this case. While *O'Connor* analyzed the

application of California's discovery rule to personal injury claims alleging that

hazardous substances released from nuclear and rocket testing facilities caused

plaintiffs to contract latent illnesses, this case involves alleged property damage to

groundwater. This difference is particularly important in the context of CERCLA

– which requires courts to determine whether a plaintiff's claims in a particular

case would commence earlier under state law than under CERCLA.[15] In addition,

the *O'Connor* court expressed deep concern with the district court's determination

that under California's discovery rule widespread news reports concerning the

_____

have held that California's discovery rule is equivalent to the federal discovery
rule. *See, e.g., Angeles Chem. Co. v. Spencer & Jones*, 51 Cal. Rptr. 2d 594, 599-
600 (Cal. App. 2 Dist. 1996) (holding that CERCLA only applies to California
property tort claims in instances where California law does not impose a discovery
rule). *Cf. Lockheed Martin Corp. v. Superior Court*, 134 Cal. Rptr. 2d 304, 308-
09 (Cal. App. 4 Dist. 2003) (specific holding that the statute of limitations was not
tolled by the discovery rule based on the statutorily overruled determination that
widespread newspaper reports were sufficient to create inquiry notice under
California law).

[15]     *See* 42 U.S.C. § 9658(a)(1) ("*In the case of any action* brought under
State law for personal injury, or property damages . . . if the applicable limitations
period *for such action* . . . provides a commencement date which is earlier than the
federally required commencement date, such period shall commence at the
federally required commencement date in lieu of the date specified in such State
statute." (emphasis added)).

6

release of hazardous materials from defendants' facilities were sufficient to put

plaintiffs on inquiry notice that these releases caused their illnesses.[16] A

subsequently passed California statute now explicitly overrules any California

state case holding that news reports are sufficient to create such notice.[17] Thus, to

the extent that California law and CERCLA were ever meaningfully different, that

difference has been abrogated.[18]

*Second*, in this case, the CERCLA standard outlined by the Ninth

Circuit in *O'Connor* would lead to the identical result as would using the

California state standard. *O'Connor* held that the CERCLA discovery rule, like

the California rule, requires a plaintiff to investigate the cause of its injuries when

it has inquiry notice.[19] However, the court outlined a two-part test for determining

whether a plaintiff reasonably should have become aware of its injury that the

---

[16]     *See O'Connor*, 311 F.3d at 1152-53.

[17]     *See* CAL. CIV. PROC. § 340.8(c)(2) ("Media reports regarding the
hazardous material or toxic substance contamination do not, in and of themselves,
constitute sufficient facts to put a reasonable person on inquiry notice that the
injury or death was caused or contributed to by the wrongful act of another.").

[18]     *But see Whitlock v. Pepsi Americas*, No. 08-02742, 2009 WL
3415783, at *3 (N.D. Cal. Oct. 21, 2009) (holding that even after the enactment of
section 340.8 CERCLA still preempted state law when applied to personal injury
claims alleging exposure to hazardous substances).

[19]     *See O'Connor*, 311 F.3d at 1150.

majority believed differed from the California rule:

> First, we consider whether a reasonable person in [plaintiff's] situation would have been expected to inquire about the cause of his or her injury. Second, if the plaintiff was on inquiry notice, we must next determine whether [an inquiry] would have disclosed the nature and cause of plaintiff's injury so as to put him on notice of his claim. The plaintiff will be charged with knowledge of facts that he would have discovered through inquiry.[20]

With respect to the first prong, OCWD does not contend in its motion for partial reconsideration that it lacked inquiry notice.[21]

---

[20]   *Id.* (quotation marks and citations omitted). The dissent in *O'Connor* strongly disagreed with the majority's determination that California's discovery rule standard differs from CERCLA's discovery rule standard. *See id.* at 1159 (O'Scannlain, J., concurring and dissenting) ("The California Supreme Court in *Jolly v. Eli Lilly Co.* held that under the California standard, '[a] plaintiff is held to her actual knowledge as well as knowledge that could reasonably be discovered through investigation of sources open to her.' Constructive knowledge is also, of course, imputed to plaintiffs under the federal standard and serves to commence the limitations period. Therefore, the California and federal standards are very similar, if not equivalent. Based on this overlap, the district court discounted any insignificant differences in language between the federal and state standards and correctly, in my view, concluded that the accrual date for a cause of action is the same under either rule." (citations omitted)).

