Law Offices of

# MILLER, AXLINE & SAWYER

A Professional Corporation

DUANE C. MILLER
MICHAEL AXLINE
A. CURTIS SAWYER, JR.

TRACEY L. O'REILLY
TAMARIN E. AUSTIN
EVAN EICKMEYER
DANIEL BOONE

April 23, 2007

VIA FACSIMILE AND U.S. MAIL

Jon D. Anderson, Esq.
Latham & Watkins
650 Town Center Drive, Suite 2000
Costa Mesa, California 92626-1918

Re:   *In Re MTBE: Orange County Water District v. Unocal Corp., et al.*
      **Bellwether Plumes**

Dear Mr. Anderson,

Per our conversation with Matthew Heartney and Jeffrey Parker last week, enclosed is Orange County Water District's (the "District") revised Plume List in compliance with Judge Scheindlin's order at the March 1, 2007, Status Conference, and pursuant to the agreement between the parties.

The revised Plume List incorporates comments from Mssrs. Heartney and Parker during our conversation last week as well as correcting typographical errors. For example, defendants were apparently concerned that Plume No. 8, the Dryer Road Well Field, was too large. The District therefore broke Plume No. 8 in four separate plumes which identify specific wells.

As stated in my April 6, 2007, email, the enclosed revised Plume List represents the District's best efforts given the following limitations:

The District has only been permitted to conduct limited discovery of the defendants' files and records pertaining to MTBE releases within the District's service area. For example, despite repeated requests, defendants have declined to update the productions of their Site Remediation Files, in particular consultant reports, for the past two years. After the District receives the updated SRF productions and documents, through discovery or otherwise, the District my utilize the new information to adjust the Plume List. The Plume List will also be adjusted to reflect new MTBE and/or TBA water quality data which is being gathered and analyzed by the District on an ongoing basis.

1050 Fulton Avenue, Suite 100, Sacramento, California 95825-4272, Telephone: (916) 488-6688
Facsimile: (916) 488-4288; Email: toxictorts@toxictorts.org

This letter and the enclosure will also be served via LexisNexis File & Serve today and represents the District's formal service of the revised Plume List.

Please feel free to give me a call if you have any questions.

Sincerely,

Tracey L. O'Reilly

Encl.

cc: All Counsel (via LNFS w/h encl.)

# EXHIBIT 7

**ORANGE COUNTY WATER DISTRICT V. UNOCAL CORP., et. al.**
**PLUME LIST**

| Plume | Well | Stations | Address | City |
|---|---|---|---|---|
| 1 | NB-TAMD | Exxon #4283, Chevron #208552 | 8980 Warner Ave. | Fountain Valley |
| | | Arco #1887 | 16742 Beach Blvd. | Huntington Beach |
| | | G&M #4 | 16990 Beach Blvd. | Huntington Beach |
| | | Texaco #8520, Texaco 121608 | 8520 Warner Ave. | Fountain Valley |
| | | Mobil #18-G6B | 9024 Warner Ave. | Fountain Valley |
| | | Unocal #5376 | 8971 Warner Ave. | Huntington Beach |
| | | Shell #204359403 | 8471 Warner Ave. | Huntington Beach |
| | | Texaco #121681 | 9475 Warner Ave. | Fountain Valley |
| | | Unocal #5399 | 9525 Warner Ave. | Fountain Valley |
| 2 | MCWD-3B | Mobil #18-HDR | 3195 Harbor Blvd. | Costa Mesa |
| | MCWD-5 | Arco #6131 | 3201 Harbor Blvd. | Costa Mesa |
| | MCWD-7 | Mobil #18-JMY | 3470 Fairview Rd. | Costa Mesa |
| | IRWD-7 | Arco #3083 | 3470 Fairview Rd. | Costa Mesa |
| | | Costco FV | 17900 Newhope St. | Fountain Valley |
| 3 | OCWD-M10 | Arco #1912 | 18480 Brookhurst St. | Fountain Valley |
| | OCWD-M11 | Thrifty #383 | 18520 Brookhurst St. | Fountain Valley |
| | OCWD-M45 | Arco #1905 | 18025 Magnolia St. | Fountain Valley |
| | | Beacon Bay Car Wash FV | 10036 Ellis Ave. | Fountain Valley |
| 4 | SA-16 | Thrifty #376 | 801 N. Bristol St. | Santa Ana |
| | | Unocal #7470 | 114 S. Bristol St. | Santa Ana |
| | | Thrifty #008 | 704 N. Bristol St. | Santa Ana |
| 5 | | Unocal #5356 | 1913 W. Edinger | Santa Ana |
| 6 | NB-DOLD | Thrifty #085 | 17475 Brookhurst St. | Fountain Valley |
| | NB-DOLS | Arco #6116 | 17520 Brookhurst St. | Fountain Valley |
| | | Exxon #3738 | 17474 Brookhurst St. | Fountain Valley |
| 7 | A-29 | Arco #1994 | 100 N. Beach Blvd. | Anaheim |
| | | Unocal #5869 | 676 S. State College Blvd. | Anaheim |
| 8 | IRWD-1 | G&M #24 | 3301 Bristol St. | Santa Ana |
| | IRWD-4 | Beacon Bay Car Wash SA | 1501 W. MacArthur Blvd. | Santa Ana |
| | IRWD-C8 | Mobil #18-HEP | 2921 S. Bristol St. | Santa Ana |
| | IRWD-C9 | Chevron #1921 | 3801 S. Bristol St. | Santa Ana |
| | SA-34 | Arco #3085 | 3361 S. Bristol St. | Santa Ana |
| 9 | HB-1 | Chevron #9-5401 | 5992 Westminster Blvd. | Westminster |
| | HB-13 | Unocal #5123 | 14972 Springdale St. | Huntington Beach |
| | HB-4 | Shell #6502 | 6502 Bolsa Avenue | Huntington Beach |
| | HB-7 | Thrifty #368 | 6311 Westminster Blvd. | Westminster |
| | | Unocal #5226 | 6322 Westminster Ave. | Westminster |
| | | Westminster Shell | 5981 Westminster Ave. | Westminster |
| | | Huntington Beach Arco | 6002 Bolsa Ave. | Huntington Beach |
| | | USA Gasoline #141 | 14600 Edwards St. | Westminster |
| 10 | WM-22 | Shell #08990 (aka Shell #8990) | 8990 Westminster Blvd. | Westminster |
| | | Four Star Ventures | 9356 Westminster Blvd. | Westminster |
| 11 | TAOR-A | Arco Master Auto Repair | 2604 W. La Palma Ave. | Anaheim |

**ORANGE COUNTY WATER DISTRICT V. UNOCAL CORP., et. al.**
**PLUME LIST**

| Plume | Well | Stations | Address | City |
|---|---|---|---|---|
| 12 | DISN-AE1 | 7-Eleven #26216 | 107 Ball Rd. | Anaheim |
| | AM-20 | Texaco #100 | 100 W. Katella Ave. | Anaheim |
| | AM-20A | | | |
| 13 | SA-26 | Thrifty #150 | 1539 Standard Avenue | Santa Ana |
| | | Shell #1202 | 1202 E. Edinger Avenue | Santa Ana |
| | | Unocal #5422 | 1502 E. Edinger Ave. | Santa Ana |
| 14 | MAGM-GG | Exxon #1354 | 12493 Beach Blvd. | Stanton |
| | | Mobil #18-GWN | 11962 Brookhurst St. | Garden Grove |
| | | Arco #1055 | 9001 Garden Grove Blvd. | Garden Grove |
| | | Mobil #11-GTB | 13031 Magnolia St. | Garden Grove |
| 15 | OCWD-M36 | Chevron #8474 | 18501 Beach Blvd. | Huntington Beach |
| | OCWD-M37 | Metro Car Wash HB | 18400 Beach Blvd. | Huntington Beach |
| 16 | SA-18 | Chevron #1825 | 2261 N. Fairview St. | Santa Ana |
| | SA-24 | Unocal #5618 | 591 The City Dr. | Orange |
| 17 | IRWD-3 | Ultramar #750 | 1501 S. Broadway | Santa Ana |
| | SCC-D1 | Mobil #18-HCN | 1351 E. Dyer St. | Santa Ana |
| 18 | SCWC-SSHR | Unocal #4778 | 10460 Magnolia Ave. | Stanton |
| 19 | | 7-Eleven #18167 | 1020 South Bristol St. | Santa Ana |
| 20 | AM-2 | Texaco #5650 | 5650 E. La Palma Ave. | Anaheim |
| | AM-3 | Tosco / 76 #5372 | 18951 Esperanza Rd. | Yorba Linda |
| | AET-RMW2 | | | |
| | AET-RMW3/2 | | | |
| | CHDZ-A | | | |
| 21 | EOCW-E | Unocal #5106 | 5344 E. Chapman Ave. | Orange |
| | EOCW-W | | | |
| | SCS-6 | | | |
| | SCS-8 | | | |
| | SCS-9 | | | |
| 22 | ET-2 | Unocal #6839 | 15275 Culver Dr. | Irvine |
| 23 | IRWD-2 | Arco #6071 | 3414 S. Main St. | Santa Ana |
| | IRWD-5 | Mobil #18-HGC | 100 W. MacArthur Blvd. | Santa Ana |
| 24 | SA-31 | Thrifty #075 | 14121 Newport Blvd. | Tustin |
| | | Mobil #18-H7Q | 13872 Redhill Ave. | Tustin |
| | | Unocal #5678 | 14081 Redhill Ave. | Tustin |
| | | Arco #1077 | 13742 Red Hill Ave. | Tustin |
| | | Arco #3045 | 14231 Red Hill Ave. | Tustin |
| | | Tustin Auto Wash | 535 E. Main St. | Tustin |
| | | Cardlock Fuels | 13922 Newport Ave. | Tustin |
| | | Tosco #4911 | 17280 E. 17th St. | Tustin |
| 25 | HMEM-COS | Arco #5185 | 1450 Baker St. | Costa Mesa |
| | | Mobil #18-HD4 | 2799 Harbor Blvd. | Costa Mesa |
| 26 | OCWD-M41 | Exxon #3915 | 20001 Beach Blvd. | Huntington Beach |
| | | Thrifty #385 | 19971 Beach Blvd. | Huntington Beach |

