

**WEITZ & LUXENBERG**

A PROFESSIONAL CORPORATION
• LAW OFFICES •

180 MAIDEN LANE  •  NEW YORK, NY 10038-4925
TEL. 212-558-5500         FAX 212-344-5461
WWW.WEITZLUX.COM

January 12, 2009

**VIA HAND DELIVERY &
ELECTRONIC MAIL**

The Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street — Room 1620
New York, New York 10007

     Re: *Plaintiffs' Reply to Defendants' Pre-Conference Letter*

Dear Judge Scheindlin:

  Plaintiffs respectfully submit this reply letter in advance of the January 15, 2009, status conference.

1)  **Discovery in the City of New York Case**

  The City strongly disagrees with defendants' characterization of the last three months of discovery. The parties originally agreed to a discovery cut-off of December 19, 2008. In a last minute effort to squeeze in discovery, in mid-November, Defendants served the City with 22 new deposition notices or subpoenas – 10 for City witnesses and 12 for third-party witnesses. Nine of these depositions were noticed to occur simultaneously on December 19, the last day of discovery, including depositions of seven employees of the consultants hired by the City in connection with its water supply Dependability Project. The City objected to the vast majority of the notices as duplicative, burdensome, and unreasonable. Defendants agreed to withdraw the 22 deposition notices/subpoenas in exchange for the City and its consultants producing a total of six 30(b)(6) witnesses, four of whom would testify on topics related to Dependability Project. All of these depositions have been scheduled and are expected to be completed by January 21. The City believes that this deposition schedule has been reasonable for both the parties and the numerous witnesses involved, and that whether these depositions could have been scheduled in December is a non-issue at this point.

  In addition to scheduling the agreed upon depositions, in early November the City agreed to produce to defendants unredacted copies of documents related to the Dependability Project if the defendants would agree to amend the confidentiality order in this action to clearly allow the City to designate those documents as confidential. The amendment was signed by the Court on

210 LAKE DRIVE EAST, SUITE 101 • CHERRY HILL, NJ 08002 • TEL 856-755-1115 • FAX 856-755-1995
76 SOUTH ORANGE AVENUE, SUITE 201 • SOUTH ORANGE NJ 07079 • TEL 973-761-8995 • FAX 973-763-4020
215 MONARCH STREET, SUITE 202 • ASPEN, CO 81611 • TEL 970-925-6101 • FAX 970-925-6035
100 E. 15TH STREET, SUITE 400 • FORT WORTH, TX 76102 • TEL 817-885-7815 • FAX 817-882-8585

December 1, 2008 and the City began producing unredacted copies of the documents shortly thereafter. Given the outstanding discovery, the City agreed to extend the fact discovery cut-off to January 19, 2009 for discovery properly served based on the original cut-off date. To date, the City has produced several disks of documents and expect to complete the production in the near future.[1]

As became apparent at depositions of Camp, Dresser & McKee ("CDM") and Hazen & Sawyer, the two companies forming the joint venture that is consulting with the City on the Dependability Project, the joint venture also has internal documents related to the Dependability Project. Those documents however, have not been shared with and are not in the possession of the City. The document attached to Defendants' letter as Exhibit "A," for example, is an internal joint venture document that the City learned of for the first time at the CDM deposition. The City is not obligated to produce documents that it does not possess.[2]

The City acknowledges that the majority of discovery related to the Dependability Project has taken place in December and January; however, it is important to note that none of the ten focus wells chosen for trial in June are currently proposed for inclusion in the Dependability Project.[3] As this Court noted at the October 30, 2008 conference (Transcript at 33-38), the Dependability Project is an ongoing program in which documents continue to be created and decisions continue to be made. By the time one of the Dependability Project wells is tried, there will be more information and more documents that Defendants will demand.

Moreover, while defendants are demanding extensions here, the Court should note that even after the parties had agreed to extend fact discovery until January 19, contrary to defendants' assertions that they have accommodated the City on all its extension requests, defendants refused grant the City an extension to respond to twelve separate sets of lengthy, compound contention interrogatories served only 30 days before the original cutoff – interrogatories predominantly based on the City's complaint served years ago.

