


23317725

Jan 14 2009
8:28PM

**MICHAEL A. CARDOZO**
*Corporation Counsel*

T**HE** C**ITY OF** N**EW** Y**ORK**
L**AW** D**EPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**SCOTT PASTERNACK**
*Senior Counsel*
Phone: (212) 676-8517
Fax: (212) 788-1619
spastern@law.nyc.gov

January 14, 2009

Via E-Mail

Hon. Shira A. Scheindlin
United States District Judge
United States District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:  *City of New York v. Amerada Hess Corp., et al.*, 04 Civ. 3417 (SDNY)

Dear Judge Scheindlin:

      I write in response to a letter from Peter Sacripanti sent earlier today regarding an issue that arose during the Rule 30(b)(6) deposition of Donald Cohen that took place yesterday and today. Mr. Cohen is a Senior Associate with the engineering firm Malcolm Pirnie Inc. ("Malcolm Pirnie") and has performed work for the City of New York related to its well system for over ten years. Mr. Cohen is serving as both a fact and expert witness in the litigation, and the City proffered Mr. Cohen as a 30(b)(6) witness on several topics.

      While defendants have presented this issue to Your Honor as one of substance, the City actually believes that this is purely an issue of timing. Mr. Cohen, assisted by his staff, is actively preparing his expert report regarding the fate, transport, and duration of MTBE impacts at the Station 6 well cluster, which contains the City's five focus wells. That report will be produced to defendants on February 6, 2008.

      In March, July and November 2007, Mr. Cohen's firm prepared three related reports that also analyzed the fate, transport, and treatment of MTBE at Station 6. These reports, like Mr. Cohen's forthcoming expert report, discuss groundwater modeling of future MTBE concentrations and sources of contamination within the Station 6 well capture zone. These

Dockets.Justia.com

reports also evaluate different treatment options at Station 6. All three reports contain analyses that are substantially related to work that will be contained in the February 6 expert report. Indeed, as the City's counsel explained during his deposition on January 13, Mr. Cohen's current expert work is inextricably intertwined with information, analyses and opinions contained in the earlier reports. *See, e.g.,* Deposition of Donald Cohen, dated Jan. 13, 2009 (Rough Draft), at 15:2 to 16:7; 267:11 to 270:1 (the cited transcript pages are attached as Exhibit A).

At the deposition, defendants sought to ask questions regarding these three reports, a related email with the State Department of Environmental Conservation, and Mr. Cohen's substantive conclusions concerning the sources of MTBE contamination affecting Station 6, the fate and transport of that contamination, and the design and cost of treatment facilities to remove it. The City objected, eventually stating that it would seek a protective order on this issue in order to protect Mr. Cohen's on-going work developing his expert opinions for trial. *Id.* at 276:22 to 277:14.

To be clear, the City agrees that it will be appropriate for defendants to ask Mr. Cohen about the three prior reports, as well as about the substantive issues related to MTBE contamination at Station 6. The City made clear at the deposition on January 13 that it will make Mr. Cohen available for deposition on those issues and materials and his work in his non-retained capacity once he completes his expert report. *See id.* at 15:2 to 16:7; 277:4-12. The City believes, however, that these questions should be posed at Mr. Cohen's expert deposition after he and his staff complete the groundwater modeling and analysis. Mr. Cohen is a hydrogeologist and he has a right to fully explain his opinions and conclusions in light of his most recent technical analysis. To require Mr. Cohen to address the topics discussed in the three memos at this time would essentially hamper his ability to testify concerning these issues to the best of his ability, and would prejudice both him and the City.

