

**WEITZ & LUXENBERG**
A PROFESSIONAL CORPORATION
· LAW OFFICES ·

180 MAIDEN LANE • NEW YORK, NY 10038-4925
TEL. 212-558-5500    FAX 212-344-5461
WWW.WEITZLUX.COM

February 18, 2009

**VIA HAND DELIVERY &
ELECTRONIC MAIL**

The Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street — Room 1620
New York, New York 10007

Dear Judge Scheindlin:

Plaintiffs respectfully submit this letter in advance of the February 26, 2009, status conference.

## JOINT AGENDA ITEM

1) **Joint Schedule for Next Phase of Discovery in *State of New Jersey* and *Puerto Rico***

Pursuant to CMO Nos. 44 and 45, the parties have exchanged initial electronic information discovery responses and are meeting and conferring with respect to those responses and with respect to the next phase of discovery. In order to efficiently structure the next phase of discovery in each case, the parties must first analyze the voluminous information exchanged to date. While the parties do not have a specific recommendation with respect to the next phase of discovery at this point, they will be prepared to report on progress at the status conference on February 26th.

## PLAINTIFFS' AGENDA ITEMS

1) **Shell Privilege Logs issues in *City of New York***

The City on January 23 supplied the Shell defendants with a list of 200 entries from Shell's May 19, 2008 set of privilege logs, for in camera review of the underlying documents by Special Master Warner. Three weeks later, Shell responded by acknowledging that 95 of the documents on the City's list had appeared on its May 19, 2008 privilege logs in error. With an error rate of more than 45%, Shell has clearly failed the "test" Your Honor ordered at the last status conference. The City respectfully submits that further review of the designated documents by Special Master Warner is unnecessary, as Shell's failure already warrants a blanket waiver of its claims of attorney-client privilege for documents without an attorney as sender or direct recipient, and of its claims of attorney work product privilege for documents without an attorney as author or direct recipient.

2) **Untimely Defense Experts Reports and Data in *City of New York***

On February 13, 2009, defendants served eight expert reports on the topic of defendants' market share. At least two of those reports, from Joseph P. Kalt, Ph.D (submitted by Shell) and John O'Brien (submitted by multiple defendants), go well beyond a discussion of the appropriate definition and defendants' share of the market. Instead, both reports provide a detailed response to the report of the City's expert Bruce F. Burke with respect to refining and distribution of petroleum and petroleum containing MTBE and/or other oxygenates. For example, Mr. Kalt's report inappropriately contains a six page section entitled "Plaintiff's expert" devoted entirely to critiquing Mr. Burke's report. Mr. O'Brien begins his report by stating that he has been asked to comment on Mr. Burke's report and then spends four pages doing so. Copies of the relevant pages from both reports are attached as Exhibit A. To the extent that they go beyond the topic of defendants' market share, both reports are untimely.

It also appears that some of defendants' market share reports contain data responsive to City discovery requests that had not been previously turned over. For example, the expert report of W. David Montgomery (submitted by Exxon) relies on Transactional Data Received from the Colonial Pipeline Company pursuant to an informal request to calculate total deliveries of ExxonMobil RFG into the Colonial pipeline for certain years. Copies of the relevant pages of the Montgomery report are attached as Exhibit A. This information is responsive to the City's Fourth Set of Interrogatories regarding Pipelines, served November 12, 2008. In addition, the City received today from the Chevron defendants information relied upon in the expert report of Michael C. Keeley that was received from Colonial Pipeline in response to a Chevron subpoena. This information is also responsive to the City's pipeline interrogatories.

In addition, on February 13, 2009 – a week *after* plaintiff's toxicology expert submitted her report on February 6 – the City received a letter from defendants' counsel enclosing a so-called "STATEMENT FOR PLAINTIFFS IN THE CITY OF NEW YORK CASE ON THE TOXICOLOGY STUDY BEING FUNDED BY CHEVRON, EXXON AND SHELL." ." (see Exhibit B). The document, which describes on ongoing MTBE cancer study commissioned by lawyers for the named companies, also lists a substantial number of "documents relevant to the study" that defendants produced to plaintiff in this case for the first time on February 11, 2009. The latest date of any document listed is January 2009, and the vast majority bear earlier dates. Based on the assertion in the "Statement" that "[m]inimal effects were observed over the course of the study," it appears that defendants intend to have their toxicology experts rely on preliminary data from this ongoing industry-funded cancer study.

