

# WEITZ & LUXENBERG

A PROFESSIONAL CORPORATION
· LAW OFFICES ·

180 MAIDEN LANE • NEW YORK, NY 10038-4925
TEL. 212-558-5500    FAX 212-344-5461
WWW.WEITZLUX.COM

March 30, 2009

**VIA HAND DELIVERY &
ELECTRONIC MAIL**
The Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street — Room 1620
New York, New York 10007

Dear Judge Scheindlin:

     Plaintiffs respectfully submit this reply letter in advance of the April 2, 2009, status conference.[1]

## JOINT AGENDA ITEMS

    II.    **New Jersey and Puerto Rico Case Management Orders**

     The parties have submitted a joint proposed CMO in *New Jersey Department of Environmental Protection v. Amerada Hess Corp., et al.*. evidencing agreement on virtually all items contained therein. *See*, Proposed CMO attached as Exhibit A. Only Section VII(A)(4), which concerns the scope and timing of defendants' discovery requests served on March 11, 2009, remains in dispute. Plaintiffs maintain that the discovery served by defendants is not in conformance with the Court's prior directives and CMO 45, and therefore plaintiffs intend to bring the matter to the Special Master in the first instance for resolution. Plaintiffs believe that the new CMO should acknowledge the existence of this dispute and the method of resolution thereof. Accordingly, we contend that Section VII(A)(4) should remain in the proposed Case Management Order.

     Plaintiffs and Defendants have a fundamental disagreement related to the management of the massive amount of documents and data relevant to this litigation. Plaintiffs believe that a phased discovery which permits the parties to evaluate the information received and to then focus subsequent requests is an approach which best serves the parties and the Court. The dispute hinges on defendants' insistence on conducting at this time unlimited discovery on every site in New Jersey impacted by MTBE. Since there may be in excess of 3500 such sites, providing full discovery at this time on every site, including expert reports and all paper documents, is an

---

[1] Plaintiffs respectfully request a 2 page extension to the page limit to reply conference letters.

exercise which would take years, and would not advance the resolution of the litigation. Yet, the discovery propounded by defendants seeks to do just that.

Plaintiffs have provided a substantial amount of data already, and will continue to do so pursuant to the new CMO. The meet and confer process will address a method to focus the management of the litigation (see Section VII (A) of the proposed order). To require an unlimited "all-sites" discovery at this time is neither efficient nor effective. Plaintiffs intend to bring this issue to the Special Master within the week following the April 2 Case Management Conference.

The parties have agreed to the attached proposed CMO in *New Jersey Department of Environmental Protection v. Amerada Hess Corp., et al.*, attached as Exhibit B.

**DEFENDANTS' AGENDA ITEMS**

I. **"Adequacy of City of New York's Search for ... Documents from City Agencies other than the Department of Environmental Protection"**

At the February 26 status conference, the City acknowledged that it had located additional archived files related to leaks from City-owned USTs and agreed to produce any responsive documents within two weeks – defendants' proposed timeframe – and to confirm that it had found "everything there was to find." February 26, 2009 Tr. at 45:2-10. The City complied with this obligation within the agreed-upon time. *See* March 11, 2009 Letter from Ramin Pejan to Peter Condron, attached as Exhibit C. Many of these documents contain the same information, albeit in a different form, as documents already produced to defendants. As with the City's prior tank-related productions, the documents concerned properties under the jurisdiction of multiple City agencies, including the Police Department, the Fire Department, the Department of Sanitation, the Parks Department, the Department of Transportation, and the Department of Environmental Protection (DEP). Contrary to defendants' assertion, the production was not limited to DEP or DEP documents.

Defendants' newly expressed generalized "doubts" as to the City's responses to *all* of defendants' discovery requests over the past four and a half years are too late and too vague, and are, in any event, unfounded. The City has responded to thousands of individual discovery requests made by defendants over the course of this litigation. During that time, defendants have never once moved to compel discovery from the City, much less on the grounds they now raise. Defendants' failure to raise these issues earlier precludes them from doing so now. *See DC Comics v. Kryptonite Corp.*, 2002 WL 31159121, *3-4 (S.D.N.Y. Sept. 26, 2002) (refusing to compel a party to "respond more fully" to "earlier-served demands" when the propounding party failed to demonstrate that it "acted with appropriate diligence"). Defendants' non-specific complaints about the City's discovery responses not only are unjustified given the size and quality of the City's productions over the years, but also come less than three months before the start of trial on the first ten focus wells. At the January 15, 2009 status conference, the Court responded to Mr. Pardo's request for a 3 week extension of fact discovery by stating "I really don't expect to hear this again without a very specific showing of prejudice." January 15, 2009 Tr. at 51:24-25. Defendants have not provided this specificity. In light of this, defendants'

