## IV. ADDITIONAL ELECTRONIC DISCOVERY

Nothing set forth herein shall constitute a waiver of any party's right to seek or object to the request of additional, relevant electronic discovery to the extent properly requested in a future discovery request.

## V. DESCRIPTIONS OF DATA PRODUCED

A. With respect to all productions of electronic data, whether previously produced pursuant to CMO 45, or pursuant to this Order, each party shall provide a general description of the production which is sufficient to enable the parties to understand and use the data provided. Additionally, the producing party and receiving party shall meet-and-confer about the contents of such data and the interpretation of the data. Examples of information the parties may consider exchanging may include, but are not limited to, the following:

1. A description of the type of information that is tracked by, each database, file and table;

2. Identification of the category of CMO 45 to which each database, file or table is responsive;

3. If the produced tables inter-relate or "link" with one another, an explanation of how the tables and/or databases "link" or integrate; and if the links have not been provided, an explanation of why they are not provided or when they will be provided;

4. If the file is not formatted in Microsoft Word, .PDF or HTML., a description of the specific program used to create the file (i.e. Excel, Access, etc.).

**B.** With regard to such descriptions of data, the parties shall use reasonable efforts to exchange information and coordinate about data informally prior to invoking more formal discovery. However, the parties shall be entitled to seek discovery as to these issues pursuant to the Federal Rules of Civil Procedure, and also to seek guidance from the Court or Special Master Warner as appropriate.

## VI. GENERAL DISCOVERY

Upon entry of this Order, the parties may engage in written discovery and depositions as to general issues (*i.e.*, non Site-specific inquiries).

## VII. ADDITIONAL DISCOVERY

**A.** By the next status conference, the parties shall meet and confer on the following issues:

**1.** The most efficient and productive approach for managing and focusing future discovery. This may include Defendants' proposal that the Plaintiffs produce complete site files, including as one possibility plaintiffs' initial production to defendants, for a single county[1] of any and all files related to releases, discharges, and/or spills of contaminants, which files, to the best of plaintiffs' knowledge, relate to a contaminant impact or threatened contaminant impact on a water resource(s) for which the plaintiffs seek damages in this case, or it may include Plaintiffs' proposal of phased discovery leading to a Bellwether approach to trial.

---

[1] Such a request for the production of a single county's site remediation files should not be construed to suggest that the county will be a "focus" or "bellwether" site, or that defendants believe that a focus or bellwether approach is appropriate for this case, but is instead issued solely for the purpose of analyzing the sufficiency of the plaintiffs' electronic production, and to aid defendants' determination of whether additional production of site remediation data is necessary.

2. The most efficient and productive approach for plaintiffs to identify and describe with specificity and particularity each water resource and/or "site," including the location of the same, for which plaintiffs seek recovery in this lawsuit.

3. Documentation relating to the volumes of gasoline with MTBE, and neat MTBE, that the defendants refined, distributed, stored, blended, or sold in the State of New Jersey or refined elsewhere for distribution in the State of New Jersey.

4. [The scope and timing of, and the scope of the response to, written discovery already served by defendants on March 11, 2009.]

5. Production of non electronic "Site Summaries."

B. By October 25, 2009, following a review of the data produced pursuant to this Order, the parties shall meet and confer as to the next phase of discovery, including, but not limited to, discovery regarding the following topics to which each party reserves all objections:

**DEFENDANTS' TOPICS**

1. Causation of harm from a release affecting natural resources;

2. Potential liability of third-parties for MTBE and non-MTBE releases prior to and since 1979;

3. Impacts to natural resources from MTBE, petroleum and non-petroleum releases, prior to and since 1979;

4. Quantification of harm from MTBE or other substances;

5. Contamination of surface and/or groundwater in New Jersey from any source and with respect to any contaminant;

6. Loss of use of surface and/or groundwater in New Jersey;

7. Plaintiffs' policies and/or practices regarding the remediation, treatment and response to releases of MTBE or gasoline containing MTBE, including assignment of responsibility, assessment of penalties for violations, issuance of state permits, use of MCLs, etc.;

8. Contribution to contamination from municipal, state, federal or independent sources;

9. Communications between plaintiffs and any other governmental entity, including but not limited to the U.S. Environmental Protection Agency, regarding MTBE, as well as any participation in FASTRAC;

10. Communications between plaintiffs and the general public regarding MTBE;

11. Promulgation of regulatory programs (e.g. CEA, etc.);

12. Studies of the valuation of resources;

13. Studies of resource use, condition and degradation, including any baseline assessments or background studies, prior to and since 1979, for any natural resources which are the subject of the plaintiffs' claims in this litigation;

