

Victor M. Sher
vsher@sherleff.com
415.348.8300 x100

June 8, 2009

*Via Hand-Delivery and Electronic Mail*

The Honorable Shira A. Scheindlin
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1620
New York, New York 10007-1312

    Re:   *City of New York v. Amerada Hess Corp., et al.,* Case No. 04 CV 3417
            *In re MTBE Products Liability Litigation*, MDL 1358

Dear Judge Scheindlin:

Whether ExxonMobil's liability under the commingled product theory is several or joint and several, it has always borne the burden of establishing its own allocated share relative to other refiners. Its claims of prejudice if Your Honor deemed liability to be joint and several under the commingled product theory ring hollow. As explained more thoroughly below:

- ExxonMobil's complaint that a change in the nature of liability under the commingled product theory deprives it of its right to prepare a defense lacks any force whatsoever. This Court has always retained the right to alter its articulation of the theory as this case has developed, and, as discussed at greater length below, ExxonMobil is not prejudiced in any way as a result.

- ExxonMobil's liability for spills and releases in which its product is present has *never* been several-only in relation to gas station owner/operators, and ExxonMobil cannot possibly have relied on the commingled product theory in preparing its defenses in that context. As Your Honor has explained, "retailers of gasoline containing MTBE … may be jointly and severally liable with manufacturers for products liability claims." *In re MTBE Prods. Liab. Litig. (In re MTBE)*, 591 F.Supp.2d 259, 281-82 (S.D.N.Y. 2008).

- The only question – one which Your Honor has never answered in a specific factual context – is whether ExxonMobil's liability with regard to other refiners and manufacturers is several or joint and several under the commingled product theory. But no matter how the Court answers that question, ExxonMobil has always borne the burden of demonstrating its own share of the liability. If liability is joint and several, ExxonMobil may attempt to show that its share should be offset under General Obligation Law 15-108 – a showing on which it unquestionably has always borne the

burden of proof. *See* 14 N.Y. Prac., New York Law of Torts § 10.24 (under GOL § 15-108, "[a]t trial the nonsettling tortfeasors have the burden to prove the respective equitable shares, and they are free to attribute as much of the blame as possible on the nonparty settling tortfeasor."). But even if liability is several-only, ExxonMobil *still* has always borne the burden of showing "that it should only be responsible for a proportion of the damage." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F.Supp. 740, 819-20 (E.D.N.Y 1984), quoted in *In re MTBE*, 447 F.Supp.2d 289, 300 n. 41 (S.D.N.Y. 2006).

- Punitive damages are appropriate under the commingled product theory regardless of whether liability is several or joint and several.

Thus, clarifying that liability under the commingled product theory is joint-and-several will have little practical effect as far as ExxonMobil's burden is concerned, and nothing about the Court so ruling will unfairly prejudice ExxonMobil.

### A. Nothing Precludes This Court From Revisiting the Commingled Product Theory

Rule 54(b) of the Federal Rules of Civil Procedure provides that *all* trial court decisions are "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed. R. Civ. Pro. 54(b). It really should be beyond dispute that this Court has ample discretion to reevaluate its own prior rulings. *Arizona v. California*, 460 U.S. 605, 618 (1983); *see, e.g., Tischmann v. ITT/Sheraton Corp.*, 145 F.3d 561, 564 (2d Cir. 1998) (law of the case doctrine "does not constitute a limitation on the court's power"); *Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir.2001) ("[a]pplication of the law of the case doctrine is discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment").[1]

