

Victor M. Sher
vsher@sherleff.com
415.348.8300 x100

June 17, 2009

*Via Hand-Delivery and Electronic Mail*

The Honorable Shira A. Scheindlin
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1620
New York, New York 10007-1312

      Re:    *City of New York v. Amerada Hess Corp., et al.,* Case No. 04 CV 3417
              *In re MTBE Products Liability Litigation*, MDL 1358

Dear Judge Scheindlin:

This Court's Opinion of June 9, 2009 on punitive damages ("6/9/09 Opinion") left open "the issue of which party bears the burden of proof for apportionment" (6/9/09 Opinion at p. 20, n. 56). As we explained briefly in our letter of June 8, 2009, and in more detail below, that burden rests squarely on ExxonMobil regardless of whether liability is joint and several or only several. More fundamentally, the Court should clarify now that liability under the commingled product theory for a non-trivial tortfeasor is in fact joint and several, before the Court, the jury and the parties face this key issue at trial. And even though ExxonMobil bears the burden of proof on the issue of apportionment whether liability under the commingled product theory is several-only or joint and several, the mechanics underlying the assignment of that burden will vary.

Whether liability is several or joint and several remains very much an open issue.[1] At the hearing on May 28, 2009, in the course of discussing commingled product liability, Mr. Sacripanti asked, "Is liability several or joint and several? That's a question." (5/28/09 Transcript, p. 11, lines 5-6.) The Court replied, "Yes, that's a question," (*Id.* at p. 11, line 7) and added, "my thinking now is that it is joint and several, because it is a traditional form of liability." (*Id.* at p. 13, lines 14-16.) In the 6/9/09 Opinion, the Court mentioned its prior statements that "liability is several only" in the commingled-product context (6/9/09 Opinion at 22), but acknowledged the City's pending motion in limine arguing that joint and several liability

---

[1] It is entirely appropriate for the Court to address this issue now. See Fed R. Civ. Pro. 54(b) (allowing changes to decisions "at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties"); *In re Solomat Partners, L.P.*, 231 B.R. 149, 156 (2d Cir. BAP 1999) (same); *Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001) (same). No matter what the Court determines, there is no undue prejudice to ExxonMobil because, as explained below, it bears the burden of apportionment under either outcome.

450 Mission Street, Suite 400 • San Francisco, California 94105  **tel** (415) 348-8300  **fax** (415) 348-8333

should apply to at least some of these claims, without ruling on that motion. *Id.* at 22, n. 58 (referring to Plaintiff's Motion in Limine No. 6 to Exclude Evidence and Argument Concerning the liability of Non-Defendant Owners/Operators of Underground Storage Tanks).

The proper answer is that liability under the commingled product theory should be joint and several, especially given the current record in this case. This conclusion flows directly from the indivisible nature of the harm, the relatively small number of refiner/manufacturer defendants, and the likelihood that each of those defendants – including, specifically, ExxonMobil – contributed non-trivially to the commingled product that caused the City's indivisible injury.

The Court need not address in this case whether liability under the commingled product theory would necessarily be joint and several under all circumstances. In the past, the Court has indicated that liability should not be joint and several "when 'there [are] so large a number of actors, each of whom contribute[d] a relatively small and insignificant part of the total harm, [such that] the application of the rule [of joint and several liability] may cause disproportionate hardship to defendants.'" *In re MTBE Prods. Liab. Litig. (In re MTBE)*, 447 F.Supp.2d 289, 301 (S.D.N.Y. 2006), quoting Restatement (Second) of Torts § 433B(2) cmt. e. Given the current state of the record in this case, liability under the commingled product theory will be imposed at trial on a single defendant that the jury may well determine contributed a significant part of the total harm, and so the protection afforded to hypothetical defendants who contributed insignificantly to the total harm has become both unnecessary and prejudicial to the City.

