


25819067

Jun 24 2009
6:34PM

THE CITY OF NEW YORK
LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

**MICHAEL A. CARDOZO**
*Corporation Counsel*

**William Plache**
Phone: (212) 788-1574
Fax: (212) 788-1619
E-mail: wplache@law.nyc.gov

June 24, 2009

By E-Mail

Hon. Shira A. Scheindlin
United States District Judge
Southern District of New York
500 Pearl Street, Room 1620
New York, New York 10007

      Re:   *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*,
              MDL No. 1358, Master File No. 1:00-1898 (SAS)
              *City of New York v. Amerada Hess, et al.*, 04 CV 3417 (SDNY)

Dear Judge Scheindlin:

      I write in response to the June 23, 2009 letter from Peter Sacripanti to Your Honor raising a question as to whether the City of New York ("City") is the proper party in this case. As demonstrated below, the answer is clearly yes.

      Mr. Sacripanti's letter, submitted on behalf of the ExxonMobil defendants ("ExxonMobil"), is based on a fundamental misunderstanding of the role of the City with respect to its water supply system, and the roles of the New York City Water Board ("Water Board") and the New York City Municipal Finance Authority ("Water Authority"). Moreover, Mr. Sacripanti claims that the letter, submitted less than four weeks before trial is scheduled to begin, is based on "recently discovered" information about the interests of the Water Board and Water Authority. This assertion is contradicted by the fact that defendants served subpoenas seeking documents related to MTBE from the Water Authority and Water Board on October 30, 2008, and discussed the roles of the Water Authority and Water Board in one of their own expert reports. ExxonMobil was thus well aware of the issues raised in this letter eight months ago, at the latest. The issues raised in Mr. Sacripanti's ill-timed letter, which are based on a flawed legal analysis, should be summarily rejected.

The City of New York Is the Only Necessary Plaintiff:

ExxonMobil attempts to obfuscate and diminish the role of the City with respect to the water supply system, and ponders whether the Water Board and Water Authority have an interest making them necessary parties to this litigation. Defendant's ill-conceived speculation is easily refuted by the following facts. First, the City owns the water supply system, including the Jamaica Groundwater System at issue in this case. See Giuliani v. New York City Municipal Water Finance Authority et al., 90 N.Y.2d 27 (1997) (rejecting the City's proposed transfer of ownership of the water supply system to the Water Board). Thus, although the Public Authorities Law authorizes the City to transfer ownership of the water supply system to the Water Board (PAL § 1045-h), the City has not done so.

Moreover, the City, through the New York City Department of Environmental Protection ("DEP"), is responsible for all aspects of operating and maintaining, and capital improvements to, the water supply system. See New York City Charter § 1403. Pursuant to subdivision (a)(1) of that section:

> The commissioner (of DEP) shall have charge and control of: (a) All structures and property connected with the supply and distribution of water for public use not owned by private corporations …; (b) Furnishing the water supply and maintaining its quality, and of the investigation for and the construction of all works necessary to deliver the proper and required quality of water with ample reserve for contingencies and future demands…

Thus it is the City and DEP that have studied, and will continue to study the impacts of the contamination of the groundwater system with MTBE, will oversee the design and construction of the capital projects to treat that contamination, and will operate and maintain those treatment facilities and the groundwater resources.

That these obligations continue is confirmed by the Agreement of Lease between the City and the Water Board, dated as of July 1, 1985, a copy of which is attached to the Sacripanti letter as Exhibit E. That Agreement specifically states the City's obligation to administer and operate the water supply "in good and safe order and condition and make all repairs therein." Lease Agreement, Sacripanti Exhibit E, section 4.1. If further provides that "[t]he Commissioner of Environmental Protection of the City shall continue to exercise his powers pursuant to the laws of the United States, the State of New York, and local law to administer, operate, maintain and regulate the use of the System…" Lease Agreement, section 4.3.

Consistent with the terms of the Charter and Lease Agreement, it is the City and its agency DEP, and not the Water Board, that are held responsible for the water supply system, including the groundwater system, by federal and state regulators. It is DEP that holds the permits from the State needed to operate the groundwater supply system. See Water Supply Permit for Groundwater Water Supply, issued by New York State Department of Environmental

Conservation to NYCDEP, effective January 1, 2007, No. NYC_2_008988 - 8997. Similarly, it is the City that is the named recipient of the United State Environmental Protection Agency's Filtration Avoidance Determination ("FAD"), which authorizes the City to provide water from its upstate surface water supply systems without filtration, in recognition of the City's extensive programs to protect that water supply. Consistent with section 1403 of the Charter, DEP is the entity that is responsible for the implementation of those programs, which include capital projects and operation and maintenance. Finally, it is the City and DEP, and not the Water Board, that are named in the EPA and State Consent Decree governing construction of the Croton Filtration Plant. See Consent Decree, United States of America v. City of New York and New York City Dep't of Envt'l. Protection, CV 97-2154, (EDNY, 11/25/1998).

