

Jun 27 2009
6:17PM




THE CITY OF NEW YORK
**LAW DEPARTMENT**

**MICHAEL A. CARDOZO**
*Corporation Counsel*

100 CHURCH STREET
NEW YORK, NY 10007

**SUSAN E. AMRON**
Phone: (212) 788-1578
Fax: (212) 788-1619
E-mail: samron@law.nyc.gov

June 27, 2009

By email

Hon. Shira A. Scheindlin
United States District Judge
Southern District of New York
500 Pearl Street, Room 1620
New York, New York 10007

Re: *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, MDL No. 1358, Master File No. 1:00-1898 (SAS)
*City of New York v. Amerada Hess, et al.*, 04 CV 3417 (SDNY)

Dear Judge Scheindlin:

During the discussion at the court conference on Thursday concerning the jury question at the end of Phase I of the trial, the City argued that it should not be required to prove that it would otherwise have funds to construct Station 6 and noted that the previous discussions concerning the 15 year time period to construct Station 6 assumed that the funds would be available. The pages from the transcript of the June 2, 2009 conference where the parties and Court discussed Phase I question and the availability of funds in the City's budget are attached as Exhibit A.

At Thursday's conference, the parties also discussed evidence of contaminants other than MTBE during Phase I. In this regard, we also note that at the June 2, 2009 conference, Mr. Sacripanti stated that ExxonMobil was not going argue in Phase I that other contaminants would cause the City not to construct Station 6. *See* June 2, 2009 Transcript at 75:18-76:11 (included in the pages attached as Exhibit A).

Dockets.Justia.com

Respectfully yours,

Susan E. Amron

Digitally signed by Susan E. Amron
DN: cn=Susan E. Amron, o=New York City Law Department, ou=Environmental Law Division, email=samron@law.nyc.gov, c=US
Date: 2009.06.27 17:00:05 -04'00'

Susan E. Amron
Deputy Chief
Environmental Law Division

c: Peter Sacripanti
Victor Sher

# Exhibit A

962UMTBEC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

IN RE: METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION

00 MDL 1358
Master File C.A.
No. 1:00-1898(SAS)

------------------------------x

June 2, 2009
5:40 p.m.

Before:

HON. SHIRA A. SCHEINDLIN

District Judge

APPEARANCES

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Attorney for City Plaintiffs
BY: SUSAN E. AMRON
-and-
SHER LEFF LLP
BY: VICTOR M. SHER

GREENBERG GLUSKER
Attorneys for Plaintiffs
BY: ROBERT S. CHAPMAN

McDERMOTT, WILL & EMERY
Attorneys for Defendants Exxon Mobil Corp. and Defendants' Liaison Counsel
PETER JOHN SACRIPANTI
JENNIFER KALNINS TEMPLE
WILLIAM STACK

THE COURT: All that I am saying is, that is trying the case. That is what Mr. Sher was doing too. I don't want to argue who would win the point. I am trying to see if there is a question to be framed. I am also trying to understand the case in a way that I never have before. I don't quite

understand what we are trying -- it is certainly atypical. Every other case that I have, there is contamination to wells that are supplying water, which was certainly Suffolk and which was the one that I knew the best and spent time with, and then the case that we worked on settlement, so a couple of cases that I have most of the involvement with, I have contamination of working wells. This is strange.

So even if we got the right question, phrased it right, started with this question, can the City prove by a preponderance of the evidence that there is a reasonable probability that these wells will be used in the next X years, even if we got that, I am sort of curious why we are doing this in the summer of '09? What is the pressure to do this, other than we have put a lot of time and effort in preparing the case for trial? What is the time pressure for trial?

MR. SHER: The most obvious answer, I think, is that the City needs a resolution, in theory anyway, of recovery so that it can go forward with implementing its plan to bring these wells into service.

THE COURT: Because recovered cash money from the defendant that would help the budgeting of getting the work done?

MR. SHER: Absolutely.

THE COURT: So that money could fund the project that would get the backup system ready?

