


26957031
Sep 6 2009
8:14PM

Nicholas G. Campins
ncampins@sherleff.com
415.348.8300 x202

September 6, 2009

*Via Email & Hand Delivery*

Hon. Shira A. Scheindlin
United States District Judge
U.S. District Court, Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *City of New York v. Amerada Hess*, et al., 04 CV 3417 (SDNY)
              *In re MTBE Products Liability Litigation*, MDL 1358
              **Request for Curative Instruction re the Petroleum Marketing Practices Act**

Dear Judge Scheindlin:

The City of New York ("the City") respectfully requests that the Court issue a curative instruction in response to the following testimony by Mr. Dugan concerning the Petroleum Marketing Practices Act (the "PMPA"):

> **Q. Do you recall moments ago Mr. Sher was asking you whether you could direct unbranded distributors what to tell the stations to which they delivered?**
> A. That's correct, I do.
>
> **Q. And you said no and you wanted to tell him why not and he asked you to wait. Do you remember that?**
> A. Yes.
>
> **Q. Would you now tell us why not?**
> A. Yes. The Petroleum Marketing Practices Act, the federal act that directs how we -- in our relationship with our unbranded customers as well as our branded distributors as well as our dealer-operated stores, precludes that.
>
> **Q. That's federal law which precludes it?**
> A. It is.

September 4, 2009 Trial Transcript at 3676:18 – 3677:6 (attached as Exhibit 1). As discussed below, a curative instruction is necessary because the legal conclusions stated by Mr. Dugan were both erroneous and misleading.

450 Mission Street, Suite 400 • San Francisco, California 94105   **tel**  (415) 348-8300   **fax**  (415) 348-8333

Mr. Dugan's testimony was erroneous because the PMPA in no way precludes a refiner from telling unbranded distributors to warn customers about the environmental and health risks of components in gasoline.  *See* 15 U.S.C. §§ 2801 *et seq.*.  Instead, the PMPA (1) sets forth terms applicable to the termination and renewal of franchise relationships, *see* 15 U.S.C. §§ 2801, 2802, 2803, 2804, 2805, 2806, 2807, (2) provides octane disclosure requirements*, see* 15 U.S.C. §§ 2821-2824 and (3) directs the Department of Energy to conduct a study concerning the subsidization of motor fuel, 15 U.S.C. § 2841.  Accordingly, Mr. Dugan's testimony that the PMPA precluded Exxon from telling unbranded distributors to warn their customers about the special risks associated with MTBE was inaccurate.

Mr. Dugan's testimony likely left the jury with the impression that federal law was the reason Exxon failed to tell the unbranded distributors to warn their customers about the special risks associated with MTBE.

The City therefore respectfully requests that the Court instruct the jury that the Court is the sole arbiter of the law and that Mr. Dugan's testimony about the PMPA was wrong and should be disregarded.  The City further requests that the Court instruct the jury that federal law in no way precluded Exxon from telling unbranded distributors to warn their customers about any special risks associated with MTBE.

Respectfully submitted,


*/S/ NICHOLAS G. CAMPINS*

Nicholas G. Campins

Cc:  All Counsel via LNFS & Email

Exhibit 1

```
994rcit1
```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

THE CITY OF NEW YORK, et al,

                            Plaintiffs,
         -v-                                04 CV 3417 (SAS)
EXXON MOBIL CORPORATION, et al,
                            Defendants.
------------------------------------x
                                        New York, N.Y.
                                        September 4, 2009
                                        9:15 a.m.

Before:

         HON. SHIRA A. SCHEINDLIN,
                                        District Judge


         APPEARANCES

MICHAEL A. CARDOZO
    Corporation Counsel of the City of New York
    Attorneys for City Plaintiffs
BY  SUSAN E. AMRON

SHER LEFF LLP
BY: VICTOR M. SHER
    JOSHUA STEIN

GREENBERG GLUSKER
    Attorneys for Plaintiffs
BY: ROBERT S. CHAPMAN

MCDERMOTT, WILL & EMERY
    Attorneys for Defendant Exxon Mobil
BY: PETER JOHN SACRIPANTI
    JAMES PARDO
    WILLIAM STACK
    JENNIFER KALNINS TEMPLE
    ANTHONY BONGIORNO


              SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

```
994rcit1
```
         (Trial resumed, jury present)
 BARBARA MICKELSON,

     called as a witness by the plaintiffs,

     having been duly sworn, testified as follows:
         THE COURT:  Please state your full name, first and
last, spelling both for the record.
         THE WITNESS:  Barbara, B-A-R-B-A-R-A, Mickelson,
M-I-C-K-E-L-S-O-N.
         MR. SHER:  May I proceed, your Honor?
         THE COURT:  Please.

```
                                      994DCITF
 2   well contaminated with MTBE would occur more frequently and
 3   would be more expensive than if the gasoline did not contain
 4   MTBE at the site, correct?
 5   A.   It could.
 6   Q.   And your company provided no warnings to anybody about
 7   those prospects in connection with MTBE in gasoline, correct?
 8   A.   Correct.
 9            MR. SHER:  I have no further questions, your Honor.
10            THE COURT:  All right.  Mr. Bongiorno.
11            MR. BONGIORNO:  Thank you, your Honor.  If I could, I
12   will just swap out the notebooks.
13            THE COURT:  That is OK.
14   CROSS-EXAMINATION
15   BY MR. BONGIORNO:
16   Q.   Good afternoon, Mr. Dugan.
17   A.   Good afternoon.
18   Q.   Do you recall moments ago Mr. Sher was asking you whether
19   you could direct unbranded distributors what to tell the
20   stations to which they delivered?
21   A.   That's correct, I do.
22   Q.   And you said no and you wanted to tell him why not and he
23   asked you to wait.  Do you remember that?
24   A.   Yes.
25   Q.   Would you now tell us why not?
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```
3677
     994dcit4                      Dugan - cross
 1   A.   Yes.  The Petroleum Marketing Practices Act, the federal
 2   act that directs how we -- in our relationship with our
 3   unbranded customers as well as our branded distributors as well
 4   as our dealer-operated stores, precludes that.
 5   Q.   That's federal law which precludes it?
 6   A.   It is.
 7   Q.   Do you also recall that Mr. Sher was asking you a series of
 8   questions about whether you provided warnings of the
 9   incremental environmental risk, and you were saying "No, nor
10   should we have?"
11   A.   That is correct.
12   Q.   You also wanted to say why you should not have.  Do you
13   remember that?
14   A.   Yes, I do.
15   Q.   Mr. Sher asked you to wait.
16   A.   Yes.
17   Q.   So could you now tell us why you should not have?
18   A.   Our mantra, our doctrine, our philosophy, our objective at
19   Exxon was to keep gasoline out of the environment.  Whether
20   that gasoline contained MTBE or not was not important to us.
21   The important thing was to keep the gasoline out of the
22   environment.
23            And we had spent -- we put our money where our mouth
24   was.  We spent $178 million in 1980 to '85 to upgrade all of
25   the tanks we owned.  We had an incident -- 62 leaking incidents
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                    3678
     994dcit4                      Dugan - cross
 1   out of a total of 7,000 stores; that's 21,000 tanks.  Even with
 2   those 62 we were not satisfied.  We were looking at each one of
 3   those individually to determine why they leaked, what was it
 4   that caused it, so we could take action to preclude that from
 5   occurring in the future.
 6            The key was MTBE was not causing underground storage
                                 Page 64