

Victor M. Sher
vsher@sherleff.com
415.348.8300 x100

Robert S. Chapman
RChapman@greenbergglusker.com
310.201.7493

September 15, 2009

<u>*Via Email and Hand Delivery*</u>

Hon. Shira A. Scheindlin
United States District Judge
U.S. District Court, Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:   *City of New York v. ExxonMobil*, 04 CV 3417 (SDNY)
              Opposition to Motion to Strike Testimony of Dr. Ed Whitelaw

Dear Judge Scheindlin:

      The City retained Dr. Ed Whitelaw in this case to offer two opinions. First, Dr. Whitelaw opined that ExxonMobil could have, if it had chosen to do so, passed the entire additional cost of manufacturing gasoline with ethanol on to the consumer at the pump. Second, Dr. Whitelaw rendered an opinion as to the amount of additional external costs, particularly groundwater remediation costs, resulting from ExxonMobil's choice of MTBE rather than ethanol as a gasoline oxygenate.

      ExxonMobil moved on September 14 to strike Dr. Whitelaw's testimony relating only to his second opinion, the additional groundwater remediation costs. (9/14/09 Trial Transcript ("TT"), p. 4375, lines 4-5; p. 4317, lines 13-19.) The motion is based on the incorrect contentions that Dr. Whitelaw does not have the necessary experience and background to render that opinion and that he based the opinion only on a single study which he did not critically review. But ExxonMobil's motion fails in the face of Dr. Whitelaw's trial testimony, which makes plain that he both has the necessary background and experience and applied this specialized expertise in rendering his opinion.

      Dr. Whitelaw is fully qualified to render an opinion regarding the external costs of MTBE as an oxygenate:

- As a professor of environmental and resource economics for 42 years, Dr. Whitelaw's teaching involved "examining, calculating, the spillover effects, the external costs, of … pollution" and "evaluating and calculating … spillover costs outside the normal market transactions." (TT 4310, lines 5-14.)

450 Mission Street, Suite 400 • San Francisco, California 94105 **tel** (415) 348-8300 **fax** (415) 348-8333

- As president of ECONorthwest, Dr. Whitelaw evaluates "the costs of contamination and spills and the like" for government agencies. (TT 4311, lines 2-8.)

- Dr. Whitelaw has testified on water contamination matters 18 times. (TT 3412, lines 2-9.) And he has advised governors of Oregon and the Oregon legislature about water contamination, including spillover effects. (TT 4313, lines 15-22.)

- Finally, Dr. Whitelaw was proffered, and accepted, "as an expert dealing with water pollution and the external effects of oil contamination." (TT 4315, lines 5-7.)

Indeed, opposing counsel conceded that Dr. Whitelaw was "an expert on evaluating resource impacts and external costs, the social costs" of water pollution. (TT 4316, lines 1-10.) That is exactly what he has done in this case. He has used his expertise and background to evaluate and analyze the impacts and external costs of choosing MTBE instead of ethanol as a gasoline oxygenate, calculated in not just one, but several studies.

That Dr. Whitelaw did not solely rely on the Komex study is clear from his testimony:

- Although the Komex study was "[t]he primary one" (TT 4322, lines 11-15), Dr. Whitelaw *also* carefully reviewed "the underlying studies that Komex in turn relied on." (TT 4323, lines 1-2.)

- He based his opinion not only on the Komex study and underlying studies, but also "on the work [ECONorthwest] had done in the Tahoe case in California on MTBE, as well as for the U.S. State Department in its dispute with Canada." (TT 4323, lines 3-11.) "[B]ased on *all* of those sources," Dr. Whitelaw arrived at the conclusions to which he testified. (TT 4323, lines 12-14, emphasis added.)

- And in cross-examining Dr. Whitelaw, Mr. Stack pointed out that Dr. Whitelaw was "asked to look at specifically the cost for groundwater based on a *variety* of studies, one of which was done by Komex." (TT 4339, lines 15-19, emphasis added.)

Dr. Whitelaw not only analyzed the Komex and underlying studies, but evaluated their conclusions, determining that the numbers identified therein as the total potential social costs of MTBE use were "understated" compared to the true figures, which would incorporate the costs of cleaning up leaks at MTBE refineries, terminals and pipelines, as well as "monitoring costs, costs to surface water, impacts on property values, [and] impacts on values of affected ecosystem services." (TT 4333, line 6 to 4334, line 25.)

On cross-examination, Dr. Whitelaw described in detail the analysis he performed regarding the Komex study. He "updated some of the Komex figures, the numbers they relied on, by the American Water Works Association updating of some of the data." (TT 4368, lines 10-16.) Thereafter, Dr. Whitelaw, as an experienced environmental and resource economist, performed a careful compilation of all the costs of groundwater remediation, comparing the information in the Komex study to several studies (one of which he had conducted) in order to confirm the validity of the Komex calculations. (TT 4368, line 18, to 4369, line 2.)

Finally, as an *economic expert*, Dr. Whitelaw was also able to opine that the Komex data was "clearly *not* speculative," because the methods used "meet *professional* standards with which I'm familiar." (TT 4369, line 25, to 4370, line 6, emphasis added.)

In summary, Dr. Whitelaw did not merely read the Komex study and thereby become an expert on what he had read. He has been an expert on evaluating and calculating the spillover costs of water contamination for over 42 years. And he did work on the external costs of MTBE contamination in the Tahoe case and for the State Department. He did what every expert does. He formed opinions based on his background and experience as well as on reports written and data obtained by others. He did not merely read the Komex report. He used his knowledge, expertise and other studies to confirm the validity of the Komex calculations.

Accordingly, the City respectfully requests that ExxonMobil's motion to strike Dr. Whitelaw's testimony be denied.

Respectfully submitted,

Victor M. Sher
SHER LEFF LLP

Robert S. Chapman
GREENBERG GLUSKER

Cc: All Counsel via LNFS & Email