

Victor M. Sher
vsher@sherleff.com
415.348.8300 x100

September 21, 2009

*Via Email and Hand Delivery*

Hon. Shira A. Scheindlin
United States District Judge
U.S. District Court, Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:   *City of New York v. ExxonMobil*, 04 CV 3417 (SDNY)
            Request for Clarification

Dear Judge Scheindlin:

    ExxonMobil's "process of manufacturing *and distributing* petroleum products involves complex arrangements whereby defendants trade, barter, or otherwise exchange product for delivery throughout parts of the country." *In re MTBE*, 591 F.Supp.2d 259, 269-270 (S.D.N.Y. 2008), emphasis added. The Court's opinions on the commingled product theory consistently incorporate elements of causation all along the chain. Not only must the product itself be made and commingled, but the commingled product must be "present in a commingled or blended state *at the time and place that the harm or risk of harm occurred.*" *In re MTBE*, 591 F.Supp.2d at 274. Thus, once it is found to have manufactured part of the commingled product that caused the harm, a manufacturer/refiner defendant like ExxonMobil -- which *also* distributes the harmful product to a location where it causes harm -- is liable not only for the dangerous product it manufactured, but for the product it distributed while knowing (in its role as a manufacturer) of the product's dangerous qualities.

    As a manufacturer and refiner, ExxonMobil caused the City's injury by designing and manufacturing a defective product, which was then commingled with product manufactured by others. But once ExxonMobil's *causal* role in manufacturing the product has been established, ExxonMobil is *liable* not only because it made the product, but because it then proceeded to "distribut[e] that dangerous product," in its commingled state, to gas stations in Queens. *In re MTBE*, 591 F.Supp.2d at 276. As Ms. Amron stated on Friday, that Opinion explains that "negligence claims against manufacturers are distinct from negligence claims against the retailer who spilled gasoline – the manufacturer's breach would be *distributing* a dangerous product, or failing to provide warnings as to the use of a product, while the spiller's breach would be failing to prevent

leaks on its property." *Id.*

The commingled product theory applies to vertically integrated manufacturing companies *in their roles as suppliers*. As the Court stated in footnote 91 of *In re MTBE*, 591 F.Supp.2d 259, 278, "plaintiffs agreed to dismiss claims against Getty to the extent they are based on commingled product theory because they are not being sued as a refiner of gasoline." The *extent* of a vertically-integrated company's liability depends not only on the fact that the company contributed to the commingled product, but also on the fact that the company placed that product "in a completely commingled or blended state at the time and place that the harm or risk of harm occurred." *In re MTBE*, 591 F.Supp.2d at 274, citing *In re MTBE*, 447 F.Supp.2d 289, 301 (SDNY 2006).

The Court's original formulation of the commingled product theory, in *In re MTBE*, 379 F.Supp.2d 348, 378 (S.D.N.Y. 2005), indicates that a manufacturer's liability for the commingled product they refined also depends on the amount of product they *supplied* to the location of the injury. If "the petroleum products of ten refiners are commingled in an underground storage tank," then "each of the ten *refiners* contributed to the injury in proportion to the amount of product that each *supplied*…. Thus, if a defendant's indistinct product *was present* in the area of contamination and was commingled with the products of other suppliers, all of the suppliers can be held liable for any harm arising from an incident of contamination." *Id.*, emphasis added.

ExxonMobil argues, as its fourth point, that supplier-based market share information should be deemed irrelevant to causation under traditional product liability as well as the commingled product theory. That position is wrong. The jury may find that it is more likely than not that ExxonMobil's actions supplying MTBE gasoline to retail gas stations in Queens was a substantial factor in causing the City's injury. It is for the jury to find, or not, that the primary supplier data submitted by the City forms a reasonable basis for that conclusion. This is particularly true given the "complex arrangements whereby defendants trade, barter, or otherwise exchange product for delivery" cited above. *In re MTBE*, 591 F.Supp.2d at 269-270. Other evidence in the record indicates that EIA 782C data can support a jury finding that ExxonMobil gasoline was a "substantial factor" causing the City harm.

This Court has ruled on several occasions, under the *commingled product theory*, that liability is several and allocated according to defendants' market share. Nothing in those rulings precludes a jury from considering a defendant's share of the market in evaluating whether its conduct was a substantial causal factor under *traditional causation*.

In sum, the Court's commingled product opinions have consistently made the following points:

- Manufacturers and refiners are liable under the commingled product theory

- Companies that are manufacturers and refiners are often vertically integrated, so that they not only manufacture, but also distribute a commingled product

- A refiner or manufacturer caused the harm when its products were present in a commingled state *at the time and place of the harm,* and the commingled product caused the injury.

A manufacturer of a commingled product which also distributes that product so that it can be found at the time and place of the harm should be held liable for doing so. The extent of a company's activities in a local market can be shown from its share of supply to that market, and the jury may conclude therefrom that the company's conduct was a substantial factor in causing the harm. Accordingly, while Exxon may be deemed to have caused the City's harm in its role as a manufacturer under the commingled product theory, it also caused harm by distributing that product to the location and time the harm occurred. And the extent of that distribution, as indicated by Exxon's share of the market supplying New York and Queens, is relevant to the determination of whether Exxon's conduct was a substantial factor in causing the City's harm.

We appreciate the Court's time and attention to this matter and respectfully ask that this letter be filed with the Clerk's Offices so that it is part of the trial record for this case.

Respectfully submitted,

*/s/ Victor Sher*

Victor M. Sher

Cc: All Counsel via LNFS & Email