

# SHER·LEFF LLP
## LAWYERS PROTECTING WATER

Victor M. Sher
vsher@sherleff.com
415.348.8300 x100

September 30, 2009

*Via Email & Hand Delivery*

Hon. Shira A. Scheindlin
United States District Judge
U.S. District Court, Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *City of New York v. Amerada Hess*, et al., 04 CV 3417 (SDNY)
*In re MTBE Products Liability Litigation*, MDL 1358
**Inventory Control Issues Raised Today**

Dear Judge Scheindlin:

The City of New York ("the City") writes to address the Court's inquiry during today's session concerning ExxonMobil's inventory reconciliation program. Specifically, the Court inquired concerning ExxonMobil's control over lessee dealer stations, *i.e.* stations where ExxonMobil owned the tanks and real property and leased it to a third party to operate.

In this regard, the City directs the Court to testimony by ExxonMobil witnesses that ExxonMobil (and heritage Exxon and Mobil) had inventory reconciliation programs in place that required reporting and audits at lessee-dealer stations. For example, Ms. Mickelson testified as follows:

> Q. Did Exxon adopt their inventory verification program voluntarily?
> A. Yes.
>
> Q. Can you tell the jury as succinctly as possible what was entailed in inventory verification as part of leak detection for the Exxon tank program.
> A. Exxon required that its dealers maintain an inventory by sticking the tanks and comparing volumes with their deliveries and their sales. This was something that they had to do every day. Once a year an Exxon employee would parallel the dealer in doing the inventory verification. The dealer would do the work and the Exxon representative would do the work. Then, at the end of the 30-day period, the data sheets would come to the underground storage tank program technicians and engineer and they would review it. If there was a variance, there was a procedure to be followed. So it was a check to make sure the dealer was doing his inventory correctly, and it was a teaching opportunity for the marketing representative to work with the dealer so that he did do his inventory verification correctly.

450 Mission Street, Suite 400 • San Francisco, California 94105  tel (415) 348-8300  fax (415) 348-8333

9/4/2009 TR at p. 3629:24 – 3630:18 (Attached as Exhibit A). Mr. Curran further testified as to the enforcement protocol for Exxon's program:

> Q. How did Exxon enforce its inventory control and leak detection standards on the dealers that it controlled?
>
> A. The dealer lease had a provision in their lease that the dealer was required to do inventory control on a monthly basis. What we found, I mentioned this earlier, is that the dealers, a lot of them, didn't understand. So Exxon put together training manuals and went one step further. They actually had every dealer sign a release that they would attend the training program and that they would, of course, perform inventory control monthly. Then another step was taken, and that was that every sales representative had to once a year audit a monthly inventory control record from each dealer. I'll go one further step, and that is that our vice president made a trip to Philadelphia, went through the records, the sales representative's records, and found the two sales representatives who were not checking on their dealers once a year as they were required, and they were fired on the spot.
>
> ....
>
> Q. This the statement that you just told the jury about?
> A. Yes. This is the lessee dealer statement.
>
> Q. Was every lessee required to sign this statement?
> A. Every one.
>
> Q. Would you read this statement to the jury, please.
> A. "I'm aware of the importance of inventory control as a means of determining whether I am losing motor fuel at my station and realize that I am required by Exxon's retail service station lease to gauge tanks daily to prevent or discover water contamination and to reconcile inventory records at least weekly for an indication of possible leakage from tanks or piping and to advise Exxon promptly of any indication of contamination or leakage."
>
> ...
>
> Q. All right, the last paragraph, please.
> A. I am aware that my failure to perform the motor fuel inventory control practices required by my lease may result in termination or nonrenewal of my franchise with Exxon.

9/9/2009 TR at 3854:3 – 3856:17 (attached as Exhibit B). And finally, Mr. Roman testified that Mobil had "controls in place to make sure that we are advised if there's even a suspicion of a leak." *See* 9/3/2009 at 3490:3-3490:4 (attached as Exhibit C).

Hon. Shira A. Scheindlin
September 30, 2009
Page 3

The City also directs the Court to documents that have been introduced into evidence in this Phase as well as Phase II which show ExxonMobil's involvement in the inventory control process at lessee dealers. For example, the City introduced PL-11700 into evidence in Phase II, which shows that Mark Fuessinger, a Mobil marketing representative received and analyzed inventory control records from 84-04 Parsons Blvd (Station No. 17-609) a Company Owned Dealer Operated station (attached as Exhibit D). A further example is an exhibit introduced by ExxonMobil, D-9948, which is a PMPA Franchise Agreement for 165-01 Hillside Avenue. Section 2-8(f)(iii) requires immediate notification of Mobil of "any suspicion that any Product has been released to the environment from any tank, line or other Source at the Marketing Premises." See Exhibit E at XOM-CNY-DLR-000284.

In sum, there is substantial record evidence that ExxonMobil exercised control over lessee dealer stations.

The City appreciates Your Honor's attention to these matters.

Respectfully submitted,

Victor M. Sher

Cc: All Counsel via LNFS & Email