

Robert S. Chapman
D: 310.201.7493
F: 310.201.2393
RChapman@GreenbergGlusker.com

October 1, 2009

*Via Email & Hand Delivery*

Hon. Shira A. Scheindlin
United States District Judge
U.S. District Court, Southern District of New York
500 Pearl Street
New York, New York 10007

Re:  *City of New York v. Amerada Hess*, et al., 04 CV 3417 (SDNY)
*In re MTBE Products Liability Litigation*, MDL 1358

Dear Judge Scheindlin:

In court today, you requested that the City provide examples of trial testimony supporting a link between public health and treating MTBE in drinking water. On August 4, 2009, counsel for ExxonMobil introduced into evidence Exhibit D-2919, which included the following mission statement of the City Department of Environmental Protection ("DEP"):

**"It is *to promote the public health*, the economic development and the quality of life for New York City *by providing clean water*, managing storm water and removing waste water."**

The DEP deputy commissioner (James Roberts) testified that he did not disagree with that mission statement. Exhibit 1 (Excerpts from August 4, 2009 Trial Transcript) at 362:20. The DEP acting commissioner (Steven Lawitts) testified two days later that one of his primary responsibilities "is to ensure the continued delivery of *safe* drinking water to 9 million people," in part by constructing Station 6. Exhibit 2 (Excerpts from August 6, 2009 Trial Transcript) at p. 681:13-24.

On these and other occasions, the City's witnesses have made clear the fundamental relationship between clean water and public health and safety. Evidence of MTBE's carcinogenicity is highly relevant to the City's need to treat drinking water to remove MTBE below the MCL because the City intends to "promote the public health … by providing clean water." Exhibit 1 at 362:15-18. ExxonMobil's email to the Court, earlier this evening, adds no weight to its position. *See* Exhibit 3 (October 1, 2009 e-mail from James Pardo to Seth Ard, citing testimony of Ms. Marnie Bell). As Ms. Bell testified earlier today, the objective of water treatment design is to identify the most efficient and cost effective method of treatment *"[w]hile still protecting public health* and meeting the utility's goals for providing the water quality they

Greenberg Glusker Fields Claman & Machtinger LLP
1900 Avenue of the Stars, 21st Floor, Los Angeles, California 90067
T: 310.553.3610  |  F: 310.553.0687

GreenbergGlusker.com

dockets.Justia.com

want to provide to their consumers." Exhibit 4 (Excerpts from October 1, 2009 Trial Transcript), p. 6251:13-15 (emphasis added).

The City's interest in protecting the public from the health impacts of groundwater contamination, including cancer, is apparent from Exhibit D-547, the minutes of a November 27, 2001 Public Information Meeting concerning the Brooklyn-Queens Aquifer. This exhibit was introduced on August 5, 2009 during the testimony of William Yulinsky. At the meeting, "Deputy Commissioner Greeley stressed that if NYC DEP is not able to demonstrate to the community that the groundwater can be treated satisfactorily, it will not be introduced into the City's drinking water supply." Exhibit 5 (Exhibit D-547) at p. 2; see also Exhibit 6 (Excerpts from August 5, 2009 Trial Testimony) at p. 577: 15-23. The community's concerns about carcinogenic groundwater contaminants were apparent at this meeting: "A number of questions and comments were raised relating to health issues and the security of the City's water supply system. Several persons expressed concern about the number of residents in the community who are suffering from or have died of cancer ... Numerous persons stressed the need for completion of NYSDOH's Cancer Incidence Study and communication of its findings to the community as soon as possible." Exhibit 5 at p. 8.

Furthermore, "[s]everal questions and comments related to procedures for testing the current drinking water supply, as well as groundwater. Meeting participants wanted assurance that all contaminants ... would be detected and could safely be treated." Exhibit 5 at p. 5. "[T]he customer base wanted upstate – the good, clean, upstate water. And when the City took over Jamaica and realized it wanted to utilize this resource... we had to show them that the groundwater *is safe to drink*..." Exhibit 6 at 541:9-19.

And groundwater with MTBE in it is simply not safe to drink, and must be treated. As Dr. Burns testified in great detail, MTBE in water is "a particular concern from a public health and toxicological standpoint." Exhibit 7 (Excerpts from August 27, 2009 Trial Testimony) at p. 2803:24 to p. 2804:2. Because the MCLs for compounds in drinking water are not solely health-based (*id.* at 2831:22-2832:4), the MCL for MTBE, "a probable human carcinogen" (*id.* at 2809:16-17) is not necessarily the level at which no carcinogenic effects are possible.

Because the City's goal is to "deliver the highest water quality possible within our system" to the community, it did not want to run "the risk of delivering MTBE to the consumer." Exhibit 8 (Excerpts from September 1, 2009 Trial Testimony of Steven Schindler) at 3004:6-7; 3014: 5-16. The carcinogenic risks of MTBE, as set forth by Dr. Burns, fully support the City's desire to serve high-quality, clean, safe-to-drink water containing as little MTBE as possible.

Respectfully submitted,

Robert S. Chapman