


Victor M. Sh[...]
vsher@sherleff.co[...]
415.348.8300 x10[...]

Oct 9 2009
11:10AM

27486256

October 9, 2009

*Via Email & Hand Delivery*

Hon. Shira A. Scheindlin
Unites States District Judge
U.S. District Court, Southern District of New York
500 Pearl Street, Room 1620
New York, New York 10007

    Re:    *City of New York v. ExxonMobil*, 04 CV 3417 (SAS)
            *Follow-up to October 8, 2009 Letter Re: Proffer of Punitive Damages Evidence*

Dear Judge Scheindlin:

I write to respond to Your Honor's comment at yesterday's hearing that the City's letter proffering evidence to support punitive damages was "downright misleading." (Tr. at 6739:11.) The Court's comment came in response to Mr. Stack's unsupported assertion that Shell, not ExxonMobil, was the sole "major spiller" in connection with the MTBE contamination of Santa Monica's water supply (id. at 6738:18), and that ExxonMobil played only a minor role there. However, the City's proffer letter was entirely true. The USEPA's Unilateral Administrative Orders concerning the Charnock Wellfield included other parties, but Exxon, Mobil and ExxonMobil were directly implicated in the contamination just as we represented. And a Mobil station – alone – wiped out another set of Santa Monica's wells at the Arcadia Wellfield.

While the USEPA's Unilateral Enforcement Order (a full copy of which we attached to the City's proffer as Exhibit 4) addressed several parties responsible for MTBE contamination of the Charnock aquifer along with ExxonMobil, USEPA found that Exxon and Mobil gas stations released MTBE that affected groundwater, and ordered them to share the burden of Santa Monica's water replacement costs. *See* USEPA, Unilateral Administrative Order for Participation and Cooperation in Water Replacement (Mar. 9, 2000) at 12 (Exxon site "has discharged gasoline containing MTBE that has impacted soil and groundwater"), at 19 (same for Mobil site), Attachment A at 2 (requiring Exxon, Mobil, and other respondents "to provide Water Replacement to the City of Santa Monica … for a period of 4 years and 8 months beginning on May 7, 2000").

450 Mission Street, Suite 400 • San Francisco, California 94105  tel (415) 348-8300  fax (415) 348-8333

In a separate order the USEPA also required Exxon, Mobil and ExxonMobil (along with other parties) to undertake additional investigation and remediation activities due to MTBE contamination from their gas stations in the Charnock Basin. *See* USEPA, Unilateral Administrative Order for Participation and Cooperation in Initial Regional Response (Nov. 30, 2000).[1] In this Order, EPA found that:

> These Initial Regional Responses are necessitated by the presence of the gasoline additive [MTBE] and other gasoline constituents in the Charnock Sub-Basin, formerly a drinking water supply for the City of Santa Monica .... Respondents have responsibility for releases from gasoline service stations that have discharged MTBE ... adversely affecting the Charnock Sub-Basin and its beneficial use as a drinking water supply."

(Id. at 1.) As in the Water Replacement Order, EPA found both an Exxon station and a Mobil station had "released gasoline containing MTBE that has impacted soil and groundwater." (Id. at 13 (Exxon) and 20 (Mobil).)

Counsel's further assertion that ExxonMobil played only a minor role in Santa Monica's loss of the Charnock wells is belied by the ultimate resolution of the lawsuit between Santa Monica and numerous oil companies. I served as one of the outside counsel for the plaintiff in that litigation. Santa Monica's complaint focused both on gasoline containing MTBE as a defective product and on the multiple roles played by the vertically integrated large oil companies like ExxonMobil (including operating retail gas stations that released MTBE) – just as the City's complaint does here. The sources of the MTBE contamination in Santa Monica were hotly disputed: many of the defendants pointed to a Shell station as the primary source. Shell, though, pointed at other stations. Under Santa Monica's theory of the case, *all* of the defendants contributed to the MTBE problem as both direct spillers and refiners/suppliers, and *all* were jointly and severally liable.[2]

In late 2003, Santa Monica settled with Shell, Chevron and ExxonMobil. Under this collective settlement these three companies made an initial cash payment to the city of $92.5 million, of which ExxonMobil paid $10 million. *See* Settlement Agreement par. 3.4.[3] In addition, these

---

[1] A copy of this document is attached hereto as Exhibit 1.

[2] The complaint and the various pleadings concerning the disputed sources of contamination are lengthy and voluminous. If the Court would like to examine them, we can of course provide copies.

[3] A copy of the settlement agreement is attached hereto as Exhibit 2. There were separate cash settlements with other companies as well, bringing Santa Monica's total cash recovery to about $120 million, but only this agreement involved guaranteeing the costs of Santa Monica's MTBE treatment facility.

three companies guaranteed the full costs of building, operating and maintaining an MTBE treatment facility for as long as MTBE contamination would last in the Charnock wells and however much it would cost; ExxonMobil's share of these future costs – however large they might ultimately be – was 10 percent.[4] Id. par. 3.16. The trial court approved the settlement under California law, finding that its reasonable value at the time of settlement was $312,850,000. See Amended Order on Motion ... for Determination of Good Faith Settlement (Jan. 9, 2004).[5] Thus, while ExxonMobil's share under the settlement was less than Shell's, it was hardly minor or insubstantial.

Further, releases from a Mobil station provided the sole source of MTBE that contaminated another set of Santa Monica's wells – the Arcadia Wellfield – starting in 1995, causing the city to lose the use of the two production wells in that wellfield. As the EPA stated, the Arcadia Wellfield "has been affected by MtBE from underground gasoline storage tank system leaks...."

> Under the regulatory authority of the Regional Board and with assistance from EPA, **the responsible party, Mobil Oil**, was directed to investigate and clean up this area. However, due to compliance issues, the Regional Board issued a Cleanup and Abatement Order directing **Mobil** to conduct additional investigations and cleanup on an expedited schedule. .... It is expected that complete cleanup of this area will take several years.

Cal/EPA MTBE Project 2-3 (Jul. 1998) (emphases added).[6] Santa Monica ultimately sued Mobil over the Arcadia wellfield contamination. See, e.g., Los Angeles Times, "Santa Monica Sues Mobil Oil" (Jan. 29, 1997) (copy attached hereto as Exhibit 4). The case settled with Mobil paying "an immediate $2.2 million for costs the city has incurred since the potentially toxic gasoline additive MTBE was found" in the wells, as well as anticipated future payments of additional millions of dollars. Los Angeles Times, "Santa Monica Deal With Mobil Expected on Well Cleanup" (Mar. 17, 1998) (copy attached hereto as Exhibit 5). This particular MTBE contamination problem had nothing to do with Shell or any other oil company.

---

[4] The settlement also provided that Shell, Chevron and ExxonMobil would receive partial offsets for settlement proceeds obtained from other defendants.

[5] A copy of this document is attached as Exhibit 3.

[6] A copy of this document was attached to our proffer letter as Exhibit 5. The US EPA and the Los Angeles Regional Water Quality Control Board stated they jointly developed this "informational fact sheet ... to give a brief overview of the current situation and future activities" in Santa Monica (Id. at 1.)

The assertion by counsel at today's hearing that ExxonMobil played only a minor role in Santa Monica is not supported by the facts. I did not want the Court to have the impression that our proffer on punitive damages contained any inaccuracy.

Thank you for your time and attention to this matter.

Respectfully submitted,

Victor M. Sher

cc: All counsel via LNFS