

27486256

Oct  9 2009
11:10AM

# EXHIBIT 2

Dockets.Justia.com

SETTLEMENT AGREEMENT

BETWEEN

SHELL OIL COMPANY, SHELL OIL PRODUCTS COMPANY, SHELL PIPELINE COMPANY, EQUILON ENTERPRISES LLC, EQUILON PIPELINE COMPANY, TEXACO REFINING & MARKETING, INC.,  EXXON MOBIL CORPORATION, CHEVRON U.S.A. INC., CHEVRONTEXACO CORPORATION, THRIFTY OIL CO., BEST CALIFORNIA GAS, Ltd.,

AND

THE CITY OF SANTA MONICA, INDIVIDUALLY AND AS THE ASSIGNEE OF THE SOUTHERN CALIFORNIA WATER COMPANY

# TABLE OF CONTENTS

Page

I. RECITALS ............................................................................................................. 2

II. DEFINITIONS: ..................................................................................................... 3

III. AGREEMENT ...................................................................................................... 7

   3.1   COURT APPROVAL ....................................................................................... 7

   3.2   COVENANTS AND UNDERTAKINGS BY COSM ......................................... 8

   3.2.1     Construction And Operation Of Treatment Facilities ................................. 8

   3.2.2     Maintenance; Insurance ........................................................................... 8

   3.2.3     Compliance With Laws ............................................................................ 9

   3.2.4     Operation of Treatment Facility .............................................................. 9

   3.2.5     Maintenance of Records ......................................................................... 10

   3.2.6     Periodic Reporting ................................................................................. 10

   3.2.7     Inspection Of Property; Books And Records; Audit Rights ................... 10

   3.2.8     Prosecution of Litigation ........................................................................ 11

   3.2.9     Notice Of Defaults ................................................................................. 11

   3.2.10   Operative Agreements ............................................................................ 11

   3.2.11   Use Of Proceeds .................................................................................... 11

   3.2.12   No Sale ................................................................................................... 11

   3.2.13   Payments Of Taxes ................................................................................ 12

   3.2.14   Condemnation; Casualty ........................................................................ 12

   3.2.15   No Condemnation Of Treatment Facility And Facility Site ................... 12

   3.2.16   Transfer Of Ownership Of Property ...................................................... 12

   3.2.17   Fidelity Bond ......................................................................................... 12

3.3  COVENANTS AND UNDERTAKINGS OF SETTLING DEFENDANTS ..................... 13

3.3.1  Payments ................................................................................. 13

3.3.2  Restoring Public Water System ................................................ 13

3.3.3  Notice of Defaults .................................................................... 13

3.3.4  Operative Agreements ............................................................. 13

3.3.5  Maintenance of Records/Periodic Reporting............................. 13

3.3.6  No Encumbrances ..................................................................... 14

3.3.7  COSM's Right of First Refusal ................................................. 14

3.3.8  Compliance With Laws ............................................................. 14

3.3.9  Actions On Collateral .............................................................. 14

3.3.10  Actions On Liens ...................................................................... 14

3.4  INITIAL PAYMENTS ........................................................................ 14

3.5  COSM'S RELEASE OF CLAIMS ....................................................... 16

3.6  SETTLING DEFENDANTS' RELEASE OF CLAIMS ....................................... 18

3.7  TREATMENT FACILITY COSTS ................................................................. 19

3.8  RELEASE PREVENTION ............................................................................. 22

3.9  OPERATIONAL REQUIREMENTS ............................................................. 22

3.10 FEDERAL AND STATE REQUIREMENTS ................................................. 22

3.11 ALTERNATIVE TECHNOLOGY OR REMEDIES ....................................... 23

3.12 SETTLEMENTS WITH OTHER DEFENDANTS ................................................. 23

3.13 TREATMENT FACILITY PAYMENTS ......................................................... 25

3.13.1    Obligation to Fund Treatment Facility Costs ............................. 25

3.13.2    Timing and Amount of Treatment Facility Payment.................... 25

3.14 OPERATING ACCOUNT ......................................................................... 26

3.14.1    Establishment................................................................... 26

3.14.2    Funding. .......................................................................... 26

3.14.3    Additional Sources Of Reimbursement ................................. 28

3.15 FUNDING TERMINATION DATE.............................................................. 28

3.16 REFUND OF EXCESS TREATMENT FACILITY COSTS ............................... 28

3.17 SECURITY AGREEMENT/LIMITED RECOURSE/LIEN. ............................... 29

3.17.1    Security Interest ................................................................ 29

3.17.2    Lien ................................................................................ 29

3.17.3    Limitations On Bank Instructions.......................................... 30

3.17.4    Actions On Security Interest Or Lien ..................................... 30

3.18 SUBSEQUENT RELEASES ...................................................................... 30

3.19 NO ASSIGNMENT WITHOUT CONSENT .................................................. 32

3.20 ENGINEERING COMMITTEE ................................................................. 33

3.20.1    Establishment.................................................................... 33

3.20.2    Removal and Resignation ........................................................33

3.20.3    Place of Meeting ........................................................33

3.20.4    Quorum; Action ........................................................33

3.20.5    Action by Unanimous Written Consent ........................................................33

3.20.6    Deadlock ........................................................34

3.20.7    Duties ........................................................34

3.20.8    Termination ........................................................36

3.21 TREATMENT FACIILITY SITE........................................................36

3.22 CONSERVATION OF WATER........................................................37

3.23 PROJECT ENHANCEMENTS ........................................................38

3.24 COMMUNICATIONS WITH DHS ........................................................39

3.25 REPRESENTATIONS AND WARRANTIES ........................................................40

3.25.1    Of COSM........................................................40

3.25.2    Of The Settling Defendants ........................................................42

3.26 INDEMNIFICATION ........................................................43

3.26.1    Indemnification Obligation ........................................................43

3.26.2    Continuing Obligation ........................................................43

3.27 DEFAULTS AND REMEDIES........................................................44

3.27.1    Notice And Cure........................................................44

3.27.2    Material Event of Default........................................................44

3.27.3    Remedies For Material Event of Default........................................................46

3.27.4    Fundamental Event of Defaults ........................................................47

3.27.5      Remedies for Fundamental Event of Default. ......................................... 49

    3.27.5.1 COSM's Remedies for Fundamental Event of Default by Settling Defendants... 49

    3.27.5.2 Settling Defendants' Remedies for Fundamental Event of Defaults by COSM... 50

3.27.6      Payment of Disputed Amounts .................................................................. 50

3.27.7      Delay ............................................................................................................ 51

3.27.8      Vicarious Liability ...................................................................................... 51

3.28 ALTERNATIVE DISPUTE RESOLUTION PROCESS. ................................................. 51

3.29 INTERPRETATION OF AGREEMENT ........................................................... 53

3.30 PUBLIC STATEMENTS ............................................................................ 53

3.31 CONFIDENTIALITY PROVISIONS ............................................................. 54

3.32 NOTICES ................................................................................................. 54

3.33 WARRANTY OF AUTHORITY .................................................................. 57

3.34 FORCE MAJEURE ..................................................................................... 57

3.35 DISMISSAL .............................................................................................. 57

3.36 GOVERNING LAW ................................................................................... 57

3.37 WAIVER ................................................................................................... 58

3.38 NO ADMISSION ....................................................................................... 58

3.39 WARRANTY OF RIGHTS ......................................................................... 58

3.40 ENTIRE AGREEMENT ............................................................ 59

3.41 SEVERAL LIABILITY ............................................................ 60

3.42 BINDING EFFECT .................................................................. 60

3.43 TRIAL COURT JURISDICTION AND VENUE ........................... 60

3.44 POLICE POWERS.................................................................... 60

3.45 FURTHER DOCUMENTS......................................................... 60

3.46 REPRESENTATION ................................................................ 60

3.47 NEUTRAL CONSTRUCTION ................................................. 61

3.48 VOLUNTARY AND KNOWING RELEASE ............................. 61

3.49 HEADINGS, NUMBER AND GENDER.................................... 61

3.50 TIME IS OF THE ESSENCE ................................................... 61

3.51 GOOD FAITH EFFORT........................................................... 61

3.52 NO WAIVER; REMEDIES ...................................................... 62

3.53 SURVIVAL OF REPRESENTATIONS AND WARRANTIES...... 62

3.54 PAYMENT OF ATTORNEYS' FEES AND COURT COSTS......... 62

3.55 ATTORNEYS' FEES AND COSTS TO ENFORCE AGREEMENT.............. 62

# TABLE OF CONTENTS (Continued)

3.56 ADMISSIBILITY OF AGREEMENT ................................................... 62

3.57 EXECUTION BY COUNTERPARTS............................................... 62

<u>EXHIBITS</u>

EXHIBIT A - ASSIGNMENT AGREEMENT

EXHIBIT B - DE MINIMIS DEFENDANTS [Deleted]

