reorganization of the Settling Defendants, shall not be deemed an assignment for purposes of this Settlement Agreement.

### 3.20    ENGINEERING COMMITTEE

3.20.1   Establishment.  An engineering committee (the "Engineering Committee") will be established consisting of one representative from COSM and one representative from the Settling Defendants.  The parties shall designate their representatives ("Engineering Representatives") to the Engineering Committee within thirty days of payment of the Initial Payment and a first meeting will be held by the end of such thirty-day period.

3.20.2   Removal and Resignation.  An Engineering Representative may be removed and replaced by the party or parties appointing such Engineering Representative by providing the other party or parties written notice.  Upon removal or resignation of an Engineering Representative, the respective party shall appoint a replacement Engineering Representative within 10 days from such removal.

3.20.3   Place of Meeting.  Meetings of the Engineering Committee may be held at the Santa Monica City Hall, or such other locations as agreed upon by the Engineering Representatives.  Any meeting may be casual and be held by conference telephone or similar communication equipment, so long as both Engineering Representatives can hear one another, and both Engineering Representatives shall be deemed present in person at such meeting.  The meetings shall be informal in nature and designed to encourage the free exchange of ideas and information between COSM and the Settling Defendants.

3.20.4   Quorum; Action.  Both Engineering Representatives shall constitute a quorum for the transaction of business.  All action by the Engineering Committee shall require the approval of both Engineering Representatives.  Such approval shall be in writing if it relates to the authorization of any third party actions or disbursement of funds from the Operating Account.

3.20.5   Action by Unanimous Written Consent.  Any action required or permitted to be taken at any meeting of the Engineering Committee may be taken without a meeting if both Engineering Representatives of the Engineering Committee consent thereto in

Dockets.Justia.com

writing.

3.20.6 <u>Deadlock</u>. In the absence of consensus by both Engineering Representatives regarding the exercise of their duties under this Settlement Agreement, unresolved issues will be subject to binding ADR pursuant to the ADR process for resolving disputes as set forth in Paragraph 3.28 ("Alternative Dispute Resolution Process") of this Settlement Agreement. An arbitrator's decision rendered pursuant to the ADR process shall be deemed a final decision of the Engineering Committee.

3.20.7 <u>Duties</u>. The duties of the Engineering Committee shall include:

3.20.7.1 Establish design criteria that reflect an optimized design in accordance with good engineering practice, conditions evaluated in the pilot test, and features deemed necessary to obtain approval from regulatory agencies including the DHS, recognizing the design parameters attached as <u>Exhibit "H"</u>.

3.20.7.2 Evaluate the feasibility of using the Arcadia Site to accommodate and treat the flow from the Charnock Wells (7,000 gpm) separately from facilities used by COSM at the Arcadia Site to treat flow from Olympic Wells (1,500 gpm) and Arcadia Wells (500 gpm);

3.20.7.3 Recommend a list of contractors to pre-qualify for bid solicitation where appropriate;

3.20.7.4 Recommend the best bidder from the bidding process;

3.20.7.5 Approve final design and any change orders for the Treatment Facility;

3.20.7.6 Evaluate and manage pilot tests conducted and professional services rendered in connection with the design, construction, and maintenance of the Treatment Facility;

3.20.7.7 Evaluate and recommend approval of material contracts (and change orders thereto) for goods and/or services in connection with the design, construction, maintenance, and/or operation of the Treatment Facility, which shall include auditing rights in favor of COSM and the Initial Settling Defendants and the Participating Defendants; "Material

Contracts" shall mean those contracts involving an aggregate payment of $100,000.00 or more;

3.20.7.8  Monitor performance of contractors and subcontractors against plans, including an analysis of actual spending vs. budget (by category) and prepare and provide to the Settling Defendants and COSM a forecast of estimated spending for Treatment Facility Costs (by category) for the next three months, such reports to be provided periodically or upon reasonable request of COSM or Settling Defendants;

3.20.7.9  Establish, within 30 days from the date of the appointment, the initial Operating Year and the initial Approved Annual Budget and provide the same to the Settling Defendants and COSM;

3.20.7.10  Establish, within thirty days prior to the end of each Operating Year of the Treatment Facility, the Approved Annual Budget for the next succeeding year and provide the same to the Settling Defendants and COSM;

3.20.7.11  Evaluate and approve any amendment to an Approved Annual Budget and provide notice of any Special Treatment Facility Payments;

3.20.7.12  Perform the duties specified in Paragraph 3.18 ("Subsequent Releases");

3.20.7.13  Evaluate the feasibility of alternate uses of treated water, pursuant to Paragraph 3.22 ("Conservation of Water") of this Settlement Agreement, to be implemented in the event serving the treated water is delayed or denied;

3.20.7.14  Evaluate whether there is a need for new conveyance piping to the Treatment Facility;

3.20.7.15  Evaluate whether COSM's treatment goals for (i) MTBE (i.e., less than 0.5 $\mu g/l$), (ii) TBA (i.e., less than 1 $\mu g/l$), and/or (iii) the DHS requirements to terminate treatment for MTBE, TBA, and Related Petroleum Hydrocarbons from the Aquifer at the Treatment Facility have been met and, if so, recommend that COSM apply to DHS for approval to terminate such treatment;

3.20.7.16  Perform all other duties and obligations of the Engineering

Committee as set forth in this Settlement Agreement.

3.20.8 <u>Termination</u>. The Engineering Committee shall remain in place until the later of the Funding Termination Date or the payment of the Wind Down Payments.

### 3.21 TREATMENT FACILITY SITE

3.21.1 As provided in this Agreement, the parties intend that the Treatment Facility will be built to hydraulically accommodate 7,000 gpm flow from the Aquifer and the Charnock Well Field.

3.21.2 Subject to applicable law,

(a) if the Engineering Committee determines that the Arcadia Site is feasible for the 7,000 gpm Charnock Treatment Facility separately from COSM's facilities for the Olympic and Arcadia flow, then

(i) the cost of constructing the Charnock Treatment Facility on the Arcadia Site to hydraulically accommodate 7,000 gallons per minute flow from the Aquifer and the Charnock Wells shall be a Treatment Facility Cost, and

(ii) the cost of conveying Charnock Well water separately from the point where the Charnock pipeline meets the pipeline from the Olympic Wells to the Arcadia Site shall be a Treatment Facility Cost.

