UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

| | |
|---|---|
| In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation | Master File No. 1:00-1898<br>MDL 1358 (SAS)<br>M21-88 |

------------------------------------------------------------------ x  ECF Case

**This document relates to the following case:**

*City of New York v. Amerada Hess Corp., et al.*
Case No. 04 Civ. 3417

------------------------------------------------------------------ x

**PLAINTIFF CITY OF NEW YORK'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ENTRY OF JUDGMENT PURSUANT TO FED. R. CIV. P. RULE 54(B)**

# 1. **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 3

ARGUMENT ......................................................................................................................... 4

    A.  Legal Standard ........................................................................................................ 4

    B.     The City's Action Involves Separable Claims That Are Tried Separately and Properly Subject to Partial Judgment .................................................................................... 5

    C.  The Verdict Is a Final Judgment Regarding the Station 6 Wells ........................... 7

    D.  No Just Reason Exists to Delay the Entry of Judgment ......................................... 9

CONCLUSION .................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Acha v. Beame*, 570 F.2d 57 (2d Cir. 1978) .............................................................................. 10

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,* 106 F.3d 11 (2d Cir. 1997) ................ 13, 15

*Allen v. U.S.* 588 F.Supp.247 (D. Utah 1984) .......................................................................... 12

*Boughton v. Cotter*, 65 F.3d 823 (10th Cir. 1995) .................................................................... 12

*Citizens Accord, Inc. v. Town of Rochester,* 235 F.3d 126 (2d Cir.2000) ..................................... 6

*Coopers & Lybrand v. Livesay,* 437 U.S. 463 (1978) ................................................................ 12

*Cullen v. Margiotta*, 811 F.2d 698 (2d Cir. 1987) ............................................................. *passim*

*Curtiss-Wright Corp. v. General Elec. Co.,* 446 U.S. 1 (1980) ............................................ *passim*

*Duckworth v. Franzen* 780 F.2d 645 (7th Cir. 1985) ................................................................... 5

*Ellis v. Israel,* 12 F.3d 21 (2d Cir.1993) .................................................................................... 12

*Francis v. Morganthau*, 164 F.3d 617 (2d Cir. 1998) ................................................................. 6

*Genty v. Resolution Trust Corp.*, 736 F.Supp. 1322 (D.N.J. 1990) ............................................ 17

*Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085 (2d Cir.1992) ................................... *passim*

*Gottesman v. General Motors Corp.,* 401 F.2d 510 (2d Cir.1968) ............................................. 10

*Grand River Enterprises Six Nations, Ltd. v. Pryor,* 425 F.3d 158 (2d Cir. 2005) ....................... 15

*Hudson River Sloop Clearwater Inc. v. Department of the Navy,* 891 F.2d 414
(2d Cir. 1989) ...................................................................................................................... 13, 16

*Hunt v. Mobil Oil Corp.,* 550 F.2d 68 (2d Cir. 1977) ................................................................. 15

*In re Hanford Nuclear Reservation Litigation,* 497 F.3d 1005 (9th Cir. 2007) ....................... 12, 13

*In re MTBE*, 2006 WL 3771011 (S.D.N.Y., Dec. 14, 2006) ....................................................... 11

*In re MTBE*, 2007 WL 1601491 (S.D.N.Y. June 4, 2007) ...................................................... 7, 10

*In re MTBE*, 2007 WL 1791258 (S.D.N.Y. June 15, 2007) ................................................ *passim*

*In re MTBE*, 2009 WL 1952497 (S.D.N.Y. July 6, 2009) ...................................................... 7, 16

*In re MTBE*, 2009 WL 2634749 (S.D.N.Y., Aug 25, 2009) ........................................................ 11

*In re MTBE*, 2009 WL 3347214 (S.D.N.Y. Oct. 19, 2009) ........................................................... 7

