UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE METHYL TERTIARY BUTYL ETHER
PRODUCTS LIABILITY LITIGATION

This document relates to:

*City of New York v. Amerada Hess Corporation, et al.*,
No. 04 Civ. 3417 (SAS)

Master File No. 1:00-1898
MDL 1358 (SAS)
M21-88

# EXXONMOBIL DEFENDANTS' OPPOSITION TO PLAINTIFF CITY OF NEW YORK'S MOTION FOR ENTRY OF JUDGMENT PURSUANT TO FED. R. CIV. P. 54(b)

# INTRODUCTION

It is well settled that the "normal and federally preferred practice [is to] postpone[] appeal until after a final judgment" so as to avoid the policy downsides that accompany piecemeal appeals. *Hogan v. Consol. Rail Corp.*, 961 F.2d 1021, 1026 (2d Cir. 1992). Despite this Circuit's many decisions affirming this rule – and its repeated admonitions against piecemeal appeals – the City asks this Court to certify a Rule 54(b) final judgment after only the first trial of a subset of wells in a case that the City has long and consistently pitched as involving closely related, and even overlapping, instances of alleged contamination. Given the City's own record in this case, its request should fail for at least two reasons.

*First*, on the Motion's face, the City's argument is hopelessly inconsistent. The City states, on the one hand, that there are common issues across wells and that subsequent trials may impact appellate issues (City's Memo. at 11) but argues, on the other hand, that each well is independent (*id*. at 6-7). The City cannot have it both ways, and the overlap it suggests in the back-half of its brief should, without more, preclude certification.

But there is more: the City's own trial witnesses have admitted that the City's future use of its groundwater system – and, indeed, the very same spills that were at issue in the Station 6 trial – also may be directly at issue in the trials of the City's remaining wells. While the jury did not decide these issues for the untried wells, and ExxonMobil will contest that any claimed spill caused contamination in other wells, the City's inconsistency on these points, again, forecloses its ability to carry its burden here. In short: the City's own record in this case establishes why a Rule 54(b) "judgment should be refused." 10 MOORE'S FED. PRACTICE, § 54.23[a] (3d ed. 2009).

*Second*, the City has demonstrated no "unusual hardship" supporting a finding of "no just reason for delay." The mere desire for appellate guidance is not "unusual hardship," nor will

waiting until the City's claim is finally resolved as to all wells compromise the City's ability to ultimately execute a judgment or its supposed plans to begin remedial activities at Station 6.

In sum, the City's own record in this case, and the absence of any policy reason to allow a piecemeal appeal, precludes entry of a final judgment under Rule 54(b) at this time.

## LAW AND ARGUMENT

"A district court may certify a final judgment [under Rule 54(b)] where: (1) there are multiple claims or parties; (2) at least one claim or the rights and liability of at least one party has been determined; and (3) there is an express determination that there is no just reason for delay." *Transp. Workers Union, Local 100 v. N.Y. City Transit Auth.*, 505 F.3d 226, 230 (2d Cir. 2007). The Second Circuit has cautioned courts considering requests for certification under Rule 54(b), however, that "'[n]ot all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims.'" *Id.* (quoting *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 8 (1980)). Rather, the district court should carefully consider whether there is "just reason for delay" and whether certification is "'in the interest of sound judicial administration.'" *Curtiss-Wright*, 446 U.S. at 8 (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 437 (1956)).

In determining the interest of judicial administration, moreover, the court should consider the burden on the appellate courts and the "'historic federal policy against piecemeal appeals.'" *Curtiss-Wright*, 446 U.S. at 8 (quoting *Sears*, 351 U.S. at 438). "Respect for that policy requires that the court's power" to render a partial final judgment under Rule 54(b) "be exercised sparingly." *O'Bert v. Vargo*, 331 F.3d 29, 41 (2d Cir. 2003).[1]

---

[1] The City suggests that the judicial efficiency of the *district court* from receiving earlier appellate review warrants a final judgment under Rule 54(b). The law makes clear, however,
(continued...)

