In Re: Methyl Tertiary Butyl Ether ("MTBE")  Products Liability Litigation                                                                                           Doc. 3002

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------- x

In Re: Methyl Tertiary Butyl Ether ("MTBE")          Master File No. 1:00-1898
Products Liability Litigation                                    MDL 1358 (SAS)
                                                                                M21-88
------------------------------------------------------------------- x  ECF Case

**This document relates to the following case:**

*City of New York v. Amerada Hess Corp., et al.*
Case No. 04 Civ. 3417

------------------------------------------------------------------- x

**PLAINTIFF CITY OF NEW YORK'S REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION FOR ENTRY OF JUDGMENT PURSUANT TO**
**FED. R. CIV. P. RULE 54(B)**

Dockets.Justia.com

## INTRODUCTION

ExxonMobil's opposition to the City's motion for entry of partial judgment fails because it misconstrues both the City's position and the law. First, the City's position is consistent: The issues decided by the Station 6 jury – both Station-6-specific and general liability questions – have been fully litigated and will not be revisited by a future jury in this case. Thus, there is no risk of "piecemeal appeals" here, in contrast to *Transp. Workers Union, Local 100 v. N.Y. City Transit Auth.,* 505 F.3d 226, 230 (2d Cir. 2007) ("*TWU*"). Second, the law calls for a showing only of some hardship before certification may be granted under Rule 54(b), as the Second Circuit made clear in *Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085 (2d Cir. 1992) ("*Ginett*") – a showing the City has made. This Court should, therefore, certify the jury verdict on the City's Station 6 Wells for three reasons: (1) those wells represent individual, discrete claims on which a verdict has been rendered, leaving nothing for the court to do but execute the judgment; (2) issues that revolve around facts common to all of the City's wells but were decided by the Station 6 jury will not be reexamined by subsequent juries (and will thus not be appealable more than once); and (3) there is no just reason to delay certification.

In October 2009, the jury in this case resolved all claims pertinent to the Station 6 wells, and some general liability questions that did not turn on well-specific facts. Future juries will not re-examine the City's Station 6 claims, and collateral estoppel precludes re-examination of the general liability issues already decided by the first jury. *In re MTBE*, 2007 WL 1791258, *4 (S.D.N.Y., June 15, 2007) (due to issue preclusion, "a subsequent jury will not reexamine the findings of the first jury."); *see also Houseman v. U.S. Aviation Underwriters,* 171 F.3d 1117, 1126 (7th Cir.1999) (if case is bifurcated into separate trials, Seventh Amendment precludes multiple juries from reexamining same factual issue). There are no barriers to 54(b) certification

1

of the Station 6 well claims, nor any just reason for delay, and both the balance of equities and the "interest of sound judicial administration" identified by the Second Circuit in *Ginett* support Rule 54(b) certification.

**ARGUMENT**

In calling the City's position "inconsistent," ExxonMobil has misunderstood the relationship between issues common to all wells, and issues specific to Station 6. The fact that the Station 6 trial addressed and resolved both types of claims creates no inconsistency. Rule 54(b) certification is warranted because ***all*** of the City's Station-6-related claims (both general and specific) have been fully litigated, leaving nothing for the Court to do but execute the judgment. Rule 54(b) certification is also appropriate because future juries will not reopen any issues not specific to Station 6 – e.g., the jury's findings that ExxonMobil gasoline containing MTBE was not a reasonably safe product, and that gasoline containing MTBE was defective because ExxonMobil gave no warnings or insufficient warnings. There is, therefore, no risk of "piecemeal appeals." And because there is no just reason for delay (and reason to certify the jury's verdict for appeal), certification under Rule 54(b) is appropriate.

