**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------- x

In Re: Methyl Tertiary Butyl Ether ("MTBE")   Master File No. 1:00-1898
Products Liability Litigation   MDL 1358 (SAS)
   M21-88
---------------------------------------------------------------------- x   ECF Case

**This document relates to the following case:**

*City of New York, et al. v. Amerada Hess Corp., et al.*
Case No. 04 Civ. 3417

---------------------------------------------------------------------- x

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR ENTRY OF JUDGMENT PURSUANT TO FED. R. CIV. P. RULE 54(b)**

## INTRODUCTION

The parties jointly move for entry of partial judgment under Federal Rule of Civil Procedure (FRCP) 54(b) and in accordance with the jury verdict rendered on October 19, 2009 (the "Station 6 Verdict"). That verdict, finding the ExxonMobil defendants ("ExxonMobil")[1] liable for the City plaintiffs' ("the City's")[2] damages for the drinking water wells associated with Station 6 (the "Station 6 Wells"), ends the litigation and resolves the City's claims for those wells.

The Station 6 Verdict left unresolved (i) the City's state law claims concerning wells other than the Station 6 wells, and (ii) the City's federal law claims under the Toxic Substances Control Act, 15 U.S.C. § 2601 et seq. (TSCA). The parties have stipulated to dispose of the unresolved claims as follows:

1. *<u>The City will voluntarily dismiss without prejudice its state law claims concerning wells other than the Station 6 wells, conditioning its ability to re-file those claims on the Second Circuit's disposition of certain issues.</u>* Concurrently with entry of 54(b) judgment on the Station 6 Verdict, the parties ask the Court to grant the City's request to dismiss all of its remaining state law claims concerning its non-Station 6 wells, without prejudice. The City's ability to re-file those claims, however, is expressly conditioned on the Second Circuit's disposition of certain issues. Specifically, the City gives up its right to re-file if the Second Circuit holds that its state law claims are preempted, or enters any other such holding that would effectively bar the City's ability to assert its state law

---

[1] The ExxonMobil defendants include ExxonMobil Corporation, ExxonMobil Oil Corporation and Mobil Corporation.
[2] We refer to the City of New York, the New York City Water Board and the New York City Municipal Water Finance Authority collectively as the "City."

claims. By doing so, the City accepts the risk that it may never be able to re-file its state law claims on other wells.

2. *The parties agree to stay the City's TSCA claim.* The City's TSCA claim is entirely distinct as a matter of law from its state-law claims and implicates different sources and kinds of proof. Because of these differences, and the fact that the TSCA claim alleges MTBE-related issues concerning sites and facts in *multiple* States, ExxonMobil contends that it must conduct, and intends to conduct, substantial new discovery, including discovery with respect to those States, in addition to New York. The City agrees that such discovery (and the City's response to it), if conducted, would take an undoubtedly significant amount of time. In addition, because the TSCA claims are not case-specific, both sides feel an obligation to consult and coordinate with other parties in this MDL whose cases also contain TSCA claims. Under these circumstances, the parties have agreed to stay the TSCA claim.

Because all of the claims in the action other than those covered by the Station 6 Verdict have been stayed or dismissed, and because the TSCA claim and dismissed claims are entirely separate from the claims governed by the Station 6 Verdict, there is no just reason for delaying entry of judgment.

The parties, therefore, jointly request certification of the Station 6 Verdict and entry of judgment pursuant to Fed. R. Civ. Pro. Rule 54(b).

## BACKGROUND

The City filed this action on October 31, 2003, to recover costs and damages incurred as a result of MTBE allegedly harming the City's groundwater well system in the Jamaica area in the County of Queens. *In re MTBE*, 2007 WL 1601491, *8 (S.D.N.Y. June 4, 2007); *City of*

2

*New York* Fourth Amended Complaint ("4AC") at ¶ 1.  The City's complaint alleged MTBE contamination in an aquifer supplying groundwater to a system of approximately 70 wells in the Jamaica, Queens area (4AC at ¶119) and MTBE detections in over one quarter of those wells (4AC at ¶125) at certain times.  *See also In re MTBE*, 2009 WL 1952497, *1 (S.D.N.Y. July 6, 2009) (describing the New York City groundwater system in Queens).

As part of its trial plan, the Court selected five focus wells, all located in an area known as "Station 6," for the initial trial.  *In re MTBE*, 2009 WL 1952497 at *1-2.  The initial trial plan also included four phases:

> Phase I will focus on the City's groundwater supply plans, asking the jury whether the City intends to begin construction of Station 6 in the next fifteen years and to use water from the wells in the next fifteen to twenty-five years. Phase II will ask the jury whether MTBE will be present in the wells when the Station 6 treatment facility is completed or immediately after the wells are turned on. Phase III will focus on the remaining liability issues, such as causation and damages. Phase IV will focus on punitive damages.

