**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation | Master File No. 1:00-1898<br>MDL 1358 (SAS)<br>M21-88 |
| | ECF Case |
| **This document pertains to:** | |
| *City of New York v. Amerada Hess Corp. et al.,*<br>Case No. NY-04-CV-03417 | |

**EXXON MOBIL DEFENDANTS' OPPOSITION TO PLAINTIFFS'**
**MOTION FOR PREJUDGMENT INTEREST**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 2

ARGUMENT ..................................................................................................................... 5

I.      THE CITY IS NOT ENTITLED TO A WINDFALL AWARD OF
PREVERDICT INTEREST FOR A LOSS THAT IT HAS NOT YET
INCURRED ............................................................................................................ 5

      A.     THE PURPOSE OF PREJUDGMENT INTEREST IS TO
COMPENSATE THE PLAINTIFF FOR THE LOSS OF THE USE OF
MONEY ..................................................................................................... 5

      B.     THE DAMAGES AWARDED TO THE CITY ARE FOR LOSSES IT
HAS NOT YET INCURRED ...................................................................... 7

      C.     NEW YORK LAW DOES NOT REQUIRE PREVERDICT INTEREST
FOR FUTURE LOSSES ............................................................................. 9

II.     THE CITY IS NOT ENTITLED TO PREVERDICT INTEREST BECAUSE ITS
DAMAGES WERE CALCULATED AT PRESENT VALUE, NOT
DISCOUNTED TO THE PAST ............................................................................. 12

III.    THERE IS NO BASIS FOR USING 2002 AS THE DATE FROM WHICH
PREVERDICT INTEREST SHOULD ACCRUE ................................................. 13

CONCLUSION ................................................................................................................. 15

## TABLE OF AUTHORITIES

**Page**

### FEDERAL CASES

*In re City of New York*, 332 F.2d 1006 (2d Cir. 1964) ........................................................5, 7, 12

*Connecticut National Bank v. Omi Corp.*, 928 F.2d 39 (2d Cir. 1991) ...........................................6

*Gierlinger v. Gleason*, 160 F.3d 858 (2d Cir. 1998)........................................................................6

*Gordon v. Matthew Bender & Co.*, 186 F.3d 183 (2d Cir. 1999) .................................................5, 6

*Grace v. Corbis Sygma*, 535 F.Supp.2d 392 (S.D.N.Y. 2008) ........................................................9

*Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85 (2d Cir. 2000)...................................................10

*H&P Research, Inc. v. Liza Realty Corp.*, 943 F.Supp. 328 (S.D.N.Y. 1996) ..............................10

*Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8 (2d Cir. 2000).....................................9

*Lin v. McDonnell Douglas Corp.*, 742 F.2d 45(2d Cir. 1984).....................................................7, 9

*In re MTBE Products Liability Litigation*, 568 F.Supp.2d 376 (S.D.N.Y. 2008)............................8

*In re MTBE Products Liability Litigation*, 2009 U.S. Dist. LEXIS 59287 (S.D.N.Y. July 6, 2009) ..........................................................................................................................................8

*In re MTBE Products Liability Litigation*, 2009 U.S. Dist. LEXIS 78081 (S.D.N.Y. Aug. 25, 2009) ...........................................................................................................1, 3, 4, 8

*N.Y. Marine & General Insur. Co. v. S/S Ming Prosperity*, 920 F.Supp. 416 (S.D.N.Y. 1996) ...........................................................................................................................................11

*Trademark Research Corp. v. Maxwell Online, Inc.*, 995 F.2d 326 (2d Cir. 1992) .....................12

*Woodling v. Garrett Corp.*, 813 F.2d 543 (2d Cir. 1987) ...........................................................5, 9

### STATE CASES

*155 Henry Owners Corp. v. Lovlyn Realty Co.*, 231 A.D.2d 559 (N.Y. App. Div. 1996) ..............6

*Aurecchione v. N.Y. State Division of Human Rights*, 98 N.Y.2d 21 (N.Y. 2002)...........................6

## TABLE OF AUTHORITIES

**Page**

*Bamira v. Greenberg*, 295 A.D.2d 206 (N.Y. App. Div. 2002) ................................................5, 12

*Brushton-Moira Central School District v. Fred H. Thomas Associate, P.C.*, 91 N.Y.2d
    256 (N.Y. 1998) ................................................................................................12, 13

