UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/5/10

IN RE METHYL TERTIARY BUTYL
ETHER ("MTBE") PRODUCTS
LIABILITY LITIGATION

**OPINION AND ORDER**

**00 MDL 1898 (SAS)**

------------------------------------------------------- X

**This Document Relates to:**

------------------------------------------------------- X

**CITY OF NEW YORK, *et al.*,**

      **Plaintiffs,**

    **- against -**

      **04 Civ. 3417 (SAS)**

**EXXON MOBIL CORPORATION, *et al.***

      **Defendants.**

------------------------------------------------------- X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

On October 31, 2003, the City of New York[1] ("City") filed this action

against various defendants alleging groundwater contamination. Because of the

---

[1]    In July 2009, the New York City Water Board and the New York City
Municipal Water Finance Authority were ordered to join this action as plaintiffs
pursuant to Fed. R. Civ. P. 19(a)(2). *See* 7/6/09 Order. I will refer to the three
plaintiffs collectively as the "City."

prohibitive size and complexity of the case, five of the dozens of wells at issue were subsequently selected for trial. In late 2009, the City's claims relating to those wells were tried to verdict against the remaining defendants – ExxonMobil Corporation, ExxonMobil Oil Corporation, and Mobil Corporation (collectively, "ExxonMobil") – in this case. The parties have moved jointly for entry of partial judgment with respect to that verdict pursuant to Federal Rule of Civil Procedure 54(b).

## II.    BACKGROUND

In late 2000, a handful of actions wherein plaintiffs alleged contamination of groundwater from various defendants' use of the gasoline additive methyl tertiary butyl ether ("MTBE") were consolidated into a multi-district litigation ("MDL") before this Court.[2] The MDL, as it approaches completion of its tenth year, has ballooned at times to over a hundred active cases – with each case encompassing multiple claims of contamination or threatened contamination.

The typical MTBE-related case is complex. Due to its high solubility,

---

[2]      The original cases in this MDL were settled after I denied class certification by opinion and order dated July 16, 2002. *See In re MTBE Prod. Liab. Litig.*, 209 F.R.D. 323 (S.D.N.Y. 2002). However, the MDL was revived after dozens of new MTBE cases originally filed in state court in 2003 were subsequently removed to federal court and transferred to this Court in 2004. *See In re MTBE Prod. Liab. Litig.*, 342 F. Supp. 2d 147, 148 (S.D.N.Y. 2004).

2

MTBE contained in gasoline released from multiple sites (*e.g.*, gas stations) combines into plumes that spread rapidly to contaminate multiple water sources (*e.g.*, water wells) within a given geographic area.[3]  The owner of these water sources – generally a public water district or other government entity – brings an action against every gasoline retailer, manufacturer and distributor that allegedly contributed to the MTBE contamination within the area controlled by that owner.[4] The resultant case involves alleged contamination of a significant number of water sources, numerous defendants, burdensome discovery created by the number of claims and defendants, and the inherently complex issues that either the court or a jury must resolve.  To make these potentially unwieldy cases more manageable, I have adopted a bellwether approach to many cases in the MDL – allowing the parties to select a discrete number of focus wells[5] for further discovery and ultimately trial.[6]

---

[3]    *See In re MTBE Prod. Liab. Litig.*, 457 F. Supp. 2d 324, 327-28 (S.D.N.Y. 2006).

[4]    *See, e.g., In re MTBE Prod. Liab. Litig.*, 341 F. Supp. 2d 351, 355-56 (S.D.N.Y. 2004) (describing allegations in *County of Suffolk v. Amerada Hess Corp.*).

[5]    For a variety of reasons, focus plumes and/or focus release sites are sometimes selected in lieu of, or in addition to, focus wells.

[6]    For a description of the bellwether approach taken in this MDL see generally *In re MTBE Prods. Liab. Litig.*, No. 04 Civ. 5424, 2007 WL 1791258

The instant case is typical in most respects.[7]  On October 31, 2003, the

City filed an action alleging MTBE contamination of the City's groundwater well

system in Jamaica, Queens.[8]  In preparation for trial, five focus wells, among the

dozens at issue in this case, were selected.[9]  All five focus wells are located in an

area known as Station Six – a facility which has not yet been completed and is not

yet used to distribute water to residents in the New York area.[10]

In 2009, this case became the first in this MDL to be tried to verdict.

