UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE METHYL TERTIARY BUTYL ETHER
PRODUCTS LIABILITY LITIGATION

This document relates to:

*City of New York v. Amerada Hess Corporation, et al.,*
No. 04 Civ. 3417 (SAS)

Master File No. 1:00-1898
MDL 1358 (SAS)
M21-88

EXXON MOBIL DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR A NEW TRIAL BASED ON ERRORS OF LAW

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION .......................................................................................................... 1

LEGAL STANDARD.................................................................................................... 1

ARGUMENT ................................................................................................................. 2

I.  THE COURT ERRED IN NOT DECLARING A MISTRIAL. ......................... 2

    A.  Several Jurors' Outside Research Warrants A Mistrial. ......................... 2

    B.  A New Trial Is Warranted Due To The Improper Dismissal Of Juror 2. ............... 4

II.  ERRONEOUS AND PREJUDICIAL JURY INSTRUCTIONS HAD A CLEAR
    INFLUENCE ON THE JURY'S VERDICT AGAINST EXXONMOBIL. ..................... 6

    A.  The Court Erred In Instructing The Jury On Injury. ............................... 6

    B.  The Court's Instruction On Trespass Was Legally Erroneous. ............................... 8

III.  THE COURT ERRED IN ADMITTING EVIDENCE REGARDING THE
    "COMMINGLED PRODUCT" THEORY AND IN INSTRUCTING THE JURY ON
    THIS ALTERNATIVE THEORY OF CAUSATION. .................................................... 11

IV.  ERRONEOUS EVIDENTIARY RULINGS MATERIALLY SWAYED THE JURY'S
    VERDICT AGAINST EXXONMOBIL........................................................................... 15

    A.  The Court Improperly Limited The Opinions Of Defendants' Damages Expert. 15

    B.  The Court Admitted Irrelevant And Prejudicial Evidence On "Warnings" Based
        On Its Erroneous Decision That ExxonMobil Had A Duty To Warn The Public. 18

    C.  The Court Abused Its Discretion In Striking Certain Testimony Of Sandra Mohr
        And In Permitting The Undisclosed Testimony Of Kenneth Rudo. ..................... 19

        1.  Dr. Mohr's testimony about the irrelevance of mutagenicity findings was
            sufficiently disclosed and admissible.................................................... 20

        2.  Mr. Rudo's testimony should not have been admitted. ......................... 21

        3.  The Court's erroneous decisions regarding the testimony of Mohr and Rudo
            influenced the jury's findings against ExxonMobil................................ 22

V.  THE COURT ERRED IN PERMITTING THE CITY TO CHANGE ITS THEORY OF
    NEGLIGENCE MID-TRIAL. ......................................................................................... 23

CONCLUSION................................................................................................................ 25

## TABLE OF AUTHORITIES

**page**

**FEDERAL CASES**

*Arlio v. Lively*, 474 F.3d 46 (2d Cir. 2007)..................................................................2

*Bank of China, New York Branch v. Bank of China, Hong Kong Branch*,
    No. 04-5557-c, 2007 U.S. App. LEXIS 18515 (2d Cir. Aug. 2, 2007) .....................2

*Bayramoglu v. Estelle*, 806 F.2d 880 (9th Cir. 1986) .................................................3, 4

*Berg v. Underwood's Hair Adaption Processes, Inc.*, 751 F.2d 136 (2d Cir. 1984)....................18

*Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18 (2d Cir. 1996)....................................17

*Boyce v. Soundview Tech. Group, Inc.,* 464 F.3d 376 (2d Cir. 2006) .............................2

*Caruolo v. John Crane, Inc.*, 226 F.3d 46 (2d Cir. 2000)....................................1, 15, 23

*Cataldo v. Brunswick Corp.*, 68 F.R.D. 600 (S.D.N.Y. 1975) ......................................15

*Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273 (S.D.N.Y. 2008) ............7

*Classicberry Ltd & The Black Crowes P'ship., v. Musicmaker.com, Inc.*,
    No. 02-7054, 2002 U.S. App. LEXIS 21619 (2d Cir. Oct. 15, 2002) .....................23

*Cocconi v. Pierre Hotel*, 146 F. Supp. 2d 427 (S.D.N.Y. 2001) .....................................3

*Creative Waste Mgmt. v. Capitol Envt'l Servs., Inc.*, 495 F. Supp. 2d 353 (S.D.N.Y.
    2007) ...........................................................................................20, 21

*Cruz v. Coach Stores, Inc.*, 202 F.3d 560 (2d Cir. 2000) .............................................23

*Drake v. Delta Air Lines, Inc.*, No. 94-CV-5944, 2005 U.S. Dist. LEXIS 14789
    (E.D.N.Y. July 21, 2005) .....................................................................17

*Duke v. County of Nassau*, No. 02-7049, 2003 U.S. App. LEXIS 7973 (2d Cir. Apr. 25,
    2003) ...........................................................................................4

*Grand Light & Supply Co., Inc. v. Honeywell, Inc.*, 771 F.2d 672 (2d Cir. 1985)........................23

*Highland Capital Mgmt., L.P. v. Schneider*, No. 02 Civ. 8098, 2008 U.S. Dist. LEXIS
    63874 (S.D.N.Y. Aug. 20, 2008) .............................................................15

*Hirsch v. Du Pont*, 553 F.2d 750 (2d Cir. 1977) ...........................................................23

*Kara Holding Corp. v. Getty Petroleum Mktg.*, Inc., No. 99 Civ. 0275, 2004 U.S. Dist.
LEXIS 15864 (S.D.N.Y. Aug. 12, 2004).............................................................11

*Kotteakos v. United States*, 328 U.S. 750 (1946)................................................................2

*Liquid Air Corp. v. Rogers*, 834 F.2d 1297 (7th Cir. 1987) ........................................16, 17

*LNC Invs., Inc. v. First Fid. Bank*, 126 F. Supp. 2d 778 (S.D.N.Y. 2001)..................1, 20

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1993) .......................................................8

*Malek v. Federal Ins. Co.*, 994 F.2d 49 (2d Cir.1993).........................................2, 18, 23

*Manley v. AmBase Corp.*, 337 F.3d 237 (2d Cir. 2003) .................................................3

*Millennium Aviation Servs., Inc. v. Gen. Dynamics Co.*,
No. 08-0911-cv, 2009 U.S. App. LEXIS 10187 (2d Cir. May 12, 2009)............................2, 11

*Miss. Phosphates Corp. v. Furnace & Tube Serv.*,
No. 1:07CV1140, 2010 U.S. Dist. LEXIS 7634 (S.D. Miss. Jan. 27, 2010) .........................17

*Montgomery Ward & Co. v. Duncan*, 311 U.S. 243 (1940) ........................................1, 14

*Moore v. Amer. Family Mutual Ins. Co.*, 576 F.3d 781 (8th Cir. 2009).........................3, 4

*In re MTBE Prods. Liab. Litig.*, 175 F. Supp. 2d 593 (S.D.N.Y. 2001) .......................8, 18

*In re MTBE Prods. Liab. Litig.*, 379 F. Supp. 2d 348 (S.D.N.Y. 2005) .........................12

*In re MTBE Prods. Liab. Litig.*, 447 F. Supp. 2d 289 (S.D.N.Y. 2006) .........................12

*In re MTBE Prods. Liab. Litig.*, 457 F. Supp. 2d 298 (S.D.N.Y. 2006) ..........................9

*In re MTBE Prods. Liab. Litig.*, No. 04 Civ. 3417, 2009 U.S. Dist. LEXIS 59287
(S.D.N.Y. July 6, 2009) ...........................................................................6, 7, 9

*In re MTBE Prods. Liab. Litig.*, No. 04 Civ. 3417, 2009 U.S. Dist. LEXIS 62649
(S.D.N.Y. July 20, 2009) ....................................................................17, 20, 21

*In re MTBE Prods. Liab. Litig.*, No. 04 Civ. 3417, 2009 U.S. Dist. LEXIS 78081
(S.D.N.Y. Aug. 25, 2009) ..............................................................................7

