**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------- x

In Re: Methyl Tertiary Butyl Ether ("MTBE")          Master File No. 1:00-1898
Products Liability Litigation                        MDL 1358 (SAS)
                                                     M21-88
-------------------------------------------------------------------- x   ECF Case

**This document relates to the following case:**

*City of New York, et al. v. Amerada Hess Corp., et al.*
Case No. 04 Civ. 3417

-------------------------------------------------------------------- x

### DECLARATION OF MARNIE E. RIDDLE IN SUPPORT OF PLAINTIFFS' MEMORANDUM IN OPPOSITION TO EXXON MOBIL DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL AND/OR REMITTITUR

Marnie E. Riddle, an attorney duly admitted *pro hac vice* by this Court, hereby declares

under penalty of perjury:

1.      I am an attorney at Sher Leff LLP in San Francisco, California, counsel

for the City of New York Plaintiffs in the above-captioned matter.  I have personal

knowledge of the matters set forth herein and if called as a witness I could and would

competently testify thereto under oath.

2.      Attached as Exhibit 1 is a true and correct copy of relevant pages of the

Memorandum of Points and Authorities of ChevronTexaco Corporation; Chevron U.S.A.,

INC.; Chevron Products Company; ExxonMobil Corporation; Thrifty Oil Co.; Best

California Gas, Ltd.; Shell Oil Company; Shell Oil Products Company; Shell Pipeline

Corporation; Equilon Enterprises LLC; Equilon Pipeline Company LLC; and Texaco

Refining and Marketing Inc. in Support of Motion for Determination of Good Faith

Settlement [CCP § 877.6], filed in *City of Santa Monica v. Shell Oil Company, et al.,* State of California, Orange County Superior Court Case No. 01CC4331 ("*City of Santa Monica v. Shell*").

3.      Attached as Exhibit 2 is a true and correct copy of the Notice and Entry of Amended Order on Motion by ChevronTexaco Corporation; Chevron U.S.A., INC.; Chevron Products Company; ExxonMobil Corporation; Thrifty Oil Co.; Best California Gas, Ltd.; Shell Oil Company; Shell Oil Products Company; Shell Pipeline Corporation; Equilon Enterprises LLC; Equilon Pipeline Company LLC; and Texaco Refining and Marketing Inc. in Support of Motion for Determination of Good Faith Settlement filed on January 9, 2004 in *City of Santa Monica v. Shell.*

4.      Attached as Exhibit 3 is a true and correct copy of relevant pages of the Declaration of Barbara Mickelson in Support of Motion for Determination of Good Faith Settlement [CCP § 877.6], December 1, 2003, filed in *City of Santa Monica v. Shell.*

5.      Attached as Exhibit 4 is a true and correct copy of relevant pages of the Declaration of Anthony Brown Regarding Motion for Determination of Good Faith Settlement dated October 29, 2002, filed in *City of Santa Monica v. Shell.*

Executed:  this the 27th day of May, 2010     /s/ *MARNIE E. RIDDLE*
                                                                    MARNIE E. RIDDLE *(pro hac vice)*
                                                                    SHER LEFF LLP
                                                                    450 Mission Street, Suite 400
                                                                    San Francisco, CA 94105
                                                                    (415) 348-8300

                                                                    *Attorney for Plaintiffs City of New York,*
                                                                    *New York Municipal Water Finance*
                                                                    *Authority, and New York City Water Board*

# EXHIBIT 1



E-SERVED
12/01/03
08:39 PM ET
01-CC-04331

1   DAVID L. SCHRADER, State Bar No. 149638
    JOHN J. WASILCZYK, State Bar No. 78506
2   MORGAN, LEWIS & BOCKIUS LLP
    300 South Grand Avenue
3   Twenty-Second Floor
    Los Angeles, CA 90071
4   Telephone: (213) 612-2500
    Facsimile: (213) 612-2501
5
    WILLIAM K. DIAL, State Bar No. 41310
6   CHEVRON PRODUCTS COMPANY LAW DEPARTMENT
    6001 Bollinger Canyon Road
7   San Ramon, California 94583-2398
    Telephone: (925) 842-2642
8   Facsimile: (925) 842-3365
    Attorneys for Defendants ChevronTexaco Corporation,
9   Chevron U.S.A. Inc. and Chevron Products Company

10  [Additional Counsel for Moving Parties On Following Page]

11

12                SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                   IN AND FOR THE COUNTY OF ORANGE

14  CITY OF SANTA MONICA,              | Case No. 01CC04331
                                       | [Assigned for all purposes to the
15                Plaintiff,           | Honorable Stephen J. Sundvold]

16       vs.                           | **MEMORANDUM OF POINTS AND
                                       | AUTHORITIES OF CHEVRONTEXACO
17  SHELL OIL COMPANY; SHELL OIL       | CORPORATION; CHEVRON U.S.A. INC.;
    PRODUCTS COMPANY; SHELL            | CHEVRON PRODUCTS COMPANY;
18  PIPELINE CORPORATION; CHEVRON      | EXXONMOBIL CORPORATION;
    CORPORATION; CHEVRON U.S.A. INC.;  | THRIFTY OIL CO.; BEST CALIFORNIA
19  CHEVRON PRODUCTS COMPANY;          | GAS, LTD.; SHELL OIL COMPANY;
    ATLANTIC RICHFIELD COMPANY;        | SHELL OIL PRODUCTS COMPANY;
20  MOBIL OIL COMPANY;                 | SHELL PIPELINE CORPORATION;
    EXXONMOBIL CORPORATION; TOSCO      | EQUILON ENTERPRISES LLC; EQUILON
21  CORPORATION; ULTRAMAR INC.;        | PIPELINE COMPANY LLC; AND
    TEXACO REFINING AND MARKETING      | TEXACO REFINING AND MARKETING
22  INC.; EQUILON ENTERPRISES LLC;     | INC. IN SUPPORT OF MOTION FOR
    ARCO CHEMICAL COMPANY;             | DETERMINATION OF GOOD FAITH
23  LYONDELL CHEMICAL COMPANY;         | SETTLEMENT [CCP § 877.6]**
    EXXON CORPORATION; UNOCAL          |
24  CORPORATION; EQUILON PIPELINE      | Complaint Filed:  June 19, 2000
    COMPANY LLC; and DOES 1 through    | Trial Date:    None Set
25  600, inclusive,                    |
                                       | Hearing Date: December 19, 2003
26                Defendants           | Time:          9:30 a.m.
                                       | Dept:          CX-105
27  AND OTHER CROSS-COMPLAINTS         | Judge: Honorable Stephen J. Sundvold

28

1-LA/742489.1

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
DETERMINATION OF GOOD FAITH SETTLEMENT [CCP § 877.6]**



E. SERVED
12/01/03
08:39 PM ET
01-CC-0431

1  ROY G. WUCHITECH, State Bar No. 54846
   JEFFREY J. PARKER, State Bar No. 155377
2  LORI OSMUNDSEN, State Bar No. 211964
   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
3  A Limited Liability Partnership
   Including Professional Corporations
4  333 South Hope Street, 48th Floor
   Los Angeles, California 90071-1448
5  Telephone: (213) 620-1780
   Facsimile: (213) 620.1398
6  Attorneys for Defendants ExxonMobil Corporation, successor by merger to
   ExxonCorporation, and Mobil Oil Corporation
7
   MARK B. GILMARTIN, State Bar No. 98384
8  LAW OFFICES OF MARK B. GILMARTIN
   233 Wilshire Boulevard, Suite 350
9  Santa Monica, California 90401
   Telephone: (310) 395-7333
10 Facsimile: (310) 395-7573
11 Attorneys for Cross-Defendants
   Thrifty Oil Co. and Best California Gas, Ltd.
12
   RONALD L. OLSON, State Bar No. 044597
13 STEPHEN M. KRISTOVICH, State Bar No. 082164
   CYNTHIA L. BURCH, State Bar No. 086020
14 MICHAEL R. BARSA, State Bar No. 190643
   MUNGER, TOLLES & OLSON LLP
15 355 South Grand Avenue
   Thirty-fifth Floor
16 Los Angeles, California 90071
   Telephone:  (213) 683-9100
17 Facsimile:  (213) 687-3702
18 Attorneys for Defendant Shell Oil Company, Shell Oil Products Company, Shell Pipeline
   Corporation, Equilon Enterprises LLC, Equilon Pipeline Company LLC and Texaco Refining and
19 Marketing Inc.
20
21
22
23
24
25
26
27
28

1-LA/742489.1

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
DETERMINATION OF GOOD FAITH SETTLEMENT [CCP § 877.6]**



E-SERVED
12/01/03
08:39 PM ET
01-CC-0431

1  ChevronTexaco Corporation (formerly Chevron Corporation), Chevron U.S.A. Inc., and

2  Chevron Products Company (collectively "Chevron"); ExxonMobil Corporation ("ExxonMobil");

3  Shell Oil Company, Shell Oil Products Company, Shell Pipeline Corporation, Equilon

4  Enterprises LLC, Equilon Pipeline Company LLC and Texaco Refining And Marketing Inc.

5  (collectively "Shell"); Thrifty Oil Co. ("Thrifty") and Best California Gas, Ltd. ("Best")

6  respectfully submit this Memorandum of Points and Authorities in support of their motion for

7  good faith settlement determination, pursuant to California Code of Civil Procedure section

8  877.6.

9                    **I.     INTRODUCTION**

10  This motion seeks approval of a $312.85 million settlement, which was reached following

11  19 months of mediation and negotiation by the settling parties.  The subject settlement provides

12  for a substantial cash payment to plaintiff City of Santa Monica (the "City"), restoration of the

13  City's drinking water supply, and avoidance of further wasteful litigation between these parties.

14  Specifically, the settlement between the City, Shell, Chevron, ExxonMobil, Thrifty, and Best

15  provides for $92.5 million in nonrefundable payments to the City and guaranteed funding by

16  Shell, Chevron and ExxonMobil for construction and operation of a water treatment facility (the

17  "guarantee" portion), with a small portion of that funding to be paid from other settlements or a

18  final judgment against any remaining defendants.

19  The water treatment facility will enable the City to restore use of its drinking water wells

20  that have been shut down as a result of the gasoline releases that are the subject of this lawsuit.[1]

21  The amount that Shell, Chevron and ExxonMobil will ultimately pay through their commitment

22  to fund the treatment facility will depend on the actual treatment costs.  It *may* also be reduced

23  somewhat by the City's recovery from the remaining, non-settling defendant, Lyondell Chemical

24  Company ("Lyondell"), depending upon the size of that recovery.  The obligation to fund the

25  water treatment facility has been valued by the settling parties at $220.05 million – on top of the

---

26  [1]  The Settlement Agreement and related documents are attached to the Declaration of David L. Schrader
27  ("Schrader Decl.") as Ex. 1.  The $92.5 million case payments are allocated as follows:  Shell - $62.5
     million; Chevron, Thrifty and Best - $20 million; and ExxonMobil - $10 million.  [*See* Settlement
     Agreement at ¶ 3.4.1.]
28

E-SERVED
12/01/03
08:39 PM ET
01-CC-0431

1   $92.5 million initial cash payment by the settling defendants.  In addition, Chevron has agreed to

2   waive a potential counter-claim valued at $300,000, bringing the total value of this settlement to

3   $312.85 million.  This extraordinary settlement is contingent upon a good faith determination by

4   this Court.

