# EXHIBIT 1



1  DAVID L. SCHRADER, State Bar No. 149638
   JOHN J. WASILCZYK, State Bar No. 78506
2  MORGAN, LEWIS & BOCKIUS LLP
   300 South Grand Avenue
3  Twenty-Second Floor
   Los Angeles, CA 90071
4  Telephone: (213) 612-2500
   Facsimile: (213) 612-2501
5
   WILLIAM K. DIAL, State Bar No. 41310
6  CHEVRON PRODUCTS COMPANY LAW DEPARTMENT
   6001 Bollinger Canyon Road
7  San Ramon, California 94583-2398
   Telephone: (925) 842-2642
8  Facsimile: (925) 842-3365
   Attorneys for Defendants ChevronTexaco Corporation,
9  Chevron U.S.A. Inc. and Chevron Products Company

10 [Additional Counsel for Moving Parties On Following Page]

11

12               SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                    IN AND FOR THE COUNTY OF ORANGE

14 | CITY OF SANTA MONICA, | Case No. 01CC04331 |
   | --- | --- |
15 | Plaintiff, | [Assigned for all purposes to the Honorable Stephen J. Sundvold] |
16 | vs. | **MEMORANDUM OF POINTS AND AUTHORITIES OF CHEVRONTEXACO CORPORATION; CHEVRON U.S.A. INC.; CHEVRON PRODUCTS COMPANY; EXXONMOBIL CORPORATION; THRIFTY OIL CO.; BEST CALIFORNIA GAS, LTD.; SHELL OIL COMPANY; SHELL OIL PRODUCTS COMPANY; SHELL PIPELINE CORPORATION; EQUILON ENTERPRISES LLC; EQUILON PIPELINE COMPANY LLC; AND TEXACO REFINING AND MARKETING INC. IN SUPPORT OF MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT [CCP § 877.6]** |
17 | SHELL OIL COMPANY; SHELL OIL PRODUCTS COMPANY; SHELL PIPELINE CORPORATION; CHEVRON CORPORATION; CHEVRON U.S.A. INC.; CHEVRON PRODUCTS COMPANY; ATLANTIC RICHFIELD COMPANY; MOBIL OIL CORPORATION; EXXONMOBIL CORPORATION; TOSCO CORPORATION; ULTRAMAR INC.; TEXACO REFINING AND MARKETING INC.; EQUILON ENTERPRISES LLC; ARCO CHEMICAL COMPANY; LYONDELL CHEMICAL COMPANY; EXXON CORPORATION; UNOCAL CORPORATION; EQUILON PIPELINE COMPANY LLC; and DOES 1 through 600, inclusive, | |
   | Defendants | Complaint Filed: June 19, 2000<br>Trial Date:    None Set<br><br>Hearing Date: December 19, 2003<br>Time:        9:30 a.m.<br>Dept:        CX-105<br>Judge: Honorable Stephen J. Sundvold |
   | AND OTHER CROSS-COMPLAINTS | |

1-LA/742489.1

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
DETERMINATION OF GOOD FAITH SETTLEMENT [CCP § 877.6]**



1  ROY G. WUCHITECH, State Bar No. 54846
   JEFFREY J. PARKER, State Bar No. 155377
2  LORI OSMUNDSEN, State Bar No. 211964
   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
3  A Limited Liability Partnership
   Including Professional Corporations
4  333 South Hope Street, 48th Floor
   Los Angeles, California 90071-1448
5  Telephone: (213) 620-1780
   Facsimile: (213) 620.1398
6  Attorneys for Defendants ExxonMobil Corporation, successor by merger to
   ExxonCorporation, and Mobil Oil Corporation
7
   MARK B. GILMARTIN, State Bar No. 98384
8  LAW OFFICES OF MARK B. GILMARTIN
   233 Wilshire Boulevard, Suite 350
9  Santa Monica, California 90401
   Telephone: (310) 395-7333
10 Facsimile: (310) 395-7573
   Attorneys for Cross-Defendants
11 Thrifty Oil Co. and Best California Gas, Ltd.
12
   RONALD L. OLSON, State Bar No. 044597
13 STEPHEN M. KRISTOVICH, State Bar No. 082164
   CYNTHIA L. BURCH, State Bar No. 086020
14 MICHAEL R. BARSA, State Bar No. 190643
   MUNGER, TOLLES & OLSON LLP
15 355 South Grand Avenue
   Thirty-fifth Floor
16 Los Angeles, California 90071
   Telephone:  (213) 683-9100
17 Facsimile:  (213) 687-3702
18 Attorneys for Defendant Shell Oil Company, Shell Oil Products Company, Shell Pipeline
   Corporation, Equilon Enterprises LLC, Equilon Pipeline Company LLC and Texaco Refining and
19 Marketing Inc.

