# EXHIBIT 4

| | |
|---|---|
| 1 | DUANE C. MILLER (State Bar No. 57812) |
| | VICTOR M. SHER (State Bar No. 96197) |
| 2 | **MILLER, SHER & SAWYER** |
| | A Professional Corporation |
| 3 | 100 Howe Avenue, Suite S-120 |
| | Sacramento, CA 95825 |
| 4 | Telephone: (916) 924-8600 |
| | Facsimile: (916) 924-3426 |
| 5 | |
| 6 | FRED BARON (Admitted in Texas) |
| | SCOTT SUMMY (Admitted in Texas) |
| | **BARON & BUDD, P.C.** |
| 7 | 3102 Oak Lawn Avenue, Suite 1100 |
| | Dallas, Texas 75219-4281 |
| 8 | Telephone: (214) 521-3605 |
| | Facsimile: (214) 523-9159 |

NOV 07.02 *C 67 100

[Other Counsel Listed on Signature Page]

Attorneys for Plaintiff
City of Santa Monica

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF ORANGE

| | |
|---|---|
| CITY OF SANTA MONICA, | Case No. 01CC04331 |
| Plaintiff, | (Assigned to:  Hon. Stephen J. Sundvold) |
| v. | **DECLARATION OF ANTHONY BROWN REGARDING MOTION FOR APPROVAL OF GOOD FAITH SETTLEMENT** |
| SHELL OIL COMPANY; SHELL OIL PRODUCTS COMPANY; SHELL PIPELINE CORPORATION; CHEVRON CORPORATION; CHEVRON U.S.A. INC.; CHEVRON PRODUCTS COMPANY; ATLANTIC RICHFIELD COMPANY; MOBIL OIL CORPORATION; EXXON MOBIL CORPORATION; TOSCO CORPORATION; ULTRAMAR INC.; TEXACO REFINING AND MARKETING INC.; EQUILON ENTERPRISES LLC; ARCO CHEMICAL COMPANY; LYONDELL CHEMICAL COMPANY; EXXON CORPORATION; UNOCAL CORPORATION; EQUILON PIPELINE COMPANY LLC; and DOES 1 through 600, inclusive, | Complaint Filed: June 19, 2000 |
| | Trial Date:  None Assigned |
| | Hearing Date: January 17, 2003 |
| | Time: 9:30 a.m. |
| | Department: CX102 |
| Defendants. | |

G 009515

1.

I, ANTHONY BROWN, DECLARE:

1. I am a principal in Komex H2O Science, Inc., a California corporation, and Chief Operating Officer and Director of US operations for its parent company Komex Environmental Ltd., (Komex) a Canadian corporation. Komex is a global environmental and water resources consulting firm with over 350 staff in more than 20 offices worldwide. I make this declaration based on personal knowledge. If called to testify to the matters set out below, I could and would do so competently.

2. My educational and professional background are set forth in my Curriculum Vitae, a copy of which is attached to this Declaration as Exhibit 1 and incorporated as if set forth in full here. My firm generally, and I specifically, have extensive experience evaluating, investigating and remediating soil and groundwater contamination involving many different contaminants in a variety of contexts, including in connection with releases of gasoline to the subsurface. In particular, we have extensive experience with the contamination of soil, groundwater and drinking water supplies by methyl tertiary butyl ether (MTBE), and related compounds such as tertiary butyl alcohol (TBA), and all facets of the contaminant-related investigation, remediation, and treatment of those compounds.

3. I have been designated as an expert in several court cases (as listed on my CV), and have been qualified as an expert witness on these and related topics at trial as well. Earlier this year my expert testimony concerning investigation and remediation of MTBE contamination was presented to the jury in *South Tahoe Public Utility District v. Arco, et al.* (San Francisco Superior Court), a case involving a public water supplier whose drinking water aquifers were contaminated with MTBE released from retail gasoline stations. In addition, I have been designated as an expert in cases for the following communities or public water suppliers impacted by MTBE contamination: the town of Glenville, California; the Great Oaks Water Company; and the town of East Alton, Illinois. I was also designated as an expert by the Orange County District Attorney's Office in a case against ARCO involving MTBE. I also provided expert testimony to the Court in *In

2.

