EXHIBIT 4

SETTLEMENT AGREEMENT

## SETTLEMENT AGREEMENT

This Settlement Agreement, together with its Exhibits (hereinafter collectively referred to as the "Settlement Agreement"), is made as of the Effective Date (as defined below) by and between the Settling Defendants (as defined below), on the one hand, and the Settling Plaintiff (as defined below), on the other hand, regarding the settlement of all claims between them involving methyl tertiary butyl ether and Other Authorized Oxygenates (as defined below) asserted in the litigation matter captioned: <u>M & P Silver Family Partners II, A California Limited Partnership v. Amerada Hess Corporation, et al.</u> (originally captioned <u>Martin Silver, Pauline Silver, Laura Silver, John T. Kruso, Dennis A. Kruso, Stephen L. Kruso, Diane K. Crandall, and Adrian Kruso v. Amerada Hess Corporation, et al.</u>), U.S. District Court–Southern District of New York Case No. 04 Civ 4975 (SAS); U.S. District Court–Southern District of California Case No. 03 CV 2408 J (RBB), which is pending as part of the multi-district litigation matter captioned: *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, Master File No. 1:00-1898, MDL 1358 (SAS), M21-88 (S.D.N.Y.).

## I. RECITALS

WHEREAS, methyl tertiary butyl ether ("MTBE") was used as an octane enhancer and a component oxygenate of and additive to gasoline at certain times by certain manufacturers and refiners of gasoline;

WHEREAS, tertiary butyl alcohol ("TBA") may have been used as a component oxygenate of and additive to gasoline at certain times and can be a breakdown product of MTBE;

- 1 -

SETTLEMENT AGREEMENT

WHEREAS, certain plaintiffs have commenced and maintain lawsuits in various jurisdictions, including but not limited to the case covered by this Settlement Agreement, in connection with MTBE and/or TBA;

WHEREAS, in the aforereferenced lawsuits, certain plaintiffs have alleged that certain defendants are liable based, *inter alia*, on a commingled product theory of liability, and the court has not granted defendants' motions to dismiss such theory to date;

WHEREAS, Settling Defendants (as defined below), while not admitting any wrongdoing or conceding that any plaintiffs have suffered any cognizable injury due to MTBE and/or TBA, nonetheless wish to resolve the Settling Plaintiff's (as defined below) lawsuit and claims to avoid the costs, expense, and uncertainty inherent in the litigation;

WHEREAS, Settling Plaintiff also wishes to avoid the costs, expense, and uncertainty inherent in litigation,

NOW THEREFORE, the Settling Defendants and the Settling Plaintiff agree as follows:

## II. DEFINITIONS:

Terms used in this Settlement Agreement shall have the meanings defined below or as otherwise defined in this Settlement Agreement:

2.1      "Aquifer" means a sub-surface water bearing zone or zones that supplies or potentially supplies drinking water and is accessed or accessible by wells.

2.2      "BTEX" means benzene, toluene, ethyl benzene, trimethyl benzene, and all xylenes.

- 2 -

SETTLEMENT AGREEMENT

2.3   "Business Day" means any day other than (i) a Saturday or a Sunday or (ii) a day on which commercial banks in New York, New York are closed.

2.4   "Effective Date" means the last date on which this agreement is executed by a Settling Defendant or a Settling Plaintiff.

2.5   "Future Treatment Obligation" means a contractual obligation created by a certain agreement, dated March 12, 2008, and addendum F thereto (both of which are attached as Exhibit C hereto), to which the Settling Defendants are not parties. The term means the same here as it does in that agreement.

2.6   "Governmental Authority" means any government, any governmental, quasi-governmental or regulatory entity, department, commission, board, agency, authority, legislative body, or instrumentality, and any court, tribunal, or judicial body, in each case whether federal, state, or local.

2.7   "Maximum Contaminant Level" or "MCL" means the maximum permissible level of a contaminant in water which is delivered to any user of a public water system under Federal or California State law applicable to the Settling Plaintiff.

2.8   "MDL 1358" means the court and all of the cases before the court in the matter captioned: *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, Master File No. 1:00-1898, MDL 1358 (SAS), M21-88 (S.D.N.Y.).

2.9   "MTBE" means methyl tertiary butyl ether and any associated breakdown products thereof.

2.10   "Other Authorized Oxygenates" means any chemical compound certified for use as an oxygenate under the provisions of the Clean Air Act Amendments of 1990 or as a renewable fuel under the provisions of the Energy Policy Act of 2005, including but not limited

- 3 -

SETTLEMENT AGREEMENT

to, tertiary butyl alcohol ("TBA"), diisopropyl ether ("DIPE"), ethanol, tertiary amyl methyl ether ("TAME"), and ethyl tertiary butyl ether ("ETBE"), whether used in gasoline at any time as an octane enhancer, oxygenate pursuant to the requirements of the Clean Air Act Amendments of 1990, or for any other reason, and any associated breakdown products thereof.

2.11    "Public Water System" has the meaning prescribed by Section 1401(4) of the Safe Drinking Water Act ("SDWA") 42 U.S.C. § 300f(4), in effect as of the date of this Settlement Agreement.

2.12    "Release and Indemnity Agreement" means the Release and Indemnity Agreement in the form of the attached as Exhibit A hereto.

2.13    "Released Claims" shall have the meaning given in Paragraph 1 of Exhibit A hereto.

2.14    "Released Parties" shall have the meaning given in Paragraph 2 of Exhibit A hereto.

2.15    "Renewable Fuel" means ethanol and/or any other renewable fuel added to, or a component of, gasoline pursuant to the Energy Policy Act of 2005, regardless of when used in gasoline, past, present or future.

2.16    "Settling Defendants" means ExxonMobil Chemical Company, Inc. (individually and f/k/a Mobil Chemical Company); Exxon Mobil Corporation (f/k/a Exxon Corporation and d/b/a ExxonMobil Refining & Supply Company, Exxon Chemical U.S.A., and ExxonMobil Chemical Corporation); ExxonMobil Oil Corporation; and Mobil Corporation; including and on behalf of all parents, subsidiaries, affiliates, shareholders, former shareholders, officers, former officers, directors, former directors, principals, former principals, employees, former employees,

- 4 -

SETTLEMENT AGREEMENT

representatives, former representatives, assignees, successors, predecessors, and assigns of the above.

2.17   "Settling Plaintiff" means M & P Silver Family Partners II, A California Limited Partnership, in its individual and as applicable representative, governmental and/or sovereign capacity, or as trustee, including and on behalf of all successors, assigns, joint venturers, partners, parents, subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, predecessors-in-name, successors-in-name, beneficiaries, and each of its respective past, present, and future officers, directors, employees, shareholders, officials, board members, trustees, fiduciaries, agents, accountants, attorneys, insurance carriers, sureties, representatives, independent contractors, consultants, experts, advisors, and all persons in privity with it.

