UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation | Master File No. 1:00-1898<br>MDL No. 1358 (SAS) |

**This Document Relates To:**

*Quincy Community Services District v. Atlantic Richfield Co., et al.*
Case No. 04-CV-4970

*M & P Silver family Partners II v. Amerada Hess Corporation, et al.*
Case No. 04-CV-4975

# MEMORANDUM OF LAW IN SUPPORT OF EXXONMOBIL'S MOTION

# <u>FOR DETERMINATION OF GOOD FAITH SETTLEMENT</u>

TABLE OF CONTENTS

Page

I. INTRODUCTION ..............................................................................................................1

    A. Litigation Overview ...............................................................................................2

    B. The 2008 Settlement Agreement ............................................................................2

    C. Negotiation of the Current Settlement Agreement .................................................4

    D. Overview of Settlement Terms ...............................................................................5

II. THE SETTLEMENTS BETWEEN EXXONMOBIL AND SETTLING PLAINTIFFS ARE GOOD FAITH SETTLEMENTS. .......................................................6

    A. The Substantive Law of California Applies to the Settlement Of State Law Claims Giving Rise to Potential Claims for Contribution and Indemnity. ..............6

    B. This Court Can Make Any Necessary Findings Regarding the Settlement.............7

    C. The Settlements Comply with California's Requirement of Good Faith in Order to Protect Against Contribution and Indemnity Claims. ..............................8

        1. The Settlement Agreements Were Negotiated at Arm's Length, Fairly and in Good Faith. .............................................................................9

        2. The Settlement Amounts Are Reasonable. ...............................................10

    D. The Court Should Direct Entry of Judgment Under FRCP 54(b) With Respect to the Court's Determination of a Good Faith Settlement. ......................12

III. CONCLUSION................................................................................................................14

## TABLE OF AUTHORITIES

                                                                                                                         Page(s)
Federal Cases

*Agway, Inc. Employees' 401(k) Thrift Inv. Plan v. Magnuson*
   409 F. Supp. 2d 136 (N.D.N.Y 2005) .................................................................................. 13

*AmeriPride Servs. Inc. v. Valley Indus. Servs., Inc.*
   Case Nos. CIV. S-00-113-LKK/JFM & S-04-1494-LKK/JFM, 2007 U.S. Dist.
   LEXIS 51364 (E.D. Cal. July 2, 2007) .............................................................................. 7, 12

*Bottoms v. Levin Enters., Inc.*
   No. C-99-4598-MMC, 2001 U.S. Dist. LEXIS 13434
   (N.D. Cal. Aug. 22, 2001) .................................................................................................. 7, 12

*Comerica Bank- Detroit v. Allen Indus., Inc.*
   769 F. Supp. 1408 (E.D. Mich. 1991) ................................................................................ 13

*In re Vioxx Prods. Liab. Litig.*
   478 F. Supp. 2d 897 (E.D. La. 2007) .................................................................................. 6

*Trujillo v. Crescent Jewelers*
   2000 U.S. App. LEXIS 30235 (9th Cir. 2000) .................................................................... 6, 7

*White v. ABCO Eng'g Corp.*
   221 F.3d 293 (2d Cir. 2000) ................................................................................................ 6

State Cases

*Barth-Wittmore Ins. v. H.R. Murphy Enters., Inc.*
   169 Cal. App. 3d 124 (1985) .............................................................................................. 8

*Horton v. Super. Ct.*
   194 Cal. App. 3d 727 (1987) .............................................................................................. 9, 11

*Mattco Forge, Inc. v. Arthur Young & Co.*
   38 Cal. App. 4th 1337 (1995) ............................................................................................. 9

*North County Contractor's Ass'n, Inc. v. Touchstone Ins. Servs.*
   27 Cal. App. 4th 1085 (1994) ............................................................................................. 8, 9

*Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*
   38 Cal. 3d 488 (1985) ......................................................................................................... 8, 9, 10, 11

Federal: Statutes, Rules, Regulations, Constitutional Provisions

28 U.S.C. § 1407 .................................................................................................................2, 6

Federal Rules of Civil Procedure 54(b) ...............................................................................12, 13


State: Statutes, Rules, Regulations, Constitutional Provisions

California Code of Civil Procedure
    § 877 ........................................................................................................................6, 11, 12
    § 877.6 ..................................................................................................................6, 7, 11, 12

