# EXHIBIT 6

# In The Matter Of:

## THE CITY OF NEW YORK, ET AL v. EXXON MOBIL CORPORATION

*VOLUME 39*
*October 1, 2009*

*TRIAL*
*SOUTHERN DISTRICT REPORTERS*
*500 PEARL STREET*
*NEW YORK., NY 10007*
*212-805-0300*

Original File 9A1JCITF.txt, Pages 6201-6406 (206)

**Word Index included with this Min-U-Script®**

[1] A. Yes. The area that I've depicted in blue is what I would
[2] call the area served directly -- well, blue and orange is what
[3] I would call the areas served directly by New York Harbor.
[4]     In addition, New York Harbor is the source of a large
[5] part of the gasoline that's consumed by New England because
[6] it's the last stop for those pipelines that come up to Linden,
[7] New Jersey, and then from there it moves from the kind of
[8] commingled pool in New York Harbor up to New England. And I
[9] calculated that that was about 45 million barrels per year.
[10] Q. And did you also calculate for the entirety of New England
[11] what the total number of millions of barrels per year would be
[12] for all of New England based on shipping out of the New York
[13] Harbor?
[14] A. Yes, I did. This 45 -- I'm sorry. Go back for a second.
[15]     This 45 was actually one of the harder things to come
[16] up with, because we do not have data on shipments of
[17] reformulated gasoline from New York Harbor to New England
[18] because it's only the Army Corps of Engineers that has that
[19] data, and they don't care whether it is reformulated gasoline
[20] or regular gasoline. So I had to do a more complicated set of
[21] calculations to essentially back out that 45 million barrels
[22] per year.
[23] Q. And with regard to New England, did you prepare a graphic
[24] showing the area you were looking at for analysis of what the
[25] demand would be in New England for the entire area?

[1] A. Yes, I did.
[2] Q. The next slide, please.
[3]     Can you tell jury what this shows?
[4] A. What this shows is essentially the area of new England for
[5] which I was calculating demand. I'm sorry about cutting off
[6] Maine, but it was the Maine, New Hampshire, Vermont,
[7] Massachusetts, Rhode Island, Connecticut area. And for that I
[8] calculated the demand for reformulated gasoline of 125 million
[9] barrels per year.
[10] Q. And can you tell the jury why it is 45 on one side and 125
[11] on the other?
[12] A. Yes, I can. The reason is that, like New York Harbor, New
[13] England's demand is satisfied from several different sources.
[14] New England also receives a large amount of its gasoline from
[15] imports from foreign countries and some that moves directly
[16] from either the mid-Atlantic, you know, this region down here,
[17] or all the way from the U.S. Gulf Coast.
[18] Q. Now, when you calculated your percentages for RFG, did you
[19] take into account all of the supply and demand into the harbor?
[20] A. Yes.
[21] Q. And did you prepare a graphic to show the jury how you
[22] calculated this percentage of fraction?
[23] A. Yes.
[24]     MR. STACK: Can you go to slide 17, please.
[25]     THE COURT: Actually, how would you feel about not

[1] doing slide 17?
[2]     MR. STACK: Perfect.
[3]     THE COURT: All right.
[4]     So, ladies and gentlemen, we'll take our luncheon
[5] recess now, and we will reconvene hopefully at 10 after 2. So
[6] you have 70 minutes because we have some work to do. Ten after
[7] 2. Thank you.
[8]     (Continued on next page)

[1]     (Jury not present)
[2]     THE COURT: All right. Please be seated.
[3]     You can go. Please be seated. I need a couple of
[4] minutes of the lawyers' time but it doesn't matter if you
[5] remain in the courtroom because you are on direct, you are
[6] welcome to talk to those lawyers. You just don't need to stay
[7] here for a moment. I need to talk to them about another quick
[8] matter.
[9]     I said that I would place some reasoning on the record
[10] with respect to the public nuisance decision that I sent you
[11] last night, basically that there needs to be an injury to
[12] support the claim. I am just going to read a short little
[13] memo.
[14]     The city agrees that if it cannot show an actual or
[15] future injury, it may not recover money damages for the public
[16] nuisance claim, although it does say it might still be able to
[17] get injunctive relief, and there is some support for this
[18] position in the case law. I cite, in particular, State v.
[19] Fermenta. I know you are all familiar with that.
[20] F-E-R-M-E-N-T-A, 630 N.Y.S.2d 884, a 1995 case, which says, and
[21] I quote: "It has been said that a court of equity will lend
[22] its aid to enjoin a threatened public nuisance wherever it
[23] clearly appears that the acts sought to be restrained will
[24] necessarily result in the creation or maintenance of a
[25] nuisance."

