UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

Master File No. 1:00-1898
MDL 1358 (SAS) (DCF)
M21-88

-------------------------------------------------

This document relates to:

Incorporated Village of Mineola, et al.
AGIP, Inc. et al., 03 Civ. 10051

Carle Place Water District v. AGIP Inc.
et al., 03 Civ. 10053

Village of Hempstead v. AGIP, Inc. et al.,
03 Civ. 10055

Westbury Water District v. AGIP Inc. et al.,
03 Civ. 10057
------------------------------------------------------------X

# THIRD-PARTY DEFENDANT NORTHVILLE INDUSTRIES CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................... 1

THE ALLEGATIONS IN THE PLEADINGS ............................................................................. 2

THE THIRD-PARTY CLAIMS ..................................................................................................... 6

ARGUMENT .................................................................................................................................. 7

    I.     THESE ACTIONS SHOULD BE DISMISSED OR REMANDED FOR LACK OF SUBJECT MATTER JURISDICTION. ................................. 7

    II.    THE THIRD-PARTY COMPLAINTS ASSERT CLAIMS FOR RELIEF WHICH ARE SEPARATE, INDEPENDENT AND NOT DERIVATIVE OF THE CLAIMS ASSERTED IN THE MAIN ACTIONS. SUCH CLAIMS EXCEED THE PERMISSIBLE SCOPE OF A THIRD-PARTY ACTION AND SHOULD BE DISMISSED. ................ 8

    III.   SEVERAL CLAIMS IN THE THIRD-PARTY COMPLAINTS ARE BARRED BY APPLICABLE STATUTES OF LIMITATION ...................... 10

    IV.   THE FIRST, SECOND AND FIFTH CLAIMS FOR RELIEF SHOULD BE DISMISSED TO THE EXTENT ASSERTED BY TARTAN .................................................................................................. 14

CONCLUSION ............................................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**

145 Kisco Ave. Corp. v. Dufner Enterprises, Inc., 198 A.D.2d 482,
604 N.Y.S.2d 963 (2d Dept. 1993) ............................................................................ 11

Animal Protective Foundation of Schenectady, Inc. v. Bast Hatfield, Inc.,
306 A.D.2d 683, 762 N.Y.S.2d 136 (3d Dept. 2003) ................................................. 13

Bano v. Union Carbide Corp., 2006 U.S. App. LEXIS 21022 (2d Cir., 8/10/06) ....................... 14

Blais Construction Co., Inc. v. Hanover Square Associates-1,
733 F. Supp. 149 (N.D.N.Y. 1990) .............................................................................. 9

Carnegie Mellon University v. Cohill, 484 U.S. 343, 357 & n.7,
108 S.Ct. 614, 622 & n.7, 98 L.Ed.2d 720 (1988) ....................................................... 8

Decker v. Nagel Rice LLC, 2010 U.S. Dist. LEXIS 62042 at *29-30 (S.D.N.Y. 5/28/10) .... 12,13

FCA Associates v. Texaco, Inc., 2008 U.S. Dist. LEXIS 8116 (W.D.N.Y. 2008) ..................... 11

Grace v. Rosenstock, 228 F.3d 40, 55 (2d Cir. 2000) ................................................................. 8

In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation, 2007 U.S. Dist.
LEXIS 40484 (S.D.N.Y. 2007) ............................................................................. 11, 14

In Re: Methyl Tertiary Butyl Ether Prods. Liab. Litig.,
2007 U.S. Dist. LEXIS 89584, *6 (S.D.N.Y. 2007) .................................................... 7

Kozemko v. Griffith Oil Co., 256 A.D.2d 1199, 1200, 682 N.Y.S.2d 503 (4th Dept. 1998) ........ 12

Oliver Chevrolet, Inc. v. Mobil Oil Corp.,
249 A.D.2d 793, 671 N.Y.S.2d 850 (3d Dept. 1998) ................................................. 11

