UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

IN RE METHYL TERTIARY BUTYL　　　　　<u>OPINION AND ORDER</u>
ETHER ("MTBE") PRODUCTS
LIABILITY LITIGATION　　　　　　　　　　　00 Civ. 1898 (SAS)

------------------------------------------------------- X

This Document Relates to:

------------------------------------------------------- X

ORANGE COUNTY WATER DISTRICT,

　　　　　　　Plaintiff,

　　- against -　　　　　　　　　　　　　　　07 Civ. 9453 (SAS)

UNOCAL, *et al.*,

　　　　　　　Defendants.

------------------------------------------------------- X

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.　INTRODUCTION

　　　　In this consolidated multi-district litigation ("MDL"), plaintiffs seek relief from contamination, or threatened contamination, of groundwater from various defendants' use of the gasoline additive methyl tertiary butyl ether ("MTBE") and/or tertiary butyl alcohol, which is a product formed by the natural degradation of MTBE in water. In May of 2003, plaintiff Orange County Water

District ("OCWD") filed an action in the Superior Court for the County of Orange, California against many gasoline manufacturers, refiners, distributors and retailers operating in Southern California. The action was removed to federal court in July of 2004 and subsequently transferred to this MDL. In September of 2009, a default was entered against G&M Oil Company, Inc. ("G&M"). G&M now moves to set aside that entry of default pursuant to Federal Rule of Civil Procedure 55(c). For reasons to be discussed, that motion is granted.

## II.   BACKGROUND

Unlike many defendants in this MDL, G&M is not a manufacturer, distributor or refiner of gasoline; it operates gasoline service stations, including under the Chevron, Valero and Shell brands, throughout several counties in Southern California.[1] George Pearson founded the business in or about 1969 with one gasoline station in Seal Beach, California.[2] Today, the Company has more than one hundred and sixty gas stations and upwards of nine hundred employees.[3]

---

[1]   *See* Declaration of George A. Pearson ("Pearson Decl."), Chief Executive Officer of G&M, ¶ 2; Declaration of Jennifer Talbert ("Talbert Decl."), Vice President for G&M, ¶ 4; Declaration of James Gray ("J. Gray Decl."), Chief Financial Officer of G&M, ¶ 2.

[2]   *See* Pearson Decl. ¶ 3.

[3]   *See id.*

Despite this impressive growth, it remains family owned and operated.[4] Pearson is its Chief Executive Officer and both his son and daughter, George and Melissa (for whom the company is named), work at G&M.[5]

James Gray, who has worked with Pearson for thirty years, is G&M's Chief Financial Officer and Pearson's self-described "right-hand man."[6] Jennifer Talbert is Gray's daughter and a vice president at G&M.[7] Michael Gray, whose conduct is at the heart of G&M's motion to set aside the default, is his son and was G&M's general counsel.[8] Completing the picture of this family tree, Pearson is Talbert's and Gray's uncle (by his first marriage).[9]

From March of 2001 until January of 2009, Gray was solely responsible for all of G&M's legal matters and was the company's registered agent for service of process.[10] Apparently unbeknownst to his family members and

---

[4] See id.

[5] See id.

[6] J. Gray Decl. ¶ 9. Accord Pearson Decl. ¶ 13.

[7] See Gray Decl. ¶ 9; Pearson Decl. ¶ 13.

[8] See Pearson Decl. ¶ 13.

[9] See id.

[10] See id. ¶¶ 6-7; Declaration of Michael Gray ("M. Gray Decl.") ¶¶ 2-4. Hereafter, Gray refers to Michael, not James, Gray.

business associates at G&M, Gray was struggling through a time of severe personal strife and was in over his head.[11]

In December of 2008, however, G&M became aware that Gray had been severely neglecting his duties when Gray informed his father and Pearson that a default judgment in the amount of four million dollars had been entered against G&M in a matter, *Gutierrez v. G&M Oil Company, Inc.*, filed in Orange County Superior Court, California.[12] Upon learning of the default judgment, Pearson immediately removed Gray from his position at G&M and retained Harry Schenk as outside counsel.[13] At that time, Pearson requested that Gray review all legal files and report to both Schenk and him whether any other actions were pending against G&M.[14] Gray believed that this action had been resolved as to G&M,[15] and

---

[11]   *See* M. Gray Decl. ¶ 4 (admitting that he did not even have access to the electronic service system necessary to review or obtain documents in this case).

