UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation

No. 00 Civ. 1898
MDL No. 1358 (SAS) (DCF)
M21-88
Master File No. 1:00-1898

---------------------------------------------------------------X

CP SERVICE STATION OPERATING CORP. and TARTAN OIL CORP.,

Third-Party Plaintiffs,

-against-

NORTHVILLE INDUSTRIES CORP.,

Third-Party Defendant.

03 Civ. 10051
03 Civ. 10053
03 Civ. 10055
03 Civ. 10057

---------------------------------------------------------------X

**This document relates to:**

*Incorporated Village of Mineola, et al. AGIP, Inc. et al.*, 03 Civ. 10051
*Carle Place Water District v. AGIP Inc. et al.*, 03 Civ. 10053
*Village of Hempstead v. AGIP, Inc. et al.*, 03 Civ. 10055
*Westbury Water District v. AGIP Inc. et al.*, 03 Civ. 10057

---------------------------------------------------------------X

**AFFIRMATION OF DEBRA L. ROTHBERG**

DEBRA L. ROTHBERG, an attorney duly admitted to practice in the State of New York hereby affirms the following to be true under penalties of perjury:

1. I am a member of the bar of the State of New York and the principal shareholder of DL Rothberg & Associates, P.C. ("DLRA"), the attorneys for Defendants and Third-Party Plaintiffs, C.P. Service Station Operating Corp. ("CP") and Tartan Oil Corp. ("TOC") (collectively, the "Tartan Defendants"), in the above referenced actions.

2. I submit this affirmation in opposition to the Motion To Dismiss filed by Third-Party Defendant, Northville Industries Corp. ("Nortbville").

3. I make this affirmation based on personal knowledge, on documents produced by the parties in this action, and upon information and belief.

4. Annexed hereto as Exhibit "A" is a true and correct copy of the undersigned's letter dated February 16, 2010 addressed to The Honorable Shira A. Scheindlin wherein Tartan Defendants sought leave to move to dismiss or remand Plaintiffs' claims based upon the claim of the lack of federal subject matter jurisdiction.

5. Annexed hereto as Exhibit "B" is a true and correct copy of the transcript of the Case Management Conference held before The Honorable Shira A. Scheindlin on February 22, 2010.

Dated: October 15, 2010

Debra L. Rothberg
*Attorneys for Defendants / Third-Party Plaintiffs, CP Service Station Operating Corp. and Tartan Oil Corp.*
1065 Avenue of the Americas, Floor 19
New York, New York 10018
Phone: (212) 714-1212
Fax: (212) 714-0969

# EXHIBIT A

**DL ROTHBERG & ASSOCIATES, P.C.**
**1065 Avenue of the Americas – Floor 19**
**New York, New York 10018**
**Telephone 212.714.1212**

February 16, 2010

**BY ELECTRONIC MAIL**

The Honorable Shira A. Scheindlin
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1620
New York, NY 10007-1312
Kieran_Gostin@nysd.uscourts.gov

**Re: Master File No. 1:00-1898 (SAS), MDL No. 1358**
**Defendants' Pre-Conference Letter for February 22, 2010 Conference**

Dear Judge Scheindlin:

We are attorneys for defendants' O.K. Petroleum Distribution Corp. and O.K. Petroleum International, Ltd. (the "O.K. Petroleum Defendants"), and also represent defendants' Tartan Oil Corp. ("Tartan") and C.P. Service Station Operating Corp. ("CP S/S") (collectively, the "Tartan Defendants"), in connection with certain actions pending before Your Honor as part of the above-referenced MDL.

While pre-conference submissions have in the past been submitted on behalf of all defendants by McDermott Will & Emery, as liaison counsel, we understand that we represent all of the defendants scheduled to appear for a case management conference before Your Honor on February 22, 2010, and based upon discussions with liaison counsel at McDermott, are submitting this pre-conference letter for your consideration.

