# EXHIBIT A

THIS AGREEMENT, made the 7 day of ~~March~~ April, 1995, BETWEEN NORTHVILLE INDUSTRIES CORP., a New York corporation, having its principal office at 25 Melville Park Road, Melville, New York, 11747, hereinafter described as the Assignor or Seller, and C.P. SERVICE STATION OPERATING CORP., a Delaware corporation having its principal office at 532 Broadhollow Road, P.O. Box 1017, Melville, New York 11747 hereinafter described as the Assignee or Purchaser.

1.    Sale.   The Seller agrees to sell and assign and the Purchaser agrees to purchase all of the right, title and interest of the Seller as Lessee in and to that certain lease and the leasehold estate created thereby as follows:

a.    Site Lease dated February 16, 1954 between Rainbow Petroleum Products, Inc.; Lessor and Sinclair Refining Company, Lessee, which lease was modified and assigned to Northville Gasoline Corp. regarding premises (the "Premises") known as 345 Old Country Road, located in Section 10, Block 49, Lot 33, Carle Place, New York, Nassau County, more particularly described therein on the terms and conditions contained in said Lease.

b.    An Assignment of the Lease dated October 5, 1983 was made by B. P. Oil, Inc. to Northville Gasoline Corp. and was duly recorded in the Office of the Clerk of Nassau County; and

c.    Northville Gasoline Corp., the Assignee/Lessee as above, was duly merged into Northville Industries Corp. with Northville Industries Corp. being the surviving corporation; and

d.    That the rent payments due under the lease is set forth in the lease; and

e.    The copies of the above documents and others attached hereto as Schedule D, (collectively, the "Lease") are true and correct copies of the original documents (including any leases, assignments, riders, extensions, and modifications thereof in the Seller's possession) and the Seller is not in possession of any additional documents comprising the lease including but not limited to any amendments, supplemental agreements or modifications thereof other than those annexed.

2.    Purchase Price.        The price is REDACTED
REDACTED          , payable as follows:

REDACTED             on the signing of this contract, by check subject to collection. The down payment shall be held in escrow by Herzfeld & Rubin, P.C., the Escrow Agent, and shall not be commingled with Northville Industries Corp.'s funds.

WPGOVT\HB\DOC\LEASE-AG\CP\SSOC329.CP
MARCH 29, 1995
Carle Place

1

TARTAN 1505

REDACTED

, in
cash or good certified check to the order of the Seller on the delivery of the assignment of lease as hereinafter provided.

3.   <u>Subject To.</u>      Said premises are to be assigned subject to:

a.      Zoning, regulations and ordinances of the city, town or village in which the premises lie provided same is not violated by existing structures, or the use and operation thereof as a retail gasoline station.

b.      Consents of record by Seller or any former owner of premises for the erection of any structure or structures on, under or above any street or streets on which said premises may be abut providing same do not limit present use and operation. Seller represents that it has not so consented and that it has no knowledge of any such consents by any prior owner or any third person who had an interest in the premises.

c.      Covenants, restrictions, rights-of-way, easements, reservations, and other encumbrances of record, as long as same do not affect the use and operation of the premises for a retail gasoline station and are not violated by existing structures.

d.      Any state of facts an accurate survey may show as long as same does not render the site unusable as a retail gasoline station as presently configured.

e.      The terms and conditions of the Lease.

4.   <u>Notices of Violations.</u>      Except as otherwise herein set forth all notes or notices of violations of law or municipal ordinances, orders or requirements noted in or issued by the Department of Housing and Buildings, Fire, Labor, Health, NYSDEC, or other Federal, State or Municipal Department having jurisdiction, against or affecting the premises at the closing date, shall be complied with by the Seller and the Lease shall be assigned free of the same, and this provision of this contract shall survive delivery of the assignment of lease hereunder. The Seller shall furnish the Purchaser with an authorization to make the necessary searches therefor, including litigation claims, if any.

Except as otherwise herein set forth with respect to environmental conditions, or otherwise if applicable, on the date of Closing, the Premises shall be in compliance with all laws, ordinances, orders, requirements, rules, or regulations of the federal, state or any local government having jurisdiction.

WPGOVT\HB\DOC\LEASE-AG\CPSSOC329.CP
MARCH 29, 1995
Carle Place

2

**TARTAN 1506**

5.   _Apportionments._   The following are to be apportioned: (a) Taxes and sewer rents, if any, on the basis of the fiscal year for which assessed; (b) Water charges on the basis of the calendar year; (c) Fuel, if any.

6.   _Tax Rate._   If the closing of the title shall occur before the tax rate is fixed, the apportionment of taxes shall be upon the basis of the tax rate for the next preceding year applied to the latest assessed valuation.

7.   _Water Meter._   If there be a water meter on the premises, the Seller shall furnish a reading to a date not more than thirty days prior to the time herein set for closing title, and the unfixed meter charge and the unfixed sewer rent, if any, based thereon for the intervening time shall be apportioned on the basis of such last reading.

8.   _Assignment of Lease._   The assignment of lease shall be the usual form and in proper statutory form for record in the form as annexed hereto as Schedule "B" and shall be duly executed and acknowledged so as to transfer to the Purchaser the Lease free of all encumbrances except as herein set forth.   Such assignment shall also be executed by the Purchaser, for the purpose of assuming the obligation of the Lessee under the Lease.

The Seller will deliver to the Purchaser at the time of the delivery of the assignment of lease hereunder a resolution of its Board of Directors authorizing the assignment of lease and delivery of the assignment of lease, and a certificate by the Secretary or Assistant Secretary meeting the requirements of Section 909 of the Business Corporation Law.   The assignment of lease in such case shall contain recital sufficient to establish compliance with said section.

9.   _Leasehold Title._   The Seller shall give and the Purchaser shall accept a leasehold title such as any reputable title company will be willing to insure.

10.   _Sums Paid on Account._   All sums paid on account of this contract, and the reasonable expenses of the examination of the title to said premises and of the survey, if any, made in connection therewith are hereby made liens on said premises, but such liens shall not continue after an event of material default by the Purchaser under this contract.   Purchaser shall have 15 days within which to cure any alleged default, or to commence to cure and diligently proceed to do so in the event said default cannot be cured within said fifteen (15) day period.

11.   _Fixtures, Equipment and Articles of Personal Property Included._   All fixtures, equipment and articles of personal property attached or appurtenant to or used in connection with said premises are represented to be owned by the Seller, free from all liens and encumbrances except as herein stated, and are included in this sale together with any warranties concerning same which are transferrable as per Schedule attached hereto marked Schedule "C ".   Service and equipment related contracts, if any, which Assignee shall take the assignment subject to are: none.

WPOOVTVHB\DOC\LEASE-ACt\CPSSOC329.CP
MARCH 29, 1995
Carle Place

3

**TARTAN 1507**

12.   <u>Unpaid Items.</u>        The amount of any unpaid taxes, assessments, water charges and sewer rents which the Seller is obligated to pay and discharge, with the interest and penalties thereon to a date not less than two business days after the date of closing title, may at the option of the Seller, be allowed to the Purchaser out of the balance of the purchase price, provided official bills therefor with interest and penalties thereon figured to said date are furnished by the Seller at the closing.

13.   <u>Other Liens or Encumbrances.</u>        If at the date of closing there may be any other liens or encumbrances which the Seller is obligated to pay and discharge, the Seller may, to the extent available use any portion of the balance of the purchase price to satisfy the same, provided the Seller shall simultaneously either deliver to the Purchaser at the assignment of lease instruments in recordable form and sufficient to satisfy such liens and encumbrances of record together with the cost of recording or filing said instruments; or, provided that the Seller has made arrangements with the title company employed by the Purchaser in advance of closing, Seller will deposit with said company sufficient monies, acceptable to and required by it to insure obtaining and the recording of such satisfactions and the issuance of leasehold title insurance to the Purchaser either free of any such liens and encumbrances, or with insurance against enforcement of same out of the insured premises.  The Purchaser, if request is made within a reasonable time prior to the date of closing of title, agrees to provide at the closing separate certified checks as requested, aggregating the amount of the balance of the purchase price, to facilitate the satisfaction of any such liens or encumbrances.  The existence of any such taxes or other liens and encumbrances shall not be deemed objections to closing if the Seller shall comply with the foregoing requirements.

14.   <u>Seller's Affidavit.</u>        If a search of the title disclosed judgments, bankruptcies or other returns against other persons having names the same as or similar to that of the Seller, the Seller will on request deliver to the Purchaser an affidavit showing that such judgments, bankruptcies or other returns are not against the Seller.

15.   <u>Seller's Liability.</u>        In the event that the Seller is unable to assign the Lease in accordance with the terms of this contract, the sole liability of the Seller will be to refund to the Purchaser the amount paid on account of the purchase price and to pay the net cost of examining the title, which cost is not to exceed the charges fixed by the New York Board of Title Underwriters, and the net cost of any survey made in connection therewith incurred by the Purchaser, and upon such refund and payment being made this contract shall be considered canceled.

16.   <u>Delivery of Assignment of Lease - Closing.</u>  The assignment of lease and Bill of Sale (the "Closing") shall be delivered upon the receipt of said payments at the office of NORTHVILLE INDUSTRIES CORP., 25 Melville Park Road, Melville, NY 11747 on or about ninety (90) days from the date of this agreement.

WPGOVT\HB\DOC\LEASE-AG\CPSSOC329.CP
MARCH 29, 1995
Carle Place

4

TARTAN 1508

17. <u>Brokers.</u>    The parties agree that Gene Shapiro is the only broker that brought that about this sale and Seller will be solely responsible for payment of his commission. Seller agrees to indemnify and hold Purchaser harmless of and from any brokerage claims asserted against Purchaser as a result of or relating to transactions occurring prior to the instant assignment transaction.  This indemnity shall survive the assignment of lease.

18. <u>Modification.</u>  This agreement may not be changed or terminated orally.  The stipulation aforesaid is to apply to and bind the heirs, executors, administrators, successors and assigns of the respective parties.

19. <u>Singular - Plural.</u>     If two or more persons constitute either the Seller or the Purchaser, the word "Seller" or the word "Purchaser" shall be construed as if it read "Sellers" or "Purchasers" whenever the sense of this Agreement so requires.

20. <u>Insurance of Title.</u>  The Leasehold to the property will be insurable at ordinary rates, by a reputable title insurance company selected by the Purchaser and shall be free of all title exceptions other than non-monetary encumbrances if enumerated on this contract and those, if any, described in this contract and, set forth in Schedule "A", as may be amended.

The Purchaser agrees to accept the lease subject to the exceptions and conditions contained in this contract.    A policy insuring that in case of encroachments not herein mentioned, the building or the portions thereof which encroach may remain undisturbed so long as the building stands; and in the case of covenants, easements, agreements and restrictions of record not previously excepted, that they are not violated by the property or its use and operation; and in the case of transfer, inheritance, estate, franchise, dissolution, license or similar taxes, charges or liens of any nature not herein before excepted, that the collection will not be enforced against the premises, shall be deemed acceptable under this provision.

The Purchaser shall notify the Seller in writing, a reasonable time prior to the date set herein for closing, of any objections to the proposed assignment.  Receipt of Schedule B from the title search applicable to the property shall be deemed notice of objections, some of which may need to be cured hereunder.  If there should appear any valid objections, the Seller shall have a reasonable time within which to remove the same not to exceed 90 days.  If, in the opinion of the Seller, the objections cannot be removed or it will cost in excess of $5,000.00 to do so, then the Seller shall have the option of returning to the Purchaser the monies paid on account of this contract together with the cost of title search and survey and the parties hereto shall be mutually released.

