EXHIBIT 3

SETTLEMENT AGREEMENT

## SETTLEMENT AGREEMENT

This Settlement Agreement, together with its Exhibits (hereinafter collectively referred to as the "Settlement Agreement"), is made as of the Effective Date (as defined below) by and between the Settling Defendants (as defined below), on the one hand, and the Settling Plaintiff (as defined below), on the other hand, regarding the settlement of all claims between them involving methyl tertiary butyl ether and Other Authorized Oxygenates (as defined below) asserted in the litigation matter captioned <u>California-American Water Company v. Atlantic Richfield Co., et al.</u>, U.S. District Court–Southern District of New York Case No. 04 Civ 4974 (SAS), U.S. District Court–Northern District of California Case No. 03-5379 JSW, which is pending as part of the multi-district litigation matter captioned *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, Master File No. 1:00-1898, MDL 1358 (SAS), M21-88 (S.D.N.Y.).

## I. RECITALS

WHEREAS, methyl tertiary butyl ether ("MTBE") was used as an octane enhancer and a component oxygenate of and additive to gasoline at certain times by certain manufacturers and refiners of gasoline;

WHEREAS, tertiary butyl alcohol ("TBA") may have been used as a component oxygenate of and additive to gasoline at certain times and can be a breakdown product of MTBE;

WHEREAS, certain plaintiffs have commenced and maintain lawsuits in various jurisdictions, including but not limited to the case covered by this Settlement Agreement, in connection with MTBE and/or TBA;

- 1 -

SETTLEMENT AGREEMENT

WHEREAS, in the aforereferenced lawsuits, certain plaintiffs have alleged that certain defendants are liable based, *inter alia*, on a commingled product theory of liability, and the court has not granted defendants' motions to dismiss such theory to date;

WHEREAS, Settling Defendants (as defined below), while not admitting any wrongdoing or conceding that any plaintiffs have suffered any cognizable injury due to MTBE and/or TBA, nonetheless wish to resolve the Settling Plaintiff's (as defined below) lawsuit and claims to avoid the costs, expense, and uncertainty inherent in the litigation;

WHEREAS, Settling Plaintiff also wishes to avoid the costs, expense, and uncertainty inherent in litigation,

NOW THEREFORE, the Settling Defendants and the Settling Plaintiff agree as follows:

## II. DEFINITIONS:

Terms used in this Settlement Agreement shall have the meanings defined below or as otherwise defined in this Settlement Agreement:

2.1   "Aquifer" means a sub-surface water bearing zone or zones that supplies or potentially supplies drinking water and is accessed or accessible by wells.

2.2    "BTEX" means benzene, toluene, ethyl benzene, trimethyl benzene, and all xylenes.

2.3   "Business Day" means any day other than (i) a Saturday or a Sunday or (ii) a day on which commercial banks in New York, New York are closed.

2.4   "Effective Date" means the last date on which this agreement is executed by a Settling Defendant or a Settling Plaintiff.

SETTLEMENT AGREEMENT

2.5    "Future Treatment Obligation" means a contractual obligation created by a certain agreement, dated March 12, 2008, and addendum F thereto (both of which are attached as Exhibit C hereto), to which the Settling Defendants are not parties. The term means the same here as it does in that agreement.

2.6    "Governmental Authority" means any government, any governmental, quasi-governmental or regulatory entity, department, commission, board, agency, authority, legislative body, or instrumentality, and any court, tribunal, or judicial body, in each case whether federal, state, or local.

2.7    "Maximum Contaminant Level" or "MCL" means the maximum permissible level of a contaminant in water which is delivered to any user of a public water system under Federal or California State law applicable to the Settling Plaintiff.

2.8    "MDL 1358" means the court and all of the cases before the court in the matter captioned: *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, Master File No. 1:00-1898, MDL 1358 (SAS), M21-88 (S.D.N.Y.).

2.9    "MTBE" means methyl tertiary butyl ether and any associated breakdown products thereof.

2.10    "Other Authorized Oxygenates" means any chemical compound certified for use as an oxygenate under the provisions of the Clean Air Act Amendments of 1990 or as a renewable fuel under the provisions of the Energy Policy Act of 2005, including but not limited to, tertiary butyl alcohol ("TBA"), diisopropyl ether ("DIPE"), ethanol, tertiary amyl methyl ether ("TAME"), and ethyl tertiary butyl ether ("ETBE"), whether used in gasoline at any time as an octane enhancer, oxygenate pursuant to the requirements of the Clean Air Act Amendments of 1990, or for any other reason, and any associated breakdown products thereof.

- 3 -

SETTLEMENT AGREEMENT

2.11   "Public Water System" has the meaning prescribed by Section 1401(4) of the Safe Drinking Water Act ("SDWA") 42 U.S.C. § 300f (4), in effect as of the date of this Settlement Agreement.

2.12   "Release and Indemnity Agreement" means the Release and Indemnity Agreement in the form of the attached as Exhibit A hereto.

2.13   "Released Claims" shall have the meaning given in Paragraph 1 of Exhibit A hereto.

2.14   "Released Parties" shall have the meaning given in Paragraph 2 of Exhibit A hereto.

2.15   "Renewable Fuel" means ethanol and/or any other renewable fuel added to, or a component of, gasoline pursuant to the Energy Policy Act of 2005, regardless of when used in gasoline, past, present or future.

2.16   "Settling Defendants" means Exxon Mobil Corporation (individually and f/k/a Exxon Corporation and d/b/a ExxonMobil Refining & Supply Company, Exxon Chemical U.S.A., and ExxonMobil Chemical Corporation) and ExxonMobil Oil Corporation (individually and f/k/a Mobil Oil Corporation); including and on behalf of all parents, subsidiaries, affiliates, shareholders, former shareholders, officers, former officers, directors, former directors, principals, former principals, employees, former employees, representatives, former representatives, assignees, successors, predecessors, and assigns of the above.

2.17   "Settling Plaintiff" means California-American Water Company, in its individual and as applicable representative, governmental and/or sovereign capacity, or as trustee, including and on behalf of all successors, assigns, joint venturers, partners, ~~parents~~, subsidiaries, ~~affiliates~~, predecessors-in-interest, successors-in-interest, predecessors-in-name, successors-in-name,

Initials: *[handwritten]*

- 4 -

SETTLEMENT AGREEMENT

beneficiaries, and each of its respective past, present, and future officers, directors, employees,

shareholders, officials, board members, trustees, fiduciaries, agents, accountants, attorneys,

insurance carriers, sureties, representatives, independent contractors, consultants, experts,

advisors, and all persons in privity with it.

    2.18   "Settlement Payment" means the total sum of

    This amount shall be kept confidential by the Settling Plaintiff to the

extent allowed by law.

    2.19   "Stipulation of Dismissal" means the stipulation to be provided by the Settling

Plaintiff dismissing with prejudice each of the Settling Defendants and Released Parties from

any and all litigation subject to this Settlement Agreement with each party to bear its own costs,

and which shall be in a form substantially similar to the attached Exhibit B or other appropriate

form for the applicable court in which it is to be filed.

    2.20   "TBA" means tertiary butyl alcohol and any associated breakdown products

thereof.

    2.21   "Treatment Protocol" means the protocol attached as addendum F to a certain

agreement dated March 12, 2008, to which the Settling Defendants are not parties, a copy of

which is attached hereto as Exhibit C for reference purposes only.

### III.  REPRESENTATIONS AND WARRANTIES OF SETTLING PLAINTIFF

    3.1   Settling Plaintiff acknowledges that its Counsel has recommended that these

settlement terms are fair and reasonable and should be accepted.

    3.2   Settling Plaintiff represents that no other person or entity has any interest in the

Released Claims of Settling Plaintiff; that Settling Plaintiff has the sole right and exclusive

authority to execute this Settlement Agreement, the Release and Indemnity Agreement, and

SETTLEMENT AGREEMENT

receive the consideration specified in this Settlement Agreement; and that Settling Plaintiff has not sold, assigned, transferred, conveyed, otherwise disposed of, granted a security interest in or lien on any of the Released Claims within the scope of this Settlement Agreement.

3.3     Settling Plaintiff represents and warrants that the execution, delivery and performance by Settling Plaintiff of this Settlement Agreement, and the execution, delivery and performance by Settling Plaintiff of the Release and Indemnity Agreement and the Stipulations of Dismissal have been approved by all necessary corporate authority and Governmental Authority for Settling Plaintiff.  Settling Plaintiff further represents and warrants that in connection with the execution, delivery, and performance of this Settlement Agreement, the Release and Indemnity Agreement, and the Stipulations of Dismissal, that Settling Plaintiff has complied with all provisions of the Constitution and laws of the respective state of Settling Plaintiff and the respective charter, rules, articles of incorporation, by-laws, regulations, and/or other documents setting forth the governance of Settling Plaintiff, that Settling Plaintiff has or has obtained the full power and authority to enter into this Settlement Agreement, the Release and Indemnity Agreement, and the Stipulations of Dismissal, and that the execution, delivery, and performance by Settling Plaintiff, or on its behalf, does not and will not contravene or constitute a default under any provision of applicable law or regulation or of any agreement, judgment, injunction, order, decree, or contractual restriction binding on Settling Plaintiff or its property, and does not result in or require the creation or imposition of any lien, security interest, or other charge or encumbrance in favor of a third party upon or with respect to Settling Plaintiff's property.

