**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------ X
      :
      :
**IN RE: METHYL TERTIARY BUTYL**  :
**ETHER ("MTBE") PRODUCTS**  :
**LIABILITY LITIGATION**  :     **OPINION AND ORDER**
------------------------------------------------ :
      :     **Master File No. 1:00-1898**
**This document relates to:**  :     **MDL 1358 (SAS)**
      :     **M21-88**
*Incorporated Village of Mineola, et al. v.*  :
*AGIP, Inc. et al.*, 03 Civ. 10051  :
*Carle Place Water District v. AGIP, Inc. et*  :
*al.*, 03 Civ. 10053  :
*Village of Hempstead v. AGIP, Inc. et al.*,  :
03 Civ. 10055  :
*Westbury Water District v. AGIP, Inc. et al.*,  :
03 Civ 10057  :
      :
      :
------------------------------------------------------ X



**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

       Third-Party Plaintiffs, Tartan Oil Corporation ("Tartan") and its

affiliate CP Service Station Operating Corporation ("CP"), filed a Third-Party

Complaint on July 30, 2010 in each of the four above-cited cases against Third-

Party Defendant Northville Industries Corporation ("Northville"). Third-Party

Plaintiffs alleged that Northville discharged petroleum onto, or in the vicinity of,

property located in Nassau County in the State of New York.[1]  The complaints,

which are identical, all assert a variety of state law claims, including common law

indemnity, strict liability under the New York Navigation Law, declaratory

judgment, breach of contract, and indemnification and contribution.[2]  Third-Party

Plaintiffs assert jurisdiction based on the jurisdiction and venue alleged in the

original action.[3]

Northville has moved to dismiss on three separate grounds: (1) that

this Court lacks subject matter jurisdiction; (2) that various claims asserted by the

Third-Party Plaintiffs exceed the permissible scope of an impleader action; and (3)

that the various claims are time-barred or fail to state a claim upon which relief

can be granted.  For the reasons stated below, Northville's motion is granted in

part and denied in part.

## II.    BACKGROUND

### A.    Procedural History

Tartan and CP were two of the smallest of the dozens of oil and

chemical companies sued in New York state court in November 2003 by various

---

[1]      *See* Third-Party Complaint ("Compl.").

[2]      *See id.*

[3]      *See id.* ¶ 2.

2

water districts in Nassau and Suffolk Counties for allegedly contaminating groundwater through the release of the gasoline additive methyl tertiary butyl ether ("MTBE").  Those lawsuits were removed to federal court on December 18, 2003, and then transferred to this Court by the Judicial Panel on Multidistrict Litigation pursuant to section 1407 of title 28 of the United States Code.  The federal complaints were served in April 2004 and alleged nine claims: (1) Public Nuisance; (2) Strict Liability for Design Defect and/or Defective Product; (3) Failure to Warn; (4) Negligence; (5) Private Nuisance; (6) Deceptive Business Acts and Practices in Violation of section 349 of the New York General Business Law; (7) Violation of section 170 of the New York Navigation Law; (8) Negligence per se; and (9) Trespass.[4]

One of the defendants in these actions was Texaco, Inc. (now ChevronTexaco Corp.), which had earlier filed for and been discharged from bankruptcy.[5]  On September 3, 2004, I held that this Court had core bankruptcy jurisdiction over all cases in the MDL under section 1334 of title 28 of United

_____

[4]    *See* Amended Complaint, No. 03 Civ. 10051 (SAS) (Doc. # 34).

[5]    *See In re MTBE*, No. 00 Civ. 1898, 2007 WL 4326755, at *1 (S.D.N.Y. Dec. 5, 2007).

3

States Code, on the basis of Texaco's bankruptcy.[6]

> This Court has core bankruptcy jurisdiction because questions concerning when certain "claims" arose and whether those claims were discharged involve the enforcement and construction of Texaco's discharge injunction, a substantive right created by the federal Bankruptcy Code.    Proceedings to determine the allowance and disallowance of a claim against the estate are core proceedings.[7]

The Third-Party Complaints focus on property located at 345 Old Country Road, located in Section 10, Block 49, Lot 33, Carle Place, County of Nassau, State of New York (the "CP Site").[8]  Since 1953, the leasehold interests in the CP Site have been successively owned by several petroleum companies including Sinclair Refining Company, Rainbow Petroleum Products, Inc., Sinclair Oil Corporation, Atlantic Richfield Company, BP Oil Corporation, and BP Oil Company, Inc.[9]  In 1983, BP Oil, Inc. assigned its interests in the CP Site to Northville Gasoline Corporation, which then assigned it to Northville.[10]

**B.    The 1992 Spill**

---

[6]    *See In re MTBE*, 341 F. Supp. 2d 386, 416 (S.D.N.Y. 2004).

