**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
|  | : | **Master File No. 1:00-1898** |
| **In re Methyl Tertiary Butyl Ether** | : | **MDL No. 1358 (SAS)** |
| **("MTBE") Products Liability Litigation** | : | **M21-88** |
|  | : |  |
|  | : | **DECLARATION OF MICHAEL A.** |
| **This Document Relates To:** | : | **WALSH IN SUPPORT OF** |
|  | : | **DEFENDANT 7-ELEVEN, INC.'S** |
| **Orange County Water District v.** | : | **MOTION FOR ORDER** |
| **Atlantic Richfield Co., et al.** | : | **DETERMINING GOOD FAITH** |
| **(Case No. 04-4968)** | : | **SETTLEMENT** |
|  | : |  |

_____

<u>**DECLARATION OF MICHAEL A. WALSH IN SUPPORT OF**</u>
<u>**DEFENDANT 7-ELEVEN INC.'S MOTION FOR ORDER DETERMINING**</u>
<u>**GOOD FAITH SETTLEMENT**</u>

Michael A. Walsh, an attorney admitted to practice law in the State of Texas and the State of New York and in this Court, hereby declares the following under the penalty of perjury:

1.       I am a partner with the law firm of Strasburger & Price, LLP. My firm is counsel to 7-Eleven, Inc. ("7-Eleven") with respect to lawsuits filed against 7-Eleven concerning the gasoline additives methyl tertiary butyl ether ("MTBE") and tertiary butyl alcohol ("TBA"). I engaged in discussions with counsel for Plaintiff Orange County Water District ("the District") regarding the settlement of the above-referenced case (the "Litigation") regarding twenty-two 7-Eleven convenience stores within the District's service area and near the service area that are potentially within the geographic scope of the Litigation (the "7-Eleven Stores") and have personal knowledge of the facts set forth in this Declaration, except regarding those matters stated on information and belief, which matters I believe to be true.

2.       I make this declaration in support of the motion by 7-Eleven for a determination by the Court that the Settlement and Release Agreement between the District and 7-Eleven ("Settlement Agreement") is a good faith settlement under applicable California law. A true and correct copy of the Settlement Agreement is attached hereto as Exhibit A.

- 1 -

3.     The Litigation involves claims for alleged contamination of groundwater by gasoline and its constituents, including MTBE and TBA, and for injunctive relief in connection with the operation of gasoline delivery systems.  Since 2004, 7-Eleven has been party to three cases that were transferred to this Court as part of MDL 1358.  Since December 2007, the Litigation has been the sole remaining case in this MDL to which 7-Eleven is a party.

4.     The District's claims concern the alleged past, present, and future actual or threatened presence of MTBE, TBA, other authorized oxygenates, gasoline, benzene, toluene, ethylbenzene, xylenes, and/or other components of gasoline and fuel in water or on property (including but not limited to wells, aquifers, and water resources) accessed, accessible, managed, owned, operated, used, and/or protected by the District ("Gasoline Contamination").

5.     On July 2, 2009, pursuant to Case Management Order #52, the District submitted information to the Court identifying accrual dates for its alleged plumes, reflecting that the District is currently asserting claims regarding two 7-Eleven sites:  store #26216, located at 107 Ball Road, Anaheim; and store #24559, located at 10499 Beach Boulevard, Stanton.[1]

6.     On January 15, 2010, the District and the defendants identified "focus plumes," and no 7-Eleven store was included in any focus plume.  Discovery has been proceeding in connection with focus plumes and stations associated with the focus plumes, but not with respect to non-focus plume stations.

7.     At no time relevant to the District's claims did 7-Eleven manufacture any constituent of gasoline or refine gasoline, nor did it distribute, ship, transport, or supply any retail

---

[1] The District has disclosed that it intends to conduct additional low-level (i.e. below 1.0 ppb) MTBE testing and claims that the cost of such testing is recoverable under the Orange County Water District Act.  The District has indicated that costs for this testing would increase damages sought against 7-Eleven and that additional 7-Eleven sites could be added to plumes for which the District seeks damages, adding to the potential scope, duration, and expense of the Litigation.

locations with gasoline or any "gasoline product."  It was the responsibility and obligation of 7-Eleven's gasoline suppliers to arrange for the delivery of gasoline directly to the underground storage tanks ("USTs") at the 7-Eleven Stores.  7-Eleven did not take title to the gasoline from its suppliers before the gasoline entered the USTs at the 7-Eleven Stores, and no entity took title to the gasoline between 7-Eleven and the consumer.  *See* 7-Eleven's Supplemental CMO 4 Declaration.

8.     Beginning in or about August 2006, plaintiffs and defendants in MDL 1358 began discussions to explore terms upon which the parties might resolve the large number of cases then pending, and the Court appointed a Special Settlement Master.  7-Eleven participated in those proceedings to resolve the Litigation, but those proceedings were not conducive to a retailer settling a single case involving a relatively small number of stores.

