**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

In Re: Methyl Tertiary Butyl Ether ("MTBE")         **Master File No. 1:00 – 1898**
**Products Liability Litigation**                          **MDL 1358 (SAS)**
_____         **M21-88**

**This document relates to:**

_Bridgewater Water Dep't v. Atlantic Richfield Co., et al._ (No. 11 Civ. 00479);
_City of Kennett, et al. v. Ashland, Inc., et al._ (No. 10 Civ. 08742);
_City of Pattonsburg v. Ashland, Inc.,  et al._ (No. 10 Civ. 08743);
_Commonwealth of Puerto Rico, et al. v. Shell Oil Co., et al._ (No. 07 Civ. 10470);
_Coraopolis Water and Sewer Authority v. Ashland, Inc., et al._ (No. 10 Civ. 07874);
_New Jersey Dep't of Envtl. Prot., et al. v. Atlantic Richfield Co., et al._ (No. 08 Civ. 00312);
_Town of Kouts, a Municipality v. Ashland, Inc., et al._ (No. 10 Civ. 08184);
_Village of Bethalto, a Municipal Corporation v. Ashland, Inc., et al._ (No. 10 Civ. 08182);
_Village of Roanoke, a Municipal Corporation v. Ashland, Inc., et al._ (No. 09 Civ. 06554)

_____


**DEFENDANTS SUNOCO, INC., SUNOCO, INC. (R&M), AND**
**PUERTO RICO SUN OIL COMPANY'S**
**SIXTH AMENDED MASTER ANSWER AND AFFIRMATIVE DEFENSES**

Pursuant to the Master Answer agreement among the parties, CMO #6 and the

Court's instructions during the January 13, 2005 status conference, Sunoco, Inc.; Sunoco, Inc.

(R&M); and Puerto Rico Sun Oil Company (collectively "Sunoco")[1] answer the Complaints in

MDL 1358 cases for each of the above-noted cases in which Sunoco has been properly named

and served (hereinafter "Complaints") as follows:

---

[1] Without waiving any of its defenses, Sunoco notes that the only proper Sunoco entity in these actions is Sunoco, Inc. (R&M).  Sunoco, Inc. is a parent holding company that conducts no business of its own and therefore should be dismissed from these actions.  To the best of Sunoco's knowledge, Puerto Rico Sun Oil Company -- which is named only in the _Commonwealth of Puerto Rico_ action and therefore whose answer applies only to that action -- did not manufacture, refine, distribute, supply, sell or market gasoline containing MTBE.

## I.   ADMISSIONS AND STATEMENTS REGARDING SELECT ALLEGATIONS

### A.   Basic Defendant Information

Sunoco is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania.

### B.   Jurisdiction

Sunoco denies that jurisdictional allegations made by certain Plaintiffs are sufficient to confer subject matter jurisdiction upon the Court.

### C.   Sale or Distribution of Gasoline with MTBE or TBA to States in Question

Sunoco admits that it manufactured, refined, distributed, supplied, sold or marketed gasoline containing MTBE in certain areas, but denies that it did so in all relevant areas.  Sunoco denies that it manufacturers, refines, distributes, sells or markets gasoline to which TBA has been intentionally added.

### D.   Allegations Regarding Production of MTBE or TBA

Sunoco, at one or more times during the relevant time period, manufactured MTBE.  Sunoco specifically denies that it "introduced" MTBE.

### E.   Allegations Regarding Properties and Behavior of MTBE

Sunoco admits that MTBE is an aliphatic ether that does not occur naturally. Sunoco admits that there are various methods for the production of MTBE and that one method of production is from methanol and isobutylene.

Sunoco states that solubility and mobility are relative properties and that while MTBE and other ethers may be more soluble and mobile in water than certain gasoline components, such as the BTEX compounds, they are less soluble and mobile in water than other components sometimes blended in gasoline, such as ethanol.  Sunoco further states that MTBE's behavior in the environment -- and its behavior relative to BTEX -- is dependent on a variety of

factors, including the nature or method of its release, the geological setting, and environmental and microbial factors.

Sunoco states that while under certain conditions MTBE may biodegrade less readily than some other components of gasoline, MTBE has been found to naturally attenuate and biodegrade in numerous ways.

**F.** **Allegations Regarding MTBE's Degradation Product: TBA**

Sunoco admits that TBA is the product of the hydrolysis of isobutylene. Sunoco admits that TBA can be an intermediate product of MTBE biodegradation. Sunoco is without sufficient knowledge or information as to the truth of the remaining allegations concerning the use of TBA as an oxygenate in gasoline.

Sunoco states that solubility and mobility are relative properties and that TBA is more soluble and mobile in water than certain gasoline components, such as the BTEX compounds. Sunoco further states that TBA's behavior in the environment -- and its behavior relative to BTEX -- is dependent on a variety of factors, including the nature or method of its release, the geological setting, and environmental and microbial factors.

Sunoco is without sufficient knowledge or information as to the truth of the remaining allegations concerning the properties, characteristics and persistence of TBA in groundwater, or its presence in water supplies. Sunoco denies that it breached any duty to Plaintiffs, regulators, or the general public.

**G.** **Allegations Regarding Motivation of Defendants to Add MTBE to Gasoline**

Sunoco admits only that MTBE was added to certain gasoline products in varying concentrations to comply with federal fuel volatility and oxygenate requirements and/or to improve the octane rating of these products. Sunoco denies that MTBE was not the only viable option of achieving higher octane levels in gasoline.

Sunoco denies allegations that it produced or marketed MTBE "to make money off gasoline refining waste byproducts."  Similarly, Sunoco denies that it added MTBE to gasoline solely "to boost octane cheaply and increase [its] own profits."  Sunoco denies that MTBE is a "waste byproduct" of the process of refining intermediate feedstocks into gasoline.

Sunoco admits that in 1990, with the Clean Air Act amendments (hereinafter "CAAA"), the federal government mandated an increase in the use of oxygenates (up to 2.7% oxygen content) to meet ambient carbon monoxide air requirements in winter gasoline in many cities (beginning in 1992).  In 1995, various oxygenates were extended by regulation to year-round use for severe, non-attainment ozone areas in the United States.  Reformulated gasolines used since that time have sometimes contained between 10% and 15% MTBE, or up to 10% ethanol, to meet government mandates on oxygenate content.

Sunoco denies that ethanol was available in sufficient supply to meet the demand for oxygenated gasoline in the RFG and oxy-fuel regions when CAAA requiring 2% oxygen content in year-round gasoline in areas using RFG became effective.  Sunoco is without sufficient knowledge or information as to whether the available supply of ethanol became sufficient to meet the demand for oxygenated gasoline at any relevant time.

Sunoco admits that at all times when it owned refineries, refined intermediate feedstocks, and made gasoline, it complied with the legal requirements of the lead phase-out, the RFG Program the Oxygenated Fuel Program and the Mobile Source Air Toxics Rule.  Sunoco further states that several government agencies have concluded that MTBE has contributed substantially to reducing air pollution.

