UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In re: Methyl Tertiary Butyl Ether                    MDL No. 1358
("MTBE") Products Liability Litigation                Master File No. 00-CV-1898 (SAS)
                                                      M21-88
------------------------------------------------------------X

This Document Relates To:

*Village of Bethalto v. Ashland, Inc., et al.,* 1:10-cv-08182
*Town of Kouts v. Ashland, Inc., et al.,* 1:10-cv-08184
*City of Kennett v. Ashland, Inc., et al.,* 1:10-cv-08742
*City of Pattonsburg v. Ashland, Inc., et al.,* 1:10-cv-08743
*Coraopolis Water and Sewer Authority v. Ashland, Inc., et al.,* 1:10-cv-07874
*Bridgewater Water Department v. Atlantic Richfield Co., et al.,* 1:11-cv-479

## FIFTH AMENDED MASTER ANSWER AND DEFENSES OF DEFENDANT FLINT HILLS RESOURCES, LP

Defendant Flint Hills Resources, LP ("Flint Hills"), by counsel, hereby submits the

following Fifth Amended Master Answer and Defenses for the above-referenced cases in which

it has been named and served in MDL No. 1358. Except to the extent modified by this Fifth

Amended Master Answer and Defenses, all Master Answers and Defenses previously filed by

Flint Hills remain in full force and effect as to cases that may subsequently be transferred to

MDL No. 1358.

## RESPONSES TO ALLEGATIONS

### I.      RESPONSES TO ALLEGATIONS AS TO PARTIES

**Plaintiffs**

1.      Flint Hills admits, upon information and belief, that Plaintiffs include various

entities, public, private or municipal, that supply drinking water to residents of their respective

service areas. Flint Hills lacks sufficient information to admit or deny the remaining allegations

concerning the nature and location of the Plaintiffs' businesses and headquarters and therefore denies the same.

2.      Flint Hills lacks information sufficient to admit or deny any allegations concerning the number, nature and capacity of any of Plaintiffs' pumping facilities and wells and therefore denies the same.

**Defendants**

3.      Flint Hills lacks sufficient information to admit or deny any allegations concerning the state of incorporation, principal place of business or location of the business activities of defendants other than Flint Hills Resources, L.P. and therefore denies the same.

4.      Flint Hills admits that it is a Delaware limited partnership with its principal place of business at 4111 E. 37th Street North, Wichita, Kansas 67220.  Flint Hills denies that this allegation is sufficient to establish its citizenship for purposes of federal diversity jurisdiction.

5.      Flint Hills admits that it has engaged in one or more phases of the petroleum business, including the refining, distribution, marketing and sale of gasoline and the manufacturing and sale of MTBE, but denies any allegations that it has engaged in all phases as described in Plaintiffs' Complaints or Amended Complaints (collectively, "Complaints").

6.      Flint Hills is currently a party in cases in this MDL filed in the following states: Illinois, Indiana, Massachusetts, Missouri and Pennsylvania (the "States").  It previously filed Amended Master Answers for all States except Missouri.

7.      Flint Hills denies any allegation that it has done business in any of the States as a manufacturer, designer, refiner, formulator, distributor, supplier, seller and/or marketer of MTBE.  Flint Hills lacks information to admit or deny that any MTBE that it may have sold in the past was sold in any of the States or it was blended into gasoline for delivery into any of the States and therefore denies any allegations concerning same.

8.      Flint Hills denies that it has done business in any of the States as a manufacturer, designer, refiner, formulator, distributor, supplier, seller and/or marketer of gasoline containing MTBE, except as follows:  Flint Hills denies that it refines or has refined gasoline, either now or in the past, in any of the States.  Flint Hills admits that, in the past, it marketed and sold RFG with MTBE from certain terminals owned and operated by others that was coded for delivery to Illinois, Indiana, and Pennsylvania, but specifically denies that the terminals at which such sales were made supplied gasoline to Plaintiffs' geographic areas.  Flint Hills admits that on occasion it has marketed and sold conventional gasoline from terminals in all of the States except Massachusetts.  Flint Hills denies that all such conventional gasoline contained MTBE.  Flint Hills lacks information sufficient to admit or deny that some of such conventional gasoline contained MTBE and therefore denies the same.  Flint Hills admits that, on infrequent occasions in the past, it sold RFG with MTBE on a bulk basis for delivery in Massachusetts.

9.      Flint Hills denies that it manufactured or refined any gasoline containing MTBE that was allegedly marketed and sold in Illinois, Indiana, Missouri and Pennsylvania.  Flint Hills lacks information sufficient to admit or deny any allegations that it manufactured or refined any gasoline containing MTBE that was allegedly marketed and sold in Massachusetts and therefore denies the same.

10.      Flint Hills denies any allegations that it refined, manufactured, marketed or sold any of the MTBE or gasoline containing MTBE that was allegedly detected in any of the Plaintiffs' wells or water sources.

11.      Flint Hills denies any allegations that any of its predecessors, successors, parents, subsidiaries, affiliates and divisions may be included in Plaintiffs' references to "Defendants" in this action.  Flint Hills responds to the complaint solely on its behalf.

12.     Flint Hills denies any allegations that it has engaged in any unlawful act or omission, and denies any allegations that any of its officers, directors, agents, employees, or representatives committed or authorized any unlawful act or omission, or failed to adequately supervise or properly control or direct its employees while engaged in the management, direction, operation or control of Flint Hills' affairs.

## II.      RESPONSES TO ALLEGATIONS AS TO JURISDICTION AND VENUE

13.     As to personal jurisdiction allegations against Flint Hills, see paragraph 2 of Defendant Flint Hills' Defenses, which is incorporated in response to Plaintiffs' allegations.

14.     Flint Hills lacks sufficient information to admit or deny the remaining allegations of Jurisdiction and Venue and therefore denies the same.

## III.      RESPONSES TO ALLEGATIONS AS TO FACTS

15.     To the extent any of Plaintiffs' Complaints purport to summarize factual allegations contained elsewhere in such Complaints, those allegations are addressed in response to those allegations.

16.     Except as expressly admitted in this Master Answer, all allegations are denied.

17.     To the extent Plaintiffs purport to state conclusions and principles of law, those allegations do not involve factual assertions and no response is required to those allegations.  To the extent a response is required, such allegations are denied.

18.     To the extent any of the allegations relate to the knowledge, actions, conduct, publications and documents of other defendants, individuals or entities, Flint Hills lacks information sufficient to admit or deny those allegations and therefore denies them.

19.     To the extent any of the allegations purport to quote, characterize or describe any statements, reports, studies or other documents produced by another other defendant, entity or

industry group, Flint Hills states that those materials speak for themselves and no response is required.

20.     To the extent any of the allegations purport to quote, characterize or describe public records, statements, reports, studies, regulations, legislation or other matters of public record issued by any federal, state or local official or agency, Flint Hills states that those materials speak for themselves and no response is required.

21.     Subheadings in the Complaints are argumentative, conclusory and false.  To the extent that responses to these subheadings are required, they are denied.

### A.     Allegations as to MTBE's and TBA's Characteristics

22.     Flint Hills admits MTBE is an aliphatic ether and that it is more soluble in water than certain other constituents of gasoline.

23.     Flint Hills lacks information sufficient to admit or deny any allegations that MTBE is more soluble in water than all other gasoline constituents and therefore denies the same.

24.     Flint Hills admits that MTBE does not occur naturally.

25.     Flint Hills lacks information sufficient to admit or deny any allegations that MTBE spreads faster and further in groundwater than all other chemical components contained in gasoline and therefore denies the same.  Flint Hills admits that MTBE moves in groundwater more quickly than certain other constituents of gasoline.

26.     Flint Hills denies any allegation that MTBE resists physical, chemical and microbial degradation.  Flint Hills admits that MTBE may biodegrade at a slower rate than certain other constituents of gasoline.

27.     Flint Hills admits that drinking water with sufficiently high concentrations of MTBE must be treated before it can be used for domestic consumption.  Flint Hills denies that

concentrations below the MCL require treatment and specifically denies that the extent of MTBE contamination of drinking water is as widespread or as serious as Plaintiffs allege.

