**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In Re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

Master File No. 1:00 – 1898
MDL 1358 (SAS)

---

**This document refers to:**

*All Cases in MDL 1358 in which the Shell Defendants*
*have been properly named and served, and for which*
*an answer is due.*

---

### THE SHELL DEFENDANTS' SEVENTH AMENDED
### MASTER ANSWER AND AFFIRMATIVE DEFENSES

Pursuant to the Master Answer agreement among the parties, CMO #6 and the Court's instructions during the January 13, 2005 status conference, defendants Equilon Enterprises LLC d/b/a Shell Oil Products US, Equiva Services LLC, Motiva Enterprises LLC, Shell Oil Company, Shell Oil Products Company LLC, Shell Petroleum, Inc., Shell Trading (US) Company, Star Enterprise, TMR Company (f/k/a Texaco Refining and Marketing Inc.), and Shell Chemical Yabucoa, Inc. (collectively, "Shell Defendants") answer the complaints in MDL 1358 cases for which an answer is required, and in which they have been properly named and served as follows:

**I.    STATEMENTS REGARDING SELECT ALLEGATIONS**

    **A.    Basic Defendant Information**

Defendant Equilon Enterprises LLC (d/b/a Shell Oil Products US) is a Delaware limited liability company with its principal place of business in Houston, Texas. Equilon operates or has operated Shell and Texaco branded service stations, terminals and refineries, among other things, in certain states. Equilon does not operate service stations, terminals or refineries that supply the following states or areas:  Connecticut, Florida, Louisiana, Massachusetts, New Hampshire, New

Jersey, metropolitan New York City (including Long Island), eastern Pennsylvania, Vermont, or Virginia. Equilon denies all allegations of the complaints to the extent they make allegations regarding time periods prior to January 15, 1998, the date of Equilon's formation.

Defendant Equiva Services LLC was a Delaware limited liability company with its principal place of business in Houston, Texas. Equiva provided services, including legal and environmental services, to Motiva Enterprises LLC and Equilon Enterprises LLC. Equiva Services did not directly refine, market, distribute or sell gasoline. Equiva denies all allegations of the complaints to the extent they make allegations regarding time periods prior to July 1, 1998, the date of Equiva's formation.

Defendant Motiva Enterprises LLC is a Delaware limited liability company with its principal place of business in Houston, Texas. Motiva operates or has operated Shell and Texaco branded service stations, terminals and refineries, among other things, in certain states. Motiva does not operate service stations, terminals or refineries that supply the following states or areas: California, Illinois, Indiana, Iowa, Kansas, Missouri, New Mexico, southwestern West Virginia or Wisconsin. Motiva denies all allegations of the complaints to the extent they make allegations regarding time periods prior to July 1, 1998, the date of Motiva's formation.

Star Enterprise is a Delaware limited liability company with its principal place of business in Houston, Texas. Star no longer engages in active operations. Star denies all allegations of the complaints to the extent they make allegations regarding time periods prior to January 1, 1989, the date of Star's formation.

Defendant Shell Oil Company is a Delaware corporation with its principal place of business in Houston, Texas. At this time, Shell Oil Company does not directly refine, market, distribute or sell gasoline.

Defendant Shell Oil Products (US) Company is a Delaware limited liability company with its principal place of business in Houston, Texas. At this time, Shell Oil Products (US) Company does not directly refine, market, distribute or sell gasoline.

Defendant Shell Petroleum Inc. is a Delaware corporation with its principal place of business in Houston, Texas. Shell Petroleum Inc. is a holding company and does not directly refine, market, distribute or sell gasoline.

Defendant Shell Trading (US) Company, formed August 13, 1998, is a Delaware corporation with its principal place of business in Houston, Texas. Shell Trading (US) Company does not refine, distribute or sell gasoline at retail. Shell Trading (US) Company denies all allegations of the complaints to the extent they make allegations regarding time periods prior to August 13, 1998, the date of its formation.

Defendant TMR Company, f/k/a Texaco Refining and Marketing Inc., is a Delaware corporation with its principal place of business in Houston, Texas. TMR was formed on December 28, 1989. On December 31, 2002, TRME Company, f/k/a Texaco Refining and Marketing (East) Inc., was merged into TMR. TMR no longer engages in active operations. TMR denies all allegations of the complaints to the extent they make allegations regarding time periods prior to December 28, 1989, the date of its formation.

Defendant Shell Chemical Yabucoa Inc. is a Puerto Rico corporation with its principal place of business in Yabucoa, Puerto Rico. Shell Chemical Yabucoa Inc. was formed on October 15, 2001. Shell Chemical Yabucoa Inc. owned and operated a refinery located in Yabucoa, Puerto Rico. Shell Chemical Yabucoa Inc. denies all allegations of the complaints to the extent they make allegations regarding time periods prior to October 15, 2001, the date of its formation.

**B.    Allegations Regarding Production of MTBE or TBA**

The Shell Defendants state that Motiva Enterprises LLC produced MTBE at Norco, Louisiana, and Convent, Louisiana.  Motiva also produced MTBE at a refinery in Delaware City, Delaware, that was sold in 2004.  Equilon Enterprises LLC did not produce MTBE.  Motiva and/or its predecessors added MTBE to gasoline at a number of its refineries at various times, including Convent, Louisiana, Norco, Louisiana, Delaware City, Delaware, and Port Arthur, Texas.  Equilon added MTBE to gasoline at a number of its refineries at various times, including Bakersfield, California, Martinez, California, Los Angeles, California, El Dorado, Kansas, and Wood River, Illinois.  Deer Park Refining L.P., a joint venture of affiliates of Shell Oil Company and PMI Norteamerica, added MTBE to gasoline at its refinery in Deer Park, Texas.  Shell Oil Company added MTBE to gasoline at refineries it formerly operated at Wilmington, California, and Odessa, Texas.

**C.    Allegations Regarding Properties and Behavior of MTBE**

The Shell Defendants admit that MTBE is an aliphatic ether that does not occur naturally. The Shell Defendants admit that there are various methods for the production of MTBE and that one method of production is from methanol and isobutylene.

The Shell Defendants state that solubility and mobility are relative properties and that while MTBE and other ethers may be more soluble and mobile in water than certain gasoline components, such as the BTEX compounds, they are less soluble and mobile in water than other components sometimes blended into gasoline, such as ethanol.  The Shell Defendants further state that MTBE's behavior in the environment -- and its behavior relative to other gasoline constituents -- is dependent on a variety of factors, including the nature or method of its release, the geological setting, and environmental and microbial factors.

The Shell Defendants state that while under certain conditions MTBE may biodegrade less readily than some other components of gasoline, MTBE has been found to naturally attenuate and biodegrade.

**D.    Allegations Regarding Properties and Behavior of TBA**

The Shell Defendants admit that TBA can be an intermediate product of MTBE biodegradation.

The Shell Defendants state that solubility and mobility are relative properties and that TBA is more soluble and mobile in water than certain gasoline components, such as the BTEX compounds. The Shell Defendants further state that TBA's behavior in the environment -- and its behavior relative to other components of gasoline -- is dependent on a variety of factors, including the nature or method of its release, the geological setting, and environmental and microbial factors.

**E.    Allegations Regarding Taste and Odor**

The Shell Defendants admit that individuals vary in their ability to detect the taste and odor of MTBE in water. The Shell Defendants state that responsible federal and state regulatory agencies have considered and adopted standards fully protective of MTBE taste and odor concerns.

**F.    Allegations Regarding Health Effects of MTBE**

Plaintiffs' allegations of dire human health concerns from MTBE are unsubstantiated. MTBE has been studied publicly by scientists and government agencies for more than 20 years. MTBE has never been reliably linked to cancer, and there is no consensus in the scientific field that it is carcinogenic; indeed, major world health organizations have long refused to list MTBE as a human carcinogen. The Shell Defendants state that responsible federal and state regulatory

agencies have considered and adopted standards fully protective of any alleged health concerns related to MTBE.

**G.**    **Allegations Regarding Storage and Handling of Gasoline**

The Shell Defendants admit that it is commonly known that gasoline is sometimes released into the environment from USTs and other means, and state that, according to reports, major oil companies have spent hundreds of millions of dollars or more over the past 30 years to eliminate or reduce leaks, and to improve leak detection.  The Shell Defendants state that they are aware that most adults understand that gasoline should be handled carefully and should not be spilled.

**H.**    **Allegations Regarding Knowledge of MTBE Contamination at Particular Locations In 1980s**

The complaints purport to describe various publicly reported incidents of MTBE contamination in New Jersey, New York and Maine in the 1980s.  The Shell Defendants state that it was widely known among government regulators in the 1980s that various incidents involving MTBE contamination – including the ones plaintiffs' complaints regularly list – had occurred.

The Shell Defendants (except Motiva, Equilon, Equiva, Star, TMR, Shell Trading (US) Company and Shell Chemical Yabucoa Inc.) admit that in the early 1980s they were aware of a contamination event in Rockaway, New Jersey.

