UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re:  Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

---

**This Document Relates To:**

*Orange County Water District v. Unocal Corp.,
et al.*
Case No. 04 Civ. 4968 (SAS)

Master File No. 1:00-1898
MDL No. 1358 (SAS)
M21-88

---

### DEFENDANT CITGO PETROLEUM CORPORATION'S
### OBJECTION TO DEFENDANT 7-ELEVEN, INC.'S
### MOTION FOR ORDER DETERMINING GOOD FAITH SETTLEMENT

Defendant CITGO Petroleum Corporation ("CITGO") has never manufactured one drop of gasoline sold in California, has never owned or operated a wholesale gasoline terminal that distributes gasoline in California, and has never owned or operated a single retail service station that sold gasoline with MTBE or underground storage tank that contained MTBE in California.[1] Its only connection to this action is that it entered into a contract with its former parent Defendant 7-Eleven, Inc ("7-Eleven") to arrange for the supply of gasoline, specified by 7-Eleven and manufactured by others to retail gasoline stations owned or operated by 7-Eleven in California.

7-Eleven now requests that this Court make a determination of good faith with respect to its $1.7 million settlement with plaintiff Orange County Water District (the "District") — a finding that would have a significant impact on CITGO, whose alleged potential liability in this case is derivative of that of 7-Eleven. 7-Eleven's submission in support of its request for a good

---

[1] CITGO did operate a small number of service stations in California for a matter of months prior to the introduction of MTBE.

faith determination, however, is woefully insufficient and leaves CITGO and the Court in the dark over the basis for the settlement and CITGO's own potential exposure. 7-Eleven fails to justify the allocation of the settlement amount to its convenience stores addressed in the settlement (which includes stores over which the District is not even asserting claims), but instead assigns arbitrary and unsupported values to these stores. 7-Eleven also has provided no specific information regarding the District's estimated damages or its own percentage of liability. Without this information, it is impossible to make any assessment regarding whether 7-Eleven's settlement is grossly disproportionate to its share of liability. For these reasons, its motion for a good faith determination of settlement must be denied.[2]

## BACKGROUND

7-Eleven owns and/or operates convenience stores, including stores that it describes as being within the geographical scope of this action. *See* Def. 7-Eleven, Inc.'s Mem. of Points and Authorities in Support of Mot. for Order Determining Good Faith Settlement ("7-Eleven's Mem.") p. 1. According to its motion, 7-Eleven has been a party to three cases that were transferred to this Court as part of MDL 1358, and this litigation is the only case in which it remains a defendant. 7-Eleven's Mem. p. 1. On January 18, 2011, 7-Eleven submitted a Motion for Order Determining Good Faith Settlement seeking approval of a settlement with the District. Under the terms of the Settlement Agreement and Release between Plaintiff Orange County Water District and 7-Eleven ("Settlement Agreement"), 7-Eleven agreed to pay the District $1.7 million to resolve the litigation and obtain releases from the District for 22 of its stores. *See* 7-Eleven's Mem. pp. 3, 6. 7-Eleven admits that the District has asserted claims regarding only two

---

[2] CITGO submits this Objection to Defendant 7-Eleven, Inc.'s Motion for Order Determining Good Faith Settlement pursuant to the Court's December 16, 2010 ruling.

2

of the 22 7-Eleven stores involved in the settlement. 7-Eleven's Mem. p. 2. The Settlement Agreement allocates the $1.7 million across the 22 stores as follows:

| | |
|---|---|
| $725,000 | Stores for which OCWD is currently asserting claims. This is allocated to two stores, with $450,000 to one store and $275,000 to the second store. |
| $570,000 | Stores with previous gasoline releases that have achieved regulatory closure. This is allocated to six stores, at $95,000 per store. |
| $335,000 | Stores that sold gasoline while MTBE was on the market, but had no reported release. This is allocated to seven stores, with varying amounts per store ranging from $30,000 to $70,000. |
| $40,000 | Stores that discontinued gasoline sales prior to 1986 (designated as "non-MTBE sites"). This is allocated to four stores, at $10,000 per store. |
| $20,000 | Stores that began selling gasoline in 2004 or later (designated as "non-MTBE sites"). This is allocated to two stores, at $10,000 per store. |
| $10,000 | One store where 7-Eleven never sold gasoline but is remediating gasoline and MTBE. |

*See* 7-Eleven's Mem. p. 6; Ex. B to Decl. of Michael A. Walsh in Support of Def. 7-Eleven Inc.'s Mot. for Order Determining Good Faith Settlement ("Walsh Decl.").

