UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation | : | Master File No. 1:00-1898 |
|  | : | MDL 1358 (SAS) |
|  | : | M21-88 |
|  | : |  |
| This document relates to: | : |  |
|  | : | **DEFENDANTS COASTAL EAGLE POINT** |
| *Village of Bethalto  v.  Ashland, Inc., et al.,* No. 10 Civ. 8182 | : | **OIL COMPANY; COASTAL OIL NEW** |
|  | : | **ENGLAND, INC.; COASTAL CHEM.,** |
|  | : | **INC.; EL PASO MERCHANT ENERGY-** |
|  | : | **PETROLEUM COMPANY; AND EL PASO** |
| *Coraopolis Water and Sewer Authority v. Ashland Inc., et al.,*  No. 10 Civ. 07874 | : | **CORPORATION'S SEVENTH AMENDED** |
|  | : | **MASTER ANSWER AND AFFIRMATIVE** |
|  | : | **DEFENSES** |
|  | : |  |
| *City of Fresno v. Chevron, USA, et al.,* No. 04 Civ. 4973 | : |  |
|  | : |  |
| *City of Kennett v. Ashland Inc., et al.,* No. 10 Civ. 08742 | : |  |
|  | : |  |
| *Town of Kouts v. Ashland, Inc., et al.,* No. 10 Civ. 8184 | : |  |
|  | : |  |
| *New Jersey Department of Environmental Protection, et al. v. Atlantic Richfield Company, et al.,* No. 08 Civ. 00312 | : |  |
|  | : |  |
| *City of Pattonsburg v Ashland, Inc., et al.,* No. 10 Civ. 08743 | : |  |
|  | : |  |
| *City of Pomona v. Chevron USA, Inc.,* No. 09 Civ. 3738 | : |  |
|  | : |  |
| *Village of Roanoke v. Ashland, Inc., et al.,* No. 09 Civ. 06554 | : |  |

*Bridgewater Water Department v. Atlantic*
*Richfield Company, et al.,* No. 11 Civ. 00479

Pursuant to the Master Answer agreement among the parties, CMO #6 and the Court's instructions during the January 13, 2005, status conference, Coastal Eagle Point Oil Company; Coastal Oil New England, Inc.; Coastal Chem, Inc.; El Paso Merchant Energy-Petroleum Company; and El Paso Corporation (collectively at times herein the "Coastal Defendants") each individually answer the particular complaints in MDL 1358 cases for which an answer is presently required, and in which each individual Coastal Defendant has been properly named and served, as follows:[1]

**I.      ADMISSIONS AND STATEMENTS REGARDING SELECT ALLEGATIONS**

**A.      Basic Defendant Information**

Coastal Eagle Point Oil Company is a Delaware corporation with its principal place of business at 1001 Louisiana Street, Houston, Texas 77002.  Coastal Oil New England is a Massachusetts corporation with its principal place of business at 1001 Louisiana Street, Houston, Texas 77002.  Coastal Chem., Inc. is a Delaware corporation with its principal place of business at 1001 Louisiana Street, Houston, Texas 77002.  El Paso Merchant Energy-Petroleum Company, individually and formerly known as Coastal Refining and Marketing, Inc. and formerly known as Coastal States Trading, Inc., is a Delaware corporation with its principal

---

[1] The Coastal Defendants are not submitting a formal motion to dismiss the cases filed since their answer was filed on September 15, 2006, in recognition of the Court's Order dated April 20, 2005, denying in part and granting in part defendants' motions to dismiss filed in other cases to this MDL proceeding.  The Coastal Defendants expressly reserve the arguments that were rejected by the Court in its rulings on the motions to dismiss, and request that the Court enter an order deeming the motion to dismiss to have been filed in these cases. *Compare* Manual for Complex Litigation sec. 11.32, at 43 (4th ed. 2004) ("The judge ... should consider ordering that specified pleadings, motions, and other court orders (unless specifically disavowed by a party) are 'deemed' filed in cases later brought, transferred, or removed, without actually filing the documents (see Sample Order, section 40.42).").

place of business at 1001 Louisiana Street, Houston, Texas 77002. El Paso Corporation is a

Delaware corporation with its principal place of business at 1001 Louisiana Street, Houston,

Texas 77002.

### B.      Jurisdiction

The Coastal Defendants deny that jurisdictional allegations made by certain plaintiffs are

sufficient to confer subject matter jurisdiction upon the Court.

### C.      Sale or Distribution of Gasoline with MTBE or TBA to States in Question

The Coastal Defendants admit that they manufactured, refined, distributed, supplied, sold

and/or marketed gasoline containing MTBE. No Coastal Defendant currently manufactures,

refines, distributes, supplies, sells and markets gasoline containing MTBE.

### D.      Allegations Regarding Production of MTBE or TBA

Coastal Defendant, Coastal Chem. Inc., at one or more times during the relevant time

period, has manufactured MTBE. No other Coastal Defendant currently manufactures MTBE.

The Coastal Defendants specifically deny that they "introduced" MTBE.

### E.      Allegations Regarding Properties and Behavior of MTBE

The Coastal Defendants admit that MTBE is a chemical compound. The Coastal

Defendants admit that there are various methods for the production of MTBE and that one

method of production is from methanol and isobutylene.

The Coastal Defendants state that solubility and mobility are relative properties and that

while MTBE and other ethers may be more soluble and mobile in water than certain gasoline

components, such as the BTEX compounds, they are less soluble and mobile in water than other

components sometimes blended into gasoline, such as ethanol. The Coastal Defendants

specifically deny that MTBE has "high solubility" in water. The Coastal Defendants further

state that MTBE's behavior in the environment – and its behavior relative to BTEX – is

dependent on a variety of factors, including the nature or method of its release, the geological setting, and environmental and microbial factors.

The Coastal Defendants state that while under certain conditions MTBE may biodegrade less readily than some other components of gasoline, MTBE has been found to naturally attenuate and biodegrade in numerous ways.

### F.   Allegations Regarding Motivation of Defendants to Add MTBE to Gasoline

The Coastal Defendants admit only that MTBE was added to certain gasoline products in varying concentrations to comply with federal and state fuel volatility, air toxics and oxygenate requirements, and/or because MTBE is a low-volatility, high octane component to meet the required octane ratings of these products without violating volatility standards. The Coastal Defendants deny that MTBE was not the only viable option of achieving higher octane levels in gasoline.

The Coastal Defendants deny allegations that they produced or marketed MTBE "to make money off gasoline refining waste byproducts." Coastal Chem., Inc. began producing MTBE to respond to federal and state laws and regulations. Similarly, the Coastal Defendants deny that they added MTBE to gasoline solely "to boost octane cheaply and increase their own profits." The Coastal Defendants deny that MTBE is a "waste byproduct" of the process of refining intermediate feedstocks into gasoline.

The Coastal Defendants admit that in 1990, with the amendments to the Clean Air Act (the "Amendments"), the federal government mandated an increase in the use of oxygenates (up to 2.7% oxygen content). The initial phase of the Amendments focused on meeting carbon monoxide ambient air standards during the wintertime in many cities (beginning in 1992). The reformulated gasoline ("RFG") program, as mandated by the amendments, took effect on January 1, 1995 and required year-round use of 2.0% oxygen content in gasoline for severe and

4

extreme ozone non-attainment areas in the United States or areas which "opted in" to the RFG program. Reformulated gasolines used since that time have sometimes contained between 10% and 15% MTBE, or up to 10% ethanol, to meet government mandates on oxygenate content. The Coastal Defendants deny that ethanol was available in sufficient supply to meet the demand for oxygenated gasoline in the RFG and oxy-fuel regions when the RFG regulation requiring 2% oxygen content in year-round gasoline in areas using RFG became effective.

The Coastal Defendants admit that at all times when they each owned refineries, refined intermediate feedstocks, and made gasoline, they complied with the legal requirements of the lead phase-out, the RFG Program, the Oxygenated Fuel Program and the Mobile Source Air Toxics Rule. The Coastal Defendants further state that several government agencies have concluded that MTBE has contributed substantially to reducing air pollution. EPA's model for air toxics emissions predicts that air emissions from MTBE-blended RFG is lower than for ethanol-blended RFG.

### G. Allegations Regarding Contamination of Groundwater and Gasoline Containing MTBE

The Coastal Defendants state that solubility and mobility are relative properties and that while MTBE and other ethers may be more soluble and mobile in water than certain gasoline components, such as the BTEX compounds, they are less soluble and mobile in water than other components sometimes blended into gasoline, such as ethanol. The Coastal Defendants further state that MTBE's behavior in the environment – and its behavior relative to BTEX – is dependent on a variety of factors, including the nature or method of its release, the geological setting, and environmental and microbial factors.

The Coastal Defendants are without sufficient knowledge or information as to the truth of the allegations concerning the nature, extent, and persistence of leaks, spills, or releases of MTBE upon groundwater.

