| | | |
|---|---|---|
| UNITED STATES DISTRICT COURT | ) | Master File C.A. No. 1:00-1898 |
| SOUTHERN DISTRICT OF NEW YORK | ) | |
| ———————————————— | ) | MDL 1358 (SAS) |
| | ) | No. M21-88 |
| In re Methyl Tertiary-Butyl Ether | ) | |
| ("MTBE") Products Liability Litigation | ) | TOTAL PETROCHEMICALS USA, |
| | ) | INC.'S EIGHTH AMENDED MASTER |
| ———————————————— | ) | ANSWER, AFFIRMATIVE |
| | ) | DEFENSES, AND MASTER CROSS- |
| | ) | COMPLAINT AND THIRD-PARTY |
| | ) | COMPLAINT |

This document relates to:[1]

*New Jersey Dept. of Environmental Protection v. Amerada Hess Corp. et al.,* No. 08-CV-0312
*Village of Roanoke v. Ashland, Inc., et al.,* No. 09-L-9
*Town of Kouts v. Ashland, Inc., et al.*; No. 2 10 CV 186
*Village of Bethalto v. Ashland, Inc., et al.*; No. 2010L 000402
*Coraopolis Water and Sewer Authority v. Ashland Inc., et al.*; No. 10-4192
*City of Kennett v. Ashland Inc., et al.*; No. 1:10-CV-00148
*City of Pattonsburg v. Ashland Inc., et al.*; No. 10-6119-FJG
*Bridgewater Water Department v. Atlantic Richfield Company, et al.*; No. 1:00-CV-11500-RBC

---

Pursuant to the Master Answer agreement among the parties, CMO #6, the Court's instructions during the January 13, 2005 status conference, and Federal Rules of Civil Procedure 13 and 14(a), TOTAL PETROCHEMICALS USA, INC. ("TOTAL") answers the complaints and files a master cross-complaint and third-party complaint in those MDL 1358 cases listed in the style of this pleading, as follows.

---

[1] TOTAL is not submitting repetitive motions to dismiss or strike in cases more recently consolidated in MDL 1358. However, TOTAL expressly reserves the arguments set forth in motions to dismiss or strike previously filed in cases in this MDL proceeding.

## EIGHTH AMENDED MASTER ANSWER

I.   **ADMISSIONS AND STATEMENTS REGARDING SELECT ALLEGATIONS**

A.   **Basic Defendant Information**

TOTAL is a Delaware corporation with its principal place of business in Houston, Texas. TOTAL has been named in certain of the MDL 1358 cases under the names of various predecessor entities, including ATOFINA Petrochemicals, Inc. and Fina Oil and Chemical Company. Fina Oil and Chemical Company was renamed ATOFINA Petrochemicals, Inc. on June 19, 2000. ATOFINA Petrochemicals, Inc. changed its name to TOTAL PETROCHEMICALS USA, INC. on October 1, 2004.

Since 1979, TOTAL has operated two refineries in the United States. TOTAL purchased the Big Spring, Texas refinery in 1963 and operated it until August 2000, when it was sold to a third party. In 1973, TOTAL purchased a refinery in Port Arthur, Texas, which it continues to operate.

B.   **Allegations Regarding Sale or Distribution of Gasoline with MTBE or TBA to States in Question**

TOTAL has not sold or distributed tertiary-butyl alcohol ("TBA") or gasoline containing TBA. TOTAL admits that it has sold reformulated gasoline containing MTBE at delivery points in New Jersey, North Carolina, Pennsylvania, and Texas at certain times during the relevant time period. TOTAL denies that any neat MTBE or reformulated gasoline containing MTBE manufactured by TOTAL was sold or distributed in Illinois.

C.   **Allegations Regarding Production of MTBE or TBA**

TOTAL has not manufactured TBA.

TOTAL owned and operated a refinery in Big Spring, Texas from 1963 to August 2000. From approximately October 1985 to 1996, TOTAL manufactured neat MTBE at the Big Spring,

Texas refinery for octane enhancement purposes. On information and belief, all MTBE manufactured was used by TOTAL for gasoline blending at the Big Spring refinery; the market area in which gasoline containing MTBE manufactured by TOTAL is distributed is limited to Arizona, New Mexico, Oklahoma, and Texas.

Beginning in approximately 1984, and continuing into 2007, TOTAL sent a mixed butylenes stream from its Port Arthur, Texas refinery to a facility in Port Neches, Texas owned and operated by Huntsman Petrochemical Corporation or its predecessors ("Huntsman"), at which Huntsman extracts isobutylene from the stream and reacts it with methanol to produce MTBE.

**D.    <u>Allegations Regarding Properties and Behavior of MTBE</u>**

TOTAL admits that MTBE is an aliphatic ether that does not occur naturally. TOTAL admits that there are various methods for the production of MTBE and that one method of production involves the reaction of methanol and isobutylene.

TOTAL states that solubility and mobility are relative properties and that while MTBE may be more soluble and mobile in water than certain gasoline components, such as the BTEX compounds, it is less soluble and mobile in water than other components sometimes blended into gasoline, such as ethanol. TOTAL further states that MTBE's behavior in the environment – and its behavior relative to BTEX – is dependent on a variety of factors, including, but not limited to, the nature or method of its release, the presence of other contaminants, the geological setting, and environmental and microbial factors.

TOTAL states that while under certain conditions, and at certain points in time, MTBE may biodegrade less readily than some other components of gasoline, MTBE has been found to naturally attenuate and biodegrade in numerous ways.

### E.   Allegations Regarding Properties and Behavior of TBA

TOTAL states that it has not manufactured TBA or sold or distributed gasoline containing TBA.

TOTAL admits that TBA can be an intermediate product of MTBE biodegradation.

