**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation**

This Document Relates To:

**Orange County Water District v. Atlantic Richfield Co., et al. (Case No. 04-4968)**

Master File No. 1:00-1898
MDL No. 1358 (SAS)
M21-88

**DEFENDANT 7-ELEVEN, INC.'S REPLY TO DEFENDANT CITGO PETROLEUM CORPORATION'S OBJECTION TO 7-ELEVEN'S MOTION FOR ORDER DETERMINING GOOD FAITH SETTLEMENT**

Defendant 7-Eleven, Inc. ("7-Eleven") submits this its Reply to Defendant CITGO Petroleum Corporation's ("CITGO") Objection ("Objection") to 7-Eleven's Motion for Order Determining Good Faith Settlement ("Motion") and would respectfully show the following:

**PRELIMINARY STATEMENT**

What is unique about the MTBE litigation from all the case law 7-Eleven has reviewed applying the standard for good faith settlement under California law, is that this Court has handled many similar cases for over ten years and brings extensive experience with MTBE litigation to its evaluation of this settlement. MTBE is a unique litigation in that the facts, liability issues and damage analysis do not compare easily with other litigations. This Court has resolved hundreds of motions on complex and novel issues, fashioned a theory within which the unique facts embodied in this litigation could be handled by a jury, presided over a massive trial, and, more aptly, ruled on multiple good faith settlements applying California law, including the global settlement in which CITGO participated. As this Court is well aware, there is no one road that leads to a determination that any settlement is in good faith. As with most settlements, opposing parties arrive at settlement amounts and terms in very different ways and this case is no exception. Admittedly, 7-Eleven did not arrive at its settlement the same way that CITGO and

1

other refiners reached a global settlement.  The product defect and intentional tort claims against the refiners are more complex than the spill claims against retailers, and the well matrix approach used in the global settlement, while adequately suited to those claims and parties, does not make sense for the claims against 7-Eleven.

In negotiating the settlement, the damage estimates mentioned by the District for investigation, testing, and remediation were consistent with its Responses to the First Set of Interrogatories and Request for Production on Damages, dated November 7, 2008, and those 7-Eleven anticipates it will reference in any reply it may file on the Motion.  7-Eleven challenged every claim, assumption, and demand, but, in the end, agreed to pay the District the least amount it would take.  7-Eleven does not believe the District has suffered harm, nor does it believe it should be liable to the District, or any other agency, entity or potential claimant in Orange County for any more than it has already paid by fully complying, and continuing to comply, with the laws, rules, and edicts of the regulators in California.[1]

While CITGO has admitted that the Product Purchase Agreement ("PPA") between it and 7-Eleven should not be considered by the Court on this Motion,[2] 7-Eleven rejects the assertion implied by CITGO's filing of that document and, more specifically, rejects any inference that 7-

---

[1] Irrespective of actual proof of causation, 7-Eleven expends effort to contain and remediate MTBE at its retail stores, and those efforts continue to benefit CITGO and any other defendant whom the District seeks to hold liable for the presence of MTBE in groundwater in its service area.  It may well be that it is 7-Eleven, not CITGO, who ought to be complaining that the other is liable for those costs and expenses.

[2] CITGO filed a copy of the PPA in support of its Objection, and 7-Eleven sought to have the exhibit rejected because it advanced no issue germane to the Court's consideration and presented a distorted view of the parties' relationship.  Prior to the Court ruling on 7-Eleven's objection, CITGO informed the Court that "issues raised by the product purchase agreement are not relevant to the issue before the Court, other than to show that there was a supply relationship between the two companies.  CITGO therefore agrees that Exhibit B need not be considered by the Court."  E-mail from P Hanebutt to the Court dated March 2, 2011.  To the extent the Court intends to review the underlying relationship between the parties, 7-Eleven incorporates by reference its March 2, 2011 letter to the Court and requests the same relief it requested therein.

Eleven has any liability to CITGO, or any other party to this litigation, for any claim asserted by the District in this case.

