UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation<br><br>This Document Relates To:<br><br>Orange County Water District v. Atlantic Richfield Co., et al.<br>(Case No. 04-4968) | Master File No. 1:00-1898<br>MDL No. 1358 (SAS)<br>M21-88<br><br>DECLARATION OF MICHAEL A. WALSH IN SUPPORT OF DEFENDANT 7-ELEVEN, INC.'S MOTION FOR ORDER DETERMINING GOOD FAITH SETTLEMENT |

<u>SUPPLEMENTAL DECLARATION OF MICHAEL A. WALSH IN SUPPORT OF DEFENDANT 7-ELEVEN INC.'S REPLY TO DEFENDANT CITGO PETROLEUM CORPORATION'S OBJECTION TO 7-ELEVEN'S MOTION FOR ORDER DETERMINING GOOD FAITH SETTLEMENT</u>

Michael A. Walsh, an attorney admitted to practice law in the State of Texas and the State of New York and in this Court, hereby declares the following under the penalty of perjury:

1. I am a partner with the law firm of Strasburger & Price, LLP. My firm is counsel to 7-Eleven, Inc. ("7-Eleven") with respect to lawsuits filed against 7-Eleven concerning the gasoline additives methyl tertiary butyl ether ("MTBE") and tertiary butyl alcohol ("TBA").

2. Attached as Exhibit A is a true and correct copy of pages 8-9 of the Memorandum of Law in Support of Settling Defendants' Motion for Determination of Good Faith Settlement (LNSF No. 19733877), dated May 7, 2008, regarding the MTBE global settlement.

3. Attached as Exhibit B is a true and correct copy of the February 10, 2011 letter from Peter J. Sacripanti to the Honorable Shira A. Scheindlin (LNSF No. 35884791).

Dallas, Texas

March 3, 2011

*/s/ Michael A. Walsh*
MICHAEL A. WALSH

3348186.1/SP/76088/0420/030311

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via LexisNexis File and Serve upon all counsel of record on March 3, 2011.

_____
**MICHAEL A. WALSH**

# EXHIBIT A

The California and Illinois Settling Plaintiffs subject to this motion should recover from the Settlement Agreement as follows[9]:

**California Cases**

- *City of Riverside v. Atlantic Richfield Co., et al.*, Case No. 04-CV-4969

    o Plaintiff City of Riverside's allocation of the settlement proceeds is $1,014,097.00. It has 4 wells that have or have had detections of MTBE and/or TBA. It also has 100 wells without past or current detections of MTBE that may be eligible to receive treatment in the future under the Settling Defendants' future treatment obligations under the Settlement Agreement.

- *Quincy Community Services District v. Atlantic Richfield Co., et al.*, Case No. 04-CV-4970:

    o Plaintiff Quincy Community Services, Inc.'s allocation of the settlement proceeds is $2,663,840.00. It has 1 well that has or has had detections of MTBE and/or TBA. It also has 5 wells without past or current detections of MTBE that may be eligible to receive treatment in the future under the Settling Defendants' future treatment obligations under the Settlement Agreement.

- *California-American Water Co. v. Atlantic Richfield Co., et al.*, Case No. 04-CV-4974:

    Plaintiff California-American Water Company's allocation of the settlement proceeds is $8,029,550.00. It has 3 wells that have or have had detections of MTBE and/or TBA. It also has 184 wells without past or current detections of MTBE that may be eligible to receive treatment in the future under the Settling Defendants' future treatment obligations under the Settlement Agreement.

---

[9] Two cases remanded by this Court and now pending in California state court; namely, *California Water Service Co. v. Atlantic Richfield Co., et al.*, Case No. CV-443990 (Cal. Super. Ct., San Mateo County) [former MDL Case No 05 CV 3227 (SAS)] and *Riverview Water District (now Lakeside Water District as a result of merger) v. Atlantic Richfield Co., et al., Case No. CV-37-2007-00080789 (Cal. Super. Ct., San Diego County)* [former MDL Case No. 06 CV 0877 (SAS)] are part of this settlement. Plaintiff California Water Service Company, which is allocated $49,716,872.00 of the aggregate settlement amount, has identified 27 wells with past or current detections of MTBE or TBA and 786 wells without past or current detections of MTBE or TBA. Further, Plaintiff Riverview (now Lakeside), which is allocated $11,415,569.00 of the aggregate settlement amount, has identified 4 wells with past or current detections of MTBE or TBA and 3 wells without past or current detections of MTBE or TBA. *See* Decls. of Victor M. Sher and Scott Summy. Motions for good faith determinations will be submitted to the California courts where these cases are now pending.

