**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------- X
                               :

**IN RE: METHYL TERTIARY BUTYL**  :
**ETHER ("MTBE") PRODUCTS**     :    **OPINION AND ORDER**
**LIABILITY LITIGATION**          :
------------------------------------------------- :    **Master File No. 1:00-1898**
                               :    **MDL 1358 (SAS)**
**This document relates to:**     :    **M21-88**
                               :

*New Jersey Department of Environmental*  :
*Protection, et al. v. Atlantic Richfield Co., et* :
*al.*, 08 Civ. 00312                :
                               X

------------------------------------------------



**SHIRA A. SCHEINDLIN, U.S.D.J.:**

**I.    INTRODUCTION**

      In 2008, the New Jersey Department of Environmental Protection

("NJDEP") filed a Complaint against various corporations for their use and

handling of the gasoline additive methyl tertiary butyl ether ("MTBE"), alleging

that MTBE contaminated New Jersey's groundwater.  Defendants now bring a

motion to compel the production of certain documents that the NJDEP claims are

protected from disclosure under the deliberative process privilege.  Defendants

also seek an order directing the NJDEP to limit its use of the deliberative process

privilege and to follow certain procedures when asserting the privilege.  For the

reasons set forth below, Defendants' motion is denied.

## II.   BACKGROUND[1]

The NJDEP is responsible for overseeing the remediation of contaminated sites performed by the Responsible Party[2] at each site.  To accomplish their oversight function, the NJDEP appoints a case manager who is responsible for reviewing the remedial activities performed by the Responsible Parties and/or its environmental contractors.  Information about the activities is conveyed to the NJDEP through a variety of written reports, including Remedial Investigation Reports that describe the status of the contamination, and Remedial Action Plans that describe the Responsible Party's proposed method of remediation.  The reports are reviewed by the case manager, who often refers them to technical members of the case team, including geologists and technical coordinators.  After considering the input of the case team members, the case manager makes a final decision to accept, reject, or recommend modifications to the submitted report.

---

[1]      All the background information set forth in this section is taken from the Declaration of J. Mark Walters ("Walters Decl."), Case Manager for the NJDEP.

[2]      A Responsible Party is a person, company or other entity that has been determined to be legally responsible for discharge of a hazardous substance. *See* N.J. Stat. Ann. § 58:10-23.11b.

The NJDEP identified five documents containing communications between a case manager and other members of a case team as protected by the deliberative process privilege.[3]  All five of the documents concern a contaminated property known as the Johanson Manufacturing site ("Johanson site").  During the course of the case manager's deposition, counsel for the NJDEP objected to the documents being used and directed the case manager not to answer a number of questions pertaining to the documents.  The NJDEP claims that disclosure of the documents would have a chilling effect on the open discussions necessary to create good policy.  In support of its assertion of privilege, the NJDEP submitted a declaration from Catherine Tormey, Deputy Advisor to the Commissioner of the NJDEP.  The declaration states that she is "familiar with the NJDEP's policy related to the production of documents in response to litigation discovery," and that NJDEP and the Office of the Attorney General of New Jersey instructed the Special Counsel to assert the deliberative process privilege in this litigation as it has in other cases.[4]

---

[3]      These are not the only disputed documents withheld by the NJDEP under the deliberative process privilege, but they are the only documents currently being litigated.  Resolving this dispute will define the general parameters of the privilege so that future discovery disputes can be settled expeditiously.  The NJDEP has provided copies of the five exhibits at issue for *in camera* inspection.

[4]      1/18/11 Declaration of Catherine Tormey ("Tormey Decl."), ¶¶ 4-6.

3

## III.   APPLICABLE LAW

In civil actions where state law supplies the rule of decision, privileges are to be determined in accordance with state law.[5]  The Court will therefore apply New Jersey law in determining the scope of the deliberative process privilege.  However, federal law is also instructive particularly with respect to procedural issues.

### A.   New Jersey Privilege Law

The State of New Jersey officially recognized the deliberative process privilege in 2000.[6]  The deliberative process privilege "permits the government to withhold documents that reflect advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated."[7]  The privilege is intended both "to ensure free and uninhibited communication within governmental agencies so that the best possible

---

[5]      Fed. R. Evid. 501.

