**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:  Methyl *tertiary* Butyl Ether ("MtBE")  Products Liability Litigation | Master File No. 1:00-1898  MDL No. 1358 (SAS) |
| This Document Relates To:   *Orange County Water District v. Unocal  Corporation, et al.,*  Case No. 04 Civ. 4968 (SAS) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF ORANGE COUNTY WATER
DISTRICT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

ARGUMENT .....................................................................................................3

I.      The District Submitted No Proof that Defendants Caused the Contamination ..................3

        A.      Ownership, operation, or supply is insufficient to establish causation....................3

        B.      Proof of Defendants' remedial activities is insufficient ..........................................5

        C.      The District's reliance on *City of Modesto* is unavailing.........................................5

II.     The District Is Not Entitled to Partial Summary Judgment under the Act ........................6

        A.      The Act's delineation of investigation and remediation costs ................................6

        B.      The District has not identified any recoverable costs under the OCWD Act .........7

        C.      The costs the District has identified are unnecessary and unreasonable ..............10

        D.      The District's reliance on other remedial statutes is misplaced............................12

III.    Additional Fact Issues Preclude Summary Judgment on Nuisance and Trespass ............16

        A.      An issue of fact exists on substantial and unreasonable interference ...................16

        B.      The District's alleged usufructuary rights are subordinate to other water users....19

IV.     The District Failed to Show that the Alleged Nuisance and Trespass Are Continuing.....21

V.      The District Has Failed to Negate Defendants' Affirmative Defenses.............................25

## TABLE OF AUTHORITIES

CASES                                                                                          PAGE(S)

*A. Shapiro & Sons, Inc. v. Rutland Waste & Metal Co.*,
    76 F. Supp. 2d 82 (D. Mass. 1999) ........................................................................14

*Adobe Lumber, Inc. v. Hellman*,
    658 F. Supp. 2d 1188 (E.D. Cal. 2009)...................................................................12

*Beck Dev. Co., Inc. v. S. Pac. Transp. Co.*,
    44 Cal. App. 4th 1160 (1996) .............................................................18, 21, 22

*Bowen v. Georgetown University Hosp.*,
    488 U.S. 204 (1988)............................................................................................8, 24

*Cardoza v. Calkins*,
    117 Cal. 106 (1897) ...............................................................................................21

*Central & Western Basin Water Replenishment Dist. v. Southern California Water Co.*,
    109 Cal. App. 4th 891 (2003) ...............................................................................20

*City of Barstow v. Mojave Water Agency*,
    23 Cal. 4th 1224 (2000) ...................................................................................19, 20

*City of Modesto Redevelopment Agency v. Dow Chemical Co.*,
    2005 WL 1171998 (Cal. Super. Ct., Apr. 11, 2005)................................................5

*City of Modesto Redev. Agency v. Sup. Court*,
    119 Cal. App. 4th 28 (2004) .............................................................................4, 5, 6

*Clean Air Constituency v. California State Air Resources Board*
    11 Cal. 3d 801 (1974) ...........................................................................................13

*Conn. National Bank v. Germain*,
    503 U.S. 249 (1992)...............................................................................................14

*County of San Diego v. Assessment Appeals Bd. No. 2*,
    148 Cal. App. 3d 548 (1983) .................................................................................24

*County of Santa Clara v. Atlantic Richfield Co.*,
    137 Cal. App. 4th 292 (2006) ...............................................................................16

*Environmental Protection Information Center. v. Johnson*,
    170 Cal. App. 3d 604 (1985) .................................................................................14

*Frankel v. ICD Holdings S.A.*,
    930 F. Supp. 54 (M.D. Ala. 1996) ........................................................................25

*Golden Pacific Bancorp v. FDIC*,
  375 F.3d 196 (2d Cir. 2004)......................................................................................12

*Haycock v. Hughes Aircraft Co.*,
  22 Cal. App. 4th 1473 (1994) ..................................................................................12

*In re MTBE Products Litigation*,
  676 F. Supp. 2d 139 (S.D.N.Y 2009).......................................................................17

*In re MTBE Products Litigation*,
  457 F. Supp. 2d 455 (S.D.N.Y. 2006).............................................................3, 4, 19

*In re MTBE Products Litigation*,
  739 F. Supp. 2d 576 (S.D.N.Y. 2010).......................................................................25

*Isobe v. Unemployment Insurance Appeals Board*,
  12 Cal. 3d 584 (1974) ..............................................................................................14

*Johnston v. Sonoma County Agric. Pres. Info. Ctr. & Open Space Dist.*,
  100 Cal. App. 4th 973 (2002) .............................................................................14, 24

*Kendall-Brief Co. v. Superior Court*
  60 Cal. App. 3d 462 (1976) ......................................................................................13

*Mangini v. Aerojet-General Corp.*,
  12 Cal.4th 1087 (1996) .............................................................................................21

*Mangini v. Aerojet-General Corp.*,
  230 Cal. App. 3d 1125 (1991) ..................................................................................21

*McCoy, v. Gustafson*,
  180 Cal. App. 4th 56 (2009) ...............................................................................21, 24

*McIntosh v. Brimmer*,
  68 Cal. App. 770 (1924) ...........................................................................................18

*National Audubon Society v. Superior Court*,
  33 Cal. 3d 419 (1983) ..............................................................................................19

*Natural Res. Def. Council v. Atcata National Corp.*,
  59 Cal. App. 3d 959 (1976) ......................................................................................14

*Navistar Intern. Transp. Corp. v. Freightliner Corp.*,
  No. 96 C 6922, 1998 WL 786388 (N.D. Ill. Nov. 6, 1998)....................................25

*Nicoll v. Rudnick*,
  160 Cal. App. 4th 550 (2008) ...................................................................................20

*Nixon-Egli Equipment Co. v. John A. Alexander Co.*,
 949 F. Supp. 1435 (C.D. Cal. 1996) ...........................................................................13

*OCWD v. Sabic Innovative Plastics US, LLC, et al.*
 Orange County Superior Court Case No. 30-2008-00078246, Notice of Ruling (Oct.
 20, 2008) ..................................................................................................................15

*People ex rel. Gallo v. Acuna*,
 14 Cal.4th 1090 (1997) ............................................................................................16

*Rancho Viejo LLC v. Tres Amigos Viejos LLC*,
 100 Cal. App. 4th 550 (2002) ..........................................................................19, 20

*Resolution Trust Corp. v. Rossmoor Corp.*,
 34 Cal. App. 4th 93 (1995) .....................................................................................3, 4

*Rhodes-Bradford v. Keisler*,
 507 F.3d 77 (2d Cir. 2007)......................................................................................24

*Shamsian v. Atlantic Richfield Co.*,
 107 Cal. App. 4th 967 (2003) ..................................................................................21

*Shields v. Wondries*,
 154 Cal. App. 2d 249 (1957) ...................................................................................18

*Sonoma County Water Coal. v. Sonoma County Water Agency*,
 189 Cal. App. 4th 33 (2010) ...................................................................................24

*State of California v. Campbell*
 138 F.3d 772 (9th Cir. 1998) ...................................................................................18

*U.S. v. Ownbey Enterprises, Inc.*,
 789 F. Supp. 1145 (N.D. Ga. 1992)........................................................................25

*United Farm Workers v. Superior Court*,
 72 Cal. App. 3d 268 (1977) ....................................................................................15

*Vineyard Area Citizens for Resp. Growth, Inc. v. City of Rancho Cordova*,
 40 Cal.4th 412 (2007) .............................................................................................24

*Western States Petroleum Association v. State Department of Health Services.*,
 99 Cal. App. 4th 999 (2002) ....................................................................................18

*Wilshire Westwood Assoc. v. Atlantic Richfield Co.*,
 20 Cal. App. 4th 732 (1993) ....................................................................................24

