**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:  Methyl *tertiary* Butyl Ether ("MtBE")<br>Products Liability Litigation<br><br>This Document Relates To:<br><br>*Orange County Water District v. Unocal*<br>*Corporation, et al.,*<br>Case No. 04 Civ. 4968 (SAS) | Master File No. 1:00-1898<br>MDL No. 1358 (SAS) |

**DEFENDANTS' LOCAL RULE 56.1 STATEMENT IN OPPOSITION TO PLAINTIFF
ORANGE COUNTY WATER DISTRICT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT**

Pursuant to Local Civil Rule 56.1(b) of the Local Rules of the Southern District of New York, Defendants[1] respectfully submit (A) Defendants' Response to the District's Rule 56.1 Statement; and (B) Defendants' Statement of Material Facts that Give Rise to Genuine Disputes:

## A.   DEFENDANTS' RESPONSE TO THE DISTRICT'S RULE 56.1 STATEMENT OF MATERIAL FACTS

| THE DISTRICT'S SUBMISSIONS | DEFENDANTS' RESPONSE AND SUBMISSION OF UNDISPUTED FACTS |
|---|---|
| 1.  Gasoline containing MTBE has been released from gasoline stations throughout the Orange County Water District's (the "District") service area. (Declaration of William T. Costley III in Support of Defendants' motion for Summary Judgment Based on the Statute of Limitations (Feb. 14, 2006) Costley Decl.) [identifying more than 500 sites with MTBE detections].)  *see also In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation,* 475 F. Supp.2d 286, 293 n.45 (S.D.N.Y. 2006) (Costley Decl. admissible to show MTBE presence and levels at listed stations). | 1.  Defendants deny the implication that gasoline containing MTBE was released from all gasoline stations throughout the Orange County Water District's service area. The evidence submitted in support of fact No. 1 does not support such fact or implication, nor does it support any inference that Defendants caused any release. Defendants admit that there were detections of gasoline at the stations on the referenced list. |
| 2.  In 2005, the District's Board found pursuant to the Orange County Water District Act, that available funds have been and may continue to be expended to perform investigation, cleanup, abatement, and remedial work to address MTBE contamination, and the threat of MTBE contamination, in the District's service area, and that such expenditures are required by the magnitude of the endeavor and the urgency of | 2.  Denied.

The document referred to makes no finding of the kind required to authorize the District to seek recovery of any amounts under Cal. Water Code App. §§ 40-8(a)-(c).  The Board's resolution merely contains boilerplate language copied from the Act, and does not identify any specific expenditures, or any specific work for |

---

[1]      Defendants are: Chevron U.S.A. Inc., Chevron Corporation ("Chevron"), ExxonMobil Corporation, ExxonMobil Oil Corporation, Atlantic Richfield Company, BP Products North America, Inc., BP West Coast Products LLC, ConocoPhillips Company, as successor-in-interest to defendant Tosco Corporation and Phillips Petroleum Corporation, ("ConocoPhillips"), Shell Oil Company, Equilon Enterprises, LLC dba Shell Oil Products US, TMR Company, Union Oil Company of California ("Union Oil"), Unocal Corporation, and G&M Oil Company, Inc.  All remaining terms in Defendants' Response to Plaintiff's Rule 56.1 Statement and Defendants' Statement of Material Facts that Give Rise to Genuine Disputes have the same meaning as those used in Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment.

| | |
|---|---|
| prompt action necessary to prevent, abate, and contain threatened and existing MTBE contamination. (Axline Decl., Exh. 1.) | which funds might be expended.  No evidence indicates that any specific expenditures, or any specific work for which funds might be expended, was identified to the Board when it adopted the resolution.  So far as the records show, no evidence or facts were stated or identified to the Board to support the purported "findings" stated in the resolution.  (*See, e.g.*, *infra* ¶¶ 24-27, 47, 66-69, 77-81, 89-90, 93, 100, 102, 104, 111-114, 118-122, 131-133, 143-145, 156-157, 160, 166, 169, 177, and 179; (Bolin Dep. (Aug. 13, 2010) at 114:22-116:24, Anderson Decl., Ex. 1 (discussing ARCO #1887).)<br><br>*See also* Def. Evid. Obj. at p.2 (improper authentication) |
| 3.  The District retained environmental consultants to investigate and characterize MTBE and TBA contamination at gas stations in the District's service area, including the stations that are the subject of this motion. (Axline Decl., Exh. 2.) The District's environmental consultants investigated and characterized MTBE levels, movement in groundwater, migration pathways, and potentially vulnerable production wells. Excerpts from these consultants' reports for each station are attached to the Declaration of Michael Axline. The District also sampled production wells throughout the District for the presence of MTBE and TBA.. (Axline Decl., Exh. 2. *See also* Apr. 21, 2009, letter from Tracy O'Reilly to Honorable Shira Scheindlin, Re Plaintiff Orange County Water District's Motion to Amend the Bellwether Plume Designation, and attached exhibits identifying focus plume wells where MTBE and/or TBA have been detected.) | 3.  Defendants admit that the District's consultants reviewed public files relating to the sites and prepared summaries of information contained therein, but dispute all remaining facts alleged in Paragraph 3.<br><br>Specifically, Defendants dispute that any investigation or characterization was conducted by the District's consultants; they merely summarized the investigations conducted by Defendants' consultants under the oversight of the Santa Ana Regional Water Quality Control Board ("SARWQCB") and Orange County Health Care Agency ("OCHCA"), and took no steps to obtain any new information or perform any new analyses.   (*E.g.*, Feldman Decl. at ¶¶ 11-14 (review of files does not constitute remedial activities).)<br><br>The sampling referred to by the District consisted of sampling work conducted by the District on behalf of the individual water utilities in its territory for purposes of satisfying the monitoring obligations placed on these parties by DHS/DPH regulations.  (Boyd Dep. (July 8, 2008) at 30:20-32:12, Anderson Decl., Ex. 2.)  This sampling was analyzed for |

|  | all constituents required by law, which included MTBE. (*Id.*)  As such, this work does not consist of remedial or cleanup work covered by the OCWD Act.<br><br>*See also* Def. Evid. Obj. at p. 2-3 (improper summary judgement evidence, lack of personal knowledge, and hearsay). |
|---|---|
| **ARCO/BP** | |
| 4.  ARCO/BP's Third Amended Master Answer and Affirmative Defenses (filed July 2, 2007) admits that MTBE does not occur naturally. (Third Amended Answer, at 17.) The Third Amended Answer further admits: "BP defendants state the gasoline leaks, whether containing MTBE or not, are almost always traceable to a specific source, limited to the immediate geographic area of the source, and remediable. In the vast majority of leak incidents, a responsible party can be, and is, identified." (*Id.* at 22.) | 4.  Admit that MTBE does not occur naturally. Admit that the Third Amended Answer and Affirmative Defenses includes the cited language on page 22.  However, this language does not address the specific circumstances or site-specific facts at ARCO #1887 and ARCO #1905, which are the subject of this Motion.  Further, while BP does not dispute the language in the Third Amended Answer and Affirmative Defenses, the operative pleading is not this document, but BP Defendants' Fourth Amended Master Answer and Affirmative Defenses, filed October 30, 2008. |
| **ARCO #1887** | |
| 5.  ARCO leased the property on which ARCO #1887 was located, at 16742 Beach Boulevard, Huntington Beach, California, in the late summer/early fall of 1989 until the station was closed on June 30, 2001. (Amended Decl. of William J. Smith (in support of Case Management Order No. 75) (Aug. 18, 2010) (Smith CMO 75 Decl.), at ¶ 6; Declaration of Bernard J. Bruszak (in support of Paragraph III.B.1.(b)(ii) of Case Management Order No. 4) (Bruszak Decl.), at ¶ 5 and Attachment A, at 1.) ARCO owned the underground storage tanks ("UST's") at ARCO #1887 from 1989 through October 2001. (Smith CMO 75 Decl., at ¶ 4.) After the station closed, ARCO continued to be granted access to the property for the purposes of clean-up and remediation. (Smith CMO 75 Decl., at ¶ 6.) | 5.  Admit that Atlantic Richfield Company leased the real property and owned the underground storage tanks at ARCO #1887 during the date ranges alleged by the District, and that consultants retained by Atlantic Richfield Company continued to be granted access to the property for purposes of clean-up and remediation through January 2003. |

3

| | |
|---|---|
| 6.  ARCO supplied MTBE gasoline to ARCO #1887 during the "relevant time period." (Declaration of William J. Smith (re MTBE Gasoline Sales/Distribution) (Aug. 31, 2010) (Smith Sales Decl.), at 115.) | 6.  Admit. |
| 7.  ARCO #1887 was one of the stations identified by the Court as having MTBE detected at levels above 5 ppb MTBE, before May 2000. *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation,* 676 F.Supp.2d 139, 149-50 at n.58 (S.D.N.Y. 2009). ARCO retained environmental consultants to remediate gasoline and MTBE contamination at ARCO #1887. (Axline Decl., Exh. 3, July 6, 2010, Letter from F. Minervini, Stratus Environmental Inc., to G. Higgins, Orange County Health Care Agency, Re: Quarterly Monitoring and Remediation Report, Second Quarter 2010 ["Stratus Environmental Inc. (Stratus) is submitting the Quarterly Monitoring and Remediation Report, Second Quarter 2010, on behalf of Atlantic Richfield Company for ARCO Facility No. 1887 . . ." (emphasis added)].) | 7.  Admit. |
| 8. MTBE was first detected in groundwater at ARCO #1887 in 1996 at a level of 860 parts per billion ("ppb"). (Axline Decl., Exh. 3, July 6, 2010, Quarterly Monitoring and Remediation Report, Second Quarter 2010, Stratus Environmental Inc., at Table 3, at 7 of 35.) ARCO #1887 had MTBE concentrations as high as 14,000 ppb on December 3, 1998. (Supp. Decl. of William T. Costley in. Support of Defendants' Motion for Summary Judgment Based on the Statute of Limitations dated Feb. 13, 2007 (Supp. Costley Decl.), at Exhibit 1A, at 2.) In May 2010, MTBE was still being detected in groundwater at ARCO #1887 at levels as high as 3,900 ppb. (Stratus Report, *supra,* at 34.) | 8.  Admit. |

| | |
|---|---|
| 9.  The District's environmental consultants have conducted an investigation, assessment and vulnerability analysis for MTBE at ARCO #1887. (Axline Decl., Exh. 4, Site Summary: ARCO 1887.) The consultants investigated and characterized MTBE levels, movement in groundwater, migration pathways, and potentially vulnerable production wells at and near ARCO #1887. *(Id.)* | 9.  Denied.<br><br>The District's purported evidence for these facts does not support its assertions. Moreover, the documents reviewed by the District's consultants were limited almost entirely to documents produced by BP, ARCO, their consultants, SARWQCB, or were publically available.  (Bolin Dep. (Aug. 13, 2010) at 29:23-30:5, Anderson Decl., Ex. 1.) The District has not used the Hargis Site Summary for ARCO #1887 for any purpose other than the litigation.  (*See* Def. Addt'l Facts ("DAF") at ¶¶ 30, 32.) |
| **ARCO #1905** | |
| 10.  ARCO opened ARCO #1905, located at 18025 Magnolia Street, Fountain Valley, California, on. January 24, 1967. (Bruszak Decl., at 3, 5, and Attachment A, at 2.) ARCO leased the property at ARCO #1905 from 1989 to at least January of 2003. (Smith CMO 75 Decl., at ¶ 5.) ARCO owned the UST's at ARCO #1905 from the late summer/early fall of 1989 through at least January of 2003. *(Id. at ¶ 4.)* | 10.  Admit that Atlantic Richfield Company leased the real property and owned the USTs at ARCO #1905 during the time period stated by the District. |
| 11.  ARCO supplied MTBE gasoline to ARCO #1905 during the "relevant time period." (Smith Sales Decl., at ¶ 5.) | 11.  Admit. |
| 12.  ARCO #1905 was one of the stations identified by the Court as having MTBE detected at levels above 5 ppb MTBE, before May 2000. *In re MTBE, supra,* 676 F.Supp.2d at 149-50 n.58. ARCO retained environmental consultants to remediate gasoline and MTBE contamination at ARCO #1905. (Axline Decl., Exh. 5, June 24, 2010, Letter from F. Minervini, Stratus Environmental Inc., to T. Escobedo, Orange County Health Care Agency, Re: Quarterly Monitoring and Remediation Report, Second Quarter 2010 | 12.  Admit. |

| | |
|---|---|
| ["Stratus Environmental Inc. (Stratus) is submitting the Quarterly Monitoring and Remediation Report, Second Quarter 2010, on behalf of Atlantic Richfield Company for ARCO Facility No. 1905 . ." (emphasis added)].) | |
| 13.  MTBE was first detected at ARCO #1905 on February 13, 1996, at concentrations as high as 23,000 ppb. (Axline Decl., Exh. 5, June 24, 2010, Quarterly Monitoring and Remediation Report, Second Quarter 2010 Stratus Environmental, Inc., at Table 3, at 16.) ARCO #1905 had MTBE concentrations as high as 3,400,000 ppb on July 20, 1998. (Supp. Costley Decl., at Exhibit 1A, at 2.) As of 2010, MTBE was still in groundwater at ARCO #1905 in concentrations as high as 4,400 ppb. (Stratus Report, *supra,* at Table 3, at 20 of 28 (W-23).) | 13.  Admit. |
| 14.  The District's environmental consultants have conducted an investigation, assessment and vulnerability analysis for MTBE at ARCO #1905.  (Axline Decl., Exh. 6, Site Summary: ARCO 1905.)  The consultants investigated and characterized MTBE levels, movement in groundwater, migration pathways, and potentially vulnerable production wells at and near ARCO #1905.  (*Id.*). | 14.  Denied.<br><br>The District's purported evidence for these facts does not support its assertions. Moreover, the documents reviewed by the District's consultants were limited almost entirely to documents produced by BP, ARCO, their consultants, SARWQCB, or were publically available.  (Herndon Dep. (Sept. 1, 2010) at 1693:7-23, Anderson Decl., Ex. 3.)  The District has not used the Hargis Site Summary for ARCO #1905 for any purpose other than the litigation.  (DAF at ¶¶ 50, 52.) |
| **CHEVRON**[2] | |
| 15.  The Chevron defendants' Sixth Amended Master Answer and Affirmative Defenses (filed Feb. 17, 2009) admits that MTBE does not occur naturally.  (Sixth Amended Answer, at 6.)  The Chevron defendants also admit: "Gasoline leaks, whether containing MTBE or | 15.  Admit that MTBE does not occur naturally.  Admit that Chevron's Sixth Amended Answer and Affirmative Defenses includes the cited language on page 10.  This language, however, does not address the specific circumstances or site-specific facts at |

---

[2]      The District has not alleged any facts related to Chevron Corporation.  The following denials and additional facts are therefore presented on behalf of Chevron U.S.A. Inc. only.

| | |
|---|---|
| not, are frequently traceable to a specific 'point source,' limited to the immediate geographic area of the source, and remediable." (*Id.* at 10.) | Chevron #9-1921 or Chevron #9-5401, which are subject to this Motion. |
| **CHEVRON #9-5401** | |
| 16.  Chevron U.S.A. Inc. ("Chevron") opened Chevron #9-5401, located at 5992 Westminster Boulevard, Westminster, California, prior to 1986. (Declaration of Charles R. Lines (re: Case Management Order #4, Section III.B.1.(b).(ii)) (Dec. 29, 2004) (Lines Decl.), at ¶ 2 and Exhibit A, at 14.)  Chevron owned the property and the underground storage tanks ("UST's") at Chevron #9-5401 from a date prior to 1986 to January 7, 2002.  (Declaration of Frank Soler (July 21, 2010) as Defendant Chevron U.S.A. Inc.'s Response to CMO #75, at ¶ 3.)  In January 2002, Chevron "contributed" Chevron #9-5401 to G&M Oil Co., LLC, a limited liability company, and agreed to "indemnify" the LLC "with respect to the environmental condition of the property." (Axline Decl., Exh. 7 [Environmental Indemnity Agreement between Chevron, USA, Inc., and G & M Oil LLC].) | 16.  Deny that Chevron "opened" Chevron #9-5401 prior to 1986, to the extent "opened" means "operated." (*See* Declaration of Charles R. Lines re: CMO No. 4, Section III.B.1.(b)(ii) at pg. 14, Anderson Decl., Ex. 4. )<br><br>Admit remaining factual allegations.<br><br><br>*See also* Def. Evid. Obj. at pg. 4 (improper authentication and hearsay). |
| 17.  Chevron had a retail supply contract with Chevron #9-5401 from 1986-2000 and from 2002-2004.  (Lines Decl., Exh. A, at 14.)  Chevron supplied MTBE gasoline to Chevron #9-5401 during the following date ranges: October 29, 1992, to February 28, 1993; October 1, 1993, to February 28, 1994 and September 30, 1994, to January 14, 2003.  (Third Amended Responses to Chevron U.S.A. Inc. to Orange County Water District's Second Set of Interrogatories (July 15, 2010), at 9-10.  *See also* Declaration of Tam Bui (Aug. 27, 2010), at ¶¶ 4, 5.) | 17.  Admit. |
| 18.  Chevron #9-5401 was one of the sites identified by the Court where MTBE was detected in monitoring wells at levels above 5 ppb before May 6, 2000.  *In re MTBE, supra,* | 18.  Admit. |

| | |
|---|---|
| 676 F.Supp.2d at 149-50 n.58.  Chevron retained environmental consultants to remediate gasoline and MTBE contamination at Chevron #9-5401.  (Axline Decl., Exh. 8, Oct. 22, 2010, Letter from A. Ribeiro, Conestoga-Rovers & Associates, to J. Wozencraft, Orange County Health Care Agency re: Third Quarter 2010 Groundwater Monitoring Report ["Conestoga-Rovers & Associates, <u>on behalf</u> of Chevron Environmental Management Company, is submitting this Third Quarter 2010 Groundwater Monitoring Report for active Chevron Service Station 9-5401…" (emphasis added)].) | |
| 19.  MTBE was first detected in groundwater at Chevron #9-5401 in 1997 at levels as high as 54,000 ppb.  (Axline Decl., Exh. 8, October 22, 2010, Third Quarter 2010 Groundwater Monitoring Report, Conestoga-Rovers & Associates, at Table 2, at 7 (MW-3).)  As of September 2010, MTBE was still in groundwater at Chevron #9-5401 at levels as high as 37 ppb.  (*Id*. at Table 2, at 17 of 27.) | 19. Chevron admits that the referenced report lists an MTBE detection at Chevron #9-5401 in 1997 in MW #3 of 54,000 ppb, but disputes the District's factual allegation that MTBE was in the "groundwater" to the extent that "groundwater" includes the Principal or Deep aquifers.  (*See* DAF at ¶¶ 6-9.)

Chevron further admits that the referenced report lists an MTBE detection at Chevron #9-5401 in September 2010 in MW #9 of 37 ppb, but Chevron disputes the District's factual allegation that MTBE was in the "groundwater" to the extent that "groundwater" includes the Principal or Deep aquifers.  (*Id*.) |
| 20.  The District's environmental consultants have conducted an investigation, assessment and vulnerability analysis for MTBE at Chevron #9-5401.  (Axline Decl., Exh. 9, Site Summary: Chevron #9-5401.)  The consultants investigated and characterized MTBE levels, movement in groundwater, migration pathways, and potentially vulnerable production wells at and near Chevron #9-5401. (*Id*.) | 20.  Denied.

