**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: Methyl *tertiary* Butyl Ether ("MtBE") Products Liability Litigation<br><br>This Document Relates To:<br><br>*Crescenta Valley Water District v. Exxon Mobil Corporation, et al.*<br>Case No. 07 Civ. 9453 (SAS) | Master File No. 1:00-1898<br>MDL No. 1358 (SAS) |

**BP DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO CERTAIN CVWD WELLS**

## INTRODUCTION/STATEMENT OF FACTS

This Motion For Partial Summary Judgment differs from the Motion contemplated by BP and the Court during the March 10, 2011 Pre-Motion hearing. It is necessitated by the failure of counsel for Crescenta Valley Water District ("CVWD") to confirm through stipulation that CVWD is not asserting claims for wells its expert Dr. Stephen Wheatcraft has modeled as having zero (0) parts per billion ("ppb") MTBE concentrations from the former ARCO station.[1] BP is prepared to forego seeking additional relief from this Court under Fed.R.Civ.P. Rule 56, and will instead attempt to resolve the case with CVWD through mediation.[2] However, BP is unquestionably entitled to partial summary judgment as to wells for which CVWD's own expert has modeled zero (0) ppb MTBE contributions by the former ARCO station, and CVWD's counsel has acknowledged repeatedly in open court: "That is not a claim." (Cox Decl., Ex. 6, March 10, 2011 Tr. 18:13-17; 19:9-12; 30:21 - 31:2.)

On July 2, 2010, Plaintiff's expert Dr. Wheatcraft served his expert report in this case. That report contained a separate computer model run for the concentrations of MTBE allegedly contributed to all CVWD wells by the former ARCO Station. (Cox Decl., ¶ 4, Ex. 4.) Dr. Wheatcraft's model attributes contributions of zero (0) ppb by the former ARCO station to CVWD Wells 1, 6, 7, 8, 9, 10, 11, 12, 14 and 15 during any and all periods when those wells have actually reported MTBE at concentrations above either California's 5 ppb taste and odor Maximum Contaminant Level ("MCL"), or the current California Detection Limit for Purposes of Reporting (DLR) of 0.5 ppb. (Cox Decl. Ex. 4; Declaration of William T. Costley III In

[1] References to the "former ARCO station" are to the site at which a gasoline service station was previously operated at 6454 Foothill Blvd., La Crescenta, California.

[2] At the March 10, 2001 Pre-Motion Conference the Court directed BP to file its Rule 56 motion (if any) related to the former ARCO station's location outside of the CVWD groundwater basin in the transferor court in California (Cox. Decl. Ex. 6, March 10, 2011 Tr. 27: 6-19), but the Court (and BP) assumed that a motion directed to the zero (0) ppb MTBE wells would not be necessary, and that only Wells 2 and 5 would be the subject of Rule 56 relief (*Id.*, Tr. 28: 25 - 29:13).

Support Of BP Defendants' Motion for Partial Summary Judgment. ("Costley Decl.") ¶3, Ex. 1.) Dr. Wheatcraft's model also attributed a "Peak Value" of zero (0) ppb as the former ARCO station's past and future "contributions" to any MTBE reported or to be reported in CVWD Well 8. (Cox Decl. Ex. 4; p. 169 and Costley Decl. ¶ 4.)

On March 10, 2011, the Court held a Pre-Motion hearing in which CVWD's counsel Mr. Miller repeatedly stated on the record that CVWD did not have claims at wells where Dr. Wheatcraft concluded there had been "zero" contribution of MTBE contamination from the former ARCO station. (Cox Decl. Ex. 6, March 10, 2011 Tr. 18:13-17, 19:9-12, 30:22-23.) On March 15, 2011, following the hearing, counsel for BP requested that CVWD's counsel stipulate to entry of partial summary judgment in favor of BP as to CVWD Wells 1, 6, 7, 8, 9, 10, 11, 12, 14 and 15. (Cox Decl. ¶ 7, Ex. 7.) No response to this request was received.

On March 17, counsel for BP wrote to counsel for CVWD, again requesting that CVWD agree to the proposed stipulation. This time, counsel for CVWD responded with a telephone call, refusing to agree to the stipulation and requesting that BP delay filing its Motion until a further model run was generated by Dr. Wheatcraft to address an MTBE mass loading issue in his model for the period *from and after July 2010*. (Cox Decl. ¶ 8, Ex. 8.) Counsel for BP declined this request, as any possible changes to Dr. Wheatcraft's modeling results would necessarily relate to 2010 and after, whereas the "contributions" by the former ARCO station modeled by Dr. Wheatcraft at issue in this Motion pertain to earlier time periods, during 2006-2008, when CVWD reported MTBE concentrations in certain wells that were at or above 5 ppb and 0.5 ppb. (*Id.*; Costley Decl. Ex. 1.)

CVWD's refusal to stipulate to the judicial admissions made on the record in open court has necessitated the filing of this Motion.

