**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

In re: Methyl Tertiary Butyl Ether ("MTBE")       Master File No. 1:00-1898
Products Liability Litigation                MDL 1358 (SAS): M21-88

------------------------------------------------------------X

This Document Relates To:

*NJ Department of Environmental Protection, et al.*

*Plaintiffs*
*v.*

*Atlantic Richfield, Co., et al.*

*Defendants*
------------------------------------------------------------X

*Getty Properties Corp.*
*Defendant/Third-Party Plaintiff*

*v.*

*Harbans Singh; Gurmail Singh; H.P. Delta, Inc.;*
*Robert Melecci; Dhandi Transport, Inc.;*
*and John and Jane Does Nos. 1 - 100*

*Third-Party Defendants*
------------------------------------------------------------X



### THIRD-PARTY COMPLAINT OF DEFENDANT/THIRD-PARTY PLAINTIFF
### GETTY PROPERTIES CORP.

Defendant/Third-Party Plaintiff, Getty Properties Corp., by and through its attorneys,

Rawle & Henderson LLP, file this Third-Party Complaint pursuant to Federal Rule of Civil

Procedure 14 against Third-Party Defendants Harbans Singh, Gurmail Singh, H.P. Delta, Inc.,

Robert Melecci, Dhandi Transport, Inc. and John and Jane Does Nos. 1-100, in the captioned

matter brought by the New Jersey Department of Environmental Protection, *et al.* and in support

thereof avers as follows:

**Nature of Action**

1.  Plaintiffs, the New Jersey Department of Environmental Protection, the Commissioner of the New Jersey Department of Environmental Protection and the Administrator of the New Jersey Spill Compensation Fund commenced this civil action against Defendant/Third-Party Plaintiff Getty Properties Corp. ("GPC") and other purported manufacturers, designers, refiners, reformulators, distributors, suppliers, sellers, and marketers of the gasoline additive methyl tertiary butyl ether ("MTBE") and/or gasoline products containing MTBE for damages resulting from the alleged contamination of the waters of the State with MTBE and/or gasoline containing MTBE. Plaintiffs' Third Amended Complaint asserts that "waters of the State include all ground waters and all fresh potable surface waters, which include Class FW and Class PL surface waters, within the boundaries of [the] State or subject to its jurisdiction." See Plaintiffs' Third Amended Complaint at ¶¶1 and 2, attached here as Exhibit "A."

2.  Plaintiffs' Third Amended Complaint asserts causes of action under the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 to 23.24, the Federal Water Pollution Control Act, N.J.S.A. 58:10A to 35, strict product liability for defective design, public nuisance, trespass and negligence against GPC and the other named Defendants. See Exhibit "A."

3.  Third-Party Plaintiff GPC denies all allegations set forth in Plaintiffs' Third Amended Complaint that allege or suggest that GPC is responsible for Plaintiffs' alleged damages and incorporates at length its Answer to the Third Amended Complaint by reference.

4.  Plaintiffs' Third Amended Complaint fails to identify or name as Defendants, some or all of the entities or persons responsible for spilling, leaking or otherwise releasing into

the environment the MTBE or gasoline containing MTBE that led to the contamination or threatened contamination they allege.

5.      The Third-Party Complaint is brought pursuant to statutory law for contribution and indemnification pursuant to the New Jersey Joint Tortfeasors Act, the New Jersey Comparative Negligence Act and the New Jersey Spill Act as to all Third-Party Defendants and pursuant to the common law of the State of New Jersey for damages arising out of the environmental contamination at a property owned and/or operated by Third-Party Defendants Harbans Singh, Gurmail Singh, H.P. Delta and Robert Melecci.

## Jurisdiction and Venue

6.      Jurisdiction is proper in this Court under 28 U.S.C. §1367, in that the claims set forth herein are so related to the claims in the Plaintiffs' Complaint that they form part of the same case or controversy.

7.      Venue is proper in this Court under 28 U.S.C. §1391 and Federal Rule of Civil Procedure 14.

## The Parties

8.      Third-Party Plaintiff GPC is a Delaware Corporation with its principal place of business located at 125 Jericho Turnpike, Jericho, New York 11753.

9.      Upon information and belief, Third-Party Defendants Harbans Singh and Gurmail Singh (collectively "the Singhs") are adult individuals and the owners/Principals of H.P. Delta, Inc., with a principal place of business located 35 Farm Haven Avenue, Edison, New Jersey 08820 and a place of business located at 439 Lake Avenue, Colonia, New Jersey 07067.

10.     Third-Party Defendant H.P. Delta, Inc. was, at all relevant times, a New Jersey Corporation with a place of business located at 439 Lake Avenue, Colonia, New Jersey 07067.

Upon information and belief H.P. Delta was, at all relevant times, in the business of operating gasoline stations.

11.     Third-Party Defendant Robert Melecci is an adult individual that owns the property located at 439 Lake Avenue, Colonia, New Jersey 07067, which has a gasoline station located on it (the "Property").  Upon information and belief Third-Party Defendant Melecci owns and operates "Rob's Towing Service" and/or "Rob's Service Center" located at the Property.

12.     Third-Party Defendant Dhandi Transport, Inc. is or was, at all relevant times, incorporated in the State of New Jersey with a principal place of business located at 133 Nathan Hall Drive, Deptford, NJ.  Upon information and belief Dhandi Transport, at all relevant times, was in the business of transportation services, specializing in the hauling of fuel.

13.     Third-Party Defendants John and Jane Does Nos. 1-100 are individuals and/or entities, the exact identities and locations of which are presently unknown, consisting of:  (a) retail gasoline service station owners and operators; (b) jobbers and wholesalers; (c) trucking and tanking companies; (d) drivers and operators of vehicles used by trucking and tanking companies; (e) contractors, excavators, and others engaged in the installation, removal, repair, or examination of all underground storage tanks or associated piping or equipment; and (f) others whose actions or inaction caused releases, spills or leaks of MTBE or gasoline containing MTBE impacting Plaintiffs' groundwater or water resources/systems and who are thereby responsible for any and all damages allegedly sustained by Plaintiffs.

## Factual Background

14.     Third-Party Defendant Melecci has owned the Property from 1983 until present and operated the gasoline station himself from 1983 until 2003, at which time he leased the Property to Third-Party Defendants the Singhs and H.P. Delta to operate the gasoline station.

15.     Upon information and belief, Third-Party Defendants the Singhs and H.P. Delta commenced operating the gasoline station at the Property beginning in 2003 pursuant to a lease agreement with Third-Party Defendant Melecci and continue to operate said station.

16.     Third-Party Defendant Melecci owns and Third-Party Defendants the Singhs and H.P. Delta operate and are responsible for the maintenance of the five underground storage tanks ("USTs") at the Property – four – 6,000 gallon USTs and one – 4,000 UST.

17.     At all relevant times, Third-Party Defendants the Singhs and H.P. Delta purchased some or all of the gasoline they sold at the Property from Third-Party Defendant Dhandi Transport.

18.     At all relevant times, Third-Party Defendant Dhandi Transport marketed, sold and supplied gasoline to Third-Party Defendants the Singhs and H.P. Delta and delivered gasoline to the Property.

19.     Upon information and belief, on August 8, 2006, the New Jersey Department of Environmental Protection ("NJDEP") conducted a Standard Compliance Inspection ("SCI") at the Property which was prompted by complaints made in 2005 pertaining to the Property.  The SCI identified problems with Third-Party Defendants the Singhs and H.P. Delta's operations there, including the use of inadequate equipment, as well as numerous violations of NJDEP regulations.

20.     Upon information and belief, at the conclusion of NJDEP's SCI, Third-Party Defendants the Singhs and H.P. Delta were issued a Cease Use and Delivery Ban, and ordered to empty the underground storage tanks at the Property of their contents in response to a suspected ongoing discharge.  In addition, NJDEP required that H.P. Delta upgrade its inadequate and/or deficient equipment.

21.     Upon information and belief, during the course of its multiple site visits, NJDEP personnel observed evidence of soil and groundwater contamination throughout the operating tank field, including stained soil and stressed vegetation.

22.     Upon information and belief, on August 16, 2006, the NJDEP issued a directive to Third-Party Defendants the Singhs and H.P. Delta to conduct an investigation regarding the contamination the NJDEP found at the Property and to remediate the contamination.

23.     On December 18, 2006, the Singhs and/or H.P. Delta submitted a site investigation report to the NJDEP. The Bureau of Underground Storage Tanks found numerous deficiencies in the report and issued a Notice of Rejection letter to H.P. Delta.

24.     On April 30, 2007, the NJDEP issued an Administrative Order and Notice of Civil Administrative Penalty Assessment directed to Third-Party Defendants Melecci, Harbans Singh and H.P. Delta, finding that H.P. Delta had violated the Underground Storage of Hazardous Substances Act, N.J.S.A. 58:10 A-21 *et seq.* and the regulations promulgated there under pursuant to N.J.A.C. 7:14B -1 *et seq.* and assessed a civil penalty of $20,000.00.

25.     Thereafter, Third-Party Defendants the Singhs and H.P. Delta refused to comply with the NJDEP's directive to remediate the contamination at the Property and therefore the contamination at the Property has been and continues to be remediated by the NJDEP with said remediation being paid for with public funds.

26.     Plaintiffs have selected the Property as a focus trial site in the MDL.

27.     Upon information and belief, Third-Party Defendants the Singhs and H.P. Delta's operations at the Property caused and/or contributed to the presence of contamination at the Property.

28.     Upon information and belief, Third-Party Defendant Dhandi's negligent delivery of gasoline to the Property caused and/or contributed to the presence of contamination at the Property.

29.     Third-Party Defendant Melecci as the owner of the Property is responsible for the contamination at the Property.

30.     The harm allegedly sustained by Plaintiffs is a direct result of the actions and/or inactions of Third-Party Defendants John and Jane Does Nos. 1–100, the exact identities of which are unknown to Third-Party Plaintiff at this time, and over whom the Third-Party Plaintiff had no control and for whom Third-Party Plaintiff is not responsible.  Discovery may reveal that Third-Party Defendants John and Jane Does Nos. 1-100 caused and/or contributed to the presence of contamination at the Property and therefore any or all of the Third-Party Defendants John and/or Jane Does Nos. 1-100 must assume full responsibility for their respective acts and/or omissions.

## COUNT I – CONTRIBUTION

31.     Third-Party Plaintiff incorporates by reference as if fully set forth herein its Answer to Plaintiffs' Third Amended Complaint and incorporates herein the allegations set forth in paragraphs 1 through 30, above, as if fully set forth herein.

32.     If it should be determined that Third-Party Plaintiff is liable to Plaintiffs for all or part of the damages or losses alleged in the Third Amended Complaint as to the Property, which allegations are specifically denied, then Third-Party Plaintiff is entitled to contribution from any and/or all Third-Party Defendants pursuant to the terms of the Joint Tortfeasors Act, N.J.S.A. 2A:53A-1, *et seq.* and the Comparative Negligence Act, N.J.S.A. 2A:15-5, *et seq.*

**WHEREFORE**, Third-Party Plaintiff demands judgment against the Third-Party Defendants in the action for the following relief:

(a)    contribution from Third-Party Defendants pursuant to the provisions of the Joint Tortfeasors Contribution Act and the Comparative Negligence Act for any monies, paid or to be paid by the Third-Party Plaintiff for all costs and expenses associated with the remediation of the contamination at the Property being conducted by and/or at the direction of the NJDEP;

(b)    attorneys' fees, expenses, costs of suit and interest associated with the defense of this action; and

(c)    such other relief as this Court deems appropriate.

## COUNT II
## CONTRIBUTION UNDER THE SPILL ACT

33.    Third-Party Plaintiff incorporates by reference as if fully set forth herein its Answer to Plaintiffs' Third Amended Complaint and incorporates herein the allegations set forth in paragraphs 1 through 32, above, as if fully set forth herein.

