UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**In re: Methyl Tertiary Butyl Ether
("MTBE")
Products Liability Litigation**

MDL NO. 1358 (SAS)
Master File No. 1:00-1898

**DECLARATION OF BRIAN D.
LANGA IN SUPPORT OF
DEFENDANT PETRO-
DIAMOND
INCORPORATED'S MOTION
FOR ORDER DETERMINING
GOOD FAITH SETTLEMENT**

---

This Document Relates To:
*Orange County Water District v. Unocal
Corp., et al.* 04 Civ. 4968 (SAS)

## DECLARATION OF BRIAN D. LANGA IN SUPPORT OF DEFENDANT PETRO-DIAMOND INCORPORATED'S MOTION FOR ORDER DETERMINING GOOD FAITH SETTLEMENT

Brian D. Langa, an attorney admitted to practice law in the State of California and pro hac vice in this Court, hereby declares the following under the penalty of perjury:

1.      I am a partner with the law firm of Demetriou, Del Guercio, Springer & Francis, LLP.  My firm is counsel to Petro-Diamond Incorporated ("PDI") with respect to lawsuits filed against PDI concerning the gasoline additives methyl tertiary butyl ether ("MTBE") and tertiary butyl alcohol ("TBA").  Beginning in 2006, I engaged in discussions with counsel for Plaintiff Orange County Water District ("the District") concerning settlement of the above-referenced case (the "Litigation") regarding station sites within the District's service area and near the

1

service area that are potentially within the geographic scope of the Litigation.  I have personal knowledge of the facts set forth in this Declaration, except regarding those matters stated on information and belief, which matters I believe to be true.

2.      I make this declaration in support of the motion by PDI for a determination by the Court that the Settlement and Release Agreement between the District and PDI ("Settlement Agreement") is a good faith settlement under applicable California law.  A true and correct copy of the Settlement Agreement is attached hereto as Exhibit A.

3.      The Litigation involves claims  for alleged contamination of groundwater by gasoline and its constituents, including MTBE and TBA.  On October 29, 2004, the District filed its Second Amended Complaint naming PDI in place of DOE 6.  Upon information and belief, the Litigation is the sole case in this MDL to which PDI is a party.

4.      The District's claims concern the alleged past, present, and future actual or threatened presence of MTBE, TBA, other authorized oxygenates, gasoline, benzene, toluene, ethylbenzene, xylenes, and/or other components of gasoline and fuel in water or on property (including but not limited to wells, aquifers, and water resources) accessed, accessible, managed, owned, operated, used, and/or protected by the District ("Gasoline Contamination").

5.      PDI was named as a "Supplier Defendant" and "MTBE Manufacturer and Supplier Defendant" as opposed to a "Refiner Defendant" or "Owner/Operator Defendant."

6.      PDI operates a petroleum products distribution terminal located in the Port of Long Beach, Los Angeles County, California.  Upon information and belief, PDI does not manufacture or refine gasoline or MTBE, and it does not own or operate any gasoline station sites.  Based upon the discovery conducted and records reviewed to date PDI is not aware of any records that indicate product once

owned by PDI was transported to any of the 150 stations on the District's February 20, 2009 provided as an attachment to the February 20, 2009 letter from Tracey L. O'Reilly to Jon D. Anderson ("Plume List").[1]

7.     Upon information and belief, at no time relevant to the District's claims did PDI manufacture any constituent of gasoline or refine gasoline.

8.     PDI does sell product that may be transported to station sites in Orange County.  Upon information and belief, PDI's sales occur in a limited number of manners.  First, PDI may contract with an independent contractor trucking company to directly deliver the PDI product to PDI customers who operate station sites ("Direct Deliveries").  Upon information and belief, PDI has records dating back to 1996 identifying this Direct Delivery product's station site destination, and PDI did not locate any records of Direct Deliveries to any of the 150 station sites on the Plume List.

9.     Second, upon information and belief, PDI posts a price, typically daily or even more frequently, and wholesale customers direct their trucks to the PDI terminal in Los Angeles County and load from the PDI terminal's truck racks ("Wholesale Sales").  This practice is not unlike a customer filling up at the corner station upon recognizing the posted price is a good deal.  These customers, (so-called "jobbers"), fill up and take the product to destinations unknown to PDI. Indeed, as competitors with PDI's Direct Deliveries, the Wholesale Sales' purchasers guard such destination information from PDI.  Upon information and belief, PDI is not aware of any records of Wholesale Sales indicating PDI product with MTBE was taken to a station site on the Plume List.

---

[1]  The District has disclosed that it intends to conduct additional low-level (i.e. below 1.0 ppb) MTBE testing and claims that the cost of such testing is recoverable under the Orange County Water District Act.  The District has indicated that additional sites could be added to plumes for which the District seeks damages, adding to the potential scope, duration, and expense of the Litigation.

