UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------ X
                                            :
IN RE: METHYL TERTIARY BUTYL               :
ETHER ("MTBE") PRODUCTS                    :     **OPINION AND ORDER**
LIABILITY LITIGATION                       :
------------------------------------------------— :     **Master File No. 1:00-1898**
                                            :     **MDL 1358 (SAS)**
**This document relates to:**               :     **M21-88**
                                            :
*Orange County Water District v. Unocal, et* :
*al.*, 04 Civ. 4968                         :
                                            :
------------------------------------------------ X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

        In this consolidated multi-district litigation ("MDL"), plaintiffs seek

relief from contamination, or threatened contamination, of groundwater from

various defendants' use of the gasoline additive methyl tertiary butyl ether

("MTBE") and/or tertiary butyl alcohol, a product formed by the natural

degradation of MTBE in water.  In February 2011, Orange County Water District

("OCWD" or "the District") moved for partial summary judgement under Federal

Rule of Civil Procedure 56(a) on three claims against certain defendants associated

with fourteen gasoline service station sites.[1]  In a June 20, 2011 Opinion and Order,

--------------------------------

        [1]     The sites included in the motion were: Arco # 1887; Arco # 1905;
Chevron # 9-5401; Chevron # 9-1921; Mobil # 18-JMY; Mobil # 18-G6B; Shell #

this Court denied OCWD's motion for partial summary judgment under the Orange County Water District Act ("OCWD Act") as to the recovery costs incurred by OCWD for testing production wells for MTBE and commissioning reports to investigate and characterize the groundwater impacts from MTBE. The Court also denied OCWD's motion for partial summary judgment for its trespass claim. This Court then ordered OCWD to show cause as to why summary judgment should not be granted in favor of defendants for these two claims. This Opinion assumes familiarity with the background and procedural posture of this case, as described in the June 20 Opinion and Order.[2]

## II.    LEGAL STANDARD

### A.    Summary Judgement

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] "'An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material

---

6502; Texaco # 121681; Unocal # 5792; Unocal # 5226; Unocal # 5376; Unocal # 5123; G&M Oil # 4; G&M Oil # 24.

[2]    *See In re MTBE Prods. Liab. Litig.*, No. 1:00-1898, MDL 1358, M21-88, 2011 WL 2565771, at *1-3 (S.D.N.Y. June 20, 2011).

[3]    Fed. R. Civ. P. 56(a).

if it might affect the outcome of the suit  under the governing law.'"[4]

"The moving party bears the burden of establishing the absence of any genuine issue of material fact."[5]  "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim."[6]  In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact.  To do so, the non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,'"[7] and "'may not rely on conclusory allegations or unsubstantiated speculation.'"[8]

In deciding a motion for summary judgment, a court must "'construe the facts in the light most favorable to the non-moving party and must resolve all

[4]     *Fincher v. Depository Trust & Clearing Corp.,* 604 F.3d 712, 720 (2d Cir. 2010) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008)).

[5]     *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010).

[6]     *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009).

[7]     *Brown v. Eli Lilly & Co.*, – F.3d – , 10 Civ. 512, 2011 WL 3625105, at *10 (2d Cir. Aug. 18, 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

[8]     *Id.* (quoting *Federal Deposit Ins. Corp. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)).

3

ambiguities and draw all reasonable inferences against the movant.'"[9]  However,

"'[c]redibility determinations, the weighing of the evidence, and the drawing of

legitimate inferences from the facts are jury functions, not those of a judge.'"[10]

"'The role of the court is not to resolve disputed issues of fact but to assess

whether there are any factual issues to be tried.'"[11]

### B.    Expert Testimony and Rule 26

Rule 26 of the Federal Rules of Civil Procedure requires that all

expert witnesses submit a written report if "the witness is one retained or specially

employed to provide expert testimony on the case or one whose duties as the

party's employee regularly involve giving expert testimony."[12]  Parties must make

such disclosures and reports "at the times and in the sequence that the court

orders."[13]

---

[9]      *Brod v. Omya, Inc.,* 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).

