19fkmtbc                          Conference

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    In Re:  MTBE PRODUCTS
     LIABILITY LITIGATION,                    00 CV 1898 (SAS)
4

5    ------------------------------x
                                              New York, N.Y.
6                                             September 15, 2011
                                              5:30 p.m.
7
     Before:
8
                      HON. SHIRA A. SCHEINDLIN,
9
                                              District Judge
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

19fkmtbc                    Conference

1                               APPEARANCES

2    NAPOLI BERN RIPKA LLP
          Attorneys for Village of Mineola, et al.
3    KEVIN J. LAWNER

4    HERZFELD & RUBIN P.C.
          Attorneys for Northville Industries Corp
5    MICHAEL B. GALLUB
     BRIAN T. CARR
6
     DL ROTHBERG & ASSOCIATES P.C.
7         Attorneys for Tartan Oil, Leon Petro Holdings
     DEBRA L. ROTHBERG
8    JEFFREY J. BEREZNY

9    WHITE FLEISCHNER & FINO LLP
          Attorneys for 400 Jericho Turnpike, Inc., sued as 400
10   Jericho Corp.
     GIL M. COOGLER
11
     CERTILMAN BALIN ADLER & HYMAN LLP
12        Attorneys for Albertson Realty, Bill Wolf Petroleum Corp.
     PAUL B. SWEENEY
13   BARRY S. COHEN

14   LAW OFFICE OF STEVEN COHN P.C.
          Attorneys for Ofier Service Station
15   MITCHELL R. GOLDKLANG

16   HAROLD LAW PA
          Attorneys for Camson Equities
17   DAVID J. SINGER

18   RICHARD SIMON
          Attorney for Hercules Realty
19
     ALSO PRESENT:
20   Mohammad Nawaz, Pro Se Fourth-Party Defendant

21

22

23

24

25

19fkmtbc                         Conference

```
 1              (In open court)
 2              THE COURT:  Mr. Lawner?
 3              MR. LAWNER:  Yes, your Honor.
 4              THE COURT:  This is in no reasonable order, it's just
 5  in the order you signed in.
 6              Mr. Singer?
 7              MR. SINGER:  Yes, your Honor.
 8              THE COURT:  I can't even read this one.  Goldklang?
 9              MR. GOLDKLANG:  Yes, your Honor.
10              THE COURT:  Is that right?
11              MR. GOLDKLANG:  That is correct.
12              THE COURT:  Mr. Nawaz?
13              MR. NAWAZ:  Yes, your Honor.
14              THE COURT:  Mr. Gallub?
15              MR. GALLUB:  Good afternoon, your Honor.
16              THE COURT:  Mr. Carr?
17              MR. CARR:  Good afternoon, your Honor.
18              THE COURT:  Mr. Sweeney?
19              MR. SWEENEY:  Good afternoon, your Honor.
20              THE COURT:  Mr. Cohen?
21              MR. COHEN:  Yes, your Honor.
22              THE COURT:  Mr. Simon?
23              MR. SIMON:  Judge, I gave the gentleman my card.  I
24  didn't sign the signup sheet.
25              THE COURT:  Now it's there.
```

19fkmtbc                      Conference

```
 1              Ms. Rothberg?

 2              MS. ROTHBERG:  Good afternoon, Judge.

 3              THE COURT:  Mr. Berezny?

 4              MR. BEREZNY:  Yes, your Honor.

 5              THE COURT:  Mr. Coogler?

 6              MR. COOGLER:  Yes, your Honor.  Good afternoon, your

 7      Honor.

 8              THE COURT:  Good afternoon.

 9              I have several letters here.  I have a September 6th

10      letter from the Tartan defendants and Leon, for that matter; a

11      September 8th letter from Northville Industries objecting to

12      the September 6th letter; the response of the Tartan

13      defendants, a response to the Northville letter, that's dated

14      September 12th; and a response from Northville, again dated

15      September 14th.  So there are four letters, two by Tartan, two

16      by Northville.

17              I was frustrated a moment ago because there was also

18      an agenda of other items that I misplaced totally.  I don't

19      know where it went but I saw it yesterday.  Today it walked

20      away.

21              Thank you.  All right, so other than this issue about

22      the proper scope of discovery by Northville of the Leon

23      defendants, and therefore the deposition of Allen Leon, putting

24      those to one side for a minute, I'd like to get through all of

25      what I hope is littler stuff.  It says on this agenda, number
```

19fkmtbc                    Conference

1    3, motion for summary judgment by Leon defendants regarding

2    Northville's fourth-party complaints.

3            Who wants to speak to that?

4            MS. ROTHBERG:  Your Honor, I think it's really tied to

5    the discovery issues.  We're awaiting finishing that so that we

6    can move.  You've already agreed that that would be a step we

7    could take, but we're in this issue with discovery, which I

8    think we should be able to resolve rather easily.  It really

9    comes down to a scope issue.

