# McDermott
# Will&Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Peter J. Sacripanti
Attorney at Law
psacripanti@mwe.com
212.547.5583

November 11, 2011

**BY ELECTRONIC MAIL AND HAND DELIVERY**

The Honorable Shira A. Scheindlin
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1620
New York, New York 10007-1312



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/18/11

Re:   Master File C.A. No. 1:00-1898 (SAS), M21-88, MDL No. 1358
      *Defendants' Pre-Conference Letter for November 21, 2011 Conference*

Dear Judge Scheindlin:

Defendants respectfully submit this letter in advance of the November 21, 2011 status conference.[1]

## JOINT AGENDA ITEMS

**I.   Update Regarding the Weitz/Baron Cases**

As the Court is aware, most Defendants in the cases brought by the Weitz & Luxenberg and Baron & Budd firms have reached an agreement in principle with the Plaintiffs. The parties will be prepared to update the Court during the status conference on the status of the agreement and the steps the parties plan to take to finalize the settlement.

**II.  New Jersey DEP Fact Discovery Case Management Order**

On October 20th, Your Honor held a telephone conference to discuss the parties' October 19th Joint Proposed CMO. *Email from L. Gerson to Court*, with attachment (Oct. 19, 2011) (Ex. A). During the call, Your Honor expressed concern regarding the apparent lack of case management and rejected the parties' proposed schedule. Further, Your Honor questioned the proposed fact discovery deadline and limit on depositions, and reserved these issues for discussion at the November status conference. In the interim, the Court adopted only those parts

---

[1] Due to the number of issues to be addressed at the status conference, Defendants respectfully request an extension of the 5-page limit for preconference letters.

U.S. practice conducted through McDermott Will & Emery LLP.
340 Madison Avenue New York New York 10173 Telephone: 212.547.5400 Facsimile: 212.547.5444 www.mwe.com

The Honorable Shira A. Scheindlin
November 11, 2011
Page 2

of the Joint Proposal that further extended the time for Plaintiffs to complete their delinquent production of privilege logs and ESI.

Defendants respectfully request that the Court adopt the remaining portions of the Joint Proposed CMO, as originally submitted. As detailed below, any case management difficulties that have occurred in this case were caused solely by Plaintiffs' failures to conduct discovery on a timely basis, including Plaintiffs' failure to meet multiple deadlines relating to the production of electronically stored information ("ESI"), privilege logs, and supplementation of inadequate discovery responses. By adopting the remaining portions of the Joint Proposed Order, the Court will limit the prejudice to Defendants and ensure that Plaintiffs are not rewarded for their repeated, unapologetic failures to meet discovery deadlines.

As the Court will recall, October 20th was scheduled originally as an in-person hearing to address the issues raised in Defendants' Rule 37 Motion for Sanctions against Plaintiffs for failure to meet multiple discovery deadlines. *Letter from S. Riccardulli to Court* (Sept. 9, 2011) (w/o exhibits) (attached at Ex. B). The Court instead requested a telephone conference after the parties advised that we had reached a compromise agreement. *See* Ex. A. That agreement was memorialized in the Joint Proposal submitted to the Court. It was negotiated at the request of Plaintiffs, and Defendants' willingness to resolve their Rule 37 motion, and their consent to the Joint Proposal, was conditioned on a fact discovery cut-off that preserved the same amount of time Defendants would have had under the Court's original schedule.[2] Likewise, the 80 deposition limit was based on careful assessment of the additional depositions Defendants would need to prepare their case, and is consistent with the Court's prior ruling in CMO 89, which allowed 10 depositions per month of each party. Should the Court maintain its decision to alter the agreed-to terms of the parties' Joint Proposal, Defendants respectfully request that the Court reconsider its October 20th CMO and shorten the time Plaintiffs have received to complete their overdue productions.

A. <u>A November 16, 2012 Fact Discovery Cutoff is Reasonable and Necessary</u>: This is a massive case. Indeed, within the entire MTBE MDL docket, the New Jersey case is by far the largest and most complex—over 5,000 MTBE release sites; thousands of third-party and other-contaminant release sites; and hundreds of receptor sites have been placed at issue by the State. Even limited to the trial sites, Plaintiffs' delineations, although reduced per the Court's March 2011 order, still implicate, on average, 252 acres per site, and over 1,000 third-party contaminant sites and hundreds of public and private wells. Moreover, this case involves a Sovereign, which is qualitatively different from Plaintiffs in prior cases, asserting claims not yet considered by this Court—*i.e.*, for natural resource damages. The legal and factual implications of Plaintiffs' claims are further complicated by the number of State agencies and employees involved in issues

---

[2] Pursuant to CMO 89, fact discovery was to close on March 30, 2012. As discussed more fully below, Plaintiffs originally agreed to complete their ESI production by July 2011 and were subsequently ordered to complete it by August 31, 2011. Pursuant to the CMO signed by the Court on October 20, 2011, Plaintiffs now have until February 15, 2012.

