# McDermott
# Will & Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Peter J. Sacripanti
Attorney at Law
psacripanti@mwe.com
212.547.5583

November 16, 2011

**BY ELECTRONIC MAIL AND HAND DELIVERY**

The Honorable Shira A. Scheindlin
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1620
New York, New York 10007-1312

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/18/11

    Re:    Master File C.A. No. 1:00-1898 (SAS), M21-88, MDL No. 1358
            *Defendants' Pre-Conference Reply Letter for November 21, 2011 Conference*

Dear Judge Scheindlin:

    Defendants respectfully submit this reply letter in advance of the November 21, 2011 status conference.[1]

## Joint Agenda Items

    **II. *New Jersey DEP* Fact Discovery CMO:** Plaintiffs' preconference letter contains a misleading recitation of the amount of discovery conducted to date. While it is true that productions have been made and depositions taken, an accurate history of Plaintiffs' discovery efforts to date is far more tortured than Plaintiffs depict.

    <u>ESI and Depositions</u>: Plaintiffs did not even begin to undertake an ESI production until years after filing this action, and years after receiving discovery requests to which ESI would be responsive. Though originally ordered to produce ESI over a year ago, and having agreed to complete that production by July 2011, it was not until Defendants filed a motion for sanctions in September that Plaintiffs finally admitted to needing significantly more time to complete the production. Plaintiffs try to impress the Court with the volume of ESI produced and reviewed to date, but, as the Special Master has recognized on more than one occasion, in this State-wide litigation volume is a poor measure of burden or sufficiency. *See, e.g. May 26, 2011 Special Master Hrg. Tr.* at 50 ("[A]s I've said many times over the years, everything in this litigation is burdensome, because litigation's huge and therefore it's all a burden. That's why 'unduly' is

---

[1] Due to the number of issues to be addressed at the status conference, Defendants respectfully request an extension of the 3-page limit for preconference reply letters.

U.S. practice conducted through McDermott Will & Emery LLP.
340 Madison Avenue New York New York 10173 Telephone: 212.547.5400 Facsimile: 212.547.5444 www.mwe.com

The Honorable Shira A. Scheindlin
November 16, 2011
Page 2

always put in front.").[2]  Furthermore, regardless of the volume already produced, there is no disputing that Plaintiffs' production is far from complete.

Now, with their ESI production still months from completion, Plaintiffs are attempting to preemptively limit Defendants to 40 more depositions in this massive case.[3]  Defendants maintain that this effort is unnecessary, as there still is no record or argument that Defendants have abused the deposition process to date or that Plaintiffs have faced any undue burden. Indeed, the *only* reason a deposition limit was raised in the first place was because Defendants— following Plaintiffs' first delinquent ESI production—had to rush to take 18 case manager depositions within the condensed span of 30 days prior to trial site selection. *See March 30, 2011 Tr.* at 4, 10-11 (at Ex. D). Moreover, when discussed with the Court, the limit was to be on the number of depositions that could be taken of Plaintiffs' and Defendants' employees in a given month. It was not intended as a cap on the total number of deposition the parties could take, but rather to ensure that no party was overburdened in any one month, particularly towards the end of the discovery period. *Id.*

Plaintiffs' move to now limit the total number of depositions Defendants may take has wasted valuable time—first, in requiring the parties to dispute what that total should be and second, for requiring Defendants to prematurely predict the most important deponents we may need based on an incomplete document record and deficient discovery responses. However, Defendants have done that work and, in contrast to Plaintiffs unsupported proposal of 40

---

[2] Plaintiffs' bald statement that the remaining ESI "is highly unlikely to have any relevance to the case" is easily countered. *Pl's Preconference Ltr.* at 3 (Nov. 11, 2011). First, as to Plaintiffs' claim they are *reviewing* irrelevant information, Defendants would point the Court to Plaintiffs' long, but poorly crafted, list of search terms. *See Letter from L. Kaufmann to Court*, Exhibit A (Sept. 19, 2011) (at Ex. A). It is no wonder, looking at these terms, that Plaintiffs find themselves reviewing a high volume of irrelevant information. But, to be sure, relevant information is being captured. Although Plaintiffs have produced non-site-specific ESI for only a few custodians to date, Defendants have already used ESI gathered from such custodians at depositions. *See, e.g. John Hazen Depo. Ex. 15* (bullet points comparing MTBE and ethanol) (at Ex. B); *John Hazen Depo. Tr.* at 147-49 (witness stating that Exhibit 15 is a document saved on his computer) (at Ex. C). If Plaintiffs are unhappy with the pace of ESI production or percentage of irrelevant documents reviewed, they have only themselves to blame.

