UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ X
                               :

IN RE: METHYL TERTIARY BUTYL   :
ETHER ("MTBE") PRODUCTS      :    **OPINION AND ORDER**
LIABILITY LITIGATION         :
------------------------------------------------ :    **Master File No. 1:00-1898**
                               :    **MDL 1358 (SAS)**
This document relates to:       :    **M21-88**
                               :

*Yosemite Springs Park Utility Company v.* :
*Chevron, U.S.A. Inc., et al.,* Case No. 09-cv- :
1419                              :
                               :
------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _12/6/11_

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

In this consolidated multi-district litigation ("MDL"), plaintiffs seek relief from contamination, or threatened contamination, of groundwater from various defendants' use of the gasoline additive methyl tertiary butyl ether ("MTBE") and/or tertiary butyl alcohol, a product formed by the natural degradation of MTBE in water. In this case, Yosemite Springs Park Utility Company ("YSPUC") alleges that Chevron U.S.A., Inc. ("Chevron") promoted and sold gasoline containing MTBE although it knew – or should have known – that MTBE would eventually pollute groundwater.

1

Currently before the Court is a motion *in limine* filed by YSPUC, seeking an order directing that Chevron "shall not make any reference to, offer any evidence, or make any argument suggesting that Chevron's liability should be reduced because Plaintiff has received compensation in the form of funding or financial support for a water treatment plant from any collateral source."[1]  For the reasons explained below, the motion is granted in part and denied in part.

## II.    BACKGROUND

The Underground Storage Tank Cleanup Fund ("USTCF") is a California program that "amounts to a government-run insurance pool [that] reimburses owners of underground storage tanks ("UST") who clean up leaks."[2] Similar to an insurance premium, UST owners pay a certain amount into the USTCF on a regular basis; similar to a deductible, UST owners are also required to bear a certain level of financial responsibility "for taking corrective action and compensating third parties for bodily injury and property damage" on their own.[3]

---

[1]      Proposed Order, Attached to YSPUC's Memorandum of Law in Support of Motion *in Limine* to Exclude Evidence or Argument that Plaintiff Received Compensation For Its Injury From a Collateral Source ("YSPUC Mem."), at 1.

[2]      *Caldo Oil Co. v. State Water Resource Control Bd.*, 52 Cal. Rptr. 2d 609, 610 (Cal. Ct. App. 1996).

[3]      CAL. HEALTH & SAFETY CODE §§ 25299.30-32.

Once the cost associated with taking corrective action and compensating third parties exceeds the level of financial responsibility that the UST owner must bear, the owner may file a claim with the USTCF for reimbursement.[4]  Consistent with normal insurance plans, reimbursement is made on a "per occurrence" basis.[5]  Unlike a typical insurance plan, however, the USTCF does not disburse funds directly to affected third parties or represent UST owners in court.  Instead, UST owners cover the costs on their own and seek reimbursement from the USTCF.  As an owner of USTs in California, Chevron has made the required payments into the USTCF.[6]

From June 1999 to December 2009, the USTCF was required by law to transfer five million dollars per year to the Drinking Water Treatment and Research Fund ("DWTRF").[7]  Unlike the USTCF, which was essentially a government-created insurance pool financed by and run for the benefit of UST owners, the DWTRF – which was administered by the California Department of

---

[4]     *See id.* at §§ 25299.56-58.

[5]     *Caldo Oil Co.*, 52 Cal. Rptr. 2d at 612.

[6]     *See* Chevron's Response to YSPUC's Motion *in Limine* to Exclude Evidence or Argument that Plaintiff Received Compensation For Its Injury From a Collateral Source ("Chevron Mem.") at 18.

[7]     *See* CAL. HEALTH & SAFETY CODE § 25299.99.1.

Health Services ("CDHS")[8] – paid public water systems directly to investigate and remedy oxygenate contamination.[9]  Public water systems that receive more than one million dollars from the DWTRF are obliged to "aggressively pursue cost recovery from responsible persons."[10]  YSPUC has received almost three million dollars in DWTRF funds from the CDHS to clean up the MTBE contamination of its wells.[11]

## III.   LEGAL STANDARDS

### A.   The Collateral Source Rule

The collateral source rule is a substantive rule of law that states that a tortfeasor's liability is not reduced even though the tort victim has received benefits for the same injury from collateral or independent sources.  California law,

---

[8]      *See* Drinking Water Treatment and Research Fund, http://www.cdph.ca.gov/services/funding/Pages/DWTRF.aspx.  The DWTRF is now administered by the California Department of Public Health, one of the CDHS's successor agencies.  *See CDHS has reorganized*, http://www.dhs.ca.gov/.

