

**W   E   I   T   Z**

**&**

**L   U   X   E   N   B   E   R   G**

A   P R O F E S S I O N A L   C O R P O R A T I O N
•   L A W   O F F I C E S   •

700 BROADWAY          •          NEW YORK, NY 10003
TEL. 212-558-5500                          FAX 212-344-5461
WWW.WEITZLUX.COM

April 30, 2012

**VIA HAND DELIVERY &**
**ELECTRONIC MAIL**

The Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
Daniel Patrick Moynihan
500 Pearl Street
New York, New York 10007-1312

Re:     MDL 1358 / MTBE – May 2, 2012 Status Conference

Dear Judge Scheindlin:

      Plaintiffs respectfully submit this reply letter in advance of the May 2, 2012 Status Conference.

**Defendant Agenda Item #1:  Delineation of the Tamcrest Trial Site**

      Plaintiffs provided defendants with a revised delineation of the Tamcrest Trial Site on Friday, April 27, 2012.  With respect to defendants' request for expedited responses to some future discovery defendants "may need to serve," plaintiffs submit that defendants' request for expedited responses to such discovery if it is ever served should wait until such time as there is actual discovery and a dispute on timing.  Evaluation of a discovery issue by the Court prior to such discovery even being propounded and when there is no actual dispute would be a waste of the Court's limited time during the May 2 status conference.

**Defendant Agenda Item ##2 & 4:  Reduction of Plaintiffs' Puerto Rico Trial Sites and Delineation of Remaining Puerto Rico Trial Sites**

      On April 27, 2012, plaintiffs advised defendants which three of the ten trial sites plaintiffs are dropping.  Thus, plaintiffs believe this issue has been resolved and should be removed from the agenda.

Honorable Shira A. Scheindlin
April 30, 2012
Page 2

Plaintiffs also produced trial site geographic delineations for the remaining seven trial sites that would be utilized for discovery management purposes (*i.e.,* to define the geographic area that may contain relevant information for discovery) on Friday, April 27, 2012. Accordingly, this issue should also be resolved.[1]

Nevertheless, defendants have taken issue with plaintiffs indicating that by producing such delineations, plaintiffs did not intend "to replace or restrict expert reports that will more fully address impacts of releases …."[2]   Here, plaintiffs merely are reserving their right to have their testifying hydrogeologic experts ultimately define the area of contaminated groundwater for damages purposes. At this time, plaintiffs' non-testifying consultants have attempted to draw the sites' geographic boundaries generously so that discovery would cover the entire scope of groundwater contamination. Thus, plaintiffs' reservation as to their testifying experts is unlikely to become an issue.

**Defendant Agenda Item #3:  Puerto Rico's Discovery Requests Regarding Non-Test Sites and Defendants' Request for Dismissal and Protective Order**

By selectively citing to portions of the April 12, 2012 argument before the Court, defendants not only unfairly attack plaintiffs, but they completely ignore the Court's decision to not discuss the issue of non-test sites at the upcoming May status conference:

> THE COURT:…With respect to the third issue, I need to reserve and hear more on the ones that were never tested because it may turn out that some of them have been tested, but the Rule 34 requests go out to the group of defendants who may find out some of those sites now fall into the tested group. It doesn't matter who did it, but somebody did it. When they get these administrative subpoenas out, we may learn that some of these are tested. It's too early to say dismiss with prejudice if they are all gone, because some of them have been tested. They are not nontest sites after all. I know they weren't tested by the commonwealth, but they may have been tested either by these defendants or other property owners. So I have to reserve on that for a while, and that's about all I can do today.

---

[1]      In fact, on Wednesday, April 25, prior to defendants submitting their letter to the Court that evening, plaintiffs informed defendants that plaintiffs would be producing such delineations in the same manner as in the New Jersey case. *See* Letter from Michael Axline to Stephen Riccardulli, dated April 25, 2012, attached as Exhibit A.

