McDermott
Will&Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Peter J. Sacripanti
Attorney at Law
psacripanti@mwe.com
212.547.5583

April 30, 2012

**BY ELECTRONIC MAIL AND HAND DELIVERY**

The Honorable Shira A. Scheindlin
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1620
New York, New York 10007-1312

Re: Master File C.A. No. 1:00-1898 (SAS), M21-88, MDL No. 1358
*Defendants' Pre-Conference Reply Letter for May 2, 2012 Status Conference*

Dear Judge Scheindlin:

Defendants respectfully submit this reply letter for the May 2, 2012 status conference.

## PLAINTIFFS' AGENDA ITEMS

### I. Role of Liaison Counsel in Document Production Format Agreement

To the extent that Plaintiffs suggest that Defendants' Liaison Counsel failed to communicate Plaintiffs' concerns regarding the format of certain productions, Plaintiffs are incorrect. Following both our calls with counsel for Plaintiffs, and after receiving Mr. Dias' letter, Defendants' Liaison Counsel communicated these issues to Defendants.

Plaintiffs suggest that this issue relates to a number of Defendants; however, Plaintiffs identify only a single Defendant – HOVENSA – to which their concern applies. As such, the following is HOVENSA's response to Plaintiffs' preconference letter:

Plaintiffs are incorrect when they assert that all parties have agreed to a document production protocol in the Puerto Rico case. None exists. Rather, Plaintiffs, in their discovery requests, specified their preferred format for the production of documents, a preference that exceeds Plaintiffs' authority under Rule 34. Plaintiffs demanded that Defendants incur significant cost and time in converting hard copy documents into a specific, costly electronic format. While Rule 34 allows a party to request a specific format for ESI, the Rule makes no similar provision for hard copy documents. Pursuant to its rights under Rule 34, HOVENSA served a specific, timely objection to Plaintiffs' instruction. HOVENSA did, however, attempt to minimize the inconvenience to Plaintiffs by converting the requested hard copy documents

U.S. practice conducted through McDermott Will & Emery LLP.

340 Madison Avenue New York New York 10173 Telephone: 212.547.5400 Facsimile: 212.547.5444 www.mwe.com

into readily-accessible and usable pdf files for production, and produced other responsive pdf files. In response, Plaintiffs demanded that HOVENSA reproduce its documents in what Plaintiffs claimed was the "mutually agreed upon format." Yet, when pressed by HOVENSA for a document production protocol, Plaintiffs could not point to such an agreement between the parties.

Finally, HOVENSA suggests that the Court defer this agenda item until the next status conference. In the meantime, the parties can meet and confer about a protocol to govern document production in the case that can be executed by Liaison Counsel on behalf of all parties.

## II. Mutual Exchange of ESI Search Phrases to Reduce Disputes as to Effective Searches

While the parties in the Puerto Rico matter did meet and confer on February 15th, Defendants did not demand that Plaintiffs produce the search terms they were utilizing to collect and process ESI. Instead, Defendants simply suggested that if Plaintiffs wanted to preview the terms to Defendants – as Plaintiffs did in the NJDEP matter – Defendants were willing to meet-and-confer regarding the sufficiency of those terms. Thereafter Plaintiffs suggested that they would do, so but believed the exchange should be mutual.[1]

The problem with Plaintiffs' proposal is that it fails to recognize the different status of the parties' respective ESI productions. Indeed, as the Court is aware, Plaintiffs did not begin to collect ESI until the fall of 2011, and then only for ESI that related to Defendants' "focus sites." At the time of the meet and confer in February, Plaintiffs were still finalizing their search terms for all other of Defendants' outstanding discovery requests, including non-site-specific discovery. Defendants offered to preview Plaintiffs' search terms to avoid disputes regarding the sufficiency of Plaintiffs' collection and production of this ESI. Plaintiffs' suggested mutual exchange would not have the same benefit.

Indeed, by the time of the meet-and-confer, Defendants had already responded to Plaintiffs' discovery requests and produced the responsive ESI. Plaintiffs suggest that the mutual exchange will "reduce disputes." However, Plaintiffs are already in possession of Defendants' various ESI productions and, to date, have not identified a single deficiency with respect to any Defendant's production. Plaintiffs' suggestion might make sense if, for example, Plaintiffs identified an alleged failure by a specific Defendant to produce certain ESI, but only then would a joint review of that Defendant's search terms be productive. To require all Defendants to exchange their search terms – after responding sufficiently – makes little sense, and appears to be a fishing expedition aimed at generating disputes, not a method for reducing them.

