C671mtb1

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    IN RE:  METHYL TERTIARY BUTYL        MDL 1358
     ETHER ("MTBE") PRODUCTS              00-CV-1898 (SAS)
4    LIABILITY LITIGATION                 07-CV-10470(SAS)
                                          08-CV-312  (SAS)
5    ------------------------------x

6                                         New York, N.Y.
                                          June 7, 2012
7                                         4:40 p.m.

8    Before:

9                    HON. SHIRA A. SCHEINDLIN,

10                                        District Judge

11                        APPEARANCES

12   WEITZ & LUXENBERG
          Attorneys for Plaintiff
13   BY:  WILLIAM A. WALSH, ESQ.

14   COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP
          Attorneys for New Jersey Plaintiffs
15   BY:  LEONARD Z. KAUFMANN, ESQ.

16   LAW OFFICES OF JOHN K. DEMA, P.C.
          Attorneys for Puerto Rico and New Jersey Plaintiffs
17   BY:  JOHN K. DEMA, ESQ.

18   BERGER & MONTAGUE, P.C.
          Attorneys for Plaintiff
19   BY:  TYLER E. WREN, ESQ.

20

21

22

23

24

25

C671mtb1

```
1                              APPEARANCES
                              (Continued)
2

3    McDERMOTT WILL & EMERY LLP
          Attorneys for Defendant Exxon Mobil Corporation
4         and Liaison Counsel
     BY:  JAMES A. PARDO, ESQ.
5         LISA A. GERSON, ESQ.

6    SEDGWICK LLP
          Attorneys for Defendant
7    BY:  RICHARD E. WALLACE, JR., ESQ.

8    BAKER BOTTS LLP
          Attorneys for Defendants Amerada Hess, Marathon, HOVIC,
9         Hovensa
     BY:  STEVEN L. LEIFER, ESQ.
10

11   GREENBERG TRAURIG LLP
          Attorneys for Defendants
     BY:  BRENT ALLEN, ESQ.
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

C671mtb1

```
 1              (In open court)

 2              THE COURT:  Good afternoon, Mr. Walsh.

 3              MR. WALSH:  Good afternoon, your Honor.

 4              THE COURT:  Mr. Kaufmann.

 5              MR. KAUFMANN:  Good afternoon, your Honor.

 6              THE COURT:  Mr. Dema.

 7              MR. DEMA:  Good afternoon, your Honor.

 8              THE COURT:  Mr. Wren.

 9              MR. WREN:  Good afternoon, your Honor.

10              THE COURT:  Mr. Pardo.

11              MR. PARDO:  Good afternoon, your Honor.

12              THE COURT:  Ms. Gerson.

13              MS. GERSON:  Good afternoon.

14              THE COURT:  Mr. Wallace.

15              MR. WALLACE:  Good afternoon.

16              THE COURT:  Mr. Leifer.

17              MR. LEIFER:  Good afternoon.

18              THE COURT:  Okay.  And all those whose names don't

19      appear on the seating chart.

