```
       C9BTMTBC

 1     UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF NEW YORK
 2     ------------------------------x
       IN RE:  METHYL TERTIARY BUTYL           MDL 1358
 3             ETHER ("MTBE") PRODUCTS
               LIABILITY LITIGATION
 4     ------------------------------x
                                               New York, N.Y.
 5                                             September 11, 2012
                                               10:30 a.m.
 6     Before:

 7             HON. SHIRA A. SCHEINDLIN,

 8                                             District Judge

 9             APPEARANCES (Telephonic)

10     MILLER, AXLINE & SAWYER
            Attorneys for Orange County Water District
11     BY:  TRACEY O'REILLY

12     McDERMOTT, WILL & EMERY
            Attorneys for Exxon Mobil
13     BY:  JAMES A. PARDO

14     SHEPPARD MULLIN RICHTER & HAMPTON LLP
            Attorneys for Exxon Mobil
15     BY:  JEFFREY J. PARKER

16     WILLIAM STACK
            Attorney for Exxon Mobil
17
       ANDREW GENDRON
18          Attorney for Exxon Mobil

19     ARCHER & GREINER
            Attorneys for Exxon Mobil
20     BY:  JOHN J. McDERMOTT

21     SEDGWICK
            Attorneys for Shell
22     BY:  PETER C. CONDRON

23     LAW OFFICES OF PETER J. ANGELOS
       BY:  ANDREW CANTOR
24          JOYCE LOMBARDI
            GARY IGNOTOWSKI
25
```

1               (In chambers)
2               THE COURT:  Good morning.
3               MS. O'REILLY:  Good morning, your Honor.
4               THE COURT:  Ms. O'Reilly?
5               MS. O'REILLY:  Yes, your Honor.
6               THE COURT:  Are you the only one on the phone for the
7    Orange County?
8               MS. O'REILLY:  That's correct.  Mr. Axline has trial
9    this morning.  And I'm actually, your Honor, the individual who
10   has been handling this matter.
11              THE COURT:  OK.  That's fine, but Mr. Axline wrote the
12   letter and sort of took blame and complained how he didn't know
13   this at this time and he didn't know that at that time, and
14   kind of fell on his sword.  Now he's not on the phone, which is
15   awkward, but so be it.
16              Mr. Parker, Mr. Stack, Mr. Parto, Mr. Gendron,
17   Mr. McDermott, and Mr. Condron, good morning.
18              And then I have a number of attorneys from the offices
19   of Mr. Angelos, so I have Mr. Cantor, Ms. Lombardi and
20   Mr. Ingnotowski.  And you aren't parties in this MDL, so I
21   don't know whether you are listening in or you wish to be
22   heard, but I will say that there's a court reporter present.
23   Some of you have not been on telephone conferences with me in
24   this MDL, and they're not easy.  They're not easy for me,
25   they're not easy for the court reporter.

1           The reason they're not easy is our phone system.  I
2   have explained this.  Your voice coming in cancels my voice
3   going out, so if I have a question or I want to interrupt, I
4   can't.  There's nothing I can do.  You will not hear me if
5   you're speaking, and it becomes very frustrating.  So you will
6   have to be conscious of that, pause as much as possible to see
7   if I'm trying to break in.
8           Secondly, we can't tell one voice from another.  So
9   you have to say every time this is Mr. Parker, and this is
10  Mr. Cantor, and I mean you have to say something that
11  identifies your voice.  So that's the rules of the road.
12          All right.  Having said that, I have two letters in
13  front of me.  I have a September 7th letter from Mr. Axline who
14  now says that he opposes the deposition of Dr. Ming Tan.  He
15  says that at the time of the August 16th conference he was not
16  fully informed and he was in error when he agreed to that
17  deposition.  And now after speaking with the offices of
18  Mr. Angelos, who provided him with the transcript -- sorry, who
19  contacted him after he provided the Angelos office with a
20  transcript of the hearing before me, they provided him with a
21  transcript of the hearing before Judge Hollander in the
22  District of Maryland.
23          The bottom line of all this is that Mr. Axline now
24  takes the position that Dr. Tan should not be forced to answer
25  deposition questions, he is not a testifying expert, he's a

