**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re: Methyl *tertiary* Butyl Ether ("MtBE")
Products Liability Litigation

This Document Relates To:

*City of Fresno v. Chevron U.S.A. Inc., et al.,*
Case No. 04 Civ. 4973 (SAS)

Master File No. 1:00-1898
MDL No. 1358 (SAS)

# BP DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR GOOD FAITH
SETTLEMENT DETERMINATION

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................1

II.  BACKGROUND FACTS .....................................................................................3

    A.   Litigation Overview ...............................................................................3

    B.   Discovery Has Demonstrated That Plaintiff's Claims Against
        the BP Defendants Face Significant Factual and Legal
        Impediments.............................................................................................5

        1.   Plaintiff Cannot Prove Its Design Defect Claims. ......................5

        2.   Plaintiff Cannot Prove That Additional Warnings
              Would Have Prevented Its Injury. ..............................................6

        3.   Plaintiff's Nuisance And Trespass Claims Are Also
              Likely To Fail. ...........................................................................7

        4.   Plaintiff's Damages Are Uncertain. ...........................................8

    C.   Negotiations Of This Settlement..............................................................9

III. TERMS OF SETTLEMENT ...............................................................................10

IV.  ARGUMENT.......................................................................................................10

    A.   California Code Of Civil Procedure Sections 877 And 877.6
        Permit The BP Defendants To Obtain A Judicial Determination
        Of Good Faith Settlement .......................................................................10

    B.   The Settlement Between the BP Defendants And Plaintiff Is In
        Good Faith. .............................................................................................12

        1.   The Settlement More Than Approximates The BP
              Defendants' Proportionate Liability In Comparison
              With Plaintiff's Total Recovery................................................14

        2.   The Amount Paid In Settlement Is Reasonable. ........................15

        3.   Allocation Among Plaintiffs Does Not Apply To This
              Settlement. ................................................................................16

4.     The Settlement Amount Reflects The Policy That A
       Settlor Should Pay Less In Settlement Than If Liability
       Was Imposed After Trial. ...........................................................................16

5.     The Financial Condition And Insurance Limits Of The
       Settling Defendant Did Not Affect The Settlement
       Negotiations. .............................................................................................16

6.     The Negotiations Between Plaintiff And The BP
       Defendants Did Not Involve Collusion, Fraud, Or
       Tortious Conduct. ......................................................................................16

C.   Anyone Contesting The Good Faith Of A Settlement Bears The
     Burden Of Proof...................................................................................................17

V.  CONCLUSION .................................................................................................................17

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Motus v. Pfizer Inc.*,
196 F. Supp. 2d 984 (C.D. Cal. 2001) ............................................................................6

*In re MTBE Prod. Litig.*,
457 F. Supp. 2d 455 (S.D.N.Y. 2006)............................................................................7

*Plummer v. Lederle Labs.*,
819 F.2d 349 (2d Cir. 1987)............................................................................................6

**STATE CASES**

*Barth-Wittmore Ins. v. H.R. Murphy Enters., Inc.*,
169 Cal. App. 3d 124 (1985) ........................................................................................13

*Bay Development, Ltd. v. Superior Court*
50 Cal.3d 1012 (1990) ..................................................................................................14

*Cahill v. San Diego Gas & Elec. Co.*
194 Cal.App.4th 939 (2011) .........................................................................................15

*County of Santa Clara v. Atlantic Richfield Co.*,
137 Cal. App. 4th 292 (2006) .........................................................................................8

*Fisher v. Superior Court*,
103 Cal. App. 3d 434 (1980) ........................................................................................11

*People ex rel. Gallo v. Acuna*,
14 Cal. 4th 1090 (1997) ..................................................................................................8

*Horton v. Superior Court*,
194 Cal. App. 3d 727 (1987) ........................................................................................17

*Khan v. Shiley Inc.*,
217 Cal. App. 3d 848 (1990) ..........................................................................................6

*Mohilef v. Janovici*,
51 Cal. App. 4th 267 (1996) ...........................................................................................8

*North County Contractor's Ass'n, Inc. v. Touchstone Ins. Servs.*,
27 Cal. App. 4th 1085 (1994) .......................................................................................13

*Plenger v. Alza Corp.*,
11 Cal. App. 4th 349 (1992) ...........................................................................................6

*Rosburg v. Minnesota Mining & Mfg. Co.*,
181 Cal. App. 3d 726 (1986) ..........................................................................................7

*Rutherford v. Owens-Illinois, Inc.*,
 16 Cal. 4th 953 (1997) .................................................................................6

*Tech-Bilt, Inc. v. Woodward-Clyde & Associates*,
 38 Cal. 3d 488 (1985) ...................................................3, 12, 13, 14, 16, 17

