UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In Re: Methyl Tertiary Butyl Ether ("MTBE")         MDL 1358 (SAS)
Products Liability Litigation

**This Document Relates To:**

*City of Fresno v. Chevron U.S.A. Inc., et al.*
04 Civ. 04973

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT BASED ON THE STATUTE OF LIMITATIONS
<u>OR, ALTERNATIVELY, FOR LACK OF INJURY</u>**

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

II.   PLAINTIFF'S ALLEGATIONS AND UNDISPUTED FACTS .......................................4

      A.    Summary of the City's Allegations and the City's Site-Specific Expert's
            Opinions. .................................................................................................4

      B.    The City Learned of the Alleged Threat Posed by MTBE at Least by the
            Late 1990s. ...............................................................................................5

      C.    The City Had Actual Knowledge of the Investigation and Remediation
            Activities at the Sites. ................................................................................7

      D.    The City Also Had Constructive Knowledge of the Pre-October 2000
            MTBE Detections at the Sites. ....................................................................8

      E.    The Sites Had MTBE Detections in the Soil and Groundwater Prior to
            October 22, 2000. ......................................................................................9

III.  ARGUMENT ......................................................................................................11

      A.    Summary Judgment Standard ....................................................................11

      B.    The Statute of Limitations Bars the City's Claims for Strict Liability,
            Negligence, Trespass, and Nuisance. .........................................................11

            1.    The City's Claims Are Time-Barred at Sites that Had MTBE
                  Detections in the Groundwater At or Above Five PPB Before
                  October 22, 2000. ...........................................................................12

            2.    The City's Claims Are Either Time-Barred Or Non-Existent at Sites
                  that Have Never Had an MTBE Groundwater Detection. ......................17

            3.    Summary Judgment on the City's Entire Nuisance Claim is
                  Appropriate. ...................................................................................19

IV.   CONCLUSION ...................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aetna Cas. Sur. & Co. v. Aniero Concrete Co.*,
   404 F.3d 566 (2d Cir. 2005)................................................................11

*Anderson v. Liberty Lobby*,
   477 U.S. 242, 248 (1986)...................................................................11

*BellSouth Telecoms., Inc. v. W.R. Grace & Co.*,
   77 F.3d 603 (2d Cir. 1996)................................................................11

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986).........................................................................11

*Gayle v. Gonyea*,
   313 F.3d 677 (2d Cir. 2002)..............................................................11

*In re MTBE Prods. Liab. Litig.*,
   676 F. Supp. 2d 139 (S.D.N.Y. 2009)........................................ passim

*In re MTBE Prods. Liab. Litig.*,
   457 F. Supp. 2d 455 (S.D.N.Y. 2006)..........................................14, 15

*In re MTBE Prods. Liab. Litig.*,
   475 F. Supp. 2d 286 (S.D.N.Y. 2006)................................................12

*In re MTBE Prods. Liab. Litig.*,
   824 F. Supp. 2d 524 (S.D.N.Y. 2011)................................................19

*Sinai Temple v. Kaplan*,
   54 Cal.App.3d 1103, 1113 (1976))....................................................18

*Vaca v. Wachovia Mortg. Corp.*,
   129 Cal.Rptr.3d 354 (4th Dist. 2011) ................................................18

STATUTES AND REGULATIONS

FED. R. CIV. P. 56.................................................................... passim

CAL. CIV. PROC. CODE § 338(b)...............................................3, 11

CAL. CODE CIV. PROC. § 312 .........................................................1

CAL. CODE REGS. tit. 13, § 2273 (1999) ........................................7

CAL. CODE REGS. tit. 22 § 64449 (1999) ........................................7

CAL. WATER CODE § 13272.1 .........................................................7

California Public Records Act (CAL. GOV'T CODE §§ 6250-6276.48, 6252(a), (d), (f),
   6253, 6253.4) ...............................................................................9

I.      **INTRODUCTION**

Based on the undisputed facts, the City of Fresno's ("the City") claims at five stations

accrued outside of the limitations period pursuant to the Court's clear ruling in *Orange County*

*Water District v. Unocal Corp., et al*. In that case, the Court held that a claim for MTBE impact

accrues when "MTBE [is] detected in monitoring wells at levels at or above five ppb." *In re*

*MTBE Prods. Liab. Litig. ("OCWD")*, 676 F. Supp. 2d 139, 154 (S.D.N.Y. 2009). *OCWD* was

one of four focus cases in this MDL (*see* CMO No. 4), the purpose of which was to establish the

legal principles that would govern following cases. *OCWD* was the only California focus case,

and the Court's limitations holding applies squarely to the five sites[1] in this California case that

undisputedly had MTBE detections above five ppb in groundwater monitoring wells prior to the

limitations date of October 22, 2000.[2]

The City's attempts to distinguish the Court's ruling in *OCWD* fail. As described below,

the City and OCWD both claim to be charged with protecting the groundwater, both knew of the

alleged issues with MTBE in the 1990s, both assert claims based on their alleged usufructuary

property rights, and both seek the same damages—investigation and cleanup costs—based on

alleged powers to protect groundwater. Thus, the Court's prior ruling applies with equal force

here.

The City has previously argued that its claims did not accrue until it had minute

detections of MTBE in its wells. But the Court rejected similar arguments by OCWD, which

---

[1]     The five sites that had an MTBE groundwater detection of five ppb or higher before the
limitations date are: (1) Chevron #9-4374, 1160 Fresno Street; (2) Gilbert's Exxon, 4142 East
Church; (3) Chevron #9-9093, 3996 N. Parkway Drive; (4) Tosco #39118, 1605 N. Cedar; and
(5) 7-Eleven #13917, 3645 E. Olive Avenue.

