

E-SERVICE

51175523
Mar 16 2013
11:27AM

File & ServeXpress

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| In Re: Methyl Tertiary Butyl Ether ("MTBE")<br>Products Liability Litigation | Master File C.A. No.<br>1:00-1898 (SAS)<br>MDL 1358 |

_____

**This Document Relates To:**

*City of Fresno v. Chevron U.S.A., Inc., et al.*,
Case No. 04-cv-04973
_____

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR LACK OF EVIDENCE PERTAINING TO CAUSATION

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii
I.    INTRODUCTION ..................................................................................................... 1
II.   STATEMENT OF FACTS ........................................................................................ 4
      A.    Background ...................................................................................................... 4
      B.    Defendants ....................................................................................................... 4
            1.    Coastal Chem .......................................................................................... 4
            2.    Northridge Petroleum Marketing and Duke Energy Merchants ("Duke") .. 5
            3.    Kern Oil & Refining Co. ("Kern") ............................................................ 5
            4.    Tesoro Corporation and Tesoro Refining and Marketing Company
                  (collectively, "Tesoro") ............................................................................ 5
            5.    Valero Refining Company-California and Valero Marketing and Supply
                  Company (collectively, "Valero") ............................................................ 6
      C.    Gasoline Stations At Issue .............................................................................. 6
III.  LEGAL STANDARD ............................................................................................... 7
IV.   ARGUMENT ............................................................................................................. 9
      A.    Summary Judgment Should Be Granted Because Plaintiff Lacks Evidence to
            Support the Causation Element Essential to its Claims. ................................. 9
      B.    Plaintiff Fails to Show that Defendants' Gasoline Was Delivered to the Stations
            Prior to a Release ......................................................................................... 10
      C.    Duke .............................................................................................................. 11
            1.    The Duke Defendants ............................................................................ 11
            2.    Valley Gas (2139 S. Elm Street) ........................................................... 12
            3.    Red Triangle (2809 South Chestnut Avenue) ......................................... 15
      D.    Tesoro ............................................................................................................ 16
            1.    U&A and Valley Gas Stations – No Evidence of Delivery .................... 16
            2.    Red Triangle Station – No Evidence of Delivery Pre-Release ................ 17
      E.    Valero ............................................................................................................ 19
            1.    Beacon-ARCO #615 (1625 Chestnut Avenue) ....................................... 21
            2.    Beacon #3519 (4591 E. Belmont Avenue) ............................................. 22
            3.    Tulare Exxon (4594 E. Tulare Street) .................................................... 22
            4.    Red Triangle (2809 S. Chestnut Avenue) .............................................. 23
            5.    Valley Gas (2139 S. Elm Street) ........................................................... 24
      F.    Coastal ........................................................................................................... 25
            1.    Tosco #30587, Unocal #6353, and Tosco #39118 .................................. 25
            2.    Red Triangle and East Tulare Street Exxon ........................................... 27
            3.    Chevron 9-9093 and Van Ness Auto ...................................................... 29
      G.    Kern Oil & Refining Co. ............................................................................... 30
            1.    Kern's Alleged Supply of MTBE to Shell (M&S Texaco and Shell (1212))
                  ............................................................................................................... 31
            2.    Kern's Alleged Supply of MTBE to Chevron (Tosco #30587, Chevron #9-
                  43474, Unocal #6353, Van Ness Auto, Chevron #9-9093, and Tosco
                  #39118 .................................................................................................... 33
            3.    Kern's Alleged Supply of MTBE to Valero (Beacon #3519, Beacon-Arco
                  #615, Valley Gas, Red Triangle, and Exxon) ......................................... 35
V.    CONCLUSION ........................................................................................................ 37

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Arthur Andersen LLP v. United States,*
   544 U.S. 696 (2005) ...........................................................................................................14

*Bickerstaff v. Vassar Coll.,*
   196 F.3d 435 (2d Cir. 1999) ...............................................................................................14

*Bockrath v. Aldrich,*
   21 Cal. 4th 71 (1999) .........................................................................................................10

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) .............................................................................................................7

*Chavez v. Glock, Inc.,*
   207 Cal. App. 4th 1283 (2012) ...........................................................................................9

*Colony Holdings, Inc. v. Texaco Ref. and Mktg., Inc.,*
   No. SACV00217DOC, 2001 WL 1398403 (C.D. Cal. Oct. 29, 2001).............................23, 25

*Franklin v. USX Corp.,*
   87 Cal. App. 4th 615 (Cal. Ct. App. 2001) .......................................................................21

*Gross v. Nat'l Broadcasting Co., Inc.,*
   232 F. Supp. 2d 58 (S.D.N.Y. 2002).............................................................................15, 16

*Hughes v. Western MacArthur Co.,*
   192 Cal. App. 3d 951 (1987) .............................................................................................20

*Huitt v. Southern California Gas Co.,*
   188 Cal. App. 4th 1586 (2011*)* ..........................................................................................9

*In re MTBE Prods. Liab. Litig.,*
   379 F. Supp. 2d 348 (S.D.N.Y. 2005)...........................................................................7, 14

*In re MTBE Prods. Liab. Litig.,*
   591 F. Supp. 2d 259 (S.D.N.Y. 2008)....................................................................... *passim*

*In re MTBE Prods. Liab. Litig.,*
   739 F. Supp. 2d 576 (S.D.N.Y. 2010)..................................................................................8

*Koepke v. Loo,*
   18 Cal. App. 4th 1444 (1993) ...........................................................................................10

*Lujan v. Nat'l Wildlife Fed'n,*
   497 U.S. 871 (1990)..............................................................................................................7

*O'Neil v. Crane Co.,*
    53 Cal. 4th 335 (2012) ........................................................................................9

*Rutherford v. Owens-Illinois, Inc.,*
    16 Cal. 4th 953 (1997) ........................................................................................9

*Scotto v. Almenas,*
    143 F.3d 105 (2d Cir. 1998) ........................................................................15, 16

*United States v. Diebold, Inc.,*
    369 U.S. 654 (1962) ............................................................................................7

*Weyant v. Okst,*
    101 F.3d 845 (2d Cir. 1996) .............................................................................13

*Xerox Corp. v. Media Sciences, Inc.,*
    660 F. Supp. 2d 535 (S.D.N.Y. 2009) ................................................................7

*Zubulake v. UBS Warburg LLC,*
    220 F.R.D. 212 (S.D.N.Y. 2003) .......................................................................14

## OTHER AUTHORITIES

Fed. R. Civ. P. 56 ........................................................................................................7

## I.   INTRODUCTION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants[1] hereby move for summary judgment against Plaintiff, City of Fresno ("Plaintiff" or "Fresno") on its strict liability and negligence causes of action. Nearly ten years after filing suit, Plaintiff has yet to garner the evidence necessary to demonstrate that the moving Defendants are liable for groundwater contamination at the remaining gasoline stations at issue. Discovery is closed. The crucial evidence linking each Defendant's product (be it neat MTBE or MTBE gasoline) to the harm alleged at the stations at issue is glaringly absent. Specifically, Plaintiff cannot show that, during the relevant time period, Defendants' products were delivered to the stations at issue, or in some cases, that Defendants were even doing business in California during the relevant time period. The absence of this evidence is fatal to Plaintiff's strict liability and negligence causes of action.

The Court's instructions to Plaintiff regarding causation at a recent hearing are abundantly clear  -- "***get it to the station***":

> If you've got the evidence that can show it to them . . . *provide the evidence of product tracing* because they already know my ruling after that.  If you can *get it to the stations*, I at least don't believe that they have to show . . . it's their molecule versus somebody else's molecule. *If it's mixed and blended right there in the station and the material is actually pumped and used and spilled, then that's that*. So it really is a matter – If she has evidence that your product ended up at a particular station, there's no summary judgment.

> \*\*\*

---

[1] "Defendants" for purposes of this motion include Coastal Chem, Inc. ("Coastal Chem"); Duke Energy Merchants, LLC and Northridge Petroleum Marketing U.S. (collectively "Duke"); Kern Oil & Refining Co. ("Kern"); Tesoro Corporation (f/k/a Tesoro Petroleum Corporation); Tesoro Refining & Marketing Company (erroneously named by Plaintiff as Tesoro Refining & Marketing Company, Inc.) (collectively "Tesoro"); and Valero Marketing & Supply Company and Valero Refining Company-California (collectively "Valero").

Now, can you get that jobber to make a delivery to any of these stations, without worrying what's in that delivery, but did that jobber deliver?

\*\*\*

If you can *get it to the station* and there's a release, he doesn't have to prove whose molecule caused that.

Transcript of January 11, 2013 Status Conference ("Jan. 2013 Tr.") at 42:19-43:5, 44:9-11; 47:11-12 (emphases added).

Plaintiff recognized its burden: "We're not going with commingled in the pipeline. We're going with direct evidence, is what we explained, what we think is sufficient evidence to show that their gasoline was delivered to a station. " (*Id*. at 41:12-15). Even under the commingled product theory of liability, Plaintiff must meet its initial burden of proving that each Defendant's product was commingled with those of other defendants. Because Plaintiff is focused on stations, and Defendants' alleged links to each of those stations, application of the commingled product theory to this case requires Plaintiff to demonstrate commingled at the stations.

Plaintiff's case is notably different from the *Suffolk County* case. In *Suffolk County*, Plaintiffs' claims encompassed multiple spills at locations within well capture zones. *In re MTBE Prods. Liab. Litig.*, 591 F. Supp. 2d 259, 275 (S.D.N.Y. 2008). This approach permitted a reasonable inference that most of the defendants' gasoline and neat MTBE could be present as part of a commingled mass within a well's capture zone. Here, Plaintiff's claims are limited to specific gasoline stations for which Plaintiff has identified specific Defendants. With this approach, it is not reasonable to rely on upstream commingling to link a Defendant to a station at issue. Rather, to the extent the commingled product theory applies at all, Plaintiff must show that a Defendant's product was (1) delivered to the station at issue; (2) before a gasoline release. After Plaintiff satisfies this initial burden, under the commingled product theory, it need not demonstrate that a specific Defendant's product was the product actually released.

