

E-SERVICE

51175523
Mar 16 2013
11:27AM

File & ServeXpress

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

In Re: Methyl Tertiary Butyl Ether ("MTBE")          Master File C.A. No.
Products Liability Litigation                                    1:00-1898 (SAS)
                                                                          MDL 1358

_____

**This Document Relates To:**

*City of Fresno v. Chevron U.S.A., Inc., et al.*,
Case No. 04-Cv-04973
_____

### DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR LACK OF EVIDENCE PERTAINING TO CAUSATION

#### The City of Fresno's Allegations Against the Defendants

1. The City of Fresno ("Plaintiff") filed a complaint against several oil and chemical companies in the Superior Court for the State of California, San Francisco County on October 22, 2003. Complaint for Damages and Other Relief, Case No. GGC-03-425649 (Cal. Super. Ct., San. Fran. Cty.) (filed Oct. 22, 2003). The case was subsequently removed to federal court and transferred to the multi-district litigation docket. Conditional MDL Transfer Order, MDL No. 1358. Plaintiff amended its complaint on October 28, 2004. First Amended Complaint, Case No. 04-cv-04973, MDL 1358 (June 28, 2004) ("FAC").

2. Plaintiff alleged that the defendants are refiners, distributors or suppliers of methyl butyl tertiary ether ("MTBE"), or gasoline containing MTBE, who knew or should have known that MTBE gasoline would be discharged from retail gasoline stations, enter public water supplies, and render drinking water unusable and unsafe. FAC ¶ 2.

3. On September 17, 2012, Plaintiff issued a "station matrix" for all sites that it alleged to be the source of a gasoline discharge which contaminated groundwater with MTBE. *See*

Declaration of James R. Wedeking in Support of Defendants' Motion for Summary Judgment For Lack of Evidence Pertaining to Causation ("Wedeking Decl."), Ex. 1, Letter from Evan Eickmeyer to all counsel (Sept. 17, 2012) with attached "Station Matrix." Plaintiff amended its Station Matrix on October 5, 2012, dismissing defendants at some sites. Wedeking Decl., Ex. 1, City of Fresno's Station Matrix (Revised 10/5/12) (Oct. 5, 2012).

4.  The Court issued CMO No. 108 memorializing the station matrix and dismissing with prejudice all of Plaintiff's claims with regard to nineteen specific sites. Order, Case No. 00-cv-01898, Doc. No. 3595 (filed Jan. 3, 2013). The Court granted summary judgment to all defendants on Plaintiff's trespass claim. Order, Case No. 00-cv-01898, Doc No. 3611 (filed Feb. 4, 2013).

5.  Plaintiff agreed to dismiss its nuisance claim against some of the moving Defendants at several of the named stations. Plaintiff will dismiss its nuisance claims as follows:

| Station | Parties to be dismissed (nuisance only) |
| --- | --- |
| M&S Texaco, | Kern Oil |
| Tosco # 30587 | Coastal, Kern Oil |
| Beacon # 3519 | Kern Oil |
| Beacon-ARCO # 615 | Kern Oil |
| Valley Gas | Kern Oil, Tesoro |
| Chevron # 9-4374 | Coastal, Kern Oil |
| Shell (1212) | Kern Oil |
| Unocal # 6353 | Coastal, Kern Oil |
| U&A Gas and Food Mart | Tesoro |
| Gilbert's Exxon | Coastal |
| Van Ness Auto | Coastal, Kern Oil |
| Smith Tank Lines (former Carey Oil) | Kern Oil, Valero |
| Red Triangle Oil | Coastal, Kern Oil, Tesoro, Valero |
| Chevron # 9-9093 | Coastal, Kern Oil |
| Tosco # 39118 | Coastal, Kern Oil |
| Tulare Exxon | Coastal, Kern Oil |

Wedeking Decl., Ex. 2, Letter from Michael Axline and Evan Eickmeyer to Jeffrey J. Parker (Feb. 8, 2013); Declaration of Diana P. Martin in Support of Tesoro's Motion for Summary

Judgment For Lack of Evidence Pertaining to Causation ("Martin Decl."), Ex. 4, Letter from Michael Axline to Suedy Torabi (Mar. 6, 2013).

6. Plaintiff agreed to dismiss all claims against Duke for the Smith Tank Lines, Van Ness Auto, Tulare Exxon, Beacon # 3519, and Beacon-ARCO # 615 stations. Wedeking Decl., Ex. 2, Letter from Michael Axline and Evan Eickmeyer to James R. Wedeking (Feb. 8, 2013).

7. Plaintiff agreed to dismiss all claims against the Valero Defendants for the Smith Tank Lines and Beacon #537 stations. Declaration of M. Coy Connelly in Support of Defendants' Motion for Summary Judgment for Lack of Evidence Pertaining to Causation ("Connelly Decl."), Ex. 1 at pp. 4-6, Letter from Michael Axline to M. Coy Connelly (March 6, 2013).

8. Plaintiff agreed to dismiss Coastal Chem from the Gilbert's Exxon and Chevron 9-4374 stations.  Declaration of Brent Allen in Support of Defendants' Motion for Summary Judgment for Lack of Evidence Pertaining to Causation ("Allen Decl."), Ex. 1 p.2, Letter from Michael Axline to Brent Allen (March 6, 2013).

9. After considering the aforementioned rulings and written commitments by Plaintiff to dismiss claims against individual defendants, the remaining claims against the moving Defendants are as follows:

|   | Station Name and Address | Defendants | Claims |
|---|---|---|---|
| 1 | M&S Texaco<br>2619 S. East Avenue | Kern Oil | Strict liability, negligence |
| 2 | Tosco #30587<br>1610 N. Palm | Coastal | Strict liability, negligence |
|   |   | Kern Oil | Strict liability, negligence |
| 3 | Beacon #3519<br>4591 E. Belmont Avenue | Kern Oil | Strict liability, negligence |
|   |   | Valero | Strict liability, negligence, nuisance |
| 4 | Beacon #615<br>1625 Chestnut Avenue | Kern Oil | Strict liability, negligence |
|   |   | Valero | Strict liability, negligence, nuisance |
| 5 | Valley Gas, 2139 South Elm | Duke | Strict liability, negligence, nuisance |
|   |   | Kern Oil | Strict liability, negligence |

|   | Station Name and Address | Defendants | Claims |
|---|---|---|---|
|   |   | Tesoro | Strict liability, negligence |
|   |   | Valero | Strict liability, negligence, nuisance |
| 6 | Chevron #9-4374 1160 Fresno Street | Coastal | Strict liability, negligence |
|   |   | Kern Oil | Strict liability, negligence |
| 7 | Shell (1212) 1212 Fresno Street | Kern Oil | Strict liability, negligence |
| 8 | Unocal #6353 1418 E. Shaw | Coastal | Strict liability, negligence |
|   |   | Kern Oil | Strict liability, negligence |
| 9 | U&A Gas & Food Mart 2929 N. Blackstone | Tesoro | Strict liability, negligence |
| 10 | Van Ness Auto 2740 N. Van Ness | Coastal | Strict liability, negligence |
|   |   | Kern Oil | Strict liability, negligence |
| 11 | Red Triangle Oil 2809 S. Chestnut Avenue | Coastal | Strict liability, negligence |
|   |   | Duke | Strict liability, negligence, nuisance |
|   |   | Kern Oil | Strict liability, negligence |
|   |   | Tesoro | Strict liability, negligence |
|   |   | Valero | Strict liability, negligence |
| 12 | Chevron #9-9093 3996 N. Parkway Drive | Coastal | Strict liability, negligence |
|   |   | Kern Oil | Strict liability, negligence |
| 13 | Tosco #39118 1065 N. Cedar | Coastal | Strict liability, negligence |
|   |   | Kern Oil | Strict liability, negligence |
| 14 | Tulare Exxon 4594 E. Tulare Street | Coastal | Strict liability, negligence |
|   |   | Kern Oil | Strict liability, negligence |
|   |   | Valero | Strict liability, negligence, nuisance |

