# EXHIBIT 1

**Correspondence**

- Letter from Michael Axline to M. Coy Connelly (March 6, 2013).



E-SERVICE
49963024
Mar 07 2013
01:46AM
File & ServeXpress

Law Offices of
# MILLER, AXLINE & SAWYER
A Professional Corporation

DUANE C. MILLER
MICHAEL AXLINE
A. CURTIS SAWYER, JR.

TRACEY L. O'REILLY
EVAN EICKMEYER
DANIEL BOONE
JUSTIN MASSEY
BRIAN D. SHANNON
DONALD MOONEY, of Counsel

March 6, 2013

**VIA LNFS**

M. Coy Connelly, Esq.
BRACEWELL & GUILIANI LLP
711 Louisiana Street, Suite 2300
Houston, TX  77002-2770

Re:   *City of Fresno v. Chevron U.S.A., Inc., et al.*
      No. 1:04-cv-04973-SAS (MDL 1358)
      **Plaintiff City of Fresno's Further Meet-and-Confer re Ultramar and**
      **Valero's Proposed Motion for Partial Summary Judgment**

This letter responds to yours of February 8 and 15, 2013.

Both of your letters ask the City to distinguish between its claims against Ultramar and its claims against Valero.  Both letters also claim, "Valero Defendants did not do business in the State of California prior to the year 2000."  As cited in (and attached to) Evan Eickmeyer's December 11, 2012, e-mail, however, the Valero Defendants' Objections and Responses to Plaintiff City of Fresno's First Set of Interrogatories to Defendants ("Responses to First Set of Interrogatories") stated that the Valero Defendants supplied gasoline containing MTBE to Fresno customers prior to the year 2000.  Responses to First Set of Interrogatories, Exh. A.  The Valero Defendants also admit to selling 2-3 million barrels of gasoline containing MTBE within Fresno County each year from 1997 to 2000, with a smaller amount sold in 1996.  Responses to First Set of Interrogatories, Response to Interrogatory No. 10.  These interrogatory responses were served on behalf of Ultramar and two Valero entities, referenced collectively as the "Valero Defendants."  Our confusion, if any, was caused by your joint interrogatory responses.

Some MTBE gasoline shipments and releases may have occurred before "1995 when Ultramar Inc. merged with Diamond Shamrock Corporation," or before "the December 31, 2001 merger of Ultramar Diamond Shamrock Corporation with and into Valero Energy Corporation." *Id.*  Whether or not Valero gasoline was delivered to or released at the site, however, Valero has successor liability for Beacon's activities regarding each site.

Your February 8th letter cites to the January 11, 2013, status conference with Judge Scheindlin and the discussion of Duke Energy, a distributor of MTBE gasoline, for the proposition that the City must provide evidence that a jobber delivered Duke MTBE gasoline to a

M. Coy Connelly, Esq.
March 6, 2013
Page 2

particular station.  As I am sure you are aware, in *In re MTBE*, 591 F.Supp.2d 259 (S.D. N.Y. 2008), Judge Scheindlin, in discussing the commingled product theory, distinguished suppliers of neat MTBE from refiners and distributors of MTBE gasoline, and also distinguished both neat MTBE suppliers and MTBE gasoline distributors and refiners from gasoline retailers.

At the January 11, 2013, status conference, in a discussion of Fresno's claims against Duke Energy, Judge Scheindlin rejected defendants' argument that the City would have to amend its complaint to allege the commingled product theory, and made clear that use of the theory is simply "a matter of proof."  Tr. at 40:20-21.  She also made clear that she was not interested in re-visiting her prior commingled product rulings. Tr. at 40:11-16 ("I said what I had to say about that theory, and it's old news.")

After stating that the City did not need to amend its complaint to allege commingled product theory, Judge Scheindlin asked: "can you *also* do it with direct product, Tracey [tracing?] or do you *have* to rely on the blended, you know, total product and the markets?"  Tr. at 41:4-6. Ms. O'Reilly stated in the context of the discussion of Duke that "[w]e're not going with commingled in the pipeline.  We're going with direct evidence, is what we explained [with respect to Duke in the City's pre-conference letter]."  Tr. at 41:12-13.  Ms. O'Reilly went on to explain the City has evidence that "Duke Energy mixed several gas station sites, received delivery, deliveries of MTBE gasoline from jobbers to whom Duke Energy sold MTBE gasoline."  Tr. at 42:11-13.

