UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation<br><br>This document relates to:<br><br>*City of Fresno v. Chevron U.S.A. Inc., et al* | Master File No. 1:00-1898<br>MDL 1358 (SAS)<br>M21-88 |

## CERTAIN DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT RE NUISANCE

TABLE OF CONTENTS

I.      Introduction.................................................................................................................1

II.     Relevant Procedural History ......................................................................................1

III.    Summary of Undisputed Material Facts at All Sites ..................................................2

IV.     Standard on Summary Judgment ...............................................................................3

V.      Argument ....................................................................................................................4

        A.      California Law Does Not Permit Nuisance Claims Based on the
                Manufacture or Supply of an Allegedly Defective Product.....................................4

        B.      The City's Generalized Statements About Industry Conduct Are Not
                Sufficient to Support Nuisance. ...........................................................................6

        C.      The City Lacks Site-Specific Evidence of "Affirmative" Conduct
                Necessary to Support Nuisance at Each Site. ......................................................8

                1.      Van Ness Auto, 2740 North Van Ness .......................................................8

                2.      M&S Texaco, 2619 S. East Avenue .........................................................10

                3.      "Exxon" Service Station, 4594 E. Tulare St .............................................12

                4.      Valley Gas, 2139 South Elm St. ...............................................................14

                5.      Beacon #3519, 4591 E. Belmont Ave.......................................................15

                6.      Beacon-ARCO #615, 1625 Chestnut Ave. ................................................16

VI.     Conclusion ...............................................................................................................17

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
   404 F.3d 566 (2d Cir. 2005)........................................................................3

*Anderson v. Liberty Lobby Inc.*,
   477 U.S. 242 (1986).................................................................................3

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986).................................................................................3

*City of Modesto Redevelopment Agency v. Super. Ct. (Dow Chem. Co.)*,
   119 Cal. App. 4th 28 (2004) ............................................................... *passim*

*City of San Diego v. U.S. Gypsum Co.*,
   30 Cal. App. 4th 575 (1994) ....................................................................6, 7

*County of Santa Clara v. Atl. Richfield Co.*,
   137 Cal. App. 4th 292 (2006) .......................................................................7

*Franklin v. USX Corp.*,
   87 Cal. App. 4th 615 (2001) ..................................................................13, 14

*Gayle v. Gonyea*,
   313 F.3d 677 (2d Cir. 2002).........................................................................3

*Hughes v. W. MacArthur Co.*,
   192 Cal. App. 3d 951 (1987) .......................................................................13

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
   457 F. Supp. 2d 455 (S.D.N.Y. 2006)................................................... *passim*

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
   824 F. Supp. 2d 524 (S.D.N.Y. 2011)...............................................................5

*Knight v. U.S. Fire Ins. Co.*,
   804 F.2d 9 (2d Cir. 1986)...........................................................................4

*Project Release v. Prevost*,
   722 F.2d 960 (2d Cir. 1983).........................................................................3

*United States v. Pent-R-Books, Inc.*,
   538 F.2d 519 (2d Cir. 1976).........................................................................4

**OTHER AUTHORITIES**

FED. R. CIV. P. 56(a) ..................................................................... *passim*

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

I.   **Introduction**

The Court has already held that "the mere supply of gasoline with MTBE is insufficient to support a claim for nuisance—rather, a defendant must take other 'affirmative acts' that contribute 'directly' to the nuisance." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 457 F. Supp. 2d 455, 463-64 (S.D.N.Y. 2006). Despite this clear instruction, the City of Fresno (the "City") seeks to assert nuisance claims against the Moving Defendants at Sites they merely supplied.[1] The Moving Defendants did not own or operate these Sites. Nor did Moving Defendants manufacture the equipment that released gasoline at these Sites or otherwise affirmatively instruct the gasoline station operators at the Sites to dispose of gasoline with MTBE improperly. Absent evidence of such affirmative acts, a nuisance claim cannot stand, as this Court has already held. For these reasons, the Court should grant summary judgment on the City's nuisance claims in favor of the Moving Defendants at each of the Sites.

II.   **Relevant Procedural History**

The City filed this lawsuit on October 22, 2003 and filed a First Amended Complaint on October 28, 2004. (Rule 56.1 St. ¶¶ 1-2.) The First Amended Complaint alleges four claims for relief: (1) Strict Liability (Products Liability); (2) Negligence; (3) Trespass; and (4) Nuisance. The case presents similar allegations to those presented in the other MTBE cases this Court has considered—the City of Fresno alleges that its water system has been contaminated or is threatened by MTBE and/or TBA released by gasoline stations in the City of Fresno.

