# EXHIBIT 9

### Exxon Service Station (4594 E. Tulare)

- Deposition of Donald Doyle, pgs. 12-13, 15, 17-18, 21 (Apr. 4, 2011)

- Deposition of Narinder Singh, pgs. 20-24, 31-32 (Mar. 16, 2011)

- Valero Defendants' Responses to Plaintiff City of Fresno's First Set of Interrogatories to Defendants, Rog No. 3, pp. 7-8 (Nov. 5, 2008)

Deposition of Donald Doyle  /  April 4, 2011

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-oOo-

In re:  Methyl Tertiary Butyl
Ether  ("MTBE") Products
Liability Litigation

Master File

No.

1:00-1898

This Document Relates To:

Case No.

City of Fresno

MDL 1358

(SAS)

V. Chevron U.S.A. Inc., et al.,

Case No. 04 Civ. 4973

DEPOSITION OF DONALD DOYLE

April 4, 2011 at 2:00 (2:34) p.m.

Before:  MICHELLE ELYSE BANDY

CSR #13590

Taken at:

Fresno, California

Deposition of Donald Doyle  /  April 4, 2011

Page 10

1    A. Yes.
2    Q. All right.  Sometimes counsel may have
3  objections.  So same rules apply.  They have to put on
4  that on the record for future discussion with the
5  judge.  You can still answer the question but give
6  them a second to get that on the record so we're not
7  all stepping on each other's words?  Okay?
8    A. Yes.
9    Q. Sometimes I'm fuzzy.  I may not ask a question
10 clearly.  Tell me if you have a problem understanding
11 what I am getting at, and I'll try to rephrase.  Okay?
12   A. Yes.
13   Q. Sometimes we'll be talking about things that
14 happened a while ago.  And so we might talk about a
15 date or a volume and you might not remember a specific
16 date or specific amount, but you can probably ball
17 park.
18      For example, a year or a decade that kind of
19 thing.  So to the extent you remember something give
20 us your best recollection, but understand no body
21 wants you to guess.  Okay?
22   A. Correct.
23   Q. At the end of the process you do get a written
24 copy that you can revisit our lovely time together and
25 enjoy the memories.  At that point in time you will be

Page 11

1  able to make changes to your testimony if you remember
2  something, if something is incorrectly transcribed
3  then you can make those types of changes.
4      I do caution every witness that depending on the
5  kinds of changes you make, I or other counsel can
6  comment on your credibility.
7      For example, if all of your no answers become
8  yes answers, somebody might point out that that was a
9  little fishy.
10   A. Yes.
11   Q. Because I have to ask, are you under the
12 influence of any drugs or alcohol or medication that
13 would impair your memory or ability to testify?
14   A. No.
15   Q. Excellent.  We do take breaks, tell me if you
16 need to stretch your legs or get up, and we can go off
17 the record.  Okay?
18   A. Yes.
19   Q. Any questions about the process?
20   A. No.
21   Q. The first exhibit I have, I think is a copy of
22 what you received and you can tell me if that's true.
23      The notice is on top, but I think what is
24 attached here is the subpoena.
25      If you Can check to see if that is the same of

Page 12

1  what you received.
2      (Exhibit 1 marked and attached.)
3    A. Yes.  This is the same.
4    Q. Okay.  And attached to that -- let' see, was
5  there a request for documents?  I can't remember if
6  there was or not.
7    A. Yes.
8    Q. Did you have any documents in your possession?
9    A. No, I do not.
10   Q. All right.  Just generally, can you tell us how
11 far did you go in school?
12   A. Associate degree.
13   Q. What was your area of emphasis?
14   A. Business.
15   Q. Any courses in chemistry?
16   A. High school.
17   Q. And what about any additional training in
18 hydrogeology?
19   A. No.
20   Q. Toxicology?
21   A. No.
22   Q. Okay.  Any professional licences?
23   A. Real estate.
24   Q. Okay.  And then let's talk about this station,
25 the Arco station we began talking about.  4594 East

