UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

In Re: Methyl Tertiary Butyl Ether ("MTBE")          MDL 1358 (SAS)
Products Liability Litigation

**This Document Relates To:**

*City of Fresno v. Chevron U.S.A. Inc., et al.*
04 Civ. 04973
_____

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT BASED ON THE STATUTE OF LIMITATIONS
OR, ALTERNATIVELY, FOR LACK OF INJURY**

## TABLE OF CONTENTS

I.    Introduction ..........................................................................................................1

II.   Summary Judgment Should Be Granted at the Five Sites with Groundwater
      Detections Above Five PPB Before October 22, 2000 Based on OCWD ..........................3

III.  The City's Alternative Accrual Test Is a Sleight of Hand ...................................................6

III.  The City's Claims Are Either Time-Barred Or Non-Existent at Sites that Have
      Never Had an MTBE Groundwater Detection ....................................................................8

IV.   The Court Has Already Rejected the City's Claim that CERCLA Applies .......................9

V.    The City Mischaracterizes Defendants' Arguments on Accrual ......................................11

VI.   Summary Judgment on the City's Entire Nuisance Claim Is Appropriate ........................12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aas v. Superior Court*,
   24 Cal. 4th 627 (2000) ......................................................................................................11, 12

*California v. Kinder Morgan Energy Partners, L.P.*,
   2013 WL 314825 (S.D. Cal. Jan. 25, 2013)................................................................. 3, 13-15

*City of Vista v. Robert Thomas Securities, Inc.*
   84 Cal. App. 4th 882 (2000) ...................................................................................................7

*County of Santa Clara v. Atlantic Richfield Co.*,
   137 Cal. App. 4th 292 (2006) ...............................................................................................11

*In re MTBE, Prods. Liab. Litig.*,
   475 F. Supp. 2d 286 (S.D.N.Y. 2006).....................................................................................9

*In re MTBE Prods. Liab. Litig.*,
   2008 WL 2676278 (S.D.N.Y. July 8, 2008) .........................................................................11

*In re MTBE Prods. Liab. Litig.*,
   676 F. Supp. 2d 139 (S.D.N.Y. 2009)............................................................................. passim

*In re MTBE Prods. Liab. Litig.*,
   2009 WL 4496736 (S.D.N.Y. Dec. 2, 2009) ..................................................................10, 11

**STATUTES**

Cal. Pub. Res. Code §§ 21000 *et seq.* ............................................................................................4

## I.   Introduction

The City[1] is playing a shell game, claiming on one hand that accrual did not occur until it detected MTBE in Monitoring Well 318, while on the other hand not seeking damages for that event or for any MTBE in its drinking water wells, because there is none.  Instead, the City seeks damages for an entirely separate alleged injury—MTBE reported in the shallow groundwater at the Sites—which it argues has nothing to do with accrual.  This argument makes no sense. Accrual occurs when a plaintiff suffers the injury for which it seeks to recover damages. Because the City is seeking future damages for future investigation at the Sites based solely on the alleged groundwater and soil detections at them, those detections must be the accrual trigger. These detections occurred and were reported before October 22, 2000, the undisputed limitations deadline.  Therefore, the City's claims are barred by the statute of limitations as a matter of law.

The Court has already held as much with respect to Sites with groundwater detections.[2] In *Orange County Water District v. Unocal Corp., et al.*, the Court held that a claim for MTBE impact accrues when "MTBE [is] detected in monitoring wells at levels at or above five ppb."  *In re MTBE Prods. Liab. Litig. ("OCWD")*, 676 F. Supp. 2d 139, 154 (S.D.N.Y. 2009).  The City claims that this decision does not apply to it solely because of the allegedly unique characteristics of the Orange County Water District (the "District").  It argues that the District, unlike the City, is charged with protecting groundwater in its territory, and on this basis alone the Court set the five ppb injury standard.  This argument misrepresents both the City's responsibilities with respect to the groundwater and the Court's holding.  As detailed herein,

---

[1]   Unless otherwise noted, capitalized terms have the same meaning assigned to them in the Motion for Summary Judgment based on the Statute of Limitations or, Alternatively, for Lack of Causation (the "Motion").

