UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE METHYL TERTIARY BUTYL ETHER PRODUCTS LIABILITY LITIGATION | Master File No. 1:00-1898 MDL 1358 (SAS) |
| This Document Relates To: | The Honorable Shira A. Scheindlin |
| *City of Fresno v. Chevron U.S.A. Inc., et al.* Case No. 04 Civ. 04973 (SAS) | |

## DEFENDANTS' REPLY TO PLAINTIFF CITY OF FRESNO'S LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS SUBMITTED IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BASED ON THE STATUTE OF LIMITATIONS

On February 1, 2013, Defendants filed a Motion for Summary Judgment Based on the Statute of Limitations, or Alternatively, for Lack of Injury ("Motion") and a Local Rule 56.1 Statement of Material Facts Submitted in Support of Defendants' Motion ("Defendants' Statement of Facts").

On March 1, 2013, Plaintiff City of Fresno ("Plaintiff" or the "City") filed its Opposition to Defendants' Motion ("Opposition") and a Local Rule 56.1 Statement of Material Facts Submitted in Opposition to Defendants' Motion for Summary Judgment Based on the Statute of Limitations, or Alternatively, for Lack of Injury ("Plaintiff's Response").

Defendants hereby respectfully submit their Reply to Plaintiff's Response, Defendants' Response to the "Additional Material Facts" submitted by Plaintiff in opposition to Defendants' Motion for Summary Judgment, and Defendants' Additional Material Facts.

