UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE:  METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION | : : : : : | Master File No. 1:00–1898 MDL 1358 (SAS) M 21-88 |
| This document relates to: | : : | |
| *City of Fresno v. Chevron U.S.A., Inc., et al.,* Case No. 1:04-cv-04973 | : : : : | |

**PLAINTIFF CITY OF FRESNO'S LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS SUBMITTED IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR LACK OF EVIDENCE PERTAINING TO CAUSATION**

Pursuant to Local Rule 56.1, plaintiff City of Fresno (the "City") submits this statement of rebuttal and additional material facts for which the City contends there is a genuine issue to be tried in support of the City's opposition to certain defendants' motion for partial summary judgment of the City's nuisance claims for six gasoline stations in the City of Fresno.

### The City of Fresno's Allegations Against the Defendants

1.     The City denies that the First Amended Complaint was filed on October 28, 2004, but was instead filed on November 18, 2004.  (Axline Decl., Ex. 1 [First Amended Complaint].) Admit the remainder of paragraph 1.

2.     Admit that the City alleges that defendants are refiners, distributors or suppliers of MTBE or gasoline containing MTBE, who knew or should have known that MTBE gasoline would be discharged from retail gasoline stations, enter public water supplies, and render drinking water unusable and unsafe.  Deny that these are the only allegations in Plaintiff's First

1

Amended Complaint.  (Axline Decl., Ex. 1.)

3.      The City admits that it completed a Station Matrix *at the request* of defendants in this matter.   The City contends that such a Station Matrix cannot, and does not, fully reflect the City's allegations and evidence.

4.      Admit.

5.      Admit to the extent that the chart identifies parties to be dismissed (nuisance only) but deny the implication that Plaintiff's nuisance claims against all defendant regarding the identified stations are to be dismissed.

6.      Admit.

7.      Admit.

8.      Admit.

9.      The City admits that it agreed to dismiss certain claims against certain defendants as to certain stations.

10.      Admit.

## The Moving Defendants

## Coastal Chem, Inc.

11.      Admit.  The City has identified Coastal Chem, Inc. ("Coastal") as a manufacturer/supplier of neat MTBE to defendants who refine and distribute MTBE gasoline in California, including defendants who refine and distribute MTBE gasoline to Fresno gasoline stations.  (Axline Decl., Ex. 1.)

12.      The City cannot admit or deny.  Liability of Coastal, is based upon Coastal's supplying neat MTBE to Chevron and Exxon for use in gasoline delivered into Fresno.  Both

Exxons and Chevron's discovery responses identified Coastal Chem as a supplier of neat MTBE to their respective Northern California refineries, which produced MTBE gasoline sold in Fresno. (Axline Decl. at Ex. 38 [Defendant Exxon Mobil Corporation's Supplemental Responses to Plaintiff City of Fresno's First Set of Interrogatories at Resp. to Interrogatory No.6, p.14-15]; Ex. 9 [Further Response of Defendant Chevron U.S.A. Inc. to Plaintiffs' Preliminary Set of Interrogatories re: Defendant Identification (8/30/04) at Resp. to Interrogatory No. 2, p. 9.) Exxon purchased MTBE from Coastal for California in 1994 and 1997-1998. (Axline Decl., Ex. 15 at Attachment B [Defendant ExxonMobil Corporations Responses and Objections to Plaintiff's Preliminary Set of Interrogatories Regarding Defendant Identification].) Chevron purchased MTBE from Coastal from August to December 1993. (Axline Decl., Ex. 9 [Further Response of Defendant Chevron U.S.A. Inc. To Plaintiffs' Preliminary Set of Interrogatories re: Defendant Identification (8/30/04) at Resp. to Interrogatory No. 2, p.9].)

13.     Admit.

14.     The City admits that it has not alleged that Coastal Chem refined gasoline, but that  Coastal Chem has manufactured and distributed neat MTBE to defendants

## The Duke Defendants

15.     Admit.  The City alleges that Duke sold "neat" MTBE to Valero from 2000 through 2003. (Axline Decl., Ex.10, Valero Defendants' Answers and Objections to Plaintiffs' Preliminary Set of Interrogatories (Re: Defendant Identification), at 8.)  Duke admits it sold MTBE gasoline to jobber Total Energy during the relevant time period. (Mot. at 13.)  Duke also concedes that the Valley Gas station at 2139 South Elm Street received gasoline from Southern Counties Oil (d/b/a Total Energy).  (Mot. at 12.)  Several witnesses testified that Total Energy

also delivered gasoline to the Valley Gas station.  (Axline Decl., Ex. 14, I. Ahmad Depo., at

25:3-6; Ex. 28, S. Ahmad Depo., at 16:19-17:8.)

16.    Admit.

17.    Deny.  Exhibit attached to Defendants' Declaration were not disclosed to Plaintiff

in discovery.

18.    Deny.  Exhibit attached to Defendants' Declaration were not disclosed to Plaintiff

in discovery.

