UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| IN RE:  METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION | : : : : : : | Master File No. 1:00–1898 MDL 1358 (SAS) M 21-88 |
| This document relates to: | : : | |
| *City of Fresno v. Chevron U.S.A., Inc., et al.,* Case No. 1:04-cv-04973 | : : : : | |

DECLARATION OF MICHAEL D. AXLINE IN SUPPORT OF PLAINTIFF CITY OF
FRESNO'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
FOR LACK OF EVIDENCE PERTAINING TO CAUSATION
(EXHIBITS 1-10)

## DECLARATION OF MICHAEL D. AXLINE

I, Michael D. Axline, declare:

1.      I am an attorney admitted to practice law in the State of California, and I am associated with the law firm of Miller, Axline & Sawyer, attorneys for plaintiff City of Fresno in this action.

2.      All of the exhibits attached hereto are documents are drawn from the litigation files kept in the ordinary course of business at Miller, Axline & Sawyer, and were copied either by me or by someone working directly under my supervision.

3.      Attached as Exhibit 1 is a true and correct duplicate copy of the First Amended Complaint in this Action, filed on November 18, 2004.

4.      Attached as Exhibit 2 is a true and correct duplicate copy of the letter from Mike Axline and Evan Eickmeyer to Jeffrey Parker, dated February 8, 2012.

5.      Attached as Exhibit 3 is a true and correct duplicate copy of the letter from Mike Axline and Evan Eickmeyer to Brian Ledger, dated March 6, 2013.

6.      Attached as Exhibit 4 is a true and correct duplicate copy of Defendant Ultramar, Inc.'s Disclosure Pursuant to June 9, 2005 Directive as Amended by the Court on August 12, 2005.

7.      Attached as Exhibit 5 is a true and correct duplicate copy of excerpts from the transcript of the August 10, 2011 deposition of Gary Beacom.

8.      Attached as Exhibit 6 is a true and correct duplicate copy of excerpts from the Valero Defendants' Objections and Responses to Plaintiff City of Fresno's First Set of

Interrogatories to Defendants.

9.      Attached as Exhibit 7 is a true and correct duplicate copy of Chevron U.SA. Inc.'s

Supply Declaration of Frank G. Soler and exhibits thereto, dated April 18, 2011.

10.     Attached as Exhibit 8 is a true and correct duplicate copy of Defendant Union Oil

Company of California's Declaration of Grace N. Chan in Response to CMO #75, dated April

11, 2011.

11.     Attached as Exhibit 9 is a true and correct duplicate copy of the Further Response

of Defendant Chevron U.S.A Inc. To Plaintiffs' Preliminary Set of Interrogatories re: Defendant

Identification, dated August 30, 2004.

12.     Attached as Exhibit 10 is a true and correct duplicate copy of the Valero

Defendants' Answers and Objections to Plaintiffs' Preliminary Set of Interrogatories re:

Defendant Identification, dated August 30, 2004.

13.     Attached as Exhibit 11 is a true and correct duplicate copy of excerpts from the

transcript of the March 16, 2011 deposition of James Shehadey and Exhibit 5 attached thereto.

14.     Attached as Exhibit 12 is a true and correct duplicate copy of excerpts from

Marcel Moreau's Expert Report, dated November 2, 2011.

15.     Attached as Exhibit 13 is a true and correct duplicate copy of an excerpt from the

transcript of the June 4, 2012 deposition of Sam Williams.

16.     Attached as Exhibit 14 is a true and correct duplicate copy of excerpts from the

transcript of the February 16, 2011 deposition of Imtiaz Ahmad.

17.     Attached as Exhibit 15 is a true and correct duplicate copy of Defendant Exxon

Mobil Corporation's Responses and Objections to Plaintiffs' Preliminary Set of Interrogatories

3

Regarding Defendant Identification, dated August 30, 2004.

18.     Attached as Exhibit 16 is a true and correct duplicate copy of excerpts from the transcript of the January 11, 2013 Status Conference before Honorable Shira A. Scheindlin.

19.     Attached as Exhibit 17 is a true and correct duplicate copy of the transcript of the May 10, 2001 deposition of Dickman Lum in the *South Tahoe Public Utility District v. Atlantic Richfield Co.* case.

20.     Attached as Exhibit 18 is a true and correct duplicate copy of excerpts from the transcript of the June 8, 1999 deposition of Elwanda Kovich in the *South Tahoe Public Utility District v. Atlantic Richfield Co.* case.

21.     Attached as Exhibit 19 is a true and correct duplicate copy of excerpts from Marcel Moreau's Site Specific Report, dated November 2, 2011.

22.     Attached as Exhibit 20 is a true and correct duplicate copy of Union Oil Company of California's Amendment to Its Supply Declaration with Declaration attached, dated August 9, 2012.

23.     Attached as Exhibit 21 is a true and correct duplicate copy of Union Oil Company of California's Supplemental and Amended Response to Plaintiff City of Fresno's First Set of Interrogatories, dated August 12, 2011.

24.     Attached as Exhibit 22 is a true and correct duplicate copy of excerpts from the transcript of the March 18, 2011 deposition of Gail Blue.

25.     Attached as Exhibit 23 is a true and correct duplicate copy of excerpts from the transcript of the March 17, 2011 deposition of Glen R. Blue.

4

26.     Attached as Exhibit 24 is a true and correct duplicate copy of excerpts from the transcript of the March 16, 2011 deposition of Narinder Singh.

27.     Attached as Exhibit 25 is a true and correct duplicate copy of excerpts from Defendant Exxon Mobil Corporation's Responses to Plaintiff City of Fresno's First Set of Interrogatories.

28.     Attached as Exhibit 26 is a true and correct duplicate copy of excerpts from the transcript of the March 29, 2011 deposition of James Clements.

29.     Attached as Exhibit 27 is a true and correct duplicate copy of excerpts form the transcript of the April 4, 2011 deposition of Garabed Bedirian.

30.     Attached as Exhibit 28 is a true and correct duplicate copy of excerpts from the February 16, 2011 deposition of Shirley McMurphy Ahmad.

31.     Attached as Exhibit 29 is a true and correct duplicate copy of Exhibit B from the Shell Defendants' Responses to City of Fresno's First Set of Interrogatories to Defendants.

32.     Attached as Exhibit 30 is a true and correct duplicate copy of excerpts from the transcript of the February 9, 2011 deposition of Joel Hohenshelt.

33.     Attached as Exhibit 31 is a true and correct duplicate copy of excerpts from the transcript of the August 11, 2011 deposition of Jatinder Paul Dhillon.

34.     Attached as Exhibit 32 is a true and correct duplicate copy of excerpts from the transcript of the August 17, 2011 deposition of Bryan Leonard Moe.

35.     Attached as Exhibit 33 is a true and correct duplicate copy of excerpts from the transcript of the August 17, 2011 deposition of Thomas K. Baughs and exhibits attached thereto.

36.     Attached as Exhibit 34 is a true and correct duplicate copy of excerpts from the

5

transcript of the August 9, 2011 deposition of David Benjamin.

37.    Attached as Exhibit 35 is a true and correct duplicate copy of excerpts from the transcript of the August 11, 2011 deposition of Ellis (Ike) Pursell.

38.    Attached as Exhibit 36 is a true and correct duplicate copy of the Declaration of the Valero Defendants in Anticipation of 30(b)(6) Deposition, dated _.

39.    Attached as Exhibit 37 is a true and correct duplicate copy of excerpts from the transcript of the July 27, 2011 deposition of Baldev Singh Sandhu.

40.    Attached as Exhibit 38 is a true and correct duplicate copy of Defendant Exxon Mobil Corporation's Supplemental Response to Plaintiff City of Fresno's First Set of Interrogatories, dated August 30, 2011.

41.    Attached as Exhibit 39 is a true and correct duplicate copy of The Shell Defendants' Responses to Plaintiff's First Set of Interrogatories, dated August 30, 2004.

42.    Attached as Exhibit 40 is a true and correct duplicate copy of excerpts from the transcript of the July 29, 1999 deposition of Mary F. Morgan.

43.    Attached as Exhibit 41 is a true and correct duplicate copy of excerpts from the transcript of the July 1, 1999 deposition of Kelly J. Hammar.

44.    Attached as Exhibit 42 is a true and correct duplicate copy of excerpts from the transcript of the September 22, 2000 deposition of Thomas Hooks.

45.    Attached as Exhibit 43 is a true and correct duplicate copy of excerpts from the transcript of the July 22, 1999 deposition of Bob Simonson.

46.    Attached as Exhibit 44 is a true and correct duplicate copy of excerpts from the transcript of the January 12, 2001 deposition of Dixon B. Smith.

47.    Attached as Exhibit 45 is a true and correct duplicate copy of Valero Corporate

Representative Depositon - Early Knowledge and Taste & Odor.

48.    Attached as Exhibit 46 is a true and correct duplicate copy of selected Bills of

Lading and Highway Receipts provided by Red Triangle.


I declare under penalty of perjury under the laws of the State of California that the

foregoing is true and correct.


                                        Respectfully submitted,

DATED: April 12, 2013                   **MILLER, AXLINE & SAWYER**
                                        A Professional Corporation


                                        By: _Michael Axline_____

                                             MICHAEL D. AXLINE
                                             Attorneys for Plaintiff


                                        MILLER, AXLINE & SAWYER
                                        A Professional Corporation
                                        1050 Fulton Avenue, Suite 100
                                        Sacramento, CA  95825-4225
                                        Telephone:  (916) 488-6688

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

This Document Relates To:

CITY OF FRESNO

        Plaintiff,

        vs.

CHEVRON U.S.A. INC.; CHEVRON
ENVIRONMENTAL SERVICES COMPANY;
SHELL OIL COMPANY; EXXON CORPORATION;
TOSCO CORPORATION; UNOCAL
CORPORATION; UNION OIL COMPANY OF
CALIFORNIA; KERN OIL & REFINING
COMPANY; VALERO REFINING COMPANY-
CALIFORNIA; VALERO MARKETING AND
SUPPLY COMPANY [DOE 1]; TESORO
PETROLEUM CORPORATION [DOE 2]; TESORO
REFINING AND MARKETING COMPANY, INC.
[DOE 3]; TEXACO REFINING AND MARKETING
INC.; ULTRAMAR INC.; ARCO
CHEMICAL COMPANY; LYONDELL
CHEMICAL COMPANY; COASTAL CHEM, INC.;
EXXON MOBIL CORPORATION;
CONOCOPHILLIPS CORPORATION; ATLANTIC
RICHFIELD COMPANY; EQUIVA
SERVICES LLC; TEXACO INC.; EQUILON
ENTERPRISES LLC; CHEVRONTEXACO
CORPORATION; NEW WEST PETROLEUM;
DUKE ENERGY MERCHANTS, LLC; DUKE
ENERGY TRADING AND MARKETING, LLC;
PACIFIC SOUTHWEST TRADING; NORTHRIDGE
PETROLEUM MARKETING U.S., INC.; DUKE
ENERGY MERCHANTS CALIFORNIA, INC.; NEW
WEST PETROLEUM, LLC;
WESTPORT PETROLEUM INC.; NELLA
OIL COMPANY, LLC; CITGO PETROLEUM
CORPORATION [DOE 201]; AND DOES 4
THROUGH 200, 202 THROUGH 400, and
401 THROUGH 600, inclusive,

        Defendants.

Master File C.A. No. 1:00-Civ.
1898

MDL No 1358 (SAS)

Case No. 04 CV-04973 (SAS)

Transferred from:
United States District Court for
the Northern District of California
Case No. C 03-5378 JSW
(Honorable Jeffrey S. White)

Removed from:
Superior Court of California,
County of San Francisco,
Case No. CGC-03-425649

**FIRST AMENDED
COMPLAINT**

**JURY TRIAL DEMANDED**

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

This Document Relates To:

CITY OF FRESNO

      Plaintiff,

      vs.

CHEVRON U.S.A. INC.; CHEVRON
ENVIRONMENTAL SERVICES COMPANY;
SHELL OIL COMPANY; EXXON CORPORATION;
TOSCO CORPORATION; UNOCAL
CORPORATION; UNION OIL COMPANY OF
CALIFORNIA; KERN OIL & REFINING
COMPANY; VALERO REFINING COMPANY-
CALIFORNIA; VALERO MARKETING AND
SUPPLY COMPANY [DOB 1]; TESORO
PETROLEUM CORPORATION [DOE 2]; TESORO
REFINING AND MARKETING COMPANY, INC.
[DOE 3]; TEXACO REFINING AND MARKETING
INC.; ULTRAMAR, INC.; ARCO
CHEMICAL COMPANY; LYONDELL
CHEMICAL COMPANY; COASTAL CHEM, INC.;
EXXON MOBIL CORPORATION;
CONOCOPHILLIPS CORPORATION; ATLANTIC
RICHFIELD COMPANY; EQUIVA
SERVICES LLC; TEXACO, INC.; EQUILON
ENTERPRISES LLC; CHEVRONTEXACO
CORPORATION; NEW WEST PETROLEUM;
DUKE ENERGY MERCHANTS, LLC; DUKE
ENERGY TRADING AND MARKETING, LLC;
PACIFIC SOUTHWEST TRADING; NORTHRIDGE
PETROLEUM MARKETING U.S., INC.; DUKE
ENERGY MERCHANTS CALIFORNIA, INC.; NEW
WEST PETROLEUM, LLC;
WESTPORT PETROLEUM INC.; NELLA
OIL COMPANY LLC; CITGO PETROLEUM
CORPORATION [DOE 201]; AND DOES 4
THROUGH 200, 202 THROUGH 400, and
401 THROUGH 600, inclusive,

      Defendants.

Master File C.A. No. 1:00-Civ.
1898

MDL No 1358 (SAS)


Case No. 04 CV-04973 (SAS)


Transferred from:
United States District Court for
the Northern District of California
Case No. C 03-5378 JSW
(Honorable Jeffrey S. White)

Removed from:
Superior Court of California,
County of San Francisco,
Case No. CGC-03-425649

**FIRST AMENDED
COMPLAINT**

**JURY TRIAL DEMANDED**

1

Plaintiff City of Fresno hereby alleges as follows:

## I. SUMMARY OF THE CASE

1. The City of Fresno is responsible for purveying clean, safe drinking water to approximately 450,000 people in the County of Fresno, California. Expanding plumes of methyl tertiary butyl ether ("MTBE") and tertiary butyl alcohol ("TBA") contaminate and threaten the water system and drinking water on which Fresno's schools, hospitals, businesses, residents and visitors depend.

2. The defendants in this action are the refiners who manufacture gasoline containing MTBE and TBA, manufacturers of MTBE, and the designers, promoters, marketers, formulators, distributors, suppliers, and retailers of gasoline containing MTBE and TBA, which contaminate and threaten Fresno's water system and public water supply. Among other things, the defendants knowingly and willfully promoted and marketed MTBE and TBA and/or gasoline containing MTBE and/or TBA, when they knew or reasonably should have known that these compounds would reach groundwater, pollute public water supplies, render drinking water unusable and unsafe, and threaten the public health and welfare, as they have in Fresno.

3. Fresno filed this lawsuit to recover compensatory and all other damages, including all necessary funds to remove MTBE and TBA pollution from public drinking water supplies, to restore the reliability of Fresno's water system and drinking water supply, to abate MTBE and TBA plumes, and to assure that the responsible parties -- and not the City of Fresno nor the public -- bear the expense.

## II. PLAINTIFF

4. Plaintiff City of Fresno ("Fresno") provides water to the residents of Fresno. The City of Fresno bears the responsibility of owning and operating a water system which serves the public, including drinking water wells with related and ancillary equipment, pumps, pipes, water treatment equipment, delivery systems and infrastructure which will be referred to collectively in this complaint as the "water system." The drinking water sources for the Fresno water system include more than two hundred and fifty (250) wells owned and operated by Fresno within or near city limits. Among other things, the water system includes Fresno's right to appropriate and use groundwater for water supplies.

## III. DEFENDANTS

5. Most of the defendants in this action are corporate members of the gasoline industry. As described below, the defendants include manufacturers and promoters of gasoline containing MTBE and/or TBA, distributors of gasoline containing MTBE and/or TBA, manufacturers and promoters of MTBE and/or TBA, and owners and operators of facilities that released MTBE and/or TBA and/or gasoline containing MTBE and/or TBA into the environment. MTBE, TBA, and gasoline containing MTBE and/or TBA have contaminated, polluted and threatened, and continue to contaminate, pollute and threaten, Fresno's water system.

6. When this complaint refers to any act or omission of the defendants, such reference shall be deemed to mean that the officers, directors, agents, employees, or representatives of the defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of defendants, and did so while acting within the scope of their employment or agency.

### A. Refiner Defendants

7. These defendants owned and operated refineries in California and/or designed, formulated, refined, manufactured, promoted, marketed, supplied and provided gasoline containing MTBE and/or TBA which, at all times relevant to this complaint, was distributed and sold in areas affecting Fresno's water system:

8. Defendant Chevron U.S.A. Inc. ("Chevron USA") is a Pennsylvania corporation with its principal place of business in San Ramon, California.

9. Defendant Shell Oil Company, individually and doing business as Shell Oil Products US ("Shell") is a Delaware corporation doing business in California.

10. Defendant Exxon Corporation ("Exxon") is a New Jersey corporation with its principal place of business located in Texas.

11. Defendant Tosco Corporation ("Tosco") is a Nevada corporation with its principal place of business in Stamford, Connecticut.

12. Defendant Unocal Corporation ("Unocal") is a Delaware corporation doing business in California.

3

13. Defendant Union Oil Company of California ("Union Oil") is a California corporation with its principle place of business in El Segundo, California.

14. Defendant Kern Oil & Refining Company ("Kern Oil") is a California corporation with its principal place of business located in Long Beach, California.

15. Defendant Valero Refining Company-California ("Valero Refining") is a Delaware corporation with its principle place of business in San Antonio, Texas, and doing business in California.

16. Defendant Valero Marketing and Supply Company ("Valero Marketing") is a Delaware corporation with its principal place of business in San Antonio, Texas, and doing business in California. Valero Marketing and Supply Company is named in place of DOE 1.

17. Defendant Tesoro Petroleum Corporation ("Tesoro") is a Delaware corporation with its principal place of business in San Antonio, Texas, and doing business in California. Tesoro is named in place of DOE 2.

18. Defendant Tesoro Refining and Marketing Company, Inc. ("Tesoro Refining"), a wholly owned subsidiary of Tesoro, is a Delaware corporation with its principal place of business in San Antonio, Texas, doing business in California. Tesoro Refining is named in place of DOE 3.

19. Defendant Texaco Refining and Marketing Inc. ("TRMI") is a Delaware corporation with its principal place of business in New York.

20. Defendant Ultramar, Inc. ("Ultramar") is a Nevada corporation with its principal place of business in San Antonio, Texas.

21. Defendant Exxon Mobil Corporation ("ExxonMobil") is a New Jersey corporation with its principal place of business located in Texas. Plaintiff is informed that Exxon Mobil was formed on or about November 30, 1999 as a result of a merger of Mobil Corporation and Exxon Corporation and is a successor in interest to Exxon Corporation and Mobil Corporation.

22. Defendant ConocoPhillips Corporation ("Conoco") is a Delaware Corporation doing business in California and is a successor in interest to Tosco Corporation.

23. Defendant ChevronTexaco Corporation ("ChevronTexaco") is a Delaware corporation with its headquarters in San Ramon California. Plaintiff is informed and believes that

ChevronTexaco Corporation is a successor in interest to certain Chevron-related and Texaco-related entities.

24. Defendant Equilon Enterprises LLC ("Equilon") is a Delaware Limited Liability Company. Plaintiff is informed and believes that Equilon Enterprises LLC is a successor in interest to certain Shell-related and Texaco-related entities.

25. Defendants Chevron USA, Shell, Exxon, Tosco, Unocal, Union Oil, Kern Oil, Valero Refining, Valero Marketing, Tesoro, Tesoro Refining, TRMI, Ultramar, ExxonMobil, Conoco, ChevronTexaco, Equilon and DOES 4 through 100, will be collectively referred to hereafter as the "Refiner Defendants." The Refiner Defendants, and each of them, owned and/or operated gasoline refineries that manufactured and supplied gasoline containing MTBE and/or TBA to locations in the vicinity of Fresno's water system, such that releases of such products to the subsurface contaminated and polluted the water system. Among other things, these defendants (1) designed, formulated, refined, manufactured, promoted, marketed, distributed, transported, packaged, exchanged and/or sold gasoline containing MTBE and/or TBA, which is contaminating, polluting and threatening Fresno's public water supplies; (2) owned, operated, and/or controlled gasoline delivery systems including, but not limited to, gasoline stations, gasoline storage, transfer, delivery, and dispensing systems (collectively herein "gasoline delivery systems") in areas affecting Fresno's water system; (3) were legally responsible for and committed each of the multiple tortious and ongoing wrongful acts alleged in this complaint; (4) participated in one or more enterprises to promote MTBE and/or TBA and/or gasoline containing MTBE and/or TBA; (5) negligently designed, constructed, installed, fabricated, owned, operated, controlled, inspected and/or repaired gasoline delivery systems from which MTBE and/or TBA is contaminating, polluting, and threatening the water system; (6) negligently and/or intentionally failed and refused to take appropriate remediation action to abate MTBE and/or TBA plumes when MTBE and/or TBA escaped from the gasoline delivery systems; and (7) in doing the tortious and wrongful acts alleged in this complaint, acted in the capacity of aider, abettor, joint-venturer, partner, agent, principal, successor-in-interest, surviving corporation, fraudulent transferee, fraudulent transferor, controller, alter-ego, co-conspirator, licensee, licensor, patent holder and/or indemnitor of each of the remaining DOE and named defendants.

26.  Plaintiff is ignorant of the true names and/or capacities of the defendants sued herein under the fictitious names DOES 4 through 100, inclusive.

**B.  MTBE/TBA Manufacturer/Supplier Defendants**

27.  These defendants manufactured, promoted, marketed, sold, supplied and provided MTBE and/or TBA which, at all times relevant to this complaint, was added to gasoline which was distributed and sold in areas affecting Fresno's water system:

28.  Defendant ARCO Chemical Company ("ARCO Chemical") is a corporation with its principal place of business in Los Angeles, California.

29.  Defendant Lyondell Chemical Company ("Lyondell"), as successor-in-interest to ARCO Chemical Company, is a corporation with its headquarters in Houston, Texas, and doing business in California.

30. Defendant Coastal Chem, Inc. ("Coastal") is a Delaware corporation.

31.  Defendant Chevron Environmental Services Company is a Delaware corporation with its principal place of business in San Francisco, California.

32.  Defendants ARCO Chemical, Lyondell, Coastal, Chevron Environmental Services Company, and also defendants Chevron USA, Shell, Exxon, Tosco, Valero Refining, Valero Marketing, Tesoro, Tesoro Refining, Ultramar, ExxonMobil, Conoco, ChevronTexaco, Equilon and DOES 101 through 200, will be collectively referred to hereafter as the "MTBE/TBA Manufacturer/Supplier Defendants." The MTBE/TBA Manufacturer/Supplier Defendants, and each of them, manufactured and/or supplied MTBE and/or TBA for use in gasoline which was distributed to and sold in locations in the vicinity of Fresno's water system, such that releases of that gasoline to the subsurface contaminated, polluted, and threaten the water system.  Among other things, these defendants (1) negligently designed, manufactured, formulated, refined, promoted, marketed, distributed, failed to adequately warn about, transported, packaged, exchanged and/or sold MTBE and/or TBA, which is contaminating, polluting, and threatening Fresno's public water supplies; (2) owned, operated, and controlled gasoline delivery systems in areas affecting Fresno's water system; (3) were legally responsible for and committed each of the multiple tortious and ongoing wrongful acts alleged in this complaint; (4) participated in one or more enterprises to promote MTBE and/or TBA and/or gasoline containing MTBE and/or TBA;

(5) negligently operated , designed, constructed, owned, repaired, controlled, installed, inspected, and/or fabricated gasoline delivery systems from which MTBE and/or TBA is contaminating, polluting, and threatening the water system; (6) negligently and/or intentionally failed and refused to take appropriate remediation action to abate MTBE and/or TBA plumes when MTBE and/or TBA escaped from the gasoline delivery systems; and (7) in doing the tortious and wrongful acts alleged in this complaint, acted in the capacity of aider, abettor, joint-venturer, partner, agent, principal, successor-in-interest, surviving corporation, fraudulent transferee, fraudulent transferor, controller, alter-ego, co-conspirator, licensee, licensor, patent holder and/or indemnitor of each of the remaining DOE and named defendants.

