UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE METHYL TERTIARY BUTYL ETHER PRODUCTS LIABILITY LITIGATION | Master File No. 1:00-1898<br>MDL 1358 (SAS) |
| This Document Relates To:<br><br>*City of Fresno v. Chevron U.S.A. Inc., et al.*<br>Case No. 04 Civ. 04973 (SAS) | The Honorable Shira A. Scheindlin |

**CERTAIN DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION FOR PARTIAL SUMMARY JUDGMENT
ON PLAINTIFFS' NUISANCE CLAIM**

I.     **INTRODUCTION**

With the bulk of its opposition devoted to arguing a failure to warn products liability claim against Certain Defendants, plaintiffCity of Fresno ("Plaintiff" or the "City") asks this Court to expand the scope of California nuisance law far beyond existing authority. To allow the City to pursue a claim for nuisance based on the evidence submitted would be contrary to California law, which rejects the styling of products liability actions "in the guise of a nuisance action." *See City of ModestoRedev. Agency v. Superior Court*, 119 Cal. App. 4th 28, 39, 42 (2004) ("the law of nuisance is not intended to serve as a surrogate for ordinary products liability"). Ignoring this controlling authority, the City's Opposition centers almost entirely upon its contention that Certain Defendants supplied MTBE gas but allegedly failed to adequately warn about its alleged dangers. (*See* Opposition ["Opp."] at 9-18.)

This Court has already considered the application of nuisance to suppliers of gasoline and held that to pursue a claim for nuisance, a plaintiff must present evidence of "affirmative acts [other than mere supply of gasoline] that contribute directly to the nuisance." *In re: Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 457 F.Supp.2d 455, 463 (S.D.N.Y. 2006) (internal punctuation omitted). Although Plaintiff tries to muddy the waters and create the appearance of disputed facts, the City fails to provide evidence that *any* moving Defendant engaged in the type of affirmative conduct necessary to sustain a claim for nuisance. It is undisputed that moving Defendants did *not* (1) own or operate the subject sites, (2) manufacture the equipment that released the gasoline, or (3) affirmatively instruct the operators at the subject sites to improperly dispose of the gasoline. (*See* Reply Rule 56.1 St., ¶¶ 6-35.) Accordingly, Certain Defendants respectfully request that their partial motion for summary judgment on the City's nuisance claim be granted.

## II. SUMMARY JUDGMENT DISMISSING THE NUISANCE CLAIM IS PROPER.

### A. Mere Supply Of A Product And General Failure To Warn Does Not Give Rise To A Nuisance Claim.

The City's generic discussion of nuisance law (*see* Opp. at 3-4) uniformly fails to address nuisance claims against product suppliers. California courts have specifically refused to expand the nuisance doctrine to those who merely manufacture and/or supply products and allegedly fail to adequately warn downstream users about them. Here, the controlling case law–*San Diego, Modesto,* and *Santa Clara*–unequivocally holds that putting an allegedly defective product into the stream of commerce does *not* give rise to a claim of nuisance. *See City of San Diego v. U.S. Gypsum Co.*, 30 Cal. App. 4th 575, 584-87 (1994) (affirming judgment on the pleadings on a nuisance claim against manufacturers and distributors of asbestos products, where the city "essentially pleaded a products liability action, not a nuisance action"); *Modesto*, 119 Cal. App. 4th at 42 (rejecting nuisance claim against manufacturers and sellers of allegedly defective solvents for failing to alert dry cleaners to proper methods of disposal of the solvents); *County of Santa Clara v. Atlantic Richfield Co.*, 137 Cal. App. 4th 292, 313 (2006) (dismissing nuisance claim which sought damages for products-related injuries allegedly caused by defendants' manufacture and distribution of lead paint). As the *Santa Clara* court held in rejecting a nuisance claim for damages caused by an allegedly defective product, "plaintiffs' public nuisance cause of action is much more like a products liability cause of action because it is, at its core, an action for damages for injuries caused to plaintiffs' property by a product."*Id.* Similarly, in *Modesto*, the court explained, "[a]ny failure to warn was not an activity directly connected with the disposal of solvents . . . ; it does not fall within the context of nuisance, but is better analyzed through the law of negligence or products liability, which have well-developed precedents to determine liability for failure to warn." *Modesto*,119Cal. App. 4th at 42 (citation omitted).

