**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE METHYL TERTIARY BUTYL ETHER PRODUCTS LIABILITY LITIGATION | Master File No. 1:00-1898 MDL 1358 (SAS) |
| **This Document Relates To:** | The Honorable Shira A. Scheindlin |
| *City of Fresno v. Chevron U.S.A. Inc., et al.* **Case No. 04 Civ. 04973 (SAS)** | |

**CERTAIN DEFENDANTS' REPLY TO PLAINTIFF CITY OF FRESNO'S LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS SUBMITTED IN OPPOSITION TO CERTAIN DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S NUISANCE CLAIM**

On March 15, 2013, Certain Defendants' filed a Motion for Partial Summary Judgment re Plaintiff's Nuisance Claim ("Motion") and a Local Rule 56.1 Statement of Material Facts Submitted in Support of Defendants' Motion ("Defendants' Statement of Facts").

On April 12, 2013, Plaintiff City of Fresno ("Plaintiff" or the "City") filed its Opposition to Certain Defendants' Motion ("Opposition" or "Opp.") and a Local Rule 56.1 Statement of Material Facts Submitted in Opposition to Certain Defendants' Motion for Summary Judgment Based on Plaintiff's Nuisance Claim. ("Plaintiff's Response"). The Opposition incorporated additional arguments and material.

"[R]eply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party." *Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226–27 (2d Cir. 2000) (finding among other things, that the reply submission was the first opportunity plaintiffs had to rebut the defendant's argument) (internal quotations and citations omitted). Accordingly, Defendants hereby respectfully submit

their Reply to Plaintiff's Response, including the "Additional Material Facts" submitted by

Plaintiff in opposition to Defendants' Motion for Partial Summary Judgment.

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| 1. The City of Fresno ("City") filed this lawsuit on October 22, 2003. (Declaration of Jeremiah J. Anderson in Supp. of Certain Defendants' Motion for Partial Summary Judgment, ("Anderson Decl."), filed concurrently herewith, Ex. 1, Fresno's Original Compl., filed Oct. 22, 2003.) | Admit. | |
| 2. The City filed a First Amended Complaint on October 28, 2004. (Fresno First Am. Compl., Oct. 28, 2004 [Docket No. 4 (Case No. 04-CV-4973-SAS)] ("FAC").) | Deny that the First Amended Complaint was filed on October 28, 2004. Admit that Fresno filed a First Amended Complaint on November 18, 2004. (O'Reilly Decl., Exh. 1 [First Amended Complaint].) | The City does not dispute that Defendants submitted a true and correct copy of the City's First Amended Complaint in support of Defendants' motion for summary judgment. The signature page on the First Amended Complaint is dated October 28, 2004. |
| 3. As a result of the hearing on January 11, 2013, the Court directed the City to provide Defendants with the theory and supporting documentation of affirmative conduct to support its claim of nuisance as to each station and defendant by February 8, 2013. (Anderson Decl., Ex. 2, Jan. 11, 2013 Tr. at 26, 30, 32-33, 38.) The Court further directed the parties to meet and confer by February 22, 2013 to determine whether any issues could be resolved without a motion. (*Id.*) | The City cannot admit or deny the way it is phrased. The City admits that the Court directed the parties to meet and confer, but denies that the City was required to lay out its entire legal and factual arguments supporting its nuisance claims by February 8, 2013. It would, in fact, have been impossible for the City to have set forth its legal arguments and factual basis in meet and confer due to the breadth of that information as well as | The City admits the parties were directed to meet and confer and does not dispute that the subject of the meet and confer was to be the City's claim of nuisance as to each station. The transcript of the parties' January 11, 2013 hearing before the Court speaks for itself and the further characterization and discussion in the City's response is irrelevant. |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | the fact that defendants had not clearly stated the basis on which they were moving for summary judgment. | |
| 4.       On February 8, 2013, the City identified a number of stations and defendants for which it was abandoning its nuisance claim. (*See* Anderson Decl., Ex. 3, Feb. 8, 2013 letter.) The City further set forth the evidence that it relies upon to support its nuisance claim regarding the stations and defendants at issue in this Motion. (*Id*.)  Defendants dispute the facts alleged by the City in its February 8 letter.   Defendants are simply referencing the letter here for the limited purpose to establish what the City is claiming.  The City's letter is not substantive evidence. Since February 8, 2013, the parties have met and conferred and the City has dropped its nuisance claim at additional stations and against additional defendants.  (Anderson Dec., ¶ 4.) | The City cannot admit or deny the way it is phrased. The City admits that through meet and confer it reached agreements with defendants concerning certain stations. The City again denies that it was required to lay out its entire legal and factual arguments supporting its nuisance claims by February 8, 2013, and therefore denies that the letter "establish[es] what the City is claiming" in its entirety.  It would, in fact, have been impossible for the city to have set forth its legal arguments and factual basis in meet and confer due to the breadth of that information as well as the fact that defendants had not clearly stated the basis on which they were moving for summary judgment. | The City does not specifically controvert the material facts set forth in Defendants' ¶ 4; consequently, Defendants' ¶ 4 should be deemed admitted.  *See* Local Rule 56.1(c). The City's February 8, 2013 letter and the transcript of the parties' January 11, 2013 hearing before the Court speak for themselves and the further characterizations and discussion in the City's response is irrelevant. |
| 5.       Defendants' Motion involves only those sites for which an agreement to dismiss nuisance could not be reached  and for which Defendants are not moving based on the Court's prior holding in *In re MTBE Prods. Liab. Litig.*, 824 F. Supp. 2d 524, 542 (S.D.N.Y. 2011) (the "Sites at Issue").  The Sites at Issue are:<br><br>• Van Ness Auto, 2740 North Van Ness [Chevron U.S.A. | Admit. | |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| Inc.];<br><br>• M&S Texaco, 2619 S. East Avenue [Shell Defendants];<br><br>• "Exxon" Service Station, 4594 E. Tulare Street [Valero Marketing and Supply Company ("VMSC"), Valero Refining Company-California ("VRC-CA");<br><br>• Valley Gas, 2139 South Elm Street [VMSC, VRC-CA];<br><br>• Beacon #3519, 4591 E. Belmont Avenue [VMSC, VRC-CA]; and<br><br>• Beacon-Arco #615, 1625 Chestnut Avenue [VMSC, VRC-CA]. | | |
| 6.      Van Ness Auto has not had a contractual relationship with Chevron U.S.A. Inc. since August 1986.  (*See* Anderson Decl., Ex. 4, F. Soler Decl. at ¶ 3; Anderson Decl., Ex. 5, Clements Dep. at 26:18-23, .)  Chevron-refined gasoline containing MTBE was not delivered to Van Ness Auto until 1990. (Anderson Decl., Ex. 4, F. Soler Decl. at ¶ 3.) | Denied.  Chevron had a clear and direct "relationship" with Van Ness Auto even though there may not have been written contract in place.  Chevron supplied gasoline directly to this site from prior to the relevant time period until at least August 1986, thereby gaining direct knowledge of the station's configuration as well as its operation. (Defendants' Rule 56.1 Statement at ¶ 6.) Subsequently, Chevron supplied gasoline to this station through a jobber named R. V. Jensen who delivered gasoline refined by | Defendants object to the entirety of the City's response, to ¶ 6 as it is irrelevant and non-responsive to the undisputed facts set forth by Defendants. Additionally, the City's response to ¶ 6 does *not* specifically controvert the material facts set forth in Defendants' ¶ 6; consequently, Defendants' ¶ 6 should be deemed admitted.  (*See* Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | Chevron from 1986 until at least 2006.  (O'Reilly Decl., Ex. 3, Clements Depo. at 25-27; Ex. 2, Bedrian Depo., at 37:11-19, 38:17-39:10; Ex. 40, Chevron U.S.A. Inc.'s Supply Declaration of Frank G. Soler.]) | admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.").) |
| | Even after Chevron started supplying the station through a jobber, Chevron signs continued to be displayed at the station.  Upon the station operator's request, in fact, Chevron installed more Chevron signs at the station even after 1986.  (O'Reilly Decl., Ex. 2, Bedirian Depo. at 41:3-8.)  Chevron personnel inspected the station.  (*Id* at 41:9-10, 41:13-17.)  Chevron provided Material Safety Data Sheets to the Van Ness Auto which were intended to contain instructions concerning the safe handling of MTBE gasoline, including responding to spills.  (*Id*. at 65:11-12, 65:14-17, 66:2-7.)  Chevron personnel, more importantly, gave the station operator instructions on cleaning up gasoline releases, including a phone number to call in case of a gasoline spill.  (*Id*. at 65:11-12; 65:14-17:66:2-7.) | Furthermore, the City's response to ¶ 6 contains multiple misstatements of fact, mischaracterizes the record, and states irrelevant matter.

For example, the deposition testimony cited by the City in fact contradicts its denial:  The testimony the City cites confirms that Chevron had <u>no</u> contractual relationship with Van Ness Auto after 1986.  (*See* O'Reilly Decl., Ex. 3. Clements Depo. at 25:8-21 ["…I didn't buy any gasoline from Chevron when I owned the station.  My dad did from 1926 – or 1928, I should say, until 1986, he dealt directly with Chevron.  When my dad passed away, within a couple of days after his death Chevron cancelled the contract with me, with the station, per se, and I had to go to R.V. Jensen & Company, which is a jobber, a local distributor here in town, and they handled Chevron products."], 26:18-23 [recalling that the contract with Chevron was "cancelled" in 1986.]) |
| | As early as 1985, Chevron's Dealer Supply Contract required the station to "comply with Company's | |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | programs and procedures for handling unleaded gasolines in their present or future form," and mandated that "Company's representatives shall have the right at any time to enter upon the premises where unleaded gasoline purchased hereunder are stored by or for Dealer and to take such quantities of unleaded gasoline as they deem necessary to check the quality of such products." (O'Reilly Decl., Ex. 3, Clements Depo. at 45:6-21, 46:10-47:10, 47:13-16, 48:8-10, and Ex. 7 thereto.) The station operator testified that when he received notification from the government that the underground storage tanks had to be removed, he immediately complied because he "wanted to abide by the law" and he "took care of whatever it - need to be done." (O'Reilly Decl., Ex. 2, Bedirian Depo. At 14:23-15:4.) The station operator further testified that he also complied with the requirement to have USTs tested for leaks annually, and that he hired a third party to conduct the testing. (*Id.* at 20:11-22, 28:25-29:5, 34:5-35:17.) The station operator also testified that he hired a third-party to conduct inventory reconciliation, and | Because this contract was cancelled in 1986, the City's assertions regarding the Dealer Supply Contract and any requirements therein are irrelevant and misleading. The contract was no longer in effect and is, therefore, irrelevant.<br><br>The City also fails to support its assertion that R.V. Jensen delivered gasoline refined by Chevron "until at least 2006." The Soler Declaration the City cites states that "[b]etween 1986 and 1999" Chevron supplied gasoline to R.V. Jensen. (Anderson Decl., Ex. 4, F. Soler Decl. at ¶ 3; reattached as O'Reilley Decl., Ex. 39 and erroneously referred to in the City's Response to SUMF as "Ex. 40".) More importantly, gas was not sold at Van Ness Auto after 1998. (Anderson Decl., Ex. 5, Bedirian Depo. at 14:23-15:4.)<br><br>The City's claim regarding signage is irrelevant given its admission in its Response to No. 7, below that Van Ness Auto was at all relevant times owned by other individuals and not Chevron.<br><br>The City's claim that Chevron inspected the station mischaracterizes Mr. |

6

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | that they utilized a "stick" method of reconciliation. (*Id*. at 31:23-32:25, 33:13-25.)  This testimony establishes that the owner and operator of the Van Ness Auto station routinely complied with safety instructions that were provided to him, and undertook safety precautions that were made known to him.  The station operator, moreover, admitted that operating a gasoline station "was all new stuff" to him, and that he relied on third parties to assist him with testing and safety procedures.  (*Id*. at 31:23-32:25, 34:5-35:17.)  In 1991, Chevron recognized that the introduction of MTBE into gasoline in California would substantially change the consequences of a gasoline spill or leak.  (O'Reilly Decl., Ex. 4, Aug. 12, 1991, Memorandum, TIP Letter #237, MTBE Effects [CHEV 09564-09567].)  The internal memo warns that while non-MTBE gasoline plumes are "relatively east" to address, "MTBE on the other hand is a different situation."  (*Id*., at 1.)  The memo warns that MTBE gasoline releases will result in "larger" plumes of contamination that "will migrate" faster.  (*Ibid*.)  Specifically, the memo warns Chevron management | Bedirian's testimony, which was that Chevron used to check the station for "cleanliness" and nothing more.  (*See* O'Reilley, Ex. 2, Bedirian Depo. at 41:9-10, 13-17.)  Mr. Bedirian testified that Chevron never inspected his gasoline dispensers.  (Anderson Decl., Ex. 5, Bedirian Depo. at 42:15-16, 19-21.)<br><br>The City erroneously claims that Mr. Bedirian testified that Chevron provided "MSDSs" to Van Ness Auto and gave him "instructions on cleaning up gasoline releases."  Both statements find no support in the record.  Although the City attaches an MSDS to the O'Reilly Decl., the City fails to cite to testimony by any owner or operator of Van Ness Auto authenticating it or any other MSDS.  Moreover, the City mischaracterizes Mr. Bedirian's testimony: In response to a question asking whether he received MSDSs, Mr. Bedirian testified that he had received "safety instructions" regarding gasoline spills and giving him a phone number to call, which he never had to call because he never had a spill.  (O'Reilly Decl., Ex. 2, Bedirian Depo. at 65:11-12, 14-17, 66:2-7.)  Because there were no spills during |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | that "[w]hen MTBE gets into the water then the trouble really starts." (*Ibid.*) The memo concludes that: "Our highest degree of concern right now is with service stations without spill containment manholes that are, or will be, served by racks that are blending MTBE. The combination of MTBE gasoline being delivered, the lack of spill containment manholes, and shallow groundwater could be tremendously expensive for us in the long fun. **As they say, an ounce of prevention is worth a pound of cure, and in this case prevention is certainly prudent.**" (*Id.*, at 2.) Chevron unequivocally knew in 1991, before it became a supplier to the Van Ness Auto, that it was critical for California service stations to upgrade their gasoline storage and handling systems in order to prevent substantial MTBE contamination of groundwater. Chevron, however, failed to notify any of the owners or operators of the Van Ness Auto station, any of the regulatory agencies overseeing the stations, or even any of the third parties performing safety testing of the storage system at the station, of the need to implement additional | the time that he owned the station, the content of any instructions regarding gasoline spills are immaterial – the instructions could not have been a cause of any nuisance at the station. (O'Reilly Decl., Ex. 2, Bedirian Depo. at 5:11-12, 14-17, 66:2-7.)  In fact, Mr. Bedirian testified that he did not remember Chevron ever providing him with any manuals or instructions for operating his station. (Anderson Decl., Ex. 5, Bedirian Depo. at 42:23-24, 43:1-5.)

