UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation | Master File No. 1:00-1898<br>MDL No 1358 (SAS)<br>M21-88 |
| --- | --- |

---

This Document Relates To:

*City of Merced Redevelopment Agency v. Exxon Mobil Corp., et al.,* 08 Civ. 06306 (SAS)

---

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT RE STATUTE OF LIMITATION**

## Table of Contents

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

I.    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.  Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      A.    Defendants Have the Burden to Establish Each Element of the Statute of
            Limitations Defense, Including that Merced RDA Suffered Harm and Knew Who
            Inflicted That Harm Before the Limitations Period  . . . . . . . . . . . . . . . . . . . . 6

      B.    Plaintiff's Claims Were Timely Filed within the Applicable Statute of
            Limitations  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      C.    The Defendants Argument re Statute of Limitations as applied to the R Street
            Stations was Rejected by the Court and Jury in City of Merced v. Chevron
            U.S.A., Inc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## Table of Authorities

### Cases

*Aas v. Superior Court (William Lyon Co.)*
   24 Cal.4th 627 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8

*Allyson v. Department of Transp.*
   53 Cal.App.4th 1304 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Anderson v. Metalclad Insulation Corp.*
   72 Cal.App.4th 284 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Angeles Chemical Co. v. Spencer & Jones*
   44 Cal.App.4th 112 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9, 11

*Badaracco v. Commissioner*
   464 U.S. 386 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Bibeau v. Pacific Northwest Research Foundation, Inc.*
   188 F.3d 1105 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Bonds v. Nicoletti Oil, Inc.*
   2008 WL 2233511 (E.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Bowman v. City of Berkeley*
   122 Cal.App.4th 572 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*California Sansome Co. v. U.S. Gypsum Co.*
   55 F.3d 1402 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Celotex Corp. v. Catrett*
   477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*City of Vista v. Robert Thomas Securities, Inc.*
   84 Cal.App.4th 882 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

*Colony Holdings, Inc. v. Texaco Refining and Marketing Inc.*
   2001 WL 1398403 (C.D. Cal. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Fisher v. Ceiba Specialty Chemicals Corp.*
   2007 WL 2995525 (S.D. Ala. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*FMC Corp. v. Plaisted & Companies*
   61 Cal.App.4th 1132 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Gallo v. Prudential Residential Servs. Ltd. Partnership*
    22 F.3d 1219 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Glue-Fold, Inc. v. Slautterback Corp.*
    82 Cal.App.4th 1018 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Huynh v. Ingersoll-Rand*
    16 Cal.App.4th 825 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*
    676 F.Supp.2d 139 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 12

*Jolly v. Eli Lilly and Co.*
    44 Cal.3d 1103 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Kessler v. Westchester County Dep't of Soc. Servs.*
    461 F.3d 199 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Leaf v. City of San Mateo*
    104 Cal.App.3d 398 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Lessord v. General Electric*
    258 F.Supp.2d 209 (W.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*
    475 U.S. 574 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*McClellan v. Smith*
    439 F.3d 137 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Miner v. Clinton County, N.Y.*
    541 F.3d 464 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*O'Connor v. Boeing North American, Inc.*
    311 F.3d 1139 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9, 10, 11

*Pyke v. Cuomo*
    567 F.3d 74 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*San Francisco Unified School Dist. v. W.R. Grace & Co.*
    37 Cal.App.4th 1318 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12

*SCR Joint Venture L.P. v. Warshawsky*
    559 F.3d 133 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Sevilla v. Stearns-Roger, Inc.*
    101 Cal.App.3d 608 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Sledge v. Kooi*
    564 F.3d 105 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Diebold, Inc.*
    369 U.S. 654 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Kubrick*
    444 U.S. 111 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Walker v. Pacific Indemnity Co.*
    183 Cal.App.2d 513 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8


Statutes

CERCLA § 309 (42 U.S.C. § 9658) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9


Rules

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4


Other Authorities

Judicial Council of California, Civil Jury Instruction (CACI) No. 454 . . . . . . . . . . . . . . . . . . . 7

I.    **Introduction**

Defendants' Motion for Partial Summary Judgment Re Statute of Limitation seeks judgment on four of Plaintiff's five claims: products liability, negligence, trespass and nuisance. Defendants do not seek summary judgment on Plaintiff's claim under the Polanco Act. Defendants' motion is without merit and should be denied for the following reasons.

