UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation | Master File No. 1:00-1898<br>MDL No 1358 (SAS)<br>M21-88 |

This Document Relates To:

*City of Merced Redevelopment Agency v. Exxon Mobil Corp., et al.*, 08 Civ. 06306 (SAS)

**PLAINTIFF CITY OF MERCED REDEVELOPMENT AGENCY'S 56.1 STATEMENT OF MATERIAL FACTS SUBMITTED IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE STATUTE OF LIMITATIONS**

1

Pursuant to Local Rule 56.1, plaintiff City of Merced Redevelopment Agency ("Merced RDA") submits this statement of rebuttal and additional material facts for which Merced RDA contends there is a genuine issue to be tried in support of Merced RDA's opposition to certain defendants' motion for partial summary judgment re statute of limitations.

1. Admit that "a plume of gasoline" was discovered in 1992, but deny any implication that MTBE was part of the plume. Plaintiff further states that the 1415 R Street station reported a 20-gallon unauthorized release that occurred in December, 1991. (Miller Decl., Ex. 1, Expert Report of Marcel Moreau for R Street Exxon at 1 of 9.) This release occurred prior to the introduction of MTBE into Exxon gasoline and did not contribute to the MTBE contamination. (Miller Decl., Ex. 1, Expert Report of Marcel Moreau at R Street Exxon, 1.)

2. Admit. Plaintiff further states that in 1991-1992, Merced RDA purchased multiple parcels of property and negotiated with Costco to sell the properties to Costco. (Reporter's Trial Transcript (hereafter "RT") in *City of Merced v. Chevron U.S.A., et al.*, Merced County Superior Court Case No. CU148451, at 11/03/11 Trial Testimony of W. Cahill, RT at 1834:7-11.)

3. Objection. The reference to the term "the property" is vague. Deny any implication that MTBE was part of the contamination discovered in 1992; see Plaintiff's Response to ¶ 1, *supra*. Plaintiff further states that an environmental consultant (Krazan and Assoc., Inc.) was hired in 1992 and Krazan supplied a copy of the Report to the RDA in 1992, which opined that there was a plume of gasoline contamination heading North toward the area where the Costco parking lot was proposed. (Miller Decl., Ex. 2, 11/03/11 Trial Testimony of W. Cahill, RT at 1833:1-25; 1834:1-11; Ex. 3, 11/04/11 PM Trial Testimony of W. Cahill, RT at

2

2008:24-25; 2009:1-5.)

    4.    Deny any implication that MTBE was part of the contamination discovered in 1992. See Response to ¶ 1, *supra*. Plaintiff further incorporates its Response to ¶ 3.

    5.    Deny any implication that MTBE was part of the contamination discovered in 1992, see Response to ¶ 1, *supra*, and admit the remaining paragraph.

    6.    Disputed, in part. Admit that environmental consultant Krazan & Associates, Inc. installed a monitoring well at 1455 R Street, that they reported gasoline constituents in the groundwater beneath 1455 R Street, and that there was a possible gasoline release at 1455 R Street. Deny any implication that MTBE was part of the contamination discovered in 1992, see Response to ¶ 1, *supra*, and deny the remaining paragraph. Plaintiff further incorporates its response to ¶ 3.

    7.    Objection--hearsay regarding what Costco did not want and why. Admit that information in the Krazan Report affected how the negotiation proceeded between the RDA and Costco. See Response to ¶ 8, *infra*.

    8.    Admit that Costco did not agree to purchase the property in 1992, but Plaintiff states that the RDA leased, and continues to lease, the property which became the Costco parking lot, and Costco retained, and continues to retain, an option to purchase the property. (Miller Decl., Ex. 2, 11/03/11 Trial Testimony of W. Cahill, RT at 1834:7-11; Miller Decl. at Ex. 3, 11/04/11 PM Trial Testimony of W. Cahill, RT at 2011:8-17; Miller Decl. at Ex. 4, Lease between RDA and Costco.)

