UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation<br><br>This relates to:<br><br>Commonwealth of Puerto Rico, *et al.*<br>v. Shell Oil Company, *et al.*, No. 07 Civ. 10470 | Master File No. 1:00 – 1898<br>MDL 1358 (SAS)<br>M21-88<br><br>Civil Action |

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
BY DEFENDANT TOTAL, S.A.

# TABLE OF CONTENTS

**Page**

Table of Authorities .................................................................. ii

INTRODUCTION & SUMMARY OF ARGUMENT ............................. 1

APPLICABLE LAW ................................................................... 1

I.   The Third Amended Complaint (TAC) Properly Alleges a Claim Against TSA ..... 3

II.  The TAC Properly Alleges Personal Jurisdiction Over TSA ..................... 5

     A.   TSA's Actions Are Not Those Of A "Holding Company" .......... 6

     B.   TSA's Activities in Puerto Rico ................................. 7

III. Holding TSA as a Defendant is Not Unreasonable............................ 12

IV.  The Court Should Grant Jurisdictional Discovery if Necessary ................ 14

CONCLUSION  ....................................................................... 15

**TABLE OF AUTHORITIES**

**CASES**                                                                                      **PAGE**

*A.I. Trade Finance, Inc. v. Petra Bank*
    989 F. 2d 76 (2d. Cir. 1993) .................................................................... 2, 12

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ............................................................................... 1, 4, 5

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007) ............................................................................... 1, 2, 4

*Conley v. Gibson*
    355 U.S.41 (1957) ......................................................................................... 2

*Freudensprung v. Offshore Technical Servs., Inc.*
    379 F.3d 327 (5th Cir. 2004). ......................................................................... 3

*ICOM Holding, Inc. v. MCI Worldcom, Inc.*
    238 F.3d 219 (2d Cir. 2001) ........................................................................... 1

*In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*
    175 F. Supp. 2d 593 (S.D.N.Y. 2001) ............................................................ 1

*In re MTBE Prods. Liab. Litig.*
    233 F.R.D. 133 (S.D.N.Y. (2005) ............................................................ 1, 3, 4

*International Shoe Co. v. Washington*
    326 U.S. 310, 66 S. Ct. 154, 90 L.Ed. 95 ...................................................... 2

*Pennoyer v. Neff*
    95 U.S. 714, 24 L.Ed 565 .............................................................................. 2

*Pervasive Software Inc. v. Lexware GmbH &Co.*
    688 F.3d 214, 219-220 (5th Cir. 2012) ..................................................... 2, 12

*Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*
    748 F.2d 774 (2d Cir. 1984) ........................................................................... 1

*Sims v. Artuz*
    230 F.3d 14 (2d Cir. 2000) ............................................................................. 1

*World-Wide Volkswagen Corp. v. Woodson*
    444 U.S. 286 (1980) ....................................................................................... 2

**STATUTES**

15 U.S.C. § 1 .................................................................................................... 4

**COURT RULES**

Fed.R.Civ.P. 8(a)(2 ....................................................................................... 1, 2

## INTRODUCTION & SUMMARY OF ARGUMENT

Total, S.A., Inc.'s ("TSA's") motion to dismiss is without merit and should be denied. The motion and supporting memorandum: (1) incorrectly invoke *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (*Twombly*) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (*Iqbal*) in an attempt to avoid this Court's ruling in *In re MTBE Prods. Liab. Litig.* 233 F.R.D. 133, 135 (S.D.N.Y. (2005)); (2) ignore the fact that TSA transacted business in Puerto Rico and established minimum contacts sufficient for this Court to exercise personal jurisdiction over TSA; (3) improperly and incorrectly assert that the Court should "refrain" from exercising personal jurisdiction over TSA due to the "burden" of TSA participating in this litigation; (4) mischaracterize the relationship between TSA and Total Petroleum Puerto Rico Corporation (TPPRC); and (5) rely on disputed fact assertions that are improper in a 12(b)(6) motion.

