UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation | Master File No. 1:00 – 1898 MDL 1358 (SAS) M21-88 |
| This relates to: | Civil Action |
| Commonwealth of Puerto Rico, *et al.* v. Shell Oil Company, *et al.*, No. 07 Civ. 10470 | |

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
BY DEFENDANT TOTAL OUTRE MER, S.A.

# **TABLE OF CONTENTS**

**Page**

Table of Authorities .................................................................. ii

INTRODUCTION & SUMMARY OF ARGUMENT ................................ 1

APPLICABLE LAW .................................................................. 1

I.    The Third Amended Complaint (TAC) Properly Alleges a Claim Against TOM ..... 3

II.   TOM'S Rule 12(b)(2) Motion Ignores the Pleadings in the TAC and Evidence Contradicting TOM's Assertions .................................................. 5

    A.    The TAC Pleads Facts Sufficient to Establish Personal Jurisdiction ........ 5

    B.    TOM's Activities in Puerto Rico ............................................. 6

    C.    TOM'S Declaration from Mr. Christophe Jacquet is Irrelevant ............ 13

III.  Maintaining Personal Jurisdiction Over TOM is Not Unreasonable .............. 14

IV.  The Court Should Grant Jurisdictional Discovery if Necessary ................. 15

CONCLUSION ...................................................................... 16

## TABLE OF AUTHORITIES

**CASES**   **PAGE**

*A.I. Trade Finance, Inc. v. Petra Bank*
989 F. 2d 76 (2d. Cir. 1993) .................................................. 2, 14

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) .......................................................... 1, 4, 5

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007) .......................................................... 1, 2, 4

*Conley v. Gibson*
355 U.S.41 (1957) ................................................................ 2

*Freudensprung v. Offshore Technical Servs., Inc.*
379 F.3d 327 (5th Cir. 2004). ................................................... 3

*ICOM Holding, Inc. v. MCI Worldcom, Inc.*
238 F.3d 219 (2d Cir. 2001) ..................................................... 1

*In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*
175 F. Supp. 2d 593 (S.D.N.Y. 2001) ........................................... 1

*In re MTBE Prods. Liab. Litig.*
233 F.R.D. 133 (S.D.N.Y. (2005) ........................................... 1, 3, 4

*International Shoe Co. v. Washington*
326 U.S. 310, 66 S. Ct. 154, 90 L.Ed. 95 ........................................ 2

*Pennoyer v. Neff*
95 U.S. 714, 24 L.Ed 565 ........................................................ 2

*Pervasive Software Inc. v. Lexware GmbH &Co.*
688 F.3d 214, 219-220 (5th Cir. 2012) ....................................... 2, 14

*Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*
748 F.2d 774 (2d Cir. 1984) ..................................................... 1

*Sims v. Artuz*
230 F.3d 14 (2d Cir. 2000) ....................................................... 1

*World-Wide Volkswagen Corp. v. Woodson*
444 U.S. 286 (1980) .............................................................. 2

## STATUTES

15 U.S.C. § 1 ...................................................................... 4

## COURT RULES

Fed.R.Civ.P. 8(a)(2 ............................................................ 1, 2

**INTRODUCTION & SUMMARY OF ARGUMENT**

Total Outre Mer's ("TOM's") motion to dismiss is without merit and should be denied. The motion and supporting memorandum: (1) incorrectly invoke *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (*Twombly*) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (*Iqbal*) in an attempt to avoid this Court's ruling in *In re MTBE Prods. Liab. Litig.* 233 F.R.D. 133, 135 (S.D.N.Y. (2005)); (2) ignore the fact that TOM transacted business in Puerto Rico and established minimum contacts sufficient for this Court to exercise personal jurisdiction over TOM; (3) improperly and incorrectly assert that it would be "unduly onerous to drag" TOM into this Court and hence it should not exercise personal jurisdiction over TOM due to the "burdensome" effect on TOM; (4) mischaracterize the relationship between TOM and Total Petroleum Puerto Rico Corporation (TPPRC); and (5) rely on disputed fact assertions that are improper in a 12(b)(6) motion.

