UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In Re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

---

This Document Relates To:

*Commonwealth of Puerto Rico, et al. v.*
*Shell Oil Co., et al.*, No. 07 Civ. 10470

---

Master File No. 1:00 - 1898
MDL 1358 (SAS)
M21-88

Civil Action

**DECLARATION OF DANIEL BOONE IN SUPPORT OF PLAINTIFFS' OPPOSITION
TO MOTION TO DISMISS BY DEFENDANT TOTAL OUTRE-MER, S.A.**

I, Daniel Boone, declare:

1.     I am one of the attorneys in this case for plaintiffs Commonwealth of Puerto Rico and Commonwealth of Puerto Rico through the Environmental Quality Board.   I have been involved in the discovery and pretrial proceedings in this action.  This Declaration is based on my personal knowledge and, if called as a witness, I could testify competently thereto.

2.     Attached hereto as Exhibit 1 is a true and correct copy of relevant portions of the Third Amended Complaint filed in this action on December 3, 2012.

3.     Attached hereto as Exhibit 2 is a true and correct copy of ███████████████

██████████████████████

4.     Attached hereto as Exhibit 3 is a true and correct copy of ██████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████

5.     Attached hereto as Exhibit 4 is a true and correct copy of a letter dated February 16, 2005,  from Groundwater & Environmental Services to Total Outre Mer S.A., et al., Bates-stamped TPPRC.GENERAL_000147 – 000148.

6.     Attached hereto as Exhibit 5 is a true and correct copy of Persons to Whom Remediation Cost Estimates Are To Be Sent, Bates-stamped TPPRC.EMPL.WFILE_000144.

7.     Attached hereto as Exhibit 6 is a true and correct copy of ████████████

███████████████████████████████████████████

██████████████████

8.     Attached hereto as Exhibit 7 is a true and correct copy of letters dated August 22,

1

2012, November 15, 2012, and January 9, 2013, from Michael Axline to Elaine Maldonado.

9.      Attached hereto as Exhibit 8 is a true and correct copy of ████████

██████████████████████

10.     Attached hereto as Exhibit 9 is a true and correct copy of relevant excerpts of the

opinion of District Judge Besosa, dated September 30, 2011, U.S. District Court for the District

of Puerto Rico, in *TPPRC v. Marisely Colon Colon* (Civil No. 08-1629 (FAB)).

11.     Attached hereto as Exhibit 10 is a true and correct copy of ████████

████████████████████████████

12.     Attached hereto as Exhibit 11 are true and correct copies of the original Spanish

and Certified English translation of the Certified Certificate of Incorporation for Gasolines De

Puerto Rico Corporation dated February 23, 2001.

13.     Attached hereto as Exhibit 12 is a true and correct copy of relevant portions of

the TPPRC 2004 Financial Statement, and a certified English translation of one page thereof.

14.     Attached hereto as Exhibit 13 is a true and correct copy of relevant portions of the

TPPRC 2005 Financial Statement.

15.     Attached hereto as Exhibit 14 is a true and correct copy of a letter dated April 5,

2013, to Michael Axline from Elaine Maldonado and a letter dated April 15, 2013, to Elaine

Maldonado from Michael Axline.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 10th day of May, 2013, at Sacramento, California.

DANIEL BOONE

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

Master File No. 1:00–1898
MDL 1358 (SAS)
M21-88

---

COMMONWEALTH OF PUERTO
RICO and COMMONWEALTH OF
PUERTO RICO through the
ENVIRONMENTAL QUALITY
BOARD,

        Plaintiff,

v.

SHELL OIL COMPANY;
SHELL COMPANY PUERTO RICO LTD.;
SHELL CHEMICAL YABUCOA, INC.;
SHELL TRADING (US) COMPANY;
MOTIVA ENTREPRISES, LLC;
EQUILON ENTERPRISES, LLC;
CHEVRON CORPORATION;
CHEVRON, U.S.A., INC.;
CHEVRON PUERTO RICO, LLC;
TEXACO PUERTO RICO, INC.;
CHEVRON PHILLIPS;
CHEMICAL PUERTO RICO CORE, INC.;
TEXACO PETROLEUM, INC.;
CHEVRON INTERNATIONAL
OIL COMPANY, INC.;
TEXACO REFINING AND
MARKETING, INC.;
CHEVRON CARIBBEAN, INC.;
CHEVRON ESTRELLA PUERTO RICO, INC.;
ESSO STANDARD OIL COMPANY
(PUERTO RICO);
EXXONMOBIL CORPORATION;
HOVENSA L.L.C.;
HESS OIL VIRGIN ISLANDS
CORPORATION;
SUNOCO, INC.;

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**THIRD AMENDED
COMPLAINT**

Civil Action

Case No. 07 Civ. 10470 (SAS)

**JURY TRIAL DEMANDED**

9.     The Defendants in this action are all corporate members of the petroleum and chemical industries.  As described below, Defendants include refiners of gasoline containing MTBE; manufacturers and promoters of MTBE; suppliers of gasoline containing MTBE; and owners and operators of facilities that have released MTBE into the waters of the Commonwealth.

10.     In addition to producing and/or supplying MTBE or gasoline containing MTBE within the Commonwealth, Defendants knowingly and willfully promoted, marketed and sold MTBE and petroleum products containing MTBE, when they knew or reasonably should have known that MTBE would be released into the environment and pollute the waters of the Commonwealth, would interfere with the Commonwealth's interest in protecting and preserving the waters of the Commonwealth, and would threaten public health and welfare and the environment, as has occurred and is continuing to occur within the Commonwealth.

11.     In addition to seeking damages to fund the identification and treatment of MTBE contaminated waters used for public and private drinking water, the Commonwealth also seeks the costs of restoring MTBE contaminated waters of the Commonwealth to their original pre-discharge condition, and compensation for injuries to the waters of the Commonwealth, including compensation for the lost use, lost value, and lost existence value of such waters.  The Commonwealth further seeks an order compelling the Defendants to investigate their contamination, to abate the public nuisance the Defendants have caused with respect to the waters of the Commonwealth, and to prevent further releases from their leaking underground storage tanks, among other relief.

15.   The Commonwealth, through the Environmental Quality Board, has standing to enforce the Commonwealth's environmental regulations and statutes through The Public Policy Environmental Act, Title II, Act No. 9, 12 L.P.R.A. §1121 *et seq.*

16.   The Secretary of Justice may, when in his judgment the interests of the Commonwealth require it, institute and conduct proceedings against persons who intrude on the lands, rights, or property of the Commonwealth, or commit or erect any nuisance thereon.

## DEFENDANTS

17.   The Defendants in this action are all corporate members of the petroleum industry. As described below, Defendants include refiners of gasoline containing MTBE that contaminates waters of the Commonwealth; manufacturers and promoters of MTBE; suppliers of gasoline containing MTBE that contaminates waters of the Commonwealth; and owners and/or operators of gasoline facilities that have released MTBE that contaminates waters of the Commonwealth.

18.   Any and all references to Defendant, Defendants, or a particular Defendant by name in this Complaint include all predecessors, successors, parents, subsidiaries, affiliates, divisions, and agents of the named Defendants.

19.   When the term "Defendants" is used alone, it refers to all Defendants named herein jointly and severally.

20.   When reference in this complaint is made to any act or omission of the Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their employment or agency.

.8

### A.    Refiner/Supplier Defendants

21.    Upon information and belief, the following Defendants, at all times relevant to this action, refined, marketed and/or otherwise supplied (directly or indirectly) gasoline and/or other products containing MTBE that each such Defendant knew or should have known would be delivered into the Commonwealth.   The following Defendants and Does 1 through 99 are collectively referred to as the "Refiner/Supplier Defendants."

22.    Chevron Corporation ("Chevron Corp.") is a Delaware corporation with its principal place of business at 6001 Bollinger Canyon Road, San Ramon, California. Defendant Chevron Corp. is the successor-in-interest to ChevronTexaco Corporation and successor-in-interest to Texaco, Inc.   Upon information and belief, the Commonwealth further alleges that Chevron Corp. owns and/or controls defendant Chevron U.S.A., Inc.

23.    Chevron Puerto Rico LLC ("Chevron PR") is an affiliate of Chevron Global Energy, Inc., which is also known as Chevron Texaco Products Company, a Delaware limited liability company, with its principal place of business at 6001 Bollinger Canyon Rd., Room 5378, San Ramon, CA.   Chevron PR's principal place of business is located at the Texaco Plaza Building, Suite 400, Metro Office Park, Guaynabo, Puerto Rico.   Upon information and belief, the Commonwealth alleges that Chevron PR was formerly known as Texaco Puerto Rico LLC, which was formerly known as Texas Company (Puerto Rico) Inc.

24.    Texaco Puerto Rico, Inc. ("Texaco PR") is a Puerto Rico corporation with its principal place of business located at Texaco Plaza Metro Office Park, Street 1 #2, 4th Floor, Suite 400, Guaynabo, Puerto Rico.

