UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation<br><br>This document relates to:<br><br>*City of Merced Redevelopment Agency, et al. v. Exxon Mobil Corporation, et al.*, 1:08-cv-06306 | Master File No. 1:00-1898<br>MDL 1358 (SAS)<br>M21-88 |

# DEFENDANTS' *REPLY* IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT RE STATUTE OF LIMITATION

## TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................................1

II. THE RDA'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATION..............1

    A. The Statute Began To Run When the RDA *First* Incurred Damage in the 1990s. ...................................................................................................................1

    B. The RDA Cannot Ignore Early Injuries To Avoid Summary Judgment. .................4

        1. RDA's Focus on Injury from MTBE as Opposed to Gasoline Is Improper...................................................................................................4

        2. RDA's Attempt To Jettison Old Damages To Avoid the SOL Is Improper...................................................................................................6

    C. The Undisputed Facts Confirm the RDA Suffered Injury Before April 2005........7

    D. Plaintiff's Effort To Distinguish Between 1415 and 1455 R Street Is Inconsequential And A Concession That Its Claims As To 1415 R Street Are Barred....................................................................................................................8

    E. CERCLA Does Not Preempt The Discovery Rule, As This Court Already Held........................................................................................................................8

    F. The Limitation Ruling In the *City of Merced* Matter Is Not Relevant..................10

III. CONCLUSION..................................................................................................................10

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                                   Page(s)

*BellSouth Telecoms. v. W.R. Grace & Co.*
   77 F.3d 603, 609 (2d Cir. 1996)......................................................................................2

*City of Vista v. Robert Thomas Securities, Inc.*
   84 Cal. App. 4th 882 (2000) ...........................................................................................2

*DeRose v. Carswell*
   196 Cal. App. 3d 1011 (1987) ....................................................................................4, 6

*In re MTBE Prods. Liab. Litig.*
   2008 WL 2676278 (S.D.N.Y. July 8, 2008) ..................................................................9

*In re MTBE Prods. Liab. Litig.*
   2009 WL 4496736 (S.D.N.Y. Dec. 2, 2009) ...............................................................8, 9

*In re MTBE Prods. Liab. Litig*
   676 F. Supp. 2d 139 (2009) .........................................................................................2, 4

*San Francisco Unified Sch. Dist. v. W.R. Grace & Co.*
   37 Cal. App. 4th 1318 (1995) .........................................................................................2

*Walker v. Pacific Indemnity Co.*
   183 Cal. App. 2d 513 (1960) ..........................................................................................2

*Wilshire Westwood Assoc. v. Atlantic Richfield Co.*
   20 Cal. App. 4th 732 (1993) ......................................................................................2, 7

*Wilshire Westwood Assoc. v. Atlantic Richfield Corp.*
   881 F.2d 801 (9th Cir. 1989) ..........................................................................................9

<u>Statutes</u>                                                                                                                Page(s)

Cal. Civ. Proc. Code § 338(b)..................................................................................................2

## I. INTRODUCTION

The claims *actually asserted* in this case are time-barred, and the RDA failed to prove otherwise or even address those claims. In the Complaint, the RDA alleges—as injury—that "gasoline, hydrocarbons, and MTBE . . . blight the [Merced Redevelopment] project area, adversely impact the use of the project area, depreciate or stagnate property values, and adversely affect the interests of the health, safety, and welfare of the people," that "[e]nvironmental investigation and testing of the project area determined that the redevelopment area was contaminated with gasoline, hydrocarbons, and MTBE," that MTBE "threatened" the RDA's "Project Area," and that each of the "defendants is legally responsible for the costs and damages relating to the presence and abatement of gasoline, hydrocarbons, and MTBE located in or about the project area." (First Am. Compl., ¶¶ 1-3, 12, 44, 55(d), 59, 60.) Throughout five years of this litigation it has sought to recover every penny spent to remediate anything at or emanating from 1415 or 1455 R Street, including everything beneath the RDA's project area and parking lot property. By the RDA's own admission, it knew in the 1990s that it suffered injury from the release of gasoline at the R Street Stations, including the lost sale of property, physical contamination of its project area, and costs associated with cleanup. These admissions are fatal. The RDA attempts to save its claims by advocating a twisted reading of California's limitation law and asserting theories this Court has already rejected. Under any reading of the facts, the RDA's claims are barred.

