**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In Re: Methyl Tertiary Butyl Ether ("MTBE")** **Products Liability Litigation** <br><br> **This document relates to:** <br><br> *City of Merced Redevelopment Agency, et al. v. Exxon* *Mobil Corporation, et al.*, 1:08-cv-06306 | **Master File No. 1:00-1898** **MDL 1358 (SAS)** **M21-88** |

<u>**DEFENDANTS' *REPLY* RULE 56.1 STATEMENT IN SUPPORT OF MOTION FOR**</u>
<u>**PARTIAL SUMMARY JUDGMENT RE STATUTE OF LIMITATION**</u>

Defendants Exxon Mobil Corporation, Chevron U.S.A. Inc., Shell Oil Company, Equilon Enterprises LLC, Tesoro Corporation, and Tesoro Refining and Marketing Company (collectively, "Defendants") submit the following Local Rule 56.1 Reply Statement in support of their Motion for Partial Summary Judgment re Statute of Limitation:

## DEFENDANTS' FACTS

| Undisputed Material Facts And Supporting Evidence | Merced RDA's Response | Defendants' Reply |
|---|---|---|
| 1. In 1992, a plume of gasoline was discovered emanating from the Shackelfords' station at 1415 R Street and moving off-site to the north.  (Roy Decl., Ex. 2  (11/4/11 Merced Trial Transcript), pp. 1950:19-25, 1952:5–1953:1, 2011:21-26; Ex. 1 (11/3/11 Merced Trial Transcript), pp. 1833:10-20, 1848:20–1849:16.) | Admit that "a plume of gasoline" was discovered in 1992, but deny any implication that MTBE was part of the plume.  Plaintiff further states that the 1415 R Street station reported a 20-gallon unauthorized release that occurred in December, 1991.  (Miller Decl., Ex. 1, Expert Report of Marcel Moreau for R Street Exxon at 1 of 9.)  This release occurred prior to the introduction of MTBE into Exxon gasoline and did not contribute to the MTBE contamination. (Miller Decl., Ex. 1, Expert Report of Marcel Moreau at R Street Exxon, 1.) | The RDA does not dispute the fact and it should therefore be deemed admitted.

The RDA's clarification is immaterial. |

| Undisputed Material Facts And Supporting Evidence | Merced RDA's Response | Defendants' Reply |
|---|---|---|
| 2.  Between 1991 and late 1992, William Cahill (the Director of the RDA) negotiated with Costco in an effort to have a Costco built in the City of Merced.  (Roy Decl., Ex. 1 (Merced Trial Transcript 11/3/11 PM), pp. 1829:24–1830:4, 1830:16-26.)  The discussion was focused on a location at 15th Street west of R Street, just north and west of the R Street Stations.  (*Id*. at 1831:1–1832:9.) | Admit.  Plaintiff further states that in 1991-1992, Merced RDA purchased multiple parcels of property and negotiated with Costco to sell the properties to Costco. (Reporter's Trial Transcript (hereafter "RT") in *City of Merced v. Chevron U.S.A., et al*., Merced County Superior Court Case No. CU148451, at 11/03/11 Trial Testimony of W. Cahill, RT at 1834:7-11.) | Plaintiff's additional statement is immaterial. |
| 3.  Mr. Cahill admitted that, during the course of the negotiations, the RDA learned that a portion of the property appeared to be contaminated as a result of releases from the R Street Stations.  (*Id*. at 1832:10–1833:20; Roy Decl., Ex. 2 (Merced Trial Transcript 11/4/11 AM), pp. 1952:5–1953:1.) | Objection.  The reference to the term "the property" is vague.  Deny any implication that MTBE was part of the contamination discovered in 1992; see Plaintiff's Response to ¶ 1, *supra*.  Plaintiff further states that an environmental consultant (Krazan and Assoc., Inc.) was hired in 1992 and Krazan supplied a copy of the Report to the RDA in 1992, which opined that there was a plume of gasoline contamination | Plaintiff's objection is unfounded.  When Fact No. 3 is read in conjunction with Fact No. 2, it is clear that the term "property" refers to that property north of the R Street Stations that was the subject of the RDA's negotiation with Costco.\n\nPlaintiff's further statement confirms that the RDA had knowledge in 1992 that a plume of gasoline was |

| Undisputed Material Facts And Supporting Evidence | Merced RDA's Response | Defendants' Reply |
|---|---|---|
| | heading North toward the area where the Costco parking lot was proposed.  (Miller Decl., Ex. 2, 11/03/11 Trial Testimony of W. Cahill, RT at 1833:1-25; 1834:1-11; Ex. 3, 11/04/11 PM Trial Testimony of W. Cahill, RT at 2008:24-25; 2009:1-5.) | migrating from the R Street Stations to the property owned by the RDA that was the subject of the Costco negotiation.  Notably, although the RDA now claims that they were told that contamination was "heading North toward" the Costco parking lot, Mr. Cahill's testimony cited by the RDA states that in 1992, the RDA knew that the contamination had actually reached the parking lot.  (*See also*, Fact No. 4.) |
| 4.  In the early 1990s Mr. Cahill received a copy of a report from Krazan & Associates confirming the presence of gasoline contamination on the RDA's property.  (Roy Decl., Ex. 1   (Merced Trial Transcript 11/3/11 PM), pp. 1832:10–1833:20; *see also* Exhibit 13 (1992 Krazan Report.) | Deny any implication that MTBE was part of the contamination discovered in 1992.  See Response to ¶ 1, *supra*.  Plaintiff further incorporates its Response ¶ 3. | The RDA does not dispute the fact and it should therefore be deemed admitted. |
| 5.  During investigations conducted in 1992 and 1993, | Deny any implication that MTBE was part of the | The RDA does not dispute the fact and it should |

