UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ X

IN RE: METHYL TERTIARY BUTYL  :
ETHER ("MTBE") PRODUCTS  :
LIABILITY LITIGATION  :

------------------------------------------------

This document relates to:  :

*Orange County Water District v. Unocal*  :
*Corp., et al.*, 04 Civ. 4968  :

------------------------------------------------ X



**OPINION AND ORDER**

Master File No. 1:00-1898
**MDL 1358 (SAS)**
**M21-88**

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.     INTRODUCTION

      This is a consolidated multi-district litigation ("MDL") relating to

contamination — actual or threatened — of groundwater from various defendants'

use of the gasoline additive methyl tertiary butyl ether ("MTBE") and/or tertiary

butyl alcohol, a product formed by the breakdown of MTBE in water.  In this case,

plaintiff Orange County Water District (the "District"), which is charged with

maintaining groundwater quality, alleges that defendants' use and handling of

MTBE has contaminated, or threatens to contaminate, groundwater within its

jurisdiction.  Familiarity with the background of the case is presumed for the

purposes of this Order.

      Currently before the Court on letter briefs is the District's objection to

Special Master Kenneth J. Warner's Pre-Trial Order No. 76 ("PTO 76").[1]  For the

following reasons, I affirm PTO 76.

## II.    BACKGROUND[2]

### A.    Facts

This dispute relates to a document that one the District's experts,

Stephen W. Wheatcraft, Ph.D., referred to in order to refresh his recollection

during his deposition.  Wheatcraft is engaged by the District as both a consulting

expert and a testifying expert.  In his capacity as a testifying expert, he intends to

offer affirmative opinions on the alleged future impacts of MTBE to drinking wells

in the Orange County Water district, and to offer rebuttal testimony in response to

Defendants' experts.[3]

Defendants deposed Wheatcraft on January 17, 2012.  The dispute

underlying the present matter concerns Wheatcraft's criticism of defense experts'

---

[1]      Ex. 3 to District's Objection to PTO 76 ("District Obj.").

[2]      The facts below are drawn from the parties' submissions related to the
present motion, as well as my previous Order on this issue: *In re Methyl Tertiary
Butyl Ether (MTBE) Prods. Litig.* ("PTO 71 Op."), No. 04 Civ. 4968, 2012 WL
2044432, at *1 (S.D.N.Y. June 6, 2012).

[3]      *See* 6/23/11 Expert Report of Wheatcraft, Ex. A to Defendants'
Response to the District's Objection to PTO 76 ("Def. Resp."); 6/23/11 Expert
Rebuttal Report of Wheatcraft in Response to Defense Expert Reports, Ex. B to
Def. Resp.

failure to replicate results that plaintiffs' experts had obtained from a certain

computational model.  The District asserts that Defendants have improperly failed

to turn over certain input parameters used by their experts in modeling the

threatened impact of MTBE.[4]  During Wheatcraft's deposition, defense counsel

asked him for an example of a defense expert that ran the District's "model with

their own variations and where the information has not been provided. . . ."[5]  In

response, Wheatcraft referred to the 45-page spreadsheet that is the subject of this

objection (the "Spreadsheet"), and then read into the record a quote from a defense

expert report reproduced in the Spreadsheet.

      Later in the deposition, defense counsel asked Wheatcraft to describe

the Spreadsheet.  In response, he testified that it is "a document that contains

information about each expert and the details of opinions they provide that relate to

the issue we have been discussing."[6]  Defense counsel then asked if the document

"summarize[d] the deficiencies that [existed] in connection with the defense

---

[4]     *See* 5/20/13 Plaintiff Orange County Water District's Reply in Support of Its Objection to PTO 76 ("District Reply") at 3 ("[T]he portions of Dr. Wheatcraft's rebuttal report cited [] by [D]efendants relate solely to a discovery dispute between the District and [D]efendants over the appropriate scope of expert modeling production by defense experts.").

[5]     1/17/12 Deposition of Wheatcraft ("Wheatcraft Dep."), Ex. C to Def. Resp., at 334:25-335:2.

