UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



In Re: Methyl Tertiary Butyl Ether
("MTBE") Products Liability Litigation

This document relates to:

*Commonwealth of Puerto Rico v. Shell Oil Co.
et al.*, 07 Civ. 10470

**OPINION AND ORDER**

**Master File No. 1:00-1898
MDL 1358 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Pursuant to the Confidentiality Order governing this case,[1] fourteen documents were filed conditionally under seal in connection with the currently pending motion to dismiss of Total Outre-Mer, S.A. ("TOM").  Defendant Total Petroleum Puerto Rico Corp. ("TPPRC") now moves under Section II.L.a. of the Confidentiality Order — which mirrors Rule 26(c) of the Federal Rules of Civil Procedure — to maintain these documents under seal pending the Court's resolution of TOM's motion to dismiss, and to unseal only those portions relevant

---

[1]    See 9/24/04 Revised Confidentiality Order ("Confidentiality Order"), No. 00 Civ. 1898, Doc. No. 372.

to resolving that motion thereafter.[2]  The Commonwealth of Puerto Rico opposes the motion.  For the following reasons, TPPRC's motion is granted.

## II.     APPLICABLE LAW

### A.     Rule 26 of the Federal Rules of Civil Procedure and the Confidentiality Order

Rule 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, undue burden or expense. . . ."  Among other things, Rule 26 contemplates that a court may "requir[e] that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way . . . ."[3]

As Rule 26(c) recognizes, the federal policy of liberal discovery would be undermined if parties could meet their discovery obligations only by publicly disclosing proprietary information.  For example, a defendant might be forced to settle a winning case if the cost of publicly disclosing its trade secrets in discovery would exceed the cost of settlement. With this dilemma in mind, the

---

[2]      *See* 6/7/13 Motion for the Entry of Protective and Sealing Order, Doc. No. 289.

[3]      Fed. R. Civ. P. 26(c)(1)(G).

umbrella Confidentiality Order applicable to all the cases within this multi-district litigation was entered on September 24, 2004.[4]

The Confidentiality Order provides that the parties to this action may designate as confidential documents "produced or disclosed by any party and which are or contain a trade secret or other confidential research, development or commercial information, as those terms are used in Rule 26(c)[1][G] of the Federal Rules of Civil Procedure, including also any copies, summaries, portions or abstracts thereof . . . ."[5]  It further provides that "recent and future research and development activities" may be "commercial information" subject to designation as confidential.[6]  Finally, Section II.L.a. of the Confidentiality Order mandates that when documents designated as confidential are filed on the docket of the case, a party that wishes them to remain under seal must file a motion within thirty days and demonstrate good cause for the sealing.

### B.    The Presumed Right of Access to Judicial Documents

---

[4]      *See* Confidentiality Order.

[5]      *Id*. § II.C.a.(ii)(1).

[6]      *Id*.

Under both the common law and the First Amendment, the public has a qualified right of access to documents used in courtroom proceedings.[7]  This right rests upon the fundamental principle that the law is legitimate only if accountable to the people, and the recognition that accountability can be achieved only by transparency.[8]  The judicial independence enshrined in Article III would be unchecked if its exercise were routinely hidden from public view.[9]

### 1.    The Common Law Right of Access to Judicial Documents

---

[7]    *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006) (holding that existence of confidentiality order did not defeat public right of access to documents considered by lower court in deciding summary judgment motion).

[8]    *See id*. at 119 ("Without monitoring, [] the public could have no confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings.  Such monitoring is not possible without access to testimony and documents that are used in the performance of Article III functions.") (quotation marks and citations omitted).  *See also* T.S. Ellis III, *Sealing, Judicial Transparency and Judicial Independence*, 53 VILL. L. REV. 939 (2008) (arguing that the public right of access preserves judicial independence by protecting the perceived legitimacy of the courts).  *But cf.* Stephen Wm. Smith, *Gagged, Sealed, & Delivered: Reforming ECPA's Secret Docket*, 6 HARV. L. & POL'Y REV. 313 (2012) (noting that the Foreign Intelligence Surveillance Act court handles roughly one thousand secret cases per year, and that tens of thousands of secret cases are generated by the Electronic Communications Privacy Act of 1986).

