UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                      :

IN RE: METHYL TERTIARY BUTYL  :
ETHER ("MTBE") PRODUCTS      :     **OPINION AND ORDER**
LIABILITY LITIGATION             :
------------------------------------------------------------ :     **Master File No. 1:00-1898**
                                      :     **MDL 1358 (SAS)**
**This document relates to:**          :     **M21-88**
                                      :

*City of Merced Redevelopment Agency, et*  :
*al. v. Exxon Mobil Corp., et al.*, 08 Civ.      :
06306                                         :
                                         X
-----------------------------------------------------



**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

       This is a consolidated multi-district litigation ("MDL") relating to contamination — actual or threatened — from various defendants' use of the gasoline additive methyl tertiary butyl ether ("MTBE") and/or tertiary butyl alcohol, a product formed by the breakdown of MTBE in water. The City of Merced Redevelopment Agency and the Merced Designated Local Authority[1] (collectively, the "RDA") filed the initial complaint in this case in Merced County

---

       [1]     The Merced Designated Local Authority is the successor agency to the City of Merced Redevelopment Agency. *See* First Amended Complaint ("FAC") ¶ 1.

Superior Court on April 7, 2008.[2] The case was subsequently removed to federal court and transferred to this MDL Court.[3]

The RDA alleges that Exxon Mobil Corporation, Chevron U.S.A. Inc., Shell Oil Company, Equilon Enterprises LLC, Tesoro Corporation, and Tesoro Refining and Marketing Company[4] (collectively, "Defendants") sold gasoline containing MTBE to Merced gasoline stations — identified in this litigation as the 1415 R Street Station and 1455 R Street Station (collectively, the "R Street Stations") — and that MTBE was released into the Merced Redevelopment Project Area to the North of the R Street Stations, causing damage. Based on these allegations, the RDA asserts five claims for: (1) cost recovery under California's Polanco Act;[5] (2) products liability; (3) negligence; (4) trespass; and, (5) nuisance.[6]

---

[2] *See* Defendants' Memorandum in Support of Defendants' Motion for Partial Summary Judgment Re: Statute of Limitations ("Def. SOL Mem.") at 2.

[3] *Id.*

[4] *Id.* at App'x A.

[5] California Health & Safety Code § 33459. Defendants do not seek summary judgment on the RDA's claim under the Polanco Act.

[6] The RDA is not pursuing claims against Tesoro Corporation and Tesoro Refining and Marketing Company for 1415 R Street. *See* 3/28/13 Stipulation and Order of Dismissal with Prejudice Re: Certain Claims Against Tesoro Corporation and Tesoro Refining and Marketing Company. The RDA is not pursuing claims against Chevron U.S.A. Inc. for 1415 R Street. *See* Merced Station Matrix, Ex. 13 to 4/1/13 Declaration of Whitney Jones Roy in Support of Defendants' Motion for Partial Summary Judgment Re: Nuisance and Trespass.

Presently before this Court are two motions for partial summary judgment brought by Defendants, seeking to dismiss: (1) the RDA's claims of products liability, negligence, nuisance, and trespass on the grounds that they are time-barred; and (2) the RDA's claims of nuisance and trespass, which cannot be supported by the "mere supply" of gasoline.  For the reasons stated below, Defendants' statute of limitations motion is GRANTED.  Because the limitations issue also precludes the RDA's claims of nuisance and trespass, Defendants' motion on those grounds is MOOT.

II.     BACKGROUND

    A.     **The Allegations**

The RDA is an agency charged under the California Health and Safety Code with the power to "alter, improve, reconstruct, rehabilitate, modernize and clean up property in the blighted Merced Redevelopment Project Area ("[P]roject [A]rea")."[7] The RDA contends that Defendants are "legally responsible for the costs and damages relating to the presence and abatement of gasoline, hydrocarbons, and MTBE located in or around the Project Area which blight the Project Area, adversely impact the use of the Project Area, depreciate or stagnate property values, and adversely affect the interests of health, safety, and welfare of

---

    [7]    FAC ¶ 1.

the people."[8]  The RDA alleges that Defendants sold gasoline containing MTBE to Merced gasoline stations, which released it into the environment and "contaminated, polluted, and threatened, and continue[] to contaminate, pollute, and threaten, [the RDA's] Project Area."[9]

