UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

In Re: Methyl Tertiary Butyl Ether ("MTBE")          Master File C.A. No.
Products Liability Litigation                         1:00-1898 (SAS)
                                                      MDL 1358
**This Document Relates To:**

*City of Fresno v. Chevron U.S.A., Inc., et al.*,
Case No. 04-cv-04973
_____

## <u>MEMORANDUM OF LAW IN SUPPORT OF ULTRAMAR DEFENDANTS'<br>MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION</u>

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     STATEMENT OF FACTS ...................................................................................2

    a.      Litigation Overview ................................................................................2

    b.      The City's Allegations Against Ultramar Defendants ............................2

    c.      The Settlement Terms ..............................................................................4

    d.      The Settlement Terms Accurately Reflect Litigation Uncertainties.......4

        i.      Ultramar Defendants are only allegedly liable for impacts at five of
               the 20 sites at issue....................................................................................5

        ii.     To establish liability, the City must demonstrate that Ultramar
               Defendants' product was delivered to a site before a documented
               release of MTBE occurred at said site .........................................................5

        iii.    The City has not proffered evidence to demonstrate that Ultramar
               Defendants caused contamination impacting or threatening the
               City's water wells ....................................................................................7

        iv.     The City cannot prove its design defect claims ...........................................8

        v.      The City cannot prove that additional warnings would have
               prevented its injury ..................................................................................9

        vi.     The majority of the City's nuisance claims will fail..................................10

        vii.    The City's damages are uncertain..............................................................10

III.    ULTRAMAR DEFENDANTS' SETTLEMENT WITH THE CITY IS A GOOD
        FAITH SETTLEMENT .........................................................................................11

    a.      The *Tech-Bilt* good faith factors are satisfied in this case .....................12

        i.      The settlement amount is reasonable in light of Ultramar
               Defendants' potential proportionate liability ...............................................13

        ii.     Settlement discount....................................................................................14

        iii.    Financial condition/insurance limits ..........................................................15

        iv.     Existence of fraud, collusion, or conduct aimed to injure Non-
               Settling Defendants...................................................................................15

    b.      The Good Faith Settlement precludes and extinguishes all liability for
        contribution and indemnity as against Ultramar Defendants.................15

IV.     CONCLUSION.......................................................................................................16

#4335683.8

# TABLE OF AUTHORITIES

## CASES

*AmeriPride Servs. Inc. v. Valley Indus. Servs., Inc.*,
   2007 U.S. Dist. LEXIS 51364 (E.D. Cal. July 2, 2007) ........................................................ 12

*Barth-Wittmore Ins. v. H. R. Murphy Enterprises, Inc.*,
   169 Cal. App. 3d 124 (1985) ................................................................................................ 13

*In re MTBE Prod. Litig.*,
   457 F. Supp. 2d 455 (S.D.N.Y. 2006) .................................................................................. 10

*Khan v. Shiley Inc.*,
   217 Cal. App. 3d 848 (1990) .................................................................................................. 9

*Motus v. Pfizer Inc.*,
   196 F. Supp. 2d 984 (C.D. Cal. 2001) .................................................................................... 9

*Plenger v. Alza Corp.*,
   11 Cal. App. 4th 349 (1992) ................................................................................................... 9

*Plummer v. Lederle Labs*,
   819 F. 2d 349 (2d Cir. 1987) .................................................................................................. 9

*Stambaugh v. Superior Court*,
   62 Cal. App. 3d 231 (1976) .................................................................................................. 16

*Tech-Bilt, Inc. v. Woodward-Clyde & Assoc.*,
   38 Cal. 3d 488 (1985) ............................................................................................. 12, 13, 15

*Trujillo v. Crescent Jewelers*,
   2000 U.S. App. LEXIS 30235 (9th Cir. 2000) ...................................................................... 12

## STATUTES

Cal. Civ. Proc. Code § 877 ......................................................................................... 1, 2, 15

Cal. Civ. Proc. Code § 877(b) ................................................................................... 1, 12, 15

Cal. Civ. Proc. Code § 877.6 ............................................................................. 1, 2, 12, 14

Cal. Civ. Proc. Code § 877.6(a) ................................................................................... 11

Cal. Civ. Proc. Code § 877.6(b) ................................................................................... 12

Cal. Civ. Proc. Code § 877.6(c) ................................................................... 1, 12, 15, 16

Cal. Civ. Proc. Code § 877.6(d) ................................................................................... 12

