(c)     Even at extremely low levels, MTBE renders drinking water putrid, foul, and unfit for purveying to consumers, and TBA also renders drinking water unfit for purveying as drinking water to the pubic;

(d)     MTBE and TBA and gasoline containing MTBE and/or TBA pose significant threats to public health;

(e)     Defendants failed to provide adequate warnings of the known and foreseeable risks of MTBE and TBA and gasoline containing MTBE and/or TBA, including but not limited to groundwater contamination with both MTBE and TBA;

(e)     Defendants failed to conduct reasonable, appropriate or adequate scientific studies to evaluate the environmental fate and transport and potential human health effects of MTBE and/or TBA and gasoline containing MTBE and/or TBA; and

(f)     Commercial grade MTBE is defectively designed and manufactured when it contains unnecessary but environmentally harmful impurities such as TBA.

77.  MTBE, and/or TBA, and/or gasoline containing MTBE and/or TBA, were used in a manner in which they were forseeably intended to be used, and as a proximate result of the defects previously described, MTBE and/or TBA and gasoline containing MTBE and/or TBA proximately caused the City of Fresno to sustain the injuries and damages set forth in this complaint.

78.  As a direct and proximate result of the acts and omissions of the defendants alleged herein, the City of Fresno must assess, evaluate, investigate, monitor, abate, clean-up, correct, contain, and remove MTBE and/or TBA from Fresno's water system, and secure alternative water supplies (with related operational impacts), all at significant expense, loss, and damage.

79.  As a further direct and proximate result of the acts and omissions of the defendants alleged herein, Fresno will sustain substantially increased expenses, loss of the use of water and a threat to its appropriative water rights, all to Fresno's damage in an amount within the

jurisdiction of this court. Fresno is also entitled to recover costs incurred in prosecuting this action and prejudgment interest to the full extent permitted by law.

80. Defendants ARCO, Chevron USA, Chevron Environmental Services Company, Shell, Exxon, Tosco (after 1996), Unocal, Union Oil, Kern Oil, TRMI, Ultramar (after 1996), Conoco, Equilon, ARCO Chemical, Lyondell, Valero Refining, Valero Marketing, and DOES 100-200 knew that it was substantially certain that their acts and omissions described above would threaten public health and cause extensive contamination of public drinking water supplies and property damage. These defendants committed each of the above described acts and omissions knowingly, willfully, and with oppression, fraud, and/or malice and with conscious disregard of the health and safety of others, and of plaintiff's water rights.

81. This conduct is reprehensible, despicable, and was performed to promote sales of MTBE and/or TBA and/or gasoline containing MTBE and/or TBA in conscious disregard of the known risks of injury to health and property. These defendants acted with willful and conscious disregard of the probable dangerous consequences of that conduct and its foreseeable impact upon Fresno. Therefore, Fresno requests an award of exemplary damages in an amount sufficient to punish ARCO, Chevron USA, Shell, Exxon, Tosco (after 1996), Unocal, Union Oil, Kern Oil, TRMI, Ultramar (after 1996), Conoco, Equilon, ARCO Chemical, Lyondell, Valero Refining, Valero Marketing, and DOES 100-200. After the completion of additional investigation and discovery, Fresno may seek leave of court to amend this complaint to allege a claim for exemplary damages against additional defendants if warranted by the facts.

## SECOND CAUSE OF ACTION

### (Negligence Against All Defendants)

82. Fresno refers to paragraphs 1 through 81 above, and by this reference incorporates them into this cause of action as though fully set forth herein.

83. Defendants had a duty to use due care in the design, manufacture, formulation, handling, control, disposal, sale, testing, labeling, warnings, use, and instructions for use of MTBE and TBA, and gasoline containing MTBE and/or TBA, and gasoline delivery systems.

84. Defendants so negligently, carelessly, and/or recklessly designed, manufactured, formulated, handled, labeled, instructed, controlled (or the lack thereof), tested (or the lack

17

thereof), released, spilled, failed to warn, and/or sold MTBE and/or TBA, and/or so negligently, carelessly and recklessly designed, manufactured, formulated, handled, labeled, instructed, entrusted, controlled (or the lack thereof), tested (or the lack thereof), released, spilled, failed to warn, dispensed and/or sold gasoline containing MTBE and/or TBA, and/or so negligently, carelessly, and recklessly dispensed MTBE and/or TBA and/or gasoline containing MTBE and/or TBA into gasoline delivery systems, and/or so negligently, carelessly and/or recklessly designed, installed, failed to warn, operated and/or maintained gasoline delivery systems for use with gasoline containing MTBE and/or TBA, that they breached their duties to plaintiff and directly and proximately caused MTBE and/or TBA to contaminate, pollute and threaten Fresno's water system, resulting in the harm which warrants the award of compensatory and punitive damages as prayed for in this complaint.

85. Defendants, and each of them, among other things, negligently, carelessly, and/or recklessly failed to: (1) use appropriate technology to prevent leaks of gasoline containing MTBE and/or TBA;  (2) install and maintain gasoline delivery systems that prevented leaks and facilitated prompt detection and containment of any leaks;  (3) monitor and discover leaks as soon as possible;  (4) warn those who may be injured as a result of the leaks; (5) warn those who handled MTBE of its properties; and (6) clean up and abate spills of gasoline containing MTBE and/or TBA as thoroughly and as soon as reasonably possible and in a manner necessary to prevent harm and injury.

