UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

In Re: Methyl Tertiary Butyl Ether ("MTBE")          Master File C.A. No.
Products Liability Litigation                        1:00-1898 (SAS)
                                                     MDL 1358
**This Document Relates To:**

*City of Fresno v. Chevron U.S.A., Inc., et al.,*
Case No. 04-cv-04973
_____

### INDEX OF EXHIBITS TO DECLARATION OF M. COY CONNELLY IN SUPPORT OF ULTRAMAR DEFENDANTS' MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION

| | |
|---|---|
| Exhibit 1 | Settlement Agreement and Release between Plaintiff City of Fresno and Ultramar Defendants |
| Exhibit 2 | Excerpts of Plaintiff City of Fresno's First Amended Complaint |
| Exhibit 3 | Order dated February 4, 2013 dismissing the Plaintiff City of Fresno's trespass claims |
| Exhibit 4 | Case Management Order # 108 (Trial Sites and Dismissed Sites) |
| Exhibit 5 | March 6, 2013 letter from M. Axline to C. Connelly regarding Plaintiff City of Fresno's claims against Ultramar Defendants |
| Exhibit 6 | Excerpts of the January 11, 2013 Status Conference transcript |
| Exhibit 7 | Excerpts of the deposition of Plaintiff City of Fresno's expert Marcel Moreau, taken April 4-5 and 10-11, 2012 |
| Exhibit 8 | Excerpts of Marcel Moreau's site-specific Expert Report on the Beacon 3519 station, dated November 2, 2011 |
| Exhibit 9 | Excerpts of Marcel Moreau's site-specific Expert Report on the Valley Gas station, dated November 2, 2011 |
| Exhibit 10 | Excerpts of the deposition of Shirley McMurphy Ahmad, taken February 16, 2011 |
| Exhibit 11 | Excerpts of the Amended Report of Defendants' expert John O'Brien, dated November 21, 2011 |
| Exhibit 12 | Excerpts of the Report of Defendants' expert Christine Wood, dated November 18, 2011 |

# EXHIBIT 1

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement And Release ("Settlement and Release") is made between the City of Fresno (the "City"), on the one hand, and Ultramar Inc., Valero Refining Company-California, and Valero Marketing and Supply Company (the "Ultramar Defendants"), on the other hand, regarding the settlement of all claims between them in the litigation captioned *City of Fresno v. Chevron U.S.A. Inc., et al.*, 04 Civ. 04973 (SAS) ("the Litigation"), as of the effective date set forth below.  These parties are referred to herein collectively as the "Parties" and individually as a "Party."

### I.   RECITALS

A.   On or about October 23, 2003, the City filed a complaint in San Francisco County Superior Court, entitled *City of Fresno v. Chevron U.S.A. Inc., et al.*, seeking money damages and declaratory relief against certain members of the gasoline industry ("Defendants") who allegedly manufactured, distributed, or transported gasoline containing methyl tertiary butyl ether ("MTBE") that was ultimately delivered to service stations in the City of Fresno.  The City alleges that gasoline containing MTBE was released at certain gasoline station sites in the City of Fresno and contaminated and/or threatens to contaminate the City's water system.  The City contends that such releases could have been prevented if Defendants, including Ultramar Defendants, had provided adequate warnings and instructions regarding MTBE and its proper handling.  Based on these allegations, the City asserted causes of action for strict liability (failure to warn), negligence, trespass, and nuisance, and claims that Ultramar Defendants are responsible, in part, for the damages the City claims to have suffered.  Ultramar Defendants deny this claim and all other material allegations against them.  The Litigation was removed to Federal Court and is currently pending as part of a nationwide multi-district litigation in the Southern

#4315420.12

District of New York, styled *In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, MDL 1358.[1]

B.    Ultramar Defendants, on the one hand, and the City, on the other hand, without any admission of liability and solely to avoid the expense and burden of future litigation, now desire to settle all disputes between them arising from the Litigation, and all Claims (as defined below) related thereto, prior to any verdict or finding of liability and prior to all of the evidence being presented to the court or any appeals from any of the decisions or rulings rendered to this point in the Litigation.  In entering into this Settlement and Release, no Party makes any admission of any fact, responsibility, fault, or liability.

## II. AGREEMENT

Based upon the Recitals set forth above and in consideration of the mutual promises and consideration hereinafter described, it is agreed as follows:

1.    **Release by the City.**

a.    The City, on behalf of itself, its City Council, and its predecessors, successors, agencies, commissions, departments, officers, employees, agents, officials, insurers, representatives and attorneys, hereby releases and forever discharges Ultramar Defendants and each of their current, former, and future, successors-in-interest, predecessors-in-interest, parents, ultimate parent companies, directly and indirectly affiliated companies, joint ventures, partnerships, related companies, and/or subsidiaries, together with all their current and former respective officers, employees, directors, partners, members, shareholders, officials, agents, accountants, attorneys, insurance carriers and reinsurers (the "Released Parties"), of and from all Claims (as defined below).

