# McDermott
# Will & Emery

Boston Brussels Chicago Dusseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington D C

Peter J Sacripanti
Attorney at Law
psacripanti@mwe com
212 547 5583

September 5, 2013

## BY ELECTRONIC MAIL AND HAND DELIVERY

The Honorable Shira A. Scheindlin
United States District Judge
Southern District of New York
500 Pearl Street, Room 1620
New York, New York 10007-1312

Re:   Master File C.A. No. 1:00-1898 (SAS), M21-88, MDL No. 1358
*Defendants' Pre-Conference Reply Letter for September 10, 2013 Conference*

Dear Judge Scheindlin:

Defendants respectfully submit this reply letter for the September 10, 2013 status conference.[1]

### DEFENDANTS' AGENDA ITEMS

#### I.   New Jersey: Plaintiffs' Failure to Produce Barth Reliance Materials

Plaintiffs' withdrawal of David Barth as an expert does not moot the issue of Plaintiffs' failure to produce documents identified during Mr. Barth's deposition. The five documents at issue should have been produced months ago, as required by CMO 106 and as requested in Mr. Barth's deposition notice. Now, over three months after that deposition, after repeated requests for the documents, and after Defendants brought this issue to the Court's attention, Plaintiffs have withdrawn Mr. Barth as an "expert" while reserving the right to call him as a "fact" witness. Plaintiffs should not be allowed to use these delay tactics and gamesmanship to avoid their Court-ordered document production obligations.

Moreover, these documents remain relevant to potential trial testimony, even if Mr. Barth is not designated as an expert. Plaintiffs have reserved their right to use Mr. Barth as a fact witness and still intend to present evidence of New Jersey's lack of funding and resources through other fact and expert witnesses, like Irene Kropp. Because the requested documents speak directly to this topic, Defendants remain entitled to their production. Additionally, the 5

---

[1] Due to the number of issues to be addressed, Defendants respectfully request an extension to the 3-page limit for reply letters.

U S practice conducted through McDermott Will & Emery LLP

**340 Madison Avenue New York New York 10173 Telephone: 212.547.5400 Facsimile: 212.547.5444 www.mwe.com**

The Honorable Shira A. Scheindlin
September 5, 2013
Page 2

documents at issue are responsive to previously served fact discovery requests[2] and should be produced as a supplement accordingly.

Following Plaintiffs' September 4 withdrawal of Mr. Barth, Defendants conferred with Plaintiffs and wrote to them (again) outlining the basis for production of the requested materials. *See Letter from D. Ellison to L. Kaufmann* (Sept. 5, 2013) (Ex. A). To date, Plaintiffs have not agreed to produce the 5 documents at issue, although they have said "if" they agree, they will produce the documents by September 30. Defendants respectfully request that the Court put an end to Plaintiffs' delays and order them to produce the documents at issue by September 30.

**II.      Puerto Rico: Plaintiffs' Service of Subpoenas without Notice to Defendants**

Plaintiffs blame their failure to serve notice to Defendants of the subpoenas they served on a "clerical error." *Letter from T. O'Reilly to the Court* (Sept. 3, 2013) (Ex. B). Curiously, Defendants were not informed of this clerical error when we first inquired of Plaintiffs on August 19 as to why we were not given notice of the subpoenas. Had that been Plaintiffs' response, Defendants would not have bothered the Court with this issue. Instead, when we inquired, Defendants were told that we were not entitled to notice of the subpoenas under the Federal Rules of Civil Procedure. *See Email from D. Boone to A. Cepeda Diaz* (Aug. 23, 2013) (Ex. C). Only after Defendants wrote to the Court did Plaintiffs explain that a "clerical error" had occurred. Conspicuously absent from Ms. O'Reilly's letter, of course, is an answer to the question Defendants have asked: did Plaintiffs serve other subpoenas for depositions for which they did not provide the requisite notice to Defendants? Defendants and the Court are entitled to know the answer to that question, and request that Plaintiffs be ordered to provide a response.

Lastly, Plaintiffs' request for an order compelling Defendants to produce these witnesses should be denied. No such order is required. Both witnesses are either current or former employees of Defendants. As such, Plaintiffs should properly service notices for the deposition of these individuals so that Defendants can respond in accordance with the Federal Rules.

