UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In Re: Methyl Tertiary Butyl Ether ("MTBE")          Master File No. 1:00-1898
Products Liability Litigation                        MDL No. 1358 (SAS)
                                                     M21-88
This Document Relates To:
*City of Fresno v. Chevron U.S.A. Inc., et al.*,
04 Civ. 04973
-------------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF COASTAL CHEM, INC.'S NOTICE OF MOTION AND MOTION FOR GOOD FAITH SETTLEMENT

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

I.    INTRODUCTION ........................................................................................ 1

II.   STATEMENT OF FACTS ............................................................................ 2

      a.   The City's Complaint and General Allegations ........................... 2
      b.   The City's Allegations Against Coastal Chem ............................ 3
      c.   The Settlement Terms ................................................................... 4
      d.   The Settlement Terms Accurately Reflect Litigation Uncertainties ........... 4

           i.    Coastal Chem is Only Allegedly Liable for Impacts at
                 Seven of the 20 Sites at Issue, and the City has not
                 Proffered Evidence to Demonstrate that Coastal Chem is
                 Liable for Any MTBE Contamination at Those Sites, Let
                 Alone Contamination Impacting or Threatening the City's
                 Water Wells ................................................................. 5
           ii.   The City Cannot Prove its Design Defect Claims ........................... 6
           iii.  The City Cannot Prove that Additional Warnings Would
                 Have Prevented Its Injury ............................................... 7
           iv.   The City's Nuisance and Trespass Claims Against Coastal
                 Chem have been Dismissed ............................................... 8
           v.    The City's Damages are Uncertain ...................................... 8

III.  ARGUMENT ............................................................................................ 10

      a.   California Code of Civil Procedure Sections 877 and 877.6 Permit
           Coastal Chem to Obtain a Judicial Determination of Good Faith
           Settlement ................................................................... 10
      b.   The Settlement between Coastal Chem and the City is in Good
           Faith ......................................................................... 11

           i.    The Settlement More Than Approximates Coastal Chem's
                 Proportionate Liability in Comparison with the City's Total
                 Recovery ................................................................ 13
           ii.   The Amount Paid in Settlement is Reasonable .......................... 14
           iii.  Allocation Among Plaintiffs Does Not Apply to This
                 Settlement .............................................................. 15
           iv.   The Settlement Amount Reflects the Policy that a Settlor
                 Should Pay Less In Settlement Than if Liability Were
                 Imposed After Trial ..................................................... 15
           v.    The Financial Condition and Insurance Limits of the
                 Settling Defendant Did Not Affect the Settlement
                 Negotiations. ........................................................... 15

vi.    The Negotiations Between the City and Coastal Chem did not Involve Collusion, Fraud, or Tortious Conduct. ...................... 15

c.    Anyone Contesting the Good Faith of a Settlement Bears the Burden of Proof. ......................................................................... 16

IV.    CONCLUSION .................................................................................................. 16

# TABLE OF AUTHORITIES

## Federal Cases

*Mason and Dixon Intermodal v. Lapmaster Int'l,*
    632 F.3d 1056 (9th Cir. 2011) ............................................................... 10

*Motus v. Pfizer Inc.,*
    196 F. Supp. 2d 984 (C.D. Cal. 2001) ........................................................ 7

*Plummer v. Lederle Labs,*
    819 F.2d 349 (2d Cir. 1987) ..................................................................... 7

## State Cases

*Barth-Wittmore Ins. v. H.R. Murphy Enters., Inc.,*
    169 Cal. App. 3d 124 (1985) ................................................................... 13

*Cahill v. San Diego Gas & Elec. Co.,*
    194 Cal.App.4th 939 (2011) ................................................................... 14

*Fisher v. Superior Court,*
    103 Cal. App. 3d 434 (1980) ................................................................... 10

*Khan v. Shiley Inc.,*
    217 Cal. App. 3d 848 (1990) ..................................................................... 7

*North County Contractor's Ass'n, Inc. v. Touchstone Ins. Servs.,*
    27 Cal. App. 4th 1085 (1994) ................................................................. 13

