# Exhibit 4

Law Offices of
# MILLER, AXLINE & SAWYER
A Professional Corporation

DUANE C. MILLER
MICHAEL AXLINE
A. CURTIS SAWYER, JR.

TRACEY L. O'REILLY
EVAN EICKMEYER
DANIEL BOONE
JUSTIN MASSEY
BRIAN D. SHANNON
DONALD MOONEY, of Counsel

March 6, 2013

**VIA LNFS**

Brent Allen, Esq.
Greenberg Traurig
2101 L. Street NW, Suite 1000
Washington, DC  20037

      Re:   *City of Fresno v. Chevron U.S.A., Inc., et al.*
             No. 1:04-cv-04973-SAS (MDL 1358)
             **Plaintiff City of Fresno's Further Meet-and-Confer re Coastal Chem's Proposed Motion for Summary Judgment**

Dear Brent:

      This letter responds to yours of January 16 and 20, 2013, and February 19, 21 and 26, 2013, and supplements Evan Eickmeyer's correspondence of February 8, 2013.  Your letters request that the City withdraw its claims against Coastal Chem, Inc., at certain stations in Fresno.  Based on your letter we agree to do so at some sites and decline to do so at others.

      Before responding with respect to specific sites, the City notes that Coastal Chem's liability is based upon Coastal Chem's supplying neat MTBE to Chevron and Exxon for use in gasoline delivered into Fresno.  In *In Re MTBE*, 591 F. Supp.2d 259, 277 (S.D. N.Y. 2008), Judge Scheindlin applied the commingled product theory to two other neat MTBE suppliers, Lyondell and Equistar.   Under this theory, Coastal Chem is liable at sites where the refiners who used Coastal Chem MTBE are liable.  As you concede in your letter, Coastal Chem supplied neat MTBE to Chevron in 1993 and Exxon in 1994 and 1997-98.

      Your February 19, 2013, letter asserts: "the Court emphasized at the January 11 hearing that in order to defend against a motion for summary judgment, Plaintiff must be able to provide evidence connecting an individual supplier's product to deliveries of MTBE gasoline to the stations at issue."  This is not accurate.

      At the January 11, 2013, status conference, in a discussion of Fresno's claims against Duke Energy, Judge Scheindlin rejected defendants' argument that the City would have to amend its complaint to allege the commingled product theory, and made clear that use of the theory is simply "a matter of proof." Tr. at 40:20-21.  She also made clear that she was not interested in

Brent Allen, Esq.
March 6, 2013
Page 2

re-visiting her prior commingled product rulings. Tr. at 40:11-16 ("I said what I had to say about that theory, and it's old news.") This alone should make you re-consider your proposed motion for summary judgment.

      After stating that the City did not need to amend its complaint to allege commingled product theory, Judge Scheindlin asked: "can you *also* do it with direct product, Tracey [tracing?] or do you *have* to rely on the blended, you know, total product and the markets?" Tr. at 41:4-6. Ms. O'Reilly stated in the context of the discussion of Duke that "[w]e're not going with commingled in the pipeline. We're going with direct evidence, is what we explained [with respect to Duke in the City's pre-conference letter]." Tr. at 41:12-13. Ms. O'Reilly went on to explain the City has evidence that "Duke Energy mixed several gas station sites, received delivery, deliveries of MTBE gasoline from jobbers to whom Duke Energy sold MTBE gasoline." Tr. at 42:11-13.

      This discussion, and Ms. O'Reilly's statements, merely clarified that with respect to some defendants, including Duke, the City's evidence will allow the jury to conclude that the defendants' product was delivered directly to some stations. Ms. O'Reilly did *not* state that the City would not rely on the commingled product theory for all defendants or even all stations. Since, as Judge Scheindlin's commingled product opinion makes clear, it is impossible to trace neat MTBE to individual release sites, such a conclusion would never have been reached in such an off-hand and indirect way.

      As I stated during our face-to-face meet and confer session on March 4, 2013, the City will be relying on the commingled product theory method of proof for defendants, including neat MTBE suppliers, against whom the City does not have direct evidence of delivery to particular stations. This evidence will include (but not be limited to) the deposition of Dickman Lum in the South Tahoe and Merced cases and the deposition of Fresno terminal manager Robert Kennedy in City of Dinuba v. Unocal Corp.

      With respect to your comments on specific stations, the City responds as follows.

