UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE METHYL TERTIARY BUTYL ETHER
PRODUCTS LIABILITY LITIGATION

Master File No. 1:00 – 1898
MDL 1358 (SAS)
M21-88

This document pertains to:

*New Jersey Department of Environmental
Protection, et al. v. Atlantic Richfield Co., et al.
No. 08 Civ. 312*

**SHELL'S LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS SUBMITTED IN
SUPPORT OF SHELL'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON
PLAINTIFFS' CLAIM FOR PRIMARY RESTORATION AT THE RIDGEWOOD
TRIAL SITE**

SEDGWICK LLP
2900 K Street, NW
Harbourside, Suite 500
Washington, DC 20007
(202) 204-1000

Attorneys for Defendants Shell Oil Company, Shell Oil
Products Company LLC, Shell Trading (US) Company,
Equilon Enterprises LLC, and Motiva Enterprises LLC

Defendants Shell Oil Company, Shell Oil Products Company LLC, Shell Trading (US) Company, Equilon Enterprises LLC, and Motiva Enterprises LLC (collectively "Shell") submit this statement of material facts as to which there is no genuine dispute in support of their Motion for Partial Summary Judgment on Plaintiff's Claims for Primary Restoration at the Ridgewood Trial Site.

1. In 1987, a release of gasoline including MTBE was detected in the Village of Ridgewood's Walthery and Twinney drinking water wells. (Declaration of Richard E. Wallace, Jr. in Support of Shell Defendants' Motion for Partial Summary Judgment ("Wallace Decl."), ¶1, Exh. 1 (Walthery and Twinney Well Sampling Results, NJDEP-SITE220-026052 to 026053; NJDEP-SITE220-026055; and NJDEP-SITE220-026057; Wallace Decl., ¶8, Ex. 8 (Revised Site Summary, ID #11346 Shell Station #138490, Jan. 2013, at 52).)

2. In 1992, the Village installed a treatment system on the Walthery and Twinney drinking water wells. (Wallace Decl. ¶1, Exh. 1 (June 1992 letter from William Mowell to John Horan, SH-NJ-WG012572 to SH-NJ-WG012577).)

3. The Village brought suit against Shell and several other companies, as well as the New Jersey Department of Transportation, to recover those treatment costs. Shell and two other defendants settled the claims of the Village in 1994 and, as part of the settlement, paid for the Village's treatment costs. (Wallace Decl. ¶2, Exh. 2 (1994 Settlement Agreement SH-NJ-XX-081405 to SH-NJ-XX-081417).)

4. Additional gasoline release releases were reported in the years after the 1987 release, most recently in 1998. (Wallace Decl., ¶8, Exh. 8 (Revised Site Summary , ID #11346 Shell Station #138490, Jan. 2013, at 52).)

5.      The Village brought a second suit against Shell in 1998, this time seeking costs it incurred to upgrade a treatment system for a third water well, the Paramus well.  In 1999, Shell settled that case, too, and again paid the Village for its treatment costs, all at no cost to NJDEP. (Wallace Decl. ¶3, Exh. 3 (1999 Settlement Order, SH-NJ-XX-048711 to SH-NJ-XX-048717); Wallace Decl. ¶4, Exh. 4 (Plaintiff's Amended Responses to Defendants' Requests for Admission Related to the Shell Ridgewood Trial Site ("RFAs") at No. 81).)

6.      On August 31, 2000, NJDEP issued an Administrative Order and Notice of Civil Administrative Penalty Assessment against Shell for the Ridgewood Site.  In January 2007, NJDEP and Shell entered into an Administrative Consent Order which settled NJDEP's claims for alleged violations or shortcomings in the remedial work at Ridgewood, as well as NJDEP's claims for its oversight costs and a penalty.  (Wallace Decl., ¶5, Exh. 5 (January 9, 2007 Administrative Consent Order, SH-NJ-BB000058 to SH-NJ-BB000072).)

7.      MTBE has not been detected in any Ridgewood supply wells at levels above the groundwater quality standards since 1998.  (Wallace Decl. ¶1, Exh. 1 (VOR Municipal Well Sampling Results, SH-WK-RIDGEWOOD 009195 to 009198); Wallace Decl. ¶4, Exh. 4 (Amended Responses to RFAs Nos. 58, 59, 60).)

