# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------- **X**

**IN RE METHYL TERTIARY BUTYL ETHER PRODUCTS LIABILITY LITIGATION**

**This document pertains to:**

*New Jersey Department of Environmental Protection, et al., v. Atlantic Richfield Co., et al.,* NO. 08 CIV. 00312 (SAS)

---------------------------------------------------- **X**

Master File No. 1:00-1898
MDL 1358 (SAS)
M21-88

**MOTION FOR SUMMARY JUDGMENT OF CHEVRON U.S.A. INC. REGARDING THE SKYLINE SERVICE CENTER TRIAL SITE AND MEMORANDUM OF LAW IN SUPPORT**


# MOTION FOR SUMMARY JUDGMENT OF CHEVRON U.S.A. INC. REGARDING THE SKYLINE SERVICE CENTER TRIAL SITE AND MEMORANDUM OF LAW IN SUPPORT

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................1

II.   STATEMENT OF FACTS ....................................................................................3

      A.    Plaintiffs Are Now Attempting to Assert a Claim Against CUSA at the Skyline Service Center, Despite Failing to Disclose Such a Claim in Response to CUSA's Contention Interrogatories....................................................3

      B.    Plaintiffs Have No Evidence to Support their Newly Asserted Theory that CUSA Supplied Gasoline Containing MTBE to the Skyline Service Center..........7

III.  ARGUMENT & AUTHORITIES ......................................................................9

      A.    Standard of Review..................................................................................9

      B.    Plaintiffs' Failure to Disclose Their Newly Asserted Theory of Liability Precludes Them From Now Attempting to Assert it Against CUSA. ...................10

      C.    CUSA is Entitled to Summary Judgment Because There Is No Evidence Linking MTBE from CUSA to the Skyline Service Center. .................................15

IV.  PRAYER....................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)...............................................................................................9, 10

*Bickerstaff v. Vassar Coll.*,
    196 F.3d 435 (2d Cir. 1999)........................................................................................16

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)......................................................................................................9

*Distasio v. Perkin Elmer Corp.*,
    157 F.3d 55 (2d Cir. 1998)............................................................................................9

*Dister v. Continental Group, Inc.*,
    859 F.2d 1108 (2d Cir. 1988)......................................................................................10

*Ebewo v. Martinez*,
    309 F. Supp. 2d 600 (S.D.N.Y. 2004).........................................................................10

*Gallo v. Prudential Residential Servs., Ltd. P'ship*,
    22 F.3d 1219 (2d Cir. 1994)........................................................................................10

*Goenaga v. March of Dimes Birth Defects Found.*,
    51 F.3d 14 (2d Cir. 1995) .............................................................................................9

*Gross v. Nat'l Broad. Co., Inc.*,
    232 F. Supp. 2d 58 (S.D.N.Y. 2002)...........................................................................16

*In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litig.*,
    2013 WL 4830965 (S.D.N.Y. 2013)...........................................................2, 15, 16, 17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)....................................................................................................10

*Med. Educ. Dev. Servs., Inc. v. Reed Elsevier Group, PLC*,
    2008 WL 4449412 (S.D.N.Y. 2008)...........................................................................11

*Morangelli v. Chemed Corp.*,
    -- F. Supp. 2d. -- , 2013 WL 432571 (E.D.N.Y. 2013)...............................................14

*New Jersey Dep't of Env't Prot. v. Dimant*,
    51 A.3d 816, 833 (N.J. 2012)......................................................................................17

*Nilson v. Nationwide Mut. Ins. Co.*,
  2009 WL 1285854 (S.D. Miss. 2009) ...................................................................14

*Patterson v. County of Oneida, N.Y.*,
  375 F.3d 206 (2d Cir. 2004) ...............................................................................10

*Scotto v. Almenas*,
  143 F.3d 105 (2d Cir. 1998) ...............................................................................10

*The Prince Group, Inc. v. MTS Prods.*,
  1998 WL 273099 (S.D.N.Y. 1998) .....................................................................11

*U.S. v. Hussain*,
  2008 WL 2561948 (S.D. Fla. 2008) ....................................................................14

*Unigene Labs., Inc. v. Apotex, Inc.*,
  2010 WL 2730471 (S.D.N.Y. 2010) ...................................................................14

*Weiss v. Chrysler Motors Corp.*,
  515 F.2d 449 (2d Cir. 1975) ...............................................................................11

*Weschler v. Hunt Health Sys., Ltd.*,
  1999 WL 672902 (S.D.N.Y. 1999) ...............................................................11, 14

*Zenith Elecs. Corp. v. WH-TV Broad. Corp.*,
  395 F. 3d 416 (7th Cir. 2005) .............................................................................14

## OTHER AUTHORITIES

FED. R. CIV. P. 26 ......................................................................................................10

Fed. R. Civ. P. 56 ..............................................................................................1, 3, 9

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Chevron U.S.A. Inc. ("CUSA") moves for summary judgment and would respectfully show as follows.[1]

