UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X   Master File No. 1:00-1898
                                                            MDL 1358 (SAS)
IN RE METHYL TERTIARY BUTYL                                 M21-88
ETHER PRODUCTS LIABILITY
LITIGATION

**This document pertains to:**

*New Jersey Department of Environmental*           **RULE 56.1 STATEMENT IN SUPPORT**
*Protection, et al., v. Atlantic Richfield Co., et*  **OF MOTION FOR SUMMARY**
*al.,* NO. 08 CIV. 00312 (SAS)                     **JUDGMENT OF CHEVRON U.S.A. INC.**
                                                   **REGARDING THE SKYLINE SERVICE**
                                                   **CENTER SITE**
------------------------------------------------------- X

In accordance with Rule 56.1 of this Court's Civil Rules, Defendant Chevron U.S.A. Inc. ("CUSA") respectfully submits the following statement of material facts as to which there is no genuine issue to be tried. CUSA seeks summary judgment as to all claims relating to the Skyline Service Center.

### A.  Statement of Undisputed Material Facts

1. Plaintiffs originally asserted claims against Chevron Corporation and CUSA regarding four trial sites identified in CMO 107. *See* Docket Entry 3592.

2. Those sites were: (1) The West Windsor Getty Service Station, Site ID 6187 ("Getty"); (2) The HP Delta Service Station, Site ID 41598 ("HP Delta"); (3) The Skyline Service Center, Site ID 2156 ("Skyline"); and (4) The Baker's Waldwick Gulf Service Station; Site ID 11126 ("Baker's Waldwick"). *Id.*

3. During discovery, Plaintiffs identified three of these four sites — Getty, HP Delta, and Skyline — with only Chevron Corporation, purportedly because Chevron Corporation is the

successor-in-interest to non-party Texaco Inc. *See* CUSA Mot. Summary Judgment, Ex. A-1, at pp. 8-10, 16-17 (Plaintiffs' Responses to Defendants' First Set of Contention Interrogatories).[1]

4. Plaintiffs identified the fourth site, Bakers Waldwick, with CUSA. *Id.* at p. 13.

5. Plaintiffs have dismissed their claims against Chevron Corporation and Kewanee Industries, Inc., and are now attempting to proceed solely against CUSA. *See* Docket Entry 271.

6. But Plaintiffs are no longer attempting to pursue CUSA in connection with the Bakers Waldwick site. *See* Docket Entry 268.

7. Plaintiffs are now attempting to assert claims against CUSA at the Skyline Service Center, despite the fact that Plaintiffs failed to make any mention of such a claim in response to CUSA's contention interrogatories that specifically called for such information. *See* Ex. A-2 (Aug. 9 response to pre-motion letter); Ex. A-3 (Sept. 4 court-ordered supplemental correspondence); *see also* Ex. A-1.

8. When specifically asked which Defendants that Plaintiffs identified with the Skyline Service Center, Plaintiffs gave detailed responses regarding Texaco and other defendants, but made no mention whatsoever of CUSA. *See* Ex. A-1 at Resp. to Interrogatories No. 1-2.

9. Plaintiffs responded to CUSA's first contention interrogatory, stating as follows:

**INTERROGATORY NO. 1:**

Identify the Defendants YOU contend caused the alleged DAMAGES at each of the DELINEATED TRIAL SITE AREAS at issue in this action.

**RESPONSE TO INTERROGATORY NO. 1:**

Subject to and without waiving its objections, Plaintiffs respond as follows:

---

[1] Ex. A to the exhibits supporting CUSA's motion and this Rule 56.1 Statement is the supporting Declaration of Jeremiah J. Andereson, counsel for CUSA in this matter.

2

Plaintiffs' Trial Sites

    1. Skyline Service Center: Site ID No. 2156.

    Sunoco; Texaco; Shell; Citgo.

*Id.* at Resp. to Interrogatory No. 1.

