# EXHIBIT A-4



E-SERVICE
48909555
Jan 14 2013
02:26PM
File & ServeXpress

United States District Court

Southern District of New York

The Honorable Shira A. Scheindlin

*In re Methyl Tertiary Butyl Ether Products Liability Litigation*

*(MDL No. 1358)*

*New Jersey Department of Environmental Protection, et al. v.
Atlantic Richfield Company, et al.*

**Expert Report of Michael C. Keeley, Ph.D.**

Senior Vice President
Cornerstone Research

January 10, 2013

## I.   Qualifications

1.      My name is Michael C. Keeley.  I am an economist and Senior Vice President of
Cornerstone Research, an economic and financial consulting firm.  I specialize in economic,
financial, and statistical analysis.  I earned a S.B. degree in mathematics from the Massachusetts
Institute of Technology, and the University of Chicago awarded me M.S. and Ph.D. degrees in
economics.

2.      I have consulted and served as an expert witness on liability and damage issues regarding
a variety of legal disputes, including antitrust, intellectual property, and general business
litigation.  I have testified as an expert witness in a number of matters and served as a consultant
in others.  In addition to consulting on issues relating to litigation, I have consulted on non-
litigation business, economic, and public policy issues.

3.      In the oil and gas area, I have served as a consulting and testifying expert, focusing on a
variety of issues involving public policy, antitrust, breach of contract, and regulation.  In doing
so, I have analyzed the pricing, distribution, and sales of gasoline.  I authored expert reports in
related methyl tertiary butyl ether ("MTBE") product liability litigation, including the *Suffolk
County*,[1] *City of New York*,[2] *Crescenta Valley*,[3] *City of Fresno*,[4] *City of Merced*,[5] and *Orange
County*[6] matters.  In the *Suffolk County* and *City of New York* matters, I analyzed the extent to
which gasoline containing MTBE was supplied to Suffolk and Queens Counties in the state of

[1] *County of Suffolk, et al. v. Amerada Hess Corp., et al.,* Expert Report of Michael C. Keeley, Ph.D., September 20,
2007.
[2] *City of New York v. Amerada Hess Corp., et al.*, Expert Report of Michael C. Keeley, Ph.D., February 13, 2009
and Rebuttal Report of Michael C. Keeley, Ph.D., March 30, 2009.
[3] *Crescenta Valley Water District v. Exxon Mobil Corp., et al.,* Expert Report of Michael C. Keeley, Ph.D., October
1, 2010.
[4] *City of Fresno v. Chevron U.S.A. Inc., et al.*, Expert Report of Michael C. Keeley, Ph.D., November 17, 2011.
[5] *City of Merced v. Chevron U.S.A. Inc., et al.*, Expert Report of Michael C. Keeley, Ph.D., May 9, 2011. *City of
Merced Redevelopment Agency v. Exxon Mobil Corp., et al.*, Expert Report of Michael C. Keeley, Ph.D., May 9,
2011.
[6] *Orange County Water District v. Unocal Corp., et al.*, Expert Report of Michael C. Keeley, Ph.D., May 13, 2011.

New York by Chevron. In the *Crescenta Valley*, *City of Fresno*, *City of Merced*, and *Orange County* matters, I submitted expert reports dealing with the issue of whether MTBE or ethanol would have been preferable as an oxygenate from a social cost-benefit perspective.

4.     I have also consulted on non-litigation business matters in the oil and gas and chemical industries, including the pricing of virtual capacity in a chemical plant, the competitive effects of mergers, and business strategy in contract negotiations. I have addressed energy policy issues, including environmental issues, for the California Chamber of Commerce, and I am a co-author of another public policy paper with Professor Kenneth G. Elzinga at the University of Virginia.[7]

5.     Before joining Cornerstone Research, I was a Research Officer at the Federal Reserve Bank of San Francisco. My responsibilities there included conducting economic and financial research related to policy and regulatory issues facing the Federal Reserve System.

6.     Prior to joining the Federal Reserve Bank of San Francisco, I founded and managed Stanford Research Institute's ("SRI") Antitrust Economics Consulting Group. In addition to consulting on a variety of antitrust matters, my work at SRI focused on policy-oriented economic and statistical research, primarily in the area of labor economics.

