DANFMTBC

1

2    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
3    ------------------------------x

4    In Re: METHYL TERTIARY BUTYL           00 MDL 1358 (SAS)
             ETHER ("MTBE") PRODUCTS        00 CV  1898 (SAS)
5            LIABILITY LITIGATION
                                            Telephone Conference
6    ------------------------------x

7                                           New York, N.Y.
                                            October 23, 2013
8                                           2:30 p.m.

9    Before:

10           HON. SHIRA A. SCHEINDLIN

11                                          District Judge

12           APPEARANCES

13   MILLER AXLINE & SAWYER
          Attorneys for Plaintiffs
14   BY:  TRACEY L. O'REILLY

15   JACKSON, GILMOUR & DOBBS
          Attorneys for Plaintiffs
16   BY:  JOHN D.S. GILMOUR
          NATHAN SHORT
17

18   McDERMOTT WILL & EMERY LLP
          Attorneys for ExxonMobil
19   BY:  STEPHEN J. RICCARDULLI

20   SEPULVADO & MALDONADO, PSC
          Attorneys for Total Petroleum Puerto Rico
21   BY:  ELAINE M. MALDONADO-MATIAS

22

23

24

25

DANFMTBC

KING & SPALDING
     Attorneys for Chevron USA
BY:  CHARLES CORRELL, JR.

SEDGWICK LAW
     Attorneys for Shell Oil Company
BY:  PETER CONDRON

EIMER STAHL
     Attorneys for CITGO Petroleum
BY:  LISA MEYER

BEVERIDGE & DIAMOND
     Attorneys for Sunoco, Inc.
BY:  DANIEL M. KRAININ

McCONNELL VALDES LLC
     Attorneys for Sol Puerto Rico Limited
BY:  JUAN A. MARQUES-DIAS

JAMES B. HARRIS
     Attorney for Petrobas America

BLANK ROME LLP
     Attorney for Lyondell Chemical Corporation
BY:  JEFFREY S. MOLLER

BAKER BOTTS LLC
     Attorneys for Hess Oil Virgin Islands
     Corporation, Hovensa LLC, and Hovic
BY:  CHRIS DANLEY

FULBRIGHT & JAWORSKI LLP
     Attorneys for Chevron Phillips Puerto Rico Core
     and ConocoPhillips
BY:  STEPHEN C. DILLARD

DANFMTBC

1          (In chambers; via speakerphone)

2          THE COURT:  All right.  So we left off yesterday, you

3    won't know where, but in my notes I was up to Petrobras America

4    and on that one I was told that there are meet and confers

5    going on and I needn't do anything.  Is that still the case

6    today?

7          MR. HARRIS:  Yes, and some of the Court's earlier

8    rulings have clarified some conversations I'm having with

9    plaintiff's counsel and we're scheduled to meet in Houston on

10   October 31 hopefully to resolve the remaining issues.  I

11   understand if we can we'll get something in front of the

12   special master immediately.

13         THE COURT:  Okay, we will see.  Okay, so my next topic

14   is Shell.  This will be Mr. Condron, but I have a few topics

15   here.  The first topic is Shell says Equilon was never involved

16   with gasoline supplied to Puerto Rico.  I don't know if the

17   plaintiff accepts that statement or contests it.  Ms. O'Reilly?

18         MS. O'REILLY:  Your Honor, this is Ms. O'Reilly.  Yes.

19   We have not had an opportunity to prove the veracity of that

20   statement.  We're about to take depositions of Shell.  I will

21   tell you that in their designation of covered groups in this

22   case covered Equilon and Motiva, identified them as a company

23   that controls the distribution of product and that they are

24   based in Houston.  When I took the deposition recently of Mr.

25   Cintron who worked for the Puerto Rico based Shell entity he

DANFMTBC

1    said that he called Houston, he identified it specifically,

2    every two weeks to let them know whose products he was

3    purchasing, let them know its inventory.  So obviously we

4    should have the right to explore this and challenge the

5    veracity of these comments.

6            THE COURT:  Mr. Condron, do you want to be heard any

7    further on this?  I'm not really sure what you expected me to

8    be able to do but in the letters it says Equilon was never

9    involved with gasoline supplied Puerto Rico.  Ms. O'Reilly says

10   there is some evidence they were and she should be allowed to

11   test it.  Do you want me to do anything on that or move on?

