```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   In Re: METHYL TERTIARY BUTYL        00 MDL 1358 (SAS)
             ETHER ("MTBE") PRODUCTS      00 CV  1898 (SAS)
 4           LIABILITY LITIGATION
                                         Telephone Conference
 5   ------------------------------x

 6                                       New York, N.Y.
                                         October 22, 2013
 7                                       2:30 p.m.

 8   Before:

 9            HON. SHIRA A. SCHEINDLIN

10                                       District Judge

11

12            APPEARANCES

13

     MILLER AXLINE & SAWYER
14        Attorneys for Plaintiffs
     BY:  DUANE C. MILLER
15        MICHAEL AXLINE
          TRACEY L. O'REILLY
16
     JACKSON, GILMOUR & DOBBS
17        Attorneys for Plaintiffs
     BY:  JOHN D.S. GILMOUR
18        NATHAN SHORT

19   McDERMOTT WILL & EMERY LLP
          Attorneys for ExxonMobil
20   BY:  LISA GERSON
          STEPHEN J. RICCARDULLI
21
     SHEPPARD MULLIN RICHTER & HAMPTON
22        Attorneys for ExxonMobil
     BY:  WILLIAM STACK
23
     SEPULVADO & MALDONADO, PSC
24        Attorneys for Total Petroleum Puerto Rico
     BY:  ELAINE M. MALDONADO-MATIAS
25        ALBENIZ COURET-FUENTES
```

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

```
 1                   APPEARANCES

 2

 3    KING & SPALDING
           Attorneys for Chevron USA
      BY:  CHARLES CORRELL, JR.
 4         JAMES J. MAHER

 5    SEDGWICK LAW
           Attorneys for Shell Oil Company
 6    BY:  PETER CONDRON

 7    EIMER STAHL
           Attorneys for CITGO Petroleum
 8    BY:  LISA MEYER

 9    BEVERIDGE & DIAMOND
           Attorneys for Sunoco, Inc.
10    BY:  DANIEL M. KRAININ

11    McCONNELL VALDES LLC
           Attorneys for Sol Puerto Rico Limited
12    BY:  JUAN A. MARQUES-DIAS

13    JAMES B. HARRIS
           Attorney for Petrobas America
14
      BLANK ROME LLP
15         Attorney for Lyondell Chemical Corporation
      BY:  JEFFREY S. MOLLER
16
      BAKER BOTTS LLC
17         Attorneys for Hess Oil Virgin Islands
           Corporation, Hovensa LLC, and Hovic
18    BY:  STEVEN L. LIEFER

19    FULBRIGHT & JAWORSKI LLP
           Attorneys for Chevron Phillips Puerto Rico Core
20         and ConocoPhillips
      BY:  STEPHEN C. DILLARD
21
      BOWMAN AND BROOKE LLP
22         Attorneys for Idemitsu Apollo Corporation
      BY:  JENNIFER L. BULLARD
23

24

25
```

1                    (Case called)

2              THE COURT:  Good afternoon.  Let me state that I now

3    have three letters.  The plaintiff submitted a six-page single-

4    spaced letter on October 18th with 285 pages of exhibits the

5    defendant submitted a letter on October 18th, a 10-page single

6    spaced letter with 17 pages of exhibits.

7              Today the plaintiff submitted I guess a reply letter

8    dated October 22nd with some 40 pages of exhibits.  It is not

9    realistic to think anybody can read a letter that walks in the

10   door the same day as the conference.  The reply letter is seven

11   pages single-spaced, as I said, with 40 and more pages of

12   attachments.  There is far too much material here.  It is not

13   appropriate for a telephone conference.  It also is a sign that

14   the discovery is out of hand in this case, disorganized, and

15   there's got to be a motive behind it.

16             This is the oldest case around.  I know this case is

17   about seven years old, six or seven years old.  From reading

18   these letters you would think this was six months into the case

19   instead of six years into the case.

20             There is something wrong going on here in terms of the

21   scope of this deposition discovery.  We have had years of

22   document discovery.  We have had months of deposition

23   discovery.  On the eve of the close of discovery people are

24   serving virtually tens if not hundreds of notices on each other

25   for depositions where the Federal Rules of Civil Procedure say

1     ten depositions presumptively per side unless the Court orders

2     more.  I don't ever remember approving numbers like I'm seeing

3     in these letters.  So there are really a lot of problems.

4          All that introductory being said, I gather from at

5     least the plaintiffs' letter that a lot of these issues are

6     already before the special master, and there is really no point

7     in two of us dealing with the same problems.  It is just a

8     waste of resources.

9          If the special master has been supervising the

10    discovery in the Puerto Rico matter, I don't know why you came

11    here instead of going directly to the special master.  To kick

12    the ball back and forth between the district court and the

13    special master and the district court and the special master is

14    just another long delay.

15         Now that you have been written all these letters here,

16    put them on my plate, I don't know whether it makes sense to

17    say now we are going to have another delay where I send all the

18    same letters to the special master and the special master sits

19    down with everybody and resolves every one of these endless

20    disputes, some of which are bigger and some of which are

21    smaller.

22         As to this last extension of discovery, I believe I

23    said that's it, no more, discovery is over.  And there is no

24    way, again, that you are going to complete all this by that

25    date.  I think the date is sometime in December.  December 6th

 1   is the date my clerk says.  That's five or six weeks away, and

 2   you have tons of disputes and tons of notices out.

 3          Clearly, the parties here want to be in permanent

 4   discovery, never want to finish, never want to call an end to

 5   this and bring the case to resolution one way or the other.

 6   They just want to go on with endless discovery.  It can't be.

 7   And that is the beginning.

 8          I'm willing to hear the parties discuss whether it

 9   should be in the district court or before the special master.

10   Then I will try to turn to some of the specifics that I have in

11   the letters before me.  I have read through most of the

12   material, not all of today's material.  Does anybody want to be

13   heard on this issue of why it is here, not there, or why it

14   should be here, not there, and what is the fastest way?

15          MR. RICCARDULLI:  Stephen Riccardulli, counsel for

16   Esso and ExxonMobil and also defendants' liaison counsel.  The

17   issue that we brought to you before the last status conference

18   was the issue of the 121 notices that plaintiff served on the

19   last day of the discovery schedule.