[21]   Moreover, the standard I applied did not differ from the standard that *O'Connor* outlines. In *O'Connor*, the Ninth Circuit was concerned about the difference between the language used by some California courts in interpreting California's discovery rule (a plaintiff discovers a claim when it should "suspect" the cause of the injury) and the language in CERCLA (a plaintiff discovers a claim when it "reasonably should have known" of the cause of the injury). *Id.* at 1147-48. Following California law, however, I expressly stated that the statute of limitations was not tolled by the discovery rule because OCWD's knowledge

With respect to the second prong, OCWD argues that under the Ninth

Circuit's interpretation of CERCLA it is inappropriate to determine on summary

judgment whether OCWD could "reasonably have 'discovered' files for particular

sites, analyzed data for the site and determined whether the data indicated

appreciable, nonspeculative injury to OCWD's interests."[22] This argument is

unavailing. *O'Connor*, and the cases it cited, only held that a reasonable jury

could determine that "[a]n average plaintiff alleging a connection between latent

disease and exposure to hazardous substances does not have the means to conduct

the type of comprehensive epidemiological study necessary to bridge the causation

gap."[23] OCWD has not created a genuine issue of material fact that it lacked the

sophistication to determine the cause of its injuries. The expert declaration it

relies upon suggests only that it would have been time-consuming to review the

data in the public files to which it had access.[24] *O'Connor* does not support the

---

about MTBE contamination "should have reasonably caused it" to investigate the
public files to which it had access. *In re MTBE Prod. Liab. Litig.*, 2009 WL
3817671, at *7.

[22]    OCWD Mot. at 2.

[23]    *O'Connor*, 311 F.3d at 1157.

[24]    *See* Supplemental Declaration of David Bolin, Staff Hydrogeologist
at OCWD, in Support of Plaintiff Orange County Water District's Response to
Defendants' Further Supplemental Memorandum Regarding Summary Judgment
Motion on Statute of Limitations ¶ 55. Other statements in the Bolin declaration

proposition that the statute of limitations is extended if investigation would be labor intensive. Under CERCLA, just as under California law, a plaintiff is "charged with knowledge of facts that [it] would have discovered through inquiry."[25] Accordingly, applying CERCLA's inquiry notice rule would not alter the outcome in this case.

## IV. CONCLUSION

For the aforementioned reasons, OCWD's motion for partial reconsideration is denied. The Clerk of Court is directed to close this motion (Docket No. 124).

SO ORDERED:

_____

suggesting that it was analytically difficult for OCWD to determine, by reviewing the data available in public files, that it had been harmed by MTBE contamination are based on a theory of accrual I have already rejected. These statements rely on OCWD's argument that it did not suffer harm until MTBE escaped remediation overseen by other agencies and on a related expert declaration describing the difficulties involved in determining when MTBE escapes such remediation and threatens drinking water. *See id.* However, as I have already held on the basis of OCWD's own representations, OCWD suffered appreciable harm when MTBE was detected in groundwater monitoring wells at or above five ppb. *See In re MTBE Prod. Liab. Litig.*, 2009 WL 3817671, at *5. OCWD reasonably should have discovered these detections by reviewing the public files to which it had access. OCWD's arguments to the contrary have previously been rejected and are inappropriate on a motion for reconsideration.

25      *O'Connor*, 311 F.3d at 1150 (citation omitted).

Shira A. Scheindlin
                                            U.S.D.J.

Dated:        New York, New York
              December 02, 2009

## -Appearances-

**Counsel for Orange County Water District:**

Michael Axline, Esq.
Tracey O'Reilly, Esq.
Miller, Axline & Sawyer
1050 Fulton Avenue, Suite 100
Sacramento, CA 95825
Tel: (916) 488-6688
Fax: (916) 488-4288

**Counsel for Atlantic Richfield Company and BP Products North America, Inc.:**

Matthew T. Heartney, Esq.
Arnold & Porter LLP
777 South Figueroa Street
44th Floor
Los Angeles, CA 90017
Tel: (213) 243-4000
Fax: (213) 243-4199

**Liaison Counsel for Plaintiffs:**

Robin Greenwald, Esq.
Robert Gordon, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
Tel: (212) 558-5500
Fax: (212) 344-5461

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
McDermott Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
Tel: (212) 547-5583
Fax: (212) 547-5444