April 23, 2007

| Plume | Well | Stations | Address | City |
|---|---|---|---|---|
| 27 | A-43<br>KBS-4<br>KBS-4A | Mobil Atwood Terminal | 1477 Jefferson St. N. | Anaheim |
| 28 | YLWD-7<br>YLWD-12 | Setco - Anaheim | 4875 E. Hunter Ave. | Anaheim |
| 29 | | Arco #1998<br>Mobil #18-F1M<br>Unocal #5398 | 5472 Orangethorpe Ave.<br>5502 Orangethorpe Ave.<br>5014 Orangethorpe Ave. | La Palma<br>Buena Park<br>La Palma |
| 30 | | Shell #4001, Shell 135218<br>Texaco #3311<br>Tosco / 76 #5792, ConocoPhilips #5792<br>Unocal #4727 | 4001 Ball Rd.<br>3311 Katella Ave.<br>4002 Ball RD<br>3501 Cerritos Ave. | Cypress<br>Los Alamitos<br>Cypress<br>Los Alamitos |
| 31 | | Unocal #5599<br>Texaco #6011 | 7250 Artesia Blvd.<br>6011 Manchester Blvd. | Buena Park<br>Buena Park |
| 32 | | Shell #5231<br>Unocal #4914 | 5231 Beach Blvd.<br>5262 S. Beach Blvd. | Buena Park<br>Buena Park |
| 33 | | Thrifty #014<br>Thrifty #302 | 120 E. Imperial Hwy.<br>718 S. Brea Blvd. | Brea<br>Brea |
| 34 | | Arco #3080<br>Mobil #18-793 | 2840 E. Imperial Hwy.<br>2800 E. Imperial Hwy. | Fullerton<br>Fullerton |
| 35 | | Exxon #3650<br>Unocal #4629 | 901 N. Placentia Ave.<br>820 W. Chapman Ave. | Fullerton<br>Placentia |
| 36 | | Mobil #18-JQY<br>Unocal #5156 | 17591 Yorba Linda Blvd.<br>17499 Yorba Linda Blvd. | Yorba Linda<br>Yorba Linda |
| 37 | | Jet Gas, Former<br>Arco #0629 | 13202 Brookhurst St.<br>13482 Brookhurst St. | Garden Grove<br>Garden Grove |
| 38 | | Arco #3042<br>Costco GG<br>Thrifty #371 | 13331 Euclid St.<br>11000 Garden Grove Blvd.<br>13511 Euclid Street | Garden Grove<br>Garden Grove<br>Garden Grove |
| 39 | | Arco #0192<br>World Oil #31 | 2100 SE. Bristol St.<br>2040 S. Bristol St. | Santa Ana<br>Santa Ana |
| 40 | | Chevron #1202<br>Unocal #5915 | 9491 Edinger Ave.<br>9020 Edinger Ave. | Westminster<br>Fountain Valley |
| 41 | | Mobil #11-G6R<br>Texaco #6962<br>Unocal #5280<br>Unocal #5336 | 6012 Edinger Ave.<br>6962 Edinger Ave.<br>6502 Edinger Ave.<br>6012 Warner Ave. | Huntington Beach<br>Huntington Beach<br>Huntington Beach<br>Huntington Beach |
| 42 | | Arco #3053<br>Mobil #11-G31 | 5981 Warner Ave.<br>5972 Warner Ave. | Huntington Beach<br>Huntington Beach |

ORANGE COUNTY WATER DISTRICT V. UNOCAL CORP., et. al.
PLUME LIST

| Plume | Well | Stations | Address | City |
|---|---|---|---|---|
| 43 | | Mobil #99-A8Q | 3000 W. Lincoln Ave. | Anaheim |
| | | Unocal #4614 | 100 Beach Blvd. | Anaheim |
| 44 | | Chevron #8319 | 6971 Beach Blvd. | Buena Park |
| | | Thrifty #182 | 7510 Orangethorpe Ave. | Buena Park |
| 45 | | Exxon #7987 | 9001 Adams Ave. | Huntington Beach |
| | | Unocal #5078 | 9002 Adams Ave. | Huntington Beach |
| | | World Oil #68 | 8972 Adams Ave. | Huntington Beach |
| 46 | | Mobil #18-837 | 4800 Barranca Pkwy. | Irvine |
| | | Woodbridge Car Wash | 4550 Barranca Pkwy. | Irvine |
| 47 | | Arco #6060 | 21452 Brookhurst St. | Huntington Beach |
| | | Mobil #18-KBV | 21502 Brookhurst St. | Huntington Beach |
| | | Unocal #4992 | 1900 Newport Blvd. | Costa Mesa |
| | | Unocal #5285 | 21471 Brookhurst St. | Huntington Beach |
| 48 | | Superior Stations (P&M #975) | 2050 Harbor Blvd. | Costa Mesa |
| | | Texaco #1695 | 1695 Superior Ave. | Costa Mesa |
| | | Thrifty #386 | 2021 Newport Ave. | Costa Mesa |
| 49 | | Unocal #5077 | 5201 1st Street | Santa Ana |
| | | USA Gasoline #234 | 5142 1st St. | Santa Ana |
| 50 | | Chevron #9-8149 | 13052 Newport Ave. | Tustin |
| | | Mobil #18-FHW | 12972 Newport Ave. | Tustin |
| | | Unocal #5386 | 13348 Newport Blvd., Tustin | Tustin |
| 51 | | Shell | 14502 Beach Blvd. | Westminster |
| | | G&M #32 | | |
| 52 | | Americo Anaheim Service Center | 3270 West Lincoln | Anaheim |
| 53 | | ARCO #1047 | 2646 W. 1st St. | Santa Ana |
| 54 | | ARCO #1064 | 14511 Brookhurst St. | Westminster |
| 55 | | ARCO #1583 | 7990 Knott Avenue | Buena Park |
| 56 | | ARCO #1812 | 16502 Bolsa Chica St. | Huntington Beach |
| 57 | | ARCO #1888 | 16501 Goldenwest St. | Huntington Beach |
| 58 | | ARCO #3016 | 12422 Valley View Street | Garden Grove |
| 59 | IRWD-77 | Shell | 4162 Trabuco Rd. | Irvine |
| 60 | | ARCO #3094 | 530 N. Brookhurst Avenue | Anaheim |
| 61 | | ARCO #5084 | 490 E. 17th St. | Costa Mesa |
| 62 | | ARCO #5202 | 12502 Harbor Blvd. | Garden Grove |
| 63 | | ARCO #6036 | 13142 Goldenwest St. | Westminster |
| 64 | | ARCO #6160 | 13361 Harbor Blvd | Garden Grove |

April 23, 2007

| Plume | Well | Stations | Address | City |
|-------|------|----------|---------|------|
| 65 | | ARCO #6191 | 17502 Golden West St. | Huntington Beach |
| 66 | | ARCO #6226 | 102 E. Yorba Linda Blvd. | Placentia |
| 67 | | Beacon Bay Car Wash, NB | 4200 Birch St. | Newport Beach |
| 68 | | Berri Property | 8482 Westminster Blvd | Westminster |
| 69 | | Caldwell's Auto Center | 10602 Westminster Blvd | Garden Grove |
| 70 | | Chevron #0550 | 2051 E. Edinger Ave. | Santa Ana |
| 71 | | Chevron #5418 | 18692 MacArthur Blvd. | Irvine |
| 72 | | Chevron #5568 | 12541 Seal Beach Blvd. | Seal Beach |
| 73 | | Chevron #7842 | 11025 Warner Ave. | Fountain Valley |
| 74 | | Circle K #5217 | 12512 Knott Avenue | Garden Grove |
| 75 | | Costco - Cypress | 5401 Katella Avenue | Los Alamitos |
| 76 | | Exxon #0769 | 2122 Bristol St. | Newport Beach |
| 77 | | Exxon #1488 | 1730 W. Orangethorpe Ave. | Fullerton |
| 78 | | Exxon #2314 | 6392 Beach Blvd. | Buena Park |
| 79 | | Exxon #3515 | 17551 MacArthur Blvd. | Irvine |
| 80 | | E-Z Serve #100841 | 2409 W. Edinger | Santa Ana |
| 81 | | Family Oil Co. #2 | 12491 Haster St. | Garden Grove |
| 82 | | G and M Oil #06 | 13741 Beach Blvd. | Westminster |
| 83 | | Harbor Fair Exxon, Former | 2502 Harbor Blvd. | Costa Mesa |
| 84 | | Huntington Harbor Car Wash | 16921 Algonquin St. | Huntington Beach |
| 85 | | J & L Co. / United Oil #27 | 11470 Edinger Ave. | Fountain Valley |
| 86 | | Mobil #11-D9R | 16001 Beach Blvd. | Huntington Beach |
| 87 | | Mobil #11-FEE | 6011 Ball Rd. | Cypress |
| 88 | | Mobil #11-FXW | 5962 La Palma Ave. | La Palma |
| 89 | | Mobil #11-FYE | 8510 Knott Ave. | Buena Park |
| 90 | | Mobil #11-G3E | 14002 Beach Blvd. | Westminster |
| 91 | | Mobil #11-G7G | 8961 Bolsa Ave. | Westminster |
| 92 | | Mobil #18-668 | 16230 Harbor Blvd. | Fountain Valley |
| 93 | | Mobil #18-824 | 5333 University Ave. | Irvine |