Furthermore, to the extent defendants are suggesting that they were somehow misled when they chose their five focus wells on November 26, 2008, they are wrong. Defendants have

---

[1] Defendants make reference to a 20 gigabyte hard drive that was allegedly produced "in the weeks after that agreement was reached." *See,* Defendants' Pre-Conference Letter, Page 1. That is not true. The hard drive, which does not relate to the Dependability Project, was produced to the defendants on November 17, 2008.

[2] Ironically, defendants criticize the City for producing Exhibit "A" via e-mail at the deposition of Matthew Gamache, a CDM employee. However, this was done at the request of defense counsel after Mr. Gamache testified to having reviewed the internal document in preparation for his deposition. The City attorney was e-mailed the document by CDM staff after Mr. Gamache instructed them to send the document during a break in the deposition.

[3] To be clear, Dependability Project wells are those wells which will provide 55 million gallons per day in the Dependability scenario. As Defendants are aware, these wells are distinct from the emergency wells and the Station 6 wells.

Honorable Shira A. Scheindlin
January 12, 2009

been aware since October of the wells that are currently part of the Dependability Program. This information was provided in the City's October 24, 2008 responses to Defendants' well specific interrogatories where the City's itemization of damages for dependability wells referred to the $11.5 million cost of the Dependability Project of the groundwater system and its itemization of damages for other wells did not. It was also provided in documents produced by the City in redacted form on October 8, 2008, including specifically a December 2006 Groundwater Planning Memorandum (Bates No. NYC-DS-003701 through 3750) that discusses the wells being considered at the time for inclusion in the Dependability Project, the proposed clustering of those wells for treatment, and various water quality and other constraints. None of the wells chosen by Defendants are discussed in that document. And it is clear that Defendants knew of the proposed clusters as they referred to them at the October 30, 2008 conference (Tr. at 35-36). The fact that wells are not currently proposed for inclusion in the Dependability Project, however, does not mean that the City does not intend to use them.

Given that defendants' discovery issues largely revolve around issues that will not be central to the specific wells designated for the June trial, there is no reason for the Court to leave open general discovery in this five-year old case at this time.

**NEW ISSUE - - Bankruptcy of Lyondell and Equistar Defendants**

On January 6, 2009, two defendants, Lyondell Chemical Co. and Equistar Chemicals, LP., filed for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, in the United States Bankruptcy Court for the Southern District of New York. The City believes that both defendants will assert that the automatic stay under Section 362 of the Bankruptcy Code applies to the City's action. The City, however, believes that some or all of our claims fall under the exception to the automatic stay in Section 362(b)(4), pertaining to actions by a governmental unit to enforce its police or regulatory powers. We request that the Court establish a briefing schedule to resolve this issue.

3) Napoli-Bern's Failure to Produce Documents and Commensurate Need to Extend Fact Discovery

Napoli-Bern will provide a response to Agenda Item No. 3 in a separate letter.

4) Coordinated Date for Responding to New Complaints Filed by Napoli-Bern

Napoli-Bern will provide a response to Agenda Item No. 4 in a separate letter

5) Non-TSCA Defendants' Motion in Certain Napoli-Bern Cases

Napoli-Bern will provide a response to Agenda Item No. 5 in a separate letter

6) OCWD's Failure to Disclose Expert Topics as Required

Miller Axline and Sawyer will provide a response to Agenda Item No. 6 in a separate

letter.

Honorable Shira A. Scheindlin
January 12, 2009

                        Respectfully submitted,

                        WEITZ & LUXENBERG, P.C.

          By:    *[signature]*
                      Robin Greenwald (RG-9205)
                      *Plaintiffs' Liaison Counsel*
                      180 Maiden Lane, 17th Floor
                      New York, New York 10038
                      (212) 558-5500

cc:    All Counsel of Record