A witness plainly may play both fact and expert roles, and the courts protect against premature disclosure of expert opinions. *See, e.g., Nelco Corp. v. Slater Elec. Inc.*, 80 F.R.D. 411, 414-15 (E.D.N.Y. 1978). As the court explained in *Nelco*,

> [U]nder Rule 26(b)(4)(A), a witness sought to be discovered may be an "expert" to some matters and an "actor" as to others. At the deposition, such a prospective witness would not be required to respond to questions addressed to "facts known and opinions held by experts (which are) acquired or developed in anticipation of litigation or for trial", Fed.R.Civ.P. 26(b)(4)(A), unless directed to do so under Rule 26(b)(4)(A). However, he would be required to respond to questions propounded to him as to facts known and opinions held *prior to his involvement as an expert in the underlying litigation*.

*Id.* (emphasis added). The Court found that the witness at issue had to answer questions in his role as an actor, but that "[c]onversely, he is not required to answer as to facts known or opinions developed or acquired in anticipation of or in preparation for trial." *Id.* at 416. Accord, *e.g., Tahoe Ins. Co. v. Morrison-Knudsen Co., Inc.*, 84 FRD 362, 363 (D. Id. 1979) (when court asked "whether in the course of taking the deposition of the panel members as an 'ordinary witness,'

they can be examined as to their expert opinions acquired while serving on these panels," court concluded that those panel members "cannot be deposed as to expert opinions formulated from expertise acquired while serving on the panels nor as to the process by which they arrived at their opinions," in part "to prevent an opposing party from gaining unfair advantage in litigation by using another parties' experts. *See* 8 Wright & Miller, *supra*, §§ 2029, 2034").

Here, the City has allowed defendants to question Mr. Cohen freely concerning materials and matters before 2007 – including those closely related to the topics of his later expert retention. The City restricted questioning only as to the matters so closely intertwined with Mr. Cohen's on-going expert work that to force him to testify now would result in premature disclosure of his expert opinions. Defendants, of course, will be free to question him without any such restrictions once he completes his expert report in only a few weeks.

It is hard to see how defendants would be prejudiced by this limitation on Mr. Cohen's 30(b)(6) testimony, given that the expert report will be produced to them in just a matter of weeks. Defendants are already in possession of the three documents at issue as well as the associated computer modeling files and thus are fully apprised of the substantive issues. Moreover, the City did not object to defendants asking questions about Mr. Cohen's prior work to trace the source of the MTBE at Station 6 to certain nearby gasoline stations, and numerous other issues related to Station 6's design and development. The City also permitted defendants to ask questions regarding other potential sources of contamination in the Station 6 capture zone.

Finally, the City strongly disagrees with defendants' claim that the City's objection at Mr. Cohen's deposition conflicted with a prior agreement with one of the City's attorneys. No such agreement existed. In fact, in mid-December, defendants proposed a stipulation that explicitly allowed defendants to question Mr. Cohen concerning the investigation into sources of MTBE at Station 6 at Mr. Cohen's 30(b)(6) deposition. The City refused to sign the proposed stipulation, and ultimately the parties agreed to a stipulation that did not contain any language related to Station 6. Consistent with this, in a subsequent December 22, 2008 letter to defendants concerning deposition scheduling, the same City attorney reaffirmed that Mr. Cohen would not testify at his 30(b)(6) deposition concerning the topics of his expert report. In any event, as stated above, except with respect to the three memos, Mr. Cohen did provide testimony regarding prior investigations into the sources of the MTBE contamination at Station 6.

Respectfully yours,

*Scott Pasternack*

Scott Pasternack
Senior Counsel
Environmental Law Division

c: All counsel (via LNFS)

3

# Exhibit A

CONFIDENTIAL - DONALD COHEN VOL I

1  ROUGH DRAFT TRANSCRIPT

2

3  This is an unedited, unproofread, uncertified transcript for
4  attorneys' information only. This transcript may NOT be quoted in
5  documents or used for examination purposes.
6
   This raw transcript will
7  contain:

8
   1. Conflicts - an
9  apparently wrong word that has the same stenotype stroke as a less-used word.
10 Conflicts are remedied by the reporter in editing.
11
   2.
12 Untranslates/Misstrokes - a stenotype stroke appears on the screen as the
13 result of the computer dictionary not having the stroke previously identified
14 or a misstroke or partial translation of the word.
15
   3. Reporters notes - a
16 parenthetical word or phrase from the reporter. Since the reporter must write
17 each word instantly, a misunderstood word or phrase will not be apparent
18 until some time later. Reporter's notes provide the opportunity to correct such
19 situations.