Especially in light of the rapidly approaching trial date in June and extremely tight timeline for expert discovery, this kind of conduct should not be tolerated. The City intends to meet and confer with defendants between now and the status conference concerning a resolution to this situation. Meanwhile we wanted to bring these matters to the Court's attention as the City considers seeking an order striking pertinent portions of the expert reports (and the underlying information), or other appropriate sanction.

3) **Live Testimony by Defendants' Employees at Trial During Plaintiff's case** *City of New York*

In accordance with the Court's order, in conjunction with their expert disclosure, defendants identified approximately 80 current and former employees who might provide expert or opinion testimony at trial. The City expects that, having identified those employees, defendants are prepared to have them appear at trial. The City requests that if defendants intend

to have their employees appear at trial, defendants be required to make those employees available to testify in person during the City's case. The City is discussing the issue with defendants and hopes to resolve it before the conference.

4) **Status of Order to Show Cause re Remand of *City of Merced Redevelopment Agency***

In *City of Merced Redevelopment Agency v. Exxon Mobil Corp., et al.*, on November 12, 2008, the Court issued an Order to Show Cause "why this action should not be remanded to state court because it does not 'aris[e] under' federal law within the meaning of Article III of the Constitution, given that no federal issue appears to be stated in the complaint or the removal petition." (Order to Show Cause, at 1, Docket #12.) On November 26, 2008, defendants filed a response. (Docket #14.) On December 9, 2008, plaintiff filed a response to defendants' response. (Docket #19.)

On December 24, 2008, James A. Pardo, Esq., counsel for Exxon Mobil Corporation, submitted a letter to the Court "respectfully ask[ing] for an opportunity to present oral argument on this important jurisdictional question," requesting that the Court stay execution of any remand order, and claiming that a remand order would be appealable, citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996) and *Mitskovski v. Buffalo and Fort Erie Public Bridge Authority*, 435 F.3d 127, 130 n.1 (2d Cir. 2006). Plaintiff opposes the request for a stay because a remand order would not be appealable. 28 U.S.C. § 1447(d) ("An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title shall be reviewable by appeal or otherwise."); *Quackenbush*, 517 U.S. at 711-12 (an abstention-based remand order is appealable, but not a remand order "based on lack of subject matter jurisdiction or defects in removal procedure"); *Mitskovski*, 435 F.3d at 133-34 ("[S]aving of time would occur if we could consider subject matter jurisdiction even where a district court has remanded for lack of such jurisdiction, but the unavailability of appellate consideration in that circumstance is commanded by statute [28 U.S.C. § 1447(d)] . . . .").

The matter has been briefed by both sides as requested in the Court's Order to Show Cause. If the Court wishes to entertain oral argument, then plaintiff City of Merced Redevelopment Agency would be pleased to address any questions the Court may have.

5) **Discovery Deficiencies in**

- *Village of Hempstead v. AGIP, et al.*, Case No. 03 CV 10055
- *West Hempstead Water District v. AGIP Inc., et al.*, Case No. 03 CV 10052
- *West Hempstead Water District v. Merit Oil Corp., et al.*, Case No. 08 CV 4290

On behalf of the plaintiffs in the above referenced matters, we request that defendants remedy the following discovery deficiencies:

**PTO 19 Applies to *Village of Hempstead* and *West Hempstead Water District***

During the January 15, 2009 conference, the Court agreed that PTO 19 should be extended to the above referenced matters. Pursuant to PTO 19, the defendants have a duty to provide the information set forth in the Order and/or provide plaintiffs with authorizations for obtaining the information. Defendants Valero, Texaco and GOLP have agreed to comply with its provisions. However, ExxonMobil, Crown Central, and Sunoco have taken the position that PTO 19 has not been extended to the above referenced matters.

Accordingly, we request a clarification of the applicability of PTO 19 to the *Village of Hempstead* and *West Hempstead Water District* matters.

ExxonMobil

ExxonMobil has failed to produce site remediation files for the gas station located at 710 Fulton Avenue, Hempstead, NY pertaining to Spill No. 93-04415. Moreoever, ExxonMobil has not provided complete remediation files for the stations it identified in its responses to Plaintiffs' discovery demands. On December 17, 2008 Plaintiffs we filed 30 (b)(6) deposition notices via LNFS. To date ExxonMobil has failed to produce a witness for deposition.

**BP Products North America Inc.**

BP Products failed to identify the 771 Peninsula Boulevard, Hempstead, New York retail station as a spill location, despite the fact that a search of New York State Department of Environmental Conservation Spill Incident Database reveals an "active" gasoline spill at this property.