request the City to certify that it has conducted a diligent search for relevant documents is inappropriate and unnecessary. Notably, defendants have neither provided nor offered to provide the City with mutual certifications, and likely could not, as the City continues to receive supplemental discovery responses from defendants.

Defendants' have waited too long to seek to supplement their expert reports. Rather than ask the City if it would agree to supplemental reports[2] immediately upon receiving the additional remediation documents, defendants waited two weeks simply to put their request on an agenda and three weeks later have still have not served supplemental reports.[3] Given upcoming depositions related to modeling and hydrogeology (starting April 6), the City's right to submit rebuttals to defendants' experts, and the May 4 expert discovery deadline, defendants were required to act immediately if they believed supplementation was necessary. The Court should deny this belated request.

## II. OCWD's Designation of Additional Wells Based Upon New MTBE Detections

During a January 29, 2009, conference call with the Court, the Court directed the District to provide defendants with a list of wells with new MTBE detections, and the plumes with which those wells were associated. *See,* March 30, 2009, letter from Michael Axline to Matt Heartney, and related exhibits, attached as Exhibit D. The District agreed to do so in a short time frame, but with the caveat that such designations involved matters of expert and iterative analysis. *Id*. Defendants now complain that the new designations will require additional discovery, and some of the designations make no sense. The Court, however, specifically stated during the January 29, 2009, conference that it would be more efficient to add these wells to the existing case than to have the District file separate litigation involving the wells. *Id*. As to whether the designations make hydrogeologic sense, that is a matter for expert discovery and testimony.

## III. City of New York's Deposition Designations

The City's designation of *South Tahoe* trial testimony and testimony from 15 deponents' depositions taken in *Dinuba, Peters, Lynn, Fruitridge* and *Ashcraft* for use at trial is entirely consistent with the Court's Orders, the Federal Rules of Civil Procedure and the Federal Rules of Evidence. Defendants' assertion to the contrary is disproved by the express language of CMOs 4 and 6. CMO 4 merely defines a term, "Prior MTBE Litigations." *See id.* at ¶ III.1. CMO 4 says nothing about the use of trial or deposition testimony at trial or for any purpose. The relevant language in CMO 6 is found at Section I, Paragraphs 4-6 ("Paragraphs 4-6"). Paragraph 4 put Defendants "on notice that plaintiffs intend to offer all *depositions* taken in *Prior MTBE Litigations* (as defined in CMO #4) against *all* defendants" and instructed Plaintiffs to "promptly

---

[2] While the City does not know which reports defendants seek to supplement as defendants have never made this request directly to the City, the City notes that defendants submitted 10 reports from hydrogeologist or similar experts.

[3] Defendants' unilateral decision to take an additional week to prepare their rebuttal reports on market share from eight separate experts has already unacceptably extended submission of expert reports.

supply defendants with the identity - by date, person deposed and litigation in which conducted" of such "*depositions*." *Id.* (emphasis added). Paragraphs 4 and 5 then operate to bar "the repetition of prior questioning of" deponents so identified and outline a protocol that must be followed for reopening depositions. *See id.* Finally, Paragraph 6 provides that "[a]s a consequence of the above," parties "may not object to *depositions* taken in a *Prior MTBE Litigation* being used against them in this litigation simply because they were not parties to the *Prior MTBE Litigation*." *See id.* at ¶6 (emphasis added). Paragraphs 4-6 do not address the admissibility or use of *trial* testimony, nor do they bar the use of depositions not identified pursuant to the process in Paragraph 4 at trial or for any purpose.