14. Policies and/or practices concerning the testing, regulation or legislation of MTBE, including but not limited to the maximum contaminant levels (MCLs) for MTBE;

15. Plaintiffs' early knowledge of MTBE, including but not limited to knowledge of the characteristics of MTBE, releases of MTBE to the waters within plaintiffs' jurisdiction, relative risks and benefits of gasoline oxygenates;

16. Air quality benefits from MTBE and/or the RFG opt-in decision;

17. Prior and pending claims by plaintiffs for natural resource damages against named defendants or for resources which are the subject of the plaintiffs' claims in this litigation;

18. Plaintiffs' policies and/or practices relating to the use of public funds to pay for cleanup;

**PLAINTIFFS' TOPICS**

19. MTBE's characteristics in groundwater and containment systems;

20. Taste and odor of MTBE;

21. Alternatives, including the availability of ethanol;

22. Knowledge of MTBE's characteristics and industry releases;

23. The formation of and participation in industry groups or committees relating to MTBE;

24. Contacts and communications by both refiners and those industry groups with governmental regulators and officials and the substance of those communications relating to MTBE;

25. Decisions to select an oxygenate for use in gasoline, including the decision to use MTBE, and the decision to use or not to use ethanol;

26. The decision to use MTBE to boost octane;

27. The decision to use MTBE in conventional gasoline;

28. The decision to use MTBE in Non-Reformulated Gasoline/Non-Oxy-Fuel areas;

29. The foreseeability of contamination, including knowledge of historical problems associated with underground storage tank systems;

30. Programs by defendants, their subsidiaries or their affiliates, to identify, prioritize and/or remediate MTBE/TBA contamination within the State of New Jersey;

31. Warnings relating to gasoline containing MTBE;

32. The decision to discontinue using MTBE in gasoline;

33. Surveys of the defendants that show the extent of contamination by MTBE;

34. Vulnerability studies which describe potential impacts on public drinking water supplies and/or wells, and/or any programs to require additional and/or different remedial work to prevent MTBE and/or TBA from entering public drinking water supplies and/or wells; and

35. The factual bases for Defendants' Affirmative Defenses.

C. The parties shall continue to meet and confer to discuss the timing and scope of all categories of discovery not contemplated by the Sections above.

SO ORDERED

DATED: New York, New York
March ___, 2009

Shira A. Scheindlin
U.S.D.J.

BST99 1615950-1.037771.0188

# EXHIBIT B

| UNITED STATES DISTRICT COURT | ) Master File C.A. No. 1:00-1898 |
| SOUTHERN DISTRICT OF NEW YORK | ) |
| | ) MDL 1358 (SAS) |
| | ) No. M21-88 |
| In re Methyl Tertiary-Butyl Ether | ) |
| ("MTBE") Products Liability Litigation | ) |
| | ) |
| This document relates to: | ) |
| | ) |
| *Commonwealth of Puerto Rico, et al. v.* | ) |
| *Shell Oil Co., et al.*, No. 07 Civ. 10470 (SAS) | ) |

## CASE MANAGEMENT ORDER NO. [ ]

### I. PRODUCTION OF ELECTRONIC DATA AND NON-ELECTRONIC INFORMATION RESPONSIVE TO PREVIOUSLY PROPOUNDED DISCOVERY

**A.** The parties shall exchange, on a continuing basis but no later than September 25, 2009, all reasonably accessible electronic data and all non-electronic information responsive to previously propounded discovery.

**B.** The Plaintiffs shall make available for review by Defendants by May 4, 2009, the centrally filed Environmental Quality Board site remediation case files responsive to previously propounded discovery that have not been produced to date.

**C.** Subject to meeting and conferring prior to April 17, 2009, the parties agree to non-waiver of privilege or confidentiality as to any documents produced. The parties further agree that should any document be produced, which is later found to be privileged or otherwise confidential, the receiving party will destroy all copies of such document in their possession and such documents shall not be used for purposes of this litigation.

## II. OTHER DISCOVERY OBLIGATIONS

**A.** Within thirty (30) days of the entry of this Order, the parties shall meet and confer on appropriate topics and timing as to the next phase of discovery.

## III. Corporate Disclosures

Prior to May 1, 2009, Defendant shall submit disclosures outlining their corporate structures, including a delineation of any of the Defendants' parents, subsidiaries and affiliates which do business related to the manufacturing, refining, importing, exporting, distributing or supplying of gasoline that is manufactured, refined, imported, exported, distributed or supplied to, from or within the Commonwealth of Puerto Rico.