---

[1] "A court always has the power to reexamine, modify, vacate, correct and reverse its prior rulings and orders." *In re Solomat Partners, L.P.*, 231 B.R. 149, 156 (2d. Cir. BAP 1999) (collecting citations). *Accord, e.g., Zdanok v. Glidden Co., Durkee Famous Foods Div.*, 327 F.2d 944, 952-53 (2d Cir.), *cert. denied*, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964) ("the 'law of the case' does not rigidly bind a court to its former decisions, but is only addressed to its good sense") (quoting Judge Learned Hand in *Higgins v. California Prune & Apricot Grower, Inc.*, 3 F.2d 896, 898 (2d Cir.1924)). Issues "of intrinsic importance or [having an] impact on nonparties" are especially susceptible to reconsideration later in the case. *See* Wright, Miller & Cooper, *supra*, 18 FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 4478, p. 791-792, 799. This is particularly true where, in the interim, "the relevant factual or legal context may have further developed". Prof. J. Steinman, *Law of the Case: A Judicial Puzzle in Consolidated and Transferred Cases and in Multidistrict Litigation*, 135 U. PA. L. REV. 595, 610 (1987), citing *Rogers v. Valentine*, 426 F.2d 1361, 1363, n.2 (2d Cir. 1970) (trial judge retained discretion to decide, after trial, that a federal court should not exercise pendent jurisdiction over a state law claim, despite contrary decision by a predecessor judge). Thus, "a judge should be able to change her mind and correct her decision… In fact, the propriety of any single trial judge

ExxonMobil's complaint that it has been deprived of a constitutional right to prepare defenses "under a 'joint and several' liability scheme" because it "relied on the Court's prior articulations of the theory" (June 4, 2009 Sacripanti Letter at p. 1) carries no weight. Indeed, in this particular instance revisiting Your Honor's previous rulings creates no unfair prejudice to ExxonMobil because ExxonMobil's burden remains unchanged, as discussed at greater length below. *See First Nat'l Bank v. American Foam Rubber Corp.*, 530 F.2d 450, 453 n.3 (2d Cir.), *cert. denied*, 429 U.S. 858 (1976) ("[T]he law of the case is a discretionary doctrine that need not be applied when no prejudice results from its omission").

In any event, good cause and cogent, compelling reasons exist for revisiting this issue. The original – and sole – justification set forth by this Court for deeming liability several, rather than joint and several, was the potential for "so large a number of actors, each of whom contribute[d] a relatively small and insignificant part of the total harm, that the application of the rule [of joint and several liability] may cause disproportionate hardship to defendants." *In re MTBE*, 379 F.Supp.2d 348, 378 (S.D.N.Y. 2005). Since the Court's earlier statement, however, two things have become clear in this case: First, ExxonMobil is a member of a relatively *small* number of large, vertically-integrated oil companies operating in United States markets (fewer than 20 corporate families) that refined and supplied gasoline containing MTBE; and second, ExxonMobil – the sole remaining defendant – represents a *substantial* contributor by any reasonable measure to the indivisible injury suffered by the City.

Indeed, where the harm at issue is an indivisible injury (as it is here), liability is traditionally joint and several. *See In re MTBE*, 379 F.Supp.2d 348, 378 (S.D.N.Y. 2005) (joint and several liability is the traditional rule unless each actor contributed an "insignificant" part of the total harm). Modifications to the theory of liability are only necessary – if at all – to avoid the risk of disproportionate hardship to insignificant contributors. Accordingly, if the City proves that ExxonMobil's gasoline containing MTBE has contributed more than insignificantly to the commingled plumes affecting the City's wells, the likelihood of "disproportionate hardship" to ExxonMobil will be exceedingly small.

Finally, the specific characteristics of Defendants' injurious behavior that gave rise to the commingled product theory in the first place render liability under that theory properly joint and several, not several only, as discussed in detail in section (B), *infra*.

---

affording reconsideration of discretionary decisions is generally accepted" *Id.* at 610-11, *citing United States v. Williams*, 728 F.2d 1402, 1406 (11th Cir. 1984) ("[A] court's previous rulings may be reconsidered as long as the case remains within the jurisdiction of the district court"); *Loumar, Inc. v. Smith*, 698 F.2d 759, 762 (5th Cir. 1983 (a predecessor judge always could have reconsidered his initial decision so long as the case remained in his court); *Dictograph Prods. Co. v. Sonotone Corp.*, 230 F.2d 131, 134 (2d Cir.), *cert. dismissed*, 352 U.S. 883 (1956) ("No one will suggest that the first judge himself may not change his mind and overrule his own order").