The burden of apportioning liability to ExxonMobil rests with ExxonMobil under all liability schemes, but the operation of that burden will vary depending on whether liability is several-only or joint and several. ExxonMobil first bears the burden of exculpating itself fully by "proving that its product was not present at the relevant time or in the relevant place, and therefore could not be part of the new commingled or blended product." *In re MTBE,* 379 F.Supp.2d 348, 378 (S.D.N.Y. 2006). If the jury finds that ExxonMobil's product has contributed to the City's injury, it can escape joint and several liability only by demonstrating that its contribution to the City's injury was insignificant, as explained in greater detail below. If liability is several and ExxonMobil is liable at least in part, ExxonMobil bears the burden of exculpating itself from those portions of the City's injury for which it was not responsible. And if ExxonMobil is a non-trivial contributor to the indivisible harm and its liability is joint and several with other refiner/manufacturer defendants, ExxonMobil still bears the burden of showing that its liability should be offset by the amount of any settlement under N.Y. G.O.L. § 15-108, as well as the burden of claiming contribution from other responsible parties under N.Y. C.P.L.R. § 1401.

## LIABILITY UNDER THE COMMINGLED PRODUCT THEORY SHOULD BE JOINT AND SEVERAL FOR SIGNIFICANT CONTRIBUTORS, AS IT IS UNDER THE CONCURRENT WRONGDOING THEORY

This Court has consistently described the commingled product theory as a hybrid of the concurrent wrongdoing theory (under which liability is joint and several) and the market share theory (under which liability is several). A plaintiff applying the concurrent wrongdoing theory must prove "(1) an indivisible injury and (2) that all defendants sought to be held liable actually caused the injury," and "(3) that it would not violate traditional notions of fairness and justice to hold all defendants jointly and severally liable for the injury." *In re MTBE*, 447 F.Supp.2d at 297, 299. The chief distinction between the commingled product theory and the concurrent wrongdoing theory is that "cases applying concurrent wrongdoing typically involve a small number of tortfeasors, such that the imposition of joint and several liability does not cause disproportionate hardship to any defendant." *Id.* at 298-99. And "[a]lthough the concurrent wrongdoing theory is well-suited to torts caused by a commingled product," (6/9/09 Opinion at 8), the perceived risk of holding defendants liable whose "contribution to the total volume of MTBE-containing gasoline in any particular well was very small" (*In re MTBE*, 447 F.Supp.2d at 303) necessitated the creation of the commingled product theory, which incorporates aspects of the market share theory that "offer[] an equitable solution to the apportionment of damages." (6/9/09 Opinion at 8).

Where, as here, a small number of tortfeasors – fewer than 20 in the refiner/manufacturer category[2] – caused the indivisible injury at issue, there is no reason liability under the commingled product theory should be anything other than joint and several, as it is under the concurrent wrongdoing theory. ExxonMobil, "the last defendant in the room," (5/28/09 Transcript, p. 34, line 16) is susceptible to joint and several liability, moreover, because other defendants who might have been found to be trivial or *de minimis* contributors to the harm have already settled.

As this Court stated in its June 9 Opinion, it is the City's burden "to prove that the defendant caused or contributed to the injury," (6/9/09 Opinion at 17) and the jury will be "carefully instructed that it cannot find a defendant liable unless it finds that *that* defendant's MTBE was actually 'present in a completely commingled or blended state at the time and place that the harm

---

[2] Because only refiner/manufacturer defendants contributed MTBE-containing gasoline to the commingled product that caused the City's injury, refiner/manufacturer defendants – i.e., "defendants shown under the commingled product theory to have manufactured the gasoline that spilled" (*In re MTBE*, 591 F.Supp.2d 259, 268 (S.D.N.Y. 2008)) – are the only ones to whom this discussion of liability applies. As to non-refiner/manufacturer defendants, the Court has already held that ExxonMobil is jointly and severally liable. *Id.* at 268 ("defendants proven to have spilled the gasoline that caused contamination in a well may be held *jointly and severally* liable for these claims with the defendants shown under the commingled product theory to have manufactured the gasoline that spilled.") (emphasis added).

or risk of harm occurred'" (*Id.* at 17-18, quoting *In re MTBE*, 447 F.Supp.2d at 300). Given that burden and instruction, joint and several liability should follow – unless the jury also finds that *that* defendant made only a *de minimis* contribution to the commingled product.