The Water Authority and Water Board, in contrast, have no articulable interest in this litigation, but rather, are strictly involved in financing of the water and sewer system. Both entities were created in 1984 by the New York City Municipal Water Finance Authority Act, codified at sections 1045 and 1046 of the Public Authorities Law. The Water Authority finances improvements to the system through the sale of revenue bonds secured by water and sewer charges. See PAL § 1045-d. The Water Board leases the system from and makes annual rent payments to the City under a the Lease Agreement and levies and collects water and sewer charges from the users of the system. See PAL § 1045-g; see also Lease Agreement, Exhibit E to the Sacripanti letter, at section 2.1(b).[1]

Both the statute and the Lease Agreement recognize that the Water Board has no cognizable financial interest in the rates it collects, or for the purposes of this litigation, damages received from ExxonMobil. Instead, the relevant portions of the statute provide that the water board shall set rates sufficient to "(i) pay to the authority … and amount sufficient for the purposes of paying the principal of and the interest on the outstanding notes or bonds of the authority … and … (ii) pay to the city, in accordance with the agreement, *an amount sufficient for the purpose of paying the costs of administering, maintaining, repairing and operating and the cost of constructing capital improvements to the water system…*" PAL § 1045-j (emphasis added). This provision is repeated in sections 8.1(a) and (b) of the Lease Agreement. See Exhibit E to the Sacripanti letter at p. 10. Section 8.1(b) of the Lease Agreement specifically presumes that it is the City that will receive payment or reimbursement for capital costs from outside parties, and is thus the appropriate party in this litigation That section provides that the Board shall pay to the City:

> "[a]n amount sufficient to reimburse the City for capital Costs … incurred by the City for the construction or Water Projects *which are not paid or reimbursed from any other source,* to the extent requested by the City, including, without limiting the generality of the foregoing, the payment of any

---

[1] Pursuant to the Lease Agreement, the Water Board has hired the City's Department of Finance and NYCDEP to provide billing services and collect revenues. Id. Section 6.1.

>           judgment or settlement arising out of a contract
>           claim with respect to the Construction of any Water
>           Project.

Id. (italics added).  Thus, the City is the proper entity to recover damages, and is the proper plaintiff here.  Moreover, even if the Water Board were a plaintiff, any damages it received in this litigation would be owed to the City to pay for the cost that will be incurred by the City to construct, operate and maintain treatment facilities for MTBE contamination.[2]

There is therefore no merit to ExxonMobil's claim that either the Water Authority, which issues bonds, or the Water Board, which collects revenue to pay for those bonds and pay DEP's capital and operating costs, may be necessary parties to this litigation.  Notably, the construction of the Phase I question, "Whether the City … would build Station 6 in the next 15 years, *if it had the necessary funds to do so,"* quoted with emphasis by ExxonMobil, provides that issues related to funding are specifically <u>not</u> at issue.  It is puzzling that ExxonMobil relies on this question (presented a month ago) as triggering its last minute investigation as to how the water system capital projects are funded.  Sacripanti letter at 2.

<u>The Issue Presented In Defendant's Letter Is Stale:</u>

ExxonMobil's delay in raising this issue is inexcusable.  As noted above, Defendants served subpoenas upon the Water Board and Water Authority seeking documents or communications that mention MTBE or TBA on or about October 30, 2008.  Not surprisingly, neither the Water Authority nor the Water Board located any such documents, as those entities are not responsible for constructing, operating or maintaining MTBE treatment facilities.  Counsel for the City notified Defendants that no documents had been located on behalf of the Water Authority and Water Board, in letters dated November 12 and November 14, 2008, respectively.  There is simply no explanation as to why the City's responses to these subpoenas did not inspire Mr. Sacripanti to present his current inquiry when he received the City's letters in November 2008.

Moreover, the Expert Report of Susan F. Tierney, Ph.D., submitted by Defendants on March 24, 2009, contains numerous references to the Water Authority and the Water Board.  See id. ¶¶ 16, 24-26, 47-48, 50-56, and 69, and the footnotes referenced therein.  This includes a four-page detailed discussion of the relationship between the Water Authority, Water Board and the City.  Id. ¶¶ 47-48, 50-56.  Even assuming ExxonMobil did not know of the contents of this

---

[2] The absurdity of ExxonMobil's claim that the Water Board is a necessary party to the litigation is illustrated by the following example.  If a third party drives into, and damages a garage door of an apartment building, it is the owner of the apartment, not the tenant, that has the cause of action damage.  Similarly, it is the City that has the right to pursue compensation for damages to its property caused by ExxonMobil, and not the Water Board, which merely has a leasehold interest in the system.

report before it was issued, which seems unlikely, this detailed explanation of the three entities was provided to ExxonMobil at least three months ago.

Notwithstanding Mr. Sacripanti's statements to the contrary, ExxonMobil's lawyers have had extensive knowledge of the roles of the Water Authority and Water Board with respect to the City's water supply system for at least eight months. ExxonMobil's attempt to sidetrack the issues of this case with meritless inquiries, such as that presented in Mr. Sacripanti's June 23 letter, should not be tolerated by the Court.

We look forward to answering any questions you may have at the conference tomorrow.

Respectfully submitted,

*William S. Plache*

William Plache
Senior Counsel
Environmental Law Division

c: Peter Sacripanti, via email
all parties, via LNFS