MR. SACRIPANTI: I am sorry. Very pointed, very direct questions were asked and it wasn't, we are waiting for money; it was, it is not budgeted, it could --

THE COURT: It is not budgeted is that we are waiting for money. That is the same.

MR. SACRIPANTI: I beg to differ. There is an issue, your Honor, as to whether this entire system will ever be used.

THE COURT: I think you are missing that point. If we had unlimited moneys in the City of New York and we didn't have to choose between budget priorities, from what I am hearing, that if there were unlimited money, if a miracle happened and we didn't have to make choices and we could have all of the policemen and firemen we wanted and sanitation men and everything else, I guess that the City would work on this system.

MR. SACRIPANTI: I would like to know what witnesses those are because we have --

THE COURT: Maybe there is such a witness because what they have said, I think, is that the budget may not allow it. That is a budgetary concern. That's why I said, in the perfect world, if there were all the money in the world in the budget and nobody had to make choices between the way that money is spent --

MR. SACRIPANTI: The testimony is: (A) It is not budgeted; (B) There has not been a final decision to move

forward with this, and it is unrelated to the budget.

THE COURT: Then you will win the point.

MR. SACRIPANTI: Yes. I don't want to be adversarial, but the point is, I think this is a very serious first step.

THE COURT:

THE COURT: What was the X date?

MR. STACK: It depends on how you want to slice and dice it. The bottom line is, there is time built into that schedule to make the decision. But if you talk about when you make the decision to the point where you actually are going to bring it online, that is four to six years.

THE COURT: Once you have made the decision, you

believe the evidence shows it can be accomplished in four to six years?

MR. STACK: That's what Mr. Meekin testified.

MR. SHER: I think it is actually a little longer, your Honor.

THE COURT: What do you think it is, the decision?

MS. AMRON: Once the decision and the money is there?

THE COURT: Let's assume that the decision is made and the money is there. Assume both of those, how long would the work take?

MS. AMRON: There is the City's contracting process, then the design, then the contracting process, then the construction and then the start-up period. And all of that together -- and this is the rough estimate based on what I remember from the testimony -- is about seven to eight years once the money is there if everything goes smoothly, if you don't have to disqualify a contractor --

THE COURT: Then 10 would be safe.

MS. AMRON: When you are planning something that you think will take seven to eight if everything goes smoothly, 10 from a trial before you had the money on hand, actually, that has no buffer built into it because it doesn't account for the trial time, but it also doesn't account for the problems of disqualifying a contractor or having something take longer than expected.

THE COURT: It is an arbitrary number, but it has to be fair to everybody. I am just going to say 15 and be done with it. And that's a question that I would ask the jury, and the witnesses would have to be prepared to prove it. That's the first phase.

Now I think that we do need to turn to the question that Mr. Sher has begun to ask, what evidence would I allow in this first phase? What has to be in this first phase?

MR. SHER: This is where the chart that I gave your Honor at the beginning is actually helpful. I think that the answer to that question, first of all, I think it has to include the defense contention that the problems with our water system are not MTBE at Station 6, and we have to be able to rebut that.

THE COURT: I don't understand why.

MR. SHER: How can the jury determine the reasonableness of the City's conduct without understanding what the problem is and what the City's response needs to be.

THE COURT: I am not following you at all. The first issue is whether that is really going to be the backup system that the City is going to implement.

MR. SHER: But the defendants claim, and you heard it earlier today, that in fact this is a crummy water system that the City, according to the defendants, was ordered to purchase and not use, and doesn't the jury have to understand what the

nature of the problem is that the City wants to solve to bring it online?

THE COURT: No. I think that the very first step is just proving that this is your first choice backup system. This is where you want, if all the stars are right, that is, if the money is there -- and I forgot the other one. The money is the big one. Money and something, I thought --

MR. SHER: Money is the big one.

THE COURT: Assuming the money is there, is this the way that you are going? And the defense, I thought, disputed that, quite significantly. I thought they said there was no proof at all that this was the backup plan of choice, originally, the tunnels -- I don't know what other choices there were, but I don't think that they think that you have the proof.