EXHIBIT C - PERMITTED ENCUMBRANCES

EXHIBIT D - FIDELITY BOND

EXHIBIT E - DEED/USE RESTRICTIONS

EXHIBIT F - ACCOUNT CONTROL AGREEMENT

EXHIBIT G - SECURITY AGREEMENT

EXHIBIT H- DESIGN PARAMETERS FOR CHARNOCK MTBE/TBA
           TREATMENT PLANT

EXHIBIT I - JAMS RULES

<u>SCHEDULES</u>

Schedule 3.13

**SETTLEMENT AGREEMENT**

This Settlement Agreement is made by and between Shell Oil Company, Shell Oil Products Company, Shell Pipeline Company , Equilon Enterprises LLC, Equilon Pipeline Company, Texaco Refining & Marketing, Inc. (collectively, "Shell"), Exxon Mobil Corporation, a New Jersey Corporation ("XOM"), Chevron U.S.A. Inc., a Pennsylvania corporation, and its parent, ChevronTexaco Corporation, a Delaware corporation (collectively Chevron U.S.A. Inc. and ChevronTexaco Corporation are referred to as "CVX"), Thrifty Oil Co., a California corporation ("TOC"), Best California Gas, Ltd., a California limited partnership ("Best"), and the City of Santa Monica ("COSM"), on its own behalf and as assignee of claims of the Southern California Water Company ("SCWC") pursuant to the provisions and conditions of the agreement between COSM and SCWC attached hereto as Exhibit "A" ("Assignment Agreement"), regarding the settlement of all claims between them in the litigation captioned: (a) City of Santa Monica v. Shell Oil Company, et al. Orange County Superior Court Case No. 01-CC-04331; and (b) Southern California Water Company v. Shell Oil Company et al., Orange County Superior Court Case No. 02CC11407 now pending before Judge Stephen J. Sundvold in the Orange County Superior Court (collectively, the "Litigation").

## I. RECITALS

1.1     On or about March 19, 2002, COSM and SCWC entered into the Assignment Agreement, pursuant to which COSM obtained an assignment of claims and causes of action of SCWC pursuant to the provisions and conditions contained therein. A copy of the Assignment Agreement between COSM and SCWC has been provided previously to the Settling Defendants (as defined below).

1.2     The parties intend by this Settlement Agreement to:

1.2.1     design, implement and operate a Treatment Facility (as defined below) to address MTBE, TBA, and other Related Petroleum Hydrocarbons (as defined below) to be owned and operated by COSM, to restore an independent, reliable source of drinking water to COSM by restoring to COSM full use of its Charnock Well Field wells. This Treatment Facility

is not intended to treat the waters produced by COSM's Arcadia or Olympic well fields;

        1.2.2    settle and release all of COSM's Claims (as defined below) and, as permitted by the Assignment Agreement, dismiss with prejudice the Litigation on behalf of SCWC against the Settling Defendants, TOC, and Best and their respective Affiliates; and

        1.2.3    provide a basis for equitable settlements with other Defendants to promote the goals enumerated above.

## II. DEFINITIONS:

Terms used in this Settlement Agreement shall have the meanings defined below or as otherwise defined in this Settlement Agreement:

2.1    "Affiliate" means, as applied to any Person, any other Person directly or indirectly controlling, controlled by, or under common control with, that Person.

2.2    "Approved Annual Budget" means the annual budget for the construction and/or maintenance and operation of the Treatment Facility prepared with a reasonable level of detail and approved by the Engineering Committee pursuant to the applicable provisions of this Settlement Agreement, including any amendments to the budget by the Engineering Committee.

2.3    "Aquifer" means that sub-surface water bearing zone that supplies drinking water to the Charnock Well Field when the Charnock Well Field is active and operational.

2.4    "Arcadia Site" means the property currently owned by COSM located at 1228 South Bundy Drive, Los Angeles and any adjacent property acquired by COSM under the terms of this Settlement Agreement.

2.5    "Bank" means Bank of New York or other financial institution agreed upon by COSM and Settling Defendants.

2.6    "Best Available Technology" means a treatment process as defined by the DHS pursuant to Section 116370 of the California Health & Safety Code.

2.7    "Business Day" means any day other than (i) a Saturday or a Sunday or (ii) a day on which commercial banks in Los Angeles, California are closed.

2.8    "Charnock Well Field" means drinking water supply wells located on property

owned by the City of Santa Monica at 11375 Westminister Avenue, Los Angeles, California, including, but not limited to, COSM production wells 13, 15, 16, 18, and 19, any replacement wells drilled on that property, plus any drinking water supply wells owned by SCWC that are subject to the Assignment Agreement.

2.9    "Collateral" means all of COSM's rights, title and interest in, to and under the following:

      (i)    the proceeds from the Litigation or the Claims that COSM is obligated to deposit into the Operating Account pursuant to the terms of the Settlement Agreement, whether from judgments or settlement;

      (ii)    the Operating Account;

      (iii)    the Control Funds (as defined in the Operating Account Control Agreement);

      (iv)    all payments that COSM is required to deposit into the Operating Account pursuant to the Settlement Agreement from (a) insurance policies or (b) the Fidelity Bond required to be maintained by COSM with respect to the Treatment Facility and the Operating Account pursuant to the Settlement Agreement; and

      (v)    any "proceeds" (as defined in the California Uniform Commercial Code) of the foregoing.

Notwithstanding anything to the contrary set forth herein, "Collateral" does not include any claim, cause of action, or any chose or thing in action.

2.10    "Date of Execution" means the date the City Manager of the COSM signs this Settlement Agreement.

2.11    "Default" means any event or condition which, with the giving of notice or the lapse of time or both, would, unless cured or waived, become an Event of Default.

2.12  "Defendant" means any past, present, or future defendants in the Litigation or any other litigation involving the Claims.

2.13  "DHS" means California Department of Health Services or any successor entity.

2.14  "EC Directives" means any direction given or recommendation made by the Engineering Committee, including, but not limited to, any operating manuals approved by the Engineering Committee, decisions, orders as instructed or determined by the Engineering Committee.

2.15  "Effective Date" means the date this Agreement is approved by the trial court as a good faith settlement.

2.16  "Encumbrance" means any security interest, pledge, mortgage, lien, charge, adverse claim of ownership or use, restriction on transfer (such as a right of first refusal or other similar right), defective title, or other encumbrance of any kind or character.

2.17  "Extremely Impaired Source Policy" means the California Department of Health Services' November 5, 1997 Policy Memo 97-005 Policy Guidance for Direct Domestic Use of Extremely Impaired Sources and any modified policy or successor policy.

2.18  "Facility Site" means that portion of real property on which all or any part of the Treatment Facility is to be constructed or located pursuant to the terms of this Settlement Agreement.

2.19  "Final Judgment" means a final nonappealable judgment against a Defendant in the Litigation or any defendants with respect to Claims outside of the Litigation.

2.20  "Governmental Authority" means any government, any governmental, quasi-governmental or regulatory entity, department, commission, board, agency, or instrumentality, and any court, tribunal, or judicial body, in each case whether federal, state, or local.

2.21  "Settling Defendant(s)" means Shell, XOM and/or CVX.

2.22  "Investment Grade Rating" means (i) with respect to Standard & Poor's Rating Group, a division of McGraw-Hill, Inc., a rating of BBB- or higher, or (ii) with respect to Moody's Investor's Services, Inc., a rating of Baa3 or higher.

2.23 "MTBE" means methyl tertiary butyl ether, all products containing said compound, and its breakdown and degradation products.