(iii) COSM may request that a combined Treatment Facility capable of treating the combined flow from the Charnock Well Field (7,000 gpm), along with the Olympic Wells (1,500 gpm) and/or the Arcadia Wells (500 gpm), be constructed on the Arcadia Site, in which event the treatment of the Olympic Wells and Arcadia Wells shall be COSM Project Enhancements.

(b) If the Engineering Committee determines that the Arcadia Site is not feasible for the 7,000 gpm Charnock Treatment Facility separate from the treatment facilities for the Olympic and Arcadia Wells, then,

(i) The Settling Defendants may elect to site the 7,000 gpm Charnock Treatment Facility on another property or to construct a combined Treatment Facility on

the Arcadia Site.

(ii) If the Settling Defendants elect to site the Charnock 7,000 gpm Treatment Facility on another property, then

(A) the cost of conveying water separately from the Charnock Wells to such other property and of delivering the water into COSM's water system shall be Treatment Facility Costs;

(B) the Settling Defendants shall have one year from the Engineering Committee's determination that the Arcadia Site is not feasible to designate other property for acquisition by eminent domain or to enter into a purchase agreement, open escrow to acquire such property and close within a reasonable period, failing which, the City shall have the right to select another property; and

(C) the costs of acquiring the other property by purchase or eminent domain shall be Treatment Facility Costs, regardless of who selected the property or the method of acquisition;

(iii) If the Settling Defendants elect to construct a combined Treatment Facility on the Arcadia Site, then the capital costs of constructing such a combined Treatment Facility shall be a Treatment Facility Cost, and the incremental operational expense shall be borne by COSM.

3.21.3 Any property tax assessed against a site other than the Arcadia Site, and any increase in property taxes assessed because of capital improvements for the Treatment Facility, will be borne by the Parties in the same proportion as the Parties bear the site acquisition costs and the capital improvement costs.

3.22 **CONSERVATION OF WATER**

COSM shall use its best efforts to obtain permission from the DHS to deliver treated water from the Charnock Well Field wells to its customers as soon as treated water meets applicable drinking water permit criteria for thirty days. The Engineering Committee will evaluate the feasibility of alternate uses of treated water, to be implemented in the event serving the treated

water is delayed or denied. Such alternatives may include exchange with other water purveyors, reinjection, other end uses, such as irrigation, and if no other practical alternative exists to discharge to appropriate receiving waters.

### 3.23  PROJECT ENHANCEMENTS

3.23.1  At the request of either COSM or the Settling Defendants, respectively, the Engineering Committee may incorporate a Project Enhancement into the Treatment Facility. A "Project Enhancement" includes but is not limited to (a) equipment or facilities to treat, store, or transport water which is not produced by the Charnock Well Field; (b) existing COSM equipment or facilities currently used for other purposes that could be used as a component of the Treatment Facility; or (c) other modifications of the Treatment Facility proposed by COSM or Settling Defendants. The costs of such Project Enhancement(s) shall be allocated as provided in this Paragraph.

3.23.2  In the case of a Project Enhancement proposed by COSM, COSM will pay for the incremental capital and Operations and Maintenance Costs of a Project Enhancement above those costs of a Treatment Facility with process elements sized to hydraulically accommodate 7,000 gallons per minute for water produced from the Aquifer by the Charnock Well Field. However, treatment of other water or compounds that do not increase the capital and Operations and Maintenance Costs of the Treatment Facility do not constitute a Project Enhancement. Prior to the Funding Termination Date, under all circumstances, the Settling Defendants are responsible for the full reasonable capital and Operations and Maintenance Costs of treating water produced by the Charnock wells to remove MTBE, TBA, and Related Petroleum Hydrocarbons.

3.23.3  By way of example only and without limitation, the Engineering Committee may decide that a necessary component of the Treatment Facility is a water reservoir with a five million gallon capacity. COSM, for reasons independent of the need to treat water from the Charnock Well Field for MTBE and Related Petroleum Hydrocarbons, may request that the size of the reservoir be increased from five million to seven million gallons. If a seven million

gallon reservoir is used, the Settling Defendants shall be responsible for a Treatment Facility Payment in the amount of what it would cost to implement a five million gallon reservoir, and COSM shall be responsible for the incremental cost of the seven million gallon reservoir.

3.23.4   In the case of a Project Enhancement proposed by the Settling Defendants, the Settling Defendants will pay for the incremental capital and Operations and Maintenance Costs to COSM.  Those costs shall be Treatment Facility Costs.

### 3.24    COMMUNICATIONS WITH DHS

3.24.1   The Settling Defendants and COSM agree to use best efforts to present a single position to DHS on major items concerning the design, construction, operation and maintenance of the Treatment Facility.  In this regard, the Settling Defendants and COSM agree to consult with each other in advance on the following communications with DHS:

3.24.1.1   recommended pilot test design;

3.24.1.2   material change in operation of pilot test from design;

3.24.1.3   recommended Treatment Facility design;

3.24.1.4   material change in Treatment Facility design during construction requiring agency approval;

3.24.1.5   material change in operation of Treatment Facility from approved operating manual; and

3.24.1.6   request for termination of operation of Treatment Facility or request for change in conditions for termination of operation of Treatment Facility.

3.24.2   If the Settling Defendants and COSM cannot agree on a position on the communications listed in sub-paragraph 3.24.1 above, either representative of the Engineering Committee may submit the matter to ADR as provided in Paragraph 3.28 ("Alternative Dispute Resolution Process") to resolve the conflict.  Either party to the arbitration may request findings of fact and conclusions of law from the arbitrator.  Nothing in this Agreement shall prohibit Settling Defendants and/or COSM from maintaining their separate position(s) before DHS; provided, however, that if COSM maintains such separate position and it is adopted by DHS, COSM shall

1    be responsible for any incremental cost above costs that would have been incurred if DHS had

2    adopted the position approved by the arbitrator in the ADR decision.