*L.B. Foster Co. v. America Piles, Inc.,* 138 F.3d 81 (2d Cir.1998) ................................................ 16

*Original Ballet Russe v. Ballet Theatre,* 133 F.2d 187 (2d Cir.1943) .......................................... 10

*Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427 (1956) ............................................................ 9, 11

*State of New York v. AMRO Realty Corp.,* 936 F.2d 1420 (2d Cir.1991) ..................................... 16

*Transp. Workers Union v. N.Y. City Transit Auth.,* 341 F.Supp.2d 432 (S.D.N.Y. 2004) ............ 14

*Transport Workers Union v. New York City Transit Authority*, 505 F.3d 226 (2d Cir. 2007) . 6, 14

**Statutes**

Fed. R. Civ. P. Rule 54(b) ................................................................................................ *passim*

**Treatises**

*Manual for Complex Litigation (Fourth)* § 20.132 (2004) ............................................................ 17

**INTRODUCTION**

The jury's verdict in this case, finding the ExxonMobil defendants ("ExxonMobil")[1] liable for the City plaintiffs' ("the City's")[2] damages for the drinking water wells associated with Station 6 (the "Station 6 Wells"), ends the litigation and resolves the City's claims for those wells. The Court should now declare that verdict an appealable judgment because it disposes with finality the City's Station 6 claims, and the City should not have to await disposition of the claims relating to its other wells before getting a final determination of its rights as to Station 6.[3]

Fed. R. Civ. P. Rule 54(b) provides for the certification of a final judgment where (1) multiple claims are present, (2) at least one claim has been finally decided within the meaning of 28 U.S.C. § 1291, and (3) there is no just reason for delay in entering judgment. *Ginett v. Computer Task Group, Inc.,* 962 F.2d 1085, 1091 (2d Cir.1992). This case presents all three of these factors. The City's complaint alleged that MTBE contamination was present in more than a quarter of the 70 wells in its Jamaica, Queens system. *City of New York* Fourth Amended Complaint ("4AC") at ¶¶ 119, 125. The City's claims as to *five* of those contaminated wells, the Station 6 Wells, have now been fully litigated and tried to a final verdict before a jury. Regarding those Wells, nothing remains for this Court to do but execute the jury's verdict on those claims, and nothing that happens on any other of the City's wells can or will affect that

---

[1] The ExxonMobil defendants include ExxonMobil Corporation, ExxonMobil Oil Corporation and Mobil Corporation.
[2] We will refer to the City of New York, the New York City Water Board Authority and the New York City Municipal Water Finance Authority collectively as the "City."
[3] *See Duckworth v. Franzen*, 780 F.2d 645 (7th Cir. 1985), *cert den* 107 S.Ct. 71(district judge ordered Rule 54(b) certification of a judgment that was appealable immediately, since it disposed with finality of claims against certain defendants; those defendants should not have had to wait until the case against another defendant was concluded in order to get a definitive determination of their liability).

verdict. There is no just reason to delay entering judgment; rather, delay will only prejudice the parties and especially the City.

Rule 54(b) certification is appropriate here because certification of the Station 6 claims will create *no* risk of duplicative review in subsequent appeals. Although the Court should avoid piecemeal appeals (*see Citizens Accord, Inc. v. Town of Rochester,* 235 F.3d 126, 128-29 (2d Cir.2000)), subsequent trials in this case will *not* re-open the claims decided in the Station 6 trial and thus create no risk of duplicative appeals. The general liability issues on which the City's Station 6 claims depend have been decided by the jury *for all wells* and will not be affected by subsequent juries' evaluations of well-specific claims. In particular, this case is nothing like *Transport Workers Union v. New York City Transit Authority*, 505 F.3d 226 (2d Cir. 2007) (*Transport Workers Union*).[4] The judgment appealed from in *Transport Workers Union* determined the viability of the New York City Transit Authority's sick leave policy *only* "*as applied*" to two particular groups of employees. 505 F.3d at 229. Unlike the City's Station 6 claims, the claims of the *Transport Workers Union* employees, although "already determined[,] could again be subject to review in a subsequent appeal." 505 F.3d at 230. Since later trials concerning other wells will not – and cannot – revisit the claims decided in this trial, there is no risk of multiple appeals.