2

Applying this rule, the Second Circuit repeatedly has held that it was improper for a district court to enter a Rule 54(b) judgment in cases where the movant failed to demonstrate that the purportedly resolved claim was materially distinct from the purportedly unresolved claims. *Transport Workers*, 505 F.3d at 230; *Hogan*, 961 F.2d at 1026; *Shrader v. Graninger*, 870 F.2d 874, 878 (2d Cir. 1989); *Campbell*, 403 F.2d at 942. Moreover, there is an absence of hardship on the parties – but a hardship on the administration of justice – where the "remaining proceeding in the district court may 'illuminate appellate review of' the [resolved] claims [or] those proceedings may suggest that [the determination] should be modified as expressly permitted by Rule 54(b)." *Hogan*, 961 F.2d at 1026 (citations omitted). Thus, even if a claim is distinct enough to merit a finding that it stands alone, "[t]he interrelationship of the dismissed and surviving claims is generally a reason for denying a Fed. R. Civ. P. 54(b) certification, not a reason for granting it . . . ." *Id.*; *Shrader*, 870 F.2d at 878 (same); *see also* 10 MOORE'S FED. PRACTICE, § 54.23[a] ("If claims are closely related, entry of [Rule 54(b)] judgment should be refused.").

I. **THE CITY CANNOT CARRY ITS BURDEN UNDER RULE 54(b) IN LIGHT OF ITS CONTRADICTORY POSITIONS IN THIS CASE.**

A. <u>The City's Own Arguments And Witnesses Betray Its Arguments For Certification Here.</u>

The City's papers, on their face, show that Rule 54(b) certification would be improper. The City states that, in subsequent trials, it "will rely in part on the common liability findings made by the Station 6 jury." (City's Memo. at 11). While ExxonMobil disagrees with the City's assertion that there has been a "common liability" finding that is applicable to other cases, the

---

that considerations of "efficiency" should focus on the *appellate process See Minority Police Officers Ass'n of S. Bend v. City of S. Bend*, 721 F.2d 197, 200 (7th Cir. 1983).

City's statement establishes why a Rule 54(b) judgment would be improper: given the City's own view that its remaining claims involve overlapping liability, those claims are too closely related to satisfy Rule 54(b). *See Hogan*, 961 F.2d at 1026.

Indeed, the City's own trial witnesses testified that some of the spills at issue in that initial Station 6 trial also will be at issue for at least two wells that remain to be tried. For example, the City's expert David Terry identified the alleged spills at 138-50 Hillside, 108-01 Atlantic, 133-02 Jamaica, and 137-10 94th Avenue as contamination sources not only for Station 6, but also for City Well 45, which has yet to be tried. (*See* Terry Second Errata Report at tbl. 4 & 5 (Apr. 20, 2009).) Because the parties have taken expert discovery for only ten of the City's fifty-two wells, it is impossible to say whether Mr. Terry (or some other City expert) might try to link the same alleged spills to contamination in even more untried wells.[2] (*See* 10/30/08 Tr. at 13:6-14:25; 18/17-20:15 (limiting discovery to only ten wells and postponing discovery on the remaining wells).) While the jury in the Station 6 trial did not decide whether other, untried wells were contaminated by these spills – and ExxonMobil will vigorously contest any such suggestion in future proceedings – the City's position that these spills are the causal source of contamination in at least one other untried well establishes that its claims relating to the tried and untried wells are intimately intertwined, and thus that 54(b) certification is inappropriate here.

Similarly, the City's evidence in the Station 6 trial regarding future use (or non-use) of wells precludes it from satisfying its burden here. Specifically, William Meakin testified that the

---

[2] The City identified thirty-nine "hit" wells, three of which were barred by the statute of limitations. (*See* 10/30/08 Tr. at 20:11-15.) The City also sought recovery for sixteen "threatened" wells. (*See* City's Second Supp. Responses and Objections to Interrogatories One and Two of Defendants' Second Set of Interrogatories, # 2 (10/23/08).) The City has disclaimed any threat to an additional thirteen wells, which are therefore not included in this total. (*Id.* ("The City does not believe that the following [13] wells are threatened with MTBE contamination.").)