**A. The City's Station 6 Wells Represent Discrete Claims That Have Been Fully and Finally Resolved.**

The Station 6 wells – all of which the City will treat with a single facility – represent a nucleus of operative facts giving rise to an enforceable right on the City's part. *See Gottesman v. General Motors Corp.*, 401 F.2d 510, 512 (2d Cir. 1968) (a claim is "the aggregate of operative facts which give rise to a right enforceable in the courts"). Each of the City's other wells could have been the subject of a separate lawsuit that alleged damage to a single well. *In re MTBE*, 2007 WL 1791258 at *6. The Station 6 trial was conducted as a trial of a group of claims in a multi-claim case – but it could as easily have been conducted as a stand-alone trial, with the

City's other wells litigated in separate and independent cases. The verdict on Station 6 thus represents a final judgment on a set of separable claims.

Our situation bears no resemblance to *Transport Workers' Union*. In that case, this Court certified for appeal a *partial* set of claims that applied only to a portion of any particular party. The plaintiff parties were three unions that represented more than 33,300 Transit Authority workers.[1] Each plaintiff's claims included a "safety" issue and a "sick leave abuse" issue. The Court's 54(b) certification addressed only the "safety" issue, and then only as applied to Bus Operators. Neither the Bus Operators' entire set of claims (which would have included both the "safety" and "sick leave abuse" issues), nor the "safety" policy as applied to all workers (not just the Bus Operators group), was fully litigated or certified.

Finding that Rule 54(b) did not apply under these circumstances, the Court of Appeals explained that the 54(b) certification "parses out 'Bus Operators' as a distinct party," but "it is unclear that there actually has been a decision relating to "one party" as contemplated by Rule 54(b)." Since "it does not appear either that one claim or the rights and liabilities of one party has been finally decided, . . . the district court's conclusion that all claims involving Bus Operators have been determined is questionable." Moreover, the defendant did not cross-appeal the "sick leave abuse" issue, and "by the explicit terms of the district court's Rule 54(b) certification, that issue is not before [the Second Circuit]." Because the safety issue was decided as it applied to

---

[1] Local 100 represented over 32,000 Transit Authority employees, "including subway station cleaners, bus operators and other employees." Local 726 represented over 1,300 Transit Authority employees, "including bus operators and maintenance employees in Staten Island." *TWU*, 341 F.Supp.2d at 438.

the Bus Operators, but the sick leave abuse issue was not, the Bus Operators category did not represent either a separate party or a set of claims that had been "fully and fairly litigated."[2]

Here, as illustrated by the diagram below, it is *clear* that there has been a full and final decision relating to the City's separable Station 6 claims, as contemplated by Rule 54(b). **All** claims relating to the Station 6 wells have now been heard; no future jury will reopen the questions of the City's injury at Station 6, how it was caused, who was liable, or how much the City suffered in damages as a result. There are no claims relating to the Station 6 wells not fully litigated in the Station 6 trial. Subsequent trials will establish injury, causation and damages on facts specific to the *non*-Station-6 wells. Resolving the non-Station-6 well claims cannot shed light on the Station 6 claims.

Because the Station 6 claims are separable and have been fully litigated, the Court should enter judgment under Rule 54(b) just as it was entered in *In re Hanford, Boughton v. Cotter, Duckworth v. Franzen*, and *Allen v. U.S.* All of those cases involved claims that were related to each other in much the same way each of the City's wells is related – that is, each well is suffering from similar contamination that was caused in similar ways – but that similarity does not render the claims so "intimately intertwined" that they could not be tried separately.[3]

---

[2] The Second Circuit reversed the Court's certification in *TWU* due to this procedural defect, not because the parties failed to meet some hardship requirement, as ExxonMobil incorrectly claims on page 8 of its Opposition.

[3] Even if – as ExxonMobil promises to "vigorously contest" (but provides no factual support) – other wells were contaminated by the same spills discussed during the Station 6 trial, each well, not each spill, represents a separate nucleus of facts giving rise to an enforceable right. The overlap of spills is irrelevant to the Rule 54(b) inquiry because causation must be established independently at each well or group of wells. A future jury may, by chance, review facts about a certain spill that the Station 6 jury also reviewed, but the enforceable rights being litigated are separate.