*Id.* at *2, footnotes omitted.  The jury found in the City's favor for Phases I and II,[3] allowing the trial to proceed to Phase III.  The City's punitive damages claim was not presented to the jury.

On October 19, 2009, the jury rendered the Station 6 Verdict, awarding the City $104,690,000 in damages from ExxonMobil.  (October 19, 2009 Trial Transcript at 7042:9-7046:21; Court Exhibit 21).  Trial has not yet been scheduled on the City's state-law-based claims concerning wells other than the Station 6 wells, nor on the City's TSCA claim.

---

[3] "In Phase I of the trial, the jury held that the City intends, in good faith, (a) to begin construction of the Station Six facility within the next fifteen years and (b) to use the water from the Station Six wells, within the next fifteen to twenty years, as a back-up source of drinking water.  In Phase II, the jury held that (a) MTBE will be in the groundwater of the capture zone of the Station Six wells when they begin operation and (b) MTBE will peak at 10 parts per billion ("ppb") in the combined outflow of the Station Six wells in 2033."  *In re MTBE*, 2009 WL 3347214 at *1 (S.D.N.Y. Oct. 19, 2009).

3

Before the TSCA claim is tried, both parties intend to coordinate their activities with other plaintiffs and defendants bringing or defending against similar claims in other cases in the above-captioned multi-district litigation ("MDL") of which the City's case is a part. In addition, ExxonMobil contends that it needs to pursue, and should be allowed to pursue, additional discovery before the TSCA claim is tried. If conducted, this discovery and the City's response to it would require considerable time to complete.

## ARGUMENT

### I. THE STATION 6 VERDICT IS AN APPEALABLE FINAL JUDGMENT

Rule 54(b) provides:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Three factors govern the applicability of Rule 54(b): (i) whether multiple, separate claims exist, (ii) whether one of them has been finally determined, and (iii) whether there is no just reason for delay of an appeal. Even if these conditions are met, discretion to order Rule 54(b) certification remains with the district court. *Shrader v. Granninger,* 870 F.2d 874, 877 (2d Cir.1989).

Here, all three factors weigh in favor of certification under Rule 54(b). First, there are multiple, separate claims. Some separate claims have been dismissed; a different separate claim has been stayed; and the remaining claims at issue have been tried to a jury verdict. Second, the Station 6 claims have been "finally determined" by the jury's verdict on those claims. Third, there is no just reason for delay of an appeal where all other claims are separate from the claims determined by the Station 6 Verdict, and have been dismissed or stayed. Further, neither side opposes the entry of final judgment as to the Station 6 claims pursuant to Rule 54(b), and thus

the parties bring this motion jointly.  Accordingly, the Court should grant Rule 54(b) certification with respect to the Station 6 Verdict.

### A.  The Station 6 Well Claims Are Separable Claims That Have Been Finally Adjudicated

The Station 6 wells represent a nucleus of operative facts giving rise to an enforceable right on the City's part.  *See Gottesman v. General Motors Corp.*, 401 F.2d 510, 512 (2d Cir. 1968) (a claim is "the aggregate of operative facts which give rise to a right enforceable in the courts").  The City has dismissed its claims pertaining to the other wells, leaving no wells at issue in this litigation except the Station 6 wells.

Importantly, the dismissed claims are separate from those at issue in the Station 6 case, because the facts on which they are based are entirely different.  *See Cullen v. Margiotta,* 811 F.2d 698, 711 (2d Cir. 1987) (claims are separable if they "involve at least some different questions of fact and law and could be separately enforced").  In addition, the City is not completely free to re-litigate the dismissed claims.  Legal questions, such as preemption, that potentially apply to all of the City's state law claims, could, if decided in Exxon's favor on appeal, effectively preclude the City's assertion of those claims.  The City, moreover, has expressly conditioned its ability to re-file the dismissed claims on the Second Circuit entering no judgment in Exxon's favor on any such legal question.  Thus, it cannot re-file those claims in a state court and seek to re-litigate those global issues in a piecemeal fashion.  Therefore, like the plaintiff in *Purdy v. Zeldes*, the City "runs the risk that if [its] appeal is unsuccessful, [its] case comes to an end."  *Purdy v. Zeldes,* 337 F.3d 253, 258 (2d Cir. 2003); *accord, e.g., Chappelle v. Beacon Commc'ns Corp.,* 84 F.3d 652, 654 (2d Cir. 1996) (judicial economy is promoted if a plaintiff is permitted, via voluntary dismissal without prejudice, "to forgo litigation on the

dismissed claims while accepting the risk that if the appeal is unsuccessful, the litigation will end"). Here, the City cannot re-file any dismissed claims until after the conclusion of all appeals on the Station 6 Verdict, and then only if the appellate courts do not resolve legal issues like preemption in Exxon's favor. Therefore, for all intents and purposes, the City has foregone litigation on its dismissed claims and accepted the risk that those claims may never be re-filed. And much like *Purdy*'s, the City's assumption of this risk "creates a final judgment reviewable by this court." *Id.*