*Cotazino v. Basil Development Corp.*, 167 A.D.2d 632 (N.Y. App. Div. 1990)...........................14

*De Wall v. Owl Homes of Victor*, 213 A.D.2d 977 (N.Y. App. Div. 1995)...................................11

*Delulio v. 320-57 Corp.*, 99 A.D.2d 253 (N.Y. App. Div. 1984) ................................................15

*Friedland v. State*, 314 N.Y.S.2d 935 (N.Y. App. Div. 1970) ...................................................11

*L. Smirlock Realty Corp. v. Title Guarantee Company*, 63 N.Y.2d 955 (N.Y. 1984)..................11

*Langer v. Miller*, 305 A.D.2d 270 (N.Y. App. Div. 2003) .........................................................12

*Love v. State*, 78 N.Y.2d 540 (N.Y. 1991).................................................................................6

*Milbrandt v. A.P. Green Refractories Co.*, 79 N.Y.2d 26 (N.Y. 1992) ....................7, 9, 10, 12, 13

*Mosesson v. 288/98 W. End Tenants Corp.*, 294 A.D.2d 283 (N.Y. App. Div. 2002) ..............5, 12

*In re New York City Asbestos Litigation*, 188 A.D.2d 214 (N.Y. App. Div. 1993).........................7

*Property Owners Association of Harbor Acres, Inc. v. Ying*, 137 A.D.2d 509 (N.Y. App.
    Div. 1988) ................................................................................................................11

*Spodek v. Park Prop. Development Associates*, 96 N.Y.2d 577 (N.Y. 2001) ...............................5

*Spodek v. Park Prop. Development Associates*, 279 A.D.2d 467 (N.Y. App. Div. 2001) ..............6

*Sweet v. Syracuse*, 129 N.Y. 316 (N.Y. 1891)..........................................................................11

*Webster v. Culver Roadways, Inc.*, 79 Misc.2d 256 (N.Y. Sup. Ct. 1974)...................................13

*Westphal v. New York*, 75 A.D. 252 (N.Y. App. Div. 1902) ........................................................11

# TABLE OF AUTHORITIES

**Page**

## STATUTES

New York CPLR § 5001 ................................................................................... *passim*

New York CPLR § 5002 ...........................................................................1, 15

New York Estates, Powers and Trusts Law § 5-4.3 ...................................................9

# INTRODUCTION

The City of New York ("the City") is not entitled to prejudgment interest for any period

of time before the verdict because the jury's damage award already fully compensates it for its

losses.[1]  As the Court knows, the City has always maintained that its injury (*i.e.*, MTBE

contamination interfering with its use of the Station 6 wells) is distinct from its damages (*i.e.*,

costs to remedy the contamination).  (*See e.g.*, Pl. City of New York's Mem. of Law in Opp. to

Def. Exxon Mobil Corp's Mot. for Summary Judgment of Pl's Claims Related to Station 6 Based

on the Statute of Limitations at 2.)  Likewise, the Court has held that "[t]he MTBE

contamination is the *injury*; the design and construction costs are *damages* the City seeks to

recover for remediating the injury."  *In re MTBE Prods. Liab. Litig.*, 04 Civ. 3417 (SAS), 2009

U.S. Dist. LEXIS 78081, at *14 (S.D.N.Y. Aug. 25, 2009) (emphasis in the original).  The City

cannot ignore its prior repeated and consistent position, or this Court's prior holdings, to blur the

distinction between its injury and its damages (arguing that both were incurred at the same time)

merely because it now hopes to recover more than $75 million in prejudgment interest.  In fact,

regardless of when the City's injury may have occurred (or will occur), there is no dispute that it

has not yet incurred the treatment costs for which it was awarded damages.

The jury awarded damages for the only losses the City claimed and pursued at trial – *i.e.*,

future costs for treating the Station 6 wells.  No additional award of interest is needed to

compensate the City for losing the use of that money prior to the verdict because the money has

not yet been spent.  Moreover, even if the City had incurred a past loss (and it has not – recall

that the City elected not to put on any proof at trial to support its alleged past damages, which

---

[1] The Exxon Mobil Corporation defendants ("ExxonMobil") do not oppose the City's motion under CPLR § 5002 for interest from the time of the verdict to the entry of judgment.

amounted to less than $1 million), the jury's award already accounted for the lapse of time

because it calculated damages at present value as of the time of the verdict, not at some

discounted past value.  Given that the City was awarded the present value of entirely future

losses, an additional award of preverdict interest would give the City an unjust windfall.