The trial was divided in four phases.  In Phase I, the jury held that the City intends,

in good faith (a) to begin construction of the Station Six facility within the next

fifteen years and (b) to use the water from the Station Six wells within the next

fifteen to twenty years.[11]  In Phase II, the jury held that (a) MTBE will be in the

_____

(S.D.N.Y. June 15, 2007).

[7]     The *City of New York* case was one of four actions in this MDL
designated as a focus case in 2004. *See* Case Management Order No. 22.
Discovery and motion practice were accelerated in these cases in the hope of
providing guidance for the rest of the actions that are part of the MDL.

[8]     *See* Fourth Amended Complaint ("Compl.") ¶¶ 114-22.

[9]     *See In re MTBE Prod. Liab. Litig.*, 643 F. Supp. 2d 446, 451
(S.D.N.Y. 2009).

[10]     *See id.*

[11]     *See In re MTBE Prod. Liab. Litig.*, No. 04 Civ. 3417, 2009 WL
3347214, at *1 (S.D.N.Y. Oct. 19, 2009).

4

groundwater of the capture zone of the Station Six wells when they begin operation and (b) MTBE will peak at 10 parts per billion ("ppb") in the combined outflow for the Station Six wells in 2033.[12]  In Phase III, the jury held that the City will be injured by that contamination and held ExxonMobil liable – under various theories including trespass, public nuisance, and negligence – as a cause of that contamination.[13]  I did not allow the Jury, in a proposed Phase IV, to hear the City's punitive damages case.[14]

The Station Six verdict, rendered on October 19, 2009, left two sets of claims unresolved: (1) the City's state law claims concerning wells other than the Station Six wells, and (2) the City's federal law claims under the Toxic Substances Control Act ("TSCA").  Pursuant to the parties' stipulation, I have ordered the dismissal of the remaining state law claims to be "effective upon entry of judgment by the Court as to the verdict rendered by the Jury on October 19, 2009 regarding the Station Six Wells."[15]  The dismissal is without prejudice.[16]  However, under the stipulation, "[i]f after the conclusion of any appeals, any of the City's claims

---

[12]  *See id.*

[13]  *See* 10/19/09 Trial Transcript at 7042:9-7046:21.

[14]  *See generally In re MTBE*, 2009 WL 3347214.

[15]  Stipulation and Order of Dismissal Without Prejudice at 2.

[16]  *See id.* at 1.

related to Station 6 Wells are dismissed because they are held preempted by federal law, or any other holding is made that would effectively bar the City's ability to assert its state law claims, the City shall not commence or maintain an action asserting such state law claims with respect to any other drinking water wells at issue in this litigation."[17] The TSCA claim is stayed "pending the conclusion of any appeals of [the October 19, 2009] judgment."[18]

## II.   APPLICABLE LAW

Federal Rule of Civil Procedure 54(b) "provides an exception to the general principle that a final judgment is proper only after the rights and liabilities of all the parties to the action have been adjudicated."[19] It allows a district court to enter judgment as to fewer than all the claims in an action under certain conditions.[20]

---

[17]   *Id.* at 2.

[18]   *Id.*

[19]   *Hogan v. Consolidated Rail Corp.*, 961 F.2d 1021, 1024-25 (2d Gr. 1992).

[20]   Rule 54(b) provides:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon

*First*, "multiple claims or multiple parties must be present."[21]  In

instances of multiple claims, a district court should only enter final judgment if the

claims are separable.[22]  "Claims are normally treated as separable . . . if they

involve at least some different questions of fact and law and could be separately

enforced, or if different sorts of relief are sought."[23]  "When these features are

present, claims may be considered separable even if they have arisen out of the

same transaction or occurrence."[24]

*Second*, "at least one claim, or the rights and liabilities of at least one

party, must be finally decided within the meaning of 28 U.S.C. § 1291."[25]  Entry of

final judgment gives the Circuit Court jurisdiction to hear a direct appeal of the

_____

an express determination that there is no just reason for
delay and upon an express direction for entry of judgment.

[21]     *Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085, 1091 (2d Cir.
1992).