*Nicholls v. Tufenkian Imp./Exp. Ventures, Inc.*, 367 F. Supp. 2d 514 (S.D.N.Y. 2005).................3

*Norfleet v. Isthmian Lines, Inc.*, 355 F.2d 359 (2d Cir. 1966)..........................................................15

*Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125 (2d Cir. 1999) ........................................................6

*Pitasi v. Stratton Corp.*, 968 F.2d 1558 (2d Cir. 1992) ..............................................................2, 11

*Ragusa v. United Parcel Serv.*, No. 05 Civ. 6187, 2008 U.S. Dist. LEXIS 69127
   (S.D.N.Y. Sept. 12, 2008)...........................................................................................................23

*Royal Amer. Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011 (2d Cir. 1989)................23, 24

*Schwartzman, Inc. v. Atchison, Topeka. & Santa Fe Ry. Co.*, 857 F. Supp. 838
   (D.N.M. 1994)..............................................................................................................................10

*Scribner v. Summers*, 84 F.3d 554 (2d Cir. 1996) ....................................................................8, 10

*Simmons v. Blodgett*, 910 F. Supp. 1519 (W.D. Wash. 1996)..........................................................4

*TC Sys. Inc. v. Town of Colonie*, 213 F. Supp. 2d 171 (N.D.N.Y. 2002) .................................16, 17

*United States v. Greer*, 285 F.3d 158 (2d Cir. 2000).......................................................................2

*United States v. Hernandez*, 862 F.2d 17 (2d Cir. 1988)..................................................................4

*United States v. Hooker Chems. & Plastics Corp.*, 850 F. Supp. 993 (W.D.N.Y. 1994)..............19

*United States v. Montgomery*, 42 F.2d 254 (S.D.N.Y. 1930) ...........................................................3

*United States v. Samet*, 207 F. Supp. 2d 269 (S.D.N.Y. 2002)....................................................4, 5

*United States v. Thomas*, 116 F.3d 606 (2d Cir. 1997).....................................................................4

*United States ex rel. Evergreen Pipeline Constr. Corp. v. Merritt-Meridian Constr.
Corp.*, 890 F. Supp. 1213 (S.D.N.Y. 1995) ...............................................................................24

*Waldorf v. Shuta*, 3 F.3d 705 (3d Cir. 1993)....................................................................................4

*Walker v. Firestone Tire & Rubber Co.*, 412 F.2d 60 (2d Cir. 1969)...............................................2

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) ...................................................................................8

## STATE CASES

*Copart Indus., Inc. v. Consolidated Edison Co. of N.Y.*, 394 N.Y.S.2d 169 (N.Y. 1977)...............8

*DiMura v. City of Albany*, 657 N.Y.S.2d 844 (N.Y. App. Div. 1997) ...........................................19

*Firmes v. Chase Manhattan Auto. Fin. Corp.*, 852 N.Y.S.2d 148 (N.Y. App. Div. 2008) .............8

*Hellert v. Town of Hamburg*, 857 N.Y.S.2d 825 (N.Y. App. Div. 2008)........................................6

*Hymowitz v. Eli Lilly & Co.*, 541 N.Y.S.2d 941 (N.Y. 1989)....................................................11, 13

*Kihl v. Pfeffer*, 848 N.Y.S.2d 200 (N.Y. App. Div. 2007)...............................................................8

*Leone v. Leewood Serv. Station* Inc., 624 N.Y.S.2d 610 (N.Y. App. Div. 1995)..........................11

*Mortensen v. Mem'l Hosp.*, 483 N.Y.S.2d 264 (N.Y. App. Div. 1984) ........................................12

*People v. DeLucia*, 282 N.Y.S.2d 526 (N.Y. 1967) ........................................................................3

*Phillips v. Sun Oil Co.*, 307 N.Y. 328 (N.Y. 1954) .................................................................10, 11

*Ruby v. Budget Rent A Car Corp.*, 806 N.Y.S.2d 12 (N.Y. App. Div. 2005)..................................8

*Schultz v. Harrison Radiator Div. Gen. Motors Corp.*, 660 N.Y.S.2d 685 (N.Y. 1997).................7

*Sternfeld v. Forcier*, 679 N.Y.S.2d 219 (N.Y. App. Div. 1998).....................................................8

*Sweet v. Syracuse*, 129 N.Y. 316 (1891)........................................................................................9

*Westphal v. New York*, 78 N.Y.S. 56 (N.Y. App. Div. 1902).........................................................7

**STATUTES**

N.Y. NAV. LAW § 181 (2010) ..........................................................................................................24

**RULES**

FED. R. CIV. P. 15(b) .......................................................................................................................23

FED. R. CIV. P. 26(a) .......................................................................................................................21

FED. R. CIV. P. 37(c)(1)...................................................................................................................21

FED. R. CIV. P. 59(a) .........................................................................................................................1

FED. R. EVID. 401 ...........................................................................................................................19

FED. R. EVID. 403 ...........................................................................................................................19

FED. R. EVID. 702 ............................................................................................................16, 17, 20

FED. R. EVID. 703 ....................................................................................................................17

## MISCELLANEOUS

W. PAGE KEETON ET AL., PROSSER & KEETON ON TORTS § 13 (5th ed. 1984) ................................8

## INTRODUCTION

Defendants Exxon Mobil Corporation, ExxonMobil Chemical Company, Inc., Exxon

Mobil Oil Corporation, and Mobil Corporation (collectively "Defendants" or "ExxonMobil")

respectfully submit that the Court committed several substantial errors of law that materially

influenced the jury's October 19, 2009, verdict against ExxonMobil.  Unless the Court grants in

full ExxonMobil's separate motion for judgment as a matter of law, the Court should order a new

trial to correct these errors and the resulting miscarriage of justice.[1]

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 59(a), a court may grant a new trial "for any

reason for which a new trial has heretofore been granted in an action at law in federal court."

Fed. R. Civ. P. 59(a).  Such grounds include "claim[s] that the verdict is against the weight of the

evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the

party moving; and may raise questions of law arising out of alleged substantial errors in

admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co. v.

Duncan*, 311 U.S. 243, 251 (1940).  Unlike a motion for judgment as a matter of law, a court

may grant a new trial "even if there is substantial evidence to support the jury's verdict."

*Caruolo v. John Crane, Inc.*, 226 F.3d 46, 54 (2d Cir. 2000).

"[E]rroneous evidentiary rulings may furnish a basis for granting a post-verdict motion

for a new trial under Rule 59." *LNC Invs., Inc. v. First Fid. Bank*, 126 F. Supp. 2d 778, 787

(S.D.N.Y. 2001).  For example, "a court's failure to admit highly probative evidence" or its

improper admission of evidence "may warrant the grant of a motion for new trial." *Id.*  A new

---

[1] In addition to this motion for a new trial based on several errors of law, ExxonMobil is
concurrently filing two separate motions:  (1) for a new trial on the issue of damages, or in the
alternative for remittitur, and (2) for judgment as a matter of law or, in the alternative, for a new
trial based on evidentiary grounds.

trial is warranted if the admission or exclusion "affected a substantial right of one of the parties," *Malek v. Federal Ins. Co.*, 994 F.2d 49, 55 (2d Cir.1993) (internal quotations omitted), "as when a jury's judgment would be swayed in a material fashion by the error." *Bank of China, New York Branch v. Bank of China, Hong Kong Branch*, No. 04-5557-c, 2007 U.S. App. LEXIS 18515, at *4 (2d Cir. Aug. 2, 2007) (citing *Arlio v. Lively*, 474 F.3d 46, 51 (2d Cir. 2007)). "If one cannot say, with fair assurance ... that the judgment was *not* substantially swayed by the error, it is impossible to conclude that substantial rights were not affected." *Malek*, 994 F.2d at 55 (emphasis added) (citing *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)); *see also Walker v. Firestone Tire & Rubber Co.*, 412 F.2d 60, 64 (2d Cir. 1969) (granting new trial).