5          This settlement plainly meets the standard for good faith set forth by the California

6   Supreme Court:

7          •      The settlement and documentation thereof were intensely negotiated in a series of

8                 mediations before retired Superior Court Judges Keith Wisot and Daniel

9                 Weinstein, which began in March 2002 and lasted until November 2003.

10         •      The nonrefundable $92.5 million payments by settling defendants, considered

11                alone, are well within the ballpark of their proportionate liability.  One of the

12                settling defendant's expert consultants estimates three likely total treatment costs

13                to have an average $92.6 million present value.  The value agreed upon by the

14                settling defendants for the guaranteed commitment to fully fund the treatment

15                facility, plus the initial cash payment, bring the total settlement value to over $300

16                million – more than triple what one defense expert opines it should actually cost

17                for complete remediation.

18         •      The guarantee by Shell, Chevron and ExxonMobil to fund a wellhead treatment

19                facility assures that the City's five water wells will be returned to useful

20                production, regardless of the outcome of this litigation.

21         •      With this settlement, the City has resolved its claims against all oil company

22                defendants who operated gasoline stations in the Charnock Sub-Basin.  The only

23                remaining non-settling defendant is Lyondell – the manufacturer of MtBE, the

24                primary gasoline constituent that impacted the Charnock Wellfield.  Once this

25                settlement is approved, Lyondell will be entitled to an offset credit of $312.85

26                million against any judgment.

27         The strong public policies favoring settlements are exemplified by this settlement.  The

28   settling defendants have stepped up to the plate to resolve the serious and substantial damages

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
DETERMINATION OF GOOD FAITH SETTLEMENT [CCP § 877.6]**



E-SERVED
12/01/03
08:39 PM ET
01-CC-0431

1  alleged by the City to its drinking water supply.  For the reasons set forth below, and in the

2  declarations and evidence supporting this motion, the settling defendants respectfully urge the

3  Court to grant this motion and find the settlement in good faith.

## II.      BACKGROUND

5       This lawsuit arises out of the City's discovery in 1995 that methyl tertiary butyl ether

6  ("MtBE") was detected in some of its water supply wells in the Charnock Wellfield, which

7  supplied approximately 40% of the City's drinking water.  MtBE was a chemical added to

8  gasoline by a California refiner as early as 1986 and was a component of a large percentage of

9  gasoline marketed in Southern California by the end of 1992.  MtBE, as an ether, dissolves more

10  readily into water than other components of gasoline.  Thus, when gasoline containing MtBE is

11  leaked or spilled into the soil and percolates down to groundwater, some of the MtBE will

12  dissolve in the groundwater and disperse.

13       By June 1996, the City shut down its Charnock Wellfield because of the levels of MtBE

14  found in four of its five wells.  The City, with the help of certain governmental agencies,

15  identified a number of service stations and other facilities where gasoline had been stored, or was

16  being stored, in underground storage tanks within a 1.25 mile radius of the Charnock Wellfield,

17  and two underground gasoline pipelines within this area, as potential sources of the MtBE

18  impacting the wellfield.  In 1997, Chevron and Shell, later joined by ExxonMobil, entered into a

19  settlement agreement whereby Chevron, Shell and ExxonMobil agreed to provide the City with

20  replacement water and investigate the sources and extent of the gasoline releases in the Charnock

21  groundwater Sub-Basin.  In 2000, that agreement terminated.

22       After the prior cooperative agreements with the City terminated, the City commenced this

23  lawsuit on June 19, 2000, against Shell, Chevron, Exxon-Mobil, several other refiners and

24  marketers of gasoline affiliated with facilities identified within the investigation area, and

25  Lyondell, a manufacturer of MtBE.  The City's lawsuit seeks compensatory and punitive damages

26  under various theories, including nuisance, trespass, negligence, and strict product liability.  The

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
DETERMINATION OF GOOD FAITH SETTLEMENT [CCP § 877.6]**



E-SERVED
12/01/03
08:39 PM ET
01-CC-0431

City subsequently obtained an assignment of similar claims from Southern California Water Company ("SCWC") and is prosecuting those assigned claims here.[2]

Chevron, ExxonMobil, Thrifty and Best previously negotiated a sliding scale settlement with the City and filed a motion for good faith determination in November 2002.  While that motion was pending, an agreement was reached between Shell, the City and the prior settling defendants.  Shell's participation in this settlement agreement:  (i) substantially increases the up front payment to the City, (ii) substantially reduces the potential sliding scale component of the settlement by reducing the potential benefit to the settling defendants of any future recoveries by the City, and (iii) eliminates the veto provision by the settling defendants over future settlements, which was the subject of much of the challenges made by non-settling defendants to the prior sliding scale settlement that did not include Shell.  The proposed settlement, once approved by the Court as having been made in good faith, will resolve all claims of the City and SCWC against Shell, Chevron, ExxonMobil, Thrifty, and Best, and perhaps most importantly, will assure that the City will again be able to provide drinking water from its Charnock Wellfield wells.

## III.   ARGUMENT

### A.   Code Of Civil Procedure § 877.6 Permits The Settling Parties To Obtain A Determination That A Settlement Was Made In Good Faith.

Code of Civil Procedure § 877.6(a)(1) states:

> "Any party to an action in which it is alleged that two or more parties are joint tortfeasors . . . shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors."

---

[2]  SCWC also operated drinking water wells that drew water from the same aquifer as the City's Charnock Wellfield.  SCWC's wells were shut down as a precaution against becoming affected by MtBE.  SCWC filed suit on April 24, 2001, against the same defendants in the City's action, as well as additional defendants, including Thrifty and Best.  SCWC subsequently sued the City over disagreements about SCWC's and the City's respective water rights in the Charnock Sub-Basin.  As part of the resolution of that dispute, the City has now acquired all of SCWC's claims asserted in its lawsuit against Shell, Chevron, ExxonMobil, Thrifty, Best and other parties, and has amended its complaint in this action to incorporate all of those claims.



E-SERVED
12/01/03
08:39 PM ET
01-CC-0431

Pursuant to Code of Civil Procedure § 877.6(b), the settling parties here have supplied the Court with abundant evidence upon which to base its determination.[3]

California courts have recognized the strong policy in favor of settlements, noting:

> Except in rare cases of collusion or bad faith . . . a joint tortfeasor should be permitted to negotiate settlement of an adverse claim according to his own best interests, whether for his financial advantage, or for the purchase of peace and quiet, or otherwise.  His good faith will not be determined by the proportion his settlement bears to the damages of the claimant.  For the damages are often speculative, and the probability of legal liability therefor is often uncertain or remote.

*Stambaugh v. Superior Court*, 62 Ca1.App.3d 231, 238 (1976), cited with approval in *Tech-Bilt, Inc. v. Woodward-Clyde & Assoc.*, 38 Cal.3d 488, 499 (1985).  In *Tech-Bilt*, the California Supreme Court announced the standard for determining whether a settlement was made in good faith, noting that an appropriate definition of good faith "would enable the trial court to inquire, among other things, whether the amount of the settlement is within the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries."  38 Cal.3d at 499.

The California Supreme Court identified certain factors to be taken into consideration in determining whether a settlement was arrived at in good faith.  The factors pertinent to this settlement are:

1. a "rough approximation" of the plaintiff's total recovery from all defendants and the settling defendants' proportionate share of liability for that recovery;

2. the amount paid by the settling defendants in settlement; and

3. a recognition that a settling defendant should pay less in settlement than if that defendant were found liable after a trial.

*Tech-Bilt*, 38 Cal.3d at 499.

It is not necessary for the court to make a precise estimation of the size of the plaintiff s total claim, nor the settling defendant's liability exposure.  Rather, it is sufficient that the

---

[3] Because this settlement contains a "sliding scale recovery agreement," the settling parties also complied with the notice requirements of CCP § 877.5 on November 20, 2003.



E-SERVED
12/01/03
08:39 PM ET
01-CC-0438

1  compensation paid by the settling defendant is "within the ballpark" of that defendant's

2  proportionate liability.  *Tech-Bilt*, 38 Ca1.3d at 499-501.  Any party asserting lack of good faith

3  must demonstrate "that the settlement is so far 'out of the ballpark' in relation to these factors as

4  to be inconsistent with the equitable objectives of the statute."  *Id.* at 499-500.  Since *Tech-Bilt*,

5  the California Supreme Court has confirmed that it "is quite proper for a settling defendant to pay

6  less than his proportionate share of the anticipated damages.  What is required is simply that the

7  settlement not be grossly disproportionate to the settlor's fair share."  *Abbott Ford, Inc. v. Super.*

8  *Ct.*, 43 Cal.3d 858, 874-75 (1987).  This settlement meets the standards set by the California

9  Supreme Court.

10      **B.      Like Other Settlements, Sliding Scale Settlements Are Presumptively Valid.**

11          The California legislature has specifically recognized the validity of sliding scale

12  settlements.  *See* Cal. Code Civ. Pro. § 877.5.  California courts have held that the "statute

13  authorizing [sliding scale settlements] is reasonably related to the rational goal of promoting

14  settlements of lawsuits, and such agreements, like other settlements, are presumptively valid."

15  *Rogers & Wells v. Super. Ct.*, 175 Cal.App.3d 545, 554 (1985).  Only 10% of any future

16  recoveries by the City will be paid into the Operating Account (thereby reducing the settling

17  defendants' obligations) and only if over $40 million total is recovered by the City from other

18  sources.[4]

19          The leading case on confirmation of sliding scale settlements is *Abbott Ford*. 43 Cal.3d

20  858.  In that case, defendant Abbott Ford and its insurer provided interest-free loans and

21  guaranteed plaintiff a recovery of $3 million, with a dollar for dollar reduction of that amount

22  from recoveries plaintiff made against co-defendants Ford Motor Company and Sears-Roebuck.

23  The California Supreme Court recognized that, by the terms of the settlement, Abbott Ford might

24  ultimately not bear <u>any</u> liability to plaintiffs.  43 Cal.3d at 866.  Nevertheless, the Court approved

25  the settlement as being in good faith and consistent with the *Tech-Bilt* standard and strong public

26  ───────────────────

27  [4]    The Settlement Agreement provides that the first $18 million recovered by the City shall be paid into
   the Operating Account.  Existing settlements with other defendants have already reached that level.
   The next $22 million goes directly to the City.

28

E-SERVED
12/01/03
08:39 PM ET
01-CC-0431

1   policies favoring settlements.  The California Supreme Court also recognized "that affording an

2   injured person prompt payment of funds for his losses serves a very important state interest."  *Id.*

3   at 885.  The settlement now before this Court does just that.  In addition, unlike *Abbott Ford*,

4   there is no chance of complete reimbursement of settlement amounts paid by the settling

5   defendants here.  Settling defendants will pay not only a nonrefundable $92.5 million, but will

6   also pay the bulk of the treatment costs (more than 90%) under any scenario.