20

21

22

23

24

25

26

27

28

1-LA/742489.1

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT [CCP § 877.6]**



ChevronTexaco Corporation (formerly Chevron Corporation), Chevron U.S.A. Inc., and Chevron Products Company (collectively "Chevron"); ExxonMobil Corporation ("ExxonMobil"); Shell Oil Company, Shell Oil Products Company, Shell Pipeline Corporation, Equilon Enterprises LLC, Equilon Pipeline Company LLC and Texaco Refining And Marketing Inc. (collectively "Shell"); Thrifty Oil Co. ("Thrifty") and Best California Gas, Ltd. ("Best") respectfully submit this Memorandum of Points and Authorities in support of their motion for good faith settlement determination, pursuant to California Code of Civil Procedure section 877.6.

## I.   INTRODUCTION

This motion seeks approval of a $312.85 million settlement, which was reached following 19 months of mediation and negotiation by the settling parties. The subject settlement provides for a substantial cash payment to plaintiff City of Santa Monica (the "City"), restoration of the City's drinking water supply, and avoidance of further wasteful litigation between these parties. Specifically, the settlement between the City, Shell, Chevron, ExxonMobil, Thrifty, and Best provides for $92.5 million in nonrefundable payments to the City and guaranteed funding by Shell, Chevron and ExxonMobil for construction and operation of a water treatment facility (the "guarantee" portion), with a small portion of that funding to be paid from other settlements or a final judgment against any remaining defendants.

The water treatment facility will enable the City to restore use of its drinking water wells that have been shut down as a result of the gasoline releases that are the subject of this lawsuit.[1] The amount that Shell, Chevron and ExxonMobil will ultimately pay through their commitment to fund the treatment facility will depend on the actual treatment costs. It *may* also be reduced somewhat by the City's recovery from the remaining, non-settling defendant, Lyondell Chemical Company ("Lyondell"), depending upon the size of that recovery. The obligation to fund the water treatment facility has been valued by the settling parties at $220.05 million – on top of the

---

[1] The Settlement Agreement and related documents are attached to the Declaration of David L. Schrader ("Schrader Decl.") as Ex. 1. The $92.5 million case payments are allocated as follows: Shell - $62.5 million; Chevron, Thrifty and Best - $20 million; and ExxonMobil - $10 million. [*See* Settlement Agreement at ¶ 3.4.1.]

$92.5 million initial cash payment by the settling defendants. In addition, Chevron has agreed to waive a potential counter-claim valued at $300,000, bringing the total value of this settlement to $312.85 million. This extraordinary settlement is contingent upon a good faith determination by this Court.

This settlement plainly meets the standard for good faith set forth by the California Supreme Court:

- The settlement and documentation thereof were intensely negotiated in a series of mediations before retired Superior Court Judges Keith Wisot and Daniel Weinstein, which began in March 2002 and lasted until November 2003.

- The nonrefundable $92.5 million payments by settling defendants, considered alone, are well within the ballpark of their proportionate liability. One of the settling defendant's expert consultants estimates three likely total treatment costs to have an average $92.6 million present value. The value agreed upon by the settling defendants for the guaranteed commitment to fully fund the treatment facility, plus the initial cash payment, bring the total settlement value to over $300 million – more than triple what one defense expert opines it should actually cost for complete remediation.

- The guarantee by Shell, Chevron and ExxonMobil to fund a wellhead treatment facility assures that the City's five water wells will be returned to useful production, regardless of the outcome of this litigation.

- With this settlement, the City has resolved its claims against all oil company defendants who operated gasoline stations in the Charnock Sub-Basin. The only remaining non-settling defendant is Lyondell – the manufacturer of MtBE, the primary gasoline constituent that impacted the Charnock Wellfield. Once this settlement is approved, Lyondell will be entitled to an offset credit of $312.85 million against any judgment.