*re MTBE Litigation*, a case involving MTBE contamination that was pending in federal court in New York (my testimony was proffered in connection with plaintiffs' motion for class certification). I have also briefed Federal, State and local elected officials, White House advisors, Federal and State environmental agencies, and many professional organizations on the impact of MTBE on drinking water supplies, and the investigation, remediation and treatment of MTBE contaminated soil, groundwater and drinking water.

4. My firm was retained jointly by the City of Santa Monica and ExxonMobil Corporation to conduct a detailed investigation of contamination, and to design, build and operate soil and groundwater remediation systems, and a drinking water treatment facility to address MTBE contamination in the City's Arcadia Well Field. This facility is one of the first MTBE public drinking water treatment facilities in California to obtain a permit from the California Department of Health Services (DHS) to deliver treated drinking water to the public.

5. Recently my firm and I were asked by plaintiff's counsel in this case to review the portion of the scientific literature that addresses technologies to remove MTBE and TBA contamination from drinking water (with particular emphasis on any studies showing the costs associated with such treatment), to review existing site-specific data for the Charnock well field and groundwater sub-basin, and to develop an estimate based on the best current available information of the costs of a treatment facility to remove such contaminants from groundwater pumped from the City's Charnock Well Field. In connection with this work, individuals at Komex working under my supervision and I have also reviewed and evaluated investigation, monitoring and remediation data submitted to regulatory agencies by various companies in connection with their investigation and monitoring of contamination in the Charnock Sub-basin.

6. Komex and I developed an analysis of the likely cost of designing, building, operating and maintaining a public drinking water treatment facility to remove MTBE and TBA from water extracted by the City's Charnock Well Field, so that such water can be delivered to the City's drinking water consumers. A true and correct copy of

3.

our analysis, "Treatment Feasibility Study for Restoration of the City of Santa Monica Charnock Well Field" (the "Feasibility Study"), is attached to this Declaration as Exhibit 2 and incorporated by this reference as though set out in full here. The Feasibility Study accurately reflects my opinions and those of my staff who worked with me on this project. The data and studies we reviewed and considered in reaching our conclusions and opinions are listed in the Feasibility Study.

7. In my opinion, and as explained more thoroughly in the Feasibility Study, a reasonable cost estimate for a drinking water treatment facility for the Charnock Well Field ranges from a present value of approximately $240 million to a present value of approximately $527 million. The actual costs will depend on a variety of factors that are the subject of ongoing studies and analyses. For example, evaluations of the optimum combination of treatment technologies for MTBE and TBA (in terms of effectiveness and cost) will be refined based on the results of "pilot testing" to determine what technologies and combined treatment systems work best to remove these compounds from actual Charnock groundwater. Millions of dollars have already been expended on such pilot testing, by consultants to the American Petroleum Institute, individual oil companies, government agencies, and academic institutions, and by my firm; however, additional site-specific testing is required. The outcome of such testing may affect both the capital costs of the facility (that is, the costs associated with designing and building the plant), as well as the costs of operating and maintaining the facility over time. Similarly, estimates of the necessary duration of treatment – which obviously determines the overall cost of operating and maintaining the plant once built – may also be refined based on operational data once treatment at the facility commences. In addition, although there is a large volume of monitoring data already collected in the Sub-basin, additional information about the amount and extent of contamination in the aquifer, and subsequent groundwater flow and solute transport computer modeling, may further refine estimates of the facility's costs. However, the characteristics of MTBE and TBA, as well as what is already known about the extent and magnitude of the contamination, make clear that treatment duration will be measured in

1  decades, not years, and the range given (20 to 50 years) is reasonable (if not conservative)
2  for planning and costing purposes.
3       I declare under penalty of perjury that the foregoing is true and correct.
4  Executed this 29 of October, 2002, at _Westminster_____, California.

   *[signature]*
   ANTHONY BROWN

9  Other Counsel:
   Marsha Jones Moutrie, #69711
10 City Attorney
   Joseph Lawrence, #99039
11 Assistant City Attorney
   Carol E. Kurtz, #158956
12 Special Deputy City Attorney
   CITY OF SANTA MONICA
13 1685 Main Street
   Santa Monica, CA 90401-3295
14 Telephone: (310) 458-8336
   Facsimile: (310) 395-6727

G 009519

5.

DECLARATION OF ANTHONY BROWN REGARDING MOTION
FOR APPROVAL OF GOOD FAITH SETTLEMENT