2.18   "Settlement Payment" means the total sum of                     This amount shall be kept confidential by the Settling Plaintiff.  Any distribution of the Settlement Payment among the Settling Plaintiff and its counsel is solely between them, and neither Settling Plaintiff nor its counsel shall look to Settling Defendants for payment after the Settlement Payment has been delivered to counsel for the Settling Plaintiff pursuant to this agreement.

2.19   "Stipulation of Dismissal" means the stipulation to be provided by the Settling Plaintiff dismissing with prejudice each of the Settling Defendants and Released Parties from any and all litigation subject to this Settlement Agreement with each party to bear its own costs, and which shall be in a form substantially similar to the attached Exhibit B or other appropriate form for the applicable court in which it is to be filed.

2.20   "TBA" means tertiary butyl alcohol and any associated breakdown products thereof.

- 5 -

SETTLEMENT AGREEMENT

2.21    "Treatment Protocol" means the protocol attached as addendum F to a certain agreement dated March 12, 2008, to which the Settling Defendants are not parties, a copy of which is attached hereto as Exhibit C for reference purposes only.

## III. REPRESENTATIONS AND WARRANTIES OF SETTLING PLAINTIFF

3.1    Settling Plaintiff acknowledges that its Counsel has recommended that these settlement terms are fair and reasonable and should be accepted.

3.2    Settling Plaintiff represents that no other person or entity has any interest in the Released Claims of Settling Plaintiff; that Settling Plaintiff has the sole right and exclusive authority to execute this Settlement Agreement, the Release and Indemnity Agreement, and receive the consideration specified in this Settlement Agreement; and that Settling Plaintiff has not sold, assigned, transferred, conveyed, otherwise disposed of, granted a security interest in or lien on any of the Released Claims within the scope of this Settlement Agreement.

3.3    Settling Plaintiff represents and warrants that the execution, delivery and performance by Settling Plaintiff of this Settlement Agreement, and the execution, delivery and performance by Settling Plaintiff of the Release and Indemnity Agreement and the Stipulations of Dismissal have been approved by all necessary corporate authority and Governmental Authority for Settling Plaintiff. Settling Plaintiff further represents and warrants that in connection with the execution, delivery, and performance of this Settlement Agreement, the Release and Indemnity Agreement, and the Stipulations of Dismissal, that Settling Plaintiff has complied with all provisions of the Constitution and laws of the respective state of Settling Plaintiff and the respective charter, rules, articles of incorporation, by-laws, regulations, and/or other documents setting forth the governance of Settling Plaintiff, that Settling Plaintiff has or has obtained the full power and authority to enter into this Settlement Agreement, the Release

- 6 -

SETTLEMENT AGREEMENT

and Indemnity Agreement, and the Stipulations of Dismissal, and that the execution, delivery, and performance by Settling Plaintiff, or on its behalf, does not and will not contravene or constitute a default under any provision of applicable law or regulation or of any agreement, judgment, injunction, order, decree, or contractual restriction binding on Settling Plaintiff or its property, and does not result in or require the creation or imposition of any lien, security interest, or other charge or encumbrance in favor of a third party upon or with respect to Settling Plaintiff's property.

3.4     Settling Plaintiff further represents and warrants that no further approval, authorization, consent, order, notice to, or filing or registration with, any Governmental Authority is required with respect to the participation by Settling Plaintiff in this Settlement Agreement and the execution, delivery to, and performance by Settling Plaintiff of this Settlement Agreement, the Release and Indemnity Agreement, and the Stipulations of Dismissal to which it is a party.

3.5     Settling Plaintiff also further represents and warrants that, without limiting the generality of the foregoing, Settling Plaintiff is not entitled to any immunity on any grounds (i) with respect to the performance of its obligations under this Settlement Agreement or the Release and Indemnity Agreement, or (ii) from any legal proceedings to enforce the obligations hereunder or under the Release and Indemnity Agreement, and the Stipulations of Dismissal, and to the extent anyone could ever argue otherwise, Settling Plaintiff agrees to waive any such immunity. Settling Plaintiff further represents and warrants that it will not challenge or contest the validity of this Settlement Agreement, or the Release and Indemnity Agreement and that Settling Plaintiff forever waives any defense to the validity of the Settlement Agreement, and the Release and Indemnity Agreement, including any defense based on any claim that the Settlement

- 7 -

SETTLEMENT AGREEMENT

Agreement, and/or the Release and Indemnity Agreement are ultra vires, violative of sovereign immunity, or otherwise void.

3.6     This Settlement Agreement, the Release and Indemnity Agreement, and the Stipulations of Dismissal to which Settling Plaintiff is a party have been or will be duly executed and delivered by an authorized representative of Settling Plaintiff and are, or upon execution will be, the valid and legally binding obligations of Settling Plaintiff, enforceable against the Settling Plaintiff in accordance with their respective terms.

3.7     Settling Plaintiff respectively represents and warrants that all of its Public Water System operating wells are listed on the attached Exhibit D, that Settling Plaintiff owns or operates the respective wells identified on the attached Exhibit D and is the real party in interest in connection with those wells with standing to bring the Released Claims and to compromise them.

3.8     Settling Plaintiff respectively represents and warrants that all of its Public Water System wells that have ever had a detected level of any amount of MTBE and/or TBA in a water sample from such well influent at any time are listed on the attached Exhibit E.

3.9     Settling Plaintiff respectively represents and warrants that all of its Public Water System operating wells that have never had a detected level of any amount of MTBE and/or TBA in a water sample from such well influent at any time are listed on the attached Exhibit F.

## IV.  OBLIGATIONS OF SETTLING PLAINTIFF

4.1     Within ten (10) days of its execution of this Settlement Agreement, the Settling Plaintiff shall cause to be delivered to Jeffrey Parker, Esq. at the location set forth in the Notice provisions herein, (i) a fully executed and binding Release and Indemnity Agreement substantially in the form of the attached Exhibit A, which must be valid and binding in all

- 8 -

SETTLEMENT AGREEMENT

respects as against the Settling Plaintiff on whose behalf the Release and Indemnity Agreement has been executed, and any actions by any Governmental Authority required for such Release and Indemnity Agreement to be valid and binding shall have occurred prior to the transmittal to . Settling Defendants and copies of such powers and/or authorizations shall be included with the Release and Indemnity Agreement and (ii) a fully executed Stipulation of Dismissal substantially in the form of the attached Exhibit B, which must be valid and binding in all respects as against the Settling Plaintiff on whose behalf such stipulation has been executed and which shall dismiss with prejudice the Settling Defendants and any Released Parties from all litigation covered by this Settlement Agreement. Settling Defendants will not file the Stipulation of Dismissal until delivery of the Settlement Payment, in accordance with Paragraph 6.1

4.2     Settling Plaintiff hereby agrees to reduce any judgment for any of the Released Claims that they might recover against any entity other than Settling Defendants by release and discharge in an amount, fraction, portion, or percentage necessary under applicable state or federal law to bar, eliminate, relieve, or satisfy claims against the Settling Defendants for contribution and/or indemnity to the fullest extent permitted by applicable state or federal law arising from any Released Claims, including any amount reallocated by applicable state or federal statute or common law to Settling Defendants resulting from uncollectibility and/or insolvency of other persons or entities determined to be at fault.