Defendants Exxon Mobil Corporation (individually and f/k/a Exxon Corporation and d/b/a ExxonMobil Refining & Supply Company, Exxon Chemical U.S.A., and ExxonMobil Chemical Corporation) and ExxonMobil Oil Corporation (individually and f/k/a Mobil Oil Corporation) ("ExxonMobil") have entered into settlement agreements with Plaintiffs Quincy Community Services District ("Quincy") and M&P Silver Family Partners II ("Silver") (collectively, "Settling Plaintiffs").  ExxonMobil, through the undersigned attorney, hereby submits this memorandum of law in support of its motion that this Court determine that the subject settlement agreements ("Settlement Agreements") are good faith settlements under California law sufficient to bar joint tortfeasor liability claims against ExxonMobil and the Released Parties.

## I.      INTRODUCTION

After settlement offers by the Settling Plaintiffs and extensive arm's length and good faith negotiations, ExxonMobil reached settlements with Settling Plaintiffs that resolve all of their claims against ExxonMobil.  Settling Plaintiffs have agreed to the terms of these Settlement Agreements.  Redacted versions of the Settlement Agreements are filed herewith as Exhibit 3 (Redacted ExxonMobil-Quincy Settlement Agreement ("Quincy Settlement Agreement"))[1] and Exhibit 4 (Redacted ExxonMobil-Silver Settlement Agreement ("Silver Settlement Agreement")).  Their terms are outlined below.  These Settlement Agreements do not resolve claims against other potential Defendants, if any (the "non-settling Defendants").  In order to acquire protection from any alleged joint tortfeasor claims, and as an express condition of the settlements, ExxonMobil seeks this Court's determination that the Settlement Agreements

---

[1] All exhibits are attached to the Declaration of Jeffrey J. Parker filed herewith.

negotiated with Settling Plaintiffs were entered into in good faith and comport with the applicable requirements of California law as set forth below.

### A. Litigation Overview

These cases are part of MDL 1358 now pending in the United States District Court, Southern District of New York. The MDL proceedings have involved over one hundred actions brought by public and private entities and individuals from various states. The plaintiffs in each of these actions, including Settling Plaintiffs, brought claims against various petroleum companies for their design, manufacture, supply, use, handling, and/or distribution of methyl tertiary butyl ether ("MTBE"), a chemical compound added to gasoline. Plaintiffs have alleged that MTBE has contaminated, or threatens to contaminate, water supplies that are accessed, accessible, managed, owned, operated, used, and/or protected by plaintiffs (including but not limited to wells or aquifers owned, operated, used and/or protected by plaintiffs). The actions were transferred to this Court by the Judicial Panel on Multidistrict Litigation pursuant to §1407 of title 28 of the United States Code.

### B. The 2008 Settlement Agreement

In 2008, twelve groups of affiliated defendants[2] and certain plaintiffs reached a settlement agreement that did not include ExxonMobil ("2008 Settlement Agreement"). (Ex. 1 (Opinion and Order granting motion for good faith settlement determination, July 22, 2008) ("July 22, 2008 Opinion"); Ex. 2 (prior settling defendants' Memorandum of Law in Support of

---

[2] The twelve defendant groups participating in the 2008 settlement were the BP/ARCO entities, Chevron/Texaco/Unocal entities, ConocoPhillips entities, Shell/Equilon entities, Marathon entities, Diamond Shamrock/Valero entities, CITGO entities, Sunoco entities, Hess entities, Flint Hills, El Paso entities, and Tesoro entities. (See Ex. 3 (Quincy Settlement Agreement) at Exhibit C thereto, ¶ 2.26; Ex. 4 (Quincy Settlement Agreement) at Exhibit C thereto, ¶ 2.26).

Settling Defendants' Motion for Determination of Good Faith Settlement ("2008 GFS Motion"))).  Both Settling Plaintiffs were parties to the 2008 Settlement Agreement.  In that settlement agreement, the settling defendants agreed to a combined share of roughly sixty-eight percent of the liability for Plaintiffs' claims.  (Ex. 1 (July 22, 2008 Opinion), p. 18).  Although the allocation among the settling defendants in that agreement is confidential (Ex. 2 (2008 GFS Motion), pp. 6-7), if the total payment was split evenly among the twelve groups of settling defendant, each group's share is 8.3 percent of the settlement amount.  In that settlement, Plaintiff Quincy received $2,663,840 (Ex. 1 (July 22, 2008 Opinion), p. 36), while Plaintiff Silver received $3,937,202.  (Id., p. 39).