## In The Matter Of:

*THE CITY OF NEW YORK, ET AL V.*
*EXXON MOBIL CORPORATION*

*VOLUME 41*
*October 7, 2009*

*TRIAL*
*SOUTHERN DISTRICT REPORTERS*
*500 PEARL STREET*
*NEW YORK., NY 10007*
*212-805-0300*

Original File 9a7dcitf.txt, Pages 6590-6683 (94)

**Word Index included with this Min-U-Script®**

Page 6658

[1] MR. BONGIORNO: Can you just reread that?
[2] THE COURT: Plus the word yes. Yes, can injury occur
[3] below a state standard?
[4] Yes, and I'll reread that sentence.
[5] MR. CHAPMAN: The only could possible confusion, MCL,
[6] you should tell them that is what maximum contaminant level
[7] means.
[8] THE COURT: No problem.
[9] Two. What weight should our previous 10 parts per
[10] billion finding have in deciding if an injury occurred?
[11] The answer I propose to say is that is your finding.
[12] You should not revisit that finding. You have found that when
[13] all the combined outflow of the six wells that make up Station
[14] 6, when they're all on, the contamination would peak at 10
[15] parts per billion.
[16] MR. BONGIORNO: Just in 2033.
[17] THE COURT: In 2033. My point is if I say that, of
[18] course, that leaves open the possibility of less than all six
[19] running at the same time. So they're not ever bound to 10.
[20] So this note has now been marked as Court Exhibit 11.
[21] What the clerk just showed me is Court Exhibit 10 is the second
[22] verdict sheet, Phase II verdict sheet and it did say, yes, it
[23] did say at what peak level will MTBE found in the combined
[24] outflow of the Station 6 wells and when will that occur?
[25] For the purpose of this question, "combined outflow"

Page 6659

[1] is the combination of all the water from all the wells that
[2] goes into the treatment facility. It is fair to say to them
[3] that, of course, assumes all six wells -- that combined
[4] outflow, all six wells. It is only fair to say that to them
[5] because that is what they answered on Page 2, all right?
[6] Anything further?
[7] MR. BONGIORNO: Judge, I know you said it. I
[8] apologize if I didn't catch it. On the first question, you're
[9] going to reread the charge?
[10] THE COURT: After the word, "yes."
[11] MR. BONGIORNO: It can and it cannot, it is up to
[12] them?
[13] THE COURT: Of course. Oh, yes, of course.
[14] MR. CHAPMAN: There is one other matter if I can raise
[15] with your Honor, but we can do it after the jury.
[16] THE COURT: Yes, one would think. How can you invent
[17] a matter that relates to these two questions? Okay.
[18] Is this the exhibit issue, Mr. Chapman?
[19] MR. CHAPMAN: Yes.
[20] THE COURT: You were supposed to look through each
[21] other's exhibits before they went into the jury room. I trust
[22] you did that so we don't create these problems over the years
[23] of trial so that something goes in that isn't in evidence.
[24] This isn't that bad because the defense put in highlighted
[25] versions of the exhibits instead of just the exhibit.

Page 6660

[1] MR. CHAPMAN: A tab, and --
[2] THE COURT: That is not appropriate. That is not
[3] appropriate.
[4] MR. CHAPMAN: I think, your Honor, what we would
[5] request, the exhibits be taken out, the tabs removed with some
[6] curative instruction.
[7] (The jury returned to the courtroom at exactly 3:25
[8] pm)
[9] THE COURT: Please be seated.
[10] You wrote a note almost a half hour ago. It takes us
[11] a while to gather. The first question said:
[12] "Can injury occur below a state standard?"
[13] The answer is yes, and it is actually at Page 3 of
[14] your charge. I'll reread it.
[15] On the other hand, to prove an injury, the city need
[16] not necessarily prove that its water is or will be contaminated
[17] by a concentration of MTBE that exceeds the maximum contaminant
[18] level set by regulatory authorities. I have already ruled the
[19] city may or may not be injured by MTBE contamination that is at
[20] or below the maximum contaminant level. It is up to you to
[21] determine whether the level of MTBE that you have found will be
[22] in the Station 6 wells in the future and will constitute an
[23] injury to the city.
[24] Maybe your confusion was the word "maximum contaminant
[25] level," also means "MCL," and the MCL is the state standard. I

Page 6661

[1] already told you here that the city need not necessarily prove
[2] its water will be contaminated by a concentration of MTBE that
[3] exceeds the MCL set by regulatory authorities. The short
[4] answer is yes.
[5] In other words, yes, injury can occur below a state
[6] standard if you so find.
[7] No. 2: "What weight should our previous 10 parts per
[8] billion findings have in deciding if injury occurred?"
[9] I will be looking at my screen a little bit, but the
[10] answer is that is your finding that you found in Phase II. I
[11] don't know if you have a copy of the Phase II verdict sheet in
[12] there, but I do, and you should not revisit that finding. You
[13] have found that when all of the six wells that make up the
[14] combined outflow of Station 6, when they're all on, the
[15] contamination would peak at 10 parts per billion in 2033.
[16] You see that in the exact question. At what peak
[17] level will MTBE be found in the combined outflow of the Station
[18] 6 wells and when will that occur? For the purpose of this
[19] question, "combined outflow" is the combination of all the
[20] water from all the wells that goes into the treatment facility.
[21] So you found when all are on, it is 10, and that is your
[22] finding and shouldn't be revisited.
[23] Does that answer both of your questions?
[24] Anybody have a follow-up question or still confused
[25] either of those questions?