Patel v. Exxon Corp., 284 A.D.2d 1007, 726 N.Y.S.2d 527 (4th Dept. 2001) ............................ 12

Perma Pave Contracting Corp. v. Paerdegat Boat & Racquet Club,
156 A.D.2d 550, 551, 549 N.Y.S.2d 57, 58 (2d Dept. 1989) ..................................... 15

The Jordan [Bermuda] Investment Company, Ltd., 154 F. Supp.2d 682 (S.D.N.Y. 2001 ............. 8

Town of Guilderland v. Texaco Refining and Marketing, Inc.,
159 A.D.2d 829, 552 N.Y.S.2d 704 (3d Dept. 1990) ................................................. 12

Union Turnpike Associates, LLC v. Getty Realty Corp.,
27 A.D.3d 725, 812 N.Y.S.2d 628 (2d Dept. 2006) ................................................... 14

United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130,
16 L.Ed.2d 218 (1966) ................................................................................................ 8

United States of America v. Joe Grasso & Son, Inc., 380 F.2d 749 (5th Cir. 1967) .................... 9

Verizon New York Inc. v. Sprint PCS, 43 A.D.3d 686, 841 N.Y.S.2d 529
(1st Dept. 2007) .......................................................................................................... 13

Video Corporation of America v. Frederick Flatto Associates, Inc., 58 N.Y.2d 1026,
448 N.E.2d 1350, 462 N.Y.S.2d 439 (1983) ............................................................. 13

Yucyco, Ltd. v. Republic of Slovenia, 984 F. Supp. 209, 215 (S.D.N.Y. 1997) .................... 14, 15

Statutes

28 U.S.C. §1367(c)(3) ............................................................................................................. 8

Fed. R. Civ. P. 12(b) and 14(a) ........................................................................................ passim

Fed. R. Civ. P. 12(b)(1) ......................................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 1

Fed. R. Civ. P. 14(a) ................................................................................................. 1, 3, 9, 10

Fed. R. Civ. P. 8 and 12(e) ................................................................................................... 14

N.Y. CPLR 213(2) ............................................................................................................... 14

N.Y. CPLR 214-c ................................................................................................................. 11

New York State Navigation Law §§181(1) and (5) ............................................................. 6

**Other Authorities**

2-12 Moore's Federal Practice – Civil §12.34[4][b] ........................................................... 10

3-14 Moore's Federal Practice – Civil §14.29 .................................................................... 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

Master File No. 1:00-1898
MDL 1358 (SAS) (DCF)
M21-88

---------------------------------------------------
This document relates to:

Incorporated Village of Mineola, et al.
AGIP, Inc. et al., 03 Civ. 10051

Carle Place Water District v. AGIP Inc.
et al., 03 Civ. 10053

Village of Hempstead v. AGIP, Inc. et al.,
03 Civ. 10055

Westbury Water District v. AGIP Inc. et al.,
03 Civ. 10057
------------------------------------------------------------X

## THIRD-PARTY DEFENDANT NORTHVILLE INDUSTRIES CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

### PRELIMINARY STATEMENT

Defendants Tartan Oil Corp. and C.P. Service Station Operating Corp. ("the Tartan defendants") have recently served Third-Party Complaints against Northville Industries Corp. ("Northville") in the above actions. Northville respectfully submits this Memorandum of Law in support of its motion (1) pursuant to Fed. R. Civ. P. 12(b)(1), dismissing or remanding these actions for lack of subject matter jurisdiction, (2) pursuant to Fed. R. Civ. P. 12(b) and 14(a), dismissing various claims asserted in the Third-Party Complaints that are improper and exceed the permissible scope of an impleader action, and (3) pursuant to Fed. R. Civ. P. 12(b)(6), dismissing various claims asserted in the Third-Party Complaints that are time-barred under governing statutes of limitation and/or fail to state claims upon which relief can be granted.

Defendants respectfully submit this motion pursuant to leave granted by this Court in the Order dated August 19, 2010 and during the Conference held on August 25, 2010 in which the motion was addressed.