[12]   *See* J. Gray Decl. ¶¶ 5-6; Pearson Decl. ¶ 8.

[13]   *See* Pearson Decl. ¶ 10.

[14]   *Id.* ¶¶ 10-11.

[15]   *See* M. Gray Decl. ¶ 7 ("Without waiving the attorney-client privilege, I was specifically asked by George Pearson to advise him, and an outside attorney that he had hired, Harry O. Schenk, of all legal matters, lawsuits, and potential problems of which I was aware. I did not advise either of them about this case. I thought that it had gone away or was resolved as to G&M.").

told them that there were no outstanding actions.[16] According to Pearson, due to their close family relationship, and Gray's expressions of great remorse at the prospect of having injured G&M,[17] he trusted that Gray had ensured this representation was correct.

It is not all that surprising that Gray was not aware that this action persisted. Although he received the complaint in this case, and participated in the action sporadically during its early stages,[18] he did not have access to the electronic service system necessary to receive documents in this case. Gray never answered the complaint and eventually ceased to participate in the action at all.

---

[16] *See Id.* ¶ 9 ("In early June, 2010, I learned that an order of default was entered in this case against the Company. I did not realize that I had failed to answer the complaint. My actions and inactions, alone, led to the entry of default. The Company is entirely blameless and without fault. I told George Pearson that had I had mistakenly thought the case had gone away."); Pearson Decl. ¶¶ 10-13.

[17] *See* Pearson Decl. ¶ 12 ("Michael Gray, showing great remorse, assured me, and my officers, numerous times, that there were no other cases pending that were not being handled, and I believed him; *id.* ¶ 13 ("Based on our close and family relationship, and based on Michael Gray expressing an unequivocal desire to undo his harm and make everything right we believed him that there were no other cases pending."); J. Gray ¶ 6 ("When I learned of this in December 2008, I was deeply concerned for the Company and Michael Gray. I was deeply concerned for the Company because the Gutierrez case financially threatened the Company and its employees. I was deeply concerned for Michael Gray because he is my son and he was almost suicidal when he realized his mistake. He was very hard on himself for allowing this to happen.

[18] *See* M. Gray Decl. ¶¶ 3-6.

As a consequence of this neglect, on August 5, 2005, G&M moved for the Clerk of Court to enter a default against G&M for failure to respond to the complaint. However, apparently due to administrative oversight, a notice of default was not entered until September 17, 2009.[19] Because OCWD's complaint is not for a sum certain, a hearing on damages is required before a default *judgment* can be entered.[20] Accordingly, to prepare for such a hearing, OCWD served G&M with a Rule 30(b)(6) deposition notice on May 28, 2010. At that time, G&M became aware of the entry of default and moved to have this Court set it aside before a default judgment was entered.

Despite G&M's claim that prior to its discovery of the *Gutierrez* default only Gray had knowledge of this action, there are indications that other G&M officers were either aware, or had every opportunity to become aware, of this litigation in its early stages. OCWD has produced an October 23, 2003 letter personally addressed to Pearson advising him of the lawsuit[21] (although Pearson

---

[19]   *See* Fed. R. Civ. P. 55(a).

[20]   *See* Fed. R. Civ. P. 55(b).

[21]   *See* 10/23/03 Letter from OCWD to George Pearson, Ex. 2 to Declaration of Michael Axline ("Axline Decl."), Counsel for OCWD.

denies every having seen it).[22] In addition, Gray brought Talbert and Tom Otjen, who was G&M's General Manager at the time but is now deceased, to a mediation with OCWD and other county agencies.[23] Finally, Otjen verified discovery responses produced by G&M in this matter in 2004.[24]

## III.  APPLICABLE LAW

Federal Rule of Civil Procedure 55(c) permits a district court to "set aside an entry of default judgment for good cause." "In considering whether to relieve a party of a default, a district court must consider three factors: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented."[25] "Defaults are

---

[22]  See 7/22/10 Deposition of George Pearson, Ex. 1 to Axline Decl., 29:4-14.