**JOINT AGENDA ITEMS**

**I. The Parties Have Not Agreed On Any Joint Agenda Items, and the Court Has Not Set Any.**

**DEFENDANTS' AGENDA ITEMS**

**I. The O.K. Petroleum Defendants' Request That the Court So-Order the Parties' Stipulated Order of Dismissal**

On May 6, 2008, the West Hempstead Water District, through its attorneys, Napoli Bern Ripka & Associates, LLP, initiated an action in federal court against the O.K. Petroleum Defendants, two additional O.K. Petroleum entities, and two Merit Oil entities (08-cv-4290) (the "2008 WHWD Action") with jurisdiction and predicated solely on the on the Energy Policy Act. The

2008 WHWD Action is entirely separate from the 2003 West Hempstead Water District action (03-cv-10052) (the "2003 WHWD Action"), which was originally removed from state court by other defendants, and which has been designated as one of the MDL "focus cases" for some time.

The Stipulated Order of Dismissal for the 2008 WHWD Action (the "Stipulation") is the product of lengthy negotiations between the parties and has been executed by counsel on behalf of *both* the Plaintiff WHWD and the O.K. Petroleum Defendants. See, Exhibit A(the Stipulation), Exhibits B-C (pre-motion correspondence). All of the terms and conditions set forth under the Stipulation have been fully satisfied by the O.K. Petroleum Defendants. First, we have responded to all outstanding discovery in the 2008 WHWD Action, including two sets of document requests and two sets of interrogatories. See, Exhibit A at ¶1. Second, we agreed that Plaintiff would be allowed to re-file its claims in state court with the statute of limitations being tolled as of the date Plaintiff brought the 2008 WHWD Action in federal court. See, Exhibit A at at ¶¶ 2, 4; Exhibit G (transcript of Plaintiff expressing concern over statute of limitations). Third, we agreed to accept service of the initiating documents in any such state court action. See, Exhibit A at ¶3. There is simply no question that Plaintiff WHWD has already received the benefit of its bargain under the Stipulation and the O.K. Petroleum Defendants continue to await the benefit of their bargain, *to wit*: 'So Ordering' by Your Honor of the Stipulated Order of Dismissal.

Plaintiff has offered no good faith reason for now opposing entry of this Stipulation. By telephone Conference with Your Honor of February 12, 2010, Counsel for Plaintiff WHWD requested that the Court decline to So-Order the Stipulation, without any proffer as to a legitimate basis for doing so. When Your Honor set aside the question relative to entry of the Stipulation, and inquired of Plaintiff WHWD as to the basis of jurisdiction in this action under the Energy Policy Act, Plaintiff WHWD could offer none and simply asked that the Court delay their having to answer that question until the conference before Your Honor of February 22, 2010.

This question was, in fact, previously answered by counsel for Plaintiff WHWD, by the very same attorney handling the instant matter, by letter of September 12, 2007, in which Mr. William Dubanevich advised the Court that:

> Plaintiffs believe that the Energy Policy Act of 2005 does not confer jurisdiction on this or any Federal Court and respectfully requests that this Court grants Plaintiffs' leave to file Motions to Remand.

Regardless, only a year later, Plaintiffs blithely filed an action under this statute in Federal Court against the O.K. Petroleum Defendants.

While we understand that this Court may not have rendered a final decision on the matter of jurisdiction in these MTBE cases predicated on the Energy Policy Act of 2005, the WHWD Plaintiff has expressed some significant doubt as to the availability of jurisdiction under this statute and agreed to enter into the Stipulation with the O.K. Petroleum Defendants. While the O.K. Petroleum Defendants are prepared to brief this issue, we are simply at a loss as to why the Court would not simply So-Order the Stipulation.