21. <u>Survey.</u>    Purchaser may at its sole cost and expense order a survey of the premises, to be made by a reputable surveyor, and shall deliver a copy of the survey, to the attorneys for the Seller as soon as practicable.  If any defects, encumbrances or encroachments appear upon such survey, (other than those specified in this contract which Purchaser has agreed

TARTAN 1509

to take subject to,) which render the leasehold interest uninsurable, the Purchaser shall have the right to reject the leasehold by mailing written notice of such rejection, specifying the alleged defects, encumbrances and/or encroachments, by registered mail or certified mail, upon the attorneys for the Seller, upon delivering said survey.  If the Purchaser shall so reject the leasehold, then the Seller shall have a reasonable time within which to remedy such defects after receipt of such notice, and if the defects are not so remedied, shall at once return the deposit made under this contract, and this contract shall in all other respects be null and void.  If the defects be remedied as above provided, or if no defects, encroachments or encumbrances, excepting those specified herein as being taken subject to, appear upon the survey, or should the Purchaser fail to give such notice of rejection within the time specified, then this contract shall remain in full force and effect, and any defect, encroachment or encumbrance appearing upon such survey, shall not be deemed an objection to the assignment of the leasehold, and the Purchaser shall take such leasehold interest subject to any state of facts shown upon such survey, or, if no such survey was made, which an accurate survey would show.

22.   Assignment.  This contract is not assignable by Purchaser or by operation of law, without Seller's prior written consent which consent may not be withheld or delayed by Seller unreasonably, and unless, in any event, such Assignee assumes all of the obligations which survive hereunder and in connection with the Lease.  Notwithstanding the foregoing this Contract may be assigned by the Assignee to an entity in which Barry Tallering is the principal stockholder or to Barry Tallering individually or to a member of his immediate family.

23.   Taxes, Utilities, Assessments, and Related Adjustments.

a.   Taxes.   At closing of the lease hereunder, Purchaser shall pay for all recording costs and escrow fees.  State and local real estate transfer taxes if any, (including documentary stamps and the tax on gains derived from certain real property transfers imposed by Article 31-b of the New York Tax Law [New York Real Property Transfer Gains Tax]) shall be paid by Seller.  Ad valorem taxes and special assessments will be prorated to date of closing.

b.   Utilities.   Charges of water, gas, power, light, and other utility service relating to the property that are applicable to periods prior to and after the closing shall be prorated as of the close of business on the closing date.  Readings to be submitted to Purchaser.

24.   Inventory.

a.   ~~Seller agrees to sell and Purchaser agrees to purchase the motor fuels inventory from Seller's storage tanks and such other reasonable inventory as exists at Seller's cost.  The purchase price for that part of the inventory which constitutes gasoline and diesel products shall be the Northville Dealer Tank Wagon price posted at Seller's terminal on date of closing.~~  Tanks delivered empty.

WPGOVT\HD\DOC\LEASE-AG\CPSSOC329.CP
MARCH 29, 1995
Carle Place

6

TARTAN 1510

b.    Payment for all inventory purchased by Purchaser hereunder shall be made to Seller by check of Purchaser at time of closing.

c.    On the closing date, the inventory shall be conveyed to Purchaser free and clear of all liens, pledges, security interests, or encumbrances of any nature whatsoever.

25.    Liquidated Damages.  Except as otherwise provided herein, after applicable grace or cure periods, if Purchaser fails to pay the balance of the Purchase Price when and as required or refuses at time of closing to accept an assignment of lease drawn in accordance with this contract, or assigns or attempts to assign all or any part of this offer or this contract except in accordance with paragraph "22" hereof, such will amount to a breach of this contract and Seller may, cancel this contract, and retain the earnest money deposit made hereunder as liquidated damages.

If on the date of closing or such adjourned date, Seller shall be unable to assign the lease to said premises as herein provided, Purchaser may cancel this contract whereupon Seller shall promptly repay Purchaser all earnest money, the net cost of title search and cost of survey, if any; neither party shall have any further obligations or liabilities to the other hereunder, or in the alternative Purchaser may proceed to closing with no reduction in purchase price.

26.    Notices.    Any notice required to be sent hereunder shall be sent by Certified U.S. Mail, Return Receipt Requested, or Federal Express overnight, addressed to the respective parties at:

|  |  |
|---|---|
| To Seller: | Northville Industries Corp.<br>25 Melville Park Road<br>Melville, NY 11747<br>Attn:  Peter J. Ripp |
| To Purchasers: | c/o C.P. Service Station Operating Corp.<br>532 Broadhollow Road<br>P.O. Box 1017<br>Melville, NY 11747 |

with a copy to Purchaser's attorney as set forth below.  Notices sent by Certified Mail Return Receipt Requested shall be deemed given three (3) days after deposited in the U.S. Mails, and

TARTAN 1511

notices sent by Federal Express overnight shall be deemed given one (1) day after deposited with Federal Express. Notices may be given by the Attorneys.

27. **Attorney's.** Seller's Attorney is:

> Harry P. Braunstein, Esq.
> Herzfeld & Rubin, P.C.
> 40 Wall Street
> New York, NY 10005

Purchaser's Attorney is:

> Ken Robinson, Esq.
> Tartan Oil Corp.
> 532 Broad Hollow Road
> Melville, NY 11747; and to

> Louis Algios, Esq.
> 200 Old Country Road
> Mineola, NY 11501

28. **Deposit.** The contract deposit paid upon the signing of this Contract shall be paid to Herzfeld & Rubin, P.C., to be held in escrow until the closing, at which time such amount shall be paid to Seller. The provisions under which Herzfeld & Rubin, P.C. is holding the deposit are as follows:

The amount to be paid to Seller on the signing of this Contract shall be paid for Seller's account to Seller's attorney to be held in escrow in its regular interest bearing escrow account until the Closing, at which time such amount shall be paid to Seller. If for any reason the Closing does not occur and either Seller or Purchaser makes a written demand upon Seller's attorney for payment of such amount, Seller's attorney shall give at least ten (10) days written notice to the other party of such demand and of his intention to pay over such amount to the other party on a stated date.

If Seller's attorney does not receive a written objection to the proposed payment before the proposed date for making such proposed payment, Seller's attorney is hereby authorized and directed to make such payment. If such other party delivers to Seller's attorney written objection to such payment before the proposed payment date, Seller's attorney shall continue to hold such amount until otherwise directed by written instructions by all parties or

WPGOVT\HB\DOC\LEASE-AG\CPSSOC\329.CP
MARCH 29, 1995
Carle Place

8

**TARTAN 1512**

a final judgment of a court.  In the event of such a dispute, Seller's attorney may deposit such amount with an appropriate court and, after giving written notice of such action to the parties, Seller's attorney shall have no further obligations with respect to such amount.  Escrowee is acting as a stakeholder only and shall receive no payment for handling such amount and shall not be liable for such handling except in the case of gross negligence or willful disregard of the provisions of this Contract.  Purchaser acknowledges that Escrowee has and may in the future act as counsel to the Seller and shall not be prohibited from acting as such by reason of their role as Escrowee in any dispute between the parties relating to this contract.

29.    Operation of Station.    Seller shall continue business operations at the station in substantially the same manner as operated on the date of this contract until closing, if feasible.

30.    Maintenance of Premises and Equipment.    Seller shall maintain the buildings, equipment and other improvements on the property in its present condition up to the date of closing, reasonable wear and tear excepted.

31.    Remediation.  (a) Seller's environmental reports, if any, relating to the environmental status of the property discloses that certain work is necessary for remediation of the property.  True copies of documents and correspondence relating to such environmental status will be exchanged and initialled by the parties at Closing and will substantially reflect the Environmental Condition of the Premises at the date of Closing (the "Environmental Condition").  Seller has previously reported certain conditions existing on the property to the New York State Department of Environmental Control (NYSDEC).  Purchaser is acquainted with the Environmental Condition and agrees to take title "as is" and in its present condition, however based on Seller's representation made herein, that Seller will cause the property being conveyed herein to be remediated in accordance with the environmental requirements and standards of the NYSDEC or other applicable laws, if any (NYSDEC shall be deemed for purposes of this Agreement to include such other applicable laws).  Seller will be responsible for the remediation of the existing Environmental Condition, except Purchaser shall be responsible for any contamination caused or contributed by Purchaser or any assigns of Purchaser.  Seller will diligently proceed to remediate the property so as to cause such to become in compliance with applicable law and to the standards of the NYSDEC.  Upon completion of the remediation in compliance with NYSDEC standards, Seller will be relieved of any further responsibility for remediation or liability herein.  Purchaser or its assigns agrees to cooperate and not unreasonably interfere with Seller in connection with Seller's remediation hereunder, except as otherwise provided in paragraph 32(c).

(b) If any mechanic's lien is filed against the Premises, as a result of Seller's work to be performed pursuant to the terms set forth in paragraph 31(a) above then

TARTAN 1513

Seller shall discharge or cause the same to be bonded within thirty (30) days from receiving notice of the filing thereof. If Seller shall fail to discharge or bond any mechanic's lien within such time, Purchaser, at its option, in addition to all other rights or remedies herein provided, or provided at law, may bond or pay said lien or claim for the account of and at the expense of Seller, without inquiring into the validity thereof.

       The above stated responsibility and representations shall survive the closing herein.

       (c) Assignor shall defend, indemnify and hold Assignee harmless from and against any claims, demands, penalties, fines, liabilities, damages, costs and expenses of whatever kind or nature, known or unknown, contingent or otherwise, arising out of the following, including without limitation, Assignee's reasonable attorneys, consultant, expert, investigation and laboratory fees, costs and expenses:  1) the Environmental Condition at the premises (premises, for purposes of this paragraph includes, but is not limited to, any buildings, structures, storage tanks, or other property above or below ground as well as drains, drywells, cesspools, septic pools, soil and groundwater, which are at, on, above or below the Premises) failing to be in compliance with all federal, state and local laws, ordinances, rules and regulations, relating to environmental matters, as such laws, ordinances, rules and regulations are in effect during and until the completion of remediation.  2) At Assignor's sole cost and expense, but with Assignee's cooperation where necessary, Assignor shall obtain and comply with all approvals, consents, registrations and permits, if any, required by such laws, ordinances, rules and regulations as the same are in effect during and until the completion of remediation and which concern or relate to the Environmental Condition.  3) In the event any remediation or other actions are necessary in order to bring the Environmental Condition of the Premises into compliance with applicable laws, ordinances, rules or regulations as in effect during and until the completion of remediation, at Assignor's sole cost and expense, but with Assignee's cooperation where necessary, Assignor shall perform such remediation and other actions, including but not limited to, remediating and removing to the degree required by applicable regulation petroleum, chemical, hazardous or toxic substances and materials on, beneath, or otherwise affecting the Premises ("Remediation") and closure of any and all injection wells.  In the event that tank(s) or injection well(s) is/are located subsequent to the date hereof which the parties are not aware of on the date hereof, and which is/are not contained in the existing plans then the cost of such closure shall be borne equally between Assignor and Assignee. 4) Upon completion of the above mentioned remediation, Assignor shall furnish to Assignee a letter from NYSDEC stating that, in connection with the Environmental Condition, no additional work is required.  This provision shall survive Closing.  Assignee or any successors, agrees to promptly cooperate with Assignor in connection with Assignor's compliance with the terms hereof, including but not limited to the prompt execution of any necessary documents, with Assignor to be responsible for costs incurred in connection with such compliance, but not however document execution costs.

       * 31 and 32

TARTAN 1514

The foregoing indemnity shall also be deemed to apply to other "off-site" premises if any to the extent the same are affected by petroleum contaminants or hazardous substances which emanate or have emanated from the Premises and relate to the Environmental Condition. The representations contained in paragraph 31(c) shall survive the Closing herein.

32.    Free of Tenancy, Testing and Remediation Plan.    (a) The premises will be delivered vacant and clean and free of the rights of possession of any tenant, or other person or entity and free of debris, fixtures, equipment and personal property not otherwise enumerated in this contract.  This provision shall survive Closing.