3.4     Settling Plaintiff further represents and warrants that no further approval, authorization, consent, order, notice to, or filing or registration with, any Governmental

- 6 -

SETTLEMENT AGREEMENT

Authority is required with respect to the participation by Settling Plaintiff in this Settlement Agreement and the execution, delivery to, and performance by Settling Plaintiff of this Settlement Agreement, the Release and Indemnity Agreement, and the Stipulations of Dismissal to which it is a party.

3.5    Settling Plaintiff also further represents and warrants that, without limiting the generality of the foregoing, Settling Plaintiff is not entitled to any immunity on any grounds (i) with respect to the performance of its obligations under this Settlement Agreement or the Release and Indemnity Agreement, or (ii) from any legal proceedings to enforce the obligations hereunder or under the Release and Indemnity Agreement, and the Stipulations of Dismissal, and to the extent anyone could ever argue otherwise, Settling Plaintiff agrees to waive any such immunity.  Settling Plaintiff further represents and warrants that it will not challenge or contest the validity of this Settlement Agreement, or the Release and Indemnity Agreement and that Settling Plaintiff forever waives any defense to the validity of the Settlement Agreement, and the Release and Indemnity Agreement, including any defense based on any claim that the Settlement Agreement, and/or the Release and Indemnity Agreement are ultra vires, violative of sovereign immunity, or otherwise void.

3.6    This Settlement Agreement, the Release and Indemnity Agreement, and the Stipulations of Dismissal to which Settling Plaintiff is a party have been or will be duly executed and delivered by an authorized representative of Settling Plaintiff and are, or upon execution will be, the valid and legally binding obligations of Settling Plaintiff, enforceable against the Settling Plaintiff in accordance with their respective terms.

3.7    Settling Plaintiff respectively represents and warrants that all of its Public Water System operating wells are listed on the attached Exhibit D, that Settling Plaintiff owns or

- 7 -

SETTLEMENT AGREEMENT

operates the respective wells identified on the attached Exhibit D and is the real party in interest in connection with those wells with standing to bring the Released Claims and to compromise them.

3.8    Settling Plaintiff respectively represents and warrants that all of its Public Water System wells that have ever had a detected level of any amount of MTBE and/or TBA in a water sample from such well influent at any time are listed on the attached Exhibit E.

3.9    Settling Plaintiff respectively represents and warrants that all of its Public Water System operating wells that have never had a detected level of any amount of MTBE and/or TBA in a water sample from such well influent at any time are listed on the attached Exhibit F.

## IV.  OBLIGATIONS OF SETTLING PLAINTIFF

4.1    Within ten (10) days of its execution of this Settlement Agreement, the Settling Plaintiff shall cause to be delivered to Jeffrey Parker, Esq. at the location set forth in the Notice provisions herein, (i) a fully executed and binding Release and Indemnity Agreement substantially in the form of the attached Exhibit A, which must be valid and binding in all respects as against the Settling Plaintiff on whose behalf the Release and Indemnity Agreement has been executed, and any actions by any Governmental Authority required for such Release and Indemnity Agreement to be valid and binding shall have occurred prior to the transmittal to Settling Defendants and copies of such powers and/or authorizations shall be included with the Release and Indemnity Agreement and (ii) a fully executed Stipulation of Dismissal substantially in the form of the attached Exhibit B, which must be valid and binding in all respects as against the Settling Plaintiff on whose behalf such stipulation has been executed and which shall dismiss with prejudice the Settling Defendants and any Released Parties from all litigation covered by

- 8 -

SETTLEMENT AGREEMENT

this Settlement Agreement. Settling Defendants will not file the Stipulation of Dismissal until delivery of the Settlement Payment, in accordance with Paragraph 6.1

4.2    Settling Plaintiff shall execute any additional documentation that may be required under applicable state or federal law in order to give effect to this Settlement Agreement and the Release and Indemnity Agreement.

## V.  REPRESENTATIONS AND WARRANTIES OF SETTLING DEFENDANTS

5.1    Each Settling Defendant represents and warrants that it is a corporation duly organized, validly existing and in good standing under the laws of the jurisdiction of its incorporation, or other entity validly existing and in good standing under the laws of the jurisdiction of its registration.

5.2    Each Settling Defendant represents and warrants that all required corporate or other approvals have been obtained, permitting such Settling Defendant's undersigned representative to execute this Settlement Agreement and deliver it to the Settling Plaintiff, through Settling Plaintiff's counsel, with binding effect upon such Settling Defendant.

5.3    Each Settling Defendant represents and warrants that the execution, delivery, and performance by such Settling Defendant of this Settlement Agreement will not contravene or constitute a default under any provisions of applicable law or regulation or any agreement, judgment, injunction, order, decree, or contractual restriction binding on such Settling Defendant.

5.4    Each Settling Defendant represents and warrants that, except as provided in this Settlement Agreement, no further approval, authorization, consent, order, notice to, or filing or registration with, any Governmental Authority is required with respect to such Settling

- 9 -

SETTLEMENT AGREEMENT

Defendant's participation in this Settlement Agreement and entering into and performing this Settlement Agreement.

5.5   Subject to the provisions of this Settlement Agreement, each Settling Defendant represents and warrants that no other person or entity has any interest in the claims it is releasing pursuant to Article VII ("Settling Defendants' Release of Claims").

### VI. OBLIGATIONS OF SETTLING DEFENDANTS

6.1   This agreement is contingent upon the trial court entering a final, binding order finding this settlement to be a "good faith settlement" within the meaning of California Code of Civil Procedure § 877.6 and extinguishing claims for contribution and indemnity against Settling Defendants (a "Good Faith Order"). Within 30 days after the full execution of this agreement, the Settling Defendants shall cause a motion to be filed in MDL 1358, seeking a Good Faith Order from the Court. In consideration of the representations and warranties of Settling Plaintiff, the delivery of a valid and binding Release and Indemnity Agreement in the form of the attached Exhibit A by Settling Plaintiff to Settling Defendants, the delivery of a valid and binding Stipulation of Dismissal in the form of the attached Exhibit B by Settling Plaintiff to Settling Defendants, and Settling Plaintiff's compliance with the other provisions of this Settlement Agreement, the Settling Defendants shall cause the Settlement Payment to be paid by wire transfer to "Baron & Budd – BB Escrow" (tax identification number 75-1573501) within 25 Business Days following their receipt of the aforesaid Good Faith Order. Any distribution of the settlement payment among Settling Plaintiff and its counsel is solely between them, and neither Settling Plaintiff nor its counsel shall look to Settling Defendants for payment after the wire transfer has been made pursuant to this paragraph. Until such time as the Settlement Payment is made the Release and Indemnity Agreement and Stipulation of Dismissal shall be held in

- 10 -

SETTLEMENT AGREEMENT

escrow.  Upon such payment, Settling Defendants may cause the Stipulation of Dismissal with

prejudice executed by the Settling Plaintiff to be filed with the appropriate courts.

      6.2     Settling Plaintiff agrees to make no claim or demand on Settling Defendants of

any kind, including the commencement of legal action, for any future detection of MTBE and/or

any approved oxygenate in any well whatsoever, whether now owned or hereinafter acquired,

with the sole exception that if one or more of Settling Plaintiff's Public Water System Drinking

Water Supply Wells that are not listed on Exhibit E and that have never had a detected level of

any amount of MTBE or TBA before the Effective Date have a detection of MTBE and/or TBA

after the Effective Date, then Settling Plaintiff may assert a claim or commence an action against

Settling Defendants, which claim or action shall also be limited as follows:  (a) the claim or

action shall seek to recover only compensatory damages; (b) Settling Defendants reserve all

rights to dispute liability for such claims and actions and to assert all available defenses against

such claims and actions, herein waiving none; and (c) in no event will Settling Plaintiff seek or

be entitled to recover exemplary or punitive damages against Settling Defendants, nor will

Settling Plaintiff pursue or attempt to prove any claim or action against Settling Defendants

based on allegations that would be relevant only to liability for exemplary or punitive damages.

In addition to the foregoing limitations and conditions, in no event shall any claim or action be

maintained with respect (i) to any of the wells listed on Exhibit E hereto, or (ii) to a specific well

if the presence of MTBE or TBA in or at that well is attributable either to (aa) intentional

misconduct of Settling Plaintiff or its subsidiaries, affiliates, employees or agents, (bb)

intentional discharge, dumping or disposal by any persons or entities other than the Settling

Defendants, or (cc) the use of MTBE or TBA in the future in connection with products,

processes, or uses other than gasoline.  The mere fact of a release from an underground storage

- 11 -

SETTLEMENT AGREEMENT

tank ("UST") leak or from an UST overfill, in and of itself, will not constitute an intentional

discharge, dumping or disposal by a third party.  Prior to the commencement of any action under

this Paragraph 6.2, the Settling Plaintiff and Settling Defendants shall participate in a mediation

and make good faith efforts to resolve their differences.