[7]    *Id.* at 414.

[8]    *See* Compl. ¶ 7.

[9]    *See id.* ¶¶ 7-12.

[10]    *See id.* ¶¶ 13-15.

4

In 1990, Northville operated the CP Site as a filling station with two six thousand and two eight thousand gallon tanks and two pump islands with five pumps.[11] These tanks, constructed of single-wall fiberglass, were installed in 1974.[12] In 1988, a tank test failure was reported for the CP Site, and in 1990, Northville hired ERM Northeast ("ERM") to perform an environmental assessment of the CP Site (the "1990 Assessment").[13] The results of the 1990 Assessment indicated significant groundwater contamination at the CP site, including high concentrations of benzene, toulene, ethyl benzene, and xylene ("BTEX"). After conducting the assessment, ERM determined that the contamination was significant enough to warrant a regulatory request for additional investigation and remediation.[14]

According to the 1990 Assessment, the source of the high levels of groundwater contamination at the site appeared to be gasoline leakage from the tanks and pump islands at the CP site.[15] Third-Party Plaintiffs allege that

---

[11]    *See id.* ¶ 16.

[12]    *See id.* ¶ 17.

[13]    *See id.* ¶¶ 18-19.

[14]    *See id.* ¶¶ 20-21.

[15]    *See id.* ¶ 22.

5

Northville should have filed a spill report with the New York State Department of
Environmental Conservation ("NYSDEC") after receiving the results of the 1990
Assessment, but failed to do so.[16]  Wells at the CP Site were tested for
contamination in January 1992, and one of the wells was found to have one-eighth
of an inch of free phase gasoline.[17]  Based upon this finding, on January 17, 1992,
Northville made a spill report to the NYSDEC and a spill file was opened.[18]
Northville then retained ERM to investigate and perform remediation of the
release pursuant to a Stipulation and Corrective Action Plan entered into with the
NYSDEC in September 1996 (the "1996 Stipulation").[19]

## C.    Remediation

Meanwhile, in 1994, Tartan began negotiations to acquire
Northville's leasehold rights to the CP Site.  The negotiations were successful, and
on April 7, 1995, Northville assigned its interests to Tartan, pursuant to an
Assignment Agreement.  The Assignment Agreement required Northville to
remediate existing contamination at the CP Site so that the site would be in

---

[16]    *See id.* ¶ 24.

[17]    *See id.* ¶¶ 25-27.

[18]    *See id.* ¶ 27.

[19]    *See id.* ¶ 28.

compliance with applicable environmental laws and standards, and to provide a defense and indemnification for any claims arising out of the 1992 spill and relating to the remediation required to address this condition.[20]

Northville hired ERM to oversee the design and installation of a soil venting and air sparging system at the CP Site for remediation purposes, and the remediation was operated between June 1996 and June 1997.[21] Then, on or about June 12, 1997, ERM reported to the NYSDEC that the conditions at the CP Site met the remedial system shutoff criteria set forth in the 1996 Stipulation. On October 10, 1997, ERM provided the NYSDEC with the results of post-remediation monitoring and requested closure of the 1992 Spill file.[22] In a letter dated November 13, 1997, the NYSDEC informed Northville that "No Further Action" was required at the CP Site and the 1992 Spill file was removed from the active spill list.[23]

Tartan, which had acquired Northville's leasehold interest in 1994, retained the services of an engineer, Warren Lowry, PE, to review and monitor the

---

[20]     See id. ¶ 31.

[21]     See id. ¶¶ 32-33.

[22]     See id. ¶¶ 35-36.

[23]     See id. ¶ 37.