9.     Beginning in or about October 2006, until in or around May 2007, counsel for the District and 7-Eleven met on a number of occasions, both in person and on the telephone, to (a) identify the 7-Eleven Stores at issue in the Litigation, (b) identify the District's claims that were pertinent to a retailer in the District's service area, (c) discuss how liability for the District's claims might be apportioned (i.e., "Gas Station Claims" (the District's claims regarding gasoline releases or spills at retail locations), as opposed to "Product Claims" (the District's product liability claims)), and (d) discuss how any potential range of verdict might be allocated to a defendant such as 7-Eleven for all of the District's Claims.

10.     In August 2010, settlement negotiations between the District and 7-Eleven were resumed in earnest and continued until the parties entered into the Settlement Agreement.

11.     Recognizing that the Litigation will become increasingly expensive and time-consuming as it proceeds towards trial, and that additional 7-Eleven Stores might be implicated

in the Litigation, 7-Eleven elected to pursue settlement discussions to avoid the uncertainty of further litigation and incurring additional expense.

12.     As a result of the settlement discussions, 7-Eleven has agreed to pay the District $1,700,000 in settlement of the Litigation regarding the 7-Eleven Stores. *See* Exhibit A. The allocation of the settlement amount among the 7-Eleven Stores is set forth in Exhibit B hereto.

13.     The settlement negotiations did not include consideration of insurance policy limits, and such limits were not discussed. Moreover, the amount agreed to in settlement was not limited in amount by the potential existence of insurance or insurance policy limits. Nor was the financial condition of 7-Eleven a factor in any way to increase or decrease the agreed settlement amount.

14.     The Settlement Agreement was reached after extensive negotiations, in light of the specific sites identified by the District as requiring further clean-up effort, and amounts necessary to reimburse costs. There is no fraud, collusion, or tortious misconduct in this settlement that was aimed at injuring the interests of the non-settling defendants. The Settlement Agreement is neither fraudulent nor collusive but was reached in arm's-length negotiations, and is easily within the reasonable range of 7-Eleven's potential and comparative liability.

15.     The discovery that would be anticipated if the Gas Station Claims against 7-Eleven were not settled and were to proceed to trial, even regarding only one 7-Eleven Store, would be similar to the extensive discovery that has been taken regarding the focus plumes, including the following:

a.      Discovery of 7-Eleven and its consultants regarding site history, including UST and gasoline delivery system acquisition; prior site owners or operators;

installation, monitoring, testing, maintenance, repair and removal of UST and delivery systems, and site remediation.

b.     For 7-Eleven Stores where gasoline or its constituents were identified in either the soil or groundwater, extensive discovery to determine the volume of any gasoline release; duration that the condition existed at the site; vertical and horizontal distance to any drinking water source; groundwater gradient; fate and transport; geological and hydrogeological factors and conditions such as permeability, potential "passageways," and existence of conditions favorable to natural attenuation; and pumping rates and capture zone data regarding nearby drinking water wells.

c.     For 7-Eleven Stores where neither gasoline releases nor the presence of gasoline or its constituents are known to exist in either the soil or groundwater, the District has indicated that gasoline detections in or threatening drinking water near such stores may require testing at the 7-Eleven Stores to determine if the sites had an "unreported release."

d.     Discovery regarding other potential UST and gasoline delivery system sources of gasoline or its constituents in the groundwater, some of which will include abandoned sites.

e.     Discovery regarding potential non-UST or gasoline delivery system sources of gasoline or its constituents in the groundwater, such as delivery overfills, customer overfills, accidents, run-off from rain water, and concentrations attributable to water used to recharge the basin.

- 5 -

f.   Discovery regarding potential liability of equipment suppliers, equipment installers, maintenance companies, and consultants.

g.   Discovery of the state agencies, including the District, that participated in the oversight of the relevant 7-Eleven Stores.

16.   Notwithstanding that for the past three years 7-Eleven has been in only one MDL case with only two convenience stores at issue, the Litigation has been costly and time-consuming for 7-Eleven.   Because of the nature of MDL proceedings, where discovery is generally applicable in all cases, 7-Eleven has had to monitor developments in MDL cases to the extent proceedings, including motion practice and discovery, bear on its liability (i.e. issues such as UST, fate and transport, health effects, etc.).   While much public information is available concerning sites where remediation has been undertaken, only limited discovery of certain 7-Eleven Stores has been conducted to date, and no discovery has been conducted with respect to 7-Eleven Stores with no reported releases or remediation.   Nevertheless, the settlement amount is reasonable based on the information available and the District's assessment of its total potential recovery and 7-Eleven's assessment of its proportionate liability at the time of settlement.

17.   The anticipated uncertainty and expense associated with preparing any single site for trial is significant.   7-Eleven has two sites currently identified by the District as being part of the Litigation and many additional sites in or near the District's service area.   Therefore, the prospect of defending the Litigation through trial for all current and potential additional 7-Eleven Stores is daunting and worth consideration for settlement.

18.   Approval of the Settlement Agreement will not end 7-Eleven's obligation to comply with state or federal law or relieve 7-Eleven of its obligations as may arise to the extent, for example, the Regional Water Quality Control Board, or other state or governmental agency,

requires 7-Eleven to undertake testing, remediation, or other work in connection with continued operations at any of the 7-Eleven Stores.