**H.** **Allegations Regarding Contamination of Groundwater and Gasoline Containing MTBE**

Sunoco states that solubility and mobility are relative properties and that while MTBE and other ethers may be more soluble and mobile in water than certain gasoline components, such as the BTEX compounds, they are less soluble and mobile in water than other components sometimes blended into gasoline, such as ethanol. Sunoco further states that MTBE's behavior in the environment -- and its behavior relative to BTEX -- is dependent on a variety of factors, including the nature or method of its release, the geological setting, and environmental and microbial factors.

Sunoco is without sufficient knowledge or information as to the truth of the allegations concerning the nature, extent and persistence of leaks, spills, or releases of MTBE upon groundwater or surface water.

Sunoco admits that sensitivities to the taste and odor of MTBE vary among individuals and depends on other variables, such as personal experience and other substances in the water. Sunoco states that responsible federal and state regulatory agencies have considered and adopted standards fully protective of MTBE taste and odor concerns.

Sunoco is without sufficient knowledge or information as to the truth of the allegations concerning human health risks from MTBE. Sunoco states that responsible federal and state regulatory agencies have considered and adopted standards fully protective of any alleged health concerns related to MTBE.

**I.** **Allegations Regarding Storage and Handling of Gasoline**

Sunoco admits that it is commonly known that gasoline is sometimes released into the environment from USTs and other means, and states that it and, according to reports, other major oil companies, have spent hundreds of millions of dollars or more over the past 30 years to

upgrade USTs to comply with federal regulations, eliminate or reduce leaks, and to improve leak detection. Sunoco states that it is common knowledge that gasoline, whether or not it contains MTBE, is a dangerous product that should always be handled carefully and should not be spilled. Sunoco is without sufficient knowledge or information as to the truth of the allegations concerning gasoline containing MTBE "exacerbate[ing] the threat to groundwater caused by leaking USTs;" "additional quantities of MTBE reach[ing] the soil and groundwater in the form of rainfall;" or "additional quantities of MTBE reach[ing] the soil and groundwater through vaporization from USTs."

Sunoco is without sufficient knowledge or information as to the truth of Plaintiffs' allegations regarding the existence of "widespread contamination" of groundwater by MTBE. Sunoco states that Plaintiffs' allegation that "MTBE contamination of groundwater was and is … inevitable and foreseeable" is a legal conclusion which does not require a response by Sunoco.

**J.     Allegations Regarding Knowledge of MTBE Contamination at Particular Locations In 1980s**

The Complaints purport to describe various publicly reported incidents of MTBE contamination in New Jersey, New York and Maine in the 1980s. Sunoco states that it was widely known among government regulators in the 1980s that various incidents involving releases of gasoline containing MTBE -- including those listed in Plaintiffs' Complaints -- had occurred.

Sunoco admits that in the early 1980s there was publicity regarding a contamination event in Rockaway, New Jersey. Sunoco states that it is aware of certain release events in New York, some of which involved MTBE.

Sunoco states that the 1986 Garrett and Moreau paper described MTBE presence in certain wells in Maine. Sunoco states that information about MTBE was known to government and the scientific community, as the 1986 Garrett and Moreau paper illustrates.

**K.      Allegations Regarding Defendants' "Constructive Knowledge" of MTBE and "Threats Posed to Groundwater"**

Sunoco states that Plaintiffs' allegation that "Defendants were or should have been aware that MTBE contamination of groundwater was inevitable, as a result of MTBE's water-seeking properties, recalcitrance to biodegradation and bioremediation, and the long history of nationwide gasoline spills, leaks, and other losses …" is a legal conclusion which does not require a response by Sunoco.

Sunoco states that while under certain conditions MTBE may biodegrade less readily than some other components of gasoline, MTBE has been found to naturally attenuate and biodegrade in numerous ways.

Sunoco is without sufficient knowledge or information as to the truth of the allegations concerning the American Petroleum Institute's Toxicology Committee.

Sunoco is without sufficient knowledge or information as to the truth of the allegations that it had "early knowledge" of any "need to do low level, long-term ingestion studies on the effects of MTBE." Sunoco is without sufficient knowledge or information as to the truth of the allegations concerning whether such studies had been conducted by other persons, entities or organizations.

Sunoco denies Plaintiffs' allegation that it "possess[es] and ha[s] always had knowledge, resources, experience and other advantages which are vastly superior to those of Plaintiffs" with respect to gasoline and MTBE. Sunoco denies Plaintiffs' allegation that at all

times relevant to this litigation it has "been in a position to know the threat which MTBE poses to groundwater."

Sunoco denies Plaintiffs' allegations that it failed to state the "truth about MTBE" and "act in accordance with the truth about MTBE." Furthermore, Sunoco states that Plaintiffs' allegation that it had "a duty to disclose" information about MTBE is a legal conclusion which does not require a response by Sunoco.

Sunoco denies that it breached any duty to Plaintiffs, regulators, or the general public.

### L.   Allegations Regarding Participation In Industry Associations or Lobbying Activities

The chemical properties of ethers like MTBE have been known in the public arena for many years. Plaintiffs' claim that Defendants somehow hid this information from them, or from the U.S. government, is baseless. Sunoco denies that it had any agreement with another defendant to withhold from Plaintiffs or government regulators information concerning MTBE. Specifically, Sunoco denies that in the early 1980s it formed or was part of any formal or informal task-forces or committees created for the "purpose of concealing the actual threat of MTBE, facilitating the … use of MTBE without regard to its impact on Plaintiff(s) and convincing the public and regulators that increasing concentrations of MTBE in gasoline was desirable."

Sunoco admits it was at one or more times during the relevant time period a member of the American Petroleum Institute ("API"), the Oxygenated Fuels Association ("OFA"), and/or the MTBE Committee. Sunoco denies that its membership in API, OFA, and/or the MTBE Committee constituted "conspir[ing] to conceal the risk of MTBE contamination of groundwater" and Sunoco further denies that its membership in API, OFA, and/or the MTBE

Committee constituted "placing corporate profits" above protection of the environment and Plaintiffs.

Sunoco admits that prior to 1990, Congress was preparing to take action to address the nation's smog problem. Sunoco admits that federal government agencies were aware of information concerning MTBE's chemical characteristics in 1986 or earlier, and that EPA held public meetings about MTBE in 1986. Sunoco states that it, like the federal government, was aware of the Garrett and Moreau paper in or about 1986. Sunoco admits that it participated in an OFA committee called the MTBE Toxicology Committee. Sunoco admits that a Testing Consent Order was entered with EPA in or about 1988 by various major oil companies.