28.     Flint Hills admits that MTBE under certain subsurface conditions can break down into TBA.

29.     Flint Hills admits that a refiner can, with proper certification, add TBA to gasoline but denies that it was ever certified to use or used TBA in gasoline.  Flint Hills lacks information sufficient to admit or deny that TBA can be used as a raw material in the production of isobutylene and therefore denies the same.

30.     Flint Hills lacks information sufficient to admit or deny the allegations concerning the cost of remediating TBA as compared to MTBE and therefore denies the same.

31.     Flint Hills denies that TBA has the same physical, environmental and toxicological characteristics as MTBE, or that TBA creates the environmental threat alleged by Plaintiffs in their Complaints, or that it has been shown to be present in water supplies across the country.

**B.       Allegations as to Addition of MTBE to Gasoline**

32.     Flint Hills admits that it manufactured, distributed and/or sold gasoline containing varying levels of MTBE at different times in the past.

33.     Flint Hills admits that the Clean Air Act of 1990 mandated the use of oxygenates in some gasoline and that the EPA authorized the use of MTBE.

34.     Flint Hills admits that it used MTBE in the past as an oxygenate in certain locations as permitted by applicable law and as required due to infrastructure logistics, anti-mixing regulations and market usage.

35.     Flint Hills denies any allegation that it added TBA to gasoline as an oxygenate or for any other purpose.

36.     Flint Hills admits that it used MTBE in the past as a high octane component of its blend pool for certain gasoline.  Flint Hills denies any allegations that MTBE was the only high octane component of its gasoline.  Flint Hills denies any allegations that MTBE was the only constituent of gasoline added to boost octane.

37.     Flint Hills admits that it used MTBE in its reformulated gasoline to comply with the RFG mandate in certain locations.  The concentration of MTBE in Flint Hills' reformulated gasoline varied as necessary to meet, not exceed, the oxygen requirement.

38.     Flint Hills denies any allegations that Flint Hills' decision to use MTBE as an oxygenate was based exclusively on the cost of MTBE as compared to alternative oxygenates.

39.     Flint Hills denies that it was feasible to market and sell RFG with ethanol instead of MTBE in all markets in the United States and states that, in certain markets, it was feasible to market and sell only RFG with MTBE.

40.     Flint Hills denies that the use of MTBE in reformulated gasoline failed to contribute to better air quality.

### C.     Allegations as to MTBE Contamination of Groundwater

41.     Flint Hills lacks information sufficient to admit or deny any allegations concerning the existence or levels of MTBE detected in any of Plaintiffs' wells or water sources and therefore denies same.

42.     Flint Hills lacks information sufficient to admit or deny any allegations concerning whether the MTBE allegedly detected in Plaintiffs' wells or water sources has affected the taste or odor of such water and therefore denies same.

43.     Flint Hills lacks information sufficient to admit or deny any allegations concerning whether leaking underground storage tanks (USTs) and other gasoline discharges

were a known threat to groundwater in the geographic areas relevant to Plaintiffs' Complaints and therefore denies the same.

44.     Flint Hills admits that the distribution systems used for shipping, storing, pumping, and using gasoline can occasionally involve leaks and releases.

45.     Flint Hills denies any allegation that it had any specific knowledge of any gasoline spills or leaks from sources other than its own facilities and/or equipment and other than what was publicly known through the news media or other public sources of information, which was as available to Plaintiffs and to governmental regulators as it was to Flint Hills.

46.     Flint Hills admits that the presence of MTBE in groundwater has been the subject of various studies and reports by various government agencies, including the United States Geological Survey and the United States Environmental Protection Agency.  Such studies and reports speak for themselves.

47.     Flint Hills denies any allegations that at any time relevant to this litigation, there was any "national crisis" involving gasoline leaks or releases.

48.     Flint Hills denies any allegations that small leaks of gasoline constituted any threat of MTBE contamination to any of Plaintiffs' wells or water sources.

49.     Flint Hills lacks information sufficient to admit or deny any allegations that rainwater caused MTBE contamination of any of Plaintiffs' wells or water sources and therefore denies the same.

50.     Flint Hills denies any allegation that it knew or should have known of any potential MTBE contamination to Plaintiffs' wells or water sources from rainwater or from any specific instances or general patterns of gasoline leaks or releases.

51.     Flint Hills denies any allegations that any facilities or equipment that it owns or controls is located near Plaintiffs' wells or water sources and further denies any leak or release from any facilities or equipment that it owns or controls caused any MTBE contamination of Plaintiffs' wells or water sources.

52.     Flint Hills denies any allegations that MTBE contamination of groundwater used by Plaintiffs was either inevitable and foreseeable to Flint Hills.

**D.     Allegations as to Flint Hills' Knowledge of MTBE's Characteristics**

53.     Flint Hills denies any allegations that it knew of any instances of MTBE contamination of groundwater other than those of which it became aware of through the news media or through monitoring and testing of its own facilities and equipment as required pursuant to applicable federal and state laws and regulations.

54.     Flint Hills denies any allegation that it was required or had any duty to perform ingestion studies of the effects of MTBE.

55.     Flint Hills denies any allegations that it had a duty to inform Plaintiffs concerning the impact of MTBE on the environment and therefore denies any allegations concerning same.

56.     Flint Hills lacks information sufficient to admit or deny the allegations concerning the preparation, presentation and contents of the 1986 report of Peter Garrett and Marcel Moreau of the Maine Department of Environmental Protection  (the "Garrett Report") identified in Plaintiffs' complaints and therefore denies any allegations concerning the Garrett Report.

57.     Flint Hills lacks information sufficient to admit or deny the allegations that the Garrett Report was widely circulated throughout the oil industry before it was published and therefore denies the same.

58.    Flint Hills denies any allegations that it conspired, coordinated or worked in any way to impact the findings or credibility of the Garrett Report or in any other way communicated with other members of the refining industry concerning such Report.

59.    Flint Hills denies that it ever saw or had possession of or access to the various internal documents of other defendants referred to in Plaintiffs' Complaints.

60.    Flint Hills lacks information sufficient to admit or deny any allegations concerning what specific environmental or health studies had been undertaken by any person or entity prior to the time it began to add MTBE to gasoline and therefore denies any allegations concerning same.  Flint Hills denies any allegations that it had reason to know that MTBE was not appropriate for use as a gasoline additive at the time it began using MTBE.

61.    Flint Hills denies any allegations that it failed to perform any toxicological tests on chemicals used in its products that would have been required by existing and applicable law.

62.    Flint Hills denies any allegations that it attempted to convince the EPA or any other entity, agency or person that health testing of MTBE was not needed or required.

**E.    Allegations as to Trade Group Participation**

63.    Flint Hills admits that the American Petroleum Institute ("API") is a trade association representing certain members of the domestic petroleum industry in a broad range of topics.

64.    Flint Hills denies that it is or ever has been represented by or a member of the API.  Flint Hills further denies that it was ever a member of the Toxicology Committee, the MTBE Committee or any other API committee dealing with MTBE, as alleged in the Complaints.

65.    Flint Hills lacks information sufficient to admit or deny any allegations concerning any committees of the API or their publications, programs, studies or other business

and therefore denies all allegations regarding same.  Flint Hills further states that the contents of any such publications, programs or studies speak for themselves and no response is required.

66.     Flint Hills denies any allegations that the Oxygenated Fuels Association ("OFA") is an agent of Flint Hills or that Flint Hills is or ever has been a member of or represented by the OFA.

67.     Flint Hills lacks information sufficient to admit or deny any allegations concerning any committees of the OFA or their publications, programs, studies or other business and therefore denies all allegations regarding same.  Flint Hills further states that the contents of any such publications, programs or studies speak for themselves and no response is required.

68.     Flint Hills denies any allegation that it participated in any trade group or industry association, or any committee or task force thereof, that either concealed information concerning MTBE from the public, misrepresented any information concerning MTBE or otherwise engaged in any unlawful acts or omissions.