The Shell Defendants state that the 1986 Garrett and Moreau paper described MTBE presence in certain wells in Maine.  The Shell Defendants (except Motiva, Equilon, Equiva, Star, TMR, Shell Trading (US) Company and Shell Chemical Yabucoa Inc.) state that information about MTBE was known to government and the scientific community, as the 1986 Garrett and Moreau paper illustrates.

I.   **Allegations Regarding Participation In Industry Associations or Lobbying
Activities**

The chemical properties of ethers like MTBE have been known in the public arena for
many years.  Plaintiffs' claim that Defendants somehow hid this information from them, or from
federal or state regulators, is baseless.  The Shell Defendants deny that they had any agreement
with another defendant to withhold from plaintiffs or government regulators information
concerning MTBE.

The Shell Defendants state that prior to 1990, Congress was preparing to take action to
address the Nation's smog problem.  The Shell Defendants (except Motiva, Equilon, Equiva,
Star, TMR, Shell Trading (US) Company and Shell Chemical Yabucoa Inc.) state that federal
government agencies were aware of MTBE's chemical characteristics in 1986 or earlier, and that
EPA held public meetings about MTBE beginning in 1986.  The Shell Defendants (except
Motiva, Equilon, Equiva, Star, TMR, Shell Trading (US) Company and Shell Chemical Yabucoa
Inc.) state that they, like the federal government, were aware of the Garrett Report in or about
1986.  The Shell Defendants (except Motiva, Equilon, Equiva, Star, TMR, Shell Trading (US)
Company and Shell Chemical Yabucoa Inc.) state that certain of them participated in an
American Petroleum Institute ("API") committee called the Toxicology Committee.  The Shell
Defendants (except Motiva, Equilon, Equiva, Star, TMR, Shell Trading (US) Company and Shell
Chemical Yabucoa Inc.) admit that a Testing Consent Order was entered with EPA in or about
1988 by various major oil companies.

In response to plaintiffs' allegation that Congress adopted the Reformulated Gasoline
(RFG) Program as part of the 1990 Amendments to the Clean Air Act "[a]s a result of
tremendous lobbying efforts by the industry, including Defendants," the Shell Defendants
(except Motiva, Equilon, Equiva, Star, Shell Trading (US) Company and Shell Chemical

Yabucoa Inc.) state that many major oil companies in fact actively resisted the RFG Program's requirement of oxygen content levels.

### J.   Allegations Regarding Requirements and Effects of the 1990 Clean Air Act Amendments

The Shell Defendants state that although the 1990 Clean Air Act Amendments ("CAAA") did not literally require use of MTBE as a gasoline additive, in practical terms the CAAA certainly did compel MTBE's use.   EPA and Congress knew that the oxygen requirements of the Act could not and would not be met without MTBE.

The Shell Defendants state that beginning in the late 1970s, following the U.S. EPA's mandate to reduce lead in gasoline, most U.S. refiners began evaluating oxygenates and octane enhancers such as ethanol and MTBE.  In 1990, with the amendments to the Clean Air Act, the federal government mandated an increase in the use of oxygenates (up to 2.7% oxygen content) to meet ambient carbon monoxide air requirements in winter gasoline in many cities (beginning in 1992).  In 1995, various oxygenates were extended by regulation to year-round use for severe, non-attainment ozone areas in the United States.  Reformulated gasolines used since that time have sometimes contained between 10% and 15% MTBE by volume, or up to 10% ethanol, to meet government mandates on oxygenate content.  The Shell Defendants no longer add MTBE to reformulated gasoline and have not done so since 2006.

The Shell Defendants deny that ethanol was available in sufficient supply to meet the demand for oxygenated gasoline in the RFG and oxyfuel regions when the Amendments requiring 2% oxygen content in year-round gasoline in areas using RFG became effective.

The Shell Defendants state that they complied with the legal requirements of the lead phase-out, the RFG Program and the Oxygenated Fuel Program.  The Shell Defendants further

state that several government agencies have concluded that use of MTBE in gasoline has contributed substantially to reducing air pollution.

**K.**    **Allegations Regarding MTBE-Related Actions Taken By State or Federal Governmental Bodies**

The Shell Defendants state that in 2000, EPA provided advance notice of its intent to initiate a rulemaking pursuant to TSCA to eliminate or limit the use of MTBE as a fuel additive. No such rulemaking was ever initiated. The Shell Defendants state that certain state legislatures or regulatory bodies have passed laws or adopted regulations to limit or eliminate the use of MTBE in gasoline. The details of such laws are a matter of public record.

**L.**    **Allegations Regarding Plaintiffs' Claimed Inability To Identify Relevant Sources of Gasoline Leaks Or Spills Affecting a Given Site**

Gasoline leaks, whether containing MTBE or not, are frequently traceable to a specific "point source," limited to the immediate geographic area of the source, and remediable.

The Shell Defendants deny that gasoline can never be traced from a contamination site to its terminal or refinery source.

**M.**    **Allegations Purporting To Quote Or Summarize Documents**

Numerous paragraphs in each complaint purport to quote from or summarize documents, statutes and regulations. These written materials speak for themselves. The documents, statutes and regulations referenced by plaintiffs, which are not attached to the complaints, are the best evidence of their content, and the Shell Defendants deny plaintiffs' attempts to summarize or characterize the contents of these written materials.

**N.**    **Allegations Regarding Defendants Unrelated To The Shell Defendants**

The Shell Defendants are without knowledge or information sufficient to form a belief as to the truth of the matters averred in the complaints regarding the specific statements, acts or omissions of defendants unrelated to the Shell Defendants.

**O.    Allegations Regarding Particular Claims or Counts**

In response to the portions of the complaints purporting to state particular common law or statutory claims, the Shell Defendants incorporate each paragraph of this Master Answer as if fully restated herein.  The Shell Defendants deny they are liable for any legal claim in any MDL 1358 complaint.

**P.    Allegations Regarding Claimed Injuries or Damages**

Some complaints make claims about contamination of specific wells or water resources, and others do not.  The Shell Defendants are without knowledge or information sufficient to form a belief as to the truth of the matters averred in the complaints regarding specific incidents of alleged contamination.  The Shell Defendants believe publicly available documents and discovery to be supplied by plaintiffs will demonstrate that many of the wells or water resources at issue have not been impacted by MTBE, or have been impacted only at levels well below state action standards for MTBE.

With regard to alleged damages, the allegations require no further answer.  To the extent that further answer is deemed necessary, the Shell Defendants admit that plaintiffs seek the relief mentioned in the complaints, but deny that plaintiffs are entitled to any relief.

**Q.    Plaintiffs' Demands for Jury Trials**

Plaintiffs in all actions have demanded a trial by jury of all claims asserted in the complaints.  These jury demands require no answer.  To the extent any answer is deemed necessary, the Shell Defendants admit that the plaintiffs demand jury trials, but deny that they are entitled to them on some or all of their claims.

**R.     Plaintiffs' Allegations of Intentional, Willful, Deliberate, or Negligent Acts**

The Shell Defendants deny that they intentionally, willfully, deliberately, or negligently committed any acts that caused or foreseeably could have caused harm to plaintiffs or any other party.

**S.     Plaintiffs' Allegations of Representational Standing**

Certain California plaintiffs have alleged a right to bring an action in a representative capacity.  By orders dated June 9 and 22, 2005, the Court either struck all such allegations or confirmed that such allegations have been disavowed by the plaintiff.  On the basis of these Court orders, the Shell Defendants decline to answer these allegations.  To the extent any answer is deemed necessary, the Shell Defendants deny that any plaintiff has standing to bring claims in a representative capacity.

**T.     Certain Plaintiffs' Allegations of Ownership of Groundwater Resources**

To the extent that plaintiffs allege that they own or have the authority to protect groundwater, groundwater resources, water resources, water supplies, water rights, or drinking water wells, or any other right in and to water or groundwater, the Shell Defendants deny these allegations and deny that these plaintiffs have standing to bring any claim based on allegations of property damage on behalf of themselves or any other person or entity.

**U.     Regulatory Powers of Other Agencies**

Certain California plaintiffs allege that they are entitled to assert claims to protect groundwater resources or the environment without regard to any impact on water supply wells owned or operated by them.  The Shell Defendants deny that these plaintiffs possess any such right.  The Shell Defendants further allege that, pursuant to statutes duly enacted by the California legislature, state agencies that are not parties to these lawsuits have been delegated the power and authority to (1) determine what maximum levels of contaminants, including MTBE

and/or TBA, are permissible in potable water distributed in California and (2) manage activities to investigate, delineate, remediate and cleanup actual or suspected MTBE and/or TBA contamination, including determining when sufficient cleanup has been achieved.