According to its submission, 7-Eleven did not refine gasoline or "distribute, ship, transport, or supply any retail locations with gasoline or any 'gasoline product.'" 7-Eleven's Mem. p. 2. Rather, it asserts that its gasoline suppliers arranged for the delivery of gasoline directly to the underground storage tanks at the 7-Eleven stores. *Id.* During the relevant time period at issue in this action, co-defendant CITGO's only connection to this action was a supply contract with 7-Eleven, pursuant to which CITGO used third-party suppliers and transporters to provide gasoline manufactured by other entities to 7-Eleven retail stations as specified by 7-Eleven. *See* CITGO Petroleum Corporation's Answers and Objections to Pl. Orange County Water Dist.'s Third Set of Interrogatories to Defs. (attached as Ex. A to Decl. of Pamela R. Hanebutt in Support of Defendant CITGO Petroleum Corporation's Objection to Defendant 7-

3

Eleven, Inc.'s Mot. for Order Determining Good Faith Settlement ("Hanebutt Decl.")), Prelim. Stmt. and Response to Interrogatory No. 5; Am. and Restated Prod. Purchase Agreement between The Southland Corporation and CITGO Petroleum Corporation dated as of September 30, 1986 and entered into on January 31, 1990 (attached as Ex. B to Hanebutt Decl.). CITGO has not owned or operated any of the gasoline service stations at issue in this case, nor has it been responsible for any underground storage tanks located at such service stations. *Id.* Moreover, no CITGO-manufactured gasoline products have ever been sold in Orange County. *Id.*

## ARGUMENT

California law permits a plaintiff to settle in good faith with one or more alleged joint tortfeasors, barring equitable contribution or indemnity claims and providing for a reduction in the plaintiff's claims against the non-settling parties.[3] Cal. Code Civ. Proc. §§ 877; 877.6(c). The requirement of good faith in California Code of Civil Procedure sections 877 and 877.6 is intended to protect the interests of non-settling defendants by imposing on reviewing courts the *"obligation to guard against the numerous ways in which the interests of non-settling defendants may be unfairly prejudiced."* *City of Grand Terrace v. Superior Court*, 238 Cal. Rptr. 119, 126 (Cal. Ct. App. 1987) (internal quotations and citations omitted) (emphasis in original). It is the key to harmonizing the two statutory objectives of cutting off the right of other defendants to seek contribution or indemnity from a settling defendant, but in return giving them a reduction in their ultimate liability to the plaintiff. *See Abbott Ford, Inc. v. Superior Court*, 741 P.2d 124, 133 (Cal. 1987)

---

[3] The substantive provisions of sections 877 and 877.6 apply in federal court. *See Rutgard v. Haynes*, 61 F. Supp. 2d 1082, 1085 (S.D. Cal. 1999); *see also In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 578 F. Supp. 2d 519, 525 (S.D.N.Y. 2008).

4

In *Tech-Bilt, Inc. v. Woodward-Clyde*, 698 P.2d 159, 166 (Cal. 1985), the California Supreme Court set out a number of factors to consider when determining whether a settlement was made in good faith. These include taking into consideration, among other factors, a rough approximation of plaintiff's total recovery and the settling party's proportionate liability, as well as the amount of the settlement payment. *Id.*, *quoted in In re MTBE*, 578 F. Supp. 2d at 525-26. The key consideration is whether a settlement is "grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be." *Id.* The settlement amount must not be "so far 'out of the ballpark' that it would unfairly saddle the non-settling defendants with a grossly disproportionate share of liability." *Id.* The court must consider the relationship of the settlement agreement to the entire litigation, and there must be a sufficient evidentiary basis for the court to evaluate the various aspects of the settlement. *City of Grand Terrace*, 238 Cal. Rptr. at 127. 7-Eleven has failed to submit sufficient information from which a good faith determination can be made and its motion is properly denied.