The Coastal Defendants acknowledge that MTBE in drinking water can result in taste and odor concerns, but only if MTBE is present above certain threshold amounts.

The Coastal Defendants are without sufficient knowledge or information as to the truth of the allegations concerning human health risks from MTBE.

### H.   Allegations Regarding the Unintended Gasoline Discharges & Allegations Regarding Whether Defendants Knew that the Addition of MTBE to Gasoline May Result in Groundwater Contamination

The Coastal Defendants admit that gasoline is sometimes released into the environment from USTs and other means.  The Coastal Defendants state that they and, according to reports, other major oil companies, have spent hundreds of millions of dollars or more over the past 30 years to eliminate or reduce leaks, to improve leak detection and to remediate spills.

The Coastal Defendants state that they are aware that most users and handlers of gasoline understand that gasoline should be handled carefully and should not be spilled.  State and federal regulations also require proper care and maintenance with respect to gasoline.  The Coastal Defendants deny that they are responsible for mishandling by others.

The Coastal Defendants are without sufficient knowledge or information as to the truth of the allegations concerning gasoline containing MTBE "exacerbat[ing] the threat to groundwater caused by leaking USTs;" "additional quantities of MTBE reach[ing] the soil and groundwater in the form of rainfall;" or "additional quantities of MTBE reach[ing] the soil and groundwater through vaporization from USTs."

The Coastal Defendants deny plaintiffs' allegations regarding the existence of "widespread contamination" of groundwater by MTBE.  The Coastal Defendants state that

6

plaintiffs' allegation that "MTBE contamination of groundwater was and is...inevitable and foreseeable" is a legal conclusion which does not require a response by the Coastal Defendants.

I.   **Allegations Regarding Defendants' "Constructive Knowledge" of MTBE and "Threats Posed to Groundwater"**

The Coastal Defendants state that plaintiffs' allegation that "Defendants were or should have been aware that MTBE contamination of groundwater was inevitable, as a result of MTBE's water-seeking properties, recalcitrance to biogradation and bioremediation, and the long history of nationwide gasoline spills, leaks, and other losses..." is a legal conclusion which does not require a response by the Coastal Defendants.

The Coastal Defendants state that in 1988 the Environmental Protection Agency ("EPA") issued final rules governing, among other things, the design, construction, upgrade, and release detection requirements of USTs.  The EPA intended these regulations to eliminate leaks from USTs.  Many states implemented similar, but more stringent requirements.

The Coastal Defendants state that while under certain conditions MTBE may biodegrade less readily than some other components of gasoline, MTBE has been found to naturally attenuate and biodegrade in numerous ways.

The Coastal Defendants are without sufficient knowledge or information as to the truth of the allegations concerning the American Petroleum Institute's Toxicology Committee.

The Coastal Defendants deny that they had "early knowledge" of any "need to do low level, long term ingestion studies on the effects of MTBE."  The Coastal Defendants are without sufficient knowledge or information as to the truth of the allegations concerning whether such studies had been conducted by other persons, Defendants or organizations.

The Coastal Defendants deny plaintiffs' allegation that they "possess and have always had knowledge, resources, experience and other advantages which are vastly superior to those of

Plaintiffs" with respect to gasoline and MTBE. The Coastal Defendants state that many

plaintiffs are very large, publicly-traded water utilities, some of which are held by a large multi-

national conglomerate, whose business interests include coal and other natural resources. The

Coastal Defendants deny plaintiffs' allegation that at all times relevant to this litigation they have

"been in a position to know the threat which MTBE poses to groundwater." The Coastal

Defendants deny that MTBE is a "threat" to groundwater.

The Coastal Defendants deny plaintiffs' allegations that they failed to state the "truth

about MTBE" and "act in accordance with the truth about MTBE." Furthermore, the Coastal

Defendants state that plaintiffs' allegation that they had "a duty to disclose" information about

MTBE is a legal conclusion which does not require a response by the Coastal Defendants.

The Coastal Defendants deny that they breached any duty to plaintiffs, regulators, and the

general public.

**J.      Allegations Regarding Defendants' "Early Knowledge" of Specific Instances
         of MTBE Contamination of Groundwater**

The Coastal Defendants deny that they knew as early as 1980 of the impact of MTBE and

its contamination of water.

The complaints purport to describe various publicly reported incidents of MTBE

contamination in New Jersey, New York and Maine in the 1980s. The Coastal Defendants are

without sufficient knowledge or information as to the truth of the allegations concerning

contamination events in Rockaway, New Jersey; Jacksonville, Maryland; Liberty, New York;

and East Patchogue, New York. The Coastal Defendants admit that the events did not involve

the Coastal Defendants. The Coastal Defendants deny knowing more about these events than

was "publicly reported" at the time to the general public, other than as a result of reading

plaintiffs' complaints.

**K.     Allegations Regarding Defendants' "Awareness of the 1986 Garrett Report"**

The Coastal Defendants are without sufficient knowledge or information as to the truth of

the allegations concerning the 1986 paper, written by Peter Garrett and Marcel Moreau of the

Maine Department of Environmental Protection, entitled "Methyl Tertiary Butyl Ether as a

Ground Water Contaminant" (the "Garrett Report"). The Coastal Defendants are without

sufficient knowledge or information as to the truth of the allegations concerning the

Groundwater Technical Task Force ("GTTF") and/or its communications with the National Well

Association.

**L.     Allegations Regarding Defendants' Internal Studies on MTBE and Contamination of Groundwater**

The Coastal Defendants state that they are without sufficient knowledge or information as

to the truth of the allegations concerning Arco Chemical's statements to any Defendant. The

Coastal Defendants are without sufficient knowledge or information as to the truth of the

allegations concerning the Groundwater Technical Task Force ("GTTF") and its communications

with the oil industry.

The Coastal Defendants are without sufficient knowledge or information as to the truth of

the allegations concerning certain documents produced by and/or certain communications of

Arco Chemical, Mobil, ChevronTexaco, Chevron or Shell. The Coastal Defendants deny that

Arco Chemical, Mobil, ChevronTexaco, Chevron or Shell spoke on behalf of the Coastal

Defendants.

The Coastal Defendants did not participate in comments about MTBE to the EPA in

1986. The Coastal Defendants deny that Arco Chemical made any representation to them

regarding the Garrett Report.

The Coastal Defendants deny that they prepared or conducted any internal studies regarding MTBE contamination of groundwater.

**M.     Allegations Regarding Defendants' Knowledge Concerning the Existence of MTBE Toxicity Studies**

The Coastal Defendants are without sufficient knowledge or information as to the truth of the allegations concerning the existence or non-existence of long-term cancer studies on MTBE effects.

The Coastal Defendants are without sufficient knowledge or information as to the truth of the allegations concerning the effect of MTBE on animals, and "common knowledge within the scientific community" regarding when toxicological tests must be performed.   The Coastal Defendants admit that they did not perform any toxicological tests on MTBE.  However, the Coastal Defendants state that they did follow their standard environmental health and safety procedures when introducing MTBE into their products.

The Coastal Defendants deny that they attempted to convince the EPA that health testing of MTBE was not needed.

The Coastal Defendants deny that they exposed "millions of Americans to potential harm."

**N.     Allegations Regarding Representations to the EPA and the Public about MTBE and Contamination of Groundwater**

The Coastal Defendants deny that they had any agreement with another defendant to withhold from any plaintiff, government regulator or the public information concerning MTBE. Specifically, the Coastal Defendants deny that in the early 1980's they formed or were a part of any formal or informal task-forces or committees created for the "purpose of concealing the actual threat of MTBE, facilitating the...use of MTBE without regard to its impact on Plaintiff(s)

and convincing the public and regulators that increasing concentrations of MTBE in gasoline was desirable."

A certain Coastal Defendant (El Paso Merchant Energy-Petroleum Company) admits it, or one or more of its employees, was at one or more times during the relevant time period, a member of the American Petroleum Institute ("API"). All other Coastal Defendants deny that they were, at any relevant time period, a member of the API. Certain Coastal Defendants (Coastal Eagle Point Oil Company and Coastal Chem., Inc.) admit that they, or one or more of their employees, were at one or more times during the relevant time period a member of the Oxygenated Fuels Association ("OFA"). Other Coastal Defendants (Coastal Oil New England, Inc. and El Paso Merchant Energy-Petroleum Company) deny that they were at any relevant time a member of the OFA.

Certain Coastal Defendants deny that their membership in OFA constituted "conspir[ing] to conceal the risk of MTBE contamination of groundwater" and further deny that their membership in OFA constituted "placing corporate profits" above harm to the environment and plaintiffs. The Coastal Defendants further deny that any industry group or any other defendant named in the MTBE lawsuits made any representations to the public or government officials on behalf of the Coastal Defendants.