TOTAL states that solubility and mobility are relative properties and that TBA may be more soluble and mobile in water than certain gasoline components, such as the BTEX compounds.  TOTAL further states that TBA's behavior in the environment – and its behavior relative to BTEX – is dependent on a variety of factors, including, but not limited to, the nature or method of its release, the presence of other contaminants, the geological setting, and environmental and microbial factors.

### F.   Allegations Regarding Taste and Odor

TOTAL admits that individuals vary in their ability to detect the taste and odor of MTBE in water and that at certain concentrations the presence of MTBE in water may be perceived by taste and odor.  TOTAL states that the responsible federal and state regulatory agencies have considered and adopted standards fully protective of MTBE taste and odor concerns.

### G.   Allegations Regarding Health Effects of MTBE

Plaintiffs' allegations of dire human health concerns from MTBE are unsubstantiated. MTBE has been studied publicly by scientists and government agencies for more than 20 years. MTBE has never been reliably linked to cancer, and there is no consensus in the scientific field that it is carcinogenic; indeed, major world health organizations have long refused to list MTBE as a human carcinogen.  TOTAL admits that the United States Environmental Protection Agency ("EPA") has in the past classified MTBE as a possible human carcinogen.  TOTAL states that the responsible federal and state regulatory agencies have considered and adopted standards fully protective of any alleged health concerns related to MTBE.

**H.**   **Allegations Regarding Storage and Handling of Gasoline**

TOTAL admits that it is commonly known that gasoline is sometimes unintentionally released into the environment from underground storage tanks and associated piping ("USTs") and by other means, and admits that millions of dollars and vast resources have been expended over the past 30 years by oil companies, retail site owners and operators, industry groups, and regulatory agencies to eliminate or reduce leaks and improve leak detection.  TOTAL states that it is likewise commonly known that all gasoline, regardless of its composition, should be handled carefully and should not be spilled.

**I.**   **Allegations Regarding Knowledge of MTBE Contamination at Particular Locations In 1980s**

The complaints purport to describe various publicly reported incidents of MTBE contamination in Maryland, New Jersey, New York, and Maine in the 1980s.

TOTAL lacks sufficient information to either admit or deny that in the early 1980s there was publicity regarding a contamination event in Rockaway, New Jersey.  TOTAL denies any contemporaneous involvement in or knowledge of such event.  TOTAL admits that, through this litigation, it is now aware that there may have been certain release events within the state of New York, some of which involved MTBE.

TOTAL lacks sufficient information to either admit or deny that the 1986 Garrett and Moreau paper described MTBE presence in certain wells in Maine.  TOTAL denies any knowledge of the conclusions reached in the 1986 Garrett and Moreau paper.  On information and belief, TOTAL states that it was widely known among government regulators in the 1980s that various incidents involving MTBE contamination – including the incidents Plaintiffs' complaints regularly list – had occurred.

J.   **Allegations Regarding Participation in Industry Associations or Lobbying Activities**

The chemical properties of ethers like MTBE have been known in the public arena for many, many years.  Plaintiffs' claim that defendants, including TOTAL, somehow hid this information from them, or from the U.S. government, is baseless.  TOTAL denies that it had any agreement with another defendant to withhold from Plaintiffs or government regulators information concerning MTBE.

TOTAL admits that prior to 1990, Congress was preparing to take action to address the nation's smog problem.  TOTAL admits that federal government agencies were aware of MTBE's chemical characteristics in 1986 or earlier, and that EPA held public meetings about MTBE in 1986.  TOTAL denies it was a member of OFA or the MTBE Committee.  TOTAL admits it was a member of API for a certain time but denies that it participated in the EPA Testing Consent Order for MTBE.

In response to Plaintiffs' allegation that Congress adopted the Reformulated Gasoline ("RFG") Program as part of the 1990 Amendments to the Clean Air Act "[a]s a result of tremendous lobbying efforts by the industry, including Defendants," TOTAL admits on information and belief that representatives of major oil companies provided comments and testimony during the rulemaking process for the 1990 Amendments to the Clean Air Act, while other companies actively resisted the RFG Program's requirement of oxygen content levels.

K.   **Allegations Regarding Requirements and Effects of the 1990 Clean Air Act Amendments**

TOTAL states that although the 1990 Clean Air Act Amendments ("CAAA") did not literally require use of MTBE as a gasoline additive, in practical terms the CAAA compelled MTBE's use.  EPA and Congress knew that the oxygen requirements of the Act could not and would not be met without MTBE's use.

TOTAL states that beginning in the late 1970s, following the EPA's mandate to reduce lead in gasoline, most U.S. refiners began evaluating oxygenates and octane enhancers such as ethanol and MTBE. In 1990, with the amendments to the Clean Air Act, the federal government mandated an increase in the use of oxygenates (up to 2.7% oxygen content) in winter gasoline in many cities to meet ambient carbon monoxide air requirements to be effective beginning in 1992. In 1995, various oxygenates were extended by regulation to year-round use for severe ozone non-attainment areas in the United States. Reformulated gasolines ("RFG") used to meet these oxygenate standards time have sometimes contained between 10% and 15% MTBE, or up to 10% ethanol.

TOTAL denies that ethanol was available in sufficient supply to meet the national demand for oxygenated gasoline in the RFG and oxyfuel regions when the CAAA provisions requiring 2% oxygen content in year-round gasoline in areas using RFG became effective.

TOTAL admits that, at all times when it has refined crude oil, owned refineries, and manufactured gasoline, it has undertaken to comply with the legal requirements of the lead phase-out, the RFG Program, and the Oxygenated Fuel Program. TOTAL further states that several government agencies have concluded that MTBE has contributed substantially to reducing air pollution.