This Court is uniquely qualified[3] to exercise its sound judgment and discretion in determining whether this proposed settlement is in the *Tech-Bilt* "ballpark" and constitutes good faith. *See Tech-Bilt, Inc v. Woodward-Clyde & Assocs.*, 698 P.2d 159, 167 (Cal. 1985). 7-Eleven requests that the Court reject CITGO's assertion that it does not have enough information to assess the good faith of the settlement. CITGO has seen the same arguments,[4] evidence, experts, and testimony that everyone else involved in this litigation has seen and heard over the past seven years, and CITGO's counsel should not be taken seriously when it claims to be clueless as to what this case is worth[5] or whether this settlement is "in the ballpark." CITGO takes the passive way out in its Objection by simply saying it doesn't know, but "I don't know" is unacceptable from a defendant such as CITGO and is an insufficient basis for it to derail this settlement.[6]

## INTRODUCTION

Any party challenging a good faith settlement under California Code of Civil Procedure § 877.6(a)(1) bears the burden of proving the lack of good faith. Cal. C.C.P. § 877.6(d). CITGO's burden is to show that 7-Eleven's settlement with Plaintiff Orange County Water District (the

---

[3] A court "may rely on its own expertise … in reaching a determination of the good or bad faith of a settlement." *Regan Roofing Co., Inc. v. Superior Court*, 27 Cal Rptr. 2d 62, 71 (Cal. Ct. App. 1994).
[4] Indeed, as this Court is well aware, CITGO's counsel has been lead counsel for an entire industry on many of the most complex and hotly contested issues presented in this litigation.
[5] Nowhere in its Objection does CITGO say the settlement is too low, and it may well be that its concern is that 7-Eleven is paying too much.
[6] Notwithstanding the lack of substance in CITGO's Objections, 7-Eleven has no objection to reallocating amounts among the 7-Eleven Stores, but CITGO has not even taken the time to suggest how this may be done.

"District") "is so far 'out of the ballpark'[7] . . . to be inconsistent with the equitable objectives of the statute."  *See Tech-Bilt*, 698 P.2d at 167.  CITGO has not argued or suggested that 7-Eleven's settlement is in bad faith or that the settlement amount is too low or too high.  *Cf. In re: Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 578 F. Supp. 2d 519, 534 (S.D.N.Y. 2008) (finding settlement in good faith when non-settling defendant opposing settlement failed to argue that settlement amount was grossly disproportionate to settling party's estimated share of damages).  Instead, CITGO states that it used a complex matrix to settle a group of California cases, and 7-Eleven should show more.  While 7-Eleven and the District are taking this Objection seriously and providing further information regarding the settlement, CITGO has done nothing to suggest that there is any merit to its Objection or any basis to believe that the settlement is too low or otherwise anything short of arms length and made in good faith.

CITGO has not presented any evidence that 7-Eleven committed some act or conduct for which it is liable and for which CITGO is both faultless and entitled to look to 7-Eleven for responsibility.  CITGO simply jumps to its conclusions and states "7-Eleven …[is] responsible for any releases of gasoline that may have caused harm to the plaintiff" and that CITGO's "liability flows from 7-Eleven."  Objection at 11.  Site-specific evidence of a release is essential to Plaintiff's claims against 7-Eleven (or any other retailer), but it may well be that it is the presence of MTBE, not the precise cause of a release, for which CITGO is being asked to answer.

Evaluation of the good faith settlement is the only issue at hand, and CITGO has failed to meet its burden to show that the settlement is not in good faith.  Therefore, CITGO's objection

---

[7] This MDL is well into extra innings, and 7-Eleven is just now getting its first at bat.  With over 1,700 people receiving LNFS notices in this case, only CITGO suggests that this settlement may be out of the ballpark, but it might be reminded that even a ball that hits the foul pole is a home run.

4

should be overruled and 7-Eleven's application for an order determining the good faith of the parties' settlement should be granted.