8

- *People of the State of California, et al. v. Atlantic Richfield Co., et al.*, Case No. 04-CV-4972:

    o   The terms with respect to Plaintiff California-American Water Company are set forth in connection with Case No. 04-CV-4974 cited above.

    o   Plaintiff Citrus Heights Water District's allocation of the settlement proceeds is $264,853.00. It does not have any wells that have or have had detections of MTBE and/or TBA. It has 5 wells without past or current detections of MTBE that may be eligible to receive treatment in the future under the Settling Defendants' future treatment obligations under the Settlement Agreement.

    o   Plaintiff Del Paso Manor Water District's allocation of the settlement proceeds is $264,853.00. It does not have any wells that have or have had detections of MTBE and/or TBA. It has 8 wells without past or current detections of MTBE that may be eligible to receive treatment in the future under the Settling Defendants' future treatment obligations under the Settlement Agreement.

    o   Plaintiff Fair Oaks Water District's allocation of the settlement proceeds is $264,853.00. It does not have any wells that have or have had detections of MTBE and/or TBA. It has 9 wells without past or current detections of MTBE that may be eligible to receive treatment in the future under the Settling Defendants' future treatment obligations under the Settlement Agreement.

    o   Plaintiff Florin Resource Conservation District's allocation of the settlement proceeds is $264,853.00. It does not have any wells that have or have had detections of MTBE and/or TBA. It has 15 wells without past or current detections of MTBE that may be eligible to receive treatment in the future under the Settling Defendants' future treatment obligations under the Settlement Agreement.

    o   Plaintiff Rio Linda Elverta Community Water District's allocation of the settlement proceeds is $264,853.00. It does not have any wells that have or have had detections of MTBE and/or TBA. It has 12 wells without past or current detections of MTBE that may be eligible to receive treatment in the future under the Settling Defendants' future treatment obligations under the Settlement Agreement.

- *M & P Silver Family Partners II v. Alon USA Energy, Inc., et al.*, Case No. 04-CV-4975:

    o   Plaintiff M & P Silver Family Partners II's allocation of the settlement proceeds is $3,937,202.00. It has 2 wells that have or have had detections of MTBE and/or TBA. It does not have any wells without past or current detections of MTBE that would be subject to the future treatment obligations set forth in the settlement agreement.

# EXHIBIT B

# McDermott
# Will&Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Peter J. Sacripanti
Attorney at Law
psacripanti@mwe.com
212.547.5583

February 10, 2011

**BY ELECTRONIC MAIL AND HAND DELIVERY**

The Honorable Shira A. Scheindlin
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1620
New York, New York 10007-1312

      Re:    Master File C.A. No. 1:00-1898 (SAS), M21-88, MDL No. 1358
              *Defendants' Pre-Conference Reply Letter for February 15, 2011 Conference*

Dear Judge Scheindlin:

      Defendants' respectfully submit this reply letter in advance of the February 15, 2011 status conference.

## PLAINTIFFS' AGENDA ITEMS

**I.**    **Dispositive Motions in *Crescenta Valley* Case:** On February 1, Plaintiff's counsel sent a letter to the Court explicitly stating that a suggestion of remand was appropriate at this time. Plaintiff represented that everything that remained was for the transferor court: "Plaintiff Crescenta respectfully asserts that '**everything that remains to be done is case-specific**' (*In re Patenaude, supra*, at 145), and therefore requests that the Court hear Crescenta's motion for an order containing a suggestion of remand to the JPML. Plaintiff Crescenta respectfully asserts that a suggestion of remand **is appropriate at this time** based on the following factors: . . . ." Exhibit A, p. 3 (emphasis added).

      Defendants agree that remand to the Central District of California is appropriate now that both fact and expert discovery have been concluded. Defendants share the view that any work which can be foreseen, including work for the court in resolving legal questions, would be case-specific and therefore within the province of the trial court as it prepares to try the case. In any event, no Defendant has reached a decision with respect to dispositive motions at this time.

**II.**    **Appointment of Special Settlement Master in *California Cases*:** Defendants are always willing to discuss settlement; however, Defendants are perplexed by Plaintiffs agenda item. Mr. Miller has not previously raised the appointment of settlement master with Defendants, nor has he made any recent settlement demands other than a collective demand to all

U.S. practice conducted through McDermott Will & Emery LLP.
340 Madison Avenue New York New York 10173 Telephone: 212.547.5400 Facsimile: 212.547.5444 www.mwe.com

The Honorable Shira A. Scheindlin
February 10, 2011
Page 2

defendants in the *Merced RDA* case. Thus, Defendants do not know why Mr. Miller believes that "it is now appropriate to re-visit the potential for settlement in [his] California cases" and that "appointing a Special Master in California would increase the likelihood of success of that effort." Plaintiff's Letter, p.2.

Defendants have reason to be skeptical of this request based on the prior mediation before the current Special Settlement Master, David Geronemus. Mr. Miller walked out of that mediation early on, while the Defendants were able to reach settlements in the vast majority of cases in the MDL with those attorneys whose clients continued to participate. Many of the cases were settled prior to the parties incurring significant discovery costs.

Discovery will be completed in *CVWD* at the time of the status conference, and is significantly underway in *OCWD*, *Merced RDA* and *City of Fresno*. Discovery has revealed that in each case Plaintiff lacks legitimate damages claims. Only extremely low-levels of MTBE, if any, are currently in the wells at issue, and for nearly all wells, that has always been the case. Further, Plaintiffs' actions in the real world are contrary to their claims in these cases. Having incurred the costs of discovery and learned the true facts underlying these cases, Defendants are skeptical that these cases can be settled at an amount that reflects their true value.