[6]      *See Education Law Ctr. v. New Jersey Dep't of Education*, 966 A.2d 1054, 1061 (N.J. 2009) ("This Court addressed the deliberative process privilege in *Integrity*.  In addition to officially recognizing the privilege that had enjoyed long acceptance in the federal courts, we set standards for its application.") (citing *In re Liquidation of Integrity Ins. Co.*, 754 A.2d 1177 (N.J. 2000)).

[7]      *In re Liquidation of Integrity Ins. Co.*, 754 A.2d 1177, 1181-1182 (N.J. 2000).

4

decisions can be reached, "[8] and to ensure that an agency "is judged by policy adopted, not policy merely considered."[9]

In order to qualify for the privilege, a document must be both "pre-decisional" and "deliberative."[10]  A document is pre-decisional if it was "generated before the adoption of an agency's policy or decision."[11]  A deliberative document is one that "contain[s] opinions, recommendations, or advice about agency policies."[12]  The question of whether a document is deliberative depends "first, on whether the information sought is a part of the process leading to formulation of an agency's decision, and, second, on the material's ability to reflect or to expose the deliberative aspects of that process."[13]  "Once the threshold requirements have been proved by the government, the privilege is invoked, resulting in a presumption of confidentiality because the 'government's interest in candor is the preponderating policy and . . . the balance is said to have been struck in favor of

---

[8]     *Education Law Ctr.*, 966 A.2d at 1061.

[9]     *Id.* (characterizing *Jordan v. United States Dep't of Justice*, 591 F.2d 753, 773 (D.C. Cir. 1978)).

[10]     *Integrity*, 754 A.2d at 1182.

[11]     *Id.*

[12]     *Id.*

[13]     *Education Law Ctr.* 966 A.2d at 1067.

non-disclosure.'"[14]

The deliberative process privilege is qualified. A litigant "may obtain deliberative process materials if his or her need for the materials and the need for accurate fact-finding override the government's significant interest in non-disclosure."[15] "As with any privilege, the party seeking such documents bears the burden of showing a substantial or compelling need for them."[16] "In all but exceptional cases it is considered against the public interest to compel government to produce inter-agency advisory opinions."[17] Factors to consider in determining whether a litigant has demonstrated a compelling need for disclosure include

> (1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions.[18]

### B. Federal Privilege Law

Federal common law requires a party seeking to assert the deliberative

---

[14]   *Id.* at 1061 (quoting *Integrity*, 754 A.2d at 1177).

[15]   *Integrity*, 754 A.2d at 1182.

[16]   *Id.* at 1182-83.

[17]   *Id.*

[18]   *Education Law Ctr.* 966 A.2d at 1067 (quoting *Integrity*, 754 A.2d at 1177).

process privilege to satisfy three procedural requirements:

> First, there must be a formal claim of privilege lodged by
> the head of the department that has control over the matter,
> after actual consideration by that officer. Second, the
> responsible agency official must provide precise and
> certain reasons for asserting the confidentiality over the
> information or documents. Third, the government
> information or documents sought to be shielded must be
> identified and described.[19]

The privilege claim can also be lodged by a "'subordinate with high authority'

pursuant to 'guidelines on the use of the privilege' issued by the head of the

agency."[20]

## IV.    DISCUSSION

Defendants argue that the NJDEP has improperly and

indiscriminately asserted the deliberative process privilege.  The question of

whether the NJDEP sufficiently met the procedural requirements to invoke the

privilege must be resolved before turning to the analysis of whether the

deliberative process privilege protects the documents at issue.

### A.    Assertion of Privilege

---

[19]    6 James Wm. Moore *et al.*, Moore's Federal Practice ("Moore's"), ¶ 26.52.

[20]    *Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 643 F. Supp. 2d 439, 443 (S.D.N.Y. 2009) (quoting *Resolution Trust Corp. v. Diamond*, 137 F.R.D. 634, 641 (S.D.N.Y. 1991)).