*Wright v. Goleta Water Dist.*,
 174 Cal. App. 3d 74 (1986) .....................................................................................20

iv

**STATUTES AND RULES**

California Evidence Code § 601 ..................................................................................12

California Evidence Code § 606 ..................................................................................12

California Health & Safety Code §§ 25280-25299..........................................................5

California Water Code App. §§ 40, *et seq.* .......................................................... *passim*

California Code of Civil Procedure § 1060 ................................................................15

Federal Rules of Civil Procedure 56(g) ....................................................................25

**OTHER AUTHORITIES**

5 WITKIN, SUMMARY OF CALIFORNIA LAW: TORTS § 693 (10th Ed. 2005) ...................................19

12 WITKIN: SUMMARY OF CALIFORNIA LAW: REAL PROPERTY § 954 (10th Ed. 2005) ................20

WEBSTER'S NEW NINTH COLLEGIATE DICTIONARY (1986) ............................................................8

**INTRODUCTION**

Eight years ago, the Orange County Water District (the "District") sued Defendants, claiming that MTBE was contaminating drinking water in its territory. Discovery has shown otherwise. The drinking water wells that the District associates with the fourteen stations at issue in its Motion have never had a detection of MTBE above the California 5 ppb secondary MCL or even the 3 ppb California "detection level for reporting" (meaning the District has never reported a detection to the State for any of these wells). Its case rests on "microdetections," which are of questionable validity and are legally "non-detects." In response to this non-contamination, the District has done nothing. It has not remediated anything, and its so-called "investigation" has been no more than hiring litigation consultants to summarize other people's work.

Nonetheless, the District seeks to be awarded, as a matter of law, a blank check to do whatever it wants in the future (or to do nothing and pocket the money). It seeks a vague ruling that Defendants are "liable" as a matter of law on three claims despite the fact that the District presents no evidence (and certainly no indisputable evidence) that Defendants caused the alleged contamination at any site. This is a required element of proof for the District's claims under the Orange County Water District Act ("OCWD Act" or "Act")[1] and for nuisance and trespass; accordingly, the District's Motion must be denied. Rather than meeting this burden, the District's entire motion is predicated on four facts as to each station: (1) Defendants' ownership of the tanks ("USTs"), (2) Defendants' sale of gasoline to the station, (3) the existence of MTBE at one time above 5 ppb in the shallow (non-drinking water) aquifer at the site, and (4) Defendants' clean up at the station as required by state statutes and regulations. But under this Court's prior rulings, the District must prove more than just ownership of tanks or supply of some gasoline. And unlike the claims at issue here, by statute a Defendant's remediation

---

[1]   Cal. Water Code App. §§ 40, *et seq.*

responsibility is based on its ownership of the USTs.  The limited facts the District presents are simply insufficient to establish liability, let alone as a matter of law.

Additionally, with respect to the District's OCWD Act claim, summary judgment is improper because the District has not incurred any clean up costs.  At most, it has incurred investigation costs, which are not recoverable under the Act's unambiguous language and clear structure.  Recognizing this, the District attempts to characterize these costs as "other necessary remedial action."  This claim is untenable.  First, because the costs at issue are investigation costs (if that), they cannot be other remedial activities.  At a minimum, there is a fact issue as to the nature of these costs.  Second, costs related to "other necessary remedial action" are only recoverable for threatened contamination.  Here, the District has put forth no evidence on summary judgment concerning threatened contamination; instead, it has repeatedly admitted that this case is about alleged *actual* contamination.  Third, there are factual disputes preventing summary judgment as to whether the costs the District incurred were "necessary," which is a liability issue, and whether they were "reasonable."

The Court should also deny the District summary judgment on its continuing nuisance and trespass claims because there is no evidence, or there are disputed issues of fact, as to whether: (1) Defendants' alleged interference with the District's rights was "substantial and unreasonable;" and (2) the contamination is reasonably abatable.  Moreover, for trespass, the District must show that it had exclusive rights to the property in question.  The undisputed facts, however, demonstrate that its alleged usufructuary rights are subordinate to others.

Finally, the District's Motion fails because it is predicated on a sleight of hand.  The District has repeatedly admitted that it is not seeking to investigate, clean up, or abate contamination at a site; instead, its Motion concedes that its alleged "damages" will relate to

2

offsite contamination.  The District, however, has presented no evidence that there is in fact

offsite contamination (other than David Bolin's improper conclusory statements two years ago),

that such contamination is above 5 ppb, that it has incurred costs related to such contamination,

or that such contamination must be abated or is reasonably abatable.  As a result, the District has

not established any of its claims as a matter of law, and summary judgment should be denied.

## ARGUMENT

I. **The District Submitted No Proof that Defendants Caused the Contamination.**

For each claim, the District must demonstrate as a matter of law based on undisputed

facts that the Defendants caused the contamination.  The OCWD Act only allows for recovery of

remediation costs incurred from "the person causing or threatening to cause [the]

contamination."  OCWD Act § 8(c).  Nuisance requires proof that a manufacturer's actions

"create[] or assist[] in the creation of the nuisance."  *In re MTBE Prod. Litig.*, 457 F. Supp. 2d

455, 463 (S.D.N.Y. 2006) (quotations and citations omitted).  Likewise, trespass requires

affirmative proof of conduct that is "intentional, reckless, negligent, or the result of

ultrahazardous activity."  *Resolution Trust Corp. v. Rossmoor Corp.*, 34 Cal. App. 4th 93, 100

(1995).  Instead of providing the required proof, the District attempts to transform these claims

into strict product liability claims by asserting that: (1) a Defendant either owned and/or

delivered gasoline to the station at one point in time, and/or (2) the Defendant is cleaning-up the

contamination.  Such conduct is insufficient to establish liability, much less as a matter of law.

A. *Ownership, operation, or supply is insufficient to establish causation.*

This Court previously held that ownership and supply alone are not enough to establish

liability for nuisance.[2]  Defendants' actions "must amount to more than simply the manufacture

or distribution of the defective product—rather, a defendant must take other 'affirmative acts'

---

[2]   The District has not alleged that G&M Oil owned or supplied the subject stations.

that contribute 'directly' to the nuisance." *In re MTBE*, 457 F. Supp. 2d at 463; *see also City of Modesto Redev. Agency v. Sup. Court*, 119 Cal. App. 4th 28, 38 (2004) ("liability for nuisance does not hinge on whether the defendant owns . . . the property"). Here, the District has not presented any evidence of "affirmative acts" that have contributed "directly" to the contamination. For example, there is no mention of when a release occurred, who operated the site when a release occurred, how large the release was, what the cause of the release was (*e.g.*, customer drive-off, tank over-fill, leaking UST), or any other facts that would suggest—let alone prove—that Defendants took affirmative acts that directly caused the contamination here.

For these same reasons, the District has not established with undisputed evidence that the Defendants' "intentional, reckless, negligent, or . . . ultrahazardous activity" caused any trespass, as required. *See Resolution Trust*, 34 Cal. App. 4th at 100. Similarly, it has not established that Defendants caused any contamination here, as required by the Act. *See* OCWD Act §8(c); *see also Modesto*, 119 Cal. App. 4th at 43 (manufacturers "who merely placed solvents into the stream of commerce without warning adequately" are not liable under the Polanco Act).

At the very least, there exists an issue of fact regarding whether Defendants actually caused the contamination. For example, many of the stations were not operated by Defendants during much or all of the relevant time period.[3] At another site, the District has alleged releases after the Defendant sold the property and USTs. Axline Decl. at ¶13; *see also* DAF ¶ 62. Additionally, numerous third-party station operators testified at their depositions that they understood that *they* were in charge of the stations at issue here and were responsible for handling the gasoline, spills, and leaks.[4] The foregoing evidence raises a factual issue as to

---

[3]    *See, e.g.,* Defs. Add'l R. 56.1 Facts ("DAF") ¶¶ 15, 38, 98, 108, 128, 141.
[4]    *See, e.g.,* DAF ¶¶ 18, 41, 63, 64, 109, 110, 130, 142, 176.

whether the non-Defendant operators or someone other than the station owner may have been responsible for the contamination.