The District's purported evidence for these facts does not support its assertions. Moreover, the District did not perform any of the work alleged in this fact statement. Instead, the District's consultants reviewed and summarized documents that were produced by Chevron, its consultants, OCHCA, or were publically available.  (Feldman Decl. at ¶¶ 11-14.) |

| **CHEVRON #9-1921** | |
|---|---|
| 21.  Chevron opened Chevron #9-1921, located at 3801 South Bristol Street, Santa Ana, California, prior to 1986.  (Lines Decl., *supra*, at ¶ and Exhibit A, at 7.)  Chevron owned the property and UST's at Chevron #9-5401 from prior to 1986 until after 2003.  (Declaration of Frank Soler (July 21, 2010) as Defendant Chevron U.S.A. Inc.'s Response to CMO #75, at ¶ 2.) | 21.  Deny that Chevron "opened" Chevron #9-1921 prior to 1986, to the extent "opened" means "operated."  (*See* Lines Decl. re: CMO No. 4, Section III.B.1.(b)(ii) at pg. 7, Anderson Decl., Ex. 4.)<br><br>Chevron admits that it owned/leased Chevron #9-1921 from a time before 1986.  Chevron admits that it owned the property at Chevron #9-1921 from before 1986 until after December 31, 2003, assuming that the District intended to refer to Chevron #9-1921 not Chevron #9-5401. |
| 22.  Chevron supplied MTBE gasoline to Chevron #9-1921 during the relevant time period.  (Third Amended Responses of Chevron U.S.A. Inc. to Orange County Water District's Second Set of Interrogatories (July 15, 2010), at 9-10.  *See also* Declaration of Tam Bui (Aug. 27, 2010), at ¶ 3.) | 22.  Chevron admits that it supplied gasoline containing MTBE to Chevron #9-1921 during some of the relevant time period; specifically, from October 29, 1992 through February 28, 1993; from October 1, 1993 through February 28, 1994; from September 29, 1994 through February 28, 1995; and from September 20, 1995 through January 14, 2003.  (Bui Decl. (Aug. 31, 2010) at ¶ 3, Anderson Decl., Ex. 5.) |
| 23.  Chevron #9-1921 is one of the sites identified by the Court where MTBE was detected in monitoring wells at levels above 5 ppb before May 6, 2000.  *In re MTBE, supra*, 676 F.Supp.2d at 149-60 n.58.  Chevron retained environmental consultants to remediate gasoline and MTBE contamination at the Chevron #9-1921.  (Axline Decl., Exh. 10, Aug. 12, 2010, Letter from A. Mora, Science Applications International Corporation-Benham, to T. Mbeke-Ekanem, California Regional Water Control Board re: 3rd Quarter 2010 Semiannual Progress and Groundwater Monitoring Report ["On behalf of Chevron Environmental Management Company (CEMC), Benham, Science Applications International Corporation…, is please to submit this Groundwater Monitoring and Progress Report for the above-reference site." (emphasis added)].) | 23.  Admit. |

| | |
|---|---|
| 24.  MTBE was first detected in groundwater at Chevron #9-1921 in 1996 at levels as high as 25,000 ppb.  (Axline Decl., Exh. 10, Aug. 12, 2010, 3rd Quarter Groundwater Monitoring and Progress Report, Science Applications International Corporation-Benham at Table 2, at 4 of 20 (MW-6).)  MTBE was detected at Chevron #9-1921 on September 9, 1998, at levels as high as 200,000 ppb.  (Supp. Costley Decl., at Exh. 1A, at 2.)  As of July 2010, MTBE was still in groundwater at Chevron #9-1921 in multiple wells, and at levels as high as 560 ppb.  (Science Applications report, *supra*, at Table 2, at 18 of 20.) | 24.  Chevron admits that the referenced report lists an MTBE detection at Chevron #9-1921 in 1996 in MW #6 of 25,000 ppb, but disputes the District's factual allegation that MTBE was in the "groundwater" to the extent that "groundwater" includes the Principal or Deep aquifers.  (*See* DAF at ¶¶ 6-9.)  Chevron admits that the referenced report lists an MTBE detection of 200,000 ppb at Chevron #9-1921 in MW #6 on September 9, 1998.  Chevron admits that the referenced report lists an MTBE detection on July 1, 2010 in Vapor Extraction Well #4 at Chevron #9-1921 of 560 ppb, but disputes the District's factual allegation that MTBE was in the "groundwater" to the extent that "groundwater" includes the Principal or Deep aquifers.  (*Id.*)  Chevron further admits that the referenced report shows that there are 12 total MTBE detections on July 1, 2010 at Chevron #9-1921, but disputes the District's factual allegation that MTBE was in the "groundwater" to the extent that "groundwater" includes the Principal or Deep aquifers.  (*Id.*) |
| 25. The District's environmental consultants have conducted an investigation, assessment and vulnerability analysis for MTBE at Chevron #9-1921.  (Axline Decl., Exh. 11, Site Summary: Chevron #9-1921.)  The consultants investigated and characterized MTBE levels, movement in groundwater, migration pathways, and potentially vulnerable production wells at and near Chevron #9-1921. (*Id.*) | 25.  Denied.  The District's purported evidence for these facts does not support its assertions. Moreover, the District did not perform any of the work alleged in this fact statement. Instead, the District's consultants reviewed and summarized documents that were produced by Chevron, its consultants, OCHCA, or were publically available.  (Feldman Decl. at ¶¶ 11-14.) |
| **EXXONMOBIL CORPORATION** | |
| 26.  ExxonMobil Corporation's Seventh Amended Master Answer and Affirmative Defenses (filed October 30, 2008) admits that | 26.  Exxon Mobil Corporation admits that these statements appear in its Seventh Amended Answer and Affirmative Defenses, |

| | |
|---|---|
| MTBE does not occur naturally.  (Seventh Amended Answer, at 7.)  ExxonMobil also admits: "Gasoline leaks, whether containing MTBE or not, are almost always traceable to a specific source, limited to the immediate geographic area of the source, and remediable. In the vase majority of leak incidents, a responsible party can be as is identified." (*Id.* at 12.) | but denies Plaintiff's implication that these general statements constitute admissions relative to the stations at issue in Plaintiff's motion. |
| **MOBIL #18-JMY** | |
| 27.  Mobil Oil Corporate leased and operated Mobil #18-JMY, located at 3470 Fairview Road, Costa Mesa, California, from 1989 until the 1999 merger between Mobil Oil Corporation and Exxon Corporation's subsidiary.  (Declaration of Michael Roman (Aug. 13, 2010) (Exxon Mobil Corporation's Response to Case Management Order No. 75) (Roman Decl.), at ¶ 6.)  Mobil owned the underground storage tanks at Mobil #18-JMY. Since the merger, ExxonMobil has continuously owned and operated the property and UST's.  (*Id. See also* Defendant Exxon Mobil Corporation's Responses to Plaintiff Orange County Water District's Third Set of Interrogatories to Exxon Mobil Corporation (Nov. 7, 2008) at Response to Interrogatory Nos. 13-14.) | 27.  ExxonMobil Oil Corporation (f/k/a Mobil Oil Corporation) admits that it leased and operated the station and owned the USTs at the times stated. |
| 28.  ExxonMobil supplied MTBE gasoline to Mobil #18-JMY during the relevant time period from November 1992 to December 31, 2003.  (Exxon Mobil Corporation's Response to Plaintiff Orange County Water District's Second Set of Interrogatories to Defendants (Feb. 8, 2008), at 6-7; Declaration of A.J. Kaberline (Aug. 27, 2010) (Kaberline Decl.), at ¶ 8 and Exh. H; Declaration of K.W. Gardner (Aug. 30, 2010) (Gardner Decl.), at ¶ 6.) | 28.  ExxonMobil Oil Corporation (f/k/a Mobil Oil Corporation) admits that it supplied gasoline to the station that, at times during the period stated, contained MTBE.  It denies that the gasoline it supplied all contained MTBE. |
| 29.  Mobil #18-JMY is one of the sites identified by the Court where MTBE was detected in monitoring wells at levels above 5 ppb before May 6, 2000.  *In re MTVBE, supra,* 676 F.Supp.2d at 149-50 n.58.  ExxonMobil | 29.  ExxonMobil Oil Corporation (f/k/a Mobil Oil Corporation) admits that Mobil #18-JMY is one of the sites identified by the Court where MTBE was detected in monitoring wells at levels above 5 ppb before May 6, 2000. |

| | |
|---|---|
| retained environmental consultants to remediate gasoline and MTBE contamination at Mobil #18-JMY. (Axline Decl., Eh. 12, Sept. 16, 2010, Letter from R. Haughy and R. Inouye, ETIC Engineering, to D. Baker, Orange County Health Care Agency, Re: Groundwater Monitoring and Remedial Progress Report, Third Quarter 2010 ["ETIC Engineering, Inc. has prepared this Quarterly Groundwater Monitoring and Remedial Progress Report…, <u>on behalf</u> of Exxon Mobil Oil Corporation."(emphasis added)].) | ExxonMobil Oil Corporation (f/k/a Mobil Oil Corporation) admits that it retained environmental consultants to remediate gasoline and MTBE contamination at Mobil #18-JMY. |
| 30. MTBE was first detected in groundwater at Mobil #18-JMY in 1993 at a level of 600 ppb. (Axline Decl., Exh. 12, Sept. 16, 2010, Groundwater Monitoring and Remedial Progress Report, Third Quarter 2010, ETIC Engineering, at Table 3, at 5 (BH-8).) By 1998, MTBE at Mobil #18-JMY had reached a level of at least 632,000 ppb. (*Id.* at Table 3, at 24 (TCW-1).) As of August 2010, MTBE was still in groundwater at Mobil #18-JMY at levels as high as 28 ppb. (*Id* at Table 3, at 3.) | 30. ExxonMobil Oil Corporation (f/k/a Mobil Oil Corporation) admits that the three specific detections of MTBE alleged in this paragraph are listed in the identified reports.<br><br>ExxonMobil Oil Corporation denies that such individual maximum detections establish that there are levels that high in other areas on- or off-site, and denies the characterization of MTBE levels in 1998 as being "at least" 632,000 ppb. That was the maximum, not minimum, level, and concentrations have dramatically declined as a result of remediation. ExxonMobil Oil Corporation denies Plaintiff's factual allegation that the MTBE detections alleged in this paragraph were in the "groundwater" to the extent that "groundwater" includes the Principal or Deep aquifers. (*See* DAF at ¶¶ 6-9.) |
| 31. The District's environmental consultants have conducted an investigation, assessment and vulnerability analysis from MTBE at Mobil #18-JMY. (Axline Decl., Exh. 13, Site Summary: Mobil #18-JMY.) The consultants investigated and characterized MTBE levels, movement in groundwater, migration pathways, and potentially vulnerable production wells at and near Mobil #18-JMY. (*Id.*) | 31. Denied.<br><br>The District's purported evidence for these facts does not support its assertions. Moreover, the District did not perform any of the work alleged in this fact statement. Instead, the District's consultants reviewed and summarized documents that were produced by ExxonMobil Oil Corporation, its consultants, OCHCA, or were publically available.<br><br>For example, other than reviewing public literature, Plaintiff has conducted no physical evaluation of potential conduits for |

| | contamination or conducted fate and transport studies.  (Bolin Dep. (Aug. 26, 2010) at 1102:5 – 1103:3, 1142:14-23, Anderson Decl., Ex. 1; Feldman Decl. at ¶¶ 11- 14.) |
|---|---|
| **MOBIL #18-G6B** | |
| 32.  Mobil Oil Corporation owned the property at Mobil #18-G6B, 9024 Warner Avenue, Fountain Valley, California, beginning in 1962.  (Roman Decl., at ¶ 4.)  Mobil owned the property continuously until the 1999 merger between Mobil and Exxon Corporation's subsidiary.  ExxonMobil has continuously owned the property since the merger.  (*Id*.)  ExxonMobil also owns the underground storage tanks at the station, which were installed in 1986.  (*Id*.) | 32.  ExxonMobil Oil Corporation (f/k/a Mobil Oil Corporation) admits that it owned the property and the underground storage tanks in the time periods alleged by Plaintiff. ExxonMobil Oil Corporation denies the allegations of this paragraph to the extent they imply that it or its related entities or corporate predecessor(s) operated the station.  *See* DAF at ¶¶ 98-99. |
| 33.  ExxonMobil supplied MTBE gasoline to Mobil #18-G6B during the relevant time period from November 1992 to December 31, 2003.  (Exxon Mobil Corporation's Response to Plaintiff Orange County Water District's Second Set of Interrogatories to Defendants (Feb. 8, 2008) at 6; Kaberline Decl., at ¶ 6 and Exh. D; Gardner Decl., at ¶ 4.) | 33.  ExxonMobil Oil Corporation (f/k/a Mobil Oil Corporation) admits that it supplied gasoline to the station that, at times during the period stated, contained MTBE.  It denies that the gasoline it supplied all contained MTBE. |
| 34.  Mobil #18-G6B is one of the sites identified by the Court where MTBE was detected in monitoring wells at levels about 5 ppb before May 6, 2000.  *In re MTBE, supra,* 676 F.Supp.2d at 149-50 n.58.  Exxon retained environmental consultants to remediate gasoline and MTBE contamination at Mobil #18-G6B.  (Axline Decl., Exh. 14, Apr. 16, 2010, Groundwater and Status Report ["[O]n behalf of Exxon Mobil Oil Corporation, Environmental Resolutions, Inc.  (ERI) is submitting the First Quarter 2010 Groundwater Monitoring and Status Report for Mobil Station 18G6B…"].) | 34.  ExxonMobil Oil Corporation (f/k/a Mobil Oil Corporation) denies that "Exxon retained environmental consultants to remediate gasoline and MTBE contamination at Mobil #18-G6B."  The evidence submitted by Plaintiff states that the report is on behalf of ExxonMobil Oil Corporation.  Otherwise, ExxonMobil Oil Corporation admits the facts alleged in this paragraph. |
| 35.  MTBE was first detected in groundwater at Mobil #18-G6B in 1999 at a level of 34,000 ppb.  (Axline Decl., Exh. 14, Apr. 16, 2010, Groundwater Monitoring and Status Report, | 35.  ExxonMobil Oil Corporation (f/k/a Mobil Oil Corporation) admits that the three specific detections of MTBE alleged in this paragraph are listed in the identified reports. |

| | |
|---|---|
| First Quarter 2010, Environmental Resolutions, Inc., at Table 3, at 1 of 17 (MW-1).)  By 2001, MTBE detected in groundwater at Mobil #18-G6B has reached a level of 95,000 ppb.  (*Id*. at Table 3, at 1.)  As of March of 2010, MTBE was still in groundwater at Mobil #18-G6B at levels as high as 4.3 ppb. (*Id*. at Table 3, at 14.) | ExxonMobil Oil Corporation denies that such individual maximum detections establish that there are levels that high in other areas on- or off-site.

The cited detection of 4.3 ppb from March 2010 is below the 5 ppb secondary MCL, and more recent monitoring data indicates that MTBE concentrations in all wells are non-detect or below 2 ppb.  *See* DAF at ¶ 106.

ExxonMobil Oil Corporation denies Plaintiff's factual allegation that the MTBE detections alleged in this paragraph were in the "groundwater" to the extent that "groundwater" includes the Principal or Deep aquifers.  (*See* DAF at ¶¶ 6-9.) |
| 36.  The District's environmental consultants have conducted an investigation, assessment and vulnerability analysis for MTBE at Mobil #18-G6B.  (Axline Decl., Exh. 15, Site Summary: Mobil #18-G6B.)  The consultant investigated and characterized MTBE levels, movement in groundwater, migration pathways, and potentially vulnerable production wells at and near Mobil #18-G6B. (*Id*.) | 36. Denied.

The District's purported evidence for these facts does not support its assertions. Moreover, the District did not perform any of the work alleged in this fact statement. Instead, the District's consultants reviewed and summarized documents that were produced by ExxonMobil Oil Corporation, its consultants, OCHCA, or were publically available. For example, Plaintiff has not conducted any analysis of whether potential conduits are acting as contaminant flow paths.  (Bolin Dep. (Sept. 3, 2010) at 2061:15 – 2062:6, Anderson Decl., Ex. 1; Feldman Decl. at ¶¶ 11-14.) |
| **SHELL** | |
| 37.  The Shell Defendants' Sixth Amended Master Answer and Affirmative Defenses (filed October 30, 2008) admits that MTBE does not occur naturally.  (Sixth Amended Answer, at 4.)  The Shell defendants also admit: "Gasoline leaks, whether containing MTBE or not, are frequently traceable to a specific "point source," limited to the immediate geographic area of the source, and remediable."  (*Id*. at 8.) | 37.  The Shell Defendants admit the facts alleged in Paragraph 37. |

| **SHELL #6502** | |
|---|---|
| 38.  Shell Oil Company, Equilon Enterprises LLC d/b/a Shell Oil Products US, and TMR (collectively "Shell") owned the property at Shell #6502, 6502 Bolsa Avenue, Huntington Beach, California, from September 1988 to December 2001.  (Declaration of Gary Ragusa (re: Case Management Order #75) (Sept. 23, 2010) (Ragusa Decl.), at ¶ 5).  Shell owned the underground storage tanks at Shell #6502 from September 1988 to December 2001.  (Ragusa Decl., at ¶ 3.) | 38.  The Shell Defendants admit that Shell Oil Company ("Shell") or Equilon Enterprises LLC d/b/a Shell Oil Products US ("Equilon") owned the real property and underground storage tanks ("USTs") at 6502 Bolsa Avenue, Huntington Beach, CA from September 1988 to December 2001.  The Shell Defendants dispute that TMR ever owned the property or USTs at the site. |
| 39.  Shell supplied MTBE gasoline to Shell #6502 during the relevant time period.  (Declaration of Laura Stylinger (Oct. 18, 2010 at ¶¶ 4,5; *see also* Objections and Responses of Defendants Shell Oil Company, Equilon Enterprises LLC, and Texaco Refining & Marketing Inc. to Plaintiff Orange County District's Second Set of Interrogatories to Defendants (Feb. 11, 2008), at 4-5) | 39.  Denied.  The Shell Defendants admit only that either Shell or Equilon supplied MTBE gasoline to Shell #6502 during the period 1990 through August 1999. |
| 40.  Shell #6502 is one of the sites identified by the Court where MTBE was detected in monitoring wells at levels above 5 ppb before Mat 6, 2000.  *In re MTBE, supra,* 676 F.Supp.2d at 149-50 n.58.  Shell retained environmental consultants to remediate gasoline and MTBE contamination at Shell #6502.  (Axline Decl., Exh. 16, November 5, 2010, Letter from M. Wielenga, Wayne Perry, Inc., to G. Higgins, Orange County Health Care Agency re: Groundwater Monitoring and Status Report Third Quarter 2010 ["Wayne Perry, Inc. on behalf of Equilon Enterprises LLC dba Shell Oil Products US, is submitting this Quarterly Groundwater Monitoring Report."] (emphasis added).) | 40.  The Shell Defendants admit the facts alleged in Paragraph 40. |
| 41.  MTBE was first detected in groundwater at Shell #6502 in 1996 at concentration as high as 70 ppb.  (Axline Decl., Exh. 16, Nov. 5, 2010, Groundwater monitoring and Status Report Third Quarter 2010, Wayne Perry, Inc., at Table 2, at 6.)  By 1997, MTBE was being | 41.  The Shell Defendants admit that MTBE was first detected in shallow groundwater in Monitoring Well B-9, located on-site at Shell #6502, in 1996 at 70 ppb, but dispute the District's factual allegation to the extent it suggests that MTBE was detected in the |

| | |
|---|---|
| detected in groundwater at Shell #6502 at levels as high as 1,100,000 ppb.  (*Id*. at Table 2, at 20 (B-16).)  In September 2010, MTBE was still being detected in groundwater at Shell #6502 at levels as high as 5.5 ppb.  (*Id*. at Table 2, at 26.) | Principal or Deep aquifers.  (*See* DAF at ¶¶ 6-9.)  The Shell Defendants further admit that, in 1997, MTBE was detected in Monitoring Well B-16, also located on-site at Shell #6502, at 1,100,000 ppb, but the Shell Defendants again dispute the District's factual allegation to the extent it suggests that MTBE was detected at that level at that time in the Principal or Deep aquifers.  (*Id*.)  The Shell Defendants admit that, in September 2010, MTBE was detected in Monitoring Well B-22, nearby at 5.5 ppb, but dispute the District's factual allegation to the extent it suggests that Monitoring Well B-22 is located on-site at Shell #6502 or that MTBE was detected at that level or that time in the Principal or Deep aquifers.  *Id*. |
| 42.  The District's environmental consultants have conducted an investigation, assessment and vulnerability analysis for MTBE at Shell #6502.  (Axline Decl., Exh. 17, Site Summary: Shell #6502.)  The consultants investigated and characterized MTBE levels, movement in groundwater, migration pathways, and potentially vulnerable production wells at and near Shell #6502.  (*Id*.) | 42. Denied.<br><br>The District's purported evidence for these facts does not support its assertions.  Moreover, the District did not perform any of the work alleged in this fact statement.  Instead, the District's consultants reviewed and summarized documents that were produced by Shell, its consultants, OCHCA, or were publically available.  (Feldman Decl. at ¶¶ 11-14.) |
| **TEXACO #121681** | |
| 43.  Shell owned the property and underground storage tanks at Texaco #121681, 9475 Warner Avenue, Fountain Valley, California, from 1986 to at least 2003.  (Ragusa Decl., at ¶¶ 3, 5.)  Shell supplied MTBE gasoline to Texas #121681 during the relevant time period.  (Declaration of Laura Stylinger (Oct. 18, 2010), at ¶ 4.  *See also* Objections and Responses of Defendants Shell Oil Company, Equilon Enterprises LLC, and Texaco Refining & Marketing Inc. to Plaintiff Orange County Water District's Second Set of Interrogatories to Defendants (Feb, 11, 2008), at 4-5.) | 43.  The Shell Defendants admit that  a predecessor in interest to TMR Company or Equilon owned the real property and USTs at 9475 Warner Avenue, Fountain Valley, CA from 1986 to at least 2003.  The Shell Defendants dispute that Shell ever owned the property or USTs at the site.  The Shell Defendants admit that either a predecessor in interest to TMR Company or Equilon supplied MTBE gasoline to Texaco #121681 during the period from approximately 1990 to at least January 2003. |

| | |
|---|---|
| 44.  Texaco #121681 is one of the sites identified by the Court where MTBE was detected in monitoring wells at levels above 5 ppb before May 6, 2000.  *In re MTBE, supra,* 676 F.Supp.2d at 149-50 n.58.  Shell retained environmental consultants to remediate gasoline and MTBE contamination at the Texaco #121681.  (Axline Decl., Exh. 18, Nov. 4, 2010, Letter from M. Wielenga, Wayne Perry, Inc., to T. Escobedo, Orange County Health Care Agency re: Groundwater Monitoring and Status Report Third Quarter 2010 ["Wayne Perry, Inc. on behalf of Equilon Enterprises LLC dba Shell Oil Products US, is submitting this Quarterly Groundwater Monitoring Report" (emphasis added)].) | 44.  The Shell Defendants admit the facts alleged in Paragraph 44, except that they dispute that Shell retained environmental consultants to remediate gasoline and MTBE contamination at Texaco #121681. |
| 45.  MTBE was first detected in groundwater at Texaco #121681 in 1997 at a concentration of 41 ppb.  (Axline Decl., Exh. 18, Nov. 4, 2010, Groundwater Monitoring and Status Report Third Quarter 2010, Wayne Perry, Inc., at Table 3, at 1 of 8 (MW01).)  By 2000, MTBE detected in groundwater at Texaco #121681 had reached a level of at least 41,000 ppb.  (*Id*. at Table 3, at 1.)  In September 2010, MTBE was still being detected in groundwater at Texaco #121681 at levels as high as 51 ppb. (*Id*. at Table 3, at 7.) | 45.  The Shell Defendants admit that MTBE was first detected in shallow groundwater in Monitoring Well 1, located on-site at Texaco #121681, in 1997 at 41 ppb, but dispute the District's factual allegation to the extent it suggests that MTBE was detected in the Principal or Deep aquifers.  (*See* DAF at ¶¶ 6-9.)   The Shell Defendants further admit that, in 2000, MTBE was detected in Monitoring Well 1, located on-site at Texaco #121681, at 41,000 ppb, but again dispute the District's factual allegation to the extent it suggests that MTBE was detected at that level at that time in the Principal or Deep aquifers.  (*Id*.)  The Shell Defendants admit that, in September 2010, MTBE was detected in Monitoring Well 23, located off-site of Texaco #121681, at 51 ppb, but again dispute the District's factual allegation to the extent it suggests that MTBE was detected at that level at that time in the Principal or Deep aquifers.  (*Id*.) |
| 46.  The District's environmental consultants have conducted an investigation, assessment and vulnerability analysis for MTBE at Texaco #121681.  (Axline Decl., Exh. 19, Site Summary: Texaco #121681.)  The consultants investigated and characterized MTBE levels, movement in groundwater, migration pathways, and potentially vulnerable | 46.  Denied.