## ARGUMENT

### I. Dr. Wheatcraft's Expert Report Is A Sufficient Basis To Grant Partial Summary Judgment In Favor Of BP As To The Zero MTBE Wells

Dr. Wheatcraft's conclusion that the former ARCO station contributed zero (0) ppb to the purported past MTBE detections in CVWD Wells 1, 6, 7, 8, 9, 10, 11, 12, 14 and/or 15 is a wholly sufficient basis, standing alone, upon which to grant this Motion. *E.g.*, *Neri v. R.J. Reynolds Tobacco Co.*, 185 F.Supp.2d 176, 180 (N.D.N.Y. 2001) (granting defendant's statute of limitations summary judgment motion "[b]ased upon …evidence, much of which Plaintiff's own experts supplied"); *N.Y. State Nat. Org. for Women v. Terry*, 704 F.Supp. 1247, 1260 & n.17 (granting plaintiff's summary judgment motion; rather than creating issues of disputed facts, defendants' own experts provided testimony confirming plaintiff's claim of injury); *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1218 (10th Cir. 2003) (affirming summary judgment against plaintiff's emotional distress claims "where plaintiffs' own expert opined that the child's physical examinations did not go beyond the reasonable bounds of standard well-child examinations"); *Jones v. Wild Oats Markets, Inc.*, 467 F.Supp.2d 1004, 1008 (S.D. Cal. 2006) (granting summary judgment against plaintiff where plaintiff's own experts testified defendant complied with applicable regulations).

Indeed, this Court has previously granted summary judgment in *MDL 1358* as to stations where undisputed evidence indicated no contribution to MTBE contamination at a particular well. In the *County of Suffolk* case, the Court performed a well-by-well analysis of plaintiff's expert's conclusions as to whether certain stations could have been a source of contamination at associated wells. *In re MTBE Prods. Litig.*, 591 F.Supp.2d 259, 290-305 (S.D.N.Y 2008). In several instances, the Court granted summary judgment as to stations that plaintiff's expert concluded had not contributed to a well's MTBE contamination.

For example, for a station associated with Crystal Brook Hollow Road Well No. 3, plaintiff's expert "opined that the trace levels of MTBE alone do not support the inference that there was enough MTBE released at the site to create a migrating plume." *Id.* at 301-302. In granting summary judgment as to this and another station, the Court noted that "[plaintiff's] own expert has ruled them out as possible sources of the well's contamination." *Id.* at 302. At another well, College Road Well No. 2, the Court eliminated two stations which plaintiff's expert concluded had not contributed to contamination at the well. *Id.* at 296 ("an Amoco station had to be eliminated because it was located downgradient from the well, and a Mobil station was also eliminated because it was east of the groundwater divide...."). Similarly, Dr. Wheatcraft's conclusions that the former ARCO station contributed 0 ppb of MTBE to CVWD Wells 1, 6, 7, 8, 9, 10, 11, 12, 14 and 15 is a proper basis for the Court to grant partial summary judgment against CVWD as to these wells. (Costley Decl., Ex. 1.)

## II. CVWD Cannot Rely On The Opinions Of One Of Its Hydrogeology Experts, Dr. Huntley, To Contradict The Opinions Of Another Of Its Hydrogeology Experts, Dr. Wheatcraft.

In order to overcome the effect of Dr. Wheatcraft's model conclusions, CVWD may attempt to rely on testimony or conclusions of another hydrogeology expert, Dr. David Huntley. In fact, Dr. Huntley testified that it is "highly unlikely" that the former ARCO station has contributed measurable amounts of MTBE to CVWD wells 8, or to the "Glenwood Wells," CVWD Wells 6, 10, 12 and 15. (Cox Decl., Ex. 5, Huntley Dep. 199:24-201:7.) As a matter of law, a conclusion that an event is "highly unlikely" is not sufficient to raise a triable issue of fact. *In re MTBE, supra,* 591 F.Supp.2d at 290 [if "release was of a volume and depth making it *likely* that MTBE... reached groundwater flowing toward the well" then "a genuine issue of material fact exists"]; *accord In re Baycol Prods. Litig.,* 596 F.3d 884, 889 (8th Cir. 2010) (under California law plaintiff is required to prove that it is "more likely than not" that the injury was a

result of a defendant's actions); *Sanderson v. Int'l Flavors and Fragrances, Inc.*, 950 F.Supp. 981, 988 (C.D. Cal. 1996) (granting summary judgment on causation as plaintiffs' expert "establishes only a 'mere possibility' that defendants'... products were the ones that caused her injuries") (citing *Jones v. Ortho Pharm. Corp.*, 163 Cal.App.3d 396, 403 (1985)).

Furthermore, Dr. Huntley's expert opinions cannot create a triable issue here as Dr. Huntley states repeatedly that he relied upon and/or deferred to Dr. Wheatcraft's *modeling conclusions* with respect to the former ARCO station. (Cox Decl., Ex. 5, Huntley Dep. 162:8-12 ("And I simply concluded to myself that this is a site that Stephen Wheatcraft needs to look at with respect to modeling, because he -- the model has the capability of seeing what might happen under different groundwater flow regimes..."); *id.* 167:17-21 ("I really defer to someone that's looking at it much more carefully, like Dr. Wheatcraft, and actually applying a model to that area to assess what those flow directions might be."); *id.* 201:11 (commenting on the ARCO site's possible contributions to contamination at Well 2 and Well 5, "That is where I would defer to Dr. Wheatcraft....").