34.    If it should be determined that Third-Party Plaintiff must incur cleanup and removal costs related to the Property, then it is entitled to contribution from Third-Party Defendants, pursuant to the terms and provisions of the New Jersey Spill Compensation and Control Act (the "Spill Act"), as amended, N.J.S.A. 58:10-23.11(f)(a)(2).

**WHEREFORE**, Third-Party Plaintiff demands judgment against Third-Party Defendants in this action for the following relief:

(a)    contribution from Third-Party Defendants pursuant to the provisions of the Spill Act for any monies, paid or to be paid by Third-Party Plaintiff for all costs and expenses

associated with the remediation of the contamination at the Property being conducted by and/or at the direction of the NJDEP;

     (b)    attorneys' fees, expenses, costs of suit and interest associated with the defense of this action; and

     (c)    such other relief as this Court deems appropriate.

## COUNT III
## INDEMNIFICATION

35.    Third-Party Plaintiff incorporates by reference as if fully set forth herein its Answer to Plaintiffs' Third Amended Complaint and incorporates herein the allegations set forth in paragraphs 1 through 34, above, as if fully set forth herein.

36.    If it should be determined that Third-Party Plaintiff is liable in whole or in part for the damages alleged in Plaintiffs' Third Amended Complaint, which allegations are specifically denied, then Third-Party Plaintiff's liability for the acts and omissions causing the alleged damages and losses at the Property is secondary and passive only. Primary and active responsibility for the alleged damages and losses at the Property is the result of the acts and omissions of Third-Party Defendants.

**WHEREFORE**, Third-Party Plaintiff demands judgment against Third-Party Defendants in this action for the following relief:

     (a)    indemnification from Third-Party Defendants for any monies, paid or to be paid by Third-Party Plaintiff for all costs and expenses associated with the remediation of the contamination at the Property being conducted by and/or at the direction of the NJDEP;

(b)    attorneys' fees, expenses, costs of suit and interest associated with the defense of this action; and

(c)    such other relief as this Court deems appropriate.

RAWLE & HENDERSON LLP

By: _____
John C. McMeekin II, Esquire (JM8956)
Susan M. Dean, Esquire
The Widener Building
One South Penn Square
Philadelphia, PA 19107
Telephone:  215-575-4200
jmcmeekin@rawle.com
sdean@rawle.com

Attorneys for Defendant/Third-Party
Plaintiff Getty Properties Corp.

Date: _4-12-11_____

4446816-1                                   10

## CERTIFICATION OF SERVICE

I, Susan M. Dean, Esquire, an attorney for Defendant/Third-Party Plaintiff Getty

Properties Corp. certifies that on this 12th day of April, 2011, a copy of the Third-Party

Complaint Against Third-Party Defendants Harbans Singh, Gurmail Singh, H.P. Delta, Inc.,

Robert Melecci, Dhandi Transport, Inc. and John and Jane Does Nos. 1-100, was served upon all

parties of record via LexisNexis File and Serve.

Susan M. Dean, Esquire

# Exhibit "A"



LEXISNEXIS' FILE & SERVE
21669967
E-SERVICE
Sep 24 2008
3:57PM

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation | Master File No. 1:00-1898 (SAS) MDL 1358 (SAS) M21-88 |

| | | |
|---|---|---|
| NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; THE COMMISSIONER OF THE NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; and THE ADMINISTRATOR OF THE NEW JERSEY SPILL COMPENSATION FUND, | ) ) ) ) ) ) ) ) ) | Case No. 08 Civ. 00312 (SAS)

THIRD AMENDED COMPLAINT

Jury Trial Demanded |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| ATLANTIC RICHFIELD COMPANY; BP AMERICA, INC.; BP AMOCO CHEMICAL COMPANY; BP AMOCO CORPORATION; BP PRODUCTS NORTH AMERICA, INC.; CHEVRON CORPORATION; CHEVRON U.S.A., INC.; CITGO PETROLEUM CORPORATION; COASTAL EAGLE POINT OIL COMPANY; CONOCOPHILLIPS COMPANY; CROWN CENTRAL PETROLEUM CORPORATION; DUKE ENERGY MERCHANTS, LLC; EL PASO CORPORATION; EQUILON ENTERPRISES, LLC; EXXONMOBIL CORPORATION; EXXONMOBIL OIL CORPORATION; GEORGE E. WARREN CORPORATION; GETTY PETROLEUM MARKETING, INC.; GETTY PROPERTIES CORP.; GIANT YORKTOWN, INC.; GULF ACQUISITION LLC; GULF OIL LIMITED PARTNERSHIP; HESS CORPORATION; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

KEWANEE INDUSTRIES, INC.;                          )
LYONDELL CHEMICAL COMPANY;                          )
LYONDELL-CITGO REFINING, LP;                        )
LUKOIL AMERICAS CORPORATION;                        )
MARATHON OIL CORPORATION;                           )
MARATHON PETROLEUM COMPANY,                         )
LLC;                                               )
MOBIL CORPORATION;                                 )
MOTIVA ENTERPRISES, LLC;                           )
THE PREMCOR REFINING GROUP, INC.;                  )
ROSEMORE INC.;                                     )
SHELL OIL COMPANY;                                 )
SHELL OIL PRODUCTS COMPANY LLC;                    )
SHELL TRADING (US) COMPANY;                        )
SUNOCO, INC.;                                      )
SUNOCO, INC.(R&M);                                 )
TOTAL PETROCHEMICALS USA, INC.;                    )
ULTRAMAR ENERGY, INC.;                             )
ULTRAMAR LIMITED;                                  )
UNOCAL CORPORATION;                                )
VALERO ENERGY CORPORATION;                         )
VALERO MARKETING AND SUPPLY                        )
COMPANY;                                           )
VALERO REFINING COMPANY-NEW                        )
JERSEY;                                            )
VALERO REFINING & MARKETING                        )
COMPANY;                                           )
VITOL S.A.;                                        )
WESTERN REFINING, INC.; and                        )
"DOES" 1-99 (Names Fictitious),                    )
                                                   )
                Defendants.                        )
                                                   )
_____           )

Plaintiffs New Jersey Department of Environmental Protection ("DEP"), the

Commissioner of the New Jersey Department of Environmental Protection ("Commissioner"),

and the Administrator of the New Jersey Spill Compensation Fund ("Administrator")

(collectively "the Plaintiffs"), having their principal offices at 401 East State Street in the City of

Trenton, County of Mercer, State of New Jersey, file this Third Amended Complaint (the

2

"Complaint") against the above-named defendants (collectively "the Defendants"); and allege as follows:

### SUMMARY OF THE CASE

1.     Plaintiffs DEP and the Administrator bring this action under the Spill Compensation and Control Act (the "Spill Act"), N.J.S.A. 58:10-23.11 to -23.24, and the common law, and plaintiff Commissioner brings this action under the Water Pollution Control Act (the "WPCA"), N.J.S.A. 58:10A-1 to -35, in order to protect and to remedy important state interests affected by widespread contamination of the waters of the State of New Jersey (the "State") with methyl tertiary butyl ether ("MTBE"), a chemical used in some gasoline.  In addition to seeking treatment of contaminated water used for public and private drinking water, the plaintiffs also seek, among other things, the costs to restore all MTBE contaminated waters of the State to their pre-discharge condition as well as damages for the loss of value of the waters of the State pursuant to the Spill Act and New Jersey common law.  Plaintiff, DEP, is vested with the authority to protect and seek compensation for any injury to these valuable resources on behalf of the State, which is the trustee, for the benefit of its citizens, of all natural resources within its borders or subject to its jurisdiction.  The State's interests under the Spill Act are not dependent upon the economic use of the waters of the State.

2.     The "waters of the State" include all ground waters and all fresh potable surface waters, which include Class FW and Class PL surface waters, within the boundaries of this State or subject to its jurisdiction.  See N.J.S.A. 58:10A-3t; see also N.J.A.C. 7:9B-1.4 & 1.12. "Waters of the State" also include all source waters that could impact the quality of ground waters or Class FW or Class PL surface waters.  It is possible to determine whether particular geographic portions of surface water bodies fall within Class FW or Class PL by reference to

3

N.J.A.C. 7:9B-1.15. For purposes of this Complaint, Class SE and SC waters, which are defined by the New Jersey Surface Water Quality Standards as saline coastal waters and estuaries, N.J.A.C. 7:9B-1.4, are not "waters of the State." For purposes of this Complaint, "waters of the State" do not include ground waters underlying or surface waters on federally owned properties, such as army and navy bases.

      3.     MTBE discharges have been detected in waters of the State at service stations, refineries, and terminals throughout New Jersey. Defendants know the location of sites where MTBE has been discharged. The waters of the State that have been affected by these discharges include waters located directly beneath, on, or adjacent to these discharge sites, and waters that are hydrogeologically connected to waters beneath, on, or adjacent to these discharge sites. Defendants are aware of sites where waters of the State have been impacted by discharges because Defendants are required by law to investigate impacts to waters at sites where discharges have occurred, including potential impacts to wells used to supply drinking water.

      4.     The waters of the State constitute limited, precious and invaluable public natural resources that are held in trust for the benefit of all New Jersey citizens, and for which plaintiffs DEP, the Administrator, and the Commissioner have the authority and responsibility to protect, conserve and manage in the interest of present and future generations of its citizens. The plaintiffs seek relief in this case for all MTBE contaminated or threatened waters of the State.

      5.     The Defendants in this action are major oil and chemical companies that designed and/or manufactured MTBE and/or supplied gasoline containing MTBE within the State, and/or affecting waters of the State. The Defendants include MTBE manufacturers and refiners and major-brand marketers of gasoline containing MTBE, which was entered and continues to be

entered into the stream of the State's commerce and which has injured and continues to injure the waters of the State.

6.     The Defendants' manufacture or use of MTBE in gasoline has created an unprecedented threat to waters of the State, including many public and private drinking water supplies, all of which the State holds in trust for the benefit of its citizens. This includes the costs to treat MTBE contaminated water used by public community water supply wells, public non-community water supply wells, and private domestic water supply wells. The plaintiffs also seek the costs to restore all MTBE contaminated waters of the State to their pre-discharge condition as well as damages for the loss of value of the waters of the State pursuant to the Spill Act and New Jersey common law.

7.     Unlike other gasoline constituents, MTBE contaminates and spreads in water resources quickly, and hides and resists removal and treatment, thereby presenting a serious threat to the waters of the State. MTBE has already contaminated numerous drinking water sources in the State and threatens to contaminate many more, as a result of normal and foreseen storage and the purchase and use of gasoline by the State's residents.

8.     In addition to producing and/or supplying MTBE or gasoline containing MTBE for importation into and/or sale within the State, the Defendants knowingly and willfully promoted, marketed and sold MTBE and gasoline and other petroleum products (hereinafter collectively, "gasoline") containing MTBE, when they knew or reasonably should have known that MTBE would be discharged into the environment and pollute the waters of the State in violation of New Jersey law, and would interfere with the Plaintiffs' interests in protecting and preserving such waters and threaten public health and welfare and the environment, as has occurred and is continuing to occur within the State.

9.     The Defendants, among other things:

(a)     designed, manufactured, formulated, refined, set specifications for, exchanged, promoted, marketed and/or otherwise supplied (directly or indirectly) gasoline containing MTBE that was delivered into the State (or areas affecting the waters of the State), such that discharges of MTBE contaminate and threaten the waters of the State;

(b)     were legally responsible for and committed each of the multiple tortious and wrongful acts alleged in this Complaint;

(c)     participated in one or more enterprises to promote MTBE and/or gasoline containing MTBE, despite the availability of reasonable alternatives and their actual or constructive knowledge that the pollution alleged herein would be the inevitable result of their conduct; and

(d)     in doing the tortious and wrongful acts alleged in this Complaint, acted in the capacity of joint-venturer, partner, agent, principal, successor-in-interest, surviving corporation, fraudulent transferee, fraudulent transferor, controller, alter-ego, co-conspirator, licensee, licensor, patent holder and/or indemnitor of each of the named Defendants.