10.    Third, upon information and belief, PDI may sell product via pipeline or in tankage to refiners or others in Los Angeles County ("Head of Pipe Sales"). For the most part, these are sales in which PDI takes a position on a product in the Los Angeles market with a delivery location at Kinder Morgan ("KM") Watson in Los Angeles County.  (Upon information and belief, KM Watson is not a terminal; it is a hub in the KM distribution system from which product can be transported via the KM pipelines or other pipelines to eventually reach a terminal from which a truck would take the product to a station site.)  Upon information and belief, PDI has no knowledge of where the purchaser is sending the product in the intrastate and interstate KM system, much less at which gas station that product will end up. Finally, upon information and belief, there are no records of the endpoint destination of other similar sales, e.g., sales in commingled tankage or via proprietary pipeline to a refiner.

11.    Upon information and belief, PDI's records reflect that it purchased and sold approximately 110,000 barrels total of neat MTBE to blenders or refiners from 1996 through 2003.  Upon information and belief, PDI may have engaged in similar sales prior to 1996.

12.    In addition, third parties may utilize PDI's port and/or terminal to offload, store, and pass through their product; upon information and belief, PDI does not take title to such product.

13.    Beginning in or about Fall 2006, until the present, counsel for the District and PDI exchanged correspondence and telephone conversations to discuss: the basis of PDI being named as a defendant in the Litigation; the nature of the District's claims against PDI; the evidence, or lack thereof, relating to the same; and settlement as a possible path of resolution of the Litigation.

14.    On March 30, 2011, PDI and the District engaged in a mediation before retired Judge Alfred G. Chiantelli, who, among other accomplishments, has

successfully mediated other MTBE matters.  This mediation culminated in the agreed upon settlement memorialized in Exhibit A.

15.    Recognizing that the Litigation will become increasingly expensive and time-consuming as it proceeds towards multiple trials, PDI elected to settle to avoid the uncertainty of further litigation and incurring additional litigation related expense.

16.    As a result of the settlement discussions, PDI has agreed to pay the District $2,000,000 in settlement of the Litigation and forever resolving all Gasoline Contamination claims against PDI.  See, Exhibit A.

17.    The anticipated uncertainty and expense associated with preparing for any single trial are significant. PDI does not know how many sites, if any, to which it could or would be linked.  The prospect of defending the Litigation through trial for all potential sites to which PDI could be linked is daunting and worth consideration for settlement.

18.    The settlement terms recognize that the District faces a risk of an adverse verdict if it proceeded to trial against PDI.

19.    The allocation of the settlement amount is as follows:[2]

   a.  Stations on the Plume List alleged by the District to be linked to PDI and potentially linked to Litigation Defendants who indicated they have purchased product from PDI, (although such Defendants have not identified any stations to which such PDI product may have been taken). [134 stations] - $1,800,000.

---

[2] This allocation is not binding and is utilized only for good faith evaluation.  See, e.g., *El Escorial Owners' Assn. v. DLC Plastering, Inc*. 65 Cal.Rptr.3d 524, 536 (Cal.Ct.App. 2007).

b.  Stations on the Plume List not linked to the Litigation
Defendants who indicated they have purchased product from
PDI.  [16 stations]  - $100,000.

c.  Other potential stations or bases of liability - $100,000

20.    In connection with this allocation and the above categories, I reviewed
the District's August 18, 2010 Responses to PDI's Second Set of Interrogatories.
These responses identified 27 stations to which the District appears to allege a link
with PDI, but the District Responses appear to be limited to examining those
stations associated with the District's five selected focus plumes.  (For example,
the District Responses allege PDI is linked to all ARCO stations, but the District
Responses do not list all ARCO stations on the Plume List; instead, the District
Responses list only those ARCO stations that the District alleges are linked to the
five District selected Focus Plumes.)  PDI disputes any link to any station.  In the
District Responses, the District alleges links between PDI and stations associated
with the following named stations: G&M, USA Gasoline, Unocal, Thrifty, Texaco,
Shell, Conoco, 7-Eleven, Valero, and Ultramar.   Thus, I reviewed the Plume List,
as described further below, for stations affiliated with these entities.  Further,
although the District does not list any specific Chevron station, it implies PDI
would be linked to such stations because Chevron allegedly utilizes the KM system
just as PDI does.  This allegation may have referred to PDI "head of the pipe" sales
at the KM Watson facility in Los Angeles County.  Given this, I also include
Exxon-Mobil stations in this analysis since PDI may have sold product to this
entity at KM Watson facility.