[10]     *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)) (emphasis removed).

[11]     *Brod*, 653 F.3d at 164 (quoting *Wilson v. Northwestern Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)).

[12]     Fed. R. Civ. P. 26(a)(2)(B).

[13]     Fed. R. Civ. P. 26(a)(2)(D).

Federal Rule of Evidence 702 governs expert opinion testimony.[14]
Expert testimony is that which is based on "scientific, technical, or other
specialized knowledge."[15]  Lay opinion testimony is governed by Rule 701 and
"must be 'rationally based on the perception of the witness.'"[16] " This requirement
'is the familiar requirement of first-hand knowledge or observation.'"[17]  "An
essential difference [between Rule 701 and 702] is that Rule 701 requires direct
personal knowledge of a factual matter at issue."[18]

## C.     Rule 37(c)

Federal Rule of Civil Procedure 37(c) states that "[i]f a party fails to
provide information or identify a witness as required by Rule 26(a) or (e), the party
is not allowed to use that information or witness to supply evidence on a motion . .

---

[14]     Fed. R. Evid. 702.

[15]     *Id.*

[16]     *United States v. Glenn*, 312 F.3d 58, 67 (2d Cir. 2002) (quoting Fed. R. Evid. 701).

[17]     *Id.* (quoting *United States v. Rea*, 958 F.2d 1206, 1215 (2d Cir. 1992)).  *Accord State of New York v. Solvent Chem. Co., Inc.*, 685 F. Supp. 2d 357, 419 (W.D.N.Y. 2010) ("Rather, a lay opinion must be the product of reasoning processes familiar to the average person in everyday life.").

[18]     *Solvent Chem.*, 685 F. Supp. 2d at 419 (citing Moore's Federal Practice § 26.23[2][a][i]).

5

. unless the failure was substantially justified or is harmless."[19]   The purpose "is to prevent the practice of 'sandbagging' an opposing party with new evidence. Courts in this Circuit recognize that preclusion of evidence pursuant to Rule 37(c)(1) is a drastic remedy and should be exercised with discretion and caution."[20]

## III.   DISCUSSION

In its earlier motion, OCWD sought to recover costs associated with (1) testing for MTBE at drinking water production wells associated with stations where MTBE was released and (2) retaining consultants to investigate and characterize groundwater impacts from MTBE.[21]   After finding that the plain language of the OCWD Act prohibits the recovery of OCWD's testing and report-commissioning costs, I denied summary judgment as to those costs.[22]   I then ordered OCWD to show cause as to why summary judgment should not be granted

---

[19]      Fed. R. Civ. P. 37(c)(1).

[20]      *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 606 (S.D.N.Y. 2004) (citations omitted).

[21]      *See* Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgement ("Pl. Mem. [Partial Summary Judgment]") at 2 ("The District has initiated remedial action with respect to each of the stations for which the District seeks partial summary judgment, and the District now seeks partial summary judgment with respect to the defendants' liability for the costs of that remedial action.").  *See also id.* at 6-7.

[22]      *See In re MTBE Prods. Liab. Litig.*, 2011 WL 2565771, at *5.

in favor of defendants.[23]

### A.   *Orange County Water District v. Arnold Engineering*

OCWD asks this Court to reconsider its denial of partial summary

judgment with respect to investigative costs in light of the California Court of

Appeals decision in *Orange County Water District v. Arnold Engineering*,[24] which

was published three days after the issuance of the June 20 Opinion and Order.[25]

OCWD contends that the *Arnold Engineering* decision "agrees with OCWD's

position that the costs of investigation may be recovered under the [OCWD]

Act."[26]

State appellate decisions are ordinarily binding on federal courts

applying state law.[27]   However, the portion of *Arnold Engineering* on which

OCWD relies is dicta that I am not bound to follow.  In *Arnold Engineering*, the

defendants sought to disqualify OCWD's counsel, the law firm of Miller, Axline &

---

[23]      *See id.*

[24]      *See* 127 Cal. Rptr.3d 328 (Cal. Ct. App. 2011).