10           THE COURT:  Really comes down to a scope issue?  What

11   does that mean?

12           MS. ROTHBERG:  Well, an issue of the scope of

13   appropriate discovery.

14           THE COURT:  Yeah.  And then the fourth item says

15   status of appearances of fourth-party defendants.  What does

16   that mean?

17           MR. GALLUB:  Yes, your Honor.  There are several

18   fourth-party defendants who have still not appeared despite our

19   efforts.  We have --

20           THE COURT:  They're not here in this crowd today?

21           MR. GALLUB:  No, they're not.

22           THE COURT:  Have you served them?

23           MR. GALLUB:  Yes, we have.

24           THE COURT:  So then take a default judgment.

25           MR. GALLUB:  We will.  And I just wanted to let you

19fkmtbc                          Conference

1    know one of those nonappearing defendants has contacted our

2    office; they have an attorney, and I believe they will be

3    making an appearance shortly.

4              THE COURT:  Well, anybody who's been served and their

5    time to respond has run, make it a motion for default.

6              MR. GALLUB:  Your Honor, just related to that, there

7    is one issue:  We have a fourth-party defendant named 400

8    Jericho --

9              THE COURT:  Well, they're here.

10             MR. GALLUB:  Yes.

11             -- and we are going to be letting that entity out

12   because it was based upon improper address information from the

13   New York State Department of Environmental Conservation.  We do

14   have the right party, and we will, with your Honor's

15   permission, bring them in.

16             THE COURT:  So Mr. Coogler wins and can leave.

17             MR. COOGLER:  Yes, I hope so, your Honor.

18             THE COURT:  You won.  You can go.

19             MR. COOGLER:  Yes.  It was a mistaken identity with

20   the corporate names and the location.

21             THE COURT:  Congratulations.

22             MR. COOGLER:  It appears we're out.

23             THE COURT:  Congratulations.  You're gone, you're

24   gone.

25             MR. COOGLER:  And I can now -- do I need to withdraw

19fkmtbc                        Conference

1    my appearance?

2            THE COURT:  No.  What are you going to do, a notice of

3    discontinuance?

4            MR. GALLUB:  We will, your Honor, and we will

5    substitute in the right party.

6            THE COURT:  File a notice of discontinuance.

7            You don't have to do anything.

8            MR. COOGLER:  Am I excused, your Honor?

9            THE COURT:  Absolutely.

10           MR. COOGLER:  Thank you so much.

11           THE COURT:  Then it says fifth-party practice to bring

12   contract indemnity and contribution claims against fifth

13   parties.

14           Who wants to speak to that?  Tell me your name if

15   you're going to talk, who you are.

16           MR. SINGER:  David Singer.  I represent Camson

17   Equities.

18           THE COURT:  What do you want to say?

19           MR. SINGER:  There are fifth-party issues in terms of

20   contracts --

21           THE COURT:  What's the issue?  What's the issue for me

22   today?

23           MR. SINGER:  The issue is, we'd like to set a schedule

24   to serve fifth-party practice.

25           THE COURT:  You don't need me.  Serve them.  What do

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

1  you need me for?

2          MR. SINGER:  Just for time lines deadlines, when the

3  Court --

4          THE COURT:  All right, fine.  Serve them two weeks

5  from today.  You want a deadline?  I'm happy to give you one.

6  Serve them.  All right, fine to bring in any fifth-party

7  defendants, although I've never seen fifth-party defendants

8  before in over 20 years, but that's OK.  The time to serve

9  fifth-party defendants?  I want to say actually two weeks from

10  tomorrow.  That's Friday.  Today is the 16th, so

11  September 30th.

12          What?  Who you are?

13          MR. SWEENEY:  Paul Sweeney, your Honor, for the

14  fourth-party defendants Bill Wolf Petroleum and Albertson

15  Realty.

16          I think a two-week --

17          THE COURT:  You want three weeks?  You want two,

18  you're one, Mr. Coogler won, now you won, you can have -- I'm

19  sorry, you can have till October 7th and that's the end of it.