The Honorable Shira A. Scheindlin
November 11, 2011
Page 3

key to the litigation (*e.g.*, setting of the MCL for MTBE; the decision to opt-in to the RFG program; regulation of USTs, etc.); the role Plaintiffs have played in managing remediation at the sites; Plaintiffs' conduct as the responsible spiller at certain sites; as well as the sheer size of the trial sites as delineated by Plaintiffs.

Defendants have worked diligently to move forward with discovery so as to meet the original deadline for fact discovery but, as the Special Master can confirm, have been stymied by Plaintiffs' all too often refusal to cooperate and the diversion of lengthy discovery enforcement efforts.[3] While we have attempted to double-track site-specific and non-site-specific discovery, as required by Your Honor, Plaintiffs' failure to timely produce discovery responses, documents, privilege logs and ESI has made progress—particularly with respect to non-site-specific issues—haltingly slow. Below, Defendants highlight only a few of the items that demonstrate Plaintiffs' failures and their impact on the discovery schedule:

- *Continuing ESI Deficiencies:* Defendants have been seeking ESI from Plaintiffs for more than a year. As a result of the process ordered by the Court at the March 2011 status conference, in April, Plaintiffs agreed to complete their ESI production by the end of July 2011. When it became clear that Plaintiffs would not meet that deadline, Defendants requested a status conference to address that and other discovery deficiencies. *Letter from P. Sacripanti to Court* (July 1, 2011) (w/o exhibits) (attached at Ex. D). The Court referred all issues to the Special Master who, in July, ordered Plaintiffs to produce this ESI by August 31, 2011. Without even acknowledging the date when it passed—let alone seeking leave from the Special Master or the Court—Plaintiffs did not come close to meeting that deadline.[4] Indeed, not until Defendants moved for sanctions, (*see* Ex. B), did Plaintiffs finally admit that they needed nearly *seven extra months* beyond the deadline they had agreed to in April and nearly *six months beyond* the deadline ordered by the Special Master in July—*i.e.*, until February 2012—to complete their ESI production. When only a portion of the parties' Joint Proposal was entered on October 20th, not only were Plaintiffs essentially excused from their failure to timely produce ESI, they also were granted a lengthy extension to finally complete the task.[5,6]

---

[3] Plaintiffs consistently take months to respond Defendants' repeated requests for documents and/or information identified during depositions. *See Letter from S. Riccardulli to L. Kaufmann* (Oct. 28, 2011) (summarizing 13 unanswered letters) (attached at Ex. C). Just last week, with this conference approaching, Plaintiffs finally answered a handful of these months-old requests, albeit by offering various reasons why they would not be producing the materials sought.

[4] These events are detailed in Defendants' Rule 37 motion, attached at Exhibit B.

[5] Notwithstanding the extension, Plaintiffs appear to have again failed to comply with their Court-ordered obligations. Per the October 20th Order, Plaintiffs were to produce all site-specific ESI by October 31, 2011. On November 8 Defendants identified to counsel 10 NJDEP employees, identified initially by Plaintiffs as members of the trial site "case teams," for whom

The Honorable Shira A. Scheindlin
November 11, 2011
Page 4

- *Unanswered Interrogatories and Document Requests:* Defendants have been waiting over a year for Plaintiffs to fully answer outstanding interrogatories and document requests originally served in March 2010. Despite three different motions and two orders by Special Master Warner requiring Plaintiffs to provide further responses, Defendants will not have complete answers until at least the end of this year. *Letter from S. Riccardulli to Special Master Warner* (Nov. 7, 2011) (w/o exhibits) (attached at Ex. F). Earlier this week, Special Master Warner ruled (again) that Plaintiffs must supplement 22 responses by November 30th. He also has set a hearing for November 15th to resolve the remaining disputed requests. *See* PTO 68 (attached at Ex. G).

- *Overdue Privilege Logs:* Plaintiffs' privilege log for their responses to Defendants' Second Set of discovery was expected over a year ago. Also outstanding are a number of privilege logs for Plaintiffs' partial ESI productions. Per the October 20th CMO, Plaintiffs are to produce all outstanding privilege logs on a *rolling basis* by December 1, 2011. Based on Plaintiffs' expansive use of the Deliberative Process Privilege thus far in the case, Defendants anticipate that the forthcoming logs will be substantial. However, to date, Plaintiffs have yet to begin "rolling" the privilege logs they owe to Defendants.