[3] If Defendants are reading Plaintiffs' proposal correctly, the proposed 40 deposition limit would include 34 depositions that have already been noticed. *See Pl's Preconference Ltr.* at 4 n.2. However, the Court's October 20 CMO permitted Defendants to notice 20 depositions between November and January. Therefore, it would seem that Plaintiffs' proposal, if accepted, would necessarily require Defendants to withdraw 14 existing deposition notices simply because Plaintiffs have not been able to schedule those depositions yet. Such a result would be unreasonable and unjust.

The Honorable Shira A. Scheindlin
November 16, 2011
Page 3

additional depositions, have done so thoughtfully. Based on the information gathered and discovery taken to date, Defendants believe that 80 additional depositions (not including those already noticed) is a reasonable estimate of the necessary discovery remaining. To support our proposal, Defendants have compiled a preliminary list of the site-specific and non site-specific NJDEP percipient witnesses we may depose, as well as 30(b)(6) witnesses on other topics. While the number may at first appear high, the scope of this case is not of Defendants' making. Because NJDEP has decided to bring a State-wide case, including claims for product liability and natural resource damages, depositions are required not only for the twenty unique trial sites,[4] but also on decades worth of State decision-making, knowledge, regulation, oversight and other conduct regarding MTBE, storage tanks, remediation projects, and natural resource damage assessment—to name a few, but certainly not all, of the issues in play. As detailed in Defendants' opening letter, compared to prior MDL 1358 cases, all of which have been significantly smaller than this one, Defendants' proposal is entirely reasonable. *See Def's Preconference Letter*, at 5. Indeed, evidence of the reasonableness of this number is that Plaintiffs agreed to it as part of the joint proposed CMO the parties submitted in October. Moreover, as directed by the Court, Defendants have attempted to go forward with depositions prior to completion of Plaintiffs' ESI production. Defendants have done our best to select the most appropriate employees for deposition—based on the documents produced to date and Plaintiffs' interrogatory responses. However, due to Plaintiffs' delays, a number of depositions have been less than fruitful.[5] Defendants should not be penalized for taking 32 depositions over the past year in an effort to move this case forward, while still waiting for significant document productions, interrogatory responses, and privilege logs.

Interrogatories and Discovery Reponses: Plaintiffs' letter suggests that Defendants are in jeopardy of breaching the Court-imposed limits on interrogatories. That suggestion is totally unwarranted and far from true. The Court has already ruled on this issue when it signed CMO

---

[4] It is worth noting that were this a single spill case related to a release at a single gas station, the parties would not blink at the notion of deposing the three or four key DEP employees involved in investigation and remediation efforts at the site. Because the initial trial in this action involves 20 sites, it should not be surprising that each side would need to take nearly 20 times as many depositions.

[5] Plaintiffs' delinquent ESI production is not the only obstacle to Defendants' ability to conduct fruitful depositions. For example, just yesterday, Defendants received 1,300 pages from the files of Dr. Martin Rosen. Ahead of Mr. Rosen's July 6, 2011 deposition, Plaintiffs had produced only a *single* document—the final report of the New Jersey Comparative Risk Project—from his files. On July 20, defense counsel who had taken Dr. Rosen's deposition requested documents identified and discussed during that deposition—all of which were responsive to prior, outstanding document requests. Now, four months after the deposition began, Defendants must review the newly produced materials and may well need to reopen Dr. Rosen's deposition to question him about the belatedly produced documents.

The Honorable Shira A. Scheindlin
November 16, 2011
Page 4

89, which permitted no more than 40 *additional* interrogatories per trial site, per side and 50 *additional* non-site-specific interrogatories per side, (*see March 30, 2011 Tr.*, at 30-31 (at Ex. D)), Defendants have served only a handful of interrogatories—six (6) interrogatories related to the Livingston Exxon trial site, fifteen (15) interrogatories (including subparts) related to the Ridgewood Shell trial site, and no site-specific interrogatories—all *well* within the limits set by the Court. Plaintiffs' effort to shock the Court with numbers should be seen for what it is—a distraction. As comparison, Defendants in the *City of New York* and *Suffolk* matters each answered 393 and 263 "general liability" interrogatories (counting subparts), respectively.