[9]      *See* CAL. HEALTH & SAFETY CODE § 116367(d).  Pursuant to subsection l(1), the legislation authorizing the DWTRF automatically expired January 1, 2010.  It has not been reinstated since then.  Nonetheless, the DWTRF continues to exist until it runs out of money, and cost recovery actions remain valid.  *See id.* at subsection l(2)

[10]     CAL. HEALTH & SAFETY CODE § 116367 f(1)-(2).

[11]     *See* Plaintiff's Responses to the Chevron Defendants' Second Set of Interrogatories, Ex. 3 to Declaration of Charles C. Correll, Jr., counsel for Chevron, at 3.

which governs here,[12] recognizes the collateral source rule, both as a substantive rule of law and as an evidentiary principle barring the introduction of evidence of payments from independent or collateral sources unless there is a "persuasive showing that the evidence sought to be introduced is of substantial probative value."[13]  The primary rationale for the collateral source rule is a concern that juries will be unfairly influenced in their determination of a defendant's liability if they hear evidence that the plaintiff received payments for the same injury from another source,[14] such as the plaintiff's personal insurance,[15] or a gratuitous service rendered by an unrelated third party.[16]

Federal courts disagree about the evidentiary impact of the collateral source rule.  The First Circuit has held that even though the substantive portion of

---

[12]     Although the collateral source rule is part of the federal common law, a federal court should apply the state variant of the rule when dealing with state law claims.  *See Berg v. First State Ins. Co.*, 915 F.2d 460, 467 (9th Cir. 1990).

[13]     *Lund v. San Joaquin Valley R.R.*, 31 Cal. 4th 1, 10 (2003).

[14]     *See Phillips v. Western Co. of N. Am.*, 953 F.2d 923, 929 (5th Cir. 1992).

[15]     *See Howell v. Hamilton Meats & Provisions, Inc.*, 52 Cal. 4th 541, 551 (2011); *see also Ocean Ships, Inc. v. Stiles*, 315 F.3d 111, 116 (2d Cir. 2002).

[16]     *See, e.g.*, *Sanchez v. Strickland*, No. F060582, 2011 WL 5301773, at *8 (Cal. Ct. App. Nov. 4, 2011) (holding that a gratuitous reduction in victim's previously-billed medical expenses was still recoverable under the collateral source rule).

the collateral source rule is governed by state law, the admissibility of collateral

source evidence is governed by Federal Rule of Evidence 403.[17]  Similar to

California, however, the Fourth and Fifth Circuits hold that the substantive prong

of the collateral source rule "carries with it an evidentiary rule requiring the

exclusion of evidence of any collateral benefits."[18]  The Tenth Circuit holds that

"substantive" rules of evidence, such as the collateral source rule, are governed by

state law under *Erie*.[19]  The Ninth Circuit, where this case will be tried, has not

issued a definitive decision on this issue.[20]

    Even if the evidentiary prong of the collateral source rule is not a

substantive rule of law under *Erie*, there is no dispute that Federal Rule of

--------

[17]      *See England v. Reinauer Transp. Cos., L.P.*, 194 F.3d 265, 273 (1st Cir. 1999).  Even the First Circuit's rule is not absolute.  For example, when applying the collateral source rule in a case based on New Hampshire law, the First Circuit showed special concern for the purposes of New Hampshire's substantive collateral source rule and blocked the admission of some evidence accordingly. *See Clausen v. Sea-3, Inc.*, 21 F.3d 1181, 1193 (1st Cir. 1994).  Furthermore, in a case applying Connecticut law, the Second Circuit has held that the collateral source rule "precludes evidence by the defense of compensation to a plaintiff from an independent source. . . ."  *Perry v. Allegheny Airlines, Inc.*, 489 F.2d 1349, 1352 (2d Cir. 1974).

[18]      *Sloas v. CSX Transport, Inc.*, 616 F.3d 380, 387 n.3 (4th Cir. 2010). *Accord Phillips*, 953 F.2d at 929.