[2]      *See* Letter from Michael Axline to Stephen Riccardulli, dated April 25, 2012. The situation here is not too dissimilar to the situation in New Jersey, in which the Court cautioned defendants with respect to the lack of finality of plaintiffs' identification of private wells near trial sites. There, the Court said to defendants with respect to plaintiffs informing defendants about private wells, "just realize that it may be far from final." *See* Transcript of October 11, 2010, at 23:5, attached hereto as Exhibit B.

Honorable Shira A. Scheindlin
April 30, 2012
Page 3

        MR. RICCARDULLI:  Your Honor, can we pick this up again on May 3
        at the status conference?

        THE COURT:  I don't want to go over the same ground. It's not a matter
        of running out of time.  I think I made a ruling.

        *                          *                          *

        THE COURT:  We will see what we get in 60 days.

Transcript of April 12, 2012 Hearing, at 45:21-46:13 and 47:9, attached hereto as Exhibit C.  The
Court was clear.  Plaintiffs would have 60 days before this issue would be re-visited.
Nonetheless, defendants have put this issue front and center for this status conference by asking
the Court to dismiss the 400 non-test sites from this matter with prejudice.

     Furthermore, the defendants seek a protective order from the very discovery plaintiffs
served to seek information from defendants so that plaintiffs would be in a position to present an
update to the Court within 60 days.  Defendants argue that the discovery was served later than
Mr. Dema indicated it would be served.  While the discovery did not go out the week following
the hearing, it was served on Monday, April 23, the Monday following that week.[3]  With respect
to the administrative subpoenas, Mr. Dema did state that EQB told him "the administrative order
is going out next week."  However, as with most regulatory agencies, it is necessary to get
numerous approvals to send out administrative orders and such approvals have taken longer than
EQB initially anticipated.  In addition, there are 88 different responsible parties for the 268 non-
test sites identified.  Counsel has been told that the orders are being processed so that the
information sought will be provided to EQB on time to report back to the Court within the
Court's 60 day time frame.

     Because the Court expressly told Mr. Riccardulli not to go "over the same ground" and
indicated it would wait 60 days, plaintiffs suggest that the proper time to address the non-test site
issue is after the 60 days.  With respect to defendants' request for a protective order, defendants
have fabricated a framework for discovery that is inconsistent with discovery under the federal
rules and the procedures of this Court.

---

[3] The Court interpreted Mr. Dema's commitment to serving Rule 34 requests as a commitment to
serve requests the following week.  *See* Transcript of April 12, 2012 Hearing, at 46:19 ("Mr.
Dema, you said you were going to serve the Rule 34 requests next week?").

Honorable Shira A. Scheindlin
April 30, 2012
Page 4

When defendants took issue with plaintiffs' discovery requests, the first thing defendants should have done was approach plaintiffs to meet and confer regarding defendants' objections.[4] However, defendants never approached plaintiffs. Instead, defendants approached the Court directly seeking a protective order. Plaintiffs are perplexed by the tone of defendants' objections because defendants presumably have been under an obligation to make available or advise plaintiffs of the existence of testing results for MTBE in waters of the Commonwealth pursuant to Fed.R.Civ.P. 26.

With respect to the scope of the discovery, defendants argue that the discovery seeks more than was "approved" by the Court. However, discovery need not be approved before being served. Defendants do not seek permission to serve discovery on plaintiffs, and plaintiffs should not have to seek permission to serve discovery on defendants. Plaintiffs limited their discovery requests to seek information reasonably calculated to lead to the discovery of admissible evidence related to MTBE contamination at the non-test sites defendants have owned, operated, or leased and where they have owned the underground storage tank(s). Plaintiffs believe the discovery is appropriate to understand the full scope of potential evidence regarding MTBE releases at these non-test sites. To the extent defendants found the discovery objectionable, the proper course would have been to meet and confer with plaintiffs.[5]