---

[1] During the meet and confer, Plaintiffs stated that their suggested mutual exchange was limited to those terms related to Defendants' Puerto Rico-specific ESI productions, and not Defendants' prior general liability productions. Defendants understand that limitation still to apply.

Lastly, Plaintiffs' attempts to impose additional obligations on Defendants' Liaison Counsel are without merit. Notwithstanding Plaintiffs' request, Defendants' Liaison Counsel is not required to collect discovery from the various Defendants for Plaintiffs. Instead, as we have done for more than a decade, Defendants' Liaison Counsel will continue to communicate Plaintiffs' requests to the various Defendants. However, it is for each Defendant to separately respond and provide for the information to Plaintiffs, as appropriate. This is consistent with the obligations imposed on Liaison Counsel (both for Defendants and Plaintiffs) by the Court and is consistent with the role Plaintiffs' and Defendants' Liaison Counsel has fulfilled over the years.

## DEFENDANTS' AGENDA ITEMS

## II. Puerto Rico Plaintiff's Failure to Delineate its Trial Sites

In our opening letter, Defendants reported (incorrectly) that Plaintiffs had requested a meet and confer to discuss an extension of time to produce delineations for their trial sites. There appears to have been a misunderstanding between the parties. *See* Email Chain between M. Axline and S. Riccardulli (Ex. A). Plaintiffs produced delineations for their remaining 7 trial sites on Friday, April 27, 2012. The delineations, however, fail to meet the requirements set by the Court.

Plaintiffs produced "preliminary" delineations, reserving the right for its experts to "amend or modify" the delineations. *See* Letter from M. Axline to S. Riccardulli (April 27, 2012) (Ex. B). However, the Court has made clear that the delineations were not to be "preliminary" in nature. Indeed, recognizing that the delineations would define the Plaintiffs' claims and set the boundaries for the parties' discovery efforts, the Court explained that the delineations were to be final and that Plaintiffs would "live with" the delineations that are drawn. Further, the Court reasoned that the delineations were not to be "moving targets" that would either "expand" or "shrink," as this would be unfair to Defendants. *See* Transcript from June 2011 Status Conference, pp. 47-52. Indeed, the New Jersey litigation is testament to the fact that such a "moving target" can only create more problems, and slow effective discovery efforts.

At bottom, Plaintiffs had more than enough time to prepare delineations that satisfied the standards set by the Court. Defendants request that the Court deem Plaintiffs' delineations as final and binding on Plaintiffs.

As always, we appreciate your Honor's attention to this matter and ask that this letter be docketed by the Clerk's Office so that it is part of the Court's file.

Respectfully submitted,

*Peter John Sacripanti*

The Honorable Shira A. Scheindlin
April 30, 2012
Page 4

Peter John Sacripanti

cc:     All Counsel By LNFS, Service on Plaintiffs' Liaison Counsel

DM_US 33847602-1.037771.0188

# EXHIBIT A

**Sneed, Sam**

**From:** Dillon, Michael
**Sent:** Monday, April 30, 2012 5:17 PM
**To:** Sneed, Sam
**Subject:** FW: MDL 1358: PR Site Delineations

-----Original Message-----
From: Riccardulli, Stephen
Sent: Friday, April 27, 2012 4:16 PM
To: 'maxline@toxictorts.org'
Cc: Dillon, Michael; 'npshort@lojkd.com'; 'skauff@lojkd.com'; 'jdema@lojkd.com'
Subject: Re: MDL 1358: PR Site Delineations

Mike,

I find it hard to believe you don't recall the agreement we reached with respect to the timing of Plaintiff's production of site delineations. Indeed, it was structured based on the same schedule we agreed to in the New Jersey matter - i.e., that Plaintiff would not have to produce site delineations for its designated discovery sites, but would do so for its trial sites once designated. Per that agreement, the delineations were to come with your April 9th responses to Defendants' focus site discovery requests. That was the agreement referenced in my April 20th letter. In your voicemail you stated you were calling to see if we "could work something out." By that I had assumed you would propose a future date (i.e., an extension to the April 9th agreed to deadline) by which Plaintiffs would produce the outstanding delineations.

In your April 25th letter, you state that Plaintiff will produce site delineations, but it's unclear when Plaintiff plans to produce the delineations. Please let us know the date by which Plaintiff will produce the delineations.

Further, Defendants disagree with your characterization of the nature of the delineations. Defendants do not agree that they are to be "preliminary." Nor should they be hypothetical. Instead, as the Court has made clear, the delineations are to be final and that the Plaintiff will "live with" the delineation that is drawn. The delineations are not to be "moving targets" that either "expand" or "shrink." To do so would be unfair to Defendants, particularly because Defendants will rely on them for purposes of conducting fact and expert discovery.