20              We received the usual preconference letters for which

21      I'm grateful, but then as we drew near the conference you took

22      half the stuff off.  That's good in a way, but it does put us

23      through a lot of work for no reason because I prepared on a lot

24      of issues that you resolved at the 11$^{th}$ hour, so the whole

25      point of the 72-hour letters, maybe you could get your agreeing
```

C671mtb1

1    done before we do the work.

2              So some of the things we have here on the agenda --

3    many of the things, in fact -- seem to be resolved.

4              The first one has to do with a joint request to amend

5    CMO 92 with respect to the New Jersey case.  We know that I've

6    already endorsed that, with a very stern no adjournment warning

7    on it.

8              Next, we then turn to plaintiff's agenda items.  The

9    first thing has to do with production of scanned files, and

10   apparently the parties have now reached an agreement on cost

11   sharing with the nearby site files, and maybe it would be best

12   if you just stated that agreement for the record.  You resolved

13   that item?

14             MR. KAUFMANN:  For the items that we wanted to have

15   scanned, we've agreed to pay 25 percent of the costs.  We've

16   already taken care of that.  We worked it out.

17             THE COURT:  Okay.  Mr. Pardo, that's correct?

18             MR. PARDO:  That's correct, your Honor.

19             THE COURT:  Okay.  So then the next topic on the

20   plaintiff's agenda items is the request to add Cumberland Farms

21   as a defendant, but again, I've been told that that matter too

22   is resolved and the defendants are not opposing that motion.

23   Is that right?

24             MR. KAUFMANN:  That's what we were told, your Honor.

25             MR. PARDO:  That's correct, your Honor.

C671mtb1

| | |
|---|---|
| 1 | THE COURT:  Okay.  And how are we doing that?  There |
| 2 | was no motion, was there? |
| 3 | MR. KAUFMANN:  No, your Honor, there had not been.  We |
| 4 | will submit something to the court I believe early next week. |
| 5 | THE COURT:  Right. |
| 6 | MR. WREN:  Per your procedures, as I understand it, |
| 7 | your Honor -- Tyler Wren -- a letter and a proposed order is |
| 8 | sufficient once there's no opposition. |
| 9 | THE COURT:  Absolutely. |
| 10 | MR. WREN:  You'll have that beginning of next week, |
| 11 | your Honor. |
| 12 | THE COURT:  Great.  So that will be done. |
| 13 | Okay.  Then the next topic has to do with Puerto Rico, |
| 14 | and it begins with document production and ESI protocol.  I've |
| 15 | just been handed a case management order that says agreement on |
| 16 | the discovery and production of documents in ESI.  Given that |
| 17 | I've just been handed it, I haven't read it.  And if you want |
| 18 | my signature on it, I'm not in the habit of signing things I |
| 19 | don't read because maybe I'll be giving my house away, who |
| 20 | knows, so I can't sign it right now.  But is there anything |
| 21 | here that you want to bring to my attention?  I'll read it when |
| 22 | I can, but do you want to bring anything, any particular part |
| 23 | of it to my attention, highlight anything? |
| 24 | MR. PARDO:  I don't think so, your Honor.  We worked |
| 25 | from one of the models or templates that you sent us, and I |

C671mtb1

1    think we've made --

2              THE COURT:  Oh, good.

3              MR. PARDO:  -- some tweaks here and there, but I

4    believe we stuck fairly closely to that so --

5              THE COURT:  Oh, good.

6              MR. DEMA:  And on behalf of the Commonwealth, I would

7    second that.

8              THE COURT:  What have I said?  You don't know?

9              MR. PARDO:  There are several samples.  I don't have

10   it in front of me.

11             THE COURT:  Oh, good.  Send it back so I know what I

12   said.  E-mail it back to me so I can put in my files.

13             But anyway, so I'll read this when I can and sign it.

14   So that takes care of that.

15             Then the fourth topic might actually require some

16   attention tonight, and that has to do with plaintiff's request

17   that defendants compile and produce certain indices, one

18   regarding documents produced in other MTBE MDL cases that

19   apparently defendants reference when they respond to

20   plaintiff's discovery requests in the Puerto Rico requests;

21   also, which interrogatories or document requests do these

22   previously produced documents respond to; and finally, what

23   ESI's response is to plaintiff's discovery requests.

24             I was actually a little surprised to learn that

25   there's no document repository that's been developed over the

C671mtb1

```
 1    years in MTBE.  I don't think I knew that.  In fact, I thought
 2    there had been years ago, but maybe not.
 3              So how are the plaintiffs supposed to know what you're
 4    referencing when you say you produced it in a prior case?
 5              MR. PARDO:  Well, your Honor -- Jim Pardo for the
 6    defendants.  Plaintiffs have not -- what plaintiffs are looking
 7    for, I believe, is the discovery, the nonsite-specific
 8    discovery that we've given over all these years.
 9              THE COURT:  I think that's exactly right.
10              MR. PARDO:  That's the point of the MDL; right?  They
11    don't want our site files from Suffolk County, they want --
12              THE COURT:  Of course.
13              MR. PARDO:  What they have not done in the Puerto Rico
14    case is they haven't propounded discovery to us that's not site
15    specific.  There's no general liability or issues of discovery.
16    So even -- even if -- it's not so much a matter of what we've
17    produced per se.  Even if -- we couldn't correlate it to a
18    discovery request anyway because so far there has been none.
19              THE COURT:  Oh.
20              MR. PARDO:  But be that as it may, they already have
21    it all anyway, at least for those of us that have been in these
22    cases for so long and --
23              THE COURT:  How do you mean they already have it all?
24              MR. PARDO:  Well, what I mean by "they," even though
25    he's not here, he is one of the counsel on this case,
```

C671mtb1