1    consulting expert working for the Angelos firm, and ordinarily
2    consulting experts are not deposed.  He goes on to say that
3    Dr. Rudo, who is the testifying expert for the plaintiffs in
4    the Orange County case, quote, withdrew his reliance on
5    Dr. Tan's work in the -- it says Fresno action in the letter,
6    so I don't know whether it's Fresno or Orange County, but
7    anyway, withdrew his reliance on Dr. Tan's work in the Fresno
8    action and issued a supplemental report in July of 2012 after
9    his deposition in June of 2012, and in the supplemental report
10   claims to have withdrawn his reliance on Dr. Tan, in fact,
11   seems to be able to say that he's now relying on Dr. McGregor,
12   who is a defense expert.  The letter continues that Judge
13   Hollander in Maryland ruled that the defense has to demonstrate
14   to this Court a substantial need under the rules in order to be
15   permitted to take Dr. Tan's deposition.
16           Now I have received a September 10th letter from
17   Mr. Parker, who is on this call, and I have reviewed that
18   letter.  Mr. Parker says that Mr. Axline's motion really has to
19   be denied.  First, he points out that we had a conference on
20   this issue, Mr. Axline had the obligation to be fully prepared,
21   and frankly, he knew pretty much all the same facts then as he
22   knows now, and there's really no change except I gather
23   Mr. Angelo's office reached him and he was not happy with this
24   Court's ruling and asked him to seek reconsideration.  But the
25   second argument made by Mr. Parker is that Mr. Axline has the

1    facts wrong, and in fact, Dr. Rudo is still relying on Dr. Tan
2    for his opinions because Dr. Tan is the statistician who did
3    the statistical work.  And it cannot be Dr. McGregor, who,
4    first of all, is not a statistician and not qualified to give
5    any such opinion, he's a toxicologist, but more importantly,
6    Mr. Parker points out Dr. McGregor's position is that these
7    values are not statistically significant.  And when Dr. Rudo
8    was deposed, he pretty much stated that in fact he is still
9    relying on Dr. Tan no matter he has now written, that's the
10   reality, he is still relying on it to give his opinion.
11            Now before you all start talking, since there are so
12   many of you who might want to talk on the phone, I think it's
13   always helpful if I tell you where I am heading based on my
14   knowledge of this issue at the last conference and reviewing
15   these letters and any attachments.  Where I am heading is that
16   Dr. Tan needs to be deposed.  I believe firmly that Dr. Rudo in
17   fact is relying on Dr. Tan's position, doesn't matter what he
18   says, which he changed his position in writing, depositions
19   back and forth, that's the reality, that's the statistical
20   support for his position.  He doesn't have an independent
21   position.
22            But if Mr. Angelos is all that upset to have his
23   consulting expert deposed, well, then I guess Rudo can withdraw
24   entirely.  But if Rudo is going to be permitted to testify as a
25   plaintiff's expert in the Fresno action or whatever it is, the

1   Orange County action, whichever it is, and rely on Dr. Tan's
2   work, which I believe he is, to form his opinion, then Dr. Tan
3   has to be deposed.  He can't be protected, so to speak.  He's
4   the guy with a real opinion.  So the plaintiff has a stark
5   choice, they can go forward with the deposition or give up
6   Rudo, which may mean giving up their case on that issue.  So
7   that's where I'm heading.
8           With that, who wants to be heard?  And please remember
9   the rules of these telephone conferences, which are not easy.
10  Who wants to be heard?
11          MS. O'REILLY:  Your Honor, this is Ms. O'Reilly.
12  Since this is our motion, I would like to start off, if that's
13  all right.
14          I think the issue here is within the 72-hour letter
15  that we submitted in August we provided a quote from Dr. Rudo
16  explaining the basis of his opinion.  And this is related to
17  one study.  This is not Dr. Rudo's entire opinion.  We're
18  talking about a very small portion of his entire opinion
19  related to the Ramazzini study, and even smaller, it related
20  only to an EPA pathology working group review of the Ramazzini
21  study.  So we're talking about a very, very small portion of
22  Dr. Rudo's overall opinion.
23          In his report and opinions he has given in front of
24  you and in your trial and in other MTBE cases, including Orange
25  County, Fresno, Merced, he testified in trial in Merced, this