*Tombaugh v. Superior Court*,
 62 Cal. App. 3d 231 (1976) .....................................................................11, 12

*Wilshire Ins. Co. v. Tuff Boy Holding, Inc.*
 86 Cal.App.4th 627 (2001) ...........................................................................15

*Wysong & Miles Co. v. Western Industrial Movers*
 143 Cal.App.3d 278 (1983) ...........................................................................15

**DOCKETED CASES**

*City of New York v. Amerada Hess Corp.*,
 Case No. 04-CIV 3417 (D.C. N.Y.)..................................................................6

**STATUTES AND RULES**

California Civil Code

    § 3294(c) .........................................................................................................9

California Code Of Civil Procedure

    § 877............................................................................................1, 3, 10, 11, 18

    § 877.6.......................................................................................1, 3, 11, 17, 18

California Health & Safety Code

    § 116365 ......................................................................................................4, 5

Federal Rules of Civil Procedure

    Rule 56.......................................................................................................2, 9, 11

## I.   INTRODUCTION

In this action Plaintiff City of Fresno ("Plaintiff" or "Fresno") alleges that gasoline containing methyl tertiary butyl ether ("MTBE") released from underground storage tanks ("USTs") at defendants' service stations has contaminated or threatens to contaminate Fresno's drinking water well system.  Defendants Atlantic Richfield Company, BP Products North America Inc. and BP West Coast Products LLC (the "BP Defendants") have reached a settlement with Plaintiff, as set forth in the written agreement attached as Exhibit 1 to the Declaration of Lawrence A. Cox filed concurrently herewith ("Cox Dec.").  The settlement is the result of arm's length negotiations conducted in good faith and resolves the lawsuit in its entirety as to the BP Defendants.  The settlement's effectiveness is conditioned on a determination by this Court that a "good faith settlement" pursuant to Cal. Code Civ. Proc. §§877 and 877.6 has been reached by the parties.  By this motion, the BP Defendants seek such a determination.

The facts elicited through discovery indicate that Fresno's claims against the BP Defendants would be difficult to prove.  At the August 16, 2012 Status Conference the Court, among other things, ordered Fresno to identify:  (a) the service station sites for which Fresno will pursue claims at trial and the defendants against which those claims will be asserted; and (b) the service station sites as to which Plaintiff is dismissing all claims with prejudice.  (See Document 3594 Case Management Order #108 dated January 2, 2013, which implemented the Status Conference Order.)  As a result, ARCO Station #610, the only service station site in the litigation owned (or operated) by the BP Defendants, has been dismissed from the case with prejudice. (*Id.*, ¶ B, p. 3.)  Plaintiff's expert had previously testified that no threat of MTBE contamination remained at ARCO Station #610, and that remedial work there is not required.  The BP Defendants' remaining potential exposure in the litigation is limited to a handful of "ARCO-

branded jobber sites." (*Id.*, ¶ A, p. 2.) However, all of these remaining sites are owned and/or operated by other sophisticated parties, most of whom are defendants to this case. It is those other parties that are responsible for UST operations and/or remedial activity at the "ARCO-branded jobber sites" remaining in the case.

In addition to this failure of proof of injury or threatened injury caused by the BP Defendants, Plaintiff's MTBE gasoline product design defect claim will also be difficult to prove because of evidence that MTBE was the only reasonably available oxygenate at the time it was used by the BP Defendants. Moreover, Plaintiff will have difficulty proving its failure to warn claim in light of the testimony of gasoline station owners and operators, as well as Defendants' expert, Dr. Christine Wood. These witnesses testified that Defendants' warnings were adequate and additional warnings would not have changed the operators' behavior with respect to addressing a release of gasoline (with or without MTBE) in a prompt, responsible, and comprehensive manner. Additionally, because the only remaining sites linked to the BP Defendants were "ARCO-branded jobber sites" operated and controlled by sophisticated parties, most of whom are defendants in this case, and not the BP Defendants, Plaintiff may not be able to prove its nuisance or trespass claims against the BP Defendants as to any such sites for which Plaintiff will seek recovery at trial.

Finally, Plaintiff has not suffered any special harm or injury necessary to succeed on its public nuisance claim. Plaintiff will also have trouble proving its case if the various Rule 56 summary adjudication motions defendants have requested to file are granted, which would make it even more difficult for Plaintiff to carry its burden of proof on any claims against the BP Defendants.

As demonstrated below, Plaintiff's settlement with the BP Defendants satisfies the good faith standard articulated by the California Supreme Court in *Tech-Bilt, Inc. v. Woodward-Clyde & Associates*, 38 Cal. 3d 488 (1985).  The BP Defendants have received no indications to the contrary, and on that basis believe that no other defendant in this action intends to oppose this motion.  (Cox Dec., ¶ 2.)