[2]     The City filed its original Complaint in this case on October 22, 2003; therefore, its
claims that accrued before October 22, 2000 are time-barred. *See* CAL. CODE CIV. PROC. § 312;
*OCWD,* 676 F. Supp. 2d at 145.

1

argued that its claims too accrued when MTBE left a site and was detected in offsite wells. *See* *OCWD*, 676 F. Supp. 2d at 147-48 & n.44. Tellingly, the City has not offered any expert opinions even attempting to trace the minute and fleeting historical detections of MTBE in a few of its drinking water wells to any of these stations, nor are there any expert predictions that the MTBE from these stations will impact any particular drinking water well in the future. As a result, the City is not seeking costs to treat its drinking water wells for MTBE. Detections in its wells are simply irrelevant to the case it has pursued. The City bases its claim for damages on future investigation costs (and potentially additional remediation) at each gasoline station site based on the detections in groundwater at monitoring wells *at the sites*. It is undisputed that each of the five stations had detections above five ppb outside the limitations period; therefore, the City's claims are time-barred as to these sites.

With respect to the remaining four sites at issue in this Motion,[3] the claims are either time-barred or do not exist. In either case, they should be dismissed. None of these sites ever had a detection of MTBE in groundwater. At three of the sites, however, there were MTBE detections in the soil well before October 22, 2000. A facially similar—but materially distinguishable—situation was involved at one station in *OCWD* that only had soil detections outside the limitations period. With respect to that station, the Court held that "[t]he detection of MTBE in soil does not show conclusively that groundwater was contaminated." *OCWD*, 676 F. Supp. 2d at 150 n.59. But in *OCWD*, the plaintiff retained a modeling expert to predict that MTBE from the station would impact drinking water wells in the future. Here, the City's claim that further investigation and potentially remediation is necessary at these three sites rests solely

---

[3]   (1) Tosco #30587, 1610 N. Palm; (2) Beacon-Arco #615, 1625 Chestnut Avenue; (3) Valley Gas, 2139 South Elm Street; and (4) Unocal #6353, 1418 E. Shaw.

on these soil detections.[4]  Unlike in *OCWD*, the City has not retained a modeling expert to

predict that MTBE from these stations will impact any wells in the future.  The City's only

evidence that groundwater may be impacted at these sites are the soil detections.  These

detections existed in public records outside of the limitations period and therefore, if they give

rise to a claim, they are time barred.  If they do not, then there is no injury and no viable claims

at these sites, or alternatively, the claims at these sites are not ripe.  Therefore, the Court should

dismiss these stations from the case.

The last site at issue in this Motion (Unocal #6353) has not had an MTBE detection in

either soil or groundwater.  Thus, there is no evidence that Fresno has suffered any injury at it.

Indeed, soil and groundwater testing occurred previously at the site, but MTBE was not detected.

At a minimum, the claims at this site have not accrued.  But if a claim has accrued, then it had to

accrue in 1994 when the gasoline release occurred at this site and was reported.  Thus, it too is

time-barred.

Defendants therefore move for summary judgment at each of the nine sites identified

below (the "Sites") on the City's first, second, and fourth claims for relief (strict liability,

negligence, and nuisance) because those claims are barred by the three-year statute of

limitations.  CAL. CIV. PROC. CODE § 338(b).  The undisputed facts demonstrate that prior to

October 22, 2000, the City had actual or constructive knowledge of the facts that the City asserts

---

[4]   *See, e.g.,* Defendants' Rule 56.1 Statement ("Rule 56.1 St.") ¶ 66 (D. Norman Expert
Report) ("It is my opinion that based on the lack of a groundwater assessment at [Tosco #30587]
and the detections of TPHg and MTBE in site soils, that significant data gaps exists concerning
the potential for a groundwater impact and a migrating MTBE plume. . . Therefore, it is
recommended that four monitoring wells be installed to evaluate the depth to groundwater[.]").

give rise to each of these claims at each of these sites. Alternatively, at the sites with no

groundwater detections, the undisputed facts show that the City has not been injured at all.[5]

## II.     PLAINTIFF'S ALLEGATIONS AND UNDISPUTED FACTS

### A.     Summary of the City's Allegations and the City's Site-Specific Expert's Opinions.

The City filed this lawsuit on October 22, 2003 and a First Amended Complaint on

October 28, 2004. (Rule 56.1 St. ¶¶ 1, 2.) The First Amended Complaint seeks to recover

damages "to remove MTBE and TBA pollution from the public drinking water supplies, to

restore the reliability of Fresno's water system and drinking water supply, [and] to abate MTBE

and TBA plumes." First Am. Compl. ¶ 3.[6] The City, however, has not had a single detection of

MTBE in its drinking water wells since February 2011. (Rule 56.1 St. ¶ 8.) And even its

historical detections have been at trace levels, the vast majority below 0.5 ppb.[7] These past

levels are substantially below California's Primary Maximum Contaminant Level ("MCL") of

thirteen ppb (health based) and even its Secondary MCL of five ppb (aesthetic based). Likely for

this reason, the City and its experts have not identified any past or future costs associated with

removing MTBE and TBA from the City's drinking water wells.[8] (Rule 56.1 St. ¶ 6 .)

Instead, the City claims it is seeking money to abate the alleged MTBE plumes at the

Sites because it alleges that they threaten or have impacted the "water system." First Am.