2

However, despite numerous meetings and discovery requests, Plaintiff has yet to "get [Defendants' products] got to the station." Instead, Plaintiff relies solely on assumptions, theoretical possibilities, and unsupported inferences. At best, Plaintiff can show that a Defendant sold gasoline to a particular jobber. Given that jobbers bought from numerous suppliers, delivered to various locations, and that the stations at issue purchased gasoline from multiple jobbers, Plaintiff can only speculate that the Defendants' product was actually delivered to a station at issue. Similarly, when attempting to link an MTBE Defendant to a station, Plaintiff can show that the Defendant sold MTBE to a refiner somewhere, and that the refiner sometime later allegedly supplied a station at issue. However, Plaintiff failed to show any connection between the supply of MTBE and the delivery to the stations.  Moreover, Plaintiff has not shown when the refiner used the Defendant's MTBE or that the refined product containing a Defendant's MTBE was ever delivered to the Fresno area.

Unlike in *Suffolk County*, where defendant MTBE manufacturers sold neat MTBE to nearly all of the refiner defendants throughout the 25 year relevant time period, Kern and Coastal Chem, the MTBE Defendants in this case, are alleged to have engaged in a much more limited supply of parties in this case. 591 F. Supp. 2d. at 277. While it might be reasonable to infer that a defendant's MTBE is present in a commingled product where it supplied nearly all defendants throughout the relevant time period and where there are multiple sites within a relevant well capture zones, as in *Suffolk County*, such an inference is not reasonable here.  Given the limited scope of the stations at issue and the narrow scope of supply alleged against the MTBE Defendants, Plaintiff must provide clear evidence connecting a supplier's sale of MTBE through the chain of distribution to the stations at issue. Plaintiff cannot even make the minimal showing that the MTBE Defendants' product was in fact delivered to terminals that could serve Fresno.

The tenuous connections Plaintiff provides for both sets of Defendants (the Distributor Defendants and the MTBE Defendants) fall far short of the evidence needed to raise a genuine issue of material fact as to causation. Therefore, Defendants are entitled to summary judgment.

## II.    STATEMENT OF FACTS

### A.  Background

Plaintiff's First Amended Complaint seeks compensatory and other damages relating to alleged MTBE releases from gasoline stations that purportedly impacted sources of public drinking water in the City of Fresno. (First Amended Complaint ("FAC") ¶ 3. Plaintiff fails to provide the essential element of causation necessary to support its strict product liability and negligence causes of action. Specifically, Plaintiff lacks evidence that (1) Defendants' customers, independent jobbers, ever delivered the Defendants' gasoline to the stations at issue, (2) MTBE Defendants supplied MTBE that became part of any commingled product delivered to Fresno, or (3) that deliveries of Defendants' product (be it the gasoline or the MTBE) preceded releases at the stations.

### B.  Defendants

Defendants are either refiners, manufacturers, and/or distributers of MTBE or gasoline containing MTBE. Plaintiff does not allege that Defendants owned or operated the sites at issue. FAC ¶¶ 48-50.

#### 1.  Coastal Chem

Plaintiff identifies Coastal Chem, Inc. ("Coastal Chem") as a Manufacturer/Supplier Defendant.  FAC ¶¶ 27, 30, 32.  Coastal Chem operated a chemical plant in Cheyenne, Wyoming. Plaintiff's claims against Coastal Chem all stem from Coastal Chem's alleged supply of neat MTBE to Exxon in California in 1994 and 1997-1998, and to Chevron in California from

August to December 1993. Rule 56.1 St. ¶ 12., E-mail from Evan Eickmeyer to Brent Allen (December 10, 2012).

2.   Northridge Petroleum Marketing and Duke Energy Merchants ("Duke")

Plaintiff identified Duke Energy Merchants, LLC and Northridge Petroleum Marketing U.S., Inc. (collectively, "Duke") as a Distributor Defendant. FAC ¶¶ 33, 37, 38, 41. Plaintiff alleges that Duke is liable at two stations based on its sales of gasoline to jobbers that allegedly delivered gasoline to those stations.

3.   Kern Oil & Refining Co. ("Kern")

Plaintiff identified Kern as a Refiner and Distributor Defendant.  FAC ¶¶ 7, 14, 25, 33, 47.  Following a meet and confer process, Plaintiff allegations changed. Plaintiff now alleges that Kern is a Supplier that sold neat MTBE to Chevron U.S.A. Inc. ("Chevron"); Shell Oil Company, Equilon Enterprises LLC, Equiva Services LLC, and Texaco Refining and Marketing Inc. (collectively "Shell"); and Valero. Rule 56.1 St. ¶ 25.  Plaintiff further alleges that Chevron, Shell, and Valero blended the Kern-supplied MTBE ("Kern-MTBE") into gasoline that was then supplied to the Fresno terminals, from where it was distributed to thirteen stations in the Fresno area.  Rule 56.1 St. ¶ 28

4.   Tesoro Corporation and Tesoro Refining and Marketing Company (collectively, "Tesoro")

Plaintiff identified Tesoro Corporation and Tesoro Refining and Marketing Company (collectively, "Tesoro") as a Refiner and Manufacturer/Supplier Defendant. FAC ¶¶ 7, 17, 18, 25, 27, 32. Plaintiff alleges that Tesoro is liable at three stations based on sales to jobbers that allegedly delivered to the stations. Rule 56.1 St. ¶¶ 38, 40-41, Plaintiff City of Fresno's Supplemental Responses to Tesoro Corporation's and Tesoro Refining and Marketing

Company's First Set of Interrogatories to Plaintiff City of Fresno ("Plaintiff's Supplemental

Responses to Tesoro's First Set of Interrogatories"), Interrogatory Nos. 1, 2.

> 5. <u>Valero Refining Company-California and Valero Marketing and Supply Company (collectively, "Valero")</u>

Plaintiff identifies Valero as a Refiner, Manufacturer/Supplier, and Distributor

Defendant. FAC ¶¶ 7, 15, 16, 25, 27, 32, 33, 47. Plaintiff alleges that Valero is liable at five

stations based on their sales to jobbers that allegedly delivered to the stations at issue, as well as

Valero's alleged successor liability for non-moving defendant Ultramar Inc.

## C. Gasoline Stations At Issue

Although at one time Plaintiff identified nearly 60 at issue sites, after this Court entered

Case Management Order 108 in January 2013, only 17 gasoline stations remain at issue for all

defendants in the litigation[2] and only 14 gasoline stations are involved in this motion. Case

Management Order #108, Jan. 2, 2013.

Although Plaintiff also identifies alleges that several non-moving defendants are liable at

the stations below, this table summarizes Plaintiff's claims against the Moving Defendants:

| | Stations | Moving Defendant(s) |
|---|---|---|
| 1 | M&S Texaco, 2619 S. East Avenue | Kern |
| 2 | Tosco #30587, 1610 N. Palm | Coastal Chem, Kern |
| 3 | Beacon #3519, 4591 E. Belmont Avenue | Kern, Valero |
| 4 | Beacon-Arco #615, 1625 Chestnut Avenue | Kern, Valero |
| 5 | Valley Gas, 2139 S. Elm Street | Duke, Kern, Tesoro, Valero |
| 6 | Chevron #9-43474, 1160 Fresno Street | Kern |
| 7 | Shell (1212), 1212 Fresno Street | Kern |
| 8 | Unocal #6353, 1418 E. Shaw | Coastal Chem, Kern |

---

[2] Claims against Defendants for the Smith Tank Lines site will be dismissed by Plaintiff. Rule 56.1 St. at ¶¶ 5-7. Three other sites involve non-moving defendants are not implicated by this motion. Further, other defendants which are not a party to this motion remain at many of the 14 sites discussed herein. *See* Case Management Order #108, Jan. 2, 2013.

|   | Stations | Moving Defendant(s) |
|---|----------|---------------------|
| 9 | U&A Gas & Food Mart, 2929 N. Blackstone | Tesoro |
| 10 | Van Ness Auto, 2740 N. Van Ness | Coastal Chem, Kern |
| 11 | Red Triangle, 2809 S. Chestnut Avenue | Coastal Chem, Duke, Kern, Tesoro, Valero |
| 12 | Chevron #9-9093, 3996 N. Parkway Drive | Coastal Chem, Kern |
| 13 | Tosco #39118, 1065 N. Cedar | Coastal Chem, Kern |
| 14 | Exxon, 4594 E. Tulare Street | Coastal Chem, Kern, Valero |

### III.   LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). The moving party may satisfy its burden "by pointing to the absence of evidence supporting a material element of a non-moving plaintiff's claim." *Xerox Corp. v. Media Sciences, Inc*., 660 F. Supp. 2d 535, 545 (S.D.N.Y. 2009). The evidence, and any inferences to be drawn therefrom, is reviewed in the light most favorable to the non-moving party, *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962), but mere conclusory factual allegations by the non-moving party are not sufficient to overcome substantive factual allegations of the moving party. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990) (citing Fed. R. Civ. P. 56(e)).

The "commingled product theory" of liability holds that, where several defendants' products are "in a completely commingled or blended state at the time and place that the risk of harm occurred, and the commingled product caused a single divisible injury, then each of the products should be deemed to have caused the harm." *In re MTBE Prods. Liab. Litig.*, 379 F. Supp. 2d 348, 377-78 (S.D.N.Y. 2005).[3] Under this theory, Plaintiff must meet an initial burden;

---

[3] Defendants reserve all rights to challenge Plaintiff's use of the commingled product theory, or any other alternative liability scheme. First, the station owners and operators for each site are directly responsible for any alleged MTBE discharges. Second, Plaintiff failed to demonstrate

it must "prove by a preponderance of the evidence that the defendant contributed-in-fact to the injury by showing that each defendant's product was part of the commingled mass that injured the plaintiff." *In re MTBE Prods. Liab. Litig.*, 739 F. Supp. 2d 576, 598 (S.D.N.Y. 2010); *see also id.* at 609 ("a defendant cannot be held liable unless its gasoline was present in the commingled product that contaminated plaintiffs' groundwater."). To the extent Plaintiff relies on the commingled product theory, it must prove by a preponderance of the evidence at least two facts. First, that a Defendant's product was actually delivered to a gasoline station at issue where it was commingled with the products from other defendants. As the Court recently noted, Defendants are not burdened to disprove delivery to these stations; Plaintiff carries this burden of showing actual delivery.

> THE COURT: I've agreed with you, Miss O'Reilly, to some extent. If you can get it [gasoline] to the station and there's a release, he doesn't have to prove whose molecule caused that. Now, he knows that, don't bother moving. I'm telling you that. They're saying they can't get my stuff to the station, where there's a release, and <u>if you can prove that</u>, you win the summary judgment.