10. Defendants filed a joint motion seeking summary judgment that claims for strict liability,
negligence, and nuisance at nine stations are barred by the statute of limitations. *See*
Defendants' Notice of Motion and Motion for Summary Judgment Based on the Statute of
Limitations or, Alternatively, for Lack of Injury (filed Feb. 1, 2013). That motion is currently
pending before the Court.

**The Moving Defendants**

**Coastal Chem, Inc.**

11. Plaintiff identified Coastal Chem, Inc. as a Manufacturer/Supplier Defendant in this case. FAC ¶¶ 27, 30, 32.

12. Fresno alleges that Coastal Chem is liable in this case as a result of its alleged supply of neat MTBE in California to Chevron and Exxon.  Allen Decl., Ex. 1 p. 1 (E-mail from Eickmeyer to Allen, December 10, 2012), Allen Decl. Ex. 2. (Plaintiff City of Fresno's Responses to Coastal Chem, Inc.'s First Set of Interrogatories) at Responses 42, 43, 58, 59, 154, 155, 194 and 195, Allen Decl. Ex. 3 (Defendant Exxon Mobil Corporation's Responses and Objections to Plaintiffs' Preliminary Set of Interrogatories Regarding Defendant Identification), and Ledger Decl. Ex. 1 (Further Response of Chevron U.S.A. Inc. to Plaintiff's Preliminary Set of Interrogatories Re: Defendant Identification).

13. Fresno also alleges that Coastal Chem is liable in this case a result of Unocal's purchases of gasoline from Chevron in California.  Allen Decl., Ex. 1, p. 4 (Letter from Axline to Allen, March 6, 2013), Allen Decl. Ex. 3, p.9 (Further Response of Defendant Union Oil Company of California to Plaintiffs' Preliminary Set of Interrogatories).

14. Plaintiff does not allege that Coastal Chem refined gasoline, distributed gasoline, or owned or operated any gasoline delivery facilities.  FAC ¶¶ 7-26, 33-47, 48-50.

## The Duke Defendants

15. Plaintiff's First Amended Complaint originally named four Duke-related entities as defendants in this case: Duke Energy Merchants, LLC, Northridge Petroleum Marketing U.S., Duke Energy Merchants California, Inc., and Duke Energy Trading & Marketing, LLC. FAC ¶¶ 37, 38, 41-42. Plaintiff alleged that these defendants were "Distributor Defendants" that supplied MTBE gasoline to "areas that affect Fresno's water system." *Id.* ¶ 33.

16. Through a February 8, 2013 letter, Plaintiff agreed to dismiss Duke Energy Merchants California, Inc. and Duke Energy Trading & Marketing, LLC. Wedeking Decl., Ex. 2, Letter from Michael Axline and Evan Eickmeyer to James R. Wedeking (Feb. 8, 2013). The only two Duke defendants remaining are Duke Energy Merchants, LLC ("DEM") and Northridge Petroleum Marketing U.S. ("Northridge") (collectively, "Duke").

17. Northridge was a commodities trading company with its office in Calabasas, California. Declaration of David W. Wright in Support of Defendants' Motion for Summary Judgment For Lack of Evidence Pertaining to Causation ("Wright Decl.") at ¶ 5. It began doing business in California in approximately June 1996. *Id.* at ¶ 6. Among the commodities that Northridge traded was gasoline containing MTBE. *Id.* at ¶ 5. Northridge did not buy or sell neat MTBE. *Id.* at ¶ 13.

18. Northridge leased tanks at the Kinder Morgan terminal in Fresno, California, beginning in approximately June 1996. *Id.* at ¶ 6. Northridge took title to gasoline refined by other companies as it arrived at the terminal via pipeline. *Id.* Northridge then sold that gasoline at the terminal's loading rack to independent distributors known as "jobbers." *Id.* Sales were based on the daily spot-market price for gasoline. *Id.* at ¶ 7. Northridge had no contracts or supply agreements with any company for the sale of gasoline. *Id.*

19. Northridge's sales of gasoline to a jobber generated a bill of lading. *Id.* at ¶ 8. The bills of lading show the type of gasoline Northridge sold as well as the volume, the date, and the time of the sale. <u>Id.</u> These bills of lading also included the purchaser's billing address. *Id.* A bill of lading typically does not contain any information regarding where the purchaser would ultimately deliver gasoline it purchased from Northridge. *Id.*

20. All of Northridge's business was conducted from its office in Calabasas. *Id.* at ¶9. No Northridge employee or representative was physically present at the Fresno terminal. *Id.* Therefore, no Northridge employee or representative was in a position to learn where a jobber would ultimately deliver Northridge's gasoline from the jobber's employees. *Id.*

21. In February 2000, DEM purchased Northridge. *Id.* at ¶ 10. Prior to that time, DEM did not do business in California. *Id.* After the acquisition, Northridge assumed the DEM name and otherwise continued conducting business without any material changes in its operations. *Id.*

22. DEM ceased doing business in California in July 2006. *Id.* at ¶ 11.

23. During their times of doing business in the Fresno area, neither Northridge nor DEM manufactured MTBE or refined gasoline. *Id.* at ¶ 13. They did not own, operate, or lease a refinery. *Id.* Nor did the companies ship gasoline by pipeline; own, operate, or lease retail gasoline stations; or own real estate where a retail gasoline station was located. *Id.* Neither DEM nor Northridge marketed a "Duke" or "Northridge" brand of gasoline or enter into branding agreements with retail gasoline stations. *Id.* Neither company acted as a jobber or otherwise distributed gasoline to retail stations by tanker truck or other means. *Id.* DEM and Northridge did not communicate with the employees or representatives of retail gasoline stations, including but not limited to, the provision of operating manuals, operating standards, instructions, checklists, or any other form of written or verbal communication. *Id.*

24. DEM and Northridge, collectively, sold MTBE gasoline to InterCity Petroleum Marketers and Southern Counties Oil Company, doing business as Total Energy, between the years of 1996 and 2003. Wright Decl. at ¶ 12, Ex. 1.