This discussion, and Ms. O'Reilly's statements, merely clarified that with respect to some defendants, including Duke, the City's evidence will allow the jury to conclude that the defendants' product was delivered directly to some stations.  Ms. O'Reilly did *not* state that the City would not rely on the commingled product theory for all defendants or even all stations. Since, as Judge Scheindlin's commingled product opinion makes clear, it is impossible to trace neat MTBE to individual release sites, such a conclusion would never have been reached in such an off-hand and indirect way.

As I stated during our face-to-face meet and confer session on March 1, 2013, the City will be relying on the commingled product theory method of proof for defendants against whom the City does not have direct evidence of delivery to particular stations.  This evidence will show delivery of a defendant's product to terminals serving the Fresno area during the relevant time period.  This evidence will include (but not be limited to) the deposition of Dickman Lum in the South Tahoe and Merced cases and the deposition of Fresno terminal manager Robert Kennedy in City of Dinuba v. Unocal Corp.

The consequence of relying on the commingled product theory with respect to a particular defendant, of course, is that the City cannot pursue nuisance claims or punitive damage claims

M. Coy Connelly, Esq.
March 6, 2013
Page 3

against that defendant.  As you know, the City has already notified you that it will not be pursuing nuisance claims against Ultramar and Valero at the Smith Tank Lines site.  *See* February 8, 2012, Eickmeyer letter to Jeff Parker.  As discussed *infra*, the City will also withdraw certain other claims.  Consequently, there is no need to file any summary judgment motions with respect to the claims being withdrawn.

As Judge Scheindlin made clear in *In Re MTBE*, 591 F. Supp.2d 259, 268 (S.D. N.Y. 2008):  "even when the jury concludes that plaintiffs have not met their burden to prove that any particular spill of gasoline caused contamination in a well, plaintiffs may still prove their claims against gasoline manufacturers under the commingled product theory."

As Judge Scheindlin also recognized, the time that the contamination of groundwater occurred is an issue of fact for the jury and the jury may estimate, from evidence presented, a range of time during which the contamination occurred.  591 F. Supp.2d at 275.  Judge Scheindlin's ruling is consistent with expert testimony.  As Marcel Moreau explains, during the time that MTBE gasoline was in use at this station, releases of gasoline were routine, due not only to the ineffectiveness of underground storage tanks, piping systems to dispenser islands and dispensers themselves, but also due to vapor leaks and individually small but cumulatively significant releases that occur during fuel deliveries and customer overfilling and dripping during fueling.  Moreau Report, sections I, II and V.  As defendants' own expert Sam Williams testified:  "I don't know, except under certain specific sites, when an individual release occurred. The release occurred over a certain time period, usually during the period from '92 to '97 or '98 or '99 . . . ."  June 7, 2012, Deposition of Sam Williams, at 101:12-16.  For these reasons, the City declines to dismiss claims on the purported ground that Mr. Moreau did not identify a release after a particular date.

**(1)     Red Triangle (2809 S. Chestnut Ave.)**

Our December 11, 2012, e-mail from Evan Eickmeyer to you asserted that Valero supplied gasoline containing MTBE to Red Triangle between 1997-2002.  The cited source for this information was the Valero Defendants' interrogatory responses, discussed *supra*.  The Valero Defendants' responses stated that Valero supplied gasoline containing MTBE to Red Triangle from 1997 through 2002.  (See first page of Exhibit A [Red Triangle is listed alphabetically as "DBA RED TRIANGLE OIL CO."].)

The City will withdraw its nuisance claims against Ultramar and Valero for the Red Triangle site.  There is sufficient evidence, however, for the City to pursue its remaining claims against the entities that delivered to Red Triangle, Ultramar and/or Valero.  Mr. Shehadey produced bills of lading and highway transportation receipts showing deliveries by Red Triangle to Fleet Card Fuels at 2809 S. Chestnut Ave.  All of the gas delivered by Red Triangle to 2809 S.

M. Coy Connelly, Esq.
March 6, 2013
Page 4

Chestnut Ave. came from the Fresno terminal, because they were in such close proximity, only about 2 miles apart. Mr. Shehadey's testimony and production establish that gasoline containing MTBE was picked up at the Kinder Morgan terminal by Red Triangle, then delivered to 2809 S. Chestnut Ave.

In addition, Mr. Shehadey's documents show that Nella Oil was a shipper of gasoline to Red Triangle. Shehadey Depo., at 30:14-25, 31-32, and Exh. 5. The Valero Defendants list Nella Oil as a jobber from 1997 through 2003. Responses to First Set of Interrogatories, Response to Interrogatory No. 5.

**(2)      Smith Tank Lines (30 E. Divisadero St.)**

The City will withdraw all claims against Ultramar and Valero for the Smith Tank Lines site.