---

[1]   "Moving Defendants" and "Sites" are defined in the chart below.

The parties have met and conferred as the Court instructed.  The City agreed to drop its nuisance claims at some stations and against some defendants, and Moving Defendants are not moving on all sites.  Thus, the issues have been narrowed since the pre-motion conference.  The Sites and Moving Defendants are:

| Site Name and Address | Moving Defendant(s) |
|---|---|
| Van Ness Auto, 2740 North Van Ness | Chevron U.S.A. Inc. |
| M&S Texaco, 2619 S. East Avenue | Shell Oil Company, Texaco Refining and Marketing Inc., and Equilon Enterprises LLC (collectively, the "Shell Defendants") |
| "Exxon" Service Station, 4594 E. Tulare Street | Valero Marketing and Supply Company ("VMSC"), Valero Refining Company—California ("VRC-CA") |
| Valley Gas, 2139 South Elm Street | VMSC, VRC-CA |
| Beacon #3519, 4591 E. Belmont Avenue | VMSC, VRC-CA |
| Beacon-Arco #615, 1625 Chestnut Avenue | VMSC, VRC-CA |

## III.   Summary of Undisputed Material Facts at All Sites

Each Site is discussed in detail below.  The following facts, however, apply to all of the Sites.

It is undisputed that Moving Defendants did not own or operate any of the Sites.  (Rule 56.1 St., ¶¶  10, 16, 28, 30, 33, 35.)  The City does not contend that Moving Defendants manufactured the equipment that released gasoline at the Sites (*See* Anderson Decl., Ex. 3, Feb. 8, 2013 Ltr.), nor does the City identify any evidence that Moving Defendants affirmatively instructed the gasoline station operators at the Sites to dispose of gasoline with MTBE improperly.  (*Id.*)

2

IV.     **Standard on Summary Judgment**

Summary judgment should be granted where a party shows the absence of "genuine issues" as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a), (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment may dispose of the entire case, or part of a claim or defense. FED. R. CIV. P. 56(a). To avoid summary judgment, "the party resisting summary judgment must show a disputed fact," which "must also be a material fact in light of the substantive law. 'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 574 (2d Cir. 2005) (quoting *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986)). "An issue of fact is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson*, 477 U.S. at 248).

The moving party may meet its burden to show there is no genuine issue of fact by either citing evidence that negates the non-moving party's claims or by simply showing the absence of evidence to support the non-moving party's claims. *Celotex*, 477 U.S. at 325 ("[W]e do not think . . . the burden is on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact. . . .  Instead, as we have explained, the burden on the moving party may be discharged by "showing" – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.")

When the moving party has made this showing, the burden shifts to the non-moving party to show a genuine dispute exists.  The non-moving party, however, cannot rely on the mere allegations in its pleadings to establish a triable issue of fact. *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir. 1983).  Nor may the non-moving party "rely on mere speculation or

conjecture as to the true nature of the facts to overcome a motion for summary judgment."

*Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).  Instead, the non-moving party must

produce "significant probative evidence" that supports its claim.  *United States v. Pent-R-Books,*

*Inc.*, 538 F.2d 519, 529 (2d Cir. 1976).

V.    **Argument**

     A.    <u>**California Law Does Not Permit Nuisance Claims Based on the Manufacture**</u>
        <u>**or Supply of an Allegedly Defective Product**</u>.

     This Court has already analyzed and summarized the relevant California authority

regarding nuisance.  In the *Orange County Water District* matter, the defendants moved for

summary judgment, in part, on the grounds that California law generally prohibits nuisance

claims against a manufacturer or distributor of an allegedly defective product because such

claims sound in product liability rather than nuisance.  The Court summarized the law as follows:

> While it is true that "the law of nuisance is not intended to serve as
> a surrogate for ordinary products liability," California courts have
> allowed nuisance claims to proceed where the manufacturer's or
> distributor's actions have "created or assisted in the creation of the
> nuisance."  **Such actions, however, must amount to more than
> simply the manufacture or distribution of the defective product
> -- rather, a defendant must take other "affirmative acts" that
> contribute "directly" to the nuisance.**  Importantly, a failure to
> warn regarding the dangers of a product, without more "activity
> directly connected" to the creation of the nuisance, is an
> insufficient basis for nuisance liability.  But where a defendant
> engages in more substantial conduct contributing to the nuisance,
> liability may well be appropriate.