Page 13

1  Tulare, what was your relationship to that station?
2    A. We purchased it, my wife and I, from Martin
3  Oil Company.  It was probably purchased under the
4  name -- either been my wife and myself or El Monte
5  Gas Co., Inc.
6    Q. Do you remember the year?
7    A. No.
8    Q. Okay.  Do you know who supplied the gas to that
9  station?
10     MS. KLEAVER:  Calls for speculation.
11 BY MS. AUSTIN
12   Q. That's an example of an objection she's putting
13 on the record.  But you can still answer if you
14 understand it.  I know it's a little awkward.
15   A. You know, it is.  I know we wanted to brand
16 Exon because that was our brand of choice at the
17 time.  I don't know whether we did that or not.  I
18 don't remember that.
19   Q. Did you work at the station?
20   A. No.
21   Q. Did you lease it out to someone else?
22   A. Yes.  We leased it out to Narinder Singh
23 Dillon.
24     THE REPORTER:  What was that?
25     THE WITNESS:  Narinder Singh Dillon.

4  (Pages 10 to 13)

Deposition of Donald Doyle  /  April 4, 2011

Page 14

1      THE REPORTER:  Thank you.
2   BY MS. AUSTIN:
3   Q.  All right.  I think I have a map of the
4   station.  Let's see if it makes sense to you.
5      This is Exhibit 2 and for the record
6   RWQCB-FRESNO-017010.  Does that look like the right
7   site?
8      (Exhibit 2 was attached and marked.)
9   A.  Yes, it does.
10   Q.  Okay.  So it's on the corner of Tulare and
11   Maple?
12   A.  Yes.
13   Q.  Are the buildings in the same location that you
14   recall?
15   A.  Yes.
16   Q.  Okay.  And underground storage tanks at the
17   bottom are in same location where they were when you
18   owned the station?
19   A.  Yes.
20   Q.  Hang on to that one.  We might come back to it.
21      So Exhibit 3.  This is an underground storage
22   tank permit application, and I think this may predate
23   your time.  It's dated 1992, and at the bottom it's
24   signed Sandy Huff.  I believe is with Ultramar.  Did
25      Do you recall -- do you recall Sandy Huff?  Did

Page 15

1   you ever talk to her?
2      (Exhibit 3 marked and attached.)
3   A.  No.  I did not talked to Sandy Huff.
4   Q.  Okay.  When you bought the station you said you
5   bought it from Martin Oil; is that correct?
6   A.  That's correct.
7   Q.  Okay.  So it was some time after 1992?
8   A.  Yes.
9   Q.  Okay.  When you bought the station, did you
10   also buy the tanks?
11   A.  Yes.  It would be all of the property.
12   Q.  Okay.  And then on this particular permit
13   stating that the tank operator was Ultramar, did
14   Ultramar continue to operate the tanks after you
15   purchased the station?
16   A.  No.
17   Q.  Do you know someone named Michael, and the last
18   name I think it's pronounced Grzeszak, and it's
19   G-R-Z-E-S-Z-A-K.
20      Is that name familiar to you?
21   A.  No, it's not.
22   Q.  Then I won't show you this document.
23   A.  Darn.
24   Q.  Really?  Because I could give you a copy.
25      All right.  Looking at Exhibit 4 then.  This is

Page 16

1   actually an Inter-office Memorandum from Ultramar, but
2   I think it has some names you'll recall it now.
3      It mentions Narinder Dillon.  This is the person
4   you were leasing the station to; is that correct?
5      (Exhibit 4 was marked and attached)
6   A.  That's correct.
7   Q.  And the date on this document is May 23rd, of
8   1995.  The Inter-office Memorandum notes a station
9   closure.  When you purchased the station was it
10   operational?
11   A.  I don't remember.  I don't know if they were
12   removing tanks and changing tanks.  I don't remember
13   that, it may have been closed, but --
14   Q.  Okay.  So let's see if Exhibit 5 helps us out
15   here.
16      (Exhibit 5 was marked and attached.)
17   A.  Do I keep all these?
18   Q.  Actually, Michelle is going to keep all of
19   those.  If you would like a copy, I do have extras.
20   A.  Okay.
21   Q.  Would you like a copy?
22   A.  Yeah.  If you don't mind.
23   Q.  I don't mind.  I'll start a pile over here.
24   We'll create a pile.
25   A.  Yes, start your pile.  Do I pass these over to