[2]   (1) Chevron #9-4374, 1160 Fresno St.; (2) Gilbert's Exxon, 4142 East Church; (3) Chevron #9-9093, 3996 N. Parkway Dr.; (4) Tosco #39118, 1605 N. Cedar; and (5) 7-Eleven #13917, 3645 Olive Ave.

among other things, the City: has a statutory duty to protect the groundwater; has a stated objective to prevent groundwater degradation; participates in groundwater protection organizations and presentations; permits the construction and destruction of wells; routinely tests its wells for environmental impact; and purportedly filed suit here to protect the groundwater. Furthermore, the District's common law claims are predicated on its alleged usufructary rights, so even if the City's argument that it is not charged with protecting the groundwater were credible, the *OCWD* opinion would still apply to the City's claims.

With respect to the remaining three Sites at issue in the Motion,[3] the *OCWD* opinion is distinguishable. There, discovery was ongoing, and the Court held that there was a fact issue as to whether an event after the limitations deadline alerted the District that MTBE in the soil may have reached groundwater. The City cannot credibly point to any such event here. While it relies on the Well 318 detection, it failed to retain a modeling expert, unlike the District; thus, the City cannot tie the MTBE detected in Well 318 to any of the Sites.[4] Nor did the City bring forth any other evidence that MTBE has impacted groundwater at these Sites. The City's claim for further investigation and potentially remediation damages rests solely on the soil detections, which were reported in public records before October 22, 2000. If these detections give rise to a claim, then it is time barred. If they do not, then there is no injury or viable claims at these Sites.

The City also argues that it is asserting a continuing nuisance claim, which is not subject to a three-year statute of limitations. But to show a nuisance is continuing, a plaintiff must put forth site-specific expert opinions that the environmental impact at issue is reasonably abatable,

---

[3]   (1) Tosco #30587, 1610 N. Palm; (2) Beacon-Arco #615, 1625 Chestnut; and (3) Valley Gas, 2139 South Elm St.  The City agreed to dismiss its claims at Unocal #6363, 1418 E. Shaw.
[4]   Should this litigation proceed to the merits, Defendants reserve the right to dispute the validity of MTBE detections in City wells and at any Sites, but for purposes of the present Motion, they are assumed to be true.

or satisfy the other two tests used in California. *See California v. Kinder Morgan Energy Partners, L.P.*, 2013 WL 314825 (S.D. Cal. Jan. 25, 2013). The City failed to do this. Instead, it cites to the clean-up costs for gasoline releases generally, but this generic evidence has nothing to do with the Sites at issue and is not specific to MTBE. The City also claims that Defendants conceded abatability in a footnote in the Motion, but even a cursory reading of the footnote shows this is not true. Summary judgment on the entire nuisance claim is therefore warranted.

## II. Summary Judgment Should Be Granted at the Five Sites with Groundwater Detections Above Five PPB Before October 22, 2000 Based on *OCWD*.

Summary judgment is warranted at the five Sites with groundwater detections above the secondary MCL before October 22, 2000 based on a straightforward application of *OCWD*. To distinguish *OCWD*, the City argues that the District and it "have very different interests" and "are making very different claims." Opp. at 9. It also quotes the Court's prior recitation in *OCWD* of several of the District's purported unique characteristics and notes that the City serves water and is not in the day-to-day business of monitoring wells. *Id.* at 10-11. These alleged differences, however, are immaterial to the key holding in *OCWD*:

> OCWD incurred appreciable harm when groundwater within its territory was sufficiently contaminated with MTBE that *a government agency charged with protecting the quality of that water* reasonably should have responded to that contamination.

*OCWD*, 676 F. Supp. 2d at 147-48 (emphasis added). Thus, the question is not whether the District and the City are identical (as the City seems to suggest); the question is whether the City is "charged with protecting the quality of [] water." The answer to this question is clearly yes.

Predictably, the City is charged with protecting the groundwater it serves the public, as the City has repeatedly acknowledged. The statutory requirements and duties are numerous:

- As an "urban water supplier," the City must develop and implement a water management plan "to protect both the people of the state and their water resources," including identifying and quantifying the existing and planned sources of water and developing

3

plans to replace a source or implement water demand management measures where environmental or water quality factors interfere with usage. (Rule 56.1 St. ¶ 86.)