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| 1. The City of Fresno ("City") filed this lawsuit on October 22, 2003. (Declaration of Jeremiah J. Anderson in Supp. of Defendants' Motion for Summary Judgment Based on the Statute of Limitations ("Anderson Decl."), filed concurrently herewith, Ex. 15, Fresno's Original Compl., filed Oct. 22, 2003.) | Admit. | |
| 2. The City filed a First Amended Complaint on October 28, 2004. (Fresno First Am. Compl., Oct. 28, 2004 [Docket No. 4 (Case No. 04-CV-4973-SAS)] ("FAC").) | Deny that the First Amended Complaint was filed on October 28, 2004. Admit that Fresno filed a First Amended Complaint on November 18, 2004. (Eickmeyer Decl., Exh. 7 [First Amended Complaint].) | The City does not dispute that Defendants submitted a true and correct copy of the City's First Amended Complaint in support of Defendants' motion for summary judgment. The signature page on the First Amended Complaint is dated October 28, 2004. |
| 3. The City seeks to recover damages "to remove MTBE and TBA pollution from the public drinking water supplies, to restore the reliability of Fresno's water system and drinking water supply, to abate MTBE and TBA plumes." (FAC ¶ 3.) | Admit that the quoted passage from the First Amended Complaint includes some of the damages that plaintiff City of Fresno (Fresno) seeks to recover in this action. Deny that these are the only remedies that Fresno seeks to recover in this action; for example, Fresno requests nuisance abatement, as described in the Prayer and elsewhere in the First Amended Complaint. (Eickmeyer Decl., Exh. 7 [First Amended Complaint], at 24, ¶ 109, at 25, ¶ 3.) | The City admits the facts in this Paragraph, and the further characterization and discussion in the City's Response does not qualify or limit this admission in any respect relevant to Defendants' Motion for Summary Judgment (the "Motion"). |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| 4.      The City seeks investigation costs as future damages for MTBE impact at former release sites, not wellhead treatment costs. The City designated David Norman as its remediation and damages testifying expert. (Anderson Decl., ¶ 4; *see also* Anderson Decl., Ex. 8, D. Norman Expert Report, at 3, "Summary of Opinions," 4–5, "Remediation Alternatives for MTBE" (Dec. 5, 2011) (stating that site characterization needs to be completed before remedial alternatives are selected); FAC ¶¶ 69, 91.) The City did not designate a modeling expert. (Anderson Decl., ¶ 4.) | Admit that Fresno seeks investigation costs at release sites. Deny that these are the only remedies that Fresno seeks to recover in this action; for example, Fresno requests nuisance abatement, as described in the Prayer and elsewhere in the First Amended Complaint. (Eickmeyer Decl., Exh. 7 [First Amended Complaint], at 24, ¶ 109, at 25, ¶ 3.) Admit that Fresno designated David Norman as its remediation and damages testifying expert. Admit that Fresno did not designate an expert to construct and run models in this action, however, Fresno designated expert Dr. Graham Fogg to discuss the fate and transport of MTBE in groundwater and his expert report discusses models constructed and run by others. (Eickmeyer Decl., ¶ 9.) | The City admits the facts in this Paragraph, and the further characterization and discussion in the City's Response does not qualify or limit this admission in any respect relevant to Defendants' motion. In addition, Dr. Graham Fogg's expert report and deposition testimony contain general opinions relating to the fate and transport of MTBE in groundwater; however, Dr. Fogg has not created a model predicting the fate and transport of the MTBE allegedly released from the Sites that are the subject of Defendants' Motion. Nor did Dr. Fogg discuss any "models constructed and run by others" that concern the Sites or even the City of Fresno. |
| 5.      In *Orange County Water Dist. v. Unocal Corp.*, the Orange County Water District ("OCWD") seeks investigation costs as future damages for MTBE impact at all but three of the thirty-four focus sites (i.e., costs to determine if remediation is needed). (Anderson Decl., ¶ 3.) OCWD designated Anthony Brown and Robert Stollar as its remediation and damages testifying experts, and they produced reports and have been | Admit but irrelevant that in its action, the Orange County Water District sought investigation costs at all but 3 of the focus sites; the District designated Anthony Brown and Robert Stollar as its remediation and damages testifying experts, they produced reports and were deposed; and the District designated Dr. Stephen Wheatcraft as an expert to | The City admits the facts in this Paragraph. And while the City claims this fact is "irrelevant," the status of the OCWD case at the time of the Court's prior ruling on the statute of limitations and the similarities and differences between the two cases are highly relevant to the application of the Court's prior opinion here. The City's further |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| deposed. (Anderson Decl., ¶ 3.) OCWD designated Dr. Stephen Wheatcraft as its modeling expert. (*Id.*) | construct and run models. Deny that the only damages or remedies sought by the District were investigation costs at all but 3 of the focus sites. | characterization and discussion in its Response does not qualify or limit this admission in any respect relevant to Defendants' motion. |
| 6.      The City and its experts have not identified any past or future costs associated with removing MTBE and TBA from the City's drinking water wells, nor has the City incurred such costs. (Anderson Decl., Ex. 10, Little Dep. 140:5–141:1, Mar. 31, 2011; Anderson Decl., Ex. 11, Buche Dep. 343:25–344:24, 480:2–482:1, Apr. 1, 2011; *see also* Anderson Decl., Ex. 8, D. Norman Expert Report, at 3, "Summary of Opinions," 4–5, "Remediation Alternatives for MTBE" (Dec. 5, 2011).) | Admit that Fresno has not to date incurred costs for removing MTBE or TBA from Fresno's drinking water supply wells. | All facts in this Paragraph should be deemed admitted because the City admits some of the facts and has not specifically denied any of the facts in this Paragraph. *See* S.D.N.Y Local Rule 56.1(c) |
| 7.      The City's remediation expert, David Norman, stated that he lacked sufficient information to recommend remediation at any of the sites, and therefore cannot state whether future remediation at any of the sites will be reasonable. (Anderson Decl., Ex. 7, Norman Dep. 29:16–30:1, 33:4–34:25, Apr. 18, 2012.) Mr. Norman opined that it will cost between $23,000 and $135,000 to conduct an initial round of assessment at each of the Sites simply to determine whether any remediation is even needed at them. (*Id.* at Ex. 33) He also testified that until his initial assessment is performed, it is not | Deny.  Mr. Norman recommended site assessment for the sites at issue, which is part of the remediation for the sites. Mr. Norman testified that of the more than 7,000 open sites in the California UST Clean-Up Fund, clean-up costs at 11% of the sites have been reimbursed for over $800,000, averaging $1.1 million. (Eickmeyer Decl., Exh. 6 (David Norman Depo. [Apr. 18, 2012], at 102:11-19.) Conversely, 89% of the sites have been reimbursed $800,000 or less. (*Id.* at | It is undisputed that Mr. Norman opined that an initial site assessment is necessary at each of the Sites in order for Mr. Norman to provide an opinion regarding what, if any, additional assessment or active remedial work may be needed at the Sites. The City's denial rests on a distinction that is not relevant to Defendants' motion and is not followed by a citation to evidence. *See* Local Rule 56.1(d) (each statement controverting any statement of material fact, must be followed by citation |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| possible for him to determine abatement costs or even say for certain that abatement is possible or needed. (*Id.* at 100:6–101:6.) Mr. Norman also acknowledges that he has not done a site-specific fate and transport analysis and cannot offer an opinion regarding whether any specific site has impacted or will impact any specific well. (*Id.* at 61:8–64:2.) | 102:20-24.) | to evidence which would be admissible).<br><br>Mr. Norman's general opinion regarding the average costs to "clean-up" sites in the UST Clean-Up Fund has nothing to do with the Sites at issue and is not specific to releases of gasoline with MTBE. It has no bearing on what it will cost to assess or remediate the specific Sites at issue. |
| 8.     The City has not had a detection of MTBE in its drinking water wells since February 2011. (Anderson Decl., ¶ 7; Anderson Decl., Ex. 15, Compilation of City of Fresno MTBE Well Testing Results.) Its historical detections have been at trace levels, the vast majority below 0.5 ppb. (*Id.*) It has been more than three years since MTBE was detected in any of the City's supply wells at or above 0.5 ppb. (*Id.*) Over the last ten years, the single highest detection of MTBE in any of the City's wells was 1.2 ppb on or around October 23, 2008. (*Id.*) | Defendants provide no definition of what defendants mean by "trace levels" and on that basis deny that historical detections have been at "trace levels." (See Defendants' Jeremiah Anderson Decl., Exh. 15 [MTBE testing results].) Admit the remainder. | The City does not deny that there has not been a detection of MTBE at any level in its drinking water wells since February 2011, nor does it deny any other facts in this Paragraph other than to dispute the historical levels have been at "trace levels;" therefore, all other facts asserted in this Paragraph are admitted. |
| 9.     The City has also never reduced pumping for any of its wells due to MTBE or TBA. (Anderson Decl., Ex. 10, Little Dep. 212:6–12, Jan. 18, 2011.) | Admit. | |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| 10.    The City alleges that it is responsible for "purveying clean, safe drinking water to approximately 450,000 people in the County of Fresno, California." (FAC ¶ 1.) | Admit. | |
| 11.    The City owns and operates a water system which serves the public, and the "drinking water sources for the Fresno water system include more than two hundred and fifty (250) wells owned and operated by the [City]." (FAC ¶ 4.) | Admit. | |