19.    Deny.  Exhibit attached to Defendants' Declaration were not disclosed to Plaintiff

in discovery.

20.    Deny.  Exhibit attached to Defendants' Declaration were not disclosed to Plaintiff

in discovery.

21.    Deny.  Exhibit attached to Defendants' Declaration were not disclosed to Plaintiff

in discovery.

22.    Deny.  Exhibit attached to Defendants' Declaration were not disclosed to Plaintiff

in discovery.

23.    Deny.  Exhibit attached to Defendants' Declaration were not disclosed to Plaintiff

in discovery.

24.    Deny the implication that DEM and Northridge sold MTBE gasoline only

between 1996 and 2003; admit the remaining paragraph.

### Kern Oil & Refining Co.

25.    Admit that Plaintiff alleges that Kern Oil & Refining Co. supplied neat MTBE to

Shell Oil Company, Equilon Enterprises LLC, Equiva Services LLC, and Texaco Refining and

Marketing Inc. some time since approximately 1996. Deny that the "only evidence to support this allegation is the Shell Defendant's Response to Interrogatory Nos. 2 contained within the Shell Defendants' Responses to Plaintiff's First Set of Interrogatories." (Axline Decl., Ex. 3 [Letter from M. Axline and E. Eickmeyer to Brian Ledger (Mar. 6, 2013)].) Shell supplied multiple gasoline stations in Fresno including M&S Texaco and Shell #1212. M&S Texaco became a Shell-branded station in 1998 and remained Shell-branded until at least 2009. (Axline Decl., Ex. *, Shell Defendants' Responses to City of Fresno's First Set of Interrogatories to Defendants, Exh. B, at 8; Ex. *, Jatinder Dhillon Depo., at 29:20-23, 39:5-10, 39:19-21.) Shell #1212 was Shell branded from the 1960's through 1998. (Axline Decl., Ex. *, Moe Depo., at 12:11-22, 13:7-12, 44:16-21.) Shell owned the underground storage tanks, piping, real property, and station building from at least 1994 or 1995 through 1998. (Axline Decl., Ex. *, Bryan Depo., at 13:13-14:3.)

26.     Admit that Plaintiff alleges that Kern supplied neat MTBE to Chevron U.S.A. Inc. from August, 1989 to October, 1989. Deny that the "only evidence to support this allegation is Chevron's Response to Interrogatory No. 2 contained within The Further Response of Chevron U.S.A. Inc. To Plaintiff's Preliminary Set of Interrogatories Re: Defendant Identification." (Axline Decl., Ex. 3 [Letter from M. Axline and E. Eickmeyer to Brian Ledger (Mar. 6, 2013)].)

27.     Admit that Plaintiff alleges that Kern supplied neat MTBE to Valero from 2000 through 2003. Deny that the "only evidence to support this allegation is the Valero Defendants' Response to Interrogatory No. 2 contained within Valero Defendants' Response to Interrogatory No. 2 contained within Valero Defendants' Answers and Objections To Plaintiff's Preliminary Set of Interrogatories Re: Defendant Identification." (Axline Decl., Ex. 3 [Letter from M. Axline

5

and E. Eickmeyer to Brian Ledger (Mar. 6, 2013)].)

28.     Admit that Plaintiff alleges that Chevron, Shell, and Valero blended the Kern-supplied MTBE ("Kern-MTBE") into gasoline that was then supplied to the Gresno terminals, where it became part of a commingled product that was distributed to" . . . . "stations in the Fresno area." Deny that there are only "thirteen stations" instead of fourteen stations (Axline Decl., Ex. 3 [Letter from M. Axline and E. Eickmeyer to Brian Ledger (Mar. 6, 2013)].)

29.     Admit.

30.     Deny. Chevron, Shell, and Valero each identified Kern Oil as a supplier of neat MTBE in their discovery responses. (Axline Decl., Ex. 9.) The Further Response of Defendant Chevron U.S.A. Inc. to Plaintiffs' Preliminary Set of Interrogatories re: Defendant Identification shows that Chevron purchased MTBE from Kern Oil from August to October 1989. (Axline Decl, Ex. 9, at 11). Similarly, The Shell Defendants' Responses to Plaintiff's First Set of Interrogatories lists Kern Oil as being a supplier of neat MTBE to Shell since approximately 1996. (Axline Decl, Ex. 39, at 8.) Finally, the Valero Defendants' Answers and Objections to Plaintiffs' Preliminary Set of Interrogatories (Re: Defendant Identification) shows that Kern Oil supplied MTBE to (Ultramar) from 2000 through 2003. (Axline Decl, Ex. 10, at 9.) Each of these refiner defendants supplied the stations at issue as explained in more detail below.

### The Tesoro Defendants

31.     Admit.

32.     Deny. Exhibit attached to Defendants' Declaration were not disclosed to Plaintiff in discovery.

33.     Deny. Exhibit attached to Defendants' Declaration were not disclosed to Plaintiff

6

in discovery.