### C. Distributor Defendants

33. These defendants have supplied and continue to supply gasoline containing MTBE and/or TBA for resale in areas that affect Fresno's water system:

34. Defendant Atlantic Richfield Company ("ARCO"), is a Delaware corporation doing business in California.

35. Defendant Equiva Services LLC ("Equiva") is a Delaware Limited Liability Company doing business in California.

36. Defendant New West Petroleum ("New West") is a California corporation with its principle place of business in Sacramento, California.

37. Defendant Duke Energy Merchants, LLC ("Duke Energy") is a limited liability company, incorporated in Delaware and doing business in California.

38. Defendant Duke Energy Trading and Marketing, LLC ("Duke Marketing") is a limited liability company, incorporated in Delaware and doing business in California.

39. Defendant Pacific Southwest Trading, also known as PS Trading, Inc., ("PS Trading") is a California corporation.

40. Defendant New West Petroleum LLC ("New West LLC") is a California limited liability company with its principal place of business in Sacramento, California.

41. Defendant Northridge Petroleum Marketing U.S., Inc., ("Northridge") is a Colorado corporation doing business in California.

42. Defendant Duke Energy Merchants California, Inc., ("Duke Energy California") formerly known as Northridge Petroleum Marketing U.S., Inc., is a Colorado corporation doing business in California.

43. Defendant Westport Petroleum Inc. ("Westport") is a California corporation with its principal place of business in Pasadena, California.

44. Defendant Nella Oil Company LLC ("Nella") is a California limited liability company with its principle place of business in Auburn, California.

45. Defendant Citgo Petroleum Corporation ("Citgo") is a Delaware corporation with its principal place of business in Tulsa, Oklahoma, and doing business in California. Citgo is named in place of DOE 201.

46. Plaintiff is ignorant of the true names and/or capacities of the defendants sued herein under the fictitious names DOES 202 through 400, inclusive.

47. Defendants Arco, Equiva, New West, Duke Energy, Duke Marketing, PS Trading, New West LLC, Northridge, Duke Energy California, Westport, Nella and also defendants Chevron USA, Shell, Exxon, Tosco, Unocal, Union Oil, Kern Oil, Valero Refining, Valero Marketing, TRMI, Ultramar, ExxonMobil, Conoco, ChevronTexaco, Equilon and DOES 202 through 400, will be collectively referred to herein as the "Distributor Defendants." The Distributor Defendants, and each of them: (1) designed, manufactured, formulated, promoted, marketed, distributed, transported, packaged, and sold gasoline containing MTBE and/or TBA which is contaminating and threatening Fresno's public water supplies; (2) were legally responsible for and committed each of the tortious and wrongful acts alleged in this complaint; (3) participated in one or more enterprises to promote MTBE and/or TBA and/or gasoline containing MTBE and/or TBA; and (4) in doing the tortious and wrongful acts alleged in this complaint, acted in the capacity of aider, abettor, joint-venturer, partner, agent, principal, successor-in-interest, surviving corporation, fraudulent transferee, fraudulent transferor, controller, alter-ego, co-conspirator, licensee, licensor, patent holder and/or indemnitor of each of the remaining DOE and named defendants.

**D. Owner/Operator Defendants**

48. These defendants own and/or operate gasoline delivery facilities, including, but not

limited to, pipelines, gasoline stations, gasoline storage, transfer, delivery, and dispensing systems (collectively herein "gasoline delivery systems") in areas affecting Fresno's water system.

49.  Plaintiff is ignorant of the true names and/or capacities of the defendants sued herein under the fictitious names DOES 401 through 600, inclusive.

50.  DOES 401 through 600, shall be referred to collectively herein as the "Owner/Operator Defendants."  The Owner/Operator Defendants, and each of them: (1) designed, constructed, installed, fabricated, owned, operated, controlled, inspected and/or repaired gasoline delivery systems from which gasoline containing MTBE and/or TBA is contaminating, polluting, and threatening Fresno's water system;  (2) were legally responsible for and committed each of the multiple tortious and ongoing wrongful acts alleged in this complaint; (3) participated in one or more enterprise(s) to promote, market, distribute, and sell gasoline containing MTBE and/or TBA;  and (4) in doing the tortious and wrongful acts alleged in this complaint, acted in the capacity of aider, abettor, joint-venturer, partner, agent, principal, successor-in-interest, surviving corporation, fraudulent transferee, fraudulent transferor, controller, alter-ego, co-conspirator, licensee, licensor, patent holder and/or indemnitor of each of the remaining DOE and named defendants.

## IV.  ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION

### A.  The Contaminants:  MTBE and TBA

51.  MTBE is an additive to gasoline.  Wherever referred to in this complaint, MTBE means not only methyl tertiary butyl ether, but also the contaminants in commercial grade MTBE, as well as other oxygenates and ethers, including, but not limited to, TAME, DIPE, and ETBE.

52.  TBA is present in some gasoline.  TBA is variously a gasoline constituent, an impurity in commercial grade MTBE, and a degradation or breakdown product of MTBE.

53.  MTBE and TBA contaminate the environment through leaks and spills from gasoline delivery systems.  Once released to the environment from gasoline delivery systems, MTBE and TBA each have unique characteristics that cause extensive environmental contamination and a corresponding threat to the public health and welfare.  In particular, the fate and transport of

MTBE and TBA in the subsurface differs significantly from that of gasoline constituents that have historically been of environmental and/or toxicological concern, specifically the "BTEX compounds" (benzene, toluene, ethylbenzene, and xylene).

54.   Once released into the subsurface, MTBE and TBA separate from other gasoline constituents in the presence of moisture.  In contrast to the BTEX compounds, MTBE and TBA have a strong affinity for water.  If MTBE and/or TBA are released into the environment in sufficient quantities, MTBE and/or TBA have the capacity to migrate through the soil, the groundwater, penetrate deeper within the aquifer, and cause persistent contamination that can threaten the potability of drinking water wells.  There is a potentially lengthy delay, based on site specific factors, between the time MTBE and/or TBA are released and the time they accumulate in potentially usable ground water in sufficient quantities to contaminate public drinking water resources.

55.   MTBE and TBA spread farther and faster than other components of gasoline, resist biodegradation, and are difficult and costly to remove from groundwater and drinking water supplies.

**B. Regulatory Standards Applicable to MTBE and TBA**

56.   No federal or state agency has approved either MTBE or TBA as an additive to drinking water.  No federal or state agency has approved releasing MTBE or TBA into groundwater.  No federal or state agency has ever required that gasoline contain MTBE and/or TBA.

57.   Along with its other properties, MTBE can render water supplies undrinkable by changing the taste and odor of water into a foul smelling liquid with a turpentine odor and chemical taste unfit for human consumption.  The State of California established a Secondary Maximum Contaminant Level ("MCL") for MTBE of 5 parts per billion ("ppb").  This means that the law prohibits using water containing MTBE at or above this level in public drinking water because of MTBE's aesthetic properties.  Individuals, however, can smell and taste MTBE in water at even lower levels.

58.   MTBE also presents a significant public health threat.  Because of MTBE's potential for causing cancer, the State of California has established a Primary (health) MCL for MTBE of

13 ppb. This means that the law prohibits using water containing MTBE at or above this level in public drinking water because of MTBE's threat to public health.

59. TBA also presents a significant threat to public health. The State of California has set an Action Level for TBA of 12 parts per billion in water, based on an interim assessment performed by the California Office of Environmental Health Hazard Assessment. The interim assessment concluded that exposure to TBA at levels above 12 ppb in water creates an unacceptable public health risk of cancer.

60. California Governor Gray Davis ordered state agencies to phase out MTBE use in motor fuel in California, to achieve 100% removal no later than December 31, 2003. Because of MTBE's threat to drinking water, the federal government has also announced its intent to "significantly reduce or eliminate" MTBE from gasoline in an Advance Notice of Proposed Rulemaking published in the Federal Register. Eighteen states, including California, have either banned or are phasing out the use of MTBE in gasoline.

**C. Defendants' Promotion of MTBE and TBA**

61. The Refiner Defendants and MTBE/TBA Manufacturer/Supplier Defendants, all of whom have promoted the use of MTBE and/or TBA, and/or gasoline containing MTBE and/or TBA, for its purported environmental benefits, knew or should have known of the grave harm and threat to the public health and welfare represented by the proliferating use of these compounds, including (among other things): widespread pollution of groundwater with MTBE and TBA, contamination of public drinking water by these compounds, drinking water supplies rendered unfit and unusable for consumption, public health threatened, and increased costs to public water suppliers and their ratepayers. Plaintiff is informed and believes, however, and based thereon alleges, that defendants Tosco and Ultramar did not gain this knowledge until 1996, due to concealment of information by another defendant or defendants, including but not limited to ARCO Chemical.

62. Despite knowing that MTBE and TBA pollution was inevitable, and despite the availability of reasonable alternatives, (including, but not limited to, adequate warnings), defendants chose not to warn customers, retailers, regulators or public officials, including the City of Fresno. As production and sales of these compounds and gasoline containing them

increased, defendants failed to take any reasonable, appropriate and special precautions to store gasoline containing MTBE and/or TBA safely, or to prevent, detect, and clean up spills and leaks of gasoline containing these products. Despite knowing the risk of harm posed by these compounds, defendants also failed to warn purchasers, the public, the City of Fresno, and/or regulators, that without such precautions more and more MTBE and/or TBA would be released into the environment and cause, among other significant adverse effects, long term groundwater contamination, pollution of public drinking water supplies, and threats to public health and safety.

63. The Refiner and Distributor Defendants further exacerbated the situation by continuing unreasonable intentional and/or negligent acts, including providing gasoline containing MTBE and/or TBA to gasoline stations without either providing appropriate warnings or taking other precautions adequate to prevent releases of MTBE and/or TBA to the subsurface, knowing that release to the environment of these compounds would be inevitable because a substantial percentage of those gasoline stations would store such gasoline without taking reasonable, appropriate or special precautions, such as by placing the gasoline in inadequate and leaking gasoline delivery systems, and without taking reasonable, appropriate or special measures to monitor, detect, and respond to releases of MTBE and/or TBA to soil and/or groundwater, and without taking reasonable, appropriate or special precautions to investigate, contain, and clean up releases of these compounds.

64. At all times, the Refiner Defendants and MTBE/TBA Manufacturer/Supplier Defendants and Distributor Defendants have represented to purchasers of MTBE, TBA, and/or gasoline containing MTBE and/or TBA, as well as to the public and government agencies, that such products were environmentally sound and appropriate for widespread production, distribution, sale and use. Indeed, defendants represented that gasoline containing MTBE could be handled the same as ordinary gasoline, and required no special measures to protect against or respond to suspected releases to the subsurface.

65. The Refiner Defendants and MTBE/TBA Manufacturer/Supplier Defendants and Distributor Defendants had a duty (which they breached) to test MTBE and TBA thoroughly to determine their environmental fate and transport characteristics, and potential human health

impacts, before they sold these compounds and/or gasoline containing them, and had a further duty (which they breached) to take precautions necessary to assure that gasoline containing MTBE and/or TBA was properly stored and to institute all necessary measures to contain and promptly abate the inevitable spills and leaks. Nonetheless, the defendants, and each of them, failed to adequately test, store, warn, or control gasoline containing MTBE and/or TBA, and, among other things, failed to abate groundwater contamination caused by MTBE and/or TBA, including contamination in and threats to Fresno's water system.

66. The widespread problems of leaking gasoline delivery systems were well known to the defendants prior to the introduction of MTBE and TBA. At least as early as the mid-1960's these defendants knew, or reasonably should have known, that gasoline delivery systems suffer significant and widespread leaks and failures, and release gasoline products into the environment, including into groundwater.

67. Before introducing MTBE and/or TBA into gasoline delivery systems, the Refiner Defendants and MTBE/TBA Manufacturer/Supplier Defendants and Distributor Defendants knew, or reasonably should have known, among other things, that MTBE and/or TBA released into the environment would mix easily with groundwater, move great distances, resist biodegradation or bioremediation, render drinking water unsafe and/or non-potable, cause significant expenses to remediate and to remove from public drinking water supplies, and otherwise threaten the public health and welfare. The defendants knew, or they reasonably should have known, that the gasoline distribution and retail system statewide – and in the vicinity of Fresno's water system – contained leaking gasoline delivery systems. They knew, or they reasonably should have known, that gasoline facilities, including those in the vicinity of Fresno's water system, commonly lacked adequate storage facilities for gasoline containing MTBE and/or TBA and that the operators of these facilities were unaware of either the special hazards of MTBE and/or TBA or the steps necessary to eliminate or mitigate those hazards.

68.    At all times relevant to this action:

(a)    the MTBE/TBA Manufacturer/Supplier Defendants, and each of them, sold, exchanged, supplied, distributed, delivered and/or otherwise provided MTBE and/or TBA to the Refiner Defendants, and the Refiner Defendants and

Distributor Defendants, and each of them, sold, exchanged, supplied, distributed, delivered and/or otherwise provided gasoline containing MTBE and/or TBA to retail gasoline stations and/or other gasoline delivery systems within or near the District's boundaries. Such sales, exchanges, supplies, distributions, deliveries and/or other provisions of gasoline containing MTBE and/or TBA to such facilities occurred over time through the end of 2002 and, for at least certain defendants, beyond;

(b)    gasoline containing MTBE and/or TBA was released to the subsurface from retail gasoline facilities owned and/or operated by the Owner/Operator Defendants, and each of them, and from other facilities at dispersed locations within or near Fresno's water system. Such releases of gasoline containing MTBE and/or TBA have occurred over time and are still occurring, all in varying amounts at different locations; and

(c)    MTBE and TBA take time to migrate from release points to locations within the subsurface at which they have an appreciable impact on groundwater resources. Because of the distance from release points to groundwater, relatively low precipitation rates, and potential presence of intermittent clay layers which retard downward movement, there may be significant delay between the release of gasoline and its occurrance in groundwater. MTBE and TBA have over time migrated in the subsurface from dispersed release points at or near the surface at retail gasoline facilities within or near Fresno's water system, causing pollution, contamination, and substantial damage to the groundwater resources of Fresno, causing appreciable injury to Fresno within the past three years, currently and continuously damaging Fresno at such times and in amounts to be proved at trial.

69. The City of Fresno seeks compensatory damages needed to investigate, remediate, and remove MTBE and/or TBA from drinking water supplies, to secure alternative water supplies on an interim basis, to make associated changes to its operating systems and practices, and for past, present, and future damage to Fresno's water system and water rights. In addition,

Fresno seeks punitive damages to punish certain defendants and deter future wrongful and harmful conduct, and other relief as described in the Prayer below.

## FIRST CAUSE OF ACTION

### (Strict Liability Against All Defendants)

70.  Fresno refers to paragraphs 1 through 69 above, and by this reference incorporates them into this cause of action as though fully set forth herein.

71.  The Refiner Defendants, Distributor Defendants, and Owner/Operator Defendants, and each of them, designed, formulated, compounded, refined, manufactured, packaged, distributed, recommended, merchandised, advertised, promoted, and/or sold gasoline containing MTBE and/or TBA.

72.  The MTBE/TBA Manufacturer/Supplier Defendants, and each of them, designed, formulated, compounded, manufactured, packaged, distributed, supplied, recommended, merchandised, advertised, promoted, and/or sold MTBE and/or TBA and their constituents, which were intended by defendants, and each of them, to be used as gasoline additive(s).

73.  Defendants' design and manufacture of these products was defective, and defendants failed to adequately warn against the dangers of these products.

74.  Defendants, and each of them, falsely represented, asserted, claimed and warranted that gasoline containing MTBE and/or TBA could be used in the same manner as gasoline not containing these compounds, and did not require any different or special handling or precautions.

75.  Defendants, and each of them, knew that said product(s) were to be purchased and used without inspection for defects.

76.  Gasoline containing MTBE and/or TBA, and MTBE and TBA themselves, are defective products because, among other things:

      (a)    The benefits of using MTBE and/or TBA in gasoline, if any, are greatly outweighed by the associated costs and negative impacts imposed on society, consumers, and the environment, and on the City of Fresno's water system, and those who rely on it;

      (b)    MTBE and TBA cause extensive groundwater contamination, even when used in their foreseeable and intended manner;

(c)   Even at extremely low levels, MTBE renders drinking water putrid, foul, and unfit for purveying to consumers, and TBA also renders drinking water unfit for purveying as drinking water to the pubic;

(d)   MTBE and TBA and gasoline containing MTBE and/or TBA pose significant threats to public health;

(e)   Defendants failed to provide adequate warnings of the known and foreseeable risks of MTBE and TBA and gasoline containing MTBE and/or TBA, including but not limited to groundwater contamination with both MTBE and TBA;

(e)   Defendants failed to conduct reasonable, appropriate or adequate scientific studies to evaluate the environmental fate and transport and potential human health effects of MTBE and/or TBA and gasoline containing MTBE and/or TBA; and

(f)   Commercial grade MTBE is defectively designed and manufactured when it contains unnecessary but environmentally harmful impurities such as TBA.

77.   MTBE, and/or TBA, and/or gasoline containing MTBE and/or TBA, were used in a manner in which they were forseeably intended to be used, and as a proximate result of the defects previously described, MTBE and/or TBA and gasoline containing MTBE and/or TBA proximately caused the City of Fresno to sustain the injuries and damages set forth in this complaint.

78.   As a direct and proximate result of the acts and omissions of the defendants alleged herein, the City of Fresno must assess, evaluate, investigate, monitor, abate, clean-up, correct, contain, and remove MTBE and/or TBA from Fresno's water system, and secure alternative water supplies (with related operational impacts), all at significant expense, loss, and damage.

79.   As a further direct and proximate result of the acts and omissions of the defendants alleged herein, Fresno will sustain substantially increased expenses, loss of the use of water and a threat to its appropriative water rights, all to Fresno's damage in an amount within the

jurisdiction of this court. Fresno is also entitled to recover costs incurred in prosecuting this action and prejudgment interest to the full extent permitted by law.

80. Defendants ARCO, Chevron USA, Chevron Environmental Services Company, Shell, Exxon, Tosco (after 1996), Unocal, Union Oil, Kern Oil, TRMI, Ultramar (after 1996), Conoco, Equilon, ARCO Chemical, Lyondell, Valero Refining, Valero Marketing, and DOES 100-200 knew that it was substantially certain that their acts and omissions described above would threaten public health and cause extensive contamination of public drinking water supplies and property damage. These defendants committed each of the above described acts and omissions knowingly, willfully, and with oppression, fraud, and/or malice and with conscious disregard of the health and safety of others, and of plaintiff's water rights.

81. This conduct is reprehensible, despicable, and was performed to promote sales of MTBE and/or TBA and/or gasoline containing MTBE and/or TBA in conscious disregard of the known risks of injury to health and property. These defendants acted with willful and conscious disregard of the probable dangerous consequences of that conduct and its foreseeable impact upon Fresno. Therefore, Fresno requests an award of exemplary damages in an amount sufficient to punish ARCO, Chevron USA, Shell, Exxon, Tosco (after 1996), Unocal, Union Oil, Kern Oil, TRMI, Ultramar (after 1996), Conoco, Equilon, ARCO Chemical, Lyondell, Valero Refining, Valero Marketing, and DOES 100-200. After the completion of additional investigation and discovery, Fresno may seek leave of court to amend this complaint to allege a claim for exemplary damages against additional defendants if warranted by the facts.

## SECOND CAUSE OF ACTION

### (Negligence Against All Defendants)

82. Fresno refers to paragraphs 1 through 81 above, and by this reference incorporates them into this cause of action as though fully set forth herein.

83. Defendants had a duty to use due care in the design, manufacture, formulation, handling, control, disposal, sale, testing, labeling, warnings, use, and instructions for use of MTBE and TBA, and gasoline containing MTBE and/or TBA, and gasoline delivery systems.

84. Defendants so negligently, carelessly, and/or recklessly designed, manufactured, formulated, handled, labeled, instructed, controlled (or the lack thereof), tested (or the lack

thereof), released, spilled, failed to warn, and/or sold MTBE and/or TBA, and/or so negligently, carelessly and recklessly designed, manufactured, formulated, handled, labeled, instructed, entrusted, controlled (or the lack thereof), tested (or the lack thereof), released, spilled, failed to warn, dispensed and/or sold gasoline containing MTBE and/or TBA, and/or so negligently, carelessly, and recklessly dispensed MTBE and/or TBA and/or gasoline containing MTBE and/or TBA into gasoline delivery systems, and/or so negligently, carelessly and/or recklessly designed, installed, failed to warn, operated and/or maintained gasoline delivery systems for use with gasoline containing MTBE and/or TBA, that they breached their duties to plaintiff and directly and proximately caused MTBE and/or TBA to contaminate, pollute and threaten Fresno's water system, resulting in the harm which warrants the award of compensatory and punitive damages as prayed for in this complaint.

85. Defendants, and each of them, among other things, negligently, carelessly, and/or recklessly failed to: (1) use appropriate technology to prevent leaks of gasoline containing MTBE and/or TBA; (2) install and maintain gasoline delivery systems that prevented leaks and facilitated prompt detection and containment of any leaks; (3) monitor and discover leaks as soon as possible; (4) warn those who may be injured as a result of the leaks; (5) warn those who handled MTBE of its properties; and (6) clean up and abate spills of gasoline containing MTBE and/or TBA as thoroughly and as soon as reasonably possible and in a manner necessary to prevent harm and injury.

86. The Refiner Defendants and Distributor Defendants had actual control over the Owner/Operator Defendants through a variety of means, including but not limited to written agreements, inspection rights, prescribing certain procedures and operating practices, training, sale of branded goods, and agreements obligating the respective Owner/Operator Defendants to acquire, store and sell gasoline containing MTBE and/or TBA. Therefore, the Refiner and Distributor Defendants had actual control over the Owner/Operator Defendants with leaking gasoline delivery systems and/or were vicariously liable for the acts and conduct of the Owner/Operator Defendants.

87. The Refiner Defendants, Distributor Defendants, and Owner/Operator Defendants also undertook tank system testing, tank integrity testing, inventory reconciliation and testing,

thereby affirmatively undertaking the duty to prevent releases of gasoline containing MTBE and/or TBA from gasoline delivery systems, but they negligently failed to properly discharge these duties.

88. The Refiner Defendants, Distributor Defendants, and Owner/Operator Defendants further undertook to retain consultants to conduct environmental investigations and cleanups, thereby affirmatively undertaking the duty to detect and remediate releases of gasoline containing MTBE and/or TBA from gasoline delivery systems, but they negligently failed to properly discharge these duties.

89. The Refiner Defendants and Distributor Defendants knew, or should have known, that certain of the Owner/Operator Defendants had leaking gasoline delivery systems, but nonetheless negligently supplied, sold, and/or entrusted gasoline containing MTBE and/or TBA to these Owner/Operator Defendants knowing that MTBE and/or TBA would leak into the soil and contaminate groundwater.