B. *Affirmative* Conduct Contributing *Directly* To The Creation Of A Nuisance Is Required.

To state a nuisance claim against a manufacturer or supplier in California, a plaintiff must provide evidence of *affirmative conduct* that contributes *directly* to the creation of a nuisance, such as manufacture of equipment designed to discharge waste or specific instruction on the improper disposal of chemicals. *San Diego*, 30 Cal. App. 4th at 584-85; *Selma Pressure Treating Co. v. Osmose Wood Preserving Co.*, 221 Cal. App. 3d 1601, 1620 (1990) (permitting nuisance claim against defendant who provided advice on disposal of waste products, including use of an unlined dirt pond for dumping chemicals), *overruled on other grounds by Johnson v. Am. Standard, Inc.*, 43 Cal. 4th 56, 70 (2008); *Modesto*, 119 Cal. App. 4th at 41-42 ("defendants who manufactured equipment designed to discharge waste in a manner that will create a nuisance, or who specifically instructed a user to dispose of wastes in such a manner, could be found to have caused or permitted a discharge"); *see also In re MTBE*, 457 F. Supp. 2d at 463.

Through the use of selective excerpts from case law and erroneous citations, Plaintiff incorrectly argues that a manufacturer's promotion of a product coupled with a failure to warn about its dangers is sufficient to support a claim for nuisance. (Opp. at 1, 4-5.) Plaintiff first cites to this Court's 2001 opinion ruling on a motion to dismiss (not summary judgment) for the proposition that promotion and marketing of a product coupled with conspiring to conceal the threat of MTBE is sufficient for nuisance. (*Id.*) That 2001 opinion was based, in part, on law from outside California. *In re: MTBE Prods. Liab. Litig.*, 175 F.Supp.2d 593, 627-29 (S.D.N.Y. 2001). More importantly, the 2001 opinion predates the *Modesto* and *Santa Clara* decisions, which clarify the law of nuisance in California, and which this Court had the benefit of reviewing when it issued its subsequent 2006 decision confirming that nuisance requires *affirmative* conduct that contributes *directly* to the nuisance and *not* mere promotion or sale of a product. *In re MTBE*, 457 F.Supp.2d at 463-65.

Similarly, Plaintiff's misleading reference to *Selma* attempts to create the impression that a supplier's failure to warn about a product may be sufficient to support a claim for nuisance. (Opp. at 4-5.) *San Diego*, *Modesto*, and *Santa Clara* unequivocally reject such a result—mere failure to warn is *not* sufficient to support a claim for nuisance. *San Diego*, 30 Cal. App. 4th at 585, 587; *Modesto*, 119 Cal. App. 4th at 42; *Santa Clara*, 137 Cal. App. 4th at 309 and 313. In fact, *Modesto* explicitly *rejects* the interpretation of *Selma* Plaintiff offers here, clarifying that *Selma* does not hold a supplier's mere failure to warn gives rise to a claim for nuisance. 119 Cal. App. 4th at 42 n.9. In short, Plaintiff cites no authority supporting its claim that mere product manufacturers may be held liable for nuisance under California law.

Defendants deny that they "promoted" the use of MTBE as the City alleges. Plaintiff's contentions in this regard are nothing more than a dressed-up failure to warn claim. California law clearly holds that failure to warn is insufficient to support a nuisance claim, especially where, as here, the plaintiff seeks damages.

### C. The City Fails To Provide The Court With The Evidence Necessary To Support A Claim For Nuisance.

Plaintiff's Opposition fails to dispute the material facts relevant to its nuisance claim. Additionally, the Opposition ignores an essential element of proof for nuisance—causation. Even if evidence that Certain Defendants provided "improper storage and handling instructions" to station operators were legally sufficient for a nuisance claim under California law (which it is not), there is no evidence that any operator's alleged receipt and reliance on those instructions was the *cause* of any release.