Also, the same limited Bedirian portions of testimony are cited by Plaintiff twice for a range of different assertions that the testimony does not support – once concerning an assertion regarding the intent of MSDSs that Plaintiff claims were provided to the operator, and another time concerning an assertion that Chevron gave the operator instructions on cleaning up gasoline releases.  (See Reply 56.1 Stmt. at ¶ 6 (citing O'Reilly Decl., Ex. 2, Bedirian Depo. at 65:11-12, 65:14-17, 66:2-7.)

And, the O'Reilly Declaration does not attach pages 14, 15, 20, 28, 29, or |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | safety precautions and procedures to prevent releases of MTBE gasoline which would cause groundwater contamination. Chevron Materials Safety Data Sheets ("MSDSs") for MTBE gasoline, which were provided to Van Ness Auto Station, do not contain any of the warnings or precautions called out in the above memorandum.  In 1993 MSDS, there is not one single mention of the need to implement "spill containment manholes" to prevent releases of MTBE gasoline during deliveries that could result in significant groundwater contamination.  (O'Reilly Decl., Ex. 5, Chevron Material Safety Data Sheet (March 19, 1993 at ¶ 7.) | 31-35 from the Bedirian deposition which the City cites in its response to ¶ 6.  The purported testimony regarding what station operators allegedly relied upon "third parties" to do is irrelevant to a claim of nuisance against Chevron.

The internal memo referenced by the City in its response is irrelevant to the undisputed fact that there was no contractual relationship between Chevron and Van Ness Auto after August 1986.  It is also irrelevant to a claim of nuisance against Chevron.

Finally, the City's assertions that the operator made efforts to comply with "instructions," and that Chevron's MSDSs (of which only one is provided with the Opposition) did "…not contain any warnings or precautions known to Chevron [regarding preventing releases] at the time it was supplying the station" (Opp., p. 19), is a classic failure to warn argument and belies the products liability nature of the City's claims. |
| 7.     Since 1986, the site and underground storage tanks have been owned and operated by either | Admit.  Chevron, however, provide signs, inspected the premises, and provided | The City admits the facts contained in this paragraph; the additional arguments |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| James Clements (1986-1991) or Garabed Bedirian and his daughter (1991-1998).  (Anderson Decl., Ex. 5, Clements Dep. At 15:9-16:18; Anderson Decl., Ex. 5, Bedirian Dep. at 13:23-14:15.)  Prior to 1986, the station owner and operator was an independent businessman, and Mr. Bedirian also testified that he was an independent businessman. (Anderson Decl., Ex. 4, Dealer Supply Contract at 3, ¶ 5; Anderson Dec., Ex 5, Bedirian Dep. at 73:7-9.) | instructions on how to handle MTBE gasoline.  *See* Response to  ¶ 6. | contained in its response are unsupported by any citation to evidence in the record.<br><br>Defendants' additionally incorporate their Reply to ¶ 6. |
| 8.       Mr. Bedirian testified that the underground storage tanks were removed in 1998 and the gasoline station was closed. (Anderson Decl., Ex. 5, Bedirian Dep. at 14:13-15:4.) | Admit. | |
| 9.       Between August 1986 and 1999, Chevron supplied gasoline to a jobber that may have delivered Chevron-refined gasoline to this station, although again, there was no contractual relationship between the station and Chevron U.S.A. Inc. (*See* Anderson Decl., Ex. 4, F. Soler Decl. at ¶ 3.)  While Mr. Clements owned and operated the station, the jobber called R.V. Jensen & Company supplied the station. (Anderson Decl., Ex. 5, Clements Dep. At 25:8-21.)  Likewise, while Mr. Bedirian owned and operated the station, he obtained gasoline only from R.V. Jenson.  (Anderson Decl., Ex. 5, Bedirian Dep. At 72:25-73:6.)  After Chevron sold | Denied.  *See* Response to ¶ 6. | The City refers the Court to its Response to ¶ 6, but that response does not specifically controvert the material facts set forth in Defendants' Paragraph 9; consequently, Defendants' ¶ 9 should be deemed admitted.  *See* Local Rule 56.1(c).<br><br>Defendants' additionally incorporate their Reply to ¶ 6. |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| gasoline to R.V. Jensen, Chevron no longer owned the gasoline and did not have control over where the gasoline was delivered.  (Anderson Decl., Ex. 4, Soler Decl. at ¶ 3.) | | |
| 10.      Chevron U.S.A. Inc. never owned the real estate, underground storage tanks, or the station at 2740 North Van Ness. (*See* Anderson Decl., Ex. 4, F. Soler Decl. at ¶ 3.)  Nor did Chevron U.S.A. Inc. operate the station at 2740 North Van Ness.  (*See* Anderson Decl., Ex. 4. F. Soler Decl., at ¶ 3.)  To the extent that any Chevron representative ever visited the station at 2740 North Van Ness during the relevant time period, those visits were to provide signage and to inspect for cleanliness.  (*See* Anderson Decl., Ex. 5, Bedirian Dep. At 41:3-17.)  Chevron did not inspect the gasoline dispensers at North 2740 Van Ness.  (Anderson Decl., Ex. 5, Bedirian Dep. at 42:15-21; *see also* 73:7-20.) | Denied.  *See* Response to ¶ 6. | The City refers the Court to its Response to ¶ 6, but that response does not specifically controvert the material facts set forth in Defendants' Paragraph 10; consequently, Defendants' ¶ 9 should be deemed admitted.  *See* Local Rule 56.1(c).

Defendants' additionally incorporate their Reply to ¶ 6. |
| 11.      M&S Texaco operated the service station located at 2619 South East Avenue.  (Anderson Decl., Ex. 6, Dhillon Dep. at 17:4-21; 37:11-25.)  M&S Texaco was solely owned by Jatinder Paul Dhillon of Fresno, California, who purchased the business that ran the station in 1995 or 1996.  (Anderson Decl., Ex. 6, Dhillon Dep. at 17:7-16; 143:25-144:16.)  The service station real estate is owned by a trust controlled by Glen and Shirley | Denied.  The site became a Shell-branded station in 1998 and remained a Shell-branded until at least 2009.  (O'Reilly Decl., Ex. 6, Shell Defendants' Responses to City of Fresno's First Set of Interrogatories to Defendants, Ex. B, at 8; O'Reilly Decl., Ex. 7, Dhillon Depo. at 29:20-23, 39:5-10, 39:19-21.)  Company Representatives | The City's response to paragraph 11 of Defendants' Rule 56.1 Statement contains multiple misstatements of fact and mischaracterizes the record, and fails to refute or address most of the material facts set forth in paragraph 11 of Defendants' Rule 56.1 Statement, which therefore are deemed admitted.

As its name suggests, M&S |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| Prickett of Fresno, California. (Anderson Decl., Ex. 6, Dhillon Dep. at 44:4-22; 99:4-20.)   Mr. Dhillon leased the station property from the Pricketts, and had a supply contract with Texaco.  (Anderson Decl., Ex. 6, Dhillon Dep. at 49:15-50:20.)  Mr. Dhillon stopped operating the station in January 2009.  (Anderson Decl., Ex. 6, Dhillon Dep. at 36:13-20.) | gave the station operator instructions, including a manual, for cleaning up gasoline releases.  (O'Reilly Decl., Ex. 7, Dhillon Depo. at 27:4-11.)  While the station was branded Shell, company representatives from Shell would visit the station.  (*Id.* at 149:4-15.)  When Mr. Dhillon became a branded station, he was provided training by Shell on the safe operation of a gasoline station.  (O"Reilly Decl., Ex. 7, Dhillon Depo. at 25:14-26:13.)  Company representatives also gave Mr. Dhillon a manual ("book") on how to operate the station, including instructions for cleaning up gasoline releases.  (*Id.* at 26:8-27:11, 62:5-63:2].)  While the station was branded Shell, company representatives from Shell would visit the station.  (*Id.* at 149:4-15].)  The only spill clean up instructions Mr. Dhillon could recall was the use of kitty litter to absorb spills.  (*Id.* at 27:12-24, 63:3-24]).  Mr. Dhillon, moreover, had only heard that MTBE was in gasoline, he did not recall any specific instructions provide by Shell for the handling of MTBE gasoline.  (*Id.* at 92:18-94:25.)  Mr. Dhillon confirmed that upgrades to the UST system were not implemented until | Texaco sold Texaco-branded gasoline for the entire relevant period.  The document on which plaintiff relies for the statement that the station was Shell-branded, Exhibit 6 to the O'Reilly Declaration, explicitly states that the station at 2619 South East Avenue was Texaco-branded until 2003.  The release of MTBE gasoline at issue in this case was discovered in October 1997.  (Central Valley Regional Water Quality Control Board, M&S Texaco Case Closure Summary, March 2012, at 1.) Equilon Enterprises LLC, which combined certain assets of Shell Oil Company and Texaco Refining and Marketing Inc., was not formed until January 1998. (*See* Shell Defendants' Objections and Responses to Plaintiff City of Fresno's First Set of Interrogatories to Defendants at 1.)  The station became Shell-branded after 2003 until it closed in 2009. MTBE gasoline was not sold in California after January 1, 2004.

Mr. Dhillon, the operator of the station, testified that he received a manual from company representatives instructing him on how to clean up a spill if one happened.  (Anderson Supp. |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | actually required by governmental regulation. (*Id.*, at 54:3-19.)  He also confirmed that the station did not change from the long inadequate stick method of inventory reconciliation until the time when the tanks were replaced.  (*Id.*, at 56:1-57:7].)  Once the tanks were replaced, Shell began to monitor the gasoline levels in the tanks at the station.(*Id.*, at 57:8-15.)<br><br>Manuals provided by Shell to its warnings expert that were published in the relevant time period when Mr. Dhillon was operating have little to no information concerning additional safety and handling procedures for MTBE gasoline.  (O'Reilly Decl., Ex. 40, Dealer Management Development Program.)  Shell's MSDSs during the relevant time period similarly lacked information concerning additional safety and handling instructions for MTBE gasoline.  (O'Reilly Decl., Ex. 41, Shell MSDS, at Oct. 7, 1994.) | Decl, Ex. 14, Dhillon Dep. 27:4-24.)  Contrary to plaintiff's representation, Mr. Dhillon did not testify that the "only spill clean up instructions … was [sic] the use of kitty litter to absorb spills."  (Plaintiff Rule 56.1 Response ¶ 11.)  To the contrary, Mr. Dhillon testified that an absorbent material like kitty litter would be used in the event of a small spill; in the event of a larger spill – more than a gallon – he was instructed to notify the fire department and to call a company that specialized in spill cleanups. (Anderson Supp. Decl., Ex. 14, Dhillon Dep. 27:4-36:9.)  Moreover, Mr. Dhillon testified that he "understood it was important to prevent leaks of gasoline into the environment regardless of whether or not the gasoline contained MTBE." (Anderson Supp. Decl., Ex. 14, Dhillon Dep. 148:11-14.)  The Shell Defendants admit that Mr. Dhillon testified that company representatives would visit the station from time to time; however, in its brief, but not in its Rule 56.1 statement, the City claims that company representatives would "inspect" the station. This claim is unsupported by the record and not contained in the City's Rule 56.1 statement. |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | | The testimony plaintiff cites from Mr. Dhillon that "upgrades to the UST system were not implemented until actually required by government regulation" does not support that statement, but in any event is irrelevant because Mr. Dhillon further testified that the underground storage tanks and piping on the M&S Texaco property were owned by the landlord, the Pricketts, rather than Shell or Texaco, and the Pricketts paid to have the tanks upgraded in 1997.  The equipment on the property was never owned by Texaco or Shell.  (Anderson Decl., Ex. 6, Dhillon Dep. at 43:22-45:25; 71:1-72:16.)  The testimony plaintiff cites regarding the change from what it characterizes as the "long inadequate stick method of inventory reconciliation" does not support its claim that such method was inadequate, and its statement that "[o]nce the tanks were replaced, Shell began to monitor the gasoline levels in the tanks at the station" is further unsupported by the evidence plaintiff submits; Mr. Dhillon never testified that "Shell began to monitor the gasoline levels in the tanks at the station."  (Anderson Supp. Decl, Ex. 14, Dhillon Dep. 55:25-57:25.) |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | | Finally, given that the station was Texaco-branded at the time MTBE gasoline was sold, plaintiff's submission of Shell MSDSs and safety manuals is wholly irrelevant. |
| 12.      Currently, the station is operated by Fleet Card Fuels, Inc., of Bakersfield, California.  (*See*, *e.g*., Anderson Decl., Ex. 7, ASR Engineering, Inc., Semi-Annual Groundwater Monitoring and Wastewater Drum Disposal Documentation Report, Fall 2009 and Spring 2010, M&S Texaco, 2619 S. East Avenue, Fresno, California, May 10, 2010.) | Admit. | |
| 13.      The underground storage tanks and piping on the M&S Texaco property were owned by the landlord, the Pricketts, and the Pricketts paid to have the tanks upgraded in 1997.  (Anderson Decl., Ex. 6, Dhillon Dep. at 43:22-45:25; 71:1-72:16.)  Mr. Dhillon believes that he initially owned the dispensers, but after the dispensers were replaced they became the landlord's property.  (Anderson Decl., Ex. 6, Dhillon Dep. at 46:1-18.) | Admit.  The City contends, however, that this fact is irrelevant.  *See* Response to ¶ 11. | |
| 14.      During the entire relevant time frame, the station was Texaco-branded.  (*See* Anderson Decl., Ex. 6, Shell Defendants' Response to City of Fresno's First Set of | Admit. | |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| Interrogatories, Exh. B at p. 8.) | | |
| 15.      The supply contract was the sole business relationship that M&S had with either Shell or Texaco.   (Anderson Decl., Ex. 6, Dhillon Dep. at 144:17-145:8.) | Denied.  *See* Response to ¶ 11. | *See* reply to ¶ 11. |
| 16.      Neither Shell nor Texaco ever owned the station property or the business that operated the station. (Anderson Decl., Ex. 6, Dhillon Dep. at 145:10-23), and neither Shell nor Texaco ever operated the station.  (Anderson Decl., Ex. 6, Dhillon Dep. at 146:2-4.) | Admit.  The City contends, however, that this fact is irrelevant.  *See* Response to ¶ 11. | |
| 17.      Mr. Dhillon made all decisions on whom to hire and fire, and he understood that he was responsible for complying with all laws involving the operations of the station.  (Anderson Decl., Ex. 6, Dhillon Dep. at 146:5-20.) | Admit.  The City contends, however, that this fact is irrelevant.  *See* Response to ¶ 11. | |
| 18.      Mr. Dhillon instructed his employees on how to respond to leaks and spills of gasoline, and he testified that he was responsible for cleaning up spills.  (Anderson Decl., Ex. 6, Dhillon Dep. at 30:20-31:5; 147:1-8.) | The City admits that Mr. Dhillon provided instructions to his employees, but Shell also provided training and instruction to Mr. Dhillon, and provided manuals and MSDSs that would have referred to by his employees. *See* Response to ¶ 11. | Plaintiff admits the facts contained in this paragraph; the additional arguments contained in its response are irrelevant to this motion and unsupported by the evidence it cites.  *See* reply to ¶ 11. |
| 19.      Mr. Dhillon was responsible for maintenance of the gasoline nozzles and dispensers at the station (Anderson Decl., Ex. 6, Dhillon Dep. at 37:5-10), and Mr. | The City admits that Mr. Dhillon had maintenance responsibilities at the station, but denies that Mr. Dhillon was provided adequate | Plaintiff admits the facts contained in this paragraph; the additional arguments contained in its response are irrelevant to this motion and |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| Dhillon was also responsible for conducting tightness tests on the underground storage tanks. (Anderson Decl., Ex. 6, Dhillon Dep. at 53:10-54:2.) The Central Valley Regional Water Quality Control Board considered Mr. Dhillon the responsible party for the station and addressed all correspondence pertaining to the site investigation and remedial action at the station, including the No Further Action Required letter, to Mr. Dhillon. (Anderson Decl., Ex. 7, Letter from CVRWQCB to Paul Dhillon dated 20 March 2012.) | instructions and information with which to carry out those responsibilities. The City further denies this fact on the grounds that Shell provided training and manuals on how to maintain the station and how to respond to leaks and spills. *See* Response to ¶ 11. | unsupported by the evidence it cites. *See* reply to ¶ 11. |
| 20.     Valero Marketing and Supply Company ("VMSC") and Valero Refining Company-California ("VRC-CA") (collectively, "Valero") did not begin business in the State of California until March 16, 2000. (Anderson Decl., Ex. 8, Declaration of Ethan Jones ("E. Jones Decl.") at ¶¶ 4, 6.)  VMSC and VRC-CA are subsidiaries of Valero Energy Corporation. (Anderson Decl., Ex. 8, E. Jones Decl. at ¶ 3.)  Neither VMSC nor VRC-CA have ever manufactured equipment used for the distribution, handling, storage, dispensing or sale of gasoline products. (Anderson Decl., Ex. 8, E. Jones Decl. at ¶ 8.) | Valero's Separate Statement of Facts concedes that the property and business were turned over to Ultramar (referred to as "Beacon") in approximately 1985 (Defs' Fact No. 23), and that Ultramar leased and operated the station from 1985 to 1995 (Defs' Fact No. 24). Valero thus had direct control and ownership over the station during the relevant time period, and would be directly liable for nuisance. | VRC-CA and VMSC object to the entirety of Plaintiff's response, as it is irrelevant and non-responsive to the facts set forth by Defendants. VRC-CA and VMSC further object that allegations/facts concerning Ultramar Inc. are completely irrelevant to the motion brought by VRC-CA and VMSC.  Ultramar Inc. is not moving for summary judgment on Plaintiff's nuisance claim, and Plaintiff cannot establish that VRC-CA and/or VMSC have successor liability for the activities of Ultramar Inc. For these reasons, Plaintiff's discussions of facts relating to Ultramar Inc. are irrelevant to the determination of VRC-CA and VMSC's motion. |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | | Additionally, Plaintiff's response does not specifically controvert the material facts set forth in Defendants' Paragraph 20; consequently, Defendants' Paragraph 20 should be deemed admitted.  (*See* Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.").)  Furthermore, Plaintiff's statement, "Valero thus had direct control and ownership over the station during the relevant time period, and would be directly liable for nuisance," is not "followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  (*See* Local Rule 56.1(d).)  Plaintiff's statement is one of argument, not fact, and is therefore inappropriate and should be stricken.  (*Id.*) <br><br> Subject to, and without waiving, the foregoing, VRC-CA and VMSC deny that they "had direct control and ownership over the |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | | station during the relevant time period, and would be directly liable for nuisance." Neither VRC-CA nor VMSC has ever owned, leased, or operated the retail gas station or real estate located at 4594 East Tulare Avenue, Fresno, CA.  (Anderson Decl., Ex. 8, E. Jones Decl. at ¶ 11.) Ultramar Inc. did not merge with or into VRC-CA or VMSC.  (Anderson Decl., Ex. 8, E. Jones Decl. at ¶¶ 18-19.) With respect to the Exxon Service Station site, Ultramar Inc. has not transferred or assigned any liabilities, obligations, or property to VRC-CA or VMSC, nor has VRC-CA or VMSC assumed or received any liabilities, obligations, or property from Ultramar Inc. (Anderson Decl., Ex. 8, E. Jones Decl. at ¶¶ 18-19.) Ultramar Inc. continues to exist and conduct business as of the date of March 15, 2013.  (Anderson Decl., Ex. 8, E. Jones Decl. at ¶ 20.) Neither VRC-CA nor VMSC are successors-in-interest to Ultramar Inc.  (Anderson Decl., Ex. 8, E. Jones Decl. at ¶ 20.) |
| 21.      Ultramar Inc. is a Nevada corporation with operations primarily in Wilmington, California.  (Anderson Decl., Ex. 8, E. Jones Decl. at ¶ 14.)  On December 3, 1996 Ultramar | Denied.  More than a year after the close of fact discovery in this matter, however, Valero now contends they do not have nuisance liability because | Defendants globally object to Plaintiff's attempt to convert its Rule 56.1 Statement of Material Facts in Opposition to Defendants' Statement of Material Facts into an |