First, defendants have not met their burden to establish as a matter of undisputed fact that the City of Merced Redevelopment Agency ("RDA")[1] suffered appreciable harm outside the statute of limitations. The RDA does not own or have any property interest in the two R Street stations that are the focus of defendants' motion. Rather, the RDA incurred costs at different times and for different reasons to oversee cleanup at the two R Street stations. Although defendants devote considerable energy to establishing that MTBE contamination occurred at the R Street stations south of property owned by the RDA, they do not assert that *the RDA's property* was contaminated by MTBE outside the statute of limitations.

Second, defendants' motion fails to distinguish between the two R Street stations, despite the fact that the two stations were separate properties owned by different individuals, with distinct facts relevant to defendants' motion. By referring to these stations collectively as the "R Street stations" defendants mask distinctions that are critical to their statute of limitations defense. Merced RDA managed a non-MTBE gasoline investigation and remediation and clean up at the 1415 R Street Station in the 1990's. (Plaintiff's 56.1 St. at ¶ 1.) In contrast, Merced

---

[1] At the time this litigation was filed, the City of Merced RDA was authorized to sue as a separate entity. RDAs in the State of California, however, were recently dissolved by statute, with provisions for designated local authorities to be appointed to handle matters previously handled by RDAs. As alleged in the amended complaint in this case, a designated local authority has been appointed for the Merced RDA. Because many of the facts referenced in this brief involved the RDA, however, this brief refers to plaintiff as the RDA.

RDA was not designated to manage the clean up and remediation of MTBE gasoline stemming from the 1455 R Street station until October, 2006. (Plaintiff's 56.1 St. at ¶ 42, see also ¶ 43.) It was also not until 2006 when the owners of 1455 were asked even to agree that the RDA would lead a coordinated remediation effort that included both stations. (Plaintiff's 56.1 St. at ¶41.)[2]

Third, defendants ignore the fact that their statute of limitations argument was rejected by the court and jury in the parallel state case that recently went to trial. In *City of Merced v. Chevron U.S.A., Inc.* The jury found:

> Section C: Former Exxon at 1415 R Street
> * * *
> 32. "Has Exxon proven that before April 22, 2002, groundwater containing MTBE from Former Exxon threatened injury to the City's water system, which means when the groundwater contains MTBE and the City takes action, or should have taken some action, in response to that contamination to protect its right to use that groundwater."
>
> 2 yes, 10 no
>
> * * *
> Section F: Pacific Pride Cardlock service station at 1455 R Street
> * * *
> 65. "Has Chevron proven that before April 22, 2002, groundwater containing MTBE from Pacific Pride Cardlock threatened injury to the City's water system, which means when the groundwater

---

[2]  In July, 2008, an MTBE Remediation Coordination Agreement was finally executed by the owners and responsible parties of 1455 and 1415 R Street, the RDA and the City of Merced. (Plaintiff's 56.1 St. at 42.)  The Agreement provides:

> The Agency [RDA], City, and the Responsible Parties agree that while neither the Agency nor the City is a Responsible Party for the storage tank releases at 1415 R Street and 1455 R Street in Merced, the Agency shall be the lead in the overall underground MTBE contamination remediation efforts with an immediate focus on preventing MTBE contamination and protecting water quality in and around City Well No. 5.

(*Id.*)

2

contains MTBE and the City takes action, or should have taken
some action, in response to that contamination to protect its right to
use that groundwater."

0 yes, 12 No

(Plaintiff's 56.1 St. at ¶ 32.)

In denying defendants' JNOV motion, the *City of Merced* court held: "Defendant
[Exxon] had the burden by a preponderance of the evidence to show the City was injured and that
it knew of the injury prior to April 2002 [three years prior to when the City filed its complaint]
and they did not meet their burden." (Plaintiff's 56.1 St. at ¶31.)

The *City of Merced* court ruled the same with respect to Chevron's motion: "As stated
above, it was a jury determination as to when appreciable harm occurred to the City at each site,
and Defendant had the burden by a preponderance of the evidence to show the City was injured
and that it knew of its injury prior to April 2002. The jury determined they did not meet that
burden and that determination was supported by substantial evidence." (*Id.* at 5.)