    9.    Admit. Plaintiff further incorporates its Response to ¶ 8.

    10.    Objection, the Complaint speaks for itself and Plaintiff's First Amended Complaint identifies the damages sought: "Costs incurred within the past three years of the filing

3

of the Complaint, or that are to be incurred in the future, include: loss of use of property, loss of tax revenues, property damage, restoration costs incurred within the past three years of the filing of the Complaint or that are to be incurred in the future, delay damages, property devaluation, interim and permanent remedial measures to control releases and potential releases of gasoline, hydrocarbons, MTBE, and TBA, cleanup costs, potential installation and maintenance or interceptor wells, and water treatment facilities, all in an amount to be proved at trial." (Miller Decl., Ex. 5, First Amended Complaint, at ¶31 and p.5, "Prayer for Relief".)

11. Objection–the document speaks for itself and the Costco lease agreement provides, in relevant part, that the RDA "shall use best efforts to implement the remediation so as to avoid wherever possible and otherwise minimize any interference with Lessee's use of the property." (Miller Decl., Ex. 4, Lease between RDA and Costco.) Plaintiff further incorporates its Response to ¶ 1.

12. Disputed. Plaintiff incorporates its Response to ¶ 10. Defendants mistakenly point to the Declaration of Frank Quintero in support of their contention that Plaintiff seeks damages back to 1992. Although Mr. Quintero states in his declaration that, *in response to Defendants' discovery requests,* Plaintiff has produced documents and information about costs incurred back to 1992, Mr. Quintero does not describe those costs as "damages" and in no way suggests that Plaintiff is seeking all damages back to 1992. (Defendants' Roy Decl. at Ex. 6; *see also* Miller Decl., Ex. 6, Excerpts of Deposition of Frank Quintero at 27:25, 28:1-15.)

13. Admit that a Participation Agreement was entered into in 1994 between Merced RDA and the Shackelfords. (Miller Decl., Ex. 7, 9/27/1994 Participation Agreement between the RDA and the Shackelfords.) Deny the remaining allegations.

14. Admit that in 1994, the RDA began supervising the consultant's work on the

4

property relating to the 1415 R Street investigation and monitoring of contamination of the property; deny the implication that the information identified in the Complaint had occurred or was known to Plaintiff at the time the RDA began investigation and monitoring in 1994. Plaintiff further states that investigation is not synonymous with appreciable harm.

15. Admit. Plaintiff further incorporates its Response to ¶ 12.

16. Admit that a consultant was hired and an investigation was performed and it was determined that both 1415 R Street and 1455 R Street were potential sources of gasoline contamination. Plaintiff further states that investigation is not synonymous with appreciable harm. Plaintiff incorporates its Response to ¶¶ 1, 14.

17. Plaintiff incorporates its Response to ¶¶ 1, 14, 16.

18. Objection. Disputed and irrelevant. Investigation is not synonymous with appreciable harm. Plaintiff admits that the RWQCB issued a letter in 1996 asking that MTBE be included in the components tested and monitored.

19. Objection. Disputed and irrelevant. Investigation is not synonymous with appreciable harm. Plaintiff admits that after receiving a letter from the Merced County Department of Public Health, environmental consultant BSK began testing for MTBE. Deny that MTBE was found at the site at an appreciable level. Plaintiff further incorporates its Response to ¶ 14.

20. Objection. Disputed and irrelevant. Investigation is not synonymous with appreciable harm; further, object to the term, "at that time", as vague. Deny that MTBE was found at the site at an appreciable level. Plaintiff further incorporates its Response to ¶ 14.

21. Dispute that the cited excerpt states what Defendants contend it states.

22. Admit that the cited deposition passages provide that BSK provided City of

5

Merced employees with copies of reports regarding the status of contamination at the 1415 R Street station and monitoring efforts; deny the remaining allegations.