## APPLICABLE LAW

When considering motions to dismiss the Court must accept as true all material facts alleged in the complaint and draw all reasonable inferences in plaintiff's favor. *In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 175 F. Supp. 2d 593, 599, 605 (S.D.N.Y. 2001) (citing *ICOM Holding, Inc. v. MCI Worldcom, Inc.*, 238 F.3d 219, 221 (2d Cir. 2001)). The Court's role is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000)(quoting *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir. 1984)(internal quotation marks omitted)). In ruling on the sufficiency of pleadings under Fed.R.Civ.P. 8, the Supreme Court has noted the "simple guide of Rule 8(f) that 'all pleadings shall be so construed as to do substantial justice,'" and further stated the

1

principle that, "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson,* 355 U.S.41, 48 (1957) (abrogated on other grounds by *Bell Atlantic Corp. v. Twombly,* 550 U.S.544 (2007). Pursuant to Fed.R.Civ.P. 8(a)(2), plaintiff need only provide a short plain statement of the claim showing that it is entitled to relief.[1]

In response to increased global commerce, the requirements for exercising personal jurisdiction "over nonresidents have evolved from the rigid rule of *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed 565, to the flexible standard of *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S. Ct. 154, 90 L.Ed. 95." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 294 (1980). State courts may exercise personal jurisdiction over nonresident defendants, as long as there are "minimum contacts" between defendant and the forum state. *Id.* at 291. In addition, when the issue of personal jurisdiction is addressed based on the submission of affidavits or declarations, "all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." *A.I. Trade Finance, Inc. v. Petra Bank,* 989 F. 2d 76, 79-80 (2d. Cir. 1993).

TSA relies upon *Pervasive Software Inc. v. Lexware GmbH & Co.* 688 F. 3d 214, 219-220 (5th Cir. 2012). In *Pervasive*, the court acknowledged that plaintiff need only present prima facie evidence to meet its burden. The court also acknowledge that when determining whether such a case exists, the court "must accept as true [the Plaintif's] uncontroverted allegations and resolve in [its] favor all conflicts between the

---

[1] If the Court requires a more definite statement of claims against TSA, plaintiff requests leave to provide such a statement pursuant to Rule 8(a)(2), which would include additional facts as set forth below and in the exhibits which accompany this opposition.

2

[jurisdictional] facts contained in the parties' affidavits and other documentation" quoting *Freudensprung v. Offshore Technical Servs., Inc.* 379 F.3d 327, 343 (5th Cir. 2004).

The essence of TSA's 12(b)(6) argument is that the Third Amended Complaint ("TAC") does not plead enough facts to inform TSA of its alleged wrongdoing. (Memo at 23.[2]) TSA's claim is refuted by a simple reading of the TAC. Like the pleading in the *Suffolk* case that this Court found to be sufficient in *In re MTBE Prods. Liab. Litig., supra,* 233 F.R.D.133, 135, the TAC states, "When the term 'Defendants' is used alone, it refers to all Defendants named herein jointly and severally." (Boone Decl., Ex. 1, TAC §19.) The TAC also specifically identifies TSA as a Refiner/Supplier Defendant. Boone Decl., Ex. 1, TAC §§ 21 and 53. Every time the term "Defendants" or "Refiner/Supplier Defendants" are used in the TAC, the facts pled about those defendants are pled about TSA. Facts regarding "Defendants" and the "Refiner/Supplier Defendants" are pled in TAC ¶¶ 89, 90, 91, 92, 93, 94, 95(a) and in Counts I-V for strict products liability, public nuisance, trespass, negligence and violation of plaintiff's environmental statutes and regulations. Each of these five Counts is pled against "All Defendants" and each Count contains factual allegations of the wrongdoing by defendants, including TSA. The claim by TSA that the TAC does not plead facts is itself conclusory and does not address or mention in any way the facts pled against TSA in the paragraphs of the TAC identified above.

## I. The Third Amended Complaint (TAC) Properly Alleges A Claim Against TSA

TSA admits (in a footnote) that this Court, in *In re MTBE Prods. Liab. Litig. supra,* 233 F.R.D. 133, 135, found allegations similar to those in the TAC are sufficient to state a claim. (Memo at 24, n.15.) TSA tries to avoid that prior ruling in the Suffolk

---

[2] All references to "Memo" are to the Memorandum of Law filed by TSA in support of its motion.