**APPLICABLE LAW**

When considering motions to dismiss the Court must accept as true all material facts alleged in the complaint and draw all reasonable inferences in plaintiff's favor. *In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 175 F. Supp. 2d 593, 599, 605 (S.D.N.Y. 2001) (citing *ICOM Holding, Inc. v. MCI Worldcom, Inc.*, 238 F.3d 219, 221 (2d Cir. 2001)). The Court's role is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000)(quoting *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (internal quotation marks omitted)). In ruling on the sufficiency of pleadings under Fed. R. Civ. P. 8, the Supreme Court has noted the "simple guide

1

of Rule 8(f) that 'all pleadings shall be so construed as to do substantial justice,'" and "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson,* 355 U.S.41, 48 (1957) (abrogated on other grounds by *Bell Atlantic Corp. v. Twombly,* 550 U.S.544 (2007). Pursuant to Fed.R.Civ.P. 8(a)(2), plaintiff need only provide a short plain statement of the claim showing that it is entitled to relief.[1]

In response to increased global commerce, the requirements for exercising personal jurisdiction "over nonresidents have evolved from the rigid rule of *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed 565, to the flexible standard of *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S. Ct. 154, 90 L.Ed. 95." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 294 (1980). State courts may exercise personal jurisdiction over nonresident defendants, as long as there are "minimum contacts" between defendant and the forum state. *Id.* at 291. When the issue of personal jurisdiction is addressed in a Rule 12(b)(2) motion based on the submission of affidavits or declarations, "all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." *A.I. Trade Finance, Inc. v. Petra Bank,* 989 F. 2d 76, 79-80 (2d. Cir. 1993).

A plaintiff opposing a Rule 12(b)(2) motion need only present prima facie evidence to meet its burden. *Pervasive Software Inc. v. Lexware GmbH & Co.,* 688 F. 3d 214, 219-220 (5th Cir. 2012). The court "must accept as true [the Plaintiff's] uncontroverted allegations and

---

[1] If the Court requires a more definite statement of claims against TOM, plaintiffs request leave to provide such a statement pursuant to Rule 8(a)(2), which would include additional facts as set forth below and in the exhibits which accompany this opposition.

2

resolve in [plaintiff's] favor all conflicts between the [jurisdictional] facts contained in the parties' affidavits and other documentation." *Id.* (quoting *Freudensprung v. Offshore Technical Servs., Inc.* 379 F.3d 327, 343 (5th Cir. 2004)).

## I. The Third Amended Complaint (TAC) Properly Alleges A Claim Against TOM

The essence of TOM's 12(b)(6) argument is that the TAC does not plead sufficient facts to inform TOM of its alleged wrongdoing. (Memo at 20-25).[2] To support this argument, TOM asserts that the TAC "only adds two allegations" to the previous complaint to account for TOM, one regarding TOM's headquarters and the second that TPPRC is TOM's "wholly owned Puerto Rico subsidiary." (Memo at 1).

TOM's 12(b)(6) argument is refuted by the TAC itself. Like the pleading this Court found to be sufficient in *In re MTBE Prods. Liab. Litig., supra,* 233 F.R.D. at 135, the TAC states, "[w]hen the term 'Defendants' is used alone, it refers to all Defendants named herein jointly and severally." (Boone Decl., Ex. 1, TAC §19) The TAC also specifically identifies TOM as a Refiner/Supplier Defendant. (Boone Decl., Ex. 1, TAC §§ 21 and 52.) Every time the term "Defendants" or "Refiner/Supplier Defendants" are used in the TAC, the facts pled about those defendants are pled about TOM. Facts regarding "Defendants" and the "Refiner/Supplier Defendants" are pled in TAC ¶¶ 89, 90, 91, 92, 93, 94, 95(a) and in Counts I-V for strict products liability, public nuisance, trespass, negligence and violation of plaintiff's environmental statutes and regulations. Each of these five Counts is pled against "All Defendants" and each Count contains factual allegations of the wrongdoing by defendants, including TOM. TOM's claim that

---

[2] All references to "Memo" are to the Memorandum of Law filed by TOM in support of its motion.