51.     Total Petroleum Puerto Rico Corporation ("Total PR"), successor to Gasolinas de Puerto Rico Corporation, is a Puerto Rico corporation with its principal place of business at Mario Julia Industrial Park, A Street, Suite 11A, Guaynabo, Puerto Rico. Upon information and belief, the Commonwealth alleges that Total PR is a wholly owned subsidiary of Total Outre Mer, S.A. of France.

52.     Total Outre Mer, S.A., is a French "société anonyme," similar to a U.S. corporation, with a principal place of business at 24 Cours Michelet 92800 Puteaux Tour Total, France.

53.     Total, S.A., is a French "société anonyme," similar to a U.S. corporation, with a principal place of business at 2, place de la Coupole, La Défense 6, 92400 Courbevoie, France.

54.     Shell Western Supply and Trading Limited, ("SWS&TL") is a business organization, similar to a U.S. corporation, with a principal place of business at Mahogany Court, Wildey Business Park, Wildey, Barbados.

55.     Shell International Petroleum Company Limited ("Shell International") is a business organization of unknown form with a principal place of business at Shell Centre SE1 7NA, London, United Kingdom.

56.     Shell Western Services is a business organization similar to a U.S. corporation with a principal place of business in Nassau, Bahamas.

57.     Peerless Oil and Chemicals, Inc. ("Peerless") is a Delaware corporation headquartered in Puerto Rico with a principal place of business at Road 127 KM 17.1, Punta Guayanilla, Penuelas, Puerto Rico 00624.

14

87. Because of MTBE's propensity to contaminate vast quantities of water, to date, at least 25 States or Commonwealths have banned or enacted laws that have set a date certain banning the use of MTBE as an additive in gasoline.

**Defendants' Promotion of MTBE**

88. The Refiner/Supplier and Manufacturer/Supplier Defendants, all of whom have promoted the use of gasoline containing MTBE for its purported environmental benefits, knew or should have known of the grave harm and threat to the public health and welfare represented by the proliferating use of this compound, including (among other things): widespread pollution of waters of the Commonwealth with MTBE, drinking water supplies rendered unfit and unusable for consumption, public health threatened, and increased costs to public water suppliers and their customers.

89. Despite knowing that MTBE pollution was inevitable unless adequate precautions were taken, and despite the availability of reasonable alternatives (including but not limited to adequate warnings), Defendants chose not to warn customers, retailers, regulators or public officials, including the Commonwealth. As production and sales of these compounds and gasoline containing them increased, Defendants failed to take any reasonable, appropriate, and special precautions to store gasoline containing MTBE safely, or to prevent, detect and clean-up spills and leaks of gasoline containing this product. Despite knowing the risk of harm posed by MTBE, Defendants also failed to warn purchasers, the public, regulators, and/or the Commonwealth that without such precautions more and more MTBE would be released into the environment and cause, among other significant adverse effects, long term contamination of waters of the Commonwealth and threats to public health and safety.

90. The Refiner/Supplier Defendants further exacerbated the situation by continuing unreasonable and negligent acts, including providing gasoline containing

20

MTBE to gasoline stations without either providing appropriate warnings or taking other precautions adequate to prevent releases of MTBE to the subsurface, knowing that release to the environment of this compound would be inevitable because a substantial percentage of those gasoline stations would store such gasoline without taking reasonable, appropriate or special precautions, including placing the gasoline in inadequate and leaking gasoline delivery systems, and failing to take reasonable, appropriate, or special measures to monitor, detect, and respond to releases of MTBE to soil and/or groundwater, and without taking reasonable, appropriate or special precautions to investigate, contain and clean up releases of these compounds.

91.     The Refiner/Supplier and Manufacturer/Supplier Defendants took affirmative actions that led to the contamination of the waters of the Commonwealth with MTBE, including but not limited to, making representations to downstream users of MTBE and/or gasoline containing MTBE, as well as to the public and government agencies, that such products were environmentally sound and appropriate for widespread production, distribution, sale and use.   Indeed, Defendants represented that gasoline containing MTBE could be handled the same as ordinary gasoline, and required no special measures to protect against or respond to suspected releases to the subsurface.

92.     The manufacturers, refiners, and suppliers of MTBE and gasoline containing MTBE had a duty (which they breached) to test MTBE thoroughly to determine its environmental fate and transport characteristics, and potential human health impacts before they sold MTBE and/or gasoline containing MTBE, and had a further duty (which they also breached) to take precautions necessary to assure that gasoline containing MTBE was properly stored and to institute all necessary measures to contain and promptly abate the inevitable spills and leaks.   Nonetheless, the Defendants, and each of them, failed adequately to test, store, warn about, or control gasoline containing

21

MTBE, and, among other things, failed to abate contamination caused by MTBE, including contamination in and pollution of the waters of the Commonwealth.

93.    The Refiner/Supplier and Manufacturer/Supplier Defendants, their agents and employees created, participated in, and/or facilitated the flow of MTBE and/or gasoline containing one or more such compounds into gasoline distribution, storage, and dispensing systems that they knew could not safely contain such products. The widespread problems of leaking gasoline delivery systems were well known to the Defendants prior to the introduction of MTBE. At least as early as the mid-1960's, these Defendants knew, or reasonably should have known, that gasoline delivery systems suffer significant and widespread leaks and failures, and release gasoline products into the environment, including into ground water.

94.    Before introducing MTBE into gasoline delivery systems, the Refiner/Supplier and Manufacturer/Supplier Defendants knew, or reasonably should have known, among other things, that MTBE released into the environment would mix easily with ground water, move great distances, resist biodegradation and/or bioremediation, render drinking water unsafe and/or non-potable, cause significant expenses to remove from public drinking water supplies, and otherwise threaten the public health and welfare. The Defendants knew, or they reasonably should have known, that the gasoline distribution and retail system in the Commonwealth contained leaking gasoline delivery systems.  They knew, or they reasonably should have known, that gasoline facilities, including those in the Commonwealth, commonly lacked adequate storage facilities for gasoline containing MTBE, and that the operators of these facilities were unaware of either the special hazards of MTBE or the steps necessary to eliminate or mitigate those hazards.

95.    At all times relevant to this action:

22

(a)   The Manufacturer/Supplier Defendants, and each of them, sold, exchanged, supplied, distributed, delivered and/or otherwise provided MTBE to the Refiner/Supplier Defendants, and each of them, sold, exchanged, supplied, distributed, delivered and/or otherwise provided gasoline containing MTBE to retail gasoline stations and/or other gasoline delivery systems in the Commonwealth. Upon information and belief, the Commonwealth alleges that such sales, exchanges, supplies, distributions, deliveries and/or other provisions of gasoline containing MTBE to such facilities occurred over time, up to and including the present;

(b)   Gasoline containing MTBE was released to the subsurface from retail gasoline facilities owned and/or operated by the Owner/Operator Defendants, and each of them, and from other facilities at dispersed locations in the Commonwealth. Such releases of gasoline containing MTBE have occurred over time, have been discovered or have become discoverable at various times, and are still occurring, all in varying amounts at different locations, impacting waters of the Commonwealth; and

(c)   MTBE takes time to migrate from release points to locations within the subsurface at which they have an appreciable impact on groundwater resources. MTBE has over time migrated in the subsurface from dispersed release points at or near the surface at retail gasoline facilities in the Commonwealth, causing pollution, contamination, and substantial damage to the waters of the Commonwealth, causing appreciable injury to the Commonwealth.

## COUNT I
### (Strict Products Liability for Defective Design and Failure to Warn Against All Defendants)

96.   The Commonwealth re-alleges paragraphs 1 through 77 above, and by this reference incorporates them as though set forth in full.

97.   The Refiner/Supplier Defendants, and each of them, designed, formulated, manufactured, compounded, refined, provided product information and/or instructions for use, packaged, labeled, promoted, marketed, distributed, transported, exchanged and/or sold gasoline containing MTBE.

98.   The Refiner/Supplier and Manufacturer/Supplier Defendants, and each of them, designed, formulated, manufactured, compounded, refined, provided product information and/or instructions for use, packaged, labeled, promoted, marketed, distributed, transported, exchanged and/or sold MTBE, which was intended by said Defendants, and each of them, to be used as a gasoline additive.

99.   The Owner/Operator Defendants took delivery of, stored and sold the gasoline containing MTBE which is contaminating and polluting waters of the Commonwealth.

100.   The Refiner/Supplier and Manufacturer/Supplier Defendants, and each of them, represented, asserted, claimed and warranted that gasoline containing MTBE could be used in the same manner as gasoline not containing these compounds, and/or that gasoline containing MTBE did not require any different or special handling or precautions.

101.   Defendants, and each of them, knew that said product(s) were to be purchased and used without inspection for defects.

102.   MTBE and gasoline containing MTBE are defective products because, among other things:

24

## COUNT II
### (Public Nuisance - 32 L.P.R.A. § 2761 Against All Defendants)

108.    The Commonwealth re-alleges paragraphs 1 through 89 above, and by this reference incorporates them as though set forth in full.

109.    The negligent, reckless, intentional and ultrahazardous activity of Defendants, and each of them, alleged herein has resulted in the contamination and pollution of the waters of the Commonwealth as alleged herein, and constitutes a public nuisance. 32 L.P.R.A. § 2761. The Secretary of Justice is authorized to institute proceedings against those parties that intrude on the lands, rights, or property of the Commonwealth, or commit a nuisance thereon. 3 L.P.R.A. § 73.