## II. THE RDA'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATION

### A. The Statute Began To Run When the RDA *First* Incurred Damage in the 1990s.

The RDA spends 60% of its Opposition reciting legal authority on the statute of limitation (mostly in factually dissimilar settings), but never contends, much less demonstrates, that Defendants' legal authority is wrong or inapplicable. (Opp., p. 6-12.) The RDA does not

dispute that the three-year statute applies or that any claims that accrued before April 7, 2005, are barred as a matter of law.[1]  *See* Cal. Civ. Proc. Code § 338(b).  Furthermore, the RDA makes a fundamental admission: "It is actual damage to the plaintiff that controls when a claim accrues." (Opp., p. 8.)  Indeed, this Court has already analyzed this issue and concluded the same:

> In California, a plaintiff will be deemed to have suffered injury sufficient to give rise to a cause of action when it has suffered some "appreciable and actual harm."  "In an action involving tortious injury to property," such as trespass or nuisance, the relevant injury is "harm to the property itself."  Although the harm incurred must be more than nominal, a plaintiff need not have ascertained the full scope of its injury and "neither the speculative nor uncertain character of the damages nor the difficulty of proof will toll the period of limitation."

*In re MTBE Prods. Liab. Litig.*, 676 F. Supp. 2d 139, 145-46 (2009) (internal citation omitted). This Court's prior ruling is consistent with California law.  *See, e.g., San Francisco Unified Sch. Dist. v. W.R. Grace & Co.*, 37 Cal. App. 4th 1318, 1326 (1995).

The *City of Vista* and *Walker* cases cited by the RDA (Opp., p. 7-8) do not change the analysis—neither suggests that the statute of limitation does not bar the RDA's claims here.  *See generally*, *City of Vista v. Robert Thomas Securities, Inc.*, 84 Cal. App. 4th 882 (2000); *Walker v. Pacific Indemnity Co.*, 183 Cal. App. 2d 513, 517 (1960) ("it is uncertainty as to the fact of damage, rather than its amount, which negatives the existence of a cause of action").

Under California's Discovery Rule, the statute of limitation begins to run as soon as the plaintiff has notice or information that would have put a reasonable person on inquiry that its injury was caused by wrongdoing.  *See Wilshire Westwood Assoc. v. Atlantic Richfield Co.*, 20 Cal. App. 4th 732, 740 (1993); *accord In re MTBE*, 676 F. Supp. 2d at 145-46.  The undisputed

---

[1] The RDA claims the limitation defense is generally considered a question of fact not appropriate for summary adjudication (Opp., pp. 8-9), but the law says otherwise.  The defense is proper on summary judgment where, as here, the evidence establishing both injury and knowledge of the injury outside the limitation period is so substantial and undisputed.  *See BellSouth Telecoms. v. W.R. Grace & Co.*, 77 F.3d 603, 609 (2d Cir. 1996).

facts prove that RDA suffered the injuries it claims here in the 1990s and was aware of those injuries at that time. The RDA does not dispute that: (1) in 1992, a plume of gasoline was discovered emanating from the gasoline station at 1415 R Street; (2) the RDA knew at that time that the plume contaminated both soil and groundwater in the RDA's project area;[2] (3) as a result of the presence of contamination, the RDA lost the opportunity to sell the property to Costco in 1992-93; and (4) the RDA agreed to investigate and remediate the gasoline contamination to placate Costco and, in 1994, entered into a contract with the Shackelfords to assume responsibility for cleaning up 1415 R Street. (Reply 56.1 Stmt., ¶¶ 1-5, 7, 8, 9, 11, 13.) The RDA also does not dispute that it was aware in 1992 that monitoring began at 1455 R Street or that by 1994 the consultant Krazan & Associates had identified 1455 R Street as having a release of gasoline contributing to the plume and therefore included it in the investigation. (*Id.*, ¶¶ 6, 16, 17.)