| Undisputed Material Facts And Supporting Evidence | Merced RDA's Response | Defendants' Reply |
|---|---|---|
| the RDA learned that the contaminated groundwater under the R Street properties flowed in a northerly direction, toward its property. (Roy Decl., Ex. 3 (Merced Trial Transcript 11/4/11 PM), p. 2013:7-22.) | contamination discovered in 1992, see Response to ¶ 1, *supra*, and admit the remaining paragraph. | therefore be deemed admitted. |
| 6.  In 1992, the RDA's environment consultant installed a monitoring well at the site at 1455 R Street and reported gasoline constituents in the groundwater beneath the site. (Roy Decl., Ex. 13 (1992 Krazan Report), CRWB 28153, 28155.)  The consultant concluded that there was a possible gasoline release at the station. | Disputed, in part.  Admit that environmental consultant Krazan & Associates, Inc. installed a monitoring well at 1455 R Street, that they reported gasoline constituents in the groundwater beneath 1455 R Street, and that there was a possible gasoline release at 1455 R Street. Deny any implication that MTBE was part of the contamination discovered in 1992, see Response to ¶ 1, *supra*, and deny the remaining paragraph.  Plaintiff further incorporates its response to ¶ 3. | The RDA does not dispute the fact and it should therefore be deemed admitted. |
| 7.  The gasoline contamination became a sticking point in the negotiation because Costco did | Objection -- hearsay regarding what Costco did not want and why.  Admit that | The RDA's hearsay objection is without merit.  Costco's actual reasoning behind its |

| Undisputed Material Facts And Supporting Evidence | Merced RDA's Response | Defendants' Reply |
|---|---|---|
| not want to purchase a portion of the property that the RDA had acquired out of fear of liability for the contamination on the property, which jeopardized the deal and the RDA's redevelopment project. (Roy Decl., Ex. 1 (Merced Trial Transcript 11/3/11 PM), pp. 1833:21–1835:10.) | information in the Krazan Report affected how the negotiation proceeded between the RDA and Costco. See Response to ¶ 8, *infra*. | decision to not purchase the property is immaterial for purposes of limitation analysis.  Rather, this fact demonstrates that in 1992, *the RDA had actual knowledge* that it had suffered an injury as a result of the presence of contamination from the R Street Stations thus triggering the statute of limitation.<br><br>The RDA does not dispute the fact and it should therefore be deemed admitted. |
| 8.  As a result of gasoline contamination, the RDA lost the opportunity to sell the property to Costco.  (*Id.*; Roy Decl., Ex. 3 (Merced Trial Transcript 11/4/11 PM), p. 2012:1-26.) | Admit that Costco did not agree to purchase the property in 1992, but Plaintiff states that the RDA leased, and continues to lease, the property which became the Costco parking lot, and Costco retained, and continues to retain, an option to purchase the property. (Miller Decl., Ex. 2, 11/03/11 Trial Testimony of W. Cahill, | The RDA does not dispute the fact and it should therefore be deemed admitted.<br><br>The RDA's additional facts are immaterial. |

| Undisputed Material Facts And Supporting Evidence | Merced RDA's Response | Defendants' Reply |
|---|---|---|
| | RT at 1834:7-11; Miller Decl. at Ex. 3, 11/04/11 PM Trial Testimony of W. Cahill, RT at 2011:8-17; Miller Decl. at Ex. 4, Lease between DA and Costco.) | |
| 9. In order to save the deal, the RDA retained ownership of the parking lot property and leased it to Costco for use as a parking lot. (Roy Decl., Ex. 1 (Merced Trial Transcript 11/3/11 PM), pp. 1833:21–1835:10; Ex. 3 (Merced Trial Transcript 11/4/11 PM), p. 2020:19–2022:2.) | Admit. Plaintiff further incorporates its Response to ¶ 8. | Plaintiff's additional facts are immaterial. |
| 10. The RDA seeks damages in this lawsuit for its 1994 lost sale. (Roy Decl., Ex. 6 (Quintero Declaration), p. 5.) | Objection, the Complaint speaks for itself and Plaintiffs First Amended Complaint identifies the damages sought: "Costs incurred within the past three years of the filing of the Complaint, or that are to be incurred in the future, include: loss of use of property, loss of tax revenues, property damage, restoration costs incurred within the past | Plaintiff's objection is without merit. Paragraph 31 of the First Amended Complaint relates to the Polanco Act, which is not the subject of this Motion. The RDA does not limit the scope of its claim for damages in the allegations relating to the claims that are the subject of this motion. (*See* First Amended Complaint, ¶¶ 38, |