[6]     *Id*. at 349:6-9.

experts' reports[]. . . ."[7]  Counsel for the District objected, stating that Wheatcraft

merely used the document "as a reference to refresh his recollection."[8]  When

defense counsel continued to press Wheatcraft about the nature of the Spreadsheet,

counsel for the District again objected to the line of questioning.  However,

Wheatcraft testified that he and his assistant had prepared the Spreadsheet.  The

District maintains that "the [S]preadsheet was created at the direction of counsel

for the District, as the result of a communication by the District's counsel to []

Wheatcraft, and was subsequently provided to the District by [] Wheatcraft in

response to counsel's request."[9]

> **B.      PTO 71 (Special Master Warner's First Ruling on Defendants'
>          Motion to Compel)**

On January 20, 2012, defendants filed a motion with Special Master

Warner to compel production of the Spreadsheet.  The District opposed the motion.

On January 27, 2012, the day that the District's opposition was due, counsel for the

District informed Special Master Warner and defense counsel that she would

produce the materials "reviewed and relied upon" by Dr. Wheatcraft during his

---

[7]      *Id*. at 349:10-12.

[8]      *Id*. at 349:23-25.

[9]      District Reply at 2.

4

deposition by close of business on January 30, 2012, thereby mooting the pending

motion.  Ultimately, though, the District only produced eight pages of the

Spreadsheet, along with a cover-page asserting that production of the entire

Spreadsheet was not required because Wheatcraft had only read a portion of it

during his deposition.  In response, Defendants renewed their motion on February

6, 2012.  Two weeks later, on February 20, 2012, Special Master Warner held a

telephonic hearing at which he heard the arguments of the parties.

On February 29, 2012, Special Master Warner entered PTO 71.

Based on his *in camera* review, he found that the entirety of the Spreadsheet

related to Dr. Wheatcraft's testimony at the deposition, and ruled that Federal Rule

of Evidence 612 therefore required its production.  This ruling was expressly

limited to "only [] the document at issue," and did not "constitute a ruling that the

attorney/client privilege has been waived as to any other document."[10]  In fact, the

ruling did not reach the issue of whether the Spreadsheet was entitled to work-

product protection at all.  Instead, it rested on the rationale that Rule 612 trumps a

claim of work-product immunity, such that the District was required to produce the

---

[10]     PTO 71 at 6.

Spreadsheet regardless of the existence of privilege.[11]

I reviewed PTO 71 upon the District's objection, and concluded that Special Master Warner had erred in concluding that, under Rule 612, a writing relied upon in a deposition is categorically barred from work product protection. Instead, "the proper approach is to conduct a balancing test to determine whether Rule 612 requires disclosure, notwithstanding the existence of a privilege."[12]  I remanded for a determination of whether the Spreadsheet must be produced in light of this principle of law.

### C.    PTO 76 (Special Master Warner's Ruling After Remand)

After remand, on April 8, 2013, Special Master Warner issued PTO 76, which overrules the District's objection and orders production of the Spreadsheet in its entirety.  This ruling rests on Special Master Warner's determination that Wheatcraft relied upon and/or prepared the Spreadsheet in a testimonial capacity, and his conclusion that this excludes the Spreadsheet from the

---

[11]    *See id*. at 4 ("I need not decide [whether the Spreadsheet is subject to work-product protection, and the extent to which Wheatcraft relied on it] . . . because I have determined through *in camera review* . . . that [Rule] 612 requires its full production even if it were otherwise privileged.").

[12]    PTO 71 Op., 2012 WL 2044432, at *3 (quotation marks and citation omitted).

scope of work-product protection.[13]  PTO 71 also holds, in the alternative, that if

the Spreadsheet *is* subject to work-product protection, the District need not

produce more of it than it has already produced.[14]

## III.   APPLICABLE LAW

### A.    Standard of Review

The Order appointing Special Master Warner states that: "[t]he Court

will set aside a ruling [of the Special Master] on a procedural matter only where it

is clearly erroneous or contrary to law."[15]  "Discovery rulings, including those

regarding privilege issues, are nondispositive matters subject to [the] standard of

review [applicable to procedural matters]."[16]  "An assessment of the evidence is

clearly erroneous where the reviewing court is left with the definite and firm

conviction that a mistake has been committed."[17]

---

[13]     *See* PTO 76 at 3-4.

[14]     *See id*. at 6-7.