[9]    *Cf. In re Oliver*, 333 U.S. 257, 266 (1948) ("[W]e have been unable to find a single instance of a criminal trial conducted *in camera* in any federal, state, or municipal court during the history of this country.  Nor have we found any record of even one such secret criminal trial in England since abolition of the Court of Star Chamber in 1641. . . .").

Under the common law, "[t]he decision of whether to seal judicial documents — and deny public access to them — 'is . . . left to the sound discretion of the trial court.'"[10]  In exercising this discretion, courts employ a three-part test.

*First*, the court must determine whether "the documents at issue are indeed judicial documents[,]" such that the presumption of access applies.[11]  A 'judicial document' is an item filed on the docket that is "relevant to the performance of the judicial function and useful in the judicial process."[12]  For example, documents attached to a motion to dismiss under Rule 12(b)(6) are not 'judicial documents' if they may not be properly considered by the court in resolving the motion, but the *complaint* of the case *is* a judicial document when a

---

[10]  *JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*, No. 12 Civ. 5847, 2013 WL 713929, at *10 (E.D.N.Y. Feb. 28, 2013) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978)).

[11]  *Lugosch*, 435 F.3d at 119 (quotation marks and citation omitted).

[12]  *Id*.

court rules on the motion.[13]  However, the public has no right of access at common

law to the record produced in traditionally non-public proceedings.[14]

       *Second*, "[o]nce the court has determined that the documents are

judicial documents and that therefore a common law presumption of access

---

[13]    *Compare Standard Inv. Chartered v. National Ass'n of Secs. Dealers, Inc.*, 621 F. Supp. 2d 55, 66 (S.D.N.Y. 2007) (holding that documents submitted in connection with a motion to dismiss under Rule 12(b)(6) are not "judicial documents" under *Lugosch*, because consideration of documents outside of the pleadings would convert the Rule 12(b)(6) motion to a motion for summary judgment), *aff'd sub nom. Standard Inv. Chartered, Inc. v. Financial Indus. Regulatory Authority, Ind.*, 347 Fed. App'x 615, 617 (2d Cir. 2009), *with Ello v. Singh*, 531 F. Supp. 2d 552, 584 n.32 (S.D.N.Y. 2007) (holding that, for the purposes of Rule 12(b)(6) motion, the complaint itself, as opposed to documents submitted in connection with  motion, is a judicial document subject to the public's right of access) (citing *Lugosch*, 435 F.3d at 119).  *Cf. Lugosch*, 435 F.3d at 121 (stating that "'[a]n adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny'") (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)).

[14]    *See In re Application of New York Times Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401, 410 n.4 (2d Cir. 2009) (enumerating circumstances to which the public's right of access to judicial proceedings does not extend, *e.g.*, the record of grand jury proceedings).  *See also* Fed. R. Civ. P. 5(d)(1) (mandating that "disclosures under Rule 26(a)(1) or (2)[,] [] [as well as depositions, interrogatories, requests for documents or tangible things or to permit entry onto land, and requests for admission] must not be filed until they are used in the proceeding or the court orders filing[]").  The Advisory Committee note to the 2000 Amendment to the Federal Rules of Civil Procedure explains that "the filing requirement applies only with regard to materials that are used [in actions by the Court], [and] only those parts of voluminous materials that are actually used need be filed."

attaches, it must determine the weight of that presumption."[15]  The weight of the

presumption varies relative to "the role those documents played in determining

litigants' substantive rights — conduct at the heart of Article III — and [] the need

for public monitoring of that conduct."[16]  The presumption is strongest when the

documents at issue are "material to [the] [c]ourt's disposition of [the] case on the

merits[;]"[17] it is "appreciably weaker" when:

> [the] documents [] do not serve as the basis for a substantive
> determination. . . .   The weakest presumption is given to
> documents such as preliminary settlement documents, which have
> not yet been submitted to a court for ratification. . . . Discerning
> the weight of the presumption with respect to judicial documents
> falling between these extremes on the continuum is a matter of
> judgment.[18]

---

[15]     *Lugosch*, 435 F.3d at 119.