> The RDA alleges that:
>
> Gasoline containing MTBE [] was released from gasoline delivery systems in Merced until at least 1997 from gasoline retail stations . . . Over time, MTBE [] migrated down to groundwater and, after several years elapsed, traveled to the Project Area causing pollution, contamination, and interference with [RDA's] Project Area. This appreciable injury and damage occurred for the first time in July 2006, when . . . the [RDA] was asked to manage [the cleanup project].[10]

The RDA seeks "compensatory damages needed to investigate, remediate, and remove gasoline, hydrocarbons, and MTBE [] contamination, and for past, present, and future remediation and/or investigation costs incurred in or after August 2006."[11]

---

[8]   *Id.*

[9]   *Id.* ¶ 3.

[10]  *Id.* ¶ 27.

[11]  *Id.* ¶ 28.

### B.     Undisputed Facts Relating to the Statute of Limitations[12]

Between 1991 and 1992, William Cahill, the director of the RDA, negotiated with Costco to build a new store in the City of Merced at a location just North and West of the R Street Stations.[13]  During these negotiations, Cahill and the RDA learned of a contamination problem within the vicinity of the R Street Stations caused by a gasoline release.[14]  On October 15, 1992, the RDA received a report from Krazan & Associates[15] that confirmed the presence of gasoline

---

[12]     The RDA frequently responds to Defendants' submission of material facts by asserting: "Investigation is not synonymous with appreciable harm." RDA's Rule 56.1 Statement in Opposition to Defendants' Partial Motion for Summary Judgment Re: Statute of Limitations ("RDA SOL 56.1") ¶¶ 14, 16, 18–20, 23.  Because the RDA has not provided competent evidence to support this assertion, I disregard it and admit the statements of material fact to which it responds.  *See* Local Rule 56.1(c)–(d).

[13]     *See* Defendants' Rule 56.1 Statement in Support of Defendants' Partial Motion for Summary Judgment Re: Statute of Limitations ("Def. SOL 56.1") ¶ 2 (citing 11/3/11 Cahill Testimony in *City of Merced v. Chevron U.S.A., Inc, et al.* ("11/3/11 Cahill Testimony"), Ex. 1 to 4/1/13 Declaration of Whitney Jones Roy, Counsel for Defendants, in Support of Defendants' Partial Motion for Summary Judgment Re: Statute of Limitations ("SOL Roy Decl."), Tr. at 1829: 24–1830:4).

[14]     *See* Def. SOL 56.1 ¶ 3 (citing 11/4/11 Morning Cahill Testimony in *City of Merced v. Chevron U.S.A., Inc, et al.*, Ex. 2 to SOL Roy Decl., Tr. at 1952:5–1953:1).  The investigation of the contamination began at 1415 R but eventually came to include 1455 R.  *Id.*  Defendants' reference to this area as "the property" is consistent with the record.  *See* Def. SOL 56.1 ¶ 3.

[15]     Krazan & Associates is a firm of engineers, geologists and environmental specialists.  *See* Limited Site Characterization Investigation,

-5-

contamination in the property area being considered by Costco.[16] The reports indicated that the groundwater in the contaminated area flowed from the R Street Stations to the RDA's property.[17] In 1993, the negotiations between Costco and the RDA to build a new store fell through, but the RDA contracted to lease its property to Costco for use as a parking lot.[18] As part of the lease agreement, the RDA was obligated to perform "all required remediation of environmental hazards on the [p]roperty"[19] and "to make its best efforts . . . to prevent [the contamination] from migrating onto the rest of [Costco's property]."[20] In 1994, the RDA engaged the owners of the 1415 R Street station — the Shackelfords — to clean up the

---

Proposed Costco, West 14th and West 15th Streets between "R" and "U" Streets, Merced, California, Ex. 13 to SOL Roy Decl.

[16]   *Id.* The report was commissioned by Costco. *See* 11/3/11 Cahill Testimony Tr. at 1833:10–12. Whether the gasoline that caused the contamination discovered in 1992 contained MTBE is not established. *See* 1415 R Street Report, Ex. 1 to 4/29/13 Declaration of Duane C. Miller, Counsel for the RDA, in Opposition to Defendants' Partial Motion for Summary Judgment Re: Statute of Limitations ("Miller SOL Decl.").