## I.   INTRODUCTION

Ultramar Inc., Valero Refining Company-California, and Valero Marketing and Supply Company (the "Ultramar Defendants") seek an order from the Court confirming that their settlement with Plaintiff City of Fresno (the "City") (the "Settlement and Release") was made in good faith within the meaning of §§ 877 and 877.6 of the California Code of Civil Procedure ("CCP").   Ultramar Defendants' settlement provides for a payment to the City of $1,250,000 in exchange for a release and dismissal with prejudice of all claims associated with the present action.   A true and correct copy of the Settlement and Release is attached as Exhibit 1 to the Declaration of M. Coy Connelly ("Connelly Decl.").   This Settlement and Release was the result of arm's length negotiations which were conducted fairly and in good faith.   The settlement is made contingent upon the issuance of an order from this Court confirming that the settlement is made in good faith and confirming that Ultramar Defendants are protected from contribution and equitable indemnity claims pursuant to CCP §§ 877(b) and 877.6(c), and applicable case law. By this Motion, Ultramar Defendants seek such a determination and confirmation.

A good faith settlement determination is warranted because under the terms of the Settlement and Release, the City will receive more money than it possibly could have recovered against Ultramar Defendants at trial or in any other proceeding.   The City will have significant difficulty in establishing any of its claims against Ultramar Defendants or any other Defendant due, in part, to an extremely weak causation and damages case, and faces still additional hurdles for its strict liability, negligence, and nuisance claims.   Moreover, in the unlikely event that the City is able to establish it is entitled to recover anything from Defendants, Ultramar Defendants' proportional share of that liability would be minimal.   As a result, the settlement amount that Ultramar Defendants have agreed to pay contingent upon this Court's making a determination of good faith is fair and reasonable.   Ultramar Defendants have advised the remaining Defendants

of the terms of its agreement with the City and have received no indication of any objection.  *See* Connelly Decl., ¶ 2.  Accordingly, Ultramar Defendants respectfully request that the Court grant this Motion approving the settlement with the City as a "good faith settlement" pursuant to CCP §§ 877 and 877.6.

## II.  STATEMENT OF FACTS

### a.  Litigation Overview

This case is part of the federal court MTBE multi-district litigation (MDL 1358) now pending in the United States District Court, Southern District of New York.  Connelly Decl., ¶ 3. The City commenced this action in 2003, and amended its Complaint in 2004, claiming that City wells and/or the groundwater that supplies the City's wells had been or will be contaminated with methyl tertiary butyl ether ("MTBE") and/or TBA contained in gasoline that was manufactured, distributed, or sold by various Defendants.  *See* Connelly Decl., Ex. 2 (First Amended Complaint, in pertinent part), ¶¶ 1-3, 5, 25, 32, and 47.  In its First Amended Complaint, the City alleged claims under strict products liability based on design defect and failure to warn, negligence, trespass, and nuisance.  *Id.*, ¶¶ 71-81, 84-85, 99, and 102.  This Court entered summary judgment against the City on its trespass claim on February 4, 2013.  *See* Connelly Decl., Ex. 3 (Order dated Feb. 4, 2013).  On March 15, 2013, certain Defendants filed summary judgment motions on the City's nuisance, negligence, and strict liability claims. Connelly Decl., ¶ 4.  These motions are currently pending before the Court.  *Id.*

### b.  The City's Allegations Against Ultramar Defendants

Based on the allegations described above, the City claims that Ultramar Defendants are responsible, in part, for the damages the City claims to have suffered or that it will suffer in the future.  Specifically, the City alleges that Ultramar Defendants manufactured and sold gasoline containing MTBE that was delivered to gasoline stations in the City's service area, which leaked

-2-

MTBE gasoline into the subsurface that impacted or threatens to impact the City's water wells. *See* Connelly Decl., Ex. 2 (First Amended Complaint), ¶¶ 1-3, 5, 25, 32, and 47.  The City further claims that Defendants, including Ultramar Defendants, failed to provide adequate warnings and instructions regarding MTBE and its proper handling, and that the harm the City claims to have suffered to its water system by the unauthorized releases of gasoline containing MTBE at the sites at issue could have been prevented had adequate warnings been provided.  *See id.*, ¶¶ 71-81.