86. The Refiner Defendants and Distributor Defendants had actual control over the Owner/Operator Defendants through a variety of means, including but not limited to written agreements, inspection rights, prescribing certain procedures and operating practices, training, sale of branded goods, and agreements obligating the respective Owner/Operator Defendants to acquire, store and sell gasoline containing MTBE and/or TBA.  Therefore, the Refiner and Distributor Defendants had actual control over the Owner/Operator Defendants with leaking gasoline delivery systems and/or were vicariously liable for the acts and conduct of the Owner/Operator Defendants.

87. The Refiner Defendants, Distributor Defendants, and Owner/Operator Defendants also undertook tank system testing, tank integrity testing, inventory reconciliation and testing,

18

thereby causing and permitting MTBE and/or TBA to contaminate and threaten Fresno's water system, and defendants failed to warn the appropriate entities and individuals, including Fresno, of known risks, spills, releases and/or leaks, and/or failed to undertake reasonable, appropriate, or necessary action to reduce, remediate, or abate MTBE and/or TBA groundwater contamination.

(e)     Defendants negligently overfilled gasoline delivery systems with gasoline containing MTBE and/or TBA, and/or spilled or released it at gasoline facilities near Fresno's water system.

(f)     When defendants learned, or reasonably should have learned, that MTBE and/or TBA were persistent, significant and/or widespread sources of groundwater contamination, or threatened to be so, defendants failed to warn the appropriate entities and individuals, including Fresno, of known risks, spills, releases and/or leaks, and/or failed to undertake reasonable, appropriate or necessary action to reduce, remediate, or abate MTBE and/or TBA groundwater contamination.

97. The Refiner and Distributor Defendants had actual control over the Owner/Operator Defendants through a variety of means, including but not limited to written agreements, inspection rights, prescribing certain procedures and operating practices, sale of branded goods, agreements obligating the respective Owner/Operator Defendants to acquire, store and sell gasoline containing MTBE and/or TBA, and training. Therefore, the Refiner and Distributor Defendants had actual control over the Owner/Operator Defendants with leaking gasoline delivery systems and/or were vicariously liable for the acts and conduct of the Owner/Operator Defendants.

98. The MTBE and TBA contamination of Fresno's water system has varied and will vary over time and requires investigation, remediation, abatement, and/or treatment. The City of Fresno has engaged, or will engage, in remediation, abatement, investigation, and/or treatment programs and in securing replacement water supplies, and thereby has sustained, is sustaining, and will sustain, the damages alleged herein.

99. The defendants, and each of them, caused, created, and/or assisted in the creation of the trespass alleged herein.

100.  For the reasons alleged herein, Fresno is entitled to an award of exemplary damages against defendants ARCO, Chevron USA, Shell, Exxon, Tosco (after 1996), Unocal, Union Oil, Kern Oil, TRMI, Ultramar (after 1996), Conoco, Equilon, ARCO Chemical, Lyondell, Valero Refining, Valero Marketing, and DOES 100 through 200.  After the completion of additional investigation and discovery, Fresno may seek leave of court to amend this complaint to allege a claim for exemplary damages against additional defendants if warranted by the facts.

## FOURTH CAUSE OF ACTION

### (Nuisance Against All Defendants)

101. Fresno refers to paragraphs 1 through 100 above, and by this reference incorporates them into this cause of action as though fully set forth herein.

102. The negligent, reckless, intentional and ultrahazardous activity of the defendants and each of them, as alleged herein, has resulted in the contamination and pollution of and threats to Fresno's water system and thereby constitutes a nuisance.   The contamination, pollution, and threats to Fresno's water system with MTBE and/or TBA and gasoline containing MTBE and/or TBA is a public nuisance as defined in Civil Code section 3479, Civil Code section 3480, Health and Safety Code section 5410, and Water Code section 13050, as it is injurious to health, indecent and offensive to the senses, obstructs the free use of property, interferes with the comfortable enjoyment of life or property, and is reasonably abatable.  The defendants, and each of them, caused, created, and/or assisted in the creation of the nuisance alleged herein.

103.  The Refiner, Manufacturer and Distributor Defendants, their agents and employees, marketed, distributed, promoted, and/or sold their products with reckless disregard for human health and the environment.

104. Fresno's water system is adversely affected by the nuisance.

105. The nuisance caused by defendants, and each of them, has substantially interfered with and obstructed Fresno's ability to provide a water supply free from unacceptable health risk, taste, odor, color, pollution and contamination, and to protect its water system and groundwater supplies from such harm.

106.  Fresno owns and holds property rights and interests damaged by the nuisance. Fresno's injury is separate and distinct from that of the public.