---

[1] On or about October 28, 2004, while this Litigation was pending in Federal Court, the City filed an amended complaint captioned First Amended Complaint.

-2-

b.      For purposes of this Settlement and Release,

i.      "Claims" means any and all demands, actions, causes of action, suits, obligations, assessments, damages (including, without limitation, diminution-in-value; stigma; property damage; lost enjoyment or use; lost profit; and punitive or exemplary damages), liabilities, investigation costs, remediation costs, restoration costs, other costs, losses, or expenses (including attorneys' fees and expert witness fees) of any kind or nature whatsoever (whether legal or equitable, past, present or future, ascertained or unascertained, known or unknown, suspected or unsuspected, whether based in tort, contract, or any local, state or federal law, common law, statute, ordinance or regulation), arising out of, relating to, or resulting from the conduct or alleged conduct that gave rise to the Litigation, including but not limited to: (i) the design, manufacture, transportation or sale of any gasoline containing Covered Substances (as defined below), the foreseeable use of which allegedly has or will damage or interfere with the City's usufructuary or other rights; (ii) actual or threatened ground water contamination within the City of Fresno from Covered Substances (as defined below); (iii) actual or threatened contamination of the City of Fresno's water system from Covered Substances manufactured, sold, marketed, stored, refined, supplied, distributed, exchanged or discharged by the Released Parties; (iv) the City's investigation and/or remediation of any such actual or threatened contamination, and any other action or response arising out of, relating to, or resulting from such actual or threatened contamination; (v) any operations of the Released Parties within the City of Fresno prior to the date of this Settlement and Release which allegedly contributed to any such actual or threatened groundwater contamination from Covered Substances, and/or the actual or threatened contamination of the City's water system from Covered Substances; (vi) any failure by the Released Parties to clean up or remove any Covered Substances from groundwater or soil

-3-

on, under, or near any release site; and (vii) any liability, damages, fact or circumstance that has or could have been raised as part of the Litigation against the Released Parties.

ii.      "Covered Substances" shall mean: (i) benzene, toluene, ethyl benzene and xylene; (ii) methyl tertiary butyl ether (MTBE), tertiary butyl alcohol (TBA), tertiary amyl methyl ether (TAME), diisopropyl ether (DIPE), ethyl tertiary butyl ether (ETBE), ethanol, or any other oxygenate known, suspected or knowable to the City; and (iii) any degradation products and/or by-products of a substance listed above.

c.      Apart from the Released Parties, the City is not releasing any other parties to the Litigation or any non-parties, and the released Claims do not encompass any Claim against any other person or entity, including any other defendants in the Litigation and including (but not limited to) any other person or entity who manufactured, refined, distributed, sold and/or supplied gasoline to any facility in controversy in the Litigation.

2.      **Consideration.**

As consideration for the foregoing releases, the Parties to this Settlement and Release shall do the following:

a.      Within 10 business days after execution of this Settlement and Release by the Parties, Ultramar Defendants shall file with the court in the Litigation a motion for an order determining this settlement to be in good faith in accordance with sections 877 and 877.6 of the California Code of Civil Procedure. Alternatively, Ultramar Defendants may make an Application for Order Determining Good Faith Settlement pursuant to Code of Civil Procedure section 877.6(a)(2).

b.      Within 30 days of the date on which the court enters an order approving this Settlement and Release as a good faith settlement and confirming that the Released Parties

-4-

are entitled to protection against contribution claims pursuant to California Code of Civil Procedure section 877.6, Ultramar Inc. shall pay to the City the total sum of One Million Two Hundred Fifty Thousand Dollars ($1,250,000), by either (1) check payable to "Miller, Axline & Sawyer, A Professional Corporation, CA IOLTA Acct/Client Trust Account," 1050 Fulton Avenue, Suite 100, Sacramento, CA 95825, or (2) by wire transfer to "Miller, Axline & Sawyer, A Professional Corporation, CA IOLTA Acct/Client Trust Account," Wells Fargo Bank, 464 California Street, San Francisco, CA 94101; Account #3416547291; ABA Routing #121000248. The tax identification number for Miller, Axline & Sawyer is 94-2706859.

        c.      Within five business days of its receipt of the final payment from Ultramar Defendants, the City shall dismiss the Litigation against Ultramar Defendants with prejudice. All Parties to this Settlement and Release shall bear their own attorneys' fees, expenses and costs in connection with the Litigation.

        d.      The City shall cooperate in securing court approval in the Litigation of the settlement between the parties as one made in good faith by filing appropriate papers with the court and/or appearing at any hearing(s) to consider those papers, if necessary.

        e.      This Settlement and Release and the dismissal of the Litigation against Ultramar Defendants with prejudice are supported by the mutual promises and covenants contained herein, which the Parties agree constitute good and valuable consideration.

**3.**        **Waiver.**

        With respect to, and subject to the terms of, the release contained in paragraph 1 above, the City expressly waives any rights or benefits available under section 1542 of the California Civil Code, which provides as follows:

        A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
        WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT

TO EXIST IN HIS OR HER FAVOR AT THE TIME OF
EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM
OR HER MUST HAVE MATERIALLY AFFECTED HIS OR
HER SETTLEMENT WITH THE DEBTOR.