### PLAINTIFFS' AGENDA ITEMS

**I.      Puerto Rico: Beyond the Trial Sites Objections**

As summarized in Defendants' previous letters to the Court, Plaintiffs' request is unnecessary and unjustified, particularly where Plaintiffs have refused to initiate individualized meet and confers with Defendants regarding specific deficiencies or questions regarding a defendant's responses. Instead, without identifying a specific deficiency, Plaintiffs ask for a

---

[2] *See, e.g.*, Defendants' 11/26/2008 First Set of Interrogatories and Document Requests, RFP # 2, 4, 8; Defendants' 3/11/2010 Second Set of Interrogatories and Document Requests, RFP # 10, 22-23, 50, 72, 75; Defendants' 6/13/2012 Second Set of Gap Filling Requests for Production of Documents to Plaintiff New Jersey Department of Environmental Protection, RFP # 11;

The Honorable Shira A. Scheindlin
September 5, 2013
Page 3

blanket order requiring all Defendants to state whether documents have been withheld and to identify such documents. Undoubtedly, such a statement by a defendant will be used against that defendant should it inadvertently fail to identify a certain document. This Court has long warned against such "gotcha" tactics in discovery. Plaintiffs have not identified a need for the requested statements by Defendants. If they believe that a defendant has failed to produce documents that they were expecting to receive in response to their requests, then Plaintiffs should initiate a conversation with that defendant. Plaintiffs' request should be denied. If granted, of course, Defendants request that the order be extended to all parties.

## II.   Puerto Rico: Gasoline Supply Information – CMO 4 Declarations

Notwithstanding the letters exchanged by the parties to date, Plaintiffs still have not met and conferred with Defendants regarding their request for CMO 4 declarations. As explained in Defendants' previous letters to the Court, Defendants have already responded to years of discovery regarding the supply and distribution of gasoline into the Commonwealth of Puerto Rico and to the trial sites. Plaintiffs have not identified discovery deficiencies that implicate all Defendants, nor have they explained why the Court should order Defendants to prepare such declarations after Defendants have responded to the various requests propounded by Plaintiffs that call for this information. Plaintiffs' request is a last minute effort to shift the burden to each Defendant to summarize its own prior discovery responses. No such order is appropriate.

## III.   Puerto Rico: ConocoPhillips Company and Chevron Phillips Chemical Puerto Rico Core's Failure to Comply with Orders Regarding MTBE Content of Gasoline

Defendants have complied with the Court's orders. As Plaintiffs' counsel stated in recent correspondence, the Court ordered Defendants to "calculate by year the best estimate [they] can, from studying the batches, what percentage of total sales is made up of MTBE-containing gasoline." *See Letter from W. Petit to S. Dillard & J. Farley* (July 31, 2013) (Ex. D). Defendants did so by providing that information to the Court on August 9, 2013. *See Letter from J. Farley to the Honorable Shira A. Scheindlin, attached as Exhibit C to Plaintiffs' August 30, 2013 Pre-Conference Letter.* Plaintiffs now complain because they do not like the results.

The Commonwealth's letter of July 31, 2013 (Ex. D) states, "If COP cannot provide an estimate for any given year, Judge Scheindlin ordered COP to provide an affidavit explaining why such an estimate cannot be made." Plaintiffs' latest request should be denied because Defendants *have provided* estimates for each year for which records are available. Defendants respectfully request that the Court deny the Commonwealth's request for an order requiring Defendants to perform yet another calculation, as well as the Commonwealth's request for an order requiring Defendants to present another corporate representative on this issue.

Plaintiffs' request has been a moving target. At the June 11 status conference, counsel for the Commonwealth requested that Defendants "tell [Plaintiffs] how much gasoline [Defendants] sold and how much of that was MTBE, and then [Plaintiffs] could figure out the profits." June 11 Tr. at 63:14-16, excerpt attached as Exhibit B to Plaintiffs' August 30, 2013

The Honorable Shira A. Scheindlin
September 5, 2013
Page 4

Pre-Conference Letter. After the Court quashed all profits-related discovery, the Commonwealth argued at the July 17 status conference that they still needed this information to preclude Defendants from arguing at some point in the future that, even if gasoline from the Core facility was distributed to a trial site, there is no way to determine whether that gasoline contained MTBE. *See* July 17 Tr. at 40:18-20, attached as Exhibit A to Plaintiffs' August 30, 2013 Pre-Conference Letter. The Court advised Plaintiffs that they would need a percentage "close to . . . the high eighties . . . to be able to make that argument that a reasonable trier of fact could infer from that answer that if the gasoline got there, it was MTBE-containing gasoline." Jul. 17 Tr. at 41-42. In the same discussion, the Commonwealth argued that Defendants could perform the requested calculation by relying on the blending tickets. *See* Jul. 17 Tr. at 48:18-20.