*Plenger v. Alza Corp.,*
    11 Cal. App. 4th 349 (1992) ..................................................................... 7

*Tech-Belt, Inc. v. Woodward-Clyde & Associates,*
    38 Cal. 3d 488 (1985) ............................................. 11, 12, 13, 15, 16

*Tombaugh v. Superior Court,*
    62 Cal. App. 3d 231 (1976) ..................................................................... 10

## Federal Statutes

Federal Clean Air Act .................................................................................. 6

## State Statutes

Cal. Code Civ. Proc. § 877 ........................................................ 1, 2, 10, 16
Cal. Code Civ. Proc. § 877(b) ........................................................................ 1
Cal. Code Civ. Proc. § 877.6 ................................................................ 1, 2, 16
Cal. Code Civ. Proc. § 877.6(a) ................................................................... 10
Cal. Code Civ. Proc. § 877.6(c) ............................................................... 1, 10
Cal. Code Civ. Proc. § 877.6(d) ............................................................ 11, 16

Cal. Health & Safety Code § 116365 (a) .................................................................9

Cal. Health & Safety Code § 116365 (c) .................................................................9

California Safe Drinking Water Act .........................................................................9

## **Regulations**

22 CCR § 64444.......................................................................................................9

22 CRR § 64449.......................................................................................................9

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

Coastal Chem, Inc. ("Coastal Chem") seeks an order from the Court confirming that its settlement with Plaintiff City of Fresno (the "City") (the "Settlement Agreement and Release") was made in good faith within the meaning of §§ 877 and 877.6 of the California Code of Civil Procedure ("CCP"). Coastal Chem's settlement provides for a payment to the City of $200,000 in exchange for the release and dismissal with prejudice of all claims associated with the present action. This Settlement Agreement and Release was the result of arm's length negotiations which were conducted fairly and in good faith. The settlement is made contingent upon the issuance of an order from this Court confirming that the settlement is made in good faith and confirming that Coastal Chem is protected from contribution and equitable indemnity claims pursuant to CCP §§ 877(b) and 877.6(c), and applicable case law. By this motion, Coastal Chem seeks such a declaration.

A good faith settlement is warranted because under the terms of the settlement, the City will receive more money than it possibly could have recovered against Coastal Chem at trial or in any other proceeding. The City will have significant difficulty in establishing any of its claims against Coastal Chem or any other Defendant due, in part, to an extremely weak causation and damages case, and faces still additional hurdles for its strict liability claims. Moreover, in the unlikely event that the City is able to establish that it is entitled to recover anything from Defendants, Coastal Chem's proportional share of that liability would be minimal. As a result, the settlement amount that Coastal Chem has agreed to pay contingent upon this Court's making a determination of good faith is

fair and reasonable.  Coastal Chem has advised the remaining Defendants of the terms of its agreement with the City and have received no indication of any objection.  *See* Declaration of Brent H. Allen in Support of Defendant Coastal Chem, Inc.'s Motion for Good Faith Settlement ("Allen Decl."), ¶ 2.  Accordingly, Coastal Chem respectfully requests that the Court grant this Motion approving the settlement with the City as a "good faith settlement" pursuant to CCP §§ 877 and 877.6.

## II.     STATEMENT OF FACTS

### a.  The City's Complaint and General Allegations

This case is part of the federal court MTBE multi-district litigation, MDL 1358, now pending in the United States District Court, Southern District of New York.  Allen Decl., ¶ 3.  The City commenced this action in 2003, and amended its Complaint in 2004, claiming that City wells and/or the groundwater that supplies City wells had been contaminated with methyl tertiary butyl ether ("MTBE") and/or TBA contained in gasoline that was manufactured, distributed, or sold by various Defendants.  *See* Allen Decl., Ex. 1 (First Amended Complaint), ¶¶ 2-3, 5, 25, 32, 47.  In its First Amended Complaint, the City alleged claims under strict products liability based on design defect and failure to warn, negligence, trespass, and nuisance.  *Id.* at ¶¶ 70-110.  This Court entered summary judgment against the City on its trespass claim on February 4, 2013.  *See* Allen Decl., Ex. 9 (Order dated Feb. 4, 2013).  On March 15, 2013, certain Defendants filed summary judgment motions on the City's nuisance, negligence, and strict liability claims.  Allen Decl., ¶ 20.  These motions are currently pending before the Court.  *Id.*