      At Chevron 9-4374, your letter states that the site was demolished in 1988 or 1989, prior to the time that Coastal Chem supplied MTBE to Chevron, and it never reopened. The City will withdraw its claims against Coastal Chem at this site.

      At Chevron 9-9093, you suggest that because the only specific release identified by Marcel Moreau occurred in 1995, Coastal Chem MTBE could not have been in the Chevron gas that was released at the site. We disagree. Mr. Moreau's statements regarding specific releases do not state or imply that no other releases occurred. To the contrary, as Mr. Moreau explains, releases of gasoline were routine, due not only to the ineffectiveness of underground storage

Brent Allen, Esq.
March 6, 2013
Page 3

tanks, piping systems to dispenser islands and dispensers themselves, but also due to vapor leaks and individually small but cumulatively significant releases that occur during fuel deliveries and customer overfilling and dripping during fueling. Moreau Report, sections I, II and V. As defendants' own expert Sam Williams testified: "I don't know, except under certain specific sites, when an individual release occurred. The release occurred over a certain time period, usually during the period from '92 to '97 or '98 or '99 . . . ." June 7, 2012, Deposition of Sam Williams, at 101:12-16.

      At Gilbert's Exxon, your letter states that the site stopped selling gasoline in 1990, and the underground storage tanks were removed in 1991, prior to the time that Coastal Chem sold MTBE gasoline to Exxon. The City will withdraw its claims against Coastal Chem at this site.

      At the Exxon station at 4594 East Tulare Street you cite Exxon's discovery responses for the proposition that this site did not sell Exxon gasoline until 2002 at the earliest, after the time period in which Coastal Chem supplied neat MTBE to Exxon, and suggest that MTBE at the site therefore could not have come from Coastal Chem. This site, however, was a Circle K site beginning in 1999, shortly after Coastal Chem supplied neat MTBE to Exxon. Three jobbers delivered gasoline to this site, El Monte Gas, Julien Oil Company, and Boyett Petroleum. Because these jobbers would have lifted from the Fresno terminal where Exxon gas was terminalled and commingled with the gas of other refiners, the City will assert the commingled product theory at this site.

      At the Tosco 30587 site, your letter states that Chevron's only connection to the site is through its merger with Union Oil in 2005, and Chevron gasoline containing Coastal Chem MTBE therefore could not have been delivered to the site. Union Oil's Supplemental Responses to 1st Rogs, Response to Rog 1, however, indicate that Union Oil purchased Chevron gasoline in California from 1989 through 1997. You also state Unocal supplied this site with gasoline from Union Oil's San Francisco refinery during the relevant time. Unocal, however, would have terminalled its gasoline at the Fresno terminal, where it would have commingled with other products, including Chevron products containing Coastal Chem's MTBE. Accordingly, the City will assert the commingled product theory at this site.

      At the Unocal 6353 site, your letter states that Chevron's only connection to the site is through its merger with Union Oil in 2005, and Chevron gasoline containing Coastal Chem MTBE therefore could not have been delivered to the site. Union Oil's Supplemental Responses to 1st Rogs, Response to Rog 1, however, indicate that Union Oil purchased Chevron gasoline in California from 1989 through 1997. You also state Unocal supplied this site with gasoline from Union Oil's San Francisco refinery during the relevant time. Unocal, however, would have terminalled its gasoline at the Fresno terminal, where it would have commingled with other products, including Chevron products containing Coastal Chem's MTBE. Accordingly, the City

Brent Allen, Esq.
March 6, 2013
Page 4

will assert the commingled product theory at this site.

    At the Tosco 39118 site, your letter states that Chevron's only connection to the site is through its merger with Union Oil in 2005, and Chevron gasoline containing Coastal Chem MTBE therefore could not have been delivered to the site. Union Oil's Supplemental Responses to 1st Rogs, Response to Rog 1, however, indicate that Union Oil purchased Chevron gasoline in California from 1989 through 1997. You also state Unocal supplied this site with gasoline from Union Oil's San Francisco refinery during the relevant time. Unocal, however, would have terminalled its gasoline at the Fresno terminal, where it would have commingled with other products, including Chevron products containing Coastal Chem's MTBE. Accordingly, the City will assert the commingled product theory at this site.

                                              Sincerely,

                                              Michael Axline
                                              Counsel for City of Fresno

cc:  All Counsel (via LNFS)