8.      MTBE has not been detected at any level in any of the Ridgewood wells since 2008.  (Wallace Decl. ¶1, Exh. 1 (VOR Municipal Well Sampling Results, SH-WK-RIDGEWOOD 009195 to 009198); Wallace Decl. ¶3, Exh. 3 (1999 Settlement Order, SH-NJ-XX-048711 to SH-NJ-XX-048717); Wallace Decl. ¶4, Exh. 4 (Plaintiff's Amended Responses to RFAs Nos. 61, 62, 63).)

9.      The Shell Defendants have already installed 85 monitoring and extraction wells at the Ridgewood Site to monitor the location and size of the MTBE plume.  (Declaration of Julian

Davies in Support of Shell Defendants' Motion for Partial Summary Judgment ("Davies Decl."), ¶17, Exh. 2 (2012 Groundwater and Soil Remediation System Shutdown Approval, SH-NJ-SCI467567).)

10. With NJDEP approval, active remediation at the Ridgewood Site ended in 2009. (Davies Decl. ¶¶11, 12, Exh. 2 (2012 Groundwater and Soil Remediation System Shutdown Approval, SH-NJ-SCI467567, at Attachment A (Remedial Action Progress Report Addendum Remediation System Shutdown Request, February 2009).)

11. The Licensed Site Remediation Professional-of-Record ("LSRP-of-Record") responsible for overseeing remediation at the Ridgewood Trial Site is Julian Davies. (Davies Decl. ¶2.)

12. Mr. Davies has been the LSRP-of-Record of the Ridgewood Site since 2010. (Davies Decl. ¶2.)

13. As the LSRP-of-Record at the Ridgewood Site, Mr. Davies is responsible for oversight of the investigation and remediation of the Site, without direct supervision or prior approval of NJDEP's Site Remediation Program ("SRP"), and he has authority under the SRRA to conduct investigations, approve remedial alternatives, and determine when remedial action is complete. (Davies Decl. ¶3.)

14. Under the SRRA, LSRPs "'step into the shoes' of the Department of Environmental Protection (Department) to oversee the remediation of contaminated sites in most instances." (Davies Decl. ¶4, Exh. 1 (NJDEP SRP, *Overview of the Licensed Site Remediation Professional (LSRP) Program,* April 2011).)

15. Mr. Davies is required to oversee the remediation of contaminated sites in accordance with NJDEP's applicable standards, regulations and technical guidance for responsible parties. (Davies Decl. ¶4.)

16. LSRPs are subject to a strict code of conduct contained in the SRRA at C.58:10C-16and must ensure that remediations are protective of human health, safety and the environment. (Davies Decl. ¶¶4, 7.)

17. Under the SRRA code of ethics, an LSRP's "highest priority in the performance of professional services shall be the protection of public health and safety and the environment." (Davies Decl. ¶7; C.58:10C-16.)

18. In his role as LSRP-of-Record at the Ridgewood Site, Mr. Davies has been responsible for making professional judgments pertaining to the investigation and remediation of environmental contamination at the Site. In doing so, he has exercised independent professional judgment and reasonable care and diligence, and he has been mindful of the SRRA's requirement that an LSRP's highest priority is the protection of public health and safety and the environment. (Davies Decl. ¶9.)

19. By the time Mr. Davies became the LSRP-of-Record for the Ridgewood Site, two active remediation systems, a soil vapor extraction ("SVE") system and a groundwater pump and treat system, had already been in place. (Davies Decl. ¶10.)

20. The SVE system at the Ridgewood Site, which was connected to 18 wells on and around the Ridgewood Site, ceased operation in February 2009. (Davies Decl. ¶11; Exh. 2 (2012 Groundwater and Soil Remediation System Shutdown Approval, SH-NJ-SCI467567, at Attachment A (Remedial Action Progress Report Addendum Remediation System Shutdown Request, February 2009).)

21. The groundwater pump and treat system also ceased operation in 2009. (Davies Decl. ¶12, Exh. 2 (2012 Groundwater and Soil Remediation System Shutdown Approval, SH-NJ-SCI467567, at Attachment A (Remedial Action Progress Report Addendum Remediation System Shutdown Request, February 2009).)