## I.     INTRODUCTION

CUSA seeks summary judgment as to all claims relating to the Skyline Service Center, the only trial site at which Plaintiffs still assert claims against it.  CUSA is entitled to summary judgment on all claims arising from the Skyline Service Center because: (1) Plaintiffs failed to disclose any facts or claims against CUSA relating to this site during discovery; and (2) there is no evidence that CUSA supplied this site with gasoline containing MTBE, or that gasoline containing MTBE that CUSA refined was released at this station.  During discovery, CUSA served contention interrogatories on Plaintiffs specifically inquiring about the facts and legal theories supporting liability against it at the trial sites.  In response, Plaintiffs claimed that CUSA was liable only with respect to the Bakers Waldwick site, a claim Plaintiffs have since abandoned.  Although Plaintiffs did associate Chevron Corporation with the Skyline Service Center, they did so solely based on the now-abandoned theory that **non-party Texaco Inc.** supplied the Skyline Service Center and that Chevron Corporation is the successor to Texaco Inc.  Despite providing detailed contention interrogatory responses articulating theories of alleged liability against Texaco and other defendants, Plaintiffs made no mention in discovery that they claimed that CUSA was a  supplier of gasoline containing MTBE to the Skyline Service

---

[1] The Court's briefing schedule required that the following motions be consolidated into a single motion for summary judgment: (1) Chevron/Kewanee Motion on Certain Trial Sites; (2) Getty Properties Corp.'s Motion on HP Delta Trial Site; (3) BP Defendants' Motion for Summary Judgment; and (4) Exxon Mobil's Motion on APCO Trial Site.  *See* Docket Entry 269.  Counsel for Getty, Exxon, and BP have  informed counsel for CUSA that they will not be filing summary judgments in connection with their respective trial sites.  Moreover, Plaintiffs have filed a Stipulation of Dismissal as to Kewanee.  Accordingly, CUSA is the only moving party.

Center, nor did they disclose any facts supporting such a claim.  Instead, Plaintiffs first identified CUSA with the Skyline Service Center only after CUSA sought leave to file a summary judgment with respect to the one site that Plaintiffs had articulated a claim against it — the Bakers Waldwick site.

This sort of gamesmanship is not permitted under the Federal Rules of Civil Procedure, as abundant authority in this district and elsewhere makes clear.  In fact, cases addressing contention interrogatories have held that plaintiffs are estopped from relying on theories that were not disclosed in contention interrogatory responses, and that this preclusion applies even without the need for an opposing party to demonstrate unfair prejudice, although such prejudice clearly exists here.  Because Plaintiffs failed to respond or timely supplement their responses to specific contention interrogatories calling for the disclosure of Plaintiffs site-specific factual and legal theories, this Court should preclude Plaintiffs from now relying on undisclosed theories to defeat summary judgment.

But even if Plaintiffs were allowed to advance their eleventh-hour theory, CUSA is still entitled to summary judgment because there is simply no evidence that CUSA supplied MTBE or gasoline containing MTBE that can be traced to the Skyline Service Center.  In fact, Plaintiffs' attempt to manufacture a fact issue relies on precisely the same sort of conjecture and speculation that this Court rejected in the recent *City of Fresno* opinion.  Consequently, as explained more fully below, CUSA is entitled to summary judgment in this matter even if the Court entertains Plaintiffs' newly proffered theory concerning the Skyline Service Center.[2]

---

[2] CUSA also is entitled to summary judgment based on the Natural Resources Damages Settlement Agreement, which is the subject a previously filed motion for summary judgment.  If the Court grants that motion in full, this motion becomes moot.

## II.     STATEMENT OF FACTS

**A.     Plaintiffs Are Now Attempting to Assert a Claim Against CUSA at the Skyline Service Center, Despite Failing to Disclose Such a Claim in Response to CUSA's Contention Interrogatories.**

Plaintiffs originally asserted claims against Chevron Corporation and CUSA regarding four trial sites identified in CMO 107.  Those sites were:

- The West Windsor Getty Service Station, Site ID 6187 ("Getty");

- The HP Delta Service Station, Site ID 41598 ("HP Delta");

- The Skyline Service Center, Site ID 2156 ("Skyline" or "Skyline Service Center");

- The Baker's Waldwick Gulf Service Station; Site ID 11126 ("Baker's Waldwick").

*See* Docket Entry 3592.

In discovery, however, Plaintiffs identified three of these four sites — Getty, HP Delta, and Skyline — with only Texaco Inc. or Chevron Corporation (purportedly because Chevron Corporation is the successor-in-interest to non-party Texaco Inc.).  *See* Ex. A-1 at pp. 8-10, 16-17 (Plaintiffs' Responses to Defendants' First Set of Contention Interrogatories).  Plaintiffs then identified the fourth site, Bakers Waldwick, with CUSA.  *Id.* at p. 13.