10.    In response to Contention Interrogatory No. 2, which requested Plaintiffs to "IDENTIFY all facts and all DOCUMENTS that YOU contend prove, establish, show or demonstrate that the particular Defendant caused the alleged DAMAGES at each DELINEATED TRIAL SITE AREA," Plaintiffs provide this information in response:

    1. Skyline Service Center: Site ID No. 2156.

    Sunoco supplied MTBE to Skyline from November of 1985 to September 1991 pursuant to a branding agreement. (Sunoco Resp 2nd Rogs, nos. 5, 10; Deposition of Joseph Costello ("Costello Depo") at 26:20-28:15 and Exhs. 2, 9.). *See also* Sunoco Response to CMO 45. Station owner Joe Costello testified that prior to the requirement of over-fill containment sumps, Sunoco commonly spilled approximately 10 gallons of gasoline each time it delivered gasoline to the station. (Costello Depo. at 41:3-42:20 and Exh. 8.) Mr. Costello testified that the amount of product spilled by Sunoco came to approximately 1,300 gallons over time. (*Id.*)

    Texaco supplied MTBE gasoline to Skyline from October 1991 to September 1997 pursuant to a branding agreement. (SKYLINE 003560; Costello Depo. at 52:5-54:3; 68:19-69:17; and Exhs. 10, 16.)

    CITGO, through its agent, supplied MTBE gasoline to Skyline from November, 1997 to June, 2008, including from CITGO's Linden Terminal. (CITGO Supplemental Response to Plaintiffs' Second Interrogatories, No. 5; Costello Depo. at 76:10-24; CITGO-NJ-003331.) Citgo also conducted on-site, in-tank testing of its MTBE gasoline products at this site during this time period. (*Id.*)

    MTBE was detected during the first tests for MTBE at Skyline, on May 13, 1998 at concentrations of 207 ppb. (SKYLINE002375-002376.) MTBE and TBA were detected in 16 of 18 domestic wells during a limited investigation conducted by the Passaic County Department of Health in 1998. (NJ-LBG-07788-07789; NJDEPSITE249-007146-007279.) Preliminary investigations identified Skyline as the likely source of the contamination. (*Id.*)

> On or about August 5, 2003, three USTs and associated piping were removed at the Skyline station. (*Id.*) In addition to the discovery of contaminated soil, approximately 725 gallons of free product was observed floating on top of groundwater, and contaminated groundwater was observed flowing into the excavation from bedrock sidewalls. (NJDEP-SITE249-002219-002245; Costello Depo. at 95:6-97:11.) A broken containment sump was found at the time of removal. (*Id.*)
>
> MTBE has continued to be detected at the Skyline station. MTBE was detected at the site at concentrations as high as 175 ppb in 2009. (NJDEP-SITE249-007146-007280.) MTBE was detected in potable wells near the Skyline station at levels as high as 360 ppb on June 18, 2004. (NJDEP-SITE249-002432-002433.) There are 95 potable wells within 1,000 feet of the impacted potable well. (*Id.*)

*See* Ex. A-1, Resp. to Interrogatory No. 2.

11. Chevron Corporation and CUSA retained expert Michael Keeley to specifically address Plaintiffs' four trial site specific claims, and Dr. Keeley relied on Plaintiffs' discovery responses in preparing his opinions. *See* Ex. A-4 ¶¶ 9, 29 & n.41, Appendix C; *see also* Ex. A-5 ¶ 4 (Declaration of Dr. Keeley).

12. In his report, Dr. Keeley specifically noted that "Plaintiffs have identified Chevron and Texaco with the Skyline Service Center site by virtue of an alleged supply agreement between Texaco and the station operator" and that "there is no allegation that Chevron supplied gasoline to this station." *See* Ex. A-4 ¶¶ 29-30.

13. At no time did Plaintiffs or their experts ever respond to that report and assert that they were in fact asserting a claim against CUSA in connection with the Skyline Service Center. *See* Ex. A-5 ¶ 5.

14. Had Plaintiffs or their experts ever asserted such a claim during the discovery period, Dr. Keeley would have analyzed such a claim and responded to it. *Id.* ¶ 6.