7.     My research has been published in economics and finance journals. Based on citations of my research, I was selected for inclusion in *Who's Who in Economics.* I was also awarded the Garn prize for my research on bank risk-taking, and I have served as a referee (*i.e.*, reviewer) for many of the major economics and finance journals. Details of my qualifications are provided in the attached copy of my curriculum vitae in Appendix A. A list of matters in which I have provided testimony since 2009 is provided in Appendix B. Cornerstone Research currently bills

---

[7] Keeley, Michael and Kenneth Elzinga, "Uniform Gasoline Price Regulation: Consequences for Consumer Welfare," *International Journal of the Economics of Business*, Volume 10, No. 2, July 2003, pp. 157–168.

my time at $695 per hour.  My compensation and Cornerstone Research's compensation are not dependent on the outcome of this matter.

## II.   Assignment and Materials Considered

8.      Counsel for Chevron U.S.A. Inc. and Chevron Corporation have asked me to determine whether Chevron U.S.A. Inc. ("Chevron") or Texaco Inc.[8] ("Texaco") owned or supplied gasoline to four trial sites at the time of the alleged supply agreement at issue or the earliest alleged product release date in the matter of *New Jersey Department of Environmental Protection, et al. v. Atlantic Richfield Company, et al.*, Case No. 08-Civ-00312.  I have also been asked to determine Chevron's and Texaco's wholesale sales in New Jersey, if any, of all gasoline potentially containing MTBE during the years 1986 through 1994 ("Pre-RFG Period") and of reformulated gasoline ("RFG") from 1995 through 2006 ("RFG Period").

9.      In preparing this report, I reviewed various legal pleadings, expert reports, depositions, data, and documents produced in this matter or in similar matters involving MTBE in which I have provided expert reports or testimony, as well as some publicly available data and documents.  Appendix C lists the materials I considered in reaching my opinions.

10.     My work is still on-going and I reserve the right to supplement this report if new information that is relevant to my opinions becomes available to me.  Further, I may use demonstrative exhibits at trial which have not yet been created.

---

[8] Plaintiffs allege Chevron Corporation is liable as an alleged successor-in-interest to Texaco Inc.  (*New Jersey Department of Environmental Protection, et al. v. Atlantic Richfield Company, et al.*, Fourth Amended Complaint (hereafter, "Fourth Amended Complaint"), p. 9.)  I understand that Chevron Corporation is not, in fact, a successor-in-interest to Texaco Inc. but, rather, that Texaco Inc. is a wholly-owned subsidiary of Chevron Corporation.  (Declaration of Kari H. Endries, July 31, 2009, ¶ 7.)

**III.    Plaintiffs' Alleged Theory of Liability**

11.      The New Jersey Department of Environmental Protection, the Commissioner of the New

Jersey Department of Environmental Protection, and the Administrator of the New Jersey Spill

Compensation Fund (collectively "Plaintiffs") allege that certain major oil and chemical

companies (collectively "Defendants") produced, supplied, and/or "knowingly and willfully

promoted, marketed and sold MTBE and gasoline…containing MTBE, when they knew or

reasonably should have known that MTBE would be discharged into the environment and pollute

the waters of the State…."[9]  As a result, Plaintiffs allege Defendants are "strictly liable for

manufacturing and supplying a defective product…; strictly liable for discharging MTBE into

the waters of the State or for being in any way responsible for the MTBE that was discharged

into the waters of the State…; and liable for all resulting damages."[10]

12.      Plaintiffs have elected a trial-site-specific theory of liability in this matter, stating in their

interrogatory responses that "[t]he [D]efendants who are jointly and severally liable at each trial

site are the [D]efendants identified with each site in response to Interrogatory No. 1 [of

Defendants' First Set of Contention Interrogatories]."[11]  I understand that the current trial of this

matter includes nineteen trial sites[12] and that Plaintiffs have disavowed reliance on any

alternative theory of liability, including the market-share and commingled-product theories of

liability.[13]

---

[9] Fourth Amended Complaint, p. 5.
[10] Fourth Amended Complaint, p. 7.
[11] Plaintiffs' Reponses to Defendants' First Set of Contention Interrogatories, p. 85.
[12] Plaintiffs' Reponses to Defendants' First Set of Contention Interrogatories, pp. 4–7.  See also, Case Management Order No. 107, December 27, 2012.
[13] Plaintiffs' Reponses to Defendants' First Set of Contention Interrogatories, pp. 81–85.