12           MR. CONDRON:  Peter Condron.  We're trying to

13   negotiate a declaration with plaintiffs that has sort of

14   stopped and I think at this point it may be easier just to put

15   up a witness on it.

16           THE COURT:  Good.  The next one is issue 26 where the

17   plaintiffs are seeking a statement of Shell's efforts in

18   response to plaintiff's discovery requests and Shell objects

19   and says what's the problem and it calls for work product.  So,

20   Ms. O'Reilly, I really am kind of against that kind of

21   discovery on discovery, so to speak.  Why should Shell have to

22   tell you the efforts they took to respond?

23           MS. O'REILLY:  Your Honor, we are not going to pursue

24   number 26.

25           THE COURT:  Okay.

DANFMTBC

1          MS. O'REILLY:  I can help you out here.  Ms. O'Reilly,

2    for the court reporter.  26 we'll negotiate a declaration on

3    the rest of the issues.  So we don't need to go forward with

4    those.

5          THE COURT:  Right, because the other issue was

6    authentication which was 28.  We discussed that yesterday.  And

7    the final issue was 30, which sought more information about

8    authenticity and we kind of discussed that yesterday.  So I am

9    ready to turn to my next one which was called, for Shell

10   actually I called it Shell chemical, Shell trading, Shell

11   western, Shell international.  They have some objections.

12   Again, the first one was the efforts to respond so I guess your

13   response, again, Ms. O'Reilly, is the same?

14         MS. O'REILLY:  Yes, that's correct.

15         THE COURT:  And then issues 28 to 30 involved the

16   piercing of the corporate veil argument which we discussed

17   yesterday and issue 32 was authentication of all documents.  So

18   I think 26, 28 through 30 and 32 have already been discussed.

19         That takes us to document request 33 and 34.  In

20   document request 33 the defendant sought an index matching

21   produced documents to the interrogatories they respond to.  Are

22   you still pressing that?

23         MS. O'REILLY:  Your Honor, we can work this out with

24   defendants.  One of the issues that we've encountered in this

25   case is defendants referring generally to their MDL production,

DANFMTBC

1    CR production on this date but not identifying --

2            THE COURT:  Right.  I was going to give guidance on

3    this one and say that you're right and people have to identify

4    the documents as they correspond to the interrogatories they

5    respond to.  So if that little comment helps your meet and

6    confer, sobeit.  That generally is the right way to do it.

7    Then you also had a request with respect to document request 34

8    you wanted a business record affidavit for all documents

9    produced.  I'm not sure --

10           MS. O'REILLY:  We can work out the same deal we worked

11   out with Exxon yesterday under your guidance.

12           THE COURT:  All right.  Then that takes me to the

13   second 30(b)(6) notice on those same Shell companies.  The

14   first notice I dealt with was July 9.  Now I'm up to the

15   October 11 notice and there's a number of arguments here.

16   First is that Sol Puerto Rico, Limited as separate company

17   recommended by separate counsel and it should be included in

18   the 30(b)(6) directed to the Shell defendants on October 11,

19   and that seems right, Ms. O'Reilly.

20           MS. O'REILLY:  It is correct, your Honor.  We were

21   included inaccurately.  The notice of October 11, your Honor,

22   is a very limited notice.

23           THE COURT:  Look, I just need to get on.  So it

24   doesn't apply to Sol because Sol is separate and that's that.

25   Number two, you object -- not you -- yes, you, the Shell

DANFMTBC

1    defendants say that the topics raised in this second notice are

2    duplicative of a previous notice.  Is that not true,

3    Ms. O'Reilly?

4              MS. O'REILLY:  Absolutely not your, Honor.

5              THE COURT:  Why did they say so, Mr. Condron?  Have

6    you worked it out with Ms. O'Reilly why she says the October 11

7    notice is not duplicative?

8              MR. CONDRON:  Your Honor, the point was we were going

9    to have one witness and one deposition.  The plaintiffs were

10   expecting two depositions.  There is some overlap.  I think the

11   second notice is more specific than the first one.  The

12   questions are more pointed, but the general categories included

13   in the first notice would I think subsume the more specific

14   questions being asked in the second.  The point we were solely

15   making is one deposition.