20          THE COURT:  Correct.

21          MR. RICCARDULLI:  We brought that issue to you in the

22   first instance, which I think led to this conference call being

23   scheduled.

24          THE COURT:  Right.  But these letters are way beyond

25   that single issue identifying which of the 120 or 121 the

1    plaintiffs really wanted to push and which are really just

2    placeholders.  That dispute is in these letters, but that is

3    only one of 25 disputes.

4              MR. RICCARDULLI:  Yes, your Honor.  I am not aware of

5    the other issues that are raised in these letters other than

6    perhaps one discovery motion that related I think to the Shell

7    defendants being brought to the special master.  I'm not aware

8    of any of these other issues that are contained in these

9    letters being already brought before the special master.

10             THE COURT:  That said, should this all go before the

11   special master?  Is he more available to meet with you very

12   promptly later this week or first thing next week and just if

13   it takes four hours, work through every bit of it and solve it?

14   Where should these disputes be?

15             MR. RICCARDULLI:  Your Honor, from my perspective, we

16   are willing to go to the special master, and I'm happy to check

17   with him.  I could send him a note now seeing what his

18   availability is, if the Court wants to refer this to him for

19   resolution.

20             MS. O'REILLY:  This is Ms. O'Reilly, if I may address

21   the question.

22             THE COURT:  Go ahead.

23             MS. O'REILLY:  You put your finger on one of the key

24   issues that we raised in our reply brief, and that is that the

25   submission to you invited you to delve into the depths of

 1    discovery, which is really not an appropriate use, in our

 2    opinion, of the Court's time.

 3          If the plaintiffs feels that defendants' objections or

 4    unwillingness to produce a witness on certain designated issues

 5    impedes discovery, then we can take these issues to the Special

 6    Master Warner.  We are still working through deposition

 7    notices, taking witnesses.  We may be able to resolve these

 8    questions through witnesses that are being deposed without

 9    quarreling, designating those issues.  I believe some of the

10    defendants will resolve it to our satisfaction.

11          But they want a ruling on objections they have made

12    even though we haven't sought to compel a witness on those

13    issues.  I think it is not a correct use of the parties and the

14    court's time, going forward with part of the scheduling of

15    depositions and weaning out those that don't need to be taken

16    and that can be done by the parties until we reach an absolute

17    impasse.

18          THE COURT:  That is not the only kind of issues that

19    are raised here.  There are some broader issues.  Maybe I can

20    give guidance on the broader issues and then refer what is left

21    to the special master when it is very detailed.  But I don't

22    want to see slippage.  There are really only five weeks left,

23    and there is an extraordinary amount of disputes in these

24    letters.

25          I agree with you that some of these disputes will go

1     away on their own and are going away, as you work with

2     individual defendants.  But some of the issues are broader and

3     I probably should take it up.

4            With that introduction, I will spend maybe a half

5     hour, and then what is left I will refer to him and ask that he

6     be available promptly.  I know he has been on a long trial, but

7     I think it is over.

8            I will start with the plaintiff's letter solely

9     because it came in first.  The first objection is to deposing

10    attorneys who have been active participants in the litigation

11    team for the plaintiffs.  I would like one defense counsel to

12    tell me why you need to depose attorneys.

13           It is disfavored.  It is unusual.  It ends up with

14    nothing but objections of privilege and work product,

15    deliberative process and everything else.  Instinctively,

16    plaintiffs are right, you shouldn't do this unless you can show

17    some absolutely unique necessity that these are the only people

18    with knowledge on some specific issue that doesn't relate to

19    their role as an attorney.  What might that be?  Which one

20    defense counsel is going to quickly address that?

21           MR. RICCARDULLI:  Your Honor, I can address this

22    issue.  We have noticed the deposition of three lawyers.  I

23    have conferred with the defendants this morning, and we are

24    willing to withdraw the notice as to one of the three, and that

25    is Ms. Blanche Gonzalez.  I can direct the other two lawyers

1   that we noticed.  The lawyer is Wandyner Burgos Vargas.

2           For the individual who verified plaintiffs' responses

3   to interrogatories regarding natural resource damages, we have

4   met and conferred and requested from plaintiffs after we

5   noticed this individual's deposition and requested that they

6   replace that verification with a nonlawyer employee for the

7   commonwealth, and that we would be willing to accept that

8   certification or verification so we could depose that

9   individual.  Plaintiffs have refused that offer.

10          We have since served a 30(b)(6) notice on natural

11   resource damages, and the letters you received on the 18th

12   plaintiffs are objecting to that notice in total as well.  So,

13   at this time we can't depose the individuals who verified the

14   interrogatory responses on behalf of the commonwealth, and they

15   are objecting to producing a 30(b)(6) corporate witness on the

16   topic of natural resource damages.

17          If plaintiffs would put up a nonattorney and replace

18   that verification, we could avoid having to depose the lawyer

19   in that instance.

20          THE COURT:  Right.  But then the person who is the

21   substitute for verification would be subject to the 30(b)(6)

22   notice to which they are objecting anyway.  We have to turn to

23   that.  It is really not a matter of who verifies but what you

24   want to ask this damages expert.  I'll put that off until I get

25   to that part of the letter.

1            What about DeJesus, the other attorney?

2            MR. RICCARDULLI:  Mr. Flores DeJesus was quoted last

3    month in a number of newspapers in Puerto Rico giving the

4    following quote.  "People should not be alarmed given that the

5    water that they consume is free from the presence of this

6    additive MTBE and is fit for human consumption.  The locations

7    subject to the lawsuit have not been nor will be in contact

8    with the bodies of water used for supplying local water

9    consumption."

10           These statements are directly contrary to the

11   allegations and other positions that either fact witnesses or,

12   frankly, the obligations that the plaintiffs have taken in this

13   litigation.  We want to depose Mr. Flores DeJesus about the

14   basis for his statement.

15           THE COURT:  Very simply, denied.  You may not take

16   that deposition.  Should that person be listed as a trial

17   witness to say what he happened to say to the press, I'll worry

18   about it then.  You can depose him before he ever says it under

19   oath at trial.  I don't really care what he says to the press.

20   It is not evidence.  It is not the position in the complaint,

21   as you said.