| Plume | Well | Stations | Address | City |
|-------|------|----------|---------|------|
| 94 | IRWD-7 | 7-Eleven #24559 | 10499 Beach Blvd. | Stanton |
| 95 | | Mobil #18-HE1 | 1465 S. Main St. | Santa Ana |
| 96 | | Mobil #18-KBD | 9972 Westminster Ave. | Garden Grove |
| 97 | | Shell #16001 | 16001 Bolsa Chica St. | Huntington Beach |
| 98 | | Shell #20001 | 20001 Brookhurst St. | Huntington Beach |
| 99 | | Arco #6079 | 3901 Riverdale Ave. | Anaheim |
| 100 | | Thrifty Oil #015 | 2016 W. Seventeenth Street | Santa Ana |
| 101 | | Thrifty Oil #139 | 799 W. 19th Street | Costa Mesa |
| 102 | | Thrifty Oil #151 | 751 Baker St. | Costa Mesa |
| 103 | | Thrifty Oil #356 | 9511 Valley View St. | Cypress |
| 104 | | Thrifty Oil #360 | 2800 W. Ball Road | Anaheim |
| 105 | | Thrifty Oil #361 | 11500 Beach Boulevard | Stanton |
| 106 | | Thrifty Oil #370 | 13501 Magnolia Ave. | Garden Grove |
| 107 | | Thrifty Oil #374 | 2730 McFadden Ave. | Santa Ana |
| 108 | | Thrifty Oil #380 | 15501 Edwards Street | Huntington Beach |
| 109 | | Thrifty Oil #384 | 18795 Magnolia Blvd. | Fountain Valley |
| 110 | AM-39A AM-41A MBF-FM3 | Arco #1072 | 1202 E. Orangethorpe Ave. | Fullerton |
| 111 | | Unocal #3530 | 4002 N. Harbor Blvd., | Fullerton |
| 112 | | Unocal #4773 | 14886 Sand Canyon Ave. | Irvine |
| 113 | | Unocal #5094 | 7995 Knott Ave. | Buena Park |
| 114 | | Unocal #5198 | 100 W. Bastanchury Rd. | Fullerton |
| 115 | | Unocal #5274 | 9025 Garfield Ave. | Fountain Valley |
| 116 | | Unocal #5511 | 5100 Katella Ave. | Los Alamitos |
| 117 | | Unocal #5548 | 2701 N. Brea Blvd. | Fullerton |
| 118 | | Unocal #5552 | 9500 Valley View St. | Cypress |
| 119 | | Unocal #5635 | 7501 Katella Ave. | Stanton |
| 120 | | Unocal #5672 | 9972 Bolsa Chica Ave. | Westminster |
| 121 | | Unocal #5888 | 15482 Goldenwest St. | Westminster |

April 23, 2007

| Plume | Well | Stations | Address | City |
|---|---|---|---|---|
| 122 | | Unocal #5930 | 18351 Imperial Hwy. | Yorba Linda |
| 123 | | Unocal #6297 | 2345 W. Chapman Avenue | Orange |
| 124 | | Unocal #6404 | 18011 Culver Dr. | Irvine |
| 125 | | Unocal #6521 | 2960 San Miguel Rd. | Newport Beach |
| 126 | | Unocal #6926 | 6971 Orangethorpe Ave. | Buena Park |
| 127 | | World Oil #39 | 3450 W. Ball Rd. | Anaheim |

April 23. 2007

OCWD-MTBE-001-1924°°

| | A |
|---|---|
| 1 | Arco #6131 |
| 2 | 3001 Harbor Blvd, Costa Mesa, CA |
| 3 | |
| 4 | |
| 5 | Significant gw contam already migrated SW, downgrad, off site by time gw remediation initiated in 1998. |
| 6 | · historical gw flow SW. |
| 7 | · 1993: well B-6 installed on site at SW site margin. |
| 8 | · 1993: 1st test for gw contam: TPHg 84,000 ug/L, benzene 6,800 ug/L, etc. |
| 9 | · 1998: 1st tested for MTBE: 35,000 ug/L. |
| 10 | · 2002: free product (sheen) appeared in well B-6. |
| 11 | · 2003: overpurging started in B-6 - 6 months after free product detected in well - stops after 2 quarters. |
| 12 | · 1996: well B-9 installed near off site near SW site margin. |
| 13 | · 1996: 1st test for gw contam: TPHg 45,000 ug/L, benzene 5,500 ug/L, etc. |
| 14 | · 1996: 1st tested for MTBE: 65,000 ug/L. 1 year after SVE/AS started in well. |
| 15 | GW contam, incl MTBE & TBA, already flowing SW off site >2 yrs bef any rem started at the site. |
| 16 | GW not captured at site, except sporadically for a few months in 2000 & 2003, >4 yrs aft gw contam detected. |
| 17 | MTBE and TBA have been detected in on-site well B-6 at SW site margin and in off-site well B-9 near SW site margin since 1st tested in 1996; however MTBE has not be delineated off site, downgradient to the southwest. |
| 18 | Site had multiple fuel leaks between 1990 and the present, including fuel leaks that were detected or identified on 8/22/1990, |
| 19 | 11/1/1991, 6/27/91, 8/20/91, 1/29/92, 11/6/94, and 8/24/96; and discovered or indicated in Dec-1990. |
| 20 | |
| 21 | MTBE and TBA contamination has been left in groundwater beneath the site. Site (case) was opened in 1990 for investigation and in 1998 for remediation by regulatory agency. A "no further action" (NFA) letter was issued in 2008, although Agency reports that MTBE and TBA concentration in groundwater have been fluctuating in water (MTBE - 710 ug/L and TBA - 1,300 ug/L; OCHCA, Case Closure Summary, 11/2/2009). |
| 22 | |
| 23 | Regulatory Agency has issued at least 18 notifications to RP from 2/5/02 to 4/12/05 for inadequate or ineffective investigations, work plans, reports, and remediation. |
| 24 | |
| 25 | No UST inspection records were available for this summary. |
| 26 | |
| 27 | MTBE 1st tested in groundwater: 5/2/96 in B-8. |
| 28 | MTBE 1st detected in groundwater: 5/2/96 in B-6 - 35,000 ug/L. |
| 29 | Max MTBE detected in a gw monitoring well: 11/8/1996 in B-9 - 130,000 ug/L. |
| 30 | |
| 31 | TBA 1st tested in groundwater: 9/13/00 in B-9 (NOTE: detection limit is 20,000 ug/L - too high). |
| 32 | TBA 1st detected in groundwater: 9/18/01 in B-6 - 4,800 ug/L. |
| 33 | Max TBA detected in a gw monitoring well: 5/15/03 in B-9 - 6,190 ug/L. |
| 34 | |
| 35 | 2 saturated zones are identified. |
| 36 | semi-perched gw zone - to ~40 ft bgs (discrete upper & lower zones appear to merge into 1 zone, Komex report). |
| 37 | Alpha Aquifer - ~80 to 140 ft bgs. |
| 38 | |
| 39 | Downgradient well B-9 - off site to SW: |
| 40 | MTBE 1st tested 8/22/96. |
| 41 | MTBE 1st detected 8/22/1996 - 65,000 ug/L. |
| 42 | Max MTBE detected 11/8/1996 at 130,000 ug/L (NOTE: detection limit is 5,000 ug/L; maximum MTBE detected at site). |
| 43 | TBA 1st tested 9/13/00 (NOTE: detection limit is 5,000 ug/L - too high). |
| 44 | TBA 1st detected 6/7/2002 - 200 ug/L. |
| 45 | Max TBA detected 5/15/2003 at 6,190 ug/L (NOTE: maximum TBA detected at site). |
| 46 | |

| 47 | Semi-perched groundwater flow direction is SW (Komex report). | A |
| 48 | Deeper groundwater flow direction is NW (OCWD). | |
| 49 | Vertical groundwater gradient is down. | |
| 50 | | |

OCWD-MTBE-001-19249'

| | A |
|---|---|
| 51 | Remediation: groundwater capture conducted for only ~3 months: 4th quarter 2000: |
| 52 | -Aug.-1998: SVE/AS started (7 SVE wells and 1 MW - B-9). |
| 53 | -Oct.-00: 1 HVDPE started - operated for ~3 months. |
| 54 | 4 years after max MTBE detected for this site (130,000 ug/L in B-9 11/8/98 - downgrad from oem system): |
| 55 | -Dec-00: HVDPE stopped. |
| 56 | 2nd Qtr-03: overpumping started in well B-6 to remove free product (sheen): |
| 57 | 3rd Qtr-03: overpumping stopped. |
| 58 | Feb-05: SVE/AS stopped. |
| 59 | |
| 60 | MTBE and TBA groundwater plumes have migrated off site to the SW (104/05 Delta Environmental - *Quarterly Update Report, Arco Facility No. 6131, 3201 Harbor Boulevard, Costa Mesa, California, OCHCA Case #92/JT12.* |
| 61 | |
| 62 | Historic MTBE and TBA gw plumes have not been delineated laterally. |
| 63 | Recent MTBE and TBA gw plumes have not been delineated laterally. |
| 64 | MTBE and TBA gw plumes have not been delineated vertically. |
| 65 | |
| 66 | Groundwater conduits are near by (potential migration paths from shallow saturated zones to deeper saturated zones): |
| 67 | Nearest well to SW: HMEM-COS - monitoring well ~1,550 ft SW of site. |
| 68 | Drilled to 280 ft bgs. |
| 69 | Screen interval: unknown. |
| 70 | Pump rate - not a pumping well. |
| 71 | Sanitary seal - unknown. |
| 72 | Top of Shallow zone - ~43 ft bgs. |
| 73 | Bottom of Shallow zone - ~142 ft bgs. |
| 74 | Top of Principal Aquifer - ~162 ft bgs. |
| 75 | Nearest well MCWD-11 - water production well - ~1,480 ft E of site. |
| 76 | Drilled to 1,060 ft bgs. |
| 77 | Screened 330 to 350; 440 to 490; 440 to 500; 510 to 750; and 760 to 1000 ft bgs. |
| 78 | Pump rate - 4000 gpm. |
| 79 | Top of Shallow zone - ~40 ft bgs. |
| 80 | Bottom of Shallow zone - ~120 ft bgs. |
| 81 | Top of Principal Aquifer - ~131 ft bgs. |
| 82 | |
| 83 | Nearest MTBE detection in drinking water production well: |
| 84 | MCWD-3B: 0.07 ug/L in 2005; 0.11 ug/L in 2008. |
| 85 | MCWD-5: 0.08 ug/L in 2005; 0.08 ug/L in 2008. |
| 86 | MCWD-7: 0.05 ug/L in 2005; 0.04 ug/L in 2008. |
| 87 | |
| 88 | |

# EXHIBIT 8

# AGREEMENT NO. 0518
## with
## HARGIS + ASSOCIATES, INC.
### for
## MTBE THREAT ASSESSMENT SUPPORT SERVICES

This Agreement (the "Agreement") is made and entered into as of October 1, 2008, by and between the ORANGE COUNTY WATER DISTRICT, a special governmental district organized and operating under the laws of the State of California (hereinafter "OCWD") and Hargis + Associates, Inc. ("Contractor"). (The term Contractor includes professionals performing in a consulting capacity.)