20        ------

21        REALTIME TRANSCRIPT

22

23

24

GOLKOW TECHNOLOGIES, INC.   877.370.3377
2

CONFIDENTIAL - DONALD COHEN VOL I

1  THE VIDEOGRAPHER: Good
2  morning we're now on the record. My

3    name is Larry Moscowitz and I'm a

4    videographer for Golkow Technologies,

5    Inc. Today's date is January 13, 2009,

6    and the time is 10:22 a.m. This video

7    deposition is being held at McDermott,

8    will, 340 Madison Avenue, New York New

9    York, in the matter of in re MTBE for

10   the United States District Court,

11   Southern District of New York. The

12   deponent today is Donald Cohen. Will

13   counsel and those present please

14   identify themselves for the record.

15           MR. CONDRON: Peter Condron

16   wallace, King, Domke & for Shell and

17   Chevron.

18           MR. SIBLEY: Trey Sibley

19   believe Hunton & Williams for Flint

20   Hills.

21           MR. WORKMAN: Rusty workman

22   King & Spalding for the Chevron

23   defendants.

24           MS. MORAIN: Malinda Morain

1   for McDermott, will for Exxon Mobil.

2           MS. HANEBUTT: Pam Hahnebutt

3   Eimer Stahl for CITGO.

4           MS. DOYLE: Sandra Doyle.

5           MR. SHER: Why don't we have

6   defense counsel on the phone identify

7   themselves.

1  today, sir?
2           MR. SHER: Before the
3  witness answers, let me interpose an
4  objection and an explanation.
5           . And I won't belabor this,
6  but we will -- Mr. Cohen has been
7  designated as one of the experts in the
8  case and he is currently working on a
9  report. We sought to schedule his
10  30(b)(6) deposition in conjunction with
11  his expert testimony but we were unable
12  to agree with the defendants on that.
13  So he is here testifying but I'm not
14  going to allow him to testify today
15  about specific efforts to trace
16  contamination from specific sources nor
17  specific design or cost estimates with
18  respect to the treatment of MTBE
19  contamination. So you can -- you will
20  have an opportunity to depose him on
21  those topics listed here when he appears
22  as an expert, but today while he is in
23  the middle of preparing his report, it's
24  not appropriate and we're not going to

1  allow that. You can inquire as to
2  general background information on a

3  number of the documents that you have.

4       So I will state that at
5  length here and then probably in
6  shorthand manner if we run into an issue
7  with this as we go forward.

8       MR. CONDRON: Well, I don't
9  accept necessarily those objections and
10 perhaps it is better to wait until such
11 time as the questions come up to see
12 whether or not you instruct the witness
13 not to answer the questions.

14      However, let me ask
15 Mr. Cohen, is it the case, sir, that
16 during the ordinary course of your
17 contractual business with the City, not
18 as an expert, you have been asked to
19 look at source identification for MTBE
20 and other contaminants at Station 6, sir.

21      MR. SHER: You can answer
22 that yes or no.

23   A.   Yes.

24   Q.   And you did not do that in

CONFIDENTIAL - DONALD COHEN VOL I

1  your capacity as an expert testifying
2  witness in this case; correct?