In BP Products' Response to Plaintiff's First Set of Interrogatories Nos. 1-6, BP Products stated it would supplement its response and provide the "nature of its relationship" with the identified stations and provide "a supplemental response with the annual volume of gasoline by grade delivered to each such retail outlet from May 1999 through 2003... ." BP Products has thus far failed to supplement its response. BP Products also failed to comply with its obligation under PTO 19 as they have not produced station files and/or authorizations for its branded stations.

**Citgo**

Citgo failed to produce remediation files for each of the gas stations it identified. These remediation files include all documents related to the petroleum releases which occurred at 711 Fulton Ave., Hempstead, NY and 771 Peninsula Blvd., Hempstead, NY. Pursuant to PTO No. 19, plaintiffs have not received authorizations for Citgo-branded stations.

**Chevron USA Inc.**

Chevron responded to Interrogatory Nos. 1, 2, 4, 5, 6, and 7 of Plaintiffs' Second Set of Interrogatories by stating that "[a]t a mutually agreement time and place, Chevron will produce archived site files and/or other documents containing information responsive to this Interrogatory... ." Chevron also advised it would provide plaintiffs with citations to Bates numbers for the pertinent documents. To date, Chevron has failed to supplement these responses or provide when and where they will be available for inspection. Lastly, pursuant to PTO No. 19, Chevron has failed to provide station files and/or authorizations for its branded stations.

**OK Petroleum**

OK Petroleum has failed to respond to Plaintiffs' First and Second Sets of Interrogatories and Requests for Production. Although OK Petroleum's counsel represented on December 5, 2008 that responses would be forthcoming within 30 days, we have yet to receive any discovery responses.

### ConocoPhillips Co.

ConocoPhillips' response to Interrogatory No. 11 of Plaintiff's First Set of Interrogatories stated it was investigating whether its trucks pulled MTBE–containing products from any gasoline terminals that may have served the RGA but never supplemented its response.

ConocoPhillips also referred plaintiffs to the site remediation files for station numbers 2634611, 2634786 and 2634781 in response to Interrogatories numbers 1 through 7 and Requests for Production 1 through 6 of Plaintiffs' Second Set of Discovery Requests but failed to provide any corresponding Bates numbers. Lastly, ConocoPhillips has also failed to comply with PTO 19 for its branded stations.

### Getty Properties Corp. and Leemilt Petroleum

On January 13, 2009, defendants claimed that "[t]o the extent that our clients have any documents and/or information pertaining to Plaintiffs' various cases, it will be produced in the near future, to the extent that it does exist." On January 27, 2008, defendants further indicated they are undertaking a "diligent search" for responsive documents. To date, plaintiffs have received no documents or substantive responses.

### Valero Defendants

Valero Energy Corporation, Valero Marketing and Supply Company, and Valero Refining and Marketing Company (collectively "Valero") have acknowledged their obligation to comply with PTO 19 but have yet to produce the authorization for the branded station located at 210 Greenwich Street, Hempstead, New York.

### The Shell Defendants

In response to interrogatories numbered 1(d), 2(e), 3(d), 4(e), and 5(d), Shell stated that documents regarding volumes of gasoline transported by distributors prior to 1995 will be made available for inspection. In response to the plaintiffs' request regarding whether and when these documents would be available for review, Shell responded on February 13, 2009 that approximately *20,000 boxes* of potentially responsive documents will be available for review at two Shell's facilities in Houston, Texas and Boston, Massachusetts starting on February 23, 2009

### El Paso Merchant Energy Petroleum Co. & Coastal Eagles Point Oil Co.'s ("Coastal")

Coastal has failed to identify the dates of branding, volume information and distributor information for its stations located at 210 Greenwich St., Hempstead, New York, 415 S. Franklin St., Hempstead, New York, 771 Peninsula Boulevard, Hempstead, New York, 740 Hempstead Turnpike, Franklin Sq., New York, and 1501 Jericho Turnpike, New Hyde Park, New York.

In response to Interrogatory No. 7, Coastal advised it was investigating volume information for MTBE-laden gasoline sold to three identified jobbers and that it would supplement its responses. To date, however, Coastal has failed to supplement its responses.

Notwithstanding its obligations under PTO No. 19, Coastal has failed to provide station files and/or authorizations for its branded stations.

Shira A. Scheindlin
February 18, 2009

Respectfully submitted,

WEITZ & LUXENBERG, P.C.