Instead, Paragraphs 4-6 are expressly limited to the use of "depositions" from "Prior MTBE Litigations," against "all" Defendants. *See id.* Their import for present purposes is that to the extent "depositions" from "Prior MTBE Litigations" were not identified pursuant to Paragraph 4, Defendants not present at such depositions may now object to their admissibility on the ground that "they were not parties to the Prior MTBE Litigation." *See id.* at ¶ 6. CMOs 4 and 6 do not even discuss -- let alone determine the admissibility at trial of-- *trial* testimony and deposition testimony from litigations *other than* the "Prior MTBE Litigations." *See Hnot v. Willis Group Holdings Ltd.*, 2006 WL 2381869 * 4, n.6 (S.D.N.Y. 2006) (applying interpretive principle *expressio unius est exclusio alterius* to Court order); *see also Guo v. U.S. Dept. of Justice*, 422 F.3d 61, 64 (2d Cir. 2005).

Because CMO 4 and CMO 6 do not address the admissibility of such testimony at trial, the Federal Rules of Evidence and Federal Rules of Civil Procedure control. For example, assuming witness unavailability, *see* Fed. R. Civ. P. 32(a)(4); Fed. R. Evid. 804(a), the testimony will be admissible, so long as there are common questions of law or fact, a substantial identity of issues, and sufficient opportunity and motivation to cross-examine the deponent. *See* Fed. R. Evid. 804(b)(1); 23 Am. Jur. 2d Depositions and Discovery § 112 (2008). Similarly, regardless of witness availability, the testimony will be admissible against certain defendants as party admissions, *see* Fed. R. Civ. P. 32(a)(3); Fed. R. Evid. 801(d)(2), and to the extent a witness's testimony is inconsistent with his or her prior testimony, *see* Fed. R. Evid. 801(d)(1).

For the foregoing reasons, Defendants' objections are meritless. The City respectfully requests that the Court overrule Defendants' general objections and order Defendants to serve any specific objections to such testimony by no later than April 9.

## New Issue Raised by Defendants

Defendants have told the City that they intend to raise two new issues in their reply[4] related to the expert reports of David Terry and Ed Whitelaw. Mr. Terry appropriately included additional petroleum release sites in modeling prepared for his Rebuttal Report in response to criticisms raised by defendants' expert. By the time of the conference, these additional modeling

---

[4] Defendants received Mr. Terry's report two days before their 72 hour letter was due, and should have raised any issues about that report in their opening letter rather than waiting for reply.

Honorable Shira A. Scheindlin
March 30, 2009

files will have been produced to the defendants in accordance with the agreed upon expert protocol and defendants may question Mr. Terry regarding his decision to include additional sites at his deposition on April 6-7.

Dr. Whitelaw's 3-page supplemental report contains two revised calculations of certain costs attributable to refiners' choice of MTBE as an oxygenate. The report addresses two discrete and related issues that were raised for the first time during Dr. Whitelaw's March 20 deposition. At that time, Dr. Whitelaw advised defendants that he might revise certain calculations. The City served the Supplemental Report within one week of the deposition and offered to make Dr. Whitelaw available for an additional half-day of deposition. Notably, Dr. Whitelaw confirmed in his supplemental report that he was not changing his opinion. Defendants will suffer no prejudice as a result of Mr. Terry's Rebuttal or Dr. Whitelaw's Supplemental Reports.

Respectfully submitted,

WEITZ & LUXENBERG, P.C.

By: *Robin L. Greenwald*
Robin Greenwald (RG-9205)
*Plaintiffs' Liaison Counsel*
180 Maiden Lane, 17th Floor
New York, New York 10038

cc: All Counsel of Record

**EXHIBIT A**

FINAL DRAFT
3-30-09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE METHYL TERTIARY BUTYL
ETHER ("MTBE") PRODUCTS LIABILITY
LITIGATION

This document relates to:

New Jersey Department of Environmental
Protection, et al. v. Atlantic Richfield Co.,
et al., 08 Civ. 00312

Master File No. 1:00-1898
MDL 1358 (SAS)
M21-88

---

SHIRA A. SCHEINDLIN, U.S.D.J.