## IV. Electronic Loose Files

**A.** With respect to the electronic files to be produced pursuant to Sections I.A of this Order, the parties need not produce responsive Electronic Loose Files ("ELF") before September 25, 2009. The parties shall continue to meet and confer about the appropriate timing for production of ELF.

**B.** For purposes of this Order, ELF include any electronic files that are not files or systems created to centralize or aggregate a parties' information (i.e. databases). Discreet word processed documents (e.g. memoranda, correspondence), PDFs, images, emails and their attachments, and the like are considered ELF, unless such discrete document(s) constitutes or is part of a Site Remediation Report. The limitations in this paragraph apply only to the parties' pre-September 25, 2009 production obligations under this CMO, and do not otherwise alter the parties' discovery obligations, including the parties' continuing duty to preserve all data described in the Court's March 15, 2005 *Order for Preservation of Documents* (the "Preservation Order").

## V. OTHER OBLIGATIONS AS TO ELECTRONIC DISCOVERY

**A.** With respect to all productions of electronic data, whether previously produced, or produced pursuant to this Order, the parties shall provide a general description of the production which is sufficient to enable the parties to understand and use the data provided. Additionally, the producing party and receiving party shall meet-and-confer about the contents of such data and the interpretation of the data. Such description shall include, but is not limited to, the following:

**1.** A description of information that is tracked by each database, file and table;

**2.** If the produced data inter-relate or "link" with one another, an explanation of how the materials "link" or integrate; and if the links have not been provided, an explanation of why they are not provided or when they will be provided;

**3.** If the file is not formatted in Microsoft Word, .PDF or HTML., a description of the specific program used to create the file (i.e. Excel, Access, etc.).

**B.** To the extent that such a description is incomplete and/or inadequate to enable a party to use or understand the data produced, the parties shall meet and confer, and if the meet and confer shall prove unsuccessful, the parties shall be entitled to seek discovery as to the description pursuant to Fed. R. Civ. P. 30(b)(6).

## VI. OTHER OBLIGATIONS AS TO NON-ELECTRONIC DISCOVERY

The parties agree that they shall meet and confer by April 17, 2009, regarding how paper files shall be made available and how the parties will share in the costs of Bates labeling and duplicating (i.e., scanning, copying) those files for use in the litigation. The parties further agree that they shall meet and confer by April17, 2009 regarding procedures to be followed in an instance where a party inadvertently produces privileged or otherwise confidential documents.

## VII. FUTURE DISCOVERY

The parties shall meet and confer, and shall utilize the services of the Special Master as appropriate, to discuss what future discovery is appropriate prior to September 25, 2009.

SO ORDERED

_____

# EXHIBIT C



MICHAEL A. CARDOZO
*Corporation Counsel*

THE CITY OF NEW YORK
## LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

RAMIN PEJAN
*Assistant Corporation Counsel*
Phone: (212) 788-1586
Fax: (212) 788-1619
E-mail: rpejan@law.nyc.gov

March 11, 2009

Peter Condron, Esq.
Wallace, King, Domike, and Reiskin PLLC
2900 K Street NW, Suite 500
Washington, DC 20007
VIA E-MAIL: pcondron@wallaceking.com

    Re:    *City of New York v. Amerada Hess*, et al., 04 CV 3417 (SDNY)
            *In re MTBE Products Liability Litigation*, MDL 1358

Dear Peter:

       I write regarding your request for the City to conduct an additional search for documents related to City-owned USTs in the Relevant Geographic Area ("RGA"). As indicated in our letter to the Court dated February 23, the City's most recent search has uncovered archived files containing additional responsive materials regarding the sites listed on document Bates-stamped NYC-0015139 through NYC-0015140 ("Tank List"). Please find enclosed a CD with documents Bates-stamped NYC2_0098061 through NYC2_0124387. This constitutes the final production of documents from these archived site remediation files. The City has conducted a diligent search of the files kept by those agencies that maintain the City's spill remediation files and believes that it has now produced the documents responsive to defendants' document requests pertaining to City-owned tanks.

       As explained in my March 3, 2009 letter to you, over the past several weeks, the City has conducted an extensive review of the archived materials, which contains a voluminous number of documents pertaining to City-owned tanks in each of the five boroughs. The City has extracted from these archives only those documents related to sites on the Tank List. It should also be noted that many of the documents consist of monthly status reports prepared by the City's contractors. These monthly status reports contain updates regarding numerous non-responsive sites throughout the City. If one site referenced in the monthly status report is responsive, the City produced the entire report even though the vast majority of pages regard sites not located in the RGA.