### B. Liability Under the Commingled Product Theory is Joint and Several

As Your Honor has explained, the commingled product theory applies where a single product containing the blended products of each refiner or manufacturer defendant causes the harm at issue. *In re MTBE*, 447 F.Supp.2d at 301 (under the commingled product theory, the products of many manufacturers "were present in a completely commingled or blended state" in the single product that caused injury, and "each refiner or manufacturer is deemed to have caused the harm"). That the resulting harm is *indivisible* is an essential component of the commingled product theory. As this Court stated in first describing the theory, "[w]hen a plaintiff can prove that certain gaseous or liquid products (*e.g.,* gasoline, liquid propane, alcohol) of many suppliers were present in a completely commingled or blended state at the time and place that the risk of harm occurred, *and the commingled product caused a single indivisible injury*, then each of the products should be deemed to have caused the harm." *In re MTBE*, 379 F.Supp.2d at 377-378 (emphasis added); *see also In re MTBE*, 415 F.Supp.2d at 271 (restating same); *In re MTBE*, 447 F.Supp.2d at 302 ("Because of MTBE's fungibility, once MTBE reaches a well, regardless of the MTBE's source, or the number of times MTBE seeps into the well, the well is indivisibly injured").

The tortious acts of multiple defendants can combine to create a single indivisible injury. *In re MTBE*, 447 F.Supp.2d at 297-98 ("For liability to attach, defendants' tortious conduct need not be simultaneous in time, but must combine to produce plaintiff's indivisible injury"), *citing Navigazione Libera Triestina Societa Anonima v. Newtown Creek Towing Co.,* 98 F.2d 694, 697 (2d Cir.1938) ("[I]f two tortfeasors contribute to a single loss, each is liable in solido"); *Ravo v. Rogatnick,* 70 N.Y.2d 305, 311 (1987); *Hill v. Edmonds,* 270 N.Y.S.2d 1020, 1021 (2d Dep't 1966) ("Where separate acts of negligence combine to produce directly a single injury each tortfeasor is responsible for the entire result, even though his act alone might not have caused it"); *McGraw v. Weeks,* 326 Ark. 285, 288 (1996) (upholding the application of joint and several liability based on a finding that the damage caused one injury). "If the independent tortious conduct of two or more persons is a legal cause of an indivisible injury, each person is *jointly and severally liable* for the recoverable damages caused by the tortious conduct." Restatement (Third) of Torts: Apportionment Liab. § A18 (2000) (emphasis added). "[T]here is no temporal requirement for the actions of the tortfeasors" in order for joint and several liability to attach; rather, "[t]he requirement is only that the independent tortious acts 'concur' to cause an injury that is not divisible based on the causal contribution of the tortfeasors." *Id.* § A18.

Thus, because the commingled product at issue (here, MTBE) has caused an indivisible injury, liability under the commingled product theory is appropriately joint and several. The *only* reason this Court has previously cited to support making liability several-only was the potential prejudice to defendants under certain circumstances – specifically, the potential disproportionate hardship to individual defendants when the number of tortious actors is particularly large, and "each defendant's contribution to the total volume of MTBE-containing gasoline in any particular well was very small." *In re MTBE*, 447 F.Supp.2d at 303; *In re MTBE*, 379 F.Supp.2d at 378 (S.D.N.Y. 2005), citing Restatement (Second) of Torts § 433B(2) cmt. e. But the risk of

disproportionate hardship is a more significant concern, and several liability a more apropos "fix," under the unmodified market share theory, because the majority of defendants held liable under the market share theory did *not* in fact cause the injury at issue.