This is exactly how courts have handled the issue of joint and several versus several only liability in the analogous context of CERCLA liability.[3] CERCLA cases typically involve very large numbers of contributors to a hazardous waste site. *See United States v. Burlington N. & Santa Fe Ry. Co.*, 502 F.3d 781, 796 (9th Cir. 2007) ("[t]ypically . . . there will be numerous hazardous substance generators or transporters who have disposed of wastes at a particular site") (quotation omitted); *United States v. Sunoco, Inc.*, 501 F. Supp. 2d 656, 662 (E.D. Pa. 2007) (where "the plaintiff has alleged that one tract of land was polluted by numerous polluters who cumulatively added to a common, indivisible physical injury," the fact "that the violations occurred sequentially rather than simultaneously does not bar joint tortfeasor status where the acts combined as substantial factors to form one physical injury"). Even where multiple polluters are present, all defendants are jointly and severally liable when the injury is indivisible (as it is here). *See, e.g., Michie v. Great Lakes Steel Div. Nat'l Steel Corp.*, 495 F.2d 213, 215-18 (6th Cir. 1974); *City of Tulsa v. Tyson Foods, Inc.*, 258 F.Supp. 2d 1263, 1297 (N.D. Okla. 2003) ("where there are multiple tortfeasors and the separate and independent acts of codefendants 'concurred, commingled and combined' to produce a single indivisible injury for which damages are sought, each defendant may be liable even though his/her acts alone might not have been a sufficient cause of the injury"), *vacated by settlement, City of Tulsa v. Tyson Foods, Inc.*, 2003 U.S. Dist. LEXIS 23416 (N.D. Okla. July 16, 2003); *Velsicol Chem. Corp. v. Rowe*, 543 S.W.2d 337 (Tenn. 1976); *Landers v. East Texas Salt Water Disposal Co.*, 248 S.W.2d 731 (Tex. 1952); *see also In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 823 (E.D.N.Y. 1984) ("In the pollution and multiple crash cases, the degree to which the individual defendant's actions contributed to an individual plaintiff's injuries is unknown and generally unascertainable," yet "all defendants have been held liable").

Nonetheless, to protect insignificant contributors from unfair or disproportionate liability, CERCLA allows a defendant to "avoid joint and several liability for response costs in a contribution action under § 9613(f) if it demonstrates that its share of hazardous waste deposited at the site constitutes no more than background amounts of such substances in the environment and cannot concentrate with other wastes to produce higher amounts." *Acushnet Co. v. Mohasco Corp.*, 191 F.3d 69, 77-78 (1st Cir.1999). In *U.S. v. Alcan Aluminum Corp.*, 990 F.2d 711 (2d Cir. 1993), the Second Circuit allowed a defendant to escape liability if "it either succeeds in proving that its [waste], when mixed with other hazardous wastes, did not contribute to the

---

[3] As the Supreme Court explained in *Burlington Northern and Santa Fe Ry. Co. v. U.S.*, ___ U.S. ___, 129 S.Ct. 1870, 1880-81 (May 4, 2009), the scope of liability under CERCLA is, as it is in this case, "determined from traditional and evolving principles of common law," *quoting U.S. v. Chemdyne Corp.*, 572 F.Supp. 802, 807 (D.C. Ohio 1983), and the Restatement (Second) of Torts, on which this Court has also relied, is the starting point for apportionment analyses in CERCLA cases. *Burlington Northern* at 1881.

release and cleanup costs that followed, or contributed at most to only a divisible portion of the harm." *Id.* at 722; *see also PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 616 (7th Cir.1998) (a party's "spills may have been too inconsequential to affect the cost of cleaning up significantly") (Posner, J.), *cert. denied*, 525 U.S. 1104 (1999); *O'Neil v. Picillo*, 883 F.2d 176, 183 (1st Cir. 1989) (same).