MR. SHER: I understand that they think that, and I am comfortable meeting that issue.

Do they get to argue, for example, that the real problem is PCE, and that's the reason that the City won't be bringing the system online?

THE COURT: That is different. They can say that the reason you can't show that this is the backup plan of choice is because it is contaminated PCE. Of course you can say that is silly, our biggest problem or an equal problem is that it is contaminated with their product and that's one of the things

that is in the way.

MR. SHER: Once that happens, and I would be interested in their view on what they intend to prove during that phase, but once they do that we have to get into all of those issues I have listed here of the world of MTBE and sources and the severity and the extent of the contamination because that's how we rebut the contention that it is really PCE and not MTBE.

THE COURT: It is not that it is really PCE, but that it is not the No. 1 first choice backup plan because this water is contaminated with PCE.

MR. SACRIPANTI: What we are going to say, ladies and gentlemen of the jury, if you believe that they will never turn the system on and ever use this --

THE COURT: We have to go back. We are not there. We are at that very question. You want to argue to the jury, we will learn that this is not the City's backup plan, not their first choice backup because this water is contaminated with PCE.

MR. SACRIPANTI: I hear the question and I will respond in 10 seconds.

THE COURT: Good.

MR. SACRIPANTI: I don't think that we need to at that stage say that. I think that the evidence is for us pretty clear that the City is way up in the air as to what it is going

to do and won't say for certain because they don't know for certain what they are going to do.

THE COURT: So you are not going to say, the reason this is not the number 1 backup plan and the City can't prove that to you is because this water is very contaminated with PCE, so they are never going to start with this water.

MR. SACRIPANTI: On the damages phase --

THE COURT: That's different.

So, Mr. Sher, they are not going to contest this is the number 1 backup plan by saying the water is bad water because they have PCE.

MR. SACRIPANTI: Could I make a suggestion?

THE COURT: Yes.

MR. SACRIPANTI: I think if the Court has made a ruling that this is the first issue to try --

THE COURT: Ruling is too strong. We are all thinking out loud.

Go ahead.

MR. SACRIPANTI: The only thing that I was going to suggest, and I don't want to speak for the plaintiffs, but I know I would benefit by thinking through a number of these issues and not on the fly as we are doing it.

THE COURT: But Mr. Sher who has traveled across the country and has thought about it and prepared this chart and what he has to prove even to answer the question, but he

phrased the question wrong. He says that the question, the City will never use this well and that is not because of MTBE. It is not related to MTBE or not MTBE. You are just saying it is a failure of proof that this is the plan, if they can't prove that this is the backup plan that has been adopted and would like to be executed if the money is there.

MR. SACRIPANTI: I think that's right.

THE COURT: If that is the case, then it is a narrow issue, very narrow and it would need some of the things that he wrote down. It would have to explain the City water system, the need for water from Queens, contingency planning for water from Queens, the City's alleged plan to bring Station 6 -- and I would drop "and other wells" -- online, and then I probably would quit. Everything else in his box is a distraction on that question.

MR. SACRIPANTI: I would agree with that.

THE COURT: So you basically would be defending through cross-examination. I am not sure that you would be calling any witnesses.

MR. SACRIPANTI: I have been thinking on my feet, which I get paid to do, but this is --

THE COURT: -- scary?

MR. SACRIPANTI: -- scary right now because I think that is right.

THE COURT: You don't want to commit to that. I

understand. You might have a witness to call on proof of alternative plans, such as tunnels and things like that, and somebody that they don't want to call who you think would be helpful that this is nowhere near the real backup plan and then put it to the jury and see what they say -- not they will surprise you and say, we find for the plaintiff and the plaintiff has proved by a preponderance of the evidence that it is reasonably probable this is coming online within the next 15 years, we have to be ready to go to step 2.

And the next question that we want to try and that question, of course, now has to involve MTBE. Let's play it out. Let's say, for example, the jury says yes, it is reasonably probable it is coming online, it is going to be ready with a backup system.