2.24 "Operating Year" means a 12-month period covered by an Approved Annual Budget.

2.25 "Operations and Maintenance Costs" means the costs of labor, materials, supplies, and services incurred to replace, regenerate, and dispose of filtration or treatment media and to inspect, operate, maintain and repair the Treatment Facility.

2.26 "Operative Agreements" means, collectively, (i) the Security Agreement, (ii) the Account Control Agreement, and (iii) each other instrument, certificate, and agreement delivered pursuant to this Settlement Agreement or the Operative Agreements.

2.27 "Permitted Encumbrances" means, those encumbrances as set forth in Exhibit "C".

2.28 "Person" means any individual, general or limited partnership, firm, corporation, limited liability company, association, trust, unincorporated organization or other entity, including any Governmental Authority.

2.29 "Related Petroleum Hydrocarbons" means diisopropyl ether (DIPE), tertiary amyl methyl ether (TAME), ethyl tertiary butyl ether (ETBE), benzene, toluene, ethyl benzene, trimethyl benzene, total xylene, and total petroleum hydrocarbons as gasoline (TPHg).

2.30 "TBA" means tertiary butyl alcohol.

2.31 "Treatment Facility" means a treatment system designed and constructed pursuant to this Settlement Agreement to remove MTBE, TBA, and Related Petroleum Hydrocarbons from water produced by the Charnock Well Field from the Aquifer for use and distribution in COSM's public water supply system. The Treatment Facility may include, but is not limited to, treatment vessels, the structure on which such vessel(s) is mounted, filtration or treatment media, treatment equipment, green sand filtration, chlorination equipment, backwash tank, spill containment facility, any and all associated buildings and equipment, including, but not limited to, monitoring equipment, valves and instrumentation, conveyance piping, landscaping, fencing, security facilities, as well as any and all related facilities required by DHS pursuant to its review and/or

1  approval of any operations plan for any such facility or facilities.

2                          **III.  AGREEMENT**

3      3.1     **COURT APPROVAL**

4          3.1.1    Within thirty days of the trial court's order approving this settlement

5  under Code of Civil Procedure section 877.6 as a good faith settlement, the Settling Defendants,

6  TOC, and Best shall make the Initial Payments as provided in Paragraph 3.4 below.  If the trial

7  court finds the settlement not to be in good faith, this Settlement Agreement (and all Operative

8  Agreements) shall be void.

9          3.1.2    If any appellate court (including any court of appeal or supreme court)

10 or the trial court on remand, reconsideration, or rehearing finds that this settlement does not

11 constitute a good faith settlement, any party to this Settlement Agreement may, within thirty days

12 of written notice of such event, declare in writing this Settlement Agreement (and all Operative

13 Agreements) void.  In such event, the parties shall take such steps and execute such documents as

14 may be required to restore the parties to their respective positions as if this Settlement Agreement

15 had never been entered into.  Upon this Settlement Agreement and the Operative Agreements

16 becoming void pursuant to the terms hereof, COSM shall within 30 days of such event return the

17 Initial Payments and the Treatment Facility Payments, if any, to the Settling Defendants, TOC,

18 and Best.  If this Settlement Agreement becomes void pursuant to this Paragraph 3.1.2, then (i) the

19 Initial Payment repayment obligation shall be a full recourse obligation of COSM, and (ii) the

20 Treatment Facility Payment repayment obligation shall be a full recourse obligation of COSM and

21 shall be secured as provided in the Security Agreement.  Such repayment obligation of COSM,

22 and any provisions of this Settlement Agreement and the Operative Agreements necessary to

23 construe and enforce such obligation, including, without limitation, the Security Agreement and

24 Paragraph 3.28 ("Alternative Dispute Resolution Process") hereof, shall survive in full force and

25 effect until such repayments have been made in full notwithstanding that the rest of this Settlement

26 Agreement and the Operative Agreements shall have been declared void.  This Paragraph 3.1.2

27 does not govern Repayment obligations under any other provisions of this Settlement Agreement.

1

3.2 **COVENANTS AND UNDERTAKINGS BY COSM**

2

Prior to the Funding Termination Date, COSM agrees that it will comply with the

3

following covenants (in addition to its other covenants and obligations contained in this Settlement

4

Agreement):

5

3.2.1 Construction And Operation Of Treatment Facilities. Consistent with

6

the operational requirements of its public water supply system and federal and state requirements,

7

COSM shall construct and operate the Treatment Facility with Treatment Facility Payments in

8

accordance with the budgets and design to be established by the Engineering Committee,

9

including amendments required by law. The goal of this project is to restore to the City use of the

10

Charnock well field for public drinking water purposes.

11

3.2.2 Maintenance; Insurance. COSM will keep the Treatment Facility in

12

good working order and condition, and will maintain, as directed by the Engineering Committee,

13

with financially sound and reputable insurance companies, insurance on the Treatment Facility

14

against liabilities regarding the construction and operation of the Treatment Facility and risks as

15

consistent with coverage maintained by companies of established repute or municipalities engaged

16

in similar operation, including, but not limited to, fire, extended coverage, public liability,

17

property damage, and worker's compensation. Without limiting the generality of the foregoing,

18

the following insurance policies shall be obtained and maintained: (i) a general liability insurance

19

policy with coverage in the amount of one million dollars (the cost of such insurance policy and

20

any deductibles shall be Treatment Facility Costs); (ii) a general liability insurance policy with

21

coverage in the amount of twenty million dollars in excess of the one million dollar insurance

22

policy set forth above (all costs and deductibles associated with such twenty million dollars

23

insurance policy shall be the sole responsibility of COSM, and COSM agrees to maintain such

24

policy as long as the Treatment Facility is in operation); and (iii) if required by the Settling

25

Defendants, an additional general liability insurance policy providing excess coverage above the

26

twenty million dollar policy referenced (the cost of such policy and its deductibles shall be

27

Treatment Facility Costs). COSM shall construct, maintain, and operate the Treatment Facility in

28

compliance with all such insurance policies. All such insurance shall provide that it may not be canceled or materially modified without 30 days prior written notice to the Settling Defendants. The Settling Defendants shall be additional named insureds in all policies required pursuant to this Paragraph 3.2.2. COSM shall cause all contractors retained for the purposes of building, maintaining, or repairing the Treatment Facility to obtain insurance against risks likely to result from the type of work contracted, with financially sound and reputable insurance companies and cause the contractors to name COSM and the Settling Defendants as additional insureds. Such contractor insurance limits shall be determined and approved by the Engineering Committee. No insurance required hereunder shall include deductible amounts to which Settling Defendants have not previously consented in writing. Settling Defendants and COSM shall be named as indemnitees in Material Contracts (as defined below). Certificates of insurance for the policies required hereunder (and/or original policies, if required by the Settling Defendants) and copies of construction contracts awarded under this Settlement Agreement shall be delivered to the Settling Defendants from time to time upon demand. No less than 30 days prior to the expiration of each policy, COSM shall deliver to the Settling Defendants evidence of renewal or replacement of such policy reasonably satisfactory to the Settling Defendants. COSM shall give the Settling Defendants immediate notice of any casualty to any portion of the Treatment Facility, whether or not covered by insurance. COSM shall not settle, adjust, or compromise any claim for such casualty without the prior written approval of the Settling Defendants, which shall not be unreasonably withheld.

        3.2.3  Compliance With Laws. COSM will comply with all applicable laws, ordinances, rules, regulations and requirements of Governmental Authorities related to the design, construction, operation, and maintenance of the Treatment Facility. COSM shall take all steps reasonably necessary to insure that the Treatment Facility and Facility Site have all governmental permits and authorizations necessary in order for its construction, operation and maintenance.

        3.2.4  Operation of Treatment Facility. COSM shall run the Treatment Facility in an efficient manner and in accordance with federal and California requirements and an

operating manual approved by the Engineering Committee.

        3.2.5   Maintenance of Records. COSM shall maintain records of costs for treating the water at the Treatment Facility, including consumption of raw materials and utilities. Unit treatment costs, measured as dollars per 1000 gallons, shall be reported to the Engineering Committee on a regular basis.