3         3.25   **REPRESENTATIONS AND WARRANTIES**

4              3.25.1   Of COSM.   COSM represents and warrants to the Settling Defendants

5    as follows:

6              3.25.1.1   COSM is a municipal corporation, organized and validly existing

7    under the laws of the State of California with its principal place of business located at 1685 Main

8    Street, Santa Monica, California 90401.

9              3.25.1.2   The execution, delivery and performance by COSM of this

10   Settlement Agreement, and the execution, delivery and performance by COSM of the Operative

11   Agreements to which it is a party, have been approved by the City Council of COSM.   In

12   connection with the execution, delivery, and performance of this Settlement Agreement and the

13   Operative Agreements, COSM has complied with all provisions of the Constitution and laws of

14   the State of California and COSM's charter, rules, and regulations, and has the full power and

15   authority to enter into this Settlement Agreement and the Operative Agreements.   The execution,

16   delivery, and performance of this Settlement Agreement and the Operative Agreements by COSM

17   do not and will not contravene or constitute a default under any provision of applicable law or

18   regulation or of any agreement, judgment, injunction, order, decree, or contractual restriction

19   binding on COSM or its property, and do not result in or require (except as provided for by this

20   Settlement Agreement or the Security Agreement) the creation or imposition of any lien, security

21   interest, or other charge or encumbrance in favor of a third party upon or with respect to any of

22   COSM property.

23              3.25.1.3   Except as provided in Paragraph 3.1.2, no further approval,

24   authorization, consent, order, notice to, or filing or registration, with any Governmental Authority

25   is required with respect to COSM's participation in the Settlement and the execution, delivery to,

26   and performance by COSM of this Settlement Agreement and the Operative Agreements to which

27   it is a party.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3.25.1.4   This Settlement Agreement and the Operative Agreements to which COSM is a party have been or will be duly executed and delivered and are, or upon execution will be, the valid and legally binding obligations of COSM, enforceable against COSM in accordance with their respective terms. Without limiting the generality of the foregoing, COSM is not entitled to any immunity on any grounds (i) with respect to the performance of its obligations under this Settlement Agreement and Operative Agreements, or (ii) from set-off or any legal proceedings to enforce or collect upon its obligations hereunder or under the other Operative Agreement.

3.25.1.5   Subject to the provisions and conditions of the Assignment Agreement and COSM's attorney's fees lien, Paragraph 3.17, COSM represents that no other person or entity has any interest in the Claims; that it has the sole right and exclusive authority to execute this Settlement Agreement and receive the consideration specified in this Settlement Agreement; and that COSM has not sold, assigned, transferred, conveyed, otherwise disposed of, granted a security interest in or lien on any Claims within the scope of this Settlement Agreement.

3.25.1.6   COSM is or will be the sole record and beneficial owner of the Facility Site, is or will be the sole record and beneficial owner of the Collateral (subject to the Security Agreement) and the Treatment Facility, and there are no Encumbrances except Permitted Encumbrances on the Arcadia Site, the Treatment Facility, or the Collateral. COSM is in compliance, in all material respects with all covenants, conditions, restrictions, easements, rights of way, and other rights of third parties relating to the Arcadia Site.

3.25.1.7   COSM is solvent and its senior unsecured debt obligations have Investment Grade Rating.  COSM is not aware of any existing circumstances or events that could reasonably result in the loss of such rating.

3.25.1.8   COSM has filed all applicable tax returns and reports required to be filed and has paid all material taxes, assessments, fees and other governmental charges levied or imposed upon them or COSM properties, including Facility Sites and Treatment Facility, income or assets otherwise due and payable, except those which are being contested in good faith

by appropriate proceedings diligently conducted and for which adequate reserves have been provided in accordance with GAAP.

3.25.1.9  The Security Agreement creates a valid first priority security interest upon the Collateral described therein securing the obligations of COSM to the Settling Defendants pursuant to this Settlement Agreement and the Operative Agreements, and upon the filing of a UCC-1 Financing Statement pursuant to the Security Agreement with the California Secretary of State, all actions required to perfect this first priority security interest shall have been taken.

3.25.1.10  COSM is not currently in Default.

3.25.2  Of The Settling Defendants.  Each Settling Defendant hereby represents and warrants, on its own behalf, to COSM as follows:

3.25.2.1  It is a corporation duly organized, validly existing and in good standing under the laws of the jurisdiction of its incorporation, and to the extent required under California laws is duly authorized to do business in the State of California.

3.25.2.2  It has all requisite corporate power and authority to enter into and deliver this Settlement Agreement and the Operative Agreements to which it is a party and to consummate the transactions contemplated hereby and thereby.  The execution and delivery by it of this Settlement Agreement and the Operative Agreements to which it is a party, the performance of its obligations hereunder and thereunder, and the consummation by it of the transactions contemplated hereby and thereby have been duly authorized by all necessary corporate action on its part.  This Settlement Agreement has been, and the Operative Agreements to which it is a party have been or shall be, duly executed and delivered.  This Settlement Agreement constitutes, and each of the Operative Agreements to which it is a party (when so executed and delivered) constitutes or will constitute, a legal, valid and binding obligation of it, enforceable against it in accordance with its terms.

3.25.2.3  The execution, delivery, and performance by it of this Settlement Agreement and the Operative Agreements to which it is a party do not and will not contravene or

constitute a default under any provisions of applicable law or regulation or any agreement, judgment, injunction, order, decree, or contractual restriction binding on it or its property, and do not result in or require the creation or imposition of any lien, security interests, or other charge encumbrance upon or with respect to any of its properties.

3.25.2.4 Except as provided in this Settlement Agreement, no further approval, authorization, consent, order, notice to or filing or registration with any Governmental Authority is required with respect to its participation in the settlement and entering into and performance by it of this Settlement Agreement and any Operative Agreements to which it is a party.

3.25.2.5 Subject to the provisions of this Settlement Agreement, it represents that no other person or entity has any interest in the claims it is releasing pursuant to Paragraph 3.6 ("Settling Defendants' Release of Claims").

3.25.2.6 It is not currently in Default.

### 3.26 INDEMNIFICATION

3.26.1 <u>Indemnification Obligation</u>. COSM hereby irrevocably and unconditionally agrees to indemnify, defend, and hold the Settling Defendants and their respective officers, directors, employees, agents, assigns, and Affiliates (an "Indemnitee"), to the extent of insurance, harmless from and against all actual or threatened liabilities, claims, actions, damages (including without limitation foreseeable and unforeseeable consequential damages), penalties, costs, expenses (including without limitation reasonable attorneys' fees), and losses directly or indirectly arising out of, relating to, or resulting from the negligent operation of the Treatment Facility.

3.26.2 <u>Continuing Obligation</u>. The indemnification obligations of COSM set forth in this Paragraph 3.26 ("Indemnification") shall continue indefinitely to the extent it is reimbursed for the cost of insurance acquired under this Agreement notwithstanding the occurrence of the Funding Termination Date, Final Judgment, or the termination of this Settlement Agreement.