For the foregoing reasons, the City respectfully requests certification of the jury's verdict as to Station 6 and entry of judgment pursuant to Fed. R. Civ. Pro. Rule 54(b).

---

[4] This case more closely resembles *Francis v. Morganthau*, 164 F.3d 617 (2d Cir. 1998), where the claim certified under Rule 54(b) "was not relevant to his claims against the other defendant; there was… no purpose in further delaying adjudication of the claims against Morganthau [the certified claim]." Here, there is no purpose in further delaying adjudication of the City's Station 6 claims given the separability of the City's claims on other wells.

**BACKGROUND**

The City filed this action on October 31, 2003, to recover costs and damages incurred as a result of MTBE contamination harming the City's groundwater well system in the Jamaica area in the County of Queens. *In re MTBE*, 2007 WL 1601491, *8 (S.D.N.Y. June 4, 2007); *City of New York* Fourth Amended Complaint ("4AC") at ¶ 1. The City's complaint alleged contamination in an aquifer supplying groundwater to a system of approximately 70 wells in the Jamaica, Queens area (4AC at ¶119) and MTBE contamination was found in over one quarter of those wells (4AC at ¶125). *See also In re MTBE*, 2009 WL 1952497, *1 (S.D.N.Y. July 6, 2009) (describing the New York City groundwater system in Queens).

The Court adopted a bellwether approach to the *City of New York* trial and selected five focus wells, all located in an area known as "Station 6," for the initial trial. *In re MTBE*, 2009 WL 1952497 at *1-2. The initial trial plan included four phases:

> Phase I will focus on the City's groundwater supply plans, asking the jury whether the City intends to begin construction of Station 6 in the next fifteen years and to use water from the wells in the next fifteen to twenty-five years. Phase II will ask the jury whether MTBE will be present in the wells when the Station 6 treatment facility is completed or immediately after the wells are turned on. Phase III will focus on the remaining liability issues, such as causation and damages. Phase IV will focus on punitive damages.

*Id.* at *2, footnotes omitted. The jury found in the City's favor for Phases I and II,[5] allowing the trial to proceed to Phase III; ultimately, the Court did not allow the jury to hear the City's punitive damages case.

---

[5] "In Phase I of the trial, the jury held that the City intends, in good faith, (a) to begin construction of the Station Six facility within the next fifteen years and (b) to use the water from the Station Six wells, within the next fifteen to twenty years, as a back-up source of drinking water. In Phase II, the jury held that (a) MTBE will be in the groundwater of the capture zone of the Station Six wells when they begin operation and (b) MTBE will peak at 10 parts per billion ("ppb") in the combined outflow of the Station Six wells in 2033." *In re MTBE*, 2009 WL 3347214 at *1 (S.D.N.Y. Oct. 19, 2009).

3

In Phase III, the jury found that the City had proven that:

a) it is or will be injured by the MTBE that will be in the combined outflow of the Station 6 wells,

b) ExxonMobil was a cause of the City's injury as a direct spiller,

c) ExxonMobil was a cause of the City's injury as a manufacturer, refiner, supplier or seller,

d) ExxonMobil's gasoline containing MTBE was not reasonably safe,

e) ExxonMobil's product was defective because ExxonMobil gave no warnings or insufficient warnings,

f) ExxonMobil's failure to warn or insufficient warning was a substantial factor in causing the City's injury,

g) ExxonMobil trespassed onto the City's property,

h) ExxonMobil's conduct created a public nuisance,

i) ExxonMobil was negligent, and

j) that a certain sum of money would fairly and reasonably compensate the City for all damages it had proven with respect to Station 6.