4

City may never use the remaining focus wells or may use them only for flood control. (8/6/09 Tr. at 660:9-661:4.)[3] While the jury used that evidence to determine that the City does intend, in good faith, to utilize Station 6 in the future, it reached no finding about the City's intentions with respect to its many other wells. Hence, subsequent juries will need to consider the same evidence (or same kind of evidence) to determine if the City in fact intends in good faith to utilize the remaining wells at issue in this case.

In light of the City's own representations and evidentiary record, the facts of this case are virtually indistinguishable from those in *Transport Workers*. This Court has recognized that the *Transport Workers* decision is "similar" to this case and provides "fairly good guidance for this case." (12/1/09 Tr. at 7:10-19.) For good reason, in light of the unique record the City has created here. *Transport Workers* involved a challenge under the Americans with Disabilities Act to the City Transit Authority's sick-leave policy, which required "those who claim sick leave to file a written application in which they must identify the nature of their illness or disability." 505 F.3d at 228. This Court held that the propriety of the policy depended on the job category and tried a subset of the claims as to a single job category – bus operators – leaving for future determination the propriety of the City's policy for "various other job titles." *Id.* at 229, 231. This Court then certified the bus operators' claims under Rule 54(b). On appeal, the Second Circuit reversed. The Second Circuit held that Rule 54(b) certification on the judgment for bus operators was improper because of the overlap of tried and remaining untried issues:

> Because the Unions only have appealed the 'safety' issue as applied to Bus Operators, questions surrounding both sick leave abuse and the safety-sensitivity of various other job titles are likely

---

[3] *See also* 8/6/09 Tr. at 661:22-25 ("Q. So if DEP builds the 3CADA, the groundwater system would be mothballed correct? A. One of the recommendations is mothball or reduced capacity . . . .").

5

> to be raised in a subsequent appeal, either by the TA or by the
> Unions, thereby making the certification here inappropriate.

*Id.* at 231. Given the City's own assertions of overlap in this case, the same logic applies here.

### B. The City's Contrary Arguments Are Inapposite Or Erroneous.

Unable to overcome its own positions about a close factual relationship between the tried and untried wells, the City is constrained to argue that even the slightest variation in evidence justifies a Rule 54(b) judgment. (*Cf.* City's Memo. at 6). But the City overstates the holding of the case it cites for that proposition, *Cullen v. Margiotta*, 811 F.2d 698, 711 (2d Cir. 1987). Nothing in *Cullen* suggests a requirement of complete overlap. Indeed, in *Cullen* the Second Circuit rejected an earlier appeal based on Rule 54(b) when "the dismissed claims were too closely related to the claims that remained pending . . . ." *Id.* at 705. Nor does the City's reliance on *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 16-17 (2d Cir. 1997), change the analysis – *Advanced Magnetics* simply reiterates that "*entirely* unrelated" claims with "virtually no overlapping issues" may warrant application of Rule 54(b). 106 F.3d at 16 (emphasis added). The Court in *Advanced Magnetics* found that invoking Rule 54(b) was appropriate on the unique facts of that case because "[n]othing that will be aired at [a future] trial can be expected to shed light on the assignment of questions before us in the present appeal," and future appeals "will have no relationship" to the issues decided at the Rule 54(b) stage. *Id.* The unique facts of this case – indeed, the City's own witnesses and testimony – establish precisely the opposite here. Similarly, the City erroneously characterizes the Station 6 trial as a bellwether trial and suggests that any verdict in a bellwether trial is a final judgment for purposes of Rule