### B. Issue Preclusion Prevents Future Juries From Re-Examining Common Issues in Subsequent Trials

ExxonMobil argues that the existence of "common issues across wells" means that the Station 6 verdict cannot be certified for appeal, assuming – incorrectly – that these common issues will be litigated again and again in each trial. To the contrary, this Court specifically has explained that the Station 6 jury's findings on common issues of tort liability[4] will *not* be relitigated, but will have a preclusive effect that will attach "if and when the harm to other wells was proven to a different jury." *In re MTBE*, 2007 WL 1791258 (SDNY, June 15, 2007), at *3-4. Issue preclusion is appropriate in multi-trial cases like this one where "[s]ubsequent trials regarding the remaining wells will involve issues identical to those actually litigated and decided

---

[4] "[W]ith respect to general liability, the jury might decide the following: whether defendants could have provided feasible alternatives to MTBE; whether defendants knew of the dangers of MTBE at various points in time; whether defendants provided adequate warnings regarding the dangers of MTBE; and whether water contamination was a foreseeable result of the use of MTBE-containing gasoline. The jury's findings on general liability will only have preclusive effect in subsequent trials as to those defendants who are found liable to plaintiffs." *Id.* at *4.

5

in the first trial, those defendants will have had a full and fair opportunity to litigate those issues, and the jury's findings on those issues will have been necessary to support a valid and final judgment on the merits." *Id.* at *4, n. 21. "Thus, a subsequent jury will not reexamine the findings of the first jury." *Id.* at *4. Therefore, the risk of "piecemeal appeals" is eliminated.

This Court's analysis in the context of a multi-well case in this MDL (*Suffolk County*) accords with substantial precedent on collateral estoppel and issue preclusion: "[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry* (1980) 449 U.S. 90 at 94.[5] *Accord, San Remo Hotel v. San Francisco,* 545 U.S. 323 (2005), fn. 16 ("once a court has decided an issue of fact or law necessary to its judgment, that decision ... preclude[s] relitigation of the issue in a suit on a different cause of action involving a party to the first case."); *United States v. Alcan Aluminum Corp.,* 990 F.2d 711, 718-19 (2d Cir.1993) ("an issue of law or fact actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the same parties or their privies.")

Therefore, general liability issues already decided in the Station 6 trial – including the unreasonable dangers of MTBE gasoline and ExxonMobil's failure to warn about those dangers – will not be re-litigated before a second jury.[6] In *Zdanok v. Glidden Co,* 327 F.2d 944, 955 (2d Cir. 1964), *cert den* 84 S.Ct. 1338, 377 U.S. 934, the Second Circuit pointed out that collateral

---

[5] The *Allen* court reasoned that "*res judicata* and collateral estoppel relieve parties of the costs and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Id.* at 94.

[6] *See Houseman v. U.S. Aviation Underwriters,* 171 F.3d 1117, 1126 (7th Cir.1999) (if case is bifurcated into separate trials, Seventh Amendment precludes multiple juries from reexamining same factual issue); *Blyden v. Mancusi*, 186 F.3d 252, 268 (2d. Cir. 1999) ("At bottom, issues may be divided and tried separately, but a given issue may not be tried by different, successive juries.").

estoppel will apply *whether or not* the final judgment is certified:

> we see *no* reason why in an appropriate case a ruling that is final on the issue of liability should not preclude the party against whom the decision ran from presenting further evidence on the issue there finally determined. … [C]ollateral estoppel … includes many dispositions which, though not final in that sense, have nevertheless been fully litigated.

*Id.* at 955 (citation omitted, emphasis added). Thus, the existence of common issues that apply to all wells does not militate against Rule 54(b) certification, because issue preclusion eliminates the risk of multiple, duplicative appeals on the same resolved claims.