The City's TSCA claim is separate and distinct from the Station 6 Wells, because it raises entirely different questions of law (as a federal statute, rather than a set of common-law tort claims). *See Cullen v. Margiotta, supra*; *Gottesman v. General Motors Corp.,* 401 F.2d 510, 512 (2d Cir.1968) (Rule 54(b) certification of a claim was proper because "[d]ifferent exhibits, proof and witnesses will be necessary [and] different sets of operative facts will determine the result" of trying each claim.) The City's TSCA claim alleges that ExxonMobil has violated TSCA Section 8(e), which provides that:

> Any person who manufactures, processes, or distributes in commerce a chemical substance or mixture and who obtains information which reasonably supports the conclusion that such substance or mixture presents a substantial risk of injury to health or the environment shall immediately inform the [United States Environmental Protection Agency ("EPA")] Administrator of such information unless such person has actual knowledge that the Administrator has been adequately informed of such information.

15 U.S.C. § 2607(e).

On the face of § 8(e), the legal issues arising from TSCA's reporting requirements are different from the legal issues involved in the Station 6 trial. Moreover, many different exhibits, proof, and witnesses will be necessary to prove the City's TSCA case—as is demonstrated by ExxonMobil's asserted need (and intent) to conduct discovery that may assist it in characterizing

6

and establishing additional defenses to such proof. As a result, the two claims are separate. And where, as here, "[d]ifferent exhibits, proof and witnesses will be necessary; different sets of operative facts will determine the result," then "Rule 54(b) is applicable; the judgment is final and appealable." *Gottesman v. General Motors Corp.*, 401 F.2d 510, 512 (2d Cir. 1968)

The verdict on Station 6 thus represents a final judgment on a separate set of claims. "Generally, a final order is an order of the district court that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " *Hallock v. Bonner,* 387 F.3d 147, 152 (2d Cir. 2004) (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 467, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)). No questions remain as to the merits of the City's Station 6 claims. The jury's verdict for the Station 6 wells established injury, causation, liability, and damages, and leaves nothing for this Court to do, as to those wells, except enforce the judgment.

Other courts have entered Rule 54(b) judgments in similar circumstances after trying and deciding a subset of claims. For instance, in *In re Hanford Nuclear Reservation Litigation*, the claims of a subset of six plaintiffs (out of over two thousand) were tried first, and appealable judgments were entered in favor of two of them. 497 F.3d 1005, 1013, 1016-1017 (9th Cir. 2007); *see also Gottesman*, 401 F.2d at 512 (holding appeal proper where plaintiff had asserted antitrust-type claims regarding defendants' control of numerous, different component-part industries, and court had finally adjudicated claims as to one industry, given different proofs).

## II.  THERE IS NO JUST REASON FOR DELAY

Entry of judgment under Rule 54(b) calls for a showing of "some danger of hardship or injustice through delay." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 239 (2d Cir. 2002) (citing *Hogan*) (emphasis added); *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,* 106 F.3d 11, 16 (2d Cir. 1997). Rule 54(b) certification has been granted in cases where there

was simply "no purpose in further delaying adjudication of the claims" that had been certified. *Francis v. Morgenthau*, 164 F.2d 617, 1998 WL 646874, *1 (2d Cir. 1998). In *Cullen v. Margiotta*, the Second Circuit held that hardship was present where permitting an appeal meant that "an expensive and duplicative trial could be avoided." *Cullen v. Margiotta,* 811 F.2d 698, 711 (2d Cir. 1987), *overruled on other gds by Agency Holding Corp. v. Malley-Duff & Associates, Inc.,* 483 U.S. 143 (1987). Upon entry of judgment on the Station 6 verdict, there will be no pending state law claims, a stayed TSCA claim, and the possibility of ending the parties' dispute through appeal. Thus, there is no reason to delay entry of judgment on the Station 6 Verdict.

Postponing entry of judgment until after the City's TSCA claim is tried could create substantial and unnecessary delay. Before the TSCA claim is tried, both sides intend to spend time coordinating with other plaintiffs and defendants who have brought or are defending against TSCA claims in other cases in this MDL. ExxonMobil also may need to conduct substantial additional discovery before the TSCA claim can be tried, and the City may need to do the same in response. Delaying entry of judgment on the Station 6 Verdict until after the TSCA claim is tried is both unnecessary and unjust. None of the TSCA-specific coordination or discovery will have any effect on the Station 6 Verdict. Because the Station 6 Verdict is final, there is no just reason to delay entry of judgment on that basis.