     Moreover, because the trial was about MTBE contamination of the Station 6 wells in the

*future*, the jury did not consider or make any finding as to whether ExxonMobil was responsible

for MTBE detections in the Station 6 wells in 2002 or at any other time in the past.  It would be

manifestly unfair to require ExxonMobil to pay interest on "damages" that it did not cause or, at

least, that no jury has said it caused.  Given the trial record, it is not possible for the Court to fix

a date from which to compute preverdict interest.

## BACKGROUND

     Throughout this litigation, the only damages that the City of New York has ever sought to

recover are costs related to the treatment of its wells.  Diminution of property value has never

been a part of the City's theory of recovery, until now – months after the verdict in this case.

Diminution of property value was never pled; was never identified by the City in its discovery

responses (including to demands requesting identification of all alleged injuries); and was never

the subject of any proof at trial.

     In its complaint, the City alleged:

> "The City of New York … brings this action to recover all costs and damages
> … that it has incurred, is incurring, and will incur from investigating,
> cleaning, detecting, monitoring, preventing, abating, containing, removing,
> and remediating, among other things, the harm that [MTBE] … has caused to
> the City's groundwater well system as a result of contamination of the soil
> and/or the aquifer from which these wells draw water …."

(4th Am. Compl. ¶ 1.)  The City further alleged that it "will have to pay in excess of

$300,000,000 to remedy the contamination and enable use of the wells again" and sought

compensatory damages of at least $300,000,000.  (4th Am. Compl. ¶ 69, p. 37.)

Furthermore, in discovery, the City made clear that the only damages it sought were costs

for investigation and treatment.  In response to an interrogatory asking the City to "[i]dentify, in

as much detail as is available, the damages you claim to have incurred as a result of MTBE

detected at the Station 6 wells" the City identified approximately $900,000 in costs for

investigation of MTBE, sampling, modeling, preliminary assessment of treatment alternatives,

and conceptual design.  (*See* Declaration of L. Handel ("Handel Decl."), Exh. A, excerpt from Pl.

City of New York's Responses and Objections to Defs' Well Specific Discovery at 24.)  The

City identified no other past costs or losses as damages it had already incurred.  (*Id.*)  Indeed, the

City never introduced any evidence at trial concerning past damages, or any type of damage

other than treatment costs.

Because the City has never used the Station 6 wells, the issue at trial was whether the

presence of MTBE in the groundwater would interfere with the City's intended use of the wells

in the future.  (*See* 6/2/2009 Status Conf. Tr. 6:22-25 ("None of these wells have been operated

during the period that MTBE is in them.  And the case is about installing the treatment in

anticipation of bringing them back online." (V. Sher)).)  Thus, the Court required the City to

prove that "it intends, in good faith, to use the property .... [and] that MTBE will be in the water

– at a level sufficient to cause injury – at the time the plant is likely to be built."  *In re MTBE

Prods. Liab. Litig.*, 2009 U.S. Dist. LEXIS 78081, at *36.  The jury found, in part, that the City

intends to use the water from the Station 6 wells within the next 15 to 20 years as a backup

source of drinking water (Ct. Exh. 5); that MTBE levels in the combined outflow of the Station 6

- 3 -

wells will peak at a concentration of 10 ppb in the year 2033 (Ct. Exh. 10); that the City "is, *or will be*, injured by the MTBE that *will be* in the combined outflow of the Station 6 wells" (Ct. Exh. 21 at 1); and that a total sum of $250.5 million "will fairly and reasonably compensate the City for all damages the City has proven, ... , that it suffered *or will suffer* by reason of the MTBE contamination in the combined outflow of Station 6" (*id.* at 6). (Emphasis added.)

The jury's damage award was based on the testimony of the City's expert, Marnie Bell, regarding costs the City will incur to construct and operate a Station 6 treatment facility in the future. Ms. Bell testified that, based on the jury's finding that MTBE would reach a peak concentration of 10 ppb in 2033, the total costs to construct and operate a GAC treatment facility for the combined outflow of the Station 6 wells would be about $250 million.[2] (9/24/09 Tr. 5885:24 – 5886:10.) Ms. Bell's calculation included about $60 million in initial capital costs, plus costs for replacement of equipment and operating and maintenance ("O&M") expenses, assuming that the plant would operate continuously for a period of 40 years. (9/24/09 Tr. 5884:16 – 5885:23, 5886:15-17 (Bell).)