[22]     *See Cullen v. Margiotta*, 811 F.2d 698, 711 (2d Cir. 1987) (quotation
marks and citations omitted), *overruled on other grounds*, *Agency Holding Corp. v.
Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987).

[23]     *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 21
(2d Cir. 1997).

[24]     *Cullen*, 811 F.2d at 711.

[25]     *Id.*

7

judgment pursuant to section 1291.[26]  Accordingly, unlike the certification of an interlocutory appeal,[27] direction of final judgment on a claim, if properly granted, automatically permits an appeal.[28]  "A decision is final for purposes of section 1291 when it 'ends the litigation [of the claim] on the merits and leaves nothing for the court to do but execute the judgment.'"[29]

*Third*, "the district court must make 'an express determination that there is no just reason for delay' and expressly direct the clerk to enter judgment."[30]  The term "no just reason for a delay" is somewhat of a misnomer – as courts do not simply evaluate whether there is a just reason for delay, but generally apply a balancing test that weighs multiple factors to determine whether directing entry of a partial final judgment is in "'the interest of sound judicial

---

[26]     *See* 28 U.S.C. § 1291 ("The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all *final decisions* of the district courts of the United States . . . ." (emphasis added)).

[27]     *See* 28  U.S.C. 1292(b).

[28]     *See Ginett*, 926 F.2d at1091.

[29]     *Ellis v. Israel*, 12 F.3d 21, 23 (2d Cir. 1993) (citations omitted). *Accord Transport Workers Union of America, Local 100, AFL-CIO v. N.Y. City Transit Authority*, 505 F.3d 226, 230 (2d Cir. 2007).

[30]     *Ginett*, 926 F.2d at 1092.

8

administration.'"[31]  Importantly, a district court should consider the efficiency

interests of both the district and appellate courts,[32] as well as the balance of equities

as to the parties.[33]

The Second Circuit has articulated varying assessments of how

frequently courts should direct entry of 54(b) judgments. In some instances, the

Second Circuit has adhered to the "'historic federal policy against piecemeal

appeals,'" instructing district courts only to direct partial final judgment in

"exceptional" cases where failure to enter judgment would work an "unusual

hardship" on the litigants.[34]  In other instances, however, it has directly

---

[31]    *Id.* at 1095 (quoting *Curtiss-Wright Corp. v. General Elec. Co.,* 446
U.S. 1, 8 (1980)). *Accord Arlinghaus v. Ritenour*, 543 F.2d 461, 463 (2d Cir.
1976) ("[T]he determination involves 'weighing the overall policy against
piecemeal appeals against whatever exigencies the case at hand may present . . . .'"
(quoting *Panichella v. Penn. R.R. Co.*, 252 F.2d 452, 455 (3d Cir. 1958)).

[32]    *See Ginett*, 962 F.2d at 1095.

[33]    *See Curtiss-Wright*, 446 U.S. at 8 ("[A] district court must take into
account judicial administrative interests as well as the equities involved."); *State
of N.Y. v. AMRO Realty Corp.*, 936 F.2d 1420, 1426 (2d Cir. 1991) ("Accordingly,
we defer to the district court's judgment, in its role as dispatcher, that the interests
of 'sound judicial administration' as well as fairness to the parties, mitigate in
favor of certification.").

[34]    *Hogan*, 961 F.2d at 1025; *id.* at 1026 ("In sum, absent any special
circumstances indicating that adherence to the normal and federally preferred
practice of postponing appeal until after a final judgment has been entered,
disposing of all the claims of all the parties, will cause unusual hardship or work an
injustice, the district court's preference to have pretrial appellate review of its

9

contradicted this suggestion – asserting that the increasingly complex nature of litigation "cr[ies] out for flexibility in granting partial final judgments," and that courts cannot rely on "comparative adjectives like 'unusual', 'exceptional', or 'extraordinary' if we wish to chart a sound course for future panels of this court[.]"[35] Interestingly, the above quotations come from two Second Circuit decisions – *Hogan* and *Ginett* – decided two weeks apart.[36] Although these cases are seemingly at loggerheads, the Second Circuit has never expressly adopted the rationale of one decision over the other, and both continue to be cited at the district[37] and the appellate[38] level.