An erroneous jury instruction "requires a new trial unless the error is harmless." *Millennium Aviation Servs., Inc. v. Gen. Dynamics Co.*, No. 08-0911-cv, 2009 U.S. App. LEXIS 10187, at *3 (2d Cir. May 12, 2009) (quoting *Boyce v. Soundview Tech. Group, Inc.*, 464 F.3d 376, 390 (2d Cir. 2006)). "It is the responsibility of the trial judge to provide the jury with sufficient instruction to enable it to assess the evidence within the proper legal framework and to reach a rational verdict." *Pitasi v. Stratton Corp.*, 968 F.2d 1558, 1563 (2d Cir. 1992) (granting new trial). "A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law," and is harmless *only* "if it is clear that it did not influence the jury's verdict." *Millennium Aviation Servs.*, 2009 U.S. App. LEXIS 10187, at *3.

## ARGUMENT

### I.   THE COURT ERRED IN NOT DECLARING A MISTRIAL.

#### A.   Several Jurors' Outside Research Warrants A Mistrial.

"It is well-settled that any extra-record information of which a juror becomes aware is presumed prejudicial." *United States v. Greer*, 285 F.3d 158, 173 (2d Cir. 2000); *see also*

- 2 -

*Manley v. AmBase Corp.*, 337 F.3d 237, 252 (2d Cir. 2003); *Cocconi v. Pierre Hotel*, 146 F.

Supp. 2d 427, 430 n.2 (S.D.N.Y. 2001). Exposure of jurors to materials not admitted into

evidence mandates a new trial if there is "a 'reasonable possibility' that it could have affected the

verdict." *Bayramoglu v. Estelle*, 806 F.2d 880, 887 (9th Cir. 1986); *see also Nicholls v.

Tufenkian Imp./Exp. Ventures, Inc.*, 367 F. Supp. 2d 514, 516-17 (S.D.N.Y. 2005) (mistrial

granted "when an overzealous juror conducted internet research related to the action."); *cf.

Moore v. Amer. Family Mutual Ins. Co.*, 576 F.3d 781, 787 (8th Cir. 2009) (denying mistrial

where juror admitted to performing internet research on defendant's earnings but was

"immediately removed from the jury room" and "repeatedly assured the court that he had not

shared that information with the other jurors").

On October 11, 2009, ExxonMobil moved for a mistrial on the basis that the jury could

no longer render a verdict free from improper outside influences due to the outside research

conducted by several jurors. (*See* Declaration of Lauren Handel ("Handel Decl.") Ex. A, Oct.

11, 2009, Letter from P. Sacripanti to Court.) That motion was based in large part on the

admission by Juror 8 that he had conducted internet research leading him to substantive, material

information about the case – *e.g.*, the Court's prior decision on the commingled product theory;

Mr. Sher's role in "start[ing] this whole commingling thing"; and that all of the other defendants

had settled for about $1 million each – and the fact that Juror 8 shared the information he learned

from his outside research with several other jurors.[2] (*See* 10/9/09 Tr. at 6764:6-8, 6797:6-18,

---

[2] In addition, Jurors 4 and 6 admitted to doing their own improper outside research. Juror 4 visited Station 6, the site of the City's claimed damages. (10/9/09 Tr. at 6777:9-18.) Juror 6 admitted to reading an article about water contamination in the newspaper. (*Id.* at 6795:25-6796:14.) These instances of misconduct were not explored as extensively as that of Juror 8, but also are grounds for a new trial. *See, e.g. People v. DeLucia*, 282 N.Y.S.2d 526, 530 (N.Y. 1967); *United States v. Montgomery*, 42 F.2d 254, 256 (S.D.N.Y. 1930).

6808:4-8, 6813:18-6815:16 (jurors recount conversations with Juror 8), 6823:3-9 (Juror 2

revealed that all jurors except Juror 1 present when Juror 8 shared researched information),

6829:4-14.) Despite the jury's stated belief that it could continue deliberating impartially,

"jurors' subjective assessments of whether they were influenced by extrajudicial information are

generally accorded very little weight because jurors are usually reluctant to admit to bias or fail

to recognize it." *Simmons v. Blodgett*, 910 F. Supp. 1519, 1528 (W.D. Wash. 1996); *see also*

*Waldorf v. Shuta*, 3 F.3d 705, 711 (3d Cir. 1993) ("assurance from jurors may not be adequate to

eliminate the harm done by exposure to prejudicial information"). Because there is a

"reasonable possibility" that Juror 8's outside research infected the jury's deliberations, a new

trial is warranted. *See Bayramoglu*, 806 F.2d at 887; *see also Moore*, 576 F.3d at 787.

### B.    A New Trial Is Warranted Due To The Improper Dismissal Of Juror 2.

"[A] juror's status as a holdout [is] a 'red flag' that will result in the closest scrutiny of

the District Court's decision to discharge the juror." *United States v. Samet*, 207 F. Supp. 2d

269, 281 (S.D.N.Y. 2002) (citing *United States v. Thomas*, 116 F.3d 606 (2d Cir. 1997)). A juror

ought not be removed if the evidence "discloses any possibility" that the request stems from the

juror's status as a holdout. *See Thomas*, 116 F.3d at 622; *see also United States v. Hernandez*,

862 F.2d 17, 23 (2d Cir. 1988) ("[A] juror may not be removed because he or she disagrees with

the other jurors as to the merits of a case" and "removal of the sole holdout ... must be

meticulously scrutinized."); *cf. Duke v. County of Nassau*, No. 02-7049, 2003 U.S. App. LEXIS

7973, at *5-*6 (2d Cir. Apr. 25, 2003) (dismissal of threatened juror not abuse of discretion

where there was no evidence that juror was holdout).

In *Samet*, the District Court was faced with a juror who had become "unhinged by the

process of deliberation" due to her hold-out status. *Samet*, 207 F. Supp. 2d at 281. After several

sessions of *voir dire*, the court learned that the juror had been feeling abused by a fellow juror,

*id.* at 273, was emotionally distressed by the treatment she had experienced during deliberations, *id.* at 279, and had reached the point of voting against her conscience because she "could not take it any more." *Id.* The court concluded that the juror could not continue to deliberate due to physical and emotional distress. *Id.* at 277. At the same time, the court recognized that it could *not* discharge the juror because it was apparent that "the source of her distress was some difference of opinion between her and the other jurors" – *i.e.* "her inability to withstand the pressure of being in the minority." *Id.* Faced with this predicament, the court declared a mistrial. *Id.* at 282.

Almost identical circumstances occurred here. On the evening of October 15, 2009, the Court received a distressed call from Juror 2 in which the juror revealed that she was experiencing abusive treatment from the jury foreperson who had threatened to "cut" her. (10/16/09 Tr. at 6994:5-13, 6994:24-6995:3.) During subsequent *voir dire*, Juror 2 stated that she no longer felt she could reach a verdict based on her own conscience, but instead would be acting under threat of duress or coercion. (*Id.* at 7010:24-7011:2.) In addition, Juror 2 revealed that the "[last] straw was that I was called stupid." (*Id.* at 7018:21.) "[T]hey said I was stupid, I can't form my own opinion *because it doesn't match the rest of them*. And I feel – I feel that I'm not safe." (*Id.* at 7017:9-12 (emphasis added).)

The record reveals that Juror 2 suffered abuse because she was a holdout – *i.e.* because her opinion didn't "match the rest of them." (*Id.*) Juror 2 was dismissed on Friday, October 16th. When the jury returned the following Monday – without this holdout juror – it returned a verdict against ExxonMobil within "about 20 minutes." (10/19/09 Tr. at 7041:7-10.) Because Juror 2 was intimidated for being a holdout among the jurors and, consequently, could not proceed in the deliberations, a mistrial would have been the only appropriate remedy. *See Samet*,

- 5 -

207 F. Supp. 2d at 282. Rather, the Court improperly dismissed this holdout juror and allowed deliberations to proceed, to ExxonMobil's grave prejudice, after denying ExxonMobil's request for a mistrial. (*See* 10/16/09 Tr. at 7022:14-15.)

## II.   ERRONEOUS AND PREJUDICIAL JURY INSTRUCTIONS HAD A CLEAR INFLUENCE ON THE JURY'S VERDICT AGAINST EXXONMOBIL.

The Court's instructions on the injury the City was required to prove, the City's burden of proof and the elements of trespass "did not adequately inform the jury as to the law," and thus require a new trial.[3] *Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 136 (2d Cir. 1999).