7         **C.**    **This Settlement Meets All Applicable *Tech-Bilt* Criteria And Is Valid Under**

8   ***Abbott Ford*.**

9         In this settlement, the parties have agreed on a fixed, nonrefundable payment of $92.5

10   million to the City.  In addition, Shell, Chevron and ExxonMobil have agreed to fund and

11   guarantee the full Treatment Facility Costs including the construction, operation, and

12   maintenance of a treatment facility that will allow the City to restore production of drinking water

13   from its Charnock Wellfield.  [*See* Settlement Agreement, ¶¶ 3.4 and 3.7.]  These Treatment

14   Facility Costs also include an annual fee to cover internal charges of the City, the acquisition

15   costs for any additional real property needed for the Treatment Facility and the costs of any

16   replacement water.  [*Id.* at ¶¶ 3.7.3, 3.7.5 and 3.7.6.]  The Treatment Facility Costs will be paid

17   from an Operating Account funded 70% by Shell, 20% by Chevron and 10% by ExxonMobil.

18   [*Id.* at ¶¶ 3.13-3.14.]

19         The Settlement Agreement provides for a small contribution to the Operating Account

20   from settlements or final judgments with any other defendants.  Specifically, the first $18 million

21   of other settlements shall be paid into the Operating Account; the next $22 million shall be paid to

22   the City; and any settlements or judgements above $40 million shall be split with 10% to the

23   Operating Account and 90% to the City.  [*Id.* at  ¶ 3.12.3].  The evidence filed herewith

24   demonstrates that this settlement was reached in good faith through mediation and provides for

25   compensation to the City from Shell, Chevron, ExxonMobil, Thrifty, and Best that is well within

26   "the ballpark" of (i.e., not grossly disproportionate to) their potential liability exposure.  The

27   evidence further demonstrates that the value agreed to by the City, Shell, Chevron, and

28



E-SERVED
12/01/03
08:39 PM ET
01-CC-0431

1   ExxonMobil for the guarantee portion of the settlement is reasonable and fair to the interests of

2   the non-settling defendants.

3        **1.    The Value Of This Settlement "Roughly Approximates" The
     Proportionate Liability Of The Settling Defendants In Comparison With The City's
4    Approximate Total Recovery.**

5        Based on an engineering analysis and cost estimate, the City's consultant previously

6   opined that the cost to restore the City's drinking water resource through production of its

7   Charnock Wellfield wells and treatment is a range between $240 to $527 million.  [*See*

8   Declaration of Anthony Brown ("Brown Decl.") ¶¶6-7, filed November 4, 2002 as part of the

9   prior good faith settlement motion by Chevron, ExxonMobil, Thrifty and Best.]  This represents

10  the range of compensatory damages that the City would have claimed at trial against defendants.

11       The City has already recovered $4.075 million from Conoco, Inc., $9.75 million from

12  Atlantic Richfield Company and $4.5 million from Ultramar, Inc. in settlements which were

13  approved by the Court as being in good faith and fair to all of the other parties.  In addition,

14  settlements not yet approved by the Court have been negotiated with Tosco Corporation and

15  Unocal Corporation.  In this settlement, Shell, Chevron, ExxonMobil, Thrifty, and Best are

16  paying $92.5 million, plus Shell, Chevron and ExxonMobil are guaranteeing payment of the

17  entire reasonable costs of constructing and operating the treatment plant.  As required by

18  California law, *Abbott Ford*, 43 Cal.3d at 877, Shell, Chevron, ExxonMobil, and the City have

19  agreed this guarantee of future treatment has a value of $220.05 million.  When added to the

20  nonrefundable $92.5 million nonrefundable payment and other consideration, the total value of

21  this settlement is $312.85 million.[5]  This amount is well within the ballpark of the proportional

22  fair share of the liability of Shell, Chevron, ExxonMobil, Thrifty, and Best, for several reasons:

23       •    It is more than *thirty times* the $9.25 million amount paid in the next highest

24            settlement by defendant, Atlantic Richfield Company, Inc., which has already been

25

26  _____

27  [5]  [*See* Settlement Agreement at ¶¶ 3.4, 3.7, 3.12, 3.14, 3.16]  Other non-monetary "consideration"
     provided for has no quantifiable value. [See Declaration of Martin DiMezza at ¶ 6 previously filed
     November 4, 2002.]

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
DETERMINATION OF GOOD FAITH SETTLEMENT [CCP § 877.6]**

E-SERVED
12/01/03
08:39 PM ET
01-CC-0438

1    determined to be in good faith.  In fact, this settlement is valued at twelve times

2    more than the total combined other settlements.

3    •    While there has been much dispute over the technical evidence developed during

4    the extensive investigation of all of the identified potential sources of the MtBE

5    that impacted the Charnock Wellfield, as analyzed by the U.S. EPA and qualified

6    experts in hydrogeology and transport in groundwater, none of that matters here,

7    given that Shell, Chevron, ExxonMobil, Thrifty, and Best, are paying

8    compensation in settlement that exceeds what ExxonMobil's experts think it will

9    cost for full remediation treatment and almost equals the average of the City's

10   potential recovery at trial (not including any punitive damages) based on the City's

11   range of the estimated overall cost of the treatment facility.

12   **2.    The Total Value To The City From This Settlement Is In The Ballpark Of The Settling Defendants' Proportionate Share Of Liability.**

13

14   Shell, Chevron, ExxonMobil, Thrifty, and Best have agreed to step up to the plate and

15   settle this matter, providing the City with a guaranteed resolution to restore its wellfield.

16   Substantial data has been gathered concerning the MtBE found in the subsurface beneath the

17   Shell, ExxonMobil, Mobil, Chevron, Thrifty, and Best sites.  Two respected experts in

18   hydrogeology and contaminant transport in groundwater, David B. McWhorter and Thomas F.

19   Maguire, reviewed this data and previously provided declarations to this Court in November 2002

20   in support of the prior settlement motion.  Shell, in opposition to that motion, filed a declaration

21   by its hydrogeology expert, Daniel B. Stephens.  None of the technical disagreements between

22   these experts matter in consideration of this settlement, because Shell, Chevron and ExxonMobil

23   have agreed in settlement to split the Treatment Facility Costs between them as follows:

24   Shell            70%

25   Chevron        20%

26   ExxonMobil    10%.

27   Since settlements with all other refiner defendants have either been approved by this Court or are

28   in the process of being submitted, the complicated and difficult causation issues need not be

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT [CCP § 877.6]**



E-SERVED
12/01/03
08:39 PM ET
01-CC-0431

1   examined further in order to approve this settlement.  The $312.85 million value of the

2   compensation agreed to by the settling parties greatly exceeds the City's total recovery of $23.325

3   million in this case to date from all other defendants.  In short, even assuming these settling

4   defendants have most of the liability exposure, the $312.85 million value of the settlement is

5   more than reasonable.

6       **D.       The Value Of The Guarantee Portion Of The Settlement Is $220.05 Million, And The Value Of The Entire Settlement Is $312.85 Million.**

7

8           As a product of negotiation between litigation adversaries, the settling parties valued the

9   guarantee portion of the settlement at $220.05 million.  They reached this value by giving equal

10  weight to the cost estimates by the City's expert and the defendant's expert.  This $220.05 million

11  agreed upon value, plus $92.8 million (i.e., $92.5 million for the cash payments and $300,000 for

12  the waiver of Chevron's counter-claim), constitutes the reduction or "credit" against any

13  judgment that the non-settling defendants will obtain once this settlement is approved.  *See Abbott*

14  *Ford*, 43 Cal.3d at 873.  As the California Supreme Court stated in *Abbott Ford*, "[w]e believe

15  that the value placed on the sliding scale agreement by the parties to the agreement - assuming it

16  meets *Tech-Bilt* standards – is the proper amount to set off under Section 877."  *Abbott Ford*, 43

17  Cal.3d at 877, fn. 21.  The "court should not be burdened with the obligation to determine the

18  *actual* value . . . by use of actuarial or other valuation methods."  *Id*. at 879 (emphasis in original).

19  Since the "plaintiff and the settling defendant are likely to have somewhat different, and

20  somewhat conflicting interests in placing a value on the agreement . . . a joint valuation by the

21  plaintiff and the settling defendant should generally produce a reasonable valuation."  *Id*. at 879.

22  That is precisely what has occurred in this matter.

23          Analysis of two distinct cost projections support the $220.05 million value assigned by the

24  parties to the guarantee portion of the settlement as a reasonable value squarely within the range

25  of possible values.  First, Anthony Brown of Komex (the City's expert consultants) has estimated

26  the total Treatment Facility Costs at between $240 million and $527 million and testified that

27  equal probability should be assigned to each end of the range.  [Brown Deposition, 46:19-50:6.]

28  Averaging his estimates produces an average Treatment Facility Cost of $383.5 million.  Second,



E-SERVED
12/01/03
08:39 PM ET
01-CC-0431

1  Barbara Mickelson, a consultant for ExxonMobil, has also studied the treatment technology

2  alternatives closely and believes complete treatment can be achieved for much lower costs.

3  Mickelson estimates the average total Treatment Facility Costs to be $92.6 million present value.

4  [Declaration of Barbara Mickelson, ¶¶19.]  Averaging Brown's $383.5 million estimated cost

5  with Mickelson's $92.6 million estimated cost renders an average estimated cost of $238.05

6  million.  From that amount, the $18 million contribution to the Operating Account from

7  settlements with other defendants, which have already been achieved, was subtracted as the

8  portion of the costs paid through other settlements.  This results in a final value of $220.05

9  million for the guaranteed Treatment Facility Costs.  The settling parties did not reduce the value

10  by potential recovery from Lyondell, given the probability that any such recovery will not reduce

11  the settling defendants' contribution to the treatment facility costs.

12  While the approaches to estimating the remediation costs may vary, as would be expected,

13  as the California Supreme Court has recognized in *Abbott Ford*, 43 Cal.3d at 879, fn. 23, these

14  alternative approaches each confirm that the value agreed to by the settling parties of $220.05

15  million is fair and appropriate.

16  ## IV.    CONCLUSION

17  Through this settlement, Shell, Chevron, ExxonMobil, Thrifty, and Best have assured the

18  City and its residents that they will obtain clean and safe drinking water, regardless of what

19  happens in this lawsuit.  The total compensation offered to the City in this settlement valued at

20  $312.85 million is well within the ballpark of the proportional liability of these settling

21  defendants.  Approval of this settlement will not give the settling defendants any unfair

22  advantage, nor result in any undue prejudice to any non-settling defendant.  On the contrary, the

23  non-settling defendants will have an aggregate "credit" or offset of at least $330.675 million -

24  $312.85 million from this settlement, plus $17.825 million from the previously approved

25  settlements with Conoco, Atlantic Richfield Company and Ultramar.  Therefore, Shell, Chevron,

26  ExxonMobil, Thrifty, and Best respectfully request that the Court issue an order determining this

27  settlement was entered into in good faith and assigning a total value of $312.85 million.