The strong public policies favoring settlements are exemplified by this settlement. The settling defendants have stepped up to the plate to resolve the serious and substantial damages

1-LA/742489.1                                             2
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
DETERMINATION OF GOOD FAITH SETTLEMENT [CCP § 877.6]**



alleged by the City to its drinking water supply.  For the reasons set forth below, and in the declarations and evidence supporting this motion, the settling defendants respectfully urge the Court to grant this motion and find the settlement in good faith.

## II.   BACKGROUND

This lawsuit arises out of the City's discovery in 1995 that methyl tertiary butyl ether ("MtBE") was detected in some of its water supply wells in the Charnock Wellfield, which supplied approximately 40% of the City's drinking water.  MtBE was a chemical added to gasoline by a California refiner as early as 1986 and was a component of a large percentage of gasoline marketed in Southern California by the end of 1992.  MtBE, as an ether, dissolves more readily into water than other components of gasoline.  Thus, when gasoline containing MtBE is leaked or spilled into the soil and percolates down to groundwater, some of the MtBE will dissolve in the groundwater and disperse.

By June 1996, the City shut down its Charnock Wellfield because of the levels of MtBE found in four of its five wells.  The City, with the help of certain governmental agencies, identified a number of service stations and other facilities where gasoline had been stored, or was being stored, in underground storage tanks within a 1.25 mile radius of the Charnock Wellfield, and two underground gasoline pipelines within this area, as potential sources of the MtBE impacting the wellfield.  In 1997, Chevron and Shell, later joined by ExxonMobil, entered into a settlement agreement whereby Chevron, Shell and ExxonMobil agreed to provide the City with replacement water and investigate the sources and extent of the gasoline releases in the Charnock groundwater Sub-Basin.  In 2000, that agreement terminated.

After the prior cooperative agreements with the City terminated, the City commenced this lawsuit on June 19, 2000, against Shell, Chevron, Exxon-Mobil, several other refiners and marketers of gasoline affiliated with facilities identified within the investigation area, and Lyondell, a manufacturer of MtBE.  The City's lawsuit seeks compensatory and punitive damages under various theories, including nuisance, trespass, negligence, and strict product liability.  The

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT [CCP § 877.6]**



City subsequently obtained an assignment of similar claims from Southern California Water Company ("SCWC") and is prosecuting those assigned claims here.[2]

Chevron, ExxonMobil, Thrifty and Best previously negotiated a sliding scale settlement with the City and filed a motion for good faith determination in November 2002. While that motion was pending, an agreement was reached between Shell, the City and the prior settling defendants. Shell's participation in this settlement agreement: (i) substantially increases the up front payment to the City, (ii) substantially reduces the potential sliding scale component of the settlement by reducing the potential benefit to the settling defendants of any future recoveries by the City, and (iii) eliminates the veto provision by the settling defendants over future settlements, which was the subject of much of the challenges made by non-settling defendants to the prior sliding scale settlement that did not include Shell. The proposed settlement, once approved by the Court as having been made in good faith, will resolve all claims of the City and SCWC against Shell, Chevron, ExxonMobil, Thrifty, and Best, and perhaps most importantly, will assure that the City will again be able to provide drinking water from its Charnock Wellfield wells.

### III.   ARGUMENT

**A.   Code Of Civil Procedure § 877.6 Permits The Settling Parties To Obtain A Determination That A Settlement Was Made In Good Faith.**

Code of Civil Procedure § 877.6(a)(1) states:

> "Any party to an action in which it is alleged that two or more parties are joint tortfeasors . . . shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors."

---

[2] SCWC also operated drinking water wells that drew water from the same aquifer as the City's Charnock Wellfield. SCWC's wells were shut down as a precaution against becoming affected by MtBE. SCWC filed suit on April 24, 2001, against the same defendants in the City's action, as well as additional defendants, including Thrifty and Best. SCWC subsequently sued the City over disagreements about SCWC's and the City's respective water rights in the Charnock Sub-Basin. As part of the resolution of that dispute, the City has now acquired all of SCWC's claims asserted in its lawsuit against Shell, Chevron, ExxonMobil, Thrifty, Best and other parties, and has amended its complaint in this action to incorporate all of those claims.