4.3     Settling Plaintiff shall execute any additional documentation that may be required under applicable state or federal law in order to give effect to this Settlement Agreement and the Release and Indemnity Agreement.

- 9 -

SETTLEMENT AGREEMENT

## V. REPRESENTATIONS AND WARRANTIES OF SETTLING DEFENDANTS

5.1     Each Settling Defendant represents and warrants that it is a corporation duly organized, validly existing and in good standing under the laws of the jurisdiction of its incorporation, or other entity validly existing and in good standing under the laws of the jurisdiction of its registration.

5.2     Each Settling Defendant represents and warrants that all required corporate or other approvals have been obtained, permitting such Settling Defendant's undersigned representative to execute this Settlement Agreement and deliver it to the Settling Plaintiff, through Settling Plaintiff's counsel, with binding effect upon such Settling Defendant.

5.3     Each Settling Defendant represents and warrants that the execution, delivery, and performance by such Settling Defendant of this Settlement Agreement will not contravene or constitute a default under any provisions of applicable law or regulation or any agreement, judgment, injunction, order, decree, or contractual restriction binding on such Settling Defendant.

5.4     Each Settling Defendant represents and warrants that, except as provided in this Settlement Agreement, no further approval, authorization, consent, order, notice to, or filing or registration with, any Governmental Authority is required with respect to such Settling Defendant's participation in this Settlement Agreement and entering into and performing this Settlement Agreement.

5.5     Subject to the provisions of this Settlement Agreement, each Settling Defendant represents and warrants that no other person or entity has any interest in the claims it is releasing pursuant to Article VII ("Settling Defendants' Release of Claims").

- 10 -

SETTLEMENT AGREEMENT

## VI. OBLIGATIONS OF SETTLING DEFENDANTS

6.1     This agreement is contingent upon the trial court entering a final, binding order finding this settlement to be a "good faith settlement" within the meaning of California Code of Civil Procedure § 877.6 and extinguishing claims for contribution and indemnity against Settling Defendants (a "Good Faith Order"). Within 30 days after the full execution of this agreement, the Settling Defendants shall cause a motion to be filed in MDL 1358, seeking a Good Faith Order from the Court. In consideration of the representations and warranties of Settling Plaintiff, the delivery of a valid and binding Release and Indemnity Agreement in the form of the attached Exhibit A by Settling Plaintiff to Settling Defendants, the delivery of a valid and binding Stipulation of Dismissal in the form of the attached Exhibit B by Settling Plaintiff to Settling Defendants, and Settling Plaintiff's compliance with the other provisions of this Settlement Agreement, the Settling Defendants shall cause the Settlement Payment to be paid within 25 Business Days following their receipt of the aforesaid Good Faith Order. Until such time as the Settlement Payment is made the Release and Indemnity Agreement and Stipulation of Dismissal shall be held in escrow. Upon such payment, Settling Defendants may cause the Stipulation of Dismissal with prejudice executed by the Settling Plaintiff to be filed with the appropriate courts.

6.2     Settling Plaintiff agrees to make no claim or demand on Settling Defendants of any kind, including the commencement of legal action, for any future detection of MTBE and/or any approved oxygenate in any well whatsoever, whether now owned or hereinafter acquired, with the sole exception that if (a) the conditions necessary to cause parties to the Treatment Protocol to take steps under the Treatment Protocol to commence and/or pay for treatment, and (b) Settling Plaintiff has taken the steps necessary to cause parties to the Treatment Protocol to become obligated to take steps under the Treatment Protocol to commence and/or pay for

- 11 -

SETTLEMENT AGREEMENT

treatment, then Settling Plaintiff may assert a claim or commence an action against Settling

Defendants, which claim or action shall also be limited as follows: (c) the claim or action shall

seek to recover only actual treatment costs for the kind of treatment contemplated by the

Treatment Protocol; (d) the claim or action shall seek to recover only that portion of the actual

treatment costs that the parties to the Treatment Protocol are not obligated to cover; (e) Settling

Defendants reserve all rights to dispute liability for such claims and actions and to assert all

available defenses against such claims and actions, herein waiving none; (f) in no event shall any

claim or action seek to recover against Settling Defendants more than 29.3394% of the total

treatment costs in question; (g) in no event will Settling Plaintiff seek or be entitled to recover

exemplary or punitive damages against Settling Defendants, nor will Settling Plaintiff pursue or

attempt to prove any claim or action against Settling Defendants based on allegations that would

be relevant only to liability for exemplary or punitive damages; and (h) in no event will Settling

Plaintiff pursue any claim based in whole or in part on the alleged failure of Settling Defendants

to provide information to the United States Environmental Protection Agency or any other

federal, state, or local-government agency charged with environmental regulation, fuel standards,

air-emission standards, and/or water-quality standards. If a claim or action permitted by this

Settlement Agreement is successful, Settling Defendants will then become obligated to fund such

portion of the treatment costs as is permitted by this Settlement Agreement, subject to all

limitations and conditions of the Treatment Protocol and the certain agreement dated March 12,

2008 to the extent it relates to the Treatment Protocol. In addition to the foregoing limitations

and conditions, in no event shall any claim or action be maintained with respect (i) to any of the

wells listed on Exhibit E hereto, or (ii) to a specific well if the presence of MTBE or TBA in or

at that well is attributable either to (aa) intentional misconduct of Settling Plaintiff or its

- 12 -

SETTLEMENT AGREEMENT

subsidiaries, affiliates, employees or agents, (bb) intentional discharge, dumping or disposal by any persons or entities other than the Settling Defendants, or (cc) the use of MTBE or TBA in the future in connection with products, processes, or uses other than gasoline. The mere fact of a release from an underground storage tank ("UST") leak or from an UST overfill, in and of itself, will not constitute an intentional discharge, dumping or disposal by a third party. Prior to the commencement of any action under this Paragraph 6.2, the Settling Plaintiff and Settling Defendants shall participate in a mediation and make good faith efforts to resolve their differences. If Settling Defendants elect to join the treatment protocol, the Settling Plaintiff and the Settling Defendants will negotiate at that time the procedures that will govern that participation.

6.3     Upon execution of this Settlement Agreement and the Release and Indemnity Agreement by Settling Plaintiff, and delivery of same to Settling Defendants. Settling Defendants will withdraw all pending objections to the agreement dated March 12, 2008 and the settlements agreed to therein, will not initiate any new appeal from any judicial determination with respect thereto, on any grounds, including lack of jurisdiction, and will dismiss with prejudice any then-pending appeals from any judicial determination with respect thereto.