To estimate possible damages recoverable at trial, the plaintiffs who were parties to the 2008 GFS Motion applied a four-step analysis.  (Id., pp. 10-12).  The analysis consisted of (1) setting forth high, low, and mean costs of treating contaminated wells from an American Petroleum Institute ("API") study; (2) applying a standard linear regression analysis to the wells at issue based on their flow rate; (3) factoring in other characteristics of each well's contamination, most significantly the MTBE detection levels; and (4) adding past costs due to MTBE contamination.  (Id.)  According to Quincy, based on this analysis, its estimated MTBE treatment costs were $2,011,445.  (Id., p. 36).  According to Silver, based on this analysis, its estimated MTBE treatment costs were $2,936,561.  (Id., p. 39).

In addition, the settling defendants agreed to a treatment protocol under which they would fund specified future treatment of eligible wells upon the occurrence of certain triggering events ("Treatment Protocol").  (Ex. 2 (2008 GFS Motion), p. 6; Ex. 3 (Quincy Settlement Agreement) at Ex. C thereto; Ex. 4 (Silver Settlement Agreement) at Ex. C thereto).  Those settling defendants agreed to fund 70.6606 % of such specified future treatment, leaving the

remainder for each Settling Plaintiff.  (Ex. 3 (Quincy Settlement Agreement) at Ex. C thereto ("Treatment Protocol") p. 15; Ex. 4 (Silver Settlement Agreement) at Ex. C thereto ("Treatment Protocol") p. 15).  Again assuming an equal split among them, each is responsible for 5.86% of the total (i.e., 1/12 of 70.6606%).

This Court granted the defendants' motion for a determination that the 2008 Settlement Agreement was a good faith settlement.  (Ex. 1 (July 22, 2008 Opinion)).  Although both the settling plaintiffs and the settling defendants disavowed the use of the defendants' share of the national refining capacity as an appropriate estimate of their liability, they relied on such national shares (totaling approximately 68%) for purposes of doing so for the motion.  (Id., p. 18, n.42)  This Court held that the parties' estimate was adequate for the purposes of the good faith determination.  (Ex. 1 (July 22, 2008 Opinion), p. 19).  This Court also found the Treatment Protocol defined in the 2008 Settlement Agreement adequate and made in good faith.  (Ex. 1 (July 22, 2008 Opinion), p. 24).

       **C.**     **Negotiation of the Current Settlement Agreement**

Beginning in February 2010, ExxonMobil received written settlement offers from Settling Plaintiffs.  (Declaration of Jeffrey J. Parker, ¶ 4).  ExxonMobil then proceeded to engage in a series of arm's length negotiations with Settling Plaintiffs.  *(Id.).*  Through the course of several months, counsel for both ExxonMobil and the Settling Plaintiffs spoke multiple times and exchanged correspondence regarding the settlement offers and terms of settlement.  (Id.)  Negotiations over the amount, terms, conditions, and forms of the Settlement Agreements lasted four months.  (Id.).  These negotiations ultimately culminated in fair, reasonable terms to which Settling Plaintiffs and ExxonMobil both agreed.  (Id. ¶ 5).  The resulting Settlement Agreements are modeled after previously approved settlements, which consisted of monetary payments and

provisions for dealing with MTBE and/or TBA impacts to certain wells in the future.  (Id. ¶ 8).
The terms of the Settlement Agreements are more fully described below.