## THE ALLEGATIONS IN THE PLEADINGS

The Court is intimately familiar with this multi-district litigation in which various municipal entities have asserted claims against numerous defendants alleging MTBE contamination of water supply wells. In the above actions, four municipal entities are alleging that certain identified supply wells are impacted or threatened by MTBE-laden gasoline discharges. See, the Complaints in actions 03 Civ. 10051 (¶206 – Mineola's Supply Well #N-05596), 03 Civ. 10053 (¶206 – Carle Place Water District's Supply Well #2), 03 Civ. 10055 (¶206 – Hempstead's municipal field well) and 03 Civ. 10057 (¶206 – Westbury Water District's Supply Well #11).

The third-party actions are premised upon Northville's alleged prior involvement with respect to property located at 345 Old Country Road, Carle Place, New York, which the Tartan defendants refer to as the "CP Site" (Third-Party Complaints at ¶¶1 & 7). The Complaints in actions 03 Civ. 10051, 03 Civ. 10055 and 03 Civ. 10057 do not contain any allegation that purported MTBE contamination of the water supply wells and/or recharge areas emanated from, or had anything to do with, the CP Site.[1]

The Third-Party Complaints consist primarily of independent state law claims for relief against Northville which are separate and not derivative of the claims and relief sought in the main actions. Plaintiffs in the main actions are seeking damages for alleged contamination of public water supply wells. While third-party plaintiffs include "claims over" for contribution

---

[1] Only the Complaint in action 03 Civ. 10053 (the Carle Place Water District action) alleges involvement of the CP Site.

2

and indemnification relating to plaintiffs' claims, the majority of the Third-Party Complaints purport to assert separate claims for damages relating to private property (the CP Site), which are not derivative of or dependant upon plaintiffs' claims and are outside the scope of the main actions. See Fed. R. Civ. P. 14(a).

The Third-Party Complaints, which are virtually identical, allege the following: During the period of 1954 through 1983, the leasehold interests in the CP Site were successively owned by several petroleum/gasoline companies including Sinclair Refining Co., Rainbow Petroleum Products, Inc., Sinclair Oil Corp. and BP Oil Corp. (¶¶7-12). In 1990, Northville had a leasehold interest in and operated the CP Site with several underground storage tanks which had been installed in 1974, prior to Northville's purchase of the leasehold interest (¶¶7-17).

The Third-Party Complaints allege that in 1988, a tank test failure was reported and, in 1990, groundwater contamination involving concentrations of BTEX at the CP Site was allegedly found (¶¶18-21). It is alleged that in January 1992, Northville made a spill report to the New York State Department of Environmental Conservation (NYSDEC) and a spill file (No. 91-10976) was opened (referred to by Tartan as "the 1992 Spill") (¶ 27). Northville allegedly retained ERM Northeast (ERM), an environmental consultant, to investigate and perform remediation of the alleged release pursuant to a Stipulation and Corrective Action Plan entered into with the NYSDEC in September 1996 (¶28).

According to the Tartan defendants, in or about June 1994, Tartan Oil Corp. (Tartan) began negotiations to acquire the leasehold rights of Northville to the CP Site (¶29). The Third-Party Complaints allege Tartan and CP Service Operating Corp. (CP) to be separate entities, with CP being an "affiliate" of Tartan (¶¶3-5).

By Assignment Agreement dated April 7, 1995, Northville allegedly assigned, to CP, its leasehold rights to the CP Site (¶30). It is alleged that the Assignment Agreement

3

between Northville and CP required Northville to (a) undertake remediation of the then existing contamination at the CP Site from the 1992 Spill, so that the site is in compliance with applicable environmental laws and standards of the NYSDEC, and (b) defend, indemnify and hold CP harmless with respect to the environmental condition of the CP Site existing at that time (¶¶31, 54-55). It is further alleged that on September 26, 1995, Northville and CP executed an "Addendum to Environmental Agreement" which further defined the environmental condition of the site by referencing additional documents related to the site prior to the date of closing (¶56).