[23]  According to Gray and Talbert, Talbert and Otjen were not aware that the meeting related to a pending litigation. See M. Gray Decl. ¶ 6; Talbert Decl. ¶¶ 7-9.

[24]  See 9/14/04 Declaration of Tom Otjen, Ex. 5 to Axline Decl.

[25]  Swarna v. Al-Awadi, No. 09 Civ. 2525, No. 09 Civ. 3615, — F.3d —, 2010 WL 37119219, at *14 (2d Cir. Sept. 24, 2010). I apply Second Circuit law in this decision because the issues presented are not "inherently enmeshed" with trial proceedings. In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., No. 00 Civ. 1898, 2009 WL 4496736, at *2 n.14 (S.D.N.Y. Dec. 2, 2009) ("I have discussed elsewhere that pretrial determinations, such as motions to dismiss, that are not inherently enmeshed with trial proceedings are governed by the federal law of the transferee circuit." (citing In re MTBE Prod. Liab. Litig., 2007 WL 700819, at *2 n. 13 (S.D.N.Y. Mar.7, 2007))).

seen with disfavor because of the strong policy of determining cases on their merits."[26] Moreover, "the standard for setting aside *the entry of a default* pursuant to Rule 55(c) is less rigorous than the 'excusable neglect' standard for setting aside *a default judgment* by motion pursuant to Rule 60(b)."[27]

## IV. DISCUSSION

While analysis of the pertinent factors for setting aside an entry of default do not uniformly point in one direction in this case, considered in their totality G&M has demonstrated "good cause" why the entry of default should be set aside.

### A. Willfulness

There is no indication that G&M willfully neglected this action in order to gain a strategic advantage. While several G&M officers had some tangential knowledge of this litigation prior to discovering the *Gutierrez* default, all evidence of their awareness of the litigation ends in 2004. This failure to stay abreast of these proceedings constitutes no more than negligence. The same cannot be said for Gray. Because he was solely responsible for the company's litigation matters, it was grossly negligent for him to ignore these proceedings.

---

[26] *Enron Oil Corp. v. Diakujara*, 10 F.3d 90, 96 (2d Cir. 1993).

[27] *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981) (emphasis added).

However, this gross negligence is not evidence of bad faith, but of psychological hardship.[28] Accordingly, especially in the context of Rule 55(c)'s "good cause" standard this is not the type of willful behavior that justifies maintaining an entry of default.[29]

OCWD argues that while G&M's conduct may have been excusable prior to its discovery of the *Gutierrez* default, it has no excuse for failing to uncover this lawsuit after it became aware of Gray's serious misconduct.[30] OCWD is correct that G&M was careless, even foolish, in trusting Gray's representation that there were no other pending matters requiring G&M's attention. Even though I do not suspect that Gray had any intention to mislead G&M, once G&M knew that he had lost track of the *Gutierrez* action, it was unreasonable for G&M to continue to rely on his representations. Nevertheless, this misguided conduct was

---

[28] *Securities and Exchange Commission v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998) ("We have interpreted 'willfulness,' in the context of a default, to refer to conduct that is more than merely negligent or careless. On the other hand, the court may find a default to have been willful *where the conduct of counsel or the litigant was egregious and was not satisfactorily explained*." (citations omitted) (emphasis added)).

[29] *See American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) ("Such conduct, though grossly negligent, as the District Judge found, was not willful, deliberate, or evidence of bad faith, though it weighs somewhat against granting relief.").

[30] *See* OCWD's Opposition to G&M Oil Company, Inc.'s Motion to Set Aside Default ("Pl. Opp.") at 3-4.

not willful and, given the circumstances, was not so egregious at to amount to bad faith.