If for some reason the Court chooses to allow Plaintiff's counsel to withdraw their signature from the Stipulation and disregard their obligations, the O.K. Petroleum Defendants intend to:

1. Seek an order of costs and attorney fees arising from and related to the parties' negotiation of the Stipulation, the O.K. Petroleum Defendants' preparation of responses to Plaintiff's discovery demands thereunder, and the O.K. Petroleum Defendants' having to litigate Plaintiff's rejection of the Stipulation;
2. Seek leave to file the motion to dismiss under Fed.R.Civ.P. 12(b)(1) (as described in the O.K. Petroleum Defendants' April 27, 2009 pre-motion letter to Plaintiff in connection with negotiations toward the Stipulation); and
3. Seek leave to begin the process of seeking Fed.R.Civ.P. 11 sanctions against Plaintiff WHWD for bringing the 2008 WHWD Action in federal court, knowing full well that it was jurisdictionally deficient.

## II. The Tartan Defendants

### A. The Tartan Defendants Seek Leave to Bring a Motion to Dismiss or Remand All Actions Asserted Against Them on Jurisdictional Grounds.

Neither of the Tartan Defendants remain active corporations. Tartan and CP S/S were named in seven MTBE lawsuits commenced in State Court in November, 1993, and removed to Federal Court in December, 2003. The Federal complaints were subsequently served on April, 2004. These seven Federal Court MTBE actions are as follows:

*Village of Mineola v. AGIP, Inc. et al.*, 03-cv-10051
*West Hempstead Water District v. AGIP, Inc. et al.*, 03-cv-10052
*Carle Place Water District v. AGIP, Inc. et al.*, 03-cv-10053
*Town of Southampton v. AGIP, Inc. et al.*, 03-cv-10054
*Village of Hempstead v. AGIP, Inc. et al.*, 03-cv-10055
*Town of East Hampton v. AGIP, Inc. et al.*, 03-cv-10056
*Westbury Water District v. AGIP, Inc. et al.*, 03-cv-10057

Tartan and CP S/S are not named in any of the recently filed MTBE State Court actions.

We have been apprised that most of the named defendants are in the process of settling with the Plaintiffs, so that only a few of the non-refiner (local) defendants remain. The settlement by the large oil companies necessarily raises the issue of jurisdiction in connection with the few remaining defendants. In response to the Plaintiffs' motion to remand these seven cases in 2007, this Court retained jurisdiction over these Federal MTBE actions based upon core bankruptcy jurisdiction in relation to Texaco's bankruptcy proceedings. *See, In re MTBE*, No. 1898-00, 2007 WL 4326755, at *2 (S.D.N.Y. Dec. 5, 2007).

Upon information and belief, Texaco is no longer a defendant in these actions. Therefore, we believe that the Court may no longer have subject matter jurisdiction over the remaining defendants and claims or, at the very least, should decline to continue to exercise supplemental jurisdiction over these actions. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded..." 28 U.S.C. § 1447(c). Moreover, with respect to the Tartan Defendants, the remaining claims all arise under state law, and we are not aware of any residual federal law claims that have or could be asserted against Tartan, or any federal issues implicated in the remaining claims against the remaining defendants. *See, In re MTBE*, 613 F.Supp.2d 437 (S.D.N.Y. 2009) (declining to exercise supplemental jurisdiction over state law claims since the state law claims substantially predominated over the TSCA claims, and retaining supplemental jurisdiction would not promote values of economy, convenience, fairness, and comity.). Therefore, we seek a stay of all discovery and leave to file a motion to raise these jurisdictional issues at this time.[1]

**B. The Tartan Defendants Request Amendments to the Current Scheduling Order and a Preclusion Order**

On February 12, 2010, the Tartan Defendants were served with "Plaintiffs' Interrogatories and Requests for Production of Documents to the Tartan Defendants as to Affirmative Defenses" in all seven of the above-referenced Federal MTBE actions. Tartan was also served with "Plaintiff's First Set of Interrogatories and Requests for Production of Documents to the Tartan Defendants" in the Carle Place, East Hampton and Mineola actions. The Tartan Defendants object to the service of these discovery demands in the West Hempstead and Village of Hempstead actions because the time for fact discovery closed on December 31, 2009, in accordance with CMO 54A. The Plaintiffs knowingly served these untimely demands without seeking leave of this Court.