(b)    Tank Tests.    The parties agree that within thirty (30) days herefrom, the Assignor shall remove or cause to be removed, tank bottoms and sludge and thereafter cause certain tests to be performed on the Assignor's underground gasoline storage tanks and lines, by a contractor approved and currently certified by Nassau County Fire Marshal and mutually agreed upon by the parties hereto.  Such tests shall be performed in accordance with all applicable laws, ordinances, rules and regulations, to determine the storage worthiness of all storage tanks and related piping at the premises.  In the event on the basis of such tests, it appears that one (1) or more of such tanks and/or any piping fails such test (deemed for purposes hereof, to be unstorage worthy) and that the cost to repair or replace such tank(s) and/or pipe(s) exceeds $5,000.00, then the following shall apply within fourteen (14) days following written notice of the test results being forwarded to Assignee:

(i)    In the event that the piping is unstorage worthy, the Assignor may terminate this contract in writing whereupon the down payment plus interest shall be returned to the Assignee;

(ii)    In the event any tank is unstorage worthy, either party may terminate this Contract in writing whereby the down payment plus interest shall be returned to the Assignee;

(iii)    In the event this contract is not terminated as above set forth then Assignor shall, at its sole cost and expense, repair such unstorage worthy tank or line or replace same, if such tank or line is not repairable, with a substantially similar tank or line which conform to applicable legal requirements or, upon agreement of the parties, give Assignee a credit at Closing in which event Assignee will assume and be responsible for such repair or replacement.  Such repair or replacement shall be completed by Assignor prior to the Closing hereof, and the Assignor shall have the right to adjourn the closing for a period deemed necessary by it in order to complete such repair or replacement.  Additionally, Assignor shall, in accordance with NYSDEC requirements and at Assignor's sole cost and expense, perform additional testing to

TARTAN 1515

determine the extent of discharge, if any, of petroleum or other contaminants from the unstorage worthy tank(s) in accordance with NYSDEC requirements. Assignor represents that it shall remediate such discharge in accordance with §31 (a) and (c) hereof.

Notwithstanding the above, at Closing, Assignee shall reimburse Assignor for the cost of the tests concerning any tank and lines which were, or are rendered storage worthy by Assignor by the time of Closing. In addition, at Assignee's expense, Assignor will cause a deflection test to be conducted on all tanks. If such tanks fail to meet manufacturers applicable safety specifications then Assignee shall have the right to terminate this Contract by written notice sent within fourteen (14) days following notice of such test results. Notwithstanding the above the costs of the deflection test will be borne equally between the parties.

(c)     Remediation Plan.    Notwithstanding anything to the contrary contained herein, the Closing shall not occur hereunder until a remediation plan and system is agreed upon between Assignor and, if required, the NYSDEC and/or Town of North Hempstead Building Department or other applicable governmental agency and that such plan and system will not interfere with customer access to all gasoline dispensers as currently located on the premises and will reasonably conform to Assignee's proposed plan as transmitted by Assignee to Assignor. *Assignee may amend the remediation plan and the physical manner in which the remediation is conducted, after Closing at its expense in order to accommodate anticipated changes to the structure, improvements and equipment at the premises, which modifications will not be unreasonably objected to by Assignor and concerning which modifications and any requirements thereof (i) Assignor will cooperate with Assignee i.e. - execution of documents, and (ii) Assignee shall and hereby does agree to indemnify Assignor from any costs, damages or expenses. This provision shall survive Closing.

Notwithstanding the foregoing Assignor agrees that it shall reduce the size of the area encompassing the approved remediation system when and as soon as practicable in accordance with law i.e. - when incinerator and propane tanks are no longer required.

In the event that such plan and system is not agreed upon within 150 days from the date hereof then, and at any time thereafter upon ten (10) days prior written notice, either party may cancel this agreement, the deposit shall be returned with any accrued interest thereon to the Assignee and thereafter all rights and liabilities hereunder shall be deemed null and void and of no further force or effect.

(d)     Testing.    Notwithstanding anything to the contrary contained herein and without detracting from or lessening Assignor's obligations hereunder, within fifteen

WPGOVTHB\DOC\LEASE-AG\CPSSOC329.CP
MARCH 29, 1995
Carle Place

\* Assignor shall, at its sole cost and expense, cause to be installed at the premises relating to the remediation, a separate electrical system including, but not necessarily limited to, electric line(s) and meter.

TARTAN 1516

(15) days after Assignee receives written notice of the agreement of the Remediation Plan and System as provided in paragraph "32(c)" hereof, at Assignee's sole cost and expense, Assignee shall have the right, but not the obligation, to enter upon the Premises to make such tests, surveys, borings, drive such test piles and make such soil bearing, hydrocarbon or other tests on the premises, as are deemed necessary in Assignee's discretion reasonably to be approved by Assignor, to determine the suitability of the leased Premises for use as a gasoline service station site, provided that the exercise of such rights shall not be exercised so as to materially damage Assignor's property, or substantially interfere with its present use or occupancy. Assignee shall be responsible for and shall pay to correct any damages directly caused by such tests. Should any of the foregoing tests, borings or surveys indicate matters that in Assignee's judgment materially affect its use then in such event, Assignee may terminate this contract by giving ten (10) days written notice of its intention so to do, and shall be relieved of all liability hereunder and receive the return of the down payment plus interest. Assignee shall substantially comply with the site investigation protocol of Assignor annexed hereto.

(e)   Notice.   Assignee shall promptly provide Assignor with a copy of the written results of any of the tests and/or inspections described in this paragraph, and it shall be the Assignor's, not the Assignee's, obligation to comply with the law of the State of New York and/or the United States with respect to notifying any governmental agency of said results. Assignor releases Assignee from any responsibility with respect to governmental requirements to give notice of said results, and indemnifies Assignee from any liability for failure to comply with such notice requirements. Assignor also agrees to advise its Environmental Consultant ERM-Northeast to promptly provide copies of any material communications concerning the Environmental Condition and Remediation Plan and System to Assignee, and with respect to copies of other documents, if any, to forward same upon request.

33.   Certiorari.   If an application or a proceeding is pending to correct or reduce the assessed valuation of the premises, such proceeding shall be continued by the Seller, and the Purchaser agrees to pay its proportionate share of the fees and disbursements in event that such a reduction is obtained not to exceed one-third of any direct monetary benefit received by Assignee. If a proceeding to correct or reduce the assessed valuation of the premises for the tax year in which the Closing shall occur or for the next succeeding tax year shall be determined, whether by judgment, remission, or by settlement prior to the Closing, Purchaser at Closing, shall reimburse Seller for its proportionate share of the fees and disbursements of obtaining such reduction. This provision shall survive the delivery of the assignment of lease. Assignor represents that there have been no stipulations, settlements or determinations which would affect Assignee.

34.   Future Changes and Notices.   Notwithstanding anything to the contrary contained herewith:

TARTAN 1517

(a)    the parties agree that any changes or additions in the within Agreement may be initialed by the respective attorneys for the parties with the same force and effect as if initialled by the parties.

(b)    the respective attorneys for the parties, as herein identified, are hereby authorized by their respective clients:

(i)  to give any notice which the party is required or permitted to give under this Agreement;

(ii)    to agree to extensions or modifications of time periods as provided herein; and

(iii)  to modify, amend or waive any provision of this Agreement, provided any such notice, extension, modification, amendment or waiver shall be in writing and signed by such attorney.

(c)    All notices under this Agreement shall be in writing and shall be delivered personally or shall be sent by registered, certified or express mail, return receipt requested, or by recognized overnight courier addressed to the respective parties at the addresses first written above and shall be deemed served on the date of delivery, if by personal service, or of the next business day after mailing or deposit with carrier if said notices are sent through the postal authorities or overnight carrier, as the case may be.  Notices signed by the respective attorneys shall be deemed sufficient within the meaning of this Paragraph without the signature of the parties themselves.

35.   <u>Down Payment.</u>     In the event that the check given as a down payment and delivered by the Purchaser to Seller upon the execution of this Agreement is dishonored for any reason by the bank upon which it is drawn, then the Seller, in addition to any other rights and remedies which it may have, may at Seller's option declare to cancel this Agreement and thereupon Seller shall be relieved and released from all obligations hereunder, provided however, nothing contained herein shall be construed to relieve Purchaser from any claim which Seller may have based upon such dishonored check.

36.   <u>Premises "As Is".</u>     Except as otherwise provided herein the Purchaser has inspected the premises, is familiar with the physical condition thereof and is purchasing the premises "as is", at the date hereof, and its present condition subject to natural deterioration between the date hereof and the Closing except that plumbing, heating and electrical systems, equipment and fixtures shall be in working order and the roof (not canopy) shall be free of leaks at Closing.  Assignor shall also repair the bathroom wall and pipe by the time of Closing.  This

TARTAN 1518

Agreement, as written, contains all of the terms of the agreement entered into between the parties as of the date hereof, and Purchaser acknowledges that Seller has made no representations, and held out no inducements to Purchaser, other than those herein specifically expressed. Without limiting the generality of the foregoing, Purchaser, except as specifically stated herein, has not relied on any statements, representations or warranties of Seller, either express or implied, as to:

       (i)    the current or future real estate tax liability, assessment, or valuation of the premises;

       (ii)    the potential qualification of the premises for any benefits conferred by federal, state, or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated;

       (iii)    the presence or absence of any rules or regulations issued by any governmental or quasi-governmental authority, agency or board and/or any violations thereof; and

       (iv)    the income, expenses or operation of the premises.

The Seller is not liable or bound in any manner by any verbal or written statements pertaining to the premises or the operation, expense, condition, income heretofore or hereafter furnished by Seller and/or any real estate broker, agent, employee, or other person, unless the same are specifically set forth herein.

37. _Binding Effect_. The submission of this Agreement to Purchaser does not constitute an offer to Purchaser or an acceptance by Seller of any offer made by Purchaser and this Agreement shall not be binding upon Seller, unless and until it is executed by Seller and a fully executed counterpart of the Agreement is delivered to Purchaser or its attorney.

38.    _Recording_.    Purchaser agrees not to record this Agreement of Sale or a memorandum thereof without the prior written consent of Seller. The breach by Purchaser of its agreement as provided herein shall be deemed a substantial breach and upon such breach Seller may terminate this Agreement and retain the Deposit as and for its liquidated damages. Purchaser may however, at or after closing, record a memorandum of assignment of lease.

39.    _Governing Law._    This Contract shall be governed by the laws of the State of New York.

WPGOVT\HB\DOC\LEASE-AG\CPSSOC329.CP
MARCH 29, 1995
Carle Place

15

TARTAN 1519

40.   Headings.   The headings of section of this contract are for convenience of reference, and in case of any conflict, the text of this contract, rather than such headings, shall control.

41.   Binding on Successors.   The terms of the agreement shall be binding upon the transferees, successors and assignees of the parties hereto.

42.   Venue.   The parties acknowledge that any action or dispute relating to the terms of the agreement may be brought in the Courts of the State of New York, in and for the County of Nassau.

43.   No Default.   Seller represents that it is not and shall not at closing be, in default of the terms of the lease and assignment thereof and that all rent and additional rent due under the terms of the Lease has and shall be paid.

\*

IN WITNESS WHEREOF, Seller and Purchaser have each caused this contract to be duly signed on the day, month and year first above written.

Attest:

NORTHVILLE INDUSTRIES CORP.

By: _____

Title: _____

Attest:

C.P. SERVICE STATION OPERATING CORP.

By: _____

Title: _____

Federal Identification
No._____

\*44.   Notice to Landlord.   Assignor shall at least 10 days prior to closing, send written notice of this assignment by overnight carrier to Assignor's landlord and owner of the fee premises.

WP:GOVT\HB\DOC\LEASE-A\C\CP\SSOC329.CP
MARCH 29, 1995
Carle Place

16

**TARTAN 1520**

## Addendum to Environmental Agreement

Agreement dated September 26, 1995 between NORTHVILLE INDUSTRIES CORP., (the "assignor") and C.P. SERVICE STATION OPERATING CORP., (the "assignee").

Witnesseth:

In consideration of c REDACTED and other good and valuable consideration, the parties hereto do hereby agree as follows:

1. The Environmental Condition defined in Paragraph 31 of the Contract dated April 7, 1995 between the parties hereto ("Contract") for the premises at 345 Old Country Road, Carle Place, NY ("Premises") shall be deemed to include the following:

    1. Those conditions reflected in Assignor's environmental reports and documents relating to the Premises prior to the date of closing, including but not necessarily limited to those documents described in and annexed to correspondence respectively dated March 21, 1995 and April 3, 1995; and from Assignor to Louis Algios, Esq., attorney for Assignee.

    2. Those conditions reflected in Assignee's environmental reports and documents relating to the Premises prior to the date of closing, including but not necessarily limited to those documents described in and annexed to correspondence dated September 5, 1955 from Kenneth L. Robinson, Esq. of Assignee to Thomas Maus of Assignor.

    3. Assignor acknowledges that Assignee, as part of its work to be performed at the premises, shall be digging soil and stockpiling same. In the event any soil is contaminated and relates to environmental conditions caused prior to the date of closing, Assignor, as part of its environmental obligations under the Contract, shall cause any contaminated soil to be removed from the Premises as soon as practicable and in accordance with all legal requirements.