　　　　　6.3　　　The Settlement Payment includes Settling Plaintiff's attorneys fees and costs.


## VII.  SETTLING DEFENDANTS' RELEASE OF CLAIMS

　　　　　To the extent not already provided, within 25 Business Days of the date of

execution of this Settlement Agreement, those Settling Defendants that asserted claims against

Settling Plaintiff arising from the Released Claims in declaratory judgment actions or

counterclaims agree to provide releases and stipulations of dismissal with prejudice as to the

Settling Plaintiff against whom such declaratory judgment actions or counterclaims were

brought, including any claims for fees and costs arising from the litigation that is subject to this

Settlement Agreement.


## VIII.  NO ASSIGNMENT WITHOUT CONSENT

　　　　　Neither the Settling Defendants, on the one hand, nor Settling Plaintiff, on the

other hand, may assign their rights or obligations under this Settlement Agreement without the

consent of the other(s).  That consent shall not be unreasonably withheld; provided, however,

that no such assignment shall relieve the Settling Defendants or Settling Plaintiff of their

obligations under this Settlement Agreement.  A merger, or divestiture of a subsidiary or

division, or merger or reorganization of a Settling Defendant or Settling Plaintiff shall not be

deemed an assignment for purposes of this Settlement Agreement.


- 12 -

SETTLEMENT AGREEMENT

## IX. CONFIDENTIALITY PROVISIONS

The parties to this Settlement Agreement shall keep confidential the amount of the Settlement Payment (to the extent allowed by law) and the content of the negotiations, points of discussion, documents, communications, and supporting data utilized or prepared in connection with, or exchanged at, the mediation that preceded this Settlement Agreement as well as all other negotiations and settlement discussions taking place outside of the mediation, including but limited to other negotiations and settlement discussions occurring prior to, contemporaneous with, or after the mediation in this case, as contemplated by Federal Rule of Evidence 408, except as otherwise required by law.

## X. NOTICES

All notices, requests, demands, claims, and other communications that are required or may be given pursuant to this Settlement Agreement must be in writing and delivered personally against written receipt, by a recognized overnight delivery service, or by telecopy, to the parties at the addresses below (or to the attention of such other, different or additional person or entity or such other address as any party may provide to the other party by notice in accordance with this paragraph).  Any such notice or other communication will be deemed to have been given (i) if personally delivered, when so delivered, against written receipt, (ii) if sent by a nationally recognized overnight delivery service which guarantees next day delivery, one Business Day after being so sent, or (iii) if given by telecopier, once such notice or other communication is transmitted to the facsimile number specified below and the appropriate answer back or telephonic confirmation is received, provided that such notice or other communication is promptly thereafter delivered in accordance with the provisions of clauses (i) or (ii) hereof, in each case addressed to the intended recipient as set forth below.  Any notice,

- 13 -

SETTLEMENT AGREEMENT

request, demand, claim, or other communication given hereunder using any other means (including mail, electronic or otherwise) shall not be deemed to have been duly given unless and until there is evidence that such notice, request, demand, claim or other communication actually is received by the individual for whom it is intended. Further, nothing in this Settlement Agreement nor service as a Designated Representative for notice purposes shall be construed as creating an attorney-client relationship between any of the Designated Representatives for notice purposes identified below and any party to this Settlement Agreement, unless such attorney-client relationship existed beforehand,

FOR SETTLING PLAINTIFF:

Scott Summy, Esq.
Baron & Budd PC
3102 Oaklawn Avenue, Suite 1100
Dallas, Texas 75219
Telephone: (214) 521-3605
FAX: (214) 520-1181

Victor M. Sher, Esq.
Sher Leff LLP
450 Mission Street, Suite 400
San Francisco, CA 94105
Telephone: (415) 348-8300
FAX: (415) 348-8333

FOR SETTLING DEFENDANTS:

Jeffrey J. Parker, Esq.
Sheppard, Mullin, Richter & Hampton LLP
333 S. Hope Street, 48th Floor
Los Angeles, California 90071
Telephone: (213) 617-5586
FAX: (213) 620-1398

- 14 -

SETTLEMENT AGREEMENT

## XI.  WARRANTY OF AUTHORITY

Each person who executes this Settlement Agreement on behalf of a corporation, partnership, joint venture, unincorporated association, public authority, municipal corporation, government, or other entity, represents and warrants to each party that he or she has the authority to do so and has enclosed a certified copy of the requisite board or legislative resolution, power of attorney, secretary's certificate, or other documentation evidencing the authority of each person below to enter into this Settlement Agreement on behalf of the respective settling person or entity indicated below.

## XII.  GOVERNING LAW

Except as otherwise provided, this Settlement Agreement and all actions arising out of or in connection with this Settlement Agreement shall be governed by and construed in accordance with the laws of the State of California without regard to the conflicts-of-law or choice-of-law provisions thereof.

## XIII.  NO ADMISSION

This Settlement Agreement is a compromise of disputed claims and fully and finally settles all claims by Settling Plaintiff against the Released Parties, and prevents any further action in connection with the Released Claims against the Released Parties in the litigation that is the subject of this Settlement Agreement or in any other litigation.  Neither the payment of any consideration hereunder nor anything contained in this Settlement Agreement, the Treatment Protocol, the Escrow Agreement, or the Release and Indemnity Agreement shall be interpreted or construed to be admission of liability or of any facts on the part of, nor to the

SETTLEMENT AGREEMENT

prejudice of, the Settling Plaintiff, Settling Defendants, and/or Released Parties.  The Released

Parties expressly deny any and all liability associated with or related to the Released Claims.

## XIV.  WARRANTY OF RIGHTS

Settling Plaintiff represents and warrants to the Settling Defendants that it has

exclusive right and title to the wells listed on the attached Exhibits D, E and F.  Settling Plaintiff

further represents and warrants to the Settling Defendants that Settling Plaintiff has full authority

to release the Released Claims in favor of the Released Parties as set forth in this Settlement

Agreement and the Release and Indemnity Agreement.

## XV.  ENTIRE AGREEMENT

Each party to this Settlement Agreement, individually and collectively, declares

and represents that no promises, inducements, or other agreements not expressly contained

herein between (1) Settling Plaintiff and (2) Settling Defendants have been made with regard to

the settlement of the Released Claims; that this Settlement Agreement contains the entire

agreement between (1) Settling Plaintiff and (2) Settling Defendants with respect to said subject

matter; and that the terms of this Settlement Agreement, including all words, phrases, sentences,

and paragraphs, including the recitals hereto, are contractual and not recitals only, and are

material to the execution of this Settlement Agreement.  All prior agreements and

understandings, oral agreements and writings between Settling Plaintiff and Settling Defendants

regarding the matters set forth herein are expressly superseded hereby and are of no further force

or effect.  No part of this Settlement Agreement may be altered, amended, or modified in any

respect, except by a writing duly executed by Settling Plaintiff and the Settling Defendants.

SETTLEMENT AGREEMENT

## XVI. BINDING EFFECT

This Settlement Agreement hereto shall be binding upon and inure to the benefit of the Released Parties and the Settling Plaintiff.

## XVII. FURTHER DOCUMENTS

To the extent any documents are required to be executed by any of the parties to this Settlement Agreement to effectuate this Settlement Agreement, each party agrees to execute and deliver such other and further documents as may be required to carry out the terms of this Settlement Agreement.

## XVIII. REPRESENTATION

Each party to this Settlement Agreement represents and acknowledges that it has been represented by counsel with respect to this Settlement Agreement and any and all matters covered by or related to such Settlement Agreement. Each party has been fully advised with respect to all rights which are affected by this Settlement Agreement.

## XIX. NEUTRAL CONSTRUCTION

The parties to this Settlement Agreement agree that this Settlement Agreement was negotiated fairly between them at arms' length and that the final terms of this Settlement Agreement are the product of the parties' negotiations. The parties agree that this Settlement Agreement shall be deemed to have been jointly and equally drafted by them, and that the provisions of this Settlement Agreement therefore should not be construed against a party or parties to it on the grounds that the party or parties drafted or was more responsible for drafting the provision(s).

- 17 -

SETTLEMENT AGREEMENT

## XX.  VOLUNTARY AND KNOWING EXECUTION

Each party signing this Settlement Agreement represents and warrants that it read, knows, and understands the contents of this Settlement Agreement, has executed this Settlement Agreement voluntarily, and has not been influenced by any person or persons or attorney acting on behalf of any other party.

## XXI.  HEADINGS, NUMBER AND GENDER

Headings are used herein for convenience only and shall have no force or effect in the interpretation or construction of this Settlement Agreement.  As used in this Settlement Agreement, the singular shall include the plural, and the masculine shall include the feminine and neuter genders.