7

remediation work that ERM was conducting at the CP Site.[24]  On June 9, 1998,

Lowry examined the results of the post-remediation testing that ERM had

conducted, and noted that levels of MTBE and BTEX were above acceptable

groundwater quality limits.[25]  Subsequently, Lowry recommended re-testing all ten

monitoring wells at the CP Site.  Based on sampling conducted on August 6, 1998,

Northville wrote to the NYSDEC and summarized the test results, claiming that a

new spill had occurred in 1997.[26]  By letter dated August 13, 1998, Tartan's

counsel wrote to the NYSDEC disputing Northville's theory that a new spill

occurred.  Tartan asserts that no new discharge or release has occurred at the CP

Site since 1992, and that investigation and remediation of the site is ongoing

pursuant to the requirements of the NYSDEC.[27]

      Roughly three years after it was sued by various Nassau and Suffolk

water districts, Tartan advised Northville of the MTBE litigation and demanded a

defense and indemnification under the terms of the April 1995 Assignment

---

[24]    *See id.* ¶ 34.

[25]    *See id.* ¶ 38.

[26]    *See id.* ¶¶ 39-40.

[27]    *See id.* ¶ 49.

Agreement.[28]  Under the terms of the Assignment Agreement, Northville "agreed to defend, indemnify and hold [Tartan] harmless with respect to the environmental condition of the CP site."[29]  To date, Northville has refused to provide Tartan with any defense, indemnification or contribution in connection with the MTBE litigation or with the alleged contamination or remediation at the CP Site.

## III.   APPLICABLE LAW

### A.   Subject-Matter Jurisdiction

"'It is a fundamental precept that federal courts are courts of limited jurisdiction' and lack the power to disregard such limits as have been imposed by the Constitution or Congress."[30]  Section 1334 of title 28 of the United States Code confers subject matter jurisdiction on the federal district courts of all civil proceedings arising under title 11, or arising in or related to cases under title 11. "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate

---

[28]     *See id.* ¶¶ 52-53.

[29]     *Id.* ¶ 55.

[30]     *Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978)).

the case."[31]

## B.    Rule 12(b)(1) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of

a claim when the federal court "lack[s] . . . jurisdiction over the subject-matter."[32]

The plaintiff bears the burden of establishing subject-matter jurisdiction by a

preponderance of the evidence.[33]  However, courts have an "independent

obligation to consider the presence or absence of subject-matter jurisdiction *sua*

*sponte*."[34]

In considering a motion to dismiss for lack of subject-matter

jurisdiction, the court must assume the truth of the material factual allegations

contained in a complaint.[35]  However, "jurisdiction must be shown affirmatively,

and that showing is not made by drawing from the pleadings inferences favorable

---

[31]    *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996).

[32]

[33]    *See Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002); *Goonewardena v. New York*, 475 F. Supp. 2d 310, 321 (S.D.N.Y. 2007).

[34]    *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006).

[35]    *See Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citing *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004)).

to the party asserting it."[36]  In fact, "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits."[37]

## C.     Failure to State a Claim

In deciding a motion pursuant to Rule 12(b)(6), the court must "accept as true all of the factual allegations contained in the complaint"[38] and "draw all reasonable inferences in [the] plaintiff[s'] favor."[39]  However, the court need not accord "[l]egal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness."[40]  To survive a Rule 12(b)(6) motion to dismiss, the allegations in the complaint must meet a standard of "plausibility."[41]  A claim is facially plausible "when the plaintiff pleads factual

---

[36]     *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) (citing *Norton v. Larney*, 266 U.S. 511, 515 (1925)).

[37]     *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999).

[38]     *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007).  *Accord Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009).

[39]     *Ofori-Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006).

[40]     *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks omitted).

[41]     *Twombly*, 550 U.S. at 564.

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[42]  Plausibility "is not akin to a probability requirement," rather plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[43]

When determining the sufficiency of a claim under Rule 12(b)(6), the court is normally required to consider only the allegations in the complaint. However, the court is allowed to consider documents outside the pleading if the documents are integral to the pleading or subject to judicial notice.[44]

## D.   Impleader

Rule 14(a) allows a defendant to add a third party "who is or may be liable to it for all or part of the claim against it."  The third party's liability must be "dependent upon the outcome of the main claim" – that is, it must be derivative of the outcome of the main claim.[45]  Timely motions under Rule 14(a) should be freely granted to promote judicial efficiency unless doing so would prejudice the

---

[42]   *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotation marks omitted).