19.     While 7-Eleven has already collectively expended many millions of dollars in connection with meeting its obligations under state and federal law concerning its gasoline operations at the 7-Eleven Stores, no dollar amount paid for such work was credited or considered when reaching this settlement.  7-Eleven's prior remedial work at the 7-Eleven Stores was considered only in general terms to determine how to categorize sites.

20.     The 7-Eleven Stores involved in the Settlement Agreement fall into the following six broad categories:

   a.     Stores regarding which the District is currently asserting claims (2 stores) ($725,000.00);

   b.     Stores with previous gasoline releases that have achieved regulatory closure from the appropriate agency (6 stores) ($570,000.00);

   c.     Stores that sold gasoline while MTBE was on the market but had no reported release (7 stores) ($335,000.00);

   d.     Stores that discontinued gasoline sales prior to 1986 (non-MTBE sites) (4 stores) ($40,000.00);

   e.     Stores that began selling gasoline in 2004 or later (non-MTBE sites) (2 stores) ($20,000.00); and

   f.     Stores where 7-Eleven never sold gasoline but is remediating gasoline and MTBE (1 store) ($10,000.00).

21.     The settlement terms recognize that the District faces a risk of an adverse verdict if it proceeded to trial against 7-Eleven.  As with other settlements this Court has approved, the District will "lack standing to bring a claim if tests of their wells 'have shown *no* MTBE contamination, and there are no allegations of any known releases of gasoline containing MTBE'

near their wells." *In re: Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 578 F. Supp.2d 519, 530 (S.D.N.Y. 2008).

22.    The factors set forth in the accompanying memorandum were evaluated on the basis of the information available to the parties at the time the settlement was entered into, and no one factor was determinative.  In determining the amount to pay to settle this matter, the parties were mindful of the legal standard for a good faith settlement, and 7-Eleven believes it has agreed to pay an amount that is equal to or greater than its proportionate share of liability and is certainly not "out of the ballpark," as that term is used when making a good faith settlement determination under California law.

Dallas, Texas

January 18, 2011

_____
**MICHAEL A. WALSH**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via LexisNexis File and Serve upon all counsel of record on January 18, 2011.

_____
**MICHAEL A. WALSH**

- 8 -

# EXHIBIT A

Confidential - For Settlement Purposes Only

## SETTLEMENT AGREEMENT AND RELEASE

THIS SETTLEMENT AGREEMENT AND RELEASE ("Agreement") is made on the last date indicated below (the "Effective Date") between ORANGE COUNTY WATER DISTRICT (the "District") and 7-ELEVEN, INC. (formerly known as The Southland Corporation, hereafter "7-Eleven").

## I. RECITALS

A.     WHEREAS, in 2003, the District filed a complaint seeking money damages and declaratory relief in Orange County Superior Court, Case No. 03CC00176, against refiners and suppliers of gasoline products containing methyl tertiary butyl ether ("MTBE") and/or tertiary butyl alcohol ("TBA"), manufacturers and suppliers of MTBE and/or TBA, and owners/operators of gasoline service stations, including 7-Eleven (the "Litigation");

B.     WHEREAS, the Litigation was transferred to the United States District Court, Southern District of New York by the Judicial Panel on Multidistrict Litigation, pursuant to §1407 of title 28 of the United States Code, and now is part of MTBE MDL 1358;

C.     WHEREAS, 7-Eleven is/was an owner and/or operator of various convenience stores within or near the District's service area, as set forth on the attached Schedule "A" (the "7-Eleven Stores");

D.     WHEREAS, the District alleges in the Litigation the past, present, and future actual or threatened presence of MTBE, TBA, other authorized oxygenates, gasoline, benzene, toluene, ethylbenzene, xylenes, and/or other components of gasoline and fuel in water or on property (including but not limited to wells, aquifers, and

1

Confidential - For Settlement Purposes Only

water resources) accessed, accessible, managed, owned, operated, used, and/or protected by the District in the vicinity of the 7-Eleven Stores ("Gasoline Contamination") and further alleges that 7-Eleven is responsible for damages allegedly arising from such alleged Gasoline Contamination;

E.    WHEREAS, 7-Eleven denies that the District has suffered any cognizable injury due to the conduct of 7-Eleven but wishes to resolve the Litigation to avoid the costs, expense, and uncertainty inherent in the Litigation;

F.    WHEREAS, the District also wishes to avoid the costs, expense, and uncertainty inherent in litigating its Claims (as defined below) against 7-Eleven;

NOW, THEREFORE, in exchange for the commitments set forth below and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties agree as follows:

## II. AGREEMENT

1.    <u>The District.</u>  The District represents that it is a special water agency created to maintain, replenish, and manage groundwater resources in the district and has the right to conduct investigations of the water quality in the district, to perform any necessary investigation, cleanup, abatement, or remedial work to prevent, abate, or contain any threatened or existing contamination or pollution of the surface or groundwaters in the district, and to recover the costs of any such activities.  The District also represents that it has the right to litigate to protect groundwater resources within its territory.  In the Litigation, the District is acting on its own behalf and within the full scope of its powers and authority under the Orange County Water District Act (the "Act") to commence, maintain, and compromise any and all Claims related to the alleged interference with its water or water rights used or useful within the district, or

2

Confidential - For Settlement Purposes Only

alleged diminution of the quantity, quality or pollution or contamination of the water supply of the district that may endanger or damage the inhabitants, lands, or use of water in the district. (West's Ann. Cal. Water Code App. § 40-2.)