In response to Plaintiffs' allegation that Congress adopted the Reformulated Gasoline ("RFG") Program as part of the CAAA "[a]s a result of tremendous lobbying efforts by the industry, including Defendants," Sunoco states that many major oil companies in fact actively resisted the RFG Program's requirement of oxygen content levels.

**M.  Allegations Regarding Requirements and Effects of the 1990 Clean Air Act Amendments**

Sunoco states that although the CAAA did not literally require the use of MTBE as a gasoline additive, in practical terms, the CAAA certainly did compel MTBE's use. EPA and Congress knew that the oxygen requirements of the Act could not and would not be met without MTBE's use.

**N.  Allegations Regarding MTBE-Related Actions Taken By State or Federal Governmental Bodies**

Sunoco admits that in 2001, EPA provided advance notice of its intent to initiate rulemaking pursuant to TSCA to eliminate or limit the use of MTBE as a fuel additive. No such rulemaking was ever initiated. Sunoco admits that certain proposed legislation in the U.S. Congress may limit the use of MTBE in gasoline in the future. Sunoco admits that certain state

legislatures or regulatory bodies have passed laws or adopted regulations to limit or eliminate the use of MTBE in gasoline.  The details of such laws are a matter of public record.

    O.     **Allegations Regarding Representations to Plaintiffs and the Public, Including Downstream Gasoline Handlers, About Gasoline with MTBE**

Sunoco denies that it "misrepresented the properties of MTBE" to Plaintiffs or the public, or "withheld information" about "the dangers of MTBE."  Sunoco is without sufficient knowledge or information as to the truth of the allegations concerning when the public "started to become aware of the dangers of MTBE."

Sunoco is without sufficient knowledge or information as to the truth of the allegations concerning representations made by George Dominguez of the MTBE Committee on April 1 and 2 of 1987.  Sunoco is without sufficient knowledge or information as to the truth of the allegations concerning a letter written in 1994 by "an official with the API" regarding the use of MTBE.  Sunoco is without sufficient knowledge or information as to the truth of the allegations concerning the publishing and distribution of the pamphlet on public health issues and MTBE in April 1996 by an OFA Agent.

Sunoco denies that it at any relevant time "greenwashed shameful facts," or "judged" MTBE contamination "too costly to clean up."  Sunoco states that its policy consistently has been to promptly and effectively clean up any gasoline spill, regardless of its MTBE content.

Sunoco states that it is without sufficient knowledge or information as to the truth of the allegations concerning what alternative downstream handlers and the general public would have sought or whether the downstream handlers and the public would have demanded MTBE-free gasoline.

Sunoco states that Plaintiffs' allegation that its "failure to warn of the hazards posed by MTBE contamination of groundwater … deprived [Plaintiffs] of facts from which its injury from MTBE contamination could reasonably have been inferred" is a legal conclusion that does not require a response by Sunoco.  Sunoco denies that it breached any duty to warn or deprived Plaintiffs of any facts.

P.    **Allegations Regarding Defendants Use of MTBE in Gasoline Post-Creation of the RFG Program**

Sunoco is without sufficient knowledge or information as to the truth of the allegations concerning historical or recent trends of MTBE use and content of MTBE in gasoline by the oil industry after the creation of the RFG program.

Sunoco denies that "MTBE [was] [its] oxygenate of choice," and denies that it "decided to forego" use of ethanol.  Sunoco states that due to supply and transport issues, ethanol has not been available to satisfy all the requirements of the RFG program.

Q.    **Allegations Regarding MTBE's Effect Upon Groundwater and Groundwater Wells**

Sunoco is without sufficient knowledge or information as to the truth of the allegations concerning the frequency and extent of MTBE contamination in groundwater and surface water.

The findings and reports of the EPA Blue Ribbon Panel speak for themselves and Sunoco denies Plaintiffs' attempt to characterize or summarize them.

R.    **Allegations Regarding Plaintiffs' Claimed Inability To Identify Relevant Sources of Gasoline Leaks Or Spills Affecting a Given Site**

Gasoline leaks, whether containing MTBE or not, are almost always traceable to a specific source, limited to the immediate geographic area of the source, and remediable.  In the vast majority of leak incidents, a responsible party can be and is identified.

11

Sunoco denies that gasoline can never be traced from a contamination site to its terminal or refinery source.

**S.      Allegations Purporting To Quote Or Summarize Documents**

Numerous paragraphs in each Complaint purport to quote from or summarize documents, statutes and regulations.  These written materials speak for themselves.  The documents, statutes and regulations referenced by Plaintiffs, which are not attached to the Complaints, are the best evidence of their content, and Sunoco therefore denies Plaintiffs' attempts to summarize or characterize the contents of these written materials.

**T.      Allegations Regarding Defendants Unrelated To Sunoco**

Sunoco is without knowledge or information sufficient to form a belief as to the truth of the matters averred in the Complaints regarding the specific statements, act or omissions of defendants unrelated to Sunoco.

**U.      Allegations Regarding Particular Claims or Counts**

In response to the portions of the Complaints purporting to state particular common law or statutory claims, Sunoco incorporates each paragraph of this Master Answer as if fully restated herein.  Sunoco denies it is liable for any legal claim in any MDL 1358 Complaint.

**V.      Allegations Regarding Claimed Injuries or Damages**

Some Complaints make claims about contamination to specific wells or water sources, and others do not.  Sunoco is without knowledge or information sufficient to form a belief as to the truth of the matters averred in the Complaints regarding specific incidents of alleged contamination.  Sunoco believes publicly available documents regarding Plaintiffs will demonstrate that many of the wells or water resources at issue have not been impacted by MTBE, or have been impacted only at levels well below the state action standard for MTBE.

With regard to alleged damages, the allegations require no further answer.  To the extent that further answer is deemed necessary, Sunoco admits that Plaintiffs seek the relief mentioned in the Complaints, but denies that Plaintiffs are entitled to any relief.

**W.**      **Plaintiffs' Allegations of Intentional, Willful, Deliberate, or Negligent Acts**

Sunoco denies that it intentionally, willfully, deliberately, or negligently committed any acts that caused or foreseeably could have caused harm to Plaintiffs or any other party.

**X.**      **Certain Plaintiffs' Allegations of Ownership of the Groundwater Resources**

To the extent that Plaintiffs allege that they own or have the authority to protect groundwater, groundwater resources, water resources, water supplies, water rights, or drinking water wells, or any other right in and to water or groundwater, Sunoco denies these allegations. and denies that these Plaintiffs have standing to bring any claim based on allegations of property damage.

**Y.**      **Certain Plaintiffs' Allegations of Injury to Natural Resources**

Certain Plaintiffs' Complaints contain allegations of damage to natural resources and seek compensation and other relief as the alleged trustee and/or owner of those natural resources.  Sunoco admits that groundwater, surface waters, wetlands and other ecological resources exist within the States and Commonwealth at issue in MDL 1358 ("MDL states"); admits that some of those resources are privately owned and some are not; admits that some natural resources may and do provide commercial, industrial, recreational, and other services to the people of the MDL states and to the economies of the MDL states.