69.     Flint Hills lacks information sufficient to admit or deny allegations concerning acts or omissions of Arco Chemical, Shell, Exxon, Mobil, Chevron or other corporate entities and therefore denies the same.  Flint Hills denies that knowledge or information acquired by others is imputed to it.

### F.     Allegations that Flint Hills Conspired To or Did Mislead The EPA, Downstream Handlers, And The Public About MTBE

70.     Flint Hills denies any allegations that it ever formed or participated in any formal and informal task-forces or committees for the purpose of either: (1) concealing the threat of MTBE; (2) facilitating the use of MTBE without regard to its impact on any of the Plaintiffs; or (3) convincing the public and regulators that increasing concentrations of MTBE in gasoline was desirable.

71.     Flint Hills denies any allegations that any trade organization or committee of such organization in which it was a member created any informal or formal task forces or committees for any unlawful purpose.

72.     Flint Hills denies any allegation that it concealed information from the public concerning MTBE.

73.     Flint Hills denies any allegations that it manufactured and distributed MTBE with actual knowledge that MTBE would cause contamination in groundwater and production wells.

### G.     Allegations As to Testing MTBE Under The Toxic Substances Control Act (TSCA)

74.     Flint Hills admits that in 1986, the federal Interagency Testing Committee was established pursuant to the Toxic Substances Control Act.  The ITC's findings and recommendations are a matter of public record and speak for themselves and no response is required to any allegations that purport to characterize or quote such findings and recommendations.

75.     Flint Hills denies any allegations that it made any effort or took any action to convince the EPA or any other agency, person or entity that testing of MTBE was not needed.

76.     Flint Hills lacks information sufficient to admit or deny any allegations concerning the comments or actions of any other entity, person or party concerning the testing of MTBE and therefore denies the same.  Flint Hills denies any allegation that it explicitly or implicitly approved any such comments or actions concerning MTBE as alleged in Plaintiffs' complaints.

77.     Flint Hills denies any allegations that it has ever provided information to the EPA concerning MTBE that was misleading or false.

78.      Flint Hills denies any allegations that it ever represented to any agency, entity or person that MTBE was not a health risk.  Flint Hills states that at all times it used MTBE in its gasoline or sold MTBE, it disclosed MTBE's toxicological qualities as required by law.

79.      Flint Hills denies any allegations that it ever concealed from government regulators or the public any potential risk that MTBE may pose to groundwater.

80.      Flint Hills denies any allegation that on or around January 21, 1988, it signed a Testing Consent Order with EPA.

81.      Flint Hills denies any allegations that it has ever made any representation concerning the environmental benefits of MTBE or that it misled anyone in any way concerning MTBE.

82.      Flint Hills denies any allegations that it ever obstructed or avoided any health and environmental safety research concerning MTBE or its effect on groundwater.

83.      Flint Hills denies any allegation that it failed to comply with any applicable legal duties with respect to the use of MTBE.

84.      Flint Hills denies any allegation that it has continued to use MTBE in violation of any applicable law.

**H.      Allegations Concerning the Reformulated Gasoline ("RFG") Program
Adopted In the 1990 Amendments To The Clean Air Act**

85.      Flint Hills admits that prior to 1990, Congress was preparing to take action to address air quality issues in the United States.

86.      Flint Hills admits that Congress adopted the Reformulated Gasoline Program subsequent to and as part of the 1990 Amendments to the Clean Air Act.

87.      Flint Hills states that the mandates and requirements of the 1990 Amendments to the Clean Air Act are issues of law to which no response is required.

88.     Flint Hills admits that the EPA initiated the Oxygenated Fuel Program.  The requirements of such program are a matter of public record and speak for themselves, and no response is required.

89.     Flint Hills admits that it participated in the RegNeg process with respect to the RFG Program as part of the 1990 Amendments to the Clean Air Act.

90.     Flint Hills denies any allegations that MTBE was the only oxygenate it used.

91.     Flint Hills denies any allegations that it did not use ethanol as an oxygenate.

92.     Flint Hills denies any allegations that it directed or impacted the decision of which oxygenate would be used in any particular RFG market.

I.      **Allegations as to the Identify of Manufacturers of Gasoline Alleged to Contaminate Plaintiffs' Wells**

93.     Flint Hills admits that it engages in exchange relationships with refiners and other companies with respect to the sale, exchange and distribution of gasoline products.

94.     Flint Hills admits that gasoline from various refiners can be commingled during transmission by common carrier pipelines from refineries to distribution centers or in commingled, non-dedicated storage tanks.  Flint Hills denies that all gasoline is commingled and specifically denies that all or many refiners' gasoline are contained in a given tank of gasoline.

95.     Flint Hills admits that some service stations may obtain gasoline from different wholesalers.

96.     Flint Hills lacks information sufficient to admit or deny any allegations concerning Plaintiffs' ability to identify the manufacturers of the MTBE or gasoline that they complain have contaminated their wells or water sources and therefore denies any allegation concerning such ability.

J.  **Allegations as to Collective Liability, Concert Of Action and Civil Conspiracy**

97.     Flint Hills incorporates by reference its responses to the foregoing paragraphs.

98.     Flint Hills denies any allegation that it controls or has controlled a substantial share of the market for gasoline containing MTBE in any of the geographic areas identified in Plaintiffs' Complaints.

99.     Flint Hills denies any allegation that it is severally or jointly or severally responsible for any of the injuries complained of in Plaintiffs' Complaints.

100.    Flint Hills denies any allegation that collective liability attaches to it or any Defendant or that liability should be assigned according to percentage of the market for gasoline containing MTBE in any of the geographic areas at issue in any of Plaintiffs' Complaints.

101.    Flint Hills denies any and all allegations that concert of action liability attaches to it or any Defendants.

102.    Flint Hills denies any and all allegations that it participated in any common plan to commit, or did itself commit, the actions alleged in Plaintiffs' complaints.

103.    Flint Hills denies any and all allegations that it participated in a conspiracy to commit, or did itself commit, the actions alleged in Plaintiffs' Complaints.

### Strict Liability — Design Defect And/Or Defective Product
**(including Indiana Products Liability Act (IPLA),
Indiana Code § 34-20-2-1 et seq.)**

104.    Flint Hills incorporates by reference its responses to the foregoing paragraphs.

105.    Flint Hills denies any allegations that any gasoline containing MTBE that it manufactured or sold was defective and unreasonably dangerous for its intended use in violation of any applicable common law or statutory rights.

106.    Flint Hills denies any allegations that it failed to use reasonable care in the design, manufacture, marketing or sale of MTBE or gasoline containing MTBE.

107.   Flint Hills denies any allegations that it placed any unreasonably dangerous or defective products into the stream of commerce.

108.   Flint Hills denies that it engaged in any wrongful actions in connection with the manufacture, handling, control, sale, testing, labeling, use, warning, and/or instructing for use of gasoline containing MTBE that give rise to strict liability, including any specific acts of wrongdoing alleged in the Complaints.

109.   Flint Hills denies any allegations that any actions it has taken were the direct and proximate cause of any injuries to Plaintiffs as alleged in the Complaints

## Strict Liability — Failure To Warn

110.   Flint Hills incorporates by reference its responses to the foregoing paragraphs.

111.   Flint Hills denies any allegations that it failed to provide appropriate warnings concerning the existence, use, handling or characteristics of any MTBE in its gasoline products in violation of any applicable common law or statutory rights.

112.   Flint Hills denies any allegations that it owed any duty to Plaintiffs or to others to warn them concerning the existence, use, handling or characteristics of MTBE.

113.   Flint Hills denies that it engaged in any wrongful actions in connection with the manufacture, handling, control, sale, testing, labeling, use, warning, and/or instructing for use of gasoline containing MTBE that give rise to strict liability including any specific acts of wrongdoing alleged in the Complaints.

114.   Flint Hills denies any allegations that any of its conduct proximately caused any reasonably foreseeable injuries to Plaintiff.

## Negligence

115.   Flint Hills incorporates by reference its responses to the foregoing paragraphs.

116.    Flint Hills denies any allegations that it breached any duty to exercise due care in the manufacture, handling, control, disposal, sale, testing, labeling, use, warning, and/or instructing for use of gasoline containing MTBE.