### V.    California Civil Code Section 1882 Claims

Certain California plaintiffs have alleged causes of action and/or prayers for treble damages and attorneys' fees based on California Civil Code § 1882 et seq. By order dated May 31, 2005, the Court dismissed and struck these allegations from the complaints. On the basis of the Court order, the Shell Defendants decline to answer these allegations. To the extent any answer is deemed necessary, the Shell Defendants deny that any plaintiff is entitled to recovery under California Civil Code § 1882 et seq.

### W.    Response To TSCA Allegations

The Shell Defendants generally deny that they have violated TSCA. TSCA does not require submission of the sort of data that plaintiffs allege the Shell Defendants should have submitted to EPA regarding incidences of releases of gasoline or the occurrence of MTBE. To the contrary, EPA has on several occasions issued guidelines that define the types of information that must be submitted under TSCA. See, e.g., 68 Fed. Reg. 33129 (June 3, 2003). The Shell Companies regularly submit information and data about releases of gasoline to the proper authorities. EPA's 2000 Advance Notice of Proposed Rulemaking placed no legal obligation of disclosure on the Shell Defendants. Moreover, an Advance Notice of Proposed Rulemaking is not a rule promulgated under TSCA and therefore cannot provide the basis for a TSCA citizen suit.

Even if information about gasoline releases or the occurrence of MTBE were within the scope of TSCA, there could be no violation for failure to submit such information because EPA already has extensive information on those topics, and under EPA guidelines there is no need to

report information to EPA under TSCA when EPA already is aware of essentially the same information. EPA is well-informed about releases from service stations and the occurrence of MTBE. EPA has a special department, the Office of Underground Storage Tanks, which gathers and publishes information about the extent of releases of gasoline and the occurrence of MTBE. Likewise, EPA receives voluminous data on those subjects from other federal and state agencies.

The Shell Defendants further deny that plaintiffs have complied with the statutory requirements for filing a citizen suit under TSCA.

### X.   Certain Plaintiffs' Allegations of Injury to Natural Resources

Certain plaintiffs' complaints contain allegations of damage to natural resources and seek compensation and other relief as the alleged trustee and/or owner of those natural resources. The Shell Defendants admit that groundwater, surface waters, wetlands and other ecological resources exist within the States and Commonwealth at issue in MDL 1358 ("MDL states"); admits that some of those resources are privately owned and some are not; admits that some natural resources may and do provide commercial, industrial, recreational, and other services to the people of the MDL states and to the economies of the MDL states.

The Shell Defendants further admit that the police power of certain Plaintiffs extends to the protection and conservation of certain natural resources which are not the private property of any person or entity; admits that by a longstanding legal fiction this proposition is sometimes inexactly expressed by saying that a State is the owner or trustee of natural resources for the benefit of its people or citizens; admits that certain governmental agencies have limited regulatory authority with respect to natural resources within an MDL state as provided by law.

## II.   GENERAL DENIAL OF REMAINING ALLEGATIONS

The Shell Defendants deny the remaining allegations in the complaints in MDL 1358 cases for which an answer is presently required, and in which they have been properly named and served.

## III.   RESERVATION OF RIGHT TO AMEND

The Shell Defendants reserve the right to amend this Master Answer.

## IV.   AFFIRMATIVE DEFENSES APPLICABLE TO ALL CASES

For their separate defenses to the complaints in MDL 1358 cases for which an answer is presently required, and in which they have been properly named and served, the Shell Defendants state as follows:

1.     Plaintiffs' claims are barred in whole or in part by the doctrine of federal preemption.

2.     At all relevant times, the Shell Defendants' actions and products complied with and were undertaken pursuant to applicable federal, state, and local laws, rules, regulations and specifications.

3.     Plaintiffs' claims are barred in whole or in part because federal, state and/or local authorities and agencies have mandated, directed, approved and/or ratified the alleged actions or omissions of the Shell Defendants.

4.     All acts and conduct of the Shell Defendants, as alleged in the complaints, conformed to and were pursuant to statutes, government regulations and industry standards, and were based upon the state of knowledge existing at all material times alleged in the complaints.

5.     The relief sought by plaintiffs' complaints is, in whole or in part, within the particular expertise of and is being addressed by federal and state governments, and their

relevant agencies, and thus this Court should decline to exercise jurisdiction over this matter pursuant to the doctrine of primary jurisdiction.

      6.     Plaintiffs have failed to exhaust their administrative remedies.

      7.     Plaintiffs have a plain, common, adequate and speedy remedy at law.  The equitable causes of action alleged in the complaints are thus barred.

      8.     Plaintiffs are barred from seeking strict liability for design defect as any attempt to reexamine the mandatory cost-benefit analysis delegated to and performed by the EPA pursuant to its obligations under the Clean Air Act (CAA) would be impermissible given that Congress, through Section 211 of the CAA, authorized the EPA, and not the courts, to perform the cost-benefit analysis.

      9.     If it is determined that plaintiffs or anyone on whose behalf plaintiffs are allegedly suing, was injured, as set forth in the complaints, which the Shell Defendants deny, the Shell Defendants allege that such hardship is outweighed by the convenience and public service rendered by the Shell Defendants' actions.

      10.     Each purported cause of action asserted in the complaints is barred under the doctrine of primary assumption of risk in that the general public, by and through its elected representatives and their appointees, knew and understood the alleged risks of harm presented by the use of MTBE, if any, and elected nevertheless to proceed to require the use of gasoline oxygenates and to specifically permit the use of MTBE as a gasoline oxygenate.

      11.     To the extent that plaintiffs have received or may receive the requested relief from a governmental agency, the Shell Defendants assert their entitlement to an appropriate set-off or reduction of any judgment against it.

12.     The appropriate forum for plaintiffs' claims is an administrative agency, and therefore all proceedings before this Court should be stayed pending administrative resolution of the issues.

13.     The claims set forth in the complaints fail, in whole or in part, based on the doctrine of election of remedies.

14.     Each purported cause of action of the complaints as applied to the Shell Defendants is barred because the relief sought therein would pose unreasonable barriers and substantial burdens on interstate and/or international commerce in violation of the Commerce Clause of the United States Constitution and/or the North American Free Trade Agreement.

15.     The complaints fail to state a claim upon which relief may be granted and should, therefore, be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

16.     Because plaintiffs have not suffered any cognizable harm and have not incurred any present damages, there is no current case or controversy and thus, plaintiffs' claims are not ripe for adjudication.

17.     Plaintiffs suffered no losses or injuries that were proximately caused by the Shell Defendants.

18.     The Shell Defendants' conduct was not the cause in fact of any injuries alleged by plaintiffs.

19.     Plaintiffs have failed to state a cause of action for nuisance because they have neither alleged nor suffered any particularized injury.

20.     The alleged injuries and damages, if any, suffered as a result of conduct legally attributable to the Shell Defendants is *de minimis* and therefore any injunction would pose a disproportionate hardship on the Shell Defendants, as well as on the public, in comparison

to the injury and or damages allegedly suffered by plaintiffs.   Accordingly, plaintiffs are not entitled to injunctive relief as to the Shell Defendants as a matter of law.

21.     Plaintiffs do not have a legally cognizable injury unless or until the alleged MTBE contamination exceeds state action levels.

22.     Plaintiffs may not seek attorneys' fees as an element of relief.

23.     Plaintiffs have failed to properly present any claim for attorneys' fees.

24.     Because plaintiffs have sued multiple parties, under multiple causes of action, with divisible damages, any claim for attorneys' fees must be proportioned between same.

25.     The claims set forth in the complaints are barred, in whole or in part, by the mootness doctrine.

26.     The complaints and each purported cause of action are barred, in whole or in part, by the defense of laches.  Plaintiffs' unreasonable and inexcusable delay in filing these actions caused substantial prejudice to the Shell Defendants.

27.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations.

28.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of repose.

29.     Plaintiffs are estopped by their conduct from asserting any of the purported claims alleged against the Shell Defendants in the complaints.

30.     Plaintiffs have not investigated the cause of the alleged harm or attempted to identify the actual party or parties responsible for their alleged injuries.

31.     Plaintiffs cannot establish the required predicates for their theories of collective liability, and therefore their defendant-identification burden remains.  In the event that the defendant-identification burden were shifted in the future, the Shell Defendants deny that it contributed to the contamination at issue.

32.     Plaintiffs' claims are barred in whole or in part by the doctrine of waiver.

33.     Plaintiffs assumed the risk of all acts, injuries, and damages that plaintiffs now assert against the Shell Defendants.

34.     The Shell Defendants are entitled to total or partial indemnity from those individuals or entities who are responsible for plaintiffs' injuries or damages, if any, in an amount in direct proportion to their relative culpability.

35.     Plaintiffs lack the capacity to sue.

36.     Plaintiffs lack standing to sue.

37.     Plaintiffs' claim is barred because the Shell Defendants' conduct caused no physical impact to plaintiffs' property.

38.     There is a defect or misjoinder of parties, in that plaintiffs have failed to join indispensable or necessary parties.

39.     Plaintiffs have failed to name the party or parties responsible for the alleged harm.

40.     The claims set forth in the complaints fail, in whole or in part, because of the failure to identify which defendant, if any, proximately caused the alleged harm.