## I. THERE IS INSUFFICIENT INFORMATION SUPPORTING THE VALUES AND ALLOCATIONS IN THE SETTLEMENT.

7-Eleven's motion for a good faith determination must be denied because it has failed to offer proper support for the values and allocations in the Settlement Agreement, which appear simply to be arbitrary dollar amounts assigned to various stations most of which are not in the litigation and appear to have no liability for MTBE associated with them. As the party seeking settlement, 7-Eleven must "explain to the court and to all other parties, by declaration or other written form, the evidentiary basis for any allocations and valuations made," including the component parts of the settlement. *Erreca's v. Superior Court,* 24 Cal. Rptr. 2d 156, 169 (Cal. Ct. App. 1993); *see also, e.g., Franklin Mint Co. v. Superior Court*, 31 Cal. Rptr. 3d 319, 324 (Cal. Ct. App. 2005) (initial burden is on the settling parties to provide evidence of the value of

5

the settlement) (collecting cases). The $1.7 million total settlement between 7-Eleven and plaintiff is divided among 22 convenience stores, and the allocations range from $10,000 for a store where 7-Eleven did not sell gasoline but is conducting remediation to $450,000 for one of the two stores where the District is currently asserting claims. *See* 7-Eleven's Mem. p. 6; Ex. B to Walsh Decl. The dollar amounts assigned to these stations appear to be plucked from thin air. There is no information to understand the basis for these figures other than a declaration from 7-Eleven's counsel that contains very general descriptions of the types of stations at issue. *See* Walsh Decl. ¶ 20. 7-Eleven has not submitted any information regarding any projected costs of remediation, investigation or testing at any of the stations in any of the categories, nor has it provided a single shred of evidence regarding any potential impact on any well or potential well treatment costs against which its settlement amounts can be evaluated. 7-Eleven also does not explain the differences in allocations among stores within the various categories. For the two stores where the District has asserted claims, $450,000 is allocated to one store and $275,000 is allocated to the other, with no explanation whatsoever or any supporting evidence as to the difference between these two stores or support for their individual valuations.[4]

Raising even more questions about the arbitrariness of the allocations and valuations in the settlement is the fact that only two of the 22 convenience stores covered by the settlement are, by 7-Eleven's own admission, stores for which the District is currently asserting claims. 7-Eleven's Mem. p. 6. 7-Eleven's only explanation for the inclusion of the other 20 stores that are not even involved in this case is that the settlement applies to 7-Eleven stores "within the District's service area and near the service area that are potentially within the geographic scope of the Litigation." *Id.* p. 1. There is no evidentiary support for the allocation of *any* money to

---

[4] Various amounts, ranging from $30,000 to $70,000 are also assigned to seven stores in the category of "no detected release" yet, with no support for the varying amounts.

6

these 20 stations that are not part of this case, let alone the appropriateness of any particular value allocated to any one station, even though these 20 stations constitute more than 50% of the total settlement amount. Nor is there any explanation about how this Court can make a good faith determination as to the value of claims not before it. *See Shane v. Superior Court*, 207 Cal. Rptr. 210, 218-19 (Cal. Ct. App. 1984) (order on motion for good faith determination in error where it purported to bar claims pending in another action); *Nordstrom Commission Cases*, 112 Cal. Rptr. 3d 27, 39 (Cal. Ct. App. 2010) (trial court may not make rulings regarding settlement and claims not pending before it). Although 7-Eleven states that the District intends to conduct "low-level" MTBE testing and that additional 7-Eleven stores "*could be* added to plumes for which the District seeks damages," 7-Eleven's Mem. p. 2 n.1 (emphasis added), inclusion of these stores in the settlement is based on nothing more than hypothetical speculation, and there is no dispute that the District is presently asserting claims pertaining to only two stations.[5]