The Coastal Defendants deny that they "manufactured and distributed MTBE with actual knowledge of MTBE's defects and with actual knowledge that MTBE would cause harm in groundwater and production wells." The Coastal Defendants further deny that they took "affirmative steps to conceal those effects."

11

**O.    Allegations Regarding Representations to EPA about Testing under the Toxic Substances Control Act (TSCA) in the Late 1980's**

The Coastal Defendants are without sufficient knowledge or information as to the truth of the allegations concerning representations by or communications of ARCO to the Interagency Testing Committee ("ITC") concerning MTBE.  The Coastal Defendants are without sufficient knowledge or information as to the truth of the allegations concerning the reliance of ITC on any representations or communications of ARCO.

The Coastal Defendants deny that they were involved in any effort to "convince the EPA that additional testing of MTBE was not needed."  The Coastal Defendants deny that ARCO spoke on their behalf or with their explicit or implicit approval when making any representation to ITC.

The Coastal Defendants are without sufficient knowledge or information as to the truth of the allegations concerning representations by ARCO and Exxon to the EPA at the EPA's December 17, 1986 Public Focus Meeting.

The Coastal Defendants are without sufficient knowledge or information as to the truth of the allegations concerning the formation of the MTBE Committee or the actions and/or pronouncements of such Committee members.  The Coastal Defendants deny that they were at any relevant time a member of the MTBE Committee or MTBE Technical Subcommittee.

The Coastal Defendants further deny that they made any representations regarding MTBE testing to the ITC, to the EPA during its Public Focus Meeting, or to the EPA by way of MTBE Committee communications.  The Coastal Defendants deny that any industry group or any other defendant named in the MTBE lawsuits made any representations to the public or government officials on behalf of the Coastal Defendants.

12

The Coastal Defendants are without sufficient knowledge or information as to the truth of the allegations concerning some gasoline manufacturers and distributors entering a January 21, 1988 Testing Consent Order with EPA, and any representations made by gasoline manufacturers and distributors to EPA with respect to the Order. The Coastal Defendants did not sign or participate in any purported "Testing Consent Order" or make any representations to the EPA.

The Coastal Defendants further deny that representations or communications of other defendants or committees are evidence of any improper act, omission or breach of any duty on the part of the Coastal Defendants.

**P.     Allegations Regarding Representations to Congress about the Reformulated Gasoline Program**

The Coastal Defendants admit that prior to 1990, Congress was preparing to take action to address the Nation's smog problem. The Coastal Defendants state that beginning in the late 1970s, following the U.S. EPA's mandate to reduce lead in gasoline, most U.S. refiners began evaluating oxygenates and octane enhancers such as ethanol and MTBE.

In 1990, with the amendments to the Clean Air Act, the federal government mandated an increase in the use of oxygenates (up to 2.7% oxygen content) to meet ambient carbon monoxide air requirements in winter gasoline in many cities (beginning in 1992). In 1995, various oxygenates were extended by regulation to year-round use for severe, non-attainment ozone areas in the United States.

The Coastal Defendants state that although the 1990 Clean Air Act Amendments ("CAAA") did not mandate MTBE as the only oxygenate, in practical terms the CAAA certainly did compel MTBE's use. The EPA and Congress knew that the oxygen requirements of the Act could not and would not be met without MTBE's use. Reformulated gasolines used since that

time have sometimes contained between 10% and 15% MTBE, or up to 10% ethanol, to meet government mandates on oxygenate content.

In response to plaintiffs' allegation that Congress adopted the Reformulated Gasoline (RFG) Program as part of the 1990 Amendments to the Clean Air Act "[a]s a result of tremendous lobbying efforts by the industry, including Defendants," the Coastal Defendants deny that they lobbied Congress to adopt the RFG program or to list MTBE as one of the required oxygenates.

The Coastal Defendants further deny that ethanol was available in sufficient supply to meet the demand for oxygenated gasoline in the RFG and oxy-fuel regions when the Amendments requiring 2% oxygen content in year-round gasoline in areas using RFG became effective.

The Coastal Defendants further deny that MTBE was their "oxygenate of choice" based on cost considerations and/or profitability.

The Coastal Defendants admit that at all times when they owned refineries, refined intermediate feedstocks, and made gasoline, they complied with the legal requirements of the lead phase-out, the RFG Program, the Oxygenated Fuel Program and the Mobile Source Air Toxics Rule. The Coastal Defendants further state that several government agencies have concluded that MTBE has contributed substantially to reducing air pollution.

The Coastal Defendants further state that several government agencies have concluded that MTBE has contributed substantially to reducing air pollution. The Coastal Defendants are without sufficient knowledge or information as to the truth of the allegations concerning whether "safe, more environmentally sound alternatives were available."

14

**Q.    Allegations Regarding Representations to Plaintiffs and the Public,
Including Downstream Gasoline Handlers, About Gasoline with MTBE**

The Coastal Defendants deny that they "misrepresented the properties of MTBE" to

plaintiffs or the public, or "withheld information" about "the dangers of MTBE." The Coastal

Defendants are without sufficient knowledge or information as to the truth of the allegations

concerning when the public "started to become aware of the dangers of MTBE."

The Coastal Defendants are without sufficient knowledge or information as to the truth of

the allegations concerning representations made by George Dominguez of the MTBE Committee

on April 1 and 2 of 1987. The Coastal Defendants are without sufficient knowledge or

information as to the truth of the allegations concerning a letter written in 1994 by "an official

with the API" regarding the use of MTBE. The Coastal Defendants are without sufficient

knowledge or information as to the truth of the allegations concerning the publishing and

distribution of a pamphlet on public health issues and MTBE in April 1996 by an OFA agent.

The Coastal Defendants deny that they at any relevant time "greenwashed shameful

facts," or "judged" MTBE contamination "too costly to clean up." The Coastal Defendants state

that their policy consistently has been to clean-up promptly and effectively any gasoline spill for

which they are responsible, regardless of its MTBE content.

The Coastal Defendants state that they are without sufficient knowledge or information as

to the truth of the allegations concerning what alternatives Downstream Handlers and the general

public would have sought or whether the Downstream Handlers and the public would have

demanded MTBE-free gasoline.

The Coastal Defendants state that plaintiffs' allegation that their "failure to warn of the

hazards posed by MTBE contamination of groundwater...deprived [plaintiffs] of facts from

which its injury from MTBE contamination could reasonably have been inferred" is a legal

conclusion which does not require a response by the Coastal Defendants. The Coastal
Defendants deny that they breached any duty to warn or deprive plaintiffs of any facts.

### R.   Allegations Regarding Defendants Use of MTBE in Gasoline Post-Creation of the RFG Program

The Coastal Defendants are without sufficient knowledge or information as to the truth of
the allegations concerning historical or recent trends of MTBE use and content of MTBE in
gasoline by the oil industry after the creation of the RFG program.

The Coastal Defendants deny that "MTBE [was] [their] oxygenate of choice," and deny
that they "decided to forego" use of ethanol. The Coastal Defendants state that due to supply and
transport issues, ethanol has not been available to satisfy the requirements of the RFG program.

### S.   Allegations Regarding MTBE's Degradation Product: TBA

The Coastal Defendants admit that TBA is the product of the hydrolysis of isobutylene.
The Coastal Defendants admit that TBA can be an intermediate product of MTBE
biodegradation. The Coastal Defendants are without sufficient knowledge or information as to
the truth of the remaining allegations concerning the use of TBA as an oxygenate in gasoline.

The Coastal Defendants state that solubility and mobility are relative properties and that
TBA is more soluble and mobile in water than certain gasoline components, such as the BTEX
compounds. The Coastal Defendants further state that TBA's behavior in the environment – and
its behavior relative to BTEX – is dependent on a variety of factors, including the nature or
method of its release, the geological setting, and environmental and microbial factors.

The Coastal Defendants are without sufficient knowledge or information as to the truth of
the remaining allegations concerning the properties, characteristics and persistence of TBA in
groundwater, or its presence in water supplies.

The Coastal Defendants deny that they breached any duty to plaintiffs, regulators, and the general public.

**T.    Allegations Regarding MTBE's Effect upon Groundwater and Groundwater Wells**

The Coastal Defendants are without sufficient knowledge or information as to the truth of the allegations concerning frequency and extent of MTBE contamination in groundwater.

The Coastal Defendants are without sufficient knowledge or information as to the truth of the allegations concerning the EPA Blue Ribbon Panel findings.

**U.    Allegations Regarding MTBE-Related Actions Taken by State or Federal Governmental Bodies**

The Coastal Defendants admit that in 2001, EPA provided advance notice of its intent to initiate a rulemaking pursuant to TSCA to eliminate or limit the use of MTBE as a fuel additive. No such rulemaking was ever initiated.  The Coastal Defendants admit that certain proposed legislation in the U.S. Congress may limit the use of MTBE in gasoline in the future but no such legislation has passed.  The Coastal Defendants admit that certain state legislatures or regulatory bodies have passed laws or adopted regulations to limit or eliminate the use of MTBE in gasoline.  The details of such laws are a matter of public record.