### L.   Allegations Regarding MTBE-Related Actions Taken By State or Federal Governmental Bodies

TOTAL admits that in 2001, the EPA provided advance notice of its intent to initiate a rulemaking pursuant to the Toxic Substances Control Act ("TSCA") to eliminate or limit the use of MTBE as a fuel additive. No such rulemaking was ever initiated. TOTAL admits that certain proposed legislation in the U.S. Congress may limit the use of MTBE in gasoline in the future. TOTAL admits that certain state legislatures or regulatory bodies have passed laws or adopted

regulations to limit or eliminate the use of MTBE in gasoline.   The details of such laws are a matter of public record.

**M.**   **Allegations Regarding Plaintiffs' Claimed Inability to Identify Relevant Sources of Gasoline Leaks or Spills Affecting a Given Site**

Gasoline leaks, whether containing MTBE or not, are almost always traceable to a specific source, limited to the immediate geographic area of the source, and remediable.   In the vast majority of leak incidents, a responsible party can be and is identified.   TOTAL denies that gasoline can never be traced from a contamination site to its terminal or refinery source.

**N.**   **Allegations Purporting To Quote or Summarize Documents**

Numerous paragraphs in each complaint purport to quote from or summarize documents, statutes, and regulations.   These written materials speak for themselves.   The documents, statutes, and regulations referenced by Plaintiffs, which are not attached to the complaints, are the best evidence of their content, and TOTAL therefore denies Plaintiffs' attempts to summarize or characterize the contents of these written materials.

**O.**   **Allegations Regarding Defendants Unrelated To TOTAL**

TOTAL is without knowledge or information sufficient to form a belief as to the truth of the matters averred in the complaints regarding the specific statements, acts, or omissions of defendants unrelated to TOTAL.

**P.**   **Allegations Regarding Particular Claims or Counts**

In response to the portions of the complaints purporting to state particular common law or statutory claims, TOTAL incorporates each paragraph of this Master Answer as if fully restated herein.   TOTAL denies it is liable for any claim or cause of action in any MDL 1358 complaint.

### Q.   Allegations Regarding Claimed Injuries or Damages

Some complaints make claims about contamination to specific wells, and others do not. TOTAL is without knowledge or information sufficient to form a belief as to the truth of the matters averred in the complaints regarding specific incidents of alleged contamination. TOTAL believes publicly available documents regarding Plaintiffs will demonstrate that many of the wells at issue have not been impacted by MTBE, or have been impacted historically but are not currently impacted, or have been impacted only at levels well below state action standards for MTBE.

With regard to alleged damages, the allegations require no further answer. To the extent that further answer is deemed necessary, TOTAL admits that Plaintiffs seek the relief mentioned in the complaints, but denies that Plaintiffs are entitled to any relief.

### R.   Plaintiffs' Demands for Jury Trials

Plaintiffs in all actions have demanded a trial by jury of all claims asserted in the complaints. These jury demands require no answer. To the extent any answer is deemed necessary, TOTAL admits that Plaintiffs demand jury trials but denies that they are entitled to them.

## II.   GENERAL DENIAL OF REMAINING ALLEGATIONS

TOTAL denies the remaining allegations in the complaints in those MDL 1358 cases for which an answer is presently required.

## III.   RESERVATION OF RIGHT TO AMEND

TOTAL reserves the right to amend this Master Answer.

## IV.   AFFIRMATIVE DEFENSES APPLICABLE TO ALL CASES

For its separate defenses to the complaints in those MDL 1358 cases for which an answer is presently required, TOTAL states as follows:

1.      Plaintiffs' claims are barred in whole or in part by the doctrine of federal preemption.

2.      At all relevant times, TOTAL's actions were undertaken pursuant to, and its products complied with, applicable federal, state, and local laws, rules, regulations, and specifications.

3.      Plaintiffs' claims are barred in whole or in part because federal, state, and/or local authorities and agencies have mandated, directed, approved, and/or ratified the alleged actions or omissions of TOTAL.

4.      All acts and conduct of TOTAL, as alleged in the complaints, conformed to and were undertaken pursuant to statutes, government regulations, and industry standards and were based upon the state of knowledge existing at all material times alleged in the complaints.

5.      The relief sought by Plaintiffs' complaints is, in whole or in part, within the particular expertise of, and is being addressed by, federal and state governments and their relevant agencies, thus this Court should decline to exercise jurisdiction over this matter pursuant to the doctrine of primary jurisdiction.

6.      Plaintiffs have failed to exhaust their administrative remedies.

7.      Plaintiffs have a plain, common, adequate, and speedy remedy at law.  The equitable causes of action alleged in the complaints are thus barred.

8.      Plaintiffs are barred from claiming strict liability for design defect, as any attempt to reexamine the mandatory cost-benefit analysis delegated to and performed by the EPA pursuant to its obligations under the Clean Air Act (CAA) would be impermissible given that Congress, in Section 211 of the CAA, authorized the EPA, and not the courts, to perform the cost-benefit analysis.

9.     If it is determined that Plaintiffs, or anyone on whose behalf Plaintiffs are allegedly suing, were injured as set forth in the complaints, which TOTAL denies, TOTAL alleges that such hardship is outweighed by the convenience and public service rendered by TOTAL's actions.

10.     Each purported cause of action asserted in the complaints is barred under the doctrine of primary assumption of risk in that the general public, by and through its elected representatives and their appointees, knew and understood the alleged risks of harm presented by the use of MTBE, if any, and elected nevertheless to proceed to require the use of gasoline oxygenates and to specifically permit the use of MTBE as a gasoline oxygenate.

11.     To the extent that Plaintiffs have received or may receive the requested relief from a government agency, TOTAL asserts its entitlement to an appropriate set-off or reduction of any judgment against it.

12.     The appropriate forum for Plaintiffs' claims is an administrative agency, and therefore all proceedings before this Court should be stayed pending administrative resolution of the issues.