## ARGUMENT

### I. 7-Eleven has presented sufficient information to support the values and allocations in the settlement.

7-Eleven's settlement encompasses twenty-two convenience stores within and near the District's service area (the "7-Eleven Stores"). In its Motion, 7-Eleven provided an allocation of the total settlement amount among each of the 7-Eleven Stores and the explanation for such allocation. *See* Ex. B to Declaration of Michael A. Walsh ("Walsh Decl."). 7-Eleven would further direct the Court to whatever additional evidence the District may file in further support of the good faith nature of the settlement.

In making the allocations, 7-Eleven considered the factual circumstances of each site, which are in the public record, divided the 7-Eleven Stores into six clearly described categories based on established facts about each store, and assigned each a value. "[A] 'good faith' settlement does not call for perfect or even nearly perfect apportionment of liability." *Abbot Ford, Inc. v. Superior Court*, 239 Cal Rprt. 626, 637 (Cal. 1987). CITGO doesn't refute any of the facts, it simply doesn't like them.

CITGO complains that 7-Eleven did not submit projected costs of remediation, investigation, or testing or evidence of potential well impact. *See* Objection at 6. The District stated in its declaration submitted in support of the Motion that the settlement amount "represents a rough approximation of what the District could expect to recover against 7-Eleven." Declaration of Duane Miller ("Miller Decl.") at ¶5. The District has informed 7-Eleven that it intends to provide an additional declaration in response to CITGO's objection and 7-Eleven would refer the Court to those materials for a statement of how the District calculated its

settlement demand. As set forth in the Motion, 7-Eleven considered numerous factors including gasoline sales history, whether a release had been detected, remediation work, and status of regulatory closure, and based its allocations on those factors. The allocation amounts are not arbitrary, as CITGO surmises, but reflect the business and environmental history of the 7-Eleven Stores and the consequent risks (with respect to discovery and other litigation costs, as well as potential liability) associated with each. It is reasonable for the Court to determine the settlement in good faith based on the limited information that was available at the time of settlement. *In re MTBE*, 578 F. Supp. 2d at 528.

CITGO also asserts that the evidence in support of 7-Eleven's settlement is "deficient" when compared with the global MTBE settlement. Objection at 7. The well matrix approach used in the global settlement made sense for CITGO and the refiner defendants because their liability was not dependant upon their having operated a UST in the relevant area, and they could allocate on a market share basis. For 7-Eleven to even attempt a similar well matrix approach,[8] it would need to account for <u>every</u> UST system, not just those of the parties, at all times that MTBE was on the market in the relevant capture zone for each well (which have yet to be identified) and establish how much each station contributed. There are potentially hundreds of sources for every well (or plume for that matter), and if it were possible to complete such an analysis for even one well, 7-Eleven's likely "allocation" would be a small percentage of any such total, and that is before taking into account the separate liability of manufacturers being asked to answer for the District's product defect and intentional tort claims, as well as discounting for other causes. In the final analysis, such an approach would reveal what 7-Eleven

---

[8] As CITGO well knows, the District has stated that it does not operate drinking water production wells, and comparing the water purveyor model to this settlement simply makes no sense.

6

suspects and most reasonable observers should suspect, that 7-Eleven is paying more than its fair share in this case.

Irrespective of how the refiners reached the settlement amounts for the water districts in the global settlement, the settlement value for six California water districts was $264,853. Combined, all six water districts received less than 7-Eleven is paying here. See attached Exhibit "A" to the Supplemental Declaration of Michael A. Walsh ("Supp. Walsh Decl."), pages 8-9 of the Memorandum of Law in Support of Settling Defendants' Motion for Determination of Good Faith Settlement (LNSF No. 19733877), reflecting that four water Districts (Citrus Heights, Del Paso, Fair Oaks, and Rio Linda Elverta Community) and the Florin Resources Conservation District all settled for a total of $264,853.