If Mr. Miller is serious about settlement in any of his cases at this time, he should make individual settlement demands to each Defendant. Each case has unique facts, and not all Defendants are in all cases. Defendants in each case can evaluate whether – based on their demand – mediation would be helpful in any particular case, and they can work with Mr. Miller to select a mediator if settlement does appear promising. At this point, however, Defendants do not believe appointing a Settlement Master is warranted.

**III.     Pre-motion letter re: adding Cumberland Farms in New Jersey:** As stated in Gulf Oil Limited Partnership's ("GOLP") January 20, 2011 letter responding to Plaintiffs' request for leave to add Cumberland Farms, Inc. ("CFI"), Plaintiffs' request should be denied because it is untimely and highly prejudicial to CFI and to Defendants.

First, Plaintiffs have offered no credible explanation why they delayed three and a half years before seeking to add CFI as a party. Plaintiffs' claim that they only recently learned of CFI's relationship to two of the focus discovery sites is disingenuous at best. The New Jersey Department of Environmental Protection ("NJDEP") has long been the administrative authority charged with environmental regulation of the focus discovery sites and other CFI-affiliated locations throughout New Jersey. Therefore, Plaintiffs' contention that they only recently learned of CFI's relationship to these sites when GOLP submitted its November 12, 2010 discovery responses lacks credibility. As a service station owner, CFI has regularly reported to NJDEP regarding both CFI-affiliated focus discovery sites for decades. *See, e.g.*, 1988 Tank Registration for the CFI-Waldwick site (Exhibit B); 1989 permit to operate vapor recovery equipment at the CFI-Palmyra site (Exhibit C). It is indisputable that Plaintiffs knew about

The Honorable Shira A. Scheindlin
February 10, 2011
Page 3

CFI's relationship to these sites, but inexcusably waited to seek to add CFI as a party.[1] Plaintiffs have previously amended their complaint to add and remove defendants twice already. Yet, neither time did they seek to add CFI.

Second, contrary to Plaintiffs' representations in their February 15, 2011 Status Conference letter, whether CFI was in the past a defendant in other completely separate and unrelated MDL matters or whether CFI had notice of Plaintiffs' suit here are both irrelevant to whether Plaintiffs' motion should be allowed. Plaintiffs' incorrectly state that "Cumberland Farms is already a defendant in several MDL cases." CFI, however, is not currently a defendant in any other MDL-matters. In fact, CFI was only a defendant in two MDL matters regarding locations in Massachusetts—*City of Lowell* and *Town of Duxbury*—both of which settled several years ago, before extensive discovery was taken. Furthermore, notice to the party to be added is not a factor the Second Circuit considers when determining whether a motion to amend a complaint should be denied. *Sterling v. Interlake Industries Inc.*, 154 F.R.D. 579, 588-89 (E.D.N.Y. 1994) ("Only 'undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of the amendment' will serve to prevent an amendment prior to trial.").

Third, both Defendants and CFI would be highly prejudiced by the late addition of CFI as a party. As detailed in GOLP's January 20, 2011 letter, Plaintiffs waited to bring this motion until well after extensive-statewide discovery was conducted. Plaintiffs also inexplicably waited until after Defendants selected their 18 focus discovery sites to seek leave to add CFI. Plaintiffs' delay denied Defendants the opportunity to select trial sites with the knowledge that independent jobbers, station owners, and/or station operators would later be sought to be named as defendants in the case, which may have affected the mix of discovery sites Defendants selected. CFI was similarly denied the opportunity to participate in the discovery site selection process. Thus, the undue delay in Plaintiffs' request has materially prejudiced both Defendants and CFI.

Additionally, CFI's joinder could result in the need to join a litany of additional service station owners, operators, jobbers, and other potentially liable third parties. Adding CFI, and potentially, other service station owners, operators, and jobbers at this late date would likely delay the focus trial and would fundamentally alter the nature of the focus trial because service station owners and operators would be subject to different theories of liability and different defenses than other Defendants, further complicating what will already be a complicated focus trial.

---

[1] In addition to having notice of CFI's relationship to the focus discovery site locations as described above, Plaintiffs' counsel, Scott Kauff and Leonard Kaufmann, had specific conversations regarding CFI and GOLP's respective relationship to the focus sites in September of 2010. These conversations included discussion of Plaintiffs' seeking leave to add CFI. Plaintiffs' counsel then waited another three months to seek leave.

The Honorable Shira A. Scheindlin
February 10, 2011
Page 4

      As always, we appreciate your Honor's attention to this matter and ask that this letter be docketed by the Clerk's Office so that it is part of the Court's file.

Respectfully submitted,

*Peter John Sacripanti*

Peter John Sacripanti

cc:    All Counsel By LNFS, Service on Plaintiffs' Liaison Counsel