The parties dispute whether federal privilege law, which requires the procedural requirements discussed above, applies. Plaintiff first argues that the procedural requirements are not applicable under New Jersey law, correctly stating that no New Jersey court applying state law has required that high-level agency personnel assert the privilege on a document-by-document basis.[21]  However, "while the substantive question of privilege is decided by [state] law," the procedural requirements for asserting a privilege in federal court are governed by federal law.[22]  Generally, a party withholding otherwise discoverable documents on the basis of privilege must follow Federal Rule of Civil Procedure 26(b)(5)(A), which requires the party to: (i) expressly make the claim; and (ii) describe the nature of the documents . . . not produced . . . in a manner that, without revealing

---

[21]      *See* 1/18/11 Letter from Leonard Z. Kaufmann, Special Counsel to the Attorney General, to the Court ("Kaufmann Letter"), at 15.

[22]      *Dixon v. 80 Pine St. Corp.*, 516 F.2d 1278, 1280 (2d Cir. 1975). *Accord Hosey v. Presbyterian Church (U.S.A.)*, 160 F.R.D. 161, 163 (D. Kan. 1995) ("In this diversity action, the privilege of a witness must be determined in accordance with state law as provided in Fed. R. Evid. 501.  However, the method for asserting the privilege is controlled by federal law in this federal action."); *Jones v. Commercial Union Ins. Co.*, 161 F.R.D. 240, 242 (W.D.N.Y. 1994). *But see City of New York v. Republic of Philippines*, No. 03 Civ. 6085, 2004 WL 2710026, at *8 (S.D.N.Y. Nov. 23, 2004) ("One key difference between the state and federal formulations of the privilege is that the deliberative process privilege may be invoked under federal law only by the head of the agency or a subordinate who has properly been delegated that authority.").

8

information itself privileged or protected, will enable other parties to assess the claim. Federal common law imposes enhanced procedural hurdles on assertions of the deliberative process privilege. I previously explained that "[t]he burden imposed by these requirements is not without salutary effects, as transaction costs deter reflexive assertion of the privilege and unnecessary government secrecy."[23]

The NJDEP has an obligation to comply with federal procedures when in federal court. Nonetheless, "federal common law provides for some consideration of state law privileges, since a strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policies."[24] The broader scope of the privilege under New Jersey law undermines some of the justifications for the agency head requirement. "The requirement that the head of an agency be the deciding authority rests on the notion that the decisionmaker is in the best position to know what documents were prepared to assist a decision, what documents express deliberative opinions, and

---

[23]     *MTBE Prod. Liab. Litig.*, 643 F. Supp. 2d at 443.

[24]     *Mercado v. Division of N.Y. State Police*, 989 F. Supp. 521, 522-523 (S.D.N.Y. 1998) (citations omitted).

9

what documents must be protected in order to maintain internal candor."[25]

Because the New Jersey deliberative process privilege is not limited to the

formulation of high-level policies by high-level officials, it follows that the

invocation of the privilege should not be limited to high-level officials.

In this case, the declarations submitted to invoke the privilege were

signed by Catherine Tormey, the Deputy Advisor to the Commissioner of the

NJDEP.  Tormey serves as a legal policy advisor to the Commissioner and as a

liaison to the Division of Law, which serves as counsel to the NJDEP, and has

held the position since May 2002.[26]  In context, as a federal court applying state

privilege law, I find Tormey to be a sufficiently high-level subordinate to invoke

the privilege.

Plaintiff submitted a privilege log in this matter that defendants claim

is facially deficient and belatedly produced.  Defendants are correct that the

privilege log is insufficiently detailed.  "The standard for testing the adequacy of

---

[25]     *Id.  Accord LNC Investments, Inc. v. Republic of Nicaragua*, No. 96
Civ. 6360, 1997 WL 729106, at *2 (S.D.N.Y. Nov. 21, 1997) ("These
requirements insure that the documents sought to be protected were: (1) part of the
deliberative process by which policies or decisions are formulated; and (2) truly of
a predecisional, or advisory or recommendatory nature, or expresses an opinion on
a legal or policy matter, or otherwise were reflective of a deliberative process.").

[26]     Tormey Decl. ¶ 1.

10

the privilege log is whether, as to each document, it sets forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed."[27] The descriptions of the documents in the submitted privilege log are bare-boned.[28] Accordingly, the NJDEP is ordered to produce a revised privilege log that identifies each document with the specificity needed to demonstrate that the protected communication was pre-decisional and deliberative.