### B.     Proof of Defendants' remedial activities is insufficient.

The District asserts that Defendants are liable for unlimited future damages in tort solely by virtue of the fact that that they are conducting remediation at the sites.  Mot. at 16-17. Defendants, however, are meeting their obligations to remediate the sites under agency oversight pursuant to Chapter 6.7 (§§ 25280-25299) of the California Health & Safety Code. Significantly, and unlike the three causes of action at issue in this Motion, Chapter 6.7 does not require proof of conduct causing the contamination before a party can be ordered to take corrective action.  Instead, ownership of the USTs alone is sufficient.  Cal. Health & Safety Code § 25280.6 ("*Both the owner and the operator* of [a UST] are responsible for complying with this chapter and if [a UST] is not in compliance with this chapter, *both the owner and the operator* of that [UST] are in violation of that requirement.") (emphasis added); *id.* § 25296.10 (corrective action requirement).  Here, Defendants are remediating many of the sites solely because they owned the USTs, not because there has been a finding that they caused the contamination.  *See, e.g.,* DAF ¶¶ 20, 43.  The District therefore cannot circumvent the conduct and causation requirements by relying on Defendants' remediation activities.[5]

### C.     The District's reliance on City of Modesto is unavailing.

The District relies exclusively on *City of Modesto* for its argument that owning, supplying, or remediating the stations is sufficient to establish liability.  Mot. at 3, 17.  OCWD grossly misreads the opinion and simply cites to a passage in which the court was itself listing a

---

[5]     Additionally, the goal of remedial statutes is to clean up the contamination.  The District's theory, however, would create perverse incentives against remediation because affirmatively remediating would create liability while refusing to do so would not.  *See City of Modesto Redev. Agency v. Dow Chemical Co*., 2005 WL 1171998, at \*11 (Cal. Super. Ct., Apr. 11, 2005) (explaining CERCLA's goal of clean up and the incentives used to achieve that goal).

Water Board decision relied upon by the defendants.  The court in *City of Modesto* explained that "***liability for nuisance does not hinge on whether the defendant owns, possesses or controls the property, nor on whether he is in a position to abate the nuisance***; the critical question is whether the defendant created or assisted in the creation of the nuisance."  *Modesto*, 119 Cal. App. 4th at 38 (emphasis added).  There is no evidence here that Defendants created or assisted in the creation of the contamination;[6] therefore, under *Modesto*, the District has not met its burden to establish liability.

## II.    The District Is Not Entitled to Partial Summary Judgment under the Act.

### A.    *The Act's delineation of investigation and remediation costs.*

The OCWD Act expressly distinguishes between (a) investigation costs, (b) costs incurred to cleanup, contain, and abate contamination, and (c) costs incurred for "other necessary remedial action" for threatened contamination.  Section 8(a) of the OCWD Act addresses the District's investigation powers:

> The district may conduct any ***investigations*** of the quality of the surface and groundwaters within the district which the district determines to be necessary and appropriate to ***determine whether those waters are contaminated*** or polluted.

OCWD Act § 8(a) (emphasis added).  Section 8(b) addresses the District's ability to clean up, abate, and perform remedial activities in response to actual or threatened contamination:

> The district may expend available funds to perform any ***cleanup, abatement, or remedial work required*** under the circumstances which, in the determination of the board of directors, is required by the magnitude of the endeavor or the urgency of prompt action needed to prevent, abate, or contain any threatened or existing contamination of, or pollution to, the surface or groundwaters . . . .

OCWD Act § 8(b) (emphasis added).  Section 8(c) then defines which costs the District can recover from the party that caused the contamination:

---

[6]    Nor has the District identified any failures to act by the Defendants that caused a nuisance.  Indeed, the evidence establishes that Defendants are cleaning-up the sites and the remediation is working.  *See* DAF ¶¶ 20, 43, 71-72, 83-84, 115, 124, 135-36, 147-48, 169, 177.

> ***If, pursuant to subdivision (b)***, the contamination or pollution ***is cleaned up or contained, the effects thereof abated***, or in ***the case of threatened contamination or pollution, other necessary remedial action*** is taken, the person causing or threatening to cause that contamination or pollution shall be liable to the district to the extent of the ***reasonable costs actually incurred*** in cleaning up or containing the contamination or pollution, abating the effects of the contamination or pollution, or taking other remedial action. . . .

OCWD Act § 8(c) (emphasis added).  The statute expressly distinguishes between investigation activities (§ 8(a)), which are not recoverable, and remedial activities (§ 8(b)), which, if the proper findings are made, may be recovered.

### B.      The District has not identified any recoverable costs under the OCWD Act.

The District does ***not*** allege or offer any proof that it has "cleaned up or contained" any contamination or that "the effects thereof [were] abated."  Instead, it has only identified litigation costs, which at most could be considered investigation costs.  Such costs are not recoverable.

In particular, the District identified costs it incurred for (1) its litigation consultants to review publicly available data to create summaries of the sites, and (2) testing its wells for contamination as part of its regular course of business.  Mot. at 6-7.  As an initial matter, although the District submitted evidence that its Board of Directors purportedly authorized funding for its consultants, the District has not submitted evidence that it has actually incurred either of these costs yet, or that such costs are attributable to the sites in the Motion.  OCWD Act § 8(c).  Similarly, the District has not allocated any of its alleged costs to any one particular station.  DAF ¶¶ 4, 158.  The District's OCWD Act claim fails for these threshold reasons.[7]

Additionally, these activities were all undertaken to further this litigation and are not remediation; therefore, they are unrecoverable under the Act.  The District's consultant's scope of work explicitly states that the consultant is being used "in support of [this] litigation related to

---

[7]      The District has conceded that this claim does not accrue unless and until "funds are actually expended."  Pl.'s Jan. 16, 2007 Supp. Br. re: Statute of Limitations.

Methyl tertiary Butyl Ether (MTBE) contamination," not to aid the remediation of the sites.

DAF ¶ 5.  Consequently, and not surprisingly, their work does not meet the dictionary definition

of remedial activities either.  Webster's Dictionary defines "remedial" to mean "intended as a

remedy" and "remediation" as "the act of remedying."[8]  WEBSTER'S NEW NINTH COLLEGIATE

DICTIONARY 996 (1986).  Creating summaries of the activities of others at these sites has nothing

to do with remedying the contamination at the sites, and therefore is not "remedial action."[9]  The

expert declaration of Lester Feldman confirms this.  L. Feldman Decl. ¶ 14, submitted in support

of the Opposition.  Nor is the regular testing of the District's wells for contaminants considered

remedial action.[10]  *Id.* ¶ 16.  Indeed, the District's own designated expert Graham Fogg has

admitted that these types of activities are not "remediation."  DAF ¶ 2.

Furthermore, there is no evidence that the District's consultants' file review has led or

will lead to remedial action at these sites.  The consultant summaries do not identify any

additional remediation actions that need to occur at the sites, or for that matter, find that anything

---

[8]    As noted above, if anything, these litigation costs at most could be considered "investigation costs," which still are not recoverable.  Webster's defines "investigate" to mean "to observe or study by close examination and systematic inquiry"  WEBSTER'S NEW NINTH COLLEGIATE DICTIONARY 636 (1986).  Giving the District the benefit of the doubt, that is all the District and its consultants did here—they examined the facts systemically and summarized them.  As explained above, investigations costs are not recoverable pursuant to Section 8(c).