The District's purported evidence for these facts does not support its assertions. Moreover, the District did not perform any of the work alleged in this fact statement. Instead, the District's consultants reviewed and summarized documents that were produced by |

| | |
|---|---|
| production wells at and near Texaco #121681. (*Id*.) | Shell, its consultants, OCHCA, or were publically available.  (Feldman Decl. at ¶¶ 11-14.) |
| **CONOCOPHILLIPS COMPANY** | |
| 47.  ConocoPhillips Company's Second Amended Master Answer and Affirmative Defenses (filed Sept. 15, 2006) admits that MTBE does not occur naturally.  (Second Amended Answer, at 13.)  ConocoPhillips also admits:  "Gasoline leaks, whether containing MTBE or not, are almost always traceable to a specific source, limited to the immediate geographic area of the source, and remediable.  In the vast majority of leak incidents, a responsible party can be and is identified."  (*Id*. at 18.) | 47.  Admit. |
| **UNOCAL #5792** | |
| 48.  Union Oil Company of California leased Unocal #5792, at 4002 Ball Road, Cypress, California, from prior to 1986 until it was sold to Tosco in or about March 1997.  (Declaration of Morgan Clark (in support of Paragraph III.B.1.(b)(ii) of Case Management Order No. 4) (Dec. 21, 2004) (Clark Decl.), at Exhibit B, at 1 of 2.)  Union Oil's interests in Unocal #5792 were acquired by Tosco Corporation in 1997.  (Declaration of Hongyan Xun in response to CMO 75 (July 21, 2010) (Xun CMO 75 Decl.), at ¶ 2.)  Tosco merged with ConocoPhillips in January 2003.  (Declaration of Gary Schoonveld in compliance with CMO No. 4 (Dec. 30, 2004) (Schoonveld Decl.), at ¶ 4; Declaration of Phillip Bonina in compliance | 48.  Union Oil admits that Union Oil leased Unocal #5792 from prior to 1986 until March 1997.[3]  Union Oil admits that its interests in Unocal #5792 were acquired by Tosco Corporation in 1997.<br><br>ConocoPhillips admits that Tosco merged with ConocoPhillips in January 2003.<br><br>ConocoPhillips notes that the District's use of the term "property" is vague and ambiguous.  For instance, it is unclear whether the District intends the word "property" in its allegation to mean the land on which the service station is located or the service station itself.  Nonetheless, ConocoPhillips admits that it |

---

[3]      The Court previously limited the District's Motion to two sites per Defendant.  As a result, the District did not move for summary judgment against Union Oil at Unocal #5792 or Unocal #5226, and instead moved for summary judgment against it at Unocal #5123 and Unocal #5376.  Union Oil therefore objects to the entry of any judgment against it related to Unocal #5792 or Unocal #5226.  Nevertheless, to respond to all of the District's allegations at Unocal #5792 and Unocal #5226, Union Oil and ConocoPhillips have each responded to those allegations occurring during the parties' respective times of ownership and/or possession.

| | |
|---|---|
| with CMO No. 4 (Feb. 21, 2005) (Bonina Decl.), at ¶ 4.)  ConocoPhillips owned or leased the property and underground storage tanks at Unocal #5792 from April 1, 1997, through at least December 31, 2003. (Declaration of Mark Aebi (in response to Case Management Order #75) (July 14, 2010) (Aebi Decl.), at ¶ 7; Bonina Decl., at ¶ 5 and Exhibit A, at 6 [ConocoPhillips still owned as of date of declaration].) | owned or leased the land, the service station, and the underground storage tanks at Unocal #5792 from April 1, 1997, through December 31, 2003. |
| 49.  Union Oil began supplying MTBE gasoline to Unocal #5792 in the Spring of 1986 until at least 1993.  (Xun Decl., at 10.) ConocoPhillips supplied MTBE gasoline to Unocal #5792 from April 1997 to at least 2003. (Bonina Decl., at ¶ 5 and Exh. A, at 6.) | 49.  Union Oil admits that it delivered some gasoline containing MTBE to Unocal #5792 from the Spring of 1986 until March 1993, but disputes any implication that it delivered MTBE-gasoline outside of that time-frame. Furthermore, not all of the gasoline delivered to this station during this time period contained MTBE.

ConocoPhillips disputes the District's factual allegation that ConocoPhillips supplied MTBE gasoline to Unocal #5792 from April 1997 to at least 2003.  The District cites to evidence which it did not attach to its brief or supporting papers.  Moreover, the District's purported evidence for this fact—a declaration listing sites ConocoPhillips owned or leased in this case—does not support the District's assertion. (Having erroneously cited the Bonina Declaration, Plaintiff failed to include it as an exhibit to its moving papers; ConocoPhillips therefore attaches it hereto, Anderson Decl., Ex. 6) |
| 50.  Unocal #5792 is one of the sites identified by the Court where MTBE was detected in monitoring wells at levels above 5 ppb before May 6, 2000.  *In re MTBE, supra*, 676 F.Supp.2d at 149-50 n.58.  ConocoPhillips retained environmental consultants to remediate gasoline and MTBE at Unocal #5792.  (Axline Decl., Exh. 20, October 20, 2010, Letter from A. Farfan, TRC Solutions, to K. Bewley, Conoco Phillips Company, Re: Groundwater Monitoring Report July Through September 2010 ["Groundwater Monitoring | 50.  Admit. |

| | |
|---|---|
| Report July Through September 2010 for 76 Station 5792, 4002 Ball Road, Cypress, California, <u>Prepared for</u> Mr. Karl Bewley, Conoco Phillips Company" (emphasis added)].) | |
| 51.  MTBE was first detected in groundwater at Unocal #5792 in 1998 in concentrations as high as 19,000 ppb.  (Axline Decl., Exh. 20, Oct. 20, 2010, Groundwater Monitoring Report, July Through September 2010, TRC Solutions, at Table 2, at 3 (B-2).)  By 1999, MTBE at Unocal #5792 had reached levels as high as 69,000 ppb.  (*Id.*)  In September 2010, MTBE was still being detected in groundwater at Unocal #5792 at levels as high as 410 ppb.  (*Id.* at Table 2, at 16.) | 51.  ConocoPhillips admits that the documents referenced in Mr. Axline's declaration state that MTBE was detected at Unocal #5792 in 1998 at Monitoring Well B-1 at 19,000 ppb, but disputes the District's factual allegation that MTBE was in the "groundwater" to the extent that "groundwater" includes the Principal or Deep aquifers.  (*See* DAF at ¶¶ 6-9.)  ConocoPhillips further admits that the documents referenced in Mr. Axline's declaration state that in September 2010, MW-6 showed a 410 ppb MTBE detection, but ConocoPhillips disputes the District's factual allegation that MTBE was in the "groundwater" to the extent that "groundwater" includes the Principal or Deep aquifers.  (*Id.*) |
| 52.  The District's environmental consultants have conducted an investigation, assessment and vulnerability analysis for MTBE at Unocal #5792.  (Axline Decl., Exh. 21, Site Summary: Unocal #5792.)  The consultants investigated and characterized MTBE levels, movement in groundwater, migration pathways, and potentially vulnerable production wells at and near Unocal #5792. (*Id.*) | 52.  Denied.<br><br>The District's purported evidence for these facts does not support its assertions.  Moreover, the District did not perform any of the work alleged in this fact statement.  Instead, the District's consultants reviewed and summarized documents that were produced by Union Oil and/or ConocoPhillips, their consultants, OCHCA, or were publically available.  (Feldman Decl. at ¶¶ 11- 14.) |
| **UNOCAL #5226** | |
| 53.  Union Oil Company of California owned Unocal #5226, at 6322 Westminster Blvd., Westminster, California, from prior to 1986 until 1997, when it was sold to Tosco.  (Xun Decl. (Sept. 8, 2010), at ¶ 9.  *See also* Clark Decl., at Exhibit B, at 1.) Tosco merged with ConocoPhillips in January, 2003.  (Schoonveld Decl., at ¶ 4; Bonina Decl., at ¶ 4.) ConocoPhillips owned the property and | 53.  Union Oil admits that it owned Unocal #5226 from before 1986 until it was sold to Tosco in March 1997.<br><br>ConocoPhillips admits that Tosco merged with ConocoPhillips in January, 2003.<br><br>ConocoPhillips notes that the District's use of the term "property" is vague and ambiguous. |

| | |
|---|---|
| underground storage tanks at Unocal #5226 through at least December 31, 2003. (Aebi Decl., at ¶ 7; Bonina Decl., at ¶ 5 and Exhibit A, at 12 [ConocoPhillips still owned as of date of declaration].) | For instance, it is unclear whether the District intends the word "property" in its allegation to mean the land on which the service station is located or the service station itself. Nonetheless, ConocoPhillips admits that it owned or leased the land, the service station, and underground storage tanks at Unocal #5226 from April 1, 1997, through December 31, 2003. |
| 54.  Union Oil supplied MTBE gasoline to Unocal #5226 from 1986 to March 1993.  (Xun Decl., at ¶ 9.)  ConocoPhillips supplied MTBE gasoline to Unocal #5226 from April 1997 to 2003.  (Schoonveld Decl., at 6; Bonina Decl., at ¶ 5 and Exh. A, at 12.) | 54.  Union Oil admits that it delivered gasoline containing MTBE to Unocal #5226 from the Spring of 1986 until March 1993. Furthermore, not all of the gasoline delivered to this station during this time period contained MTBE.<br><br>ConocoPhillips disputes the District's factual allegation that ConocoPhillips supplied MTBE gasoline to Unocal #5226 from April 1997 to at least 2003.  The District's attached evidence for this fact—a declaration listing sites ConocoPhillips owned or leased in this case—does not support the District's assertion. (Having erroneously cited the Schoonveld and Bonina Declarations, Plaintiff failed to include them exhibits to its moving papers; ConocoPhillips therefore attaches them hereto, Anderson Decl., Exs. 6, 7.) |
| 55.  Unocal #5226 is one of the sites identified by the Court where MTBE was detected in monitoring wells at levels above 5 ppb before May 6, 2000.  *In re MTBE, supra*, 676 F.Supp.2d at 149-50 n.58.  ConocoPhillips retained environmental consultants to remediate gasoline and MTBE contamination at the Unocal #5226.  (Axline Decl., Exh. 22, Oct. 21, 2010, Groundwater Monitoring Report July Through September 2010, from A. Farfan, TRC Solutions, to D. Pessler, ConocoPhillips ["Groundwater Monitoring Report July Through September 2010, 76 Station 5226, 6322 Westminster Boulevard, Westminster, California, Prepared for Daryl Pessler, ConocoPhillips Company" (emphasis added)].) | 55.  Admit. |

|  |  |
| --- | --- |
| 56.  MTBE was first detected in groundwater at Unocal #5226 in 1996 at concentrations as high as 1,100 ppb.  (Axline Decl., Exh. 22, Oct. 21, 2010, Groundwater Monitoring Report July Through September 2010, TRC Solutions, at Table 2, at 44.)  By 1998, MTBE at Unocal #5226 was detected at levels as high as 480,000 ppb.  (Supp. Costley Decl., at Exh. 1A, at 6.)  In September 2010, MTBE was still being detected in groundwater at Unocal #5226 at levels as high as 4.3 ppb.  (TRC Solutions, *supra*, at Table 2, at 44.) | 56.  ConocoPhillips admits that the documents referenced in Mr. Axline's declaration state that MTBE was detected at Unocal #5226 in 1996 at MW-12 at 1100 ppb, but disputes the District's factual allegation that MTBE was in the "groundwater" to the extent that "groundwater" includes the Principal or Deep aquifers.  (*See* DAF at ¶¶ 6-9.)  ConocoPhillips further admits that the documents referenced in Mr. Axline's declaration state that in 1998, MW-2 showed a 480,000 MTBE detection.  ConocoPhillips further admits that the documents referenced in Mr. Axline's declaration support the claim that in September 2010, MTBE was detected in MW-11 at 4.3 ppb, but ConocoPhillips disputes the District's factual allegation that MTBE was in the "groundwater" to the extent that "groundwater" includes the Principal or Deep aquifers.  (*Id.*) |
| 57.  The District's environmental consultants have conducted an investigation, assessment and vulnerability analysis for MTBE at Unocal #5226.  (Axline Decl., Exh. 23, Site Summary: Unocal #5226.)  The consultants investigated and characterized MTBE levels, movement in groundwater, migration pathways, and potentially vulnerable production wells at and near Unocal #5226.  (*Id.*) | 57.  Denied.  The District's purported evidence for these facts does not support its assertions.  Moreover, the District did not perform any of the work alleged in this fact statement.  Instead, the District's consultants reviewed and summarized documents that were produced by Union Oil and/or ConocoPhillips, their consultants, OCHCA, or were publically available.  (Feldman Decl. at ¶¶ 11-14.) |
| **UNION OIL COMPANY AND UNOCAL CORPORATION**[4] |  |
| 58.  Union Oil Company, Inc.'s and Unocal Corporation's (Unocal defendants') Third Amended Master Answer and Affirmative Defenses (filed March 20, 2008) admits that MTBE does not occur naturally.  (Third | 58.  Admit that MTBE does not occur naturally.  Admit that Unocal's Third Amended Answer and Affirmative Defenses includes the cited language on page 9. This language, however, does not address the |

---

[4]    Unocal Corporation has not owned or operated any service stations, terminals, refineries, pipelines, bulk plants, or other similar facilities for marketing or distributing gasoline in the relevant geographic areas during the relevant time period.  *See infra* DAF at ¶ 127.

| | |
|---|---|
| Amended Answer, at 4.)  Unocal also admits: "Gasoline leaks, whether containing MTBE or not, are frequently traceable to a specific 'point source,' limited to the immediate geographic area of the source, and remediable."  (*Id.* at 9.) | specific circumstances or site-specific facts at Unocal #5376 or Unocal #5123, which are subject to this Motion. |
| **UNOCAL #5376** | |
| 59.  Union Oil Company of California owned Unocal #5376, at 8971 Warner Ave., Huntington Beach, California, from prior to 1986 until the station was closed in March, 1992.  (Xun Decl. (July 21, 2010), at ¶ 3; Xun Decl. (Sept. 8, 2010), at ¶ 7.  *See also* Clark Decl., at Exhibit A, at 1.)  Union Oil continued to own the property at this station until approximately 1998.  (Xun Decls., *supra*.)  Union Oil owned the underground storage tanks at this station from a date prior to 1986 until approximately 1993, when the tanks were removed.  (Xun Decl. (July 21, 2010), at ¶ 3.) | 59.  Admit. |
| 60.  Union Oil supplied MTBE gasoline to Unocal #5376 from 1986 until the station closed in March 1992.  (Xun Decl., at ¶ 7.  *See also* Clark Decl., at Exhibit A, at 1.) | 60.  Denied.  The evidence cited by the District does not state that Union Oil supplied MTBE gasoline to Unocal #5376 from 1986 until the station closed in 1992.  Instead, the evidence explains that Union Oil's delivery records for gasoline to Unocal #5376 do not indicate which gas contained MTBE and which did not. (Declaration of Hongyan Xun (Sept. 8, 2010) at ¶ 7, Anderson Decl., Ex. 8.)   Thus, the District cannot conclusively establish that the gasoline delivered to Unocal #5376 by Union Oil contained MTBE. |
| 61.  Unocal #5376 is one of the sites identified by the Court where MTBE was detected in monitoring wells at levels above 5 ppb before May 6, 2000.  *In re MTBE, supra*, 676 F.Supp.2d at 149-20 n.58.  Union Oil retained environmental consultants to investigate and remediate gasoline and MTBE contamination at Unocal #5376.  (Axline Decl., Exh. 24 [ENSR letter]; Axline Decl., Exh. 25 [June 30, 2010, Letter from Lynleigh Lowry, | 61.  Admit. |

| | |
|---|---|
| ARXADIS, to Geniece Higgins, Orange County Health Care Agency, Re: Quarterly Monitoring Report Submittal ("On behalf of Chevron Environmental Company, ARCADIS is submitting the enclosed Second Quarter 2010 Groundwater Monitoring Report" [emphasis added])].) | |
| 62.  MTBE was first detected in groundwater at Unocal #5376 in 1996 at a concentration of 71 ppb.  Axline Decl., Exh. 24, Jan. 11, 2008, Quarterly Monitoring Report, Fourth Quarter 2007, ENSR Corporation, at Table 2, at 6 of 21.)  In 1998, MTBE was detect at levels as high as 280ppb at Unocal #5376.  (Supp. Costley Decl., at Exh. 1A, at 6.)  In June 2010, MTBE was still being detected in groundwater at Unocal #5376 at levels as high as 8 ppb. (Axline Decl., Exh. 25, June 30, 2010, Quarterly Groundwater Monitoring Report Second Quarter 2010, ARCADIS, at Table 2, at 22. | 62.  Union Oil admits that the referenced report lists an MTBE detection at Unocal #5376 in 1996 in MW #5 of 71 ppb, but disputes the District's factual allegation that MTBE was in the "groundwater" to the extent that "groundwater" includes the Principal or Deep aquifers. (*See* DAF at ¶¶ 6-9.)  Union Oil admits that the referenced report lists an MTBE detection of 280 ppb at Unocal #5376 in MW #17 on June 4, 1998. Union Oil admits that the referenced report lists an MTBE detection on June 15, 2010, in MW #13A at Unocal #5376 of 8 ppb, but disputes the District's factual allegation that MTBE was in the "groundwater" to the extent that "groundwater" includes the Principal or Deep aquifers.  (*Id.*) |
| 63.  The District's environmental consultants have conducted an investigation, assessment and vulnerability analysis for MTBE at Unocal #5376.  (Axline Decl., Exh. 26, Site Summary: Unocal #5376.)  The consultants have investigated and characterized MTBE levels, movement in groundwater, migration pathways, and potentially vulnerable production wells at and near Unocal #5376. (*Id.*) | 63.  Denied.  The District's purported evidence for these facts does not support its assertions. Moreover, the District did not perform any of the work alleged in this fact statement. Instead, the District's consultants reviewed and summarized documents that were produced by Union Oil, its consultants, OCHCA, or were publically available.  (Feldman Decl. at ¶¶ 11-14.) |
| **UNOCAL #5123** | |
| 64.  Union Oil Company of California owned Unocal #5123, at 14972 Springdale., Huntington Beach, California, from prior to 1986 until the station was demolished in approximately 1994. (Xun Decl. (July 21, 2010), at ¶ 5; Xun Decl. (Sept. 8, 2010), at ¶ 8. *See also* Clark Decl., at Exhibit A, at 1.) | 64.  Admit. |