Accordingly, CVWD cannot create a triable issue as to any purported conflict between its experts Dr. Huntley and Dr. Wheatcraft in this matter.

## III. Statements By Plaintiff's Counsel In Court Are Binding Judicial Admissions And Constitute An Independent Basis For Granting BP's Partial Summary Judgment As To Certain Wells

This Motion was made necessary because of Mr. Miller's refusal to sign a stipulation confirming his repeated acknowledgments that CVWD was not asserting a claim as to wells for which Dr. Wheatcraft had modeled past MTBE contributions by the former ARCO station of zero (0) ppb. As Mr. Miller repeatedly acknowledged during the March 10, 2011 Pre-Motion Conference hearing:

THE COURT: Well, if plaintiff's own expert says zero -- Mr. Miller, to the extent your own expert says zero --
MR. MILLER: That is not a claim.
THE COURT: Zero is not a claim, you just said?
MR. MILLER: Correct, zero is not a claim.

(Cox Decl., Ex. 6, March 10, 2011 Tr. 18:13-17.)

THE COURT: We finally got to it. That's what I am trying to say. When it is zero, I already have the concession. If his own expert says zero, it is out of the case. Mr. Miller just said so on this record.

(*Id.* 19:9-12.)

MR. COX: [T]he motion also contemplated that we would be relying upon the Wheatcraft model for the zero concentrations and --

THE COURT: You don't need to. Twice on this record, Mr. Miller says, I am not suing when it is a zero. If my own expert says zero, you win. I am not going there right now. Some day it may be different, I have a ripe claim and I will bring it. If it is zero, it is zero. You might want to talk to him later about getting some kind of agreement in writing, but that's what he said on the record.

***

MR. MILLER: ...I am not going to take a position if my experts say it is zero that that's a claim.

***

THE COURT: Shouldn't be in dispute. You are grownups. You can talk to each other. You are sophisticated. You can see if you can propose a stipulation....

(*Id.*, 29:1 - 30:4.)

Mr. Miller's statements alone are binding judicial admissions, and as such are an independently sufficient ground to grant BP partial summary judgment. It has long been the law of this Circuit that "[a] court... has a right to accept the admissions of counsel made upon the

argument or at trial of a cause, and may act upon it as circumstances require." *New York Evening Post Co. v. Cheloner*, 265 F.204, 215 (2d Cir. 1920) (quoting *Oscanyan v. Winchester Repeating Arms*, 103 U.S. 261, 263 (1880) ("Indeed, any fact, bearing upon the issues involved, admitted by counsel may be the ground of the court's procedure equally as if established by the clearest of proof.")). Mr. Miller's prior position, that he is "not going to take a position if my experts say it is zero that that's a claim" are binding upon CVWD, and constitute a sufficient additional factual basis upon which to grant this Motion.

> A judicial admission is a formal act, done in the course of judicial proceedings, which waives or dispenses with the production of evidence, by conceding for purposes of litigation that the proposition of fact alleged by the opponent is true. [Citations omitted.] Thus, from an evidentiary viewpoint, judicial admissions are conclusively binding on the party asserting them.... Citing *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 122 (2d.Cir. 1990); *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988). In the present case, the Court finds that defendant's oral statements on the record in open court and its written submissions are the sort of deliberate, clear and unequivocal formal acts which constitute judicial admissions.

*International Paper Co. v. United States*, 39 Fed.Cl.Rptr. 478, 482 (Fed.Cl. 1997) [internal quotation marks and italics omitted].

## IV. Conclusion

For all the foregoing reasons, BP's Motion for Partial Summary Judgment as to Certain CVWD Wells should be granted at this time.

Date: March 31, 2011

Lawrence A. Cox
ARNOLD & PORTER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017
Tel.: (213) 243-4000
Fax: (213) 243-4199
*Attorneys for Defendants BP Products North America Inc., and Atlantic Richfield Company*

30745859

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ------------------------------------ | x | |
| In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation | : | **Master File No. 1:00-1898**<br>**MDL No. 1358 (SAS)** |
| | : | |
| | : | The Honorable Shira A. Scheindlin |
| **This Document Relates To:**<br>***Crescenta Valley Water District v. Exxon Mobil Corporation, et al., Case No. 07 Civ. 9453 (SAS)*** | : | |
| | : | |
| | : | |
| ------------------------------------ | x | |

**CERTIFICATE OF SERVICE**

William Costley, pursuant to 28 USC 1746, hereby declares under penalty of perjury, that on the 31st day of March, 2011, I caused to be served by electronic means upon all parties to the above-referenced matter via LexisNexis File & Serve a true and correct copy of the following document:

**BP DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO CERTAIN CVWD WELLS**

William Costley

30745859