10.     At all times relevant to this action, the Defendants together controlled virtually the entire market for gasoline containing MTBE in New Jersey.

11.     To the extent any act or omission of any of the Defendants is alleged in this Complaint, the officers, directors, agents, employees or representatives of each such Defendant committed or authorized each such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or

6

control of the affairs of such Defendants, and did so while acting within the scope of their duties, employment or agency.

12.     MTBE can cause significant adverse health effects, and, even at very low concentrations, can render drinking water foul, putrid and unfit for human consumption.  As a result of these properties, MTBE and other products have caused, are causing, and will continue to cause harm to the waters of the State.  Remedying such harm has cost, is costing, and will cost the State a tremendous amount of financial and human resources that ultimately will adversely impact the State's financial and human resources, including those of the plaintiff DEP and the New Jersey Spill Compensation Fund ("the Spill Fund"), for years to come.

13.     Under New Jersey law the Defendants are strictly liable for manufacturing and supplying a defective product and failing to provide adequate warnings in connection therewith; liable for creating a public nuisance; strictly liable for discharging MTBE into the waters of the State or for being in any way responsible for the MTBE that was discharged into the waters of the State; liable for trespass upon the waters of the State; liable for negligently causing damage to the waters of the State; liable for unfair and deceptive business acts; and liable for all resulting damages, including all costs to investigate, clean up and remove, monitor, prevent, abate, contain, and otherwise respond to any contamination or threatened contamination from MTBE, to restore and protect waters of the State, and to compensate the State for the lost interim value and benefits of the waters of the State as a result of the contamination of the waters of the State. The Plaintiffs also allege that certain Defendants are liable for enhanced damages to reflect the aggravating circumstances of such Defendants' wanton, malicious and oppressive conduct.

**PLAINTIFFS**

14.     Plaintiff DEP is a principal department within the Executive Branch of the State government, vested with the authority to conserve and protect natural resources, protect the environment, prevent pollution, and protect the public health and safety. N.J.S.A. 13:1D-9.  In addition, the State is the trustee, for the benefit of its citizens, of all natural resources within its jurisdiction, for which plaintiff DEP is vested with the authority to protect this public trust and to seek compensation for any injury to the natural resources of this State. N.J.S.A. 58:10-23.11a.

15.     Plaintiff Commissioner is the Commissioner of plaintiff DEP. N.J.S.A. 58:10-23.11b. and N.J.S.A. 58:10A-3.  In this capacity, plaintiff Commissioner is vested by law with various powers and authority, including those conferred by plaintiff DEP's enabling legislation, N.J.S.A. 13:1D-1 to -19.

16.     Plaintiff Administrator is the chief executive officer of the Spill Fund. N.J.S.A. 58:10-23.11j. As chief executive officer of the Spill Fund, plaintiff Administrator is authorized to approve and pay any cleanup and removal costs plaintiff DEP incurs, N.J.S.A. 58:10-23.11f.c. and d., and to certify the amount of any claim to be paid from the Spill Fund, N.J.S.A. 58:10-23.11j.d.

17.     The State also has a significant property interest in the waters of the State and plaintiffs DEP and the Commissioner have statutory obligations to protect the quality of such waters.  The contamination of waters of the State by MTBE constitutes injury to the environment and to property held in public trust by the State for which the State, through plaintiffs DEP and the Administrator, seeks damages as parens patriae and under the public trust doctrine.

18.     Plaintiffs DEP and the Administrator seek the recovery of any costs and damages that any private or public well owner has incurred and will incur as a result of discharges of

8

MTBE.

19.     To the extent that plaintiffs DEP and the Administrator have previously settled with one or more of the Defendants for particular natural resource damages at certain sites, such natural resources at such sites are not included in this Complaint.

**DEFENDANTS**

20.     Atlantic Richfield Company ("ARCO") (d/b/a ARCO Products Company, f/k/a ARCO Petroleum Co. and a/k/a ARCO) is a Delaware corporation with its principal place of business at 515 S. Flower Street, Los Angeles, California.  Defendant BP Amoco Corporation acquired ARCO in 2000.

21.     BP America, Inc. ("BP America") is a Delaware corporation with its principal place of business at 4101 Winfield Road, Warrenville, Illinois.

22.     BP Amoco Chemical Company ("BP Amoco Chemical") is a Delaware corporation with its principal place of business at 4101 Winfield Road, Warrenville, Illinois,

23.     BP Amoco Corporation ("BP Amoco") is an Indiana corporation with its principal place of business at 4101 Winfield Road, Warrenville, Illinois.

24.     BP Products North America, Inc. ("BP Products NA") is a Maryland corporation with its principal place of business at 4101 Winfield Road, Warrenville, Illinois. The term "BP" as used in this Complaint refers to BP America, BP Amoco Chemical, BP Amoco, and BP Products NA.

25.     Chevron Corporation ("Chevron Corp.") is a Delaware corporation with its principal place of business at 6001 Bollinger Canyon Road, San Ramon, California. Defendant Chevron Corp. is the successor-in-interest to ChevronTexaco Corporation, and successor-in-interest to Texaco, Inc. ("Texaco, Inc.").

26.     Chevron U.S.A., Inc. ("Chevron U.S.A.") is a Pennsylvania corporation with its principal place of business at 6001 Bollinger Canyon Road, San Ramon, California.  The term "Chevron" as used in this Complaint refers to Chevron Corp. and Chevron U.S.A.

27.     Citgo Petroleum Corporation ("Citgo") is a Delaware Corporation with its principal place of business at 6100 South Yale Avenue, Tulsa, Oklahoma.

28.     Coastal Eagle Point Oil Company ("Coastal Eagle") is a Delaware corporation with its principal place of business at Routes 130 and I-295, Westville, New Jersey.  Defendant Sunoco, Inc. acquired defendant Coastal Eagle in 2003.

29.     ConocoPhillips Company ("ConocoPhillips") is a Delaware corporation with its principal place of business at 600 North Dairy Ashford, Houston, Texas.  ConocoPhillips was formed as a result of a merger in 2002 of Conoco, Inc. and Phillips Petroleum Company, and is the successor to Conoco, Inc. and Phillips Petroleum Company.  Defendant ConocoPhillips is also the successor to Tosco Corporation, including its subsidiary Tosco Refining, LP, which was acquired by Phillips Petroleum Company in 2001.

30.     Crown Central Petroleum Corporation ("Crown Central") is a Maryland corporation with its principal place of business at 1 North Charles Street, Baltimore, Maryland.

31.     Duke Energy Merchants, LLC ("Duke Energy Merchants") is a Delaware limited liability company with its principal place of business at 5400 Westheimer Court, Houston, Texas.

32.     El Paso Corporation ("El Paso") is a Delaware corporation with its principal place of business at 1001 Louisiana Street, Houston, Texas.  Defendant El Paso is the successor to El Paso Merchant Energy Petroleum Company and El Paso Marketing, L.P.

33.     Equilon Enterprises, LLC ("Equilon") is a Delaware limited liability company with its principal place of business at 1100 Louisiana Street, Houston, Texas.  Defendant Equilon

does business as Shell Oil Products US both individually and as successor to a merger to Equiva Service, LLC.

34.     ExxonMobil Corporation ("ExxonMobil Corp.") is a New Jersey corporation with its principal place of business at 5959 Las Colinas Boulevard, Irving, Texas.   Defendant ExxonMobil was formed as a result of a merger in 1999 of Mobil Oil Corporation and Exxon Corporation.

35.     ExxonMobil Oil Corporation ("ExxonMobil Oil") is a New Jersey corporation with its principal place of business at 5959 Las Colinas Boulevard, Irving, Texas.  The term "ExxonMobil" as used in this Complaint refers to defendants ExxonMobil Corp., ExxonMobil Oil, and Mobil Corporation.

36.     George E. Warren Corporation ("George E. Warren Corp.") is a Massachusetts corporation with its principal place of business at 3001 Ocean Drive, Vero Beach, Florida.

37.     Getty Petroleum Marketing, Inc. ("Getty Petroleum") is a Maryland corporation with its principal place of business at 1500 Hempstead Turnpike, East Meadow, New York.

38.     Getty Properties Corp. ("Getty Properties") is a Delaware corporation with its principal place of business at 125 Jericho Turnpike, Jericho, New York.

39.     Giant Yorktown, Inc. ("Giant Yorktown") is a Delaware corporation with its principal place of business at 23722 N. Scottsdale Road, Scottsdale, Arizona.

40.     Gulf Acquisition LLC ("Gulf Acquisition") is a Delaware limited liability company with its principal place of business at 90 Everett Avenue, Chelsea, Massachusetts. Gulf Acquisition is the general partner of Gulf Oil Limited Partnership.

41.     Gulf Oil Limited Partnership ("Gulf Oil") is a Delaware limited partnership with its principal place of business at 90 Everett Avenue, Chelsea, Massachusetts. The term "Gulf" as used in this Complaint refers to defendants Gulf Oil and Gulf Acquisition.

42.     Hess Corporation ("Hess") is a Delaware corporation with its principal place of business at 1185 Avenue of the Americas, New York, New York.

43.     Kewanee Industries, Inc. ("Kewanee") is a Delaware corporation with its principal place of business at 2711 Centerville Road, Suite 400, Wilmington, Delaware.

44.     Lyondell Chemical Company ("Lyondell Chemical") is a Delaware corporation with its principal place of business at 1221 McKinney Street, Suite 700, Houston, Texas.

45.     Lyondell-Citgo Refining, LP ("Lyondell-Citgo") is a Texas limited partnership with its principal place of business at 12000 Lawndale, Houston, Texas. Defendant Lyondell-Citgo is a wholly owned subsidiary of and is controlled by defendant Lyondell Chemical. The term "Lyondell," as used in this Complaint, refers to Lyondell Chemical and Lyondell-Citgo.

46.     Lukoil Americas Corporation ("Lukoil") is a Delaware corporation with its principal place of business at 1500 Hempstead Turnpike, East Meadow, New York.

47.     Marathon Oil Corporation ("Marathon") (d/b/a Marathon Oil Company ("Marathon Oil")) is a Delaware limited liability company with its principal place of business at 5555 San Felipe Road, Houston, Texas.

48.     Marathon Petroleum Company, LLC ("Marathon Petroleum") is a Delaware limited liability company with its principal place of business at 539 South Main Street, Findlay, Ohio. Defendant Marathon Petroleum was formerly known as Marathon Ashland Petroleum Company, LLC.

49.     Mobil Corporation ("Mobil") is a Delaware corporation with its principal place of business at 5959 Las Colinas Boulevard, Irving, Texas.

50.     Motiva Enterprises, LLC ("Motiva") is a Delaware limited liability company with its principal place of business at 700 Milam Street, Houston, Texas.  Defendant Motiva is a successor in interest to certain entities related to defendant Shell Oil Company, and is owned and/or controlled by defendant Shell Oil Company.

51.     The Premcor Refining Group, Inc. ("Premcor") is a Delaware corporation with its principal place of business at 1700 East Putnam Ave., Old Greenwich, Connecticut.

52.     Rosemore Inc. ("Rosemore") is a Maryland corporation with its principal place of business at 1 North Charles Street, Baltimore, Maryland.

53.     Shell Oil Company ("Shell Oil") (d/b/a Shell and Shell Development Co. Div.) is a Delaware corporation with its principal place of business at One Shell Plaza, 910 Louisiana Street, Houston, Texas.

54.     Shell Oil Products Company LLC ("Shell Oil Products") is a Delaware limited liability company with its principal place of business at 910 Louisiana Street, Houston, Texas.

55.     Shell Trading (US) Company ("Shell Trading US") is a Delaware corporation with its principal place of business at 910 Louisiana Street, Houston, Texas.  The term "Shell" as used in this Complaint refers to defendants Shell Oil, Shell Oil Products, Shell Trading US, and Motiva.