21.    In summary, I reviewed the Plume List provided as an attachment to
the February 20, 2009 letter from Tracey L. O'Reilly to Jon D. Anderson for
stations seemingly associated with G&M, USA Gasoline, Unocal, Thrifty, Texaco,
Shell, Conoco, 7-Eleven, Valero, Ultramar, Chevron, and Exxon-Mobil.  This

analysis is based solely upon my review of the station site names on the Plume List; PDI is not aware of whether discovery into the historic and/or actual owner and operators of these stations has occurred. This review resulted in identification of 134 stations. From this same review, I identified sixteen stations on the Plume List associated with category (b); these are: Beacon Bay Car Wash FV; Beacon Bay Car Wash SA; Four Star Ventures; Metro Car Wash HB; Tustin Auto Wash; Cardlock Fuels; Setco Anaheim; World Oil #31; Americo Anaheim Service Center; Berri Property; Caldwell's Auto Center; Circle K #5217; E-Z Serve #100841; Family Oil Co. #2; J&L Co./United Oil #27; and World Oil #39. The 134 stations associated with category (a) are all other stations on the Plume List other than those 16 stations identified above.

22.     With respect to the third category, PDI is not certain what links could arise, but PDI is resolving all Gasoline Contamination claims. As but one example, the District implies liability to PDI for its use of the KM system and the lease of a Chem-Oil tank in Los Angeles County. The District also alleges that its investigation for MTBE plumes and alleged stations from which such releases occurred is ongoing. Accordingly, PDI allocates a portion of its settlement to this category.

23.     Notwithstanding that for the past three years PDI has been in only this single MDL case without any connection to a specific station, the Litigation has been costly and time-consuming for PDI. Because of the nature of MDL proceedings, where rulings, law and motion, and discovery is generally applicable to many or all cases, PDI has had to monitor developments in MDL cases to the extent proceedings, including motion practice and discovery, bear on its alleged liability. Further, because PDI has not definitively been linked to a single station site and is instead generally alleged to most every site, it must monitor discovery relating to all suppliers and station sites in this matter.

24.     PDI insurers were involved in the mediation and settlement, but negotiations did not include consideration of insurance policy limits, and such limits were not discussed.  Moreover, the amount agreed to in settlement was not limited in amount by the potential existence of insurance or insurance policy limits. Nor was the financial condition of PDI a factor in any way to increase or decrease the agreed settlement amount.

25.     There is no fraud, collusion, or tortious misconduct in this settlement that was aimed at injuring the interests of the non-settling defendants.

26.     The factors set forth in the accompanying memorandum were evaluated on the basis of the information available to the parties at the time the settlement was entered into, and no one factor was determinative. In determining the amount to pay to settle this matter, the parties were mindful of the legal standard for a good faith settlement, and PDI believes it has agreed to pay an amount that is equal to or greater than its proportionate share of liability and is certainly not "out of the ballpark," as that term is used when making a good faith settlement determination under California law.

27.     The below summary is based upon my review of discovery in this matter as well as communications with other counsel and my knowledge of PDI's operations and records.

> a.  G&M Oil Company, Inc. ("G&M") - G&M's September 15, 2004 Defendant Identification Response[3] identifies PDI as one

---

[3] In 2003, the District propounded "Plaintiff's Preliminary Set of Interrogatories Re: Defendant Identification."  The District received discovery responses from most of the then defendants, ("Defendant Identification Response"), and many defendants identified PDI, (among scores of other entities), as a supplier of product that *may* have been sent to unspecified stations in Orange County.  I did not learn of these Defendant Identification Response prior to 2010.  PDI was not a party when this discovery occurred, and this discovery was not cited in District discovery responses to PDI prior to 2010.  In July 2010, in response to discovery

of three suppliers to G&M that provided product to G&M within the boundaries of Orange County; upon information and belief, the person who verified this statement has since passed away.  PDI's records date back to1996, and it has no records of sales to G&M.  Recently, G&M reviewed all of its records and confirmed it had no records of purchases from PDI.  Further, there is testimony and records that the G&M stations at issue had branding agreements for all relevant periods and could not receive product from PDI.

b.  USA Gasoline- USA Gasoline's August 30, 2004 Defendant Identification Response identifies PDI as one of three terminals from which it received product that may have been delivered into Orange County.  Upon information and belief, USA Gasoline has not produced any records identifying dates of deliveries or stations that accepted such deliveries, and PDI believes no records exist identifying a sale of PDI product to any of the USA Gasoline stations on the Plume List.

c.  Ultramar, Inc., Valero Energy Corporation, Valero Marketing and Supply Company, Valero Refining and Marketing Company, and Valero Refining Company-California (collectively, "Valero") -  In its Defendant Identification Responses, Valero identified PDI as one of 80 entities from which it acquired neat MTBE from 1997 to 2003 for use at a refinery from which it supplied product into the relevant area.

_____

requests, the District first provided to PDI these 2003 and 2004 Defendant Identification Responses.  Fact discovery closed in August 2010, so PDI did not have an adequate opportunity to investigate these parties' statements in discovery.