[25]      *See* Plaintiff Orange County Water District's Response to Court's
Order to Show Cause Why Partial Summary Judgment Should Not Be Granted to
Defendants with Respect to OCWD Act Claims for Investigatory Costs and
Trespass Claims ("OCWD Mem.") at 1.

[26]      *Id.* at 2.

[27]      *See Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 134 (2d Cir.
1999).

Sawyer ("Miller Firm"), on the grounds of their contingency fee arrangement.[28]

"The issue before the [*Arnold Engineering* court] [was] whether the Water District

and the Miller Firm [were] prosecuting a public nuisance abatement action on the

public's behalf."[29]  If so, the contingency fee arrangement between the Miller Firm

and OCWD would be subject to a heightened neutrality standard as explained in

*County of Santa Clara v. Superior Court* and *People ex rel. Clancy v. Superior*

*Court*.[30]  The *Arnold Engineering* court found that OCWD did not bring suit on the

public's behalf but rather in its own name; therefore, the contingency fee

arrangement between OCWD and the Miller firm need not meet the limitations

---

[28]      *See Arnold Eng'g.*, 127 Cal. Rptr.3d at 331.

[29]      *Id.* at 336.

[30]      *See id.*  In *Clancy*, the California Supreme Court disqualified Attorney
James Clancy from representing the City of Corona in prosecuting abatement
actions arising under a new city ordinance.  *People ex rel. Clancy v. Superior
Court*, 39 Cal. 3d 740, 743 (1985).  The court held that the contingency fee
arrangement between the City and Clancy was prejudicial because "there is a class
of civil actions that demands the representatives of the government to be absolutely
neutral.  This requirement precludes the use in such cases of a contingent fee
arrangement."  *Id.* at 748.  In *Santa Clara*, the California Supreme Court narrowed
*Clancy*'s holding and held that the potential conflict of interest arising from
contingency fee arrangements did "not necessarily mandate disqualification in
public-nuisance cases when fundamental constitutional rights and the right to
continue operation of an existing business are not implicated.  Instead, retention of
private counsel on a contingent-fee basis is permissible in such cases if neutral,
conflict-free government attorneys retain the power to control and supervise the
litigation."  *County of Santa Clara v. Superior Court*, 235 P.3d 21, 36 (Cal. 2010).

established in *Clancy* and *Santa Clara*.[31]

In the course of finding that OCWD was bringing suit in its own name, the *Arnold Engineering* court stated that:

> Indeed, regardless whether the Water District's interest in the groundwater is classified as regulatory, proprietary, or usufructuary, the Water District is entitled to recover monetary damages for the *investigation* and remediation costs it incurred and will incur in the future. As explained both the Water Code and the Health and Safety Code authorize the Water District to bring an action in its own name to recover *investigation* and remediation costs it incurred without regard to the particular interest the Water District holds in the contaminated groundwater.[32]

OCWD now points to this statement and argues that the *Arnold Engineering* court "interpreted the remedies provisions of [the OCWD Act] as authorizing recovery of investigative costs."[33] I disagree. The statement on which OCWD relies is dicta. The *Arnold Engineering* court did not consider the issue of whether the OCWD Act allows for recovery of investigative costs nor do I know if this issue was briefed and argued by the parties.[34] The court did not examine the definitions

---

[31]    *Arnold Eng'g.*, 127 Cal. Rptr.3d at 336.

[32]    *Id.* at 339 (emphasis added).

[33]    OCWD Mem. at 4.