20  Serve these people.  Fifth parties?  Kind of a little

21  ridiculous.  You want to do it?  Do it fast.  You came here to

22  talk about it and I'm giving you a third week because you asked

23  so well.  You have three weeks.

24          MR. SWEENEY:  OK, your Honor, we have a lessee, who

25  potentially it's going to take some time --

19fkmtbc                    Conference

```
1            THE COURT:  I don't wish to hear with your problems.
2    You want to bring in some lessee or something, serve them.
3            What's the last thing, fifth-party practice to
4    bring -- that may be you.  Is that Wolf Petroleum and
5    Albertson?
6            MR. SWEENEY:  That was me, your Honor.
7            THE COURT:  So you have the same request as Camson,
8    but what's good for Wolf is good for Camson.  You can all have
9    three weeks.
10           MR. SINGER:  Thank you, your Honor.
11           THE COURT:  So that leaves the issue that was briefed
12   by letter, right, this whole issue?
13           Now, the discouraging things about these letters is,
14   Judge Freeman was asked to take on this disputatious case, if
15   that's a word, so I wouldn't have to see you again.  That was
16   my big hope, I would never have to see you again except maybe
17   on the morning of trial but short of that, that was my great
18   hope, and suddenly I'm back inundated with -- I don't know what
19   all this comes to -- a hundred pages.  Let the record reflect
20   that I'm struggling to lift the weight of the letters which
21   total a hundred pages.  I was hoping Judge Freeman would deal
22   with this.
23           Why do I have to deal with this, Ms. Rothberg?  I
24   thought it was you who said I had to deal with it.
25           MS. ROTHBERG:  Judge, you don't --
```

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

19fkmtbc                    Conference

 1         THE COURT:  I do have to.  You said you thought it

 2    belonged here, not there, why?

 3         MS. ROTHBERG:  Well, we had this conference with you

 4    scheduled for the 15th, and since the issues that arose in

 5    connection with this discovery directly related to our last

 6    conference on May 31 --

 7         THE COURT:  In what way directly related?

 8         MS. ROTHBERG:  At our last conference, just to refresh

 9    your recollection, we discussed initially that we were going to

10    try and bring a motion to dismiss.  And you, quite rightly,

11    talked us out of doing that; I actually came to agree fully.

12    What we decided was that we could proceed with a summary

13    judgment motion, but Northville had asked for discovery of Leon

14    Holdings, Leon Petroleum and some supplemental discovery

15    against Tartan.

16         THE COURT:  Right, they wanted to find out whether

17    there's successor liability --

18         MS. ROTHBERG:  Correct, Judge.

19         THE COURT:  -- or alter ego liability.  And I don't

20    understand why they shouldn't be allowed to figure out whether

21    there's successor liability or alter ego liability.  You can't

22    figure it out without some discovery.  The courts list all

23    these factors for figuring it out.  The leading case is

24    Passalacqua, I think, Second Circuit 1991, and it says some of

25    the factors are the absence of formalities, such as

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

19fkmtbc                        Conference

```
 1    recollection of directors, the keeping of corporate records
 2    inadequate capitalization, overlapping ownership, officers,
 3    director and personnel, common office space, and whether the
 4    corporations are treated as independent profit centers.
 5            So to get at that, Northville seeks records that
 6    include tax returns and financial statements from the Leon
 7    entities, documents that would reflect salary benefits and
 8    health insurance of the officers and employees of the Leon
 9    entities and the Tartan defendants.  And this might go to the
10    relationship with the two entities and whether there should be
11    successor liability or alter ego liability.
12            So why shouldn't I allow it?
13            MS. ROTHBERG:  Well, your Honor, we did produce
14    operating documents.  We produced bank information with respect
15    to which account was used in different ways.
16            THE COURT:  And I'm grateful for whatever you did
17    produce, but why shouldn't I allow them to discover the
18    remainder of these records so they can either give up on either
19    theory or prove it up?
20            MS. ROTHBERG:  Well, your Honor, I guess, at least in
21    my experience, I'm not familiar with financial records being
22    produced on bare allegations that there's successor liability.
23            THE COURT:  What's so bare?  I thought when Leon
24    purchased the assets of Tartan anyway, they agreed to defend
25    and hold Tartan harmless for these MTBE litigations claims.
```

19fkmtbc                    Conference

1    Just starting with that, it seems that they took on successor

2    liability, so to speak.