These are just a few of the issues that have plagued the discovery efforts to date. And while Plaintiffs have the benefit of more than a decade of discovery taken of Defendants in related MTBE cases—particularly with respect to non-site-specific topics—Defendants do not enjoy the same benefit. In light of Plaintiffs' failures and blatant disregard for numerous deadlines relating to the above issues, it would be prejudicial to Defendants if the deadline for fact discovery is not extended to give Defendants the time they need—and were originally afforded under CMO 89—to complete discovery. The Court can do so by accepting the November 16th fact discovery cut-off or, alternatively, requiring Plaintiffs to complete their ESI production more quickly.

---

ESI had not been produced. Plaintiffs responded today stating that *all* ESI for these 10 site-specific custodians is being withheld as privileged. *Letter from S. Kauff to S. Riccardulli* (Nov. 11, 2011) (attached at Ex. E). Considering the volume of non-privileged site-specific ESI produced for other custodians, Defendants are surprised by this representation and will assess the response once the privilege log is produced.

[6] Defendants have been unable to schedule depositions of many key witnesses because of the ongoing delays in Plaintiffs' document and ESI productions. Indeed, as Plaintiffs argued in a recent hearing before the Special Master on the *Puerto Rico* matter, they too need complete ESI to prepare their own witnesses. Therefore, give the recent extension, depositions of many NJDEP employees cannot occur until after Plaintiffs complete their non-site-specific ESI on February 15, 2012. The November 16th cut-off date permits Defendants the time necessary to review the production and take depositions in compliance with the 10-per-month limit set by CMO 89.

B. <u>Limit on Depositions</u>: Following the March 30, 2011 status conference—during which Your Honor instituted a 10-deposition-per-month limit of DEP employees—Defendants began noticing depositions of percipient witnesses. We did so, notwithstanding the fact that Plaintiffs had not fully produced ESI or privilege logs, in order to move the case forward. Despite the fact that Plaintiffs have not and cannot claim that Defendants have abused the deposition process, during negotiations of the parties' Joint Proposed CMO, Plaintiffs insisted that Defendants agree to a limit on the total number of depositions to be taken of NJDEP employees. In the spirit of good-faith negotiation, Defendants did our best—while working with incomplete discovery responses, privilege logs and ESI—to estimate the total number of depositions that may be needed to complete discovery on both site-specific and non-site-specific topics. Ultimately, we proposed a limit of 80, and Plaintiffs agreed to that limit.

Defendants are mindful of the Court's comments from the October 20th telephone conference and recognize that 80 is a substantial number of depositions. However, the number of deposition is driven by the broad geographic and temporal scope of this case and is proportionate to Plaintiffs' sweeping claims. Indeed, considering the number of non-site-specific and site-specific issues to be addressed—and the number of individuals involved—80 depositions, may not appear so large after all. For example, Defendants must take discovery with respect to 19 trial sites. At any given time, Plaintiffs assigned a case team of 3-4 NJDEP employees to each of the sites—each member having different technical backgrounds and job responsibilities. Considering the changes to these case teams over the years, Defendants will need to take multiple depositions for each of the trial sites. As for non-site-specific issues, Defendants need to depose the individuals who were involved in issues central to Defendants' defenses—*e.g.*, those who were involved in the State's decision to set the MCL for MTBE; the decision to opt-in to the RFG program, etc. Also illustrative is the number of depositions taken in other MTBE matters, such as in New Hampshire matter—another state-wide case—where Defendants conducted 54 depositions on just non-site specific issues. In the New York City matter, the plaintiff designated testimony from 38 depositions just of ExxonMobil witnesses. Defendants respectfully submit that these numbers demonstrate that we are not overreaching in our estimate, but instead are planning the discovery necessary to address the issues implicated by Plaintiffs' claims. Accordingly, Defendants respectfully request that the Court adopt the remaining portions of the parties' Joint Proposal.

### III. New Jersey DEP Post-Fact Discovery Case Management Order

The parties have met and conferred regarding a CMO setting the post-fact discovery schedule. While Defendants are hopeful that the parties can reach agreement, certain disputed items may remain at the time of the conference. Defendants will address any such disputed issues in their preconference reply letter.