However, the two above-referenced site-specific interrogatory sets raise a far more pressing question than the number of interrogatories Defendants have served. Namely, the speed at which written discovery is progressing and has progressed throughout this litigation. Indeed, as Plaintiffs indicate in their letter, the Special Master just recently had to reiterate his order of a year ago requiring Plaintiffs to supplement many of their responses to Defendants' Second Set of Discovery Requests, which were originally served on Plaintiffs twenty (20) months ago. Defendants, of course, will object to any effort by Plaintiffs to have the Court revisit the Special Master's ruling, especially given that the original ruling was made a year ago and the parties are running out of time for this kind of discovery delay.

Case Management Order: On November 15, the parties met and conferred regarding a proposed CMO, and it appears that we have reached agreement on all but two of the proposed deadlines. Those two items are highlighted in the attached joint proposed CMO (Ex. E) and those items are submitted on behalf of Defendants only at this time. The first relates to the deadline for service of Requests for Admission ("RFAs"). Defendants propose a date 30 days after the close of fact discovery so that the fact record is complete before RFAs are due. The second deadline relates to Plaintiffs' potential use of a survey in connection with their natural resource damage ("NRD") claims. During the parties' meet and confer, Plaintiffs represented that, as of now, they do not intend to use an NRD survey in this litigation. They further represented that if they "change their minds," they will provide Defendants with notice and the "appropriate documentation." Because any decision to conduct such a survey going forward would necessarily have serious implications on the case schedule and the scope of expert work, Defendants respectfully request that the Court set a deadline—eight months prior to the end of fact discovery—for Plaintiffs to produce any survey (and related protocols) they elect to use, and after which Plaintiffs may no longer "change their mind" on this issue.

## Plaintiffs' Agenda Items

**I. Update on Puerto Rico Litigation:** Plaintiffs' "update" is an attempt to overstate the discovery taken to date and convince the Court of Plaintiffs' "efforts" with respect to the same. Indeed, Plaintiffs go so far as to suggest that they are doing *more* than has been required by the Court. Plaintiffs' account, however, is contradicted by the record, which instead demonstrates how Plaintiffs' numerous discovery failures have plagued the trial site selection process—issues known all too well to the Court, Special Master and Defendants.

The Honorable Shira A. Scheindlin
November 16, 2011
Page 5

For example, Plaintiffs suggest that this Court's Orders have only addressed the timing for trial site selection. *Pl's Preconference Ltr.* at 4. However, Plaintiffs ignore the Order granting Defendants' August 5, 2011 motion to compel ESI and depositions. In granting that motion, the Court agreed the information sought—both ESI and depositions—was necessary for Defendants to make informed decisions concerning their trial site designations. Plaintiffs simply failed to meet the Court's September 30th deadline for the production of ESI and depositions, and instead produced just two "databases"[6] containing certain tank registry information, and nothing else.[7] Instead, on the day of the deadline for production *completion*, Plaintiffs wrote to Defendants to inform us that they were "continuing to *process* some additional data to make it searchable for site specific ESI" and that they "expect to have completed this *process* by October 10." *Email from. M. Axline to S. Riccardulli* (Sept. 30, 2011) (at Ex. F). When Defendants objected and also pointed out that we were powerless to absolve them of their failure to meet the Court's Order, Plaintiffs sought to confer with Defendants to find a solution, which led to the parties' joint proposal on October 17th of a revised CMO. As demonstrated by that proposal, Plaintiffs actually needed far longer than October 10th to complete processing of their ESI production. The Court rejected the parties' proposal and ordered the Plaintiffs to complete their ESI production by December 15th, with trial site selection to follow on December 31, 2011.