[19]      *See Macsenti v. Becker*, 237 F.3d 1223, 1241 (10th Cir. 2001).

[20]      *See Gresham v. Petro Stopping Ctrs., LP*, No. 09 Civ. 34, 2011 WL 1748569, at *2 (D. Nev. Apr. 25, 2011).

Evidence 402 requires that any proffered evidence must be relevant.  Accordingly, where the substantive prong of the collateral source rule applies, the fact that the plaintiff has received collateral source benefits will typically be irrelevant to the substantive issue of damages.  Therefore, while evidence of collateral source benefits may be relevant to issues beyond damages, a court must take great care when admitting such evidence for limited purposes, as it is by nature prejudicial and likely to be misunderstood or misused by a jury.

Where the defendant itself has provided an independent benefit to the plaintiff, the rationale for the collateral source rule fades, and the concern about a double recovery becomes more concrete.[21]  Accordingly, the court must scrutinize the defendant's intent in providing such benefits.  If the defendant provided the benefit with the intent of offsetting tort liability, the collateral source rule does not apply, either as a substantive rule or as a rule of evidence.[22]  By contrast, if the defendant provided the benefit without the intent to offset tort liability, the

---

[21]     *See King v. City of New York*, No. 06 Civ. 6516, 2007 WL 1711769, at *1 (S.D.N.Y. June 13, 2007).

[22]     *See, e.g.*, *Scott v. County of Los Angeles*, 27 Cal. App. 4th 125, 154 (Cal Ct. App. 1994) (holding that payments made to an injured party from insurance defendant in order to cover such injuries were not subject to the collateral source rule).

7

collateral source rule does apply, and the defendant will get no offset credit.[23]  In

sum, where the defendant is the source of an independent benefit, the collateral

source rule applies unless that benefit was provided by the defendant as a

tortfeasor.[24]

### B.   Motions *in Limine*

The purpose of a motion *in limine* is to allow a court to rule on the

admissibility of potential evidence in advance of trial.[25]  A court will exclude

evidence on a motion *in limine* only if the evidence is "clearly inadmissible on all

potential grounds."[26]  However, a court "considering a motion *in limine* may

reserve judgment until trial, so that the motion is placed in the appropriate factual

context."[27]  Additionally, the transferee court in an MDL should decide common

issues expeditiously, but may leave case-specific matters to the trial court upon

---

[23]     *See McQuillan v. Southern Pac. Co.*, 115 Cal. Rptr. 418, 422 (Cal. Ct.
App. 1974).

[24]     *See id.*

[25]     *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984).

[26]     *United States v. Ozsusamlar*, 428 F. Supp. 2d 337, 340 (S.D.N.Y.
2002).

[27]     *In re Methyl Tertiary Butyl Ether("MTBE") Prods. Liab. Lit.*, 643 F.
Supp. 2d 471, 476 (S.D.N.Y. 2009) (citation and quotation marks omitted).

remand.[28]

## C.    Discovery

Under Federal Rule of Evidence 403, relevant evidence is admissible at trial as long as its probative value is not "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  However, under Federal Rule of Civil Procedure 26(b)(1), a party is entitled to discovery of relevant material that would be inadmissible at trial "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[29]

## IV.    DISCUSSION

The parties agree that the USTCF contributed substantial amounts of money to the DWTRF,[30] and that the CDHS paid YSPUC with DWTRF funds ("DWTRF Payments").  The primary question presented by this motion is whether the substantive portion of the collateral source rule applies to DWTRF Payments by dint of Chevron's contributions to the USTCF.  The subsidiary questions

---

[28]    *See In re Darvocet, Darvon & Propoxyphene Prods. Liab. Lit.*, 780 F. Supp. 2d 1379, 1381 (J.P.M.L. 2011).

[29]    *See Degen v. United States*, 517 U.S. 820, 825-26 (1996).

[30]    *See* Chevron Mem. at 18, YSPUC Mem. at 4.

presented by this motion are whether the collateral source rule requires excluding evidence of such payments, and whether it should prevent discovery related to such payments.