For the foregoing reasons, defendants' requests to dismiss the non-test sites and for a protective order should be denied. Instead, plaintiffs ask that the parties be ordered to meet and confer and that any remaining discovery dispute(s) be referred to Special Master Warner for expedited decision so that the discovery is timely answered and the plaintiffs can report results within the 60 day timeframe anticipated by the Court.[6]

---

[4]     Defendants object to discovery seeking site delineations, but the interrogatory to which defendants are referring was intended to seek the geographic boundaries of the non-test site properties. *See* Defendants' Pre-Conference Letter, Exhibit D, Interrogatory No. 5. That is why Interrogatory No. 12 seeks information regarding monitoring wells "within the geographic boundaries and outside the geographic boundaries. *See id.* at Interrogatory No. 12. The intent was to identify on-site and off-site testing wells. With respect to the 22 sites that defendants question, plaintiffs either produced or received from defendants supplemental productions regarding sites. Because defendants have either produced or received files regarding these 22 sites throughout the course of discovery, defendants' characterization of such sites as an expansion of the "universe of sites at issue" is inaccurate. Like defendants, plaintiffs' investigation for responsive discovery is ongoing.

[5]     Without citing to any record or order, defendants argue that plaintiffs promised limited discovery and that plaintiffs were told to conduct limited discovery. While plaintiffs did indicate they would serve Rule 34 requests regarding testing, plaintiffs did not state that they would limit their future discovery nor did the Court order that plaintiffs' future discovery be limited.

[6]     Plaintiffs note that allowing time for plaintiffs to determine whether MTBE has been tested for and if MTBE is present at non-test sites will not interfere with the Court advancing the case to trial with respect to the trial sites. In fact, due to defendants' refusal to select additional trial sites to date,

Honorable Shira A. Scheindlin
April 30, 2012
Page 5

**Defendant Agenda Item #5**: **Oral Argument on New Jersey Motions**

Plaintiffs we will be prepared, if the Court intends to hold oral argument.

**Defendant Agenda Item #6**: **Defendants' Discovery Requests to NJDEP Plaintiffs**

The parties have met and conferred on this issue, and resolved the dispute.

**Defendant Agenda Item #7**: **Scheduling of 30(b)(6) Depositions**

After insisting for months on an unreasonably expansive scope for the Trial Site 30(b)(6) depositions, defendants, as a result of the Court's direction and upon the order of Special Master Warner, finally narrowed the scope of these depositions at 6:08 p.m. on April 17, by identifying the Trial Sites for which no "Nearby Site" testimony would be sought. Ignoring the fact the delay prior to April 17 was solely caused by defendants' improper efforts to enlarge discovery beyond the manageable scope desired by the Court, defendants now complain that plaintiffs have not scheduled these 30(b)(6) depositions within the succeeding eight days. Defendants also fail to inform the Court that of the ten Trial Sites listed in their April 17 email, Deposition Notices had not been issued for three of the sites for which they complain that no deposition has been scheduled. Given the nature of a 30(b)(6) deposition in general, and the large volume of and varied nature of the Designated Issues for these depositions in particular, scheduling such depositions within that brief time frame has not been possible.

Why has this not been possible? For these Trial Site depositions, plaintiffs must first ascertain which of the NJDEP case team members or other NJDEP personnel possess the requisite knowledge to address the issues to be addressed in the depositions. This usually involves identifying more than one witness for any particular site. Immediately upon receiving defendants' list on April 17, plaintiffs began the task of identifying witnesses, determining their availability, and preparing them for the deposition. We anticipate that during the week of April 30, we will begin providing dates for these depositions and that the process will move forward in an expeditious manner. The dates we propose to defendants will take into account the time needed by the witnesses and counsel to prepare for what is likely to be two days of deposition testimony as to each Trial Site.

---

the Court has allowed the defendants 60 days to select additional trial sites. This additional time is more likely to delay trial of the trial sites.

Honorable Shira A. Scheindlin
April 30, 2012
Page 6

Respectfully submitted

Weitz & Luxenberg, P.C.