Regards,

Stephen J. Riccardulli
McDermott Will & Emery LLP
340 Madison Avenue
New York, New York 10173-1922
tel (212) 547 - 5579
fax (212) 547 - 5444

67

----- Original Message -----

From: Mike Axline [mailto:maxline@toxictorts.org]
Sent: Thursday, April 26, 2012 10:09 AM
To: Riccardulli, Stephen
Cc: Dillon, Michael; 'Nathan Short' <npshort@lojkd.com>; 'Scott Kauff' <skauff@lojkd.com>; 'Jack Dema' <jdema@lojkd.com>
Subject: RE: MDL 1358: PR Site Delineations

Steve

Don't know if you saw the letter I emailed to you yesterday but we will be producing delineations for our trial sites, and letting you know which trial sites we are dropping, by Friday (tomorrow). I'm not sure what agreement you are referring to, and I did not suggest that we would be requesting an extension of time. I assume that tomorrow is acceptable to defendants.

Mike

Miller, Axline & Sawyer / phone (916) 488-6688 / fax (916) 488-4288 This private communication may be confidential or privileged. If you are not the intended recipient, any disclosure, distribution, or use of information herein or attached is prohibited.

-----Original Message-----
From: Riccardulli, Stephen [mailto:sriccardulli@mwe.com]
Sent: Thursday, April 26, 2012 7:57 AM
To: 'maxline@toxictorts.org'
Cc: Dillon, Michael
Subject: MDL 1358: PR Site Delineations

Mike,

I am out of the country but received your voice message. Defendants thought we had worked out an agreement regarding the timing of Plaintiff's production of the delineations for Plaintiff's trial sites. From your message, it sounds like Plaintiff will request an additional extension of time to produce this discovery. In light of Plaintiff not honoring our last agreement regarding this discovery, Defendants are reluctant to negotiate yet another agreement and believe the next deadline must be pursuant to court order. That said, if Plaintiffs have a specific proposal, I ask that you send it by email so that I can send to our group for consideration.

Thanks.

Stephen J. Riccardulli
McDermott Will & Emery LLP
340 Madison Avenue
New York, New York 10173-1922
tel (212) 547 - 5579
fax (212) 547 - 5444

67

****************************************************************************
**************************************
IRS Circular 230 Disclosure: To comply with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained herein (including any attachments), unless specifically stated otherwise, is not

intended or written to be used, and cannot be used, for the purposes of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter herein.

---

This message is a PRIVILEGED AND CONFIDENTIAL communication. This message and all attachments are a private communication sent by a law firm and may be confidential or protected by privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it from your system.
Thank you.
*****************************************************************************
****************************************

Please visit http://www.mwe.com/ for more information about our Firm.

# EXHIBIT B

Law Offices of
**MILLER, AXLINE & SAWYER**
A Professional Corporation

DUANE C. MILLER
MICHAEL AXLINE
A. CURTIS SAWYER, JR.

TRACEY L. O'REILLY
EVAN EICKMEYER
DANIEL BOONE
JUSTIN MASSEY
BRIAN D. SHANNON
DONALD MOONEY, of Counsel

April 27, 2012

VIA E-Mail and LNF&S

Stephen J. Riccardulli, Esq.
McDermott, Will & Emery
340 Madison Avenue
New York, NY 10173-1922

Re: In Re: Methyl Tertiary Butyl Ether Products (MDL 1358)
*Commonwealth of Puerto Rico, et al. v. Shell Oil Co., et al.*
**Plaintiffs Trial Sites Reduced to Seven and Plaintiffs Trial Site Delineations**

Dear Steve:

This letter responds to Judge Scheindlin's April 12, 2012 order for Plaintiffs to reduce its trial sites from ten to seven. Per the order Plaintiffs drop the following trial sites:

| Trial Site # | EQB Site ID | Station Name |
|---|---|---|
| 2 | 86-0679 | Shell 804061 |
| 7 | 86-1339 | Esso SC-376 |
| 8 | 86-1373 | Esso 2P-448 |

In addition, please find the site delineations for Plaintiff's seven trial sites, attached hereto as Attachment A.

The delineations are preliminary and are being provided without waiver of the attorney

---

work product privilege with respect to consulting experts, and without prejudice to the rights of the Commonwealth's testifying experts to amend or modify the delineations upon completion of their analysis.