```
1    Mr. Miller.  Mr. Miller has used these documents, used them
2    against us in trial last year in Merced, he's using them right
3    now as several of us go towards trial in Crescenta.  I have
4    several letters here whereby we've transmitted these documents,
5    and in fact some cases hard drives, to Mr. Miller.  All of
6    these productions of nonsite-specific discovery from us were
7    turned over to this counsel, years ago, and in fact they've
8    been using them.  I respectfully submit that what counsel need
9    to do if they can't find these things is pick up the phone and
10   call their co-counsel, who has them all.  That's where it is.
11   He is the -- Mr. Miller is the repository, your Honor, at this
12   point.
13             THE COURT:  All right.  Okay.  So Mr. Dema, first of
14   all, have you made any requests for nonsite-specific discovery
15   in the Puerto Rico case, in writing?
16             MR. DEMA:  Yes, your Honor.
17             THE COURT:  Mr. Pardo says no.
18             MR. DEMA:  He is inaccurate in that statement.
19             THE COURT:  Hold on.  I would think you people would
20   get together on that.
21             MR. PARDO:  Your Honor, there is one request --
22             THE COURT:  No, I want to know, because you said the
23   parties have not made any nonsite-specific discovery requests.
24   Have they or haven't they, Mr. Pardo?
25             MR. PARDO:  There have been no discovery requests to
```

1    that -- that range of topics.  There is one document request

2    that called for EIA data, and we have turned that over to them.

3    We've turned that -- we've turned over to them --

4              THE COURT:  Remind me.  What is EIA?

5              MR. PARDO:  Energy Information Agency or Act data.

6    They've asked for that.  That is technically not site specific.

7    It's been produced before.  We've made a 33(d) response.  We've

8    turned over those documents to them; at least Exxon has, on a

9    CD.  So Mr. Dema is technically correct.  There was one

10   document request as part of a broader set that did call for

11   some nonsite-specific discovery.

12             THE COURT:  Well, in that broader set, what else was

13   there?  You said it was one in a broader request.  Were all the

14   others requests in that set site specific?

15             MR. PARDO:  Pretty much, your Honor, yes.

16             MR. DEMA:  There were multiple requests, your Honor,

17   and the reason -- I mean, if we have specific disputes with

18   specific defendants, we take them to the specific defendants.

19             THE COURT:  I understand that.  But that general

20   statement that you never requested nonsite-specific discovery

21   threw me, because if you haven't requested it yet, then there's

22   really not a problem yet to talk about.

23             MR. DEMA:  If we had not requested it, we wouldn't be

24   before you and it wouldn't be on an agenda because --

25             THE COURT:  But Mr. Pardo should know if -- do you

C671mtb1

know of any requests other than the EIA reference?

MR. DEMA:  Mr. Pardo is actually -- Mr. Pardo's client has actually answered more fulsomely than the majority of the other defendants, and this is a situation --

THE COURT:  I'm sorry, but I don't know what he answered.  He said there was no such request, other than this one request for EIA records.  Have you requested nonsite-specific discovery from all defendants or not?

MR. DEMA:  Yes, your Honor.

THE COURT:  Can you show me the documents.

MR. DEMA:  I do not know if I have it in front of me, but yes, we have.

THE COURT:  Well, I don't understand the confusion. Does any other defendant know whether they've received any requests for nonsite-specific discovery in the Puerto Rico case?  Does any other defense counsel know whether they received it?  Because Mr. Pardo doesn't think he has.

MR. DEMA:  Well, certainly every other defendant -- for example, HOVIC, Hess Oil Virgin Islands Corporation, has received it.  They referred us to the City of New York.  Well, there is no document repository.

THE COURT:  No, there isn't.  I understand that.

MR. DEMA:  And --

THE COURT:  But I can hardly get started until I know what the document request looks like.

C671mtb1