1   is a very small portion of that.  In fact, his testimony before
2   you and in Merced and his opinion in Orange County and Merced
3   didn't include this PWG review of the Ramazzini study because
4   it hadn't been published.
5              THE COURT:  But Ms. O'Reilly, the question is if he
6   wishes to opine that when the PWG reviewed Dr. Belpoggi's study
7   it found a statistically significant decrease in lymphoma and
8   leukemia.  If he wants to give that opinion, then Dr. Tan is
9   going to be deposed.  So what are you saying?  We can live
10  without that opinion, we can drop that from his report
11  entirely?
12             MS. O'REILLY:  Your Honor, what I'm saying is if we
13  filed a supplemental report correcting Dr. Tan's opinions, and
14  Dr. Rudo's depo testimony, we believe it is sufficient to
15  support his opinions on the PWG.
16             THE COURT:  Well, it's not.  Well, Ms. O'Reilly, it's
17  not.  If he's going to continue to give his opinion about the
18  PWG work, it seems to me that it is based on the statistics
19  developed by Dr. Tan.  So if you want to have him testify to
20  that portion, which you now say is just a small little part of
21  his overall opinion, if you need that small little part,
22  Dr. Tan has to come out of the closet and be deposed.  If you
23  don't need that small little part, I guess you can drop it and
24  this issue will be reached another day when someone wants to
25  give that opinion in some case somewhere.

1       MS. O'REILLY:  Your Honor, what we can do, he could
2  testify to the PWG without utilizing the term "statistically
3  significant" and talk about the statistics.  The PWG reviewed a
4  number of things, it wasn't just about recounting the number of
5  lymphomas and leukemias.
6       THE COURT:  But does he want at the end of the day to
7  say that that study found a statistically significant increase
8  in lymphoma and leukemia, which is a serious charge?  Does he
9  want to say that?
10      MS. O'REILLY:  Your Honor, I think he would like to
11 say that.  I think he feels comfortable saying that without
12 relying on Dr. Tan, and his deposition testimony shows that,
13 the testimony that we submitted with the 72 hour letter.  But I
14 understand that you believe he needs to rely on Dr. Tan for
15 that opinion, and I would defer to the Angelos firm to
16 determine -- it's my understanding that Dr. Tan's opinion is
17 considered privileged by them because it hasn't been disclosed,
18 and they're in a dispute whether that opinion will be disclosed
19 now or later.
20      THE COURT:  I'm sorry, I didn't understand what you
21 just said, Ms. O'Reilly.  I'm asking you, is he willing to just
22 walk away from the sentence that says this study found a
23 statistically significant increase in lymphoma and leukemia?
24 If he drops that opinion, lives without it, that is, the
25 plaintiff lives without it in those other cases, that's one

| | |
|---|---|
| 1 | story, but if he want to sneak that in, if he wants to be able |
| 2 | to say on the stand that that study found a statistically |
| 3 | significant increase in lymphoma and leukemia, which are |
| 4 | serious charges, then Dr. Tan needs to be deposed.  But when |
| 5 | you say you defer to the Angelos firm, I didn't understand what |
| 6 | you were saying.  You will make the decision to what Mr. Rudo |
| 7 | testifies to in your cases. |
| 8 |      MS. O'REILLY:  Your Honor, how this issue arose -- and |
| 9 | I don't think it was framed for you initially because it was |
| 10 | done in a 72 hour letter rather than through a motion, Dr. Tan |
| 11 | is actually an expert retained by the Angelos firm. |
| 12 |      THE COURT:  I understand that fully.  He's a |
| 13 | non-testifying consulting expert.  That was framed clearly.  I |
| 14 | knew that. |
| 15 |      MS. O'REILLY:  OK.  I apologize. And we supposedly |
| 16 | disclosed his work.  And my understanding is his work may be |
| 17 | disclosed at some point.  If we are able to reach agreement |
| 18 | with the Angelos firm to disclose that work now, because |
| 19 | Dr. Rudo testified to those opinions, but we would be willing |
| 20 | to withdraw them if we cannot utilize Dr. Tan at this time. |
| 21 |      THE COURT:  Then you would withdraw that opinion |
| 22 | regarding what he said was the -- well, the sentence is too |
| 23 | hard to construct, but his opinion that when the PWG reviewed |
| 24 | the Belpoggi study it found a statistically significant |
| 25 | increase in lymphoma and leukemia, that would drop out. |

1                MS. O'REILLY:  Yes.

2                THE COURT:  Now that I understand the plaintiff's

3     position, Mr. Parker, do you wish to be heard?