Accordingly, the BP Defendants respectfully request that the Court grant this Motion approving their settlement with Plaintiff as a "good faith settlement" pursuant to Cal. Code Civ. Proc. §§ 877 and 877.6

## II.    BACKGROUND FACTS

### A.    Litigation Overview

This case is part of the federal court MTBE multi-district litigation (MDL 1358) now pending in the United States District Court, Southern District of New York.  (Cox Dec., ¶ 4.) The MDL proceedings have involved over one hundred actions brought by public and private entities, and by individuals, from various states for alleged MTBE contamination of water.  (*Id.*) The plaintiffs in each of the actions, including Fresno, brought claims against various petroleum companies for their design, manufacture, supply, use, handling, and/or distribution of gasoline containing MTBE and/or tertiary butyl alcohol ("TBA"), which is a chemical that results from the breakdown of MTBE constituents in groundwater.  (*Id.*)

Fresno commenced this action in 2003, and amended its Complaint in 2004, claiming that Fresno wells and/or groundwater that supply such wells had been contaminated with MTBE and/or TBA from MTBE gasoline that was manufactured, distributed, or sold at retail by the BP Defendants.  (Cox Dec., Ex. 2 (First Amended Complaint), (¶¶ 2-3, & 34).)  In its First Amended Complaint, Plaintiff alleged claims under strict products liability based on design defect and failure to warn, and declaratory relief.  (*Id.*, ¶¶ 70-110.)

Fresno has generally failed to proffer a legally-sustainable damages case against any party, including the BP Defendants. (Cox Dec., ¶ 11.) Unlike other cases handled by Plaintiff's counsel, here Plaintiff has presented no groundwater model predicting future MTBE impacts on the Fresno well system. Instead, relying on Plaintiff's counsel's usual cadre of experts, Fresno essentially claims that in order to prevent and/or mitigate future and "inevitable" MTBE contamination in its wells, it must expend resources to conduct additional assessment and remediation at approximately 20 sites identified as alleged sources of MTBE for trial. In addition to the fact that the authority to order and oversee UST site remediation belongs to the Central Valley Regional Water Quality Control Board, Fresno's "damages" witnesses could not identify any costs incurred to date, or any future plans Fresno had, to investigate and/or remediate the only BP-owned site or any "ARCO-branded jobber sites" owned and operated by other parties (Cox Dec., ¶ 12). Furthermore, Fresno's water treatment expert, Richard Haberman, did not offer any opinions supporting a damages amount that Plaintiff might seek to recover at trial. (Cox Dec., ¶ 12.) Indeed, Mr. Haberman did not identify *any* Fresno well that warranted treatment for MTBE contamination, but rather simply described a limited number of treatment options in the industry (*e.g.,* granular activated carbon treatment) to address MTBE contamination when it actually exists. (*Id.*)

In fact, Fresno has never reported MTBE detections in any of its wells at levels above even 1.5 parts per billion ("ppb"), which is far below California's Maximum Contaminant Levels ("MCLs").[1] (Cox Dec., ¶ 12.) And as of 2011, Fresno could not detect and quantify MTBE in

---

[1] The California Safe Drinking Water Act requires the California Office of Environmental Health Hazard Assessment to set public health goals for drinking water "based exclusively on public health considerations," and to set them at levels "at which no known or anticipated adverse effects on health occur, with an adequate margin of safety." Cal. Health & Safety Code ("H&S") § 116365(c). The statute requires the California Department of Public Health ("CDPH") to "adopt primary drinking

Footnote continued on next page

the vast majority of its wells even when using a method reporting limit ("MRL") purportedly able to measure micro-detections of MTBE down to 0.02 ppb. In sum, there are no facts establishing that Fresno has suffered any identifiable damage as a result of conduct by the BP Defendants in this matter.

### B.   Discovery Has Demonstrated That Plaintiff's Claims Against the BP Defendants Face Significant Factual and Legal Impediments

#### 1.   Plaintiff Cannot Prove Its Design Defect Claims.

Fresno contends MTBE dissolves into water and moves faster and farther than other gasoline constituents when released, is more persistent in the environment and more expensive to treat than other gasoline constituents, and allegedly can be tasted and smelled by some people at very low levels. Fresno further contends that, as a result, MTBE gasoline was defectively designed. (Cox Dec., Ex. 2 (First Amended Complaint), ¶¶ 51-55 and 61-76.) Fresno also claims that reasonable alternatives to MTBE, such as ethanol, existed that should have been used in place of MTBE. (*Id.*, ¶ 62.) Fresno alleges that all defendants, including the BP Defendants, used MTBE despite knowing of these risks. (*Id.*, ¶ 71.)