---

[5]    Mindful of the Court's prior rulings, Defendants are *not* seeking summary judgment based on the statute of limitations as to the eleven sites that allegedly had the first detection of MTBE in groundwater above five ppb after the limitations date. *See OCWD*, 676 F. Supp. 2d at 153.

[6]    Docket Entry No. 4 (Case No. 04-CV-4973-SAS).

[7]    It has been more than three years since MTBE was detected in any of the City's supply wells at or above 0.5 ppb. (Rule 56.1 St. ¶ 8.) Over the last ten years, the single highest detection of MTBE in any of the City's wells was 1.2 ppb on or around October 23, 2008. (Rule 56.1 St. ¶ 8.)

[8]    The City has also never reduced pumping for any of its wells due to MTBE or TBA. (Rule 56.1 St. ¶ 9.)

Compl. ¶¶ 2-3.  The City, however, concedes that it does not know whether additional remedial work is even needed at these sites or, if it is needed, what it would take to abate the alleged impact at the Sites.  (Rule 56.1 St. ¶ 7 (D. Norman Expert Dep. (4/18/12) at 29:16 – 30:01 (testifying that he is unable to say what additional remediation work, if any, will be needed at a site until after the investigation activities he suggests occur)).)  The City's expert, David Norman, has opined that it will cost between $23,000 and $135,000 to conduct an initial round of assessment at each of the Sites simply to determine whether any remediation is even needed at them.  (Rule 56.1 St. ¶¶ 4, 7.)  He did not opine on the future cost of remediation at any Site, and he testified that, until his initial assessment is performed, it is not possible for him to determine abatement costs or even to say for certain that abatement is possible or needed.  (*See, e.g.,* Rule 56.1 St. ¶ 7.)  Mr. Norman also acknowledges that he has not done a site-specific fate and transport analysis and cannot offer an opinion regarding whether any specific site has impacted or will impact any specific well.  (Rule 56.1 St. ¶ 7.)

### B.   The City Learned of the Alleged Threat Posed by MTBE at Least by the Late 1990s.

As documented below, the City knew at least by the late 1990s that:

(1)     MTBE had been released from gasoline stations in Fresno;

(2)     MTBE had impacted groundwater at many of the Sites at concentrations above five ppb;

(3)     MTBE potentially threatened the City's drinking water wells; and

(4)     MTBE had the characteristics and properties that the City now claims make it different from other components of gasoline and render it a "defective product."

Bob Little, the City's Water Production Supervisor in the late 1990s, and Martin McIntyre, the City's Water Systems Manager in the late 1990s, both testified that by the late 1990s the City believed that releases of gasoline containing MTBE from underground storage

tanks posed a threat to the City's groundwater at that time. (Rule 56.1 St. ¶ 12.) Their

recollections are consistent with the documents in the City's files. For example, on April 15,

1997, the California Department of Health Services sent Mr. McIntyre, in his capacity as the

City's Water Systems Manger, an advisory letter which informed the City that "the potential for

soil and groundwater contamination by MTBE has increased," the problem "appears to be more

wide-spread than previously thought," "MTBE moves faster through soil than other products in

gasoline," and "wells close to any gasoline station are also considered vulnerable even if the

storage tanks at the station have not been identified as failing." (Rule 56.1 St. ¶ 14.)

Beginning at least as early as 1998, Mr. McIntyre participated in the Association of

California Water Agencies' MTBE Work Group. (Rule 56.1 St. ¶ 16.) Similarly, the City

participated in a June 3-4, 1998 Southwest Ground Water Conference held in Anaheim,

California, that focused on and provided extensive information concerning the potential threat

that MTBE posed to groundwater. (Rule 56.1 St. ¶ 17.)    A week later, on June 11, 1998, the

University of California's Lawrence Livermore National Laboratory submitted a report to the

California State Water Resources Control Board, entitled "An Evaluation of MTBE Impacts to

California Groundwater Resources," a copy of which was produced from the City's files and

which contains information regarding the alleged threat that MTBE posed to groundwater

resources in the State of California. (Rule 56.1 St. ¶ 18.)

By no later than October 1998, the Central Valley Regional Water Quality Control Board

("Regional Board") began sending quarterly reports containing a list of reported MTBE releases

in the Central Valley region to public water system operators in their jurisdiction, including the

City, identifying the locations in the Central Valley region (including the City of Fresno) where

MTBE had been reported and whether the release site was classified as a "GW" (groundwater) or

"SOIL" (soil only) site.  (Rule 56.1 St. ¶¶ 19, 20.) *See* CAL. WATER CODE § 13272.1.  The

quarterly reports that the Regional Board sent to the City beginning in 1998 specifically

identified several of the Sites (*e.g.*, 1160 Fresno St., 3996 Parkway, 3645 E. Olive Ave, and 1605

N. Cedar) and indicated that the MTBE reportedly released at the Sites had impacted

groundwater at levels above five ppb.  (Rule 56.1 St. ¶ 21.)

      MTBE was also a hotly discussed political issue by the late 1990s.  On March 25, 1999,

California Governor Gray Davis issued an executive order phasing out MTBE in gasoline in

California, stating that "while MTBE has provided California with clean air benefits, because of

leaking underground fuel storage tanks, MTBE poses an environmental threat to groundwater

and drinking water."  (Rule 56.1 St. ¶ 25.)  Also, as of 1999, all gasoline stations that sold

gasoline containing MTBE were required to put a notice on their pumps stating that, "[t]he State

of California has determined that the use of this chemical presents a significant risk to the

environment."  CAL. CODE REGS. tit. 13, § 2273 (1999).  In addition, in 1999, the California

Department of Health Services set the Secondary MCL for MTBE at five ppb to protect the

water's aesthetics.  CAL. CODE REGS. tit. 22 § 64449 (1999).