Jan. 2013 Tr. at 47:10-16 (emphasis added). Second, Plaintiff must provide evidence that a Defendant's product was present at a named station (*i.e.*, part of the "commingled mass") at a time before a documented discharge of gasoline. As this Court made very clear, Plaintiff may not <u>assume</u> that discharges continuously occurred at a particular gasoline station; it must have evidence of a discharge in order to prove liability.

---

that it was impossible or abnormally burdensome to prove its case against any named or unnamed defendant using traditional liability methods, such as records of property ownership (real property or underground storage tanks) or product tracing. In fact, by identifying the defendants allegedly liable at each station (CMO # 108, entered January 2, 2013), Plaintiff conceded it can prove its case using traditional methods of liability. Finally, the Defendants object on the grounds that the commingled product theory improperly shifts the burden of proof to the Defendants without any justifiable policy rational, and thus, denies them the due process of law.

THE COURT: Okay. Here's one. In the reply letter of Duke, they talk about a case where you say there might have been MTB[E] detection[s] after the new tanks were installed. If that's it, that's not good enough, that 'there might have been a detection after.' There either was or there wasn't after the new tanks were installed.

*** 

THE COURT: Did [Plaintiff's expert witness on releases, Mr. Marcel Moreau] identify a release at those stations after the tank removals of '98 and '99?

MR. WEDEKING: I will assert, your Honor, that he did not.

THE COURT: Okay. If he did not, then it doesn't matter what you [Fresno] have after the new tanks are installed because you don't have a release. So whether they were or not is kind of irrelevant. I am telling you that it may reach the point where the years of patience runs out.

Jan. 2013 Tr. at 46:6-25. Therefore, it is the Plaintiff's burden to demonstrate that a Defendant's product was delivered to a specific site before a documented discharge.

## IV.    ARGUMENT

**A.  Summary Judgment Should Be Granted Because Plaintiff Lacks Evidence to Support the Causation Element Essential to its Claims.**

Under California law, Plaintiff's claims for strict liability and negligence require proof of causation. To maintain its strict liability claim, Plaintiff must have evidence that the product defect was a substantial factor in causing the plaintiff's injury. *Chavez v. Glock, Inc*., 207 Cal. App. 4th 1283, 1305 (2012); *Huitt v. Southern California Gas Co*., 188 Cal. App. 4th 1586, 1604 (2011*); see also Rutherford v. Owens-Illinois, Inc*., 16 Cal. 4th 953, 968 (1997). Under any of the manufacturing, design, or failure to warn theories of strict liability, the California Supreme Court has declared that "a bedrock principle" in strict liability law requires that the plaintiff's injury must have been caused by a defect in the defendant's own product.  *O'Neil v. Crane Co*., 53 Cal. 4th 335, 348 (2012).

Similarly, to successfully maintain a cause of action for negligence, a plaintiff must introduce admissible evidence of a causal connection between the alleged breach by the defendant and the resulting injury. *See, e.g., Koepke v. Loo*, 18 Cal. App. 4th 1444, 1448-49 (1993). Mere speculation will not suffice. As stated by the California Supreme Court, "the law cannot tolerate lawsuits from prospecting plaintiffs who sue multiple defendants on speculation that their product may have caused harm over time through exposure to toxins in them, and who thereafter try to learn through discovery whether their speculation was well-founded." *Bockrath v. Aldrich*, 21 Cal. 4th 71, 79 (1999). Despite having nearly 10 years to gather evidence, Plaintiff's showing still falls short of meeting its burden.

## B.  Plaintiff Fails to Show that Defendants' Gasoline Was Delivered to the Stations Prior to a Release

This Court has always recognized that Defendants can exculpate themselves from liability based on a lack of business operations in a certain region, or based on the specific facts of individual sites.  "[A] defendant must be able to exculpate itself by proving that its product was not present at the relevant time or in the relevant place, and therefore could not have been part of the commingled or blended product." *In re MTBE*, 591 F. Supp. 2d at 274. Implicit in this analysis is that Plaintiff must show that a Defendant's product was present at a site before a known release. As recently confirmed by the Court, Plaintiff cannot assume a release occurred at a particular gasoline station; it must have evidence of a release to prove liability. Jan. 2013 Tr. at 46:6-25.

In this case, Plaintiff elected to focus on individual gasoline stations and identify Defendants allegedly linked to the stations, whereas in *Suffolk County*, the plaintiffs' case focused on broad well capture zones. Plaintiff's election changes its burden under the commingled product theory. Rather than showing generalized supply, Plaintiff must show actual delivery to a station.

10

Moreover, the MTBE Manufacturer Defendants here occupy a significantly smaller portion of the market, both in terms of time and volume, when compared to the MTBE manufacturers in *Suffolk County*. Simply put, Plaintiff cannot meet its burden because it lacks evidence that either Defendants' gasoline containing MTBE reached the stations at all or that Defendants' gasoline reached the sites prior to a documented release. Plaintiff's inadequate evidence for each Defendant is discussed below.

## C.  Duke

Plaintiff has no evidence to support its allegations that Duke gasoline was delivered to two stations at issue, Valley Gas and Red Triangle Oil. As discussed below, Duke is entitled to summary judgment.

### 1.  The Duke Defendants

Northridge Petroleum Marketing U.S. ("Northridge") was a commodities trader doing business in Calabasas, California since approximately September 1996. Rule 56.1 St. ¶ 17. Gasoline was among the commodities it traded. *Id.* Northridge was a "middle man." It purchased gasoline arriving via pipeline at the Kinder Morgan Fresno terminal and then sold that gasoline to independent companies at the terminal's loading rack. *Id.* ¶ 18. Sales were made on an at-will basis; Northridge had no contracts to supply any particular company. *Id.* Buyers were typically independent gasoline suppliers, colloquially referred to as "jobbers." *Id.* Northridge's sale of gasoline to a jobber generated a bill of lading, describing the type, amount, and cost of the gasoline purchased. *Id.* ¶ 19. The bills of lading only listed the billing address of the buyer. *Id.* It did not list the address to which the jobber would deliver the gasoline purchased from Northridge. *Id.* All of Northridge's business was conducted from its Calabasas office; no Northridge employees were present at the Fresno terminal to interact with a jobber's employees

or other representatives. *Id.* ¶ 20. Therefore, there was no means of Northridge learning where the jobber would deliver that gasoline.

In February 2000, Duke Energy Merchants, LLC ("DEM") purchased Northridge. Rule 56.1 St. ¶ 21. Prior to that time, DEM did not do business in California. *Id.* After the acquisition, Northridge assumed the DEM name but otherwise continued conducting its business without any material change. *Id.* In July 2006, DEM ceased its sales of gasoline in California. *Id.* ¶ 22. During their time of doing business in the Fresno area, between June 1996 and July 2006, neither Northridge nor DEM manufactured MTBE or refined gasoline. *Id.* ¶ 23. They did not own, operate, or lease a refinery; ship any gasoline via pipeline; own, operate, or lease retail gas stations; own real estate where a retail gas station was located; market a brand of gasoline; or distribute gasoline by tanker truck. *Id.* Nor did the companies communicate with retail gasoline stations in any way. *Id.* Northridge and DEM merely bought gasoline at the terminal and sold it at the rack.

### 2. Valley Gas (2139 S. Elm Street)

There are no documents or testimony naming Duke as supplying gasoline to the Valley Gas station. An entity known as Petro Group II owned the site since October 1991. Declaration of Diana P. Martin ("Martin Decl."), Ex. 3, transcript of deposition of Imtiaz Ahmad ("I. Ahmad Tr.") at 20:5-20; 23:14-19. Petro Group II initially operated the site as an ARCO-branded station. *Id.* at 24:14-17; 139:14-140:25. The 2139 South Elm site "de-branded" in 1995, doing business as Valley Gas. *Id.* at 24:2-24:13; 127:8-127:11. The owners of the 2139 South Elm station owned and operated another station in Fresno, located at 4205 East Olive. *Id.* at 20:2-22:1. This station was also named Valley Gas. *Id.*

As an unbranded station, the 2139 South Elm station received gasoline from at least two jobbers, Southern Counties Oil (d/b/a Total Energy) and Sabek Oil. Martin Decl., Ex. 3, I.

Ahmad Tr. at 24:3-25:6. The Valley Gas owners do not know what companies refined or distributed the gasoline delivered to the 2139 South Elm station. *Id.* at 24:18-25:2; 25:10-25:14; Martin Decl, Ex. 3, transcript of deposition testimony of Shirley McMurphy-Ahmad ("S. Ahmad Tr.") at 26:5-17:11. All documentation that could have contained this information was destroyed in 2010. S. Ahmad Tr. at 12:10-12:19.

Duke sold gasoline to jobber Total Energy during the relevant time period, Rule 56.1 St. ¶ 24, however, Total Energy's business with Valley Gas does not establish the requisite nexus showing actual deliveries of Duke's gasoline to the 2139 South Elm station. First, Total Energy did not do business exclusively with Duke, however, Plaintiff failed to obtain any records from the company regarding its suppliers. Martin Decl. ¶ 2.c. Second, Valley Gas also received gasoline from a jobber that did not do business with Duke, named Sabek Oil. Martin Decl., Ex. 3, I. Ahmad Tr. at 25:3-25:9. Third,  there were two "Valley Gas" stations – the 2139 South Elm station at issue here, and the 4205 East Olive station that Plaintiff already dismissed from the case. *Id.* at 22:13-20. According to the operator of this second Valley Gas station, "a majority of the gasoline came from Total [Energy] at that time." *Id.* at 22:13-22:20. Plaintiff has no evidence that a delivery by Total Energy to "Valley Gas" was a delivery to 2139 South Elm instead of the 4205 East Olive station. In fact, Plaintiff has no evidence that Duke's gasoline was ever delivered at either station. Plaintiff lacks the evidence required to raise a genuine issue of material fact.

It is true that the Court must "view the evidence in the light most favorable to the party opposing summary judgment … draw all reasonable inferences in favor of that party, and to eschew credibility assessments," *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996), however, Plaintiff's absence of evidence leaves no inferences to draw or credibility to assess. Even under

13

the commingled product theory, Duke's gasoline would never have been commingled with that of any other defendant until it was actually delivered to Valley Gas. Plaintiff, however, merely assumes that Duke's sales to Total Energy must mean that Duke's gasoline was delivered to the 2139 South Elm station. Plaintiff cannot resist summary judgment on such barren assumptions.