**<u>Kern Oil & Refining Co.</u>**

25. Plaintiff alleges that Kern Oil & Refining Co. ("Kern") supplied neat MTBE to Shell Oil Company, Equilon Enterprises LLC, Equiva Services LLC, and Texaco Refining and Marketing Inc. (collectively "Shell Defendants") some time since approximately 1996, and Plaintiff's only evidence to support this allegation is the Shell Defendants' Response to Interrogatory No. 2 contained within the Shell Defendants' Responses to Plaintiff's First Set of Interrogatories. *See* Declaration of Brian Ledger in Support of Defendants' Motion for Summary Judgment For Lack of Evidence Pertaining to Causation ("Ledger Decl."), Ex. 1, Letter from Michael Axline and Evan Eickmeyer to Brian Ledger (Mar. 6, 2013) and E-mail from Evan Eickmeyer to Brian Ledger (Dec. 11, 2012) (attaching Valero Defendants' Answers and Objections to Plaintiffs' Preliminary Set of Interrogatories Re: Defendant Identification, Further Response of Chevron U.S.A. Inc. to Plaintiff's Preliminary Set of Interrogatories Re: Defendant Identification, and the Shell Defendants' Responses to Plaintiff's First Set of Interrogatories), and Ex. 5, the Shell Defendants' Responses to Plaintiff's First Set of Interrogatories, Response to Interrogatory No. 2, at p. 7-9 (August 30, 2004).

26. Plaintiff alleges that Kern supplied neat MTBE to Chevron U.S.A. Inc. ("Chevron") from August, 1989 to October, 1989, and Plaintiff's only evidence to support this allegation is Chevron's Response to Interrogatory No. 2 contained within The Further Response of Chevron U.S.A. Inc. to Plaintiff's Preliminary Set of Interrogatories Re: Defendant Identification. Ledger Decl., Ex. 1 and Ex. 7, Further Response of Chevron U.S.A. Inc. to Plaintiff's Preliminary Set of Interrogatories Re: Defendant Identification, Response to Interrogatory No. 2, at p. 7-15 (August 30, 2004).

27. Plaintiff alleges that Kern supplied neat MTBE to Valero from 2000 through 2003, and Plaintiff's only evidence to support this allegation is the Valero Defendants' Response to Interrogatory No. 2 contained within Valero Defendants' Answers and Objections To Plaintiff's Preliminary Set of Interrogatories Re: Defendant Identification. Ledger Decl., Ex. 1 and Ex. 3, Valero Defendants' Answers and Objections To Plaintiff's Preliminary Set of Interrogatories Re: Defendant Identification, Response to Interrogatory No. 2, at p. 6-10 (August 30, 2004).

28. Plaintiff further alleges that Chevron, Shell, and Valero blended the Kern-supplied MTBE ("Kern-MTBE") into gasoline that was then supplied to the Fresno terminals, where it became part of a commingled product that was distributed to thirteen stations in the Fresno area. Ledger Decl., Ex. 1.

29. Plaintiff is relying solely upon the commingled product theory to establish the required causal nexus for Kern.  Ledger Decl., Ex. 1.

30. Plaintiff conceded that it does not have any direct evidence to show delivery of gasoline containing Kern-MTBE to any of the Fresno stations. Ledger Decl., Ex. 1, Letter from Michael Axline and Evan Eickmeyer to Brian Ledger (Mar. 6, 2013) at p. 3, ¶ 1.

### The Tesoro Defendants

31. Plaintiff's First Amended Complaint named two Tesoro entities, Tesoro Corporation (formerly known as Tesoro Petroleum Corporation) and Tesoro Refining and Marketing Company (erroneously named as Tesoro Refining and Marketing Company, Inc.) (collectively "Tesoro"). FAC ¶¶ 17, 18. Plaintiff classified Tesoro among the "Refiner Defendants" that "marketed, supplied and provided gasoline containing MTBE . . . [that] was distributed and sold in areas affecting Fresno's water system." *Id.* ¶ 7.

32. Tesoro did not own, operate, lease, or have a gasoline retail supply agreement with Red Triangle Oil for its 2809 South Chestnut station, the U&A station, located at 2929 North Blackstone, or with Valley Gas for its 2139 South Elm station. Declaration of Robert G. Mills in Support of Defendants' Motion for Summary Judgment For Lack of Evidence Pertaining to Causation ("Mills Decl.") ¶ 3;.

33. Tesoro did not sell or deliver gasoline directly to the Red Triangle, U&A, or Valley Gas stations. Mills Decl. ¶ 3.

34. Tesoro sold gasoline containing MTBE to jobbers at the gasoline sales terminal. Martin Decl., Ex. 1, Defendants Tesoro Corporation (F/K/A Tesoro Petroleum Corporation) and Tesoro Refining and Marketing Company's (Erroneously Named as Tesoro Refining and Marketing Company, Inc.) Response to Plaintiff City of Fresno's First Set of Interrogatories to Defendants ("Tesoro's Responses to Plaintiff's First Set of Interrogatories"), Interrogatory No. 5. Sales to jobbers were free on board (FOB), meaning title and possession of the gasoline transferred from Tesoro to the jobber at the gasoline sales terminal. Mills Decl. ¶ 4.

35. Tesoro relinquished control over the gasoline at the time of its sale to the jobber and did not track where the gasoline was ultimately sold or delivered.  Mills Decl. ¶ 4.

36. Tesoro provided the jobbers with bills of lading at the gasoline sales terminal at the time of its sale of gasoline to them. Mills Decl. ¶ 4. The bills of lading identified Tesoro as providing the gasoline and the jobber as receiving the gasoline, as well as information on the type and quantity of product transferred. *Id.*  The bills of lading did not identify the location where the jobber delivered the gasoline. *Id.*

37. Tesoro supplied the gasoline at gasoline sales terminal to Inter-City Petroleum Marketers, Inc, a predecessor to Red Triangle Oil Company (as a jobber), in 1994-1996, 1999-2003, Red

Triangle Oil Company, Inc. (as a jobber) in 2002 and 2003; and Southern Counties in 1995, 1996, 1999-2003 Martin Decl., Ex. 1, Tesoro's Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 5.

Red Triangle (2809 S. Chestnut)

38. Plaintiff identified "Red Triangle" as the only jobber that may have delivered Tesoro gasoline to the Red Triangle station. Martin Decl., Ex. 1, Plaintiff City of Fresno's Supplemental Responses to Tesoro Corporation's and Tesoro Refining and Marketing Company's First Set of Interrogatories to Plaintiff City of Fresno ("Plaintiff's Supplemental Responses to Tesoro's First Set of Interrogatories"), Interrogatory Nos. 1, 2. Plaintiff presented no evidence that InterCity Petroleum Marketers, Inc. (as a jobber) or Red Triangle Oil Company, Inc. (as a jobber) delivered Tesoro gasoline containing MTBE to the Red Triangle station prior to 1998. *See* Declaration of James R. Wedeking in Support of Defendants' Motion for Summary Judgment for Lack of Evidence Pertaining to Causation ("Wedeking Decl."), Ex. 6, Mar. 18, 2011 Transcript of deposition of Gail Blue at pp. 17:12-18:10; 38:22-39:3 (Testifying "I really don't know [if the Red Triangle station purchased Tesoro gas]"); *see also id.*, Ex. 7, Mar. 17, 2011 Transcript of deposition of Glen Blue at pp. 22:4-23:12; *id.*, Ex. 4, Feb. 9, 2011 Transcript of deposition of Joel Hohenshelt at pp. 80:24-81:9.