**(3)      Beacon-Arco #615 (1625 Chestnut Ave.)**

Your letters ask the City to withdraw its claims for this site based on your assertions that (1) Mr. Moreau did not identify releases after June 1998, and (2) Valero did not do business in California prior to the year 2000.

First, for the reasons explained by Judge Scheindlin, Mr. Moreau, and Mr. Williams, discussed *supra*, the City declines to drop its claims due to the date of the last identified release.

Second, the Valero Defendants' collective discovery responses stated that they leased the 1625 Chestnut Ave. station from July 24, 1998, to the date of the responses. Responses to First Set of Interrogatories, Response to Interrogatory No. 3. As discussed *supra*, even if the station was leased by Ultramar, Valero would have successor liability.

**(4)      Valley Gas (2139 S. Elm St.)**

Your letters ask the City to withdraw its claims for this site (1) as to Valero, because MTBE gasoline distributed or manufactured by Valero was not delivered to the site, and (2) as to Ultramar because "its ownership of the station ended well before MTBE was commonly added to gasoline in California."

The Valero Defendants' collective discovery responses stated that the Valley Gas site was formerly Beacon #538. Responses to First Set of Interrogatories, Response to Interrogatory No. 3. Beacon's lease was terminated November 1, 1991. *Id.* Whether or not Valero gasoline was delivered to the site, however, Valero has successor liability for Beacon's lease of the site.

M. Coy Connelly, Esq.
March 6, 2013
Page 5

The Valero Defendants' relationship with the site continued beyond the Fall of 1992, when MTBE was first required to be present in Fresno County gasoline. Marcel Moreau report. The Declaration of the Valero Defendants in Anticipation of 30(b)(6) Deposition provides that Ultramar maintained a branded relationship with the station from November 1, 1991, until May 31, 1994, whereby the station purchased Beacon-branded gasoline. After the site was purchased from Ultramar, Beacon and Ultramar gasoline were delivered to the station. (Ahmad Depo., at p. 139:9-11.) Mr. Ahmad testified there was a brand distribution marketing agreement between Petro Group II and Beacon that prohibited him or Petro Group from buying gasoline from anyone other than Ultramar. (Ahmad Depo., at pp. 139:13-25, 140:7-8.) The brand name agreement ceased in 1995. (Ahmad Depo., at p. 140:7-15.)

While branded Valley Gas, the station received gasoline supplies from Total Energy and Sabek Oil. (Ahmad Depo., at p. 25:3-6.) The Valero Defendants' collective discovery responses listed Southern Counties Oil (dba Total Energy) as a jobber from 1997 through 2002. Responses to First Set of Interrogatories, Response to Interrogatory No. 5. During this time period, a line leak was discovered in October 1999, and a soil sample taken after a hole in a pipe was discovered and repaired in November 1999 was found to contain 920,000 ppb MTBE. Marcel Moreau report.

Mr. Moreau's report explains that MTBE releases likely occurred intermittently between the Fall of 1992 and 2003. Because these releases occurred during times that Ultramar and Valero had relationships with the station, the City declines to drop its claims for this site.

**(5)** **Beacon #519 (4591 E. Belmont)**

Your letters ask the City to drop its claims against Valero for this site, because Mr. Moreau noted that a release was discovered in December 1998, and because Valero "did not do business in the State of California prior to the year 2000."

The Valero Defendants' collective discovery responses show that this station was leased by them from 1971 through October 20, 1999. Responses to First Set of Interrogatories, Response to Interrogatory No. 3. The discovery responses further reveal that Valero had a retail supply contract with this site, identified as Beacon #4984, from October 20, 1999, to the date of the responses. Responses to First Set of Interrogatories, Response to Interrogatory No. 4. The Declaration of the Valero Defendants in Anticipation of 30(b)(6) Deposition establishes that Arco-branded gasoline was purchased from Ultramar, Inc., and Valero Marketing and Supply Company from September 22, 1999, through December 31, 2003, for resale at the station.

Because leaks of gasoline were routine at stations, per Mr. Moreau, and because Ultramar's and Valero's activities continued through the years that MTBE was added to Fresno

M. Coy Connelly, Esq.
March 6, 2013
Page 6

gasoline, the City declines to dismiss its claims for this site.

(6)   **Beacon #537 (798 West Gettysburg)**

  The City will agree to withdraw all claims as to all defendants for the Beacon #537 site without prejudice.

       Sincerely,

       Michael Axline
       Counsel for City of Fresno

cc:  All Counsel (via LNFS)