*In re MTBE*, 457 F. Supp. 2d at 463-64 (internal citations omitted, emphasis added).[2]

--------------------------------------

    [2]    Because OCWD relied primarily on allegations in its complaint rather than on actual
evidence in the 2006 briefing, the Court concluded that it did not have a sufficient evidentiary
record to resolve the issue of nuisance on summary judgment at that time.  *In re MTBE*, 457 F.
Supp. 2d at 464-65.

(footnote continued)

This Court's analysis is well-supported by California law.  The *City of Modesto* case is directly on point.  Although the *City of Modesto* court noted that California's general nuisance principles provide "that 'not only is the party who maintains the nuisance liable but also the party or parties who create or assist in its creation,'" the court expressly cautioned that liability for nuisance is not unlimited.  *City of Modesto Redevelopment Agency v. Super. Ct. (Dow Chem. Co.)*, 119 Cal. App. 4th 28, 38 (2004).  The case involved a series of claims against chlorinated solvent manufacturers, distributors of the solvents and dry cleaning equipment, chlorinated solvent equipment manufacturers, and dry cleaning retailers.  With respect to the defendants that merely manufactured or sold solvents to the dry cleaners with knowledge of the hazards of those substances and without alerting the dry cleaners to proper methods of disposal, the court rejected the nuisance claim noting that "any failure to warn was not an activity directly connected with the disposal of the solvents . . . [and] does not fall within the context of nuisance."  *Id.* at 42.

The *City of Modesto* court emphasized the necessity of evidence of <u>affirmative</u> conduct directly related to causing the discharge at issue in order to pursue nuisance:

> we conclude that those who took affirmative steps directed toward the improper discharge of solvent wastes—for instance, by manufacturing a system designed to dispose of wastes improperly or by instructing users of its products to dispose of wastes improperly—may be liable under that statute, but those who merely placed solvents in the stream of commerce without warning adequately of the dangers of improper disposal are not liable.

---

In 2011, the Court addressed nuisance again in *OCWD*, but with respect to stations that were owned, supplied, *and* being remediated by the defendants.  *In re MTBE Prods. Liab. Litig.*, 824 F. Supp. 2d 524, 542 (S.D.N.Y. 2011) (additionally, five of the fourteen sites were also operated by the defendants).  The Court held that these facts warranted summary judgment on causation for nuisance.  *Id.* at 542-43.  Mindful of this holding, Defendants are not moving for summary judgment with respect to similar sites in this case, and none of the Sites in this Motion fall into the categories previously addressed in *OCWD*.

*Id.* at 43 (the referenced Porter-Cologne Act and nuisance share the same standard under California law).  Indeed, the court cited a long line of cases precluding recovery in nuisance against defendants who had manufactured, distributed, or supplied defective asbestos-containing building materials, on the grounds that such claims were products liability actions under the guise of a nuisance action.  *Id.* at 39; *see, e.g., City of San Diego v. U.S. Gypsum Co.*, 30 Cal. App. 4th 575, 584-85 (1994) (addressing claim in which the city sued various defendants for damages stemming from installation of asbestos in its buildings).  Importantly, the *City of San Diego* court warned that to allow a plaintiff to pursue nuisance in the context of a product liability claim without evidence of affirmative conduct would allow nuisance to "become a monster that would devour in one gulp the entire law of tort."  *City of San Diego*, 30 Cal. App. 4th at 586 (internal citation omitted).

California courts have upheld nuisance claims based on the manufacture or distribution of a product, but only where the defendant had also "manufactured equipment designed to result in unlawful discharges" or "specifically instructed a user to dispose of waste improperly."  *City of Modesto*, 119 Cal. App. 4th at 42.  As detailed below, with respect to the Moving Defendants and the Sites, the City lacks evidence demonstrating that its nuisance claim falls within these two limited instances of affirmative conduct where nuisance may be pursued.

**B.   The City's Generalized Statements About Industry Conduct Are Not Sufficient to Support Nuisance.**

The City appears to rely on a series of generalized statements about the industry to support its nuisance claim.  Specifically, in its February 8 letter, the City stated that it is in possession of evidence "that the industry was well aware of the environmental risks posed by MTBE, that the industry sought to conceal those risks from the public and regulators, and that the industry continued to utilize MTBE without providing adequate warnings concerning

MTBE's environmental and health risks." (Anderson Decl., Ex. 3, Feb. 8, Ltr. at 2.)[3]  These

assertions cannot sustain a claim for nuisance.