Page 17

1   her then?
2   Q.  Not yet.
3   A.  Okay.
4   Q.  She'll grab them at the end.
5      Exhibit 5 is our next document here.
6   A.  Okay.
7   Q.  And this is an environmental health application
8   that dates for the record FCDEH-FRESNO-021171.  And
9   this now lists Narinder Singh, and I think that's
10   Kanta?
11      (Exhibit 5 was marked and attached.)
12   A.  That's correct.
13   Q.  K-A-N-T-A.
14   A.  That's his wife.
15   Q.  That's his wife?  So they operated the station
16   together?
17   A.  Yes.  They had somebody run it.  They ran a
18   different station, but they ran the operation, yes.
19   They were responsible.
20   Q.  So just in terms of kind of who is responsible
21   for what.  You owned the actual property, correct?
22   A.  Correct.
23   Q.  And you owned the tanks?
24   A.  Correct.
25   Q.  Did they owned the business?

5  (Pages 14 to 17)

Deposition of Donald Doyle  /  April 4, 2011

Page 18

1    A. They owned the business.
2    Q. Okay. And then did they lease it out to
3  someone else?
4    A. I think they probably had -- may have became a
5  partner his name is Paul. I don't remember his last
6  name, but Paul I think was operating the station.
7    Q. Do you know if that was Paul Wonder Singh?
8    A. Probably.
9    Q. Do you know if he was related?
10   A. You know, I don't think so. But I could be
11  wrong. He may be a relative.
12   Q. All right. Down below under the comments it
13  states that the UGTs, and I'm meaning that to mean the
14  underground tanks sold to El Monte Gas. And that was
15  you, right?
16   A. That's correct.
17   Q. And the date on this one was May 30th of '95.
18  Does that sound the like the right date when your
19  purchased the station?
20   A. I don't remember. I really don't know.
21   Q. Okay. Is it --
22   A. But by this. It's probably is true.
23   Q. I don't want to put words in your mouth. I'm
24  hoping it refreshes your recollection about the
25  timing.

Page 19

1     The next Exhibit I have is number 6. And this
2  is an underground storage tank permit application
3  again, different names though. This one identifies El
4  Monte Gas as the tank owner.
5     Is this familiar to you?
6     (Exhibit 6 was marked and attached.)
7    A. Yes.
8    Q. Okay. The signature at the bottom, do you
9  recognize that one?
10   A. That's mine.
11   Q. Okay. Did you have any responsibility -- I see
12  that you signed this particular permit application.
13     Did you have additional responsibilities for
14  communicating with the county regarding anything
15  pertaining to the station?
16   A. At this time I had to of in order -- whatever
17  this is for, yes.
18   Q. Okay.
19   A. Permits for the tanks, yes.
20   Q. Did you have any involvement in communicating
21  with the county concerning, for example, upgrades to
22  the underground storage tanks?
23   A. If at this time they needed to be done, yes.
24   Q. Okay. And what about inventory? Did you
25  communicate with the county regarding the inventory in

Page 20

1  the tanks?
2    A. It would have been -- well, it would have been
3  Narinder reporting to me, then I would be responding
4  to what they told me.
5    Q. Say you were in the loop?
6    A. I was in the loop, yes.
7    Q. Looking at the descriptions of the tanks on the
8  following pages. It appears that there were four
9  ten-thousand gallon tanks.
10     Does that sound right to you?
11   A. Looks correct.
12   Q. Okay. And do you know -- you don't know the
13  date when these were installed; is that correct?
14   A. No, I don't.
15   Q. Okay. The next document I have is Exhibit 7.
16  It is a permit to operate and this is again, for the
17  same address, and it's listing the owner as El Monte
18  again.
19     Do you recall receiving permits to operate that
20  looks like this document?
21     (Exhibit 7 was attached and marked.)
22   A. You know, I don't remember this document.
23  But, yes, I'm sure we got this. I'm sure -- that
24  looks correct.
25   Q. The issue date on this is 1996, and the