- The City is required to undertake "such activities so that major consideration is given to preventing environmental damage." Cal. Pub. Res. Code §§ 21000 *et seq*. (California Environmental Quality Act) (West 2012); 21000(g).

- In 1992, the City co-authored the Fresno/Clovis Metropolitan Water Resources Management Plan (Phase I), which states that the City's objectives include to "protect groundwater quality from further degradation," "provide safe, adequate, and dependable water supplies to meet the future needs of the metropolitan area," undertake further analysis of hydrogeologic conditions in the basin, and determine "the best location for additional basin recharge facilities." (Rule 56.1 St. ¶ 88.)

- The City's current Urban Water Management Plan reiterates the City's responsibility to "preserve and enhance the existing quality of the area's groundwater" and "manage groundwater resources to the extent necessary to ensure reasonable, beneficial, and continued use of the resource." (Rule 56.1 St. ¶ 89 (City of Fresno 2010 Urban Water Management Plan Chapter 4.1.2.2 (noting that "the October 2005 Memorandum of Understanding between the participating agencies makes it clear that each participating agency [including the City of Fresno] retains authority and responsibility for groundwater management within its own jurisdiction")).)

- One of the City's well permitting responsibilities is to assess analytical results from release sites "to ensure the quality of groundwater is protected." (Rule 56.1 St. ¶ 29.)

- Brock Buche, the City's corporate representative, testified that the City's "higher calling is to protect and preserve the groundwater supply." (Rule 56.1 St. ¶ 90.)

The City's responsibility for protecting the groundwater cannot reasonably be in doubt.

The City, however, tries to skirt these statutory and other duties to avoid summary judgment. It makes the remarkable claims that "Fresno is not charged with managing a groundwater basin" and "Fresno does not have the same special statutory responsibility to protect groundwater as the District." Opp. at 11. Not surprisingly, there is no statutory or evidentiary cite for these misleading statements. As the statutes and evidence cited above show, the City is in fact charged with protecting the groundwater. Furthermore, the City's own actions belie its litigation position. Prior to the limitations date the City: (1) prepared and implemented water management plans that address water quality, threats of contamination, and use and

4

management of the groundwater basin; (2) participated in conferences and work groups relating to groundwater contamination; (3) created a procedure that gave the City oversight responsibility for permitting all groundwater monitoring wells in its jurisdiction, including monitoring wells at the Sites; (4) tested for groundwater quality in its jurisdiction and issued an annual report on water quality; (5) received in its capacity as a "water purveyor" a list of MTBE discharge sites in the Fresno area from the California Regional Water Quality Control Board; and (6) received a letter from the California Department of Health Services advising that the City should "immediately monitor sources located in areas vulnerable to point source contamination by MTBE" and obtain "information regarding any leaking underground storage tanks in your area." *See* Mot. at 5-8. And the City purportedly filed this lawsuit to protect the groundwater.

The foregoing leaves no doubt that the City is "a government agency charged with protecting the quality of [] water," and therefore it incurred "appreciable harm when groundwater within its territory was sufficiently contaminated with MTBE that a government agency charged with protecting the quality of that water reasonably should have responded to that contamination." *OCWD*, 676 F. Supp. 2d at 147-48 (emphasis added). The Court has already determined that a reasonable government agency would respond when MTBE is detected in groundwater at a site at or above five ppb. *Id.* at 148. Here, it is undisputed that such detections were publicly reported at the Sites listed in footnote 2 before October 22, 2000. Accordingly, the Court should grant summary judgment as to these Sites.

Additionally, the District's common law claims in *OCWD* were based on its alleged usufructuary rights. *OCWD*, 676 F. Supp. 2d at 146 n.40. Therefore, even if the City's distinctions had any merit, which they do not, summary judgment is still warranted because the City too bases its claims on its usufructuary rights. *See* Mot. at 13.