| 12.    By the late 1990s, the City was aware that releases of gasoline containing MTBE from underground storage tanks posed a threat to the City's groundwater at that time. (Anderson Decl., Ex. 10, Little Dep. 50:17–51:13, 219:24–221:10, 439:7–442:14, Jan. 18–19, 2011; Anderson Decl., Ex. 12, McIntyre Dep. 38:15–39:17, 95:7–96:14, Mar. 16, 2011.) | Deny. The cited testimony establishes that Fresno staff was generally aware of MTBE by the late 1990s, not that "releases of gasoline containing MTBE from underground storage tanks posed a threat to the City's groundwater at that time." Fresno had no MTBE detections in its drinking water supply wells at that time, and Fresno first detected MTBE in a monitoring well (Monitoring Well 318) on November 27, 2001. (Defendants' Jeremiah Anderson Decl., Exh. 10 [Robert Little Depo. (Jan. 19, 2011)], at 443:16-24; Eickmeyer Decl., Exh. 5 [Bob Little Depo. (Mar. 31, 2011)], at 160:22-161:6; Defendants' Jeremiah Anderson Decl., Exh. 15 [MTBE testing results].) | The City's denial contradicts the deposition testimony of City employees who were responsible for protecting the City's groundwater during the relevant time period. (Anderson Decl., Ex. 12, McIntyre Dep. 39-40, Mar. 16, 2011; Anderson Decl., Ex. 10, Little Dep. 439-41, Jan. 18-19, 2011.) Mr. McIntyre and Mr. Little both testified that they first became aware that releases of gasoline containing MTBE from underground storage tanks posed a threat to the City's groundwater in the 1990s, and neither of them testified that they first became aware of the alleged threat when MTBE was detected in Well 318. *Id.* |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| 13.     On February 6, 1996, the California Department of Health Services issued a Methyl Tertiary Butyl Ether (MTBE) — Alert and Monitoring Advisory. (Anderson Decl., Ex. 15, Memorandum from David P. Spath, Cal. Dep't of Health Servs., Methyl Tertiary Butyl Ether (MTBE) — Alert and Monitoring Advisory (Feb. 6, 1996).) The advisory warned that "MTBE is highly soluble in water" and that "MTBE has been found in shallow groundwater throughout the U.S. . . . and [s]ome regional water quality control boards have found MTBE in shallow groundwater in California." (*Id.* at 1.) Further, the department stated that they are seeking to adopt emergency regulations in 1996 which will require public water systems to monitor for MTBE and "alerting you now to enable systems conducting VOC monitoring during 1996 to include MTBE in the analysis." (*Id.*) | Deny.  Defendants do not allege or establish the source of the document or that Fresno received the document. | The MTBE alert and monitoring advisory cited by Defendants was produced on the State of California, Department of Health Services letterhead and is addressed to "Public Water System[s] Water Quality Manager[s]." The City admits in Paragraph 19 that it is a Public Water System Operator. The City does not deny the contents of this memorandum.  Nor does it deny that it received this document or that the document was publicly available at all relevant times and could have been obtained by the City through the investigation of sources open to the City. |
| 14.     On April 15, 1997, the California Department of Health Services sent Mr. McIntyre, in his capacity as the City's Water Systems Manager, an advisory letter which informed the City that "the potential for soil and groundwater contamination by MTBE has increased," the problem "appears to be more wide-spread than previously thought," "MTBE moves faster through soil than other products in gasoline," and "[w]ells close to any gasoline station are also considered vulnerable even if | Admit. | |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| the storage tanks at the station have not been identified as failing." (Anderson Decl., Ex. 14, Letter from Carl L. Carlucci, Cal. Dep't of Health Servs., to Martin McIntyre, Water Sys. Manager, City of Fresno (Apr. 15, 1997) (FRESNO-MTBE-006075–6076).) | | |
| 15.    The City began testing for MTBE by 1997.  (Anderson Decl., Ex. 14, Water Div., City of Fresno Dep't of Pub. Utils., Water Quality Annual Report 1997, at 5, FRESNO-MTBE-006107 (1997) (FRESNO-MTBE-006103–6108); Anderson Decl., Ex. 14, Letter from Carl L. Carlucci, Cal. Dep't of Health Servs., to Martin McIntyre, Water Sys. Manager, City of Fresno (Apr. 15, 1997) (FRESNO-MTBE-006075–6076);  *see, e.g.*, Anderson Decl., Ex. 14, City of Fresno, Water Quality Analysis Report 1, FRESNO-MTBE-006526 (July 6, 1998) (FRESNO-MTBE-006526–6548).) | Admit, and that the cited sampling results for MTBE in Fresno's drinking water supply wells show that MTBE was not detected. | |
| 16.    As early as 1998, Mr. McIntyre, in his capacity as Water System Manager, began participating in the Association of California Water Agencies' MTBE Work Group.  (Anderson Decl., Ex. 13, Memorandum from Krista Clark, Ass'n of Cal. Water Agencies, to MTBE Work Group, at FRESNO-MTBE-007866 (May 12, 1998) (FRESNO-MTBE-007866–7869); Anderson Decl., Ex. 12, McIntyre Dep. 78:9–20 & Ex. 2, Curriculum Vitae of Martin | Deny that defendants' cited evidence establishes, "As early as 1998, Mr. McIntyre, in his capacity as Water System Manager, began participating in the Association of California Water Agencies' MTBE Work Group."  Admit that Martin McIntyre was Fresno's Water System Manager from 1994 to 2000. | The City's response does not specifically controvert that in 1998, Mr. McIntyre, in his capacity as Water Systems Manager, began participating in the Association of California Water Agencies' MTBE Work Group. Therefore, the facts in this Paragraph should be deemed admitted.  *See* Local Rule 56.1(c).  The City apparently disagrees with the term "participating," although the |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| McIntyre.) | | undisputed evidence to which Defendants cited clearly establishes that Mr. McIntyre was participating in the MTBE Work Group as early as 1998. |
| 17.     The City participated in the June 3–4, 1998 Southwest Groundwater Conference held in Anaheim, California, which included extensive information regarding the potential threat of MTBE to groundwater. (Anderson Decl., Ex. 13, Pl.'s Resp. to Interrog. No. 78 from Chevron Defs.' Second Set of Interrogs.; Anderson Decl., Ex. 13, Nat'l Ground Water Ass'n, The Southwest Focused Ground Water Conference: Discussing the Issue of MTBE and Perchlorate in Ground Water i-iv, FRESNO-MTBE-009308–9311 (June 3–4, 1998) (FRESNO-MTBE-009307–9422).) | Deny that "The City participated in the June 3-4, 1998 Southwest Groundwater Conference." Admit that at least one Fresno staff member attended the conference. | The City's denial contradicts its sworn interrogatory response. (Anderson Decl., Ex. 13, Pl.'s Resp. to Interrog. No. 78 from Chevron Defs.' Second Set of Interrogs.) In addition, the City admits that a "Fresno staff member attended the conference," so there is no basis for the City to assert that it did not participate in the conference. |
| 18.     On June 11, 1998, the Lawrence Livermore National Laboratory submitted a report to the California State Water Resources Control Board entitled "An Evaluation of MTBE Impacts to California Groundwater Resources," a copy of which was produced from the City's files and which contains information regarding the alleged threat that MTBE posed to groundwater resources in the State of California. (Anderson Decl., Ex. 13, Anne M. Happel et al., Lawrence Livermore Nat'l Lab., An Evaluation of MTBE Impacts to California Groundwater | Admit that the Lawrence Livermore National Laboratory submitted a report to the State Water Resources Control Board and that a copy of the report was produced from Fresno's files. | The City's response does not specifically controvert any of the facts in this Paragraph. Therefore, the facts in this Paragraph should be deemed admitted. See Local Rule 56.1(c). |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| Resources iv–v, FRESNO-MTBE-011410–11411 (June 11, 1998) (FRESNO-MTBE-011404–11477).) | | |
| 19.    In 1998, a California statute required the California Regional Water Quality Control Board ("Regional Board" or "RWQCB") to supply MTBE UST listings to "all public water systems operators," including the City. (CAL. WATER CODE § 13272.1.(1998).) | Admit that the statute requires the Regional Board to publish a list of MTBE dischargers "to all public water system operators within the region of the regional board." Admit that Fresno is a public water system operator. | The City's response does not specifically controvert any of the facts in this Paragraph. Therefore, the facts in this Paragraph should be deemed admitted. See Local Rule 56.1(c). |
| 20.    By no later than October 1998, the Regional Board began sending quarterly reports to water providers across the state, including the City, identifying the LUST sites in their jurisdiction where MTBE has been released into the environment, and whether the release site was classified as "GW" (groundwater) or "SOIL" (soil only) site. (Anderson Decl., Ex. 6, Memorandum from Gordon L. Boggs, Program Manager, Underground Tanks, RWQCB, to Water Purveyors, Cent. Valley Region 3-4, FRESNO-MTBE-007875 (Oct. 16, 1998) (FRESNO-MTBE-007872–7885); see CAL. WATER CODE § 13272.1.) | Admit that the Regional Board sent reports for the Central Valley Region to Fresno. Deny that all sites listed were LUST sites. | |
| 21.    The Regional Board sent the City several quarterly reports before October 22, 2000 that specifically identified several of the Sites at issue in this Motion (e.g., 1160 Fresno, 3996 N. Parkway, 1605 N. Cedar, and 3645 E. Olive), and indicated that the MTBE released at | Admit that one or more of the Regional Board reports before October 22, 2000, identified one or more of four of the sites at issue in defendants' Motion. Deny that all four sites were identified in all of the | The City does not deny that the Regional Board identified the four Sites listed in Paragraph 21 in quarterly reports sent to the City before October 22, 2000, and therefore this fact should be deemed admitted. |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| these sites had impacted groundwater at levels above five parts per billion (ppb). (*See, e.g.*, Anderson Decl., Ex. 6, Memorandum from Gordon L. Boggs, Program Manager, Underground Tanks, RWQCB, to Water Purveyors, Cent. Valley Region 3–4, FRESNO-MTBE-07717 (Apr. 15, 1999) (FRESNO-MTBE-007714–7728); Anderson Decl., Ex. 6, Memorandum from Gordon L. Boggs, Program Manager, Underground Tanks, RWQCB, to Water Purveyors, Cent. Valley Region 3–4, FRESNO-MTBE-07669 (Oct. 15, 1999) (FRESNO-MTBE-007666–7680); Anderson Decl., Ex. 6, Memorandum from Gordon L. Boggs, Program Manager, Underground Tanks, RWQCB, to Water Purveyors, Cent. Valley Region 5–6, FRESNO-MTBE-008187 (July 14, 2000) (FRESNO-MTBE-008183–8204).) | Regional Board reports, and deny that all of the sites at issue in defendants' Motion were identified in the Regional Board reports. | |