34.     Admit that Tesoro sold MTBE gasoline to jobbers at terminals. Deny. Exhibit attached to Defendants' Declaration were not disclosed to Plaintiff in discovery.

35.     Deny. Exhibit attached to Defendants' Declaration were not disclosed to Plaintiff in discovery.

36.     Deny. Exhibit attached to Defendants' Declaration were not disclosed to Plaintiff in discovery.

37.     Admit.

### Red Triangle (2809 S. Chestnut)

38.     Plaintiff admits that Defendant Tesoro lists Red Triangle as a jobber for the 2809 S. Chestnut station. Plaintiff denies the remainder of the paragraph. With respect to the Red Triangle station at 2809 South Chestnut, Gail Blue recalled Tesoro gasoline being delivered. (Axline Decl., Ex. 22, Blue Depo., at 17:12-14, 17:16-17, 18:1-3.) In addition to this testimony, bills of lading and highway receipts provided by Red Triangle show Tesoro gasoline was delivered to the Red Triangle station. (*See, e.g.,* Axline Decl., Ex. 46, REDTRIANGLE-SHE-000052-53, 0000990-91, 000101-102, 000126-127.) Since 100% of the gasoline supplied to the Red Triangle station came from the Fresno terminal, and Tesoro was a major supplier at the terminal, even without jobber and operator testimony a reasonable jury could conclude that Tesoro gasoline was delivered to the Red Triangle station during the relevant time period.

39.     Plaintiff admits that records produced by Red Triangle indicate Tesoro gasoline was delivered to the Red Triangle station in 2003. Plaintiff denies the remaining paragraph because it cites to an unidentifiable reference.

## U&A (2929 N. Blackstone) and Valley Gas (2139 South Elm)

40.    Admit that plaintiff identified Southern Counties.  With respect to the U & A

station, Southern Counties (Total Energy) a jobber used by Tesoro for many years, supplied

gasoline to the station.  (Axline Decl., Ex. 37, Balder Singh Sandhu Depo. at 31:18-21, 33:6-8,

46:16-17, 46:20-47:6, 47:9-10, 49:13-15, 49:18.)  Similarly, with respect to Valley Gas, several

witnesses testified that Southern Counties (Total Energy), the jobber used by Tesoro, delivered

gas to this station.  (Axline Decl., Ex. 14, I. Ahmad Depo. at 25:3-6; Ex. 28, S. Ahmad Depo. at

16:19-17:8.)  Plaintiff denies that its identification of Southern Counties implied that this was the

"only" jobber who delivered gasoline manufactured by Tesoro to this station.

41.    Admit that Plaintiff's Responses to Interrogatories include that "1) Tesero sold

gasoline  to Southern Counties d.b.a. Total Energy Products, 2) Total Energy Products had

authority to supply Tesero branded fuels to stations in Fresno, and 3) Total Energy supplied

gasoline to the U&A and Valley Gas stations," but deny that these were the "only purported

facts" in Plaintiff's Responses.

42.    Deny. *See* Response to ¶ 40.

43.    Deny. *See* Response to ¶ 40.

44.    Plaintiff denies this fact as irrelevant since plaintiff is entitled to introduce any

evidence concerning deliveries and is not limited to "documents."

## Valero

45.    Admit.  The Valero Defendants' Objections and Responses to Plaintiff City of

Fresno's First Set of Interrogatories to Defendants ("Responses to First Set of Interrogatories"),

however, stated that the Valero (Ultramar) Defendants supplied gasoline containing MTBE to

8

Fresno customers prior to the year 2000. (Axline Decl., Ex. 6, Responses to First Set of

Interrogatories, at Exh. A.) Valero's interrogatory responses indicate that it sold significant

volumes of gasoline in Fresno from 1996 through 2003. (*Id.* at Interrogatory No. 10.)

     46.    Deny. Exhibit attached to Defendants' Declaration were not disclosed to Plaintiff

in discovery. However, Plaintiff states that the Valero Defendants previously admitted that,

"Ultramar ceased the [] wholesale/bulk and/or selling activity on or about July 1, 2002, when this

activity was undertaken by Valero Marketing and Supply Company ("VMSC"), an indirectly held

subsidiary." (Axline Decl. at Ex. 4 [Defendant Ultramar, Inc.'s Disclosure Pursuant to June 9,

2005 Directive as Amended by the Court on August 12, 2005 at para 2A Response.] Valero

(Ultramar) Defendants also admit to selling 2-3 million barrels of gasoline containing MTBE

within Fresno County each year from 1997 to 2000, with a smaller amount sold in 1996. (Axline

Decl., Ex. 6, Responses to First Set of Interrogatories, at Response to Interrogatory No. 10.)