90. By their conduct defendants, and each of them, among other things, are:

(a)     Committing, authorizing, aiding and/or abetting the tampering with property owned and/or used by Fresno as a public agency to provide water to its water customers within the meaning of Civil Code section 1882 et seq.;

(b)     Causing and/or permitting the discharge of wastes into Fresno's public drinking water supplies, creating conditions of pollution and/or nuisance within the meaning of California Water Code section 13050;

(c)     Using Fresno's public water supply for waste disposal, an unreasonable and non-beneficial use, in violation of California Constitution Article 10, Section 2;

(d)     Interfering with Fresno's vested water rights;

(e)     Impairing Fresno's right to appropriate water whose quality is not impaired.

91. As a direct and proximate result of defendants' acts and omissions as alleged herein, Fresno has incurred, is incurring, and will continue to incur MTBE and/or TBA investigation, remediation and treatment costs and expenses required to restore its water system and to obtain alternative water supplies, and other damages, in an amount to be proved at trial.

92. Defendants ARCO, Chevron USA, Chevron Environmental Services Company, Shell, Exxon, Tosco (after 1996), Unocal, Union Oil, Kern Oil, TRMI, Ultramar (after 1996), Conoco, Equilon, ARCO Chemical, Lyondell, Valero Refining, Valero Marketing, and DOES 100-200 knew that it was substantially certain that their acts and omissions described above would threaten public health and cause extensive contamination of public drinking water supplies and property damage. These Refiner Defendants and MTBE/TBA Manufacturer/Supplier Defendants committed each of the above-described acts and omissions with reckless disregard of the health and safety of others, and of plaintiff's water rights.

93. This conduct is reprehensible, despicable, and was performed to promote sales of MTBE and/or TBA and/or gasoline containing MTBE and/or TBA in reckless disregard of the known risks of injury to health and property. These Refiner Defendants and MTBE/TBA Manufacturer/Supplier Defendants acted with reckless disregard of the probable dangerous consequences of that conduct and its foreseeable impact upon the City of Fresno. Therefore, the City requests an award of exemplary damages in an amount sufficient to punish Defendants ARCO, Chevron USA, Shell, Exxon, Tosco (after 1996), Unocal, Union Oil, Kern Oil, TRMI, Ultramar (after 1996), Conoco, Equilon, ARCO Chemical, Lyondell, Valero Refining, Valero Marketing, and DOES 100-200. After the completion of additional investigation and discovery, Fresno may seek leave of court to amend this complaint to allege a claim for exemplary damages against additional defendants if warranted by the facts.

### THIRD CAUSE OF ACTION

### (Trespass Against All Defendants)

94. Fresno refers to paragraphs 1 through 93 above, and by this reference incorporates them into this cause of action as though fully set forth herein.

95. Fresno is the owner and/or actual possessor of property rights and interests, easements, wells, the right to appropriate and use groundwater, and water rights. Defendants, their agents and employees, knew, or in the exercise of reasonable care should have known, that MTBE and TBA and gasoline containing MTBE and/or TBA are extremely hazardous to groundwater and to public water systems, including the property and other rights of the City of Fresno.

96. The defendants so negligently, recklessly and/or intentionally released, spilled, and/or failed to properly control, handle, store, contain, and use gasoline containing MTBE and/or TBA, and/or failed to clean up spills and leaks of gasoline containing MTBE and/or TBA, that they directly and proximately caused MTBE and/or TBA to contaminate Fresno's water system as follows:

    (a)    The defendants participated in the use, storage, and release of gasoline containing MTBE and/or TBA by owning, controlling, regulating, designing, installing, operating, monitoring, inspecting and testing, or by failing to do so, the gasoline delivery systems and thereby proximately caused gasoline containing MTBE and/or TBA to be released into groundwater;

    (b)    The Refiner Defendants and MTBE/TBA Manufacturer/Supplier Defendants negligently provided instructions and/or warnings to the Distributor Defendants and Owner/Operator Defendants concerning MTBE and/or TBA, knowing that there was a substantial danger that if their instructions and/or warnings were followed that gasoline containing MTBE and/or TBA dispensed into gasoline delivery systems would escape into the environment and contaminate groundwater;

    (c)    The Refiner Defendants and Distributor Defendants negligently delivered (directly or indirectly) gasoline containing MTBE and/or TBA into gasoline delivery systems which they knew, or should have known, were inadequate, old, leaking, and/or defective, and thereby created a substantial known danger that MTBE and TBA would be released into the environment and contaminate groundwater; and negligently provided instructions and/or warnings to the Owner/Operator Defendants concerning MTBE and TBA, knowing that there was a substantial danger that if their instructions and/or warnings were followed that gasoline containing MTBE and/or TBA dispensed into gasoline delivery systems would escape into the environment and contaminate groundwater;

    (d)    Defendants retained consultants and negligently controlled and/or directed their cleanup and remediation activities (or the lack thereof) at gasoline station sites,

thereby causing and permitting MTBE and/or TBA to contaminate and threaten Fresno's water system, and defendants failed to warn the appropriate entities and individuals, including Fresno, of known risks, spills, releases and/or leaks, and/or failed to undertake reasonable, appropriate, or necessary action to reduce, remediate, or abate MTBE and/or TBA groundwater contamination.

(e)    Defendants negligently overfilled gasoline delivery systems with gasoline containing MTBE and/or TBA, and/or spilled or released it at gasoline facilities near Fresno's water system.

(f)    When defendants learned, or reasonably should have learned, that MTBE and/or TBA were persistent, significant and/or widespread sources of groundwater contamination, or threatened to be so, defendants failed to warn the appropriate entities and individuals, including Fresno, of known risks, spills, releases and/or leaks, and/or failed to undertake reasonable, appropriate or necessary action to reduce, remediate, or abate MTBE and/or TBA groundwater contamination.

97.  The Refiner and Distributor Defendants had actual control over the Owner/Operator Defendants through a variety of means, including but not limited to written agreements, inspection rights, prescribing certain procedures and operating practices, sale of branded goods, agreements obligating the respective Owner/Operator Defendants to acquire, store and sell gasoline containing MTBE and/or TBA, and training. Therefore, the Refiner and Distributor Defendants had actual control over the Owner/Operator Defendants with leaking gasoline delivery systems and/or were vicariously liable for the acts and conduct of the Owner/Operator Defendants.

98. The MTBE and TBA contamination of Fresno's water system has varied and will vary over time and requires investigation, remediation, abatement, and/or treatment. The City of Fresno has engaged, or will engage, in remediation, abatement, investigation, and/or treatment programs and in securing replacement water supplies, and thereby has sustained, is sustaining, and will sustain, the damages alleged herein.

99. The defendants, and each of them, caused, created, and/or assisted in the creation of the trespass alleged herein.

100. For the reasons alleged herein, Fresno is entitled to an award of exemplary damages against defendants ARCO, Chevron USA, Shell, Exxon, Tosco (after 1996), Unocal, Union Oil, Kern Oil, TRMI, Ultramar (after 1996), Conoco, Equilon, ARCO Chemical, Lyondell, Valero Refining, Valero Marketing, and DOES 100 through 200. After the completion of additional investigation and discovery, Fresno may seek leave of court to amend this complaint to allege a claim for exemplary damages against additional defendants if warranted by the facts.

## FOURTH CAUSE OF ACTION

### (Nuisance Against All Defendants)

101. Fresno refers to paragraphs 1 through 100 above, and by this reference incorporates them into this cause of action as though fully set forth herein.

102. The negligent, reckless, intentional and ultrahazardous activity of the defendants and each of them, as alleged herein, has resulted in the contamination and pollution of and threats to Fresno's water system and thereby constitutes a nuisance. The contamination, pollution, and threats to Fresno's water system with MTBE and/or TBA and gasoline containing MTBE and/or TBA is a public nuisance as defined in Civil Code section 3479, Civil Code section 3480, Health and Safety Code section 5410, and Water Code section 13050, as it is injurious to health, indecent and offensive to the senses, obstructs the free use of property, interferes with the comfortable enjoyment of life or property, and is reasonably abatable. The defendants, and each of them, caused, created, and/or assisted in the creation of the nuisance alleged herein.

103. The Refiner, Manufacturer and Distributor Defendants, their agents and employees, marketed, distributed, promoted, and/or sold their products with reckless disregard for human health and the environment.

104. Fresno's water system is adversely affected by the nuisance.

105. The nuisance caused by defendants, and each of them, has substantially interfered with and obstructed Fresno's ability to provide a water supply free from unacceptable health risk, taste, odor, color, pollution and contamination, and to protect its water system and groundwater supplies from such harm.

106. Fresno owns and holds property rights and interests damaged by the nuisance. Fresno's injury is separate and distinct from that of the public.

107. Fresno has not consented to and does not consent to this nuisance. Defendants, and each of them, knew or should have known, that Fresno would not consent to this nuisance.

108. The Refiner and Distributor Defendants had actual control over the Owner/Operator Defendants through a variety of means, including but not limited to written agreements, inspection rights, prescribing certain procedures and operating practices, sale of branded goods, agreements obligating the respective Owner/Operator Defendants to acquire, store and sell gasoline containing MTBE and/or TBA, and training. Therefore, the Refiner and Distributor Defendants had actual control over the Owner/Operator Defendants with leaking gasoline delivery systems and/or were vicariously liable for the acts and conduct of the Owner/Operator Defendants.

109. As a direct and proximate result of the nuisance, Fresno has been damaged and is entitled to the compensatory and exemplary damages alleged herein, or to such other appropriate relief as Fresno may elect at trial, including, but not limited to equitable relief in the form of an order requiring the defendants to abate the nuisance properly as to Fresno.

110. For the reasons alleged herein, Fresno is entitled to an award of exemplary damages against Defendants ARCO, Chevron USA, Shell, Exxon, Tosco (after 1996), Unocal, Union Oil, Kern Oil, TRMI, Ultramar (after 1996), Conoco, Equilon, ARCO Chemical, Lyondell, Valero Refining, Valero Marketing, and DOES 100-200. After the completion of additional investigation and discovery, Fresno may seek leave of court to amend this complaint to allege a claim for exemplary damages against additional defendants if warranted by the facts.

## PRAYER

**WHEREFORE**, the City of Fresno requests judgment against defendants, and each of them, for:

1. Compensatory damages according to proof;

2. Exemplary damages in an amount sufficient to punish defendants ARCO, Chevron USA, Shell, Exxon, Tosco (after 1996), Unocal, Union Oil, Kern Oil, TRMI, Ultramar (after 1996), Conoco, Equilon, ARCO Chemical, Lyondell, Valero Refining, Valero Marketing, and DOES 100-200 and to deter those defendants from ever committing the same or similar acts;

3. An Order declaring that the defendants' gasoline delivery systems constitute a nuisance in the manner they are maintained and operated, and compelling defendants to abate that nuisance;

4. Pursuant to Civil Code section 1882.2, three times the amount of actual damages, plus the cost of the suit and reasonable attorneys' fees;

5. Reasonable attorneys' fees pursuant to Code of Civil Procedure section 1021.5 or otherwise, and costs incurred in prosecuting this action, and prejudgment interest to the full extent permitted by law; and

6. Such and other further relief as the court may deem just and proper.

Dated:  October 28, 2004

MILLER, AXLINE & SAWYER
A Professional Corporation

By:_____
DANIEL BOONE
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

In re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

This Document Relates To:

CITY OF FRESNO

      Plaintiff,

      vs.

CHEVRON U.S.A. INC.; CHEVRON
ENVIRONMENTAL SERVICES COMPANY;
SHELL OIL COMPANY; EXXON CORPORATION;
TOSCO CORPORATION; UNOCAL
CORPORATION; UNION OIL COMPANY OF
CALIFORNIA; KERN OIL & REFINING
COMPANY; VALERO REFINING COMPANY-
CALIFORNIA; VALERO MARKETING AND
SUPPLY COMPANY [DOE 1]; TESORO
PETROLEUM CORPORATION [DOE 2]; TESORO
REFINING AND MARKETING COMPANY, INC.
[DOE 3]; TEXACO REFINING AND MARKETING
INC.; ULTRAMAR, INC.; ARCO
CHEMICAL COMPANY; LYONDELL
CHEMICAL COMPANY; COASTAL CHEM, INC.;
EXXON MOBIL CORPORATION;
CONOCOPHILLIPS CORPORATION; ATLANTIC
RICHFIELD COMPANY; EQUIVA
SERVICES LLC; TEXACO, INC.; EQUILON
ENTERPRISES LLC; CHEVRONTEXACO
CORPORATION; NEW WEST PETROLEUM;
DUKE ENERGY MERCHANTS, LLC; DUKE
ENERGY TRADING AND MARKETING, LLC;
PACIFIC SOUTHWEST TRADING; NORTHRIDGE
PETROLEUM MARKETING U.S., INC.; DUKE
ENERGY MERCHANTS CALIFORNIA, INC.; NEW
WEST PETROLEUM, LLC;
WESTPORT PETROLEUM INC.; NELLA
OIL COMPANY LLC; CITGO PETROLEUM
CORPORATION [DOE 201]; AND DOES 4
THROUGH 200, 202 THROUGH 400, and
401 THROUGH 600, inclusive,

      Defendants.

Master File C.A. No. 1:00-Civ.
1898

MDL No 1358 (SAS)

Case No. 04 CV-04973 (SAS)

Transferred from:
United States District Court for
the Northern District of California
Case No. C 03-5378 JSW
(Honorable Jeffrey S. White)

Removed from:
Superior Court of California,
County of San Francisco,
Case No. CGC-03-425649

**PROOF OF SERVICE RE:**
**FIRST AMENDED**
**COMPLAINT [JURY TRIAL**
**DEMANDED]**

1

## PROOF OF SERVICE VIA E-MAIL

1     I, Christina Hise, hereby declare under penalty of perjury under the laws of the State of

2

3 California that a true copy of the following:

4 ### FIRST AMENDED COMPLAINT

5 was served via e-mail, pursuant to Judge Shira A. Schiendlin's Case Management Order dated

6 April 1, 2004 [Section IV], upon:

7

8 Peter Sacripanti, Esq.                        Defense Liaison Counsel.
    McDermott Will & Emery LLP

9 psacripanti@mwe.com

10 Stan Alpert, Esq.                             Plaintiffs' Liaison Counsel.
    salpert@weitzlux.com

11

12 James Pardo, Esq.                            Defense Liaison Counsel
    McDermott Will & Emery LLP

13 jpardo@mwe.com

14 Stephen J. Riccardulli, Esq.             Defense Liaison Counsel
    McDermott Will & Emery LLP

15 sriccardulli@mwe.com

16 on the 29th day of October, 2004.

17

18                                         CHRISTINA HISE

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 2



Law Offices of

# MILLER, AXLINE & SAWYER

A Professional Corporation

DUANE C. MILLER
MICHAEL AXLINE
A. CURTIS SAWYER, JR.

TRACEY L. O'REILLY
EVAN EICKMEYER
DANIEL BOONE
JUSTIN MASSEY
BRIAN D. SHANNON
DONALD MOONEY, of Counsel

February 8, 2013

Jeffrey J. Parker, Esq.
Sheppard Mullin Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071-1422

Re:    *City of Fresno v. Chevron U.S.A., Inc., et al.*
       No. 1:04-cv-04973-SAS (MDL 1358)
       **Plaintiff City of Fresno's Meet-and-Confer re Defendants' Proposed Motion
       for Partial Summary Judgment Regarding Plaintiff's Nuisance Claims**

Dear Mr. Parker:

This will serve as plaintiff City of Fresno's ("Fresno's") initial meet-and-confer letter re defendants' proposed motion for partial summary judgment regarding Fresno's nuisance claims.

## The Manufacturer Defendants' Conduct Assisted in the Creation of a Nuisance

In *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 457 F.Supp.2d 455, 464 (S.D.N.Y. 2006) (applying California law), Judge Scheindlin held that summary judgment was not appropriate if there was a genuine issue of material fact whether defendants did more than merely manufacture or distribute gasoline containing MTBE without warning of the danger posed. In *In re MTBE*, plaintiff Orange County Water District alleged that such evidence included: defendants represented that gasoline containing MTBE could be used in the same manner as gasoline without MTBE and that it did not require any different or special handling instructions, defendants marketed and promoted MTBE knowing that USTs could not safely contain MTBE, and defendants knew that MTBE posed "unique dangers" to groundwater. *Id.*

The *In re MTBE* opinion noted that "a key sentence from [*County of Santa Clara v. Atlantic Richfield Co.*, 137 Cal.App.4th 292, 309 (Cal. Ct. App. 2006)] bears repeating": "'[L]iability is premised on defendants' promotion of lead paint for interior use with knowledge of the hazard that such use would create.'" 457 F.Supp.2d at 464. Judge Scheindlin concluded: "If the allegations made by OCWD are true, such allegations would be sufficient to sustain a nuisance claim against the defendants." *Id.*

Jeffrey J. Parker, Esq.
February 8, 2013
Page 2

Here, plaintiff's interrogatory responses have repeatedly set forth a detailed summary of such evidence: that the industry was well aware of the environmental risks posed by MTBE, that the industry sought to conceal those risks from the public and regulators, and that the industry continued to utilize MTBE without providing adequate warnings concerning MTBE's environmental and health risks. (See, e.g., Plaintiff City of Fresno's Supplemental Responses to Chevron Defendants' Second Set of Interrogatories to Plaintiff, at Response to Interrogatory No. 19.) This evidence is further justification for plaintiff declining to dismiss its nuisance claims against manufacturer defendants, as detailed in the following list.

**Site-Specific Allegations**

In response to the Table of Defendants and Subject Sites in Attachment 1 to your letter dated December 12, 2012, plaintiff responds as follows:[1]

1. M & S Texaco, 2619 S. East Avenue
Plaintiff is willing to dismiss its nuisance claim against: Kern Oil, Lyondell.
Plaintiff declines to dismiss its nuisance claim against: Shell.

The site became a Shell-branded station in 1998 and remained Shell-branded until at least 2009. (Shell Defendants' Responses to City of Fresno's First Set of Interrogatories to Defendants, Exh. B, at p. 8; Jatinder Dhillon Depo., pp. 29:20-23, 39:5-10, 39:19-21.) Company representatives gave the station operator instructions, including a manual, for cleaning up gasoline releases. (Jatinder Dhillon Depo., pp. 27:4-11.) While the station was branded Shell, company representatives from Shell would visit the station. (Jatinder Dhillon Depo., pp. 149:4-15.)

2. Tosco #30587, 1610 N. Palm
Plaintiff is willing to dismiss its nuisance claim against: Coastal, Kern Oil, Lyondell.
Plaintiff declines to dismiss its nuisance claim against: Chevron.

Union Oil branded gasoline was supplied to this site from approximately 1974 until at least 1998-1999. (Gary Beacom depo., pp. 13-15, 47, 157-158.) Union Oil owned the USTs at this site from at least 1974 until at least 1998-1999. (Gary Beacom depo., pp. 84-85.) Union Oil is a wholly owned subsidiary of Chevron.

3. 7-Eleven #19198, 1596 N. Palm Avenue
Plaintiff is willing to dismiss its nuisance claim against: Citgo.

---

[1] Four of the potential moving defendants from the Table – Arco, CEMC, Chevron Corp., and Unocal – are omitted here due to their dismissal from the action.

Jeffrey J. Parker, Esq.
February 8, 2013
Page 3

4. Valley Gas, 2139 South Elm Street
Plaintiff is willing to dismiss its nuisance claim against: Kern Oil, Tesoro.

5. Chevron #9-4374, 1160 Fresno Street
Plaintiff is willing to dismiss its nuisance claim against: Union Oil, Coastal, Kern Oil, Lyondell.

6. Shell (1212), 1212 Fresno Street
Plaintiff is willing to dismiss its nuisance claim against: Kern Oil, Lyondell.

7. Unocal #6353, 1418 E. Shaw
Plaintiff is willing to dismiss its nuisance claim against: Coastal, Kern Oil, Lyondell.
Plaintiff declines to dismiss its nuisance claim against: Chevron.

The site was branded Union Oil from before the early 1990's until at least 1997. (Gary Beacom depo., pp. 13-15, 47, 157-158.) Union Oil owned the USTs at the site from at least the early 1990's until at least 1997. (Gary Beacom depo., pp. 32-33.) Union Oil branded gasoline was supplied to this site from at least the early 1990's until at least 1997. (Gary Beacom depo., pp. 13-15.) Union Oil is a wholly owned subsidiary of Chevron.

8. U&A Gas & Food Mart, 2929 N. Blackstone
Plaintiff is willing to dismiss its nuisance claim against: Tesoro.

9. Ratcliff Gas, 2145 Blackstone Avenue
Arco has been dismissed from the case.

10. Beacon #537, 798 West Gettysburg, Clovis
Arco has been dismissed from the case.

11. Gilbert's Exxon, 4142 East Church
Plaintiff is willing to dismiss its nuisance claim against: Coastal, Lyondell.
Plaintiff declines to dismiss its nuisance claim against: Exxon.

The station was branded Exxon from at least 1978 until it closed in 1991. (Gilbert Romero depo., pp. 18:8-10, 23:17-20, 34:16-35:19, 137:12-15, 137:17-138:13, 138:17-139:2.) The station sold Exxon gasoline while it was branded Exxon. (Gilbert Romero depo., p. 99:10-18.)

12. Van Ness Auto, 2740 North Van Ness
Plaintiff is willing to dismiss its nuisance claim against: Union Oil, Coastal, Kern Oil, Lyondell.
Plaintiff declines to dismiss its nuisance claim against: Chevron.

Jeffrey J. Parker, Esq.
February 8, 2013
Page 4

Chevron supplied gasoline to this site from prior to the relevant time period until at least August 1986. Subsequently, R.V. Jensen delivered gasoline refined by Chevron from 1986 until at least 2006. (James Clements depo., pp. 25-27; Garabed Bedirian depo., pp. 37:11-19, 38:17-39:10; Chevron U.S.A. Inc.'s Supply Declaration of Frank G. Soler and exhibits thereto.) Upon the station operator's request, Chevron installed more Chevron signs at the station. (Garabed Bedirian depo., p. 41:3-8.) Chevron inspected the station. (Garabed Bedirian depo., p. 41:9-10, 41:13-17.) Chevron gave the station operator instructions on cleaning up gasoline releases, including a phone number to call in case of a gasoline spill. (Garabed Bedirian depo., pp. 65:11-12, 65:14-17, 66:2-7.) As early as 1985, Chevron's Dealer Supply Contract required the station to "comply with Company's programs and procedures for handling unleaded gasolines in their present or future form," and mandated that "Company's representatives shall have the right at any time to enter upon the premises where unleaded gasolines purchased hereunder are stored by or for Dealer and to take such quantities of unleaded gasolines as they deem necessary to check the quality of such products." (James Clements depo., pp. 45:6-21, 46:10-47:10, 47:13-16, 48:8-10, and Exh. 7 thereto.)

13. Smith Tank Lines (Former Carey Oil), 30 E. Divisadero Street
Plaintiff is willing to dismiss its nuisance claim against: Kern Oil, Valero.

14. Red Triangle, 2809 South Chestnut Avenue
Plaintiff is willing to dismiss its nuisance claim against: Coastal, Kern Oil, Lyondell, Nella. Plaintiff declines to dismiss its nuisance claim against: Exxon, Tesoro, Valero.

Red Triangle was an Exxon dealer and bought gasoline from Exxon. (Gail Blue depo., pp. 16:18-17:14, 17:16-22, 18:23-19:2; Glen Blue depo., pp. 22:4-6, 22:8-12, 22:14-20.)