#### 1. Van Ness Auto:

Plaintiff incorrectly implies this site had a "direct 'relationship'" with Chevron during the relevant time period. (Opp. at 18; Reply Rule 56.1 St. ¶ 6.) The City's own evidence confirms that

Chevron did *not* have a contractual relationship with this site after 1986.[1] (*See* Reply Rule 56.1 St. ¶ 6.) Because the 1985 Dealer Supply Contract on which Plaintiff relies was cancelled in 1986, the City's assertions regarding it are irrelevant and misleading. The contract was no longer in effect.[2]

Plaintiff cannot dispute that Van Ness Auto has at all relevant times been owned and operated by independent business persons, and that Chevron *never* owned the real estate, underground storage tanks, or the station at 2740 North Van Ness. (*Id.* ¶¶ 7, 10.) Instead, the City relies on alleged Chevron "inspections" of the station. But the undisputed evidence shows that any site visits by Chevron concerned signage and cleanliness only, and nothing more. (*Id.* ¶¶ 6-7)

The City also seeks to impose nuisance liability because, it claims, Mr. Bedirian testified that Chevron provided "MSDSs" to Van Ness Auto and gave him "instructions on cleaning up gasoline releases." (Opp. at 18.) Both statements find no support in the record. Although the City attaches an MSDS to its opposition, the City fails to cite to testimony by any owner or operator of Van Ness Auto authenticating it or any other MSDS. Moreover, the City mischaracterizes Mr. Bedirian's testimony. In response to a question asking whether he received MSDSs, Mr. Bedirian testified that he had received "safety instructions" regarding gasoline spills and giving him a phone number to call, which he never had to call because he never had a spill. (O'Reilly Decl., Ex. 2, Bedirian Depo.

---

[1] While between 1986 and 1999, Chevron supplied gasoline to a jobber that may have delivered Chevron-refined gasoline to this station, it is undisputed that there was no contractual relationship between the station and Chevron. (Reply Rule 56.1 St. ¶ 9.) It is further undisputed that, after selling gasoline to the jobber, Chevron no longer owned the gasoline and did not control where the gasoline was delivered. (*Id.*) The City erroneously claims that the jobber delivered gasoline refined by Chevron "until at least 2006"—a "fact" unsupported by the referenced evidence. (*Id.* ¶ 6.) Gas was not sold at Van Ness Auto after 1998. (Anderson Decl., Ex. 5, Bedirian Depo. at 14:23-15:4.)

[2] The site owner and operator testimony cited by the City on this point is unequivocal. (*See* O'Reilly Decl., Ex. 3, Clements Depo. at 25:8-21 ("I didn't buy any gasoline from Chevron when I owned the station. When my dad passed away [in 1986]... Chevron cancelled the contract with me, with the station, per se, and I had to go to R.V. Jensen & Company, which is a jobber, a local distributor here in town, and they handled Chevron products."), 26:18-23 (recalling that the contract with Chevron was "cancelled" in 1986).)

at 65:11-12, 14-17, 66:2-7.)[3] Because there were no spills during the time that he owned the station, the content of any instructions regarding gasoline spills are immaterial – the instructions could not have been a cause of any nuisance at the station. (*Id.* at 65:11-17, 66:2-7.)

None of the evidence the City offers as to Van Ness Auto amounts to the kind of "'affirmative acts' that contribute 'directly' to the nuisance." *In re MTBE*, 457 F. Supp. 2d at 463-64. The City's arguments that the operator made efforts to comply with "instructions," and that Chevron's MSDSs did "not contain any warnings or precautions known to Chevron [regarding preventing releases] at the time it was supplying the station" (Opp. at 19), is a classic failure to warn argument and reveals the products liability nature of the City's claims. Like the manufacturer defendants in *Modesto*, any alleged failure to warn was *not* an activity directly connected with the disposal of gasoline. 119 Cal. App. 4th at 42.

  2. **M&S Texaco:**

Despite Plaintiff's repeated references to "Shell," the M&S station was Texaco-branded during the entire relevant time period, as Plaintiff's own evidence demonstrates. (*See* O'Reilly Decl. Ex. 6 (identifying station at 2619 South East Avenue as "Texaco" until 2003); Reply Rule 56.1 Stmt. at ¶ 11.) Plaintiff's claim that M&S "became a Shell-branded station in 1998" is not only wrong; it also renders much of Plaintiff's "evidence" irrelevant.[4] The MTBE release at issue had already been detected at M&S during UST replacement in *October 1997*. *See* CVRWQCB, M&S Texaco Case

---

[3] The O'Reilly Declaration does not attach pages 14, 15, 20, 28, 29, or 31-35 from the Bedirian deposition which the City cites in its response to ¶ 6 of the 56.1 Statement. And, the same limited testimony is cited by Plaintiff twice for a range of different assertions the testimony does not support – once concerning an assertion regarding the intent of MSDSs that Plaintiff claims were provided to the operator, and another time concerning an assertion that Chevron gave the operator instructions on cleaning up gasoline releases.(*See* Reply Rule 56.1 Stmt. at ¶ 6 (citing O'Reilly Decl., Ex. 2, Bedirian Depo. at 65:11-12, 65:14-17, 66:2-7).)