19

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| Corporation merged with Diamond Shamrock, Inc. to form Ultramar Diamond Shamrock Corporation. (Anderson Decl., Ex. 8, E. Jones Decl. at ¶ 15.)  After this merger, Ultramar Inc. continued in existence as a subsidiary of Ultramar Diamond Shamrock Corporation. (*Id*.)  On December 31, 2001, Ultramar Diamond Shamrock Corporation merged with and into Valero Energy Corporation. (Anderson Decl., Ex. 8, E. Jones Decl. at ¶ 16.)  At that time, Ultramar Inc. became a subsidiary of Valero Energy Corporation. (*Id*.)  Ultramar Inc., VMSC, and VRC-CA have continued to operate as subsidiaries of Valero Energy Corporation since December 31, 2001. (Anderson Decl., Ex. 8, E. Jones Decl. at ¶ 17.) | they are not successors to Ultramar.  Eight years ago Ultramar admitted in a disclosure to the Court that VMSC took over and continued Ultramar's duties and obligations relating to MTBE activities.  (O'Reilly Decl., Ex. 36, Defendant Ultramar, Inc.'s Disclosure Pursuant to June 9, 2005 Directive as Amended by the Court on August 12, 2005 (Oct. 17, 2005) at Response to 2B.

Valero admits that its history can be traced back to Beacon Oil Company, which was acquired by and merged into Ultramar Inc. in 1989. (Def.'s SSUF at ¶ 50.) Ultramar then merged with Diamond Shamrock, Inc. to form Ultramar Diamond Shamrock Inc. in 1996.  (*Id*.) Ultramar Diamond Shamrock Corp. then merged with and into Valero Energy Corp. on December 31, 2001.  (*Id*.)  With each merger, the successor company assumed the liabilities of the margining entities.  (*Ray v. Alad Corp*. (1997) 19 Cal.2d 22, 28.)

Ultramar had engaged in wholesale/bulk marketing and/or selling gas with MTBE in California from 1994 to 2002.  (O'Reilly Decl., Ex. 40, Defendant Ultramar, Inc.'s Disclosure | argumentative brief. Plaintiff has simply transferred large portions of its Opposition brief into the responses herein, and, in the process, has negated the purpose of a Rule 56.1 Statement of Material Facts. VRC-CA and VMSC also object to Plaintiff's Paragraph 21 to the extent that statements contained therein are irrelevant and non-responsive to the facts set forth by Defendants.

VRC-CA and VMSC further object that allegations/facts concerning Ultramar Inc. are completely irrelevant to the motion brought by VRC-CA and VMSC.  Ultramar Inc. is not moving for summary judgment on Plaintiff's nuisance claim, and Plaintiff cannot establish that VRC-CA and/or VMSC have successor liability for the activities of Ultramar Inc. For these reasons, Plaintiff's discussions of facts relating to Ultramar Inc. are irrelevant to the determination of VRC-CA and VMSC's motion.

Moreover, Plaintiff's response does not specifically controvert the material facts set forth in Defendants' Paragraph 21; consequently, Defendants' Paragraph 21 should be |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | Pursuant to June 9, 2005 Directive as Amended by the Court on August 12, 2005 (Oct. 17, 2005) at Response to 2A.)  At the time when Ultramar Diamond Shamrock merged with and into Valero Energy Corp., VMSC then took over and continued Ultramar's MTBE activities.  (*Ibid.* at 2B)  In 2005, Ultramar disclosed to the Court: "Ultramar ceased the above-described wholesale/bulk and/or selling activity on or about July 1, 2002, when this activity was undertaken by Valero Marketing and Supply Company ("VMSC"), an indirectly held subsidiary." (*Id.*)  Even if Ultramar because a subsidiary of Valero Energy, Valero treated Ultramar as an asset by transferring its operations to various other Valero entities, such as VMSC. Ultramar, moreover, declined to fully disclose any transfer or shift in liability until specific stations were identified by plaintiff. (O'Reilly Decl., Ex. 40, Defendant Ultramar, Inc.'s Disclosure Pursuant to June 9, 2005 Directive as Amended by the Court on August 12, 2005 (Oct. 17, 2005) at Response to 2B.)  Nonetheless, the City's First Amended Complaint asserts that all defendants, including | deemed admitted.  (*See* Local Rule 56.1(c).) Furthermore, the second sentence of Plaintiff's response is not "followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  (*See* Local Rule 56.1(d).)  Plaintiff's statement is one of argument, not fact, and is therefore inappropriate and should be stricken.  (*Id.*)

Plaintiff's response additionally attempts to improperly blame VRC-CA and VMSC for the timing of the successor liability issue. Plaintiff first raised the allegations of successor liability in this case in a meet-and-confer letter dated March 6, 2013, over two years after the original fact discovery deadline.  The fact that VRC-CA and VMSC "now contend[] they do not have nuisance liability because they are not successors to Ultramar [Inc.]" is a direct result of Plaintiff's last-minute attempt to insert a successor liability theory into this lawsuit.