Finally, defendants' contention that plaintiff seeks damages from 1992 forward is simply
wrong. It was not until 2006, when the RDA was appointed to oversee the entire coordinated
remediation effort of both R Street stations to address recent free product releases and the now
commingled plume, that the RDA began incurring expenses for overseeing remediation of an
MTBE plume. In fact, the Complaint, which defendants' motion conspicuously ignores, states
plaintiff is seeking:

Costs incurred within the past three years of the filing of the
Complaint, or that are to be incurred in the future, include: loss of
use of property, loss of tax revenues, property damage, restoration
costs incurred within the past three years of the filing of the
Complaint or that are to be incurred in the future, delay damages,
property devaluation, interim and permanent remedial measures to
control releases and potential releases of gasoline, hydrocarbons,

3

> MTBE, and TBA, cleanup costs, potential installation and
> maintenance or interceptor wells, and water treatment facilities, all
> in an amount to be proved at trial.

(Plaintiff's 56.1 St. at ¶10.)

Defendants' motion is based upon disputed facts that should be resolved by a jury. That

is particularly true because defendants bear the burden of proving that all essential elements of

the respective causes of action, including appreciable harm, occurred outside the statute of

limitations. *City of Vista v. Robert Thomas Securities, Inc.* 84 Cal.App.4th 882, 886-887 (2000).

In addition, because hazardous substances are involved, CERCLA preempts California law with

respect to when the RDA was on notice of the specific injuries for which it has sued. (*O'Connor*

*v. Boeing North America, Inc.* (9th Cir. 2000) 311 F. 3d 1139, 1147.) Defendants must show as a

matter of undisputed fact that the RDA had knowledge not only of the "critical facts" regarding

its injury, but also who specifically caused the injury.[3] Defendants' motion fails to meet this

burden.

## II.   <u>Legal Standard</u>

Summary judgment may not be granted unless "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In

determining whether summary judgment is appropriate, a court must resolve all ambiguities

against the moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.

---

[3] *See also Angeles Chemical Co. v. Spencer & Jones* (1996) 44 Cal.App.4th 112, 119;
*Lessord v. General Electric* (W.D.N.Y. 2002) 258 F.Supp.2d 209, 219 ("Plaintiffs in toxic tort
cases, then, should not be encouraged to take a shotgun approach and sue everyone who *might* be
liable, before they have an evidentiary basis for asserting a claim") (emphasis in original).

574, 587 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962));  *see also Gallo v. Prudential Residential Servs. Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir. 1994).

"An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  A fact is material if it might affect the outcome of the suit under the governing law." *OCWD*, 676 F.Supp.2d at 144 (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  "[T]he burden of demonstrating that no material fact exists lies with the moving party . . . ." *OCWD*, 676 F.Supp.2d at 144 (quoting *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008)).

"[A]ll that is required [from a nonmoving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *OCWD*, 676 F.Supp.2d at 144 (quoting *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006)).

In determining whether a genuine issue of material fact exists, the court must "constru[e] the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences" in that party's favor. *OCWD*, 676 F.Supp.2d at 144 (quoting *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009)).  However, "[i]t is a settled rule that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'" *OCWD*, 676 F.Supp.2d at 144-45 (quoting *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006)).  Summary judgment is therefore "appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *OCWD*, 676 F.Supp.2d at 145 (quoting *Pyke v. Cuomo*, 567 F.3d 74, 76 (2d Cir. 2009)).

## III.    **Argument**

Defendants rely heavily on this Court's prior opinion in *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 676 F.Supp.2d 139, 145 (S.D.N.Y. 2009) (*OCWD*). Unlike plaintiff Orange County Water District in *OCWD*, however, the RDA does not manage a groundwater basin. And unlike other plaintiffs in the MDL, the RDA is not a water provider. Rather, the RDA has expended funds to supervise, at the request of the Regional Board, remediation of MTBE contamination.[4] The RDA also owns property to the North of the R Street stations. Defendants' motion does not even argue that harm to the RDA's property occurred outside the statute of limitations.[5]

### A.   Defendants Have Not Met Their Burden to Establish Each Element of the Statute of Limitations Defense, Including that Merced RDA Suffered Harm And Knew Who Inflicted That Harm Before the Limitations Period

The statute of limitations is an affirmative defense which is strictly construed:

> Statutorily imposed limitations on actions are technical defenses which should be strictly construed to avoid the forfeiture of a plaintiff's rights. Such limitations are obstacles to just claims, and the courts may not indulge in a strained construction to apply these statutes to facts of a particular case. Any doubts as to whether summary disposition is proper must be resolved against the moving parties.