23.    Objection; disputed and irrelevant. Investigation is not synonymous with appreciable harm. Plaintiff further objects to the term "MTBE plume" and it is a jury question as to when and whether MTBE contamination caused appreciable harm. Plaintiff further incorporates its Response to ¶ 14. Plaintiff further states that Mr. Cahill testified, " . . . I refer to earlier in the testimony to a continuing evolution of our understanding of this problem. Because since 1992, we had been focused on gasoline, hydrocarbons, not on MTBE itself. MTBE didn't really enter the picture until we were asked to test for it in '96. And a lot of our focus was still on hydrocarbons and gasoline itself as opposed to MTBE. . . ." (Miller Decl., Ex. 3, RT at 2015: 23-26, 2016:1-3.)

24.    Objection, irrelevant what BSK knew.

25.    Admit the quoted language, but deny that Mr. Cahill was referring specifically to MTBE; the passage immediately proceeding Defendants' quoted passage provides:

> Q. So just to be clear, the threat that you understood the Regional Board to be referring to in this January letter was a threat that at least included MTBE and may have included other constituents of gasoline, right?
>
> A. Well, we knew for sure that it included gasoline. It may have included MTBE if you read that into it by implication. But it may well have. I'm just saying that the emphasis at that time and prior to that time had usually been on the gasoline."

(Miller Decl., Ex. 3, RT at 2016:6-14.)

26.    Admit that Mr. Cahill testified that in 2001 or 2002, "free product" was detected in monitoring wells, but dispute that Defendants' citations support the remaining allegations. Plaintiff further states that the cited letter states, in relevant part, "our immediate concern is the

6

possibility that there may be an active release of gasoline from either the Site or the adjacent site to the North (Cardgas), or both."

27. Admit that in January, 2002, the Regional Water Quality Control Board informed the RDA that "[t]he site is considered a potential threat to water supply wells." Plaintiff disputes that the letter cited by Defendants contains reference to either MTBE or City Well 5;and deny all remaining contentions. (Miller Decl., Ex. 8, 1/28/02 Letter from W. Gross to A. Shackelford & Mr. A. Randhawa.)

28. Admit the quoted language was stated in the January 28, 2002 letter.

29. Admit that the quoted language was stated in the January 28, 2002 letter.

30. Admit the quoted testimony was stated in the March 25, 2002 letter, but deny that the RDA had any responsibility regarding the 1455 R Street station in 2000; deny that MTBE-gasoline contamination had migrated to RDA property in 2000; and further, Plaintiff incorporates its Response to ¶14.

## PLAINTIFF'S ADDITIONAL FACTS

31. In *City of Merced v. Chevron U.S.A., Inc.,* the Court rejected Defendants statute of limitations argument in its denial of Defendants JNOV motion. (Miller Decl., Ex. 9 (*City of Merced v. Chevron, et al.,* 6/25/12 Order). The Court ruled: "Defendant [Exxon] had the burden by a preponderance of the evidence to show the City was injured and that it knew of the injury prior to April 2002 [three years prior to when the City filed its complaint] and they did not meet their burden." (*Id.* at 2). The Court ruled the same with respect to Chevron's motion: "As stated above, it was a jury determination as to when appreciable harm occurred to the City at each site, and Defendant had the burden by a preponderance of the evidence to show the City was injured

7

and that it knew of its injury prior to April 2002. The jury determined they did not meet that burden and that determination was supported by substantial evidence." (*Id.* at 5.)

32. In *City of Merced v. Chevron U.S.A., Inc.,* the jury found that the complaint was timely filed and that the City of Merced did not appreciate the harm caused by MTBE until *at least* April 22, 2002. (Miller Decl., Ex. 10 (2/09/12 Special Verdict Form) (emphasis added.).) The jury found:

> Section C: Former Exxon at 1415 R Street
> * * *
> 32. "Has Exxon proven that before April 22, 2002, groundwater containing MTBE from Former Exxon threatened injury to the City's water system, which means when the groundwater contains MTBE and the City takes action, or should have taken some action, in response to that contamination to protect its right to use that groundwater."
>
> 2 yes, 10 no
>
> * * *
>
> Section F: Pacific Pride Cardlock service station at 1455 R Street
> * * *
> 65. "Has Chevron proven that before April 22, 2002, groundwater containing MTBE from Pacific Pride Cardlock threatened injury to the City's water system, which means when the groundwater contains MTBE and the City takes action, or should have taken some action, in response to that contamination to protect its right to use that groundwater."
>
> 0 yes, 12 No

(Miller Decl. at Ex. 10, Special Verdict Order at 10, 19.)