3

case by asserting that two subsequent Supreme Court decisions, *Twombly, supra,* 550 U.S. 544 and *Iqbal, supra,* 556 U.S. 662, "fundamentally changed pleading requirements in the federal courts," and therefore this Court's decision is no longer viable. (Memo at 24, n.15.) Neither *Twombly* nor *Iqbal* changed the law as applied by this Court in *In Re MTBE*, 233 F.R.D. 133.

In *Twombly*, the Court held that a complaint attempting to state a claim under §1 of the Sherman Act should be dismissed where the complaint offered no "factual context suggesting agreement, as distinct from identical, independent action." *Twombly* at 548-549. A Sherman Act § 1 claim requires a "contract, combination . . ., or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. The *Twombly* complaint included allegations of actions by defendants (parallel conduct unfavorable to competition) which may have been a result of an agreement between defendants, or could have been the result of identical, independent action. The Supreme Court found that such ambiguity was insufficient to state a claim. *Twombly* at 556-557.

Plaintiff's TAC suffers no factual ambiguity. Like the pleading found to be sufficient in *In Re MTBE, supra,* 233 F.R.D. 133, 135, the TAC includes TSA in the term "Defendants" wherever it is used in the TAC, and also identifies TSA as one of the "Refiner/Supplier Defendants" who are referred to in factual allegations throughout the complaint. (Boone Decl., Ex. 1, TAC §§ 9, 10, 17, 19, 21, 53, 89, 90, 91, 92, 93, 94, 95(a).) Unlike *Twombly*, the TAC allegations create no ambiguity about whether TSA's actions state a claim on the legal theories set forth in Counts I-V.

The *Iqbal* case is also inapplicable here. As in *Twombly*, plaintiff's complaint in *Iqbal* created an ambiguity which rendered the pleading insufficient. In *Iqbal* the plaintiff claimed a violation of his constitutional rights because agents of the federal

4

government purposely targeted him for certain treatment based on his race and religion. The Supreme Court found the government's actions described in the complaint could just as easily be explained as normal law enforcement activities in response to the terrorist attacks on September 11, 2001, and that plaintiff's allegations were bare conclusions without facts to show that purposeful targeting was a more plausible explanation than normal activities. *Iqbal* at 680-682.

There is no *Iqbal* ambiguity in the TAC. There is no "alternative explanation" for TSA's activities as alleged in the TAC. The TAC includes all activities alleged against "Defendants" and "Refiner/Supplier Defendants," and gives TSA (and all other defendants) sufficient notice of the Commonwealth's claims.

## II.  The TAC Properly Alleges Personal Jurisdiction Over TSA.

The linchpin of TSA's 12(b)(2) argument is that TSA is merely a "holding company," which has never had any contacts with Puerto Rico. These claims are refuted by the pleadings in the TAC and by the evidence submitted with this opposition (Declaration of Daniel Boone and exhibits thereto).

The TAC pleads many "contacts" between TSA and Puerto Rico. Because each reference in the TAC to "Defendants" or "Refiner/Supplier Defendants" is a reference to TSA (via TAC §§ 19 and 21), the TAC pleads that TSA supplied gasoline containing MTBE within the Commonwealth (§ 10), supplied gasoline containing MTBE that contaminated waters of the Commonwealth (§ 17), created, participated in and/or facilitated the flow of gasoline containing MTBE into gasoline distribution, storage, and dispensing systems in the Commonwealth (§ 93), and sold, exchanged, supplied, distributed, delivered and/or otherwise provided gasoline containing MTBE to retail gasoline stations and/or other gasoline delivery systems in the Commonwealth (§ 95(a)).

5

The contacts described in TAC § 95(a) are alleged to have occurred over time, up to and including the present, indicating multiple contacts, not one isolated incident. These allegations, taken together, describe contacts between TSA and the Commonwealth sufficient to establish this Court's jurisdiction over TSA.

### A. TSA's Actions Are Not Those Of A "Holding Company."

Although TSA's Memo describes TSA as a "holding company" on no less than 16 occasions, TSA's actions, including its actions in Puerto Rico, are not those of a "holding company." TSA, moreover, does not describe itself as a "holding company" on its corporate website,[3] in its meeting notices, or in its filings with the United States Securities and Exchange Commission (SEC). On its corporate website, TSA describes itself as follows:

> Total is leveraging its **integrated business model** to take advantage of synergies among its various activities worldwide. These activities are divided into **three businesses**. Our **Upstream** business encompasses oil exploration and production, together with activities related to natural gas. Our **Refining & Chemicals** includes refining, petrochemicals, speciality chemicals, crude oil trading and shipping. Our **Marketing & Services** business is focused on the supply and sale of petroleum products, together with activities related to renewable energy.[4]

(Boone Decl., Ex. 2 at 1.)