3

the TAC does not plead facts is itself conclusory and does not address or mention in any way the facts pled against TOM in the paragraphs of the TAC identified above.

TOM attempts to argue around this Court's ruling in *In Re MTBE, supra,* 233 F.R.D. at 135, by asserting that two subsequent Supreme Court decisions, *Twombly, supra,* 550 U.S. 544 and *Iqbal, supra,* 556 U.S. 662, effectively overruled this Court's *In Re MTE* decision. (Memo at 19-20). Neither *Twombly* nor *Iqbal* however, changed the law as applied by this Court in *In Re MTBE*.

In *Twombly*, the Court held that a complaint attempting to state a claim under §1 of the Sherman Act should be dismissed where the complaint offered no "factual context suggesting agreement, as distinct from identical, independent action." *Twombly* at 548-549. A Sherman Act § 1 claim requires a "contract, combination . . ., or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. The *Twombly* complaint included allegations of actions by defendants (parallel conduct unfavorable to competition) which may have been a result of an agreement between defendants, or could have been the result of identical, independent action. The Supreme Court found that such ambiguity was insufficient to state a claim. *Twombly* at 556-557.

Plaintiff's TAC suffers no factual ambiguity. Like the pleading found to be sufficient in *In Re MTBE, supra,* 233 F.R.D. 133, 135, the TAC includes TOM in the term "Defendants" wherever it is used in the TAC, and also identifies TOM as one of the "Refiner/Supplier Defendants" who are referred to in factual allegations throughout the complaint. (Boone Decl., Ex. 1, TAC §§ 9, 10, 17, 19, 21, 52, 89, 90, 91, 92, 93, 94, 95(a).) Unlike *Twombly*, the TAC allegations create no ambiguity about whether TOM's actions state a claim on the legal theories set forth in Counts I-V.

4

The *Iqbal* case is also inapplicable here. As in *Twombly*, plaintiff's complaint in *Iqbal* created an ambiguity which rendered the pleading insufficient. In *Iqbal* the plaintiff claimed a violation of his constitutional rights because agents of the federal government purposely targeted him for certain treatment based on his race and religion. The Supreme Court found the government's actions described in the complaint could just as easily be explained as normal law enforcement activities in response to the terrorist attacks on September 11, 2001, and that plaintiff's allegations were bare conclusions without facts to show that purposeful targeting was a more plausible explanation than normal activities. *Iqbal* at 680-682.

There is no *Iqbal* ambiguity in the TAC. There is no "alternative explanation" for TOM's activities as alleged in the TAC. The TAC includes all activities alleged against "Defendants" and "Refiner/Supplier Defendants," and gives TOM (and all other defendants) sufficient notice of the Commonwealth's claims.

## II. TOM's RULE 12(b)(2) MOTION IGNORES THE PLEADINGS IN THE TAC AND EVIDENCE CONTRADICTING TOM'S ASSERTIONS.

The linchpin of TOM's 12(b)(2) argument is that TOM's "involv[ment] in pre-acquisition due diligence" (even if requiring multiple contacts in Puerto Rico) and status as the parent company of TPPRC are insufficient, standing alone, to establish a basis for this Court to exercise personal jurisdiction. This argument is refuted both by the pleadings in the TAC and by the evidence submitted with this opposition (Declaration of Daniel Boone and exhibits thereto).

### A. The TAC Pleads Facts Sufficient to Establish Personal Jurisdiction

The TAC pleads numerous "contacts" between TOM and Puerto Rico. Because each reference in the TAC to "Defendants" or "Refiner/Supplier Defendants" is a reference to TOM

5

(via TAC §§ 19 and 21), the TAC pleads that TOM supplied gasoline containing MTBE within the Commonwealth (§ 10), supplied gasoline containing MTBE that contaminated waters of the Commonwealth (§ 17), created, participated in and/or facilitated the flow of gasoline containing MTBE into gasoline distribution, storage, and dispensing systems in the Commonwealth (§ 93), and sold, exchanged, supplied, distributed, delivered and/or otherwise provided gasoline containing MTBE to retail gasoline stations and/or other gasoline delivery systems in the Commonwealth (§ 95(a)).