110.    The public nuisance caused, contributed to, maintained, and/or participated in by Defendants, and each of them, has substantially and unreasonably interfered with, obstructed and/or threatened, among other things, the Commonwealth's significant property and quasi-sovereign interests in the waters of the Commonwealth, the Commonwealth's ability to protect, conserve and manage the waters of the Commonwealth, which are by law precious and invaluable public resources held by the Commonwealth in trust for the benefit of the public, as well as the rights of the people of the Commonwealth to enjoy a water supply free from unacceptable health risk, taste, odor, pollution, and contamination.

111.    Each Defendant has, at all times relevant to this action, caused, maintained, participated in and/or assisted in the creation of such public nuisance. Among other things, each Defendant is a substantial contributor to such public nuisance as follows:

27

disregard of the probable dangerous consequences of that conduct and its foreseeable

impact upon the Commonwealth.

## COUNT III
### (Trespass - 31 L.P.R.A. § 5141 Against All Defendants)

118.    The Commonwealth re-alleges paragraphs 1 through 99 above, and by this

reference incorporates them as though set forth in full.

119.    The Commonwealth is the owner and/or actual possessor of property

rights and interests in the waters of the Commonwealth, as alleged herein, which the

Commonwealth holds in trust for the benefit of the public. These property rights and

interests include, but are not limited to, a quasi-sovereign interest in protecting the quality

of such waters from contamination and pollution.

120.    Defendants, and each of them, intentionally manufactured, refined,

marketed, and/or otherwise supplied MTBE and/or gasoline containing MTBE with the

knowledge that contamination of the waters of the Commonwealth with MTBE was

substantially certain to result.

121.    Among other things, Defendants, and each of them, intentionally caused

MTBE to enter, invade, intrude upon and injure the waters of the Commonwealth as

follows:

a.  The Manufacturer/Supplier Defendants manufactured, promoted and

supplied MTBE to refiners when they knew that it was substantially

certain that: (i) the refiners would in turn blend the MTBE into gasoline;

(ii) such gasoline containing MTBE would then be placed into leaking

gasoline delivery systems, including those in the Commonwealth; (iii)

31

## COUNT IV
### (Negligence – 31 L.P.R.A § 5141 Against All Defendants)

129.    The Commonwealth re-alleges paragraphs 1 through 110 above, and by this reference incorporates them as though set forth in full.

130.    Defendants had a duty to the Commonwealth to exercise due care in the design, manufacture, formulation, handling, control, disposal, marketing, sale, testing, labeling, use, and instructions for use of MTBE and/or gasoline containing MTBE.

131.    Defendants so negligently, carelessly, and recklessly designed, manufactured, formulated, handled, labeled, instructed, controlled (or failed to control), tested (or failed to test), marketed, sold and otherwise entrusted MTBE and gasoline containing MTBE that they breached their duties and directly and proximately caused MTBE to contaminate and threaten the waters of the Commonwealth, resulting in the damages alleged in this Complaint.

132.    Defendants, and each of them, failed to conduct reasonable, appropriate or adequate scientific studies to evaluate the environmental fate and transport characteristics of MTBE, and/or the likelihood that use of MTBE as a component of gasoline would pollute waters of the Commonwealth, render drinking water unusable and unsafe, and threaten public health and welfare and the environment.

133.    The Manufacturer/Supplier Defendants, among other things, manufactured, promoted and/or otherwise supplied MTBE to refiners when they knew, or reasonably should have known, that: (a) the refiners would in turn blend the MTBE into gasoline; (b) such gasoline containing MTBE would then be placed into leaking gasoline delivery systems, including those in the Commonwealth; (c) MTBE would be released even more readily than the constituents of conventional gasoline from gasoline delivery

142.    The contamination of the waters of the Commonwealth with MTBE alleged herein has varied over time and has not yet ceased.  MTBE continues to threaten, migrate into and enter the waters of the Commonwealth.  Defendants continue to refrain from taking responsibility for this trespass and from taking action to remediate existing contamination and prevent future contamination of the waters of the Commonwealth.

143.    Defendants' conduct is reprehensible, despicable, and was performed to promote sales of MTBE and/or gasoline containing MTBE in conscious disregard of the known risks of injury to health and property.  Defendants acted with willful and conscious disregard of the probable dangerous consequences of that conduct and its foreseeable impact upon the Commonwealth.

## COUNT V
### (Puerto Rico Public Policy Environmental Act, Water Pollution Control Act, and Underground Storage Tank Control Regulations Against All Defendants)

144.    The Commonwealth re-alleges paragraphs 1 through 125 above, and by this reference incorporates them as though set forth in full.

145.    The Defendants are each "person[s]" as defined by 24 L.P.R.A. § 591(d).

146.    The activities of Defendants, and each of them, alleged herein has resulted in the "pollution" of "waters" of the Commonwealth as defined by 24 L.P.R.A. § 591(i) and § 591(e), respectively.  For purposes of this Complaint, "waters" only includes waters of the Commonwealth, as defined in Paragraph 5 above.

147.    The MTBE and petroleum discharged to waters of the Commonwealth by the Defendants are "other" types of pollution as that term is defined by 24 L.P.R.A § 591(h).

# EXHIBIT 2
# HAS BEEN REDACTED
# IN ITS ENTIRETY

REDACTED

CONFIDENTIAL MATERIALS (per 2004 MDL 1358 Order) -
FOR OUTSIDE COUNSEL ONLY

REDACTED

CONFIDENTIAL MATERIALS (per 2004 MDL 1358 Order) -
FOR OUTSIDE COUNSEL ONLY

REDACTED

CONFIDENTIAL MATERIALS (per 2004 MDL 1358 Order) -
FOR OUTSIDE COUNSEL ONLY

REDACTED

CONFIDENTIAL MATERIALS (per 2004 MDL 1358 Order) -
FOR OUTSIDE COUNSEL ONLY

REDACTED

CONFIDENTIAL MATERIALS (per 2004 MDL 1358 Order) -
FOR OUTSIDE COUNSEL ONLY

REDACTED

CONFIDENTIAL MATERIALS (per 2004 MDL 1358 Order) -
FOR OUTSIDE COUNSEL ONLY

REDACTED

CONFIDENTIAL MATERIALS (per 2004 MDL 1358 Order) -
FOR OUTSIDE COUNSEL ONLY

REDACTED

CONFIDENTIAL MATERIALS (per 2004 MDL 1358 Order) -
FOR OUTSIDE COUNSEL ONLY

REDACTED

CONFIDENTIAL MATERIALS (per 2004 MDL 1358 Order) - FOR OUTSIDE COUNSEL ONLY

REDACTED

CONFIDENTIAL MATERIALS (per 2004 MDL 1358 Order) -
FOR OUTSIDE COUNSEL ONLY

# EXHIBIT 3
# HAS BEEN REDACTED
# IN ITS ENTIRETY

REDACTED

CONFIDENTIAL MATERIALS (per 2004 MDL 1358 Order) -
FOR OUTSIDE COUNSEL ONLY

REDACTED

CONFIDENTIAL MATERIALS (per 2004 MDL 1358 Order) -
FOR OUTSIDE COUNSEL ONLY

REDACTED

CONFIDENTIAL MATERIALS (per 2004 MDL 1358 Order) -
FOR OUTSIDE COUNSEL ONLY



REDACTED

CONFIDENTIAL MATERIALS (per 2004 MDL 1358 Order) - FOR OUTSIDE COUNSEL ONLY

REDACTED

CONFIDENTIAL MATERIALS (per 2004 MDL 1358 Order) -
FOR OUTSIDE COUNSEL ONLY



REDACTED

CONFIDENTIAL MATERIALS (per 2004 MDL 1358 Order) -
FOR OUTSIDE COUNSEL ONLY

REDACTED

CONFIDENTIAL MATERIALS (per 2004 MDL 1358 Order) -
FOR OUTSIDE COUNSEL ONLY

REDACTED

CONFIDENTIAL MATERIALS (per 2004 MDL 1358 Order) -
FOR OUTSIDE COUNSEL ONLY

**REDACTED**

CONFIDENTIAL MATERIALS (per 2004 MDL 1358 Order) -
FOR OUTSIDE COUNSEL ONLY

REDACTED

CONFIDENTIAL MATERIALS (per 2004 MDL 1358 Order) -
FOR OUTSIDE COUNSEL ONLY

REDACTED

CONFIDENTIAL MATERIALS (per 2004 MDL 1358 Order) -
FOR OUTSIDE COUNSEL ONLY

# EXHIBIT 4



**GES** **Groundwater & Environmental Services, Inc.**

410 Eagleview Boulevard • Suite 100• Exton, Pennsylvania 19341 • (610) 458-1077 • (610) 458-7026



February 16, 2005

Mr. Christian Chammas
Total Outre Mer S.A.
24 Cours Michelet – La Défense 10
92069 Paris La Défense, France