These admissions confirm that by the mid-1990s the RDA suffered actionable injury in the form of (1) a financial loss resulting from the lost sale of property, (2) gasoline and MTBE contamination of its project area, and (3) physical injury to its property due to the presence of gasoline in both the soil and groundwater. In addition, the RDA began incurring costs associated with investigation and cleanup of a plume encroaching on its project area dating back to 1992, including staff time and expenses. (*Id.*, ¶ 15.) This too is actionable damage. The RDA cannot avoid the statute of limitation by recasting its allegations after five years of litigation—it sued for contamination that impacted and threatened its project area, plain and simple.

---

[2]   RDA argues that Defendants "do not assert that *the RDA's property* was contaminated by MTBE outside the statute of limitations" (Opp., p. 1), which is false. Facts 3-6 demonstrate that RDA knew of gasoline contamination on its project area in 1992, and Fact 22 demonstrates that, once RDA's consultant began testing for MTBE, it was repeatedly found on RDA's property and reported to the RDA between 1996 and 2005. (Reply 56.1 Stmt., ¶¶ 3-6, 22.)

B.  **The RDA Cannot Ignore Early Injuries To Avoid Summary Judgment.**

Plaintiff's analysis of the statute of limitation turns the entire doctrine on its head. The RDA hopes to jettison the damages it suffered more than three years prior to filing this lawsuit to survive summary judgment. This is not permitted under the law. *See DeRose v. Carswell*, 196 Cal. App. 3d 1011, 1021-22 (1987). Under the RDA's twisted approach, no claim would ever be barred by the statute of limitation and the doctrine would be meaningless. That is contrary to this Court's prior opinion and California law—the focus has to be on when the RDA was <u>first</u> on notice that it had suffered an injury, not when the RDA suffered a narrow item of injury for which it wants to sue (not coincidentally within three years of filing). *In re MTBE*, 676 F. Supp. 2d at 147-48. The RDA is attempting to narrow its claimed injury to sidestep its limitation problem, which is not permitted.

1.  **RDA's Focus on Injury from MTBE as Opposed to Gasoline Is Improper.**

The RDA repeatedly admits it was impacted by "gasoline contamination" in the 1990s, but argues its "focus" was not on MTBE until much later. (Opp., pp. 14-15.) This misses the point. The RDA knew it was injured by gasoline released from the R Street Stations in the 1990s (Reply 56.1 Stmt., ¶¶ 1-17), and it sued Defendants for contaminating the project area "with gasoline, hydrocarbons, and MTBE;" blighting its project area; adversely impacting its use of the project area; depreciating property values; causing it to conduct environmental investigation, testing, and "abatement of gasoline, hydrocarbons, and MTBE located in or about the project area;" and threatening its project area with MTBE. (First Am. Compl., ¶¶ 1-3, 12, 44, 55(d), 59, and 60.) Whether the RDA was "focused" specifically on MTBE is immaterial. The RDA's project area—which the RDA has been remediating since the mid-1990s—was contaminated with a variety of gasoline components, including MTBE, well outside the limitations period. The RDA was not incurring costs solely due to the presence of MTBE—they resulted from the

presence of gasoline.  This is not a drinking water contamination case where the plaintiff alleges that the taste or odor of MTBE may affect its water; it is a simple case involving remediation of gasoline contamination.

Furthermore, even if the relevant inquiry was when the RDA first learned of MTBE contamination, the statute of limitation still bars the claims.  The RDA admits that it was told in 1996 by the regulators to begin testing for MTBE, which it found shortly thereafter.  (Reply 56.1 Stmt., ¶¶ 18, 19, 20.)  In addition, the RDA began remediating MTBE in 1997 or 1998.  (*Id.*, ¶ 21.)  Thus, by 1998 the RDA knew it suffered injury specifically as a result of MTBE.

Apparently recognizing that the facts show it knew about the MTBE outside the limitation period, the RDA tries to sidestep the issue by arguing that the concentrations of MTBE were not "at an appreciable level" (which it fails to define).  (RDA's 56.1 Stmt., ¶¶ 19, 20, 23.)[3] That argument fails.  Although the amount of MTBE in the groundwater may be relevant to limitations where water companies claim their drinking water resources are threatened by MTBE (such as in the limitation motion in *City of Fresno*), here the amount of MTBE is immaterial because the RDA began incurring actual costs outside the limitation period, triggering the statute.  Moreover, the undisputed facts show that the amount of MTBE found was not insignificant and was well above any action levels. (Roy Dec., Ex. 12 (1/25/05 report re MTBE detection history); Ex. 15, p. 253.4 (3/25/02 letter to RDA noting MTBE "extremely high").)