| Undisputed Material Facts And Supporting Evidence | Merced RDA's Response | Defendants' Reply |
|---|---|---|
| | three years of the filing of the Complaint or that are to be incurred in the future, delay damages, property devaluation, interim and permanent remedial measures to control releases and potential releases of gasoline, hydrocarbons, MTBE, and TBA, cleanup costs, potential installation and maintenance or interceptor wells, and water treatment facilities, all in an amount to be proved at trial." (Miller Decl., Ex. 5, First Amended Complaint, at ¶ 31 and p.5, "Prayer for Relief".) | 39, 51, 57, 62, 63 and Prayer for Relief – Defendants hereby request that the Court take judicial notice of the contents of the First Amended Complaint listed as Document No. 144 on the Court's CM/ECF system.) |
| 11.  As part of the deal with Costco, the RDA affirmatively agreed that it would make "best efforts" to investigate and remediate the gasoline contamination in order to prevent it from migrating to the Costco-owned property adjacent to the parking lot.  (Roy Decl., Ex. 1 (Merced Trial Transcript 11/3/11 PM), p. 1836:16-24.) | Objection — the document speaks for itself and the Costco lease agreement provides, in relevant part, that the RDA "shall use best efforts to implement the remediation so as to avoid wherever possible and otherwise minimize any interference with Lessee's use of the property."  (Miller Decl., Ex. 4, Lease between | The RDA does not dispute the fact and it should therefore be deemed admitted.

Plaintiff's objection and additional facts are immaterial. |

| Undisputed Material Facts And Supporting Evidence | Merced RDA's Response | Defendants' Reply |
|---|---|---|
| | RDA and Costco.)  Plaintiff further incorporates its Response to ¶ 1. | |
| 12.  The RDA also claims the cost of managing the property since 1992 as an element of damages in this case.  (Roy Decl., Ex. 6 (Quintero Declaration), p. 5.) | Disputed.  Plaintiff incorporates its Response to ¶ 10.  Defendants mistakenly point to the Declaration of Frank Quintero in support of their contention that Plaintiff seeks damages back to 1992.  Although Mr. Quintero states in his declaration that, *in response to Defendants' discovery requests*, Plaintiff has produced documents and information about costs incurred back to 1992, Mr. Quintero does not describe those costs as "damages" and in no way suggests that Plaintiff is seeking all damages back to 1992.  (Defendants' Roy Decl. at Ex. 6; *see also* Miller Decl., Ex. 6, Excerpts of Deposition of Frank Quintero at 27:25, 28:1-15.) | The RDA's "dispute" is illusory.  The RDA is not permitted to creatively craft its damages claim in the complaint to overcome the statute of limitation. Whether the RDA now seeks to recover for costs incurred in 1992, it cannot be disputed that in 1992, the RDA began incurring costs as a result of the contamination from the R Street Stations and that the RDA knew it was incurring the costs at the time—this triggers the statute of limitation.

Additionally, Mr. Quintero's statement at Page 5 of the Declaration makes clear that the RDA was including costs dating back to 1992 in its damages analysis:

"The RDA intends to **claim as damages** the costs |

| Undisputed Material Facts And Supporting Evidence | Merced RDA's Response | Defendants' Reply |
|---|---|---|
| | | incurred in response to the presence and threatened presence [of] gasoline constituents, including MTBE, TBA, and/or TAME, including staff time to address MTBE, TBA and TAME contamination and the loss of opportunity to sell property to Costco and consequential costs of managing that property. These are discussed above in Designated Issues 10-11, 14-15, 18, 26 [referencing costs incurred since 1992] …"  (Roy Dec., Ex. 6, p. 4-5 (emphasis added).) |
| 13.  Because the Shackelfords were elderly and wanted to sell the business and retire to Idaho, and because the RDA had obligated itself to clean up the contamination in order to meet its contractual obligations with Costco, the RDA entered into a contract with the Shackelfords wherein the RDA assumed | Admit that a Participation Agreement was entered into in 1994 between Merced RDA and the Shackelfords. (Miller Decl., Ex. 7, 9/27/1994 Participation Agreement between the RDA and the Shackelfords.)  Deny the remaining allegations. | The RDA fails to cite to any evidence to support its denial of portions of Fact No. 13. Accordingly, the fact should be deemed admitted entirely. |

| Undisputed Material Facts And Supporting Evidence | Merced RDA's Response | Defendants' Reply |
|---|---|---|
| responsibility for cleaning up the property at 1415 R Street. (Roy Decl., Ex. 1 (Merced Trial Transcript 11/3/11 PM), pp. 1836:6-24, 1837:9-11, 1837:24–1839:8, Ex. 3 (Merced Trial Transcript 11/4/11 PM), 2023:19-2024:3; Ex. 10 (V. Shackelford Depo.), pp. 68:10-69:4.) | | |
| 14.  The RDA began supervising the consultant's work on the property in 1994, fourteen years before the RDA filed its Complaint.  (Roy Decl., Ex. 1 (Merced Trial Transcript 11/3/11 PM), pp. 1839:25–1840:11.) | Admit that in 1994, the RDA began supervising the consultant's work on the property relating to the 1415 R Street investigation and monitoring of contamination of the property; deny the implication that the information identified in the Complaint had occurred or was known to Plaintiff at the time the RDA began investigation and monitoring in 1994.  Plaintiff further states that investigation is not synonymous with appreciable harm. | The RDA fails to cite to any evidence to support its denial of portions of Fact No. 14. Accordingly, the fact should be deemed admitted entirely.<br><br>Plaintiff's additional statement is immaterial. |