[15]     6/18/04 Order Appointing Special Master Warner at 3-4 (citing 28
U.S.C. § 636 (empowering a judge to "designate a magistrate judge to serve as a
special master[,]" and providing that "[a] judge of the court may reconsider any
pretrial matter [decided by a Special Master] where it has been shown that the
[Special Master's] order is clearly erroneous or contrary to law[]")).

[16]     *Eisai Ltd. v. Dr. Reddy's Labs., Inc.*, 406 F. Supp. 2d 341, 342
(S.D.N.Y. 2005).

[17]     *S.E.C. v. Smith*, 710 F.3d 87, 97 (2d Cir. 2013) (quotation marks and
citations omitted).

### B.      Production of Documents Relied Upon During a Deposition

Rule 612 of the Federal Rules of Evidence governs circumstances where a witness refreshes her recollection with a writing while testifying, whether during a deposition or at trial.[18]  It provides in pertinent part that:

> [A]n adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness about it, and to introduce in evidence any portion that relates to the witness's testimony.  If the producing party claims that the writing includes unrelated matter, the court must examine the writing in camera, delete any unrelated portion, and order that the rest be delivered to the adverse party.  Any portion deleted over objection must be preserved for the record.[19]

### C.      The Work-Product Doctrine and Testifying Experts

The work-product doctrine was recognized by the Supreme Court in *Hickman v. Taylor*[20] and later codified by the Federal Rules of Civil Procedure.  It

---

[18]      Under Federal Rule of Civil Procedure 30(c), Rule 612 applies to deposition testimony.  *See* Fed. R. Civ. P. 30(c)(1) ("The examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence, except Rules 103 and 615.")  *See also E.E.O.C. v. Johnson & Higgins, Inc.*, No. 93 Civ. 5481, 1998 WL 778369, at *12 n.10 (S.D.N.Y. Nov. 6, 1998) (collecting cases).

[19]      Fed. R. Evid. 612(b).

[20]      329 U.S. 495, 510-12 (1947) ("[T]he general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order.").

protects from discovery documents and materials prepared "in anticipation of litigation."[21]  "A claim of work-product has three elements: [t]he material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative."[22]

Work-product immunity must be invoked expressly, and the party relying on it must "describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."[23]  "The initial burden of justifying the application of the work product doctrine is on the asserting party, and the burden is a heavy one because privileges are neither lightly created nor expansively construed."[24]  In particular, the burden of showing a document is entitled to work-product protection may not

---

[21]     Fed. R. Civ. P. 26(b)(3).

[22]     *BNP Paribas v. Bank of New York Trust Co., N.A.*, No. 11 Civ. 350, 2013 WL 2434686, at *3 (S.D.N.Y. June 5, 2013) (quotation marks and citations omitted). *Accord In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002*, 318 F.3d 379, 383 (2d Cir. 2003) (citing *United States v. Nobles*, 422 U.S. 225, 238 n.11(1975)).

[23]     Fed. R. Civ. P. 26(b)(5)(A)(ii).

[24]     *In re Vitamin C Antitrust Litig.*, No. 06 Civ. 1738, 2012 WL 3645362, at *2 (E.D.N.Y. Aug. 22, 2012) (quotation marks and citations omitted).

be "'discharged by mere conclusory or *ipse dixit* assertions.'"[25]

Work-product immunity is conditional.  Once properly invoked, it may be overcome upon a showing that: (1) the requested material is otherwise discoverable; and (2) the party seeking production "has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."[26]  Even if this showing is made, the "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation[]" must be protected.[27]

Like other qualified privileges, work-product protection may be waived.[28]  Under the Federal Rules of Civil Procedure, "communications between [a] party's attorney and any witness required to provide a report" are protected by the work-product doctrine,[29] but "facts or data that [a] party's attorney provided and that the [party's testifying] expert considered in forming the opinions to be

---

[25]     *Chen-Oster v. Goldman, Sachs & Co.*, No. 10 Civ. 6950, 2013 WL 3009489, at *4 (S.D.N.Y. June 18, 2013) (quoting *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 224-25 (2d Cir. 1984)) (further citations omitted).

[26]     Fed. R. Civ. P. 26(b)(3)(A)(ii).

[27]     *Id*. 26(b)(3)(B).

[28]     *See, generally,* Fed. R. Evid. 502 (setting forth general principles of waiver of attorney-client and work-product privilege).