[16]     *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995).

[17]     *United States v. Graham*, 257 F.3d 143, 151 (2d Cir. 2001) (quotation
marks and citations omitted).

[18]     *Id.  Accord City of Hartford v. Chase*, 942 F.2d 130, 135 (2d Cir.
1991) ("[O]ur past cases make clear that a federal judge has the power to prevent
access to settlement negotiations when necessary to encourage the amicable
resolution of disputes, and that a federal court's power to seal documents takes
precedence over [Freedom of Information Act] rules that would otherwise allow
those documents to be disclosed.") (citations omitted).

Tradition provides a guidepost for determining the weight to be given the presumption of access.  For example, the presumption of access is stronger when the document at issue would typically appear in the public record of a case.[19]

*Finally*, "after determining the weight of the presumption of access, the court must balance competing considerations against it."[20]  Valid "competing considerations" include "the danger of impairing law enforcement or judicial efficiency" and "the privacy interests of those resisting disclosure."[21]  Thus, in appropriate cases, a court may order the sealing of documents that touch upon issues of national security, or that would reveal a party's trade secrets.[22]  But keeping a case entirely out of public view is never justifiedtu.[23]

---

[19]     *See Graham*, 257 F.3d at 151 ("'That judgment can be informed in part by tradition.  Where such documents are usually filed with the court and are generally available, the weight of the presumption is stronger than where filing with the court is unusual or is generally under seal.'") (quoting *Amodeo*, 71 F.3d at 1050).  For example, the weight of the presumption of public access is slight — or nonexistent — as to documents that Rule 5(d)(1) commands parties not to file.

[20]     *Lugosch*, 435 F.3d at 120 (quotation marks and citation omitted).

[21]     *Id.*

[22]     *See, e.g., United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008) (national security); *Lugosch*, 435 F.3d at 125 (attorney-client privilege); *Nycomed United States, Inc. v. Glenmark Generics, Inc.*, No. 08 Civ. 5023, 2010 WL 889799, at *5 (E.D.N.Y. Mar. 8, 2010) (trade secrets).

[23]     *Cf. Union Oil Co. of California v. Leavell*, 220 F.3d 562, 567 (7th Cir. 2000) ("Even disputes about claims of national security are litigated in the open.  Briefs in the Pentagon Papers case  and the hydrogen bomb plans case were

**2.The First Amendment Right of Access to Courtroom Proceedings**

In addition to possessing a qualified right of access to judicial documents at common law, the public also has a narrower, but stronger, right of access to certain judicial documents under the First Amendment.  In the Second Circuit, two complementary approaches govern this right: (1) the experience and logic approach; and, (2) the access to the courts approach.

> The [] "experience and logic" approach requires the court to consider both whether the documents "'have historically been open to the press and general public'" and whether "'public access plays a significant positive role in the functioning of the particular process in question.'"  "The courts that have undertaken this type of inquiry have generally invoked the common law right of access to judicial documents in support of finding a history of openness."  The second approach considers the extent to which the judicial documents are "derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings."  "The courts that have undertaken this type of inquiry have generally invoked the common law right of access to judicial documents in support of finding a history of openness."  The second approach considers the extent to which the judicial documents are "derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings."[24]

---

available to the press, although sealed appendices discussed in detail the documents for which protection was sought.") (citations omitted).