[17]   *See* Def. SOL 56.1 ¶ 5 (citing 11/4/11 Afternoon Cahill Testimony in *City of Merced v. Chevron U.S.A., Inc, et al.* ("11/4/11 PM Cahill Testimony"), Ex. 3 to SOL Roy Decl., Tr. at 2013:7–22).

[18]   *See id.* ¶ 9.

[19]   Lease between Costco and RDA, Ex. 4 to Miller SOL Decl., at 11.

[20]   11/3/11 Cahill Testimony Tr. at 1836:16–24.

gasoline contamination at that property.[21]

In 1996, the RDA received a directive from the Department of Public Health for Merced County, the regulator of the cleanup site, to "include MTBE in the chemicals tested for in the next groundwater monitoring event."[22] Tests following this directive detected MTBE at the site,[23] and the RDA knew that

---

[21]   *See* Participation Agreement between RDA and the Shackelfords, Ex. 7 to Miller SOL Decl.

[22]   Merced Department of Health Letter, Ex. 7 to SOL Roy Decl. *See* 11/3/11 Cahill Testimony Tr. at 1840:17–1842:9.

[23]   *See* Def. SOL 56.1 ¶ 29 (citing 11/3/11 Cahill Testimony Tr. at 1843:9–16 ("Q: Did you then direct your environmental consulting firm to test for MTBE? Cahill: I believe we did. I don't recall that specifically, but MTBE started showing up in the reports. Q: So when they started testing for MTBE, they found it. Is that your recollection? Cahill: I believe they did, yes")). Because the RDA does not controvert Cahill's testimony with admissible evidence, *see* RDA SOL 56.1 ¶ 19, Defendants' statement that "MTBE was found at the site [] more than a decade before the Complaint was filed," Def. SOL 56.1 ¶ 19, is admitted for the purposes of this motion. *See* Local Civil Rule 56.1 (c)–(d) ("(c) Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party. (d) Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by FED. R. CIV. P. 56(c)"). *See also Jankousky v. North Fork Bancorporation, Inc.*, No. 08 Civ. 1858, 2011 WL 1118602, at *5 (S.D.N.Y. Mar. 23, 2011) (emphasis added) (dismissing defendant's objection to an interpretation of a contract because it had "*offered no evidence* to create a genuine dispute as to its intended meaning").

MTBE was concentrated in a plume near the R Street Stations that was traveling North along R Street in the groundwater towards the Project Area.[24] By the time MTBE was discovered at the R Street Stations, the RDA was authorized to proceed with remediation and was incurring costs and expenses supervising the cleanup.[25]

In January 2002, the California Regional Water Quality Control Board (the "RWQCB") — the local regulatory agency for the R Street Stations — informed the City of Merced and the RDA that the 1415 R Street Station was a "high priority site because of extremely high concentrations of petroleum hydrocarbons,"[26] including MTBE.[27] A March follow up letter from the RWQCB to the RDA summarized the extensive contamination history of the site and concluded:

---

[24] *See* Def. SOL 56.1 ¶ 20.

[25] *See id.* ¶¶ 14–15, 21. The 1455 R Street location was included after 1415 R Street. *See id.* ¶¶ 16–17.

[26] January 2002 Letter from the RWQCB to RDA, Ex. 14 to SOL Roy Decl.

[27] While the RDA alleges that the letter does not contain any reference to MTBE, *see* RDA 56.1 ¶ 27, the RDA was aware that the hydrocarbon contamination at the site included MTBE because BSK, a consulting firm like Krazan, compiled a report in 2000 for the RDA that showed MTBE present in millions of parts-per-billion. *See* Defendants' Reply Rule 56.1 Statement in Support of Defendants' Motion for Partial Summary Judgment Re: Statute of Limitations ¶ 27 ("Def. Rep. 56.1") (citing BSK Report, Ex. 8 to SOL Roy Decl.).

> The magnitude of the pollution [including MTBE] presently identified in groundwater, the rate of spreading of the pollution, and the threat this poses to the public water supply necessitates the rapid implementation of remedial measures more aggressive and comprehensive than the *existing* remediation system.[28]

By March 2002, the director of the RDA admitted that he was concerned about the contamination threat, which included MTBE.[29] In August, the RWQCB informed the RDA that there was a release of hydrocarbons from the 1455 R Street Station, and that the plume of polluted groundwater had commingled.[30]

In May 2006, the RWQCB notified the RDA and the R Street Stations that remediation of the plume was not progressing satisfactorily, and that the RWQCB intended to issue a Clean-up and Abatement Order ("CAO").[31] In July,

---

[28] March 2002 Letter from the RWQCB to RDA, Ex. 15 to SOL Roy Decl. (emphasis added).