At the August 16, 2012 Status Conference, the Court ordered the City to identify: (a) the service station sites for which the City will pursue claims at trial and the Defendants against which those claims will be asserted; and (b) the service station sites as to which the City is dismissing all claims with prejudice.  *See* Connelly Decl., Ex. 4 (Case Management Order #108 (Trial Sites and Dismissed Sites)).  Per its identification in Case Management Order #108, the City pursued claims against Ultramar Defendants at seven service station sites for much of this litigation.   Connelly Decl., ¶ 5; *id.*, Ex. 4 (Case Management Order #108 (Trial Sites and Dismissed Sites)).  However, in March 2013, the City agreed to dismiss its claims against Ultramar Defendants at two of the seven sites, and withdraw its nuisance cause of action at a third.  *See* Connelly Decl., Ex. 5 (Letter from M. Axline dated March 6, 2013).  With respect to Ultramar Defendants, the City is therefore only asserting the following claims at the following five sites:

| STATION | CLAIMS |
|---|---|
| Valley Gas (2139 S. Elm) | Strict liability, negligence, nuisance |
| Beacon-ARCO #615 (1625 Chestnut) | Strict liability, negligence, nuisance |
| Tulare Exxon (4594 E. Tulare) | Strict liability, negligence, nuisance |
| Beacon 3519 (4591 E. Belmont) | Strict liability, negligence, nuisance |
| Red Triangle (2809 S. Chestnut) | Strict liability, negligence |

Connelly Decl., ¶ 5; *id.*, Ex. 5 (Letter from M. Axline dated March 6, 2013).

### c.   The Settlement Terms

The Settlement and Release between the City and Ultramar Defendants releases Ultramar Defendants from any and all claims by the City that were or could have been asserted in the present action.  *See* Connelly Decl., Ex. 1 (Settlement and Release) at pp. 2-4.  It also resolves all of the City's claims and potential future claims against Ultramar Defendants related to (a) any current alleged contamination of, or impacts to, the City's water wells from the release of gasoline or its components, including MTBE, and (b) any future contamination of, or impacts to, the City's water wells by MTBE, which occurs as a result of any actions or operations of Ultramar Defendants prior to the effective date of the Settlement and Release.  *See id.*  In exchange, Ultramar Defendants will provide a lump sum cash payment to the City in the amount of $1,250,000.  *See id.* at pp. 4-5.

### d.   The Settlement Terms Accurately Reflect Litigation Uncertainties

The City's allegations described above in Sections II(a) and II(b) above have been, and continue to be, hotly contested by Ultramar Defendants (and other Defendants).  For example, Ultramar Defendants contend that the City has suffered no cognizable injury that would allow the City to recover under any of its causes of action.  Connelly Decl., ¶ 6.  Ultramar Defendants also deny that their gasoline has contributed to any alleged MTBE or TBA contamination at the sites at issue, and further contend that they provided adequate warnings regarding MTBE, and deny that MTBE or gasoline containing MTBE are defective products.  *Id.*, ¶¶ 7-8.

For the reasons further described below, as of August 6, 2013, when the City and Ultramar Defendants agreed to the terms of their Settlement and Release, the settling parties each faced significant uncertainty, including as to which causes of action, if any, the City might prevail at trial and which Defendants, if any, would be found liable by the jury and, if so, for what amount of damages.  Connelly Decl*.,* ¶ 9.  In recognition of the onerous costs and great

uncertainty associated with completing a lengthy jury trial, and without Ultramar Defendants admitting any fault, responsibility, or liability, the City and Ultramar Defendants entered into the Settlement and Release now before this Court.  *See id.*, Ex. 1 (Settlement and Release).

       i.  <u>Ultramar Defendants are only allegedly liable for impacts at five of the 20 sites at issue</u>

At the time the parties reached an agreement to settle, the City alleged Ultramar Defendants were liable for MTBE contamination at only five of the 20 sites still at issue in this case: Valley Gas, Beacon-ARCO #615, Tulare Exxon, Beacon 3519, and Red Triangle (collectively, the "Ultramar Defendants-Related Stations").  *See* Connelly Decl., ¶ 5; *id.*, Ex. 5 (Letter from M. Axline dated March 6, 2013).  Ultramar Inc. (1) owned the Valley Gas station from November 12, 1974 through November 1, 1991; (2) leased the Beacon-ARCO #615 station beginning on or around November 1984 through May 31, 2007; (3) leased the Tulare Exxon station from January 22, 1985 through August 28, 1995; (4) leased the Beacon 3519 station from March 1, 1971 through October 20, 1999; and (5) never owned, leased, or operated the Red Triangle Station.  *See* Connelly Decl., ¶ 10.  Neither Valero Refining Company-California ("VRC-CA") nor Valero Marketing and Supply Company ("VMSC") ever owned or operated any of the sites at issue in this litigation.  *Id.*

       ii.  <u>To establish liability, the City must demonstrate that Ultramar Defendants' product was delivered to a site before a documented release of MTBE occurred at said site</u>