# EXHIBIT 3

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/4/13

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In Re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

This document relates to:

*City of Fresno v. Chevron U.S.A. Inc., et al*

04   Civ. 4473 (SAS)

**STIPULATION AND ORDER RE**
**SUMMARY JUDGMENT ON**
**PLAINTIFF'S CLAIM FOR**
**TRESPASS**

**Master File No. 00 Civ. 1898**
**MDL 1358 (SAS)**
**M21-88**

**STIPULATION AND ORDER RE SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM**
**FOR TRESPASS**

The undersigned parties hereby stipulate as follows:

WHEREAS, on October 22, 2003, Plaintiff City of Fresno ("Plaintiff" or the "City") filed

its Complaint against Defendants Chevron U.S.A. Inc., *et al*, in the Superior Court for the State

of California, San Francisco County, alleging that Defendants were liable for contaminating the

City of Fresno's public drinking water supplies with MTBE and TBA. The Complaint included

a claim for relief for Trespass.

WHEREAS, the case was removed to federal court and transferred to this Court.

WHEREAS, on October 28, 2004, Plaintiff filed a First Amended Complaint, which

included a claim for relief for Trespass.

WHEREAS, on June 20, 2011, this Court issued an order disposing of Plaintiff Orange

County Water District's claim for Trespass on summary judgment in the matter *Orange County

Water District v. Unocal, et al*. 04 Civ. 4968 (the "*OCWD*" matter).

WHEREAS, on December 12, 2012, a group of Defendants submitted a letter brief to the

Court requesting permission to a file a Motion for Summary Judgment regarding the City's

SMRH:407978891.2                          -1-

Trespass claim. The letter brief was joined by Defendant Nella Oil Company. Defendants' letter brief explained that their Motion for Summary Judgment regarding Trespass would argue that the ruling in the *OCWD* matter should be applied consistently to the *City of Fresno* case. Specifically, Defendants argued that:

- This Court has already found in the *OCWD* matter that, under California law, "A trespass is an invasion of the interest in the *exclusive* possession of land, as by entry upon it ..." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 824 F. Supp. 2d 524, 545 (S.D.N.Y. 2011) (quoting *Wilson v. Interlake Steel Co.*, 185 Cal. Rptr. 280, 283 (1982) (emphasis added by Court).)

- The Court further noted that a usufructuary right is appropriative, and that "[t]he right of an appropriator ... is ... subordinate to an overlying right-holder." *Id.* at 546.

- In disposing of the Orange County Water District's claim for trespass because the District lacked exclusive possession, this Court further noted that "exclusive possession is a necessary prerequisite to bringing a trespass claim." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 279 F.R.D. 131, 139 (S.D.N.Y. 2011).

- The City of Fresno's trespass claim is no different. Plaintiff does not have an exclusive right such that it can assert a claim for trespass under California law.

WHEREAS, on December 21, 2012, Plaintiff submitted a letter brief opposing Defendants' request, responding to the points raised in the Defendants' December 12 letter, and arguing that summary judgment of the Trespass claim would be improper. Specifically, Plaintiff argued the following:

- The ruling in *OCWD* should not be applied to the City of Fresno because the City was different than the Orange County Water District: use of water for domestic purposes carries the highest priority under the California Constitution, the City has a public water system permit issued by the State, has the right to withdraw water from the aquifer to provide water to the public, and is exercising both the State's rights through the permit and its own water purveyor rights.

- The City is entitled to a full panoply of tort remedies. *County of Santa Clara v. Atlantic Richfield, Co.*, 137 Cal. App. 4th 292, 313 (2006).

WHEREAS, on December 31, 2012, Defendants submitted a reply letter brief to the Court responding to Plaintiff's contentions.

WHEREAS, the Court heard argument regarding the potential motion on January 11, 2013, including the City's argument that it was asserting different rights than OCWD by virtue of its extraction and sale of water pursuant to a State permit. In the argument, it was pointed out that this Court ruled in the *OCWD* matter, "OCWD's common law claims derived from its property rights in the groundwater within its territory" and "[e]arlier in this [*OCWD*] litigation OCWD argued, and this Court accepted, both that OCWD has usufructuary rights in the groundwater that it alleges that the defendants have contaminated [citations] and that these rights are not subservient. . . Furthermore, it is on the basis of these property rights that OCWD is able to pursue its common law claims." (676 F. Supp. 2d 139, 146 & n.40). The Court indicated that (1) it appeared that the decision in *OCWD* would apply here, and the basis of the trespass claims of the City and OCWD were not materially different such that the result would be different, and (2) the parties should not file summary judgment motions where the claims are not

materially distinguishable from claims adjudicated by the Court in motions in focus cases applying the same State's law.

WHEREAS, the parties are mindful of the Court's directive and do not want to unnecessarily burden the Court.

WHEREAS, Plaintiff is willing to forego the summary judgment process on the Trespass claim so long as Plaintiff does not waive the right to appeal the decision applying the *OCWD* ruling to this case or to argue in any such appeal that the *OCWD* ruling was incorrect. Plaintiff retains the right to argue all grounds for appeal, except that Plaintiff does, however, waive the right to appeal this order on the grounds that the entry of it is procedurally improper.

Accordingly, the parties agree to and request that the following order be entered by the Court in lieu of briefing and hearing a Motion for Summary Judgment:

**[PROPOSED] ORDER**

**IT IS HEREBY ORDERED, ADJUDGED, and DECREED** that:

1.     Summary Judgment is entered against Plaintiff on the Trespass claim based on the reasoning and authorities set forth above, in the Court's trespass decision in the *OCWD* case, in the parties' letter briefs filed in this case, and in the hearing on January 11, 2013.