Each Party understands and acknowledges the significance and consequence of the specific

waiver of section 1542 set forth above. Each Party acknowledges that its attorneys have

explained to its authorized representatives the meaning and effect of section 1542 and the waiver

thereof. Each Party understands fully the statutory language of section 1542 and, with this

understanding, nevertheless elects to, and does, assume all risks for claims released under this

Settlement and Release, known or unknown, heretofore and thereafter arising from the subject

matter of the Litigation or of this Settlement and Release. Each Party fully understands that if

the facts with respect to which this Settlement and Release is executed are found hereafter to be

other than or different from the facts now believed by it to be true, it expressly accepts and

assumes the risk of such possible difference in facts and agrees that this Settlement and Release

shall be and remain effective notwithstanding such difference in facts.

4.      **Conditions Precedent.**

        This Settlement and Release and all obligations of the Parties hereto are

conditioned upon obtaining court approval of the settlement in the Litigation as a good faith

settlement as that term is defined in California Code of Civil Procedure section 877.6.

5.      **No Admission.**

        This Settlement and Release is a compromise of disputed claims as to which the

Parties have not had an opportunity to present all their claims and evidence, nor have they had

the opportunity to appeal any decisions or rulings rendered in the Litigation. This Settlement and

Release fully and finally settles all Claims by the City against the Released Parties, and prevents

any further actions by the City against the Released Parties in the Litigation. The Parties agree

-6-

#4315420.12

that in light of the expenses of further litigation, the uncertainty of any possible verdict and any appeals which might have been successful if pursued, the amount of monies paid should not be construed as anything other than the compromise of disputed liability. Neither the payment of any consideration hereunder nor anything contained in this Settlement and Release shall be interpreted or construed to be an admission on the part of, nor to the prejudice of, any person hereto. The Released Parties expressly deny any and all liability associated with or related to the Claims.

6.       **Authority to Sign; Indemnity.**

Each Party represents and warrants that the individual who executes this Settlement and Release on behalf of the corporation, city, governmental agency, partnership, joint venture, unincorporated association, or other entity has the appropriate authority of the officers, shareholders, members or Board of Directors of said entity to do so. The Parties agree to defend, indemnify and hold harmless each other Party from any claim that such authority did not exist.

7.       **Final Settlement.**

The Parties understand and agree that this Settlement and Release shall act as a release of all future Claims whether such Claims are currently known, unknown, foreseen, or unforeseen. The Parties understand and acknowledge the significance and consequence of the specific waiver of California Civil Code section 1542 described above and hereby assume full responsibility for any injury, loss, damage or liability that may hereafter be incurred by reason of or related to the matters alleged in the Litigation or raised by said dispute or defined as Claims herein.

-7-

8.      **Entire Agreement; No Modification.**

Each Party individually and collectively declares and represents that no promises, inducements, or other agreements not expressly contained herein have been made with regard to the settlement of the Litigation; that this Settlement and Release contains the entire agreement between the Parties hereto with respect to the subject matter of the Litigation; and that the terms of this Settlement and Release are contractual and not recitals only.  All prior agreements and understandings, oral agreements and writings regarding the matters set forth herein are expressly superseded hereby and are of no further force or effect.  This Settlement and Release may not be altered, amended, or modified in any respect except by a writing duly executed by the Party to be charged.

9.      **Binding Effect.**

This Settlement and Release shall inure to the benefit of each Party hereto and benefit thereby their predecessors, successors, subsidiaries, affiliates, representatives, agents, officers, directors, employees, and personal representatives, past, present and future.  The court shall retain jurisdiction in Southern District of New York Case No: 04 Civ. 04973 (SAS) to enforce the terms of this settlement.

Ultramar Defendants represent and warrant that the undersigned has all requisite power to execute, bind, deliver, and perform this Settlement and Release on behalf of Ultramar Defendants and that this Settlement and Release has been duly and validly executed and delivered by him as Ultramar Defendants' corporate representative.  Ultramar Defendants further warrant that they will not challenge or contest the validity of this Settlement and Release and that they forever waive any defense to its validity, including any defense based on any claim the Settlement and Release is *ultra vires*, or otherwise void.

-8-

10.    **Further Documents.**

To the extent any documents are required to be executed to effectuate this Settlement and Release, each Party hereto agrees to execute and deliver such other and further documents as may be required to carry out the terms of this Settlement and Release.

11.    **Further Actions.**

To the extent any actions are required to be taken to effectuate this Settlement and Release, each Party hereto agrees to take said actions as may be required to carry out the terms of this Settlement and Release.

12.    **Representation.**

Each Party hereto represents and acknowledges that each of them has been represented by counsel with respect to this Settlement and Release, and any and all matters covered by or related to such Settlement and Release. Each Party hereto has been fully advised with respect to all rights which are affected by this Settlement and Release.