Now, after Defendants have relied on the blending tickets, Plaintiffs' request has morphed to requesting an estimate of the percentage of "finished gasoline containing MTBE that it manufactured for sale." *See* Plaintiffs' Aug. 30 Pre-Conference Letter at 4. Presumably, Plaintiffs have rephrased their request in an attempt to require Defendants to re-do their calculation but, this time, rely on documents other than the blending tickets. Plaintiffs know that Defendants' gasoline sales records and bills of lading do not identify whether or not MTBE was contained in a sale, and do not reference or identify the blend from which a sale was derived. Moreover, Defendant had sales both within and outside Puerto Rico. Because sales records do not provide the information, and in accordance with the suggestion of Plaintiff's counsel at the July 17 status conference, Defendants used the available blending tickets to perform the calculation. *See* Jul. 17 Tr. at 48:18-20.

Undoubtedly because they do not like the results, the Commonwealth now attempts to disregard its own suggestion to use the blending tickets and to have Defendants calculate estimates in a different manner, presumably to reach results that are more favorable to the Commonwealth. Defendants noted at the June 11 status conference that no estimate Defendants could provide would satisfy Plaintiffs' request, and counsel for the Commonwealth in effect acknowledged as such at the July 17 status conference. *See* Jul. 17 Tr. at 41:8-9. As we have indicated repeatedly, the records used to perform the calculations have been in Plaintiffs' possession for some time, and Plaintiffs could have done (and still can do) the same or similar calculation.

Further, the Commonwealth admits that they understand that "the August 9, 2013 calculations were prepared by counsel and were based on 'available blending tickets' . . . [and] that the calculations represent a percentage of the blending tickets in any given year that mention MTBE." *See* Plaintiffs' Aug. 30 Pre-Conference Letter at 4. Thus, Plaintiffs' complaint that Defendants' 30(b)(6) witness "did not know who prepared those estimates" is moot. Plaintiffs' remaining complaints about Defendants' 30(b)(6) witness are baseless given that the Court never ordered Defendants' 30(b)(6) witness, or any specific individual, to perform the calculations on behalf of Defendants. Rather, the Court ordered Defendants to provide an estimate, period. Accordingly, counsel for Defendants performed the calculations and provided the estimate

The Honorable Shira A. Scheindlin
September 5, 2013
Page 5

Finally, the August 9 letter to the Court was not a document referenced in the Commonwealth's Amended 30(b)(6) deposition notice as an item that would be the subject matter of 30(b)(6) testimony.  Defendants' 30(b)(6) witness was not required to have knowledge of how the calculations were made or whether the mathematical calculations were done with precision. Defendants provided their estimate on August 9 and presented their corporate representatives for deposition on August 21-23.  In that two week period, Plaintiffs never indicated that they disagreed with how the calculations were performed.  Indeed, Plaintiffs questioned Defendants' 30(b)(6) witness regarding Defendants' August 9 letter.  Defendants declined Plaintiffs' recent request for an additional corporate representative deposition on the August 9 letter because Plaintiffs could have included the letter in their Amended 30(b)(6) deposition notice, which they served 12 days prior to the 30(b)(6) deposition.  Defendants have also agreed to provide for deposition, at Plaintiffs' request, additional fact witnesses, including two former employees whose names appear on the blending tickets and have knowledge of the gasoline blending process at Defendants' Puerto Rico facility.

***

As always, we appreciate your Honor's attention to this matter and ask that the letter be docketed by the Clerk's Office so that it is a part of the record.

Respectfully submitted,

*Peter John Sacripanti*

Peter John Sacripanti

cc:      All Counsel By LNFS, Service on Plaintiffs' Liaison Counsel