### b. The City's Allegations Against Coastal Chem

Based on the allegations described above, the City claims that Coastal Chem is responsible, in part, for the damages the City claims to have suffered or that it will suffer in the future. Specifically, the City alleges that Coastal Chem manufactured, promoted, marketed, sold, supplied and provided MTBE and/or TBA which was added to gasoline which was distributed and sold in areas affecting the City's water system. *See, e.g.,* Allen Decl., Ex. 1 at ¶¶ 27, 30, 32. The City further claims that Defendants, including Coastal Chem, failed to provide adequate warnings and instructions regarding MTBE and its proper handling, and that the harm the City claims to have suffered to its water system by the unauthorized releases of gasoline containing MTBE at the sites at issue could have been prevented had adequate warnings been provided. *See id.* at ¶¶ 72-79.

At the August 16, 2012 Status Conference, the Court ordered the City to identify: (a) the service station sites for which the City will pursue claims at trial and the defendants against which those claims will be asserted; and (b) the service station sites as to which the City is dismissing all claims with prejudice. *See* Allen Decl., Ex. 3 (Case Management Order #108 (Trial Sites and Dismissed Sites)). Per its identification in Case Management Order #108, the City initially identified nine service stations sites at which it was pursuing claims against Coastal Chem. However, in March 2013, the City agreed to dismiss its claims against Coastal Chem at two of the nine sites. *See* Allen Decl., Ex. 4 (Letter from M. Axline dated March 6, 2013). Moreover, all of the City's claims based on trespass and nuisance against Coastal Chem at all sites in this case have been dismissed. *See* Allen Decl. Exs. 9 (Stipulation and Order re Summary Judgment on Plaintiff's Claim for Trespass) and 10 (Order of Dismissal with Prejudice re Nuisance

Claims for Certain Defendants at Certain Sites). As a result, the City's only remaining claims against Coastal Chem relate to seven of the 20 sites in this case, and are on the bases of strict liability and negligence only.

### c. The Settlement Terms

The Settlement Agreement and Release between the City and Coastal Chem releases Coastal Chem from any and all claims by the City that were or could have been asserted in the present action. Allen Decl., Ex. 2 (Settlement Agreement and Release) at §II.1. It also resolves all of the City's claims and potential future claims against Coastal Chem related to (a) any current alleged contamination of, or impacts to, the City's water wells from the release of gasoline or its components, including MTBE, and (b) any future contamination of, or impacts to, the City's water wells by MTBE. *See id.* In exchange, Coastal Chem will provide a lump sum cash payment to the City in the amount of $200,000. Id. at § II.2.b.

### d. The Settlement Terms Accurately Reflect Litigation Uncertainties

The City's allegations described above in Sections II(a) and II(a) above have been, and continue to be, hotly contested by Coastal Chem (and other Defendants). For example, Coastal Chem contends that the City has suffered no cognizable injury that would allow the City to recover under any of its causes of action. Allen Decl., ¶ 6. Coastal Chem also denies that its MTBE contributed to any alleged contamination at the sites at issue, and further contends that it provided adequate warnings regarding MTBE and denies that MTBE, or gasoline containing MTBE, are defective products. *Id.* at ¶¶ 7, 8.

For the reasons further described below, as of August 27, 2013, when the City and Coastal Chem agreed to the terms of their agreement to settle this action, the settling parties each faced significant uncertainty, including as to which causes of action, if any, the City might prevail at trial and which Defendants, if any, would be found liable by the jury and, if so, for what amount of damages. *Id.* at ¶ 9. In recognition of the onerous costs and great uncertainty associated with completing a lengthy jury trial, and without Coastal Chem admitting any fault, responsibility, or liability, the City and Coastal Chem entered into the settlement agreement now before this Court. *See* Allen Decl., Ex. 2.