22. In 2009, NJDEP approved a Remedial Action Progress Report Addendum Remediation System Shutdown Request requesting a temporary active remediation shutdown at the Site. (Davies Decl. ¶¶11, 12, Exh. 2 (2012 Groundwater and Soil Remediation System Shutdown Approval, SH-NJ-SCI467567, at Attachment A) (Remedial Action Progress Report Addendum Remediation System Shutdown Request, February 9, 2009); Attachment B (Remedial Action Progress Report Addendum Approval, July 13, 2009).)

23. NJDEP reiterated that approval in 2010. (Davies Decl. ¶¶11, 12, Exh. 2 (2012 Groundwater and Soil Remediation System Shutdown Approval, SH-NJ-SCI467567, at Attachment C) (Remedial Action Progress Report Addendum Approval and CEA Approval, February 25, 2010).)

24. The SVE system remained on the Site, but inactive, until 2012. (Davies Decl. ¶11, Exh. 2 (2012 Groundwater and Soil Remediation System Shutdown Approval, SH-NJ-SCI467567).)

25. The groundwater pump and treat system remained on the site, but inactive, until 2012. (Davies Decl. ¶12, Exh. 2 (2012 Groundwater and Soil Remediation System Shutdown Approval, SH-NJ-SCI467567).)

26. On September 12, 2012, in his role as LSRP-of-Record, Mr. Davies approved the permanent shutdown and removal of the SVE and groundwater pump and treat equipment from the Ridgewood Site. With NJDEP approval, neither system had been operated since 2009.

(Davies Decl. ¶13, Exh. 2 (2012 Groundwater and Soil Remediation System Shutdown Approval, SH-NJ-SCI467567, at 2)().)

27. By letter dated March 28, 2006, NJDEP's SRP approved an Off-Site Remedial Action Workplan ("RAW") that proposed a Natural Remediation Compliance Program – Monitored Natural Attenuation – as the remedial action for off-site groundwater at Ridgewood. (Davies Decl. ¶15, Exh. 3 (March 28, 2006 letter from William S. Hose Approving the Off-Site Remedial Action Workplan).)

28. The March 2006 approval letter specifically identified 36 wells that needed to be sampled, and the sampling frequency for those wells, as part of the Natural Remediation Compliance Program. (Davies Decl. ¶15, Exh. 3 (March 28, 2006 letter from William S. Hose Approving the RAW).)

29. NJDEP's SRP approved removing certain of the wells at the Ridgewood Site from the sampling schedule because it determined that sampling them was no longer necessary. (Davies Decl. ¶15, Exh. 3 (March 28, 2006 letter from William S. Hose Approving the RAW).)

30. NJDEP's SRP did not require the installation of any additional monitoring wells as part of its RAW approval. (Davies Decl. ¶15, Exh. 3 (March 28, 2006 letter from William S. Hose Approving the RAW).)

31. On September 12, 2012, in his role as LSRP-of-Record, Mr. Davies approved Monitored Natural Attenuation ("MNA") as the remedial strategy for on-site groundwater at the Ridgewood Site. (Davies Decl. ¶16, Exh. 2 (2012 Groundwater and Soil Remediation System Shutdown Approval, SH-NJ-SCI467567, at 2).)

32. After examining the historical sampling results from 30 on-site and off-site groundwater wells, in his role as LSRP-of-Record, Mr. Davies determined that annual sampling

of 18 groundwater wells should continue as part of the MNA remedial strategy and that annual sampling of these wells was appropriate for purposes of protecting public health and safety and the environment, including flora and fauna in the vicinity of the Ridgewood Site. (Davies Decl. ¶16.)

33. Mr. Davies did not determine, in his role as LSRP-of-Record, that installation and/or sampling of any additional monitoring wells was necessary or appropriate. (Davies Decl. ¶16.)

34. The current approved remedial strategy at the Ridgewood Site is MNA. (Davies Decl. ¶15, Exh. 2 (2012 Groundwater and Soil Remediation System Shutdown Approval, SH-NJ-SCI467567, at 2).)