 Apparently recognizing that there is no basis to proceed against Chevron Corporation or CUSA based on the actions of Texaco, Plaintiffs recently dismissed their claims against Chevron Corporation (and Kewanee) entirely, and are now attempting to proceed solely against CUSA.  *See* Docket Entry 271.  Importantly, however, Plaintiffs are no longer attempting to pursue CUSA in connection with the Bakers Waldwick site either.  *See* Docket Entry 268.  Instead, Plaintiffs have completely switched their theory and are now attempting to assert claims against

3

CUSA at the Skyline Service Center, despite the fact that Plaintiffs failed to make any mention of such a claim in response to CUSA's contention interrogatories that specifically called for such information.  *See* Ex. A-2 (Aug. 9 response to pre-motion letter); Ex. A-3 (Sept. 4 court-ordered supplemental correspondence); *see also* Ex. A-1.

In fact, when specifically asked which Defendants Plaintiffs identified with the Skyline Service Center, Plaintiffs gave detailed responses regarding Texaco and other defendants, *but made no mention whatsoever of CUSA*.  For example, Plaintiffs responded to CUSA's first contention interrogatory, stating as follows:

**INTERROGATORY NO. 1:**

Identify the Defendants YOU contend caused the alleged DAMAGES at each of the DELINEATED TRIAL SITE AREAS at issue in this action.

**RESPONSE TO INTERROGATORY NO. 1:**

Subject to and without waiving its objections, Plaintiffs respond as follows:

Plaintiffs' Trial Sites

1. Skyline Service Center: Site ID No. 2156.

        Sunoco; Texaco; Shell; Citgo.
*See* Ex. A-1 at p. 4.

In response to Contention Interrogatory No. 2, which requested Plaintiffs to "IDENTIFY all facts and all DOCUMENTS that YOU contend prove, establish, show or demonstrate that the particular Defendant caused the alleged DAMAGES at each DELINEATED TRIAL SITE AREA," Plaintiffs discussed in detail how Texaco and other defendants allegedly supplied the Skyline Service Center, but made no mention whatsoever of CUSA.  Here is the information Plaintiffs provided in response to this interrogatory:

1. Skyline Service Center: Site ID No. 2156.

**Sunoco** supplied MTBE to Skyline from November of 1985 to September 1991 pursuant to a branding agreement. (Sunoco Resp 2nd Rogs, nos. 5, 10; Deposition of Joseph Costello ("Costello Depo") at 26:20-28:15 and Exhs. 2, 9.). *See also* Sunoco Response to CMO 45. Station owner Joe Costello testified that prior to the requirement of over-fill containment sumps, **Sunoco** commonly spilled approximately 10 gallons of gasoline each time it delivered gasoline to the station. (Costello Depo. at 41:3-42:20 and Exh. 8.) Mr. Costello testified that the amount of product spilled by **Sunoco** came to approximately 1,300 gallons over time. (*Id.*)

**Texaco** supplied MTBE gasoline to Skyline from October 1991 to September 1997 pursuant to a branding agreement. (SKYLINE 003560; Costello Depo. at 52:5-54:3; 68:19-69:17; and Exhs. 10, 16.)

**CITGO**, through its agent, supplied MTBE gasoline to Skyline from November, 1997 to June, 2008, including from **CITGO's** Linden Terminal. (CITGO Supplemental Response to Plaintiffs' Second Interrogatories, No. 5; Costello Depo. at 76:10-24; CITGO-NJ-003331.) **CITGO** also conducted on-site, in-tank testing of its MTBE gasoline products at this site during this time period. (*Id.*)

MTBE was detected during the first tests for MTBE at Skyline, on May 13, 1998 at concentrations of 207 ppb. (SKYLINE002375-002376.) MTBE and TBA were detected in 16 of 18 domestic wells during a limited investigation conducted by the Passaic County Department of Health in 1998. (NJ-LBG-07788-07789; NJDEPSITE249-007146-007279.) Preliminary investigations identified Skyline as the likely source of the contamination. (*Id.*)
On or about August 5, 2003, three USTs and associated piping were removed at the Skyline station. (*Id.*) In addition to the discovery of contaminated soil, approximately 725 gallons of free product was observed floating on top of groundwater, and contaminated groundwater was observed flowing into the excavation from bedrock sidewalls. (NJDEP-SITE249-002219-002245; Costello Depo. at 95:6-97:11.) A broken containment sump was found at the time of removal. (*Id.*)

MTBE has continued to be detected at the Skyline station. MTBE was detected at the site at concentrations as high as 175 ppb in 2009. (NJDEP-SITE249-007146-007280.) MTBE was detected in potable wells near the Skyline station at levels as high as 360 ppb on June 18, 2004. (NJDEP-SITE249-002432-002433.) There are 95 potable wells within 1,000 feet of the impacted potable well. (*Id.*)

Ex. A-1 at pp. 8-9 (emphasis added).