15. In reliance on Plaintiffs' discovery responses, and the absence of any other indication to the contrary, Chevron Corporation and CUSA addressed Plaintiffs' allegations in connection with the Skyline Service Center in their pre-motion letter only in the context of Plaintiffs' erroneous claim that Chevron Corporation is the successor to Texaco. *See* Ex. A-6 (pre-motion letter).

16. The pre-motion letter included no argument that CUSA had no relationship with the Skyline Service Center because there was no such claim against CUSA at the time. *Id.*

17. The first time that Plaintiffs made any mention that they were pursuing CUSA in connection with the Skyline Service Center was in Plaintiffs' response to this pre-motion letter. *See* Ex. A-2.

18. Plaintiffs then disclosed in their court-ordered supplemental conference letter of September 4, 2013 that they are now attempting to connect CUSA with the Skyline Service Center based on sales of gasoline by a former CUSA facility in Philadelphia, Pennsylvania from 1992-1994 to certain companies in New Jersey. *See* Ex. A-3.

19. In the 1992 to 1994 time period, CUSA was required to use MTBE as an oxygenate under the Federal Wintertime Program. *See* Ex. A-5 ¶ 7.

20. It is undisputed that (1) CUSA sold the Philadelphia Refinery in August 1994 and (2) since then, CUSA refined gasoline containing MTBE has not been sold in the State of New Jersey. *See* Ex. A-4 ¶ 14; Ex. A-5 ¶ 7 *see also* Ex. A-3 (making no claim that CUSA gas containing MTBE was sold after 1994).

21. During the limited time that the Philadelphia Refinery sold gasoline containing MTBE to companies in New Jersey, CUSA's expert Dr. Michael Keeley calculated that CUSA's

5

market share in New Jersey between 1992 and 1994 was below three percent.  *See* Ex. A-4, Ex-1; Ex. A-5 ¶ 8.

22. Plaintiffs' expert essentially agreed with Dr. Keeley's calculations, making only one minor change, which Dr. Keeley accepted in his amended calculations.  *See* Ex. A-4, Amended Ex. 1; Ex. A-5 ¶ 9; *see also* Ex. A-7 at p. 42 (Second Rebuttal Report of Martin R. Tallett).

23. Plaintiffs have claimed only that between 1992 and 1994, (1) CUSA delivered gasoline from the Philadelphia refinery to a number of New York Harbor terminals in New Jersey, including the Bayway, Linden, Carteret, Trembly Point, Sewaren, Bayonne and Perth Amboy terminals; (2) one of the customers who purchased gasoline from CUSA during this time period was Star Enterprise, which purchased gasoline from CUSA at the Carteret, Perth Amboy, Linden and Bayway terminals; and (3) Star Enterprise is alleged to have had a supply contract with the Skyline Service Center during this time period.  *See* Ex. A-3.

24. Plaintiffs have specifically disavowed any reliance in this trial site case on the commingled product theory of liability.  *See* Ex. A-1, Resp. to Interrogatory Nos. 18-19.


Dated: Houston, Texas
October 15, 2013

                                                        Respectfully submitted,

                                                        /s/ Robert E. Meadows
                                                        Robert E. Meadows
                                                        Jeremiah J. Anderson
                                                        James J. Maher
                                                        KING & SPALDING LLP
                                                        1100 Louisiana, Suite 4000
                                                        Houston, Texas 77002
                                                        Telephone: (713) 751-3200
                                                        Facsimile: (713) 751-3290

                              Charles C. Correll, Jr.
                              King & Spalding LLP
                              101 Second Street, Suite 2300
                              San Francisco, California 94015
                              Telephone:  (415) 318-1200
                              Facsimile:  (415) 318-1300

                              **Attorneys for Defendant Chevron U.S.A. Inc.**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 15th day of October, 2013 a true, correct, and exact copy of the foregoing document was served on all counsel via LexisNexis File & Serve.

                                      /s/ Jeremiah J. Anderson
                                      Jeremiah J. Anderson