IV.    **Relevant Chevron Acquisitions and Divestitures**

13.    In my February 13, 2009, report for the *City of New York* case, I provided a detailed history of Chevron's and Texaco's acquisitions and divestitures.[14]  To summarize, Chevron completed the sale of all of its retail outlets in the northeast, including New Jersey, in 1986.[15] After 1986, Chevron owned only three refineries that could have supplied gasoline to New Jersey:  refineries in Philadelphia, Pennsylvania; Port Arthur, Texas; and Pascagoula, Mississippi.

14.    Chevron's Philadelphia Refinery is its only refinery known to have supplied gasoline of any type to New Jersey.[16]  The Philadelphia Refinery supplied gasoline containing MTBE to New Jersey between 1992 and 1994.[17]  The refinery was then sold in 1994.[18]

15.    Chevron's Port Arthur Refinery blended MTBE on various occasions between 1981 and February 1995.[19]  However, there is no record that the Port Arthur Refinery supplied gasoline to New Jersey.[20]  The refinery was sold in 1995.[21]

16.    Chevron's Pascagoula Refinery blended MTBE on various occasions between 1986 and 2001, including six test batches of RFG that were blended in 1994.[22]  However, like the Port Arthur Refinery, there is no record that the Pascagoula Refinery supplied gasoline to New

[14] *City of New York v. Amerada Hess Corp., et al.*, Expert Report of Michael C. Keeley, Ph.D., February 13, 2009, pp. 16–18 and Exhibit 1.
[15] *City of New York v. Amerada Hess Corp., et al.*, Second Amended and Supplemental Response of Defendant Chevron U.S.A. Inc. to Plaintiffs' First Set of Interrogatories and Request for the Production of Documents, March 28, 2007, p. 19. ("Chevron divested all of its marketing assets in the Northeast in 1986, and thus Chevron had no retail sales of gasoline with or without MTBE after 1986.") See also "Chevron Finishes Deal on Stations," *The New York Times*, December 20, 1985.
[16] Defendant Chevron U.S.A. Inc. and ChevronTexaco Corporation's CMO 45 Responses, p. 2.
[17] Defendant Chevron U.S.A. Inc. and ChevronTexaco Corporation's CMO 45 Responses, p. 2.
[18] Defendant Chevron U.S.A. Inc. and ChevronTexaco Corporation's CMO 45 Responses, p. 3.
[19] Defendant Chevron U.S.A. Inc. and ChevronTexaco Corporation's CMO 45 Responses, p. 3.
[20] Defendant Chevron U.S.A. Inc. and ChevronTexaco Corporation's CMO 45 Responses, p. 3.
[21] Defendant Chevron U.S.A. Inc. and ChevronTexaco Corporation's CMO 45 Responses, p. 3.
[22] Defendant Chevron U.S.A. Inc. and ChevronTexaco Corporation's CMO 45 Responses, p. 3.

Jersey.[23] After February 1995 and throughout the RFG Period, only Chevron's Pascagoula Refinery could have supplied gasoline to New Jersey, but that refinery did not produce RFG during the RFG Period[24] (1995–2006), and all gasoline sold in New Jersey during the RFG Period was required to be RFG.[25]

17.    In 2001, Chevron Corporation acquired Texaco. I understand that Texaco has been and remains to this day a separate and distinct corporate entity – a wholly-owned subsidiary of Chevron Corporation.[26] However, Texaco divested all of its domestic refining and marketing assets in 1984.[27] Thus, after 1984, Texaco had no refining and marketing assets, and therefore no gasoline supply relationships, in New Jersey or elsewhere.

## V.    Analytical Framework for My Analysis and Findings

18.    Plaintiffs have proposed a trial site-specific theory of liability focused on nineteen trial sites. Plaintiffs have identified Chevron or Texaco with four trial sites: Bakers Waldwick Gulf, West Windsor Getty, Skyline Service Center, and HP Delta.[28] My analysis addresses each of these four trial sites and assesses whether Chevron or Texaco owned these stations or supplied gasoline to them at the time of the alleged supply agreement at issue or the earliest alleged product release dates.

19.    To compute Chevron and Texaco's wholesale sales of gasoline in New Jersey, I use Energy Information Association ("EIA") Prime Supplier data, which show wholesale sales of

---

[23] Defendant Chevron U.S.A. Inc. and ChevronTexaco Corporation's CMO 45 Responses, p. 3.