16             THE COURT:  From my point of view giving guidance,

17   Ms. O'Reilly, I don't want two depositions with duplicative

18   questions.

19             MS. O'REILLY:  The focus of this was on manufacture of

20   gasoline that was not covered to the first one.

21             THE COURT:  That's fine, but if one person can answer

22   the issues in both notices, that's best.  I don't want you two

23   people that you will ask the same questions of because they

24   have to produce a second person because the first person has no

25   knowledge of a limited topic and you get a second for an hour

DANFMTBC

1    to clear up that limited topic, sobeit, but the hope is that

2    one person can do all of it.

3          MS. O'REILLY:  Your Honor, we agree.  We hope we can

4    solve it in one deposition.

5          THE COURT:  Then the third objection before I get to

6    the issue numbers, Shell says that some of the issues are

7    untimely, that they're really, they're really document requests

8    in disguise that are untimely, not matters for testimony.  Is

9    that something you're still pursuing, Mr. Condron?

10         MR. CONDRON:  Yes, your Honor.  We do object on those

11   grounds.  To the extent we have documents and they were

12   responsive to earlier document requests we produced them.  For

13   example, one of the topics is preshipment of MTBE to the

14   Yabucoa coal facility and the witness is supposed to provide

15   inventory and inventory reconciliation records.  That's clearly

16   a document request, not a matter for testimony and that's why

17   we objected.

18         THE COURT:  Right, but this has not been resolved?

19         MR. CONDRON:  Correct.

20         MS. O'REILLY:  Your Honor, we haven't even had an

21   opportunity to meet and confer over these issues and it is

22   something we will be meeting and conferring over with them on

23   it.  Obviously we disagree with their interpretations.

24         THE COURT:  It doesn't sound like much of an

25   interpretation.  If you've asked for documents for the first

DANFMTBC

1       time that's a document request.  And if the time for making

2       document requests is over, then it's over.  There's no reason

3       to be asking for documents at this late stage which you could

4       have asked for before and the way Mr. Condron made it sound in

5       that example that's strictly asking for documents that you

6       never asked for before.  So I'll leave it to you to meet and

7       confer but you now have my thoughts on the topic of untimely

8       document requests.

9               Then issue 19.  The plaintiffs seek a detailed

10      description of the last person who had custody and control over

11      the Shell defendants business records.  Is that still an

12      objection?

13              MR. CONDRON:  We have not had an opportunity to meet

14      and confer on these particular topics and it might be better

15      served to have us do that.

16              THE COURT:  Because the next one was issue 2, which

17      sought all documents, facts and witnesses that support any

18      contention that Shell did not supply gasoline containing MTBE

19      to Puerto Rico.  That does sound very broad.  It may ask for

20      work product, but that said, if you need to get a declaration

21      from a person with knowledge that says that Shell never

22      supplied gasoline containing MTBE to Puerto Rico you should do

23      that.

24              MR. CONDRON:  We expect the testimony at the

25      deposition would be directed towards this topic, but the way

DANFMTBC

1   that this is phrased it looks more like an interrogatory than a

2   question.

3        THE COURT:  I agree.  As long as you can substantiate

4   the statement with a sworn witness either in a declaration or a

5   deposition I'm satisfied.

6        Okay, then we have document request 1 through 8 and

7   your objection to document request 1 through 8, which I didn't

8   put in front of me, just the note that you have a problem, says

9   that the objection is that those requests are beyond the scope

10  of the September 30th CMO.  Is that something you're going to

11  talk to each other about or do you want me to get involved in

12  now or what?

13       MR. CONDRON:  Yes, your Honor.  I think we can

14  probably talk amongst ourselves.  This goes back to more or

15  less the same objection we raised before to the extent they're

16  calling for new documents that weren't previously requested,

17  that the request is untimely.

18       THE COURT:  Okay.  I'm going on to Sol, then.  The

19  first one is, there's a 30(b)(6) notice that seeks to determine

20  when Sol had notice and of what, and Sol says it should have

21  been covered in the previous 30(b)(6) deposition.  Sol says it

22  has already provided plaintiffs with all documents relevant to

23  the notice issue and has offered a declaration in place of the

24  deposition.  As of the time of the letter writing plaintiffs

25  have not responded to the offer.  Have plaintiffs now

DANFMTBC

 1    responded, Ms. O'Reilly?