22           We can't waste time.  I'm done with the attorneys.  I

23   will turn to the one middle one, the verification issue, when I

24   get to damages.

25           Now let's talk about the Department of Health

1    employees.  The plaintiffs write that seven of them have no

2    personal knowledge regarding the trial sites and they are all

3    offering declarations that would say I have no personal

4    knowledge of any of the trial sites.

5         There is no objection as to Mr. Torres, so you can

6    have Torres.  In fact, according to the letter, he is scheduled

7    for tomorrow.  And they can't find two of the people you want,

8    Morales and Rivera.  They have tried.

9         What is left to talk about in this paragraph of the

10   plaintiffs' letter?  If the plaintiffs' lawyers tell me that

11   seven people are willing to give you declarations that they

12   have no personal knowledge of MTBE at the trial sites, that's

13   it.  We cannot waste time having seven useless depositions.

14        MS. GERSON:  Your Honor, Lisa Gerson for ExxonMobil

15   and Esso.  I can speak on this topic.  We will go to the seven,

16   leaving out Mr. Torres and the two that are former employees.

17   Of the seven, two, Mr. Hernandez and Ms. Mendoza, were

18   identified in another deposition as having responsibility on

19   several topics that are not necessarily only on MTBE, as

20   dealing with the drinking water revolving fund, that is Mr.

21   Hernandez, and Ms. Mendoza as having knowledge of being the

22   person in charge of private wells and nonprofit water systems.

23        Our position is that plaintiffs have waived their

24   objections to those two.  In an email for plaintiffs' counsel,

25   we were given a proposed declaration.  But then we were told

1   that if defendants continue to maintain that the depositions of

2   these two individuals are necessary, they are available on the

3   following dates.  That is actually next week.  We confirmed

4   that we will be taking them next week.  So we were surprised to

5   see those being objected to at this point.

6            THE COURT:  And the remaining five?

7            MS. GERSON:  The remaining five are each of the

8   regional coordinators for an area where there is a trial phase.

9            THE COURT:  They are going to give you a declaration

10   saying they have no knowledge regarding MTBE or the trial

11   sites.  That is their testimony.  To cut to the chase, you can

12   have the two, you can't have the five.  You can have the one

13   tomorrow, and the two missing are missing.  I'm going right on

14   to the air quality issue.

15            I read the plaintiffs letter.  I don't know that I

16   really have a response to it, so to speak, because you had so

17   many issues to raise in the defense letter.  But judging solely

18   from the plaintiffs' letter this issue about lead is just not

19   an issue in this case.  Why are the defendants wasting time on

20   an issue that is not an issue in this case?

21            MR. STACK:  Your Honor, William Stack for ExxonMobil.

22   There are two aspects of this.  First and foremost, Puerto Rico

23   is not an RFGC.

24            THE COURT:  Correct.

25            MR. STACK:  We know that they are supplied with

1    conventional gasoline.  As your Honor knows from prior cases

2    that you have been involved in, and discovery, conventional

3    gasoline did have some MTBE in it to replace lead and to

4    maintain octane levels.  We are seeking basic information

5    concerning knowledge of the commonwealth concerning air quality

6    effects on reducing lead in gasoline.

7         THE COURT:  Why do you need that?  This letter

8    convinces me that it is not an issue in this case.

9         MR. STACK:  It is an issue in this respect, your

10   Honor, in that we are at some point going to have to address

11   what benefits they have accrued from the use of MTBE in

12   gasoline, whose only use was to maintain octane and which has

13   been regulated.  We have spent some time here today that there

14   are limitations on the percentage of MTBE that can be in

15   gasoline in Puerto Rico because there are limits for vapor

16   controls and gasoline journals and gasoline shipping

17   operations.  So it is germane because they were controlling

18   vapor emissions from these large terminals and from these truck

19   loading facilities.

20        THE COURT:  That's fine.  That's got nothing to do

21   with what this paragraph seems to be about.  They think you're

22   trying to show that MTBE was a better, safer octane enhancer

23   than leaded gasoline.  But then they go on to say it wasn't

24   available anyway, lead wasn't available as an octane enhancer

25   during the trial period so lead was not a legally available

1   substitute.  Maybe that is not your point.  They think that is

2   your point, that you want to show that there was a choice here.

3   But they are saying there was no such thing, there was no

4   possibility of lead being a legally available substitute at the

5   relevant time period.

6           MR. STACK:  That is correct.

7           THE COURT:  Then I really don't understand the

8   argument of why this is relevant.  To cut to the chase, no.

9           Let's move on to 30(b)(6) regarding natural resources.

10  The plaintiffs' letter says this is just plain overbroad.  You

11  are seeking information regarding all natural resources in the

12  commonwealth.  You are not even limiting it to trial size, not

13  limiting to it fresh water, which are the only natural

14  resources involved here.  This seems to be an overbreadth

15  question.

16          Then they say that they already produced the sole

17  estimate of groundwater natural resources damages that was

18  previously prepared.

19          MR. STACK:  We have had discussions with plaintiffs'

20  counsel.  We have learned from them that they are apparently

21  limiting their claims in this case to groundwater, perhaps some

22  surface water.  As a consequence, we were willing to talk to

23  them about the establishment of base lines as well as the

24  extent of natural resource damages in and around the trial

25  site.

1          THE COURT:  So you think you can narrow the request

2     here and it won't be overbroad?

3          MR. STACK:  That is correct, your Honor.

4          THE COURT:  Then I am going to move on.  Now we are up

5     to the damages, which I think was taking us back to that

6     attorney verification idea.  There the plaintiffs say that the

7     defendants are seeking commonwealthwide damages and not

8     limiting to the trial sites.  They write that if it is allowed

9     at all, it should be limited to the trial sites at this time.

10    And they say that plaintiffs have identified in written

11    responses the so-called historic out-of-pocket costs and that

12    any other damages will be explained by expert reports and

13    testimony and we should put this off till we get to that.

14          Again, the way the notice is phrased, it is so broad.

15    It seeks all information regarding plaintiff's implementation

16    of about six different acts:  The initiation of the litigation,

17    the establishment of water clean-up, the development of EQB --

18    what is that, quality control guidance? -- the ban on MTBE, and

19    underground storage tanks.  It is just not one subject.  It

20    really is too broad.