## PART I
## FUNDAMENTAL TERMS

A.    Location of Project:  Orange County, CA.

B.    Description of Services/Goods to be Provided:  MTBE assessment and file review services in accordance with PART IV, Scope of Services, included herein.

C.    Term:  Unless terminated earlier as set forth in this Agreement, the services shall commence on October 8, 2008 ("Commencement Date") and the term of this Agreement shall continue through its expiration on June 30, 2009.

D.    Party Representatives:

D.1.    OCWD designates the following person/officer to act on OCWD's behalf: Dave Bolin.

D.2.    Contractor designates the following person to act on Contractor's behalf: Chris Ross.

E.    Notices:  All notices and other writings required to be delivered under this Agreement to the parties shall be delivered at the addresses set forth in Part II ("General Provisions").

F.    Attachments:  This Agreement incorporates by reference the following Attachments to this Agreement:

| | | |
|---|---|---|
| F.1. | Part I: | Fundamental Terms |
| F.2. | Part II: | General Provisions |
| F.3. | Part III | Special Provisions |
| F.4. | Part IV: | Scope of Services |
| F.5. | Part V: | Budget |

G.    Integration:  This Agreement represents the entire understanding of OCWD and Contractor as to those matters contained herein.    No prior oral or written understanding shall be of any force or effect with regard to those matters covered by this Agreement.  This Agreement supersedes and cancels any and all previous negotiations, arrangements, agreements or understandings, if any, between the parties, and none shall be used to interpret this Agreement.

IN  WITNESS  WHEREOF,  the  parties  have  executed  and  entered  into  this Agreement as of the date first set forth above.

ORANGE COUNTY WATER DISTRICT

By: _____
        Michael R. Markus, P.E.
        General Manager

By: _____
        Stephen R. Sheldon, Board President

Dated: _____10/01/08_____

APPROVED AS TO FORM:

RUTAN & TUCKER, LLP

By: _____
        Joel D. Kuperberg, General Counsel

HARGIS + ASSOCIATES, INC.

By: _____David R Hargis_____

Title: _____President / CEO_____

By: _____H.L. Sng_____

Title: _____CFO_____

Contractor Information:

Address for Notices and Payments:
2365 Northside Drive, Suite C-100
San Diego, CA  92108

Attention:  Chris Ross
Telephone:  619/521-0165
Facsimile No.:  619/521-8580

# PART II
## GENERAL PROVISIONS

**SECTION ONE:**    SERVICES OF Contractor

    1.1    Scope of Services.  In compliance with all terms and conditions of this Agreement, Contractor shall provide the goods and/or services shown on Part IV hereto ("Scope of Services"), which may be referred to herein as the "services" or the "work." If this Agreement is for the provision of goods, supplies, equipment or personal property, the terms "services" and "work" shall include the provision (and, if designated in the Scope of Services, the installation) of such goods, supplies, equipment or personal property.

    1.2    Changes and Additions to Scope of Services.  OCWD shall have the right at any time during the performance of the services, without invalidating this Agreement, to order extra work beyond that specified in the Scope of Services or make changes by altering, adding to, or deducting from said work. No such work shall be undertaken unless a written order is first given by OCWD to Contractor, incorporating therein any adjustment in (i) the Budget, and/or (ii) the time to perform this Agreement, which adjustments are subject to the written approval of the Contractor. It is expressly understood by Contractor that the provisions of this Section 1.2 shall not apply to services specifically set forth in the Scope of Services or reasonably contemplated therein. Contractor hereby acknowledges that it accepts the risk that the services to be provided pursuant to the Scope of Services may be more costly or time consuming than Contractor anticipates and that Contractor shall not be entitled to additional compensation therefor.

    1.3    Standard of Performance.  Contractor agrees that all services shall be performed in a competent, professional, and satisfactory manner in accordance with the standards prevalent in the industry, and that all goods, materials, equipment or personal property included within the services herein shall be of good quality, fit for the purpose intended.

    1.4    Performance to Satisfaction of OCWD.  Contractor agrees to perform all work to the satisfaction of OCWD within the time specified. If OCWD reasonably determines that the work is not satisfactory, OCWD shall have the right to take appropriate action, including but not limited to: (i) meeting with Contractor to review the quality of the work and resolve matters of concern; (ii) requiring Contractor to repeat unsatisfactory work at no additional charge until it is satisfactory; (iii) suspending the delivery of work to Contractor for an indefinite time; (iv) withholding payment; and (v) terminating this Agreement as hereinafter set forth.

    1.5    Instructions from OCWD.  In the performance of this Agreement, Contractor shall report to and receive instructions from OCWD's representative identified in Part I, or his or her designee. Tasks or services other than those specifically described in the Scope of Services shall not be performed without the prior written approval of the OCWD.

1.6    Familiarity with Work.  By executing this Agreement, Contractor warrants that Contractor (i) has thoroughly investigated and considered the scope of services to be performed, (ii) has carefully considered how the services should be performed, and (iii) fully understands the facilities, difficulties, and restrictions attending performance of the services under the Agreement. If the services involve work upon any site, Contractor warrants that Contractor has or will investigate the site and is or will be fully acquainted with the conditions there existing, prior to commencement of services hereunder. Should the Contractor discover any conditions, including any latent or unknown conditions, which will materially affect the performance of the services hereunder, Contractor shall immediately inform the OCWD of such fact and shall not proceed except at Contractor's risk until written instructions are received from the OCWD's Representative.

1.7    Prohibition Against Subcontracting or Assignment.  Contractor shall not contract with any other entity to perform in whole or in part the services required hereunder without the express written approval of OCWD. In addition, neither the Agreement nor any interest herein may be transferred, assigned, conveyed, hypothecated, or encumbered voluntarily or by operation of law, whether for the benefit of creditors or otherwise, without the prior express written approval of OCWD.  In the event of any unapproved transfer, including any bankruptcy proceeding, OCWD may, in its sole and absolute discretion, void the Agreement.   No approved transfer shall release any surety of Contractor of any liability hereunder without the express consent of OCWD.

1.8    Compensation.  Contractor shall be compensated in accordance with the terms of Part V hereto ("Budget"). Included in the Budget are all ordinary and overhead expenses incurred by Contractor and its agents and employees, including meetings with OCWD representatives, and incidental costs incurred in performing under this Agreement. Unless otherwise specified in Part V, OCWD shall compensate Contractor on a time-and-materials basis at the rates listed in Part V.  Contractor shall submit an invoice referencing this Agreement, the Work Order number, date and description of services performed, and the amount.  OCWD shall pay the Contractor within 30 days of receipt of the invoice.


SECTION TWO:    INSURANCE AND INDEMNIFICATION

2.1.    Insurance.    Without limiting Contractor's indemnification obligations, Contractor shall procure and maintain, at its sole cost and for the duration of this Agreement, insurance coverage as provided below, against all claims for injuries against persons or damages to property which may arise from or in connection with the performance of the work hereunder by Contractor, its agents, representatives, employees, and/or subconsultants. In the event that Contractor subcontracts any portion of the work, the contract between the Contractor and such subcontractor shall require the subcontractor to maintain the same policies of insurance that the Contractor is required to maintain pursuant to this Section 2.1.

2.1.1 <u>Insurance Coverage Required.</u>   The policies and amounts of insurance shall be as follows:

a.      <u>Commercial General Liability Insurance</u> - The      Contractor shall provide and maintain commercial general liability insurance.  The coverage for commercial general liability insurance shall be at least as broad as the following: Insurance Services Office (ISO) Commercial General Liability Coverage (Occurrence Form CG 0001).  Contractor shall maintain limits no less than the following:  Two million dollars ($2,000,000) per occurrence for bodily injury, personal injury and property damage. If Commercial General Liability Insurance or other form with a general aggregate limit or products-completed operations aggregate limit is used, either the general aggregate limit shall apply separately to the project/location (with the ISO CG 2503, or ISO CG 2504, or insurer's equivalent endorsement provided to OCWD) or the general aggregate limit and products-completed operations aggregate limit shall be twice the required occurrence limit.

b.      <u>Automobile Liability Insurance</u>  - The Contractor shall provide and maintain automobile liability insurance.   The coverage for automobile liability insurance shall be at least as broad as the following:  Insurance Services Office (ISO) Business Auto Coverage (Form CA 0001) covering Symbol 1 (any auto).  Contractor shall maintain limits no less than the following:  One Million Dollars ($1,000,000.00) for bodily injury and property damage each accident limit.

c.      <u>Workers Compensation and Employer's Liability</u>  -   The Contractor and all subcontractors shall insure (or be a qualified self-insured) under the applicable laws relating to workers' compensation insurance, all of their employees working on or about the construction site, in accordance with the "Workers' Compensation and Insurance Act", Division IV of the Labor Code of the State of California and any Acts amendatory thereof.  The Contractor shall provide employer's liability insurance with limits of no less than $1,000,000 each accident, $1,000,000 disease policy limit and $1,000,000 disease each employee.

d.      <u>Professional Liability</u> - The Contractor shall provide coverage appropriate to the Contractor's profession covering Contractor's wrongful acts, negligent actions, errors or omissions.  The retroactive date (if any) is to be no later than the effective date of this Agreement.  The limits shall be no less than $1,000,000 per claim and annual aggregate.