3    A.   I have not yet testified as
4  an expert in this case.

5    Q.   So that any documents in
6  our files in which Malcolm Pirnie is
7  attempting to identify the source of

1  privilege or confidential anywhere on
2  this document. There's no indication it
3  was done in connection with any kind of
4  expert work. In fact, it indicates it
5  was done pursuant to a contract EE.or
6  dash DSGN2 which doesn't sound like it's
7  in any way protected, and we would
8  encourage you to revise your opinion as
9  to whether or not he is going to answer
10 questions about this document.
11           MR. SHER: When he is
12 designated as an expert and he appears
13 to testify as to his opinions in the
14 case you can ask him fully about this
15 document. It is a scheduling issue. It
16 is a timing issue to accommodate a
17 witness who has multiple rules. We made
18 this issue clear. We asked you to defer
19 his 30(b)(6) deposition until after the
20 expert report came out and defendants
21 declined. Now, we will allow him to --
22 I mean, we will make him available, you
23 can answer those questions now -- I'm
24 sorry, he can answer those questions

1  then. I'm not going to allow him to
2  talk now about matters that impinge so

 3  closely on his expert testimony.
 4         MR. CONDRON: Let me make
 5  sure I understand the City's position.
 6  The City's position is that they were
 7  asked for a 30(b)(6) witness regarding
 8  the Station 6 project. The City chose
 9  to designate the same person that it has
10  also designated as an expert witness in
11  this case. This is a business
12  document. There's no indication
13  whatsoever that it was prepared in any
14  kind of role as an expert or otherwise
15  and now you are instructing the witness
16  not to answer questions about this
17  business document because the witness
18  you've selected to serve as a 30(b)(6)
19  witness is also your expert?
20         MR. SHER: My position is
21  what I just stated and I'm not going to
22  state it again and I have instructed the
23  witness not to answer. As I have said
24  and I will say again, in my view this is

GOLKOW TECHNOLOGIES, INC.   877.370.3377
                269

CONFIDENTIAL - DONALD COHEN VOL I

 1  a scheduling issue and I will not allow
 2  questioning to go forward in a manner
 3  that would be inherently prejudicial and
 4  confusing, harassing to the witness. We
 5  have disclosed early before the time you
 6  are entitled to it his role as an
 7  expert. We asked for your cooperation

```
 8  with respect to the scheduling so that
 9  you could depose the witness once and so
10  he would only have to appear once and
11  you declined and under those
12  circumstances this is the position we're
13  taking.
14            MR. CONDRON:  I agree with
15  you that it is a scheduling issue.  He
16  is here today to give fact discovery.
17  This is the fact discovery portion of
18  this case.  This memorandum is not
19  privileged, it is not prepared in his
20  role as an expert.  It was prepared
21  pursuant to a contract.  It is a
22  deliverable to the City.  It is a
23  business document and we have a right to
24  question Mr. Cohen regarding this
```

CONFIDENTIAL - DONALD COHEN VOL I

```
 1  document.
 2            MR. SHER:  Take it up with
 3  the judge then.
 4            MR. CONDRON:  Then we will.
 5  Let's get Mr. Warner on the phone.
 6
 7  BY MR. CONDRON:
 8       Q.   Let me ask couple of
 9  questions first.  Hold on.  Mr. Cohen,
10  what is contract EE-DSGN2?
11            MR. SHER:  You can go ahead
```

12 and answer.

13    A.    That's an engineering

14 standby general services contract.

15    Q.    And when was that

16 engineering standby General Services

17 contract entered into between Malcolm

18 Pirnie and the City of New York?

19    A.    I don't know the answer to

20 that.

21    Q.    Was that contract entered

22 into for the purposes of providing

23 expert testimony in this or any other

24 case?

CONFIDENTIAL - DONALD COHEN VOL I

1    A.    No, it was not.

2    Q.    Is Ms. Kim serving as an

3 expert witness in this case?

4    MR. SHER: Instruct not to

5 answer on work product grounds.

6    Q.    Who authorized you to

7 proceed under contract EE-DSGN2 to

8 prepare this memorandum?

9    MR. SHER: You can answer.

10    A.    Venetia Barnes.

11    Q.    Anyone else?

12    A.    We have direct

13 authorization from Venetia Barnes.

14    Q.    Did Venetia Barnes retain

15 you as an expert in this litigation?