By: _____
Robin Greenwald (RG-9205)
*Plaintiffs' Liaison Counsel*
180 Maiden Lane, 17th Floor
New York, New York 10038

cc: All Counsel of Record

# EXHIBIT A


Feb 13 2009
8:24PM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - -

In Re: Methyl Tertiary Butyl Ether     MDL No. 1358
("MTBE") Products Liability Litigation     Master File No. 1:00-1898(SAS)
    Case No. 04-CV-3417(SAS)

- - - - - - - - - - - - - - - - - - - - - - - - - - -

This Document Applies to:

*City of New York (Plaintiff)*

       v.

*Amerada Hess Corp., et al. (Defendants)*

- - - - - - - - - - - - - - - - - - - - - - - - - - -

## SUPPLEMENTAL EXPERT REPORT OF JOHN B. O'BRIEN

Date: February 13, 2009

no contamination risk whatsoever to Queens County, and should not be considered in assessing liability in Queens County. Therefore, in my opinion, it would be illogical to select the entire U.S. RFG market as the geographic market definition to assess potential MTBE-gasoline liability in Queens County.

## MR. BRUCE BURKE'S CONCLUSIONS REGARDING COMMINGLING

33. Plaintiff's expert Mr. Bruce Burke has concluded in his Expert Report of December 2008 Expert Report that, "*...over time it is a virtual certainty that [defendants] MTBE-gasoline is present in any release that occurred...*" while such defendants were supplying the distribution system that supplies Queens County.[31]

34. My experience in the refining, transportation, and distribution of gasoline in the U.S., and in the Northeast in particular, leads me to conclude that it is highly unlikely that some proportion of each and every Defendants' gasoline would ever be found to be present in a single release in Queens County, or even in multiple releases from any single site over a period of time. As discussed in the paragraphs that follow, this conclusion is based on my knowledge of where and how gasoline manufactured and destined for Queens County is transported and distributed.

35. In most circumstances, it is difficult, if not impossible, to ever "trace" specific molecules of MTBE-gasoline found in Queens County groundwater back to the point of manufacture. However, it does not follow that just because molecules of MTBE-gasoline cannot be traced through the supply chain, that all MTBE gasoline held in (or inadvertently released from) any underground storage tank (UST) in Queens County contained product from *all* (or even most) of the dozens of named Defendants, much less in a completely commingled or blended state. As discussed in the January 2009 O'Brien Report, the difficulty in tracing molecules does not preclude the tracing of who owned the gasoline (i.e., who had "title") at various points from the service station back through the supply chain.[32]

---

[31] Expert Report of Mr. Bruce F. Burke, December 19, 2008, Paragraph 121, p. 42,.
[32] January 2009 O'Brien Report, Paragraph 128, p. 54.

Page 15

36. In support of his position that it is a "virtual certainty" that all suppliers' product was contained in any release, Mr. Burke states that "...*because gasoline is supplied to the RGA [Relevant Geographic Area] has been repeatedly commingled from multiple sources and at multiple locations from the point of manufacture...it is reasonable to assume that, over time, gasoline produced by any manufacturer that supplied MTBE-gasoline into the overall system that supplies the RGA also supplied the RGA with MTBE-gasoline.*"[33]

37. Mr. Burke's notion that gasoline is "repeatedly commingled" is a highly oversimplified and incorrect notion of how either the NY Harbor supply system or the Queens County gasoline market works -- much less the entire U.S. gasoline supply and distribution system.

38. While fungible grades of gasoline are often shipped through pipelines and may be received into "community" tankage (i.e., tankage containing multiple shippers' products) at terminal locations, this does not mean that the NY Harbor supply and storage facilities consist of one large, completely commingled and fully blended "pool" of product from which all shipments to Queens County are sourced. Instead, there exist many individual and separate distribution points within NY Harbor, each typically relying on a limited number of suppliers, making it highly unlikely that the molecules refined by dozens or more producers would ever end up being blended together in a single batch and/or finding their way into any single Queens County underground storage tank (UST).

39. Also, although many NY Harbor storage facilities have community storage tanks, many also have tanks that are reserved for their larger customers, who either own or lease them for their exclusive use. Deliveries to Queens County from such segregated tanks would not be expected to contain gasoline molecules produced by any large number of different gasoline suppliers. Thus, it is my opinion, to a reasonable degree of engineering certainty, that no release of gasoline stored in, or released from, a UST in Queens County would ever have contained

---

[33] Mr. Bruce Burke, Paragraph 118, p.40.