## CASE MANAGEMENT ORDER NO. ___

I. **PRODUCTION OF ELECTRONIC DATA BY PLAINTIFFS**

    A.    Plaintiffs shall produce to defendants the data in plaintiffs' possession, custody or control related to the following to the extent that such data is available in electronic format and was not previously produced pursuant to Case Management Order No. 45:

    1.    the presence and levels or concentrations of MTBE in the waters of New Jersey;

    2.    releases or spills of gasoline containing MTBE into the waters of New Jersey, or the sources of MTBE in the waters of New Jersey;

    3.    the sites or locations where releases or spills of gasoline containing MTBE into the waters of New Jersey have occurred;

    4.    the remediation, cleanup or treatment of MTBE in the waters of New Jersey;

5. public funds used to pay for the remediation, cleanup or treatment of MTBE in the waters of New Jersey; and

6. any costs, damages or alleged injury sustained by plaintiffs as a result of the presence of MTBE in the waters of New Jersey.

B. Said production shall be on a continuing basis and shall be complete no later than September 25, 2009 and shall include, but is not limited to, the following production:

1. all HAZSITES sampling data for sites where an analysis for MTBE has been electronically submitted to DEP; the HAZSITES submission catalogue; the UST Registration & Billing System database; and the Registration & Billing System Tracker database;

2. New Jersey Environmental Management Systems ("NJEMS") data that is practicably available ("NJEMS Production Phase I");

3. the balance of NJEMS data deemed responsive to CMO No. 45 and Binary Large Object files tied to MTBE sites identified within HAZSITES data ("NJEMS Production Phase II"); remainder of stand-alone DEP SRP databases.

4. costs databases.

5. reports from files of the sites of releases or spills of gasoline containing MTBE into the waters of New Jersey which describe or provide summaries of the conditions, releases and remediation at such sites to the extent such reports exist.

C. If any of the foregoing electronic files also contain data or information about contaminants other than MTBE, such data or information shall be provided and not withheld or redacted.

## II. PRODUCTION OF ELECTRONIC DATA BY DEFENDANTS

**A.** Each defendant shall produce to plaintiffs the data in each defendant's possession, custody or control related to the following to the extent that such data is available in electronic format and was not previously produced pursuant to Case Management Order No. 45:

**1.** locations and ownership interest in stations, USTs, terminals, refineries, pipelines, or delivery systems (including, but not limited to, tankers, tank trucks, railcars) in which any defendant has or has had an interest, and that is located in, or that serves, New Jersey;

**2.** identities, contact information, and locations of parties with whom defendants have or have had supply contracts to deliver gasoline containing MTBE or neat MTBE to New Jersey, including exclusive supply contracts, and contracts with delivery services, franchisees, lessees, lessors, jobbers, common carriers (including, but not limited to, pipelines), distributors, terminals, other refiners, or any other entities;

**3.** names, grades of products, product codes, blend information and other identifying information for gasoline with MTBE or neat MTBE that was or continues to be distributed in or intended for New Jersey;

**4.** locations, dates, volumes and sources, and causes of spills or discharges of gasoline with MTBE or neat MTBE into soil, ground water or surface water within New Jersey or that migrated to soil, ground water or surface water in New Jersey;

**5.** Site remediation reports related to releases of MTBE or gasoline with MTBE at sites that are or were owned and/or operated by defendants where there has been a confirmed release of MTBE or gasoline with MTBE which, to the best of

defendants' knowledge, has impacted a water resource or is likely to impact a water resource; and

      **6.**    the volumes of gasoline with MTBE, and neat MTBE, that the responding defendant refined, distributed, stored, blended, or sold in the State of New Jersey or refined elsewhere for distribution in the State of New Jersey.

    **B.**    Said production shall be made on a continuing basis and shall be complete no later than September 25, 2009.

### III. ELECTRONIC LOOSE FILES

    **A.**    With respect to the electronic files to be produced pursuant to Sections I and II of this Order, the parties need not produce responsive Electronic Loose Files ("ELF") before September 25, 2009. The parties shall continue to meet and confer about the appropriate timing for production of ELF.

    **B.**    For purposes of this Order, ELF include any electronic files that are not files or systems created to centralize or aggregate a parties' information (i.e. databases). Discreet word processed documents (e.g. memoranda, correspondence), PDFs, images, emails and their attachments, and the like are considered ELF, unless such discrete document(s) constitutes or is part of a Site Remediation Report. The limitations in this paragraph apply only to the parties' pre-September 25, 2009 production obligations under this CMO, and do not otherwise alter the parties' discovery obligations, including the parties' continuing duty to preserve all data described in the Court's March 15, 2005 *Order for Preservation of Documents* (the "Preservation Order").