The market share theory's inequities appear, and "fairness disappears[,] with the decreasing probability that any one of the defendants actually caused the injury. This is particularly true when applied to DES where the chance that a particular producer caused the injury is often very remote." *Hymowitz v. Eli Lilly & Co.*, 73 N.Y.2d 487, 506 (1989), citing *Sindell v. Abbott Labs.*, 26 Cal.3d 588, 603 (1980); *Collins v. Eli Lilly & Co.*, 116 Wis.2d 166, 184 (1984). But those inequities derive entirely from the fact that a defendant may bear "a disproportionate responsibility to compensate plaintiffs for harm [it] *may not have caused.*" *In re MTBE*, 517 F.Supp.2d 662, 670 (2007). This risk exists in a market share case, but not in a commingled product case, because only in the market share context are defendants who "did *not* cause the plaintiff's injury" unavoidably joined. *In re MTBE*, 591 F.Supp.2d 259, 275 (2008), emphasis in original. *See also Hymowitz, supra*, 73 N.Y.2d at 512-13 (holding that liability was several only where *exculpation was not an option.*) As this Court has explained the difference,

> When holding all manufacturers of the generic pill liable under market share, courts recognized that all but one of them did *not* cause the plaintiff's injury. Here, by contrast, because the gasoline that has contaminated plaintiffs' wells was undeniably the commingled product of numerous manufacturers, there is a good chance that many of the defendants held liable, if not the majority, actually *did* cause plaintiffs' injury.

*In re MTBE*, 591 F.Supp.2d at 275, emphasis in original. Therefore, *no* defendant who contributed to the *commingled* product is innocent, and the risk of unfairly assigning liability to a truly innocent defendant is nonexistent.

Where, as here, the number of tortious actors is *not* particularly large, such that the individual contribution of each actor to the indivisible harm is most likely non-trivial, this reasoning does not apply and it is no longer necessary to protect de minimis contributors from disproportionate hardship.[2] Now that the Court and the parties have the benefit of a more "fully developed evidentiary record" (*In re MTBE*, 591 F.Supp.2d. at 267), it is well within the Court's power to revisit this issue.

---

[2] Conceivably, liability under the commingled product theory may be joint and several as a general rule, and separate provisions may "mitigat[e] the possible unfairness of the rule in cases where there are many tortfeasors who may have only contributed a small amount to the whole injury." *See In re MTBE*, 447 F.Supp.2d 289, 303 n. 61 (discussing such provisions in the context of CERCLA, under which liability is joint and several despite the risk of disproportionate hardship).

### C. ExxonMobil Has Always Borne the Burden of Proving Its Share of Liability

ExxonMobil's evident surprise at the prospect of joint and several liability rings especially hollow because (1) its potential liability in relation to "downstream handlers" has always been joint and several; (2) it has always had the burden of demonstrating that it should bear less than full liability, whether liability is several only or joint and several; and (3) it has always had the burden of impleading (or pursuing contribution or indemnification from) other parties that ExxonMobil claims share responsibility for the City's injuries.

*1. ExxonMobil's liability as to non-refiner defendants, or "downstream handlers," has always been joint and several.*

This Court has already held that "defendants proven to have spilled the gasoline that caused contamination in a well may be held *jointly and severally* liable for these claims with the defendants shown under the commingled product theory to have manufactured the gasoline that spilled." *In re MTBE*, 591 F.Supp.2d at 268 (emphasis added). Thus, ExxonMobil has always been on notice that it faces joint and several liability with downstream retailers who released its commingled product that affects the City's wells.

Therefore, as to almost all other defendants "who may, under a 'joint and several' theory, bear some percentage responsibility for the alleged harm" (June 4, 2009 Sacripanti Letter at p. 5), ExxonMobil has long been on notice that its liability was joint and several. This includes all of the government entities, pipeline companies, and retailers of whom ExxonMobil claims it must *now* take discovery. (*Id.* at p. 5, n. 5.) The only defendants to whom the commingled product theory applies are the "upstream" refiners; ExxonMobil's liability as to all other defendants has always been joint and several. ExxonMobil's claim of surprise and prejudice as to non-refiner defendants, in short, is implausible.