This approach stands in stark contrast to the several-only liability imposed in all circumstances by a market share approach. Under the market-share theory, liability is limited to a defendant's share of the relevant market. *Brown v. Superior Court (Abbott Laboratories)*, 44 Cal.3d 1049 (1988). This is because, in cases involving diethylstilbestrol (DES), "the imposition of joint liability among defendant manufacturers in a market share action would frustrate [the] goal of achieving a balance between the interests of DES plaintiffs and manufacturers of the drug." *Id.* at 1075. The manufacturer defendants in a market-share case are liable despite the fact that "all but one of them did *not* cause the plaintiff's injury." *In re MTBE*, 591 F.Supp.2d at 275. In fact, "the chance that a particular producer caused the injury is often very remote." *Hymowitz v. Eli Lilly & Co.*, 73 N.Y.2d 487, 506 (1989), citing *Sindell v. Abbott Labs.*, 26 Cal.3d 588, 603 (1980); *Collins v. Eli Lilly & Co.*, 116 Wis.2d 166, 184 (1984). Therefore, a *market-share* defendant may bear "a disproportionate responsibility to compensate plaintiffs for harm [it] *may not have caused.*" *In re MTBE*, 517 F.Supp.2d 662, 670 (S.D.N.Y. 2007).

But under the commingled product theory, "unlike the market-share theory, no *presumption* of causation applies." (6/9/09 Opinion at 18, emphasis in original.) In other words, "it is not enough for the City to prove that 'gasoline from *many* refiners and manufacturers' was present in the commingled product," but rather that MTBE from the specific defendant held liable was actually present in the commingled product. *Id.* at 18-19, emphasis in original. The City must show "that each defendant *contributed-in-fact* to the injury." *Id.* at 19, emphasis in original. Just as this showing "extinguishes the inequity of exposing a defendant to punitive damages that is not shown to have contributed to the injury," (*id.* at 20) it extinguishes the inequity of exposing a defendant to joint-and-several liability. *See U.S. v. Conservation Chemical Co.* 619 F.Supp. 162, 214 (D.C.Mo. 1985) ("[t]he application of the principle of joint and several liability where there is indivisible injury resulting from multiple causes has been applied in many contexts, without constitutional challenge), *citing, e.g., Mosby v. Manhattan Oil Co.*, 52 F.2d 364 (8th Cir.1931); *Manhattan Oil Co. v. Mosby*, 72 F.2d 840 (8th Cir.1934); *Edmonds v. Campagnie Generale Transatlantique*, 443 U.S. 256, 260-261 (1979); *Texas Industries Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630 (1980).

Furthermore, because defendants can exculpate themselves, it does not violate traditional notions of fairness and justice to hold all defendants jointly and severally liable. *See also Hymowitz, supra,* 73 N.Y.2d at 512-13 (holding that liability was several where *exculpation was not an option*.) Moreover, given that "each refiner or manufacturer is deemed to have caused the harm," (*In re MTBE*, 447 F.Supp.2d at 301) and the harm is "an indivisible injury," (*In re MTBE*, 379 F.Supp.2d at 377-378), the liability for that harm is likewise indivisible, and cannot be fairly severed into portions for each defendant.