        3.2.6   Periodic Reporting. COSM shall prepare a periodic report to the Engineering Committee detailing any technical problems (e.g., a contaminant other than MTBE, TBA, or Related Petroleum Hydrocarbons appears in the water being treated) or budgetary problems (e.g., carbon usage excessive) along with recommended solutions, as appropriate.

        3.2.7   Inspection Of Property; Books And Records; Audit Rights. COSM will keep or cause to be kept proper books of record, budget reconciliation records, and accounts in which full, true, and correct entries shall be made of all dealings and transactions in relation to the Treatment Facility and the deposits to, and disbursements from, the Operating Account (defined below), including the Treatment Facility Costs. COSM will permit representatives appointed by the Settling Defendants at reasonable times and intervals to visit and inspect the Treatment Facility, to examine and make abstracts from any of its books and records, and to discuss its affairs, finances and accounts with the Engineering Committee and COSM's employees and representatives; provided, however, that if COSM shall have outsourced all or any portion of its accounting, billing, or similar functions to a third party, COSM authorizes that third party to permit the Settling Defendants or its agents, upon reasonable notice to both COSM and such third party, at any time during regular business hours and as often as reasonably requested (but not so as to materially interfere with the business of such third party), to have access to perform inspections or audits and to respond to the Settling Defendant's request for information concerning any properties, books, or records of COSM. COSM may (but shall not be required) to be present during any such inspections or audits of the books and records held by such third party. COSM shall deliver to such Settling Defendant, in form and substance reasonably satisfactory to it and within 10 days of its request therefore from time to time, all information relating to the Treatment

1    Facility reasonably required by such Settling Defendant.

2                    3.2.8    Prosecution of Litigation.  COSM shall use its best efforts to prosecute

3    its claims in the Litigation against any non-settling Defendants with the goal of achieving the

4    maximum possible recovery consistent with the evidence.

5                    3.2.9    Notice Of Defaults.  COSM will promptly give written notice to the

6    Settling Defendants of the occurrence of any Default or Event of Default by COSM at the earliest

7    possible date after COSM's discovery of such Default or Event of Default, but in any event no

8    later than five Business Days following discovery of any such Default or Event of Default, signed

9    by an authorized representative of COSM setting forth the details of, and the actions that COSM

10   proposes to take with respect to, such Default or Event of Default.  COSM will also promptly give

11   notice to the Settling Defendants of any pending or threatened action, suit or proceeding, or

12   adverse decision which could materially and adversely affect construction and/or operations of the

13   Treatment Facility or which questions the validity of this Settlement Agreement or any Operative

14   Agreement.

15                   3.2.10   Operative Agreements.  COSM shall comply with the terms and

16   covenants of each of the Operative Agreements to which it is a party.  COSM shall not amend,

17   modify or terminate, or agree to amend, modify, or terminate, any of the Operative Agreements

18   without the prior written consent of Settling Defendants, except as permitted in this Settlement

19   Agreement.

20                   3.2.11   Use Of Proceeds.  COSM shall use the proceeds of the Operating

21   Account in accordance with the terms of this Settlement Agreement and all relevant EC

22   Directives.  COSM shall make all payments to third parties reasonably promptly in accordance

23   with all EC Directives.

24                   3.2.12   No Sale.  COSM shall not sell, or otherwise dispose of, transfer to a

25   third party or encumber, or permit the imposition of any Encumbrance (other than Permitted

26   Encumbrances) on, all or any part of the Treatment Facility, the Facility Site, any Collateral, the

27   Litigation, or the Claims, except as expressly permitted by this Settlement Agreement or the

Operative Agreements.

3.2.13 Payments Of Taxes. When required by law, COSM shall pay and discharge promptly all taxes, assessments, and governmental charges or levies imposed upon it, the Facility Site and the Treatment Facility. Subject to Paragraph 3.21 taxes paid by COSM for the Treatment Facility shall be a Treatment Facility Cost (as defined below).

3.2.14 Condemnation; Casualty. Upon learning of the institution or threatened institution of any proceeding for the condemnation or other taking for public or quasi-public use of any portion of the Facility Site or Treatment Facility, COSM shall immediately notify the Engineering Committee and the Settling Defendants in writing, together with copies of all applicable documents. COSM shall take action reasonably required to enable the Settling Defendants to have standing and to participate in any such proceeding and be represented therein by counsel of its choice. In the event of a condemnation or other taking for public or quasi-public use of any portion of the Facility Site or Treatment Facility, COSM shall have the obligation to rebuild the Treatment Facility in accordance with applicable EC Directives and locate alternate Facility Sites pursuant to the EC Directives. In event of casualty COSM shall have the obligation to rebuild the Treatment Facility in accordance with the applicable EC Directives and as part of the approved Annual Budget.

3.2.15 No Condemnation Of Treatment Facility And Facility Site. COSM shall not condemn or cause to be condemned all or any part of the Facility Site or Treatment Facility for any purpose.

3.2.16 Transfer Of Ownership Of Property. In the event that title to any property vests in the Settling Defendants pursuant to Paragraph 3.7.5 COSM agrees that it shall take all customary and reasonable actions, including entering into customary transfer documents and obtaining title insurance, to effect such transfer and vest the undivided ownership of such property in the Settling Defendants free and clear of all Encumbrances (other than Permitted Encumbrances).

3.2.17 Fidelity Bond. COSM shall maintain a fidelity bond in the form

attached hereto as Exhibit "D" (the "Fidelity Bond") and shall cause Settling Defendants to be named as additional insureds.

### 3.3 COVENANTS AND UNDERTAKINGS OF SETTLING DEFENDANTS

Prior to the Funding Termination Date, each of the Settling Defendants agrees that it will comply with the following covenants (in addition to its other covenants and obligations contained in this Settlement Agreement):

3.3.1 Payments. It shall promptly make all of its Initial Payments and Treatment Facility Payments as required by this Settlement Agreement.

3.3.2 Restoring Public Water System. Consistent with the terms of this Settlement Agreement, it shall cooperate with COSM to expedite the achievement of the goals of designing, building, operating and maintaining the Treatment Facility, and restoring COSM's use of the Charnock Well Field in its public water supply system.

3.3.3 Notice of Defaults. It will promptly give written notice to COSM of the occurrence of any Default or Event of Default by it at the earliest possible date after the discovery of such Default or Event of Default by it, but in any event no later than five Business Days following discovery of any such Default or Event of Default, signed by its authorized representative. The notice shall set forth the details of the asserted Default or Event of Default, and the actions that it proposes to take with respect to such Default or Event of Default. It will also promptly give notice to COSM of any pending or threatened action, suit or proceeding, or adverse decision which could materially and adversely affect construction and/or operations of the Treatment Facility, or the ability of it to effect any Initial Payment or Treatment Facility Payment, or which questions the validity of this Settlement Agreement or any Operative Agreement.

3.3.4 Operative Agreements. It shall comply with the terms and covenants of each of the Operative Agreements to which it is a party. It shall not amend, modify or terminate, or agree to amend, modify or terminate, any of the Operative Agreements without the prior written consent of COSM, except as permitted in this Settlement Agreement.

3.3.5 Maintenance of Records/Periodic Reporting. It shall maintain records

of all Treatment Facility Payments made to the Operating Account by it and shall provide to COSM a summary thereof annually.

3.3.6 <u>No Encumbrances</u>. It shall neither create nor maintain any encumbrances on any COSM property, except as contemplated by this Settlement Agreement or the Operative Agreements or pursuant to the enforcement of its rights under this Settlement Agreement or the Operative Agreements.

3.3.7 <u>COSM's Right of First Refusal</u>. In the event that title to any property vests in the Settling Defendants pursuant to Paragraph 3.7.5, the Settling Defendants shall offer COSM a customary right of first refusal to repurchase such property.

3.3.8 <u>Compliance With Laws</u>. Settling Defendants will direct their Representative on the Engineering Committee to use best efforts (i) to ensure that the Treatment Facility complies with all applicable laws, ordinances, rules, regulations, and requirements of Governmental Authorities related to the design, construction, operation, and maintenance of the Treatment Facility and (ii) to take all steps reasonably necessary to ensure that the Treatment Facility and Facility Site have all governmental permits and authorizations necessary in order for its construction, operation, and maintenance.