3.27    **DEFAULTS AND REMEDIES**

3.27.1   <u>Notice And Cure</u>.  If any party to this Settlement Agreement believes that another party is in Default under this Settlement Agreement or any Operative Agreement, the complaining party shall promptly serve written notice to the other parties to this Settlement Agreement (a "Notice of Default") thereof that a Default has occurred.  The notice shall identify the defaulting party, and shall specifically identify the basis of any claimed Default.  The party alleged to be in Default shall serve within 7 business days thereafter notice to the complaining party that it will either (i) cure the asserted Default within 30 days or (ii) dispute the allegation of Default.  If a party cures a Default, there is no Material Event of Default or Fundamental Event of Default ("Event of Default").  If the receiving party elects to dispute the allegation of Default (including by failing to respond to the allegation), or if there is a dispute about whether the Default has been cured, the matter shall be referred promptly to arbitration pursuant to the ADR process as provided in Paragraph 3.28 ("Alternative Dispute Resolution Process") of this Settlement Agreement.

3.27.2   <u>Material Event of Default</u>.  A finding by the arbitrator pursuant to the ADR process as provided in Paragraph 3.28 ("Alternative Dispute Resolution Process") that any of the following events has occurred and not been cured pursuant to Paragraph 3.27.1 shall constitute a "Material Event of Default" under this Settlement Agreement or any Operative Agreement by COSM or any Settling Defendant(s), respectively:

(i)     A material breach of any obligation or undertakings imposed by this Settlement Agreement or any Operative Agreement.

(ii)    A material breach of any representation, warranty, or covenant made under this Settlement Agreement or any Operative Agreement by any party to this Settlement Agreement or any Operative Agreement.

(iii)   Failure to make any Initial Payment or Treatment Facility Payment (by any Settling Defendant), or any refund of

excess Treatment Facility Costs pursuant to Paragraph 3.16 (by COSM) at the time or in the amount required by this Settlement Agreement or any Operative Agreement;

(iv) Failure by any party to timely make any deposit to the Operating Account at the time or in the amount required by this Settlement Agreement;

(v) An Insolvency Event relating to COSM or any Settling Defendant. For purposes of this Settlement Agreement, an "Insolvency Event" means:

    (A) Such party shall (i) apply for or consent to the appointment of a receiver, trustee, liquidator, or custodian of itself or of all or a substantial part of its property; (ii) be unable, or admit in writing its inability, to pay its debts generally as they mature; (iii) make a general assignment for the benefit of its or any of its creditors; (iv) be dissolved or liquidated in full or in part; (v) become insolvent (as such term may be defined or interpreted under any applicable statute); (vi) commence a voluntary case or other proceeding seeking liquidation, reorganization, or other relief with respect to itself or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect or consent to any such relief or to the appointment of or taking possession of its property by any official in any involuntary case or other proceeding commenced against it; or (vii) take any action for the purpose of effecting any of the

-45-

foregoing; or

      (B)     Proceedings for the appointment of a receiver, trustee, liquidator or custodian of such party or of all or a substantial part of the property thereof, or an involuntary case or other proceedings seeking liquidation, reorganization or other relief with respect to such party or the debts thereof under any bankruptcy, insolvency or other similar law now or hereafter in effect shall be commenced and an order for relief entered or such proceeding shall not be dismissed or discharged within 60 days of commencement.

3.27.3   Remedies For Material Event of Default.

      3.27.3.1  The party alleging that a Material Event of Default has occurred may seek an order from the arbitrator:

      (i)     requiring compliance (with or without proof of actual damages) with this Settlement Agreement and any Operative Agreement(s);

      (ii)    awarding damages, if any, against the defaulting party or parties;

      (iii)   awarding attorneys' fees and costs reasonably incurred in arbitration; and

      (iv)   imposing a sanction against the defaulting party or parties of up to 150% of damages, fees, and costs for repeat violations and/or lack of good faith basis for the defaulting party's or parties' position as determined by the arbitrator.

      3.27.3.2  With respect to an Insolvency Event of COSM under

Paragraph 3.27.2 (v), and regardless of the expiration of any cure periods provided in Paragraph 3.27.1, the Settling Defendants' obligations to make Treatment Facility Payments shall be suspended until the receipt of court approval that future Treatment Facility Payments will be made on a secured basis and the Settling Defendants' may take whatever steps they reasonably deem necessary, including under the Account Control Agreement, the Security Agreement and Paragraph 3.17 ("Security Agreement/Limited Recourse/Lien"), to preserve their security interest and liens with respect to Treatment Facility Payments previously made; provided that COSM and Settling Defendants shall seek court approval to permit the disbursement of funds held in the Operating Account as of the date of the occurrence of the Insolvency Event for payment of Treatment Facility Costs then due to third parties. Any remedies awarded by the arbitrator under Paragraph 3.27.3.1 and remedies under this Paragraph 3.27.3.2 are cumulative.

3.27.4  Fundamental Event of Defaults. The occurrence of any of the following events (to the extent not cured pursuant to Paragraph 3.27.1) shall constitute a "Fundamental Event of Default" under this Settlement Agreement:

>    (i)    any refusal and/or failure to timely comply with an order or decision of the arbitrator.  As a condition of pursuing any legal challenge to an arbitrator's decision or order, any party found to be in default in the ADR process shall comply with the arbitrator's decision or order pending any final decision by a court considering the legal challenge.  (The notice and cure provisions of Paragraph 3.27.1 shall not apply to this Paragraph 3.27.4(i).)

>    (ii)   any assignment or attempted assignment, whether in whole or in part, of this Settlement Agreement or any Operative Agreement in violation of the terms of this Settlement Agreement following, in any such case, an order or decision of the arbitrator that such assignment or attempted

assignment violates this Settlement Agreement and the defaulting party fails to comply with such decision or order within the time for compliance established therein;

(iii) any assignment or attempted assignment by COSM after the date of this Settlement Agreement of any Claims currently asserted in the Litigation to any person or entity not a party to this Settlement Agreement following, in any such case, an order or decision of the arbitrator that such assignment violates this Settlement Agreement and the defaulting party fails to comply with such decision or order within the time for compliance established therein;

(iv) any of the following actions under circumstances not authorized by this Settlement Agreement or any Operative Agreement following, in any such case, an order or decision of the arbitrator that such action violates this Settlement Agreement and the defaulting Party fails to comply with such decision or order within the time for compliance established therein: (A) instruction by any Settling Defendant to the Bank with respect to the Operating Account or the Collateral; (B) stop payment order by any Settling Defendant on a check drawn on the Operating Account; (C) seizure of all or any part of the Collateral; (D) other action by any Settling Defendant to enforce the security interest against the Collateral granted by COSM to the Settling Defendants; and/or (E) action by any Settling Defendant to act on the lien granted by COSM pursuant to Paragraph 3.17;

(v)     the initiation of any proceeding by a party to this Settlement Agreement or any Operative Agreement seeking to have this Settlement Agreement or any Operative Agreement declared void or invalid except in accordance with Paragraph 3.1.2; and

(vi)    any Insolvency Event as to any party to this Settlement Agreement or any Operative Agreement that the arbitrator determines renders the party unable to perform its obligations under this Settlement Agreement or any Operative Agreement. The notice and cure provisions of Paragraph 3.27.1 shall not apply to this Paragraph 3.27.4(vi).