(October 19, 2009 Trial Transcript at 7042:9-7046:21; Court Exhibit 21).

## ARGUMENT

### A. Legal Standard

Fed. R. Civ. P. Rule 54(b) provides:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

4

*Id.* Once separate claims or claims against separate parties have been fully adjudicated, Rule 54(b) commits the decision to enter a judgment to the discretion of the District Court. *See Curtiss-Wright Corp. v. General Electric Co.,* 446 U.S. 1, 8 (1980); *Ginett v. Computer Task Group, Inc.,* 962 F.2d 1085, 1092 (2d Cir.1992). Under *Ginett,* a decision or order is a "final judgment" under F.R.C.P. 54(b) if (1) multiple claims or parties are present, (2) at least one claim or the rights and liabilities of at least one party have been finally decided within the meaning of 28 U.S.C. 1291, and (3) the district court has expressly determined that there is no just reason for delay, and expressly directed the clerk to enter judgment. *Ginett*, 962 F.2d at 1091. In reaching a reasoned conclusion as to the appropriateness of Rule 54(b) certification, "[t]he proper guiding star, as the Supreme Court has emphasized, is 'the interest of sound judicial administration.'" *Id.* at 1095 (quoting *Curtiss-Wright*, 446 U.S. at 8).

**B.     The City's Action Involves Separable Claims That Are Tried Separately and Properly Subject to Partial Judgment**

Rule 54(b) directs entry of partial judgment in this case because the jury's verdict on the Station 6 wells decides a cognizable claim for relief, and is "an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 7-8 (U.S. 1980) (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 437 (1956). The City's Station 6 claims epitomize claims for which a partial judgment under Rule 54(b) is appropriate. The Complaint presented claims involving multiple wells that subsequent case management determined would be tried in separate groups.[6] One of those groups – the Station 6 wells – has at this point been fully adjudicated, and the City awaits only

---

[6] Case Management Order No. 42 in this action, filed December 1, 2008, expressly adopted for purposes of the *City of New York* trial the bellwether approach taken in *County of Suffolk v. Amerada Hess Corp* (*In re MTBE Prods. Liab. Litig.*) 2007 WL 1791258 (S.D.N.Y. Jun. 15, 2007).

5

the entry of judgment. Sound judicial administration of this case directs that judgment be entered as to these wells.

The Second Circuit, in *Gottesman v. General Motors Corp.,* 401 F.2d 510, 512 (2d Cir.1968), defined "claim" in the Rule 54(b) context as "'the aggregate of operative facts which give rise to a right enforceable in the courts'" (quoting *Original Ballet Russe v. Ballet Theatre,* 133 F.2d 187, 189 (2d Cir.1943)). Rule 54(b) certification was held to be proper in *Gottesman* because, although similar allegations of coercion and similar questions of law applied to the individual products that were separately tried, "[d]ifferent exhibits, proof and witnesses will be necessary [and] different sets of operative facts will determine the result" of those trials. *Gottesman* at 512. Claims are separable even if they arise out of the same transaction or occurrence if they "involve at least some different questions of fact and law and could be separately enforced." *Cullen v. Margiotta,* 811 F.2d 698, 711 (2d Cir. 1987). This requirement is satisfied if there is more than one claim for relief. *Acha v. Beame*, 570 F.2d 57, 62 (2d Cir. 1978).

The Station 6 trial answered both certain general liability questions common to all wells and *all of the questions of fact and law particular to the Station 6 wells*, and the damages verdict compensated the City for the injury it suffered due to MTBE contamination at Station 6 specifically. The Station 6 claims are therefore distinct from the City's remaining claims and can and should be enforced separately. Litigation over each of the City's individual wells will require different exhibits, proof and witnesses, and different sets of operative facts – i.e., those facts showing causation of injury and the injury to a given well – will determine the result.