54(b). But putting aside whether this trial was a true bellwether,[4] the City's cited cases are inapposite. Indeed, the Court of Appeals decisions cited by the City do not even mention Rule 54(b). *Boughton v. Cotter Corp.*, 65 F.3d 823 (10th Cir. 1995); *Philips v. E.I. Dupont De Nemours & Co. (In re Hanford Nuclear Reservation Litig.)*, 497 F.3d 1005 (9th Cir. 2007). Furthermore, in each of the cases, a trial had fully resolved the rights of *one or more parties*. *See Boughton*, 65 F.3d at 825 (jury verdict had disposed of the claims of "eight bellwether plaintiffs" in a case where plaintiffs "were over 500 individuals"); *Philips*, 497 F.3d at 1013 (trial court had disposed of the claims of "six plaintiffs who were representative of the larger group"); *Allen v. United States*, 588 F. Supp. 247, 258 (D. Utah. 1984) (entering Rule 54(b) judgment that "fully decided 24 separates cases" of the 24 bellwether individuals who had been selected as representative of 1,192 plaintiffs). But the trial in this case involves a single party with multiple outstanding claims, and thus presents different equitable considerations and greater evidentiary overlap. The cases relied on by the City simply are off point. The apposite precedent is *Transport Workers*, which establishes that certification here would be "inappropriate." 505 F.3d at 231.

## II. THE CITY HAS NOT ESTABLISHED THE UNUSUAL HARDSHIP THAT IS REQUIRED UNDER RULE 54(b).

Rule 54(b)'s "no just reason for delay" analysis also requires that "there must be some danger of hardship or injustice through delay which would be alleviated by immediate appeal." *Hogan*, 961 F.2d at 1025; *see also* 10 MOORE'S FED. PRACTICE § 54.23[1][b] ("If the adjudicated

---

[4] *In re Chevron USA, Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997) ("Whatever may be said about the trial contemplated by the district court ... one thing is clear. It is not a bellwether trial. It is simply a trial of fifteen (15) of the 'best' and fifteen (15) of the 'worst' cases [and] [t]here is no pretense that the thirty (30) cases selected are representative of the 3,000 member group of plaintiffs.").

7

and unadjudicated claims are distinct, the district court still should not exercise its discretion to enter judgment under Rule 54(b) unless doing so will alleviate some hardship or injustice that would result from the delay in the entry of judgment."). Thus, the Second Circuit has held that the party seeking certification must show "special circumstances indicating that adherence to the normal and federally preferred practice of postponing appeal until after a final judgment has been entered, disposing of all claims and parties, will cause unusual hardship or work an injustice . . . ." *Hogan*, 961 F.2d at 1026; *see also* 10 MOORE'S FED. PRACTICE, § 54.23[1][b] ("If the judgment is sought by motion, the movant should be required to make an affirmative showing of the hardship or injustice that would result if judgment is not entered."). A Rule 54(b) judgment "'should not be entered routinely or as a courtesy or accommodation to counsel.'" *Campbell v. Westmoreland Farm, Inc.*, 403 F.2d 939, 942 (2d Cir. 1968) (quoting *Panichella v. Pa. R.R. Co.*, 252 F.2d 452, 455 (3d Cir. 1958)).

Here, the City advances two arguments for entering an immediate judgment, but neither is factually tenable.

*First*, the City simply desires expedited appellate review. But mere desire for early appellate guidance does not constitute the requisite unusual hardship. *Transp. Workers*, 505 F.3d at 231 ("[W]hile we appreciate the district court's desire to encourage resolution of this action by providing the parties guidance . . . . we should not review the merits of this appeal in its present posture."); *see also Hogan*, 961 F.2d at 1026 (a "district court's desire to avoid a retrial of the entire case if its assessment of the evidence as to [one party's role] is erroneous" does not constitute an undue hardship). The Second Circuit in *Transport Workers* found certification inappropriate even though this Court and both parties in that case requested guidance on "important" and "unsettled law" that would then be applied to 200 other groups of plaintiffs in

over two years of trial. (12/1/09 Tr. at 7:10-19.) As this Court already has noted, *Transport Workers* is "similar" and offers "fairly good guidance for this case." (*Id.*) And it does not stand alone in Second Circuit jurisprudence, which has long held that a district court should not enter a Rule 54(b) judgment as an "accommodation" to a party or its "counsel." *See Campbell*, 403 F.2d at 942.