**C. The Balance of the Equities Favors Certification for Final Judgment**

ExxonMobil misstates the standard for Rule 54(b) certification. Rule 54(b) requires not "unusual hardship" as ExxonMobil argues, but rather "no just reason for delay."[7] Although ExxonMobil demands that the City demonstrate the existence of some "requisite unusual hardship," it relies chiefly on *Hogan v. Consol. Rail Corp.,* 961 F.2d 1021 (2d Cir. 1992) ("*Hogan*"), a case about the pretrial dismissal of one defendant, and ignores several post-*Hogan* Second Circuit cases holding only "some danger of hardship" to be necessary, particularly in light of modern complex litigation practices. *Hogan*, far from representing some "well settled" Second Circuit rule that would disfavor certification in this case, was followed two weeks later by *Ginett* – in which the same Circuit "noted that liberal rules of joinder of parties, claims and remedies, as well as complex issues and protracted litigation, 'cry out for flexibility in granting partial final judgments under rule 54(b).'" *McMahon v. ConAgra, Inc*., 799 F.Supp.320, 322-323 (W.D.N.Y. 1992), quoting *Ginett*, 962 F.2d at 1094. Sound judicial administration, not hardship, is the preeminent consideration in the Second Circuit: "Although hardship and

---

[7] As the Second Circuit aptly noted in *Ginett,* "Nor, for that matter, should we rely on any other comparative adjectives like 'unusual', 'exceptional', or 'extraordinary' if we wish to chart a sound course for future panels of this court: today's 'extraordinary' case may well be tomorrow's ordinary fare." *Ginett*, citing FRCP Rule 54(b).

injustice are not thereby eliminated as factors … the Supreme Court cautions us to review the sufficiency of these factors within the broad scope of the district court's discretion to see if certification is in the "interest of sound judicial administration." *Hudson River Sloop Clearwater, Inc. v. Department of Navy*, 891 F.2d 414, 419 (2d Cir. 1989), citing *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 10 (1980).

In *Hogan*, one defendant was dismissed from the suit, but others remained on the *same* causes of action. There, the Second Circuit held that due to the risk of piecemeal trials, "[w]here the complaint is dismissed as to one defendant but not others, the court should not, as a general matter, direct the entry of a final judgment pursuant to Rule 54(b) if the same or closely related issues remain to be litigated against the undismissed defendants." *Id.* at 1025.

But that concern is not present here. The City has fully litigated a group of five wells and five independent causes of action. The City's case involved a single defendant, and separable claims that reached not merely an interlocutory stage, but that were fully heard and decided by a jury. Not only is *Hogan* inapposite, but the City's case is more closely analogous to *Ginett* (an opinion issued in the same month by the same Court) – in which the Second Circuit readily upheld the district court's Rule 54(b) certification of a subset of the plaintiff's claims because the plaintiff should not have to wait for judgment on severable claims:

> If Ginett is legally entitled to a judgment on his severance pay claim, he should be able to execute upon it now, and should not be penalized for combining his separate claims against CTG in one complaint. This is exactly the sort of "hardship and denial of justice through delay" that rule 54(b) was designed to eliminate.

*Ginett* at 1097. The City is in the *identical* position. It is legally entitled to a judgment on Station 6 and should not be penalized for combining all of its wells into one complaint.

ExxonMobil's requirement that the hardship be "unusual" overstates the prevailing rule

8

in the Second Circuit. All that is needed is "*some* danger of hardship or injustice through delay." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 239 (2d Cir. 2002) (citing *Hogan*) (emphasis added); *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,* 106 F.3d 11, 16 (2d Cir. 1997). Rule 54(b) certification has been granted in cases where, for instance, there was simply "no purpose in further delaying adjudication of the claims" that had been certified. *Francis v. Morgenthau*, 164 F.2d 617, 1998 WL 646874, *1 (2d Cir. 1998). ExxonMobil did not address the Second Circuit's guidance in *Cullen v. Margiotta*, holding that hardship was present where permitting an appeal meant that "an expensive and duplicative trial could be avoided." *Cullen v. Margiotta,* 811 F.2d 698, 711 (2d Cir. 1987), *overruled on other gds by Agency Holding Corp. v. Malley-Duff & Associates, Inc.,* 483 U.S. 143 (1987). Nor has ExxonMobil acknowledged the holding of *L.B. Foster Co. v. America Piles*, *Inc.*, 138 F.3d 81, 86 (2d Cir. 1998), in which the Second Circuit upheld the district court's explanation that "the entry of a final judgment on plaintiff's claims is consistent with sound judicial administration and prevents a potential unjust delay of [the defendant's] execution of its judgment." And in *Grand River Enterprises Six Nations, Ltd. v. Pryor,* 425 F.2d 158, 165 (2d Cir. 2005) the Second Circuit affirmed the district court's reasoning that "certification might avoid a duplicative trial" as "*precisely* the type of 'danger of hardship or injustice' … to which Rule 54(b) is directed. *Id.* at 165, citation omitted, emphasis added. *The same is true here*: an appellate reversal of any already-tried general liability issue *after* both the Station 6 wells *and* all other wells had been tried would lead to expensive and duplicative retrials of *both* sets of wells, not just Station 6. This is a concrete issue of judicial administration, not the mere desire for appellate guidance.