In *Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085 (2d Cir. 1992) ("*Ginett*"), the Second Circuit upheld the district court's Rule 54(b) certification of a subset of the plaintiff's claims because forcing the plaintiff to wait for entry of judgment on already-decided claims would be unjust:

> If Ginett is legally entitled to a judgment on his severance pay claim, he should be able to execute upon it now, and should not be penalized for combining his

8

>separate claims against CTG in one complaint. This is exactly the sort of "hardship and denial of justice through delay" that rule 54(b) was designed to eliminate.

*Ginett,* 962 F.2d at 1097.  Likewise here, the City's decision to combine its Station 6 claims and its TSCA claim in one case should not preclude entry of judgment on the Station 6 Verdict. Finally, certification of the Station 6 Verdict may advance judicial economy by promoting settlement of other cases in the MDL.  "A bellwether trial allows each party to present its best arguments on these issues for resolution by a trier of fact. Moreover, resolution of these issues often facilitates settlement of the remaining claims." *In re MTBE*, 2007 WL 1791258 at *2, citing the *Manual for Complex Litigation (Fourth)* § 20.132 (2004) ("Prior to recommending remand, the transferee court could conduct a bellwether trial of a centralized action or actions originally filed in the transferee district, the results of which (1) may, upon the consent of parties to constituent actions not filed in the transferee district, be binding on those parties and actions, or (2) may otherwise promote settlement in the remaining actions.")  Further delay in entering judgment on the Station 6 Verdict is, for all of the foregoing reasons, unwarranted.

//

//

//

//

9

## CONCLUSION

For the foregoing reasons, the parties jointly request that judgment on the City's Station 6 claims be entered pursuant to FRCP Rule 54(b).

Respectfully submitted,

Dated:   March 22, 2010

| | |
|---|---|
| MICHAEL A. CARDOZO<br>Corporation Counsel of the City of New York<br>100 Church Street<br>New York, New York  10007<br>Tel. (212) 788-1578 | James W. Quinn<br>David J. Lender<br>Theodore E. Tsekerides<br>Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, New York  10153<br>Tel. (212) 310-8000 |
| _/s/ VICTOR M. SHER_<br>VICTOR M. SHER (pro hac vice)<br>TODD E. ROBINS (pro hac vice)<br>NICHOLAS G. CAMPINS (pro hac vice)<br>MARNIE E. RIDDLE (pro hac vice)<br>SHER LEFF LLP<br>450 Mission Street, Suite 400<br>San Francisco, CA  94105<br>(415) 348-8300 | Fax  (212) 310-8007<br><br>- and -<br><br>Peter John Sacripanti<br>James A. Pardo<br>Stephen J. Riccardulli<br>Lisa A. Gerson<br>McDermott Will & Emery LLP<br>340 Madison Avenue |
| Attorneys for Plaintiffs the City of New York, the New York City Water Board and the New York City Municipal Water Finance Authority | New York, New York  10017-4613<br>Tel. (212) 547-5400<br>Fax  (212) 547-5444<br><br>Counsel for Defendants ExxonMobil Corporation, ExxonMobil Oil Corporation and Mobil Corporation |

## CONCLUSION

For the foregoing reasons, the parties jointly request that judgment on the City's Station 6 claims be entered pursuant to FRCP Rule 54(b).

Respectfully submitted,

Dated:   March 22, 2010

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
100 Church Street
New York, New York  10007
Tel. (212) 788-1578


_____
VICTOR M. SHER (pro hac vice)
TODD E. ROBINS (pro hac vice)
NICHOLAS G. CAMPINS (pro hac vice)
MARNIE E. RIDDLE (pro hac vice)
SHER LEFF LLP
450 Mission Street, Suite 400
San Francisco, CA  94105
(415) 348-8300

Attorneys for Plaintiffs the City of New York, the New York City Water Board and the New York City Municipal Water Finance Authority

James W. Quinn
David J. Lender
Theodore E. Tsekerides
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York  10153
Tel. (212) 310-8000
Fax  (212) 310-8007

- and -

Peter John Sacripanti
James A. Pardo
Stephen J. Riccardulli
Lisa A. Gerson
McDermott Will & Emery LLP
340 Madison Avenue
New York, New York  10017-4613
Tel. (212) 547-5400
Fax  (212) 547-5444

Counsel for Defendants ExxonMobil Corporation, ExxonMobil Oil Corporation and Mobil Corporation