Ms. Bell's numbers were based on the present value (in 2009 dollars) of these anticipated future costs. (*See* 9/24/09 Tr. 5885:24 – 5886:10, 5904:9-17.) Ms. Bell acknowledged that costs associated with construction and operation of treatment plants have increased over time, such that it is now more expensive to treat the Station 6 wells than it would have been in the past. (*See id.* at 5916:7-14 ("Since 2004, there are significant escalation in concrete, cost to construct materials, stainless steel costs."); *id.* at 5917:16-18 ("That main jump [in cost] was largely due to

---

[2] The demonstrative exhibit that was displayed during Ms. Bell's trial testimony showed that, based on a peak MTBE concentration of 10 ppb, the net present value of the total costs for construction and operation of a Station 6 GAC treatment facility is, in Bell's opinion, $250,450,000. (*See* Handel Decl. Exh. B.)

the increased trends we were seeing in the construction market in terms of escalation of prices for materials and prices for labor."); *id.* at 5919:20-23 ("Additionally, since '04, prices of – the costs we were using to estimate electricity went up by about 40 percent, and again the costs of the carbon in the vapor phase system have also increased since 2004.")

## **ARGUMENT**

### I.   **THE CITY IS NOT ENTITLED TO A WINDFALL AWARD OF PREVERDICT INTEREST FOR A LOSS THAT IT HAS NOT YET INCURRED.**

An award of preverdict interest would be an unfair windfall to the City because the only damages it proved at trial are future losses that it has not yet incurred.  The City has not yet incurred the principal loss – *i.e.*, its treatment costs – nor has it suffered the loss of the use of that principal sum.  Therefore, interest is not needed to make the City whole.

### A.   **The Purpose Of Prejudgment Interest Is To Compensate The Plaintiff For The Loss Of The Use Of Money.**

The purpose of prejudgment interest "is to compensate a plaintiff for the loss of use of money." *Gordon v. Matthew Bender & Co.*, 186 F.3d 183, 186 (2d Cir. 1999); *see also Woodling v. Garrett Corp.*, 813 F.2d 543, 561 (2d Cir. 1987) ("The purpose of a prejudgment interest award is to remedy the delay in compensating a plaintiff for a loss."); *In re City of New York*, 332 F.2d 1006, 1008 (2d Cir. 1964) ("It is the combination of these two elements, the immediate loss to the plaintiff and the delay in the payment of compensation by the defendant that warrants the granting of prejudgment interest …."); *Mosesson v. 288/98 W. End Tenants Corp.*, 294 A.D.2d 283, 284 (N.Y. App. Div. 2002) ("The purpose of prejudgment interest is to compensate parties for the loss of the use of money that they were entitled to receive, taking into account the time value of money."). Prejudgment interest is intended "to make an aggrieved party whole." *Spodek v. Park Prop. Dev. Assocs.*, 96 N.Y.2d 577, 581 (N.Y. 2001); *Bamira v.*

*Greenberg*, 295 A.D.2d 206, 207 (N.Y. App. Div. 2002). "[I]nterest is not a penalty. Rather, it is simply the cost of having the use of another person's money for a specified period." *Love v. State*, 78 N.Y.2d 540, 543 (N.Y. 1991) (citing Siegel, NY Prac § 411, at 623 [2d ed]); *see also Aurecchione v. N.Y. State Div. of Human Rights*, 98 N.Y.2d 21, 27 (N.Y. 2002) ("interest is not a punishment arbitrarily levied upon a culpable party. Instead, an award of interest is simply a means of indemnifying an aggrieved person."). In other words, prejudgment interest compensates the plaintiff for the return he could have earned on his money between the time of the loss and the time of judgment. *See Conn. Nat'l Bank v. Omi Corp.*, 928 F.2d 39, 43-44 (2d Cir. 1991).