## III.   DISCUSSION

### A.   Multiple, Separate Claims

There are three sets of claims at issue: (1) the City's state law Station

---

assessment of the sufficiency of the evidence to support a given claim is an improper basis for entry of an immediate partial final judgment.").

[35]     *Ginett*, 926 F.2d at 1095.

[36]     Coincidently both were appeals from decisions by District Court Judge John T. Elfvin.

[37]     *See, e.g.*, *In re Bayou Hedge Fund Litig.*, No. 06 Civ. 3026, 2007 WL 2363622, at *4 (S.D.N.Y. Aug. 15, 2006) (citing both *Hogan* and *Ginett* in Rule 54(b) context).

[38]     *See, e.g.*, *Transport Workers Union of Am.*, 505 F.3d at 231 (citing both *Hogan* and *Ginett* in Rule 54(b) context).

Six claims; (2) the City' state law claims relating to other wells; and (3) the City's

federal TSCA claim. The Station Six claims are separable from each of the other

sets.

   The Station Six claims and the claims relating to the other wells

involve numerous "different questions of fact and law."[39] At minimum, the claims

relating to each well – which include claims of nuisance, trespass, and negligence –

require independent proof of causation (e.g., is ExxonMobil's gasoline a source of

contamination in the well at issue?) and injury (e.g., is the well at issue sufficiently

contaminated to constitute a recoverable injury?).[40] Moreover, claims relating to

the different sets of wells can be "separately enforced."[41] Assuming the Station Six

claims are affirmed upon appeal, ExxonMobil will be required to pay the awarded

damages on the Station Six wells regardless of what transpires with respect to the

other state law claims. Accordingly, the Stations Six claims are separable from the

other state law claims.

   The federal TSCA claims are also separable from the Station Six

---

[39] *Cullen*, 811 F.2d at 711.

[40] *See Gottesman v. General Motors Corp.*, 401 F.2d 510, 512 (2d Cir. 1968) (holding that Rule 54(b) certification was appropriate where the claims required "different exhibits, proof and witnesses" and "different sets of operative facts will determine the result").

[41] *Cullen*, 811 F.2d at 711.

11

claims. TSCA permits "any person [to] commence a civil action"[42] against:

> [a]ny person who manufactures, processes, or distributes in commerce a chemical substance or mixture and who obtains information which reasonably supports the conclusion that such substance or mixture presents a substantial risk of injury to health or the environment shall immediately inform the [Environmental Protection Agency] Administrator of such information unless such person has actual knowledge that the Administrator has been adequately informed of such information.[43]

As is apparent from the face of the statute, the Station Six claims involve multiple issues, such as whether the City's wells were contaminated by MTBE, that are irrelevant to the TSCA claim.[44]  Likewise, the TSCA claim involves at least one issue – whether ExxonMobil had actual knowledge that the Environmental Protection Agency ("EPA") had already been "adequately informed of" the substantial risk information –[45] that is outside the scope of the Station Six claims. In addition, the TSCA claim and the Station Six claims seek different sorts of relief.  The City's sole requested relief pursuant to TSCA is "an injunction compelling [ExxonMobil] to provide to the EPA the Substantial Risk Information

---

[42]     15 U.S.C. § 2619(a)(1).

[43]     *Id.* § 2607(e).

[44]     *See Advanced Magnetics*, 106 F.3d at 21 ("Claims are normally treated as separable . . . if they involve at least some different questions of fact and law. . . .").

[45]     15 U.S.C. § 2607(e).

12

in [ExxonMobil's] possession, custody or control."[46]  Station Six's state law claims
– pursuant to which the City was awarded monetary damages – did not and could
not provide this relief.  "There [are], in short, two claims and two quite different
sorts of relief sought."[47]  Accordingly, the TSCA claim is separable from the
Station Six claims.

## B.   Final Judgment

The second requirement – that the claim at issue be finally decided –
is also satisfied.  At trial, a jury held ExxonMobil liable, under several legal
theories, for the contamination of the City's Station Six wells and awarded the City
damages.  The claims as to these wells have therefore been fully litigated and there
is "nothing for the court to do but execute the judgment."[48]

## C.   No Just Reason For Delay

---

[46]   Compl. ¶ 202.