### A.   The Court Erred In Instructing The Jury On Injury.

In Phase 1 of this multi-phase trial, the jury was instructed to decide "whether the City has proven by a preponderance of the evidence that it intends in good faith to begin construction of the Station 6 facility within the next 15 years" (8/10/09 Tr. at 915:7-10), and, if yes, "whether the City has proven by a preponderance of the evidence that it intends in good faith to use the water from the Station 6 wells within the next 15 to 20 years." (*Id.* at 917:3-6.) The instructions and questions posed to the jury were based on the Court's erroneous ruling that, to establish a right to recover, the City need not prove that it will actually *use* the Station 6 wells, but rather that it *intends* in good faith to use them. *See In re MTBE Prods. Liab. Litig.*, No. 04 Civ. 3417, 2009 U.S. Dist. LEXIS 59287, at *34-*35 (S.D.N.Y. July 6, 2009).[4] Because the City's only legally protected interest in the groundwater derives from the *use* of that water, it cannot be injured as a matter of law unless it actually uses the Station 6 wells. *See id.* at *19; *Hellert v.*

---

[3] Although ExxonMobil is not moving for a new trial on the basis of each and every jury instruction and ruling of law to which it previously objected during the charge conferences and in prior briefing, it reserves all such previously stated objections.

[4] ExxonMobil acknowledges and respectfully reiterates its objection to the Court's ruling as well as to the Phase 1 jury charge and verdict questions. (*See* 8/7/09 Tr. at 852:15-853:6.)

*Town of Hamburg*, 857 N.Y.S.2d 825, 828 (N.Y. App. Div. 2008) (where groundwater

contamination exceeded applicable MCL, summary judgment granted because none of the

plaintiffs used the water "for drinking purposes or, indeed, for any other purpose."); *Westphal v.*

*New York*, 78 N.Y.S. 56, 75 A.D. 252, 256 (N.Y. App. Div. 1902) (plaintiff "has the right to use

the water, but he has no property in the water as such"). Under New York law, a plaintiff has no

legal right to recover for an "injury" to groundwater that it merely *intends*, even in good faith, to

use.

      Moreover, as the City's injury is a future one – because it has never before used the

Station 6 wells – the Court erred in instructing the jury that the City had to prove its claims only

by a preponderance of the evidence.[5] "New York has required a *high degree of probability* that a

future injury will occur before allowing a plaintiff to recover damages for the potential injury."

*Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 281 (S.D.N.Y. 2008)

(emphasis added); *see also Schultz v. Harrison Radiator Div. Gen. Motors Corp.*, 660 N.Y.S.2d

685, 689 (N.Y. 1997). Even where the plaintiff seeks to recover for the "apprehended future

consequences" of an *existing* injury, "there must be such a degree of probability of their

occurring, as amounts to a reasonable certainty." *Caudle*, 580 F. Supp. 2d at 281; *see also In re*

*MTBE Prods. Liab. Litig.*, 2009 U.S. Dist. LEXIS 59287, at *22. This standard "is understood

as involving a quantum of proof that is greater than a preponderance of evidence but less than

---

[5] Defendants acknowledge and respectfully object to the Court's prior rulings that the City has
already been injured as a matter of law and that the appropriate standard of proof is
preponderance of the evidence. *In re MTBE Prods. Liab. Litig.*, No. 04 Civ. 3417, 2009 U.S.
Dist. LEXIS 78081, at *15-*18 (S.D.N.Y. Aug. 25, 2009); *In re MTBE Prods. Liab. Litig.*, 2009
U.S. Dist. LEXIS 59287, at *32; 8/7/09 Tr. at 852:1-4 (ruling during Phase 1 charge conference);
9/21/09 Tr. at 5348:17-22 (ruling during Phase 3 charge conference). ExxonMobil objected to
the Court's articulation of the burden of proof on a number of occasions. (*See, e.g.*, 8/7/09 Tr. at
851:15- 852:14; 9/21/09 Tr. at 5348:17-19.)

proof beyond a reasonable doubt." *Kihl v. Pfeffer*, 848 N.Y.S.2d 200, 207 (N.Y. App. Div. 2007). It has been interpreted by each of the New York judicial departments "as akin to the clear and convincing evidence standard." *Id.*; *see also Firmes v. Chase Manhattan Auto. Fin. Corp.*, 852 N.Y.S.2d 148, 160 (N.Y. App. Div. 2008); *Ruby v. Budget Rent A Car Corp.*, 806 N.Y.S.2d 12, 13 (N.Y. App. Div. 2005); *Sternfeld v. Forcier*, 679 N.Y.S.2d 219, 220 (N.Y. App. Div. 1998). This heightened showing is compelled by the standing doctrine, which requires a plaintiff to prove that its alleged future injury is "concrete and particularized," "imminent," and "certainly impending." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 n.2 (1993); *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) ("A threatened injury must be 'certainly impending' to constitute injury in fact."); *In re MTBE Prods. Liab. Litig.*, 175 F. Supp. 2d 593, 607-08 (S.D.N.Y. 2001) (same). Thus, the Court should have instructed the jury that the City was required to prove each element of its claims by clear and convincing evidence.

### B.      The Court's Instruction On Trespass Was Legally Erroneous.

The Court's trespass instructions also failed to inform the jury of the law. Under New York law, trespass is an intentional "invasion of a person's interest in the exclusive possession of land." *Copart Indus., Inc. v. Consolidated Edison Co. of N.Y.*, 394 N.Y.S.2d 169, 173 (N.Y. 1977); *see also Scribner v. Summers*, 84 F.3d 554, 557 (2d Cir. 1996) ("trespass is the intentional invasion of another's property."). Trespass differs from nuisance precisely because the former involves the property interest of "exclusive possession," while the latter involves the property interest of "use and enjoyment." *Copart Indus., Inc.*, 41 N.Y.2d at 173. Trespass, therefore, requires interference with *possession – i.e.,* dispossession – rather than a mere interference with use or enjoyment. *Id.*; *see also* W. PAGE KEETON ET AL., PROSSER & KEETON ON TORTS § 13, at 70 (5th ed. 1984). Accordingly, contamination of groundwater not actually present on a

- 8 -

plaintiff's real property cannot constitute a trespass because no one "can acquire anything more than a mere usufructuary right" in groundwater. *Sweet v. Syracuse*, 129 N.Y. 316, 335 (1891).

The Court failed to instruct the jury on this crucial aspect of the City's interest. Instead the jury was told that it could find ExxonMobil liable for trespass if "ExxonMobil's conduct caused any MTBE to enter the *groundwater in the capture zone* of the Station 6 wells." (10/7/09 Tr. at 6619:7-11 (emphasis added); *see also* 9/22/09 Tr. at 5556:8-5557:7 (ExxonMobil's objection to instruction that trespass occurs when MTBE enters the capture zone).) This instruction misled the jury about the appropriate legal standard because it presumed, incorrectly, that the City holds a right to exclusive possession of the water within the (theoretical, future) capture zone of Station 6. This instruction was particularly misleading in light of the evidence presented through the City's expert, David Terry, that the "capture zone" of the Station 6 wells will extend for miles in any direction from the wells. (*See* 8/18/09 Tr. at 1907:4-18, 1909:1-1910:2, 1911:6-1912:22 (Terry); *see also* Pl.'s Ex. 14844 (Handel Decl. Ex. B); Pl.'s Ex. 14845 (Handel Decl. Ex. C).)

The Court also erred in instructing the jury that it could find ExxonMobil liable for trespass even if it found that the City failed to prove that it was or will be injured.[6] (*See* 10/7/09 Tr. at 6642:22-6643:9.) Trespass by "invisible particles," such as MTBE, requires "proof of substantial damage." *See In re MTBE Prods. Liab. Litig.*, 457 F. Supp. 2d 298, 314 (S.D.N.Y.