28

E-SERVED
12/01/03
08:39 PM ET
01-CC-0438

1    DATED:  December ___, 2003          MORGAN, LEWIS & BOCKIUS LLP

2

3                                        By_____
                                            David L. Schrader
4                                        Attorneys for Defendants ChevronTexaco Corporation,
                                         Chevron U.S.A. Inc. and Chevron Products Company
5
     DATED:  December ___, 2003          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
6

7

8                                        By_____
                                            Roy G. Wuchitech
9                                        Attorneys for Defendant
                                         ExxonMobil Corporation, successor by merger to Exxon
                                         Corporation, and Mobil Oil Corporation
10
     DATED:  December ___, 2003          LAW OFFICES OF MARK B. GILMARTIN
11

12

13                                       By_____
                                            Mark B. Gilmartin
14                                       Attorneys for Cross-Defendants
                                         Thrifty Oil Co. and Best California Gas, Ltd.

15

16   DATED:  December ___, 2003          MUNGER, TOLLES & OLSON LLP

17

18                                       By_____
                                            Stephen M. Kristovich
19                                       Attorneys for Defendant Shell Oil Company, Shell Oil
                                         Products Company, Shell Pipeline Corporation, Equilon
20                                       Enterprises LLC, Equilon Pipeline Company LLC
                                         Texaco Refining and
21                                       Marketing Inc.

22

23

24

25

26

27

28

1-LA/742489.1                          12

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
DETERMINATION OF GOOD FAITH SETTLEMENT [CCP § 877.6]**



E-SERVED
12/01/03
08:39 PM ET
01-CC-0431

1

## PROOF OF SERVICE

2

   I, Lisa M. Wright, declare:

3

   I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 300 South Grand Avenue, Twenty-Second

4

Floor, Los Angeles, CA  90071-3132.  On December 1, 2003, I served the within documents:

5

6

7

8

9

   **MEMORANDUM OF POINTS AND AUTHORITIES OF CHEVRONTEXACO CORPORATION; CHEVRON U.S.A. INC.; CHEVRON PRODUCTS OMPANY; EXXON MOBIL CORPORATION; THRIFTY OIL CO.; BEST CALIFORNIA GAS, LTD., SHELL OIL COMPANY, SHELL OIL PRODUCTS COMPANY, SHELL PIPELINE CORPORATION, EQUILON ENTERPRISES LLC, EQUILON PIPELINE COMPANY AND TEXACO REFINING AND MARKETING INC. IN SUPPORT OF MOTION**

10

☐  by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

11

12

☒  by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

13

14

☐  by placing the document(s) listed above in a sealed _____ envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a _____ agent for delivery.

15

16

☐  by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

17

 Please see attached service list

18

19

   I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same

20

day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

21

22

   I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

23

   Executed on December 1, 2003, at Los Angeles, California.

24

25

         _____

26

           Lisa M. Wright

27

28

# EXHIBIT 2



E-SERVED
01-14-04
06:40 PM ET
01-CC-04331

1   Duane C. Miller, # 57812
    A. Curtis Sawyer, Jr. #101324
2   MILLER & SAWYER
    A Professional Corporation
3   1651 Response Road, Second Floor
    Sacramento, CA 95815
4   Telephone: (916) 927-8600
    Facsimile: (916) 927-9267
5
    Fred Baron (Admitted in Texas)
6   Ann Cole (Admitted in Texas)
    BARON & BUDD, P.C.
7   3102 Oak Lawn Avenue, Suite 1100
    Dallas, Texas 75219-4281
8   Telephone: (214) 521-3605
    Facsimile: (214) 523-9159
9
    [Other Counsel Listed on
10  Signature Page]

11  Attorneys for Plaintiff
    City of Santa Monica

12              SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                 IN AND FOR THE COUNTY OF ORANGE

14  CITY OF SANTA MONICA,            )   CASE NO. 01CC04331
                                     )
15          Plaintiff,               )   (Assigned to Judge Sundvold)
                                     )
16      vs.                          )   **NOTICE OF ENTRY OF AMENDED**
                                     )   **ORDER**
17                                   )
                                     )
18  SHELL OIL COMPANY; SHELL OIL     )
    PRODUCTS COMPANY; SHELL          )
19  PIPELINE CORPORATION;            )   [FILED BY FACSIMILE]
    CHEVRON CORPORATION; CHEVRON     )
20  U.S.A. INC.; CHEVRON PRODUCTS    )
    COMPANY; ATLANTIC RICHFIELD      )
21  COMPANY; MOBIL OIL CORPORATION;) Complaint Filed: June 19, 2000
    EXXON MOBIL CORPORATION; TOSCO ) Transfer Date: April 2, 2001
22  CORPORATION; ULTRAMAR, INC.;     )   Trial Date: None
    TEXACO REFINING AND MARKETING, ) Discovery Cutoff: None
23  INC.; EQUILON ENTERPRISES LLC;   )
    ARCO CHEMICAL COMPANY;           )
24  LYONDELL CHEMICAL COMPANY;       )   Hearing Date: December 19, 2003
    EXXON CORPORATION; UNOCAL        )   Time:        9:30 a.m.
25  CORPORATION; EQUILON PIPELINE    )   Dept:        CX - 105
    COMPANY LLC; and DOES 1          )   Judge: Honorable Stephen J. Sundvold
26  through 600, inclusive,          )
                                     )
27          Defendants.              )
                                     )
28



TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

1

2   NOTICE IS HEREBY GIVEN that on January 9, 2004, the above-referenced court granted

3   the motion for determination of good faith settlement of ChevronTexaco Corporation, Chevron

4   U.S.A. Inc., and Chevron Products Company, ExxonMobil Corporation; Shell Oil Company,

5   Shell Oil Products Company, Shell Pipeline Corporation, Equilon Enterprises LLC, Equilon

6   Pipeline Company LLC, and Texaco Refining and Marketing Inc.; Thrifty Oil Co. and Best

7   California Gas, Ltd.

8   A true and correct copy of the Order is attached hereto as Exhibit 1.

9   Dated: January 14, 2004

10                                                          MILLER & SAWYER
                                                            A Professional Corporation

11                                        By

12                                              A. CURTIS SAWYER, JR.
                                                Attorneys for Plaintiff

13  *Other Counsel:*
    Marsha Jones Moutrie, #69711
14  City Attorney
    Joseph Lawrence, #99039
15  Assistant City Attorney
    CITY OF SANTA MONICA
16  1685 Main Street
    Santa Monica, CA 90401-3295
17  Telephone: (310) 458-8336
    Facsimile: (310) 395-6727
18
    Victor M. Sher, Esq.
19  SHER & LEFF
    450 Mission Street, 5th Floor
20  San Francisco, CA 94105
    Telephone: (415) 982-0468
21  Facsimile: (415) 348-8333

22

23

24

25

26

27

28

1   DAVID L. SCHRADER, State Bar No. 149638
    JOHN J. WASILCZYK, State Bar No. 78506
2   MORGAN, LEWIS & BOCKIUS LLP
    300 South Grand Avenue
3   Twenty-Second Floor
    Los Angeles, CA 90071
4   Telephone: (213) 612-2500
    Facsimile: (213) 612-2501
5
    WILLIAM K. DIAL, State Bar No. 41310
6   CHEVRON PRODUCTS COMPANY LAW DEPARTMENT
    6001 Bollinger Canyon Road
7   San Ramon, California 94583-2398
    Telephone: (925) 842-2642
8   Facsimile: (925) 842-3365
    Attorneys for Defendants ChevronTexaco Corporation,
9   Chevron U.S.A. Inc. and Chevron Products Company

10  [Additional Counsel for Moving PartiesOn Following Page]

11
                SUPERIOR COURT OF THE STATE OF CALIFORNIA
12
                   IN AND FOR THE COUNTY OF ORANGE
13

14  CITY OF SANTA MONICA,                Case No. 01CC04331
                                         [Assigned for all purposes to the
15               Plaintiff,              Honorable Stephen J. Sundvold]

16       vs.                            [PROPOSED] AMENDED ORDER ON
                                        MOTION BY CHEVRONTEXACO
17  SHELL OIL COMPANY; SHELL OIL        CORPORATION; CHEVRON U.S.A.
    PRODUCTS COMPANY; SHELL             INC.; CHEVRON PRODUCTS
18  PIPELINE CORPORATION; CHEVRON       COMPANY; EXXONMOBIL
    CORPORATION; CHEVRON U.S.A. INC.;   CORPORATION; THRIFTY OIL CO.;
19  CHEVRON PRODUCTS COMPANY;           BEST CALIFORNIA GAS, LTD.; SHELL
    ATLANTIC RICHFIELD COMPANY;         OIL COMPANY; SHELL OIL
20  MOBIL OIL CORPORATION;              PRODUCTS COMPANY; SHELL
    EXXONMOBIL CORPORATION; TOSCO       PIPELINE CORPORATION, EQUILON
21  CORPORATION; ULTRAMAR INC.;         ENTERPRISES LLC; EQUILON
    TEXACO REFINING AND MARKETING       PIPELINE COMPANY LLC; AND
22  INC.; EQUILON ENTERPRISES LLC;      TEXACO REFINING AND MARKETING
    ARCO CHEMICAL COMPANY;              INC. FOR DETERMINATION OF GOOD
23  LYONDELL CHEMICAL COMPANY;          FAITH SETTLEMENT
    EXXON CORPORATION; UNOCAL
24  CORPORATION; EQUILON PIPELINE       Complaint Filed: June 19, 2000
    COMPANY LLC; and DOES 1 through 600, Trial Date:    None Set
25  inclusive,
                                        Hearing Date: December 19, 2003
26              Defendants             Time:       9:30 a.m.
                                        Dept:       CX-105
27  AND OTHER CROSS-COMPLAINTS         Judge: Honorable Stephen J. Sundvold

28
    1-LA/751745.1                        1
    [PROPOSED] AMENDED ORDER ON MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT

EXHIBIT 1



E-SERVED
01/14/04
06:40 PM ET
01-CC-04331
01-CC-04331

1   ROY G. WUCHITECH, State Bar No. 54846
    JEFFREY J. PARKER, State Bar No. 155377
2   LORI OSMUNDSEN, State Bar No. 211964
    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
3   A Limited Liability Partnership
    Including Professional Corporations
4   333 South Hope Street, 48th Floor
    Los Angeles, California 90071-1448
5   Telephone: (213) 620-1780
    Facsimile: (213) 620.1398
6   Attorneys for Defendants ExxonMobil Corporation, successor by merger to
    Exxon Corporation, and Mobil Oil Corporation
7
    MARK B. GILMARTIN, State Bar No. 98384
8   LAW OFFICES OF MARK B. GILMARTIN
    233 Wilshire Boulevard, Suite 350
9   Santa Monica, California 90401
    Telephone: (310) 395-7333
10  Facsimile: (310) 395-7573
    Attorneys for Cross-Defendants
11  Thrifty Oil Co. and Best California Gas, Ltd.
12
    RONALD L. OLSON, State Bar No. 044597
13  STEPHEN M. KRISTOVICH, State Bar No. 082164
    CYNTHIA L. BURCH, State Bar No. 086020
14  MICHAEL R. BARSA, State Bar No. 190643
    MUNGER, TOLLES & OLSON LLP
15  355 South Grand Avenue
    Thirty-fifth Floor
16  Los Angeles, California 90071
    Telephone: (213) 683-9100
17  Facsimile: (213) 687-3702
    Attorneys for Defendant Shell Oil Company, Shell Oil Products Company, Shell Pipeline
18  Corporation, Equilon Enterprises LLC, Equilon Pipeline Company LLC and Texaco Refining and
    Marketing Inc.
19
20
21
22
23
24
25
26
27
28