1  Pursuant to Code of Civil Procedure § 877.6(b), the settling parties here have supplied the Court

2  with abundant evidence upon which to base its determination.[3]

3      California courts have recognized the strong policy in favor of settlements, noting:

> Except in rare cases of collusion or bad faith . . . a joint tortfeasor should be permitted to negotiate settlement of an adverse claim according to his own best interests, whether for his financial advantage, or for the purchase of peace and quiet, or otherwise. His good faith will not be determined by the proportion his settlement bears to the damages of the claimant. For the damages are often speculative, and the probability of legal liability therefor is often uncertain or remote.

9  *Stambaugh v. Superior Court*, 62 Ca1.App.3d 231, 238 (1976), cited with approval in *Tech-Bilt*,

10  *Inc. v. Woodward-Clyde & Assoc.*, 38 Cal.3d 488, 499 (1985). In *Tech-Bilt*, the California

11  Supreme Court announced the standard for determining whether a settlement was made in good

12  faith, noting that an appropriate definition of good faith "would enable the trial court to inquire,

13  among other things, whether the amount of the settlement is within the reasonable range of the

14  settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries." 38

15  Cal.3d at 499.

16      The California Supreme Court identified certain factors to be taken into consideration in

17  determining whether a settlement was arrived at in good faith. The factors pertinent to this

18  settlement are:

19      1.    a "rough approximation" of the plaintiff's total recovery from all defendants and

20          the settling defendants' proportionate share of liability for that recovery;

21      2.    the amount paid by the settling defendants in settlement; and

22      3.    a recognition that a settling defendant should pay less in settlement than if that

23          defendant were found liable after a trial.

24  *Tech-Bilt*, 38 Cal.3d at 499.

25      It is not necessary for the court to make a precise estimation of the size of the plaintiff's

26  total claim, nor the settling defendant's liability exposure. Rather, it is sufficient that the

---

[3] Because this settlement contains a "sliding scale recovery agreement," the settling parties also complied with the notice requirements of CCP § 877.5 on November 20, 2003.



1 compensation paid by the settling defendant is "within the ballpark" of that defendant's
2 proportionate liability. *Tech-Bilt*, 38 Ca1.3d at 499-501. Any party asserting lack of good faith
3 must demonstrate "that the settlement is so far 'out of the ballpark' in relation to these factors as
4 to be inconsistent with the equitable objectives of the statute." *Id.* at 499-500. Since *Tech-Bilt*,
5 the California Supreme Court has confirmed that it "is quite proper for a settling defendant to pay
6 less than his proportionate share of the anticipated damages. What is required is simply that the
7 settlement not be grossly disproportionate to the settlor's fair share." *Abbott Ford, Inc. v. Super.*
8 *Ct.*, 43 Cal.3d 858, 874-75 (1987). This settlement meets the standards set by the California
9 Supreme Court.

10     **B.**    **Like Other Settlements, Sliding Scale Settlements Are Presumptively Valid.**

11     The California legislature has specifically recognized the validity of sliding scale
12 settlements. *See* Cal. Code Civ. Pro. § 877.5. California courts have held that the "statute
13 authorizing [sliding scale settlements] is reasonably related to the rational goal of promoting
14 settlements of lawsuits, and such agreements, like other settlements, are presumptively valid."
15 *Rogers & Wells v. Super. Ct.*, 175 Cal.App.3d 545, 554 (1985). Only 10% of any future
16 recoveries by the City will be paid into the Operating Account (thereby reducing the settling
17 defendants' obligations) and only if over $40 million total is recovered by the City from other
18 sources.[4]

19     The leading case on confirmation of sliding scale settlements is *Abbott Ford*. 43 Cal.3d
20 858. In that case, defendant Abbott Ford and its insurer provided interest-free loans and
21 guaranteed plaintiff a recovery of $3 million, with a dollar for dollar reduction of that amount
22 from recoveries plaintiff made against co-defendants Ford Motor Company and Sears-Roebuck.
23 The California Supreme Court recognized that, by the terms of the settlement, Abbott Ford might
24 ultimately not bear <u>any</u> liability to plaintiffs. 43 Cal.3d at 866. Nevertheless, the Court approved
25 the settlement as being in good faith and consistent with the *Tech-Bilt* standard and strong public

---

[4] The Settlement Agreement provides that the first $18 million recovered by the City shall be paid into the Operating Account. Existing settlements with other defendants have already reached that level. The next $22 million goes directly to the City.