6.4     The Settlement Payment includes Settling Plaintiff's attorneys fees and costs.

## VII. SETTLING DEFENDANTS' RELEASE OF CLAIMS

To the extent not already provided, within 25 Business Days of the date of execution of this Settlement Agreement, those Settling Defendants that asserted claims against Settling Plaintiff arising from the Released Claims in declaratory judgment actions or counterclaims agree to provide releases and stipulations of dismissal with prejudice as to the

- 13 -

SETTLEMENT AGREEMENT

Settling Plaintiff against whom such declaratory judgment actions or counterclaims were brought, including any claims for fees and costs arising from the litigation that is subject to this Settlement Agreement.

## VIII. NO ASSIGNMENT WITHOUT CONSENT

Neither the Settling Defendants, on the one hand, nor Settling Plaintiff, on the other hand, may assign their rights or obligations under this Settlement Agreement without the consent of the other(s). That consent shall not be unreasonably withheld; provided, however, that no such assignment shall relieve the Settling Defendants or Settling Plaintiff of their obligations under this Settlement Agreement. A merger, or divestiture of a subsidiary or division, or merger or reorganization of a Settling Defendant or Settling Plaintiff shall not be deemed an assignment for purposes of this Settlement Agreement.

## IX. CONFIDENTIALITY PROVISIONS

The parties to this Settlement Agreement shall keep confidential the amount of the Settlement Payment and the content of the negotiations, points of discussion, documents, communications, and supporting data utilized or prepared in connection with, or exchanged at, the mediation that preceded this Settlement Agreement as well as all other negotiations and settlement discussions taking place outside of the mediation, including but limited to other negotiations and settlement discussions occurring prior to, contemporaneous with, or after the mediation in this case, as contemplated by Federal Rule of Evidence 408, except as otherwise required by law.

- 14 -

SETTLEMENT AGREEMENT

## X. NOTICES

All notices, requests, demands, claims, and other communications that are required or may be given pursuant to this Settlement Agreement must be in writing and delivered personally against written receipt, by a recognized overnight delivery service, or by telecopy, to the parties at the addresses below (or to the attention of such other, different or additional person or entity or such other address as any party may provide to the other party by notice in accordance with this paragraph). Any such notice or other communication will be deemed to have been given (i) if personally delivered, when so delivered, against written receipt, (ii) if sent by a nationally recognized overnight delivery service which guarantees next day delivery, one Business Day after being so sent, or (iii) if given by telecopier, once such notice or other communication is transmitted to the facsimile number specified below and the appropriate answer back or telephonic confirmation is received, provided that such notice or other communication is promptly thereafter delivered in accordance with the provisions of clauses (i) or (ii) hereof, in each case addressed to the intended recipient as set forth below. Any notice, request, demand, claim, or other communication given hereunder using any other means (including mail, electronic or otherwise) shall not be deemed to have been duly given unless and until there is evidence that such notice, request, demand, claim or other communication actually is received by the individual for whom it is intended. Further, nothing in this Settlement Agreement nor service as a Designated Representative for notice purposes shall be construed as creating an attorney-client relationship between any of the Designated Representatives for notice purposes identified below and any party to this Settlement Agreement, unless such attorney-client relationship existed beforehand,

- 15 -

SETTLEMENT AGREEMENT

### FOR SETTLING PLAINTIFF:

Scott Summy, Esq.
Baron & Budd PC
3102 Oaklawn Avenue, Suite 1100
Dallas, Texas 75219
Telephone: (214) 521-3605
FAX: (214) 520-1181

### FOR SETTLING DEFENDANTS:

Jeffrey J. Parker, Esq.
Sheppard, Mullin, Richter & Hampton LLP
333 S. Hope Street, 48th Floor
Los Angeles, California 90071
Telephone: (213) 617-5586
FAX: (213) 620-1398

## XI.  WARRANTY OF AUTHORITY

Each person who executes this Settlement Agreement on behalf of a corporation,

partnership, joint venture, unincorporated association, public authority, municipal corporation,

government, or other entity, represents and warrants to each party that he or she has the authority

to do so and has enclosed a certified copy of the requisite board or legislative resolution, power

of attorney, secretary's certificate, or other documentation evidencing the authority of each

person below to enter into this Settlement Agreement on behalf of the respective settling person

or entity indicated below.

## XII.  GOVERNING LAW

Except as otherwise provided, this Settlement Agreement and all actions arising

out of or in connection with this Settlement Agreement shall be governed by and construed in

accordance with the laws of the State of California without regard to the conflicts-of-law or

choice-of-law provisions thereof.

- 16 -

SETTLEMENT AGREEMENT

## XIII. NO ADMISSION

This Settlement Agreement is a compromise of disputed claims and fully and
finally settles all claims by Settling Plaintiff against the Released Parties, and prevents any
further action in connection with the Released Claims against the Released Parties in the
litigation that is the subject of this Settlement Agreement or in any other litigation. Neither the
payment of any consideration hereunder nor anything contained in this Settlement Agreement,
the Treatment Protocol, the Escrow Agreement, or the Release and Indemnity Agreement shall
be interpreted or construed to be admission of liability or of any facts on the part of, nor to the
prejudice of, the Settling Plaintiff, Settling Defendants, and/or Released Parties. The Released
Parties expressly deny any and all liability associated with or related to the Released Claims.

## XIV. WARRANTY OF RIGHTS

Settling Plaintiff represents and warrants to the Settling Defendants that it has
exclusive right and title to the wells listed on the attached Exhibits D, E and F. Settling Plaintiff
further represents and warrants to the Settling Defendants that Settling Plaintiff has full authority
to release the Released Claims in favor of the Released Parties as set forth in this Settlement
Agreement and the Release and Indemnity Agreement.

## XV. ENTIRE AGREEMENT

Each party to this Settlement Agreement, individually and collectively, declares
and represents that no promises, inducements, or other agreements not expressly contained
herein between (1) Settling Plaintiff and (2) Settling Defendants have been made with regard to
the settlement of the Released Claims; that this Settlement Agreement contains the entire
agreement between (1) Settling Plaintiff and (2) Settling Defendants with respect to said subject

- 17 -

SETTLEMENT AGREEMENT

matter; and that the terms of this Settlement Agreement, including all words, phrases, sentences, and paragraphs, including the recitals hereto, are contractual and not recitals only, and are material to the execution of this Settlement Agreement. All prior agreements and understandings, oral agreements and writings between Settling Plaintiff and Settling Defendants regarding the matters set forth herein are expressly superseded hereby and are of no further force or effect. No part of this Settlement Agreement may be altered, amended, or modified in any respect, except by a writing duly executed by Settling Plaintiff and the Settling Defendants.

## XVI. BINDING EFFECT

This Settlement Agreement hereto shall be binding upon and inure to the benefit of the Released Parties and the Settling Plaintiff.

## XVII. FURTHER DOCUMENTS

To the extent any documents are required to be executed by any of the parties to this Settlement Agreement to effectuate this Settlement Agreement, each party agrees to execute and deliver such other and further documents as may be required to carry out the terms of this Settlement Agreement.