        **D.**        **Overview of Settlement Terms**

Under the terms of the Settlement Agreements, Settling Plaintiffs fully release ExxonMobil from past, present, or future claims of any type or under any theory, including without limitation all claims asserted in MDL 1358, arising from: (1) the use of MTBE or Other Authorized Oxygenates in gasoline, at any time and for any reason; (2) the actual or threatened presence of MTBE and/or TBA in water or on property accessed, accessible, managed, owned, operated, used, and/or protected by Settling Plaintiffs (including but not limited to wells or aquifers owned, operated, used and/or protected by Settling Plaintiffs), whether past, present or future or on account of acts or omissions that occurred before or after the date of settlement agreement, due to their use, or either of them, in gasoline, at any time and for any reason; and (3) the actual or threatened presence of gasoline, benzene, toluene, ethylbenzene, and xylenes (collectively referred to as "BTEX"), Other Authorized Oxygenates, and/or other components of gasoline beyond those released in subsections (1) and (2) above, or other petroleum products or any associated breakdown products thereof, in any well in which as of, or prior to, May 25, 2010, the presence of MTBE or Other Authorized Oxygenates was detected at or in such well, or at or on such property, at any level (including but not limited to those wells identified on Exhibit E to the Settlement Agreements).  (Ex. 3 (Quincy Settlement Agreement) at Ex. A thereto, pp. 2-3; Ex. 4 (Silver Settlement Agreement) at Ex. A thereto, pp. 2-3).

In exchange for these releases and dismissal of the lawsuit, ExxonMobil agreed to pay a confidential amount submitted to the Court under seal.  (Ex. 3 (Quincy Settlement Agreement) at Ex. A thereto, ¶ 1; Ex. 4 (Silver Settlement Agreement) at Ex. A thereto, ¶ 1; Documents Filed Under Seal In Support Of ExxonMobil's Motion For Determination Of Good Faith Settlement at

Attachments 1 and 2, ¶ 2.18)).  In addition, under certain circumstances defined in paragraph 6.2 of the Settlement Agreement, the Settling Plaintiffs may make claims against ExxonMobil for up to 29.3394% of specified treatment costs if the conditions triggering the Treatment Protocol of the 2008 Settlement Agreement occur and the Settling Plaintiff takes certain necessary steps. (Ex. 3 (Quincy Settlement Agreement), ¶ 6.2; Ex. 4 (Silver Settlement Agreement), ¶ 6.2).  This figure is the remaining portion of the Treatment Protocol not covered by the defendants who settled with Settling Plaintiffs in the 2008 Settlement Agreement.  (Ex. 3 (Quincy Settlement Agreement) at Ex. C thereto ("Treatment Protocol") p. 15; Ex. 4 (Silver Settlement Agreement) at Ex. C thereto ("Treatment Protocol") p. 15).

The Settlement Agreements do not release any claims against non-settling Defendants or others.

## II. THE SETTLEMENTS BETWEEN EXXONMOBIL AND SETTLING PLAINTIFFS ARE GOOD FAITH SETTLEMENTS.

### A. The Substantive Law of California Applies to the Settlement Of State Law Claims Giving Rise to Potential Claims for Contribution and Indemnity.

The district court to which an action is transferred pursuant to 28 U.S.C. § 1407(a) must apply the substantive law of the jurisdiction from which the cases originated.  *In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 903 (E.D. La. 2007); (Ex. 1 (July 22, 2008 Opinion), p. 12).  Accordingly, federal courts apply state law to determine the preclusive impact of a settlement agreement on any potential state law contribution and indemnity claims.  *White v. ABCO Eng'g Corp.*, 221 F.3d 293, 307 (2d Cir. 2000); (Ex. 1 (July 22, 2008 Opinion), p. 12).  Thus, California law applies to the Settlement Agreements because the cases originated in California. As explained below, under applicable state law, the Settlement Agreements will have the effect of protecting the ExxonMobil from any potential contribution and indemnity claims.

### B.    This Court Can Make Any Necessary Findings Regarding the Settlement.

Sections 877 and 877.6 of the California Code of Civil Procedure protect settling defendants from claims by joint tortfeasors or co-obligors for equitable comparative contribution or partial or comparative indemnity based on comparative negligence or comparative fault where a release, dismissal or covenant not to sue is made "in good faith."  Cal. Code Civ. Proc. §§ 877(b), 877.6(c) (2010); (Ex. 1 (July 22, 2008 Opinion), pp. 12-13).  A federal court may hold a hearing and make a good faith finding as required by state law.  In *Trujillo v. Crescent Jewelers*, 2000 U.S. App. LEXIS 30235, *5 (9th Cir. 2000), the Ninth Circuit upheld the Southern District of California's good faith determination of a settlement between the plaintiff and one of the defendants.  The Ninth Circuit also upheld the district court's dismissal of a cross-claim by the non-settling joint tortfeasor against the settling defendant for equitable indemnity, contribution, and declaratory relief for equitable indemnity.  The court stated:

> [Plaintiff's] state law claims are governed by California's substantive good faith settlement provision, Cal. Code Civ. Proc. § 877, which bars cross-claims for 'all liability for any contribution to any other parties.'  The district court was thus correct in dismissing Crescent's cross-claim against Chapman with respect to Trujillo's state law claims…. [W]e affirm the district court's determination of good faith settlement and affirm the sua sponte dismissal of[non-settling defendant's] cross-complaint against [settling defendant].