There is no allegation that Tartan was a party to the Assignment Agreement or to the "Addendum to Environmental Agreement." Nor is there any allegation that Tartan had or has any leasehold, ownership or other legal interest in the CP Site.

The Third-Party Complaints allege that remediation of the CP Site was undertaken by ERM, on behalf of Northville, between June 1996 and June 1997 (¶¶32-33). Tartan allegedly retained its own consulting engineer to review and monitor the remediation work (¶34). On or about June 12, 1997, ERM reported to the NYSDEC that the remediation at the CP Site was completed and the condition of the site sufficiently met NYSDEC's criteria for remediation (¶35). Thereafter, ERM provided the NYSDEC with the results of the post-remediation monitoring and requested closure of the 1992 Spill case (¶36).

By letter dated November 13, 1997, the NYSDEC informed Northville that No Further Action was required at the CP Site and that the 1992 Spill has been removed from the active spill list (¶37).

The Third-Party Complaints allege that seven months later, on June 9, 1998, Tartan's consultant reviewed ERM's post-remediation test results and purportedly noted levels of MTBE and BTEX above acceptable groundwater quality limits (¶¶38-39). Further samplings were taken in August 1998 which, Northville's analysis revealed, confirmed that the alleged

4

condition noted by Tartan's consultant did not emanate from the 1992 Spill but, instead, from a <u>new</u> discharge which occurred in 1997 - - two years after CP purchased Northville's interest in the CP Site (¶40). Northville, via ERM, communicated these findings to the NYSDEC (<u>Id</u>.). By letter dated August 13, 1998, Tartan's counsel allegedly wrote the NYSDEC responding to ERM's claims, disputing Northville's findings and requesting resumption of the remediation process (¶¶41, 46).

While omitted from the pleadings, documents in the public record show that the NYSDEC found the remediation to be sufficient and did not re-open the 1992 Spill case. <u>See</u> the NYSDEC's public "spill incidents database" at www.dec.ny.gov.

NYSDEC opened a new spill file in 1999 (#99-25412) with respect to the new spill alleged to have occurred while CP owned and operated the premises (¶48). Third-party plaintiffs allege that the 1999 spill case remains open and active (<u>Id</u>.). They further allege that investigation and remediation of the CP Site is ongoing by Third-Party Plaintiffs (¶49), yet they fail to plead any dates or times in which alleged remediation was performed.

The main actions were commenced against the Tartan defendants in state court in November 2003 (¶50). Following removal to this Court, the federal Complaints were served in April 2004 (<u>Id</u>.). Despite knowledge of and participation in these actions, the Tartan defendants waited several years, until April 12, 2006 and July 10, 2006, to request a defense and indemnification from Northville (¶¶50-52). Northville promptly declined the request (<u>Id</u>.).

The Tartan defendants commenced the instant third-party actions on July 30, 2010. This was more than six years after being sued in these actions and four years after Northville rejected their request for a defense and indemnification. Commencement of the third-party actions also occurred more than fifteen years after CP purchased the leasehold of the CP Site with knowledge of the existence of the environmental condition at issue (¶30), twelve years

5

after the Tartan defendants' consultant allegedly advised them, following the remediation, that there remained a presence of MTBE and BTEX levels above acceptable groundwater limits (¶¶38-39), eleven years after disputing the NYSDEC's closure of the 1992 Spill case based on their claim that the CP Site was not adequately remediated (¶¶41, 46), and ten years after knowing of the NYSDEC's 1999 spill case involving the CP Site (¶48).

## THE THIRD-PARTY CLAIMS

The Third-Party Complaints contain the following causes of action:

The "First Claim for Relief" purports to assert a separate state law claim against Northville which is independent and not derivative of the claims alleged and relief sought in the main action. It asserts a claim under New York State Navigation Law §§181(1) and (5) for alleged property damage to the CP Site, reimbursement for investigation and remediation costs relative to the CP Site, damages for "diminution in the value of the CP Site," and other associated "direct" and "indirect" damages relating to the CP Site (¶¶58-69). Also added is a claim seeking "any damages…which may be recovered by plaintiff…in the underlying action"(¶69).