G&M is duly advised that it should now make a concerted effort to uncover any other pending litigation matters. G&M was, to an extent, blind-sided by the *Gutierrez* default. Afterward, it was careless in failing to take steps, beyond trusting Gray's representations, to discover whether it was a party to any other pending matters within the United States. It would be grossly negligent – in fact, reckless – to repeat this failure after narrowly escaping a default judgment in this case that G&M asserts would threaten its financial future.

**B.     Meritorious Defense**

In two summary judgment decisions, I dismissed a large number of OCWD's claims against other defendants in this action on statute of limitations grounds.[31] Although that decision did not vitiate all of OCWD's claims – including its continuing tort and statutory claims, which were not challenged by defendants on statute of limitations grounds – G&M does potentially have a complete defense to many (perhaps all) of OCWD's claims, and should be

---

[31] *See In re MTBE Prods. Liab. Litig.*, 676 F. Supp. 2d (S.D.N.Y. 2009); *In re MTBE Prods. Liab. Litig.*, 475 F. Supp. 2d 286 (S.D.N.Y. 2006).

permitted to litigate those claims.[32]

## C.  Prejudice

OCWD asserts that it will be prejudiced by this Court setting aside the default because Gray failed to issue a written litigation hold when he became aware of this action.[33] Moreover, although G&M does not have a standard document retention policy, G&M often retains documents for no more than eight years —[34] meaning that, while the conduct relevant to this action relates back to at least the statute of limitations bar date of May 6, 2000, G&M may now only have documents extending back until 2002. If G&M did fail to preserve documents,

---

[32]  *See State St. Bank and Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 167 (2d Cir. 2004) ("[T]he defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense." (quotation marks and citation omitted)).

[33]  *See* Pl. Opp. at 12. *See also New York v. Green*, 420 F.3d 99, 110 (2d Cir. 2005) ("Some delay is inevitable when a motion to vacate a default judgment is granted; thus, delay alone is not a sufficient basis for establishing prejudice. For example, delay 'may thwart plaintiff's recovery or remedy. It also may result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.'" (quoting 10A Charles A. Wright, et al., Fed. Practice & Procedure: Civil § 2699, at 169 (3d ed. 1998) (quotation marks and citation omitted)).

[34]  *See* 8/6/10 Deposition of Michael Gray, Ex. 7 to Axline Decl., 12:12:25.

sanctions – including an adverse inference – may need to be imposed.[35] However, G&M has already produced over thirty-two thousand pages of documents and three of its executives for deposition since discovering that this action was pending.[36] Going forward, G&M will be expected to produce documents at above-average speed, be forthcoming regarding what documents may have been destroyed, and to go above and beyond what is normally expected of parties to uncover and produce information relevant to this action.

If a default judgment had already been entered, this potential loss of relevant documents might be sufficient to warrant denying G&M's motion. However, considering the "good cause" for setting aside the default demonstrated by G&M, this danger of prejudice alone is insufficient to justify maintaining that entry of default. Any failure to preserve documents will be handled through the ordinary sanctions process.

## V.  CONCLUSION

For the aforementioned reasons, G&M's motion to set aside the default entered against it in this action is granted. A telephone conference is scheduled for October 27, 2010 at 4:30 p.m. The parties should meet and confer

---

[35]  *See generally Pension Comm. of Univ. of Montreal Pension Plan, et al. v. Banc of Am. Secs, LLC, et al.*, 685 F. Supp. 2d 456 (S.D.N.Y. 2010).

[36]  *See* Talbert Decl. ¶ 15.

prior to this date in order to agree upon expedited discovery schedule.  The Clerk of Court is directed to close this motion (Docket No. 152).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            September 27, 2010

## - Appearances -

**Liaison Counsel for Plaintiffs:**

Robin Greenwald, Esq.
Robert Gordon, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
(212) 558-5500


**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
McDermott Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
(212) 547-5583


**Counsel for OCWD:**

Michael D. Axline, Esq.
Miller, Axline & Sawyer
1050 Fulton Avenue, Suite 100
Sacramento, CA 95825
(916) 488-6688

**Counsel for G&M**

Mark S. Adams, Esq.
Jeffer, Mangels, Butler & Marmaro LLP
3 Park Plaza, Suite 1100
Irvine, CA 92614
(949) 623-7230