---

[1] The Tartan Defendants filed a Master Answer on December 10, 2009, based upon the Plaintiffs' stipulation to expand the time to answer to that date. In the Master Answer, the Tartan Defendants raised affirmative defenses referencing certain Federal Statutes, just as the large oil company defendants did, so that the Tartan defendants could take advantage of any rulings that might reference them. We do not believe that jurisdiction can be based upon claims raised in an affirmative defense. If, however, this Court deems otherwise, we would request permission to amend the Master Answer to remove any and all affirmative defenses based upon federal statute, so that a motion based upon jurisdictional issues could proceed.

Moreover, the Plaintiffs issued a third-party subpoena concerning one of Tartan's service stations located in Carle Place, New York, in May, 2009. The Plaintiffs then served a corrected, supplemental subpoena in November, 2009, with which Tartan Oil's successor has fully complied. The Tartan Defendants served their Master Answer on December 10, 2009. Therefore, the Plaintiffs had the time and opportunity to serve these discovery demands within the timeframes set forth in CMO 54A. For these reasons, the Tartan Defendants request that the Court preclude the Plaintiffs from obtaining fact discovery under these untimely discovery demands.

In the event that this court allows the Plaintiffs to proceed with untimely discovery demands, we request appropriate extensions of time to both respond and to propound our own discovery demands. In addition, we wish to seek leave to depose fact witnesses that may be disclosed in the discovery responses and of the Plaintiffs experts with respect to Site Specific Expert Reports, which have yet to be tendered by Plaintiffs. In the Carle Place and Village of Hempstead matters, we will likely seek to bring a third party action naming other dischargers under Article 12 of the New York Navigation Law.

In addition, the Tartan Defendants were given less time (fourteen days) in a proposed CMO that granted other defendants a thirty day extension of time with respect to expert discovery deadlines. We request that the appropriate extensions of time be granted to the Tartan Defendants as well.

Respectfully Submitted,

/s/

Debra L. Rothberg
Adam E. Engel
Attorneys for the O.K. Petroleum Defendants and the Tartan Defendants

Cc: All Counsel of Record by LNFS

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

IN RE: MTBE

MDL 1358 (SAS)

------------------------------x

New York, N.Y.
February 22, 2010
5:00 p.m.

Before:

HON. SHIRA A. SCHEINDLIN

District Judge

APPEARANCES

NAPOLI BERN RIPKA LLP
Attorneys for Plaintiffs West Hempstead, et al.
BY: MARC JAY BERN
WILLIAM J. DUBANEVICH

MILBER MARKIS PLOUSADIS & BEIDEN, LLP
Attorney for Defendant Bartco Corp.
BY: CHRISTOPHER A. ALBANESE

RAWLE & HENDERSON LLP
Attorneys for Defendant Getty Properties Corp.
BY: JOHN C. McMEEKIN II
SUSAN DEAN

DL ROTHBERG & ASSOC.
Attorneys for Defendants O.K. Petroleum and Tartan
BY: DEBRA L. ROTHBERG
ADAM E. ENGEL

(In open court; case called)

THE COURT: Where to begin?

I've received two letters. One is all about O.K. Petroleum and their request that I enforce the stipulation of dismissal. And that was signed sometime back.

Then the Tartan defendants. Are they here? Tartan. Did I greet anybody?

MS. ROTHBERG: Judge, we represent both.

THE COURT: So that's you, Ms. Rothberg.

They want to bring a motion to dismiss on jurisdictional grounds.

MS. ROTHBERG: It's never been done before. We understand.

THE COURT: What?

MS. ROTHBERG: I'm joking.

THE COURT: But I really didn't understand the -- the grounds.

You say that because Texaco is no longer a defendant in this action the Court doesn't have subject-matter jurisdiction. They were a defendant originally at the time of removal but they aren't now.

But that's not a winner, you know, because jurisdiction is assessed as of the time the complaint was filed, therefore, when it was removed. So if one settles with a defendant who is the basis for the jurisdiction, that doesn't

change anything.