### AFFIDAVIT
### NORTHVILLE INDUSTRIES CORP. TO
### C. P. SERVICE STATION OPERATING CORP.
### RE: 345 OLD COUNTRY ROAD, CARLE PLACE, NY (the "PREMISES")

STATE OF NEW YORK)
                ss.:
COUNTY OF SUFFOLK

       PETER J. RIPP, being duly sworn, deposes and says:

That he is the Senior Vice President of Northville Industries Corp. ("NIC") and makes this
Affidavit on behalf of NIC in connection with the Assignment of the above mentioned leasehold
to C.P. Service Station Operating Corp. ("C.P."), said Assignment to occur this date.

1.    NIC hereby confirms that paragraph "31" of the agreement between the parties
dated April 7, 1995 as modified in the agreement executed simultaneously
herewith, with respect to remediation and indemnity concerning environmental
matters does, in fact, survive the closing of the aforesaid Assignment.

2.    This shall confirm that NIC acknowledges its responsibility and agrees to cure as
soon as practicable those violations referred to in the Nassau County Fire
Commission Order to Remove Violation Forthwith which order, annexed hereto,
is marked Exhibit "A" and made a part hereof. NIC knows of no other violations
which are outstanding concerning the Premises. NIC shall indemnify and hold
C.P. harmless from all damages incurred by C.P. as a result of the failure of NIC
to cure said violations.

3.    This shall confirm that warranties if any, on all equipment, sold and assigned
herewith shall be and hereby are assigned to C.P. Service Station Operating
Corp.

                                    _____
                                     PETER J. RIPP

Sworn to before me this
26th of September 1995.

_____
      Notary Public

                ALICE HELLER
        Notary Public, State of New York
              No. 52-4621636
         Qualified in Suffolk County
      Commission Expires Feb. 28, 19__

WPGOVT\HIL\DOC\1995\AFFT\PJR-ASS1.CPS
         CARLE PLACE 09/26/95

**TARTAN 0815**

## CLOSING STATEMENT

| | |
|---|---|
| **Transaction:** | Assignment of Lease |
| **Premises:** | Gasoline Station at 345 Old Country Road, Carle Place, New York |
| **Date:** | September 26, 1995 |
| **Place:** | Northville Industries Corp. 25 Melville Park Road Melville, New York  11747 |
| **Assignor:** | Northville Industries Corp. |
| **Assignee:** | C.P. Service Station Operating Corp. |

**Present at Closing:**

For Northville Industries Corp.
Peter Ripp, Vice President
Tom Maus, Environmental Engineer
John Klein, Technical Support
Harry Braunstein, Esq. of Herzfeld & Rubin, Esqs.

For C.P. Service Station Operating Corp.
Barry Tallering, President
Allen Leon, Secretary
Louis Algios, Esq.

First American Title Insurance
Phyllis Lo Grande

### SETTLEMENT

| | |
|---|---|
| **Purchase Price:** | $ REDACTED |
| **Rents:** September, 1995<br>$1,350.00/month-$45/day x 4 days | $ REDACTED |
| **Real Estate Taxes:**<br>1995 2nd half Town - $3,176.02<br>$17.64/day x 94 days | $ REDACTED |
| 1995/96 1st half school $7,000.00<br>$38.89/day x 86 days | $ REDACTED |
| **Deflection Test** - $1,085 (50% each) | $ REDACTED |
| **Tank Test** (Reimbursement by Assignee to Assignor) | $ REDACTED |
| Credit to Assignor | $ REDACTED |
| **Contract Deposit** | $ REDACTED |
| Credit to Assignee | $ REDACTED |
| BALANCE DUE ASSIGNOR | $ REDACTED |

**TARTAN 0816**

SCHEDULE "A"

WPGOVT\HB\DOC\CP0328.SCH
   SCHEDULES

TARTAN 1521

# SCHEDULE A

ALL that certain plot, piece or parcel of land with the buildings and improvements thereon erected, situate, lying and being at Carle Place, in the Town of North Hempstead, County of Nassau and State of New York, known and designated as lots nos 6 to 10 in Block 1, on a certain map entitled, "Map of Mineola Park, Section 2, situated near Mineola, Nassau County, New York, surveyed April 1922, S.B. Bowne, Licensed Professional Engineer and Land Surveyor, Mineola, N.Y." and filed in the Office of the Clerk of the County of Nassau, July 9, 1928, as Map #662, bounded and described as follows:

BEGINNING at a monument set at the corner formed by the intersection of the northerly side of Old Country Road with the northwesterly side of Cherry Lane;

Running thence northeasterly along the northwesterly side of Cherry Lane, 109.16 feet to the northerly side of Lot #10 Block 1 on said map;

Running thence westerly along the northerly side of Lot 10, Block 1 on said map and parallel with the northerly side of Old Country Road, 141.40 feet to the easterly side of Lot 5 Block 1 on said map;

Running thence southerly along the easterly side of Lot #5 Block 1 on said map and at right angles to the northerly side of Old Country Road, 100 feet to the northerly side of Old Country Road;

Running thence easterly along the northerly side of Old Country Road, 97.62 feet to the corner, the point or place of BEGINNING.

EXCEPTING therefrom so much of the above described premises as may have heretofore been taken for the widening of Old Country Road.

WPGOVT\HB\DOC\LEASE-AG\CPSSOC329.CP
MARCH 29, 1995
Carle Place

17

**TARTAN 1522**

## *First American Title Insurance Company of New York*

Title No: 142-N-2475

### SCHEDULE A

Hereinafter set forth are additional matters which will appear in our policy as exceptions from coverage unless disposed of to our satisfaction prior to the closing or delivery of the policy.

DISPOSITION

1. Rights of tenants or persons in possession, if any.

2. Taxes, tax liens, tax sales, water rates, sewer rents and assessments set forth herein.

3. Except any state of facts an accurate survey may show.

4. The exact distances, dimensions and locations of the boundary lines of the premises herein described cannot be guaranteed without a survey acceptable and approved by the Law Department of this Company.

5. Telephone Easement in Liber 3470 Cp 453-affects streets.

6. Slope Easement on southerly 2 feet more or less of premises acquired by the County of Nassau under proceeding No. 8719/56.

7. Collateral Assignment of Lessors interest in lease in Liber 13362 Mp 786.

Title Certified in: S&W HOLDING CO.

continued

Page 3

TARTAN 1523

*First American Title Insurance Company of New York*

Title No: 142-N-2475

## SCHEDULE A (CONTINUED)

8.  Lease in Liber 5634 Cp 512 as amended by Liber 5640 Cp 220, extended and modified by Liber 9513 Cp 255 and assigned by Liber 9513 Cp 259, Liber 9513 Cp 262, Liber 9516 Cp 741 held of record by Northville Gasoline Corp.

9.  Proof is required that there has been no change in the partnership agreement or in the membership of the partnership since the date of the Articles of Partnership.

10. Lease dated February 16, 1954 made by Rainbow Petroleum Products Inc. to Sinclair Refining Company, as evidenced by instrument recorded on September 21, 1954 in Liber 5634 at page 512, is a valid and subsisting lease upon the premises therein described for the unexpired term thereof and can be assigned by Northville Gasoline Corp., the owner of record thereof.

11. Proof is required to show that lease in Liber 5634 at page 512, has not been assigned, altered, modified or amended; that said lease is in full force and effect and that no defaults now exist in relation thereto.

12. An estoppel certificate is required from the owner of the fee and from the holders of all subordinate interests thereunder or liens thereon.

13. Except all the terms, covenants, conditions, provisions and agreements contained in said lease being assigned.

14. The assignment of lease to be made should contain the covenant required by Section 13 of the Lien Law.

15. All unrecorded leases must be submitted to this company for consideration prior to the day of the closing. Furthermore, an affidavit is required prior to closing identifying all unrecorded leases affecting the premises.

16. In the event that a Power of Attorney is to be used to execute any instrument at closing, the Power of Attorney must be presented to the Company prior to closing, together with suitable corroborative evidence establishing the authenticity of the signature.

continued          Page 3-A

TARTAN 1524

# *First American Title Insurance Company of New York*

### Title No: 142-N-2475

## SCHEDULE A (CONTINUED)

17. Proof of payment of franchise tax on Northville Gasoline Corp. from incorporation to date of closing is required. Report requested from State Tax Commission shows owes no report or taxes. Corporation merged on June 29, 1989. Company requires name of successor corporation to run appropriate searches.

18. Consent of the Stockholders of Northville Gasoline Corp. to the proposed conveyance must be obtained.

NOTE: The deed should recite "This conveyance has been made with the unanimous consent in writing of all the stockholders of the party of the first part."

19. Searches have been run vs S&W Holding Corp., nothing found.

20. Searches have been run vs Northville Gasoline Corp.

**NOTE:**  Closer shall note the sidewalk/curb affidavit called for on the tax search herein.

**FOR INFORMATION ONLY:**  Old Country Road is a County Road.

**FOR INFORMATION ONLY:  STREET REPORT:**  Cherry Lane is maintained by the Town of North Hempstead.

Amended December 29, 1994  RW:tj                     Page 3-B

TARTAN 1525

SCHEDULE "B"

WPGOVT\HB\DOC\CP0328.SCH
    SCHEDULES

TARTAN 1526

## ASSIGNMENT

This Assignment is made this _____ day of _____, 1995, by Northville Industries Corp., a New York corporation with its principal office at 25 Melville Park Road, Melville, New York 11747 (the "Assignor") and being the same corporate entity which acquired the leasehold interest assigned herein; and _____, a Delaware corporation with offices at 532 Broadhollow Road, P.O. Box 1017, Melville, NY 11747 (the "Assignee").

REDACTED

Witnesseth, that for and in consideration of the sum of _____ in hand paid by Assignee to assignor, the receipt of which is hereby acknowledged, Assignor does hereby assign and transfer unto Assignee all of Assignor's rights, titles and interests (except as herein modified or conditioned) in, to, and under a certain lease (herein called the "Leases"), to Assignor as Lessee and Assignee from the parties named as Lessors and Grantor on the attached Rider, which Rider displays the Lease and Assignment dates (said Lease or a memoranda or indicia thereof being recorded in the office of the Recorder of Assignments, County of Nassau, State of New York, as also indicated in attached Rider), for the unexpired term of the Lease, subject to the payment of rents, if any, and performance of the covenants, conditions and stipulations contained in the Leases and in this Assignment, arising after the date hereof;

Together with all of Assignor's rights, titles and interests in and to any property, real, personal, mixed, or of any other nature, at or appurtenance to the leased premises, as contained in schedule annexed hereto.

And Assignor does hereby delegate to Assignee, its successors and assigns, the performance of all of Assignor's duties under the Lease.

AND the Assignor, in compliance with Section 13 of the Lien Law, covenants that, if applicable, the Assignor will receive the consideration for this Assignment and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose. The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

TO HAVE AND TO HOLD said rights, titles, interests and duties unto Assignee, its successors and assigns, from the date hereof for and during the continuation of the Lease and any extensions or renewals thereof.

Assignor hereby covenants and agrees to and with the Assignee that Assignor is the true and lawful owner of the Lease, Assignor is in full compliance with the terms thereof and not in

WPGOVT\HB\DOC\1995\ASSIGNMT\TOC0328.CP

1 of 2

TARTAN 1527

default thereunder and has good right and full power to assign and transfer the same in the manner aforesaid; that the Lease is now in full force and effect and that all rents and payments due from Assignor as of the date hereof have been paid in full by Assignor.

By the acceptance and delivery hereof, and in consideration of the making of this Assignment, Assignee accepts said rights, titles and interests and agrees and covenants with the Assignor, its successors and assigns, during the continuation of said term to pay the rents reserved and to perform the covenants, conditions and stipulations in said Leases to be performed by the Lessee and Grantee after the date hereof and to keep indemnified, and defend, bearing any and all costs and expenses incidental thereto, the Assignor against all actions, claims and demands whatsoever, in respect of said rents, covenants, conditions and stipulations, or anything relating thereto which arise after the date hereof out of any act or omission of Assignee.