## XXII.  TIME IS OF THE ESSENCE

Time is of the essence for each and every provision of this Settlement Agreement.

## XXIII.  GOOD-FAITH EFFORT

The parties to this Settlement Agreement shall use their respective good-faith efforts to comply with their obligations under this Settlement Agreement.

## XXIV.  NO WAIVER; REMEDIES

No failure on the part of any party to this Settlement Agreement to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.  The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

- 18 -

SETTLEMENT AGREEMENT

### XXV.  SURVIVAL OF REPRESENTATIONS AND WARRANTIES

All representations and warranties of the parties to this Settlement Agreement have been and will be relied on by the other parties to this Settlement Agreement notwithstanding any investigation made by them.

### XXVI.  PAYMENT OF ATTORNEYS' FEES AND COURT COSTS

Each party to this Settlement Agreement shall be responsible for the payment of its own court costs, attorneys' fees, and all other expenses, costs, and fees in connection with the matters referred to in this Settlement Agreement, except as expressly set forth herein.

### XXVII.  ATTORNEYS' FEES AND COSTS TO ENFORCE AGREEMENT

If any action is required to be taken by any party to enforce any decision of an arbitrator as provided in this Settlement Agreement, the prevailing party in any such action shall be entitled to reasonable attorneys' fees and costs.

### XXVIII.  ADMISSIBILITY OF AGREEMENT

The parties expressly agree that this Settlement Agreement is a protected communication under Federal Rule of Evidence 408 and any equivalent code or common law rule of evidence of any state; however, the same shall be admissible in (i) a proceeding the sole purpose of which is to enforce the terms of this Settlement Agreement and its Exhibits hereto, (ii) any proceeding to establish an insurance or reinsurance claim by a Settling Defendant or Released Party, (iii) any proceeding to establish an appropriate set-off or credit to a judgment entered or to be entered in favor of Settling Plaintiff against an entity other than a Settling Defendant or any Released Parties, or (iv) other proceeding where such admission is necessary to effectuate the terms of this Settlement Agreement.

SETTLEMENT AGREEMENT

## XXIX. EXECUTION BY COUNTERPARTS

This Settlement Agreement may be executed in one or more counterparts. All counterparts will constitute one instrument binding on the signatories upon execution of one or more counterparts by all parties. Counsel for any party shall be authorized to assemble a composite counterpart which shall consist of one copy of each page, except the signature pages, together with multiple counterpart signature pages executed on behalf of every party to this Settlement Agreement. The composite counterpart may then be used by any party for all purposes as the complete signed and executed Settlement Agreement among the parties.

The Parties hereto, by their duly authorized officers, have caused this Settling Agreement to be executed as of the day and year first above written.

Approved as to Form:

Scott Summy, Esq.
Baron & Budd, P.C.
Settling Plaintiff's Counsel

LIST OF EXHIBITS, SIGNATURE PAGE INDEX, SIGNATURE PAGES

AND EXHIBITS FOLLOW THIS PAGE

MTBE MDL 1358 SETTLEMENT AGREEMENT SIGNATURE PAGES

**California-American Water Company**

By: _RLG_____
Signature

_Robert MacLean_____
Print Name

_President_____
Title

_10-29-2010_____
Date Executed

- 21 -



**CALIFORNIA**
AMERICAN WATER

## CORPORATE CERTIFICATE

I, Carrie Gleeson, certify that I am the Secretary of California-American Water Company ("Company"), that Robert MacLean who signed the foregoing instrument on behalf of the Company is President of the Company. I further certify that the said officer is acting within the scope of powers delegated to this officer by the governing body of the Company in executing said instrument.

Dated: October 29, 2010

Carrie L. Gleeson
Corporate Secretary of California-American
 Water

## CERTIFICATE OF RESOLUTION
## CALIFORNIA-AMERICAN WATER COMPANY

Carrie L. Gleeson, Secretary of California-American Water Company hereby certifies that the following is a true and correct copy of a resolution duly adopted by the Board of Directors at their regular board meeting on July 27, 2010, in accordance with law and the bylaws of said Corporation, that said resolution has not been amended and that it is still in full force and effect.

## PROPOSED RESOLUTION
## MTBE LAWSUIT
## SETTLEMENT WITH EXXONMOBIL

**RESOLVED,** that the Board of Directors of California-American Water Company ("Company") has considered the advice of Company's outside counsel with respect to settlement of the case California-American Water Company v. Atlantic Richfield Co., et al., 04 Civ. 4974 ("MTBE Litigation"), with defendant ExxonMobil ("Exxon"), and deems it advisable and determines that it would be in the best interest of the Company to enter into the settlement; and

**FURTHER RESOLVED,** that settlement of the MTBE Litigation by the Company and Exxon as recommended by Company's outside counsel is hereby approved.

**IN WITNESS WHEREOF,** I have hereunto subscribed my name and affixed the corporate seal of California-American Water Company this _21st_ day of October 2010.

Carrie Gleeson, Vice President, Legal & Secretary

CA Certificate of Resolution
MTBE Lawsuit
Settlement with ExxonMobil

MTBE MDL 1358 SETTLEMENT AGREEMENT SIGNATURE PAGES

**Exxon Mobil Corporation ((individually and f/k/a Exxon Corporation and d/b/a Exxon Mobil Refining & Supply Company, Exxon Chemical U.S.A., and ExxonMobil Chemical Corporation) and ExxonMobil Oil Corporation (individually and f/k/a Mobil Oil Corporation)**

By: _____
Signature

_____
Print Name

_____
Title

_____
Date Executed    10/18/10

- 22 -

## LIST OF EXHIBITS

Exhibit A:    Release and Indemnity Agreement

Exhibit B:    Stipulation of Dismissal

Exhibit C:    March 12, 2008 Agreement, with addendum F thereto, creating the Future Treatment Obligation

Exhibit D:    List of all of Settling Plaintiff's Public Water System Wells

Exhibit E:    List of all of Settling Plaintiff's Public Water System Wells that have ever had a detected level of any amount of MTBE and/or TBA

Exhibit F:    List of all of Settling Plaintiff's Public Water System Wells that have never had a detected level of any amount of MTBE and/or TBA

EXHIBIT "A"

EXHIBIT A -- RELEASE FORM

## RELEASE AND INDEMNITY AGREEMENT

1.      Under the terms and conditions of the attached Settlement Agreement

("Settlement Agreement"), the undersigned Settling Plaintiff, California-American Water

Company, in its individual and as applicable representative, governmental and/or sovereign

capacity, or as trustee, and on behalf of all successors, assigns, joint venturers, partners, ~~parents,~~

subsidiaries, ~~affiliates,~~ predecessors-in-interest, successors-in-interest, predecessors-in-name,

successors-in-name, beneficiaries, and each of their respective past, present, and future officers,

directors, employees, shareholders, officials, board members, trustees, fiduciaries, agents,

accountants, attorneys, insurance carriers, sureties, representatives, independent contractors,

consultants, experts, advisors, and all persons in privity with any of them and/or who could have

claimed or could claim by, through or under any of them (hereinafter collectively referred to as

"Releasor"), for and in consideration of the monetary payments paid to Releasor as set forth in

the Settlement Agreement and other good and valuable consideration, the receipt and sufficiency

of which is hereby acknowledged and confessed, hereby fully and finally RELEASES,

ACQUITS, AND FOREVER DISCHARGES—except as provided in paragraph 6.2 of the

Settlement Agreement—the Released Parties, as defined below, and any of them, of and from

any and all claims, actions, liabilities, rights, demands, suits, matters, liens, obligations, damages,

losses, remedies of any kind, and/or causes of action of every nature and description, kind or

character, known or unknown, past, present, or future, whether arising at common law, in equity,

and/or under or by virtue of any statute or regulation, including all federal, state, and/or local

environmental laws, that Releasor has, had, or may have in the future against the Released

Parties, or any of them, or that may be created or recognized in the future by statute, regulation,

- 1 -

EXHIBIT A -- RELEASE FORM

judicial decision, administrative adjudication, or in any other matter, including but not limited to

any direct claims, third-party claims, parens patriae claims, and/or assigned claims, including

without limitation, any and all claims for negligence, strict product liability, strict liability,

breach of express or implied warranty, breach of contract, trespass, fraud, unfair business

practices, deceptive trade practices (including but not limited to any and all claims under §

17200, et seq., of the California Business and Professions Code or similar statutes), private or

public nuisance, conspiracy, concert of action, market-share liability, commingled-product

liability, or any other form of collective liability or several liability, violations of any statute or

regulation, whether known or unknown including without limitation, any claim based in whole

or in part on the alleged failure of Settling Defendants to provide information to the United