[43]   *Id.* (quotation marks omitted).

[44]   *See Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006).

[45]   *See* 3-14 James Wm. Moore et al., Moore's Federal Practice - Civil § 14.04.

plaintiff, would unduly complicate the trial, or would foster an obviously unmeritorious claim.[46]

While the impleader rule is liberally construed to avoid duplicative litigation, it is also narrower than cross-claims and counter-claims in that it must not merely arise out of the same transaction or occurrence, but must be premised on derivative liability.[47]  However, a litigant may use the permissive party joinder rule to join additional claims against an impleaded third-party defendant.[48]  In this way, the impleading party can assert any claims – even transactionally unrelated claims – against a third-party defendant.[49]

## IV.   DISCUSSION

### A.   Subject Matter Jurisdiction

Having settled with Plaintiffs, Texaco has no further interest in this proceeding, and the remaining dispute lies entirely with non-debtors.  In fact, all other defendants in the original action have settled, and Tartan is the only

---

[46]   *See Falcone v. MarineMax, Inc.*, 659 F. Supp. 2d 394, 401-02 (E.D.N.Y. 2009); *Prudential Ins. Co. v. BMC Indus., Inc.*, 113 F.R.D. 100, 102 (S.D.N.Y. 1986).

[47]   *See* Moore et al., *supra* note 45, at § 14.04.

[48]   *See id.*

[49]   *See id.*

13

remaining defendant.  This action no longer has any relationship to the Texaco

bankruptcy.  However, because facts relating to subject matter jurisdiction are

generally considered as they exist when the action is removed, these subsequent

developments do not divest this Court of jurisdiction.[50]

Federal jurisdiction arising under section 1334 of the Bankruptcy

Code "is decided, like federal jurisdiction generally, on the basis of the facts at the

time of removal."[51]  In *WorldCom*, the court found that

> adopting a rule that would divest federal courts of subject
> matter jurisdiction over actions 'related to' a bankruptcy estate
> as the confirmation of the reorganization plan grew near
> would create perverse incentives for the parties to engage in
> delay and gamesmanship in both the bankruptcy
> reorganization and the related litigation.[52]

Instead, "[t]he decision whether to retain jurisdiction should be left to

the sound discretion of the [Court]," which "must consider four factors in

determining whether to continue to exercise jurisdiction: judicial economy,

---

[50]     *See In re WorldCom Inc. Sec. Litig.*, 294 B.R. 553, 556-57 (S.D.N.Y. 2003).

[51]     *Id.  Accord Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939).  *See also* 14C Wright & Miller, Federal Practice and Procedure § 3739, at 468 (3d ed. 1998) ("[W]hether an action should be remanded to state court must be resolved by the district court with reference to the complaint, the notice of removal, and the state court record at the time the notice of removal was filed.").

[52]     *In re WorldCom Inc. Sec. Litig.*, 294 B.R. at 557.

convenience of the parties, fairness and comity."[53]  Those factors, which parallel

the analysis prescribed by the Supreme Court in *United Mine Workers v. Gibbs*[54]

for the exercise of supplemental jurisdiction, weigh in favor of continuing to

exercise jurisdiction in this matter.

      This Court has developed a special expertise in the area of MTBE

cases over the past several years.[55]  While New York state courts are certainly

more than capable of deciding the issues this case presents, maintaining

jurisdiction in this Court will help ensure that a quick, fair and efficient resolution

of these cases is achieved.  Additionally, the Tartan defendants have already

engaged in extensive discovery, supervised by this Court, and have participated in

settlement discussions under the supervision of Magistrate Judge Debra Freeman.

By exercising jurisdiction over the Northville actions, this Court avoids

unnecessarily splintering the claims.  Nor are there convenience concerns – were I

to remand, litigants would find themselves in state court, a short distance from the

federal court.  Comity concerns support dismissal when the case raises unsettled

---

[53]    *In re Porges*, 44 F.3d 159, 163 (2d Cir. 1995).

[54]    *See* 383 U.S. 715 (1966).