2.      Releasing Party.  The District enters into this Agreement in its individual capacity and, to the fullest extent permitted by law, in its governmental and/or sovereign capacity, or otherwise (as contemplated under Sec. 2, para 9 of the Act), or as trustee, including on behalf of all successors, assigns, joint venturers, partners, subsidiaries, predecessors-in-interest, successors-in-interest, predecessors-in-name, successors-in-name, beneficiaries, and each of its respective past, present, and future officers, directors, employees, partners, shareholders, officials, board members, trustees, fiduciaries, agents, accountants, attorneys, insurance carriers, sureties, representatives, independent contractors and consultants (the "Releasing Party").

3.      Released Parties.  7-Eleven enters into this Agreement in its individual capacity and on behalf of its successors, assigns, joint venturers, partners, subsidiaries, predecessors-in-interest, successors-in-interest, predecessors-in-name, successors-in-name, beneficiaries, and each of its respective past, present, and future officers, directors, employees, partners, shareholders, officials, board members, trustees, fiduciaries, past and present franchisees, agents, accountants, attorneys, insurance carriers, sureties, representatives, independent contractors, consultants, experts and advisors (collectively, the "Released Parties").  This provision does not include any parties to the Litigation other than 7-Eleven.

3

Confidential - For Settlement Purposes Only

4.    Terms of Agreement.

      a.    7-Eleven shall move the Court for an order determining this settlement to be a good faith settlement under Sections 877 and 877.6 of the California Code of Civil Procedure and for entry of judgment under Federal Rule of Civil Procedure 54(b). Until that time, this Agreement shall remain strictly confidential. The District shall cooperate in securing Court approval of this settlement as one made in good faith by filing appropriate papers with the Court and/or appearing at any hearings to consider the motion.

      b.    7-Eleven shall pay the sum of $1,700,000 to the District (the "Settlement Payment") within five days after the expiration of the deadline to file an appeal or to petition the Court to review the good faith determination and/or final judgment, provided that no other party files an appeal or petitions review of the Court's order and/or final judgment. The parties acknowledge that this sum is paid with respect to any and all damages of every kind and nature alleged, or that could have been alleged, to have been suffered by the District in connection with the Claims.

      c.    Should 7-Eleven's motion for an order determining this settlement to be a good faith settlement be denied, the parties agree to mediate this matter to cure any defects and to achieve settlement despite denial of the good faith motion. In the absence of agreement within fifteen days of any mediation, then the Settlement Agreement shall have no force and effect.

      d.    If any party files an appeal or petitions review of the final judgment and/or the Court's order determining that the settlement is in good faith, the parties

Confidential - For Settlement Purposes Only

agree to meet and confer regarding when and under what circumstances the Settlement Payment shall be made. In the event agreement is not reached, the parties agree to mediate the circumstances of payment. In the absence of an agreement within fifteen calendar days of any mediation, the Settlement Agreement shall have no force and effect.

   e.  Within five days of receipt of the Settlement Payment, the District shall file with the Court a Stipulation and Order of Dismissal With Prejudice Under Federal Rule of Civil Procedure 41, in the form attached hereto as Exhibit 1.

   5.  <u>Release</u>. The Releasing Party hereby releases and forever discharges the Released Parties of and from any and all Claims, defined as follows: actions, liabilities, rights, demands, suits, matters, liens, obligations, damages, losses, remedies of any kind, causes of action of every nature and description, kind, or character, known or unknown, past, present, or future, whether arising at common law, in equity, and/or under or by virtue of any statute or regulation, including all federal, state, and/or local environmental laws, including but not limited to any direct claims, third-party claims, parens patriae claims, and/or assigned claims, including without limitation, any and all claims for negligence, strict product liability, strict liability, breach of express or implied warranty, breach of contract, trespass, fraud, unfair business practices, deceptive trade practices (including but not limited to any and all claims under §17200, et seq., of the California Business and Professions Code or similar statutes), private and public nuisance, Orange County Water District Act claims, declaratory relief, individual corporate officer liability, conspiracy, concert of action, market-share liability, commingled-product liability, or any other form of collective liability or several liability,

Confidential - For Settlement Purposes Only

and violations of any statute or regulation, that the Releasing Party asserted, or could have asserted, including, to the fullest extent permitted under the Act, whatever rights might exist to assert claims within its territory, in the Litigation and/or in MTBE MDL 1358, or that the Releasing Party may have in the future, or that may be created or recognized in the future by statute, regulation, judicial decision, administrative adjudication, or in any other manner, whether known or unknown, past, present, or future, accrued or that may accrue in the future, asserted or unasserted, latent or patent, against any one or more of the Released Parties, for actual damages, exemplary damages, punitive damages, statutory damages, penalties of any kind, property damages, natural resource damages, damages to equipment, economic or business losses, investigation costs, remediation costs, restoration costs, treatment costs, other costs, prejudgment or post-judgment interest, attorneys' fees, injunctive or declaratory relief, and/or any other losses or detriment of any kind, past, present, or future, arising out of or in any way related to:

        (a)    the use of MTBE or other oxygenates in gasoline, at any time and for any reason; and

        (b)    the Gasoline Contamination, whether on account of acts or omissions that occurred before or after the Effective Date.