Sunoco further admits that the police power of certain Plaintiffs extends to the protection and conservation of certain natural resources which are not the private property of any person or entity; admits that by a longstanding legal fiction this proposition is sometimes inexactly

expressed by saying that a State is the owner or trustee of natural resources for the benefit of its people or citizens; admits that certain governmental agencies have limited regulatory authority with respect to natural resources within an MDL state as provided by law.

### Z.     Certain Plaintiffs' Allegations of Physical Exposure

Certain Plaintiffs allege that they are entitled to damages and/or injunctive relief, including but not limited to, medical monitoring and testing procedures, due to physical exposure to MTBE through their use of contaminated water.  Sunoco is without knowledge or information sufficient to form a belief as to the truth of the matters averred in the Complaints regarding specific incidents of physical exposure to MTBE and therefore denies all allegations asserted by Plaintiffs.

### AA.    Plaintiffs' Demands for Jury Trials

Plaintiffs in all actions have demanded a trial by jury of all claims asserted in the Complaints.  These jury demands require no answer.  To the extent any answer is deemed necessary, Sunoco admits that the Plaintiffs demand jury trials, but denies that they are entitled to them.


## II.     GENERAL DENIAL OF REMAINING ALLEGATIONS

Sunoco denies the remaining allegations in the Complaints in MDL 1358 cases for which an answer is presently required, and in which it has been properly named and served.


## III.    RESERVATION OF RIGHT TO AMEND AND/OR SUPPLEMENT

Sunoco reserves the right to amend and/or supplement this Master Answer.

## IV.    <u>AFFIRMATIVE DEFENSES APPLICABLE TO ALL CASES</u>

For its separate defenses to the Complaints in MDL 1358 cases for which an answer is presently required, and in which it has been properly named and served, Sunoco states as follows:

1.      Plaintiffs' claims are barred in whole or in part by the doctrine of federal preemption.

2.      At all relevant times, Sunoco's actions and its products complied with and were undertaken pursuant to applicable federal, state, and local laws, rules, regulations and specifications.

3.      Plaintiffs' claims are barred in whole or in part because federal, state and/or local authorities and agencies have mandated, directed, approved and/or ratified the alleged actions or omissions of Sunoco.

4.      All acts and conduct of Sunoco, as alleged in the Complaints, conformed to and were done pursuant to statutes, government regulations and industry standards, and were based upon the state of knowledge existing at all material times alleged in the Complaints.

5.      The relief sought by Plaintiffs' Complaints is, in whole or in part, within the particular expertise of and is being addressed by federal and state governments, and their relevant agencies, and thus this Court should decline to exercise jurisdiction over this matter pursuant to the doctrine of primary jurisdiction.

6.      Plaintiffs have failed to exhaust their administrative remedies.

7.      Plaintiffs have a plain, common, adequate and speedy remedy at law.  The equitable causes of action alleged in the Complaints are thus barred.

8.      Plaintiffs are barred from seeking strict liability for design defect as any attempt to reexamine the mandatory cost-benefit analysis delegated to and performed by the EPA pursuant to its obligations under the Clean Air Act ("CAA") would be impermissible given that Congress, through Section 211 of the CAA, authorized the EPA, and not the courts, to perform the cost-benefit analysis.

9.      If it is determined that Plaintiffs or anyone on whose behalf Plaintiffs are allegedly suing, was injured, as set forth in the Complaints, which Sunoco denies, Sunoco alleges that such hardship is outweighed by the convenience and public benefit rendered by Sunoco's actions.

10.     Each purported cause of action asserted in the Complaints is barred under the doctrine of primary assumption of risk in that the general public, by and through its elected representatives and their appointees, knew and understood the alleged risks of harm presented by the use of MTBE, if any, and elected nevertheless to proceed to require the use of gasoline oxygenates and to specifically permit the use of MTBE as a gasoline oxygenate.

11.     To the extent that Plaintiffs have received or may receive the requested relief from a governmental agency, Sunoco asserts its entitlement to an appropriate set-off or reduction of any judgment against it.

12.     The appropriate forum for Plaintiffs' claims is an administrative agency, and therefore all proceedings before this Court should be stayed pending administrative resolution of the issues.

13.     The claims set forth in the Complaints fail, in whole or in part, based on the doctrine of election of remedies.

14.     Each purported cause of action of the Complaints as applied to Sunoco is barred because the relief sought therein would pose unreasonable barriers and substantial burdens on interstate commerce in violation of the Commerce Clause of the United States Constitution.

15.     The Complaints fail to state a claim upon which relief may be granted and should, therefore, be dismissed pursuant Fed. R. Civ. P. 12(b)(6).

16.     Because Plaintiffs have not suffered any cognizable harm and have not incurred any present damages, there is no current case or controversy and thus, Plaintiffs' claims are not ripe for adjudication.

17.     Plaintiffs suffered no losses or injuries that were proximately caused by Sunoco.

18.     Sunoco's conduct was not the cause in fact of any injuries alleged by Plaintiffs.

19.     Plaintiffs have failed to state a cause of action for nuisance because they have neither alleged nor suffered any particularized injury.

20.     The alleged injuries and damages, if any, suffered as a result of conduct legally attributable to Sunoco are *de minimis* and therefore any injunction would pose a disproportionate hardship on Sunoco, as well as on the public, in comparison to the injury and/or damages allegedly suffered by Plaintiffs.  Accordingly, Plaintiffs are not entitled to injunctive relief as to Sunoco as a matter of law.

21.     Plaintiffs do not have a legally cognizable injury unless or until the alleged MTBE contamination exceeds state action levels.

22.     Plaintiffs may not seek attorneys' fees as an element of relief.

23.     Plaintiffs have failed to properly present any claim for attorneys' fees.

24.     Because Plaintiffs have sued multiple parties, under multiple causes of action, with divisible damages, the claim for attorneys' fees must be apportioned among same.

25.     The claims set forth in the Complaints are barred, in whole or in part, by the mootness doctrine.

26.     The Complaints and each purported cause of action are barred, in whole or in part, by the defense of laches.  Plaintiffs' unreasonable and inexcusable delay in filing these actions caused substantial prejudice to Sunoco.

27.     The Complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations.

28.     The Complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of repose.

29.     Plaintiffs are estopped by their conduct from asserting any of the purported claims alleged against Sunoco in the Complaints.

30.     Plaintiffs have not investigated the cause of the alleged harm or attempted to identify the actual responsible party or parties.

31.     Plaintiffs cannot establish the required predicates for their theories of collective liability, and therefore their defendant-identification burden remains.  In the event that the defendant-identification burden were shifted in the future, Sunoco denies that it contributed to the contamination at issue.