117.    Flint Hills denies that it engaged in any wrongful actions in connection with the manufacture, handling, control, sale, testing, labeling, use, warning, and/or instructing for use of gasoline containing MTBE that might comprise negligence, including any specific acts of wrongdoing alleged in the Complaints.

118.    Flint Hills denies any allegations that any actions it has taken were the direct and proximate cause of any injuries to Plaintiffs as alleged in the Complaints.

**Public Nuisance**

119.    Flint Hills incorporates by reference its responses to the foregoing paragraphs.

120.    Flint Hills denies any allegations that it has manufactured, distributed, marketed and/or sold its products in any manner that created or participated in creating any public nuisance in any of the States in violation of any applicable common law or statutory rights.

121.    Flint Hills denies that any Plaintiffs, as owners of water production wells and providers of public drinking water, suffer injuries different in kind from the community at large or that Plaintiffs have suffered any "special injuries" as alleged in Plaintiffs' complaints.

122.    Flint Hills denies that it engaged in any wrongful actions in connection with the manufacture, handling, control, sale, testing, labeling, use, warning, and/or instructing for use of gasoline containing MTBE that might comprise public nuisance, including any specific acts of wrongdoing alleged in the Complaints.

123.    Flint Hills denies any and all allegations that it has engaged in any conduct that caused any Plaintiffs' injuries, whether common to the public at large or special injuries from actual and threatened contamination of the water sources supplying Plaintiffs' production wells.

**Private Nuisance**

124.    Flint Hills incorporates by reference its responses to the foregoing paragraphs.

125.    Flint Hills denies any allegations that it has manufactured, distributed, marketed and/or sold its products in any manner that created or participated in creating any private nuisance in any of the States in violation of any applicable common law or statutory rights.

126.    Flint Hills denies any allegations that it has engaged in any intentional and/or unreasonable, negligent or reckless conduct as alleged in Plaintiffs' complaints.

127.    Flint Hills denies any allegations that it caused MTBE contamination as alleged in Plaintiffs' complaints.

128.    Flint Hills denies any allegations that it has unreasonably interfered with the use, benefit and enjoyment of any Plaintiffs' properties.

129.    Flint Hills denies that it engaged in any wrongful actions in connection with the manufacture, handling, control, sale, testing, labeling, use, warning, and/or instructing for use of gasoline containing MTBE that might comprise private nuisance, including any specific acts of wrongdoing alleged in the Complaints.

130.    Flint Hills denies any and all allegations that it has engaged in any acts or omissions creating a nuisance, public or private in violation of any applicable common law or statutory rights.

131.    Flint Hills denies any allegations that any actions it has taken were the direct and proximate cause of any injuries to Plaintiffs as alleged in the Complaints.

**Trespass**

132.    Flint Hills incorporates by reference its responses to the foregoing paragraphs.

133.    Flint Hills lacks information sufficient to admit or deny any allegations concerning whether Plaintiffs are and were at all times material to the Complaints, in lawful

possession of the land, property, water, aquifers, and supply wells they owned and occupied and therefore denies the same.

134.    Flint Hills denies any and all allegations that it engaged in any actions and omissions as alleged in the Complaints that caused and/or constituted actual, imminent, substantial, and threatened unlawful entry, intrusion and trespass onto any of the Plaintiffs' land, property, water, aquifers, and supply wells.

135.    Flint Hills denies that it engaged in any wrongful actions in connection with the manufacture, handling, control, sale, testing, labeling, use, warning, and/or instructing for use of gasoline containing MTBE that might comprise trespass, including any specific acts of wrongdoing alleged in the Complaints.

136.    Flint Hills denies any allegations that Plaintiffs have been damaged by and are entitled to recover damages, remediation or other injunctive relief from Flint Hills as alleged in the Complaints.

137.    Flint Hills denies any allegations that any actions it has taken were the direct and proximate cause of any injuries to Plaintiffs as alleged in the Complaints.

## Conspiracy

138.    Flint Hills incorporates by reference its responses to the foregoing paragraphs.

139.    Flint Hills denies any allegations that it engaged in any conspiracy or engaged in any of the specific overt acts or omissions as alleged in Plaintiffs' Complaints.

140.    Plaintiffs' Complaints contain numerous allegations related to purported actions by various defendants to these cases.  These allegations never mention Flint Hills.  Flint Hills denies that it was ever a member of or participated in the activities of the Ad Hoc MTBE Group, OFA's MTBE Committee, API's Ground Water Technical Task Force, or Consumers for Fuel

Quality and further denies that it ever participated in any concerted action or conspired with any other entity to withhold information concerning MTBE or engage in any other wrongful act.

141.    Flint Hills denies any allegations that any actions it has taken were the direct and proximate cause of any injuries to Plaintiffs as alleged in the Complaints.

## Punitive Damages (Where Alleged)

142.    Flint Hills incorporates by reference its responses to the foregoing paragraphs.

143.    Flint Hills denies any and all allegations that it has engaged in any conduct that would support any claim for punitive damages, including but not limited to any of the specific acts alleged in Plaintiffs' complaints.

## Indiana Environmental Legal Action, Indiana Code § 13-30-9-2

144.    Flint Hills incorporates by reference its responses to the foregoing paragraphs.

145.    Flint Hills denies that it caused or contributed to the release of a hazardous substance and petroleum into the soil or groundwater within the meaning of Indiana Code § 13-30-9-2.

146.    Flint Hills denies that Plaintiffs are entitled to recover damages under Indiana Code § 13-30-9-2.

## Breach Of Warranty for Design Defect and/or Defective Product in Massachusetts

147.    Flint Hills incorporates by reference its responses to the foregoing paragraphs.

148.    Flint Hills denies that it made or was obligated to make any warranties to Plaintiffs, express or implied, concerning its gasoline products.

149.    Flint Hills denies that it engaged in any wrongful actions in connection with the manufacture, handling, control, sale, testing, labeling, use, warning, and/or instructing for use of gasoline containing MTBE that might comprise breach of warranty, including any specific acts of wrongdoing alleged in the Complaints.

20

150.     Flint Hills denies that it breached any warranties concerning its gasoline products and further denies that its gasoline products were not of merchantable quality and not fit, suitable and safe for their ordinary, intended and foreseeable use.

151.     Flint Hills denies any allegations that any actions it has taken were the direct and proximate cause of any injuries to Plaintiffs as alleged in the Complaints.

152.     Flint Hills denies that it engaged in any conduct that would support the award of treble damages under M.G.L.A. 40 § 39G.

### Breach Of Warranty: Failure to Warn in Massachusetts

153.     Flint Hills incorporates by reference its responses to the foregoing paragraphs.

154.     Flint Hills denies that it made or was obligated to make any warranties to Plaintiffs, express or implied, concerning its gasoline products.

155.     Flint Hills denies any allegations that it owed any duty in warranty to Plaintiffs or to others to warn them concerning the existence, use, handling or characteristics of MTBE.

156.     Flint Hills denies any allegations that it failed to provide appropriate warnings concerning the existence, use, handling or characteristics of any MTBE in its gasoline products in violation of any applicable common law or statutory rights.

157.     Flint Hills denies that it engaged in any wrongful actions in connection with the manufacture, handling, control, sale, testing, labeling, use, warning, and/or instructing for use of gasoline containing MTBE that might comprise breach of warranty, including any specific acts of wrongdoing alleged in the Complaints.

158.     Flint Hills denies that it breached any warranties concerning its gasoline products and further denies that any lack of warning or other information made its gasoline products not of merchantable quality and not fit, suitable and safe for their ordinary, intended and foreseeable use.

21

159.   Flint Hills denies any allegations that any actions it has taken were the direct and proximate cause of any injuries to Plaintiffs as alleged in the Complaints.

### Massachusetts Oil and Hazardous Material Release
### Prevention and Response Act, G.L.C. § 21E § 5(a)

160.   Flint Hills incorporates by reference its responses to the foregoing paragraphs.

161.   Flint Hills denies that it is legally responsible for the release or threat of release of oil or hazardous materials pursuant to G.L.C. 21E § 5(a).