41.     Plaintiffs' claimed injuries were caused in whole or in part by others, whose actions were not controlled by or related to the Shell Defendants.  Such actions are the

superseding, supervening and/or intervening cause of plaintiffs' injuries and therefore plaintiffs may not recover from the Shell Defendants as a matter of law.

42.     Plaintiffs' claims must be dismissed because they have failed to identify the particular defendant that is responsible for the harms alleged by plaintiffs.

43.     Any gasoline product sold or distributed for resale by the Shell Defendants was properly designed, formulated, prepared and otherwise not defective in any respect.

44.     To the extent required, the Shell Defendants provided proper warnings, information, and instructions relating to its products pursuant to generally recognized and prevailing standards in existence at the time.

45.     Plaintiffs have failed to allege that the Shell Defendants' alleged failure to provide an adequate warning proximately caused their injuries.

46.     Any gasoline product containing MTBE manufactured, sold, or distributed for resale by the Shell Defendants was not unreasonably dangerous when made.

47.     The plaintiffs' claims against the Shell Defendants are barred by the bulk supplier doctrine.

48.     The products at issue were sold to knowledgeable and sophisticated purchasers, and any injury alleged by plaintiffs was caused by such purchasers' failure to observe known standards of care.

49.     Any injury, damage or loss sustained by the plaintiffs was proximately caused by and/or contributed to by their own negligence, carelessness, and/or omissions.

50.     Plaintiffs' claims are barred pursuant to the learned intermediary doctrine.

51.     Plaintiffs' public nuisance claims should be dismissed because there were no acts or omissions by or on behalf of any of the defendants constituting an intentional, unreasonable interference with the plaintiffs' interest in the use and enjoyment of their property.

52.     Plaintiffs' public nuisance claims must be dismissed because plaintiffs have failed to allege "special damages," an absolute prerequisite to the assertion of a public nuisance claim.

53.     The Shell Defendants owed no duty of care to plaintiffs in connection with the matter alleged in the complaints.

54.     The complaints fail to plead the elements of negligence claims with sufficient clarity, specificity, and particularity.

55.     Plaintiffs' claims are barred to the extent the conduct complained of is protected by the First Amendment to the United States Constitution.

56.     The complaints and each cause of action are barred based on the Shell Defendants' valid exercise of the right of petition to the federal government, state government(s), and/or their respective deliberative bodies and agencies.

57.     Plaintiffs' claims are barred, in whole or in part, based on plaintiffs' actual or constructive notice of reported spills or releases, if any, from publicly available records.

58.     There is no legal relationship upon which any duty could possibly be owed by the Shell Defendants to plaintiffs, and therefore, plaintiffs' causes of action fail as a matter of law.

59.     The injuries and damages, if any, alleged by plaintiffs are caused in whole or in part by the presence of compounds other than MTBE (e.g., the BTEX compounds).  Under plaintiffs' own legal theories, the Shell Defendants are not liable for damages caused by

compounds other than MTBE.  In the event liability is assessed against the Shell Defendants, such liability must be reduced where, and to the extent that, other compounds – about which plaintiffs do not complain – contributed to the alleged injury.

60.     The Shell Defendants are not liable for contamination where chemical compounds other than MTBE exceed state actions levels or standards, requiring cleanup regardless of the presence of MTBE (particularly, but not exclusively, where MTBE is present below state action levels or standards).

61.     Any injury, damage or loss sustained by the plaintiffs in connection with the subject matter of this action was not reasonably foreseeable.

62.     If it is determined that plaintiffs or anyone on whose behalf plaintiffs are allegedly suing, was injured, as set forth in the complaints, which the Shell Defendants deny, any award of damages must be reduced in proportion to the percentage of fault attributable to the plaintiffs.

63.     If it is determined that plaintiffs or anyone on whose behalf plaintiffs are allegedly suing, was injured, as set forth in the complaints, which the Shell Defendants deny, any award of damages shall be reduced in proportion to the percentage of fault attributable to third parties (including but not limited to persons or entities responsible for gasoline leaks or spills).

64.     The injuries alleged in the complaints, if any, may be reasonably apportioned among the defendants, as each defendant's alleged acts and omissions, including the Shell Defendants', is divisible and distinct.  Therefore, no defendant is jointly and severally liable to plaintiffs for any claim alleged in the complaints.

65.     Plaintiffs have unreasonably failed to mitigate their damages, if any.

66.     To the extent that any party has settled or may settle in the future with plaintiffs, the Shell Defendants assert their entitlement to an appropriate credit or reduction of any judgment(s) against them.

67.     Plaintiffs' claims for punitive damages violate the provisions of the U.S. Constitution, including but not limited to those provisions requiring due process of law and prohibiting excessive fines.

68.     Plaintiffs are public entities and/or authorities seeking compensation for damages to natural resources under their jurisdiction or purview.  These public entity/authority plaintiffs have improperly delegated the power to prosecute these cases to private attorneys on a contingent fee basis.  Such delegation is against public policy.

69.     The Shell Defendants incorporate by reference any affirmative defense, whether general or specific to a specific State, alleged by other defendants in MDL 1358.

70.     The pleading of the defenses described above shall not be construed as an undertaking by the Shell Defendants of any burden which would otherwise be the responsibility of plaintiffs.

71.     Plaintiffs lack standing to bring a citizen suit under TSCA.

72.     The information plaintiffs claim that the Shell Defendants should have disclosed under TSCA is not reportable under the TSCA statute or under EPA's guidance interpreting TSCA.

73.     Plaintiffs have failed to comply with the jurisdictional prerequisites for bringing a claim under TSCA.

74.     Plaintiffs cannot demonstrate that EPA was unaware of information plaintiffs allege should have been disclosed under TSCA when plaintiffs' TSCA claim was brought.

75.     The damages sought by plaintiffs are wholly speculative and conjectural.

76.     Some or all of the injury or damages suffered by plaintiffs were the product of conduct for which the Shell Defendants cannot have liability to plaintiffs, since it is lawfully undertaken by the Shell Defendants and their predecessors in the exercise of their rights as owner(s) of real property.

77.     Plaintiffs have failed to state a claim for relief against the Shell Defendants under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601, et seq. ("CERCLA").

78.     The Shell Defendants are not liable parties under CERCLA as defined in 42 U.S.C. § 9607(a)(1)-(4).

79.     Plaintiffs' claims under CERCLA are barred by 42 U.S.C. § 9607(b)(1)-(2) because the alleged releases or threatened releases of hazardous substances, and alleged damages resulting therefrom, if any, were caused solely by acts of God and/or acts of war.

80.     Plaintiffs' claims under CERCLA are barred by 42 U.S.C. § 9607(b)(3)[.] because the alleged releases or threatened releases of hazardous substances, and alleged damages resulting therefrom, if any, were caused solely by acts or omissions of third parties.

81.     Plaintiffs' claims under CERCLA are barred and/or untimely under the applicable provisions of the pertinent statute of limitations, including, but not limited to, 42 U.S.C. § 9613(g).

82.     Plaintiffs' claims under CERCLA, in whole or in part, are subject to either the exclusive jurisdiction or the primary jurisdiction of the United States Environmental Protection Agency ("USEPA").

83.     To the extent that any or all of the defendants are found liable under CERCLA, joint and several liability is inappropriate as to the Shell Defendants because there are distinct harms or there is a reasonable basis for apportionment of the harms suffered.

84.     Plaintiffs' claims under CERCLA are barred, in whole or in part, because petroleum products, including gasoline containing MTBE, are excluded from the definition of "hazardous substances" under CERCLA.

85.     Plaintiffs' claims under CERCLA are barred, in whole or in part, because any past or future costs, if any, incurred by Plaintiffs in responding to an alleged release or threatened release of hazardous substances are inconsistent with the National Contingency Plan or otherwise not recoverable under CERCLA.

86.     Plaintiffs' claims under CERCLA are barred because Plaintiffs have failed to satisfy each and every condition precedent necessary to recover for past and/or future response costs under CERCLA.

87.     Plaintiffs have not incurred "clean-up and removal" costs or "response costs" as those terms are defined in the applicable statutes.

88.     Any costs allegedly incurred or to be incurred by Plaintiffs, if any, are unreasonable, duplicative, and not cost effective and, therefore, are not recoverable under CERCLA.

89.     Plaintiffs are unable to recover their alleged natural resource damages under CERCLA.

90.     Plaintiffs' claims under CERCLA for natural resource damages are barred, in whole or in part, because the alleged damages constitute irreversible and irretrievable commitments of natural resources.

91.     Without admitting any liability, if it is determined that the Shell Defendants engaged in any of the activities alleged by plaintiffs, such activities on the part of the Shell Defendants were *de minimis.*

92.     Plaintiffs' CERCLA claims are barred because Plaintiffs have failed to comply with the jurisdictional prerequisites for bringing claims under CERCLA.