The evidence submitted in connection with the global settlement of MTBE cases (including California cases) that this Court previously approved shows just how deficient 7-Eleven's evidence is here. In that settlement, the cash payment was allocated by well, rather than by station, based on many detailed factors that would affect the cost of treatment and the likelihood of recovery at trial, including well operating capacity or flow rate, detection levels, length of time over which detections occurred, and the relationship of the detection to the applicable regulatory standard. *See In re MTBE*, 578 F. Supp. 2d at 523. In addition, detailed information regarding plaintiffs' estimated damages was submitted. In particular, the settling plaintiffs in those cases used an American Petroleum Institute ("API") study to calculate costs for treating contaminated wells and used a standard linear regression analysis to derive the

---

[5] *See County of Suffolk v. Sebelius*, 605 F.3d 135, 138 (2d Cir. 2010) (courts obliged to avoid issuing advisory opinions and are limited to "live" cases).

7

estimated API cost for the flow rate of each well at issue. *Id.* at 524. The plaintiffs also considered other characteristics of the wells, such as the MTBE detection levels, and included past costs incurred due to MTBE. *Id.* Here, there is nothing even close to this type of detailed information provided with the 7-Eleven submission and absolutely no explanation about how the settlement values assigned to the specific stations were determined.

## II. THERE IS INSUFFICIENT INFORMATION OF 7-ELEVEN'S SHARE OF LIABILITY.

The second fatal problem with 7-Eleven's submission is its lack of a sufficient basis from which 7-Eleven's percentage of liability can be assessed, despite the fact the settling party's percentage of liability is the touchstone question in a good faith determination. *Grand Terrace*, 238 Cal. Rptr. at 126; *see also Toyota Motor Sales U.S.A., Inc. v. Superior Court*, 269 Cal. Rptr. 647, 650 (Cal. Ct. App. 1990) (settling party's proportionate liability one of the most important factors in a good faith determination). As this Court has previously recognized, "[t]o determine whether the settlement amount is grossly disproportionate to the settling defendant's share of liability, the court and non-settling defendants must be able to estimate that share." *In re MTBE Prods. Liab. Litig*, 2008 WL 2388911, at *5 (S.D.N.Y. June 12, 2008).

7-Eleven has provided no estimate of proportionate liability. When addressing this issue in its submission, 7-Eleven makes only general statements regarding the standard for evaluating a defendant's proportional liability, and states that the means of allocating liability in the MTBE cases is highly contested. *See* 7-Eleven's Mem. pp. 9-10. 7-Eleven also makes the conclusory statement that its settlement is a rough approximation of the District's total recovery as to it because the claims against it "represent only a small percentage of the District's claims in the Litigation against all current defendants." *Id.* p. 9. 7-Eleven must support its motion for a good faith determination with an estimate of its proportional liability so that the Court and non-settling

8

defendants like CITGO may evaluate it. This is exactly what this Court has required settling parties in the MTBE litigation to do when faced with a contested motion for a good faith determination. *See In re MTBE*, 2008 WL 2388911, at *4 (settling parties must produce "some estimate, however broad or preliminary, of the range of proportional liability a jury might assign to the settling defendants at trial"). Because it does not contain this requisite information, 7-Eleven's motion for good faith determination must be denied. *See Toyota Motor Sales*, 269 Cal. Rptr. at 651 ("If . . . there is no substantial evidence to support a critical assumption as to the nature and extent of a settling defendant's liability, then a determination of good faith based upon such assumption is an abuse of discretion.").

It is also impossible to evaluate whether 7-Eleven's settlement is in fact the rough approximation of the District's total recovery that it says it is because its submission contains no estimate of plaintiff's expected recovery. Without at least a rough approximation of the plaintiff's total recovery, 7-Eleven has not established or provided enough information for anyone else to evaluate whether its settlement "is in the ballpark" of its proportionate share of the total potential liability. *See Arizona Pipeline Co. v. Superior Court*, 27 Cal. Rptr. 2d 118, 125 (Cal. Ct. App. 1994) ("record shows the hearing court had no evidentiary basis for making such a determination [of whether settlement was "in the ballpark" of the settlors' proportionate share of liability] because it was not provided a rough approximation of the tort plaintiffs' total recovery in these cases, settled or not settled"); *Mattco Forge, Inc. v. Arthur Young & Co.*, 45 Cal. Rptr. 2d 581, 590 (Cal. Ct. App. 1995) (abuse of discretion to approve good faith settlement where "there is no substantial evidence the subject settlement is in the ballpark of the [settling party's] proportionate liability"). The conclusory statement in the affidavit of 7-Eleven's counsel that the settlement amount is not "out of the ballpark" of its proportionate liability, *see*