**V.    Allegations Regarding Plaintiffs' Claimed Inability to Identify Relevant Sources of Gasoline Leaks or Spills Affecting a Given Site**

Gasoline leaks, whether containing MTBE or not, are traceable to a specific source, limited to the immediate geographic area of the source, and remediable.  In the vast majority of leak incidents, a responsible party can be and is identified.

The Coastal Defendants deny that gasoline can never be traced from a contamination site to its terminal or refinery source.

17

### W.   Allegations Regarding Medical Monitoring

The Coastal Defendants are without sufficient knowledge or information as to the truth of the allegations concerning medical treatment and monitoring for exposure to gasoline or gasoline containing MTBE.

### X.   Allegations Purporting to Quote or Summarize Documents

Numerous paragraphs in each complaint purport to quote from or summarize documents, statutes and regulations.  These written materials speak for themselves.  The documents, statutes and regulations referenced by plaintiffs, which are not attached to the complaints, are the best evidence of their content, and the Coastal Defendants therefore deny plaintiffs' attempts to summarize or characterize the contents of these written materials.

### Y.   Allegations Regarding Defendants Unrelated to the Coastal Defendants

The Coastal Defendants are without knowledge or information sufficient to form a belief as to the truth of the matters averred in the complaints regarding the specific statements, acts or omissions of defendants unrelated to the Coastal Defendants.

### Z.   Allegations Regarding Particular Claims or Counts

In response to the portions of the complaints purporting to state particular common law or statutory claims, the Coastal Defendants incorporate each paragraph of this Master Answer as if fully restated herein.  The Coastal Defendants deny that they are liable for any legal claim in any MDL 1358 complaint.

### AA.   Allegations Regarding Claimed Injuries or Damages

Some complaints make claims about contamination to specific wells, or water resources, and others do not.  The Coastal Defendants are without knowledge or information sufficient to form a belief as to the truth of the matters averred in the complaints regarding specific incidents of alleged contamination.  The Coastal Defendants believe publicly available documents

18

regarding plaintiffs will demonstrate that many of the wells or water resources at issue have not been impacted by MTBE, or have been impacted only at levels well below state action standards for MTBE.

With regard to alleged damages, the allegations require no further answer.  To the extent that further answer is deemed necessary, the Coastal Defendants admit that plaintiffs seek the relief mentioned in the complaints, but deny that plaintiffs are entitled to any relief.

### BB.    Plaintiffs' Demands for Jury Trials

Plaintiffs in all actions have demanded a trial by jury of all claims asserted in the complaints.  These jury demands require no answer.  To the extent any answer is deemed necessary, the Coastal Defendants admit that the plaintiffs demand jury trials, but deny that they are entitled to them.

### CC.    Plaintiffs' Allegations of Intentional, Willful, Deliberate, or Negligent Acts

The Coastal Defendants deny that they intentionally, willfully, deliberately, or negligently committed any acts that caused or foreseeably could have caused harm to plaintiffs or any other party.

### DD.    Plaintiffs' Allegations of Representational Standing

Certain California plaintiffs have alleged a right to bring an action in a representative capacity.  By orders dated June 9 and 22, 2005, the Court either struck all such allegations or confirmed that such allegations have been disavowed by the plaintiff.  On the basis of these Court orders, the Coastal Defendants decline to answer these allegations.  To the extent any answer is deemed necessary, the Coastal Defendants deny that any plaintiff has standing to bring claims in a representational capacity.

**EE.   Certain Plaintiffs' Allegations of Ownership of the Groundwater Resources**

To the extent plaintiffs allege that they own or have the authority to protect groundwater, groundwater resources, water supplies, water rights, drinking water wells, or any other right in and to water or groundwater, the Coastal Defendants deny these allegations and deny that these plaintiffs have standing to bring any claim based on allegations of property damage on behalf of themselves or any other person or entity.

**FF.   Certain Plaintiffs' Allegations of Injury to Natural Resources**

Certain plaintiffs' complaints contain allegations of damage to natural resources and seek compensation and other relief as the alleged trustee and/or owners of those natural resources. The Coastal Defendants admit that groundwater, surface waters, wetlands and other ecological resources exist within the states at issue in MDL 1358 ("MDL states"). The Coastal Defendants admit that some of those ecological resources are privately owned and some are not. The Coastal Defendants admit that some natural resources may and do provide commercial, industrial, recreational and other services to the people and the economies of the MDL states.

The Coastal Defendants further admit that the police power of certain plaintiffs extends to the protection and conservation of certain natural resources which are not the private property of any person or entity and also admit that, by a longstanding legal fiction, this proposition is sometimes inexactly expressed by saying that a state is the owner or trustee of natural resources for the benefit of its people or citizens. The Coastal Defendants admit that certain governmental agencies have limited regulatory authority with respect to natural resources within an MDL state as provided by law.

**GG.   California Civil Code Section 1882 Claims**

Certain California plaintiffs have alleged causes of action and/or prayers for treble damages and attorneys' fees based on California Civil Code § 1882 *et seq.* By order dated May

31, 2005, the Court dismissed and struck these allegations from the complaints. On the basis of the Court's order, the Coastal Defendants decline to answer these allegations. To the extent any answer is deemed necessary, the Coastal Defendants deny that any plaintiff is entitled to recovery under California Civil Code § 1882 *et seq.*

## II.   GENERAL DENIAL OF REMAINING ALLEGATIONS

The Coastal Defendants deny the remaining allegations in the complaints in MDL 1358 cases for which an answer is presently required, and in which they have been properly named and served.

## III.   RESERVATION OF RIGHT TO AMEND

The Coastal Defendants reserve the right to amend this Seventh Master Answer.

## IV.   AFFIRMATIVE DEFENSES APPLICABLE TO ALL CASES

For their separate defenses to the complaints in MDL 1358 cases for which an answer is presently required, and in which they have been properly named and served, the Coastal Defendants state as follows:

1.   Plaintiffs' claims are barred in whole or in part by the doctrine of federal preemption.

2.   At all relevant times, the Coastal Defendants' actions and their products complied with and were undertaken pursuant to applicable federal, state, and local laws, rules, regulations and specifications.

3.   Plaintiffs' claims are barred in whole or in part because federal, state and/or local authorities and agencies have mandated, directed, approved and/or ratified the alleged actions or omissions of the Coastal Defendants.

4.    All acts and conduct of the Coastal Defendants, as alleged in the complaints, conformed to and were pursuant to statutes, government regulations and industry standards, and were based upon the state of knowledge existing at all material times alleged in the complaints.

5.    The relief sought by plaintiffs' complaints is, in whole or in part, within the particular expertise of and is being addressed by federal and state governments, and their relevant agencies, and thus this Court should decline to exercise jurisdiction over this matter pursuant to the doctrine of primary jurisdiction.

6.    Plaintiffs have failed to exhaust their administrative remedies.

7.    Plaintiffs have a plain, common, adequate and speedy remedy at law.  The equitable causes of action alleged in the complaints are thus barred.

8.    Plaintiffs are barred from seeking strict liability for design defect as any attempt to reexamine the mandatory cost-benefit analysis delegated to and performed by the EPA pursuant to its obligations under the Clean Air Act (CAA) would be impermissible given that Congress, through Section 211 of the CAA, authorized the EPA, and not the courts, to perform the cost-benefit analysis.

9.    If it is determined that plaintiffs or anyone on whose behalf plaintiffs are allegedly suing, was injured, as set forth in the complaints, which the Coastal Defendants deny the Coastal Defendants allege that such hardship is outweighed by the convenience and public service rendered by the Coastal Defendants' actions.

10.    Each purported cause of action asserted in the complaints is barred under the doctrine of primary assumption of risk in that the general public, by and through its elected representatives and their appointees, knew and understood the alleged risks of harm presented by

the use of MTBE, if any, and elected nevertheless to proceed to require the use of gasoline

oxygenates and to specifically permit the use of MTBE as a gasoline oxygenate.

11.   To the extent that plaintiffs have received or may receive the requested relief

from a governmental agency, the Coastal Defendants assert their entitlement to an appropriate

set-off or reduction of any judgment against them.

12.   The appropriate forum for plaintiffs' claims is an administrative agency, and

therefore all proceedings before this Court should be stayed pending administrative resolution of

the issues.

13.   The claims set forth in the complaints fail, in whole or in part, based on the

doctrine of election of remedies.

14.   Each purported cause of action of the complaints as applied to the Coastal

Defendants is barred because the relief sought therein would pose unreasonable barriers and

substantial burdens on interstate and/or international commerce in violation of the Commerce

Clause of the United States Constitution and/or the North American Free Trade Agreement.