13.     The claims set forth in the complaints fail, in whole or in part, based on the doctrine of election of remedies.

14.     Each purported cause of action in the complaints as applied to TOTAL is barred because the relief sought therein would pose unreasonable barriers to and substantial burdens on interstate and/or international commerce in violation of the Commerce Clause of the United States Constitution and/or the North American Free Trade Agreement.

15.     The complaints fail to state a claim upon which relief may be granted and should, therefore, be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

16.    Because Plaintiffs have not suffered any cognizable harm and have not incurred any present damages, there is no current case or controversy and thus, Plaintiffs' claims are not ripe for adjudication.

17.    Plaintiffs have suffered no losses or injuries that were proximately caused by TOTAL.

18.    TOTAL's conduct was not the cause in fact of any injuries alleged by Plaintiffs.

19.    Plaintiffs have failed to state a cause of action for nuisance because they have neither alleged nor suffered any particularized injury.

20.    The alleged injuries and damages, if any, suffered as a result of conduct legally attributable to TOTAL is *de minimis* and therefore any injunction would impose a disproportionate hardship on TOTAL, as well as on the public, relative to the injury and damages allegedly suffered by Plaintiffs.  Accordingly, Plaintiffs are not entitled to injunctive relief as to TOTAL as a matter of law.

21.    Plaintiffs do not have a legally cognizable injury.

22.    Alternatively, where MTBE contamination is below state action levels, Plaintiffs do not have a legally cognizable injury.

23.    Plaintiffs may not seek attorneys' fees as an element of relief.

24.    Plaintiffs have failed to properly present any claim for attorneys' fees.

25.    Because Plaintiffs have sued multiple parties, under multiple causes of action, with divisible damages, the claim for attorneys' fees must be proportioned among such parties.

26.     The claims set forth in the complaints are barred, in whole or in part, by the mootness doctrine.

27.     The complaints and each purported cause of action are barred, in whole or in part, by the doctrine of laches.  Plaintiffs' unreasonable and inexcusable delay in filing these actions caused substantial prejudice to TOTAL.

28.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations.

29.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of repose.

30.     Plaintiffs are estopped by their conduct from asserting any of the purported claims alleged against TOTAL in the complaints.

31.     Plaintiffs have not investigated the cause of the alleged harm or attempted to identify the actual responsible party or parties.

32.     Plaintiffs cannot establish the required predicates for their theories of collective liability, and therefore their defendant-identification burden remains.  In the event that the defendant-identification burden is shifted in the future, TOTAL denies that it contributed to the contamination at issue.

33.     Plaintiffs' claims are barred in whole or in part by the doctrine of waiver.

34.     Plaintiffs assumed the risk of all acts, injuries, and damages that Plaintiffs now assert against TOTAL.

35.     TOTAL is entitled to total or partial indemnity from those individuals or entities who are responsible for Plaintiffs' injuries or damages, if any, in an amount directly proportionate to their relative culpability.

36.   Plaintiffs lack the capacity to sue.

37.   Plaintiffs lack standing to sue.

38.   Plaintiffs' trespass claims are barred because TOTAL's conduct caused no physical impact to Plaintiffs' property.

39.   There is a defect or misjoinder of parties, in that Plaintiffs have failed to join indispensable or necessary parties.

40.   Plaintiffs have failed to name the party or parties responsible for the alleged harm.

41.   The claims set forth in the complaints fail, in whole or in part, because of the failure to identify which defendant, if any, proximately caused the alleged harm.

42.   Plaintiffs' claimed injuries were caused in whole or in part by others, whose actions were not controlled by or related to TOTAL.  Such actions are the superseding, supervening, and/or intervening causes of Plaintiffs' injuries, and therefore Plaintiffs may not recover from TOTAL as a matter of law.

43.   Plaintiffs' claims must be dismissed because they have failed to identify the particular defendant, if any, that is responsible for the harms alleged by Plaintiffs.

44.   At no time did TOTAL exercise control over the persons or entities responsible for actual or threatened releases of MTBE, if any, alleged in the complaints.  At all times, TOTAL acted with due care with respect to any petroleum or petroleum products used and took reasonable precautions against foreseeable acts or omissions of any such third parties and any foreseeable consequences.

45.     TOTAL did not own, control, or release any of the petroleum products that are alleged to have caused actual or threatened contamination of Plaintiffs' wells at the time such petroleum products were allegedly released.

46.     Any TOTAL gasoline product sold or distributed for resale was properly designed, formulated, prepared, and otherwise not defective in any respect.

47.     To the extent required, TOTAL provided proper warnings, information, and instructions relating to its products pursuant to generally recognized and prevailing standards in existence at the time.

48.     Plaintiffs have failed to allege that TOTAL's alleged failure to provide an adequate warning proximately cause their injuries.

49.     Any gasoline product containing MTBE manufactured, sold, or distributed for resale by TOTAL was not unreasonably dangerous when made.

50.     The Plaintiffs' claims against TOTAL are barred by the bulk supplier doctrine.

51.     TOTAL sold its products to knowledgeable and sophisticated purchasers, and any injury alleged by Plaintiffs was caused by such purchasers' failure to observe known standards of care.

52.     Any injury, damage, or loss sustained by the Plaintiffs was proximately caused by and/or contributed to by their own negligence, carelessness, and/or omissions.

53.     Plaintiffs' claims are barred pursuant to the learned intermediary doctrine.

54.     If any damages or injuries alleged in the complaints occurred because of leaks in the USTs, TOTAL is not liable for those damages and/or injuries because the USTs,

when manufactured and distributed, conformed to the then current state of scientific and industrial knowledge, and the USTs were used for their intended purpose.

55.     If any damages or injuries alleged in the complaints occurred because of leaks in the USTs, TOTAL is not liable for those damages and/or injuries because TOTAL did not own or exercise any control over the operation of such USTs.