Significantly, none of those water district plaintiffs had wells with MTBE impacts. Yet, CITGO complains that some of the 7-Eleven Stores appear to have no liability for MTBE associated with them and that only two of the 7-Eleven Stores are stores for which the District is currently asserting claims. Curiously, CITGO did that very thing (i.e., settle a claim where there was no apparent damage) but suggests that this Court cannot make the same good faith settlement determination with respect to the 7-Eleven Stores. According to CITGO, inclusion of these claims in the settlement "is based on nothing more than hypothetical speculation." *See* Objection at 7. However, settlements by their very nature require speculation to bring parties to resolution.

Furthermore, unlike the claims in the cases CITGO cites, the District's claims with respect to the 7-Eleven Stores not currently in the focus plumes are not being asserted in another matter. *See Shane v. Superior Court*, 207 Cal. Rptr. 210, 218-19 (Cal. Ct. App. 1984) (court lacks jurisdiction to adjudicate and dispose of merits of an action not assigned to it and pending

7

before another judge); *Nordstrom Commission Cases*, 112 Cal. Rptr. 3d 27, 39 (Cal Ct. App. 2010) (holding that it is not proper for federal district court or appellate court to opine whether settlement has any effect on class action case pending in state court). Instead, claims regarding the 7-Eleven Stores are encompassed in this litigation.

Moreover, here the defendants (including CITGO) very recently informed the Court that the District has no damages and thus, it is unlikely the case can settle.[9] Irrespective of the method used in the refiner global settlement, that settlement suggests that 7-Eleven is overpaying in this case.

Finally, under California law, an allocation provides guidance to the eventual determination of the amount of offset a non-settling defendant receives against its ultimate liability to the plaintiff, particularly when the value of a settlement is unclear. *See Franklin Mint v. Superior Court*, 24 Cal. Rptr. 3d 319, 323-24 (Cal. Ct. App. 2005). Typically, settling and non-settling defendants alike prefer that allocation values be higher so as to ensure that amounts are found to be "in the ballpark" under section 877.6 and to increase the amount of non-settling defendants' offset. *See id.* Yet CITGO's protests that stores not in the current focus plumes are included in the allocation suggest that CITGO believes the allocation values as to those stores are too high. If that is the case, 7-Eleven is willing to restructure the allocation with the District's approval.

---

[9] In the reply letter to the Court dated February 10, 2011 regarding the conference on February 15, 2011, defendants, including CITGO and 7-Eleven, state:
> Discovery has revealed that in each case [including OCWD] Plaintiff lacks legitimate damages claims. Only extremely low-levels of MTBE, if any, are currently in the wells at issue, and for nearly all wells, that has always been the case. Further, Plaintiffs' actions in the real world are contrary to their claims in these cases. Having incurred the costs of discovery and learned the true facts underlying these cases, Defendants are skeptical that these cases can be settled at an amount that reflects their true value.

Letter from Peter J. Sacripanti to the Honorable Shira A. Scheindlin (Feb. 10, 2011) (attached as Exhibit "B" to Supp. Walsh Decl.).

## II. Information regarding 7-Eleven's share of alleged liability is sufficient.

"On a motion for a good faith determination under section 877.6, the trial court is charged only with making a 'rough approximation' of a settling defendant's 'proportionate liability' based on information 'available at the time of settlement.' The trial court must decide this issue by reliance upon affidavits … and it will not necessarily have before it all of the evidence which may ultimately be offered at trial on a disputed issue." *Toyota Motor Sales U.S.A., Inc. v. Superior Court*, 220 Cal. App. 3d 864, 878 n. 9 (quoting *Tech-Bilt*, 38 Cal.3d at 499) (emphasis added). Even if there is little or no evidence of apportionment of liability, a good faith determination must still be made "based on the evidence as it exists at the time of settlement." *In re: MTBE*, 578 F. Supp. 2d at 529; *Regan Roofing Co., Inc. v. Superior Court*, 27 Cal Rptr. 2d 62, 72 (Cal. Ct. App. 1994) (when facts on contested issues of liability or damages are tentative, court must "apply a broader and more permissive standard for evaluating good faith of a settlement").