### B.   Privilege Applied

New Jersey courts have never directly addressed the question of whether the deliberative process privilege applies only to high-level policy formulation or more broadly.  In fact, the contours of the privilege in New Jersey have yet to be shaped.  "In addressing unsettled areas of state law, we are mindful that 'our role as a federal court . . . is not to adopt innovative theories that may distort established state law.'"[29] Rather, the district court must "carefully predict

---

[27]   *Golden Trade v. Apparel Co.*, No. 90 Civ. 6291, 1992 WL 367070, at *5 (S.D.N.Y. Nov. 20, 1992).

[28]   For example, the description of document NJDEP-SITE316-044765-044770 is simply "Memorandum" and the subject is listed as "Johanson Manufacturing Corporation, Phase II, Remedial Investigation Work Plan, August 1992." 1/13/11 Privilege Log, Ex. D to Kaufmann Letter.

[29]   *Travelers Ins. Co. v. Carpenter*, 411 F.3d 323, 329 (2d Cir. 2005) (quoting *National Union Fire Ins. Co. of Pittsburgh, PA v. Stroh Cos.*, 265 F.3d 97, 106 (2d Cir. 2001)).

11

how the state's highest court would resolve the uncertaint[ies] . . . giv[ing] the fullest weight to pronouncements of the state's highest court . . . while giving proper regard to relevant rulings of the state's lower courts." [30]

In *Gannett New Jersey Partners, LP v. County of Middlesex*, the New Jersey Appellate Division found that the deliberative process privilege protected from release certain handwritten notes of a principal planner in the County Planning Department concerning whether the County should condemn a property and place it in the Farmland Preservation Program.[31] In *Tractenberg v. Township of West Orange*, the court evaluated whether a property appraisal, prepared by a private appraiser at the request of the West Orange City Council, fell under the protection of the deliberative process privilege.[32] Although the court ultimately found that the appraisal was not protected, it never discussed whether the pre-decisional discussions were sufficiently high-level to qualify for the protection of the privilege.[33] *Integrity Insurance* involved how the assets of an insolvent

---

[30]   *Id.*

[31]   877 A.2d 330 (N.J. Super. Ct. App. Div. 2005).

[32]   4 A.3d 585 (N.J. Super. Ct. App. Div. 2010).

[33]   *See id.*

insurance company were to be collected and distributed.[34]  In that case, the court

defined the privilege as the right of the government "to withhold documents that

reflect advisory opinions, recommendations, and deliberations comprising part of

a process by which governmental decisions and policies are formulated."[35]  That

expansive definition of the privilege – combined with the rather pedestrian subject

matter of the New Jersey cases that have applied the privilege – weighs against

requiring disclosure of the disputed documents based solely on the subject matter

they address.

   Defendants point to language in *Education Law Center* as support for

their contention that the New Jersey Supreme Court would adopt the interpretation

that the privilege applies exclusively to high-level policy formulation.

Specifically, they cite a passage stating that identifying deliberative material

depends on how closely the material "relates to the 'formulation or exercise of . . .

policy-oriented judgment or [to] the process by which policy is formulated."[36]

Defendants argue that this should be considered a deliberate narrowing of the

privilege to exclude the more routine "governmental decisions" that appeared in

---

[34]  754 A.2d 1177.

[35]  *Id.* at 1181-82.

[36]  *Education Law Ctr.* 966 A.2d at 1067.

13

the definition of the privilege in the *Integrity* decision.  However, in the very next sentence, the court proclaims that "[d]eliberative material need not . . . expressly reflect an overt opinion, recommendation, or advice when a *discretionary decision is in development.*"[37]   Contrary to Defendants' assertion, *Education Law Center* does not limit, or attempt to limit, the applicability of the deliberative process privilege to high-level policy formulation.  As a consequence, I will not adopt such a limitation either.

### 1.    Walters Exhibits 7, 12, 13, 14 & 20

Defendants make no argument that the documents at issue were not pre-decisional – the discussions all preceded decisions made with respect to the Johanson site.  In order to qualify as privileged, however, the documents also must be deliberative.  The "deliberative nature of the material sought must be functionally determined based on the document's nexus to the decision-making process and its capacity to expose the agency's deliberations during that process."[38]  All of the documents at issue were communications among the members of the case team.