[9]    The District's  "determination" that these costs are actually "other necessary remedial action" should *not* be accorded deference.  It is well-settled that an agency's self-serving litigation position should be accorded no deference.  *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988) ("Deference to what appears to be nothing more than an agency's convenient litigating position [is] entirely inappropriate.").  The District has not presented any evidence that it has made a decision outside of this litigation that its alleged activities should be considered "other necessary remedial action" for purposes of the OCWD Act.  Even if it had, the very nature of such a "decision" would make it suspect (*i.e.*, because the District can recover "remediation," it will naturally "decide" that every expense is for "remediation").  *See infra* Section V at 23-24.

[10]    These testing costs are also not recoverable because the California Department of Public Health requires the District's customers to perform this routine testing, and therefore they are not directly attributable to the alleged MTBE contamination.  DAF ¶ 3.

else is needed at all.  Feldman Decl. ¶ 12.  Similarly, there is no evidence that these reports were submitted to the regulators overseeing the remediation at these sites or to other involved parties so that the remedial strategy could be improved.  Quite the contrary, there is evidence that the District has not even spoken to the regulators about any specific sites.[11]  Moreover, there is no evidence that the District has done anything with these consultant reports outside of this litigation.  These costs are simply not "remedial."

Even if these costs could be classified as "other necessary remedial activity" costs—as the District claims—they would not be recoverable here because such costs are only recoverable for threatened contamination.  *See* OCWD Act §§ 8(b) and (c).  The District has repeatedly claimed that this is a case about ***actual*** contamination.  The District's Motion itself alleges (incorrectly) with respect to its nuisance claim that the Defendants have acknowledged "responsibility for, and control over, MTBE in the groundwater" at each of the subject sites.  *See* Mot. at 17.  If the MTBE is in the groundwater, then this is not a threatened contamination case.  And the District admitted that this was an actual contamination case when it hired Komex in 2005, expressly charging it to identify MTBE release sites with "significant groundwater contamination problems"—*i.e.*, contamination that already existed.  DAF ¶ 5.  This case has never been about threatened contamination; thus, the District cannot recover costs for "other necessary remedial action" even if its investigation costs could be considered as such.

The District may claim that the contamination "threatens" water *offsite*, but that mere allegation would be insufficient to establish summary judgment liability.  The District has brought forth no evidence concerning whether any alleged offsite contamination is above the MCL or that the contamination on these sites is a threat to any drinking water offsite.  Indeed, the

---

[11]   *See, e.g.,* DAF ¶¶ 23, 46, 65, 79, 90, 101, 112, 119, 132, 144, 151, 162, 169, 177.

summary judgment evidence establishes that the remediation at each site is being overseen by the proper regulators and is working.[12]  At a minimum, there is a fact issue in this regard.

Because this is an actual contamination case, a person is only liable to the District for "the reasonable costs actually incurred" by the District if it actually "cleans up, contains, or abates" the contamination.  *See* OCWD Act § 8(c).  There is no evidence that the District has spent a dime on these activities.  The District has not, for example, submitted evidence that shows that it has removed contaminated dirt at any of these sites, that it has used remediation to remove MTBE from groundwater, or that it has installed any filtration systems at any drinking water wells.  The District's Motion on its OCWD Act claim fails for this additional reason.[13]

### C.     The costs the District has identified are unnecessary and unreasonable.

The plain text of the OCWD Act requires that "other remedial action" be "necessary" before liability can attach, and then the costs at issue must be "reasonable."  OCWD Act § 8(c).  The District's consultants, however, simply regurgitated information that was already in reports Defendants filed with the other regulators.  Feldman Decl. ¶ 11.  To say the least, there is a fact issue as to whether this was necessary or reasonable.  Indeed, if the District thought such summaries of the remediation history would somehow help the remedial efforts, then it should have coordinated with the regulatory agencies overseeing the remediation to get them, as is required.[14]  *See id.* at ¶ 13.

---

[12]  *See* DAF ¶¶ 20, 43, 71-72, 83-84, 115, 124, 135-36, 147-48, 169, 177.

[13]  At a minimum, there is a fact issue as to whether these costs are litigation costs, investigation costs, or other remedial action costs, which precludes summary judgment.

[14]  The District's Memorandum of Understanding ("MOU") with the Regional Board requires it to "coordinate with [the Regional Board] regarding any investigations, actions or activities" related to contamination or threatened contamination.  Feldman Decl. ¶ 13 (citing the MOU ¶ 6).  There is no evidence the District did, which further indicates that its costs are litigation costs, and not remedial, necessary, or reasonable.  *Id.*

The District cannot even contend that its costs were necessary and reasonable because the District itself has not made that determination at any site. Its testimony for Chevron #9-1921 is representative of the sites at issue:

> Q.   So on Station 1921, can the contamination that has escaped from the site be cleaned up at a reasonable cost?
>
> ***
>
> A.   It depends on what you mean by "reasonable cost." It can be cleaned up. It can be cleaned up for a cost. Whether the cost is reasonable is very subjective. In this case we don't know the extent of the contamination. We're unsure of the extent of the contamination. We don't know the degree of the contamination. That's why we're investigating it. And once we're able to collect information that will allow us to—to decide on what size remediation system or what technology to apply, then we would have a better answer. But at this stage, we don't know.

Dep. of D. Bolin (Aug. 19, 2010) at 604:7-605:1, Ex. 1.[15] The District admits that whether its costs are reasonable is a subjective, fact-intensive inquiry that cannot be evaluated at this stage. (It likewise admits that it is "investigating it.") This fact issue precludes summary judgment.

There is similarly no proof that the costs are necessary. As Defendants' evidence proves, Defendants are currently remediating the sites under regulatory oversight, and the District admits that if this process is allowed to proceed, then it can provide the full relief the District seeks in this lawsuit.[16] There is likewise no evidence that any additional action by the District is necessary or would accomplish anything. Indeed, the reasonable inference is that, as a result of this oversight, no additional work is necessary at this time.[17] *See* Feldman Decl. ¶ 18; Jan. 17, 2006 Paprocki Tr. at 125:20-126:22, 192:18-194:21, Ex. 48.

---

[15]   *See also* DAF ¶¶ 25, 47, 69, 80, 89, 100, 111, 114, 118, 121, 131, 141, 169. All cited exhibits are attached to the Declaration of Jeremiah Anderson (Mar. 15, 2011).

[16]   *See* DAF ¶¶ 20, 43, 71, 83, 90, 101, 115, 124, 135, 147, 169, 177; Jan. 10, 2006 Herndon Tr. at 385:2-22, Ex. 47.

[17]   As noted above, OCWD's litigation consultants have not identified a single act of remediation or regulatory oversight that should have been done differently. Feldman Decl. ¶ 11.

While the costs the District incurs in cleaning up or abating contamination (which costs Defendants dispute the District has incurred) are presumed to be necessary and reasonable, those are rebuttable presumptions.  OCWD Act § 8(c); Cal. Evid. Code § 601.  Defendants have rebutted them and met their burden of proof with Mr. Feldman's declaration, their site-specific evidence, and the District's own repeated admissions.  *See* Cal. Evid. Code § 606.  There is now a fact issue as to whether the District's costs were necessary and reasonable, which must be resolved in Defendants' favor at this stage, precluding summary judgment.  *See Golden Pac. Bancorp v. FDIC*, 375 F.3d 196, 201 (2d Cir. 2004) ("the court must credit the non-moving party's evidence and draw all justifiable inferences in favor of that party"); *Haycock v. Hughes Aircraft Co.*, 22 Cal. App. 4th 1473, 1491-92 (1994) (holding that evidence conflicting with presumption requires issue to be presented to jury).