| | |
|---|---|
| Union Oil owned the underground storage tanks at this station from a date prior to 1986 until approximately 1994, when the tanks were removed.  (Xun decl. (July 21, 2010), at ¶ 3.) | |
| 65.  Union Oil supplied MTBE gasoline to Unocal #5123 from 1986 until the station closed in March 1992.  (Xun Decl., at ¶ 8.  *See also* Clark Decl., at Exhibit A, at 1.) | 65.  Denied.<br><br>Unocal #5123 did not close in March 1992; it was demolished in 1994.  (Xun Decl. (Sept. 8, 2010) at ¶ 8, Anderson Decl., Ex. 8.) |
| 66.  Unocal #5123 is on of the sites identified by the Court where MTBE was detected in monitoring wells at levels above 5 ppb before Mat 6, 2000.  *In re MTBE, supra,* 676 F. Supp.2d at 149-50 n.58.  Union Oil retained environmental consultants to investigate and remediate gasoline and MTBE contamination at Unocal #5123.  (Axline Decl., Exh. 28, Sept. 2010, ARCADIS Report to Chevron Environmental Management Company:  Third Quarter 2010 Groundwater Monitoring Report, Chevron Facility No. 30-6621 (Former Unocal Station No. 5123) Huntington Beach, California ["Third Quarter 2010 Groundwater Monitoring Report"].) | 66.  Admit. |
| 67.  MTBE was first detected in groundwater at Unocal #5123 in 1996 in multiple wells with the highest concentration of 32,000 ppb. (Axline Decl., Exh. 27, Jan. 14, 2008, Fourth Quarter 2007 Groundwater Monitoring Report, ENSR, at Table 2, at 10.)  In June 2010, MTBE was still being detected in groundwater at Unocal #5123 in multiple wells, and at levels as high as 180 ppb.  (Axline Decl., Exh. 28, Sept. 17, 2010, Third Quarter 2010 Groundwater Monitoring Report, ARCADIS, Table 4, at 31.) | 67.  Union Oil admits that the referenced report lists an MTBE detection at Unocal #5123 on February 29, 1996 in MW #8, but disputes the District's factual allegation that MTBE was in the "groundwater" to the extent that "groundwater" includes the Principal or Deep aquifers.  (*See* DAF at ¶¶ 6-9.)  Union Oil disputes that MTBE was detected at Unocal #5123 in June 2010, but states that the referenced report lists an MTBE detection of 180 ppb on August 5, 2010 in MW #29L. Union Oil also disputes that the District's factual allegation that MTBE was in the "groundwater" to the extent that "groundwater" includes the Principal or Deep aquifers.  (*Id.*) |
| 68.  The District's environmental consultants have conducted an investigation, assessment and vulnerability analysis for MTBE at Unocal | 68.  Denied.<br><br>The District's purported evidence for these |

| | |
|---|---|
| #5123.  (Axline Decl., Exh. 29, Site Summary: Unocal #5123.)  the consultants investigated and characterized MTBE levels, movement in groundwater, migration pathways, and potentially vulnerable production wells at and near Unocal #5123.  (*Id.*) | facts does not support its assertions. Moreover, the District did not perform any of the work alleged in this fact statement. Instead, the District's consultants reviewed and summarized documents that were produced by Union Oil, its consultants, OCHCA, or were publically available.  (Feldman Decl. at ¶¶ 11-14.) |

**G & M OIL COMPANY, INC.**

| | |
|---|---|
| 69.  G & M Oil Company, Inc. has not filed an answer disputing any of the allegations in the District's complaint. | 69.  Denied.<br><br>G&M Oil Company, Inc. filed its answer to the District's complaint on February 3, 2011.  (*See* Docket No. 196.) |

**G&M OIL #4**

| | |
|---|---|
| 70.  G & M Oil Co. operated G & M #4 from August of 1983 until December of 2001. (Declaration of Jennifer Talbert (Jan. 20, 2011), at ¶ 6.a.)  George Pearson is the founder, President, and sole shareholder of G & M Oil Co.  (Axline Decl., Exh. 30 [Pearson Depo.].)  George Pearson and his spouse owned the property and groundwater storage tanks at G & M #4 from August of 1983 until December of 2004.  (*Id.*)  In 2002, G & M Oil Co., LLC, began operating the station and continued operating the station until June of 2003, when G & M Oil Co. resumed operating the station. | 70.  Assuming that Plaintiff's references to "G&M Oil Co." are  to G&M Oil Company, Inc., as opposed to G&M Oil Company, LLC, then G&M Oil Company, Inc. admits the facts alleged in Paragraph 70. |
| 71.  G & M #4 is one of the sites identified by the Court where MTBE was detected in monitoring wells at levels above 5 ppb before May 6, 2000.  *In re MTBE, supra,* 676 F.Supp.2d at 149-50 n.58.  G & M Oil Co. retained environmental consultants to investigate and remediate gasoline and MTBE contamination at G & M #4.  (Axline Decl., Exh. 31, Nov. 2, 2010, Letter from Atlas Engineering to Orange County Health Care Agency, submitting Quarterly Status Report – 3rd Quarter 2010, on behalf of G & M Oil Co., | 71.  Assuming that Plaintiff's references to "G&M Oil Co." are  to G&M Oil Company, Inc., as opposed to G&M Oil Company, LLC, then G&M Oil Company, Inc. admits the facts alleged in Paragraph 71. |

| | |
|---|---|
| for G & M #04.) | |
| 72.  MTBE was first detected in groundwater at G & M #4 in 1996 at concentrations as high as 2,800 ppb.  (Axline Decl., Exh. 30, Nov. 2, 2010, Quarterly Status Report, Third Quarter 2010, at Table 3, at 8.)  In 1997, MTBE was detected at G & M #4 at levels as high as 37,600 ppb.  (Supp. Costley Decl., at ¶ 2 and Exh., 1A, at 3.)  As of September, 2010, MTBE was still in groundwater at G & M #4 at levels as high as 191 ppb.  (Nov. 2, 2010, Quarterly Status Report, *supra*, at Table 3, at 98.) | 72.  G&M Oil Company, Inc. admits that MTBE was detected at G&M #4 in 1996 at concentrations as high as 2,800 ppb in the groundwater at the company's monitoring well # 2, which was reduced to less than 5 ppb as of December 2006, but disputes the District's factual allegation that MTBE was in the "groundwater" to the extent that "groundwater" includes the Principal or Deep aquifers.  (*See* DAF at ¶¶ 6-9.)  G&M Oil Company, Inc. further admits that in September 2010, G&M #4 showed a 191 ppb MTBE detection in the groundwater at the company's monitoring well # 17, down from a high of 22,800 ppb on June 1999, but G&M Oil Company, Inc. again disputes the District's factual allegation that MTBE was in the "groundwater" to the extent that "groundwater" includes the Principal or Deep aquifers.  (*Id*.) |
| 73.  The District's environmental consultants have conducted an investigation, assessment and vulnerability analysis for MTBE at G & M #4.  (Axline Decl., Exh. 32, Site Summary: G & M #4.)  The consultants investigated and characterized MTBE levels, movement in groundwater, migration pathways, and potentially vulnerable production wells at and near G & M #4.  (*Id*.) | 73.  Denied.<br><br>The District's purported evidence for these facts does not support its assertions.  Moreover, the District did not perform any of the work alleged in this fact statement.  Instead, the District's consultants reviewed and summarized documents that were produced by G&M Oil, its consultants, OCHCA, or were publically available.  (Feldman Decl. at ¶¶ 11-14.) |
| **G&M OIL #24** | |
| 74.  G & M Oil Co. operated G & M #24 from February of 1985 to January of 2002.  (Declaration of Jennifer Talbert (Jan. 20, 2011), at ¶ 6.c.)  George Pearson leased the property and owned the underground storage tanks at G & M #24 from February of 1985 until May 1996.  (*Id*.)  From May of 19963 until December of 2004 George Pearson and his spouse leased the station and owned the tanks.  (*Id*.)  In January of 2002, G & M Oil | 74.  Assuming that Plaintiff's references to "G&M Oil Co." are  to G&M Oil Company, Inc., as opposed to G&M Oil Company, LLC, then G&M Oil Company, Inc. admits the facts alleged in Paragraph 74, except that from May of 1996 until December of 2004, George Pearson and his spouse leased the property and owned the tanks. (Declaration of Jennifer Talbert (Jan. 20, 2011), at ¶ 6.c., Anderson |

| | |
|---|---|
| Co., LLC, began operating the station and continues to operate the station today. (*Id*.) | Decl., Ex. 9.) |
| 75.  G & M #24 is one of the sites identified by the Court where MTBE was detected in monitoring wells at levels above 5 ppb before May 6, 2000.  *In re MTBE, supra,* 676 F.Supp.2d at 149-50 n.58.  G & M Oil Co. retained environmental consultants to investigate and remediate gasoline and MTBE contamination to Orange County Health Care Agency, submitting Quarterly Status Report – 3rd Quarter 2010, on behalf of the property owner/operator for G & M Oil Co. Station #24.) | 75.  Assuming that Plaintiff's references to "G&M Oil Co." are  to G&M Oil Company, Inc., as opposed to G&M Oil Company, LLC, then G&M Oil Company, Inc. admits that G&M #24 is one of the sites identified by the Court where MTBE was detected in groundwater monitoring wells at levels above 5 ppb before May, 2000.  G&M Oil Company, Inc. denies that it ever retained environmental consultants to investigate and remediate gasoline and MTBE contamination at Unocal #5123, as G&M Oil Company, Inc. has never owned, leased, or conducted operations at that site.  (Talbert Decl. (Jan. 20, 2011) at ¶ 6, Anderson Decl., Ex. 9.) |
| 76. MTBE was first detected in groundwater at G & M #24 in 1997 at concentrations as high as 11,300 ppb.  (Axline Decl., Exh. 33, Sept. 29, 2010, Quarterly Status Report, Third Quarter 2010, at Table 2, at 11.)  By June 1, 2001, MTBE levels at G & M #24 were as high as 1,210,000 ppb.  (*Id*. at Table 2, at 2.)  As of August, 2010, MTBE levels at G & M #24 were still as high at 10 ppb.  (*Id*. at Table 1, at 1.) | 76.  G&M Oil Company, Inc. admits that MTBE was detected at G&M #24 in 1997 at concentrations as high as 11,300 ppb in the groundwater at the company's monitoring well # 4, and that  on June 1, 2001, MTBE levels at G&M #24 were as high as 1,210,000 in the groundwater at the company's monitoring well # 1, which had been reduced to 5.4 ppb as of August 2010, but G&M Oil Company, Inc. disputes the District's factual allegation that MTBE was in the "groundwater" to the extent that "groundwater" includes the Principal or Deep aquifers.  (*See* DAF at ¶¶ 6-9.)  G&M Oil Company, Inc. further admits that in September 2010, G&M #24  reduced to a 10 ppb MTBE detection in the groundwater at the company's monitoring wells # 3 and 4, but G&M Oil Company, Inc. again disputes the District's factual allegation that MTBE was in the "groundwater" to the extent that "groundwater" includes the Principal or Deep aquifers.  (*Id*.) |
| 77.  The District's environmental consultants have conducted an investigation, assessment and vulnerability analysis for MTBE at G & M #24.  (Axline Decl., Exh. 34, Site Summary: G & M #24.)  The consultants investigated and | 77.  Denied. The District's purported evidence for these facts does not support its assertions.  Moreover, the District did not perform any of |

| | |
|---|---|
| characterized MTBE levels, movement in groundwater, migration pathways, and potentially vulnerable production wells at and near G & M #24.  (*Id*.) | the work alleged in this fact statement. Instead, the District's consultants reviewed and summarized documents that were produced by G&M Oil, its consultants, OCHCA, or were publically available. (Feldman Decl. at ¶¶ 11-14.) |

**B.     DEFENDANTS' RULE 56.1(B) STATEMENT OF MATERIAL FACTS THAT GIVE RISE TO GENUINE DISPUTES**

**FACTS RELATED TO ALL STATIONS AT ISSUE**

1.     The District knows the difference between remediation and investigation.  (Bolin Dep. (Oct. 20, 2008) at 1338:22-1339:6, Anderson Decl., Ex. 10 ("Q.  What actions on Exhibit 48 has OCWD taken at Chevron 9-5401 to date?  A.  Well, we're in the process of evaluating the site.  This is, by the way, the same question I have received on other sites.  The answer is going to be substantially the same.  We are in the process of evaluating this site, which is considered to be part of the investigation phase and actually lends itself to a remediation phase.").)[5]

2.     Groundwater remediation is the clean up of contaminants to levels that are safe for drinking waters and meet the applicable state regulations.  (Deposition of G. Fogg (Jan. 22, 2011) at 492:1-12, Anderson Decl., Ex. 13.)   Neither groundwater monitoring nor cone penetration testing is remediation.  (*Id*. at 493:25-494:5.)

3.     The District's water quality staff routinely samples and tests wells throughout the District's territory, and this testing would occur regardless of whether a site at issue in the District's Motion was located nearby.  (Bolin Dep. (Aug. 23, 2010) at 718:20-719:21), Anderson Decl., Ex. 1.  *See also* Boyd Dep. (July 8, 2008) at 30:20-32:12, Anderson Decl., Ex. 2.)

4.     The District does not segregate the time and costs spent by its litigation consultants—Hargis and Komex—on a site-by-site basis.  (*See* Bolin Dep. (Aug. 23, 2010) at 715:22-716:24, Anderson Decl., Ex. 1.)

5.     The District's consultant's explicit scope of work submitted for this project confirms that these are litigation costs, stating that the consultant is being used "in support of [this] litigation related to Methyl tertiary Butyl Ether (MTBE) contamination," not to aid the remediation of the sites.  (*See* May 27, 2005 Komex Scope of Work Proposal at 1, Anderson Decl., Ex. 46. )  And the District admitted that this was an actual contamination case when it hired Komex in 2005, expressly charging it to identify MTBE release sites with "significant groundwater contamination problems."  (*Id*. at 5)

6.     The groundwater basin in Orange County is comprised of three major aquifers— the Shallow, Principal and Deep aquifers.  (*See* Supp. Decl. of R. Herndon in Opp. to Statute of Limitations Mtn. (Mar. 28, 2008) at ¶5, Anderson Decl., Ex. 11.)

7.     The Shallow aquifer reaches a depth of 200 feet, the Principal aquifer reaches approximately 1,500 feet, and the Deep aquifer reaches 2,000 feet or greater.  (Herndon Decl. (Mar. 28, 2008) at ¶6, Anderson Decl., Ex. 11.)

---

[5]     All testimony and or declarations from David Bolin or Roy Herndon is corporate representative testimony offered on behalf of the District, unless otherwise noted.

8.    Most of the drinking water wells within the District's territory draw groundwater from the Principal aquifer at depths of 300 to 1,000 feet.  (Herndon Decl. (Mar. 28, 2008) at ¶7, Anderson Decl., Ex. 11.)

9.    Shallow groundwater is not useable drinking water and "virtually all drinking water wells within the District's service area draw water from several hundred feet below ground surface, and certainly none draw water directly from shallow depths close to service stations." (Supp. Decl. of R. Herndon in Opp. to Def. Mtn. for Summ. J. on the Statute of Limitations (Feb. 28, 2007) at ¶3, Anderson Decl., Ex. 12.)

## FACTS RELATED TO SPECIFIC STATIONS

## BP/ARCO

### A.    Affirmative Defenses

10.    As the moving party, the District must satisfy its burden by either (1) presenting evidence that negates an essential element of defendants' affirmative defenses or (2) demonstrating that defendants cannot make a showing of sufficient evidence to establish an essential element of those affirmative defenses.  *See Andrews Farms v. Calcot Ltd.*, 693 F. Supp. 2d 1154, 1169 (E.D. Cal. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1985), and denying plaintiffs' motion for summary adjudication); *U.S. v. Ownbey Enterprises, Inc.*, 789 F. Supp. 1145, 1151-52 & n.4 (N.D. Ga. 1992) (summary judgment inappropriate where plaintiff fails to address defendant's affirmative defenses).  The District's Motion fails to address any of BP's properly pled affirmative defenses, nor does it put forward any evidence or basis to overcome those defenses.

11.    For example, this Court has previously found that factual issues exist as to defendants' properly asserted affirmative defense of federal preemption.  (*See In re MTBE Prods. Litig.*, 739 F. Supp. 2d 576, 598-601 (S.D.N.Y. 2010) (recognizing defendants may argue their affirmative defense of preemption at trial); BP's Fourth Amended Master Answer and Affirmative Defenses, filed Oct. 28, 2008, hereinafter "BP FAA" p. 26, ¶ 1.)

12.    Similarly, BP has previously asserted the affirmative defense that plaintiff's claims are barred by prior settlements and releases reached with BP Defendants by applicable governmental and regulatory agencies.  (*E.g.*, BP FAA p. 34, ¶ 70; *People v. Atlantic Richfield Co.*, Orange County Superior Court No. 80-40-30, Final Judgment Pursuant to Stipulation and Order Thereon (Dec. 17, 2002).)  Similarly, BP has raised other colorable affirmative defenses, including but not limited to: estoppel (BP FAA p. 29, ¶ 29); waiver (*id.* ¶ 32); and failure to mitigate (*id.* ¶ 68).

13.    Because it ignores BP's properly pled and colorable affirmative defenses, the District's Motion must fail.

14.    As the party moving for summary judgment, the District must "identif[y] each claim or defense -- or the part of each claim or defense -- on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  Apart from seeking a finding of "liability," the District has failed

to identify any other specific relief it seeks in this motion.  The District's Motion should therefore be denied in full as to all stations in the Motion.

### ARCO #1887, 16742 Beach Blvd., Huntington Beach, California

#### A.     Operation of ARCO #1887

15.     While ARCO owned the USTs at ARCO #1887 from late summer/early fall 1989 through October 2001, the station was operated by two independent Dealers, Peter Brito and Phi D. Phan, throughout the entirety of that time period.  (Declaration of Scott Hartwell In Support of Def. Opp. to Mtn. for Partial Summ. J. ("Hartwell Decl.") ¶ 3; Phan Dep. (Aug. 16, 2010) at 37:1-25, Anderson Decl., Ex. 14 ("when I get in there, I just take over and just run the business. Whatever is there, I just … assume the business and keep it running."); 137:12-19 (identifying Brito as prior dealer/operator of ARCO #1887).)

16.     During the time period that the station was operated by the Dealers, ARCO played no active role in the day-to-day operations of the station or USTs.  ARCO had no employees at the station on a day-to-day basis; the only personnel who participated in the daily operations of the station were employed by the independent Dealers.  (Hartwell Decl. ¶¶ 3, 5.)

17.     Dealers were responsible for day to day operation of the UST systems.  Such daily duties included gauging tanks for inventory loss and water; verifying inventory; recording product deliveries; inspecting island and tank fill areas, and UST control panels; and monitoring for alarms.  (Hartwell Decl. ¶¶ 3, 5-7.)  Dealers were also responsible for implementing spill and/or release response procedures, including containing the spill/release and immediately notifying ARCO whenever an alarm on a UST system was activated.  (*Id.* ¶ 8.)

18.     As an operator of the station, Mr. Phan understood that it was his responsibility to monitor the USTs at ARCO #1887 and to notify ARCO if there were ever a problem with operation of the USTs.  (Phan Dep. (Aug. 16, 2010) at 94:23-95:7, Anderson Decl., Ex. 14.)

19.     The record includes no evidence or indication of when any release occurred at ARCO #1887, or any facts giving rise to any release or what caused it.

#### B.     Remediation Activities at ARCO #1887

20.     As the owner of USTs at ARCO #1887 (Smith Decl. ¶ 4 (cited by but not attached to Axline Decl., Anderson Decl., Ex. 65)), BP has been pursuing corrective action under the supervision of SARWQCB and OCHCA since 1988.  (Nov. 16, 2000 Ltr. From Delta Environmental to Stephen Sharp, OCHCA (AROCWD188701278), Anderson Decl., Ex. 15.)

21.     Active remediation (Soil Vapor Extraction) commenced in March 1997, with Dual-Phase Extraction beginning in 2001.  The DPE system operated until March, 2010 when it was shut down in preparation for OCHCA-approved persulfate injection treatment.  (Second Quarter 2010 Groundwater Monitoring Report for ARCO #1887 (July 6, 2010), Anderson Decl., Ex. 16)

22.     BP continues to report progress and changes regarding its ongoing remediation activities to OCHCA and SARWQCB.  (Axline Decl. Ex. 3, p.1; Feldman Decl. ¶¶ 10, 18.)

23.     At no point has the District proposed any changes to, or even commented to OCHCA or SARWQCB concerning, BP's ongoing active remediation at ARCO #1887.  The District has not communicated about this station with OCHCA or SARWQCB (Bolin Dep. (Nov. 6, 2008) at 3112:6-3113:18 Anderson Decl., Ex. 10; Bolin Dep. (Aug. 13, 2010) at 40:22-41:4, Anderson Decl., Ex. 1.)