56.     Sunoco, Inc. ("Sunoco, Inc.") (d/b/a Sunoco and/or Sunoco Chemicals) is a Pennsylvania corporation with its principal place of business at 1735 Market Street, Philadelphia, Pennsylvania.

13

57.     Sunoco, Inc. (R&M) ("Sunoco R&M") is a Pennsylvania corporation with its principal place of business at 1801 Market Street, Philadelphia, Pennsylvania. The term "Sunoco" as used in this Complaint refers to defendants Sunoco, Inc. and Sunoco R&M.

58.     Total Petrochemicals USA, Inc. ("Total") is a Delaware corporation with its principal place of business at Total Plaza, 1201 Louisiana Street, Suite 1800, Houston, Texas.

59.     Ultramar Energy, Inc. ("Ultramar Energy") is a Delaware corporation with its principal place of business at 512 Brooklyn Street, Morrisville, Vermont.

60.     Ultramar Limited ("Ultramar") is a Canadian corporation with its principal place of business at 2200 McGill College, Montreal, Quebec, Canada.

61.     Unocal Corporation ("Unocal") (f/k/a, Union Oil Company of California) is a Delaware corporation with its principal place of business at 2141 Rosencrans Avenue, Suite 4000, El Segundo, California.  Unocal is a wholly owned subsidiary of Chevron Corporation.

62.     Valero Energy Corporation ("Valero Energy") (f/k/a Saber Energy, Inc. and Valero Refining and Marketing Company), is a Delaware corporation with its principal place of business at One Valero Way, San Antonio, Texas.

63.     Valero Marketing and Supply Company ("Valero Marketing") is a Delaware corporation with its principal place of business at One Valero Way, San Antonio, Texas.

64.     Valero Refinery Company – New Jersey ("Valero N.J.") is a Delaware corporation with its principal place of business at 800 Billingsport Rd., Paulsboro, New Jersey.

65.     Valero Refining & Marketing Company ("Valero Refining and Marketing") is a Delaware corporation with its principal place of business at One Valero Way, San Antonio, Texas. The term "Valero" as used in this Complaint refers to defendants Valero Energy, Valero Marketing, Valero N.J., and Valero Refining and Marketing.

66.     Vitol S.A. ("Vitol") is a Swiss corporation with its principal place of business at 1100 Louisiana Street, Suite 5500, Houston, Texas.  Defendant Vitol also does business as Vitol S.A., Inc. or is alternately known as Vitol S.A., Inc.  The term "Vitol" as used in this Complaint refers to defendant Vitol and Vitol S.A., Inc.

67.     Western Refining, Inc. ("Western Refining") is a Delaware corporation with its principal place of business at 6500 Trowbridge Drive, El Paso, Texas.

68.     "Does" 1 through 99 are corporations, partnerships, associations, natural persons or other entities that are not presently known to the Plaintiffs, certain of which are corporate successors to, predecessors of, assigns of, or are otherwise related to other Defendants, and as well are manufacturers, refiners, blenders, distributors, suppliers, marketers, and retailers of MTBE.  The true names and identities of Does 1 through 99 are not known to the Plaintiffs, and therefore the Plaintiffs sue said Defendants by fictitious names.

69.     Each Defendant has done, or is doing, business in New Jersey at all times relevant to this Complaint.

**THEORIES OF LIABILTY**

70.     Each Defendant is jointly and severally liable to the Plaintiffs for the claims set forth in this Complaint and for all damages arising therefrom.  In addition, or in the alternative to joint and several liability, market share liability, including the commingled product theory, may be an appropriate theory for liability in this case.  Market share liability means that for all acts, omissions, and conduct set forth in this Complaint, and for all damages arising therefrom, each Defendant is liable to the Plaintiffs in an amount equal to its respective share of the United States national market for the MTBE and gasoline containing MTBE.

15

71.     Market share liability applies to this case to the extent that it may be impossible to identify the manufacturer or manufacturers who produced gasoline containing MTBE that has been distributed in New Jersey because the MTBE in such gasoline is fungible and because the Defendants control a substantial share of the market for such gasoline.

72.     Identification may be impossible because the Defendants trade, barter, or otherwise exchange gasoline containing MTBE with one another such that even when the source of an MTBE plume is identified, the identity of the manufacturer or manufacturers of the products forming the plume cannot be determined.

## MTBE, ITS CHARACTERICS, AND ITS RISK TO WATERS OF THE STATE

73.     MTBE is a chemical compound produced by combining methanol, a derivative of natural gas, and isobutylene, a by-product of the gasoline refining process.  Because methanol and isobutylene are readily available compounds, MTBE is inexpensive to manufacture.  As used in this Complaint, MTBE consists not only of methyl tertiary butyl ether, but also the degradation byproducts of, and contaminants in, commercial grade MTBE, including tertiary butyl alcohol.

74.     One way that MTBE contaminates the environment is through discharges, releases, leaks, overfills, and spills from gasoline storage and delivery systems, including gasoline stations and gasoline storage, transfer, delivery, and dispensing systems ("gasoline storage and delivery systems").

75.     As a result of its physical characteristics, MTBE finds unique pathways into the environment from gasoline storage and delivery systems and is more readily discharged from such systems than conventional gasoline components.

16

76.     Once discharged to the environment, MTBE's unique characteristics cause extensive environmental contamination and a corresponding threat to the public health and welfare beyond that caused by gasoline that does not contain MTBE.  In particular, the fate and transport of MTBE in the subsurface differs significantly from that of gasoline constituents that have historically been of environmental and/or toxicological concern, specifically the "BTEX compounds" (i.e., benzene, toluene, ethylbenzene, and xylene).

77.     When discharged into the environment, MTBE separates from other gasoline constituents in the presence of moisture.  In contrast to the BTEX compounds, MTBE has a strong affinity for water, is easily dissolved and does not readily adhere to soil particles, making it more mobile and able to penetrate great distances from the source of the discharge.

78.     In water, MTBE moves freely at approximately the rate of the water's movement, unlike BTEX compounds, which tend to adhere to soil and float on the surface of water.  This makes MTBE more difficult to find and more difficult to remove or treat than BTEX compounds.

79.     MTBE is also more persistent than BTEX compounds because it does not readily biodegrade in ground water.  As a result, MTBE is relatively more difficult and more expensive to remove from ground water.

80.     In sum, when MTBE is discharged into the environment, it migrates farther and faster through soil and water, penetrates deeply into aquifers, resists biodegradation and results in persistent contamination that is more costly to address.  As a result of these properties, MTBE has contaminated, and continues to contaminate and threaten, vast quantities of the waters of the State.

17

81.    MTBE also contaminates surface waters through discharges, releases, leaks, overfills and spills of gasoline associated with, or incident to, certain consumer and commercial activities.  This surface water contamination often threatens to injure or injures waters of the State.

82.    It is likely that not all of the MTBE contamination of waters of the State can be traced to a specific source.

### HISTORY OF MTBE PRODUCTION AND SALE BY THE DEFENDANTS

83.    Oil companies began blending MTBE into gasoline in the late 1970s.  Initially used as an octane enhancer, MTBE was used throughout the 1980s at low concentrations in some gasoline by some refiners, primarily in high-octane grades.

84.    In or about the late 1970s, the United States Environmental Protection Agency registered MTBE as a fuel additive that does not cause or contribute to the failure of any emission control device or system, pursuant to section 211 of the Clean Air Act, 42 U.S.C.A. § 7545 ("the CAA").  Such registration did not, and does not, constitute endorsement, certification, or approval of MTBE as a fuel additive by any agency of the United States.

85.    Refiners, including the Defendants, significantly increased their use of MTBE in gasoline after 1990.  In 1990, Congress established the Reformulated Gasoline Program ("RFG Program") in section 211(k) of the CAA, 42 U.S.C.A. § 7545(k).  The RFG Program requires the use of reformulated gasoline in certain metropolitan areas with high carbon monoxide ("CO") levels.

86.    The CAA requires areas of the country with the highest levels of ozone air pollution ("severe" non-attainment of the National Ambient Air Quality Standards ("NAAQS")) to implement the RFG Program.  As of January 1, 1995, nine severe ozone non-attainment areas

18

(including part of New Jersey) were required to implement this program. Although optional for Cape May and Atlantic counties, New Jersey implemented the RFG program statewide, for ease of gasoline distribution.

87.     Refiners, including the Defendants, were not required to add MTBE to their gasoline, but could introduce any oxygenate including ethanol.

88.     Reformulated gasoline containing significantly higher quantities of MTBE has been sold on a virtually universal basis throughout New Jersey since 1995.

### IMPACT OF MTBE ON THE WATERS OF THE STATE

89.     MTBE contamination has injured, and continues to injure and threaten, the waters of the State, and threatens the health, safety and welfare of the citizens of the State.

90.     Federal and other studies link MTBE to a variety of adverse health effects.

91.     The State has established a health-based Primary Maximum Contaminant Level ("MCL") for MTBE of 70 parts per billion ("ppb").

92.     The establishment of the health-based MCL for MTBE triggers certain state regulatory requirements if that level is exceeded in drinking water supplies. Such state requirements include required investigatory and remedial action to protect public health and the environment and remedial actions by public water suppliers.

93.     In addition to the health and environmental risks posed by MTBE in drinking water supplies, MTBE can render water supplies undrinkable by changing the taste and odor of water. Many individuals can smell and/or taste MTBE in drinking water at levels well below the health-based MCL of 70 ppb.

94.     MTBE has been found in drinking water supplies throughout the State in varying concentrations and at varying times. MTBE has been detected in point of entry samples of 15%

19

of public water supplies that have been tested statewide.  MTBE also has been detected in private domestic wells statewide.  On behalf of the citizens of New Jersey, the Plaintiffs seek to recover the costs to treat such MTBE contaminated water in public supplies and domestic wells.

95.    The injuries to the waters of the State caused and/or threatened by the Defendants' conduct as alleged herein constitute an unreasonable interference with natural resources that the State holds in trust for the benefit of its citizens.  Such injuries also constitute damages to limited, precious and invaluable public natural resources in which the State has a significant property and quasi-sovereign interest.  The State's unique interest in protecting the quality of its waters constitutes a reasonable basis for the Plaintiffs to seek damages for restoration of such waters.


**STATE REGULATION OF MTBE**

96.    MTBE is regulated as a hazardous substance under environmental statutes, including N.J.S.A. 58:10-23.11 to -23.24, as well as under other statutes and rules designed to protect the State's waters.

97.    MTBE contamination is associated with all transportation, storage and use of gasoline containing MTBE.

98.     Plaintiffs DEP and the Administrator provide funding for remediation, including investigation, individual third-party damages, water treatment, water lines, and other activities related to MTBE contamination in the State through State-administered pollution reimbursement funds, such as the Spill Fund under N.J.S.A. 58:10-23.11i, and through general funding.

99.     Plaintiffs DEP and the Administrator have incurred, are incurring, and will continue to incur, significant costs and expenses in addressing discharges of MTBE into the environment and into waters of the State.

**DEFENDANTS WERE AWARE OF THE HARMS MTBE'S ADDITION INTO GASOLINE AND PLACEMENT IN NEW JERSEY'S STREAM OF COMMERCE WOULD CAUSE THE WATERS OF THE STATE**

100.    Among other things, the Defendants knew, or reasonably should have known, that:

(a)     the gasoline distribution and retail system throughout the State contained leaking gasoline storage and delivery systems;

(b)     MTBE is more readily discharged from gasoline storage and delivery systems than the constituents of conventional gasoline; and

(c)     discharges of MTBE into the environment would be an inevitable consequence of placing MTBE into the stream of commerce in the absence of precautionary measures to prevent or mitigate such discharges - measures that the Defendants failed to take.

101.    The Defendants also knew, or reasonably should have known, that, unlike the constituents of conventional gasoline, MTBE, when discharged into the environment, would move great distances, mix easily with water, resist biodegradation, render drinking water unsafe

21

and/or non-potable, and require significant expenses to find and remove from public and private drinking water supplies.