(Valero states the sales with PDI were from 2000 to 2003; PDI's records reflect it sold neat MTBE to Valero in 1997.) The District also notes that PDI stored MTBE for Ultramar at its facility from 1996 to 2002.  However, upon information and belief, this is in connection with a terminalling agreement, and PDI did not take title to the product.  In connection with a terminalling agreement, during a flush exchange to move Ultramar's MTBE from the PDI facility to Ultramar's Wilmington Refinery, it is possible "a limited amount of PDI product will end up in the refinery or in Ultramar pipelines." Upon information and belief, this would be a de minimis amount.

d.  7-Eleven-  OCWD's Discovery Responses note that 7-Eleven identified Ultramar as a supplier of gasoline containing MTBE. Based upon the alleged link between PDI and Ultramar, the District alleges a link between PDI and 7-Eleven.  Upon information and belief, PDI has no records of sales or deliveries to a 7-Eleven station in Orange County.

e.  ConocoPhillips Company ("Conoco")-  Conoco's August 30, 2004 Defendant Identification Responses provides a table of entities which, "supplied ConocoPhillips with MTBE blended gasoline which may have ultimately been delivered into one or more of the geographic areas listed in Plaintiffs' [California] Complaints."  The table lists 36 entities, including PDI, but it does not specify which entities are linked to which geographic areas; i.e., it does not specify which entities apply to which Complaints.  Upon information and belief, PDI sold product to

Conoco "head of the pipe," but PDI has no knowledge where such product ultimately went.

f.  Shell Oil Company, Equilon Enterprises LLC, and Texaco Refining and Marketing Inc. (collectively, "Shell") -  In its 2004 Defendant Identification Responses, Shell asserted that PDI sold it product that "may" have had MTBE at a location from which Shell, from time to time, transports into Orange County.  Upon information and belief, PDI sold product to Shell "head of the pipe," but PDI has no knowledge where such product ultimately went.   Shell also identified PDI as one of 41 suppliers of neat MTBE.

g.  Union Oil Company of California ("Unocal") – Unocal's August 30, 2004 Defendant Identification Responses identify PDI as one of 78 suppliers of gasoline containing MTBE for delivery into the Orange County service area.  Unocal's responses note various specific months from 1991 to 1997 during which it purchased fuel product from PDI, (often just one month a year but ranging up to 7 months in 1996).  PDI's records indicate these refer to "head of the pipe" transactions.

h.  Chevron U.S.A. ("Chevron") - Chevron's Defendant Identification responses reference a disk identifying customers from whom Chevron may have purchased gasoline with MTBE product that may have entered the District service area.  I was unable to obtain a copy of that CD, but upon information and belief, PDI may have sold product "head of the pipe" to Chevron.  Chevron also identified PDI as an entity that sold it neat MTBE in October 1992.

11

i.  Atlantic Richfield Company, BP Products North America, Inc., and BP West Coast Products, LLC (collectively, "ARCO") - The District's Responses state ARCO utilized the Kinder Morgan Orange County Terminal and thus allege a link between PDI and ARCO stations.  Upon information and belief, PDI may have sold product "head of the pipe" to ARCO.

j.  Kinder Morgan system- The District's Responses note that PDI utilized the Kinder Morgan distribution system.  Upon information and belief, most of PDI's "head of the pipe" related sales resulted in product in which PDI was in the chain of title being introduced to or within the KM system.  Upon information and belief, such product is sold to be delivered at KM Watson in Los Angeles County.  (Notably, upon information and belief, many KM customers "book out" certain product purchases and sales on the marketplace, so many PDI sales involved product that never entered the KM system.)  Upon information and belief, in all of the remaining PDI head of pipe transactions, PDI has no knowledge of where the actual product went.  In fact, upon information and belief, the purchaser likely has no such knowledge, and PDI does not believe it can be traced throughout the KM interstate and intrastate system, much less to a specific station.  PDI did utilize the truck racks at various KM terminals on an extremely limited basis,[4] but upon information and belief, PDI knows the

---

[4] Typically, it makes little fiscal sense for PDI to utilize the KM terminal rather than PDI's own terminal.

endpoint for all truck sales from those terminals because it is

used these terminals only for Direct Deliveries.

I declare under penalty of perjury under the law of the State of California

that the foregoing is true and correct.

Executed on the 16th day of May, 2011, at Los Angeles, California.

*/s/*
_____

Brian D. Langa
(pro hac vice)
**Demetriou, Del Guercio, Springer &
Francis, LLP**
801 South Grand Avenue, Suite 1000
Los Angeles, California 90017
Tel: (213) 624-8407
Fax: (213) 624-0174
E-mail: blanga@ddsffirm.com

Attorneys for Petro-Diamond
Incorporated

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via LexisNexis File and Serve upon all counsel of record on May 16, 2011.


_____*/s/*_____
Brian D. Langa