[34]    *See, e.g.*, Appellants' Joint Opening Brief, No. G043502, 2010 WL 3866867, at *11 (listing the issues on appeal without mentioning investigative costs).

of investigative and remedial costs, the potential differences between the two categories of costs or their treatment under the OCWD Act.[35]  Instead, in reaching its holding that OCWD was bringing the litigation on its own behalf, the *Arnold Engineering* court focused on the nature of OCWD's claims.[36]  As dicta, the statement on which OCWD relies does not alter this Court's previous finding that the plain language of the OCWD Act prohibits recovery of OCWD's investigatory costs.[37]

**B.    Non-Investigative Costs**

**1.    Herndon's Declaration**

In response to the June 20 Opinion and Order, OCWD now offers a declaration by its Chief Hydrogeologist, Roy Herndon, to argue that "significant

---

[35]    In fact, the *Arnold Engineering* court seems to ignore the difference between the two categories of costs altogether.  For example, the court first noted that "The Water District's pleading makes clear that . . . this is an action to recover remediation costs" but then later states that OCWD's first cause of action asked for "recover[y] [of] all costs it paid, or will pay in the future, *to investigate* and remediate the groundwater contamination." *Arnold Eng'g.*, 127 Cal. Rptr.3d at 337 (emphasis added).

[36]    *See id.* at 339 ("We conclude the trial court correctly determined the Water District's lawsuit is essentially an action seeking to recover the costs to *investigate and remediate* the contaminated groundwater, not a public nuisance abatement action prosecuted on the public's behalf.  *Clancy* and *Santa Clara* do not apply to the Water District's lawsuit.") (emphasis added).

[37]    *See In re MTBE Prods. Liab. Litig.*, 2011 WL 2565771, at *5.

amounts of MTBE have migrated off-site at each of the fourteen stations" and that "OCWD has moved beyond investigating off-site MTBE and has begun designing remedial systems for MTBE that has migrated off-site."[38]  Defendants are moving to strike Herndon's declaration on the grounds that OCWD failed to produce an expert report for Herndon in violation of Rule 26.[39]  OCWD contends that an expert report was not needed because Herndon's testimony does not fall under Rule 26's definition of expert testimony.[40]  OCWD argues that Herndon's testimony "is based on facts personally known to him through his work at [OCWD] and merely relates conclusions reached by him in the course of his employment"[41] and is therefore "percipient rather than expert in nature."[42]

---

[38]    OCWD Mem. at 6.

[39]    *See* Defendants' Motion to Strike Roy Herndon's Declaration ("Def. Mot. to Strike") at 1 ("Because OCWD failed to disclose Mr. Herndon's expert opinions in a written report by the deadline in compliance with the Court's prior orders, his declaration is both improper and prejudicial, and the Court should strike it entirely.").  *See also* Defendants' Reply to Plaintiff Orange County Water District's Response to Show Cause Order ("Def. Mem.") at 6. n. 5.

[40]    *See* Plaintiff Orange County Water District's Opposition to Defendants' Motion to Strike the July 25, 2011, Declaration of Roy Herndon in Support of Orange County Water District's Response to Order to Show Cause Re Summary Judgment ("OCWD Opp. to Def. Mot. to Strike") at 2-3.

[41]    *See id.* at 3.

[42]    *Id.* at 2.  Specifically, OCWD argues that "[a] substantial portion of Mr. Herndon's declaration, however, simply relates facts concerning the District's practices and internal procedures for addressing groundwater contamination within

Much of Herndon's declaration, however, is not based on his perceptions, but on his experience and specialized knowledge.  For example, Herndon's declaration covers, among other things, the typical costs of remediating groundwater contamination, typical groundwater flow rates, the extent of the MTBE off-site migration – which was based on his review of consultant and expert reports rather than his own investigation – as well as the significance of OCWD's commitment of funds for "drilling borings and collecting depth-specific ground water samples" to OCWD's remediation efforts.[43]  Herndon could not have drawn these conclusions from his first-hand perceptions or investigatory findings.[44]  To

the District's service area."  *Id.*

[43]    7/25/11 Declaration of Roy Herndon, Chief Hydrogeologist for OCWD, in Support of Plaintiff OCWD's Response to Court's Order to Show Cause Why Partial Summary Judgment Should Not Be Granted to Defendants with Respect to OCWD Act Claims for Investigatory Costs and Trespass Claims ("Herndon Decl.")  ¶¶ 2, 5, 6, 8.