3            MS. ROTHBERG:  Well, they took on assets, your Honor,

4    and there were very specific liabilities that Tartan continued

5    to maintain, and assets they continued to maintain.  For

6    example, there were insurance policies available that probably

7    would have responded to this, but they also responded to other

8    Tartan liabilities --

9            THE COURT:  That may be.

10           MS. ROTHBERG:  That Tartan kept.

11           THE COURT:  But Leon agreed apparently did agree to

12   hold harm Tartan harmless with these MTBE claims.

13           MS. ROTHBERG:  Correct, but I don't know that then

14   opens the door to sharing tax returns and sharing sensitive tax

15   information.

16           THE COURT:  You could agree to it, you could say yes,

17   we have successor liability, there's no point having this

18   discovery.  That's an option.  I understand the desire to keep

19   your records private, but that's sort of the choice you have.

20   It's a Hobson's choice for sure, but you can say we're not

21   going to contest this, we agreed to the defendant to hold

22   Tartan harmless, so we accept if anybody has liability for

23   Tartan, it's us.

24           MS. ROTHBERG:  But Leon has said -- and I have made

25   that statement in this courtroom multiple times -- Leon has

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

1    taken on the responsibility to defend and indemnify Tartan.

2    That does not mean that they have stepped into Tartan's shoes

3    as to everything but we're honoring our contractual obligations

4    here.

5              THE COURT:  To defend and indemnify, you said?

6              MS. ROTHBERG:  Yes, that's what they agreed to do.

7              THE COURT:  You did say defend and indemnify?

8              MS. ROTHBERG:  Correct, Judge.

9              THE COURT:  What more is there, Mr. Gallub?  If

10   they're not only going to defend but indemnify, what more do

11   you get by spending time and money proving up what goes to

12   liability?  To the extent Tartan is liable, Leon is covered,

13   they're indemnified.

14             MR. GALLUB:  That's Leon Petroleum.  Leon Holdings is

15   a different entity.  Leon Holdings did not take on that

16   responsibility.  We maintain, and based upon the matters that

17   we put before you, that there --

18             THE COURT:  So it's only about Leon Holdings, because

19   Leon Petroleum is covering, you're safe.  Any judgment you

20   could ever get against Tartan, Leon Petroleum has said we're

21   covering.

22             MR. GALLUB:  Right.  And that's tied into the

23   successor -- the alter ego liability.

24             THE COURT:  You can't win more.  She said, we are

25   covering, we're indemnifying fully, so that takes care of Leon

19fkmtbc                          Conference

 1   Petroleum.

 2              MR. GALLUB:  There's a related issue.  The

 3   indemnification is an indemnification with respect to what

 4   Tartan did during the time that Tartan had the property.  There

 5   was a period of time that Leon Petroleum had the property.

 6   Then this was a period of time that Leon Holdings --

 7              THE COURT:  Well, that's not successor liability.  If

 8   you have a case, direct case so to speak, against Leon

 9   Petroleum and you prove it up, Leon Petroleum is liable?

10              MR. GALLUB:  No, but we believe they're one and the

11   same.

12              THE COURT:  You're covered, Mr. Gallub.  You don't

13   need belts and suspenders and snaps and buckles.  I mean you

14   have the indemnification for whatever Tartan did, you have

15   direct liability for whatever Leon Petroleum did.  So after

16   they take over, if they do something that causes them to be

17   directly liable, you've got it.  So you got them for that, you

18   got them for the period that Tartan had it, because they have

19   fully indemnified Tartan, so I think we're done with Leon

20   Petroleum, we can turn to Leon Holdings.

21              MR. GALLUB:  Well, Leon Holdings is the issue.

22              THE COURT:  OK, I'm just trying to narrow my problems.

23   Do you agree we're done talking about Leon Petroleum?

24              MR. GALLUB:  No, because Leon Holdings -- the alter

25   ego issue as between Holdings and Petroleum is a very relevant

19fkmtbc                    Conference

1   issue.  Now, we've been before you on this, your Honor, and the

2   central issue that's involved here is that you've allowed them

3   to move for summary judgment, they decided not to, and rightly

4   so, not to move to dismiss the complaint.

5           THE COURT:  Right.

6           MR. GALLUB:  In allowing them to move for summary

7   judgment, that entitles us to discovery regarding the issues.

8   And respectfully, they can't come forth --

9           THE COURT:  Now I understand.  You seem to be saying

10  the sole issue is the relationship between Leon Petroleum and

11  Leon Holdings, right, not so much successor liability between

12  Tartan and Leon Petroleum but whether Leon Holdings is the

13  alter ego of Leon Petroleum?