The Honorable Shira A. Scheindlin
November 11, 2011
Page 6

## DEFENDANTS' AGENDA ITEMS

### I. New Jersey DEP's Dismissal of One of Defendants' Trial Sites

On November 2, 2011, Plaintiffs informed Defendants that they were dismissing their claims as to all landfill sites,[7] including the Combe Fill South landfill—one of Defendants' selected trial sites. This dismissal occurs more than a year after Defendants designated Combe as a discovery focus sites and approximately nine months after Defendants selected it as a trial site. While Defendants welcome the dismissal of this site, and others like it in the case, Defendants are frustrated by the timing of the dismissal considering the time and resources Defendants have wasted conducting discovery and readying this site for trial. Regardless, Plaintiffs' decision removes one of Defendants' trial sites from the case. Accordingly, so that parity is preserved, one of Plaintiffs' trial sites must also be dropped from this first trial. Indeed, this is exactly what Your Honor required when the plaintiff (represented by the Miller Axline firm) began dismissing Defendants' trial plumes in the *Orange County* case. Despite Your Honor's prior directives, and Defendants' request for the same result here, the NJDEP Plaintiffs have indicated that they are unlikely to voluntarily reduce their number of trial sites. Plaintiffs' sole justification for this position is that dropping one trial site may mean that they cannot implicate all Defendants in the first trial. Even if that were true, that result is greatly outweighed by Defendants' Due Process rights to a fair trial as previously structured by this Court. Unless Plaintiffs agree to reduce their number of sites, Defendants will ask the Court to order Plaintiffs to do so by November 30, 2011.

### II. Defendants' Request for NJDEP Plaintiffs' Natural Resource Damages Survey

As the Court may recall, during the March 30, 2011 status conference, Plaintiffs made reference to the State's ability to recover "lost-use damages for resources that don't have a ready market by which to evaluate damages." *March 30, 2011 Status Conference*, Tr. at 40-41 (discussing hypothetical of valuing damage incurred by State for injury to flock of birds) (attached at Ex. H). While Defendants dispute the State's entitlement to such damages, one way plaintiffs may attempt to support such claims is through use of a valuation survey. Since the March 30 status conference, Defendants have repeatedly asked Plaintiffs to confirm whether they plan to use such a valuation survey and, if so, to produce the survey instrument and related protocols (not their expert's analysis or the survey results) at least nine to twelve months in advance of when Defendants' rebuttal expert report is due. The reason for this is that Defendants may want to test Plaintiffs' survey instrument and protocols by conducting surveys of their own using variations of Plaintiffs' survey. The process of developing, implementing, processing and statistically analyzing a survey of this type typically takes at least several months. The parties met-and-conferred again yesterday, and the Plaintiffs reported that they are still discussing

---

[7] Plaintiffs have indicated that they will identify all such sites. Once provided with that list, Defendants will ask that Your Honor enter an Order dismissing the landfill sites from this case, with prejudice.

The Honorable Shira A. Scheindlin
November 11, 2011
Page 7

Defendants' request. The time has come for Plaintiffs to confirm their use (or not) of a valuation survey, and to produce it promptly so Defendants can begin their work in rebutting the survey. The parties have agreed to discuss this issue further on November 15th. Unless we reach agreement in advance of the status conference, Defendants will respectfully request that the Court order Plaintiffs to produce their survey instrument and related protocols within 30 days.

### III. Remand of the *City of Merced RDA* Matter

On July 9, 2008, the JPML issued a CTO transferring this action to MDL No. 1358. Since then, the parties have actively litigated the matter, and the Court and Special Master have administered the case, resolving motions and overseeing the completion of all non-expert and expert discovery. All fact discovery has been completed. All expert discovery except one deposition has been completed; that deposition is in the process of being scheduled. Everything that remains to be done in the case is case-specific. Therefore, Defendants request that the Court schedule briefing on a motion for suggestion of remand to the JPML.

Defendants respectfully assert that a suggestion of remand is appropriate at this time based on the following factors:

1. All parties have complied with all Case Management Orders issued by the Court and all Pretrial Orders issued by the Special Master.
2. All fact discovery is completed, and expert discovery will be completed very soon.
3. Remand back to the transferor court for assignment to trial should serve to focus the parties' attention on the prospects for settlement negotiations.
4. There are no pending motions filed and awaiting resolution, other than this possible motion for suggestion of remand.
5. If this action is remanded, Defendants are prepared for trial without delay once the case has been returned to the transferor court's docket.

As always, we appreciate your Honor's attention to this matter and ask that this letter be docketed by the Clerk's Office so that it is part of the Court's file.

Respectfully submitted,

*Peter John Sacripanti*

Peter John Sacripanti

cc:   All Counsel By LNFS, Service on Plaintiffs' Liaison Counsel
      Kenneth E. Warner, Special Master

*[Handwritten:]* The Clerk of the Court is directed to docket this letter.

SO ORDERED

Shira A. Scheindlin,
U.S.D.J

New York, NY
Date: Nov. 18, 2011