Plaintiffs' preconference letter casts what has occurred as diligent "effort," while the Special Master, in contrast, has remarked that many of the efforts appear to have begun only after the September 30th deadline. Indeed, following the Court's order, the Special Master has held weekly telephone conferences to monitor Plaintiffs' progress with respect to their collection and production of ESI. Although Plaintiffs have produced certain email, Plaintiffs have *still* not identified or collected all of the ESI to be produced. As of last week, Plaintiffs were still in the process of identifying which hard drives needed to be searched for site-specific information. Notwithstanding that their *collection* had not been completed, the Special Master, cognizant of

---

[6] Plaintiffs produced two "readily available" databases in the form of Excel spreadsheets, although these productions may still be incomplete – Plaintiffs have withheld certain of the information to review for privilege, and despite Plaintiffs' promise to get us either further information or a privilege log "in short order," we are still waiting for both.

[7] Notably, Plaintiffs also failed to comply with the Court's September 15th deadline with respect to Defendants' 30(b)(6) deposition notices on document preservation and collection. Indeed, notwithstanding the Court's directives that these depositions be scheduled concurrently with trial site selection depositions, Plaintiffs never proposed dates to Defendants. While Defendants have agreed to complete certain portions of these depositions before December 15th, Defendants are still waiting for Plaintiffs to give us dates that work for the witness(es). The remaining portions of these depositions will have to be completed following trial site selection.

The Honorable Shira A. Scheindlin
November 16, 2011
Page 6


the Court's deadlines, ordered Plaintiffs to produce the subject ESI on a rolling basis. PTO 67a (at Ex. G).[8] Plaintiffs' "update" omits these facts.

**II. Update on California Litigations:** *City of Fresno v. Chevron U.S.A. Inc., et al.*: Contrary to the statements in Plaintiff's Pre-Conference letter, Plaintiff did not file its site-specific expert reports by the deadline set forth in the current CMO but, rather, asked Defendants for an extension to serve the reports, presumably because of the *Merced* trial. Plaintiff initially proposed a modified schedule that did not provide Defendants with a proportionate amount of time in which to prepare their site-specific reports. Defendants informed Plaintiff that they would not object to the requested extension so long as Defendants were given a commensurate extension in which to prepare their responsive reports. On October 26, 2011, the parties notified Special Master Warner that they were in agreement on the modifications to the expert schedule, as set forth below. *See Email from Jon Anderson to Tracey O'Reilly and Special Master Warner* (Oct. 26, 2011) (at Ex. I).

Site-Specific Expert Deadlines (Proposed):

| December 5, 2012 | Plaintiff serves site-specific expert reports. |
| February 3, 2012 | Defendants serve site-specific expert reports. |
| March 5, 2012 | Plaintiff serves site-specific reply reports. |
| May 4, 2012 | Expert Discovery is completed. |

*OCWD MTBE*: OCWD did not raise the substance of its proposal prior to exchange of pre-conference letters. While Defendants dispute OCWD's characterization of the extensions from Special Master Warner (most notably OCWD omits the dates on which it complied with its obligations to produce materials in connection with the late-filed expert reports), Defendants will attempt to resolve these issues with OCWD prior to the conference.

As always, we appreciate your Honor's attention to this matter and ask that this letter be docketed by the Clerk's Office so that it is part of the Court's file.

---

[8] Plaintiffs' failures are not limited to ESI. Plaintiffs also have failed to properly prepare a 30(b)(6) witness on designated issues pertinent to trial site selection. The Special Master granted Defendants' motion to compel and has ordered that Plaintiffs properly prepare a witness(es) for deposition by November 30. That deadline was further extended to December 15th, at Plaintiffs' request, because they needed the ESI still being collected to prepare their witness(es). Naturally, Plaintiffs' failure to prepare their witness directly relates to their failure to collect all documents, ESI and otherwise, related to the trial sites, so that the witness can have complete knowledge. The parties have conferred regarding these failures. *See Email from S. Riccardulli to M. Axline* (Nov. 8, 2011), with attachment (at Ex. H).

The Honorable Shira A. Scheindlin
November 16, 2011
Page 7


Respectfully submitted,

*Peter John Sacripanti*

Peter John Sacripanti


cc: All Counsel By LNFS, Service on Plaintiffs' Liaison Counsel
    Kenneth E. Warner, Special Master

The Clerk of the Court is directed to docket this letter.
SO ORDERED.

Shira A. Scheindlin,
U.S.D.J.

New York, NY
Date: Nov. 18, 2011