**A.     The Collateral Source Rule Applies to the DWTRF Payments**

YSPUC was legally entitled to the DWTRF Payments even though it never contributed to the DWTRF.  Accordingly, the DWTRF payments would appear at first glance to be gratuitous third party payments squarely within the ambit of the collateral source rule.  As noted above, however, the DWTRF was funded in part by an annual five million dollar transfer from the USTCF, to which Chevron contributed.  The question, then, is whether the otherwise-collateral DWTRF Payments become non-collateral in light of Chevron's contribution to the USTCF.

Payments from the defendant or the defendant's insurance directly to the plaintiff are often found to be non-collateral; accordingly, courts typically allow defendants to offset their liability to account for such payments, and to introduce related evidence.[31]  As noted above, the USTCF is a quasi-insurance fund created by the State of California to help the owners and operators of USTs pay for cleanup – including reimbursements to affected third parties – due to a perceived

---

[31]     *See, e.g.*, *Scott*, 27 Cal. App. 4th at 154 .

10

difficulty that some owners and operators had in obtaining private insurance.

Accordingly, the collateral source rule would not prevent Chevron from

introducing evidence that either it or the USTCF made direct payments to YSPUC.

Chevron, however, does not argue that it or the USTCF made any

direct payment to YSPUC for MTBE remediation, or for any other purpose.

Chevron only argues that the DWTRF Payments are not subject to the collateral

source rule because the DWTRF was not wholly independent from Chevron by

dint of Chevron's contributions to the USTCF.  The differences between the

USTCF and the DWTRF, however, are too broad to make this leap.  The purpose

of the USTCF was to protect smaller owners and operators of USTs who could not

afford to self-insure or buy insurance privately.  On the other hand, the purpose of

the DWTRF was to provide public water providers with a ready source of funds to

study and implement the best methods of remediating oxygenate contamination –

effectively granting such providers insurance against oxygenate contamination at

no cost to themselves.   Simply put, Chevron's intent in contributing to the USTCF

was to comply with the law and to insure itself against UST cleanup costs.

Chevron's intent was not to contribute to the DWTRF – and thereby to separate

insurance for YSPUC – or to make a down payment on any future liability to

YSPUC.  Instead, the DWTRF Payments are more akin to "fringe benefits," which,

although funded by the tortfeasor, are routinely held to be subject to the collateral source rule.[32]

   Accordingly, I find that the collateral source rule applies to the DWTRF Payments, which therefore do not reduce Chevron's liability to YSPUC. Furthermore, Chevron may not introduce evidence of those payments for purposes of reducing its liability because they are not relevant to the issue of whether Chevron has any liability to YSPUC.

## B. DWTRF Payments Are Not Admissible for Other Purposes

   Chevron asserts that even if the collateral source rule applies to the DWTRF Payments, evidence of those payments may still be admissible for other purposes.  Specifically, Chevron argues that such evidence is admissible to show the following: (1) YSPUC's damages, (2) the reasonableness of YSPUC's damages, (3) that YSPUC failed to mitigate damages, (4) to rebut YSPUC's claim for punitive damages, and (5) to impeach YSPUC's witnesses.[33]

### 1. DWTRF Payments Are Not Admissible to Show YSPUC's Damages

Chevron asserts that YSPUC and its contractor, H2O.R2, agreed that

---

[32] *See, e.g.*, *King*, 2007 WL 1711769, at *2 n.28 (collecting cases).

[33] *See* Chevron Mem. at 8-17.

YSPUC would not be liable for any costs that CDHS did not approve.

Accordingly, Chevron argues that the only damages that YSPUC incurred were

limited to the amount of the DWTRF Payments.[34]  YSPUC disagrees with

Chevron's characterization of its contract with H2O.R2, and argues that the final

version of the contract requires it to pay H2O.R2 either out of the DWTRF

Payments or "any funding received from the responsible parties"; YSPUC also

states that it agreed to "diligently pursue the responsible party" for costs not

covered by the DWTRF Payments.[35]  Chevron argues in turn that YSPUC's

characterization of its contract with H2O.R2 is belied by the testimony of Ken

Harrington, a member of YSPUC's board of directors, who stated that H2O.R2 had

in fact waived costs that were not covered by the DWTRF Payments.[36]

        For purposes of this motion, it is sufficient to note that CDHS made

the DWTRF Payments directly to YSPUC; only after receiving the payments did

YSPUC pay H2O.R2.[37]  Therefore, even if I were to accept Chevron's description

---

[34]        *See id.* at 8.