By: _____
William A. Walsh (WW-3301)
*Plaintiffs' Liaison Counsel*
700 Broadway
New York, New York  10003
(212) 558-5836

cc:    All Counsel of Record (electronic mail)

# Exhibit A



Law Offices of
# MILLER, AXLINE & SAWYER
A Professional Corporation

DUANE C. MILLER                                       TRACEY L. O'REILLY
MICHAEL AXLINE                                        EVAN EICKMEYER
A. CURTIS SAWYER, JR.                                 DANIEL BOONE
                                                      JUSTIN MASSEY
                                                      BRIAN D. SHANNON
                                                      DONALD MOONEY, of Counsel

April 25, 2012

**VIA EMAIL**

Stephen J. Riccardulli, Esq.
McDermott Will & Emery
340 Madison Avene
New York, New York 10173-1922

> Re:   *In Re: Methyl Tertiary Butyl Ether ("MTBE")*, MDL 1358
>       *Commonwealth of Puerto Rico, et al., v. Shell Oil Company, et al.,*
>       S.D.N.Y. Case No. 04-cv-10470
>       **Demand for Production of Trial Site Delineations**

Dear Steve:

This letter responds to yours of April 20, 2012. As you know, pursuant to Judge Scheindlin's direction at the April 12, 2012, hearing, plaintiffs have been determining which three sites to drop from their list of trial sites. I just sent Mike Dillon an email informing him that we will let defendants know no later than this Friday, April 27, which three sites will be dropped. Since we will then know which seven sites remain, we will provide defendants with site delineations for those seven sites with the same understanding that such delineations were provided in the New Jersey case - that these delineations are preliminary in nature and are not intended to replace or restrict expert reports that will more fully address impacts of releases, and that plaintiffs do not, by providing these delineations, waive any attorney work product claims with respect to the consulting experts who we asked to prepare the delineations.

Sincerely,

Michael Axline
Counsel for Plaintiffs

cc: All Counsel via LNF&S

1050 Fulton Avenue, Suite 100, Sacramento, CA  95825-4225;  Telephone:  (916) 488-6688
Facsimile:  (916) 488-4288;  Email: toxictorts@toxictorts.org

# Exhibit B

```
0001
 1
 2
 3   IN RE:  MTBE PRODUCTS              :
     LIABILITY LITIGATION              :
 4                                     :
     MASTER FILE NO. 1:00-1898         :
 5   MDL 1358 (SAS) M21-88             :
     _____
 6   NJDEP v. ATLANTIC RICHFIELD CO., ET AL
     CASE NO. 08-CV-00312
 7
 8
 9
10                  TELEPHONIC HEARING
                  3:30 p.m. - 4:10 p.m.
11               Friday, October 11, 2010
12
13
14   BEFORE:
15   JUDGE SHIRA A. SCHEINDLIN
16
17
18
19   Reported by:
20   CATHERINE L. PFLUEGER, COURT REPORTER
21
22
23
24
25
0002
 1   APPEARANCES:
 2   On behalf of the Plaintiffs:
 3   Michael Axline, Esquire
     Miller, Axline & Sawyer, P.C.
 4   1050 Fulton Avenue, Suite 100
     Sacramento, CA  95825-4225
 5   Telephone:  (916) 488-6688
     maxline@toxictorts.org
 6
     On behalf of the Plaintiffs:
 7
     Scott E. Kauff, Esquire
 8   Law Offices of John K. Dema, P.C.
     11300 Rockville Pike, Suite 112
```

```
 9   Rockville, Maryland  20852
     (301) 881-5900
10   skauff@lojkd.com
11
     On behalf of the Plaintiffs:
12
     Leonard Z. Kaufmann, Esquire
13   Cohn Lifland Pearlman Herrmann & Knopf, LLP
     Park 80 West - Plaza One
14   250 Pehle Avenue, Suite 401
     Saddle Brook, New Jersey  07663
15   (201) 845-9600
     LZK@njlawfirm.com
16
17   On behalf of the Plaintiffs:
18   Thomas P. Gressette, Jr., Esquire
     Richardson, Patrick, Westbrook & Brickman, LLC
19   1037 Chuck Dawley Boulevard, Building A
     Mount Pleasant, South Carolina 29464
20   (843) 727-6595
     tgressette@pwb.com
21
22
23
24
25
0003
 1   APPEARANCES CONTINUED:
 2   On behalf of Defendant, ExxonMobil:
 3   Stephen J. Riccardulli, Esquire
     Michael Dillon, Esquire
 4   McDermott Will & Emery, LLP
     340 Madison Avenue
 5   New York, New York  10173
     (212) 547-5631
 6   sriccardulli@mwe.com
 7
     On behalf of Defendant, Shell:
 8
     Alec C. Zacaroli, Esquire
 9   Wallace King Domike & Reiskin, PLLC
     2900 K Street NW, Suite 500
10   Washington, DC.  20007
     (202) 965-6021
11   azacaroli@wallaceking.com
12
```