Very truly yours,

Michael Axline
Counsel for the Commonwealth of Puerto Rico

MA/ku

Encls.

cc: All counsel via LNFS with attachment
Michael Dillon, Esq., via E-Mail with attachment

# Attachment A

Confidential
Attorney Work Product

**Plaintiff Trial Site: 86-0948**
**Gas Station**
**SHELL S/S #003042**

P Public Supply Well

Potential Receptor Area within 1 Mile of Site

Feet
0 1,500 3,000

C Commercial Well

H Domestic Well

Caguas

Note: Basis for evaluation :USGS water level data for Puerto Rico (http://waterdata.usgs.gov), Atlas of Ground-Water Resources in Puerto Rico and The Virgin Islands (1996), US Geological Survey 7.5' Topographical Map Series, National Hydrologic Dataset, Aerial Imagery, Local Water Level Maps.

Confidential
Attorney Work Product

**Plaintiff Trial Site: 86-1095**
**Gas Station**
**ESSO S/S CO-247**

N
10
9
8
7
P
86-1095
P Public Supply Well
Potential Receptor Area within 1 Mile of Site
C Commercial Well
H Domestic Well
Feet
0
1,500
3,000
Juncos

Note: Basis for evaluation :USGS water level data for Puerto Rico (http://waterdata.usgs.gov), Atlas of Ground-Water Resources in Puerto Rico and The Virgin Islands (1996), US Geological Survey 7.5' Topographical Map Series, National Hydrologic Dataset, Aerial Imagery, Local Water Level Maps.

Confidential
Attorney Work Product

**Plaintiff Trial Site: 86-1232**
**Gas Station**
**ESSO S/S CO-242**

*P* Public Supply Well — Potential Receptor Area within 1 Mile of Site

*C* Commercial Well

*H* Domestic Well

Feet
0 1,500 3,000

Cayey

Note: Basis for evaluation :USGS water level data for Puerto Rico (http://waterdata.usgs.gov), Atlas of Ground-Water Resources in Puerto Rico and The Virgin Islands (1996), US Geological Survey 7.5' Topographical Map Series, National Hydrologic Dataset, Aerial Imagery, Local Water Level Maps.

Confidential
Attorney Work Product

**Plaintiff Trial Site: 91-0067**
**Gas Station**
**TOTAL 1012**

*P* Public Supply Well

*C* Commercial Well

*H* Domestic Well

Potential Receptor Area within 1 Mile of Site

Feet
0 1,500 3,000

Note: Basis for evaluation :USGS water level data for Puerto Rico (http://waterdata.usgs.gov), Atlas of Ground-Water Resources in Puerto Rico and The Virgin Islands (1996), US Geological Survey 7.5' Topographical Map Series, National Hydrologic Dataset, Aerial Imagery, Local Water Level Maps.

San Juan

Confidential
Attorney Work Product

**Plaintiff Trial Site: 86-1825**
**Gas Station**
**CONSTANCIA S/S #800**

P Public Supply Well

Potential Receptor Area within 1 Mile of Site

C Commercial Well

H Domestic Well

Feet
0 1,500 3,000

Ponce

Note: Basis for evaluation :USGS water level data for Puerto Rico (http://waterdata.usgs.gov), Atlas of Ground-Water Resources In Puerto Rico and The Virgin Islands (1996), US Geological Survey 7.5' Topographical Map Series, National Hydrologic Dataset, Aerial Imagery, Local Water Level Maps.

Confidential
Attorney Work Product

**Plaintiff Trial Site: CPPRC
Petroleum Refinery
Caribbean Petroleum Corporation Refinery**

N
35
36
34
33
32
31
30
29
28
CPPRC
P Public Supply Well
C Commercial Well
H Domestic Well
Potential Receptor Area within 1 Mile of Site
Area of Precipitation Return
0
1,500
3,000
Feet
Guayama
Note: Basis for evaluation: USGS water level data for Puerto Rico (http://waterdata.usgs.gov),
Atlas of Ground-Water Resources in Puerto Rico and The Virgin Islands (1996),
US Geological Survey 7.5' Topographical Map Series, National Hydrologic Dataset,
Aerial Imagery, Local Water Level Maps.



Confidential
Attorney Work Product

**Plaintiff Trial Site: 86-1075**
**Gas Station**
**ESSO S/S CO-364**

P Public Supply Well
C Commercial Well
H Domestic Well

Potential Receptor Area within 1 Mile of Site

Feet
0 1,500 3,000

Ponce

Note: Basis for evaluation :USGS water level data for Puerto Rico (http://waterdata.usgs.gov), Atlas of Ground-Water Resources in Puerto Rico and The Virgin Islands (1996), US Geological Survey 7.5' Topographical Map Series, National Hydrologic Dataset, Aerial Imagery, Local Water Level Maps.