 1                MR. DEMA:  Well, we certainly could tee it up by issue

 2       for you again, your Honor, but --

 3                THE COURT:  I just don't know why Mr. Pardo made that

 4       stunning statement that there hasn't been a request.  Maybe

 5       somebody knows.

 6                Who are you?

 7                MS. HANEBUTT:  Pam Hanebutt.  I represent Citgo

 8       Petroleum.  And I agree with Mr. Pardo.  We have not received

 9       any nonsite-specific requests.  And if we have, I'd like him to

10       direct me to it.

11                THE COURT:  Yes.  Mr. Dema, people don't seem to know

12       what request you're referring to.  It does make it difficult to

13       get started on ruling if I don't know what you've requested.

14       Maybe you haven't and --

15                MR. DEMA:  We certainly have, because Citgo actually

16       responded to it last May 22nd, 2012.

17                MS. HANEBUTT:  That's the EIA data that Mr. Pardo

18       referred to.  We haven't received any discovery requests that

19       aren't related to Puerto Rico specifically.

20                MR. DEMA:  We'll be --

21                THE COURT:  That aren't related to Puerto Rico, is

22       that what you said?

23                MS. HANEBUTT:  That -- all of the requests that we've

24       received thus far are directed to Puerto Rico specifically.  It

25       was a double negative.

C671mtb1

1          THE COURT:  You haven't received any general

2     background MTBE discovery requests.

3          MS. HANEBUTT:  No.

4          THE COURT:  Right.  Everybody's saying you haven't

5     asked for that general background material that did get

6     produced in the City case -- I remember it well -- but

7     apparently you haven't asked for it.

8          MR. DEMA:  We will certainly provide it to the court.

9     I beg your pardon that I don't have it today.  But the issue

10    also extends to New Jersey, because there have been -- I think

11    what we have to do is get some guidance from the court, since

12    there is no repository of documents, and to say that Mr. --

13         THE COURT:  Mr. Dema, I'm happy to help you when I see

14    the request.  Experienced lawyers are telling me they never got

15    a request for the nonsite-specific background information that

16    has been produced in many cases in this MDL.  I can't begin to

17    help you.  They say they don't have your request.  They don't

18    know what you're talking about.  So there's a real disconnect

19    here.  I mean, these aren't, you know, inexperienced,

20    no-account lawyers.  These are serious people.  They say they

21    don't have your requests.  They don't know what you're talking

22    about.

23         MR. DEMA:  Well, if we were to talk simply about the

24    EIA request, just as an example, your Honor --

25         THE COURT:  All right.

C671mtb1

1              MR. DEMA:  -- and we are referred to City of New York

2       counsel.

3              THE COURT:  Okay.  Did that happen for the EIA

4       materials?

5              MR. DEMA:  Yes.  It certainly did.

6              THE COURT:  Who referred you to the City of New York?

7              MR. DEMA:  Mr. Leifer.

8              MR. LEIFER:  Your Honor, yes, we have told them that

9       they need to get the information from Susan Amron, who has all

10      the information.

11             THE COURT:  Why is it Ms. Amron's problem?  Why don't

12      you produce it again to this counsel?

13             MR. LEIFER:  We also said if that was a problem, we

14      would work with plaintiff's counsel to get them what they need.

15             THE COURT:  Ms. Amron is busy.  She's a city lawyer.

16      They're underpaid and overworked.  Why don't you do it?  You

17      may be overworked, but you're not an underpaid person.  So why

18      don't you do it?

19             MR. LEIFER:  As Mr. Dema said, when he has a problem

20      with a specific defendant, let's talk and --

21             THE COURT:  He's just identified for you, Mr. Leifer,

22      you said go to Susan Amron.  She can't do that.  She's really

23      busy.

24             MR. LEIFER:  We're happy to work with them on this,

25      your Honor.

C671mtb1

1          THE COURT:  Well, do it.