4                MR. PARKER:  Yes, your Honor, very briefly.

5                First, in Dr. Rudo's deposition he was absolutely

6     clear --

7                THE COURT:  I think you won that point already.  What

8     do you think of where we are now is what I'm saying.  He would

9     be precluded from testifying to that opinion unless Dr. Tan is

10    deposed.  So what Ms. O'Relly said is we will face that issue,

11    we either not proffer that particular opinion, or he will

12    become disclosed and a decision made by the Angelos firm and he

13    will be deposed.  I'm asking for you to react to that current

14    state of affairs.

15               MR. PARKER:  Yes, your Honor.  With respect to

16    Dr. Rudo's amended supplemental report, it's not just a

17    sentence, it's an entire section, the striking of that entire

18    section relating to the PWG report, which is what he relies on

19    Dr. Tan for --

20               THE COURT:  Right.

21               MR. PARKER:  -- that would be acceptable.  Then the

22    issue of Dr. Tan, who I understand has been disclosed as an

23    expert in some of the Angelos firm's cases, can be resolved in

24    those cases since he has been disclosed and, therefore, will

25    likely be deposed in those cases.  But for Dr. Rudo to strike

1   that entire section of his report is the relief that we would
2   be seeking.
3            THE COURT:  When you say he's been disclosed in those
4   cases, do you mean as a testifying expert with a report?
5            MR. PARKER:  Not with a report, but I have in the
6   Allen case an October 3rd, 2011 letter from the Angelos firm
7   identifying their experts in numerous categories, and he's
8   number 17, biostatistics.  And my colleagues in those cases I
9   would invite to chime in with more details to the extent
10  necessary, but there's also a report that was served
11  December 14, 2011 in -- I don't have the case name on this, by
12  Dr. Tan in one of the Maryland cases where he reviews the
13  Hamner study.  So my understanding is there is some procedural
14  status those cases are in, that they may be stayed during
15  appellate proceedings, but he's definitely been put out by the
16  firm as a testifying expert.
17           THE COURT:  Well, that's bizarre, because if he's
18  going to be a testifying expert, as the Angelos firm well
19  knows, he's going to be deposed anyway.  So why are we going
20  through all this song and dance?  Why wasn't Mr. Axline right
21  in the first place when he consented to this deposition knowing
22  that he would inevitably be deposed in the Angelos cases?
23           So I guess now it's time to hear from one the lawyers
24  from the Angelos firm.
25           MR. CANTOR:  Yes, your Honor, this is Andy Cantor.

1             In a nutshell, Dr. Tan has written and issued reports
2   in some of our state cases.  They're all the same report
3   concerning matters unrelated to what we're talking about now
4   related to Hamner study, but in no way related to anything that
5   involves the subject matter about which we're on the phone now.
6   So he is a testifying expert in that regard where he has issued
7   reports on certain matters, but not this matter.  This matter
8   was different, he was just a consulting expert.
9             THE COURT:  Well, I must say, that's splitting things
10  pretty fine.  If it's the same subject -- is he testifying on
11  the statistically increased likelihood that there are lymphomas
12  and leukemias that result from MTBE exposure?  If that's the
13  subject that he's testifying on, I don't think that his opinion
14  can be protected.
15            MR. CANTOR:  His report and his testimony involves
16  solely the Hamner study.
17            THE COURT:  I heard that.  I heard the difference
18  between the Hamner study and the PWG, but that's not my
19  question.  My question was the subject matter.  An expert can't
20  take the stand and say I'm an expert in this subject and I
21  conclude that there's an increased likelihood of lymphomas and
22  leukemias that I find significant and then say but I'm not
23  going to tell you half of what I know because that's not the
24  subject of my report.  I don't buy that.  I will tell you right
25  now, I'm not the judge in your state cases, lucky for you, but