Discovery has shown, however, that as a practical matter defendants were forced to use MTBE in California to comply with amendments to the Federal Clean Air Act ("FCAA") and specifications required by the California Air Resources Board ("CARB") that required the use of an oxygenate to help reduce emissions from automobiles. (*See* Cox Dec., Ex. 3 (O'Brien

---

Footnote continued from previous page
water standards for contaminants in drinking water" that are "as close as feasible to the corresponding public health goal placing primary emphasis on the protection of health..." Cal. H&S § 116365(a). To meet these requirements for MTBE, the CDPH set the primary health MCL at 13 ppb and the secondary aesthetic MCL at 5 ppb. 22 CCR §§ 64444, 64449.

Report).)  Ethanol was simply not a reasonably viable option at the time defendants were required to meet the FCAA's amendments.  (*Id.*, pp. 102-111.)

Certain defendants have prevailed on this issue in prior MTBE litigation.  In *City of New York v. Amerada Hess Corp.*, Case No. 04-CIV 3417 (D.C. N.Y.), a jury found for defendants on the issue of design defect, finding that ethanol was not a reasonably available alternative in New York.  (Cox Dec. ¶ 7.)  Defendants have an even stronger case in California because CARB requirements in California were stricter than the federal mandates.  (*Id.*, Ex. 3 (O'Brien report), pp. 32-35.)  Moreover, California Governor Davis had to postpone the 2002 phase-out of MTBE for one year because ethanol was not available in sufficient quantities at the time.  Thus, it will be difficult for Plaintiff to prove that MTBE gasoline was defectively designed because there is ample evidence that MTBE was the only reasonably available oxygenate.

### 2.     Plaintiff Cannot Prove That Additional Warnings Would Have Prevented Its Injury.

In order to succeed on its failure to warn claim, Plaintiff must prove causation.  *See Khan v. Shiley Inc.*, 217 Cal. App. 3d 848, 855 (1990) (causation is essential element to products liability action no matter what theory of recovery is utilized).  On its failure to warn claim, Plaintiff must "prove not only that no warning was provided, but also that the inadequacy or absence of warning caused the plaintiff's injury."  *Motus v. Pfizer Inc.*, 196 F. Supp. 2d 984, 991 (C.D. Cal. 2001) (emphasis added) (citing *Plummer v. Lederle Labs.*, 819 F.2d 349, 359 (2d Cir. 1987) (applying California law)); *see also Rutherford v. Owens-Illinois, Inc.*, 16 Cal. 4th 953, 968 (1997).  In addition, a manufacturer has no duty to warn of a risk that is known and apparent.  *See Plenger v. Alza Corp.*, 11 Cal. App. 4th 349, 362 (1992); *see also Plummer*, 819 F.2d at 359

("no harm could have been caused by a failure to warn of a risk already known") (quoting *Rosburg v. Minnesota Mining & Mfg. Co.*, 181 Cal. App. 3d 726, 730 (1986)).

Plaintiff has not designated an expert who is qualified to testify about whether its proposed additional warnings would have changed the station operators' behavior and prevented Plaintiff's injury. Defendants, however, have designated Dr. Christine Wood, who opines that Defendants' warnings were adequate and any additional warnings here would not have affected the gasoline station operator's behavior. (Cox Dec., Ex. 4, p. 11.) The discovery record contains the testimony of gasoline station owners and operators, who consistently testified that defendants' warnings were adequate and that additional warnings would not have changed operators' behavior with respect to addressing a release of gasoline (with or without MTBE) in a prompt, responsible, and comprehensive manner.

### 3. Plaintiff's Nuisance And Trespass Claims Are Also Likely To Fail.

To succeed on its nuisance and trespass claims, Plaintiff must first establish that the BP Defendants caused the presence of MTBE contamination in the Fresno drinking water well system. In this context, Plaintiff must show that the BP Defendants were the owners or operators of the stations where MTBE releases occurred. *See In re MTBE Prod. Litig.*, 457 F. Supp. 2d 455, 463 (S.D.N.Y. 2006). With one exception, the BP Defendants did not own or operate any of the sites at issue in this case, including the "ARCO-branded jobber sites" that received deliveries of ARCO branded gasoline during certain time periods. As such, Plaintiff will not be able to prove nuisance or trespass claims against the BP Defendants related to those sites, all of whose USTs were owned and/or operated by sophisticated parties, some of whom are defendants in this case.