      In short, the City was well aware by at least the late 1990s of the alleged threat that

MTBE poses to groundwater.

### C.    The City Had Actual Knowledge of the Investigation and Remediation Activities at the Sites.

      Since at least 1994, the City has regulated the installation, use, and destruction of all

groundwater monitoring wells in the City of Fresno by a permit process. (Rule 56.1 St. ¶ 28.)

Thus, for those Sites that had groundwater monitoring wells, the City had direct knowledge that

the site was being investigated for environmental impact.[9]  Moreover, during the relevant time

period, the City's well permitting process required that "if the analytical results indicate no

evidence of any environmental impact at the location of the well, the well shall be destroyed to

ensure the quality of ground water is protected." (Rule 56.1 St. ¶ 29.)   Accordingly, to ensure

the quality of groundwater, the City's policy required it to assess the "analytical results" at each

Site that had at least one groundwater monitoring well and to make a determination regarding

"any environmental impact at the location of the well." (Rule 56.1 St. ¶ 29.)

Similarly, as noted above, beginning in 1998 the quarterly reports that the Regional

Board sent to the City specifically identified several of the Sites and indicated that the MTBE

reportedly released at the Sites had impacted groundwater at levels above five ppb (e.g., 1160

Fresno St., 3996 Parkway, 3645 Olive Ave, and 1605 N. Cedar). (Rule 56.1 St. ¶¶ 19, 20, 21.)

### D.   The City Also Had Constructive Knowledge of the Pre-October 2000 MTBE Detections at the Sites.

The City also had constructive knowledge of the pre-October 22, 2000 detections at the

Sites because it could have discovered this information through the investigation of additional

sources open to the City.  In particular, the site investigation and remediation reports and site-

specific MTBE detection data cited in this Motion were publicly available at all relevant times

because they were maintained by the Regional Board and/or the Fresno County Department of

Environmental Health.[10] (Rule 56.1 St. ¶¶ 23, 24.)  By law, the site investigation and

---

[9]   Six sites had monitoring wells before October 2000:  (1) Chevron #9-4374, 1160 Fresno
Street; (2) Gilbert's Exxon, 4142 East Church; (3) Chevron #9-9093, 3996 N. Parkway Drive;
(4) Tosco #39118, 1605 N. Cedar; (5) 7-Eleven #13917, 3645 E. Olive Avenue; and (6) Unocal
6353, 1418 E. Shaw.  (Rule 56.1 St. ¶ 22.)

[10]   Documents attached to the J. Anderson Declaration (submitted with this Motion) with the
bates-prefix FCDEH-FRESNO and RWQCB-FRESNO were produced by the Fresno County
Department of Environmental Health and Regional Water Quality Control Board, respectively.

remediation files held by the Regional Board and Fresno County Department of Environmental Health were a matter of public record at all relevant times.  California Public Records Act (CAL. GOV'T CODE §§ 6250-6276.48, 6252(a), (d), (f), 6253, 6253.4).

The Court has already held that a plaintiff charged with protecting the drinking water, like the City, and with extensive knowledge about MTBE, again like the City, has a duty to review publicly available files to determine if MTBE has impacted the groundwater at any sites in its service area:

> OCWD's general knowledge about MTBE contamination within its district was summarized in my 2006 SOL Opinion.  Importantly, prior to 2000, OCWD had general information both that MTBE was an undesirable contaminant and that there was a threat that MTBE might contaminate significant portions of the groundwater within its district. Given this knowledge, OCWD had the duty to inquire into the possibility of MTBE contamination at the specific sites at issue in this case.  This included the duty to search the public files to which it had access.

*OCWD*, 676 F. Supp. 2d at 151.

### E.   The Sites Had MTBE Detections in the Soil and Groundwater Prior to October 22, 2000.

Eight of the Sites had detections of MTBE prior to October 22, 2000—five Sites had detections in groundwater before then, and three Sites had detections in soil before then (but *never* any detections in groundwater).  The remaining Site has never had a detection of MTBE in groundwater or soil.  The charts below include the detection information for each of the Sites:[11]

---

Notably, these entities produced many of reports and data cited in the Motion in response to Public Records Act requests issued by Plaintiff and/or Defendants.  (Rule 56.1 St. ¶ 30.)

[11]  Should the claims at any of the Sites proceed to the merits, Defendants reserve the right to dispute the validity of the MTBE detections at the Sites, but for purposes of the present motion, they are assumed to be true.

**Stations with MTBE Detections in Groundwater Before October 22, 2000**

| Station Name and Address | Date of First MTBE Detection in Groundwater and Amount Detected |
|---|---|
| Chevron #9-4374<br>1160 Fresno Street | July 2, 1996 (93 ppb) (Rule 56.1 St. ¶ 32) |
| Gilbert's Exxon<br>4142 East Church | July 12, 2000 (15 ppb) (Rule 56.1 St. ¶ 42) |
| Chevron #9-9093<br>3996 N. Parkway Drive | January 13, 1997 (64 ppb) (Rule 56.1 St. ¶ 45) |
| Tosco #39118<br>1605 N. Cedar Avenue | January 1999 (20,000 ppb) (Rule 56.1 St. ¶ 51) |
| 7-Eleven #13917<br>3645 Olive Avenue | May 14, 1996 (13 ppb) (Rule 56.1 St. ¶ 55) |