If Duke's gasoline was ever delivered to Valley Gas, there would be bills of lading to demonstrate this. Yet Plaintiff neglected to pursue the necessary discovery until eight years after filing its suit, and by then, the records were well over a decade old. *See* Rule 56.1 St. ¶¶ 43, 44. The commingled product theory was created to relieve plaintiffs of inequitable burdens "when the facts and circumstances of their actions raised unforeseen barriers to relief." *In re MTBE Prods. Liab. Litig.*, 379 F. Supp. 2d 348, 377 (S.D.N.Y. 2005). To the extent that waiting eight years to pursue necessary discovery "raised unforeseen barriers to relief," they were barriers created by the Plaintiff's own errors. Nobody could reasonably expect third parties not subject to litigation holds to maintain such records for so long. *See Arthur Andersen LLP v. United States*, 544 U.S. 696, 704 (2005) ("'Document retention policies' … are common in business."); *cf. Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) (Scheindlin, J.) ("Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy….").

The commingled product theory was never intended to shift the burden of exculpation to Duke simply because Plaintiff neglected to gather available evidence necessary to its case. Without bills of lading showing what companies actually supplied the Valley Gas station, Plaintiff's allegations against Duke are exactly the type of assertions that "are devoid of any specifics, but replete with conclusions" and are "insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

*See also Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (where non-moving party's evidence "is merely colorable, or is not significantly probative, summary judgment may be granted."); *Gross v. Nat'l Broadcasting Co., Inc.*, 232 F. Supp. 2d 58, 67 (S.D.N.Y. 2002) (Scheindlin, J.) ("Mere conclusory statements, conjecture or speculation cannot by themselves create a genuine issue of material fact."). Allowing Plaintiff to presume that any sale to Total Energy is a sale to 2139 South Elm would implicate *all* companies that did business with Total Energy without any evidence of actual delivery. Such an inference would be inconsistent with this Court's requirement that Plaintiff "prove" that Duke's gasoline reached any particular station at issue in this case. Jan. 2013 Tr. at 47:10-16. For these reasons, Duke is entitled to summary judgment with respect to the 2139 South Elm Valley Gas station.

3.   Red Triangle (2809 South Chestnut Avenue)

InterCity Petroleum Marketers, Inc. ("InterCity Petroleum") owned and operated the Red Triangle Oil station at 2809 South Chestnut. Rule 56.1 St. ¶ 84. InterCity Petroleum had a relatively large and complex business. In 1998, it owned at least eight other gasoline stations in the Fresno area. *Id.* ¶ 85. The 2809 South Chestnut site had both a retail station and a bulk plant for longer term gasoline storage. *Id.* ¶ 86. InterCity Petroleum was also a jobber for ExxonMobil, buying and distributing gasoline throughout the Fresno area. *Id.* ¶87. In December 1998, Red Triangle Oil removed the underground storage tanks from the bulk plant at 2809 South Elm. *Id.* ¶ 91. Subsequent testing revealed MTBE in the underlying soil. *Id.*

There are no documents or testimony identifying Duke as supplying gasoline to the 2809 South Chestnut site. No records exist and the former station owners never mentioned Duke as a supplier. Rule 56.1 St. ¶ 88. Yet, Plaintiff, without any evidence, assumes that Duke's gasoline sales to InterCity Petroleum must have been delivered to the bulk plant at 2809 South Chestnut. This assumption disregards the fact that InterCity Petroleum owned eight other gasoline stations

in the Fresno area during the relevant time period. Nor does it account for InterCity Petroleum acting as an ExxonMobil jobber. In this role, InterCity Petroleum purchased gasoline from several different suppliers, including Duke, added the ExxonMobil additive at the terminal, and delivered that gasoline directly to Fresno area Exxon stations. *Id.* ¶ 87. This gasoline was never delivered to the 2809 South Chestnut bulk plant. *Id*.

For these reasons, Plaintiff's claim that it is more likely than not that Duke's gasoline was delivered to the 2809 South Chestnut bulk plant are the type of "conclusory statements, conjecture or speculation" that "cannot by themselves create a genuine issue of material fact." *Gross*, 232 F. Supp. 2d at 67. *See also Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (where non-moving party's evidence "is merely colorable, or is not significantly probative, summary judgment may be granted."). Plaintiff's failure to adduce any actual evidence demonstrating a nexus between Duke's gasoline and the 2809 South Chestnut bulk plant entitles Duke to summary judgment.

**D. Tesoro**

Although Plaintiff alleges a Tesoro nexus at three stations – Red Triangle, U&A, and Valley Gas – Plaintiff has failed to provide evidence showing that Tesoro product was either delivered to these stations or that delivery occurred prior to the detection of a release of MTBE. Because Plaintiff lacks evidence of a Tesoro nexus to the three stations, Plaintiff has failed to meet its burden of proof. Tesoro is entitled to summary judgment as a matter of law.

　　1.　U&A and Valley Gas Stations – No Evidence of Delivery

Plaintiff alleges that Tesoro gasoline was delivered to the U&A and Valley Gas stations because 1) Tesoro sold gasoline to Southern Counties d.b.a. Total Energy Products; 2) Total Energy Products had authority to supply Tesoro branded fuels to stations in Fresno; and 3) Total

Energy supplied gasoline to the U&A and Valley Gas stations. Rule 56.1 St. ¶¶ 40-41, Plaintiff's Supplemental Responses to Tesoro's First Set of Interrogatories, Interrogatory Nos. 1, 2.

Plaintiff failed to produce any evidence that Tesoro gasoline was delivered to the U&A and Valley Gas stations. Rule 56.1 St. ¶¶ 42-44, *see* Transcript of deposition of Balinder Mehat, Sr. at pp. 12:16-13:12, 63:2-7; Transcript of deposition of Baldev Singh Sandhu at pp. 14:12-19, 17:2-5, 34:9-35:4; Transcript of deposition of Dalibir Singh at pp. 11:4-12:20, 49:24-50:18; Transcript of deposition of Imtiaz Ahmad at pp. 25:7-9; Transcript of deposition of Shirley Ahmad at pp. 12:10-22, 16:15-17:11. The former station owners and/or operators did not and cannot testify as to whether Tesoro gasoline was supplied to the respective stations. *Id.* Moreover, the former station owners and/or operators no longer possess historical records related to the respective stations. *Id.* Jobber Southern Counties produced no documents related to the U&A and Valley Gas stations in response to Plaintiff's subpoena to produce documents. Rule 56.1 St. ¶ 44, Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, to Custodian of Records, Southern Counties Oil Co., c/o Robert Bollar (Agent for SOP) (Feb. 24, 2011). Tesoro sold product to jobbers FOB at the gasoline sales terminal, meaning title and possession of the gasoline transferred from Tesoro to jobbers at the terminal. Rule 56.1 St. ¶ 34, Mills Decl. ¶ 4. Tesoro provided bills of lading at the time of sale of the gasoline to jobbers, and did not direct, control nor track where the gasoline was ultimately sold and/or delivered. Rule 56.1 St. ¶¶ 35-36, Mills Decl. ¶ 4. Plaintiff has no evidence that any gasoline containing MTBE Tesoro sold to Southern Counties was ultimately delivered to the U&A and Valley Gas stations.

2. <u>Red Triangle Station – No Evidence of Delivery Pre-Release</u>

Plaintiff alleges that Tesoro gasoline was delivered to the Red Triangle station because Tesoro's responses to interrogatories "lists Red Triangle as a jobber." Rule 56.1 St. ¶ 38,

Plaintiff's Supplemental Responses to Tesoro's First Set of Interrogatories, Interrogatory Nos. 1, 2. Tesoro supplied gasoline to InterCity Petroleum Marketers, Inc., a predecessor to Red Triangle Oil Company (as a jobber), in 1994-1996, 1999-2003, and Red Triangle Oil Company, Inc. (as a jobber) in 2002 and 2003. Rule 56.1 St. ¶ 37, Defendants Tesoro Corporation (F/K/A Tesoro Petroleum Corporation) and Tesoro Refining and Marketing Company's (Erroneously Named as Tesoro Refining and Marketing Company, Inc.) Response to Plaintiff City of Fresno's First Set of Interrogatories to Defendants, Interrogatory No. 5. However, sales to either entity do not equate to deliveries of Tesoro gasoline to the Red Triangle station.

Plaintiff's expert identified only one release of MTBE at the Red Triangle station, discovered when underground gasoline storage tanks were removed from the site in December 1998. Rule 56.1 St. ¶ 91, Expert Site Specific Report of Marcel Moreau, Red Triangle at 5. Plaintiff presented no evidence that InterCity Petroleum Marketers, Inc. (as a jobber) or Red Triangle Oil Company, Inc. (as a jobber) delivered Tesoro gasoline to the Red Triangle station prior to this MTBE release. Rule 56.1 St. ¶ 39, *see* Transcript of deposition of Gail Blue at pp. 17:12-18:10; 38:22-39:3 (Testifying "I really don't know [if the Red Triangle station purchased Tesoro gas]"); *see also id.*, Ex. 7, Transcript of deposition of Glen Blue at pp. 22:4-23:12; *id.*, Ex. 4, Transcript of deposition of Joel Hohenshelt at pp. 80:24-81:9. The former Red Triangle station owners and/or operators did not and cannot confirm whether Tesoro gasoline was supplied to the station prior to the date of MTBE releases at that station. *Id.* Tesoro sold product to jobbers FOB at the gasoline sales terminal, meaning title and possession of the gasoline transferred from Tesoro to jobbers at the terminal. Rule 56.1 St. ¶ 34, Declaration of Robert G. Mills in Support of Defendants' Motion for Summary Judgment For Lack of Evidence Pertaining to Causation ("Mills Decl.") ¶ 4. Tesoro provided bills of lading at the time of sale of the

gasoline to the jobbers, and did not direct, control nor track where the gasoline was ultimately sold and/or delivered. Rule 56.1 St. ¶¶ 35-36, Mills Decl. ¶ 4. In addition, records produced by Red Triangle indicate that Tesoro gasoline was delivered to the Red Triangle station in 2003, well after Plaintiff alleges a release occurred. Rule 56.1 St. ¶¶ 39, 91, REDTRIANGLE-SHE-000053; REDTRIANGLE-SHE-000101; RED-TRIANGLE-SHE-00000127; Expert Site Specific Report of Marcel Moreau, Red Triangle at 5. Any releases of MTBE at the Red Triangle station predate these deliveries of Tesoro gasoline by several years. Accordingly, Plaintiff has failed to provide evidence that any gasoline containing MTBE Tesoro sold to InterCity Petroleum Marketers, Inc. (as a jobber) or Red Triangle Oil Company, Inc. (as a jobber) was ultimately delivered to the Red Triangle station prior to the 1998 detection of MTBE.