39. Records produced by Red Triangle indicate that Tesoro gasoline was delivered to the Red Triangle station in 2003. Wedeking Decl., Ex. 3, REDTRIANGLE-SHE-000053; *id.*, REDTRIANGLE-SHE-000101; *id.*, RED-TRIANGLE-SHE-00000127. These deliveries occurred several years after the only release of MTBE at the Red Triangle station was detected. *See* ¶ 92.

<u>U&A (2929 N. Blackstone) and Valley Gas (2139 South Elm)</u>

40.  Plaintiff identified Southern Counties Oil Co., Ltd. d.b.a Total Energy Products ("Southern Counties") as the only jobber that may have delivered Tesoro gasoline to the U&A and Valley Gas stations. Martin Decl., Ex. 1, Plaintiff's Supplemental Responses to Tesoro's First Set of Interrogatories, Interrogatory Nos. 1, 2.

41. The only purported facts Plaintiff presents in its interrogatory responses to support its allegation that Tesoro gasoline was delivered to the U&A and Valley Gas stations are 1) Tesoro sold gasoline to Southern Counties d.b.a. Total Energy Products, 2) Total Energy Products had authority to supply Tesoro branded fuels to stations in Fresno, and 3) Total Energy supplied gasoline to the U&A and Valley Gas stations. *Id.*

42. Plaintiff presented no evidence that Southern Counties delivered Tesoro gasoline to the U&A station. *See* Martin Decl., Ex. 2, Jul. 27, 2011 Transcript of deposition of Balinder Mehat, Sr. at pp. 12:16-13:12, 63:2-7; *id.*, Jul. 27, 2011 Transcript of deposition of Baldev Singh Sandhu at pp. 14:12-19, 17:2-5, 34:9-35:4; *id.*, Aug. 9, 2011 Transcript of deposition of Dalibir Singh at pp. 11:4-12:20, 49:24-50:18. The former U&A station owners and/or operators no longer possess historical records related to the station. *Id.* They cannot confirm whether Tesoro gasoline was supplied to the station. *Id.*

43. Plaintiff presented no evidence that Southern Counties delivered Tesoro gasoline to the Valley Gas station. *See* Martin Decl., Ex. 3, Feb. 16, 2011 Transcript of deposition of Imtiaz Ahmad at pp. 25:7-9; *id.*, Ex. 3, Feb. 16, 2011 Transcript of deposition of Shirley Ahmad at pp. 12:10-22, 16:15-17:11. The former Valley Gas station owners and/or operators no longer possess historical records related to the station. *Id.* They cannot confirm whether Tesoro gasoline was supplied to the station. *Id.*

44. Southern Counties produced no documents related to the U&A and Valley Gas stations in response to Plaintiff's subpoena to produce documents. Decl. of Martin Decl., Ex. 1, Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, to Custodian of Records, Southern Counties Oil Co., c/o Robert Bollar (Agent for SOP) (Feb. 24, 2011).

**Valero**

45. Plaintiff's First Amended Complaint named two Valero entities, Valero Marketing and Supply Company ("VMSC") and Valero Refining Company-California ("VRC-CA") (collectively "Valero"). FAC ¶¶ 15, 16. Plaintiff classified Valero among the "Refiner Defendants" that "owned and operated refineries in California and/or designed, formulated, refined, manufactured, promoted, marketed, supplied and provided gasoline containing MTBE … [that] was distributed and sold in areas affecting Fresno's water system"; "MTBE/TBA Manufacturer/Supplier Defendants" that "manufactured, promoted, marketed, sold, supplied and provided MTBE . . . [that] was added to gasoline which was distributed and sold in areas affecting Fresno's water system"; and "Distributor Defendants" that supplied MTBE gasoline "for resale in areas that affect Fresno's water system." *Id.* ¶ 7, 27, 33.

46. VMSC is a distributor of gasoline and other products, having done business in California only since March 16, 2000. Declaration of Ethan Jones ("E. Jones Decl.") ¶ 4. VMSC did not do business in the State of California before this date. *Id.* VMSC purchases refined products from certain of Valero's refineries and markets those products to various parties. *Id.* ¶ 5. VMSC has neither manufactured MTBE nor refined gasoline. *Id.* VMSC has never owned, operated, or leased a refinery. *Id.*

47. VRC-CA refines crude oil into gasoline and other products, having done business in California only since March 16, 2000. E. Jones Decl. ¶ 6. VRC-CA did not do business in the State of California before this date. *Id.*

48. On or about May 15, 2000, VRC-CA purchased the Benicia refinery, located at 3400 E. 2nd Street in Benicia, California, from Exxon Mobil Corporation, and has owned and operated the refinery since that date. E. Jones Decl. ¶ 7.

49. VMSC and VRC-CA are subsidiaries of Valero Energy Corporation. E. Jones Decl. ¶ 3.

50. Ultramar Inc. is a Nevada corporation with operations primarily in Wilmington, California. E. Jones Decl. ¶ 14.   It was incorporated on April 10, 1931. *Id.* Beacon Oil Company ("Beacon") was acquired by and merged into Ultramar Inc. on September 18, 1989. *Id.* On December 3, 1996 Ultramar Corporation merged with Diamond Shamrock, Inc. to form Ultramar Diamond Shamrock Corporation. *Id.* ¶ 15. After this merger, Ultramar Inc. continued in existence as a subsidiary of Ultramar Diamond Shamrock Corporation. *Id.* On December 31, 2001, Ultramar Diamond Shamrock Corporation merged with and into Valero Energy Corporation. *Id.* ¶ 16. At that time, Ultramar Inc. became a subsidiary of Valero Energy Corporation. *Id.* Ultramar Inc., VMSC, and VRC-CA have continued to operate as subsidiaries of Valero Energy Corporation since December 31, 2001. *Id.* ¶ 17.

51. Ultramar Inc. did not merge with or into VMSC. E. Jones Decl. ¶ 18. With respect to the Beacon #3519, Beacon-ARCO #615, Valley Gas, Red Triangle, and Tulare Exxon stations, Ultramar Inc. has not transferred or assigned any liabilities, obligations or property to VMSC, nor has VMSC assumed or received any liabilities, obligations or property from Ultramar Inc.  *Id.* Ultramar Inc. did not merge with or into VRC-CA. *Id.* ¶ 19. With respect to the Beacon #3519, Beacon-ARCO #615, Valley Gas, Red Triangle, and Tulare Exxon

stations, Ultramar Inc. has not transferred or assigned any liabilities, obligations or property to VRC-CA, nor has VRC-CA assumed or received any liabilities, obligations or property from Ultramar Inc. *Id.* Ultramar Inc. continues to exist and conduct business as of March 15, 2013. *Id.* ¶ 20. Thus, neither VMSC nor VRC-CA are successors-in-interest to Ultramar Inc. *Id.*

### The Sites at Issue

<u>Tosco # 30587, 1610 N. Palm Avenue</u>

52. Union Oil Company of California ("Unocal") leased the Tosco 30587 property at 1610 N. Palm Avenue from prior to 1979 until April 1997. Allen Decl., Ex. 4 p. 4 (Union Oil Company of California's Second Supplemental and Amended Response to Plaintiff City of Fresno's First Set of Interrogatories).