The allegations in the *County of Santa Clara* are strikingly similar.  In that case, the

plaintiffs alleged that lead paint manufacturer defendants,

> assisted in the creation of this nuisance by concealing the dangers
> of lead, mounting a campaign against regulation of lead, and
> promoting lead paint for interior use even though defendants had
> known for nearly a century that such a use of lead paint was
> hazardous to human beings.  Defendants engaged in a massive
> campaign to promote the use of lead . . . . Had defendants not done
> so, lead paint would not have been incorporated into the interiors
> of such a large number of buildings and would not have created the
> enormous public health hazard that now exists.

*Cnty. of Santa Clara v. Atl. Richfield Co.*, 137 Cal. App. 4th 292, 306 (2006) (internal

punctuation omitted).  The court dismissed the nuisance claim on demurrer finding that even if

all of the allegations were true, the plaintiffs had not alleged that defendants engaged in the type

of affirmative conduct necessary to pursue nuisance under *Modesto* and *San Diego*.  *See id.* at

313.

The City's allegations regarding the gasoline industry in this case are no different.

Although Moving Defendants dispute the accuracy of the City's assertions, what is important

here is that those allegations—even assuming their truth—cannot be the basis of nuisance under

California law.  Accordingly, the City's attempt to rely on non-site-specific evidence about the

industry should be disregarded.

---

[3]     Defendants dispute the facts alleged by the City in its February 8 letter.  Defendants are
simply citing the letter here for the limited purpose to establish what the City is claiming.  The
City's letter is not substantive evidence.

C.   **The City Lacks Site-Specific Evidence of "Affirmative" Conduct Necessary to Support Nuisance at Each Site.**

The City's purported nuisance claims against Moving Defendants at each Site are several essential steps removed from any California case that has found liability for nuisance against a manufacturer.  As documented below, the Sites were never owned or leased by Moving Defendants, nor did the Moving Defendants own the underground storage tanks at any of the Sites.  There is simply no evidence of any conduct of Moving Defendants that led to the creation, assistance in creating, or maintenance of a nuisance at any of the Sites.  Accordingly, the City has not demonstrated, and cannot demonstrate, Defendants "created" or "assisted in the creation" of a nuisance, as required under California law.  *See City of Modesto*, 119 Cal. App. 4th at 40.  Nor has the City demonstrated that Moving Defendants engaged in the "affirmative steps" required to transform the City's defective product and failure to warn claims into a viable nuisance claim.  There is no evidence that any Moving Defendant "specifically instructed a user to dispose of waste improperly."  *Id.* at 42.

1.   **Van Ness Auto, 2740 North Van Ness**

Van Ness Auto has never had a contractual relationship with Chevron U.S.A. Inc. during the relevant time period, and Chevron U.S.A. Inc. stopped delivering gas to the station in August 1986, four years before it began adding MTBE to the gasoline delivered to Fresno.  (*See* Rule 56.1 St., ¶ 6.)

Similarly, Chevron U.S.A. Inc. never owned the real estate or the underground storage tanks at 2740 North Van Ness, and it never operated the station.  (Rule 56.1 St., ¶ 10.)  Since 1986, the site and underground storage tanks have been owned and operated by either James Clements (1986 – 1991) or Garabed Bedirian and his daughter (1991 – 1998).  (Rule 56.1 St., ¶ 7.)  Mr. Bedirian testified that the underground tanks were removed in 1998 and the gasoline

station was closed.  (Rule 56.1 St., ¶ 8.)  Between August 1986 and approximately 1999, Chevron supplied gasoline to a jobber that may have delivered Chevron-refined gasoline to this station, although again, there was no contractual relationship between the station and Chevron U.S.A. Inc.  (Rule 56.1 St., ¶ 9.)  And while this station was a jobber-branded Chevron station until approximately 1999, there is no evidence that Chevron U.S.A. Inc. ever controlled any of underground storage tanks, dispensers, or other gasoline distribution equipment at 2740 North Van Ness—indeed, the undisputed evidence establishes it had no such control.  (*See* Rule 56.1 St., ¶ 10.)