Page 21

1  expiration is 1998.
2    A. '98.
3    Q. When did you actually operate the station
4  until?
5     I didn't ask that very well. How long did you
6  own the station?
7    A. I don't remember. We didn't own it very long.
8  We sold it to Narinder.
9    Q. Do you know if he still owned it at the
10  expiration in 1998?
11   A. No, I don't.
12   Q. Let's see if this will help us out here.
13  Sometimes the documents end up telling the story.
14   A. Well, they are so far.
15   Q. They are. I appreciate that you recognize a
16  few in here.
17     So number 8 this is the underground storage
18  permit application again, a different form. And this
19  time it is listing property owner as Kupral and
20  Narinder Singh. Does this help refresh your
21  recollection that you resolved these things by May of
22  1998?
23     (Exhibit 8 was marked and attached.)
24   A. That sounds correct. This looks correct.
25   Q. Flying right through here. Let's see.

Deposition of Narinder Singh / March 16, 2011

Page 1

1            UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF NEW YORK
2                       -oOo-

3    _____

4    In re: Methyl Tertiary Butyl
     Ether ("MTBE") Products
5    Liability Litigation
                                          Master File No.
6    _____  1:00-1898

     This Document Relates To:
7                                          Case No.
     City of Fresno                        MDL 1358(SAS)
8    v. Chevron U.S.A. Inc., et al.,
     Case No. 04 Civ. 4973
9    _____

10

11           DEPOSITION OF NARINDER SINGH
12           March 16, 2011 at 9:00 (9:16)  a.m.
13           Before:  ERIC L. JOHNSON
                      RPR, CSR #9771

14
             Taken at:
15           Fresno, California
16
17
18
19
20
21
22
23
24
25

Deposition of Narinder Singh  /  March 16, 2011

Page 17

1  affect your ability to recollect events and give
2  testimony here today?
3      A.  Well, I am diabetic and I am taking insulin
4  right now.  My medication.  But there's no effect by it.
5      Q.  Okay.  And we can take breaks whenever your --
6  whenever you need to.  We will try and get you done by
7  noon today.
8      A.  Mm-hmm.
9      Q.  We have another witness coming in later.  So if
10  you do need a break, just let us know and we will be
11  happy to take breaks.  Or if we need to change the
12  video, then we will be taking a break for that.
13      A.  Yes.
14      Q.  Do you have any questions about the deposition
15  process?
16      A.  Well, you know, what is this about?  I don't
17  know nothing, you know.
18      Q.  Well, you are not being sued.  The City of
19  Fresno is conducting an investigation involving various
20  gas station sites in the city.
21      A.  Oh.
22      Q.  So I am going to be asking you questions about
23  the station operations and showing you a number of
24  documents --
25      A.  Absolutely.

Page 18

1      Q.  -- related to the station.
2      A.  Yes.
3      MR. EICKMEYER:  We'll start out with Exhibit 1,
4  I have marked as your amended deposition notice.
5      (Deposition Exhibit 1 marked for
6      identification)
7      MR. EICKMEYER:  Q.  And what I will do is for
8  most of the documents, except this one, they have a
9  number, they call it a Bates number that's been stamped
10  at the bottom.  So when we go to a new document, I will
11  identify it for the record before we talk to you about
12  it.
13      As I mentioned for Exhibit 1 here, this is just
14  the amended notice of deposition.
15      A.  Mm-hmm.
16      Q.  And you brought in with you today, you had
17  shown us before we went on the record a copy of your
18  deposition subpoena.
19      A.  Yes.
20      Q.  All right.  And is this the only document you
21  brought with you today --
22      A.  Yes.
23      Q.  -- was your subpoena?
24      A.  Yes.
25      Q.  If you take Exhibit 1, and just turn the cover

Page 19

1  page, I think you will see your subpoena there that --
2      A.  Yes.
3      Q.  -- that you had brought in with you today as
4  well.
5      A.  Yes.
6      Q.  I am going to ask you to turn about two more
7  pages to a page titled Attachment.  There you go.  And
8  did you have a chance to look at the list of station
9  addresses under No. 1?
10      A.  Yes.
11      Q.  And did you find any stations that you had
12  worked at or otherwise been affiliated with?
13      A.  The only one on 4594 East Tulare.
14      Q.  Okay.  And you are pointing to that address
15  part of the way down at 4594 East Tulare?
16      A.  Yeah.
17      Q.  So that's the only --
18      A.  Yeah.
19      Q.  -- address --
20      A.  That I am affiliated with.
21      Q.  -- that you are affiliated with out of that
22  entire list?
23      A.  Yes, sir.
24      Q.  And did you have a chance to look at the
25  documents that are requested in this list, starting at