5

III.   **The City's Alternative Accrual Test Is a Sleight of Hand.**

The Court should reject the City's attempt to overrule or severely limit *OCWD* because, among other reasons, there is absolutely no evidentiary relationship between these Sites and any alleged detection in Monitoring Well 318 or any other City well. The heart of the City's argument is that its injury for purposes of accrual can be totally unrelated to the injury for which it seeks to recover damages. *See* Opp. at 7-8. It claims that the detection in Monitoring Well 318 in November 2001 is the accrual trigger, yet it admits that it is not seeking to recover for this supposed injury. *Id.* at 8. Rather, while investigating the detection in Well 318, the City allegedly "gained knowledge of other MTBE releases and the sources of those releases." *Id.* It is these releases for which the City seeks damages.

The Court in *OCWD* already determined that the detections at the stations trigger accrual, and as explained above, *OCWD* controls here. Further, the City's alternative accrual test has a gaping hole in logic. Critically missing is *any* connection between the detection in Well 318 and any MTBE releases at the Sites. There is none. The City admits as much (Opp. at 8), as it must because there is no expert testimony tying the MTBE allegedly found in Well 318 to any of the Sites. As a result, the City cannot claim injury from these Sites based on a detection in Well 318, nor is it seeking to recover damages for that or any other alleged detection in the City's wells.[5] Rather, the City is seeking to perform further investigation at the Sites based only on the groundwater and soil detections at the Sites; therefore, those detections are the accrual event.

---

[5]   While the City contends that its claims are "for contamination of the deeper aquifer," it cites no discovery responses, 30(b)(6) witness testimony, or expert testimony that indicate it is seeking damages for injury to the aquifer. Opp. at 13. Instead, the City relies only on its Complaint, which is not evidence. Opp. at 13-14. The undisputed evidence shows there has been no MTBE in the City's wells for years, so it cannot be seeking to recover for impact to the deeper aquifer. The City's damages relate only to the alleged MTBE at the Sites.

The cases cited by the City confirm that it is the detection at the Sites that matter. For example, the City quotes *City of Vista v. Robert Thomas Securities, Inc.*: "When damages are an element of a cause of action, the cause of action does not 'accrue' until the damages have been sustained." 84 Cal. App. 4th 882, 886 (2000); Opp. at 5. This is exactly Defendants' point. The damages for which the City seeks to recover were sustained when MTBE was detected at the Sites above five ppb, which occurred prior to October 22, 2000.

The City also asserts that its damages are "mitigation" actions and not the basis for accrual. Opp. at 12-13.[6] This is nonsense. While its expert testified that it would be cheaper theoretically to clean up release sites than to treat MTBE at the wellhead (*id.*), there is no proof here that MTBE from any of the Sites has or will impact a City well. There is simply no proof of anything to mitigate. Instead, the City is really claiming injury solely based on MTBE reportedly in the shallow groundwater underneath the Sites, and the City's claims accrued when MTBE exceed five ppb in that water.

Because the detections at the Sites trigger accrual, and because the City does not dispute that MTBE was detected at the Sites above five ppb and reported publicly before October 22, 2000, the City's claims are barred by the statute of limitations at each of the Sites.[7]

The City also contends that the MTBE reported in shallow monitoring wells at the Sites does not constitute an immediate threat to the deeper water supply aquifer. Opp. at 11 and 14-15. If the Court accepts this argument or the City's claim that it does not suffer injury unless and until there are impacts to the deeper aquifer, then Defendants respectfully request permission to

---

[6]   The City improperly uses Mr. Haberman's expert report to support this argument. Defendants have objected to its use and moved to strike it.

[7]   The City's claim that expert testimony is required to establish appreciable harm is easily dismissed. Opp. at 8. The bright line standard announced in *OCWD* can easily be applied at the Sites with a cursory review of the environmental reports. (Notably, the City did not submit an expert declaration to support its latest accrual test.)

brief a summary judgment motion on lack of injury. There is no evidence that MTBE from these Sites has ever or will ever impact the deeper aquifer. Further, the City's testing data show that there has not been any MTBE in the City's wells for more than two years. If detections in the shallow groundwater at the Sites do not constitute injury, then the City has no evidence of injury at any of the Sites. Defendants are entitled to summary judgment on that basis.