| 22.      Six of the Sites at issue in this Motion had monitoring wells before October 2000 (1160 Fresno Street, 4142 East Church, 3996 N. Parkway Drive, 1605 N. Cedar Avenue, 3645 E. Olive Avenue, and 1418 E. Shaw). (*See* Anderson Decl., Ex. 1, Letter from RWQCB, to R. J. Cochran, Chevron Prods. Co. 2, FCDEH-FRESNO-044291 (Oct. 12, 1999) (FCDEH-FRESNO-044290–44295) (Chevron #9-4374, 1160 Fresno Street); Anderson Decl., Ex. 1, RM Assocs., Quarterly Ground Water Monitoring Report, 4142 East Church Street tbl. 3, | Admit that six of the sites at issue in defendants' Motion had monitoring wells before October 2000. Deny the implication that Fresno was provided with results of any sampling from those monitoring wells. | The City admits the facts in this Paragraph.  While the City denies the "implication" that it was provided results from the sampling at the monitoring wells, it does not deny that it permitted the construction or destruction of the wells. Furthermore, the City does not deny that sampling results were publicly available at all relevant times and could have been obtained by the City through the investigation of sources open |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| FCDEH-FRESNO-054845 (June 13, 1997) (FCDEH-FRESNO-054837–54854) (Gilbert's Exxon, 4142 East Church); Anderson Decl., Ex. 2, Deanna L. Harding & Stephen J. Carter, Gettler-Ryan, Inc., First Quarter Groundwater Monitoring & Sampling Report tbl. 1, RWQCB-FRESNO-018344 (Feb. 17, 1997) (RWQCB-FRESNO-018342–18357) (Chevron #9-9093, 3996 N. Parkway Drive); Anderson, Decl., Ex. 2, Letter from Dane A. Mathis, Assoc. Eng'g Geologist, RWQCB, to Edward C. Ralston, Tosco Marketing Co. 2, RWQCB-FRESNO-011099 (Sept. 12, 2000) (RWQCB-FRESNO-011098–11100) (Tosco #39118, 1605 N. Cedar Avenue); Anderson Decl., Ex. 3, Memorandum from Ray Bruun, Assoc. Eng'r, RWQCB, to John Noonan, Senior Eng'r, RWQCB tbl. 1A, RWQCB-FRESNO-021557 (Aug. 5, 1998) (RWQCB-FRESNO-021554–21557) (7-Eleven #13917, 3645 E. Olive Avenue); Anderson Decl., Ex. 4, Kleinfelder, Inc., Ground Water Sampling and Analyses, Unocal Station #6353, at 1, FCDEH-FRESNO-025936 (Sept. 4, 1990) (FCDEH-FRESNO-025932–25969) (Unocal #6353, 1418 E. Shaw).) | | to the City. |
| 23. Prior to October 2000, public agencies were required to provide access to public records, which is defined as "any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained | Deny that defendants' cited evidence supports the statement, "Remediation reports and correspondence are types of documents that would fall squarely within the definition of public | The City does not deny that at all relevant times public agencies in California have been required to provide the public access to "public records," nor does the City deny that site investigation |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| by any state or local agency regardless of physical form or characteristics." (CAL. GOV'T CODE § 6252, subd. (a), (f), § 6253.) Remediation reports and correspondence are types of documents that would fall squarely within the definition of public records. (*See* Anderson Decl., Ex. 11, Whiting Dep. 30:14–31:7, 42:10–43:6, Apr. 25, 2011); *see, e.g.*, Anderson Decl., Ex. 14, Randell Mathias, JOT Dev., Request for Public Information (May 14, 2000) (FCDEH-FRESNO-002530) (requesting documents relating to Unocal site at 1605 N. Cedar Avenue); Anderson Decl., Ex. 14, Peter Volkov, All Star Petroleum, Request for Public Information (Oct. 2, 1999) (RWQCB-FRESNO-001753) (requesting documents relating to Valley Gas site at 2139 S. Elm); Anderson Decl., Ex. 14, John Whiting, RWQCB, Request for Public Information (Jan. 4, 2001) (RWQCB-FRESNO-008048–8049).) | records." Defendants' cited evidence shows that "attorney-client confidentiality" is excluded and "It is a judgment call" what type of e-mail is printed out. (Defendants' Jeremiah Anderson Decl., Exh. 11 [John Whiting Depo. (Apr. 25, 2011)], at 42:23-43:10.) The California Public Records Act exempts numerous types of records from disclosure.  Cal. Gov't Code § 6254. | and remediation reports held by the Regional Water Quality Control Board and/or Fresno County are subject to public records requests.  The documents cited by Defendants in this paragraph illustrate that during the relevant time period the Regional Water Quality Control Board and/or Fresno County produced and/or requested site investigation and/or remediation files via public records requests.  In addition, the City does not identify which, if any, of Defendants' exhibits the City claims are exempt from California's Public Record Act or on what grounds. |
| 24.   The County of Fresno's document retention policies required it to keep and permanently maintain inspection reports, copies of correspondence, laboratory test results, and "any other pertinent documents or information" that relate to or concern underground tanks and hazardous waste sites. (Anderson Decl., Ex. 12, S. Rhodes Dep. 24:4–25:16 & Ex. 3, Fresno County Dep't of Health, Environmental Health System | Admit that was the County of Fresno's document retention policy.  Deny the implication that Fresno was provided with documents from the County's files. | The City admits the facts in this Paragraph. The City does not deny that the categories of documents described in this Paragraph were publicly available at all relevant times and could have been obtained through the investigation of sources open to the City. |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| Policy and Procedure — Requirements for Documents and Files 1–3 (Jan. 1, 1992, revised Mar. 25, 1993).) | | |
| 25.    On March 25, 1999, California Governor Gray Davis issued an executive order phasing out MTBE in gasoline in California no later than December 31, 2002, based on the findings and recommendations of the University of California report on the "Health and Environmental Assessment of Methyl Tertiary-Butyl Ether (MTBE)," public testimony, and regulatory agencies stating that, "while MTBE has provided California with clean air benefits, because of leaking underground fuel storage tanks MTBE poses an environmental threat to groundwater and drinking water." (Anderson Decl., Ex. 15, Exec. Order No. D-5-99 (Mar. 25, 1999), http://gov.ca.gov/news.php?id=908 5 (last visited Feb. 1, 2013).) | Admit. | |
| 26.    On January 7, 1999, the California Department of Health Services set a secondary MCL for MTBE at 5.0 ppb to protect the water's aesthetics. (CAL. CODE REGS. tit. 22, § 64449 (1999).) | Admit that the secondary MCL for MTBE was set at 5.0 ppb.  The cited regulation describes the secondary MCL as "Consumer Acceptance Contaminant Levels" and does not use defendants' phrase, "to protect the water's aesthetics." | |
| 27.    On September 24, 1999 the State of California adopted a new regulation requiring all gasoline | Deny that the labeling requirement applied "to equipment dispensing | The City does not specifically controvert that the State of California |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| stations that sold gasoline containing MTBE to put a notice on their pumps that stated, "[t]he State of California has determined that the use of this chemical presents a significant risk to the environment." (CAL. CODE REGS. tit. 13, § 2273 (1999).) | gasoline from a storage tank containing gasoline having an MTBE content of less than 0.6 percent by volume." Cal. Code Regs. tit. 13, § 2273(b)(1). | adopted the regulation in question in 1999 and therefore this fact should be deemed admitted. *See* Local Rule 56.1(c). The City's citation to a sub-section of the same regulation does not qualify or limit this admission in any respect relevant to Defendants' Motion. |
| 28.    Since at least 1994, the City has regulated the installation, use, and destruction of all groundwater monitoring wells, including those at gasoline station UST sites, within the City of Fresno by a permit process. (Anderson Decl., Ex. 14, Eng'g Servs. Div., City of Fresno Pub. Works Dep't, Standard Procedures for Monitoring Well Permit Process §§ 5, 8–9 (July 1, 1994, revised July 1, 2003).) | Deny that Fresno regulated the use of groundwater monitoring wells. Admit that Fresno issued permits for the installation of monitoring wells and had requirements for the destruction of monitoring wells. The cited policy merely includes requirements for the installation and destruction of monitoring wells. The policy does not state that Fresno regulates the use or operation of the monitoring wells. | The City does not dispute that the document cited by Defendants is an authentic document authored by the City of Fresno, Public Works Department, nor does the City deny that at all relevant times the installation and destruction of a groundwater monitoring well required approval and a permit from the City. The City's denial contradicts regulations promulgated by the City that govern the installation, use, and destruction of groundwater monitoring wells. The document cited by Defendants sets forth the City's requirements and review process before the City will approve the installation, use, and destruction of groundwater monitoring well, including but not limited to: the "completion of environmental assessment," submission to the City of a "Work Plan |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | | (revisions/addendum) as approved by the lead regulatory agency" (emphasis and parenthetical in original), and "all monitoring wells are subject to the City review and reevaluation within 18 months after the installation date … [to determine] the usefulness of the well with a satisfactory rationale for future use." (Anderson Decl., Ex. 14, Eng'g Servs. Div., City of Fresno Pub. Works Dep't, Standard Procedures for Monitoring Well Permit Process §§ 5-6, 8–9 (July 1, 1994, revised July 1, 2003).). The City's denial that it regulates the use of groundwater monitoring wells contradicts the City's policy that governs the City's "review" and "reevaluation" of groundwater monitoring wells after they are installed to determine if they are "useful" and suitable "for future use." Id at § 9. |
| 29.    The City's well permitting process required that "[i]f the analytical results indicate no evidence of any environmental impact at the location of the well, the well shall be destroyed to ensure the quality of ground water is protected." (*Id.* § 9) It also required the City to assess the "analytical results" at each Site that had at least one groundwater monitoring well and to make a | Deny that Fresno's cited policy required analytical results from privately owned monitoring wells to be reported to Fresno, or that such results were reported to Fresno. Deny that Fresno's cited policy required Fresno to assess the analytical results at each site, or that such results were reported to Fresno. Fresno's cited | The City does not dispute that the cited document is an authentic document authored by the City of Fresno, Public Works Department. The City's denial contradicts the express and unambiguous language in the policy promulgated by the City, which requires the City to undertake certain site-specific environmental |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
| --- | --- | --- |
| determination regarding "any environmental impact at the location of the well." (*Id.*) | policy stated that Fresno "may require destruction of the well unless owner demonstrated the usefulness of the well with a satisfactory rationale for future use." | analysis in order to determine if a monitoring well should be destroyed. |
| 30.    All records identified above or below with the prefixes FCDEH-FRESNO, RWQCB-FRESNO, and FRESNO-MTBE, were produced by the Fresno County Department of Environmental Health, the Regional Board, or the City, respectively. (Anderson Decl., ¶ 5.) Both the Fresno County Department of Environmental Health and the Regional Board produced many of the documents pursuant to requests under the California Public Records Act.[1] (Anderson Decl., ¶ 5.) | Admit that documents identified with agency Bates-stamped prefixes were produced by the indicated agency. | The City's response does not specifically controvert any of the facts in this Paragraph. Therefore, the facts in this Paragraph should be deemed admitted. *See* Local Rule 56.1(c). |