     47.    Deny. *See* Response to ¶ 46

     48.    Deny. *See* Response to ¶ 46

     49.    Deny. *See* Response to ¶ 46

     50.    Plaintiff admits that Ultramar Inc. merged with Diamond Shamrock to form

Ultramar Diamond Shamrock Inc., and that Ultramar Diamond Shamrock Inc. then merged with

and into Valero Energy Company in 2001. Deny the remaining paragraph because the exhibit

attached to Defendants' Declaration were not disclosed to Plaintiff in discovery. The Valero

(Ultramar) Defendants previously admitted that, "Ultramar ceased the [] wholesale/bulk and/or

selling activity on or about July 1, 2002, when this activity was undertaken by Valero Marketing

and Supply Company ("VMSC"), an indirectly held subsidiary." (Axline Decl. at Ex.4

[Defendant Ultramar, Inc.'s Disclosure Pursuant to June 9, 2005 Directive as Amended by the Court on August 12, 2005 at para 2A Response.]

      51.    Deny. *See* Response to ¶ 46

## The Sites at Issue

### Tosco #30587, 1610 N. Palm Avenue

      52.    Admit.

      53.    Deny.  Union Oil branded gasoline was supplied to this site from approximately 1974 until at least 1998-1999.  (Axline Decl., Ex. 5, Beacom Depo., at 13-15, 47, 157-158.) Union Oil owned the USTs at this site from at least 1974 until at least 1998-1999.  (Axline Decl., Ex. 5, Beacom Depo., at 84-85.)  Union Oil purchased Chevron gasoline in California from 1989 through 1997.  (Axline Decl., Ex. 21, Union Oil's Supplemental Responses to 1st Interrogatories at Resp. to Interrogatory No. 1.)

      54.    Admit.

### Beacon #3519, 4591 E. Belmont Avenue

      55.    Admit.  Valero (Ultramar) leased Beacon #3519 from 1971-1999.  (Axline Decl., Ex.. 6, Valero's Responses to First Interrogatories at Interrogatory No. 3.)   Valero (Ultramar) had a retail supply contract with Beacon #3519, 10/20/99 to the present.  (Id. No. 4 [referenced as Beacon #4984].)  The Declaration of the Valero Defendants in Anticipation of 30(b)(6) Deposition establishes that Arco-branded gasoline was purchased from Ultramar, Inc., and Valero Marketing and Supply Company from September 22, 1999, through December 31, 2003, for resale at the station.  (Axline Decl., Ex. 36.)

      56.    Admit.

57.     Denied.  As Marcel Moreau explains, during the time that MTBE gasoline was in use at this station, releases of gasoline were routine, due not only to the ineffectiveness of underground storage tanks, piping systems to dispenser islands, and dispensers themselves, but also due to vapor leaks, individually small but cumulatively significant releases that occur during fuel deliveries, and customer overfilling and dripping during fueling.  (Axline Decl., Ex. 12, Moreau Report, sections I, II, and V.)  As defendants' own expert Sam Williams testified:  "I don't know, except under certain specific sites, when an individual release occurred.  The release occurred over a certain time period, usually during the period from '92 to '97 or '98 or '99 . . . ." (Axline Decl., Ex. 13, June 7, 2012, Deposition of Sam Williams, at 101:12-16.)

58.     Admit.

59.     Deny.

### Beacon-ARCO #615, 1625 Chestnut Avenue

60.     Admit.  Valero (Ultramar) leased Beacon-Arco #615 from July 24, 1998, to the date of their discovery responses.  (Axline Decl., Ex. 6, Responses to First Set of Interrogatories, at Response to Interrogatory No. 3.)

61.     Admit.

62.     Admit.

63.     Admit.

64.     Admit.

65.     Deny because the Defendant's assertion that "Mr. Moreau did not identify any MTBE releases as having occurred at Beacon-Arco #615 mischaracterizes the testimony and report of Mr. Moreau.

66.     Deny.  Valero (Ultramar) supplied gasoline containing MTBE to Red Triangle from 1997 through 2002.  (Axline Decl., Ex. 6, Valero Defendants' Objections and Responses to Plaintiff City of Fresno's First Set of Interrogatories to Defendants, first page of Ex. A [Red Triangle is listed alphabetically as "DBA RED TRIANGLE OIL CO."].)

<u>Valley Gas, 2139 South Elm</u>

67.     Admit.

68.     Deny "at the time of the sale, there was no petroleum contamination at the site". Admit the remaining allegations.

69.     Deny the statement that "Mr. Moreau does not attribute any MTBE contamination at Valley Gas to Ultramar's former ownership of the site."  Mr. Moreau's report explains that MTBE releases likely occurred intermittently between the Fall of 1992 and 2003.  (Axline Decl., Ex. 19, Marcel Moreau report.)  Admit the remaining paragraph.