Red Triangle bought gasoline from Tesoro. (Gail Blue depo., pp. 17:12-14, 17:16-17, 18:1-3.)

Valero supplied gasoline containing MTBE to Red Triangle from 1997 through 2002. (The Valero Defendants' Objections and Responses to Plaintiff City of Fresno's First Set of Interrogatories to Defendants, first page of Exhibit A [Red Triangle is listed alphabetically as "DBA RED TRIANGLE OIL CO."].) After James Shehadey's purchase of Red Triangle in 2002, Valero remained as one of the main suppliers of gasoline to Red Triangle in 2002-2003. (Joel Hohenshelt Depo., at pp. 32, 34, 83; James Shehadey Depo., at pp. 133-134 ["It was actually Valero refined . . . ."]).

15. Chevron #9-9093, 3996 N. Parkway Drive
Plaintiff is willing to dismiss its nuisance claim against: Union Oil, Coastal, Kern Oil, Lyondell.

Jeffrey J. Parker, Esq.
February 8, 2013
Page 5


<u>16. Tosco #39118, 1605 N. Cedar</u>
Plaintiff is willing to dismiss its nuisance claim against:  Coastal, Kern Oil, Lyondell.
Plaintiff declines to dismiss its nuisance claim against:  Chevron.

      Union Oil supplied gasoline to this site from prior to the relevant time period until at least November 1996.  (Union Oil Company of California's Supply Declaration of Frank G. Soler and exhibits thereto.)  Union Oil supplied gasoline to this site from prior to the relevant time period until at least November 1996.  (Union Oil Company of California's Supply Declaration of Frank G. Soler and exhibits thereto.)  Union Oil owned the USTs and the real estate at the site from prior to the relevant time period until at least April 1997.  (Defendant Union Oil Company of California's Declaration in Response to CMO #75 of Grace N. Chan.)  Union Oil is a wholly owned subsidiary of Chevron.

<u>17. Beacon #3519, 4591 E. Belmont Avenue</u>
Plaintiff is willing to dismiss its nuisance claim against:  Kern Oil.

<u>18. Beacon-Arco #615, 1625 Chestnut Avenue</u>
Plaintiff is willing to dismiss its nuisance claim against:  Kern Oil.

<u>19. Exxon Service Station, 4594 East Tulare Street</u>
Plaintiff is willing to dismiss its nuisance claim against:  Coastal, Kern Oil, Lyondell.
Plaintiff declines to dismiss its nuisance claim against:  Exxon.

      The station sold Exxon-branded gasoline from 2002 or 2003 until 2006.  (Narinder Singh depo., pp. 22:7-12, 25:18-24, 28:21-25, 29:17-21.)

<u>20. 7-Eleven #13917, 3645 Olive Avenue</u>
Plaintiff is willing to dismiss its nuisance claim against:  Citgo.


      Please let us know if you wish to meet-and-confer regarding these matters.

                Very truly yours,

                *Evan Eickmeyer*

                Michael Axline
                Evan Eickmeyer


cc:  All Counsel (via LNFS)

# EXHIBIT 3

Law Offices of

# MILLER, AXLINE & SAWYER

A Professional Corporation



| | |
|---|---|
| DUANE C. MILLER | TRACEY L. O'REILLY |
| MICHAEL AXLINE | EVAN EICKMEYER |
| A. CURTIS SAWYER, JR. | DANIEL BOONE |
| | JUSTIN MASSEY |
| | BRIAN D. SHANNON |
| | DONALD MOONEY, of Counsel |

March 6, 2013

**VIA LNFS**

Brian Ledger, Esq.
Gordon and Rees
101 W. Broadway, Suite 2000
San Diego, CA 92101

Re:   *City of Fresno v. Chevron U.S.A., Inc., et al.*
No. 1:04-cv-04973-SAS (MDL 1358)
**Plaintiff City of Fresno's Further Meet-and-Confer re Kern Oil's Proposed
Motion for Summary Judgment**

Dear Mr. Ledger:

This letter responds to yours of February 14 and 26, 2013. In your February 14, 2013,
letter you assert: "the evidentiary support for this allegation [that Kern Oil is liable at 14 stations
in Fresno] are interrogatory responses from Chevron, Shell and Valero." February 14, 2013,
letter at 2. This is not accurate.

While it is true that the meet and confer letter sent to you by Evan Eickmeyer on
December 11, 2012, identified Chevron, Shell and Valero's interrogatory responses as disclosing
that Kern Oil supplied Chevron, Shell and Valero with neat MTBE during specified time periods,
it is not accurate to infer, as you do in your letter, that this constitutes the entire "evidentiary
support" for Kern Oil's liability at the 14 stations.

The evidentiary support for the City's claims against Kern Oil includes evidence that
Shell, Chevron and Valero supplied MTBE gasoline to these stations during the time period in
which Kern Oil supplied MTBE to those refiners. I will not rehearse all of that evidence (which
is voluminous) in this meet and confer letter, but I do want to correct any mis-impression you
may have that the City's evidence is limited to the evidence showing Kern supplied neat MTBE
to refiner defendants. As Judge Scheindlin stated at the January 11, 2013, status conference:
"Basically, I want to know what you're relying on in the generalities . . . you'll have to come up
with the documentation at the motion stage . . . ." Tr. at 35:2-7.

That said, with respect to evidence that specifically names Kern Oil, the City will rely on
the interrogatory answers referenced in Evan Eickmeyer's December 11, 2012, email to you. We

Brian Ledger, Esq.
March 6, 2013
Page 2

will not oppose your use of Mr. Eickmeyer's email in aid of a summary judgment motion, but that letter does not suggest or imply that those answers constitute the entirety of the evidence we would use in opposing any summary judgment motion by Kern Oil. In fact, for the reasons set out above and below, we strongly suggest that you save the Court and the parties the time and expense of filing a summary judgment motion at all.

As I am sure you are aware, in *In Re MTBE*, 591 F. Supp.2d 259 (S.D. N.Y. 2008), Judge Scheindlin, in discussing the commingled product theory, distinguished suppliers of neat MTBE from refiners and distributors of MTBE gasoline, and also distinguished both neat MTBE suppliers and MTBE gasoline distributors and refiners from gasoline retailers. You cite to the January 11, 2013, status conference with Judge Scheindlin and the discussion of Duke Energy, a distributor of MTBE gasoline, for the proposition that the City must provide evidence that a jobber delivered Duke MTBE gasoline to a particular station. That is not accurate.

At the January 11, 2013, status conference, in a discussion of Fresno's claims against Duke Energy, Judge Scheindlin rejected defendants' argument that the City would have to amend its complaint to allege the commingled product theory, and made clear that use of the theory is simply "a matter of proof." Tr. at 40:20-21. She also made clear that she was not interested in re-visiting her prior commingled product rulings. Tr. at 40:11-16 ("I said what I had to say about that theory, and it's old news.") This alone should make you re-consider your proposed motion for summary judgment.

After stating that the City did not need to amend its complaint to allege commingled product theory, Judge Scheindlin asked: "can you *also* do it with direct product, Tracey [tracing?] or do you *have* to rely on the blended, you know, total product and the markets?" Tr. at 41:4-6. Ms. O'Reilly stated in the context of the discussion of Duke that "[w]e're not going with commingled in the pipeline. We're going with direct evidence, is what we explained [with respect to Duke in the City's pre-conference letter]." Tr. at 41:12-13. Ms. O'Reilly went on to explain the City has evidence that "Duke Energy mixed several gas station sites, received delivery, deliveries of MTBE gasoline from jobbers to whom Duke Energy sold MTBE gasoline." Tr. at 42:11-13.

This discussion, and Ms. O'Reilly's statements, merely clarified that with respect to some defendants, including Duke, the City's evidence will allow the jury to conclude that the defendants' product was delivered directly to some stations. Ms. O'Reilly did *not* state that the City would not rely on the commingled product theory for all defendants or even all stations. Since, as Judge Scheindlin's commingled product opinion makes clear, it is impossible to trace neat MTBE to individual release sites, such a conclusion would never have been reached in such an off-hand and indirect way.

Brian Ledger, Esq.
March 6, 2013
Page 3

As I stated during our face-to-face meet and confer session on March 4, 2013, the City
will be relying on the commingled product theory method of proof for defendants against whom
the City does not have direct evidence of delivery to particular stations. This evidence will
include (but not be limited to) the deposition of Dickman Lum in the South Tahoe and Merced
cases and the deposition of Fresno terminal manager Robert Kennedy in City of Dinuba v.
Unocal Corp.

The consequence of relying on the commingled product theory with respect to a particular
defendant, of course, is that the City cannot pursue nuisance claims or punitive damage claims
against that defendant. As you know, the City has already notified you that it will not be
pursuing nuisance claims against Kern Oil. *See* February 8, 2012, Eickmeyer letter to Jeff
Parker. Consequently, there is no need to file any summary judgment motions with respect to
nuisance or punitive damage claims with respect to these defendants.

With respect to the commingled product theory and Kern Oil, Shell, Chevron and Valero
have provided interrogatory responses stating that they provided MTBE gasoline to terminals
serving the Fresno area during the times that Kern Oil was supplying them with neat MTBE. As
Judge Scheindlin made clear in *In Re MTBE*, 591 F. Supp.2d 259, 268 (S.D. N.Y. 2008): "even
when the jury concludes that plaintiffs have not met their burden to prove that any particular spill
of gasoline caused contamination in a well, plaintiffs may still prove their claims against gasoline
manufacturers under the commingled product theory."

As Judge Scheindlin also recognized, the time that the contamination of groundwater
occurred is an issue of fact for the jury and the jury may estimate, from evidence presented, a
range of time during which the contamination occurred. 591 F. Supp.2d at 275.

Particularly with respect to suppliers of neat MTBE such as Kern, Judge Scheindlin
concluded that plaintiffs may pursue product liability or negligence claims against manufacturers
for placing a dangerous product into the stream of commerce, regardless of whether plaintiffs can
identify a retailer whose leaking tank spilled gasoline into a well's capture zone. *Id.* In this
respect Kern Oil is in the same position as Lyondell and Equistar.

Because the City has shown that Kern supplied MTBE to refiners who delivered MTBE
gasoline to Fresno terminals during the relevant times, and releases from under Judge
Scheindlin's commingled product theory it is Kern's burden to prove that its MTBE "was not in
the relevant place at the relevant time." 591 F. Supp.2d at 278. Your letter does not provide any
such exculpatory evidence.

With that said, we have notified Valero in a meet and confer letter today that the City will
be withdrawing its claim against Valero with respect to the Smith Tank Lines site at 30 E.

Brian Ledger, Esq.
March 6, 2013
Page 4


Divisadero Street in Fresno, and the City will similarly withdraw its claims against Kern Oil at this site. The City will not, however, withdraw its claims against Kern at the Beacon-Arco # 615 site, as requested in your March 6, 2012, email. Your email cites the fact that underground storage tanks were removed at this site prior to 2000, when Kern supplied neat MTBE to Valero, but fails to mention that the tanks were replaced at that time and the station continued to sell gasoline, including Valero gasoline, during the time that Kern was supplying Valero with neat MTBE.

Sincerely,

Michael Axline
Counsel for City of Fresno


cc: All Counsel (via LNFS)

EXHIBIT 4

7117823

Oct 17 2005
9:08PM

UNITED STATES DISTRICT COURT )  Master File C.A. No. 1:00-1898
SOUTHERN DISTRICT OF NEW YORK )
————————————————— )  MDL 1358 (SAS)
                             )  No. M21-88
In re Methyl Tertiary-Butyl Ether )
("MTBE") Products Liability Litigation )  DEFENDANT ULTRAMAR, INC.'S
————————————————— )  DISCLOSURE PURSUANT TO JUNE
                             )  9, 2005 DIRECTIVE AS AMENDED BY
This document relates to:    )  THE COURT ON AUGUST 12, 2005 .
                             )
All cases                    )
————————————————— )

Defendant Ultramar, Inc. ("Ultramar"), by and through its attorneys, and pursuant to the

Court's directive of June 9, 2005 as amended by the Court on August 12, 2005, hereby provides

its declaration to the Court's Amended Successor Liability Questionnaire as follows:

1.  For each year beginning with January 1, 1979 to date, identify whether Ultramar engaged
    in designing, manufacturing, refining, distributing or marketing MTBE, TBA, and/or
    gasoline containing MTBE or TBA ("MTBE Activities").

    **Response:**

    Ultramar manufactured gasoline containing MTBE for distribution in California at its
    Wilmington, California refinery from 1995 through 2003.   Ultramar refined and/or
    manufactured MTBE and/or gasoline containing MTBE at a refinery in Avon, California
    from approximately September 1, 2000 through May 17, 2002.

    Ultramar engaged in the wholesale/bulk marketing and/or selling of gasoline containing
    MTBE in California from 1994 through July 1, 2002.

    From approximately 1995 through 2003, Ultramar owned and/or operated retail gasoline
    stations in California from which gasoline containing MTBE may have been sold.

2A.  If Ultramar ceased its MTBE Activities at any time, identify which, if any, of Ultramar's
     operating entities and/or directly- or indirectly-held subsidiaries continued the MTBE
     Activities, and the start and end date of such Activities.

    **Response:**

    Ultramar ceased the above-described refining/manufacturing activities at the Avon
    refinery on May 17, 2002, when this refinery was sold to Tesoro Petroleum, Inc. Tesoro
    Petroleum, Inc. is not an operating entity or subsidiary of Ultramar. Ultramar ceased the
    above-described refining/manufacturing activities at the Wilmington refinery in

November 2003. The activities were not continued by any operating entity or subsidiary of Ultramar.

Ultramar ceased the above-described wholesale/bulk marketing and/or selling activity on or about July 1, 2002, when this activity was undertaken by Valero Marketing and Supply Company ("VMSC"), an indirectly-held subsidiary of Ultramar.

At various times, Ultramar has ceased the ownership and/or operation of certain retail gasoline stations in California from which Ultramar may have sold gasoline containing MTBE.

2B. If any of plaintiffs' causes of action against Ultramar are proven at trial and Ultramar would claim that at some point in time liability for those causes of action shifted, identify whether there are any documents that explicitly refer to a shift in liability for past or future MTBE Activities. If the entity named does not dispute that it would be liable in place of Ultramar should any liability be found, then no documentation need be produced so long as both Ultramar and the named entity stipulate in writing that there is no dispute. If the entity named disputes that it would be liable, then Ultramar must produce documentation as to its claim that liability passed to that entity.

**Response:**

Ultramar is unable to determine with precision what causes of action or damages are alleged by plaintiffs against Ultramar. Ultramar contends as follows:

The refining and/or manufacturing activities at the Avon, California refinery described above were ceased by Ultramar on May 17, 2002, when this refinery was sold to Tesoro Petroleum, Inc. Tesoro Petroleum, Inc. assumed the liability, if any, associated with Ultramar's MTBE Activities at the Avon refinery pursuant to the Sale and Purchase Agreement of Golden Eagle Refining and Marketing Assets between Ultramar and Tesoro Petroleum, Inc. dated February 4, 2002. Ultramar has no authority from Tesoro Petroleum, Inc. to stipulate to the liability of Tesoro Petroleum, Inc.

Ultramar ceased the wholesale/bulk sale and/or marketing activity described above on July 1, 2002, when this activity was undertaken by VMSC. Ultramar refers Plaintiffs to Defendant Valero Marketing and Supply Company's Disclosure Pursuant to June 9, 2005 Directive as Amended by the Court on August 12, 2005. Ultramar objects to any requirement that it stipulate to the liability of VMSC.

In the unlikely event that any of the claims asserted by Plaintiffs against Ultramar are based on particular releases of gasoline from stations that may have been owned or operated by Ultramar, it is possible that Ultramar will contend that such liability was assumed by a subsequent purchaser or lessor. Until such stations are identified, it is impossible to determine whether any shifting of liability occurred.

3A.    If Ultramar ceased its MTBE Activities at any time, identify whether a successor-in-interest (e.g. purchaser or newly formed entity) continued the MTBE Activities, and the start and end date of such Activities.

**Response:**

See Response to Inquiry 2A.

3B.    If any of plaintiffs' causes of action against Ultramar are proven at trial and Ultramar would claim that at some point in time liability for those causes of action shifted, identify whether there are any documents that explicitly refer to a shift in liability for past or future MTBE Activities.  If the entity named does not dispute that it would be liable in place of Ultramar should any liability be found, then no documentation need be produced so long as both Ultramar and the named entity stipulate in writing that there is no dispute. If the entity named disputes that it would be liable, then Ultramar must produce documentation as to its claim that liability passed to that entity.

**Response:**

See Response to Inquiry 2B.

Dated:  October 17, 2005

                                     J. Clifford Gunter III
                                       Tracie J. Renfroe
                                       M. Coy Connelly

                                       BRACEWELL & GIULIANI LLP
                                       711 Louisiana St., Suite 2300
                                       Houston, Texas 77002-2770
                                       Telephone:  (713) 221-1404
                                     Telecopier:  (713) 221-2123

                                     ATTORNEYS FOR DEFENDANT
                                     ULTRAMAR, INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of Ultramar, Inc.'s Disclosure Pursuant to June 9, 2005 Directive as Amended by the Court on August 12, 2005 was served upon counsel for MDL Plaintiffs and all other counsel of record via LexisNexis File & Serve on the 17th day of October, 2005.

M. Coy Connelly

EXHIBIT 5

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK
### -oOo-

In re: Methyl Tertiary Butyl
Ether ("MTBE") Products
Liability Litigation

Master File No.
1:00-1898

This Document Relates To:

City of Fresno
v. Chevron U.S.A. Inc., et al.,
Case No. 04 Civ. 4973

Case No.
MDL 1358(SAS)

**COPY**

DEPOSITION OF GARY BEACOM

August 10, 2011 at 9:00 (9:19) a.m.

Before:  ERIC L. JOHNSON
RPR, CSR #9771

Taken at:
Fresno, California




# DEPOBOOK
## Court Reporting Services
### (800) 830.8885
### www.depobook.com
### Professional Reporting Services Nationwide!

1  something pertaining to an earlier answer, please let us

2  know and we will be happy to go back and revisit that.

3       Do you understand that?

4  A.  Yes.

5  Q.  Have you consumed any medication, including

6  prescription drugs or alcohol, that may affect your

7  ability to recollect events and give testimony here

8  today?

9  A.  No.

10 Q.  And we will be happy to take a break anytime

11 anyone needs to, or if we have to change the video.  Do

12 you have any questions about the deposition process?

13 A.  No.

14 Q.  Starting with the station at 1410 -- I'm sorry,

15 1418 East Shaw, do you recall when you first became

16 affiliated with that station?

17 A.  No.

18 Q.  Do you recall if you were -- purchased the

19 station or a franchisee or what your relationship was?

20 A.  Franchisee.

21 Q.  Do you recall approximately what year it was

22 you first became affiliated with it?

23 A.  No.

24 Q.  Do you recall if it was in the 1990s or before

25 that?

13

Deposition of Gary Beacom  /  August 10, 2011

```
 1          A.   It would be in the '90s.

 2          Q.   Do you remember if it was toward the early,

 3     mid, or later '90s?

 4          A.   I believe early.

 5          Q.   Did the station have a brand when you first

 6     had -- became the franchisee?

 7          A.   Yes.

 8          Q.   What was that?

 9          A.   76.

10          Q.   Are you still affiliated with that station

11     currently?

12          A.   No.

13          Q.   And what year did you stop being the

14     franchisee?

15          A.   Three years later, I believe.

16          Q.   So that would be approximately the mid or later

17     1990s?

18          A.   Yes.

19          Q.   Did you ever purchase the station?

20          A.   No.

21          Q.   Was the station always branded 76 during the

22     time you operated it?

23          A.   Yes.

24          Q.   Is it your understanding that gasoline

25     deliveries to the station were 76 branded gasoline?
```

14

1        A.   Yes.

2        Q.   Do you recall any occasion, for example, due to

3   a shortage that any other company had to deliver their

4   gas to the station?

5        A.   No.

6        Q.   Do you recall if the trucks that delivered

7   gasoline to the station were branded 76?

8        A.   Sometimes.

9        Q.   Do you recall any other names on the trucks

10  that delivered gas to that station?

11       A.   Beneto.

12       Q.   Do you recall anyone else besides 76 or Beneto

13  on the trucks?

14       A.   No.

15       Q.   Do you recall ever being advised or learning

16  where the gas was refined that was being delivered to

17  the station?

18       A.   Repeat that.

19       Q.   Well, I can ask it a little better perhaps.  Do

20  you recall ever hearing or learning what refinery was

21  supplying the gas to the station?

22       A.   Once in a while we would get one from Richmond.

23  Most of the time it was from locally here, the tank

24  farm.

25       Q.   When you say "the tank farm," is that sometimes

15

 1     I was there, now that I am thinking about it.

 2          Q.  And when you took over the station, to your

 3     understanding, who owned the underground storage tanks

 4     used for gasoline?

 5          A.  Union Oil.

 6          Q.  Is it correct that there would be underground

 7     piping connecting the underground storage tanks to the

 8     gas dispensers?

 9          A.  Yes.

10          Q.  And to your understanding, who owned that

11     underground piping?

12          A.  Union Oil.

13          MR. DAVIS:  Objection; lacks foundation as to

14     both questions related to ownership.

15          MR. EICKMEYER:  Sorry.  As soon as he's done

16     with the objection, you can answer.

17          THE WITNESS:  Yes.

18          MR. EICKMEYER:  Q.  I think -- I think you had

19     said Union Oil?

20          A.  Yes.

21          Q.  And to your understanding, who owned the gas

22     dispensers when you took over the station?

23          A.  Union Oil.

24          MR. DAVIS:  Same objections.

25          MR. EICKMEYER:  Q.  Go ahead.

                                                          32

Deposition of Gary Beacom / August 10, 2011

1          A.   Union Oil.

2          Q.   Was it your understanding that the company

3     continued to own the underground storage tanks during

4     the entire time you operated the station?

5          A.   Yes.

6          Q.   Was it your understanding the company continued

7     to own the underground piping during the entire time

8     that you operated the station?

9          A.   Yes.

10          MR. DAVIS:  Same objections.

11          MR. EICKMEYER:  Q.  Is it your understanding

12     the company continued to own the gas dispensers during

13     the entire time you operated the station?

14          MR. DAVIS:  Same objections.

15          THE WITNESS:  Yes.

16          MR. EICKMEYER:  Q.  Now, in the area where the

17     customers would park underneath the canopy, do you

18     recall if the ground there was concrete or what the

19     ground surface was?

20          A.   Concrete.

21          Q.   Do you recall if there were any drains in the

22     concrete?

23          A.   I don't recall.

24          Q.   Do you recall if the concrete where the

25     customers would park was painted or sealed?

33

1    there.  So had you ever heard about a previous tank

2    removal or replacement?

3         A.  No.

4         Q.  You mentioned that the -- I am sorry, actually

5    I don't think I asked you.  I asked about a different

6    station.  At 1418 East Shaw, do you recall what it had

7    been branded at the time you took it over; in other

8    words, before you operated it?

9         A.  76.

10        Q.  Do you have a recollection of the operator at

11   1418 East Shaw before you took over?

12        A.  Yes, but I can't say his name.

13        Q.  You don't remember or you mean you can't

14   pronounce it?

15        A.  I can't remember it.  If you can find it I will

16   tell you because the -- Neesak?  Something or other.  I

17   believe they called him Mike.

18        Q.  Did you ever have an understanding as to

19   whether the station at 1418 East Shaw originally opened

20   as a 76 station?