[4] Shell and Texaco did not combine their West Coast refining and marketing assets into Equilon Enterprises LLC until January 1998. Equilon continued to sell both Texaco- and Shell-branded gasoline. (Anderson Supp. Decl., Ex. 14, Shell Defs.' Resp. to 1st Set of Interrogs. at 1.)

Closure Summary, March 2012, at 1. Thus, Plaintiff's citations to Shell dealer manuals and documents about MTBE are wholly misguided because they have no relevance to events at a Texaco-branded station prior to 1998.

Moreover, Plaintiff fails to contest any of the material facts about the site. No Defendant ever owned the real estate, underground storage tanks, piping, or other equipment at M&S. (Rule 56.1 Stmt. ¶ 11-16.) Nor has any Defendant ever operated the station. (*Id.* ¶ 16.) M&S and its owner, Mr. Dhillon, were solely responsible for operating the station, maintaining the equipment, hiring and firing employees, conducting required testing on the tanks and systems, complying with laws and regulations, and responding to spills. (*Id.* ¶¶ 17-19.)

Plaintiff seeks to impose nuisance liability because, according to Plaintiff, Mr. Dhillon received training and an unidentified instruction manual on operating a gasoline station from "company representatives," who would visit the station occasionally. (Opp. at 19-20.)[5] Plaintiff also claims that "Shell" would "monitor the gasoline levels in the tanks at the station" (Resp. to Rule 56.1 Stmt. at ¶ 11), and that "the only cleanup instructions Mr. Dhillon could recall was the use of kitty litter to absorb spills" (*id.*), although neither statement finds support in the record.[6]

But even if Plaintiff's claims were true, they simply fail to meet Plaintiff's burden to demonstrate that Defendants engaged in "'affirmative acts' that contribute 'directly' to the nuisance." *In re MTBE*, 457 F. Supp. 2d at 463-64. There is no evidence of any "activity directly connected" to the nuisance that ties any Defendant to Plaintiff's nuisance claim. *Id.*, citing *Modesto*, 119 Cal. App. 4th at 38-39. Defendants were not involved with the installation or design of the M&S UST system, nor did they instruct M&S to improperly dispose of MTBE gasoline. To the contrary, Mr. Dhillon "understood it was important to prevent leaks of gasoline into the environment

---

[5] Plaintiff claims in its brief (but not in its response to Defendants' Rule 56.1 Statement) that "[c]ompany representatives would also visit the station to inspect it." (Opp. at 20.) Plaintiff cites no evidence whatsoever that Texaco or Shell representatives "inspected" Mr. Dhillon's station.

[6] To the contrary, Mr. Dhillon testified that for any spill over a gallon, he was instructed to notify the fire department and call a spill cleanup company. (Anderson Supp. Decl., Ex. 14, Dhillon Dep. 27:4-36:9.)

regardless of whether or not the gasoline contained MTBE." (Dhillon Dep. 148:11-14.) At best, Plaintiff's claim amounts to little more than an allegation that Texaco failed to provide M&S with what Plaintiff deems to be sufficient warnings about MTBE gasoline. Such a claim is patently insufficient to impose nuisance liability under California law.

### 3. "Exxon" Service Station, Valley Gas, Beacon #3519 and Beacon-ARCO #615:

Nothing Plaintiff argues or cites changes the fact that neither VRC-CA nor VMSC has ever owned, leased, or operated the retail gas stations or real estate located at (1) 4594 East Tulare; (2) 2139 South Elm Avenue; (3) 4591 East Belmont; or (4) 1625 North Chestnut Ave. (Rule 56.1 St., ¶¶ 28, 30, 33, 35.) Nothing Plaintiff argues or cites changes the fact that neither VRC-CA nor VMSC has ever manufactured equipment used for the distribution, handling, storage, dispensing or sale of gasoline products. (*Id.* at ¶ 20.) Further, Plaintiff has no evidence that VRC-CA or VMSC assisted in the creation of a nuisance by failing to provide proper training, or by providing improper handling and storage instructions that contributed to groundwater contamination. At most, Plaintiff's Opposition contains citations to evidence concerning what Ultramar Inc. allegedly knew or did; however, such matters are entirely irrelevant, as Ultramar Inc. is not a movant in this motion for summary judgment.