VRC-CA and VMSC did not and do not admit that their history can be traced back to Beacon Oil Company; rather, Ultramar Inc.'s history |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | Ultramar and Valero, acted as "successors[s]-in-interest" to each other.  (O'Reilly Decl., Ex. 1, First Amended Complaint at ¶ 25.)  When Ultramar was making the decision to sue MTBE as an oxygenate, no consideration was given to the underground storage tanks as retail facilities.  (O'Reilly Decl., Ex. 8, Maticelli Depo. (July 26, 2000) at pp. 40:4-8, *South Tahoe*.)  Furthermore, Ultramar had no program which required independent gasoline dealers which purchased gasoline from Ultramar to certify that their tanks were not leaking prior to a purchase of Ultramar gasoline.  (*Id*. at pp. 46:2-7)  Ultramar made no effort to determine the environmental impacts of MTBE  as an additive for gasoline.  For example, Ultramar made not attempt to contact anybody at Shell to discuss its experience with the use of MTBE in gasoline.  (*Id*. at p. 50:3-12.)  Ultramar engaged in no independent research regarding the environmental fate of MTBE before it decided to use it as an oxygenate in gasoline.  (*Id*. at pp. 50:18-25.)  The Vice President of Ultramar recalled no discussions regarding the effects of MTBE in groundwater when Ultramar elected to use | involves Beacon Oil Company, which was acquired by Ultramar Inc. in 1989.  (Anderson Decl., Ex. 8, E. Jones Decl. at ¶ 14.)  Contrary to the "facts" put forth in Plaintiff's response, "Ultramar" did not merge with Diamond Shamrock, Inc. in 1996; rather, Ultramar Corporation merged with Diamond Shamrock, Inc. to form Ultramar Diamond Shamrock Corporation in 1996.  (Anderson Decl., Ex. 8, E. Jones Decl. at ¶ 15.)  After this merger, Ultramar Inc. continued in existence as a subsidiary of Ultramar Diamond Shamrock Corporation.  (Anderson Decl., Ex. 8, E. Jones Decl. at ¶ 15.)  On December 31, 2001, Ultramar Diamond Shamrock Corporation merged with and into Valero Energy Corporation. (Anderson Decl., Ex. 8, E. Jones Decl. at ¶ 16.)  At that time, Ultramar Inc. became a subsidiary of Valero Energy Corporation.  (Anderson Decl., Ex. 8, E. Jones Decl. at ¶ 16.)  Further, Plaintiff's statement, "With each merger, the successor company assumed the liabilities of the merging entities," is not "followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  (*See* Local |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | MTBE in gasoline. (*Id.* at p. 52:15-25, p. 53:1-10.) | Rule 56.1(d).) Instead, Plaintiff cites generally to *Ray v. Alad Corp.*, 19 Cal.2d 22, 28 (1977). Plaintiff's statement is one of argument, not fact, and Plaintiff's citation to case law is neither sufficient to establish the existence of successor liability, nor is it admissible evidence.<br><br>Plaintiff's statement, "[e]ven if Ultramar became a subsidiary of Valero Energy, Valero treated Ultramar as an asset by transferring its operations to various other Valero entities, such as VMSC," fails to abide by the requirements of Local Rule 56.1(d) and Federal Rule of Civil Procedure 56(c). Plaintiff does not cite to *any* evidence that supports the allegations (1) that Ultramar Inc. transferred "its operations to various other Valero entities," or (2) that such conduct, even if proven, amounts to "Valero treat[ing] Ultramar as an asset." (*See* Local Rule 56.1(d).) Plaintiff's deficiencies aside, VRC-CA and VMSC deny Plaintiff's allegations, as, with respect to the Exxon Service Station, Valley Gas, Beacon #3519, and Beacon-ARCO #615 sites, Ultramar Inc. has not transferred or assigned any liabilities, obligations, or property to |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | | VRC-CA or VMSC, nor has VRC-CA or VMSC assumed or received any liabilities, obligations, or property from Ultramar Inc.  (Anderson Decl., Ex. 8, E. Jones Decl. at ¶¶ 18-19.)  Neither VRC-CA nor VMSC are successors-in-interest to Ultramar Inc., and, therefore, neither is liable for any claims Plaintiff alleges against Ultramar Inc. (Anderson Decl., Ex. 8, E. Jones Decl. at ¶ 20.)  Furthermore, VRC-CA and VMSC deny that Plaintiff satisfied its obligation to plead successor-in-interest liability in a form from which the Court could construe a legal connection between the party Plaintiff alleges injured it, and the party Plaintiff seeks to hold liable for its alleged injury, as required by California law.  (*See* O'Reilly Decl., Ex. 1, First Amended Complaint at ¶ 25.) |
| 22.      Ultramar Inc. did not merge with or into VMSC. (Anderson Decl., Ex. 8, E. Jones Decl. at ¶ 18) .  With respect to the Exxon Service Station, Valley Gas, Beacon #3519, and Beacon-ARCO #615 sites, Ultramar Inc. has not transferred or assigned any liabilities, obligations or property to VMSC, nor has VMSC assumed or received any liabilities, obligations or property from Ultramar Inc.  (*Id.*) | Denied.  *See* Response to ¶ 21. | Plaintiff refers the Court to its Response to Paragraph 21, but Paragraph 21 does not specifically controvert the material facts set forth in Defendants' Paragraph 22; consequently, Defendants' Paragraph 22 should be deemed admitted.  (*See* Local Rule 56.1(c).)  VRC-CA and VMSC further |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| Ultramar Inc. did not merge with or into VRC-CA. (Anderson Decl., Ex. 8, E. Jones Decl. at ¶ 19.) With respect to the Exxon Service Station, Valley Gas, Beacon #3519, and Beacon-ARCO #615 sites, Ultramar Inc. has not transferred or assigned any liabilities, obligations or property to VRC-CA, nor has VRC-CA assumed or received any liabilities, obligations or property from Ultramar Inc. (*Id.*) Ultramar Inc. continues to exist and conduct business as of the date of March 14, 2013. (Anderson Decl., Ex. 8, E. Jones Decl. at ¶ 20.) Thus, neither VMSC nor VRC-CA are successors-in-interest to Ultramar Inc. | | incorporate Defendants' Reply to Paragraph 21. |
| 23.      Dan Martin testified that Martinoil Company ("Martinoil") built the station at 4594 E. Tulare in approximately 1984 and then turned over the property and business in approximately 1985 to Ultramar (referred to as "Beacon"). (Anderson Decl., Ex. 10, Martin Dep. at 26:11-25, 32:7-12, 48:16-20, 50:14-55:10; Anderson Decl., Ex. 9, Valero Defendants' Responses to Plaintiff City of Fresno's First Set of Interrogatories to Defendants ("Valero's Responses to First Set of Interrogatories"), 11/5/08, Rog No. 3, pp. 7-8.) | Admit. | |
| 24.      Ultramar, Inc. leased and operated the station from 1985-1995. (Anderson Decl., Ex. 9, Valero's Responses to First Set of | Admit. | |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| Interrogatories,  11/5/08, Rog. No. 3, pp. 7-8.) | | |
| 25.      Martinoil sold the property and the business to El Monte Gas Company in approximately 1995. (Anderson Decl., Ex. 10, Martin Dep. at 58:3-59:10; Anderson Decl., Ex. 9, Doyle Dep, at 12:24-13:7, 18:12-22.) | Admit.  The City contends, however, that this fact is irrelevant. | The first sentence of Plaintiff's response admits the facts contained in Defendants' Paragraph 25. Plaintiff's second sentence is one of argument, not fact, and is therefore inappropriate and should be stricken, as it is not supported by any citation to evidence.  (*See* Local Rule 56.1(d).) |
| 26.      El Monte leased the property to Narinder Singh and his wife Kanta, who operated the station with their business partners. (Anderson Decl., Ex. 9, Doyle Dep. at 17:7-18:8; Anderson Decl., Ex. 9, N. Singh Dep. at 23:21-24:2; 31:23-32:11.) | Admit.  The City contends, however, that this fact is irrelevant. | The first sentence of Plaintiff's response admits the facts contained in Defendants' Paragraph 26. Plaintiff's second sentence is one of argument, not fact, and is therefore inappropriate and should be stricken, as it is not supported by any citation to evidence.  (See Local Rule 56.1(d).) |
| 27.      In 1999, El Monte sold the property and the business to Narinder Singh and his partners, who have owned and operated the station ever since.  (Anderson Decl., Ex. 9, Doyle Dep. at 18:12-22, 21:3-24; Anderson Decl., Ex. 9, N. Singh Dep. at 20:18-21:16, 22:18-23:11.) | Admit.  The City contends, however, that this fact is irrelevant. | The first sentence of Plaintiff's response admits the facts contained in Defendants' Paragraph 27. Plaintiff's second sentence is one of argument, not fact, and is therefore inappropriate and should be stricken, as it is not supported by any citation to evidence.  (See Local Rule 56.1(d).) |
| 28.      Neither VMSC nor VRC-CA have ever owned, leased or operated the retail gas station or real estate located at 4594 E. Tulare. (Anderson Decl., Ex. 8, E. Jones | Denied.  *See* Response to ¶ 21. | Plaintiff refers the Court to its Response to Paragraph 21, but Paragraph 21 does not specifically controvert the material facts set forth in Defendants' Paragraph 28; |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| Decl. at ¶ 11.) | | consequently, Defendants' Paragraph 28 should be deemed admitted. (*See* Local Rule 56.1(c).)<br><br>VRC-CA and VMSC further incorporate Defendants' Reply to Paragraph 21. |
| 29.     Ultramar Inc. owned the Valley Gas station until October 29, 1991. (Anderson Decl., Ex. 11, Ahmad Dep. at 20:5-20; 23:12-22). In 1991, an entity known as Petro Group II purchased the station from Ultramar Inc., and later sold the station to a third party. (Anderson Decl., Ex. 11, Ahmad Dep. at 20:5-20; 23:12-22; 41:16-43:3.) | Valero admits that Ultramar owned the station until October 29, 1991. (Defs' Fact. No. 29.) After the site was purchased from Ultramar, Beacon and Ultramar gasoline were delivered to the station. (O'Reilly Decl., Ex. 10, Ahmad Depo., at 139:9-11.) Mr. Imtiaz Ahmad testified there was a brand distribution marketing agreement between Petro Group II and Beacon that prohibited him or Petro Group from buying gasoline from anyone other than Ultramar. (*Id.* at 139:13-25, 140:7-8.) The brand name agreement ceased in 1995. (*Id.* at 140:7-15.) Ultramar failed to upgrade the old single wall steel tank system before transferring the station to the new owners in 1991. (*Id.* at 31:12-32:8.) Mr. Ahmad testified that he received training from Ultramar on how to operate the station when he bought it from them. (*Id.* at 33:18-34;14.) He was only told to | Defendants' Paragraph 29 makes clear that the "Ultramar" Plaintiff's response repeatedly refers to is actually "Ultramar Inc." This issue noted, VRC-CA and VMSC object that allegations/facts concerning Ultramar Inc. are completely irrelevant to the motion brought by VRC-CA and VMSC. Ultramar Inc. is not moving for summary judgment on Plaintiff's nuisance claim, and Plaintiff cannot establish that VRC-CA and/or VMSC have successor liability for the activities of Ultramar Inc. For these reasons, Plaintiff's discussions of facts relating to Ultramar Inc. are irrelevant to the determination of VRC-CA and VMSC's motion.<br><br>VRC-CA and VMSC further incorporate Defendants' Reply to Paragraph 21. |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | utilize kitty litter to clean up spills, and then dump dirty litter and rags into a drum. (*Id*. at 33:25-35:11.)  Mr. Ahmad was aware that MTBE was being added to gasoline, but was never told that it had to be stored or handled differently than gasoline without MTBE.  (*Id*. at 110:1-111:1.)  The City further Incorporates Response to ¶ 21. | |
| 30.       Neither VMSC nor VRC-CA have ever owned, leased or operated the retail gas station or real estate located at 2139 South Elm Avenue.  (Anderson Decl., Ex. 8, E. Jones Decl. at ¶ 9.) | Denied.  *See* Response to ¶ 21. | Plaintiff refers the Court to its Response to Paragraph 21, but Paragraph 21 does not specifically controvert the material facts set forth in Defendants' Paragraph 30; consequently, Defendants' Paragraph 30 should be deemed admitted.  (*See* Local Rule 56.1(c).)<br><br>VRC-CA and VMSC additionally incorporate Defendants' Reply to Paragraph 21, and further assert that neither VRC-CA nor VMSC has ever owned, leased, or operated the retail gas station or real estate located at 2139 South Elm, Fresno, CA.  (Anderson Decl., Ex. 8, E. Jones Decl. at ¶ 9.)  Ultramar Inc. did not merge with or into VRC-CA or VMSC.  (Anderson Decl., Ex. 8, E. Jones Decl. at ¶¶ 18-19.) With respect to the Valley Gas site, Ultramar Inc. has not transferred or assigned any liabilities, |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | | obligations, or property to VRC-CA or VMSC, nor has VRC-CA or VMSC assumed or received any liabilities, obligations, or property from Ultramar Inc.  (Anderson Decl., Ex. 8, E. Jones Decl. at ¶¶ 18-19.)  Ultramar Inc. continues to exist and conduct business as of the date of March 15, 2013. (Anderson Decl., Ex. 8, E. Jones Decl. at ¶ 20.)  Neither VRC-CA nor VMSC are successors-in-interest to Ultramar Inc.  (Anderson Decl., Ex. 8, E. Jones Decl. at ¶ 20.) |
| 31.      The Beacon #3519 station was leased from Irene Armey by Beacon/Ultramar Inc. from March 1, 1971 until October 20, 1999. (Anderson Decl., Ex. 12, Valero's Responses to First Set of Interrogatories, 11/5/08, Rog. No. 3, p. 7; Anderson Decl., Ex. 12, VLO-FRESNO-0010453, Beacon Oil Company Intra-Company Memorandum (Dec. 3, 1971).)  Ultramar Inc. assigned its rights in the lease to Gasamat Oil Corp. of Colorado ("Gasamat") on October 20, 1999, but retained a remediation agreement.  (Anderson Decl., Ex. 12, VLO-FRESNO-0010454, Email from Debbie Dirks to Julie Johns (Jan. 29, 2001).)  Ultramar Inc. sold its assets and improvements at Beacon #3519 to Gasamat at that time, as well.  (Anderson Decl., Ex. 12, VLO-FRESNO-0010455, Ultramar Diamond Shamrock Corp. | Valero concedes that the station was leased by Beacon/Ultramar from March 1, 1971, until October 20, 1999.  (Defs' Fact No. 31.)  After October 20, 1999, Ultramar assigned its rights in the lease to another party, but retained a remediation agreement.  (Defs' Fact No. 31.)  Valero had a retail supply contract with this site, identified as Beacon #4984, from October 20, 1999, to the date of the responses. O'Reilly Decl., Ex. 11, Responses to first Set of Interrogatories, at Response to Interrogatory No. 4.) Valero thus had direct control and ownership over the station during a significant portion of the relevant time period, and | Defendants' Paragraph 31 makes clear that "Ultramar Inc.," and not "Ultramar," assigned its rights in the lease to Gasamat on October 20, 1999.  This issue noted, VRC-CA and VMSC object to the third, fourth, and fifth sentences of Plaintiff's response, including each citation to evidence contained therein, as they are irrelevant and non-responsive to the facts set forth by Defendants. Because Plaintiff's response does not specifically controvert the facts contained in Paragraph 31, it should be deemed an admission.  (*See* Local Rule 56.1(c).)  Subject to, and without |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| Memorandum (March 1, 2000).) | would be directly liable for nuisance, and also had a supply relationship with the station for the rest of the relevant time period.  The City contends, as outlined in ¶ 21 above, that Valero would still have nuisance liability during the time period when Valero had a supply agreement with this station. | waiving, the foregoing, VRC-CA and VMSC deny the third sentence in Plaintiff's response, as neither did business in the State of California prior to March 16, 2000.  (Anderson Decl., Ex. 8, E. Jones Decl. at ¶¶ 4, 6.)  VRC-CA and VMSC also deny Plaintiff's allegations that they "had direct control and ownership over the station during a significant portion of the relevant time period, and would be directly liable for nuisance, and also had a supply relationship with the station for the rest of the relevant time period," and "would still have nuisance liability during the time period when Valero had a supply agreement with this station."  Plaintiff fails to cite to any evidence, admissible or otherwise, in support of these contentions, as required by Local Rules.  (*See* Local Rule 56.1(d).)  Plaintiff's statements are therefore arguments, not facts, and, consequently, are inappropriate and should be stricken.