*Sevilla v. Stearns-Roger, Inc.*, 101 Cal.App.3d 608, 611 (1980). This rule of construction is even more strict when the plaintiff is the government. *Badaracco v. Commissioner*, 464 U.S. 386, 391 (1984) ("Statutes of limitation sought to be applied to bar rights of the Government, must receive

---

[4] Defendants mistakenly point to the Declaration of Frank Quintero in support of their contention that Plaintiff seeks damages back to 1992. Although Mr. Quintero states in his declaration that, *in response to Defendants' discovery requests,* Plaintiff produced documents and information about costs incurred by the RDA back to 1992, he does not describe those costs as "damages" and in no way suggests that Plaintiff is seeking all damages back to 1992. (Plaintiff's 56.1 St. at ¶12; see also ¶ 10.)

[5] In *OCWD* the Court denied defendants' motion for summary judgment as to sites which had a soil detection but no groundwater detection. 676 F.Supp.2d at 150.

a strict construction in favor of the Government.").

In order to succeed on a statue of limitations defense, defendants must present admissible evidence of *each essential element* of the defense upon which it bears the burden of proof at trial. *Huynh v. Ingersoll-Rand*, 16 Cal.App.4th 825, 831 (1993) (in seeking summary judgment on "misuse" defense, defendant bears the burden of proof to establish that misuse caused plaintiff's injury); *Anderson v. Metalclad Insulation Corp.*, 72 Cal.App.4th 284, 289 (1999); *Allyson v. Department of Transp.*, 53 Cal.App.4th 1304, 1318 (1997). California's jury instruction on the statute of limitations as an affirmative defense provides: "[Name of defendant] contends that [name of plaintiff]'s lawsuit was not filed within the time set by law. To succeed on this defense, [name of defendant] must prove that [name of plaintiff]'s claimed harm occurred before [insert date from applicable statute of limitation]." Judicial Council of California, Civil Jury Instruction (CACI) No. 454. In other words, defendants must prove that *Merced RDA's claimed harm* occurred before the limitations period. The jury instruction's "Directions for Use" explain: "'Claimed harm' refers to all of the elements of the cause of action, which must have occurred before the cause of action accrues and the limitation period begins." *Id.* (citing *Glue-Fold, Inc. v. Slautterback Corp.*, 82 Cal.App.4th 1018, 1029 (2000).)

The statute of limitations commences upon the occurrence of the last element essential to a tort cause of action. *Leaf v. City of San Mateo*, 104 Cal.App.3d 398, 406 (1980). "The mere breach of duty – causing only nominal damages, speculative harm or the threat of future harm not yet realized – normally does not suffice to create a cause of action." *San Francisco Unified School Dist. v. W.R. Grace & Co.*, 37 Cal.App.4th 1318, 1326 (1995) (mere presence of asbestos in buildings not sufficient to trigger statute of limitations for asbestos contamination); *accord Aas v. Superior Court (William Lyon Co.)*, 24 Cal.4th 627, 646 (2000) (construction defects

which had not yet caused harm to home does not constitute appreciable harm). "It is clear that the mere possibility, or even probability, that an event causing damage will result from a wrongful act does not render the act actionable." *Walker v. Pacific Indemnity Co.*, 183 Cal.App.2d 513, 516-17 (1960) (insured's cause of action against insurance agent for securing inadequate coverage did not commence until insured successfully sued for damages above policy limits); *accord City of Vista v. Robert Thomas Securities, Inc.*, 84 Cal.App.4th 882, 886-87 (2000) (even when plaintiff suspected potential loss on investment prior to statute of limitations, damages did not accrue until date investment matured since final value of investment not determined until maturity).

It is actual damage to the plaintiff that controls when a claim accrues, not plaintiff's knowledge that there may be some harm in the future. For example, in ruling that plaintiff's cause of action did not accrue until plaintiff successfully sued for damages above policy limits, the *Walker* Court rejected that notion that plaintiff's mere exposure to liability beyond his insurance coverage, and plaintiff's knowledge that he was exposed, was sufficient to trigger the statute of limitations. *Walker v. Pacific Indemnity Co., supra*, 183 Cal.App.2d at 516-17. "When damages are an element of a cause of action, the cause of action does not accrue until the damages have been sustained." *City of Vista v. Robert Thomas Securities, Inc., supra*, 84 Cal.App.4th at 886. The burden is on defendants to establish that Merced RDA was appreciably harmed three years prior to the filing of the complaint. *Walker, supra*, 183 Cal.App.2d at 516-17 (prospective harm not sufficient to trigger statute of limitations). Summary judgment motions based on the statute of limitations must be denied if there are triable issues of fact regarding the accrual of appreciable harm. *City of Vista, supra*, 84 Cal.App.4th at 887.