33. The 1415 R Street station began operating in 1963 as a Mobil station. Since then, the station has been a Mobil station, an Exxon station and a Texaco station. (Miller Decl., Ex. 1 (Moreau Report on Report on 1415 R Street at 1.)

34. The 1415 R Street station reported a 20 gallon spill in 1991. (Miller Decl., Ex. 1 (Moreau Report on 1415 R Street at 1.)

8

35.     MTBE was added to gasoline starting in 1992. (Miller Decl., Ex. 1, Moreau Report on 1415 R Street at 1.)

36.     The Regional Water Quality Control Board (referred to as "RWQCB" or the "Board") considers the combined releases at the two gas stations in the 1400 block of R Street in the City of Merced as co-mingled into one plume. (Miller Decl., Ex. 1 (Expert Report of Marcel Moreau for R Street Exxon at 1 of 9; (Miller Decl., Ex. 11, 8/06/02 Letter from W. Gross at 2.) .)

37.     In August, 2002, the RWQCB informed the owners of the R Street stations that there was a recent determination that an unauthorized free product release of petroleum hydrocarbaons occurred from the Pacific Pride Cardgas – the 1455 R Street station– and the Board concluded that the plume of polluted groundwater had commingled. (Miller Decl., Ex. 11, 8/06/02 Letter from W. Gross at 1.)

38.     In 2005, the RDA Assistant Executive Director, Mr. Cahill, wrote to Warren Gross at the RWQCB and stated a belief that groundwater contamination had not reached a critical level warranting a public notice at that time. (Miller Decl., Ex. 12, 4/13/05 Letter from W. Cahill to W. Gross at 1-2.)

39.     In May, 2006, the RWQCB notified the owners of both of the R Street properties (including the Shackelfords and Randhawas, owners of 1415, and B. Pazin, owner of 1455 R Street), that remediation of the plume was not progressing satisfactorily and that the Board intended to issue a Clean-up and Abatement Order ("CAO") soon. (Miller Decl., Ex. 13, 5/02/06 Letter from B. Van Voris to Bill Cahill, et al. at 2)

40.     On July 10, 2006, the Board held a meeting of the property owners and it was decided that Merced RDA would manage and lead the remediation of both properties. (Miller Decl., Ex. 14, 7/14/06 Letter from B. Van Voris to Bill Cahill, et al.) A follow-up letter

9

confirmed the Board's intent and the RDA's new responsibility as "lead in coordinated remediation of the commingled plume." (*Id.* at 2.)

41. On October 27, 2006, the RWQCB issued a CAO for the R Street station sites. (Miller Decl., Ex. 15, 10/27/06 Letter and attached CAO.)

42. In July, 2008, an "MTBE Remediation Coordination Agreement" was executed by the owners of 1455 and 1415 R Street stations, and the RDA. (Miller Decl., Ex. 16, MTBE Remediation Coordination Agreement."). The Agreement provides: "The Agency [RDA], City, and the Responsible Parties agree that while neither the Agency nor the City is a Responsible Party for the storage tank releases at 1415 R Street and 1455 R Street in Merced, the Agency shall be the lead in the overall underground MTBE contamination remediation efforts with an immediate focus on preventing MTBE contamination and protecting water quality in and around City Well No. 5." (*Id.* at 2.)

Dated: April 29, 2013        By: _____
                             Duane C. Miller
                             Michael D. Axline
                             Miller, Axline & Sawyer
                             1050 Fulton Avenue, Suite 100
                             Sacramento, California 95825
                             Attorneys for Plaintiff City of Merced
                             Redevelopment Agency