TSA provides a similar description in its 2005 meeting notice (Boone Decl., Ex. 3 at 24). TSA itself produced this meeting notice, *not* the "Total Group" of companies as alleged by TSA (Memo at 9 – see Boone Decl., Ex. 3 at 2). This meeting notice also describes TSA's investment in Puerto Rico (Boone Decl., Ex. 3 at 26).

In its filings with the SEC, TSA has a central index key (CIK), number of 0000879764. TSA under this CIK submitted filings to the SEC describing itself to the SEC, investors, and the public as follows:

---

[3] http://www.total.com/en/home-page-940596.html
[4] http://www.total.com/en/about-total/businesses-940531.html

6

> Total is the fourth largest oil and gas company in the world with *operations* in more than 130 countries. *Total's activities* cover the whole energy chain of the petroleum industry: exploration, oil and gas production, refining and marketing, trading and power generation . . . Total has more than 110,000 employees worldwide . . .

(Boone Decl., Ex. 4 *Report of Foreign Private Issuer*, November 18, 2004, SEC Accession #0000950123-04-013852, Form 6-K, at Ex. 99.4) (emphases added); and,

> Total S.A., a French société anonyme (limited company) incorporated in France on March 28, 1924, together with its subsidiaries and affiliates, is the fifth largest publicly-traded ***integrated international oil and gas company in the world*** . . . with operations in more than 130 countries, TOTAL has ***activities in every sector of the oil industry***: in the upstream (oil and gas exploration, development and production, liquefied natural gas) and downstream (refining, petrochemicals, specialty chemicals, marketing, and the trading and shipping of crude oil and petroleum products) . . . the Company has grown and expanded its operations worldwide . . . the Company's corporate name is Total, S.A.

(Boone Decl., Ex. 5, Form 20-F of *Annual and transition report of foreign private issuers*, filed March 26, 2012, SEC Accession # 0001193125-12-131662, at pp. 10-11, Item 4) (*emphasis added*). TSA's actions in Puerto Rico, as described in more detail below, are consistent with TSA's description of itself in SEC filings as an "integrated company" (not a "holding company") in which the parent participates directly in the business of its subsidiaries.

### B. TSA's Activities in Puerto Rico.

TSA asserts that it "had (and has) no involvement in operating activities such as the refining, marketing, and supplying of gasoline in and/or to the Commonwealth . . . and no presence whatsoever in Puerto Rico." (Memo at 1). This assertion, however, is contradicted by evidence, including TSA's own documents, showing that TSA was actively involved in the Puerto Rico gasoline market.

TSA, for example, provided the following report to the SEC:

7

> Total has finalized an agreement to acquire one hundred service stations on the island of Puerto Rico. The GPR[5]- and CITGO-branded retail outlets are *spread widely across this island and they will be branded in the Total colours by the end of 2005.* With this agreement Total has *acquired 6% of the retail market.* This acquisition reinforces Total's development strategy in the Caribbean, an area of rapidly growing consumption. In spring 2004, Total set up a distribution network in Jamaica, an addition to its presence in the French Caribbean islands.

(Boone Decl., Ex. 4 *Report of Foreign Private Issuer*, November 18, 2004, SEC Accession #0000950123-04-013852, Form 6-K, Ex. 99.4) (*emphasis added*).

The 2001-2002 financial statement of Gasolinas de Puerto Rico (GPR), prepared by independent auditor KPMG, states that GPR was "affiliated with a group of companies engaged in the wholesale distribution of petroleum products." In 2004 GPR became Total Petroleum Puerto Rico Corp. ("TPPRC"). (Boone Decl., Ex. 6 at 4.) The officers and board of directors of TPPRC were employees of TSA or its wholly owned subsidiaries. (Boone Decl., Ex. 7.) The TPPRC financial statement for 2005 states:

> The Parent Company[6] also owns many other subsidiaries around the world. This group of companies is mainly engaged in the exploration, production and distribution of petroleum products (gasoline, diesel and lubricants). The Company has transactions with its affiliates . . . The Company also shares certain administrative personnel with its affiliates. On September 30, 2005, the Parent Company formalized an agreement with the Company in which the Parent Company accepted to convert $10,000,000 of $22,501,019 advances made to the Company during 2004 into new issues of capital and the remainder into a loan. The purpose of the loan is to finance the acquisition of assets by the Company.