The contacts described in TAC § 95(a) are alleged to have occurred over time, up to and including the present, indicating multiple contacts, not just one or two isolated incidents. These allegations, taken together, describe contacts between TOM and the Commonwealth that are more than sufficient to establish this Court's jurisdiction over TOM. As explained below, these allegations are based upon extensive evidence.

### B. TOM's Activities in Puerto Rico

Although TOM asserts that it "never" refined oil into gasoline "in any U.S. jurisdiction," never maintained any gasoline storage facility in PR, never owned gasoline stations, never owned underground storage tanks (USTs) and never supplied gasoline to Puerto Rico (Memo at 5), TOM's own documents contradict these assertions and demonstrate that TOM was actively involved in the Puerto Rico gasoline market.

On March 22, 2013, Plaintiff received long-delayed discovery responses from TPPRC. Among the documents provided were [Redacted] [Redacted] [Redacted]

6

| Redacted | (Boone Decl. Ex. 2, Bates # TPPRC.GENERAL_

000667- 000676).³

TOM, represented by Mr. Christian Chammas, | Redacted |

| Redacted |

| Redacted |.⁴ (Boone Decl. Ex. 2, Bates # TPPRC.GENERAL_ 000667).

As TOM admits, TOM did consummate the purchase of these Sellers' properties and assets. (Memo at 2). TOM's purchase was memorialized in a | REDACTED |

| REDACTED |

| REDACTED | (Boone Decl. Ex. 3, Bates # TPPRC.GENERAL_000677). That agreement states, in pertinent part:

| REDACTED |

(Boone Decl., Ex. 3, Bates #TPPRC.GENERAL_000734.) TOM is | |

| |. (Boone Decl., Ex. 3, Bates #TPPRC.GENERAL_000735.) By entering into this agreement, TOM was availing itself of the protection of the laws of the

---

³ TPPRC's tardy discovery responses did not include correspondence from TOM's representative Christian Chammas to GPR, CGD, and Sunshine. The omission of these responses is telling in light of the disputed fact as to where these negotiations and the ultimate execution of the purchase and sale agreement occurred. As requested below, if the Court is considering granting TOM's motion plaintiff should be allowed to conduct discovery in aid of establishing personal jurisdiction.

⁴ TPPRC did not produce a copy of the original | Redacted | that this document references. This is another missing document warranting jurisdictional discovery from TOM.

7

Commonwealth of Puerto Rico, and submitting itself to the jurisdiction of the Commonwealth.

Although TOM asserts that the agreement was "executed" in October of 2004, in fact the agreement was signed on [ ] (Boone Decl. Ex. 3, Bates # TPPRC. GENERAL _000735). The [ ] states that REDACTED (Boone Decl. Ex. 3, Bates # TPPRC.GENERAL _000679).

If by the term Redacted TOM refers to the [ ] of the transaction, Redacted Redacted Redacted In addition, the correspondence provided by TOM in discovery that memorialize the [ ] negotiations came from Miami, Florida, and discuss Redacted (Boone Decl. Ex. 2, Bates # TPPRC.GENERAL_ 000667). Hence, Plaintiff disputes that the parties to the [ ] physically Redacted the agreement Redacted and TPPRC did not provide an un-redacted Escrow Agreement which could shed light on this dispute.[5] (Memo at 2; Jacquet Decl. ¶ 11).

The declaration of Mr. Christophe Jacquet filed in support of TOM's motion does nothing to refute TOM's role in the 2004 transaction.[6] The declaration does not declare that Mr. Jacquet was employed by TPPRC or its parent, TOM, prior to August 11, 2010, and the evidence shows that he was not included in any of the relevant correspondence regarding the transaction, and was not a signatory of the [ ]. Mr. Jacquet's declaration is not relevant to this matter. Mr. Jacquet cannot know of relevant events supporting Plaintiff's claim that this court has personal jurisdiction over TOM, as these events transpired before 2010. One such event is the [ ]

---

[5] This is another missing document warranting jurisdictional discovery from TOM.
[6] Please see Plaintiffs' Objections to the Declaration of Christophe Jacquet filed concurrently herewith.