Philippe Corsaletti
General Manager
Total Petroleum Puerto Rico Corp.
Ind. Mario Juliá
Calle 416 A
San Juan, Puerto Rico 00920-2012

Mr. Máximo Álvarez
8675 N.W. 53rd Street, Suite 109
Miami, Florida 33166

Mr. Ricardo Fishman
Vice President, Corporate Banking
Scotiabank de Puerto Rico
273 Ponce de León Avenue, Mezzanine
Hato Rey, Puerto Rico 00917

Re:   **Purchase and Sale Agreement for Stock and Assets by and
between Máximo Alvarez and Sunshine Rentals Puerto Rico, Inc.
as Sellers and Total Outre Mer S.A. as Purchaser,
last dated September 16, 2004
Remediation Fund
Notification of Estimated Costs of Environmental
Remediation for Soil and Groundwater Contamination**

Dear Sirs:

We have been retained by Purchasers in the above-noted Purchase and Sale Agreement ("SPA")
to perform Phase II environmental studies at selected service stations formerly owned by Sellers. (The
terms Purchasers and Sellers are those used in the SPA.) We have completed those studies and, pursuant
to Purchasers' request, have done an analysis to estimate the cost of the environmental remediation
required to bring each of the stations so studied and selected for such estimation into compliance with
applicable environmental requirements in existence or proposed, whichever is stricter for any particular
substance or characteristic, by any regulatory authority over the matter with respect to soil and
groundwater contamination at each such site, as required by the SPA Article 16.1.b.

In conformity with said Article and Purchasers' request, we herewith provide to you the attached
CD ROM, which contains the corresponding cost estimates for such remediation by station for which we
were responsible for conducting the studies and were requested to produce the estimates. The stations for
which we are providing the estimates are: Station Numbers 1003; 1012; 1107; 1108; 1109; 1228 and

Messrs. Christian Chammas, Philippe Corsaletti,
Máximo Álvarez and Ricardo Fishman
Remediation Fund
February 16, 2005
Page -2-

1241, following the numbering system used by Gasolinas de Puerto Rico Corporation.  The details of the estimated costs and the report of the Phase II surveys for each of the stations, along with the underlying data, are also contained in the attached CD ROM.

We trust that this information meets your needs.

Sincerely,

Eric M. Kovich, P.E.
Senior Project Manager
Groundwater & Environmental
    Services, Inc.

Encl.

c:      Geoffrey B. Schwartz, Esq.
        Frederick Ramírez, Esq.
        Bruno Favre, Esq.
        Walter F. Chow, Esq.

May 29, 2012

TPPRC.EMPL.WFILE_000148

# EXHIBIT 5



**TOTAL**

PERSONS TO WHOM REMEDIATION COST ESTIMATES ARE TO BE SENT:

Christian Chammas
Total Outre Mer, S.A.
24 Cours Michelet – La Défense 10
92069 Paris La Défense, France
    Telephone :  011-33-1-41-35-69-25

Philippe Corsaletti
General Manager
Total Petroleum Puerto Rico Corp.
Ind. Mario Juliá
Calle 416 A
San Juan, Puerto Rico 00920-2012
    Telephone:  (787) 783-4625

Máximo Álvarez
8675 N.W. 53rd Street, Suite 109
Miami, Florida 33166-4512
    Telephone:  (305) 477-5800

Ricardo Fishman
Vice President, Corporate Banking
Scotiabank de Puerto Rico
273 Ponce de León Avenue, Mezzanine
Hato Rey, Puerto Rico 00917
Telephone:  (787) 766-7907

-------------------------------------------------------------
c:

Geoffrey B. Schwartz, Esquire
Huey, Guilday, Tucker, Schwartz & Williams, P.A.
1983 Centre Pointe Boulevard, Suite 200
Tallahassee, Florida  32308
    Telephone :  (850) 224-7091

Frederick Ramírez, Esquire
Ramírez & Watson, P.A.
10067 Pines Boulevard, Suite A
Pembroke Pines, Florida  33024-6136
    Telephone :  (954) 436-0114

May 29, 2012

TPPRC.EMPL.WFILE_000144

# EXHIBIT 6
# HAS BEEN REDACTED
# IN ITS ENTIRETY

CONFIDENTIAL MATERIALS (per 2004 MDL 1358 Order) - FOR OUTSIDE COUNSEL ONLY, PRODUCED TO MILLER, AXLINE & SAWYER



**REDACTED**

JANUARY, 2013

# EXHIBIT 7

Law Offices of

# MILLER, AXLINE & SAWYER

A Professional Corporation

DUANE C. MILLER

MICHAEL AXLINE

A. CURTIS SAWYER, JR.

TRACEY L. O'REILLY

EVAN EICKMEYER

DANIEL BOONE

JUSTIN MASSEY

BRIAN D. SHANNON

DONALD B. MOONEY, of Counsel

August 22, 2012

**VIA EMAIL**

Elaine Maldonado-Matias, Esq.
Deliris Ortiz-Torres, Esq.
Sepulvado & Maldonado, PSC
252 Ponce de León Avenue
Citibank Tower, 19th Floor
San Juan, Puerto Rico 00918

Re:   *In Re: Methyl Tertiary Butyl Ether ("MTBE"),* MDL 1358
      *Commonwealth of Puerto Rico, et al.,* v. *Shell Oil Company, et al.,*
      **Production of Documents**

Dear Elaine & Deliris:

I write this letter to initiate a meet and confer process with respect to Total's incomplete responses to plaintiff's first set of interrogatories regarding plaintiff's trial sites.

Please produce the CD ROM referenced in Bates # TPPRC.EMPL.WFILE_000147 and 000148 (see attached) and/or provide an index, including Bates numbers, of what is contained in the referenced CD.

Please also produce any and all purchase, sale, stock and/or asset agreements Total has had regarding any trial site or with any and all defendant(s) that are or may be associated with any of Plaintiff's trial sites including but not limited to those agreements referenced in Bates # TPPRC.EMPL.WFILE_000147-000148 and in your CMO #75 declaration, paragraph 4.

Please produce this information by August 31, 2012.

Sincerely,

Michael Axline
Counsel for Plaintiffs

Encl.

1050 Fulton Avenue, Suite 100, Sacramento, CA  95825-4225;  Telephone:  (916) 488-6688
Facsimile:  (916) 488-4288;  Email: toxictorts@toxictorts.org

Law Offices of

# MILLER, AXLINE & SAWYER

A Professional Corporation

DUANE C. MILLER
MICHAEL AXLINE
A. CURTIS SAWYER, JR

TRACEY L. O'REILLY
EVAN EICKMEYER
DANIEL BOONE
JUSTIN MASSEY
BRIAN D. SHANNON
DONALD B. MOONEY, of Counsel

November 15, 2012

**VIA LNFS & EMAIL**

Elaine Maldonado-Matias, Esq.
Deliris Ortiz-Torres, Esq.
Sepulvado & Maldonado, PSC
252 Ponce de León Avenue
Citibank Tower, 19th Floor
San Juan, Puerto Rico 00918

Re:  *In Re: Methyl Tertiary Butyl Ether ("MTBE")*, MDL 1358
*Commonwealth of Puerto Rico, et al.,* v. *Shell Oil Company, et al.,*
S.D.N.Y. Case No. 07 Civ. 10470 (SAS)
**Addition of Defendants Total Outre Mer, S.A. and Total, S.A.**
**Production of Documents**

Dear Elaine & Deliris:

Pursuant to Judge Scheindlin's Individual Rule IV(B), we write to alert you of our intention to add Total Outre Mer, S.A. and Total, S.A. as defendants in the above-referenced case.  Per Cynthia's telephone conversation with Elaine on Wednesday, November 14, 2012, we understand that Elaine will forward this correspondence to in-house counsel for Total Outre Mer, S.A. and Total, S.A., respectively.

Total, S.A. publicly stated that it acquired a service station network in Puerto Rico with an estimated 6% market share.  During the discovery process we learned that Total, S.A. has been involved in the sale and remediation of station sites in Puerto Rico.

We are moving to add Total Outre Mer, S.A. because consultants performing an environmental investigation at sites in Puerto Rico that are contaminated with MTBE have stated that they are working for Total Outre Mer, S.A.

Elaine Maldonado-Matias, Esq.
Deliris Ortiz-Torres, Esq.
November 15, 2012
Page 2

_____

We are moving to add Total Outre Mer, S.A. because consultants performing an environmental investigation at sites in Puerto Rico that are contaminated with MTBE have stated that they are working for Total Outre Mer, S.A.

We want to reiterate that Total Puerto Rico has yet to provide us with any and all purchase, sale, stock, and/or asset agreements requested in discovery, including the purchase and sale agreement and CD ROM referenced in Bates # TPPRC.EMPL.WFILE_000147 and 000148.

These items were requested again on August 22, 2012 (see attached) and during a November 1 meet and confer. It is our understanding that Elaine was going to check with the parent companies, Total Outre Mer, S.A. and Total, S.A., to determine if these items are in their possession.