---

[3] Ironically, the RDA knew that gasoline contamination from the R Street Stations had reached its project area by the mid-1990s and, thus, that there was an unimpeded pathway; knew of the presence of MTBE in the plume no later than 1996; had control over the remediation; and knew that the plume—and whatever it contained—was and would continue moving without remediation (which the RDA was overseeing).  Under such circumstances, the RDA cannot avoid the statute of limitation by arguing that it is "unclear" when the plume reached its project area.  It allowed the plume—that it controlled—to move into its project area.

### 2. **RDA's Attempt To Jettison Old Damages To Avoid the SOL Is Improper.**

The admissions by the RDA's "person most knowledgeable" regarding damages could not have been more clear. Mr. Quintero confirmed that the RDA incurred costs dating back to 1992 and that those costs are damages.

> The RDA intends to **claim as damages** the costs incurred in response to the presence and threatened presence [of] gasoline constituents, including MTBE, TBA, and/or TAME, including staff time to address MTBE, TBA and TAME contamination and the loss of opportunity to sell property to Costco and consequential costs of managing that property. These are discussed above in Designated Issues 10-11, 14-15, 18, 26 [referencing costs incurred since 1992] …

(Roy Dec., Ex. 6, p. 4-5 (emphasis added).)[4]

The RDA now attempts to avoid this admission by arguing that it is not actually claiming those 1990s expenses as "damage," citing ¶ 31 of its Complaint. (Opp., p. 3-4.) That, however, is where it claims costs under the Polanco Act, which is not the subject of this Motion and which limits such costs to those incurred within three years of filing. (*Id*.) Accordingly, the allegations in Paragraph 31 should be disregarded. Notably, the RDA does not limit the scope of its claim for damages in the allegations relating to the claims that <u>are</u> the subject of this motion. (*See* First Am. Compl., ¶¶ 38, 39, 51, 57, 62, 63 and Prayer for Relief.) Indeed, RDA has never said that it was limiting its claim for damages to only those incurred in the three years prior to filing.

Moreover, whether the RDA agrees to limit its recovery to those damages it has incurred since 2005 is immaterial to the limitation analysis. Injury is the triggering event. Here, it is undisputed that the RDA's injury occurred more than a decade before it sued. *See DeRose*, 196 Cal. App. 3d at 1021-22.

---

[4] The RDA repeatedly says Mr. Quintero's declaration cannot be read to suggest Plaintiff is pursuing damages incurred dating back to 1992 (Opp., p. 6/n.4), which is demonstrably false. He was designated as RDA's "person most knowledgeable" regarding damages, so the purpose of his declaration and deposition was to set forth all damages that the RDA claimed in this case.

C.     **The Undisputed Facts Confirm the RDA Suffered Injury Before April 2005.**

Even if the Court were to conclude that the facts from the mid-1990s are not sufficient to establish the RDA's claims are time-barred, the undisputed facts show that in the late 1990s and certainly no later than April 2005, the RDA knew it had suffered the injury described in the Complaint.  By 2002 (six years before filing its complaint), the RDA received at least three blunt and detailed Regional Water Board letters saying the site was a "high priority" and the "magnitude" of the problem necessitated "rapid implementation of remedial measures more aggressive and comprehensive than the existing remediation system."  (Reply 56.1 Stmt., ¶¶ 27-29.)  The RDA's project area is directly between the stations and the City's drinking water well, the receptor at issue in the letters. When the Regional Board repeatedly advised that the well was threatened by the very contamination that the RDA was investigating, remediating, and watching move along R Street through the RDA's property, the RDA cannot claim lack of injury or justifiable ignorance thereof.  The RDA's only response to these facts is to cite a self-serving letter it sent in 2005 stating that the contamination had not reached a "critical level."  (Opp., p. 15; RDA's 56.1 Stmt., ¶ 38.)  This letter is cited out of context—it relates to whether the contamination moving toward the City's well had reached a high-enough level sufficiently close to the well to warrant public notice, not whether it had caused injury to the RDA (which had occurred a decade earlier).  (Miller Dec., Ex. 12.)  Public notice to drinking water customers is not the standard for assessing the application of the statute of limitation.