| Undisputed Material Facts And Supporting Evidence | Merced RDA's Response | Defendants' Reply |
|---|---|---|
| 15.  By 1994, RDA had begun expending RDA resources to supervise the cleanup at the R Street Stations and incurring costs such of RDA employee staff time.  Indeed, the RDA's "person most qualified" on the topic of damages confirmed that the RDA incurred costs and expenses related to the R Street Stations dating back to 1992.  (Roy Decl., Ex. 6 (Quintero Declaration), p. 4.) | Admit.  Plaintiff further incorporates its Response ¶ 12. | The RDA's reference to Response No. 12 is immaterial. |
| 16.  After the RDA and its consultant began investigating 1415 R Street, they also determined in 1994 that 1455 R Street was contributing to the gasoline contamination problem.  (Roy Decl., Ex. 2 (Merced Trial Transcript 11/4/11 AM), pp. 1952:5–1953:5.) | Admit that a consultant was hired and an investigation was performed and it was determined that both 1415 R Street and 1455 R Street were potential sources of gasoline contamination.  Plaintiff further states that investigation is not synonymous with appreciable harm.  Plaintiff incorporates its Response to ¶¶ 1, 14. | The RDA's statement does not dispute the fact and it should be deemed admitted in its entirety. |
| 17.  At that point, 1455 R Street became part of the investigation.  (Id.) | Plaintiff incorporates its Response to ¶¶ 1, 14, 16. | The RDA's statement does not dispute the fact and it should be deemed admitted |

| Undisputed Material Facts And Supporting Evidence | Merced RDA's Response | Defendants' Reply |
|---|---|---|
| | | in its entirety. |
| 18.  In 1996, Mr. Cahill received a directive from the regulator for the site requiring that property be tested for the presence of MTBE.  (Roy Decl., Ex. 7  (Trial Exhibit 136); Roy Decl., Ex. 1 (Merced Trial Transcript 11/3/11 PM), pp. 1840:17–1842:9.) | Objection.  Disputed and irrelevant.  Investigation is not synonymous with appreciable harm.  Plaintiff admits that the RWQCB issued a letter in 1996 asking that MTBE be included in the components tested and monitored. | The RDA's statement does not dispute the fact and it should be deemed admitted in its entirety. |
| 19.  Pursuant to the regulator's directive, the RDA had its consultant test for MTBE, and MTBE was found at the site, more than a decade before the Complaint was filed.  (Roy Decl., Ex. 1 (Merced Trial Transcript 11/3/11 PM), p. 1843:9-16.) | Objection.  Disputed and irrelevant.  Investigation is not synonymous with appreciable harm.  Plaintiff admits that after receiving a letter from the Merced County Department of Public Health, environmental consultant BSK began testing for MTBE.  Deny that MTBE was found at the site at an appreciable level.  Plaintiff further incorporates its Response to ¶ 14. | The RDA's statement does not dispute the fact and it should be deemed admitted in its entirety. Plaintiff does not cite any evidence to support its additional statement.  Additionally, the actual level of MTBE found is irrelevant given the RDA's and BSK's knowledge of MTBE, its properties and actual movement, and the groundwater movement from the stations to the project area. |
| 20.  At that time, the RDA knew the MTBE was concentrated in a plume near the two gas | Objection.  Disputed and irrelevant.  Investigation is not synonymous with | The RDA's statement does not dispute the fact and it should be deemed admitted |

| **Undisputed Material Facts And Supporting Evidence** | **Merced RDA's Response** | **Defendants' Reply** |
|---|---|---|
| stations and was travelling north off the station properties in the groundwater.  (*Id.* at 1848:20–1849:16; Roy Decl., Ex. 2 (Merced Trial Transcript 11/4/11 AM), pp. 1950:16–1951:4.) | appreciable harm; further, object to the term, "at that time", as vague.  Deny that MTBE was found at the site at an appreciable level.  Plaintiff further incorporates its Response to ¶ 14. | in its entirety.\n\nThe phrase "At the time" is not vague when read in the context of Fact No. 18 and 19. |
| 21.  Mr. Cahill confirmed that, in either 1997 or 1998, the RDA authorized its consultant to begin active remediation of the MTBE at the R Street Stations. (Roy Decl., Ex. 1 (Merced Trial Transcript 11/3/11 PM), p. 1849:17-23.) | Dispute that the cited excerpt states what Defendants contend it states. | The RDA is mistaken, the cited testimony sufficiently supports the statement. Furthermore, the RDA does not cite to any evidence to the contrary and does not actually dispute the fact. |
| 22.  For many years prior to April 7, 2005, BSK provided RDA employees with detailed reports regarding the status of the contamination at the R Street Stations and remediation efforts—there can be no dispute that the RDA was well-aware of the fact that contamination from the R Street Stations migrated to the property owned by the RDA.  (*See, e.g.*, Roy Decl, Ex. 8 (Russell Depo), pp. 26:7- | Admit that the cited deposition passages provide that BSK provided City of Merced employees with copies of reports regarding the status of contamination at the 1415 R Street station and monitoring efforts; deny the remaining allegations. | The RDA fails to cite to any evidence to support its denial of portions of Fact No. 22.  Accordingly, the fact should be deemed admitted in its entirety. |