[29]     Fed. R. Civ. P. 26(b)(4)(C).

expressed" are outside the scope of work-product protection.[30]  Similarly, an expert report must contain all "the facts or data considered by the [expert] in forming" the opinions that the expert is to offer.[31]  In light of this framework, furnishing work-product of a factual nature to a testifying expert constitutes implied waiver of work-product protection to the extent that the expert considers the facts or data disclosed in forming her opinion.[32]  However, *draft* reports and disclosures continue to be protected work-product.[33]

It is irrelevant whether the expert ultimately relies upon the facts or data in forming her expert opinion; instead, the test is whether the expert 'considered' the materials.  Further, because "a testifying expert [must] disclose all materials that he *considered* in reaching his opinion, . . . [a] party seeking to compel the production of [] documents should not have to rely on the [resisting party's] representation that the documents were not considered by the expert in forming his opinion."[34]

---

[30]    *Id*. 26(b)(4)(C)(ii).

[31]    *Id*. 26(b)(2)(B)(ii).

[32]    *See In re Chevron Corp.*, 749 F. Supp. 2d 141, 168 & 168 n.154 (S.D.N.Y. 2010) (collecting cases).

[33]    *See* Fed. R. Civ. P. 26(b)(4)(B).

[34]    *Construction Indus. Servs. Corp. v. Hanover Ins. Co.*, 206 F.R.D. 43, 52 (E.D.N.Y. 2001) (emphasis added) (quotation marks and citations omitted).

### D.   Consulting Expert Discovery

In addition to codifying the work-product doctrine, the Federal Rules of Civil Procedure also establishes that, ordinarily, "the [] facts known or opinions held" by a *consulting* expert are not discoverable.[35]  However, a party may be entitled to such discovery upon "showing exceptional circumstances under which it is impracticable for the party to obtain [the] facts or opinions on the same subject by other means[]"[36] — most commonly, in cases of spoliation.

> There are four commonly articulated policy considerations underlying [protecting the facts or opinions known by consulting experts from discovery][:]

---

*Accord In re Pioneer Hi-Bred Intern., Inc.*,  238 F.3d 1370, 1375 (Fed. Cir. 2001) ("[T]he 1993 amendments to Rule 26 of the Federal Rules of Civil Procedure make clear that documents and information disclosed to a testifying expert in connection with his testimony are discoverable by the opposing party, whether or not the expert relies on the documents and information in preparing his report."); Advisory Committee Note to 1993 Amendments to the Federal Rules of Civil Procedure, Rule 26 ("[L]itigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions — whether or not ultimately relied upon by the expert — are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.").

[35]     Fed. R. Civ. P. 26(b)(4)(D).  A consulting expert is an "expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." *Id*.

[36]     *Id*. 26(b)(4)(D)(i)-(ii).  *Cf. QBE Ins. Corp. v. Interstate Fire & Safety Equip. Co., Inc.*, No. 07 Civ. 1883, 2011 WL 692982, at *5 (D. Conn. Feb. 18, 2011) (distinguishing the work-product privilege of Rule 26(b)(3) and the so-called 'non-testifying expert' privilege of Rule 26(b)(4)(D)).

(1)     the "interest in allowing counsel to obtain the expert
        advice they need in order properly to evaluate and
        present their clients' positions without fear that every
        consultation with an expert may yield grist for the
        adversary's mill";

(2)     the view that "each side should prepare its own case
        at its own expense";

(3)     the concern that it would be unfair to the expert to
        compel [her] testimony and also the concern that
        experts might become unwilling to serve as
        consultants if they suspected their testimony would
        be compelled; and

(4)     the risk of prejudice to the party who retained the
        expert as a result of the mere fact of retention.[37]

## E.     Dual-Capacity Experts

In some cases, the rules applicable to consulting and testifying experts

overlap or conflict.  As stated above, factual materials considered by testifying

experts in forming their opinions are not protected work-product.[38]  For this reason,

tendering materials generated by a consulting expert to a testifying expert may

---

[37]     *Long-Term Capital Holdings, LP v. United States,* No. 01 Civ 1290,
2003 WL 21269586, at *2 (D. Conn. May 6, 2003) (quoting *Bank of Brussels
Lambert v. Chase Manhattan Bank*, 175 F.R.D. 34, 45 (S.D.N.Y.1997)) (further
citation omitted).