[24]     *Lugosch*, 435 F.3d at 120 (quoting *Hartford Courant*, 380 F.3d at 91, 93 (quoting *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8 (1986))).  *Cf. Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 576 (1980) (plurality opinion) ("[T]he First Amendment guarantees of speech and press, standing alone, prohibit government from summarily closing courtroom doors which had long been open to the public at the time that Amendment was adopted.").

Once properly invoked, the public's right of access to judicial documents under the First Amendment must be given "strong weight."[25] Specifically, the presumption of public access to judicial documents may be overcome only by a showing that "the requested sealing is narrowly tailored to preserve 'higher values.'"[26] To make this showing, "[t]he party opposing disclosure must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection . . . ."[27] Moreover, the court ordering the sealing must make "findings specific enough that a reviewing court can determine whether the [sealing] order was properly entered."[28]

## III.DISCUSSION

I evaluate TPPRC's motion to maintain the fourteen documents under seal under the three-step approach laid out above. *First*, the documents at issue are "judicial documents[,]" because they are "relevant to the performance of the judicial

---

[25]    *Graham*, 257 F.3d at 151.

[26]    *E.E.O.C. v. Kelley Drye & Warren LLP*, No. 10 Civ. 655, 2012 WL 691545, at *2 (S.D.N.Y. Mar. 2, 2012) (quoting *Lugosch*, 435 F.3d at 120) (further citations omitted).

[27]    *In re Parmalat Secs. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009) (citations omitted).

[28]    *Waller v. Georgia*, 467 U.S. 39, 45 (1984) (quotation marks and citations omitted).

10

function" — here, ruling on TOM's pending motion to dismiss for lack of personal

jurisdiction.[29]  It is beyond cavil that competent evidence of jurisdictional facts

may be considered in ruling on a motion to dismiss under Rule 12(b)(2).

*Second*, the presumption of public access to the documents at issue is

relatively weak.  Under controlling precedent, the "weight [of the presumption of

access] . . . must be governed by the role of the material at issue in the exercise of

Article III judicial power and the resultant value of such information to those

monitoring the federal courts."[30]  The public's interest in monitoring the federal

courts will not be served in any appreciable way by inspection of the portions of

the documents at issue that TPPRC seeks to maintain under seal: the precise

amounts paid by TOM for its business acquisitions in Puerto Rico have little

bearing on its contacts with that forum, which is the focus of the underlying

judicial inquiry.

Furthermore, the underlying motion is only tangentially related to the

exercise of Article III power that the presumption of access was designed to

superintend.  "[T]he strong weight . . . accorded the public right of access to

judicial documents [is] largely derived from the role those documents played in

---

[29]     *Amodeo*, 44 F.3d at 145.

[30]     *Lugosch*, 435 F.3d at 119.

11

determining litigants' *substantive* rights. . . ."[31]  Here, the underlying Rule 12(b)(2)

motion does not call for a determination of the parties' substantive rights.

Dismissal for lack of personal jurisdiction is not an adjudication on the merits; it

leaves the losing party free to pursue its substantive rights in another forum.[32]

Likewise, denying a motion to dismiss for lack of personal jurisdiction may

precede, but is not itself, an adjudication on the merits.[33]  In short, in the current

posture, the documents at issue will "not serve as the basis for a substantive

determination. . . ."[34]  Thus, the presumption of access is weak relative to a

document considered in connection with a motion that is potentially dispositive on

the merits.

---

[31]     *Amodeo*, 71 F.3d at 1049 (emphasis added).

[32]     *See* Fed. R. Civ. P. 41(b) (stating than a dismissal "for lack of
jurisdiction" is not "an adjudication on the merits").

[33]     *See, e.g., In re Rationis Enters., Inc. of Panama*, 261 F.3d 264, 267-68
(2d Cir. 2001) (recognizing that jurisdiction must be established as a threshold
matter before an inquiry into the merits) (citations omitted).  *Cf. Steel Co. v.
Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("'Without jurisdiction the court
cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and
when it ceases to exist, the only function remaining to the court is that of
announcing the fact and dismissing the cause.'") (quoting *Ex parte McCardle*, 7
Wall. 506, 514, 19 L.Ed. 264 (1868)).