[29] *See* Def. SOL 56.1 ¶ 25 (citing 11/4/11 PM Cahill Testimony Tr. at 2016:15–22 ("Q: Mr. Cahill, you knew by March of 2002 that the contamination from the R Street stations had spread and was spreading and that there could be a threat to Well 5 from the contamination, right? Cahill: Yes. That's correct. Q: And clearly that was a concern at that point in time to you, right? Cahill: Yes. We were concerned about the possibility")).

[30] *See* August RWQCB Letter, Ex. 11 to Miller SOL Decl. The RDA has not offered any evidence of subsequent hydrocarbon release from the 1455 R Street station. *See* Def. Rep. 56.1 ¶ 37.

[31] *See* May Letter from the RWQCB to Cahill, Ex. 13 to Miller SOL Decl.

the RWQCB determined that the RDA would manage and lead remediation of the R Street Station properties,[32] and the CAO was issued in October.[33]

In July 2008, the RDA executed a MTBE Remediation Coordination Agreement with the R Street Station owners. The agreement stated:

> [The RDA], City, and the Responsible Parties agree that while neither the [RDA] nor the City is a Responsible Party for the storage tank releases at 1415 R Street and 1455 R Street in Merced; the [RDA] shall be the lead in the overall underground MTBE contamination remediation efforts with an immediate focus on preventing MTBE contamination and protecting water quality in and around City Well No. 5.[34]

### III. LEGAL STANDARD ON A RULE 56 MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate only if the moving party shows "that there is no genuine dispute as to any material fact and [that the party is] entitled to judgment as a matter of law."[35] "A genuine dispute exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving

---

[32] *See* July Letter from the RWQCB to Cahill, Ex. 14 to Miller SOL Decl.

[33] *See* CAO, Ex. 15 to Miller SOL Decl.

[34] *Id.* at 2.

[35] *Rivera v. Rochester Genesee Regional Transp. Auth.*, 702 F.3d 685, 693 (2d Cir. 2012) (quoting FED. R. CIV. P. 56(c)) (some quotation marks omitted).

party.  A fact is material if it might affect the outcome of the suit."[36]

"The moving party bears the burden of establishing the absence of any genuine issue of material fact."[37]  To defeat a motion for summary judgment, the non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,'"[38] and "'may not rely on conclusory allegations or unsubstantiated speculation.'"[39]

In deciding a motion for summary judgment, I must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."[40]  However, "'[c]redibility determinations, the weighing of the evidence, and the drawing of

---

[36]     *Finn v. N.Y. State Office of Mental Health-Rockland Psychiatric Ctr.*, 489 Fed. App'x 513, 514 (2d Cir. 2012) (quotation marks omitted).

[37]     *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

[38]     *Gioia v. Forbes Media LLC*, 501 Fed. App'x 52, 54 (2d Cir. 2012) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

[39]     *Robinson v. Allstate Ins. Co.*, 508 Fed. App'x 7, 9 (2d Cir. 2013) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).

[40]     *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013) (quotations omitted).

legitimate inferences from the facts are jury functions, not those of a judge.'"[41]

"The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."[42]

## IV. APPLICABLE LAW

### A. California Statute of Limitations

Under section 338 of California's Civil Code of Procedure, a three-year statute of limitations applies to all of the claims in this case.[43] Like most jurisdictions, California applies the common law "last element accrual rule: ordinarily, the statute of limitations runs from the occurrence of the last element essential to the cause of action."[44] For claims predicated upon tortious injury to property, such as the RDA's, the element of harm is met upon "harm to the property itself[,]" as opposed to harm to its owner.[45]

---

[41] *Redd v. New York Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

[42] *Cuff ex rel. B.C. v. Valley Cent. School Dist.*, 677 F.3d 109, 119 (2d Cir. 2012).

[43] *See* California Code Civ. Pro. § 338(a) (claims "created by statute" must be commenced within three years); *id.* § 338(b) (claims for "trespass or injury to real property").