In a January 2013 hearing, the Court made it clear that, in order to prove liability, the City may not assume that MTBE releases continuously occurred at a particular gasoline station or site; instead, the City must have actual evidence of a release of MTBE.  *See* Connelly Decl., Ex. 6 (January 11, 2013 Status Conference transcript) at 42:19-43:5, 44:9-11, and 47:11-12. Therefore, in order to hold a Defendant liable for contamination at a site at issue, the City must

demonstrate that the Defendant's product was delivered to said station *before* a documented

release.  Mr. Marcel Moreau, the City's release expert, identified the following MTBE releases at

the Ultramar Defendants-Related Stations:

- **<u>Valley Gas</u>:**  Gasoline leaks were discovered at the Valley Gas station in August and October 1999.[1]  *See* Connelly Decl., Ex. 7 (Marcel Moreau Deposition excerpts) at 777:7-780:3.  Mr. Moreau does not opine that any discharges of MTBE gasoline occurred after the October or November 1999 time frame.  *Id.* at 779:23-780:3 ("I think that's it for the actual releases that were identified.").

- **<u>Beacon-ARCO #615</u>:**  Mr. Moreau opines that the last release of MTBE at Beacon-ARCO #615 occurred in June 1998.  *See* Connelly Decl., Ex. 7 (Marcel Moreau Deposition excerpts) at 773:2-4.

- **<u>Exxon Tulare</u>:**  Mr. Moreau attributes contamination at the Exxon Tulare site to an MTBE release that occurred at some time between the fall of 1992 and the time the station's underground storage tanks ("USTs") were removed in December 1998.  *See* Connelly Decl., Ex. 7 (Marcel Moreau Deposition excerpts) at 798:15-799:4.

- **<u>Beacon 3519</u>:**  Three USTs were removed from the site in December 1998, and later replaced.  *See* Connelly Decl., Ex. 8 (Marcel Moreau Expert Report – Beacon 3519) at 4.  Mr. Moreau does not opine that any MTBE releases occurred after the December 1998 removal of the station's USTs.  *Id.*

- **<u>Red Triangle</u>:**  The Red Triangle site contains both a retail station and a bulk plant.  *See* Connelly Decl., Ex. 7 (Marcel Moreau Deposition excerpts) at 203:16-205:8.  Mr. Moreau attributes MTBE contamination at the site to the December 1998 removal of the bulk plant's underground storage tanks.  *Id.* at 187:25-188:11 and 200:1-3.  Mr. Moreau does not attribute MTBE contamination at the site to the retail station.  *Id.* at 204:13-16.

Notably, Mr. Moreau does not identify any release at the Ultramar Defendants-Related Stations

as having occurred after 2000.

     As an initial matter, neither VRC-CA nor VMSC conducted *any* business in California

prior to March 16, 2000.  *See* Connelly Decl., ¶ 11.  Because there is no evidence to suggest that

---

[1]  Mr. Moreau stated that the October 1999 leak was actually discovered in November 1999, but this discrepancy is not material.

any releases occurred at the Ultramar Defendants-Related Stations after March 16, 2000, VRC-CA and VMSC cannot be held liable for any MTBE contamination at these stations.[2]

With respect to Ultramar Inc., there is no evidence that its gasoline was ever delivered to the Red Triangle station.  *See* Connelly Decl., ¶ 12.  Further, Mr. Moreau does not attribute any MTBE at the Valley Gas station to Ultramar Inc.'s ownership of the site.  *See* Connelly Decl., Ex. 9 (Marcel Moreau Expert Report – Valley Gas) at 4.  However, deposition testimony indicates that Ultramar Inc. supplied gasoline to the Valley Gas station until 1994.  *See* Connelly Decl., Ex. 10 (Shirley McMurphy Ahmad Deposition excerpts) at 13:9-15 and 27:1-27:17.  Thus, of the Ultramar Defendants and the Ultramar Defendants-Related Stations, the City would be restricted at trial to arguing that Ultramar Inc. is liable for MTBE releases at Valley Gas, Beacon-ARCO #615, Exxon Tulare, and Beacon 3519.  Ultramar Defendants, however, deny liability for any site at issue in the litigation.