2.     The Trespass claim against all Defendants is dismissed with prejudice.

3.     Plaintiff shall retain the right to appeal this order as if it were a ruling granting a defense Motion for Summary Judgment.  Signing this stipulation and entry of this order shall in no way be construed as any waiver of the right to appeal.

4.     Plaintiff retains the right to argue all grounds for appeal, except that Plaintiff does, however, waive the right to appeal this order on the grounds that the entry of it is procedurally improper.  Plaintiff may not challenge the entry of summary judgment on the grounds that the parties did not fully brief the issue or submit sufficient evidence to the Court because the parties are all voluntarily submitting to this abbreviated process.


SO STIPULATED:


Dated:   _____**1-31**_____, 2013

                                    By   _Evan Eickmeyer_____
                                         MICHAEL AXLINE
                                         EVAN EICKMEYER
                                         Miller, Axline, & Sawyer
                                         1050 Fulton Avenue Suite 100
                                         Sacramento, California 95825-4225
                                         Telephone:     (916) 488-6688
                                         Facsimile:     (916) 488-4288
                                         Attorneys for Plaintiff
                                         CITY OF FRESNO


SMRH:407978891.2                         -5-

Dated: February 1, 2013

By

JEFFREY J. PARKER (jparker@sheppardmullin.com)
WHITNEY JONES ROY (wroy@sheppardmullin.com)
Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, California 90071
Telephone:     (213) 620-1780
Facsimile:     (213) 620-1398
Attorneys for Defendant
EXXON MOBIL CORPORATION

Dated: February 1, 2013

By                                          for Peter Condron

RICHARD E. WADLACE, JR.
SCOTT D. MROZ
PETER C. CONDRON
Sedgwick LLP
2900 K Street, NW
Harbourside – Suite 500
Washington, D.C. 20007
Telephone:     (202) 204-1000
Facsimile:     (202) 204-1001
Attorneys for Defendants
SHELL OIL COMPANY, TEXACO REFINING AND
MARKETING INC., EQUILON ENTERPRISES LLC,
AND EQUIVA SERVICES LLC

Dated: February 1, 2013

By                                          for Dan Rudovich

NATHAN P. EIMER (neimer@eimerstahl.com)
(New York Bar No. 1976067)
PAMELA R. HANEBUTT
(phanebutt@eimerstahl.com)
LISA S. MEYER (lmeyer@eimerstahl.com)
Eimer Stahl LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
Telephone     (312) 660-7600
Facsimile:     (312) 692-1718
Attorneys for Defendant
CITGO PETROLEUM CORPORATION

Dated: February 1, 2013      By  _____ for Brian Ledger
                                 BRIAN M. LEDGER (CA SBN 156942)
                                 Gordon & Rees LLP
                                 bledger@gordonrees.com
                                 101 W. Broadway, Suite 1600
                                 San Diego, CA  92101
                                 Telephone:  (619) 696-6700
                                 Facsimile:  (619) 696-7124
                                 Attorney for Defendant
                                 KERN OIL & REFINING CO.

Dated: February 1, 2013      By  _____ for Peter Hart
                                 PETER M. HART
                                 LeClairRyan, LLP
                                 Peter.Hart@leclairryan.com
                                 44 Montgomery Street, 18th Floor
                                 San Francisco, California  94104-4705
                                 Telephone:  (415) 391-7111
                                 Facsimile:  (415) 391-8766
                                 Attorneys for Defendant
                                 NELLA OIL COMPANY

Dated: February 1, 2013      By  _____ for Jon Anderson
                                 JON D. ANDERSON
                                 Latham & Watkins LLP
                                 650 Town Center Dr., 20th Floor
                                 Costa Mesa, CA 92626
                                 Telephone:  (714) 540-1235
                                 Facsimile:  (714) 755-8290
                                 Attorneys for Defendant CONOCOPHILLIPS
                                 COMPANY, individually and as successor-in-interest
                                 to Defendant TOSCO CORPORATION and Phillips
                                 Petroleum Company

Dated: February 1, 2013

By _____ for Charles Correll

ROBERT E. MEADOWS
JEREMIAH J. ANDERSON
1100 Louisiana, Suite 4000
Houston, Texas 77002
Tel: (713) 751-3200
Fax: (713) 751-3290

CHARLES C. CORRELL JR.
101 Second Street, Suite 2300
San Francisco, California 94105
Tel: (415) 318-1200
Fax: (415) 318-1300

Attorneys for Defendants
CHEVRON U.S.A. INC. AND UNION OIL
COMPANY OF CALIFORNIA

Dated: February 1, 2013

By _____ for John D. Chello

ALAN J. HOFFMAN
JEFFREY S. MOLLER
JOHN J. DICHELLO
Blank Rome LLP
One Logan Square, 130 N. 18th Street
Philadelphia, Pennsylvania 19103-6998
Telephone:    (215) 569-5500
Facsimile:    (215) 569-5555
Attorneys for Defendant
LYONDELL CHEMICAL COMPANY, formerly
known as "ARCO CHEMICAL COMPANY"

Dated: February 1, 2013

By _____ for Brent Allen

BRENT ALLEN
Greenberg Traurig LLP
2101 L Street, N.W., Suite 1000
Washington, DC 20037
Telephone:    (212) 331-3157
Facsimile:    (212) 330-5890
Attorneys for Defendant
COASTAL CHEM, INC.