13.    **Voluntary and Knowing Release.**

Each Party signing this Settlement and Release represents and warrants that each of them: (i) read, knows and understands the contents hereof; (ii) has executed this Settlement and Release voluntarily; (iii) has not been influenced by any person or persons or attorney acting on behalf of any party; and (iv) understands that after signing this Settlement and Release, each Party cannot proceed against the others on account of any of the matters described herein.

14.    **Headings, Number and Gender.**

Headings are used herein for convenience only and shall have no force or effect in the interpretation or construction of this Settlement and Release. As used in this Settlement and Release, the singular shall include the plural, the masculine, the feminine and neuter genders.

-9-

15.     **Ownership of Claims; Indemnity.**

Each Party hereto represents that no other person or entity has or has had any interest in the Claims alleged in this action on behalf of the City; that they have the sole right and exclusive authority to execute this Settlement and Release and receive the consideration specified in this Settlement and Release; and that each Party has not sold, assigned, transferred, conveyed, or otherwise disposed of any Claims within the scope of this Settlement and Release. In the event that a Party has sold, assigned, transferred, or conveyed any of the Claims alleged in this action, that Party agrees to defend, indemnify, and hold harmless each other Party from any Claims brought by anyone or any entity established to have received ownership of such Claim by sale, assignment, transfer, or conveyance from the Party.

16.     **Payment of Attorneys' Fees and Court Costs.**

Each Party hereto shall be responsible for the payment of its own court costs, attorneys' fees, and all other expenses, costs and fees in connection with the matters referred to in the Litigation and in this Settlement and Release.

17.     **Applicable Law.**

This Settlement and Release shall be construed and interpreted in accordance with the laws of the State of California.

18.     **Severability.**

If any provision or any part of any provision of this Settlement and Release is for any reason held to be invalid, unenforceable or contrary to any public policy, law, statute and/or ordinance, then the remainder of this Settlement and Release shall not be affected thereby and shall remain valid and fully enforceable.

-10-

19.    **Counterparts.**

This Settlement and Release may be executed in counterparts, and all such executed counterparts shall constitute an agreement which shall be binding upon the Parties hereto, notwithstanding that the signatures of all Parties and Parties' designated representatives do not appear on the same page.

20.    **Admissibility of Agreement.**

The Parties hereto expressly agree that this Settlement and Release is a protected communication under California Evidence Code section 1119; however, the same shall be admissible for the sole purpose of enforcing the terms thereof.

21.    **Attorneys' Fees and Costs to Enforce Agreement.**

If any action is required to be taken by any Party to this Settlement and Release to enforce the terms hereof, the prevailing party in any such action shall be entitled to reasonable attorneys' fees and costs.

**[Continued on next page]**

#4315420.12

The Parties below named have executed this Settlement and Release as of the date and year appearing below adjacent to the signatures of the Parties.  This Settlement and Release is effective as of the final date of the Parties' signatures below.

Dated: _8/6/13_____

THE CITY OF FRESNO

By: _____
Its: _____

Approved as to form:

Dated: _8 - 2 - 13____

MILLER, AXLINE & SAWYER

By: _____
Duane C. Miller
Attorneys for The City of Fresno

Dated: _____

ULTRAMAR INC.

By: _____
Jay Browning
Its: Corporate Senior Vice President and General Counsel

Dated: _____

VALERO MARKETING AND SUPPLY COMPANY

By: _____
Jay Browning
Its: Corporate Senior Vice President and General Counsel

-12-

#4315420.12

The Parties below named have executed this Settlement and Release as of the date and year appearing below adjacent to the signatures of the Parties. This Settlement and Release is effective as of the final date of the Parties' signatures below.

Dated: _____          THE CITY OF FRESNO


                                           By: _____
                                           Its: _____


Approved as to form:                       MILLER, AXLINE & SAWYER

Dated: _____          By: _____
                                                Duane C. Miller
                                           Attorneys for The City of Fresno


Dated: 8 · 5 · 2013                        ULTRAMAR INC.


                                           By: _____
                                               Jay Browning
                                           Its: Corporate Senior Vice President and
                                           General Counsel


Dated: 8 · 5 · 2013                        VALERO MARKETING AND SUPPLY
                                           COMPANY


                                           By: _____
                                               Jay Browning
                                           Its: Corporate Senior Vice President and
                                           General Counsel

-12-

#4315420.12

Dated: _8 · 5 · 2013_

VALERO REFINING COMPANY-
CALIFORNIA


By: _____
     Jay Browning
Its: Corporate Senior Vice President and
General Counsel


Approved as to form:

Dated: _8/5/13_

BRACEWELL & GIULIANI LLP


By: _____
     M. Coy Connelly
Attorneys for Ultramar Defendants

#4315420.12

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

In re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

This Document Relates To:

CITY OF FRESNO

      Plaintiff,

      vs.