> **i. Coastal Chem is Only Allegedly Liable for Impacts at Seven of the 20 Sites at Issue, and the City has not Proffered Evidence to Demonstrate that Coastal Chem is Liable for Any MTBE Contamination at Those Sites, Let Alone Contamination Impacting or Threatening the City's Water Wells**

At the time the parties reached an agreement to settle, the City alleged Coastal Chem was liable for MTBE contamination at only seven of the 20 sites at issue in this case – (1) Tosco #30587, 1610 N. Palm; (2) Unocal #6353, 1418 E. Shaw; (3) Van Ness Auto, 2740 North Van Ness; (4) Red Triangle, 2809 South Chestnut Avenue; (5) Chevron #9-9093, 3996 N. Parkway Drive; (6) Tosco #39118, 1605 N. Cedar; (7) Exxon Service Station, 4594 East Tulare Street. *See* Allen Decl. ¶¶ 11, 12. Coastal Chem did not own or operate any of these sites, never owned or operated any underground storage tanks at these sites, and never sold gasoline to any of these sites. Allen Decl. ¶ 10. The City has alleged that Coastal Chem is liable at these sites based on the City's allegation that Coastal Chem supplied MTBE to Chevron during a five month period in 1993, and to Exxon in 1994 and 1997-1998. *See* Allen Decl. Ex. 4 (Letter from M. Axline dated March 6, 2013). However, the City has failed to provide sufficient evidence to support its assumption that gasoline refined by Exxon or Chevron during the limited periods they

were supplied with Coastal Chem's MTBE was ever delivered to any of these seven sites. *See* Allen Decl. Ex. 8 (Excerpts of Certain Defendants' Motion for Partial Summary Judgment for Lack of Evidence Pertaining to Causation). Even assuming that there was a release of gasoline at a relevant site during the limited period the sites are alleged to have been supplied by refiners that purchased MTBE from Coastal Chem, such release has not impacted and does not threaten to impact the drinking water in the City's water wells. *See* Allen Decl. ¶¶ 18 – 19. Not only can the City not connect Coastal Chem's supply of MTBE to any of the sites at issue, the City's expert David Norman admits that he does not have an opinion as to any specific station impacting a specific City Well. Allen Decl., Ex. 5 (Norman Deposition), 1269:15-1272:19.

### ii. The City Cannot Prove its Design Defect Claims

The City's strict liability (design defect) claim will fail for additional reasons. The City contends MTBE dissolves into water and moves faster and farther than other gasoline constituents when released, is more persistent in the environment and more expensive to treat than other gasoline constituents, and allegedly can be tasted and smelled by some people at very low levels. The City further contends that, as a result, MTBE gasoline was defectively designed. Allen Decl., Ex. 1 (First Amended Complaint), ¶¶ 51-55 and 61-76. It alleges that Defendants, including Coastal Chem, used MTBE despite knowing of these risks, *Id.*, ¶¶ 71-74, and claims that ethanol was a viable alternative to MTBE and should have been used instead. *See id.*, ¶ 62.

However, discovery has shown that as a practical matter Defendants were forced to use MTBE in California to comply with amendments to the Federal Clean Air Act ("FCAA") and specifications required by the California Air Resources Board ("CARB")

that required the use of an oxygenate to help reduce emissions from automobiles.  *See* Allen Decl., Ex. 6 (O'Brien Report excerpts), pp. 32-36, 94-98, 114.  Ethanol was simply not a viable option at the time defendants were required to meet the FCAA's amendments.  *Id.* at p. 114.

### iii. The City Cannot Prove that Additional Warnings Would Have Prevented Its Injury

The City's strict liability (failure to warn) claim will likewise fail for additional reasons. In order to succeed on its failure to warn claim, the City must prove causation.  *See Khan v. Shiley Inc.*, 217 Cal. App. 3d 848, 855 (1990) (causation is essential element to products liability action no matter what theory of recovery is utilized).  The City must "prove not only that no warning was provided, but also that the inadequacy or absence of warning caused the plaintiff's injury."  *Motus v. Pfizer Inc.*, 196 F. Supp. 2d 984, 991 (C.D. Cal. 2001) (citation omitted).  In addition, a manufacturer has no duty to warn of a risk that is known and apparent.  *See Plenger v. Alza Corp.*, 11 Cal. App. 4th 349, 362 (1992); *see also Plummer v. Lederle Labs*, 819 F.2d 349, 359 (2d Cir. 1987) ("no harm could have been caused by a failure to warn of a risk already known") (citation omitted).