35. More than 50 monitoring wells are still in place at the Ridgewood Site. (Davies Decl. ¶17.)

36. In his role as LSRP-of-Record at the Ridgewood Site, upon the exercise of reasonable care and diligence and by applying the knowledge and skill ordinarily exercised by licensed site remediation professionals in good standing practicing in the State at the time these professional services are performed, Mr. Davies has determined that no additional active remediation is needed at the Ridgewood site and that the current program of MNA is appropriate for purposes of protecting public health and safety and the environment, including flora and fauna in the vicinity of the Ridgewood Site. (Davies Decl. ¶18, Exh. 2 (2012 Groundwater and Soil Remediation System Shutdown Approval, SH-NJ-SCI467567).)

37. Approximately 85 different wells have been in place at the Ridgewood Site at one time or another, some of which are located as far as 1,200 feet from the station itself. (Davies Decl. ¶17.)

38. More than 2,000 groundwater samples from those 85 wells have been collected and analyzed for up to 15 different chemical constituents during the course of the 25-year investigation and remediation of the Ridgewood Site. (Davies Decl. ¶17.)

39. During the course of the 25-year investigation and remediation of the Ridgewood Site, additional sampling data has been collected from the Village of Ridgewood Water Department supply wells in the vicinity of the Ridgewood Site. (Davies Decl. ¶17.)

40. The former NJDEP case manager assigned to the Ridgewood Site, Donna Plummer, testified in this case that her goal at this and other sites is to "protect municipal wells and clean up contaminated sites as quickly as possible." (Wallace Decl. ¶6, Exh. 6 (Mar. 14, 2012 Deposition of Donna Plummer, at 439:18-23).)

41. Ms. Plummer directed the remediation of the Ridgewood Site beginning in 1988. (Wallace Decl. ¶6, Exh. 6 (Mar. 13, 2012 Deposition of Donna Plummer, at 69:6-17).)

42. In 2006, Ms. Plummer was the case manager for the Ridgewood Site when NJDEP approved a final Remedial Action Workplan for the Site. (Wallace Decl. ¶6, Exh. 6 (Mar. 13, 2012 Deposition of Donna Plummer, at 70-71).)

43. By 2006, when NJDEP approved the final Remedial Action Workplan, Shell had installed enough wells to delineate contamination, and had achieved the goals of controlling the plume and reducing the levels of contamination. (Wallace Decl. ¶6, Exh. 6 (Mar. 13, 2012 Deposition of Donna Plummer, at 70-72, 193-94, 205-06).)

44. Shell was "very responsive" to NJDEP's requests to conduct investigation and remediation. (Wallace Decl. ¶6, Exh. 6 (Mar. 13, 2012 Deposition of Donna Plummer, at 126:18-20).)

45.     Plaintiffs' expert, Anthony Brown, a California hydrogeologist, has opined that additional monitoring wells (*i.e.*, in addition to the 85 wells that Shell previously installed on the site) are needed for the Ridgewood Site. (Wallace Decl. ¶ 8, Exh. 8 (Revised Cost Summary, ID # 11346 Shell Service Station #138490, Jan. 2013, § A, pp. 1-4, Jan. 2013).)

46.     Mr. Brown has opined that additional investigation should be conducted to determine whether more remediation "may" be needed. He offers the following opinions, among others, about the Ridgewood Site:

> 13.  "Remediation performed to date may have effectively addressed on-site groundwater contamination." …
>
> 18.  "Additional on-site remediation of groundwater is possibly required."
>
> 19.  "Additional off-site remediation of groundwater may be required. … The most recent contaminant concentrations detected off-site would not warrant the implementation of an off-site groundwater remediation system. However, based upon the results of additional investigation, particularly in the transmissive Z4 bedrock unit, an off-site groundwater remediation system may be required."

(Wallace Decl. ¶ 8, Exh. 8 (Revised Site Summary, ID # 11346 Shell Service Station #138490, Jan. 2013, § 10.0, p. 56).)

47.     Mr. Brown recommends additional active remediation at all but two of Plaintiffs' 10 Trial Sites, Ridgewood and one other. (Wallace Decl. ¶ 7, Exh. 7 (Revised Expert Report of Anthony Brown, January 2013, § 1.8, p. 15).)