Tellingly absent from the foregoing is the word "Chevron" or "CUSA," let alone any facts alleging that CUSA supplied the Skyline Service Center.  Nor did Plaintiffs ever state in any other discovery responses, disclosures, or expert reports that they were pursuing CUSA in connection with the Skyline Service Center.  Indeed, Chevron Corporation and CUSA retained expert Michael Keeley to specifically address Plaintiffs' four trial site specific claims, and Dr. Keeley relied on Plaintiffs' discovery responses in preparing his opinions.  *See* Ex. A-4 ¶¶ 9, 29 & n.41, Appendix C; *see also* Ex. A-5 ¶ 4 (Declaration of Dr. Keeley).  In his report, Dr. Keeley specifically noted that "Plaintiffs have identified Chevron and Texaco with the Skyline Service Center site *by virtue of an alleged supply agreement between Texaco and the station operator*" and that "*there is no allegation that Chevron supplied gasoline to this station*."  Ex. A-4 ¶¶ 29-30 (emphasis added).  At no time did Plaintiffs or their experts ever respond to that report and assert that they were in fact asserting a claim against CUSA in connection with the Skyline Service Center.  *See* Ex. A-5 ¶ 5.  Had Plaintiffs or their experts ever asserted such a claim during the discovery period, Dr. Keeley would have analyzed such a claim and responded to it. *Id.* ¶ 6.

In reliance on Plaintiffs' discovery responses, and the absence of any other indication to the contrary, CUSA has all along prepared to defend the case with respect to CUSA in connection with the Bakers Waldwick site, not the Skyline Service Center.  In fact, Chevron Corporation and CUSA addressed Plaintiffs' allegations in connection with the Skyline Service Center in their pre-motion letter only in the context of Plaintiffs' erroneous claim that Chevron Corporation is the successor to Texaco.  The pre-motion letter included no argument that CUSA had no relationship with the Skyline Service Center because there was no such claim against CUSA at the time.  *See* Ex. A-6 (CUSA pre-motion letter).  The first time that Plaintiffs made

any mention that they were pursuing CUSA in connection with the Skyline Service Center was *in Plaintiffs' response* to this pre-motion letter.  *See* Ex. A-2.[3]

> **B.     Plaintiffs Have No Evidence to Support Their Newly Asserted Theory that CUSA Supplied Gasoline Containing MTBE to the Skyline Service Center.**

 Although they never disclosed this theory in their discovery responses, or anywhere else, Plaintiffs indicated in their court-ordered supplemental conference letter of September 4, 2013 that they are now attempting to connect CUSA with the Skyline Service Center based on sales of gasoline by a former CUSA facility in Philadelphia, Pennsylvania from 1992-1994 to certain companies in New Jersey.  *See* Ex. A-3.  In the 1992 to 1994 time period, CUSA was required to use MTBE as an oxygenate under the Federal Wintertime Program.  *See* Ex. A-5 ¶ 7.  It is undisputed, however, that (1) CUSA sold the Philadelphia Refinery in August 1994 and (2) since then, CUSA refined gasoline containing MTBE has not been sold in the State of New Jersey. *See* Ex. A-4 ¶ 14; Ex. A-5 ¶ 7; *see also* Ex. A-3 (making no claim that CUSA gas containing MTBE was sold after 1994).

During the limited time that the Philadelphia Refinery sold gasoline containing MTBE to companies in New Jersey, those sales volumes were small.  Indeed, Dr. Keeley calculated CUSA's market share in New Jersey between 1992 and 1994 as below three percent.  *See* Ex. A-4, Ex-1; Ex. A-5 ¶ 8.  Plaintiffs' expert essentially agreed with Dr. Keeley's calculations, making only one minor change, which Dr. Keeley accepted in his amended calculations.  *See* Ex. A-4,

---

[3] Plaintiffs may attempt to rely on CMO 107 to claim that CUSA was on notice that Plaintiffs were affiliating it with the Skyline Service Center.  CMO 107, however, merely uses the word "Chevron," and fails to distinguish between Chevron Corporation (incorrectly assumed by Plaintiffs at the time to be the successor to Texaco Inc.) and CUSA.  And, in any event, as discussed below, Plaintiffs were required to disclose facts and legal theories in response to the contention interrogatories about CUSA, which they never did.

Amended Ex. 1; Ex. A-5 ¶ 9; *see also* Ex. A-7 at p. 42 (Second Rebuttal Report of Martin R. Tallett).