[24] Defendant Chevron U.S.A. Inc. and ChevronTexaco Corporation's CMO 45 Responses, p. 3.

[25] Fourth Amended Complaint, pp. 18–19.

[26] Declaration of Kari H. Endries, July 31, 2009, ¶7.

[27] *City of New York v Amerada Hess Corp., et al.*, Responses of Defendants Texaco Inc. and TRMI Holdings Inc. to Plaintiff City of New York's Revised Third Set of Interrogatories to All Defendants, p. 1. ("Texaco Inc. has not refined or marketed gasoline in the United States since approximately December 1984, when its domestic operating assets were transferred to an independent subsidiary.")

[28] Plaintiffs' Reponses to Defendants' First Set of Contention Interrogatories, pp. 4–7. See also, Case Management Order No. 107, December 27, 2012.

gasoline. Plaintiffs' expert, Mr. Martin Tallett, supported the use of EIA Prime Supplier data consisting of 782C submissions in the *City of New York* matter.[29] According to Mr. Tallett, a defendant's share of wholesale sales of gasoline can be measured as that defendant's gasoline supplied to the state divided by total statewide gasoline consumption, using EIA Prime Supplier data to determine both the numerator and dominator.[30]

20.     Using the 782C submissions and the methodology proposed by Mr. Tallett,[31] I have determined that neither Chevron nor Texaco could have supplied gasoline containing MTBE to the four trial sites during the RFG Period (1995–2006) or for certain years preceding the RFG Period. My calculations are shown in Exhibit 1.

21.     I understand that gasoline sold in New Jersey prior to the RFG Program is referred to as "conventional" gasoline. Conventional gasoline can potentially include gasoline with some MTBE blended in it. My understanding is that only certain grades of gasoline (most commonly premium) produced at some refineries during certain periods of time contained MTBE before the federally mandated RFG Programs went into effect.[32] In other words, during a Pre-RFG year, not all gasoline sold in New Jersey necessarily contained MTBE. Moreover, if one were to calculate shares over a time period that included years in both the Pre-RFG and RFG Periods, one should weight gasoline sold during the Pre-RFG Period and gasoline sold during the RFG

---

[29] Expert Report of Martin R. Tallett, March 16, 2009, pp. 12–13. ("I believe the 782C submissions provide the basis for an acceptable and workable computation of market share. …In short, I see a methodology to use the 782C data as being potentially the only non-ground-level approach that is workable.")

[30] Expert Report of Martin R. Tallett, March 16, 2009, p. 13. ("Each Defendant would present its annual market share in the form of volume supplied into [the] State. These volumes would be taken straight from the 782C submissions for each month and aggregated for the year in question… These would then be compared to total prime supplies into [the] State to arrive at Defendants' market share(s).")

[31] I do not necessarily agree that the 782C submissions provide the most accurate measure from which to calculate shares. See *City of New York v. Amerada Hess Corp., et al.*, Rebuttal Report of Michael C. Keeley, Ph.D., March 30, 2009, p. 6. See also *City of New York v. Amerada Hess Corp., et al.*, Expert Report of Michael C. Keeley, Ph.D., February 13, 2009, pp. 28–30.

[32] *City of New York v. Amerada Hess Corp., et al.*, Expert Report of Michael C. Keeley, Ph.D., February 13, 2009, p. 14.

Period differently to account for the different amounts of MTBE used in the gasoline, and due to the certainty that MTBE was in RFG but not necessarily in conventional gasoline.

22.     Below, I further discuss the EIA data in the context of either the alleged supply agreements at issue or the earliest alleged product release dates for the four above-mentioned trial sites.

### A. Bakers Waldwick Gulf

23.     Plaintiffs identify Chevron with the Bakers Waldwick Gulf trial site by virtue of Chevron's ownership of this station until August 1986,[33] when Chevron sold the station along with all of its marketing and retail assets in the northeast, including New Jersey.[34]  Plaintiffs allege that Chevron supplied gasoline containing MTBE to this station during the period of Chevron's ownership.[35]  Plaintiffs' expert, Dr. Moreau, indicates that the earliest product release occurred at the Bakers Waldwick Gulf trial site in 1996, which is about ten years after Chevron sold this station.[36]  There is no allegation that Chevron owned or supplied gasoline to this station after August 1986.