 2              MS. O'REILLY:  No, your Honor.  We haven't.  We've

 3    been looking it over and I went back through the topic in the

 4    first notice and the topic that the defendants are claiming is

 5    duplicative, the first one says, "Your decision to purchase,

 6    buy, sell or otherwise utilize gasoline containing MTBE in the

 7    commonwealth of Puerto Rico," and they claim that's the same

 8    thing as the second notice, which says, "What date did you

 9    first learn MTBE had contaminated any drinking water?"

10              THE COURT:  No, that seems different to me.  So I

11    would not call that a duplicative question to put on the issues

12    for the 30(b)(6) deposition.  But then the next point is that

13    Sol said they've offered to do a declaration in place of a

14    deposition.  Isn't it time to get efficient?  Not everybody has

15    to show up in person, be placed under oath and testify for

16    hours in a slow endless way.  Just take the declaration and see

17    if you're satisfied.

18              MS. O'REILLY:  Your Honor, we've only done three

19    witnesses for Sol.

20              THE COURT:  I'm looking at this picture collectively.

21    We may be in the hundreds.  Three may be too many for Sol.  All

22    I'm saying is if there's a person with knowledge that can

23    answer your question which is when did you have notice of MTBE

24    contamination in drinking water in a simple and clean

25    declarative paragraph you may be just as well off.  All I'm

DANFMTBC

saying if you meet and confer as you've been doing take my

comment to heart, see if you can do it by declaration.  You can

always say it's not adequate, I need to question this person

further, but it's always best to take the easier step first and

see if you're satisfied.  That's what I'm encouraging you to

do.  This is not a ruling, it's guidance for your meet and

confer.  In that spirit, do I need to discuss that knowledge

issue anymore?

MS. O'REILLY:  No, your Honor.

THE COURT:  So the next one says there's an amended

notice of deposition to -- oh, we did this -- to all the Shell

companies and Sol says it's separate and shouldn't have been

included.  We've covered that.  Okay.

The third one says there's a notice of deposition of

Sol on issues with regard to document production and

videotaping, and Sol says this was all covered in a three-day

deposition held August 12th through 14th.  So this has all been

done.  Why do we have to go over issues about document

production?

MS. O'REILLY:  Your Honor, I don't think it's about

document production.  There's a different issue.  There were

some issues -- I think this can be handled by meet and confer.

We had some issues that were left open on the prior deposition

notice.  I think that we served something just to preserve our

right to take them if we still needed to do so after we

DANFMTBC

1    completed some individuals.  So I would suggest that we could

2    leave this open.  We're not pressing it at this time until the

3    meet and confer.

4         THE COURT:  All right.  The next one in my notes is

5    Sunoco.  There were two 30(b)(6) notices on October 11 and on

6    September 13th and Sunoco says anyway they're duplicative of

7    the July 9 notice and that Sunoco gave testimony October 16 and

8    17 in response to the July 9 notice.  What more are you

9    seeking?  People sit for two days and answer your questions.  I

10   don't understand why there are second and third rounds of

11   30(b)(6) here.

12        MS. O'REILLY:  Your Honor, let me, first of all, the

13   witness that they produced was a radiation person who testified

14   on gasoline supply issues and submitted multiple times that he

15   didn't know anything beyond the documents he'd actually read

16   and wasn't able to answer some questions.  The September 13th

17   notice is the one I read you, your Honor, about when did you

18   first learn about MTBE.

19        THE COURT:  Okay, all right.

20        MS. O'REILLY:  It's a different notice.  That is a

21   different subject matter.

22        THE COURT:  Right.

23        MS. O'REILLY:  On the October 11 notice when I took

24   this witnesses's deposition last week he admitted that he

25   didn't know how they manufactured reformate, which was then

DANFMTBC

1   sent to Peerless and blended into finished gasoline, nor did he

2   know anything and had not read any documents on how the

3   gasoline is blended by Peerless.  This is the first time when

4   we took that deposition that we learned how Puerto Rico Sun Oil

5   actually manufactured gasoline in Puerto Rico.  So the

6   October 11 notice is very narrow to get into that manufacturing

7   process.  That was not part of the prior notice.  This witness

8   didn't know the answer.