21          It strikes me that the plaintiffs have a good point

22    that if they have already explained to you the historic

23    out-of-pocket costs at the trial sites, the damages analysis is

24    always for an expert.

25          MR. STACK:  We have had discussions with the

1  plaintiffs concerning this.  We have offered to narrow this to

2  the trial sites and to address the issues where we believe

3  there are still open questions regarding historic past costs

4  for assessment, mitigation, and/or alternative water in

5  relation to the trial sites and the areas around the trial

6  sites where they have identified threatened wells.

7       THE COURT:  You have addressed all the arguments

8  except for their point about expert testimony.  Why doesn't the

9  bulk of this wait for a report from a damages expert?

10      MR. STACK:  Your Honor, I think in terms of the

11 factual information, we are entitled to obtain information from

12 a representative of the commonwealth to verify our

13 understanding both for purposes of our expert analysis and also

14 for purposes of examining the basis of their expert opinion.

15      THE COURT:  The expert opinion isn't prepared yet.

16 You are sort of jumping the gun.  As far as getting to the

17 underlying facts, all they can give you now, they say, is out-

18 of-pocket costs at the trial sites, and they have.  I don't

19 know what more you think you can get before their expert has

20 given the report.

21      Aren't the reports staggered?  Won't you have the

22 plaintiffs' damages expert before your expert report is due?

23      MR. STACK:  The answer is I believe it is established

24 that way, yes, your Honor.

25      THE COURT:  You will see then what the expert relied

1     on, what underlying facts he or she used to prepare the report.

2     I don't know what more they can give you now.

3              MR. RICCARDULLI:  If I may, I wanted to add one point

4     that Mr. Stack may not be aware of.  It is the issue that

5     resulted from a deposition that I was in this afternoon and

6     where we did question a fact witness about certain past damages

7     and cost issues.  Plaintiffs kept lodging the objection that

8     this was not a 30(b)(6) witness or corporate representative so

9     that her answers couldn't bind the commonwealth.

10             THE COURT:  Mr. Riccardulli and Ms. O'Reilly for the

11    plaintiffs, you can't have it both ways.  Either you are going

12    to put a 30(b)(6) witness up who will explain whatever proof we

13    now have on damages or you are going to have to let these

14    people give the information and not object.  To the extent that

15    there is proof of damages incurred now in or around the trial

16    sites, it is not a proper objections to this isn't a 30(b)(6)

17    witness and can't bind the commonwealth.  That is fine if

18    you're going to give them a 30(b)(6) witness fast, but you

19    can't have it both ways.

20             Which of you is taking responsibility for either

21    dropping that objection or immediately producing a 30(b)(6)

22    witness who can talk about the damages incurred to date?  I

23    want to hear from some plaintiff's counsel.

24             MR. SHORT:  We would be fine if the notice was limited

25    to the trial sites and those historic costs.  We would produce

1    a 30(b)(6) witness.

2              MR. RICCARDULLI:  Very good, your Honor.

3              THE COURT:  Done.  Get that date and get it done.

4              Now we are up to the Department of Transportation.  In

5    their objections they say you seek commonwealthwide information

6    rather than trial sites.  They point out that the Department of

7    Transportation is a consumer of petroleum products and there is

8    nothing they are going to add.  What do you want from the

9    Department of Transportation and public works?

10             MS. GERSON:  Your Honor, Lisa Gerson for Exxon and

11   Esso.  We certainly are not seeking site-specific or every site

12   in the commonwealth information through this notice.  Really it

13   is not a site-specific notice we are after.  Plaintiffs state

14   that the Department of Transportation is simply a consumer of

15   petroleum product.  What they don't say is they are also a UST

16   owner and operator.  What we are trying to get with the issues

17   here is their knowledge of MTBE warnings on maintenance of

18   USTs.

19             THE COURT:  Maintenance of their USTs, if any, at

20   trial sites, that's what you can get, not commonwealthwide now.

21             MS. GERSON:  Your Honor, we were looking at this one

22   for policies, commonwealth policies, as supposed to specific

23   USTs.

24             THE COURT:  The Department of Transportation, which is

25   a customer of the petroleum products, why should they have the

1    policies?

2            MS. GERSON:  Your Honor, as you know, there is a

3    failure to warn claim.

4            THE COURT:  Yes.

5            MS. GERSON:  What we are after is what did the DOT

6    know, what were they told by the Commonwealth of Puerto Rico,

7    by the environmental quality board, about how to handle

8    gasoline, how to store MTBE.

9            THE COURT:  As a consumer, as a user, what warnings

10   did they receive?

11           MS. GERSON:  Right.

12           THE COURT:  Stop.  That seems reasonable.  Plaintiffs'

13   counsel, produce somebody from the DOT who can say nothing more

14   than that, what warnings did they receive, what directives were

15   they given as a consumer.

16           MR. SHORT:  Your Honor, our putting up a witness for

17   early knowledge on behalf of the commonwealth --

18           THE COURT:  I just ruled in favor of the defense on

19   this.  Find somebody from DOT who can say what they were told

20   in terms of warnings or regulations or directives on how to

21   handle.  They did have some USTs, they did use petroleum

22   products as a consumer, fine.  What were they told by the

23   commonwealth?  One deposition, a person with knowledge, that's

24   the end of it.

25           Now PRASA.  The defense noticed ten fact witnesses to

1   talk about trial sites.  Oh, only three of the ten apparently

2   relate to trial sites.  I see.  According to plaintiffs, the

3   remaining seven are apex witnesses holding executive positions

4   and the topics in the notice are not focused on trial sites but

5   involve general information.

6          The bottom line is I would never allow seven

7   depositions of so-called apex witnesses.  If three of these

8   people have information about trial sites, you can have those

9   three.  Then you can pick one of the seven if you have to, to

10  say what can they say about the topics in your notice, such as

11  PRASA's knowledge and practices with respect to MTBE taste and

12  odor complaints, capital improvement, consumer confidence, all

13  the things they write about, but not seven.  That's ridiculous.

14         It is frankly disturbing to listen to this

15  misbehavior.  Pick one.  You can have, quote, an apex witness

16  but not seven.  You can have one.  You can have the three who

17  know about the trial sites, you can have one who knows about

18  the policies.  That is the ruling on that.