2.1.2.  <u>General Requirements.</u>  Contractor's insurance:

a.      Shall be issued by an insurance company, which maintains an A.M. Best's rating of "-A, VII" or higher; unless otherwise approved by OCWD;

b.      General Liability and Automobile Liability shall name the "OCWD, and its officers, officials, employees, agents, representatives and volunteers (collectively hereinafter "OCWD and OCWD Personnel") as additional insureds" and contain no special limitations on the scope of protection afforded to OCWD and OCWD Personnel.  All insurance provided hereunder shall include the appropriate separate endorsement(s).

c.      Shall be primary insurance and any insurance or self-insurance maintained by OCWD or OCWD Personnel shall be in excess of Contractor's insurance and shall not contribute with it;

d.      Shall apply separately to each insured against whom claim is made or suit is brought, except with respect to the limits of the insurer's liability;

e. Workers' Compensation and Employer's Liability shall be endorsed to state that the insurer shall waive all rights of subrogation against OCWD and OCWD Personnel, excluding Professional Liability;

f. Shall have project name and/or agreement number indicated on certificate; and

g. Shall be endorsed to state that coverage shall not be suspended, voided, cancelled, reduced in coverage or in limits, non-renewed, or materially changed for any reason, without thirty (30) days prior written notice thereof given by the insurer to OCWD by U.S. mail, or by personal delivery, except for nonpayment of premiums, in which case ten (10) days prior notice shall be provided.

2.1.3 <u>Deductibles</u>. Any deductibles or self-insured retentions must be declared to and approved by OCWD prior to the execution of this Agreement by OCWD.

2.1.4 <u>Evidence of Coverage</u>. CONSULTANT shall furnish OCWD with certificates of insurance with additional insured (Form 2010) including waiver of subrogation endorsement, demonstrating the coverage required by this Agreement, which shall be received and approved by OCWD not less than five (5) working days before work commences.

2.1.5 <u>Workers Compensation Insurance – No Employees/Sole Proprietor</u>. By his/her signature hereunder, Contractor certifies that he/she is aware of the provisions of Section 3700 of the California Labor Code which requires every employer to be insured against liability for workers' compensation or to undertake self-insurance in accordance with the provisions of that code, and he/she will comply with such provisions before commencing the performance of the work of this Agreement. Contractors and subcontractors will keep Workers Compensation Insurance for their employees in effect during all work covered by this Agreement.

In the event Contractor has no employees requiring Contractor to provide Workers' Compensation Insurance, Contractor shall so certify to OCWD in writing prior to OCWD's execution of this Agreement. OCWD and OCWD Personnel shall not be responsible for any claims in law or equity occasioned by failure of the Contractor to comply with this section or with the provisions of law relating to Workers' Compensation.

2.2 <u>Indemnification</u>.

2.2.1 The parties mutually acknowledge that OCWD has retained Contractor to perform the tasks and services set forth in this Agreement based upon the special skills, expertise and experience of Contractor. Accordingly, in performing the tasks and services under this Agreement, Contractor shall use the skill and care that a highly specialized professional, with expertise in the field, would use under similar circumstances. Further, the parties mutually agree that, to the extent that Contractor retains subcontractors or subcontractors to perform any portion of any of the tasks or services under this Agreement, Contractor has a duty to OCWD to ensure that the tasks and services performed by such subcontractors or subcontractors meet the same professional level, skill and expertise expected of Contractor.

2.2.2 Except as set forth in subdivision 2.2.3, Contractor shall indemnify, defend (with legal counsel acceptable to OCWD) and hold harmless OCWD and the OCWD Personnel from and against any and all actions, suits, claims, demands,

judgments, attorneys fees, costs, damages to persons or property, losses, penalties, obligations, expenses or liabilities ("Claims") that may be asserted or claimed by any person or entity arising out of Contractor's performance of any tasks or services for or on behalf of OCWD, whether or not there is concurrent active or passive negligence on the part of OCWD and/or any OCWD Personnel, but excluding any Claims arising from the active sole negligence or willful misconduct of OCWD or any OCWD Personnel.

2.2.3 The provisions of this subdivision 2.2.3 apply only in the event that Contractor is a "design professional" within the meaning of California Civil Code section 2782.8(b). If Contractor is a "design professional" within the meaning of Section 2782.8(b), then, notwithstanding subdivision 2.2.2 above, to the fullest extent permitted by law (including, without limitation, Civil Code sections 2782 and 2782.6), Contractor shall defend (with legal counsel reasonably acceptable to OCWD), indemnify and hold harmless OCWD and OCWD Personnel from and against any Claim that arises out of, pertains to, or relates to, directly or indirectly, in whole or in part, the negligence, recklessness, or willful misconduct of Contractor, any subcontractor, subcontractor or any other person directly or indirectly employed by them, or any person that any of them control, arising out of Contractor's performance of any task or service for or on behalf of OCWD under this Agreement. Such obligations to defend, hold harmless and indemnify OCWD or any OCWD Personnel shall not apply to the extent that such Claims are caused in part by the sole active negligence or willful misconduct of OCWD or such OCWD Personnel. To the extent Contractor has a duty to indemnify OCWD or any OCWD Personnel under this subdivision 2.2.3, Contractor shall be responsible for all incidental and consequential damages resulting directly or indirectly, in whole or in part, from Contractor's negligence, recklessness or willful misconduct.

## SECTION THREE: LEGAL RELATIONS AND RESPONSIBILITIES

3.1  Compliance with Laws.  Contractor shall keep itself fully informed of all existing and future state and federal laws and all county, municipal and OCWD ordinances and regulations which in any manner affect those employed by it or in any way affect the performance of services pursuant to this Agreement. Contractor shall at all times observe and comply with all such laws, ordinances, and regulations and shall be responsible for the compliance of all work and services performed by or on behalf of Contractor. When applicable, Contractor shall not pay less than the prevailing wage, which rate is determined by the Director of Industrial Relations of the State of California.

3.2  Licenses, Permits, Fees and Assessments.  Contractor shall obtain at its sole cost and expense all licenses, permits, and approvals that may be required by law for the performance of the services required by this Agreement.  Contractor shall have the sole obligation to pay any fees, assessments, and taxes, plus applicable penalties and interest, which may be imposed by law and arise from or are necessary for Contractor's performance of the services required by this Agreement, and shall indemnify, defend, and hold harmless OCWD against any such fees, assessments, taxes, penalties, or interest levied, assessed, or imposed against OCWD thereunder.

3.3   Covenant Against Discrimination.  Contractor covenants for itself, its heirs, executors, assigns, and all persons claiming under or through it, that there shall be no discrimination against any person on account of race, color, creed, religion, sex, marital status, national origin, or ancestry, in the performance of this Agreement. Contractor further covenants and agrees to comply with the terms of the Americans with Disabilities Act of 1990 (42 U.S.C. §12101 et seq.) as the same may be amended from time to time.

3.4   Independent Contractor.  Contractor shall perform all services required herein as an independent Contractor of OCWD and shall remain at all times as to OCWD a wholly independent Contractor. OCWD shall not in any way or for any purpose become or be deemed to be a partner of Contractor in its business or otherwise, or a joint venturer, or a member of any joint enterprise with Contractor. Contractor shall not at any time or in any manner represent that it or any of its agents or employees are agents or employees of OCWD. Neither Contractor nor any of Contractor's employees shall, at any time, or in any way, be entitled to any sick leave, vacation, retirement, or other fringe benefits from the OCWD; and neither Contractor nor any of its employees shall be paid by OCWD time and one-half for working in excess of forty (40) hours in any one week. OCWD is under no obligation to withhold State and Federal tax deductions from Contractor's compensation. Neither Contractor nor any of Contractor's employees shall be included in the competitive service, have any property right to any position, or any of the rights an employee may have in the event of termination of this Agreement.

3.5   Use of Patented Materials.  Contractor shall assume all costs arising from the use of patented or copyrighted materials, including but not limited to equipment, devices, processes, and software programs, used or incorporated in the services or work performed by Contractor under this Agreement.  Contractor shall indemnify, defend, and save the OCWD harmless from any and all suits, actions or proceedings of every nature for or on account of the use of any patented or copyrighted materials.

3.6   Proprietary Information.  All proprietary information developed specifically for OCWD by Contractor in connection with, or resulting from, this Agreement, including but not limited to inventions, discoveries, improvements, copyrights, patents, maps, reports, textual material, or software programs, but not including Contractor's underlying materials, software, or know-how, shall be the sole and exclusive property of OCWD, and are confidential and shall not be made available to any person or entity without the prior written approval of OCWD. Contractor agrees that the compensation to be paid pursuant to this Agreement includes adequate and sufficient compensation for any proprietary information developed in connection with or resulting from the performance of Contractor's services under this Agreement.  Contractor further understands and agrees that full disclosure of all proprietary information developed in connection with, or resulting from, the performance of services by Contractor under this Agreement shall be made to OCWD, and that Contractor shall do all things necessary and proper to perfect and maintain ownership of such proprietary information by OCWD.

3.7   Ownership of Data, Reports and Documents.  The Contractor shall deliver to OCWD's representative identified in Part I, at the end of the project, notes and

surveys made, all reports of tests made, studies, reports, plans, a copy of electronic and digital files, and other materials and documents which shall be the property of OCWD. The Contractor is not responsible to third parties of OCWD's use of data, reports and documents on other projects. OCWD may use or reuse the materials prepared by Contractor in any manner desired without additional compensation to Contractor. Any work performed by Contractor under this Agreement shall be the property of OCWD.