16    MR. SHER: Don't answer that

3 litigation services and was circulated
4 to non-lawyers and thus is not subject
5 to any type of privilege, I think that
6 the instruction not to answer questions
7 concerning Exhibit 17 and other exhibits
8 is in violation of that agreement.
9  And we intend to raise that
10 at the hearing on Thursday.
11  I would note as well that it
12 is certainly counsel's understanding
13 that the distinction that was drawn as a
14 predicate for the agreement with
15 Mr. Greene had to do with work performed
16 solely as an expert in this case given
17 that the witness has been instructed not
18 to answer when he was retained as an
19 expert witness we're not even able to
20 build a proper factual predicate to
21 determine whether as a matter of
22 timing the agreement has been violated.
23  On a separate point, I would
24 prefer counsel to the order issued by

CONFIDENTIAL - DONALD COHEN VOL I

1 Special Master Warner in early 2006
2 concerning instruction to witness not to
3 answer questions at 30(b)(6)
4 depositions. We think that ruling
5 establishes that it's a matter of
6 efficiency unless the testimony is
7 subject to privilege, the proper

1  may have comments to make.
2           MR. SIBLEY: I think there
3  are two factors that I have asked
4  counsel to consider: First, on behalf
5  of the defendants, I have negotiated
6  with Dan Greene from the New York City
7  Law Department an agreement with respect
8  to a separate deposition noticed by the
9  defendants on a 30(b)(6) deposition on
10 the topic of the City's efforts to
11 identify the release sources for the
12 MTBE that it claims is impacting its
13 wells. Mr. Green and I reached an
14 agreement that we would enter a
15 stipulation with respect to wells other
16 than the wells at Station 6 and with
17 respect to Station 6 that Mr. Cohen as a
18 30(b)(6) on behalf of the City would
19 testify regarding the City's historic
20 efforts to identify the released sources
21 contributing MTBE that's allegedly
22 impacting the wells at Station 6.
23           Given the testimony that we
24 had received, specifically that this

1  work was performed pursuant to a
2  contract having nothing to do with

8  mechanism is to allow -- to lodge your
9  objection and allow the witness to
10 answer the question. We think this
11 violates certainly the spirit if not the
12 letter of that order and we intend to
13 raise that as well with the Court on
14 Thursday.
15          MR. SHER: Anybody else have
16 anything to add?
17          MS. MORAIN: Just to add to
18 what Trey was saying it is also in Judge
19 Scheindlin's rules suggested rules are
20 of deposition so just as an indication
21 of where -- are.
22          MR. SHER: Let me be clear.
23 Whether you view it as an instruction
24 not to answer which is the way I framed

CONFIDENTIAL - DONALD COHEN VOL I

1  it or an intention to adjourn the
2  deposition and seek protection, which is
3  the way I will frame it now in the
4  alternative, this witness cannot -- the
5  materials that you want to question him
6  on are materials that are inexplicably
7  intertwined with the expert opinions and
8  I'm telling you will have the
9  opportunity to ask all the questions you
10 want when his expert report is out so
11 it's a time issue not anything beyond

12 that. You can make anything with the
13 judge that you want but that's my
14 position.
15          MR. CONDRON: For purposes
16 of the record, let me have Cohen
17 Exhibit 18 marked, please.
18          (Below-described document
19 marked as
20 BY MR. CONDRON:
21     Q.   Mr. Cohen, you have been
22 handed what's been marked as Cohen
23 Exhibit 18. It is a memorandum dated
24 July 19, 2007, from Donald Cohen and

CONFIDENTIAL - DONALD COHEN VOL I

1 Julie Kim to Venetia Barnes of the New
2 York City Department of Environmental
3 Protection regarding Station 6
4 demonstration plant contaminant
5 transport modeling.
6          MR. SHER: I will stipulate
7 with you that my instructions and
8 position on this document are the same
9 as with respect to Exhibit 17.
10          MR. CONDRON: Okay.
11 BY MR. CONDRON:
12     Q.   My question is was this
13 document also prepared pursuant to
14 contract EE-DSGN2?
15          MR. SHER: You can answer
16 that question?