*2. The burden of demonstrating that ExxonMobil's share is limited to a percentage of the harm, and by extension demonstrating the relative contributions of other tortfeasors (thus exculpating ExxonMobil from all or part of the liability), has always been ExxonMobil's whether liability is several or joint and several.*

Whether ExxonMobil's liability under the commingled product theory is several or joint and several, damages under the theory are "apportioned by proof of a defendant's share of the market at the time a risk of harm was created to a class of potential victims." *In re MTBE*, 379 F.Supp.2d 348, 378. Furthermore, the burden was ExxonMobil's whether it sought to fully exculpate itself, or exculpate itself only from the portion for which it was not responsible. *See In re MTBE*, 591 F.Supp.2d at 274-75 (under both market share and commingled product theories, burden of exculpation is defendants').

The exculpation provisions of both the market share theory and the commingled product theory make plain that it is a *defendant's* responsibility to prove its share. To exculpate itself, a

defendant may "prov[e] that its product was not present at the relevant time or in the relevant place" at all, and thus *fully* exculpate itself (*In re MTBE*, 379 F.Supp.2d at 378). The defendant may also show, "alternatively, *that it should only be responsible for a proportion of the damage.*" *In re MTBE*, 447 F.Supp.2d at 300, n. 41 (quoting *In re "Agent Orange" Prod. Liab. Litig.*, 597 F.Supp.2d at 819-20) (emphasis added). A defendant can show that it is only "responsible for a proportion of the damage" only by showing that *others* are responsible for the portion it disclaims. *McCormack v. Abbott Laboratories*, 617 F.Supp.1521, 1527 (D.C. Mass. 1985) (in apportioning liability among severally-liable defendants, "defendants are presumed initially to have equal shares of the market. However, *defendants* may rebut this presumption by establishing by a preponderance of the evidence *their individual market share* of DES in the plaintiff's particular geographic market during the time period in question.") (emphasis added) (citing the approach taken by the court in *Martin v. Abbott Laboratories*, 102 Wash.2d 581 (1984)); *Hymowitz v. Eli Lilly*, 73 N.Y.2d at 510 ("[e]ach defendant then has the opportunity to rebut this [equal market share] presumption by showing that its actual market share was less than presumed").

Under General Obligations Law § 15-108, defendants' burden is no different. *See Hyosung v. Sumagh,* 25 F.Supp.2d 376, 387 (SDNY 2008) ("A defendant carries the burden of establishing the equitable shares attributable to a settling tortfeasor when seeking to reduce its own responsibility for damages"), *citing In re Joint Southern and Eastern Dist. Asbestos Litig.*, 741 F.Supp. 50, 51, n. 2 (E.D.N.Y.1990); *Bigelow v. Acands, Inc.*, 196 A.D.2d 436, 601 N.Y.S.2d 478, 480 (1st Dep't 1993). Section 15-108 merely creates the same incentive for jointly and severally liable defendants to pursue discovery regarding other parties' shares that a severally liable defendant *always* had. "[W]hile the general purpose of General Obligations Law § 15-108(a) is to encourage settlements, the statute is concerned as well with assuring that a nonsettling defendant does not pay more than its equitable share." *Williams v. Niske*, 81 N.Y.2d 437, 443 (N.Y. 1993). Section 15-108 simply codifies that under New York law, a nonsettling tortfeasor bears the burden of establishing the fault of settling tortfeasors for purposes of apportionment. *Schipani v. McLeod*, 541 F.3d 158, 163-164 (2d Cir. 2008), *citing Bigelow v. Acands, Inc.*, 196 A.D.2d 436, 438, 601 N.Y.S.2d 478 (1st Dep't 1993) ("[Nonsettling defendant] bore the burden of establishing the equitable shares attributable to the settling defendants *for purposes of reducing the amount of [its] own responsibility for the damages*") (emphasis added). Under both several liability and joint-and-several liability, therefore, it is – and has always been – ExxonMobil's burden to establish other tortious participants' respective shares of liability in order to prove the relative magnitude of its own.