Finally, limiting liability to several-only in the commingled-product context would work an injustice on an injured plaintiff by tending to limit a plaintiff's recovery to less than 100%. *See Brown v. Superior Ct.*, 44 Cal.3d at 1072-73 (noting that where a manufacturer's liability is several only and limited to market share, unless all manufacturers in the entire market are joined, plaintiff will recover less than 100% of its damages). The *Hymowitz* court also recognized that "as a practical matter, [market-share, several-only liability] will prevent some plaintiffs from recovering 100% of their damages. However, *we eschewed exculpation* to prevent the fortuitous avoidance of liability, and thus, equitably, we decline to unleash the same forces to increase a defendant's liability beyond its fair share of responsibility." *Hymowitz, supra,* at 513, emphasis added. Here, however, exculpation is available to ensure that defendants who did not contribute to the commingled product at issue are not held liable unfairly.

This Court has explained that the concurrent wrongdoing theory, which is otherwise "well-suited to torts caused by a commingled product" (6/9/09 Opinion at 8) required modification only "given the likelihood that 'each defendant's contribution to the total volume of MTBE-containing gasoline in any particular well was very small.'" *Id.*, citing *In re MTBE,* 379 F.Supp.2d at 378. At this stage of the case, the balance of equities has clearly tipped in the other direction: Since only ExxonMobil remains, and its contribution to the total volume of MTBE-containing gasoline is more than merely *de minimis*, it would be fundamentally unfair *not* to hold ExxonMobil jointly and severally liable for the indivisible injury to which it substantially contributed.

**THE BURDEN OF PROOF ON APPORTIONMENT RESTS WITH EXXONMOBIL**

Fundamentally, the burden of demonstrating the amount of liability to be apportioned to ExxonMobil – if apportionment is possible – or to be offset, always rests with ExxonMobil whether liability is several or joint and several. As this Court has said, "the plaintiff can only go so far because, as your experts have said over the years, you can't disentangle the molecules" (5/28/09 Transcript, p. 12, lines 6-8). The burden is on ExxonMobil to tell the jury that the City "took you to a point, but now we can show you that while it got to New Jersey, that's it. It never got to the City of New York." (*Id.*, p 12, lines 20-23.) Thus, ExxonMobil's first task under the commingled product theory is to attempt to prove "that its product was not present at the relevant time or in the relevant place" (*In re MTBE,* 447 F.Supp.2d at 300) and thus exculpate itself fully. The burden of exculpation is ExxonMobil's. *See In re MTBE,* 591 F.Supp.2d at 274-75 (under both market share and commingled product theories, burden of exculpation is defendants').

Second, the burden of establishing whether ExxonMobil's contribution to the City's injury was "small and insignificant" (*In re MTBE,* 379 F.Supp.2d at 378) also rests with ExxonMobil. In the CERCLA context, courts have held that a tortfeasor's fair share of the response costs may be limited if its responsibility for the harm was "inconsequential." *See PMC, Inc. v. Sherwin-Williams Co.,* 151 F.3d 610, 616 (7th Cir.1998) (a party's "spills may have been too inconsequential to affect the cost of cleaning up significantly") (Posner, J.), *cert. denied,* 525

U.S. 1104 (1999); *O'Neil,* 883 F.2d at 183 (same). But this burden also rests on ExxonMobil. Courts applying CERCLA have "declined to place the burden of showing that defendants are "substantial" contributors on [plaintiff], recognizing Congress' concern that cleanup efforts not be held hostage to the time-consuming and almost impossible task of tracing all of the waste found at a dump site." *O'Neil,* 883 F.2d at 179, n. 4. The same is true here. It would be unfair to place the burden on the plaintiff to establish the substantiality of an individual defendant's commingled contribution to an injury.