3.3.9 <u>Actions On Collateral</u>. Settling Defendants shall give no instructions to the Bank and take no actions with respect to the Operating Account except as permitted by this Settlement Agreement and the Operative Agreements.

3.3.10 <u>Actions On Liens</u>. Settling Defendants shall not seek to enforce any rights under the lien granted in Paragraph 3.17 except under the circumstances allowed by this Settlement Agreement.

3.4 **INITIAL PAYMENTS**

3.4.1 The Initial Payments as required by Paragraph 3.1.1 shall be:

(A) By and on behalf of XOM: $10 million within 30 days of the Trial Court's good faith approval of this settlement.

(B) By and on behalf of CVX, TOC, and Best: $20 million within

30 days of the Trial Court's good faith approval of this settlement.

(C) By and on behalf of Shell: $62.5 million within 30 days of the Trial Court's good faith approval of this settlement, to be disbursed as follows:

1. $32.5 million to COSM immediately upon payment;

2. $30 million to be placed in an escrow account, to be further disbursed to COSM as follows:

    i. $10 million, five (5) business days after COSM provides notice and documentation to Shell that COSM has executed the construction contract for the Treatment Facility;

    ii. $10 million, five (5) business days after COSM provides notice and documentation to Shell that (1) DHS has issued a permit to allowing delivery of drinking water from the Treatment Facility and (2) COSM has commenced delivery of drinking water from the Treatment Facility such that Shell is no longer paying for replacement water;

    iii. $10 million at the Funding Termination Date.

    iv. If Shell disagrees with COSM that the conditions for disbursement have been achieved and provides notice to COSM within the notice period, the matter shall be referred to arbitration under Paragraph 3.28.

    v. COSM may invest the funds placed in escrow pursuant to this sub-paragraph (C) as COSM sees fit. COSM shall have full access to interest on these funds as such interest accrues; the principal amounts

described in subparagraph (C)(2) shall be available to COSM only when the respective payment milestones are achieved. COSM is responsible for payment of taxes, if any, on interest earned. Settling Defendants shall not be liable for any losses of principal amounts in the escrow account.

3.4.2    The Initial Payments are non-refundable, except as provided in Paragraph 3.1 above, are not required to be deposited in the Operating Account, and may be used by COSM in any manner as COSM in its sole and absolute discretion sees fit.

3.5    **COSM'S RELEASE OF CLAIMS**

Upon payment of the Initial Payments, the following release of claims shall be in full force and effect:

3.5.1    Except for the exclusions expressly set forth in Paragraph 3.5.3 below, COSM, individually and as an assignee of SCWC, releases and forever discharges Shell Oil Company, Shell Oil Products Company, Shell Pipeline Company, Equilon Enterprises LLC, Texaco Refining and Marketing, Inc, Exxon Mobil Corporation, ExxonMobil Oil Corporation, ChevronTexaco Corporation, Chevron Corporation, Chevron U.S.A. Inc, Chevron Products Company, Texaco Inc., TOC, and Best, and each of them, and each of their respective Related Persons (as defined below) (collectively, the "Released Parties"), of and from all Claims (as defined below); provided, however, that any Related Person who is a current Defendant and is not a Settling Defendant, TOC or Best, is not released from any Claims by this Settlement Agreement. Under no circumstances shall this Settlement Agreement release any Claims against, or benefit, any non-settling Defendants. For purposes of this paragraph, "Related Persons" means, with respect to the Settling Defendants, TOC and Best, officers, employees, directors, partners, shareholders, agents, accountants, attorneys, insurance carriers, sureties, representatives, independent contractors, consultants, advisors, predecessors-in-interest, successors-in-interest, parents, joint ventures (but not including any joint ventures with non-settling Defendants),

subsidiaries, Affiliates, franchisee owners and operators of retail gasoline service stations and property owners and lessors of retail gasoline service station sites located within a one and one-half mile radius of the Charnock Well Field, both past and present.

3.5.2    For purposes of this Settlement Agreement, "Claims" mean any and all demands, actions, causes of action, suits, obligations, assessments, damages (including, without limitation, diminution-in-value; stigma; property damage; lost enjoyment or use; lost profits; and punitive or exemplary damages), liabilities, investigation costs, remediation costs, restoration costs, other costs, losses, or expenses (including attorneys' fees and expert witness fees) of any kind or nature whatsoever (whether legal or equitable, past, present or future, ascertained or unascertained, known or unknown, suspected or unsuspected whether based in tort, contract, or any local, state or federal law, common law, statute, ordinance, or regulation), arising out of, relating to, or resulting from: (i) actual or threatened contamination of the Charnock Well Field from MTBE, TBA, and/or Related Petroleum Hydrocarbons manufactured, sold, marketed, stored, refined, supplied, distributed, exchanged, or discharged by the Released Parties, including any such actual or threatened contamination of the Charnock Well Field resulting from any future release that is not a "Subsequent Release" as described in Paragraph 3.18 ("Subsequent Releases") below; (ii) COSM's investigation and/or remediation of any such actual or threatened contamination, and any other action by COSM arising out of, relating to, or resulting from such actual or threatened contamination; and/or (iii) any fact or circumstance that has or could have been raised by COSM and/or SCWC as part of the Litigation against the Released Parties. In addition, Claims shall include all claims, rights and causes of action assigned to COSM against the Released Parties pursuant to the provisions and conditions of the Assignment Agreement.

3.5.3    Excluded from the Claims released by COSM in this Settlement Agreement are:

3.5.3.1  any "Subsequent Release", as described in Paragraph 3.18 ("Subsequent Releases") below;

1         3.5.3.2   any lawsuits brought by third parties against COSM or SCWC

2 claiming personal injury and/or damage to property owned by that party arising out of the delivery

3 of drinking water contaminated by MTBE, TBA, and/or Related Petroleum Hydrocarbons;

4         3.5.3.3   any and all obligations of any of the Released Parties under this

5 Settlement Agreement and any Operative Agreements; and

6         3.5.3.4   any claim, right or cause of action of SCWC not assigned to

7 COSM pursuant to the provisions and conditions of the Assignment Agreement.

8     3.6    **SETTLING DEFENDANTS' RELEASE OF CLAIMS**

9         3.6.1    Except for any and all obligations of COSM under this Settlement

10 Agreement, and Operative Agreements, the Settling Defendants, Best, and TOC hereby release

11 and forever discharge COSM individually and as assignee of SCWC under the Assignment

12 Agreement and COSM's officers, employees, directors, partners, shareholders, parent companies,

13 subsidiaries, agents, accountants, attorneys, insurance carriers, sureties, representatives,

14 consultants, advisors, predecessors in interest, and successors in interest (collectively, the

15 "COSM/SCWC Released Parties"), of and from any claims that have been or could have been

16 asserted in the Litigation against COSM individually and/or as assignee of SCWC. Under no

17 circumstances shall this Settlement Agreement release any claims against, or benefit, any non-

18 settling Defendants.

19

20         3.6.2    CVX releases COSM and SCWC from any claims CVX has against

21 SCWC arising from any claim or allegation related to any payment made to SCWC by CVX under

22 the terms of the agreement entered into between SCWC, Chevron Products Company, and Shell

23 Oil Products Company dated February 24, 1998, or under any other order or obligation of any

24 kind arising from or related to water replacement costs.

25         3.6.3    Shell, CVX, XOM, TOC and Best, on behalf of themselves and

26 their respective Released Parties (as defined in Paragraph 3.5.1 above), hereby release and

27 forever discharge each other from all Claims (as defined in Paragraph 3.5.3 above). Shell

28 shall promptly after the Effective Date dismiss with prejudice its Cross-Complaint against

CVX, XOM, TOC and Best. This release shall not apply to any suit that may hereafter be filed by a person or entity that is not a party to the Litigation, other than a governmental entity, for property damage or personal injury. This release shall not affect any rights or obligations of the Settling Defendants under this Settlement Agreement or other agreements related hereto.