3.27.5   Remedies for Fundamental Event of Default.

3.27.5.1   COSM's Remedies for Fundamental Event of Default by Settling Defendants. In the event of a Fundamental Event of Default by any Settling Defendant COSM shall be entitled to elect among the following remedies:

(i)     (A) require immediate payment into the Operating Account by the defaulting Settling Defendant of 100 percent of the estimated present value of all unpaid future Treatment Facility Costs under this Settlement Agreement, and (B) as to such defaulting Settling Defendant, void the Release granted pursuant to Paragraph 3.5 ("COSM's Release of Claims"), vacate the dismissal of the Litigation, and relate back the filing of Claims to the original filing date of the Litigation; or

(ii)    at COSM's option, with respect to Fundamental Event of Default described in Paragraph 3.27.4(iv) only, require the defaulting Settling Defendant to pay 150% of the amount of

Collateral affected or 150% of any other amount affected by the defaulting party's wrongful action.

In addition to any election among the remedies set forth in this sub-Paragraph 3.27.5.1, COSM shall be entitled to the remedies specified for Material Event of Defaults on a cumulative basis.

3.27.5.2  <u>Settling Defendants' Remedies for Fundamental Event of Defaults by COSM</u>.  In the event of a Fundamental Event of Default by COSM, the Settling Defendants, acting jointly, shall be entitled to (i) terminate their obligations to make any further Treatment Facility Payments, (ii) Wind Down the Operating Account, and (iii) exercise their rights under the Security Agreement and Account Control Agreement.  In the event the Settling Defendants elect this remedy, COSM's releases set forth in Paragraph 3.5 ("COSM's Release of Claims") shall remain in full force and effect.

In addition to any remedies set forth in this sub-paragraph 3.27.5.2, the Settling Defendants shall be entitled to the remedies specified for Material Event of Default on a cumulative basis.  Remedies available to Settling Defendants under this sub-paragraph 3.27.5.2 are full recourse obligations of COSM.

3.27.6  <u>Payment of Disputed Amounts</u>.  In the event of a dispute as to an obligation of a party to this Settlement Agreement to make a payment due under this Settlement Agreement or the amount thereof or of the obligation of a party to make a deposit into the Operating Agreement or the amount thereof, the party who allegedly is obligated to make such payment or deposit shall pay the disputed amount or make the disputed deposit and reserve its right to arbitrate under Paragraph 3.28 ("Alternative Dispute Resolution Process") the issue of whether it was obligated to make such payment or deposit and, if that party prevails on that issue in the arbitration shall be entitled to a credit in such amount against all future obligations under this Settlement Agreement.  In the event that the arbitrator determines that COSM received or authorized a payment from the Operating Account in violation of this Settlement Agreement or any Operative agreement, COSM shall be obligated to promptly refund, on a full recourse basis,

1    such payment to the Operating Account.

2              3.27.7   Delay.  The Settling Defendants have the right to seek arbitration to

3    prevent actions or inactions of COSM from creating delay.  The Settling Defendants do not have

4    the right to accrue claimed damages for delay and assert those claimed damages as an offset to the

5    obligation to make Treatment Facility Payments.

6
7              3.27.8   Vicarious Liability.  Neither COSM nor the Settling Defendants shall

     be vicariously liable for actions or inactions of any contractor recommended by the Engineering
8
     Committee and retained by COSM to design, construct, or operate the Treatment Facility, except
9
     that COSM, as the contracting party with any such contractor, shall be responsible for enforcing
10
     the terms of the underlying contract in accordance with EC Directives.
11

12             3.28   **ALTERNATIVE DISPUTE RESOLUTION PROCESS.**

13             3.28.1   In the event of any dispute between Settling Defendants and COSM

14   to this Settlement Agreement arising out of or relating to this Settlement Agreement or any other

15   Operative Agreement, those parties agree to try in good faith to settle the dispute by negotiation

16   and/or mediation.  For any Settling Defendant(s) to request arbitration a request must be signed by

17   Shell and either CVX or XOM.

18             3.28.2   If the dispute cannot be resolved to those parties' mutual satisfaction

19   through negotiation and/or mediation within thirty (30) days, the dispute shall be resolved through

20   binding arbitration. It is the intent of the parties that the arbitration be structured in such a way as

21   to minimize costs and delay. The arbitration shall be conducted in accordance with the then

22   current Judicial Arbitration and Mediation Service ("JAMS") Comprehensive Arbitration Rules

23   and Procedures ("JAMS RULES"), with the following stipulations:

24             3.28.3   A demand for arbitration by the Settling Defendants shall be signed
25   by Shell and either CVX or XOM.

26             3.28.4   The arbitration hearing shall be held before Judge Keith Wisot (ret.)
27   at JAMS or, if Judge Wisot is not available or declines to serve, a single arbitrator if the arbitrating
28

parties agree upon a single arbitrator. If the arbitrating parties cannot agree upon a single arbitrator, then each shall select an arbitrator from JAMS, and those arbitrators shall select a third arbitrator from JAMS who shall be the single arbitrator for the dispute. If the two arbitrators are unable to agree upon a third arbitrator within 15 days, the third arbitrator shall be selected by JAMS. Any reference to an "arbitrator" in this Settlement Agreement shall be deemed a reference to an arbitrator selected pursuant to this Paragraph 3.28.4.

3.28.5    Judge Wisot has disclosed that he has no interest affecting his impartiality. Pursuant to C.C.P. 1281.9, all parties waive any further or separate written disclosure from Judge Wisot. The parties agree to utilize Judge Wisot as the arbitrator, notwithstanding that he has served as a mediator in connection with this settlement.

3.28.6    Unless otherwise ordered, each arbitrating party's presentation at the arbitration hearing shall be limited to 14 hours, and the hearing shall be completed within ten (10) business days.

3.28.7    The arbitration decision shall be rendered not later than thirty (30) days after the final day of the hearing and shall be judicially enforceable, non-appealable, and binding.