In this MDL, this Court has held that "each injury that plaintiffs can prove is separate and distinct from a prior contamination will be treated as a separate claim." *In re MTBE*, 2007 WL

1601491 at *5 (S.D.N.Y. June 4, 2007). "The question of when (and whether) each release caused the alleged injury of which [plaintiff] complains will require an analysis of factual circumstances specific to each release site (*e.g.,* the amount and duration of the spill) and the location of the injury (*e.g.,* type of aquifer, level of contamination), and therefore must be determined on a site-by-site basis." *Id.* at *4, quoting *In re MTBE*, 2006 WL 3771011 at *3 (S.D.N.Y., Dec. 14, 2006). As a result "it cannot be said that one well's injury is every well's injury." *Id.* Therefore, although "the 'injury' at issue in this bellwether trial is the injury to the combined outflow of all six wells," "the decision to consider the injuries to the Station 6 wells together *has no bearing on the severability of the wells that are not part of Station 6*." *In re MTBE*, 2009 WL 2634749 at *2, fn. 21 (S.D.N.Y., Aug 25, 2009), emphasis added.

Like the City of New York, the plaintiff in the related *Suffolk County* case "could have brought 182 separate lawsuits, each alleging damage to a single well." *In re MTBE*, 2007 WL 1791258 at *6, citing 4/27/07 Tr. at 38. The City could have done the same for each of its wells. Each of the City's contaminated wells represents a distinct harm to the City and forms the basis for an independent tort claim and an independently enforceable basis for damages. Whether or not the Station 6 wells are separable from *each other*, they are separable from claims pertaining to other wells that have not yet been tried, and Rule 54(b) certification of judgment as to the Station 6 wells, which were tried and disposed of together, is appropriate.

### C. The Verdict Is a Final Judgment Regarding the Station 6 Wells

Rule 54(b) certification requires that a district court determine that the decision made was a final judgment: one that decides a cognizable claim for relief, and "an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 7-8 (U.S. 1980) (quoting *Sears, Roebuck & Co. v. Mackey*, 351

U.S. 427, 437 (1956). Here, the City's Station 6 claims have been finally decided because the jury's verdict "'ends the litigation [of the Station 6 claims] on the merits and leaves nothing for the court to do but execute the judgment' entered on that claim." *Ginett* at 1092 (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 467 (1978)); *accord Ellis v. Israel,* 12 F.3d 21, 23 (2d Cir.1993). The jury's verdict for the Station 6 wells established injury, causation, liability and damages, and leaves nothing for this Court to do as to those wells except enforce the judgment.[7]

Judgments on bellwether claims are final judgments for the purposes of Rule 54(b). Courts around the country have entered Rule 54(b) judgments in similar circumstances after trying and deciding a subset of bellwether claims. For instance, in *In re Hanford Nuclear Reservation Litigation*, the claims of a subset of six bellwether plaintiffs (out of over two thousand) were tried first, and appealable judgments were entered in favor of two of them. 497 F.3d 1005, 1013, 1016-1017 (9th Cir. 2007). The court also separately tried the claims of three non-bellwether plaintiffs, who sued solely for medical monitoring costs, and directed entry of judgment under Rule 54(b). *Id.* at 1018. In *Boughton v. Cotter*, 65 F.3d 823 (10th Cir. 1995), the appeal considered a final judgment in favor of eight bellwether plaintiffs (out of over 500). And in *Allen v. U.S.*, 24 bellwether plaintiffs were selected from among 1,192 named plaintiffs suing over exposure to radioactive fallout, and the trial court entered Rule 54(b) judgment as to the bellwethers, holding that "since the legal questions dealt with in the 24 bellwether cases have significance to those cases individually and to the remaining cases affecting more than 1,100 plaintiffs, the court will certify in the judgments to be entered that each judgment shall be entered as final pursuant to Rule 54(b)." *Allen v. U.S.,* 588 F.Supp.247, 447-48 (D. Utah 1984).