*Second*, the City laments a delay in receiving money damages for the Station 6 wells. (City's Memo. at 12.) But courts do not recognize a party's desire for expedited recovery as an "unusual hardship" that warrants an exception to the normal appellate process unless a forthcoming event – *e.g.* a defendant's pending insolvency – jeopardizes the plaintiff's recovery if the plaintiff must await the final adjudication of all claims. *See, e.g., Curtiss-Wright*, 446 U.S. at 12 ("the fact that neither party is or will become insolvent renders that factor neutral in a proper weighing of the equities involved."). Suffice it to say that insolvency is not an issue here.

Moreover, the record evidence refutes any assertion of "unusual hardship" based on the City's inability to begin immediate remedial activities at Station 6. The evidence at trial unequivocally proved that the City has no intention of even *beginning* to expend funds on a Station 6 project until June 2013. (8/6/09 Tr. at 706:18-23; Plaintiff's Exhibit (PL) 164.) And the bulk of the Station 6 budgetary plan – construction – is not scheduled to begin until June 2015. (*Id.*) Moreover, the City admitted that it cannot begin construction on Station 6 until it gains control over an unrelated contaminant, PCE. *See City of N.Y. v. Exxon Mobil Corp. (In re MTBE Prods. Liab. Litig.)*, No. 04 Civ. 3417, 2009 U.S. Dist. LEXIS 96469, at *28-29 (S.D.N.Y. Oct. 19, 2009) ("[T]he Station Six wells have not been used for a source of water to supply the City residents at any time relevant to this litigation and, due to preexisting

contaminants, significant time is required before the wells can be returned to service."). (*See also* 8/7/09 Tr. 775:24-776:6, 779:21-780:16, 781:19-782:6, 783:1-20.)

Regardless, should the City find it necessary to begin remedial activities at Station 6 in the interim, the lack of an immediate recovery from ExxonMobil would be no impediment to undertaking those activities. As the Court will recall, the executive director for the New York City Municipal Water Finance Authority testified that the Authority's "construction fund" had approximately $369 million at the end of 2007, and that the Authority has *never* declined to fund a project because of inadequate funds. (8/7/09 Tr. at 819:23-820:4; 820:22-821:2.) The money is there if the City truly needs it.

Finally, the City invites a comparison to *Hudson River Sloop Clearwater, Inc. v. Department of Navy*, 891 F.2d 414 (2d Cir. 1989), but the comparison actually exposes the absence of true hardship here. In *Hudson River*, the "very threat that appellants [sought] to enjoin – the threat of the alleged presence of nuclear weapons in New York Harbor – could become a reality in the time it takes to try the remaining claims in the district court." *Id.* at 419. Here, the City alleges no hardship akin to proximity to nuclear weapons. Indeed, it seeks no injunctive relief as a result of the jury's verdict. As the Court has already recognized, there is "no substantial risk" that levels of MTBE "would cut off an active water supply or delay its use," and "New York banned the use of MTBE in 2004." *See City of N.Y.*, 2009 U.S. Dist. LEXIS 96469, at *29, 31.

## CONCLUSION

Ultimately, a Rule 54(b) certification would lead to piecemeal appeals and would contribute to a delay of the final resolution of the City's claims as to the remaining wells. Given the City's assertions of how closely interrelated its claims are, there is no warrant for departing from the standard practice of adjudicating an entire case before initiating appellate review.

DATED: January 27, 2010

Respectfully submitted,

*[signature]*

Peter John Sacripanti
James A. Pardo
Stephen J. Riccardulli
Lisa A. Gerson
McDermott Will & Emery LLP
340 Madison Avenue
New York, NY 10017-4613
Tel. (212) 547-5400
Fax (212) 547-5444

*Counsel for Defendant Exxon Mobil Corporation*

# CERTIFICATE OF SERVICE

Lisa A. Gerson, pursuant to 28 U.S.C. 1746, hereby declares under penalty of perjury, that on the 27th day of January, 2010, I caused to be served by electronic means upon counsel for plaintiff, a true and correct copy of: EXXONMOBIL DEFENDANTS' OPPOSITION TO PLAINTIFF CITY OF NEW YORK'S MOTION FOR ENTRY OF JUDGMENT PURSUANT TO FED. R. CIV. P. 54(b).

Lisa A. Gerson