In any event, the City has already described the hardship justifying certification of its Station 6 claims. As City witness James Roberts testified at trial, the City plans "to build that

station when we have the money available to build it." 8/04/09 Tr. at 399:4-8. City witness William Meakin testified that "funding" was the only reason the City has not already built Station 6. 8/06/09 Tr. at 612:8-12. And *the very timeline ExxonMobil cites* as proof that the City would not start building Station 6 for several years (ExxonMobil Opp. at 9) ***assumes*** that the City has the money "right now":

> 15  Q. And *assuming the City had the money right now* to design and
> 16  build Station 6, what is the approximate time line for design
> 17  and completion of construction?
> 18  A. Excuse me for one second. So about 14 months to get a
> 19  designer on board; a year and a half, two years for design;
> 20  four years, four and a half years construction. If my math is
> 21  correct, that's six or seven years.
> 22  Q. From an engineering standpoint, other than money, is there
> 23  any reason that construction hasn't started yet on Station 6?
> 24  A. No. *Money issues.*

Testimony of William Meakin, 8/06/09 Tr. at 613 (emphasis added). ExxonMobil's blithe assertion that the City ought to use the Water Finance Authority's "construction fund" of "approximately $369 million"[8] as the obvious source of funding for Station 6 – which will cost, as the jury found, $250.5 million, while ExxonMobil continues to sit on the judgment (Opp. at 10), is the same sort of foot-dragging that the Court in *L.B. Foster Co. v. America Piles*, *Inc.*, *supra*, found would create a substantial risk of injustice.

## CONCLUSION

For all of the foregoing reasons, the City respectfully requests entry of partial judgment as to the claims that have been resolved in its favor to date.

---

[8] As Mr. Thomas Paolicelli explained at trial, the construction fund is *not* "money that's available to just pay out willy-nilly." 8/07/09 Tr. at 823:23-25. The fund must maintain minimum reserves and a balance sufficient to reimburse the City for incurred capital costs. 8/07/09 Tr. at 823:5-7; 822:1-20.

Dated: San Francisco, California
 February 10, 2010                                    Respectfully submitted,


                                                      MICHAEL A. CARDOZO
                                                      Corporation Counsel of the City of New York
                                                      Attorney for Plaintiff City of New York
                                                      100 Church Street
                                                      New York, New York 10007
                                                      (212) 788-1568

                                                         /s/ *VICTOR M. SHER*
                                                      VICTOR M. SHER *(pro hac vice)*
                                                      TODD E. ROBINS *(pro hac vice)*
                                                      NICHOLAS G. CAMPINS *(pro hac vice)*
                                                      MARNIE E. RIDDLE *(pro hac vice)*

                                                      SHER LEFF LLP
                                                      450 Mission Street, Suite 400
                                                      San Francisco, CA 94105
                                                      (415) 348-8300

                                                      *Attorneys for Plaintiff City of New York*

# CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the following documents were served on Liaison Counsel via Electronic Mail, and on all counsel of record by posting them directly to CM/ECF and LexisNexis File & Serve on the 10th day of February, 2010:

1) **PLAINTIFF CITY OF NEW YORK'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ENTRY OF JUDGMENT PURSUANT TO FED. R. CIV. P. RULE 54(B)**

/s/*GENEVA D. HILL*
GENEVA D. HILL