Thus, preverdict interest is appropriate only when the plaintiff has already suffered a pecuniary loss. "An award of interest is founded on the theory that there has been a deprivation of the use of money or its equivalent, and that an award of interest will make the aggrieved party whole; it is not to provide a windfall." *Spodek v. Park Prop. Dev. Assocs.*, 279 A.D.2d 467, 468 (N.Y. App. Div. 2001) (internal quotes and citations omitted). Although CPLR § 5001 provides that "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed," the language "ascertainable date 'assumes that whatever damages are sought are shown to have been sustained at least by that time.'" *155 Henry Owners Corp. v. Lovlyn Realty Co.*, 231 A.D.2d 559, 560 (N.Y. App. Div. 1996) (quoting Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5001:4, at 359).

It logically follows that, when a plaintiff is awarded damages for *future* losses, it is inappropriate to grant prejudgment interest. *Gordon*, 186 F.3d at 186 ("[A]n award of pre-judgment interest is not appropriate with respect to an award of damages for future losses." (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 875 (2d Cir. 1998)); *Conn. Nat'l Bank*, 928 F.2d

- 6 -

at 43-44 (2d Cir. 1991); *Lin v. McDonnell Douglas Corp.*, 742 F.2d 45, 51-52 (2d Cir. 1984); *In re City of New York*, 332 F.2d 1006, 1008 (2d Cir. 1964); *Milbrandt v. A.P. Green Refractories Co.*, 79 N.Y.2d 26, 35 (N.Y. 1992); *In re New York City Asbestos Litig.*, 188 A.D.2d 214, 225 (N.Y. App. Div. 1993) ("prejudgment interest on future losses is no longer available under New York law" (citing *Milbrandt*, 79 N.Y.2d at 31)).

**B.    The Damages Awarded To The City Are For Losses It Has Not Yet Incurred.**

There can be no doubt that, regardless of when the City's *injury* may have occurred (or will occur in the future), it has not yet incurred its *damages*. The City's new argument that it has already suffered a loss – *i.e.*, diminution in property value – defies reason and flat out contradicts positions the City has taken throughout the course of this litigation. (*See* Mem. of Law in Support of Pls' Mot. for Prejudgment Interest ("Ps' Mem. of Law") at 10.) In more than six years of litigation the City has *never* claimed or argued diminution of property value as a result of MTBE contamination. In fact, counsel for the City previously took the position that the issue of whether the owner of an unused well – like the Station 6 wells – could recover for diminution in property value would be an "academic ... question." (6/2/2009 Tr. 68:5-6 (V. Sher).) Moreover, in response to discovery requests asking the City to identify all damages it had already sustained, the City did not disclose that it had suffered any loss of property value. Nor did the City introduce evidence at trial about diminution of property value. The only past damages that the City ever claimed were approximately $1 million in past costs for investigation and preliminary design of the Station 6 treatment plant (past damages which the City did not try or prove or have the jury consider). Nothing was ever offered by the City in the way of proof or argument about the "academic question" of determining whether the City's property suffered any diminished value as a result of MTBE detections in the Station 6 wells.

- 7 -

The only evidence of damages that the City offered at trial was the testimony of Marnie Bell regarding the cost of building and operating a Station 6 treatment plant in the future. Ms. Bell characterized these costs as "*future* costs represented in today's dollars." (9/24/09 Tr. 5904:9-17 (emphasis added).) Likewise, this Court has found that the City's claim is one for *future* damages arising from a present injury. *In re MTBE Prods. Liab. Litig.*, 2009 U.S. Dist. LEXIS 59287, *32 (S.D.N.Y. July 6, 2009).

As the Court has previously held, the City's damages are distinct from its injuries. *In re MTBE Prods. Liab. Litig.*, 04 Civ. 3417 (SAS), 2009 U.S. Dist. LEXIS 78081, at *14 (S.D.N.Y. Aug. 25, 2009). The Court has explained that "'[e]stablishing the appropriate measure of damages for injuries suffered from environmental conditions on neighboring land is separate and distinct from offering the requisite proof of the underlying claim.' ... 'A court may award property damages to address necessary restoration and repairs, lost rental value or property devaluation, depending on the type of action brought and the specific facts and circumstances of the case.'" *In re MTBE Prods. Liab. Litig.*, 568 F. Supp. 2d 376, 381 (S.D.N.Y. 2008) (quoting Mark S. Dennison, "Recovery of Damages for Injury to Landowner's Property From Environmental Condition on Neighboring Land," 37 Am. Jur. Proof of Facts 3d 439, § 10 (2008)); *see also In re MTBE Prods. Liab. Litig.*, 2009 U.S. Dist. LEXIS 78081, at *21 (quoting same). Based on the facts and circumstances of this case, the City was awarded damages for the future costs of treating the Station 6 wells. Under no stretch of the imagination could the City's damage award be considered compensation for devaluation of property that the City never before pled, alleged, disclosed, or even mentioned at trial.