[47]   *Seatrain Shipbuilding Corp. v. Shell Oil Co.*, 444 U.S. 572, 581
(1980). *Accord Cullen*, 811 F.2d at 711 (stating that "[c]laims are normally
regarded as separable . . . if 'different sorts of relief' are sought and, consequently,
the claim for greater relief would be pressed by the plaintiff even if the other claim
were granted" (quoting *Seatrain Shipbuilding Corp.*, 44 U.S. at 580-81 & n.18));
*Geneva Pharm. Tech. Corp. v. Barr Labs., Inc.*, No. 98 Civ. 861, 2002 WL
31159048, at *3 (S.D.N.Y. Sept. 27, 2002) (holding that federal antitrust claims
were separable from state law claims because "plaintiffs would be entitled to treble
damages under the antitrust laws, and thus the dismissed claims involve a claim for
greater relief").

[48]   *Ellis*, 12 F.3d at 23.

13

Entering a final judgment on the Station Six claims will benefit the parties, promote efficiency at the district court level, and cause minimal inefficiency at the appellate court level. In addition, the role of this trial as a bellwether for an entire MDL makes this the type of "exceptional" case where entry of final judgment pursuant to Rule 54(b) is appropriate.[49]  Accordingly, I find that there is "no just reason for delay."[50]

### 1.    Equities for the Parties

As in all cases where a plaintiff has been awarded a monetary judgment, delaying entry of judgment will work an injustice if the plaintiff is legally entitled to that award.[51]  In this case, the jury awarded the City a monetary judgment after finding that the City would use the water in the Station Six Wells within fifteen to twenty years. In order for the City to do so, it must begin construction of a treatment plant to rid the water of MTBE and other contaminants at the earliest possible time. Denying the City the opportunity to execute judgment

---

[49]     *Hogan*, 961 F.2d at 1025.

[50]     Fed. R. Civ. P. 54(b).

[51]     *See Ginnet*, 962 F.2d at 1097 ("If [plaintiff] is legally entitled to a judgement on his severance pay claim, he should be able to execute upon it now, and should not be penalized for combining his separate claims against [defendant] in one complaint. This is exactly the sort of hardship and denial of justice through delay that rule 54(b) was designed to eliminate.").

14

will likely hinder or delay its ability to do so.

The City's desire to execute its judgment is not in itself unusual or surprising. However, two other factors weigh in favor of granting a partial final judgment. *First*, ExxonMobil has joined the in the City's Rule 54(b) motion and therefore presumably also sees entry of judgment as a benefit rather than a detriment. *Second*, the Station Six trial was a bellwether in a number of respects.[52] It represents the first claims to be tried in this particular case and the first case to go to trial in this MDL. The purpose of adopting a bellwether approach is to assess the values of the claims at issue, develop a relevant body of law, and in doing so to provide guidance to parties pursuing settlement.[53] Obtaining appellate decisions as

---

[52]     *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997)("The term bellwether is derived from the ancient practice of belling a wether (a male sheep) selected to lead his flock. The ultimate success of the wether selected to wear the bell was determined by whether the flock had confidence that the wether would not lead them astray, and so it is in the mass tort context.").

[53]     *See id.* ("The notion that the trial of some members of a large group of claimants may provide a basis for enhancing prospects of settlement or for resolving common issues or claims is a sound one that has achieved general acceptance by both bench and bar."); Manual for Complex Litigation (Fourth) § 20.132 (2004) ("[In a multi-district litigation,] [p]rior to recommending remand, the transferee court could conduct a bellwether trial of a centralized action or actions originally filed in the transferee district, the results of which (1) may, upon the consent of parties to constituent actions not filed in the transferee district, be binding on those parties and actions, or (2) *may otherwise promote settlement in the remaining actions*." (emphasis added)); *id.* at § 22.135 ("Test cases should produce a sufficient number of representative verdicts and settlements to enable the parties and the courts to determine the nature and strength of the claims, whether

15

to the issues that have arisen in preparation for and during the Station Six trial is

essential to achieving this intended purpose both for the parties in this case and for

the numerous parties remaining in this MDL.[54] The Station Six trial, which

involved only five of the dozens of wells at issue in this case, took over three

months to complete. Preparing and trying the remaining wells would likely take

many more years. A failure to provide appellate review of issues relating to this

bellwether trial would work an injustice on all the parties in this MDL.