---

[6] ExxonMobil acknowledges and respectfully objects to the Court's ruling that "damage is not part of a trespass claim." *In re MTBE Prods. Liab. Litig.*, 2009 U.S. Dist. LEXIS 59287, at *31. ExxonMobil incorporates by reference the argument made in its Reply Memorandum Of Law In Support Of Defendants' Motion In Limine To Preclude Evidence And Argument Regarding Plaintiff's Past And Future Investigation And Treatment Costs Until It Proves Actual Injury, at 3-4 (6/2/2009) that a trespass claim based on migration of groundwater contamination requires proof of actual injury. (Attached to 10/1/09 Declaration of James Pardo (ECF Filing #2853) ("10/1/09 Pardo Decl.") as Ex. B).

2006) (citing *Schwartzman, Inc. v. Atchison, Topeka. & Santa Fe Ry. Co.*, 857 F. Supp. 838, 844

(D.N.M. 1994) (to be actionable under trespass, groundwater contamination "must have reached

[p]laintiff's property *and damaged it*." (emphasis added)).

In addition, the Court failed to properly instruct the jury on the intent required for

trespass under New York law.  Specifically, the Court failed to explain that ExxonMobil could

be found liable for trespass only if it intentionally committed some act with knowledge that its

act would immediately or inevitably cause MTBE to enter the City's Station 6 property.[7]  In a

case involving the contamination of a plaintiff's land by pollutants, "even when the polluting

material has been deliberately put onto, or into, defendant's land, he is not liable for his

neighbor's damage therefrom, unless he (defendant) had good reason to know or expect that

subterranean and other conditions were such that there would be *passage from defendant's to

plaintiff's land ....*" *Phillips v. Sun Oil Co.*, 307 N.Y. 328, 331 (N.Y. 1954) (emphasis added);

*see also Scribner*, 84 F.3d at 557 (citing *Phillips*).  The intrusion onto plaintiff's land must be

"the *immediate or inevitable consequence* of what [the trespasser] willfully does." *Scribner*, 84

F.3d at 557 (emphasis added).  Given the specific intent required under New York law, a

defendant who merely supplies a product to a market with knowledge that it may spill

somewhere and may reach someone's property cannot be held liable to a particular plaintiff for

trespassing on his property.  Even if, in finding ExxonMobil liable for trespass, the jury

considered only ExxonMobil's conduct as a "direct spiller" (as opposed to its conduct as a

---

[7] ExxonMobil acknowledges and respectfully objects to the Court's rulings rejecting
ExxonMobil's arguments that the City had to prove that ExxonMobil knew or should have
known that its actions would result in MTBE entering the Station 6 property, specifically, and
that, given the intent required under New York law of trespass, the City's trespass claim cannot
be based on ExxonMobil's conduct of manufacturing or supplying gasoline with MTBE, as
opposed to its conduct as an alleged spiller at specific service stations in the vicinity of Station 6.
(9/22/09 Tr. at 5552:8-5566:15.)

refiner or supplier), the trespass charge failed to inform the jury that it could find ExxonMobil liable only if it found that ExxonMobil knew or should have known that MTBE would travel from the specific "Mobil" spill sites to the Station 6 property. *See Phillips*, 307 N.Y. at 332; *see also Kara Holding Corp. v. Getty Petroleum Mktg.*, Inc., No. 99 Civ. 0275, 2004 U.S. Dist. LEXIS 15864 (S.D.N.Y. Aug. 12, 2004) (collecting New York cases holding that unintentional discharge of petroleum does not give rise to a claim of trespass); *Leone v. Leewood Serv. Station Inc.*, 624 N.Y.S.2d 610, 612 (N.Y. App. Div. 1995) (finding insufficient evidence of trespass where Getty, in failing to maintain underground storage tanks, did not willfully cause contamination of plaintiff's property). The failure to so instruct the jury was prejudicial to ExxonMobil because the City introduced no evidence at trial that ExxonMobil knew or should have known that MTBE released at any site in the vicinity of Station 6 would immediately or inevitably reach the Station 6 property.

Accordingly, the trespass instruction failed in a number of ways "to provide the jury with sufficient instruction to enable it to assess the evidence within the proper legal framework and to reach a rational verdict," and a new trial is warranted. *Pitasi*, 968 F.2d at 1563; *Millennium Aviation*, 2009 U.S. App. LEXIS 10187, at *3.

## III.  THE COURT ERRED IN ADMITTING EVIDENCE REGARDING THE "COMMINGLED PRODUCT" THEORY AND IN INSTRUCTING THE JURY ON THIS ALTERNATIVE THEORY OF CAUSATION.

In creating the "commingled product" theory and allowing its application in this case, the Court impermissibly relieved the City of its burden to identify the defendant who caused its harm. *See Hymowitz v. Eli Lilly & Co.*, 541 N.Y.S.2d 941, 945 (N.Y. 1989). Even though the jury did not render a verdict on ExxonMobil's liability under the commingled product theory – ostensibly finding ExxonMobil liable under a "traditional" causation theory – the erroneous commingled product theory so permeated the trial as to make it impossible for the jury to

comprehend traditional causation. ExxonMobil reiterates its consistent objection to the creation

and application of the Court's commingled product theory in this case for all the reasons we have

previously articulated.[8]

 This Court's commingled product theory of "alternative" liability departs from New York

law in at least three significant ways: (1) by establishing a presumption that the MTBE detected

in a plaintiff's wells is the commingled product of every refiner whose product was shipped in

the distribution systems supplying New York, even without evidence that a specific refiner's

product actually reached New York Harbor or the capture zone of the wells in question at a

relevant time; (2) by permitting the City to pursue a theory of alternative causation even if it

could otherwise identify responsible parties who could provide complete relief, *see In re MTBE*

*Prods. Liab. Litig.*, 379 F. Supp. 2d 348, 371 (S.D.N.Y. 2005); *In re MTBE Prods. Liab. Litig.*,

447 F. Supp. 2d 289, 304-05 (S.D.N.Y. 2006), and (3) by establishing a presumption that each

refiner contributed *sufficiently* to the alleged contamination to justify liability, even if the

amounts of their respective products that ever could have reached any particular capture zone or

well were very small. *See Mortensen v. Mem'l Hosp.*, 483 N.Y.S.2d 264, 269 (N.Y. App. Div.

1984) (New York law requires plaintiff to prove that "the defendant's negligence was a

*substantial cause* of the events [that] produced the injury." (emphasis added)).

---

[8] Briefing on the Court's commingled product theory has been extensive.  ExxonMobil hereby incorporates the argument and analysis set forth in Certain Defendants' Motion To Certify The Court's May 13, 2008 Opinion And Order For Interlocutory Appeal, filed on May 29, 2008, related to *County of Suffolk v. Amerada Hess Corp.*, 04 Civ. 05424, and all associated memoranda and replies; Defendant's Motion In Limine Regarding Application Of The Commingled Product Theory, Consideration Of Fault Of Nonparties By Jury, And Proof Of Date Of Harm, filed April 27, 2009, and all associated memoranda and replies; Letter-Brief from P. Sacripanti to the Court (June 4, 2009); Letter-Brief from P. Sacripanti to the Court (June 22, 2009); Letter-Brief from J. Pardo to the Court (September 20, 2009) (attached to "10/1/09 Pardo Decl.," as Exs. C-E.).

It was inappropriate for the Court to allow evidence or to instruct the jury on the commingled product theory because New York courts have only rarely departed from traditional causation theories, doing so only in cases involving "personal injury liability." *Hymowitz*, 541 N.Y.S.2d at 947. There is no precedent in New York for the development of new rules designed to adjust causation burdens in cases involving allegations of property damage. Moreover, despite the Court's earlier rulings that plaintiffs could resort to the commingled product theory only if they could not otherwise identify a "make whole" defendant, the City was permitted to present evidence of ExxonMobil's alleged liability based on the commingled product theory without first establishing that it could not prove traditional causation.