1-LA/751745.1                                      2

[PROPOSED] AMENDED ORDER ON MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT

1       The Motion for Determination of Good Faith Settlement of ChevronTexaco Corporation

2  (formerly Chevron Corporation), Chevron U.S.A. Inc., and Chevron Products Company,

3  ExxonMobil Corporation; Shell Oil Company, Shell Oil Products Company, Shell Pipeline

4  Corporation, Equilon Enterprises LLC, Equilon Pipeline Company LLC and Texaco Refining

5  And Marketing Inc.; Thrifty Oil Co. and Best California Gas, Ltd. (collectively, "Settling

6  Parties"), came on regularly for hearing by the Court on December 19, 2003. The matters having

7  been argued and submitted, and good cause being shown,

8       IT IS HEREBY ORDERED that:

9       In accordance with the Court's prior written ruling granting the Settling Parties' Motion,

10  the Court finds that the Settlement entered into between Plaintiff City of Santa Monica and

11  Settling Parties is in good faith pursuant to California Code of Civil Procedure sections 877 and

12  877.6 and that Settling Parties, and each of them, are entitled to protection from contribution and

13  equitable indemnity claims as provided in California Code of Civil Procedure sections 876 and

14  877.6. The Court further finds that the settlement value agreed upon by the Settling Parties and

15  the City of Santa Monica is reasonable and, accordingly, assigns a value of three hundred twelve

16  million, eight hundred and fifty thousand dollars ($312,850,000) to the Settlement.

17

18  DATED: _____ JAN 9 - 2004    **Honorable Stephen J. Sundvold**

                                      Honorable Stephen J. Sundvold

19

20

21

22

23

24

25

26

27

28

[PROPOSED] AMENDED ORDER ON MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT

# PROOF OF SERVICE

I am employed in the County of Los Angeles, California. I am over the age of 18, and not a party to the within action. My business address is 300 South Grand Avenue, Twenty-Second Floor, Los Angeles, CA 90071-3132. On January 7, 2004, I caused to be served the following documents in this action: **[PROPOSED] AMENDED ORDER ON MOTION BY CHEVRONTEXACO CORPORATION; CHEVRON U.S.A. INC.; CHEVRON PRODUCTS COMPANY; EXXONMOBIL CORPORATION; THRIFTY OIL CO.; BEST CALIFORNIA GAS, LTD.; SHELL OIL COMPANY; SHELL OIL PRODUCTS COMPANY; SHELL PIPELINE CORPORATION, EQUILON ENTERPRISES LLC; EQUILON PIPELINE COMPANY LLC; AND TEXACO REFINING AND MARKETING INC. FOR DETERMINATION OF GOOD FAITH SETTLEMENT**

**BY VERILAW:** True and correct copies of the foregoing documents were electronically served on counsel of record on January 7, 2004, by means of transmitting the documents to Verilaw in accordance with the Court's Case Management Order for Electronic Service.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on January 7, 2004, at Los Angeles, California.

*Victoria L. Rader*
Victoria L. Rader

E-SERVED
01-14-04
06:40 PM ET
01-CC-0453
01-CC-0453

1

## PROOF OF SERVICE

2    I am employed in the County of Los Angeles, California. I am over the age of 18, and not
a party to the within action. My business address is 300 South Grand Avenue, Twenty-Second

3    Floor, Los Angeles, CA  90071-3132. On January 14, 2004, I caused to be served the following
documents in this action: **AMENDED ORDER ON MOTION BY CHEVRON TEXACO**

4    **CORPORATION; CHEVRON U.S.A. INC.; CHEVRON PRODUCTS COMPANY;**
**EXXONMOBIL CORPORATION; THRIFTY OIL CO.; BEST CALIFORNIA GAS,**

5    **LTD.; SHELL OIL COMPANY; SHELL OIL PRODUCTS COMPANY; SHELL**
**PIPELINE CORPORATION, EQUILON ENTERPRISES LLC; EQUILON PIPELINE**

6    **COMPANY LLC; AND TEXACO REFINING AND MARKETING INC. FOR**
**DETERMINATION OF GOOD FAITH SETTLEMENT**

7

8    **BY VERILAW:**  True and correct copies of the foregoing documents were electronically
served on counsel of record on January 14, 2004, by means of transmitting the documents to
Verilaw in accordance with the Court's Case Management Order for Electronic Service.

9

10    I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.  Executed on January 14, 2004, at Los Angeles, California.

11

12

13                         _Victoria L. Rader_
                         Victoria L. Rader

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1-LA/751745 1                              5



## PROOF OF SERVICE

I, the undersigned, declare that I am, and was at the time of service of the paper(s) herein referred to, over the age of 18 years and not a party to this action. My business address is 1651 Response Road, Second Floor, Sacramento, CA  95815, which is located in the county in which this mailing occurred.

On January 14, 2004, I served: **NOTICE OF ENTRY OF AMENDED ORDER** on the following persons or parties by placing a true copy thereof in a sealed envelope, showing the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as stated on the attached service list, as follows:

_____ BY MAIL:
I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited in the U S  Postal Service on that same day with postage thereon fully prepaid at Sacramento, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

_____ BY PERSONAL SERVICE:
I caused to be delivered such envelope by hand to the offices of the addressee.

_____ BY FEDERAL EXPRESS OR OVERNIGHT COURIER

_____ BY TELECOPIER
I served by facsimile as indicated on the attached service list.

\_\_X\_\_ BY ELECTRONIC SERVICE SYSTEM VIA VERILAW TECHNOLOGIES
I caused the above-described document to be served by having a copy of the same posted on the Verilaw website, in accordance with the Court's Order governing electronic service of filings in this matter.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on January 14, 2004, at Sacramento, California.

CHRISTINA HISE



1    Fred Baron, Esq.
     Scott Summy, Esq.
2    Ann Cole, Esq
     Celeste Evangeliste, Esq.
3    BARON & BUDD, P C
     3102 Oak Lawn Avenue, Suite 1100
4    Dallas, Texas 75219-4281

5    Marsha Jones Moutrie, Esq.
     Joseph Lawrence, Esq
6    CITY OF SANTA MONICA
     1685 Main Street
7    Santa Monica, CA 90401-3295

8    Victor M Sher, Esq
     Sher & Leff
9    450 Mission Street, 5th Floor
     San Francisco, CA 94105
10
     Ronald L Olson, Esq                    Attorneys for Defendants
11   Stephen M. Kristovich, Esq.            Shell Oil Co , Shell Oil
     Munger, Tolles & Olson LLP             Products Co , Shell Pipeline
12   355 S. Grand Avenue                    Corp., Equilon Enterprises
     Thirty-Fifth Floor                     LLC, and Equilon Pipeline
13   Los Angeles, CA 90071-1560             Company LLC

14   Roy G Wuchitech, Esq.                  Attorneys for Defendants
     Sheppard, Mullin, Richter & Hampton    Exxon Mobil Corporation,
15   333 South Hope Street, 48th Floor      Exxon and Mobil
     Los Angeles, CA 90071-1448
16
17   Elizabeth J Haegelin, Esq              Attorneys for Defendants Mobil Oil
     Howrey, Simon, Arnold & White          Corp , Exxon Mobil Corp  and Exxon Corp
18   550 South Hope Street, Suite 1400
     Los Angeles, CA 90071-2604
19
     David Richman, Esq                     Attorneys for Defendant
20   Stephan, Oringher, Richman & Theodora  Ultramar, Inc
     2029 Century Park East, 6th Fl
21   Los Angeles, CA 90067

22   Tracie Renfroe, Esq                    Attorney for Defendant
     Bracewell & Patterson                  Ultramar, Inc.
23   711 Louisiana Street, Suite 2900
     Houston, TX 77002
24
     Ward L Benshoof, Esq                   Attorneys for Defendant
25   Peter A Nyquist, Esq                   Unocal Corporation (Union
     Weston, Benshoof, Rochefort, et al     Oil Company of California)
26   333 South Hope Street, 16th Floor
     Los Angeles, CA 90071
27

28

E-SERVED
01-14-04
06:40 PM ET
01-CC-0453

1  |  Marc M. Seltzer, Esq.
   |  David C. Marcus, Esq.
2  |  Susman Godfrey, LLP
   |  1901 Avenue of the Stars, Ste 950
3  |  Los Angeles, CA 90067

Attorneys for Defendants
ARCO Chemical Company
and Lyondell Chemical Co.

4  |  H. Lee Godfrey, Esq.
   |  Vineet Bhatia
5  |  Susman Godfrey, LLP
   |  1000 Louisiana, Ste 5100
6  |  Houston, TX 77002-5096

Attorneys for Defendants
ARCO Chemical Company
and Lyondell Chemical Co.

7  |  Alan J. Hoffman, Esq.
   |  Blank, Rome, Comsiky & McCauley
8  |  One Logan Square
   |  Eighteenth and Cherry Street
9  |  Philadelphia, Pennsylvania 19103-6998

Attorneys for Defendant
ARCO Chemical Co.

10 |  David Schrader, Esq.
   |  Andrea Ordin, Esq.
11 |  Morgan, Lewis & Bockius
   |  300 South Grand Avenue, 22nd Floor
12 |  Los Angeles, CA 90071-3132

13 |  D. Terrell Sherman, Esq.
   |  Chevron Products Co. Law Dept.
14 |  6001 Bollinger Canyon Road
   |  San Ramon, CA 94583-2398

Attorneys for Defendants
Chevron Corp., Chevron USA,
Inc. and Chevron Products
Company

15 |
16 |  Matthew T. Heartney, Esq.
   |  Stephanie M. Bonnett, Esq.
17 |  Arnold & Porter
   |  777 South Figueroa Street, 44th Floor
   |  Los Angeles, CA 90017-5844

Attorneys for Defendant
Atlantic Richfield Co.

18 |
19 |  Beth S. Dorris, Esq.
   |  McKenna & Cuneo LLP
20 |  444 South Flower Street, Suite 749
   |  Los Angeles, CA 90071

Attorneys for Defendant
Atlantic Richfield Co.

21 |
22 |  Jon D. Anderson, Esq.
   |  Gregory M. Saylin, Esq.
23 |  Latham & Watkins
   |  650 Town Center Drive, Suite 2000
   |  Costa Mesa, CA 92626-1925

Attorneys for Defendant
Tosco Corporation

24 |
25 |  Jon Tisdale, Esq.
   |  Samantha M. Ball, Esq.
26 |  Gilbert, Kelly, Crowley & Jennett LLP
   |  1200 Wilshire Boulevard. Sixth Floor
27 |  Los Angeles, CA 90017-1908

Attorneys for Defendant
Tosco Corporation

28 |

E-SERVED
01/14/04
06:40 PM ET
01-CC-0433

1    John F. Cermak, Jr

       Sonja A. Inglin, Esq.