1-LA/742489.1               6

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT [CCP § 877.6]**



policies favoring settlements. The California Supreme Court also recognized "that affording an injured person prompt payment of funds for his losses serves a very important state interest." *Id.* at 885. The settlement now before this Court does just that. In addition, unlike *Abbott Ford*, there is no chance of complete reimbursement of settlement amounts paid by the settling defendants here. Settling defendants will pay not only a nonrefundable $92.5 million, but will also pay the bulk of the treatment costs (more than 90%) under any scenario.

    **C.  This Settlement Meets All Applicable *Tech-Bilt* Criteria And Is Valid Under *Abbott Ford*.**

In this settlement, the parties have agreed on a fixed, nonrefundable payment of $92.5 million to the City. In addition, Shell, Chevron and ExxonMobil have agreed to fund and guarantee the full Treatment Facility Costs including the construction, operation, and maintenance of a treatment facility that will allow the City to restore production of drinking water from its Charnock Wellfield. [*See* Settlement Agreement, ¶¶ 3.4 and 3.7.] These Treatment Facility Costs also include an annual fee to cover internal charges of the City, the acquisition costs for any additional real property needed for the Treatment Facility and the costs of any replacement water. [*Id.* at ¶¶ 3.7.3, 3.7.5 and 3.7.6.] The Treatment Facility Costs will be paid from an Operating Account funded 70% by Shell, 20% by Chevron and 10% by ExxonMobil. [*Id.* at ¶¶ 3.13-3.14.]

The Settlement Agreement provides for a small contribution to the Operating Account from settlements or final judgments with any other defendants. Specifically, the first $18 million of other settlements shall be paid into the Operating Account; the next $22 million shall be paid to the City; and any settlements or judgements above $40 million shall be split with 10% to the Operating Account and 90% to the City. [*Id.* at ¶ 3.12.3]. The evidence filed herewith demonstrates that this settlement was reached in good faith through mediation and provides for compensation to the City from Shell, Chevron, ExxonMobil, Thrifty, and Best that is well within "the ballpark" of (i.e., not grossly disproportionate to) their potential liability exposure. The evidence further demonstrates that the value agreed to by the City, Shell, Chevron, and



12/01/03
08:39 PM ET

1   ExxonMobil for the guarantee portion of the settlement is reasonable and fair to the interests of

2   the non-settling defendants.

### 1. The Value Of This Settlement "Roughly Approximates" The Proportionate Liability Of The Settling Defendants In Comparison With The City's Approximate Total Recovery.

Based on an engineering analysis and cost estimate, the City's consultant previously opined that the cost to restore the City's drinking water resource through production of its Charnock Wellfield wells and treatment is a range between $240 to $527 million. [*See* Declaration of Anthony Brown ("Brown Decl.") ¶¶6-7, filed November 4, 2002 as part of the prior good faith settlement motion by Chevron, ExxonMobil, Thrifty and Best.] This represents the range of compensatory damages that the City would have claimed at trial against defendants.

The City has already recovered $4.075 million from Conoco, Inc., $9.75 million from Atlantic Richfield Company and $4.5 million from Ultramar, Inc. in settlements which were approved by the Court as being in good faith and fair to all of the other parties. In addition, settlements not yet approved by the Court have been negotiated with Tosco Corporation and Unocal Corporation. In this settlement, Shell, Chevron, ExxonMobil, Thrifty, and Best are paying $92.5 million, plus Shell, Chevron and ExxonMobil are guaranteeing payment of the entire reasonable costs of constructing and operating the treatment plant. As required by California law, *Abbott Ford*, 43 Cal.3d at 877, Shell, Chevron, ExxonMobil, and the City have agreed this guarantee of future treatment has a value of $220.05 million. When added to the nonrefundable $92.5 million nonrefundable payment and other consideration, the total value of this settlement is $312.85 million.[5] This amount is well within the ballpark of the proportional fair share of the liability of Shell, Chevron, ExxonMobil, Thrifty, and Best, for several reasons:

- It is more than *thirty times* the $9.25 million amount paid in the next highest settlement by defendant, Atlantic Richfield Company, Inc., which has already been

---

[5] [*See* Settlement Agreement at ¶¶ 3.4, 3.7, 3.12, 3.14, 3.16] Other non-monetary "consideration" provided for has no quantifiable value. [See Declaration of Martin DiMezza at ¶ 6 previously filed November 4, 2002.]