## XVIII. REPRESENTATION

Each party to this Settlement Agreement represents and acknowledges that it has been represented by counsel with respect to this Settlement Agreement and any and all matters covered by or related to such Settlement Agreement. Each party has been fully advised with respect to all rights which are affected by this Settlement Agreement.

- 18 -

SETTLEMENT AGREEMENT

## XIX. NEUTRAL CONSTRUCTION

The parties to this Settlement Agreement agree that this Settlement Agreement was negotiated fairly between them at arms' length and that the final terms of this Settlement Agreement are the product of the parties' negotiations. The parties agree that this Settlement Agreement shall be deemed to have been jointly and equally drafted by them, and that the provisions of this Settlement Agreement therefore should not be construed against a party or parties to it on the grounds that the party or parties drafted or was more responsible for drafting the provision(s).

## XX. VOLUNTARY AND KNOWING EXECUTION

Each party signing this Settlement Agreement represents and warrants that it read, knows, and understands the contents of this Settlement Agreement, has executed this Settlement Agreement voluntarily, and has not been influenced by any person or persons or attorney acting on behalf of any other party.

## XXI. HEADINGS, NUMBER AND GENDER

Headings are used herein for convenience only and shall have no force or effect in the interpretation or construction of this Settlement Agreement. As used in this Settlement Agreement, the singular shall include the plural, and the masculine shall include the feminine and neuter genders.

## XXII. TIME IS OF THE ESSENCE

Time is of the essence for each and every provision of this Settlement Agreement.

- 19 -

SETTLEMENT AGREEMENT

## XXIII. GOOD-FAITH EFFORT

The parties to this Settlement Agreement shall use their respective good-faith
efforts to comply with their obligations under this Settlement Agreement.

## XXIV. NO WAIVER; REMEDIES

No failure on the part of any party to this Settlement Agreement to exercise, and
no delay in exercising, any right hereunder shall operate as a waiver thereof nor shall any single
or partial exercise of any right hereunder preclude any other or further exercise thereof or the
exercise of any other right. The remedies herein provided are cumulative and not exclusive of
any remedies provided by law.

## XXV. SURVIVAL OF REPRESENTATIONS AND WARRANTIES

All representations and warranties of the parties to this Settlement Agreement
have been and will be relied on by the other parties to this Settlement Agreement
notwithstanding any investigation made by them.

## XXVI. PAYMENT OF ATTORNEYS' FEES AND COURT COSTS

Each party to this Settlement Agreement shall be responsible for the payment of
its own court costs, attorneys' fees, and all other expenses, costs, and fees in connection with the
matters referred to in this Settlement Agreement, except as expressly set forth herein.

## XXVII. ATTORNEYS' FEES AND COSTS TO ENFORCE AGREEMENT

If any action is required to be taken by any party to enforce any decision of an
arbitrator as provided in this Settlement Agreement, the prevailing party in any such action shall
be entitled to reasonable attorneys' fees and costs.

- 20 -

SETTLEMENT AGREEMENT

## XXVIII. ADMISSIBILITY OF AGREEMENT

The parties expressly agree that this Settlement Agreement is a protected communication under Federal Rule of Evidence 408 and any equivalent code or common law rule of evidence of any state; however, the same shall be admissible in (i) a proceeding the sole purpose of which is to enforce the terms of this Settlement Agreement and its Exhibits hereto, (ii) any proceeding to establish an insurance or reinsurance claim by a Settling Defendant or Released Party, (iii) any proceeding to establish an appropriate set-off or credit to a judgment entered or to be entered in favor of Settling Plaintiff against an entity other than a Settling Defendant or any Released Parties, or (iv) other proceeding where such admission is necessary to effectuate the terms of this Settlement Agreement.

## XXIX. EXECUTION BY COUNTERPARTS

This Settlement Agreement may be executed in one or more counterparts. All counterparts will constitute one instrument binding on the signatories upon execution of one or more counterparts by all parties. Counsel for any party shall be authorized to assemble a composite counterpart which shall consist of one copy of each page, except the signature pages, together with multiple counterpart signature pages executed on behalf of every party to this Settlement Agreement. The composite counterpart may then be used by any party for all purposes as the complete signed and executed Settlement Agreement among the parties.

The Parties hereto, by their duly authorized officers, have caused this Settling Agreement to be executed as of the day and year first above written.

- 21 -

SETTLEMENT AGREEMENT

Approved as to Form:

Scott Summy, Esq. /Celested. Ew angelish
Baron & Budd, P.C.
Settling Plaintiff's Counsel

LIST OF EXHIBITS, SIGNATURE PAGE INDEX, SIGNATURE PAGES

AND EXHIBITS FOLLOW THIS PAGE

MTBE MDL 1358 SETTLEMENT AGREEMENT SIGNATURE PAGES

M & P Silver Family Partners II,
A California Limited Partnership

By: _Marty Silver_

Martin Silver
Its: General Partner

_5 - 25 - 10_
Date Executed

M & P Silver Family Partners II,
A California Limited Partnership

By: _Pauline Silver_

Pauline Silver
Its: General Partner

_5 - 25 - 10_
Date Executed

ExxonMobil Chemical Company, Inc.
(individually and f/k/a Mobil Chemical
Company); Exxon Mobil Corporation (f/k/a
Exxon Corporation and d/b/a Exxon Mobil
Refining & Supply Company, Exxon Chemical
U.S.A., and ExxonMobil Chemical Corporation);
ExxonMobil Oil Corporation; and Mobil
Corporation

By: _____

_____
Print Name

_____
Title

_____
Date Executed

MTBE MDL 1358 SETTLEMENT AGREEMENT SIGNATURE PAGES

M & P Silver Family Partners II,
A California Limited Partnership

By: _Martin Silver_
Martin Silver
Its: General Partner

_5 - 25 - 10_
Date Executed

M & P Silver Family Partners II,
A California Limited Partnership

By: _Pauline Silver_
Pauline Silver
Its: General Partner

_5- 25- 10_
Date Executed


ExxonMobil Chemical Company, Inc.
(individually and f/k/a Mobil Chemical
Company); Exxon Mobil Corporation (f/k/a
Exxon Corporation and d/b/a Exxon Mobil
Refining & Supply Company, Exxon Chemical
U.S.A., and ExxonMobil Chemical Corporation);
ExxonMobil Oil Corporation; and Mobil
Corporation

By: _R W Hinckley_

_R W HINCKLEY_
Print Name

_AGENT & ATTORNEY-IN-FACT_
Title

_6/1/10_
Date Executed


- 23 -

## LIST OF EXHIBITS

Exhibit A:   Release and Indemnity Agreement

Exhibit B:   Stipulation of Dismissal

Exhibit C:   March 12, 2008 Agreement, with addendum F thereto, creating the Future Treatment Obligation

Exhibit D:   List of all of Settling Plaintiff's Public Water System Wells

Exhibit E:   List of all of Settling Plaintiff's Public Water System Wells that have ever had a detected level of any amount of MTBE and/or TBA