*Id.* at *5.  This Court is the appropriate court to hold a good faith hearing under the laws of the State of California regarding this settlement, and such a finding is binding in those jurisdictions.  *See AmeriPride Servs. Inc. v. Valley Indus. Servs., Inc.*, Case Nos. CIV. S-00-113-LKK/JFM & S-04-1494-LKK/JFM, 2007 U.S. Dist. LEXIS 51364, at *8-9, 12-13 (E.D. Cal. July 2, 2007) (holding that "[a] settling party in a federal action involving California claims can file a motion seeking a good faith determination," finding settlement was made in good faith under Section 877.6, and entering judgment pursuant to Fed. R. Civ. P. 54(b)); *Bottoms v. Levin Enters., Inc.*, No. C-99-4598-MMC, 2001 U.S. Dist. LEXIS 13434, at *3-4 (N.D. Cal.

Aug. 22, 2001) (finding settlement in good faith under Sections 877 and 877.6; entering judgment pursuant to Fed. R. Civ. P. 54(b)).

        **C.**      **The Settlements Comply with California's Requirement of Good Faith in Order to Protect Against Contribution and Indemnity Claims.**

Under California law, a determination that a settlement was entered into in good faith results in a bar on alleged joint tortfeasor claims against the settling defendants. *See* Cal. Code Civ. Proc. § 877.6(c) ("A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault."). It is a challenger's burden to demonstrate a lack of good faith. (Id. § 877.6(d)). For the reasons set forth below, ExxonMobil requests that this Court find that the Settlement Agreements are in good faith.

The goal of a good faith hearing is to determine whether there has been collusion between the settling parties and "whether the amount of the settlement is within the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries." *Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*, 38 Cal. 3d 488, 499 (1985). In making that determination, the court may examine numerous factors, including:

> [1] a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, [2] the amount paid in settlement, [3] the allocation of settlement proceeds among plaintiffs . . . [4] a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial . . . [5] financial conditions and insurance policy limits of settling defendants, as well as [6] the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants.

*Id*. However, "[a] judge charting the boundaries of good faith of necessity must avoid a rigid application of the factors set forth in *Tech-Bilt*." *North County Contractor's Ass'n, Inc. v. Touchstone Ins. Servs.*, 27 Cal. App. 4th 1085, 1090 (1994).

The key consideration is whether the settlement is "grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be." *Tech-Bilt, Inc.*, 38 Cal. 3d at 499; (Ex. 1 (July 22, 2008 Opinion), p. 15). Indeed, the determination of good faith does not require that, in effect, a trial of the merits occur before there can be a good faith settlement. *Barth-Wittmore Ins. v. H.R. Murphy Enters., Inc.*, 169 Cal. App. 3d 124, 132 (1985) ("[T]he determinant of good faith is not the liability figure ultimately reached at trial."). Furthermore, "bad faith is not 'established by a showing that a settling defendant paid less than his theoretical proportionate or fair share.'" *North County Contractor's Ass'n, Inc.*, 27 Cal. App. 4th at 1090 (quoting *Tech-Bilt, Inc.*, 38 Cal. 3d at 499).

The burden is upon the party objecting to the proposed settlement to prove an absence of good faith, and the challenger must prove "that the settlement is so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable objectives of the statute." *Tech-Bilt, Inc.*, 38 Cal. 3d at 499-500. The court "has wide discretion in deciding whether a settlement is in good faith and in arriving at an allocation of valuation of the various interests involved." *North County Contractor's Ass'n, Inc.*, 27 Cal. App. 4th at 1092, 1095. The evidence here shows that the settlements were made in good faith between the settling parties and that the settling parties in no way aimed to injure the interests of any non-settling person.