The "Second Claim for Relief" seeks a declaratory judgment with respect to two issues. The first is the relative rights and liabilities of the parties (¶¶72-73). The second, which is separate and not derivative of the claims for relief in the main action, requests a judgment that Northville is responsible to the Tartan defendants for the alleged property damage, diminution in value and cost of remediation of the CP Site (¶74).

The Third and Fourth Claims for Relief purport to seek common law indemnification and contribution (¶¶75-83). However, the claim for indemnification in the Third Claim for Relief also includes a similar separate claim for damages relating to the investigation, remediation and diminution of value of the CP Site (¶78).

6

The "Fifth Claim for Relief" purports to allege a "breach of contract" claim relating to the 1995 Assignment Agreement between Northville and CP (¶¶84-89). It alleges that Northville failed to comply with its obligation under the Assignment Agreement to adequately remediate the then existing environmental condition at the CP Site, and allegedly breached the Agreement by failing to afford the Tartan defendants a defense and indemnification (Id.).

The claims alleged in the Third-Party Complaints are asserted not only by CP, but also by Tartan, notwithstanding the fact that (a) Tartan is not alleged to be a party to the referenced Agreements, and (b) Tartan is not alleged to have any ownership, leasehold or other legal interest in the CP Site.

## ARGUMENT

### I.

### THESE ACTIONS SHOULD BE DISMISSED OR REMANDED FOR LACK OF SUBJECT MATTER JURISDICTION.

This Court had premised subject matter jurisdiction under §1334 of the United States Bankruptcy Code, based upon issues which purportedly emanated from the bankruptcy of Texaco. In Re: Methyl Tertiary Butyl Ether Prods. Liab. Litig., 2007 U.S. Dist. LEXIS 89584, *6 (S.D.N.Y. 2007). There is no dispute that diversity jurisdiction does not exist[2], and there is no federal question involved in the claims or third-party claims herein.

Texaco and its related entities were dismissed from these actions pursuant to Stipulations dated October 29, 2009 and August 4, 2010. Counsel for plaintiffs has advised that all of the claims in the above actions, with the exception of those against the Tartan defendants, have been settled and/or otherwise disposed of. Accordingly, the matters which this Court had previously deemed as a predicate for subject matter jurisdiction no longer exist.

---

[2] Northville is a New York corporation (Third-Party Complaints, ¶6).

7

When no federal question remains, the Court may decline to retain subject matter jurisdiction over remaining state law claims pursuant to 28 U.S.C. §1367(c)(3). See, e.g., United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); The Jordan [Bermuda] Investment Company, Ltd., 154 F. Supp.2d 682 (S.D.N.Y. 2001). Here, no basis for federal subject matter jurisdiction currently exists. These actions involve a dispute primarily between New York entities, involving conduct alleged to have occurred in New York, and New York state law claims. These state law claims should be adjudicated in state court.

In United Mine Workers v. Gibbs, the United States Supreme Court noted that:

> "needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense the state claims should be dismissed as well" (383 U.S. 715, 726) (citations omitted).

See also Carnegie Mellon University v. Cohill, 484 U.S. 343, 357 & n.7, 108 S.Ct. 614, 622 & n.7, 98 L.Ed.2d 720 (1988) (where all federal claims are dismissed, district court should dismiss all state claims as well); Grace v. Rosenstock, 228 F.3d 40, 55 (2d Cir. 2000) (discussing policy reasons for dismissing pendant state law claims after federal claim has been dismissed).

Accordingly, these actions should be dismissed or remanded to state court. At the very least, the Court should dismiss the third-party actions which, as stated, consist primarily of state law claims separate and apart from the claims for relief sought by plaintiffs.