MS. ROTHBERG: We understand, Judge. Our view, if you don't mind?

THE COURT: Please.

MS. ROTHBERG: Give you a quick glimpse into what we're thinking.

THE COURT: Please.

MS. ROTHBERG: If virtually all of the defendants at this point will be settling out, and it appears that they will be, including Texaco, we thought, based on some of the past decisions -- and I don't purport to have read all of them, there are quite a good deal of them -- our thought was that since you're left with what are essentially really the smaller players in the industry, I would be very doubtful that any of us will raise -- or at least from my clients, that we would be raising any sort of federal issue; that what's going to be at issue here, Judge, is really going to be a number of different state law claims.

THE COURT: That happens everyday for us. It happens typically in diversity cases. But it happens all the time. We try only state law claims.

MS. ROTHBERG: And I would be perfectly happy to stay here and do that. But I thought it might be an auspicious time to revisit with your Honor.

THE COURT: You can't do it on the proposed basis that

the Court no longer has jurisdiction because the bankruptcy prong of removal is gone. You can't do it. Because the law is so well settled that you assess jurisdiction as of the time of the complaint. That's just too well settled to dispute. So you don't have a ground.

MS. ROTHBERG: Our thought was that since there are so few --

THE COURT: Yeah.

MS. ROTHBERG: And the cases really have not -- other than the focus cases, the other cases have not progressed at all.

THE COURT: That's all true. Maybe there's some other ground. But it's not lack of jurisdiction.

MS. ROTHBERG: All right.

THE COURT: I don't know what it is.

MS. ROTHBERG: I'll go back and think about it.

THE COURT: It's not lack of jurisdiction. Maybe there's some other claim that I don't know what it is because I have federal jurisdiction. I think -- actually, I think I'm equally stuck with that.

It's not a matter of supplemental jurisdiction where you take the state law claims ancillary to the federal. It's not that. I have federal jurisdiction. I think the obligation is to exercise it. So I think you're stuck and I'm stuck. That's the long and the short on jurisdiction. So I don't see

that.

Now, on a different note, the Tartan defendants claim that plaintiffs have filed discovery demands after the cutoff of fact discovery. You say the cutoff was December 31.

So you say that plaintiff should be precluded now from obtaining fact discovery because it's untimely; or alternatively, that the Court should grant an extension to respond.

What's the story on this? Are you talking about the West Hempstead and Hempstead cases or other cases?

MS. ROTHBERG: The focus cases. The Village of Hempstead and West Hempstead.

And I guess our point with that is discovery has, in fact, closed pursuant to your orders. Whether we reach the point of objecting, if discovery is subsequently served, I don't know. But they never went back to the Court to ask for an extension of time. They just simply served discovery, which it's my understanding they're not permitted to do.

THE COURT: What's your response to that?

MR. DUBANEVICH: Your Honor, first, with respect to the discovery that was filed, it was filed for plaintiffs West Hempstead and Village of Hempstead, in addition to the five other plaintiffs that are still before this Court where discovery has been progressing. That's Village of Mineola --

THE COURT: There is no cutoff date for those. I'm

not worried about those. Let's talk about Hempstead and West Hempstead.

MR. DUBANEVICH: We did file late, your Honor. We did file beyond the deadline of December in CMO 54 and 54(a).

The defendants had recently answered the complaint sometime in December of 2009. And we were hoping to get information in advance of having to file formal discovery. We didn't get that information, and we did file formal discovery late.

Ms. Rothberg, in her letter, indicates that if the Court does allow plaintiff to -- allows us interrogatories and discovery demands to be valid, that they ask for an extension of time to also conduct discovery.

In my letter, I indicated that given it's one defendant, Tartan, we could conduct discovery very fast, while still keeping the June 21 trial date set.

THE COURT: When did Tartan answer?

MS. ROTHBERG: Your Honor, if I could, Tartan answered only in December of 2009.