Assignor, its successors and assigns, agrees and covenants with the Assignee, its successors and assigns, during the continuation of said term to perform the covenants, conditions and stipulations in the Contract between the parties dated March ____, 1995 and providing for this Assignment, or at law, to be performed by the Assignor after the date hereof and to keep indemnified, and defend, bearing any and all costs and expenses incidental thereto, the Assignee against all actions, claims and demands whatsoever, in respect of said covenants, conditions and stipulations, or anything relating thereto which arise after the date hereof and relate to such covenants, conditions or stipulations, or applicable law.

IN WITNESS WHEREOF, this Assignment has been signed, sealed, and delivered the day and year first above written.

IN WITNESS WHEREOF, the Assignor has hereunto set its hand and corporate seal, by its duly authorized officers, the day above written.

Signed and acknowledged                        NORTHVILLE INDUSTRIES CORP.
the presence of                                         ("Assignor")


_____              By:_____
                                                           PETER J. RIPP
                                                   Title:     Senior Vice President


                                               _____
                                               ASSIGNEE

_____              By:_____

                                               Title:     President

TARTAN 1528

# VERIFICATION

STATE OF NEW YORK    )
                              ) ss.:
COUNTY OF SUFFOLK   )

On this _____ day of _____, 1995, before me came PETER J. RIPP to me known, who, being by me duly sworn, did depose and say that he resides at c/o 25 Melville Park Road, Melville, New York, that he is the Senior Vice President of NORTHVILLE INDUSTRIES CORP., the corporation described in, and which executed, the foregoing instrument; that it was so executed by order of the board of directors of said corporation; and that he signed his name thereto by like order.

                                         _____

                                         NOTARY PUBLIC

WPGOVT\HB\DOC\1995\ASSIGNMT\TOC0328.CP

**TARTAN 1529**

SCHEDULE "C"

WPGOVT\HB\DOC\CP0328.SCH
  SCHEDULES

TARTAN 1530

## SCHEDULE C

### EQUIPMENT LIST - CARLE PLACE

Five (5)   Dispensers

One (1)   Canopy

Two (2)   8 thousand gallon Fiberglass Underground Storage Tanks

Two (2)   6 thousand gallon Fiberglass Underground Storage Tanks

One (1)   Desk & Chair

Three (3) Fire Extinquishers

Two (2)   Safes

One (1)   Pole

Three (3) Submersible pumps

Price Signs

Ten (10)  Hoses & Nozzles

Premises additionally includes the following buildings and improvements:  One (1) Kiosk

TARTAN 1531

SCHEDULE "D"

WPGOVT\HP\DOC\CP0328.SCH
SCHEDULES

TARTAN 1532

# Sinclair Refining Company

L-10563 NS

DEED 5634 PAGE 512   LEASE AGREEMENT

**THIS AGREEMENT**, in duplicate, made and entered into this......16th....day of......February.......
A. D. 19..54..., by and between......RAINBOW PETROLEUM PRODUCTS, INC.............................

of....901 Hillside Avenue............, street address......New Hyde Park, L. I., N.Y.........,
party of the first part, Lessor (whether one or more, and when referred to by pronoun the singular neuter gender will be used), and SINCLAIR REFINING COMPANY, a Maine corporation, authorized to transact business as a foreign corporation in the State of......New York..................., having its principal business office at New York, New York, party of the second part, Lessee.

**WITNESSETH:**

1. Lessor, for and in consideration of the rents, covenants and agreements hereinafter mentioned, reserved and conditioned on the part of Lessee to be maintained, paid, kept and performed, has rented and leased and by these presents does hereby rent and lease unto Lessee, its successors and assigns, that part and only that part of the following described premises, used for and constituting an oil and gasoline service station, (including Lessor's right in or to the use of the land within street lines in front thereof), and excluding all other parts or portions of said premises, situate in the city of......Carle Place...............
County of......Nassau.............., and State of......New York....................., at No.....................
.........................................Street, (If in the country)...........................miles
.........................................of the City of................................, on.......................
(Insert which direction)
.........................................Highway, State of..........................................; said premises
being also known as....N/W cor. of Old Country Road & Cherry Lane.........................;
Being further described as:                                                    CARLE PLACE

All that Lot or parcel of land, situate, lying and being in Carle Place, Town of North Hempstead, Nassau County, N. Y. known and descibed as Lo 6,7,8,9, and 10 in Block 1 as shown on a map entitled " Map of Mineola Park Section 2 situate near Mineola Nassau County N. Y. " surveyed April by S.B.Bowne and, filed in the office of the clerk of the County of Nass July 9th, 1928 under file # 662. Said lots when taken together as one are bounded & described according to said map as follows.

Beginning at a monument at the northwest corner of Old Country Road and Cherry Lane North 17o33" East 109.16 to a poiny, thence South83 54'20 i 141.40 to a point, thence South 6 05'40 East 100.00 to a point thence North 83 54'20 East 97.62 to the pointand place of beginning.

Improvements and facilities are to be constructed and installed by lessor as provided in a supplemental agreement executed by the parties simultaneously with this lease, which agreement is hereby made a part of this lease.

**TO HAVE AND TO HOLD** the above rented and leased premises with the buildings, improvements and fixtures, and such furniture, pumps, tanks, air compressors, appliances, pipe lines, unloading racks and unloading facilities as may now or hereafter be located or placed thereon by Lessor, and all rights, privileges and appurtenances belonging, together with any and all permits, whether village, city, county or state, unto Lessee, its successors and assigns, for a term of......Ll Ten (10).............year.............
from the......16th............day of......July..................., A. D. 19..54.. Lessor hereby covenants and agrees to place Lessee in possession of the demised premises and improvements at the beginning of and for said term. Lessor hereby gives and grants to Lessee the exclusive option and privilege of extending this lease for a period of.........................................year.......... Lessee may exercise

*(Continued on reverse side)*

TARTAN 1533

DEED 5634 PAGE 513

2. For each month during the term hereof, or any renewal or extension thereof, Lessee shall yield and pay rental for said premises, station and appurtenances in accordance with either of the following:

a. The sum of $ 575.00 per month, or payable monthly in advance

b. A sum equal to_____ cent_____ per gallon of all gasoline which shall be delivered by Lessee to said station and which shall be sold from and through said station during the month for which rental is to be computed, provided, however, that Lessee shall not be obliged to pay any amount in excess of $_____ as rental for any month under this provision.

Lessor shall have the option at the end of each month of accepting payment of rent specified in either subdivision "a" or "b" above, and Lessor shall not be entitled to receive any rental which Lessee shall be obliged to pay rental for any one month under both subdivisions. The monthly periods for which rentals shall be due and payable shall be calendar months. All rentals shall be payable within twenty days after the end of each month, PROVIDED, HOWEVER, NO RENTALS SHALL ACCRUE OR BECOME PAYABLE HEREUNDER BY LESSEE UNTIL THE DATE ON WHICH THE FIRST DELIVERY OF GASOLINE IS MADE BY LESSEE TO THE PREMISES DESCRIBED HEREINABOVE, REGARDLESS OF THE DATE POSSESSION THEREOF MAY BE DELIVERED TO LESSEE; AND LESSOR DOES HEREBY WAIVE ANY AND ALL CLAIMS FOR RENTAL ACCRUING OR TO ACCRUE HEREUNDER PRIOR TO SAID DATE OF DELIVERY OF GASOLINE. All rentals shall be payable to RAINBOW PETROLEUM PRODUCTS, INC. and may be paid by check delivered at or mailed to No. 901 Hillside Avenue

New Hyde Park, L.I. (City), N.Y. (State), or to such other person or persons or at such other place as may be designated in writing by Lessor (such writing to be signed by all individuals if more than one join as Lessor).

4. Lessee covenants and agrees to and with Lessee that the rents being paid in the manner and at the time prescribed, and the covenants and conditions and warranties herein being all and singular kept, fulfilled and performed, Lessee shall lawfully and peaceably have, hold, possess, use and occupy the premises and property hereby leased during the term hereby granted, or any extension thereof, without any hindrance, disturbance or molestation from Lessor; and Lessor hereby warrants and defends to Lessee against the lawful claims of all persons whomsoever the premises and property hereby granted, Lessor further covenants and agrees that, without Lessee's consent, it will not use or permit to be used for the storage, sale, distribution, or advertisement of petroleum products any premises owned or controlled by Lessor adjacent to the premises covered hereby.   realty

5. During the term of this lease Lessor covenants and agrees to pay all general and special taxes assessed, or charged, against said premises or the property of Lessor situated thereon, or on account of the use or occupancy of any or all thereof; and Lessor shall at its own expense obtain and have issued to and in the name of Lessee, or its nominee, any permit necessary or required to operate and maintain said station.

6. Lessor agrees, at its own expense, to make structural repairs only, including roof, walls & floor to maintain in good condition and repair and suitable for the business purposes of Lessee all the premises, improvements and hereby leased, Lessor further agrees to replace any of the demised improvements or which may be destroyed or damaged beyond repair or otherwise rendered unsuitable for the business purposes of Lessee. In the event Lessor shall fail or refuse to make such repairs or replacements, Lessee may do so and deduct the cost thereof from rentals due or to become due under this lease. In the event of destruction of or damage to the demised improvements or caused by fire or action of the elements, and if Lessor fails to rebuild or repair within sixty days after such destruction or damage, Lessee shall have the additional option of terminating this lease by notice to Lessor; and if such option is exercised, Lessee shall be relieved from all obligations hereunder except for rent which shall have accrued prior to the date of the destruction or damage. No rent shall be payable for any period during which the premises shall be untenantable.

7. Lessee shall have the right and privilege of erecting, placing, constructing, equipping, maintaining and operating on the demised premises and in connection with said station any and all structures, improvements, appliances, containers and conveyors of whatsoever kind, on, under and above the ground, it may desire to use or may require in operating, transacting, carrying on and conducting on said premises its business of storing, distributing and marketing products of refined petroleum. Any installation heretofore or hereafter made by Lessee of its equipment, of its signs advertising its products, or of any of its property upon said premises shall be conclusive evidence of Lessee's entry into possession of said premises under the terms of the within lease. Any increase in general realty taxes caused by reason of improvements and pipes on the demised premises, and may continue the use and service thereof during the term of this lease.

TARTAN 1534

DEED 5634 PAGE 514

Rider to lease between RAINBOW PETROLEUM PRODUCTS, INC., Lessor and
SINCLAIR REFINING COMPANY, Lessee

13th. That this instrument shall not be a lien against said premises
in respect to any mortgages that are now on or that hereafter may be placed
against said premises, and that the recording of such mortgage or mortgages
shall have preference and precedence and be superior and prior in lien of this lease
irrespective of the date of recording.

14th. Lessee agrees upon being furnished with receipted tax bills showing due
payment thereof by Lessor, to reimburse Lessor for the amount of any excess in
the aggregate of the general real estate taxes imposed upon the demised premises
over and above those levied for the first full fiscal year in which the
improvements shall be fully included in the assessment upon which the
respective taxes are calculated, such reimbursement to be prorated for any
portion of any year in which the same shall be applicable and provided,
however, that Lessee's liability hereunder for or on account of any such excess
taxes shall be limited to a sum not exceeding $300.00 annually.

It is understood and agreed that Lessee shall not be required to
reimburse Lessor for any special taxes or assessments or for any interest
or penalties which accrue by reason of Lessor's delay in paying the general
taxes, or otherwise, and that any amount Lessee shall be required to pay
Lessor for the last year that this lease shall be in effect shall be
prorated.

**9.** In the event Lessee shall be in default in the payment of rentals hereunder, or otherwise, and sha remain in default for a period of thirty (30) days after notice in writing from Lessor to it of such default Lessor shall have the privilege of terminating this lease and declaring the same at an end, and of repossessir itself of the premises, and Lessor shall have the remedies now provided by law for recovery of rent ar repossession of premises in the event Lessee shall remain in default.

**10.** In the event Lessee is unable to obtain the necessary permissions for conducting its business as here maintain on the leased premises the necessary buildings and equipment for conducting its business as here provided, or if at any time hereafter Lessee is prevented by operation of law from using said station or premises for the purposes aforesaid, then and in any of said events Lessee may, at its option, cancel th lease and be relieved of any further liability hereunder.