States Environmental Protection Agency or any other federal, state, or local-government agency

charged with environmental regulation, fuel standards, air-emission standards, and/or water-

quality standards, past, present or future, accrued or which may accrue in the future, asserted or

unasserted, latent or patent, that is, has been or could have been or in the future might be asserted

by Releasor against Released Parties, or any of them, for actual damages, exemplary and

punitive damages, statutory damages, penalties of any kind, property damages, natural resource

damages, damages to equipment, economic or business losses, investigation costs, remediation

costs, restoration costs, treatment costs, other costs, prejudgment or post judgment interest,

attorneys' fees, injunctive or declaratory relief (including any such relief or remedy that might be

available under the Toxic Substance Control Act), and/or any other losses or detriment of any

kind, past, present or future, arising out of or in any way related to:

    (1)    the use of methyl tertiary butyl ether ("MTBE") or Other Authorized Oxygenates

(as defined below) in gasoline, at any time and for any reason;

- 2 -

EXHIBIT A -- RELEASE FORM

(2)     the actual or threatened presence of MTBE and/or TBA in water or on property

accessed, accessible, managed, owned, operated, used, and/or protected by Releasor (including

but not limited to wells or aquifers owned, operated, used and/or protected by Releasor), whether

past, present or future or on account of acts or omissions that occurred before or after the date of

settlement agreement, due to their use, or either of them, in gasoline, at any time and for any

reason; and

(3)     the actual or threatened presence of gasoline, benzene, toluene, ethylbenzene, and

xylenes (collectively referred to as "BTEX"), Other Authorized Oxygenates, and/or other

components of gasoline beyond those released in subsections (1) and (2) above, or other

petroleum products or any associated breakdown products thereof, in any well in which as of, or

prior to, the Effective Date of the Settlement Agreement, the presence of MTBE or Other

Authorized Oxygenates was detected at or in such well, or at or on such property, at any level

(including but not limited to those wells identified on the attached Exhibit E of the Settlement

Agreement).

It is the intent of the parties that, notwithstanding any provision to the contrary,

this Release and Indemnity Agreement does not release the Released Parties with respect to

discharges or spills of gasoline occurring after the Effective Date of the Settlement

Agreement from facilities owned and/operated directly by Settling Defendants to the extent

such damage, loss, or costs is caused by gasoline components other than MTBE or TBA.

Furthermore, the entirety of this Paragraph 1 includes, but is not limited to, all claims

asserted in the civil action commenced by Releasor referred to in this Release and Indemnity

Agreement ("Release and Indemnity Agreement") and/or the claims that were alleged in or could

- 3 -

EXHIBIT A -- RELEASE FORM

have been alleged in MDL 1358, and applies, *inter alia*, to wells accessed, managed, owned, operated used, and/or protected in the past or currently (even if sold or disposed of in the future) and to wells accessed, managed, owned, operated used, and/or protected in the future, including wells hereinafter acquired by any means (the entirety of this Paragraph 1 is collectively referred to hereinafter as "Released Claims").

2.      The "Released Parties" are:  Exxon Mobil Corporation (individually and f/k/a Exxon Corporation and d/b/a ExxonMobil Refining & Supply Company, Exxon Chemical U.S.A., and ExxonMobil Chemical Corporation) and ExxonMobil Oil Corporation (individually and f/k/a Mobil Oil Corporation); including all parents, subsidiaries, affiliates, shareholders, former shareholders, officers, former officers, directors, former directors, principals, former principals, employees, former employees, representatives, former representatives, assignees, successors, predecessors, and assigns of the above.

3.      "Other Authorized Oxygenate" means any chemical compound certified for use as an oxygenate under the provisions of the Clean Air Act Amendments of 1990 or as a Renewable Fuel under the provisions of the Energy Policy Act of 2005, including but not limited to, tertiary butyl alcohol ("TBA"), diisopropyl ether ("DIPE"), ethanol, methanol, tertiary amyl methyl ether ("TAME"), and ethyl tertiary butyl ether ("ETBE"), whether used in gasoline at any time as an octane enhancer, oxygenate pursuant to the requirements of the Clean Air Act Amendments of 1990, or for any other reason, and any associated breakdown products thereof.  The term MTBE shall also include any associated breakdown products of methyl tertiary butyl ether.

4.      Releasor covenants and agrees to forever refrain from instituting, maintaining or proceeding against any Released Party on any Released Claims, including Released Claims

- 4 -

EXHIBIT A -- RELEASE FORM

known and unknown, suspected, or claimed, that Releasor has or hereafter may have against the
Released Parties.  Releasor hereby agrees to cause an appropriate stipulation in the form agreed
upon, dismissing the Released Parties that are defendants, and any and all Released Claims
against Released Parties from the action entitled: California-American Water Company v.
Atlantic Richfield Co., et al., U.S. District Court–Southern District of New York Case No. 04
Civ 4974 (SAS), U.S. District Court–Northern District of California Case No. 03-5379 JSW,
which is pending as part of the multi-district litigation matter captioned: *In re Methyl Tertiary
Butyl Ether ("MTBE") Products Liability Litigation*, Master File No. 1:00-1898, MDL 1358
(SAS), M21-88 (S.D.N.Y.),  with prejudice, with each party to bear their own costs, as well as
any other Released Claims against any Released Parties from any other court actions brought by,
or on behalf of, Releasor, with prejudice, and with each party to bear its own costs.  Releasor
further agrees to execute and file additional motions, amended complaints, or other papers
necessary to secure dismissal with prejudice of any Released Claims against any Released
Parties and otherwise give full effect to this Release and Indemnity Agreement.

     5.     Releasor acknowledges and agrees that the Released Claims include claims that
Releasor does not know or suspect to exist in Releasor's favor at that time of this Release and
that, if known by Releasor might have affected Releasor's decision to settle and release the
Released Claims, Releasor expressly waives any and all rights and benefits that Releasor now
has, may have, or in the future may have under any statute, regulation, administrative
adjudication, or common law principle that would limit the effect of this Release to the claims
actually known or suspected to exist at the time of this Release, including but limited to §1542 of
the Civil Code of California, which reads as follows:

EXHIBIT A -- RELEASE FORM

**"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."**

6.      To the extent of any monetary payments made to the Releasor under the Settlement Agreement, Releasor agrees to indemnify and hold harmless the Released Parties from any and all liens, assignments, subrogation claims, encumbrances, garnishments, security interests or any other legally perfected right of another person or entity with respect to any monetary payment to be paid to Releasor as provided for in Paragraph 1 of this Release and Indemnity Agreement.

7.      In further consideration for the monetary payment to Releasor and other relief as provided for in Paragraph 1 of this Release and Indemnity Agreement, the Releasor has agreed to and hereby does indemnify and hold harmless Released Parties from and against any further payment of money damages, awards and judgments (in part or in whole), debts, liens, costs, charges and expenses, of any kind and of any character (including reasonable attorneys fees and costs), including and/or as a result of any and all claims, demands, actions and causes of action, of whatsoever nature or character, which have been or in the future may be asserted by any person, firm or entity claiming by, through or under Releasor, or any of them, for any of the Released Claims or claiming for any of the Released Claims in connection with any assets owned, operated or managed by Releasor as of the date of this Release.

8.      This Release and Indemnity Agreement does not release any non-settling defendants in any of the litigation covered by the Settlement Agreement and this Release and Indemnity Agreement. Nor does this Release and Indemnity Agreement release any alleged

- 6 -

EXHIBIT A – RELEASE FORM

claim against the Released Parties for compensatory damages under certain circumstances and with certain limitations as set forth in the Settlement Agreement at paragraph 6.2.

9.      It is the express intention of the parties to this Release that the consideration stated herein fully and completely compensates and satisfies Releasors for all Released Claims against the Released Parties.  Releasor expressly contracts that it will not assist in or advance the claim of any other person or entity against Released Parties, and that, except as assigned herein to Released Parties, Releasor neither has nor will assign, pledge or otherwise, in any manner, assign, sell, dispose of or transfer any right, title, interest or claim that Releasor has or may have against Released Parties.  No claim or cause of action of any type is reserved against Released Parties, except as expressly set forth.

10.     Releasor acknowledges and agrees that the amount of consideration and terms hereof are contractual and not merely recital.  Releasor further acknowledges and agrees that neither this Release, nor any exhibit, document or instrument delivered hereunder is intended to be or shall be construed as or deemed to be evidence of an admission or concession by any of the Released Parties in connection with any disputed facts or claims, or of any alleged liability or wrongdoing by any of the Released Parties.  Releasor expressly acknowledges and agrees that this Release and Indemnity Agreement, along with all related drafts, motions, court papers, conversations, negotiations and correspondence, the payment by Released Parties, and all statements made in connection with negotiation of this Release and Indemnity Agreement, constitute an offer to compromise and a compromise within the meaning of Federal Rule of Evidence 408, and any equivalent code or common law rule of evidence of any state.  Releasor agree that Releasor will not offer this Release and Indemnity Agreement, nor any exhibit, document or instrument delivered hereunder, nor any statement, transaction or proceeding in

- 7 -

EXHIBIT A -- RELEASE FORM

connection with the negotiation, execution or implementation of this Release and Indemnity Agreement as evidence in this or any other proceeding for any purpose; except in (i) an arbitration or any proceeding to enforce an arbitral decision under this Settlement Agreement, (ii) a proceeding the sole purpose of which is to enforce the terms of the Settlement Agreement and its Exhibits hereto, (iii) any proceeding to establish an insurance or reinsurance claim by a Settling Defendant or any Released Parties, (iv) any proceeding to establish an appropriate set-off or credit to a judgment entered or to be entered in favor of a Settling Plaintiff against an entity other than a Settling Defendant or any Released Parties, (iv) or other proceeding where such admission is necessary to effectuate the terms of this Release and Indemnity Agreement.