[55]    *See, e.g., In re MTBE*, 522 F. Supp. 2d 569, 571 (S.D.N.Y. 2007); *In re MTBE*, 341 F. Supp. 2d 386, 414-16 (S.D.N.Y. 2004).

15

issues of state law best left to a state court.[56]   This case presents no unsettled

issues of New York law.

**B.      Scope of Impleader**

A third-party complaint "is a narrow device and cannot be used to

bring in other matters that may have some relationship to the case."[57]  One factor

to consider in determining whether the third-party claims are proper, or whether

they are separate and independent claims, is to look at the relief sought in the

third-party complaint.[58]

In this case, Tartan asserts claims against Northville for strict liability

under New York's Navigation Law, declaratory judgment, breach of contract,

indemnification and contribution.  Northville argues that the claims in the Third-

Party Complaints "do not assert a 'claim-over' with respect to plaintiffs' claims for

damages to the public water supply."[59]  Rather, "they seek different relief with

respect to a private property (the CP site) based upon private contractual and other

---

[56]      *See In re Masterwear Corp.*, 241 B.R. 511 (Bankr. S.D.N.Y. 1999).

[57]      *Doucette v. Vibe Records, Inc.*, 233 F.R.D. 117, 120 (E.D.N.Y. 2005).

[58]      *See id.*

[59]      Third-Party Defendant's Memorandum of Law in Support of Motion
to Dismiss ("Def. Mem.") at 10.

16

state law claims between the Tartan defendants and Northville."[60]  But the thrust

of the Third-Party Complaints is that any MTBE waterway contamination

occurred during Northville's ownership of the CP Site, and that Northville is

contractually bound to indemnify Tartan for any "damages, costs, interest and

penalties which may be recovered by Plaintiff or the State in the underlying

action."[61]  Tartan's claims for indemnification and contribution represent the

classic grounds for a third-party action, and are clearly appropriate under Rule

14.[62]

　　　　Because Tartan's indemnification and contribution claims properly

implead Northville, Tartan can join the remaining claims against Northville under

Rule 18(a).[63]  Northville contends that Tartan's claims "seek different and

independent relief" from the relief sought in the underlying action, and are

therefore inappropriate under Rule 14.[64]  However, the right to join additional

––––––––––––––––––––

[60]　　*Id.*

[61]　　Compl. ¶ 69.

[62]　　*See Doucette*, 233 F.R.D. at 120; David Seigel, Practice Commentary, "The 1990 Adoption of § 1367, Codifying 'Supplemental' Jurisdiction," *printed in* 28 U.S.C.A. § 1367 at 832-33 (.

[63]　　*See* Moore et al., *supra* note 45, at § 14.04[3][c].

[64]　　Third-Party Defendant's Reply Memorandum of Law in Support of Motion to Dismiss ("Reply Mem.") at 5.

claims under Rule 18 enables the party invoking impleader to seek affirmative relief exceeding the demands made by plaintiff in his or her complaint.[65]

Nonetheless, the court must always have a basis to exercise subject matter jurisdiction.[66]  Tartan and Northville are non-diverse parties, and none of Tartan's claims raise a federal question.  But where the district court has original jurisdiction over a civil action, it may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III . . . *[and] include claims that involve the joinder or intervention of additional parties.*"[67]  Disputes form part of the same case or controversy when they "derive from a common nucleus of operative fact,"[68] which is the case when the facts underlying the third-party claims substantially overlap the direct claims.[69]

Tartan's Navigation Law claims allege that Northville is strictly liable

---

[65]     *See* Moore et al., *supra* note 45, at § 14.04[3][c].

[66]     *See id.*

[67]     28 U.S.C. § 1367(a) (emphasis added).

[68]     *Promisel v. First Am. Artificial Flowers Inc.*, 943 F.2d 251, 254 (2d Cir. 1991).

[69]     *See Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697 (2d Cir. 2000).

to Tartan for "all cleanup and removal costs and all direct and indirect damages" due to a discharge of petroleum that took place at the CP Site during Tartan's period of ownership.[70]  The Navigation Law claims are based entirely upon the environmental contamination for which Plaintiffs are seeking compensation against Tartan, and implicate the same property.  The facts underlying the third-party claims overlap sufficiently with the direct claims to form a part of the same case or controversy.  Accordingly, this Court has subject matter jurisdiction over these claims.