The entirety of this paragraph applies to any groundwater, property, aquifers, water resources, and wells accessed, accessible, managed, owned, operated and/or used, by the District, including later-acquired interests.

      6.    <u>Waiver</u>.  In giving the release provided in Section 5 of this Agreement, the Releasing Party expressly waives any rights or benefits it might obtain pursuant to Section 1542 of the California Civil Code, which provides as follows:

Confidential - For Settlement Purposes Only

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

The Releasing Party understands and acknowledges the significance and consequence of the specific waiver of Section 1542 and hereby assumes full responsibility for any injury, loss, damage, or liability that may be incurred by reason of or related to the release provided herein and/or by the waiver of Section 1542.

The District further agrees to waive its rights and not exercise any powers concerning joint or cooperative activities authorized pursuant to Sec. 2, para 11 of the Act, and agrees not commence or participate in any litigation asserting claims on behalf of any entity or individual as they relate to Gasoline Contamination and 7-Eleven.

7.      Good Faith Settlement.  This Agreement has been entered into in good faith after the District has had an opportunity to fully analyze and investigate its claims against 7-Eleven.  The District and 7-Eleven further agree that this Agreement is within the reasonable range of 7-Eleven's share of liability, if any, for the District's claims, and is in good faith in light of the factors to be considered, including but not limited to an approximation of the District's total potential recovery, 7-Eleven's proportionate liability, if any, and the amount paid in settlement.

8.      Condition Precedent.  With the exception of Section 4.a., the obligations of the parties hereto are expressly subject to, as a condition precedent, obtaining court approval of the settlement as a good faith settlement and entry of judgment under Federal Rule of Civil Procedure 54(b), as set forth in Section 4.a.

9.      No Admission.  This Agreement is a compromise intended to fully and finally resolve and settle all Claims and to buy peace and prevent any further

7

Confidential - For Settlement Purposes Only

involvement in the Litigation by the Released Parties.   Neither the payment of any consideration hereunder nor anything else contained in this Agreement shall be interpreted or construed to be an admission on the part of, nor to the prejudice of, any party hereto.  7-Eleven expressly denies any and all liability associated with the Claims.

10.   Final Settlement.  The parties understand and agree that this Agreement shall act as a release of future Claims with respect to Gasoline Contamination that occurred prior to the date of this Agreement, whether such Claims are currently known, unknown, foreseen or unforeseen. Although the District will pursue product liability claims against the non-settling defendants, the District has no factual basis to assert that 7-Eleven acted negligently or was otherwise responsible for causing damage that will be pursued in that trial, and has not and will not not assert claims or causes of action arising out of acts or omissions of the Released Party in connection with pursuing claims against another party in the Litigation.

11.   Binding Effect.  This Agreement shall inure to the benefit of each party hereto or benefited thereby.  It is understood that the Litigation may be remanded to federal court or state court, and the court where the case was last pending shall retain jurisdiction to enforce the terms of this Agreement pursuant to California Code of Civil Procedure section 664 *et seq.*  The parties hereto specifically agree that this is a judicially supervised settlement pursuant to California Code of Civil Procedure section 664.6.  In the event that any court shall refuse to accept jurisdiction to enforce the terms of this Agreement, the party seeking to enforce the terms may rely on procedures set forth under applicable California law.

3270629.8/SP/76088/0420/011411

Confidential - For Settlement Purposes Only

12.    <u>Further Documents</u>.    To the extent any documents are reasonably required to be executed by either of the parties to effectuate this Agreement, each party hereto agrees to execute and deliver such other and further documents as may reasonably be required to carry out the terms of this Agreement.

13.    <u>Further Actions</u>.   To the extent any actions are reasonably required to be taken by either of the parties to effectuate this Agreement, each party hereto agrees to take said actions as may reasonably be required to carry out the terms of this Agreement.

14.    <u>Representation</u>.    Each party represents and acknowledges that it has been represented by counsel with respect to this Agreement and any and all matters covered by or related to this Agreement.   Each party has been fully advised with respect to all rights that are affected by this Agreement.

15.    <u>No Modification</u>.   This Agreement contains the entire agreement between the parties regarding the matters set forth herein.   This Agreement may not be altered, amended, or modified in any respect, except by a writing duly executed by the party to be charged.    All prior agreements and understandings, whether oral or written, regarding the matters set forth herein are expressly superseded hereby and are of no further force or effect.

16.    <u>Voluntary Agreement</u>.   Each party represents and warrants that it has read and understands the contents hereof, has executed this Agreement voluntarily, and has not been influenced by any person or persons or attorney acting on behalf of any party.