32.     Plaintiffs' claims are barred in whole or in part by the doctrine of waiver.

33.     Plaintiffs assumed the risk of all acts, injuries, and damages that Plaintiffs now assert against Sunoco.

34.     Sunoco is entitled to total or partial indemnity from those individuals or entities who are responsible for Plaintiffs' injuries or damages, if any, in an amount in direct proportion to their relative culpability.

35.     Plaintiffs lack the capacity to sue.

36.     Plaintiffs lack standing to sue.

37.     Plaintiffs' claims are barred because Sunoco's conduct caused no physical impact to Plaintiff's property.

38.     There is a defect or misjoinder of parties, in that Plaintiffs have failed to join indispensable or necessary parties.

39.     Plaintiffs have failed to name the party or parties responsible for the alleged harm.

40.     The claims set forth in the Complaints fail, in whole or in part, because of the failure to identify which defendant, if any, proximately caused the alleged harm.

41.     Plaintiffs' claimed injuries were caused in whole or in part by others, whose actions were not controlled by or related to Sunoco.  Such actions are the superseding, supervening and/or intervening cause of Plaintiffs' injuries and therefore Plaintiffs may not recover from Sunoco as a matter of law.

42.     Plaintiffs' claims must be dismissed because they have failed to identify the particular defendant that is responsible for the harms alleged by Plaintiffs.

43.     At all times, Sunoco acted with due care with respect to any petroleum or petroleum products used and took reasonable precautions against foreseeable acts or omissions.

44.     Any Sunoco gasoline product sold or distributed for resale was properly designed, formulated, prepared and otherwise not defective in any respect.

45.     Plaintiffs' strict liability claims fail because the benefits of the product that Plaintiffs allege caused them harm, outweigh its dangers, if any.

46.     To the extent required, Sunoco provided proper warnings, information, and instructions relating to its products pursuant to generally recognized and prevailing standards in existence at the time.

47.     Plaintiffs have failed to allege that Sunoco's alleged failure to provide an adequate warning proximately caused their injuries.

48.     Any gasoline product containing MTBE manufactured, sold, or distributed for resale by Sunoco was not unreasonably dangerous when made.

49.     The Plaintiffs' claims against Sunoco are barred by the bulk supplier doctrine.

50.     Sunoco sold its products to knowledgeable and sophisticated purchasers, and any injury alleged by Plaintiffs was caused by such purchasers' failure to observe known standards of care.

51.     Any injury, damage or loss sustained by the Plaintiffs was proximately caused by and/or contributed to by their own negligence, carelessness, and/or omissions.

52.     Plaintiffs' claims are barred pursuant to the learned intermediary doctrine.

53.     If any damages or injuries alleged in the Complaints occurred because of leaks in the gasoline storage tanks and associated piping, Sunoco is not liable for those damages and/or injuries because the gasoline storage tanks and associated piping, when manufactured and distributed, conformed to the then current state of scientific and industrial knowledge, and the tanks and associated piping were used for their intended purpose.

54.     Plaintiffs' public nuisance claims should be dismissed because there were no acts or omissions by or on behalf of any of the defendants constituting an intentional, unreasonable interference with the Plaintiffs' interest in the use and enjoyment of their property.

55.     Plaintiffs' public nuisance claims must be dismissed because Plaintiff has failed to allege "special damages," an absolute prerequisite to the assertion of a public nuisance claim.

56.     Sunoco alleges that it owed no duty of care to Plaintiffs in connection with the matter alleged in the Complaints.

57.     The Complaints fail to plead the elements of negligence claims with sufficient clarity, specificity, and particularity.

58.     Plaintiffs fail to state a claim for trespass because they cannot allege facts demonstrating willful intent to intrude on their property.

59.     Plaintiffs' claims are barred to the extent the conduct complained of is protected by the First Amendment to the United States Constitution.

60.     The Complaints and each cause of action are barred based on Sunoco's valid exercise of the right of petition to the federal government, state government(s), and/or their respective deliberative bodies and agencies.

61.     Plaintiffs' claims are barred, in whole or in part, based on Plaintiffs' actual or constructive notice of reported spills or releases, if any, from publicly available records.

62.     There is no legal relationship upon which any duty could possibly be owed by Sunoco to Plaintiff, and therefore, Plaintiffs' causes of action fail as a matter of law.

63.     The injuries and damages, if any, alleged by Plaintiffs are caused in whole or in part by the presence of compounds other than MTBE (e.g., the BTEX compounds).  Under Plaintiffs' own legal theories, Sunoco is not liable for damages caused by compounds other than MTBE.  In the event liability is assessed against Sunoco, such liability must be reduced where, and to the extent that, other compounds – about which Plaintiffs do not complain – contributed to the alleged injury.

64.     Sunoco is not liable for contamination where chemical compounds other than MTBE exceed state action levels or standards, requiring cleanup or regardless of the presence of MTBE (particularly, but not exclusively, where MTBE is present below state action levels or standards).

65.     Any injury, damage or loss sustained by the Plaintiffs in connection with the subject matter of this action was not reasonably foreseeable.

66.     If it is determined that Plaintiffs or anyone on whose behalf Plaintiffs are allegedly suing, was injured, as set forth in the Complaints, which Sunoco denies, Sunoco alleges that any award of damages shall be reduced in proportion to the percentage of fault attributable to the Plaintiffs.

67.     If it is determined that Plaintiffs or anyone on whose behalf Plaintiffs are allegedly suing, was injured, as set forth in the Complaints, which Sunoco denies, Sunoco alleges that any award of damages shall be reduced in proportion to the percentage of fault attributable to third parties (including but not limited to persons or entities responsible for gasoline leaks or spills).

68.     The injuries alleged in the Complaints, if any, may be reasonably apportioned among the defendants, as each defendant's alleged acts and omissions, including Sunoco's, is divisible and distinct.  Therefore, no defendant is jointly and severally liable to Plaintiffs for any claim alleged in the Complaints.

69.     Plaintiffs have unreasonably failed to mitigate their damages, if any.

70.     To the extent that any party has settled or may settle in the future with Plaintiffs, Sunoco asserts its entitlement to an appropriate credit or reduction of any judgment(s) against it.

71.     Plaintiffs' claims for punitive damages violate the provisions of the U.S. Constitution, including but not limited to those provisions requiring due process of law, prohibiting excessive fines, principles of federalism, and the Commerce Clause.

72.     Plaintiffs are public entities and/or authorities seeking compensation for damages to natural resources under their jurisdiction or purview.  These public entities/authorities have improperly delegated the power to prosecute these cases to private attorneys on a contingent fee basis.  Such delegation is against public policy.

73.     Plaintiffs' claims fail, in whole or in part, based on the doctrine of unjust enrichment.

74.     The damages sought by Plaintiffs are wholly speculative and conjectural.

75.      Some or all of the injury or damages suffered by Plaintiffs were the product of conduct for which Sunoco cannot have liability to Plaintiffs, since it is lawfully undertaken by Sunoco and its predecessors in the exercise of their rights as owner(s) of real property.