162.   Flint Hills denies that it has caused damage to Plaintiffs' property in violation of G.L.C. 21E § 5(a).

163.   Flint Hills denies it is liable individually, jointly or severally for any violation of G.L.C. 21E § 5(a).

164.   Flint Hills denies that Plaintiffs are entitled to relief under G.L.A. § 7A.


### DEFENDANT FLINT HILLS' DEFENSES:

Flint Hills states that the claims of some or all of the Plaintiffs are barred or cannot be established, in whole or in part, because of the following.

### A.   Defenses Generally Applicable to All Cases

1.   Plaintiffs' complaints fail to state any claims upon which relief can be granted.

2.   Personal jurisdiction does not exist over Flint Hills on account of claims filed against it in the following states:  Indiana, Massachusetts and Missouri.  Flint Hills is not subject to the general jurisdiction of the courts of any of these states.  Flint Hills also is not subject to specific jurisdiction of the courts of any of these states as to these cases.  There is no evidence that any Plaintiff's harm arose out of Flint Hills' contacts with such states.  As to one or more of these states, Flint Hills's contacts are not sufficient to satisfy the requirements of due process.  Further, the Due Process Clauses of the Constitution of the United States and of the constitutions

of the states at issue preclude the exercise of specific jurisdiction based on market share liability or any other theory of collective liability that does not require proof that acts or omissions of Flint Hills were a cause in fact of Plaintiffs' harm.

3.      Plaintiffs have failed to join all necessary parties.

4.      Plaintiffs' claims are barred by applicable statutes of limitation and/or statutes or repose.

5.      Plaintiffs have not suffered any cognizable legal harm and have not incurred any present damages, there is no current case or controversy, and thus plaintiffs' claims are not ripe for adjudication and are not justiciable.

6.      Plaintiffs lack standing and/or capacity to sue.

7.      Plaintiffs' claims are barred by the doctrines of laches, unclean hands and estoppel.

8.      Plaintiffs' equitable claims are barred because Plaintiffs have an adequate remedy at law.

9.      Plaintiffs' claims are barred because of the contributory or comparative negligence or fault of Plaintiffs or of persons other than Flint Hills.

10.      Plaintiffs' claims are barred by their voluntary assumption of risk.

11.      Each purported cause of action asserted in the complaints is barred under the doctrine of primary assumption of risk in that the general public, by and through its elected representatives and their appointees, knew and understood the alleged risks of harm presented by the use of MTBE, if any, and elected nevertheless to proceed to require the use of oxygenates and to specifically permit the use of MTBE as an oxygenate.

12.     No act or omission of Flint Hills was a but-for cause, cause in fact, or proximate cause of any of Plaintiffs' injuries, nor a substantial factor in causing any of Plaintiffs' injuries.

13.     Plaintiffs' claims are barred because any injuries and damages incurred by Plaintiffs were the result of the intervening, negligent acts or omissions of third parties, or superseding events, factors, occurrences or conditions, which were in no way caused by Flint Hills and for which Flint Hills is not liable.

14.     Plaintiffs' claims are barred by Article VI, the Supremacy Clause, of the Constitution of the United States, and the doctrine of federal preemption.

15.     Plaintiffs' claims are barred, in whole or in part, because of the absolute privileges and immunities that apply by virtue of Defendants' rights to petition government as guaranteed by the First Amendment to the United States Constitution and as also guaranteed by similar provisions of various state constitutions, and by virtue of other similar privilege or immunity doctrines protecting the right to petition government, such privileges and immunities being recognized in the Noerr-Pennington doctrine.

16.     Plaintiffs' claims are barred by the absolute privilege or immunity that applies with respect to the testimony of witnesses in judicial, administrative, and congressional proceedings.

17.     Plaintiffs' claims are barred because of the qualified privilege or immunity provided to communications with respect to matters as to which the communicator has a legitimate commercial interest.

18.     Certain plaintiffs are public entities and/or authorities seeking compensation for damages to natural resources under their jurisdiction or purview.  These public entity/authority

plaintiffs have improperly delegated the power to prosecute these cases to private attorneys on a contingent fee basis.  Such delegation is against public policy.

19.     Market share, enterprise, concert of action and alternative liability theories are not recognized under applicable state law, either generally or in the context of these cases.

20.     Plaintiffs' collective liability claims are barred because Plaintiffs have failed to join all market participants or have failed to join a substantial share of market participants or both.

21.     The sources of gasoline with MTBE that have contaminated or that threaten to contaminate Plaintiffs' wells or groundwater are known or reasonably ascertainable, and do not include Flint Hills, which was not a source of any such gasoline or MTBE.

22.     Flint Hills did not delegate the formulation of its gasoline to any trade association or other entity, and no such body has promulgated an industry-wide standard for the formulation of gasoline.

23.     Plaintiffs' claims based on concert of action and conspiracy are barred because they have not identified the member of the alleged concerted action or conspiracy who caused them injury or because they have not named as defendants all members of the alleged concerted action or conspiracy or both.

24.     Plaintiffs' conspiracy claims are barred by the absence of any specific intent, conscious agreement, common design or purpose on the part of Flint Hills to join with anyone to injure Plaintiffs or others.

25.     Plaintiffs' claims are barred by their lack of reliance on any alleged representations or misrepresentations or concealments of Flint Hills.

26.     Plaintiffs' claims are barred because Flint Hills' use of MTBE complied with applicable federal, state and/or local specifications, regulations and law.

27.     Plaintiffs' claims are barred because federal, state and/or local authorities and agencies have mandated, directed, approved and/or ratified the alleged actions or omissions of Flint Hills.

28.     Each purported cause of action of the complaints as applied to Flint Hills is barred because the relief sought therein would pose unreasonable barriers and substantial burdens on interstate and/or international commerce in violation of the Commerce Clause of the United States Constitution and/or the North American Free Trade Agreement.

29.     The relief sought by Plaintiffs' complaints is within the particular expertise of and is being addressed by federal and state governments, and their relevant agencies, and thus this Court should decline to exercise jurisdiction over this matter pursuant to the doctrine of primary jurisdiction.

30.     Flint Hills is not liable for contamination where chemical compounds other than MTBE exceed state actions levels or standards, requiring cleanup regardless of the presence of MTBE (particularly, but not exclusively, where MTBE is present below state action levels or standards).

31.     Plaintiffs have failed to exhaust their administrative remedies.

32.     Any gasoline containing MTBE manufactured by Flint Hills was not unreasonably dangerous for its intended use.

33.     Plaintiffs' claims are barred because gasoline containing MTBE conformed to the state of the art, scientific and technological knowledge with respect to design, development,

manufacture, production and warnings at the time of sale and thereafter, and because gasoline containing MTBE was reasonably safe for its normal and foreseeable use.

34.     There were no feasible design alternatives that would have made Flint Hills' gasoline safer.

35.     Flint Hills did not act negligently, unreasonably, or at variance with the standards of care applicable within the gasoline industry in the design or sale of its gasoline.

36.     Any dangers posed by alleged design defects in the gasoline sold by Flint Hills were within the expectation of the consumers of that gasoline or were obvious.

37.     Plaintiffs' product liability claims are barred because Flint Hills' gasoline was misused after it left Flint Hills' control.

38.     Plaintiffs' product liability claims are barred because Flint Hills' gasoline was used in an unforeseeable and unreasonable manner.

39.     Plaintiffs' claims are barred because Flint Hills sold products in bulk to sophisticated users who were at least as knowledgeable as Flint Hills about whatever hazards pertained to the products sold.

40.     Plaintiffs' claims are barred because if the use of gasoline additives containing MTBE was hazardous (which is specifically denied), that hazard arose from the inherent nature of the product itself and the product was not therefore unreasonably dangerous.

41.     Plaintiffs are barred from seeking liability for design defect as any attempt to reexamine the mandatory cost-benefit analysis delegated to and performed by the EPA pursuant to its obligations under the Clean Air Act (CAA) would be impermissible given that Congress, through Section 211 of the CAA, authorized the EPA, and not the courts, to perform the cost-benefit analysis.