93.     The Shell Defendants are not liable under CERCLA because Plaintiffs' claims are barred by the doctrines of estoppel, unclean hands, and/or laches.

94.     Plaintiffs' CERCLA claims are barred, in whole or in part, because the sites at issue are not listed on the NPL.

95.     Plaintiffs have failed to state a claim for relief against the Shell Defendants under the Resource Conservation and Recovery Act of 1976, as amended, 42 U.S.C. § 6901, et seq. ("RCRA").

96.     Plaintiffs' claims under RCRA are barred to the extent plaintiffs seek relief for conduct occurring or damages incurred prior to the effective date of RCRA.

97.     Plaintiffs' claims under RCRA are barred because MTBE and gasoline containing MTBE are not "solid wastes" and/or "hazardous wastes" under RCRA.

98.     Plaintiffs' RCRA claim fails because Plaintiffs failed to allege, and they cannot show, that the Shell Defendants have violated RCRA Subchapter III, if applicable.

99.     Plaintiffs' RCRA claim is barred because Plaintiffs have failed to comply with the jurisdictional prerequisites for bringing a claim under RCRA.

100.    The Shell Defendants reserve the right to assert additional defenses that may be pertinent to Plaintiffs' claims when the precise nature of said claims are ascertained through discovery and based on facts developed as this matter progresses.

## V.    ADDITIONAL DEFENSES APPLICABLE TO PARTICULAR STATES

For their separate defenses to the complaints in MDL 1358 cases from particular states (for which an answer is presently required, and in which the Shell Defendants have been properly named and served), the Shell Defendants state as follows:

## CONNECTICUT

1.    The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, Conn. Gen. Stat. Ann. §§ 2A, 52-577, 52-777a (West 2001).

2.    Plaintiffs' product liability claims are barred because the plaintiffs' alleged harm is outside the scope of allowable product liability claims pursuant to Connecticut's Product Liability Act, as set forth in Conn. Gen. Stat. Ann §§ 52-572 (m) and 52-572(n) (West 2001).

3.    Plaintiffs' failure to warn claims are barred in whole or in part because the alleged failure to provide adequate warnings for which plaintiffs seek redress does not give rise to liability within the ambit of the Connecticut Product Liability Act, as the plaintiffs' injuries did not arise by reason of any alleged violation of adequate warnings or instructions pursuant to Conn. Gen. Stat. Ann § 52-572(q) (West 2001).

4.    Plaintiffs' efforts to impose liability on the Shell Defendants without proof of causation violate the Due Process and other clauses of the federal and state constitutions.

**FLORIDA**

1.    The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, Fla. Stat. Ann. § 95.11 (West 2001).

2.    Plaintiffs' strict liability claims are barred in whole or in part by the Government Rules Defense as set forth in Fla. Stat. Ann. § 768.1256.

3.    Plaintiffs' strict liability claims are barred in whole or in part by the State-of-the Art Defense for products liability as set forth in Fla. Stat. Ann. § 768.1257.

4.    Plaintiffs' strict liability claims fail, in whole or in part, because Florida law only permits such claims when a product is used as intended.

5.    Plaintiffs' claims are barred, in whole or in part, by section 376.308(5), Florida Statutes, if they relate to any discharge or contamination eligible for restoration funding from the Inland Protection Trust Fund.

6.    Recovery is barred or must be reduced, in whole or in part, based on the doctrine of comparative negligence.

7.    Plaintiffs' claims fail, in whole or in part, based on the doctrine of *in pari delicto*.

8.    Plaintiffs' claims fail, in whole or in part, based on the doctrine of unjust enrichment.

9.    Plaintiffs' efforts to impose liability on the Shell Defendants without proof of causation violate the Due Process and other clauses of the federal and state constitutions.

**ILLINOIS**

      1.      The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, 735 ILCS 5/13-205.

      2.      Plaintiffs' recovery is barred, in whole or in part, due to their contributory fault, pursuant to 735 ILCS 5/2-1116.

      3.      Plaintiffs' efforts to impose liability on the Shell Defendants without proof of causation violate the Due Process and other clauses of the federal and state constitutions.

**INDIANA**

      1.      The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, Ind. Code. Ann. 34-20-3-1.

      2.      Plaintiffs' product liability design defect claims are barred, in whole or in part, because no alleged act or omission by the Shell Defendants gave rise to design defect liability pursuant to Indiana's Product Liability Act, as set forth in Ind. Code. Ann. 34-20-2-1.

      3.      Plaintiffs' product liability claims fail because the Shell Defendants had no duty to warn plaintiffs, as plaintiffs knew or should have known of the alleged danger.  Ind. Code. Ann. 34-20-6-1.

      4.      Plaintiffs' product liability claims fail because the Shell Defendants manufactured their products in conformity with generally recognized state of the art.  Ind. Code. Ann. 34-20-6-1.

      5.      Any duty to warn, if one existed at all, was discharged pursuant to Ind. Code. Ann. 34-20-6-1 and 34-20-6-3 because the alleged defects, if any, were open and obvious to plaintiffs.

6.     Plaintiffs voluntarily and unreasonably assumed the risk of injury, thereby relieving the Shell Defendants of liability. Ind. Code. Ann. 34-20-6-1 and 34-20-6-3.

7.     Any alleged design defect was not the proximate cause of the plaintiffs' injuries or harm, pursuant to Ind. Code. Ann. 34-20-6-1 (West 2001).

8.     Plaintiffs' alleged injuries, if any, resulted from the misuse of the product by the plaintiffs or other persons, and such misuse was not reasonably expected by the Shell Defendants at the time that they sold or otherwise conveyed the product to the other party. Ind. Code. Ann. 34-20-6-4.

9.     Plaintiffs' claims for public nuisance should be dismissed because at no time did any act or omission attributable to the Shell Defendants or their products interfere with the plaintiffs' comfortable enjoyment of life or property. Ind. Code. Ann. 34-19-1-1.

10.     Plaintiffs have failed to state a cause of action for public nuisance because the Shell Defendants' alleged conduct is not unreasonable upon comparison of its alleged conduct with plaintiffs' competing interests. Ind. Code. Ann. 34-19-1-1.

11.     Plaintiffs' recovery is barred by their contributory fault, which is greater than the fault of all persons whose fault may have proximately contributed to plaintiffs' damages. Ind. Code. Ann. § 34-51-2-6.

12.     Plaintiffs' claims under the Indiana Environmental Legal Action statute fail because the Shell Defendants did not "cause or contribute to the release" of gasoline.

13.     Plaintiffs' efforts to impose liability on the Shell Defendants without proof of causation violate the Due Process and other clauses of the federal and state constitutions.

**IOWA**

1.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, Iowa Code Ann. §§ 614.1(2) and 614.1(4).

2.     Plaintiffs' recovery is barred by their contributory fault, which is greater than the fault of all persons whose fault may have proximately contributed to plaintiffs' damages.  Iowa Stat. Ann. § 668.3.

3.     Recovery is barred or must be reduced, in whole or in part, based on the doctrine of comparative negligence.

4.     The Shell Defendants are not jointly and severally liable because they bear less than fifty percent of the total fault of all parties.  Iowa Stat. Ann. § 668.4.

5.     Plaintiffs assumed the risk of any alleged injury.

6.     The Shell Defendants' products "conformed to the state of the art in existence at the time." Iowa Stat. Ann. § 668.12(1).

7.     The Shell Defendants cannot be liable for failure to warn because the alleged "risks and risk-avoidance measures…should be obvious to, or generally known by, foreseeable product users." Iowa Stat. Ann. § 668.12(3).

8.     The Shell Defendants cannot be liable because "a product bearing or accompanied by a reasonable and visible warning or instruction that is reasonably safe for use if the warning or instruction is followed shall not be deemed defective or unreasonably dangerous on the basis of failure to warn or instruct." Iowa Stat. Ann. § 668.12(4).

9.     Plaintiffs' efforts to impose liability on the Shell Defendants without proof of causation violate the Due Process and other clauses of the federal and state constitutions.

**KANSAS**

1.      The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations and statutes of repose, including but not limited to, Kansas Stat. Ann. §§ 60-513, 60-3303.

2.      Plaintiffs' recovery is barred by their contributory fault, which is greater than the fault of all persons whose fault may have proximately contributed to plaintiffs' damages. Kansas Stat. Ann. § 60-258a.

3.      Recovery is barred or must be reduced, in whole or in part, based on the doctrine of comparative negligence.

4.      Recovery is barred because the Shell Defendants' products were, "at the time of manufacture, in compliance with legislative regulatory standards or administrative regulatory safety standards relating to design or performance...." Kansas Stat. Ann. § 60-3304.

5.      The Shell Defendants are not liable because they had no duty to warn, protect against or instruct "with regard to those safeguards, precautions and actions which a reasonable user or consumer of the product, with the training, experience, education and any special knowledge the user or consumer did, should or was required to possess, could and should have taken for such user or consumer or others, under all the facts and circumstances." Kansas Stat. Ann. § 60-3305(a).