9

Walsh Decl. ¶ 22, does not constitute the requisite substantial evidence that 7-Eleven must submit on this issue. *See Greshko v. County of Los Angeles*, 239 Cal. Rptr. 846, 853 (Cal. Ct. App. 1987) ("[a]ffidavits or declarations setting forth only conclusions, opinions or ultimate facts are to be held insufficient" and are not competent evidence on the issue of respondents' liability).

### III. CITGO IS PREJUDICED BY THE LACK OF EVIDENTIARY SUPPORT FOR THE SETTLEMENT BECAUSE ITS ALLEGED LIABILITY FLOWS FROM 7-ELEVEN'S.

It is imperative that CITGO be able to understand the full basis for the 7-Eleven settlement and its impact on non-settling defendants because any liability CITGO may have in this action flows only from 7-Eleven's liability. CITGO is in this case solely because of its relationship with 7-Eleven and supply to 7-Eleven stores. It has no other connection to plaintiff's service area in Orange County. It has not owned or operated any service stations at issue in this case or been responsible for any underground storage tanks at any such locations. Moreover, no CITGO-manufactured gasoline products have ever been sold in Orange County. And CITGO has not been involved in distributing any gasoline containing MTBE in Orange County, other than the isolated 7-Eleven stations. Pursuant to its supply arrangement with 7-Eleven, CITGO used third-party suppliers and transporters to provide gasoline manufactured by other entities to 7-Eleven retail stations as specified by 7-Eleven. *See* Hanebutt Decl. Ex. A, Prelim. Stmt. and Response to Interrogatory No. 5. Thus, CITGO is not responsible for the manufacture of any product containing MTBE that was released from any service station at issue in this case.

Approval of the settlement would cut off CITGO's ability to pursue all available equitable indemnity and contribution claims against 7-Eleven. *See* Cal. Code Civ. Proc. §§ 877; 877.6(c). Before CITGO loses any rights it may have to pursue these claims and so that it may evaluate the amount by which its own liability to plaintiff would be reduced, *see* Cal. Code Civ.

Proc. § 877(a), it is entitled to a full understanding of the value and allocation of the settlement and the proportionate liability of 7-Eleven — which was the owner or operator of the gasoline stations where any product was supplied by CITGO and thus was responsible for any releases of gasoline that may have caused harm to plaintiff.  *See Grand Terrace*, 238 Cal. Rptr. at 126 (good faith requirement imposes the "*obligation to guard against the numerous ways in which the interests of non-settling defendants may be unfairly prejudiced*" (emphasis in original)).

## CONCLUSION

For the foregoing reasons, CITGO Petroleum Corporation respectfully requests that the Court deny Defendant 7-Eleven, Inc.'s Motion for Order Determining Good Faith Settlement.

Dated:  February 17, 2011                                       CITGO PETROLEUM CORPORATION

By:      /s Pamela R. Hanebutt

Nathan P. Eimer
   (neimer@eimerstahl.com)
   (New York Bar No. 1976067)
Pamela R. Hanebutt
   (phanebutt@eimerstahl.com)
   (admitted *pro hac vice*)
Lisa S. Meyer
   (lmeyer@eimerstahl.com)
   (admitted *pro hac vice*)
EIMER STAHL KLEVORN & SOLBERG LLP
224 S. Michigan Ave., Suite 1100
Chicago, IL 60604
312-660-7600
312-692-1718 (Fax)

*Attorneys for CITGO Petroleum Corporation*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on this 17th day of February, 2011, a copy of the foregoing DEFENDANT CITGO PETROLEUM CORPORATION'S OBJECTION TO DEFENDANT 7-ELEVEN, INC.'S MOTION FOR ORDER DETERMINING GOOD FAITH SETTLEMENT was served upon all parties of record via LexisNexis File and Serve.

/s Ameri R. Klafeta