15.   The complaints fail to state a claim upon which relief may be granted and

should, therefore, be dismissed pursuant Fed. R. Civ. P. 12(b)(6). Without limiting the general

application of the foregoing, the "commingled product theory" of market share liability has not

been adopted by the highest state court of any state implicated by this litigation. Any causes of

action based upon such a theory are legally insufficient and fail to state a claim upon which relief

may be granted. The Coastal Defendants further state that, to the extent the highest state court of

any state implicated by this litigation would, in fact, adopt a "commingled product theory" of

market share liability, it would not do so in the circumstances of these cases, where plaintiffs

have made no efforts to identify the source(s) of their alleged property damage and/or contamination.

16. Because plaintiffs have not suffered any cognizable harm and have not incurred any present damages, there is no current case or controversy and thus, plaintiffs' claims are not ripe for adjudication.

17. Plaintiffs suffered no losses or injuries that were proximately caused by the Coastal Defendants.

18. The Coastal Defendants' conduct was not the cause in fact of any injuries alleged by plaintiffs.

19. Plaintiffs have failed to state a cause of action for nuisance because they have neither alleged nor suffered any particularized injury.

20. The alleged injuries and damages, if any, suffered as a result of conduct legally attributable to the Coastal Defendants is *de minimis* and therefore any injunction would pose a disproportionate hardship on the Coastal Defendants, as well as on the public, in comparison to the injury and or damages allegedly suffered by plaintiffs. Accordingly, plaintiffs are not entitled to injunctive relief as to the Coastal Defendants as a matter of law.

21. Plaintiffs do not have a legally cognizable injury unless or until the alleged MTBE contamination exceeds state action levels.

22. Plaintiffs may not seek attorneys' fees as an element of relief.

23. Plaintiffs have failed to properly present any claim for attorneys' fees.

24. Because plaintiffs have sued multiple parties, under multiple causes of action, with divisible damages, the claim for attorneys' fees must be proportioned between the same.

25.    The claims set forth in the complaints are barred, in whole or in part, by the mootness doctrine.

26.    The complaints and each purported cause of action are barred, in whole or in part, by the defense of laches.  Plaintiffs' unreasonable and inexcusable delay in filing these actions caused substantial prejudice to the Coastal Defendants.

27.    The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations.

28.    The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of repose.

29.    Plaintiffs are estopped by their conduct from asserting any of the purported claims alleged against the Coastal Defendants in the complaints.

30.    Plaintiffs have not investigated the cause of the alleged harm or attempted to identify the actual responsible party or parties, thereby precluding any recovery of damages under the common law, for statutory violations, or under any market share or collective liability theory.

31.    Plaintiffs cannot establish the required predicates for their theories of collective liability, and therefore their defendant-identification burden remains.  In the event that the defendant-identification burden is shifted in the future, the Coastal Defendants deny that they contributed to the contamination at issue.

32.    Plaintiffs' claims are barred in whole or in part by the doctrine of waiver.

33.    Plaintiffs' claims are barred in whole or in part by the doctrine of accord and satisfaction.

34.   Because the highest state courts of any state implicated by this litigation have not recognized a "commingled product theory" of market share liability and/or would not do so under the circumstances of this case, the burden of proof of causation has not shifted to the Coastal Defendants or any other Defendant. Plaintiffs retain the burden of pleading and proving that the Coastal Defendants proximately caused their alleged property damage and/or environmental harm.

35.   Plaintiffs' claims fail, in whole or in part, based on the doctrine of unjust enrichment.

36.   Plaintiffs assumed the risk of all acts, injuries, and damages that plaintiffs now assert against the Coastal Defendants.

37.   The Coastal Defendants are entitled to total or partial indemnity from those individuals or Defendants who are responsible for plaintiffs' injuries or damages, if any, in an amount in direct proportion to their relative culpability.

38.   Plaintiffs lack the capacity to sue.

39.   Plaintiffs lack standing to sue.

40.   Plaintiffs' claim is barred because the Coastal Defendants' conduct caused no physical impact to plaintiffs' property.

41.   There is a defect or misjoinder of parties, in that plaintiffs have failed to join indispensable or necessary parties.

42.   Plaintiffs have failed to name the party or parties responsible for the alleged harm.

43.   The claims set forth in the complaints fail, in whole or in part, because of the failure to identify which defendant, if any, proximately caused the harms alleged by plaintiffs.

26

44.   Plaintiffs' claimed injuries were caused in whole or in part by others, whose actions were not controlled by or related to the Coastal Defendants.  Such actions are the superseding, supervening and/or intervening cause of plaintiffs' injuries and therefore plaintiffs may not recover from the Coastal Defendants as a matter of law.

45.   Plaintiffs' claims must be dismissed because they have failed to identify the particular defendant that is responsible for the harms alleged by plaintiffs.

46.   At no time did the Coastal Defendants exercise control over the persons or Defendants responsible for actual or threatened releases of MTBE, if any, alleged in the complaints.  At all times, the Coastal Defendants acted with due care with respect to any petroleum or petroleum products they used and took reasonable precautions against foreseeable acts or omissions of any such third parties and any foreseeable consequences resulting there from.

47.   The Coastal Defendants did not own, control or release any of the petroleum products that are alleged to have caused or threatened contamination of plaintiffs' wells.

48.   Any Coastal Defendant's gasoline product sold or distributed for resale was properly designed, formulated, prepared and otherwise not defective in any respect.

49.   Plaintiffs' strict liability claims fail because the benefits of the product that plaintiffs allege caused them harm outweigh its dangers, if any.

50.   To the extent required, the Coastal Defendants provided proper warnings, information, and instructions relating to their products pursuant to generally recognized and prevailing standards in existence at the time.

51.   Plaintiffs have failed to allege that the Coastal Defendants' alleged failure to provide an adequate warning proximately caused their injuries.

52. Any gasoline product containing MTBE manufactured, sold, or distributed for resale by the Coastal Defendants was not unreasonably dangerous when made.

53. The plaintiffs' claims against the Coastal Defendants are barred by the bulk supplier doctrine.

54. The Coastal Defendants sold their products to knowledgeable and sophisticated purchasers, and any injury alleged by plaintiffs was caused by such purchasers' failure to observe known standards of care.

55. Any injury, damage or loss sustained by the plaintiffs was proximately caused by and/or contributed to by their own negligence, carelessness, and/or omissions.

56. Plaintiffs' claims are barred pursuant to the learned intermediary doctrine.

57. If any damages or injuries alleged in the complaints occurred because of leaks in the gasoline storage tanks and associated piping, the Coastal Defendants are not liable for those damages and/or injuries because the gasoline storage tanks and associated piping, when manufactured and distributed, conformed to the then current state of scientific and industrial knowledge, and the tanks and associated piping were used for their intended purpose.

58. Plaintiffs' public nuisance claims should be dismissed because there were no acts or omissions by or on behalf of any of the defendants constituting an intentional, unreasonable interference with the plaintiffs' interest in the use and enjoyment of their property.

59. Plaintiffs' public nuisance claims must be dismissed because plaintiffs have failed to allege "special damages," an absolute prerequisite to the assertion of a public nuisance claim.

60. The Coastal Defendants allege that they owed no duty of care to plaintiffs in connection with the matter alleged in the complaints.

61. The complaints fail to plead the elements of negligence claims with sufficient clarity, specificity, and particularity.

62. Plaintiffs fail to state a claim for trespass because they cannot allege facts demonstrating willful intent to intrude on their property.

63. Plaintiffs' claims are barred to the extent the conduct complained of is protected by the First Amendment to the United States Constitution.

64. The complaints and each cause of action are barred based on the Coastal Defendants' valid exercise of the right of petition to the federal government, state government(s), and/or their respective deliberative bodies and agencies.

65. Plaintiffs' claims are barred, in whole or in part, based on plaintiffs' actual or constructive notice of reported spills or releases, if any, from publicly available records.

66. There is no legal relationship upon which any duty could possibly be owed by the Coastal Defendants to plaintiffs, and therefore, plaintiffs' causes of action fail as a matter of law.

67. The injuries and damages, if any, alleged by plaintiffs are caused in whole or in part to the presence of compounds other than MTBE (*e.g.*, the BTEX compounds). Under plaintiffs' own legal theories, the Coastal Defendants are not liable for damages caused by compounds other than MTBE. In the event liability is assessed against the Coastal Defendants, such liability must be reduced where, and to the extent that, other compounds – about which plaintiffs do not complain – contributed to the alleged injury.

68. The Coastal Defendants are not liable for contamination where chemical compounds other than MTBE exceed state actions levels or standards, requiring cleanup or

regardless of the presence of MTBE (particularly, but not exclusively, where MTBE is present below state action levels or standards).