56.     Plaintiffs' public nuisance claims should be dismissed because there were no acts or omissions by or on behalf of any of the defendants constituting an intentional, unreasonable interference with the Plaintiffs' interest in the use and enjoyment of their property.

57.     Plaintiffs' public nuisance claims must be dismissed because Plaintiffs have failed to allege "special damages," an absolute prerequisite to the assertion of a public nuisance claim.

58.     TOTAL alleges that it owed no duty of care to Plaintiffs in connection with the matter alleged in the complaints.

59.     The complaints fail to plead the elements of negligence claims with sufficient clarity, specificity, and particularity.

60.     Plaintiffs' claims are barred to the extent the conduct complained of is protected by the First Amendment to the United States Constitution.

61.     The complaints and each cause of action are barred based on TOTAL's valid exercise of the right of petition to the federal government, state government(s), and/or their respective deliberative bodies and agencies.

62.     Plaintiffs' claims are barred, in whole or in part, based on Plaintiffs' actual or constructive notice of reported spills or releases, if any, from publicly available records.

63.     There is no legal relationship upon which any duty could possibly be owed by TOTAL to Plaintiffs, and therefore, Plaintiffs' causes of action fail as a matter of law.

64.     The injuries and damages, if any, alleged by Plaintiffs are caused in whole or in part by the presence of compounds other than MTBE (e.g., the BTEX compounds).  Under Plaintiffs own legal theories, TOTAL is not liable for damages caused by compounds other than MTBE.  In the event liability is assessed against TOTAL, such liability must be reduced where, and to the extent that, other compounds – about which Plaintiffs do not complain – contributed to the alleged injury.

65.     TOTAL is not liable for contamination where chemical compounds other than MTBE exceed state action levels or standards requiring cleanup, regardless of the presence of MTBE (particularly, but not exclusively, where MTBE is present below state action levels or standards).

66.     Any injury, damage, or loss sustained by the Plaintiffs in connection with the subject matter of this action was not reasonably foreseeable.

67.     If it is determined that Plaintiffs, or anyone on whose behalf Plaintiffs are allegedly suing, were injured as set forth in the complaints, which TOTAL denies, TOTAL alleges that any award of damages shall be reduced in proportion to the percentage of fault attributable to the Plaintiffs.

68.     If it is determined that Plaintiffs, or anyone on whose behalf Plaintiffs are allegedly suing, were injured as set forth in the complaints, which TOTAL denies, TOTAL alleges that any award of damages shall be reduced in proportion to the percentage of fault attributable to third parties (including but not limited to persons or entities responsible for gasoline leaks or spills).

69.     The injuries alleged in the complaints, if any, may be reasonably apportioned among the defendants, as each defendant's alleged acts and omissions, including TOTAL's, are divisible and distinct.   Therefore, no defendant is jointly and severally liable to Plaintiffs for any claim alleged in the complaints.

70.     Plaintiffs have unreasonably failed to mitigate their damages, if any.

71.     To the extent that any party has settled or may settle in the future with Plaintiffs, TOTAL asserts its entitlement to an appropriate credit or reduction of any judgment(s) against it.

72.     Plaintiffs' claims for punitive damages violate the provisions of the U.S. Constitution, including but not limited to those provisions requiring due process of law and prohibiting excessive fines.

73.     TOTAL incorporates by reference any affirmative defense, whether general or specific to a particular State, alleged by other defendants in MDL 1358.

74.     The pleading of the foregoing defenses shall not be construed as an undertaking by TOTAL of any burden which would otherwise rest upon Plaintiffs.

## V.     AFFIRMATIVE DEFENSES APPLICABLE TO PARTICULAR STATES

For its separate defenses to the complaints in those MDL 1358 cases from particular states for which an answer is presently required, TOTAL states as follows:

## ILLINOIS

1.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including, but not limited to, 735 ILCS 5/13-205.

2.     Plaintiffs' recovery is barred, in whole or in part, due to their contributory fault, pursuant to 735 ILCS 5/2-1116.

**MASSACHUSETTS**

   3. The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to Mass. Gen. Laws Ann. Ch. 260 § 2A.

   4. Plaintiffs' claims are barred because their negligence is greater than the alleged negligence of TOTAL. Mass. Gen. Laws Ann. Ch. 231 § 85.

**MISSOURI**

   1. The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to Mo. Ann. Stat. §§ 516.100, 516.120 and 516.010 (West).

   2. Plaintiffs' recovery is barred or must be reduced, in whole or in part, based on the doctrine of comparative fault. Mo. Ann. Stat. § 537.765 (West).

   3. Any duty to warn, if one existed at all, was discharged pursuant to Mo. Ann. Stat. § 537.760 (West), because the alleged defects, if any, were open and obvious to plaintiffs.

   4. Plaintiffs' product liability claims fail because TOTAL had no duty to warn Plaintiffs, as Plaintiffs knew or should have known of the alleged danger. Mo. Ann. Stat. § 537.760 (West).

   5. Plaintiffs' product liability claims fail because TOTAL's products were in conformity with generally recognized state of the art. Mo. Ann. Stat. §§ 537.764 and 537.760 (West).

   6. Plaintiffs' product liability claims fail because TOTAL's products, at the time they were sold, were not in a defective condition or unreasonably dangerous when put to a reasonably anticipated use. Mo. Ann. Stat. § 537.760 (West).

7.     Any alleged defective condition, of TOTAL's products at the time they were sold, was not the proximate cause of Plaintiffs' injuries or harm.  Mo. Ann. Stat. § 537.760 (West).

8.     Plaintiffs' alleged injuries, if any, resulted from use of the product that was not reasonably anticipated by TOTAL at the time that they sold or otherwise conveyed the product.  Mo. Ann. Stat. § 537.760 (West).