## III. CITGO is not prejudiced by 7-Eleven's settlement.

CITGO's suggestion that its alleged liability in this matter "flows" from 7-Eleven is false. Besides being irrelevant, wrong, and simply plucked out of the ether, the determination of such issue is not proper during the resolution of a good faith settlement motion.

The issue of the good faith of a settlement must be determined "in advance of the trial of the plaintiff's complaint or of any determination of comparative or partial (equitable) indemnity as between cross-complainant and cross-defendant tortfeasors." *Fisher v. Superior Court*, 103 Cal. App. 3d 434, 443 (Cal. App. 2d Dist. 1980). To do otherwise would deprive the settling party of his bargain with the plaintiff and would lead the Court down a rabbit trail of fiercely contested issues of ultimate liability. *See id.*

CITGO conveniently ignores that no non-settling defendant, including CITGO, will be held liable for 7-Eleven's alleged conduct.  Paragraph 10 of the Settlement Agreement states:

> Although the District will pursue product liability claims against the non-settling defendants, the District has no factual basis to assert that 7-Eleven acted negligently or was otherwise responsible for causing damage that will be pursued in that trial, and has not and will not assert claims or causes of action arising out of acts or omissions of [7-Eleven] in connection with pursuing claims against another party in the litigation.

Because the District acknowledged that it will not assert claims against any other defendant based on acts or omissions of 7-Eleven, CITGO cannot rightfully assert that its liability arises out of 7-Eleven's conduct.

The Court may recall that Tom's Sierra Company and Sierra Energy (collectively "TSC") objected to the global settlement on the grounds that "it only delivered gasoline containing MTBE, its liability is vicarious to that of refiners, and therefore the possibility that it will have to pay any portion of a judgment with no means of seeking indemnity is unjust." *In re: MTBE*, 578 F. Supp. 2d at 533.  In rejecting the objection, this Court pointed out that TSC could still seek indemnity from non-settling manufacturer and that it had failed to meet its burden.  *Id.* at 533-34.  Thus, even if 7-Eleven is out of this case, CITGO (sued herein as a Supplier defendant) could still seek indemnity upstream from the suppliers and manufacturers of the gasoline it delivered.  The Court's opinion suggests that indemnification flows upstream from retailer to supplier and manufacturer, not downstream, as CITGO suggests.

## **CONCLUSION**

For the foregoing reasons, 7-Eleven respectfully requests that the Court overrule CITGO's Objection to 7-Eleven's Motion for Order Determining Good Faith Settlement and enter the proposed order and judgment pursuant to Rule 54(b), such that all pending and future claims or cross-claims against 7-Eleven for equitable comparative contribution, or comparative

or partial indemnity, based on comparative fault or comparative negligence, be dismissed and forever barred, together with such other and further relief as the Court deems just and proper.

| Dated: March 3, 2011 | Respectfully submitted,<br><br>*/s/ Michael A. Walsh*<br><br>**MICHAEL A. WALSH**<br>(MW 2534)<br>michael.walsh@strasburger.com<br>**COURTNEY JONES KIEFFER**<br>(CK 3714) (pro hac vice)<br>courtney.jones.kieffer@strasburger.com<br>**JADD F. MASSO**<br>(JM 4934) (pro hac vice)<br>jadd.masso@strasburger.com<br>**STRASBURGER & PRICE, LLP**<br>901 Main Street, Suite 4400<br>Dallas, Texas 75202-3794<br>Telephone: 214-651-4300<br>Facsimile: 214-651-4330<br><br>**ATTORNEYS FOR DEFENDANT 7-ELEVEN, INC.** |
|---|---|

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served via LexisNexis File and Serve upon all counsel of record on March 3, 2011.

_____
**MICHAEL A. WALSH**