Exhibit 7 is a memorandum prepared by a case geologist in the

---

[37]    *Id.* (emphasis added).

[38]    *Id.* at 1068.

14

Bureau of Ground Water Pollution Abatement in response to a Remedial

Investigation Report prepared by International Technology Corporation regarding

the Johanson Manufacturing site. The memo was created and used during the

deliberative process employed by the NJDEP in determining whether to accept the

representations made in the report.

Exhibit 12 is a series of e-mails and memoranda between Walters and

other members of the case team relating to their opinions on the issuance of a

permit and to the March 1994 revised Supplemental Remediation Investigation

Report, and as such is deliberative and pre-decisional.

Exhibit 13 is a series of four e-mails among the members of a NJDEP

case team discussing the ongoing decision-making process over what remediation

would be required at a contaminated site by the responsible party. The e-mails are

pre-decisional and reflect the views of NJDEP staff concerning appropriate

remediation of the site.

Exhibit 14 contains seven e-mails debating Johanson's suggestion to

deepen a monitoring well on the Johanson site. These documents were properly

withheld, as they reflect a pre-decisional and deliberative discussion concerning

on-site monitoring activity.

Exhibit 20 is an e-mail from Mark Walters to Mary Hrenda of the

DEP Bureau of Groundwater Pollution Abatement reflecting that bureau's

recommendations for the Johanson site.  As a suggestion of what remediation

techniques would be most effective, the e-mail is both pre-decisional and

deliberative.

### 2.    Weighing Interests

Having established that the deliberative process privilege applies, the

burden falls to Defendants to demonstrate that its need for the materials outweighs

Plaintiff's interest in nondisclosure.  The first and second factors to consider when

weighing whether the need of the litigant for access to the privileged information

outweighs the public interest in nondisclosure is the relevance of the evidence and

the availability of other evidence.[39]  In this case, the NJDEP seeks to hold

Defendants responsible for costs associated with investigation and remediation of

various sites, as well as natural resource damages determined by the Office of

Natural Resource Restoration ("ONRR").  Communications containing differing

opinions on the appropriate remedial actions for each site are relevant to the

litigation.  For example, an unheeded suggestion that would have lessened current

contamination levels may affect damages calculations.  However, Defendants have

---

[39]    *Education Law Ctr.* 966 A.2d at 1067 (quoting *Integrity*, 754 A.2d at 1177).

16

full access to the various Orders and Directives promulgated by the NJDEP, which

reflect the NJDEP's final decisions.  Evaluation of the propriety of the NJDEP's

actions can be made through the use of non-privileged information – access to

internal communications is unnecessary to advance the argument that the NJDEP's

orders did not constitute appropriate remediation.[40]  Defendants are free to present

expert witnesses to contend that alternative remediation strategies would have

been more successful than the ones adopted by the NJDEP's final decisions.

The third factor to consider is the government's role in the litigation.

When a government agency is a party to the litigation and is the potential

beneficiary of the invocation of the privilege, careful scrutiny is required to ensure

that the proper scope of the privilege is not exceeded.[41]  Courts have held that

"[w]hen the government seeks affirmative relief, it is fundamentally unfair to

allow it to evade discovery of materials that a private plaintiff would have to turn

---

[40]     *See United States v. Hooker Chems. & Plastics Corp.*, 114 F.R.D.
100, 103 (W.D.N.Y. 1987) (holding that an evaluation of the propriety of the
government's actions at a contaminated site could be made using non-privileged
materials).

[41]     *See Dairyland Power Coop. v. United States*, 77 Fed. Cl. 330, 342
(Fed. Cl. 2007).

over."[42]  As a consequence, "courts have severely restricted the use of the privilege by government agencies that are seeking affirmative judicial relief."[43]  This restriction on the privilege is most frequently discussed in the context of Equal Employment Opportunity Commission cases, where the agency frequently initiates litigation.[44]  The mission of the NJDEP is not as litigation-focused.  While the NJDEP's role as plaintiff in this litigation mitigates its expectation of confidentiality in the documents at issue, it does not eviscerate it entirely.  Nonetheless, the third factor weighs in favor of Defendants.