### D.    The District's reliance on other remedial statutes is misplaced.

The District tries to sidestep these critical issues and its lack of evidence by borrowing heavily from definitions in, and cases interpreting, other statutes that address remediation, and in particular CERCLA.  Mot. at 9-11.  It claims that CERCLA and similar statutes include investigation costs in "remedial action" and allow declaratory judgments for future costs, and therefore this type of relief is also available under the OCWD Act.  *Id.*  Not so.

The remedial statutes the District cites are not *in pari materia* to the OCWD Act, because the OCWD Act is not a broad remedial statute, as the District contends.  A comparison of CERCLA and the OCWD Act demonstrates this.  CERCLA is the federal statutory scheme that addresses contamination and cost recovery.  It is "a broad remedial measure aimed at assuring the prompt and effective cleanup of waste disposal sites."  *See Adobe Lumber, Inc. v. Hellman*,

12

658 F. Supp. 2d 1188, 1192 (E.D. Cal. 2009) (quotations and citations omitted).[18]  Its name

alone—the Comprehensive Environmental Response, Compensation, and Liability Act—is

indicative of its broad purpose and goal.  An entire chapter of the U.S. Code is devoted to it.

That chapter contains 44 expansive sections, creating a complex response and remediation

system that promotes and effectuates the clean up of contaminated sites.  And it allows recovery

of "response costs," not the narrower "remediation" costs in the OCWD Act.

Conversely, the OCWD Act is not a remedial statute.  It creates and defines the District—

a unique agency in a single county in California—and how it operates on a daily basis.  It

contains over 110 enumerated sections and countless subsections that define the District's

geographic boundaries, explain the Board of Directors' powers, and discuss a myriad of

operational topics such as rates, bonds, and maximum debt load.  Only one section discusses

actions the District can take to address contamination, and only one subsection addresses

recoverable remediation costs.  The OCWD Act is therefore not *in pari materia* to CERCLA.

The cases the District cites for the proposition that CERCLA is *in pari materia* with the

OCWD Act are clearly distinguishable.  For example, although *Kendall-Brief Co. v. Superior

Court* (Mot. at 10) states broadly that statutes concerning the same topic should be interpreted

together, it was interpreting two consecutive sections in the same code.  60 Cal. App. 3d 462,

466 (1976).  Similarly, *Clean Air Constituency v. California State Air Resources Board* (Mot. at

10) was interpreting sections within the same act.  11 Cal. 3d 801, 814 (1974).  Neither case was

interpreting two disparate statutes enacted for different purposes with minimal overlap.[19]

---

[18]    *See also* EPA Website, http://www.epa.gov/superfund/policy/cercla.htm (CERCLA was
enacted to provide "broad Federal authority to respond directly to releases or threatened releases
of hazardous substances that may endanger public health or the environment").

[19]    The other cases the District cites for its *in pari materia* argument are similarly
distinguishable.  *See, e.g., Nixon-Egli Equip. Co. v. John A. Alexander Co.,* 949 F. Supp. 1435,

Furthermore, even if the Court were to consider the OCWD Act and CERCLA together, CERCLA's provisions on recovery for investigation costs and the availability of declaratory judgments for future costs would not change the plain language of the OCWD Act, which clearly prohibits such relief.  As the Supreme Court has recognized, "in interpreting a statute a court should always turn first to one, cardinal canon before all others.  We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."  *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992).  "When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete."  *Id.* at 254 (internal quotations and citations omitted).  Here, the plain language of the Act prohibits the District from recovering litigation and investigation costs, and the Court's inquiry should therefore be complete.

Likewise, CERCLA's inclusion of provisions for injunctions and declaratory judgments for future costs does not change the fact that the OCWD Act does not allow the District to recover costs until they are incurred and that the OCWD Act does ***not*** contain a declaratory relief provision.  Courts have recognized that "[a] declaratory judgment allocating liability for costs to be incurred in the future is a unique creature of CERCLA," and have refused to allow this remedy under the Declaratory Judgment Act when the CERCLA provision is unavailable.  *See, e.g., A. Shapiro & Sons, Inc. v. Rutland Waste & Metal Co.,* 76 F. Supp. 2d 82, 88-89 (D. Mass.

---

1441 n.5 (C.D. Cal. 1996) (acknowledging that the HSAA is interpreted consistent with CERCLA only because the HSAA is CERCLA's "California counterpart" unlike the OCWD Act); *Isobe v. Unemployment Ins. Appeals Bd.*, 12 Cal. 3d 584, 590 (1974) (construing two sections of the same code where one section specifically referenced the other);  *Johnston v. Sonoma County Agric. Pres. Info. Ctr. & Open Space Dist.*, 100 Cal. App. 4th 973, 986 (2002) (construing the interplay between two statutes to determine which applied to a transfer of open-space land);  *Envtl. Prot. Info. Ctr. v. Johnson*, 170 Cal. App. 3d 604, 615 (1985) (analyzing two sections of the same code, which supplemented each other);  *Natural Res. Def. Council v. Atcata Nat'l. Corp.*, 59 Cal. App. 3d 959, 965 (1976) (similar).

1999).  At least one California court has applied this reasoning to reject an attempt by the District to obtain CERCLA—like remedies under the OCWD Act.  In *OCWD v. Sabic Innovative Plastics US, LLC, et al.*, the court granted Defendants' demurrer to the District's claim for future costs under the OCWD Act, holding:

> The First Cause of Action is not for declaratory relief.  It seeks costs that will be incurred in the future and all past, present and future response costs as well as damages to natural resources.  ***Section 8 (c)*** is clear.  Plaintiff can only recover costs it has already incurred for clean up, containing or abating the contamination or other remedial acts taken.  The First Cause of Action is uncertain in that it appears to seek costs which may be incurred in the future.  Those are not recoverable.

Orange County Superior Court Case No. 30-2008-00078246, Notice of Ruling (Oct. 20, 2008), Ex. 49 (emphasis in original).[20]  *Sabic* is consistent with the statutory construction canons discussed above and the plain language of the OCWD Act.  It makes clear that the District cannot shoehorn the relief available under CERCLA into its OCWD Act claim when such relief is contrary to the express language of the OCWD Act.[21]

    The District's approach is also fundamentally unfair.  The District seeks to establish liability despite incurring virtually no costs and simply having some consultants re-review the Regional Board's files.  This does not allow the Court or Defendants the opportunity to evaluate the District's liability claim in the context of actual remediation expenditures at any site.

---

[20]    *See also* Notice of Ruling (Feb. 12, 2009) (granting the defendants' motion to strike the District's amended complaint alleging declaratory relief as to defendants' liability under the OCWD Act for future remediation costs), Ex. 50.

[21]    The District's apparent argument that CERCLA and the OCWD Act are similar because the District can obtain declaratory relief pursuant to California Code of Civil Procedure § 1060 (the "Declaratory Judgment Act") is a red herring.  Mot. at 14-15.  As the District concedes and the name suggests, the Declaratory Judgment Act is separate and distinct from the OCWD Act, so it should not affect how the Court analyzes the OCWD Act.  Furthermore, the OCWD Act is a specific statute and therefore controls over the Declaratory Judgment Act, which is a general statute.  *See United Farm Workers v. Superior Court*, 72 Cal. App. 3d 268, 272 (1977).