24.     The District's Board of Directors has never authorized expenditure of funds for any work relating specifically to ARCO #1887.  No evidence or facts were stated or identified to the District's Board of Directors relating to ARCO #1887 at any time, let alone when it adopted the March 3, 2005 resolution.  (Axline Decl., Ex. 1; Bolin Dep. (Aug. 13, 2010) at 114:22-116:24, Anderson Decl., Ex. 1.)

25.     The District has spent no money to remediate the alleged MTBE contamination at ARCO #1887.  It "has not proposed any specific remediation at this site," nor has it even conducted a technology review of available remedial options for ARCO #1887.  (Bolin Dep. (Nov. 6, 2008) at 3099:14-3100:4, Anderson Decl., Ex. 10; Bolin Dep. (Aug. 13. 12, 2010) at 58:2-59:6, Anderson Decl., Ex. 1.)

26.     In 2008, the District testified that "Hargis is going to evaluate this site and they're going to provide us a summary similar to [Komex.]  And based on [that] summary, we will decide what our next actions are going to be."  (Bolin Dep. (Nov. 6, 2008) at 3085:2-8, Anderson Decl., Ex. 10.)  However in 2010, the District testified that ARCO #1887 had not been selected for the next round of Hargis investigation.  (Bolin Dep. (Aug. 13, 2010) at 36:5-25, Anderson Decl., Ex. 1.)

27.     Also as of August, 2010, when fact discovery closed in this case some seven years after it was filed, the District and its consultants had not completed any investigation at ARCO #1887.  (Bolin Dep. (Aug. 13, 2010) at 28:9-11, Anderson Decl., Ex. 1 ("We're in the process of conducting our own investigation"); *see also* Bolin Dep. (Aug. 13, 2010) at 17:24-18:2, Anderson Decl., Ex. 1("Most of our recent efforts have been focused on the stations that we're going to be investigating.  So we haven't been spending as much time on -- on these stations."); Bolin Dep. (Aug. 13, 2010) at 50:15-21, Anderson Decl., Ex. 1.)

### C.     MTBE Detections at ARCO #1887

28.     The 1996 MTBE detection cited by the District occurred in Monitoring Well MW-6, which is screened between 10 and 25 feet below ground surface.  (*See* Pltf. R. 56.1 Statement, Feb. 1, 2011 at ¶ 8.  (*See also* Fourth Quarter 2010 Groundwater Monitoring Report for ARCO #1887 at Table 1, Anderson Decl., Ex. 17.)

29.     Similarly, the 2010 MTBE detection cited by the District occurred in Monitoring Well BC-3, which is also screened between 10 and 25 feet below ground surface.  (*See* Pltf. R. 56.1 Statement, Feb. 1, 2011 at ¶ 8. *See also* Fourth Quarter 2010 Groundwater Monitoring Report for ARCO #1887 at Table 1, Anderson Decl., Ex. 17.)

**D.    The Lack of Any Value For The Hargis Site Summary for ARCO #1887**

30.    The documents that Hargis reviewed as its basis to prepare the Site Summary were limited almost entirely to documents produced by BP, ARCO, their consultants, SARWQCB and documents that are publicly available.  (Bolin Dep. (Aug. 13, 2010) at 29:23-30:2, Anderson Decl., Ex. 1.)

31.    The District's designated witness Mr. Bolin received the Hargis Site Summary for the District, and may have been the only person at the District who read or reviewed it.  (Bolin Dep. (Aug. 13, 2010) at 34:13-35:23, Anderson Decl., Ex. 1.)

32.    The District has not used the Hargis Site Summary for any purpose other than the litigation.  The District did not discuss the Hargis Site Summary or its findings with anyone from OCHCA, SARWQCB, or any other local state or federal regulators.  (Bolin Dep. (Aug. 13, 2010) at 39:25-40:10, Anderson Decl., Ex. 1.)  After receiving the Site Summary, Mr. Bolin simply put it "in the file."  (*Id.* 42:7-9.)

33.    Under the terms of its Memorandum of Understanding ("MOU") with SARWQCB, the District is obliged to "coordinate with" and "cooperate with" SARWQCB "regarding any … investigations, actions or activities… and in planning for and implementing the prevention, clean-up and abatement of any actual or threatened pollution."  (MOU ¶6, attached as Ex. 1 to Axline Decl. in support of Pltf's. Opp. to Def. Primary Jurisdiction Mtn., (Feb. 24, 2006), Anderson Decl., Ex. 18; Feldman Decl. ¶ 13.)  The District has not taken any steps to seek additional or different action from the SARWQCB with respect to the station, whether based upon the Hargis Site Summary or otherwise.  (Bolin Dep. (Nov. 6, 2008) at 3112:6-3113:18 Anderson Decl., Ex. 10; Bolin Dep. (Aug. 13. 12, 2010) at 40:22-41:4, Anderson Decl., Ex. 1.)

34.    On June 3, 2009, Mr. Bolin submitted a declaration in which he stated that the District had not identified any "real hydrogeologic evidence that MTBE ha[d] escaped" that was attributable to any monitoring wells associated with the station or data obtained from them. (2009 Bolin Decl. ¶ 14, Anderson Decl., Ex. 19; Bolin Dep. (Aug. 13, 2010) at 93:23-94:5, Anderson Decl., Ex. 1.)

35.    Instead, the declaration identified a detection in "the production well associated with Plume 1," subsequently identified by Mr. Bolin as well NB-TAMD.  (*Id.* 19:17-20:5.)  The District concedes that it lacks any genuine factual basis to link any individual station (including ARCO #1887) to the alleged detection in NB-TAMD (*See* May 9, 2008 Finsten Supp. Decl. Ex. 8, (Pl.'s 2d Supp. Resp. to COP's 2d Interrogs., No. 33 (no facts stated to link any individual station to MTBE detections in the well; "expert analysis" is needed but has not been performed).)

36.    The Hargis Site Summary was available to the District on or about February 2, 2009 (Axline Decl. Ex. 4, p. 1; Bolin Dep. (Aug. 13, 2010) at 39:15-24, Anderson Decl., Ex. 1.), and was available to Mr. Bolin when he filed his June 3, 2009 Declaration.  (Bolin Dep. (Aug. 13, 2010) at 88:23-90:1, Anderson Decl., Ex. 1.)  The Hargis Site Summary contains no discussion whatsoever of NB-TAMD, the focus well designated by OCWD as part of Focus

Plume 1. (*Id.* 89:24-90:1.) The Hargis Site Summary therefore did not contain the only "real hydrogeologic evidence that MTBE ha[d] escaped" at ARCO #1887 identified by Mr. Bolin in his subsequent declaration.

37.     Hargis has not yet been deposed by Defendants, but was promised to be made available during expert discovery. (Aug. 10, 2010 H'rg Tr. 19:4-6, Anderson Decl. Ex. 54.) Until BP is able to examine Hargis at the deposition, it will not be in a position to present a full record of the important and available information demonstrating that the Hargis work was neither necessary nor reasonable, and that the District is not entitled to recover the costs incurred for that work. (*See* Anderson Decl., Ex. 54.)

### ARCO #1905, 18025 Magnolia Street, Fountain Valley, California

**A.     Operation of ARCO #1905**

38.     While ARCO owned the USTs at ARCO #1905 from late summer/early fall 1989 through January 2003, the station was operated by three independent Dealers, Amer Masri (1986-1990), Imad Halawani (1990-1995), and Phams Service Station, Inc. (May 1998 to present), during this time period. (Hartwell Decl. ¶ 4; Masri Dep. (Aug. 26, 2010) at 6:1-15, Anderson Decl., Ex. 20; Pham Dep. (Aug. 19, 2010) at 8:3-12, 15:19-22, Anderson Decl., Ex. 21.)

39.     The station was also operated by Prestige Stations Inc ("PSI"), a wholly-owned subsidiary of BP between August 1995 and May 1998. (Hartwell Decl. ¶ 4.) However the gasoline releases being remediated at this station were first identified prior to September 10, 1991, before the station was operated by PSI. (Sept. 10, 1991 letter to Joyce Krall, OCHCA (AROCWD190501956), Anderson Decl., Ex. 22.)

40.     During the time period that the station was operated by the Dealers, ARCO played no active role in the day to day operations of the station or USTs. ARCO had no employees at the station on a day-to-day basis; the only personnel who participated in the daily operations of the station were employed by the independent Dealers. (Hartwell Decl. ¶¶ 4-5; Masri Dep. (Aug. 26, 2010) at 26:3-27:5, 29:3-30:4, Anderson Decl., Ex. 20; Pham Dep. (Aug. 19, 2010) at 29:11-17, 39:1-11, Anderson Decl., Ex. 21.)

41.     Dealers were responsible for day to day operation of the UST systems. Such daily duties included gauging tanks for inventory loss and water; verifying inventory; recording product deliveries; inspecting island and tank fill areas and UST control panels; and monitoring for alarms. (Hartwell Decl. ¶¶ 4, 5-7.) Dealers were also responsible for implementing spill and/or release response procedures, including containing the spill/release and immediately notifying ARCO whenever an alarm on a UST system was activated. (*Id.* ¶ 8.)

42.     The record includes no evidence or indication of when any release occurred at ARCO #1905, or any facts giving rise to any release or what caused it.

**B.     Remediation Activities at ARCO #1905**

43.     As the owner of USTs at ARCO #1905 (Smith Decl. ¶ 4 (cited by but not attached to Axline Decl, , Anderson Decl., Ex. 65)), BP has been pursuing corrective action at this site under the supervision of SARWQCB and OCHCA since at least 1991. (Sept. 10, 1991 letter to Joyce Krall, OCHCA (AROCWD190501956), Anderson Decl., Ex. 22.)

44.     Active remediation (Dual-Phase Extraction) involving both Soil Vapor Extraction and Groundwater Extraction began in 2000.  (Fourth Quarter 2010 Groundwater Monitoring Report for ARCO #1905 (Dec. 9, 2010), Anderson Decl., Ex. 23.)  In 2007, the DPE system was modified to allow independent operation of the SVE and GWE systems.  The SVE system was shut off on May 25, 2010.  (*Id.*)

45.     BP continues to report progress and changes regarding its ongoing remediation activities to SARWQCB and OCHCA.  (Axline Decl. Ex. 5, p.1; Feldman Decl. ¶¶10, 18.)

46.     At no point has the District proposed any changes to, or even commented to OCHCA or SARWQCB concerning, BP's ongoing active remediation at ARCO #1905.  The District has not communicated about this station with OCHCA or SARWQCB. (Herndon Dep. (Sept. 1, 2010) at 1679:9-12, 1700:13-21, Anderson Decl., Ex. 3.)

47.     The District has spent no money to remediate the alleged MTBE contamination at ARCO #1905.  It "has not developed … plans" or recommendations for other steps to remediate the site, nor has it even conducted a technology review of available remedial options for ARCO #1905.  (Herndon Dep. (Dec. 1, 2008) at 4083:12-19, 4084:17-4085:13, 4105:2-6, Anderson Decl., Ex. 24; Herndon Dep. (Sept. 1, 2010) at 1718:15-20, 1721:9-15, 1726:12-18, 1728:10-14, 1733:7-23, Anderson Decl., Ex. 3.)  Similarly, the District has no timeline for when it will be in a position to install a remedial system at ARCO #1905.  (Herndon Dep. (Sept. 1, 2010) at 1735:21-1736:11, Anderson Decl., Ex. 3.)

### C.     MTBE Detections at ARCO #1905

48.     The February 13, 1996 MTBE detection cited by the District occurred in Monitoring Well W-15, which is screened between 5 and 25 feet below ground surface.  (*See* Pltf. R. 56.1 Statement, Feb. 1, 2011 at ¶ 13.  *See also* Fourth Quarter 2010 Groundwater Monitoring Report for ARCO #1905 at Table 1, Anderson Decl., Ex. 23.)

49.     Similarly, the 2010 MTBE detection cited by the District occurred in Monitoring Well W-23, where the depth to groundwater was 16.32 feet below ground surface.  As of the Fourth Quarter sampling, the MTBE level in this well was 22 parts per billion.  (*See* Pltf. R. 56.1 Statement, Feb. 1, 2011 at ¶ 13.  *See also* Fourth Quarter 2010 Groundwater Monitoring Report for ARCO #1905 at Table 1, Anderson Decl., Ex. 23.)

### D.     The Lack of Any Value For The Hargis Site Summary for ARCO #1905

50.     The documents that Hargis reviewed as its basis to prepare the Site Summary were limited almost entirely to documents produced by BP, ARCO, their consultants, SARWQCB and documents that are publicly available.  (Herndon Dep. (Sept. 1, 2010) at 1693:7-23; 1696:19-23, Anderson Decl., Ex. 3.)

51.     Mr. Bolin received the Site Summary at some point on or after February 20, 2009. The District's designated Rule 30(b)(6) witness deposed with respect to this site, Mr. Herndon, did not review the Site Summary prior to the week before his September 1, 2010 deposition. (Axline Decl. Ex. 4, p. 1; Herndon Dep. (Sept. 1, 2010) at 1695:14-1696:10, Anderson Decl., Ex. 3.)

52.     The District has not used the Hargis Site Summary for any purpose other than the litigation.  The District did not hold internal discussions about the Hargis Site Summary, nor did it discuss the Hargis Site Summary with anyone from OCHCA, SARWQCB, or any other local state or federal regulators.  (Herndon Dep. at (Sept. 1, 2010) 1699:18-1701:1, Anderson Decl., Ex. 3.)

53.     Under the terms of its Memorandum of Understanding ("MOU") with SARWQCB, the District is obliged to "coordinate with" and "cooperate with" SARWQCB "regarding any … investigations, actions or activities… and in planning for and implementing the prevention, clean-up and abatement of any actual or threatened pollution."  (MOU ¶6, attached as Ex. 1 to Axline Decl. in support of Pltf''s. Opp. to Def. Primary Jurisdiction Mtn. (Feb. 24, 2006), Anderson Decl., Ex. 18; Feldman Decl. ¶13 )  The District has not taken any steps to seek additional or different action from the SARWQCB with respect to the station, whether based upon the Hargis Site Summary or otherwise.  (Herndon Dep. (Sept. 1, 2010) at 1679:9-12, 1700:13-21, Anderson Decl., Ex. 3.)

54.     On June 3, 2009, Mr. Bolin submitted a declaration in which he stated that the District had not identified any "real hydrogeologic evidence that MTBE ha[d] escaped" that was attributable to any monitoring wells associated with the station or data obtained from them. (2009 Bolin Decl. ¶ 26, Anderson Decl., Ex. 19.)

55.     Instead, the declaration identified a detection in the District's monitoring well OCWD-M10, which is located over 1100 feet from ARCO #1905 and not associated with the investigation activities conducted there.  (Id.; see also Herndon Dep. (Sept. 1, 2010) at 1707:7-17, Anderson Decl., Ex. 3.)  The District concedes that it lacks any genuine factual basis to link any individual station (including ARCO #1905) to the alleged detection in OCWD-M10 (See May 9, 2008 Finsten Supp. Decl. Ex. 8, (Pl.'s 2d Supp. Resp. to COP's 2d Interrogs., No. 33 (no facts stated to link any individual station to MTBE detections in the well; "expert analysis" is needed but has not been performed).)

56.     The Hargis Site Summary was available to the District on or about February 20, 2009 (Axline Decl. Ex. 6, p. 1; Herndon Dep. (Sept. 1, 2010) at 1695:14-1696:10, Anderson Decl., Ex. 3), but the District's designated witness did not know whether Mr. Bolin had reviewed it when he filed his June 3, 2009 declaration.  (Herndon Dep. (Sept. 1, 2010) at 1753:13-1754:16, Anderson Decl., Ex. 3.)  The Hargis Site Summary only discusses OCWD-M10 by stating its location, age, screening depth and lack of information of sanitary seal status.  (Id. 1707:7-17.)  It contains no discussion whatsoever of OCWD-M11 and OCWD-M45, the focus remaining two other focus wells besides OCWD M-10 designated by the District as part of Focus Plume 3. (Herndon Dep. (Sept. 1, 2010) at 1709:4-1710:20, Anderson Decl., Ex. 3.)  The Hargis Site Summary therefore did not contain the only "real hydrogeologic evidence that MTBE ha[d] escaped" at ARCO #1905 identified by Mr. Bolin in his subsequent declaration.

57.     Hargis has not yet been deposed by Defendants, but was promised to be made available during expert discovery.  (Aug. 10, 2010 H'rg Tr. 19:4-6, Anderson Decl. Ex. 54)  Until BP is able to examine Hargis at the deposition, it will not be in a position to present a full record of the important and available information demonstrating that the Hargis work was neither necessary nor reasonable, and that the District is not entitled to recover the costs incurred for that work.  (*See* Anderson Decl., Ex. 54.)

## CHEVRON

58.     As an initial matter, Chevron has raised many colorable affirmative defenses, including federal preemption (Chevron's  Ninth Amended Master Answer and Affirmative Defenses, filed Jan. 31, 2011 ("Chevron NAA") at p. 15, ¶ 1), waiver (Chevron NAA at p. 19, ¶ 32) and failure to mitigate (Chevron NAA at p. 22, ¶ 65.)  The District has not addressed these or any other  of Chevron's colorable and properly pled affirmative defenses and thus the District's Motion must fail.

### Chevron Station #9-5401, 5992 Westminster Blvd., Westminster, California

### A.     Control of Chevron #9-5401

59.     Chevron owned Chevron #9-5401 from a date before 1986 until January 7, 2002; during that time, the station was operated by independent businessmen and/or companies, including Keith Van Hoesen, Adartse Enterprises, Inc., Hassan & Sons, Inc., and G&M Oil Co. (Bui Decl. (Aug. 31, 2010) at ¶ 4, Anderson Decl., Ex. 5.)

60.     Chevron only operated Chevron #9-5401 during 2001.  (*See* Lines Decl. re: CMO No. 4, Section III.B.1.(b)(ii) at pg. 14, Anderson Decl., Ex. 4.)

61.     From January 8, 2002 until December 31, 2003, Chevron #9-5401 was owned and operated by G&M Oil Co., LLC. (Bui Decl. (Aug. 31, 2010) at ¶ 4, Anderson Decl., Ex. 5.)

62.     Chevron divested Chevron #9-5401 in January 2002, before the District's alleged post-May 2002 release on April 22, 2002.  (Pltf. R.56.1 Statement, Feb. 1, 2011 at ¶ 16; Pltf. Supp. R. 56.1 Statement (Mar. 28, 2008) at ¶ 59, Anderson Decl., Ex. 25.)  Indeed, the record contains no evidence or indication of when any release occurred at Chevron #9-5401, or any facts giving rise to any release or what caused it.

63.     Keith Van Hoesen operated Chevron #9-5401 from July 1978 to January 1994 and testified that he understood that he needed to clean up any spills of gasoline at the station and that he had procedures to do so.  (Van Hoesen Dep. (Aug. 19, 2010) at 7:7-16, 24-25; 105: 13-17, Anderson Decl., Ex. 26.)

64.     Robert Risner worked for Mr. Van Hoesen at Chevron #9-5401 and further testified that it was the operator's responsibility to monitor the underground storage tanks on a daily basis and notify Chevron if any issues were detected.  (R. Risner Dep. (Aug. 30, 2010) at 11:8-25; 30:7-8, 11-15, Anderson Decl., Ex. 27.)

**B.      Remediation Activities at Chevron #9-5401**

65.      The District does not dispute any comments that the OCHCA has provided regarding remediation at Chevron #9-5401.  (Bolin Dep. (Oct. 20, 2008) at 1286:21-1287:23, Anderson Decl., Ex. 10.)  The District has not communicated with the regulators overseeing remediation at Chevron #9-5401.  (Bolin Dep. (Aug. 19, 2010) at 613:6-10, Anderson Decl., Ex. 1; Bolin Dep. (Oct. 20, 2008) at 1285:24-1287:23, Anderson Decl., Ex. 10.)  Nor has the District contacted any water producers or city officials around the site to discuss the alleged contamination at Chevron #9-5401.  (Bolin Dep. (Oct. 20, 2008) at 1291:13-1292:6, Anderson Decl., Ex. 10.)

66.      The District has not performed any remediation at Chevron #9-5401.  (Bolin Dep. (Aug. 19, 2010) at 623:25-625:21, Anderson Decl., Ex. 1;  Bolin Dep. (Oct. 20, 2008) at 1309:5-17, Anderson Decl., Ex. 10.)  In fact, all that the District has done is reviewed documents generated by Defendants' consultants and monitored data from groundwater monitoring wells.  (Bolin Dep. (Aug. 19, 2010) at 624:2-11, Anderson Decl., Ex. 1.)

67.      The District does not know whether the alleged MTBE release from Chevron #9-5401 has reached the Principal or Deep aquifer.  (Bolin Dep. (Oct. 20, 2008) at 1328:10-16, Anderson Decl., Ex. 10.)