102.    Despite knowing the devastating risk of drinking water contamination posed by MTBE, and despite the availability of reasonable alternatives, including adequate warnings, the Defendants failed to warn customers, retailers, regulators or public officials, including the Plaintiffs, and failed to take any other precautionary measures to prevent or mitigate such contamination.  Instead, the Defendants promoted MTBE, and gasoline containing MTBE, as environmentally sound products appropriate for widespread use.  Moreover, certain Defendants engaged in separate and joint activities to suppress, conceal and/or discredit studies and other information regarding the hazards of MTBE.  The Defendants' wrongful conduct, among other things, encouraged the State to participate in the federal reformulated gasoline program without a full understanding of the risks to the waters of the State, which resulted in:

    (a)    a dramatic increase in the use and presence of gasoline containing MTBE in the State;

    (b)    the consequent injuries to the waters of the State; and

    (c)    the substantial damages incurred by plaintiffs DEP and the Administrator in response thereto.

103.    At all relevant times, the Defendants have represented to purchasers of MTBE and/or gasoline containing MTBE, as well as to the public and government agencies, that such products were environmentally sound and appropriate for widespread production, distribution, sale and use.  Indeed, the Defendants represented that gasoline containing MTBE could be handled in the same fashion as conventional gasoline, and required no special measures to protect against, respond to, or mitigate suspected discharges to the subsurface.

104.    The Defendants knew, or reasonably should have known, that:

(a)    MTBE would escape from gasoline storage and delivery systems more readily than the constituents of conventional gasoline;

(b)    gasoline storage and delivery systems in the State were not designed to prevent any and all leakage of gasoline containing MTBE; and

(c)    the operators and users of gasoline storage and delivery systems either: (i) were unaware of the special hazards posed by MTBE and the steps necessary to eliminate or mitigate those hazards; or (ii) would fail to take such steps.

105.    The Defendants further exacerbated the situation by continued unreasonable and negligent acts, including providing gasoline containing MTBE to gasoline stations without either providing appropriate warnings or taking other precautions adequate to prevent or mitigate discharges of MTBE to the subsurface.  The Defendants did so despite the fact that they knew, or reasonably should have known, that discharges of MTBE were substantially certain to occur, because a substantial percentage of those gasoline stations would and, in fact, did:

(a)    place the gasoline into inadequate and leaking gasoline storage and delivery systems;

(b)    suffer the routine spillage of appreciable quantities of gasoline containing MTBE in connection with the filling of storage tanks and the use of gasoline dispensing systems;

(c)    fail to take adequate measures to monitor, detect, report, and respond to discharges of MTBE; and

(d)    fail to take adequate precautions to investigate, contain, and clean up and remove discharges of MTBE.

23

106.    The widespread problems of gasoline spillage and leaking gasoline storage and delivery systems were well known to the Defendants prior to the introduction of MTBE into the State.   At least as early as the mid-1960s, the Defendants knew, or reasonably should have known, that gasoline storage and delivery systems generally suffer significant and widespread leaks and failures, and discharge gasoline products into the environment, including into ground water.

107.    Defendants Hess, Citgo, Chevron, ConocoPhillips, El Paso, ExxonMobil, Gulf, Shell, Sunoco, Valero, BP, Unocal, and ARCO not only knew about the widespread problems of leaking gasoline storage and delivery systems generally, but, at all times relevant to this action, had first-hand knowledge and experience regarding leaking gasoline storage and delivery systems and discharges of MTBE to ground water therefrom.   These Defendants obtained such first-hand knowledge and experience because each of them owned and operated individual gasoline stations with leaking gasoline storage and delivery systems, including gasoline stations in the State, and/or exercised control over such gasoline stations through a variety of means, including written agreements, inspection rights, prescribing certain procedures and operating practices, prescribing specifications for products, conditions on sale of branded goods, agreements obligating such stations to acquire, store and sell gasoline containing MTBE, and training.   Despite the first-hand knowledge that contamination of waters of the State with MTBE was the inevitable result of their conduct, these Defendants continued to refine, market, promote, and supply gasoline containing MTBE.

## DEFENDANTS' PROMOTION OF MTBE

108.    The Defendants, all of whom have promoted the use of gasoline containing MTBE for its purported environmental benefits, knew or should have known of the grave harm

24

and threat to public health, safety and welfare and the environment represented by the proliferating use of MTBE, including widespread pollution of surface and ground water with MTBE; contamination of public and private drinking water supplies by this harmful and noxious compound; the rendering of drinking water supplies unfit and unusable for consumption; and increased costs to plaintiffs DEP and the Administrator in addressing MTBE contamination of waters of the State.

109.    The manufacturers, refiners and suppliers of MTBE and gasoline containing MTBE had a duty and breached their duty to evaluate and test MTBE adequately and thoroughly to determine its environmental fate and transport characteristics and potential human health and environmental impacts before they produced and sold MTBE and gasoline containing MTBE. They also had a duty and breached their duty to minimize the environmental harm caused by MTBE and/or gasoline containing MTBE.  Furthermore, they had a duty and breached their duty to take precautions, including warnings, necessary to ensure that gasoline containing MTBE was properly stored and that all necessary measures to promptly detect, contain, abate and respond to spills and leaks were instituted.  The Defendants failed to adequately evaluate, test, store, warn, mitigate or otherwise ensure that gasoline containing MTBE would not contaminate waters of the State.  As a direct, indirect and proximate result of these failures, MTBE was discharged into the environment, causing, and threatening to cause, widespread contamination of the waters of the State.

110.    In addition to the negligent and/or reckless conduct alleged herein, defendants Hess, Citgo, Chevron, ConocoPhillips, ExxonMobil, Gulf, Lyondell, Shell, Sunoco, Valero, BP, Unocal, ARCO, and Equilon also intentionally failed to warn downstream handlers, the public and government officials, including the Plaintiffs, as to the threat caused by MTBE and, by

agreement and tacit understanding among them, each knowingly pursued or took an active part in a common plan, design and conspiracy to market and promote a product they knew to be dangerous to the environment. In particular, the Defendants identified in this paragraph formed and participated in joint task-forces, committees and trade associations for the specific purposes of suppressing, concealing and minimizing information regarding MTBE hazards. These Defendants also engaged in separate and joint activity to mislead government agencies, including plaintiff DEP, as well as the public, regarding these same dangers. Such Defendants' common plan, design and conspiracy, and the acts taken in furtherance of such common plan, design and conspiracy, are a direct, indirect and proximate cause of the MTBE contamination of the waters of the State.

**COUNT I**

**(Strict Product Liability Based On Defective Design Against All Defendants)**

111.    The Plaintiffs reallege paragraphs 1 through 110 above, and by this reference incorporate them as though set forth in full.

112.    The Defendants designed, manufactured, formulated, promoted, marketed, distributed, exchanged and/or sold MTBE to refiners, including certain refiner/marketer Defendants, for use as a component of gasoline.

113.    The Defendants designed, manufactured, formulated, refined, set specifications for, exchanged, promoted, marketed and/or otherwise supplied (directly or indirectly) gasoline containing MTBE that was delivered in the State (or areas affecting the waters of the State).

114.    The Defendants represented, asserted, claimed and warranted that gasoline containing MTBE could be used in the same manner as gasoline not containing MTBE, and/or otherwise did not require any different or special handling or precautions.

26

115.    The Defendants knew that MTBE and/or gasoline containing MTBE were to be purchased and used without inspection for defects.

116.    MTBE and/or gasoline containing MTBE are defective and unreasonably dangerous products because, among other things:

(a)    MTBE escapes more readily from gasoline storage and delivery systems than the constituents of conventional gasoline and other available and viable alternative gasoline additives.

(b)    MTBE causes extensive groundwater contamination when used in its foreseeable and intended manner.

(c)    Even at extremely low concentrations, MTBE renders drinking water putrid, foul, and unfit for purveying as drinking water to the public.

(d)    MTBE poses significant threats to the public health and welfare and the environment.

(e)    The Defendants failed to conduct reasonable, appropriate or adequate scientific studies to evaluate the environmental fate and transport and the potential human health effects of MTBE.

(f)    At all times relevant to this action, feasible alternatives to MTBE that would have eliminated the unreasonable danger posed by gasoline containing MTBE, without excessive costs or loss of product efficiency, were available to the Defendants.

(g)    Commercial grade MTBE is defectively manufactured when it contains and/or degrades into unnecessary but environmentally harmful impurities such as tertiary butyl alcohol.

27

(h)     Any limited utility provided by the use of MTBE as a gasoline additive is greatly outweighed by the risks and dangers associated with MTBE described herein.

117.    At all times relevant to this action, MTBE and/or gasoline containing MTBE were dangerous to an extent beyond that which would be contemplated by the ordinary consumer, and/or the risk of harm to public health and welfare and the environment posed by MTBE and/or gasoline containing MTBE outweighed the cost to the Defendants of reducing or eliminating such risk.

118.    At all times relevant to this action, the distribution, storage, and/or use of MTBE and/or gasoline containing MTBE and the risks and dangers associated therewith including the risk of harm to public health and welfare and the environment outweigh any limited utility provided by MTBE and/or gasoline containing MTBE.

119.    At all times relevant to this action, MTBE and gasoline containing MTBE were used in a manner in which they were foreseeably intended to be used and without substantial change in their condition, and as a proximate result of the defects previously described, MTBE proximately caused the injuries and damages set forth in this Complaint.

120.    As a direct and proximate result of the Defendants' acts and omissions as alleged herein, plaintiffs DEP and the Administrator have incurred, and will continue to incur, investigation, cleanup and removal, restoration, treatment, monitoring, and other costs and expenses related to contamination of the waters of the State with MTBE, for which the Defendants are strictly, jointly and severally liable.

121.    As a further direct and proximate result of the acts and omissions of the Defendants alleged in this Complaint, plaintiffs DEP and the Administrator have sustained and

28

will sustain other substantial expenses and damages, for which the Defendants are strictly, jointly and severally liable.

122.    The injuries to the waters of the State caused and/or threatened by the Defendants' acts and omissions as alleged herein are indivisible.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs DEP and the Administrator pray that this Court:

a.    Enter declaratory judgment against the Defendants, jointly and severally, for all costs to investigate, clean up and remove, restore, treat, monitor and otherwise respond to MTBE in the waters of the State so that such waters are restored to their original condition, and for all damages to compensate the citizens of New Jersey for the lost interim value and benefits of their water resources during all times of injury caused by MTBE, and for such orders as may be necessary to provide full relief to address risks to the State, including the costs of:

(1)    past and future testing all public and private drinking water supplies for the presence of MTBE;

(2)    past and future treatment of all drinking water supplies containing detectable levels of MTBE until restored to non-detectable levels and provision of alternate water supplies, where appropriate; and

(3)    past and future monitoring of other waters of the State to detect the presence of MTBE and restoration of such waters to their pre-discharge condition;

b.    Enter an order assessing the Defendants for all reasonable costs incurred related to the investigation, cleanup and removal, restoration, treatment, and

monitoring, directly or indirectly resulting from the contamination of the waters of the State with MTBE;

c.      Enter an order assessing the Defendants for all reasonable costs that will be incurred related to the investigation, cleanup and removal, restoration, treatment, and monitoring, directly or indirectly resulting from the contamination of the waters of the State with MTBE;

d.      Enter an order assessing the Defendants for all damages in an amount at least equal to the full cost of restoring the waters of the State to their original condition prior to the contamination of such waters with MTBE;

e.      Enter an order assessing the Defendants for all compensatory damages for the lost interim value of the waters of the State as a result of the contamination of such waters with MTBE;

f.      Enter an order assessing the Defendants for all other damages sustained by plaintiffs DEP and the Administrator as a direct and proximate result of the Defendants' acts and omissions alleged herein, including remedial, administrative, oversight and legal expenses and compensation for damage to waters of the State;

g.      Enter an order against the Defendants for all appropriate injunctive relief to abate or mitigate the MTBE contamination of waters of the State;

h.      Enter an order assessing the Defendants for punitive damages in an amount to be determined by this Court;

i.      Enter an order against the Defendants requiring them to compensate plaintiffs DEP and the Administrator to the extent the Defendants have been, or will be, unjustly enriched;

30

j.      Award plaintiffs DEP and the Administrator costs and fees in this action, including reasonable attorneys' fees, incurred in prosecuting this action, together with prejudgment interest, to the full extent permitted by law; and

k.      Award plaintiffs DEP and the Administrator such other relief as this Court deems appropriate.