[44]    *See* Fed. R. Evid. 701 (stating that lay opinion must be "rationally based on the perception of the witness").  *See also Solvent Chem.*, 685 F. Supp. 2d at 420 (classifying portions of testimony as expert opinion where witness relies on specialized and particularized knowledge gained from professional experience) ("Mr. Brown provided testimony about his direct involvement in the remediation of Gill Creek which was rationally based on his first-hand perception . . . . [However, the] testimony regarding Solvent's liability for a share of the common costs associated with the entire Gill Creek remediation project represents Mr. Brown's opinion on allocation based not on his experience as a percipient witness, but rather on his specialized knowledge gained as a result of his extensive experience as a chemical and environmental engineer with overall responsibility for Olin's environmental remediation affairs, as well as his particularized

reach these conclusions, Herndon "necessarily relied upon a reasoning process utilizing technical knowledge beyond that normal to the activities of everyday life, triggering the application of the expert disclosure rules."[45]

Although the Herndon declaration may contain expert testimony, under Rule 26(a)(2)(A), defendants are not entitled to an expert report unless Herndon is "a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony."[46]  Defendants have not submitted evidence showing that Herndon's "duties . . . regularly involve giving expert testimony."[47]  Instead, defendants contend that this Court had already ruled that OCWD's six employee

---

knowledge of the Gill Creek remediation project gained by virtue of his role as team leader/liaison with Dupont and the DEC.").

[45]     *Solvent Chem.*, 685 F. Supp. 2d at 421.  *Accord Bank of China v. NBM LLC*, 359 F.3d 171, 182 (2d Cir. 2004) (allowing testimony grounded in the investigation employee conducted in his role at the bank because the statements were based on his perceptions but striking portions that were not a result of his investigation) ("However, to the extent Huang's testimony was not a product of his investigation, but rather reflected specialized knowledge he has because of his extensive experience in international banking, its admission pursuant to Rule 701 was in error.").

[46]     Fed. R. Civ. P. 26(a)(2)(B).

[47]     *Id.*

experts – which included Herndon – are required to submit a report.[48]  I disagree.

Although I had assumed during that particular hearing that the six employees

would testify as experts – and would therefore be required to submit an expert

report – the subject was not fully discussed or briefed and I made no such ruling.[49]

Defendants have not proffered any evidence indicating that Herndon's duties

include regularly giving expert testimony.  Defendants are therefore not entitled to

an expert report.[50]  Defendant's motion to strike Herndon's declaration is denied.

------------------------------------------------

[48]        *See* Def. Mot. to Strike at 1 ("The Court specifically held that Mr. Herndon had to file an expert report if OCWD intended to offer his expert opinions in this case.").

[49]        *See* Transcript of Status Conference held on 2/15/11 ("2/15/11 Tr.") at 20-21 (discussing the number of potential OCWD employees OCWD intends to call to offer opinions at trial) ("THE COURT: . . . But [OCWD employees] do fall under the "or" clause [of Rule 26]: Or one whose duties as the party's employees involve giving expert testimony.  MR. MILLER: They have given expert testimony in a number of - -[.] THE COURT: They would be required to do a report under 26(a)(2)(B). That is what I was just checking.  So anyway, still potentially a reasonable number, even 16 and 6."). *See also id.* at 22 ("MR. PARKER: And we would request that any opinion [given by the six OCWD employees] be allowed to give at trial be limited to what they gave during those depositions.  THE COURT: No, they're entitled to submit a report. That's what I just read in the rule.  They can write an expert report, they are being proffered as an expert witness.  The fact that they are employees doesn't preclude that . . . .  They can do a report.  And then they are limited to their report.").