14          MR. GALLUB:  I think that's the central issue, yeah.

15          THE COURT:  That's a different issue, so we're no

16  longer in successor liability, we're over in alter ego world.

17  If you think that you can't make a statement that Leon

18  Holdings, whatever that is, which may have all the assets and

19  all the money or all the insurance, is going to indemnify, just

20  as you said Leon Petroleum would, then again I think I have to

21  allow this discovery, because there could be gamesmanship here;

22  it could be Leon Petroleum's indemnification is worthless

23  because they don't have any assets, it may be that Leon

24  Holdings has all the assets, I don't know that.

25          MS. ROTHBERG:  Leon Petroleum actually is the

19fkmtbc                          Conference

 1   operating company, your Honor, and has the assets.  Leon

 2   Holdings acquired one single asset in 2005, the CP Service

 3   Station, the one station in Carle Place.  Otherwise, Leon

 4   Petroleum is --

 5           THE COURT:  Who's got the insurance?

 6           MS. ROTHBERG:  There is no insurance.  It's Leon

 7   Petroleum that's standing behind everything.  And what we have

 8   suggested, your Honor, is that if Northville is unsatisfied

 9   with what discovery we've given, we have suggested that they

10   take the deposition of Mr. Leon, ask him what the relationships

11   are, who has the assets, and what those assets are, and what

12   the corporate organization is, if he's not satisfied with the

13   operational documents.

14           THE COURT:  Then what?  After he does that, then what?

15           MS. ROTHBERG:  Well, if there is information that

16   comes out of that deposition that suggests that we have been

17   too conservative in the production of our information, and

18   there is indicia of either the movement of assets in a

19   particular direction that they shouldn't be going or that

20   there's some involvement by Leon Holdings or Leon Petroleum

21   that is not in keeping with the role that they're playing, then

22   certainly that is a basis to defend summary judgment, or to ask

23   for additional discovery.  But with respect --

24           THE COURT:  And then redepose Mr. Leon?

25           MS. ROTHBERG:  And if that is appropriate, after

19fkmtbc                     Conference

1    documents are produced, then, yes, your Honor, that's --

2              THE COURT:  That's not a bad idea.  That's like a

3    discovery deposition.  Take Leon, figure out anything you can

4    from him; then tailor the document requests if you think it's

5    still needed; then if you get documents that lead to new

6    questions, you'll be allowed to redepose him.

7              MR. GALLUB:  Look, Judge, that's certainly a way to

8    go, but I think we're going to be back at square one.

9              THE COURT:  But you will have heard a lot.  So we'll

10   be back, and you will have learned a lot.  That's a good idea,

11   let's do it.  Take Leon now, but with no limitations to

12   redeposing him and no limitation to requesting documents

13   postdeposition if you are not satisfied.  It may be that there

14   will be a miracle and after you hear what he has to say, you're

15   satisfied you've got the right party on the hook because

16   Ms. Rothberg has said on the record at this time -- and she

17   says on previous occasions -- there's no question that Leon

18   Petroleum is stepping up to the plate, so to speak, in terms of

19   indemnifying any liability that can be proved against Tartan,

20   and if you prove direct liability, she knows she's on the hook

21   for that.  So that's easy; it's not a matter of alter ego or

22   successor liability.  So the only issue is Leon Holdings.  Talk

23   to this guy.  It may help you.  It's like having a discovery

24   deposition of the person who knows most about the records.

25   It's probably him anyway.

19fkmtbc                    Conference

1          MR. GALLUB:  But then we're relegated, your Honor,

2     with regard to his self-serving statement rather than --

3          THE COURT:  You're not relegated to anything.  Why

4     don't you worry about it after you take him.  You may learn a

5     lot.  People take custodian depositions for a reason.  You know

6     why?  So they can target their document requests instead of

7     being blunderbussed.  We encourage custodian depositions these

8     days.  Essentially what it is, is he's the guy, it's basically

9     a one-man kind of show, he's the guy, he has the most knowledge

10    of the records.

11         MS. ROTHBERG:  It is, Judge --

12         MR. GALLUB:  If we're not hamstrung, that's fine.

13         THE COURT:  You can ask for records and ask for a

14    redemption if needed.