[35]        6/22/11 Deposition of Kassy Chauhan, Ex. 1 to Declaration of Celeste
Evangelisti, counsel for Plaintiff, ("Evangelisti Decl.") at 139:16-140:9.

[36]        *See* Chevron Mem. at 8-9.

[37]        *See* YSPUC's Reply Memorandum of Law in Support of Motion *in
Limine* to Exclude Evidence or Argument that Plaintiff Received Compensation
For Its Injury From a Collateral Source ("YSPUC Rep. Mem.") at 5.

of the contract, YSPUC's costs can be proven by its direct payments to H2O.R2, without any mention of the DWTRF as the source of those funds.  Accordingly, because the risk of undue prejudice that evidence of the DWTRF Payments would entail substantially outweighs its minimal probative value, Chevron may not use such evidence to prove YSPUC's costs or damages.

> **2.     DWTRF Payments Are Not Admissible to Show That YSPUC's Costs May Have Been Unreasonable**

Chevron notes that CDHS declined to make DWTRF Payments for some of the costs YSPUC claimed in connection with the design and construction of its MTBE treatment facility.[38]  Chevron argues that such denials constitute "clearly relevant evidence as to whether YSPUC's claims here are reasonable" because section 3359 of the California Civil Code requires that damages be reasonable in every case.[39]

Chevron's argument improperly shifts the focus of the admissibility test for collateral source evidence under Rule 403.  The concern is not whether CDHS's denial of DWTRF Payments is relevant to the reasonableness of YSPUC's costs.  Instead, the concern is whether the potential prejudice arising

---

[38]      *See* Chevron Mem. at 11.

[39]      *Id.*

14

from that evidence – that the jury may reduce an award to YSPUC because some of its costs were reimbursed by a third party – substantially outweighs its probative value.

Chevron argues that *Quintero v. United States* stands for the proposition that a Rule 403 analysis permits the admission of collateral source payments for the purpose of ascertaining the reasonableness of damages.[40]  But that case is inapposite for two reasons.  *First*, it involved a bench trial, which eliminated the danger of undue prejudice,[41] whereas this case will be tried to a jury. *Second*, the court noted that if it had been a jury trial, it is unlikely that it would have admitted the collateral source evidence if other evidence existed to establish damages.[42]  Here, YSPUC intends to offer expert testimony on the issue of whether its damages were reasonable.[43]  As such, *Quintero* does not support Chevron's argument.[44]  Accordingly, because there will likely be other evidence going to the

---

[40]      *See id.* at 10 (citing *Quintero v. United States*, No. 08 Civ. 1890, 2010 WL 5071045, at *8 (E.D. Cal. Dec. 7, 2010)).

[41]      *See Quintero*, 2010 WL 5071045, at *8.

[42]      *See id.* at *8 at n.6.

[43]      *See* YSPUC Rep. Mem. at 6.

[44]      Chevron also relies on *Smalley v. Baty* to support its argument. That case, however, merely stands for the proposition that the collateral source rule does not bar *the plaintiff* from introducing evidence of damages he incurred that

reasonableness of YSPUC's costs, I find that the potential for undue prejudice outweighs any probative value of the CDHS decision to refuse certain DWTRF Payments.  Chevron may not introduce such evidence in order to argue that YSPUC's costs were unreasonable.

Nonetheless, not all of what Chevron characterizes as "DWTRF Evidence" is inadmissible on the issue of reasonableness.  YSPUC notes that some of the "DWTRF Evidence" is nothing more than CDHS's opinions of YSPUC's MTBE treatment plans,[45] and that CDHS would have had to review those plans even if the DWTRF did not exist.[46]  Accordingly, testimony from CDHS employees charged with determining the reasonableness of YSPUC's plans is admissible to the extent that it does not implicate the disbursement or rejection of DWTRF Payments.

### 3.    DWTRF Payments Are Not Admissible to Argue that YSPUC Failed to Mitigate Its Damages

Chevron asserts that precluding evidence of the DWTRF Payments would allow YSPUC to "present a complete fiction to the jury, implying that it was

---

were not reimbursed by insurance.  *See Smalley v. Baty*, 27 Cal. Rptr. 3d 575, 580-81 (Cal Ct. App. 2005). Accordingly, *Smalley* is also inapposite.