On behalf of Defendant, El Paso Corporation:

13

Dawn A. Ellison, Esquire

14    Howrey, LLP
      1299 Pennsylvania Avenue, NW

15    Washington, D.C.  20004
      (202) 383-6848

16    EllisonD@howrey.com

17

      On behalf of Defendant CITGO Petroleum Corporation:

18

      Pamela R. Hanebutt, Esquire

19    Eimer Stahl Klevorn & Solberg, LLP
      224 South Michigan Avenue, Suite 1100

20    Chicago, Illinois 60604
      (312) 660-7625

21    PHanebutt@EimerStahl.com

22

23

24

25

0004

 1    APPEARANCES CONTINUED:

 2    On behalf of Kinder Morgan Energy Partners and SFPP:

 3    Anthony A. Orlandi, Esquire
      Goodwin Procter, LLP

 4    Exchange Place
      55 State Street

 5    Boston, MA  02109
      (617) 570-1639

 6    aorlandi@goodwinprocter.com

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

0019
1        the list that the defendants have referred to,
2        the receptor sites on that list were public
3        water systems which then their subclasses would
4        be community or noncommunity systems.
5             JUDGE SCHEINDLIN:  Okay.  That is helpful.
6        So, Mr. Riccardulli, is it helpful for you
7        to know whether these 18 release sites impacted
8        these production wells as now defined and maybe
9        some that impacted none and some that impacted
10       just a few?
11            MR. RICCARDULLI:  Yes, Your Honor.  And I
12       think that was what the scope of our discovery
13       was to understand which other receptors or
14       wells they believed were at play or put at
15       issue by the 18 sites that they designated.
16            JUDGE SCHEINDLIN:  Yeah.  But my question
17       to you was, is it helpful if they identify
18       those production wells at this point as opposed
19       to the 18 private wells that may also be
20       impacted that will come down the road as more
21       of the damages phase because they're not sort
22       of multiple use.  You know, it's farmer Jones'
23       property.
24            So it's kind of a different kettle of fish
25       than these bigger production wells that serve
0020
1        the community, the municipality or whatever you
2        want to call it.
3             So if they were to identify the production
4        sites as now defined in a short period of time,
5        would that be of help?
6             MR. RICCARDULLI:  That would be a help,
7        but I don't think there's really a distinction
8        from our end in terms of what we need to do in
9        terms of taking discovery from these sites. --
10       Obviously, if there are difference in size --
11            JUDGE SCHEINDLIN:  Yeah, but that's down
12       the road.  In other words, on an immediate
13       basis, just to understand the picks, one would
14       think the production wells are really what's
15       important to know about if there were at each
16       of the 18 release sites.  Are there any?  Maybe
17       some have none, some have one or two.  I mean I
18       would have to think there's a lot fewer of
19       those than of the individual wells on people's