2          MR. DEMA:  That would also be the case for Sunoco, for

3     Lyondell Chemical, for Shell, for the majority of the defense

4     groups, because they all referred --

5          THE COURT:  They all say go to the City?

6          MR. DEMA:  They all say, well, go to the City.

7          THE COURT:  No, no.  Defense counsel, I'm giving you

8     guidance.  Going to the City is not right.  That's not their

9     obligation.  Your obligation is to produce the same material.

10    It's rather late, but maybe it's time to set up a repository

11    for the nonsite-specific information so it's available in this

12    case or any other.  It's something you've produced before if

13    you produced it to the City, and that can't be the only case.

14    Didn't you say that Mr. Miller has it in the Crescenta Valley

15    and Merced cases?

16         MR. PARDO:  Indeed, your Honor.  And this is part

17    of -- I mean, I'm not blaming Mr. Dema, but it is a little

18    frustrating, because this was the point of the MDL, to avoid

19    having to --

20         THE COURT:  Right.  And I agree.  Unlike Ms. Amron,

21    private co-plaintiff's counsel in this very case -- right?

22    Miller Axline is appearing in the Puerto Rico case.  If it's

23    already been produced to Miller Axline, then plaintiffs have

24    it.  That's not the same as saying go to Ms. Amron, who's not

25    counsel in this case and who's a public lawyer for a public

C671mtb1

1    entity, but Mr. Miller is in the case.  Miller Axline is in the

2    case.  If they have all the responsive material, then I take it

3    back, Mr. Leifer, you don't have to produce it twice to a

4    different co-counsel in the same case.  If Miller Axline has

5    the material, they have it, but I can't question them.  They

6    didn't choose to come today.

7         MR. DEMA:  And if it were that clear, we certainly

8    would have it, because it would be distributed amongst

9    co-counsel.  But certain of the documents that have been -- for

10   example, one of the defendants, ConocoPhillips Corp.,

11   represented by Fulbright and Jaworski, provided a list of 79

12   dates, from 2005 to 2010, when they produced documents

13   ostensibly responsive to our Rule 34 requests.  That's it,

14   dates.  Well --

15         THE COURT:  They produced it to whom?

16         MR. DEMA:  In response to our Rule 34 requests, they

17   listed columns of dates where they had produced this in, quote,

18   other MDL --

19         THE COURT:  That's not enough.  They have to say they

20   produced it in the Crescenta Valley case to Mr. Axline on a

21   certain date, and that does it.

22         MR. DEMA:  And that's what we were looking for in

23   terms of the court's guidance, because I would assume they

24   would also need Bates numbers, because --

25         THE COURT:  They need Bates numbers.  So, look, you

C671mtb1

 1   have to go back and work together on this.  If the defense

 2   knows they produced it to the Miller Axline firm and knows the

 3   dates of those productions, that's all you have to do is

 4   identify the case and the date of production and then you don't

 5   have to produce it again.

 6           So Mr. Leifer, if you can document that you produced

 7   something to Miller Axline that's responsive to this request,

 8   that will do.  If you can identify when you did it.

 9           MR. DEMA:  If we have that plus the Bates ranges, then

10   we will be happy campers.

11           THE COURT:  All right.  But you also asked that it

12   correlate to the request.  I can't find any request other than

13   the EIA data, which is one document request, according to

14   Mr. Pardo, Mr. Leifer, and Ms. Hanebutt.  That's it.

15           MR. DEMA:  Yes, your Honor, and we will --

16           THE COURT:  They say there's no other requests that

17   are nonsite specific.

18           MR. DEMA:  We will bring that back to the court.  We

19   will certainly work --

20           THE COURT:  Why don't you send it in Monday and prove

21   it, because all these lawyers claim it doesn't exist.

22           MR. DEMA:  We'll certainly work with the other

23   counsel.

24           THE COURT:  That's not what I asked you.

25           MR. DEMA:  And yes, we will.  We will.

C671mtb1