1    I don't buy that.
2             So it depends what the subject matter of the testimony
3    is.  If he's giving that opinion, although I understand that he
4    was working on the Hamner study and not the PWG work, it
5    wouldn't matter to me.  If I were the judge and he were
6    speaking on that subject matter, he could be deposed about all
7    he knows on that subject matter.  But it's not my business, so
8    to speak.  I think the plaintiff in this case has to make a
9    clear decision, either that portion of Dr. Rudo's report about
10   the PWG study goes, or Dr. Tan is deposed.  I don't know that
11   there's much more to say on this call.
12            MS. O'REILLY:  Your Honor, this is Ms. O'Reilly.  May
13   I make one point?
14            THE COURT:  Of course.
15            MS. O'REILLY:  I disagree with Mr. Parker in
16   Dr. Rudo's amended supplemental report that if he is
17   misrepresenting the scope of that opinion it is not entirely
18   related to his conclusion about statistically significant.  He
19   has other opinions in that PWG section, and he shouldn't be
20   precluded from discussing PWG report simply because he's going
21   to withdraw one portion of that opinion.
22            And one of the problems in the way this has been
23   presented is that we haven't had an opportunity to truly open
24   up the whole scope so you could see that, and I think we should
25   be able to submit to you just a very short report and you can

1   see the scope of the amended report that those should be
2   allowed if they're not statistically significant.
3            THE COURT:  I think you should submit that report.  Go
4   ahead and submit that report so I can review that section.  You
5   said it's very short.  I'm not going to sit and read a 60- or
6   70-page report, that's for sure.
7            MS. O'REILLY:  It's very short, your Honor, we can get
8   that submitted later today.
9            THE COURT:  That's fine.
10           And then, Mr. Parker, you may have to look at that
11  section on the PWG and really be able to say that some portions
12  of it don't relate at all to this statistically significant --
13  alleged statistically significant increase in lymphomas and
14  leukemias, which is based on Dr. Tan's work.  There may be
15  other parts of that section that shouldn't be precluded because
16  they're not even part of this discussion.
17           MR. PARKER:  Your Honor, this is Jeff Parker.  I will
18  definitely do so.  I would note that both his supplemental
19  report listing Dr. Tan and his amended supplemental report were
20  discussed at length and I think submitted.
21           THE COURT:  I don't think so.  I just asked my clerk
22  to check.  He didn't think so.
23           MR. CANTOR:  We may have submitted --
24           THE COURT:  You may have, then he's wrong.
25           MR. CANTOR:  It does -- we took out the names, but --

1      THE COURT:  No.  Look, Mr. Parker, I hope I'm smarter
2 than that.  It's not a matter of dropping the name and giving
3 the opinion.  I said that's out.  But she said there are
4 portions of that section about PWG that just are completely
5 unrelated to that opinion about the statistical significance.
6 Not a matter of dropping a name.  Anybody can see through that.
7 So I'm asking to look at that section, and maybe work with
8 Ms. O'Reilly and talk with her before you bother me again and
9 see if you can agree that certain portions of his opinion
10 really have nothing to do with the statistical work of Dr. Tan.
11      MR. CANTOR:  We will do so.
12      THE COURT:  Try.  If there are portions that you can
13 negotiate and agree with -- because she gets the drift of my
14 ruling.  If they try to get in that portion, Dr. Tan will be
15 deposed.  So she has to work with you to see if there are
16 portions that are really unrelated or if everything is related.
17 So maybe before you submit it, you should say these are the
18 contested portions, we agree this is out, we agree this is in,
19 now we're marking for you with a blue line where we don't
20 agree.  That would be the most efficient way for me.
21      Will you try do it that way, Mr. Parker?
22      MR. CANTOR:  Yes.
23      THE COURT:  Anybody need to say anything further?
24      MS. O'REILLY:  No, your Honor.  I think what I would
25 suggest is that we work with Mr. Parker and maybe come back to

1   you a week from now to let you know whether we have resolved it
2   or whether we need a final ruling.
3             THE COURT:  The final ruling would be on the disputed
4   portions.  Like I said, you would blue line it and say we agree
5   certain portions are out, certain portions are in, but we can't
6   agree as to these paragraphs, you'll have to be the arbiter.
7   That's the way I would like you to submit it.
8             MS. O'REILLY:  OK.  Would a week from today be fine?
9             THE COURT:  That's fine.  I won't be in a week from
10  today, but you can submit it.
11            Anything further?
12            MS. O'REILLY:  Thank you.
13            THE COURT:  Thank you.
14            MR. PARKER:  Thank you, your Honor.
15                                 o0o