The one ARCO site in the case that was BP-owned has been dismissed from the case, with prejudice, as Plaintiff's own expert(s) agreed that no threat of MTBE contamination from that station remains, and that remedial work there is not required. (Cox Dec., ¶ 9.) In California, contamination must interfere both "substantially" and "unreasonably" with a plaintiff's use of the property before a nuisance exists or a trespass occurs. *County of Santa Clara v. Atlantic Richfield Co.*, 137 Cal. App. 4th 292, 305 (2006). This standard requires that Plaintiff show significant harm *caused by the BP Defendants*, which has been defined as "a real and appreciable invasion of plaintiff's interests, one that is definitely offensive, seriously annoying or intolerable" *People ex rel. Gallo v. Acuna*, 14 Cal. 4th 1090, 1105 (1997). Additionally, for public nuisance, a plaintiff must show that it has suffered special injury, *i.e.*, an injury in addition to that of the general public. *Mohilef v. Janovici*, 51 Cal. App. 4th 267, 297 n.20 (1996).

Plaintiff, however, has not suffered any harm or special injury caused by the BP Defendants as it relates to the wells at issue because there is essentially no MTBE currently in them. (Cox Dec., ¶ 12.) Moreover, Fresno has incurred no costs related to the contamination in and around the one BP-owned station in the litigation, which has been ordered dismissed with prejudice from the case.

### 4. Plaintiff's Damages Are Uncertain.

Even if Fresno were to prevail on its claims at trial, the amount of damages it could recover is unstated, and uncertain at best. (Cox Dec., ¶¶ 11-12.) Plaintiff's well system has simply never experienced MTBE detections at levels even close to the State's MCLs that has required any remedial action in the past, and any future damage costs are highly unlikely as MTBE has been out of defendants' gasoline for a decade, while none of Plaintiff's wells have appreciable MTBE impacts at this time. (Cox Dec., ¶ 12.) In light of these facts, it is highly

unlikely that any of Plaintiff's wells will require future treatment, much less that a jury would award Plaintiff significant future damages for such unnecessary treatment.

Plaintiff's punitive damages claim is unlikely to even reach the jury because: (1) there is no evidence of fraudulent, oppressive, or malicious conduct by the BP Defendants and (2) even if there was, there is no evidence that Plaintiff's injury is the result of such conduct.  Cal. Civ. Code § 3294(c).  There is no evidence that the BP Defendants intended to harm anyone by using MTBE.  To the contrary, there is ample evidence that the properties of MTBE were well known before the alleged releases at issue in this case, additional warnings were not necessary, additional warnings would not have changed behavior in a way that would have prevented Plaintiff's alleged injury, and Defendants had no realistic choice in using MTBE to meet the state and federal air quality requirements because MTBE was the only reasonably available oxygenate in the early 90s.  [(*See, e.g.*, Cox Dec., Ex. 3 (O'Brien Report)).]

### C.     Negotiations Of This Settlement.

The BP Defendants vigorously contest both liability and damages based on the above evidence, and various potentially dispositive Rule 56 motions for summary judgment that defendants seek to file in the case.  In the face of factual disputes bearing on liability and damages, and with the desire to resolve this matter without incurring the substantial costs and delay of additional litigation activity, the BP Defendants and Plaintiff entered into a series of protracted settlement discussions concerning this case, both with and without the assistance of a mediator, beginning in late August of 2012.  (Cox Dec., ¶ 13.)  Negotiations over the amount, terms, conditions, and forms of the Settlement Agreement ultimately culminated in fair, reasonable terms to which Plaintiff and the BP Defendants have both agreed.  (*Id.*)  The Settlement Agreement is lodged herewith (Cox Dec., Ex. 1), and the terms are summarized below.

III.   **TERMS OF SETTLEMENT**

Plaintiff and the BP Defendants have entered into a written settlement agreement, which contains the terms of their settlement.  (Cox Dec., Ex. 1.)  The pertinent terms of the agreement include the following:

- Plaintiff has agreed to dismiss this action with prejudice as to the BP Defendants, and to release the BP Defendants from liability as provided in the agreement (*Id.*, ¶¶ 1.7, 2.3 and 4);

- The BP Defendants have agreed to pay Plaintiff the total sum of $1,500,000 in exchange for a broad release that covers any service station site or other facility within the City of Fresno where MTBE gasoline was manufactured, delivered, stored, handled, used, dispensed, spilled, leaked, or released by the Atlantic Richfield Company or any other BP Defendant that caused or threatens to cause injury or damage to Fresno (*Id.*, ¶¶ 1.2, 1.3.4, 2.2, and 4);

- The agreement is contingent upon the Court determining that this resolution is a good faith settlement between Plaintiff and the BP Defendants under California law (*Id.*, ¶ 3).