**Stations with No MTBE Detections in Groundwater,
But MTBE Detections in Soil Before October 22, 2000**

| Station Name and Address | Date of First MTBE Detection in Soil and Amount Detected | No MTBE Detection in Groundwater |
|---|---|---|
| Tosco #30587<br>1610 N. Palm Avenue | September 20, 1997 (2,500 ppb) (Rule 56.1 St. ¶ 63) | (Rule 56.1 St. ¶ 62) |
| Valley Gas<br>2139 South Elm Street | November 5, 1998 (920 mg/kg) (920,000 ppb)[12] (Rule 56.1 St. ¶ 68) | (Rule 56.1 St. ¶ 67) |
| Beacon-Arco #615<br>1625 Chestnut Avenue | June 11, 1998 (81 mg/kg) (81,000 ppb) (Rule 56.1 St. ¶ 81) | (Rule 56.1 St. ¶ 69) |

**Station with No MTBE Detections in Groundwater or Soil**

| Station Name and Address | No MTBE Detection in Groundwater | No MTBE Detection in Soil |
|---|---|---|
| Unocal #6353<br>1418 E. Shaw | (Rule 56.1 St. ¶ 72) | (Rule 56.1 St. ¶ 72) |

---

[12] Certain measurements of chemical concentrations in soil are not directly convertible to concentrations in water due to the different medium.

10

### III.   ARGUMENT

#### A.   Summary Judgment Standard

Summary judgment should be granted where a moving party shows the absence of

"genuine issues" as to any material fact and that it is entitled to judgment as a matter of law.

FED. R. CIV. P. 56(a), (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Summary

judgment may dispose of the entire case, or part of a claim or defense.  FED. R. CIV. P. 56(a).  To

avoid summary judgment, "the party resisting summary judgment must show a dispute of fact,"

which "must also be a material fact in light of the substantive law.  'Only disputes over facts that

might affect the outcome of the suit under the governing law will properly preclude the entry of

summary judgment.'"  *Aetna Cas. Sur. & Co. v. Aniero Concrete Co.*, 404 F.3d 566, 574 (2d Cir.

2005) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).  "An issue of fact is

'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the non-moving

party.'"  *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson*, 477 U.S. at 248).

If there are no fact disputes about when the limitations period began to run, the defense of

limitations is appropriate for summary judgment.  *BellSouth Telecoms., Inc. v. W.R. Grace &*

*Co.*, 77 F.3d 603, 609 (2d Cir. 1996).

#### B.   The Statute of Limitations Bars the City's Claims for Strict Liability, Negligence, and Nuisance.

The City's strict liability, negligence, and nuisance claims are for property damage (as

opposed to personal injury), and are thus subject to a three-year limitations period under

California law.  CAL. CIV. PROC. CODE§ 338(b); *OCWD*, 676 F. Supp. 2d at 145.  This Court has

already provided a detailed analysis of how California's statute of limitations operates:

> Because OCWD's claims arise under California law, they are governed by the
> three-year statute of limitations found in section 338 of the California Code of
> Civil Procedure.  The limitations period begins running when a plaintiff's cause

of action accrues. In California, a plaintiff will be deemed to have suffered injury
sufficient to give rise to a cause of action when it has suffered some "appreciable
and actual harm." "In an action involving tortious injury to property," such as
trespass or nuisance, the relevant injury is "harm to the property itself." Although
the harm incurred must be more than nominal, a plaintiff need not have
ascertained the full scope of its injury and "neither the speculative nor uncertain
character of the damages nor the difficulty of proof will toll the period of
limitation."

However, the limitation period may be tolled by the discovery rule, under which a
cause of action will not accrue until a plaintiff either actually discovers its injury
or should have discovered its injury "through the exercise of reasonable
diligence." In determining whether a plaintiff has or should have discovered its
injury California courts consider both the plaintiffs "actual knowledge as well as
knowledge that could reasonably be discovered through the investigation of
sources open to [the plaintiff]." Generally, a plaintiff "need not be aware of the
specific 'facts' necessary to establish the claim," and once a plaintiff "has a
suspicion of wrongdoing" it will be deemed to have discovered its injury.

*OCWD*, 676 F. Supp. 2d at 145-46 (internal citation omitted).

> ### 1. The City's Claims Are Time-Barred at Sites that Had MTBE Detections in the Groundwater At or Above Five PPB Before October 22, 2000.

The Court in *OCWD* already determined that property claims related to MTBE impact,

like those here, accrue when MTBE is detected at a site in a groundwater monitoring well at or

above the secondary MCL of five ppb. *See OCWD*, 676 F. Supp. 2d at 146-47. The similarities

between the facts and allegations in *OCWD* and this case are striking and unavoidable. For

example, OCWD was well aware of the alleged harmful properties of MTBE in the 1990s, just

like the City here. *See In re MTBE Prods. Liab. Litig.*, 475 F. Supp. 2d 286, 288-90 (S.D.N.Y.

2006) (detailing OCWD's knowledge of MTBE). And as in *OCWD*, the City's claims concern

MTBE impact around former gasoline stations. *See, e.g.,* OCWD Third Am. Compl. ¶¶ 2, 34,

45;[13] Fresno First Am. Compl. ¶¶ 25, 32, 50.[14] The City seeks future costs to investigate MTBE

---

[13] Docket Entry No. 1766 (Case No. 00-CV-1898-SAS).