Given Plaintiff's inability to provide evidence supporting its claims against Tesoro related to the Red Triangle, U&A, and Valley Gas stations, Tesoro is entitled to summary judgment at these stations as a matter of law.

## E. Valero

Valero could not have caused any injury at the Beacon-ARCO #615, Beacon #3519, Tulare Exxon, Red Triangle, or Valley Gas sites for one simple reason: Valero gasoline wasn't at these stations during the relevant time period. Valero did not do business in California prior to March 16, 2000. Rule 56.1 St. ¶¶ 46-47, Declaration of Ethan Jones ("E. Jones Decl.") ¶¶ 4, 6. With respect to the five aforementioned stations, and as discussed in detail below, Plaintiff has not identified any release that contributed to its alleged injury and which occurred after the two Valero entities entered the California market.[4] Valero therefore could not have refined,

---

[4] Plaintiff cannot now claim that additional, post-March 16, 2000 releases have occurred, as (i) Mr. Moreau did not specifically identify any such releases, and (ii) there is no evidence of such releases. *See* Jan. 2013 Tr. at 46:6-25.

manufactured, or distributed the MTBE gasoline that Plaintiff alleges was released at these sites. Because Valero gasoline was not present at the relevant time or in the relevant place, it could not have been part of any commingled or blended product that allegedly harmed Plaintiff. *In re MTBE*, 591 F. Supp. 2d at 274. As a result, Plaintiff's claims must fail.

Having just appreciated the impact of Valero's late entry to the California market, Plaintiff now raises the baseless allegation that VMSC and VRC-CA have successor liability for Ultramar Inc.'s business activities. Rule 56.1 St. ¶ 7, Letter from Michael Axline to M. Coy Connelly (March 6, 2013). Plaintiff claims, without any supporting evidence, that VMSC and VRC-CA are successors-in-interest to Ultramar Inc., and therefore somehow inherit liability for Ultramar Inc.'s activities at certain sites. *Id.* This theory is clearly a last-ditch effort by Plaintiff to keep Valero in the litigation, as evidenced by the fact that these allegations have never been included in its Complaint, as required by California law. *See, e.g., Hughes v. Western MacArthur Co.*, 192 Cal. App. 3d 951, 956 (1987).[5]

The general rule of successor liability under California law is that the corporate purchaser of another corporation's assets presumptively does not assume the seller's liabilities, unless: (1) there is an express or implied assumption of liability; (2) the transaction amounts to a consolidation or merger of the two corporations; (3) the purchasing corporation is a mere continuation of the sellers; or (4) the transfer of assets to the purchaser is for the fraudulent

---

[5] In *Hughes*, the trial court dismissed the complaint as to defendant Western MacArthur Company for failure of plaintiff Hughes to allege, at all, that Western MacArthur was the successor corporation of Western Asbestos Company, the entity plaintiff contended actually committed the alleged harm.  192 Cal. App. 3d at 956. The Court of Appeal wrote: "Hughes's complaint did not allege an essential factor in this case - that she intended to hold Western MacArthur liable for acts committed by its predecessor corporation, Western Asbestos Company. Although we must construe pleadings liberally, this presumption does not relieve Hughes of the obligation to plead some allegation from which we may construe a legal connection between the party that injured her and the party whom she seeks to hold liable for her injury." *Id.* (citation omitted).

purpose of escaping liability for the seller's debts. *See, e.g., Franklin v. USX Corp.*, 87 Cal. App. 4th 615, 621 (Cal. Ct. App. 2001). None of these situations apply.  With respect to Beacon-ARCO #615, Beacon #3519, Tulare Exxon, Red Triangle, and Valley Gas, neither VMSC nor VRC-CA has ever assumed or received any liabilities, obligations or property of Ultramar Inc., nor has Ultramar Inc. transferred or assigned any liabilities, obligations or property to VMSC or VRC-CA.  Rule 56.1 St. ¶ 51, E. Jones Decl. ¶¶ 18-19. Ultramar Inc. did not merge into VMSC or VRC-CA; indeed, Ultramar Inc. continues to exist and conduct business to this day. *Id.*, E. Jones Decl. ¶¶ 18-20.

Furthermore, successor-in-interest liability exists, in part, so as to prevent a company from fraudulently skirting responsibility for its liabilities. *See, e.g., Franklin*, 87 Cal. App. 4th at 621.  This justification for successor liability is inapplicable in this matter, considering that Ultramar Inc. not only continues to exist, <u>but is a party to this lawsuit</u>.  Rule 56.1 St. ¶ 51, E. Jones Decl. ¶ 20.  There has been no destruction or disruption of Plaintiff's potential remedies against Ultramar Inc.  Consequently, permitting the imposition of successor liability for Ultramar Inc. against Valero would have only the inequitable result of allowing Plaintiff to seek a double recovery for the alleged actions of a single party.  Because Plaintiff cannot prevail on its successor-in-interest theory, and because it cannot place Valero gasoline at the stations during the relevant timeframe, Plaintiff should not be permitted to pursue its claims against Valero at Beacon-ARCO #615, Beacon #3519, Tulare Exxon, Red Triangle, or Valley Gas.

  1.  <u>Beacon-ARCO #615 (1625 Chestnut Avenue)</u>

The last identified MTBE release at Beacon-ARCO #615 occurred in June 1998.  Rule 56.1 St. ¶ 65, Expert Site Specific Report of Marcel Moreau, Beacon Arco 3615 at 4-5; *id.*, Transcript of Deposition of Marcel Moreau at 773:23-774:4 ("There were release events identified in 2009 and 2010, but that was after the time when MTBE should have been removed

from California gasoline.  So June '98 would be the last time or the last event where evidence of a release was discovered – of gasoline that contained MTBE.").  VMSC and VRC-CA did not do business in California prior to March 16, 2000, Rule 56.1 St. ¶¶ 46-47, E. Jones Decl. ¶¶ 4, 6, and therefore could not have been part of any commingled product that allegedly harmed Plaintiff.  *In re MTBE*, 591 F. Supp. 2d at 274.

### 2.  Beacon #3519 (4591 E. Belmont Avenue)

The last identified MTBE release at Beacon #3519 occurred in December 1998.  Rule 56.1 St. ¶ 57, Expert Site Specific Report of Marcel Moreau, Beacon 3519 at 4.  Though Mr. Moreau claims that small spills "are common during vehicle fueling activities" and "occurred throughout the time this facility was in operation," he is unable to say whether or not such spills contributed to the MTBE contamination at the site.  *Id.*  Moreover, Mr. Moreau acknowledged that he has no actual evidence that such spills occurred: "The Facility Summary doesn't describe any specific spill events that we discovered in reviewing the documents associated with this site. So we don't have a – any documentation of a specific spill event."  *Id.*, Transcript of Deposition of Marcel Moreau at 767:2-6.  Thus, the last identified MTBE release about which Mr. Moreau can testify occurred at Beacon #3519 in December 1998 – prior to Valero's entry into the California market.  Rule 56.1 St. ¶¶ 46-47, E. Jones Decl. ¶¶ 4, 6.

### 3.  Tulare Exxon (4594 E. Tulare Street)

The last identified MTBE release at the station occurred in January 1999.  Rule 56.1 St. ¶ 102, Expert Site Specific Report of Marcel Moreau, Tulare Exxon at 2-3.  Mr. Moreau does, however, make additional claims that MTBE detections in 2004 and 2007 were the result of releases from an undetermined source, which "probably occurred between the fall of 1992" and the end of 2003.  *Id.*  This opinion is mere conjecture, and therefore legally insufficient to establish the existence of a post-January 1999 release.  *See* Jan. 2013 Tr. at 46:6-25.  The fact

that Mr. Moreau did not consider (nor did he rule out) whether the MTBE detected in 2004 and 2007 could have been a result of the releases that occurred prior to January 1999 "raises questions regarding the thoroughness and objectivity of the process.  This is a particularly critical point in [cases where] there are several possible sources of the contamination."  *Colony Holdings, Inc. v. Texaco Ref. and Mktg., Inc.*, No. SACV00217DOC, 2001 WL 1398403, *4 (C.D. Cal. Oct. 29, 2001) (citation omitted).  Because there is no non-speculative basis for Mr. Moreau's opinion that MTBE releases occurred after January 1999, he may not now testify that such releases exists.  As a result, Plaintiff's claims fail, as Valero did not do business in California prior to March 16, 2000.  Rule 56.1 St. ¶¶ 46-47, E. Jones Decl. ¶¶ 4, 6.

    4.  Red Triangle (2809 S. Chestnut Avenue)

The last identified MTBE release at Red Triangle occurred in December 1998.  Rule 56.1 St. ¶ 91, Expert Site Specific Report of Marcel Moreau, Red Triangle ("Moreau Rpt. – Red Triangle") at 5-6.  Mr. Moreau's report states that inspections in 2000, 2006, and 2007 indicated that additional releases may have occurred, but Mr. Moreau admits that it is not known "whether these releases were contained. . . or may have escaped into the environment."  *Id.* at p. 6; *id.*, Transcript of Deposition of Marcel Moreau ("M. Moreau Tr.") at 187:25-188:11 ("We don't have any post '98 soil sampling results from underneath the dispensers.  So we have identified some instances when there were releases from within the dispenser cabinet.  I'm not able to establish whether those releases were successfully contained or whether they made it into the environment.").  Mr. Moreau additionally testified, "I don't have an opinion as to whether or not there were releases from the post-'98 storage system."[6]  Rule 56.1 St. ¶ 91, M. Moreau Tr. at

---

[6] Mr. Moreau's testimony makes clear that he may not now testify that a post-December 1998 release occurred at Red Triangle, as such an allegation would be pure speculation, which is not enough to establish the existence of a release.  *See* Jan. 2013 Tr. at 46:6-25.

200:1-3.  Valero could not have refined, manufactured, or distributed the MTBE gasoline that Plaintiff alleges was released at the Red Triangle site, because Valero did not enter the California market until March 16, 2000.  Rule 56.1 St. ¶¶ 46-47, E. Jones Decl. ¶¶ 4, 6.