53. Unocal supplied gasoline to the Tosco 30587 station from 1986 until 1997. *Id.*

54. Unocal supplied this site with gasoline refined at Unocal's San Francisco refinery. *Id.*

<u>Beacon # 3519, 4591 E. Belmont Avenue</u>

55. The Beacon #3519 site is located at 4591 E. Belmont Avenue in Fresno. Connelly Decl., Ex. 4 at p. 2 (VLO-FRESNO-0010453, Beacon Oil Company Intra-Company Memorandum (Dec. 3, 1971)).

56. This ARCO-branded station was leased from Irene Armey by Beacon/Ultramar Inc. from March 1, 1971 until October 20, 1999. Connelly Decl., Ex. 14 at pp. 2-3 (Valero Defendants' Responses to Plaintiff City of Fresno's First Set of Interrogatories to Defendants ("Valero's Responses to First Set of Interrogatories"), Interrogatory No. 3); *id.*, Ex. 4 at p. 2 (VLO-FRESNO-0010453, Beacon Oil Company Intra-Company Memorandum (Dec. 3, 1971)). Ultramar Inc. assigned its rights in the lease to Gasamat Oil Corp. of Colorado ("Gasamat")

on October 20, 1999, but retained a remediation agreement. *Id.*, Ex. 4 at p. 3 (VLO-FRESNO-0010454, Email from Debbie Dirks to Julie Johns (Jan. 29, 2001)). Ultramar Inc. sold its assets and improvements at Beacon #3519 to Gasamat at that time, as well. *Id.* at p. 4 (VLO-FRESNO-0010455, Ultramar Diamond Shamrock Corp. Memorandum (March 1, 2000)).

57. On December 10, 1998, three underground storage tanks were removed from the site, and later replaced. Connelly Decl., Ex. 12 at p. 1 (Expert Site Specific Report of Marcel Moreau, Beacon 3519 ("Moreau Rpt. – Beacon 3519")); *id.*, Ex. 8 at 767:2-6 (Transcript of Deposition of M. Moreau ("M. Moreau Tr.")).   On December 11, 1998 Fresno County filed an Unauthorized Release Report for a gasoline release discovered during the previous day's tank removals.  *Id.*, Ex. 12 at p. 1 (Moreau Rpt. – Beacon 3519). Soil samples collected at that time revealed MTBE contamination at the site. *Id.* at pp. 1-2. Plaintiff's expert witness, Marcel Moreau, did not identify any MTBE releases as having occurred after the December 1998 removal of the station's underground storage tanks. *Id.* at p. 4; *id.*, Ex. 8 at 767:2-6 (M. Moreau Tr.).

58. In 2001, Gasamat assigned its interest in the lease and sold its assets and improvements at Beacon #3519 to Nirmal Gill.  Connelly Decl., Ex. 4 at p. 1 (FCDEH-FRESNO-017903, Purchase and Sale Agreement between Gasamat Oil Corp. and Mr. Nirmal S. Gill (July 17, 2001)).   Mr. Gill and his business partner Navdeep "Gary" Singh began operating the ARCO-branded station on January 10, 2002 and have been operating it continually since that time. *Id.*, Ex. 9 at 9:6-17; 84:9-17 (Transcript of Deposition of Gary Singh). Mr. Singh testified that he and Mr. Gill own the station and equipment at the site, while the physical property is owned by Melvin Armey. *Id.* at 9:19-10:1.

59. Neither VMSC nor VRC-CA did business in the State of California prior to March 16, 2000. E. Jones Decl. ¶¶ 4, 6.

### I.   Beacon-ARCO #615, 1625 Chestnut Avenue

60. The Beacon-ARCO #615 site is located at 1625 Chestnut Avenue in Fresno. Connelly Decl., Ex. 3 at p. 1 (FCDEH-FRESNO-016697, Underground Storage Tank Unauthorized Release (Leak) / Contamination Site Report (Oct. 13, 1998)).

61. The Martinoil Company ("Martinoil") has owned Beacon-ARCO #615 since the 1980s. Connelly Decl., Ex. 7 at 22:22-24:23 (Transcript of Deposition of Dan Martin ("D. Martin Tr.")). In November 1984, Martinoil entered into a branded distributor agreement (the "Franchise Agreement") with ARCO Petroleum Products Company ("ARCO"). *Id.* at 41:20-43:9; *id.*, Ex. 3 at p. 3 (MARTIN-FRESNO-0008, Branded Distributor Gasoline Agreement (undated)). The Franchise Agreement gave Martinoil the right to distribute ARCO gasoline at certain Martinoil stations, including Beacon-ARCO #615, from October 1, 1984 to September 30, 1987. *Id.*, Ex. 7 at 41:20-44:13 (D. Martin Tr.); *id.*, Ex. 3 at p. 3 (MARTIN-FRESNO-0008, Branded Distributor Gasoline Agreement (undated)).

62. On November 29, 1984, Martinoil sold and assigned its rights, obligations, and interests under the Franchise Agreement to Beacon, but retained ownership of Beacon-ARCO #615. Connelly Decl., Ex. 3 at p. 2 (MARTIN-FRESNO-0001, Handwritten Notes of Dan Martin (undated)); *id.*, Ex. 7 at 40:12-14; 41:20-44:13 (D. Martin Tr.). Beacon began leasing Beacon-ARCO #615, which it operated as an ARCO-branded station, from Martinoil in or around November 1984. *Id.*, Ex. 3 at p. 2 (MARTIN_FRESNO-0001, Handwritten Notes of Dan Martin (undated)).

63. In 1987, the site's premium unleaded gasoline tank failed a tightness test. Connelly Decl., Ex. 11 at pp. 1-2 (Expert Site Specific Report of Marcel Moreau, Beacon-ARCO 3615 ("Moreau Rpt. – Beacon-ARCO 3615")). Plaintiff's expert witness, Marcel Moreau, opined that the test results indicated that a leak likely existed in the tank piping, but was unable to say whether or not the station's gasoline contained MTBE at that time. *Id.* at p. 5. A diesel dispenser release, possibly containing MTBE, was discovered during a June 7, 1994 inspection. *Id.*

64. On June 10, 1998, four USTs were removed from the site, and soil samples were collected on June 10-11, 1998.  Connelly Decl., Ex. 11 at p. 1 (Moreau Rpt. – Beacon-ARCO 3615). Testing of these soil samples revealed the presence of MTBE. *Id.* The site's discharge of gasoline was determined to have been stopped on June 10, 1998, the date of tank removal. *Id.*, Ex. 3 at p. 1 (FCDEH-FRESNO-016697, Underground Storage Tank Unauthorized Release (Leak) / Contamination Site Report (Oct. 13, 1998)).

65. New underground storage tanks were installed at the site on June 15, 1998. Connelly Decl., Ex. 11 at p. 1 (Moreau Rpt. – Beacon-ARCO 3615). Mr. Moreau did not identify any MTBE releases as having occurred at Beacon-ARCO #615 after June 10, 1998. *Id.* at p. 5; *id.*, Ex. 8 at 773:23-774:4 (Transcript of Deposition of Marcel Moreau).