In its February 8 letter, the City alleges that a 1985 Dealer Supply Contract required Van Ness Auto to follow Chevron's gasoline handling procedures and allow Chevron to enter the premises to inspect the quality of gasoline.  (Anderson Decl., Ex. 3, Feb. 8 Ltr. at 3-4.)  This is misleading because it is undisputed that the Dealer Supply Contract expired in August 1986, four years before gasoline containing MTBE was first delivered to this station in 1990.  (Rule 56.1 St., ¶ 6.)  After 1986, Chevron had no contractual relationship with the station.  (*Id.*)  And even during the contractual period, it was clear from the contract that the owner, an independent business man, had responsibility for maintaining the UST systems and handling gasoline, not Chevron U.S.A. Inc.  (Rule 56.1 St., ¶ 7.)  Thus, even if the 1985 Dealer Supply Contract were relevant, which it is not, it still would not support a nuisance claim.

The City also alleges in its February 8 letter that Chevron added Chevron signs at the station and "inspected" it.  (Anderson Decl., Ex. 3, Feb. 8 Ltr. at 4.)  This too is misleading.  Any "inspection" of the station related only to signage and the cleanliness of the station—there is no evidence Chevron ever inspected the station for anything related to the underground storage tanks or gasoline distribution system or that it even had the right to do so.  (Rule 56.1 St., ¶ 10.)

During the entire time in which gasoline containing MTBE was sold at this station and it was branded Chevron, the owner had a contractual relationship with an independent jobber, and the dealer had the responsibility for maintaining the USTs and handling fuel. (*See* Rule 56.1 St., ¶9.)

Nor is there any evidence that Chevron U.S.A. Inc. manufactured the equipment used for distributing, handling, storing, dispensing, or selling gasoline products at this station. Quite simply, the City has fallen far short of establishing the type of "affirmative steps" necessary to show nuisance liability under California law. *See In re MTBE* 457 F. Supp. 2d at 463-64; *City of Modesto*, 119 Cal. App. 4th at 42.

### 2.     M&S Texaco, 2619 S. East Avenue

M&S Texaco operated the service station located at 2619 South East Avenue. (Rule 56.1 St., ¶ 11.) The service station property is owned by a trust controlled by Glen and Shirley Prickett of Fresno, California. (Rule 56.1 St., ¶ 11.) M&S Texaco was solely owned by Jatinder Paul Dhillon of Fresno, California, who purchased the business that ran the station in 1995 or 1996. (Rule 56.1 St., ¶ 11.) Mr. Dhillon leased the station property from the Pricketts, and had a supply contract with Texaco. (Rule 56.1 St., ¶ 11.) Mr. Dhillon stopped operating the station in January 2009. (Rule 56.1 St., ¶ 11.)

The underground storage tanks and piping on the M&S Texaco property were owned by the landlord, the Pricketts, and the Pricketts paid to have the tanks upgraded in 1997. (Rule 56.1 St., ¶ 13.) Mr. Dhillon believes that he initially owned the dispensers, but after the dispensers were replaced they became the landlord's property. (Rule 56.1 St., ¶ 13.)

During the entire relevant time frame, the station was Texaco-branded. (*See* Rule 56.1 St., ¶ 14.) The supply contract was the sole business relationship that M&S had with either Shell or Texaco.   (Rule 56.1 St., ¶ 15.)  The Shell Defendants never owned the station property nor

the business that operated the station (Rule 56.1 St., ¶ 16), and the Shell Defendants never

operated the station. (Rule 56.1 St., ¶ 16.) Mr. Dhillon made all decisions on whom to hire and

fire, and understood that he was responsible for complying with all laws involving the operations

of the station. (Rule 56.1 St., ¶ 17.) Mr. Dhillon instructed his employees on how to respond to

leaks and spills of gasoline, and he testified that he was responsible for cleaning up spills. (Rule

56.1 St., ¶ 18.) He was also responsible for maintenance of the gasoline nozzles and dispensers

at the station (Rule 56.1 St., ¶ 19), and Mr. Dhillon was also responsible for conducting tightness

tests on the underground storage tanks. (Rule 56.1 St., ¶ 19.) The Central Valley Regional

Water Quality Control Board considered Mr. Dhillon the responsible party for the station and

addressed all correspondence pertaining to the site investigation and remedial action at the

station, including the No Further Action Required letter, to Mr. Dhillon. (Rule 56.1 St., ¶ 19.)

There is no evidence that the Shell Defendants ever controlled any of the operations at M&S

Texaco.