Page 20

1  No. 1 and going on to No. 35?
2      Did you have a chance to look over that list to
3  see if you had any documents that were requested?
4      A.  Yes, I did look at that.
5      Q.  And did you find that you had any documents
6  that are included in this list 1 through 35?
7      A.  No, I haven't.
8      Q.  You don't have any currently?
9      A.  No, sir.
10      Q.  Let me talk for just a bit about your history
11  before we dive into the documents.  Beside this station
12  at 4594 East Tulare, have you ever worked at any other
13  gas stations?
14      A.  Yes.
15      Q.  Can you tell us which was first in order?
16      A.  It's 10610 East Mountainview, Selma,
17  California.
18      Q.  What years did you work at that station?
19      A.  From 1991 until the current.
20      Q.  What was the name of that station when you
21  started working there?
22      A.  That was actually under El Monte Gas.
23      Q.  I am sorry.  That was --
24      A.  El Monte Gas.
25      Q.  El Monte, okay.

Deposition of Narinder Singh  /  March 16, 2011

**Page 21**

1  A. El Monte Gas.
2  Q. Has that name changed over the years?
3  A. It was ARCO gas station, it was under El Monte
4  Gas. And then in '99 after we put in new tanks and all
5  that, we opened back up -- it was closed down for two
6  years, then we opened back up in 2000 as Exxon.
7  Q. Is it an Exxon station at the current time?
8  A. Right now? No.
9  Q. What did it change to after Exxon?
10  A. Valero.
11  Q. Approximately when did that change?
12  A. In August -- August last year.
13  Q. Is it currently a Valero station?
14  A. Yes, sir.
15  Q. Are you the owner of that station?
16  A. Yes, sir.
17  Q. Okay. Beside that station in Selma and the one
18  at 4594 East Tulare, have you been affiliated with any
19  other stations?
20  A. No, sir.
21  Q. Can you describe for us any school or education
22  you have had after high school?
23  A. Well, I was in India, you know, I went to
24  school in India. And I didn't finish any college. I
25  went to college, but I never finished.

**Page 22**

1  Q. Did you have any particular course of study in
2  college?
3  A. No.
4  Q. How about after you came to the United States,
5  did you have any college?
6  A. No, sir.
7  Q. So if we talk about "the station" for
8  shorthand, can we agree --
9  A. Yes.
10  Q. -- that we are talking about 4594 East Tulare
11  here in Fresno?
12  A. Yes.
13  Q. If I ever ask something about the Selma one,
14  I'll -- I will try -- I will specify that so we are
15  clear, but otherwise I will be asking you about the
16  Fresno station.
17  A. Yes, sir.
18  Q. Can you tell us what year you first became
19  affiliated with the Fresno station?
20  A. 1994. We leased that station and we own
21  inside, and the gas was owned by El Monte Gas. El Monte
22  Gas, Mr. Don Doyle bought that station from, I believe,
23  Beacon Oil Company.
24  Q. When you say, "We owned the inside," are you --
25  are you meaning that you owned the building?

**Page 23**

1  A. Convenience store.
2  Q. When you say the gas was owned by El Monte, are
3  you referring to the underground storage tanks?
4  A. Yeah, the gasoline, you know, gasoline part was
5  on commission and they owned that part.
6  Q. Okay. So just to clarify, when you say the
7  gasoline part, that would be underground storage
8  tanks --
9  A. Yes, sir.
10  Q. -- piping --
11  A. Yes, sir.
12  Q. Just a second. Just a second. You are
13  anticipating where I am going. Just so we are --
14  A. Yes, sir. Yes, sir. Yes, sir.
15  Q. -- not talking at the same time.
16  A. Yes.
17  Q. So when you say the gasoline part, that would
18  be the underground storage tanks, the piping, and the
19  gas dispensers?
20  A. Yes, sir.
21  Q. Did you ever learn when Mr. Doyle bought the
22  station from Beacon?
23  A. In 1994. Same time I leased.
24  Q. Do you know who owned the land or the property
25  in 1994?