**III.   The City's Claims Are Either Time-Barred Or Non-Existent at Sites that Have Never Had an MTBE Groundwater Detection.**

At the remaining three Sites, which only have soil detections, either: (a) those detections constitute evidence of injury which occurred outside limitations, thereby entitling Defendants to summary judgment on the City's claims; or (b) they are not sufficient evidence of injury to sustain the City's claims, and the Court should dismiss all claims at these Sites.

The City ignored the material difference between *OCWD* and this case with respect to Sites with only soil detections. Discovery was ongoing when the motion was decided in *OCWD*, but it is complete here. The District could have, and later did, designate a modeling expert that purports to tie MTBE in the drinking water wells to particular stations. As a result, the Court found that the detections in production wells *associated* with the soil detection sites could be the accrual event because they may have indicated that MTBE from the soil had impacted groundwater. The Court therefore found a triable issue of fact as to whether the District should have realized its water was adversely affected before the production well detections. *OCWD*, 676 F. Supp. 2d at 150 n.59.

The City relies on this finding and the Court's statement that "not every release of MTBE harms groundwater" to argue that the soil detections here did not alert it that MTBE at these three Sites may have affected or impacted groundwater. Opp. at 22. The City, however, completely fails to identify what event after the limitations cutoff did alert it that MTBE from

8

these three Sites had in fact impacted groundwater.  In *OCWD*, that event was the detection of

MTBE in a well *associated* with the soil detection only sites.  Here, there is no evidence tying

the MTBE in Well 318 (or any other City well) with the soil detection only Sites.  The City

failed to designate a modeling expert, so there will be no opinion testimony or other evidence

that MTBE from a particular Site has impacted or will impact any of the City's wells.

Consequently, the City cannot claim that a detection in Monitoring Well 318 put it on notice that

MTBE from these three Sites has impacted groundwater.  And importantly, there will be no other

proof of whether MTBE at these stations ever reached groundwater.

      The only possible accrual trigger must therefore be the soil detections, all of which were

publicly reported outside the limitations period.  If they are sufficient for a jury to conclude that

the City is more likely than not injured—*i.e.*, that MTBE reached groundwater at an appreciable

level to create harm—then they are sufficient for accrual.  *See* Mot. at 18.  Alternatively, if these

soil detections are insufficient to establish injury for purposes of accrual, then the City either has

no viable claim or there is not sufficient injury or harm to prevent summary judgment.[8]  *See id.*

The City's citation to Richard Haberman's general statement regarding the supposed cost

effectiveness of mitigation measures to address a plume before it spreads to water supply wells is

irrelevant, as this opinion has nothing to do with any of the Sites or soil detections generally.

Regardless of the reasoning, the Sites listed in footnote 3 should not be part of this case.

## IV.  The Court Has Already Rejected the City's Claim that CERCLA Applies.

      The City wastes seven and a half pages regurgitating cases that generally discuss the

statute of limitations and discovery rule.  Opp. at 2-9.  The Court already examined these cases

---

[8]  "The mere release of MTBE-blended gasoline does not cause [ ] appreciable harm.
Rather, it is only when a gasoline plume travels from the release point through the soil and [ ]
enters the aquifer that appreciable harm could occur.  Thus, there is no appreciable harm until
MTBE is *present* in the groundwater."  *In re MTBE*, 475 F. Supp. 2d 286, 293 (S.D.N.Y. 2006).

when the District cited them in *OCWD*, and the Court held that a plaintiff is "appreciably harmed as a matter of law when MTBE was detected in monitoring wells at or above the California Maximum Contaminant Level," which is five ppb. *OCWD*, 676 F. Supp. 2d at 141-42. The Court has already determined the test for accrual in this type of case, and there is no reason to revisit the issue now.