[1] The Court has already held that "various 'site files' maintained by the RWQCB, other regional water authorities, and the Orange County Health Care Agency . . . are admissible as 'public records' under Rule 803(8)(c) of the Federal Rules of Evidence as they are the result of the agencies' factual investigation of matters within their statutory authority." *In re MTBE Prods. Liab. Litig.*, 475 F. Supp. 2d 286, 294 n.45 (S.D.N.Y. 2006).

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| 31.   On September 3, 1996, the site consultant for Chevron #9-4374 (1160 Fresno Street) reported to the RWQCB that MTBE had been detected in soil at the site at a maximum concentration of 720 parts per million (ppm) (or 720,000 ppb). (Anderson Decl., Ex. 1, Letter from Steven J. Brussee et al., Geraghty & Miller, Inc., to Russell W. Walls, RWQCB 2, RWQCB-FRESNO-042545, tbl. 1, RWQCB-FRESNO-042547 (Sept. 3, 1996) (RWQCB-FRESNO-042544–42578).) | Admit.  Deny the implication that Fresno was provided with the report. | The City admits the facts in this Paragraph.  The City does not deny that the environmental data described in this Paragraph was publicly available at all relevant times and could have been obtained through the investigation of sources open to the City. |
| 32.   On August 6, 1996, the site consultant reported to the Fresno County Department of Environmental Health that, on July 2, 1996, MTBE was detected in groundwater at the site at a maximum concentration of 93 ppb. (Anderson Decl., Ex. 1, Letter from Deanna L. Harding & Penny L. Silzer, Gettler-Ryan, Inc., to Robert Cochran, Chevron USA Prods. Co., tbl. 1, FCDEH-FRESNO-041731 (Aug. 6, 1996) (FCDEH-FRESNO-041724–41763); Anderson Decl., Ex. 8, D. Norman Expert Report, at 7, Ex. 5, Investigation & Remediation Summary Report Former Chevron #9-4374, at 6 (stating that the first MTBE detection in groundwater at this site was in July 1996); id at 8, Ex. 5, at 13 (relying on the August 6, 1996 letter from Gettler-Ryan, Inc.).) | Admit.  Deny the implication that Fresno was provided with the report. | The City admits the facts in this Paragraph.  The City does not deny that the environmental data described in this Paragraph was publicly available at all relevant times and could have been obtained through the investigation of sources open to the City. |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| 33.    By April 15, 1998, the State included the subject site on its list of hazardous waste and substances sites provided to the City. (Anderson Decl., Ex. 14, State of California, Hazardous Waste and Substances Sites List, at FRESNO-MTBE-008129 (Apr. 1998) (FRESNO-MTBE-008126–8134).) | Admit. | |
| 34.    Between July 1996 and October 1998, MTBE was detected in one or more groundwater samples, with the maximum detection at 2,900 ug/L (ppb). (Anderson Decl., Ex. 1, Letter from RWQCB, to R. J. Cochran, Chevron Prods. Co. 2, FCDEH-FRESNO-044291 (Oct. 12, 1999) (FCDEH-FRESNO-044290–44295).) | Admit.  Deny the implication that Fresno was provided with the report. | The City admits the facts in this Paragraph.  The City does not deny that the environmental data described in this Paragraph was publicly available at all relevant times and could have been obtained through the investigation of sources open to the City. |
| 35.    On April 15, 1999, the RWQCB sent water purveyors, including the City, a list of sites impacted by MTBE in Fresno County, which indicated that MTBE had been detected at Chevron #9-4374 at levels between 1,000 ppb and 5,000 ppb and noted impacts to "GW." (Anderson Decl., Ex. 6, Memorandum from Gordon L. Boggs, Program Manager, Underground Tanks, RWQCB, to Water Purveyors, Cent. Valley Region 3, FRESNO-MTBE-07717 (Apr. 15, 1999) (FRESNO-MTBE-007714–7728).) | Admit. | |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| 36.　　On October 15, 1999, the RWQCB sent water purveyors, including the City, a list of sites impacted by MTBE in Fresno County, which indicated that MTBE had been detected at the subject site at levels between 1,000 ppb and 5,000 ppb and noted impacts to "GW." (Anderson Decl., Ex. 6, Memorandum from Gordon L. Boggs, Program Manager, Underground Tanks, RWQCB, to Water Purveyors, Cent. Valley Region 3, FRESNO-MTBE-007669 (Oct. 15, 1999) (FRESNO-MTBE-007666–7680).) | Admit. | |
| 37.　　On December 1, 1999, the RWQCB sent a letter to the environmental consultant for the subject site regarding case closure for the site, stating that "[MTBE] may be present at concentrations exceeding 1000 ug/L." (Anderson Decl., Ex. 5, Letter from Bruce E. Myers, Assoc. Eng'g Geologist, RWQCB, to Frank Volanti 2, FCDEH-FRESNO-044288 (Dec. 1, 1999) (FCDEH-FRESNO-044287–44289).)  The City's Development Department and City councilmen for the Second and Third Districts are listed as recipients of the December 1, 1999 letter authored by the RWQCB.  (*Id.* at 3, FCDEH-FRESNO-044289.) | Admit. | |
| 38.　　On January 14, 2000, the RWQCB sent water purveyors, including the City, a list of sites impacted by MTBE in Fresno County, which indicated that MTBE had been detected at the | Admit. | |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| subject site at levels between 1,000 ppb and 5,000 ppb and noted impacts to "GW." (Anderson Decl., Ex. 6, Memorandum from Gordon L. Boggs, Program Manager, Underground Tanks, RWQCB, to Water Purveyors, Cent. Valley Region 5, FRESNO-MTBE-008143 (Jan. 14, 2000) (FRESNO-MTBE-008139–8158).) | | |
| 39.    On April 14, 2000, the RWQCB sent water purveyors, including the City, a list of sites impacted by MTBE in Fresno County, which indicated that MTBE had been detected at the subject site at levels between 1,000 ppb and 5,000 ppb and noted impacts to "GW." (Anderson Decl., Ex. 6, Memorandum from Gordon L. Boggs, Program Manager, Underground Tanks, RWQCB, to Water Purveyors, Cent. Valley Region 6, FRESNO-MTBE-008163 (Apr. 14, 2000) (FRESNO-MTBE-008159–8182).) | Admit. | |
| 40.    On July 14, 2000, the RWQCB sent water purveyors, including the City, a list of sites impacted by MTBE in Fresno County, which indicated that MTBE had been detected at the subject site at levels between 1,000 ppb and 5,000 ppb and noted impacts to "GW." (Anderson Decl., Ex. 6, Memorandum from Gordon L. Boggs, Project Manager, Underground Tanks, RWQCB, to Water Purveyors, Cent. Valley Region 5, FRESNO-MTBE-008187 (July 14, 2000) (FRESNO-MTBE- | Admit. | |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| 008183–8204).) | | |
| 41.    On July 27, 2012, the RWQCB sent a case closure letter stating no further action was required at this site. (Anderson Decl., Ex. 15, Pamela Creedon, Executive Officer, RWQCB, Executive Officer's Report 3 (Oct. 4–5, 2012), available at http://www.swrcb.ca.gov/rwqcb5/b oard_info/exec_officer_reports/121 0eo.pdf (last visited Jan. 31, 2013).) | Admit. Deny the implication that Fresno was provided with the letter. | The City admits the facts in this Paragraph. The City does not deny that the information described in this Paragraph was publicly available at all relevant times and could have been obtained through the investigation of sources open to the City. |
| 42.    MTBE was first detected in groundwater at Gilbert's Exxon (4142 East Church) on April 16, 1997 with an MTBE level of 0.72 ppb. (Anderson Decl., Ex. 1, RM Assocs., Quarterly Ground Water Monitoring Report, 4142 East Church Street tbl. 3, FCDEH-FRESNO-054845 (June 13, 1997) (FCDEH-FRESNO-054837–54854).)  The first time MTBE was detected over five ppb in a monitoring well at the site was on July 12, 2000, at levels of ten and fifteen ppb. (Anderson Decl., Ex. 1, Grisanti & Assocs., Inc., Soil & Groundwater Contamination Investigation and Corrective Action Plan, Gilbert's Exxon, tbl. 4, at 14, RWQCB-FRESNO-043879 (RWQCB-FRESNO-043861–43967); Anderson Decl., Ex. 8, D. Norman Expert Report, at 9–10, Ex. 15, Investigation & Remediation Summary Report Gilbert's Exxon, at 5 & app. C (referring to historical groundwater monitoring results at the site showing the first MTBE | Admit. Deny the implication that Fresno was provided with the reports. | The City admits the facts in this Paragraph. The City does not deny that the environmental data described in this Paragraph was publicly available at all relevant times and could have been obtained through the investigation of sources open to the City. |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| detection in groundwater on July 12, 2000).) | | |
| 43.     On May 1, 2009, the RWQCB issued a case closure letter stating that the site investigation and corrective action for the underground storage tanks at this site have been completed and that "no further action related to the petroleum release(s) at the site is required." (Anderson Decl., Ex. 5, Letter from Pamela C. Creedon, Executive Officer, RWQCB, to Gilbert Romero (May 1, 2009) (RWQCB-FRESNO-043537).) | Admit. Deny the implication that Fresno was provided with the letter. | The City has agreed to dismiss its claims relating to this Site. In any event, the City admits the facts in this Paragraph. The City does not deny that the information described in this Paragraph was publicly available at all relevant times and could have been obtained through the investigation of sources open to the City. |
| 44.     On January 28, 1997, the site environmental consultant for Chevron #9-9093 (3996 N. Parkway Drive) reported to the RWQCB and Fresno County Department of Environmental Health that MTBE had been detected in soil at 2,800 ppm (2,800,000 ppb) in a sample taken from the subject site in September 1995. (Anderson Decl., Ex. 2, Pacific Envtl. Group, Inc., Installation of Groundwater Monitoring Wells and Soil Boring 2, RWQCB-FRESNO-018395 (Jan. 28, 1997) (RWQCB-FRESNO-018394–18444); id. at 5, RWQCB-FRESNO-018398 (copying Russell Walls of the RWQCB and Jim R. Armstrong of the Fresno County Community Health Department).) | Admit. Deny the implication that Fresno was provided with the report. | The City admits the facts in this Paragraph. The City does not deny that the information described in this Paragraph was publicly available at all relevant times and could have been obtained through the investigation of sources open to the City. |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| 45.     On February 17, 1997, the site environmental consultant reported to the RWQCB that MTBE was detected at 64 ppb in a groundwater sample taken from the subject site on January 13, 1997. (Anderson Decl., Ex. 2, Deanna L. Harding & Stephen J. Carter, Gettler-Ryan, Inc., First Quarter Groundwater Monitoring & Sampling Report, tbl. 1, RWQCB-FRESNO-018344 (Feb. 17, 1997) (RWQCB-FRESNO-018342–18357); Anderson Decl., Ex. 8, D. Norman Expert Report, at 11–13, Ex. 20, Investigation & Remediation Summary Report Chevron #9-9093, at 6, 9 & app. C (referring to historical groundwater monitoring data at the site, and referencing Table 1 of the February 17, 1997 Gettler-Ryan, Inc. letter showing that the first MTBE detection in groundwater was January 13, 1997).)  The RWQCB confirmed this detection on June 19, 1997. (Anderson Decl., Ex. 2, Letter from John M. Noonan, Senior Eng'r, RWQCB, to Robert Cochran, Chevron Prods. Co. 1, RWQCB-FRESNO-043452 (June 19, 1997) (RWQCB-FRESNO-043452–43454).) | Admit.  Deny the implication that Fresno was provided with the report. | The City admits the facts in this Paragraph.  The City does not deny that the information described in this Paragraph was publicly available at all relevant times and could have been obtained through the investigation of sources open to the City. |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| 46.     By April 15, 1998, the State included the subject site on its list of hazardous waste and substances sites that provided to the City. (Anderson Decl., Ex. 14, State of California, Hazardous Waste and Substances Site List (Apr. 1998) (FRESNO-MTBE-008126–8134).) | Admit. | |
| 47.     On April 15, 1999, the RWQCB sent water purveyors, including the City, a list of sites impacted by MTBE in Fresno County, which indicated that MTBE had been detected at the subject site at levels between 50 ppb and 200 ppb.  (Anderson Decl., Ex. 6, Memorandum from Gordon L. Boggs, Program Manager, Underground Tanks, RWQCB, to Water Purveyors, Cent. Valley Region 4, FRESNO-MTBE-007717 (Apr. 15, 1999) (FRESNO-MTBE-007714–7728).) | Admit. | |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| 48. On January 14, 2000, the RWQCB sent water purveyors, including the City, a list of sites impacted by MTBE in Fresno County, which indicated that MTBE had been detected at the subject site at levels "> 100k" ppb and noted impacts to "GW." (Anderson Decl., Ex. 6, Memorandum from Gordon L. Boggs, Program Manager, Underground Tanks, RWQCB, to Water Purveyors, Cent. Valley Region 6, FRESNO-MTBE-008143 (Jan. 14, 2000) (FRESNO-MTBE-008139–8158).) | Admit. | |
| 49. On July 14, 2000, the RWQCB sent water purveyors, including the City, a list of sites impacted by MTBE in Fresno County, which indicated that MTBE had been detected at the subject site at levels "> 100k" ppb and noted impacts to "GW." (Anderson Decl., Ex. 6, Memorandum from Gordon L. Boggs, Program Manager, Underground Tanks, RWQCB, to Water Purveyors, Cent. Valley Region 6, FRESNO-MTBE-008187 (July 14, 2000) (FRESNO-MTBE-008183–8204).) | Admit. | |
| 50. On May 14, 2002, the RWQCB issued a case closure letter stating that the site investigation and remedial action for the underground storage tank site at Chevron #9-9093 was complete and that "no further action related to the | Admit. Deny the implication that Fresno was provided with the letter. | The City admits the facts in this Paragraph. The City does not deny that the information described in this Paragraph was publicly available at all relevant times and could have been |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| petroleum release at the site is required." (Anderson Decl., Ex. 5, Letter from Bert E. Van Voris, Supervising Eng'r, RWQCB, to Robert J. Cochran, Chevron USA Prods. Co. (May 14, 2002) (RWQCB-FRESNO-030714).) | | obtained through the investigation of sources open to the City. |
| 51.    MTBE was first detected in a grab groundwater sample at Tosco #39118 (1605 N. Cedar Avenue) in January 1999 at 20,000 ppb. (Anderson Decl., Ex. 2, Gettler-Ryan. Inc., Work Plan for a Subsurface Investigation at Former Tosco (Unocal) Service Station No. 3711, at 2, FRESNO-MTBE267385 (June 26, 2000) (FRESNO-MTBE267382–267400); Anderson Decl., Ex. 2, Letter from David A. Sholes, Assoc. Eng'g Geologist, RWQCB, to Edward Ralston, Tosco Marketing Co. 2, FRESNO-MTBE267380 (July 3, 2000) (FRESNO-MTBE267379–267381).) | Admit. Deny the implication that Fresno was provided with the reports. | The City admits the facts in this Paragraph. The City does not deny that the environmental data described in this Paragraph was publicly available at all relevant times and could have been obtained through the investigation of sources open to the City. |
| 52.    MTBE was first detected in a monitoring well on August 8, 2000, with MTBE detections of 1,460 ug/L (or 1,460 ppb) and 1,580 ug/L (or 1,580 ppb). (Anderson, Decl., Ex. 2, Letter from Dane A. Mathis, Assoc. Eng'g Geologist, RWQCB, to Edward C. Ralston, Tosco Marketing Co. 2, RWQCB-FRESNO-011099 (Sept. 12, 2000) (RWQCB-FRESNO-011098–11100); Anderson Decl., Ex. 8, D. Norman Expert Report, at 14, Ex. 22, Investigation & Remediation Summary Report TOSCO #39118, at 6 (stating that | Admit. Deny the implication that Fresno was provided with the reports. | The City admits the facts in this Paragraph. The City does not deny that the environmental data described in this Paragraph was publicly available at all relevant times and could have been obtained through the investigation of sources open to the City. |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| there was an MTBE detection in groundwater at this site in August 2000).) | | |
| 53.    On July 14, 2000, the RWQCB sent water purveyors, including the City, a list of MTBE dischargers, which included this site. The list identifies the type of impact at this site as groundwater with an MTBE range of ">20k - <100k." (Anderson Decl., Ex. 6, Memorandum from Gordon L. Boggs, Program Manager, Underground Tanks, RWQCB, to Water Purveyors, Cent. Valley Region 5, FRESNO-MTBE-008187 (July 14, 2000) (FRESNO-MTBE-008183–8204).) | Admit. | |
| 54.    On April 12, 2011, the RWQCB issued a case closure letter for this site stating that the site investigation and corrective action for the underground storage tanks was complete, and that "no further action related to the petroleum release(s) at the site is required." (Anderson Decl., Ex. 5, Letter from Pamela C. Creedon, Executive Officer, RWQCB, to Ted Moise, ConocoPhillips (Apr. 12, 2011) (RWQCB2-FRESNO-000308).) | Admit. Deny the implication that Fresno was provided with the letter. | The City admits the facts in this Paragraph. The City does not deny that the information described in this Paragraph was publicly available at all relevant times and could have been obtained through the investigation of sources open to the City. |
| 55.    An MTBE detection in groundwater, of 13 ug/L (13 ppb), was first reported in a monitoring well at 7-Eleven #13917 (3645 E. | Admit. Deny the implication that Fresno was provided with the report. | The City admits the facts in this Paragraph. The City does not deny that the environmental data described |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| Olive Avenue) in sampling conducted on May 14, 1996.[2] (Anderson Decl., Ex. 3, Memorandum from Ray Bruun, Assoc. Eng'r, RWQCB, to John Noonan, Senior Eng'r, RWQCB, tbl. 1A, RWQCB-FRESNO-021557 (Aug. 5, 1998) (RWQCB-FRESNO-021554–21557).) | | in this Paragraph was publicly available at all relevant times and could have been obtained through the investigation of sources open to the City. |
| 56.    An MTBE detection in groundwater, of 15 ug/L (15 ppb), was reported in the same monitoring well in sampling conducted on April 22, 1997.  (*Id.*) | Admit. Deny the implication that Fresno was provided with the report. | The City admits the facts in this Paragraph.  The City does not deny that the environmental data described in this Paragraph was publicly available at all relevant times and could have been obtained through the investigation of sources open to the City. |
| 57.    In 1997, the City issued a building permit for construction of a remediation system at the subject site. (Anderson Decl., Ex. 3, Letter from John Whitler & Jaff Auchterlonie, Fluor Daniel GTI, Inc., to Ray Bruun, RWQCB (June 27, 1997) (RWQCB-FRESNO-021558).) | Admit. | |
| 58.    In April 1998, the California Department of Toxic Substances Control included the site on its list of hazardous waste and substances sites provided to the City. (Anderson Decl., Ex. 14, State of California, Hazardous Waste and Substances Sites List, at FRESNO-MTBE-008131 (Apr. 1998) | Admit. | |