70.     Admit.  Duke sold "neat" MTBE to Valero (Ultramar) from 2000 through 2003. (Rule 56.1 St. at ¶ 15.)  Valero (Ultramar) also supplied gasoline to this station.  The Declaration of the Valero Defendants in Anticipation of 30(b)(6) Deposition provides that Ultramar maintained a branded relationship with the station from November 1, 1991, until May 31, 1994, whereby the station purchased Beacon-branded gasoline.  (Axline Decl., Ex. 36.)  After the site was purchased from Ultramar, Beacon and Ultramar gasoline were delivered to the station. (Axline Decl., Ex. 14, Ahmad Depo., at 139:9-11.)  Mr. Ahmad testified there was a brand distribution marketing agreement between Petro Group II and Beacon that prohibited him or Petro Group from buying gasoline from anyone other than Ultramar.  (*Id.* at 139:13-25, 140:7-8.) The brand name agreement ceased in 1995.  (*Id.* at 140:7-15.)  The Valero Defendants' collective

discovery responses stated that the Valley Gas site was formerly Beacon #538. (Axline Decl., Exh. 6, Responses to First Set of Interrogatories, at Response to Interrogatory No. 3.)

As noted above, while branded Valley Gas, the station received gasoline supplies from Total Energy and Sabek Oil. (Axline Decl., Ex. 14, Ahmad Depo., at 25:3-6.) The Valero Defendants' collective discovery responses listed Southern Counties Oil (dba Total Energy) as a jobber from 1997 through 2002. (Axline Decl., Ex. 6, Responses to First Set of Interrogatories, at Response to Interrogatory No. 5.) During this time period, a line leak was discovered in October 1999, and a soil sample taken after a hole in a pipe was discovered and repaired in November 1999 was found to contain 920,000 ppb MTBE. (Axline Decl., Ex. 19 [M. Moreau Report at 3.)

71.    Admit.

72.    Admit.

73.    Admit.

74.    Admit.

75.    Denied. Mr. Moreau's report explains that MTBE releases likely occurred intermittently between the Fall of 1992 and 2003. (Axline Decl., Ex. 19 [M. Moreau Report at 4.) Admit the remaining paragraph.

76.    Deny.

Chevron #9-4374, 1160 Fresno Street

77.    Chevron currently manages remediation for this site, which is referenced in Chevron, Regional Board, and County DEH documents as a Chevron branded station. (Axline Decl., Ex. 33, Thomas Baughs Depo., at 24-25, 27, 42, and Exhibits 4-69 thereto.) As a Chevron

13

branded station, Chevron gasoline would have been supplied to the site.  (Axline Decl., Ex. 34, D. Benjamin Depo., at 21-22; Ex. 35, E. Pursell Depo. at 19.)

78.     *See* Response to ¶ 77.

<u>Unocal #6353, 1418 E. Shaw</u>

79.     Admit.  The site was branded Union Oil from before the early 1990's until at least 1997.  (Axline Decl., Ex. 5, Beacom Depo., at 13-15, 47, 157-158.)  Union Oil owned the USTs at the site from at least the early 1990's until at least 1997.  (*Id.* at 32-33.)  Union Oil branded gasoline was supplied to this site from at least the early 1990's until at least 1997.  (*Id.* at 13-15.)  Union Oil purchased Chevron gasoline in California from 1989 through 1997.  (Axline Decl., Ex. 21, Union Oil's Supplemental Responses to First Interrogatories at Resp. to Interrogatory No. 1.)

80.     Admit.

<u>Van Ness Auto, 2740 N. Van Ness</u>

81.     Admit.  Chevron supplied gasoline to this site from prior to the relevant time period until at least August 1986.  Subsequently, R.V. Jensen delivered gasoline refined by Chevron from 1986 until at least 2006.  This included the time period in which Coastal supplied MTBE to Chevron.  (Axline Decl., Ex. 26, Clements Depo., at 25-27; Ex. 27, Bedirian Depo., at 37; Ex. 7, Chevron U.S.A. Inc.'s Supply Declaration of Frank G. Soler and exhibits thereto.)

82.     Admit.

<u>Red Triangle Oil, 2809 South Chestnut</u>

83.     Admit.

84.     Plaintiff denies this paragraph because Defendant cites and relies on a declaration,

without supporting documentation, that was not previously disclosed to Plaintiff. Red Triangle nonetheless was an Exxon dealer and bought gasoline from Exxon. (Axline Decl., Ex. 22, Blue Depo., pp. 16:18-17:14, 17:16-22, 18:23-19:2; Ex. 23, Blue Depo., pp. 22:4-6, 22:8-12, 22:14-20.) The East Tulare Street Exxon station sold Exxon-branded gasoline from 2002 or 2003 until 2006. (Axline Decl., Ex. 24, Singh Depo., pp. 22:7-12, 25:18-24, 28:21-25, 29:17-21.) Mr. Shehadey produced bills of lading and highway transportation receipts showing deliveries by Red Triangle to Fleet Card Fuels at 2809 South Chestnut Avenue. (Axline Decl., Ex. 11.) All of the gas delivered by Red Triangle to 2809 South Chestnut Avenue came from the Fresno terminal, because they were in such close proximity, only about 2 miles apart. (Axline Decl., Ex. 11.) Mr. Shehadey's testimony and production establish that gasoline containing MTBE was picked up at the Kinder Morgan terminal by Red Triangle, then delivered to 2809 South Chestnut Avenue. (Axline Decl., Ex. 11.)