21        A.  I believe it was always a 76 station.

22                     (Deposition Exhibit 4 marked for

23                        identification)

24             MR. EICKMEYER:  I will show you what I have

25   marked as Exhibit 4.  This is a County of Fresno Annual

                                                        47

1    Mr. Beacom?

2         A.   No.

3         Q.   There is a name listed, third line down, looks

4    like Tony -- perhaps Yap, Y-a-p.  Do you recognize that

5    person's name?

6         A.   No.

7         Q.   Under Summary of Discussion it says, "A repair

8    permit was taken out on 7/2/90.  Leaks were fixed on the

9    vent/vapor lines," end quote.

10             Do you recall any leaks on the vent/vapor lines

11   being fixed in about October of 1990?

12        A.   I don't recall.

13        Q.   Now, at the station on Palm, is it correct that

14   there were underground storage tanks when you took over

15   that site?

16        A.   Yes.

17        Q.   And to your understanding, who owned those

18   underground storage tanks?

19             MR. DAVIS:  Objection; lacks foundation.

20             THE WITNESS:  Union Oil.

21             MR. EICKMEYER:  Q.   Was it your understanding

22   that the company owned the tanks during the entire time

23   you operated the Palm station?

24        A.   Yes.

25        Q.   Is it correct that you had underground piping

84

Deposition of Gary Beacom / August 10, 2011

1    connecting the underground storage tanks to the gas

2    dispensers at Palm?

3       A.  Yes.

4       Q.  And who, to your understanding, owned the

5    piping when you took over the Palm station?

6          MR. DAVIS:  Objection; lacks foundation.

7          THE WITNESS:  Union Oil.

8          MR. EICKMEYER:  Q.  Was that true that the

9    company owned it, to your understanding, during the

10   entire time you operated the Palm station?

11      A.  Yes.

12        MR. DAVIS:  Same objections.

13        MR. EICKMEYER:  Q.  When you took over the Palm

14   station, to your understanding, who owned the gas

15   dispensers at that site?

16      A.  Who owned the gas dispensers?  Union Oil.

17      Q.  Was it true that the company owned the

18   dispensers, to your understanding, during the entire

19   time you operated the Palm site?

20      A.  Yes.

21      Q.  The signature at the bottom of this page looks

22   like Susan -- perhaps Coursey, C-o-u-r-s-e-y.  Do you

23   recall ever having any discussions by anyone with that

24   name at the county?

25      A.  No.

85

1              THE WITNESS:  Yes.

2              MR. DAVIS:  Q.  And Union Oil made you aware of

3    that; is that correct?

4         A.  Yes.

5              MR. EICKMEYER:  Same objections.

6              MR. DAVIS:  Q.  And you knew for this station,

7    just as the other station, you knew that gasoline always

8    had to be handled with care?

9         A.  Yes.

10              MR. EICKMEYER:  Vague and ambiguous.

11              MR. DAVIS:  Q.  And that was true regardless of

12    the chemical makeup of the gasoline; is that correct?

13              MR. EICKMEYER:  Same objections.

14              THE WITNESS:  Yes.

15              MR. DAVIS:  Q.  Again, I want to ask you about

16    the supply of the gasoline at this station.  Is it your

17    testimony that one to two percent of the gasoline

18    delivered to this station came from the Richmond -- from

19    the Richmond area?

20         A.  Yes.

21              MR. EICKMEYER:  Misstates the testimony.

22              MR. DAVIS:  Q.  That's your best recollection,

23    that you don't know?

24         A.  Yes, I don't know.

25         Q.  Is it your understanding that all of the

                                                    157

Deposition of Gary Beacom  /  August 10, 2011

1    gasoline sold at this station was 76 branded gasoline?

2        A.   Yes.

3        Q.   And that's true for the entire time you

4    operated this station?

5        A.   Yes.

6        Q.   Do you have any information that Chevron USA,

7    Inc. ever sold gasoline to this station?

8        A.   No.

9        Q.   Do you have any information that gasoline

10   refined by Chevron was delivered to this station?

11       A.   No.

12       Q.   And again, the mopping and hosing that occurred

13   at this station, that was not done for the purpose of

14   cleaning gasoline, was it?

15       A.   No.

16       Q.   Was there ever an instance at this station

17   where there was a spill that could not be immediately

18   cleaned up with the absorbent product?

19       A.   Not to my knowledge.

20       Q.   In your entire time operating the 1418 East

21   Shaw station and the 1610 North Palm station, did anyone

22   ever tell you that either site was a source of

23   groundwater contamination?

24       A.   No.

25       Q.   Today is the first -- when -- when

158

```
 1   STATE OF CALIFORNIA     )
                             (    ss.
 2   COUNTY OF STANISLAUS    )

 3        I, ERIC L. JOHNSON, do hereby certify that I am a

 4   licensed Certified Shorthand Reporter, duly qualified

 5   and certified as such by the State of California;

 6        That prior to being examined, the witness named in

 7   the foregoing deposition was by me duly sworn to testify

 8   to tell the truth, the whole truth, and nothing but the

 9   truth;

10        That the said deposition was by me recorded

11   stenographically at the time and place herein mentioned;

12   and the foregoing pages constitute a full, true,

13   complete and correct record of the testimony given by

14   the said witness;

15        That I am a disinterested person, not being in any

16   way interested in the outcome of said action, or

17   connected with, nor related to any of the parties in

18   said action, or to their respective counsel, in any

19   manner whatsoever.

20

21        DATED:  August 28, 2011

22

23                              _____
                                Eric L. Johnson, CSR, RPR
24

25
                                                          180
```

# EXHIBIT 6

UNITED STATES DISTRICT COURT    )    Master File No. 1:00-1898
SOUTHERN DISTRICT OF NEW YORK  )    MDL No. 1358 (SAS)
    )    M21-88
————————————————————  )
    )
In re Methyl Tertiary Butyl Ether    )
("MTBE") Products Liability Litigation  )
    )
    )    **VALERO DEFENDANTS'**
————————————————————  )    **OBJECTIONS AND RESPONSES**
    )    **TO PLAINTIFF CITY OF**
This document relates to:    )    **FRESNO'S FIRST SET OF**
    )    **INTERROGATORIES TO**
*City of Fresno v. Chevron U.S.A., Inc., et*  )    **DEFENDANTS**
*al.,* No. 04 Civ. 4973    )
    )
————————————————————  )

       Pursuant to Federal Rule of Civil Procedure 33 and Local Rule 26.3, Ultramar Inc.,

Valero Marketing and Supply Company, and Valero Refining Company–California (collectively

"Valero Defendants") answer and object to Plaintiff City of Fresno's ("Plaintiff" or "City of

Fresno") First Set of Interrogatories served on September 2, 2008 as follows.

      Dated: November 5, 2008.

 

                             _____

                             J. Clifford Gunter III
                             M. Coy Connelly
                             Amy E. Parker
                             BRACEWELL & GIULIANI LLP
                             711 Louisiana St., Suite 2300
                             Houston, Texas 77002-2770
                             Telephone: (713) 221-1335
                             Telecopier: (713) 221-1212

                             Attorneys for Defendants
                             ULTRAMAR INC., VALERO MARKETING AND
                             SUPPLY COMPANY, AND VALERO REFINING
                             COMPANY-CALIFORNIA

Valero Defendants refer Plaintiff to their responses to Interrogatory Nos. 1 and 3 for information responsive to this request.

## INTERROGATORY NO. 3:

IDENTIFY the address of all gasoline stations that YOU lease or have leased within the RELEVANT GEOGRAPHIC AREA since 1979.

     a.     State the lease dates for each station YOU identified.

## RESPONSE:

Valero Defendants object to this Interrogatory on the grounds that it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. This Interrogatory is specifically overbroad both with respect to time, as explained in General Objections Nos. 6 and 7, and to the extent it calls for the identification of all gasoline stations owned by Valero Defendants in the RGA without regard to whether any of those stations is in the vicinity of any drinking water production well or whether any of those stations has ever been identified as the source of a release of gasoline containing MTBE. Subject to, and without waiving, the foregoing objections and the General Objections and Limitations set forth above, Valero Defendants answer as follows:

1. #3481: 6390 N. Blackstone, Fresno, CA 93710 (04/11/66—present)
2. #3615: 1625 N. Chestnut Ave., Fresno CA 93703 (07/24/98—present)
3. #3616: 4001 N. Marks Ave., Fresno, CA 93722 (01/22/85—present)
4. #3659: 4514 W. Shaw Ave., Fresno, CA 93722 (08/05/88—present)
5. #3519: 4591 E. Belmont, Fresno, CA 93702 (03/01/71—10/20/99)

In addition to the foregoing, Ultramar PLC acquired some retail stations leases when it purchased Beacon Oil Company through a stock purchase transaction in November, 1981.[1] To the best of Valero Defendants' current knowledge, most, if not all, of the acquired stations were leased and then sub-leased to third parties who actually operated the station in question. However, given the dates of the transactions at issue, the documentation necessary to confirm Valero Defendants' precise relationship with these stations as well as the dates of the leases is no longer available. Approximate dates have been provided where known.

Several of these leaseholds were terminated prior to 1995 when Ultramar Inc. merged with Diamond Shamrock Corporation. Most, if not all, of the leaseholds were terminated prior to the December 31, 2001 merger of Ultramar Diamond Shamrock Corporation with and into Valero Energy Corporation. Notwithstanding the foregoing, the following is the list of all such stations located within the RGA which may have been leased during the relevant time frame:

1. Beacon #77: B Street, Fresno CA (1935—Lease Termination Date Unknown)

---

[1] Beacon Oil Company changed its name to Ultramar Inc., effective September 18, 1989.

2.  Beacon #78: Belmont at 12th Street, Fresno CA (1935—Closure Date Unknown)
3.  Beacon #80: Tulare & Chestnut, Fresno CA (Dates of Leasehold Unknown)
4.  Beacon #496: 4809 E. Kings Canyon, Fresno CA (Dates of Leasehold Unknown)
5.  Beacon #595: 3768 S. Highway 99, Fresno CA (09/01/83—03/27/96)
6.  Beacon #620: 4594 E. Tulare, Fresno CA (01/22/85—08/28/95)
7.  Beacon #658: 1334 N. First St., Fresno CA (Lease terminated 11/01/96)
8.  Beacon #257: 9th & McKenzie, Fresno CA (Site leased 10/46.  Lease Termination Date Unknown)
9.  Beacon #432: 2950 E. Ventura, Fresno CA (Dates of Leasehold Unknown)
10. Beacon #433: 1372 N. First St., Fresno CA (Dates of Leasehold Unknown)
11. Beacon #437: 4652 Belmont, Fresno CA (Dates of Leasehold Unknown)
12. Beacon #438: 4005 E. Jensen, Fresno CA (Dates of Leasehold Unknown)
13. Beacon #460: 603 G. Street, Fresno CA (04/28/75—04/30/90)
14. Beacon #472: 2295 S. Elm Ave., Fresno CA (Dates of Leasehold Unknown)
15. Beacon #516: 2430 E. Olive St., Fresno CA (07/15/85—10/31/91)
16. Beacon #538: 2139 S. Elm, Fresno CA (Lease terminated 11/01/91)
17. Beacon #579: 5190 E. Olive, Fresno CA (Lease terminated 11/01/91)
18. Beacon #619: 3076 E. Gettysburg, Fresno CA (01/22/85—08/03/89)
19. Beacon #9-1: 6900 N. Motel Dr., Fresno CA (Dates of Leasehold Unknown)

## INTERROGATORY NO. 4:

IDENTIFY the address of all gasoline stations with which YOU have or have had a retail supply contract within the RELEVANT GEOGRAPHIC AREA since 1979.

      a.     State the retail supply contract dates for each station YOU identified.

## RESPONSE:

Valero Defendants object to this Interrogatory on the grounds that it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. This Interrogatory is specifically overbroad both with respect to time, as explained in General Objections Nos. 6 and 7, and to the extent it calls for the identification of all gasoline stations owned by Valero Defendants in the RGA without regard to whether any of those stations is in the vicinity of any drinking water production well or whether any of those stations has ever been identified as the source of a release of gasoline containing MTBE.  Valero Defendants further object to the extent this Interrogatory seeks information outside of Valero Defendants' possession, custody and control.  Valero Defendants are not in possession of information pertaining to the operation, maintenance or environmental remediation which may be associated with any of the following stations.  Notwithstanding the foregoing or the General Objections set forth above, Valero Defendants respond as follows:

1.  #2339: 1919 W. Clinton Ave., Fresno, CA 93705 (06/13/03—present)
2.  #2365: 603 G. Street, Fresno, CA 93722 (05/01/93—present)
3.  #2516: 2837 N. Parkway Drive, Fresno, CA 93722 (07/18/03—present)

4.  #3165: 3076 E. Gettysburg Ave., Fresno, CA 93726 (Branded Beacon prior to 2003.
    Date of initial branding is unknown.  Re-branded Valero 10/17/03—present)
5.  #4984: 4591 E. Belmont Ave., Fresno, CA 93702 (10/20/99—present)
6.  #21854: 1460 "P" Street, Fresno CA 93721 (1/22/85—10/22/04, 01/27/05—present)
7.  #24087: 1785 W. Shaw Ave., Fresno, CA 93711 (12/10/01—09/26/03, 11/27/07—
    present)
8.  #21788: 2414 N. Marks Ave., Fresno CA 93705 (03/01/91—05/16/05, 11/27/07—
    present)
9.  #23972: 388 E. Shaw, Fresno, CA 93710 (Dates of operation unknown, station closed
    prior to 2002).
10. #21753: 394 E. Olive Ave., Fresno, CA 93728 (09/21/95—04/12/00)
11. #24049: 1680 W. Olive Ave., Fresno, CA 93728.  (Date of initial branding unknown.
    De-branded 07/17/01).
12. #23990: 525 S. Clovis Ave., Fresno, CA 93727.  (10/20/99—01/09/02, 11/09/04—
    present)
13. #21894: 5687 E. Kings Canyon Rd, Fresno, CA 93722, (04/19/95—11/03/02,
    01/27/05—present)

## INTERROGATORY NO. 5:

IDENTIFY all jobbers, franchisees and/or distributors to whom YOU supplied MTBE gasoline
within the RELEVANT GEOGRAPHIC AREA since 1979.

      a.      State the dates that YOU supplied MTBE gasoline to each jobber, franchisee,
and/or distributor that YOU identified.

## RESPONSE:

Valero Defendants object to this Interrogatory on the grounds that it is overbroad, unduly
burdensome and not reasonably calculated to lead to the discovery of admissible evidence.
Valero Defendants further object to this Interrogatory on the grounds that the term "franchisees"
is vague, ambiguous, and undefined.  Further, Valero Defendants object to this Interrogatory to
the extent it seeks information regarding sales of gasoline containing MTBE made within the
RGA.  Valero Defendants do not keep such information in the regular course of business.  Valero
Defendants' sales records are kept by county.  This response will therefore provide information
regarding sales made to entities in Fresno County.

Valero Defendants further object on the grounds that this Interrogatory seeks information outside
of Valero Defendants' possession, custody and control.  For example, apart from deliveries made
to Valero Defendants' aforementioned retail and branded stations, Valero Defendants are not in
possession of information regarding the ultimate delivery point of any gasoline sold to third
parties in Fresno County.  Notwithstanding the foregoing, Valero Defendants respond as follows:

Valero Defendants refer Plaintiff to Exhibit A attached to these responses which provides
information responsive to Interrogatory No. 5 and Subpart (a) for Fresno County.

**EXHIBIT A**

| CUSTOMER | 1996 | 1997 | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 |
|---|---|---|---|---|---|---|---|---|
| 513 MARINE CORPS RECRUIT DEPT | | | | | | | | X |
| AMBER RESOURCES LLC | | | | | X | X | | |
| ARCO PRODUCTS COMPANY | | X | X | | | | | |
| ARIA OIL INC | | | | | X | | X | |
| ARMY & AIRFORCE EXCHANGE SERVICE | | | | | | | X | X |
| AVIS RENT A CAR SYSTEM INC | | X | X | X | | | | |
| BABA | | | X | X | | | | |
| BAFAIZ BROTHERS | | | | X | | | | |
| BAHADAR S. JOHAL | X | X | X | X | X | X | X | |
| BAY AREA / DIABLO PETROLEUM CO | | X | X | X | X | X | X | X |
| BENETO, INC | | X | X | X | X | X | X | X |
| BLACKBURN OIL COMPANY LLC | | | | | X | X | X | |
| BOB JACOBS | | | | | X | X | X | |
| BONG UN & SOUK JA KANG | | X | X | X | | | | |
| BOYETT PETROLEUM | | | | | X | X | X | X |
| BSKF DENIS, INC. | | | | | | | X | |
| BUFORD OIL CO | | X | X | X | X | X | X | |
| C & L MINI MART | X | X | X | X | X | X | X | X |
| C & N ENERGY LTD. | | X | | | | | | |
| C L BRYANT | | X | X | X | X | X | X | X |
| C P PHELPS, INC. | | X | X | X | X | X | X | X |
| CALICO PETROLEUM EXCHANGE | | | | | | | X | |
| CALIFORNIA FRESNO OIL CO. | | X | X | X | X | X | X | |
| CALIFORNIA HIGHWAY PATROL | | X | | X | X | X | X | |
| CHANG BOK KIM | | | | | X | X | | |
| CHASE'S FOOTHILL PETROLEUM | | X | X | X | X | | X | X |
| CHEVRON U.S.A., INC. | | X | X | X | | | | |
| CIRCLE K STORES INC. | | X | | | | | | |
| COOL FUEL INC | | | | X | | | | |
| COSBY OIL CO INC | | | | X | X | X | | |
| COX PETROLEUM TRANSPORT | | | | | | X | | |
| DARLING & DURST | | X | | X | | X | X | X |
| DASSEL'S PETROLEUM INC | | | | X | X | X | X | X |
| DBA KAWEAH LEMON CO | | X | X | | | | | |
| DBA RED TRIANGLE OIL CO. | | X | X | X | X | X | | |
| DBA: GOSHEN TRAVEL PLAZA | | X | X | | | | | |
| DELHI MINI MART | | X | | X | X | X | | |
| DON ROSE OIL COMPANY, INC. | | X | X | X | X | X | X | X |
| DUNIGAN FUELS, INC. | | | | | | | X | |
| DWELLE BROTHERS | | | | | X | X | X | |
| E & J AKHANA | | X | X | X | X | X | | |
| E & J ARCO | | X | | | | | | |
| E. R. VINE & SONS, INC. | | | | | X | X | | X |
| EL MONTE GAS CO. INC. | | X | X | X | X | X | | |
| EQUILLON ENTERPRISES LLC | | | X | X | | | | |
| EQUIVA TRADING CO | | X | | | | | X | X |
| EXXON COMPANY, U.S.A. | | X | X | | | | | |
| EXXONMOBIL OIL CORPORATION (S&D) | | | | | | | X | X |
| FALCON FUELS INC | | | | | | X | X | X |
| FEDERAL EXPRESS CORPORATION | | X | X | | | | | |
| FIFTH WHEEL TRUCK STOP | | X | X | X | X | X | X | X |

**EXHIBIT A**

| CUSTOMER | 1996 | 1997 | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 |
|---|---|---|---|---|---|---|---|---|
| FOOTHILL GAS BEACON | | X | | | | | | |
| FRANK DENIS INC | X | X | X | X | X | X | X | |
| Freight Adjustment | | | | | X | | | |
| G P RESOURCES INC | | | | X | X | X | X | |
| GASAMAT OIL CORP OF COLORADO | | | | X | X | X | X | |
| GEORGE W. LOWRY, INC. | | | | | | | | X |
| GEORGE'S BEACON SERVICE | | X | X | X | X | X | X | X |
| GOLDEN GATE PETROLEUM | | | | | X | X | | |
| GOODRICH OIL COMPANY | | X | | | | | | |
| GOSHEN TRAVEL PLAZA | X | X | X | X | X | X | X | |
| GRAPEVINE OIL CO INC | | X | X | | | X | X | |
| GURDIP S DHILLON | | | | | | X | X | X |
| GUTHRIE PETROLEUM INC. | | | | | | | | X |
| H & S SERVICES | X | X | X | X | X | X | X | |
| HANFORD TRI-MART | | X | X | X | X | X | | |
| HIRA PETROLEUM | | | | | | | X | |
| INTER-STATE OIL COMPANY | | | | | | | X | X |
| ITL, INC. | | | | | | | | X |
| J A FISCHER INC | | X | X | X | X | X | X | |
| J B DEWAR INC | | X | X | X | X | X | X | X |
| J C LANDSDOWNE INC | | X | X | X | X | X | X | |
| J.A. FISCHER INC. | | | | | | | X | |
| J.C. LANSDOWNE, INC. | | | | | | X | X | X |
| JACK GRIGGS INC | | X | X | X | X | X | X | X |
| JACO OIL CO. INC | | X | X | X | X | X | X | X |
| JEFFRIES BROS. INC. | | | | | | X | X | |
| JERRY'S BEACON | | X | | | | | | |
| JOE GOMES & SON INC | | X | X | X | X | X | X | |
| JOHN DRAB | | | | | X | | | |
| JULIEN OIL CO INC | | X | X | X | X | X | X | X |
| KANG'S ARCO GAS STATION | | X | | X | X | | | |
| KAWEAH LEMON CO | | X | X | X | X | | X | X |
| KERN OIL & REFINING COMPANY | | | | | | | X | |
| LARRY GAITHER | | X | X | | | | | |
| LAWRENCE J. COATES | | | | | | | X | |
| LEON H BARTLETT INC | | X | X | X | X | X | X | |
| LITTLEROCK MINI N GAS | | | | | X | | | |
| LUU THIEN LE | | | X | | | | | |
| Madera Beacon Ultramart | | | | | | | X | X |
| MANOUHER SHAHNEMATOLLAHI | X | | | | | | X | X |
| MANSFIELD OIL CO | | | | X | X | X | X | X |
| MERRIMAC PETROLEUM INC | | X | | | X | X | X | |
| MORRO BAY FUEL DOCK INC | X | X | | | | | | |
| MUSKET CORPORATION | | | | | | | X | X |
| NATIONAL CAR RENTAL | | | | X | X | | | |
| NATIONAL PETROLEUM MARKETING | | X | | | | | | |
| NAVY EXCHANGE 110-350 | | | X | | | | | |
| NAVY EXCHANGE SERVICE CENTER | X | X | X | X | X | X | | |
| NELLA OIL COMPANY | | X | X | X | X | X | X | X |
| NEW WEST PETROLEUM | | X | X | | | X | X | |
| NICOLETTI OIL CO | | X | X | X | X | X | X | X |