Plaintiff, desperate to avoid summary judgment, has resorted to incorrectly arguing that "Valero" is the successor-in-interest to "Ultramar." (*See, e.g.*, Rule 56.1 Opp. St., ¶ 21.) Plaintiff repeatedly (and presumably intentionally) uses the generic names "Valero" and "Ultramar" to confuse the Court, and thereby avoid summary judgment, despite being well aware that it sued Ultramar Inc., VRC-CA, and VMSC.[7] Plaintiff wants the Court to believe that the liabilities of

---

[7] For example, Plaintiff acknowledges the Beacon Oil Company was "acquired by and merged into Ultramar Inc. in 1989." (Opp. at 21.) In the next sentence, Plaintiff writes, "Ultramar then merged (footnote continued)

Ultramar Inc. now rest with either VRC-CA or VMSC; however, the uncontroverted summary judgment evidence establishes that Ultramar Inc. continues to exist and conduct business, and, notably, has not transferred any liabilities relevant to this case to VRC-CA or VMSC. (Rule 56.1 St., ¶¶ 21-22.) Moreover, Ultramar Inc. has not merged into *any* Valero entity; rather, it remains an active subsidiary of Valero Energy Corporation.[8] (*Id.*)

The Declaration of Ethan Jones unequivocally establishes that neither VRC-CA nor VMSC are successors-in-interest to Ultramar Inc. (*Id.*) This fact is, in turn, supported by California law. (*See* Mot. at 13.) Plaintiff cites to *Ray v. Alad Corp.*, 19 Cal. 2d 22 (1977), to bolster its position otherwise, but as one might predict by Plaintiff's failure to provide *any* analysis of the case's application, *Ray* does not validate Plaintiff's successor-in-liability allegations.[9] (*See* Opp. at 21.)

As detailed in Defendants' Reply Rule 56.1 Statement, Plaintiff manipulates and mischaracterizes evidence so as to bolster its meritless claim that a successor liability theory should be permitted. (*See, e.g.*, Reply Rule 56.1 St., ¶¶ 21, 44, 61-62.) Additionally, Plaintiff's Rule 56.1 Opposition Statement is riddled with improper arguments that are unsupported by any citation to

---

with Diamond Shamrock, Inc. to form Ultramar Diamond Shamrock Inc. in 1996." (*Id.*, emphasis added.) Plaintiff hopes the Court will confuse "Ultramar" for "Ultramar Inc.," despite the undisputed evidence showing that Ultramar *Corporation* merged with Diamond Shamrock, Inc. to form Ultramar Diamond Shamrock Corporation, not Ultramar Inc. (Rule 56.1 St. ¶ 21.)

[8] Without any evidence, Plaintiff claims that Ultramar Inc. is "*Valero's* . . . wholly owned subsidiary." (Opp. at 20, emphasis added.) This statement is deceptively vague and therefore incorrect. Ultramar Inc. is not the "wholly owned subsidiary" of VRC-CA or VMSC. (Rule 56.1 St. ¶¶ 21-22.) Amazingly, in the very same paragraph in which it wrongly identifies Ultramar Inc. as such, Plaintiff then alleges that Ultramar Inc. is "now known as Valero Energy Corp."—yet another false and unsupported claim. (Opp. at 21; *see also* Rule 56.1 St., ¶¶ 20-22.) Valero Energy Corporation is the parent company of Ultramar Inc., VRC-CA, and VMSC. (Rule 56.1 St., ¶ 21.) Valero Energy Corporation is not a Defendant in this litigation.