Nevertheless, VRC-CA and VMSC deny such allegations.  Neither VRC-CA nor VMSC has ever owned, leased, or operated the retail gas station or real estate located at 4591 East |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | | Belmont, Fresno, CA. (Anderson Decl., Ex. 8, E. Jones Decl. at ¶ 12.) Ultramar Inc. did not merge with or into VRC-CA or VMSC.  (Anderson Decl., Ex. 8, E. Jones Decl. at ¶¶ 18-19.)  With respect to the Beacon #3519 site, Ultramar Inc. has not transferred or assigned any liabilities, obligations, or property to VRC-CA or VMSC, nor has VRC-CA or VMSC assumed or received any liabilities, obligations, or property from Ultramar Inc.  (Anderson Decl., Ex. 8, E. Jones Decl. at ¶¶ 18-19.)  Ultramar Inc. continues to exist and conduct business as of the date of March 15, 2013. (Anderson Decl., Ex. 8, E. Jones Decl. at ¶ 20.)  Neither VRC-CA nor VMSC are successors-in-interest to Ultramar Inc.  (Anderson Decl., Ex. 8, E. Jones Decl. at ¶ 20.)  <br><br> VRC-CA and VMSC additionally note that Plaintiff's Paragraph 21 does not, in fact, outline how or why "Valero would still have nuisance liability during the time period when Valero had a supply agreement with this station."  To the extent necessary, Defendants incorporate their Reply to Paragraph 21. |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| 32.      In 2001, Gasamat assigned its interest in the lease and sold its assets and improvements at Beacon #3519 to Nirmal Gill.  (Anderson Decl., Ex. 12, FCDEH-FRESNO-017903, Facsimile from Tim Mullen, Gasamat Oil Corp. to Ted, Fresno County Environmental (Aug. 27, 2002).)  Nirmal Gill and his partner Navdeep "Gary" Singh began operating the ARCO-branded station on January 10, 2002 and have been operating it continually since that time.  (Anderson Decl., Ex. 12, G. Singh Dep. at 9:6-17; 20:21-21:11; 84:9-17).)  Mr. Singh testified that he and Nirmal Gill own the station and equipment at the site, while the physical property is owned by Melvin Armey. (Anderson Decl., Ex. 12, G. Singh Dep. at 9:19-10:1).) | Admit.  The City contends, however, that this fact is irrelevant because Valero continued to have a relationship with the station that continued after the sale. | The first sentence of Plaintiff's response admits the facts contained in Defendants' Paragraph 32. VRC-CA and VMSC object to the remainder of Plaintiff's response, as it is irrelevant and non-responsive to the facts set forth by Defendants. Further, VRC-CA and VMSC object to the second sentence of Plaintiff's response, as it is not "followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  (See Local Rule 56.1(d).)  Plaintiff's statement is one of argument, not fact, and is therefore inappropriate and should be stricken.  (Id.) |
| 33.      Neither VMSC nor VRC-CA have ever owned, leased or operated the retail gas station or real estate located at 4591 E. Belmont Ave. (Anderson Decl., Ex. 8, E. Jones Decl. at ¶ 12.) | Denied.  *See* Response to ¶ 21. | Plaintiff refers the Court to its Response to Paragraph 21, but Paragraph 21 does not specifically controvert the material facts set forth in Defendants' Paragraph 33; consequently, Defendants' Paragraph 33 should be deemed admitted.  (*See* Local Rule 56.1(c).)  VRC-CA and VMSC additionally incorporate Defendants' Reply to Paragraph 21. |
| 34.      The Martinoil Company ("Martinoil") has owned Beacon- | Valero's Separate Statement of Facts admits that on | Plaintiff's response does not specifically controvert the |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| ARCO #615 since the 1980s. (Anderson Decl., Ex. 10, Martin Dep. at 22:22-24:23.)  On November 29, 1984, Martinoil sold and assigned its rights, obligations, and interests under the Franchise Agreement to Beacon, but retained ownership of Beacon-ARCO #615. (Anderson Decl., Ex. 10, Martin Dep. at 40:12-14; 41:20-44:13; Anderson Decl., Ex. 13, MARTIN_FRESNO-0001, Handwritten Notes of Dan Martin (undated).)  Beacon began leasing Beacon-ARCO #615 from Martinoil in or around November 1984. (Anderson Decl., Ex. 13, MARTIN_FRESNO-0001, Handwritten Notes of Dan Martin (undated).) | November 29, 1984, well before the introduction of MTBE into California gasoline, Martinoil, which owned the station franchise, sold and assigned its right, obligations, and interest sunder the Franchise Agreement to Beacon. (Defs' Fact No. 34.)  Valero thus had direct control and ownership over the station during a significant portion of the relevant time period, and would be directly liable for nuisance. | facts in Defendants' Paragraph 34, and, as a result, should be treated as an admission.  (*See* Local Rule 56.1(c).)  Further, VRC-CA and VMSC object to Plaintiff's response, as it is irrelevant and non-responsive to the facts set forth by Defendants.  Subject to, and without waiving, the foregoing, VRC-CA and VMSC deny the second sentence in Plaintiff's response.  Plaintiff fails to cite to any evidence, admissible or otherwise, in support of its contention that "Valero thus had direct control and ownership over the station during a significant portion of the relevant time period, and would be directly liable for nuisance," despite the fact that such evidence is required by the Local Rules. (*See* Local Rule 56.1(d).) Plaintiff's statement is therefore one of argument, not fact, and, consequently, is inappropriate and should be stricken.  Neither VRC-CA nor VMSC has ever owned, leased, or operated the retail gas station or real estate located at 1625 Chestnut Avenue, Fresno, CA.  (Anderson Decl., Ex. 8, E. Jones Decl. at ¶ 10.) Ultramar Inc. did not merge with or into VRC-CA or |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | | VMSC.  (Anderson Decl., Ex. 8, E. Jones Decl. at ¶¶ 18-19.)  With respect to the Beacon-ARCO #615 site, Ultramar Inc. has not transferred or assigned any liabilities, obligations, or property to VRC-CA or VMSC, nor has VRC-CA or VMSC assumed or received any liabilities, obligations, or property from Ultramar Inc. (Anderson Decl., Ex. 8, E. Jones Decl. at ¶¶ 18-19.)  Ultramar Inc. continues to exist and conduct business as of the date of March 15, 2013.  (Anderson Decl., Ex. 8, E. Jones Decl. at ¶ 20.)  Neither VRC-CA nor VMSC are successors-in-interest to Ultramar Inc.  (Anderson Decl., Ex. 8, E. Jones Decl. at ¶ 20.) |
| 35.      Neither VMSC nor VRC-CA have ever owned, leased or operated the retail gas station or real estate located at 1625 Chestnut Ave. (Anderson Decl., Ex. 8, E. Jones Decl. at ¶ 10.) | Denied.  *See* Response to ¶ 21. | Plaintiff refers the Court to its Response to Paragraph 21, but Paragraph 21 does not specifically controvert the material facts set forth in Defendants' Paragraph 35; consequently, Defendants' Paragraph 35 should be deemed admitted.  (*See* Local Rule 56.1(c).)  VRC-CA and VMSC additionally incorporate Defendants' Reply to Paragraph 21. |

| ADDITIONAL MATERIAL FACTS ASSERTED BY PLAINTIFF | DEFENDANTS' RESPONSE AND OBJECTIONS |
|---|---|
| 36.     The City's expert concerning underground storage tanks, Marcel Moreau, has decades of experience concerning this issue, and provided a detailed history of defendant's knowledge concerning the problems of storing and handling MTBE gasoline at service stations.  (O'Reilly Decl., Ex. 9, Expert Report of Marcel Moreau (Nov. 2, 2011) at pp. 1-4 and pp. III-11 to III-25.) | **Objection and Move to Strike:**  Defendants object to and move to strike the expert report of Marcel Moreau as inadmissible hearsay, irrelevant/immaterial, and lacking foundation.<br><br>Defendants further object to the "facts" in ¶ 36 as irrelevant/immaterial, and lacking foundation regarding the stations at issue.  The City's expert's generic opinions about the "problems" of storing and handling MTBE gasoline at service stations have nothing to do with the particular service stations at issue in this case and are an argument in support of a failure to warn claim – not nuisance.  In fact, the City's expert admitted at deposition that he did not review the deposition testimony for any of the station operators at issue until <u>after</u> he had written his expert report.  (Anderson Supp. Decl, Ex. 15, Moreau Depo. at 644:2-15.)  And, the City's expert also testified that he did <u>not</u> have any opinions to offer as to whether any owner/operators at any of the facilities at issue in this case would have changed their behavior had they received an appropriate warning. (*Id.* at 650:13-21, 650:25-651:5.) |
| 37.     California refiners, particularly Chevron's Northern California refinery, started adding MTBE to gasoline in 1986, and continued to utilize MTBE until the early 2000s when it was banned.  (O'Reilly Decl., Ex. 12, May 4, 2000, Blagojevic Decl., *South Tahoe*.) | **Objection and Move to Strike:**  Defendants object to this statement as irrelevant, inadmissible hearsay, and unsupported by the Blagojevic Declaration cited by the City.  The Blagojevic Declaration cited by the City does not indicate purchase of any MTBE by Chevron in 1986.  The Blagojevic Declaration makes no mention of the stations at issue in this case and is therefore irrelevant to any claim of nuisance regarding those stations. |
| 38.     After supervising remediation of MTBE releases at Shell gasoline stations across the country for nearly twenty years, | **Objection and Move to Strike:**  Defendants object to this statement as irrelevant and unsupported by the material cited by the City. |

| ADDITIONAL MATERIAL FACTS ASSERTED BY PLAINTIFF | DEFENDANTS' RESPONSE AND OBJECTIONS |
|---|---|
| Curtis Stanley, and engineer and hydrogeologist at Shell, described MTBE as the "biggest environmental" issue facing United States oil companies.  (O'Reilly Decl., Ex. 13, May 13, 1998, Email from C. Stanley to C. Parkinson; Ex. 14, Stanley Depo. (May 6, 1999) at 5:16-7:5.) | The cited deposition testimony makes no mention of MTBE or any experience "supervising remediation of MTBE releases" and the referenced e-mail also says nothing of these facts.<br><br>Defendants further object to the referenced statement as inadmissible hearsay as to any defendant but Shell.  And, Defendants object that the statement lacks foundation and that Plaintiff has failed to supply evidence the statement was made within the scope of the author's/maker's authority.<br><br>Defendants also object to this statement as irrelevant: The referenced document has nothing to do with any of the stations at issue in this case and is therefore irrelevant to any claim of nuisance regarding those stations.<br><br>Defendants admit that the referenced e-mail says, "MTBE is one of the biggest environmental issues that US oil companies are facing…."  (O'Reilly Decl., Ex. 13, May 13, 1998, Email from C. Stanley to C. Parkinson.)  This e-mail, however, makes no mention of any of the stations at issue in this case and is therefore irrelevant to any claim of nuisance regarding those stations. |
| 39.      In 1981, Ben Thomas of Shell reported to an American Petroleum Institute ("API") committee that "approximately 20 percent of all underground storage tanks leak, leading to the possibility of groundwater contamination.  (O'Reilly Decl., Ex. 15, March 31, 1981, Internal Arco Memo from R.N. Roth to MTBE File; Ex. 16, Thomas Depo. (Nov. 15, 2000) at 89:17-90:9 *South Tahoe*.]) | **Objection and Move to Strike:**  Defendants object that the City has exceeded the limitations imposed by the Court on the number (15) and size (15 pages) of exhibits in opposition to a motion.  *See* Hon. S. Scheindlin Individual Rules and Procedures, p. 5, IV.H. (rev. Jan. 3, 2011).  The City has attached a total of 43 exhibits to its opposition.<br><br>Defendants further object to the referenced statement as inadmissible hearsay as to any defendant but Shell.  And, Defendants object that the statement lacks foundation and that Plaintiff has failed to supply evidence the |

| ADDITIONAL MATERIAL FACTS ASSERTED BY PLAINTIFF | DEFENDANTS' RESPONSE AND OBJECTIONS |
|---|---|
| | statement was made within the scope of the author's/maker's authority.<br><br>Defendants also object to this statement as irrelevant: The referenced document has nothing to do with any of the stations at issue in this case and is therefore irrelevant to any claim of nuisance regarding those stations.<br><br>Defendants admit that the document and testimony cited by the City attributes to Ben Thomas of Shell the following statement: "…approximately 20% of all underground gasoline storage tanks leak, leading to the possibility of groundwater contamination." This statement is irrelevant as it has nothing to do with any of the stations at issue in this case and is therefore irrelevant to any claim of nuisance regarding those stations. |
| 40.    Chevron and Shell were long standing members of the API.  (O'Reilly Decl., Ex. 17, Oct. 17, 2005, Letter from W. Hughes to R. Greenwald at 1; Ex. 18, Oct. 17, 2005, Letter from P. Condron to R. Greenwald at 1.) Ultramar, Valero's wholly owned subsidiary, was a member of API from approximately 1989 to 1993.  (O'Reilly Decl. Ex. 19, Sept. 15, 2005, Letter from T. Renfroe to R. Greenwald.) | **Objection and Move to Strike:**  Defendants object that the City has exceeded the limitations imposed by the Court on the number (15) and size (15 pages) of exhibits in opposition to a motion.  *See* Hon. S. Scheindlin Individual Rules and Procedures, p. 5, IV.H. (rev. Jan. 3, 2011).  The City has attached a total of 43 exhibits to its opposition. Defendants also object to the cited material as irrelevant: The referenced documents have nothing to do with any of the stations at issue in this case and are therefore irrelevant to any claim of nuisance regarding those stations.<br><br>Defendants further object to the referenced statement as inadmissible hearsay as to any defendant but Chevron (as to Exhibit 17), Shell (as to Exhibit 18), and Ultramar (as to Exhibit 19).<br><br>Defendants admit that the letters referenced speak for themselves. |

| ADDITIONAL MATERIAL FACTS ASSERTED BY PLAINTIFF | DEFENDANTS' RESPONSE AND OBJECTIONS |
|---|---|
| 41.     Just a few years later, in 1984, API had already formed an Methyl-tertiary-Butyl Ether Task Force ("MTBE Task Force") which held meetings concerning "emerging issue[s] of MtBE in ground water."  (O'Reilly Decl., Ex. 20, June 18, 1984, Memo from S. Cragg, API, to MTBE Task Force.)  The minutes of a June 1984 meeting state:<br><br>"Some of the task force members indicated that MTBE had been found in ground water near leaking underground storage tanks from their service stations… It appears that the oxygenate components of gasoline, such as MTBE, migrate most rapidly underground…" (*Ibid.*) | **Objection and Move to Strike:**  Defendants object that the City has exceeded the limitations imposed by the Court on the number (15) and size (15 pages) of exhibits in opposition to a motion.  *See* Hon. S. Scheindlin Individual Rules and Procedures, p. 5, IV.H. (rev. Jan. 3, 2011).  The City has attached a total of 43 exhibits to its opposition.<br><br>Defendants further object to the referenced statements as inadmissible hearsay as to any defendant.  And, Defendants object that the statements lack foundation and that Plaintiff has failed to supply evidence the statements were made within the scope of the author's/maker's authority.<br><br>Defendants also object to the cited material as irrelevant: The referenced documents have nothing to do with any of the stations at issue in this case and are therefore irrelevant to any claim of nuisance regarding those stations.<br><br>Defendants admit that the document referenced speaks for itself. |
| 42.     Another memo reporting on the June 1984 API meeting also confirmed that gasoline manufacturers were aware that "MTBE is a possible contaminant of groundwater, especially in association with leaking gasoline storage tanks."  (O'Reilly Decl., Ex. 21, June 14, 1984, Arco Chemical Company Internal Correspondence from B. Hoover to S. Ridlon at 1.) | **Objection and Move to Strike:**  Defendants object that the City has exceeded the limitations imposed by the Court on the number (15) and size (15 pages) of exhibits in opposition to a motion.  *See* Hon. S. Scheindlin Individual Rules and Procedures, p. 5, IV.H. (rev. Jan. 3, 2011).  The City has attached a total of 43 exhibits to its opposition.<br><br>Defendants further object to the referenced statement as inadmissible hearsay as to any defendant.  And, Defendants object that the statement lacks foundation and that Plaintiff has failed to supply evidence the statement was made within the scope of the author's/maker's authority.   Defendants also object to the cited material as irrelevant: The referenced document has nothing to do with any of the |