Thus, in California, whether the statute of limitation has run is generally considered a

question of fact not appropriate for summary adjudication. *Jolly v. Eli Lilly and Co.*, 44 Cal.3d 1103, 1112 (1988).

Turning to hazardous substances law, the Ninth Circuit held in *O'Connor v. Boeing North American, Inc.*, 311 F.3d 1139 (9th Cir. 2002) that CERCLA § 309 (42 U.S.C. § 9658) preempts California law with respect to the commencement of the statute of limitations period in cases involving hazardous substances. Under section 9658, the statute commences only when a plaintiff has "knowledge of the critical facts of his injury, which are that he has been hurt *and who has inflicted the injury*." *Id.* at 1147 (emphasis added).[6]

The Ninth Circuit made clear that CERCLA was intended to extend "discovery" periods due to the inherent uncertainties in determining the subsurface movement of contamination: "The effect of [§ 9658] is to ensure that if a state statute of limitations provides a commencement date for claims . . . resulting from release of contaminants that is earlier than the commencement date defined in section 9658, then plaintiffs benefit from the more generous commencement date." *O'Connor*, 311 F.3d at 1146.[7]

_____

[6] As the Ninth Circuit also explained, section 9658 preempts less generous state standards regardless of whether the state case alleges a CERCLA cause of action: "Defendants contend that the federal standard of discovery of claims does not apply to plaintiffs' state court claims because plaintiffs, as individuals, have not alleged an underlying CERCLA claim. We disagree. Section 9658 applies to actions that assert state law claims without an accompanying CERCLA claim." *O'Connor, supra*, 311 F.3d at 1148-49.

[7] *See also Angeles Chemical Co. v. Spencer & Jones*, 44 Cal.App.4th 112, 117 (1996) ("discovery rule" mandated by CERCLA preempts California's limitations period for a latent construction defect that results in the toxic contamination of plaintiff's property); *Bibeau v. Pacific Northwest Research Foundation, Inc.*, 188 F.3d 1105, 1108 (9th Cir. 1999) ("Under this rule [§ 9658], the statute only begins to run once a plaintiff has knowledge of the 'critical facts' of his injury, which are 'that he has been hurt and *who has inflicted the injury*'") (citations omitted, emphasis added); *Fisher v. Ceiba Specialty Chemicals Corp.*, 2007 WL 2995525, at *15 (S.D. Ala. 2007) (commencement period under § 9658 "begin[s] running not when the harmful action occurred . . . but rather when plaintiffs knew or reasonably should have known that [defendant's] actions had damaged their property").

9

The *O'Connor* Court held:

> In sum, we reject an interpretation of the federal discovery rule that would commence limitations periods upon mere suspicion of the elements of a claim. Under the circumstances presented here, such a standard would result in "the filing of preventative and often unnecessary claims, lodged simply to forestall the running of the statute of limitations."

*Id.* at 1148. The Court sensibly stated: "We seek to forestall such a 'legal cascade.'" *Id.*

Here, the RDA did not suffer appreciable harm, much less knew who inflicted the injury, as discussed *infra,* until the Regional Water Quality Control Board ordered the RDA in 2006 to take over the remediation of *both* R Street sites. In the course of looking for sources the RDA has gained knowledge of other MTBE releases and the source of those releases. At a minimum, there are disputed issues of material fact on this issue that preclude an award of partial summary judgment to defendants on the statute of limitations.

In groundwater contamination cases, appreciable harm must be established through expert testimony. Determining the direction and flow of contaminants in groundwater is a complex process that is beyond the knowledge of lay people, and that requires expert testimony to establish. *Bowman v. City of Berkeley*, 122 Cal.App.4th 572, 583 (2004) ("[A] complex scientific issue such as the migration of chemicals through land calls for expert evaluation"); *Bonds v. Nicoletti Oil, Inc.*, 2008 WL 2233511, at *15 (E.D. Cal. 2008) (question of when plaintiffs' properties "may have" been contaminated required "a fate and transport scientific analysis of when the plume reached Plaintiffs' properties to cause contamination"); *see also Colony Holdings, Inc. v. Texaco Refining and Marketing Inc.*, 2001 WL 1398403, at *7 (C.D. Cal. 2001) ("The technical nature of the investigation, laboratory analysis, and opinions [regarding contamination] is beyond the scope of a lay witness and appropriately considered expert testimony"); *FMC Corp. v. Plaisted & Companies*, 61 Cal.App.4th 1132, 1220-22 (1998)