(Boone Decl., Ex. 6 at 5).

In TPPRC's 2006-2007 financial statement, the independent auditor noted:

During the year 2007, *Total France*, the ultimate parent company of the Parent Company, charged the Company $188,395 mainly for services related with computer technology and telecommunications. In 2006, *Total France*, the ultimate parent company of the Parent Company, charged the Company $444,766 for the implementation of several information systems and $51,575 for other expenses.

---

[5] Gasolinas de Puerto Rico
[6] The "Parent Company" reference here is to Total Outre Mer (TOM), a TSA subsidiary who has also filed a motion to dismiss.

8

(Boone Decl. Ex. 8, at 10) (*emphasis added*). The Herbel Declaration, filed in support of Total S.A.'s Motion, states: "I am generally familiar with the corporate structure of the 'Total Group' of companies, of which Total is the ultimate corporate parent." Herbel Decl., ¶ 2. The reference in the "ultimate parent company of the Parent Company" in TPPRC's financial statements is plainly to Total S.A., headquartered in France.

With the direct support of TSA and TOM, TPPRC was able to acquire "certain Esso Standard Oil Company Assets" in Puerto Rico in 2008. (Boone Decl., Ex. 9 at 6.)

On May 29, 2012, TPPRC provided plaintiff with long-delayed discovery responses. Among the documents provided were Bates # TPPRC.SUPPLY_000413, 000420, 000421-23, 000451-57, 000460, 000462, 000463, 000469, 000480-81. Boone Decl., Exs. 10-11. Several of these documents reveal that TSA had a direct role in the acquisition of GPR and actively directed TPPRC to change station signage as quickly as possible to the Total brand.

It is important to note, when reviewing these documents, that TPPRC is described variously as "Total Puerto Rico," "TPR," or "TPPR." Total Outre Mer is described as "TOM." TSA is described as "Total" or the "ultimate corporate parent" of TOM and TPPRC. Herbel Decl., ¶ 2. TSA acted to displace CITGO at the GPR stations that TSA acquired:

> Branded and Unbranded stations branded as CITGO Stations will purchase products at the prices set out above for CITGO Branded Stations. ***GPR branded stations whose CITGO signage has been covered or removed and stations converted to the Total brand will purchase products at the prices as you have required*** by the termination of trademark use authorizations, ***TPR will proceed to rebrand all of the CITGO Branded Stations in the shortest possible time*** . . . seems that CITGO Puerto Rico want to squeeze Total, and with the price they gave us during last week we were out of the market and we will be out for a couple of weeks if we don't find a solution as soon as possible.

Boone Decl., Ex. 11; TPPRC_SUPPLY_000422 (*emphasis added*).

9

Emails between staff of GPR and Peerless describe a "price formula for sales to Total . . . on pricing days that Total would like" if volumes are guaranteed and stating that "you know our contract is for 91 octane however I have agreed to make 93 available to accommodate Total," which indicate that Total purchased gasoline for distribution in Puerto Rico (Boone Decl., Ex. 10, TPPRC_SUPPLY_000457). Another email between GPR and Peerless staff indicate that Total does not want "to bear the full brunt" of pricing difficulties, and Peerless' response that the formula cannot be changed until "there is a commitment from Total in buying minimum amounts per day (Ex. 3000 bbls of Regular)." (Boone Decl., Ex. 10, TPPRC_SUPPLY_000460, 462).