8

transaction in 2004.

[REDACTED]

[REDACTED] (Boone Decl. Ex. 3, Bates # TPPRC.GENERAL_000682) (emphasis added).

[Redacted] of the [Redacted] is a [Redacted] executed in [Redacted] between [Redacted] and [Redacted] with TOM listed as [Redacted]. This document states:

[Redacted]

See (Boone Decl. Ex. 3, Bates # TPPRC.GENERAL_000736 – 000737) (emphasis added).

Plaintiff first became aware of TOM's role in the Puerto Rico petroleum market when TOM's subsidiary, TPPRC, in response to discovery, produced a copy of a letter from

9

Groundwater & Environmental Services (GES). (Boone Decl. Ex. 4, Bates # TPPRC.GENERAL _000147 – 000148). This letter was addressed to Mr. Christian Chammas of TOM, as well as to a TPPRC representative, Mr. Alvarez, and a bank representative. GES states that the letter is in reference to:

> Purchase and Sale Agreement for Stock and Assets by and between Máximo Alvarez and Sunshine Rentals Puerto Rico, Inc. as Sellers and Total Outre Mer S.A. as Purchaser, last dated September 16, 2004 Remediation Fund Notification of Estimated Costs of Environmental Remediation for Soil and Groundwater Contamination.

(Boone Decl. Ex. 4, Bates # TPPRC.GENERAL_000147.)

The GES letter states that GES was retained by TOM (purchaser) to:

> [P]erform Phase II environmental studies at selected service stations formerly owned by Sellers . . . to estimate the cost of the environmental remediation required to bring each of the stations so studied and selected for such estimation into compliance with applicable environmental requirements in existence or proposed . . . we herewith provide to you the attached CD ROM . . .

(Boone Decl. Ex. 4, Bates # TPPRC.GENERAL_000147.)

Another document indicates that Mr. Christian Chammas of TOM is a person "to whom remediation cost estimates are to be sent." (Boone Decl. Ex. 5, Bates # TPPRC.EMPL.WFILE _000144). These documents indicate that TOM itself was directly aware of potential contamination at the service stations that it was purchasing in Puerto Rico, and elected to execute the agreement with full knowledge of what it was acquiring.

The referenced [  ] and CD-ROM in the GES correspondence were not included in the May 29, 2012, production. Despite repeated requests from Plaintiff to TPPRC's counsel, by telephone, email and correspondence, Plaintiff did not receive a copy of the CD-ROM until

10

January 31, 2013 even though [Redacted] [Redacted] (Boone Decl. Ex. 6, Bates # TPPRC.CONSULTANTS_001342). Plaintiff did not receive a copy of the [Redacted] until March 22, 2013. Plaintiff's correspondence to TPPRC's counsel requesting these items are dated August 22, 2012, November 15, 2013, and January 9, 2013 (Boone Decl. Ex. 7)

In 2004, [Redacted] [Redacted] (Boone Decl. Ex. 8, Bates # TPPRC.SUPPLY_0000420). In a civil matter before the U.S. District Court for the District of Puerto Rico (*TPPRC v. Marisely Colon Colon* (Civil No. 08-1629 (FAB)), District Judge Besosa authored an opinion stating that:

> On November 18, 2004, Total sent a notice to *all retailers*, including M. Colon, announcing that all of **GPR's stock had been acquired by Total Outre Mer, S.A.** ("Total, S.A."), a wholly owned subsidiary of Total Group.

(Boone Decl. Ex. 9) (emphasis added)

These actions represent more than a few contacts in Puerto Rico and belies TOM's assertion that it was simply practicing "due diligence" in Puerto Rico.