It is also our understanding from the meet and confer that Total Puerto Rico was to produce copies of contracts and invoices with any and all environmental remediation companies, including but not limited to GES Groundwater & Environmental Services, Inc. Please provide all these items to us by November 27, 2012.

If there are reasons as to why Total Outre Mer, S.A. and/or Total, S.A. should not be included as defendants in the above-referenced case, please contact me as soon as possible, but in any event no later than Tuesday, November 27, 2012.

Sincerely,

Michael Axline
Counsel for Plaintiffs

cc: All Counsel via LNFS

Encl.

Law Offices of

# MILLER, AXLINE & SAWYER

A Professional Corporation

DUANE C. MILLER
MICHAEL AXLINE
A. CURTIS SAWYER, JR.

TRACEY L. O'REILLY
EVAN EICKMEYER
DANIEL BOONE
JUSTIN MASSEY
BRIAN D. SHANNON
DONALD MOONEY, of Counsel

January 9, 2013

**VIA Email and LNFS:**

Elaine Maldonado-Matias, Esq. (emaldonado@smlawpr.com)
Deliris Ortiz, Esq. (dortiz@smlawpr.com)
Sepulvado & Maldonado, PSC
252 Ponce de Léon Ave.
Citibank Tower, 19th Floor
San Juan, Puerto Rico 00918

RE:   <u>Commonwealth of Puerto Rico, et al. v. Shell Oil Co., et al., 07-civ-10470</u>
      *Stock/Asset Purchase Agreements & Environmental Consultant Disc Production*

Elaine and Deliris:

      I understand from Nathan Short that you have agreed to obtain from Total
Petroleum Puerto Rico Corp.'s ("Total's") consultant GES a copy of the CD containing
remediation information on Total gasoline stations in Puerto Rico. Please confirm that
you will provide a copy of this CD to plaintiffs on or before January 18th, 2013, so that
we do not have to raise the issue with Judge Scheindlin at the January 29, 2013, status
conference. Please also produce all other documents regarding remediation at Total
stations not included on the CD of GES materials, including materials prepared for Total
by GES or any other consultant.

      Total to date has also failed to produce asset and stock purchase agreements
requested by plaintiffs. (*See, e.g.*, asset and stock purchase agreements referenced in
Bates TPPRC.EMPL.WFILE_000147 and TPPRC.SUPPLY_001655.) In response to
Deliris's emails of December 28, 2012, asking that plaintiffs sign a new and separate
supplemental confidentiality agreement and order before Total provides asset and stock
purchase agreements responsive to plaintiffs' request for productions, we see no need for
such a separate agreement and order. Although you reference a separate supplemental
confidentiality agreement and order reached with ExxonMobil, Total asset and stock
purchase agreements are in no way analogous to the materials covered by the
ExxonMobil agreement and order. Nor is it analogous to the agreement provided by

Elaine Maldonado-Matias, Esq.
January 9, 2013
Page 2 of 3

Shell despite claims of relevance for portions of the agreement. In fact, the asset and
stock purchase agreements are directly relevant to issues of successor liability and Total's
MTBE-related assets in Puerto Rico, and to the extent such agreements are confidential at
all they contain precisely the kind of information that the Court's Revised Confidentiality
Order ("MDL Revised Confidentiality Order"), dated September 24, 2004, was intended
to cover.

Deliris's email also refers to redactions of the asset and stock purchase
agreements. Although you are of course free to make whatever assertions you wish with
respect to the propriety of such redactions, we would expect that the MDL Revised
Confidentiality Order would make any such redactions unnecessary, and that it would be
more efficient to simply provide the agreement and mark sections of the agreement as
being subject to the MDL Revised Confidentiality Order, as anticipated in the order itself.

As with the production of the CD, please provide asset and stock purchase
agreements prior to January 18, 2013, so that we do not need to raise this issue with
Judge Scheindlin. We would also appreciate a description of the history and nature of the
ownership interest Idemitsu Apollo Corporation had in Gasolinas de Puerto Rico
Corporation, Total's predecessor in interest.

As a separate matter, although Total provided a number of supply
contracts/agreements that it reached with other defendants (such as Caribbean Petroleum
Corporation (aka "Gulf"), Citgo, and others), Total has not provided copies of supply
contracts/agreements negotiated by Sunshine Gasoline Distributors on behalf of
Gasolinas de Puerto Rico, Total's predecessor in interest. Also, the documents Bates
stamped TPPRC.SUPPLY_001473, 001160, and 001150 reference supply contracts with
Phillips Puerto Rico Core. We have been unable to locate these referenced supply
contracts in the documents produced by Total. Please either confirm that all supply
contracts/agreements have been provided or produce any supply contracts/agreements not
previously produced.

Along the same lines, Total produced a limited set of bills of lading. One of these
show a re-routed delivery to trial site Total 1012 but there are no other bills of lading for
either Total 1012 or Esso CO-242, which Total purchased from Esso. Although Total has
stated that it did not keep electronic copies of such bills of lading for certain periods of
time, Total's obligation is to produce any responsive documents it has – including, but
not limited to, documents that are stored electronically. We can discern no reason, from
the bills of lading that were produced, why a complete set of such bills of lading,

Elaine Maldonado-Matias, Esq.
January 9, 2013
Page 3 of 3

electronic or otherwise, has not been produced.  Accordingly, we ask that you either produce a complete set or provide an explanation as to why the set is not complete.

As I will be out of the office for the next few weeks, please provide your response to my colleague, Nathan Short, with an email copy to me at maxline@toxictorts.org and to clopez@toxictorts.org.

Sincerely,

for Mike Axline

# EXHIBIT 8
# HAS BEEN REDACTED
# IN ITS ENTIRETY

REDACTED

TPPRC.SUPPLY_000420

# EXHIBIT 9

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

TOTAL PETROLEUM PUERTO RICO
CORPORATION,

    **Plaintiff,**

        **v.**

MARISELY COLON COLON, *et al.*,

    **Defendants.**

**CIVIL NO.** 08-1629 (FAB)

## OPINION & ORDER

BESOSA, District Judge

    Pending before the Court are the parties' motions for summary judgment. (Docket Nos. 114, 120, 122, & 125.) Having considered the arguments contained in those motions and the respective oppositions, the Court **GRANTS IN PART AND DENIES IN PART** plaintiff's first and second motions for summary judgment, (Docket Nos. 120, 122, & 125), **DENIES** plaintiff's third motion for summary judgment and **DENIES** defendants' motion for summary judgment, (Docket No. 114). Although plaintiff's first motion for summary judgment is granted with regard to its substantive claims, the Court **HOLDS IN ABEYANCE** its ruling on plaintiff's request for permanent injunctive relief until a final judgment is issued following a bench trial on **February 6, 2012 at 9:00 a.m.**

acquiring the land, Sinclair built the service station.  (Docket

No. 121 at ¶ 5; Docket No. 108.)   Isla Petroleum Corporation

("Isla"), acquired the service station from Arco, through deed of

purchase and sale dated August 3, 1981, for the amount of $25,000.

(Docket No. 121 at ¶ 6; Docket No. 108.)   On July 15, 1997,

Gasolinas de Puerto Rico ("GPR"), which had been in existence since

1974, merged with and into Isla.  (Docket No. 121 at ¶ 7; Docket

No. 121-1 at ¶ 3.)   Although Isla was the surviving company, it

subsequently changed its name to GPR.  Id.  On November 18, 2004, 

Total sent a notice to all retailers, including Mr Colon,

announcing that all of GPR's stock had been acquired by Total Outre

Mer, S.A. ("Total, S.A."), a wholly owned subsidiary of Total

Group.  (Docket No. 121 at ¶ 8; Docket No. 108.)   The notice also

stated that after the acquisition, GPR changed its name to Total

Petroleum Puerto Rico Corporation ("Total/GPR").  (Docket No. 121

at ¶ 9; Docket No. 108.)   As a result of the stock purchase,

Total/GPR acquired the rights over the GPR marks.  (Docket No. 121

at ¶ 10; Docket No. 121-1 at ¶ 2.)

     2.   **Terms of the Franchise Agreement**

On August 19, 1991, defendants entered into a one

year trial Franchise Agreement with Total/GPR's predecessor, Isla,

including Commodatum, Sales and Supply and Lease Agreements.

(Docket No. 121 at ¶ 11; Docket No. 108.)   On March 1, 1993, Isla

and defendants entered into a second Franchise Agreement, renewing

Civil No. 08-1629 (FAB)                                                    36

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, September 30, 2011.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE

# EXHIBIT 10
# HAS BEEN REDACTED
# IN ITS ENTIRETY

REDACTED

CONFIDENTIAL MATERIALS (per 2004 MDL 138 Order) -
FOR OUTSIDE COUNSEL ONLY

**REDACTED**

CONFIDENTIAL MATERIALS (per 2004 MDL 138 Order) -
FOR OUTSIDE COUNSEL ONLY

# EXHIBIT 11

[Certified Translation]

[Puerto Rico Coat of Arms]

**Commonwealth of Puerto Rico**
**Department of State**
**San Juan, Puerto Rico**

I, **GRICEL FALGAS RODRIGUEZ**, Interim Director of the Registry of Corporations of the Department of State of the Commonwealth of Puerto Rico,

**CERTIFY:** That **GASOLINAS DE PUERTO RICO CORPORATION**, registry number **80,482** is a **for**-profit corporation organized under the laws of Puerto Rico, **March 20, 1992 at 3:30 p.m.**

This certification does not imply that this corporation has complied with the requirement of filing annual reports contained in Article 15.01 of the General Corporations Act. If you are interested in finding out if this corporation has filed reports, you should request a Certification of Compliance ("Good Standing").