Finally, multiple RDA employees confirmed that, for many years prior to April 2005, they received detailed reports regarding the impact from the R Street Stations and knew that the plume had migrated to the RDA's project area and was a threat to groundwater.  (Reply 56.1 Stmt., ¶¶ 22, 23.)  Furthermore, both the RDA and its consultant (whose knowledge is imputed under the law (*Wilshire*, 20 Cal. App. 4th at 741-42) admitted being concerned about the impact

of MTBE from the R Street Stations between 1998 and 2002. (Reply 56.1 Stmt., ¶¶ 24, 25.)

D. **Plaintiff's Effort To Distinguish Between 1415 and 1455 R Street Is Inconsequential And A Concession That Its Claims As To 1415 R Street Are Barred.**

The RDA argues that the Motion fails "to distinguish between the two R Street stations." (Opp., p. 1.) This argument does not save its claims, however. First, it is an implicit concession that the RDA's claims as to 1415 R Street are barred.[5] Second, the argument boils down to the contention that its claims regarding 1455 R Street are not barred by the statute of limitation because the RDA was not designated to do the cleanup of 1455 R Street until 2006. (Opp., pp. 1-2.) This contention is without merit and is simply the RDA's attempt to select an arbitrary time within the limitation period to try to avoid summary judgment. The fact that the RDA did not enter into a formal arrangement to oversee remediation at 1455 R Street until 2006 does not mean that the RDA was not injured earlier and outside the limitation period. The RDA was aware that 1455 R Street was a source of contamination as early as 1992, but certainly no later than 1994. (Reply 56.1 Stmt., ¶¶ 6, 16, 17.) The RDA even admits that by 2002, the Regional Board told the RDA that 1455 R Street was a source of the contamination and the two sites were viewed as a commingled plume. (Opp., p. 14; RDA's 56.1 Stmt., ¶¶ 36, 37.)

E. **CERCLA Does Not Preempt The Discovery Rule, As This Court Already Held.**

The RDA argues the abstract point that CERCLA extends the California discovery rule (Opp., p. 9-11), which this Court already rejected (*In re MTBE Prods. Liab. Litig.*, 2009 WL 4496736, at *2 (S.D.N.Y. Dec. 2, 2009)) and which, even if true, would not affect the outcome. This Court held that *O'Connor v. Boeing*—the lead case RDA relies on—is not controlling and does not hold that CERCLA preempts state law in cases like this. *Id.* The Court recognized that

---

[5] The RDA cites to a 1990 release at 1415 R Street, but nothing later. As the RDA admits, Exxon did not supply the station after 1998. (RDA's 56.1 Stmt., ¶ 33 & Ex. 1.)

*O'Connor* said a reasonable jury could determine that "[a]n average plaintiff alleging a connection between latent disease and exposure to hazardous substances does not have the means to conduct the type of comprehensive epidemiological study necessary to bridge the causation gap," but held the District had made no showing that it lacked the sophistication to review publicly available remediation files to determine its injury. *Id.* Likewise, the RDA has not done so, and the undisputed evidence shows that the RDA received, reviewed, and understood the extensive documentation regarding the existence of contamination on its own property. (Reply 56.1 Stmt., ¶ 22.) *O'Connor* is inapplicable, and CERCLA does not extend the discovery rule or preempt the California statute of limitation, as the Court has already held. *Id.*

Also, CERCLA exempts releases of petroleum products, including gasoline containing MTBE. *See Wilshire Westwood Assoc. v. Atlantic Richfield Corp.*, 881 F.2d 801, 810 (9th Cir. 1989); *In re MTBE Prods. Liab. Litig.*, 2008 WL 2676278, at *3-4 (S.D.N.Y. July 8, 2008).