| Undisputed Material Facts And Supporting Evidence | Merced RDA's Response | Defendants' Reply |
|---|---|---|
| 11, 37:23-38:4, 42:10-43:7, 77:3-16 and Russell Deposition Exhibit 8 (confirming that RDA employee Laura Russell, who was employed from 1999-2003, reviewed BSK's reports routinely as they came in and understood that the monitoring results showed concentrations of MTBE and other gasoline constituents); Ex. 9 (Ramirez Depo), pp. 43:9-17 (confirming that Luz Ramirez, Ms. Russell's successor, was copied on consultant reports).)[1] | | |
| 23.  By the late 1990s, the RDA knew that the MTBE plume from the R Street Stations was in the groundwater and was a potential threat to the groundwater.  (Roy Decl., Ex. Ex. 2  (11/4/11 Merced Trial Transcript), p. 1950:26– 1951:4.) | Objection; disputed and irrelevant.  Investigation is not synonymous with appreciable harm.  Plaintiff further objects to the term "MTBE plume" and it is a jury question as to when and whether MTBE contamination caused appreciable harm.  Plaintiff further incorporates | The RDA's statement does not dispute the fact and it should be deemed admitted in its entirety.  The RDA's statement that "it is a jury question as to when and whether MTBE contamination caused appreciable harm" is false.  It |

---

[1]        The evidence of the RDA's knowledge of the contamination, the identity of the R Street Stations as the suspected sources, and the impact to the RDA's property, project, and costs is overwhelming and voluminous.  Examples are provided in this motion to comply with the Court's motion guidelines, but extensive additional evidence (including documents and testimony) can be provided if the Court so desires.

| **Undisputed Material Facts And Supporting Evidence** | **Merced RDA's Response** | **Defendants' Reply** |
|---|---|---|
| | its Response to ¶ 14.  Plaintiff further states that Mr. Cahill testified, "…I refer to earlier in the testimony to a continuing evolution of our understanding of this problem.  Because since 1992, we had been focused on gasoline, hydrocarbons, not on MTBE itself.  MTBE didn't really enter the picture until we were asked to test for it in '96.  And a lot of our focus was still on hydrocarbons and gasoline itself as opposed to MTBE….."  (Miller Decl., Ex. 3, RT at 2015: 23-26, 2016:1-3.) | is well-established that the affirmative defense of statute of limitation may be decided on summary judgment.  *See BellSouth Telecoms. v. W.R. Grace & Co.*, 77 F.3d 603, 609 (2d Cir. 1996).<br><br>The RDA's further statement regarding the fact that the RDA was not focused on MTBE until 1996 or later is immaterial.<br><br>Moreover, the Cahill testimony cited by the RDA confirms that the RDA had *actual knowledge* of the MTBE contamination by 1996. |
| 24.  As of 1998 to 2000, MTBE was a widely-known contaminant of concern among remediation consultants, such as the City Redevelopment Agency's consultant, BSK. (Roy Decl., Ex. 4 (Merced Trial Transcript 11/30/11 PM), p. 3852:25–3853:8.) | Objection, irrelevant what BSK knew. | The RDA's objection is without merit.  Under California law, the knowledge of a consultant is imputed on a party for purposes of analyzing the statute of limitation.  *See Wilshire Westwood Associates v. Atlantic Richfield Co.*, 20 Cal. App. |

| Undisputed Material Facts And Supporting Evidence | Merced RDA's Response | Defendants' Reply |
|---|---|---|
| | | 4th 732, 741-742 (1993). Accordingly, BSK's knowledge regarding MTBE is imputed on the RDA and confirms that the statute of limitation was triggered long before 2005.<br><br>The RDA identifies no evidence to dispute the fact and it should therefore be deemed admitted in its entirety. |
| 25.  The Director of the RDA admitted that he was concerned about the MTBE threat to City of Merced Well 5B by March 2002:<br><br>Q:  Mr. Cahill, you knew by March of 2002 that the contamination from the R Street stations had spread and was spreading and that there could be a threat to Well 5 from the contamination; right?<br>A: Yes.  That's correct.<br>Q:  And clearly that was a concern at that point in time to you; right? | Admit the quoted language, but deny that Mr. Cahill was referring specifically to MTBE; the passage immediately proceeding Defendants' quoted passage provides:<br><br>Q.  So just to be clear, the threat that you understood the Regional Board to be referring to in this January letter was a threat that at least included MTBE and may have included other constituents of gasoline, right? | Plaintiff's additional statement is immaterial.<br><br>In addition, what the RDA director decided to "focus on" is irrelevant.  It is undisputed that he knew MTBE was in the plume moving up the street. |