[38]     *See Beverage Mktg. Corp. v. Ogilvy & Mather Direct Response, Inc.*,
563 F. Supp. 1013, 1014 (S.D.N.Y. 1983) ("The weight of authority is to the effect
that the work product rule does not apply to experts who are expected to testify.")
(citations omitted).

waive that protection.[39]  However,

> It is conceivable that an expert could be retained to testify and in
> addition to advise counsel outside of the subject of his testimony.
> Under such a circumstance it might be possible to claim a work
> product privilege if this delineation were clearly made.[40]

Prior to the 2010 amendments to the Federal Rules of Civil Procedure (the "2010

Amendment"), courts in this Circuit uniformly held that, in such dual-capacity

cases, "documents having *no relation* to the expert's role as an expert need not be

produced[,] but [] any ambiguity as to the role played by the expert when

reviewing or generating documents should be resolved in favor of the party

seeking discovery."[41]  I now turn to the continued viability of this bright-line

approach after the 2010 Amendment.

## IV.   DISCUSSION

---

[39]     *See, e.g., Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 378
(5th Cir. 2010) ("Relying on th[e] rule [that a testifying expert must disclose the
facts or data underlying her opinions], courts have held that when the work product
of non-testifying consultants is provided to testifying experts, immunity is waived
for disclosed work product.") (citations omitted).

[40]     *B.C.F. Oil Ref., Inc. v. Consolidated Edison Co. of New York, Inc.*,
171 F.R.D. 57, 61 (S.D.N.Y. 1997) (quotation marks and citation omitted).

[41]     *Id*. at 62 (emphasis added).  *Accord Construction Indus. Servs. Corp.*,
206 F.R.D. at 53 (holding that, if there is even *some* ambiguity as to whether a
dual-capacity expert might have 'considered' the materials allegedly protected by
the work-product privilege in his capacity as a testifying expert, then the materials
are discoverable).

There is ample basis in the record to affirm PTO 76.  As Special Master Warner correctly found, there is at least an ambiguity as to whether Wheatcraft considered the Spreadsheet in his capacity as a testifying expert.[42] Wheatcraft has been engaged by the District to rebut the Defendants' expert testimony, and it was partially in this capacity that he was deposed.  At his deposition, Wheatcraft used the Spreadsheet to support his rebuttal of Defendants' experts, and, as Special Master Warner found, "it is evident that Wheatcraft would have similarly relied upon additional portions of the spreadsheet" had the District not objected.[43]  Finally, Wheatcraft acknowledged that the Spreadsheet "contains information . . . that relate[s] to the issue we have been discussing."[44]  In sum, Special Master Warner did not abuse his discretion in finding that Wheatcraft considered the Spreadsheet in his capacity as the District's rebuttal expert.

Nor was Special Master Warner's decision contrary to law.  Before the 2010 Amendment to Rule 26, courts in this Circuit had consistently held that where, as here, it is ambiguous whether allegedly privileged materials were generated or used by a dual-capacity expert in her capacity as a testifying expert,

---

[42]     *See* PTO 76 at 4.

[43]     *Id*.

[44]     Wheatcraft Dep. at 349:6-9.

15

the materials would have to be produced.[45]  The gravamen of the District's present

objection is that the 2010 Amendment changes this analysis.  Specifically, the

District argues that under amended Rule 26, the Spreadsheet is entitled to work-

product immunity, because it was created by Wheatcraft at the request of counsel

and in his capacity as a consulting expert.[46]  For the following reasons, this

argument is unavailing.

        Prior to the 2010 Amendment, Rule 26(a)(2)(B)(ii) permitted

discovery of "data or other information" considered by a testifying expert in

connection with her opinion, leading many courts to conclude that "Rule 26 creates

a bright-line rule mandating disclosure of all documents, including attorney

opinion work product, given to testifying experts."[47]  The 2010 Amendment to

Rule 26 abrogates this bright-line approach in favor of the work-product doctrine's

original function: protecting the "orderly prosecution and defense of legal

claims[]" by preventing "unwarranted inquiries into the files and the mental

---

[45]     *See B.C.F. Oil Ref.*, 171 F.R.D. at 61.

[46]     *See* District Reply at 3 ("Defendants['] recitation of the law entirely
ignores the recent amendments to Rule 26, which are reflected in CMO 73 [which
quotes the amended Rule 26], and relies exclusively on cases that predate these
amendments.").