[34]     *Graham*, 257 F.3d at 151.

12

Relatedly, I conclude that the First Amendment framework does not apply to TPPRC's request to seal the documents at issue under either the experience and logic or access to the courts approach. Vital to this conclusion is the unusual posture of this case. Normally, only jurisdictional discovery will have taken place prior to a court's ruling on a motion to dismiss for lack of personal jurisdiction. In light of this practice, there is ordinarily a fairly tight nexus between the information available to a plaintiff and the analysis of a motion to dismiss for lack of personal jurisdiction. In this case, though, the Plaintiffs have had many years of discovery prior to adding TOM as a defendant. There is no tradition of public access to documents culled from full discovery that become relevant only because of a motion to dismiss for lack of personal jurisdiction.

The fact that this information has been produced to Plaintiffs in discovery does not imply that the public has a right to access it under the First Amendment. As the Supreme Court has recognized, "[a] litigant has no First Amendment right of access to information made available only for purposes of trying his suit."[35] This is so because:

> [Pre-trial discovery] proceedings were not open to the public at
> common law, and, in general, [] are conducted in private as a

---

[35]     *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 (1984). *Accord Joy*, 692 F.2d at 893 ("Discovery involves the use of compulsory process to facilitate orderly preparation for trial, not to educate or titillate the public.").

13

> matter of modern practice.  Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action.  Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information.[36]

Thus, where "a protective order is entered on a showing of good cause as required by Rule 26(c), is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment."[37]

     *Finally*, I conclude that TPPRC's interest in confidentiality justifies maintaining under seal only those portions of the documents that are not relevant to the analysis of jurisdiction.  TPPRC argues that its business plan — *e.g.*, its reservation price for mergers and acquisitions, and its expansion strategy — will be given away if the documents at issue are unsealed entirely.  This interest legitimately extends only to sealing, *e.g.*, the prices paid by TPPRC, not the elements of the documents that are necessary for the analysis of jurisdiction.  The public has the right to inspect and monitor the portions of the documents that are relevant to the jurisdiction inquiry.[38]  Thus, the documents will be maintained

---

[36]    *Seattle Times*, 467 U.S. at 33.

[37]    *Id*. at 37.

[38]    *Cf. JetBlue Airways*, 2013 WL 713929, at *10 (ordering the unsealing of summary of defendant's contacts with New York forum in connection with

under seal pending my Order on the pending motion to dismiss.  Thereafter, any

portions of them pertinent to that Order — but only those portions — must be filed

publicly.

## IV.   CONCLUSION

For the foregoing reasons, TPPRC's motion for a protective and

sealing order is granted.  The Clerk of the Court is directed to close the motion

(Doc. No. 289).  The parties are directed to re-file the fourteen documents at issue,

redacted only to the extent permitted above, when I issue a ruling on the pending

motion to dismiss.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            July 12, 2013

---

opinion and order ruling on Rule 12(b)(2) motion to dismiss).

15

**-Appearances-**

**Counsel for Commonwealth**:

Michael Axline, Esq.
Miller, Axline, & Sawyer
1050 Fulton Avenue, Suite 10
Sacramento, California 95825
Tel: (916) 488-6688

**Liaison Counsel for Plaintiffs:**

Robin Greenwald, Esq.
Robert Gordon, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, New York 10038
Tel: (212) 558-5500

**Counsel for Defendant TPPRC:**

Elaine Maldonado-Matías, Esq.
Sepulvado & Maldonado, P.S.C.
Citibank Tower, Suite 1900
252 Ponce de León Ave.
San Juan, Puerto Rico 00918
Tel: (787) 765-5656

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
McDermott Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, New York 10020
Tel: (212) 547-5583