[44] *Aryeh v. Canon Bus. Solutions, Inc.* 55 Cal. 4th 1185, 1191-92 (2013).

[45] *Beck Dev. Co. v. Southern Pac. Transp. Co.*, 44 Cal. App. 4th 1160, 52 Cal. Rptr. 2d 518, 556 (1996). *Accord Starrh and Starrh Cotton Growers v. Aera Energy LLC*, 153 Cal. App. 4th 583, 63 Cal. Rptr. 3d 165, 170 (2007)

As the Supreme Court of California has observed,

> Application of the accrual rule becomes rather complex when . . . a plaintiff is aware of both an injury and its wrongful cause but is uncertain as to how serious the resulting damages will be or whether additional injuries will later become manifest. Generally, . . . even when the extent of damages remains speculative[,] . . . we have held that "the infliction of appreciable and actual harm, however uncertain in amount, will commence the statutory period.[46]

California courts recognize a number of exceptions to the last element accrual rule, the "'most important'" of which is "'the discovery rule. . . . [which] postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action.'"[47]  In determining whether a plaintiff has or should have discovered its injury, California courts consider both the plaintiff's "actual knowledge as well as knowledge that could reasonably be discovered through the investigation of sources open to [the plaintiff]."[48]  Generally, a plaintiff "need not

---

(holding that, for claims of permanent trespass, "[t]he cause of action accrues and the statute of limitations begins to run at the time of entry").

[46]     *Pooshs v. Philip Morris USA, Inc.*, 51 Cal.4th 788, 797 (2011) (quoting *Davies v. Krasna*, 14 Cal. 3d 502, 514 (1975)).

[47]     *Aryeh*, 55 Cal. 4th at 1192 (quoting *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999)).

[48]     *City of Santa Clara v. Atlantic Richfield Co.*, 137 Cal. App. 4th 292, 40 Cal. Rptr. 3d 313, 334 (2006) (citing *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 245 Cal. Rptr. 658, 751 P.2d 923, 928 (1988)).

be aware of the specific facts necessary to establish the claim[;]"[49] rather, once it "has a suspicion of wrongdoing[,]" it will be charged with knowledge of its injury.[50] The law of the case establishes that a claim for MTBE injury begins to run when: (1) MTBE is present in the groundwater and "results in a *contamination* of the groundwater"; or, (2) "the presence of MTBE in the groundwater caused or should have caused [a water district] to take some action."[51]

## V. DISCUSSION

### A. The RDA's Claims of Products Liability, Negligence, Nuisance, and Trespass Are Barred by California's Statute of Limitations

Because the RDA had knowledge of MTBE contamination and began incurring costs actively remediating such contamination long before April 7, 2005, California's statute of limitations bars its claims for products liability, negligence, nuisance, and trespass. It is undisputed that the RDA began incurring costs for MTBE clean-up as early as 1996,[52] and was actively remediating MTBE

---

[49] *Jolly*, 751 P.2d at 928.

[50] *Id.*

[51] *In re MTBE Prods. Liab. Litig. (SOL)*, 475 F. Supp. 2d 286, 293 (S.D.N.Y. 2006).

[52] *See* Def. SOL 56.1 ¶ 29. Because the undisputed facts do not establish that MTBE was present in the Project Area before 1996, I do not credit Defendants' claim that the RDA experienced harm as early 1992, when the RDA's

contamination at the R Street Stations by and before 2002.[53]  Indeed, it is these precise remediation costs that form the basis for the RDA's claims.[54]  Thus, the conclusion that the RDA's claims accrued outside of the limitations period is inescapable.

The RDA's position that the appreciable injury and damage to the Project Area first occurred in July 2006, when the RDA executed the CAO, is untenable.[55]  It is undoubtedly the case that neither the mere presence of MTBE,[56] nor an "investigation which discloses no contamination" constitutes appreciable harm giving rise to a cause of action under California law.[57]  However, as stated

---

deal with Costco fell through because of gasoline contamination.  *See* Def. SOL Mem. at 7.

[53]     *See* March 2002 Letter from the RWQCB to RDA, Ex. 15 to SOL Roy Decl.; August RWQCB Letter, Ex. 11 to Miller SOL Decl.

[54]     *See* FAC ¶¶ 27–28.