> iii.   The City has not proffered evidence to demonstrate that Ultramar Defendants caused contamination impacting or threatening the City's water wells

The City has offered no expert assessment or evidence as to when or how an alleged release of MTBE gasoline from the Ultramar Defendants-Related Stations has impacted or will impact City water wells.  Connelly Decl., ¶ 13.  Indeed, the City has failed to provide groundwater modeling or other technical analysis that might indicate or predict the movement of alleged MTBE plumes emanating from the Ultramar Defendants-Related Stations.  *Id.*

Notably, no City well has ever had MTBE detections above the State's primary maximum contaminant level ("MCL") *or* the State's secondary MCL.[3]  *See* Connelly Decl., ¶ 14.

---

[2] In an effort to keep VRC-CA and VMSC in the lawsuit, the City resorted to making unsupported allegations that Valero Defendants have successor liability for the actions of Ultramar Inc.  *See* Connelly Decl., Ex. 5 (Letter from M. Axline dated March 6, 2013).  This is unequivocally false.  *See* Connelly Decl., ¶ 11.

In fact, the City has never reported MTBE detections in any of its wells at levels above even 1.5 parts per billion, which is well below California's MCLs. *Id.* Of the wells with trace MTBE detections, none have ever been removed from service or treated. *Id.* There is thus zero evidentiary support for the City's claim that it will have to install and maintain expensive treatment systems at water wells in the future to remove MTBE.

iv. <u>The City cannot prove its design defect claims</u>

The City's strict liability (design defect) claim will fail. The City contends MTBE dissolves into water and moves faster and farther than other gasoline constituents when released, is more persistent in the environment and more expensive to treat than other gasoline constituents, and allegedly can be tasted and smelled by some people at very low levels. The City further contends that, as a result, MTBE gasoline was defectively designed. Connelly Decl., Ex. 2 (First Amended Complaint), ¶¶ 51-55 and 73. It alleges that Defendants, including Ultramar Defendants, used MTBE despite knowing of these risks, *id.*, ¶¶ 71-74, and claims that ethanol was a viable alternative to MTBE and should have been used instead. *See id.,* ¶ 62.

However, discovery has shown that as a practical matter Defendants were forced to use MTBE in California to comply with amendments to the Federal Clean Air Act ("FCAA") and specifications required by the California Air Resources Board that required the use of an oxygenate to help reduce emissions from automobiles. *See* Connelly Decl., Ex. 11 (O'Brien Report excerpts), pp. 32-36, 94-98, 114. Ethanol was simply not a viable option at the time Defendants were required to meet the FCAA's amendments. *Id.* at pp. 114.

---

[3] Drinking water standards are called maximum contaminant levels ("MCLs"). In California, the primary MCL for MTBE—which was set to protect human health—is 13 ppb, and the secondary MCL—which was set to address aesthetics such as taste and odor—is 5 ppb. MCLs are found in Title 22 of the California Code of Regulations.

-8-

v.  <u>The City cannot prove that additional warnings would have prevented its injury</u>

The City's strict liability (failure to warn) claim will likewise fail.  In order to succeed on its failure to warn claim, the City must prove causation.  *See Khan v. Shiley Inc.*, 217 Cal. App. 3d 848, 855 (1990) (causation is essential element to products liability action no matter what theory of recovery is utilized).  The City must "prove not only that no warning was provided, but also that the inadequacy or absence of warning caused the plaintiff's injury."  *Motus v. Pfizer Inc.*, 196 F. Supp. 2d 984, 991 (C.D. Cal. 2001) (citation omitted).  In addition, a manufacturer has no duty to warn of a risk that is known and apparent.  *See Plenger v. Alza Corp.*, 11 Cal. App. 4th 349, 362 (1992); *see also Plummer v. Lederle Labs*, 819 F. 2d 349, 359 (2d Cir. 1987) ("no harm could have been caused by a failure to warn of a risk already known") (citation omitted).

The service station operators whom Ultramar Defendants supplied were all aware that gasoline is dangerous, must not be spilled, and must be immediately cleaned up if it is spilled, regardless of its specific chemical makeup.  As with all other refiners, Ultramar Defendants provided a well-recognized dangerous product for sale to a sophisticated user customer base.  Ultramar Defendants provided appropriate warnings regarding the transportation, storage, and handling of gasoline to station operators and independent jobbers who purchased gasoline from their facilities.