SMRH:407978891.2                              -8-

Dated: February 1, 2013

By _____ for Diana Martin

COLLEEN P. DOYLE
DIANA PFEFFER MARTIN
Hunton & Williams LLP
550 So. Hope Street, Suite 2000
Los Angeles, California 90071
Telephone: (213) 532-2000
Facsimile: (213) 532-2020
Attorneys for Defendants
TESORO CORPORATION (F/K/A TESORO
PETROLEUM CORPORATION) AND TESORO
REFINING and MARKETING COMPANY
(ERRONEOUSLY NAMED AS TESORO REFINING
AND MARKETING COMPANY, INC.)

Dated: February 1, 2013

By _____ for Coy Connelly

M. COY CONNELLY
AMY E. PARKER
Bracewell & Giuliani LLP
711 Louisiana St., Suite 2300
Houston, Texas 77002
Telephone: (713) 221-1335
Facsimile: (713) 221-2159
Attorneys for Defendants
ULTRAMAR INC., VALERO MARKETING AND
SUPPLY COMPANY and VALERO REFINING
COMPANY-CALIFORNIA

SO ORDERED:

_____
THE HONORABLE SHIRA A. SCHEINDLIN

2/4/13

# EXHIBIT 4

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In Re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

This document relates to:

*City of Fresno v. Chevron U.S.A. Inc., et al*

**ORDER**
**Master File No. 1:00-1898**
**MDL 1358 (SAS)**
**M21-88**

<u>**CASE MANAGEMENT ORDER #  108**</u>
(Trial Sites and Dismissed Sites)

On October 22, 2003, Plaintiff City of Fresno filed its Complaint against Defendants

Chevron U.S.A. Inc., et al, in the Superior Court for the State of California, San Francisco

County, alleging that Defendants were liable for contaminating the City of Fresno's public

drinking water supplies with MTBE and TBA.[1]  The case was removed to federal court and

transferred to this court, where discovery and pretrial matters have been proceeding.  After the

conclusion of all discovery related to Plaintiff's causes of action and the sources of the alleged

MTBE and TBA contamination, on August 16, 2012 at the Status Conference the Court ordered

Plaintiff to identify (a) the sites at which Plaintiff will pursue claims at trial and the Defendants

against which it will assert those claims for each site, (b) the sites at which Plaintiff is dismissing

all claims with prejudice, and (c) the sites at which Plaintiff is dismissing all claims, but at which

the Parties dispute whether the dismissal should be with or without prejudice.  On October 5,

2012, Plaintiff served a revised station matrix identifying these three categories.

After considering the foregoing, the revised station matrix, and the arguments of counsel,

it is hereby **ORDERED** that:

---

[1]       Plaintiff filed a First Amended Complaint on October 28, 2004.

A.    Plaintiff may only assert claims at trial for the following sites and only against the

Defendant(s) identified for each site. This matrix may be modified to delete sites and/or

Defendants, but cannot be revised to add sites and/or Defendants.[2]

| Station Name and Address | Defendant(s) |
|---|---|
| M & S Texaco, 2619 S. East Avenue | Kern Oil, Lyondell, Shell |
| Tosco #30587, 1610 N. Palm | Chevron, Coastal, ConocoPhillips, Kern Oil, Lyondell |
| 7-Eleven #19198, 1596 N. Palm Avenue | Citgo |
| Valley Gas, 2139 South Elm Street | Arco, Duke, Kern Oil, Tesoro, Valero |
| Chevron #9-4374, 1160 Fresno Street | Chevron, Coastal, Kern Oil, Lyondell |
| Shell (1212), 1212 Fresno Street | Kern Oil, Lyondell, Shell |
| Unocal #6353, 1418 E. Shaw | Chevron, Coastal, ConocoPhillips, Kern Oil, Lyondell |
| U&A Gas & Food Mart, 2929 N. Blackstone | Tesoro |
| Ratcliff Gas, 2145 Blackstone Avenue | Arco |
| Beacon #537, 798 West Gettysburg, Clovis | Arco, Valero |
| Gilbert's Exxon, 4142 East Church | Coastal, Exxon, Lyondell |
| Van Ness Auto, 2740 North Van Ness | Chevron, Coastal, Duke, Kern Oil, Lyondell |
| Smith Tank Lines (Former Carey Oil), 30 E. Divisadero Street | Duke, Kern Oil, Valero |
| Red Triangle, 2809 South Chestnut Avenue | Coastal, Duke, Exxon, Kern Oil, Lyondell, Nella, New West, Tesoro, Valero |
| Chevron #9-9093, 3996 N. Parkway Drive | Chevron, Coastal, Kern Oil, Lyondell |
| Tosco #39118, 1605 N. Cedar | Chevron, Coastal, ConocoPhillips, Kern Oil, Lyondell |
| Beacon #3519, 4591 E. Belmont Avenue | Arco, Duke, Kern Oil, Valero |
| Beacon-Arco #615, 1625 Chestnut Avenue | Arco, Duke, Kern Oil, Valero |