CHEVRON U.S.A. INC.; CHEVRON
ENVIRONMENTAL SERVICES COMPANY;
SHELL OIL COMPANY; EXXON CORPORATION;
TOSCO CORPORATION; UNOCAL
CORPORATION; UNION OIL COMPANY OF
CALIFORNIA; KERN OIL &  REFINING
COMPANY; VALERO REFINING COMPANY-
CALIFORNIA; VALERO MARKETING AND
SUPPLY COMPANY [DOE 1]; TESORO
PETROLEUM CORPORATION [DOE 2]; TESORO
REFINING AND MARKETING COMPANY, INC.
[DOE 3]; TEXACO REFINING AND MARKETING
INC.; ULTRAMAR, INC.; ARCO
CHEMICAL COMPANY; LYONDELL
CHEMICAL COMPANY; COASTAL CHEM, INC.;
EXXON MOBIL CORPORATION;
CONOCOPHILLIPS CORPORATION; ATLANTIC
RICHFIELD COMPANY; EQUIVA
SERVICES LLC; TEXACO, INC.; EQUILON
ENTERPRISES LLC; CHEVRONTEXACO
CORPORATION; NEW WEST PETROLEUM;
DUKE ENERGY MERCHANTS, LLC; DUKE
ENERGY TRADING AND MARKETING, LLC;
PACIFIC SOUTHWEST TRADING; NORTHRIDGE
PETROLEUM MARKETING U.S., INC.; DUKE
ENERGY MERCHANTS CALIFORNIA, INC.; NEW
WEST PETROLEUM, LLC;
WESTPORT PETROLEUM INC.; NELLA
OIL COMPANY LLC; CITGO PETROLEUM
CORPORATION [DOE 201]; AND DOES 4
THROUGH 200, 202 THROUGH 400, and
401 THROUGH 600, inclusive,

      Defendants.

Master File C.A. No. 1:00-Civ.
1898

MDL No 1358 (SAS)

Case No. 04 CV-04973 (SAS)

Transferred from:
United States District Court for
the Northern District of California
Case No. C 03-5378 JSW
(Honorable Jeffrey S. White)

Removed from:
Superior Court of California,
County of San Francisco,
Case No. CGC-03-425649

**FIRST AMENDED**
**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff City of Fresno hereby alleges as follows:

## I. SUMMARY OF THE CASE

1. The City of Fresno is responsible for purveying clean, safe drinking water to approximately 450,000 people in the County of Fresno, California. Expanding plumes of methyl tertiary butyl ether ("MTBE") and tertiary butyl alcohol ("TBA") contaminate and threaten the water system and drinking water on which Fresno's schools, hospitals, businesses, residents and visitors depend.

2. The defendants in this action are the refiners who manufacture gasoline containing MTBE and TBA, manufacturers of MTBE, and the designers, promoters, marketers, formulators, distributors, suppliers, and retailers of gasoline containing MTBE and TBA, which contaminate and threaten Fresno's water system and public water supply. Among other things, the defendants knowingly and willfully promoted and marketed MTBE and TBA and/or gasoline containing MTBE and/or TBA, when they knew or reasonably should have known that these compounds would reach groundwater, pollute public water supplies, render drinking water unusable and unsafe, and threaten the public health and welfare, as they have in Fresno.

3. Fresno filed this lawsuit to recover compensatory and all other damages, including all necessary funds to remove MTBE and TBA pollution from public drinking water supplies, to restore the reliability of Fresno's water system and drinking water supply, to abate MTBE and TBA plumes, and to assure that the responsible parties -- and not the City of Fresno nor the public -- bear the expense.

## II. PLAINTIFF

4. Plaintiff City of Fresno ("Fresno") provides water to the residents of Fresno. The City of Fresno bears the responsibility of owning and operating a water system which serves the public, including drinking water wells with related and ancillary equipment, pumps, pipes, water treatment equipment, delivery systems and infrastructure which will be referred to collectively in this complaint as the "water system." The drinking water sources for the Fresno water system include more than two hundred and fifty (250) wells owned and operated by Fresno within or near city limits. Among other things, the water system includes Fresno's right to appropriate and use groundwater for water supplies.

2

### III. **DEFENDANTS**

5. Most of the defendants in this action are corporate members of the gasoline industry. As described below, the defendants include manufacturers and promoters of gasoline containing MTBE and/or TBA, distributors of gasoline containing MTBE and/or TBA, manufacturers and promoters of MTBE and/or TBA, and owners and operators of facilities that released MTBE and/or TBA and/or gasoline containing MTBE and/or TBA into the environment. MTBE, TBA, and gasoline containing MTBE and/or TBA have contaminated, polluted and threatened, and continue to contaminate, pollute and threaten, Fresno's water system.

6. When this complaint refers to any act or omission of the defendants, such reference shall be deemed to mean that the officers, directors, agents, employees, or representatives of the defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of defendants, and did so while acting within the scope of their employment or agency.

#### A. **Refiner Defendants**

7. These defendants owned and operated refineries in California and/or designed, formulated, refined, manufactured, promoted, marketed, supplied and provided gasoline containing MTBE and/or TBA which, at all times relevant to this complaint, was distributed and sold in areas affecting Fresno's water system:

8. Defendant Chevron U.S.A. Inc. ("Chevron USA") is a Pennsylvania corporation with its principal place of business in San Ramon, California.