The downstream handlers of Coastal Chem's MTBE, including refiners and gasoline service station operators, were all aware that gasoline is dangerous, must not be spilled, and must be immediately cleaned up if it is spilled, regardless of its specific chemical makeup.  Coastal Chem provided a well-recognized dangerous product for sale to a sophisticated user customer base.  Coastal Chem provided appropriate warnings regarding the transportation, storage, and handling of MTBE.

The City has not designated an expert who is qualified to testify about whether its proposed additional warnings would have changed the station operators' behavior and prevented the City's alleged injury.  Additionally, the City cannot show that Coastal

Chem affirmatively instructed the owners or operators of the stations at which the City alleges Coastal Chem is liable to handle MTBE gasoline in an improper manner. In contrast, Defendants have designated Dr. Christine Wood, who opines that Defendants' warnings were adequate and any additional warnings would not have affected the gasoline station operator's behavior. Allen Decl., Ex. 7 (Wood Report excerpts), p. 11. Further, the discovery record contains the testimony of gasoline station owners and operators, who consistently testified that defendants' warnings were adequate and that additional warnings would not have changed operators' behavior with respect to addressing a release of gasoline (with or without MTBE) in a prompt, reasonable, and comprehensive manner.

### iv.  The City's Nuisance and Trespass Claims Against Coastal Chem have been Dismissed

The City's nuisance and trespass claims against Coastal Chem have been dismissed and will not be a source for future liability. On February 4, 2013, the Court entered an order dismissing with prejudice trespass claims against all Defendants, pursuant to a stipulation between the parties. Allen Decl. Ex. 9. Moreover, on April 2, 2013, the Court entered an order dismissing with prejudice many of the City's nuisance claims with respect to certain defendants at certain trial sites, including all of the City's nuisance claims against Coastal Chem. Allen Decl. Ex. 10.

### v.  The City's Damages are Uncertain

Even if the City were to prevail on its claims at trial, the amount of damages it could recover is uncertain at best. The City has generally failed to proffer a legally sustainable damages case against any party, including Coastal Chem. Allen Decl., ¶ 16. The City has presented no groundwater model predicting future MTBE impacts on the

City's well system.  Instead, the City essentially claims that in order to prevent and/or mitigate future MTBE contamination that it claims will impact its wells, it must expend resources to conduct additional assessment and remediation at approximately 20 sites identified as alleged sources of MTBE.  However, the authority to order and oversee underground storage tank ("UST") site remediation belongs to the Central Valley Regional Water Quality Control Board, not the City.  Moreover, the City's damages witnesses could not identify any costs the City had incurred to date related to the alleged contamination.  Furthermore, the City's water treatment expert, Richard Haberman, did not offer any opinions supporting a damages amount that the City might seek to recover at trial.  Allen Decl., ¶ 17.  Indeed, Mr. Haberman did not identify any City well that warranted treatment for MTBE contamination, but rather simply described a limited number of treatment options in the industry (*e.g.*, granular activated carbon treatment) to address MTBE contamination when it actually exists.  *Id.*

In fact, the City has never reported MTBE detections in any of its wells at levels above even 1.5 parts per billion ("ppb"), which is below California's Maximum Contaminant Levels ("MCLs").[1]  Allen Decl., ¶ 18.  The City's well system has simply never experienced MTBE detections at levels even close to the State's MCLs, nor at levels that have required any remedial action in the past, and any future damage costs are