48.     Mr. Brown opines that 18 new wells, as well as five additional years of monitoring, are needed at the Ridgewood site, at a total cost of more than $1.3 million. (Wallace Decl. ¶ 8, Exh. 8 (Revised Cost Summary, ID # 11346 Shell Service Station #138490, Jan. 2013, § A, pp. 1-4, Jan. 2013).)

49.     Mr. Brown does not identify any cleanup or removal costs necessary to accomplish "primary restoration" at the Ridgewood Trial Site. Instead, Mr. Brown states that

"[t]he need for remediation would be reevaluated at th[is] site[ ] as additional data are generated from the proposed site investigations." (Wallace Decl. ¶ 7, Exh. 7 (Revised Expert Report of Anthony Brown, January 2013, § 1.8, p. 15).)

50. Mr. Brown does not present any evidence that the MNA program currently in place at the Ridgewood site is inappropriate or insufficient, or that anything more is required:

> [T]he current off-site contaminant concentrations in groundwater do not justify implementation of an active remediation system.  Additional investigation proposed at these sites may indicate that off-site remediation of groundwater contamination is required.  However, until such time, the MNA alternative is effective in the short-term, and may be effective in the long-term….

(Wallace Decl. ¶ 9, Exh. 9 (Revised Feasibility Study, January 2013, § 4.1.2, p. 19).)

51. At three of the other trial sites at issue in this litigation, Plaintiffs performed "limited additional site investigations" during discovery to determine whether remediation to achieve primary restoration was necessary.  The Ridgewood Trial Site was not among them. (Wallace Decl. ¶ 7, Exh. 7 (Revised Expert Report of Anthony Brown, January 2013, § 1.9, p. 16).)

53. Mr. Brown does not disagree with NJDEP's approval of the shutdown of the active remediation systems at the Ridgewood Site. (Wallace Decl. ¶ 11, Exh. 11 (Deposition of Anthony Brown, June 3, 2013, at 881:19-22).)

54. Mr. Brown is not an LSRP. (Wallace Decl. ¶ 11, Exh. 11 (Deposition of Anthony Brown, May 28, 2013, at 68:25-69:2).)

55. No one has indicated to Mr. Brown that the LSRP's work at the Ridgewood Site has been in any way inadequate. (Wallace Decl. ¶ 11, Exh. 11 (Deposition of Anthony Brown, June 3, 2013, at 898:12-20).)

56. Mr. Brown has never made any attempt to discuss the Ridgewood Site with the LSRP for the Site. (Wallace Decl. ¶ 11, Exh. 11 (Deposition of Anthony Brown, June 3, 2013, at 880:22-25).)

57. NJDEP Deputy Commissioner Irene Kropp was deposed on June 6, 2013, and admitted, "I think primarily the money that ONRR, whatever you call it, received through natural resource damage claims was spent on projects and acquisitions. I'm not aware of when we've gone back in and said to somebody we're taking your NRD contribution and moving your site from cleanup standards to predischarge, if that's your question." (Wallace Decl. ¶ 6, Exh. 6 (Deposition of Irene Kropp, June 6, 2013, at 224:9-19).)

58. The NJDEP does not recommend or require any additional investigation or remediation at the Site. (Davies Decl. ¶18, Exh. 2 (2012 Groundwater and Soil Remediation System Shutdown Approval, SH-NJ-SCI467567).)

Dated: October 1, 2013                    Respectfully submitted,

    /s/ Richard E. Wallace, Jr.
Richard E. Wallace, Jr.
Michael L. Williams
Marie S. Dennis
**SEDGWICK LLP**
2900 K Street, NW
Harbourside, Suite 500
Washington, DC 20007
(202) 204-1000

Attorneys for Defendants Shell Oil Company, Shell Oil Products Company LLC, Shell Trading (US) Company, Equilon Enterprises LLC, and Motiva Enterprises LLC

**PROOF OF SERVICE VIA LEXIS/NEXIS FILE & SERVE AND E-MAIL**

I, Kristin McCormick, hereby declare under penalty of perjury under the laws of the United States of America that a true and accurate copy of the foregoing was served via Lexis/Nexis File & Serve and ECF on all parties on this 1st day of October 2013.

                                                      /s/ Kristin McCormick
                                                     Kristin McCormick