Notably lacking from Plaintiffs' supplemental conference letter, however, is any connection between CUSA's small gasoline deliveries to New Jersey from the Philadelphia refinery and the supply of gasoline containing MTBE to the Skyline Service Center. The facts are: (1) between 1992 and 1994, CUSA did deliver gasoline from the Philadelphia refinery to a number of New York Harbor terminals in New Jersey, including the Bayway, Linden, Carteret, Trembly Point, Sewaren, Bayonne and Perth Amboy terminals; (2) one of the customers who purchased gasoline from CUSA during this time period was Star Enterprise, which purchased gasoline from CUSA at the Carteret, Perth Amboy, Linden and Bayway terminals; and (3) Star Enterprise is alleged to have had a supply contract with the Skyline Service Center during this time period. *See* Ex. A-3. Plaintiffs, however, have <u>no evidence</u> to support their allegation that gasoline CUSA delivered to New Jersey terminals that Star Enterprise purchased was delivered to the Skyline Service Center. Further, and importantly, Plaintiffs have specifically *disavowed* any reliance in this trial site case on the commingled product theory of liability.[4]   In short,

---

[4] *See* Ex. A-1, Resp. to Interrogatory No. 18:

    State whether YOU invoke or rely on any or all of the following theories of alternative liability to prove causation or to establish that any or all Defendants are liable for the alleged DAMAGES at any or all of the DELINEATED TRIAL SITE AREAS at issue in this action:

    A. the market share theory or liability;
    B. the commingled product theory of liability; and/or
    C. any other theory or theories of alternative liability.

    IF YOUR answer to Part (C), above, is in the affirmative, IDENTIFY the theory or theories upon which YOU rely.

    RESPONSE TO INTERROGATORY NO. 18:

Plaintiffs have no evidence that gasoline containing MTBE from CUSA's Philadelphia Refinery reached the Skyline Service Center, and they are entitled to no such inference because the commingled product theory is not applicable in this case and, in any event, because CUSA's deliveries to the state were too small to support any such inference.

### III.   ARGUMENT & AUTHORITIES

#### A.   Standard of Review.

A motion for summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if its existence or non-existence "might affect the outcome of the suit under the governing law," and an issue of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242 (1986).

Although the burden rests on the movant to show that no genuine factual dispute exists, a moving defendant is not required to file affidavits (or other materials) disproving the plaintiff's claims. *Celotex*, 477 U.S. at 323; *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if it can point to an absence of evidence to support an essential element of nonmoving party's claim); *see also Distasio v. Perkin Elmer Corp.*, 157

---

Plaintiff asserts the general objections. In addition, plaintiff objects to the extent the interrogatory seeks plaintiffs' attorney work-product or information covered by the attorney-client privilege. Subject to and without waiving these objections, plaintiffs respond as follows:

*No.* (emphasis added).

*See also id.*, Response to Interrogatory No. 19 (responding "Not applicable" to follow-up interrogatory asking Plaintiffs to identify which defendants they associated with each alternative theory and how to apportion damages among the defendants).

F.3d 55, 61 (2d Cir. 1998) (summary judgment is "mandated" when "the evidence is insufficient to support the non-moving party's case").

When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact. *See Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988); *see also Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223-24 (2d Cir. 1994) ("[T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case.").

To defeat a summary judgment motion, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and it "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998); *see also Anderson*, 477 U.S. at 248 (nonmoving party may not rest on "mere allegations or denials" of the moving party's pleadings to survive summary judgment, but must demonstrate by affidavit or other admissible evidence "that there is a genuine issue of fact for trial"); *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004) (noting that a "genuine issue [is not] created merely by the presentation of assertions that are conclusory").

### B.    Plaintiffs' Failure to Disclose Their Newly Asserted Theory of Liability Precludes Them From Now Attempting to Assert it Against CUSA.

Plaintiffs should not be allowed to ambush CUSA with last minute claims and theories that were never disclosed during discovery. *See* FED. R. CIV. P. 26(e)(1)(A) (a party is obligated to timely supplement or correct its initial Rule 26 disclosures, and its responses to interrogatories and document demands); *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004) ("The purpose of Rule 26(e) is to prevent the 'sand-bagging' of a party with new evidence at trial or on

a motion").  Contention interrogatories, of course, are one of the discovery tools designed to assist parties in narrowing and clarifying the disputed issues and reducing the possibility of surprise at trial.  These interrogatories may seek a variety of information from a party to the litigation, including identification of a party's legal positions regarding a given issue and the evidence on which those contentions are based.  *See, e.g.*, *Weschler v. Hunt Health Sys., Ltd.*, 1999 WL 672902, at *1 (S.D.N.Y. 1999).  The party answering a contention interrogatory is obligated "to respond truthfully and completely."   *Id.* at *2; *see also Weiss v. Chrysler Motors Corp.*, 515 F.2d 449, 456 (2d Cir. 1975).  Notably, the answers to the interrogatories are treated by courts in this Circuit as "judicial admissions" that generally estop the answering party from later seeking to assert positions omitted from, or otherwise at variance with, those responses. *Weschler*, 1999 WL 672902, at *2; *see also Med. Educ. Dev. Servs., Inc. v. Reed Elsevier Group, PLC*, 2008 WL 4449412, at *11 (S.D.N.Y. 2008) (noting same); *The Prince Group, Inc. v. MTS Prods.*, 1998 WL 273099, at *3 (S.D.N.Y. 1998) (noting that "judicial admissions, such as stipulations or answers to contention interrogatories, are answered with the assistance of counsel and have the effect of precluding entire legal issues from a case").  Moreover, proof of unfair prejudice by defendants is not a prerequisite to preclusion when a party fails to respond completely to a contention interrogatory.  *See Weschler*, 1999 WL 672902, at *3 ("The estoppel principles applied in this Circuit to contention interrogatory responses implicitly presume unfair prejudice will result if the responding party subsequently alters his position"); *see also The Prince Group*, 1998 WL 273099, at *3 (noting that responses to contention interrogatories are "judicial admissions" and that they may not be controverted unless a court allows them to be withdrawn).