24.     Nor could Chevron have supplied gasoline to this station at the time of the earliest alleged release.  At the time of the earliest alleged release in 1996, and for at least one full year prior, Chevron operated only one refinery (Pascagoula) that could have supplied gasoline to the northeast, but that refinery did not produce RFG during the RFG Period (1995–2006) and thus did not supply gasoline to New Jersey between 1995 and 2006.  In addition, as shown in Exhibit 1, Chevron did not supply any gasoline to New Jersey in 1996.

---

[33] Plaintiffs' Reponses to Defendants' First Set of Contention Interrogatories, pp. 81–85.  See also, Letter to Leonard Z. Kaufmann from James J. Maher, February 1, 2011.

[34] Letter to Leonard Z. Kaufmann from James J. Maher, February 1, 2011.  See also "Chevron Finishes Deal on Stations," *The New York Times*, December 20, 1985.

[35] Plaintiffs' Reponses to Defendants' First Set of Contention Interrogatories, p. 13.

[36] Expert Report of Marcel Moreau, p. 66.

25.     There is no allegation that Texaco supplied gasoline to this station.

### B. West Windsor Getty

26.     Plaintiffs identify Chevron and Texaco with the West Windsor Getty site by virtue of Texaco's ownership of this station until, at the latest, 1984,[37] when Texaco divested all of its domestic refining and marketing assets, including this station.[38] Plaintiffs allege that Texaco supplied gasoline containing MTBE to this station during the period of Texaco's ownership.[39] Plaintiffs' expert, Dr. Moreau, indicates that the earliest product release occurred at the West Windsor Getty trial site in 2004 or about 20 years after Texaco no longer owned this station.[40] As stated above, Texaco divested all of its domestic refining and marketing assets in 1984 and, therefore, could not have supplied gasoline to this station after 1984.

27.     There is no allegation that Chevron supplied gasoline to this station.

28.     In addition, as shown in Exhibit 1, neither Chevron nor Texaco supplied gasoline to New Jersey in 2004 (the earliest alleged release date for this site) or any other year during the RFG Period (1995–2006).

### C. Skyline Service Center

29.     Plaintiffs have identified Chevron and Texaco with the Skyline Service Center site by virtue of an alleged supply agreement between Texaco and the station operator.[41] According to Plaintiffs, the station operator sold Texaco-branded gasoline from October 1991 until October

---

[37] Plaintiffs' Reponses to Defendants' First Set of Contention Interrogatories, pp. 81–85. See also, Letter to Leonard Z. Kaufmann from James J. Maher, February 1, 2011.
[38] Response of Defendant Texaco Inc. to Case Management Order No. 45, p. 2.
[39] Plaintiffs' Reponses to Defendants' First Set of Contention Interrogatories, p. 10.
[40] Expert Report of Marcel Moreau, p. 58.
[41] Case Management Order No. 107, December 27, 2012. See also, Plaintiffs' Reponses to Defendants' First Set of Contention Interrogatories, p. 8.

1997.[42]  As stated above, Texaco divested all of its domestic refining and marketing assets in 1984 and, therefore, could not have supplied gasoline to this station after 1984.  The EIA data confirm this as well.[43]

30.    There is no allegation that Chevron supplied gasoline to this station.

### D.  HP Delta

31.    Plaintiffs have identified Chevron and Texaco with the HP Delta site by virtue of an alleged supply relationship between Texaco and the station operator between 1989 and 1991.[44] Again, as stated above, Texaco divested all of its domestic refining and marketing assets in 1984 and, therefore, could not have supplied gasoline to this station after 1984.  The EIA data confirm this as well.[45]

32.    There is no allegation that Chevron supplied gasoline to this station.

---

[42] Plaintiffs' Reponses to Defendants' First Set of Contention Interrogatories, p. 8.

[43] The EIA data show zero volume for conventional, oxygenated, or reformulated gasoline for Texaco Inc. between 1991–1997.

[44] Case Management Order No. 107, December 27, 2012.  See also, Plaintiffs' Reponses to Defendants' First Set of Contention Interrogatories, pp. 16–17.

[45] The EIA data show zero volume for conventional, oxygenated, or reformulated gasoline for Texaco Inc. between 1989–1991.