9           THE COURT:  Mr. Krainin, do you understand --

10          MR. KRAININ:  Yes, your Honor.  I'd be happy to

11  address this.  We certainly believe that the issues overlap

12  substantially.  There's a great deal of duplication in these

13  notices.  The witnesses, just so your Honor understands, the

14  entity, the Sunoco entity that was involved in gasoline sales

15  in Puerto Rico, no longer exists.  Puerto Rico Sun Oil Company

16  had ceased operations in 2001.  So in essence the Sunoco

17  defendants through a 30(b)(6) notice are limited to what the

18  documents indicate.  So we did have a witness who was an

19  environmental engineer involved in many activities, worked in

20  the Puerto Rico facility in Yabucoa for many years, knew a lot

21  about it, but in many respects any witnesses's knowledge we

22  might put up is limited.  We've offered a declaration in lieu

23  of preparing yet another 30(b)(6) proponent to talk about the

24  same issues in the same way so that would be my recommendation

25  as to how to resolve this.

DANFMTBC

1          THE COURT:  I think there were subjects that

2     Ms. O'Reilly mentioned that the witness really had no knowledge

3     of.  She is entitled to get responses on those, particularly

4     I've already commented on knowledge, when did a defendant have

5     knowledge and of what.  But there was something else you said

6     Ms. O'Reilly, it's already slipped my mind.  There was a topic

7     you said was new.

8          MS. O'REILLY:  We asked about the actual manufacturing

9     of the gasoline at Yabucoa and at Peerless.  That was not part

10    of this witnesses's knowledges.  I tried to at least cover it

11    in the deposition.  The witness admitted he did not know.

12         MR. KRAININ:  Your Honor, if I may respond.  I don't

13    believe that Sunoco could put up any witness to testify as to

14    what happened at Peerless.  What Ms. O'Reilly is alluding to

15    and what the witness the last week testified to is that Sunoco

16    had its Yabucoa facility in Puerto Rico manufacture or refine

17    reformate and shipped that reformate product to Peerless, a

18    separate facility in Puerto Rico where Peerless stripped out

19    benzene and added components and transferred the product back

20    to Sunoco for sales to the Peerless facility as completed

21    gasoline.  So the facility that completed the manufacture and

22    manufactured finished gasoline on behalf of Sunoco was

23    Peerless.

24         THE COURT:  If Sunoco has no knowledge of what

25    happened during the Peerless process, sobeit, but it would have

DANFMTBC

knowledge of what it accomplished on its own before it went to

Peerless and then when it returned back from Peerless what

happened.  So if this witness isn't able to answer those

questions or the notice/knowledge questions then I do think

these two topics are appropriate for further deposition.

Again, trying a declaration first as an idea but not as

attractive here as when I said they should try that with Sol,

because here I think they need to talk about a process that

went from this Yabucoa facility to Peerless and back.  So I

think a deposition that's not repetitive.

Now, look, Ms. O'Reilly, obviously if you're going to

sit and ask the identical questions you already asked you're

wasting everybody's time, but why would you waste your own

time?  I trust you don't intend to do that.

Next is the request that document requests 1 through 8

is beyond the scope of the CMO of September 30.  The last time

I raised that with a different defendant they said, you said

probably, Ms. O'Reilly that was ripe for meet and confer.  You

think that's true here, too?

MS. O'REILLY:  Yes, your Honor.

THE COURT:  So I won't have anything more to say about

document request 1 through 8 whether it's beyond the scope of

September 30 but if you don't resolve it you have to really get

quickly before the Court or the special master and I think

really the special plaster.

DANFMTBC

1           All right that takes me to Tauber Oil.  Who is on the

2   phone if anybody for Tauber?  Uh-oh.  Yesterday somebody said

3   the word Tauber.  No counsel?  No counsel here for Tauber?

4   That's too bad.  I'll just cover it anyway, if it gives any

5   guidance to the plaintiff, but I realize they're not on the

6   phone.

7           The first is they say that the notice demands

8   irrelevant information on sales of MTBE outside Puerto Rico.

9   Obviously, if that's true Ms. O'Reilly, you shouldn't be

10  seeking information on sales outside of Puerto Rico.  This is

11  the Puerto Rico case.  You understand that?