19         Now, what is this about renoticing depositions of

20  Batista and Aiala, who were both deposed in 2011?  Why do they

21  have to be redeposed?  There is not a lot of time here, folks?

22  Why are we redeposing?

23         MR. RICCARDULLI:  We deposed the two individuals in

24  2011.  You may recall this was at a time before the plaintiff

25  had collected all of their ESI productions in much of their

1   document discovery.  When I went through the list this morning,

2   I think it may be about 30 productions of documents in total

3   came after these two witnesses were deposed.

4          Frankly, these two witnesses were either the director

5   or sort of subdirector or deputy director of the relevant

6   department, and their names are on many of the documents that

7   were produced subsequent to their depositions.  That is why we

8   would ask them to be redeposed.

9          THE COURT:  So it is to supplement, to update with

10  materials produced after the last deposition?

11         MR. RICCARDULLI:  It is.

12         THE COURT:  Who from the plaintiffs team can say why

13  they shouldn't have four hours each to each update it since

14  they signed a number of documents that were produced after

15  2011?  Instead of fighting about it, give them half a day each

16  and be done with it.

17         MR. SHORT:  Your Honor, I think we would be willing

18  to, to the extent we can locate them.  They are currently

19  former employees.

20         THE COURT:  Try to locate them and tell them it is a

21  half day each and get it done.

22         Now I am going to turn to the defense letter, which is

23  long and full of exhibits.  I want to try to deal with some of

24  the topics.

25         The plaintiffs did send a letter on October 17th

1   identifying 34 depositions, but they also state that the

2   remaining notices remain outstanding.  I can't have an open-

3   ended situation like that.  Actually, I have to update that.

4   Plaintiff provided the defense with notices of 27 depositions

5   they wish to take.  Well, I don't know.  I don't know how the

6   27 relate to the 34.  Let's go back to the first one, the

7   placeholder one.

8           On October 17th you identified 34.  Do you want the

9   rest to be remain outstanding.  The rest is, what, 90?  I can't

10  have 90 notices hanging around as a threat or a sword over

11  people's heads.  That is ridiculous.  It cannot be done.  I'm

12  going to strike them en masse.  I want you to identify which of

13  these 121 you really need.  Is that the 34?  I'm asking my

14  clerk.  Is that after I told you pick which of the 121 you

15  really need?

16          MS. O'REILLY:  Your Honor, yes, the 34 that we

17  identified are the ones that we believe we need based on the

18  discovery that we have obtained to date.  As you know,

19  defendants have indicated that some of these people are former

20  employees and may not be --

21          THE COURT:  I don't know what 121 minus 34 is, but it

22  sounds like something like 90.  The remaining 90 notices are

23  stricken but with this exception.  On an individual basis, when

24  you complete one or more of the 34 and can make a case as to

25  why you need somebody not in the 34 by name and convince me or

1    the special master that you are right, you will be able to take

2    that person even though there is as of now no outstanding

3    notice, because I just I struck all 90.  But on a case-by-case

4    need basis, if I say yes or Special Master Warner says yes, you

5    got it.  But these 90 are going.  That's the ruling.

6          The next topic, the list of 27 depositions.  I don't

7    know what 27 that is.  You are objecting to 18 of them.  The

8    defendants object to 18 on the ground that defendants don't

9    control the witnesses, because they are former employees, and

10   plaintiffs haven't served timely subpoenas.

11          I saw in the response letter today that the plaintiffs

12   wrote that you took the opposite position with respect to the

13   commonwealth.  They don't have to serve timely subpoenas.  They

14   thought you were going to cooperate and try to find former

15   employees.  Only when you have told them you have tried and

16   can't should they have to make the effort to subpoena people.

17          I overrule the defendants' objection to 18 on the

18   grounds that they are former.  What I am directing the

19   defendants to do is to make an effort to find and produce them

20   and to notify the plaintiffs that on an individual basis we

21   have tried, we can't find Ms. So-and-so, you will have to

22   subpoena that person, and we will give you the last address we

23   have for that person.  So there is no failure to serve timely

24   subpoenas.  That is the ruling.

25          Now we go on to the individual 30(b)(6) notices.  I

1    start with Chevron, I don't know why it is called Chevron

2    Estrella Puerto Rico, a notice dated September 13th.

3    Basically, Chevron Estrella Puerto Rico says it only operated

4    convenience stores and car washes, it never operated service

5    stations, it hasn't supplied gasoline with or without MTBE, and

6    the trial site in this case that is called Chevron never had a

7    Chevron Estrella convenience store.  Why shouldn't this one be

8    stricken and we move on?

9            MS. O'REILLY:  Your Honor, I believe Mr. Miller would

10   like to address this one.

11           THE COURT:  Just Chevron Estrella, Mr. Miller, what is

12   it?

13           MR. MILLER:  Your Honor, I talked to counsel for

14   Chevron and I explained it could be a single deposition of

15   Chevron Puerto Rico and Chevron Estrella simply to confirm that

16   the people who are physically at the station dealt with the

17   customers and dealt with any alarms about releases of gasoline,

18   never knew about MTBE.

19           THE COURT:  No, we don't need that.  Chevron Estrella

20   is a convenience store and carwash.  It wasn't at the trial

21   site.  We on a need to move on.  I can get to Chevron Puerto

22   Rico in a minute.  But Chevron Estrella doesn't need to produce

23   a special witness to say we do convenient stores and car washes

24   and we weren't on that Chevron site, we didn't have a

25   convenience store there.  It is a waste of time.

1           If you want a one-paragraph declaration from Chevron

2   Estella saying what I just said, that's fine, but I don't need

3   to convene a deposition to have somebody say that in one and a

4   half minutes.  I didn't even take me one half minute, but I

5   speak fast.

6           Chevron Puerto Rico.  The objection is that this

7   latest notice is duplicative of a notice on September 5th, the

8   September 13th is duplicative of the September 5th one, and

9   Chevron produced a 30(b)(6) witness but plaintiffs didn't ask

10  the ten questions that were included on the notice, then they

11  want to reopen.

12          My view of that one is if plaintiff had the

13  opportunity to ask the ten questions and didn't, they probably

14  ran out of time.  That doesn't give them a right to do this

15  deposition again.  They are limited to written questions.