3.8     Retention of Funds. Contractor hereby authorizes OCWD to deduct from any amount payable to Contractor (whether arising out of this Agreement or otherwise) any amounts the payment of which may be in dispute hereunder or which are necessary to compensate OCWD for any losses, costs, liabilities, or damages suffered by OCWD, and all amounts for which OCWD may be liable to third parties, by reason of Contractor's negligent acts, errors, or omissions, or willful misconduct, in performing or failing to perform Contractor's obligations under this Agreement. OCWD in its sole and absolute discretion, may withhold from any payment due Contractor, without liability for interest, an amount sufficient to cover such claim or any resulting lien. The failure of OCWD to exercise such right to deduct or withhold shall not act as a waiver of Contractor's obligation to pay OCWD any sums Contractor owes OCWD.

3.9     Termination By OCWD. OCWD reserves the right to terminate this Agreement at any time, with or without cause, upon written notice to Contractor. Upon receipt of any notice of termination from OCWD, Contractor shall immediately cease all services hereunder except such as may be specifically approved in writing by OCWD. Contractor shall be entitled to compensation for all services rendered prior to receipt of OCWD's notice of termination and for any services authorized in writing by OCWD thereafter. If termination is due to the failure of Contractor to fulfill its obligations under this Agreement, OCWD may take over the work and prosecute the same to completion by contract or otherwise, and Contractor shall be liable to the extent that the total cost for completion of the services required hereunder, including costs incurred by OCWD in retaining a replacement Contractor and similar expenses, exceeds the Budget.

3.10    Right to Stop Work; Termination By Contractor. Contractor shall have the right to stop work only if OCWD fails to timely make a payment required under the terms of the Budget. Contractor may terminate this Agreement only for cause, upon thirty (30) days' prior written notice to OCWD. Contractor shall immediately cease all services hereunder as of the date Contractor's notice of termination is sent to OCWD, except such services as may be specifically approved in writing by OCWD. Contractor shall be entitled to compensation for all services rendered prior to the date notice of termination is sent to OCWD and for any services authorized in writing by OCWD thereafter. If Contractor terminates this Agreement because of an error, omission, or a fault of Contractor, or Contractor's willful misconduct, the terms of Section 3.9 relating to OCWD's right to take over and finish the work and Contractor's liability therefor shall apply.

3.11    Waiver. No delay or omission in the exercise of any right or remedy by a nondefaulting party on any default shall impair such right or remedy or be construed as a waiver. A party's consent to or approval of any act by the other party requiring the

party's consent or approval shall not be deemed to waive or render unnecessary the other party's consent to or approval of any subsequent act. Any waiver by either party of any default must be in writing.

3.12 Legal Actions. Legal actions concerning any dispute, claim, or matter arising out of or in relation to this Agreement shall be instituted and maintained in the Superior Courts of the State of California in the County of Orange, or in any other appropriate court with jurisdiction in such County, and Contractor agrees to submit to the personal jurisdiction of such court.

3.13 Rights and Remedies are Cumulative. The rights and remedies of the parties are cumulative and the exercise by either party of one or more of such rights or remedies shall not preclude the exercise by it, at the same or different times, of any other rights or remedies for the same default or any other default by the other party.

3.14 Attorneys' Fees. In any action between the parties hereto seeking enforcement of any of the terms or provisions of this Agreement or in connection with the performance of the work hereunder, the party prevailing in the final judgment in such action or proceeding, in addition to any other relief which may be granted, shall be entitled to have and recover from the other party its reasonable costs and expenses, including but not limited to reasonable attorney's fees, expert witness fees and courts costs. If either party to this Agreement is required to initiate or defend litigation with a third party because of the violation of any term or provision of this Agreement by the other party, then the party so litigating shall be entitled to its reasonable attorney's fees and costs from the other party to this Agreement.

3.15 Force Majeure. The time period specified in this Agreement for performance of services shall be extended because of any delays due to unforeseeable causes beyond the control and without the fault or negligence of OCWD or Contractor, including but not restricted to acts of God or of the public enemy, unusually severe weather, fires, earthquakes, floods, epidemics, quarantine restrictions, riots, strikes, freight embargoes, wars, litigation and/or acts of any governmental agency, including OCWD, if the delaying party shall within ten (10) days of the commencement of such delay notify the other party in writing of the causes of the delay. If Contractor is the delaying party, OCWD shall ascertain the facts and the extent of delay, and extend the time for performing the services for the period of the enforced delay when and if in the judgment of OCWD such delay is justified. OCWD's determination shall be final and conclusive upon the parties to this Agreement. In no event shall Contractor be entitled to recover damages against OCWD for any delay in the performance of this Agreement, however caused. Contractor's sole remedy shall be extension of this Agreement pursuant to this Section 3.15.

3.16 Non-liability of OCWD Officers and Employees. No officer, official, employee, agent, representative or volunteer of OCWD shall be personally liable to Contractor, or any successor in interest, in the event of any default or breach by OCWD, or for any amount which may become due to Contractor or its successor, or for breach of any obligation of the terms of this Agreement.

3.17   Conflict of Interest.  No officer, official, employee, agent, representative or volunteer of OCWD shall have any financial interest, direct or indirect, in this Agreement, or participate in any decision relating to this Agreement which affects his or her financial interest or the financial interest of any corporation, partnership, or association in which he or she is interested, in violation of any Federal, State, or OCWD statute, ordinance, or regulation.   The Contractor shall not employ any such person while this Agreement is in effect.

3.18   Compliance   with   California   Unemployment   Insurance   Code Section 1088.8.  If Contractor is a sole proprietor, then prior to signing the Agreement, Contractor shall provide to the OCWD a completed and signed Form W-9, Request for Taxpayer Identification Number and Certification. Contractor understands that pursuant to California Unemployment Insurance Code Section 1088.8, the OCWD will report the information from Form W-9 to the State of California Unemployment Development Department, and that the information may be used for the purposes of establishing, modifying, or enforcing child support obligations, including collections, or reported to the Franchise Tax Board for tax enforcement purposes.

SECTION FOUR:   MISCELLANEOUS PROVISIONS

4.1   Records and Reports.  Upon request by OCWD, Contractor shall prepare and submit to OCWD any reports concerning Contractor's performance of the services rendered under this Agreement. OCWD shall have access, upon reasonable notice, to the books and records of Contractor related to Contractor's performance of this Agreement. All drawings, documents, and other materials prepared by Contractor in the performance of this Agreement (i) shall be the property of OCWD and shall be delivered at no cost to OCWD upon request of OCWD or upon the termination of this Agreement, and (ii) are confidential and shall not be made available to any individual or entity without prior written approval of OCWD. Contractor shall keep and maintain all records and reports related to this Agreement for a period of three (3) years following termination of this Agreement, and OCWD shall have access to such records upon 48 hours notice.

4.2   Notices.  Unless otherwise provided herein, all notices required to be delivered under this Agreement or under applicable law shall be personally delivered, or delivered by United States mail, prepaid, certified, return receipt requested, or by reputable document delivery service that provides a receipt showing date and time of delivery. Notices personally delivered or delivered by a document delivery service shall be effective upon receipt. Notices delivered by mail shall be effective at 5:00 p.m. on the second calendar day following dispatch. Notices to the OCWD shall be delivered to the following address, to the attention of the OCWD Representative set forth in Paragraph D.1 of the Fundamental Terms of this Agreement:

To OCWD:        Orange County Water District
                P. O. Box 8300
                Fountain Valley, CA 92728-8300
                Telephone: 714/378-3200

Notices to Contractor shall be delivered to the address set forth below Contractor's signature on Part I of this Agreement to the attention of Contractor's Representative set forth in Paragraph D.2 of the Fundamental Terms of this Agreement. Changes in the address to be used for receipt of notices shall be effected in accordance with this Section 4.2.

4.3    Construction and Amendment.   The terms of this Agreement shall be construed in accordance with the meaning of the language used and shall not be construed for or against either party by reason of the authorship of this Agreement or any other rule of construction which might otherwise apply.  The headings of sections and paragraphs of this Agreement are for convenience or reference only, and shall not be construed to limit or extend the meaning of the terms, covenants and conditions of this Agreement.  This Agreement may only be amended by the mutual consent of the parties by an instrument in writing.

4.4    Severability.  Each provision of this Agreement shall be severable from the whole. If any provision of this Agreement shall be found contrary to law, the remainder of this Agreement shall continue in full force.

4.5    Authority.   The person(s) executing this Agreement on behalf of the parties hereto warrant that (i) such party is duly organized and existing, (ii) they are duly authorized to execute and deliver this Agreement on behalf of said party, (iii) by so executing this Agreement, such party is formally bound to the provisions of this Agreement, and (iv) the entering into this Agreement does not violate any provision of any other Agreement to which said party is bound.

4.6    Special Provisions.   Any additional or supplementary provisions or modifications or alterations of these General Provisions shall be set forth in Part III of this Agreement ("Special Provisions").

4.7    Precedence.   In the event of any discrepancy between Part I ("Fundamental Terms"), Part II ("General Provisions"), Part III ("Special Provisions"), Part IV ("Scope of Services"), and/or Part V ("Budget"), Part III shall take precedence and prevail over Parts I, II, IV and V; Part II shall take precedence and prevail over Parts I, IV and V; Part IV shall take precedence and prevail over Parts I and V; and Part V shall take precedence over Part I.

PART III
SPECIAL PROVISIONS

A.     Delete 2.1.1.d <u>Professional Liability</u> from Part II, General Provisions in its entirety and replace with the following:

"d.     <u>Professional Liability</u> - The Contractor shall provide coverage appropriate to the Contractor's profession covering Contractor's wrongful acts, negligent actions, errors or omissions.  The retroactive date (if any) is to be no later than the effective date of this Agreement.  The limits shall be no less than $2,000,000 per claim and annual aggregate."

# PART IV
## SCOPE OF SERVICES

A.      Services shall be provided in accordance with Exhibit A, proposal dated September 25, 2008.

# PART V
## BUDGET

A.    OCWD shall compensate Contractor in accordance with Exhibit B, Table 1 through Table 6, dated September 25, 2008 for a total amount not to exceed budget of $452,402.00.