A defendant who is only severally liable with other participants has a very great interest in ensuring that liability is accurately apportioned according to those participants' respective shares, so that it can exculpate itself from the entire portion of damages for which others were responsible. A defendant who is jointly and severally liable, on the other hand, is liable for the entire amount of damages, and – if held responsible for the entire amount – may wait until after judgment to pursue contribution claims from other liable parties. Exxon, as a refiner itself, has far greater access to information on refiner-related allocation issues than the City does, and

therefore the burden is not only correctly Exxon's as a matter of law, but not prejudicial to Exxon.

3. *The burden of "implead[ing] other responsible parties" or seeking contribution from them has always been ExxonMobil's.*

This Court expressly placed the burden of impleading other responsible tortfeasors on the defendants under the commingled product theory, and required plaintiffs only to "sue *any* entity that contributed to the commingled product that caused their injury." *See In re MTBE*, 447 F.Supp.2d at 301-302, citing *In re Agent Orange Prod. Liab. Litig.*, 597 F.Supp. 740, 828 (E.D.N.Y. 1984). As discussed above, ExxonMobil had every reason to implead and determine the participatory shares of other refiners, even if it believed liability to be several-only: doing so was the only way ExxonMobil could exculpate itself from responsibility for those refiners' shares. *See Hymowitz v. Eli Lilly*, 73 N.Y.2d at 510 n. 1 (discussing the Washington court's approach in *George v. Parke-Davis*, 107 Wash.2d 584 (1987), under which "the court placed the burden upon appearing defendants to prove the market share of the absent ones" to ensure fairness if not all defendants are available).

Whether ExxonMobil's liability is several or joint and several, New York law liberally provides for contribution claims. *See Board of Educ. v. Sargent, Webster, Crenshaw & Folley*, 71 N.Y.2d 21, 27-28 (1997) (contribution "may be invoked against concurrent, successive, independent, alternative, and even intentional tortfeasors"); *Taft v. Shaffer Trucking, Inc.*, 383 N.Y.S.2d 744, 747 (4th Dept. 1976) (affirming intentional tortfeasor's right to bring contribution claim against allegedly negligent third party). To the extent ExxonMobil is entitled to contribution from non-parties, it is free to pursue its contribution claims in a separate proceeding. Whether a court adjudicating ExxonMobil's contribution claims in that separate proceeding deems liability under the commingled product theory several or joint and several, ExxonMobil's responsibility to demonstrate that its share of liability was limited remains the same.

### D. Punitive Damages Are Appropriate Under the Commingled Product Theory Regardless of Whether Liability is Several or Joint and Several.

Punitive damages are appropriate under the commingled product theory not because liability is several, but because the harm is indivisible and *all* tortfeasors contributed to the harm. The section of the City's brief in opposition to ExxonMobil's motion *in limine* to bar punitive damages that ExxonMobil highlights in its letter simply reiterates the "disproportionate hardship" argument discussed above; *i.e.*, making liability several is just one way of minimizing the risk that *de minimis* contributors will be unfairly affected. Where, as here, there are only a few tortfeasors – all of whom, as discovery has shown, contributed non-trivially to the harm – rather than hundreds, this risk is virtually non-existent, and it is not necessary to make liability several-only to protect against that risk.

Thus, punitive damages and joint and several liability in the commingled product context both arise from the same characteristics of the commingled product theory: the harm is unitary, and no defendant is innocent of causing it. Punitive damages are appropriate, not – as ExxonMobil claims – *because* liability is joint and several, but *for the same reasons* that liability is joint and several. No further briefing on punitive damages is necessary as a result of this development.

In short, the Court need not reopen fact or expert discovery to allow ExxonMobil to take exculpatory discovery that it should have taken whether liability is several or joint and several. ExxonMobil has always had the opportunity to attempt to implead third parties and bring contribution claims. And supplemental briefing on the availability of punitive damages is not warranted under these circumstances.

Respectfully submitted,

Victor M. Sher

Cc: All Counsel via LNFS