Courts have declined to identify a bright dividing line between a significant and insignificant contribution to an injury. This consideration is equitable rather than strictly percentage-based. Courts applying CERCLA have noted that the law does not specify a threshold or *de minimis* amount. *United States v. Carolawn Company,* 14 Env'tl L.Rep. 20696, 20697 n. 3 (D.S.C. June 15, 1984) ("Presumably, if Congress has intended the definition of hazardous substances to be contingent upon the presence of a certain amount or concentration of a hazardous substance, it would have so provided."); *Acushnet Co. v. Mohasco Corp.* 191 F.3d 69, 77 (C.A.1 1999) ("To the extent that the district court held that some minimal quantity of hazardous waste must be involved before a defendant may be held to have "caused" the expenditure of response costs, it was mistaken."); *O'Neil,* 883 F.2d at 179 n. 4 (expressly rejecting, in a related context, the argument that one must demonstrate that defendant was a "substantial" cause of the contamination before CERCLA liability attaches). The substantial factor test has a qualitative element, and does *not* depend solely on the numerical percentage of fault or of harm caused. *See, e.g., Rothberg v. Reichelt,* 742 N.Y.S.2d 150, 152 (N.Y. App. Div. 2002) ("Whether the negligence of a particular party was a substantial factor in causing an injury does not depend on the percentage of fault that may be apportioned to that party."); *O'Connor v. Raymark Indus.*, 518 N.E.2d 510, 513 (Mass. 1988) ("The substantial factor formulation is one concerning legal significance rather than factual quantum."). In the same vein, CERCLA courts are "free to allocate responsibility according to any combination of equitable factors [they] deem appropriate," and are not limited to a defendant's strict numerical share of the market. *O'Neil v. Picillo,* 883 F.2d at 183. *Accord FMC Corp. v. Aero Indus., Inc.,* 998 F.2d 842, 846-47 (10th Cir.1993); *Environmental Transp. Sys., Inc. v. ENSCO, Inc.,* 969 F.2d 503, 509 (7th Cir.1992). The same reasoning applies here: whether ExxonMobil's contribution to the City's harm is significant will depend not only on its percentage of the market, but on equitable factors as well.

Third, if ExxonMobil's contribution is indeed insignificant, ExxonMobil will still bear the burden of exculpating itself from that portion of the injury for which it was not responsible – i.e., by apportioning the liability of all other refiner/manufacturer defendants to those defendants. A defendant can show that it is only "responsible for a proportion of the damage" by showing that *others* are responsible for the portion it disclaims. *See In re MTBE*, 447 F.Supp.2d at 300, n. 41 (quoting *In re "Agent Orange" Prod. Liab. Litig.,* 597 F.Supp.2d at 819-20, holding that a defendant may exculpate itself by showing "alternatively, that it should only be responsible for a proportion of the damage.") If ExxonMobil's liability is insignificant and several (as in the DES and other market-share cases), it will still bear the burden of establishing its own market share. *McCormack v. Abbott Laboratories*, 617 F.Supp.1521, 1527 (D.C. Mass. 1985) (in apportioning

market share among severally-liable defendants, "defendants are presumed initially to have equal shares of the market. However, *defendants* may rebut this presumption by establishing by a preponderance of the evidence *their individual market share* of DES in the plaintiff's particular geographic market during the time period in question.") (emphasis added) (citing the approach taken by the court in *Martin v. Abbott Laboratories*, 102 Wash.2d 581 (1984)); *Hymowitz v. Eli Lilly*, 73 N.Y.2d at 510 ("[e]ach *defendant* then has the opportunity to rebut this [equal market share] presumption by showing that its actual market share was less than presumed") (emphasis added). Ultimately, allocation of damages is a jury question that may take into account equitable factors in addition to percentage market share. *See Kreppein v. Celotex Corp.*, 969 F.2d 1424, 1426-27 (2d Cir. 1992) (under New York law, "liability should be apportioned according to relative degrees of fault for the injury, which may include not only the strength of the causal link but also the magnitude of the fault,") (*citing Garrett v. Holiday Inns, Inc.*, 58 N.Y.2d 253, 258 (1983) ("Principles allowing apportionment among tortfeasors reflect the important policy that responsibility for damages to an injured person should be borne by those parties responsible for the injury, in proportion to their respective degrees of fault."); *Dufur v. Lavin*, 476 N.Y.S.2d 389, 395 (1984) (percentage allocation of liability is generally a matter for the jury), aff'd, 65 N.Y.2d 830, 493 N.Y.S.2d 123 (1985)).