### 3.7 TREATMENT FACILITY COSTS

During the term of this Settlement Agreement and included as part of the Approved Annual Budget the Settling Defendants will fund, by Treatment Facility Payments, the "Treatment Facility Costs." "Treatment Facility Costs" shall mean the full reasonable costs of remediating MTBE, TBA, and/or Related Petroleum Hydrocarbons in the water produced from COSM's Charnock Well Field from releases of gasoline, including, but not limited to:

3.7.1 the full reasonable costs of design and construction of the Treatment Facility, including, but not limited to:

3.7.1.1 any pilot tests for the evaluation of treatment processes;

3.7.1.2 professional services to prepare plans and specifications used to solicit bids for construction projects;

3.7.1.3 construction management services;

3.7.1.4 amounts due under approved construction contract(s) and any approved change orders;

3.7.1.5 conveyance piping costs to support the Treatment Facility;

3.7.1.6 necessary demolition/reconstruction costs;

3.7.1.7 permitting costs and mitigation measures as required by the permitting process (including operational plans for Treatment Facility, environmental impact and assessment reports [including public participation costs], construction permits, and associated professional services);

3.7.1.8 any needed modifications or additions to existing water treatment equipment or processes to assure adequate treatment;

3.7.1.9  any facilities or processes needed to dispose of treated water that cannot be delivered to customers pending the approval of the DHS;

3.7.1.10  any and all other costs incurred to comply with California or federal requirements for the Treatment Facility; and

3.7.1.11  cost of insurance for design and construction of the Treatment Facility.

3.7.2   the full reasonable costs of operating and maintaining the Treatment Facility, including, but not limited to:

3.7.2.1  labor, power, chemical and analytical costs;

3.7.2.2  costs for treatment media replacement and disposal, and vessel repairs or replacements, regeneration of treatment media (if required) as incurred;

3.7.2.3  costs associated with equipment repair and replacement;

3.7.2.4  all costs related to compliance with California operating permit requirements, and/or the Extremely Impaired Source Policy;

3.7.2.5  the cost of operating and maintaining any modifications or additions to water treatment and processes for Aquifer water; and

3.7.2.6  cost of insurance for the operation and maintenance of Treatment Facility.

3.7.3   an annual fee to cover internal charges of COSM, including but not limited to, access fees for the use of COSM property and salary of COSM employees overseeing the Treatment Facility and participating on the Engineering Committee.  This fee shall be Five Hundred Thousand Dollars ($500,000) per Operating Year from the date of this Agreement until drinking water is delivered from the Treatment Facility.  After drinking water is delivered from the Treatment Facility, the fee shall be Three Hundred Thousand Dollars ($300,000) per Operating Year until the Funding Termination Date.  Payments under this sub-paragraph 3.7.3 shall be pro rated as appropriate.

3.7.4 Legal and expert costs paid to third parties reasonably necessary to permit or construct, operate, or maintain the Treatment Facility.

3.7.5 If additional or alternative real property is needed for the Treatment Facility, then the Settling Defendants will fund costs of acquisition (including any eminent domain costs). If COSM continues to use such property for treatment of water after the Funding Termination Date, then COSM will pay a reasonable rent to Settling Defendants until such use ceases, and when COSM ceases using the real property for water treatment, COSM shall deliver a quitclaim deed on an undivided basis in the Settling Defendants as permitted by state or federal law; provided that if not so permitted, COSM shall reimburse such acquisition costs.

3.7.6 replacement water, including:

3.7.6.1 future unreimbursed costs for such water from the Charnock Well Field. Nothing in this Settlement Agreement, however, is intended to relieve any non-settling Defendant of its obligations under existing or future EPA orders and/or RWQCB orders;

3.7.6.2 should decisions of the Engineering Committee require that the Arcadia and/or Olympic well(s) be removed from service, the Settling Defendants shall supply replacement water until these wells are returned to service;

3.7.6.3 future costs of replacement water if, through no fault of COSM, the quantity of water delivered from the Treatment Facility is diminished. In such case the Settlilng Defendants will pay the costs of replacing the diminished flow. In no event will Settling Defendants be required to pay for replacement water due to diminished yield from the Aquifer due to natural causes.

3.7.7 any other costs incurred pursuant to Paragraph 3.11 ("Alternative Technology or Remedies"), subject to the limits provided in Paragraph 3.11.2.

3.7.8 fees and expenses payable to the Bank for administration of the Operating Account.

3.7.9 any costs to fund the reconstruction of the Treatment Facility in the

event of casualty to, or condemnation or other taking for public or quasi-public use of, the Treatment Facility or any portion thereof that are not reimbursed by insurance proceeds or condemnation/taking awards.

3.7.10 Settling Defendants shall have the right to seek ADR pursuant to Paragraph 3.28 ("Alternative Dispute Resolution Process") if they contend that COSM has incurred or will incur unreasonable Treatment Facility Costs.

### 3.8 RELEASE PREVENTION

XOM and Best shall record deed/use restrictions substantially in the form of Exhibit "E" with respect to the following properties owned by them within the immediate vicinity of the Charnock Well Field to avoid future contamination problems for the Charnock Well Field: 3505 South Sepulveda Boulevard, Los Angeles, California (Best) and 3800 South Sepulveda Boulevard, Los Angeles, California (XOM).

### 3.9 OPERATIONAL REQUIREMENTS

COSM shall own and operate the Treatment Facility, and shall be responsible for the Treatment Facility activation, staffing, maintenance and performance monitoring. COSM retains the right to make all operational decisions concerning the Charnock Well Field and the Treatment Facility. The Settling Defendants specifically acknowledge that COSM has the right and obligation to operate the Charnock Well Field and the Treatment Facility in a manner that:

3.9.1 preserves COSM's water rights;

3.9.2 satisfies the water quality and water quantity requirements of COSM;

3.9.3 assures a safe and reliable supply of water to COSM's customers; and

3.9.4 is consistent with the reasonable management objectives of COSM in the management of its water system.

### 3.10 FEDERAL AND STATE REQUIREMENTS

3.10.1 All design, construction, operation, and maintenance of the Treatment Facility shall comply with applicable federal and California requirements.

3.10.2 DHS currently reviews and approves operating plans for all public

water treatment systems. Subject to Paragraph 3.24 ("Communications with DHS") below, to the extent DHS, or any other state or federal regulatory agency, requires COSM to install any equipment or facilities or to provide any services for the operation or maintenance of the Treatment Facility in connection with the treatment of MTBE, TBA, and Related Petroleum Hydrocarbons prior to the Funding Termination Date, the Settling Defendants shall bear the cost (which shall be a Treatment Facility Cost) of complying with those requirements through Treatment Facility Payments. Notwithstanding any other provisions set forth herein, the Settling Defendants reserve their rights to protest, by administrative procedures or judicial action, as appropriate, the imposition of any federal or California requirements. Should the Settling Defendants exercise such right of protest, COSM agrees to cooperate by providing non-privileged documents or other non-privileged information reasonably required.

### 3.11 ALTERNATIVE TECHNOLOGY OR REMEDIES

3.11.1    If a new Best Available Technology for MTBE, TBA, or Related Petroleum Hydrocarbons is approved by DHS, or its successor entity, the Settling Defendants may elect to implement that technology. The parties to this Settlement Agreement shall meet and confer to determine if COSM should employ that technology. Settling Defendants must agree to advance Treatment Facility Costs to pay the actual cost of installing any new technology pursuant to this paragraph.

3.11.2    COSM may elect to implement alternative remedies for MTBE or TBA. If COSM elects to implement an alternative remedy, Settling Defendants will only be obligated to advance Treatment Facility Costs to pay the lesser of either: (a) the capital and Operations and Maintenance Costs of the alternative remedy, or (b) the capital and Operations and Maintenance Costs for the existing facility.

3.11.3    If DHS directs COSM that modifications or additions to the Treatment Facility for the Charnock wells are required, Settling Defendants will advance such Treatment Facility Costs to pay the costs of complying with such requirements.

3.11.4    The activities set forth in this Paragraph are subject to approval by

COSM and the Settling Defendants; said approval will not be unreasonably withheld. COSM has the right to reject the proposed installation of new treatment technology if the use of such technology is inconsistent with the operational requirements of its water system.

### 3.12 OTHER SETTLEMENTS AND PROCEEDS

3.12.1 Settlements entered into by COSM with any Defendant other than the Settling Defendants shall be referred to as "Other Settlements."