3.28.8    Summaries of any expert testimony, along with copies of all documents to be submitted as exhibits, shall be exchanged at least ten (10) business days before arbitration under procedures set up by the arbitrator.

3.28.9    Except as otherwise specified herein, there shall be no discovery or dispositive motion practice except as may be permitted by the arbitrator, who may authorize only such discovery as is shown to be necessary to ensure a fair hearing. No discovery or motions permitted by the arbitrator shall in any way alter the time limits specified herein.

3.28.10    If the arbitrator desires the assistance of a technical expert to aid in deciding the dispute between the parties, the technical expert shall be chosen by agreement of the arbitrating parties or, absent such agreement, by the arbitrator (subject to the arbitrating parties' right to disqualify the expert for conflict of interest).

3.28.11 Arbitration costs, arbitrator's fees and reasonable attorneys' fees and costs shall be awarded to the prevailing parties, if any, by the arbitrator.

3.28.12 For disputes concerning construction and/or interpretation of this Settlement Agreement or any Operative Agreement, the arbitrator's decision shall be governed by the then-current JAMS rule concerning award. The arbitrator shall be entitled to award specific performance as a remedy.

3.28.13 The parties to this Settlement Agreement agree that any decision by the arbitrator that is not overturned by a reviewing court shall have the same issue preclusion effect as a final judgment rendered by a court of competent jurisdiction.

3.28.14 The parties to this Settlement Agreement agree, notwithstanding the common law and to the fullest extent permitted by law, that the arbitrator may order the parties to take actions required to implement the terms of this Settlement Agreement or refrain from taking actions that are contrary to the terms of this Settlement Agreement.

3.28.15 The trial court shall retain jurisdiction in Orange County Superior Court Case No. 01-CC-04331 to enforce an arbitration decision pursuant to this Settlement Agreement pursuant to California Code of Civil Procedure sections 664.6 and 1285, et seq.

### 3.29 INTERPRETATION OF AGREEMENT

Notwithstanding any other provision of this Settlement Agreement, the parties to this Settlement Agreement agree that COSM's operational requirements and the decisions of the Engineering Committee are entitled to equal consideration and treatment by the arbitrator in any arbitration conducted hereunder.

### 3.30 PUBLIC STATEMENTS

Pending the trial court's approval of the good faith settlement between COSM and the Settling Defendants, the parties to this Settlement Agreement shall coordinate communications with the public concerning the settlement and the design, construction, and operation of the Treatment Facility. Each party to this Settlement Agreement will attempt to centralize communications with the press to employees who perform that function regularly and discourage

other employees from giving statements to the press.

### 3.31 CONFIDENTIALITY PROVISIONS

The parties to this Settlement Agreement shall keep confidential the content of the negotiations, points of discussion, documents, communications, and supporting data utilized or prepared in connection with, or exchanged at, the mediation that preceded this Settlement Agreement as contemplated by California Evidence Code 1119, et seq., except as otherwise required by law.

### 3.32 NOTICES

All notices, requests, demands, claims, and other communications that are required or may be given pursuant to this Settlement Agreement must be in writing and delivered personally against written receipt, by a recognized overnight delivery service, or by telecopy, to the parties at the addresses below (or to the attention of such other person or such other address as any party may provide to the other party by notice in accordance with this paragraph). Any such notice or other communication will be deemed to have been given (i) if personally delivered, when so delivered, against written receipt, (ii) if sent by a nationally recognized overnight delivery service which guarantees next day delivery, one Business Day after being so sent, or (iii) if given by telecopier, once such notice or other communication is transmitted to the facsimile number specified above and the appropriate answer back or telephonic confirmation is received, provided that such notice or other communication is promptly thereafter delivered in accordance with the provisions of clauses (i) or (ii) hereof, in each case addressed to the intended recipient as set forth above. Any notice, request, demand, claim, or other communication given hereunder using any other means (including mail, electronic or otherwise) shall not be deemed to have been duly given unless and until such notice, request, demand, claim or other communication actually is received by the individual for whom it is intended.

FOR CITY OF SANTA MONICA:

City Attorney
City of Santa Monica
1685 Main Street
Santa Monica, California 90401

| | |
|---|---|
| 1 | TELEPHONE: (310) 458-8336 |
| | FAX: (310) 395-6727 |
| 2 | |
| | and |
| 3 | |
| | Director |
| 4 | Environmental and Public Works Management Dept. |
| | City of Santa Monica |
| 5 | 1685 Main Street |
| | Santa Monica, California 90401 |
| 6 | TELEPHONE: (310) 458-8221 |
| | FAX: (310) 576-3598 |
| 7 | |
| | with copy to: |
| 8 | |
| | Fred Baron, Esq. |
| 9 | Scott Summy, Esq. |
| | Baron & Budd |
| 10 | 3102 Oaklawn Avenue, Suite 1100 |
| | Dallas, Texas 75219 |
| 11 | TELEPHONE: (214) 521-3605 |
| | FAX: (214) 520-1181 |
| 12 | |
| | Victor M. Sher. Esq. |
| 13 | Sher & Leff |
| | 450 Mission Street, Suite 500 |
| 14 | San Francisco, California 94105 |
| | TELEPHONE: (415) 348-8300 |
| 15 | FAX: (415) 348-8300 |
| 16 | |
| | Duane C. Miller, Esq. |
| 17 | Miller & Sawyer |
| | 1651 Response Road, Second Floor |
| 18 | Sacramento, California 95815 |
| | TELEPHONE: (916) 924-8600 |
| 19 | FAX: (916) 927-9267 |
| 20 | |
| | FOR EXXON MOBIL CORPORATION: |
| 21 | |
| | Assistant General Counsel of Litigation |
| 22 | Attn: John Tully |
| | 800 Bell Street |
| 23 | Houston, Texas 77002 |
| 24 | |
| | with copy to: |
| 25 | |
| | Roy Wuchitech, Esq./ Jeff Parker, Esq. |
| 26 | Sheppard, Mullin, Richter & Hampton, LLP |
| | 333 South Hope Street, 48th Floor |
| 27 | Los Angeles, California 90071 |
| | TELEPHONE: (213) 617-5470 |
| 28 | FAX: (213) 620-1398 |

1    FOR CHEVRONTEXACO CORPORATION AND
     CHEVRON U.S.A. INC.:
2
     Kenneth L. Waggoner
3    Vice President & General Counsel
     North America Products Company
4    P.O. Box 5044
     San Ramon, California 94583
5    TELEPHONE: (925) 842-1514
     FAX: (925) 997-0540
6
     with copy to:
7
8    David Schrader
9    Morgan, Lewis & Bockius LLP
     300 South Grand Avenue
10   Los Angeles, California 90071-3132
     TELEPHONE: (213) 612-7370
11   FAX: (213) 612-2554