---

[7] The City's Toxic Substances Control Act claim, which has not yet been tried, is not directly linked to Station 6.

Like the bellwethers in *In re Hanford*, *Boughton v. Cotter*, and *Allen v. U.S.,* the jury's verdict disposes of the City's Station 6 claims in their entirety. The Court should enter partial judgment both in recognition of this final disposition, and to promote final resolution (via appellate review) of the legal questions addressed in the course of the Station 6 trial.

**D. No Just Reason Exists to Delay the Entry of Judgment**

Once the requisite separability of the claims or parties has been established, the Court may direct the entry of final judgment if "there is no just reason for delay," and should do so here. Fed.R.Civ.P. 54(b). In making this determination, the Supreme Court has expressly rejected the limited application of Rule 54(b) to the "infrequent harsh case." *See Curtiss-Wright Corp. v. General Elec. Co.,* 446 U.S. 1, 10 (1980). The Second Circuit has acknowledged this broadened application, explaining that "now that the garden variety civil complaint often involves multiple claims and/or multiple parties, we cannot, as the Supreme Court has recognized, hide behind the old 'infrequent harsh case' chestnut" previously used to limit the application of Rule 54(b)." *Ginett; see also Hudson River Sloop Clearwater Inc. v. Department of the Navy,* 891 F.2d 414, 419 (2d Cir. 1989) (concluding that only some showing of hardship is required). The Second Circuit has indicated that no just reason for delay exists when there is "some danger of hardship or injustice through delay which would be alleviated by immediate appeal." *Advanced Magnetics, Inc., v. Bayfront Partners, Inc.,* 106 F.3d 11, 16 (2d Cir.1997) (quoting *Cullen,* 811 F.2d at 711). This Court should enter partial judgment on the City's Station 6 claims because there is no just reason to delay doing so and the City will otherwise suffer hardship by the delay in recovering damages.

Entry of partial judgment without delay is both just and appropriate here because it will promote judicial economy. Rule 54(b) certification must "avoid redundant review of multiple

9

appeals based on the same underlying facts and similar issues of law." *Hudson River,* 891 F.2d at 418. Here, entry of partial judgment on the Station 6 Wells is appropriate because the issues of fact and law that have already been decided will not be re-examined in subsequent trials. "[W]ith respect to common issues of tort liability," the Station 6 jury's findings will be given a preclusive effect in subsequent trials when "it is proven to a different jury that other wells in fact sustained any harm." *In re* MTBE, 2007 WL 1791258 at *3. "Thus, a subsequent jury will not reexamine the findings of the first jury," and multiple appeals of the same issue will not occur. *In re* MTBE, 2007 WL 1791258 at *4. Therefore, as this Court previously contemplated, upon the conclusion of a bellwether trial (like Station 6) the Court should "direct the entry of a final judgment with respect to the jury's verdicts on claims relating to these wells, pursuant to Rule 54(b), that can be reviewed by an appellate court." *Id.* at *3, fn. 17.

Nothing in *Transport Workers Union* compels or even suggests a different outcome. In contrast to this case, the Rule 54(b) judgment in *Transport Workers Union* left the findings of the first trial *open to re-examination* in each new context – creating a substantial risk of duplicative appeals. In that case, "the district court held a bench trial from September 7 to September 14, 2004 on the viability of the policy *as applied* to one affected group, Bus Operators and another, Station Cleaners. *Transport Workers Union,* 505 F.3d at 229, *citing Transp. Workers Union v. N.Y. City Transit Auth.,* 341 F.Supp.2d 432 (S.D.N.Y.2004) (emphasis added). The district court found that the sick leave policy in question could be justified "as it stands only with respect to those employees who meet the criteria of the Authority's sick leave control list. … A further trial will be required to determine whether safety concerns may justify the policy (as it stands) with respect to other groups of employees, or to all employees." *Id.* at 229, *quoting Transp. Workers Union v. N.Y. City Transit Auth.,* 341 F.Supp.2d at 453-454. Thus, the justifiability of the sick

leave policy had to be re-examined in every subsequent trial concerning other groups of employees. Here, because they have already been examined and decided by the Station 6 jury, there is no risk that the common liability issues decided in the Station 6 trial will be re-examined if Rule 54(b) certification is granted.