**C.     New York Law Does Not Require Preverdict Interest For Future Losses.**

Plaintiff wrongly asserts that preverdict interest is mandatory in all cases involving interference with property rights.  Despite the seemingly mandatory language of CPLR § 5001(a) – providing that "[i]nterest shall be recovered upon a sum recovered" – New York courts have declined to apply the provision to damage awards for future losses.  *See Grace v. Corbis Sygma*, 535 F. Supp. 2d 392, 401-02 (S.D.N.Y. 2008) (awarding prejudgment interest under CPLR § 5001 for past lost income, but not for lost future income); *see also Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 22 (2d Cir. 2000) (remanding for recalculation of § 5001 interest that was to exclude future losses).

In addition, the New York Court of Appeals and Second Circuit have held that statutory language similar to that in CPLR § 5001 does not mandate prejudgment interest for future, post-judgment losses because awarding interest for such losses would give the plaintiff a double recovery.  *Milbrandt*, 79 N.Y.2d at 35-36; *Lin*, 742 F.2d at 51-52; *see also Woodling*, 813 F.2d at 561 (following holding of *Lin*).  In *Milbrandt* and *Lin*, the courts interpreted New York Estates, Powers and Trusts Law § 5-4.3, which provides that prejudgment "[i]nterest … shall be added to and be a part of the total sum awarded" in wrongful death actions.  79 N.Y.2d at 35-36; 742 F.2d at 51-52.  The New York Court of Appeals held that, to avoid "absurd or unjust results" of windfall interest awards, the statute must not be construed to require preverdict interest on awards for future damages that were valued at the time of verdict.  79 N.Y.2d at 36.  Likewise, the *Lin* Court explained that damages for future losses are discounted to present value to adjust for the "future earning power of a present lump sum award" and, therefore, "[w]ere prejudgment interest applied to the component of the award intended to compensate the plaintiff for post-judgment losses, plaintiffs would effectively receive a double recovery."  742 F.2d at 52.  As in

*Milbrandt* and *Lin*, the damages awarded to the City were based on the present value of future losses and were not discounted to a time before the verdict. Under the reasoning of those decisions, it would be absurd and unjust to interpret CPLR § 5001 as requiring an award of preverdict interest on the City's damages.

The absurdity of applying preverdict interest to an award for future losses is evident from the language of CPLR § 5001(b) regarding computation of preverdict interest. That section provides that "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed, *except* that interest upon damages incurred thereafter shall be computed from the date incurred." NYCPLR § 5001(b) (emphasis added). Clearly, damages incurred in the future, at some time after the verdict, are damages incurred after "the earliest ascertainable date the cause of action existed." Thus, under CPLR § 5001(b), it is inappropriate to compute interest on such damages from the date when the cause of action accrued. However, because future damages have not yet been incurred as of the date of the verdict, there is no date from which to calculate preverdict interest under CPLR § 5001(b). The statute cannot be applied logically to damages for future losses and, therefore, should be construed to require interest only for damages incurred before the verdict. *See Milbrandt*, 79 N.Y.2d at 36 ("It is an accepted doctrine that a literal reading of a statute should, where possible, be avoided if it produces an absurd or unjust result.").

The cases cited by the City, in which plaintiffs were awarded interest from the date when their claim for property damage accrued, do not support its argument for preverdict interest. (*See* Ps' Mem. of Law at 7-10.) Unlike the City, the plaintiffs in those cases recovered for losses in the value of real or personal property that occurred at the time of their injury. *See Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 89 (2d Cir. 2000) (damages awarded for permanent

- 10 -

injury to property due to contamination); *H&P Research, Inc. v. Liza Realty Corp.*, 943 F. Supp.