## 2.    District Court Efficiency

Appellate review of the Station Six claims also has the potential to

promote efficiency at the district court level.[55] Rulings on certain issues likely to

be raised on appeal, such as whether the state law claims are preempted by federal

---

they can be fairly developed and litigated on a group basis and what range of
values the cases may have if resolution is attempted on a group basis.").

[54]    *Cf. Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 140-
41 (reviewing the merits of an appeal where a Rule 54(b) judgment was entered
after "[t]he parties selected 12 'bellwether plaintiffs' from among the 85 for
purpose of initial trial").

[55]    *See Ginett*, 962 F.2d at 1095 ("Sound judicial administration,
however, cannot be confined to economy or efficiency in just the appellate court; if
that were the standard, we should return to the common law's 'one suit, one
appeal' standard. Rather, sound judicial administration must involve a proper
regard for the duties of both the district court and the appellate court. ").

16

law,[56] could obviate the need for further lengthy trials.[57] Without such review this Court could spend several more years trying the issues surrounding the remaining wells in this case only for the Circuit to later determine that the City's claims are barred. This would be a significant waste of judicial resources.

### 3. Appellate Court Efficiency

Because there is some factual interrelatedness between the Station Six claims and the remaining state and federal claims, there is a degree of inefficiency in permitting a piecemeal appeal.[58] If there are subsequent appeals on the claims relating to the other wells, another appellate panel with have to familiarize itself with the facts of this case (*e.g.*, the nature of MTBE contamination). However, this

---

[56]    *See generally In re MTBE Prod. Liab. Litig.*, 457 F. Supp. 2d 324 (S.D.N.Y. 2006) (denying defendants' motion to dismiss state tort claims in all cases in the MTBE MDL).

[57]    *See* Stipulation and Order of Dismissal Without Prejudice at 2 ("If after conclusion of any appeals, any of the City's claims related to the Station 6 Wells are dismissed because they are held preempted by federal law, or any other holding is made that would effectively bar the City's ability to assert its state law claims, the City shall not commence or maintain an action asserting such state law claims with respect to any other drinking wells at issue in this litigation.").

[58]    *See Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 631 (2d Cir. 1991) (federal concept of sound judicial administration and efficiency is not normally furthered by "hav[ing] piecemeal appeals that require two (or more) three-judge panels to familiarize themselves with a given case, instead of having the trial judge, who sits alone and is intimately familiar with the whole case, revisit a portion of the case if he or she has erred in part and that portion is overturned following the adjudication of the whole case").

Case 1:00-cv-01898-VSB   Document 3034   Filed 04/05/10   Page 18 of 19

potential inefficiency is likely less than the inefficiency that would result if this

Court were to try the claims relating to the remaining wells at issue in this case .

Moreover, as stated, this case represents not just a bellwether trial for an unusual

large and complex property damage case, but also a bellwether for an entire MDL

that began almost ten years ago. The potential for inefficiency at the appellate

level is heavily outweighed by harm that would be caused by preventing the parties

in this MDL from receiving appellate review until the remaining state and federal

claims are either tried or settled.

## V.    CONCLUSION

For the aforementioned reasons, the Clerk of Court is directed to enter

final judgment on the Station Six claims pursuant to Rule 54(b) and to close this

motion (Docket No. 583).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              April 5, 2010

18

## -Appearances-

**Liaison Counsel for Plaintiffs:**

Robin Greenwald, Esq.
Robert Gordon, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, New York  10038
(212) 558-5500

**Counsel for Plaintiff City of New York:**

Victor M. Sher, Esq.
Todd E. Robins, Esq.
Joshua G. Stein, Esq.
Nicholas G. Campins, Esq.
Marnie E. Riddle, Esq.
Sher Leff LLP
450 Mission Street, Suite 400
San Francisco, California  94105
(415) 348-1568

Susan Amron
Daniel Greene
Assistant Corporation Counsel
100 Church Street
New York, New York  10007
(212) 788-1568

**Liaison Counsel for Defendants and Counsel for Exxon Mobil Corporation:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
McDermott Will & Emery LLP
340 Madison Avenue
New York, New York  10173
(212) 547-5583

19