As a result, the commingled product theory pervaded the trial to such an extent that the City was effectively relieved of the burden to prove that ExxonMobil actually caused its injury. We know this because the jury found ExxonMobil liable on "traditional" causation theories (*i.e.*, as a "direct spiller" and as a "manufacturer, refiner, supplier or seller") despite the complete lack of evidence that ExxonMobil's conduct was a substantial factor causing the City's alleged harm. (*See* 10/19/09 Tr. at 7042:22-7043:5.) Specifically, the evidence at trial failed to establish that ExxonMobil spilled, refined or supplied the gasoline containing MTBE that allegedly will impact the Station 6 wells. (*See* Exxon Mobil Defendants' Renewed Motion For Judgment As A Matter Of Law, at 6-11.) The City's own experts were unable to identify which stations will actually contribute MTBE to the Station 6 wells when they are activated. Mr. Terry, the City's groundwater modeling expert, was unable to state what the impact to the Station 6 wells would be from any given service station, nor was he able to state the relative impact from each site. (*See* 9/23/09 Tr. at 5702:23-5703:5, 5704:5-11, 5710:2-8.)

- 13 -

In addition, the City failed to prove that MTBE within the future "capture zone" of Station 6 came from gasoline supplied or refined by ExxonMobil.  The only evidence that the City introduced to prove that ExxonMobil supplied gasoline containing MTBE to stations in the vicinity of its wells was the testimony of Martin Tallett that ExxonMobil sold about 25% of the wholesale gasoline in the State of New York – which, logically, makes it more likely than not that, at any given place and time, ExxonMobil-supplied gasoline was *not* present.  The City's only evidence that MTBE from ExxonMobil-refined gasoline would reach the capture zone of Station 6 was the testimony of Bruce Burke, who could not say whose gasoline was in a particular station's USTs at any given time.  (9/11/09 Tr. at 4180:24-4181:7.)  Burke admitted that:

- He could not place Exxon or Mobil refined gasoline into every shipment of commingled product on the Colonial pipeline.  (9/11/09 Tr. at 4138:19-4139:5.)

- Only about 25-30% of the gasoline put onto Colonial makes it to New York Harbor.  (9/11/09 Tr. at 4178:9-12.)

- He did not know how much Exxon or Mobil refined gasoline went from Colonial to the Buckeye pipeline and, potentially, into Queens.  (9/11/09 Tr. at 4175:5-11.)

The only way that the jury could conclude from this evidence that ExxonMobil spilled, supplied or manufactured gasoline containing MTBE that will impact the Station 6 wells in the future would be if it assumed that ExxonMobil's product was so commingled with that of other refiners and suppliers that it was, essentially, present in every gallon of gasoline at every release site.  Such an assumption was not supported by the evidence, but would be understandable given the extensive impermissible testimony and erroneous instructions that the jury heard about the commingled product theory.  Because the admission of evidence on the commingled product theory as well as the jury charge influenced the jury to reach a seriously erroneous verdict on traditional causation, a new trial should be granted.  *See Montgomery Ward*, 311 U.S. at 251;

- 14 -

*Caruolo*, 226 F.3d at 54; *Cataldo v. Brunswick Corp.*, 68 F.R.D. 600, 601 (S.D.N.Y. 1975); *cf.*

*Norfleet v. Isthmian Lines, Inc.*, 355 F.2d 359, 362-63 (2d Cir. 1966) (jury instructions must

"show no tendency to confuse or mislead the jury as to principles of law which are applicable");

*Highland Capital Mgmt., L.P. v. Schneider*, No. 02 Civ. 8098, 2008 U.S. Dist. LEXIS 63874, at

*28-*29 (S.D.N.Y. Aug. 20, 2008) (denying motion for new trial where there was "no indication

that the jury was confused by the instructions or the verdict form").

## IV.   ERRONEOUS EVIDENTIARY RULINGS MATERIALLY SWAYED THE JURY'S VERDICT AGAINST EXXONMOBIL.

The Court should grant a new trial because several erroneous evidentiary rulings

materially influenced the jury's findings against ExxonMobil.  Specifically, the jury's verdict

was swayed against ExxonMobil because of the Court's decisions (1) to limit the testimony of

Defendants' damages expert; (2) to allow evidence that ExxonMobil allegedly failed to provide

"warnings" about MTBE to the federal government or the general public; (3) to strike portions of

the testimony of Defendants' toxicology expert, Sandra Mohr; and (4) to allow the non-disclosed

expert testimony of the City's rebuttal expert, Kenneth Rudo.

### A.   The Court Improperly Limited The Opinions Of Defendants' Damages Expert.

During the testimony of Defendants' damages expert, Dr. David Hand, Plaintiffs' counsel

objected that Hand was not familiar with the New York City Department of Environmental

Protection's Cost Estimating Standards and, therefore, should not be permitted to offer opinions

on the estimated cost of building and maintaining the proposed Station 6 treatment system.  (*See*

9/30/09 Tr. at 6121:4-18.)  The Court sustained the objection, finding that Dr. Hand did not have

experience designing treatment systems in New York City.  The Court ruled that he could testify

as to the relative cost of different treatment technologies, but could not offer opinions that "it

would cost X dollars to build a treatment plant ... in New York City." (*See id.* at 6125:1-23.)

- 15 -

Had the Court permitted Dr. Hand to testify on the subject, he was prepared to offer the opinion – as he had disclosed in his expert report – that the treatment of MTBE would cost the City an additional $900,000 per year in operation and maintenance costs beyond the costs it would otherwise incur for treating other contaminants. (*See id.* at 6191:2-12.) Although the City had ample notice that Dr. Hand would state this opinion at trial, it failed to challenge the testimony before trial, in accordance with the schedule set for *Daubert* motions. Thus, because of the Court's ruling, ExxonMobil's counsel was prevented from eliciting any testimony about dollar amounts of treatment costs and left with no opportunity to present such evidence through alternative means. (*See* 10/1/09 Tr. at 6222:3-9; *see also* 9/30/09 Tr. at 6191:10-22 (complying with ruling by "deliberately avoid[ing] the amounts," but preserving Defendants' objection).)

The Court's ruling was an abuse of discretion because Dr. Hand's proffered testimony met all of the requirements for admissibility of expert opinion under Federal Rule of Evidence 702: (1) Dr. Hand is a qualified expert on water treatment costs; (2) his testimony would have assisted the jury in determining an appropriate amount of damages; and (3) his testimony was based on sufficient facts and data and was the product of reliable principles and methods. *See* Fed. R. Evid. 702. That Dr. Hand lacked experience specifically in New York City (*see* 9/30/09 Tr. at 6125:21-6126:10) was irrelevant to the admissibility of his testimony because there is no requirement that an expert have "practical experience directly on point." *TC Sys. Inc. v. Town of Colonie*, 213 F. Supp. 2d 171, 174 (N.D.N.Y. 2002); *see also Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1308 (7th Cir. 1987) ("geographic locality of ... expertise" irrelevant because "the accuracy of such testimony is a matter of weight and not admissibility."). Dr. Hand's experience and education were proper topics for cross examination, and went to the weight, not the

admissibility, of his opinions. *See Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996); *see also Liquid Air Corp.*, 834 F.2d at 1308.

Dr. Hand is eminently qualified to state an opinion on treatment costs. Pursuant to Federal Rule of Evidence 702, an expert may be qualified "by knowledge, skill, experience, training, *or education….*" Fed. R. Evid. 702 (emphasis added). "A witness can qualify as an expert even though he lacks practical experience, provided that he has received suitable training or education or has otherwise gained the requisite knowledge or skill." *Miss. Phosphates Corp. v. Furnace & Tube Serv.*, No. 1:07CV1140, 2010 U.S. Dist. LEXIS 7634, at *4 (S.D. Miss. Jan. 27, 2010); *see also In re MTBE Prods. Liab. Litig.*, No. 04 Civ. 3417, 2009 U.S. Dist. LEXIS 62649, at *9 (S.D.N.Y. July 20, 2009); *TC Sys. Inc.*, 213 F. Supp. 2d at 174. Dr. Hand has both extensive education and experience in estimating water treatment costs. (*See, e.g.* 9/30/09 Tr. at 6122:6-6124:8.)