2    Jenkens & Gilchrist LLP

       12100 Wilshire Boulevard, 15th Floor

3    Los Angeles, CA 90025-7120

4    Mark B. Gilmartin, Esq

       Law Offices of Mark B. Gilmartin

5    233 Wilshire Boulevard, Suite 350

       Santa Monica, CA 90401

6

       Kenneth A. Ehrlich, Esq

7    Jeffer, Mangels, Butler & Marmaro LLP

       1900 Avenue of the Stars, 7th Floor

8    Los Angeles, CA 90067

9    J. Sheila Welch, Esq

       Law Offices of J. Sheila Welch

10   6510 Alondra Boulevard

      Paramount, CA 90723

11

      Steven L. Hoch, Esq

12   Hatch & Parent

      11911 San Vicente Blvd., Ste. 350

13   Los Angeles, CA 90049

14   Robert J. Saperstein, Esq

      Hatch & Parent

15   21 East Carrillo Street

      Santa Barbara, CA 93101-2782

16

      Clement L. Glynn, Esq

17   Adam Friedenberg, Esq

      Glynn & Finley

18   One Walnut Creek Center

      100 Pringle Avenue, Suite 500

19   Walnut Creek, CA 94596

20   Ralph F. Hirschmann, Esq

      Law Offices of Ralph F. Hirschmann

21   707 Wilshire Blvd., Suite 4910

      Los Angeles, CA 90017

22

23

24

25

26

27

28

Attorneys for Cross-Defendant
HLW Corporation

Attorneys for Defendant Thrifty Oil Co
And Best California Gas Ltd

Attorneys for Winall Oil Company

Attorneys for Great West Car Wash

Attorneys for Cross-Defendant Southern
Cal Water Company

Attorneys for Cross-Defendant Southern
Cal Water Company

Attorneys for Cross-Defendant and Cross-
Complainants, Conoco, Inc , Kayo Oil Co ,
And Douglas Oil Co

Attorneys for Defendants Shell Oil Co ,
Shell Oil Products Co , Shell Pipeline Corp ,
Equilon Enterprises, Equilon Pipeline Co ,
as to cross-defendants Atlantic Richfield Co ,
Union Oil Co  of CA. BP USA, and B P  Amoco

EXHIBIT 3

1   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
2     Including Professional Corporations
    ROY G. WUCHITECH, Cal. Bar No. 54846
3   333 South Hope Street, 48th Floor
    Los Angeles, California  90071-1448
4   Telephone:   213-620-1780
    Facsimile:   213-620-1398
5
    Attorneys for Defendant, EXXON MOBIL
6   CORPORATION, successor by merger to Exxon
    Corporation and Mobil Oil Corporation
7

8                   SUPERIOR COURT OF CALIFORNIA
9            COUNTY OF ORANGE, CENTRAL JUSTICE CENTER
10

11  | | |
    | --- | --- |
    | CITY OF SANTA MONICA, | Case No. 01CC04331 |
    | Plaintiff, | Assigned to:  The Hon. Honorable Stephen J. Sundvold |
    | v. | **DECLARATION OF BARBARA MICKELSON IN SUPPORT OF MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT [CCP § 877.6]** |
    | SHELL OIL COMPANY; SHELL OIL PRODUCTS COMPANY; SHELL PIPELINE CORPORATION; CHEVRON CORPORATION; CHEVRON U.S.A. INC.; CHEVRON PRODUCTS COMPANY; ATLANTIC RICHFIELD COMPANY; MOBIL OIL CORPORATION; EXXONMOBIL CORPORATION; TOSCO CORPORATION; ULTRAMAR INC.; TEXACO REFINING AND MARKETING INC.; EQUILON ENTERPRISES LLC; ARCO CHEMICAL COMPANY; LYONDELL CHEMICAL COMPANY; EXXON CORPORATION; UNOCAL CORPORATION; EQUILON PIPELINE COMPANY LLC; and DOES 1 through 600, inclusive, | [Complaint Filed:  June 19, 2000]<br><br>Trial Date:                    None Set<br><br>Date:       December 19, 2003<br>Time:       9:30 a.m.<br>Dept.:      CX-105 |
    | Defendants. | |
    | AND OTHER CROSS-COMPLAINTS, | |

-1-

W02-LA:LWD\70646718.1

DECLARATION OF BARBARA MICKELSON IN
SUPPORT OF MOTION FOR DETERMINATION OF
GOOD FAITH SETTLEMENT [CCP  877.6]

I, Barbara J. Mickelson, declare as follows:

1.       I am the President of Acton • Mickelson • Environmental, Inc. (AME) an environmental engineering consulting firm I founded in 1991 to serve the needs of industrial and financial clients in managing the environmental risks of their operations and properties.  AME has completed significant environmental projects covering the spectrum of site investigation, assessment, remediation, maintenance, and closure.  I make this Declaration in support of the motion of Shell Oil Company, Shell Oil Products Company Shell Pipeline Company, Equilon Enterprises LLC, Equilon Pipeline Company, Texaco Refining & Marketing, Inc., ExxonMobil Corporation, Chevron U.S.A. Inc., ChevronTexaco Corporation, Thrifty Oil Co., and Best California Gas Ltd (hereinafter collectively the "Settling Defendants") for determination of good faith settlement   The statements below are based on my personal knowledge, and if called upon to testify to them, I could and would competently do so.

2.       I have worked on petroleum hydrocarbon remediation and clean-up projects, including treatment of impacted ground water for use as drinking water, for approximately 23 years. My educational and professional background is set forth in my Curriculum Vitae, a copy of which is attached to this Declaration and incorporated by reference.

3.       I have implemented and managed several investigation and remediation projects in California involving the oxygenate Methyl Tertiary Butyl Ether (MTBE) including: A) project manager for investigation of MTBE contamination at a retail gasoline service station; and B) as part of a regional assessment of impacts to a major southern California well field.  In the latter capacity, I provided oversight for regional assessment activities, which included a basin-wide ground water flow model.

4.      My experience also includes conducting ground water monitoring including depth-specific sampling of three municipal supply wells at the San Gabriel Superfund site and coordinating preliminary design of a packed column air stripping facility for remediation of trichloroethylene (TCE) impacted water for the U. S. Army Corps of Engineers.  I also coordinated emergency installation of systems at 9 locations serving 22 residences to remove TCE and  supervised the installation of two air stripping systems at a site in Central California to remove TCE from ground water to allow it to be used for both domestic and irrigation purposes.

5.      I have been designated as an expert and provided litigation support and expert testimony in jurisdictions in Arizona, California, Nevada, Colorado, Delaware, Maryland, Texas, Virginia, West Virginia and the U. S. Virgin Islands.

6.      My firm was retained to evaluate methodologies to remediate water produced from the Charnock well field and to provide treatment of the extracted ground water so that the City of Santa Monica (COSM) could use it as drinking water. My engagement included developing methodologies to accomplish water treatment to meet the following goals: A) remove MTBE and Tertiary Butyl Alcohol (TBA) from the aquifer to a level below currently established drinking water standards, and B) develop a physical chemical process to be utilized for TBA removal.

7.      After evaluation of treatment processes including air stripping, granular activated carbon (GAC) adsorption, resin adsorption, and advanced oxidation certain treatment processes were not carried forward. Air stripping was eliminated because of height and noise restrictions at the COSM Arcadia site.    Carbonaceous resin was eliminated because the manufacturer (Rohm and Haas) had ceased production as well as concerns with resin regeneration and condensate handling.  GAC was feasible for MTBE, but was considered ineffective for TBA due to poor adsorption properties.  The principal methods selected therefore

1   included an advanced oxidation process (AOP) and GAC.  Potential AOP technologies evaluated

2   included UV/peroxide and ozone/peroxide.   The UV/peroxide process had already been pilot

3   tested by Kennedy/Jenks in 1998-99 at the Charnock site and excessive energy consumption,

4   lamp scaling, and mercury release upon lamp breakage were experienced.  Ozone/peroxide AOP

5   was selected because the process had the advantages of no UV lamp issues, had variable output

6   capability (i.e., chemical oxidant dosage could be fed only as needed by contaminant influent

7   concentrations), and at least one manufacturer advertised a proprietary design capable of

8

9   minimizing bromate formation.

10          8.      The treatment elements were configured in two processes or "Trains".

11  The first involved GAC elements preceding and following the AOP element (Train 1: GAC-

12  AOP-GAC); the second included an AOP element first followed by two GAC elements (Train 2:

13  AOP-GAC-GAC).

14

15          9.      Preliminary costs were developed based on the two process configurations

16  utilizing either US Filters or Calgon supplied GAC and vessels.  Additionally, costs developed

17  by Komex for the COSM were used for ancillary treatment components including the pipeline

18  from Charnock and a treated water reservoir at Arcadia.

19          10.     The costs assumed the design phase would include pilot testing of each of

20  the process configurations and GAC from each supplier, Calgon and US Filters, at varied

21  concentrations of TBA and MTBE. The cost estimates developed assumed that the MTBE/TBA

22  treatment facility would be constructed at the existing COSM Arcadia treatment facility and that

23  the MTBE/TBA treatment facility would have a 7,000-gallon per minute treatment capacity.

24

25  The cost for each treatment Train varies significantly based on GAC sizing parameters (empty

26  bed contact time and hydraulic loading rate) recommended by the GAC suppliers.  The final

27

28

W02-LA:LWD\70645913.1                          -3-

costs presented herein are based on US Filters GAC pricing as they were considered to be more conservative for use in a preliminary estimate. The final capital cost estimates were as follows:

Train 1 (GAC – AOP – GAC):        $78.3 million,

Train 2 (AOP – GAC-GAC):        $73.9 million

11.     Operation and Maintenance (O&M) costs for the facility included costs of GAC, AOP chemicals, electrical power, operating manpower and laboratory expenses. These costs were a function of the expected influent contaminant concentrations, which were assumed to peak at 300 ug/L MTBE and 30 ug/L TBA. The present value of predicted O&M costs was calculated over an assumed 10-year operational period.  Results are:

Train 1 (GAC – AOP – GAC):        $ 10.9 million

Train 2 (AOP – GAC-GAC)        $ 12.0 million

12.     The total present value costs for each Train are as follows:

Train 1 (GAC – AOP – GAC):        $ 89.2 million

Train 2 (AOP – GAC-GAC)        $ 85.9 million

13.     The estimating methodology used to develop the preliminary costs included a capital cost estimating technique (the "Lang method,") as originally published in Chemical Engineering magazine, 1947-48 and as exemplified in "Cost Estimation: Capital Costs and Operating Expenses," Chemical Engineering-McGraw-Hill seminar, 1982.  The Lang method is reported to have an accuracy of +/- 30 percent, which corresponds to a "study" estimate.  More definitive estimates require more design information than is available until the pilot testing referred to above (paragraph 10) is completed.  The initial estimating process involves multiplying delivered process equipment costs by a factor (3.1 to 4.74, depending on plant type - solids, solid-fluid, or fluid).  The actual Lang factor utilized in the Charnock estimate was increased by 15 percent to account for the known tendency of the Lang Method to

underestimate by this amount. The total capital cost estimate was further increased by 30 percent (i.e., the study estimate accuracy range) as a contingency factor to arrive at a conservative facility cost.  Process equipment costs were obtained from equipment vendors. GAC costs were obtained from both Calgon Carbon and USFilter.  AOP system costs were obtained from APT Inc.  Delivered equipment costs for use in the Lang Method were obtained by multiplying equipment costs by 1.14 to account for tax and freight.