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT [CCP § 877.6]**

1 determined to be in good faith. In fact, this settlement is valued at twelve times
2 more than the total combined other settlements.
3 • While there has been much dispute over the technical evidence developed during
4 the extensive investigation of all of the identified potential sources of the MtBE
5 that impacted the Charnock Wellfield, as analyzed by the U.S. EPA and qualified
6 experts in hydrogeology and transport in groundwater, none of that matters here,
7 given that Shell, Chevron, ExxonMobil, Thrifty, and Best, are paying
8 compensation in settlement that exceeds what ExxonMobil's experts think it will
9 cost for full remediation treatment and almost equals the average of the City's
10 potential recovery at trial (not including any punitive damages) based on the City's
11 range of the estimated overall cost of the treatment facility.

**2. The Total Value To The City From This Settlement Is In The Ballpark Of The Settling Defendants' Proportionate Share Of Liability.**

Shell, Chevron, ExxonMobil, Thrifty, and Best have agreed to step up to the plate and settle this matter, providing the City with a guaranteed resolution to restore its wellfield. Substantial data has been gathered concerning the MtBE found in the subsurface beneath the Shell, ExxonMobil, Mobil, Chevron, Thrifty, and Best sites. Two respected experts in hydrogeology and contaminant transport in groundwater, David B. McWhorter and Thomas F. Maguire, reviewed this data and previously provided declarations to this Court in November 2002 in support of the prior settlement motion. Shell, in opposition to that motion, filed a declaration by its hydrogeology expert, Daniel B. Stephens. None of the technical disagreements between these experts matter in consideration of this settlement, because Shell, Chevron and ExxonMobil have agreed in settlement to split the Treatment Facility Costs between them as follows:

        Shell        70%

        Chevron    20%

        ExxonMobil   10%.

Since settlements with all other refiner defendants have either been approved by this Court or are in the process of being submitted, the complicated and difficult causation issues need not be



E-SERVED
12/01/03
08:39 PM ET
01-CC-04331

examined further in order to approve this settlement. The $312.85 million value of the compensation agreed to by the settling parties greatly exceeds the City's total recovery of $23.325 million in this case to date from all other defendants. In short, even assuming these settling defendants have most of the liability exposure, the $312.85 million value of the settlement is more than reasonable.

**D. The Value Of The Guarantee Portion Of The Settlement Is $220.05 Million, And The Value Of The Entire Settlement Is $312.85 Million.**

As a product of negotiation between litigation adversaries, the settling parties valued the guarantee portion of the settlement at $220.05 million. They reached this value by giving equal weight to the cost estimates by the City's expert and the defendant's expert. This $220.05 million agreed upon value, plus $92.8 million (i.e., $92.5 million for the cash payments and $300,000 for the waiver of Chevron's counter-claim), constitutes the reduction or "credit" against any judgment that the non-settling defendants will obtain once this settlement is approved. *See Abbott Ford*, 43 Cal.3d at 873. As the California Supreme Court stated in *Abbott Ford*, "[w]e believe that the value placed on the sliding scale agreement by the parties to the agreement - assuming it meets *Tech-Bilt* standards – is the proper amount to set off under Section 877." *Abbott Ford*, 43 Cal.3d at 877, fn. 21. The "court should not be burdened with the obligation to determine the *actual* value . . . by use of actuarial or other valuation methods." *Id*. at 879 (emphasis in original). Since the "plaintiff and the settling defendant are likely to have somewhat different, and somewhat conflicting interests in placing a value on the agreement . . . a joint valuation by the plaintiff and the settling defendant should generally produce a reasonable valuation." *Id*. at 879. That is precisely what has occurred in this matter.