Exhibit F:   List of all of Settling Plaintiff's Public Water System Wells that have never had a detected level of any amount of MTBE and/or TBA

EXHIBIT A -- RELEASE FORM

## RELEASE AND INDEMNITY AGREEMENT

    1.    The undersigned Settling Plaintiff under the terms and conditions of the attached Settlement Agreement ("Settlement Agreement"), M & P Silver Family Partners II, A California Limited Partnership, in its individual and as applicable representative, governmental and/or sovereign capacity, or as trustee, and on behalf of all successors, assigns, joint venturers, partners, parents, subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, predecessors-in-name, successors-in-name, beneficiaries, and each of their respective past, present, and future officers, directors, employees, shareholders, officials, board members, trustees, fiduciaries, agents, accountants, attorneys, insurance carriers, sureties, representatives, independent contractors, consultants, experts, advisors, and all persons in privity with any of them and/or who could have claimed or could claim by, through or under any of them (hereinafter collectively referred to as "Releasor"), for and in consideration of the monetary payments paid to Releasor as set forth in the Settlement Agreement and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged and confessed, hereby fully and finally RELEASES, ACQUITS, AND FOREVER DISCHARGES the Released Parties, as defined below, and any of them, of and from any and all claims, actions, liabilities, rights, demands, suits, matters, liens, obligations, damages, losses, remedies of any kind, and/or causes of action of every nature and description, kind or character, known or unknown, past, present, or future, whether arising at common law, in equity, and/or under or by virtue of any statute or regulation, including all federal, state, and/or local environmental laws, that Releasor has, had, or may have in the future against the Released Parties, or any of them, or that may be created or recognized in the future by statute, regulation, judicial decision, administrative

- 1 -

EXHIBIT A -- RELEASE FORM

adjudication, or in any other matter, including but not limited to any direct claims, third-party claims, parens patriae claims, and/or assigned claims, including without limitation, any and all claims for negligence, strict product liability, strict liability, breach of express or implied warranty, breach of contract, trespass, fraud, unfair business practices, deceptive trade practices (including but not limited to any and all claims under § 17200, et seq., of the California Business and Professions Code or similar statutes), private or public nuisance, conspiracy, concert of action, market-share liability, commingled-product liability, or any other form of collective liability or several liability, violations of any statute or regulation, whether known or unknown including without limitation, any claim based in whole or in part on the alleged failure of Settling Defendants to provide information to the United States Environmental Protection Agency or any other federal, state, or local-government agency charged with environmental regulation, fuel standards, air-emission standards, and/or water-quality standards, past, present or future, accrued or which may accrue in the future, asserted or unasserted, latent or patent, that is, has been or could have been or in the future might be asserted by Releasor against Released Parties, or any of them, for actual damages, exemplary and punitive damages, statutory damages, penalties of any kind, property damages, natural resource damages, damages to equipment, economic or business losses, investigation costs, remediation costs, restoration costs, treatment costs, other costs, prejudgment or post judgment interest, attorneys' fees, injunctive or declaratory relief (including any such relief or remedy that might be available under the Toxic Substance Control Act), and/or any other losses or detriment of any kind, past, present or future, arising out of or in any way related to:

(1)     the use of methyl tertiary butyl ether ("MTBE") or Other Authorized Oxygenates (as defined below) in gasoline, at any time and for any reason;

- 2 -

EXHIBIT A -- RELEASE FORM

(2)     the actual or threatened presence of MTBE and/or TBA in water or on property accessed, accessible, managed, owned, operated, used, and/or protected by Releasor (including but not limited to wells or aquifers owned, operated, used and/or protected by Releasor), whether past, present or future or on account of acts or omissions that occurred before or after the date of settlement agreement, due to their use, or either of them, in gasoline, at any time and for any reason; and

(3)     the actual or threatened presence of gasoline, benzene, toluene, ethylbenzene, and xylenes (collectively referred to as "BTEX"), Other Authorized Oxygenates, and/or other components of gasoline beyond those released in subsections (1) and (2) above, or other petroleum products or any associated breakdown products thereof, in any well in which as of, or prior to, May 22 2010, the presence of MTBE or Other Authorized Oxygenates was detected at or in such well, or at or on such property, at any level (including but not limited to those wells identified on the attached Exhibit E of the Settlement Agreement).

(4)     It is the intent of the parties that, notwithstanding any provision to the contrary, this Release and Indemnity Agreement does not release the Released Parties with respect to discharges or spills of gasoline occurring after the Effective Date of the Settlement Agreement from facilities owned and/operated directly by Settling Defendants to the extent such damage, loss, or costs is caused by gasoline components other than MTBE or TBA.

Furthermore, the entirety of this Paragraph 1 includes, but is not limited to, all claims asserted in the civil action commenced by Releasor referred to in this Release and Indemnity Agreement ("Release and Indemnity Agreement") and/or the claims that were alleged in or could have been alleged in MDL 1358, and applies, *inter alia*, to wells accessed, managed, owned,

- 3 -

EXHIBIT A -- RELEASE FORM

operated used, and/or protected in the past or currently (even if sold or disposed of in the future) and to wells accessed, managed, owned, operated used, and/or protected in the future, including wells hereinafter acquired by any means (the entirety of this Paragraph 1 is collectively referred to hereinafter as "Released Claims").

2.      The "Released Parties" are:  ExxonMobil Chemical Company, Inc. (individually and f/k/a Mobil Chemical Company); Exxon Mobil Corporation (f/k/a Exxon Corporation and d/b/a ExxonMobil Refining & Supply Company, Exxon Chemical U.S.A., and ExxonMobil Chemical Corporation); ExxonMobil Oil Corporation; and Mobil Corporation; including all parents, subsidiaries, affiliates, shareholders, former shareholders, officers, former officers, directors, former directors, principals, former principals, employees, former employees, representatives, former representatives, assignees, successors, predecessors, and assigns of the above.

3.      "Other Authorized Oxygenate" means any chemical compound certified for use as an oxygenate under the provisions of the Clean Air Act Amendments of 1990 or as a Renewable Fuel under the provisions of the Energy Policy Act of 2005, including but not limited to, tertiary butyl alcohol ("TBA"), diisopropyl ether ("DIPE"), ethanol, methanol, tertiary amyl methyl ether ("TAME"), and ethyl tertiary butyl ether ("ETBE"), whether used in gasoline at any time as an octane enhancer, oxygenate pursuant to the requirements of the Clean Air Act Amendments of 1990, or for any other reason, and any associated breakdown products thereof.  The term MTBE shall also include any associated breakdown products of methyl tertiary butyl ether.