### 1. The Settlement Agreements Were Negotiated at Arm's Length, Fairly and in Good Faith.

Under California law, the court examines whether there was the "existence of collusion, fraud, or tortious conduct" in connection with the settlement agreement and/or whether the settlement agreement was "aimed to injure the interests of non-settling defendants." *Tech-Bilt, Inc.*, 38 Cal. 3d at 499. Here, ExxonMobil responded to Settling Plaintiffs' written demand and fairly negotiated the terms of the Settlement Agreements over the course of several months. The

settling parties achieved no tactical gain, but rather, simply resolved all of the Settling Plaintiffs' pending claims against ExxonMobil.  Furthermore, these settlements were not aimed at injuring the interests of any non-settling Defendant or other person.  These Settlement Agreements are simply the result of the settling parties wishing to resolve their claims in a fair and expedient manner.  There is no evidence to the contrary.

Thus, these facts alone are sufficient to defeat any claim of fraudulent conduct, bad faith, or collusion.  *Compare Horton v. Super. Ct.*, 194 Cal. App. 3d 727, 736-740 (1987) (affirming finding of good faith over challenge claiming that the parties settled to enable plaintiffs to suppress settling defendant's expert testimony; the court found that while avoiding the testimony may have been one of plaintiffs' inducements to settle, petitioners failed to establish that it was agreed to as a *condition* of the settlement) *with Mattco Forge, Inc. v. Arthur Young & Co.*, 38 Cal. App. 4th 1337, 1353 (1995) (overturning a finding of good faith where there was no viable claim against the settling defendant and the settlement was aimed at injuring the non-settling defendant's interests by cutting off its cross-complaint against settling defendants).

### 2. The Settlement Amounts Are Reasonable.

California law requires that the settlement amount itself be examined in the context of numerous factors to determine its propriety.  *See Tech-Bilt, Inc.*, 38 Cal. 3d at 499.  These factors include: (1) a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability; (2) the amount paid in settlement; (3) the allocation of settlement proceeds among plaintiffs; and (4) a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial.  *Id.*

As this Court has recognized, Plaintiffs' ultimate recovery at trial, the amount of such recovery (if any), or the ability of any award to be sustained on appeal is far from certain.  The claims here seek to impose liability in large measure based upon a claim that MTBE in gasoline

made the gasoline a defective product. No court has ever issued a final judgment upholding such a claim, nor has any appellate court ever upheld such a judgment. Numerous hurdles and appellate issues confront plaintiffs making these claims, including but not limited to: (1) the statutes of limitation; (2) the offset credit that ExxonMobil receives as a result of the 2008 Settlement Agreement and subsequent settlements by other; (3) the fact that certain wells have had detections of MTBE at levels well below both the applicable primary and secondary maximum contamination levels for MTBE; (4) the preemption doctrine; and (6) the significant issues confronting Plaintiffs regarding proof of causation, either in the traditional sense or by way of alternative and novel causation theories untested in this context. It is within this context that the Court must evaluate the amount of the settlement as applied to these Settling Plaintiffs.

Here, the Settlement Agreements provide for significant consideration, especially in light of the recovery Settling Plaintiffs received from the 2008 Settlement Agreement and the average of those costs paid by the defendants. Plaintiff Quincy received $2,663,840 from the 2008 Settlement Agreement, while its estimate of the cost of treatment is actually $2,011,445. (Ex. 1 (July 22, 2008 Opinion), p. 36). Likewise, Plaintiff Silver received $3,937,202 from the 2008 Settlement Agreement, while its estimated cost of treatment is $2,936,561. (Ex. 1 (July 22, 2008 Opinion), p. 39). If all twelve groups of affiliated settling defendants in the 2008 Settlement Agreement split the settlement payment equally, the proportional liability for each individual defendant is 8.3 percent of the total. Likewise, assuming they equally split the Treatment Protocol costs, they would each be responsible for 8.3 percent of the combined 70.6606 percent (or 5.86% of the total for each defendant group). ExxonMobil has agreed to pay Settling

Plaintiffs a payment[3] in the ballpark of the average amount paid by the 2008 Settlement Agreement defendants and to be potentially exposed for a much larger percentage of Treatment Protocol costs (i.e., 29.34% compared to an average of 5.86%). Thus, the consideration paid or provided by ExxonMobil is certainly reasonable.