## II.

## THE THIRD-PARTY COMPLAINTS ASSERT CLAIMS FOR RELIEF WHICH ARE SEPARATE, INDEPENDENT AND NOT DERIVATIVE OF THE CLAIMS ASSERTED IN THE MAIN ACTIONS. SUCH CLAIMS EXCEED THE PERMISSIBLE SCOPE OF A THIRD-PARTY ACTION AND SHOULD BE DISMISSED.

Fed. R. Civ. P.14(a), which governs impleader actions, permits a defendant to implead a person not a party to the action "who is or may be liable to him for all or part of the plaintiff's claim against him." A defendant is not, however, permitted to utilize an impleader action to assert claims that are separate or independent of the plaintiffs' claims and not derivative of those claims. In <u>Blais Construction Co., Inc. v. Hanover Square Associates-1</u>, 733 F. Supp. 149 (N.D.N.Y. 1990), the Court, quoting <u>United States of America v. Joe Grasso & Son, Inc.</u>, 380 F.2d 749, 750-51 (5th Cir. 1967), stated:

> "[A]n entirely separate and independent claim cannot be maintained against a third party under Rule 14, even though it does arise out of the same general set of facts as the main claim.... The question whether a defendant's demand presents an appropriate occasion for the use of impleader or else constitutes a separate claim has been resolved consistently by permitting impleader only in cases where the third party's liability was in some way derivative of the outcome of the main claim. In most such cases it has been held that for impleader to be available the third party defendant must be 'liable secondarily to the original defendant in the event that the latter is held liable to the plaintiff.'...Stating the same principle in different words, other authorities declare that the third party must necessarily be liable over to the defendant for all or part of the plaintiff's recovery...or that the defendant must attempt to pass on to the third party all or part of the liability asserted against the defendant....Whichever expression is preferred, it is clear that impleader under Rule 14 requires that the liability of the third party be dependent on the outcome of the main claim" (733 F. Supp. at 152).

The Court in <u>Blais Construction</u> held that most of the causes of action asserted in the third-party complaint were not derivative of or dependent upon the claims asserted in the

9

main action. Therefore, the Court found that the claims did not serve as an appropriate basis for Rule 14(a) impleader, and dismissed the Third-Party Complaint.

For the same reasons, the aforesaid claims in the Third-Party Complaints which are separate from and not derivative of plaintiffs' claims should be dismissed. They do not assert a "claim-over" with respect to plaintiffs' claims for damages to the public water supply. Instead, they seek different relief with respect to a private property (the CP Site) based upon private contractual and other state law claims between the Tartan defendants and Northville. These claims are beyond the proper scope of an impleader action which is supposed to be limited to "claims-over" assessing relative responsibility for the damages alleged by plaintiffs.

The procedural right of impleader is not permitted to be used as a means by which to smuggle separate and non-derivative state law claims into a federal proceeding. The absence of subject matter jurisdiction in this action and the present status of these actions renders the third-party claims particularly inappropriate. If the Court does not dismiss or remand the above actions on subject matter jurisdiction grounds, the improper and over-reaching claims asserted in the Third-Party Complaints which are not limited to a claim-over against Northville should be dismissed.

### III.

### SEVERAL CLAIMS IN THE THIRD-PARTY COMPLAINTS ARE BARRED BY APPLICABLE STATUTES OF LIMITATION.

#### A.

Dismissal of claims under Rule 12(b)(6) is warranted when they are barred by governing statutes of limitation. 2-12 Moore's Federal Practice – Civil §12.34[4][b]. Where, as here, the claims arise under state law, they are governed by applicable state statutes of limitation. 3-14 Moore's Federal Practice – Civil §14.29.