I will say, however, there was an earlier subpoena that plaintiffs did serve.

We represent Tartan actually because of an indemnification arrangement with another client. That client was served with a subpoena. And certainly, if they had wanted additional discovery before then, we -- or if they had wanted

us to answer earlier. There was really no interest whatsoever in Tartan.

And I guess my point for the whole thing is this case, as to Tartan, really hasn't advanced at all.

THE COURT: I agree. It's at the earliest stage.

MS. ROTHBERG: It's at the very early stage. And I recognize that it's a focus case, and it's moved forward with everyone else. But we're still standing here and there's been no real discovery by us or by plaintiffs.

THE COURT: Yeah. So, look, it seems to me that given the answer was on the eve of the discovery cutoff, I can't really prevent plaintiffs from taking discovery.

I think it would be have been more courteous, had they asked the Court's permission, to serve discovery out of time. They didn't think of being courteous. That happens around here almost daily, but sobeit. Still in all, given that the answer was December, I'll let the discovery proceed. I can't promise the June 21 date. I'll just have to see how discovery proceeds.

MS. ROTHBERG: Your Honor, if I could, since -- for all intents and purposes there has been no discovery.

THE COURT: I understand.

MS. ROTHBERG: And obviously if the plaintiffs are going to take discovery, then the defendants want to.

THE COURT: Right. I understand that.

MS. ROTHBERG: Could we try and work out between us --

THE COURT: Of course.

MS. ROTHBERG: -- a full discovery schedule and then come back to you and see if that's acceptable.

THE COURT: Of course. But you can do it in my jury room right now. I don't want to let you go. You're here. So do that. Work it out. See what there is. So that takes care of that.

Now that takes us back to the only other item, which is the O.K. Petroleum problem.

Remind me the history of this one, Mr. Dubanevich. This one was filed --

MR. BERN: Mr. Bern. Your Honor, we don't have any problem if you sign the stip. How's that?

THE COURT: That's faster. I was puzzling over it.

MR. BERN: We had a conference with the defendant a couple weeks ago. We told him we just wanted to try to see if we could resolve.

THE COURT: I will sign it if I can find it. I'm sure I can find it somewhere. My clerk can find it. That's what I'm banking on.

So that leaves Getty.

MR. BERN: I would just like to bring you up to date as to where we are, your Honor. We have had negotiations and discussions with Getty. We believe that we're very close --

and hopefully we'll know very, very soon. And we are in a similar position with Bartco.

THE COURT: Right.

MR. BERN: So we are hoping that as of June 21 we'll be going forward in a trial against O.K. and/or --

THE COURT: Not O.K. You said you're signing the stipulation.

MR. BERN: No, no, I'm sorry. Against Tartan.

THE COURT: Just Tartan.

MR. BERN: Okay. Just Tartan.

THE COURT: What is Tartan, anyway?

MS. ROTHBERG: It's a defunct corporation at this point, Judge. But it operated a number of gas stations. It's simply a gas station owner.

THE COURT: I know you said defunct. Does it have any assets?

MS. ROTHBERG: Well, through an indemnification it would have some assets. But there's one gas station involved in this case. There is just one.

THE COURT: Mr. Bern, one?

MR. BERN: We're not -- we don't know yet, your Honor, because we haven't had discovery.

THE COURT: Okay. So is there anything more for today?

MS. ROTHBERG: Judge, if I could, just to beg your

patience a little bit. Can we come back to you if everybody else settles out and it's just us?

THE COURT: What would you come back and talk about?

MS. ROTHBERG: The jurisdictional issue or some way to deal with the --

THE COURT: You can talk about trial date if you're the only one left standing. I'll probably be more interested in that. Or summary judgment down the road, maybe. I don't know. I think jurisdiction is out. That's the law.

Why don't you now adjourn to the jury room with Mr. Bern, Mr. Dubanevich, and just talk about scheduling.

MS. ROTHBERG: Okay. Very good.

THE COURT: Okay.

(Adjourned)