**11.** At any time, or from time to time, or on the termination of this lease by lapse of time or otherwi Lessee may, at its option and at its own expense, remove from the demised premises any part of or all t improvements and equipment of whatsoever nature heretofore or hereafter placed or owned by it on t demised premises, whether affixed to the premises or located in, on or under the same, or not; and after su removal shall restore the surface of the ground to its uniform level and even condition, free from all exca tions and debris.

**12. THIS AGREEMENT** shall be binding upon and inure to the benefit of Lessor and Lessee and as v the grantees, heirs, executors, administrators, successors and assigns of Lessor, and the successors and assi of Lessee. Lessee shall have the right to assign this lease or sublet the premises or any part thereof, or al third parties to occupy and use the same. This agreement constitutes a merger of all proposals, negotiati and representations with reference to the subject matter and provisions hereof, and may be altered, amen or modified only in writing signed by Lessor and a representative of Lessee authorized to sign this agreemd Lessor acknowledges notice that this instrument may be executed on Lessee's behalf only by one of its offi or managers and that none other has authority to consent or agree to any alteration, amendment, modific or limitation whatsoever of the terms of this agreement.

WITNESS the hands and respective seals of the parties hereto respectively witnessed or attested day and the year first above written.

Signed, sealed and delivered in the presence of:

*Jacob Meyers*
JACOB MEYERS

RAINBOW PETROLEUM PRODUCTS

By *George Wisser* (SE
GEORGE WISSER) Party of the First Part, Le

SINCLAIR REFINING COMPANY

By *B.R. Mackenzie* (SE
B.R. MACKENZIE) Party of the Second Part, Le

## LESSOR'S ACKNOWLEDGMENT

STATE OF __New York__

COUNTY OF __Nassau__ }ss.

On this __16th__ day of __February__, 19__
before me, the undersigned, a Notary Public in and for said County and State, personally appeare above named Lessor, personally known to me, and to me acknowledged that Lessor executed the abov foregoing lease for the uses, purposes and considerations therein expressed, and that the execution same was the free and voluntary act and deed of the Lessor, and I further certify, if Lessor is a corpor it appeared by the officer who signed on its behalf, and such officer to me acknowledged that the exe of said lease was by authority duly granted.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and the last above written.

My commission expires:

JACOB MEYERS
NOTARY PUBLIC, State of New York
No. 35-2915110
Qualified in Nassau County, Cert. filed
with Queens County Clerk and Register
Term Expires March 30, 1952

*Jacob Meyers*
Notary Public

## LANDOWNER'S CONSENT
(Must be procured in all instances)

The undersigned, owner (herein referred to in the singular number whether one or more) of the pr hereinabove described, hereby consents to the subletting of same in accordance with the above and for agreement.

WITNESS:

*Jacob Meyers*

RAINBOW PETROLEUM PRODUCTS

By *George Wisser*
Owne
GEORGE WISSER, PRES,

TARTAN 1536

EXTENSION AND MODIFICATION OF LEASE

This Agreement made and entered into this 25th day

May, 1974, by and between S & W HOLDING CO., a co-partnership

having its principal place of business at 44 Lehigh Court,

Rockville Centre, New York, as Lessor and BP OIL INC., an Oh

corporation, having its principal place of business at One

Rollins Plaza, Wilmington, Delaware, authorized to transact

business as a foreign corporation in the State of New York,

Lessee;

W I T N E S S E T H :

WHEREAS, by Indenture of Lease, dated February 16, 1954

between RAINBOW PETROLEUM PRODUCTS, INC., as Lessor and SINC

REFINING COMPANY, as Lessee, recorded in the Nassau County C

Office on September 21, 1954, in Liber 5634 of Deeds, Page 5

covering premises located at Old Country Road and Cherry Lar

Carle Place, New York, as more particularly described in sai

lease which has been extended and modified from time to time

and

WHEREAS, Lessor herein has heretofore acquired all inte

in and to said Lease and the property covered thereby, and

WHEREAS, Lessee herein has heretofore acquired all rigt

title and interest in and to said Lease and the premises co\

thereby; and

WHEREAS, Lessor and Lessee now desire to extend and moc

said Lease, dated February 16, 1954, as hereinafter provide

WHEREAS, Lessee desires to construct a new service stat

and improvements on the demised premises at a cost of approx

imately $85,000.

NOW, therefore, it is mutually agreed by and between L

and Lessee as follows;

TARTAN 1537

(1)  The Option to extend the term of said Lease contair

in that certain Extension and Modification Agreement, dated

March 8, 1965, extending the term of said Lease dated Februai

16, 1954, for an additional term of five (5) years commencing

March 1, 1975 and ending February 29, 1980 at a rental of

$825.00 per month is hereby considered as exercised by Lesse

and no further notice is necessary in order for the Lease to

continue on all of its terms and conditions and as provided

therein for this additional five (5) year extended term.

(2)  It is further understood and agreed that the term

of said Lease is hereby extended for a term of 20 years comm

cing March 1, 1980 and ending on February 28, 2000, on all c

its terms and conditions as it has been modified from time t

time by various agreements, except that Lessee shall yield a

pay as rental for said premises during the first five (5) ye

of said 20 year term the sum of $900.00 per month; rental fc

the second five (5) year term shall be $1,050.00 per month;

rental for the third five (5) year term shall be $1,200.00 F

month; and rental for the fourth five (5) year term shall b

$1,350.00 per month.

(3)  Lessee shall have the further privilege of again

extending term of said Lease at the expiration of the 20 ye

term for an additional five (5) years at a rental of $1,550

per month.  This option may be exercised by Lessee giving 9

days written notice to Lessor prior to the expiration of th

said 20 year term as provided herein.

(4)  Lessee shall have the further right to extend for

additional term of five (5) years at the expiration of the

first extension option which may be exercised by Lessee giv

the Lessor 90 days written notice prior to the expiration c

said five (5) year extended term.  Rental for the addition

2nd five (5) year option shall be $1,650.00 per month.

TARTAN 1538

(5) Lessor gives and grants to Lessee the right

raze and remove from said premises all improvements now loc

thereon and to construct a new service station improvement

thereon at Lessee's cost and expense of approximately $85,0

and according to Lessee's plans and specifications. In th

connection, Lessor agrees and consents for Lessee to apply

the Town of North Hempstead for a variance and conditional

permit in order to obtain the necessary approvals and perm

to raze and improve the premises as provided herein. Less

shall execute xx the necessary documents in order for Less

to make such application. As a condition precedent to the

above paragraph #5, the Lessee hereby undertakes and agree

in accordance with all legal requirements to construct a n

service station with improvements at a total cost of $85,0

That Lessee undertakes and agrees that all expenses a

costs direct and incidental to such building and improveme

shall be at the sole expense of the Lessee.

That Lessee agrees that there shall be no abatement o

diminution in the rent payable by the Lessee during any pe

during which the building and improvements are being made.

(6) Based upon Lessee's undertaking as aforesai

the Lessor hereby grants its consent to Lessee to make the

building and improvementsas above described.

(7) Lessee further agrees that such building an

improvements made by it, whether it be an improvement atta

to and part of the land or only partly so attached shall b

remain the sole property and ownership of the Lessor.

(8)  Lessee and Lessor hereby re-affirm that all rentals heretobefore or hereafter to be paid by Lessee are t net rentals.

That all real estate taxes and assessments are to be pa by the Lessee and that Lessee shall pay for all maintenance, repairs, upkeep and insurances, etc.

(9)  All permits and legal requirements for razing and rebuilding shall be the responsibility of Lessee at its expense.

That Lessee further agrees to hold Lessor harmless fro loss by reason of any act on its part during the razing or : construction and lessee agrees to properly protect Lessor w. necessary insurances including risks for the razing and re-construction.

All of the covenants, conditions and obligations forth in said Lease of February 16, 1954 as are supplemente and modified shall be and remain in full force and effect w not conflict herewith.

IN WITNESS WHEREOF, the parties hereto have execu this Agreement on the day and year first above written.

Signed, sealed and delivered in the presence of:

S & W HOLDING CO.

*George Thoser*
~~President~~

ATTEST:

_____

*Anne Siniscki*
As to Lessor

*Anne Siniscki*
~~Secretary~~

Signed, sealed and delivered in the presence of:

BP OIL CO., INC.

_____
*Prince*

BY _____
Vice President

ATTEST:

TARTAN 1540



RECORD   AND   RETURN
TO

SINCLAIR REFINING COMPANY
R. E. SCHUSTER - ADST. SEC'Y.
SIX HUNDRED FIFTH AVENUE
NEW YORK   --   NEW YORK

TARTAN 1541

## EXTENSION AND MODIFICATION AGREEMENT of LEASE

IT IS HEREBY UNDERSTOOD AND AGREED by and between S & W HOLDING CO., a co-partnership, having its principal place of business at 44 Lehigh Court, Rockville Centre, New York, as Lessor, and SINCLAIR REFINING COMPANY, a Maine corporation authorized to transact business in the State of New York as a foreign corporation, having its principal business office at 600 Fifth Avenue, New York, N. Y. 10020, as Lessee, that the term of that certain lease dated February 16, 1954, between Rainbow Petroleum Products, Inc., as Lessor, and Sinclair Refining Company as Lessee, recorded in the Nassau County Clerk's Office on September 21, 1954, in Liber 5634 of Deeds, Page 512&c, which lease was assigned to Lessor herein, and heretofore has been extended by agreement dated August 3, 1964, covering premises located at Old Country Road and Cherry Lane, Carle Place, New York, as more particularly described in said lease,

SHALL BE AND THE SAME is hereby extended for a further term of ten (10) years, commencing March 1, 1965, at the rental of SEVEN HUNDRED SIXTY-FIVE and 00/100 ($765.00) DOLLARS per month, payable in advance.

IT IS UNDERSTOOD AND AGREED by and between the parties hereto that so much of the above-described premises as may have heretofore been taken for the widening of Old Country Road by Nassau County is hereby excepted from said lease.

IT IS FURTHER UNDERSTOOD AND AGREED that Lessee shall have the further privilege of extending this lease for a term of five (5) years at the rental of EIGHT HUNDRED TWENTY-FIVE and 00/100 ($825.00) DOLLARS per month, which option may be exercised by giving ninety (90) days' written notice to Lessor prior to the expiration of the ten-year term provided for herein.

Lessee further agrees to reimburse Lessor for all real estate taxes levied and assessed during the extended term herein or any extension or renewal thereof, upon presentation of receipted tax bills to Lessee.

It is understood and agreed that the rental of $765.00 per month and the reimbursement of real estate taxes levied and assessed against the property shall be adjusted retroactive to December 22, 1964.

IT IS FURTHER UNDERSTOOD AND AGREED that if during the term, or any extended term, of said lease the premises hereby lease, or a part thereof sufficient to interfere with the business for which said premises is used, shall be condemned or acquired by grant or otherwise for the widening of streets or highways or for other public improvements, or shall be otherwise taken in the exercise of the right of eminent domain, this lease shall

*Premises known as Section 10 Block 49 Lot 33 on the Nassau County Land & Tax Map.*

DEED 9513 PAGE 255

TARTAN 1542

right of eminent domain, and such taking does not render the premises unsuitable for the transaction of Lessee's business, the rentals reserved herein shall be reduced from the date of such taking proportionally in the same ratio as the area taken bears to the entire area included in this demise.

If the right to conduct the business herein specified, or any part thereof, or to maintain driveways and approaches to reach said premises shall be substantially impaired, denied or prohibited by lawful authority, except for the fault, omission or neglect of Lessee, or if the use of said premises shall, by reason of change of location of streets or highways or change of grade of adjoining highways fronting on said premises, or for any cause for which Lessee is not responsible, be so restricted or interfered with to make them unfit or unsuitable for the conduct of Lessee's business, Lessee in any such event shall have the option to terminate this lease upon thirty (30) days' notice to Lessor of its election so to do, and in the event of such termination, Lessee shall be liable only for rents and other charges accrued and earned to the date of its surrender of possession of said premises to Lessor and for the performance of any other obligation maturing prior to said date.

Lessee shall not be entitled to participate in any award for any taking and hereby waives any and all claims for such award, except as to its equipment, installation and removal.

EXCEPT as herein extended and modified, said lease and all the terms and conditions thereof shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have executed this agreement this ____ day of March 1965.