11.     Releasor intends and agrees that this Release shall be complete and shall not be subject to the claim of mistake of fact or law by Releasor and that it expresses a full and complete settlement of liability claimed by Releasor and denied by each and all of the Released Parties and, regardless of the adequacy or inadequacies of the consideration, this Release is intended to avoid litigation and to be final and complete.  Releasor acknowledges and understands that all of Releasor's expenses and attorneys' fees arising out of or related to the Released Claims are the responsibility of Releasor.

12.     Releasor expressly warrants and represents that, before executing this Release and Indemnity Agreement, Releasor has completely read the terms of this Release and Indemnity Agreement and/or that this Release and Indemnity Agreement has been completely read and explained to Releasor by Releasor's attorney and that the terms of the agreement are fully understood and voluntarily accepted by Releasor and that Releasor has authorized its undersigned representative to sign, execute and deliver this Release and Indemnity Agreement on behalf of the Releasor as the voluntary act and deed of Releasor on the date and year

- 8 -

EXHIBIT A -- RELEASE FORM

hereinafter mentioned with all necessary approvals and without any fraud or under any duress.

Releasor has relied solely and completely on Releasor's own judgment and the advice of

Releasor's counsel in making this settlement and executing this Release and Indemnity

Agreement.

     13.    The Releasor, and its undersigned representative, represent and warrant that this

Release and Indemnity Agreement has been executed by an official duly authorized to do so on

behalf of Releasor.  Releasor, and its undersigned representative, represent and warrant that

Releasor and its undersigned representative has or has obtained all requisite power to execute,

bind, deliver and perform this Release and Indemnity Agreement on behalf of Releasor and that

this Release and Indemnity Agreement has been duly and validly executed and delivered by

Releasor's authorized agent, that any necessary governmental, corporate or partnership

authorizations to make this Release and Indemnity Agreement valid and binding on Releasor

have been procured, and that a certified copy of the requisite board or legislative resolution,

power of attorney, secretary's certificate, or other documentation evidencing the authority of the

person below to execute this Release and Indemnity Agreement on behalf of the Releasor is

enclosed.  Further, in connection with the execution, delivery, and performance of this Release

and Indemnity Agreement, Releasor has complied with all provisions of the Constitution and

laws of the respective state of the Releasor and the respective charter, rules, and regulations of

the Releasor, Releasor has the full power and authority to enter into this Release and Indemnity

Agreement, and its execution, delivery, and performance by Releasor does not and will not

contravene or constitute a default under any provision of applicable law or regulation or of any

agreement, judgment, injunction, order, decree, or contractual restriction binding on Releasor.

No further approval, authorization, consent, order, notice to, or filing or registration, with any

EXHIBIT A -- RELEASE FORM

governmental authority is required with respect to the execution, delivery, and performance by Releasor of this Release and Indemnity Agreement. This Release and Indemnity Agreement is duly executed and delivered by Releasor's authorized representative and is the valid and legally binding obligation of Releasor, enforceable against the Releasor in accordance with its terms. Furthermore, without limiting the generality of the foregoing, Releasor is not entitled to any immunity on any grounds (i) with respect to the performance of its obligations under this Release and Indemnity Agreement, or (ii) from any legal proceedings to enforce the obligations hereunder. Releasor further warrants that it will not challenge or contest the validity of this Release and Indemnity Agreement and that it forever waives any defense to its validity, including any defense based on any claim the Release and Indemnity Agreement is ultra vires, violative of Releasor's sovereign immunity, or otherwise void.

14.    If any term, provision, right or duty of this Release and Indemnity Agreement is deemed void, voidable, unlawful or unenforceable, the remaining portions of this Release and Indemnity Agreement shall not be invalidated and shall remain in full force and effect. To this end, the provisions of this Release and Indemnity Agreement are declared to be severable. Furthermore, because the purpose of this settlement is to end this matter forever, Releasor agrees, covenants and warrants that, should it develop that there are any errors or mistakes, whether legal or factual and whether mutual or unilateral, which cause this document to be defective or which causes the release of the Released Parties to be defective or less than full and complete, the Releasor will execute any and all instruments and do any and all things necessary to effectuate a full, final and complete release and indemnification of the Released Parties for the Released Claims.

EXHIBIT A -- RELEASE FORM

Dated: __10-29-10__

California-American Water Company

By: _____ĒGR_____
    Signature of Authorized Official

    __Robert MacLean__
    Printed Name

    __President__
    Title

Enclosure

Release Approved as to Form:

_____Scott Summy_____
Scott Summy, Esq.
Baron & Budd, P.C.
Settling Plaintiff's Counsel

STATE OF __California__

COUNTY OF __San Diego__

Personally appeared before me, the undersigned Notary Public, on this the __29th__ day of __October__, 2010, __Robert MacLean__, to me known, or proved to me on the basis of satisfactory evidence, to be the person who executed the foregoing instrument and who acknowledged to me that he/she executed the same in their authorized capacity on behalf of the entity set forth above and that he/she did so with full authority, and he/she/they acknowledged that he/she/they executed the same as a free act and deed.

_____Karla Burgos Ayala_____
Notary Public
Printed Name: __Karla Burgos Ayala__
Notary No.: __1829117__

KARLA BURGOS AYALA
Commission # 1829117
Notary Public - California
San Diego County
My Comm. Expires Jan 2, 2013

- 11 -



**CALIFORNIA**
AMERICAN WATER

# CORPORATE CERTIFICATE

I, Carrie Gleeson, certify that I am the Secretary of California-American Water Company ("Company"), that Robert MacLean who signed the foregoing instrument on behalf of the Company is President of the Company. I further certify that the said officer is acting within the scope of powers delegated to this officer by the governing body of the Company in executing said instrument.

Dated: October 29, 2010

Carrie L. Gleeson
Corporate Secretary of California-American
Water

## CERTIFICATE OF RESOLUTION
## CALIFORNIA-AMERICAN WATER COMPANY

Carrie L. Gleeson, Secretary of California-American Water Company hereby certifies that the following is a true and correct copy of a resolution duly adopted by the Board of Directors at their regular board meeting on July 27, 2010, in accordance with law and the bylaws of said Corporation, that said resolution has not been amended and that it is still in full force and effect.

## PROPOSED RESOLUTION
## MTBE LAWSUIT
## SETTLEMENT WITH EXXONMOBIL

**RESOLVED,** that the Board of Directors of California-American Water Company ("Company") has considered the advice of Company's outside counsel with respect to settlement of the case California-American Water Company v. Atlantic Richfield Co., et al., 04 Civ. 4974 ("MTBE Litigation"), with defendant ExxonMobil ("Exxon"), and deems it advisable and determines that it would be in the best interest of the Company to enter into the settlement; and

**FURTHER RESOLVED,** that settlement of the MTBE Litigation by the Company and Exxon as recommended by Company's outside counsel is hereby approved.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed the corporate seal of California-American Water Company this 21st day of October 2010.

Carrie Gleeson, Vice President, Legal & Secretary

CA Certificate of Resolution
MTBE Lawsuit
Settlement with ExxonMobil

Page 1 of 1

EXHIBIT "B"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

In re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

------------------------------------------------------------

This Document Relates To:
*California-American Water Company v. Atlantic
Richfield Co., et al.*, U.S. District Court–Southern
District of New York Case No. 04 Civ 4974 (SAS)

------------------------------------------------------------

Master File No. 1:00-1898
MDL NO. 1358 (SAS)
M21-88

## STIPULATION AND ORDER OF DISMISSAL UNDER FED. R. CIV. P. 41

Plaintiff California-American Water Company ("Plaintiff") and Defendants Exxon Mobil

Corporation (individually and f/k/a Exxon Corporation and d/b/a ExxonMobil Refining &

Supply Company, Exxon Chemical U.S.A., and ExxonMobil Chemical Corporation) and

ExxonMobil Oil Corporation (individually and f/k/a Mobil Oil Corporation) ("Settling

Defendants") have advised the Court that they have resolved the matters between them and

agreed to the entry of this Stipulation and Order of Dismissal of the claims against the Settling

Defendants identified above, as indicated by the signatures of the respective counsel below. This

Court finds that this Stipulation and Order of Dismissal should be entered, with the findings

included below.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED as follows:

1.       This Court has jurisdiction over the Parties to this Stipulation and over the subject

matter of this action. The Parties to this Stipulation have advised the Court of their agreement to

settle this matter pursuant to a Settlement Agreement, a release, and this Stipulation and Order of Dismissal.