The declaratory judgment claims seek a judicial determination as to the rights of each party for all past, current and future expenses relating to the same petroleum discharge.  Because a determination of the rights of the parties will involve an investigation of the same facts surrounding the same spill – when the underground storage tanks leaked, how extensively the groundwater was contaminated, and who owned, operated, controlled and used the site and at what times – this Court may also exercise supplemental jurisdiction over the declaratory judgment claims.

Finally, Tartan's breach of contract claim alleges that Northville breached its obligations under the Assignment Agreement by failing to adequately

---

[70]     *See* Compl. ¶¶ 59-66.

19

remediate the environmental condition at the CP Site, and by refusing to provide

Tartan with a defense and indemnification in relation to the MTBE litigation.[71]

While there may be facts at issue in the breach of contract claim that are not

directly at issue in the MTBE litigation itself, the breach arose out of the spill that

instigated the underlying litigation. Moreover, this Court's familiarity with the

subject matter of the suit weighs in favor of exercising jurisdiction.[72]

> Section 1367(c) of title 28 states that
>
> district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if – (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.[73]

"[T]he discretion to decline supplemental jurisdiction is available

only if founded upon an enumerated category of [28 U.S.C. § 1367(c)]."[74] The

Second Circuit has held that "where at least one of the subsection 1367(c) factors

---

[71]   *See* Compl. ¶¶ 85-88.

[72]   *See Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 336 (2d Cir. 2006).

[73]   28 U.S.C. § 1367(c).

[74]   *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998).

20

is applicable, a district court should not decline to exercise supplemental

jurisdiction unless it *also* determines that doing so would not promote the values

articulated in *Gibbs*: economy, convenience, fairness, and comity."[75]  Because

hearing the third-party claims in this Court will advance these goals, this Court's

exercise of supplemental jurisdiction is appropriate.

### C.    Statutes of Limitations

Northville characterizes several of Tartan's damage claims as

retrospective and therefore subject to the three-year statute of limitations found in

section 214-c of the New York Civil Practice Law and Rules ("CPLR").[76]

However, nowhere in the complaints does Tartan seek recovery for past

remediation costs.  Rather, the complaints indicate that the "Investigation and

Remediation of the CP Site is ongoing by Third-Party Plaintiffs pursuant to the

requirements of the NYSDEC."[77]  Tartan is seeking indemnification, with the

---

[75]    *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004) (emphasis added) (citation omitted).

[76]    *See* Def. Mem. at 11 ("The Tartan defendants' First, Second and Third Claims for relief, insofar as they assert claims seeking recovery for alleged property damage to the CP Site, diminution of value of the CP Site, costs of investigation and remediation of the CP Site, and associated 'direct' and 'indirect' damages, are untimely and should be dismissed.").

[77]    Compl. ¶ 49.

21

exception of its claim for diminution of property value.

## 1. Navigation Law Article 12 Claims

Article 12 of the Navigation Law permits claims for both property damage and indemnity, but a different statute of limitations and accrual rule applies to each type of claim.[78]  Claims for property damage caused by petroleum spills are subject to the three-year statute of limitations found in section 214-c(2) of the CPLR, and accrue at the time the injury is discovered.[79]  Claims for indemnification for cleanup and removal costs are governed by the six-year statute of limitations found in section 213(2) of the CPLR, and accrue when a plaintiff incurs a loss by performing an obligation it claims a defendant should have performed.[80]

Tartan's complaint seeks relief under the Navigation Law, including damages equal to the costs of cleanup and removal of the petroleum discharge and all direct and indirect damages relating thereto, including attorneys' fees and diminution in the value of the CP Site.  It is unclear what, if any, remediation has taken place on the CP Site since Northville's remediation efforts were suspended

---

[78]     *See In re MTBE*, 2007 WL 1601491, at *3 (S.D.N.Y. June 4, 2007).

[79]     *See id.*

[80]     *See id.*

in 1997.  If discovery reveals that Tartan incurred remediation costs more than six years prior to filing this suit, recovery of those costs may well be time-barred. However, dismissal of the Navigation Law claims is not appropriate at this point in the litigation.