17.    <u>Number and Gender</u>.   Headings are used herein for convenience only and shall have no force or effect in the interpretation or construction of this Agreement.   As

Confidential - For Settlement Purposes Only

used in this Agreement, the singular shall include the plural, and the masculine shall include the feminine and neutral genders.

18.   <u>Ownership of Claim</u>. The District and its undersigned representative represent and warrant that this Agreement has been executed by an official duly authorized to do so on behalf of the District; that the District and its undersigned representative have or have obtained all requisite power and authority to execute, bind, deliver, and perform this Agreement on behalf of the District; that this Agreement has been duly and validly executed and delivered by the District's authorized agent; that any necessary governmental, corporate, or partnership authorizations to make this Agreement valid and binding on the District have been procured; that a certified copy of the requisite board or legislative resolution, power of attorney, secretary's certificate, or other documentation evidencing the authority of the person below to execute this Agreement on behalf of the District is enclosed; that in connection with the execution, delivery, and performance of this Agreement, the District has complied with all provisions of the Constitution and laws of the State of California and the respective charter, rules, and regulations of the District; that the execution, delivery, and performance of this Agreement by the District does not and will not contravene or constitute a default under any provision of applicable law or regulation or of any agreement, judgment, injunction, order, decree, memorandum of understanding, or contractual restriction binding on the District; that no further approval, authorization, consent, order, notice, filing, or registration with any governmental authority is required with respect to the execution, delivery, and performance by the District of this Agreement; and that this Agreement is the valid and legally binding obligation of the District, enforceable against the District in

Confidential - For Settlement Purposes Only

accordance with its terms.  Furthermore, without limiting the generality of the foregoing, the District is not entitled to and expressly waives any immunity on any grounds with respect to the performance of its obligations under this Agreement or from any legal proceedings to enforce the obligations hereunder.  The District further warrants that it will not challenge or contest the validity of this Agreement and forever waives any defense to the validity of the Agreement, including any defense based on any claim the Agreement is ultra vires, violative of the District's sovereign immunity, or otherwise void.

19.    Hold Harmless.  In consideration for the Settlement Payment to the District and other relief as provided for in this Agreement, the Releasing Party agrees to pay and fully satisfy any and all persons or entities entitled to receive any of the proceeds paid under this Agreement and to hold harmless the Released Parties from and against the following, to the extent permitted by law: any and all liens, assignments, subrogation claims, encumbrances, garnishments, security interests, or any other legally perfected right of another person or entity with respect to any monetary payment to be paid to the District as provided for in this Agreement.

20.    Applicable Law.  This Agreement shall be construed and interpreted in accordance with the laws of the State of California.

21.    Severability.    If any provision or any part of any provision of this Agreement is for any reason held to be invalid, unenforceable, or contrary to any public policy, law, statute, and/or ordinance, then the remainder of this Agreement shall not be affected thereby and shall remain valid and fully enforceable.

22.    Counterparts.  This Agreement may be executed in counterparts and as so executed shall constitute one agreement that shall be binding upon all parties

11

Confidential - For Settlement Purposes Only

hereto, notwithstanding that the signatures of all parties and parties' designated representatives do not appear on the same page.

23.    <u>Warrants Authority</u>.  Each person who executes this Agreement on behalf of a corporation, partnership, joint venture, unincorporated association, public authority, municipal corporation, government, or other entity, represents and warrants to the other party that he or she has the authority to do so.

24.    <u>Confidentiality.</u>  The parties to this Agreement shall keep confidential (to the extent allowed by law) the content of any negotiations, points of discussion, documents, communications, and supporting data utilized, prepared, or exchanged in connection with any negotiations that preceded this Agreement, as contemplated by Federal Rule of Evidence 408, except to effectuate Section 4.a. of the Agreement and as otherwise required by law.  The Releasing Party further agrees that with respect to any communication to the media or press regarding the Litigation that references 7-Eleven, the District and 7-Eleven shall agree on a mutually acceptable statement.

25.    <u>Notices.</u>  All notices, requests, demands, claims, and other communications that are required or may be given pursuant to this Agreement must be in writing and delivered personally with written receipt, by a recognized overnight delivery service, or by telecopy, and e-mail to the parties at the addresses below (or to the attention of such other, different, or additional person or entity or such other address as any party may provide to the other party by notice in accordance with this paragraph).  Any such notice or other communication will be deemed to have been given if (i) personally delivered, when so delivered, against written receipt, (ii) sent by a nationally recognized overnight delivery service that guarantees next day delivery, one Business Day after being so

12

Confidential - For Settlement Purposes Only

sent, or (iii) given by telecopier, once such notice or other communication is transmitted to the facsimile number specified below and the appropriate answer back or telephonic confirmation is received, provided that such notice or other communication is also delivered in accordance with (i) or (ii) above:

> FOR THE DISTRICT:
>
> Miller Axline & sawyer
> 1050 Fulton Avenue, Suite 100
> Sacramento, California 95825-4225
> (916) 488-6688
> (916) 488-4288 (facsimile)
> toxictorts@toxictorts.org
>
> Joel D. Kuperberg
> Rutan & Tucker
> 611 Anton Boulevard, Suite 1400
> Costa Mesa, California 92626-1931
> (714) 641-5100
> (714) 546-9035 (facsimile)
> JKuperberg@rutan.com
>
> FOR 7-ELEVEN:
>
> Michael A. Walsh
> Strasburger & Price, LLP
> 901 Main Street, Suite 4400
> Dallas, Texas 75202
> (214) 651-4300
> (214) 651-4330 (facsimile)
> MWalsh_MTBE-MDL@strasburger.com

　　26.　　Admissibility of Agreement.　　The parties expressly agree that this Agreement is a protected communication under Evidence Code Section 1119. However, the Agreement shall be admissible only for effectuating Section 4.b. of this Agreement and enforcing the terms hereto, under California Code of Civil Procedure Section 664.6.