76.     Plaintiffs have not incurred "clean-up and removal" costs or "response costs" as those terms are defined in applicable statutes.

77.     Plaintiffs have failed to state a claim for relief against Sunoco under the Resource Conservation and Recovery Act of 1976, as amended, 42 U.S.C. § 6901, et seq. ("RCRA").

78.     MTBE is not a hazardous waste or solid waste as those terms are currently defined by RCRA and applicable regulations and guidance.

79.     Plaintiffs failed to provide Sunoco with the proper notice required before asserting claims under RCRA.

80.     Plaintiffs do not have the proper authority required to pursue claims against Sunoco under RCRA.

81.     Sunoco reserves the right to assert additional defenses that may be pertinent to Plaintiffs' claims when the precise nature of said claims are ascertained through discovery and based on facts developed as this matter progresses.

82.     Sunoco incorporates by reference any affirmative defense, whether general or specific to a specific State, alleged by other defendants in MDL 1358.

        The pleading of the defenses described above shall not be construed as an undertaking by Sunoco of any burden which would otherwise be the responsibility of Plaintiffs.

## V.   AFFIRMATIVE DEFENSES APPLICABLE TO PARTICULAR STATES

For its separate defenses to the Complaints in MDL 1358 cases from particular states (for which an answer is presently required, and in which Sunoco has been properly named and served), Sunoco states as follows:

**ILLINOIS**

1.      The Complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, 735 ILCS 5/13-205.

2.      Plaintiffs' recovery is barred, in whole or in part, due to their contributory fault, pursuant to 735 ILCS 5/2-1116.

3.      Sunoco is not jointly and severally liable because its fault, if any, is less than twenty-five percent of the total fault attributable to all parties.  735 ILCS 5/1-116; 735 ILCS 5/2-117.

4.      Plaintiffs' claims are barred by the provisions of 735 ILCS 5/13-213 to the extent they are predicated on the alleged delivery of gasoline containing MTBE by Sunoco to a customer more than 10 years prior to the filing of any action involving Illinois plaintiffs.

5.      Plaintiffs' efforts to impose liability on Sunoco without proof as to causation violates the Due Process clause of the federal and state constitutions.

**INDIANA**

1.      The Complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, Ind. Code. Ann. 34-20-3-1.

2.      Plaintiffs' product liability design defect claims are barred, in whole or in part, because no alleged act or omission by Sunoco gave rise to design defect liability pursuant to Indiana's Product Liability Act, as set forth in Ind. Code. Ann. 34-20-2-1.

3.      Plaintiffs' product liability claims fail because Sunoco had no duty to warn Plaintiffs, as Plaintiffs knew or should have known of the alleged danger.  Ind. Code. Ann. 34-20-6-1 and 34-20-6-3.

4.      Plaintiffs' product liability claims fail because Sunoco manufactured its products in conformity with generally recognized state of the art.  Ind. Code. Ann. 34-20-6-1 and 34-20-5-1.

5.      Any duty to warn, if one existed at all, was discharged pursuant to Ind. Code. Ann. 34-20-6-1 and 34-20-6-3 because the alleged defects, if any, were open and obvious to Plaintiffs.

6.      Plaintiffs voluntarily and unreasonably assumed the risk of injury, thereby relieving Sunoco of liability.  Ind. Code. Ann. 34-20-6-1 and 34-20-6-3.

7.      Any alleged design defect was not the proximate cause of the Plaintiffs' injuries or harm.

8.      Plaintiffs' alleged injuries, if any, resulted from the misuse of the product by the Plaintiffs or other persons, and such misuse was not reasonably expected by Sunoco at the time that it sold or otherwise conveyed the product to the other party.  Ind. Code. Ann. 34-20-6-4.

9.      Plaintiffs' claims for public nuisance should be dismissed because at no time did any act or omission attributable to Sunoco or its products interfere with the Plaintiffs' comfortable enjoyment of life or property.  Ind. Code. Ann. 34-19-1-1.

10.     Plaintiffs have failed to state a cause of action for public nuisance because Sunoco's alleged conduct is not unreasonable upon comparison of its alleged conduct with Plaintiffs' competing interests.  Ind. Code. Ann. 34-19-1-1.

11.     Plaintiffs' recovery is barred by their contributory fault, which is greater than the fault of all persons whose fault may have proximately contributed to Plaintiffs' damages.  Ind. Code. Ann. § 34-51-2-6.

12.     Plaintiffs' claims under the Indiana Environmental Legal Action statute fail because Sunoco did not "cause or contribute" to the release of gasoline.

13.     Plaintiffs' efforts to impose liability on Sunoco without proof as to causation violates the Due Process clause of the federal and state constitutions.

**MASSACHUSETTS**

1.     The Complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to Mass. Gen. Laws Ann. Ch. 260 § 2A.

2.     Plaintiffs' claims are barred because their negligence is greater than the alleged negligence of Sunoco.  Mass. Gen. Laws Ann. Ch. 231 § 85.

3.     Sunoco is not liable for damages because any contamination resulted from the acts or omissions of third parties and Sunoco exercised due care with regard to its products and took reasonable precautions against foreseeable acts or omissions of third parties and the consequences that could foreseeably result from such acts or omissions.  Mass. Gen. Laws Ann. Ch. 21E § 5(c)(3).

4.     Plaintiffs are not entitled to injunctive relief because they failed to provide written notice to the Massachusetts Attorney General and Sunoco as required by statute.  Mass. Gen. Laws Ann. Ch. 214 § 7A.

**MISSOURI**

1.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to  Mo. Ann. Stat. §§ 516.100, 516.120 and 516.010 (West).

2.      Plaintiffs' recovery is barred or must be reduced, in whole or in part, based on the doctrine of comparative fault.  Mo. Ann. Stat. § 537.765 (West).

3.      Any duty to warn, if one existed at all, was discharged pursuant to Mo. Ann. Stat. § 537.760 (West), because the alleged defects, if any, were open and obvious to plaintiffs.

4.      Plaintiffs' product liability claims fail because Sunoco had no duty to warn plaintiffs, as plaintiffs knew or should have known of the alleged danger.  Mo. Ann. Stat. § 537.760 (West).

5.      Plaintiffs' product liability claims fail because Sunoco's products were in conformity with generally recognized state of the art.  Mo. Ann. Stat. §§ 537.764 and 537.760  (West).

6.      Plaintiffs' product liability claims fail because Sunoco's products, at the time they were sold, were not in a defective condition or unreasonably dangerous when put to a reasonably anticipated use.  Mo. Ann. Stat. § 537.760 (West).

7.      Any alleged defective condition of Sunoco's products at the time they were sold, was not the proximate cause of plaintiffs' injuries or harm.  Mo. Ann. Stat. § 537.760 (West).