42.     Plaintiffs' claims are barred because the United States Environmental Protection Agency undertook the total management of health risks (which are specifically denied) associated with the use of oxygenated gasoline.  Among other things, EPA issued no warnings with respect to oxygenated gasoline.

43.     Flint Hills owes no duty to Plaintiffs because the harm they allege was not reasonably foreseeable and because to impose a duty on Flint Hills in the context of these claims would violate public policy.

44.     Flint Hills did not act negligently, unreasonably, or at variance with the standards of care applicable within the gasoline industry in warning or failing to warn of dangers or defects in or associated with its gasoline.

45.     Any dangers or defects in or associated with the gasoline sold by Flint Hills were known, obvious or within the expectation of the purchasers and handlers of that gasoline and therefore required no warning.  There was no material disparity of knowledge as between Flint Hills and purchasers and handlers.

46.     Plaintiffs' claims are barred because the warnings that Plaintiffs allege Flint Hills should have given were not reasonable, practicable, efficacious or necessary.

47.     Flint Hills had no duty to warn Plaintiffs of the defective conditions of other party's products, including but not limited to defects in any underground storage tanks.

48.     Plaintiffs' claims are barred by the learned intermediary doctrine.

49.     Plaintiffs have suffered no "special injury" and therefore lack standing to pursue claims for public nuisance.

50.     Plaintiffs' nuisance claims are barred because any discharge of gasoline containing MTBE that reached Plaintiffs' property was not the result of Flint Hills' conduct and was unintended.

51.     Plaintiffs' public and private nuisance claims are barred by operation of the doctrine of waiver.

52.     Plaintiffs' trespass claims are barred because Flint Hills did not know or have reason to know or expect that its product would reach Plaintiffs' property.

53.     Plaintiffs' trespass and nuisance claims are barred because Flint Hills did not own or control the gasoline containing MTBE at the time it allegedly entered Plaintiffs' property.

54.     Plaintiffs' trespass and nuisance claims are barred because their alleged harm did not arise out of Flint Hills' ownership or use of real property.

55.     To the extent Plaintiffs seek recovery for the presence of MTBE at concentrations less than the relevant state MCL or other action level, their claims are barred because they lack standing to sue or because they have suffered no compensable injury as a matter of law or both.

56.     The injuries and damages, if any, alleged by Plaintiffs are caused in whole or in part by the presence of compounds other than MTBE (e.g., the BTEX compounds).  Under Plaintiffs' own legal theories, Flint Hills is not liable for damages caused by compounds other than MTBE.  In the event liability is assessed against Flint Hills, such liability must be reduced where, and to the extent that, other compounds – about which Plaintiffs do not complain – contributed to the alleged injury.

57.     Plaintiffs' claims are barred to the extent Plaintiffs have released, settled, entered into accord and satisfaction or otherwise compromised their claims.

58.     Plaintiffs have failed to mitigate their damages.

59.     Certain of Plaintiffs' claims for damages are barred by the economic loss rule.

60.     Plaintiffs' claims are barred to the extent economic loss alleged in the Complaint has been or will be replaced or indemnified from collateral sources, including funds available in the various states on account of harm from leaking petroleum storage tanks.

61.     To the extent that plaintiffs have received or may receive the requested relief from a governmental agency, Flint Hills asserts its entitlement to an appropriate set-off or reduction of any judgment against it.

62.     Plaintiffs fail to state any claim for which punitive or exemplary damages can be awarded against Flint Hills.

63.     Plaintiffs' claims for punitive damages are barred, in whole or in part, by the Excessive Fines Clause of the Eighth Amendment and the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and by the comparable provisions of applicable state constitutions.

64.     Plaintiffs' claims for punitive damages are based on a standard that is unconstitutionally vague.  Any award of punitive damages would constitute an irrational and arbitrary deprivation of Flint Hills' property without due process of law, in violation of the Constitution of the United States and applicable by state constitutions.

65.     To the extent the laws of any state require Plaintiffs to demonstrate a prima facie case for punitive damages before they allege such damages, such requirements should be strictly enforced.

### B.     Defenses Applicable in Specific States

66.     Plaintiffs' claims against Flint Hills are barred by the applicable provisions of the product liability statute of repose found at 735 ILCS 5/13-213(b) because suit was filed more than twelve or ten years after the product was manufactured or was first delivered to a consumer.

67.     Plaintiffs' claims against Flint Hills are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to 735 ILCS 5/13-205, because the alleged injury, if any, accrued more than five years before the commencement of this lawsuit.

68.     Plaintiffs have failed to allege or show whose gasoine caused their alleged harm. Pursuant to 735 ILCS 5/2-621, Flint Hills should be dismissed from this action if and when Plaintiffs do so and it then becomes possible for Flint Hills to certify the correct identity of the manufacturer of the product that allegedly caused plaintiffs' injury.  *Saieva v. Budget Rent-A-Car of Rockford,* 227 Ill.App.3d 519, 525, 591 N.E.2d 507, 511 (1992).

69.     Under Illinois law, Flint Hills is not jointly and severally liable for any claims brought by Plaintiff because Flint Hills' liability, if any, is less than twenty-five percent of the total fault attributable to the Plaintiff, the defendants sued by the Plaintiff, and any third party defendant except the Plaintiff's employer.  735 ILCS 5/2-1117 & 1118.

70.     Flint Hills was under no duty to warn because Flint Hills did not know, nor should it have known, of the danger that caused Plaintiff's injury.  *Woodill v. Parke Davis & Co.,* 79 Ill.2d 26, 35, 402 N.E.2d 194 (1980).

71.     Flint Hills' product was not unreasonably dangerous according to either the consumer expectation test or the risk-utility test.  *Salerno v. Innovative Surveillance Technology, Inc.*, 402 Ill.App.3d 490, 932 N.E.2d 101, 109 (2010); *see also Lamkin v. Towner,* 138 Ill.2d 510, 528, 150 Ill.Dec. 562, 563 N.E.2d 449 (1990).

72.     Flint Hills' product was not a substantial factor in bringing about Plaintiff's alleged harm and thus it cannot be held liable to the Plaintiff.  *Thacker v. UNR Industries, Inc.,* 151 Ill.2d 343, 603 N.E.2d 449 (1992).

73.     The sole proximate cause of Plaintiff's alleged injuries are parties other than Flint Hills. *McDonnell v. McPartlin,* 192 Ill.2d 505, 516-517, 736 N.E.2d 1074 (2000).

74.     Plaintiff's alleged exposure to Flint Hills' product, if any, was *de minimis* and thus cannot be a basis for liability against Flint Hills.  *See Nolan v. Weil-McLain,* 233 Ill.2d 416, 910 N.E.2d 549 (2009); *citing Lohrmann v. Pittsburgh Corning Corp.,* 782 F.2d 1156 (4th Cir. 1986).

75.     Plaintiff's product liability design defect claims are barred under Indiana law because no alleged act or omission by Flint Hills gave rise to design defect liability pursuant to Indiana's Product Liability Act, as set forth in Ind. Code. § 34-20-2-1 et. seq.

76.     Plaintiff's product liability claims under Indiana law fail because Flint Hills had no duty to warn Plaintiff, as Plaintiff or others who should have been warned knew or should have known of any alleged danger associated with the use of the product.

77.     Plaintiff's product liability claims under Indiana law fail because the product is safe for reasonably expectable handling and consumption.  Ind. Code § 34-20-4-3.

78.     Plaintiff's product liability claims fail under Indiana law because Flint Hills manufactured its product in conformity with the generally recognized state of the art.

79.     Any duty to warn under Indiana law, if one existed at all, was discharged because the alleged defect, if any, was open and obvious to Plaintiffs and others using and handling the product.

80.     Plaintiff's product liability claims under Indiana law fail as a matter of law because Plaintiffs and others using and handling the product knew of the alleged defect, if any, were aware of the danger, if any, in the product, and nevertheless proceeded to make use of the product.  Ind. Code § 34-20-6-3.