6.      The Shell Defendants are not liable because they had no duty to warn "where the safeguards, precautions and actions would or should have been taken by a reasonable user or consumer of the product similarly situated exercising reasonable care, caution and procedure." Kansas Stat. Ann. § 60-3305(b).

7.      The Shell Defendants are not liable because they had no duty to warn, protect against or instruct "with regard to dangers, hazards or risks which are patent, open or

obvious and which should have been realized by a reasonable user or consumer of the product."
Kansas Stat. Ann. § 60-3305(c).

8.      Plaintiffs' efforts to impose liability on the Shell Defendants without proof
of causation violate the Due Process and other clauses of the federal and state constitutions.

**LOUISIANA**

1.      The complaints and each purported cause of action are barred by the
applicable provisions of the pertinent statutes of limitations, including but not limited to, LSA-
C.C. Art. 3492.

2.      The Shell Defendants are not liable because "[t]he product is not
dangerous to an extent beyond that which would be contemplated by the ordinary user or handler
of the product, with the ordinary knowledge common to the community as to the product's
characteristics." LSA-R.S. 9:2800.57.

3.      The Shell Defendants are not liable because "[t]he user or handler of the
product already knows or reasonably should be expected to know of the characteristic of the
product that may cause damage and the danger of such characteristic." LSA-R.S. 9:2800.57.

4.      The Shell Defendants are not liable because they "did not know and, in
light of then-existing reasonably available scientific and technological knowledge, could not
have known of the design characteristic that caused the damage or the danger of such
characteristic." LSA-R.S. 9:2800.59(1).

5.      The Shell Defendants are not liable because they "did not know and, in
light of then-existing reasonably available scientific and technological knowledge, could not
have known of the alternative design identified by the claimant under R.S. 9:2800.56(1)." LSA-
R.S. 9:2800.59(2).

6.     The Shell Defendants are not liable because "[t]he alternative design identified by the claimant under R.S. 9:2800.56(1) was not feasible, in light of then-existing reasonably available scientific and technological knowledge or then-existing economic practicality." LSA-R.S. 9:2800.59(3).

7.     Punitive damages are not authorized by the Louisiana Products Liability Act. LSA-R.S. 9:2800.53(5).

8.     Attorney's fees are not recoverable under the Louisiana Products Liability Act. LSA-R.S. 9:2800.53(5).

9.     Plaintiffs' efforts to impose liability on the Shell Defendants without proof of causation violate the Due Process and other clauses of the federal and state constitutions.

**MASSACHUSETTS**

1.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to Mass. Gen. Laws Ann. Ch. 260 § 2A.

2.     Plaintiffs' claims are barred because their negligence is greater than the alleged negligence of the Shell Defendants.  Mass. Gen. Laws Ann. Ch. 231 § 85.

3.     Plaintiffs' efforts to impose liability on the Shell Defendants without proof of causation violate the Due Process and other clauses of the federal and state constitutions.

**MISSOURI**

1.   The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to Mo. Ann. Stat. §§ 516.100, 516.120 and 516.010 (West).

2.   Plaintiffs' recovery is barred or must be reduced, in whole or in part, based on the doctrine of comparative fault.  Mo. Ann. Stat. § 537.765 (West).

3.    Any duty to warn, if one existed at all, was discharged pursuant to Mo. Ann. Stat. § 537.760 (West), because the alleged defects, if any, were open and obvious to plaintiffs.

4.    Plaintiffs' product liability claims fail because the Shell Defendants had no duty to warn plaintiffs, as plaintiffs knew or should have known of the alleged danger.  Mo. Ann. Stat. § 537.760 (West).

5.    Plaintiffs' product liability claims fail because the Shell Defendants' products were in conformity with generally recognized state of the art.  Mo. Ann. Stat. §§ 537.764 and 537.760  (West).

6.    Plaintiffs' product liability claims fail because the Shell Defendants' products, at the time they were sold, were not in a defective condition or unreasonably dangerous when put to a reasonably anticipated use.  Mo. Ann. Stat. § 537.760 (West).

7.    Any alleged defective condition of the Shell Defendants' products at the time they were sold was not the proximate cause of plaintiffs' injuries or harm.  Mo. Ann. Stat. § 537.760 (West).

8.    Plaintiffs' alleged injuries, if any, resulted from use of the product that was not reasonably anticipated by the Shell Defendants at the time that they sold or otherwise conveyed the product.  Mo. Ann. Stat. § 537.760 (West).

9.    Plaintiffs' recovery of punitive damages arising out of their alleged injury is limited under Mo. Ann. Stat. § 510.265 (West).

**NEW HAMPSHIRE**

1.      The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to N.H. Rev. Stat. § 507-D:2.

2.      Plaintiffs' product liability claims are barred in whole or in part by the State-of-the-Art Defense.  N.H. Rev. Stat. § 507:8-g.

3.      The Shell Defendants' conduct did not meet the minimum requirements of culpability with respect to each material element of the alleged offenses of civil conspiracy, public nuisance, and negligence, according to the applicable provision of N.H. Rev. Stat. § 626:2, and therefore, plaintiffs' claims on these counts should be dismissed.

4.      Plaintiffs' claims under N.H. Rev. Stat. § 358-A fail to allege conduct within the State of New Hampshire and therefore should be dismissed.

5.      Plaintiffs' efforts to impose liability on the Shell Defendants without proof of causation violate the Due Process and other clauses of the federal and state constitutions.

**NEW JERSEY**

1.      The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, N.J. Stat. Ann. 2A:14-2.

2.      The Shell Defendants' conduct did not meet the minimum requirements of culpability with respect to each material element of the alleged offenses of civil conspiracy, public nuisance, and negligence, according to the applicable provision of N.J. Stat. Ann. 2C:2-2, and, therefore, plaintiffs' claims on these counts should be dismissed.

3.      Plaintiffs' efforts to impose liability on the Shell Defendants without proof of causation violate the Due Process and other clauses of the federal and state constitutions.

4.      Plaintiffs' claims against the Shell Defendants are barred by the New Jersey entire controversy doctrine, doctrine of *res judicata* and/or similar doctrines.  Without limiting the foregoing, Plaintiff's claims are barred to the extent that Plaintiff or its affiliates or subdivisions have brought or are bringing claims against the Shell Defendants or others for the same or similar conduct, the same or similar transactions, the same or similar damages, or the same or similar relief.

5.      Plaintiffs' method of assessing natural resource damages was not adopted in a manner consistent with the Administrative Procedures Act, N.J. Stat. Ann. 52:14B-2(e).

6.      Plaintiffs' claims under the New Jersey Compensation and Control Act ("Spill Act") are barred, in whole or in part, by the statutory defenses to liability provided by the Spill Act.

7.      The Shell Defendants did not "discharge" any hazardous substance within the meaning of the Spill Act.

8.      The Shell Defendants are not "in any way responsible" for any discharges of hazardous substance within the meaning of the Spill Act.

9.      The costs and damages sought by Plaintiffs do not constitute "cleanup and removal costs" under the Spill Act, or they are not otherwise recoverable under the Spill Act.

10.      Plaintiffs' claim for treble damages under the Spill Act is barred because Plaintiffs have failed to comply with the requirements set forth in the Spill Act.

11.     Plaintiffs' claims are barred by the doctrine of primary jurisdiction insofar as the NJDEP is responsible for directing and allocating responsibility for investigation and remediation of the environmental condition alleged in the Complaint.

12.     Plaintiffs' claims are barred because the Shell Defendants have complied with, and satisfied, all applicable laws, regulations, rules, orders, directives and/or other requirements of the NJDEP and/or other state or federal agencies regarding the environmental condition alleged in the Complaint.

13.     Plaintiffs were contributorily and comparatively negligent, and therefore their claims are barred or diminished by such negligence under the Comparative Negligence Act and New Jersey common law.

14.     Plaintiffs' claims against the Shell Defendants are barred, in whole or in part, by the prior settlement with certain MDL plaintiffs in New Jersey.

15.     Plaintiffs' claims under the Spill Act are not ripe, since clean up and remediation have not been completed.

16.     Plaintiffs' claims under the Spill Act are barred, in whole or in part, because the claims asserted are preempted by federal law, including, without limitation the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq.

17.     Any injury or damages suffered by plaintiffs have been increased by plaintiffs' failure to mitigate their damages, in that (1) the policies and activities of the State of New Jersey and its agencies during the period of time for which plaintiffs seek damages have caused damage to natural resources greater than that would otherwise have occurred; and (2) the

State and its agencies have failed to take reasonable measures available to them to reduce damages.

18.     Plaintiffs' claims under the Spill Act are barred to the extent plaintiffs seek relief for conduct occurring or damages incurred prior to the effective date of the Spill Act.

19.     Plaintiffs have failed to join parties needed for the just adjudication of the Plaintiffs' claims, in whose absence complete relief cannot be afforded the existing parties pursuant to *N.J.Ct.R.* 4:28-1.