69.   Any injury, damage or loss sustained by the plaintiffs in connection with the subject matter of this action was not reasonably foreseeable.

70.   If it is determined that plaintiffs or anyone on whose behalf plaintiffs are allegedly suing, was injured, as set forth in the complaints, which the Coastal Defendants deny, the Coastal Defendants allege that any award of damages shall be reduced in proportion to the percentage of fault attributable to the plaintiffs.

71.   If it is determined that plaintiffs or anyone on whose behalf plaintiffs are allegedly suing, was injured, as set forth in the complaints, which the Coastal Defendants deny, the Coastal Defendants allege that any award of damages shall be reduced in proportion to the percentage of fault attributable to third parties (including but not limited to persons or Defendants responsible for gasoline leaks or spills).

72.   The injuries alleged in the complaints, if any, may be reasonably apportioned among the defendants, as each defendant's alleged acts and omissions, including the Coastal Defendants', is divisible and distinct.  Therefore, no defendant is jointly and severally liable to plaintiffs for any claim alleged in the complaints.

73.   Plaintiffs have unreasonably failed to mitigate their damages, if any.

74.   To the extent that any party has settled or may settle in the future with plaintiffs, the Coastal Defendants assert their entitlement to an appropriate credit or reduction of any judgment(s) against them.

75.   Plaintiffs' claims for punitive damages violate the provisions of the U.S. Constitution, including but not limited to those provisions requiring due process of law and prohibiting excessive fines.

76.   The Coastal Defendants incorporate by reference any affirmative defense, whether general or specific to a specific state, alleged by other defendants in MDL 1358.

77.   The pleading of these defenses shall not be construed as an undertaking by the Coastal Defendants of any burden that would otherwise be the responsibility of plaintiffs.

78.   Plaintiffs are public entities and/or authorities seeking compensation for damages to natural resources under their jurisdiction or purview.  These public entity/authority plaintiffs have improperly delegated the power to prosecute these cases to private attorneys on a contingent fee basis.  Such delegation is against public policy.

79.   The damages sought by plaintiffs are wholly speculative and conjectural.

80.   Some or all of the injury or damages suffered by plaintiffs were the product of conduct for which the Coastal Defendants cannot have liability to plaintiffs, since it is lawfully undertaken by the Coastal Defendants and their predecessors in the exercise of their right as owner(s) of real property.

81.   Plaintiffs' claims for natural resource damages are barred, in whole or in part, because plaintiffs do not own or have a trusteeship interest in the property and/or natural resources allegedly impacted.

82.   The Coastal Defendants reserve the right to assert additional defenses that may be pertinent to plaintiffs' claims when the precise nature of said claims are ascertained through discovery and based on facts developed as this matter progresses.

## V.   AFFIRMATIVE DEFENSES APPLICABLE TO PARTICULAR STATES

For their separate defenses to the complaints in MDL 1358 cases from particular states (for which an answer is presently required, and in which the Coastal Defendants have been properly named and served), the Coastal Defendants state as follows:

**CALIFORNIA**

1.    The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, California Code of Civil Procedure §§ 337, 337.1, 337.2, 337.15, 338, and 340.

2.    California Civil Code §§ 1431.1 through 1431.5, commonly known as "Proposition 51," provide that the liability of each defendant for non-economic damages, if any, shall be several only and shall not be joint, and the Coastal Defendants therefore assert that each defendant may be held liable only for the amount of non-economic damages, if any, allocated to that defendant in direct proportion to its percentage of fault, if any.

3.    The Coastal Defendants allege that their liability, if any, for non-economic loss be pro rated according to the provisions of California Civil Code § 1431.2.

4.    The complaints and each purported cause of action are barred because plaintiffs and/or their predecessors-in-interest and assignors are guilty of unclean hands.

5.    Plaintiffs' claims fail, in whole or in part, based on the doctrine of unjust enrichment.

6.    As to each cause of action in the complaints, the Coastal Defendants allege that the release of hazardous substances, if any, and the damages resulting therefrom, if any, were caused by an act of God.

7.    The complaints and each purported cause of action are barred because they are ambiguous and uncertain.

8.    Plaintiff did not reasonably rely on any representation, disclaimer, warning, or other act or omission of the Coastal Defendants.

9.    The Coastal Defendants had no duty to warn plaintiff or third parties about the potential dangers, if any, of the product or products manufactured, packaged, labeled, used, applied and/or removed by said third parties.

10.    The Coastal Defendants had no duty to warn because the risks of injury and damages inherent in utilizing the products described in the complaints, if any, were open and obvious.

11.    Any express or implied warranties alleged by plaintiffs to have been made by the Coastal Defendants, if made at all, were expressly disclaimed and excluded by product labels, pursuant to the laws of the State of California, which provided that the Coastal Defendants made no warranties, express or implied, concerning the products or the use of said products that extended beyond the description on the label, and that all statements made concerning said products applied only when used as directed.

12.    Plaintiffs are sophisticated water purveyors or managers and were, at all relevant times, fully aware of the nature and risks of injury and damages described in the complaints that could arise in the operations or management of a public drinking water supply system.

13.    If there was a less dangerous alternate design, without admitting that there was and without assuming the burden of proof on this issue, the Coastal Defendants did not and could not have known of such an alternate design at the time.

33

14.   If there was a less dangerous alternate design, without admitting that there was and without assuming the burden of proof on this issue, such an alternate design was not feasible at the time.

15.   Plaintiff and/or others modified, altered, or changed the Coastal Defendants' products or materials referred to in the complaints, if any, so that such changes in any said products or materials proximately caused plaintiffs' injuries, loss and damages, if any.

16.   If the Coastal Defendants provided the products alleged to have been defective, and without admitting that they did so or that any product was defective and without assuming the burden of proof on these issues, the products were misused or abused by others without the knowledge or consent of the Coastal Defendants and in a manner not reasonably foreseeable by the Coastal Defendants prior to their receipt of notice of the circumstances described in the complaints.  Such misuse or abuse was the sole cause of or a contributing cause to the injuries, losses, and/or damages, if any, suffered by plaintiffs as alleged in the Complaint, and by reason thereof, plaintiffs are barred from recovering some or all of any damages suffered.

17.   The Coastal Defendants are not liable for any alleged wrongful entry upon land because plaintiffs and/or plaintiffs' predecessors in interest or assignors expressly or impliedly consented to or had knowledge of all such activities or conditions.

18.   The Coastal Defendants allege that to the extent plaintiffs are claiming damages for the cost of remediation due to plaintiffs' alleged compliance with primary or secondary drinking water standard or other regulations enacted by the State of California or any other governmental body, those claims are unconstitutional because they constitute an ex post facto application of a regulation disallowed by Art. 1, sec. 9 of the U.S. Constitution.

34

19.   The complaints and each purported cause of action are barred, in whole or in part, by federal and state law, including but not limited to, the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2; the Clean Air Act, 42 U.S.C. § 7401, et seq.; the Toxic Substances Control Act, 15 U.S.C. § 2601, et seq; and rules, regulations, and decisions thereunder.

20.   The Coastal Defendants allege that the maximum contaminant level or other drinking water standard, to the extent they form the bases of plaintiffs' claims against Defendants, was/were arbitrarily and unreasonably enacted without due process and, therefore, cannot be enforced against the Coastal Defendants.

21.   The complaints and each purported cause of action are barred to the extent that federal and/or California state agencies have exonerated the Coastal Defendants and/or determined that any of the Coastal Defendants' facilities did not contribute to the presence of MTBE in the relevant groundwater for which plaintiffs are asserting damages.

22.   The complaints and each purported cause of action are barred because plaintiffs do not own or have abandoned, lost, waived, given up, or otherwise failed to perfect any rights, including but not limited to use rights related to any water that is the subject of the complaints.  Plaintiffs' claims are also barred because under California law, the water that is the subject of the complaints is the property of the State of California, not of plaintiffs.

23.   The complaints and each purported cause of action are barred to the extent that such claims have been satisfied by payments or provision of alternate water supplies by the Coastal Defendants or third parties.

24.   The complaints and each purported cause of action to the extent that plaintiffs have assigned rights and claims for certain damages and other relief, if any, to the Coastal Defendants, other defendants, or third parties.

25.   If plaintiffs sustained any injury under the circumstances alleged in the complaints or in any other respect, their recovery against the Coastal Defendants, if any, is barred by the alleged conduct and conditions resulted from a necessity.

26.   Plaintiffs' claims for trespass are barred because the Coastal Defendants are immune to liability for plaintiffs' damages, if any, caused by earth movement.

**ILLINOIS**

1.   The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including, but not limited to, 735 ILCS 5/13-205.

2.   Plaintiffs' recovery is barred, in whole or in part, due to their contributory fault, pursuant to 735 ILCS 5/2-1116.