9.     Plaintiffs' recovery of punitive damages arising out of their alleged injury is limited under Mo. Ann. Stat. § 510.265 (West).

**NEW JERSEY**

1.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, N.J. Stat. Ann. § 2A:14-2 and N.J. Stat. Ann § 58:10B-17.1(a), which requires the State to commence any civil action concerning the remediation of a contaminated site within three years after the accrual of the cause of action.

2.     Plaintiff's claims for natural resource damages under either the New Jersey Spill Compensation and Control Act ("Spill Act") or the Water Pollution Control Act ("WPCA") are specifically barred by the applicable provisions of N.J. Stat. Ann. 58:10B-17.1(b), which requires the State to commence any action "concerning the payment of compensation for damage to, or loss of, natural resources due to the discharge of a hazardous substance . . .within five years and six months next after the cause of action shall have accrued."

3.     Plaintiff's claim for relief under the Spill Act is barred to the extent Plaintiff has already received "compensation for damages or cleanup costs pursuant to any other State or Federal Law."  N.J. Stat. Ann. § 58:10-23.11v. (2008).

4.     Plaintiff's claims are barred by the statutory defenses to liability provided by the Spill Act and the WPCA.

5.     Plaintiff's claims under the Spill Act and WPCA are barred to the extent plaintiff seeks relief for conduct occurring or damages incurred prior to the effective date of the Spill Act and/or WPCA.

6.     Plaintiff's claims for natural resource damages under either the New Jersey Spill Compensation and Control Act or the Water Pollution Control Act are barred in whole or in part to the extent the New Jersey Department of Environmental Protection has already recovered damages from or otherwise released the responsible parties.

7.     Plaintiff's claims against TOTAL are barred by the New Jersey entire controversy doctrine, doctrine of *res judicata* and/or similar doctrines, and because of plaintiff's failure to comply with New Jersey Court Rule 4:5-1 in prior litigations.

8.     Plaintiff' claims are barred by the doctrine of primary jurisdiction insofar as the NJDEP is responsible for directing and allocating responsibility for investigation and remediation of the environmental condition alleged in the complaints.

9.     Plaintiff's claims are barred, in whole or in part, by plaintiff's failure to comply with the prerequisites to liability under the Spill Act, including without limitation plaintiff's incurring of costs not authorized by the Spill Act and plaintiff's failure to direct clean up and remediation operations in accordance with the National Contingency Plan to the greatest extent possible.

10.     Plaintiff's claims for natural resource damages are barred because the State's method of assessing natural resource damages was not adopted in a manner consistent with the Administrative Procedures Act, N.J. Stat. Ann. § 52:14B-2(e).

11.    Any injury or damages suffered by plaintiff have been increased by plaintiff's failure to mitigate its damages, in that (1) the policies and activities of the State of New Jersey and its agencies during the period of time for which plaintiff seeks damages have caused damage to natural resources greater than that would otherwise have occurred; and (2) the State and its agencies have failed to take reasonable measures available to them to reduce damages.

12.    Plaintiff's claims against TOTAL are barred, in whole or in part, by the prior settlement with certain MDL Plaintiffs in New Jersey.

**INDIANA**

1.    The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, Ind. Code. Ann. 34-20-3-1.

2.    Plaintiff's product liability design defect claims are barred, in whole or in part, because no alleged act or omission by TOTAL gave rise to design defect liability pursuant to Indiana's Product Liability Act, as set forth in Ind. Code. Ann. 34-20-2-1.

3.    Plaintiff's product liability claims fail because TOTAL had no duty to warn Plaintiff, as Plaintiff knew or should have known of the alleged danger.  Ind. Code. Ann. 34-20-6-1.

4.    Plaintiff's product liability claims fail because TOTAL manufactured its products in conformity with generally recognized state of the art.  Ind. Code. Ann. 34-20-6-1.

5.    Any duty to warn, if one existed at all, was discharged pursuant to Ind. Code. Ann. 34-20-6-1 because the alleged defects, if any, were open and obvious to Plaintiff.

6.    Plaintiff voluntarily and unreasonably assumed the risk of injury, thereby relieving TOTAL of liability.  Ind. Code. Ann. 34-20-6-1 and 34-20-6-3.

7.    Any alleged design defect was not the proximate cause of Plaintiff's injuries or harm, pursuant to Ind. Code. Ann. 34-20-6-1 (West 2001).

8.    Plaintiff's alleged injuries, if any, resulted from the misuse of the product by Plaintiff or other persons, and such misuse was not reasonably expected by TOTAL at the time it sold or otherwise conveyed the product to the other party.  Ind. Code. Ann. 34-20-6-4.

9.    Plaintiff's claims for public nuisance should be dismissed because at no time did any act or omission attributable to TOTAL or its products interfere with Plaintiff's comfortable enjoyment of life or property.  Ind. Code. Ann. 34-19-1-1.

10.    Plaintiff has failed to state a cause of action for public nuisance because TOTAL's alleged conduct is not unreasonable upon comparison of its alleged conduct with Plaintiff's competing interests.  Ind. Code. Ann. 34-19-1-1.

11.    Plaintiff's recovery is barred by its contributory fault, which is greater than the fault of all persons whose fault may have proximately contributed to Plaintiff's damages. Ind. Code. Ann. § 34-51-2-6.

12.    Plaintiff is a public entity and/or authority seeking compensation for damages to natural resources under its jurisdiction or purview.  This public entity/authority plaintiff has improperly delegated the power to prosecute these cases to private attorneys on a contingent fee basis.  Such delegation is against public policy.