Finally, the fourth factor is the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions.  Defendants strenuously contend that a fear of future disclosure should make no difference to NJDEP employees determining what is proper and necessary at a given site, and that the public would be well-served by injecting

---

[42]  *Equal Employment Opportunity Comm'n v. Citizens Bank & Trust Co.*, 117 F.R.D. 366 (D. Md. 1987).

[43]  *United States v. Ernstoff*, 183 F.R.D. 148, 153 (D.N.J. 1998).  *Accord Federal Deposit Ins. Corp. v Hatziyannis*, 180 F.R.D. 292 (D.Md. 1998).  *But see Export-Import Bank of the U.S. v. Asia Pulp & Paper Co., Ltd.*, 232 F.R.D. 103 (S.D.N.Y. 2005) (finding that the argument that the deliberative process privilege "is not available to the government when the government is the plaintiff . . . has no logical foundation").

[44]  *See Ernstoff*, 183 F.R.D. at 153.

18

transparency in the decisionmaking process.  But the privilege presumes that

disclosure will affect the quality of government decisionmaking, reflecting the

notion that policy is best formulated in an environment of free, open, and robust

discussion without fear of public disclosure.  The documents sought by the

Defendants reflect the internal deliberations of a diffuse team of professionals

tasked with overseeing the cleanup of a contaminated site.  At times the tenor of

the discussions is subdued, and at times it is discordant and passionate.  The

privilege contemplates that "those who expect public dissemination of their

remarks may well temper candor with a concern for appearances and for their own

interests to the detriment of the decisionmaking process."[45]  There is a danger that

a fear of public disclosure could chill candid debate among the case team

members, resulting in inefficient or ineffective site remediation decisions.[46]

After considering the factors prescribed by New Jersey law, I find

that defendants have not demonstrated that this is an "exceptional" case where a

compelling need for the documents overcomes the protection provided by the

deliberative process privilege.[47]

---

[45]     *United States v. Nixon*, 418 U.S. 683, 705 (1974).

[46]     *See* Walters Decl. ¶ 9.

[47]     *Integrity*, 754 A.2d at 1183.

## V.    CONCLUSION

For the reasons previously stated, the Defendants' motion to compel is denied.  In any future assertion of a privilege the NJDEP must provide privilege logs that are sufficiently detailed to allow Defendants to evaluate the validity of the claimed privilege.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             March 8, 2011

20

**-Appearances-**

**Liaison Counsel for Plaintiffs:**

Robin Greenwald, Esq.
Robert Gordon, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, New York  10038
Tel: (212) 558-5500
Fax: (212) 344-5461

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
McDermott Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, New York  10020
Tel: (212) 547-5583
Fax: (212) 547-5444

**Counsel for NJDEP:**

Michael Axline, Esq.
Miller, Axline & Sawyer, P.C.
1050 Fulton Avenue, Suite 100
Sacramento, CA 95825-4225
(916) 488-6688

Thomas P. Gressette, Jr., Esq.
Richardson, Patrick,
Westbrook & Brickman, LLC
1037 Chuck Dawley Blvd., Building A
Mount Pleasant, SC 29464
(843) 727-6595

Scott E. Kauff, Esq.
Law Offices of John K. Dema, P.C.
11300 Rockville Pike, Suite 112
Rockville, MD 20852
(301) 881-5900

Leonard Z. Kaufmann, Esq.
Cohn Lifland Pearlman
Herrmann & Knopf, LLC
Park 80 West - Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ 07663
(201) 845-9600

**Counsel for ExxonMobil:**

Stephen J. Riccardulli, Esq.
Michael Dillon, Esq.
McDermott Will & Emery, LLP
340 Madison Avenue
New York, NY 10173
(212) 547-5631

**Counsel for Shell:**

Alec C. Zacaroli, Esq.
Wallace King Domike & Reiskin
2900 K Street NW, Suite 500
Washington, DC 20007
(202) 965-6021

**Counsel for El Paso Corporation:**

Dawn A. Ellison, Esq.
Howrey, LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 383-6848

**Counsel for CITGO:**

Pamela R. Hanebutt, Esq.
Eimer Stahl Klevorn & Solberg, LLP
224 South Michigan Ave., Suite 1100
Chicago, IL 60604
(312) 660-7625

22