### III.   Additional Fact Issues Preclude Summary Judgment on Nuisance and Trespass.

#### A.   *An issue of fact exists on substantial and unreasonable interference.*

The law in California is well settled that contamination must interfere both "substantially" and "unreasonably" with a plaintiff's use of the property before a nuisance exists. *See County of Santa Clara v. Atlantic Richfield Co.*, 137 Cal. App. 4th 292, 305 (2006). The District, however, has no evidence of either.[22]  The District has not, for example, alleged that the contamination at the sites has prevented it from using the water.  The District has merely alleged the highest current MTBE detections in groundwater at the sites, but it has failed to identify the depth from which those water samples were drawn.  Not surprisingly, each monitoring well that the District identified with an MTBE detection draws from the shallow aquifer,[23] and the District has conceded that the water in the shallow aquifer is already unusable.  *See* Herndon Decl. (Feb. 28, 2007), Ex. 12, at ¶ 3 ("shallow groundwater at service station sites . . .  is simply not useable drinking water").  Indeed, the District previously submitted a declaration claiming that "virtually all drinking water wells within the District's area draw from several hundred feet below ground surface, and ***certainly none draw water from shallow depths close to service stations***."  *Id.* (emphasis added).  The contamination at the sites has therefore not interfered with the District's use of any drinking water.[24]  Nor has the District introduced any evidence that it uses the shallow groundwater surrounding these stations for any other activity, including its recharge activities.

---

[22]   To establish a "substantial" interference, the District must prove "significant harm, defined as a real and appreciable invasion of [the District's] interests, one that is definitely offensive, seriously annoying or intolerable." *People ex rel. Gallo v. Acuna*, 14 Cal.4th 1090, 1105 (1997) (internal quotations omitted).  Similarly, "the unreasonableness of a given interference represents a judgment reached by comparing the social utility of an activity against the gravity of the harm it inflicts, taking into account a handful of relevant factors." *Id.*

[23]   *See* DAF ¶¶ 7, 28-29, 48, 49, 73-74, 85-87, 94, 96, 97, 105, 116-17, 125-26, 137-39, 149-50, 173-74, 180-81.

[24]   At a minimum this declaration—from the District—creates a fact issue as to whether the contamination is substantially and unreasonably interfering with the District's rights.

Consequently, because the contamination around these stations has not interfered with the District's use of water, let alone "substantially" or "unreasonably" interfered, the contamination cannot support its claim for nuisance.

The District's apparent response to the complete lack of evidence of substantial and unreasonable interference is to claim that the Court already found a nuisance at each site when it "found that the District had been appreciably harmed by MTBE above the MCL in groundwater." Mot. at 16. The District's contention overstates the Court's earlier ruling and the current facts at these stations. First, and most importantly, the Court's finding that the District had suffered injury for purposes of the statute of limitations does not mean that the Court determined such injury constitutes a nuisance. That ruling and the briefing leading up to it simply acknowledged that under the District's own theory of the case, its claims were time barred. *See In re MTBE Prod. Litig.*, 676 F.Supp.2d 139, 148-49 (S.D.N.Y. 2009).[25] As a result, the Court's prior opinion is not determinative of whether a nuisance exists. Second, to the extent the Court made any ruling on this issue, it certainly did not make a finding that the contamination ***substantially and unreasonably interfered*** with the District's use of the water as a matter of law. Third, the Court did not determine who caused the MTBE to be present in the groundwater above the MCL. There was no evidence before the Court then, just as there is no evidence on that point now (*see* Section I). Fourth, the District has conceded that several of the stations at issue here no longer have detections above the secondary MCL, so even under the District's own theory, there is no nuisance here. *See, e.g.,* Pl. R. 56.1 Stmt. ¶ 56; DAF ¶ 106, 126, 140.

---

[25] *See also, e.g.,* Dfs. 2008 Sec. Supp. Br. in Support of Mot. for Sum. J. at 3 n.2 ("Throughout their briefing of this motion, including the current brief, Defendants have emphasized that their references to the District's 'injuries in fact' do not concede that the District has ever suffered any actual injury, that its purported injuries constitute legally cognizable harm, or that the District's claims are meritorious in any respect.").

Because the District has no evidence indicating that the contamination under these stations is a substantial and unreasonable interference with its use of the water, it simply relies on the fact that MTBE is in the groundwater. The case law holds that is not enough. *See, e.g., Beck Dev. Co., Inc. v. S. Pac. Transp. Co.,* 44 Cal. App. 4th 1160, 1207 (1996) (explaining that the determination of a nuisance "requires consideration and balancing of a variety of factors" and finding contamination was not a nuisance); *Shields v. Wondries*, 154 Cal. App. 2d 249, 255 (1957) (stating nuisance "depends upon the facts of each particular case"); *McIntosh v. Brimmer*, 68 Cal. App. 770, 777 (1924) ("No hard and fast rule controls [whether a nuisance exists]."). Accordingly, the mere presence of contamination is but one factor for the Court to consider when analyzing whether contamination rises to the level of a nuisance. For the multiple reasons discussed in this brief, the contamination does not rise to that level.

The cases the District cites otherwise are distinguishable. For example, the District cites *Western States Petroleum*, which upheld the secondary MCL and found that certain consumers may be able to detect MTBE at that level. *See* Mot. at 16. This case had nothing to do with nuisance. *W. States Petroleum Ass'n v. State Dep't of Health Servs*., 99 Cal. App. 4th 999 (2002). The District also cites *State of California v. Campbell* for the statement that "polluted water is a public nuisance" (Mot. at 16, 19), but that court in the very same sentence noted that only persons that "create[] or help[] create the nuisance" will be *liable* for nuisance. 138 F.3d 772, 782 (9th Cir. 1998). There, the record was replete with evidence that the defendant had actively dumped pollutants on the ground for 20 years. *Id.* at 774-75. OCWD has presented no such evidence here. And in *Campbell*, the State there was trying to obtain on order cleaning-up the property in question and had traced contamination for the site to a drinking water well. *Id.* Here, OCWD seeks to clean up alleged offsite contamination, but has submitted no evidence

concerning offsite contamination or impact to drinking water supplies.  In sum, because there is a

fact issue as to whether the alleged contamination at the sites substantially and unreasonably

interferes with the District's rights, summary judgment must be denied.[26]

**B.      The District's alleged usufructuary rights are subordinate to other water users.**

A trespass is "an invasion of the interest in the **exclusive** possession of land."  *Rancho*

*Viejo LLC v. Tres Amigos Viejos LLC*, 100 Cal. App. 4th 550, 562, n.5 (2002) (emphasis added).

California's definition of trespass is "considerably narrower" than its definition of nuisance.  *Id.*;

*see also* 5 WITKIN § 693 ("Trespass protects the possessor's interest in exclusive possession of

property, while nuisance protects the use and enjoyment of property.").  The District's

usufructuary right to water—to the extent it has one[27]—is subordinate to other water users, and

as such, the District does not have exclusive control of the water and cannot assert a trespass

claim.  In California, the right of property in water "is usufructuary, and consists not so much of

the fluid itself as the advantage of its use."  *Nat'l Audubon Soc'y v. Superior Court*, 33 Cal. 3d

419, 441 (1983).  "Courts typically classify water rights in an underground basin as overlying,

appropriative, or prescriptive."  *City of Barstow v. Mojave Water Agency*, 23 Cal. 4th 1224, 1240

(2000).  An overlying right "is the [land] owner's right to take water from the ground underneath

---

[26]    The District's trespass claims fail for the same reason.  The District has not established,
as it must, that the contamination has interfered with its possessory interest in the groundwater (if
any).  *See* 5 WITKIN, SUMMARY OF CALIFORNIA LAW: TORTS § 693 (10th Ed. 2005) ("WITKIN").
As explained above, there is no evidence that the contamination in the shallow groundwater has
interfered with the drinking water in the District's territory, the District's purported recharge
activities, or any legitimate activity of the District.