68.      The District has not performed any modeling to determine the disposition of the alleged contamination from Chevron #9-5401 and has no timetable for when that modeling might begin.  (Bolin Dep. (Oct. 20, 2008) at 1331:11-1333:5, Anderson Decl., Ex. 10.)

69.      The District has spent no money to remediate the alleged MTBE contamination at Chevron #9-5401.  (Bolin Dep. (Aug. 19, 2010) at 616:5-616:24, Anderson Decl., Ex. 10.)  Indeed, the District claims that it will "probably" remediate at this site, but can not identify any specific steps it plans to take to remediate the groundwater at the site. (Bolin Dep. (Oct. 20, 2008) at 1337:25-1338:15, Anderson Decl., Ex. 10 ("Q.  Does OCWD plan to remediate any contamination at this site?"  A.  Probably.  But right now there are no specific steps that have been identified to remediate groundwater at this site.").)

70.      Hargis has not yet been deposed by Defendants, but was promised to be made available during expert discovery.  (Aug. 10, 2010 H'rg Tr. 19:4-6, Anderson Decl. Ex. 54.) Until Chevron is able to examine Hargis at the deposition, it will not be in a position to present a full record of the important and available information demonstrating that the Hargis work was neither necessary nor reasonable, and that the District is not entitled to recover the costs incurred for that work.

71.      Chevron has been remediating the contamination at Chevron #9-5401 since at least 1996 through the present, and OCHCA is overseeing that remediation.  (Declaration of Natasha Molla in Support of Defs. Opp. to Pl. Mot. for Part. Summ. J. at ¶ 11.)  Monitoring wells were installed at Chevron #9-5401 beginning in November 1996 and thereafter in March 1998, September 2000, September 2001, and June 2004.  (Molla Decl. at ¶ 12.)

72.      MTBE detections at Chevron #9-5401 have decreased over time.  (Molla Decl. at ¶ 13.)  Closure at Chevron #9-5401 is now warranted because the site has the necessary elements

39

to facilitate continued biodegradation of petroleum hydrocarbons.  (*Id.*)  The remediation conducted at Chevron #9-5401 has been effective and the alleged contamination at Chevron #9-5401 poses no risk to the groundwater or nearby offsite sensitive receptors.  (Molla Decl. at ¶ 14.)  And the District has brought forth no evidence that the alleged contamination is outside the reach of the current remediation at the site.

### C.      MTBE Detections at Chevron #9-5401

73.      The 1997 MTBE detection cited by the District occurred in Monitoring Well No. 3, where the depth to groundwater was 9.93 feet.  (*See* Pltf. R. 56.1 Statement, Feb. 1, 2011 at ¶ 19.  *See also* Third Quarter 2010 Groundwater Monitoring Report for Chevron #9-5401 at pg. 7, Table 2, Anderson Decl., Ex. 28.)  The depth of the Principal Aquifer underlying the nearest drinking water production well to Chevron #9-5401 is approximately 169 feet, or 17 times deeper than the depth at which MBTE was detected in Monitoring Well No. 3. (Ex. 67 to Bolin Dep. (Aug. 21, 2008), Anderson Decl., Ex. 55.)  The District has brought forth no evidence that this detection or any other MTBE from this station has reached the Principal or Deep aquifers, that it has gone offsite, or that it is outside the reach of current remediation at the site.

74.      Similarly, the 2010 MTBE detection cited by the District occurred in Monitoring Well No. 9, which is 20.32 feet deep and where the depth to groundwater is 11.05 feet.  (*See* Pltf. R. 56.1 Statement, Feb. 1, 2011 at ¶ 19.  *See also* Third Quarter 2010 Groundwater Monitoring Report for Chevron #9-5401 at pg. 1, Table 1, Anderson Decl., Ex. 28.)  The depth of the Principal Aquifer underlying the nearest drinking water production well to Chevron #9-5401 is approximately 169 feet, or 8 times deeper than the depth at which MBTE was detected in Monitoring Well No. 9. (Ex. 67 to Bolin Dep. (Aug. 21, 2008), Anderson Decl., Ex. 55.)  The District has brought forth no evidence that this detection or any other MTBE from this station has reached the Principal or Deep aquifers, that it has gone offsite, or that it is outside the reach of current remediation at the site.

### Chevron Station 9-1921, 3801 South Bristol St., Santa Ana, California

### A.      Control of Chevron #9-1921

75.      Chevron owned Chevron #9-1921 from a date before 1986 until December 31, 2003, and during that time, this station was operated by Chevron and the following independent businessman and business: Louis J. Bacca and Mustang Marketing, Inc.  (Bui Decl. (Aug. 31, 2010) at ¶ 2, Anderson Decl., Ex. 5.)

76.      Chevron operated Chevron #9-1921 only during 2002-2004.  (*See* Lines Decl. re: CMO No. 4, Section III.B.1.(b)(ii) at pg. 7, Anderson Decl., Ex. 4.)  The record contains no evidence or indication of when any release occurred at Chevron #9-1921, or any facts giving rise to any release or what caused it.  In fact, MTBE was detected at Chevron #9-1921 in 1998 and remediation at began at the site in 1988 (Molla Decl. ¶ ¶ 6, 9), indicating that a release occurred before Chevron began operating the station.

## B.    Remediation at Chevron #9-1921

77.    The District has no evidence that MTBE has migrated into deeper groundwater zones at Chevron #9-1921.  (Bolin Dep. (Oct. 30, 2008) at 1893:6-1894:11, Anderson Decl., Ex. 10.)  In fact, the District is not even finished with its evaluation of this site.  (*Id.*)

78.    The District has no plans to do any modeling of the alleged contamination at Chevron #9-1921. (Bolin Dep. (Aug. 19, 2010) at 539:10-541:8, Anderson Decl., Ex. 1.)  And in fact, all of the District's work involving Chevron #9-1921 as of August 2010, is "within the realms of [the District's] litigation."  (*Id.*)

79.    The District has monitored data in the general region and prepared "an investigation that will be going forward" as to Chevron #9-1921.  (Bolin Dep. (Aug. 19, 2010) at 506:25-508:12, Anderson Decl., Ex. 1.)  The District has not provided any suggestions or comments to the regulatory agencies overseeing remediation at Chevron #9-1921.  (Bolin Dep. (Oct. 29, 2008) at 1815:21-1816:3; 1817:6-13, Anderson Decl., Ex. 10; Bolin Dep. (Aug. 19, 2010) at 556:1-4, Anderson Decl., Ex. 1.)

80.    The District has not performed any physical remediation at Chevron #9-1921. (Bolin Dep. (Aug. 19, 2010) at 541:10-542:5, Anderson Decl., Ex. 1.)  The District has not made any decision as to any remedial activities that need to be taken by the District in relationship to Chevron #9-1921 because it is too "premature."  (Bolin Dep. (Aug. 19, 2010) at 547:22-548:3, Anderson Decl., Ex. 1.)

81.    Because the District does not know the extent of the contamination, it can not determine whether the eventual cost to clean up Chevron #9-1921 is reasonable.  (Bolin Dep. (Aug. 19, 2010) at 604:7-606:7, Anderson Decl., Ex. 1.)

82.    Hargis has not yet been deposed by Defendants, but was promised to be made available during expert discovery.  (Aug. 10, 2010 H'rg Tr. 19:4-6, Anderson Decl. Ex. 54.) Until Chevron is able to examine Hargis at the deposition, it will not be in a position to present a full record of the important and available information demonstrating that the Hargis work was neither necessary nor reasonable, and that the District is not entitled to recover the costs incurred for that work.

83.    Remediation at Chevron #9-1921 has been occurring since at least 1988 through the present and is overseen by the Regional Water Quality Control Board—Santa Ana Region. (Molla Decl. at ¶ 5.)  Beginning in 1988, the underground storage tanks at Chevron #9-1921 were excavated and replaced.  Groundwater monitoring wells were installed during 1989 and 1990 and subsequently began monitoring the groundwater.  (Molla Decl. at ¶ 6.)  Thereafter, a vapor extraction test was performed, the underground tank system was upgraded, and hydrocarbons were removed from the site.  (Molla Decl. at ¶ 7.)

84.    Chevron is currently operating a dual-phase extraction remediation system at Chevron #9-1921.  (Molla Decl. at ¶ 9.)  In July 2009, the Regional Board informed Chevron that a change from quarterly to semiannual monitoring was appropriate.  (Molla Decl. at ¶ 8.) The MTBE detections at Chevron #9-1921 have gone down over time.  (*Id.*)  The remediation conducted at Chevron #9-1921 has been effective and the alleged contamination at Chevron #9-

1921 poses no risk to the groundwater or offsite sensitive receptors. (Molla Decl. at ¶ 10.) And the District has brought forth no evidence that the alleged contamination is outside the reach of the current remediation at the site.

### C.   MTBE Detections at Chevron #9-1921

85.   The 1996 MTBE detection cited by the District occurred in Monitoring Well No. 6, where the depth to groundwater was 11.67 feet. (*See* Pltf. R. 56.1 Statement, Feb. 1, 2011 at ¶ 19. *See also* Third Quarter 2010 Groundwater Monitoring Report for Chevron #9-1921 at pg. 4, Table 2, Anderson Decl., Ex. 29.) The depth of the Principal Aquifer underlying the nearest drinking water production well to Chevron #9-1921 is approximately 160 feet, or 14 times deeper than the depth at which MBTE was detected in Monitoring Well No. 6. (Ex. 112 to Bolin Dep. (Oct. 29, 1008), Anderson Decl., Ex. 56.) The District has brought forth no evidence that this detection or any other MTBE from this station has reached the Principal or Deep aquifers, that it has gone offsite, or that it is outside the reach of current remediation at the site.

86.   The September 9, 1998 MTBE detection cited by the District occurred in Monitoring Well No. 6, where the depth to groundwater was 10.7 feet. (*See* Pltf. R. 56.1 Statement, Feb. 1, 2011 at ¶ 19. *See also* Third Quarter 2010 Groundwater Monitoring Report for Chevron #9-1921 at pg. 5, Table 2, Anderson Decl., Ex. 29) The depth of the Principal Aquifer underlying the nearest drinking water production well to Chevron #9-1921 is approximately 160 feet, or 16 times deeper than the depth at which MBTE was detected in Monitoring Well No. 6. (Ex. 112 to Bolin Dep. (Oct. 29, 1008), Anderson Decl., Ex. 56.) The District has brought forth no evidence that this detection or any other MTBE from this station has reached the Principal or Deep aquifers, that it has gone offsite, or that it is outside the reach of current remediation at the site.

87.   The July 1, 2020 MTBE detection cited by the District occurred in Vapor Extraction Well No. 4, where the depth to groundwater was 9.18 feet. (*See* Pltf. R. 56.1 Statement, Feb. 1, 2011 at ¶ 19. *See also* Third Quarter 2010 Groundwater Monitoring Report for Chevron #9-1921 at pg. 1, Table 1, Anderson Decl., Ex. 29.) The depth of the Principal Aquifer underlying the nearest drinking water production well to Chevron #9-1921 is approximately 160 feet, or 17 times deeper than the depth at which MBTE was detected in Vapor Extraction Well No. 4. (Ex. 112 to Bolin Dep. (Oct. 29, 1008), Anderson Decl., Ex. 56.) The District has brought forth no evidence that this detection or any other MTBE from this station has reached the Principal or Deep aquifers, that it has gone offsite, or that it is outside the reach of current remediation at the site.

### EXXONMOBIL CORPORATION

88.   As an initial matter, Exxon Mobil Corporation and ExxonMobil Oil Corporation have raised many colorable affirmative defenses, including preemption (par. 50), lack of standing/no cognizable harm (par. 65), waiver (par. 82), failure to mitigate (par. 120), and unjust enrichment (par. 177). (Exxon Mobil Corporation's Ninth Amended Master Answer and Affirmative Defenses, filed February 28, 2011). The District has not addressed these or any other of the colorable and properly pled affirmative defenses, and thus the District's Motion must fail.

**Mobil #18-JMY, 3470 Fairview Road, Costa Mesa, California**

**A.    Remediation Activities at Mobil #18-JMY**

89.    The District has not spent any money to perform cleanup, abatement, or remedial work at *any* MTBE site.  (Herndon Dep. (Dec. 10, 2005), at 139:2-141:15, Anderson Decl., Ex. 30.)  Neither has the District determined that cleanup, abatement, or remediation work was necessary at any MTBE site.  (*Id.*)

90.    Plaintiff has had no communications with the Orange County Health Care Agency or the Regional Water Quality Control Board specific to Mobil #18-JMY, including never having communicated to either agency regarding the agency's oversight of investigation or remediation at the station, or communicated its opinions on what it believes should be taking place at the station relative to investigation or remediation.  (Bolin Dep. (Oct. 20, 2008) at 1197:3-13; 1210:20–1211:17; 1227:23–1229:10, Anderson Decl., Ex. 10.)  (Bolin Dep. (Aug. 26, 2010), at 1093:8-19; 1106:2-10, Anderson Decl., Ex. 1.)

91.    Plaintiff has performed no remediation relative to Mobil #18-JMY.  (Bolin Dep. (Oct. 20, 2008), at 1225:12-15, Anderson Decl., Ex. 10; Bolin Dep. (Aug. 26, 2010) at 1099:18-21, Anderson Decl., Ex. 1.)

92.    Plaintiff's only investigation work at Mobil #18-JMY has been (1) reviewing the consultants' quarterly monitoring reports and publicly available agency communications, (2) preparation of the Komex "Site Summary," which was created from review of publicly available agency files, and (3) identifying proposed locations to install CPT sampling borings. Plaintiff has testified to no other investigation work at Mobil #18-JMY.  (Bolin Dep. (Oct. 20, 2008) at 1165:14-21; 1174:20–1175:12, Anderson Decl., Ex. 10.)  (Bolin Dep. (Aug. 26, 2010), at 1083:8–1084:8; 1085:8-12; 1099:13-17, Anderson Decl., Ex. 1.)

93.    Other than reviewing public literature, Plaintiff has conducted no physical evaluation of potential conduits for contamination or conducted fate and transport studies. (Bolin Dep. (Aug. 26, 2010) at 1102:5 – 1103:3, 1142:14-23, Anderson Decl., Ex. 1.)

**B.    MTBE Detections at Mobil #18-JMY**

94.    The 1993 MTBE detection cited by Plaintiff occurred in on-site well BH-8, where depth to groundwater from 1993 to 2010 has been as low as 7.91 feet below ground surface ("bgs") and never deeper than 28.69 feet bgs.  The well is installed at a total depth of 30 feet bgs, with a screened interval from 10 to 30 feet bgs. (18-JMY Third Quarter 2010 Monitoring Report, Anderson Decl., Ex. 31.)

95.    The Komex Summary for Mobil #18-JMY indicates that MTBE has migrated "at least as far as monitoring well MW-19A/B, located approximately 210 feet east of the eastern boundary of the Site." (*See* Ex. 13 of Plaintiff's Motion, p.1.)  However, there has not been a detection of MTBE in well MW-19A/B since the year 2000.  Moreover, the deepest well

associated with this site, MW-22A-D, which is approximately 150 feet east of the site boundary and screened between 5 - 90 feet bgs, has never had a detection of MTBE. (18-JMY Third Quarter 2010 Monitoring Report, Anderson Decl., Ex. 31.)

96.     The 1998 MTBE detection cited by Plaintiff occurred in on-site well TCW-1, which is installed at a total depth of 13 feet bgs, with a screened interval between 2 and 13 feet bgs. At the time of the 1998 detection cited by Plaintiff, depth to groundwater was 10.59 feet bgs. (Axline Decl., Ex. 12; 18-JMY Third Quarter 2010 Monitoring Report, Anderson Decl., Ex. 31.)

97.     The 2010 MTBE detection cited by Plaintiff occurred in on-site well BH-6, which is installed at a total depth of 33 feet bgs, with a screened interval between 12 and 33 feet bgs. At the time of the 2010 detection cited by Plaintiff, depth to groundwater was 22.65 feet bgs. (Axline Decl., Ex. 12; 18-JMY Third Quarter 2010 Monitoring Report, Anderson Decl., Ex. 31.)

### Mobil #18-G6B, 9024 Warner Ave., Fountain Valley, California

#### A.     Control of Mobil #18-G6B

98.     In the relevant time period from 1986 to 2003, ExxonMobil Oil Corporation (f/k/a Mobil Oil Corporation) leased the operation of the station to independent operators. (Roman Decl., at ¶ 4; Kaberline Decl., at ¶ 6 (declarations referenced in Plaintiff's Rule 56.1 Statement).)

99.     One of those independent operators, Hamid Kalhor, was deposed. Mr. Kalhor understood that he was responsible for physically checking gasoline inventory in the underground storage tanks. Mr. Kalhor was trained, inspected and audited by ExxonMobil Oil Corporation (f/k/a Mobil Oil Corporation) in environmental procedures, and he understood it was his "obligation to do all the maintenance inspection on a daily basis" including cleaning up spills. (Kalhor Dep. at 21:3-21:15, 24:1 – 25:22, 26:5–12, 43:4-16, 97:19–98:6, Anderson Decl., Ex. 32.)

#### B.     Remediation Activities at Mobil #18-G6B

100.    The District has not spent any money to perform cleanup, abatement, or remedial work at *any* MTBE site. (Herndon Dep. (Dec. 10, 2005) at 139:2-141:15, Anderson Decl., Ex. 30.) Neither had the District determined that cleanup, abatement, or remediation work was necessary at any MTBE site. (*Id.*)

101.    Plaintiff has had no communications with the Orange County Health Care Agency or the Regional Water Quality Control Board regarding Mobil #18-G6B. (Bolin Dep. (Nov. 6, 2008) at 3025:17-21, 3026:6-11, Anderson Decl., Ex. 10; Bolin Dep. (Sept. 3, 2010) at 2062:8-15, Anderson Decl., Ex. 1.)

102.    Plaintiff has performed no remediation relative to Mobil #18-G6B. (Bolin Dep. (Nov. 6, 2008), at 2995:13–2996:1, Anderson Decl., Ex. 10; Bolin Dep. (Sept. 3, 2010) at 1907:2–1909:2, Anderson Decl., Ex. 1.)

103.    Plaintiff's investigation work at Mobil #18-G6B has included (1) review of publically available agency files, (2) evaluation of the station in the Hargis "Site Summary," and (3) locating CPT boring logs.  Plaintiff admitted that it has done no other investigation work at Mobil #18-G6B.  (Bolin Dep. (Nov. 6, 2008) at 2994:13–2996:10, Anderson Decl., Ex. 10.) (Bolin Dep. (Sept. 3, 2010) at 1907:25–1909:2, Anderson Decl., Ex. 1.)

104.    Plaintiff has not conducted any analysis of whether potential conduits are acting as contaminant flow paths.  (Bolin Dep. (Sept. 3, 2010) at 2061:15 – 2062:6, Anderson Decl., Ex. 1.)

### C.    MTBE Detections at Mobil #18-G6B

105.    The 1999 MTBE detection cited by Plaintiff occurred in on-site well MW-1.  That well was screened at a depth of between 5 and 25 feet bgs, and groundwater depth for that 1999 sample was 16.5 feet bgs.  For the 2001 detection, groundwater depth was even shallower, at 15.41 feet bgs.  (Axline Decl., Ex. 14.)

106.    The March 2010 detection cited by Plaintiff was in onsite well DPE1R.  The concentration was 4.3 ppb, which is below the secondary MCL.  The more recent Third Quarter 2010 Groundwater Monitoring and Status Report reveals that MTBE concentrations at all wells, on and offsite, are below 2.0 ppb.  (Axline Decl., Ex. 14; 18-G6B Third Quarter 2010 Groundwater Monitoring and Status Report, Anderson Decl., Ex. 33.)

### CONOCOPHILLIPS COMPANY

107.    As an initial matter, ConocoPhillips has raised many colorable affirmative defenses, including Compliance with Laws, Orders, Duties and Standards (ConocoPhillips Company's Fifth Amended Master Answer and Affirmative Defenses, filed January 28, 2011 at ¶ 4)), State-Of-The-Art (*id*. at ¶ 4), Primary Assumption of Risk (*id*. at ¶ 10), No Cause in Fact (*id*. at ¶ 19), and No Injury (*id*. at ¶ 21).  The District has not addressed these or any other of ConocoPhillips's colorable and properly pled affirmative defenses and thus the District's Motion must fail.

### Unocal #5792, 4002 Ball Road, Cypress, California

### A.    Control of Unocal #5792

108.    ConocoPhillips owned Unocal #5792 from April 1997 through December 31, 2003.  During that time, the station was operated by independent businessmen Hayk "Bob" Bazik and Musa Sumawai.  (S. London Decl. at ¶ 4-5.)