## COUNT II

### (Public Nuisance Against All Defendants)

123.   The Plaintiffs reallege paragraphs 1 through 122 above, and by this reference incorporate them as though set forth in full.

124.   The negligent, reckless, intentional and ultrahazardous activity of Defendants alleged herein has resulted in the contamination and pollution of the waters of the State as alleged herein, and constitutes a public nuisance.

31

125.    The public nuisance caused, contributed to, maintained, and/or participated in by the Defendants has substantially and unreasonably interfered with, obstructed and/or threatened, among other things, the State's significant property and statutory obligations in and for the waters of the State, the State's ability, through the Plaintiffs, to protect, conserve and manage the waters of the State, which are by law precious and invaluable public natural resources held by the State in trust for the benefit of the public, as well as the rights of the people of the State to enjoy a water supply free from unacceptable health risk, taste, odor, pollution and contamination.

126.    Each Defendant, except Lyondell, has, at all times relevant to this action, caused, maintained, participated in and/or assisted in the creation of such public nuisance.  Among other things, each Defendant except Lyondell is a substantial contributor to such public nuisance as follows:

(a)    All the Defendants, other than Lyondell, refined, marketed and/or otherwise supplied gasoline containing MTBE in the State (and areas affecting the waters of the State), when they knew, or reasonably should have known, that: (i) such gasoline would be placed into leaking gasoline storage and delivery systems; (ii) MTBE would be released even more readily than the constituents of conventional gasoline from gasoline storage and delivery systems; and (iii) when released into the subsurface, MTBE would spread farther and faster than other components of gasoline, resist biodegradation, contaminate ground water, including drinking water supplies, and, ultimately, be difficult and costly to remove from the water.

(b)    Defendants Hess, Citgo, Chevron, ConocoPhillips, El Paso, ExxonMobil, Gulf, Shell, Sunoco, Valero, BP, Unocal, and ARCO had first-hand knowledge

32

and experience regarding leaking gasoline storage and delivery systems and release of MTBE to ground water therefrom. These Defendants obtained such first-hand knowledge and experience because each of them owned, operated and/or controlled individual gasoline stations with leaking gasoline storage and delivery systems, including gasoline stations in the State.

(c)     Defendants Hess, Citgo, Chevron, ConocoPhillips, ExxonMobil, Gulf, Lyondell, Shell, Sunoco, Valero, BP, Unocal, ARCO, and Equilon engaged in separate and joint activities to suppress, conceal and/or minimize information regarding the hazards of MTBE in order to mislead government agencies, including plaintiff DEP, and the public, regarding the hazards of MTBE.

127.   The public nuisance caused, contributed to, maintained, and/or participated in by the Defendants has caused and/or threatens to cause substantial injury to the waters of the State, in which the State has significant property rights, trust responsibilities, and statutory obligations.

128.   The contamination of the waters of the State with MTBE alleged herein has varied over time and has not yet ceased. MTBE continues to threaten, migrate into and enter the waters of the State.

129.   As a direct and proximate result of the Defendants' acts and omissions as alleged herein, plaintiffs DEP and the Administrator have incurred, are incurring, and will continue to incur substantial costs including costs relating to:

(a)     the investigation and cleanup and removal of the discharged MTBE;

(b)     the restoration of waters of the State contaminated by discharges of MTBE and gasoline containing MTBE; and

33

(c)    the institution of corrective measures including monitoring of all public and private drinking water supplies for the presence of MTBE, provision of interim water supplies to residents whose water supplies have been contaminated due to such discharges, the establishment of acceptable sources of potable water to injured members of the public, and other necessary remedial actions, all at significant expense, loss, and damage.

130.    As a further direct and proximate result of the acts and omissions of the Defendants alleged in this Complaint, plaintiffs DEP and the Administrator have sustained, are sustaining, and will sustain, other substantial expenses for which the Defendants are jointly and severally liable.

131.    The injuries to the waters of the State caused and/or threatened by the Defendants' acts and omissions as alleged herein are indivisible.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs DEP and the Administrator pray that this Court:

a.    Enter declaratory judgment against the Defendants, jointly and severally, for all costs to abate the nuisance, including the costs to investigate, clean up and remove, restore, treat, monitor and otherwise respond to MTBE in the waters of the State so that such waters are restored to their original condition, and for all damages to compensate the citizens of New Jersey for the lost interim value and benefits of their water resources during all times of injury caused by MTBE, and for such orders as may be necessary to provide full relief to address risks to the State;

34

b.      Enter an order assessing the Defendants for all reasonable costs incurred related to the abatement of the nuisance, including the costs of investigation, cleanup and removal, restoration, treatment, and monitoring, directly or indirectly resulting from the contamination of the waters of the State with MTBE, including the costs of:

   (1)      past and future testing all public and private drinking water supplies for the presence of MTBE;

   (2)      past and future treatment of all drinking water supplies containing detectable levels of MTBE until restored to non-detectable levels and provision of alternate water supplies, where appropriate; and

   (3)      past and future monitoring of other waters of the State to detect the presence of MTBE and restoration of such waters to their pre-discharge condition;

c.      Enter an order assessing the Defendants for all reasonable costs that will be incurred related to abatement of the nuisance, including the costs of the investigation, cleanup and removal, restoration, treatment, and monitoring, directly or indirectly resulting from the contamination of the waters of the State with MTBE, including the costs of:

   (1)      past and future testing all public and private drinking water supplies for the presence of MTBE;

   (2)      past and future treatment of all drinking water supplies containing detectable levels of MTBE until restored to non-detectable levels and provision of alternate water supplies, where appropriate; and

35

(3)    past and future monitoring of other waters of the State to detect the presence of MTBE and restoration of such waters to their pre-discharge condition;

d.    Enter an order assessing the Defendants for all damages in an amount at least equal to the full cost of restoring the waters of the State to their original condition prior to the contamination of such waters with MTBE;

e.    Enter an order assessing the Defendants for all other costs sustained by plaintiffs DEP and the Administrator as a direct and proximate result of the Defendants' acts and omissions alleged herein, including remedial, administrative, oversight and legal expenses incurred or to be incurred to abate the nuisance;

f.    Enter an order against the Defendants for all appropriate injunctive relief to investigate, abate, and mitigate the MTBE contamination of waters of the State;

g.    Enter an order against the Defendants requiring them to compensate plaintiffs DEP and the Administrator to the extent the Defendants have been, or will be, unjustly enriched;

h.    Enter an order assessing the Defendants for punitive damages in an amount to be determined by this Court;

i.    Award plaintiffs DEP and the Administrator costs and fees in this action, including reasonable attorneys' fees, incurred in prosecuting this action, together with prejudgment interest, to the full extent permitted by law; and

j.    Award plaintiffs DEP and the Administrator such other relief as this Court deems appropriate.

36

## COUNT III

**(Strict Liability Under N.J.S.A. 58:10-23.11 to -23.24 Against All Defendants)**

132.    The Plaintiffs reallege paragraphs 1 through 131 above, and by this reference incorporate them as though set forth in full.

133.    Each Defendant is a "person" within the meaning of N.J.S.A. 58:10-23.11b.

134.    MTBE is a hazardous substance as defined in N.J.S.A. 58:10-23.11b.

135.    The discharge of any hazardous substance into the waters of the State, or onto the lands of the State, is prohibited.  N.J.S.A. 58:10-23.11c.

136.    Except as otherwise exempted under N.J.S.A. 58:10-23.11g.12, the discharge of hazardous substances is a violation of the Spill Act, for which any person who is the discharger of, or is in any way responsible for, any hazardous substance that is discharged, is strictly liable, jointly and severally, without regard to fault.  N.J.S.A. 58:10-23.11g.c.(1).

137.    Except as otherwise provided in N.J.S.A. 58:10-23.11g.12, any person who discharges a hazardous substance, or is in any way responsible for any hazardous substance that is discharged, shall be strictly liable, jointly and severally, without regard to fault for all cleanup and removal costs no matter by whom incurred.  N.J.S.A. 58:10-23.11g.(c).  Such person shall also be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs incurred by plaintiff DEP or a local unit pursuant to N.J.S.A. 58:10-23.11f.

138.    The Defendants are in any way responsible for MTBE and gasoline containing MTBE that was discharged into the waters or onto the land of the State in violation of N.J.S.A. 58:10-23.11 to -23.24.

139.    As a direct or indirect result of such violations, plaintiffs DEP and the Administrator have incurred, are incurring, and will continue to incur substantial costs including costs relating to:

(a)    the investigation and cleanup and removal of the discharged MTBE;

(b)    the restoration of waters of the State contaminated by discharges of MTBE and gasoline containing MTBE;

(c)    the compensation of the citizens of New Jersey for the lost interim value and benefits of the waters of the State as a result of the contamination of such waters with MTBE; and

(d)    the institution of corrective measures including monitoring of all public and private drinking water supplies for the presence of MTBE, provision of interim water supplies to residents whose water supplies have been contaminated due to such discharges, the establishment of acceptable sources of potable water to injured members of the public, and other necessary remedial actions, all at significant expense, loss, and damage.

140.    The costs and damages plaintiffs DEP and the Administrator have incurred, and will incur, are "cleanup and removal costs" within the meaning of N.J.S.A. 58:10-23.11b.

141.    The Defendants are strictly, jointly and severally liable for any and all such cleanup and removal costs and damages that plaintiffs DEP and the Administrator have incurred, are incurring, and will incur, as a result of the Defendants' actions.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs DEP and the Administrator pray that this Court:

38

a.      Enter declaratory judgment against the Defendants, jointly and severally, for all costs to investigate, clean up and remove, restore, treat, monitor and otherwise respond to the discharge of MTBE into the waters of the State so that such waters are restored to their original condition, and for all other relief to compensate the citizens of New Jersey for the lost interim value and benefits of their water resources during all times of injury caused by MTBE, and for such orders as may be necessary to provide full relief to address risks to the State.

b.      Enter an order assessing the Defendants for all reasonable costs incurred related to investigation, cleanup and removal, treatment, monitoring, and restoration, directly or indirectly resulting from the discharge of MTBE into the waters of the State, including the costs of:

(1)      past and future testing of all public and private drinking water supplies for the presence of MTBE;

(2)      past and future treatment of all drinking water supplies containing detectable levels of MTBE until restored to non-detectable levels and provision of alternate water supplies, where appropriate; and

(3)      past and future monitoring of other waters of the State to detect the presence of MTBE and restoration of such waters to their pre-discharge condition;

c.      Enter an order assessing the Defendants for all reasonable costs that will be incurred related to the investigation, cleanup and removal, restoration, treatment, and monitoring, directly or indirectly resulting from the contamination of the waters of the State with MTBE, including the costs of:

39

       (1)     past and future testing of all public and private drinking water supplies for the presence of MTBE;

       (2)     past and future treatment of all drinking water supplies containing detectable levels of MTBE until restored to non-detectable levels and provision of alternate water supplies, where appropriate; and

       (3)     past and future monitoring of other waters of the State to detect the presence of MTBE and restoration of such waters to their pre-discharge condition;

d.     Enter an order assessing the Defendants for all damages in an amount at least equal to the full cost of restoring the waters of the State to their original condition prior to the contamination of such waters with MTBE;

e.     Enter an order assessing the Defendants for all other damages sustained by plaintiffs DEP and the Administrator as a direct and proximate result of the Defendants' acts and omissions alleged herein, including remedial, administrative, oversight and legal expenses and compensation for damage to waters of the State.

f.     Enter an order against the Defendants for all appropriate injunctive relief to abate or mitigate the MTBE contamination of waters of the State;

g.     Award plaintiffs DEP and the Administrator costs and fees in this action, including reasonable attorneys' fees, incurred in prosecuting this action, together with prejudgment interest, to the full extent permitted by law; and

h.     Award plaintiffs DEP and the Administrator such other relief as this Court deems appropriate.