[50]        *See Bank of China*, 359 F.3d at 182 n. 13 (stating that defendants are only entitled to notice and not an expert report under Rule 26) ("Where the witness is not specially retained or employed to give expert testimony, or does not regularly give expert testimony in his or her capacity as an employee, no expert report is required.") (citation omitted).

Defendants Exxon Mobil Corporation and ExxonMobil Oil Corporation ("ExxonMobil") separately move to strike portions of Herndon's declaration that reference former Mobil station #18-HDR, located at 3195 Harbor Boulevard, Costa Mesa, CA.[51]  ExxonMobil asserts that OCWD's motion for partial summary judgment only addressed fourteen sites, and former Mobil station #18-HDR is not one of them.  OCWD contends that it reads the Court's order to show cause as implicating OCWD's entire claim under the OCWD Act, including stations for which OCWD did not seek partial summary judgment.[52]  Therefore, OCWD asserts that it is entitled to submit evidence with respect to any station that may be affected by the Court's order to show cause.[53]  This Court, however, specifically stated that OCWD's motion for partial summary judgment concerned only "*certain* defendants associated with the fourteen gasoline service stations sites."[54]  Therefore, the portions of Herndon's declaration relating to former Mobil

---

[51]     *See* Exxon Mobil Corporation and ExxonMobil Oil Corporation's Motion to Strike Portions of the July 25, 2011 Declaration of Roy Herndon in Support of Orange County Water District's Response to Order to Show Cause Re Summary Judgment at 1.

[52]     *See* OCWD Opp. to Def. Mot. to Strike at 1-2.

[53]     *See id.*

[54]     *In re MTBE Prods. Liab. Litig.*, 2011 WL 2565771, at *1 (emphasis in original).

15

station #18-HDR are irrelevant and are stricken.[55]

### 2. Costs Associated with Testing Production Wells and Commissioning Consultant Reports

Although OCWD may use much of Herndon's declaration, defendants are still entitled to partial summary judgment. OCWD's motion for partial summary judgment sought to recover costs associated with testing production wells and commissioning consultant reports.[56] In the June 20 Opinion and Order, I held that those costs did not fall under the OCWD Act's definition of remediation.[57] OCWD, to this date, has not presented any evidence to the contrary. Instead, OCWD asks the Court to "'liberally construe' the term 'other remedial action' to include all costs incurred in the process of remediation *other than*

---

[55]    Specifically, I am striking the last sentence of paragraph 2 as well as paragraphs 17 and 18 in their entirety.

[56]    *See* Pl. Mem. Partial Summary Judgment at 12. *Accord In re MTBE Prods. Liab. Litig.*, 2011 WL 2565771, at *5. Although OCWD also sought a judicial declaration that it was entitled to "future costs" incurred under the OCWD Act, I found that the Act clearly prohibited those costs. *See id.* at *4 n. 43.

[57]    *See In re MTBE Prods. Liab. Litig.*, 2011 WL 2565771, at *4-5 ("[S]ummary judgment is denied as to the costs incurred by OCWD in testing production wells for MTBE and in commissioning the reports. OCWD is directed to show cause . . . why summary judgment on this claim should not be granted to defendants.).

investigatory costs."[58]  OCWD offers evidence – through Herndon's declaration –
that it has spent three million dollars to "conduct bore hole drilling and depth-
specific sampling."[59]  OCWD offers further evidence that these activities are "an
integral component of the design process for remediation systems."[60]  OCWD's
line of argument, however, misses the point.  This new evidence does not relate to
the costs of production well testing or the commissioning of the consultant reports.
Rather, OCWD is asking this Court to grant summary judgement for costs that
were not the subject of its previous motion for partial summary judgment and that
OCWD has not previously presented to the Court.[61]  I decline to do so.  Because
OCWD has failed to present any evidence as to why its testing and report
commissioning constitute remedial action, I now grant summary judgment to the

---

[58]      OCWD Mem. at 7 (quoting CAL. WATER CODE APP. § 40-75)
(emphasis in original).