15         MR. GALLUB:  OK.

16         MS. ROTHBERG:  Judge, if I could, I don't think it's

17    appropriate to ask Mr. Leon what his annual salary is.  You can

18    ask --

19         THE COURT:  I don't know the relevance --

20         MS. ROTHBERG:  -- who he draws it from --

21         THE COURT:  Right.

22         MS. ROTHBERG:  -- but to say how much money did you

23    make this year, I think, is wholly inappropriate.

24         THE COURT:  The only question is who's on the hook,

25    who's on the hook for any liability.

19fkmtbc                    Conference

1              MR. GALLUB:  I don't plan to ask that question, your

2    Honor.

3              THE COURT:  Good.  OK, thank you.

4              MR. GALLUB:  Your Honor, there are -- Allen Leon is

5    not only being produced on behalf of Leon Petroleum and Leon

6    Holdings, but he's being produced on behalf of all of the

7    Tartan defendants.

8              THE COURT:  OK.

9              MR. GALLUB:  There are a number of discovery issues

10   that we have raised in the letter that go beyond the alter ego.

11   And some of them are very fundamental.  And what we could do --

12             THE COURT:  Such as?

13             MR. GALLUB:  -- is two things --

14             Such as, there's been no agreements with regard to any

15   of the station operators other than one 1997 agreement with

16   respect to Mr. Nawaz, who's here today.  None of the others --

17   we know there's another station, at least one and possibly two;

18   we don't have any of the contracts and agreements, your Honor,

19   we have no emails, we have no correspondence or communications

20   relating to any of the issues.

21             THE COURT:  I'm sorry, between who and whom?

22             MR. GALLUB:  Between the Tartan defendants and any of

23   the station operators or between the Leon parties and any of

24   the station operators.  These are the operators --

25             THE COURT:  And you called for that in writing?

19fkmtbc                    Conference

1          MR. GALLUB:  Sure we did.

2          THE COURT:  I thought we were only discussing --

3          MR. GALLUB:  What I was going to suggest?

4          THE COURT:  Please, wait, Mr. Gallub.  I thought we

5    were only discussing successor liability and alter ego.  What's

6    the basis to not produce this other material?

7          MS. ROTHBERG:  Your Honor, it's the reason why I was

8    suggesting the deposition.  I've asked my client for these

9    records, and what I am told -- and I believe what he'll testify

10   to -- is that, one, he doesn't have any of the Tartan leasing

11   records, and that it is the custom of Leon Petroleum, when they

12   enter into leases with tenants, when the tenant leaves, they

13   hold the security deposit in the lease for one year.  If

14   nothing pops up, they return the security deposit and they

15   throw the lease away, so they don't keep records on former

16   tenants.  So we don't have those records, and we have said in

17   writing to Northville that our client doesn't have these

18   records.

19         THE COURT:  So there are no objections.  What he's

20   saying is he doesn't have the records you've requested?

21         MR. GALLUB:  Yeah, what about the present tenant?

22         THE COURT:  All right, fair enough, fair enough.

23         What about the present tenant?

24         MS. ROTHBERG:  Your Honor, the present tenant wouldn't

25   have had anything to do with MTBE petroleum.  It's a current --

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

19fkmtbc                    Conference

1    they're a current operator, they stopped producing MTBE in

2    2004.  These people are current leaseholders.

3           THE COURT:  I don't know what that means.  When did

4    they start?

5           MS. ROTHBERG:  Oh, they didn't go back to that date,

6    your Honor.  The way this works, there are operators that come

7    and go; it's not these are not long-term tenants.

8           THE COURT:  So the current leaseholder is what, a

9    couple years?

10          MS. ROTHBERG:  Might be a couple years.  But, again, I

11   would urge -- ask that question in a deposition, who is your

12   current leaseholder, how long have they been there?  The fact

13   of the matter is, I don't believe he has anyone that goes back

14   to 2004.  I've asked that question -- 2005.  These people don't

15   go back that far.  So we would be producing current leases that

16   have nothing to do with MTBE --

17          MR. GALLUB:  That's not so, your Honor.  I'd like you

18   to know that there were open spill files on these properties,

19   and the one with regard to the Carle Place was just recently

20   closed.  So the recent stuff with regard to the failure to

21   remediate the spill up until that point of the closure of the

22   spill file --

23          THE COURT:  So to the extent --

24          MR. GALLUB:  These are all relevant and fair game in

25   discovery.