[45]     *See* Chevron Mem. at 11.

[46]     *See* 8/30/11 Deposition of Kassy Chuahan, Ex. 2 to Evangelisti Decl., at 296:2-297:18.

spending its own money. . . ."[47]  The implications of this argument run directly

contrary to the purposes of the collateral source rule.  A hypothetical helps to

indicate why this is so.  If, for example, an accident victim had personal medical

insurance, the defendant would not be allowed to show that said insurance paid

some of his medical bills in order to show that the victim failed to mitigate his

medical costs.  Such a maneuver would render the collateral source rule illusory.

Chevron also argues that "[w]hat YSPUC told the DWTRF about the

alleged contamination to secure and maintain . . . funding is relevant to its claims

against Chevron" generally and specifically to "Chevron's defense that YSPUC did

not mitigate its damages."[48]  Chevron fails to note, however, that YSPUC

interacted with the CDHS, and that the DWTRF was merely a legislatively-created

fund administered by the CDHS.  Chevron may use any relevant evidence it gleans

from the interactions between the CDHS and YSPUC, with the caveat that it must

refrain from mentioning the DWTRF Payments, for the reasons stated above.

### 4.      Chevron's Contributions to the USTCF Are Admissible on the Issue of Punitive Damages

As part of its claim for punitive damages, YSPUC alleges that

---

[47]    Chevron Mem. at 12.

[48]    *Id.* at 13.

Chevron "knew or should have known that substantial quantities of MTBE-gasoline would be released and that Chevron had a reckless disregard for the consequences of the known leakage of gasoline containing MTBE from gasoline delivery systems," including USTs.[49]  Accordingly, Chevron argues that it is "entitled to prove that it contributed to programs in place . . . to minimize any harm caused" by the release of MTBE.[50]  YSPUC argues that this is "precisely the kind of argument the collateral source rule precludes . . . ."[51]

It is true that if YSPUC ultimately obtains a punitive damages award, Chevron would not be allowed to use the DWTRF Payments to reduce that liability.  Chevron's argument is not to the contrary.  Instead, Chevron argues that the contributions it made to the USTCF indicate that it did not act with reckless disregard for the potential for MTBE pollution, precisely because USTCF funds can be used to clean up MTBE pollution.[52]  Because such a mental state is an important element of punitive damages, Chevron argues that evidence of its

---

[49]    *Id.* at 14 (quotation marks omitted).

[50]    *Id.* at 15.

[51]    YSPUC Mem. at 7.

[52]    *See, e.g.*, *Harris v. Gregory*, No. F059220, 2011 WL 140185, at * 1 (Cal. Ct. App. Jan. 18, 2011) (noting that the USCTF provided $1.5 million in order to clean up MBTE pollution caused by a leak in a gas station owner's UST).

contributions to the USTCF are highly relevant to the issue of whether punitive damages should be available at all.

Chevron's contributions to the USTCF are relevant to the issue of whether it acted with reckless disregard for the potential of MTBE pollution, and therefore admissible on the issue of the availability of punitive damages. However, given the connection between the USTCF and the DWTRF, there is a potential for unfair prejudice if the use of this evidence is not strictly limited to the issue of Chevron's intent. The wording of a limiting instruction is reserved for the trial court.

### 5. Whether Chevron May Use Collateral Source Evidence for Impeachment Is an Issue for the Trial Court

Even if it is not allowed to use evidence of DWTRF Payments for the substantive reasons noted above, Chevron argues that it should still be allowed to use such evidence in order to impeach YSPUC witnesses.[53] While an impeachment exception to the collateral source rule is recognized by federal courts[54] and by

---

[53]     *See id.* at 15-17.

[54]     *See, e.g.*, *Brandt v. Vulcan, Inc.*, 30 F.3d 752, 760 (7th Cir. 1994); *Grand Arcadian Inc. v. Fluor Corp.*, No. 07 Civ. 295, 2010 WL 1253530, at *3 (E.D. La. Mar. 29, 2010). *But see Ocasio v. Ollson*, 596 F. Supp. 2d 890, 905 (E.D. Pa. 2010) (noting that the risk of prejudice is so high that it will often require exclusion even if collateral source evidence is offered only for impeachment purposes).