20        property on the road.
21             There may be a road with eight houses and
22        all eight are impacted.  That's sort of like,
23        in a way, who cares because one of them is the
24        same as the other seven pretty much.  Do you
25        know what I'm saying?  If there's seven houses
0021
1         on a rural road and all the wells are impacted,
2         I'd suspect that discovery is pretty much the
3         same whether it's one or eight; whereas, a
4         production well is in kind of a specific
5         location.  There's not seven more just like it
6         down the road.  It's more of an intense
7         discovery effort, I would think.
8              MR. RICCARDULLI:  And you're right in that
9         respect, Your Honor, but, I guess, the point,
10        if we know the identification now, though, of
11        the production wells as well as the private
12        wells, I don't see the, I guess, the need to
13        stagger if they already understand which wells
14        or at least contend that certain would be
15        implied recognizing, of course, that during
16        expert discovery, certain of those may fall out
17        and others may be added --
18             JUDGE SCHEINDLIN:  But that's my point,
19        Mr. Riccardulli.  I don't want you to scream
20        later if they tell you that there are seven
21        private wells and it turns out there's 47.  You
22        know, you're going to say, well, how could that
23        be.  I mean that's such a multiple.  And the
24        answer will be, that's what the expert analyzed
25        when he analyzed the neighborhood.
0022
1              But I wouldn't expect it to go from 7 to
2         47 in the production wells.  They're a
3         different kettle of fish.  They've got to be.
4         They serve the entire community.  I mean, I
5         can't see that it would change like that;
6         whereas, the private wells, you know, they know
7         a certain number now, but by the end of the
8         expert discovery phase, it could be different.
9         And I don't want the defendants to look back at
10        this transcript and say, you know, how
11        essentially, say, we thought it was 7, it's 49.
12        So I look at the residential ones differently.
13        I really do.

14          MR. RICCARDULLI:  Your Honor, my only
15    concern here, if we're going to wait for the
16    residential wells to be identified until after
17    expert discovery, we're forced --
18          JUDGE SCHEINDLIN:  I wasn't going to
19    suggest that.  My own leaning on this thing is
20    what they have now, they should tell you now,
21    but you do have to realize it's subject to
22    revision as the discovery process continues,
23    not so much with respect to the production
24    wells as now defined, but with respect to
25    residential wells.
0023
1          MR. RICCARDULLI:  I'm sorry.  I
2    misunderstood you, then, Your Honor.
3          JUDGE SCHEINDLIN:  Yeah, no.  I wasn't
4    saying they could hold it back if they have it.
5    But just realize that it may be far from final.
6          But I don't think that's as true of these
7    public wells.  Because, first of all, they're
8    serving the public, and if they're impacted,
9    somebody knows it already in the state.  And
10    there's got to be a far fewer of them and
11    they've got to be spaced more.
12          So getting back to Mr. Axline, now that
13    we've gotten this far.  Mr. Axline, I'm
14    inclined to say you have to identify the
15    alleged receptor sites that are impacted from
16    the 18 release sites you've suggested.
17          MR. AXLINE:  Understood, Your Honor.  And
18    if I could just review a basic principle to
19    make sure that there isn't another hearing
20    because of ambiguity in this hearing.
21          The defendants started their letter by
22    accusing us of picking more sites than we were
23    allowed.
24          JUDGE SCHEINDLIN:  Not really.  They just
25    said 18 could be, you know, 50 when you start
0024
1    including the receptor sites.
2          MR. AXLINE:  Right.  And we said 18
3    release sites in order to streamline and get
4    all defendants on board at the same time.
5          JUDGE SCHEINDLIN:  Well, we'll only know
6    if that's true when we see -- I at least as the
7    Court, will have a better sense of that when