```
 1              THE COURT:  Good.  Send it in Monday, because I want
 2     to see the document requests that ask for anything other than
 3     the EIA data.
 4              Yes?
 5              MR. LEIFER:  One thought to follow up on the point you
 6     made and the point that Mr. Pardo made is that we have gone
 7     through a lot of these cases and produced a large amount of
 8     stuff.
 9              THE COURT:  Correct.
10              MR. LEIFER:  And I wonder if there is a way to put a
11     document repository together with all the material that the
12     plaintiff's firms have so that we don't have to reproduce it.
13              THE COURT:  Right.  But should the burden be on the
14     plaintiff's group to create that repository or to the
15     defendants, who produced it once, just produce it again to the
16     repository, and be done with it forever?  That's the problem.
17              MR. LEIFER:  Well, we can work with the plaintiffs on
18     that, but of course they have the information already.
19              THE COURT:  But it was sent by you, so it's not hard
20     to produce to a repository and never have to deal with this
21     problem again.  Most big MDLs have a repository.  I don't know
22     how we missed it here.  I thought we had one long ago.  I guess
23     I'm wrong.  I must have had another big MDL at the same time
24     where I know we did it but maybe not.  Doesn't ring a bell?
25              MR. WALSH:  No, I'm sorry, your Honor.  It doesn't.
```

C671mtb1

        MR. WALLACE:  I recall one way back when, but you'll

recall there was a certain hiatus in the MDL and I believe

that, at least the repository I'm thinking of, which the

plaintiffs created, was then shut down --

        THE COURT:  Ah.

        MR. WALLACE:  -- and not recreated when new cases were

filed.

        THE COURT:  And I thought it was your old firm.  I

thought it was the Weitz & Luxenberg firm that might have taken

the lead on that.  It's coming back to me.  I believe Weitz &

Luxenberg had set up some kind of a repository.

        MR. WREN:  I had a conversation with a Weitz &

Luxenberg attorney about this and was advised that, yes, they

started one and then they decided that particular plaintiff's

counsel will handle particular defendants.  The documents went

out like this (indicating) into the hyperspace and never were

in one spot and really can't be retrieved effectively, so I

think your Honor's idea of creating a depository now from the

defendants would be a great solution.

        THE COURT:  Well, it wasn't very creative.  It's done

in most big MDLs.  It should have been done long ago by the

defendants when they produced this nonsite-specific, general

background, historical information.  They did produce it to the

City, at least one expects they did.  Supposedly other

defendants did is what you're saying.  Somebody else referred

C671mtb1

1    to the City.  Well, you were the only defendant who went to

2    trial.  I guess there were other defendants leading up to

3    trial.  So it was produced in that case.  Find your production

4    and get it into an electronic repository and it will be done

5    forever.  It does seem that you, having pulled it together, can

6    recreate it without much trouble, I would think.

7            MR. WALLACE:  Your Honor, I'm not sure how we create a

8    repository that's accessible to the plaintiffs.

9            THE COURT:  By having a password.  I remember all of

10   this, because I had a password at one point to access whatever

11   was in this repository.  I must be confusing it with other

12   MDLs, but I remember doing it.

13           MR. WALLACE:  I vaguely recall --