IV.   **ARGUMENT**

   A.   **California Code Of Civil Procedure Sections 877 And 877.6 Permit The BP Defendants To Obtain A Judicial Determination Of Good Faith Settlement**

It is appropriate for this Court to apply California law in making the good faith determination requested here.  *Mason and Dixon Intermodal v. Lap master Int.*, 632 F.3d 1056, 1060 (9th Cir. 2011).  California Code of Civil Procedure Section 877.6(a) provides that "[a]née party to an action in which it is alleged that two or more parties are joint tortfeasors. . . shall be

entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or

other claimant and one or more alleged tortfeasors." Cal. Code Civ. Proc. § 877.6(a) (2010).

Section 877 provides that:

> Where a release, dismissal, with or without prejudice, or a
> covenant not to sue or not to enforce judgment is given in good
> faith before verdict or judgment to one or more of a number of
> tortfeasors claimed to be liable for the same tort. . . . (b) [I]t shall
> discharge the party to whom it is given from all liability for any
> contribution to any other parties.

*Id.* § 877; *see also id.* § 877.6(c) (good faith determination bars other joint tortfeasors from

asserting claims "for equitable comparative contribution, or partial or comparative indemnity,

based on comparative negligence or comparative fault.").

The legislative intent underlying Section 877 was to extinguish all claims against the

settling defendant, including those by the claimant and any alleged joint tortfeasors. *See*

*Tombaugh v. Superior Court*, 62 Cal. App. 3d 231, 235 (1976). Moreover, Section 877

embodies the strong public policy encouraging settlement of litigation. *See Fisher v. Superior*

*Court*, 103 Cal. App. 3d 434, 442-43 (1980). It is a challenger's burden to demonstrate a lack of

good faith. Cal. Code Civ. Proc. § 877.6(d).

Here, the evidence demonstrates Plaintiff's products liability, nuisance, and trespass

claims face serious hurdles. Moreover, Plaintiff's ability to prove its case would be greatly

affected if any of defendants' proposed Rule 56 summary judgment motions are granted.

Additionally, Plaintiff's case for future damages to treat presently non-existent MTBE

contamination is uncertain, at best. Nonetheless, the BP Defendants have agreed to settle this

action and undertake the obligations of the settlement agreement. In keeping with the policy

goals of Section 877, the BP Defendants' good faith settlement with Plaintiff terminates this

litigation as to them, and the BP Defendants are entitled to protection against claims for contribution and indemnity.

**B.    The Settlement Between the BP Defendants And Plaintiff Is In Good Faith.**

In *Tech-Bilt, Inc. v. Woodward-Clyde & Associates*, the California Supreme Court articulated the standard for determining whether a settlement is made in good faith. *Tech-Bilt, Inc. v. Woodward-Clyde & Associates*, 38 Cal. 3d 488 (1985). The *Tech-Bilt* court noted that an appropriate definition of good faith "would enable the trial court to inquire, among other things, whether the amount of the settlement is within the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries." *Id.* at 499. Bad faith is not necessarily "established by showing that a settling defendant paid less than his theoretical proportionate or fair share . . . . Such a rule would unduly discourage settlements." *Id.* The *Tech-Bilt* court recognized that a good faith settlement determination must take into consideration the speculative and unpredictable nature of litigation and should not be determined solely by the proportion the settlement bears or may bear to the damages or alleged damages claimed by the plaintiff. *See id.* at 499. In *Stambaugh*, which the California Supreme Court cited with approval, the court acknowledged the policy in favor of settling litigation and specifically noted that

> [e]xcept in rare cases of collusion or bad faith. . . a joint tortfeasor should be permitted to negotiate settlement of an adverse claim according to his own best interests, whether for his financial advantage, or for the purchase of peace and quiet, or otherwise. His good faith will not be determined by the proportion his settlement bears to the damages of the claimant. For the damages are often speculative, and the probability of legal liability therefor is often uncertain or remote.

62 Cal. App. 3d at 238 (cited in *Tech-Bilt*, 38 Cal. 3d at 499).

In *Tech-Bilt*, the California Supreme Court identified certain factors that are relevant to the determination of a good faith settlement. These factors include:

(1)     a rough approximation of the plaintiff's total recovery and the settlor's proportionate liability;

(2)     the amount paid in settlement;

(3)     the allocation of settlement proceeds among plaintiffs;

(4)     recognition that a settlor should pay less in settlement than if the settlor were found liable after a trial;

(5)     the financial condition and the insurance policy limits of the settlor; and

(6)     the existence of collusion, fraud, or tortious conduct aimed to injure the interests of non-settling defendants.