[14] Docket Entry No. 4 (Case No. 04-CV-4973-SAS).

impact at former release sites, not wellhead treatment costs, just like OCWD. (*Compare* Rule 56.1 St. ¶ 5(OCWD damages) *with* Rule 56.1 St. ¶ 6 (Fresno damages).) Additionally, both OCWD and the City allege that they are charged with protecting the drinking water in their territory, and both assert common law claims based on their alleged usufructuary property rights. OCWD Third Am. Compl. ¶¶ 3-5, 72, 85, 90, 97; Fresno First Am. Compl. ¶¶ 3-4, 78, 91, 98, 105. The Court's opinion in *OCWD* is clearly on all fours with the facts and allegations here and therefore is controlling with respect to the Sites at which there were pre-October 2000 MTBE detections above five ppb at groundwater monitoring wells.[15]

The City cannot distinguish *OCWD*, and its counsel's attempts to do so at the pre-motion hearing are easily dismissed:

| The City's Argument | Response |
|---|---|
| This case involves "a different type of claim." Pre-Motion Trans. (1/11/13) at 48:19. | Both *OCWD* and this case concern strict liability, negligence, and nuisance claims based on the plaintiff's alleged usufructuary property rights. *See OCWD*, 676 F. Supp. 2d at 146 n.40. |
| "Fresno is claiming its wells have detections of MTBE." Pre-Motion Trans. (1/11/13) at 48:20-21. "[T]he trigger here is detection in a well." Pre-Motion Trans. (1/11/13) at 48:25. | Like the City, OCWD claimed injury "as a result of MTBE and/or TBA contamination and threat of contamination in water supply wells." OCWD Third Am. Compl. at ¶ 5.[16] |

---

[15]   If anything, a more stringent standard should apply to the City than the plaintiff in *OCWD* because the City has direct responsibility for the production and supply of groundwater in its jurisdiction, whereas OCWD is a "special water agency" that does not produce and serve groundwater to the public (although OCWD does claim to have usufructuary rights).

[16]   At the pre-motion hearing, the City's counsel claimed that the City's drinking water wells currently had low level detections of MTBE, but that Defendants disputed whether those were real detections. Pre-Motion Trans. (1/11/13) at 51:15 - 52:7. While Defendants do dispute the validity of the ultra-low level testing employed by the City's litigation experts, the City's attorney misrepresented to the Court that such low-level detections currently exist. In fact, the City has not had a detection of MTBE in its drinking water wells at any level since February 2011. (Rule 56.1 St. ¶ 8.)

13

| *The City's Argument* | *Response* |
|---|---|
| In the City's case, detections above five ppb in groundwater monitoring wells at the stations are irrelevant to accrual. Pre-Motion Trans. (1/11/13) at 49:10-16. | OCWD likewise claimed that basing accrual on detections of five ppb in the monitoring wells at the sites was "contrary to common sense [and] the statute of limitations." OCWD Supp. Opp. Br. at 4 (Mar. 28, 2008).[17] |
| The City was not injured until MTBE was detected in a monitoring well installed by the City. Pre-Motion Trans. (1/11/13) at 49:24-50:11, 54:23-55:02. | OCWD argued that it was not injured until MTBE escaped remediation and that when "MTBE is detected in a . . . monitoring well installed by OCWD . . . there is no doubt that MTBE has escaped remediation." OCWD Supp. Opp. at 17 (Mar. 28, 2008). |
| "The City doesn't get a copy of the monitoring-well data[,] [u]nlike Orange County Water District . . . ." Pre-Motion Trans. (1/11/13) at 55:18-56:4. | OCWD argued that information regarding MTBE detections was not reported directly to it, but rather sent to either the Regional Board or the Orange County Health Care Agency. OCWD Further Supp. Opp. at 22 (June 3, 2009).[18] It also argued that "it cannot reasonably monitor" the "voluminous" public files containing data of MTBE detections. *Id.* The Court rejected this argument, holding that the investigative reports were public records putting OCWD on presumptive notice. *OCWD*, 676 F. Supp. 2d at 151. |
| "[T]he City is talking about protecting its own drinking water wells, which have detections of MTBE." Pre-Motion Trans. (1/11/13) at 56:19-21. | The Court held in an earlier opinion that OCWD was prosecuting its common law claims based on its usufructuary rights, again, just like the City here. *In re MTBE Prods. Liab. Litig.*, 457 F. Supp. 2d 455, 461 (S.D.N.Y. 2006); *see also OCWD*, 676 F. Supp. 2d at 146 n.40 (stating that OCWD's common law claims were based on its alleged usufructuary rights). |

Similarly, the City failed to distinguish *OCWD* in its pre-motion letter. There, the City

argued that *OCWD* is distinguishable because OCWD is not a water provider like the City, Pre-

---

[17]   Docket Entry No. 1772 (Case No. 00-CV-1898-SAS).

[18]   Docket Entry No. 101 (Case No. 04-CV-4968-SAS).

motion Ltr. (12/21/12) at 3, but this is a distinction without a difference.  As stated above, this Court found that OCWD's common law claims were based on its usufructuary rights, which are the same type of rights at issue here. *See In re MTBE*, 457 F. Supp. 2d at 461; *see also OCWD*, 676 F. Supp. 2d at 146 n.40 (OCWD's common law claims based on its alleged usufructuary rights).  This should end the inquiry.  Furthermore, the remedy the City seeks is not based on its role as a water provider.  It is not seeking damages for wellhead treatment, replacement water, drilling new production wells, or other types of damages for providing clean water to its customers. (Rule 56.1 St. ¶ 6.)  Instead, the City seeks only investigation costs at the gasoline station Sites, claiming it has the authority to investigate and clean up release sites.  (Rule 56.1 St. ¶ 6.)  Because it can only enter sites and clean them up—if at all—based on its alleged police powers, it can only be suing Defendants based on such powers, not based on its role as a water provider.  OCWD sued the defendants in *OCWD* based on analogous powers in the OCWD Act. Whether OCWD was a drinking water provider is of no consequence to the Court's analysis. The City simply cannot credibly distinguish this Court's prior holding in *OCWD* from the facts and circumstances here.