As an additional and independent basis for summary judgment at this station, Plaintiff is unable to connect VMSC or VRC-CA MTBE gasoline to the specific area of the site where the contamination allegedly exists.  Plaintiff alleges that Valero sold MTBE gasoline to jobbers Red Triangle and Nella Oil, which was delivered to 2809 South Chestnut.  Rule 56.1 St. ¶ 7, Letter from Michael Axline to M. Coy Connelly (March 6, 2013) at pp. 3-4.  However, Plaintiff has not produced any evidence that MTBE gasoline sold by Valero to Red Triangle or Nella Oil was delivered to the bulk plant, as opposed to the Fleet Card Fuels retail station, at 2809 South Chestnut.[7]  This lack of delivery evidence to the specific site of the alleged harm causes Plaintiff's claims to fail as a matter of law.

5.  Valley Gas (2139 S. Elm Street)

The last identified MTBE release at the station occurred in October or November of 1999.  Rule 56.1 St. ¶ 75, Expert Site Specific Report of Marcel Moreau, Valley Gas ("Moreau Rpt. – Valley Gas) at 3-5; id., Transcript of Deposition of Marcel Moreau at 780:2-3.  Mr. Moreau's claim that the detection of MTBE in 2004 and 2007 soil samples means that other MTBE releases "likely occurred intermittently" between the fall of 1992 and 2003 is mere conjecture, and therefore insufficient to establish the existence of a release.  Id., Moreau Rpt. – Valley Gas at 4-5; see also Jan. 2013 Tr. at 46:6-25.  Further, the fact that Mr. Moreau did not consider (nor did he rule out) whether the MTBE detected in 2004 and 2007 could have been a

---

[7] The Red Triangle station contained a retail facility and a non-retail bulk facility.  The contamination at the Red Triangle site was located at the bulk facility.  Rule 56.1 St. ¶ 91, M. Moreau Tr. at 204:13-16 ("I believe the releases from the tanks that I was describing earlier are the ones from the non-retail side of the facility. . . .").

result of the releases that occurred prior to November 1999 raises questions concerning his report's thoroughness and objectivity. *Colony Holdings, Inc.*, 2001 WL 1398403, *4 (citation omitted).   Because there is no non-speculative basis for Mr. Moreau's opinion that MTBE releases occurred after 1999, he may not now testify that such a release exists.   Consequently, Plaintiff's claims must fail, as Valero did not do business in California prior March 16, 2000. Rule 56.1 St. ¶¶ 46-47, E. Jones Decl. ¶¶ 4, 6.

As an additional and independent basis for summary judgment at this station, Plaintiff is unable to connect VMSC or VRC-CA MTBE gasoline to the station.   Plaintiff claims that Valero sold gasoline to jobber Total Energy Products, and Total Energy Products delivered gasoline to Valley Gas.   Rule 56.1 St. ¶ 7, Letter from Michael Axline to M. Coy Connelly (March 6, 2013) at pp. 4-5.   However, Plaintiff has not produced any evidence that MTBE gasoline sold by Valero to Total Energy Products was delivered to the Valley Gas station at 2139 S. Elm Street. This lack of delivery evidence to the specific site of the alleged harm causes Plaintiff's claims to fail as a matter of law.

## F.  Coastal

Plaintiff's assertions that Coastal Chem is liable at the gasoline stations at issue are all due to Coastal Chem's alleged supply of MTBE to Chevron and Exxon in California.   Rule 56.1 St. ¶ 12., E-mail from Evan Eickmeyer to Brent Allen (December 10, 2012). For the reasons below, Fresno cannot connect Coastal Chem MTBE sales to commingled gasoline at the stations identified by Plaintiff.

### 1.  Tosco #30587, Unocal #6353, and Tosco #39118

Plaintiff asserts that Coastal Chem is liable for MTBE contamination at the Tosco 30587, Unocal 6353, and Tosco 39118 stations because it allegedly sold neat MTBE to Chevron in California for five months, from August to December 1993. Rule 56.1 St. ¶ 12, E-mail from

Evan Eickmeyer to Brent Allen (December 10, 2012), Plaintiff City of Fresno's Responses to Coastal Chem, Inc.'s First Set of Interrogatories at Responses 194 and 195, Further Response of Chevron U.S.A. Inc. to Plaintiff's Preliminary Set of Interrogatories Re: Defendant Identification at Response 2. Plaintiff failed, however, to provide evidence that alleged Coastal Chem MTBE sales to Chevron resulted in gasoline containing Coastal Chem MTBE being delivered to the Tosco/Unocal stations. Plaintiff originally argued that sales of neat MTBE to Chevron in 1993 could be linked to Unocal's supply of these stations due to Chevron's acquisition of Unocal in 2005. *Id*. This argument fails because Chevron and Unocal were not linked in 1993. Moreover, Unocal's interrogatory responses in this case state, without qualification, that it supplied these sites at the relevant times with gasoline refined at Unocal's own San Francisco refinery (not Chevron's), rendering irrelevant any alleged sales of MTBE by Coastal Chem to Chevron in 1993. Rule 56.1 St. ¶¶ 54, 80, 97, Union Oil Company of California's Second Supplemental and Amended Response to Plaintiff City of Fresno's First Set of Interrogatories.

Apparently recognizing the weakness of its claim, Plaintiff additionally alleged, for the first time on March 6, 2013, that sales of MTBE to Chevron are relevant to this site through a speculative chain of events: (1) Chevron identified Coastal Chem as one of over forty suppliers of MTBE to one of Chevron's California refineries, with sales to Chevron from August to December 1993, (2) Unocal indicated that it purchased gasoline from Chevron at unidentified locations in the State of California in October 1993,[8] (3) Unocal supplied the Unocal/Tosco sites throughout the early 1990's, and therefore (4) Plaintiff surmises that MTBE from Coastal Chem might have reached the Unocal/Tosco sites. Rule 56.1 St. ¶ 12, Letter from Michael Axline to Brent Allen, March 6, 2013. The discovery responses Plaintiff reference, however, are

---

[8] Rule 56.1 St. ¶ 13, Further Response of Defendant Union Oil Company of California to Plaintiffs' Preliminary Set of Interrogatories.

insufficient to support the conclusion that Chevron gasoline containing Coastal Chem MTBE would have been delivered to Unocal-supplied trial sites, as those discovery responses merely state that Unocal purchased gasoline from Chevron at a location in the State of California, with no more specific geographic information. Rule 56.1 St. ¶ 13, Further Response of Defendant Union Oil Company of California to Plaintiffs' Preliminary Set of Interrogatories. Plaintiff's speculation is not sufficient to support a reasonable inference that Coastal Chem MTBE ever reached these sites.

### 2. Red Triangle and East Tulare Street Exxon

Plaintiff asserts that Coastal Chem is liable for MTBE contamination at the Red Triangle and East Tulare Street Exxon stations because it allegedly sold neat MTBE to Exxon in 1994 and 1997-1998. Rule 56.1 St. ¶ 12, E-mail from Evan Eickmeyer to Brent Allen (December 10, 2012), Plaintiff City of Fresno's Responses to Coastal Chem, Inc.'s First Set of Interrogatories at Responses 58, 59, 154 and 155. Plaintiff failed, however, to provide evidence that Exxon-refined gasoline was delivered to the Red Triangle and East Tulare Street Exxon sites during the time Coastal Chem allegedly supplied Exxon. Although InterCity Petroleum Marketers ("InterCity"), the owners and operators of the Red Triangle station during the relevant time period, operated as an Exxon jobber from 1992-2000, InterCity delivered the Exxon-branded gasoline it purchased to Exxon-branded locations, but the Red Triangle station was not an Exxon-branded station, and the InterCity CEO from that time had "no idea" whether Exxon-branded gasoline ever went to the Red Triangle station. Rule 56.1 St. ¶ 88, Transcript of Deposition of Gail Blue at 41:12-22 ("Q. You were Exxon branded in that Red Triangle would pick up gasoline and deliver Exxon branded gasoline to Exxon branded station. Correct? A. Yes. Yes. Q. And 2809 Chestnut was not an Exxon branded station? A. No. Q. And to your knowledge, the Exxon branded gasoline that you or Red Triangle would pick up didn't ever go to the site at 2809 Chestnut? A. I have no

27

idea."). Moreover, InterCity had no records of sales to the site during the time Coastal allegedly

supplied Exxon. *Id.* at 11:17-12:15 (no records in response to subpoena). Similarly, the East

Tulare Street station did not become an Exxon-branded location until 2002 or 2003. Rule 56.1 St.

¶ 104, Transcript of Deposition of Narinder Singh at 25:16-24. The evidence demonstrates that

neither the Red Triangle station nor the East Tulare Street Exxon station received Exxon-branded

gasoline during the time period Coastal Chem is alleged to have supplied neat MTBE to Exxon.

As a result, Coastal Chem MTBE cannot be a part of any commingled Exxon-refined gasoline at

these stations.

Moreover, even if Plaintiff hypothetically could support a reasonable inference that

Exxon-refined gasoline from the relevant time period was among the commingled product at

either of the two stations, Plaintiff cannot support a further inference that alleged Coastal Chem

MTBE sales was in any Exxon-refined gasoline allegedly delivered to the Red Triangle or East

Tulare Street stations. Plaintiff's reference to ExxonMobil's 2004 statewide responses to

California discovery requests identifying Coastal Chem as one of a dozen suppliers of MTBE to

Exxon's California refinery in 1994 and 1997-1998 does not constitute sufficient evidence to

allow a reasonable inference that gasoline containing Coastal Chem MTBE would have been

delivered to this gasoline station. Rule 56.1 St. ¶ 12, Defendant Exxon Mobil Corporation's

Responses and Objections to Plaintiffs' Preliminary Set of Interrogatories Regarding Defendant

Identification at Response 2. Indeed, the odds are decidedly against Coastal Chem MTBE ever

being in gasoline supplied to these two stations. The discovery responses do not identify any

information indicating whether Coastal Chem's MTBE was used to manufacture MTBE gasoline

that was ever delivered to the City of Fresno in general, or the Red Triangle or East Tulare

stations in particular, as opposed to the hundreds of other cities and stations throughout

California. In meet-and-confers preceding this Motion, Plaintiff provided no information suggesting shipments of gasoline containing Coastal Chem MTBE to the Fresno market during the time Coastal Chem is alleged to have supplied Exxon, falling short of the commingling scenario in the *Suffolk County* case.