66. Neither VMSC nor VRC-CA did business in the State of California prior to March 16, 2000. E. Jones Decl. ¶¶ 4, 6.

Valley Gas, 2139 South Elm

67. Valley Gas is located at 2139 South Elm in Fresno, California. Wedeking Decl. Ex. 4, RWQCB-FRESNO-001239, Underground Storage Tank Unauthorized Release (Leak)/ Contamination Site Report (Jan. 24, 2000).

68. Ultramar Inc. owned this station until October 29, 1991. Martin Decl., Ex. 3, Transcript of Deposition of Imtiaz Ahmad ("I. Ahmad Tr.") at 20:5-20:20; 23:14-23:19. An entity known as Petro Group II purchased the station from Ultramar. At the time of the sale, there was no petroleum contamination at the site. Connelly Decl., Ex. 2 (VLO-FRESNO-0000320, Letter from Randall K. Stephenson, Ultramar Inc. to Fresno County Environmental Health Department (May 8, 1991)); Martin Decl., Ex. 3, I. Ahmad Tr. at 62:13-63; *id.*, Ex. 3, Expert Site Specific Report of Marcel Moreau, Fresno Valley Gas ("Moreau Rpt. – Valley Gas") at 1.

69. Plaintiff's expert witness, Mr. Marcel Moreau, opined that there was evidence of gasoline leaks during Ultramar's ownership. Martin Decl., Ex. 3, Moreau Rpt. – Valley Gas at 3-4. However, he also opined that MTBE was not commonly added to California gasoline before the October 1991 sale of the Valley Gas station. Mr. Moreau also identified a leak that was discovered in April 1992 and states that he cannot identify when this leak began. *Id.* at 4. Again, he opines that MTBE was not commonly added to California gasoline when the April 1992 leak was discovered. *Id.* Mr. Moreau does not attribute any MTBE contamination at Valley Gas to Ultramar's former ownership of the site. *Id.*

70. Under Petro Group II's ownership, the site was branded as an ARCO station. Martin Decl., Ex. 3 I. Ahmad Tr. at 24:14-24:17; 139:14-140:25. Ultramar supplied ARCO-branded gasoline to the site until 1994. *Id*, Ex. 3, Transcript of Deposition of Shirley McMurphy Ahmad ("S. Ahmad Tr.") at 27:1-27:17. On May 31, 1994 Petro Group II de-branded the site, severing its relationship with ARCO and Ultramar. *Id.*, Ex. 3, S. Ahmad Tr. at 27:1-27:17; *id.*, Ex. **3**, I. Ahmad Tr. at 24:4-24:13. After de-branding, the station did business under the name of Valley Gas. *Id.*, Ex. 3, I. Ahmad Tr. at 24:8-24:9.

71. The group that owned and operated the 2139 South Elm station also owned and operated a second retail gasoline station at 4205 East Olive in Fresno, California. Martin Decl., Ex. 3, I. Ahmad Tr. at 20:2-21:19. This station also did business under the name of Valley Gas. *Id.* at 22:5-22:12.

72. During its time doing business as Valley Gas, the 2139 South Elm station was supplied by gasoline from at least two jobbers, Southern Counties Oil (d/b/a Total Energy) and Sabek Oil. Martin Decl., Ex. 3, I. Ahmad Tr. at 24:3-25:6. Total Energy also supplied a majority of the gasoline to the other Valley Gas station at 4205 East Olive. *Id.* at 22:13-23:7.

73. The owners and operators of Valley Gas do not know what companies refined or distributed the gasoline supplied by Total Energy to the 2139 South Elm station. Martin Decl., Ex. 3, I. Ahmad Tr. at 24:18-25:2; *id.*, Ex. **X**, S. Ahmad Tr. at 13:16-14:2. All documents regarding the identity of those that refined or distributed the gasoline were destroyed in 2010. *Id.*, Ex. 3, S. Ahmad Tr. at 12:10-12:22.

74. In August 1999, a gasoline leak in the unleaded fuel product line was identified and repaired at the Valley Gas (2139 South Elm) station. Martin Decl., Ex. 3, RWQCB-FRESNO-001429, Letter from George Verdugo, Verdugo Construction to Harry Yee, Fresno County Environmental Health (Aug. 9, 1999); *id.*, Ex. 3, Moreau Rpt. – Valley Gas at 4. In October 1999, another gasoline leak was discovered in underground piping at the station during an inspection by the County of Fresno ("the County"). Martin Decl., Ex. 3, RWQCB-FRESNO-001427, Letter from West Star Envt'l, Inc. to Fresno Cty. Envt'l Health Dep't (Oct. 25, 1999). The County filed an unauthorized release report on January 24, 2000, listing the responsible party as the site's owner, Petro Group II. *Id.*, Ex. 3, RWQCB-FRESNO-001239. In February 2000, the County ordered to begin a site investigation at the 2139 South Elm

station. *Id.*, Ex. 3, FCDEH-FRESNO-004191. Subsequent soil testing found concentrations of MTBE. *Id.*, Ex. 3, RWQCB-FRESNO-001259.

75. Plaintiff's expert witness, Mr. Moreau, stated that the October 1999 leak was actually discovered in November 1999, Martin Decl., Ex. 3, Moreau Rpt – Valley Gas at 4, however, this discrepancy is not material. Mr. Moreau does not opine that there were any discharges of MTBE gasoline occurred after the October or November 1999 time frame other than to generally allege that small spills by customers were "common" and "may have contributed to the MtBE contamination detected in the dispenser area at this facility." *Id.* at 5; Connelly Decl., Ex. 8 at 780:2-3 (Transcript of Deposition of Marcel Moreau).

76. Neither VMSC nor VRC-CA did business in the State of California prior to March 16, 2000. E. Jones Decl. ¶¶ 4, 6.

<u>Chevron # 9-4374, 1160 Fresno Street</u>

77. Chevron supplied gasoline to the Chevron 9-4374 station at 1160 Fresno Street from January 1986 until June 1988.  Allen Decl., Ex. 4, p. 11 (Chevron U.S.A. Inc.'s Supplemental and Amended Response to Plaintiff City of Fresno's First Set of Interrogatories).

78. In 1988, the Chevron 9-4374 station was demolished and the underground storage tanks were removed. *Id.*

<u>Unocal # 6353, 1418 E. Shaw</u>

79. Unocal supplied gasoline to the Unocal 6353 station between 1986 and 1997.  Allen Decl., Ex. 4 p. 4 (Union Oil Company of California's Second Supplemental and Amended Response to Plaintiff City of Fresno's First Set of Interrogatories).

80. Gasoline supplied by Unocal to this station was refined at Unocal's San Francisco refinery. *Id.*

<u>Van Ness Auto, 2740 N. Van Ness</u>

81. Chevron supplied to the Van Ness Auto station from prior to 1979 until August 1986.  Allen
Decl., Ex. 4, p. 6 (Chevron U.S.A. Inc.'s Supplemental and Amended Response to Plaintiff
City of Fresno's First Set of Interrogatories).