In its meet and confer letter, the only evidence the City cited in support of its nuisance

claim is Mr. Dhillon's testimony that he received an instruction manual on cleaning up spills,

and that Texaco or Shell employees occasionally visited the station. (Anderson Decl., Ex. 3,

Feb. 8 Ltr. at 2.) That testimony does not even come close to establishing the type of

"affirmative steps directed toward [an] improper discharge" that contribute "directly" to a

nuisance that are required for imposition of nuisance liability under California law. *See In re

MTBE* 457 F. Supp. 2d at 463-64; *City of Modesto*, 119 Cal. App. 4th at 42.

### 3.     "Exxon" Service Station, 4594 E. Tulare St

Although memories have faded as to the exact dates of events, the evidence is undisputed that Valero never owned the station located at 4594 E. Tulare.  (Rule 56.1 St., ¶ 28.)   Dan Martin testified that the Martinoil Company ("Martinoil") built the station at 4594 E. Tulare in approximately 1984 and then turned over the property and business in approximately 1985 to Ultramar Inc. (referred to as "Beacon").  (Rule 56.1 St., ¶ 23.)  Ultramar leased and operated the station from 1985-1995.  (Rule 56.1 St., ¶ 24.)  Martinoil then sold the property and the business to El Monte Gas Company in approximately 1995.  (Rule 56.1 St., ¶ 25.)  El Monte, in turn, leased the property to Narinder Singh and his wife Kanta, who operated the station with their business partners.  (Rule 56.1 St., ¶ 26.)  In 1999, El Monte sold the property and the business to Narinder Singh and his partners, who have owned and operated the station ever since.  (Rule 56.1 St., ¶ 27.)

Neither Valero Marketing and Supply Company ("VMSC") nor Valero Refining Company—California ("VRC-CA") have ever owned, leased, or operated the retail gas station or real estate located at 4594 East Tulare, Fresno, CA.  (Rule 56.1 St., ¶ 28.)  Similarly, neither VMSC nor VRC-CA has ever manufactured equipment used for the distribution, handling, storage, dispensing or sale of gasoline products.  (Rule 56.1 St., ¶ 20.)  And the City has no evidence that Valero "specifically instructed a user to dispose of waste improperly."   As a result, Valero could not have caused any injury at Tulare Exxon.  The City is therefore relying on VMSC's and/or VRC-CA's manufacture or distribution of MTBE gasoline as grounds to pursue a nuisance claim against them at the Tulare Exxon site.  As explained above, such a position is not supported by California law.  *See In re MTBE* 457 F. Supp. 2d at 463-64; *City of Modesto*, 119 Cal. App. 4th at 42.

Having realized that its claims are unsupportable, the City now proffers the baseless allegation that VMSC and VRC-CA are responsible for the alleged nuisance at Tulare Exxon because they are successors-in-interest to Ultramar Inc.  This theory is clearly a last-ditch effort by the City to keep Valero in the litigation, as evidenced by the fact that these allegations have never been included in its Complaint, as required by California law.  *See, e.g., Hughes v. W. MacArthur Co.*, 192 Cal. App. 3d 951, 956 (1987).[4]

The general rule of successor liability under California law is that the corporate purchaser of another corporation's assets presumptively does not assume the seller's liabilities, unless: (1) there is an express or implied assumption of liability; (2) the transaction amounts to a consolidation or merger of the two corporations; (3) the purchasing corporation is a mere continuation of the sellers; or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts.  *See, e.g., Franklin v. USX Corp.*, 87 Cal. App. 4th 615, 621 (2001).  None of these situations apply.  Neither VMSC nor VRC-CA has ever assumed or received any liabilities, obligations, or property of Ultramar Inc., and Ultramar Inc. has not transferred or assigned any liabilities, obligations, or property to VMSC or VRC-CA; Ultramar Inc. did not merge into VMSC or VRC-CA; and Ultramar Inc. continues to exist and conduct business to this day.  (Rule 56.1 St., ¶¶ 21-22.)

---

[4]   In *Hughes*, the trial court dismissed the complaint as to defendant Western MacArthur Company for failure of plaintiff Hughes to allege, at all, that Western MacArthur was the successor corporation of Western Asbestos Company, the entity plaintiff contended actually committed the alleged harm.  *Hughes*, 192 Cal. App. 3d at 956.  The Court of Appeal wrote: "Hughes's complaint did not allege an essential factor in this case - that she intended to hold Western MacArthur liable for acts committed by its predecessor corporation, Western Asbestos Company.  Although we must construe pleadings liberally, this presumption does not relieve Hughes of the obligation to plead some allegation from which we may construe a legal connection between the party that injured her and the party whom she seeks to hold liable for her injury."  *Id.* (citation omitted).