**Page 24**

1  A. Don Doyle bought the land and the property at
2  that time.
3  Q. Before he bought the station in 1994, do you
4  know what the station was branded?
5  A. ARCO.
6  Q. And at the time you started leasing the
7  station, what was it branded?
8  A. ARCO.
9  Q. When you say, "We leased the station," was that
10  you and your wife initially?
11  A. Me and my wife, and I have partners, Kirpal
12  Singh Sandhu. I am actually a silent partner. He run
13  that station.
14  Q. I am sorry. You said he was the silent
15  partner?
16  A. I am the silent partner.
17  Q. Oh, you are the silent partner?
18  A. Yeah.
19  Q. So from the station initially being branded
20  ARCO, did it later have another brand?
21  A. Yes.
22  Q. What was after ARCO?
23  A. After ARCO we went independent.
24  Q. What year did that occur?
25  A. That was in '99. We bought the property in '99

6  (Pages 21 to 24)

DEPOBOOK REPORTING SERVICES  (800) 830-8885

Deposition of Narinder Singh  /  March 16, 2011

Page 29

1      MS. KLEAVER: Objection; calls for speculation,
2  lacks foundation.
3      MR. EICKMEYER: Q. Now -- when she's done
4  talking now, you can answer.
5      A. Oh, okay.
6      Q. So, I am sorry, what was your answer?
7      A. Yes. What your question was again?
8      MR. EICKMEYER: Well, if we can get a
9  read-back.
10      (Record read)
11      THE WITNESS: Yes.
12      MR. EICKMEYER: Q. After the Circle 6 name on
13  the station, has it had another name?
14      A. No.
15      Q. So it's still Circle 6 at the present day?
16      A. Yes.
17      Q. Is it still Exxon brand gas being sold there to
18  the present day?
19      A. No, sir.
20      Q. When did that change?
21      A. That change in 2006.
22      Q. And what brand did that change to?
23      A. Valero.
24      Q. Is it still Valero gas being sold there to the
25  present day?

Page 30

1      A. Yes, sir.
2      Q. When the switch was made that you described to
3  Exxon brand in about 2002 or '3, who were the jobbers
4  delivering that Exxon gas?
5      A. It was Julien Oil Company.
6      Q. Was that the only one?
7      A. That was the only one. Yes, sir.
8      Q. After the change was made to Valero in about
9  2006, what jobbers were delivering gas to the station?
10      A. Still Julien Oil Company.
11      Q. Is that true to the present day?
12      A. Yes, sir.
13      Q. And it has only been Julien Oil during the
14  Valero years?
15      A. Yes, sir.
16      (Deposition Exhibit 2 marked for
17      identification)
18      MR. EICKMEYER: I will hand you what I have
19  marked as Exhibit 2. This is Fresno County Health
20  Services Agency, Bates FCDEH-FRESNO-020619.
21      Q. Do you recognize this page as having seen it
22  before?
23      A. This page, yeah.
24      Q. On the -- I will point -- on many of the
25  documents I will try and point you to a particular place

Page 31

1  just to make it faster. But if you ever want to stop
2  and read anything, we will be happy to take the time to
3  do that.
4      Where it says Business Owner about halfway
5  down, it looks like it says Narinder Singh, and is it
6  pronounced Kanta Singh?
7      A. Yes, that's my wife.
8      Q. And that's for the record, K-a-n-t-a?
9      A. Mm-hmm.
10      Q. I'm sorry. Can you say yes?
11      A. Yes, sir.
12      Q. You said -- I think you said "mm-hmm," so I am
13  just trying to clarify.
14      A. I'm sorry.
15      Q. So it is indicated here, do you recognize where
16  it says Owner, it looks like Kanta Singh is the
17  signature. Do you recognize that as your wife's
18  signature?
19      A. Yes, sir.
20      Q. Across from her signature, it looks like the
21  date is 5/25/95.
22      A. Yes, sir.
23      Q. Do you recognize -- I think you described it
24  was about 1994 when you had first leased the station?
25      A. Yes, sir.