The City nevertheless once again argues that CERCLA extends the California discovery rule, a claim this Court has already dismissed. Opp. at 6-8. In *OCWD*, the District requested rehearing on the Court's final statute of limitations opinion based solely on this issue. The Court rejected the argument then, and it should reject the argument again now.[9] *In re MTBE Prods. Liab. Litig.*, 2009 WL 4496736, at *2 (S.D.N.Y. Dec. 2, 2009). The Court held that *O'Connor v. Boeing North American*—the case on which the City almost exclusively relies—is not controlling and does not hold that CERCLA preempts state law in cases like this. *Id.* The Court went on to hold that in *OCWD* "the CERCLA standard outlined by the Ninth Circuit in *O'Connor* would lead to the identical result as would using the California state standard." *Id.* The Court noted that while the court in *O'Connor* stated that a reasonable jury could determine that "[a]n average plaintiff alleging a connection between latent disease and exposure to hazardous substances does not have the means to conduct the type of comprehensive epidemiological study necessary to bridge the causation gap," the District had made no showing that it lacked the sophistication to review publicly available remediation files to determine its injury. *Id.* Nor has the City made this showing here. To the contrary, the undisputed evidence shows that the City could have easily interpreted the publicly available files. *O'Connor* is therefore inapplicable here too, and CERCLA does not extend the discovery rule or otherwise

---

[9]  Notably, the City failed to cite to the Court's opinion that already rejected this argument.

preempt the California statute of limitations, as the Court has already held. *Id.* Furthermore,

CERCLA is inapplicable because it does not apply to releases of gasoline containing MTBE, and

the City is asserting claims based only on gasoline releases. *See In re MTBE Prods. Liab. Litig.*,

2008 WL 2676278, at *3-4 (S.D.N.Y. July 8, 2008) (discussing CERCLA exclusion).

## V.     The City Mischaracterizes Defendants' Arguments on Accrual.

To be clear, Defendants contend that the City's claims accrued at each Site when there

was a groundwater detection at the Site in excess of five ppb or, for a Site without any

groundwater detections, when MTBE was detected in the soil.  The Motion set forth on a site-by-

site basis when the claims accrued at each Site. *See, e.g.,* Mot. at 10 (listing the first detections

on a site-by-site basis).  Thus, the City is wrong when it claims that Defendants are arguing that

"the statute of limitations accrued when MTBE contamination was detected at levels in excess of

5 ppb in groundwater monitoring wells anywhere within the City of Fresno." Opp. at 15, 21.

Similarly, the City misstates that Defendants contend that the City's claims accrued when the

conduct occurred that gives rise to the asserted causes of action.  Opp. at 17-21.  Defendants

have never argued that accrual should be based on conduct, and the City failed to cite where

Defendants urged this standard.

The City cites *Aas v. Superior Court,* 24 Cal. 4th 627 (2000), when presenting its lengthy

straw man argument. Opp. at 19-20.  *Aas*, however, supports Defendants' position that the City's

claims accrued when its property interest was first injured, *i.e.*, when environmental impact of

the groundwater at the Sites first occurred. *See id.* at 646; *County of Santa Clara v. Atlantic*

*Richfield Co.*, 137 Cal. App. 4th 292, 320 (2006) ("*Aas* rejected the homeowners' argument that

property damage should not be required[.]"); *see also OCWD*, 676 F. Supp. 2d at 146 ("OCWD

was appreciably harmed when the property in which it had an interest was appreciably

harmed.").  As explained in the Motion and above, the property at issue here is the groundwater

11

beneath the site. Mot. at 16. It is the groundwater at the Sites that the City seeks to investigate and potentially remediate. All of its alleged damages are based on the historical groundwater detections at the Sites, not on the historical trace detections in the City's wells.[10] When groundwater at the Sites was injured, the City's claims accrued. *See Aas*, 24 Cal. 4th at 646.

The City again asserts that Defendants cannot argue that the City's claims are time-barred while also claiming that Defendants have not injured the City. Opp. at 16. But it is the City that is asserting a claim in this action. Defendants—without admitting to the validity of the claim— are entitled to argue that even if the claim were otherwise valid, it is barred by limitations. The defendants in *OCWD* did not concede injury, yet made the same statute of limitations arguments, as have countless other defendants that have obtained summary judgment on limitations.

## VI.   Summary Judgment on the City's Entire Nuisance Claim Is Appropriate.

As predicted, the City claims that summary judgment is inappropriate on its entire nuisance claim because it has asserted a "continuing nuisance." The Motion explained that the City cannot pursue a continuing nuisance claim because it lacks evidence that the environmental impact at each Site is reasonably abatable. Mot. at 19-20. In response, the City fails to bring forth site-specific evidence and instead relies only on (1) its expert's generic statement about the average reimbursement cost at gasoline remediation sites in the California UST Clean-up Fund, and (2) Defendants' alleged admission that MTBE generally can be reasonably abated. Opp. at 23-25. This alleged support fails to satisfy the City's burden.