[2]    Should the claims on this station proceed to the merits, CITGO reserves the right to dispute the validity of the MTBE detections at this site, but for purposes of the present motion, they are assumed to be true.

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| (FRESNO-MTBE-008126–8134).) | | |
| 59.    On August 5, 1998, the RWQCB issued a case closure letter for the site stating that the site investigation and remedial action were complete, and that "no further action related to the underground tank release is required." (Anderson Decl., Ex. 5, Letter from Bert E. Van Voris, Supervising Eng'r, RWQCB, to Bob DeNinno, The Southland Corp. (Aug. 5, 1998) (RWQCB-FRESNO-021553).) | Admit.  Deny the implication that Fresno was provided with the letter. | The City admits the facts in this Paragraph.  The City does not deny that the information described in this Paragraph was publicly available at all relevant times and could have been obtained through the investigation of sources open to the City. |
| 60.    On April 15, 1999, the RWQCB sent water purveyors, including the City, a list of sites reporting MTBE impact in Fresno County, which indicated that MTBE had been reported at 7-Eleven #13917 at levels between 5 ppb and 15 ppb, and noted impacts to "GW." (Anderson Decl., Ex. 6, Memorandum from Gordon L. Boggs, Program Manager, Underground Tanks, RWQCB, to Water Purveyors, Cent. Valley Region 3, FRESNO-MTBE-007717 (Apr. 15, 1999) (FRESNO-MTBE-007714–7728).) | Admit. | |
| 61.    On October 15, 1999, the RWQCB sent water purveyors, including the City, a list of sites reporting MTBE impact in Fresno County, which indicated that MTBE had been reported at 7-Eleven #13917 at levels between 5 ppb and 15 ppb, and noted impacts to "GW." (Anderson Decl., Ex. 6, Memorandum from Gordon L. Boggs, Program Manager, | Admit. | |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| Underground Tanks, RWQCB, to Water Purveyors, Cent. Valley Region 3, at FRESNO-MTBE-007669 (FRESNO-MTBE-007666-7680).) | | |
| 62.      There have been no MTBE detections in groundwater or at any monitoring wells at the Tosco #30587 (1610 N. Palm Avenue) site. (Anderson Decl., Ex. 8, D. Norman Expert Report, at 6, tbl. 1 (Dec. 5, 2011).) | Admit. | |
| 63.      MTBE was first detected in soil at this site on September 20, 1997. (Anderson Decl., Ex. 3, Pacific Envtl. Group, Inc., Soil Gas Survey Results, Unocal Service Station 3922, at FCDEH-FRESNO-029846 (Oct. 29, 1997) (FCDEH-FRESNO-029840–29847); Anderson Decl., Ex. 9, D. Norman Expert Report, at 1, Ex. 2, Investigation & Remediation Summary Report Tosco Service Station #30587, at 4 (stating that the MTBE was detected in a soil gas sample at the site in September 1997); *id* at 3, Ex. 2, at 8 (relying on the October 29, 1997 Soil Gas Survey Results.) The maximum MTBE level for the soil gas samples taken at the time was 2,500 ug/L (2,500 ppb). (Anderson Decl., Ex. 3, Pacific Envtl. Group, Inc., Soil Gas Survey Results, Unocal Service Station 3922, at FCDEH-FRESNO-029846.) | Admit. Deny the implication that Fresno was provided with the report. | The City admits the facts in this Paragraph. The City does not deny that the environmental data described in this Paragraph was publicly available at all relevant times and could have been obtained through the investigation of sources open to the City. |
| 64.      MTBE was also detected in soil at this site on May 28, 1998 with a maximum detection of 780 ppm (780,000 ppb). (Anderson Decl., Ex. 3, Glenn L. Matteucci, | Deny. From plaintiff's interpretation of the table cited by defendants, the maximum detection of MTBE in soil at this site on | The expert report issued by David Norman, Plaintiff's expert, identifies a detection of MTBE in soil at the subject site in 1998 at the |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| Asst. Project Manager, Envtl. Resolutions, Inc., Underground Storage Tank and Associated Piping and Dispenser Removal at Tosco 76 Service Station 3922, tbl. 1, FCDEH-FRESNO-030038 (Oct. 13, 1998) (FCDEH-FRESNO-030032–30114); Anderson Decl., Ex. 9, D. Norman Expert Report, at 1, Ex. 2, Investigation & Remediation Summary Report Tosco #30587, at 4 (stating that the MTBE was detected in a soil gas sample at the site in September 1997); *id* at 3, Ex. 2, at 8 (relying on the October 13, 1998 Underground Storage Tank and Associated Piping and Dispenser Removal Report.) | May 28, 1998, was 0.30 ppm (300 ppb).  Deny the implication that Fresno was provided with the report. | level of "780 mg/kg," which converts to 780,000 ppb. (Anderson Decl., Ex. 9, D. Norman Expert Report at Exh. 2 p. 4).  In addition, the City does not deny that MTBE was detected and publicly reported at levels above five ppb on May 28, 1998—well before October 22, 2000.  Furthermore, in addition to the data point noted by the City, other data cited by Defendants in this Paragraph, including data cited by Plaintiff's expert David Norman in his expert report, indicate a number of detections of MTBE in soil above 1000 ppb prior to October 22, 2000.  The City does not deny that the environmental data cited in this Paragraph was publicly available at all relevant times and could have been obtained through the investigation of sources open to the City. |
| 65.    On November 4, 1998, the County of Fresno Community Health Department issued a letter confirming the permanent closure of underground storage tanks at this site, and stated that "no further action is required at this time." (Anderson Decl., Ex. 5, Letter from Lisa Smoot, Envtl. Health Analyst, County of Fresno Cmty. Health Dep't (Nov. 4, 1998) (FCDEH-FRESNO-030027).) | Admit.  Deny the implication that Fresno was provided with the letter. | The City admits the facts in this Paragraph.  The City does not deny that the information described in this Paragraph was publicly available at all relevant times and could have been obtained through the investigation of sources open to the City. |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| 66.    David Norman, the Plaintiff's modeling expert, stated that "[i]t is [his]based on the lack of groundwater assessment at [Tosco #30587] and the detections of TPHg and MTBE in site soils, that significant data gaps exists concerning the potential for a groundwater impact and a migrating MTBE plume. . . . Therefore, it is recommended that four monitoring wells be installed to evaluate the depth to groundwater[.]". (Anderson Decl., Ex. 9, D. Norman Expert Report, at 2, Ex. 2, at 7.) | Admit that the quoted passage is a portion of the recommendations of Fresno's expert David Norman. Deny that David Norman was represented by Fresno to be "the Plaintiff's modeling expert." | The City is correct – it did not designate a modeling expert in this case. Mr. Norman was designated as the City's damages and remediation expert. |
| 67.    There have been no MTBE detections in groundwater or at any monitoring wells at the Valley Gas service station (2139 South Elm Street). (Anderson Decl., Ex. 8, D. Norman Expert Report, at 6, tbl. 1 (Dec. 5, 2011).) | Admit. | |
| 68.    MTBE was first detected in soil at this site on November 5, 1999. (Anderson Decl., Ex. 3, ASR Eng'g, Inc., Soil Sampling and Chemical Analyses Report, Gasoline Piping Leak, Valley Gas 3, RWQCB-FRESNO-001260 (Nov. 29, 1999) (RWQCB-FRESNO-001258–1264); *see also* Anderson Decl., Ex. 3, Letter from John D. Whiting, Eng'g Geologist, RWQCB, to Mohammad Shahid, Petro Group II, at 1, RWQCB-FRESNO-001318 (Feb. 27, 2008) (RWQCB-FRESNO-001318–1320): Anderson Decl., Ex. 9, D. Norman Expert Report, at 4, Ex. 4, | Admit. Deny the implication that Fresno was provided with the reports. | The City admits the facts in this Paragraph. The City does not deny that the environmental data described in this Paragraph was publicly available at all relevant times and could have been obtained through the investigation of sources open to the City. |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| Investigation & Remediation Summary Report Former Valley Gas, at 5 (stating that MTBE was detected in a soil sample at the site in November 1999); *id* at 5, Ex. 4, at 7 (relying on the November 29, 1999 Soil Sampling and Chemical Analyses Report).) The MTBE level for the soil sample taken was 920 mg/kg (or 920,000 ppb).[3] (Anderson Decl., Ex. 3, ASR Eng'g, Inc., Soil Sampling and Chemical Analyses Report, at 3, RWQCB-FRESNO-001260; *see also* Anderson Decl., Ex. 3, Letter from John D. Whiting, Eng'g Geologist, RWQCB, to Mohammad Shahid, Petro Group II, at 1, RWQCB-FRESNO-001318.) | | |
| 69.   There have been no MTBE detections in groundwater or at any monitoring wells at the Beacon-Arco #615 site (1625 Chestnut Avenue). (Anderson Decl., Ex. 8, D. Norman Expert Report, at 6, tbl. 1 (Dec. 5, 2011).) | Admit. | |
| 70.   On June 11, 1998, the site consultant for this site reported to the RWQCB that it had detected MTBE in soil samples taken from the site at levels ranging from .011 mg/kg to 81 mg/kg (or 81,000 ppb). (Anderson Decl., Ex. 3, El Dorado Envtl., Inc., Tank Closure Report Beacon Station #615, at 3, RWQCB-FRESNO-016188, tbl. 1, RWQCB-FRESNO-016196 (Sept. 27, 1998) (RWQCB-FRESNO- | Admit. Deny the implication that Fresno was provided with the report. | The City admits the facts in this Paragraph. The City does not deny that the environmental data described in this Paragraph was publicly available at all relevant times and could have been obtained through the investigation of sources open to the City. |

---

[3]   Certain measurements of chemical concentrations in soil are not directly convertible to concentrations in water due to the different medium.