85.     Duke's Motion (at 16) acknowledges that Duke sold MTBE gasoline to InterCity Petroleum Products, dba Red Triangle, during the relevant time period. In fact, Duke acknowledges that there were some 290 sales of gasoline to Red Triangle in 2000-2002.

86.     Admit. Plaintiff contends that this fact is irrelevant since defendants do not demonstrate that Red Triangle distributed gasoline from its bulk facilities to any gasoline station at issue in Fresno.

87.     Deny. With respect to the Red Triangle station, Exxon identified Valero (Ultramar) as a jobber used by Exxon in the Fresno area through at least September 2001. (Axline Decl., Ex. 25, Exxon's Response to First Interrogatories at Interrogatory No. 5.) Exxon began putting MTBE in its gas in 1992. Valero's interrogatory responses indicate that it sold

significant volumes of gasoline in Fresno from 1996 through 2003.[1]  (Axline Decl., Ex. 6, Valero

Response to First Interrogatories at No. 10.)  Valero (Ultramar) supplied gasoline containing

MTBE to Red Triangle from 1997 through 2002.  (*Id.* at Ex. A, p. 1 [Red Triangle is listed

alphabetically as "DBA RED TRIANGLE OIL CO."].)  After James Shehadey's purchase of Red

Triangle in 2002, Valero (Ultramar) remained as one of the main suppliers of gasoline to Red

Triangle in 2002-2003.  (Axline Decl., Ex. 30, Hohenshelt Depo., at 32, 34, 83; Ex. 11, Shehadey

Depo., at 133-134 ["It was actually Valero refined . . . ."]).

88.    Plaintiffs cannot admit or deny this fact because it is a partially inaccurate

statement and misrepresents the testimony and evidence.

89.    Plaintiff cannot admit or deny this fact because plaintiff is entitled to prove its

case through multiple lines of evidence and its not limited to or by the lack of documents.

90.    Plaintiffs cannot admit or deny this fact because it is a partially inaccurate

statement and misrepresents the testimony and evidence.

91.    Plaintiff denies that Mr. Moreau only identified releases attributable to gasoline

---

[1]  Valero and Ultramar submitted a unified response to interrogatory requests, and the
City has relied on these discovery responses in identifying "Valero" as a supplier prior to 2000.
Although Valero subsequently argued that it did not come into the California market as "Valero"
until 2000, Valero's and Ultramar's responses to this Court's orders, and to other discovery,
reveal that Ultramar ultimately merged into Valero Energy Corp.  Since Ultramar became Valero
in 2000 through merger, references to Valero simply use the current name of the entity that was
then known as Ultramar.  Defendants' Statement of Facts for their nuisance motion admits that
the Valero defendants' history can be traced back to Beacon Oil Company, which was acquired
by and merged into Ultramar Inc. in 1989.  (SSUF para. 50.)  Ultramar then merged with
Diamond Shamrock, Inc. to form Ultramar Diamond Shamrock Inc. in 1996.  (*Id.*)  Ultramar
Diamond Shamrock Corp. then merged with and into Valero Energy Corp. on December 31,
2001.  (*Id.*)  With each merger, the successor company assumed the liabilities of the merging
entities.  See *Ray v. Alad Corp.* (1977) 19 Cal.2d 22, 28, 560 P.2d 3, 7.  Ultramar Inc. is now
known as Valero Energy Corp., and Ultramar's liability rests with Valero.

storage tanks associated with the bulk plant. Defendants statement of facts misinterprets Mr. Moreau's report. Plaintiff admits that Mr. Moreau, in fact, identified releases associated with the retail portion of the Red Triangle site.

92.     Deny. Valero (Ultramar) supplied gasoline containing MTBE to Red Triangle from 1997 through 2002. (Axline Decl., Ex. 6, Valero Defendants' Objections and Responses to Plaintiff City of Fresno's First Set of Interrogatories to Defendants, first page of Exhibit A [Red Triangle is listed alphabetically as "DBA RED TRIANGLE OIL CO."].) After James Shehadey's purchase of Red Triangle in 2002, Valero remained as one of the main suppliers of gasoline to Red Triangle in 2002-2003. (O'Reilly Decl., Exh. 7, Joel Hohenshelt Depo., at 32, 34, 83; O'Reilly Decl., Exh. 11, James Shehadey Depo., at 133-134 ["It was actually Valero refined . . . ."]). Mr. Shehadey's documents show that Nella Oil was a shipper of gasoline to Red Triangle. (Axline Decl., Ex.. 11, Shehadey Depo., at 30:14-25, 31-32, and Ex. 5.) The Valero (Ultramar) Defendants list Nella Oil as a jobber from 1997 through 2003. (Axline Decl., Ex. 6, Responses to First Set of Interrogatories, at Response to Interrogatory No. 5.)