**EXHIBIT A**

| CUSTOMER | 1996 | 1997 | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 |
|---|---|---|---|---|---|---|---|---|
| NIRMAL GILL | | | | | | | X | X |
| ONYX PETROLEUM INC | | X | X | X | | | | |
| P S TRADING | | X | | | | | | |
| PENCE PETROLEUM | | | | | X | X | X | |
| PETRO-DIAMOND, INC. | | | | | | X | X | X |
| PETROLEUM TRADERS CORP | | | X | X | X | X | X | X |
| PILOT OIL CORP | | X | X | X | X | | | |
| PILOT TRAVEL CENTERS, LLC | | | | | | | X | X |
| PINNACLE PETROLEUM, INC. | | | | | X | X | X | X |
| PRIME GAS, INC | | | | | | | | X |
| R M PARKS | | X | X | X | X | | | |
| R V JENSEN INC | | | | X | | | | |
| R. M. PARKS INC. | | | | | X | X | X | X |
| RATHMANN OIL CO | | X | X | X | X | X | X | X |
| RAVITEZ SINGH SEKHON | | | | | | | X | |
| RED TRIANGLE OIL CO. | | | | | X | X | X | X |
| RENES BEACON | | X | | X | X | X | X | X |
| RHODES INC | | X | X | X | X | X | X | X |
| RIVER CITY PETROLEUM | | X | X | X | X | X | X | |
| ROBERT L VERNON INC | | X | X | X | X | X | X | X |
| ROBERT V. JENSEN, INC. | | | | | | X | X | X |
| ROCHE OIL CO | | X | X | X | X | X | X | X |
| ROE OIL CO | | X | X | | | | X | |
| SAFEWAY, INC | | | | | | X | X | |
| SAI ENTERPRISES | | X | | | | | | |
| SAWYER OIL & CHEMICAL CORP. | | X | X | X | | | | |
| SC FUELS | | | | | | X | X | X |
| SEBASTIAN OIL DISTRIBUTOR | | | | | | | X | X |
| SEIBERTS OIL CO | X | | X | X | X | X | X | |
| SHELL OIL COMPANY | | | | X | | | | |
| SHERWIN PETROLEUM, INC. | | | | X | | | | |
| SHOA ESHRAGHI | | | | | X | X | | |
| SILVAS OIL CO INC | | X | X | X | X | X | X | X |
| SILVEIRA PETROLEUM, INC. | | | | | X | X | X | X |
| SO COUNTIES OIL | | X | | | | | | |
| SOCO GROUP INC | | | | | X | X | | |
| SOUTHERN COUNTIES OIL | | X | X | X | X | X | X | |
| SPARTAN TANK LINES | | X | | | | | | |
| SPOLSDOFF ENTERPRISES | X | X | X | | X | | X | X |
| STAN BOYETT & SON | | | | | | X | X | |
| STAN ROBERTSON'S BEACON | | X | | X | X | | X | |
| STUART'S PETROLEUM | | X | | | | | | |
| SUNNYSIDE FOOD & LIQUOR | | | | | | | X | X |
| TESEI PETROLEUM | | X | X | X | X | X | X | X |
| TESEI PETROLEUM INC. | | X | | | | X | X | X |
| TESORO REFINING MARKETING & SUPPLY | | | | | | | X | |
| TEXACO REFINING AND MKTG, INC. | | X | X | | | | | |
| THE HERTZ CORPORATION | | | | | | X | | |
| THE SOCO GROUP INC | | X | X | X | X | | | |
| TOM R. WARD INC. | | X | X | X | X | | X | X |
| TOMS SIERRA CO | | X | | | | | | |

**EXHIBIT A**

| CUSTOMER | 1996 | 1997 | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 |
|---|---|---|---|---|---|---|---|---|
| TOSCO REFINING CO (EXCH) | | | X | | X | | | |
| TOWER ENERGY GROUP (P/L) | | | | X | | | | |
| TOWER GAS | X | X | X | X | X | | | |
| TRINIS OIL INC | | X | X | X | X | X | X | X |
| TRUCKERS OIL COMPANY | | | | | | | | X |
| TRUMAN ARNOLD COMPANIES | | | | | | | X | X |
| ULTRAMAR INC. | | | | X | X | X | X | |
| ULTRAMAR SERVICE STATIONS | X | X | X | X | X | | | |
| ULTRAMAR TRUCK STOPS/CARDLOCKS | X | X | X | X | X | | | |
| ULTRAMAR, INC. (RETAIL) | | | | | | | X | X |
| USA PETROLEUM CORP | | X | X | X | X | X | X | X |
| VALLEE FOOD STORES | X | X | X | X | X | X | X | X |
| VALLEY CONVENIENCE STORES INC | X | X | X | X | X | X | X | X |
| VALLEY PACIFIC PETROLEUM SERVICES | | | | | | X | X | X |
| VISA PETROLEUM INC | | X | X | X | X | X | X | X |
| W. P. DAVIES OIL COMPANY | | | | | X | X | X | X |
| WEST & SHAW ARCO | | | | | | X | X | X |
| WEST HILLS OIL CO | | X | X | X | X | X | X | X |
| WHITE RANCH COMPANY | | X | X | X | X | X | X | X |
| WHOLESALE FUELS INC | | X | X | X | X | X | X | X |
| WILLIAMS TANK LINES | | | | | | X | | |
| ZOLLIE KNIGHT, INC. | | | | | | | X | |

**INTERROGATORY NO. 7:**

IDENTIFY each terminal that YOU own or owned which served the RELEVANT GEOGRAPHIC AREA since 1979.

      a.     State the dates of ownership for each terminal YOU identified.

      b.     IDENTIFY all Exchange and/or Throughput Partners for each terminal YOU identified.

      c.     IDENTIFY each pipeline used to supply gasoline for each terminal YOU identified.

**RESPONSE:**

Valero Defendants object to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Valero Defendants further object on the grounds that the phrase "served the RELEVANT GEOGRAPHIC AREA" and the term "supply" are vague, ambiguous and undefined. Valero Defendants further object to this Interrogatory to the extent it seeks information outside of Valero Defendants' possession, custody, and control. For example, Valero Defendants are not in possession of information regarding whether gasoline containing MTBE sold to third parties may have been delivered to service stations located in the RGA after it left Valero Defendants' possession, custody and control. Notwithstanding the foregoing, Valero Defendants respond as follows:

Valero Refining Company—California owns a truck rack associated with the Benicia Refinery.

      a.    05/15/00—present
      b.    Valero Refining Company—California does not have any exchange or thruput partners at this terminal.
      c.    The Benicia truck rack does not deliver product via pipeline.

**INTERROGATORY NO. 8:**

IDENTIFY each terminal at which YOU have or had a position which served the RELEVANT GEOGRAPHIC AREA since 1979.

      a.     State the dates of during which YOU maintained a position for each terminal YOU identified.

**RESPONSE:**

Valero Defendants object to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Valero Defendants further object on the grounds that the term "position" and the phrase "served the RELEVANT GEOGRAPHIC AREA" are vague, ambiguous and undefined. Valero Defendants further object to this Interrogatory to the extent it seeks information outside of

Valero Defendants' possession, custody, and control. For example, Valero Defendants are not in possession of information regarding whether gasoline containing MTBE sold to third parties may have been delivered to service stations located in the RGA after it left Valero Defendants' possession, custody and control. Notwithstanding the foregoing, Valero Defendants respond as follows:

Valero Defendants maintained Terminal ThruPut Agreements with the following terminals for the storage and distribution of gasoline during the timeframes indicated:

1. SFPP Fresno (01/93—Present)
2. ST Stockton (01/01/92—Present)

**INTERROGATORY NO. 9:**

IDENTIFY the terminals at which YOU have or had the right to use gasoline loading racks which served the RELEVANT GEOGRAPHIC AREA since 1979.

     a.    State the dates of during which YOU have or had the right to use gasoline loading racks for each terminal YOU identified.

**RESPONSE:**

Valero Defendants object to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Valero Defendants further object on the grounds that the term "position" and the phrase "served the RELEVANT GEOGRAPHIC AREA" are vague, ambiguous and undefined. Valero Defendants further object to this Interrogatory to the extent it seeks information outside of Valero Defendants' possession, custody, and control. For example, Valero Defendants are not in possession of information regarding whether gasoline containing MTBE sold to third parties may have been delivered to service stations located in the RGA after it left Valero Defendants' possession, custody and control. Valero Defendants further object on the grounds that this Interrogatory is unnecessarily duplicative of Interrogatory No. 8. Notwithstanding the foregoing, Valero Defendants respond as follows:

Valero Defendants refer Plaintiff to their response to Interrogatory No. 8 for information responsive to this request.

**INTERROGATORY NO. 10:**

State the annual total volume of MTBE-containing gasoline which YOU supplied, sold, marketed or distributed within the RELEVANT GEOGRAPHIC AREA from 1979 to the present.

**RESPONSE:**

Valero Defendants object to this Interrogatory on the grounds that it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Valero Defendants further object to this Interrogatory on the grounds that it is both premature

HOUSTON\2232614.1

and irrelevant to the extent it seeks information upon which to base a market share calculation of damages in this case. At this stage of the litigation Plaintiff has not demonstrated its entitlement to damages or its right to seek to apportion any such damages based upon a market share theory of liability. Notwithstanding the foregoing, Valero Defendants respond as follows:

Valero Defendants sold the following volumes of gasoline containing MTBE in Fresno county during the years indicated:

1996: 6,729.36 bbl
1997: 2,270,990.19 bbl
1998: 2,492,110.83 bbl
1999: 2374236.91 bbl
2000: 2,925,807.54 bbl
2001: 3,554,431.97 bbl
2002: 3,398,118.93 bbl
2003: 2,439,079.98 bbl

## INTERROGATORY NO. 11:

For each year from 1986 to 2003, state the annual volume, in U.S. gallons, of MTBE gasoline that YOU produced in the United States that YOU provided to common carrier pipelines which serve the RELEVANT GEOGRAPHIC AREA.

## RESPONSE:

Valero Defendants object to this Interrogatory on the grounds that it is overbroad, unduly burdensome and not reasonably calculated.to lead to the discovery of admissible evidence. Valero Defendants further object to this Interrogatory on the grounds that it is both premature and irrelevant to the extent it seeks information upon which to base a market share calculation of damages in this case. At this stage of the litigation Plaintiff has not demonstrated its entitlement to damages or its right to seek to apportion any such damages based upon a market share theory of liability. Valero Defendants further object on the grounds that the term "serve the RELEVANT GEOGRAPHIC AREA," is vague, ambiguous, and undefined. Notwithstanding the foregoing, Valero Defendants respond as follows:

Valero Defendants state that the Benicia Refinery and the Golden Eagle Refinery produced the following volumes of gasoline containing MTBE during the years indicated. While both refineries delivered product into regional pipeline systems, they also shipped gasoline to customers via barge. Therefore the following volumes are inclusive of all gasoline containing MTBE produced at each refinery without regard to the means of shipment or delivery. Valero Defendants reserve the right to supplement this Interrogatory at a later date should the precise volumes shipped via pipeline ever become relevant to the resolution of this matter.

**Benicia Refinery:**
2000: 2,946,000 bbl CARB
2001: 4,504,000 bbl CARB

# EXHIBIT 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In Re: Methyl Tertiary Butyl Ether ("MTBE")          MDL 1358 (SAS)
Products Liability Litigation

**This Document Relates To:**

*City of Fresno v. Chevron U.S.A. Inc., et al.*
04 Civ. 04973

---

## CHEVRON U.S.A. INC.'S SUPPLY DECLARATION

I, Frank G. Soler, declare:

1.          I am Assistant Secretary for Defendant Chevron U.S.A. Inc. ("Chevron").

Chevron maintains electronic records of gasoline deliveries to retail gasoline stations.

True and correct copies of printouts from these records are attached as Exhibits A

through D. The column headings are defined as follows:

"Month/Year" is an accounting date for each transaction.

"Movement Type" means the type of transaction.

"Plant Name" lists the products terminal from which the gasoline was delivered.

"Trade Class" means the type of station to which it was delivered.

"Cust #/Facililty #" means the distinct number assigned to each Chevron branded

station.

"Customer Name" means the name of the dealer or operator at the facility.

"Operator #" means the distinct operator number assigned to each operator for a

Chevron branded station.

"MOT" means method of transportation.

"Delivery Date" is the date of delivery.

"Invoice #" is a distinct number assigned to each delivery.

"Material" is the distinct code assigned to each type of gasoline refined by Chevron.

"Material Name" is the name of the product associated with the distinct product code.

"Quantity Gallons" is the amount of gasoline delivered in gallons.

"Quantity in Barrels" is the amount of gasoline delivered in barrels.

"City" is the name of the city in which the retail facility is located or a distinct code assigned to a particular city.

Based on information that is currently available, the following material codes and names represent products that Chevron can identify as having contained MTBE:

- 201058 - CALCO PUL CGAS W/ETHER;
- 201068 - CHEVRON SUP CGAS W/ETHER;
- 201088 - PUL CGAS W/ETHER;
- 201118 - CHEVRON UL CGAS W/ETHER ;
- 201135 - BASE TEST OPRG W/ETHER NV;
- 201158 - CALCO UL CGAS W/ETHER;
- 201188 - UL CGAS W/ETHER;
- 201208 - CHEVRON PLUS GAS W/ETHER;
- 201288 - MUL CGAS W/ETHER;
- 201308 - CHEV REGULAR GASO W/MTBE;
- 201358 - CALCO REGULAR GASO W/MTBE;
- 201388 - REGULAR GASOLINE W/MTBE; and
- 201458 - CALCO MUL CGAS WIETHER.

In addition, the following Material codes represent products that Chevron can identify as containing MTBE or TAME:

- 201272;
- 201275;

2

- 201278;

- 201261;

- 201264;

- 201267;

- 201211; and

- 201217.

2.     I have reviewed Chevron's electronic records, and I am familiar with them. In particular, I have reviewed the electronic files to determine whether Chevron delivered gasoline to the sites identified in Plaintiff's discovery responses. Chevron's records reflect deliveries of gasoline to four of those sites and delivery to a jobber whom discovery in this case has revealed delivered some gasoline to two Chevron branded stations listed below.

3.     **2740 North Van Ness.** Chevron supplied gasoline to the station located at 2740 North Van Ness from prior to the relevant time period until August 1986. Subsequently, on information and belief, R.V. Jensen delivered gasoline refined by Chevron to this site between 1986 and 1999. For time period of January 1986 until August 1986, the dates and amounts of sales to this site, including a material code and name for each sale, are set forth in the print-out attached to this declaration as Exhibit A. During that time period, Chevron supplied this station with gasoline from a terminal located in Fresno, California. Between 1986 and 1999, Chevron supplied gasoline to R.V. Jensen. Chevron's sales to R.V. Jensen during that time period at the terminals in Richmond, Bakersfield, Banta, and Fresno are set forth in Exhibit E-1 and E-2. After selling the gasoline reflected in Exhibit E-1 and E-2 to R.V. Jensen, Chevron no longer owned the gasoline and did not have control over where the gasoline was delivered. Chevron supplied this station and R.V. Jensen with gasoline refined at its Richmond Refinery. Chevron's Richmond California refinery ("Richmond Refinery") began using MTBE as an octane enhancer in certain premium grades, on an as-needed basis, in 1990.

3

In 1992, Chevron began using MTBE at the Richmond Refinery during the wintertime months for purposes of meeting the oxygenate requirements mandated by the 1990 Clean Air Act Amendments. Then, in January 1995, Chevron began adding MTBE to gasoline manufactured at the Richmond Refinery on a year round basis to comply with the Clean Air Act's Reformulated Gasoline Program. Chevron notes that certain areas of Northern California did not have an oxygenate requirement, and that Chevron did not blend MTBE into all of the gasoline manufactured at its Richmond Refinery during the relevant time period. In 2003, Chevron stopped using MTBE at the Richmond Refinery and completed its transition from MTBE to ethanol in Northern California. Chevron's deliveries of gasoline to this station prior to 1990 did not contain MTBE. Chevron did not own the real estate or the USTs at this site, nor did it operate this site during the relevant time period. The RWQCB granted case closure for this site on September 2, 2008, stating that "necessary remediation has been completed at this site", "groundwater monitoring data suggests that no significant groundwater impact remains from the gasoline release at this site", and "residual petroleum hydrocarbons may be expected to attenuate naturally by the action of naturally-occurring soil bacteria".

4.    **225 North H Street.** Chevron supplied gasoline to the station located at 225 North H Street from prior to the relevant time period until October 1990. Subsequently, on information and belief, R.V. Jensen delivered gasoline refined by Chevron to this site between October 1990 and 2003. The dates and amounts of sales to this site between 1986 and October 1990, including material code and name for each sale, are set forth in the print-out attached to this declaration as Exhibit B. During that time period, Chevron supplied this station with gasoline from terminals located in Richmond, Bakersfield, Banta, and Fresno, California. Between October 1990 and 2003, Chevron supplied gasoline to R.V. Jensen. Chevron's sales to R.V. Jensen during that time period at the terminals in Richmond, Bakersfield, Banta, and Fresno are set forth in Exhibit E-1 and E-2. After selling the gasoline in Exhibit E-1 and E-2 to R.V. Jensen,

4

Chevron no longer owned the gasoline and did not have control over where the gasoline was delivered. Chevron supplied this station and R.V. Jensen with gasoline refined at its Richmond Refinery. Chevron did not blend MTBE into gasoline at the Richmond Refinery prior to 1990. Therefore, Chevron's gasoline supplied to this station prior to 1990 did not contain MTBE. Chevron stopped using MTBE at the Richmond Refinery in 2003. Thus, gasoline refined by Chevron that may have been supplied to this station after that time did not contain MTBE. Chevron did not own the real estate or the USTs at this site, nor did it operate this site during the relevant time period. Three underground storage tanks were excavated and removed from this site in 1999. FCDEH-FRESNO-004641. Environmental consultants investigating the site in 1999 concluded that the "site does not appear to pose a risk to groundwater". FCDEH-FRESNO-004641. In March 2000, the County of Fresno issued a no further action letter for this site.

5.   **5756 North 1st Street.** Chevron supplied gasoline to this site from prior to the relevant time period until June 1988. Chevron terminated its dealer supply contract with this station on May 31, 1988, and did not supply gasoline to the subject site after that time. The dates and amounts of sales to this site, including a material code and name for each sale, are set forth in the print-out attached to this declaration as Exhibit C. Chevron supplied this station with gasoline from terminals located in Richmond, Bakersfield, Banta, and Fresno, California. Chevron supplied this station with gasoline refined at its Richmond Refinery. Chevron did not blend MTBE into gasoline at the Richmond Refinery prior to 1990. Therefore, the gasoline that Chevron supplied to this station did not contain MTBE. Chevron owned the USTs at the subject site from prior to the relevant time period until June 1988, when they were removed. Chevron did not own the land at the subject site during the relevant time period. After removal of the tanks from this site, Chevron assessed and remediated this site. On May 23, 1996, Fresno County Health Services Agency advised Chevron that:

5

A.   The leak has been stopped and ongoing sources have been removed.

B.   The site has been adequately characterized.

C.   Little or no groundwater impact currently exists.

D.   No water wells, deeper drinking water aquifers, surface water, or other sensitive receptors are likely to be impaired....

E.   The site poses no significant risk to human health.

F.   The site poses no significant risk to the environment.

CHEVMDL1358_FRES_0000003252-54. On May 22, 1997 the County of Fresno's Health Services Agency advised Chevron that no further action was need in connection with this site. CHEVMDL1358_FRES_0000003330-32. Other than a single unconfirmed detection in 2003 at 0.54 ppb, MTBE has not been detected at this site.

6.   **3996 Parkway Drive.** Chevron supplied gasoline to this site from prior to the relevant time period until 1998. During that time period, Chevron owned the USTs at the subject site. During the relevant time period, Chevron leased the real estate at this site from a third-party. Chevron did not own the real estate at this site during the relevant time period. The dates and amounts of sales to this site, including a material code and name for each sale, are set forth in the print-out attached to this declaration as Exhibit D-1 and D-2. Chevron supplied this station with gasoline from terminals located in Richmond, Bakersfield, Banta, Fresno, and San Jose California. Chevron supplied this station with gasoline refined at its Richmond Refinery. Chevron did not blend MTBE into gasoline at the Richmond Refinery prior to 1990. Therefore, Chevron's gasoline supplied to this station prior to 1990 did not contain MTBE. The RWQCB issued a no further action letter to Chevron for this site on May 14, 2002.

7.   Based on Chevron's records it did not deliver gasoline to, supply, own, lease, or operate any of the other stations identified in Plaintiff's discovery responses.

8.   No one person for Chevron knows all of the matters stated herein, and therefore this declaration was prepared with the assistance and advice of representatives of and counsel for, said Chevron upon whose assistance and advice I have relied. This

6

declaration is limited by the records and information still in existence, presently recollected and thus far discovered.

    9.     Chevron reserves the right to supplement or amend this declaration should new information become available.

     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

     Executed this 18th day of April, 2011, at San Ramon, California.

_Frank G. Soler_

Frank G. Soler, Assistant Secretary

7

# EXHIBIT 8

LEXISNEXIS® FILE & SERVE
36968186
E-SERVICE
Apr 11 2011
3:55PM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re: Methyl *tertiary* Butyl Ether ("MtBE")
Products Liability Litigation

Master File No. 1:00-1898
MDL No. 1358 (SAS)

This Document Relates To:

*City of Fresno v. Chevron U.S.A. Inc., et al.,*
Case No. 04 Civ. 04973 (SAS)

## DEFENDANT UNION OIL COMPANY OF CALIFORNIA'S DECLARATION IN RESPONSE TO CMO # 75

In response to CMO # 75 and the request of Plaintiff City of Fresno, Defendant Union

Oil Company of California ("Union Oil") submits the following declaration.  Union Oil's

response here is limited to its ownership or lease of real estate or USTs that were used to store

gasoline during the relevant time period.  For the purposes of the above styled action, the

relevant time period is 1986 to 2003.  Union Oil's response is also limited to its ownership or

lease of real estate or USTs at the sites identified by Plaintiff City of Fresno in its current

discovery requests.  Subject to and without wavier of the above limitations, Union Oil responds

as follows:

1.     **1605 North Cedar Avenue.**  On information and belief, Union Oil owned the

USTs and the real estate at this site from prior to the relevant time period until April 1997.

Union Oil did not own or lease the real estate or the USTs at the subject site after April 1997.

2.     **5785 North 1st Street.**  Union Oil sold its refining and marketing assets to Tosco

in April 1997.  Therefore, Union Oil did not own or lease the real estate or the USTs at the

subject site after April 1997.  On information and belief, Union Oil did not own the real estate or

the USTs at the subject site prior to April 1997.  Union Oil has searched it s records and has not

located any information that shows that it owned or leased the real estate or USTs at the subject

site prior to April 1997. Documents produced by third parties suggest that persons other than Union Oil owned the tanks and real estate at the subject site between 1986 and 1997. *See* FCDEH-FRESNO-010618, 010608, 010604, 010602, 010555.

3.   **101 Roosevelt.** Union Oil owned the USTs at the subject site from prior to the relevant time period until December 1995 when they were removed. Union Oil has not owned USTs at this site since that time. Union Oil owned the real estate at this site from prior to the relevant time period until April 1997 when the property was sold to Tosco.

4.   Other than the information provided above, Union Oil did not own or lease the real estate or USTs at any of the sites identified in Plaintiff's current discovery responses during the relevant time period.

5.   No one person for Union Oil knows all of the matters stated herein, and therefore this declaration was prepared with the assistance and advice of representatives of and counsel for, said Union Oil upon whose assistance and advice I have relied. This declaration is limited by the records and information still in existence, presently recollected and thus far discovered.

6.   I reserve the right to supplement or amend this response should new information become available.

7.   I declare under penalty of perjury that the foregoing is true and correct. Executed at San Ramon, California, this ⁷ᵗʰ day of April, 2011.

Grace N. Chan, Assistant Secretary

2

## CERTIFICATE OF SERVICE

I hereby certify that on the 11 th day of April 2011, a true, correct, and exact copy of the foregoing document was served on all counsel via LexisNexis File & Serve.