[9] In *Ray*, the plaintiff was injured by Company A's product, but was permitted to seek damages from its successor, Company B, because Company A had been succeeded and dissolved prior to the plaintiff's injury. 19 Cal. 2d at 24, 34. Unlike *Ray*, Ultramar Inc., the company that allegedly harmed Plaintiff, is not only still in existence and capable of answering for any liabilities, but is also a defendant in this lawsuit. *Ray* is therefore inapplicable here.

evidence, admissible or otherwise. (*Id.* at ¶¶ 20-21, 31-32, 34, 62.) Smoke and mirrors aside, the summary judgment evidence before the Court demonstrates that Plaintiff has failed to establish that VRC-CA or VMSC are liable for the activities of Ultramar Inc. If Plaintiff is seeking remedies for any historical actions of Ultramar Inc., it must pursue them from that company, not others.[10]

Plaintiff ultimately resorts to claiming confusion about the way in which interrogatories were answered, trying to improperly use joint responses to prevent summary judgment. On November 5, 2008, Ultramar Inc., VRC-CA, and VMSC answered interrogatories jointly. In this process, corporate activities were aggregated and answers provided on a combined basis. The answers provided were correct, but do not necessarily apply to each of the entities in the group. The combining of entities was done simply for convenience and brevity. Plaintiff's claimed confusion is undermined by numerous other discovery materials that made the corporate separateness of these entities clear, some of which are attached as exhibits to the O'Reilly Declaration submitted with Plaintiff's Opposition. (*See, e.g.*, O'Reilly Decl., Exs. 8, 11, 19, 23, 32, 36.) Regardless, Plaintiff's "confusion" does not change the facts established in the Declaration of Ethan Jones. (Rule 56.1 St., ¶¶ 20-22.) Because Plaintiff is unable to controvert the Declaration of Ethan Jones, summary judgment is proper for VRC-CA and VMSC.

---

[10] Plaintiff claims that "[a]t a minimum, the Court should allow the City to amend 'Ultramar' in the complaint to 'Valero Energy Corporation,' Ultramar's post-merger name." (Opp. at 22.) Plaintiff named Ultramar Inc. in its Complaint – not "Ultramar." (*See* Rule 56.1 Opp. St., Ex. 1.) Ultramar Inc. has operated as a subsidiary of Valero Energy Corporation since December 31, 2001, and continues to exist and conduct business as "Ultramar Inc." (Rule 56.1 St., ¶¶ 21-22.) Ultramar Inc.'s "post-merger name" is not "Valero Energy Corporation." (*Id.*) Plaintiff's request would be fruitless anyway, since Valero Energy Corporation is simply a holding company that conducts no actual business operations, and therefore could have no liabilities for the alleged damages.

Dated: April 26, 2013.

                          Respectfully submitted,

                          KING & SPALDING LLP[11]

                          */s/ Charles C. Correll Jr.*

                          Robert E. Meadows
                          Jeremiah J. Anderson
                          1100 Louisiana, Suite 4000
                          Houston, Texas 77002
                          Tel: (713) 751-3200
                          Fax: (713) 751-3290

                          Charles C. Correll Jr.
                          101 Second Street, Suite 2300
                          San Francisco, California 94105
                          Tel: (415) 318-1200
                          Fax: (415) 318-1300

                          ***Attorneys for Defendants***
                          ***Chevron U.S.A. Inc. and Union Oil***
                          ***Company of California***

---

[11] The following page contains a list of Defendants who have joined in filing Defendants' Reply in Support of Motion for Partial Summary Judgment on Plaintiff's Nuisance Claim.

## DEFENDANTS JOINING REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S NUISANCE CLAIM

CHEVRON U.S.A. INC

UNION OIL COMPANY OF CALIFORNIA

SHELL OIL COMPANY

TEXACO REFINING AND MARKETING INC.

EQUILON ENTERPRISES LLC

EQUIVA SERVICES LLC

CITGO PETROLEUM CORPORATION

KERN OIL & REFINING CO.

NELLA OIL COMPANY

LYONDELL CHEMICAL COMPANY (FORMERLY KNOWN AS ARCO CHEMICAL COMPANY)

COASTAL CHEM, INC.

TESORO CORPORATION (FORMERLY KNOWN AS TESORO PETROLEUM CORPORATION)

TESORO REFINING AND MARKETING COMPANY (ERRONEOUSLY NAMES AS TESORO REFINING AND MARKETING COMPANY, INC.)

VALERO REFINING COMPANY-CALIFORNIA

VALERO MARKETING AND SUPPLY COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of April 2013, a true, correct, and exact copy of the foregoing document was served on all counsel via LexisNexis File & Serve.

_____
Jeremiah J. Anderson