| ADDITIONAL MATERIAL FACTS ASSERTED BY PLAINTIFF | DEFENDANTS' RESPONSE AND OBJECTIONS |
|---|---|
| | stations at issue in this case and is therefore irrelevant to any claim of nuisance regarding those stations.<br><br>Defendants admit that the document referenced speaks for itself. |
| 43.     In 1986, Dr. Peter Garrett, Marcel Moreau, and Jerry B. Lowrey of the Maine Department of Environmental Protection drafted a paper entitled "Methyl tertiary Butyl Ether as a Ground Water Contaminant" (the "Maine Paper") which was intended to be presented at an API sponsored conference. (O'Reilly Decl., Ex. 22, at Cover and Table of Contents.)  The Maine Paper detailed multiple problems with releases of MTBE gasoline from service stations, including:<br>    (1) MTBE is more soluble in water and thus "spreads both further and faster than the gasoline"<br>    (2) "Groundwater contaminated with MTBE is difficult to remediate,"<br>    (3) MTBE will migrate out beyond gasoline and appear as a "halo" around the gasoline groundwater plume;<br>    (4) relatively small spills of gasoline ("a small driveway spill") can result in "large" plumes of MTBE only groundwater contamination.<br>(*Ibid*..[sic])  The authors of the Maine Paper recommended that either MTBE be removed from gasoline or that several changes be made to USTs before gasoline is stored in them.  (*Id*., at 236-237.) | **Objection and Move to Strike:**  Defendants object that the City has exceeded the limitations imposed by the Court on the number (15) and size (15 pages) of exhibits in opposition to a motion.  *See* Hon. S. Scheindlin Individual Rules and Procedures, p. 5, IV.H. (rev. Jan. 3, 2011).  The City has attached a total of 43 exhibits to its opposition.<br><br>Defendants also object to the cited material as irrelevant: The referenced document has nothing to do with any of the stations at issue in this case and is therefore irrelevant to any claim of nuisance regarding those stations. Defendants further object to the material cited as inadmissible hearsay and lacking foundation.<br><br>Defendants object to the extent the City has paraphrased and not quoted the exact language or wording used in the referenced document and/or selectively quoted or referenced language in the referenced document. Defendants admit that the quoted words appear in the document but deny that the document and the quoted matter is relevant or material to the matters put at issue by Defendants' motion regarding the City's nuisance claim. |
| 44.     Valero admitted that its employees were aware of the Maine Paper at the time of its publication.  (O'Reilly Decl., Ex. 23, Valero Corporate Representative Deposition, Early Knowledge and Taste & Odor at Early Knowledge Issues ¶ 3(a).))  Joel Masticelli, a | **Objection and Move to Strike:**  Defendants object that the City has exceeded the limitations imposed by the Court on the number (15) and size (15 pages) of exhibits in opposition to a motion.  *See* Hon. S. Scheindlin Individual Rules and Procedures, p. 5, IV.H. |

| ADDITIONAL MATERIAL FACTS ASSERTED BY PLAINTIFF | DEFENDANTS' RESPONSE AND OBJECTIONS |
|---|---|
| member of Ultramar's upper management, testified that Ultramar received information on the environmental fate of MTBE gasoline from the API, the WSPA, and NPRA.  (O'Reilly Decl., Ex. 8, Masticelli Depo. (July 26, 2000) at pp. 20-21, *South Tahoe*.) | (rev. Jan. 3, 2011).  The City has attached a total of 43 exhibits to its opposition.<br><br>Defendants further object to the referenced statement as inadmissible hearsay as to any defendant but Valero (as to O'Reilly Exhibit 23) or Ultramar (as to O'Reilly Exhibit 8).<br><br>Defendants also object to the cited material as irrelevant: The referenced document and testimony have nothing to do with any of the stations at issue in this case and are therefore irrelevant to any claim of nuisance regarding those stations.<br><br>Defendants deny that the cited material supports the City's claim that "Valero admitted that its employees were aware of the Maine Paper at the time of its publication."  (*See* O'Reilly Decl., Ex. 23, Valero Corporate Representative Deposition, Early Knowledge and Taste & Odor at Early Knowledge Issues ¶ 3(a).))  Defendants also deny that the referenced deposition testimony mentions MTBE.  (*See* O'Reilly Decl., Ex. 8, Masticelli Depo. (July 26, 2000) at pp. 20-21, *South Tahoe*.) |
| 45.      In June 1986, in a memo entitled "Marketing Environmental Concerns Regarding the Use of MTBE in MOGAS, D.W. Callahan, a Chevron employee, also noted that MTBE had "several disturbing properties."  (O'Reilly Decl., Ex. 24, June 11, 1986, Memorandum, from O.T. Buffalow, San Francisco, CA, to D.W. Callahan, re Marketing Environmental Concerning Regarding the use of MTBE in MOGAS at 1.)  These "disturbing" properties included the high solubility and mobility of MTBE as compared to the regular components of gasoline.  (*Ibid*.)  Mr. Callahan specifically warned that "MTBE utilization could increase the costs to clean up leaks at service stations…(*Ibid*.) | **Objection and Move to Strike:**  Defendants object that the City has exceeded the limitations imposed by the Court on the number (15) and size (15 pages) of exhibits in opposition to a motion.  *See* Hon. S. Scheindlin Individual Rules and Procedures, p. 5, IV.H. (rev. Jan. 3, 2011).  The City has attached a total of 43 exhibits to its opposition.<br><br>Defendants further object to the referenced statement as inadmissible hearsay as to any defendant but Chevron.  And, Defendants object that the statement lacks foundation and that Plaintiff has failed to supply evidence the statement was made within the scope of the |

| ADDITIONAL MATERIAL FACTS ASSERTED BY PLAINTIFF | DEFENDANTS' RESPONSE AND OBJECTIONS |
|---|---|
| | author's/maker's authority.<br><br>Defendants also object to the cited material as irrelevant: The referenced document has nothing to do with any of the stations at issue in this case and is therefore irrelevant to any claim of nuisance regarding those stations.<br><br>Defendants object to the extent the City has paraphrased and not quoted the exact language or wording used in the referenced document and/or selectively quoted or referenced language in the referenced document. Defendants admit that the quoted words appear in the document but deny that the document and the quoted matter is relevant or material to the matters put at issue by Defendants' motion regarding the City's nuisance claim. |
| 46.       In December 1986, Chevron personnel circulated an article published in a oil industry trade publication reporting on significant MTBE groundwater contamination problems, highlighting, in particular, the Maine Paper and its call for changes to USTs at gasoline stations.  (O'Reilly Decl., Ex. 33, Dec. 30, 1986, Memorandum re MTBE.]) | **Objection and Move to Strike:**  Defendants object that the City has exceeded the limitations imposed by the Court on the number (15) and size (15 pages) of exhibits in opposition to a motion.  *See* Hon. S. Scheindlin Individual Rules and Procedures, p. 5, IV.H. (rev. Jan. 3, 2011).  The City has attached a total of 43 exhibits to its opposition.<br><br>Defendants further object to the referenced documents as inadmissible hearsay.<br><br>Defendants also object to the cited material as irrelevant: The referenced documents have nothing to do with any of the stations at issue in this case and are therefore irrelevant to any claim of nuisance regarding those stations.<br><br>Defendants object to the extent the City has paraphrased and not quoted the exact language or wording used in the referenced document and/or selectively quoted or referenced language in the referenced document. Defendants admit that the documents speak for themselves, but deny that the documents are |

| ADDITIONAL MATERIAL FACTS ASSERTED BY PLAINTIFF | DEFENDANTS' RESPONSE AND OBJECTIONS |
|---|---|
|  | relevant or material to the matters put at issue by Defendants' motion regarding the City's nuisance claim. |
| 47.    At the time Ultramar commenced distributing MTBE gasoline to its service stations in California, approximately 30-40 percent of its underground storage tanks had not yet been upgraded.  (O'Reilly Decl., Ex. 8, Masticelli Depo. (July 26, 2000) at pp. 40:9-25, 41:1-23, *South Tahoe*.) | **Objection and Move to Strike:**  Defendants object to the cited material as irrelevant: The referenced documents have nothing to do with any of the stations at issue in this case and are therefore irrelevant to any claim of nuisance regarding those stations.<br><br>Defendants further object to the referenced statements as inadmissible hearsay as to any defendant but Ultramar.  And, Defendants object that the statements lack foundation.<br><br>Denied.  The City has misquoted and/or mischaracterized the testimony.  The deponent testified that "…somewhere in the range of…" "…less than 30 percent but more than 25 percent" of Ultramar's retail stations had not yet had their underground storage systems upgraded.  (O'Reilly Decl., Ex. 8, Masticelli Depo. (July 26, 2000) at pp. 40:9-25, 41:1-23, *South Tahoe*.) |
| 48.    Ultramar's June 30, 1994 Material Safety Data Sheet ("MSDS") regarding MTBE gasoline, for example, states as follows:<br>    (1) under release measures, it contains no warnings regarding the unique capabilities of MTBE to contaminate a far greater amount than non-MTBE gasoline,<br>    (2) it recommends using water to be sprayed on spills to reduce vapors which would cause the MTBE gasoline residue to be washed into the ground or adjacent sewers,<br>    (3) for larger spills it merely recommends diking the spill "for later disposal",<br>    (4) contains no requirements for special handling of MTBE gasoline (section 7),<br>    (5) under physical and chemical properties, it states that the odor threshold is .25 parts per million, when in fact odors associated with | **Objection and Move to Strike:**  Defendants object that the City has exceeded the limitations imposed by the Court on the number (15) and size (15 pages) of exhibits in opposition to a motion.  *See* Hon. S. Scheindlin Individual Rules and Procedures, p. 5, IV.H. (rev. Jan. 3, 2011).  The City has attached a total of 43 exhibits to its opposition.<br><br>Defendants further object to the referenced statements as inadmissible hearsay as to any defendant but Ultramar.<br><br>Defendants also object to the cited material as irrelevant: The referenced documents have nothing to do with any of the stations at issue in this case and are therefore irrelevant to any claim of nuisance regarding those stations. |

| ADDITIONAL MATERIAL FACTS ASSERTED BY PLAINTIFF | DEFENDANTS' RESPONSE AND OBJECTIONS |
|---|---|
| MTBE in drinking water have been detected as low as 4 to 5 parts per <u>billion</u>.  Additionally, Ultramar's Material Safety Data Sheets state that there is "no data available" regarding  the "degradability" of MTBE.  In fact, there is substantial evidence that MTBE is very resistant to biodegradation.  (O'Reilly Decl., Ex. 39, June 30, 1994 Ultramar Material Safety Data Sheet.) | Defendants' further object that the cited material is not attached to the O'Reilly Declaration as Exhibit "39" and appears to be attached as Exhibit "38."<br><br>Defendants object to the City's assertions in  ¶ 48 and characterizations of the document – a Material Safety Data Sheet – as lacking foundation, speculative, assuming facts, and misquoting and/or mischaracterizing the substance, content and purpose of the referenced document.<br><br>Denied.  The cited document does not support the assertions made in ¶ 48 challenging its substance and content.  Defendants admit that the document speaks for itself, but deny that the document is relevant or material to the matters put at issue by Defendants' motion regarding the City's nuisance claim. |
| 49.      When Ultramar first introduced MTBE into gasoline in California, it made no effort to provide a warning with the gasoline unless it was ordered to do so by the Government.  (O'Reilly Decl., Ex. 8, Masticelli Depo. (July 26, 2000) at pp. 51:22-25, 52:1-11, *South Tahoe*.].) | **Objection and Move to Strike:**  Defendants object to the cited material as irrelevant: The referenced documents have nothing to do with any of the stations at issue in this case and are therefore irrelevant to any claim of nuisance regarding those stations.<br><br>Defendants further object to the referenced statements as inadmissible hearsay as to any defendant but Ultramar.  And, Defendants object that the statements lack foundation.<br><br>Denied.  The City has misquoted and/or mischaracterized the testimony.  The deponent testified that "…somewhere in the range of…" "…less than 30 percent but more than 25 percent" of Ultramar's retail stations had not yet had their underground storage systems upgraded.  (O'Reilly Decl., Ex. 8, Masticelli Depo. (July 26, 2000) at pp. 40:9-25, 41:1-23, *South Tahoe*.) |

| ADDITIONAL MATERIAL FACTS ASSERTED BY PLAINTIFF | DEFENDANTS' RESPONSE AND OBJECTIONS |
|---|---|
| 50.      In 1991, Chevron recognized that the introduction of MTBE into gasoline in California would substantially change the consequences of a gasoline spill or leak. (O'Reilly Decl., Ex. 4, Aug. 12, 1991, Memorandum, TIP Letter #237, MTBE Effects.)   The internal memo warns that while non-MTBE gasoline plumes are "relatively easy" to address, "MTBE on the other hand is different situation."  (*Id.* at 1.)  The memo warns that MTBE gasoline releases will result in "larger" plumes of contamination that "will migrate" faster.  (*Id.*)  Specifically, the memo warns Chevron management that "[w]hen MTBE gets into the water then the trouble really starts."  (*Id.*)  The memo concludes that: "Our highest degree of concern right now is with service stations without spill containment manholes that are, or will be, served by racks that are blending MTBE.  The combination of MTBE gasoline being delivered, the lack of spill containment manholes, and shallow groundwater could be tremendously expensive for us in the long run.  As they say, an ounce of prevention is worth a pound of cure, and in this case prevention is certainly prudent." (*Id.* at 2.) | **Objection and Move to Strike:**  Defendants object to the cited material as irrelevant: The referenced document has nothing to do with any of the stations at issue in this case and are therefore irrelevant to any claim of nuisance regarding those stations.  Defendants further object to the referenced statements as inadmissible hearsay as to any defendant but Chevron.  And, Defendants object that the statements lack foundation and that Plaintiff has failed to supply evidence the statements were made within the scope of the author's/maker's authority.  Defendants further object to the extent the City has paraphrased and not quoted the exact language or wording used in the referenced document and/or misquoted the referenced document.  The document does not say that "non-MTBE gasoline plumes are 'relatively easy' to address."  *See* O'Reilly Decl., Ex. 4, p. 1 ("…benzene is relatively easy to remove by carbon adsorption or air stripping…").  The document does not say that "MTBE gasoline releases will result in 'larger' plumes of contamination that will 'migrate' faster," it says: "The dissolved plume that results from a leak into groundwater is directly related to the solubility in water of the chemical. The higher the solubility the larger the plume and the faster it will migrate."  (*Id.*)  Defendants admit that the referenced document speaks for itself, but denies that the document is relevant or material to any of the stations at issue or supports a nuisance claim against any of the Defendants. |
| 51.      Another 1991 Memorandum by Chevron notes multiple additional safety precautions and amended handling instruction need to be provided when MTBE gasoline is being stored and distributed, including at | **Objection and Move to Strike:**  Defendants object that the City has exceeded the limitations imposed by the Court on the number (15) and size (15 pages) of exhibits in opposition to a motion.  *See* Hon. S. Scheindlin |