(levels of contamination must be established by competent expert testimony). Despite this clear requirement, defendants' motion is not accompanied by *any* expert declaration addressing whether or when MTBE released from defendants' sites caused appreciable harm to RDA. Defendants have submitted no evidence establishing which station was the source of the MTBE contamination, and as discussed *infra*, in fact, defendants deny that they have ever caused MTBE contamination here.

Defendants have the burden of proving that "actual and appreciable harm" contemporaneously resulted from wrongful acts. *California Sansome Co. v. U.S. Gypsum Co.*, 55 F.3d 1402, 1406-08 (9th Cir. 1995) ("Because the existence of actual and appreciable harm is a necessary predicate for the commencement of the limitations period, [defendant] has the burden of demonstrating when this occurred") (applying California law). Describing efforts to investigate the nature and scope of MTBE contamination at defendants' sites does not constitute the undisputed showing necessary to establish appreciable, non-speculative harm to Merced RDA outside of the statute of limitations.

As noted above, even if defendants had established appreciable, non-speculative injury prior to April 22, 2005, "the limitations period does not begin to run until a plaintiff 'has knowledge of the critical facts of his injury, which are that he has been hurt *and who has inflicted the injury*." *O'Connor v. Boeing North America, Inc.*, *supra*, 311 F.3d at p. 1147 [quoting *United States v. Kubrick* (1979) 444 U.S. 111, 122] (emphasis added); *see also Angeles Chemical Co. v. Spencer & Jones*, *supra*, 44 Cal.App.4th at p. 119 [same].) The process of determining whether and when subsurface groundwater contamination occurred, and the source of any such contamination, is a complex, lengthy, and expensive process. That process did not provide "nonspeculative" knowledge of the "critical facts" of Merced RDA's injury until at least

11

2006.

Defendants focus on the investigation of older releases, including non-MTBE releases, to bolster their argument. It is not enough, however, to show that an investigation was being conducted. Investigation alone does not constitute appreciable harm. (*San Francisco Unified School District v. W.R. Grace & Co.* (1995) 37 Cal.App.4th 1318, 1326, 1331.) Defendants also argue that MTBE was detected in groundwater in the late 1990's. The mere presence of MTBE, however, does not constitute appreciable harm. The issue is whether the presence of MTBE injured the RDA. This is a fact intensive inquiry that is for a jury to decide.

At a minimum, "there is no appreciable harm until MTBE is present in the groundwater," however, "not every detection of MTBE results in a contamination of the groundwater." *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 12/14/06 Opinion and Order *(OCWD)* at 13. In that decision, this Court observed, "[t]he exposure to MTBE may be fleeting. Or, the levels of MTBE present in the groundwater may be sufficiently *de minimis* such that [the plaintiff] did not suffer appreciable harm." (*Id.* at 13-14.) Here, it was not until Merced RDA was designated to lead the coordinated clean-up effort when the RDA could have contemplated the appreciable harm.

**B.    Plaintiff's Claims Were Timely Filed within the Applicable Statute of Limitations**

Defendants are only partially correct that the RDA's interest in this case arises from its ownership of property North of the two R Street stations, but they fail to distinguish between the 1415 and the 1455 stations. The defendants lack of distinction between the two stations is important for several reasons and they ignore the fact that there was no formal relationship between the RDA and the 1455 station until *July of 2008,* when the parties entered into a Remediation Coordination Agreement. (Plaintiff's 56.1 St. at ¶42.) This Agreement was the

result of the RWQCB directing the RDA in *2006* to take the lead in managing the clean-up and abatement of *both* sites, not just at 1415. (Plaintiff's 56.1 St. at ¶¶ 40-41.) Moreover, defendants focus on the RDA's role in investigating and monitoring gasoline contamination at the 1415 station, but when the RDA first became involved in investigating and monitoring 1415 R Street, MTBE was not even being added to gasoline. (Plaintiff's 56.1 St. at 35.)