Although TSA attempts to down-play the importance of the November 1, 2004, email from Philippe Corsaletti, Phillipe Corsaletti's email address was "total.com" (not GPR.com or TPPRC.com) and includes an attached email from Julien Maumont, who Mr. Herbel admits to be an employee of TSA. Herbel Decl., ¶ 21.a.[7] Although Mr. Herbel states that a record search did not reveal Mr. Corsalleti to be an employee of TSA, Mr. Maumont, an admitted TSA employee, obviously knows Mr. Corsaletti and states in his email that Mr. Corsalleti is "representing" TPPRC in the transaction. Although Mr. Maumont's email contains a disclaimer about TSA, it is plain that the seller of the gasoline shipment is seeking assurance that TSA is involved with and aware of the transaction, and Mr. Maumont confirms TSA awareness of the transaction. This level of involvement in and knowledge of the transactions of a subsidiary is not consistent with TSA 's description of itself as a mere "holding company." This email indicates that TSA

---

[7] Mr. Corsaletti's email address subsequently changed and he became an executive with TPPRC. See Boone Decl., Ex. 10.

was involved in business negotiations with Peerless Oil to supply TSA's new subsidiary in Puerto Rico. (Boone Decl., Ex. 10, TPPRC_SUPPLY_000469).

The October 2004 emails between Peerless and Mr. Corsaletti (at the "total.com" email address) show that TSA was involved in negotiating a contract agreement with Peerless. (Boone Decl., Ex. 10, TPPRC_SUPPLY_000480-81) Those emails included the following:

> Please find attached the latest draft version (Oct. 26, 2004) with some of the revised changes proposed by Total . . . Peerless will pass any discount provided by Trammo as negotiated between Trammo and ***Total France*** . .

(Boone Decl., Ex. 10, TPPRC_SUPPLY_000480-81(emphasis added). Although Mr. Herbel asserts that "Total France" was a subsidiary or TSA and is now known as "Total Raffinage Marketing S.A." he does not state that Phillipe Corsalleti was an employee of Total France or explain why Mr. Corsalleti, who was directly participating in the negotiation, had a "total.com" email address. Mr. Herbel also states, rather confusingly, that "Total Outre Mer, S.A., a separate and independent company, owned TPPRC prior to Raffinage Marketing.: Herbel Decl., ¶ 16.

The emails are between Luis Vázquez of Peerless, Irwin Flashman, and Philippe Corsaletti (email address "total.com") involve shipments of gasoline into Puerto Rico at the same time that TPPRC, with financing and assistance from its "ultimate corporate parent" was acquiring gasoline stations in Puerto Rico and branding them with the "Total" brand. The email is entitled, "guide to changes in Peerless Total Supply Contract." At no point in the email is TPPRC mentioned. There are references, however, to "Total" and "Total France."[8] TPPRC's own independent auditor, KPMG,

---

[8] On April 9, 2010, TSA's subsidiary TPPRC, one of the originally named defendants in this case, filed a corporate disclosure statement in this Court stating that it was a "wholly owned subsidiary of Total Outre Mer, SA which in turn is a direct wholly owned

11

also refers to "Total France," as the ultimate parent company of the parent company" (Boone Decl., Ex. 8 at 10) and Mr. Herbel concedes that TSA is the "ultimate parent corporation" of the Total Group. Herbel Decl. ¶ 2.

Compared to the pleadings in the TAC and the evidence submitted with this opposition, the assertions in the declaration of Peter Herbel are skeletal and do not fully address TSA's actual activities in Puerto Rico. In addition, Mr. Herbel carefully qualifies his assertions by stating that he has personal knowledge only from January 2007 to the present so his declaration does not address or refute any of plaintiff's pleadings or evidence showing contacts and actions in Puerto Rico before 2007.[9] Even if Mr. Herbel's declaration were sufficient to create disputed issues of fact, on this Rule 12 motion the Court must assume that plaintiff's facts are true, and any factual dispute must be resolved in the pleader's favor. *A.I. Trade Finance, supra,* 989 F. 2d at 79-80 and *Pervasive Software Inc. v. Lexware GmbH &Co. supra,* 688 F.3d at 219-220.