TOM also is listed in what appears to be [Redacted] [Redacted] [Redacted] (Boone Decl. Ex. 10; Bates # TPPRC.GENERAL_001063-001064)

GPR, not TPPRC as Defendant alleges, was recognized by the Puerto Rico Secretary of State on March 20, 1992. (Boone Decl. Ex. 11) TOM purchased GPR on September 13, 2004. However, TOM did not notify the Puerto Rico government of the sales transaction and did not

11

file any paperwork regarding it with the Secretary of State until October 26, 2004, when **TOM** (not GPR) applied to change GPR's name to TPPRC. On April 27, 2005, a document attached to the 2004 TPPRC financial statement (dated December 31, 2004) lists the Board of Directors for TPPRC as including Mr. Christian Chammas, Mr. Alain Champeux, Mr. Francois De Ligniville, and Mr. Piere Fart, all employees of TOM. Of the 7 total directors, at least 4 were directly from TOM. (Boone Decl. Ex. 12). The business of the company that TOM had only recently purchased is described as involved in the:

> wholesale distribution of petroleum (mostly gasoline) products in Puerto Rico. Other revenue is mainly generated from leasing arrangements made with service station operators. Also, Total is currently selling petroleum products to government of P.R. agencies and to some municipalities.

(Boone Decl. Ex. 12, p. 5)

The 2004 financial statement was prepared by an independent auditor. (Boone Decl. Ex. 12, p. 1) The auditor noted the following:

> The Company recorded a liability for its existing legal obligation associated with the retirement of its underground tanks installed on company owned and leased premises . . . On September 29, 2004, the GPRC[7] made a capital distribution to its parent, CGD, in the amount of $1,536,000 . . . After the acquisition of Total of GPRC, Total acquired not only the shares of stock for GPRC for $11,500,000 which included all assets owned by GPRC, but also additional gas stations and rental equipment from a former affiliate of GPRC, Sunshine Rentals Puerto Rico, Inc. Worth $21,500,000 . . . An escrow deposit for $1,000,000 was provided by Total in an interest bearing account. . . **In addition to the purchase of the stock, Total Outre Mer, S.A. has provided non-interest bearing advances of $22,501,018. Total P.R. will begin payments of interest to Total Outre Mer, S.A. on January 1, 2005 . . . Total Outre Mer, S.A. decided to convert up $10,000,000 of the $22,501,018 loan into new issues of capital** . . . The purpose of the loan is to finance the acquisition of assets by Total Petroleum Puerto Rico Corp.

(Boone Decl., Ex. 12, pp. 7-8)(emphasis added)

---

[7] GPRC is the same as GPR referred to in this brief.

12

On the December 31, 2005, in the TPPRC "Report of the Independent Auditors" by Ernst & Young, LLP, which was submitted to the Puerto Rico Secretary of State in 2006, the auditor states:

> The Parent Company[8] also owns many other subsidiaries around the world . . . mainly engaged in the exploration, production and distribution of petroleum products (gasoline, diesel and lubricants). The Company has transactions with its affiliate, which include the purchase of lubricants, and the purchase of materials and fixtures to change the image of the gas stations. The Company also shares certain administrative personnel with its affiliates . . . On September 30, 2005, the Parent Company formalized an agreement with the Company in which the Parent Company accepted to convert $10,000,000 or $22,501,019 advances made to the Company during 2004 into new issues of capital and the remainder into a loan. The purpose of the loan is to finance the acquisition of assets by the Company.

(Boone Decl., Ex. 13, p. 5)

Thus, via TOM's provisions to TPPRC of: TOM's [Redacted]; TOM's officers and administrative personnel; and, TOM's loans and no-interest financing, TOM created by early 2005 a wholly owned subsidiary, TPPRC, loaded with debt and completely under TOM's administrative and financial control.

### C. TOM's Declaration from Mr. Christophe Jacquet is Irrelevant

Compared to the pleadings in the TAC and the evidence submitted with this opposition, the assertions in the declaration of Christophe Jacquet are skeletal and do not fully address TOM's actual activities in Puerto Rico.

As noted above, Mr. Jacquet was not employed with TPPRC prior to August 11, 2010, and never employed by TOM. Mr. Jacquet was not involved in the ☐ negotiations or in signing the document in 2004. Mr. Jacquet also does not have any employment experience or

---

[8] TOM.