C O P Y

**IN WITNESS WHEREOF**, I hereby sign and cause the Great Seal of the Commonwealth of Puerto Rico to be affixed, in the city of San Juan, today, **February 23, 2001.**

**Gricel Falgas Rodriguez**
Interim Director
Registry of Corporations

2001012477

*Daniel Tomlinson* 5/9/13
DANIEL TOMLINSON
CERTIFIED TRANSLATOR
ADMINISTRATIVE OFFICE OF
THE UNITED STATES COURTS



*Estado Libre Asociado de Puerto Rico*

*Departamento de Estado*

*San Juan, Puerto Rico*

Yo,   **GRICEL FALGAS RODRIGUEZ**,   *Directora Interina del Registro de Corporaciones del Departamento de Estado del Estado Libre Asociado de Puerto Rico,*

**CERTIFICO:** *Que* **GASOLINAS DE PUERTO RICO CORPORATION,** *número de registro 80,482 es una corporación* **con fines de lucro** *organizada bajo las leyes de Puerto Rico el 20 de marzo de 1992 a la (s)   3:30 p.m.*

*Esta certificación no implica que esta corporación ha cumplido con el requisito de radicar informes anuales contenidos en el Artículo 15.01 de la Ley General de Corporaciones.   Si usted interesa saber si esta corporación ha rendido informes, deberá solicitar una Certificación de Cumplimiento ("Good Standing").*



*EN TESTIMONIO DE LO CUAL,*
*firmo la presente y hago estampar el Gran Sello del Estado Libre Asociado de Puerto Rico, en la Ciudad de San Juan, hoy* **23 de febrero de dos mil uno.**

**Gricel Falgás Rodríguez**
*Directora Interina*
*Registro de Corporaciones*

*2001012477*

# EXHIBIT 12

 

## TOTAL PETROLEUM PUERTO RICO CORP.

### A STATEMENT ATTACHED TO AND MADE PART OF
### THE 2004 CORPORATE ANNUAL REPORT

AN AUDIT OF THE FINANCIAL STATEMENTS OF THE COMPANY BY AN INDEPENDENT CERTIFIED PUBLIC ACCOUNTANT FOR THE PERIOD ENDED DECEMBER 31, 2004 IS CURRENTLY IN PROCESS. UPON THE COMPLETION OF THE AUDIT, THE AUDITED FINANCIAL STATEMENTS AND ACCOUNTANT'S REPORT WILL BE SUBMITTED.

[Certified Translation]

[Logo]

**TOTAL**


TOTAL PETROLEUM PUERTO RICO CORP.


April 27, 2005

To Whom it May Concern:

Below are the components of the Board of Directors of Total Petroleum Puerto Rico Corp.

Officers:

| Name | | SS | Address |
|---|---|---|---|
| Mr. Christian Chammas | President | n/a | Total Outre-Mer Paris, France |
| Mr. Philippe Corsaletti | V-President | | Ind. M. Julia 416 C/A San Juan, PR |
| Mr. Julien Flecheux | Secretary/Treasurer | | Ind. M. Julia 416 C/A San Juan, PR |
| Mrs. Margaret King | Asst.-Secretary/Asst.-Treasurer | | Ind. M. Julia 416 C/A San Juan, PR |


We hope that the information provided herein meets your complete approval.

Sincerely,

[Sgd.] Julien Flecheux
Finance Director

/ld

*Daniel Tomlinson* 5/10/13
DANIEL TOMLINSON
CERTIFIED TRANSLATOR
ADMINISTRATIVE OFFICE OF
THE UNITED STATES COURTS

Ind. M. Julia 416 Calle A. San Juan, PR 00920 2012
P.O. Box 362916, San Juan, PR 00936 2916
Tel. (787) 783-4625 / Fax (787) 783-0407



**TOTAL**

TOTAL PETROLEUM PUERTO RICO CORP.

27 de abril de 2005

A Quien Pueda Interesar:

A continuación los componentes de la Junta de Directores de Total Petroleum Puerto Rico Corp.

Oficiales:

| Nombre | | SS | Dirección |
|---|---|---|---|
| Mr. Christian Chammas | President | n/a | Total Outre-Mer Paris, Francia |
| Mr. Philippe Corsaletti | V-President | | Ind.M. Juliá 416 C/A San Juan,PR |
| Mr. Julien Flecheux | Secretary/Treasurer | | Ind.M. Juliá 416 C/A San Juan,PR |
| Mrs. Margaret King | Sub-Secre/Sub.Treasurer | | Ind.M.Juliá 416 C/A San Juan,PR |

Esperamos sea de su entera conformidad la información aquí suministrada.

Atentamente,

Julien Flecheux
Director Finanzas

/ld




| TOTAL OUTRE-MER | Board of Directors |
|---|---|
| Mr. Alain Champeux | Chairman of the Board |
| Mr. Francois De Ligniville | Director |
| Mr. Pierre Fart | Director |

Address

Total Outre-Mer
24 cours Michelet-La Défense 10
92069 Paris La Défense Cedex
FRANCIA



TOTAL PETROLEUM PUERTO RICO CORP.

(A Wholly Owned Subsidiary of Total Outre Mer, S.A. of France)

NOTES TO FINANCIAL STATEMENTS

December 31, 2004

1.   <u>Description of Business and Summary of Significant Accounting Policies:</u>

Total Petroleum Puerto Rico Corp. (Total), a wholly owned subsidiary of Total Outre Mer, S.A. of France, on October 21, 2004 purchased the capital stock of the former Gasolinas de Puerto Rico Corporation (GPRC), a wholly owned subsidiary of Caribe Gasoline Distributors (CGD). Total is engaged, as its predecessor company, in the wholesale distribution of petroleum (mostly gasoline) products in Puerto Rico.  Other revenue is mainly generated from leasing arrangements made with service station operators.  Also, Total is currently selling petroleum products to government of P. R. agencies and to some municipalities.

The significant accounting policies followed by the Company are as follows:

Cash Equivalents

Cash equivalents of $2,451,350 at December 31, 2004, consist of time deposits with an initial term of less than three months.  For purposes of the statements of cash flows, the Company considers all highly liquid debt instruments with original maturities of three months of less to be cash equivalents.

Accounts Receivable

The accounts receivable arise in the normal course of business of selling petroleum products.  Based on management's evaluation of uncollected accounts receivable, twenty five percent of the accounts receivable over 120 days were potentially uncollectible and have been reserved as such, therefore an allowance for bad debts of $724,340 has been established for the year ending December 31, 2004.

Inventories

Inventories are stated at the lower of cost or market.  Cost is determined using the first-in, first-out method.

Property, Equipment, and Rental Properties

Property, equipment, and rental properties are stated at cost.  Depreciation is computed using the straight-line method over the estimated useful life of the assets.  Repairs and maintenance are charged to expense as incurred, whereas major improvements are capitalized.

Goodwill and other Intangible Assets

Goodwill represents the excess of purchase price over fair value of net assets acquired and the costs of the operating rights of certain stations being temporarily operated by the Company.   Intangible Assets include predominantly supply rights and favorable leasehold rights.  The Company adopted the provisions of the Financial Accounting Standards Board's (FASB) Statement of Financial Accounting Standards (SFAS) No.142, Goodwill and Other Intangible Assets, as of January 1, 2002.



TOTAL PETROLEUM PUERTO RICO CORP.

(A Wholly Owned Subsidiary of Total Outre Mer, S.A. of France)

NOTES TO FINANCIAL STATEMENTS

December 31, 2004

2.    Change in Accounting Policies:

Effective January 1, 2004 the Corporation adopted the provisions of the Financial Accounting
Standards Board's (FASB) Statement of Financial Accounting Standards (SFAS) No.143
*Accounting for Asset Retirement Obligations.*  SFAS No.143 requires an entity to record the fair
value of an asset retirement of tangible long-lived assets that result from the acquisition,
construction, development, and/or normal use of the assets.  An entity would also record a
corresponding asset that is depreciated over the life of the asset.  Subsequent to the initial
measurement of the asset retirement obligation, the obligation would be adjusted at the end of
each period to reflect the passage of time an changes in the estimated future cash flows
underlying the obligation.

The Company recorded a liability for its existing legal obligation associated with the retirement of
its underground tanks installed on company owned and leased premises. The reserve was
computed on the basis that assets (mostly underground tanks) are fully depreciated.  To the
estimated cost of removal of tanks, etc., a 7% inflation rate was added and the estimated length of
the lease was computed based on three times the actual lease less lease years already expired.
Then the present value was computed at December 31, 2004.