Furthermore, whether or not CERCLA preempts the Discovery Rule is not relevant to the Court's analysis. The undisputed facts demonstrate that the RDA had <u>actual</u> knowledge of its injuries and the source of those injuries. (Reply 56.1 Stmt., ¶¶ 3-11, 13-29.) Even if the RDA is correct that "Defendants must show as a matter of undisputed fact that the RDA had knowledge not only of the 'critical facts' regarding its injury, but also who specifically caused the injury" (Opp., p. 4), the Defendants easily satisfied their burden. Long before 2005, the RDA was intimately involved and knew the gasoline was coming from the R Street Stations. In fact, it is silly for the RDA to suggest that it did not know before April 2005 who had caused what it claimed as its injury, where the City of Merced—relying on the same information *and the same people* who were City employees "wearing RDA hats" while overseeing and directing the investigation and remediation—sued defendants in April 2005.

F.  **The Limitation Ruling In the *City of Merced* Matter Is Not Relevant.**

Without citing or applying legal authority on issue preclusion, the RDA argues incorrectly that because the Defendants' statute of limitation defense failed in the *City of Merced* matter, this Court should deny Defendants' Motion.  (Opp., pp. 15-17.)  First, the RDA was not a party in *City of Merced*.  Thus, that jury and judge were not asked to evaluate whether the statute of limitation bars *the RDA's claims*—they addressed only the City of Merced's claims. (Miller Dec., Ex. 9, pp. 46:2-7, 49:12-16; Ex. 10, pp. 10, 19.)  Second, the City and the RDA were able to bring separate lawsuits only because they asserted fundamentally different claims.  The City sought damages associated with the threat of MTBE contamination to *its* municipal water wells and water system; RDA sued defendants for contaminating *its* project area "with gasoline, hydrocarbons, and MTBE;" blighting *its* project area; adversely impacting *its* use of the project area; depreciating property values; causing *it* to conduct environmental investigation, testing, and "abatement of gasoline, hydrocarbons, and MTBE located in or about the project area;" and threatening *its* project area with MTBE from the R Street Stations. (*Compare id.*, Ex. 10, Nos. 25, 33, 58, 66 with RDA's First Am. Compl., ¶¶ 38, 39, 51, 57, 62, 63 and Prayer.)  Because the RDA and the City of Merced assert different claims, the limitation analysis is different for each of them.  Third, even if the Court concluded that the finding in *City of Merced* had some applicability (which it should not), the actual finding is extremely limited.  The jury evaluated only whether the City of Merced should have taken action before April 22, 2002, which has no significance in this case.  The RDA did not file its complaint until 2008, so the key date is April 7, 2005.  Thus, the analysis in the *City of Merced* matter is irrelevant.

### III. CONCLUSION

Plaintiff's claims are time-barred.  Therefore, Defendants respectfully request that the Court enter summary judgment in their favor.

Respectfully submitted,

Dated:  May 13, 2013

By _____
JEFFREY J. PARKER
WHITNEY JONES ROY
Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, California  90071
Telephone:     (213) 620-1780
Facsimile:      (213) 620-1398
Attorneys for Defendant EXXON MOBIL
CORPORATION and signed with permission on behalf
of defendants Chevron U.S.A. Inc., Shell Oil Company,
Equilon Enterprises LLC,  Tesoro Corporation, and
Tesoro Refining and Marketing Company

## PROOF OF SERVICE VIA FILE AND SERVE XPRESS

*City of Merced Redevelopment Agency v. Exxon Mobil Corp., et al.*

I, Laverna Henry, the undersigned, hereby declare:

1. I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and am not a party to the within action. I am employed by Sheppard, Mullin, Richter & Hampton LLP in the City of Los Angeles, State of California. My business address is 333 South Hope Street, 48th Floor, Los Angeles, California 90071.

2. On **May 13, 2013**, I served a copy of the attached document titled **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT RE STATUTE OF LIMITATION** on all parties hereto by:

a. __X__    Posting it directly to the File & Serve Xpress website, www.lexisnexis.com/fileandserve

b. _____    Sending it via facsimile transmission to LexisNexis File & Serve at approximately _____. Pacific Time

c. _____    Placing it in an addressed, sealed envelope clearly labeled to LexisNexis File & Serve and causing it to be deposited with an overnight mail or courier service for delivery the next business day.

I declare under penalty under the laws of the State of California that the foregoing is true and correct. Executed this **13th** day of **May, 2013**.

*/s/ Laverna Henry*
Laverna Henry