| Undisputed Material Facts And Supporting Evidence | Merced RDA's Response | Defendants' Reply |
|---|---|---|
| A: Yes. We were concerned about the possibility.<br><br>(Roy Decl., Ex. 3 (Merced Trial Transcript 11/4 PM), p. 2016:15-22.) | A. Well, we knew for sure that it included gasoline. It may have included MTBE if you read that into it by implication. But it may well have. I'm just saying that the emphasis at that time and prior to that time had usually been on the gasoline."<br><br>(Miller Decl., Ex. 3, RT at 2016:6-14.) | |
| 26. In September and December 2001, "free product" (i.e., liquid gasoline, not gasoline dissolved in water) was detected in monitoring wells at 1415 R Street and wells off-site to the north. (Roy Decl., Ex. 1 (Merced Trial Transcript 11/3/11 PM), pp. 1851:25–1852:12.) | Admit that Mr. Cahill testified that in 2001 or 2002, "free product" was detected in monitoring wells, but dispute that Defendants' citations support the remaining allegations. Plaintiff further states that the cited letter states, in relevant part, "our immediate concern is the possibility that there may be an active release of gasoline from either the Site or the adjacent site to the North (Cardgas), or both." | Plaintiff's statement does not dispute the fact and it should therefore be deemed admitted in its entirety.<br><br>Plaintiff is mistaken, the cited evidence does support the fact. In addition, the March 25, 2002, letter from the Regional Board referenced by RDA summarizes the data for the off-site wells MW-K, MW-L, MW-M. (Roy Decl., Ex. 15 (March 25, 2002 Letter) [p. 104 of 117 of Roy Decl.].) |

| Undisputed Material Facts And Supporting Evidence | Merced RDA's Response | Defendants' Reply |
|---|---|---|
| | | Plaintiff's additional statement is immaterial. |
| 27.  In January 2002, the Regional Water Quality Control Board—the lead regulatory agency for the R Street Stations—informed the City of Merced and the RDA that the MTBE contamination from the R Street Stations posed a potential threat to the City's Well 5.  (Roy Decl., Ex. 3 (Merced Trial Transcript 11/4/11 PM), p. 2013:5-17.) | Admit that in January, 2002, the Regional Water Quality Control Board informed the RDA that "[t]he site is considered a potential threat to water supply wells." Plaintiff disputes that the letter cited by Defendants contains reference to either MTBE or City Well 5; and deny all remaining contentions.  (Miller Decl., Ex. 8, 1/28/02 Letter from W. Gross to A. Shackelford & Mr. A. Randhawa.) | There was a typo in the transcript citation; it was supposed to be "p. 2014:5-17", which is on the same page of Ex. 3.

Plaintiff's purported dispute is misleading.  The January 28, 2002, letter cited by RDA refers to "extremely high concentrations of petroleum hydrocarbons which have been measured in water samples from groundwater monitoring wells on and near the site" and "floating hydrocarbons." (Roy Decl., Ex. 14 (January 28, 2002 Letter) [p. 98 of 117 of Roy Decl.].)  Although the letter itself does not identify all of the hydrocarbons that were detected, the Groundwater Monitoring Report of the referenced sampling clearly shows MTBE in the millions of |

| Undisputed Material Facts And Supporting Evidence | Merced RDA's Response | Defendants' Reply |
|---|---|---|
| | | parts-per-billion, plus other hydrocarbons. (Roy Decl, Ex. 8 (Russell Depo) at Russell Depo Exhibit 8/§ 6.0 [p. 51 of 117 of Roy Decl.]). |
| 28.  The Regional Water Quality Control Board advised the RDA that 1415 R Street was a "high priority site because of extremely high concentrations of petroleum hydrocarbons." (Roy Decl., Ex. 14 (January 28, 2002 Letter).) | Admit the quoted language was stated in the January 28, 2002 letter. | Admitted. |
| 29.  On March 25, 2002, the Regional Water Quality Control Board sent a letter to RDA recounting the lengthy history of the site and stating that "The magnitude of the pollution presently identified in groundwater, the rate of spreading of the pollution, and the threat this poses to the public water supply necessitates the rapid implementation of remedial measures more aggressive and comprehensive than the existing remediation system."  (Roy Decl., Ex. 15 | Admit that the quoted language was stated in the January 28, 2002 letter. | Admitted.  (Defendants assume that the RDA's reference to the January 28, 2002 letter is a typo and it meant to cite to the March 25, 2002 letter.) |

| Undisputed Material Facts And Supporting Evidence | Merced RDA's Response | Defendants' Reply |
|---|---|---|
| (March 25, 2002 Letter).) | | |
| 30.  David Norman, an expert for both the City of Merced and the RDA, testified that 3.1 million ppb of MTBE was detected at 1455 R Street in December 2000.  (Roy Decl., Ex. 16 (Merced Trial Tr. 12/21/11 PM, pp. 5940:24–5941:1 ("Q.  And then you note that in December 2000, MTBE was detected at 1455 at a concentration of 3,100,000 parts per billion in groundwater; correct? A.  Correct.").) | Admit the quoted testimony was stated in the March 25, 2002 letter, but deny that the RDA had any responsibility regarding the 1455 R Street station in 2000; deny that MTBE-gasoline contamination had migrated to RDA property in 2000; and further, Plaintiff incorporates its Response to ¶14. | Plaintiff's statement does not dispute the fact and it should therefore be deemed admitted in its entirety.  Plaintiff's additional statement is immaterial. Whether Plaintiff had any duties regarding remediation of the 1455 R Street Station is irrelevant to whether Plaintiff suffered any appreciable injury from a release from the station. |