[47]     *Regional Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 714
(6th Cir. 2006) (citations omitted).

16

impressions of attorneys. . . ."[48]  Among other changes — *e.g.*, designating drafts of expert reports as work-product through Rule 26(b)(4)(B) — the 2010 Amendment: (1) clarifies that "communications between [a] party's attorney and" a testifying expert are within the scope of the work-product doctrine;[49] and (2) excepts from the work-product doctrine "facts or data" considered by a testifying expert, rather than "data or other information[,]" thereby clarifying that attorney theories and impressions are not discoverable.[50]

In sum, the 2010 Amendment to Rule 26 requires disclosure of "material of a factual nature" considered by testifying experts, but not the "theories or mental impressions of counsel. . . ."[51]  Or, as one court aptly summarized, "[t]he bright-line rule is no longer valid; attorneys' theories or mental impressions are protected, but everything else is fair game."[52]

Thus, even after the 2010 Amendment, the scope of expert discovery

---

[48]     *Hickman*, 329 U.S. at 510.

[49]     Fed. R. Civ. P. 26(b)(4)(C).

[50]     *Id*. 26(b)(4)(C)(ii).

[51]     2010 Advisory Commitee Note.

[52]     *Yeda Research & Dev. Co., Ltd. v. Abbott GmbH & Co. KG*, No. 10 Civ. 1836, — F. Supp. 2d —, 2013 WL 2995924, at *7 (D.D.C. June 7, 2013) (quotation marks and citations omitted).

contemplated by Rule 26 is still expansive.  As the Advisory Committee Note to the 2010 Amendment clarifies, Rule 26 "require[s] disclosure of any material considered by [a] [testifying] expert, from whatever source, that contains factual ingredients."  Moreover, the amended Rule 26 protects only the communications of counsel: "[work-product] protection does not extend to [an] expert's *own* development of the opinions to be presented; those are subject to probing in deposition or at trial."[53]

Against this backdrop, I conclude that the 2010 Amendment to Rule 26 does not alter the considerations applicable to dual-capacity experts in any way pertinent to this dispute.  The 2010 Amendment did not change the rules (or policies) applicable to *consulting* expert discovery: a party seeking discovery of facts known or opinions held by a consulting expert must still demonstrate exceptional need to overcome the federal policy of encouraging parties to seek, and enabling parties to obtain, competent consultation.[54]  And the District provides no basis to conclude that the 2010 Amendment — which, in substance, merely clarifies that traditional work-product does not lose its protection merely because it

---

[53]     *Id*. (emphasis added).

[54]     *See* Fed. R. Civ. P. 26(b)(4)(D); *Long-Term Capital Holdings, LP,* 2003 WL 21269586, at *2.

is transmitted to a testifying expert — should change this District's jurisprudence with respect to *factual* matters transmitted from a consulting expert to a testifying expert.

As every court in this Circuit to consider the issue prior to the 2010 Amendments concluded, the policy considerations justifying the protections afforded to consulting experts do not apply when the consulting expert furnishes facts to a testifying expert who considers them in forming an opinion to be offered at trial.[55]  Instead, the specific mandate of Rule 26(b)(4)(C)(ii) — that a testifying expert must produce the "facts or data" that she "considered" in forming her opinion — controls, and any ambiguity should be resolved in favor of production, "lest the privilege interfere with the goal of the disclosure requirements, which is to allow an adversary to expose whatever weaknesses, unreliabilities, or biases might infect the opinions of testifying experts called by [an] adverse party."[56] Accordingly, I conclude that the 2010 Amendment alters the analysis of privilege for dual-capacity experts only when 'core' work product — *e.g.*, attorney theories

---

[55]    *See, e.g.*, *B.C.F. Oil Ref.*, 171 F.R.D. at 61; *United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, No. 97 Civ. 6124, 2002 WL 15652, at *8 (S.D.N.Y. Jan. 7, 2002).