[55]     The RDA seeks damages from August 2006 onwards.  *See* Opp. Mem. SOL at 10. Defendants misinterpret the RDA's claims as dating back to 1992.  *See* Def. SOL Mem. at 13.

[56]     *In re MTBE Prods. Liab. Litig. (SOL)*, 475 F. Supp. 2d at 293. *Accord In re MTBE Prods. Liab. Litig.*, No. 10 Civ 4135, 2013 WL 3863890, at *28 (2d Cir. July 26, 2013) (some quotation marks omitted) (stating "even clear, good-tasting water contains dozens of contaminants at low levels, and therefore demands more than *de minimis* contamination before a water provider may establish injury").

[57]     Opp. Mem. SOL at 12 (citing *San Francisco Unif. Sch. Dist.*, 44 Cal. Rptr. 2d at 305 (the "act of testing and investigation which discloses no

above, the RDA was actively remediating MTBE contamination by 2002 at the R Street Stations,[58] and incurred costs for MTBE clean up as early as 1996.[59] It is therefore plain that the RDA suffered "'appreciable and actual harm, however uncertain in amount'" well outside the limitations period.[60]

Finally, the RDA's argument that, in order to prevail, Defendants must show that *its* properties, not the R Street Stations, were harmed outside of the statute of limitations is self-defeating.[61] Even if they were so inclined, Defendants cannot show harm to the RDA's properties because no evidence of such harm exists. In other words, no claim has accrued as to those properties; and if the RDA intends to assert such a claim without presenting any evidence of harm, then it would be summarily dismissed as unripe.

---

contamination cannot be equated with the actual harm of contamination")).

[58]   *See In re MTBE Prods. Liab. Litig. (SOL)*, 475 F. Supp. 2d at 293 (emphasis added) (finding harm "when the presence of MTBE in the groundwater *caused* . . . [the plaintiff] to take some action"). *See* March 2002 Letter from the RWQCB to RDA, Ex. 15 to SOL Roy Decl.; August RWQCB Letter, Ex. 11 to Miller SOL Decl.

[59]   Exxon began using MTBE in its gasoline in 1992. *See* 1415 R Street Report, Ex. 1 to Miller SOL Decl. It is unclear whether the contamination between 1992 and 1996 contained MTBE, but 1996 tests indicate MTBE contamination. *See* Def. SOL 56.1 ¶ 29.

[60]   *Pooshs v. Philip Morris USA, Inc.*, 51 Cal.4th 788, 797 (2011) (quoting *Davies v. Krasna*, 14 Cal. 3d 502, 514 (1975))

[61]   *See* Opp. Mem. SOL at 6.

Of course, the claims that the RDA is actually asserting allege contamination stemming from the R Street Stations, not direct injury to the RDA's property.[62] And because the RDA suffered the harm giving rise to these claims well outside the limitations period, these claims must be dismissed. As a result of this conclusion, Defendants' second motion for summary judgment on nuisance and trespass is moot, and I do not reach it.

## VI. CONCLUSION

For the foregoing reasons Defendants' Motion for Summary Judgment Re: Statute of Limitations is GRANTED, and Defendants' Motion for Summary Judgment Re: Nuisance and Trespass is MOOT. The Clerk of the Court is directed to close these motions (Doc. Nos. 147 and 151).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         July 31, 2013

---

[62] See FAC ¶ 28.

- Appearances -

**Liaison Counsel for Plaintiffs:**

Robin Greenwald, Esq.
Robert Gordon, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, New York 10038
Tel: (212) 558-5500
Fax: (212) 344-5461

**Counsel for RDA:**

Duane C. Miller, Esq.
Michael Axline, Esq.
Miller, Axline, & Sawyer
1050 Fulton Avenue, Suite 10
Sacramento, CA 95825
Tel: (916) 488-6688
Fax: (916) 488-4288

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
McDermott Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, New York 10020
Tel: (212) 547-5583
Fax: (212) 547-5444

**Counsel for Exxon Mobil Corp. on behalf of Chevron U.S.A. Inc., Shell Oil Co., Equilon Enterprises LLC, Tesoro Corp., and Tesoro Refining and Marketing Co.**

Jeffrey J. Parker, Esq.

Whitney Jones Roy, Esq.
Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071
Tel: (213) 620-1780
Fax: (213) 620-1398