The City has not designated an expert who is qualified to testify about whether its proposed additional warnings would have changed the station operators' behavior and prevented the City's alleged injury.  Additionally, the City cannot show that Ultramar Defendants affirmatively instructed the owner or operators of the stations the City alleges Ultramar Defendants supplied to handle MTBE gasoline in an improper manner.  In contrast, Defendants

have designated Dr. Christine Wood, who opines that Defendants' warnings were adequate and any additional warnings would not have affected the gasoline station operator's behavior. Connelly Decl., Ex. 12 (Wood Report excerpts), p. 11.  Further, the discovery record contains the testimony of gasoline station owners and operators, who consistently testified that Defendants' warnings were adequate and that additional warnings would have not changed operators' behavior with respect to addressing a release of gasoline (with or without MTBE) in a prompt, reasonable, and comprehensive manner.

vi.   The majority of the City's nuisance claims will fail

The City's nuisance claims are also lacking.  To succeed on its nuisance causes of action, the City must establish that Ultramar Defendants caused the presence of MTBE in the City's drinking water well system.  Here, this means the City must show that Ultramar Defendants operated the stations where releases occurred.  *See In re MTBE Prod. Litig.*, 457 F. Supp. 2d 455, 463 (S.D.N.Y. 2006).  Neither VRC-CA nor VMSC owned or operated any of the stations where releases are alleged to have occurred; moreover, Ultramar Inc. never owned or operated the Red Triangle station.  *See* Connelly Decl., ¶ 10.  Therefore, the City will not be able to prove nuisance claims against VRC-CA or VMSC at any station, and will not be able to prove nuisance claims against Ultramar Inc. at Red Triangle.

vii.   The City's damages are uncertain

Even if the City were to prevail on its claims at trial, the amount of damages it could recover is uncertain at best.  The City has generally failed to proffer a legally sustainable damages case against any party, including Ultramar Defendants.  Connelly Decl., ¶ 15.  The City has presented no groundwater model predicting future MTBE impacts on the City's well system. *Id.* at ¶ 16.  Instead, the City essentially asserts that in order to prevent and/or mitigate future MTBE contamination that it claims will impact its wells, it must expend resources to conduct

-10-

additional assessment and remediation at the approximately 20 sites identified as alleged sources of MTBE.  However, the authority to order and oversee UST site remediation belongs to the Central Valley Regional Water Quality Control Board, not the City.  Moreover, the City's damages witnesses could not identify any costs the City had incurred to date related to the alleged contamination.  Furthermore, the City's water treatment expert, Richard Haberman, did not offer any opinions supporting a damages amount that the City might seek to recover at trial. *See id.*, ¶ 15.  Indeed, Mr. Haberman did not identify any City well that warranted treatment for MTBE contamination, but rather simply described a limited number of treatment options in the industry (*e.g.*, granular activated carbon treatment) to address MTBE contamination when it actually exists. *Id.*

As noted above, the City has never reported MTBE detections in any of its wells at levels above 1.5 parts per billion. *See* Connelly Decl., ¶ 14.  The City's well system has simply never experienced MTBE detections at levels even close to the State's MCLs, nor at levels that have required any remedial action in the past. *Id.*  Any future damage costs are highly unlikely, as MTBE has been out of Defendants' gasoline for a decade, and none of the City's wells have appreciable MTBE impacts at this time. *Id.*  In light of these facts, it is highly unlikely that any of the City's wells will require future treatment, much less that a jury would award the City significant future damages for such unnecessary treatment.

### III. ULTRAMAR DEFENDANTS' SETTLEMENT WITH THE CITY IS A GOOD FAITH SETTLEMENT

Section 877.6(a) of the Code of Civil Procedure provides that "[a]ny party to an action in which it is alleged that two or more parties are joint tortfeasors… shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors…."  CCP § 877.6(a).  A good faith motion "may be determined by