---

[2]    Notwithstanding the Parties' agreement to present this proposed Order to the Court, Defendants make no admissions as to the accuracy of the matrix, dispute Plaintiff's designation of particular Defendants at particular sites, and dispute and deny the claims asserted at *all* sites.

| Exxon Service Station, 4594 East Tulare Street | Arco, Coastal, Duke, Exxon, Kern Oil, Lyondell, Valero |
| 7-Eleven #13917, 3645 Olive Avenue | Citgo |

B.    The following sites shall be dismissed with prejudice.

| Station Name and Address |
| --- |
| Tosco Circle K #8374, 247 E. Olive Avenue |
| Former Unocal, 794 W. Shaw, Clovis |
| Arco #610, 4192 North Fresno Street |
| Gas 4 Less, 3076 East Gettysburg |
| Classic Car Wash, 5785 N. First |
| Beacon Fifth Wheel Truck Stop, 3767 South Golden State |
| Cor-O-Lite Block, Inc., 4569 East Florence Avenue |
| J&C Food & Gas, 2394 South Elm Avenue |

C.    After hearing argument of counsel, the Court gave Plaintiff the option to either dismiss

the following sites with prejudice or pay the costs Defendants incurred with respect to these sites.

After having been provided a good faith estimate of those costs, Plaintiff elected not to pay such

costs. Plaintiff has agreed to dismiss these sites, but believes they should be dismissed without

prejudice. Based on the arguments of counsel and the relevant legal authorities, the Court hereby

orders that the following sites shall be dismissed with prejudice.

| Station Name and Address |
| --- |
| Family Express Food & Liquor, 4205 E. Butler Avenue |
| G&K Mini Mart, 4090 South Chestnut |
| Whirlwind Car Wash, 225 North H Street |
| Unocal, 101 N. Roosevelt |

| |
|---|
| Dave's Exxon, 1703 W. Olive |
| Shell, 1014 E. Bullard |
| Texaco, 5756 N. 1st Street |
| Quality Food n Gas, 4602 E. Church |
| 7-Eleven # 16970, 2397 S. Chestnut |
| Silvas Currie Bros., 3217 E. Lorena |
| Herndon 76, 7010 N. West Avenue |

C.     The Order of Dismissal is attached as Exhibit A.

SO ORDERED:

The Honorable Shira A. Scheindlin

DATED:     New York, New York
            January 02, 2013

# EXHIBIT 5

E-SERVICE
49963024
Mar 07 2013
01:46AM
File & ServeXpress

Law Offices of

# MILLER, AXLINE & SAWYER

A Professional Corporation

DUANE C. MILLER
MICHAEL AXLINE
A. CURTIS SAWYER, JR.

TRACEY L. O'REILLY
EVAN EICKMEYER
DANIEL BOONE
JUSTIN MASSEY
BRIAN D. SHANNON
DONALD MOONEY, of Counsel

March 6, 2013

**VIA LNFS**

M. Coy Connelly, Esq.
BRACEWELL & GUILIANI LLP
711 Louisiana Street, Suite 2300
Houston, TX  77002-2770

Re:  *City of Fresno v. Chevron U.S.A., Inc., et al.*
No. 1:04-cv-04973-SAS (MDL 1358)
**Plaintiff City of Fresno's Further Meet-and-Confer re Ultramar and
Valero's Proposed Motion for Partial Summary Judgment**

This letter responds to yours of February 8 and 15, 2013.

Both of your letters ask the City to distinguish between its claims against Ultramar and its claims against Valero.  Both letters also claim, "Valero Defendants did not do business in the State of California prior to the year 2000."  As cited in (and attached to) Evan Eickmeyer's December 11, 2012, e-mail, however, the Valero Defendants' Objections and Responses to Plaintiff City of Fresno's First Set of Interrogatories to Defendants ("Responses to First Set of Interrogatories") stated that the Valero Defendants supplied gasoline containing MTBE to Fresno customers prior to the year 2000.  Responses to First Set of Interrogatories, Exh. A.  The Valero Defendants also admit to selling 2-3 million barrels of gasoline containing MTBE within Fresno County each year from 1997 to 2000, with a smaller amount sold in 1996.  Responses to First Set of Interrogatories, Response to Interrogatory No. 10.  These interrogatory responses were served on behalf of Ultramar and two Valero entities, referenced collectively as the "Valero Defendants."  Our confusion, if any, was caused by your joint interrogatory responses.

Some MTBE gasoline shipments and releases may have occurred before "1995 when Ultramar Inc. merged with Diamond Shamrock Corporation," or before "the December 31, 2001 merger of Ultramar Diamond Shamrock Corporation with and into Valero Energy Corporation." *Id.*  Whether or not Valero gasoline was delivered to or released at the site, however, Valero has successor liability for Beacon's activities regarding each site.

Your February 8th letter cites to the January 11, 2013, status conference with Judge Scheindlin and the discussion of Duke Energy, a distributor of MTBE gasoline, for the proposition that the City must provide evidence that a jobber delivered Duke MTBE gasoline to a

M. Coy Connelly, Esq.
March 6, 2013
Page 2

particular station. As I am sure you are aware, in *In re MTBE*, 591 F.Supp.2d 259 (S.D. N.Y. 2008), Judge Scheindlin, in discussing the commingled product theory, distinguished suppliers of neat MTBE from refiners and distributors of MTBE gasoline, and also distinguished both neat MTBE suppliers and MTBE gasoline distributors and refiners from gasoline retailers.