9. Defendant Shell Oil Company, individually and doing business as Shell Oil Products US ("Shell") is a Delaware corporation doing business in California.

10. Defendant Exxon Corporation ("Exxon") is a New Jersey corporation with its principal place of business located in Texas.

11. Defendant Tosco Corporation ("Tosco") is a Nevada corporation with its principal place of business in Stamford, Connecticut.

12. Defendant Unocal Corporation ("Unocal") is a Delaware corporation doing business in California.

3

ChevronTexaco Corporation is a successor in interest to certain Chevron-related and Texaco-related entities.

24. Defendant Equilon Enterprises LLC ("Equilon") is a Delaware Limited Liability Company. Plaintiff is informed and believes that Equilon Enterprises LLC is a successor in interest to certain Shell-related and Texaco-related entities.

25. Defendants Chevron USA, Shell, Exxon, Tosco, Unocal, Union Oil, Kern Oil, Valero Refining, Valero Marketing, Tesoro, Tesoro Refining, TRMI, Ultramar, ExxonMobil, Conoco, ChevronTexaco, Equilon and DOES 4 through 100, will be collectively referred to hereafter as the "Refiner Defendants." The Refiner Defendants, and each of them, owned and/or operated gasoline refineries that manufactured and supplied gasoline containing MTBE and/or TBA to locations in the vicinity of Fresno's water system, such that releases of such products to the subsurface contaminated and polluted the water system. Among other things, these defendants (1) designed, formulated, refined, manufactured, promoted, marketed, distributed, transported, packaged, exchanged and/or sold gasoline containing MTBE and/or TBA, which is contaminating, polluting and threatening Fresno's public water supplies; (2) owned, operated, and/or controlled gasoline delivery systems including, but not limited to, gasoline stations, gasoline storage, transfer, delivery, and dispensing systems (collectively herein "gasoline delivery systems") in areas affecting Fresno's water system; (3) were legally responsible for and committed each of the multiple tortious and ongoing wrongful acts alleged in this complaint; (4) participated in one or more enterprises to promote MTBE and/or TBA and/or gasoline containing MTBE and/or TBA; (5) negligently designed, constructed, installed, fabricated, owned, operated, controlled, inspected and/or repaired gasoline delivery systems from which MTBE and/or TBA is contaminating, polluting, and threatening the water system; (6) negligently and/or intentionally failed and refused to take appropriate remediation action to abate MTBE and/or TBA plumes when MTBE and/or TBA escaped from the gasoline delivery systems; and (7) in doing the tortious and wrongful acts alleged in this complaint, acted in the capacity of aider, abettor, joint-venturer, partner, agent, principal, successor-in-interest, surviving corporation, fraudulent transferee, fraudulent transferor, controller, alter-ego, co-conspirator, licensee, licensor, patent holder and/or indemnitor of each of the remaining DOE and named defendants.

26. Plaintiff is ignorant of the true names and/or capacities of the defendants sued herein under the fictitious names DOES 4 through 100, inclusive.

**B. MTBE/TBA Manufacturer/Supplier Defendants**

27. These defendants manufactured, promoted, marketed, sold, supplied and provided MTBE and/or TBA which, at all times relevant to this complaint, was added to gasoline which was distributed and sold in areas affecting Fresno's water system:

28. Defendant ARCO Chemical Company ("ARCO Chemical") is a corporation with its principal place of business in Los Angeles, California.

29. Defendant Lyondell Chemical Company ("Lyondell"), as successor-in-interest to ARCO Chemical Company, is a corporation with its headquarters in Houston, Texas, and doing business in California.

30. Defendant Coastal Chem, Inc. ("Coastal") is a Delaware corporation.

31. Defendant Chevron Environmental Services Company is a Delaware corporation with its principal place of business in San Francisco, California.

32. Defendants ARCO Chemical, Lyondell, Coastal, Chevron Environmental Services Company, and also defendants Chevron USA, Shell, Exxon, Tosco, Valero Refining, Valero Marketing, Tesoro, Tesoro Refining, Ultramar, ExxonMobil, Conoco, ChevronTexaco, Equilon and DOES 101 through 200, will be collectively referred to hereafter as the "MTBE/TBA Manufacturer/Supplier Defendants." The MTBE/TBA Manufacturer/Supplier Defendants, and each of them, manufactured and/or supplied MTBE and/or TBA for use in gasoline which was distributed to and sold in locations in the vicinity of Fresno's water system, such that releases of that gasoline to the subsurface contaminated, polluted, and threaten the water system. Among other things, these defendants (1) negligently designed, manufactured, formulated, refined, promoted, marketed, distributed, failed to adequately warn about, transported, packaged, exchanged and/or sold MTBE and/or TBA, which is contaminating, polluting, and threatening Fresno's public water supplies; (2) owned, operated, and controlled gasoline delivery systems in areas affecting Fresno's water system; (3) were legally responsible for and committed each of the multiple tortious and ongoing wrongful acts alleged in this complaint; (4) participated in one or more enterprises to promote MTBE and/or TBA and/or gasoline containing MTBE and/or TBA;

6

42. Defendant Duke Energy Merchants California, Inc., ("Duke Energy California") formerly known as Northridge Petroleum Marketing U.S., Inc., is a Colorado corporation doing business in California.