---

[1] The California Safe Drinking Water Act requires the California Ofice of Environmental Health Hazard Assessment to set public health goals for drinking water "based exclusively on public health considerations," and to set them at levels "at which no known or anticipated adverse effects on health occur, with an adequate margin of safety." Cal. Health & Safety Code ("H&S") § 116365 (c).  The statute requires the California Department of Public Health ("CDPH") to "adopt primary drinking water standards for contaminants in drinking water" that are "as close as feasible to the corresponding public health goal placing primary emphasis on the protection of health…" Cal. H&S § 116365 (a).  To meet these requirements for MTBE, the CDPH set the primary health MCL at 13 ppb and the secondary aesthetic MCL at 5 ppb. 22 CCR §§ 64444, 64449.

highly unlikely as MTBE has been out of Defendants' gasoline for a decade, while none

of the City's wells have appreciable MTBE impacts at this time.  Allen Decl., ¶ 19.  In

light of these facts, it is highly unlikely that any of the City's wells will require future

treatment, much less that a jury would award the City significant future damages for such

unnecessary treatment.

### III.   ARGUMENT

#### a.   California Code of Civil Procedure Sections 877 and 877.6 Permit Coastal Chem to Obtain a Judicial Determination of Good Faith Settlement

It is appropriate for this Court to apply California law in making the good faith
determination requested here.  *Mason and Dixon Intermodal v. Lapmaster Int'l*, 632 F.3d
1056, 1060 (9th Cir. 2011).  California Code of Civil Procedure Section 877.6(a)

provides that "[a]ny party to an action in which it is alleged that two or more parties are

joint tortfeasors…shall be entitled to a hearing on the issue of the good faith of a

settlement entered into by the plaintiff or other claimant and one or more alleged

tortfeasors…"  Cal. Code Civ. Proc. § 877.6(a) (2010).  Section 877 provides that:

> Where a release, dismissal, with or without prejudice, or a covenant not to sue or
> not to enforce judgment is given in good faith before verdict or judgment to one
> or more of a number of tortfeasors claimed to be liable for the same tort…(b) It
> shall discharge the party to whom it is given from all liability for any contribution
> to any other parties.

*Id.* § 877; *see also id.* § 877.6(c) (good faith determination bars other joint tortfeasors

from asserting claims "for equitable comparative contribution, or partial or comparative

indemnity, based on comparative negligence or comparative fault.").

The legislative intent underlying Section 877 was to extinguish all claims against

the settling defendant, including those by the claimant and any alleged joint tortfeasors.

*See Tombaugh v. Superior Court*, 62 Cal. App. 3d 231, 235 (1976).  Moreover, Section

877 embodies the strong public policy encouraging settlement of litigation.  *See Fisher v.*

*Superior Court*, 103 Cal. App. 3d 434, 442-43 (1980).  It is a challenger's burden to demonstrate a lack of good faith.  Cal. Code Civ. Proc. § 877.6(d).

Here, the evidence demonstrates the City's claims face serious hurdles. Moreover, the outcome of Coastal Chem's pending motion for summary judgment for lack of evidence pertaining to causation could dramatically limit the City's ability to obtain a judgment against Coastal Chem.  Additionally, the City's case for future damages to treat presently non-existent MTBE contamination is uncertain, at best. Nonetheless, Coastal Chem has agreed to settle this action and undertake the obligations of the settlement agreement.  In keeping with the policy goals of Section 877, Coastal Chem's good faith settlement with the City terminates this litigation as to them, and Coastal Chem is entitled to protection against claims for contribution and indemnity.

### b.  The Settlement between Coastal Chem and the City is in Good Faith

In *Tech-Bilt, Inc. v. Woodward-Clyde & Associates*, the California Supreme Court articulated the standard for determining whether a settlement is made in good faith. *Tech-Belt, Inc. v. Woodward-Clyde & Associates*, 38 Cal. 3d 488 (1985).  The *Tech-Bilt* court noted that an appropriate definition of good faith "would enable the trial court to inquire, among other things, whether the amount of the settlement is within the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries."  *Id.* at 499.  Bad faith is not necessarily "established by a showing that a settling defendant paid less than his theoretical proportionate or fair share…Such a rule would unduly discourage settlements."  *Id.* (citation omitted).  The *Tech-Bilt* court recognized that a good faith settlement determination must take into consideration the speculative and unpredictable nature of litigation and should not be determined solely by

11

the proportion the settlement bears or may bear to the damages or alleged damages claimed by the plaintiff.  *See id.* at 499.  In *Stambaugh v. Superior Court.*, which the California Supreme Court cited with approval, the court acknowledged the policy in favor of settling litigation and specifically noted that

> [e]xcept in rare cases of collusion or bad faith...a joint tortfeasor should be permitted to negotiate settlement of an adverse claim according to his own best interests, whether for his financial advantage, or for the purchase of peace and quiet, or otherwise.  His good faith will not be determined by the proportion his settlement bears to the damages of the claimant.  For the damages are often speculative, and the probability of legal liability therefor is often uncertain and remote.