CUSA issued very specific contention interrogatories designed to elicit Plaintiffs' factual and legal theories against it in connection with the trial sites.  At no place in these responses did Plaintiffs assert a theory alleging or facts supporting a claim against CUSA at the Skyline Service Center.  Indeed, as quoted above, Plaintiffs provided detailed factual averments related to non-party Texaco and to other defendants, as the rules require.  But tellingly absent from the answer is even the mention of CUSA, let alone any theory of liability or factual support for such a theory.

The Federal Rules required Plaintiffs to provide this same type of information about their allegations against CUSA, yet they did not.   Either Plaintiffs intentionally hid this information, or they in fact were not asserting claims against CUSA (as opposed to Chevron Corporation) at this site during discovery.

In reality, Plaintiffs did not even assert a claim against CUSA at this site until responding to pre-motion conference letter, well after discovery had closed.  Two weeks after the pre-motion conference, and one day after the Court-ordered deadline, Plaintiffs sent a letter detailing these factual allegations:

> Despite the fact that Chevron USA has denied being in the New Jersey gasoline market after 1984, Chevron USA's discovery responses with respect to refining and marketing activities admit that Chevron owned and operated a refinery in Philadelphia that manufactured MTBE gasoline from 1992 to 1994 for sales into New Jersey. In fact, Chevron's CMO 45 responses state that in 1992 Chevron sold 1,953,257 barrels of MTBE gasoline into New Jersey, in 1993 Chevron sold 5,955,947 barrels of MTBE gasoline into New Jersey, and in 1994 Chevron sold 2,546,976 barrels of MTBE gasoline into New Jersey. Chevron USA's CMO 45 Response, at 2.

Chevron's responses to CMO 45, as confirmed in Chevron's responses to Plaintiffs' First Set of Interrogatories, Interrogatory No. I, provided a list of customers to whom Chevron sold MTBE gasoline. *See* CHEVMDL1358-NJDEP-COOOOOOOOOI - 0000000507. Since Chevron only manufactured MTBE gasoline from 1992 through 1994, these sales would have occurred during this period, and they show sales to customers at a number of New York Harbor terminals, including the Bayway, Linden, Carteret, Trembly Point, Sewaren, Bayonne and Perth Amboy terminals. In fact, Chevron owned the Perth Amboy terminal during this time.

One of the customers who purchased MTBE gasoline from Chevron during this time period was Star Enterprises, who purchased from Chevron at the Carteret, Perth Amboy, Linden and Bayway terminals. CHEVMDL1358-NJDEP-COOOOOOOOI15. Star Enterprises had a supply contract with the Skyline Station during this time period. SKYLINE 001395-1408; SKYLINE 003560.

As you know, MTBE was detected at the Skyline site during the first tests for MTBE, in 1998. The station operator testified that spills occurred on a regular basis during fuel deliveries at this time, and Marcel Moreau reported that the releases occurred from, among other sources, the dispenser island at this site. In short, there is substantial evidence that Chevron MTBE gasoline was present at the Skyline site during a time when releases of MTBE gasoline occurred at the site.

*See* Ex. A-3.

As discussed below, these allegations are insufficient to avoid summary judgment. Clearly, however, the foregoing is precisely the type of allegations and supporting facts that Plaintiffs were required to disclose during discovery in response to CUSA's contention interrogatories, but did not. Tellingly, Plaintiffs provided this exact type of information as to the other defendants whom they associate with this station, belying any claim that they were under no obligation to do so for facts related to CUSA. Unlike the other defendants, CUSA had no opportunity to conduct discovery or have its expert respond to such a theory against it.

While CUSA need not even show unfair prejudice, CUSA has, in fact, been extremely prejudiced. Had Plaintiffs disclosed their new allegations, CUSA would have conducted discovery concerning the supply of gasoline to the Skyline Service Center, much of which is in the possession of other companies. In addition, CUSA's expert, Dr. Michael Keeley, would have

addressed this allegation.  *See* Ex. A-5 ¶ 6.  Because this theory was not disclosed, CUSA has been denied its right to discovery on Plaintiffs' new claim.