**Exhibit 1**
**Chevron U.S.A. Inc. and Texaco Inc. Shares of Gasoline Consumed in New Jersey**
**Based on EIA Prime Supplier Data**
**1986 – 2006**

*(Sales volumes in thousand gallons per day)*

| | Period | | Prime Supplier Sales of Gasoline Sold for Consumption in New Jersey | | Total Sales of Gasoline for Consumption in New Jersey | Share of Gasoline Consumed in New Jersey | |
|---|---|---|---|---|---|---|---|
| | | | Chevron U.S.A. Inc. | Texaco Inc. | New Jersey | Chevron U.S.A. Inc. | Texaco Inc. |
| Pre-RFG Period | 1986 | All Gasoline[1] | 435 | | 11,473 | 3.79% | |
| | 1987 | | 0 | | 11,861 | 0% | |
| | 1988 | | 0 | | 13,046 | 0% | |
| | 1989 | | 63 | | 14,421 | 0.44% | |
| | 1990 | | 60 | | 13,579 | 0.45% | |
| | 1991 | | 0 | Texaco Inc. divested | 12,678 | 0% | Texaco Inc. divested |
| | 1992 | | 312 | all of its domestic | 11,538 | 2.70% | all of its domestic |
| | 1993 | | 141 | refining and marketing | 10,768 | 1.31% | refining and marketing |
| | 1994 | | 28 | assets in 1984.[2] | 10,898 | 0.25% | assets in 1984.[2] |
| RFG Period | 1995 | Gasoline Under the RFG Program. | 0 | | 11,126 | 0% | |
| | 1996 | | 0 | | 10,900 | 0% | |
| | 1997 | | 0 | | 11,126 | 0% | |
| | 1998 | | 0 | | 11,328 | 0% | |
| | 1999 | | 0 | | 10,792 | 0% | |
| | 2000 | | 0 | | 10,853 | 0% | |
| | 2001 | | 0 | | 11,024 | 0% | |
| | 2002 | | 0 | | 11,251 | 0% | |
| | 2003 | | 0 | | 11,147 | 0% | |
| | 2004 | | 0 | | 11,604 | 0% | |
| | 2005 | | 0 | | 12,208 | 0% | |
| | 2006 | | 0 | | 11,469 | 0% | |

Source:  Energy Information Administration (EIA-782C)

Note:
[1] EIA-782C data do not distinguish between conventional and OFP gasoline in 1992 and 1993.  Chevron reported six thousand gallons of OFP gasoline per day in 1994.
[2] See, Response of Defendant Texaco Inc. to Case Management Order No. 45, p. 2.

## VI.    Signature

33.    This report represents my conclusions at this time based on information available to me.


_Michael C. Keeley_

Michael C. Keeley, Ph.D.
January 10, 2013

# Appendix C

## Documents Considered by Michael C. Keeley, Ph.D.

| Document Title | Document Date |
|---|---|
| **Documents and Legal Pleadings** | |
| *New Jersey Department of Environmental Protection, et al. v. Atlantic Richfield Company, et al.,* Fourth Amended Complaint | June 19, 2012 |
| Case Management Order No. 107 | December 27, 2012 |
| Plaintiffs' Responses to Defendants' First Set of Contention Interrogatories | September 7, 2012 |
| Letter to L. Kaufmann from J. Maher re: Supplement Prior Response to Request for CMO 75 Declarations | February 1, 2011 |
| Declaration of Kari H. Endries | July 31, 2009 |
| Defendant Chevron U.S.A. Inc. and ChevronTexaco Corporation's CMO 45 Responses, with Exhibits | February 6, 2009 |
| Response of Defendant Texaco Inc. to Case Management Order No. 45 | February 6, 2009 |
| *City of New York v. Amerada Hess Corp., et al.,* Reponses of Defendants Texaco Inc. and TRMI Holdings Inc. to Plaintiff City of New York's Revised Third Set of Interrogatories to All Defendants | August 15, 2008 |
| *City of New York v. Amerada Hess Corp., et al.,* Second Amended and Supplemental Response of Defendant Chevron U.S.A. Inc. to Plaintiffs' First Set of Interrogatories and Request for Production of Documents | March 28, 2007 |
| **Expert Reports** | |
| Expert Report of Marcel Moreau | November 8, 2012 |
| Expert Report of Martin R. Tallett | September 14, 2012 |
| *City of New York v. Amerada Hess Corp., et al.,* Expert Report of Martin R. Tallett | March 16, 2009 |
| *City of Fresno v. Chevron U.S.A., et al.,* Expert Report of Michael C. Keeley, Ph.D. | November 17, 2011 |
| *Orange County Water District v. Unocal Corp., et al.,* Expert Report of Michael C. Keeley, Ph.D. | May 13, 2011 |
| *City of Merced v. Chevron U.S.A., Inc., et al.,* Expert Report of Michael C. Keeley, Ph.D. | May 9, 2011 |
| *City of Merced Redevelopment Agency v. Exxon Mobil Corp., et al.,* Expert Report of Michael C. Keeley, Ph.D. | May 9, 2011 |
| *Crescenta Valley Water District v. Exxon Mobil Corp., et al.,* Expert Report of Michael C. Keeley, Ph.D. | October 1, 2010 |
| *City of New York v. Amerada Hess Corp., et al.,* Rebuttal Report of Michael C. Keeley, Ph.D. | March 30, 2009 |