12          MR. SHORT:  Your Honor, Nathan Short.  I will cover

13  the topic if you don't mind.  We are seeking information about

14  MTBE that was sold by Tauber to Phillips and do have

15  documentation showing the transport of that MTBE to Puerto Rico

16  and it is limited to those types of sales.

17          THE COURT:  I suppose if you can make the chain if you

18  can get it from Tauber to Phillips to Puerto Rico then it is a

19  sale that is essentially to Puerto Rico, although with a stop

20  and a transfer along the way.  So limited in that way.  It's

21  acceptable to me.  Of course, Tauber is not on the phone.

22          The second one says that you are demanding irrelevant

23  information relating to components of gasoline other than MTBE.

24  That's all I can do to summarize Tauber's objection.  Is that

25  true?

DANFMTBC

1            MR. SHORT:  It would be limited to MTBE.

2            THE COURT:  And the last one says that the notice

3    demands that this deposition take place in Puerto Rico even

4    though that's not where Tauber is.  Where is Tauber located?

5            MR. SHORT:  They're in Houston, Texas, your Honor.

6            THE COURT:  Can the plaintiff take this deposition in

7    Houston?

8            MR. GILMOUR:  Your Honor, John Gilmore.  Sorry to

9    interrupt.  Yes, we would be happy to take it in Houston.  That

10   was stated in the cover letter to Tauber.  I think we need to

11   meet and confer further.

12           THE COURT:  You don't need to meet and confer further

13   because you said you would do it.  Done.  That's a ruling.  Do

14   it in Houston.

15           Now we're up to TPP.  And there's somebody on the

16   phone for them I believe?

17           MS. MALDONADO:  Elaine Maldonado.

18           THE COURT:  You raised document requests 22 to 25.

19   You say you object to plaintiff's attempt to burden your

20   company with discovery on business, financial accounting and

21   corporate matters concerning corporate Total Group entities and

22   you say that in my July 16, 2013 order I acknowledge that

23   certain other members of the Total Group did not own gasoline

24   stations or UST's in Puerto Rico and plaintiffs have not

25   alleged a piercing the corporate veil theory in the complaint.

DANFMTBC

1   Who wants to address this for the plaintiffs?

2              MR. GILMOUR:  Your Honor, this is John Gilmour.

3              THE COURT:  Mr. Gilmour, why should you be allowed to

4   seek discovery on business, financial accounting and corporate

5   matters concerning separate Total Group entities?  I said

6   yesterday and you were on the call that post judgment discovery

7   is a different matter if and when we ever get there, if we live

8   to see the day, I'll worry about that then.  What other reason

9   do you have to be doing this now?

10             MR. GILMOUR:  None, your Honor.  Based upon your

11  guidance yesterday regarding the possibility of discovery I

12  don't think there's an issue related to that.

13             MS. O'REILLY:  Your Honor, may I make one comment?

14             THE COURT:  Yes.

15             MS. O'REILLY:  One issue that has come up related to

16  this business relationship, and I want to make sure we're not

17  foreclosed, is during deposition personally that I've taken

18  often the witnesses have responded to questions indicating that

19  they had communications or relationships with other related

20  entities.  For example, Esso's witness, Mr. Guerrera, said that

21  Manny Perez, a remediation technician provided technical advice

22  to Esso.  What I don't want to be foreclosed from going into is

23  going into the subject matter, well, did you get other

24  technical advice from Exxon Mobil, did you have meetings with

25  them.  I want to be able to explore that issue if needed.

DANFMTBC

1   Because it's a 30(b)(6) I don't want to be precluded because we

2   don't have a designated issue of a business relationship from

3   someone saying to me you can't ask questions about what Exxon

4   Mobil's relationship is with Esso with this witness because

5   it's not a designated issue.

6        THE COURT:  Actually, you can't.  You can ask what you

7   described in your last minute and a half of speaking which is

8   technical advice received.  In other words, if indeed one

9   company turned to another for techniques of manufacture or

10  proportion of MTBE or whatever, things like that, fine.  But

11  you cannot go into corporate relationships of ownership,

12  finance, reporting.  In other words, subsidiary, that kind of

13  thing is what you can't do.  So do you understand the

14  difference?