16          Plaintiffs, if you want to get those ten questions

17  answered that you could have asked then, you can take a

18  deposition on written questions.  Just ask the ten questions in

19  writing and you will get a written answer.  That's it.

20          Let's go on to CITGO.  CITGO has three objections.

21  The first one says they didn't sell, supply, or deliver

22  gasoline to retail service stations.  I don't know quite what

23  that means.  It is called issue 23, and there are too many

24  issues for me to go back to the underlying documents.

25          What's that about?

1          MS. MEYER:  Lisa Meyer for CITGO.  First, I would like

2     to say we have not gotten a date confirmed from the plaintiffs'

3     counsel yet for the deposition and we haven't met and conferred

4     with them on these objections.  We are happy to do that first.

5          THE COURT:  I thought I could try to give guidance to

6     get ahead of it.  If you didn't sell, supply, or deliver

7     gasoline to retail stations, what do plaintiffs want to ask you

8     about information about selling, supplying, and delivering to

9     stations, if you didn't do it?  I guess the only guidance I can

10    give is when you meet and confer, if that's the fact, then

11    there shouldn't be any question about it.

12         They want to ask you about your document collection

13    efforts.  I want to talk to the plaintiffs about that.  My

14    instinct is no.

15         Why should you be allowed to ask CITGO about their

16    document collection efforts?  What reason have they given you

17    to believe that they didn't do a proper job of collecting

18    documents?

19         MS. O'REILLY:  Your Honor, we have found that a number

20    of defendants have defined the scope as only documents

21    mentioning MTBE.

22         THE COURT:  Ask your adversary.  Ask Ms. Meyer if she

23    did that.  This is not necessary at a deposition.  You people

24    are abusing the notion of depositions.  I have lost patience.

25    Call Ms. Meyer up, say, Ms. Meyer, when you told your client to

1    do a search, did you limit it to only documents that had the

2    word "MTBE"?  They will tell you an honest yes or no and you

3    will have your answer.  No deposition, period.  Forget that.

4         Let's get to the next one.  This one is a repeating

5    one.  I found this in a number of the 30(b)(6) notices.  They

6    object to questions about corporate relationships, saying you

7    haven't pled a piercing the corporate veil allegation in the

8    third amended complaint.  A number of the people made that

9    objection, so I wanted to handle that as a group.  That is not

10   just CITGO.  It comes up in a number of them that say why are

11   you going into corporate relationships, you haven't pled the

12   corporate veil.

13        What is this all about?

14        MR. GILMOUR:  Your Honor, John Gilmour.

15        THE COURT:  For the plaintiffs, right?

16        MR. GILMOUR:  Yes, your Honor.

17        THE COURT:  Go ahead.

18        MR. GILMOUR:  If I may give you an example.

19   Relatively recently, last month, we had a deposition of Esso

20   Puerto Rico, at which we found out that there was a lot of

21   corporate interrelationships between a number of Exxon-related

22   trading companies and other Exxon entities.  Part of this is to

23   determine the intercorporate relationships.

24        THE COURT:  To what end, Mr. Gilmour?  These are big

25   companies.  They have a lot of corporations and a lot of

 1    interrelationships.  To what end is all this?

 2              MR. GILMOUR:  Your Honor, we found out that Esso

 3    Puerto Rico had sold its assets in 2008, it has no remaining

 4    income-producing assets, it has no remaining source of income,

 5    and it has borrowed in excess of $100 million from the parent

 6    company Exxon and testified that they have no way to repay that

 7    money nor any future.

 8              THE COURT:  What is this?  Is this a judgment

 9    collection action?  If you win the case and someday somebody

10    finds Esso liable, you will get post-judgment discovery to

11    collect your damages.  Is that what you are telling me, that

12    you are worried that you might win against a defendant who has

13    no money?

14              MR. GILMOUR:  Yes, your Honor.

15              THE COURT:  Great.  But you worry usually about that

16    after you win.  When you get a judgment, I will allow post-

17    judgment discovery so you can collect your money.  There is no

18    reason to do that now.  Now you are proceeding against Esso

19    Puerto Rico, if that is what it is called.  If you win the case

20    someday, you win a hundred million dollars in damages, they say

21    I have no money, you get post-judgment discovery on where the

22    money went.  That is the way it's done.

23              All the people who objected on that basis, fine, I

24    have sustained the objection for now.  But I say very clearly

25    on this record that someday if somebody says, I have no money,

1  let's find out who has the money and how they are related and

2  whether they are responsible.

3         Now turning to Esso.  The first one on Esso, issue 7,

4  says Esso has already provided codes and descriptions of each

5  gasoline product delivered to the trial sites from 1995 to

6  2008.  I don't know what you are asking for in addition to what

7  Esso has already given you on issue 7.

8         MR. MILLER:  I'm taking the deposition of Exxon and a

9  witness that also is testifying on behalf of Esso.  I asked him

10  for the product codes.  He doesn't have them.

11         THE COURT:  But you do.  According to this letter,

12  they have already provided you the codes and descriptions of

13  each gasoline product delivered to the trial sites for 13

14  years.

15         MR. MILLER:  It says been able to confirm which

16  products contain MTBE.  I have offered to work it out with

17  counsel in the form of a declaration.  I don't have it.

18         THE COURT:  Who wrote the letter that said that

19  plaintiffs have already provided codes and description of each

20  gasoline product delivered to the trial sites?  Who wrote that?

21         MR. RICCARDULLI:  I wrote the letter.

22         THE COURT:  Fine.  Do those codes and descriptions

23  describe which ones contain MTBE?

24         MR. RICCARDULLI:  I don't believe they describe which

25  products contain MTBE.

1          THE COURT:  That is kind of critical, don't you think,

2    Mr. Riccardulli?  Why don't you amend that.  Mr. Miller said he

3    would take it as a declaration.  Get somebody to provide a

4    declaration that includes codes and descriptions regarding

5    whether or not the product contained MTBE from 1995 to 2008 and

6    you will be done with that issue.  That's it.

7          MR. RICCARDULLI:  Your Honor, if we have the

8    information, we will give it to them.

9          THE COURT:  You had better find the information.

10   Surely if you found codes and descriptions, you know whether it

11   contained MTBE or not.