# EXHIBIT 9



14066688

Mar 8 2007
9:22PM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: Methyl Tertiary Butyl Ether ("MTBE")<br>Products Liability Litigation | Master File No. 1:00-1898<br>MDL 1358 (SAS)<br><br>The Honorable Shira A. Scheindlin |

This document relates to:

*Orange County Water District v. Unocal Corp., et al.*, No. 04 Civ. 04968 (SAS)

### DEFENDANT CONOCOPHILLIPS COMPANY'S SECOND SET OF INTERROGATORIES TO PLAINTIFF ORANGE COUNTY WATER DISTRICT

Pursuant to the Federal Rules of Civil Procedure and in accordance with the directive of Case Management Order #23 (January 30, 2007 Status Conference Order), Paragraph 20, defendant ConocoPhillips Company, by its undersigned attorneys, hereby propounds the following Second Set of Interrogatories upon Plaintiff Orange County Water District (OCWD), to be answered by OCWD upon oath and within (30) days of the service hereof (April 9, 2007).

## DEFINITIONS

All definitions, including without limitation the definition of the words "Communications," "Concerning," "Document," and "Identify," contained in Local Rules of the United States District Court for the Southern District of New York, Rule 26.3, shall apply to these Interrogatories and are incorporated herein by reference.

"OCWD, "the District," "You," and "Your" shall mean and refer to Orange County Water District, its employees, consultants, agents, attorneys and representatives.

"OCWD's Focus Plume Designation" shall mean the letter from Duane Miller to Jon Anderson, dated February 9, 2007.

"Plume" and "Designated Plume" shall have the meaning used by You when You designated 10 "Focus Plumes" in OCWD's Focus Plume Designation.

"Possessory Property Right" shall mean and refer to that right as defined in the Court's Order, dated October 10, 2006 at *6, more particularly known as *In re MTBE Prods. Liab. Litig.*, No. 21-88, MDL 1358, 2006 WL 2884392 (S.D.N.Y., Oct. 10, 2006), *6.

2

a.      state whether the escaped MTBE and/or TBA, if any has escaped, threatens to harm groundwater used as a drinking water source.

b.      state all facts that support Your response to this Interrogatory, and

c.      Identify all Persons with knowledge of the facts set forth in Your response to this Interrogatory.

47.      With respect to ExxonMobil Station No. 18-HEP located at 2921 South Bristol Street, Santa Ana, California,

a.      identify each instance in which OCWD has expressed, orally or in writing, a concern, criticism, objection or approval of the remediation plan or remediation effort Concerning such plume, and

b.      Identify all Persons with knowledge of the facts set forth in Your response to this Interrogatory.

DATED: March 8, 2007            LATHAM & WATKINS LLP

By: _____

          Jon D. Anderson
          Attorneys for ConocoPhillips Company

OC\874615.3

# EXHIBIT 10

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

In re: Methyl *tertiary* Butyl Ether ("MtBE")
Products Liability Litigation

This Document Relates To:
*Orange County Water District v. Unocal
Corporation, et al.,*
Case No. 04 Civ. 4968 (SAS)

MDL No. 1358 (SAS)

**DEFENDANT CONOCOPHILLIPS
COMPANY'S NOTICE OF
DEPOSITION OF PLAINTIFF
ORANGE COUNTY WATER DISTRICT
ON DESIGNATED ISSUES WITH
PRODUCTION OF DOCUMENTS**

**(Re DEFENDANTS' FOCUS PLUMES)**

The Honorable Shira A. Scheindlin

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Civil Procedure 30(b)(6)
and Pre Trial Order 41, defendant ConocoPhillips Company ("Defendant") will take the oral
deposition of plaintiff Orange County Water District ("Plaintiff") on November 18, 2008, at 9:00
a.m. at the law offices of Latham & Watkins LLP, 650 Town Center Drive, 20th Floor, Costa
Mesa, California 92626. Pursuant to PTO 41 and the agreement of the parties set forth in the
October 21, 2008, letter from Eric Katz to Tracey O'Reilly, the deposition will continue on
November 20, November 21, December 2 and December 3, and thereafter or as can be agreed by
the parties as required to complete the deposition.

Plaintiff shall designate and produce at the deposition those of its officers, directors,
managing agents, employees, or agents who shall testify on its behalf as to the matters set forth
in this notice under the heading "Designated Issues" as to all information known or reasonably
available to Plaintiff. Defendant requests that, not later than 10 days prior to the deposition,
Plaintiff provide (1) the names and titles of the persons designated to give testimony and (2) the
areas in which each designated person will give testimony. In addition, Plaintiff shall produce
the documents described in this notice under the heading "Request For Documents." Defendant
requests that such documents be produced not later than 10 days prior to the deposition.

This deposition will be videotaped and may be used at trial. Moreover, instant visual

display and streaming internet technology will be utilized to record and convey the testimony.

## DEFINITIONS

A.    The term "ANY," as used herein, shall mean each and every.

B.    The term "BASIN" means the groundwater basin underlying north and central Orange County that the DISTRICT replenishes and maintains for its WATER USERS.

C.    The term "COMMUNICATION" refers to ANY meeting, conversation (face-to-face, telephone, or otherwise), discussion, telex message, e-mail message, facsimile, cable, correspondence, message or other occurrence whereby thoughts, opinions or data are transmitted between or among two or more persons or between or among one or more persons and ANY electronic, photographic or mechanical device or devices for receiving, transmitting, or storing data or other information.

D.    The term "COSTS," as used herein shall mean ANY out of pocket costs, expenses, expenditures, payments, disbursements, and outlays made by the DISTRICT or on its behalf, whether or not the DISTRICT has received, or expects to receive, reimbursement from a third party or ANY other source. The term shall apply both to such actual costs incurred, as well as to current commitments for future expenditures, and costs which the DISTRICT anticipates it will incur. The term shall be construed broadly to encompass all measures of injuries and elements of damages, excluding punitive damages, which the DISTRICT alleges in this action to have incurred, and/or alleges it will incur in the future, including, but not limited to, lost opportunities, lost revenue from new connections, lost resources, and ANY costs of investigating or addressing claimed contamination from MTBE or TBA.

E.    The terms "CONCERN," "CONCERNING," "RELATE TO," and "RELATING TO" mean constituting, respecting, regarding, concerning, pertaining to, referring to, stating, establishing, showing, supporting, contradicting, describing, recording, noting, reflecting, embodying, memorializing, containing, mentioning, studying, analyzing or discussing, either directly or indirectly.

OC\981295.1

F.     The terms "DISTRICT" and "OCWD," as used herein, shall mean and refer to plaintiff Orange County Water District or ANY of its agents, employees, accountants, investigators, consultants, affiliates, predecessors-in-interest, successors, representatives and/or anyone else acting on its behalf.

G.     The term "DOCUMENT" or "DOCUMENTS" as used herein, shall mean any "writing," "recording," or "photograph" within the definition of Federal Rule of Evidence 1001(1)-(2) and includes electronic, written, typed, printed, reproduced, filmed or recorded material, and all photographs, pictures, plans, drawings, or other representations of any kind of anything CONCERNING directly or indirectly, in whole or in part, the subject matter of each designated issue and request, and includes, without limitation,

  a. papers, books, journals, handbooks, manuals, ledgers, statements, memoranda, reports, invoices, worksheets, work papers, notes, transcription of notes, letters, correspondence, abstracts, diagrams, plans, blueprints, specifications, pictures, drawings, films, photographs, graphic representations, diaries, calendars, desk calendars, lists, logs, publications, advertisements, instructions, minutes, orders, messages, résumés, spreadsheets, data compilations, records, summaries, agreements, contracts, telegrams, telexes, cables, recordings, electronic mail, audio tapes, transcriptions of tapes or recordings, or any other writings of tangible things in which any forms of communication are recorded or reproduced, as well as all notations on the foregoing; and

  b. original and all other copies not absolutely identical; and

  c. all drafts and notes (whether typed or handwritten or otherwise) made or prepared in connection with each such document, whether used or not.

H.     "FOCUS SERVICE STATION" shall mean and refer to each gasoline service station identified in the May 23, 2007, letter from Charles Correll to Duane Miller, attached hereto.

I.     "FOCUS PLUME" shall mean and refer to each focus plume identified in the May 23, 2007, letter from Charles Correll to Duane Miller, attached hereto.

J.     "MTBE" means Methyl *tertiary* Butyl Ether.

K.     "TBA" means Tertiary Butyl Alcohol.

OC\981295.1

L. The term "WATER USER," as used herein, shall mean the member agencies, cities, water agencies, and other municipal, private, and industrial water producers, purveyors, and/or retailers that pump or otherwise extract groundwater from the BASIN.

## DESIGNATED ISSUES

1. Whether ANY DOCUMENTS described in the Request for DOCUMENTS were destroyed, discarded, or not retained and, if so, who made the decision to do so and when.

2. What efforts were made to locate the DOCUMENTS described in the attached Request for DOCUMENTS, who performed the search, what was found, and what was withheld from production and why.

3. All facts relating to the DISTRICT'S assertion that it has a legal claim related to any FOCUS PLUME, and each of them.

4. All facts relating to the DISTRICT'S assertion that there are actual or threatened impacts to the DISTRICT'S interests or its alleged statutory mission of protecting drinking water supplies that have been caused by any FOCUS PLUME, and each of them.

5. All discussions and internal deliberations within the DISTRICT regarding the presence of MTBE and/or TBA in any FOCUS PLUME, and each of them.

6. All COMMUNICATIONS between the DISTRICT and the Santa Ana Regional Water Quality Control Board, Orange County Health Care Agency, California Department of Health Services, or other government regulators regarding any FOCUS PLUME, and each of them.