But if ExxonMobil is not a trivial contributor to the harm and the harm is indivisible, its liability is fairly joint and several, and the question of apportionment becomes an issue only insofar as ExxonMobil may be entitled to offset the total liability for the City's injury by the amount already received in settlement with other potentially liable refiner/manufacturer defendants. The commingled product theory rests on the proposition that the City's injury is indivisible. As the Supreme Court explained in *Burlington Northern and Santa Fe Ry. Co. v. US.*, ___ U.S. ___, 129 S.Ct. 1870, 1881 (May 4, 2009), "[n]ot all harms are capable of apportionment.... When two or more causes produce a single, indivisible harm, 'courts have refused to make an arbitrary apportionment for its own sake, and each of the causes is charged with responsibility for the entire harm.' Restatement (Second) of Torts § 433A, Comment *i*, p. 440 (1963-1964)." Here, where the City's harm is indivisible, ExxonMobil should be charged with responsibility for the entire harm.

In the same opinion, the Supreme Court explicitly assigned "the burden of proving that a reasonable basis for apportionment exists" to *defendants* (*id.* at 1881), reaffirming this Court's point if "one or more of the actors seeks to limit his liability on the ground that the harm is capable of apportionment among them, the burden of proof as to the apportionment is upon each such actor." *In re MTBE*, 447 F.Supp.2d at 297, citing Restatement (Second) of Torts § 433B(2). "[W]ithout this device both defendants will be silent, and plaintiff will not recover." *Hymowitz*, 73 N.Y.2d at 505. This is consistent with analogous CERCLA cases involving many jointly-and-severally-liable defendants. The Second Circuit, in *United States v. Alcan*, *supra*, 990 F.2d at 722, relied on common law principles relating to joint tortfeasors in stating that a CERCLA defendant "may escape any liability for response costs if it either succeeds in proving that its [wastes], when mixed with other hazardous wastes, did not contribute to the release and the clean-up costs that followed, or contributed at most to only a divisible portion of the harm." *Id.*

at 722.  The defendant, however, "bears the ultimate burden of establishing a reasonable basis for apportioning liability." *Id.*

Finally, if ExxonMobil is jointly and severally liable for the City's indivisible injury, it bears the burden of showing that its liability should be offset by the equitable share of damages borne by other jointly and severally liable refiner/manufacturer defendants who settled with the City.  *See Hyosung v. Sumagh,* 25 F.Supp.2d 376, 387 (S.D.N.Y. 2008) ("A defendant carries the burden of establishing the equitable shares attributable to a settling tortfeasor when seeking to reduce its own responsibility for damages"), *citing In re Joint Southern and Eastern Dist. Asbestos Litig.,* 741 F.Supp. 50, 51, n. 2 (E.D.N.Y.1990); *Bigelow v. Acands, Inc.,* 196 A.D.2d 436, 601 N.Y.S.2d 478, 480 (1st Dep't 1993); *see also Schipani v. McLeod,* 541 F.3d 158, 163-164 (2d Cir. 2008) ("[Nonsettling defendant] bore the burden of establishing the equitable shares attributable to the settling defendants for purposes of reducing the amount of [its] own responsibility for the damages").

Thus, the burden of apportionment rests with ExxonMobil in any event, but the operation of that burden at trial will depend on how this Court answers the question of whether liability under the commingled product theory, for a significant contributor to the City's injury, is several-only or joint and several.  For the reasons stated above, ExxonMobil's liability under the commingled product theory is properly joint and several, and ExxonMobil bears the burdens of exculpation, apportionment, and offset.

Respectfully submitted,

Victor M. Sher

Cc:  All Counsel via LNFS