3.12.2 Proceeds from Other Settlements shall be allocated between COSM and the Operating Account pursuant to Paragraph 3.12.3. COSM's share of these proceeds is non-refundable, is not required to be deposited in the Operating Account, and may be used by COSM in any manner as COSM in its sole and absolute discretion sees fit.

3.12.3 The sum of any and all proceeds from Other Settlements and Final Judgments in the Litigation against any Defendants ("Total Proceeds") shall be allocated between COSM and the Operating Account as follows:

3.12.3.1 Total Proceeds up to $40 million, first $18 million to Operating Account and remaining $22 million to COSM;

3.12.3.2 Total Proceeds equal to or greater than $40 million, 10% to the Operating Account and 90% to COSM.

3.12.3.3 Proceeds from Other Settlements and Final Judgments shall be allocated between COSM and the Operating Account, and COSM shall deposit into the Operating Account the Operating Account's share of such Proceeds, within 30 days of court approval of this Settlement, or of receipt of such funds by COSM, whichever is later.

3.12.4 First one million dollars of any settlement with Unocal will be paid by COSM to Shell within 30 days of court approval of this Settlement, or receipt by COSM, whichever is later, remainder to COSM or Operating Account as set out in this Paragraph 3.12.

3.12.5 COSM's share of proceeds from any Other Settlement and any Final Judgments is non-refundable, is not required to be deposited in the Operating Account, and may be used by COSM in any manner as COSM in its sole and absolute discretion sees fit.

3.13   **TREATMENT FACILITY PAYMENTS**

3.13.1   Obligation to Fund Treatment Facility Costs.  Until the Funding Termination Date, the Settling Defendants shall fund, in accordance with the terms and conditions of this Settlement Agreement, the Treatment Facility Costs according to the percentages in Paragraph 3.16.  Each such funding by a Settling Defendant (a "Treatment Facility Payment") shall be made to the Operating Account at such times and in such amounts as required pursuant to Paragraph 3.13.2 below.  Each Treatment Facility Payment shall be reflected on Schedule 3.13 hereto which will be amended by the Settling Defendants as each Treatment Facility Payment is made to reflect such Treatment Facility Payment and the other information required by such Schedule.  All Treatment Facility Payments shall be made to the Operating Account by wire transfer of immediately available funds pursuant to the wiring instructions provided by the Bank in writing.

3.13.2   Timing and Amount of Treatment Facility Payment.

3.13.2.1   Until the Funding Termination Date, each Settling Defendant shall be obligated to make Treatment Facility Payments to the Operating Account.  All Treatment Facility Payments shall be made into the Operating Account within 30 days of (i) written notice from the Engineering Committee pursuant to the terms hereof (a "Notice of Treatment Facility Payment") or (ii) a decision rendered by the arbitrator pursuant to Paragraph 3.28 ("Alternative Dispute Resolution Process").

3.13.2.2   Until the Funding Termination Date, each Settling Defendant shall, on an annual basis, make Treatment Facility Payments requested by the Engineering Committee in a Notice of Treatment Facility Payment in order that the balance of the Operating Account is 110% of the most recent Approved Annual Budget (an "Annual Treatment Facility Payment").  Settling Defendants shall not be required to make a Treatment Facility Payment until the balance in the Operating Account drops below 110% of the most recent Approved Annual Budget.

3.13.2.3   Until the Funding Termination Date, if during an Operating Year

the Engineering Committee determines that the funds then available in the Operating Account are insufficient to fund the projected Treatment Facility Costs for the balance of such Operating Year, it shall determine the amount required to fund the projected Treatment Facility Costs through the end of that Operating Year, and each Settling Defendant shall make the Treatment Facility Payment requested by the Engineering Committee in a Notice of Treatment Facility Payment (a "Special Treatment Facility Payment"). The aggregate amount of such Treatment Facility Payments shall be sufficient to increase the balance in the Operating Account to 110% of such projected Treatment Facility Costs then remaining unpaid.

3.13.2.4   Each Settling Defendant may make any Treatment Facility Payment due but not made by another Settling Defendant within 30 days of written notice by COSM that a Settling Defendant has not made a Treatment Facility Payment due. Nothing contained in this paragraph shall release any Settling Defendant from its obligation to make Treatment Facility Payments pursuant to this Settlement Agreement.

3.14   **OPERATING ACCOUNT**

3.14.1   Establishment. COSM shall establish an account (the "Operating Account") with, and to be administered, by the Bank. The parties to this Settlement Agreement shall enter into an agreement substantially in the form attached hereto as Exhibit "F" (the "Account Control Agreement").

3.14.2   Funding.

3.14.2.1   The following funds shall be deposited in the Operating Account:

3.14.2.1.1      Treatment Facility Payments;

3.14.2.1.2      Portions of other settlements in accordance with Paragraph 3.12 ("Other Settlements and Proceeds") of this Settlement Agreement;

3.14.2.1.3      Portions of the amounts received by COSM in satisfaction of Final Judgments in the Litigation against any Defendants as set forth in Paragraph 3.12 ("Other Settlements and Proceeds");

3.14.2.1.4      any and all insurance proceeds for damage to the

Treatment Facility and/or condemnation awards for the Treatment Facility other than as properly paid for necessary repairs or replacements in accordance with applicable Engineering Committee Directives; and

3.14.2.1.5    any and all proceeds paid under the Fidelity Bond with respect to the Operating Account or the Treatment Facility.

3.14.2.2   If and when COSM receives any such Treatment Facility Payments, settlements, judgments, and/or insurance proceeds directly, it shall promptly deposit them into the Operating Account and in any event no later than three Business Days following its receipt thereof.

3.14.2.3   COSM shall maintain records (including invoices) for all costs incurred pursuant to this Settlement Agreement and shall make them available upon reasonable request and notice to the Settling Defendants.

3.14.2.4   COSM shall solicit bids and award contracts for the scope of work approved for the then-current budget year consistent with legal requirements applicable to COSM's bidding process set forth in the City Charter and Municipal Code.

3.14.2.5   Disbursements From Operating Account.

3.14.2.5.1    Prior to the Funding Termination Date, and subject to the terms of the Operative Agreements, Treatment Facility Costs shall be paid from the Operating Account as follows:

(a) Payments under $3,000,000 (other than to COSM or any instrumentality thereof) authorized pursuant to an Approved Annual Budget or a contract approved by the Engineering Committee, may be authorized solely by COSM; and

(b) Payments (i) over $3,000,000, (ii) to COSM or any instrumentality thereof, or (iii) that are not authorized pursuant to an Approved Annual Budget or contract approved by the Engineering Committee, must be approved in writing by COSM and the Engineering Committee representative of the Settling Defendants.

3.14.2.5.2    No payments shall be made from the Operating

Account after the Funding Termination Date for Treatment Facility Costs, except payments to contractors for materials or services rendered prior to the Funding Termination Date ("Wind Down Payments"). All funds net of the Wind Down Payments remaining in the Operating Account after the Funding Termination Date, plus all funds deposited therein after such date, shall be held therein until all payments required under this Settlement Agreement are made. Any amounts remaining in the Operating Account after such payments are made shall be returned to Settling Defendants. The Operating Account shall remain in existence until the Wind Down Payments and payments pursuant to this Settlement Agreement are made.

3.14.3   Additional Sources Of Reimbursement. Nothing in this Settlement Agreement restricts COSM from seeking damages from non-settling Defendants for expenses that are either not reimbursable under this Settlement Agreement, or expenses that have been determined to be non-reimbursable pursuant to Paragraph 3.28 ("Alternative Dispute Resolution Process").

3.15   **FUNDING TERMINATION DATE**

All obligations of the Settling Defendants under this Settlement Agreement cease upon the first to occur of the following events (the "Funding Termination Date"):

3.15.1   DHS's approval to terminate treatment for MTBE, TBA, and Related Petroleum Hydrocarbons at the Treatment Facility; or

3.15.2   written agreement of COSM and the Settling Defendants; or

3.15.3   the termination date set by a determination of the Engineering Committee or an arbitrator's decision pursuant to Paragraph 3.18 ("Subsequent Releases"); or

3.15.4   the occurrence of a Fundamental Event of Default by COSM or the voiding of this Settlement Agreement pursuant to Paragraph 3.1.2; or

3.15.5   COSM's election to terminate the Settling Defendants' obligations to make Treatment Facility Payments hereunder following a dispositive settlement of the Litigation or satisfaction of a Final Judgment; or

3.15.6   COSM declines to apply to DHS for approval to terminate treatment

for MTBE, TBA, and Related Petroleum Hydrocarbons at the Treatment Facility following receipt of an EC recommendation pursuant to Paragraph 3.20.7.15 or an arbitrator's order related thereto.