12   FOR THRIFTY OIL COMPANY AND BEST CALIFORNIA GAS LTD.:

13   Barry W. Berkett
     13116 Imperial Highway
14   P.O. Box 2128
     Santa Fe Springs, California 90670
15   FAX: (562) 921-2077

16   with copy to:

17   Mark Gilmartin
     233 Wilshire Boulevard, Suite 350
18   Santa Monica, California 90401
     TELEPHONE: (310) 395-7333
19   FAX: (310) 395-7573

20   FOR SHELL

21   Dave Kinnan
     General Counsel
22   Shell Oil Products Company
     Po Box 2463
23   Houston, Texas 77252-2463
     TELEPHONE: (713) 241-7152
24   FAX: (713) 241-5657

25   with copy to:

26   Thomas W Kearns
27   Senior Counsel
     Shell Legal Services
28   P.O. Box 2463
     Houston, Texas 77252-2463

TELEPHONE: (713) 241-5633
FAX: (713) 241-4081

and to:

H. Brad Boschetto
Remediation Manager
Shell Oil Company – HS&E, Remediation
24551 Raymond Way, Suite 160
Lake Forest, CA 92630
TELEPHONE: (949) 699-0393
FAX: (949) 699-0388

### 3.33 WARRANTY OF AUTHORITY

Each person who executes this Settlement Agreement on behalf of a corporation, partnership, joint venture, unincorporated association, municipal corporation or other entity represents and warrants to each party that he or she has the authority to do so.

### 3.34 FORCE MAJEURE

Upon the occurrence of an uncontrollable circumstance, the party affected shall be excused from any delay in performance under this Settlement Agreement. For purposes of this Settlement Agreement, an "uncontrollable circumstance" includes, but is not limited to, Acts of God, fire, flood, civil unrest, terrorist events, earthquake, declaration of a public emergency, injunction, and labor disputes.

### 3.35 DISMISSAL

COSM, through its counsel of record, shall execute and file Requests for Dismissal, with prejudice, of the entire Litigation as to all of the Released Parties that are Defendants in the Litigation within ten (10) days following receipt of the Initial Payments from the Settling Defendants.

### 3.36 GOVERNING LAW

This Settlement Agreement and all actions arising out of or in connection with this Settlement Agreement shall be governed by and construed in accordance with the laws of the State of California, without regard to the conflicts of law or choice of law provisions thereof.

1    3.37    **WAIVER**

2            With respect to the release of Claims contained in Paragraph 3.5 ("COSM's Release

3    of Claims") above, COSM expressly waives any rights or benefits available under section 1542 of

4    the California Civil Code, which provides as follows:

5                    **A GENERAL RELEASE DOES NOT EXTEND TO**

6                    **CLAIMS WHICH THE CREDITOR DOES NOT KNOW**

7                    **OR SUSPECT TO EXIST IN HIS FAVOR AT THE**

8                    **TIME OF EXECUTING THE RELEASE, WHICH IF**

9                    **KNOWN BY HIM MUST HAVE MATERIALLY**

10                   **AFFECTED HIS SETTLEMENT WITH THE DEBTOR.**

11   The parties understand and acknowledge the significance and consequence of the specific waiver

12   of California Civil Code section 1542 described above.

13   3.38    **NO ADMISSION**

14           This Settlement Agreement is a compromise of disputed claims and fully and

15   finally settles all Claims by COSM and Shell against the Released Parties, and prevents any

16   further action against the Released Parties in the Litigation. Neither the payment of any

17   consideration hereunder nor anything contained in this Settlement Agreement shall be interpreted

18   or construed to be an admission on the part of, nor to the prejudice of, any person hereto. The

19   Released Parties expressly deny any and all liability associated with or related to the Claims.

20   3.39    **WARRANTY OF RIGHTS**

21           COSM represents and warrants to the Settling Defendants that it has exclusive right

22   and title to COSM's Charnock Well Field wells. COSM further represents and warrants to the

23   Settling Defendants, TOC and Best, that it has full authority to release the Claims of COSM as set

24   forth in this Settlement Agreement, and full authority, subject to the provisions and conditions of

25   the Assignment Agreement, to release the Claims of SCWC as set forth in this Settlement

26   Agreement.

3.40    **ENTIRE AGREEMENT**

3.40.1 Prior to the entry of this Settlement Agreement, COSM, CVX, XOM, TOC and Best had entered into a settlement agreement ("First Settlement Agreement") and CVX and XOM had entered into a binding MOU governing allocation and selection of their Engineering Committee representative ("CVX/XOM MOU").

3.40.2 So long as this Settlement Agreement remains in force, then the First Settlement Agreement and the CVX/XOM MOU shall be suspended.

3.40.3 If this Settlement Agreement is voided under Paragraph 3.1.2, then the First Settlement Agreement and the CVX/XOM MOU shall become operative.

3.40.4 Contemporaneously with this Settlement Agreement, Shell, CVX and XOM have entered into a binding MOU governing allocation and selection of their Engineering Committee representative ("Shell/CVX/XOM MOU").

3.40.5 So long as this Settlement Agreement remains in force, then the Shell/CVX/XOM MOU will remain in force.

3.40.6 If this Settlement Agreement is voided under Paragraph 3.1.2, then the Shell/CVX/XOM MOU will be voided simultaneously.

3.40.7 Each party to this Settlement Agreement declares and represents that no promises, inducements, or other agreements not expressly contained herein between (1) COSM and (2) Settling Defendants have been made with regard to the settlement of the Litigation; that this Settlement Agreement, and all Operative Agreements, and all attachments to this Settlement Agreement, contain the entire agreement between (1) COSM and (2) Settling Defendants with respect to said subject matter; and that the terms of this Settlement Agreement, including all words, phrases, sentences, and paragraphs, including the recitals hereto, are contractual and not recitals only, and are material to the execution of this Settlement Agreement. Except as provided in this Paragraph 3.40, all prior agreements and understandings, oral agreements and writings between (1) COSM and (2) Settling Defendants regarding the matters set forth herein, including without limitation, that certain Memorandum of Understanding ("MOU") entered into among

COSM, CVX and XOM on or about July 18, 2002, are expressly superceded hereby and are of no further force or effect. This Settlement Agreement may not be altered, amended, or modified in any respect, except by a writing duly executed by COSM and the Settling Defendants.