Because subsequent trials will not revisit the liability issues already decided in the City's favor, entry of judgment pertaining to the City's Station 6 claims is appropriate. *See Cullen,* 811 F.2d at 710, 712 (it was proper to enter judgment dismissing the county from an action against other public entities and officials since there was no prospect that continuing proceedings would moot the claim against the county, and *the issues remaining to be litigated had no bearing on the liability issues already decided in favor of the county*); *see also Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,* 106 F.3d 11, 16–17 (2d Cir. 1997) (the interests of judicial efficiency supported permitting immediate appeal, because the underlying claims already decided involved facts common to the claims that remained in the district court for trial).

Since trials of the City's remaining wells will rely in part on the common liability findings made by the Station 6 jury, certification will also avoid the risk that trials of the remaining wells will have to be repeated if an appellate court reverses one of the Station 6 jury's general liability findings. *See Hunt v. Mobil Oil Corp.,* 550 F.2d 68, 70 (2d Cir. 1977)*, cert. den.* 98 S.Ct. 608, 434 U.S. 984 (entry of final judgment dismissing one of three claims was appropriate where reversal of the dismissal after final judgment on the remaining claims would require a lengthy duplicative trial); *Grand River Enterprises Six Nations, Ltd. v. Pryor,* 425 F.3d 158, 164–165 (2d Cir. 2005), *cert. den.* 127 S.Ct. 379 (district court properly "reasoned that certification might avoid a duplicative trial should the decision denying personal jurisdiction or dismissing the non-antitrust claims be reversed.").

In addition to the "interest of sound judicial administration," *Curtiss-Wright,* 446 U.S. at 8, the Court must consider "the equities involved", chiefly "fairness to the parties." *State of New York v. AMRO Realty Corp.,* 936 F.2d 1420, 1426 (2d Cir.1991). *See, e.g., L.B. Foster Co. v. America Piles, Inc.,* 138 F .3d 81, 86 (2d Cir.1998) (the plaintiff should not be forced to wait any longer than necessary to collect on its claim). As this Court recognized earlier in this litigation when it deemed the City's claims ripe,

> denying plaintiff permission to sue now would create a significant hardship … Plaintiff would suffer significant hardship if it were not able to sue now because – as both parties agree – it takes many years to design and implement a treatment facility of the scale allegedly contemplated for Station 6. Moreover, the City plausibly argues that it will not be in a position to decide how to proceed with budgeting the treatment facility until it learns what future costs – if any – it may recover from Exxon.

*In re MTBE*, 2009 WL 1952497 at *7. The same considerations hold true today. Without finality from the Court of Appeals, and a collectable judgment, the City remains unable to proceed with Station 6. Further indefinite delay adds to the City's significant hardship and militates in favor of entering partial judgment on the jury's verdict as soon as possible.

In *Hudson River,* the Second Circuit found a sufficient showing of hardship resulting from the inability to immediately appeal the adverse ruling. *See Hudson River,* 891 F.2d at 419; The Second Circuit has also held that danger of hardship or injustice through delay would be alleviated where "an expensive and duplicative trial could be avoided if, *without delaying prosecution of the surviving claims,* a dismissed claim were reversed in time to be tried with the other claims." *Cullen,* 811 F.2d at 711 (emphasis added). Here, certifying a Rule 54(b) final judgment is unlikely to delay prosecution of the surviving claims relating to non-Station 6 wells, because no trial date has been set for those wells.