328 (S.D.N.Y. 1996) (damages for value of personal property destroyed in wrongful eviction);

*N.Y. Marine & Gen. Insur. Co. v. S/S. Ming Prosperity*, 920 F. Supp. 416 (S.D.N.Y. 1996)

(damages for value of lost cargo); *L. Smirlock Realty Corp. v. Title Guarantee Company*, 63

N.Y.2d 955, 958 (N.Y. 1984) (damages for difference in value of real property with and without

the defect in title); *De Wall v. Owl Homes of Victor*, 213 A.D.2d 977 (N.Y. App. Div. 1995)

(damage to motor home); *Prop. Owners Assoc. of Harbor Acres, Inc. v. Ying*, 137 A.D.2d 509

(N.Y. App. Div. 1988) (damages for permanent injury to real property due to trees cleared from

plaintiff's property).  Even though, in *Property Owners Association of Harbor Acres, Inc. v. Ying*

and *Gussack Realty Company v. Xerox Corporation*, the measure of damages was based on costs

of restoration that had not yet been incurred – as opposed to the decline in market value – the

purpose of the damage awards was to compensate the plaintiffs for the loss in property value that

had already occurred.  In contrast, as discussed above, the City never sought damages for

devaluation of its property, but rather was awarded damages only for future losses.

Furthermore, the City's injury – interference with its usufructuary rights – is

fundamentally different from the property injuries in the cases on which the City relies.  In those

cases, the plaintiffs owned the property and, therefore, its value was an asset to them.  The City

does not own the groundwater; rather, its only right is to make reasonable use of the water.  *See*

*Sweet v. Syracuse*, 129 N.Y. 316, 335 (N.Y. 1891) ("Neither sovereign nor subject can acquire

anything more than a mere usufructuary right [in waters]"); *Friedland v. State*, 314 N.Y.S.2d

935, 937 (N.Y. App. Div. 1970) ("As to the use of percolating waters, a land owner has the right

upon its own lands to make use of them as he reasonably can...."); *Westphal v. New York*, 75

A.D. 252, 256 (N.Y. App. Div. 1902) (plaintiff "has the right to use the water, but he has no

- 11 -

property in the water as such"). Because the groundwater within the capture zone of the Station 6 wells has value only in its use, and the City has never used the Station 6 wells, the City cannot have sustained past damages for contamination of that groundwater.

## II.   THE CITY IS NOT ENTITLED TO PREVERDICT INTEREST BECAUSE ITS DAMAGES WERE CALCULATED AT PRESENT VALUE, NOT DISCOUNTED TO THE PAST.

Because the purpose of prejudgment interest is to make the plaintiff whole, it is inappropriate to add interest to a damage award that already accounts for any delay in time between the date of the loss and the date of judgment. *Trademark Research Corp. v. Maxwell Online, Inc.*, 995 F.2d 326, 342 (2d Cir. 1992); *In re City of New York*, 332 F.2d at 1008 ("Certainly the granting of prejudgment interest is not appropriate when the determination of damages itself includes some compensation for the delay from the time of injury to the time of judgment."). For example, in *Milbrandt v. A.P. Green Refractories Co.*, the New York Court of Appeals held that it is improper to add prejudgment interest to damages calculated at present value as of the time of the verdict because such an award "includes the return that would be earned on the principal" from the date of the injury to the date of the verdict. 79 N.Y.2d at 35. Where a plaintiff's damages are calculated at present value as of the time of trial, an award of preverdict interest under CPLR § 5001 would "lead to anomalous results and windfalls." *Brushton-Moira Central School Dist. v. Fred H. Thomas Assoc., P.C.*, 91 N.Y.2d 256, 262 (N.Y. 1998); *Langer v. Miller*, 305 A.D.2d 270, 271 (N.Y. App. Div. 2003) (finding interest award an "improper double recovery" where damages were based on present value of building); *Bamira v. Greenberg*, 295 A.D.2d 206, 207 (N.Y. App. Div. 2002) (holding that preverdict interest "would constitute a windfall double recovery" where damage award was based on present value of stock); *Mosesson v. 288/98 W. End Tenants Corp.*, 294 A.D.2d 283, 284 (N.Y. App. Div. 2002)

- 12 -

("where plaintiff's proof of damages set forth the costs of repair at the time of trial, which took place in August 2000, permitting the instant award of prejudgment interest, entitling plaintiff to interest from July 1, 1989, to stand would bestow an unwarranted windfall ...").