Furthermore, Dr. Hand appropriately consulted and relied on materials necessary to form an opinion about the City's likely treatment costs. *See* Fed. R. Evid. 703. For example, as disclosed in his expert report, where necessary to determine New York-specific costs, Dr. Hand consulted local materials. (*See* Handel Decl., Ex. D, Excerpts from Expert Report of David W. Hand, Ph.D. (Mar. 9, 2009), at 28 (citing cost information from the NYC Office of Management and Budget); *see also Drake v. Delta Air Lines, Inc.*, No. 94-CV-5944, 2005 U.S. Dist. LEXIS 14789, *26-*27 (E.D.N.Y. July 21, 2005) (in the context of a post-trial motion, the court may review "not only the evidence adduced at trial but also the underlying expert report, which was not admitted at trial.").)

The Court erred in its decision to drastically limit Dr. Hand's testimony based only on the geographic scope of his experiences. *See TC Sys. Inc.*, 213 F. Supp. 2d at 174. As a result of

this error, the only quantified estimate of treatment costs that the jury heard was that of

Plaintiffs' expert, Ms. Bell.  This ruling was particularly prejudicial to ExxonMobil in that it was

made during trial – actually, near the end of the trial – and left ExxonMobil with no time to

prepare alternative evidence of treatment costs.  With no number to compare to Ms. Bell's, it is

not surprising that the jury adopted her cost estimate in its entirety.  (*Compare* 10/1/09 Tr. at

6245:7-18 (Bell's opinion on cost of treatment system), *with* 10/19/09 Tr. at 7045:12-22 (jury

verdict on damages).)  Given the jury's damage award, it cannot be said "with fair assurance . . .

that the judgment was *not* substantially swayed by the error" and, therefore, "it is impossible to

conclude that substantial rights were not affected." *Malek*, 994 F.2d at 55.

### B.    The Court Admitted Irrelevant And Prejudicial Evidence On "Warnings" Based On Its Erroneous Decision That ExxonMobil Had A Duty To Warn The Public.

In the early days of the MTBE litigation, this Court acknowledged that warnings "to the

world or even directly to private well owners" did not "seem feasible," and "in certain

circumstances, a manufacturer may escape liability for failure to warn if adequate warnings are

given to the immediate vendee of the product." *In re MTBE Prods. Liab. Litig.*, 175 F. Supp. 2d

at 625 n.49.  Abandoning that reasoning, the Court took an extremely broad – and legally

incorrect – view of the duty to warn in this case, finding that "because most everybody has a

vehicle that requires gasoline … the general public is owed the duty to warn because the duty to

warn is for foreseeable users, which almost everybody is." (9/8/09 Tr. at 3787:19-22.)  This

ruling was incorrect under New York law, which provides that a manufacturer does not owe the

"general public" a duty to warn.  Rather, any such duty runs exclusively to the product's

"foreseeable users." *Berg v. Underwood's Hair Adaption Processes, Inc.*, 751 F.2d 136, 137 (2d

Cir. 1984); *see also In re MTBE Prods. Liab. Litig.*, 175 F. Supp. 2d at 625 ("courts have

generally held that such manufacturers owe a duty to warn *foreseeable users* of the latent

- 18 -

dangers of the product." (emphasis added)); *United States v. Hooker Chems. & Plastics Corp.*, 850 F. Supp. 993, 1060 (W.D.N.Y. 1994) ("in the products liability realm, the duty to warn encompasses an obligation to advise *foreseeable users* of the nature and mechanism of the injury which is known to be associated with product use, along with appropriate precautions" (emphasis added)); *DiMura v. City of Albany*, 657 N.Y.S.2d 844, 845 (N.Y. App. Div. 1997).

Thus, the Court erroneously permitted the jury to hear substantial evidence regarding ExxonMobil's alleged failure to "warn" the U.S. Environmental Protection Agency and the public at large about risks of MTBE. For example, the Court admitted the videotaped deposition testimony of Mr. George Dominguez as evidence that ExxonMobil failed to disclose "everything" about MTBE to EPA. (*See* 9/9/09 Tr. at 3966:11-18.) In addition, the Court permitted Plaintiffs' counsel to ask ExxonMobil employee Michael Roman whether "[ExxonMobil] provide[d] any notice of those features of gasoline containing MTBE to any water suppliers?" (9/3/09 Tr. at 3495:9-11.) All such evidence should have been excluded as irrelevant and highly prejudicial. *See* Fed. R. Evid. 401, 403. Indeed, the admission of this legally irrelevant evidence necessarily affected ExxonMobil's rights given the otherwise complete lack of proof as to whether a warning would have prevented the City's injury. (*See* Exxon Mobil Defendants' Renewed Motion For Judgment As A Matter of Law, at 10-11.)

**C.    The Court Abused Its Discretion In Striking Certain Testimony Of Sandra Mohr And In Permitting The Undisclosed Testimony Of Kenneth Rudo.**

In deciding to strike portions of the testimony of defense expert, Sandra Mohr, and to allow previously undisclosed testimony from the City's rebuttal expert, Kenneth Rudo, the Court committed error that undoubtedly influenced the jury's beliefs about the health risks of MTBE in drinking water. The Court found that Dr. Mohr "did not properly disclose her testimony about mutagenicity of MTBE in her pretrial expert reports," and therefore struck Dr. Mohr's testimony

- 19 -

that mutagenicity findings in animal studies had little to no relevance to MTBE's carcinogenicity in humans. (9/18/09 Tr. at 5069:2-11; *see also* 9/1/09 Tr. at 3098:15-18.) Although the Court struck Dr. Mohr's testimony on the grounds that it was not properly disclosed, the Court permitted the City to introduce surprise rebuttal testimony from an expert whom it *never* disclosed before trial, reasoning that ExxonMobil's counsel had cross examined Mr. Rudo in another matter and because "Dr. Mohr in some sense ... gave surprising testimony...." (9/2/09 Tr. at 3248:12-19 (permitting rebuttal witness over ExxonMobil's objection).) These decisions were substantially erroneous and had a "profound impact on the outcome of the trial." *See LNC Invs.*, 126 F. Supp. 2d at 787.

### 1. Dr. Mohr's testimony about the irrelevance of mutagenicity findings was sufficiently disclosed and admissible.

Dr. Mohr's testimony about the irrelevance of mutagenicity findings was admissible because it was highly probative of a factual issue and was supported by sufficient and reliable facts or data. *See* Fed. R. Evid. 702. Specifically, Dr. Mohr's opinion was relevant to whether the City should (or would) treat the Station 6 water to remove the low-level MTBE – *i.e.*, below New York's legal limit – that the jury found would be present.

Moreover, Dr. Mohr's expert report was "sufficiently complete" to put the City on notice of her opinions. *In re MTBE Prods Liab. Litig.*, 2009 U.S. Dist. LEXIS 62649, at *24. The Federal Rules of Civil Procedure do not require an explicit recitation of all testimony an expert will present at trial. *See, e.g., Creative Waste Mgmt. v. Capitol Envt'l Servs., Inc.*, 495 F. Supp. 2d 353, 357 (S.D.N.Y. 2007). Dr. Mohr's report satisfied the Rules' notice requirements because it critiqued the City's expert, Kathleen Burns, for relying "solely on mutagenicity assays and animal studies and fail[ing] to review the published human literature of MTBE exposure." (Handel Decl., Ex. E, Excerpts from Expert Report of Dr. Sandra N. Mohr, MD, MPH (Mar. 9,

2009), at 17.) This statement put the City on notice that Dr. Mohr would criticize the relevancy of mutagenicity assays on which the City's expert relied in opining that MTBE causes cancer in humans. Dr. Mohr's report also states that "data indicative of genotoxicity are very weak … except for the mutagenicity in mouse lymphoma cells." (*Id.* at 18.) At trial, Dr. Mohr attempted to explain these portions of her report. Her opinion that mutagenicity findings in animal studies had little to no relevance to MTBE's carcinogenicity in humans was a mere extension of her statement that data indicating genotoxicity is "very weak" while also recognizing that a single study did find mutagenicity in cancer (lymphoma) cells of mice. (*Id.*) The Court's finding that "the city could never have predicted and could not have prepared for Dr. Mohr's" stricken opinions is thus erroneous. (9/18/09 Tr. at 5068:9-10.) Indeed, to the extent the City was unprepared, it was due solely to its questionable decision not to depose Dr. Mohr before trial.