14.    Operations and maintenance costs included a variable portion (GAC, AOP chemicals, and AOP power) affected by contaminant influent concentrations and a fixed portion (maintenance, analytical, etc.)  Variable costs were estimated at three step influent MTBE/TBA concentrations (3/3, 100/10, and 300/30).  The GAC vendors estimated activated carbon consumption.  These predicted values were further increased by 15 percent to account for the expected presence of TBA.  AOP chemical consumption (peroxide and oxygen) and electrical power were provided by APT, Inc.  Other electrical power costs (for transfer pumps) were estimated by the required flow rate and estimated differential head.  An electrical utility cost of $0.05/kWh was obtained for the site from the Los Angeles Department of Water and Power.

15.    The O&M costs for the three step influent concentrations were fit to a mathematical curve, which was used to predict costs for the variable influent concentrations expected over years 1 through 10.  The present value of the 10-year O&M costs was calculated by compound interest formulas incorporating an interest rate of 5 percent.

16.    Cost estimates were compared to reference materials including the publication "Treatment Technologies for Removal of MTBE from Drinking Water" (the California MTBE Research Partnership, February, 2000) and the evaluation prepared by Kennedy/Jenks for the PRP consortium.  GAC consumption rates as estimated by the GAC vendors were further compared with values depicted in "Treating MTBE-Impacted Drinking

1   Water Using Granular Activated Carbon," (The California MTBE Research Partnership,

2   December 2001).

3        17.    Shell proposes the use of an Adsorption-only GAC-based process, which

4   would eliminate AOP and utilize GAC for removal of both MTBE and TBA.  In this scenario,

5   the number of GAC adsorber vessels would be approximately the same as the GAC/AOP

6   processes because the sizing guidelines are based on hydraulic loading (i.e., flow rate) and not

7   influent concentration.   However, the GAC consumption portion of the O&M costs would

8   increase because TBA is only poorly adsorbed to GAC. The cost estimates varied significantly

9   based on different GAC sizing parameters used for different types of GAC (bituminous F600 vs.

10  coconut shell).  The final costs presented herein are based on US Filters GAC pricing as they

11  were considered to be more conservative for use in a preliminary estimate.   An order of

12  magnitude cost estimate for an adsorption only treatment facility is:

13      Capital cost:   $66.3 million

14      18.    The O&M costs for an adsorption-only treatment facility were estimated

15  by modifying the present value costs developed previously for GAC/AOP processes.   The

16  assumed GAC consumption is 10 times that based on MTBE adsorption, and any costs

17  associated with AOP (peroxide, oxygen, AOP power) were deleted.  Results:

18      Adsorption (GAC – GAC):   $ 36.5 million

19      19.    The total present value cost for an adsorption-only treatment facility is:

20      Adsorption (GAC-GAC):    $ 102.8 million

21      20.    The average present value cost including capital and O&M of the three

22  treatment processes estimated and presented herein is $92.6 million.

1    I declare under penalty of perjury pursuant to the laws of the State of California that the

2    foregoing is true and correct.  Executed on December 1, 2003, at El Dorado Hills, California.

_____

BARBARA J. MICKELSON, P.E.

# BARBARA J. MICKELSON, P.E.

**Summary of Professional Experience**

Barbara Mickelson is a Registered Professional Engineer in California, Texas, and Wyoming, and has over 25 years of experience specializing in the following:

- Assessment of petroleum hydrocarbon impacts to soil and ground water
- Analysis of environmental risks associated with organic and inorganic substances and planning for appropriate remediation and mitigation
- Mining project permitting with respect to water quality and quantity, geomorphology, dam and embankment design and engineering, and design of alternate sediment and runoff control facilities
- Water and wastewater treatment systems for municipal, industrial, and chemical manufacture, and petroleum refining processes
- Expert witness testimony

**Education and Professional Development**

- B.S., Civil Engineering - South Dakota School of Mines and Technology, 1976
- OSHA 40-Hour Training for Hazardous Waste Operations
- OSHA Health and Safety Training for Supervisors of Hazardous Waste Workers

**Registrations and Professional Affiliations**

- Professional Engineer - California, Texas, and Wyoming
- American Society of Civil Engineers
- National Water Well Association
- Association of Groundwater Scientists and Engineers

**Representative Experience**

Evaluation and Remediation of Petroleum Hydrocarbons

- Project manager for investigation of MTBE contamination at a retail gasoline service station as part of a regional assessment of impacts to a major southern California well field. Provided oversight for client of regional assessment activities, which included a basin-wide ground water flow model.

- Project manager for litigation support involving manufacturing facilities. Completed ground water and vadose zone modeling studies of fate and transport of chlorinated solvents to explain the source of the chemicals and/or evaluate potential future impacts and the necessity for remediation. Demonstrated that contaminant sources at several sites did not present a significant risk.

- Project manager for litigation support involving a retail gasoline service station. Completed ground water modeling studies of fate and transport of gasoline constituents for the estimation of the probable date of release and evaluation of general cleanup scenarios. Responsible for soil and ground water sampling, aquifer testing, and general facility inspection. Analyzed local geology and hydrogeology, evaluated soil and ground water quality data, and rendered interpretation of the nature, extent, and potential source(s) of subsurface petroleum contamination.

- Coordinated investigation and mitigation of environmental incidents related to underground gasoline storage system operation at over 300 sites in the Eastern United States and California.

- Served on U.S. Air Force technical panel on bioremediation of hydrocarbon contaminated sites to evaluate emerging technologies and research needs for effective remediation.

- Managed and permitted the installation and operation of remedial systems for ground water and soil contamination. Supervised installation of remediation systems, including ground water recovery and treatment and soil vapor extraction and treatment.

  Investigations completed included product source identification, ground water quality characterization and assessment, ground water modeling (vadose zone and saturated zone), modeling and evaluation of differential transport of contaminants, and risk assessments.

- Prepared final environmental impact assessment in satisfaction of RCRA 7003 Consent Order issued by EPA Region I. Coordinated a cooperative oil company (Exxon, Gulf/Chevron, Amoco) aquifer evaluation and monitoring program required by EPA Region III, in Jacksonville, Maryland. RCRA 3013 cooperative monitoring program included monitoring well construction, aquifer pump testing, and soil and ground water sampling and analyses.

- Provided expert witness testimony in support of underground storage tank related environmental litigation in Maryland, Delaware, California, Arizona, and the U.S. Virgin Islands. Provided environmental testimony at numerous hearings and negotiations with environmental compliance agencies in Delaware, Maryland, Pennsylvania, Virginia, West Virginia, California, and Nevada.

- Coordinated precision testing program of underground product storage systems at over 15 retail sites in Guam, under contract to ESSO Eastern and the government of Guam, in satisfaction of Guam EPA requirements.

## Remedial Investigation/Feasibility Studies

- Project coordinator for the investigation of areas of concern identified to be impacted by contaminants associated with former ordnance manufacturing operations. Contaminants of concern included volatile and semivolatile organics, metals and explosives. Perchlorate was detected in ground water and surface water at the site. Nitrosodimethylamine (NDMA) a potential breakdown product of the explosives HMX and RDX was also detected in ground water at the site. The investigation of the occurrence and extent of the perchlorate and NDMA in ground water included depth specific sampling using innovative sampling equipment and traditional multi-depth monitoring well clusters. Coordinated a testing program of both onsite and offsite monitoring and production wells to identify wells impacted by perchlorate following the California Department of Health Services development of testing methods for low level perchlorate analyses in water samples.

- Project Coordinator for preparation of a remedial investigation/feasibility study (RI/FS) work plan for a 1,000-acre former ordnance facility in Santa Clarita. The RI/FS work plan includes a prior Site Investigation Report, a Remedial Investigation Work Plan, a Project Management Plan, a Communication and Coordination Plan, and a Public Participation Plan. Field activities to assess/remediate the site include geophysical surveys, soil gas surveys, soil borings, exploratory trenches, and shallow soil sampling.

- Project Manager for design of a water treatment system for the San Gabriel Valley Areas 1, 2, and 4 Superfund sites (Bartolo Wellfield) in Los Angeles County, California, under contract to the U.S. Army Corps of Engineers. The treatment plant design incorporated treatment of water containing VOCs by packed column air stripping and off-gas treatment with activated carbon to remove airborne VOCs.

- Project Manager responsible for remedial investigation and feasibility study of six sites at Air Force Plant 42, Palmdale, California, as part of the Air Force Installation Restoration Program (IRP) to define the magnitude, extent, direction, and rate of migration of identified constituents of concern within the soil column as well as to evaluate the magnitude of any volatile emissions from the impacted areas. Remedial investigation data were evaluated to identify and screen potential technologies and to assemble alternatives for remediation of impacted areas. Each of the alternatives was evaluated against identified ARARs and TBCs and criteria of (1) effectiveness, (2) implementability, and (3) cost.

- Managed soil vapor assessments performed in support of IRP Phase I Remedial Investigations at Edwards Air Force Base, Lancaster, California, and Plant 42, Palmdale, California. Over 300 vapor points were installed and evaluated for petroleum (jet fuel) related hydrocarbons and chlorinated organic compounds.

### Hazardous Waste Site Remediation

- Project Engineer responsible for closure of an explosive burn area. The former explosive waste burn area was excavated and residual soil metals concentrations statistically compared to background for three different soil types. The area received acknowledgment of clean closure from the California Environmental Protection Agency.

- Engineer responsible for oversight of design, installation, and operation of 500 and 600 gallon per minute air strippers and residential carbon activated carbon systems for treatment of TCE impacted ground water used for irrigation and drinking water. Responsible engineer for design and oversight of installation of activated carbon treatment systems at an active ordnance manufacturing facility.

  Project Director responsible for over 35 tasks associated with obtaining closure of five former RCRA units at a 1,000-acre former ordnance facility in Santa Clarita, California, including routine NPDES permitting, quarterly ground water monitoring, and vacuum extraction system monitoring. Activities in support of closure include excavation and statistical evaluation of metals contaminated propellant burn areas, hydrogeologic assessment of a phosphorus-stabilizing lagoon, and ongoing remediation system operations support. One of the remediation technologies being utilized at this site is a state-of-the-art TCE dual-stage, fixed-bed catalytic oxidizer, with batch scrubbing.