Analysis of two distinct cost projections support the $220.05 million value assigned by the parties to the guarantee portion of the settlement as a reasonable value squarely within the range of possible values. First, Anthony Brown of Komex (the City's expert consultants) has estimated the total Treatment Facility Costs at between $240 million and $527 million and testified that equal probability should be assigned to each end of the range. [Brown Deposition, 46:19-50:6.] Averaging his estimates produces an average Treatment Facility Cost of $383.5 million. Second,



E-SERVED 12/01/03 08:39 PM ET 01-CC-04331

Barbara Mickelson, a consultant for ExxonMobil, has also studied the treatment technology alternatives closely and believes complete treatment can be achieved for much lower costs. Mickelson estimates the average total Treatment Facility Costs to be $92.6 million present value. [Declaration of Barbara Mickelson, ¶¶19.]  Averaging Brown's $383.5 million estimated cost with Mickelson's $92.6 million estimated cost renders an average estimated cost of $238.05 million.  From that amount, the $18 million contribution to the Operating Account from settlements with other defendants, which have already been achieved, was subtracted as the portion of the costs paid through other settlements.  This results in a final value of $220.05 million for the guaranteed Treatment Facility Costs.  The settling parties did not reduce the value by potential recovery from Lyondell, given the probability that any such recovery will not reduce the settling defendants' contribution to the treatment facility costs.

While the approaches to estimating the remediation costs may vary, as would be expected, as the California Supreme Court has recognized in *Abbott Ford*, 43 Cal.3d at 879, fn. 23, these alternative approaches each confirm that the value agreed to by the settling parties of $220.05 million is fair and appropriate.

## IV.   CONCLUSION

Through this settlement, Shell, Chevron, ExxonMobil, Thrifty, and Best have assured the City and its residents that they will obtain clean and safe drinking water, regardless of what happens in this lawsuit.  The total compensation offered to the City in this settlement valued at $312.85 million is well within the ballpark of the proportional liability of these settling defendants.  Approval of this settlement will not give the settling defendants any unfair advantage, nor result in any undue prejudice to any non-settling defendant.  On the contrary, the non-settling defendants will have an aggregate "credit" or offset of at least $330.675 million - $312.85 million from this settlement, plus $17.825 million from the previously approved settlements with Conoco, Atlantic Richfield Company and Ultramar.  Therefore, Shell, Chevron, ExxonMobil, Thrifty, and Best respectfully request that the Court issue an order determining this settlement was entered into in good faith and assigning a total value of $312.85 million.

| | | |
|---|---|---|
| 1 | DATED:  December ___, 2003 | MORGAN, LEWIS & BOCKIUS LLP |

By_____
David L. Schrader
Attorneys for Defendants ChevronTexaco Corporation,
Chevron U.S.A. Inc. and Chevron Products Company

DATED:  December ___, 2003          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By_____
Roy G. Wuchitech
Attorneys for Defendant
ExxonMobil Corporation, successor by merger to Exxon
Corporation, and Mobil Oil Corporation

DATED:  December ___, 2003          LAW OFFICES OF MARK B. GILMARTIN

By_____
Mark B. Gilmartin
Attorneys for Cross-Defendants
Thrifty Oil Co. and Best California Gas, Ltd.

DATED:  December ___, 2003          MUNGER, TOLLES & OLSON LLP

By_____
Stephen M. Kristovich
Attorneys for Defendant Shell Oil Company, Shell Oil
Products Company, Shell Pipeline Corporation, Equilon
Enterprises LLC, Equilon Pipeline Company LLC
Texaco Refining and
Marketing Inc.



## PROOF OF SERVICE

I, Lisa M. Wright, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 300 South Grand Avenue, Twenty-Second Floor, Los Angeles, CA 90071-3132. On December 1, 2003, I served the within documents:

**MEMORANDUM OF POINTS AND AUTHORITIES OF CHEVRONTEXACO CORPORATION; CHEVRON U.S.A. INC.; CHEVRON PRODUCTS OMPANY; EXXON MOBIL CORPORATION; THRIFTY OIL CO.; BEST CALIFORNIA GAS, LTD., SHELL OIL COMPANY, SHELL OIL PRODUCTS COMPANY, SHELL PIPELINE CORPORATION, EQUILON ENTERPRISES LLC, EQUILON PIPELINE COMPANY AND TEXACO REFINING AND MARKETING INC. IN SUPPORT OF MOTION**

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☐ by placing the document(s) listed above in a sealed _____ envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a _____ agent for delivery.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

Please see attached service list

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on December 1, 2003, at Los Angeles, California.

Lisa M. Wright

1-LA/742489.1

13

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT [CCP § 877.6]**