4.      Releasor covenants and agrees to forever refrain from instituting, maintaining or proceeding against any Released Party on any Released Claims, including Released Claims

- 4 -

EXHIBIT A – RELEASE FORM

known and unknown, suspected, or claimed, that Releasor has or hereafter may have against the Released Parties. Releasor hereby agrees to cause an appropriate stipulation in the form agreed upon, dismissing the Released Parties that are defendants, and any and all Released Claims against Released Parties from the action entitled: M & P Silver Family Partners II, (A California Limited Partnership) v. Amerada Hess Corporation, et al. (originally captioned Martin Silver, Pauline Silver, Laura Silver, John T. Kruso, Dennis A. Kruso, Stephen L. Kruso, Diane K. Crandall, and Adrian Kruso v. Amerada Hess Corporation, et al.), U.S. District Court–Southern District of New York Case No. 04 Civ 4975 (SAS); U.S. District Court–Southern District of California Case No. 03 CV 2408 J (RBB), which is pending as part of the multi-district litigation matter captioned: *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, Master File No. 1:00-1898, MDL 1358 (SAS), M21-88 (S.D.N.Y.), with prejudice, with each party to bear their own costs, as well as any other Released Claims against any Released Parties from any other court actions brought by, or on behalf of, Releasor, with prejudice, and with each party to bear its own costs. Releasor further agrees to execute and file additional motions, amended complaints, or other papers necessary to secure dismissal with prejudice of any Released Claims against any Released Parties and otherwise give full effect to this Release and Indemnity Agreement.

5.      Releasor acknowledges and agrees that the Released Claims include claims that Releasor does not know or suspect to exist in Releasor's favor at that time of this Release and that, if known by Releasor might have affected Releasor's decision to settle and release the Released Claims, Releasor expressly waives any and all rights and benefits that Releasor now has, may have, or in the future may have under any statute, regulation, administrative adjudication, or common law principle that would limit the effect of this Release to the claims

- 5 -

EXHIBIT A -- RELEASE FORM

actually known or suspected to exist at the time of this Release, including but limited to §1542 of

the Civil Code of California, which reads as follows:

> **"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH
> THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS
> OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE,
> WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY
> AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."**

6.     To the extent of any monetary payments made to the Releasor under the

Settlement Agreement, Releasor agrees to indemnify and hold harmless the Released Parties

from any and all liens, assignments, subrogation claims, encumbrances, garnishments, security

interests or any other legally perfected right of another person or entity with respect to any

monetary payment to be paid to Releasor as provided for in Paragraph 1 of this Release and

Indemnity Agreement.

7.     In further consideration for the monetary payment to Releasor and other relief as

provided for in Paragraph 1 of this Release and Indemnity Agreement, the Releasor has agreed to

and hereby does indemnify and hold harmless Released Parties from and against any further

payment of money damages, awards and judgments (in part or in whole), debts, liens, costs,

charges and expenses, of any kind and of any character (including reasonable attorneys fees and

costs), including and/or as a result of any and all claims, demands, actions and causes of action,

of whatsoever nature or character, which have been or in the future may be asserted by any

person, firm or entity claiming by, through or under Releasor, or any of them, for any of the

Released Claims or claiming for any of the Released Claims in connection with any assets

owned, operated or managed by Releasor as of the date of this Release.

8.     This Release and Indemnity Agreement does not release any non-settling

defendants in any of the litigation covered by the Settlement Agreement and this Release and

- 6 -

EXHIBIT A -- RELEASE FORM

Indemnity Agreement. Nor does this Release and Indemnity Agreement release any alleged claim against the Released Parties for future treatment liability under certain circumstances and with certain limitations as set forth in the Settlement Agreement at paragraph 6.2.

9.    It is the express intention of the parties to this Release that the consideration stated herein fully and completely compensates and satisfies Releasors for all Released Claims against the Released Parties. Releasor expressly contracts that it will not assist in or advance the claim of any other person or entity against Released Parties, and that, except as assigned herein to Released Parties, Releasor neither has nor will assign, pledge or otherwise, in any manner, assign, sell, dispose of or transfer any right, title, interest or claim that Releasor has or may have against Released Parties. No claim or cause of action of any type is reserved against Released Parties, except as expressly set forth.

10.    Releasor acknowledges and agrees that the amount of consideration and terms hereof are contractual and not merely recital. Releasor further acknowledges and agrees that neither this Release, nor any exhibit, document or instrument delivered hereunder is intended to be or shall be construed as or deemed to be evidence of an admission or concession by any of the Released Parties in connection with any disputed facts or claims, or of any alleged liability or wrongdoing by any of the Released Parties. Releasor expressly acknowledges and agrees that this Release and Indemnity Agreement, along with all related drafts, motions, court papers, conversations, negotiations and correspondence, the payment by Released Parties, and all statements made in connection with negotiation of this Release and Indemnity Agreement, constitute an offer to compromise and a compromise within the meaning of Federal Rule of Evidence 408, and any equivalent code or common law rule of evidence of any state. Releasor agree that Releasor will not offer this Release and Indemnity Agreement, nor any exhibit,

- 7 -

EXHIBIT A -- RELEASE FORM

document or instrument delivered hereunder, nor any statement, transaction or proceeding in

connection with the negotiation, execution or implementation of this Release and Indemnity

Agreement as evidence in this or any other proceeding for any purpose; except in (i) an

arbitration or any proceeding to enforce an arbitral decision under this Settlement Agreement, (ii)

a proceeding the sole purpose of which is to enforce the terms of the Settlement Agreement and

its Exhibits hereto, (iii) any proceeding to establish an insurance or reinsurance claim by a

Settling Defendant or any Released Parties, (iv) any proceeding to establish an appropriate set-

off or credit to a judgment entered or to be entered in favor of a Settling Plaintiff against an

entity other than a Settling Defendant or any Released Parties, (iv) or other proceeding where

such admission is necessary to effectuate the terms of this Release and Indemnity Agreement.

11.     Releasor intends and agrees that this Release shall be complete and shall not be

subject to the claim of mistake of fact or law by Releasor and that it expresses a full and

complete settlement of liability claimed by Releasor and denied by each and all of the Released

Parties and, regardless of the adequacy or inadequacies of the consideration, this Release is

intended to avoid litigation and to be final and complete.  Releasor acknowledges and

understands that all of Releasor's expenses and attorneys' fees arising out of or related to the

Released Claims are the responsibility of Releasor.

12.     Releasor expressly warrants and represents that, before executing this Release and

Indemnity Agreement, Releasor has completely read the terms of this Release and Indemnity

Agreement and/or that this Release and Indemnity Agreement has been completely read and

explained to Releasor by Releasor's attorney and that the terms of the agreement are fully

understood and voluntarily accepted by Releasor and that Releasor has authorized its

undersigned representative to sign, execute and deliver this Release and Indemnity Agreement

- 8 -

EXHIBIT A -- RELEASE FORM

on behalf of the Releasor as the voluntary act and deed of Releasor on the date and year

hereinafter mentioned with all necessary approvals and without any fraud or under any duress.

Releasor has relied solely and completely on Releasor's own judgment and the advice of

Releasor's counsel in making this settlement and executing this Release and Indemnity

Agreement.