Given these facts, the settlement relief provided by ExxonMobil to the Settling Plaintiffs is in no way "so far 'out of the ballpark' as to be "inconsistent with the equitable objectives of the statute." *Tech-Bilt, Inc.*, 38 Cal. 3d at 499; *Horton*, 194 Cal. App. 3d at 735-36 (affirming good faith determination because a settlement amount of $50,000 was not "out of the ballpark" where the court estimated that the case was worth less than $150,000 and recognizing that a settling party should pay less in settlement). There is no question that the total value of the monetary payment and carve-out for potential future treatment offered by ExxonMobil is within the reasonable range of settlement. This is especially so given the recognition by courts that settling parties should pay less in settlement, the amount Settling Plaintiffs have already received in settlements, and the fact that this Court has granted a determination of good faith for the 2008 Settlement Agreement and Treatment Protocol. Thus, the Settlement Agreements between ExxonMobil and Settling Plaintiffs were made in good faith in accordance with California law.

**D.    The Court Should Direct Entry of Judgment Under FRCP 54(b) With Respect to the Court's Determination of a Good Faith Settlement.**

California law requires that a court determine that a settlement was entered into in good faith in order for a party to obtain protection against claims by alleged joint tortfeasors.

---

[3]    Pursuant to California Code of Civil Procedure § 877.6(a)(2), a court can approve a good faith settlement that contains confidential terms. The only limitation is that the simpler "application" procedure available under the statute—but not used here—cannot be used. (Id.)

Therefore, this Court should enter such a judgment on the basis of Federal Rule of Civil Procedure 54(b), which states in relevant part:

> When an action presents more than one claim for relief — whether as a claim, counterclaim, crossclaim, or third-party claim — or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Because there is no just reason for delay, this Court should enter final judgment under Rule 54(b) determining that the Settlement Agreements are good faith settlements, thereby protecting ExxonMobil from any alleged joint tortfeasor claims and effectuating the terms of the Settlement Agreements.  *See, e.g.*, *AmeriPride Servs. Inc.*, 2007 U.S. Dist LEXIS 51364, at *9, 11-12 (upon determining settlement to be in good faith under California law, court entered judgment under Rule 54(b) because there is no reason for delay and the settling parties were entitled to an order protecting them from contribution actions brought by third parties); *Bottoms*, 2001 U.S. Dist. LEXIS 13434, at *3-4 (N.D.Cal.) (finding settlement in good faith under Cal. Code Civ. Proc. § 877 and § 877.6, court entered judgment pursuant to Fed. R. Civ. P. 54(b)).

There is "no just reason for delay" that would prevent an entry of judgment under Rule 54(b) finding that the Settlement Agreements were made in good faith and that claims for contribution and indemnity are barred.  "The desirability of promoting settlement of litigated claims, particularly when presented in the context of complex litigation such as that now before the court, cannot be understated."  *Agway, Inc. Employees' 401(k) Thrift Inv. Plan v. Magnuson*, 409 F. Supp. 2d 136, 140 (N.D.N.Y 2005) (court entered judgment on the good faith of the settlement and the corresponding bar order pursuant to Rule 54(b)); *see also Comerica Bank-Detroit v. Allen Indus., Inc.*, 769 F. Supp. 1408, 1410 (E.D. Mich. 1991) ("The inquiry into the issue of contribution protection would not involve any duplication of effort if done separately

from the rest of the issues presented in this case.") (internal quotation marks omitted). Thus, an entry of judgment under Rule 54(b) would provide finality under the Settlement Agreements.

### III.   CONCLUSION

Based on the foregoing and all the proceedings in these cases, ExxonMobil respectfully requests that this Court determine that the Settlement Agreements were made in good faith and were reasonable pursuant to California law. Accordingly, the proposed order and judgment should be entered pursuant to Rule 54(b).

Dated: July 1, 2010

Respectfully submitted,

_____
Jeffrey J. Parker, Esq.
Sheppard, Mullin, Richter & Hampton LLP
333 S. Hope Street, 48th Floor
Los Angeles, California 90071
Telephone: (213) 617-5586
FAX: (213) 620-1398

*Counsel for Exxon Mobil Corporation (individually and f/k/a Exxon Corporation and d/b/a ExxonMobil Refining & Supply Company, Exxon Chemical U.S.A., and ExxonMobil Chemical Corporation) and ExxonMobil Oil Corporation (individually and f/k/a Mobil Oil Corporation)*