10

The Tartan defendants' First, Second[3] and Third Claims for Relief, insofar as they assert claims seeking recovery for alleged property damage to the CP Site, diminution of value of the CP Site, costs of investigation and remediation of the CP Site, and associated "direct" and "indirect" damages, are untimely and should be dismissed. An action to recover these types of damages must be brought no later than three years "from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier." N.Y. CPLR 214-c; Oliver Chevrolet, Inc. v. Mobil Oil Corp., 249 A.D.2d 793, 671 N.Y.S.2d 850 (3d Dept. 1998).

In FCA Associates v. Texaco, Inc., 2008 U.S. Dist. LEXIS 8116 (W.D.N.Y. 2008), the defendant in an environmental action moved to dismiss similar types of property damage claims pursuant to the three year statute of limitations of N.Y. CPLR 214-c. Defendant asserted that plaintiffs had knowledge of the environmental contamination at the site on the date of its purchase in January 1999, and therefore, the statute of limitations under the Navigation Law expired before plaintiffs commenced the action. The Court held that under N.Y. CPLR 214-c, the applicable statute of limitations for an action to recover damages relating to injury to property caused by petroleum contamination is three years from the earlier of the date when plaintiff knew, or through the exercise of reasonable diligence could have discovered, the alleged injury. Thus, the claims were dismissed as time-barred Id.; see also In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation, 2007 U.S. Dist LEXIS 40484 (S.D.N.Y. 2007) (claims related to property damage caused by petroleum spills are subject to the three year statute of limitations of section 214-c(2), accruing at the earlier of the time the injury is discovered or should have been discovered).

---

[3] A cause of action seeking declaratory judgment is governed by the statute of limitations applicable to the underlying relief sought. 145 Kisco Ave. Corp. v. Dufner Enterprises, Inc., 198 A.D.2d 482, 604 N.Y.S.2d 963 (2d Dept. 1993).

11

In Patel v. Exxon Corp., 284 A.D.2d 1007, 726 N.Y.S.2d 527 (4th Dept. 2001), the plaintiff purchased a former service station from defendant in 1988. Contamination was first discovered at the site in 1996, when a potential lessee conducted a site survey. Plaintiff commenced an action against Exxon as the discharger of the petroleum. The Court held that the contamination should have been discovered in the exercise of reasonable care at the time of the sale of the property in 1988. Since plaintiff should have been on notice that there was contamination at the time of the sale of the property, the action, commenced more than three years later, was time-barred. Id. at 1008; see also Kozemko v. Griffith Oil Co., 256 A.D.2d 1199, 1200, 682 N.Y.S.2d 503 (4th Dept. 1998); Town of Guilderland v. Texaco Refining and Marketing, Inc., 159 A.D.2d 829, 552 N.Y.S.2d 704 (3d Dept. 1990).

Here, the pleadings demonstrate that the Tartan defendants had full knowledge concerning the alleged environmental condition, injury and potential claims and remedies, more than ten years before the instant third-party actions were commenced. The Tartan defendants also had full knowledge of plaintiffs' claims in these actions, and the basis for the third-party claims now asserted against Northville, more than six years before filing the Third-Party Complaints. Accordingly, the aforesaid claims and requests for relief in third-party plaintiffs' First, Second and Third Claims for Relief should be dismissed as time-barred.

**B.**

The First Claim for Relief should also be dismissed in its entirety, since other than the time-barred claims, the only remaining measure of relief sought (reimbursement for damages which may be recovered in the underlying action) is essentially a request for indemnification which is duplicative of the common law and contractual indemnification claims asserted in the Third and Fifth Claims for Relief. See Decker v. Nagel Rice LLC, 2010 U.S. Dist. LEXIS

12

62042 at *29-30 (S.D.N.Y. 5/28/10) (Scheindlin, J.) (claims that are duplicative of other pleaded claims should be dismissed).