WITNESS:

S & W HOLDING CO., a Co-Partnersh

By _____
                 Lessor-Partner

By _____
                 Lessor-Partner

ATTEST:

SINCLAIR REFINING COMPANY

By _____
                 Vice-President

_____
Assistant Secretary

-2-

DEED 9513 PAGE 256

TARTAN 1543

STATE OF N. YORK )
                 ) SS:
COUNTY OF _Ulster_ )

On this _8_ day of _March_ 1965, before me,
the subscriber, personally came _Turner C. Soltzwick_ and
_Derek Henry_, to me known, who being by me
duly sworn, did depose and say that they reside at _114 Lehigh Ct_
_Rosevile Center L.I._ and _678 Park Ave Manhattan I._
respectfully; that they are the Co-Partners of S & W HOLDING
CO., described in and who executed the above instrument, and
they thereupon acknowledged to me that they executed the same
as and for the act and deed of said firm.

My Commission Expires:

_____          _____
                                 Notary Public
                                 Term 2, ... 30, 19_66_

                                      _PHYLLIS KREITMAN_


STATE OF NEW YORK )
                  ) SS:
COUNTY OF NEW YORK)

On this _17_ day of _March_ 1965, before me
personally came _W H Damonte_, to me known, who being
by me duly sworn, did depose and say that he resides at
_215 Arden Rd., Brooxmall Pa._; that he is
a Vice-President of SINCLAIR REFINING COMPANY, the corporation
described in and which executed the above-instrument; that
he knows the seal of said corporation; that the seal affixed
to said instrument is such corporate seal; that it was so
affixed by order of the Board of Directors of said corporation,
and that he signed his name thereto by like order.

My Commission Expires:

_____          _____
                                 Notary Public

                                 ANNE MILLER
                                 Notary Public, State of New York
                                 No. 31-XXXXXX50
                                 Qualified in New York County
                                 Commission Expires March 20, 1967

                                      _ANNE MILLER_


-3-

DEED 9513 PAGE 257

TARTAN 1544



DEED 9513 PAGE 258

Station No.:          NF03

Address:              Cherry Lane and Old Country Road
                      Carle Place, New York  11514

Owner:                S & W Holding Company
                      1038 Brush Hollow Road
                      Westbury, New York  11590
                      (212) 333-8064

Term of Lease
and Rent:             March 1, 1980 to Feb 28, 1985      $900/mo
                      March 1, 1985 to Feb 28, 1990    1,050/mo
                      March 1, 1990 to Feb 28, 1995    1,200/mo
                      March 1, 1995 to Feb 28, 2000    1,350/mo

Options:              March 1, 2000 to Feb 28, 2005    1,500/mo
                      March 1, 2005 to Feb 28, 2010    1,650/mo

Date of Notice
of Option Renewal:    Must give notice by NOVEMBER 28 - 1999, 2004
                      (at least ninety days prior to expiration of
                      lease or extension)

TARTAN 1546

## ASSIGNMENT OF LEASE

ATLANTIC RICHFIELD COMPANY, a Pennsylvania corporation, having a place of business at 717 Fifth Avenue, New York, New York, for value received, hereby sells, assigns, transfers, conveys and sets over unto BP OIL CORPORATION, a Delaware corporation, having a place of business at 245 Park Avenue, New York, New York, effective March 4, 1969, all that certain lease dated Feb. 16, 1954 between S. W. Holding, et al as Lessors and SINCLAIR REFINING COMPANY as Lessee, recorded in Book 5634 , Page 512 , Section 10 , Block 49 , Lot 2-6 Now known as L-733 , in the public Real Estate Records of Nassau County, State of New York as amended.

By agreement of merger dated September 30, 1968, SINCLAIR REFINING COMPANY was merged into SINCLAIR OIL CORPORATION. By agreement of merger dated March 4, 1969, SINCLAIR OIL CORPORATION was merged into ATLANTIC RICHFIELD COMPANY.

IN WITNESS WHEREOF, the Assignor has duly executed this Assignment as of March 4, 1969.

ATLANTIC RICHFIELD COMPANY

BY: _____
VICE PRESIDENT

ATTEST:

_____
Assistant Secretary

DEED 9513 PAGE 259

**TARTAN 1547**

30089
Carle Place, N.Y.

<u>ASSIGNMENT OF LEASE</u>

BP OIL CORPORATION, a Delaware corporation, having a business office at One Rollins Plaza, Wilmington, Delaware 19803, for value received, hereby sells, assigns, transfers, conveys and sets over unto BP OIL INC., an Ohio corporation, having a business office at One Rollins Plaza, Wilmington, Delaware 19803, as of the close of business on December 31, 1973, all that certain lease dated February 16, 1954    between S.W. HOLDING, et al as Lessors, and SINCLAIR REFINING COMPANY, as Lessee, recorded in Book 5634    Page 512    in the Public Real Estate Records of    Nassau    County, State of New York as amended. *Premises known as Section 10 Block 49 Lot 33 on the Nassau County Land + Tax Map.*

By Agreement of merger effective September 30, 1968, Sinclair Refining Company was merged into Sinclair Oil Corporation. By Agreement of merger effective March 4, 1969, Sinclair Oil Corporation was merged into Atlantic Richfield Company.  By Assignment of Lease dated March 4, 1969, Atlantic Richfield Company assigned the above described lease to BP OIL CORPORATION.

IN WITNESS WHEREOF, the Assignor has duly executed this Assignment as of the 21st day of December, 1973.

BP OIL CORPORATION          (SEAL)

By _____
Chas. H. King,
Vice President

ATTEST: _____
D.H. Prince,
Assistant Secretary

_Jacquelyn E. Jones_
Witness

_Duane C. Kane_
Witness

STATE OF DELAWARE          )
                           )  ss.
COUNTY OF NEW CASTLE       )

On this, the 21st day of December, 1973, before me personally came Chas. H. King to me known, who, being by me duly sworn, did depose and say that he resides at 1107 Allerton Road, West Chester, Pennsylvania 19380; that he is the Vice President of BP Oil Corporation, the corporation described in and which executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

_Mary Louise Schueller_
Notary Public

My commission expires:
NOV

TARTAN 1548

STATE OF NEW YORK )
                  )  SS.:
COUNTY OF NEW YORK )

On this 4th day of June, 1969, before me per-
sonally came J. L. GRANT, to me known, who being by me duly
sworn, did depose and say that he resides at 160 East 48th
Street, New York, New York; that he is a Vice President of
ATLANTIC RICHFIELD COMPANY, the corporation described in and
which executed the above instrument; that he knows the seal
of said corporation; that the seal affixed to said instrument
is such corporate seal; that it was so affixed by order of
the Board of Directors of said corporation; and that he
signed his name thereto by like order.

_____
Notary Public

ALBERT Y. NOLAN
Notary Public, State of New York
#30-6162600 - Qual. In Nassau Co.
Cert. Filed with N. Y. Co. Clerk
Term Expires March 30, 1970

DEED 9513 PAGE 260

**TARTAN 1549**

## ASSIGNMENT OF LEASE

This Assignment is made this 5th day of October , 1983 by BP OIL Inc.., an Ohio Corporation with its principal office in the Midland Building, Cleveland, Ohio 44115, the ASSIGNOR (the Assignor herein being an Ohio corporation; and being the same corporate entity which acquired the leasehold interest being assigned herein.), and

NORTHVILLE GASOLINE CORP. with offices at 35 Pinelawn Road, P. O. Box 937, Melville, NY 11747, the ASSIGNEE.

Witnesseth, that for and in consideration of the sum of One Dollar and other valuable considerations, in hand paid by ASSIGNEE to ASSIGNOR, the receipt of which is hereby acknowledged, ASSIGNOR does hereby assign and transfer unto ASSIGNEE all of ASSIGNOR's rights, titles and interests (except as herein modified or conditioned) in, to, and under five certain Leases (herein called the "Leases"), to Assignor as Lessee from the parties named as Lessors on the attached Rider, which Rider displays the Lease dates (said Leases or a memoranda thereof being recorded in the office of the Recorder of Deeds, County of Nassau, State of New York, as also indicated in attached Rider.) for the unexpired terms of the Leases, subject to the payment of rents and performance of the covenants, conditions and stipulations contained in the Leases and in this Assignment of Lease.

Together with all of ASSIGNOR's rights, titles and interests in and to any property, real, personal, mixed, or of any other nature, at or appurtenant to the leased premises,

And ASSIGNOR does hereby delegate to ASSIGNEE, its successors and assigns, the performance of all of ASSIGNOR's duties under the Lease and any other amendatory instruments.

TO HAVE AND TO HOLD said rights, titles, interests and duties unto ASSIGNEE, its successors and assigns, from the 17th day of November, 1983, for and during the continuation of the Lease.

ASSIGNOR hereby covenants and agrees to and with the ASSIGNEE that ASSIGNOR is the true and lawful owner of the Lease, and has good right and full power to assign and transfer the same in the manner aforesaid; that the Lease is now in full force and effect; that all rents and payments due from ASSIGNOR as of the date hereof have been paid in full by ASSIGNOR; and that ASSIGNOR has not defaulted under any covenant, agreement, term, or condition of the Lease.

By the acceptance and delivery hereof, and in consideration of the making of this Assignment, ASSIGNEE accepts said rights, titles, and interests and agrees and covenants with the ASSIGNOR, its successors and assigns, that during the continuance of said term to pay the rents reserved and to perform the covenants, conditions and stipulations in said lease to be performed by the LESSEE and to keep indemnified, and defend, bearing any and all costs and expenses incidental thereto, the ASSIGNOR against all actions, claims and demands whatsoever, in respect of said rents, covenants, conditions and stipulations, or anything relating thereto.

Assignee may not assign or subject the above-described leased premises without Assignor's written consent which shall not be unreasonably withheld. If Assignor consents, Assignee shall nevertheless remain liable to Assignor for the performance of all the terms hereof.

ASSIGNEE agrees that if default is made in the payment of rent or in the performance of any provisions of the Lease or any provisions of this Assignment of Lease after receiving not less than twenty (20) days written notice from either ASSIGNOR or Lessor to cure such default, in payment of rent, or sixty (60) days to cure such other default, at the option of the ASSIGNOR all titles, rights, and interests in the Lease shall revert to the ASSIGNOR, or ASSIGNOR has the right to cure such default and to charge ASSIGNEE for any and all costs and expenses incurred by ASSIGNOR in curing such default. ASSIGNEE must provide ASSIGNOR with documented proof that any default has been cured within the aforesaid twenty (20) days, time being of the essence.

As additional consideration for this Assignment, ASSIGNEE agrees that in the event ASSIGNEE does not comply with all of the terms and provisions of the Lease or this Lease Assignment, and all rights, titles and interests herein conveyed revert to ASSIGNOR, that all monies paid theretofore by ASSIGNEE to ASSIGNOR pertaining to the leased premises shall be considered liquidated damages to be retained by ASSIGNOR, and this Assignment shall become null and void and of no effect and all rights conferred hereunder shall revert to the ASSIGNOR immediately.  ASSIGNEE agrees to promptly execute any documents necessary to accomplish the foregoing of record in said County.

0540   744

TARTAN 1550

IN WITNESS WHEREOF, this Assignment has been signed, sealed, and delivered the day and year first above written.

IN WITNESSS WHEREOF, the ASSIGNOR has hereunto set its hand and corporate seal, by its duly authorized offices, this 7th    day of November
19 83 .

Signed and acknowledged                ASSIGNOR:
in the presence of:                    BP OIL INC.

_L.J. Siebert_                         By _H.W. Hanna_
V.L.J. Siebert                             H.D. Hanna, Vice President, Retail Marketing
_E.M. Svatos_                          And _J.E. Zislin_
E.M. Svatos                                J.E. Zislin, Assistant Secretary

STATE OF OHIO      )  SS:
CUYAHOGA COUNTY    )

BEFORE ME, a Notary Public in and for said County and State, personally ap-
peared the above-named BP OIL INC.        by H.D. Hanna
its Vice President, Retail Marketing    , and J.E. Zislin
its Assistant Secretary, who are personally known to me and who acknowledged
that they did sign the foregoing instrument and that the same is the free act
and deed of said corporation and the free act and deed of each of them per-
sonally and as such officers. AND WHO RESIDE RESPECTIVELY AT 615 W. SUPERIOR Av
+ 701 Prospect AvE) CLEVELAND OHIO
IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal at
Cleveland Ohio, this 8th  day of November     , 1983 .