      2.    The Parties to this Stipulation consent to the dismissal of this action as to Settling Defendants, including all claims and counterclaims, with prejudice.

      3.    Each Party shall bear its own costs and attorneys' fees.

SO ORDERED:

Date:_____

_____

Judge_____

UNITED STATES DISTRICT JUDGE

AGREED TO AND ACCEPTED BY:
SHER LEFF LLP
BARON & BUDD, P.C.

SHEPPARD MULLIN RICHTER & HAMPTON LLP

By: _____
    SCOTT SUMMY
    Attorneys for Plaintiff California-
    American Water Company

By: _____
    JEFFREY J. PARKER
    Attorneys for Settling Defendants

EXHIBIT "C"

SETTLEMENT AGREEMENT

## SETTLEMENT AGREEMENT

This Settlement Agreement, together with its Exhibits, is made as of March 12, 2008 by and between the Settling Defendants (as defined below), on the one hand, and the Settling Plaintiffs (as defined below), on the other hand, regarding the settlement of all cases and claims between them involving methyl tertiary butyl ether and Other Authorized Oxygenates (as defined below), including but not limited to all cases and claims in the MDL litigation captioned: *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, Master File No. 1:00-1898, MDL 1358 (SAS), M21-88 (S.D.N.Y.) (hereinafter collectively referred to as the "Settlement Agreement").

### I. RECITALS

WHEREAS, methyl tertiary butyl ether ("MTBE") was used as an octane enhancer and a component oxygenate of and additive to gasoline at certain times by certain manufacturers and refiners of gasoline;

WHEREAS, tertiary butyl alcohol ("TBA") may have been used as a component oxygenate of and additive to gasoline at certain times and is a breakdown product of MTBE;

WHEREAS, certain Plaintiffs have commenced and maintain lawsuits in various jurisdictions, including but not limited to MDL 1358, in connection with MTBE and/or TBA;

WHEREAS, in the referenced lawsuits, certain Plaintiffs have alleged that certain Defendants are liable based on a commingled product theory of liability and the court has not granted Defendants' motions to dismiss such theory to date;

-1-

SETTLEMENT AGREEMENT

WHEREAS, trial currently is scheduled to commence in the spring of 2008 in one of the cases in MDL 1358;

WHEREAS, Settling Defendants (as defined below), while not admitting any wrongdoing or conceding that Plaintiffs have suffered any cognizable injury due to MTBE and/or TBA, nonetheless wish to resolve these lawsuits and claims to avoid the costs, expense, and uncertainty inherent in the litigation;

WHEREAS, Settling Plaintiffs (as defined below) also wish to avoid the costs, expense, and the uncertainty inherent in litigation,

NOW THEREFORE, the Settling Defendants and Settling Plaintiffs agree as follows:

## II. DEFINITIONS:

Terms used in this Settlement Agreement shall have the meanings defined below or as otherwise defined in this Settlement Agreement.

2.1    "Aggregate Settlement Payment" means the total amount that shall be paid to Settling Plaintiffs as a group pursuant to Article VI, which amount shall be comprised of the sum of the several and not joint payment obligations of each of the Settling Defendants pursuant to the Defendants' Allocation and which amount should equal FOUR HUNDRED TWENTY-THREE MILLION NINE HUNDRED SIXTY-THREE THOUSAND FIVE HUNDRED SIXTY-FOUR AND 67/100 DOLLARS ($423,963,564.67), provided that all Plaintiffs identified on the attached Exhibit A become and remain Settling Plaintiffs and all Settling Defendants become and remain Settling Defendants.

2.2    "Allocation of Settlement Proceeds" means the confidential percentage allocated share of each Settling Plaintiff of the Aggregate Settlement Payment as agreed to by the Settling Plaintiffs after full disclosure, which allocation was communicated in confidence to the Mediator.

-2-

SETTLEMENT AGREEMENT

2.3    "Aquifer" means a sub-surface water bearing zone or zones that supplies or potentially supplies drinking water and is accessed or accessible by wells.

2.4    "Bank" means Citibank, N.A. or other financial institution agreed upon by Settling Plaintiffs and Settling Defendants.

2.5    "BTEX" means benzene, toluene, ethyl benzene, trimethyl benzene, and all xylenes.

2.6    "Business Day" means any day other than (i) a Saturday or a Sunday or (ii) a day on which commercial banks in New York, New York are closed.

2.7    "Date of Execution" means March 12, 2008, which is the deadline for all Settling Plaintiffs to provide to Settling Defendants in the manner set forth below duly executed Settlement Agreements, Escrow Agreement, Release and Indemnity Agreements and the deadline for all Settling Defendants to provide to Settling Plaintiffs duly executed Settlement Agreements and Escrow Agreement.

2.8    "Defendants' Allocation" means the confidential percentage allocated share of each Settling Defendant of the Aggregate Settlement Payment and any future treatment obligation as agreed to by the Settling Defendants, which allocations were communicated in confidence to the Mediator.

2.9    "Effective Date" means the day following the occurrence of the last of each and every one of the following events:  (1) the execution and delivery as set forth herein of this Settlement Agreement by all Settling Plaintiffs and all Settling Defendants, (2) the execution and delivery as set forth herein of the Escrow Agreement on behalf of all Settling Plaintiffs and all Settling Defendants and the Escrow Agent, (3) the completion and exchange of any and all necessary authorizations and/or ratifications of this Settlement Agreement and the Escrow Agreement, whether corporate, partnership, governmental or quasi-governmental, (4) execution and delivery as set forth herein of binding Release and Indemnity Agreements in the form required by this Settlement Agreement in favor of the Settling Defendants by all Settling Plaintiffs, (5) the delivery as set forth herein of executed Stipulations of Dismissal with prejudice in the form required by this Settlement Agreement in favor of the Settling Defendants and any Released Parties who are parties to any of the litigation covered by this Settlement Agreement by all necessary

-3-

SETTLEMENT AGREEMENT

Settling Plaintiffs, (6) all hearings and the entry of findings and final orders by the court in MDL 1358 and/or all other competent court(s) or other alternative procedure provided under law, including without limitation the appropriate courts in California with respect to cases remanded from MDL 1358, holding that this Settlement Agreement is a good faith settlement necessary to extinguish claims for contribution by any non-settling alleged joint tortfeasors under the law of all applicable jurisdictions in all of the cases subject to this Settlement Agreement; (7) the entry of final orders of courts of competent jurisdiction approving the settlement and release of the claims of any plaintiffs who are infants or incompetent pursuant to this Settlement Agreement, and (8) the expiration of the time to appeal every such court determination as to the good faith or other approval of this Settlement Agreement, or if an appeal is taken, when all such appeals are exhausted and the Settlement Agreement and the good faith nature or other approvals of the Settlement Agreement under all applicable jurisdictions is upheld and final.  However, notwithstanding any provision to the contrary above, in the event any Attorney General for any state or any other Governmental Authority seeks to intervene in any pending case covered by this Settlement Agreement or commences a collateral lawsuit seeking to challenge this Settlement Agreement or the good faith nature of the Settlement Agreement, the Effective Date shall be stayed until the day following the occurrence of the last of each and every one of the following: (1) all such efforts at intervention or collateral attack on this Settlement Agreement by all Attorneys General or other Governmental Authority have been denied or withdrawn, (2) the time to appeal from such denial has expired without an appeal having been taken, and (3) in the event an appeal is taken, all appeals are concluded and the denial of the efforts of any such Attorneys General or other Governmental Authority to intervene or collaterally attack this Settlement Agreement has been sustained and no further appeals are permitted therefrom (referred to throughout as the "Effective Date" or "Effective Date of this Settlement Agreement").

2.10    "Escrow" means the escrow established with the Escrow Agent, which shall include an account in Citibank, N.A. or other financial institution agreed to by the parties ("Escrow Account"), which shall be used to:  (i) pool the several, and not joint, payments by the Settling Defendants in accordance with each Settling Defendant's allocated share of the Aggregate

-4-

SETTLEMENT AGREEMENT

Settlement Payment in an interest bearing account following the Effective Date, (ii) transfer the Aggregate Settlement Payment to the Settling Plaintiffs in accordance with the terms of this Settlement Agreement and Allocation of Settlement Proceeds, and (iii) in the event the Effective Date is delayed for reasons set forth in Paragraph 6.19, accumulate the several, and not joint, payments by the Settling Defendants in accordance with each Settling Defendant's allocated share of the Aggregate Settlement Payment in an interest bearing account pending the occurrence of the Effective Date or Termination of the Settlement Agreement, in accordance with the Escrow Agreement attached as Exhibit E.

2.11    "Escrow Agent" shall be Citibank, N.A. or such other person or entity agreed to by counsel for the parties or selected under the terms of the Escrow Agreement.