The only claim that seeks damages for injury to the CP Site is the diminution of property value claim.  This claim accrued at the time of Tartan's actual or constructive discovery of the injury, and is subject to the three-year statute of limitations under section 214-c(2) of the CPLR.[81]  Tartan became aware of the elevated levels of MTBE and BTEX no later than August 1998.[82] Therefore, Tartan's claim for damages for diminution of property value under the New York Navigation Law is dismissed as time-barred.

Because a cause of action seeking declaratory judgment is governed by the same statute of limitations applicable to the underlying claim, Tartan is also barred from obtaining a declaratory judgment for diminution of property value.[83]

## 2. Breach of Contract

---

[81]    See id.

[82]    See Compl. ¶¶ 38-43.

[83]    See Stone v. Williams, 970 F.2d 1043, 1048 (2d Cir. 1992); 145 Kisco Ave. Corp. v. Dufner Enters., Inc., 198 A.D.2d 482 (2d Dept. 1993).

Northville argues that to the extent Tartan alleges breach of contract for not properly remediating the 1992 spill in 1997, that claim is time-barred under section 213(2) of the CPLR.  However, Tartan alleges that "[o]n or about April 12, 2006 and July 10, 2006, Tartan advised Northville of the MTBE Litigation and demanded a defense and indemnification from Northville because the allegations in the MTBE Litigation specifically relate to the 1992 Spill.  This demand was based upon the indemnification provisions contained in the April 1995 Assignment Agreement."[84]  Under New York law, an action accrues at the time the contract is breached, not from the day the breach was discovered or should have been discovered.[85]  Because Tartan alleges that Northville breached the contract in 2006, the action is timely.

## D.    Standing

Northville contends that Tartan failed to state a claim because the complaints do not allege that Tartan "owned, leased, or had any legal interest in the CP Site which would provide a legal right to recover for the claims asserted."[86]

---

[84]    Compl. ¶ 52.

[85]    *See Gutkowski v. Steinbrenner*, 680 F. Supp. 2d 602, 615 (S.D.N.Y. 2010); N.Y. CPLR § 213-2.

[86]    Def. Mem. at 14.

24

As a result, Northville seeks dismissal of the First, Second, and Fifth Claims for relief.[87]

However, the complaints plead that CP is an affiliate of Tartan.[88] Northville argues that Tartan is attempting to pierce the corporate veil it created for its own benefit, which is generally prohibited by New York law.[89] But courts have often ignored the corporate form for equitable reasons where related corporate entities are no longer in business, and were formed by the same people at the same address, for the same purpose.[90] This is exactly the case with Tartan and CP. Dismissing Tartan's claims on this basis would exalt form over substance. Tartan therefore has standing to proceed with these claims.

## V.   CONCLUSION

For the aforementioned reasons, Northville's motion to dismiss the above-captioned actions is denied in part and granted in part. The Clerk of the Court is directed to close this motion [Docket No. #3172].

---

[87]    *See id.*

[88]    *See* Compl. ¶ 5.

[89]    *See, e .g., Carey v. National Oil Corp.*, 592 F.2d 673, 676 (2d Cir. 1979); *Wilhelmina Models, Inc. v. Fleisher*, 19 A.D.3d 267, 269 (1st Dep't 2005).

[90]    *See, e.g., 24/7 Records, Inc. v. Sony Music Entm't, Inc.*, 566 F. Supp. 2d 305 (S.D.N.Y. 2008).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              December 20, 2010

26

## -Appearances-

**Counsel for Tartan:**

Debra L. Rothberg, Esq.
DL Rothberg & Associates, P.C.
1065 Avenue of the Americas
Floor 19
New York, NY 10018
Tel: (212) 714-1212
Fax: (212) 714-0969

**Counsel for Northville:**

Brian T. Carr, Esq.
Herzfeld & Rubin, P.C.
125 Broad Street
New York, NY 10004
Tel: (212) 471-8466
Fax: (212) 344-3333

**Liaison Counsel for Plaintiffs:**

Robin Greenwald, Esq.
Robert Gordon, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
Tel: (212) 558-5500
Fax: (212) 344-5461

**Liaison Counsel for Defendants:**

Peter J. Sacripanti, Esq.
James A. Pardo, Esq.
McDermott Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
Tel: (212) 547-5583
Fax: (212) 547-5444