3270629.8/SP/76088/0420/011411

Confidential - For Settlement Purposes Only

27.    <u>Neutral Construction.</u>   The parties to this Agreement agree that this Agreement was negotiated fairly between them at arms length and that the final terms of this Agreement are the product of the parties' negotiations.   The parties agree that this Agreement shall be deemed to have been jointly and equally drafted by them and that the provisions of this Agreement therefore should not be construed against a party on the grounds that the party drafted or was more responsible for drafting the provision(s).

28.    <u>Survival of Representations and Warranties.</u>   All representations and warranties of the parties to this Agreement have been and will be relied on by the other party to this Agreement, notwithstanding any investigation made by them,

29.    <u>No Reservation of Claims.</u>   It is the express intention of the parties to this Agreement that the consideration stated herein fully and completely compensates and satisfies the District regarding all Claims against the Released Parties.   The District expressly contracts that it will not assist in or advance the claim of any other person or entity against the Released Parties, and that, except as assigned herein to the Released Parties, the District neither has nor will assign, pledge, or otherwise in any manner assign, sell, dispose of, or transfer any right, title, interest, or claim that the District has or may have against the Released Parties. No claim or cause of action of any type is reserved against the Released Parties, except as expressly set forth herein.

30.    <u>Effective Date.</u>   The parties below named have executed this Agreement as of the date and year appearing below adjacent to the signatures of the parties.

3270629.8/SP/76088/0420/011411

Confidential - For Settlement Purposes Only

Dated: _____, 2011          ORANGE COUNTY WATER DISTRICT


                                       By:_____
                                       Its:_____




         Approved as to form:          MILLER, AXLINE & SAWYER
                                       A Professional Corporation


Dated:_____, 2011           By:_____
                                           DUANE C. MILLER
                                           Attorneys for Plaintiff
                                           Orange County Water District


Dated:_____, 2011           7-ELEVEN, INC.


                                       By:_____
                                       Its:_____


                                       ATTEST

                                       By:_____
                                       Its:_____

15

Confidential - For Settlement Purposes Only

## SCHEDULE A

| STORE NUMBER | ADDRESS | CITY |
|---|---|---|
| 17171 | 2403 West Ball Road | Anaheim |
| 18167 | 1020 South Bristol Street | Santa Ana |
| 18829 | 6001 Lincoln Avenue | Buena Park |
| 18830 | 949 South Brookhurst | Anaheim |
| 18835 | 6491 Westminster Boulevard | Westminster |
| 18838 | 1108 West Imperial Highway | Brea |
| 18841 | 10001 Adams Avenue | Huntington Beach |
| 18901 | 32022 Camino Capistrano | San Juan Capistrano |
| 18934 | 7740 Orangethorpe | Buena Park |
| 19969 | 290 South Main Street | Orange |
| 24559 | 10499 Beach Boulevard | Stanton |
| 25801 | 31702 Pacific Coast Highway | South Laguna |
| 26216 | 107 West Ball Road | Anaheim |
| 32938 | 204 East 17th Street | Costa Mesa |
| 33155 | 1700 East Dyer Road | Santa Ana |
| 33161 | 15991 Magnolia Street | Westminster |
| 33168 | 13472 Euclid Street | Garden Grove |
| 33252 | 8693 Irvine Center Drive | Irvine |
| 33257 | 1000 West Orangethorpe Avenue | Fullerton |
| 33325 | 10962 Alondra Boulevard | Norwalk |
| 33436 | 2217 East 17th Street | Santa Ana |
| 33611 | 13982 Bolsa Chica Road | Westminster |

3270629.8/SP/76088/0420/011411

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation<br><br>This Document Relates To:<br><br>Orange County Water District v. Atlantic Richfield Co., et al. (Case No. 04-4968) | Master File No. 1:00-1898<br>MDL No. 1358 (SAS)<br>M21-88 |

## STIPULATION AND ORDER OF DISMISSAL WITH PREJUDICE UNDER FED. R. CIV. P. 41(a)(2)

Plaintiff Orange County Water District and Defendant 7-Eleven, Inc. (collectively, the "Parties") have advised the Court that they have resolved the matters between them and agreed to the entry of this Stipulation and Order of Dismissal With Prejudice of the claims against 7-Eleven as indicated by the signature of the respective counsel below. This Court finds that this Stipulated Order of Dismissal With Prejudice should be entered, with the findings included below:

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED as follows:

1.     This Court has jurisdiction over the Parties to this Stipulation and over the subject matter of this action. The Parties to this Stipulation have advised the Court of their agreement to settle this matter pursuant to a Settlement Agreement and Release and this Stipulated Order of Dismissal With Prejudice.