8.      Plaintiffs' alleged injuries, if any, resulted from use of the product that was not reasonably anticipated by Sunoco at the time that they sold or otherwise conveyed the product. Mo. Ann. Stat. § 537.760 (West).

9.      Plaintiffs' recovery of punitive damages arising out of their alleged injury is limited under Mo. Ann. Stat. § 510.265 (West).

**NEW JERSEY**

1.      The Complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, N.J. Stat. Ann. § 2A:14-2.

2.      Sunoco's conduct did not meet the minimum requirements of culpability with respect to each material element of the alleged offenses of civil conspiracy, public nuisance, and negligence, according to the applicable provision of N.J. Stat. Ann. § 2C:2-2, and, therefore, Plaintiffs' claims on these counts should be dismissed.

3.      Plaintiffs' recovery is barred or must be reduced, in whole or in part, based on the doctrines of contributory and/or comparative fault, pursuant to N.J. Stat. Ann. § 2A:15-5.1 *et seq.*

4.      Plaintiffs' claims are barred by the entire controversy doctrine, the principles of *res judicata*, and collateral estoppel.

5.      The Complaint and each purported cause of action is barred to the extent that such claims have been satisfied by payments or provisions of alternate water supplies by Sunoco, Defendants, or third parties.

6.      Plaintiffs' method of assessing natural resource damages was not adopted in a manner consistent with the Administrative Procedures Act, N.J.S.A. § 52:14B-2(e).

7.      Plaintiffs' claims for natural resource damages are in excess of any sovereign rights transmitted to New Jersey by the British Crown at independence, and if upheld would be unconstitutional violation of the Equal Footing Doctrine.

8.      Plaintiffs' purported assessment of natural resource damages is an ultra vires act, contravenes protections afforded Defendants under the Constitutions of the State of New Jersey and the United States, and is not recoverable.

9.      Plaintiffs have failed to state a cause of action for natural resource damages.

10.     Plaintiffs' claims are barred, in whole or in part, by the statutory defenses to liability provided by the New Jersey Spill Compensation and Control Act, N.J. Stat. Ann. § 58:10-23.11 *et seq.*, ("Spill Act").

11.     Plaintiffs have no claim under the Spill Act because Sunoco is not a discharger and/or responsible person within the meaning of the Act.

12.     Plaintiffs' claims under the Spill Act are not ripe, since cleanup and remediation have not been completed.

13.     Plaintiffs' claims under the Spill Act are barred, in whole or in part, because the claims asserted are preempted by federal law.

14.     Plaintiffs' claims under the Spill Act fail to the extent that any Defendant who has previously been found responsible for a discharge of a hazardous substance, has resolved its liability to the State for damages.  N.J. Stat Ann. § 58:10-23.11f-a(2)(b).

15.     Any injury or damages suffered by Plaintiffs have been increased by Plaintiffs' failure to mitigate their damages, in that (1) the policies and activities of the State of New Jersey and its agencies during the period of time for which Plaintiffs seek damages have caused damage to natural resources greater than that would otherwise have occurred; and (2) the State and its agencies have failed to take reasonable measures available to them to reduce damages.

16.     Plaintiffs' claims under the Spill Act are barred to the extent Plaintiffs seek relief for conduct occurring or damages incurred prior to the effective date of the Spill Act.

17.     Plaintiffs have failed to join parties needed for the just adjudication of the Plaintiffs' claims, in whose absence complete relief cannot be afforded the existing parties pursuant to N.J.Ct.R. 4:28-1.

18.     Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' failure to comply with the prerequisites to liability under the Spill Act, including without limitation Plaintiffs' incurring of costs not authorized by the Spill Act and Plaintiffs' failure to direct cleanup and remediation operations in accordance with the National Contingency Plan to the greatest extent possible.

19.     Plaintiffs' strict liability claims are barred in whole or in part by N.J. Stat. Ann. § 58:10-23.11i, if they relate to any discharge or contamination eligible for funding from the Spill Act.

20.     Plaintiffs' allegations of strict products liability fail under the New Jersey Products Liability Act, N.J.S.A. 2A:58C-1, *et seq.*,

21.      Plaintiffs' allegations of strict products liability fail under New Jersey common law.

22.     Plaintiffs' strict liability claims are barred in whole or in part by the State-of-the-Art Defense for products liability as set forth in N.J. Stat. Ann. § 2A:58C-3(a)(1) and the common law of New Jersey.

23.     Plaintiffs' product liability claims are barred because the characteristics of the product were known to Plaintiffs and the harm, if any, caused by an allegedly unsafe aspect of the product is an inherent characteristic of the product, recognized by Plaintiffs as ordinary persons who used or consumed the product with the ordinary knowledge common to the class of persons for whom the product was intended.  N.J. Stat. Ann. § 2A:58C-3(a)(2).

24.     If Plaintiffs have stated a claim for strict products liability under the New Jersey Products Liability Act, N.J.S.A. § 2A:58C-1, *et seq.*, then Sunoco is entitled to the absolute defenses and rebuttable presumptions of non-liability established in N.J.S.A. § 2A-58C-3a(1)-(3), as well as other statutes, regulations, and case law.

25.     Plaintiffs' trespass and public nuisance claims are barred to the extent Plaintiffs are seeking damages for property or wells not actually owned by the State.

26.     Plaintiffs' trespass claim fails in whole or in part to the extent Plaintiffs are seeking damages to the ground and/or surface water of the State of New Jersey because the State of New Jersey does not have an exclusive possessory interest in such waters.

27.     Plaintiffs' trespass claim fails in whole or in part to the extent that Plaintiffs are not in possession of, or maintain a sufficient ownership interest in, the lands upon which it is claimed Defendants trespassed.

28.     Plaintiffs' public nuisance claim fails in whole or in part because such claim does not provide for the recovery of monetary damages.

29.     Plaintiffs have no claim under the New Jersey Water Pollution Control Act, N.J. Stat. Ann. § 58:10A-6(a) *et seq.*, because Sunoco is not a discharger and/or responsible person within the meaning of the Act.

30.     Plaintiffs' claims are barred to the extent that Plaintiffs did not comply with the requirements of the New Jersey Water Pollution Control Act, N.J.Stat. Ann. § 58:10A-6(a) *et seq.*

31.     Plaintiffs' punitive damages claims must be dismissed because Sunoco's purported acts or omissions were not actuated by actual malice or accompanied by wanton and willful conduct. N.J. Stat. Ann. § 2A:15-5.9 *et seq.*

32.     The Complaint and each purported cause of action is barred to the extent that federal or New Jersey state agencies have exonerated Sunoco and/or determined that any Sunoco facility did not contribute to the presence of MTBE in the relevant ground and/or surface water for which Plaintiffs are asserting damages.