81.     Under Indiana law, any alleged design defect in the product was not the proximate cause of the Plaintiff's alleged injuries.

82.     Under Indiana law, Plaintiff's alleged injuries, if any, resulted from the misuse of the product by the Plaintiff or other persons, and such misuse was not reasonably expected by Flint Hills at the time that it sold or otherwise conveyed the product to another party.  Ind. Code. § 34-20-6-4.

83.     Under Indiana law, Plaintiff's alleged injuries, if any, were caused or contributed to by Plaintiff and/or a non-party or non-parties to this lawsuit.  Ind. Code. § 34-20-8-1.

84.     Plaintiff's claims for public nuisance under Indiana law should be dismissed because at no time did any act or omission attributable to Flint Hills or its product interfere with the Plaintiff's comfortable enjoyment of life or property.  Ind. Code. § 32-30-6-6.

85.     Plaintiffs have failed to state a cause of action for public nuisance under Indiana law because Flint Hills' alleged conduct is not unreasonable upon comparison of its alleged conduct with Plaintiff's competing interests.

86.     Any damages allegedly suffered by Plaintiff in Indiana must be apportioned on an equitable basis, giving due regard to the Plaintiff's own fault, legal responsibility and other factors, and also giving regard to the fault of others who may or may not be parties to these actions.

87.     Plaintiffs' claims against Flints Hills are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to Mo. Ann. Stat. §§ 516.010, 516.100 and 516.120, because any alleged injury, if any, accrued more than five years before the commencement of this lawsuit.

88.     Plaintiffs' claims are barred or must be reduced, in whole or in part, based on the doctrine of comparative fault.  Mo. Ann. Stat. § 537.765.

89.     Flint Hills is not jointly and severally liable for any claims brought under the State of Missouri's statute regarding joint and several liability of defendants in tort actions because Flint Hills bears less than fifty-one percent of the fault alleged to have occurred by plaintiff.  Mo. Ann. Stat. § 537.067.

90.     Any duty to warn, if one existed at all, was discharged pursuant to Mo. Ann. Stat. § 537.760, because the alleged defects, if any, were open and obvious to Plaintiffs and Plaintiffs knew or should have known of the alleged danger.

91.     Plaintiff's product liability claims fail because Flint Hills' product was in conformity with generally recognized state of the art.  Mo. Ann. Stat. § 537.760.

92.     Plaintiffs' product liability claims fail because Flint Hills' products, at the time they were sold, were not in a defective condition or unreasonably dangerous when put to a reasonably anticipated use.  Mo. Ann. Stat. § 537.760.  *See also Campbell v. American Crane Corp.*, 60 F.3d 1329 (1995).

93.     Plaintiffs' product liability claims fail because any alleged defective condition of FHR's product, at the time it was sold, was not the proximate cause of plaintiff's injuries or harm.  Mo. Ann. Stat. § 537.760.  *See* also *Campbell v. American Crane Corp.*, 60 F.3d 1329 (1995).

94.     Plaintiffs' product liability claims fail because any injuries alleged in plaintiffs' Complaint resulted from use of Flint Hills' product that was not reasonably anticipated by Flint Hills at the time the product was sold or otherwise conveyed.  Mo. Ann. Stat. § 537.760.  *See* also *Campbell v. American Crane Corp.*, 60 F.3d 1329 (1995).

95.     Plaintiffs' Complaint fails to state a claim upon which relief can be granted because Flint Hills was not the "substantial factor" in causing the harm alleged by the plaintiff…the element of causation must be established as to each defendant sought to be held liable.  *Hagen v. Celotex Corp.*, 816 S.W.2d 667, 671-672 (Mo. 1991).

96.     Plaintiffs' punitive damages claims fail because plaintiffs are unable to show, by clear and convincing evidence, that Flint Hills' conduct constituted either…a wanton, willful or outrageous act, or reckless disregard for an act's consequences from which evil motive is inferred.  *Atkinson v. Corson*, 289 S.W.3d 269, 281 (Mo.App. W.D.2009).

97.     Plaintiffs' punitive damages recovery is barred, or must be reduced in whole or in part, because no award of punitive damages against Flint Hills may exceed the greater of: (1) Five hundred thousand dollars; or (2) Five times the net amount of the judgment awarded to the Plaintiffs against the defendant.  Mo. Ann. Stat. § 510.265.

98.     Plaintiffs' claims for public nuisance under Pennsylvania law are barred because at all relevant times, neither Flint Hills nor its products violated any orders or regulations adopted by the Pennsylvania Department of Environmental Resources.  35 Pa. Cons. Stat. Ann. § 691.503.

99.     Plaintiff's claim for public nuisance is barred under Massachusetts law because at all relevant times, neither Flint Hills nor its products violated any issued orders or regulations promulgated under M.G.L. c. 40, § 39A-E.

100.    Plaintiff's claim for public nuisance is barred because Plaintiff cannot establish that Flint Hills and/or its products are the proximate cause of Plaintiff's alleged injury.

101.    Plaintiff's claim for public nuisance is barred under Massachusetts law because Plaintiff cannot establish that the alleged public nuisance by Flint Hills "has caused some special

injury of a direct and substantial character, other than that which the general public shares."
*Flood v. Southland Corp.,* 1996 Mass. Super. LEXIS 621, at *4, n. 3. (Jan. 18. 1996) (citing *Stop & Shop Cos. v. Fisher*, 387 Mass. 889, 894 (1983)).

102.    Plaintiff's claims for punitive damages are barred, in whole or in part, because Plaintiff cannot establish that Flint Hills willfully or wantonly corrupted and/or polluted Plaintiff's property under M.G.L. c. 40 § 39G.

103.    Plaintiff's claims against Flint Hills are barred by the applicable provisions of the pertinent statute of limitations, including M.G.L. c. 260, § 2A and M.G.L. c. 106, §§ 2-314 and 2-318, because Plaintiff's alleged injuries, if any, accrued more than three years before the commencement of this lawsuit.  *See Corporate Claims Mgmt. v. Sid Harvey Indus.*, 2007 Mass. Super. LEXIS 143, at *2-3 (May 9, 2007).

104.    Plaintiff's claims are barred because it cannot establish that Flint Hills could reasonably have expected Plaintiff to be affected by its products.  M.G.L. c. 106, § 2-318.

105.    Plaintiff's breach of warranty claims are barred because no alleged act or omission by Flint Hills gave rise to a design defect liability pursuant to M.G.L. c. 106, § 2-316.

106.    Plaintiff's breach of warranty claims are barred under Massachusetts law because Plaintiff cannot establish that any alleged negligent conduct by Flint Hills establishes a "chain of causation" to the alleged product defect and Plaintiff's alleged injury.  *See Gynan v. Jeep Corp.*, 13 Mass. App. Ct. 504, 508 (1982).

107.    Plaintiff's claims against Flint Hills are barred under Massachusetts law because Plaintiff has failed to allege or establish the specific identity of the supplier(s) whose product caused Plaintiff's alleged harm.  *See Payton v. Abbott Labs*, 386 Mass. 540, 571 (1982); *Enrich*

*v. Windmere Corp.*, 416 Mass. 83, 86 (1993); *see also Mills v. Allegiance Healthcare Corp.*, 178 F. Supp. 2d 1, 8-9 (D. Mass. 2001).

108.    Plaintiff's breach of warranty and negligence claims are barred under Massachusetts law by the sophisticated user doctrine. *See Carrel v. National Cord & Braid Corp.*, 447 Mass. 431 (2006); *Hoffman v. Houghtan Chemical Corp.*, 434 Mass. 624 (2001).

109.    Plaintiff's breach of warranty and negligence claims are barred under Massachusetts law by the bulk supplier doctrine. *See Hoffman v. Houghton Chemical Corp.*, 434 Mass. 624 (2001).

110.    Plaintiff's breach of warranty claims are barred under Massachusetts law because the alleged danger presented by the use of Flint Hills' products was obvious. *See Uloth v. City Tank Corp.*, 376 Mass. 874, 881 (1978); *Fiorentino v. A.E. Staley Mfg. Co.*, 11 Mass. App. Ct. 428, 436 (1981).