20.     Plaintiffs' claims are barred, in whole or in part, by plaintiffs' failure to comply with the prerequisites to liability under the Spill Act, including without limitation plaintiffs' incurring of costs not authorized by the Spill Act and plaintiffs' failure to direct clean up and remediation operations in accordance with the National Contingency Plan to the greatest extent possible.

21.     Plaintiffs' injuries and damages, if any, were directly and proximately caused by the intervening, superseding and/or fault of other persons and entities for which the Shell Defendants bear no responsibility.  The Shell Defendants are entitled to apportionment of the relative degrees of fault to such other persons or entities, whether they are parties herein or not, in accordance with New Jersey law and New Jersey Joint Tortfeasors Contribution Law, N.J. Stat. Ann. 2A-53A-1 *et seq.*

22.     The Shell Defendants deny that Plaintiffs are entitled to punitive damages in this case.  The Shell Defendants did not have any intent to injure plaintiffs.  The Shell Defendants incorporate and assert all defenses regarding the imposition of punitive damages created by N.J. Stat. Ann. 2A:15-5.9 *et seq.*

23.     The imposition of punitive damages in this action would violate the Shell

Defendants' rights under the due process clause, equal protection clause, excessive fines clause, and other clauses of the Constitution of the United States and the Constitution and laws of the State of New Jersey.

24.     The legal standards regarding punitive damages are inadequate, vague and ambiguous, further violating the due process clause of the United States Constitution and the Constitution of the State of New Jersey.

25.     Plaintiffs' claims for relief associated with the rights, interests or properties of private parties, including claims for treatment of private wells or alleged damages to private property, are barred to the extent plaintiff lacks standing or the legal authority to assert such claims.

**NEW YORK**

1.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, N.Y. Civ. Prac. L. & R. § 214.

2.     Plaintiffs' claims pursuant to New York General Business Law § 349 should be dismissed for failure to plead facts sufficient to show that defendants engaged in "consumer-oriented" conduct that had a broad impact on consumers at large which injured the plaintiffs as within the intended ambit of the statute.

3.     Plaintiffs' claims pursuant to New York General Business Law § 349 should be dismissed because plaintiffs are not consumers under § 349.

4.     Plaintiffs' claims pursuant to New York General Business Law § 349 should be dismissed because the alleged deceptive conduct for which the plaintiffs seek redress does not fall within the ambit of the statute, as the plaintiffs' injuries did not arise by reason of any alleged violation of GBL § 349.

5.      Plaintiffs' claims pursuant to New York General Business Law § 349 should be dismissed as compliance with the Federal Trade Commission Act, 15 U.S.C.A. § 45, is a complete defense to an action brought under GBL § 349.

6.      Plaintiffs' claims pursuant to New York General Business Law § 349 should be dismissed because any act or practice of the Shell Defendants complied with the rules and regulations of, and the statutes administered by, the Federal Trade Commission, or any official department, division, commission or agency of the United States.

7.      Plaintiffs' claims pursuant to New York General Business Law § 349 should be dismissed to the extent any of the Shell Defendants did not sell petroleum products directly to consumers in New York.

8.      If the Shell Defendants are found liable for any non-economic loss allegedly suffered by plaintiffs, and such liability equals fifty percent or less of the total liability of all persons liable, and the aggregate liability of such other persons equals or exceeds fifty percent of the total liability, then, pursuant to Civil Practice Law and Rules Article 16, the Shell Defendants' liability to plaintiffs for non-economic loss shall not exceed their equitable share determined in accordance with the relative culpability of each person causing or contributing to the total liability for such non-economic loss.

9.      Plaintiffs' efforts to impose liability on the Shell Defendants without proof of causation violate the Due Process and other clauses of the federal and state constitutions.

**PENNSYLVANIA**

1.      The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to 42 Pa. Cons. Stat. Ann. § 5524.

2.      The Shell Defendants' conduct did not meet the minimum requirements of culpability with respect to each material element of the alleged offenses of civil conspiracy, public nuisance, and negligence in order to be found liable according to the applicable provision of 18 Pa. Cons. Stat. Ann. § 302, and, therefore, plaintiffs' claims on these counts should be dismissed.

3.      Plaintiffs' claims for public nuisance are barred because at all relevant times, neither the Shell Defendants nor their products violated any orders or regulations adopted by the Pennsylvania Department of Environmental Resources or the Pennsylvania Department of Environmental Protection.  35 Pa. Cons. Stat. Ann. § 691.503.

4.      Plaintiffs' efforts to impose liability on the Shell Defendants without proof of causation violate the Due Process and other clauses of the federal and state constitutions.

**PUERTO RICO**

1.      The complaint and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to Article 1868 of the Puerto Rico Civil Code.

2.      Plaintiffs' public nuisance claim is barred because no act or omission by or on behalf of the Shell Defendants caused or will cause injury to health or offense to the senses, or is a nuisance to the well being of any neighborhood, or to a large number of persons as required by P.R. Laws Ann. tit. 32 § 2761.

3.      Plaintiffs' common law claims are barred, in whole or in part, by the Public Policy Environmental Act.

4.      Plaintiffs' public nuisance claim is barred because the alleged activity does not constitute an "ultrahazardous activity" or "illegal hazardous activity" under Puerto Rico law.

5.      Plaintiffs' public nuisance claim fails because they have not alleged, and cannot show, any "special damages" under Puerto Rico law.

6.      Plaintiffs' request for future costs is barred because future costs are not authorized by P.R. Laws Ann. tit. 32 § 2761.

7.      Plaintiffs' trespass claim is barred because trespass is not an acknowledged cause of action under the Puerto Rico Civil Code.

8.      Plaintiffs' negligence claim fails because they have failed to plead, and they cannot establish, the elements of a negligence claim under Art. 1802 of the Puerto Rico Civil Code.

9.      Plaintiff lacks standing to bring a citizen suit under Puerto Rico Public Policy Environmental Act ("PPEA"). P.R. Laws Ann. tit. 12 § 8001 et seq.

10.     The Shell Defendants are not liable under the PPEA because they have followed and complied with all applicable, if any, dispositions and regulations promulgated under the PPEA, if any.

11.     The Shell Defendants are not liable under the PPEA because their actions have not, in any manner, contributed or created any damage or degradation to any of the Commonwealth's natural resources.

12.     The Shell Defendants are not liable under the PPEA because the alleged releases were caused by an act or omission of a third party and the Shell Defendants exercised due care and took precautions against foreseeable acts of a third party.

13.     Plaintiffs lack standing to bring a suit for alleged violations to the Water Pollution Control Act ("WPCA"). P.R. Laws Ann. tit. 24 § 591 et seq.

14.     Plaintiffs cannot recover under the WPCA because MTBE is not a "pollutant" within the meaning of the WPCA, P.R. Laws Ann. tit. 24 § 591(h).

15.     The Shell Defendants are not liable under the WPCA because the prohibitions, as well as the definitions contained in the WPCA, are unconstitutionally vague.

16.     Plaintiffs' claims are barred because MTBE is not considered a "pollutant" by the Commonwealth's Water Quality Standards Regulations, Department of State Regulation No. 6616.

17.     The Shell Defendants are not liable under the Water Quality Standards Regulations because MTBE is not regulated nor limited under the Water Quality Standards Regulations.

18.     The Shell Defendants are not liable under the Water Quality Standards Regulations because releases, if any, were caused by an act of God.

19.     The Shell Defendants are not liable under the Water Quality Standards Regulations because releases, if any, were caused by an act or omission of a third party and the Shell Defendants exercised due care and took precautions against foreseeable acts of a third party.

20.     The Shell Defendants are not liable for alleged violations of the Underground Storage Tank Regulations because MTBE is not considered a "Regulated Substance" under Department of State Regulation No. 4362 or other applicable regulations.

21.     The Shell Defendants are not liable under the Underground Storage Tank Regulations because releases, if any, were caused by an act of God.

22.     Plaintiffs' claim for exemplary and/or punitive damages is barred because such relief is not available under Puerto Rico law.

**VERMONT**

      1.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, 12 Vermont Stat. Ann. §§ 511, 512(4), 512(5).

      2.     Plaintiffs' recovery is barred by their contributory fault, which is greater than the causal total negligence of the defendant or defendants.  12 Vermont Stat. Ann. § 1036.

      3.     Recovery is barred or must be reduced, in whole or in part, based on the doctrine of comparative negligence.  12 Vermont Stat. Ann. § 1036.

      4.     Plaintiffs' efforts to impose liability on the Shell Defendants without proof of causation violate the Due Process and other clauses of the federal and state constitutions.

**VIRGINIA**

      1.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, Va. Code Ann. §§ 8.01-243, 8.01-248.

      2.     Plaintiffs' efforts to impose liability on the Shell Defendants without proof of causation violate the Due Process and other clauses of the federal and state constitutions.