3.   The Coastal Defendants are not jointly and severally liable in that their fault, if any, was less than twenty-five percent of the total fault attributable to all parties.  735 ILCS 5/1-116 and 735 ILCS 5/2-117.

4.   Plaintiffs' claims are barred by the provisions of 735 ILCS 5/13-213 to the extent they are predicated upon the alleged delivery of MTBE by the Coastal Defendants to a customer more than ten years prior to the filing of this case.

5.   Plaintiffs' efforts to impose liability on the Coastal Defendants without proof of causation violate the Due Process Clause and other clauses of the federal and state constitutions.

36

**INDIANA**

1.    The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including, but not limited to, Ind. Code Ann. § 34-20-3-1.

2.    Plaintiffs' product liability design defect claims are barred, in whole or in part, because no alleged act or omission by the Coastal Defendants gave rise to design defect liability pursuant to Indiana's Product Liability Act, as set forth in Ind. Code Ann. § 34-20-2-1.

3.    Plaintiffs' product liability claims fail because the Coastal Defendants had no duty to warn plaintiffs, as plaintiffs knew or should have known of the alleged danger. Ind. Cod Ann. §§ 34-20-6-1 and 34-20-6-3.

4.    Plaintiffs' product liability claims fail because the Coastal Defendants' products were in conformity with generally recognized state of the art. Ind. Code Ann. §§ 34-20-6-1 and 34-20-5-1.

5.    Any duty to warn, if one existed at all, was discharged pursuant to Ind. Code Ann. §§ 34-20-6-1 and 34-20-6-3 because the alleged defects, if any, were open and obvious to plaintiffs.

6.    Plaintiffs voluntarily and unreasonably assumed the risk of injury, thereby relieving the Coastal Defendants of liability.  Ind. Code Ann. §§ 34-20-6-1 and 34-20-6-3.

7.    Any alleged design defect was not the proximate cause of plaintiffs' injuries or harm, pursuant to Ind. Code Ann. § 34-20-6-1.

8.    Plaintiffs' alleged injuries, if any, resulted from the misuse of the product by plaintiffs or other persons, and such misuse was not reasonably expected by the Coastal

Defendants at the time that they sold or otherwise conveyed the product to the other party. Ind. Code Ann. § 34-20-6-4.

      9.   Plaintiffs' claims for public nuisance should be dismissed because at no time did any act or omission attributable to the Coastal Defendants or their products interfere with plaintiffs' comfortable enjoyment of life or property. Ind. Code Ann. § 34-19-1-1.

      10.   Plaintiffs have failed to state a cause of action for public nuisance because the Coastal Defendants' alleged conduct is not unreasonable upon comparison of their alleged conduct with plaintiffs' competing interests. Ind. Code Ann. § 34-19-1-1.

      11.   Plaintiffs' recovery is barred by their contributory fault, which is greater than the fault of all persons whose fault may have proximately contributed to plaintiffs' damages. Ind. Code Ann. § 34-51-2-6.

      12.   Plaintiffs' claims under the Indiana Environmental Legal Action statute fail because the Coastal Defendants did not "cause or contribute to the release" of gasoline.

      13.   Plaintiffs' efforts to impose liability on the Coastal Defendants without proof of causation violate the Due Process Clause and other clauses of the federal and state constitutions.

## MASSACHUSETTS

      1.   The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to Mass. Gen. Laws Ann. Ch. 260 § 2A.

      2.   Plaintiffs' claims are barred because their negligence is greater than the alleged negligence of the Coastal Defendants. Mass. Gen. Laws Ann. Ch. 231 § 85.

      3.   The Coastal Defendants are not liable for damages because any contamination resulted from the acts or omissions of third parties, and the Coastal Defendants

exercised due care with regard to their products and took reasonable precautions against foreseeable acts or omissions of third parties and the consequences that could foreseeably result from such acts or omissions. Mass. Gen. Laws Ann. Ch. 21E § 5 (c)(3).

    4.    Plaintiffs are not entitled to injunctive relief because they failed to provide written notice to the Massachusetts Attorney General and the Coastal Defendants as required by statute. Mass. Gen. Laws Ann. Ch. 214 § 7A.

## MISSOURI

    1.    The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including, but not limited to, Mo. Ann. Stat. §§ 516.100, 516.120 and 516.010 (West).

    2.    Plaintiffs' recovery is barred or must be reduced, in whole or in part, based on the doctrine of comparative fault. Mo. Ann. Stat. § 537.765 (West).

    3.    Any duty to warn, if one existed at all, was discharged pursuant to Mo. Ann. Stat. § 537.760 (West), because the alleged defects, if any, were open and obvious to plaintiffs.

    4.    Plaintiffs' product liability claims fail because the Coastal Defendants had no duty to warn plaintiffs, as plaintiffs knew or should have known of the alleged danger. Mo. Ann. Stat. § 537.760 (West).

    5.    Plaintiffs' product liability claims fail because the Coastal Defendants' products were in conformity with generally recognized state of the art. Mo. Ann. Stat. §§ 537.764 and 537.760 (West).

    6.    Plaintiffs' product liability claims fail because the Coastal Defendants' products, at the time they were sold, were not in a defective condition or unreasonably dangerous when put to a reasonably anticipated use. Mo. Ann. Stat. § 537.760 (West).

7.   Any alleged defective condition of the Coastal Defendants' products at the time they were sold was not the proximate cause of plaintiffs' injuries or harm. Mo. Ann. Stat. § 537.760 (West).

8.   Plaintiffs' alleged injuries, if any, resulted from use of the product that was not reasonably anticipated by the Coastal Defendants at the time that they sold or otherwise conveyed the product. Mo. Ann. Stat. § 537.760 (West).

9.   Plaintiffs' recovery of punitive damages arising out of their alleged injury is limited under Mo. Ann. Stat. § 510.265 (West).

**NEW JERSEY**

1.   The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, N.J. Stat. Ann. § 2A:14-2.

2.   The Coastal Defendants' conduct did not meet the minimum requirements of culpability with respect to each material element of the alleged offenses of civil conspiracy, public nuisance, and negligence, according to the applicable provision of N.J. Stat. Ann. § 2C:2-2, and, therefore, plaintiffs' claims on these counts should be dismissed.

3.   Plaintiffs were contributorily and comparatively negligent, and, therefore, their claims are barred or diminished, in whole or in part, by such negligence under the Comparative Negligence Act and common law.

4.   Plaintiffs' claims are barred by the entire controversy doctrine, the principles of *res judicata*, and collateral estoppel.

5.   The complaints and each purported cause of action are barred to the extent that such claims have been satisfied by payments or provisions of alternate water supplies by the Coastal Defendants, other Defendants or third parties.

6.    Plaintiffs' method of assessing natural resource damages was not adopted in a manner consistent with the Administrative Procedures Act, N.J. Stat. Ann. § 52:14B-2(e).

7.    Plaintiffs' claims for natural resource damages are in excess of any sovereign rights transmitted to New Jersey by the British Crown at independence, and, if upheld, would be an unconstitutional violation of the Equal Footing Doctrine.

8.    Plaintiffs' purported assessment of natural resource damages is an *ultra vires* act, contravenes protections afforded Defendants under the Constitutions of the State of New Jersey and the United States and is not recoverable.

9.    Plaintiffs have failed to state a cause of action for natural resource damages.

10.    Plaintiffs' claims are barred, in whole or in part, by one or more of the statutory defenses to liability provided by the New Jersey Spill Compensation and Control Act, N.J. Stat. Ann. § 58:10-23.11 *et seq.* ("Spill Act").

11.    Plaintiffs have no claim under the Spill Act because the Coastal Defendants are not dischargers and/or responsible persons within the meaning of the Spill Act.

12.    The Coastal Defendants are not "in any way responsible" for any discharges of a hazardous substance within the meaning of the Spill Act.

13.    Plaintiffs have not incurred "cleanup and removal costs" under the Spill Act.

14.    Plaintiffs' claims under the Spill Act are not ripe, since clean up and remediation have not been completed.

15.    Plaintiffs' claims under the Spill Act are barred, in whole or in part, because the claims asserted are preempted by federal law.

16.    Plaintiffs' claims under the Spill Act fail to the extent that any Defendant who has previously been found responsible for a discharge of a hazardous substance has resolved its liability to the State of New Jersey for damages.  N.J. Stat. Ann. § 58:10-23.11f-a(2)(b).

17.    Any injury or damages suffered by plaintiffs has been increased by plaintiffs' failure to mitigate their damages, in that (1) the policies and activities of the State of New Jersey and its agencies during the period of time for which plaintiffs seek damages have caused damage to natural resources greater than would have otherwise occurred, and (2) the State of New Jersey and its agencies have failed to take reasonable measures available to them to reduce damages.