## PENNSYLVANIA

1.    The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, 42 Pa. Cons. Stat. Ann. § 5524.

2.    TOTAL's conduct did not meet the minimum requirements of culpability with respect to each material element of the alleged offenses of civil conspiracy, public nuisance,

and negligence in order to be found liable according to the applicable provision of 18 Pa. Cons. Stat. Ann. § 302, and, therefore, Plaintiff's claims on these counts should be dismissed.

   3. Plaintiff's claims for public nuisance are barred because at all relevant times, neither TOTAL nor its products violated any orders or regulations adopted by the Pennsylvania Department of Environmental Resources. 35 Pa. Cons. Stat. Ann. § 691.503.

  For each State above, TOTAL incorporates by reference any affirmative defense, whether general or specific to another State, alleged herein or by any other defendant in MDL 1358.

  The pleading of the foregoing defenses shall not be construed as an undertaking by TOTAL of any burden which would otherwise rest upon Plaintiffs.

  **WHEREFORE**, TOTAL requests entry of judgment dismissing the complaints with prejudice and awarding TOTAL its costs, attorneys' fees, and such other relief as the Court may deem just and proper.

### MASTER CROSS-COMPLAINT AND THIRD-PARTY COMPLAINT AGAINST CO-DEFENDANTS AND JOHN AND JANE DOES NOS. 1-500

  Pursuant to Rule 13 and Rule 14(a) of the Federal Rules of Civil Procedure, Defendant and Third-Party Plaintiff TOTAL PETROCHEMICALS USA, INC. ("TOTAL" or "Cross-Plaintiff" or "Third-Party Plaintiff"), by its undersigned counsel, hereby brings this Cross-Complaint and Third-Party Complaint against certain Co-Defendants and John and Jane Does Nos. 1-500 ("Third-Party Defendants") in MDL 1358 for all cases listed in the style of this pleading and, in support thereof, alleges as follows:

## I. BACKGROUND

   1. Plaintiffs commenced civil actions in Illinois, Indiana, Massachusetts, Missouri, Pennsylvania, and New Jersey against TOTAL and other purported manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and marketers of the gasoline

additive methyl tertiary-butyl ether ("MTBE") and/or gasoline products containing MTBE for alleged damages resulting from the contamination or threatened contamination of Plaintiffs' groundwater or water systems by MTBE and/or gasoline containing MTBE.

   2. Specifically, Plaintiffs allege negligence, common law and statutory public nuisance, private nuisance, trespass, civil conspiracy, breach of warranty, and a variety of product liability theories against TOTAL and the other named Defendants.

   3. In virtually all instances, Plaintiffs' complaints fail to identify – or name as defendants – the entities or persons responsible for spilling, leaking, or otherwise releasing into the environment the MTBE or gasoline containing MTBE that led to the contamination or threatened contamination they allege.  Nor have Plaintiffs identified the location of each well they allege is contaminated or threatened with contamination.

## II. PARTIES, JURISDICTION, AND VENUE

   1. TOTAL is a Delaware corporation with its principal place of business in Houston, Texas.

   2. Cross-Defendants are individuals and/or entities, Defendants in this action but whose exact identities, locations and actions are presently unknown to TOTAL, whose actions or inactions have caused or threaten to cause releases, spills, or leaks of MTBE or gasoline containing MTBE impacting Plaintiffs' groundwater or water systems and who are responsible for any and all damages allegedly sustained by Plaintiffs.  The exact identities, locations and actions of the Defendants also named as Cross-Defendants depend on further discovery and/or determinations regarding, among other things, the locations of the wells Plaintiffs allege are contaminated or threatened with contamination.

3.      Third-Party Defendants are individuals and/or entities, the exact identities and locations of which are presently unknown, consisting of (a) retail gasoline service station owners and operators, (b) trucking and tanking companies, (c) contractors, excavators, and others engaged in the installation, removal, repair, or examination of underground storage tanks or associated piping or equipment ("USTs"), and (d) others whose actions or inaction has caused or threatens to cause releases, spills, or leaks of MTBE or gasoline containing MTBE impacting Plaintiffs' groundwater or water systems, and who are thereby responsible for any and all damages allegedly sustained by Plaintiffs.

4.      Cross-Defendants' and Third-Party Defendants' offending conduct, as described herein, took place in substantial part in Illinois, Indiana, Massachusetts, Missouri, Pennsylvania, and New Jersey, in relative proximity to the contaminated or threatened groundwater or water systems in which Plaintiffs claim to have an interest.

5.      Jurisdiction is proper in this Court under 28 U.S.C. § 1367, in that the claims set forth herein are so related to the claims in Plaintiffs' Complaints that they form part of the same case or controversy.

6.      Venue is proper in this Court under 28 U.S.C. § 1391 and Fed. R. Civ. P. 14.

## III.   CROSS-DEFENDANTS' AND THIRD-PARTY DEFENDANTS' UNLAWFUL CONDUCT

1.      Plaintiffs allege that TOTAL and the other named Defendants caused the contamination or threatened contamination of Plaintiffs' groundwater or water systems in manufacturing, designing, refining, formulating, distributing, supplying, selling, or marketing MTBE or gasoline containing MTBE and are liable to Plaintiffs for the damages allegedly resulting therefrom.

2.    TOTAL denies any and all liability for Plaintiffs' alleged damages and incorporates its Master Answer to Plaintiffs' Complaints by reference as if fully restated herein.

3.    TOTAL is not responsible for the actual or threatened releases, spills, or leaks of MTBE or gasoline containing MTBE into Plaintiffs' groundwater or water systems. TOTAL does not currently own, control, or operate gasoline service stations, the land on which they operate, or USTs at the stations or other instrumentalities from which gasoline was leaked or spilled by Cross-Defendants or Third-Party Defendants and which allegedly impacted Plaintiffs' wells.