[27]    Defendants dispute that the District has established that it has a usufructuary right to the
groundwater.  While the Court previously stated that "OCWD has acquired a usufructuary right
through its replenishment activities," that statement was based upon a limited factual record
because full discovery had not yet commenced.  457 F. Supp. 2d at 461.  As the case has
developed, it has become clear that even if the District possessed a usufructuary right in the
groundwater, it has not exercised that right and does not intend to with respect to the shallow
groundwater.  *See* Herndon Decls. (Jan. 16, 2007 and Feb. 28, 2007), Exs. 12, 51 (noting that
OCWD does not use the shallow groundwater near the stations).

for use on his land within the basin or watershed; it is based on the ownership of the land and is appurtenant thereto." *Id.*

Conversely, an "appropriative right" is based on the taking of groundwater. *Cent. & W. Basin Water Replenishment Dist. v. S. Cal. Water Co.*, 109 Cal. App. 4th 891, 906 (2003). A person with "overlying rights has rights superior to that of other persons who lack legal priority," including those with appropriative rights. *City of Barstow*, 23 Cal.4th at 1240. The right of an appropriator is thus subordinate to an overlying right holder. This is true for groundwater rights even if the overlying right holder is not exercising his right. *See Wright v. Goleta Water Dist.*, 174 Cal. App. 3d 74 (1986) (holding appropriative rights have a lower priority than an overlying owner's unexercised rights).

Here, the District holds neither overlying nor appropriative rights. Thus, the District's rights in the groundwater are subordinate to the State (acting pursuant to the public trust),[28] any overlying right holders (such as the Defendants as owners of the sites), and the purveyors that actually pump the water out of the ground and provide it to customers. *See City of Barstow*, 23 Cal. 4th at 1241 ("Proper overlying use . . . is paramount and the rights of an appropriator must yield[.]"); *see also Wright*, 174 Cal. App. 3d at 87 ("Private property rights in water fall before decisions made pursuant to the public trust doctrine[.]"). As a result, the District does not have exclusive (or even primary) possession of the property interest allegedly affected by the MTBE, and cannot assert a claim for continuing trespass.[29] *See Rancho*, 100 Cal. App. 4th at 562 n.5.

---

[28]   The State of California "owns all of the groundwater in California." *Cent. & W. Basin*, 109 Cal. App. 4th at 905.

[29]   If the District claims to possess "appropriative" rights (*see* Cal. Water Code. § 40-2), it has abandoned any such rights by failing to exercise them. *Nicoll v. Rudnick*, 160 Cal. App. 4th 550, 556 (2008) ("Appropriative rights are subordinate to the rights of riparian owners and prior appropriators, and may be lost by nonuse."); *see also* 12 WITKIN: SUMMARY OF CALIFORNIA LAW: REAL PROPERTY § 954 (10th ed. 2005) ("the appropriator forfeits the right to take the water

## IV.   The District Failed to Show that the Alleged Nuisance and Trespass Are Continuing.

The Court's statute of limitations ruling dismissed the District's claims for "permanent nuisance" and "permanent trespass" at the vast majority of sites in this case.  The District is therefore left with only claims for continuing nuisance and trespass, which require that the District show that the contamination is "reasonably" abatable.[30]  The District has presented no evidence on abatability—neither onsite nor offsite—let alone on *reasonable* abatability.  In fact, the District admittedly does not even know the extent of the contamination, has not delineated it onsite or offsite, and has not even determined whether additional remediation is necessary, or if so, what type of remediation would be appropriate.  As a result, reasonableness cannot even be evaluated.  *See* Feldman Decl. ¶ 19.  According to the California Supreme Court, the District has thus failed to meet its burden.[31]  *Mangini*, 12 Cal.4th 1087 at 1103 (because the plaintiff failed to present evidence of the extent of the contamination or the remediation costs, there was "no substantial evidence that the nuisance is abatable"); *see also McCoy*, *v. Gustafson*, 180 Cal. App. 4th 56, 85-86 (2009) (if plaintiff fails to establish abatability then "that plaintiff has failed to prove [its] claims of continuing nuisance and trespass").

---

by abandonment or nonuse").  To borrow language from the California Supreme Court, "the water was open [for OCWD's] appropriation . . ., [but] the acts of [OCWD] never amounted to a valid appropriation."  *Cardoza v. Calkins*, 117 Cal. 106, 112 (1897).

[30]   *See Mangini v. Aerojet-General Corp.*, 12 Cal.4th 1087, 1095 (1996) (holding that judgment notwithstanding the verdict was proper because *plaintiff* failed to meet its burden and prove continuing nuisance); *Beck Dev. Co.*, 44 Cal. App. 4th at 1217 ("A plaintiff cannot simply allege that a nuisance is continuing . . . but must present evidence that under the circumstances the nuisance may properly be considered continuing[.]").

[31]   Additionally, whether a nuisance or trespass is continuing is a factual question and inappropriate for summary judgment where there are factual disputes over its characterization. *Shamsian v. Atlantic Richfield Co.*, 107 Cal. App. 4th 967, 980 (2003) (holding that triable issue regarding whether alleged nuisance was permanent or continuing barred summary judgment); *Mangini v. Aerojet-General Corp.*, 230 Cal. App. 3d 1125, 1147 (1991) (whether a trespass is permanent or continuing is a question of fact).

Instead of presenting actual evidence on abatability, the District presents three novel arguments. *First*, it argues that the contamination at the sites must be abatable because the Defendants are remediating it. Mot. at 22. This argument is nonsensical. The District apparently claims that more remediation is needed, but there is no proof in the record that any **additional** remediation activities are reasonable or feasible. Feldman Decl. ¶ 19. Indeed, if the District's argument were true, then continuing nuisance would always be available at a site undergoing remediation because the nuisance would always be reasonably abatable. *See Beck*, 44 Cal. App. 4th at 1220 ("Since a defendant could literally be ordered to move mountains to abate a nuisance, virtually everything can be said to be abatable if all other considerations are disregarded."). Furthermore, the District's damages are based on alleged MTBE that has escaped remediation at the sites,[32] and under the District's own theory, the Defendants' remedial activities at the sites have no effect on the contamination that has allegedly escaped.

*Second*, the District claims that because the Defendants' Answers state that MTBE can be remediated, it has shown abatability.[33] Mot. at 22. Again, this argument is illogical. While contamination may be remediated at a site, it does not necessarily mean that in every case the contamination can be *reasonably* abated. And again, the District's argument does not address the alleged offsite contamination that is the focus of its case. To establish abatability, the District must establish that any work it proposes (as opposed to the work that is already ongoing) is reasonable as to both scope and cost. Furthermore, California has adopted a set of policies, guidelines, and procedures that allow for cost-effective regulatory action, which permit

---

[32]   *See, e.g.,* Mot at 4, n. 4; *see also* Jan. 16, 2007 Herndon Decl. at ¶6. Ex. 51 ("The District has no reason to take action in response to a release of gasoline containing MTBE . . . if the Regional Board or local oversight agency has ordered or undertaken remedial efforts at the site.").

[33]   Not all of the Defendants' Answers make this statement. For example, G&M Oil's Answer did not assert that the alleged contamination can be remediated.

regulators to conclude that active abatement is *not* reasonable or necessary in certain circumstances.  Feldman Decl. ¶ 17.  As a result, whether to remediate and to what levels are entirely site-specific questions, and the District has offered no site-specific evidence that remediation beyond what is already being done is reasonable or achievable.

*Third*, the District argues that *it* has made the determination that the nuisance "can and should be abated" and therefore it is so.  Mot. at 22-23.  The District, however, points to no evidence that indicates that it has determined the contamination can be reasonably abated.  Instead, it cites to the March 23, 2005 Board of Director Minutes that loosely state that funds should be expended "to perform investigation, cleanup, abatement, and remedial work to address MTBE."  *See* Axline Decl., Ex. 1.  This is not a determination that MTBE can be abated, and certainly not a determination that the MTBE at these particular sites reasonably can be abated.  Indeed, the Board of Director Minutes were adopted at a time when the District's consultants had not even prepared the rudimentary summaries of the sites.[34]  The District's boastful rhetoric that "there is no genuine issue of material fact that the District has determined that the nuisance is abatable" simply is not true and is belied by its own testimony.[35]

The District also incorrectly claims that this alleged determination of abatability should be given deference.  Mot. at 23.  Although courts give certain agency factual decisions some deference, that deference is not absolute and not appropriate under these circumstances.  Here, there is no evidence that the District has made an agency determination that the contamination at

---

[34]   *See* Komex and Hargis Summaries, Axline Decl. Exs. 4, 6, 9, 11, 13, 15, 17, 19, 21, 23, 26, 29, 32, 34.