109.    Hayk "Bob" Bazik operated Unocal #5792 from at least April, 1997 until June 6, 2003.  (S. London Decl. at ¶ 4.)  ConocoPhillips refers to Hayk "Bob" Bazik's role as operator of the site as a "dealer."  During his tenure as dealer, Mr. Bazik was responsible for the day-to-day operation of Unocal #5792.  (*Id*.)  Mr. Bazik understood that any leak or spill of gasoline should be cleaned up immediately, and that he had procedures in place to ensure this was done.  (Bazik Dep. (Aug. 24, 2010) at 172:2-174:13, 181:22-183:24, Anderson Decl., Ex. 34.)  It was the

operator's responsibility to monitor the underground storage tanks daily and to notify ConocoPhillips no later than eight hours after the detection of an unauthorized release. (*Id*. at 184:15-185:8; 198:12-198:17.)  There were no gasoline leaks at Unocal #5792 during the time that Mr. Bazik was a dealer at that site.  If gasoline had leaked at the site, Mr. Bazik would have reported the leak promptly pursuant to policy. (*Id*. at 185:20-186:3.)

110.    Musa Samawi operated Unocal #5792 from June 6, 2003 through December 31, 2003. (S. London Decl. at ¶ 5.)  During his tenure as dealer, Mr. Samawi was responsible for the day-to-day operation of Unocal #5792. (*Id*.)  Mr. Samawi was not deposed in this case.

### B.    Remediation Activities at Unocal #5792

111.    The District has not spent any money to perform cleanup, abatement, or remedial work at *any* MTBE site. (Herndon Dep. (Dec. 10, 2005) at 139:2-141:15, Anderson Decl., Ex. 30.)  Neither has the District determined that cleanup, abatement, or remediation work was necessary at any MTBE site. (*Id*.)

112.    As of July, 2008 (over five years *after* filing this lawsuit), the District had made no suggestions to a responsible party or any of their consultants to request that they take additional or different remedial actions at their site. (Bolin Dep. (July 31, 2008) at 459:20-460:6, Anderson Decl., Ex. 10.)  The District has not communicated any of its concerns regarding Unocal #5792 to the Orange County Health Care Agency, the Santa Ana Regional Water Quality Control Board, the station owner, or the station operator. (Bolin Dep. (Dec. 3, 2008) at 4428:13-4429:24, Anderson Decl., Ex. 10.)  Indeed, the District staff has not even discussed Unocal #5792 internally. (*Id*.)  The District still has not consulted with any regulatory agency concerning the alleged necessity of additional remediation work at Unocal #5792. (Bolin Dep. (Aug. 30, 2010) at 1420:23-1421:12, Anderson Decl., Ex. 1.)  Further, ConocoPhillips's corporate designee for remediation at Unocal #5792 has never received any complaints, comments or suggestions from the District concerning remediation at Unocal #5792, either prior to or after her 2008 deposition. (S. London Decl. at ¶ 6.)

113.    The District has evaluated Unocal #5792 solely by reviewing the station's site files; the District did not visit the site or conduct its own investigation of the site. (Bolin Dep. (Dec. 3, 2008) at 4390:10-4391:3, Anderson Decl., Ex. 10.)  The District is not sure whether alleged contamination from Unocal #5792 has been detected in any production wells, whether any such evidence exists or even whether or which wells might be threatened by the alleged contamination. (*Id*. at 4392:21-4393:24; 4395:15-4396:9.)  The District has no specific plans to further investigate Unocal #5792 and does not know what type of investigation it might conduct or when the investigation might occur. (*Id*. at 4425:5-4425:13.)

114.    The District still has not performed the analysis necessary for it to determine whether alleged contamination from Unocal #5792 has reached a production well. (Bolin Dep. (Aug. 30, 2010) at 1418:2-1419:15, Anderson Decl., Ex. 1.)  Indeed, the District does not have a specific plan or even a schedule for completing that analysis. (*Id*. at 1448:3-1449:12.)  Neither does the District have any plans for future remediation or other activities to address the alleged MTBE at Unocal #5792. (*Id*. at 1476:14-1476:18.)  Moreover, the District is still analyzing the "next steps" in its investigation (for example, the District must complete monitoring wells before

it will know if remediation is needed) and the District does not know the timetable for the completion of its investigation. (Bolin Dep. (Aug. 30, 2010) at 1550:14-1556:23, Anderson Decl., Ex. 1.) Hargis has not yet been deposed by Defendants, but was promised to be made available during expert discovery. (Aug. 10, 2010 H'rg Tr. 19:4-6, Anderson Decl. Ex. 54.) Until ConocoPhillips is able to examine Hargis at the deposition, it will not be in a position to present a full record of the important and available information demonstrating that the Hargis work was neither necessary nor reasonable, and that the District is not entitled to recover the costs incurred for that work.

115.     Remediation is ongoing at Unocal #5226 and is proceeding under the oversight of the Orange County Health Care Agency. (S. London Decl. at ¶ 7.) ConocoPhillips is in compliance with all OCHCA directives concerning this site, which is expected to be successfully brought to closure. (*Id.*)

### C.     MTBE Detections at Unocal #5792

116.     The 1998 MTBE detection cited by the District occurred in Monitoring Well No. B-1, where the depth to groundwater was 6.81 feet. (*See* Pltf. R. 56.1 Statement, Feb. 1, 2011 at ¶ 51.) The depth of the Principal Aquifer underlying the nearest drinking water production well to Unocal #5792 is approximately 340 feet, or 50 times deeper than the depth at which MTBE was detected in Monitoring Well B-1. (Bolin Dep. (Dec. 3, 2008) at 4400:17-4401:09, Ex. 309, Anderson Decl., Ex. 44.)

117.     Similarly, the 2010 MTBE detection cited by the District occurred in Monitoring Well No. 6, where the depth to groundwater is 9.12 feet. (*See* Pltf. R. 56.1 Statement, Feb. 1, 2011 at ¶ 51.) The depth of the Principal Aquifer underlying the nearest drinking water production well to Unocal #5792 is approximately 340 feet, or 37 times deeper than the depth at which MTBE was detected in Monitoring Well No. 6. (Bolin Dep. (Dec. 3, 2008) at 4400:17-4401:09, Ex. 309, Anderson Decl., Ex. 44.)

### <u>Unocal #5226, 6322 Westminster Blvd., Westminster, California</u>

### A.     Remediation Activities at Unocal #5226

118.     The District has not spent any money to perform cleanup, abatement, or remedial work at *any* MTBE site. (Herndon Dep. (Dec. 10, 2005) at 139:2-141:15, Anderson Decl., Ex. 30.) Neither had the District determined that cleanup, abatement, or remediation work was necessary at any MTBE site. (*Id.*) In August 2008, the District still did not know how much money it expected to spend on the individual stations within focus plumes 2, 7, and 9 (including Unocal #5226), or when it would be able to evaluate and determine the costs, as the District didn't know how long it would take to decide what it would need to do to address the contamination either in the plumes generally or with regard to any specific station. (Bolin Dep. (July 31, 2008) at 497:23-499:1, Anderson Decl., Ex. 10.)

119.     As of July 2008 (over 5 years *after* filing this lawsuit), the District had made no contact with Unocal Corporation, Union Oil, Tosco, ConocoPhillips, any other potentially responsible party, or any of their consultants to request that they take additional or different

remedial actions at their site.  (Bolin Dep. (July 31, 2008) at 450:19-452:9; 459:20-460:6, Anderson Decl., Ex. 10.)  As of August 2008, the District had not communicated any of its concerns regarding Unocal #5226 to the Orange County Health Care Agency or to the station operator.  (Bolin Dep. (Aug. 20, 2008) at 916:22-917:19., Anderson Decl., Ex. 10.)  The District had not visited the site or installed any monitoring wells in connection with the site.  (*Id.*)  By 2010, the District still had not consulted with any regulatory agency concerning additional remediation work at Unocal #5226.  (Bolin Dep. (Aug. 30, 2010) at 1511:5-1511:12, Anderson Decl., Ex. 1.)  ConocoPhillips's corporate designee for remediation at Unocal #5226 has never received any complaints, comments or suggestions from the District concerning remediation at Unocal #5226, either prior to or after her 2008 deposition.  (S. London Decl. at ¶ 6.)

120.    The District admits that it has not been actively involved in overseeing or making recommendations on the remediation activities at any gasoline release site in Orange County. (Bolin Dep. (July 31, 2008) at 450:19-452:9; 459:20-460:6, Anderson Decl., Ex. 10.)  (*Id.* at 457:17-458:17.)  Indeed, the District relies on the regulatory agencies to oversee these activities. (*Id.*)

121.    The District has not performed any cleanup, abatement, or remediation work at Unocal #5226.  (Bolin Dep. (Aug. 20, 2008) at 918:19-919:13, Anderson Decl., Ex. 10.)  The District still has not completed its analysis of Unocal #5226 or determined what action (if any) it might need to take.  (*Id.*)  The District has not performed any modeling or fate and transport analysis to determine the disposition of the alleged contamination from Unocal #5792 and has no timetable for when that modeling might begin.  (*Id.* at 896:1-896:21.)  The District still has spent no money to remediate the alleged MTBE contamination at Unocal #5792, and still can not identify any specific steps it plans to take to remediate the alleged contamination at the site. (*Id.* at 890:18-891:4, 892:5-893:7, 914:18-915:17.)

122.    The District is still investigating the site and still does not have a remedial action plan.  (Bolin Dep. (Aug. 30, 2010) at 1520:9-1520:25, Anderson Decl., Ex. 1.)  Indeed, the District continues to evaluate the alleged contamination at Unocal #5226 and assess which sites it wanted to investigate further.  (*Id.* at 1543:15-1544:1.)  Moreover, the District is still analyzing the "next steps" in its investigation (for example, the District must complete monitoring wells before it will know if remediation is needed) and the District does not know the timetable for the completion of its investigation.  (Bolin Dep. (Aug. 30, 2010) at 1550:14-1556:23, Anderson Decl., Ex. 1.)  Hargis has not yet been deposed by Defendants, but was promised to be made available during expert discovery.  (Aug. 10, 2010 H'rg Tr. 19:4-6, Anderson Decl. Ex. 54.) Until ConocoPhillips is able to examine Hargis at the deposition, it will not be in a position to present a full record of the important and available information demonstrating that the Hargis work was neither necessary nor reasonable, and that the District is not entitled to recover the costs incurred for that work.

123.    In May 2010, Conestoga-Rovers & Associates ("CRA") submitted a Closure Request to OCHCA for Unocal #5226 on behalf of ConocoPhillips, requesting environmental case closure and a finding that no further action is required by ConocoPhillips relating to the petroleum release at the site.  (May 10, 2010 Closure Request from CRA to Orange County Health Care Agency (excerpts only), S. London Decl. at ¶ 8, Ex. A.)  The District did not object or otherwise provide input on the closure request.  (Bolin Dep. (Aug. 30, 2010) at 1512:4-

1512:17, Anderson Decl., Ex. 1.)  CRA concluded that the "MTBE is below the California Secondary MDL of 5.0 ug/L for all Site groundwater monitoring wells," and that the "historical groundwater data indicate that the conversion of MTBE to TBA is complete and any remaining TBA will become further biologically degraded through dispersion and dilution within a reasonable time frame."  (May 10, 2010 Closure Request from CRA to Orange County Health Care Agency at p. 16, S. London Decl. at ¶ 8, Ex. A.)  CRA further concludes that the "dissolved-phase hydrocarbon plume in the vicinity of off-Site well MW-15 has likely originated from the up-gradient Thrifty service station to the north …." (*Id*.)  Finally, CRA finds that "any remaining hydrocarbons in soil are unlikely to migrate or leach into groundwater, create a future hazard or pose a significant future risk to off-Site receptors, on-Site human health, local surface water, or existing adjacent properties." (*Id*.)

124.    Remediation has proceeded at this site under the oversight of Orange County Health Care Agency.  (S. London Decl. at ¶ 8.)  ConocoPhillips is in compliance with all OCHCA directives concerning this site, which is expected to be successfully brought to closure. (*Id*.)

### B.    MTBE Detections at Unocal #5226

125.    The 1996 MTBE detection cited by the District occurred in Monitoring Well No. 12, where the depth to groundwater was not measured.  (*See* Pltf. R. 56.1 Statement, Feb. 1, 2011 at ¶ 51.)  Later detections show the groundwater depth at Monitoring Well No. 12 to fluctuate between 7.7 and 9.04 feet.  (*See id*.)  The depth of the Principal Aquifer underlying the nearest drinking water production well to Unocal #5226 is approximately 169 feet, or nearly 19 times deeper than the depth at which samples were generally taken from Monitoring Well No. 12. (Bolin Dep. (Aug. 20, 2008) at 871:18-872:18, Ex. 47, Anderson Decl., Ex. 45.)

126.    The 2010 MTBE detection cited by the District occurred in Monitoring Well No. 11, where the depth to groundwater is 10.09 feet.  (*See* Pltf. R. 56.1 Statement, Feb. 1, 2011 at ¶ 56.)  The depth of the Principal Aquifer underlying the nearest drinking water production well to Unocal #5226 is approximately 169 feet, or nearly 17 times deeper than the depth at which MTBE was detected in Monitoring Well No. 11.  (Bolin Dep. (Aug. 20, 2008) at 871:18-872:18, Ex. 47, Anderson Decl., Ex. 45.)  Notably, the detection cited by the District at MW-11 is 4.6 ppb – which is *below* the California Secondary MDL of 5.0 ug/L.

### UNION OIL COMPANY AND UNOCAL CORPORATION

127.    As an initial matter, Union Oil has raised many colorable affirmative defenses, including federal preemption (Union Oil's Ninth Am. Master Ans. and Aff. Def., filed Jan. 31, 2011, ("Union Oil NAA") at p. 15, ¶ 1), waiver (Union Oil NAA at p. 19, ¶ 32) and failure to mitigate (Union Oil NAA at p. 22, ¶ 65).)  The District has not addressed these or any other of Union Oil's colorable and properly pled affirmative defenses and thus the District's Motion must fail. Additionally, Unocal Corporation has not owned or operated any service stations, terminals, refineries, pipelines, bulk plants, or other similar facilities for marketing or distributing gasoline in the relevant geographic areas during the relevant time period.  (M. Clark Decl. in resp. to CMO No. 4 at ¶ 4 (Dec. 21, 2004), Anderson Decl., Ex. 64.)  For this reason, the District has

presented no facts related to Unocal Corporation.  As a result, there is a fact issue on all causes of action in the Motion as they relate to Unocal Corporation (at a minimum).

### Unocal Station # 5376, 8971 Warner Ave., Huntington Beach, California

#### A.    Control of Unocal #5376

128.    Union Oil owned the USTs at Unocal #5376 from before 1986 until 1993 and owned the property from before 1986 until 1998, though the station closed in March 1992. (Declaration of Hongyan Xun (Sept. 10, 2010) at ¶7, Anderson Decl., Ex. 8.)  During this time— from before 1986 until 1992—Gasper Farace, an independent businessman, operated Unocal #5376.  *Id.*  (Farace Dep. (Aug. 18, 2010) at 17:4-17:23, Anderson Decl., Ex. 35.)

129.    Mr. Farace testified that while he was operating Unocal #5376 in the late 1980s, he recalled a customer coming into the station with a fuel leak that caused gasoline to pour onto the ground.  (Farace Dep. (Aug. 18, 2010) at 74:11-75:10, Anderson Decl., Ex. 35.)  Other than this, the record contains no evidence or indication of when any release occurred at Unocal #5376, or any facts giving rise to any release or what caused it.

130.    Mr. Farace also testified that part of his job was to take readings of gasoline and notify Union Oil representatives if he found anything out of the ordinary.  (Farace Dep. (Aug. 18, 2010) at 161:7-162:13, Anderson Decl., Ex. 35.)  Mr. Farace further testified that he knew he was supposed to watch for gasoline leaks and notify Union Oil immediately if he found one. (*Id.*)

#### B.    Remediation at Unocal #5376

131.    The District does not know how it would propose remediating the alleged contamination at Unocal #5376.  (Bolin Dep. (Nov. 6, 2008) at 2797:2-18, Anderson Decl., Ex. 10.)

132.    The District has not told OCHCA or any other regulators that the District believes there has been a release of gasoline at the site.  (Bolin Dep. (Aug. 23, 2010) at 699:5-24, Anderson Decl., Ex. 1.)  Nor has the District had any general contact with OCHCA, DHS, or the Regional Board about Unocal #5376.  (*Id.* at 711:15-712:1.)

133.    The District has monitored analytical results at Unocal #5376 and has considered it for the District's upcoming groundwater investigation.  (Bolin Dep. (Aug. 23, 2010) at 686:2-16, Anderson Decl., Ex. 1.)   The District has not performed any remediation at Unocal #5376, however.  (Bolin Dep. (Aug. 23, 2010) at 731:11-23, Anderson Decl., Ex. 1.) The District has only incurred costs for the District staff's labor in evaluating Unocal #5376.  (Bolin Dep. (Aug. 23, 2010) at 715:4-716:10, Anderson Decl., Ex. 1.)

134.    Hargis has not yet been deposed by Defendants, but was promised to be made available during expert discovery.  (Aug. 10, 2010 H'rg Tr. 19:4-6, Anderson Decl. Ex. 54.) Until Union Oil is able to examine Hargis at the deposition, it will not be in a position to present a full record of the important and available information demonstrating that the Hargis work was

neither necessary nor reasonable, and that the District is not entitled to recover the costs incurred for that work.

135.    Remediation at Unocal #5376 has been occurring since 1989 through the present and is overseen by OCHCA.  (Molla Decl. at ¶ 15.)  In September 1989, three underground storage tanks were excavated and removed from Unocal #5376, and in 1990, four onsite groundwater monitoring wells were installed.  (Molla Decl. at ¶ 16.)  In December 1991, a vapor extraction test was conducted.  (*Id*.)  A vapor extraction system was installed and began operating at Unocal #5376 in 1996 and one year later, two nested vapor extraction/air sparge wells were installed at this site.  (*Id*.)  In 1998, an air sparge system supplemented remediation. (*Id*.)  The operation of the two-phase extraction system resulted in the removal of approximately 1.24 million gallons of groundwater and the removal of approximately 37,370 pounds of hydrocarbons in the vapor phase.  (*Id*.)

136.    Natural attenuation is currently being used at Unocal #5376, and OCHCA approved the use of depth discrete groundwater sampling at the site.  (Molla Decl. at ¶ 17.) MTBE detections have gone down at this site, and the remediation conducted at Unocal #5376 has been effective and the alleged contamination at Unocal #5376 poses no risk to the groundwater or offsite sensitive receptors.  (Molla Decl. at ¶ ¶ 18-19.)  And the District has brought forth no evidence that the alleged contamination is outside the reach of the current remediation at the site.

### C.    MTBE Detections at Unocal #5376

137.    The July 1, 1996 MTBE detection cited by the District occurred in Monitoring Well No. 5, where the depth to groundwater was 10.7 feet.  (*See* Pltf. R. 56.1 Statement, Feb. 1, 2011 at ¶ 19.  *See also* Fourth Quarter 2007 Groundwater Monitoring Report for Unocal #5376 at pg. 6, Table 2, Anderson Decl., Ex. 36.)  The depth of the Principal Aquifer underlying the nearest drinking water production well to Unocal #5376 is approximately 192 feet, or 19 times deeper than the depth at which MBTE was detected in Monitoring Well No. 5. (Ex. 180 to Bolin Dep. (Nov. 6, 2008), Anderson Decl., Ex. 57.)  The District has brought forth no evidence that this detection or any other MTBE from this station has reached the Principal or Deep aquifers, that it has gone offsite, or that it is outside the reach of current remediation at the site.

138.    The June 4, 1998 MTBE detection cited by the District occurred in Monitoring Well No. 17, where the depth to groundwater was 14.42 feet.  (*See* Pltf. R. 56.1 Statement, Feb. 1, 2011 at ¶ 19.  *See also* Fourth Quarter 2007 Groundwater Monitoring Report for Unocal #5376 at pg. 21, Table 2, Anderson Decl., Ex. 36.) The depth of the Principal Aquifer underlying the nearest drinking water production well to Unocal #5376 is approximately 192 feet, or 13 times deeper than the depth at which MBTE was detected in Monitoring Well No. 17. (Ex. 180 to Bolin Dep. (Nov. 6, 2008), Anderson Decl., Ex. 57.)  The District has brought forth no evidence that this detection or any other MTBE from this station has reached the Principal or Deep aquifers, that it has gone offsite, or that it is outside the reach of current remediation at the site.

139.    The June 15, 2010 MTBE detection cited by the District occurred in Monitoring Well No. 13A, where the depth to groundwater was 13.29 feet.  (*See* Pltf. R. 56.1 Statement, Feb.

1, 2011 at ¶ 19.  *See also* Second Quarter 2010 Groundwater Monitoring Report for Unocal #5376 at pg. 1, Table 1, Anderson Decl., Ex. 37.)  The depth of the Principal Aquifer underlying the nearest drinking water production well to Unocal #5376 is approximately 192 feet, or 14 times deeper than the depth at which MBTE was detected in Monitoring Well No. 13A. (Ex. 180 to Bolin Dep. (Nov. 6, 2008), Anderson Decl., Ex. 57.)  The District has brought forth no evidence that this detection or any other MTBE from this station has reached the Principal or Deep aquifers, that it has gone offsite, or that it is outside the reach of current remediation at the site.