## COUNT IV

**(Strict Liability Under <u>N.J.S.A.</u> 58:10A-1 to -35 Against All Defendants)**

142.   The Plaintiffs reallege paragraphs 1 through 141 above and by reference incorporate them as though set forth in full.

143.   Each Defendant is a "person" within the meaning of <u>N.J.S.A.</u> 58:10A-3.

144.   MTBE and gasoline containing MTBE are "pollutants" as defined in <u>N.J.S.A.</u> 58:10A-3.

145.   Except as otherwise exempted pursuant to <u>N.J.S.A.</u> 58:10A-6d. and p., it is unlawful for any person to discharge any pollutant except to the extent the discharge conforms with a valid New Jersey Pollutant Discharge Elimination System permit issued by plaintiff Commissioner pursuant to the Water Pollution Control Act, or pursuant to a valid National Pollutant Discharge Elimination System permit issued pursuant to the federal Water Pollution Control Act, 33 <u>U.S.C.A.</u> §§ 1251 to - 1387. <u>N.J.S.A.</u> 58:10A-6a.

146.   The unauthorized discharge of pollutants is a violation of the Water Pollution Control Act for which any person who is the discharger is strictly liable, without regard to fault. <u>N.J.S.A.</u> 58:10A-6a.

147.   Certain of the Defendants discharged pollutants to the waters of the State within the meaning of <u>N.J.S.A.</u> 58:10A-3e., which pollutants included MTBE and gasoline containing MTBE.

148.   As a direct or indirect result of such violations, plaintiff DEP has incurred, is incurring, and will continue to incur substantial costs including costs relating to:

(a)   the investigation and cleanup and removal of the discharged MTBE;

(b)      the restoration of waters of the State contaminated by discharges of MTBE and gasoline containing MTBE;

(c)      the compensation of the citizens of New Jersey for the lost interim value and benefits of the waters of the State as a result of the contamination of such waters with MTBE; and

(d)      the institution of corrective measures including monitoring of all public and private drinking water supplies for the presence of MTBE, provision of interim water supplies to residents whose water supplies have been contaminated due to such discharges, the establishment of acceptable sources of potable water to injured members of the public, and other necessary remedial actions, all at significant expense, loss, and damage.

149.   Plaintiff DEP also has incurred, and will continue to incur, costs and damages, including compensatory damages and all other actual damages for waters of the State that have been, or may be, lost or destroyed as a result of the discharge of MTBE and gasoline containing MTBE.

150.   The costs and damages plaintiff DEP has incurred, and will incur, are recoverable within the meaning of N.J.S.A. 58:10A-10c.(2)-(4).

151.   Certain of the Defendants discharged pollutants, which discharges were neither permitted pursuant to N.J.S.A. 58:10A-6a., nor exempted pursuant to N.J.S.A. 58:10A-6d. or N.J.S.A. 58:10A-6p., and are liable, without regard to fault, for all costs and damages, including compensatory damages and all other actual damages for waters of the State that have been, or may be, lost or destroyed as a result of the discharge of MTBE and gasoline containing MTBE. N.J.S.A. 58:10A-6a.

42

152.    Pursuant to <u>N.J.S.A.</u> 58:10A-10c., plaintiff Commissioner may bring an action in the Superior Court for injunctive relief, <u>N.J.S.A.</u> 58:10A-10c.(1); for the reasonable costs of any investigation, inspection, or monitoring survey which led to establishment of the violation, including the costs of preparing and litigating the case, <u>N.J.S.A.</u> 58:10c.(2); for any reasonable cost incurred by the State in removing, correcting, or terminating the adverse effects upon water quality resulting from any unauthorized discharge of pollutants for which action under this subsection may have been brought, <u>N.J.S.A.</u> 58:10A-10c.(3); for compensatory damages and any other actual damages for any natural resource of this State, including waters of the State, that has been, or may be, lost or destroyed as a result of the unauthorized discharge of pollutants, <u>N.J.S.A.</u> 58:10A-10c.(4); and for the actual amount of any economic benefits accruing to the violator from any violation, including savings realized from avoided capital or noncapital costs resulting from the violation, the return earned or that may be earned on the amount of avoided costs, any benefits accruing as a result of a competitive market advantage enjoyed by reason of the violation, or any other benefit resulting from the violation, <u>N.J.S.A.</u> 58:10A-10c.(5).

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff Commissioner prays that this Court:

a.    Enter declaratory judgment against the Defendants, jointly and severally, for all costs to investigate, clean up and remove, restore, replace, treat, monitor and otherwise respond to the discharge of MTBE into the waters of the State so that such waters are restored to their original condition, and for all other relief to compensate the citizens of New Jersey for the lost interim value and benefits of their water resources during all times of injury caused by MTBE, and for such orders as may be necessary to provide full relief to address risks to the State;

43

b.    Enter an order assessing the Defendants for all reasonable costs incurred related to investigation, cleanup and removal, treatment, monitoring, restoration, and replacement directly or indirectly resulting from the discharge of MTBE into the waters of the State, including the costs of:

(1)   past and future testing of all public and private drinking water supplies for the presence of MTBE;

(2)   past and future treatment of all drinking water supplies containing detectable levels of MTBE until restored to non-detectable levels and provision of alternate water supplies, where appropriate; and

(3)   past and future monitoring of other waters of the State to detect the presence of MTBE and restoration of such waters to their pre-discharge condition;

c.    Enter an order assessing the Defendants for all reasonable costs that will be incurred related to the investigation, cleanup and removal, restoration, replacement, treatment, and monitoring, directly or indirectly resulting from the contamination of the waters of the State with MTBE, including the costs of:

(1)   past and future testing of all public and private drinking water supplies for the presence of MTBE;

(2)   past and future treatment of all drinking water supplies containing detectable levels of MTBE until restored to non-detectable levels and provision of alternate water supplies, where appropriate; and

(3)    past and future monitoring of other waters of the State to detect the presence of MTBE and restoration of such waters to their pre-discharge condition;

d.    Enter an order assessing the Defendants for all damages in an amount at least equal to the full cost of restoring the waters of the State to their original condition prior to the contamination of such waters with MTBE and for the economic benefit enjoyed by such Defendants due to their violation of the Water Pollution Control Act;

e.    Enter an order assessing the Defendants for all other damages sustained as a direct and proximate result of the Defendants' acts and omissions alleged herein, including remedial, administrative, oversight and legal expenses and compensation for damage to waters of the State.

f.    Enter an order against the Defendants for all appropriate injunctive relief to abate or mitigate the MTBE contamination of waters of the State;

g.    Award plaintiff Commissioner her costs and fees in this action, including reasonable attorneys' fees, incurred in prosecuting this action, together with prejudgment interest, to the full extent permitted by law; and

h.    Award plaintiff Commissioner such other relief as this Court deems appropriate.

## COUNT V

### (Trespass Against All Defendants)

153.    The Plaintiffs reallege paragraphs 1 through 152 above, and by this reference incorporate them as though set forth in full.

45

154.    The State is the owner and actual possessor of property rights and interests in the waters of the State, which the State also holds in trust for the benefit of its citizens. The State is in exclusive possession of these waters with the exception of times when the State grants a permit for certain limited uses of such waters. These property rights and interests include, but are not limited to, plaintiff DEP's control over waters of the State and plaintiffs DEP's and the Administrator's statutory responsibilities to protect the quality of such waters from contamination and pollution.

155.    The Defendants manufactured, refined, marketed and/or otherwise supplied MTBE and/or gasoline containing MTBE.

156.    Among other things, the Defendants caused MTBE to enter, invade, intrude upon and injure the waters of the State, trespassing upon the State's exclusive possession of such waters, as follows:

(a)    Defendant Lyondell manufactured, promoted and supplied MTBE to refiners when it knew that it was substantially certain that: (i) the refiners would in turn blend the MTBE into gasoline; (ii) such gasoline containing MTBE would then be placed into leaking gasoline storage and delivery systems, including those in the State; (iii) MTBE would be discharged even more readily than the constituents of conventional gasoline from gasoline storage and delivery systems; and (iv) when discharged into the subsurface, MTBE would spread farther and faster than other components of gasoline, resist biodegradation, contaminate waters of the State, including drinking water supplies, and, ultimately, be difficult and costly to find and remove from the water.

(b)     The other Defendants refined, marketed and/or otherwise supplied gasoline containing MTBE that was delivered into the State (or areas affecting the waters of the State), when they knew that: (i) such gasoline would be placed into leaking gasoline storage and delivery systems; (ii) MTBE would be discharged even more readily than the constituents of conventional gasoline from gasoline storage and delivery systems; and (iii) when discharged into the subsurface, MTBE would spread farther and faster than other components of gasoline, resist biodegradation, contaminate ground water, including drinking water supplies, and, ultimately, be difficult and costly to remove from the water.

(c)     Defendants Hess, Citgo, Chevron, ConocoPhillips, El Paso, ExxonMobil, Gulf, Shell, Sunoco, Valero, BP, Unocal, and ARCO had first-hand knowledge and experience regarding leaking gasoline storage and delivery systems and discharges of MTBE to ground water therefrom.  These Defendants obtained such first-hand knowledge and experience because each of them owned, operated and/or controlled individual gasoline stations with leaking gasoline storage and delivery systems, including gasoline stations in the State.

(d)     The Defendants manufactured, refined, marketed, promoted and/or otherwise supplied MTBE to downstream handlers when they knew that it was substantially certain that MTBE would: (i) be discharged into the environment from commercial and consumer uses and sources in the State other than gasoline storage and delivery systems; and (ii) contaminate the waters of the State.

(e)     Despite their knowledge that water contamination with MTBE was the inevitable consequence of their conduct as alleged herein, the Defendants failed to

provide any warnings or special instructions, or take any other precautionary measures to prevent or mitigate such contamination.

(f)      Defendants Hess, Citgo, Chevron, ConocoPhillips, ExxonMobil, Gulf, Lyondell, Shell, Sunoco, Valero, BP, Unocal, ARCO, and Equilon engaged in separate and joint activities to suppress, conceal and/or minimize information regarding the hazards of MTBE in order to mislead government agencies and officials, including the Plaintiffs, and the public regarding the hazards of MTBE.

157.   The contamination of the waters of the State with MTBE alleged herein has varied over time and has not yet ceased.  MTBE continues to threaten, migrate into and enter the waters of the State.

158.   The State has not consented to, and does not consent to, the trespass alleged herein.  The Defendants knew or reasonably should have known that the State would not consent to this trespass.

159.   As a direct and proximate result of the Defendants' acts and omissions, plaintiffs DEP and the Administrator have incurred, are incurring, and will continue to incur investigation, cleanup and removal, restoration, treatment, and monitoring costs and expenses related to contamination of the waters of the State with MTBE, for which the Defendants are jointly and severally liable.

160.   As a further direct and proximate result of the acts and omissions of the Defendants, plaintiffs DEP and the Administrator have sustained and will sustain other substantial expenses and damages, for which the Defendants are jointly and severally liable.

161.   The injuries to the waters of the State caused and/or threatened by the Defendants' acts and omissions as alleged herein are indivisible.