[59]      *See id.* at 12.

[60]      *Id.*

[61]      *See id.* at 8 ("OCWD respectfully requests that the Court either grant
summary judgment to OCWD with respect to *liability* under the Act for the costs
of remedial action *other than* investigatory costs, or find that there are contested
issues of material fact with respect to whether OCWD has incurred costs with
respect to 'other remedial action' under the Act.") (emphasis in original).  In fact,
the costs for bore hole drilling and depth-specific sampling were incurred after the
close of discovery.  If OCWD seeks to recover these costs it may have to re-open
discovery and file a new motion for summary judgment.  OCWD may raise this
issue at the next Case Management Conference scheduled for November 21, 2011.

defendants and find that those costs are not recoverable under the OCWD Act.[62]

OCWD asks that if the Court enters partial summary judgment against OCWD, the Court clarify that it is doing so because OCWD's claims under the OCWD Act are not ripe and that OCWD may seek relief in the future under the Act with respect to "reasonable costs incurred."[63]  I find that OCWD's claims are ripe with respect to the costs of production well testing and the commissioning of the consultant reports.  OCWD moved for summary judgment with respect to those costs.  As stated above, I am granting partial summary judgment on those claims in defendants' favor.  This finding, however, will not prejudice OCWD's ability to seek future relief for other remedial costs.

### C.   OCWD's Trespass Claim

The June 20 Opinion and Order also denied OCWD's motion for

---

[62]     OCWD contends that it did not mention these remedial plans previously because OCWD did not believe it was necessary given this Court's previous opinion, which found that "OCWD was appreciably harmed as a matter of law," and because the remedial plans had not been submitted to OCWD at the time of OCWD's motion.  *See id.* at 5 (quoting *In re MTBE Prods. Liab. Litig.*, 676 F. Supp. 2d 139, 149 (S.D.N.Y. 2009).  However, as defendants have noted, it would be unfair and prejudicial to allow OCWD to rely on these new facts at this stage. Defendants have not had a chance to seek discovery on any of this new evidence because the alleged expenditures that OCWD is now claiming it spent were not incurred until after the August 2010 fact discovery cutoff.

[63]     *See id.* at 6 n. 3.

partial summary judgment with respect to its claim for trespass.[64]  I found that

OCWD does not have "*exclusive* – or even *primary* – possession of the property

interest allegedly invaded by the MTBE contamination, and therefore cannot assert

the claim for continuing trespass."[65]  I then ordered OCWD to show cause as to

why summary judgment should not be entered in favor of the defendants with

respect to the trespass claim.[66]

In their response, OCWD contends that defendants have not cited any

authority that a possessory interest in groundwater must be exclusive of all others

before the holder of that interest may bring a trespass claim based upon

contamination.[67]  However, defendants have successfully argued – and I have held

– that exclusive possession is a necessary prerequisite to bringing a trespass

claim.[68]  OCWD then again quotes the passage in *Arnold Engineering* where the

court stated that OCWD is "'entitled to recover monetary damages for . . .

---

[64]      *See In re MTBE Prods. Liab. Litig.*, 2011 WL 2565771, at *12.

[65]      *See id.*

[66]      *See id.*

[67]      *See* OCWD Mem. at 13.