19fkmtbc                    Conference

```
 1              THE COURT:  Not all.  The ones where the current
 2    tenant there's an open spill file or a spill file that didn't
 3    close until their tenancy, you should produce those lease files
 4    before the deposition.  That's it.
 5              MS. ROTHBERG:  Fair enough, Judge.  I don't think
 6    these tenants would have any connection to it but --
 7              THE COURT:  He just said if there's an open file.
 8              MS. ROTHBERG:  But the responsibility, to the extent
 9    of that file being open, would be -- Leon Petroleum hasn't
10    said, I'm not taking responsibility.  It's Leon Petroleum who
11    filed to close the spill files, it's not the tenant.
12              THE COURT:  I don't know about the current tenant,
13    whether they had any duty to remediate.
14              MS. ROTHBERG:  I'll speak --
15              THE COURT:  Any current tenant --
16              MS. ROTHBERG:  That would be one station, the CP
17    station.
18              THE COURT:  That's the only one?
19              MS. ROTHBERG:  Yes.
20              THE COURT:  Is that right?
21              MR. GALLUB:  With respect to the recent one, the CP
22    station?  Yes.
23              THE COURT:  Yes, with respect to the open spill file.
24              MS. ROTHBERG:  That's just one station.
25              THE COURT:  Produce the information with respect to
```

19fkmtbc                    Conference

1   that one station before the deposition.

2              MS. ROTHBERG:  Fine, Judge.

3              THE COURT:  When is this deposition going is to be

4   held?

5              MR. GALLUB:  There are other items as well.  Let me

6   say, that's why we made this motion before Magistrate Freeman.

7              THE COURT:  What are the other issues, Mr. Gallub?

8              MR. GALLUB:  The other issue is, we don't have the

9   contracts and documents relating to the Tartan defendants' and

10  the Leon defendants' brokering of the sale of gasoline to the

11  station.  We have one 1977 brokerage contract, which didn't

12  really apply to the sites in issue, and we have one 1999

13  brokerage, and they're not producing --

14             THE COURT:  But what --

15             MR. GALLUB:  -- the subsequent ones.  The 1999 one was

16  redacted.

17             THE COURT:  Excuse me.  Please, when I start to talk,

18  would you please stop.

19             MR. GALLUB:  Apologize.

20             THE COURT:  Thank you.

21             And what was Ms. Rothberg's response to that request

22  for these broker arrangements?

23             MR. GALLUB:  The response was, here's the contract.

24  There's never been an answer as to why these documents haven't

25  been produced.

        SOUTHERN DISTRICT REPORTERS, P.C.      (212) 805-0300

19fkmtbc                    Conference

```
 1            THE COURT:  You just said the response was, here's the
 2    contract?
 3            MR. GALLUB:  Here's the one contract, the 1977
 4    brokerage contract.
 5            THE COURT:  Do you have any others?
 6            MS. ROTHBERG:  I've produced a more current one,
 7    Judge, and we redacted the end date.  They go actually a very
 8    long period of time.  So he, in fact, does have the current --
 9            THE COURT:  Do you have any others?
10            MS. ROTHBERG:  Your Honor, I asked my client for all
11    of them, and I have produced all of them to Mr. Gallub.  We
12    don't have --
13            THE COURT:  There's no objection to it.  She says
14    she's produced everything he has.
15            MS. ROTHBERG:  They're all the same, by the way.
16            THE COURT:  That's not my problem.  You're supposed to
17    produce all of them.
18            MS. ROTHBERG:  I understand but, yes, I have produced
19    what I have.
20            THE COURT:  I can only deal with objections.  I can't
21    go into the shop and look under the table.  She says she's
22    produced all that her client has.
23            MR. GALLUB:  I would ask that they unredact the end
24    date of the agreement that they produce, so that we have that
25    document in an unredacted form.
```

19fkmtbc                    Conference

1              THE COURT:  Why is that redacted?

2              MS. ROTHBERG:  Well, Judge, he can certainly testify

3    to it.  He was uncomfortable --

4              THE COURT:  If he can testify to it, unredact it

5    immediately and produce an unredacted copy.  There's an order.

6              Anything else, Mr. Gallub?

7              MR. GALLUB:  Yeah.  There have not been documents from

8    the entities, other than the DEC or from an environmental

9    contract, relating to the spills at the Mineola or the New Hyde

10   Park stations.  The only thing that they have produced are DEC

11   files and some documents from an environmental contract and no

12   documents from the Tartan defendants, no documents from the

13   Leon parties regarding these spills.  They're a big issue in

14   the case, and we're entitled --

15             THE COURT:  Did they object?  Did they object?  How

16   did they respond to your request?