California courts,[55] its application still requires the court to balance the risk of

prejudice against the probative value of the impeachment.  Accordingly, even if

collateral source evidence is relevant to impeach, it may be excluded if the risk of

prejudice is too high.[56]  In any event, Federal Rule of Evidence 105 requires that

evidence admitted for a limited purpose be accompanied by an appropriate limiting

instruction to the jury if a party so requests.

Given that YSPUC strenuously objects to the use of evidence of

DWTRF Payments for substantive purposes, it is highly likely that YSPUC would

request a limiting instruction should I allow Chevron to use such evidence for

impeachment purposes.  However, limiting instructions are highly-case specific

and should not ordinarily be handled by the transferee court in an MDL case.

Accordingly, I defer the question of whether evidence of DWTRF Payments

should be admissible for purposes of impeachment to the trial court.

---

[55]     *See, e.g.*, *McKinney v. California Portland Cement Co.*, 117 Cal. Rptr.
2d 849, 855 (Cal. Ct. App. 2002); *Arambula v. Wells*, 85 Cal. Rptr. 2d 584, 590
(Cal. Ct. App. 1994) (noting that admitting collateral source evidence for
impeachment purposes is within the discretion of the trial court).

[56]     *See Hrnjak v. Graymar, Inc.*, 4 Cal. 3d 725, 752 (1971) (noting that
mere relevance to the issue of impeachment may not be sufficient to admit
collateral source evidence for that purpose); *McGrath v. Consolidated Rail Corp.*,
136 F.3d 838, 841 (1st Cir. 1998) (noting that a court has discretion to determine
whether the risk of prejudice is outweighed by the probative value of collateral
source evidence).

**C.      Chevron Should Not Be Precluded from Discovery of Evidence Related to DWTRF Payments**

Expert discovery in this case is scheduled to conclude on January 31, 2012.[57]  Even though evidence of DWTRF Payments is not admissible for the substantive purposes that Chevron proposes, it may reasonably lead to admissible evidence on other points, such as the interaction between CDHS and YSPUC. Furthermore, the trial judge may decide to admit evidence of DWTRF Payments for purposes of impeachment.  Accordingly, although the collateral source rule applies to DWTRF Payments, Chevron is entitled to discovery thereof.

---

[57]      *See* Docket No. 59.

## V.    CONCLUSION

The collateral source rule applies to the DWTRF Payments. Accordingly, Chevron may not refer to or offer evidence of such payments in support of any argument that Chevron's liability to YSPUC should be reduced by the same amount.  For the reasons stated above, Chevron also may not refer to or offer such evidence in support of any argument that YSPUC's damages were unreasonable, or that YSPUC failed to mitigate damages.   Any decision of whether evidence of the DWTRF Payments should be admitted for impeachment purposes, as well as the formulation of any appropriate limiting instruction, is reserved for the trial court.

Chevron's contributions to the USTCF are admissible as evidence of Chevron's intent as they relate to the availability of punitive damages. Accordingly, Chevron may introduce evidence of those contributions, with the caveat that it may not refer to the connection between the USTCF and the DWTRF. Furthermore, the collateral source rule does not apply to the interactions between CDHS and YSPUC.  Insofar as Chevron does not mention the DWTRF Payments, Chevron may use relevant evidence of such interactions for any purpose not inconsistent with this Opinion.  Finally, Chevron is entitled to full discovery with regards to these payments.

22

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            December 6, 2011

**-Appearances-**

**For Plaintiff:**

Celeste A. Evangelisti, Esq.
David T. Ritter, Esq.
Mitchell McRea, Esq.
Baron & Budd, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219
(214) 521-3605

Victor M. Sher, Esq.
Jessica L. Grant, Esq.
Marnie E. Riddle, Esq.
Sher & Leff
450 Mission Street, Suite 400
San Francisco, California 94105
(415) 348-8300

**Liaison Counsel for Plaintiffs:**

Robin Greenwald, Esq.
Robert Gordon, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, New York 10038
(212) 558-5500

**For Defendant:**

David A. Grenardo, Esq.
King & Spalding LLP
1100 Louisiana
Houston, Texas 77002
(713) 276-7329

James J. Maher, Esq.
King & Spalding LLP
401 Congress Avenue, Suite 3200
Austin, Texas 78701
(713) 276-7403

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
McDermott Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, New York 10020
(212) 547-5583