Exhibit C

```
                                                           1
        C4CZMTB                    Motion
 1   UNITED STATES DISTRICT COURT
 1   SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 2
 3   COMMONWEALTH OF PUERTO RICO,
 3
 4                  Plaintiff,
 4
 5           v.                          07 CV 10470 (SAS)
 5
 6   SHELL OIL CO., et al.,
 6
 7                  Defendants.
 7
 8   ------------------------------x
 8
 9                                   April 12, 2012
 9                                   1:00 p.m.
10
10   Before:
11
11                   HON. SHIRA A. SCHEINDLIN,
12
12                                   District Judge
13
13                      APPEARANCES
14
14   MILLER, AXLINE & SAWYER
15        Attorneys for Plaintiff
15   BY:  MICHAEL AXLINE
16
16   JOHN K. DEMA
17        Attorney for Plaintiff
17
18   McDERMOTT WILL & EMERY LLP
18        Attorneys for Exxon Mobil Corporation
19   BY:  JAMES PARDO
19        STEPHEN RICCARDULLI
20
20   KING & SPALDING LLP
21        Attorneys for Defendant Chevron, USA, Inc.
21   BY:  JAMES J. MAHER
22
22   BLANK ROME LLP
23        Attorneys for Defendant Lyondell
23   BY:  KEVIN J. BRUNO
24
25
                  SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
```

45

C4CMMTBC2

1    think there has to be some effort at curing the disparity, but
2    I don't think you really should be able to say, we can only
3    find three.  It's a matter of choosing.  You don't want to
4    choose from the 217 because maybe they are not the best, best
5    cases for you, but there are a lot of issues at an MTBE trial.
6    You can win on a whole lot of issues.  It doesn't have to be
7    the best site or the worst case.
8            Maybe the thing to do is to make another effort of
9    letting you pick more and to cut them back to seven and be done
10   with the problem.
11           MR. RICCARDULLI:  Your Honor, that sort of ignores the
12   fact that defendants wasted a year of discovery on these sites.
13           THE COURT:  Yes.  There are other sanctions that could
14   be considered for that.  We are doing one thing at a time.
15           What I'm prepared to do today, because I have to wrap
16   up, so the first one is we are dismissing nondetect sites.  The
17   second is, I will have it cut back to seven with a further
18   60-day opportunity for the defendants to add.  It's their
19   choice.  If they don't add any, it will be seven and three.  If
20   they do add some, they can add up to seven, and that's that.
21           With respect to the third issue, I need to reserve and
22   hear more on the ones that were never tested because it may
23   turn out that some of them have been tested, but the Rule 34
24   requests go out to the group of defendants who may find out
25   some of those sites now fall into the tested group.  It doesn't

46

C4CMMTBC2
1   matter who did it, but somebody did it.  When they get these
2   administrative subpoenas out, we may learn that some of these
3   are tested.  It's too early to say dismiss with prejudice if
4   they are all gone, because some of them have been tested.  They
5   are not nontest sites after all.  I know they weren't tested by
6   the commonwealth, but they may have been tested either by these
7   defendants or other property owners.  So I have to reserve on
8   that for a while, and that's about all I can do today.
9              MR. RICCARDULLI:  Your Honor, can we pick this up
10  again on May 3 at the status conference?
11             THE COURT:  I don't want to go over the same ground.
12  It's not a matter of running out of time.  I think I made a
13  ruling.
14             MR. RICCARDULLI:  My only point that hasn't been
15  addressed here, if they are going to take some administrative
16  action at this point, there needs to be a window by which it
17  closes.  That was sort of --
18             THE COURT:  Mr. Dema, you said you were going to serve
19  your Rule 34 requests next week?  When are you serving these
20  administrative subpoenas?
21             MR. DEMA:  The EQB tells me that the administrative
22  order is going out next week.
23             THE COURT:  What's the time period for people that
24  receive it to respond?  In the order that's going out next week
25  does it say, you must respond in 30 days, you must respond in
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

47

C4CMMTBC2

1    60 days?  What does it say?
2             MR. DEMA:  We had three meet and confers with the
3    defendants.
4             THE COURT:  It has nothing to do with the defendants.
5    You only have the other parties.
6             MR. DEMA:  60 days.
7             THE COURT:  You're told 60 days.
8             MR. DEMA:  Yes.
9             THE COURT:  We will see what we get in 60 days.
10                              o0o
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25