14           THE COURT:  It was a single password that anybody

15   could access whatever was in the repository.

16           MR. WALLACE:  I vaguely recall, but I can't remember

17   the specifics about how the repository was constructed, so to

18   speak, but I distinctly remember that the plaintiffs built it,

19   the plaintiffs decided how it was to be constructed and where,

20   and they controlled it.  And I --

21           THE COURT:  They did.  That sounds like a physical

22   repository.  I can remember all that.  It wasn't an electronic

23   version.  But later I thought there was an electronic version.

24           MR. WALLACE:  I think there may have been both.  In

25   any event, it was all under the control of the plaintiffs so

C671mtb1

 1   they could access it, they could decide how to populate the

 2   site --

 3           THE COURT:  Well, you know, Weitz & Luxenberg is still

 4   liaison counsel.  I see she doesn't choose to come tonight,

 5   either, but Ms. Greenwald is usually here.  You're not with

 6   that firm anymore; right?

 7           MR. WALSH:  Oh, no, I am, your Honor.

 8           THE COURT:  You are.

 9           MR. WALSH:  Yes.

10           THE COURT:  Oh, I thought you changed firms.

11           MR. WALSH:  No.  Ms. Greenwald is in New Orleans and

12   unfortunately can't be here.

13           THE COURT:  Okay.  Yes.

14           MR. WALSH:  My recollection with regard to

15   coordination of the documents -- and I'm not sure necessarily

16   whether it was a repository or not -- is, between Weitz &

17   Luxenberg and Baron & Budd, a fair amount of the documents were

18   collected specific to the original four focus cases.  After

19   County of Suffolk, I'm going to draw a blank on the other

20   three.  The Orange County certainly was another one.  After

21   most of that was resolved, including -- the City of New York

22   then went and has not forwarded documents.  Equally, while we

23   were still working within the four focus cases, plaintiffs, for

24   our own efforts, were -- because we lacked the resources of

25   others, we did divvy up discovery as to different defendants.

C671mtb1

1   So in this case the City of New York --

2           THE COURT:  Come to think about it, I said Ms. Amron

3   is too busy, but Sher & Leff tried the City of New York case.

4   Aren't they still doing MTBE work?  Aren't they counsel in

5   other cases?

6           MR. WALSH:  I believe they are still involved.

7           THE COURT:  I think I've seen their name in some other

8   of these cases.  They should be contacted too.

9           This is a strange situation.  I mean, there are people

10  who are responsible who aren't here.  So Mike Axline, Victor

11  Sher, and all defense counsel should be sitting around

12  discussing this and saying, "How can we recreate a single

13  repository so all the nonsite-specific information is put

14  together?"  Those are the people I'm identifying and, you know,

15  if they don't cooperate voluntarily, then I'm going to order

16  them to appear at the next conference of all cases and see why

17  we aren't getting this off the ground.

18          So those are the two plaintiff's lawyers that I can

19  think of offhand, plus your firm.

20          MR. WALSH:  Right.  And your Honor, I think in

21  fairness to what underlies the original request is, if when

22  defendants come back and sit there and say, "We've already

23  produced this, it was produced on X date and here's the Bates

24  range," that would be sufficient.  I believe that for Puerto

25  Rico purposes, they're not getting the data production or the

C671mtb1