38 Cal. 3d at 499. However, "[a] judge charting the boundaries of good faith of necessity must avoid a rigid application of the factors set forth in *Tech-Bilt*." *North County Contractor's Ass'n, Inc. v. Touchstone Ins. Servs.*, 27 Cal. App. 4th 1085, 1090 (1994).

The key consideration is whether the settlement is "grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be." *Tech-Bilt, Inc.*, 38 Cal. 3d at 499. Indeed, the determination of good faith does not require that, in effect, a trial of the merits occur before there can be a good faith settlement. *Barth-Wittmore Ins. v. H.R. Murphy Enters., Inc.*, 169 Cal. App. 3d 124, 132 (1985) ("[T]he determinant of good faith is not the liability figure ultimately reached at trial."). The court "has wide discretion in deciding whether a settlement is in good faith and in arriving at an allocation of valuation of the various interests involved." *North County Contractor's Ass'n, Inc.*, 27 Cal. App. 4th at 1092, 1095.

An analysis of the relevant *Tech-Bilt* factors and evidence demonstrates that Plaintiff's settlement with the BP Defendants is a reasonable settlement made in good faith between the settling parties, who in no way aimed to injure the interests of any non-settling person.

1.  **The Settlement More Than Approximates The BP Defendants' Proportionate Liability In Comparison With Plaintiff's Total Recovery.**

The BP Defendants contend that a number of serious questions exist respecting Plaintiff's ability to establish liability against them on its design defect, failure to warn, nuisance, and trespass claims. Moreover, even if liability could be established, it is the BP Defendants' contention that Plaintiff's as yet unspecified damages are unsupported, based on speculation, and likely to be significantly reduced or barred by pre-trial motions. Moreover, of the dozens of stations identified by Plaintiff in this case, only one was ever linked through actual UST ownership to any of the BP Defendants, and that location has been dismissed from the case as experts on both sides agree that no threat of MTBE contamination from that station remains, and that remedial work there is not required. (Cox Dec., ¶ 9.) Thus, the BP Defendants should not pay a significant percentage of Plaintiff's claimed damages even if the BP Defendants were somehow found liable at trial.

Certainly the BP Defendants' settlement payment of $1.5 million constitutes considerably more than a nominal "nuisance value" resolution in a case where the amount of Plaintiff's purported damages has yet to be stated, even by Plaintiff's experts. As a result, the $1.5 million paid by the BP Defendants more than adequately approximates their proportionate liability when viewed in the context of Plaintiff's total recovery. *See e.g. Bay Development, Ltd. v. Superior Court* 50 Cal.3d 1012, 1028 (1990) [upholding $30,000 settlement amount vs. $1 million

claimed damages]; *Wysong & Miles Co. v. Western Industrial Movers* 143 Cal.App.3d 278, 283 (1983) [upholding $65,000 good faith settlement amount vs. $7 million claimed damages]; *Wilshire Ins. Co. v. Tuff Boy Holding, Inc.* 86 Cal.App.4th 627, 631-632 (2001) [upholding $50,000 good faith settlement amount vs. $1.425 million claimed damages].

Lastly, and as to the BP Defendants' proportional liability compared to other defendants, the BP Defendants generally cannot have liability for equitable indemnity to a non-settling defendant as they have essentially no liability to Plaintiff as their actions were not a substantial factor in causing Plaintiff's damages. It is therefore appropriate for this Court to conclude that the BP Defendants likewise have little or no potential liability to other defendants based upon equitable indemnity or comparative fault. *See e.g. Cahill v. San Diego Gas & Elec. Co.* 194 Cal.App.4th 939, 965 (2011) ["Because the trial court... concluded [settlor's] potential liability was 'so remote' based on the lack of causation, the court could rationally conclude [settlor] had no greater liability to [co-defendant] for equitable indemnity than it had to [plaintiff] for negligence"].

Accordingly, the BP Defendants' settlement more than approximates the BP Defendants' proportionate liability when compared with Plaintiff's uncertain and speculative total recovery against the defendants in this matter.

**2.   The Amount Paid In Settlement Is Reasonable.**

The amount to be paid by the BP Defendants in settlement is reasonable. As established above, there are substantial factual disputes surrounding the liability of the BP Defendants and the amount and recoverability of Plaintiff's damages. In view of these disputes of fact, Plaintiff has agreed to accept the consideration offered by the BP Defendants in exchange for dismissal of this action and a broad release covering all of the BP Defendants' sites in the City of Fresno.

(Cox Dec., ¶ 14.) The amount is nevertheless substantial, and Plaintiff's willingness to accept it from the BP Defendants provides strong evidence that the settlement amount is reasonable.

### 3.   Allocation Among Plaintiffs Does Not Apply To This Settlement.

Equitable allocation among party plaintiffs does not apply in this case because there is only one plaintiff party.