The City is really asking the Court for a do-over.  It urges the Court to re-tread old ground, reverse the Court's ruling in *OCWD*, and create a new standard.  Based on its pre-motion letter, it wants the Court to hold that accrual does not occur until a drinking water well (or a monitoring well associated with a drinking water well) has a detection of MTBE, which here it claims occurred in November 2001 when MTBE was detected in Well 318.  Pre-motion Ltr. (12/21/12) at 2.  As described in the chart above, this is the same argument that OCWD (represented by the same attorneys) made and the Court rejected.  The Court need not reconsider that ruling now because its reasoning is equally sound here, as discussed above.

15

As the Court noted in *OCWD,* the limitations period begins to run upon injury to the property at issue. *OCWD,* 676 F. Supp. 2d at 146 ("OCWD was appreciably harmed when the property in which it had an interest was appreciably harmed."). The property at issue here is the groundwater beneath the site. It is this groundwater that the City seeks to investigate and potentially remediate. Indeed, its alleged damages are based entirely on the historical groundwater detections *at the sites*, not on the historical trace detections of MTBE in drinking water wells. The City has no MTBE in its production wells currently, nor can it tie the historical low-level detections in its production wells to any of the sites at issue. Clearly, the only groundwater at issue is that beneath the sites. Injury to that property was publicly evident when detections at or above five ppb were discovered and reported. Those are the relevant detections, as the Court previously held. Detections at some distant well are irrelevant, as the Court too has already held.

The undisputed facts show that MTBE was detected at or above five ppb in a monitoring well at the following five Sites before October 22, 2000:

(1) Chevron #9-4374, 1160 Fresno Street (Rule 56.1 St. ¶ 32);

(2) Gilbert's Exxon, 4142 East Church (Rule 56.1 St. ¶ 42);

(3) Chevron #9-9093, 3996 N. Parkway Drive (Rule 56.1 St. ¶ 45);

(4) Tosco #39118, 1605 N. Cedar (Rule 56.1 St. ¶ 51); and

(5) 7-Eleven #13917, 3645 E. Olive Avenue (Rule 56.1 St. ¶ 55).

Applying the straightforward standard announced in *OCWD*, summary judgment in Defendants' favor is appropriate at these Sites.

16

##### 2.    *The City's Claims Are Either Time-Barred Or Non-Existent at Sites that Have Never Had an MTBE Groundwater Detection.*

For similar reasons, the claims at the three Sites with only soil MTBE detections before

October 22, 2000 are also time-barred.  Because there are no detections of MTBE in

groundwater—neither in drinking water wells nor monitoring wells associated with these Sites—

accrual must be based on the soil detections.  At each of these Sites, the first soil detections

occurred before October 22, 2000.  Alternatively, if soil detections are insufficient for accrual,

then the City has no viable claims at these Sites.  With respect to the last station, Unocal #6353,

there have been no detections of MTBE in the soil *or* groundwater, so the City has no viable

claims at this Site either.  Alternatively, if the claims have accrued, then they are time barred

because the only gasoline release at this Site occurred in 1994.

The Court in *OCWD* addressed one site that had only soil detections of MTBE before the

limitations period began, and held that the claims at that site were not time-barred.  *OCWD*, 676

F. Supp. 2d at 150.  The Court reasoned that "[t]he detection of MTBE in soil does not show

conclusively that groundwater was contaminated."  *OCWD*, 676 F. Supp. 2d at 150 n.59.

In this respect, however, *OCWD* is distinguishable.  In *OCWD*, the plaintiff argued that

it was appreciably harmed at such a site "when MTBE was first detected in a drinking water

production well associated with a station."  *Id.*  The Court held that there was a triable issue of

fact as to whether the plaintiff should have realized its water was adversely affected when it

learned of detections in production wells associated with the sites before the limitations cutoff.

*Id.*  Importantly, discovery was still open when the Court made its ruling in *OCWD*.

Here, unlike *OCWD,* fact and expert discovery are now over.  The City failed to

designate a modeling expert, unlike the plaintiff in *OCWD*, so there is no evidence that MTBE

from a particular station has impacted or will impact any of the City's wells. (Rule 56.1 St. ¶ 5,

6.)  Similarly, there will be no more proof of whether MTBE at these stations even reached groundwater.  Indeed, the City acknowledges the lack of evidence that groundwater has been impacted from MTBE at these sites, but nevertheless claims additional investigation is needed based only on the soil detections.  (*See, e.g.,* Rule 56.1 St. ¶ 66.)  These soil detections existed outside the limitations period.  If they are sufficient for a jury to conclude that the City is more likely than not injured—*i.e.*, that MTBE reached groundwater at an appreciable level to create harm—then they are sufficient for accrual. *See Vaca v. Wachovia Mortg. Corp.*, 129 Cal.Rptr.3d 354, 357 (4th Dist. 2011) (statute of limitations usually commences when a cause of action "accrues," and generally, an action accrues on the date of injury); *see also OCWD*, 676 F. Supp. 2d at 145.  Alternatively, if they are insufficient to establish injury for purposes of accrual, then the City either has no viable claim or there is not sufficient injury or harm to prevent summary judgment. *See, generally, Sinai Temple v. Kaplan*, 54 Cal.App.3d 1103, 1113 (1976) (in California, harm or injury to the plaintiff is an essential element of a ripe cause of action). Regardless of the reasoning, these sites should not be part of this case.