     3.  <u>Chevron 9-9093 and Van Ness Auto</u>

Plaintiff asserts that Coastal Chem is liable for MTBE contamination at the Chevron 9-9093 and Van Ness Auto stations because it allegedly sold neat MTBE to Chevron from August to December 1993. Rule 56.1 St. ¶ 12, E-mail from Evan Eickmeyer to Brent Allen (December 10, 2012), Plaintiff City of Fresno's Responses to Coastal Chem, Inc.'s First Set of Interrogatories at Responses 42 and 43, Further Response of Chevron U.S.A. Inc. to Plaintiff's Preliminary Set of Interrogatories Re: Defendant Identification at Response 2. Plaintiff failed, however, to provide evidence that alleged Coastal Chem sales of MTBE to Chevron resulted in gasoline containing Coastal Chem MTBE being delivered to the Chevron 9-9093 and Van Ness Auto stations. Plaintiff's reference to Chevron discovery responses identifying Chevron as one of over forty suppliers of MTBE to one of its California refineries *for five months only* does not constitute sufficient evidence to allow a reasonable inference that Coastal Chem MTBE was in gasoline delivered to the Chevron 9-9093 and Van Ness Auto stations. The discovery responses referenced by Plaintiff do not identify any information indicating whether Coastal Chem's MTBE was used to manufacture MTBE gasoline that was ever delivered to the City of Fresno in general, or the Chevron 9-9093 and Van Ness Auto stations in particular, as opposed to the hundreds of other cities and stations throughout California. Rule 56.1 St. ¶ 12, Further Response of Chevron U.S.A. Inc. to Plaintiff's Preliminary Set of Interrogatories Re: Defendant Identification at Response 2. In meet-and-confers preceding this Motion, Plaintiff provided no information identifying shipments of gasoline containing Coastal Chem MTBE to the Fresno

market during the five months Coastal Chem is alleged to have supplied Chevron, falling far short of the commingling scenario in the *Suffolk County* case.  The Plaintiff's circumstantial itemization of isolated events without drawing any reliable links between them cannot support a reasonable inference that Coastal Chem's MTBE ever reached the Chevron 9-9093 or Van Ness Auto stations.

### G.  Kern Oil & Refining Co.

Plaintiff has indicated that it is relying upon the commingled product theory of causation as to Kern. *See* Rule 56.1 St. ¶ 29, Letter from Michael Axline and Evan Eickmeyer to Brian Ledger (Mar. 6, 2013); E-mail from Evan Eickmeyer to Brian Ledger (Dec. 11, 2012). As addressed above, Defendants assert that even under the commingled product theory the Plaintiff must be able to show that gasoline containing Kern-MTBE was actually delivered to the subject stations in Fresno in order to establish the required causal nexus for Kern. Plaintiff has conceded that it does not have any direct evidence to show delivery of gasoline containing Kern-MTBE to any of the Fresno stations.  Rule 56.1 St. ¶ 28, Ex. 1, Letter from Michael Axline and Evan Eickmeyer to Brian Ledger (Mar. 6, 2013) at p. 3, ¶ 1. Thus, under the commingled product theory, Plaintiff's claims against Kern must fail.

Even if the commingled product theory is interpreted in this case in a manner that does not require direct evidence of delivery of gasoline containing Kern-MTBE to each station, Plaintiff's claims against Kern must still fail because Plaintiff can not present evidence to show that gasoline containing Kern-MTBE was part of any commingled product at the Fresno terminals. Plaintiff alleges that Kern is a Supplier that sold MTBE to Chevron, Shell, and Valero. Rule 56.1 St. ¶¶ 25-27. Plaintiff further alleges that Chevron, Shell, and Valero blended the Kern-MTBE into gasoline that was then supplied to the Fresno terminals, from where it was distributed to thirteen stations in the Fresno area. *Id.* ¶ 28.

As to Kern's alleged supply of MTBE to Chevron, Plaintiff alleges that Chevron gasoline containing Kern-MTBE was ultimately supplied to the following Fresno stations: Tosco #30587, Chevron #9-43474, Unocal #6353, Van Ness Auto, Chevron #9-9093, and Tosco #39118. Rule 56.1 St. ¶ 28; Order, Case No. 00-cv-01898, Doc. No. 3595 (filed Jan. 3, 2013). As to Kern's alleged supply of MTBE to Shell, Plaintiff alleges commingled product with Shell gasoline containing Kern-MTBE was ultimately supplied to the following Fresno stations: M&S Texaco and Shell (1212). Rule 56.1 St. ¶ 28; Order, Case No. 00-cv-01898, Doc. No. 3595 (filed Jan. 3, 2013). As to Kern's alleged supply of MTBE to Valero, Plaintiff alleges commingled product with Valero gasoline containing Kern-MTBE was ultimately supplied to the following Fresno stations: Beacon #3519, Beacon-Arco #615, Valley Gas, Red Triangle, and Exxon. Rule 56.1 St. ¶ 28; Order, Case No. 00-cv-01898, Doc. No. 3595 (filed Jan. 3, 2013).

For the sake of brevity, Kern's arguments will be grouped as to the stations under each of the refiners to whom Kern is alleged to have supplied MTBE.

### 1.   Kern's Alleged Supply of MTBE to Shell (M&S Texaco and Shell (1212))

Plaintiff asserts that Kern is liable for MTBE contamination at these stations because it allegedly sold neat MTBE to Shell some time since approximately 1996. Rule 56.1 St. ¶ 25 Ex. 1, and Ex. 5, The Shell Defendants' Responses to Plaintiff's First Set of Interrogatories Response to Interrogatory No. 2 at p. 7-9. This is the only evidence Plaintiff could produce showing Kern supply of MTBE to Shell. *Id.*, Ex. 1. Plaintiff contends that Shell blended the Kern-MTBE into gasoline and supplied this gasoline to the Fresno terminals serving the City of Fresno area.  Rule 56.1 St. ¶ 25, Ex. 1. Plaintiff, however, fails to offer any evidence to show that gasoline containing Kern MTBE was delivered to the Fresno terminals. Consequently, Plaintiff's claim against Kern for this station must fail.

31

In *Suffolk County*, evidence showed that MTBE manufacturers (Lyondell and Equistar) sold MTBE to many refiners which shipped their gasoline in the Colonial Pipeline to the New York regional market for distribution throughout Suffolk County. Based on this evidence, the court ruled that a "reasonable jury could conclude . . . that because refiners blended Lyondell and Equistar's MTBE into gasoline that was placed in the Colonial Pipeline or shipped to the New York Harbor, some of Lyondell or Equistar's MTBE was likely found in groundwater within the capture zones of various focus Wells in Suffolk County." *In re MTBE Prods. Liab. Litig.*, 591 F. Supp. 2d. 259, 278 (2008). As addressed below, in contrast to *Suffolk County*, Plaintiff does not have evidence to show that gasoline containing Kern-MTBE was supplied to the Fresno terminals.

The only evidence specific to Kern that Plaintiff can site in support of Kern's liability for this station is an interrogatory response served in 2004 by Shell. Rule 56.1 St. ¶ 25, Ex. 1. The specific interrogatory relied upon by Plaintiff states as follows:

> Interrogatory No. 2:   Please identify the name and address of each entity from which You obtained neat MTBE for use at any Refinery owned or operated by You that supplied gasoline for ultimate delivery into Orange County [an apparent typo], the dates or date ranges when MTBE was acquired from each such supplier, and the name and address of Your Refinery(ies).

*Id.*, Ex. 5 at p. 7. In responding to Interrogatory No. 2, Shell identified Kern, as well as 40 other suppliers, of MTBE for some time after approximately 1996. *Id.*, Ex. 5 at p. 7-9. Shell's response then identifies two different refineries (the Shell Martinez Refinery and the Shell Bakersfield Refinery) in California "that may have produced gasoline that was ultimately supplied to the City of Fresno." *Id.*, Ex. 5 at p. 8. Significantly, Shell's response also indicates that "[i]t cannot be

determined with precision which company's MTBE was blended into gasoline that was shipped to any particular locality."[9] *Id.*, Ex. 5 at p. 8.

The fatal flaw in Plaintiff's reliance upon this evidence is that it does not show gasoline containing Kern-MTBE was supplied to the Fresno terminals, where it would then became part of the commingled product supplied to the Fresno area, as was required under *Suffolk County*. First, the response reflects no information concerning shipments of gasoline containing Kern-MTBE from the referenced refineries to the Fresno terminals. Rule 56.1 St. ¶ 25, Ex. 5 at p. 7-9. Plaintiff can provide no documentation specific to shipments of gasoline containing Kern-MTBE to the Fresno terminals. Certainly, these refineries' supply chains are not limited to only the Fresno terminals, as the response indicates that these refineries **may** have produced gasoline that ultimately was supplied to the City of Fresno. *Id.*, Ex. 5 at p. 8. Second, Shell's response reflects its own uncertainty as to which company's MTBE was shipped to any particular locality. Lastly, Plaintiff has no evidence regarding the timing or quantities of any possible shipment(s) of Shell gasoline containing Kern-MTBE to the Fresno terminals, other than the shipment(s) would have occurred sometime "since approximately 1996." *Id.*, Ex. 5 at p. 7-9.

In sum, no reasonable jury could conclude based on this evidence that Shell gasoline containing Kern-MTBE became part of a commingled product at the Fresno terminals that was supplied to the M&S Texaco or Shell [1212] stations in Fresno.

2. Kern's Alleged Supply of MTBE to Chevron (Tosco #30587, Chevron #9-43474, Unocal #6353, Van Ness Auto, Chevron #9-9093, and Tosco #39118.

Plaintiff asserts that Kern is liable for MTBE contamination at these stations because it allegedly sold neat MTBE to Chevron from August, 1989 to October, 1989. Rule 56.1 St. ¶ 26, Ex. 1, and Ex. 7, The Further Response of Chevron U.S.A. Inc. to Plaintiff's Preliminary Set of

---

[9]  As Shell's, Chevron's, and Valero's responses to Interrogatory No. 2 are lengthy, the responses are not stated in full. Please refer to Ledger Decl., Exs. 3, 5, and 7.

Interrogatories Re: Defendant Identification, Response to Interrogatory No. 2 at p. 7-15. Plaintiff contends that Chevron blended the Kern-MTBE into gasoline and supplied this gasoline to the Fresno terminals serving the City of Fresno area.  Rule 56.1 St. ¶ 26, Ex. 1.  Plaintiff, however, fails to offer any evidence to show that gasoline containing Kern MTBE was delivered to the Fresno terminals. The only evidence specific to Kern that Plaintiff can site for this station is a statewide interrogatory response from Chevron. *Id.*, Ex. 1. Interrogatory No. 2 asks Chevron to identify all suppliers of MTBE for refineries that supplied gasoline into the Relevant Areas. *Id.*, Ex. 7, The Further Response of Chevron U.S.A. Inc. to Plaintiff's Preliminary Set of Interrogatories Re: Defendant Identification, Interrogatory No. 2 at p. 7.