82. R.V. Jensen supplied gasoline to the Van Ness Auto station from August 1986 until 1999.
*Id.*

<u>Red Triangle Oil, 2809 South Chestnut</u>

83. The Red Triangle Oil site is located at 2809 South Chestnut in Fresno, California. Wedeking
Decl., Ex. 3, FCDEH-FRESNO-014918 (County of Fresno, Permit to Operate an
Underground Storage Tank) (Nov. 18, 1998).

84. InterCity Petroleum Marketers, Inc. ("InterCity Petroleum"), doing business as Red Triangle
Oil, owned and operated the 2809 South Chestnut site as a retail gasoline station during all
relevant times. *Id.*; Wedeking Decl., Ex. 4,  Hohenshelt Tr. at 22:7-22:15; *see also*, *id.*, Ex. 5,
Transcript of Deposition of James Shehadey ("Shehadey Tr.") at 18:21-18:25 (InterCity
Petroleum sold Red Triangle Oil Company sold to Shehadey family March 1, 2002). This site
served as the corporate headquarters for the Red Triangle Oil Company. *Id.*, Ex. 6, Transcript
of Deposition of Gail Blue ("Ga. Blue Tr.") at 14:22-15:9.

85. At its height, InterCity Petroleum owned between 50 and 60 gas stations in California.
Wedeking Decl., Ex. 4, Hohenshelt Tr. at 71:9-71:14. At all relevant times, these stations
were branded as Red Triangle Oil stations. *Id.* at 32:6-33:5. By 1999, InterCity Petroleum
owned at least seven stations in the Fresno area, including the 2809 South Chestnut station.
*Id.*, Ex. 3, FCDEH-FRESNO-014832, InterCity Petroleum Certification of Financial
Responsibility (May 7, 1999) (listing six gas stations in Fresno County and one station in

neighboring Kings County); *see also id.*, Ex. 4 Hohenshelt Tr. at 71:15-71:25 (owned "a number of stations" including stations in Fresno, Clovis, Kingsburg, and Kettleman City). InterCity Petroleum appears to have also owned two additional Fresno stations until their sale in 1998. *See id.*, Ex. 3, REDTRIANGLE-HOH-000008, Letter from Gail Blue to Joel Hohenshelt (Nov. 2, 2001) ("Also as you know we sold Willow & Holland in 1998. The tanks were pulled and we were given a closure from the county.").

86. In addition to operating as a retail gasoline station, the 2809 South Chestnut site also had a bulk plant. Wedeking Decl., Ex. 6, Ga. Blue Tr. at 17:6-8. This bulk plant was used by InterCity Petroleum in its role as a jobber. *Id.*, Ex. 5, Shehadey Tr. at 135:6-135:20. Gasoline was stored at the bulk plant until InterCity Petroleum shipped that gasoline using its own tanker trucks to customers elsewhere in the Fresno area, including farms and other gasoline stations. *Id.*, Ex. 4, Hohenshelt Tr. at 48:2-48:6 (supplied 4 or 5 "Shop and Go" gasoline stations); *id.*, Ex. 5, Shehadey Tr. at 17:4-17:13.

87. InterCity Petroleum also operated as an ExxonMobil jobber, delivering Exxon-branded gasoline to other stations in the Fresno area from 1992-2000. Wedeking Decl., Ex. 8, Declaration of A.J. Kaberline (Apr. 22, 2011) ("Exxon Corporation had a distributor relationship with Inter-City Petroleum Marketers, Inc. (dba Red TraingleOil [sic] Co."). In 2002 or 2003, InterCity Petroleum also operated as an ExxonMobil jobber, through an agreement with Valero, delivering Exxon-branded gasoline directly to Exxon stations. *Id.* Ex. 5, Shehadey Tr. at 133:18-134:21. As an ExxonMobil jobber, InterCity Petroleum purchased gasoline at the Fresno terminal loading rack. *Id.* at 133:18-134:8. There is no evidence as to the source of this gasoline; the Exxon-branded gasoline could have been purchased from Duke, Tesoro, Valero, or many other suppliers. *Id.* at 134:4-134:8 ("But as far as who refined

it, I wouldn't be able to say."). This gasoline only became Exxon-branded gasoline with the addition of the Exxon additives by InterCity Petroleum while at the terminal. *Id.* at 134:9-134:12. InterCity Petroleum then delivered that gasoline directly to other area stations. *Id.* at 134:13-134:18. Through this agreement with ExxonMobil and Valero, InterCity Petroleum never delivered this gasoline to the 2809 South Chestnut site. *Id.* at 134:22-135:5; 137:24-138:8.

88. The site's former owners did not name any of the moving defendants as supplying gasoline to the 2809 South Chestnut site during the relevant time period. Wedeking Decl., Ex. 11, Ga. Blue Tr. at 16:18-17:1; 17:12-18:13. Although former InterCity Petroleum CEO Gail Blue initially speculated that "I think we bought from Tesoro," *id.*, Ex. 6, Ga. Blue Tr. at 18:1-18:3, she recanted that testimony. *See id.* at 38:22-39:3 ("Q. Did you buy Tesoro gasoline for the station at 2809? A. Probably we did. I can't tell you that, either, because I don't know unless I saw the records where it went. You know. I really don't know."). She further testified that she never purchased gasoline during her employment at InterCity Petroleum, and that the man who did was deceased. *Id.* at 17:12-17:22 ("I didn't buy – purchase the fuel, okay? I had a purchasing agent that did all the buying, Jack Allen, and he's deceased."). She further testified that, although InterCity Petroleum delivered Exxon branded gasoline to Exxon branded stations, the 2809 South Chestnut site was not an Exxon branded station and she had "no idea" if Exxon branded gasoline was ever delivered to the 2809 South Chestnut site. *Id.* at 41:9-22.

89. The former and current owners of the 2809 South Chestnut site testified that they did not have any records regarding the companies that supplied gasoline prior to 2003. Wedeking

Decl., Ex. 6, Ga. Blue Tr. at 11:17-12:15 (no records in response to subpoena); *Id.*, Ex. 5, Shehadey Dep. at 127:5-127:12 (no records of suppliers before 2003).

90. In September 1998, InterCity Petroleum removed four gasoline USTs from its 2809 South Chestnut station. Wedeking, Ex. 3, RWQCB-FRESNO-009869 (Underground Storage Tank Abandonment Inspection Form) (Sept. 23, 1998). Soil testing revealed no MTBE contamination. *Id.*, Ex. 3, RWQCB-FRESNO-009925, Letter from James D. Parker, Parker Environmental Services to Bryce Ruschaupt, California Petroleum Equipment (Oct. 7, 1998). Later, in December 1998, InterCity Petroleum removed USTs from its bulk plant, also located at 2809 South Chestnut. *Id.*, Ex. 8, RWQCB-FRESNO-009868 (Underground Storage Tank Abandonment Inspection Form) (Dec. 14, 1998); *Id.*, Ex. 4, Hohenshelt Tr. at 64:6-64:10. The bulk plant was the source of MTBE contamination in the underlying soil. *Id.*, Ex. 3, RWQCB-FRESNO-009932, Letter from James D. Parker, Parker Environmental Services to Bryce Ruschaupt, California Petroleum Equipment (Dec. 28, 1998). The bulk plant continues to operate, but with above-ground storage tanks only. *Id.*, Ex. 4, Hohenshelt Tr. at 64:5-64:21.