Furthermore, successor-in-interest liability exists, in part, so as to prevent a company from fraudulently skirting responsibility for its liabilities. *See, e.g., Franklin*, 87 Cal. App. 4th at 621. This justification for successor liability is inapplicable in this matter, considering that Ultramar Inc. not only continues to exist, but is a party to this lawsuit. (Rule 56.1 St., ¶ 22.) There has been no destruction or disruption of the City's potential remedies against Ultramar Inc. Consequently, permitting the imposition of successor liability for Ultramar Inc. against Valero would have only the inequitable result of allowing the City to seek a double recovery for the alleged actions of a single party. Accordingly, the City should not be permitted to pursue a claim against Valero for nuisance associated with the 4594 East Tulare site.

### 4. Valley Gas, 2139 South Elm St.

Ultramar Inc. owned the Valley Gas station until October 29, 1991. (Rule 56.1 St., ¶ 29.) In 1991, an entity known as Petro Group II purchased the station from Ultramar Inc., and later sold the station to a third party. (Rule 56.1 St., ¶ 29.)

Neither VMSC nor VRC-CA have ever owned, leased, or operated the retail gas station or real estate located at 2139 South Elm Avenue, Fresno, CA. (Rule 56.1 St., ¶ 30.) Similarly, neither VMSC nor VRC-CA has ever manufactured equipment used for the distribution, handling, storage, dispensing or sale of gasoline products. (Rule 56.1 St., ¶ 20.) Further, the City has no evidence that Valero "specifically instructed a user to dispose of waste improperly." As a result, Valero could not have caused any injury at Valley Gas. The City is therefore relying on VMSC's and/or VRC-CA's manufacture or distribution of MTBE gasoline as grounds to pursue a nuisance claim against them at the Valley Gas site. Again, this position is not supported by California law. *See In re MTBE* 457 F. Supp. 2d at 463-64; *City of Modesto*, 119 Cal. App. 4th at 42.

Realizing that its claims against Valero are specious, the City has asserted without any supporting evidence or mention in its pleadings that VMSC and VRC-CA are successors-in-interest to Ultramar Inc., and are therefore liable for nuisance at Valley Gas.  But the facts unequivocally establish that VMSC and VRC-CA are not, in fact, successors-in-interest to Ultramar Inc.[5]  (Rule 56.1 St., ¶ 22.)  Accordingly, the City should not be permitted to pursue a claim against Valero for nuisance at the 2139 South Elm site.

### 5. Beacon #3519, 4591 E. Belmont Ave.

This ARCO-branded station was leased from Irene Armey by Beacon/Ultramar Inc. from March 1, 1971 until October 20, 1999.  (Rule 56.1 St., ¶ 31.)  Ultramar Inc. assigned its rights in the lease to Gasamat Oil Corp. of Colorado ("Gasamat") on October 20, 1999, but retained a remediation agreement.  (Rule 56.1 St., ¶ 31.)  Ultramar Inc. sold its assets and improvements at Beacon #3519 to Gasamat at that time, as well.  (Rule 56.1 St., ¶ 31.)

In 2001, Gasamat assigned its interest in the lease and sold its assets and improvements at Beacon #3519 to Nirmal Gill.  (Rule 56.1 St., ¶ 32.)  Nirmal Gill and his partner Navdeep "Gary" Singh began operating the ARCO-branded station on January 10, 2002 and have been operating it continually since that time.  (Rule 56.1 St., ¶ 32.)  Mr. Singh testified that he and Nirmal Gill own the station and equipment at the site, while the physical property is owned by Melvin Armey.  (Rule 56.1 St., ¶ 32.)

Neither VMSC nor VRC-CA have ever owned, leased, or operated the retail gas station or real estate located at 4591 East Belmont, Fresno, CA.  (Rule 56.1 St., ¶ 33.)  Similarly, neither VMSC nor VRC-CA has ever manufactured equipment used for the distribution,

---

[5]   A more detailed analysis of the City's nuisance claims and successor liability theory can be found in the Tulare Exxon discussion, *supra* Section V.C.3.

handling, storage, dispensing or sale of gasoline products. (Rule 56.1 St., ¶ 20.) And the City

has no evidence that Valero "specifically instructed a user to dispose of waste improperly." As a

result, Valero could not have caused any injury at Beacon #3519. The City is therefore relying

on VMSC's and/or VRC-CA's manufacture or distribution of MTBE gasoline as grounds to

pursue a nuisance claim against them at the Beacon #3519 site. Again, this position is not

supported by California law. *See In re MTBE* 457 F. Supp. 2d at 463-64; *City of Modesto*, 119

Cal. App. 4th at 42.