Page 32

1      Q. It looks like it says Date of Business
2  Commencement here, 6/1/95.
3      A. Maybe it is '95. Maybe I am -- you know, make
4  mistake on that.
5      Q. Well, that's why I say, some of the
6  documents --
7      A. Yes.
8      Q. -- might help --
9      A. Yes, sir.
10      Q. -- refresh your memory.
11      A. Yes.
12      Q. At the time that you took over the station, was
13  there any change made of the underground storage tanks
14  at that point?
15      A. No, sir.
16      Q. Did you ever have any information when the
17  tanks that were there when you took over had originally
18  been installed?
19      A. No, sir.
20      (Deposition Exhibit 3 marked for
21      identification)
22      MR. EICKMEYER: I will show you what I have
23  marked as Exhibit 3. This is a Fresno County Health
24  Services Agency Environmental Health Application, Bates
25  FCDEH-FRESNO-020618.

UNITED STATES DISTRICT COURT )
SOUTHERN DISTRICT OF NEW YORK )
_____ )
                                         )
In re Methyl Tertiary Butyl Ether        )
("MTBE") Products Liability Litigation   )
                                         )
_____ )
                                         )
This document relates to:                )
                                         )
*City of Fresno v. Chevron U.S.A., Inc., et* )
*al.*, No. 04 Civ. 4973                   )
_____ )

Master File No. 1:00-1898
MDL No. 1358 (SAS)
M21-88


**VALERO DEFENDANTS'
OBJECTIONS AND RESPONSES
TO PLAINTIFF CITY OF
FRESNO'S FIRST SET OF
INTERROGATORIES TO
DEFENDANTS**

        Pursuant to Federal Rule of Civil Procedure 33 and Local Rule 26.3, Ultramar Inc.,

Valero Marketing and Supply Company, and Valero Refining Company–California (collectively

"Valero Defendants") answer and object to Plaintiff City of Fresno's ("Plaintiff" or "City of

Fresno") First Set of Interrogatories served on September 2, 2008 as follows.

        Dated: November 5, 2008.

                                        _____
                                        J. Clifford Gunter III
                                        M. Coy Connelly
                                        Amy E. Parker
                                        BRACEWELL & GIULIANI LLP
                                        711 Louisiana St., Suite 2300
                                        Houston, Texas 77002-2770
                                        Telephone: (713) 221-1335
                                        Telecopier: (713) 221-1212

                                        Attorneys for Defendants
                                        ULTRAMAR INC., VALERO MARKETING AND
                                        SUPPLY COMPANY, AND VALERO REFINING
                                        COMPANY-CALIFORNIA

Valero Defendants refer Plaintiff to their responses to Interrogatory Nos. 1 and 3 for information responsive to this request.

**INTERROGATORY NO. 3:**

IDENTIFY the address of all gasoline stations that YOU lease or have leased within the RELEVANT GEOGRAPHIC AREA since 1979.

      a.     State the lease dates for each station YOU identified.

**RESPONSE:**

Valero Defendants object to this Interrogatory on the grounds that it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. This Interrogatory is specifically overbroad both with respect to time, as explained in General Objections Nos. 6 and 7, and to the extent it calls for the identification of all gasoline stations owned by Valero Defendants in the RGA without regard to whether any of those stations is in the vicinity of any drinking water production well or whether any of those stations has ever been identified as the source of a release of gasoline containing MTBE. Subject to, and without waiving, the foregoing objections and the General Objections and Limitations set forth above, Valero Defendants answer as follows:

1. #3481: 6390 N. Blackstone, Fresno, CA 93710 (04/11/66—present)
2. #3615: 1625 N. Chestnut Ave., Fresno CA 93703 (07/24/98—present)
3. #3616: 4001 N. Marks Ave., Fresno, CA 93722 (01/22/85—present)
4. #3659: 4514 W. Shaw Ave., Fresno, CA 93722 (08/05/88—present)
5. #3519: 4591 E. Belmont, Fresno, CA 93702 (03/01/71—10/20/99)

In addition to the foregoing, Ultramar PLC acquired some retail stations leases when it purchased Beacon Oil Company through a stock purchase transaction in November, 1981.[1] To the best of Valero Defendants' current knowledge, most, if not all, of the acquired stations were leased and then sub-leased to third parties who actually operated the station in question. However, given the dates of the transactions at issue, the documentation necessary to confirm Valero Defendants' precise relationship with these stations as well as the dates of the leases is no longer available. Approximate dates have been provided where known.