Recently the Southern District of California granted summary judgment in a markedly similar case because the plaintiff lacked the same sort of expert evidence the City lacks here.

---

[10]   The City states that "[p]rior to the limitations period, Fresno was not required to incur any costs to treat MTBE and nothing interfered with Fresno's use of its drinking water wells." Opp. at 16. The same is true today—it has not spent a dime treating drinking water, and its drinking water wells have never been interfered with as a result of MTBE. (Rule 56.1 St. ¶ 6.)

*California v. Kinder Morgan Energy Partners, L.P.*, 2013 WL 314825 (S.D. Cal. Jan. 25, 2013).

In *Kinder Morgan*, the City of San Diego claimed that releases from Kinder Morgan's gasoline

terminal had contaminated adjacent property owned by San Diego. *Id.* at *1. In order to avoid

limitations, San Diego claimed the nuisance was continuing. *See id.* at *21. The court laid out

three tests California courts use to assess whether a nuisance is continuing:

(1)     Whether the offens[iv]e activity is currently continuing, which indicates that the
        nuisance is continuing,

(2)     Whether the impact of the condition will vary over time, indicating a continuing
        nuisance, or

(3)     Whether the nuisance can be abated at any time, in a reasonable manner and for
        reasonable cost, and is feasible by comparison of the benefits and detriments to be
        gained by abatement.

*Id.* at *23-24; Opp. at 25 (noting similar three factors).

The Court held that to satisfy the first test—whether the offensive action was

continuing—San Diego was required to present evidence that contamination was migrating off of

the Kinder Morgan property. *Kinder Morgan*, 2013 WL 314825 at *24. The Court found that

"because [San Diego] has presented no expert evidence of continued migration of contaminants,

[San Diego] lacks the ability to establish that its trespass and nuisance claims are continuing

under the first test." *Id.* at *24-26. Here, the City also failed to present expert evidence (or any

evidence for that matter) indicating that MTBE continues to migrate off any Site. In fact, the

City's expert testified that more information is needed at each site to determine the extent and

movement of MTBE in the subsurface.[11] (*See* Rule 56.1 St. ¶ 7.) And if the nuisance is the

_____

[11]   The City's vague claim that MTBE generally migrates through groundwater cannot be
enough to defeat summary judgment on this point. There is no expert evidence specific to a
single site, which is what is required. Nor is the City's claim that "Mr. Norman's testimony
supports the first [test]" enough. Opp. at 25. It fails to identify testimony suggesting that MTBE
is still migrating off these properties; indeed, Mr. Norman conceded he does not have enough
information to make such a statement. (*See* Rule 56.1 St. ¶ 7.)

13

impact to the City's drinking water, there have been no MTBE detections for more than two years. The City has therefore failed to satisfy the first test.

To meet the second test, the Court held that San Diego "must proffer expert evidence that the condition Kinder Morgan created varied over time based on the complexity of the subject matter. Because [San Diego] has not presented any such expert evidence, [San Diego] cannot satisfy this test at trial." *Kinder Morgan*, 2013 WL 314825 at \*27. Here too, the City lacks such expert testimony. While it claims that both "Fresno's and the defense experts agree on the second [test], that the impact of MTBE releases on Fresno varies over time" (Opp. at 25), it fails to cite any supporting evidence. Nor does it cite to any evidence of what will happen to the levels of MTBE in the future. The City has therefore failed to meet this test as well.

Finally, the court found that San Diego has not met its burden on reasonable abatability. *Kinder Morgan*, 2013 WL 314825 at \*27. It lacked "*any* evidence of the estimated final costs of abatement" because it had not presented any competent expert testimony regarding how much it would cost to abate this specific property. *Id.* (emphasis in original). The court went on to state:

> Further, [San Diego's] expert, John Simon, has opined that the true extent of the subsurface contamination is uncertain and that the time required to remediate the site is likewise uncertain. If the extent and time required to remediate the property are uncertain, then the cost of abatement is necessarily uncertain as a result. Without evidence of costs of abatement, [San Diego] cannot satisfy its burden to show that the nuisance can be abated at *reasonable* costs. Moreover, if the extent of contamination is uncertain, [San Diego] cannot prove that it can be abated by *reasonable means*. . . . [San Diego] bears the burden to establish that the condition under the Property is "reasonably abatable."