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| 016182–16229); Anderson Decl., Ex. 9, D. Norman Expert Report, at 6, Ex. 25, Investigation & Remediation Summary Report Beacon-Arco Service Station #615, at 4 (stating that MTBE was detected in soil samples at the site in June 1998); *id* at 7, Ex. 25, at 7 (relying on the September 27, 1998 Tank Closure Report).) | | |
| 71.  On September 25, 2003, the RWQCB issued a case closure letter for this site stating that the site investigation and corrective action for the underground storage tanks was complete, and that "no further action related to the petroleum release(s) at the site is required." (Anderson Decl., Ex. 5, Letter from Bert E. Van Voris, Supervising Eng'r, RWQCB, to Joseph Aldridge, Ultramar, Inc. (Sept. 25, 2003) (RWQCB-FRESNO-015737).) | Admit.  Deny the implication that Fresno was provided with the letter. | The City admits the facts in this Paragraph.  The City does not deny that the information described in this Paragraph was publicly available at all relevant times and could have been obtained through the investigation of sources open to the City. |
| 72.  MTBE has never been detected in soil, groundwater, or any monitoring wells at Unocal #6353 (1418 E. Shaw).  (Anderson Decl., Ex. 8, D. Norman Expert Report, at 6, tbl. 1 (Dec. 5, 2011).) | Admit. | The City has agreed to dismiss its claims relating to this Site. |
| 73.  In September 1987, a soil and groundwater investigation was conducted in connection with the removal of a waste oil tank. (Anderson Decl., Ex. 4, Kleinfelder, Inc., Soil and Ground Water Investigation Phase II Report, Unocal Station #6353, at 1, FCDEH-FRESNO-025973 (Jan. 30, | Admit, and that no MTBE results were reported.  Deny the implication that Fresno was provided with the report. | The City has agreed to dismiss its claims relating to this Site.  In any event, the City admits the facts in this Paragraph.  The City does not deny that the environmental data described in this Paragraph was publicly available at all |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| 1989) (FCDEH-FRESNO-025970– 26096).) Detections of total petroleum hydrocarbon constituents were reported in connection with samples taken from two monitoring wells at the subject site. (*Id.* at 11 & tbl. 4.3, FCDEH-FRESNO-025983.) | | relevant times and could have been obtained through the investigation of sources open to the City. |
| 74.    In May 1990, four groundwater monitoring wells were sampled at the subject site and were all non-detect for all constituents tested. (Anderson Decl., Ex. 4, Kleinfelder, Inc., Ground Water Sampling and Analyses, Unocal Station #6353, at 1, FCDEH-FRESNO-025936 (Sept. 4, 1990) (FCDEH-FRESNO-025932–25969).) | Admit, and that no MTBE results were reported. Deny the implication that Fresno was provided with the report. | The City has agreed to dismiss its claims relating to this Site. In any event, the City admits the facts in this Paragraph. The City does not deny that the environmental data described in this Paragraph was publicly available at all relevant times and could have been obtained through the investigation of sources open to the City. |
| 75.    June 21, 1994, an unauthorized release was reported at the subject site in connection with the removal of gasoline and waste oil USTs. (Anderson Decl., Ex. 4, Lynda S. Chalom, Unocal Corp., Underground Storage Tank Unauthorized Release (Leak) / Contamination Site Report (June 21, 1994) (RWQCB-FRESNO-039976–39977).) | Admit. Deny the implication that Fresno was provided with the report. | The City has agreed to dismiss its claims relating to this Site. In any event, the City admits the facts in this Paragraph. The City does not deny that the environmental data described in this Paragraph was publicly available at all relevant times and could have been obtained through the investigation of sources open to the City. |
| 76.    On October 25, 1995, Fresno County granted closure at the site based on a June 19, 1995 Phase II site assessment, which included soil sampling. (Anderson Decl., Ex. 4, Letter from Lynn Klinkby, Geologist, County of Fresno Health Servs. Agency, to | Admit, and that no MTBE results were reported. Deny the implication that Fresno was provided with the letter. | The City has agreed to dismiss its claims relating to this Site. In any event, the City admits the facts in this Paragraph. The City does not deny that the environmental data described in this Paragraph was |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| Robert A. Boust, Unocal Corporate Envtl. 1–2, RWQCB-FRESNO-039985–039986 (Oct. 25, 1995) (RWQCB-FRESNO-039985–39987).) | | publicly available at all relevant times and could have been obtained through the investigation of sources open to the City. |
| 77.    In 2003, in connection with the removal of a waste oil tank, petroleum hydrocarbon constituents were detected in a soil sample taken from the subject site. (Anderson Decl., Ex. 4, SECOR Int'l Inc., Results of Waste Oil UST Assessment and Request for Low Risk Closure, 76 Station #6353, at 2, FCDEH-FRESNO-025642 (May 8, 2006) (FCDEH-FRESNO-025637–25750); Anderson Decl., Ex. 4, Katie Carpenter & Chris Skelton, Twining Labs., Inc., Soil Sample Analyses for Underground Storage Tank Removal, Unocal Service Station 3, FCDEH-FRESNO-026346 (Feb. 5, 2003) (FCDEH-FRESNO-026344–26357).) The sample was non-detect for MTBE. (Anderson Decl., Ex. 4, SECOR Int'l Inc., Results of Waste Oil UST Assessment and Request for Low Risk Closure, 76 Station #6353, at tbl. 1, FCDEH-FRESNO-025654; Anderson Decl., Ex. 4, Twining Labs., Inc., Soil Sample Analyses for Underground Storage Tank Removal, Unocal Service Station, at 3, FCDEH-FRESNO-026346.) | Admit, and that no MTBE results were reported. Deny the implication that Fresno was provided with the report. | The City has agreed to dismiss its claims relating to this Site.  In any event, the City admits the facts in this Paragraph.  The City does not deny that the environmental data described in this Paragraph was publicly available at all relevant times and could have been obtained through the investigation of sources open to the City. |
| 78.    The County of Fresno Department of Community Health has stated that the site investigation conducted proved that the site was "low risk," and to "expect a letter of | Admit, and that no MTBE results were reported. Deny the implication that Fresno was provided with the | The City has agreed to dismiss its claims relating to this Site.  In any event, the City admits the facts in this Paragraph.  The City does |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| 'no further action'." (Anderson Decl., Ex. 5, Jim R. Armstrong, Telephone Call Record, at FCDEH-FRESNO-025763 (June 5, 2006) (FCDEH-FRESNO-025763-25764).) | Telephone Call Record. | not deny that the environmental data described in this Paragraph was publicly available at all relevant times and could have been obtained through the investigation of sources open to the City. |

| ADDITIONAL MATERIAL FACTS ASSERTED BY PLAINTIFF | DEFENDANTS' RESPONSE AND OBJECTIONS |
|---|---|
| 79.    It is more cost-effective and efficient to address the shallow groundwater aquifer contamination at station sites before the contamination migrates to the deeper aquifer and spreads to water supply wells. (Eickmeyer Decl., Exh. 1 [Expert Report of Richard L. Haberman, PE], at 5, 10; Eickmeyer Decl., Exh. 2 [Richard L. Haberman, P.E., Depo.], at 141:22-142:4.) | ***Objection and Move to Strike***:  Defendants object that the expert report of Richard L. Haberman is hearsay and inadmissible, and on this basis Defendants move to strike his report and this Paragraph.<br><br>Denied that it always more cost-effective and efficient to address the shallow groundwater aquifer contamination at station sites. Furthermore, this generic statement is irrelevant.  There is no evidence that MTBE from any of the Sites will migrate to the deeper aquifer or spread to supply wells.  Nor is there any evidence that the City will ever have to spend any money at its wells based on releases at the sites.<br><br>Defendants admit that it is theoretically possible that it is more cost-effective and efficient to address the shallow groundwater aquifer contamination at station sites before the contamination migrates to the deeper aquifer and spreads to water supply wells, but there is no evidence that this is true here because the City and its experts failed to perform a site-specific analysis to determine how much it would cost to remediate any of the Sites, nor have they produced any evidence or analysis relating to the extent, if any, of impacts to the deeper aquifer or how much it would cost to treat those alleged impacts.  On this basis, the facts in this Paragraph are denied. |
| 80.    Defendants' expert Dr. John Wilson stated in his expert report that gasoline released at station sites stays in the shallower "vadose" zone and does not represent an immediate threat to Fresno's deeper drinking water supply aquifer. (Eickmeyer Decl. Exh. 3 [Expert Report of John L. Wilson, Ph.D.], at 5-7.) | Defendants object to this statement as irrelevant.  The only injury for which the City is seeking to recover damages is injury to the shallow groundwater.<br><br>Admit, but Defendants add that in the expert report cited by the City, Dr. Wilson opines that MTBE associated with gasoline released at the Sites does not threaten Fresno's deeper |