### Chevron #9-9093, 3996 N. Parkway Drive

93.     Admit.

94.     Admit that Chevron supplied gasoline to Chevron 9-9093, 3996 N. Parkway Drive from prior to the relevant time period until at least 1998. (Axline Decl., Ex.. 7, Chevron U.S.A. Inc.'s Supply Declaration of Frank G. Soler and Ex.ibits thereto.)

### Tosco #39118, 1605 N. Cedar

95.     Admit that Union Oil owned the USTs and the real estate at Tosco #39118, 1605 N. Cedar, from prior to the relevant time period until at least April 1997. (Axline Decl., Ex. 8,

Defendant Union Oil Company of California's Declaration in Response to CMO #75 of Grace N. Chan.)

96.     Admit that Union Oil supplied gasoline to this site from prior to the relevant time period until at least November 1996. (Axline Decl., Ex. 7, Union Oil Company of California's Supply Declaration of Frank G. Soler and Exs. thereto.) Union Oil purchased Chevron gasoline in California from 1989 through 1997. (Axline Decl., Ex. 21, Union Oil's Supplemental Responses to First Interrogatories at No. 1.)

97.     Admit.

### Exxon, 4594 E. Tulare Street

98.     Admit. Ultramar leased Tulare Exxon through its Beacon acquisitions from January 22, 1985, through August 28, 1995. (Axline Decl., Ex. 6, Valero's Responses to First Interrogatories No. 3 [referenced as Beacon #620].) Accordingly, Valero (Ultramar) would have successor liability.

99.     Admit.

100.    Admit. This site, however, was a Circle K site beginning in 1999, shortly after Coastal Chem supplied neat MTBE to Exxon. Three jobbers delivered gasoline to this site: El Monte Gas, Julien Oil Company, and Boyett Petroleum.   (See para. 103.)

101.    Admit.

102.    Admit. Plaintiff also states that Mr. Moreau opined that spills or leaks occurred on a regular basis. (Axline Decl., Ex. 19 at 4.)

103.    Admit.

104.    Admit.

18

98.    [sic.]  Deny.  Valero (Ultramar) supplied gasoline containing MTBE to Red

Triangle from 1997 through 2002.  (Axline Decl., Ex. 6, Valero Defendants' Objections and

Responses to Plaintiff City of Fresno's First Set of Interrogatories to Defendants, first page of

Exhibit A [Red Triangle is listed alphabetically as "DBA RED TRIANGLE OIL CO."].)

## ADDITIONAL MATERIAL FACTS

105.    During the time that MTBE was present in gasoline in Northern California five

refineries, all located in Northern California, supplied gasoline, including MTBE gasoline, to the

Northern California Region where Fresno is located.  Dickman Lum, the California Air

Resources Board employee charged with enforcing gasoline composition regulations, testified

that Northern California gasoline is supplied by five Bay Area refineries and these refineries were

owned during the relevant time period by Exxon, Chevron, Shell, Unocal, and Tosco.  (Axline

Decl., Ex. 17, Lum Depo. (May 10, 2001) at 44:4-45:25)

106.    Shell's refinery was located in Martinez, California.   Shell admitted that it owned

and operated two refineries, Martinez Refinery and Bakersfield Refinery, which supplied MTBE

gasoline to the City of Fresno.  (Axline Decl. at Ex. 29 [Shell Defendants' Objections and

Responses to Plaintiff City of Fresno's First Set of Interrogatories (11/10/08) at Resp. to

Interrogatory No. 6a and 6b, p. 18].)

107.    Shell's product account supervisor at the Martinez refinery, Elwanda Kovich,

testified that gasoline manufactured at the Martinez refinery was either distributed in Martinez or

shipped to the rest of Northern California via the Kinder Morgan pipeline system.  (Axline Decl.,

Ex. 28, Kovich Depo. (June 8, 1999) at 31:12-32:4, *South Tahoe*.)

108.    Shell admitted that it owned the Stockton Terminal, located at 3515 Navy Drive,

in Stockton and the Bakersfield Refinery Terminal, located at 6451 Rosedale Highway in

Bakersfield, CA, both of which served the City of Fresno. (Axline Decl. at Ex.29 [Shell

Defendants' Objections and Responses to Plaintiff City of Fresno's First Set of Interrogatories

(11/10/08) at Resp. to Interrogatory No. 7, p. 20-21].)