_____
Samuel D. Davis

# EXHIBIT 9

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: Methyl *tertiary*-Butyl Ether ("MTBE") Products Liability Litigation<br><br>This Document Relates to:<br><br>*California – American Water Company v. Atlantic Richfield Co., et al.*, Case No. 03-5379 JSW (N.D. Cal.); *City of Fresno, et al, v. Chevron U.S.A. Inc., et al.*, Case No. 03-05378 JSW (N.D. Cal.); *Orange County Water District v. Unocal Corporation, et al.*, Case No. 03-1742 JVS (Anx)(C.D. Cal.); *People of the State of California, et al. v. Atlantic Richfield Co., et al.*, Case No. 03-2653 GEB DAD (E.D. Cal.); *Quincy Community Services District v. Atlantic Richfield Co., et al.*, Case No. 03-2582 LKK DAD (E.D. Cal.); *City of Riverside v. Atlantic Richfield Co., et al.*, Case No. 04-53 JVS (Anx)(C.D. Cal.); *City of Roseville v. Atlantic Richfield Co., et al.*, Case No. 03-2601 MCEGGH (E.D. Cal.); and *Martin Silver, et al. v. Alon USA Energy, Inc., et al.*, Case No. 03-2408 WQH (S.D. Cal.). | MDL No. 1358 (SAS)<br><br>**FURTHER RESPONSE OF DEFENDANT CHEVRON U.S.A. INC. TO PLAINTIFFS' PRELIMINARY SET OF INTERROGATORIES RE: DEFENDANT IDENTIFICATION** |

Defendant Chevron U.S.A. Inc. ("Chevron"), through counsel and pursuant to

Rules 26 and 33 of the Federal Rules of Civil Procedure, hereby responds to Plaintiffs'

Preliminary Set of Interrogatories Re: Defendant Identification ("Interrogatories") propounded in

the above-captioned actions. Chevron has been incorrectly named in certain cases as

ChevronTexaco Corporation or Chevron Chemical Corporation, which are distinct entities and

are not proper defendants. These answers are being provided by Chevron U.S.A. Inc. To the

extent a separate response might be required from ChevronTexaco Corporation or from Chevron

Chemical Corporation in those cases where those entities have been named, all discovery

directed to those entities is objectionable because those entities did not engage in any of the

conduct at issue in MDL 1358 and they are not proper defendants.

entity supplied You with MTBE Products, and the name and address of each refinery from which such MTBE Products were supplied.

**RESPONSE TO INTERROGATORY NO. 1:**

Chevron objects to this Interrogatory on the grounds that it is burdensome and oppressive to the extent it requires Chevron to determine whether gasoline supplied to Chevron within the State of California was delivered to the Counties of Monterey, Fresno, Orange, Sacramento, Riverside and San Bernardino, and the Cities of Quincy, Roseville and Alpine. Chevron further objects to this Interrogatory on the grounds that it is burdensome and oppressive to the extent it requires Chevron to identify the facility at which gasoline supplied to Chevron was refined.  Subject to and without waiving any of its objections, Chevron responds as follows:

Chevron has undertaken a review of records reasonably available to it and has conducted interviews with company personnel in an effort to determine the identities of companies that have supplied Chevron with gasoline that may have contained (but did not necessarily contain) MtBE within the State of California.  Product descriptions provided do not always allow Chevron to ascertain with precision whether particular types of conventional gasoline contained MtBE, as specification sheets for those varieties of gasoline permitted, but did not require, that the gasoline contain MtBE.  Chevron has prepared a compilation of its records in response to this Interrogatory, and will provide plaintiffs with that compilation in CD-ROM format concurrently with or shortly after the service of these responses.

**INTERROGATORY NO. 2:**

Please identify the name and address of each entity from which You obtained neat MTBE for use at any Refinery owned or operated by You that supplied gasoline for ultimate delivery into the Relevant Area, the dates or date ranges when MTBE was acquired from each such supplier, and the name and address of Your Refinery(ies).

## RESPONSE TO INTERROGATORY NO. 2:

### Neat MTBE Purchases

AGIP PETROLEUM CO., INC.
RICHMOND, CA 64525-0000
9/98, 4/99

AGIP PETROLEUM CO., INC.
COMPTON, CA 90220-0000
8/99

AMERICAN AGIP COMPANY,INC
RICHMOND, CA 94802-0000
12/93, 2/99

AMERICAN AGIP COMPANY,INC
MARTINEZ, CA 94553-0000
5/96, 11/96, 12/96

ARCO CHEMICAL CO.
SELBY, CA 94525-0000
4/91, 7/96, 6/97, 9/97

ARCO CHEMICAL CO.
LONG BEACH, CA 90809-0000
2/95

ARCO CHEMICAL CO.
EL SEGUNDO, CA 90245-0000
5/86, 8/87, 4/88, 3/90-4/90

ARCO CHEMICAL CO.
WILMINGTON, CA 00000-0000
11/87, 6/88-9/88

ARCO CHEMICAL CO.
RICHMOND, CA 94802-0000
4/88, 2/89-3/89, 8/89, 3/90-5/91, 5/93-11/97

ARCO CHEMICAL CO.
BURNABY, BC 00000-0000
2/91

ARCO CHEMICAL CO.
SAN PEDRO, CA 94524-0000
4/91-9/91

ARCO CHEMICAL CO.
LONG BEACH, CA 90809-0000
11/91-8/97

ARCO PETROLEUM PROD. CO.
LONG BEACH, CA 90809-0000
11/97

ARCO PETROLEUM PROD. CO.
EL SEGUNDO, CA 90245-0000
4/95, 3/96

ARCO PETROLEUM PROD. CO.
SELBY, CA 94525-0000
11/92

ARCO PETROLEUM PROD. CO.
LOS ANGELES, CA 90748-0000
3/95

ARCO PRODUCTS CO.
EL SEGUNDO, CA 90245-0000
4/99

ARCO PRODUCTS CO.
SAN PEDRO, CA 90733-0000
9/01

BP EXPLORATION & OIL INC.
SELBY, CA 94525-0000
1/94

BP EXPLORATION & OIL INC.
LONG BEACH, CA 90809-0000
5/96

BP WEST COAST PRODUCTS LL
SAN PEDRO, CA 90733-0000
4/02, 9/02, 10/02

BP WEST COAST PRODUCTS LL
RICHMOND, CA 94525-0000
4/02-5/02

CHEVRON CANADA, LTD.
RICHMOND, CA 94802-0000
5/92-10/02

CHEVRON CANADA, LTD.
LONG BEACH, CA 90809-0000
10/92-8/02

CHEVRON CANADA, LTD.
SELBY, CA 94525-0000
9/92-4/97, 11/02

C.ITOH & CO. AMERICA, INC
WILMINGTON, CA 00000-0000
8/88

COASTAL RFNG & MKTG INC.
SELBY, CA 94525-0000
8/93-12/93

ECOFUEL SPA
SAN PEDRO, CA 94524-0000
5/91

ECOFUEL SPA
RICHMOND, CA 94802-0000
10/91

ECOFUEL SPA
RICHMOND, CA 94525-0000
11/02

ECOFUEL SPA
MARTINEZ, CA 94553-0000
6/96, 8/96-10/96

ECOFUEL SPA
RICHMOND, CA 64525-0000
3/97, 2/98, 6/98

ECOFUEL SPA
LONG BEACH, CA 90809-0000
6/97, 11/97, 1/98, 3/98

ECOFUEL SPA
EL SEGUNDO, CA 90245-0000
7/02

ECOFUEL SPA
SAN PEDRO, CA 90733-0000
1/02, 4/02-5/02, 8/02-11/02

ENRON CLEAN FUELS CO.
LONG BEACH, CA 90809-0000
7/98

ENRON PETROCHEMICALS CO
RICHMOND, CA 94802-0000
4/94, 5/94

EQUILON ENTERPRISES, LLC
LONG BEACH, CA 90809-0000
3/99

EQUIVA TRADING COMPANY
SAN PEDRO, CA 90733-0000
9/01, 12/01, 1/02, 3/02

EQUIVA TRADING COMPANY
RICHMOND, CA 94525-0000
12/99

EXXON COMPANY U.S.A.
SELBY, CA 94525-0000
5/96, 7/99

EXXON COMPANY U.S.A.
MARTINEZ, CA 94553-0000
12/96

EXXON COMPANY U.S.A.
RICHMOND, CA 64525-0000
3/99

KERN OIL & REFINING CO.
LOS ANGELES, CA 90748-0000
8/89-10/89

KERN OIL & REFINING CO.
SAN PEDRO, CA 94525-0000
9/89

KOLMAR PETROCHEMICALS
LONG BEACH, CA 90809-0000
11/97

LTC LIMITED
LONG BEACH, CA 90809-0000
4/99

LTC LIMITED
RICHMOND, CA 64525-0000
5/99

LUCKY GOLD STAR INT'L INC
SAN PEDRO, CA 94524-0000
5/91

NESTE CANADA INC.
LONG BEACH, CA 90809-0000
10/92-1/96, 10/96, 1/97-12/98, 3/99, 5/99

NESTE CANADA INC.
SELBY, CA 94525-0000
9/92-2/95, 4/98, 5/01, 11/01, 4/02

NESTE CANADA INC.
EL SEGUNDO, CA 90245-0000
4/95

NESTE CANADA INC.
COMPTON, CA 90220-0000
7/99, 9/99-10/99, 1/01-5/01

NESTE CANADA INC.
SAN PEDRO, CA 90733-0000
7/01-10/01, 12/01, 1/02, 4/02-6/02

NESTE CANADA INC.
RICHMOND, CA 94802-0000
3/99

1-LA/790160.1                                    11

NESTE CANADA INC.
RICHMOND, CA 64525-0000
9/98, 1/99

NESTE CANADA INC.
MARTINEZ, CA 94553-0000
4/97-1/99

NESTE PETROLEUM, INC.
COMPTON, CA 90220-0000
8/99

NESTE PETROLEUM, INC.
LONG BEACH, CA 90809-0000
5/99

NESTE PETROLEUM, INC.
EL SEGUNDO, CA 90245-0000
7/02

NESTE PETROLEUM, INC.
RICHMOND, CA 94525-0000
9/99

NOBLE AMERICAS
SAN PEDRO, CA 90733-0000
9/01, 9/02, 11/02-12/02

NOBLE AMERICAS
RICHMOND, CA 94525-0000
1/01, 9/01, 1/02-2/02, 4/02, 5/02, 10/02

NOBLE AMERICAS
LONG BEACH, CA 90809-0000
4/99

NOBLE AMERICAS
RICHMOND, CA 64525-0000
7/98-8/98, 11/98

PACIFIC REFINING
SELBY, CA 94525-0000
6/94

PETRO-DIAMOND, INC.
LONG BEACH, CA 00000-0000
10/92

PHIBRO DV/SALOMON INC
LONG BEACH, CA 90809-0000
7/94, 10/94, 3/95, 5/96

PHIBRO DV/SALOMON INC
MARTINEZ, CA 94553-0000
11/95, 4/96

PHIBRO, INC.
MARTINEZ, CA 94553-0000
6/96-8/96, 11/96, 2/97

PHIBRO, INC.
SELBY, CA 94525-0000
11/96

PHIBRO, INC.
RICHMOND, CA 64525-0000
4/97, 10/97

PHIBRO, INC.
RICHMOND, CA 94802-0000
11/97

SABIC AMERICAS,INC
RICHMOND, CA 94525-0000
9/96-10/96, 8/99, 7/02, 10/02

SABIC AMERICAS,INC
RICHMOND, CA 64525-0000
4/97, 5/98, 3/99

SABIC AMERICAS,INC
LONG BEACH, CA 90809-0000
2/99

SABIC AMERICAS,INC
SAN PEDRO, CA 90733-0000
12/02

SABIC AMERICAS,INC
COMPTON, CA 90220-0000
10/99, 12/99

SHELL OIL CO.
RICHMOND, CA 64525-0000
11/97

SHELL OIL CO.
RICHMOND, CA 94802-0000
3/96

SHELL TRADING (US) CO.
RICHMOND, CA 94525-0000
11/02

TESORO REFNG & MKTG CO
SAN PEDRO, CA 90733-0000
12/02

TESORO REFNG & MKTG CO
RICHMOND, CA 94525-0000
12/02

TEXACO RFNG & MRKTNG,INC
LONG BEACH, CA 00000-0000
9/93

TEXACO RFNG & MRKTNG,INC
RICHMOND, CA 64525-0000
8/98

TOSCO REFINING COMPANY
RICHMOND, CA 64525-0000
10/97

TOSCO REFINING COMPANY
LONG BEACH, CA 94596-0000
4/93

TOSCO REFINING COMPANY
RICHMOND, CA 94802-0000
8/97-5/99

TOSCO REFINING COMPANY
RICHMOND, CA 94525-0000
7/99

TRAMMOCHEM
MARTINEZ, CA 94553-0000
1/95, 4/96-5/96, 9/96, 12/96

TRAMMOCHEM
SELBY, CA 94525-0000
7/96, 1/97-2/97, 1/01, 5/01

TRAMMOCHEM
RICHMOND, CA 64525-0000
3/97-4/97, 9/97

TRAMMOCHEM
RICHMOND, CA 94802-0000
5/91, 9/91, 10/93, 7/96, 12/97

TRAMMOCHEM
COMPTON, CA 90220-0000
5/01

ULTRAMAR DIAMOND SHAMROCK
SAN PEDRO, CA 90733-0000
9/01

ULTRAMAR INC.
RICHMOND, CA 94802-0000
10/96

ULTRAMAR INC.
LONG BEACH, CA 90809-0000
5/97

VALERO MARKETING & SUPPLY
RICHMOND, CA 94525-0000
12/02

VALERO MARKETING & SUPPLY
SAN PEDRO, CA 90733-0000
7/02, 10/02, 12/02,

VALERO REFINING COMPANY
SAN PEDRO, CA 90733-0000
12/01, 3/02

VITOL S.A. INC.
SAN PEDRO, CA 90733-0000
4/02

VITOL S.A. INC.
RICHMOND, CA 94525-0000
8/99

VITOL S.A. INC.
LONG BEACH, CA 90809-0000
4/99

VITOL S.A. INC.
RICHMOND, CA 64525-0000
10/97, 9/98, 4/99-5/99

VITOL S.A. INC.
RICHMOND, CA 94802-0000
4/99

**Refineries:**

El Segundo Refinery
324 West El Segundo Blvd.
El Segundo, CA 90245

Richmond Refinery
841 Chevron Way
Richmond, CA 94802

**INTERROGATORY NO. 3:**

Please identify each Terminal You use or used to supply gasoline for ultimate

delivery into the Relevant Area at any time since the date of first MTBE use in the Relevant Area

and the dates or date ranges when You have used such Terminal. For each Terminal You use or

used, please also state whether You owned or operated such Terminal or were a Terminalling

Partner at such Terminal.

**RESPONSE TO INTERROGATORY NO. 3:**

Chevron objects to the definition and use of the term "Terminalling Partner" as misleading, vague, and ambiguous.  Many of the fuel distribution points listed below were independently owned and/or operated; the mere fact that Chevron had the ability to ship fuel to these distribution points does not give rise to the responsibilities typically associated with the term "partner," nor does it give rise to any responsibility for control of the operations relating to the terminals and bulk plants listed below.  Chevron further objects to Interrogatory No. 3 as vague and ambiguous as to time and product identification;  Subject to and without waiving any of its objections, Chevron responds as follows:

| County (with litigation) | Terminal(s) | Dates Used | Proprietary? |
|---|---|---|---|
| 1) Fresno | Bakersfield | 1979-present | N |
|  | Banta | 1979-present | Y |
|  | Fresno | 1979-present | N |
|  | San Jose | 1979-present | Y |
| 2) Riverside | Barstow | 1979-present | N |
|  | Colton | 1979-present | Y until '95 |
|  | Montebello | 1979-present | Y |
| 3) Placer | Chico | 1979-present | N |
|  | Sacramento | 1979-present | Y |
| 4) Orange | Carson | 2002-present | N |
|  | Colton | 1979-present | Y until '95 |
|  | East Hynes | 2002-present | N |
|  | Huntington Beach | 1979-present | Y |
|  | Montebello | 1979-present | Y |
|  | Van Nuys | 2002-present | N |
|  | Watson |  |  |
| 5) Plumas | Chico | 1979-present | N |
|  | Sacramento | 1979-present | Y |
| 6) Sacramento | Avon | 1979-present | Y |
|  | Banta | 1979-present | Y |
|  | Sacramento | 1979-present | Y |
| 7) San Diego | Imperial | 1979-present | N |
|  | San Diego | 1979-present | Y |

///

///

///

///

# EXHIBIT 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

In Re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

---------------------------------------------------------------X

Master File C.A.
No. 1:00-1898
MDL No. 1358 (SAS)

This document refers to:   *City of Riverside v. Atlantic Richfield Co., et al.*
*Quincy Comm. Serv. Dist. v. Atlantic Richfield Co., et al.*
*California-American Water Company v. Atlantic Richfield Co., et al.*
*City of Roseville v. Atlantic Richfield, et al.*
*Orange County Water District v. Unocal, et al.*
*People of the State of California, et al. v. Atlantic Richfield Co., et al.*
*Martin Silver, et al. v. Alon USA Energy, Inc., et al.*
*City of Fresno, et al. v. Chevron U.S.A. Inc.*

## VALERO DEFENDANTS' ANSWERS AND OBJECTIONS
## TO PLAINTIFFS' PRELIMINARY SET OF INTERROGATORIES
## (RE: DEFENDANT IDENTIFICATION)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure and in accordance with Case

Management Order #3, Ultramar, Inc., Valero Energy Corporation, Valero Marketing and

Supply Company, Valero Refining and Marketing Company, and Valero Refining Company-

California (collectively "Valero Defendants") hereby submit the following Answers and

Objections to Plaintiffs' Preliminary Set of Interrogatories (Re: Defendant Identification).

Dated: August 30, 2004

J. Clifford Gunter III
Tracie J. Renfroe
M. Coy Connelly
BRACEWELL & PATTERSON, L.L.P.
711 Louisiana St., Suite 2900
Houston, Texas 77002-2781
Telephone: (713) 221-1404
Telecopier: (713) 221-2123

Attorneys for Defendants
ULTRAMAR, INC., VALERO
ENERGY CORPORATION, VALERO
MARKETING AND SUPPLY COMPANY,
VALERO REFINING AND MARKETING
COMPANY, and VALERO REFINING
COMPANY-CALIFORNIA

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Valero Defendants' Answers and Objections to Plaintiffs' Preliminary Set of Interrogatories (Re: Defendant Identification) was served electronically upon counsel for Plaintiffs listed below by serving Plaintiffs' Liaison Counsel, Weitz & Luxenberg, P.C., and to all defense counsel of record by service on Defendants' Liaison Counsel, McDermott, Will & Emery on the 30th day of August, 2004.

Mr. Victor M. Sher
Sher Leff LLP
450 Mission Street, Suite 500
San Francisco, California 94105

Mr. Scott Summy
Baron & Budd, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219-4281

Mr. Duane C. Miller
Miller, Axline & Sawyer
1050 Fulton Avenue, Suite 100
Sacramento, California 95825

Mr. Stanley N. Alpert
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, New York 10038

M. Coy Connelly

## GENERAL OBJECTIONS AND LIMITATIONS

1.    Valero Defendants object to the instructions and definitions set forth in Plaintiffs' Preliminary Set of Interrogatories (Re: Defendant Identification) ("Plaintiffs' Interrogatories"), to the extent they deviate from or purport to impose requirements other than or in addition to those required by the Federal Rules of Civil Procedure and the Local Civil Rules for the Southern District of New York.

2.    Valero Defendants object to Plaintiffs' Interrogatories to the extent that they seek documents or information covered by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity.  None of these responses are intended as, or should be construed as, a waiver or relinquishment of any part of the protections afforded by the attorney-client privilege, the work product doctrine, or any other applicable privileges or immunities.

3.    Valero Defendants object to Plaintiffs' Interrogatories to the extent that they seek information beyond that in the possession, custody, or control of Valero Defendants.

4.    Valero Defendants object to Plaintiffs' Interrogatories to the extent that they seek information from Valero Defendants' subsidiary or affiliated companies that are not parties to this case because such information is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  To the extent Valero Defendants provide information for subsidiary or affiliated companies, it shall not be construed as waiving this objection. Additionally, Valero Defendants will respond to these interrogatories only for the period of time that affiliates of Valero Defendants owned the refineries at issue.

5.    Valero Defendants object to Plaintiffs' Interrogatories to the extent that they seek information relating to events that occurred from "the date of first MTBE use in the [specified areas]" through the present on the grounds that such Interrogatories are overbroad, unduly burdensome and oppressive, and on the further grounds that they seek information not relevant to the subject matter of this case and not reasonably calculated to lead to the discovery of admissible evidence.  Additionally, "the date of first MTBE use in the [specified areas]" may not be known to Valero Defendants.

6.    Valero Defendants also object to the definition of "MTBE Product" in Plaintiffs' Interrogatories because it is overbroad, burdensome, requires speculation by Valero Defendants, and is not calculated to lead to discovery of admissible evidence.  More specifically, whether MTBE was added to conventional gasoline after sale by Valero Defendants may not be within the scope of Valero Defendants' knowledge.

7.    Valero Defendants object to Plaintiffs' Interrogatories because they contain undefined terms which make them vague, ambiguous, overbroad, unduly burdensome and oppressive, and not reasonably calculated to lead to the discovery of admissible evidence.

8.    Pursuant to the Court's rulings at the May 11, 2004 status conference, Valero Defendants expressly limit their answers to Plaintiffs' Interrogatories to the information that can be obtained after a reasonable search of their electronic data or other readily available records and interviews of knowledgeable company employees.  See Affidavit attached.

9.    Valero Defendants object to Plaintiffs' Interrogatories because they request information beyond the limitations and parameters agreed among the parties and/or imposed by the Court at the May 11, 2004 status conference. Valero Defendants' responses are subject to all such limitations and parameters and incorporate by reference the limits imposed by the Court at the May 11, 2004 status conference.

10.    Valero Defendants' investigation into the facts alleged in Plaintiffs' Complaint is continuing, and Valero Defendants continue to search for information responsive to Plaintiffs' Interrogatories. As additional information becomes available, Valero Defendants will amend, modify, and/or supplement these answers and objections as appropriate.

11.    Valero Defendants' decision to provide information notwithstanding the objectionable nature of any of the discovery requests is not to be construed as an admission that the information is relevant, a waiver of Valero Defendants' general or specific objections, or an agreement that future requests for similar discovery will be treated in a similar manner.

12.    Valero Defendants reserve the right to amend or supplement their answers as well as the right to object to other discovery directed to the subject matter of Plaintiffs' Interrogatories.

13.    These General Objections and Limitations apply to each of Plaintiffs' Interrogatories as though restated in full in Valero Defendants' answers thereto. To the extent Valero Defendants assert objections to individual questions, those objections shall apply equally to any subparts of the questions.

14.    Documents referenced herein pursuant to Local Civil Rule 33.1 will be produced subject to protective orders and/or confidentiality agreements acceptable to Valero Defendants at the offices of Valero Defendants' counsel, Bracewell & Patterson, L.L.P., 711 Louisiana, Suite 2900, Houston, Texas 77002, on dates mutually agreeable to the parties.

## ANSWERS & OBJECTIONS TO INTERROGATORIES

### INTERROGATORY NO. 1:

Please identify the name and address of each entity (including You, if applicable) that supplied You with MTBE Products for ultimate delivery into the [specified areas] at any time since the date of first MTBE use in the [specified areas], the dates or date ranges when each such entity supplied You with MTBE Products, and the name and address of each Refinery from which such MTBE Products were supplied.