| ADDITIONAL MATERIAL FACTS ASSERTED BY PLAINTIFF | DEFENDANTS' RESPONSE AND OBJECTIONS |
|---|---|
| service stations.  The additional precautions and handling instructions identified by Chevron included: (1) "Spills or leaks of MTBE must be contained and prevented from contacting the ground or entering the waste water drainage system," (2) "Tanks containing MTBE should have double bottoms and leak detections systems," (3) "Provide proper facilities for shutdowns and tank cleaning to prevent any MTBE from being spilled or washing into the drainage system."  (O'Reilly Decl., Ex. 34, March 26, 1991, Memorandum, Chemical Entry Review for MTBE.) | Individual Rules and Procedures, p. 5, IV.H. (rev. Jan. 3, 2011).  The City has attached a total of 43 exhibits to its opposition.  Defendants further object to the referenced statements as inadmissible hearsay as to any defendant but Chevron.  And, Defendants object that the statements lack foundation and that Plaintiff has failed to supply evidence the statements were made within the scope of the author's/maker's authority.  Defendants also object to the cited material as irrelevant: The referenced documents have nothing to do with any of the stations at issue in this case and are therefore irrelevant to any claim of nuisance regarding those stations. Plus, the document addresses the handling of pure MTBE at refineries, not gasoline containing MTBE at services stations, and for this reason too is irrelevant.  Defendants further object to the extent the City has paraphrased and not quoted the exact language or wording used in the referenced document and/or misquoted the referenced document.  This document does not say that it, "…notes multiple additional safety precautions and amended handling instruction need to be provided when MTBE gasoline is being stored and distributed, including at service stations" as advanced by Plaintiff in Paragraph 51. Defendants admit that the referenced document speaks for itself, but denies that the document is relevant or material to any of the stations at issue or supports a nuisance claim against any of the Defendants. |
| 52.    In 1993, in discussing the increased problem of MTBE groundwater contamination from service station releases, Curtis Stanley wrote to one of his colleagues: "We need to convince management to implement dual containment NOW!"  (O'Reilly Decl., Ex. 25, | **Objection and Move to Strike:**  Defendants object that the City has exceeded the limitations imposed by the Court on the number (15) and size (15 pages) of exhibits in opposition to a motion.  *See* Hon. S. Scheindlin Individual Rules and Procedures, p. 5, IV.H. |

| ADDITIONAL MATERIAL FACTS ASSERTED BY PLAINTIFF | DEFENDANTS' RESPONSE AND OBJECTIONS |
|---|---|
| July 14, 1993, Email from C. Stanley to D. McGull [emphasis in original].) | (rev. Jan. 3, 2011).  The City has attached a total of 43 exhibits to its opposition.<br><br>Defendants further object to the referenced statement as inadmissible hearsay as to any defendant but Shell.  And, Defendants object that the statement lacks foundation and that Plaintiff has failed to supply evidence the statement was made within the scope of the author's/maker's authority.<br><br>Defendants also object to the cited material as irrelevant: The referenced documents have nothing to do with any of the stations at issue in this case and are therefore irrelevant to any claim of nuisance regarding those stations. Moreover, none of the stations at issue in this motion sold Shell-branded gasoline during the relevant time frame.  *See* Response to ¶ 11.<br><br>Defendants further object to the extent the City has paraphrased the referenced document or relies upon it for assertions unsupported by the document alone. Defendants admit that the referenced document speaks for itself, but denies that the document is relevant or material to any of the stations at issue or supports a nuisance claim against any of the Defendants. |
| 53.      In the mid-1990's, Chevron also acknowledged that MTBE was driving factor to implement upgrades to USTs and improve instructions on storage and handling practices at service stations:<br>        "The USGS report points out that gasoline blended with MTBE may pose a greater risk to drinking water than non-oxygenated gasoline…These concerns are not new, as Marketing raised the same issue <u>ten years ago</u> in connection with the Tank Integrity Program…<br>        Marketing believes that MTBE in groundwater issue is just one more additional justification for the large | **Objection and Move to Strike:**  Defendants object that the City has exceeded the limitations imposed by the Court on the number (15) and size (15 pages) of exhibits in opposition to a motion.  *See* Hon. S. Scheindlin Individual Rules and Procedures, p. 5, IV.H. (rev. Jan. 3, 2011).  The City has attached a total of 43 exhibits to its opposition.<br><br>Defendants further object to the referenced statements as inadmissible hearsay as to any defendant but Chevron.  And, Defendants object that the statements lack foundation and that Plaintiff has failed to supply evidence the statements were made within the scope of the |

| ADDITIONAL MATERIAL FACTS ASSERTED BY PLAINTIFF | DEFENDANTS' RESPONSE AND OBJECTIONS |
|---|---|
| Marketing capital investments in avoid terminal and service station leaks and spills."<br><br>(O'Reilly Decl., Ex. 35, April 27, 1995, Memo re MTBE in Ground Water Issue.) | author's/maker's authority.<br><br>Defendants also object to the cited material as irrelevant: The referenced documents have nothing to do with any of the stations at issue in this case and are therefore irrelevant to any claim of nuisance regarding those stations.<br><br>Defendants further object to the extent the City has paraphrased and not quoted the exact language or wording used in the referenced document and/or misquoted the referenced document.  This document does not discuss "upgrades to USTs" or "improve[d] instructions on storage and handling practices at service stations" as advanced by the Plaintiff in Paragraph 53.  Also, the City's selective quotes omits key points made in the document and takes language in the document out of context.<br><br>Defendants admit that the referenced document speaks for itself, but denies that the document is relevant or material to any of the stations at issue or supports a nuisance claim against any of the Defendants. |
| 54.     In the later 1990's, Shell's environmental personnel were also looking at "MTBE Contamination" and "MTBE in Groundwater" issues.  Curtis Stanley, one of Shell's key environmental personnel, concluded that, based on "research…extremely small releases can cause groundwater problems."  (O'Reilly Decl., Ex. 26, May 14, 1998, Email from C. Stanley to K. Bell, et al.) | **Objection and Move to Strike:**  Defendants object that the City has exceeded the limitations imposed by the Court on the number (15) and size (15 pages) of exhibits in opposition to a motion.  *See* Hon. S. Scheindlin Individual Rules and Procedures, p. 5, IV.H. (rev. Jan. 3, 2011).  The City has attached a total of 43 exhibits to its opposition.<br><br>Defendants further object to the referenced statements as inadmissible hearsay as to any defendant but Shell.  And, Defendants object that the statements lack foundation and that Plaintiff has failed to supply evidence the statements were made within the scope of the author's/maker's authority. |

| ADDITIONAL MATERIAL FACTS ASSERTED BY PLAINTIFF | DEFENDANTS' RESPONSE AND OBJECTIONS |
|---|---|
| | Defendants also object to the cited material as irrelevant: The referenced documents have nothing to do with any of the stations at issue in this case and are therefore irrelevant to any claim of nuisance regarding those stations. Moreover, none of the stations at issue in this motion sold Shell-branded gasoline during the relevant time frame.  *See* Response to ¶ 11.<br><br>Defendants further object to the extent the City has paraphrased and not quoted the exact language or wording used in the referenced document and/or misquoted the referenced document.  This document does not say "MTBE in Groundwater" issues as advanced by the Plaintiff in Paragraph 54.  Also, the City's selective quotes omits key points made in the document and takes language in the document out of context.<br><br>Defendants admit that the referenced document speaks for itself, but denies that the document is relevant or material to any of the stations at issue or supports a nuisance claim against any of the Defendants. |
| 55.      Stanley later advised that **"[v]ery small releases** of MTBE (even small overfills seeping into cracks in the pavement) have the potential to adversely impact groundwater." (O'Reilly Decl., Ex. 27, Nov. 3, 1998, Email from C. Stanley to J. Pedley.)  Mr. Stanley further stated that "[m]y professional opinion is that MTBE…should not be used at all in areas where groundwater is a potential drinking water supply."  (*Id.*) | **Objection and Move to Strike:**  Defendants object that the City has exceeded the limitations imposed by the Court on the number (15) and size (15 pages) of exhibits in opposition to a motion.  *See* Hon. S. Scheindlin Individual Rules and Procedures, p. 5, IV.H. (rev. Jan. 3, 2011).  The City has attached a total of 43 exhibits to its opposition.<br><br>Defendants further object to the referenced statements as inadmissible hearsay as to any defendant but Shell.  And, Defendants object that the statements lack foundation and that Plaintiff has failed to supply evidence the statements were made within the scope of the |

| ADDITIONAL MATERIAL FACTS ASSERTED BY PLAINTIFF | DEFENDANTS' RESPONSE AND OBJECTIONS |
|---|---|
| | author's/maker's authority.<br><br>Defendants also object to the cited material as irrelevant: The referenced documents have nothing to do with any of the stations at issue in this case and are therefore irrelevant to any claim of nuisance regarding those stations. Moreover, none of the stations at issue in this motion sold Shell-branded gasoline during the relevant time frame.  *See* Response to ¶ 11.<br><br>Defendants further object to the extent the City has selectively quoted the document and taken language in the document out of context.<br><br>Defendants admit that the referenced document speaks for itself, but denies that the document is relevant or material to any of the stations at issue or supports a nuisance claim against any of the Defendants. |
| 56.      In the late 1990's, Exxon undertook a "study" to identify sources of potential releases from gasoline stations "because MTBE contamination is increasingly being found in surface and ground water supply systems." (O'Reilly Decl., Ex. 28, March 30, 1999, MTBE Release Source Identification at Marketing Sites, at 2.])  The study noted that "[t]he presence of MTBE found in surface, ground and drinking waters has been increasing [and]…[t]here are several reasons why increased MTBE presence can be concern."  (*Id* at 2.)  Exxon's study specifically concluded that "[s]mall leaks of gasoline (**1 teaspoon**) can translate into MTBE ground water concentrations above the taste and odor detectable threshold levels."  (*Id*. [emphasis added].)  In fact, Exxon study include a graphic representation of the potential impart of "small releases" of MTBE on groundwater. (*Id*. at Figure I-1: Impact of Small Releases.) | **Objection and Move to Strike:**  Defendants object that the City has exceeded the limitations imposed by the Court on the number (15) and size (15 pages) of exhibits in opposition to a motion.  *See* Hon. S. Scheindlin Individual Rules and Procedures, p. 5, IV.H. (rev. Jan. 3, 2011).  The City has attached a total of 43 exhibits to its opposition.<br><br>Defendants further object to the referenced statements as inadmissible hearsay as to any defendant but Exxon.  And, Defendants object that the statements lack foundation and that Plaintiff has failed to supply evidence the statements were made within the scope of the author's/maker's authority.<br><br>Defendants also object to the cited material as irrelevant: The referenced documents have nothing to do with any of the stations at issue in this case and are therefore irrelevant to any claim of nuisance regarding those stations. Moreover, no Exxon station is at issue in this |

| ADDITIONAL MATERIAL FACTS ASSERTED BY PLAINTIFF | DEFENDANTS' RESPONSE AND OBJECTIONS |
|---|---|
| | motion and Exxon is not a moving party for the purposes of this motion. For these reasons, too, the materials cited and "facts" alleged are irrelevant and immaterial.<br><br>Defendants further object to the extent the City has selectively quoted the document, taken language in the document out of context, and paraphrases the document. This document does not say, as Plaintiff advances, that, "Exxon undertook a 'study' to identify sources of potential releases from gasoline stations 'because MTBE contamination is increasingly being found in surface and ground water supply systems.'" It indicates a study was requested and it states that, "Interest in identifying these potential sources is important to EUSA, as well as most other U.S. petroleum marketing companies, because MTBE contamination is increasingly being found in surface and ground waters near gasoline service stations…." (O'Reilly Decl., Ex. 28, March 30, 1999, MTBE Release Source Identification at Marketing Sites, at 2.])<br><br>Defendants admit that the referenced document speaks for itself, but denies that the document is relevant or material to any of the stations at issue or supports a nuisance claim against any of the Defendants bringing this motion. Exxon is not a moving party for the purposes of this motion and, therefore, this alleged "fact" is irrelevant and immaterial. |
| 57. Similarly, in the late 1990's, Curtis Stanley of Shell also pointed out that "[v]ery small releases of MTBE…have potential to adversely impact groundwater." (O'Reilly Decl., Ex. 27, Nov. 3, 1998, Email from C. Stanley to J. Pedley at ¶ 1.]) Mr. Stanley further candidly admitted that MTBE gasoline should not be sold on an indiscriminate basis | **Objection and Move to Strike:** Defendants object that the City has exceeded the limitations imposed by the Court on the number (15) and size (15 pages) of exhibits in opposition to a motion. See Hon. S. Scheindlin Individual Rules and Procedures, p. 5, IV.H. (rev. Jan. 3, 2011). The City has attached a |

| ADDITIONAL MATERIAL FACTS ASSERTED BY PLAINTIFF | DEFENDANTS' RESPONSE AND OBJECTIONS |
|---|---|
| to gasoline stations where there is inadequate protection from spills, leaks and releases:<br><br>My professional opinion is MTBE and similar oxygenate should not be used at all in areas where groundwater is a potential drinking water supply.  If it is used, engineering design and site operations (including act [sic] of subsurface monitoring) should be carefully developed to minimize the potential for release.<br>(*Ibid.*) | total of 43 exhibits to its opposition.<br><br>Defendants further object to the referenced statements as inadmissible hearsay as to any defendant but Shell.  And, Defendants object that the statements lack foundation and that Plaintiff has failed to supply evidence the statements were made within the scope of the author's/maker's authority.<br><br>Defendants also object to the cited material as irrelevant: The referenced documents have nothing to do with any of the stations at issue in this case and are therefore irrelevant to any claim of nuisance regarding those stations. Moreover, none of the stations at issue in this motion sold Shell-branded gasoline during the relevant time frame.  *See* Response to ¶ 11.<br><br>Defendants further object to the extent the City has selectively quoted the document, taken language in the document out of context, and paraphrases the document.  This document does *not* include an admission by Mr. Stanley, as Plaintiff advances, "…that that MTBE gasoline should not be sold on an indiscriminate basis to gasoline stations where there is inadequate gasoline from spills, leaks and releases."<br><br>Defendants admit that the referenced document speaks for itself, but denies that the document is relevant or material to any of the stations at issue or supports a nuisance claim against any of the Defendants. |
| 58.      In 1999, Chevron's personnel put together a "White Paper" on MTBE intended to address questions about stricter regulation of underground storage tank.  (O'Reilly Decl., Ex. 43, Solving Problems from MTBE contamination- It's Not Just Regulating Underground Tanks.)  Chevron's White Paper specifically observed that [i]t is because of the differences in physical and chemical properties | **Objection and Move to Strike:**  Defendants object that the City has exceeded the limitations imposed by the Court on the number (15) and size (15 pages) of exhibits in opposition to a motion.  *See* Hon. S. Scheindlin Individual Rules and Procedures, p. 5, IV.H. (rev. Jan. 3, 2011).  The City has attached a total of 43 exhibits to its opposition. |