The 1415 R Street Exxon station was initially owned and operated by Arvel and Virginia Shackelford and was subsequently purchased and operated by the Randhawas. (Plaintiff's 56.1 St. at ¶ 39.) The 1455 R Street station (Card Lock station) is a commercial self serve station not open to the general public that has been owned and operated by Brian Pazin. *Id.*)

In 1991-92, Merced RDA purchased property in the vicinity of the R Street Stations with an intent to sell them as a bundle to Costco, in an effort to bring Costco to the City of Merced. (Plaintiff's 56.1 St. at ¶ 2.) During negotiations between the RDA and Costco, Krazan and Associates, Inc., environmental consultants, prepared a Phase I Environmental Assessment for the proposed Costco site and determined that gasoline contamination threatened the Costco parking lot. (Plaintiff's 56.1 St. at ¶ 3.) Krazan determined that a 20-gallon unauthorized release occurred in December, 1991 at the 1415 R Street station. (Plaintiff's 56.1 St. at ¶ 34.) This release, however, occurred prior to the introduction of MTBE into Exxon gasoline and did not contribute to the MTBE contamination. (Plaintiff's 56.1 St. at ¶ 35.) *See also* Defendants' motion at 2 (graph showing *benzene* plume from 1415 R Street station).

The RDA agreed to lease part of the property potentially affected by the (non-MTBE) gasoline release from the 1415 R Street station to Costco and use best efforts to remediate the contamination at 1415 R Street. (Plaintiff's 56.1 St. at ¶ 11.) The 1993 agreement with Costco specifically gave Costco an option to purchase the property at a later time. (Plaintiff's 56.1 St. at

13

¶¶ 8, 11.)

In 1994, the RDA entered into a Participation Agreement with the owners of the 1415 R Street station. (Plaintiff's 56.1 St. at ¶ 13.) The Agreement provided that the owners, the Shackelfords, would seek government funds to assist in cleaning up the site and RDA would be responsible for the investigation and remediation of the property. (Plaintiff's 56.1 St. at ¶ 13.) Thereafter, the Shackelfords sold the property to Mr. Randhawa. (Plaintiff's 56.1 St. at ¶ 39.)

Between 1992 and 2002, the gasoline from the 1415 R Street station was monitored and investigated. (Plaintiff's 56.1 St. at ¶ 14.) Monitoring wells were installed not just on the 1415 R Street site, but also on the 1455 R Street site. (Plaintiff's 56.1 St. at ¶ 17.) Although the RDA, at the direction of the Regional Board, began testing for (and detected) MTBE in 1996, there was no determination of the source of the MTBE, and the RDA's work continued to be for the 1415 R Street station alone. The RDA's understanding of the contamination evolved over the years and as Mr. Cahill testified, "I refer to earlier in the testimony to a continuing evolution of our understanding of this problem. Because since 1992, we had been focused on gasoline, hydrocarbons, not on MTBE itself. MTBE didn't really enter the picture until we were asked to test for it in '96. And a lot of our focus was still on hydrocarbons and gasoline itself as opposed to MTBE. . . ." (Plaintiff's 56.1 St. at 23.)

In 2002, a review by the RWQCB of monitoring well sample results at both R Street stations detected the sudden appearance of a serious and substantial amount of free product. (Plaintiff's 56.1 St. at ¶ 26.) The source of this gasoline was unknown at first. (Plaintiff's 56.1 St. at ¶ 26.) In August, 2002, the RWQCB determined that the origin of the release was from the 1455 R Street site, not the 1415 R Street site, and that the plume of polluted groundwater had been commingled. (Plaintiff's 56.1 St. at ¶ 36, 37.) The RDA was not involved with the 1455 R

14

Street station ast this point.

In 2005, the RDA Assistant Executive Director, Mr. Cahill, wrote to Warren Gross at the RWQCB and stated a belief that groundwater contamination had not reached a critical level at that time. (Plaintiff's 56.1 St. at ¶ 38.) By 2006, however, the Regional Board concluded that the remediation of the co-mingled plumes was not sufficiently aggressive. (Plaintiff's 56.1 St. at ¶ 39.) In May, 2006, the RWQCB informed the property owners of both the 1415 R Street and the 1455 R Street stations that the remediation efforts were insufficient and the RWQCB intended to promptly issue a Clean-up and Abatement Order ("CAO"). (Plaintiff's 56.1 St. at ¶ 39.) On July 10, 2006, the Board held a meeting at which it was decided that the Merced RDA would manage the remediation of both properties. (Plaintiff's 56.1 St. at ¶ 40.) A follow-up letter confirmed the Board's intent to make the RDA the new "lead in coordinated remediation of the commingled plume." (Plaintiff's 56.1 St. at ¶40.) It was at this point, in July, 2006, that the RDA first became obligated to expend funds to manage remediation of the co-mingled plume, including MTBE originating from 1455 R Street. Subsequently, in October, 2006, the Board formally issued the CAO. (Plaintiff's 56.1 St. at ¶41.) But, it was not until 2008, when a Remediation Coordinated Agreement" was executed with the owners of 1455 and 1415 R Street stations and the RDA. (Plaintiff's 56.1 St. at 42.)