### III.  Holding TSA as a Defendant is Not Unreasonable.

TSA asserts that even if plaintiff's pleadings and evidence establish minimum contacts (they do), this Court should still dismiss the complaint against TSA because the exercise of jurisdiction would be "unreasonable." Memo at 20. TSA's "unreasonable"

---

subsidiary of Total SA and that no publicly held corporation owns 10% of its stock." (Boone Decl., Ex. 12 at ¶ 2). On October 15, 2012, several months after plaintiff began insisting upon receiving the Purchase Sale Agreement of GPR assets pursuant to plaintiff's discovery requests, TPPRC filed a revised corporate disclosure statement with this Court. This new disclosure stated that TPPRC is a wholly owned subsidiary of Total Raffinage Marketing. (Boone Decl., Ex. 13 at ¶ 4). TPPRC's corporate disclosure statement does not disclose that Total Raffinage is also a wholly owned subsidiary of TSA. (*Id.*)

[9] In submitting a request for an extension of time to respond to the TAC, TSA made clear its intent to file a motion to dismiss, regardless of the evidence provided by plaintiff. Nevertheless, plaintiff provided additional evidence to defendant on April 17, 2013, responding to defendant's April 10, 2013 letter, and supporting plaintiff's allegations against TSA (Boone Decl., Ex. 14).

claim asserts three points: litigation will "burden" TSA; the Commonwealth does not "need" TSA in the litigation; and TSA is a "French company" with no contacts with Puerto Rico. None of these points is true.

While litigation makes demands on any defendant, there is no "unreasonable" burden here for TSA. As shown by the evidence presented in support of this opposition, TSA has held itself out to the world as the "fifth largest publicly-traded integrated international oil and gas company in the world… with operations in more than 130 countries…." Boone Decl, Ex. 5, pp. 10-11. TSA's complaint that it must immediately absorb years of discovery and proceedings in a complex case pending far from its place of business is not consistent with the facts. As TSA itself points out, its wholly-owned subsidiary, TPPRC, has been a defendant in this action from the first, so TSA can hardly be oblivious to the discovery and proceedings in the action so far. Further, the case is not pending thousands of miles from TSA's place of business, because as TSA itself asserts, it is a world-wide company with operations in more than 130 countries.

TSA's assertion that the Commonwealth does not "need" TSA in this lawsuit because there are plenty of other defendants, including TPPRC, should be rejected. No one, including TSA, can predict the future regarding how many of those defendants, including TPPRC, will remain in this action and eventually go to trial. The Commonwealth has every right, at this stage of the proceedings, to name and hold in every defendant against whom the Commonwealth can plausibly state a claim, which it has done against TSA.

TSA's assertion that it is "unreasonable" to hold in a "French company" with no contacts to Puerto Rico has already been shown, hereinabove and in the accompanying evidence, to be unfounded. TSA may be a "French company," but the pleadings and

13

evidence show that TSA has had numerous substantial contacts with Puerto Rico, and that this "French company" is the fifth largest oil company in the world with operations far beyond France.

None of the "unreasonableness" grounds asserted by TSA withstands scrutiny. None provides a basis for dismissing the complaint against TSA.

### IV.   The Court Should Grant Jurisdictional Discovery if Necessary.

Plaintiff's pleadings in the TAC and plaintiff's evidence submitted in support of this opposition demonstrate TSA's contacts with Puerto Rico that go far beyond speculations or hopes as referred to in TSA's memorandum. Memo at 22. If anything, TSA's moving papers and this opposition have exposed the fact that TSA appears to have engaged in the common corporate "shell game," trying to create confusion between and among its many corporate entities, possibly as a means of warding off legal action like the present lawsuit. To the extent that the declaration of Peter Herbel disputes plaintiff's pleadings and evidence (but only regarding matters 2007 and later, the scope of Mr. Herbel's personal knowledge), those factual disputes can and should be resolved by limited, well-defined jurisdictional discovery. TSA's strong push against jurisdictional discovery may be interpreted as an attempt to prevent plaintiff from discovering even more facts and evidence, beyond those already pled and presented in support of this opposition, which would bring to light even more contacts by TSA with Puerto Rico.

## CONCLUSION

For the foregoing reasons, TSA's Motion to Dismiss should be denied.

Dated this 8th day of May, 2013.

Respectfully submitted,

*[signature]*
for Michael Axline
Miller, Axline & Sawyer
1050 Fulton Avenue, Suite 100
Sacramento, California  95825

John K. Dema
Law Offices of John K. Dema, P.C.
1236 Strand Street, Suite 103
Christiansted, St. Croix
U.S. Virgin Islands  00820-5008

Orlando H. Martinez
Orlando H. Martinez Law Offices
Centro de Seguros, Suite 413
701 Ponce de Leon Avenue
San Juan, Puerto Rico  00907

15