13

personal knowledge of TOM's and TPPRC's activities in Puerto Rico in 2004. As 2004 is the time most relevant to the minimum contacts analysis, which is necessary for this Court to exercise personal jurisdiction over TOM, Mr. Jacquet's declaration is irrelevant and useless in this matter.

Even if Mr. Jacquet's declaration creates disputed issues of fact, on this Rule 12 motion the Court must assume that plaintiff's facts are true, and any factual dispute must be resolved in the pleader's favor. *A.I. Trade Finance, supra,* 989 F. 2d at 79-80 and *Pervasive Software Inc. v. Lexware GmbH &Co. supra,* 688 F.3d at 219-220.

### III. Maintaining Personal Jurisdiction Over TOM is Not Unreasonable.

TOM asserts that even if plaintiff's pleadings and evidence establish minimum contacts (they do), this Court should still dismiss the complaint against TOM because the exercise of jurisdiction would be "unreasonably burdensome" and "unduly onerous." (Memo at 18). TOM's claim of unreasonableness asserts these points: the allegations focus on "actions that are the exclusive providence of the local corporation," TPPRC; it is onerous to drag TOM officials or employees into a foreign jurisdiction as potential witnesses; the Commonwealth does not "need" TOM in the litigation as Plaintiff can seek remedies from TPPRC; and, TOM is a French company with no contacts with Puerto Rico. None of these points is true.

While litigation makes demands on any defendant, there is no "unreasonable" burden here for TOM. TOM is involved in petroleum markets worldwide, and has transactions with its "affiliates," which includes TPPRC, and TOM specifically shares administrative personnel with TPPRC. (Boone Decl., Ex. 13, p.5). TOM has purposefully availed itself of the Puerto Rico market, and cannot now be heard to complain that it is somehow unreasonable or unfair to hold it

14

to answer for the consequences of its commercial activities in Puerto Rico. Since TPPRC has been a defendant in this action from the filing of the complaint, TOM can hardly be oblivious to the discovery and proceedings in the action so far.

TOM's assertion that the Commonwealth does not "need" TOM in this lawsuit because there are plenty of other defendants, including TPPRC, should be rejected. As demonstrated in the financial statements submitted by TPPRC to the Puerto Rico Secretary of State, TOM is directly involved in financing the operations of TPPRC and it is not at all clear the TPPRC has the ability to satisfy an ultimate judgment in this case. In addition no one, including TOM, can predict the future regarding how many of those defendants, including TPPRC, will remain in this action and eventually go to trial. The Commonwealth has every right, at this stage of the proceedings, to name and hold in every defendant against whom the Commonwealth can plausibly state a claim, which it has done against TOM.

None of the "unreasonableness" grounds asserted by TOM withstands scrutiny. None provides a basis for dismissing the complaint against TOM.

### IV.     The Court Should Grant Jurisdictional Discovery if Necessary.

TOM's contacts with Puerto Rico are extensive. TOM's moving papers and this opposition reveal that TOM is engaged in the petroleum market in Puerto Rico and bases its Rule 12 motion on the carefully word-smithed, yet irrelevant, declaration of Christophe Jacquet. That declaration is, on its face, objectionable for lack of personal knowledge, and contradicted by the evidence plaintiffs have uncovered without even being able to conduct discovery against TOM. This opposition has identified several critical missing documents not produced by TPPRC. To

15

the extent the Court is uncertain about whether to simply deny TOM's motion, plaintiff respectfully requests an opportunity to conduct limited, well-defined jurisdictional discovery.

## CONCLUSION

For the foregoing reasons, TOM's Motion to Dismiss should be denied.

Dated this 10th day of May, 2013.

Respectfully submitted,

*for* _____
Michael Axline
Miller, Axline & Sawyer
1050 Fulton Avenue, Suite 100
Sacramento, California  95825

John K. Dema
Law Offices of John K. Dema, P.C.
1236 Strand Street, Suite 103
Christiansted, St. Croix
U.S. Virgin Islands  00820-5008

Orlando H. Martinez
Orlando H. Martinez Law Offices
Centro de Seguros, Suite 413
701 Ponce de Leon Avenue
San Juan, Puerto Rico  00907