The new standard has been applied retroactively and financial statements for the year ended
December 31, 2003 have been restated.  The impact of this change on the December 31, 2003
balance sheet is a decrease in the capital paid-in balance of $200,536 and an increase in asset
retirement of $200,536.  The amount of $17,580 was charged to current operations, thus making
a total accrual for this purpose of $217,580.

The Company accounted for certain of its operating lease agreements (both as lessee and lessor)
containing arrangements with escalating clauses as prescribed by SFAS No.13, *Accounting for
Leases,* and FASB Technical Bulletin 85-3, *Accounting for Operating Leases with Scheduled Rent
Increases* effective January 1, 2004.  These accounting pronouncements require that when rental
payments and collections are not made on a straight line basis, rental expense and income
nevertheless shall be recognized on a straight line basis.  As a result, current lease expenses and
income under these agreements shall be determined using as a basis the aggregate rentals over
the lease period divided by the number of months included in the lease period.  The difference
between the average rental expense calculated and the rental paid or collected shall be accrued.

The impact of this change on the December 31, 2003 balance sheet is an increase in accrued
rental expense of $420,000 and a decrease in retained earnings of $420,000.  The Company
recorded an additional rent expense of $96,000 for the year 2004 as a result of this change.

The adjustment includes $89,000 of contracts of rental income with the stations with rental income
escalation clauses.  Total has a total of long term rental income contracts aggregating to
$1,318,208 of which only $1,230,685.32 had been recorded.

TOTAL PETROLEUM PUERTO RICO CORP.
(A Wholly Owned Subsidiary of Total Outre Mer, S.A. of France)

NOTES TO FINANCIAL STATEMENTS

December 31, 2004

3.  Related Party Transactions Prior to Purchase by Total on October 21, 2004:

The GPRC was affiliated with a group of companies up to October 21, 2004 engaged in the wholesale distribution of petroleum products and in the business of acquiring and leasing properties. The GPRC had transactions with its affiliates including rental activities from leasing agreements with an affiliate company. The GPRC also shared certain administrative personnel and facilities with its affiliates. Significant related-party transactions for the period from January 1, 2004 to October 21, 2004 were as follows:

- The Company charged $73,000 to affiliated companies for administrative support. This charge is reflected as a reduction of administrative expenses.

- Rental expense from annual leasing agreements made with an affiliate company amounted to $1,321,926. The Company was also charged $131,936 by Maxa Investment, Inc., an affiliated company with common ownership up to October 21, 2005, for the use of the office building facilities.

- CGD's owner, in his personal capacity, guaranteed payment of all fuel purchased by the Company from its sole petroleum supplier, in exchange for a management fee based on 2% per gallon on the fuel lifted in Puerto Rico. The Company made payments of such fees in the amount of approximately $878,000 up to October 21, 2004.

- On September 29, 2004, the GPRC made a capital distribution to its parent, CGD, in the amount of $1,536,000.

4.  Transactions with Related Parties After Acquisition on 12/21/2004:

After the acquisition of Total of GPRC, Total acquired not only the shares of stock for GPRC for $11,500,000 which included all assets owned by GPRC, but also additional gas stations and rental equipment from a former affiliate of GPRC, Sunshine Rentals Puerto Rico, Inc., worth $21,500,000. The purchase price was subject to purchase price adjustments. An escrow deposit for $1,000,000 was provided by Total in an interest bearing account.

In addition to the purchase of the stock, Total Outre Mer, S. A. has provided non-interest bearing advances of $22,501,018. Total P.R. will begin payments of interest to Total Outre Mer, S.A. on January 1, 2005, at a rate of 3 months Libor plus a margin of 0.2%. The latter loan agreement was formalized on September 30, 2005 and it includes a clause by which Total Outre Mer, S.A. decided to convert up $10,000,000 of the $22,501,018 loan into new issues of capital. The difference $12,501,018 will become a loan subject to interest. The purpose of the loan is to finance the acquisition of assets by Total Petroleum Puerto Rico Corp. The agreement entered into force from the date last cash call (December 31, 2004) for a given period of twelve (12) months. The payment of the loan are in U.S. dollars. Also, the agreement shall be governed in accordance to French laws. All disagreements arising between the P.R. and the French laws not solved amicable, the commercial court (Tribunal of Commerce) Nontierre, France, shall have the exclusive jurisdiction.

8

# EXHIBIT 13

# Total Petroleum Puerto Rico, Corp.

## Audited Financial Statements
## Year Ended December 31, 2005

Our auditors are still in the process of completing the audit of the financial statements for the year ended December 31, 2005.  We will forward the required statements to you as soon as the audit is completed.

Total Petroleum Puerto Rico Corp.

Notes to Balance Sheet (continued)



DEPARTAMENTO DE ESTADO

NOV 2 1 2006

SECCION DE CORRESPONDENCIA

## 2. Related Party Transactions

The Parent Company also owns many other subsidiaries around the world. This group of companies is mainly engaged in the exploration, production and distribution of petroleum products (gasoline, diesel and lubricants). The Company has transactions with its affiliates, which include the purchase of lubricants, and the purchase of materials and fixtures to change the image of the gas stations. The Company also shares certain administrative personnel with its affiliates.

On September 30, 2005, the Parent Company formalized an agreement with the Company in which the Parent Company accepted to convert $10,000,000 of $22,501,019 advances made to the Company during 2004 into new issues of capital and the reminder into a loan. The purpose of the loan is to finance the acquisition of assets by the Company. The agreement entered into force from the date of the last cash call (December 31, 2004) for a given period of twelve (12) months. The payment of the loan is in U.S. dollars. Also, the agreement shall be governed in accordance to French laws. All disagreements arising between the Puerto Rico and the French laws not solved amicable, the commercial court (Tribunal of Commerce), Nanterre, France, shall have the exclusive jurisdiction. The loan bears interest at a rate of three months LIBOR plus a margin of 0.2%. At December 31, 2005, interest accrued on this debt amounted to $446,838.

## 3. Concentration of Credit Risk

The Company maintains cash balances at various financial institutions. Accounts at each financial institution are insured by the Federal Deposit Insurance Corporation up to $100,000. Uninsured deposits totaled $1,043,686 at December 31, 2005.

5

# EXHIBIT 14



E-SERVICE
51565983
Apr 05 2013
07:11PM
File & ServeXpress

# SM

## SEPULVADO & MALDONADO, PSC

### ATTORNEYS AND COUNSELORS AT LAW

April 5, 2013

<u>VIA LNF&S AND ELECTRONIC</u>
<u>CORRESPONDENCE</u>

Michael Axline, Esq.
Miller, Axline & Sawyer
1050 Fulton Avenue, Suite 100
Sacramento, CA 95825-4225
maxline@toxictorts.org

RE:   Commonwealth of Puerto Rico,
<u>et al</u>. v. Shell Oil Co. et
<u>al</u>., Case No. 07 Civ. 10470

Dear Mr. Axline:

I write to you on behalf of Total Outre Mer, S.A.
(hereinafter "TOM SA") regarding the Third Amended Complaint in
which, after more than five (5) years since the commencement of
this litigation, plaintiff added TOM SA as a new defendant. As
I will explain in more detail below, the Court lacks personal
jurisdiction over TOM SA, which is not a proper party to these
proceedings. Also, the allegations of the Third Amended
Complaint fail to state a valid claim against TOM SA. Thus,
with regard to TOM SA the Third Amended Complaint should be
voluntarily dismissed.

First, as plaintiff knows, TOM SA is a French entity that
has never had presence in Puerto Rico. TOM SA has never
supplied, imported, or sold fuel in Puerto Rico. TOM SA has
also never owned, operated, leased, or in any way controlled any
trial site or facility used to sell fuel in Puerto Rico.

April 5, 2013
Michael Axline, Esq.
Miller, Axline & Sawyer
Page | 2

Additionally, the allegations of the Third Amended Complaint lack any degree of specificity as to why TOM SA should be part of these proceedings, the basis for plaintiff's claim that the company is liable for any of the causes of action set forth therein, and any alleged contacts with Puerto Rico. Rather, the averments rely heavily on generalities that lack any allegations of specific facts that may serve as the basis on which plaintiff wants to impute liability on TOM SA.

In fact, even in your November 15, 2012 letter informing of plaintiff's intent to bring TOM SA to this litigation you merely stated that "consultants performing an environmental investigation at sites in Puerto Rico that are contaminated with MTBE have stated that they are working for Total Outre Mer, S.A." Even if this assertion that is completely absent from the Third Amended Complaint and its convenient characterization is taken as true for argument's sake only, this vague statement is insufficient to establish minimum contacts or a plausible claim against the company. Additionally, we note that the letter that plaintiff sent to Judge Scheindlin on April 3, 2013 incorrectly asserts that TOM SA supplied or distributed MTBE in Puerto Rico. Yet, perhaps given the nonsensical character of the statement and the fact that plaintiff knows that said statement is baseless the Third Amended Complaint is conspicuously devoid of any assertion of that sort.