## PLAINTIFF'S ADDITIONAL FACTS

| Plaintiff's Additional Facts | Defendants' Response |
|---|---|
| 31.  In *City of Merced v. Chevron U.S.A., Inc.*, the Court rejected Defendants statute of limitations argument in its denial of Defendants JNOV motion.  (Miller Decl., Ex. 9 (City of Merced v. Chevron; et al., 6/25/12 Order).  The Court ruled: "Defendant [Exxon] had the burden by a preponderance of the evidence to show the City was injured and that it knew of the injury prior to April 2002 [three years prior to when the City filed | Defendants admit that the Merced County Superior Court issued the cited rulings. Fact No. 31, however, is irrelevant and should be disregarded because the application of the statute of limitation to the City of Merced (whose claim was based on threat to its drinking water wells a thousand feet up the street) is separate and distinct from the application of the statute |

| Plaintiff's Additional Facts | Defendants' Response |
|---|---|
| its complaint] and they did not meet their burden." (Id. at 2). The Court ruled the same with respect to Chevron's motion: "As stated above, it was a jury determination as to when appreciable harm occurred to the City at each site, and Defendant had the burden by a preponderance of the evidence to show the City was injured and that it knew of its injury prior to April 2002. The jury determined they did not meet that burden and that determination was supported by substantial evidence." (Id. at 5.) | of limitation to the RDA (which bases its claims on a plume of gasoline in its project area, a lost sale and inability to use its property, and costs it incurred for remediation). In addition, the actual finding is irrelevant because it is extremely limited. The jury evaluated only whether the City of Merced should have taken action before April 22, 2002, which has no significance in this case. The RDA did not file its complaint until 2008, so the key date is April 7, 2005. (*See* Reply, Section II(F).) |
| 32.  In *City of Merced v. Chevron U.S.A., Inc.*, the jury found that the complaint was timely filed and that the City of Merced did not appreciate the harm caused by MTBE until *at least* April 22, 2002. (Miller Decl., Ex. 10 (2/09/12 Special Verdict Form) (emphasis added.).)  The jury found: Section C:  Former Exxon at 1415 R Street *** 32.  "Has Exxon proven that before April 22, 2002, groundwater containing MTBE from Former Exxon threatened injury to the City's water system, which means when the groundwater contains MTBE and the City takes action, or should have taken some action, in response to that contamination to protect its right to use that groundwater." 2 yes, 10 no | Defendants admit that the Merced County Superior Court issued the cited rulings. Fact No. 31, however, is irrelevant and should be disregarded because the application of the statute of limitation to the City of Merced (whose claim was based on threat to its drinking water wells a thousand feet up the street) is separate and distinct from the application of the statute of limitation to the RDA (which bases its claims on a plume of gasoline in its project area, a lost sale and inability to use its property, and costs it incurred for remediation). In addition, the actual finding is irrelevant because it is extremely limited. The jury evaluated only whether the City of Merced |

| **Plaintiff's Additional Facts** | **Defendants' Response** |
|---|---|
| ***<br>Section F: Pacific Pride Cardlock service station at 1455 R Street<br>***<br>65.  "Has Chevron proven that before April 22, 2002, groundwater containing MTBE from Pacific Pride Cardlock threatened injury to the City's water system, which means when the groundwater contains MTBE and the City takes action, or should have taken some action, in response to that contamination to protect its right to use that groundwater."<br>0 yes, 12 No<br>(Miller Decl. at Ex. 10, Special Verdict Order at 10, 19.) | should have taken action before April 22, 2002, which has no significance in this case.  The RDA did not file its complaint until 2008, so the key date is April 7, 2005.  (See Reply, Section II(F).) |
| 33.  The 1415 R Street station began operating in 1963 as a Mobil station.  Since then, the station has been a Mobil station, an Exxon station and a Texaco station.  (Miller Decl., Ex. 1 (Moreau Report on Report on 1415 R Street at 1.) | Admit that the station has been branded Mobil, Exxon and Texaco at different times. |
| 34.  The 1415 R Street station reported a 20 gallon spill in 1991.  (Miller Decl., Ex. 1 (Moreau Report on 1415 R Street at 1.) | Admit that Arvel Shackelford, the owner and operator of the station and tanks, reported such spill. |
| 35.  MTBE was added to gasoline starting in 1992.  (Miller Decl., Ex. 1, Moreau Report on 1415 R Street at 1.) | Admit that Exxon Corporation did not add MTBE to gasoline in its Benicia refinery in Northern California until 1992. |
| 36.  The Regional Water Quality Control Board (referred to as "RWQCB" or the "Board") considers the combined releases at the two gas stations in the 1400 block of R Street in the City of | Admit for purposes of this Motion only that the Regional Board stated that the plumes have commingled. |