[56]    *S.E.C. v. Reyes*, No. 06 Civ. 04435, 2007 WL 963422, at *2 (N.D. Cal. Mar. 30, 2007).

and impressions — is involved.[57]

PTO 76 rules that because there is an ambiguity as to whether Wheatcraft *created* the Spreadsheet in his capacity as a testifying expert or consulting expert, "the [S]preadsheet is not protected by the work product privilege, and [the District] must produce the document in its entirety."[58]  In light of the principles of law stated above, this holding is slightly inaccurate.  The relevant question is not the "hat [that] [] Wheatcraft was wearing[] when he *created* the [S]preadsheet. . . ."[59]  Instead, the relevant question is whether Wheatcraft might have *considered* the Spreadsheet — which qualifies as "facts or data" for the purposes of Rule 26[60] — in connection with his rebuttal testimony.[61]

---

[57]    *See Yeda Research & Dev.*, 2013 WL 2995924, at *12 ("Because the 2010 amendments were intended (as relevant here) to limit discovery only with regards to certain types of attorney work product, the same approach [to dual-capacity cases] remains valid after the amendments. . . . At least one court has applied the exact same standards set forth in *Reyes* to a dual-hat expert after the 2010 amendments.") (citing *Sara Lee Corp. v. Kraft Foods, Inc.*, 273 F.R.D. 416, 419-20 (N.D. Ill. 2011)).

[58]    PTO 76 at 4.

[59]    *Id*. (emphasis added).

[60]    The District has not argued that the Spreadsheet embodies 'core' work-product — *i.e.*, attorney impression or argument — as opposed to factual materials.  Moreover, at this point, any such argument is waived.  *See* Fed. R. Civ. P. 26(b)(5)(A)(ii) (requiring a party asserting work-product immunity to explicitly invoke it and describe the materials in enough detail to allow the claim of privilege

The record on review answers this question in the affirmative.  I find no error in Special Master Warner's findings that: (1) Wheatcraft relied on the Spreadsheet at his deposition; (2) "Wheatcraft's reliance on the [S]preadsheet was consistent with his job as [the District's] testifying [rebuttal] expert[;]" and (3) the Spreadsheet "directly relates [to Wheatcraft's] rebuttal testimony, as it is comprised of organized excerpts from defendants' experts' reports."[62]  In light of these findings, I affirm PTO 76 on the ground that the Spreadsheet constitutes "facts or data" under Rule 26, and any work-product and/or consulting expert privilege protecting the Spreadsheet was forfeited by virtue of Wheatcraft's consideration of it in forming his opinions in his capacity as a testifying expert.[63]

One final point bears note.  The District fears that Defendants are engaged in a fishing expedition, and that PTO 76 "effectively forces the District to waive *all* of its attorney work product privileges with respect to undisclosed[]

_____

to be assessed).

[61]    I assume for the purposes of this Order that the Spreadsheet constitutes an attorney "communication" under Fed. R. Civ. P. 26(b)(4)(C).

[62]    PTO 76 at 4.

[63]    I have considered the District's remaining contentions, and found them to be without merit.

consulting assistance provided by . . . Wheatcraft."[64]  These fears are unfounded. This Order merely holds that when a testifying expert considers factual information in forming an opinion that she intends to offer at trial, an unconditional claim of privilege cannot be maintained, regardless of whether the factual information came from a consulting expert.  It does not impact the protections afforded to work generated by consulting experts in the first instance.

**V.   CONCLUSION**

The ruling of PTO 76 is affirmed.  To the extent that they do not already appear, the parties are directed to enter the briefs and exhibits considered in this Order into the docket of the case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            June 27, 2013

---

[64]      District Reply at 5 (emphasis added).

22

## -Appearances-

**Counsel for Plaintiff Orange County Water District:**

Michael Axline, Esq.
Tracey O'Reilly, Esq.
Miller, Axline & Sawyer
1050 Fulton Avenue, Suite 100
Sacramento, CA 95825
Tel: (916) 488-6688
Fax: (916) 488-4288

Victor Sher, Esq.
Todd Robins, Esq.
Sher Leff LLP
450 Mission Street, 5th Floor
San Francisco, CA 94105
Tel: (415) 348-8300
Fax: (415) 348-8333

**Counsel for Defendants:**

Jon D. Anderson, Esq.
Latham & Watkins LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Tel: (714) 540-1235
Fax: (714) 755-8290

**Liaison Counsel for Plaintiffs:**

Robin Greenwald, Esq.
Robert Gordon, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
Tel: (212) 558-5500
Fax: (212) 344-5461

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
McDermott Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
Tel: (212) 547-5583
Fax: (212) 547-5444