the court on the basis of affidavits served with the notice of hearing, and any counteraffidavits filed in response, or the court may, in its discretion, receive other evidence at the hearing." *Id.* § 877.6(b). Once a determination is made that a settlement was entered into in good faith, joint tortfeasors are barred from asserting contribution and equitable indemnity claims against the settling tortfeasor. *Id.* § 877.6(c); *accord id.* § 877(b) ("[I]t shall discharge the party to whom it is given from all liability for any contribution to any other parties."). To the extent other alleged joint tortfeasors object to the settlement, they bear the burden to establish that the settlement is not in good faith. *Id.* § 877.6(d). To demonstrate the lack of good faith, a party opposing the settlement must demonstrate that "the settlement is so far 'out of the ballpark' in relation to the [six *Tech-Bilt*] factors as to be inconsistent with the equitable objectives of the statute." *Tech-Bilt, Inc. v. Woodward-Clyde & Assoc.*, 38 Cal. 3d 488, 499-500 (1985). This Court is the appropriate court to determine the binding effect of the settlement with respect to the claims at issue in the present case. *See, e.g., AmeriPride Servs. Inc. v. Valley Indus. Servs., Inc.*, 2007 U.S. Dist. LEXIS 51364, at *8-9, 12-13 (E.D. Cal. July 2, 2007) ("A settling party in a federal action involving California claims can file a motion seeking a good faith determination."); *see also Trujillo v. Crescent Jewelers*, 2000 U.S. App. LEXIS 30235, *5 (9th Cir. 2000).

### a. The *Tech-Bilt* good faith factors are satisfied in this case

In considering good faith motions brought under CCP § 877.6, trial courts apply the analytical framework set forth in *Tech-Bilt, Inc. v. Woodward-Clyde & Assoc.*, 38 Cal. 3d 488 (1985). In *Tech-Bilt*, the California Supreme Court identified six factors to guide the courts' analyses of good faith motions: (1) a rough approximation of the plaintiff's total recovery and the settlor's proportionate liability, (2) the amount paid in settlement, (3) the allocation of settlement proceeds among plaintiffs, (4) recognition that a settlor should pay less in settlement than it would if it were found liable after a trial, (5) the financial condition and the insurance

policy limits of the settler, and (6) the existence of collusion, fraud, or tortious conduct aimed to injure the interests of non-settling defendants.  *Id.* at 499.  Not all of the above factors will apply in every case.  *Id.*  The Court should approve settlements within the "reasonable range" of the settling tortfeasor's proportionate share of liability.  *Id.* at 500.

Significantly, the Court must base its good faith evaluation on the information available to the parties at the time of the settlement.  Practical considerations obviously require that the evaluation be made on the basis of information available at the time of settlement.  A defendant's settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be.  *Barth-Wittmore Ins. v. H. R. Murphy Enterprises, Inc.*, 169 Cal. App. 3d 124, 133 (1985); *accord Tech-Bilt, Inc.*, 38 Cal. 3d at 500.

The settlement at issue in the instant case satisfies all applicable *Tech-Bilt* factors to be considered by this Court.

i.  <u>The settlement amount is reasonable in light of Ultramar Defendants' potential proportionate liability</u>

As discussed in Parts II(d)(i)-(vii), above, the evidence demonstrates that the City's products liability, negligence, and nuisance claims face serious hurdles.  Moreover, the City's ability to prove its case would be greatly affected if any of Defendants' proposed Rule 56 summary judgment motions are granted.  Additionally, the City's case for future damages to treat presently non-existent MTBE contamination is uncertain, at best.

All defendants, including Ultramar Defendants, deny liability to the City for any amount. Ultramar Defendants believe that any claims for damages by the City, which the City has yet to specify, would be inflated and speculative, would likely be significantly reduced or barred by pre-trial motions, and would not be supported at trial.  Moreover, even assuming that the City's

damages claims were supported and ultimately awarded at trial in either action, Ultramar Defendants' proportionate share of those damages would constitute only a small portion of the overall award for at least the following reasons:

VRC-CA and VMSC did not do business in California during the relevant time period, and therefore could not be liable for any contamination alleged to have occurred at the sites. *See* Connelly Decl., ¶ 11. Ultramar Inc. owned or leased only four of the 20 sites at issue in this case during the relevant time period, and it only did so for a portion of the relevant time period. *See id.*, ¶ 10. Moreover, the City provides no expert groundwater modeling to assess the alleged contamination caused, or to predict the contamination that it alleges will be caused, as a result of the purported releases from these sites. Connelly Decl., ¶ 16. Furthermore, the wells the Ultramar Defendants-Related Sites allegedly impact or threaten have only had sporadic MTBE detections, and all of those detections have been at very low levels that are significantly below the secondary MCL of 5 ppb. *Id.*