At the January 11, 2013, status conference, in a discussion of Fresno's claims against Duke Energy, Judge Scheindlin rejected defendants' argument that the City would have to amend its complaint to allege the commingled product theory, and made clear that use of the theory is simply "a matter of proof." Tr. at 40:20-21. She also made clear that she was not interested in re-visiting her prior commingled product rulings. Tr. at 40:11-16 ("I said what I had to say about that theory, and it's old news.")

After stating that the City did not need to amend its complaint to allege commingled product theory, Judge Scheindlin asked: "can you *also* do it with direct product, Tracey [tracing?] or do you *have* to rely on the blended, you know, total product and the markets?" Tr. at 41:4-6. Ms. O'Reilly stated in the context of the discussion of Duke that "[w]e're not going with commingled in the pipeline. We're going with direct evidence, is what we explained [with respect to Duke in the City's pre-conference letter]." Tr. at 41:12-13. Ms. O'Reilly went on to explain the City has evidence that "Duke Energy mixed several gas station sites, received delivery, deliveries of MTBE gasoline from jobbers to whom Duke Energy sold MTBE gasoline." Tr. at 42:11-13.

This discussion, and Ms. O'Reilly's statements, merely clarified that with respect to some defendants, including Duke, the City's evidence will allow the jury to conclude that the defendants' product was delivered directly to some stations. Ms. O'Reilly did *not* state that the City would not rely on the commingled product theory for all defendants or even all stations. Since, as Judge Scheindlin's commingled product opinion makes clear, it is impossible to trace neat MTBE to individual release sites, such a conclusion would never have been reached in such an off-hand and indirect way.

As I stated during our face-to-face meet and confer session on March 1, 2013, the City will be relying on the commingled product theory method of proof for defendants against whom the City does not have direct evidence of delivery to particular stations. This evidence will show delivery of a defendant's product to terminals serving the Fresno area during the relevant time period. This evidence will include (but not be limited to) the deposition of Dickman Lum in the South Tahoe and Merced cases and the deposition of Fresno terminal manager Robert Kennedy in City of Dinuba v. Unocal Corp.

The consequence of relying on the commingled product theory with respect to a particular defendant, of course, is that the City cannot pursue nuisance claims or punitive damage claims

M. Coy Connelly, Esq.
March 6, 2013
Page 3

against that defendant. As you know, the City has already notified you that it will not be pursuing nuisance claims against Ultramar and Valero at the Smith Tank Lines site. *See* February 8, 2012, Eickmeyer letter to Jeff Parker. As discussed *infra*, the City will also withdraw certain other claims. Consequently, there is no need to file any summary judgment motions with respect to the claims being withdrawn.

As Judge Scheindlin made clear in *In Re MTBE*, 591 F. Supp.2d 259, 268 (S.D. N.Y. 2008): "even when the jury concludes that plaintiffs have not met their burden to prove that any particular spill of gasoline caused contamination in a well, plaintiffs may still prove their claims against gasoline manufacturers under the commingled product theory."

As Judge Scheindlin also recognized, the time that the contamination of groundwater occurred is an issue of fact for the jury and the jury may estimate, from evidence presented, a range of time during which the contamination occurred. 591 F. Supp.2d at 275. Judge Scheindlin's ruling is consistent with expert testimony. As Marcel Moreau explains, during the time that MTBE gasoline was in use at this station, releases of gasoline were routine, due not only to the ineffectiveness of underground storage tanks, piping systems to dispenser islands and dispensers themselves, but also due to vapor leaks and individually small but cumulatively significant releases that occur during fuel deliveries and customer overfilling and dripping during fueling. Moreau Report, sections I, II and V. As defendants' own expert Sam Williams testified: "I don't know, except under certain specific sites, when an individual release occurred. The release occurred over a certain time period, usually during the period from '92 to '97 or '98 or '99 . . . ." June 7, 2012, Deposition of Sam Williams, at 101:12-16. For these reasons, the City declines to dismiss claims on the purported ground that Mr. Moreau did not identify a release after a particular date.

**(1)   Red Triangle (2809 S. Chestnut Ave.)**

Our December 11, 2012, e-mail from Evan Eickmeyer to you asserted that Valero supplied gasoline containing MTBE to Red Triangle between 1997-2002. The cited source for this information was the Valero Defendants' interrogatory responses, discussed *supra*. The Valero Defendants' responses stated that Valero supplied gasoline containing MTBE to Red Triangle from 1997 through 2002. (See first page of Exhibit A [Red Triangle is listed alphabetically as "DBA RED TRIANGLE OIL CO."].)

The City will withdraw its nuisance claims against Ultramar and Valero for the Red Triangle site. There is sufficient evidence, however, for the City to pursue its remaining claims against the entities that delivered to Red Triangle, Ultramar and/or Valero. Mr. Shehadey produced bills of lading and highway transportation receipts showing deliveries by Red Triangle to Fleet Card Fuels at 2809 S. Chestnut Ave. All of the gas delivered by Red Triangle to 2809 S.