43. Defendant Westport Petroleum Inc. ("Westport") is a California corporation with its principal place of business in Pasadena, California.

44. Defendant Nella Oil Company LLC ("Nella") is a California limited liability company with its principle place of business in Auburn, California.

45. Defendant Citgo Petroleum Corporation ("Citgo") is a Delaware corporation with its principal place of business in Tulsa, Oklahoma, and doing business in California. Citgo is named in place of DOE 201.

46. Plaintiff is ignorant of the true names and/or capacities of the defendants sued herein under the fictitious names DOES 202 through 400, inclusive.

47. Defendants Arco, Equiva, New West, Duke Energy, Duke Marketing, PS Trading, New West LLC, Northridge, Duke Energy California, Westport, Nella and also defendants Chevron USA, Shell, Exxon, Tosco, Unocal, Union Oil, Kern Oil, Valero Refining, Valero Marketing, TRMI, Ultramar, ExxonMobil, Conoco, ChevronTexaco, Equilon and DOES 202 through 400, will be collectively referred to herein as the "Distributor Defendants." The Distributor Defendants, and each of them: (1) designed, manufactured, formulated, promoted, marketed, distributed, transported, packaged, and sold gasoline containing MTBE and/or TBA which is contaminating and threatening Fresno's public water supplies; (2) were legally responsible for and committed each of the tortious and wrongful acts alleged in this complaint; (3) participated in one or more enterprises to promote MTBE and/or TBA and/or gasoline containing MTBE and/or TBA; and (4) in doing the tortious and wrongful acts alleged in this complaint, acted in the capacity of aider, abettor, joint-venturer, partner, agent, principal, successor-in-interest, surviving corporation, fraudulent transferee, fraudulent transferor, controller, alter-ego, co-conspirator, licensee, licensor, patent holder and/or indemnitor of each of the remaining DOE and named defendants.

**D. Owner/Operator Defendants**

48. These defendants own and/or operate gasoline delivery facilities, including, but not

limited to, pipelines, gasoline stations, gasoline storage, transfer, delivery, and dispensing systems (collectively herein "gasoline delivery systems") in areas affecting Fresno's water system:

49.   Plaintiff is ignorant of the true names and/or capacities of the defendants sued herein under the fictitious names DOES 401 through 600, inclusive.

50.   DOES 401 through 600, shall be referred to collectively herein as the "Owner/Operator Defendants."   The Owner/Operator Defendants, and each of them: (1) designed, constructed, installed, fabricated, owned, operated, controlled, inspected and/or repaired gasoline delivery systems from which gasoline containing MTBE and/or TBA is contaminating, polluting, and threatening Fresno's water system;  (2) were legally responsible for and committed each of the multiple tortious and ongoing wrongful acts alleged in this complaint; (3) participated in one or more enterprise(s) to promote, market, distribute, and sell gasoline containing MTBE and/or TBA;  and (4) in doing the tortious and wrongful acts alleged in this complaint, acted in the capacity of aider, abettor, joint-venturer, partner, agent, principal, successor-in-interest, surviving corporation, fraudulent transferee, fraudulent transferor, controller, alter-ego, co-conspirator, licensee, licensor, patent holder and/or indemnitor of each of the remaining DOE and named defendants.

## IV.  ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION

### A. The Contaminants:  MTBE and TBA

51.   MTBE is an additive to gasoline.  Wherever referred to in this complaint, MTBE means not only methyl tertiary butyl ether, but also the contaminants in commercial grade MTBE, as well as other oxygenates and ethers, including, but not limited to, TAME, DIPE, and ETBE.

52.   TBA is present in some gasoline.  TBA is variously a gasoline constituent, an impurity in commercial grade MTBE, and a degradation or breakdown product of MTBE.

53.   MTBE and TBA contaminate the environment through leaks and spills from gasoline delivery systems.  Once released to the environment from gasoline delivery systems, MTBE and TBA each have unique characteristics that cause extensive environmental contamination and a corresponding threat to the public health and welfare.  In particular, the fate and transport of

9

MTBE and TBA in the subsurface differs significantly from that of gasoline constituents that
have historically been of environmental and/or toxicological concern, specifically the "BTEX
compounds" (benzene, toluene, ethylbenzene, and xylene).

54.   Once released into the subsurface, MTBE and TBA separate from other gasoline
constituents in the presence of moisture.  In contrast to the BTEX compounds, MTBE and TBA
have a strong affinity for water.  If MTBE and/or TBA are released into the environment in
sufficient quantities, MTBE and/or TBA have the capacity to migrate through the soil, the
groundwater, penetrate deeper within the aquifer, and cause persistent contamination that can
threaten the potability of drinking water wells.  There is a potentially lengthy delay, based on site
specific factors, between the time MTBE and/or TBA are released and the time they accumulate
in potentially usable ground water in sufficient quantities to contaminate public drinking water
resources.