*Stambaugh v. Superior Court*, 62 Cal. App. 3d at 238 (cited in *Tech-Bilt*, 38 Cal. 3d at 499).

In *Tech-Bilt*, the California Supreme Court identified certain factors that are relevant to the determination of a good faith settlement.  These factors include:

(1) a rough approximatamn of the plaintiff's total recovery and the settlor's proportionate liability;

(2) the amount paid in settlement;

(3) the allocation of settlement proceeds among plaintiffs;

(4) recognition that a settlor should pay less in settlement than if the settlor were found liable after a trial;

(5) the financial condition and the insurance policy limits of the settlor; and

(6) the existence of collusion, fraud, or tortious conduct aimed to injure the interests of non-settling defendants.

38 Cal. 3d at 499. However, "[a] judge charting the boundaries of good faith of necessity must avoid a rigid application of the factors set forth in *Tech-Bilt*." *North County Contractor's Ass'n, Inc. v. Touchstone Ins. Servs.*, 27 Cal. App. 4th 1085, 1090 (1994).

The key consideration is whether the settlement is "grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be." *Tech-Bilt, Inc.*, 38 Cal. 3d at 499. Indeed, the determination of good faith does not require that, in effect, a trial of the merits occur before there can be a good faith settlement. *Barth-Wittmore Ins. v. H.R. Murphy Enters., Inc.*, 169 Cal. App. 3d 124, 132 (1985) ("[T]he determinant of good faith is not the liability figure ultimately reached at trial."). The court "has wide discretion in deciding whether a settlement is in good faith and in arriving at an allocation of valuation of the various interests involved." *North County Contractor's Ass'n, Inc.*, 27 Cal. App. 4th at 1092, 1095.

An analysis of the relevant *Tech-Bilt* factors and evidence demonstrates that the City's settlement with Coastal Chem is a reasonable settlement made in good faith between the settling parties, who in no way aimed to injure the interests of any non-settling person.

### i. The Settlement More Than Approximates Coastal Chem's Proportionate Liability in Comparison with the City's Total Recovery

Coastal Chem contends that many serious questions exist respecting the City's ability to establish liability against them on its remaining claims. Moreover, even if liability could be established, Coastal Chem contends that the City's as yet unspecified damages are unsupported, based on speculation, and likely to be significantly reduced or barred by pre-trial motions. Moreover, the basis of the City's claim for Coastal Chem's alleged liability at the sites is extremely limited, as Coastal Chem never owned or

operated any of the sites at issue, never owned or operated any of the USTs at the sites at issue, and never supplied gasoline to any of the sites at issue. Allen Decl, ¶ 10. Thus, Coastal Chem should not pay a significant percentage of the City's claimed damages even if Coastal Chem is somehow found liable at trial.

As to Coastal Chem's proportional liability compared to other defendants, Coastal Chem generally cannot have liability for equitable indemnity to a non-settling defendant as they have essentially no liability to the City as their actions were not a substantial factor in causing the City's damages. It is therefore appropriate for this Court to conclude that Coastal Chem likewise has little or no potential liability to other defendants based upon equitable indemnity or comparative fault. *See e.g. Cahill v. San Diego Gas & Elec. Co.*, 194 Cal.App.4th 939, 965 (2011) ("Because the trial court…concluded [settlor's] potential liability was 'so remote' based on the lack of causation, the court could rationally conclude [settlor] had no greater liability to [co-defendant] for equitable indemnity than it had to [plaintiff] for negligence").