In cases precisely like this, courts have had no difficulty disallowing the use of facts or legal theories that were never disclosed in contention interrogatory responses.  *See Weschler*, 1999 WL 672902 at *3 (noting that showing of unfair prejudice is not required to disallow argument not disclosed in response to contention interrogatory, but nonetheless finding unfair prejudice because "allowance of the argument now would force defendants to litigate, on a less than ample record, an argument they properly assumed was a non-issue"); *see also, e.g.*, *Unigene Labs., Inc.  v. Apotex, Inc.*, 2010 WL 2730471, at *6 (S.D.N.Y. 2010) ("Defendants are bound by their contentions interrogatory answers, and are required to 'supplement or correct [their]  . . . response [to an interrogatory] . . . in a timely matter if the party learns that in some material respect the disclosure is incomplete or incorrect. . . .'  In this context, where there is substantial prejudice to the Plaintiffs—namely, not being advised of the contours of this claim until long after the termination of discovery and the filing of dispositive motions—the Defendants' failure to amend their contentions results in this claim being deemed waived.") (citations omitted); *Morangelli v. Chemed Corp.*, -- F. Supp. 2d. -- , 2013 WL 432571, at *27 (E.D.N.Y. 2013) (disallowing use of materials not disclosed in response to contention interrogatories).[5]

---

[5] *Accord Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F. 3d 416, 420 (7th Cir. 2005) ("The district judge banned evidence on that subject after WH-TV failed to respond to Zenith's contentions interrogatory with a description of its damages theory and the proof to be employed. The judge's sanction is one of those named by the federal rules for failure to cooperate in discovery.  His decision was not an abuse of discretion.") (citation omitted); *B-K Lighting, Inc. v. Vision3 Lighting*, -- F. Supp. 2d -- , 2013 WL 941839, at *24-25 (C.D. Cal. 2013) (striking evidence from expert affidavit because party had failed to disclose information in response to contention interrogatories); *Nilson v. Nationwide Mut. Ins. Co.*, 2009 WL 1285854, at *2 (S.D. Miss. 2009) (prohibiting plaintiff from supporting a claim for emotional distress at trial or in any dispositive motion due to the failure to respond to interrogatories on the issue); *U.S. v. Hussain*, 2008 WL 2561948 (S.D. Fla. 2008) ("Defendant's failure to set forth specific facts supporting

Consequently, because Plaintiffs failed to articulate any alleged connection between CUSA and the Skyline Service Center in response to CUSA's contention interrogatories, or in any other discovery responses or expert report, Plaintiffs are precluded from advancing their theory at this late stage. The Court should accordingly grant CUSA summary judgment on the Skyline Service Center on this basis alone.

### C. CUSA is Entitled to Summary Judgment Because There Is No Evidence Linking MTBE from CUSA to the Skyline Service Center.

Even if the Court permits Plaintiffs to proceed on their previously undisclosed theory, CUSA is nevertheless entitled to summary judgment because there is no evidence upon which a jury could ever infer that CUSA refined, supplied, or sold the gasoline containing MTBE that was allegedly released at the Skyline Service Center. Because Plaintiffs have disavowed the commingled product theory at this initial trial site, they have the burden of directly proving that the CUSA's gasoline containing MTBE was discharged into the groundwater at it. *See In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litig. ("City of Fresno")*, 2013 WL 4830965, at *19 (S.D.N.Y. 2013).[6] This they simply cannot do.

Plaintiffs have no document or testimony identifying CUSA as a supplier of gasoline to the Skyline Service Center. Instead, Plaintiffs *presume* that CUSA refined gasoline was delivered to the station based solely on CUSA's delivery of gasoline into New Jersey and Star Enterprise's purchase of gasoline from CUSA in New Jersey. The leap from these facts to

---

her affirmative defenses in her response to Plaintiff's interrogatories shall preclude Defendant from relying on those facts at trial.").

[6] Even if Plaintiffs were attempting to utilize a commingled product theory, such a theory would have no basis here because traditional proof of causation is not impossible, and there is no evidence that defendants' products were likely delivered to the stations at issue in an undifferentiated mass. *City of Fresno*, 2013 WL 4830965 at *19. Moreover, Plaintiffs' failure to pursue possible discovery forecloses an attempt to rely on the commingled product theory. *Id.* at *20.

Plaintiffs' claim that CUSA's gasoline was supplied to the Skyline Service Center is pure speculation, and nothing more. Plaintiff's allegations against CUSA are exactly the type of assertions that "are devoid of any specifics, but replete with conclusions" and are "insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also, e.g.*, *Gross v. Nat'l Broad. Co., Inc.*, 232 F. Supp. 2d 58, 67 (S.D.N.Y. 2002) (Scheindlin, J.) ("Mere conclusory statements, conjecture or speculation cannot by themselves create a genuine issue of material fact.").