| Document Title | Document Date |
|---|---|
| *City of New York v. Amerada Hess Corp., et al.,* Expert Report of Michael C. Keeley, Ph.D. | February 13, 2009 |
| *County of Suffolk, et al. v. Amerada Hess Corp., et al.,* Expert Report of Michael C. Keeley, Ph.D. | September 20, 2007 |
| **Articles** | |
| Keeley, Michael and Kenneth Elzinga.  "Uniform Gasoline Price Regulation: Consequences for Consumer Welfare," *International Journal of the Economics of Business,* 10, No. 2 | July 2003 |
| Hayes, Thomas C., "Chevron Finishes Deal on Stations,"  *The New York Times* | December 20, 1985 |
| **Data** | |
| Chevron U.S.A. Inc.'s Energy Information Association Prime Supplier Data | |
| New Jersey's Energy Information Association Prime Supplier Data | |
| Texaco Inc.'s Energy Information Association Prime Supplier Data | |

# Amended Exhibit 1 to Expert Report of Michael C. Keeley, Ph.D.
# Chevron U.S.A. Inc. and Texaco Inc. Shares of Gasoline Consumed in New Jersey
# Based on EIA Prime Supplier Data
# 1986 – 2006

*(Sales volumes in thousand gallons per day)*

| Period | | Prime Supplier Sales of Gasoline Sold for Consumption in New Jersey | | Total Sales of Gasoline for Consumption in New Jersey | Share of Gasoline Consumed in New Jersey | |
|---|---|---|---|---|---|---|
| | | Chevron U.S.A. Inc. | Texaco Inc. | | Chevron U.S.A. Inc. | Texaco Inc. |
| Pre-RFG Period | All Gasoline[1] | | | | | |
| 1986 | | 435 | | 11,473 | 3.79% | |
| 1987 | | 0 | | 11,861 | 0% | |
| 1988 | | 0 | | 13,046 | 0% | |
| 1989 | | 63 | | 14,421 | 0.44% | |
| 1990 | | 60 | | 13,579 | 0.45% | |
| 1991 | | 0 | Texaco Inc. divested | 12,678 | 0% | Texaco Inc. divested |
| 1992 | | 312 | all of its domestic | 11,538 | 2.70% | all of its domestic |
| 1993 | | 149 | refining and marketing | 10,768 | 1.39% | refining and marketing |
| 1994 | | 28 | assets in 1984.[2] | 10,898 | 0.25% | assets in 1984.[2] |
| RFG Period | Gasoline Under the RFG Program. | | | | | |
| 1995 | | 0 | | 11,126 | 0% | |
| 1996 | | 0 | | 10,900 | 0% | |
| 1997 | | 0 | | 11,126 | 0% | |
| 1998 | | 0 | | 11,328 | 0% | |
| 1999 | | 0 | | 10,792 | 0% | |
| 2000 | | 0 | | 10,853 | 0% | |
| 2001 | | 0 | | 11,024 | 0% | |
| 2002 | | 0 | | 11,251 | 0% | |
| 2003 | | 0 | | 11,147 | 0% | |
| 2004 | | 0 | | 11,604 | 0% | |
| 2005 | | 0 | | 12,208 | 0% | |
| 2006 | | 0 | | 11,469 | 0% | |

Source:  Energy Information Administration (EIA-782C)

Note:

[1] EIA-782C data do not distinguish between conventional and OFP gasoline in 1992 and 1993.  Chevron reported six thousand gallons of OFP gasoline per day in 1994.

[2] See, Response of Defendant Texaco Inc. to Case Management Order No. 45, p. 2.