15       MS. O'REILLY:  Yes, and that's fine with me, as long

16  as there's clarification that we can ask if a witness raises

17  the issue if they got information --

18       THE COURT:  No, I just made the ruling.  That's the

19  beauty of a transcript.  Okay.  That finished the lengthy

20  defendant's letter.

21       Now I'm going to try to deal as swiftly as possible

22  with a few of the comments in the last letter which was the

23  October 22nd letter from the plaintiffs.

24       MR. MOLLER:  Jeffrey Moller from Lyondell Chemical.

25  Yesterday we broke sort of right in the middle of discussion of

DANFMTBC

```
 1    the 30(b)(6) notice that Lyondell had received.

 2             THE COURT:  Let me check my notes and see if I agree

 3    with that.  I left the page open where I started.  One second.

 4    Yes, it's true I was on the line just before Petrobras.  Go

 5    ahead.

 6             MR. MOLLER:  I will say, however, that your guidelines

 7    given in response to some of these other issues today such as

 8    to Shell on the disguised document production request and the

 9    favor of declaration and as to Tauber making out the chain,

10    that has been very, very helpful.  There's only one remaining

11    issue I think that we would need some guidance on and that's

12    with respect to the issues in the notice pertaining to warnings

13    issued by Lyondell to a number of the Puerto Rico customers.

14             THE COURT:  What's the question?

15             MR. MOLLER:  The question is whether or not, why that

16    isn't duplicative of the deposition already taken in the MDL of

17    Lyondell on warnings issues.

18             THE COURT:  I don't know that the plaintiffs lawyers

19    have reviewed the designated pages.  Which plaintiffs lawyer is

20    in charge of Lyondell discovery here?

21             MS. O'REILLY:  Your Honor, Mr. Miller, but I can

22    respond for you.

23             THE COURT:  What he's saying is have you read the

24    pages he would point you to on that very subject, warnings by

25    Lyondell in this matter?
```

DANFMTBC

 1          MS. O'REILLY:  We haven't, but I can tell you this:

 2     What the warnings we're looking for are to Puerto Rican-based

 3     entities.

 4          THE COURT:  Maybe there are none.  Maybe Lyondell has

 5     a standard bunch of warnings that they send out as a

 6     manufacturer of MTBE to anybody.  I don't know the answer but

 7     if that's what they do, and if Mr. Moller, he knows better than

 8     I, do these warnings differ by customer or is there a standard

 9     warning, if there is any warning, a standard one that Lyondell

10     uses when it sells neat MTBE?

11          MR. MOLLER:  I think I can offer a declaration to the

12     extent that in the prior deposition and all the other documents

13     that have been provided in the course of MTBE litigation are

14     not sufficient.  We could get a declaration together to talk

15     about whether or not particular customers in Puerto Rico

16     received, you know, individualized warnings or information

17     packets.

18          THE COURT:  So you don't know the answer is what

19     you're saying?

20          MR. MOLLER:  Off the top of my head I don't know that

21     precisely.

22          THE COURT:  Okay, so what I suggest you do in this and

23     that I'd like to get to that last letter and get off this call

24     is do two things.  One, write to the adversary and say I'm

25     referring to the deposition of, you know, whatever, the month,

DANFMTBC

year, month, date, year, taken in this MDL where warnings were

discussed.  If you don't have a transcript I'll provide it to

you, but that's the deposition I'm referring to that covers the

topic of warnings.  In addition, produce a declaration as you

just offered from somebody with knowledge saying whether

there's anything particularized with respect to any customer in

Puerto Rico.  After the plaintiffs receive both of those

communications from you, that is, pointing them to the

deposition testimony that you're relying on and the

declaration, then if they still wish to pursue further

discovery you can object and I can hash out why they should be

permitted or not permitted.  But I don't want to do that in

advance, give the two things that I said and then we'll see

where we are.  All right?

          MR. MOLLER:  Understood, your Honor, thank you.

          THE COURT:  Then I want to get to this last letter and

see if there's anything new in it, and that's the October 22nd

letter from the plaintiffs.

          MS. O'REILLY:  Your Honor, this is Ms. O'Reilly.  I

think you have addressed everything that we raised in our

October 22nd letter.