12         MR. RICCARDULLI:  Your Honor, just for the record, the

13   code refers to conventional gasoline or unleaded gasoline.  My

14   understanding is it doesn't necessarily indicate whether or not

15   a particular batch of gasoline contained MTBE code.  If it

16   contains the information, we will give it to them if we haven't

17   already.

18         THE COURT:  Do it and do it fast.  The discovery

19   deadline is coming up, and then we have to turn to experts and

20   then trial if we can't settle it.

21         Issues 20 and 21, this is redundant because Esso

22   already provided a list of locations.  They had negotiated

23   search terms and provided search results.  So I'm not sure what

24   issues 20 and 21 are, but Esso is saying they have already

25   given you this information.

1            Who from the plaintiffs' side wants to be heard?  No,

2   I guess would be defense.  I'm confused now.  Why isn't this

3   sufficient?  Right, do I want to speak to plaintiffs.  It says

4   they have already done this.  Why aren't plaintiffs satisfied

5   with what they have already gotten?

6            MR. MILLER:  I believe that the notice that is

7   referred to here is the one I'm trying to depose a witness on

8   now.

9            THE COURT:  I'm talking about issues 20 and 21, that's

10  all I know them by, where they say they have already given you

11  custodians, locations, search terms, and search results.  What

12  more are you trying to find out?

13           MR. MILLER:  The notice isn't about ESI.  Those two

14  issues may encompass ESI, but that is not the purpose of those

15  issues.

16           THE COURT:  What are issues 20 and 21.

17           MR. MILLER:  We are trying to get the documents that

18  we need concerning the gasoline supplies.

19           THE COURT:  I don't know enough about issues 20 and 21

20  to figure out what to do here.  The way I had it summarized, it

21  had only to do with USI search terms and search results.  If

22  you are saying there are documents beyond electronic, there are

23  old paper documents that you haven't gotten that identify

24  product information that you need, I can only you have to meet

25  on confer.

1          22 to 25 we have already talked about.  This is

2    supposedly again this corporate veil issue.  I just discussed

3    that.

4          Finally, for the first time, but it comes up again,

5    Esso objects to issue 26 because it says you are seeking

6    authentication of all documents produced by Esso.  That does

7    seem a little ridiculous.  What do you mean by that?  What are

8    you trying to find out?  Is this Mr. Miller again?

9          MR. MILLER:  Yes, your Honor.

10         THE COURT:  What do you want them to do to

11   authenticate every document they ever produced?  What do you

12   want them to say?

13         MR. MILLER:  I would like them to do a declaration on

14   their letterhead that their Bates number are authentic or give

15   me a basis.  These are the documents that fit specific

16   categories of the 30(b)(6) notice that are highly relevant.

17         THE COURT:  Basically, you don't want to have an

18   authentication issue at trial.  You want them to essentially

19   concede that anything they produced to you is authentic and

20   they are not going to object on the basis of authenticity if

21   you use it at trial or motion, is that it?

22         MR. MILLER:  Yes.

23         THE COURT:  Good idea.  I'm with you on that.

24   Somebody from Esso, who wants to speak, should give some kind

25   of a declaration saying if we produced it from our files, we

 1   are going to say it's authentic and we are not going to contest

 2   authenticity at trial or on motion.

 3          MR. RICCARDULLI:  Your Honor, I guess the issue is if

 4   they are talking about specific documents.  But we may have

 5   produced documents that we didn't create that were in our

 6   files.  That is the problem with authenticating stuff.  We are

 7   certainly willing to say we produced it, but we can't

 8   necessarily authenticate everything we produced in the

 9   litigation.

10          THE COURT:  I don't know about that.  What you are

11   really saying is we are not planning to object to authenticity.

12   If you produced, I make this up, 10,000 documents let's say

13   from Esso, you can't put the plaintiffs through the trouble of

14   having to go around trying to authenticate all 10,000 when

15   essentially you are saying that anything that originated with

16   us we agree is authentic; anything in our files that came from

17   somebody else, we are not going to contest authenticity if it

18   came on somebody else's letterhead.  If we have a stray piece

19   of paper with handwritten notes, that is a different issue.

20          You need to reach an accommodation, an accord, both

21   sides, on authenticity.

22          MR. RICCARDULLI:  I agree, your Honor.  This came up

23   in the City of New York case.  What the parties did was annex

24   an exhibit list, and then the parties sat down and figured out

25   if there were problems.  I might suggest this be put off until

1   we are closer to trial and understand who is left.

2         THE COURT:  Right.  But I don't think it should be a

3   deposition issue.  It shouldn't waste time or people power.

4   You should get it done by declaration and you should do

5   probably what I just said.  You should say right now that for

6   anything originating in the company we are never going to

7   contest authenticity, for anything found in our files that was

8   on a letterhead of another company we are not going to contest

9   authenticity, we reserve the right to contest authenticity on a

10   document-by-document basis if it doesn't fall into either of

11   those two categories.

12         Wouldn't that be really easy?  The answer is yes.

13         Plaintiffs.  The same objection comes up with Exxon,

14   at least two of them, for piercing the corporate veil thing,

15   the authentication thing, so we can zip right through that.

16         I am turning to Exxon now, the October 15 30(b)(6)

17   notice.  The issues 26 and 27, this is the one about discovery.

18   Apparently Exxon is saying that the plaintiffs are getting into

19   again how they produced their documents.  Why do we need any

20   more on that?

21     MS. O'REILLY:  We did originally confer with

22   defendants to resolve this without the need for a deposition

23   and we are continuing to do so.  We are not insisting on

24   depositions on these topics at this time.

25         THE COURT:  That is helpful to know, because I don't

1   think you should take a deposition on this unless you can

2   convince me of why that is necessary.  So the answer is right

3   now the objection is sustained.

4          Exxon says it did not supply, deliver, sell, or market

5   gasoline to or within Puerto Rico, nor did it have any business

6   relationship with any service stations, terminals, plants, or

7   facilities in Puerto Rico.  They object to a number of these

8   categories 1 through 6, 14, 17 through 18, 20, and 23 on that

9   basis.  If that is so, you shouldn't be wasting time doing it.

10          MR. MILLER:  Your Honor, today in a deposition I

11   established that shipments from ExxonMobil USA refineries went

12   straight to Puerto Rico and had MTBE in them.  Those statements

13   are not borne out by the witnesses or the documents.