7. All COMMUNICATIONS between the DISTRICT and WATER USERS regarding any and any FOCUS PLUME, and each of them.

8. All COMMUNICATIONS between the DISTRICT and its consultants/contractors regarding any FOCUS PLUME, and each of them.

9. All COMMUNICATIONS between the DISTRICT and a scientific research organization, including but not limited to the United States Geological Survey and Lawrence Livermore National Laboratory, regarding any FOCUS PLUME, and each of them.

-4-

10.    All actions taken by the DISTRICT to investigate, remediate, or clean up MTBE/TBA alleged to be associated with any FOCUS PLUMES, and each of them.

11.    Any additional or different investigation, remediation, or clean up actions the DISTRICT claims should have occurred to date regarding any FOCUS PLUME, and each of them.

12.    Any additional or different investigation, remediation, or clean up actions the DISTRICT claims should occur in the future regarding any FOCUS PLUME, and each of them.

13.    The efforts the DISTRICT has made to contact potentially responsible parties or to request that they take additional or different actions regarding any FOCUS PLUME, and each of them.

14.    The identification of each WATER USER who has been or potentially will be affected by any FOCUS PLUME, and each of them.

15.    All COMMUNICATIONS between the DISTRICT and any WATER USER concerning any FOCUS PLUME, and each of them.

16.    All expenditures the DISTRICT has incurred regarding any FOCUS PLUME, and each of them.

17.    All expenditures the DISTRICT expects to incur in the future regarding any FOCUS PLUME, and each of them.

18.    All damages the DISTRICT is seeking related to each FOCUS PLUME.

19.    All remedies the DISTRICT is seeking related to each FOCUS PLUME.

20.    As to each FOCUS SERVICE STATION, whether the DISTRICT contends that the Regional Board, the Orange County Health Care Agency, or any other local oversight authorities elected not to order remediation at the site of each release.

21.    As to each FOCUS SERVICE STATION, whether, if remediation is occurring or has occurred at the site, MTBE or TBA has escaped remediation at the site of each alleged release.

22.    As to each FOCUS SERVICE STATION, whether the amount of MTBE or TBA

that has escaped remediation, if any, is significant.

23. As to each FOCUS SERVICE STATION, whether MTBE and/or TBA threatens to harm groundwater used as a drinking water source and, if so, how and when OCWD has determined that the MTBE and/or TBA presents such a threat.

24. As to each FOCUS SERVICE STATION, whether the DISTRICT contends that MTBE and/or TBA has impacted a drinking water source and, if so, (a) which water source, and (b) how and when did the District make this determination.

25. All facts relating to any actual contamination or threat of contamination of any water production well allegedly impacted or threatened by any FOCUS PLUME due to any contaminant other than MTBE or TBA.

## REQUEST FOR DOCUMENTS

1. The deponent's current resume, curriculum vitae and bibliography.

2. The deponent's complete file relating to this lawsuit.

3. The deponent's timesheets, calendars, diaries, and other DOCUMENTS indicating or referencing the deponent's work on any issue related to MTBE or TBA contamination.

4. All DOCUMENTS reviewed, considered, and/or used by the deponent to determine the facts relating to each designated issue set forth above.

5. All DOCUMENTS which relate to the Designated Issues set forth above.

6. A copy of all reports concerning each FOCUS PLUME and each FOCUS SERVICE STATION.

7. A copy of all data concerning contamination, or threatened contamination, of each water production well allegedly impacted or threatened by each FOCUS PLUME, due to MTBE, TBA, or any other contaminant.

8. Document or documents sufficient to show the current status of each water production well allegedly impacted or threatened by each FOCUS PLUME (*i.e.*, active production well (with pumping rate), inactive, destroyed and sealed, monitoring well, etc).

9. Document or documents sufficient to show the specific OCWD basin aquifer in which each water production well allegedly impacted or threatened by each FOCUS PLUME is screened and produces groundwater (*i.e.*, Shallow Aquifer or Principal Aquifer).

10. A copy of all invoices or other record of COSTS incurred by the DISTRICT attributed to each FOCUS PLUME.

11. All DOCUMENTS concerning the DISTRICT'S plans to address each FOCUS PLUME.

12. All COMMUNICATIONS between the DISTRICT and WATER USERS regarding each FOCUS PLUME.

13. All COMMUNICATIONS between the DISTRICT and its consultants/contractors regarding each FOCUS PLUME.

14. All COMMUNICATIONS between the DISTRICT and a scientific research organization, including but not limited to the United States Geological Survey and Lawrence Livermore National Laboratory, regarding each FOCUS PLUME.

15. All DOCUMENTS which relate to the DISTRICT'S contention that it has a claim which has accrued regarding each FOCUS PLUME.

16. All DOCUMENTS which concern discussions and internal deliberations within the DISTRICT regarding the presence of MTBE or TBA in each FOCUS PLUME.

17. All COMMUNICATIONS between the DISTRICT and the Santa Ana Regional Water Quality Control Board, Orange County Health Care Agency, California Department of Health Services, and other government regulators regarding each FOCUS PLUME.

18. All DOCUMENTS which relate to actions taken by the DISTRICT to investigate, remediate or clean up MTBE/TBA alleged to be associated with each FOCUS PLUME.

19. All DOCUMENTS which relate to the DISTRICT'S contention that additional or different investigation, remediation or cleanup actions should be have occurred to date regarding each FOCUS PLUME.

20. All DOCUMENTS which relate to the DISTRICT'S contention that additional or

different investigation, remediation or cleanup actions should occur in the future regarding each FOCUS PLUME.

21.    All DOCUMENTS which relate to efforts made by the District to contact potentially responsible parties or to request that they take additional or different actions regarding each FOCUS PLUME.

22.    All COMMUNICATIONS between the DISTRICT and any WATER USER who has been or potentially will be affected by each FOCUS PLUME.

23.    All DOCUMENTS evidencing expenditures the DISTRICT has made or incurred regarding each FOCUS PLUME.

24.    All DOCUMENTS evidencing expenditures the DISTRICT expects to make or incur in the future regarding each FOCUS PLUME.

25.    All DOCUMENTS relating to damages the DISTRICT is seeking relating to each FOCUS PLUME.

26.    All DOCUMENTS relating to remedies the DISTRICT is seeking relating to each FOCUS PLUME.

27.    All DOCUMENTS which relate to the level of contamination that the DISTRICT contends constitutes appreciable harm, including the level of contamination at which the DISTRICT should take responsive action, in each FOCUS PLUME.

28.    All DOCUMENTS which relate to, for each FOCUS SERVICE STATION, whether the DISTRICT contends that the Regional Board, the Orange County Health Care Agency, or any other local oversight authorities elected not to order remediation at the site of each release.

29.    All DOCUMENTS which relate to, for each FOCUS SERVICE STATION, whether, if remediation is occurring at the site, MTBE has escaped remediation at the site of each alleged release.

30.    All DOCUMENTS which relate to, for each FOCUS SERVICE STATION, whether the amount of MTBE that has escaped remediation (if any) is significant.

-8-

31. All DOCUMENTS which relate to, for each FOCUS SERVICE STATION, whether MTBE or TBA threatens to harm groundwater used as a drinking water source and, if so, how and when OCWD has determined that the MTBE or TBA presents such a threat.

32. All DOCUMENTS which relate to any actual contamination or threat of contamination of the FOCUS WELLS due to any contaminant other than MTBE or TBA.

Dated: November 6, 2008

LATHAM & WATKINS LLP

By: _Jon Anderson_ KEMK

Jon D. Anderson
Attorneys for ConocoPhillips Company

# EXHIBIT 11

# McDermott
# Will&Emery



Boston Brussels Chicago Düsseldorf Houston London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

James A. Pardo
Attorney at Law
jpardo@mwe.com
+1 212 547 5353

December 5, 2008

## BY ELECTRONIC MAIL

Susan E. Amron, Esq.
Deputy Chief - Environmental Law Division
The City of New York, Law Department
100 Church Street
New York, NY 10007

>    Re:    **City of New York v. Amerada Hess, et al., 04 CV 3417 (SDNY)**
>    *Identification of Present or Former City Employees that May Provide Expert*
>    *Testimony and/or Opinions at Trial*

Dear Ms. Amron:

This letter responds to yours dated November 26, 2008, regarding the City's intent to call present or former City employees for "expert" testimony at trial. As noted in my letter to Mr. Pasternack dated November 12, 2008, employees of a party who are designated to offer expert opinion testimony at trial but whose "duties do not normally involve giving expert testimony … may be fairly viewed as having been 'retained' or 'specially employed' for that purpose." *Day v. Consol. Rail Corp.*, 1996 U.S. Dist. LEXIS 6596 at *7 (S.D.N.Y. May 14, 1996). Accordingly, contrary to the City's interpretation of Rule 26(a)(2)(B), such employee-experts are required to provide written reports that disclose the basis of the opinions they intend to offer at trial. *Id.* Moreover, at minimum Defendants are entitled to know **now** who these employees are, and what subject matter(s) they may testify about, so that we can take discovery of these City witnesses.

The City's proposal, as set forth in your letter, to wait until the parties exchange witness lists to disclose the identity of any employee-expert witnesses it may call at trial is unacceptable to Defendants. Given the deadline for exchanging witness lists (and for wrapping up all discovery), under the City's proposal Defendants will have no meaningful opportunity to discover or probe these witnesses' opinions prior to trial.

For these reasons, and those stated in my prior letter, Defendants reiterate our request that, at a minimum, the City immediately (i) provide the name and contact information of any present or former employee that the City may call to provide opinion testimony at trial and (ii) identify the topics about which the witness may testify at trial. If the City does not agree to these terms in advance of the December 11th status conference, Defendants will request that the Court

U.S. practice conducted through McDermott Will & Emery LLP.

**340 Madison Avenue New York New York 10173-1922  Telephone: +1 212 547 5400  Facsimile: +1 212 547 5444  www.mwe.com**

impose them on the City at that time.  Please contact me in advance of the status conference to discuss this issue.

Very truly yours,

*James A. Pardo*

James A. Pardo

cc:     All Counsel of Record (by LNFS)