### 3.16    REFUND OF EXCESS TREATMENT FACILITY COSTS

Within 30 days after the Wind Down Payments are made, the funds remaining in the Operating Account shall be refunded to the Settling Defendants. Settling Defendants' shares in the funds remaining in the Operating Account shall be conclusively presumed to be:

Shell  70%

CVX  20%

XOM  10%.

### 3.17    SECURITY AGREEMENT/LIMITED RECOURSE/LIEN.

3.17.1   Security Interest.  COSM's obligations under Section 3.14.2.5.2 of this Settlement Agreement to cause amounts to paid out of the Operating Account for Wind Down Payments and to return any remaining amounts in the Operating Account to the Settling Defendants shall be secured by a security interest in the Collateral as set forth in a Security Agreement among COSM and the Settling Defendants in substantially the form of Exhibit "G".

3.17.2   Lien.  To secure COSM's timely and full performance of its obligations in this Agreement to deposit funds into the Operating Account, including pursuant to Section 3.12 above, COSM hereby grants to the Settling Defendants a continuing lien, which may be perfected as a security interest (referred to as "Lien"), subordinate to the lien of COSM's Attorneys' Fees, in 100 percent of the proceeds of settlements received from Defendants and 100 percent of amounts received by COSM (less COSM's Attorneys' Fees and COSM's Litigation Costs) in satisfaction of any Final Judgment against a Defendant; provided, that once $18 million has been deposited in the Operating Account from proceeds from such settlements and judgments, the Lien will be limited to 10% of such proceeds in excess of $40 million. The Lien shall expire upon COSM's deposit into the Operating Account of all of the proceeds of settlements or Final Judgments in the Litigation as required by this Settlement Agreement. Nothing contained herein

shall be interpreted to confer any rights, ownership, lien, assignment, ownership, control, or

security interest in the Litigation or Claims to the Settling Defendants, and nothing contained

herein shall be construed as an assignment or transfer of rights or ownership of claims to the

Litigation or Claims, or of the right to bring, assume, or otherwise exercise any manner of

dominion or control over the Litigation or Claims or any claims or causes of action or any chose

or thing in action.

        3.17.3 <u>Limitations On Bank Instructions</u>. Settling Defendants shall give no

instructions or take other actions to the Bank with respect to the Operating Account pursuant to

the Account Control Agreement, the Security Agreement, and/or any other Operative Agreement

unless, in addition to any other terms of any Operative Agreement, such instructions are given by

all Settling Defendants simultaneously; and (a) a Fundamental Event of Default by COSM has

occurred; or (b) an Insolvency Event has occurred with respect to COSM.

        3.17.4 <u>Actions On Security Interest Or Lien</u>. Settling Defendants shall

enforce no rights or take other actions under the Lien granted in Paragraph 3.17.2 above except as

allowed by this Settlement Agreement or the Operative Agreements.

    3.18 **SUBSEQUENT RELEASES**

        This Settlement Agreement does not relieve the Settling Defendants of any claims,

demands, actions, causes of action, suits, obligations, assessments, damages, liabilities,

investigation costs, remediation costs, restoration costs, treatment costs, other costs, losses, or

expenses (including attorneys' fees and expert witness fees) of any kind or nature whatsoever

(whether legal or equitable, past, present or future, ascertained or unascertained, known or

unknown, suspected or unsuspected) by COSM with respect to Subsequent Releases (as defined

below):

        3.18.1    For purposes of this Settlement Agreement, "Subsequent Release"

means any release of gasoline to the environment that occurs after the Effective Date of this

Agreement, which release the Settling Defendants successfully claim is not a release they are

required to treat pursuant to sub-Paragraphs 3.18.4 and 3.18.5 and any release after the Funding

1    Termination Date.

2         3.18.2    The Engineering Committee (as defined below) shall evaluate on an

3    on-going basis the condition of the Aquifer, including (among other things) the concentration of

4    MTBE/TBA in the pump discharge of the Charnock Well Field, information from regional and

5    site-specific monitoring wells, other monitoring/investigation information submitted to the

6    RWQCB and/or USEPA, investigations, information and data required by Extremely Impaired

7    Source Policy, and any other pertinent information.

8         3.18.3    If and when the Engineering Committee agrees that sufficient data

9    exist to do so, the Engineering Committee shall attempt to project the remaining treatment time

10   required to achieve Aquifer conditions that would satisfy all then-current DHS requirements for

11   removing treatment for MTBE, TBA, and Related Petroleum Hydrocarbons from the Aquifer.

12   The Engineering Committee shall revise any such projections periodically, based on evolving

13   information and data, in light of then-current applicable DHS requirements.

14         3.18.4    The Engineering Committee shall seek to identify any Subsequent

15   Release(s), unless the Engineering Committee decides otherwise. If the Engineering Committee

16   agrees that identified Subsequent Release(s) are solely responsible for extending the treatment

17   time required to satisfy then-current DHS requirements for removing treatment for MTBE, TBA,

18   and Related Petroleum Hydrocarbons from the Aquifer, and that but for such Subsequent

19   Release(s) all then-current DHS requirements for removing such treatment from the Aquifer

20   would be satisfied at an earlier time determined by the Engineering Committee, then the Funding

21   Termination Date under this Settlement Agreement shall be the date at which the Engineering

22   Committee determines that DHS would have allowed cessation of such treatment but for the

23   Subsequent Release(s). If the Engineering Committee cannot agree on any such issue, any party

24   can submit the matter to arbitration.

25

26         3.18.5    Except as provided in Paragraph 3.27 ("Defaults and Remedies"),

27   absent agreement of the parties to this Settlement Agreement, or at COSM's option pursuant to the

28   funding termination provisions of this Settlement Agreement, under no circumstances shall the

Funding Termination Date be earlier than the date on which DHS approves removal of treatment for MTBE, TBA, and Related Petroleum Hydrocarbons, unless: (i) sufficient information exists to determine with reasonable engineering probability the date on which DHS would approve removal of such treatment in the absence of Subsequent Release(s); (ii) the Engineering Committee identifies one or more specific Subsequent Release(s); and (iii) sufficient information exists to determine with reasonable certainty that the identified Subsequent Release(s) are the sole cause(s) of extending the required treatment period. If arbitration occurs to resolve these issues, the Settling Defendants shall have the burden of proof by clear and convincing evidence. If COSM is the prevailing party in this arbitration, it shall recover its reasonable fees and costs in the Engineering Committee and arbitration process. If, however, COSM does not prevail in this process, it shall bear its own fees and costs.

        3.18.6      Where the Engineering Committee identifies any Subsequent Release that may affect the Aquifer, the Settling Defendants and COSM shall take appropriate actions against the responsible party or parties (i) to mitigate or eliminate any impact of the Subsequent Release(s) to the Aquifer, and (ii) to recover and deposit into the Operating Account any additional costs of treatment attributable to the Subsequent Release(s). COSM's reasonable costs related to the activities described in this sub-paragraph shall be Treatment Facility Costs.

        3.18.7      The procedures and conditions for binding alternative dispute resolution ("ADR") concerning technical disputes that may arise under this Paragraph 3.19 ("Subsequent Releases") are contained in Paragraph 3.28 ("Alternative Dispute Resolution Process") below.

    3.19   **NO ASSIGNMENT WITHOUT CONSENT**

        Neither the Settling Defendants, on the one hand, nor COSM, on the other hand, may assign their rights or obligations under this Settlement Agreement without the consent of the other(s). That consent shall not be unreasonably withheld; provided, however, that no such assignment shall relieve the Settling Defendants or COSM of their obligations under this Settlement Agreement. A merger, or divestiture of a major subsidiary or division, or merger or