3.41 **SEVERAL LIABILITY**

The liabilities of Settling Defendants set out in this Agreement are several, not joint.

3.42 **BINDING EFFECT**

This Settlement Agreement and any Operative Agreements shall be binding upon and inure to the benefit of the Released Parties and the COSM/SCWC Released Parties.

3.43 **TRIAL COURT JURISDICTION AND VENUE**

The trial court shall retain jurisdiction and venue in Orange County Superior Court Case No. 01-CC-04331 to enforce the terms of this settlement pursuant to California Code of Civil Procedure section 664, *et seq*. The parties to this Settlement Agreement specifically agree that this is a judicially supervised settlement pursuant to California Code of Civil Procedure section 664.6.

3.44 **POLICE POWERS**

Nothing in this Settlement Agreement is intended to limit COSM's police powers.

3.45 **FURTHER DOCUMENTS**

To the extent any documents are required to be executed by any of the parties to this Settlement Agreement to effectuate this Settlement Agreement, each party agrees to execute and deliver such other and further documents (including but not limited to any UCC-1 Financing Statements and UCC Continuation Statements) as may be required to carry out the terms of this Settlement Agreement and any Operative Agreement.

3.46 **REPRESENTATION**

Each party to this Settlement Agreement represents and acknowledges that it has been represented by counsel with respect to this Settlement Agreement and any and all matters covered by or related to such Settlement Agreement. Each party has been fully advised with respect to all rights which are affected by this Settlement Agreement.

1

3.47   **NEUTRAL CONSTRUCTION**

2          The parties to this Settlement Agreement agree that this Settlement Agreement was

3    negotiated fairly between them at arms' length and that the final terms of this Settlement

4    Agreement are the product of the parties' negotiations.  The parties agree that this Settlement

5    Agreement shall be deemed to have been jointly and equally drafted by them, and that the

6    provisions of this Settlement Agreement therefore should not be construed against a party or

7    parties to it on the grounds that the party or parties drafted or was more responsible for drafting the

8    provision(s).

9    3.48   **VOLUNTARY AND KNOWING RELEASE**

10         Each party signing represents and warrants that it read, knows, and understands the

11   contents of this Settlement Agreement, has executed this Settlement Agreement voluntarily, and

12   has not been influenced by any person or persons or attorney acting on behalf of any other party,

13   and understands that after signing this Settlement Agreement, each party cannot proceed against

14   the other on account of any of the matters released pursuant to Paragraphs 3.5 and 3.6 ("COSM's

15   Release of Claims" and " Settling Defendants' Release of Claims") above.

16   3.49   **HEADINGS, NUMBER AND GENDER**

17         Headings are used herein for convenience only and shall have no force or effect in

18   the interpretation or construction of this Settlement Agreement.  As used in this Settlement

19   Agreement, the singular shall include the plural, and the masculine shall include the feminine and

20   neuter genders.

21   3.50   **TIME IS OF THE ESSENCE**

22         Time is of the essence for each and every provision of this Settlement Agreement.

23   3.51   **GOOD FAITH EFFORT**

24         The parties to this Settlement Agreement shall use their respective good faith

25   efforts to comply with their obligations under this Settlement Agreement and all Operative

26   Agreements.

27

28

3.52    **NO WAIVER; REMEDIES**

No failure on the part of any party to this Settlement Agreement to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

3.53    **SURVIVAL OF REPRESENTATIONS AND WARRANTIES**

All representations and warranties of the parties to this Settlement Agreement have been and will be relied on by the other parties to this Settlement Agreement notwithstanding any investigation made by them.

3.54    **PAYMENT OF ATTORNEYS' FEES AND COURT COSTS**

Each party to this Settlement Agreement shall be responsible for the payment of its own court costs, attorneys' fees, and all other expenses, costs, and fees in connection with the matters referred to in this Settlement Agreement, except as expressly set forth herein.

3.55    **ATTORNEYS' FEES AND COSTS TO ENFORCE AGREEMENT**

If any action is required to be taken by any party to enforce this Agreement and/or any decision of an arbitrator as provided in this Settlement Agreement, the prevailing party in any such action shall be entitled to reasonable attorneys' fees and costs.

3.56    **ADMISSIBILITY OF AGREEMENT**

The parties expressly agree that this Settlement Agreement is a protected communication under California Evidence Code section 1119; however, the same shall be admissible in an arbitration or any proceeding to enforce an arbitral decision under this Settlement Agreement for the sole purpose of enforcing the terms of this Settlement Agreement.

3.57    **EXECUTION BY COUNTERPARTS**

This Settlement Agreement may be executed in one or more counterparts. All counterparts will constitute one instrument binding on the signatories upon execution of one or more counterparts by all parties. Counsel for any party shall be authorized to assemble a

composite counterpart which shall consist of one copy of each page, except the signature pages, together with multiple counterpart signatures pages executed on behalf of every party to this Settlement Agreement. The composite counterpart may then be used by any party for all purposes as the complete signed and executed Settlement Agreement among the parties. This Agreement may be executed by transmittal of facsimile signature counterparts.

IN WITNESS WHEREOF, the parties hereto have duly executed this Settlement Agreement as of the day and year first above written.

Date: _____, 2003     SHELL OIL COMPANY, SHELL OIL PRODUCTS COMPANY, SHELL PIPELINE COMPANY, EQUILON ENTERPRISES LLC, EQUILON PIPELINE COMPANY

By _____

Title _____

Date: _____, 2003     TMR COMPANY as successor in interest to TEXACO REFINING & MARKETING, INC.

By _____

Title _____

Date: _____, 2003     EXXON MOBIL CORPORATION

By _____

Title _____

Date: _____, 2003     CHEVRON U.S.A. INC., CHEVRONTEXACO CORPORATION

By _____

Title _____

Date: _____, 2003        THRIFTY OIL CO.

                                By _____

                                Title _____

Date: _____, 2003        BEST CALIFORNIA GAS, LTD.

                                By _____

                                Title _____

Date: November 25, 2003         CITY OF SANTA MONICA, individually
                                and as the assignee of SOUTHERN
                                CALIFORNIA WATER COMPANY

                                By _____
                                      Susan E. McCarthy
                                      City Manager

Approved As to Form:

*Marsha Jones Mouthie*

Marsha Moutrie
City Attorney, City of Santa Monica

Attest:

*Maria W. Stewart*

Maria Stewart
City Clerk, City of Santa Monica