Entry of a 54(b) judgment on the Station 6 verdict will permit prompt review of evidentiary and legal rulings made at trial, allow the Court of Appeals to guide disposition of similar issues in trials of the remaining well claims, and may spur progress in the other cases at issue in the MTBE multidistrict litigation because "progress in one case helps to prod the others forward." *See Genty v. Resolution Trust Corp.,* 937 F.2d 899, 903 (3d Cir. 1991) (quoting *Genty v. Resolution Trust Corp.,* 736 F.Supp. 1322, 1329-30 (D.N.J. 1990). And certification of the judgment as to Station 6 will advance judicial economy by promoting settlement of the City's claims relating to other wells. "A bellwether trial allows each party to present its best arguments on these issues for resolution by a trier of fact. Moreover, resolution of these issues often facilitates settlement of the remaining claims." *In re MTBE*, 2007 WL 1791258 at *2, citing the *Manual for Complex Litigation (Fourth)* § 20.132 (2004) ("Prior to recommending remand, the transferee court could conduct a bellwether trial of a centralized action or actions originally filed in the transferee district, the results of which (1) may, upon the consent of parties to constituent actions not filed in the transferee district, be binding on those parties and actions, or (2) may otherwise promote settlement in the remaining actions.") As the *Chevron* court explained, "[t]he notion that the trial of some members of a large group of claimants may provide a basis for enhancing prospects of settlement or for resolving common issues or claims is a sound one that has achieved general acceptance by both bench and bar." *In re Chevron USA, Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997). The completed trial of the City's bellwether claims does both. Certification of the judgment will both enhance the prospects of settlement and of resolving issues common to all wells. And a final determination, upon appellate review, of the legal issues common to all the City's wells will serve judicial economy by preventing those issues from being relitigated and redecided in every subsequent trial of a subset of wells.

## CONCLUSION

Because the jury's verdict as to the City's Station 6 wells fully disposes of the City's claims pertaining to those wells, and those claims – turning on separate nuclei of fact – are separable from the City's claims pertaining to other wells that have yet to be tried, entry of partial judgment pursuant to Rule 54(b) is appropriate. There is no just reason to delay doing so, particularly given the delay in recovery of its damages that the City will otherwise face, the judicial economy promoted by a final resolution of common issues of law and fact that need not be relitigated in subsequent trials, and the likelihood that final resolution of the City's bellwether claims will tend to promote settlement of the claims still outstanding. For all of the foregoing reasons, the City respectfully requests entry of partial judgment as to the claims that have been resolved in its favor to date.

Dated: San Francisco, California
      December 23, 2009

Respectfully submitted,

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Attorney for Plaintiff City of New York
100 Church Street
New York, New York 10007
(212) 788-1568

   /s/ *VICTOR M. SHER*
VICTOR M. SHER *(pro hac vice)*
TODD E. ROBINS *(pro hac vice)*
NICHOLAS G. CAMPINS *(pro hac vice)*
MARNIE E. RIDDLE *(pro hac vice)*

SHER LEFF LLP
450 Mission Street, Suite 400
San Francisco, CA 94105
(415) 348-8300

*Attorneys for Plaintiff City of New York*

# **CERTIFICATE OF SERVICE**

I hereby certify that true and correct copies of the following documents were served on Liaison Counsel via Electronic Mail, and on all counsel of record by posting them directly to CM/ECF and LexisNexis File & Serve on the 23rd day of December, 2009:

1) **PLAINTIFF CITY OF NEW YORK'S NOTICE OF MOTION AND MOTION FOR ENTRY OF JUDGMENT PURSUANT TO FED. R. CIV. P. RULE 54(B)**

2) **PLAINTIFF CITY OF NEW YORK'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ENTRY OF JUDGMENT PURSUANT TO FED. R. CIV. P. RULE 54(B)**

3) **[PROPOSED] ORDER**

    /s/*Geneva D. Hill*

GENEVA D. HILL