Here, based on the testimony of Ms. Bell, the jury's damage award was calculated at present value as of the time of the verdict. Assuming for the sake of argument that the City had already incurred a loss before the verdict (and it did not), the damage award already accounts for the return the City could have earned on that "principal" loss. Furthermore, as Ms. Bell testified that construction and operating costs had increased substantially since 2004, it is reasonable to assume that the jury's award of $250.5 million was significantly greater than the City's treatment costs would have been in 2002 or at any other time in the past when its claim could have accrued. Under the New York Court of Appeals' decision in *Milbrandt*, because the jury's damage award was calculated at present value as of the date of the verdict – and not discounted back to an earlier time – it already accounted for the return the City would have earned on the money before the verdict. *See* 79 N.Y.2d at 35. Any additional award of preverdict interest would result in an unwarranted windfall. *See Brushton-Moira Central School Dist.*, 91 N.Y.2d at 262. Moreover, "[h]aving selected the date as of which damages should be computed, the plaintiff should not now be permitted to claim an earlier date for the commencement of interest." *Webster v. Culver Roadways, Inc.*, 79 Misc. 2d 256, 259 (N.Y. Sup. Ct. 1974).

## III.   THERE IS NO BASIS FOR USING 2002 AS THE DATE FROM WHICH PREVERDICT INTEREST SHOULD ACCRUE.

Should the Court decide that the City is entitled to preverdict interest, the Court must "fix the date" from which to compute interest because the jury did not. *See* NYCPLR § 5001(c). Fixing the relevant date(s), however, will be a challenge as no evidence was presented at trial from which the Court could determine when the City's claim accrued or its damages were

- 13 -

incurred. Contrary to the City's contention, the date when its claim accrued cannot be used because the City's damages were incurred at a later time. *See* NYCPLR § 5001(b). Indeed, because it is impossible for the Court to fix a date from which to compute preverdict interest, this is yet another reason no preverdict interest should be awarded.

The City points to one piece of evidence, an exhibit showing past MTBE detection levels in the Station 6 wells, as proof of when its cause of action first existed. (*See* Ps' Mem. of Law at 2-3.) However, this document does not establish when an injury occurred or damages were sustained as a result of MTBE contamination in the "combined outflow" of the Station 6 wells. The jury determined only that the City "is, *or will be*, injured by the MTBE that *will be* in the combined outflow of the Station 6 wells" (Ct. Exh. 21 at 1 (emphasis added)), not that the City is or was injured by MTBE detections in the past. There was no jury determination or evidence at trial establishing that the City needed to treat the combined outflow of the Station 6 wells at any time before the verdict. Even if the City had incurred damages at a time when the MTBE levels in Well 6D exceeded the MCL, there was no jury determination or proof at trial that ExxonMobil is responsible for such past damages. For these reasons, in addition to the reasons discussed above, ExxonMobil submits that it is impossible for the Court to fix any fair date from which to compute preverdict interest.

Yet, if the Court believes that preverdict interest should be awarded, the earliest date from which it should compute such interest is the date when the City filed suit. Where there is no readily identifiable date when the cause of action existed or when the loss was incurred, and where preverdict interest is otherwise appropriate, New York courts calculate interest from the date when the lawsuit commenced. *See Cotazino v. Basil Dev. Corp.*, 167 A.D.2d 632, 635 (N.Y. App. Div. 1990) (citing *Della Pietra v. State of New York*, 125 AD2d 936, 938, *aff'd* 71

- 14 -

NY2d 792)); *Delulio v. 320-57 Corp.*, 99 A.D.2d 253, 255 (N.Y. App. Div. 1984). Thus, although ExxonMobil contends that no preverdict interest is appropriate, if the Court grants the City's motion, preverdict interest should be computed from no earlier than October 31, 2003.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the City of New York's motion to the extent it requests preverdict interest under CPLR § 5001. If the Court decides to grant preverdict interest, it should be computed from no earlier than October 31, 2003. ExxonMobil does not oppose the City's request for interest under CPLR § 5002 from the date of the verdict to the entry of judgment.

Dated:  March 29, 2010

Peter John Sacripanti (PS 8968)
James A. Pardo (JP 9018)
Lauren E. Handel (LH 0755)
MCDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, New York 10173
Tel:  212.547.5400
Fax:  212.547.5444

James W. Quinn (JQ 6262)
David J. Lender (DL 1554)
Theodore E. Tsekerides (TT 5946)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Tel:  212.310.8000
Fax:  212.310.8007

*Attorneys for the Exxon Mobil Corporation Defendants*