### 2.     Mr. Rudo's testimony should not have been admitted.

The prejudicial effect of the Court's decision to strike parts of Dr. Mohr's testimony was compounded by its decision to allow testimony from a wholly undisclosed, rebuttal witness, Kenneth Rudo. Federal Rule of Civil Procedure 26(a)(2)(A) requires a party to disclose before trial "the identity of *any* witness it *may* use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A) (emphasis added). In addition, Rule 26 requires submission of an expert report and requires that rebuttal evidence be disclosed within 30 days of the opposing party's disclosure. *See* Fed. R. Civ. P. 26(a)(2)(B), (C). As the City met none of these requirements with respect to Mr. Rudo, he should not have been permitted to testify. *See* Fed. R. Civ. P. 37(c)(1).

In addition, the Court's decision to allow Mr. Rudo to testify was contrary to its prior reasoning that "[t]he purpose of an expert report is to eliminate unfair surprise to the opposing party." *In re MTBE Prods. Liab. Litig.*, 2009 U.S. Dist. LEXIS 62649, at *24; *cf. Creative*

*Waste Mgmt.*, 495 F. Supp. 2d at 357. The Court justified its decision to permit Mr. Rudo's testimony on the grounds that his opinions would be no surprise to counsel for ExxonMobil who had examined him in another case. However, even if such "disclosure" in a different case satisfied Rule 26 here (and it does not), a key opinion that Mr. Rudo stated at trial differed substantially from the opinion he gave in the prior litigation or in the draft disclosure the City provided two weeks before Mr. Rudo's testimony (when it attempted to substitute Rudo for Burns).[9] (*See* Handel Decl., Ex. F, Declaration of Kenneth M. Rudo in Support of Plaintiff City of New York's Motion for Leave to Designate Substitute Expert Witness (Aug. 13, 2009).) In this draft disclosure, which Mr. Rudo described as "encompass[ing] the opinions I am able and willing to offer in this case" and opinions that "are the same as they were in the *Alban* case" (*id.* ¶ 12), Mr. Rudo's *sole* opinion on mutagenicity was that "there is *some* evidence of MTBE being a *potential* mutagenic compound." (*Id.* at Ex. 6, ¶ 4 (emphasis added).) In contrast, at trial, Mr. Rudo testified that MTBE *is mutagenic* and "that even at the *lowest levels* of exposure … can cause a mutation which can possibly lead to cancer." (9/2/09 Tr. at 3267:18-24 (emphasis added).)

3. **The Court's erroneous decisions regarding the testimony of Mohr and Rudo influenced the jury's findings against ExxonMobil.**

In striking Dr. Mohr's opinion, the Court bolstered the implausible opinions of Plaintiffs' experts that mutagenicity studies in animals show that exposure to as little as one molecule of MTBE has the potential to cause cancer in humans. (*See* 8/27/09 Tr. at 2829:10-15 (Burns); 9/2/09 Tr. at 3263:6-11 (Rudo).) Given the jury's finding that the City is or will be injured by the presence of MTBE at levels already determined by the State of New York to be safe, as well

---

[9] The Court rejected the City's initial attempt to have Mr. Rudo testify in place of its disclosed toxicology expert, Kathleen Burns. (*See* 8/14/09 Tr. at 1514:4-23.)

as the jury's finding for the City on its public nuisance claim, it cannot be said "with fair

assurance ... that the judgment was *not* substantially swayed by" the Court's decisions to strike

Mohr's testimony or to allow Rudo's. *Malek*, 994 F.2d at 55. For these reasons, a new trial is

warranted. *See Caruolo*, 226 F.3d at 54.

## V.   THE COURT ERRED IN PERMITTING THE CITY TO CHANGE ITS THEORY OF NEGLIGENCE MID-TRIAL.

Pursuant to Federal Rule of Civil Procedure Rule 15(b), a district court may consider

claims outside those raised in the pleadings only if doing so would not cause prejudice to the

opposing party. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 569 (2d Cir. 2000), *vacated on other

grounds*; *see also* Fed. R. Civ. P. 15(b). "[P]rejudice may exist where it is not clear that the

opposing party had the opportunity to defend against the new claim and where that party might

have offered additional evidence had it known of the claim." *Grand Light & Supply Co., Inc. v.

Honeywell, Inc.*, 771 F.2d 672, 680 (2d Cir. 1985); *see also Hirsch v. Du Pont*, 553 F.2d 750,

758 n.7 (2d Cir. 1977); *Ragusa v. United Parcel Serv.*, No. 05 Civ. 6187, 2008 U.S. Dist. LEXIS

69127, at *4 (S.D.N.Y. Sept. 12, 2008). Moreover, the Second Circuit has held that asserting a

new cause of action in the middle of trial is inappropriate if the asserting party knew or should

have known about the cause of action, or had reason to identify the cause of action before the

trial. *Royal Amer. Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011, 1017-18 (2d Cir. 1989);

*see also Classicberry Ltd & The Black Crowes P'ship., v. Musicmaker.com, Inc.*, No. 02-7054,

2002 U.S. App. LEXIS 21619, at *5 (2d Cir. Oct. 15, 2002).

In the present case, a mere week before the Phase 3 opening statements, the City

proposed a sub-phase focused on the issue of ExxonMobil's negligence as a station owner or

operator. (*See* 8/19/09 Tr. at 2197:2-5.) ExxonMobil objected that – in six years of litigation

and five versions of its complaint – the City never pled a cause of action based on ExxonMobil's

- 23 -

negligent operation of service stations. (*Id.* at 2197:8-12; *see also* Handel Decl. Ex. G, Aug. 24,

2009, Letter from J. Pardo to Court, at 6; 4th Amen. Compl. ¶¶ 142-47.) The City acknowledged

this omission in a follow-up letter, yet argued that it should be permitted to pursue such a theory

because its Navigation Law claim put ExxonMobil "on notice that [the] City would seek to prove

that [ExxonMobil] failed to use reasonable care by failing to ensure that station owners and

others properly stored or dispensed gasoline containing MTBE...." (*See* Handel Decl. Ex. H,

Aug. 20, 2009, Letter from N. Campins to Court, at 4.) But whether ExxonMobil took

"reasonable care" would never have been at issue in the Navigation Law claim because such

claims are based on strict liability, "*without regard to fault*." N.Y. Nav. Law § 181 (2010)

(emphasis added). ExxonMobil had no reason, in preparing to defend against a Navigation Law

claim (which the City subsequently dropped), to prepare a defense against negligent conduct in

the ownership or operation of its stations.

ExxonMobil had no notice of the City's intent to pursue a negligence cause of action

premised on ExxonMobil's conduct in operating or owning service stations. The Court's

decision permitting the City to pursue this theory gravely prejudiced ExxonMobil, which, by the

time the issue was added, had no opportunity to prepare station-specific witnesses or evidence.

*See Royal Amer. Managers, Inc.*, 885 F.2d at 1018. This error of law is grounds for a new trial.

*See United States ex rel. Evergreen Pipeline Constr. Corp. v. Merritt-Meridian Constr. Corp.*,

890 F. Supp. 1213, 1223 (S.D.N.Y. 1995) ("An error of law, if prejudicial, may be grounds for a

new trial under Fed. R. Civ. P. 59(a).").

## CONCLUSION

For all of the foregoing reasons, due to the multiple errors of law made throughout the

multi-phased trial, the Court should order a new trial.

DATED:  April 21, 2010

Respectfully submitted,

*Lauren Handel*

Peter John Sacripanti (PS 8968)
James A. Pardo (JP 9018)
Lauren E. Handel (LH 0755)
Lisa A. Gerson (LG 4340)
MCDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, NY 10017-4613
Tel. (212) 547-5400
Fax (212) 547-5444

James W. Quinn (JQ 6262)
David J. Lender (DL 1554)
Theodore E. Tsekerides (TT 5946)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Tel:  212.310.8000
Fax:  212.310.8007

*Counsel for Exxon Mobil Corporation,*
*ExxonMobil Chemical Company, Inc., Exxon*
*Mobil Oil Corporation, and Mobil Corporation*