## Wastewater Treatment

- Environmental engineer responsible for technical support and operating supervision of 13 million gallon per day (mgd) chemical plant waste treatment facility and bio-solids incinerator. Selected and designed treatment schemes for final clarification, sludge thickening, and belt filtration dewatering. Designed and implemented upgraded polymer blending facility.

- Responsible for preparation of selected unit operations manuals, operator training, and on-shift supervision during start-up of a 7 mgd refinery waste treatment plant. Designed and implemented operability modifications and enhancements to the effluent treatment system. Following successful start-up of the effluent treatment system, monitored kinetics of the biological system, set clarifier recycle, and waste rates and nutrient and polymer feed rates to optimize treater performance.

## Water Quality Management

- Responsible for evaluation of surface water and ground water data from mining properties in Wyoming, Arkansas, and Texas. Supervised mine-site hydrologic and geomorphic data collection and evaluation for compliance with state and federal permits. Designed and secured permits for sedimentation ponds, diversion ditches, and alternate sediment control structures in Wyoming and Arkansas. Developed pre-mining geomorphic baseline data for three Wyoming mining properties for use in development of predicted geomorphically stable post mining topographies.

**Publications**

Jones, M. K., Mickelson, B. J., Chamseddin, H. K., and L. R. Freeberg. 1990. "A Practical Application for Unsaturated Zone Fate and Transport Modeling Using SESOIL for Risk Assessments at Fuel-Contaminated Sites." Presented at NWWA Fourth National Outdoor Action Conference.

Henry, D. K., Mickelson, B. J., and D. Ohnstad. 1990. "Well Logging and Depth Specific Sampling in a Producing Water Supply Well as an Aid in Identifying Contaminant Stratification." Presented at NWWA Fourth National Outdoor Action Conference.

# EXHIBIT 4

NOV 07.02 ∗C67100

1   DUANE C. MILLER (State Bar No. 57812)
    VICTOR M. SHER (State Bar No. 96197)
2   **MILLER, SHER & SAWYER**
    A Professional Corporation
3   100 Howe Avenue, Suite S-120
    Sacramento, CA 95825
4   Telephone: (916) 924-8600
    Facsimile: (916) 924-3426
5
    FRED BARON (Admitted in Texas)
6   SCOTT SUMMY (Admitted in Texas)
    **BARON & BUDD, P.C.**
7   3102 Oak Lawn Avenue, Suite 1100
    Dallas, Texas 75219-4281
8   Telephone: (214) 521-3605
    Facsimile: (214) 523-9159
9
    [Other Counsel Listed on
10  Signature Page]
11  Attorneys for Plaintiff
    City of Santa Monica
12
               SUPERIOR COURT OF THE STATE OF CALIFORNIA
13
                  IN AND FOR THE COUNTY OF ORANGE
14

15  CITY OF SANTA MONICA,            )   Case No. 01CC04331
                                     )
16              Plaintiff,           )   (Assigned to:   Hon. Stephen J.
                                     )   Sundvold)
17       v.                          )
                                     )   **DECLARATION OF ANTHONY**
18  SHELL OIL COMPANY; SHELL OIL     )   **BROWN REGARDING MOTION FOR**
    PRODUCTS COMPANY; SHELL          )   **APPROVAL OF GOOD FAITH**
19  PIPELINE CORPORATION; CHEVRON    )   **SETTLEMENT**
    CORPORATION; CHEVRON U.S.A. INC.;)
20  CHEVRON PRODUCTS COMPANY;        )   Complaint Filed: June 19, 2000
    ATLANTIC RICHFIELD COMPANY;      )   Trial Date:      None Assigned
21  MOBIL OIL CORPORATION; EXXON     )
    MOBIL CORPORATION; TOSCO         )   Hearing Date:    January 17, 2003
22  CORPORATION; ULTRAMAR INC.;      )   Time:            9:30 a.m.
    TEXACO REFINING AND MARKETING    )   Department:      CX102
23  INC.; EQUILON ENTERPRISES LLC;   )
    ARCO CHEMICAL COMPANY;           )
24  LYONDELL CHEMICAL COMPANY;       )
    EXXON CORPORATION; UNOCAL        )
25  CORPORATION; EQUILON PIPELINE    )
    COMPANY LLC; and DOES 1 through 600, )
26  inclusive,                       )
                                     )
27              Defendants.          )              G 009515
                                     )
28  _____)

                                    1

LANLIB1 VEW
834388 01

1    I, ANTHONY BROWN, DECLARE:

2    1.    I am a principal in Komex H2O Science, Inc., a California corporation,

3    and Chief Operating Officer and Director of US operations for its parent company Komex

4    Environmental Ltd., (Komex) a Canadian corporation.  Komex is a global environmental

5    and water resources consulting firm with over 350 staff in more than 20 offices worldwide.

6    I make this declaration based on personal knowledge.  If called to testify to the matters set

7    out below, I could and would do so competently.

8    2.    My educational and professional background are set forth in my

9    Curriculum Vitae, a copy of which is attached to this Declaration as Exhibit 1 and

10   incorporated as if set forth in full here.  My firm generally, and I specifically, have

11   extensive experience evaluating, investigating and remediating soil and groundwater

12   contamination involving many different contaminants in a variety of contexts, including in

13   connection with releases of gasoline to the subsurface.  In particular, we have extensive

14   experience with the contamination of soil, groundwater and drinking water supplies by

15   methyl tertiary butyl ether (MTBE), and related compounds such as tertiary butyl alcohol

16   (TBA), and all facets of the contaminant-related investigation, remediation, and treatment

17   of those compounds.

18   3.    I have been designated as an expert in several court cases (as listed on

19   my CV), and have been qualified as an expert witness on these and related topics at trial as

20   well.  Earlier this year my expert testimony concerning investigation and remediation of

21   MTBE contamination was presented to the jury in *South Tahoe Public Utility District v.*

22   *Arco, et al.* (San Francisco Superior Court), a case involving a public water supplier whose

23   drinking water aquifers were contaminated with MTBE released from retail gasoline

24   stations.  In addition, I have been designated as an expert in cases for the following

25   communities or public water suppliers impacted by MTBE contamination: the town of

26   Glenville, California; the Great Oaks Water Company;  and the town of East Alton, Illinois.

27   I was also designated as an expert by the Orange County District Attorney's Office in a

28   case against ARCO involving MTBE.  I also provided expert testimony to the Court in *In*

2.

1   *re MTBE Litigation*, a case involving MTBE contamination that was pending in federal

2   court in New York (my testimony was proffered in connection with plaintiffs' motion for

3   class certification). I have also briefed Federal, State and local elected officials, White

4   House advisors, Federal and State environmental agencies, and many professional

5   organizations on the impact of MTBE on drinking water supplies, and the investigation,

6   remediation and treatment of MTBE contaminated soil, groundwater and drinking water.

7          4.   My firm was retained jointly by the City of Santa Monica and

8   ExxonMobil Corporation to conduct a detailed investigation of contamination, and to

9   design, build and operate soil and groundwater remediation systems, and a drinking water

10   treatment facility to address MTBE contamination in the City's Arcadia Well Field. This

11   facility is one of the first MTBE public drinking water treatment facilities in California to

12   obtain a permit from the California Department of Health Services (DHS) to deliver treated

13   drinking water to the public.

14          5.   Recently my firm and I were asked by plaintiff's counsel in this case to

15   review the portion of the scientific literature that addresses technologies to remove MTBE

16   and TBA contamination from drinking water (with particular emphasis on any studies

17   showing the costs associated with such treatment), to review existing site-specific data for

18   the Charnock well field and groundwater sub-basin, and to develop an estimate based on

19   the best current available information of the costs of a treatment facility to remove such

20   contaminants from groundwater pumped from the City's Charnock Well Field. In

21   connection with this work, individuals at Komex working under my supervision and I have

22   also reviewed and evaluated investigation, monitoring and remediation data submitted to

23   regulatory agencies by various companies in connection with their investigation and

24   monitoring of contamination in the Charnock Sub-basin.

25          6.   Komex and I developed an analysis of the likely cost of designing,

26   building, operating and maintaining a public drinking water treatment facility to remove

27   MTBE and TBA from water extracted by the City's Charnock Well Field, so that such

28   water can be delivered to the City's drinking water consumers. A true and correct copy of

3.

1    our analysis, "Treatment Feasibility Study for Restoration of the City of Santa Monica

2    Charnock Well Field" (the "Feasibility Study"), is attached to this Declaration as Exhibit 2

3    and incorporated by this reference as though set out in full here.  The Feasibility Study

4    accurately reflects my opinions and those of my staff who worked with me on this project.

5    The data and studies we reviewed and considered in reaching our conclusions and opinions

6    are listed in the Feasibility Study.

7                 7.       In my opinion, and as explained more thoroughly in the Feasibility

8    Study, a reasonable cost estimate for a drinking water treatment facility for the Charnock

9    Well Field ranges from a present value of approximately $240 million to a present value of

10   approximately $527 million.  The actual costs will depend on a variety of factors that are

11   the subject of ongoing studies and analyses.  For example, evaluations of the optimum

12   combination of treatment technologies for MTBE and TBA (in terms of effectiveness and

13   cost) will be refined based on the results of "pilot testing" to determine what technologies

14   and combined treatment systems work best to remove these compounds from actual

15   Charnock groundwater.  Millions of dollars have already been expended on such pilot

16   testing, by consultants to the American Petroleum Institute, individual oil companies,

17   government agencies, and academic institutions, and by my firm; however, additional site-

18   specific testing is required.  The outcome of such testing may affect both the capital costs

19   of the facility (that is, the costs associated with designing and building the plant), as well as

20   the costs of operating and maintaining the facility over time.  Similarly, estimates of the

21   necessary duration of treatment – which obviously determines the overall cost of operating

22   and maintaining the plant once built – may also be refined based on operational data once

23   treatment at the facility commences.  In addition, although there is a large volume of

24   monitoring data already collected in the Sub-basin, additional information about the amount

25   and extent of contamination in the aquifer, and subsequent groundwater flow and solute

26   transport computer modeling, may further refine estimates of the facility's costs.  However,

27   the characteristics of MTBE and TBA, as well as what is already known about the extent

28   and magnitude of the contamination, make clear that treatment duration will be measured in

4.

OCT.29.2002   3:41PM   'OMEX H2O SCIENCE                                          NO.200   P.2/2

1   decades, not years, and the range given (20 to 50 years) is reasonable (if not conservative)

2   for planning and costing purposes.

3           I declare under penalty of perjury that the foregoing is true and correct.

4   Executed this _29_ of October, 2002, at ___*Westminster*___, California.

5

6

7                                              _____
                                                ANTHONY BROWN
8

9   Other Counsel:
    Marsha Jones Moutrie, #69711
10  City Attorney
    Joseph Lawrence, #99039
11  Assistant City Attorney
    Carol E. Kurtz, #158956
12  Special Deputy City Attorney
    CITY OF SANTA MONICA
13  1685 Main Street
    Santa Monica, CA 90401-3295
14  Telephone: (310) 458-8336
    Facsimile: (310) 395-6727
15

16

17

18

19

20

21

22

23

24

25

26

27                                                              G 009519

28

LA\LIB11VL\M
834385 01

5.