13.     The Releasor, and its undersigned representative, represent and warrant that this

Release and Indemnity Agreement has been executed by an official duly authorized to do so on

behalf of Releasor. Releasor, and its undersigned representative, represent and warrant that

Releasor and its undersigned representative has or has obtained all requisite power to execute,

bind, deliver and perform this Release and Indemnity Agreement on behalf of Releasor and that

this Release and Indemnity Agreement has been duly and validly executed and delivered by

Releasor's authorized agent, that any necessary governmental, corporate or partnership

authorizations to make this Release and Indemnity Agreement valid and binding on Releasor

have been procured, and that a certified copy of the requisite board or legislative resolution,

power of attorney, secretary's certificate, or other documentation evidencing the authority of the

person below to execute this Release and Indemnity Agreement on behalf of the Releasor is

enclosed. Further, in connection with the execution, delivery, and performance of this Release

and Indemnity Agreement, Releasor has complied with all provisions of the Constitution and

laws of the respective state of the Releasor and the respective charter, rules, and regulations of

the Releasor, Releasor has the full power and authority to enter into this Release and Indemnity

Agreement, and its execution, delivery, and performance by Releasor does not and will not

contravene or constitute a default under any provision of applicable law or regulation or of any

agreement, judgment, injunction, order, decree, or contractual restriction binding on Releasor.

- 9 -

EXHIBIT A -- RELEASE FORM

No further approval, authorization, consent, order, notice to, or filing or registration, with any governmental authority is required with respect to the execution, delivery, and performance by Releasor of this Release and Indemnity Agreement. This Release and Indemnity Agreement is duly executed and delivered by Releasor's authorized representative and is the valid and legally binding obligation of Releasor, enforceable against the Releasor in accordance with its terms. Furthermore, without limiting the generality of the foregoing, Releasor is not entitled to any immunity on any grounds (i) with respect to the performance of its obligations under this Release and Indemnity Agreement, or (ii) from any legal proceedings to enforce the obligations hereunder. Releasor further warrants that it will not challenge or contest the validity of this Release and Indemnity Agreement and that it forever waives any defense to its validity, including any defense based on any claim the Release and Indemnity Agreement is ultra vires, violative of Releasor's sovereign immunity, or otherwise void.

If any term, provision, right or duty of this Release and Indemnity Agreement is deemed void, voidable, unlawful or unenforceable, the remaining portions of this Release and Indemnity Agreement shall not be invalidated and shall remain in full force and effect. To this end, the provisions of this Release and Indemnity Agreement are declared to be severable. Furthermore, because the purpose of this settlement is to end this matter forever, Releasor agrees, covenants and warrants that, should it develop that there are any errors or mistakes, whether legal or factual and whether mutual or unilateral, which cause this document to be defective or which causes the release of the Released Parties to be defective or less than full and complete, the Releasor will execute any and all instruments and do any and all things necessary to effectuate a full, final and complete release and indemnification of the Released Parties for the Released Claims.

- 10 -

EXHIBIT A -- RELEASE FORM

M & P Silver Family Partners II,
A California Limited Partnership

By: _~Martin Silver~_

    Martin Silver
    Its: General Partner

    May 25, 2010
    Date Executed

M & P Silver Family Partners II,
A California Limited Partnership

By: _~Pauline Silver~_

    Pauline Silver
    Its: General Partner

    May 25, 2010
    Date Executed

Enclosure

Release Approved as to Form

_~Celeph Uery~_

Scott Summy, Esq.
Baron & Budd, P.C.
Settling Plaintiff's Counsel

STATE OF California
COUNTY OF San Diego

Personally appeared before me, the undersigned Notary Public, on this the 25th day of May , 2010, Martin Silver and Pauline Silver , to me known, or proved to me on the basis of satisfactory evidence, to be the person who executed the foregoing instrument and who acknowledged to me that he/she executed the same in their authorized capacity on behalf of the entity set forth above and that he/she did so with full authority, and he/she/they acknowledged that he/she/they executed the same as a free act and deed.

_~Tracey Pacheco~_
Notary Public
Printed Name: Tracey Pacheco
Notary No.: 1857637

TRACEY PACHECO
Commission # 1857637
Notary Public - California
San Diego County
My Comm. Expires Aug 1, 2013

- 11 -

# EXHIBIT "B"

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------

In re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

-------------------------------------------------------------

**Master File No. 1:00-1898**
**MDL NO. 1358 (SAS)**
**M21-88**

**This Document Relates To:**
*M & P Silver Family Partners II, A California*
*Limited Partnership v. Amerada Hess Corporation,*
*et al.,* U.S. District Court–Southern District of New
York Case No. 04 Civ 4975 (SAS)

-------------------------------------------------------------

## STIPULATION AND ORDER OF DISMISSAL UNDER FED. R. CIV. P. 41

Plaintiff M & P Silver Family Partners II, a California Limited Partnership[1] ("Plaintiff")

and Defendants ExxonMobil Chemical Company, Inc. (individually and f/k/a Mobil Chemical

Company), Exxon Mobil Corporation (individually and f/k/a Exxon Corporation and d/b/a

ExxonMobil Refining & Supply Company, Exxon Chemical U.S.A., and ExxonMobil Chemical

Corporation), ExxonMobil Oil Corporation (individually and f/k/a Mobil Oil Corporation), and

Mobil Corporation ("Settling Defendants") have advised the Court that they have resolved the

matters between them and agreed to the entry of this Stipulation and Order of Dismissal of the

claims against the Settling Defendants identified above, as indicated by the signatures of the

---

[1]     The original plaintiffs in this action were Martin Silver, Pauline Silver, Laura Silver, John
T. Kruso, Dennis A. Kruso, Stephen L. Kruso, Diane K. Crandall, and Adrian Kruso.
Subsequent to the initial complaint, "M & P Silver Family Partners II, A California Limited
Partnership" was substituted in place of the original plaintiffs as the sole plaintiff.

respective counsel below. This Court finds that this Stipulation and Order of Dismissal should be entered, with the findings included below.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED as follows:

1.      This Court has jurisdiction over the Parties to this Stipulation and over the subject matter of this action. The Parties to this Stipulation have advised the Court of their agreement to settle this matter pursuant to a Settlement Agreement, a release, and this Stipulation and Order of Dismissal.

2.      The Parties to this Stipulation consent to the dismissal of this action as to Settling Defendants, including all claims and counterclaims, with prejudice.

3.      Each Party shall bear its own costs and attorneys' fees.

SO ORDERED:

Date:_____                    _____

                                                Judge_____

                                                UNITED STATES DISTRICT JUDGE

AGREED TO AND ACCEPTED BY:
SHER LEFF LLP                                    SHEPPARD MULLIN RICHTER & HAMPTON
BARON & BUDD, P.C.                               LLP

By: _____                        By: _____
    SCOTT SUMMY                                      JEFFREY J. PARKER
Attorneys for Plaintiff M & P Silver             Attorneys for Settling Defendants
Family Partners II, A California Limited
Partnership