### C.

The Fifth Claim for Relief includes allegations that Northville failed in its alleged obligation under the Assignment Agreement to properly remediate the environmental condition that existed at the CP Site as of the date of the closing (Third-Party Complaints, ¶87). It then alleges: "By failing to provide Third-Party Plaintiffs with a defense and indemnification based upon the indemnification provisions contained in the Assignment Agreement, Northville has breached the Assignment Agreement" (¶88). This Count is ambiguous as pleaded. It is unclear whether the allegation of failing to properly remediate the condition pursuant to the Assignment Agreement is pleaded as an independent basis for the claim of breach of the Agreement, or as merely a part of the claim that Northville allegedly breached the Agreement by failing to accept defendants' tender of defense. To the extent the Fifth Claim for Relief is alleging a breach of contract for not properly remediating the prior spill in 1997 (¶33), that claim is time-barred. See N.Y. CPLR 213(2) (six-year "breach of contract" statute of limitations accruing when alleged breach occurs). See also, Video Corporation of America v. Frederick Flatto Associates, Inc., 58 N.Y.2d 1026, 448 N.E.2d 1350, 462 N.Y.S.2d 439 (1983); Verizon New York Inc. v. Sprint PCS, 43 A.D.3d 686, 841 N.Y.S.2d 529 (1st Dept. 2007); Animal Protective Foundation of Schenectady, Inc. v. Bast Hatfield, Inc., 306 A.D.2d 683, 762 N.Y.S.2d 136 (3d Dept. 2003).

### D.

While the First, Second and Third Claims for Relief purport to include claims for reimbursement of "past" costs and expenses, they fail to contain any dates or allegations as to

when such costs and expenses were incurred. Claims for any costs or expenses incurred more than six years before the third-party actions were commenced are time-barred. See N.Y. CPLR 213(2); In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation, 2007 U.S. Dist. LEXIS 40484 (S.D.N.Y. 2007); Union Turnpike Associates, LLC v. Getty Realty Corp., 27 A.D.3d 725, 812 N.Y.S.2d 628 (2d Dept. 2006).

The claims for alleged "past" costs and expenses should be dismissed as insufficiently pled and/or time-barred, or in the alternative, third-party plaintiffs should be directed to replead the claims, pursuant to the Fed. R. Civ. P. 8 and 12(e).

## IV.

### THE FIRST, SECOND AND FIFTH CLAIMS FOR RELIEF SHOULD BE DISMISSED TO THE EXTENT ASSERTED BY TARTAN

The First and Second Claims for Relief fail to state a claim upon which relief can be granted to Tartan. These claims seek property damage including diminution of value and other associated expenses relating to alleged contamination of the CP Site. The Third-Party Complaints do not allege that Tartan owned, leased, or had any legal interest in the CP Site which would provide a legal right to recover for the claims asserted. As such, these claims, to the extent asserted by Tartan, should be dismissed.[4] See Bano v. Union Carbide Corp., 2006 U.S. App. LEXIS 21022 (2d Cir., 8/10/06).

For similar reasons, the Fifth Claim for Relief ("breach of contract") should be dismissed with respect to Tartan. That claim alleges a breach of the 1995 Assignment Agreement between Northville and CP. Since Tartan is not alleged to be a party to this Agreement, the essential requirement of privity is lacking. Yucyco, Ltd. v. Republic of Slovenia,

---

[4] The same applies with respect to the portion of the "Third Claim for Relief" that seeks damages for property damage and diminution of value relating to the CP Site.

14

984 F. Supp. 209, 215 (S.D.N.Y. 1997); Perma Pave Contracting Corp. v. Paerdegat Boat & Racquet Club, 156 A.D.2d 550, 551, 549 N.Y.S.2d 57, 58 (2d Dept. 1989).

## CONCLUSION

For the foregoing reasons, third-party defendant Northville Industries Corp. respectfully requests that the motion be granted; together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
       September 24, 2010

                                        Respectfully submitted,

                                        HERZFELD & RUBIN, P.C.
                                        Attorneys for Third-Party Defendant
                                        Northville Industries Corp.

                                        By: _____
                                             Michael B. Gallub

                                        125 Broad Street
                                        New York, New York 10004
                                        (212) 471-8536
                                        mgallub@herzfeld-rubin.com