_R.W. Thompson_
Notary Public

R. W. THOMPSON
Notary Public, State of Ohio, Cuya. Cty.
My Commission Expires Nov. 25, 1987

IN WITNESS WHEREOF, the said ASSIGNEE has hereunto set its hand and corporate
seal, by its duly authorized officers, this        day of           , 19

Signed and acknowledged                ASSIGNEE:
in the presence of:                    NORTHVILLE GASOLINE CORP.

_____                  By _Peter J. Ripp_

_____                  And _Anthony R. Siakin_
                                          Assistant Secretary

STATE OF  New York    )SS:
COUNTY OF  NASSAU     )

BEFORE ME, a Notary Public in and for said County and State, personally ap-
peared the above-named Northville Gasoline Corp.  by PETER J. RIPP, who 35 Roslan Road, roslin, N.Y.
                                      and ANTHONY L SIAKIN, who 35 Roslan Road, roslin, N.Y.
its Assistant Secretary, who are personally known to me and who acknowledged
that they did sign the foregoing instrument and that the same is the free act
and deed of said corporation and the free act and deed of each of them per-
sonally and as such officers.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal at
                     this  17th day of  November     , 1983 .

_Alan D. Lahti_
Notary Public

ALAN D. LAHTI
Notary Public, State of New York
No. 82-4714072
Qualified in Buffalo County
Commission Expires March 30, 1984

DEED 9516 PAGE 742

**TARTAN 1551**

RIDER
TO
ASSIGNMENT OF LEASE
(NASSAU COUNTY)
BP OIL INC. TO NORTHVILLE GASOLINE CORP.

| R.O. No. | Premises Location | Lessor _Ok (RC_ | Lease Date | Record Book | Page |
|---|---|---|---|---|---|
| 505 | Carle Place Old Country & Cherry Lane | Rainbow Petroleum Products, Inc. | Feb. 16, 1954 | 5634 | 512 |
| 512 | Hicksville S. Oyster Bay & Plainview | Josam Associates | Nov. 12, 1976 | 9180 | 178 |
| 651 | Freeport Sunrise & Long Beach | John J. Randall III & Robert G. Randall | Dec. 16, 1974 | 8915 | 500 |
| 745 | Wantagh Sunrise & Wantagh | Stanley Cohen & Martin Berger | Apr. 6, 1976 | 9057 | 229 |
| 746 | Massapequa Hicksville & Jerusalem | Louis C. M. Degl | Jan. 31, 1977 | 9060 | 360 |

1308Hs

DEED 9516 PAGE 743

TARTAN 1552

Title No. 2-717 763/S7   DN-#505

## SCHEDULE A

ALL that certain plot, piece or parcel of land with the
buildings and improvements thereon erected, situate, lying
and being at Carle Place, in the Town of North Hempstead,
County of Nassau and State of New York, known and designated
as lots nos 6 to 10 in Block 1, on a certain map entitled,
"Map of Mineola Park, Section 2, situated near Mineola,
Nassau County, New York, surveyed April 1922, S.B. Bowne,
Licensed Professional Engineer and Land Surveyor, Mineola,
N.Y." and filed in the Office of the Clerk of the County of
Nassau, July 9, 1928, as Map #662, bounded and described
as follows:

BEGINNING at a monument set at the corner formed by the inter-
section of the northerly side of Old Country Road with the
northwesterly side of Cherry Lane;

Running thence northeasterly along the northwesterly side of
Cherry Lane, 109.16 feet to the northerly side of lot #10
block 1 on said map;

Running thence westerly along the northerly side of Lot 10,
Block 1 on said map and parallel with the northerly side of
Old Country Road, 141.40 feet to the easterly side of lot 5
Block 1 on said map;

Running thence southerly along the easterly side of lot #5
Block 1 on said map and at right angles to the northerly side
of Old Country Road, 100 feet to the northerly side of Old
Country Road;

Running thence easterly along the northerly side of Old
Country Road, 97.62 feet to the corner, the point or place
of BEGINNING.

EXCEPTING therefrom so much of the above described premises
as may have heretofore been taken for the widening of Old
Country Road.

DEED 9516 PAGE 744

10/19/55

*For conveyancing only,
if intended to be conveyed.*   { Together with all right, title and interest of, in and to any streets and
roads abutting the above described premises, to the center line thereof

475—00—038—1    CERTIFICATE AND REPORT OF TITLE—NEW YORK

Title No................. 2-717 763-STA

## SCHEDULE A

ALL that certain plot, piece or parcel of land, with the
buildings and improvements thereon erected, situate, lying
and being at Hicksville, Town of Oyster Bay, County of Nassau
and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the northerly
side of Plainview Road, with the westerly side of South Oyster Bay
Road;

Thence North 84 degrees 49 minutes 02 seconds West, along the
northerly side of Plainview Road, 150 feet;

Thence North 6 degrees 13 minutes 07 seconds East, 154 feet;

Thence South 84 degrees 49 minutes 02 seconds East 150 feet
to the westerly side of South Oyster Bay Road;

Thence South 6 degrees 13 minutes 07 seconds West, along the
westerly side of South Oyster Bay Road, 154 feet to the
corner at the point or place of BEGINNING.

12/436/44/28, 5T
aki

DEED 9516 PAGE 745

For conveyancing only,         { Together with all right, title and interest of, in and to any streets and
if intended to be conveyed.       roads abutting the above described premises, to the center line thereof

ATS-00-336-1   CERTIFICATE AND REPORT OF TITLE—NEW YORK

**TARTAN 1554**

Title No. 2-717 763-5

## SCHEDULE A

ALL that certain plot, piece or parcel of land, with the

buildings and improvements thereon erected, situate, lying

and being in the Incorporated Village of Freeport, Nassau

County, New York, bounded and described as follows:

BEGINNING at a point of the intersection of the northerly
side of Sunrise Highway and the easterly side of Long Beach
Avenue;

Running thence North 2 degrees 27 minutes 00 seconds west and
along the easterly side of Long Beach Avenue, a distance of 93.72
feet;

Running thence South 84 degrees 41 minutes 45 seconds East, a
distance of 95.87 feet;

Running thence South 2 degrees 27 minutes 00 seconds East a
distance of 80.40 feet and to a point on the northerly side
of Sunrise Highway;

Running thence South 87 degrees 19 minutes 00 seconds west and
along the northerly side of Sunrise Highway a distance of 95 feet
and to the point and place of BEGINNING.

TOGETHER with an easement over the following described parcel of
land:

Beginning at a point on the northerly side of Sunrise Highway
distant 95 feet easterly from the corner formed by the intersectio
of the northerly side of Sunrise Highway and the easterly side of
North Dong Beach Avenue, as widened;

Running thence North 2 degrees 27 minutes West, 25 feet;

Running thence North 87 degrees 19 minutes East, 10 feet;

Running thence South  33 degrees 28 minutes 31 seconds East,
29.10 feet to the northerly  side of Sunrise Highway;

Running thence along the same, North  87 degrees 19 minutes
West, 25 feet to the point or place of BEGINNING.

DEED 9516 PAGE 746

*For conveyancing only,* { Together with all right, title and interest of, in and to any streets and
*if intended to be conveyed.* { roads abutting the above described premises, to the center line thereof

Title No. 2-717 763-t                  745

## SCHEDULE A

ALL that certain plot, piece or parcel of land, with the buildings

and improvements thereon erected, situate, lying and being at

Wantagh, in the Town of Hempstead, County of Nassau and State of

New York bounded and described as follows:

BEGINNING at the corner formed by the intersection of the westerly
side of Wantagh Avenue with the northerly side of Sunrise Highway

Running thence along the northerly line of said Sunrise Highway,
North 76 degrees 30 minutes west 155.96 feet to land now or formerly
of Wantagh Fire Department;

Thence along said land, North 14 degrees 16 minutes East, 49.83 feet;

Thence South 76 degrees 33 minutes 55 seconds East, 155.25 feet to
the westerly side of Wantagh Avenue; and

Thence along the said westerly side of Wantagh Avenue, South 13 degree:
26 minutes 50 seconds West, 50 feet to the northerly side of Sunrise
Highway at the point or place of BEGINNING.

DEED 9516 PAGE 747

*For conveyancing only,*                      { Together with all right, title and interest of, in and to any streets and
*if intended to be conveyed.*                 { roads abutting the above described premises, to the center line thereof

473-00-133-1    CERTIFICATE AND REPORT OF TITLE—NEW YORK

**TARTAN 1556**

Title No. 2-717 763-ST   SA #748

## SCHEDULE A

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being at Massapequa, Town of Oyster Bay, County of Nassau and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the northerly side of Jerusalem Avenue with the easterly side of Hicksville Road, as the same existed prior to the corner condemnation in 1982;

Running thence the following three (3) courses and distances along the easterly side of Hicksville Road;

(1) North 16 degrees 30 minutes 20 seconds West, 102.56 feet;
(2) North 17 degrees 32 mintues 20 seconds West, 9.50 feet;
(3) North 19 degrees 07 minutes 30 seconds West, 25.00 feet to land now or formerly of Waldbaums, Inc.

Thence South 84 degrees 33 minutes 01 seconds East along land of Waldbaums, Inc., 174.97 feet;

Thence South 17 degrees 00 minutes 47 seconds East and still along land of Waldbaums, Inc., 137.04 feet to the northerly side of Jerusalem Avenue; and

Thence North 84 degrees 32 minutes 20 seconds West along the northerly side of Jerusalem Avenue, 174.87 feet to the corner aforesaid the point or place of beginning.

EXCEPTING therefrom, so much as was taken for the corner widening of the intersection of the northerly side of Jerusalem Avenue with the easterly side of Hicksville Road.

DEED 9516 PAGE 748

*For conveyancing only, if intended to be conveyed.* { Together with all right, title and interest of, in and to any streets and roads abutting the above described premises, to the center line thereof

475-00-938-1   CERTIFICATE AND REPORT OF TITLE—NEW YORK

TARTAN 1557



NOV 25 1983

RECORDED

Nov 25 11 38 AM '83

HAROLD W. McDONNELL,
COUNTY CLERK
NASSAU COUNTY

LIBER 9516 PAGE 749

Recorded by T.P.S. Abstract Corporation
Return To:

NORTHVILLE INDUSTRIES
35 Pinelawn Road
Box #937
Melville, N.Y. 11747

**TARTAN 1558**

<u>Addendum to Environmental Agreement</u>

Agreement dated September 26, 1995 between NORTHVILLE INDUSTRIES CORP., (the "assignor") and C.P. SERVICE STATION OPERATING CORP., (the "assignee").

Witnesseth:

In consideration of the parties hereto do hereby agree as follows:

1.   The Environmental Condition defined in Paragraph 31 of the Contract dated April 7, 1995 between the parties hereto ("Contract") for the premises at 345 Old Country Road, Carle Place, NY ("Premises") shall be deemed to include the following:

    1.   Those conditions reflected in Assignor's environmental reports and documents relating to the Premises prior to the date of closing, including but not necessarily limited to those documents described in and annexed to correspondence respectively dated March 21, 1995 and April 3, 1995; and from Assignor to Louis Algios, Esq., attorney for Assignee.

    2.   Those conditions reflected in Assignee's environmental reports and documents relating to the Premises prior to the date of closing, including but not necessarily limited to those documents described in and annexed to correspondence dated September 5, 1955 from Kenneth L. Robinson, Esq. of Assignee to Thomas Maus of Assignor.

    3.   Assignor acknowledges that Assignee, as part of its work to be performed at the premises, shall be digging soil and stockpiling same. In the event any soil is contaminated and relates to environmental conditions caused prior to the date of closing, Assignor, as part of its environmental obligations under the Contract, shall cause any contaminated soil to be removed from the Premises as soon as practicable and in accordance with all legal requirements.

IN WITNESS WHEREOF the parties hereto have executed this agreement on the date and year first set forth above.

Witness

Witness

NORTHVILLE INDUSTRIES CORP.

By: _____
    Peter Riggs, Senior V.P.

C.P. SERVICE STATION OPERATING CORP.

By: _____
    Barry Tallem, Pres.

**TARTAN 1560**