2.12    "Escrow Agreement" is the form of agreement attached as Exhibit E, which Settling Defendants and Settling Plaintiffs expressly authorize the individuals set forth in Exhibit E as the designated authorized representatives of the Settling Defendants and Settling Plaintiffs, respectively, to enter into with the Escrow Agent on behalf of and for the benefit of the Settling Defendants and Settling Plaintiffs, respectively

2.13    "Future Treatment Obligation" means the contractual obligation of Settling Defendants to provide in accordance with the Defendants' Allocation, severally and not jointly, a portion of future treatment costs of certain operating Public Water System groundwater drinking wells owned or operated by Settling Plaintiffs under certain circumstances as more fully set forth in the Treatment Protocol, which is attached as Exhibit F.

2.14    "Governmental Authority" means any government, any governmental, quasi-governmental or regulatory entity, department, commission, board, agency, authority, legislative body, or instrumentality, and any court, tribunal, or judicial body, in each case whether federal, state, or local.

2.15    "Maximum Contaminant Level" or "MCL" means the maximum permissible level of a contaminant in water which is delivered to any user of a public water system under Federal or State law applicable to a Settling Plaintiff in its respective jurisdiction.

SETTLEMENT AGREEMENT

2.16 "MDL 1358" means the court and all of the cases before the court in the matter captioned: *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, Master File No. 1:00-1898, MDL 1358 (SAS), M21-88 (S.D.N.Y.).

2.17 "Mediator" means David Geronemus, Esq. of JAMS who was appointed by the MDL 1358 Court as Special Settlement Master.

2.18 "MTBE" means methyl tertiary butyl ether and any associated breakdown products thereof.

2.19 "Other Authorized Oxygenates" means any chemical compound certified for use as an oxygenate under the provisions of the Clean Air Act Amendments of 1990 or as a renewable fuel under the provisions of the Energy Policy Act of 2005, including but not limited to, tertiary butyl alcohol ("TBA"), diisopropyl ether ("DIPE"), ethanol, tertiary amyl methyl ether ("TAME"), and ethyl tertiary butyl ether ("ETBE"), whether used in gasoline at any time as an octane enhancer, oxygenate pursuant to the requirements of the Clean Air Act Amendments of 1990, or for any other reason, and any associated breakdown products thereof.

2.20 "Payment Obligation" refers to the obligation of each Settling Defendant to deposit with the Escrow Agent its allocated share of the Aggregate Settlement Payment according to the Defendants' Allocation pursuant to the terms of this Settlement Agreement, which obligation is several and not joint.

2.21 "Public Water System" has the meaning prescribed by Section 1401(4) of the Safe Drinking Water Act ("SDWA") in effect on the Date of Execution of this Settlement Agreement.

2.22 "Release and Indemnity Agreement" means the Release and Indemnity Agreement in the form of the attached as Exhibit C (public water suppliers and others) or Exhibit D in the case of private well owners in the Wisconsin cases.

2.23 "Released Claims" shall have the meaning given in Paragraph 1 of Exhibit C.

2.24 "Released Parties" shall have the meaning given in Paragraph 2 of Exhibit C.

2.25 "Renewable Fuel" means ethanol and/or any other renewable fuel added to, or a component of, gasoline pursuant to the Energy Policy Act of 2005, regardless of when used in gasoline, past, present or future.

-6-

SETTLEMENT AGREEMENT

 2.26 "Settling Defendants" means (1) BP America Inc., BP Corporation North America Inc., BP Company North America Inc., BP Amoco Chemical Company, BP Products North America Inc. (f/k/a Amoco Oil Company and including by merger BP Exploration & Oil Inc.), BP West Coast Products LLC, and Atlantic Richfield Company, (2) Chevron Corporation (f/k/a ChevronTexaco Corporation), Chevron U.S.A. Inc. (f/k/a Gulf Oil Corporation), in its own name and on behalf of its operating divisions, Chevron Products Company and Chevron Chemical Company, Texaco Inc., TRMI-H LLC (f/k/a TRMI Holdings Inc.), Unocal Corporation, Union Oil Company of California, Four Star Oil & Gas Company (f/k/a Getty Oil Company), Chevron Phillips Chemical Company LLC, Chevron Phillips Chemical Company LP, (3) ConocoPhillips Company, Conoco Oil Company, Phillips Petroleum Company, Tosco Corporation, Chevron Phillips Chemical Company, L.L.C., and Chevron Phillips Chemical Company, L.P., (4) Equilon Enterprises LLC (d/b/a Shell Oil Products US, and as successor-by-merger to Equiva Services LLC), Motiva Enterprises LLC (individually and also incorrectly named as f/k/a Star Enterprises), Shell Oil Company, Shell Oil Products Company LLC (individually and d/b/a Shell Oil Products Company), Shell Petroleum Inc., Shell Trading (US) Company (individually and also incorrectly named as f/k/a Equiva Trading Company), and TMR Company (f/k/a Texaco Refining and Marketing, Inc. individually and as successor-by-merger to TRME Company f/k/a Texaco Refining and Marketing (East) Inc.); (5) Marathon Petroleum Company LLC, Marathon Oil Company, Marathon Oil Corporation, and Ashland Inc., (6) Big Diamond, Inc., Diamond Shamrock Refining Company, L.P., Diamond Shamrock Stations, Inc., Emerald Marketing, Inc., Huntway Refining Company, Premcor USA Inc., Sigmor Beverage, Inc., Sigmor Corporation, The Premcor Refining Group Inc., Ultramar Energy Inc., Ultramar Inc., Ultramar Ltd., Valero California Retail Company, Valero Diamond Metro, Inc., Valero Energy Corporation, Valero Marketing and Supply Company, Valero Refining and Marketing Company, Valero Refining Company-California, Valero Refining Company-Louisiana, Valero Refining Company-New Jersey, Valero Refining Company-Oklahoma, Valero Refining Company-Tennessee, L.L.C., Valero Refining-New Orleans, L.L.C., Valero Refining-Texas, L.P., Valero Retail Holdings, Inc., Valero Services, Inc., Valero Terminaling and Distribution Company, and VRG Properties Company, (7) CITGO Petroleum Corporation, CITGO

-7-

SETTLEMENT AGREEMENT

Refining and Chemicals Company L.P., PDV Midwest Refining, L.L.C., Cities Service Company, The UNO-VEN Company, and LYONDELL CITGO Refining L.P., (8) Sunoco, Inc. (individually and f/k/a Sun Oil Company and f/k/a Sun Company, Inc., and as successor-in-interest to Coastal Eagle Point Oil Company), Sunoco, Inc. (R&M) (individually and f/k/a Sun Refining and Marketing Company and f/k/a Sun Company, Inc. (R&M)), Suntide Refining Company; Belvieu Environmental Fuels L.P., Belvieu Environmental Fuels GP, LLC, Sun BBF, Inc., Sunoco Partners LLC, Sunoco Logistics Partners Operations GP LLC, Sunoco Logistics Partners L.P., Sunoco Pipeline L.P., Sun Pipe Line Company, Atlantic Refining & Marketing Corp., Atlantic Petroleum Corporation, Sun Atlantic Refining and Marketing B.V., and Sun Atlantic Refining and Marketing Company, (9) Hess Corporation (f/k/a Amerada Hess Corporation), Hess Oil Virgin Islands Corporation (a/k/a HOVIC), Hess Energy, Inc., Hess Energy Trading Company (a/k/a HETCO), and HOVENSA, Inc., (10) Flint Hills Resources, LP (f/k/a Koch Refining Company and Koch Petroleum Group), (11) El Paso Merchant Energy-Petroleum Company, El Paso Corporation, El Paso Energy Corporation, El Paso CGP Company, El Paso CGP Company, L.L.P., The Coastal Corporation, Coastal Eagle Point Oil Company, Coastal Refining and Marketing Inc., Coastal Mobile Refining Company, Coastal Oil New England, Coastal Oil New York, Coastal States Trading Company, Coastal Chem, Inc., and Coastal Mart, Inc., and (12) Tesoro Corporation (f/k/a Tesoro Petroleum Corporation) and Tesoro Refining and Marketing Company (erroneously named in some cases as Tesoro Refining and Marketing Company, Inc.), provided, in the case of each of the parties named above, that they execute this Settlement Agreement, comply with its terms, and not exercise a right of termination.[1]

    2.27   "Settling Plaintiffs" means the individuals and entities having claims or seeking relief, or preparing to make a claim or seek relief, relating to the actual or threatened presence of MTBE or Other Authorized Oxygenates in water that, as of the Date of Execution, have retained

---

[1] Settling Plaintiffs in some of the lawsuits named other entities as defendants which never existed or no longer exist. The definition of Settling Defendants contained herein does not include those non-existent entities, but it is the parties' intention to settle, release and dismiss all of Settling Plaintiffs' claims against any and all of those non-existent entities, as reflected in the Release and Indemnity Agreements attached hereto as Exhibit C and D.