2.     The Parties to this Stipulation consent to the dismissal of this action as to 7-Eleven, Inc. only, including all claims and counterclaims, with prejudice.

3.     Each party shall bear its own costs and attorneys' fees.

-1-

3267324.1/SP/76088/0420/011411

AGREED TO AND ACCEPTED BY:

Dated: _____, 2011                Dated: _____, 2011

_____              _____

**DUANE C. MILLER**                             **MICHAEL A. WALSH**
**MICHAEL AXLINE**                              (MW 2534)
**MILLER, AXLINE & SAWYER**                     **michael.walsh@strasburger.com**
1050 Fulton Avenue, Suite 100                   **COURTNEY JONES KIEFFER**
Sacramento, California 95825-4225               (CK 3714) (pro hac vice)
Telephone (916) 488-6688                        **courtney.jones.kieffer@strasburger.com**
Facsimile (916) 488-4288                        **STRASBURGER & PRICE, LLP**
dmiller@toxictorts.org                          901 Main Street, Suite 4400
maxline@toxictorts.org                          Dallas, Texas 75202-3794
                                                Telephone: 214-651-4300
                                                Facsimile: 214-651-4330

**ATTORNEYS FOR PLAINTIFF**                     **ATTORNEYS FOR DEFENDANT**
**ORANGE COUNTY WATER DISTRICT**                **7-ELEVEN, INC.**


SO ORDERED:

Dated: _____, 2011                _____
                                                The Honorable Shira A. Scheindlin
                                                United States District Judge

-2-

# EXHIBIT B

**EXHIBIT B**

| Store Number | Address | City | Gas Open Date | Gas Close Date | Allocation |
|---|---|---|---|---|---|
| | | | | | |
| **Stores Involved in the Litigation** | | | | | |
| 24559 | 10499 Beach Boulevard | Stanton | Mar-84 | Apr-09 | $450,000.00 |
| 26216 | 107 West Ball Road | Anaheim | Nov-85 | N/A | $275,000.00 |
| | | | | | |
| **Stores with Releases that Achieved Regulatory Closure** | | | | | |
| 17171 | 2403 West Ball Road | Anaheim | May-82 | Jan-98 | $95,000.00 |
| 18835 | 6491 Westminster Boulevard | Westminster | Apr-76 | Mar-88 | $95,000.00 |
| 18841 | 10001 Adams Avenue | Huntington Beach | Apr-76 | Mar-89 | $95,000.00 |
| 18901 | 32022 Camino Capistrano | San Juan Capistrano | Mar-77 | Apr-89 | $95,000.00 |
| 19969 | 290 South Main Street | Orange | Apr-80 | N/A | $95,000.00 |
| 25801 | 31702 Pacific Coast Highway | South Laguna | Sep-84 | N/A | $95,000.00 |
| | | | | | |
| **Stores without a Detected Release** | | | | | |
| 32938 | 204 East 17th Street | Costa Mesa | Dec-00 | N/A | $70,000.00 |
| 33155 | 1700 East Dyer Road | Santa Ana | May-03 | N/A | $45,000.00 |
| 33161 | 15991 Magnolia Street | Westminster | Mar-02 | N/A | $60,000.00 |
| 33168 | 13472 Euclid Street | Garden Grove | Oct-02 | N/A | $50,000.00 |
| 33252 | 8693 Irvine Center Drive | Irvine | Jun-03 | N/A | $40,000.00 |
| 33257 | 1000 West Orangethorpe Avenue | Fullerton | Nov-03 | N/A | $30,000.00 |

| | | | | | |
|---|---|---|---|---|---|
| 33325 | 10962 Alondra Boulevard | Norwalk | Jun-03 | N/A | $40,000.00 |
| | | | | | |
| **Stores Where 7-Eleven Never Sold Gasoline But is Performing Remediation** | | | | | |
| 18167 | 1020 South Bristol Street | Santa Ana | N/A | N/A | $10,000.00 |
| | | | | | |
| **Stores that Stopped Selling Gasoline Before December 1986** | | | | | |
| 18829 | 6001 Lincoln Avenue | Buena Park | Apr-76 | Nov-85 | $10,000.00 |
| 18830 | 949 South Brookhurst | Anaheim | Apr-76 | Jun-76 | $10,000.00 |
| 18838 | 1108 West Imperial Highway | Brea | Apr-76 | Jun-76 | $10,000.00 |
| 18934 | 7740 Orangethorpe | Buena Park | Apr-77 | Nov-78 | $10,000.00 |
| | | | | | |
| **Stores that Did Not Sell Gasoline until 2004 or Later** | | | | | |
| 33436 | 2217 East 17th Street | Santa Ana | Sep-04 | N/A | $10,000.00 |
| 33611 | 13982 Bolsa Chica Road | Westminster | Mar-08 | N/A | $10,000.00 |
| | | | | | |
| | | | | | |
| **TOTAL** | | | | | **$1,700,000.00** |
| | | | | | |