33.    Plaintiffs' claims are barred by the doctrine of primary jurisdiction in that the New Jersey Department of Environmental Protection ("NJDEP") is responsible for directing remediation and allocating responsibility for the environmental conditions alleged in Plaintiffs' complaint.

34.    Plaintiffs' claims are barred because Sunoco has complied with and/or satisfied all applicable laws, regulations, orders, rules, directives and/or other requirements of NJDEP or any other state or federal agency or governmental entity regarding the environmental conditions alleged in the complaint.

35.    Plaintiffs' claims are frivolous.  Sunoco reserves the right to move for attorneys fees and costs pursuant to the New Jersey Frivolous Claims Statute or Rule 1:4-8.

**PENNSYLVANIA**

1.    The Complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to 42 Pa. Cons. Stat. Ann. § 5524.

2.    Sunoco's conduct did not meet the minimum requirements of culpability with respect to each material element of the alleged offenses of civil conspiracy, public nuisance, and negligence in order to be found liable according to the applicable provision of 18 Pa. Cons. Stat. Ann. § 302, and, therefore, Plaintiffs' claims on these counts should be dismissed.

3.    Plaintiffs' claims for public nuisance are barred because at all relevant times, neither Sunoco nor its products violated any orders or regulations adopted by the Pennsylvania Department of Environmental Protection or any other Pennsylvania state agency.  35 Pa. Cons. Stat. Ann. § 691.503.

4.    Pursuant to 35 Pa. Cons. Stat. Ann. §6021.1311, Sunoco did not contribute to the alleged damages, contamination or pollution.

5.      Plaintiffs are precluded from bringing this action as primary jurisdiction rests with other governmental authorities.

6.      The actions of Sunoco were not reckless or in wanton or outrageous disregard of the environment or plaintiffs' health and safety.

7.      Plaintiffs' claim for punitive damages is barred by the Due Process Clause and other clauses of the Pennsylvania and federal Constitutions.

**PUERTO RICO**

1.      The Complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to P.R. Laws Ann. tit. 31, §§ 5141, 5928.

2.      Recovery is barred or must be reduced, in whole or in part, based on the Plaintiffs' concurrent imprudence, as set out in P.R. Laws Ann. tit. 31, §§ 5141, as well as other statutes and case law relating to the doctrines of contributory or comparative negligence.

3.      Recovery is barred or must be reduced, in whole or in part, based on the doctrine of absorption.

4.      Gasoline containing MTBE did not fail to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

5.      Gasoline containing MTBE does not embody excessive preventable danger.

6.      At the time that Sunoco designed its MTBE containing gasoline, there was no feasible, safer design.

7.      Insofar as the Commonwealth seeks to recover damages through the action authorized by the Puerto Rico Public Policy Environmental Act ("PPEA"), P.R. Laws Ann. tit. 12 § 8001 *et seq.*, it is barred from recovering under common law theories, such as public nuisance, trespass, strict products liability and negligence.

8.      The Commonwealth lacks standing to bring a citizen suit under the PPEA.  P.R. Laws Ann. tit. 12 § 8001 *et seq.*

9.      The Commonwealth has not established a particular injury and therefore has not met the burden to establish a trespass action for the actions alleged in the Complaint.

10.     The Commonwealth has not established Sunoco's intent to trespass on land owned by the Commonwealth.

11.     Trespass is not an acknowledged cause of action under the Puerto Rico Civil Code or as an equitable cause of action for acts or omissions occurring within the jurisdiction of Puerto Rico.

12.     The Commonwealth does not have standing to bring a public nuisance action for the actions alleged in the Complaint.

13.     Sunoco is not liable for any alleged public nuisance because the Commonwealth, through its acts and omissions, impliedly consented to and had knowledge of all activities and conditions alleged in the Complaint.

14.     The Commonwealth has failed to allege "special damages," a prerequisite to the assertion of a public nuisance claim.

15.     Future costs are not authorized by P.R. Laws Ann. tit. 32 § 2761.

16.     The Commonwealth's Complaint fails to plead the elements of a negligence claim under Art. 1802 of the Puerto Rico Civil Code with sufficient clarity, specificity, and particularity, including the alleged damages sustained by the Commonwealth, the alleged acts or omissions of Sunoco and the causal nexus.

17.     The Commonwealth lacks standing to bring a citizen suit under the PPEA.  P.R. Laws Ann. tit. 12 § 8001 et seq.

18.     Sunoco is not liable under the PPEA because its actions have not contributed to or created any damage or degradation to any of the Commonwealth's natural resources.

19.     The Commonwealth lacks standing to bring a suit for alleged violations to the Water Pollution Control Act ("WPCA").  P.R. Laws Ann. tit. 24 § 591 et seq.

20.     MTBE is not considered an "other" pollutant as defined in the WPCA.  P.R. Laws Ann. tit. 24 § 591(h).

21.     MTBE is not considered a "Pollutant" by the Commonwealth's Water Quality Standards Regulations, Department of State Regulation No. 6616.

22.     MTBE is not considered a "Regulated Substance" as defined in the Commonwealth's Underground Storage Tank Regulations, Department of State Regulation No. 4362.

23.     The Commonwealth cannot demonstrate that EPA was unaware of information the Commonwealth alleges should have been disclosed under the Toxic Substances Control Act ("TSCA") when the Commonwealth's TSCA claim was brought.

24.     Sunoco has not failed to provide EPA with any data related to MTBE that was reportable under TSCA §8(e).

25.     The Commonwealth's claims fail, in whole or in part, based on the doctrine of *in pari delicto*.

*          *          *

For each State described above, Sunoco incorporates by reference any affirmative defense, whether general or specific to another State, alleged herein or by other defendants in MDL 1358. The pleading of the defenses described above shall not be construed as an undertaking by Sunoco of any burden which would otherwise be the responsibility of Plaintiffs.

**WHEREFORE**, Sunoco requests entry of judgment dismissing the Complaints with prejudice, and awarding Sunoco its costs and attorneys' fees, and such other relief as the Court may deem just and proper.

Dated:   January 31, 2011

Respectfully submitted,

John S. Guttmann (JG 7601)
Daniel M. Krainin (DK 1128)
Paula J. Schauwecker (PS 3449)
BEVERIDGE & DIAMOND, P.C.
477 Madison Avenue, 15th Floor
New York, NY 10022
(212) 702-5400
Fax: (212) 702-5450

Nessa E. Horewitch (*pro hac vice*)
BEVERIDGE & DIAMOND, P.C.
1350 I. Street, N.W., Suite 700
Washington, DC 20005
(202) 789-6000
Fax:  (202) 789-6190

*Attorneys for Defendants Sunoco, Inc.,
Sunoco, Inc. (R&M) and Puerto Rico Sun
Oil Company*

36

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of Sunoco's Sixth Amended Master Answer was served upon counsel for Plaintiffs and to all other counsel of record via LexisNexis File and Serve on the 31st day of January, 2011.

1420883v3  Washington 011786