111.    Plaintiff's breach of warranty and negligence claims are barred under Massachusetts law because Plaintiff cannot establish that Flint Hills' conduct was the "proximate" or "legal cause" of Plaintiff's alleged injury. *See Staelens v. Dobert*, 318 F.3d 77, 79 (1st Cir. 2003) (citing *Kent v. Commonwealth*, 437 Mass. 312, 320 (2002); *Lally v. Volkswagen Aktiengesellschaft*, 45 Mass. App. Ct. 317, 326 n. 14 (1998)).

112.    Plaintiff's negligence claim against Flint Hills is barred by the Plaintiff's own greater negligence. Alternatively, Plaintiff's recovery on its negligence claim against Flint Hills is diminished to the extent that Plaintiff's negligence was less than Flint Hills' alleged negligence. *See* M.G.L. c. 231, § 85; *Colter v. Barber-Greene Co.*, 403 Mass. 50, 62-63 (1988).

113.    To the extent that Plaintiff fails to establish its breach of warranty claims, Plaintiff's negligence claim against Flint Hills must also fail. *See Hayes v. Ariens Co.*, 391

Mass. 407, 410 (1984) ("A defendant [in a breach of warranty and negligence action] cannot be found to have been negligent without having breached the warranty of merchantability.").

114.    Plaintiff's claim for private nuisance is barred under Massachusetts law because Plaintiff cannot establish that Flint Hills and/or its products is the proximate cause of Plaintiff's alleged injury.

115.    Plaintiff's private nuisance claim is barred under Massachusetts law because Plaintiff cannot demonstrate that any alleged interference by Flint Hills was "intentional and unreasonable or results from conduct which is negligent, reckless or ultrahazardous." *See Morrissey v. New Eng. Deaconess Ass'n*, 458 Mass. 580, 589, n.15 (Mass. 2010).

116.    Plaintiff's private nuisance claim is barred under Massachusetts law because Plaintiff cannot establish that the harm allegedly suffered by Plaintiff occurred on private property owned by Plaintiff and/or on land outside of the public use. *See Leary v. City of Boston*, 20 Mass. App. Ct. 605, 609 (1985).

117.    Plaintiff's trespass claim is barred under Massachusetts law because Plaintiff cannot establish that: (1) Flint Hills was in actual or constructive possession of Plaintiff's property; and (2) that Flint Hills intentionally and illegally entered Plaintiff's property. *See New England Box Co. v. C&R Constr. Co.*, 313 Mass. 696, 697 (1943).

118.    Plaintiff's trespass claim is barred under Massachusetts law because Plaintiff cannot establish that Flint Hills made any voluntary act relative to Plaintiff's land and/or that Flint Hills negligently trespassed on Plaintiff's land. *See Robbins v. City of Worcester*, 2010 Mass. Super. LEXIS 297, at *7-8 (Oct. 20, 2010).

119.    Plaintiff's civil conspiracy claim is barred under Massachusetts law because Plaintiff cannot establish that Flint Hills knew of any concerted common action or plan to

commit a tortious act by the other named Defendants and/or that Flint Hills took affirmative

steps to encourage the achievement of the result of any common action or plan to commit a

tortious act by the other named Defendants.  *See JAT Construction, Inc. v. Saia*, 2007 Mass.

Super. LEXIS 196, at *5 (June 14, 2007) (citing *Kurker v. Hill*, 44 Mass. App. Ct. 184, 187

(1998)).

120.    Plaintiff's claims for property damage under the Massachusetts Oil & Hazardous

Material Release Prevention & Response Act, GL 21E § 5(a)(3)-(5), are barred under the

applicable statute of limitations under M.G.L. c. 21E, § 11A(4) because Plaintiff has known for

more than three years that Flint Hills' products allegedly injured Plaintiff's property.  *See Town

of Sturbridge v. Mobil Corp.*, 195 F. Supp. 2d 330, 333-34 (Mass. 2002).

121.    Plaintiff's claims against Flint Hills under the Massachusetts Oil & Hazardous

Material Release Prevention & Response Act, GL 21E § 5(a)(3)-(5), are barred under M.G.L. c.

21 E, § 5(a) - 5(b) because Plaintiff cannot establish that Flint Hills and/or its products "caused"

or were responsible for releasing hazardous materials and/or that Flint Hills' alleged release of

hazardous materials caused contamination and/or caused Plaintiff to incur response costs.  *See

Beaudette, Inc. v. J.P. Noonan Transp., Inc.*, 419 Mass. 311, 314-15 (1995); *Wellesley Hills

Realty Trust v. Mobil Oil Corp.*, 747 F. Supp. 93, 96-97 (D. Mass. 1990).

122.    Plaintiff's claims under the Massachusetts Oil & Hazardous Material Release

Prevention & Response Act, GL 21E § 5(a)(3)-(5), are barred pursuant to M.G.L. c. 21E and/or

M.G.L. c. 40 because Flint Hills is not a responsible liable party within the meaning of those

provisions for the alleged release of oil and/or hazardous materials on Plaintiff's property.

123.    Plaintiff's claims under the Massachusetts Oil & Hazardous Material Release

Prevention & Response Act, GL 21E § 5(a)(3)-(5), are barred pursuant to M.G.L. c. 21E because

any removal or remedial measures taken by Plaintiff are unnecessary and/or are not appropriate and are unrelated to any substance allegedly released by Flint Hills and/or its products, and Flint Hills is not liable therefore.

124.    Plaintiff's claims under the Massachusetts Oil & Hazardous Material Release Prevention & Response Act, GL 21E § 5(a)(3)-(5), are barred under M.G.L. c. 21E because any substances allegedly released by Flint Hills and/or its products are not "hazardous materials" within the meaning of applicable statutes and regulations, and thus, Flint Hills is not liable for any response costs therefore and/or any property damages allegedly sustained as a result thereof.

125.    Plaintiff is not entitled to duplicative damages under M.G.L. c. 21E, § 5.  *See Mailman's Steam Carpet Cleaning Corp. v. Lizotte*, 415 Mass. 865 (1993).

126.    To the extent that Flint Hills is liable for any costs or damages set forth under M.G.L. c. 21E, §5, and to the extent that Flint Hills establishes by a preponderance of the evidence that only a portion of such costs or damages is attributed to its products, Flint Hills is only required to pay for that portion of damages.  M.G.L. c. 21E, §5(b).

127.    Flint Hills is not liable under M.G.L. c. 21E, §5(a) because any release of oil or hazardous material was caused by: (1) the acts of third parties for whom Flint Hills is not responsible and Flint Hills took appropriate precautions against the foreseeable acts or omissions of any third parties; or (2) because the substance or amount thereof released or threatened to be released does not represent a long or short term danger to the public health, safety, welfare or the environment.  M.G.L. c. 21E, § 5(c)(3)-(4).

Flint Hills incorporates by reference any defenses raised in any other defendant's Master Answer as applicable to Flint Hills.  Flint Hills gives notice that it intends to rely upon any other

defense that may become available or appear during the discovery proceedings in this case and

hereby reserves its right to amend its Master Answer to assert any such defenses.

Dated:  January 31, 2011

**FLINT HILLS RESOURCES, LP**


By:  _____/s/_____
                              Counsel

Joseph C. Kearfott
George P. Sibley III
HUNTON & WILLIAMS LLP
951 East Byrd Street
Richmond, VA  23219
(804) 788-8200
(804) 788-8218  (fax)

Stuart A. Raphael
HUNTON & WILLIAMS LLP
1751 Pinnacle Drive, Ste. 1700
McLean, VA  22102
(703) 714-7400
(703) 918-4015  (fax)


**CERTIFICATE OF SERVICE**

I certify that on January 31, 2011 a true and correct copy of this **DEFENDANT FLINT**

**HILLS RESOURCES, LP'S FIFTH AMENDED MASTER ANSWER AND DEFENSES**

was electronically served on counsel of record by electronic filing via LexisNexis File & Serve

to counsel for Plaintiffs and Defendants in MDL No. 1358.


_____/s/_____

41