**WEST VIRGINIA**

      1.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, W. Va. Code Ann. § 55-2-12.

      2.     Plaintiffs' efforts to impose liability on the Shell Defendants without proof of causation violate the Due Process and other clauses of the federal and state constitutions.

**CALIFORNIA**

1.      The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to California Code of Civil Procedure §§ 337, 337.1, 337.2, 337.15, 338, 340, 340.8 and 343.

2.      California Civil Code §§ 1431.1 through 1431.5, commonly known as "Proposition 51," provide that the liability of each defendant for non-economic damages, if any, shall be several only and shall not be joint, and the Shell Defendants therefore assert that each defendant may be held liable only for the amount of non-economic damages, if any, allocated to that defendant in direct proportion to its percentage of fault, if any.

3.      The Shell Defendants allege that its liability, if any, for non-economic loss be pro rated according to the provisions of California Civil Code § 1431.2.

4.      The complaints and each purported cause of action are barred because Plaintiffs and/or their predecessors-in-interest and assignors are guilty of unclean hands.

5.      Plaintiffs' claims fail, in whole or in part, based on the doctrine of unjust enrichment.

6.      As to each cause of action in the complaints, the Shell Defendants allege that the release of MTBE and/or hazardous substances, if any, and the damages resulting therefrom, if any, were caused by an act of God.

7.      The complaints and each purported cause of action are barred because they are ambiguous and uncertain.

8.      Plaintiffs did not reasonably rely on any representation, disclaimer, warning, or other act or omission of the Shell Defendants.

9.    The Shell Defendants had no duty to warn plaintiffs or third parties about the potential dangers, if any, of the product or products manufactured, packaged, labeled, used, applied and/or removed by said third parties.

10.    The Shell Defendants had no duty to warn because the risks of injury and damages inherent in utilizing the products described in the complaints, if any, were open, obvious or known.

11.    Any express or implied warranties alleged by plaintiffs to have been made by the Shell Defendants, if made at all, were expressly disclaimed and excluded by product labels, pursuant to the laws of the State of California, which provided that the Shell Defendants made no warranties, express or implied, concerning the products or the use of said products that extended beyond the description on the label, and that all statements made concerning said products applied only when used as directed.

12.    Plaintiffs are sophisticated water purveyors or managers and were, at all relevant times, fully aware of the nature and risks of injury and damages described in the complaints that could arise in the operations or management of a public drinking water supply system.

13.    If there was a less dangerous alternate design, without admitting that there was and without assuming the burden of proof on this issue, the Shell Defendants did not and could not have known of such an alternate design at the time.

14.    If there was a less dangerous alternate design, without admitting that there was and without assuming the burden of proof on this issue, such an alternate design was not feasible at the time.

15.   Plaintiffs and/or others modified, altered, or changed the Shell Defendants' products or materials referred to in the complaints, if any, so that such changes in any said products or materials proximately caused plaintiffs' injuries, loss and damages, if any.

16.   If the Shell Defendants provided the products alleged to have been defective, and without admitting that they did so or that any product was defective and without assuming the burden of proof on these issues, the products were misused or abused by others without the knowledge or consent of the Shell Defendants and in a manner not reasonably foreseeable by the Shell Defendants prior to their receipt of notice of the circumstances described in the complaints. Such misuse or abuse was the sole cause of or a contributing cause to the injuries, losses, and/or damages, if any, suffered by Plaintiffs as alleged in the Complaint, and by reason thereof, Plaintiffs are barred from recovering some or all of any damages suffered.

17.   The Shell Defendants are not liable for any alleged wrongful entry upon land because plaintiffs and/or plaintiffs' predecessors in interest or assignors expressly or impliedly consented to or had knowledge of all such activities or conditions.

18.   The Shell Defendants allege that to the extent plaintiffs are claiming damages for the cost of remediation due to plaintiffs' alleged compliance with primary or secondary drinking water standard or other regulations enacted by the State of California or any other governmental body, those claims are unconstitutional because they constitute an ex post facto application of a regulation disallowed by Art. 1, sec. 9 of the U.S. Constitution.

19.   The complaints and each purported cause of action are barred, in whole or in part, by federal and state law, including but not limited to, the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2; the Clean Air Act, 42 U.S.C. § 7401, et seq.; the

Toxic Substances Control Act, 15 U.S.C. § 2601, et seq; and rules, regulations, and decisions thereunder.

20.     The complaints and each purported cause of action are barred to the extent that federal and/or California state agencies have exonerated the Shell Defendants and/or determined that any Shell Defendants' facility did not contribute to the presence of MTBE in the relevant groundwater for which plaintiffs are asserting damages.

21.     The complaints and each purported cause of action are barred because plaintiffs do not own or have abandoned, lost, waived, given up, or otherwise failed to perfect any rights, including but not limited to use rights related to any water that is the subject of the complaints. Plaintiffs' claims are also barred because under California law, the water that is the subject of the complaints is the property of the State of California, not of plaintiffs.

22.     The complaints and each purported cause of action are barred to the extent that such claims have been satisfied by payments or provision of alternate water supplies by the Shell Defendants, defendants, or third parties.

23.     The complaints and each purported cause of action are barred to the extent that plaintiffs have assigned rights and claims for certain damages and other relief, if any, to the Shell Defendants, other defendants, or third parties.

24.     If plaintiffs sustained any injury under the circumstances alleged in the complaints or in any other respect, their recovery against the Shell Defendants, if any, is barred by the alleged conduct and conditions resulted from a necessity.

25.     Plaintiffs' claims for trespass are barred because the Shell Defendants are immune to liability for plaintiffs' damages, if any, caused by earth movement.

26.     Plaintiffs' claims are barred, in whole or in part, as the result of their own knowing or negligent conduct that caused or contributed to MTBE and/or TBA contamination giving rise to these claims.

27.     Plaintiffs' efforts to impose liability on the Shell Defendants without proof of causation violate the Due Process and other clauses of the federal and state constitutions.

**NEW MEXICO**

1.     The complaint and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to N.M. Stat. Ann. §§ 37-1-4 and 37-1-7 (2006).

2.     Barring application of any statutory exception to the comparative fault doctrine, the Shell Defendants assert that they may be held liable only for the amount of damages, if any, allocated in direct proportion to their percentage of fault.  N.M. Stat. Ann. § 41-3A-1.

3.     Should the Shell Defendants be found liable for the manufacture and sale of a defective product, the Shell Defendants may only be held liable for the amount of damages allocated to them in direct proportion to their collective percentage of fault, taking into consideration the acts and omissions of all relevant third parties and any failure on the part of the Plaintiff to mitigate its own damages.  N.M. Stat. Ann. § 41-3A-1(C)(3).

4.     Plaintiff's trespass claim, private nuisance claim and the monetary damages portion of its common law public nuisance claim are barred to the extent Plaintiff is seeking damages to recover for MTBE contamination allegedly affecting property or wells not actually owned by the state.

5.      Plaintiff's statutory public nuisance claim fails because Defendants did not "knowingly and unlawfully introduce any object or substance into any body of public water causing it to be offensive or dangerous for human or animal consumption or use."  N.M. Stat. Ann. § 30-8-2 (2006).

6.      Plaintiff's statutory public nuisance claim fails in whole or in part because the statute does not provide for the recovery of monetary damages.  N.M. Stat. Ann. § 30-8-2 (2006).

7.      Plaintiff's trespass claim fails in whole or in part to the extent Plaintiff is seeking damages to the groundwaters of the State of New Mexico because Plaintiff does not have an exclusive possessory interest in such groundwaters.

**WISCONSIN**

1.      The Wisconsin complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, Wisc. Stat. Ann. § 893.52.

2.      The Wisconsin plaintiffs' recovery is barred or must be reduced, in whole or in part, based on the doctrines of contributory and/or comparative fault, pursuant to Wisc. Stat. Ann. § 895.045.

\*      \*      \*

For each State described above, the Shell Defendants incorporate by reference any affirmative defense, whether general or specific to another State, alleged herein or by other defendants in MDL 1358.

The pleading of the defenses described above shall not be construed as an undertaking by the Shell Defendants of any burden which would otherwise be the responsibility of plaintiffs.

**WHEREFORE**, the Shell Defendants request entry of judgment dismissing the complaints with prejudice, and awarding the Shell Defendants their costs and attorneys' fees, and such other relief as the Court may deem just and proper.

Dated:  January 31, 2011

_____
Richard E. Wallace, Jr.
Peter C. Condron
WALLACE KING DOMIKE & REISKIN PLLC
2900 K Street, N.W.
Harbourside Suite 500
Washington, D.C.  20007
Telephone:  (202) 204-1000
Facsimile:  (202) 204-1001

Attorneys for the Shell Defendants

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Shell Defendants' Seventh Amended Master Answer and Affirmative Defenses was served via email upon liaison counsel and via LexisNexis File & Serve to all other counsel of record on the 31st day of January 2011.

_____

Peter C. Condron