18.    Plaintiffs' claims under the Spill Act are barred to the extent plaintiffs seek relief for conduct occurring or damages incurred prior to the effective date of the Spill Act.

19.    Plaintiffs have failed to join parties needed for the just adjudication of the plaintiffs' claims, in whose absence complete relief cannot be afforded the existing parties pursuant to N.J.Ct.R. 4:28-1.

20.    Plaintiffs' claims are barred, in whole or in part, by plaintiffs' failure to comply with the prerequisites to liability under the Spill Act, including, without limitation, plaintiffs' incurring of costs not authorized by the Spill Act and plaintiffs' failure to direct clean up and remediation operations in accordance with the National Contingency Plan to the greatest extent possible.

21.    Plaintiffs' strict liability claims are barred in whole or in part by N.J. Stat. Ann. § 58:10-23.11i, if those claims relate to any discharge or contamination eligible for funding from the Spill Act.

22.   Plaintiffs' allegations of strict products liability fail under the New Jersey Products Liability Act, N.J. Stat. Ann. 2A:58C-1, *et seq.*

23.   Plaintiffs' allegations of strict products liability fail under New Jersey common law.

24.   Plaintiffs' strict liability claims are barred in whole or in part by the State-of-the-Art Defense for products liability as set for in N.J. Stat. Ann. § 2A:58C-3(a)(1) and the common law of New Jersey.

25.   Plaintiffs' product liability claims are barred because the characteristics of the product were known to plaintiffs and the harm, if any, caused by an allegedly unsafe aspect of the product is an inherent characteristic of the product, recognized by plaintiffs as ordinary persons who used or consumed the product with the ordinary knowledge common to the class of persons for whom the product was intended. N.J. Stat. Ann. § 2A:58C-3(a)(2).

26.   If plaintiffs have stated a claim for strict products liability under the New Jersey Products Liability Act, N.J. Stat. Ann. §2A:58C-1, *et seq.*, then the Coastal Defendants are entitled to the absolute defenses and rebuttable presumptions of non-liability established in N.J. Stat. Ann. § 2A-58C-3a(1)-(3), as well as other statutes, regulations and case law.

27.   Plaintiffs' trespass and public nuisance claims are barred to the extent plaintiffs are seeking damages for property or wells not actually owned by the State of New Jersey.

28.   Plaintiffs' trespass claim fails in whole or in part to the extent plaintiffs are seeking damages to the ground and/or surface water of the State of New Jersey because the State of New Jersey does not have an exclusive possessory interest in such waters.

29.   Plaintiffs' trespass claim fails in whole or in part to the extent that plaintiffs are not in possession of, or maintain a sufficient ownership interest in, the lands upon which it is claimed Defendants trespassed.

30.   Plaintiffs' public nuisance claim fails in whole or in part because such claim does not provide for the recovery of monetary damages.

31.   Plaintiffs have no claim under the New Jersey Water Pollution Control Act, N.J. Stat. Ann. § 58:10A-6(a) *et seq.* ("WPCA"), because the Coastal Defendants are not dischargers and/or responsible persons within the meaning of WPCA.

32.   Plaintiffs' claims are barred to the extent that plaintiffs did not comply with the requirements of WPCA.

33.   Plaintiffs' punitive damages claims must be dismissed because the Coastal Defendants' purported acts or omissions were not actuated by actual malice or accompanied by wanton and willful conduct.  N.J. Stat. Ann. § 2A:15-5.9 *et seq.*

34.   The complaints and each purported cause of action are barred to the extent that federal or New Jersey state agencies have exonerated the Coastal Defendants and/or determined that any Coastal Defendants' facility did not contribute to the presence of MTBE in the relevant ground and/or surface water for which plaintiffs are asserting damages.

35.   Plaintiffs claims are barred by the doctrine of primary jurisdiction in that the New Jersey Department of Environmental Protection ("NJDEP") is responsible for directing and allocating responsibility for investigation and remediation of the environmental condition alleged in the complaint.

36.   Plaintiffs' claims are barred because the Coastal Defendants have complied with, and satisfied, all applicable laws, regulations, rules, orders, directives and/or other

requirements of the NJDEP and/or other state or federal agencies regarding the environmental condition alleged in the complaint.

37. Plaintiffs' claims are frivolous. The Coastal Defendants reserve the right to move at any time for attorneys' fees and costs in accordance with the New Jersey Frivolous Claims Statute, or pursuant to R.1:4-8.

**NEW YORK**

1. The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, N.Y. Civ. Prac. L. & R. § 214.

2. Plaintiffs' claims pursuant to New York General Business Law § 349 should be dismissed for failure to plead facts sufficient to show that defendants engaged in "consumer-oriented" conduct that had a broad impact on consumers at large which injured the plaintiffs as within the intended ambit of the statute.

3. Plaintiffs' claims pursuant to New York General Business Law § 349 should be dismissed because plaintiffs are not consumers under § 349.

4. Plaintiffs' claims pursuant to New York General Business Law § 349 should be dismissed because the alleged deceptive conduct for which the plaintiffs seek redress does not fall within the ambit of the statute, as the plaintiffs' injuries did not arise by reason of any alleged violation of GBL § 349.

5. Plaintiffs' claims pursuant to New York General Business Law § 349 should be dismissed as compliance with the Federal Trade Commission Act, 15 U.S.C.A. § 45 is a complete defense to an action brought under GBL § 349.

6. Plaintiffs' claims pursuant to New York General Business Law § 349 should be dismissed because any act or practice of the Coastal Defendants complied with the rules and

regulations of, and the statutes administered by, the Federal Trade Commission, or any official

department, division, commission or agency of the United States.

7.   If the Coastal Defendants are found liable for any non-economic loss

allegedly suffered by plaintiffs, and such liability equals fifty percent or less of the total liability

of all persons liable, and the aggregate liability of such other persons equals or exceeds fifty

percent of the total liability, then, pursuant to Civil Practice Law and Rules Article 16, the

Coastal Defendants' liability to plaintiffs for non-economic loss shall not exceed the Coastal

Defendants' equitable share determined in accordance with the relative culpability of each

person causing or contributing to the total liability for such non-economic loss.

**PENNSYLVANIA**

1.   The complaints and each purported cause of action are barred by the

applicable provisions of the pertinent statutes of limitations, including but not limited to, 42 Pa.

Cons. Stat. Ann. § 5524.

2.   The Coastal Defendants' conduct did not meet the minimum requirements of

culpability with respect to each material element of the alleged offenses of civil conspiracy,

public nuisance, and negligence in order to be found liable according to the applicable provision

of 18 Pa. Cons. Stat. Ann. § 302, and, therefore, plaintiffs' claims on these counts should be

dismissed.

3.   Plaintiffs' claims for public nuisance are barred because at all relevant times,

neither the Coastal Defendants nor their products violated any orders or regulations adopted by

the Pennsylvania Department of Environmental Resources. 35 Pa. Cons. Stat. Ann. § 691.503.

4.   Pursuant to 35 Pa. Cons. Stat. Ann. § 6021.1311, the Coastal Defendants did

not contribute to the alleged damages, contamination, or pollution.

5. Plaintiffs are precluded from brining this action as primary jurisdiction rests with other governmental authorities.

6. The actions of the Coastal Defendants were not knowing or reckless, or in wanton and outrageous disregard of the environment and/or plaintiffs' health and safety.

7. Plaintiffs' claim for punitive damages is barred by the Due Process Clause and other clauses of the federal and state constitutions.

**WHEREFORE**, the Coastal Defendants request entry of judgment dismissing the complaints with prejudice, and awarding the Coastal Defendants their costs and attorneys' fees, and such other relief as the Court may deem just and proper.

Dated: February 17, 2011

Respectfully submitted,

Brent H. Allen (D.C. Bar #464934)
Admitted *pro hac vice*
Dawn A. Ellison (D.C. Bar #464296)
Admitted *pro hac vice*
Lesley Lawrence-Hammer (D.C. Bar #982196)
Admitted *pro hac vice*
James Layman (D.C. Bar #983202)
Admitted *pro hac vice*
GREENBERG TRAURIG LLP
2101 L Street, N.W., Suite 1000
Washington, DC 20037
202.331.3100
202.331.3101 (Fax)

*Attorneys for Defendants Coastal Eagle Point Oil*
*Company; Coastal Oil New England, Inc.; Coastal*
*Chem., Inc.; El Paso Merchant Energy-Petroleum*
*Company; and El Paso Corporation*

## CERTIFICATE OF SERVICE

This is to certify that on February 17, 2011, a copy of the Seventh Amended Master

Answer of Defendants Coastal Eagle Point Oil Company; Coastal Oil New England, Inc.;

Coastal Chem., Inc.; El Paso Merchant Energy-Petroleum Company; and El Paso Corporation

was served on all counsel of record via Lexis Nexis File and Serve.



Lesley Lawrence-Hammer