4.    The harm allegedly sustained by Plaintiffs is a direct result of the actions and inactions of Cross-Defendants and/or Third-Party Defendants, the exact identities of which are unknown to TOTAL at this time, and over whom TOTAL has no control and for whom TOTAL is not responsible.  If TOTAL has or had any relationship, contractual or otherwise, with one or more Cross-Defendants or Third-Party Defendants, such relationships required Cross-Defendants and/or Third-Party Defendants to refrain from the offending activity described herein and/or to assume full responsibility for damages resulting therefrom.

5.    At all relevant times, Cross-Defendants and/or Third-Party Defendants were aware of the need to properly use, handle, or store all gasoline, regardless of MTBE content, and/or MTBE, and were aware of the proper methods to use, handle, or store gasoline, regardless of MTBE content, and/or MTBE.

6.    Cross-Defendants and Third-Party Defendants owed a duty to Plaintiffs and/or TOTAL to safely and properly use, handle, or store MTBE or gasoline containing MTBE, to install, remove, or inspect USTs containing such products or to remediate or mitigate contamination caused by MTBE or gasoline containing MTBE.

7. Cross-Defendants and Third-Party Defendants breached their aforementioned duties in, the following respects, *inter alia*:

a. By failing to safely and properly handle, use, or store MTBE or gasoline containing MTBE;

b. By failing to safely and properly transport, haul, deliver, or transfer MTBE or gasoline containing MTBE;

c. By failing to safely and properly receive or accept deliveries or transfers of MTBE or gasoline containing MTBE;

d. By failing to safely and properly remediate, mitigate, clean-up, eliminate, or control releases, spills, or leaks of MTBE or gasoline containing MTBE, and/or by failing to properly consult or advise Plaintiffs regarding same, including by, inter alia, failing to timely commence remediation or mitigation efforts, or improperly drilling or establishing monitoring wells during remediation or mitigation, thereby causing cross-contamination;

e. By failing to safely and properly service, repair, maintain, monitor, inspect, test, or examine USTs;

f. By failing to safely and properly install, replace, excavate, or remove USTs;

g. By failing to safely and properly dispense or pump gasoline into trucks, tankers, automobiles, or any other vehicles;

h. By failing to adhere to applicable laws, rules, regulations, guidelines, or procedures relating to the use, handling, or storage of MTBE or gasoline containing MTBE, the installation, removal, or inspection of USTs, or the remediation or mitigation of contamination caused by MTBE or gasoline containing MTBE; and

i. By otherwise failing to act with due care in using, handling, or storing MTBE or gasoline containing MTBE, installing, removing, or inspecting USTs, or remediating or mitigating contamination caused by MTBE or gasoline containing MTBE.

8. The actions and inactions of Cross-Defendants' and/or Third-Party Defendants were negligent, careless, reckless, and in derogation of their duties to Plaintiffs and/or TOTAL.

9. As a direct and proximate result of Cross-Defendants' and/or Third-Party Defendants' actions and inactions, Cross-Defendants and/or Third-Party Defendants were the

sole cause of and/or contributed to the alleged contamination or threatened contamination of Plaintiffs' groundwater or water systems and any and all resulting damages to Plaintiffs alleged in the Complaints, and are directly liable to Plaintiffs. Alternatively, Cross-Defendants and/or Third-Party Defendants are liable to TOTAL for all or part of Plaintiffs' claims against TOTAL.

10.    Without admitting any of the allegations made against TOTAL in Plaintiffs' Complaints, TOTAL incorporates Plaintiffs' allegations and legal claims by reference and asserts them against Cross-Defendants and Third-Party Defendants. Without limitation, TOTAL specifically asserts that Cross-Defendants and Third-Party Defendants are liable to Plaintiffs on, among other claims, their negligence, trespass and nuisance claims, and any claims premised on state statutes or regulations which apply, in whole or in part, to owners and operators of gasoline stations, USTs or other gasoline storage facilities.

11.    If the allegations contained in Plaintiffs' Complaints are correct, which is specifically denied, then Cross-Defendants and Third-Party Defendants are liable solely and directly to Plaintiffs for the incidents complained of and any and all damages sought by Plaintiffs.

12.    Alternatively, if the allegations contained in Plaintiffs' Complaints are correct, which is specifically denied, and it is judicially determined that Plaintiffs are entitled to damages from TOTAL, then Cross-Defendants and Third-Party Defendants are liable over to TOTAL, and TOTAL is entitled to express, implied, or equitable indemnification and/or contribution from Cross-Defendants and Third-Party Defendants for all losses, damages, and costs, including attorneys' fees, that TOTAL incurs as a result of this action.

**WHEREFORE**, Defendant, Cross-Plaintiff, and Third-Party Plaintiff TOTAL Company demands entry of judgment in its favor and against Cross-Defendants and Third-Party

Defendants John and Jane Does nos. 1-500 for all sums that may be awarded in favor of Plaintiffs and against TOTAL, together with interest, costs, reasonable attorneys' fees, and such other relief as this Court deems just and proper.

Dated:     February 25, 2011

_____
s/M. Coy Connelly

M. Coy Connelly
Amy E. Parker
Eduardo S. Pérez
Benjamin H. Patton

*Admitted pro hac vice*

BRACEWELL & GIULIANI LLP
711 Louisiana St., Suite 2300
Houston, Texas 77002-2770
Telephone:  (713) 221-1335
Telecopier:  (713) 221-2159

ATTORNEYS FOR DEFENDANT TOTAL
PETROCHEMICALS USA, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendant TOTAL PETROCHEMICALS USA, INC.'s Eighth Amended Master Answer, Affirmative Defenses, and Master Cross-Complaint and Third-Party Complaint was served upon counsel for MDL Plaintiffs and to all other counsel of record via CM/ECF on the 25th day of February, 2011.

_____
s/M. Coy Connelly
M. Coy Connelly