[35]   The District's 30(b)(6) witnesses testified consistently that the District does not even know what type of remediation system is needed at the sites (if any).  *See* DAF ¶¶ 25, 47, 69, 80, 89, 100, 111, 114, 118, 121, 131, 144, 169.  The District cannot have determined that the sites are reasonably abatable, when it has not even determined what type of remediation should occur.  Feldman Decl. ¶ 19.

the sites is reasonably abatable.  Rather, the District is advancing for the first time a purported

factual finding on one of the elements of its legal cause of action, and as such, the finding should

be accorded no deference.  "***Deference to what appears to be nothing more than an agency's***

***convenient litigating position [is] entirely inappropriate.***"  *Bowen*, 488 U.S. at 213 (refusing to

defer to agency's "litigating positions that are wholly unsupported by regulations, rulings, or

administrative practice"); *Rhodes-Bradford v. Keisler*, 507 F.3d 77, 80 (2d Cir. 2007) (same).

Once again, the District's cases purportedly finding otherwise are easily distinguishable.

For example, in *Wilshire Westwood Associates*, the Department of Health Services' "finding" at

issue was ***not*** that a nuisance was abatable, but instead that the "cleanup of the gasoline spill had

been adequate and complete, and that appellants could proceed with their construction project."

*Wilshire Westwood Assoc. v. Atlantic Richfield Co*., 20 Cal. App. 4th 732, 745 (1993).  The

Court certainly did not defer to the agency's statement that it had satisfied an element of a legal

claim, as the District is asking the Court to do here.  Similarly, S*onoma County Water Coalition*

simply holds that a court will give an agency's action under its governing statute deference.  *See*

*Sonoma County Water Coal. v. Sonoma County Water Agency*, 189 Cal. App. 4th 33, 40 (2010).

Here, however, the issue is not whether the District could hire its consultants to review the public

filings; rather it is whether the District's legal pronouncement in furtherance of a cause of action

it has asserted is entitled to deference.  It is not, and *Sonoma* does not suggest otherwise.

Deference is simply inappropriate here.[36]

---

[36]   If the Court believes that deference to the District's legal "findings" is appropriate, then
the Court must review those findings using a substantial evidence standard.  *Vineyard Area
Citizens for Resp. Growth, Inc. v. City of Rancho Cordova*, 40 Cal.4th 412, 435 (2007).  The
substantial evidence standard requires a court to defer to an agency's factual findings if they are
supported by substantial evidence.  *County of San Diego v. Assessment Appeals Bd. No. 2*, 148
Cal. App. 3d 548, 555 (1983).  The District, however, has cited no evidence that would support
an abatability finding here, let alone substantial evidence.   *See McCoy*, 180 Cal. App. 4th at 66.

**V.      The District Has Failed to Negate Defendants' Affirmative Defenses.**

An independent ground upon which the District's motion must be denied is the fact that the District has not addressed Defendants' numerous affirmative defenses that go to the issue of liability.  It is the District's burden to show that there is no material issue of fact with respect to each affirmative defenses.  The District has not even averred that there is no genuine issue of fact as to any of the affirmative defenses, let alone cited to evidence that establishes there is no material issue of fact.[37]  *U.S. v. Ownbey Enters., Inc.*, 789 F. Supp. 1145, 1151-52 (N.D. Ga. 1992) ("[T]he burden is on Plaintiff, as the moving party, to show the absence of evidence which supports an essential element as to each of Defendant's affirmative defenses, before Defendant even has to come forward with evidence establishing that a material question of fact exists as to those defenses.").[38]  The Motion therefore must also be denied because the District failed to meet this basic requirement.[39]

---

[37]      A basic review of Defendants' defenses show that the District has not met its burden here.  For example, Defendants have pled and previously presented evidence that the District's claims are preempted by federal law.  While this Court denied summary judgment on preemption, the Court has recognized that Defendants can still argue preemption at trial.  *See In re MTBE Prods. Litig.*, 739 F. Supp. 2d 576, 598-601 (S.D.N.Y. 2010).  Because all inferences must be resolved in Defendants' favor, this affirmative defense defeats the Motion in its entirety.  *See Frankel v. ICD Holdings S.A.*, 930 F. Supp. 54, 65 (M.D. Ala. 1996) (noting that an affirmative defense "viewed in the light most favorable to and drawing all reasonable inferences in favor of the non-moving party, would permit judgment for the non-moving party on the basis of that defense.").  Defendants' Additional Rule 56.1 Facts identifies additional affirmative defenses that are applicable here.  *See, e.g.,* DAF ¶¶ 12, 58, 88, 107, 127.  Defendants reserve their right to present evidence supporting these and additional affirmative defenses at trial.

[38]      *See also Navistar Intern. Transp. Corp. v. Freightliner Corp.*, No. 96 C 6922, 1998 WL 786388, *1-2 (N.D. Ill. Nov. 6, 1998) ("[Movants] failed to meet their burden regarding [non-movants'] affirmative defenses.  They failed by simply ignoring those defenses.")

[39]      The District's Motion seeks partial summary judgment on liability for these three claims—nothing less—and therefore if the Court denies the Motion, it should not enter an alternative order granting lesser relief.  While Defendants acknowledge that Rule 56 allows the Court to make a finding that a material fact is not genuinely in dispute, the comments make clear that a Court should do so with caution.  Fed. R. Civ. P. 56(g), advisory com. note to 2010 amendment.  Here, Defendants have not been given notice of what the lesser relief would consist, and so have not a fair opportunity to present conflicting evidence.  *See id.*

Respectfully submitted,

Robert E. Meadows
Jeremiah J. Anderson
King & Spalding LLP
1100 Louisiana, Suite 4000
Houston, Texas 77002
Telephone:  (713) 751-3200
Facsimile: (713) 751-3290

Charles C. Correll, Jr.
King & Spalding LLP
101 Second Street, Suite 2300
San Francisco, CA  94105
Telephone:  (415) 318-1200
Facsimile: (415) 318-1300

Richard E. Wallace, Jr.
William F. Hughes
Wallace King Domike & Branson PLLC
1050 Thomas Jefferson Street, N.W.
Washington, D.C. 20007
Telephone:  (202) 204-1000
Facsimile:  (202) 204-1001

*Attorneys for Defendants Chevron U.S.A. Inc.
(individually and d/b/a Chevron Products Co. and
Chevron Chemical Co.), Chevron Corporation
(f/k/a ChevronTexaco Corporation), Unocal
Corporation, and Union Oil Company of
California*

## Certificate of Service

I hereby certify that on March 15, 2011 a true, correct, and exact copy of the foregoing document was served on all counsel via LexisNexis File & Serve.

Jeremiah J. Anderson

**ATTACHMENT A**
**Opposition to Motion for Summary Judgment**
***Defendants Joining in Opposition***

Chevron U.S.A. Inc
Chevron Corporation
ExxonMobil Corporation
ExxonMobil Oil Corporation
Atlantic Richfield Company
BP Products North America, Inc.
BP West Coast Products LLC
ConocoPhillips Company, as successor-in-interest to defendant Tosco Corporation and Phillips
      Petroleum Corporation
Shell Oil Company
Equilon Enterprises, LLC
TMR Company
Union Oil Company of California
Unocal Corporation
G&M Oil Company