140.    As of December 2010, MTBE is no longer being detected above the secondary MCL of 5 ppb at Unocal #5123.  (*See* Fourth Quarter 2010 Groundwater Monitoring Report for Unocal #5376 at pg. 1, Table 1, Anderson Decl., Ex. 38.)

### Unocal Station #5123, 14972 Springdale, Huntington Beach, California

#### A.    Control of Unocal #5123

141.    Union Oil owned the USTs at Unocal #5123 from before 1986 until 1994 and owned the property from before 1986 until the station was demolished in 1994.  (Hongyan Xun Decl. (July 22, 2010) at ¶5, Anderson Decl., Ex. 39.)  During this time, Unocal #5123 was operated by Sang Kwon, an independent dealer.  (Xun Decl. (Sept. 10, 2010) at ¶8, Anderson Decl., Ex. 8.  *See also* Kwon Dep. (Aug. 23, 2010) at 5:24-6:3, 6:22-7:16, Anderson Decl., Ex. 40. )

142.    Mr. Kwon testified that as a dealer, he was responsible for the dispensers, including the nozzles and the hoses on the outside of the dispensers, at Unocal #5123.  (Kwon Dep. (Aug. 23, 2010) at 69:25-70:5, Anderson Decl., Ex. 40.)  Mr. Kwon further testified that while he was leasing Unocal #5123, those nozzles would sometimes drip, for example, when a customer would pull the nozzle from his car too quickly.  (*Id*. at 104:14-105:22.)  Other than this, the record contains no evidence or indication of when any release occurred at Unocal #5123, or any facts giving rise to any release or what caused it.

#### B.    Remediation at Unocal #5123

143.    The District does not know when it will determine the potential migration path of the alleged contamination at Unocal #5123.  (Bolin Dep. (Aug. 21, 2008) at 1115:7-1116:12, Anderson Decl., Ex. 10.)  Indeed, the District cannot trace contamination in any production well to Unocal #5123.  (*Id*. at 1133:9-16.)  And the District has no actions planned in the future for Unocal #5123.  (*Id*. at 1140:14-1141:7.)

144.    The District has not taken any specific action regarding the remediation of the alleged contamination at Unocal #5123.  (Bolin Dep. (Aug. 21, 2008) at 1131:12-21,  Anderson Decl., Ex. 10.)  Further, the District has not discussed this site with OCHCA.  (*Id*. at 1131:23-1132:25.)

145.    The District has not performed any remediation at Unocal #5123.  (Bolin Dep. (Aug. 19, 2010) at 642:17-643:4, Anderson Decl., Ex. 1.)  The District does not know what sort of remediation activities it will perform at Unocal #5123 (if any).  (*Id*. at 645:25-646:7.)

Similarly, the District is unable to quantify any expenses related to Unocal #5123.  (Bolin Dep. (Aug. 21, 2008) at 1136:1-7, Anderson Decl., Ex. 10.)

146.    Hargis has not yet been deposed by Defendants, but was promised to be made available during expert discovery.  (Aug. 10, 2010 H'rg Tr. 19:4-6, Anderson Decl. Ex. 54.) Until Union Oil is able to examine Hargis at the deposition, it will not be in a position to present a full record of the important and available information demonstrating that the Hargis work was neither necessary nor reasonable, and that the District is not entitled to recover the costs incurred for that work.

147.    Remediation has been occurring at Unocal #5123 since at least 1990 through the present and is overseen by OCHCA. (Molla Decl. at ¶ 20.)  In August 1990, manual free product recovery was initiated at Unocal #5123, followed by an automatic groundwater extraction and free-product recovery system. (Molla Decl. at ¶ 21.)   Between 1998 and 2001, approximately 32 monitoring wells were installed at Unocal #5123.  (*Id.*)  In 2002, a dual-phase extraction system was installed at Unocal #5123 and has operated intermittently since then.  (Molla Decl. at ¶ 22.)

148.    MTBE detections at Unocal #5123 have gone down from their historical maximums.  (Molla Decl. at ¶ 23.)  The remediation conducted at the site has been effective and the alleged contamination at Unocal #5123 poses no risk to the groundwater or offsite sensitive receptors. (Molla Decl. at ¶ 24.)  And the District has brought forth no evidence that the alleged contamination is outside the reach of the current remediation at the site.

### C.    MTBE Detections at Unocal #5123

149.    The February 29, 1996 MTBE detection cited by the District occurred in Monitoring Well No. 8, where the depth to groundwater was 7.05 feet.  (*See* Pltf. R. 56.1 Statement, Feb. 1, 2011 at ¶ 19.  *See also* Second Quarter 2007 Groundwater Monitoring Report for Unocal #5123 at pg. 10, Table 2, Anderson Decl., Ex. 41.)  The depth of the Principal Aquifer underlying the nearest drinking water production well to Unocal #5123 is approximately 187 feet, or 26 times deeper than the depth at which MBTE was detected in Monitoring Well No. 8. (Ex. 60 to Bolin Dep. (Aug. 21, 2008), Anderson Decl., Ex. 58.)  The District has brought forth no evidence that this detection or any other MTBE from this station has reached the Principal or Deep aquifers, that it has gone offsite, or that it is outside the reach of current remediation at the site.

150.    The August 5, 2010 MTBE detection cited by the District occurred in Monitoring Well No. 29L, where the depth to groundwater was 10.59 feet.  (*See* Pltf. R. 56.1 Statement, Feb. 1, 2011 at ¶ 19.  *See also* Third Quarter 2010 Groundwater Monitoring Report for Unocal #5123 at pg. 1, Table 1, Anderson Decl., Ex. 42. )  The depth of the Principal Aquifer underlying the nearest drinking water production well to Unocal #5123 is approximately 187 feet, or 17 times deeper than the depth at which MBTE was detected in Monitoring Well No. 29L. (Ex. 60 to Bolin Dep. (Aug. 21, 2008), Anderson Decl., Ex. 58.)  The District has brought forth no evidence that this detection or any other MTBE from this station has reached the Principal or Deep aquifers, that it has gone offsite, or that it is outside the reach of current remediation at the site.

# G&M OIL COMPANY, INC.

## G&M Oil # 4

151.    The District has never informed any regulatory agencies about any actual or suspected releases of MTBE at G&M Oil # 4.  (Bolin Dep. (Feb. 24, 2011) at 11:6-12:6, Anderson Decl., Ex. 43.)

152.    The District does not know whether any MTBE in any of the detection wells have come from G&M Oil #4.  (Bolin Dep. (Feb. 24, 2011) at 22:21-23:18, Anderson Decl., Ex. 43)

153.    No governmental agency, including the District, has made any conclusion or determination that MTBE has escaped remediation from G&M #4 and has gotten into a production well.  (Bolin Dep. (Feb. 24, 2011) at 36:10-15, Anderson Decl., Ex. 43.)

154.    The District is not aware of any drinking water wells that have been contaminated with MTBE or TBA relating to G&M #4 and there have been no complaints about the odor or taste relating to MTBE in the drinking water.  (Bolin Dep. (Feb. 24, 2011) at 15:5-22; 75:8-76:23, Anderson Decl., Ex. 43.)

155.    The District does not have any complaints about the work done by the oversight agencies concerning G&M # 4.  (Bolin Dep. (Feb. 24, 2011) at 44:3-9, Anderson Decl., Ex. 43.)

156.    The District has not exercised any active removal of contamination at G&M # 4. (Bolin Dep. (Feb. 24, 2011) at 44:10-21, Anderson Decl., Ex. 43.)

157.    To date, the extent of the District's activity at G&M # 4 has been limited to evaluating previous work done by the District's prior consultant Komex and preparing a work plan for discrete investigation of the Bellweather Plume sites.  (Bolin Dep. (Feb. 24, 2011) at 49:14-50:3, Anderson Decl., Ex. 43.)

158.    The investigation costs that were approved by the District were for all sites, and not any specific site. (Bolin Dep. (Feb. 24, 2011) at 51:5-52:10, Anderson Decl., Ex. 43.)

159.    The work by the District's consultants, Hargis, was not site specific and it is impossible to determine how much money was spend on any particular site.  (Bolin Dep. (Feb. 24, 2011) at 108:12-109:5, Anderson Decl., Ex. 43.)

160.    The District has not performed any modeling to determine whether MTBE from G&M #4 has gotten into drinking water and has not made such conclusion.  (Bolin Dep. (Feb. 24, 2011) at 75:8-76:23, Anderson Decl., Ex.43.)

161.    The historical analytical groundwater data on which the District relies when compared with more current analytical groundwater data for the same monitoring wells shows that the MTBE detected has been substantially reduced at G&M # 4:

| G&M #4 | | | |
|---|---|---|---|
| **Monitoring Well** | **Sample Date** | **ppb** | **Citation** |
| 2 | Jun-96 | 2,800 | Axline, Ex. 31, page 2. |
| 2 | Dec-06 | < 5 | Anderson Decl., Ex. 53, attaching OCWD-MTBE-001-255823 |
| | | | |
| 17 | Jun-99 | 22,600 | Anderson Decl., Ex. 53, attaching OCWD-MTBE-001-255873 |
| 17 | Sep-10 | 191 | Axline, Ex. 31, page 3. |

### G&M Oil # 24

162.    The District has never informed any regulatory agencies about any actual or suspected releases of MTBE at G&M Oil # 24.  (Bolin Dep. (Feb. 24, 2011) at 92:5-93:5, Anderson Decl., Ex. 43.)

163.    No governmental agency has made any conclusion or determination that MTBE has escaped remediation from G&M #24 and has gotten into a production well or that the current remediation efforts at this site are inadequate.  (Bolin Dep. (Feb. 24, 2011) at 98:4-99:8, Anderson Decl., Ex. 43.)

164.    The District is not aware of any drinking water wells that have been contaminated with MTBE or TBA relating to G&M # 24 or threatened with contamination and there have been  no complaints about the odor or taste relating to MTBE in the drinking water.  (Bolin Dep. (Feb. 24, 2011) at 93:14-95:8, Anderson Decl., Ex. 43.)

165.    The District does not have any complaints about the work done by the oversight agencies concerning G&M # 24.  (Bolin Dep. (Feb. 24, 2011) at 105:15-106:5, Anderson Decl., Ex. 43.)

166.    The District does not know whether any additional remediation activity is necessary or appropriate for G&M # 24.  (Bolin Dep. (Feb. 24, 2011) at 103:7-23, Anderson Decl., Ex. 43.)

167.    There may be other possible sources of MTBE contamination in the groundwater, other than gas stations, such as maintenance shops and manufacturing facilities.  (Bolin Dep. (Feb. 24, 2011) at 97:11-98:2, Anderson Decl., Ex. 43.)

168.   The historical analytical groundwater data on which the District relies when compared with more current analytical groundwater data for the same monitoring wells shows that the MTBE detected has been substantially reduced at G&M # 24:

| G&M #24 | | | |
|---|---|---|---|
| **Monitoring Well** | **Sample Date** | **ppb** | **Citation** |
| 1 | Jun-01 | 1,210,000 | Axline, Ex. 33, page 4. |
| 1 | Aug-10 | 5.4 | Axline, Ex. 33, page 3. |
| | | | |
| 3 | Jun-98 | 152,000 | Anderson Decl., Ex. 52, attaching OCWD-MTBE-001-251180 |
| 3 | Aug-10 | 10.6 | Axline, Ex. 33, page 3. |
| | | | |
| 4 | Sep-98 | 220,000 | Anderson Decl., Ex. 52, attaching OCWD-MTBE-001-251182 |
| 4 | Aug-10 | 10 | Axline, Ex. 33, page 3. |

## SHELL

### Shell #6502, 6502 Bolsa Avenue, Huntington Beach, California

#### A.   Remediation Activities at Shell #6502

169.   As of October 2008 (over five years *after* filing this lawsuit), the District had not communicated any concerns regarding the remediation activities at Shell #6502 to the OCHCA, the Santa Ana Regional Water Quality Control Board ("RWQCB"), the Shell Defendants, or the Shell Defendants' environmental consultants.  (Bolin Dep. (Oct. 21, 2008) at 1516:25-1517:18; *id.* at 1525:12-13, Anderson Decl., Ex. 10.)  The District still has not had any communication with any regulatory agency, the Shell Defendants or the Shell Defendants' consultants concerning the alleged need for additional remediation work at Shell #6502.  (Bolin Dep. (Aug. 30, 2010) at 1651:3-1651:23, Anderson Decl., Ex. 1.)  The District has not taken any steps to remediate the contamination at Shell #6502 (Bolin Dep. (Oct. 21, 2008) at 1518:10-12) Anderson Decl., Ex. 10), and has not determined that any of the remedial activities undertaken at Shell #6502 should not have been performed.  (*Id.* at 1519:13-17.)  Indeed, the District admitted that the investigation work that it had done at Shell #6502 was not a "remedial investigation." (Bolin Dep. (Oct. 21, 2008) at 1524:19-20, Anderson Decl., Ex. 10) ("we're not conducting a

remediation investigation at this point in time.")  Remediation is ongoing at Shell #6502 under the oversight of OCHCA, and there is no evidence that Shell #6502 will not successfully be brought to regulatory closure.  (K. Lyons Decl. at ¶ 5.)

170.   The Shell Defendants' corporate designee for remediation at Shell #6502 has never received any complaints, comments or suggestions from District personnel concerning remediation at Shell #6502, either prior to or after her 2009 and 2010 depositions.  (K. Lyons Decl. at ¶ 4.)

171.   The nearest drinking water production well to Shell #6502 is HB-1, located approximately 1,800 feet due west of the site; as of August 30, 2010, HB-1 had never had a detection of MTBE.  (Bolin Dep. (Oct. 21, 2008) at 1506:19-1507:18, Anderson Decl., Ex. 10; Bolin Dep. (Aug. 30, 2010) at 1571:7-9, Anderson Decl., Ex. 1.)

172.   As of August 30, 2010, the District still had not performed the requisite analysis to determine whether alleged contamination from Shell #6502 had reached a drinking water production well.  (Bolin Dep. (Oct. 21, 2008) at 1508:7-12, Anderson Decl., Ex. 10; Bolin Dep. (Aug. 30, 2010) at 1637:9-23, Anderson Decl., Ex. 1.)

### C.   MTBE Detections at Shell #6502

173.   The 1996 MTBE detection cited by the District occurred in Monitoring Well No. B-9, where the depth to groundwater was 4.72 feet.  (*See* Pltf. R. 56.1 Statement, Feb. 1, 2011, at ¶ 41.  *See also* Third Quarter 2010 Groundwater Monitoring and Status Report for Shell #6502 at Table 2, pg. 11 of 38, Anderson Decl., Ex. 59.)

174.   Similarly, the September 2010 MTBE detection cited by the District occurred in Monitoring Well No. B-22, which is 25.48 feet deep and where the depth to groundwater was 6.04 feet.  (*See* Pltf. R. 56.1 Statement, Feb. 1, 2011, at ¶ 41.  *See also* Third Quarter 2010 Groundwater Monitoring and Status Report for Shell #6502 at Table 2, pg. 26 of 38, Anderson Decl., Ex. 59.)

175.   Production well HB-1, the nearest drinking water production well to Shell #6502, is screened at 258-297 ft. bgs., or about 60 times deeper than the depth at which MTBE was detected in MW-B-9 and 10 times deeper than the depth at which MTBE was detected in MW-B-22.  (Ex. 90 to Bolin Dep. (Oct. 21, 2008) at OCWD-MTBE-001-189261, Anderson Decl., Ex. 60.)

### Texaco #121681, 9475 Warner Avenue, Fountain Valley, California

### A.   Control of Texaco #121681

176.   For some time after 1992, the station located at 9475 Warner Ave. was operated by Edward Saad.  (Saad Dep. (Aug. 16, 2010) at p. 76, Anderson Decl., Ex. 61.)  Mr. Saad testified that, in the time that he operated the station, he could not recall any spills of gasoline at the site.  (*Id*. at p. 114.)  In addition, Mr. Saad testified that he understood that it was important to keep gasoline from reaching the water table, where it could impact groundwater.  (*Id*. at 116.)

### B.        Remediation Activities at Texaco #121681

177.      As of November 2008 (over five years *after* filing this lawsuit), the District had not communicated any concerns regarding the remediation activities at Texaco #121681 to the OCHCA, the Santa Ana Regional Water Quality Control Board, the Shell Defendants, or the Shell Defendants' environmental consultants.  (Herndon Dep. (Nov. 17, 2008) at 3271:20-3272:13, Anderson Decl., Ex. 24.)  The District still has not had any communication with any regulatory agency, the Shell Defendants, or the Shell Defendants' consultants concerning the alleged need for additional remediation work at Texaco #121681.  (Herndon Dep. (Aug. 27, 2010) at 1318:4-1319:3, Anderson Decl., Ex. 3.)   The District has not undertaken any remediation work at Texaco #121681.  (Herndon Dep. (Nov. 17, 2008) at 3273:9-23, Anderson Decl., Ex. 24.) Remediation is ongoing at Texaco #121681 under the oversight of OCHCA, and there is no evidence that Texaco #121681 will not successfully be brought to regulatory closure. (K. Lyons Decl. at ¶ 5.)

178.      The Shell Defendants' corporate designee for remediation at Texaco #121681 has never received any complaints, comments, or suggestions from District personnel concerning remediation at Texaco #121681, either prior to or after her 2009 and 2010 depositions.  (K. Lyons Decl. at ¶ 4.)

179.      The District still has not performed the requisite analysis to determine whether alleged contamination from Texaco #121681 had reached a drinking water production well. (Herndon Dep. (Nov. 17, 2008) at 3264:15-18, Anderson Decl., Ex. 24; (Herndon Dep. (Aug. 27, 2010) at 1308:11-1309:14, Anderson Decl., Ex. 3.)

### C.        MTBE Detections at Texaco #121681

180.      The 1997 MTBE detection cited by the District occurred in Monitoring Well No. 1, where the depth to groundwater was approximately 10 feet.  (*See* Pltf. R. 56.1 Statement, Feb. 1, 2011, at ¶ 45.  *See also* Third Quarter Groundwater Monitoring and Status Report for Texaco #121681 at Table 3, pg. 1 of 8, Anderson Decl., Ex. 62.)

181.      Similarly, the September 2010 MTBE detection cited by the District occurred in Monitoring Well 23, which is 19.85 feet deep and where the depth to groundwater was 11.58 feet.  (*See* Pltf. R. 56.1 Statement, Feb. 1, 2011, at ¶ 45.  *See also* Third Quarter Groundwater Monitoring and Status Report for Texaco #121681 at Table 3, pg. 7 of 8, Anderson Decl., Ex. 62.)

182.      Wells NB-DOLS/1 and NB-DOLD/1 are the two nearest drinking water production wells to Texaco #121681.  (Ex. 98 to Herndon Dep. (Aug. 27, 2010), Anderson Decl., Ex. 63.)  Well NB-DOLS/1 screened between 201-356 ft. bgs., or 20-35 times deeper than the depth at which MTBE was detected in MW-1 and 10-18 times deeper than the depth at which MTBE was detected in MW-23.  NB-DOLD/1 screened between 399-739 ft. bgs., or 40-74 times deeper than the depth at which MTBE was detected in MW-1 and 20-37 times deeper than the depth at which MTBE was detected in MW-23.

Respectfully submitted,

Charles C. Correll, Jr.
King & Spalding LLP
101 Second Street, Suite 2300
San Francisco, CA 94105
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

Jeremiah J. Anderson
King & Spalding LLP
1100 Louisiana, Suite 4000
Houston, Texas 77002
Telephone: (713) 751-3200
Facsimile: (713) 751-3290

Richard E. Wallace, Jr.
William F. Hughes
Wallace King Domike & Branson PLLC
1050 Thomas Jefferson Street, N.W.
Washington, D.C. 20007
Telephone: (202) 204-1000
Facsimile: (202) 204-1001

*Attorneys for Defendants Chevron U.S.A. Inc. (individually and d/b/a Chevron Products Co. and Chevron Chemical Co.), Chevron Corporation (f/k/a ChevronTexaco Corporation), Unocal Corporation, and Union Oil Company of California*

## Certificate of Service

I hereby certify that on March 15, 2010 a true, correct, and exact copy of the foregoing document was served on all counsel via LexisNexis File & Serve.

Jeremiah J. Anderson

**<u>ATTACHMENT A</u>**
**Opposition to Motion for Summary Judgment**
*Defendants Joining in Response to the District's 56.1 Statement and*
*Statement of Material Facts as to which there are Genuine Disputes*

Chevron U.S.A. Inc
Chevron Corporation
ExxonMobil Corporation
ExxonMobil Oil Corporation
Atlantic Richfield Company
BP Products North America, Inc.
BP West Coast Products LLC
ConocoPhillips Company, as successor-in-interest to defendant Tosco Corporation and Phillips
      Petroleum Corporation
Shell Oil Company
Equilon Enterprises LLC (d/b/a Shell Oil Products US TMR Company)
Union Oil Company of California
Unocal Corporation
G&M Oil Company