48

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs DEP and the Administrator pray that this Court:

     a.     Enter declaratory judgment against the Defendants, jointly and severally, for all costs to investigate, clean up and remove, restore, treat, monitor and otherwise respond to the discharge of MTBE into the waters of the State so that such waters are restored to their original condition, and for all damages to compensate the citizens of New Jersey for the lost interim value and benefits of their water resources during all times of injury caused by MTBE, and for such orders as may be necessary to provide full relief to address risks to the State.

     b.     Enter an order assessing the Defendants for all reasonable costs incurred related to investigation, cleanup and removal, treatment, monitoring, and restoration, directly or indirectly resulting from the discharge of MTBE into the waters of the State, including the costs of:

          (1)     past and future testing of all public and private drinking water supplies for the presence of MTBE;

          (2)     past and future treatment of all drinking water supplies containing detectable levels of MTBE until restored to non-detectable levels and provision of alternate water supplies, where appropriate; and

          (3)     past and future monitoring of other waters of the State to detect the presence of MTBE and restoration of such waters to their pre-discharge condition;

     c.     Enter an order assessing the Defendants for all reasonable costs that will be incurred related to the investigation, cleanup and removal, restoration,

treatment, and monitoring, directly or indirectly resulting from the contamination of the waters of the State with MTBE, including the costs of:

      (1)    past and future testing of all public and private drinking water supplies for the presence of MTBE;

      (2)    past and future treatment of all drinking water supplies containing detectable levels of MTBE until restored to non-detectable levels and provision of alternate water supplies, where appropriate; and

      (3)    past and future monitoring of other waters of the State to detect the presence of MTBE and restoration of such waters to their pre-discharge condition;

d.    Enter an order assessing the Defendants for all damages in an amount at least equal to the full cost of restoring the waters of the State to their original condition prior to the contamination of such waters with MTBE;

e.    Enter an order assessing the Defendants for all other damages sustained by Plaintiffs DEP and the Administrator as a direct and proximate result of the Defendants' acts and omissions alleged herein, including remedial, administrative, oversight and legal expenses and compensation for damage to waters of the State;

f.    Enter an order against the Defendants for all appropriate injunctive relief to abate or mitigate the MTBE contamination of waters of the State;

g.    Enter an order assessing the Defendants for punitive damages in an amount to be determined by this Court;

h.      Enter an order against the Defendants requiring them to compensate plaintiffs DEP and the Administrator to the extent the Defendants have been, or will be, unjustly enriched;

i.      Award plaintiffs DEP and the Administrator costs and fees in this action, including reasonable attorneys' fees, incurred in prosecuting this action, together with prejudgment interest, to the full extent permitted by law; and

j.      Award plaintiffs DEP and the Administrator such other relief as this Court deems appropriate.

## COUNT VI

### (Negligence Against All Defendants)

162.    The Plaintiffs reallege paragraphs 1 through 161 above, and by this reference incorporate them as though set forth in full.

163.    The Defendants had a duty to plaintiffs DEP and the Administrator to exercise due care in the design, manufacture, formulation, handling, control, disposal, marketing, sale, testing, labeling, use, and instructions for use of MTBE and/or gasoline containing MTBE.

164.    Defendants so negligently, carelessly, and recklessly designed, manufactured, formulated, handled, labeled, instructed, controlled (or failed to control), tested (or failed to test), marketed, sold and otherwise distributed MTBE and gasoline containing MTBE that they breached their duties and directly and proximately caused MTBE to contaminate and threaten the waters of the State, resulting in the damages alleged in this Complaint.

165.    The Defendants failed to conduct reasonable, appropriate or adequate scientific studies to evaluate the environmental fate and transport characteristics of MTBE, and/or the likelihood that use of MTBE as a component of gasoline would pollute public water supplies,

render drinking water unusable and unsafe, and threaten public health and welfare and the environment.

166.    Defendant Lyondell, among other things, manufactured, promoted and/or otherwise supplied MTBE to refiners when it knew, or reasonably should have known, that:

(a)    the refiners would in turn blend the MTBE into gasoline;

(b)    such gasoline containing MTBE would then be placed into leaking gasoline storage and delivery systems, including those in the State;

(c)    MTBE would be discharged even more readily than the constituents of conventional gasoline from gasoline storage and delivery systems; and

(d)    when discharged into the subsurface, MTBE would spread farther and faster than other components of gasoline, resist biodegradation, contaminate waters of the State, including drinking water supplies, and, ultimately, be difficult and costly to find and remove from the water.

167.    The other Defendants among other things, refined, marketed and/or otherwise supplied gasoline containing MTBE that was delivered into the State and/or in areas affecting waters of the State, when they knew, or reasonably should have known, that:

(a)    such gasoline would be placed into leaking gasoline storage and delivery systems;

(b)    MTBE would be discharged even more readily than the constituents of conventional gasoline from gasoline storage and delivery systems; and

(c)    when discharged into the subsurface, MTBE would spread farther and faster than other components of gasoline, resist biodegradation, contaminate

52

waters of the State, including drinking water supplies, and, ultimately, be difficult and costly to remove from the water.

168.  Defendants Hess, Citgo, Chevron, ConocoPhillips, El Paso, ExxonMobil, Gulf, Shell, Sunoco, Valero, BP, Unocal, and ARCO also had first-hand knowledge and experience regarding leaking gasoline storage and delivery systems and releases of MTBE to ground water therefrom.  These Defendants obtained such first-hand knowledge and experience because each of them owned, operated and/or controlled individual gasoline stations with leaking gasoline storage and delivery systems, including gasoline stations in the State.

169.  The Defendants manufactured, refined, marketed, promoted and/or otherwise supplied MTBE and/or gasoline containing MTBE to downstream handlers when they knew, or reasonably should have known, that MTBE would: (a) be discharged into the environment from commercial and consumer uses and sources in the State other than gasoline storage and delivery systems; and (b) contaminate the waters of the State.

170.  Despite their knowledge that water contamination with MTBE was the inevitable consequence of their conduct as alleged herein, the Defendants failed to provide any warnings or special instructions, or take any other precautionary measures to prevent or mitigate such contamination.

171.  In light of the facts alleged herein, the Defendants breached their duty to use due care in the design, manufacture, formulation, handling, control, marketing, sale, testing, labeling, use, and instructions for use of MTBE and/or gasoline containing MTBE.

172.  As a direct and proximate result of the Defendants' acts and omissions as alleged herein, plaintiffs DEP and the Administrator have incurred, are incurring, and will continue to incur investigation, cleanup and removal, treatment, monitoring, and restoration costs and

expenses related to contamination of the waters of the State with MTBE, for which the Defendants are jointly and severally liable.

173.    As a further direct and proximate result of the acts and omissions of the Defendants alleged in this Complaint, plaintiffs DEP and the Administrator have sustained and will sustain other substantial expenses and damages for which the Defendants are jointly and severally liable.

174.    The injuries to the waters of the State caused and/or threatened by the Defendants' acts and omissions as alleged herein are indivisible.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs DEP and the Administrator pray that this Court:

a.    Enter declaratory judgment against the Defendants, jointly and severally, for all costs to investigate, clean up and remove, restore, treat, monitor and otherwise respond to the discharge of MTBE into the waters of the State so that such waters are restored to their original condition, and for all damages to compensate the citizens of New Jersey for the lost interim value and benefits of their water resources during all times of injury caused by MTBE, and for such orders as may be necessary to provide full relief to address risks to the State;

b.    Enter an order assessing the Defendants for all reasonable costs incurred related to investigation, cleanup and removal, treatment, monitoring, and restoration, directly or indirectly resulting from the discharge of MTBE into the waters of the State, including the costs of:

(1)    past and future testing of all public and private drinking water supplies for the presence of MTBE;

54

(2)      past and future treatment of all drinking water supplies containing detectable levels of MTBE until restored to non-detectable levels and provision of alternate water supplies, where appropriate; and

(3)      past and future monitoring of other waters of the State to detect the presence of MTBE and restoration of such waters to their pre-discharge condition;

c.      Enter an order assessing the Defendants for all reasonable costs that will be incurred related to the investigation, cleanup and removal, restoration, treatment, and monitoring, directly or indirectly resulting from the contamination of the waters of the State with MTBE, including the costs of:

(1)      past and future testing of all public and private drinking water supplies for the presence of MTBE;

(2)      past and future treatment of all drinking water supplies containing detectable levels of MTBE until restored to non-detectable levels and provision of alternate water supplies, where appropriate; and

(3)      past and future monitoring of other waters of the State to detect the presence of MTBE and restoration of such waters to their pre-discharge condition;

d.      Enter an order assessing the Defendants for all damages in an amount at least equal to the full cost of restoring the waters of the State to their original condition prior to the contamination of such waters with MTBE;

e.      Enter an order assessing the Defendants for all other damages sustained by plaintiffs DEP and the Administrator as a direct and proximate result of the

55

Defendants' acts and omissions alleged herein, including remedial, administrative, oversight and legal expenses and compensation for damage to waters of the State.

f.      Enter an order against the Defendants for all appropriate injunctive relief to abate or mitigate the MTBE contamination of waters of the State;

g.      Enter an order against the Defendants requiring them to compensate plaintiffs DEP and the Administrator to the extent the Defendants have been, or will be, unjustly enriched;

h.      Award plaintiffs DEP and the Administrator their costs and fees in this action, including reasonable attorneys' fees, incurred in prosecuting this action, together with prejudgment interest, to the full extent permitted by law; and

i.      Award plaintiffs DEP and the Administrator such other relief as this Court deems appropriate.

Plaintiffs are entitled to a trial by a jury and hereby demand a trial by a jury.

COHN, LIFLAND, PEARLMAN, HERMANN        ANNE MILGRAM
& KNOPF, L.L.P.                         ATTORNEY GENERAL OF NEW JERSEY
Attorneys for Plaintiffs                Attorney for Plaintiffs


By: /s/ Barry A. Knopf                  By: _____
    Barry A. Knopf, Esq.                    Richard F. Engel
    Special Counsel to the                  Deputy Attorney General
    Attorney General

                                        Dated: September 24, 2008

RICHARDSON, PATRICK, WESTBROOK &
BRICKMAN, L.L.C.
Attorneys for Plaintiffs
Special Counsel to the
Attorney General

LAW OFFICES OF JOHN K. DEMA, P.C.
Attorneys for Plaintiffs
Special Counsel to the
Attorney General

By: /s/ Gordon C. Rhea
    Gordon C. Rhea, Esq.
    Special Counsel to the
    Attorney General

By: /s/ John K. Dema
    John K. Dema, Esq.
    Special Counsel to the
    Attorney General

MILLER, AXLINE & SAWYER
Attorneys for Plaintiffs
Special Counsel to the
Attorney General

By: _____
    Duane C. Miller, Esq.
    Michael Axline, Esq.
    Special Counsel to the
    Attorney General

Dated: 9/24/08

57

Index No.              Year                        RJI No.                        Hon.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NJ Department of Environmental Protection, et al.

Plaintiffs,

-against-

Atlantic Richfield, Co., et al

Defendants.

Getty Properties Corp.,

Defendant/ Third-Party Plaintiff,

- against -

Harbans Singh, et al.

Third-Party Defendants

**THIRD-PARTY SUMMONS AND COMPLAINT**

RAWLE & HENDERSON, LLP
*Office and Post Office Address, Telephone*
14 WALL STREET
NEW YORK, N.Y. 10005-2101
(212) 323-7070

| To | Signature (Rule 130-1.1-a) |
|---|---|
| | ................................................ |
| | Print name beneath |
| Attorney(s) for | |

Service of a copy of the within                              is hereby admitted.

Dated,                          ................................................
                                         Attorney(s) for

Please take notice

☐ <u>NOTICE OF ENTRY</u>
that the within is a (*certified*) true copy of a
duly entered in the office of the clerk of the within named court on

☐ <u>NOTICE OF SETTLEMENT</u>
that an order                              of which the within is a true copy will be presented for
settlement to the HON.                                        one of the judges
of the within named court, at
on                          at            M
Dated,                                           Yours, etc.
                                         RAWLE & HENDERSON, LLP
                                         *Attorneys for*
To                                       *Office and Post Office Address*
                                         14 WALL STREET
                                         NEW YORK, NEW YORK 10005

Attorney(s) for                 NEW YORK, N.Y. 10005-2101