[68]      *See* Defendants' Opposition to Plaintiff Orange County Water
District's Motion for Partial Summary Judgment at 20 (citing *Rancho Viejo LLC v.
Tres Amigos Viejos LLC*, 100 Cal. App. 4th 550, 562 (Cal. Ct. App. 2002)).  *See
also In re MTBE Prods. Liab. Litig.*, 2011 WL 2565771, at *12.

investigation and remediation costs'" regardless of "'whether the Water District's interest in the ground water is classified as regulatory, proprietary or usufructuary.'"[69]  OCWD never explains how this statement supports its argument that it has the prerequisite property interest to bring its trespass claim.  Instead, OCWD goes on to assert that the *Arnold Engineering* court "also made clear that OCWD's interests in groundwater are not to be diminished simply because those interests include regulatory and management authority."[70]  This statement is also unhelpful.  The statement is merely a reference to *Arnold Engineering*'s rejection of defendants' argument that OCWD cannot bring the suit in its own name because it only "exercises sovereign powers to regulate and protect groundwater for its users' benefit."[71]  OCWD's arguments are unavailing.  Although the court mentioned that OCWD alleged a claim for trespass,[72] *Arnold Engineering* never addressed the merits of the claim.  Once again, the *Arnold Engineering* court

---

[69]     OCWD Mem. at 14 (quoting *Arnold Eng'g*, 127 Cal. Rptr.3d at 336).

[70]     *Id.*

[71]     *See Arnold Eng'g*, 127 Cal. Rptr.3d at 338.

[72]     *See, e.g.*, *id.* at 330 ("It also brought negligence, public nuisance, trespass, and declaratory relief claims.").  *See also id.* at 338. ("In its third cause of action for negligence and fifth cause of action for trespass, the Water District also seeks to recover present and future damages it suffered from defendants' groundwater contamination.") ("The Water District also seeks these same damages on its negligence and trespass claims.")

20

focused on the nature of OCWD's claims and the fact that they were being brought on OCWD's own behalf.[73]  Because OCWD has failed to show cause as to why judgment should not be granted against it, summary judgment is entered in favor of defendants on the trespass claim.

## IV.    CONCLUSION

For the reasons previously stated, defendants' motion to strike the declaration of Roy Herndon is denied; however ExxonMobil's motion to strike portions of the declaration relating to Mobil #18-HDR is granted.  The Clerk of the Court is directed to close these motions (Docket Nos. 276 and 277).  Furthermore, partial summary judgment is entered in favor of the defendants for OCWD's claims for costs associated with testing production wells and commissioning consultant reports as well as for OCWD's claim for trespass.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             October 24, 2011

---

[73]      *See id.* at 336.

**-Appearances-**

**Counsel for Plaintiff:**

Michael Axline, Esq.
Miller, Axline & Sawyer
1050 Fulton Avenue, Suite 100
Sacramento, CA 95825
Tel: (916) 488-6688
Fax: (916) 488-4288

**Counsel for Defendants:**

Robert E. Meadows, Esq.
Jeremiah J. Anderson, Esq.
King & Spalding LLP
1100 Louisiana, Suite 4000
Houston, TX 77002
Tel: (713) 751-3200
Fax: (713) 751-3290

Charles C. Correll, Jr., Esq.
King & Spalding LLP
101 Second Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 318-1200
Fax: (415) 318-1300

Richard E. Wallace, Jr., Esq.
William F. Hughes, Esq.
Wallace King Domike & Branson PLLC
1050 Thomas Jefferson Street, N.W.
Washington, D.C. 20007
Tel: (202) 204-1000
Fax: (202) 204-1001

**Counsel for Defendant Exxon Mobil Corporation and ExxonMobil Oil Corporation:**

Jeffery J. Parker, Esq.
Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 48th Floor
Los Angeles, CA 90071
Tel: (213) 620-1780
Fax: (213) 620-1398

**Liaison Counsel for Plaintiffs:**

Robin Greenwald, Esq.
Robert Gordon, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
Tel: (212) 558-5500
Fax: (212) 344-5461

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
McDermott Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
Tel: (212) 547-5583
Fax: (212) 547-5444