17             MR. GALLUB:  They responded that everything's already

18   been produced and this has not been produced.

19             THE COURT:  So everything's already been produced to

20   who?

21             MR. GALLUB:  Has already previously been produced in

22   this action.

23             THE COURT:  To who?

24             MR. GALLUB:  To the parties.

25             THE COURT:  To you?

1          MR. GALLUB:  Well, I've looked at everything that was

2     produced, and these materials are not there.

3          THE COURT:  All right, reproduce them to him, if you

4     have these deals, the DEC files.

5          MS. ROTHBERG:  No, he's asking for files other than

6     the DEC files, your Honor.

7          THE COURT:  Oh.  I thought he said DEC files.

8          MR. GALLUB:  No, I'm saying that's the only thing what

9     was produced.  I'm missing are the records from her actual

10    clients, from the documents from the parties to this

11    litigation, the Tartan defendants and --

12         THE COURT:  Yeah, what documents from them?

13         MR. GALLUB:  Documents relating what they have

14    relating to the spill.

15         THE COURT:  Do you have documents relating to the

16    spill?  If you do, you have to produce them.

17         MS. ROTHBERG:  Your Honor, I can tell you we have

18    produced absolutely everything.

19         THE COURT:  That's not an answer.  Did you produce

20    documents relating to the spills?

21         MS. ROTHBERG:  To the extent we had them, yes, your

22    Honor, to the extent we have them.  And we have produced

23    documents that were generated by consultants to our client

24    cleaning up the spills.

25         THE COURT:  Why don't you produce them again to

19fkmtbc                     Conference

1   Mr. Gallub, specifically that, so he can't say he missed them

2   somehow.

3           MS. ROTHBERG:  I'll produce everything all over again,

4   Judge.  It is what it is.  I don't have more files that -- I'm

5   not withholding anything.

6           THE COURT:  All right, fine, produce it to him again.

7   I can only rule on objections, not on nonexistent documents.

8           MS. ROTHBERG:  I have no objection to producing them,

9   your Honor.

10          THE COURT:  I know, so produce them again.

11          MR. GALLUB:  There is an objection that was made by

12  the Tartan defendants.  They have objected with regard to every

13  discovery request being asked for any document that was either

14  generated or received after January of 2004, on the grounds

15  that they stopped selling MTBE.  But as I indicated to your

16  Honor, there is an open spill file that has just been closed at

17  the latter part of last year.  There are documents that may

18  very well be probative that have been generated --

19          THE COURT:  Objection overruled.  Any outstanding open

20  spill, you still have to produce whatever records your client

21  has that relate to that site where there's an open spill file

22  or that has been --

23          MS. ROTHBERG:  The site overall, not the spill?

24          THE COURT:  Open spill file post 2004.

25          MS. ROTHBERG:  That's only the CP station.

19fkmtbc                    Conference

1          THE COURT:  Then that's what it is, but the ruling is

2   clear on the record.  Any open spill file that postdates 2004,

3   your objection is overruled, you have to produce the records.

4          MS. ROTHBERG:  If I could understand what the records

5   are:  As to the spill itself, we've produced everything that

6   relates to the spill.

7          THE COURT:  You made an objection.  You said, we're

8   not going to produce anything post 2004.  I'm ruling on the

9   objection:  If there was an open spill file post 2004, you have

10  to produce whatever records you have that relate to that site.

11         MS. ROTHBERG:  OK.

12         THE COURT:  OK?

13         MS. ROTHBERG:  Thank you, Judge.

14         THE COURT:  I guess we're done.  Thank you.  Right?

15  Or was there more Mr. Gallub?

16         MR. GALLUB:  No, your Honor.

17         THE COURT:  Good, thank you.

18         MS. ROTHBERG:  Judge, if I dare, do you want to set

19  a -- is there a schedule we ought to be setting after the

20  deposition?

21         THE COURT:  After the deposition, Mr. Gallub will come

22  back to court if he wants to renew his application for more

23  documents and then another deposition.  So it's premature to

24  schedule a summary judgment.  If there's some reason he's

25  satisfied after you reproduce some documents and after the

          SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

19fkmtbc                    Conference

1    deposition, you can jointly request my clerk to schedule a

2    premotion conference.

3             MS. ROTHBERG:  Thank you, Judge, thank you.

4             MR. GALLUB:  Thank you, your Honor.

5                            *  *  *

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25