```
 1   Bates range.
 2               THE COURT:  I understand.
 3               MR. WALSH:  If we receive the Bates --
 4               THE COURT:  You actually got a bunch of dates, but it
 5   wasn't clear to whom and what the Bates ranges were.
 6               MR. WALSH:  For example, we received I think it was 35
 7   gigabytes' worth of information from Mobil Oil in discovery.
 8   If we received --
 9               THE COURT:  In what case?
10               MR. WALSH:  In Suffolk County Water Authority case.
11               THE COURT:  Right, right.
12               MR. WALSH:  If the question went in Puerto Rico
13   saying, it was produced to Weitz & Luxenberg and here is the
14   range, we would have that to whichever counsel is requesting it
15   within a matter of moments, because I do know where all those
16   documents are, and once I have the Bates range, I can provide
17   them.  So it's really a matter of it being -- you know, if
18   there's a reference to a prior production, if the Bates range
19   is provided, I think plaintiff's can track down with relative
20   ease that information.
21               THE COURT:  All right.  But that takes us one step
22   short of creating a repository for this case and any other,
23   because you said it's going to be in the New Jersey case also.
24   It's not just Puerto Rico; it's New Jersey and whatever other
25   big cases are still left in the MDL.
```

C671mtb1

1              So that's really where we're at.  Defense counsel

2      should look back to their prior productions and figure out

3      dates and Bates ranges.  And then liaison counsel should work

4      together to get an online repository so they're available to

5      all defendants and all plaintiff's counsel, you can see each

6      other's documents, and just be efficient to put it all

7      together.

8              MR. WREN:  But your Honor, if some of these documents

9      are in electronic form and the defendants have them --

10             THE COURT:  They are.

11             MR. WREN:  -- they could provide us a copy directly.

12     It takes nothing to, you know --

13             THE COURT:  I realize that.  It can be on a single

14     flash drive.  But there should be then a repository.

15     Whatever's on these flash drives, put it in one spot and get it

16     collected in one site, so that it's an electronic site.

17             MR. WREN:  But if that repository is being created, it

18     is nothing for the defendants to also give us a copy directly

19     so we have it, not sometime later but right then, if it's in

20     electronic form.

21             THE COURT:  Right.  Much of this is.  I saw it in

22     electronic form.  I know there are a lot of older records, but

23     I assume, maybe wrongly, that they had scanned them or

24     something way back when and can be produced in electronic form.

25     Does that sound right, Mr. Pardo?

C671mtb1

1            MR. PARDO:  I believe that is right.

2            THE COURT:  Look, you've taken on the role of liaison

3    counsel for a long time.  I think you're going to have to pull

4    all the defense counsel and see what they can do to recreate

5    these productions in electronic form and try to get them in one

6    place and then let us know what defendant can't do it, which

7    ones can, where are we up to, who can identify what they've

8    previously produced and to whom and what the Bates and dates

9    ranges are and how do we create it in one repository.

10   Electronic repository I was thinking now.  Because Mr. Walsh

11   said if he was given some date ranges, he can access it too.

12   And maybe Mr. Axline would say the same thing, and Mr. Sher,

13   they would all say the same thing -- if they knew when it was

14   produced, they could pull it up.

15           MR. WALLACE:  We may be making much ado about nothing.

16   With all due respect to my good friend Mr. Dema, in all the

17   years we've been doing this, the plaintiffs' counsel seem to

18   coordinate the exchange of information quite nicely, and this

19   is the first we've heard of one saying, "I can't find something

20   that was previously produced."

21           THE COURT:  Especially when it's co-counsel Miller

22   Axline.  Doesn't make a whole lot of sense.

23           So I understand everybody has to talk to everyone

24   else, and I think we've exhausted the topic for today.  You can

25   tell where I'm heading.  We have to find historical production,

C671mtb1

1    and if it means talking to Mike Axline, if it means talking to

2    Victor Sher, if it means making sure that Mr. Walsh, who says

3    he can find it quickly if you tell him when it was produced and

4    by whom, you can get this all together.  All defendants have

5    access to each other's records too.  I don't think I can do

6    more today.

7          But on top of that, Mr. Dema, I want to see your

8    document request.  Mail it to me so I get it Monday.  Because

9    nobody really believes they're there, except for the one

10   request that asked for the EIA records.  So funny that they'd

11   all be mixed up.

12         All right.  I think that finished the plaintiff's

13   topics.  Is that true?

14         MR. DEMA:  Well, we had II-E, your Honor.

15         THE COURT:  Yes.

16         MR. DEMA:  Last time we were here Mr. Wallace and I

17   noted or Mr. Wallace noted a -- call it a confusion between

18   Shell and SOL, two defendants in the Puerto Rico case.  We have

19   met and conferred.  I've conferred with his firm, although

20   Mr. Wallace was unavailable.  He and I discussed it.  We were

21   both working with the Shell defendants in good faith.  There

22   are points of genuine confusion due to stock purchase

23   agreements, licensing agreements, trademarks, and what Shell

24   entities hold what sway in the world, or the UK versus the US,

25   I think -- we are working together, and I think that we can

C671mtb1

1    probably report a resolution of that.

2             THE COURT:  Can you report it now or --

3             MR. DEMA:  No.  I, in good faith, think we're going to

4    get there shortly.

5             THE COURT:  Oh.

6             MR. WALLACE:  I think that's fair.  I just feel

7    obliged to say for the record that my view is the confusion is

8    on the Commonwealth's part, and we'll try to resolve it.

9             (Continued on next page)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25