### 4.   The Settlement Amount Reflects The Policy That A Settlor Should Pay Less In Settlement Than If Liability Was Imposed After Trial.

A settling defendant should pay less in settlement than if the case went to trial and liability was imposed because settlement avoids the costs of discovery and other litigation expenses. *See Tech-Bilt*, 38 Cal. 3d at 499. Given the number of defendants, number of stations at issue, and flaws in the Plaintiff's damages claims against the BP Defendants, the settlement amount paid -- to the extent it might be less than the amount the BP Defendants could be ordered to pay after trial -- is appropriate.

### 5.   The Financial Condition And Insurance Limits Of The Settling Defendant Did Not Affect The Settlement Negotiations.

Neither the BP Defendants' financial condition, nor any insurance coverage limits, reduced the amount they agreed to pay in settlement. Therefore, this factor is not applicable.

### 6.   The Negotiations Between Plaintiff And The BP Defendants Did Not Involve Collusion, Fraud, Or Tortious Conduct.

Under California law, the court examines whether there was the "existence of collusion, fraud, or tortious conduct" in connection with the settlement agreement and/or whether the settlement agreement was "aimed to injure the interests of non-settling defendants." *Tech-Bilt, Inc.*, 38 Cal. 3d at 499. Here, the agreement involves the payment of a substantial sum in

settlement of a dispute between bona fide adversaries. The protracted settlement negotiations were conducted at arm's length, fairly, and in good faith. (Cox Dec., ¶ 13.) The settling parties achieved no tactical gain, but rather, simply resolved all of Plaintiff's claims against the BP Defendants and provided a large settlement credit/offset to the remaining defendants. (*Id.*) Furthermore, this settlement is not aimed at injuring the interests of any non-settling defendant or other person. (*Id.*) This settlement agreement is simply the result of the settling parties wishing to resolve their claims in a fair and expedient manner. (*Id.*)

### C.    Anyone Contesting The Good Faith Of A Settlement Bears The Burden Of Proof.

A person challenging the good faith of this settlement bears the burden of proving that the settlement is not in good faith. *See Tech-Bilt*, 38 Cal. 3d at 499-500; *see also* Cal. Civ. Proc. Code § 877.6(d). He or she must show that the settlement is "so far 'out of the ballpark' in relation to [the *Tech-Bilt*] factors as to be inconsistent with the equitable objectives of [Code of Civil Procedure § 877.6]." *Tech-Bilt*, 38 Cal. 3d at 499-500; *see Horton v. Superior Court*, 194 Cal. App. 3d 727, 735-36 (1987) [affirming good faith determination because a settlement amount of $50,000 was not "out of the ballpark" where the court estimated that the case was worth less than $150,000 and recognizing that a settling party should pay less in settlement]. Here, any challenge would be unwarranted, given the allegations, claims, and facts underlying this dispute and the settlement reached by the parties.

## V.    CONCLUSION

The BP Defendants and Plaintiff wish to bring a final resolution to all of Plaintiff's claims against the BP Defendants regarding alleged MTBE contamination of Plaintiff's well system and the groundwater from which that system draws. In order to achieve this, and for the

reasons set forth herein, the BP Defendants respectfully request that the Court find the settlement

to be a "good faith settlement" as provided in California Code of Civil Procedure §§ 877 and

877.6.

Dated:  January **4**, 2013                            ARNOLD & PORTER LLP


By: _Lawrence A. Cox_____
    LAWRENCE A. COX (Cal. SB 076140)
    ARNOLD & PORTER LLP
    777 S. Figueroa Street, 44th Floor
    Los Angeles, California 90017
    Telephone:  (213) 243-4000
    Attorneys for Defendants Atlantic Richfield
    Company, BP Products North America Inc.,
    and BP West Coast Products LLC

- 18 -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------  X
In re:  Methyl Tertiary Butyl Ether ("MTBE")    :      **Master File No. 1:00-1898**
Products Liability Litigation                              **MDL No. 1358 (SAS)**

                                                          :

This Document Relates To:                         :      The Honorable Shira A. Scheindlin

                                                          :

*City of Fresno v. Chevron U.S.A. Inc., et al.,*     :
**Case No. 04 Civ. 4973 (SAS)**

                                                          :

----------------------------------------  X

## CERTIFICATE OF SERVICE

William Costley, pursuant to 28 USC 1746, hereby declares under penalty of perjury, that

on 4th day of January, 2013, I caused to be served by electronic means upon all parties to the

above-referenced matter via LexisNexis File & Serve a true and correct copy of the following

document:

**BP DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR GOOD
FAITH SETTLEMENT DETERMINATION**

_____
William Costley