At each of the following Sites, the undisputed evidence establishes MTBE was detected in the soil before October 22, 2000 (and publicly reported) and there has never been MTBE detected in groundwater at these Sites:

(1) Tosco #30587, 1610 N. Palm (Rule 56.1 St. ¶ 63);

(2) Valley Gas, 2139 South Elm Street (Rule 56.1 St. ¶ 68); and

(3) Beacon-Arco #615, 1625 Chestnut Avenue (Rule 56.1 St. ¶ 81).

As a result, the City's claims at these Sites are time-barred as well.  Alternatively, the City has no viable claims at these Sites, or there is no evidence of injury, and dismissal of all claims is proper.

With respect to the remaining Site, Unocal #6353 at 1418 E. Shaw, the City has no viable claims because MTBE has never been detected in groundwater or soil. (Rule 56.1 St. ¶ 72.) Importantly, both soil and groundwater testing have occurred at the Site, but no MTBE has been detected. (Rule 56.1 St. ¶ 74, 77.) There is simply not a claim at this Site. Alternatively, to the extent that the claims at this Site have accrued, then they must have accrued at the time of the gasoline release at this Site, June 21, 1994 (which was publicly reported), because there is no other possible accrual trigger. (Rule 56.1 St. ¶ 75.) *See OCWD*, 676 F. Supp. 2d at 145. As a result, if the claims at this Site have accrued at all, then they are time barred.

### 3.     *Summary Judgment on the City's Entire Nuisance Claim is Appropriate.*

The City may argue that Defendants cannot obtain summary judgment of its entire nuisance claim because it can pursue a "continuing nuisance" claim. But to recover for continuing nuisance, the City must show that the alleged nuisance can be remediated for reasonable costs. *See In re MTBE Prods. Liab. Litig.*, 824 F. Supp. 2d 524, 545 (S.D.N.Y. 2011) (indicating "expert reports demonstrating that the groundwater contamination can be remedied at a reasonable cost by reasonable means" are necessary to recover for continuing nuisance). Here, it is undisputed the City lacks any evidence indicating that the impact can be remediated for a reasonable price.[19] To the contrary, the City's remediation expert testified that he lacked sufficient information to recommend remediation at any of the Sites, and therefore he cannot state whether future remediation at any of the sites will be reasonable. (Rule 56.1 St. ¶ 7.) Without such testimony or evidence, the City cannot meet its burden of proving that the nuisance

---

[19]    Defendants do not contend that MTBE impacts cannot be reasonably abated. Rather, they contend that the impacts at issue here already have been reasonably abated at nearly ever Site—indeed, the County and Regional Board appear to agree since most of the Sites have already received regulatory closure. (Rule 56.1 St. ¶¶ 41, 43, 50, 54, 65, 71, 76, 78.) In any event, the City has no evidence on reasonable abatability, and it is on this basis that summary judgment on the entire nuisance claim is proper.

is continuing.  Therefore, it can only be pursuing a permanent nuisance claim.  As a result,

summary judgment on the entire nuisance claim is proper.

## IV.    CONCLUSION

As demonstrated above, the City's claims for strict liability, negligence, and nuisance are

barred by the statute of limitations at each of the Sites because the City's claims accrued before

October 22, 2000.  Judgment in favor of Defendants on these claims is therefore warranted.

Alternatively, with respect to the sites without groundwater detections, the City has no viable

claims at these sites, and they should be dismissed.

Dated:  February 1, 2013.

Respectfully submitted,

KING & SPALDING LLP

Robert E. Meadows
Jeremiah J. Anderson
1100 Louisiana, Suite 4000
Houston, Texas 77002
Tel: (713) 751-3200
Fax: (713) 751-3290

Charles C. Correll Jr.
101 Second Street, Suite 2300
San Francisco, California  94105
Tel: (415) 318-1200
Fax: (415) 318-1300

**Attorneys for Defendants
Chevron U.S.A. Inc. and Union Oil
Company of California[20]**

---

[20]   The following page contains a list of Defendants who have joined in filing Defendants'
Memorandum of Law in Support of Motion for Summary Judgment based on the Statute of
Limitations.

DEFENDANTS JOINING MOTION

CHEVRON U.S.A. INC.

UNION OIL COMPANY OF CALIFORNIA

EXXON MOBIL CORPORATION

SHELL OIL COMPANY

TEXACO REFINING AND MARKETING INC.

EQUILON ENTERPRISES LLC

EQUIVA SERVICES LLC

CITGO PETROLEUM CORPORATION

KERN OIL & REFINING CO.

NELLA OIL COMPANY

CONOCOPHILLIPS COMPANY, individually and as successor-in-interest to Defendant
TOSCO CORPORATION and Phillips Petroleum Company

LYONDELL CHEMICAL COMPANY, formerly known as "ARCO CHEMICAL COMPANY"

COASTAL CHEM, INC.

TESORO CORPORATION (F/K/A TESORO PETROLEUM CORPORATION)

TESORO REFINING and MARKETING COMPANY (ERRONEOUSLY NAMED AS
TESORO REFINING AND MARKETING COMPANY, INC.)

ULTRAMAR INC.

VALERO MARKETING AND SUPPLY COMPANY

VALERO REFINING COMPANY-CALIFORNIA

## Certificate of Service

I hereby certify that on February 1, 2013 a true, correct, and exact copy of the foregoing document was served on all counsel via LexisNexis File & Serve.

Jeremiah J. Anderson