Chevron provided a global response to eight cases in California, including the City of Fresno. Rule 56.1 St. ¶ 26, Ex. 7 at p. 1. These eight cases were spread throughout California. By responding  globally to eight cases located throughout California, the only possible reading of this interrogatory response is that Chevron identified all of its MTBE suppliers for refineries serving the entire California market, not just the County of Fresno. Chevron's response also indicates that the referenced supplies of MTBE were to two refineries, at opposite ends of the state: the El Segundo Refinery (Southwest of Los Angeles) or the Richmond Refinery (North of Oakland). *Id.*, Ex. 7 at p. 15.

The flaws in Plaintiff's reliance upon this evidence to show gasoline containing Kern-MTBE was supplied to the Fresno terminals to become part of the commingled product, as required by *County of Suffolk*, are pronounced. First, as noted above, this response simply indicates that Kern supplied MTBE to Chevron that would have ultimately been supplied to one or more of the vast areas subsumed within the eight California cases identified in the caption. Second, the response reflects no information concerning shipments of gasoline containing Kern-

MTBE from the El Segundo Refinery or the Richmond Refinery to the Fresno terminals. Rule 56.1 St. ¶ 26, Ex. 7 at p. 7-15. Plaintiff can provide no documentation specific to shipments of gasoline containing Kern-MTBE to the Fresno terminals. Lastly, Kern is alleged to have supplied MTBE in only a three-month period of time in 1989. Given this limited period of supply, it becomes even more critical that Plaintiff be able to present evidence showing that the Kern-MTBE was blended with gasoline that was supplied to the Fresno terminals, as opposed to some other terminals in California. In sum, no reasonable jury could conclude based on this evidence that gasoline containing Kern-MTBE became part of a commingled product at the Fresno terminals.

     3. <u>Kern's Alleged Supply of MTBE to Valero (Beacon #3519, Beacon-Arco #615, Valley Gas, Red Triangle, and Exxon)</u>

Plaintiff asserts that Kern is liable for MTBE contamination at these stations because it allegedly sold neat MTBE to Valero from 2000 through 2003. Rule 56.1 St. ¶ 27, Ex. 1, and Ex. 3, Valero Defendants' Answers and Objections To Plaintiff's Preliminary Set of Interrogatories Re: Defendant Identification, Response to Interrogatory No. 2 at p. 6-10. Plaintiff contends that Valero blended the Kern-MTBE into gasoline and supplied this gasoline to the Fresno terminals serving the City of Fresno area.  Rule 56.1 St. ¶ 26, Ex. 1. Plaintiff, however, fails to offer any evidence to show that gasoline containing Kern MTBE was delivered to the Fresno terminals, as required by *Suffolk County*. The only evidence specific to Kern that Plaintiff can cite for this station is a statewide interrogatory response served in 2004 by Valero.  Rule 56.1 St. ¶ 27, Ex. 1. Interrogatory No. 2 asks Valero to identify all neat MTBE suppliers for any refinery that supplied gasoline into "[specified areas]," as well as the dates of supply and names and addresses of refineries. *Id.*, Ex. 3 at 6.

In responding to these Interrogatories, similar to Chevron, Valero's response was a global response to eight cases spread throughout California, including City of Fresno. Rule 56.1 St. ¶ 27, Ex. 3 at 1. By responding globally, the only possible reading of Valero's response to Interrogatory No. 2 is that Valero identified all of its MTBE suppliers for refineries serving the entire California market, not just the County of Fresno. Valero's response also indicates that the referenced supplies of MTBE were to three refineries, at opposite ends of the state: the Benicia and Martinez Refineries (East San Francisco Bay area) or the Wilmington Refinery (Southwest Los Angeles). *Id.*, Ex. 3 at p. 7. Further eviscerating any value of this interrogatory response as evidence, Valero's response makes it clear that it was not in possession of the necessary records to make any determination as to whether MTBE purchased from any of the identified suppliers was added to gasoline delivered to any specified area.[10] *Id.*, Ex. 3 at p. 7.

The flaws in Plaintiff's reliance upon this evidence to show gasoline containing Kern-MTBE was supplied to the Fresno terminals, as required by *Suffolk County* are evident. First, as with Chevron's response, Valero's response simply indicates that Kern supplied MTBE to Valero that may have been supplied to one or more of the vast areas subsumed within the eight California cases identified in the caption, only one of which is in the City of Fresno. Second, the response clearly indicates that Valero does not have the information required to state whether MTBE was added to gasoline sold or distributed in any specified area and that Valero was unable

---

[10]  "Valero Defendants and their affiliates do not, in the ordinary course of business, create or maintain data or records that track the ultimate destination of MTBE or gasoline containing MTBE refined, manufactured or sold; therefore, Valero Defendants cannot answer this interrogatory as phrased." Rule 56.1 St. ¶, Ex. 3 at 6-7. "Until Valero defendants can review such documents, they cannot answer the question as phrased." *Id.*, Ex. 3 at 6-7. "Additionally, Valero defendants identify the following suppliers or exchange partners from whom they purchased neat MTBE, but without review of additional records not currently in their possession, cannot state whether such neat MTBE was added to gasoline that was sold or distributed in the specified areas." *Id.*, Ex. 3 at 7.

to answer the interrogatory as phrased. Rule 56.1 St. ¶ 27, Ex. 3 at p. 6-7. Lastly, this response contains no information concerning shipments of gasoline containing Kern-MTBE from any refinery to the Fresno terminals. *Id.*, Ex. 3 at p. 6-10. In sum, no reasonable jury could conclude based on this evidence that gasoline containing Kern-MTBE became part of a commingled product at the Fresno terminals.

## V.   CONCLUSION

For the reasons set forth herein, moving Defendants respectfully request that the Court grant their motion for summary judgment on the negligence and strict liability claims.

Dated: March 15, 2013                                   Respectfully submitted,


/s/ M. Coy Connelly (by permission)            /s/ James R. Wedeking

M. Coy Connelly                                          James R. Wedeking
Kimberly G. Albert                                       SIDLEY AUSTIN LLP
BRACEWELL & GIULIANI                                     1501 K Street, NW
711 Louisiana Street, Suite 2300                         Washington, DC 20005
Pennzoil Place – South Tower                             Tel: (202) 736-8000
Houston, TX 77002-2770                                   Fax: (202) 736-8711
Tel: (713) 223-2300
Fax: (713) 221-1212                                      *Counsel for Duke Energy Merchants, LLC and*
                                                         *Northridge Petroleum Marketing, U.S., Inc.*
*Counsel for Valero Marketing & Supply*
*Company and Valero Refining Company-*
*California.*


/s/ Colleen P. Doyle (by permission)           /s/ Brent H. Allen (by permission)

Colleen P. Doyle                                         Brent H. Allen
Diana Pfeffer Martin                                     James Layman
Suedy Torabi                                             GREENBERG TRAURIG, LLP
HUNTON & WILLIAMS                                        2101 L Street, N.W., Suite 1000
550 South Hope Street, Suite 2000                        Washington, DC 20037
Los Angeles, CA 90071                                    Tel: (202) 331-3100
Tel: (213) 532-2000                                      Fax: (202) 331-3101
Fax: (213) 532-2020
                                                         *Counsel for Coastal Chem, Inc.*
*Counsel for Tesoro Corporation (f/k/a Tesoro*
*Petroleum Corporation) and Tesoro Refining*
*& Marketing Company*


/s/ Brian M. Ledger (by permission)

Brian M. Ledger
GORDON & REES LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
Tel: (619) 696-6700
Fax: (619) 696-7124

*Counsel for Kern Oil & Refining Co.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

In Re: Methyl Tertiary Butyl Ether ("MTBE")            Master File C.A. No.
Products Liability Litigation                          1:00-1898 (SAS)
                                                       MDL 1358

_____

**This Document Relates To:**

*City of Fresno v. Chevron U.S.A., Inc., et al.,*
Case No. 04-cv-04973
_____

### [PROPOSED] ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR LACK OF EVIDENCE PERTAINING TO CAUSATION

Upon consideration of the papers filed by the parties to this action and oral argument by

counsel, it is hereby ordered that summary judgment is GRANTED for the following Defendants

with respect to the following sites:

| Granted | Denied | Stations | Moving Defendant(s) |
|---|---|---|---|
| | | M&S Texaco, 2619 S. East Avenue | Kern |
| | | Tosco #30587, 1610 N. Palm | Coastal |
| | | | Kern |
| | | Valley Gas, 2139 S. Elm Street | Duke |
| | | | Kern |
| | | | Tesoro |
| | | | Valero |
| | | Chevron #9-43474, 1160 Fresno Street | Kern |
| | | Shell (1212), 1212 Fresno Street | Kern |
| | | Unocal #6353, 1418 E. Shaw | Coastal |
| | | | Kern |
| | | U&A Gas & Food Mart, 2929 N. Blackstone | Tesoro |
| | | Van Ness Auto, 2740 N. Van Ness | Coastal |
| | | | Kern |
| | | Red Triangle, 2809 S. Chestnut Avenue | Coastal |
| | | | Duke |

| Granted | Denied | Stations | Moving Defendant(s) |
|---------|--------|----------|---------------------|
|  |  |  | Kern |
|  |  |  | Tesoro |
|  |  |  | Valero |
|  |  | Chevron #9-9093, 3996 N. Parkway Drive | Coastal |
|  |  |  | Kern |
|  |  | Tosco #39118, 1065 N. Cedar | Coastal |
|  |  |  | Kern |
|  |  | Beacon #3519, 4591 E. Belmont Avenue | Kern |
|  |  |  | Valero |
|  |  | Beacon-Arco #615, 1625 Chestnut Avenue | Kern |
|  |  |  | Valero |
|  |  | Exxon, 4594 E. Tulare Street | Coastal |
|  |  |  | Kern |
|  |  |  | Valero |

**SO ORDERED:**

_____

The Hon. Shira A. Scheindlin
United States District Judge

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 15, 2013, a true, correct, and exact copy of the foregoing document was served on all counsel via LexisNexis File & Serve.


/s/ James R. Wedeking

James R. Wedeking