91. Plaintiff's expert witness, Mr. Moreau, attributes MTBE contamination at the site to the December 1998 removal of the bulk plant's underground storage tanks. Wedeking Decl., Ex. 9, Expert Site Specific Report of Marcel Moreau, Red Triangle at 5. Mr. Moreau noted that an inspection uncovered a discharges of gasoline at the retail station's dispensers, *id.* at 5-6, but he opined that "it is not known whether these releases were contained within the dispenser sumps or whether some of the releases may have escaped to the environment. No soil sampling data associated with these dispensers was reviewed." *Id.* at 6. Mr. Moreau further identified potential discharges in April 2006 and May 2007 at the dispenser pumps,

*id.*, however, California banned MTBE in gasoline beginning in January 1, 2004. Further, Mr. Moreau has only identified MTBE contamination near the bulk plant, not the retail station dispensers. *Id.* at 5-6. Plaintiff has no evidence of MTBE contamination at the 2809 South Chestnut site other than in the area near the bulk plant, which is dated to no later than December 1998.  Connely Decl., Ex. 8 at 187:25-188:11; 200:1-3; 204:13-16 (Transcript of Deposition of Marcel Moreau).

92. Neither VMSC nor VRC-CA did business in the State of California prior to March 16, 2000. E. Jones Decl. ¶¶ 4, 6.

<u>Chevron #9-9093, 3996 N. Parkway Drive</u>

93. Chevron leased the Chevron 9-9093 property at 3996 Parkway Drive from prior to 1979 until 1998.  Allen Decl., Ex. 4, p. 10 (Chevron U.S.A. Inc.'s Supplemental and Amended Response to Plaintiff City of Fresno's First Set of Interrogatories).

94. Chevron supplied gasoline to Chevron 9-9093 station from prior to 1979 until 1998. Id.

<u>Tosco # 39118, 1605 N. Cedar</u>

95. Unocal owned the Tosco 39118 property at 1605 North Cedar Avenue from prior to 1979 until November 1996.  Allen Decl., Ex. 4 p. 1 (Union Oil Company of California's Second Supplemental and Amended Response to Plaintiff City of Fresno's First Set of Interrogatories).

96. Unocal supplied gasoline to the Tosco 39118 station from prior to 1979 until November 1996. *Id.*

97. Unocal supplied this site with gasoline refined at Unocal's San Francisco refinery. *Id.*

<u>Exxon, 4594 E. Tulare Street</u>

98. The Tulare Exxon site is located at 4594 East Tulare Street in Fresno.  Connelly Decl., Ex. 5 at p. 3 (RWQCB-FRESNO-017071, Underground Storage Tank Permit Application – Abandonment/Removal (Dec. 15, 1998)).

99. The Tulare Exxon was built in approximately 1984 by the Martinoil Company ("Martinoil"). Connelly Decl., Ex. 7 at 26:11-22; 32:7-12 (Transcript of Deposition of Dan Martin ("D. Martin Tr.")). That same year, Martinoil entered into a branded distributor agreement (the "Franchise Agreement") with ARCO Petroleum Products Company ("ARCO"). *Id.* at 41:20-43:9; *id.*, Ex. 5 at p. 2 (MARTIN-FRESNO-0008, Branded Distributor Gasoline Agreement (undated)). The Franchise Agreement gave Martinoil the right to distribute ARCO gasoline at certain Martinoil stations, including Tulare Exxon, from October 1, 1984 to September 30, 1987. *Id.*, Ex. 7 at 41:20-44:13; 48:6-10 (D. Martin Tr.); *id.*, Ex. 5 at pp. 2 (MARTIN-FRESNO-0008, Branded Distributor Gasoline Agreement (undated)).

100.    On November 29, 1984, Martinoil sold and assigned its rights, obligations, and interests under the Franchise Agreement to Beacon, but retained ownership of the Tulare Exxon. Connelly Decl., Ex. 5 at p. 1 (MARTIN-FRESNO-0001, Handwritten Notes of Dan Martin (undated)); *id.*, Ex. 7 at 41:20-43:22; 44:10-13 (D. Martin Tr.).  Beacon leased the Tulare Exxon, which it operated as an ARCO-branded station, from 1985 through 1995. *Id.*, Ex. 7 at 51:9-53:6 (D. Martin Tr.); *id.*, Ex. 14 at pp. 2-3 (Valero's Responses to First Set of Interrogatories, Interrogatory No. 3).

101.    In 1995, Martinoil sold the Tulare Exxon property and station to El Monte Gas Company ("El Monte"). Connelly Decl., Ex. 7 at 58:3-59:10 (D. Martin Tr.); *id.*, Ex. 6 at 12:24-13:7, 18:12-22 (Transcript of Deposition of Donald Doyle ("D. Doyle Tr.")). Shortly after purchasing the site, El Monte leased the property to Mr. Narinder Singh. *Id.*, Ex. 10 at 23:21-

24:2; 31:23-32:11 (Transcript of Deposition of Narinder Singh ("N. Singh Tr.")). The station

remained ARCO branded until 1999. *Id.* at 23:21-26:22. From 1996 through 1999, the only

jobber who delivered gasoline to the Tulare Exxon station was El Monte Gas. *Id.* at 27:10-16.

102.    The station's underground storage tanks were removed in December 1998 and later

replaced.  Connelly Decl., Ex. 5 at p. 3 (RWQCB-FRESNO-017071, Underground Storage

Tank Permit Application – Abandonment/Removal (Dec. 15, 1998)); *id.*, Ex. 10 at 47:1-48:5

(N. Singh Tr.).  Subsequent soil sample testing detected MTBE at the site. *Id.*, Ex. 13 at p. 1

(Expert Site Specific Report of Marcel Moreau, Exxon, Tulare Ave.). Mr. Moreau, Plaintiff's

expert witness, attributed such MTBE to spills or leaks associated with the underground

storage tanks and dispensers. *Id.* at pp. 2-3. Mr. Moreau opined that these MTBE releases

likely occurred between the fall of 1992 and the time the tanks were removed. *Id.*

103.    El Monte sold the property and the station to Mr. Singh and his business partners in 1999.

Connelly Decl., Ex. 6 at 21:3-24 (D. Doyle Tr.); *id.*, Ex. 10 at 23:21-25:1 (N. Singh Tr.).

The Tulare Exxon de-branded from ARCO that same year, and began operating instead as an

independent gas station, relying on three jobbers for its gasoline deliveries: El Monte Gas,

Julien Oil Company, and Boyett Petroleum. *Id.*, Ex. 10 at 24:19-25:17; 27:17-22 (N. Singh

Tr.).  Mr. Singh and his partners remain the current owners of the Tulare Exxon. *Id.* at 21:2-

16.

104.    In 2002 or 2003, the station became Exxon branded. Connelly Decl., Ex. 10 at 25:16-24

(N. Singh Tr.).

98. Neither VMSC nor VRC-CA did business in the State of California prior to March 16, 2000.

E. Jones Decl. ¶¶ 4, 6.