Realizing that its claims against Valero are specious, the City has asserted without any

supporting evidence or mention in its pleadings that VMSC and VRC-CA are successors-in-

interest to Ultramar Inc., and are therefore liable for nuisance at Beacon #3519. But the facts

unequivocally establish that VMSC and VRC-CA are not, in fact, successors-in-interest to

Ultramar Inc.[6]  (Rule 56.1 St., ¶ 22.) Accordingly, the City should not be permitted to pursue a

claim against Valero for nuisance associated with the 4591 East Belmont site.

### 6.    Beacon-ARCO #615, 1625 Chestnut Ave.

Martinoil has owned Beacon-ARCO #615 since the 1980s. (Rule 56.1 St., ¶ 34.) On

November 29, 1984, Martinoil sold and assigned its rights, obligations, and interests under the

Franchise Agreement to Beacon, but retained ownership of Beacon-ARCO #615. (Rule 56.1 St.,

¶ 34.)

Valero could not have caused any injury at Beacon-ARCO #615. Neither VMSC nor

VRC-CA have ever owned, leased, or operated the retail gas station or real estate located at 1625

North Chestnut Ave., Fresno, CA. (Rule 56.1 St., ¶ 35.) Similarly, neither VMSC nor VRC-CA

---

[6]    A more detailed analysis of the City's nuisance claims and successor liability theory can
be found in the Tulare Exxon discussion, *supra* Section V.C.3.

has ever manufactured equipment used for the distribution, handling, storage, dispensing or sale of gasoline products. (Rule 56.1 St., ¶ 20.)   And the City has no evidence that Valero "specifically instructed a user to dispose of waste improperly." The City is therefore relying on VMSC's and/or VRC-CA's manufacture or distribution of MTBE gasoline as grounds to pursue a nuisance claim against them at the Beacon-ARCO #615 site. This position, however, is not supported by California law. *See In re MTBE* 457 F. Supp. 2d at 463-64; *City of Modesto*, 119 Cal. App. 4th at 42.

Realizing that its claims against Valero are specious, the City has asserted without any supporting evidence or mention in its pleadings that VMSC and VRC-CA are successors-in-interest to Ultramar Inc., and are therefore liable for nuisance at Beacon-ARCO #615. But the facts unequivocally establish that VMSC and VRC-CA are not, in fact, successors-in-interest to Ultramar Inc.[7]  (Rule 56.1 St., ¶ 22.) Accordingly, the City should not be permitted to pursue a claim against Valero for nuisance associated with the 1625 North Chestnut site.

## VI.   Conclusion

As a matter of California law and this Court's prior holding in *OCWD*, and based on the undisputed facts in this case, the City's claim for "nuisance" fails as a matter of law as to Moving Defendants because there is no evidence that Moving Defendants engaged in the kind of affirmative conduct necessary to sustain nuisance. Therefore, Moving Defendants respectfully request that the Court grant partial summary judgment and dismiss the nuisance claim as to the Moving Defendants and Sites at issue in this motion.

---

[7]   A more detailed analysis of the City's nuisance claims and successor liability theory can be found in the Tulare Exxon discussion, *supra* Section V.C.3.

Dated: March 15, 2013

Respectfully submitted,

KING & SPALDING LLP

Robert E. Meadows
Jeremiah J. Anderson
1100 Louisiana, Suite 4000
Houston, Texas 77002
Tel: (713) 751-3200
Fax: (713) 751-3290

Charles C. Correll Jr.
101 Second Street, Suite 2300
San Francisco, California  94105
Tel: (415) 318-1200
Fax: (415) 318-1300

*Attorneys for Defendants
Chevron U.S.A. Inc. and Union Oil
Company of California*

## ATTACHMENT A

### DEFENDANTS JOINING CERTAIN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S NUISANCE CLAIMS

CHEVRON U.S.A. INC.

SHELL OIL COMPANY

TEXACO REFINING AND MARKETING INC.

EQUILON ENTERPRISES LLC

VALERO MARKETING AND SUPPLY COMPANY

VALERO REFINING COMPANY-CALIFORNIA

**Certificate of Service**

I hereby certify that on the 15th day of March 2013, a true, correct, and exact copy of the foregoing document was served on all counsel via LexisNexis File & Serve.

Jeremiah J. Anderson