Several of these leaseholds were terminated prior to 1995 when Ultramar Inc. merged with Diamond Shamrock Corporation. Most, if not all, of the leaseholds were terminated prior to the December 31, 2001 merger of Ultramar Diamond Shamrock Corporation with and into Valero Energy Corporation. Notwithstanding the foregoing, the following is the list of all such stations located within the RGA which may have been leased during the relevant time frame:

1. Beacon #77: B Street, Fresno CA (1935—Lease Termination Date Unknown)

---

[1] Beacon Oil Company changed its name to Ultramar Inc., effective September 18, 1989.

2. Beacon #78: Belmont at 12th Street, Fresno CA (1935—Closure Date Unknown)
3. Beacon #80: Tulare & Chestnut, Fresno CA (Dates of Leasehold Unknown)
4. Beacon #496: 4809 E. Kings Canyon, Fresno CA (Dates of Leasehold Unknown)
5. Beacon #595: 3768 S. Highway 99, Fresno CA (09/01/83—03/27/96)
6. Beacon #620: 4594 E. Tulare, Fresno CA (01/22/85—08/28/95)
7. Beacon #658: 1334 N. First St., Fresno CA (Lease terminated 11/01/96)
8. Beacon #257: 9th & McKenzie, Fresno CA (Site leased 10/46.  Lease Termination Date Unknown)
9. Beacon #432: 2950 E. Ventura, Fresno CA (Dates of Leasehold Unknown)
10. Beacon #433: 1372 N. First St., Fresno CA (Dates of Leasehold Unknown)
11. Beacon #437: 4652 Belmont, Fresno CA (Dates of Leasehold Unknown)
12. Beacon #438: 4005 E. Jensen, Fresno CA (Dates of Leasehold Unknown)
13. Beacon #460: 603 G. Street, Fresno CA (04/28/75—04/30/90)
14. Beacon #472: 2295 S. Elm Ave., Fresno CA (Dates of Leasehold Unknown)
15. Beacon #516: 2430 E. Olive St., Fresno CA (07/15/85—10/31/91)
16. Beacon #538: 2139 S. Elm, Fresno CA (Lease terminated 11/01/91)
17. Beacon #579: 5190 E. Olive, Fresno CA (Lease terminated 11/01/91)
18. Beacon #619: 3076 E. Gettysburg, Fresno CA (01/22/85—08/03/89)
19. Beacon #9-1: 6900 N. Motel Dr., Fresno CA (Dates of Leasehold Unknown)

## INTERROGATORY NO. 4:

IDENTIFY the address of all gasoline stations with which YOU have or have had a retail supply contract within the RELEVANT GEOGRAPHIC AREA since 1979.

    a. State the retail supply contract dates for each station YOU identified.

## RESPONSE:

Valero Defendants object to this Interrogatory on the grounds that it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. This Interrogatory is specifically overbroad both with respect to time, as explained in General Objections Nos. 6 and 7, and to the extent it calls for the identification of all gasoline stations owned by Valero Defendants in the RGA without regard to whether any of those stations is in the vicinity of any drinking water production well or whether any of those stations has ever been identified as the source of a release of gasoline containing MTBE. Valero Defendants further object to the extent this Interrogatory seeks information outside of Valero Defendants' possession, custody and control. Valero Defendants are not in possession of information pertaining to the operation, maintenance or environmental remediation which may be associated with any of the following stations. Notwithstanding the foregoing or the General Objections set forth above, Valero Defendants respond as follows:

1. #2339: 1919 W. Clinton Ave., Fresno, CA 93705 (06/13/03—present)
2. #2365: 603 G. Street, Fresno, CA 93722 (05/01/93—present)
3. #2516: 2837 N. Parkway Drive, Fresno, CA 93722 (07/18/03—present)