*Id.* (internal citation omitted; emphasis in original).

Because the City lacks similar expert evidence, it fails the third test as well. The City's expert has nearly the same testimony as San Diego's, namely, that he does not know the extent of environmental impact, and cannot know it, until he does further investigation. (*See* Rule 56.1 St. ¶ 7.) Without knowing the cost to cleanup each Site, the City cannot meet the third test.

While the City claims that its expert opined on reasonable abatability, he only stated what the average reimbursement costs were for UST Clean-Up Fund sites. Opp. at 24. These costs have nothing to do with the Sites at issue and are not specific to MTBE. Again, with respect to the specific Sites, the City's expert testified that he lacked sufficient information to recommend remediation at any of the Sites, and therefore he could not state whether future remediation at any of the sites will be reasonable or what it will cost. His testimony is insufficient to show reasonable abatability. *Kinder Morgan,* 2013 WL 314825 at *27-29.

Footnote 19 in the Motion does not change this analysis. This statement is not an admission that MTBE can be reasonably abated at a particular Site, and it does not absolve the City from meeting its burden. The footnote simply clarified that Defendants believe in some instances MTBE can be reasonably abated, but that the City has no evidence that the MTBE at these Sites can be reasonably abated. "Reasonably abated" must be viewed in context. Here, most of the Sites have received regulatory closure. (Rule 56.1 St. ¶¶ 41, 43, 50, 54, 59, 65, 71, 76, 78.) Thus, the regulatory agencies have already concluded no more reasonable abatement is needed. Exerting any additional effort is likely unreasonable, especially when the City cannot tie any Site to a past or predicted future detection in a drinking water well.

Because the City has failed to satisfy any, let alone all, of the three tests to show continuing nuisance, the alleged nuisance here must be considered permanent; therefore, summary judgment on the entire nuisance claim is proper.

Dated:  March 22, 2013.

Respectfully submitted,

KING & SPALDING LLP[12]


_(signature)_
_____
Robert E. Meadows
Jeremiah J. Anderson
1100 Louisiana, Suite 4000
Houston, Texas 77002
Tel: (713) 751-3200
Fax: (713) 751-3290

Charles C. Correll Jr.
101 Second Street, Suite 2300
San Francisco, California  94105
Tel: (415) 318-1200
Fax: (415) 318-1300

*Attorneys for Defendants*
*Chevron U.S.A. Inc. and Union Oil*
*Company of California*

---

[12]  The following page contains a list of Defendants who have joined in filing Defendants'
Reply in Support of Motion for Summary Judgment based on the Statute of Limitations.

<u>DEFENDANTS JOINING MOTION</u>

CHEVRON U.S.A. INC.

UNION OIL COMPANY OF CALIFORNIA

SHELL OIL COMPANY

TEXACO REFINING AND MARKETING INC.

EQUILON ENTERPRISES LLC

EQUIVA SERVICES LLC

CITGO PETROLEUM CORPORATION

KERN OIL & REFINING CO.

NELLA OIL COMPANY

LYONDELL CHEMICAL COMPANY, formerly known as "ARCO CHEMICAL COMPANY"

COASTAL CHEM, INC.

TESORO CORPORATION (F/K/A TESORO PETROLEUM CORPORATION)

TESORO REFINING and MARKETING COMPANY (ERRONEOUSLY NAMED AS
TESORO REFINING AND MARKETING COMPANY, INC.)

ULTRAMAR INC.

VALERO MARKETING AND SUPPLY COMPANY

VALERO REFINING COMPANY-CALIFORNIA

## Certificate of Service

I hereby certify that on the 22nd day of March 2013, a true, correct, and exact copy of the foregoing document was served on all counsel via LexisNexis File & Serve.

Jeremiah J. Anderson