| ADDITIONAL MATERIAL FACTS ASSERTED BY PLAINTIFF | DEFENDANTS' RESPONSE AND OBJECTIONS |
|---|---|
| | drinking water supply aquifer.  The report cited by Plaintiff states that: "While the gasoline was released near the surface, at the top of a very thick vadose zone, the water supply wells predominantly draw water from much deeper semi-confined aquifers, separated and protected from release zones by extensive low-permeability silt and clay lenses and layers in the vadose zone and aquifer. " (Eickmeyer Decl. Exh. 3 [Expert Report of John L. Wilson, Ph.D.], at 5.)  Dr. John Wilson's report also states that "MTBE associated with hydrocarbon releases from service stations impacts the shallow aquifer, not the deeper and protected semi-confined aquifer system." *Id.* at 6. |
| 81.    Defendants deny that Fresno has suffered any injury at all, deny that Fresno has been harmed, and deny that Fresno's property has been impacted.  (Eickmeyer Decl., Exh. 4 [Defendant Exxon Mobil Corporation's Tenth Amended Master Answer and Affirmative Defenses], at 17, ¶ 65, at 17, ¶ 68, at 19, ¶ 87.) | Defendants contend that the City of Fresno has suffered no injury or harm.  Nevertheless, Defendants—without admitting to the validity of the claim—are entitled to argue that even if the claim were otherwise valid, it is barred by limitations, as have countless other defendants that have obtained summary judgment on limitations.  The City has not defined the term "impacted" and on that basis Defendants deny the fact in question relating to alleged "impacts" to the City of Fresno's property. |
| 82.    Fresno first detected MTBE in a monitoring well (Monitoring Well 318) on November 27, 2001.  (Eickmeyer Decl., Exh. 5 [Robert C. Little Depo. (Mar. 31, 2011)], at 160:22-161:6.)  This detection was within three years of the filing of the Complaint. (Defendants' Material Fact No. 1.) | Defendants admit the timing of the alleged detection; however, Defendants deny that this is the accrual event for the City's claims. Defendants further add that the City was aware that releases of gasoline containing MTBE from underground storage had impacted groundwater more than three years before filing suit (Anderson Decl., Ex. 10, Little Dep. 50:17–51:13, 219:24–221:10, 439:7–442:14, Jan. 18–19, 2011; Anderson Decl., Ex. 12, McIntyre Dep. 38:15–39:17, 95:7–96:14, Mar. 16, 2011.)  Furthermore, the City was actually aware or constructively aware for all of the releases at the Sites at issue and the detections of MTBE in the soil and/or groundwater at the |

| ADDITIONAL MATERIAL FACTS ASSERTED BY PLAINTIFF | DEFENDANTS' RESPONSE AND OBJECTIONS |
|---|---|
| | Sites prior to October 22, 2000.  Motion at 5-10. |
| 83.     Defendants' expert Dr. John Wilson stated in his expert report that groundwater levels in Fresno have dropped up to 40 feet since the 1980s, increasing the time it takes percolating water to reach the aquifer below. (Eickmeyer Decl., Exh. 3 [Expert Report of John L. Wilson, Ph.D.], at 17.)  Dr. Wilson's report stated: "The vadose zone under Fresno has been roughly 100 feet thick or more for several decades, including the period of the 1990s when MTBE was used as a gasoline oxygenate."  Id. | Admit. |
| 84.     Of the more than 7,000 open sites in the California UST Clean-Up Fund, clean-up costs at 11% of the sites have been reimbursed for over $800,000, averaging $1.1 million. (Eickmeyer Decl., Exh. 6 (David Norman Depo. [Apr. 18, 2012], at 102:11-19.) Conversely, 89% of the sites have been reimbursed $800,000 or less. (Id. at 102:20-24.) | Admit that the City's expert testified regarding the subject facts.  But the City's expert's generic opinions about the average reimbursement cost at remediation sites in the California UST Clean-up Fund are irrelevant here.  These costs have nothing to do with the Sites at issue and are not specific to MTBE. With respect to the specific Sites, the City's expert testified that he lacked sufficient information to recommend remediation at any of the Sites, and therefore he could not state whether future remediation at any of the sites will be reasonable or what it would cost. (Anderson Decl., Ex. 7, Norman Dep. 29:16–30:1, 33:4–34:25, Apr. 18, 2012.) |
| 85.     MTBE impacts at the Fresno station sites at issue in defendants' Motion can be reasonably abated.  (Motion, at 19, n. 19.) | Reasonable abatement has already occurred and most Sites have received closure. Defendants have no information on which to conclude that additional remediation is necessary or reasonable, and neither the City nor its expert have opined on the extent of remediation that they claim would be needed to abate the Sites, if any; therefore Defendants deny this allegation.  In addition, Defendants object that whether the Sites can be "reasonably abated" calls for a legal conclusion |

| ADDITIONAL MATERIAL FACTS ASSERTED BY PLAINTIFF | DEFENDANTS' RESPONSE AND OBJECTIONS |
|---|---|
|  | that is based on site-specific facts, which the City has not identified or submitted. |

## DEFENDANTS' ADDITIONAL MATERIAL FACTS

In the City's Opposition to Defendants' Motion, the City makes the remarkable claim that "Fresno is not charged with managing a groundwater basin" and "Fresno does not have the same special statutory responsibility to protect groundwater as the District." Opp. at 11. Not surprisingly, there is no statutory or evidentiary cite for these misleading statements. Defendants respectfully submit to the Court the facts below that show that the City is in fact charged with protecting the groundwater.[4]

86.     As an "urban water supplier" the City must develop and implement a water management plan "to protect both the people of the state and their water resources," including identifying and quantifying the existing and planned sources of water and developing plans to replace a source or implement water demand management measures where environmental or water quality factors interfere with usage. (J. Anderson Supp. Decl., dated March 22, 2013 ("Anderson Supp. Decl."), Exh. A, California Historical Statutes, Water Code §§ 10610.4, 10631(b), (c), (g).) The statutory provisions described in this Paragraph have been effective at all relevant times, including prior to October 22, 2000. *Id.* Portions of Section 10631(b), (c), (g)

---

[4]     *See Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226–27 (2d Cir. 2000) ("[R]eply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party"); *Briese Lichttechnik Vertriebs v. Langton, B2PRO, and Key Lighting, Inc.*, No. 09 Civ. 9790, 2012 WL 5457681, at *6-7 (S.D.N.Y. Nov. 8, 2012) (party may submit additional exhibits in support of reply in response to opposing party's argument).

have been amended and/or re-organized over time, but those changes are not material or relevant to Defendants' Motion for Summary Judgment.

87.     The City is required to undertake its responsibilities "so that major consideration is given to preventing environmental damage." Cal. Pub. Res. Code §§ 21000 *et seq*. (California Environmental Quality Act) (West 2012); § 21000(g).  The provision of the California Environmental Quality Act quoted in this Paragraph has been effective since prior to October 22, 2000.

88.     In 1992, the City co-authored the Fresno/Clovis Metropolitan Water Resources Management Plan (Phase I), which states that the City's objectives include to "protect groundwater quality from further degradation," "provide safe, adequate, and dependable water supplies to meet the future needs of the metropolitan area," undertake further analysis of hydrogeologic conditions in the basin, and determine "the best location for additional basin recharge facilities." (Anderson Supp. Decl., Exh. A, Fresno/Clovis Metropolitan Water Resources Management Plan, Phase I Report, Existing Water Supply System Assessment, (January 1992) (FRESNO-MTBE-13508, 13518, 13524-13526).)

89.     The City's current Urban Water Management Plan reiterates the City's responsibility to "preserve and enhance the existing quality of the area's groundwater" and "manage groundwater resources to the extent necessary to ensure reasonable, beneficial, and continued use of the resource." (Anderson Supp. Decl., Exh. A, 2010 Urban Water Management Plan, Chapter 4.1.2.2 (Prepared for City of Fresno November 2012),

http://www.fresno.gov/Government/DepartmentDirectory/PublicUtilities/Watermanagement/imp ortantdocuments.htm (last visited March 20, 2013).)  The City of Fresno 2010 Urban Water Management Plan (noting that "the October 2005 Memorandum of Understanding between the

participating agencies [in the Fresno Area Regional Groundwater Management Plan (2006)]) makes it clear that each participating agency [including the City of Fresno] retains authority and responsibility for groundwater management within its own jurisdiction"). *Id.*

90.     Brock Buche, one of the City's corporate representative on damages, testified that the City's "higher calling is to protect and preserve the groundwater supply." (Anderson Supp. Decl., Exh. A, Buche Dep. 367:23-368:16.)

Dated:  March 22, 2013,

Respectfully submitted,

KING & SPALDING LLP[5]


Robert E. Meadows
Jeremiah J. Anderson
1100 Louisiana, Suite 4000
Houston, Texas 77002
Tel: (713) 751-3200
Fax: (713) 751-3290

Charles C. Correll Jr.
101 Second Street, Suite 2300
San Francisco, California  94105
Tel: (415) 318-1200
Fax: (415) 318-1300

*Attorneys for Defendants*
*Chevron U.S.A. Inc. and Union Oil*
*Company of California*

---

[5]   The following page contains a list of Defendants who have joined in filing Defendants'
Reply in Support of Motion for Summary Judgment based on the Statute of Limitations.

**DEFENDANTS JOINING REPLY TO PLAINTIFF CITY OF FRESNO'S LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS SUBMITTED IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT  BASED ON THE STATUTE OF LIMITATIONS**

CHEVRON U.S.A. INC

UNION OIL COMPANY OF CALIFORNIA

SHELL OIL COMPANY

TEXACO REFINING AND MARKETING INC.

EQUILON ENTERPRISES LLC

EQUIVA SERVICES LLC

CITGO PETROLEUM CORPORATION

KERN OIL & REFINING CO.

NELLA OIL COMPANY

LYONDELL CHEMICAL COMPANY (FORMERLY KNOWN AS ARCO CHEMICAL COMPANY)

COASTAL CHEM, INC.

TESORO CORPORATION (FORMERLY KNOWN AS TESORO PETROLEUM CORPORATION)

TESORO REFINING AND MARKETING COMPANY (ERRONEOUSLY NAMES AS TESORO REFINING AND MARKETING COMPANY, INC.)

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of March 2013, a true, correct, and exact copy of the foregoing document was served on all counsel via LexisNexis File & Serve.

Jeremiah J. Anderson