      109.    Shell admitted that it shipped gasoline to Kinder Morgan's Fresno terminal and

that gasoline from this terminal served the City of Fresno. (Axline Decl. at Ex. 29 [Shell

Defendants' Objections and Responses to Plaintiff City of Fresno's First Set of Interrogatories

(11/10/08) at Resp. to Interrogatory No. 8, p. 22]; and Axline Ex.39 [the Shell Defendants'

Responses to Plaintiff's First Set of Interrogatories (8/30/04) at Resp. To Interrogatory No. 3,

p.9].)

      110.    Chevron's refineries were located in Richmond, California and El Segundo

Refinery. Chevron admitted that its Richmond Refinery supplied MTBE gasoline to terminals

used to distribute gasoline to the City of Fresno. (Axline Decl. at Ex.9 [Further Response of

Defendant Chevron U.S.A. Inc. To Plaintiffs' Preliminary Set of Interrogatories re: Defendant

Identification (8/30/04) at Resp. to Interrogatory No. 2, p.15].) Dixon Smith, the design engineer

for Chevron's Richmond refinery, confirmed that "Chevron is the largest refiner in California."

(Axline Decl., Ex. 44, Smith Depo. (Jan. 12, 2001) at 8:3-7,126:1-16, *South Tahoe*.

      111.    Chevron supplied gasoline products to terminals in Bakersfield, Banta, Fresno,

and San Jose to serve the City of Fresno. (Axline Decl. at Ex.9 [Further Response of Defendant

Chevron U.S.A. Inc. To Plaintiffs' Preliminary Set of Interrogatories re: Defendant Identification

(8/30/04) at Resp. to Interrogatory No. 3, p.16].)

      112.    The Exxon refinery Valero acquired in 2000 was located in Benecia, California.

Kelly Hammer, Exxon's coordinator for supplies to the Benicia refinery, confirmed that the Benicia refinery was used by Exxon to supply both branded and unbranded gasoline in Northern California, and that Exxon utilized Kinder Morgan's pipelines and terminals to supply gasoline to all areas other than Benicia.  (Axline Decl., Ex. 41, Hammar Depo. (July 1, 1999) at 5:6-8, 5:17-22, 6:1-15, 12:13-20, 13:3-21 and 15:8-14; *South Tahoe*; *see also* Ex. 43, Simonson Depo. (July 22, 1999) at 9:13-20 ["from Benicia we produce more than enough to provide all of Exxon's requirements in the North Bay."] and 26:21-24.)  Robert Simonson, employed nearly thirty-one years at the Benicia refinery, confirmed that "almost all" of the gasoline manufactured by the Benicia refinery is distributed in Northern California, and that the Benicia refinery produces approximately 10% of all gasoline in California.  (*Id.* at 3:20-4:5, 12:13-22.)

113.    Mary Morgan, Vice-President of Marketing for pipeline company Kinder Morgan Energy Partners confirmed that Chevron, Exxon and Shell each operated and owned one of five gasoline refineries in Northern California which supplied MTBE gasoline to the Northern California market through the Kinder Morgan pipelines.  (Axline Decl., Ex. 40, Morgan Depo. (July 28, 1999) at 3:17-25, 16:13-17:3 and 18:4-20, *South Tahoe*.)

114.    Thomas Hooks, a scheduler and specialist on the movement of gasoline through Kinder Morgan's Northern California pipeline and terminal system, testified that Chevron, Exxon, and Shell utilized the Kinder Morgan system to distribute gasoline from their Bay Area Refineries to terminals.  (Axline Decl. at Ex. 42, Hooks Depo. (Sept. 22, 2000) at 5:21-6:10, 6:25-7:10, 18:19-19-22, 20:2-12, 21:2-8, *South Tahoe*.)  Mr. Hooks also confirmed that each of these refiners utilizes the same system, and that when gasoline from several refiners is shipped out to a terminal, the terminal receives "a combination of several batches . . ." (*Id.* at 37:21-

38:11, and 129:16-130:13, *South Tahoe*.)  Mr. Hooks also confirmed that terminals typically

keep a ten-day supply which is continually replenished by shipments via pipeline.  (*Id.* at 159:21-

160:17.)

115.     Chevron, Exxon, and Shell were three of the five refiners which supplied the

gasoline distributed by the Kinder Morgan pipelines and terminals.  (Axline Decl., Ex. 43,

Simonson Depo. (July 22, 1999) at 22:16-21 [Exxon Benicia shipped through pipeline].)

116.     Union Oil purchased Chevron gasoline in California from 1989 through 1997.

(Axline Decl., Ex. 21, Union Oil's Supplemental Responses to First Interrogatories at Resp. to

No. 1.)


Respectfully submitted,

DATED: April 12, 2013          **MILLER, AXLINE & SAWYER**
                               A Professional Corporation

                               By: *Michael Axline*

                                   MICHAEL D. AXLINE
                                   Attorneys for Plaintiff
                                   MILLER, AXLINE & SAWYER
                                   A Professional Corporation
                                   1050 Fulton Avenue, Suite 100
                                   Sacramento, CA  95825-4225
                                   Telephone:  (916) 488-6688