### ANSWER:

Valero Defendants object to this interrogatory on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and oppressive. Valero Defendants also object that this interrogatory requires Valero Defendants to speculate as to matters outside of the scope of information within Valero Defendants' possession, custody, or control by requiring Valero Defendants to identify, among other things, gasoline containing MTBE that may have eventually been sold or distributed in the specified areas by unaffiliated companies after leaving Valero Defendants' possession. Subject to and without waiving the foregoing objections, or the General Objections and Limitations set forth above, Valero Defendants respond as follows:

Valero Defendants and their affiliates do not, in the ordinary course of business, create or maintain data or records that track the ultimate destination of gasoline containing MTBE refined, manufactured, or sold; therefore, Valero Defendants cannot answer this interrogatory as phrased. For example, all documents and information needed to confirm whether gasoline containing MTBE supplied to a Valero Defendant or affiliate by a third party for sale or delivery outside the specified areas was ultimately delivered or sold in the specified areas by third parties are not within the possession, custody, or control of Valero Defendants. Until Valero Defendants can review such documents, among others, they cannot answer the question as phrased.

Pursuant to Local Civil Rule 33.1, Valero Defendants further answer this interrogatory by reference to product supply reports (derived from invoice and inventory receipts data) maintained by Valero Defendants and/or their affiliates. These product supply reports identify:

a.       supplies of MTBE gasoline (or other products) to Valero Defendants;

b.       the name and address of the supplier or exchange partner for gasoline containing MTBE (or other products);

c.       the county and state where transactions of gasoline containing MTBE (or other products) occurred;

d.       the terminal or facility where Valero Defendants received the gasoline containing MTBE (or other products);

e.       the mode of transportation;

f.       whether the transaction was an exchange;

g.      the volume involved;

h.      the year of the transaction.

Copies of such documents will be produced to Plaintiffs pursuant to General Objection and Limitation No. 14 above. Additionally, the name, address, and dates of Valero ownership for the Valero refineries that could have supplied (but did not necessarily supply) gasoline into the California market are listed below:

Benicia Refinery (Valero owned 2000-present)
3400 East Second Street
Benicia, CA  94510-1097

Golden Eagle Refinery (Valero owned 2000-2002)
150 Solano Way
Martinez, CA  94553-1487

Wilmington Refinery (Valero owned 1988-present)
2402 East Anaheim
Wilmington, CA  90744

Valero Defendants note that the product supply reports and other documents maintained by Valero Defendants do not necessarily indicate whether such products supplied to the Valero Defendants "were ultimately delivered" into the specified areas.

**INTERROGATORY NO. 2:**

Please identify the name and address of each entity from which You obtained neat MTBE for use at any Refinery owned or operated by You that supplied gasoline for ultimate delivery into the [specified areas], the dates or date ranges when MTBE was acquired from each such supplier, and the name and address of Your Refinery(ies).

**ANSWER:**

Valero Defendants object to this interrogatory on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and oppressive.   Valero Defendants also object that this interrogatory requires Valero Defendants to speculate as to matters outside of the scope of information within Valero Defendants' possession, custody, or control by requiring Valero Defendants to identify gasoline containing MTBE that may have eventually been sold or distributed in the specified areas by unaffiliated companies after leaving Valero Defendants' possession. Subject to and without waiving the foregoing objections, or the General Objections and Limitations set forth above, Valero Defendants respond as follows:

Valero Defendants and their affiliates do not, in the ordinary course of business, create or maintain data or records that track the ultimate destination of MTBE or gasoline containing MTBE refined, manufactured or sold; therefore, Valero Defendants cannot answer this

interrogatory as phrased. For example, all documents and information needed to confirm whether MTBE or gasoline containing MTBE supplied to a Valero Defendant or affiliate by a third party for sale or delivery outside the specified areas was ultimately delivered or sold in the specified areas by third parties are not within the possession, custody, or control of Valero Defendants. Until Valero Defendants can review such documents, they cannot answer the question as phrased.

Pursuant to Local Civil Rule 33.1, Valero Defendants further answer this interrogatory by reference to product supply reports (derived from invoice and inventory receipts data) maintained by Valero Defendants and/or their affiliates. These product supply reports identify:

a.　supplies of MTBE (or other products) to Valero Defendants;

b.　the name and address of the supplier or exchange partner for MTBE (or other products);

c.　the county and state where transactions of MTBE (or other products) occurred;

d.　the terminal or facility where Valero Defendants received the MTBE (or other products);

e.　the mode of transportation;

f.　whether the transaction was an exchange;

g.　the volume involved;

h.　the year of the transaction.

Copies of such documents will be produced to Plaintiffs pursuant to General Objection and Limitation No. 14 above. Additionally, the name, address, and dates of Valero ownership for the Valero refineries that could have supplied (but did not necessarily supply) gasoline into the California market are listed below:

Benicia Refinery (Valero owned 2000-present)
3400 East Second Street
Benicia, CA  94510-1097

Golden Eagle Refinery (Valero owned 2000-2002)
150 Solano Way
Martinez, CA  94553-1487

Wilmington Refinery (Valero owned 1988-present)
2402 East Anaheim
Wilmington, CA  90744

Additionally, Valero Defendants identify the following suppliers or exchange partners from whom they purchased neat MTBE, but without review of additional records not currently in their possession, cannot state whether such neat MTBE was added to gasoline that was sold or distributed in the specified areas.

| Suppliers of Neat MTBE to Valero | | | | | | | |
|---|---|---|---|---|---|---|---|
| Supplier | 2003 | 2002 | 2001 | 2000 | 1999 | 1998 | 1997 |
| AMERICAN AGIP CO, INC | | ✓ | ✓ | ✓ | | | |
| ARCO PRODUCTS COMPANY | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| ASTRA OIL CO INC | | ✓ | ✓ | ✓ | | | |
| BENETO INC | | | ✓ | ✓ | | | |
| BP WEST COAST PRODUCTS LLC | ✓ | ✓ | | | | | |
| BUCK PETROLEUM COMPANY | ✓ | | ✓ | | | | |
| C & N ENERGY LTD | ✓ | ✓ | ✓ | ✓ | | | |
| CHEVRON PRODUCTS COMPANY | ✓ | ✓ | ✓ | ✓ | | | |
| CHEVRON U.S.A., INC. | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| CHEVRON USA - CONCORD | | ✓ | ✓ | ✓ | | | |
| CHEVRON USA PRODUCTS COMPANY | ✓ | ✓ | ✓ | | | | |
| CONOCOPHILLIPS COMPANY | ✓ | | | | | | |
| COOL TRANSPORT INC | ✓ | | | | | | |
| COX PETROLEUM TRANSPORT | | | ✓ | | | | |
| DUKE ENERGY MERCHANTS | | | | ✓ | | | |
| DUKE ENERGY MERCHANTS CALIF., INC. | | | | ✓ | | | |
| DUKE ENERGY MERCHANTS, LLC | ✓ | ✓ | ✓ | | | | |
| ECOFUEL S.P.A. | ✓ | ✓ | ✓ | ✓ | | | |
| ENRON CLEAN FUELS COMPANY | | | ✓ | ✓ | | | |
| EOTT ENERGY OPERATING LIMITED | | | | ✓ | | | |
| EQUILON ENTERPRISES LLC. | | | | ✓ | ✓ | ✓ | |
| EQUIVA TRADING COMPANY | ✓ | ✓ | ✓ | ✓ | | | |
| EXXON COMPANY, U.S.A. | | | ✓ | ✓ | ✓ | ✓ | ✓ |
| EXXON MOBIL REFINING & SUPPLY CO | | ✓ | ✓ | ✓ | | | |
| EXXONMOBIL OIL CORP | | ✓ | ✓ | ✓ | | | |
| FLINT HILLS RESOURCES LP | | | ✓ | ✓ | | | |
| FORTUM OIL & GAS | | | ✓ | | | | |
| FROST OIL COMPANY INC | | | | ✓ | | | |
| GATX TERMINAL CORP. | | | | | | | ✓ |
| GENERAL PETROLEUM RESOURCES INC | ✓ | ✓ | | | | | |
| GIANT INDUSTRIES INC | ✓ | | | ✓ | | | |
| GIANT REFINING COMPANY | ✓ | | | | | | |
| GLENCORE LTD | ✓ | ✓ | ✓ | ✓ | | | |

| Suppliers of Neat MTBE to Valero | | | | | | | |
|---|---|---|---|---|---|---|---|
| Supplier | 2003 | 2002 | 2001 | 2000 | 1999 | 1998 | 1997 |
| GOODSPEED TANK LINES | ✓ | | | | | | |
| HESS ENERGY TRADING COMPANY, LLC | | | | ✓ | | | |
| J & S SUPPLY INC | | | ✓ | | | | |
| JACO OIL COMPANY | | | ✓ | ✓ | | | |
| KERN OIL & REFINING COMPANY | ✓ | ✓ | ✓ | | | | |
| KOCH OIL COMPANY | | ✓ | | | | | |
| MIECO, INC | ✓ | | ✓ | | | | |
| MOBIL OIL CORP | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| NAPA VALLEY PETROLEUM, INC. | | ✓ | ✓ | | | | |
| NELLA OIL COMPANY | ✓ | ✓ | ✓ | | | | |
| NESTE CANADA INC | ✓ | ✓ | ✓ | ✓ | | | |
| NESTE USA LLC | ✓ | | | | | | |
| NEW WEST PETROLEUM | ✓ | ✓ | ✓ | | | | |
| NOBLE AMERICAS CORP. | ✓ | ✓ | ✓ | ✓ | | | |
| OCEANA PETROCHEMICALS AG | | | ✓ | | | | |
| OLYMPIAN OIL CO | | | | | | | |
| PETRO-DIAMOND INCORPORATED | ✓ | ✓ | ✓ | ✓ | | | |
| PILOT CORPORATION | | ✓ | ✓ | ✓ | | | |
| PILOT TRAVEL CENTERS LLC | | | | | | | |
| PRO PETROLEUM, INC | 7 | ✓ | ✓ | | | | |
| REDWOOD OIL CO | | ✓ | | | | | |
| SABIC AMERICAS, INC. | ✓ | ✓ | ✓ | ✓ | | | |
| SAN FRANCISCO PETROLEUM COMPANY | | | ✓ | ✓ | | | |
| SC FUELS | | ✓ | | | | | |
| SHELL OIL COMPANY | | | | | | ✓ | ✓ |
| SHELL OIL PRODUCTS US | ✓ | ✓ | | | | | |
| SHELL TRADING (US) COMPANY | ✓ | ✓ | ✓ | ✓ | | | |
| SOUTHERN COUNTIES OIL CO | | | | ✓ | | | |
| TESORO PETROLEUM CORPORATION | | ✓ | ✓ | ✓ | | | |
| TESORO REFINING | ✓ | ✓ | | | | | |
| TESORO REFINING AND MARKETING | ✓ | ✓ | ✓ | ✓ | | | |
| TESORO REFINING, MARKETING & SUPPLY | ✓ | ✓ | | | | | |
| TEXACO REFINING AND MKTG, INC. | | | | | | ✓ | ✓ |
| TNB, INC DBA BUCK PETROLEUM | ✓ | | | | | | |
| TOSCO CORP | ✓ | ✓ | ✓ | ✓ | | | |

| Suppliers of Neat MTBE to Valero | | | | | | | |
|---|---|---|---|---|---|---|---|
| Supplier | 2003 | 2002 | 2001 | 2000 | 1999 | 1998 | 1997 |
| TOSCO REFINING CO | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| TOSCO REFINING LP | | | ✓ | ✓ | | | |
| TOWER ENERGY GROUP | ✓ | | ✓ | ✓ | | | |
| TRAFIGURA AG | ✓ | ✓ | ✓ | ✓ | | | |
| TRAMMOCHEM | | ✓ | | | | | |
| TREK PETROLEUM | | ✓ | | | | | |
| ULTRAMAR INC. | | | ✓ | ✓ | | | |
| UNOCAL CORPORATION | | | | | | ✓ | |
| USA PETROLEUM CORP | | | ✓ | | | | |
| VALERO REFINING COMPANY - CALIFORNIA | | | ✓ | ✓ | | | |
| VITOL S.A., INCORPORATED | ✓ | ✓ | ✓ | ✓ | | | |
| WESTPORT PETROLEUM, INC. | | ✓ | ✓ | ✓ | | | |

**INTERROGATORY NO. 3:**

Please identify each Terminal You use or used to supply gasoline for ultimate delivery into the Relevant Area at any time since the date of first MTBE use in the [specified areas] and the dates or date ranges when you have used such Terminal. For each Terminal You use or used, please also state whether You owned or operated such Terminal or were a Terminalling Partner at such Terminal.

**ANSWER:**

Valero Defendants object to this interrogatory on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and oppressive. The request for information about "gasoline" unrelated to MTBE is overbroad, burdensome, and not likely to lead to the discovery of admissible evidence. Valero Defendants also object that the request for dates or date ranges of terminal use for gasoline unrelated to MTBE is overbroad, burdensome and not likely to lead to the discovery of admissible evidence. Valero Defendants also object that this interrogatory requires Valero Defendants to speculate as to matters outside of the scope of information within Valero Defendants' possession, custody, or control by requiring Valero Defendants to identify gasoline that may have eventually been sold or distributed in the specified areas by unaffiliated companies after leaving Valero Defendants' possession. Subject to and without waiving the foregoing objections, or the General Objections and Limitations set forth above, Valero Defendants respond as follows:

Valero Defendants and their affiliates do not, in the ordinary course of business, create or maintain data or records that track the ultimate destination of gasoline refined, manufactured, or sold; therefore, Valero Defendants cannot answer this interrogatory as phrased. For example, all documents and information needed to confirm whether gasoline supplied to a Valero Defendant

or affiliate by a third party for sale or delivery outside the specified areas was ultimately delivered or sold in the specified areas by third parties are not within the possession, custody, or control of Valero Defendants. Until Valero Defendants can review such documents, they cannot answer the question as phrased.

Valero Defendants further answer this interrogatory by identifying the following terminals or facilities used by Valero Defendants in California. Valero Defendants are continuing their search for information pertaining to dates of terminal use and Terminalling Partner arrangements and will supplement this answer. None of the terminals or facilities listed below has been owned or operated by Valero Defendants.

**CALIFORNIA TERMINALS**

Butte County

Kinder Morgan Pacific
2570 Hegan Lane
Chico, CA 95927

Contra Costa County

Shell Oil Products US
(Martinez Terminal)
1801 Marina Vista
Martinez, CA 94553

Chevron Products Company
Richmond Terminal
155 Castro St
Richmond, CA 94801

Fresno County

Kinder Morgan Pacific
4149 South Maple Avenue
Fresno, CA 93715

Humboldt County

Chevron Products Company
3400 Christie Street
Eureka, CA 95501

Imperial County

Kinder Morgan
Imperial Terminal
345 W Aten Rd
Imperial, CA 92251

Kern County
Kern Oil & Refining Company
7724 East Panama Lane
Bakersfield, CA  93307

Shell Oil Products US
(Bakersfield Terminal)
2436 Fruitvale Ave.
Bakersfield, CA  93309

Los Angeles County

Kinder Morgan
2000 E. Sepulveda Blvd.
Carson, CA  90810

Shell Oil Products US
(Carson Terminal)
20945 South Wilmington Avenue
Carson, CA  90810

Shell Oil Products US
(Van Nuys Terminal)
8100 North Haskell Avenue
Van Nuys, CA  91406

Shell Oil Products
Wilmington Terminal
1926 E Pacific Coast Hwy
Wilmington, CA 90744

Orange County

Kinder Morgan Pacific
1350 North Main Street
Orange, CA  92667

Sacramento County

Kinder Morgan pacific
(Bradshaw Terminal)
Folsom Boulevard & Bradshaw Road
Sacramento, CA  95800

San Bernadino County

Kinder Morgan
Colton Terminal
2359 S Riverside Ave
Bloomington, CA 92316

Cal Nev Pipeline
Barstow Terminal
34277 Daggett Yermo Rd
Daggett, CA 92357

San Diego County

Kinder Morgan Pacific
9950 San Diego Mission
San Diego, CA  92108

Shell Oil Products US
(Mission Valley Terminal)
9950 San Diego Mission Boulevard
San Diego, CA  92109

Shell Oil Products US
(San Diego Terminal)
9966 San Diego Mission Road
San Diego, CA  92108

San Joaquin County

BP/Arco Products Company
2700 West Washington Street
Stockton, CA  95203

Shell Oil Products US
(Stockton Terminal)
3515 Navy Drive
Stockton, CA  95203

ST Services
2941 Navy Drive
Stockton, CA  95206-1149

San Mateo County

Kinder Morgan Pacific
950 Tunnel Avenue
Brisbane, CA  94005

Santa Clara County

Kinder Morgan
2150 Kruse Avenue
San Jose, CA  95121

Shell Oil Products US
(San Jose Terminal)
2165 O'Toole Ave.
San Jose, CA  95131

Solano County

Valero Benicia Refinery
3400 East Second Street
Benicia, CA  94510-1097
(Prior to May 2000-Exxon Benicia Refinery)

Ventura County

Shell Oil products
Ventura Terminal
3284 N. Ventura Ave.
Ventura, CA  93001

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE:<br><br>METHYL-TERTIARY BUTYL ETHER<br>("MTBE") PRODUCTS LIABILITY<br>LITIGATION | Master File C.A. No.<br>1:00-1898 (SAS)<br><br>MDL 1358 |

This document refers to: all cases.

### AFFIDAVIT OF THE VALERO DEFENDANTS
### IN RESPONSE TO PLAINTIFFS' PRELIMINARY DISCOVERY

1.  My name is Rick Baker and I am over twenty-one (21) years of age, and I am fully competent to make this affidavit. I am an accounting manager in the Budget and Forecast Department. I have held this office since November, 2003. I am generally familiar with the business and operations of Valero Marketing and Supply Company and its affiliated companies. In my prior 3 ½ years with the Valero organization, I worked in the Hydrocarbon Accounting Department.

2.  I have reviewed portions of the transcript of the May 11, 2004 status conference. I understand that the purpose of the preliminary discovery is to allow Plaintiffs to identify additional companies (not already named as defendants) who supplied neat MTBE or gasoline containing MTBE in areas at issue in these cases. Without commenting on which companies would be proper defendants and in accordance with the Court's instructions at the May 11, 2004 status conference, I make this affidavit to describe the investigation made by Valero Marketing and Supply Company and its affiliated entities in answering the preliminary discovery.

3.  Valero Energy Corporation is a holding company that does not refine crude oil, own refineries, operate gas stations, or make or distribute gasoline. However, Valero Energy Corporation owns, either directly or indirectly, several companies that are also defendants in these cases, including Valero Marketing and Supply Company; Valero Refining and Marketing Company; Valero Refining Company-Louisiana; Valero Refining Company-New Jersey; Diamond Shamrock Refining and Marketing Company; Ultramar Energy, Inc.; Ultramar Limited; and Ultramar, Inc. Valero Marketing and Supply Company performs the primary gasoline sale and distribution functions for these affiliated

companies, and therefore possesses more of the information requested by Plaintiffs in their preliminary discovery than other Valero entities. Thus, Valero Marketing and Supply Company answers Plaintiffs' interrogatories on behalf of itself and the affiliated companies described above which are collectively referred to in the answers as the Valero Defendants.

4.   The information provided in the Valero Defendants' interrogatory answers is based on a good-faith, yet preliminary, effort to gather the information requested. The search for responsive information and the process of gathering that information is described below. However, the interrogatory answers are not a complete compilation of the facts they address. I anticipate that the answers will have to be supplemented as the Valero Defendants' investigations into these matters continue. Furthermore, the answers are not intended to reflect the information that might be available from a complete review of documents relevant to the topics at issue, as no such document review has been undertaken at this time. Rather, as described below, the interrogatory answers are based on a brief investigation of readily available data, documents, and witnesses. Specifically, we have not undertaken a review of archived files or data, nor have we made an effort to interview all employees or former employees who may have relevant information. However, the Valero Defendants have made the following efforts to gather the requested information.

5.   In response to Plaintiffs' preliminary discovery, the Valero Defendants conducted meetings with counsel, members of my staff, and with other Valero Defendant employees. These meetings were to determine, to the best of these individuals' knowledge and memory, those entities that have supplied Valero with neat MTBE and/or gasoline containing MTBE. Additionally, various Valero Defendant employees in the company's San Antonio, Texas corporate office, were involved in accessing electronic databases, analyzing readily available hard copy records, and contacting Valero Defendant employees for the purpose of identifying such suppliers. I did not personally review every electronic or hard copy record obtained through this internal search, and was not personally involved in searching for all of these records. The internal search for records and information included the following:

- In preparing the answers to Plaintiffs' Preliminary Interrogatories a search was undertaken and continues involving (1) systems applications for the creation of reports showing supply and sale transactions of neat MTBE and MTBE-related products; and (2) inquiries of various personnel who are involved in the supply, marketing, operations, and accounting functions within the Valero Defendant companies related to the same products.

- The systems utilized in the search include the Valero SAP system, the UDS SAP system, the Valero AS/400 system, the UDS Lawson system, the Valero CMB system, the TPI Lanier system, the Basis AS/400 system and the UDS Stalsby system. We have developed supply reports (derived from invoice and inventory receipts data) that identify our exchange partners and include the state and county where transactions involving neat MTBE or gasoline containing MTBE occurred, the name and address of the supplier, the terminal or facility where Valero entities

took the product into inventory, the mode of transportation, the type of product, whether the transaction was an exchange, the volume involved, and the year of the transaction

- Generally speaking, the information gathered from those parties identified in Valero Marketing's answer to Interrogatory No. 71 in the *Suffolk County Water Authority* litigation was reviewed and utilized. In addition, I am aware that other personnel, including Troy Haby, Jennifer Robertson and Laura Pett (of the Accounting Department), as well as Paulette Allen (of the Excise Tax Department) were interviewed. Inquiries regarding Interrogatory No. 3 were made of Greg Kaneb, Roger Griffin, Danny Oliver, Lee Rahmberg and Suzzane McCarty (of the Wholesale Marketing, Refined Products Trading, and Market Analysis Departments).

6.  Valero Defendants do not, in the ordinary course of business, create or maintain data or records that track the ultimate destination of MTBE or gasoline containing MTBE that they acquired from third parties and re-sold. Therefore, based on information currently available to the Valero Defendants, the answers provided to Plaintiffs' interrogatories should not be construed as admissions that any particular transaction was for ultimate delivery into the counties specified by Plaintiffs.

_____
Rick Baker

Given under my hand and seal of office this 9 day of July, 2004.

MARIA VERA BURNS
Notary Public
STATE OF TEXAS
My Comm. Exp. 01-26-2008

(seal)

_____
Notary Public in and for
The State of Texas

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE:

METHYL-TERTIARY BUTYL ETHER
("MTBE") PRODUCTS LIABILITY
LITIGATION

Master File C.A. No.
1:00-1898 (SAS)

MDL 1358

This document refers to:  all cases.

## VERIFICATION OF THE VALERO DEFENDANTS
## IN RESPONSE TO PLAINTIFFS' PRELIMINARY DISCOVERY

STATE OF TEXAS        §
                      §
COUNTY OF BEXAR       §

     I, Rick Baker, state in support of this verification that I was asked by counsel to assist in providing the information to respond to Plaintiffs' Preliminary Set of Interrogatories directed to the Valero Defendants in this action; that some but not all the matters stated in the Valero Defendants' Answers and Objections to Plaintiffs' Preliminary Set of Interrogatories (Re:  Defendant Identification) are within my personal knowledge; that to the best of my knowledge there is no single officer or employee of the Valero Defendants who has personal knowledge of all such matters; that the facts stated in the answers have been assembled by authorized employees of and counsel for the Valero Defendants; and that I am informed and believe that these answers are true and correct

based on reasonably available information gathered pursuant to the Court's instructions

regarding the level of research required and on what I have been told by others. Further

information concerning how the data provided in these answers was collected is contained

in my Affidavit, which is incorporated herein by reference.




_____
RICK BAKER

7/23/2004
_____
DATE


Sworn to and subscribed before me this 23 day of July , 2004.


_____
NOTARY PUBLIC


My commission expires: _____