| ADDITIONAL MATERIAL FACTS ASSERTED BY PLAINTIFF | DEFENDANTS' RESPONSE AND OBJECTIONS |
|---|---|
| of MTBE that it is more likely to reach groundwater [at service stations], as a result of incidental spills, overfills and gasoline deliveries, even without underground storage tank leaks."  (*Id.* At 2 [emphasis in original].)  Chevron thus also recognized that even small "incidental" spills and releases, caused by individual handling gasoline at the station, had the capacity to reach and contaminate groundwater.  More importantly, these types of leaks are only preventable through appropriate education and instruction of the individuals handling the gasoline. | Defendants further object to the referenced statements as inadmissible hearsay as to any defendant but Chevron.  And, Defendants object that the statements lack foundation and that Plaintiff has failed to supply evidence the statements were made within the scope of the author's/maker's authority.<br><br>Defendants also object to the cited material as irrelevant: The referenced documents have nothing to do with any of the stations at issue in this case and are therefore irrelevant to any claim of nuisance regarding those stations.<br><br>Defendants further object to the extent the City has selectively quoted the document, taken language in the document out of context, paraphrased the document, and attributed content to the document not reflected in the document.  This document does *not* say that the document was "indended to address questions about stricter regulation of underground storage tank" as Plaintiff advances.  And, this document does not say, as Plaintiff advances: "…that even small 'incidental' spills and releases, caused by individual handling gasoline at the station, had the capacity to reach and contaminate groundwater.  More importantly, these types of leaks are only preventable through appropriate education and instruction of the individuals handling the gasoline."  Plaintiffs' representations regarding the document are inaccurate and incomplete.<br><br>Defendants admit that the referenced document speaks for itself, but denies that the document is relevant or material to any of the stations at issue or supports a nuisance claim against any of the Defendants. |
| 59.      In 1999, Curtis Stanley also observed that MTBE releases capable of causing groundwater contamination arose not from the | **Objection and Move to Strike:**  Defendants object that the City has exceeded the limitations imposed by the Court on the |

| ADDITIONAL MATERIAL FACTS ASSERTED BY PLAINTIFF | DEFENDANTS' RESPONSE AND OBJECTIONS |
|---|---|
| USTs themselves, but from improper handling practices at gasoline stations by owners, operators, and jobbers:<br><br>"You may, however, want to carefully consider what you say when the new tank upgrades are our first line of defense. While this is very true and the size of leaks has decreased substantially over the years, we are still finding MTBE at sites that have been upgraded.  The presence of MTBE may not be due to a leak but could also be due to operational and construction factors."<br><br>(O'Reilly Decl., Ex. 29, Feb. 2, 1999, Email from C. Stanley to F. Benton].) | number (15) and size (15 pages) of exhibits in opposition to a motion.  *See* Hon. S. Scheindlin Individual Rules and Procedures, p. 5, IV.H. (rev. Jan. 3, 2011).  The City has attached a total of 43 exhibits to its opposition.<br><br>Defendants further object to the referenced statements as inadmissible hearsay as to any defendant but Shell.  And, Defendants object that the statements lack foundation and that Plaintiff has failed to supply evidence the statements were made within the scope of the author's/maker's authority.<br><br>Defendants also object to the cited material as irrelevant: The referenced documents have nothing to do with any of the stations at issue in this case and are therefore irrelevant to any claim of nuisance regarding those stations. Moreover, none of the stations at issue in this motion sold Shell-branded gasoline during the relevant time frame.  *See* Response to ¶ 11.<br><br>Defendants further object to the extent the City has selectively quoted the document, taken language in the document out of context, paraphrased the document, and attributed content to the document not reflected in the document.  This document does *not* include an "observation" by Curtis Stanley that, "MTBE releases capable of causing groundwater contamination arose not from the USTs themselves, but from improper handling practices at gasoline stations by owners, operators, and jobbers…"<br><br>Defendants admit that the referenced document speaks for itself, but denies that the document is relevant or material to any of the stations at issue or supports a nuisance claim against any of the Defendants. |

| ADDITIONAL MATERIAL FACTS ASSERTED BY PLAINTIFF | DEFENDANTS' RESPONSE AND OBJECTIONS |
|---|---|
| 60.      Shell's engineering coordinator, Glen Marshall, echoed the caution that releases of MTBE gasoline at service stations were dependent on improved and alternative instructions as well as upgrades of the entire UST system.  In 1998, Mr. Marshall warned that the "Achilles Heel" of [UST] systems has always been the 'Bubba-factor'…the best intentions of hardware manufacturer and designers being ultimately defeated by poor installation and maintenance practices." (O'Reilly Decl., Ex. 37, May 29, 1998, Email from G. Marshall to C. Stanley.)  The maintenance practices Mr. Marshall is referring to are clearly the maintenance practices of service station owners and operators.  A year later, Mr. Marshall continued to advised [sic] that "[u]pgrades addressed the inadvertent spills and releases, no [sic] root causes of tank of line leaks." (O'Reilly Decl., Ex. 42, March 12, 1999, Email from G. Marshall to c. Stanley.) | **Objection and Move to Strike:**  Defendants object that the City has exceeded the limitations imposed by the Court on the number (15) and size (15 pages) of exhibits in opposition to a motion.  *See* Hon. S. Scheindlin Individual Rules and Procedures, p. 5, IV.H. (rev. Jan. 3, 2011).  The City has attached a total of 43 exhibits to its opposition. |
| | Defendants further object to the referenced statements as inadmissible hearsay as to any defendant but Shell.  And, Defendants object that the statements lack foundation and that Plaintiff has failed to supply evidence the statements were made within the scope of the author's/maker's authority. |
| | Defendants also object to the cited material as irrelevant: The referenced documents have nothing to do with any of the stations at issue in this case and are therefore irrelevant to any claim of nuisance regarding those stations.  Moreover, none of the stations at issue in this motion sold Shell-branded gasoline during the relevant time frame.  *See* Response to ¶ 11. |
| | Defendants further object to the extent the City has selectively quoted the documents, taken language in the documents out of context, paraphrased the documents, and attributed content to the documents not reflected in the documents.  The 1998 e-mail does *not* include a statement by Glen Marshall "…that releases of MTBE gasoline at service stations were dependent on improved and alternative instructions as well as upgrades of the entire UST system."  Further, Plaintiff provides no support for its statement, "The maintenance practices Mr. Marshall is referring to are clearly the maintenance practices of service station owners and operators."  The 1999 e-mail is misquoted and does *not* support Plaintiff's claims regarding "maintenance practices of service station owners and |

| ADDITIONAL MATERIAL FACTS ASSERTED BY PLAINTIFF | DEFENDANTS' RESPONSE AND OBJECTIONS |
|---|---|
| | operators." Defendants admit that the referenced document speaks for itself, but denies that the document is relevant or material to any of the stations at issue or supports a nuisance claim against any of the Defendants. |
| 61. The City's expert on underground storage tanks ("USTs"), Marcel Moreau, noted that defendants upgraded their gasoline storage systems, including upgrading from bare steel USTs to fiberglass, at their own gasoline stations in an effort to address the increased risk posed by MTBE. (O'Reilly Decl., Ex. 30, Expert Rebuttal Report of Marcel Moreau (March 5, 2012) at 11 and fn 35.]) Defendants were, in fact, aware of numerous upgrades to USTs, safety devices, warning systems, and alternative and improved instructions to service station owners and operators as well as jobbers who delivered gasoline, that were necessary to prevent releases of MTBE gasoline which would contaminate groundwater in Fresno. (*Ibid.*) | **Objection and Move to Strike:** Defendants object that the City has exceeded the limitations imposed by the Court on the number (15) and size (15 pages) of exhibits in opposition to a motion. *See* Hon. S. Scheindlin Individual Rules and Procedures, p. 5, IV.H. (rev. Jan. 3, 2011). The City has attached a total of 43 exhibits to its opposition. Defendants further object to and move to strike the rebuttal report of Marcel Moreau as inadmissible hearsay, irrelevant/immaterial, and lacking foundation. Mr. Moreau's general references to USTs are irrelevant to the nuisance claims makes in this case. Moreover, the cited portion of Mr. Moreau's report does not state or support Plaintiff's assertion that, "Defendants were, in fact, aware of numerous upgrades to USTs, safety devices, warning systems, and alternative and improved instructions to service station owners and operators as well as jobbers who delivered gasoline, that were necessary to prevent releases of MTBE gasoline which would contaminate groundwater in Fresno." Also, Mr. Moreau also testified that he did <u>not</u> have any opinions to offer as to whether any owner/operators at any of the facilities at issue in this case would have changed their behavior had they received an appropriate warning. (Anderson Supp. Decl, Ex. 15, Moreau Depo. at 650:13-21, 650:25-651:5.) Defendants also object to the cited material as irrelevant: The referenced document does not support a claim that any of the Defendants engaged in any affirmative acts that |

| ADDITIONAL MATERIAL FACTS ASSERTED BY PLAINTIFF | DEFENDANTS' RESPONSE AND OBJECTIONS |
|---|---|
| | contributed directly to a nuisance. |
| 62.      The Fresno gasoline stations at issue in this motion, unaware of the need for fiberglass tanks or other upgrades, continued to utilize inadequate bare steel UST systems "well past the time when MtBE was prevalent in California gasoline."  (*Id.*, at 11, and fn 36].) The evidence shows that many, if not all, of the station owners and operators associated with stations at issue were unsophisticated, and relied upon others, including defendants, to instruct them on how to safely and properly operate and maintain their USTs and gasoline. (*Ibid.*) | **Objection and Move to Strike:**  Defendants object that the City has exceeded the limitations imposed by the Court on the number (15) and size (15 pages) of exhibits in opposition to a motion.  *See* Hon. S. Scheindlin Individual Rules and Procedures, p. 5, IV.H. (rev. Jan. 3, 2011).  The City has attached a total of 43 exhibits to its opposition.

Defendants further object to and move to strike the rebuttal report of Marcel Moreau as inadmissible hearsay, irrelevant/immaterial, and lacking foundation.  Mr. Moreau's general references to USTs are irrelevant to the nuisance claims makes in this case.  Moreover, the cited portion of Mr. Moreau's report does not state or support Plaintiff's conclusory assertion that, "The evidence shows that many, if not all, of the station owners and operators associated with stations at issue were unsophisticated, and relied upon others, including defendants, to instruct them on how to safely and properly operate and maintain their USTs and gasoline."  Also, Mr. Moreau also testified that he did <u>not</u> have any opinions to offer as to whether any owner/operators at any of the facilities at issue in this case would have changed their behavior had they received an appropriate warning.  (Anderson Supp. Decl, Ex. 15, Moreau Depo. at 650:13-21, 650:25-651:5.)

Defendants also object to the cited material as irrelevant: The referenced document does not support a claim that any of the Defendants engaged in any affirmative acts that contributed directly to a nuisance.

Defendants further object to the report as speculative as to what station owners/operators |

| ADDITIONAL MATERIAL FACTS ASSERTED BY PLAINTIFF | DEFENDANTS' RESPONSE AND OBJECTIONS |
|---|---|
| | knew.  Any contention regarding what station owners/operators knew or did not know should be based upon the testimony of those persons, not the report of a retained litigation expert. |
| 63.      The California regulatory authorities responsible for oversight of releases from underground storage tanks were not advised by the oil industry until the late 1990s that MTBE poses a serious threat to groundwater and drinking water in the State of California. (O'Reilly Decl., Ex. 31, June 25, 1996, Letter from P. Pugnale, Shell Oil Company, to R. Ghirelli, California Regional Water Quality Control Board; and Ex. 32, Letter from C Flanikan, Ultramar to California Environmental Protection Agency.) | **Objection and Move to Strike:**  Defendants object that the City has exceeded the limitations imposed by the Court on the number (15) and size (15 pages) of exhibits in opposition to a motion.  *See* Hon. S. Scheindlin Individual Rules and Procedures, p. 5, IV.H. (rev. Jan. 3, 2011).  The City has attached a total of 43 exhibits to its opposition.

Defendants further object to the referenced statements as inadmissible hearsay as to any defendant but Shell (as to Exhibit 31) or Ultramar (as to Exhibit 32).  And, Defendants object that the statements lack foundation and that Plaintiff has failed to supply evidence the statements were made within the scope of the author's/maker's authority.

Defendants also object to the cited material as irrelevant: The referenced documents have nothing to do with any of the stations at issue in this case and are therefore irrelevant to any claim of nuisance regarding those stations. Moreover, none of the stations at issue in this motion sold Shell-branded gasoline during the relevant time frame.  *See* Response to ¶ 11.

Defendants further object to the extent the City has taken the documents out of context, paraphrased the documents, and attributed content to the documents not reflected in the documents.  These documents do not support Plaintiff's assertion that, "The California regulatory authorities responsible for oversight of releases from underground storage tanks were not advised by the oil industry until the late 1990s that MTBE poses a serious threat to |

| ADDITIONAL MATERIAL FACTS ASSERTED BY PLAINTIFF | DEFENDANTS' RESPONSE AND OBJECTIONS |
|---|---|
| | groundwater and drinking water in the State of California."<br><br>Defendants admit that the referenced document speaks for itself, but denies that the document is relevant or material to any of the stations at issue or supports a nuisance claim against any of the Defendants. |

Dated:  April 26, 2013.

Respectfully submitted,

KING & SPALDING LLP[1]

_____

Robert E. Meadows
Jeremiah J. Anderson
1100 Louisiana, Suite 4000
Houston, Texas 77002
Tel: (713) 751-3200
Fax: (713) 751-3290

Charles C. Correll Jr.
101 Second Street, Suite 2300
San Francisco, California  94105
Tel: (415) 318-1200
Fax: (415) 318-1300

**_Attorneys for Defendants_**
**_Chevron U.S.A. Inc. and Union Oil_**
**_Company of California_**

---

[1]    The following page contains a list of Defendants who have joined in filing Certain Defendants' Reply to Plaintiff City of Fresno's Local Rule 56.1 Statement of Material Facts Submitted in Opposition to Certain Defendants' Motion for Partial Summary Judgment on Plaintiff's Nuisance Claim.

**DEFENDANTS JOINING CERTAIN DEFENDANTS' REPLY TO PLAINTIFF CITY OF
FRESNO'S LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS SUBMITTED
IN OPPOSITION TO CERTAIN DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S NUISANCE CLAIM**

CHEVRON U.S.A. INC

UNION OIL COMPANY OF CALIFORNIA

SHELL OIL COMPANY

TEXACO REFINING AND MARKETING INC.

EQUILON ENTERPRISES LLC

EQUIVA SERVICES LLC

CITGO PETROLEUM CORPORATION

KERN OIL & REFINING CO.

NELLA OIL COMPANY

LYONDELL CHEMICAL COMPANY (FORMERLY KNOWN AS ARCO CHEMICAL
COMPANY)

COASTAL CHEM, INC.

TESORO CORPORATION (FORMERLY KNOWN AS TESORO PETROLEUM
CORPORATION)

TESORO REFINING AND MARKETING COMPANY (ERRONEOUSLY NAMES AS
TESORO REFINING AND MARKETING COMPANY, INC.)

VALERO REFINING COMPANY-CALIFORNIA

VALERO MARKETING AND SUPPLY COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of April 2013, a true, correct, and exact copy of the foregoing document was served on all counsel via LexisNexis File & Serve.

Jeremiah J. Anderson