At a minimum there are disputed issues of material fact regarding the nature of the RDA's injury, when that injury arose, and when the RDA was able to determine the source of the injury.

 

 

C.    **The Defendants Argument re Statute of Limitations as applied to the R Street Stations was Rejected by the Court and Jury in *City of Merced v Chevron U.S.A., Inc.***

Defendants raised a nearly identical statute of limitation affirmative defense regarding the 1415 and 1455 R Street stations against the City of Merced in the case of *City of Merced v. Chevron U.S.A., Inc.* Defendants argued that the City had been aware of groundwater contamination, and that the contamination was coming from these two stations, during the 1990s and early 2000's. This issue went to the jury, was rejected, and then the Court also rejected the argument when it denied Defendants JNOV motion. The jury found:

> Section C: Former Exxon at 1415 R Street
> * * *
> 32. "Has Exxon proven that before April 22, 2002, groundwater containing MTBE from Former Exxon threatened injury to the City's water system, which means when the groundwater contains MTBE and the City takes action, or should have taken some action, in response to that contamination to protect its right to use that groundwater."
>
> 2 yes, 10 no
>
> * * *
> Section F: Pacific Pride Cardlock service station at 1455 R Street
> * * *
> 65. "Has Chevron proven that before April 22, 2002, groundwater containing MTBE from Pacific Pride Cardlock threatened injury to the City's water system, which means when the groundwater contains MTBE and the City takes action, or should have taken some action, in response to that contamination to protect its right to use that groundwater."
>
> 0 yes, 12 No

(Plaintiff's 56.1 St. at ¶32.) The Court further ruled on the JNOV motion that "Defendant [Exxon] had the burden by a preponderance of the evidence to show the City was injured and that it knew of the injury prior to April 2002 [three years prior to when the City filed its complaint] and they did not meet their burden." (Plaintiff's 56.1 St. at ¶ 31). The Court ruled the same with respect to Chevron's motion: "As stated above, it was a jury determination as to when appreciable harm occurred to the City at each site, and Defendant had the burden by a

16

preponderance of the evidence to show the City was injured and that it knew of its injury prior to April 2002. The jury determined they did not meet that burden and that determination was supported by substantial evidence." (*Id.*)

Here, defendants' arguments are even less compelling. Unlike the City of Merced, which had broad interests in the contaminated groundwater, the RDA's interests are in recovering funds it expended to address MTBE contamination (as opposed to non-MTBE contamination) when directed to do so by the Regional Board. The RDA also has a property interest in the Costco parking lot North of the two R Street stations. The RDA's initial effort to sell the property to Costco were impacted by a gasoline plume that did not contain MTBE. The potential impacts of MTBE contamination on the RDA's sale of the property to Costco in the future are contingent, future damages, not damages that occurred in the 1990's as defendants allege.

## CONCLUSION

Defendants Motion for Partial Summary Judgment should be denied because, as alleged in Plaintiff's First Amended Complaint and as supported by the testimony and evidence discovered during the litigation, the appreciable injury and damage occurred for the first time in July, 2006. It was not until the Regional Water Quality Control Board determined that the parties responsible for releases at 1415 "R" Street and 1455 "R" Street in Merced were not taking appropriate and timely action to abate the plume, and the Plaintiffs were directed to lead and manage a coordinated remediation of the entire project including the new, substantial free product release that occurred on the 1455 property, which had not previously been the RDA's responsibility.

17

Respectfully submitted,

Dated:  April 29, 2013

**MILLER, AXLINE & SAWYER**
A Professional Corporation

By:

DUANE C. MILLER
MICHAEL AXLINE
Attorneys for plaintiff City of Fresno
MILLER, AXLINE & SAWYER
A Professional Corporation
1050 Fulton Avenue, Suite 100
Sacramento, CA  95825-4225
Telephone:  (916) 488-6688

18