Thus, from the allegations that plaintiff did make in the Third Amended Complaint, it becomes apparent that there is insufficient basis for the Court to assert personal jurisdiction over TOM SA and that the allegations are not enough to state a valid claim against the company. As you know, TOM SA and Total Petroleum Puerto Rico Corp. ("TPPRC") are two distinct and separate corporate entities and nothing in the Third Amended Complaint even suggests otherwise. In fact, in the Third Amended Complaint even the plaintiff recognizes that these are separate and distinct entities. See Third Amended Complaint, ¶¶51-52 (stating that TPPRC "is a Puerto Rico corporation" and that "Total Outre Mer, S.A., is a French 'société anonyme").

The fact that in the past TPPRC was a wholly owned subsidiary of TOM SA does not change this reality. See, e.g., Niemi v. NHK Spring Co., 543 F.3d 294, 308 (6th Cir. 2008) (observing that "a company does not purposefully avail itself of the privilege of doing business in the forum state merely by owning a corporation subject to jurisdiction."). Under applicable law, corporate separateness and identity is presumed

April 5, 2013
Michael Axline, Esq.
Miller, Axline & Sawyer
Page | 3

as a matter of law. See, e.g., Escude Cruz v. Ortho
Pharmaceutical Corp., 619 F.2d 902, 905 (1st Cir. 1980). It is
also a general principle of corporate law that a parent
corporation is usually not liable for the acts of its
subsidiaries. See, e.g., U.S. v. Bestfoods, 524 U.S. 51, 61
(1998). Yet, plaintiff makes no allegations of fact that, if
proven, should incline the Court to disregard the general rule.

Likewise, the Third Amended Complaint does not contain a
single averment that attempts to pierce the corporate veil or
that explains how two legally distinct entities engaged in the
same alleged negligent, bad faith, or illegal acts. If
plaintiff wishes to pierce the corporate veil between TPPRC and
TOM SA they must make specific allegations to that effect and
marshal "strong and robust evidence" that the parent had such a
degree of control over the subsidiary as to render the latter a
mere shell for the former. Escude Cruz, 619 F.2d at 905. In
other words, after years of discovery, plaintiff does not appear
to have even found anything that allows them to even make
allegations to that effect.

Instead, the Third Amended Complaint relies on a group-
pleading tactic as a way to sidestep its duty to give notice via
specific averments of their theory on how TOM SA is subject to
personal jurisdiction in this litigation and why it has
liability. This is simply not sufficient. In fact, we note
that the Third Amended Complaint does not include a single
jurisdictional averment regarding TOM SA.

Additionally, the allegations of the Third Amended
Complaint fail to state a claim against upon which relief may be
granted in favor of plaintiff. At least as far as TOM SA is
concerned (although this is also true regarding several other
defendants), the allegations are comprised of skimpy, vague, and
conclusory statements insufficient under Fed. R. Civ. P. 8, as
interpreted in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell
Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and their
progeny, to state a plausible right to relief against this new
defendant that does not even have the required minimum contacts
with Puerto Rico.

For instance, other than alleging that TOM SA is TPPRC's
parent based in France the Third Amended Complaint contains
nothing more that naked and general assertions that intend to
conflate actions of a subsidiary on a parent without even daring
to directly attribute those actions to the parent. The

April 5, 2013
Michael Axline, Esq.
Miller, Axline & Sawyer
Page | 4

allegations also do not even make the slightest attempt to give notice about how it is that plaintiff intends to prove that this company located in France engaged in wrongful acts in Puerto Rico.  In other words, the Third Amended Complaint fails to even attempt to provide TOM SA with allegations of fact to give fair notice of the grounds upon which plaintiff rests regarding its claims against the company.

Finally, TOM SA also notes that in light of the timing of the filing of the Third Amended Complaint, the claims against the company appear to be time barred as well.

In sum, after years of litigation and discovery, the Third Amended Complaint fails to put forth allegations of facts attributed to TOM SA that, if proven, would show that the company has the necessary minimum contacts with Puerto Rico for the Court to exercise personal jurisdiction over it and that the company could be held liable for any wrongdoing.

TOM SA submits that it follows that the company is simply not a proper party to this case and should never have been made a defendant, and that the Third Amended Complaint fails to state a claim against it.  Thus, TOM SA trusts that plaintiff will agree to voluntarily dismiss the Third Amended Complaint as to this company.  Otherwise, this communication should serve to comply with Section IV(B) of Judge Scheindlin's rules requiring that TOM SA sets forth to the plaintiff its position in writing before filing a motion to dismiss.

As always, if you have any questions, please do not hesitate to contact me a 787.765.5656.


                              Sincerely,



                              Elaine Maldonado-Matías

                              By:

Law Offices of

# MILLER, AXLINE & SAWYER

· A Professional Corporation

DUANE C. MILLER
MICHAEL AXLINE
A. CURTIS SAWYER, JR.

TRACEY L. O'REILLY
EVAN EICKMEYER
DANIEL BOONE
JUSTIN MASSEY
BRIAN D. SHANNON
DONALD MOONEY, of Counsel

April 15, 2013

**VIA LNFS & ELECTRONIC CORRESPONDENCE**

Elaine Maldonado-Matias, Esq.
Sepulvado & Maldonado, PSC
252 Ponce De Leon
Citibank Tower 19th Floor
San Juan, PR 00918

RE:   **Commonwealth of Puerto Rico, et al., v. Shell Oil Co., et al., 07-civ-10470 (SAS)**
       *Pre-Motion Exchange of Letters Pursuant to Judge Scheindlin's Individual Rule IV(B)*

Dear Ms. Maldonado-Matias:

       This letter responds to your letter, dated April 5, 2013, and written on behalf of defendant Total Outre Mer, S.A. ("TOM"). In that letter you claim that TOM is not a proper party to this action and request that plaintiffs agree to voluntarily dismiss the Third Amended Complaint (TAC) against TOM. Plaintiffs decline your request for several reasons.

       First, your assertion that TOM has "never had a presence in Puerto Rico" is simply not true. Documents you produced in discovery on behalf of your client and former TOM subsidiary, Total Petroleum Puerto Rico Corporation (TPPRC), demonstrate TOM's participation in the Puerto Rico gasoline market. Some of these documents were not provided until TPPRC finally responded to plaintiffs' early 2012, discovery requests in January of 2013 - almost a year after plaintiffs' original discovery request.

       In addition to Bates # TPPRC.EMPL.WFILE_000174-000148 cited in our November 15, 2012 letter, we also refer to Bates # TPPRC.GENERAL_000667-00837. These documents show that TOM, not TPPRC, was the purchaser of all Gasolinas de Puerto Rico (GPR) and Sunshine Rentals Puerto Rico shares, real property, equipment, and assets located in Puerto Rico. TOM negotiated and signed this purchase agreement in 2004 prior to the formation of TOM's wholly owned subsidiary, TPPRC, in Puerto Rico.

       TOM also retained the Puerto Rico branch of Groundwater & Environmental Services, Inc. (GES) to conduct Phase II environmental studies at TOM's newly acquired service stations in Puerto Rico (Bates # TPPRC.EMPL.WFILE_000147-000148; 000144-000145 and Bates #

Elaine Maldonado-Matias, Exq.
Page 2
April 15, 2013

TPPRC.CONSULTANTS_001342).  This indicates that TOM was aware that there had been releases at some or all of these stations.

In addition, public documents submitted by GPR and TPPRC to the Puerto Rico Secretary of State identify "related-party transactions" implicating TOM and Total, S.A. in the sale and purchase of petroleum products in Puerto Rico.  These documents indicate that TOM supplied petroleum products to GPR and its parent Caribe Gasoline Distributors, Inc., as well as to Idemitsu Apollo Corporation.

TOM's direct conduct in Puerto Rico provides more than an adequate basis for the MDL Court to exercise personal jurisdiction over TOM.

Second, your assertion that the TAC lacks specificity as to why TOM should be part of these proceedings is without merit.  Pursuant to FRCP 8, relevant case law and Judge Scheindlin's Status Conference statements on the topics of pleading and motions to dismiss, plaintiffs have more than met the plausibility standard announced in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and its progeny.  We note that, as an owner and supplier of stations in Puerto Rico, TOM's conduct giving rise to liability is described in the complaint in the same manner as a number of other defendants – none of whom have even challenged the sufficiency of the complaint, at least with respect to allegations involving their conduct.

Third, although a corporation is typically not liable for the acts of its subsidiaries, it appears that TOM may have directly controlled TPPRC decisions and actions.  Public documents submitted by GPR and TPPRC to the Puerto Rico Secretary of State demonstrate that TOM employees served as officers of TPPRC, and may have controlled the TPPRC board of directors and financial transactions.  Although plaintiffs have named TOM as a defendant based on TOM's own direct activities in Puerto Rico, the documents received to date warrant further discovery as to the extent of control exercised by TOM over the activities of TPPRC in Puerto Rico.

Please call if you have questions about the above.

Sincerely,

Michael Axline
Counsel for Plaintiffs

cc:     All Counsel via LNFS
        Elaine Maldonado-Matias, Esq. via email (EMaldonado@smlawpr.com)
        Defendants' Liaison Counsel via email (MDL1358@mwe.com)
        Plaintiffs' Liaison Counsel via email (MDL1358@weitzlux.com)