| Plaintiff's Additional Facts | Defendants' Response |
|---|---|
| Merced as co-mingled into one plume.  (Miller Decl., Ex. 1 (Expert Report of Marcel Moreau for R Street Exxon at 1 of 9; (Miller Decl., Ex. 11, 8/06/02 Letter from W. Gross at 2.).) | |
| 37.  In August, 2002, the RWQCB informed the owners of the R Street stations that there was a recent determination that an unauthorized free product release of petroleum hydrocarbons occurred from the Pacific Pride Cardgas — the 1455 R Street station — and the Board concluded that the plume of polluted groundwater had commingled.  (Miller Decl., Ex. 11, 8/06/02 Letter from W. Gross at 1.) | Admit.  Defendants further note that Plaintiff has offered no evidence of any subsequent release of gasoline from 1455 R Street. |
| 38.  In 2005, the RDA Assistant Executive Director, Mr. Cahill, wrote to Warren Gross at the RWQCB and stated a belief that groundwater contamination had not reached a critical level warranting a public notice at that time.  (Miller Decl., Ex. 12, 4/13/05 Letter from W. Cahill to W. Gross at 1-2.) | Admit but stated in context of a warning for drinking water being premature.  The statement did not address whether the plume was in the RDA's project area. |
| 39.  In May, 2006, the RWQCB notified the owners of both of the R Street properties (including the Shackelfords and Randhawas, owners of 1415, and B. Pazin, owner of 1455 R Street), that remediation of the plume was not progressing satisfactorily and that the Board intended to issue a Clean-up and Abatement Order ("CAO") soon.  (Miller Decl., Ex. 13, 5/02/06 Letter from B. Van Voris to Bill Cahill, et al. at 2) | Admit. |

| Plaintiff's Additional Facts | Defendants' Response |
|---|---|
| 40.  On July 10, 2006, the Board held a meeting of the property owners and it was decided that Merced RDA would manage and lead the remediation of both properties.  (Miller Decl., Ex. 14, 7/14/06 Letter from B. Van Voris to Bill Cahill, et al.)  A follow-up letter confirmed the Board's intent and the RDA's new responsibility as "lead in, coordinated remediation of the commingled plume."  (*Id.* at 2.) | Admit.  The RDA, however, had already been overseeing the remediation at 1415 R Street.  (*See* Fact No. 13 above.)  In addition, the RDA had already suffered what it alleged in its complaint as constituting injury from releases at both stations.  (*See* Fact Nos. 15-21 above.) |
| 41.  On October 27, 2006, the RWQCB issued a CAO for the R Street station sites. (Miller Decl., Ex. 15, 10/27/06 Letter and attached CAO.) | Admit. |
| 42.  In July, 2008, an "MTBE Remediation Coordination Agreement" was executed by the owners of 1455 and 1415 R Street stations, and the RDA.  (Miller Decl. Ex. 16, MTBE Remediation Coordination Agreement").  The Agreement provides:  "The Agency [RDA], City, and the Responsible Parties agree that while neither the Agency nor the City is a Responsible Party for the storage tank releases at 1415 R Street and 1455 R Street in Merced; the Agency shall be the lead in the overall underground MTBE contamination remediation efforts with an immediate focus on preventing MTBE contamination and protecting water quality in and around City Well No. 5."  (*Id.* at 2.) | Admit. |

Respectfully submitted,
Dated:  May 13, 2013

By

JEFFREY J. PARKER
WHITNEY JONES ROY
Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, California  90071
Telephone:     (213) 620-1780
Facsimile:      (213) 620-1398
Attorneys for Defendant EXXON MOBIL
CORPORATION and signed with permission on behalf
of defendants Chevron U.S.A. Inc., Shell Oil Company,
Equilon Enterprises LLC,  Tesoro Corporation, and
Tesoro Refining and Marketing Company

## PROOF OF SERVICE VIA FILE AND SERVE XPRESS

*City of Merced Redevelopment Agency v. Exxon Mobil Corp., et al.*

I, L, the undersigned, hereby declare:

1.  I am employed in the County of Los Angeles, State of California.  I am over the age of 18 years and am not a party to the within action.  I am employed by Sheppard, Mullin, Richter & Hampton LLP in the City of Los Angeles, State of California.  My business address is 333 South Hope Street, 48th Floor, Los Angeles, California 90071.

2.  On **May 13, 2013**, I served a copy of the attached document titled **DEFENDANTS' RULE 56.1 REPLY STATEMENT IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT RE STATUTE OF LIMITATION** on all parties hereto by:

a.  X     Posting it directly to the File & Serve Xpress website,

www.lexisnexis.com/fileandserve.

b._____     Sending it via facsimile transmission to LexisNexis File & Serve at approximately

_____. Pacific Time

c._____     Placing it in an addressed, sealed envelope clearly labeled to LexisNexis File & Serve and causing it to be deposited with an overnight mail or courier service for delivery the next business day.

I declare under penalty under the laws of the State of California that the foregoing is true and correct.  Executed this **13th** day of **May, 2013**.

Laverna Henry