Although its liability is far from certain, Ultramar Defendants have agreed to settle this action for $1,250,000, in recognition of the risks and uncertainties on all sides, as well as the substantial expense and burden of conducting a long jury trial. *See* Connelly Decl., Ex. 1 (Settlement and Release). This settlement amount is reasonable in light of all the foregoing facts including the City's total claims for damages, Ultramar Defendants' minimal connections, or lack thereof, to the sites at issue, Defendants' affirmative defenses, and the inherent risks and uncertainties of continuing to litigate these matters after August 6, 2013, when the Settlement and Release was reached.

ii.  Settlement discount

The cases construing CCP § 877.6 are replete with references to the strong policy encouraging settlements, and *Tech-Bilt* notes that a discount is particularly warranted for those

who settle without the burden of trial.  "[A] settlor should pay less in settlement than he would if he were found liable after a trial."  *Tech-Bilt*, 38 Cal. 3d at 499.  The settlement amount is reasonable as the City and Ultramar Defendants have entered into the Settlement and Release, in part, to avoid further trial and other litigation expenses.  Indeed, the settlement amount far exceeds any reasonably expected liability by Ultramar Defendants to the City and is driven entirely by Ultramar Defendants' desire to avoid the expense and risk of litigation, as well as the diversion of management time to the administration of their defense in the lawsuit.

iii.   <u>Financial condition/insurance limits</u>

These factors have not been material constraints for Ultramar Defendants and thus are not material to the present motion.

iv.   <u>Existence of fraud, collusion, or conduct aimed to injure Non-Settling Defendants</u>

The negotiations leading up to the Settlement and Release were lengthy and vigorous, conducted at arm's length, and not in any way fraudulent, collusive, or harmful as to the non-settling defendants.  The Settlement and Release involves the payment of a substantial sum in settlement of a dispute between bona fide adversaries.

**b.  The Good Faith Settlement precludes and extinguishes all liability for contribution and indemnity as against Ultramar Defendants**

Ultramar Defendants have settled this matter in good faith.  Pursuant to CCP §§ 877(b) and 877.6(c), Ultramar Defendants should be protected from any and all claims sounding in contribution and/or equitable indemnity.  CCP § 877 provides:

> Where a release, dismissal with or without prejudice, or a covenant not to sue… is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort… (b) it shall discharge the party to whom it is given from all liability for any contribution to any other parties.

CCP § 877.

-15-

Section 877.6(c) similarly provides that the Court's determination "that the settlement was made in good faith shall bar any other joint tortfeasors… from any further claims against the settling tortfeasors… for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault."   CCP § 877.6(c).   The legislative intent in enacting these sections was expressed by the Court of Appeal in *Stambaugh v. Superior Court*, 62 Cal. App. 3d 231 (1976):

> Section 877's intent is clear. Where an alleged joint tortfeasor, prior to a judicial determination of his liability, in good faith settles the claim against him, he is forever discharged of further obligation to the claimant, and to his joint tortfeasors, by way of contribution or otherwise.

*Id.* at 235.

If the rule were otherwise, there would be little motivation to settle claims because a settling tortfeasor would be exposed to the expense and inconvenience of a multi-party trial through the back door of a cross-complaint for comparative equitable indemnity. Such a risk would greatly diminish the incentive for settlements and would result in needless proliferation of complex trials.

## IV. CONCLUSION

For the foregoing reasons, Ultramar Defendants respectfully request that the Court enter an order finding that their settlement with the City is in good faith and that all future actions or claims for indemnity or contribution by any party, including any defendant, cross-complainant, former defendant, and/or former cross-complainant to this case, are barred in their entirety as to Ultramar Defendants, and each of the Released Parties, as that term is defined in the Settlement and Release.

-16-

Dated:  August 16, 2013                          Respectfully submitted,

                                                 BRACEWELL & GIULIANI LLP


                                                 By:    /s/  M. Coy Connelly
                                                       M. Coy Connelly
                                                 Attorneys for Defendants Ultramar Inc.,
                                                 Valero Refining Company-California, and
                                                 Valero Marketing and Supply Company

                                      -17-

## <u>CERTIFICATE OF SERVICE</u>

I, M. Coy Connelly, hereby declare under penalty of perjury that a true and correct copy of the Memorandum of Law in Support of Ultramar Defendants' Motion for Good Faith Settlement Determination was served this 16th day of August, 2013 upon all counsel via LexisNexis File and Serve.

_____/s/  M. Coy Connelly_____
M. COY CONNELLY

-18-