M. Coy Connelly, Esq.
March 6, 2013
Page 4

Chestnut Ave. came from the Fresno terminal, because they were in such close proximity, only about 2 miles apart. Mr. Shehadey's testimony and production establish that gasoline containing MTBE was picked up at the Kinder Morgan terminal by Red Triangle, then delivered to 2809 S. Chestnut Ave.

In addition, Mr. Shehadey's documents show that Nella Oil was a shipper of gasoline to Red Triangle. Shehadey Depo., at 30:14-25, 31-32, and Exh. 5. The Valero Defendants list Nella Oil as a jobber from 1997 through 2003. Responses to First Set of Interrogatories, Response to Interrogatory No. 5.

**(2)      Smith Tank Lines (30 E. Divisadero St.)**

The City will withdraw all claims against Ultramar and Valero for the Smith Tank Lines site.

**(3)      Beacon-Arco #615 (1625 Chestnut Ave.)**

Your letters ask the City to withdraw its claims for this site based on your assertions that (1) Mr. Moreau did not identify releases after June 1998, and (2) Valero did not do business in California prior to the year 2000.

First, for the reasons explained by Judge Scheindlin, Mr. Moreau, and Mr. Williams, discussed *supra*, the City declines to drop its claims due to the date of the last identified release.

Second, the Valero Defendants' collective discovery responses stated that they leased the 1625 Chestnut Ave. station from July 24, 1998, to the date of the responses. Responses to First Set of Interrogatories, Response to Interrogatory No. 3. As discussed *supra*, even if the station was leased by Ultramar, Valero would have successor liability.

**(4)      Valley Gas (2139 S. Elm St.)**

Your letters ask the City to withdraw its claims for this site (1) as to Valero, because MTBE gasoline distributed or manufactured by Valero was not delivered to the site, and (2) as to Ultramar because "its ownership of the station ended well before MTBE was commonly added to gasoline in California."

The Valero Defendants' collective discovery responses stated that the Valley Gas site was formerly Beacon #538. Responses to First Set of Interrogatories, Response to Interrogatory No. 3. Beacon's lease was terminated November 1, 1991. *Id.* Whether or not Valero gasoline was delivered to the site, however, Valero has successor liability for Beacon's lease of the site.

M. Coy Connelly, Esq.
March 6, 2013
Page 5

The Valero Defendants' relationship with the site continued beyond the Fall of 1992, when MTBE was first required to be present in Fresno County gasoline. Marcel Moreau report. The Declaration of the Valero Defendants in Anticipation of 30(b)(6) Deposition provides that Ultramar maintained a branded relationship with the station from November 1, 1991, until May 31, 1994, whereby the station purchased Beacon-branded gasoline. After the site was purchased from Ultramar, Beacon and Ultramar gasoline were delivered to the station. (Ahmad Depo., at p. 139:9-11.) Mr. Ahmad testified there was a brand distribution marketing agreement between Petro Group II and Beacon that prohibited him or Petro Group from buying gasoline from anyone other than Ultramar. (Ahmad Depo., at pp. 139:13-25, 140:7-8.) The brand name agreement ceased in 1995. (Ahmad Depo., at p. 140:7-15.)

While branded Valley Gas, the station received gasoline supplies from Total Energy and Sabek Oil. (Ahmad Depo., at p. 25:3-6.) The Valero Defendants' collective discovery responses listed Southern Counties Oil (dba Total Energy) as a jobber from 1997 through 2002. Responses to First Set of Interrogatories, Response to Interrogatory No. 5. During this time period, a line leak was discovered in October 1999, and a soil sample taken after a hole in a pipe was discovered and repaired in November 1999 was found to contain 920,000 ppb MTBE. Marcel Moreau report.

Mr. Moreau's report explains that MTBE releases likely occurred intermittently between the Fall of 1992 and 2003. Because these releases occurred during times that Ultramar and Valero had relationships with the station, the City declines to drop its claims for this site.

**(5)   Beacon #519 (4591 E. Belmont)**

Your letters ask the City to drop its claims against Valero for this site, because Mr. Moreau noted that a release was discovered in December 1998, and because Valero "did not do business in the State of California prior to the year 2000."

The Valero Defendants' collective discovery responses show that this station was leased by them from 1971 through October 20, 1999. Responses to First Set of Interrogatories, Response to Interrogatory No. 3. The discovery responses further reveal that Valero had a retail supply contract with this site, identified as Beacon #4984, from October 20, 1999, to the date of the responses. Responses to First Set of Interrogatories, Response to Interrogatory No. 4. The Declaration of the Valero Defendants in Anticipation of 30(b)(6) Deposition establishes that Arco-branded gasoline was purchased from Ultramar, Inc., and Valero Marketing and Supply Company from September 22, 1999, through December 31, 2003, for resale at the station.

Because leaks of gasoline were routine at stations, per Mr. Moreau, and because Ultramar's and Valero's activities continued through the years that MTBE was added to Fresno

M. Coy Connelly, Esq.
March 6, 2013
Page 6

gasoline, the City declines to dismiss its claims for this site.

**(6)**     **Beacon #537 (798 West Gettysburg)**

The City will agree to withdraw all claims as to all defendants for the Beacon #537 site without prejudice.

Sincerely,

Michael Axline
Counsel for City of Fresno

cc:  All Counsel (via LNFS)