55.   MTBE and TBA spread farther and faster than other components of gasoline, resist
biodegradation, and are difficult and costly to remove from groundwater and drinking water
supplies.

**B. Regulatory Standards Applicable to MTBE and TBA**

56.   No federal or state agency has approved either MTBE or TBA as an additive to
drinking water.  No federal or state agency has approved releasing MTBE or TBA into
groundwater.  No federal or state agency has ever required that gasoline contain MTBE and/or
TBA.

57.   Along with its other properties, MTBE can render water supplies undrinkable by
changing the taste and odor of water into a foul smelling liquid with a turpentine odor and
chemical taste unfit for human consumption.  The State of California established a Secondary
Maximum Contaminant Level ("MCL") for MTBE of 5 parts per billion ("ppb").  This means
that the law prohibits using water containing MTBE at or above this level in public drinking
water because of MTBE's aesthetic properties.  Individuals, however, can smell and taste MTBE
in water at even lower levels.

58.   MTBE also presents a significant public health threat.  Because of MTBE's potential
for causing cancer, the State of California has established a Primary (health) MCL for MTBE of

10

13 ppb. This means that the law prohibits using water containing MTBE at or above this level in public drinking water because of MTBE's threat to public health.

59.  TBA also presents a significant threat to public health.  The State of California has set an Action Level for TBA of 12 parts per billion in water, based on an interim assessment performed by the California Office of Environmental Health Hazard Assessment.  The interim assessment concluded that exposure to TBA at levels above 12 ppb in water creates an unacceptable public health risk of cancer.

60.  California Governor Gray Davis ordered state agencies to phase out MTBE use in motor fuel in California, to achieve 100% removal no later than December 31, 2003.  Because of MTBE's threat to drinking water, the federal government has also announced its intent to "significantly reduce or eliminate" MTBE from gasoline in an Advance Notice of Proposed Rulemaking published in the Federal Register.  Eighteen states, including California, have either banned or are phasing out the use of MTBE in gasoline.

### C.  Defendants' Promotion of MTBE and TBA

61.  The Refiner Defendants and MTBE/TBA Manufacturer/Supplier Defendants, all of whom have promoted the use of MTBE and/or TBA, and/or gasoline containing MTBE and/or TBA, for its purported environmental benefits, knew or should have known of the grave harm and threat to the public health and welfare represented by the proliferating use of these compounds, including (among other things): widespread pollution of groundwater with MTBE and TBA, contamination of public drinking water by these compounds, drinking water supplies rendered unfit and unusable for consumption, public health threatened, and increased costs to public water suppliers and their ratepayers.  Plaintiff is informed and believes, however, and based thereon alleges, that defendants Tosco and Ultramar did not gain this knowledge until 1996, due to concealment of information by another defendant or defendants, including but not limited to ARCO Chemical.

62.  Despite knowing that MTBE and TBA pollution was inevitable, and despite the availability of reasonable alternatives, (including, but not limited to, adequate warnings), defendants chose not to warn customers, retailers, regulators or public officials, including the City of Fresno.  As production and sales of these compounds and gasoline containing them

11

Fresno seeks punitive damages to punish certain defendants and deter future wrongful and harmful conduct, and other relief as described in the Prayer below.

## FIRST CAUSE OF ACTION

### (Strict Liability Against All Defendants)

70. Fresno refers to paragraphs 1 through 69 above, and by this reference incorporates them into this cause of action as though fully set forth herein.

71. The Refiner Defendants, Distributor Defendants, and Owner/Operator Defendants, and each of them, designed, formulated, compounded, refined, manufactured, packaged, distributed, recommended, merchandised, advertised, promoted, and/or sold gasoline containing MTBE and/or TBA.

72. The MTBE/TBA Manufacturer/Supplier Defendants, and each of them, designed, formulated, compounded, manufactured, packaged, distributed, supplied, recommended, merchandised, advertised, promoted, and/or sold MTBE and/or TBA and their constituents, which were intended by defendants, and each of them, to be used as gasoline additive(s).

73. Defendants' design and manufacture of these products was defective, and defendants failed to adequately warn against the dangers of these products.

74. Defendants, and each of them, falsely represented, asserted, claimed and warranted that gasoline containing MTBE and/or TBA could be used in the same manner as gasoline not containing these compounds, and did not require any different or special handling or precautions.

75. Defendants, and each of them, knew that said product(s) were to be purchased and used without inspection for defects.

76. Gasoline containing MTBE and/or TBA, and MTBE and TBA themselves, are defective products because, among other things:

    (a)    The benefits of using MTBE and/or TBA in gasoline, if any, are greatly outweighed by the associated costs and negative impacts imposed on society, consumers, and the environment, and on the City of Fresno's water system, and those who rely on it;

    (b)    MTBE and TBA cause extensive groundwater contamination, even when used in their foreseeable and intended manner;

15