Accordingly, Coastal Chem's settlement more than approximates its proportionate liability when compared with the City's uncertain and speculative total recovery against the defendants in this matter.

### ii.  The Amount Paid in Settlement is Reasonable

The amount to be paid by Coastal Chem in settlement is reasonable. As established above, there are substantial factual disputes surrounding Coastal Chem's alleged liability and the amount and recoverability of the City's damages. In view of these disputes of fact, the City has agreed to accept the consideration offered by Coastal Chem in exchange for a release and dismissal with prejudice of all claims associated with

14

the present action.  The amount is nevertheless substantial, and the City's willingness to

accept it from Coastal Chem provides strong evidence that the settlement amount is

reasonable.

### iii.   Allocation Among Plaintiffs Does Not Apply to This Settlement

Equitable allocation among party plaintiffs does not apply in this case because

there is only one plaintiff party.

### iv.   The Settlement Amount Reflects the Policy that a Settlor Should Pay Less In Settlement Than if Liability Were Imposed After Trial

A settling defendant should pay less in settlement than if the case went to trial and

liability was imposed because settlement avoids the costs of discovery and other litigation

expenses.  *See Tech-Bilt*, 38 Cal. 3d at 499.  Given the number of defendants, number of

stations at issue, and flaws in the City's damages claims against Coastal Chem, the

settlement amount paid – to the extent it might be less than the amount Coastal Chem

could be ordered to pay after trial – is appropriate.

### v.   The Financial Condition and Insurance Limits of the Settling Defendant Did Not Affect the Settlement Negotiations.

Neither Coastal Chem's financial condition, nor any insurance coverage limits,

reduced the amount it agreed to pay in settlement.  Therefore this factor is not applicable.

### vi.   The Negotiations Between the City and Coastal Chem did not Involve Collusion, Fraud, or Tortious Conduct.

Under California law, the court examines whether there was the "existence of

collusion, fraud, or tortious conduct" in connection with the settlement agreement and/or

whether the settlement agreement was "aimed to injure the interests of non-settling

defendants." *Tech-Bilt, Inc.*, 38 Cal. 3d at 499.  Here, the agreement involves the

payment of a substantial sum in settlement of a dispute between bona fide adversaries.

This settlement is the result of good faith settlement negotiations between the settling parties. Allen Decl. ¶ 23. This settlement is not aimed at injuring the interests of any non-settling defendant or other person. *Id.* This settlement agreement is simply the result of the settling parties wishing to resolve their claims in a fair and expedient manner. *Id.*

### c. Anyone Contesting the Good Faith of a Settlement Bears the Burden of Proof.

A person challenging the good faith of this settlement bears the burden of proving that the settlement is not in good faith. *See Tech-Bilt*, 38 Cal. 3d at 499-500; *see also* Cal. Civ. Proc. Code § 877.6(d). He or she must show that the settlement is "so far 'out of the ballpark' in relation to [the *Tech-Bilt*] factors as to be inconsistent with the equitable objectives of [Code of Civil Procedure § 877.6]." *Tech-Bilt*, 38 Cal. 3d at 499-500. Here, any challenge would be unwarranted, given the allegations, claims, and facts underlying this dispute and the settlement reached by the parties.

## IV.   Conclusion

Coastal Chem and the City wish to bring a final resolution to all of the City's claims against Coastal Chem regarding alleged MTBE contamination of the City's well system and the groundwater from which that system draws. In order to achieve this, and for the reasons set forth herein, Coastal Chem respectfully requests that the Court find the settlement to be a "good faith settlement" as provided in California Code of Civil Procedure §§877 and 877.6.

Respectfully submitted,

Dated: September 10, 2013

Greenberg Traurig, LLP

By: _Brent H. Allen_
Brent H. Allen
Greenberg Traurig, LLP
2101 L Street NW, Suite 1000
Washington, DC 20037
Tel: (202) 331-3100
Fax: (202) 331-3101
Attorneys for Defendant Coastal
Chem, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2013 I served a copy of this Memorandum of Law in Support of Coastal Chem, Inc.'s Motion for Good Faith Settlement on all counsel of record via LNFS.

James Layman