In fact, this is precisely the same theory that the Court considered and rejected in *City of Fresno*. *See City of Fresno*, 2013 WL 4830965 at *20-22. There, the City of Fresno claimed that Defendant Tesoro was a major supplier of the Fresno terminal, and that because 100% of the gas supplied to the Red Triangle station came from the Fresno terminal, Tesoro gasoline must have been delivered to the Red Triangle station. This Court, however, categorically rejected this theory, and granted summary judgment for lack of causation.[7] Plaintiffs' argument here is even

---

[7] *See, e.g., id.* at *21 ("Fresno argues, without citation to evidence or a supporting affidavit, that '[s]ince 100% of the gasoline supplied to the Red Triangle station came from the Fresno terminal, and Tesoro was a major supplier at the terminal, even without jobber and operator testimony a reasonable jury could conclude that Tesoro gasoline was delivered to [ ] Red Triangle [ ] during the relevant time period.' But unsupported argument is not evidence, and cannot defeat summary judgment. Among other things, there is no evidence to define what a 'major supplier' is, or to support the notion that Red Triangle bought gas solely from the Fresno Terminal. In short, because Fresno has adduced no evidence from which a reasonable finder of fact could conclude that Tesoro gasoline caused or contributed to the release at the Red Triangle station, Fresno's claims against Tesoro at that station are dismissed."); *see also id.* ("Fresno has adduced no evidence that Tesoro gasoline made its way to the U & A station; instead, it relies on the fact that Tesoro sold gasoline to a jobber that sold gasoline to U & A. Because Fresno has produced no evidence that Tesoro's gasoline made its way to the U & A station at or before the time a release occurred, its claims against Tesoro at the U & A station are also dismissed."); *accord id.* at *22 ("Fresno has presented no evidence at all connecting Kern's MTBE to the Fresno area, much less to the Kern Stations. Fresno instead presents evidence that: (1) Kern supplied MTBE to Shell, which supplied to the Fresno area, but no evidence that Shell supplied gasoline containing Kern's MTBE to the Fresno area; (2) that Kern supplied CUSA during a three-month period, but none that, during this period, CUSA supplied gasoline containing Kern's

more attenuated.  There is no evidence that CUSA is a "major supplier" of any of the New York or New Jersey terminals identified by Plaintiffs or that 100% of the gas supplied to the Skyline Service Center came from these terminals.  Indeed, as discussed in the report of Dr. Keeley, CUSA's share of the New Jersey market from 1992-94 was less than 3%,—and 0% thereafter.  *See* Ex. A-4, Ex.1, Amended Ex. 1; Ex. A-5 ¶ 8.  Because CUSA's supply to the New Jersey market was less than 3% before the RFG period, and zero for the entire RFG period, and because even this *de minimis* supply was spread among different terminals and consumers, there is no conceivable basis to infer that CUSA's delivery of gas to a particular New Jersey terminal establishes that CUSA's gasoline was supplied to the Skyline Service Center.  *See City of Fresno*, 2013 WL 4830965, at *21-22; *see also, e.g.*, *New Jersey Dep't of Env't Prot. v. Dimant*, 51 A.3d 816, 833 (N.J. 2012) (holding that a discharge must be causally linked to specific environmental damages "in some real, not hypothetical, way").  Plaintiffs here rely on even more baseless speculation than that offered by the City of Fresno to establish a connection between CUSA and the Skyline Service Center.  Accordingly, there is no basis for Plaintiffs' claim against CUSA, and it is entitled to summary judgment with respect to the Skyline Service Center, the sole focus trial site at which Plaintiffs assert claims against it.

## IV.    PRAYER

For the foregoing reasons, Chevron U.S.A. Inc. prays that the Court grant its motion for summary judgment; dismiss Plaintiffs' claims against Chevron U.S.A. Inc. at the Skyline Service Center site, the sole focus trial site at which Plaintiffs assert claims against it, with prejudice; that

---

product to the Fresno area (as opposed to its other refinery in California); and (3) that Kern supplied MTBE to Valero, but none that Valero supplied gasoline containing Kern's product to the Fresno area. In short, because Fresno's theory tying Kern's MTBE to releases at the Kern Stations is grounded solely on speculation, its claims against Kern at those stations are dismissed.").

it be discharged from this matter with its costs; and that it is granted all other relief to which it

may be entitled.

Dated: Houston, Texas
      October 15, 2013

                                     Respectfully submitted,


                                     /s/ Robert E. Meadows
                                     Robert E. Meadows
                                     Jeremiah J. Anderson
                                     James J. Maher
                                     KING & SPALDING LLP
                                     1100 Louisiana, Suite 4000
                                     Houston, Texas 77002
                                     Telephone: (713) 751-3200
                                     Facsimile: (713) 751-3290


                                     Charles C.  Correll, Jr.
                                     King & Spalding LLP
                                     101 Second Street, Suite 2300
                                     San Francisco, California 94015
                                     Telephone:  (415) 318-1200
                                     Facsimile:  (415) 318-1300


                                     **Attorneys for Defendant Chevron U.S.A. Inc.**

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on the 15th day of October, 2013 a true, correct, and exact copy of the foregoing document was served on all counsel via LexisNexis File & Serve.


/s/ Jeremiah J. Anderson
Jeremiah J. Anderson