          THE COURT:  Oh, do you?  Because I had the letter in

front of me, I was going to go through the highlights of it.

          MS. O'REILLY:  I think we're good.

          THE COURT:  Let me just turn the pages and be sure.

DANFMTBC

1          MS. O'REILLY:  Okay.

2          THE COURT:  Defendant's objection to percipient

3    witnesses -- deposition of Chevron, Shell -- okay.  All right,

4    if you're satisfied, I just looked through it, that's okay with

5    me.

6          Then what's left that we have to talk about today?

7    Ms. O'Reilly first.  Why don't you finish?

8          MS. O'REILLY:  One is it appears we inadvertently

9    omitted a name on our October 17 letter, it's one witness his

10   name is Maximo Alvarez.  He was a gentleman who owned Sunshine

11   gasoline.  He came into Puerto Rico and bought up the gasoline

12   at the Puerto Rico stations.  He had a branding agreement with

13   Citgo and he apparently had Citgo branded stations in Florida.

14   We served a subpoena on him as part of our discovery.  We just

15   omitted his name on the letter and would like to add him to the

16   letter.  It's important to under --

17         THE COURT:  That was a letter where you identified the

18   37 real ones sort of?

19         MS. O'REILLY:  Yes.

20         THE COURT:  Okay, so it will be 38.  Done.  What's the

21   next?

22         MS. O'REILLY:  The next question is whether the Court

23   would be willing to provide us with a deadline by which the

24   declaration the defendants have offered to us --

25         THE COURT:  Sure, in the last two days of phone calls?

DANFMTBC

1          MS. O'REILLY:  Correct.

2          THE COURT:  How about a week from this Friday which I

3    think is November 8.

4          MS. O'REILLY:  That would be good, your Honor, but I'm

5    a little concerned that if we can't reach agreement for the

6    declaration that leaves very little time.  The defendants have

7    been saying for weeks they wanted declarations instead of

8    depositions.  I would assume they've been working on them.

9          THE COURT:  Let's find out.  Can the defendants

10   provide all the declarations discussed in the letter by

11   November 4, Monday, actually it's a week from Monday, I skipped

12   a week.  November 4 is a week from Monday.  I think that's

13   fair.  Today is only Wednesday, so that's two weeks minus two

14   days.  Okay, November 4th all declarations offered in the last

15   day and a half and I would ask the defendants through

16   Mr. Riccardulli, who is sort of captain of the team, that if

17   people can get it in earlier please do.  Please don't play

18   games and hold it back.  If you got the declaration already

19   signed send it in.  Don't hold it over.  But no later than

20   November 4.  Anything else, Ms. O'Reilly?

21         MS. O'REILLY:  No.

22         THE COURT:  Somebody else tried to speak?

23         MR. CORRELL:  Charles Correll for Chevron.  At the

24   last status conference you set a date of today for the

25   plaintiffs to provide dates for the depositions and then for

DANFMTBC

1   defendants to provide dates for depositions that were going to

2   go forward after this conference, but the conference took two

3   days.  Do we need to set a new deadline by which all dates are

4   established?

5              THE COURT:  Sure.  What did I say before?  Oh, today?

6              MR. CORRELL:  Today was the day.

7              THE COURT:  Okay, by Friday the 25th, the 25th is the

8   new deadline.  Anything further?

9              MR. HARRIS:  Your Honor, Jim Harris.  Just really

10  quickly on the declarations from defendants.  I've been in

11  discussions with Mr. Gilmour, Mr. Petit and they propose

12  sending me a declaration.  Are the plaintiffs under any

13  obligation, is that something we need to talk about on the

14  31st?  I just don't want to miss a deadline here.

15             THE COURT:  Everyone who promised a declaration to

16  anybody else must do it no later than November 4 and earlier if

17  possible.  Anything else?  Okay.  All right.  So this was

18  another 41 minutes.  Hopefully with all the guidance of the

19  last two days there will be some issues you can resolve with

20  yourself in quick meet and confers.  If there are real issues

21  that still need rulings please go to the special master.  I'm

22  going to be out of town much of next week and then the week

23  after on trial so I won't have this kind of time in the

24  daytime.  Okay?  Okay.  Thank you, bye-bye.

25             (Adjourned)