14          THE COURT:  Why did you write, Mr. Riccardulli, that

15   ExxonMobil did not supply, deliver, sell, or market gasoline to

16   or within Puerto Rico when the witness deposed today said that

17   they did in fact?

18          MR. RICCARDULLI:  Your Honor, I was not involved in

19   the deposition today, so I'm not sure what Mr. Miller is

20   referring to.

21          THE COURT:  All I can say is if it turns out that

22   Exxon did supply, deliver, sell, or market, then it is

23   relevant.  If they did not do any of those and it is provable,

24   then it is not relevant.  I'm not sure that is very helpful

25   guidance, but it is the best I can do.

```
1              I want to go on to Hess.  Hess raised the issue that

2     some of plaintiffs' requests are not limited to Puerto Rico at

3     all, they are going outside of Puerto Rico.  I don't know what

4     St. Croix has to do with it, but my notes say because

5     plaintiffs' requests are not limited to Puerto Rico or St.

6     Croix.  Why are plaintiffs going beyond Puerto Rico?

7              MR. SHORT:  A number of defendants in this current

8     litigation were located in the United States but supplied to

9     Puerto Rico.  Those are the particular parties we are looking

10    for information about.

11             THE COURT:  You are not looking for any supplies other

12    than to Puerto Rico?

13             MR. SHORT:  Any supplies that we do not have a link to

14    Puerto Rico, correct.

15             MR. MILLER:  The refinery we are talking about is in

16    St. Croix.  It is not a Hess refinery.  It was Hovensa and

17    Hovic, just so we are clear.  In St. Croix this was a refinery

18    operated by Hovic and Hovensa.  Hess may be an investor in

19    that, but it is a separate corporation and it is not a party to

20    this lawsuit.  That is why the word "St. Croix" appeared, your

21    Honor.

22             THE COURT:  The real point is that the plaintiffs

23    agree they are not seeking information outside a product that

24    went to Puerto Rico but they are allowed to find out where the

25    product originated that went to Puerto Rico.  I agree.
```

1          MR. LIEFER:  We agree.

2          THE COURT:  They are allowed to seek testimony of Hess

3   if it has information about Hovic and Hovensa's decision to use

4   MTBE.  Even if you say you are not a party, if there is

5   information from a nonparty that is relevant to a case,

6   generally a nonparty has to give the information.  Mr. Liefer,

7   I don't see the objection.  If you have information, then you

8   have to give it.

9          MR. LIEFER:  The designated issue says division of

10  Hovic and Hovensa, and then its lists --

11         THE COURT:  That is correct.  If you have information

12  relating to that, give it.  If you don't, say we have no such

13  information.  If you have it, all right.

14             Now I get to Hovic & Hovensa?

15         MR. LIEFER:  I'm not sure these are even relevant now.

16         THE COURT:  Let's go to Lyondell.

17         MR. LIEFER:  I don't want to not give the plaintiffs

18  an opportunity to speak.  We pointed out in our letter that

19  these are not the deposition notices that they indicated as

20  ones they want to pursue at the moment.  That is why I was

21  suggesting that perhaps this is not relevant.

22         MR. MILLER:  The notice to Hovic and Hovensa predated

23  last Friday.  My understanding is this hearing was about the

24  notices served at that time.

25         THE COURT:  I'm over an hour now.  I've got to go.

1    All I can do is finish giving very rough guidance.  I am up to

2    Lyondell and I want to do it.  It says you are demanding

3    information on sales of neat MTBE to two refineries outside of

4    Puerto Rico.  You have already said we are sticking to only

5    within Puerto Rico.  If refineries outside of Puerto Rico sent

6    product to Puerto Rico, then it is relevant.  But if plaintiffs

7    want information on sales to somewhere else, not relevant.

8         MR. SHORT:  We agree, your Honor.  We are only asking

9    the seller for refineries who deliver to Puerto Rico.

10        MR. MOLLER:  Jeff Moller for Lyondell.  The deposition

11   notice lists a long list of companies to whom Lyondell may have

12   sold anywhere in the United States.  He hasn't yesterday

13   provided us with evidence that there was in fact batches of

14   gasoline that went from a particular refinery to Puerto Rico.

15   If he produces information that yes, batches of gasoline went

16   from Phillips in Bartlesville, Oklahoma --

17        THE COURT:  I'm sorry, I don't agree with you.  I

18   don't think there is a burden shift here.  He is allowed to

19   determine what refineries shipped into Puerto Rico.  You are

20   more in control of that information than he is.  He has no

21   burden to prove it to you first.  He is allowed to say provide

22   information from any refinery that shipped into Puerto Rico,

23   and you do the work.  It is your documents, it is your records,

24   it is your company.

25        MR. MOLLER:  Your Honor, I'm sorry to interrupt.

1   Lyondell is an MTBE manufacturer.  We don't know who ships

2   gasoline from our customers' refineries in Marcus Hook or

3   Louisiana or Texas to Puerto Rico.  They purchased MTBE from

4   us.  Yes, we had some customers who listed their locations as

5   being in Puerto Rico, Phillips or Caribbean Gulf, and so forth.

6   But we have no idea, until Mr. Miller demonstrates the

7   relevance of which of our customers sold gasoline containing

8   MTBE to Puerto Rico when.

9        For us to give him huge amounts of sales documents,

10   not merely summaries or a declaration -- he has refused a

11   declaration -- huge amounts of sales documents to Marcus Hook,

12   to Phillips anywhere in the country, the trader, all these

13   entities without us understanding what years are relevant for

14   Puerto Rican sales from those entities and how much is

15   relevant, this is an unnecessary fishing expedition.

16        THE COURT:  I got your point.  When are we

17   reconvening?  I am off this phone.  I have to stop right now on

18   a dime.  When do you want to finish this discussion?  I have

19   five or six more pages to go, and I'm out of time, period.  Do

20   you want to talk about this tomorrow?

21        MR. RICCARDULLI:  Yes, your Honor, tomorrow works for

22   defendants.

23        THE COURT:  11:30.  No, I can do better than that.

24   2:30 tomorrow.  I'll run through the rest of it.  Bye-bye.

25        (Adjourned to 2:30 p.m., October 23, 2013)