UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In Re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

Master File No. 1:00 – 1898
MDL 1358 (SAS)

---

This document refers to:

*City of Manning v. Ashland Inc., et al.*, Case No. 13-CIV-07272 (SAS)

*City of Portageville v. Ashland Inc., et al.*, Case No. 13-CIV-07299 (SAS)

---

## DEFENDANT ASHLAND INC.'S THIRD AMENDED MASTER ANSWER AND AFFIRMATIVE DEFENSES

Pursuant to the Master Answer agreement among the parties, and various orders and directives from this Court, Ashland Inc. answers the complaints in MDL 1358 cases for which an answer is required, and in which it has been properly named and served, as follows:

## I.    ADMISSIONS AND STATEMENTS REGARDING ALLEGATIONS

### *Basic Defendant Information*

Ashland Inc. is a publicly held corporation organized and existing under the laws of the Commonwealth of Kentucky.  Its corporate headquarters is located in Covington, Kentucky.

Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning other defendants named in the MTBE lawsuits.

### *Sale or Distribution of Gasoline with MTBE or TBA to States in Question*

Ashland Inc. operated one refinery located in Catlettsburg, Kentucky that refined petroleum fuels at one or more times during the relevant time periods that may have contained MTBE.  This refinery primarily shipped gasoline via tanker truck and barge to mid-western

locations. Ashland Inc.'s refined product business activities have focused on mid-west area of the country.

Ashland Inc. does not currently manufacture, produce, design, refine, formulate, distribute, supply, sell or market MTBE, TBA, gasoline containing either MTBE or TBA, or refined petroleum fuels of any kind in any state. Nor does Ashland Inc. currently own any refineries, pipelines, terminals, or storage tanks which transport or store gasoline containing MTBE. On January 1, 1998 Ashland Inc. contributed its manufacturing, storage, transportation, distribution and sales operations to Marathon Ashland Petroleum LLC.

Therefore, all allegations in the complaints concerning Ashland Inc. after January 1, 1998 are not directed at Ashland Inc., and no answer is required from Ashland Inc.

Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning other defendants named in the MTBE lawsuits.

### *Allegations Regarding Production of MTBE or TBA*

Ashland Inc., at one or more times during the relevant time period, manufactured MTBE at facilities located in Catlettsburg, Kentucky. Since January 1, 1998, Ashland Inc. has not manufactured, produced, refined, formulated, distributed, supplied, sold or marketed gasoline containing MTBE.

Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning other defendants named in the MTBE lawsuits.

### *Allegations Regarding Properties and Behavior of MTBE*

Ashland Inc. admits that MTBE is aliphatic ether that does not occur naturally. Ashland Inc. states that solubility and mobility are relative properties and that MTBE and other ethers may be more soluble and/or mobile in water than certain gasoline components. Ashland Inc.

further states that MTBE's behavior in the environment -- and its behavior relative to BTEX -- is dependent on a variety of factors, including the nature or method of its release, the geological setting, and environmental and microbial factors.

Ashland Inc. admits that there are various methods for the production of MTBE and that one method of production is from methanol and isobutylene. Ashland Inc. admits that MTBE is not found naturally in gasoline.

Other than as expressed in expert reports filed by defendants, including Ashland Inc., in the MDL cases to date, Ashland Inc. is without sufficient knowledge or information as to the truth of the remaining allegations concerning the properties or characteristics MTBE.

Ashland Inc. admits that, at one or more times during the relevant time period, it used MTBE as a gasoline additive. Ashland Inc. states that it does not currently operate any refinery, and therefore Ashland Inc. denies that it presently uses MTBE in any refining or blending of gasoline.

Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning other defendants named in the MTBE lawsuits.

### *Allegations Regarding Motivation of Defendants to Add MTBE to Gasoline*

Ashland Inc. admits that at one or more times in the late 1980s or the 1990s, it manufactured, distributed and/or sold gasoline with MTBE primarily in order to meet Clean Air requirements for oxygenated fuels.

Ashland Inc. admits that in certain parts of the country MTBE was not the only viable option to achieve higher octane in gasoline.

3

Ashland Inc. denies the allegations that it chose to use MTBE "to make money off gasoline refining waste byproducts". Similarly, Ashland Inc. denies that it added MTBE to gasoline solely "to boost octane cheaply and increase its own profits."

Ashland Inc. admits that in 1990, with the amendments to the Clean Air Act, the federal government mandated an increase in the use of oxygenates (up to 2.7% oxygen content) to meet ambient carbon monoxide air requirements in winter gasoline in many cities (beginning in 1992). In 1995, various oxygenates were extended by regulation to year-round use as a gasoline additive for gasoline distributed into severe, non-attainment ozone areas in the United States. The national reformulated gasoline (RFG) pool since that time sometimes has contained between 8.3% and 15% MTBE, or up to 10% ethanol, to meet government mandates on oxygenate content.

Ashland Inc. denies that ethanol was available in sufficient supply to meet the national demand for oxygenated gasoline in the RFG and oxy-fuel regions when the Clean Air Act requirements requiring 2% oxygen content in year-round gasoline in areas using RFG became effective.

Ashland Inc. states that at any time during the relevant time periods when it refined crude oil, owned refineries, and made gasoline, it complied with the legal requirements of the lead phase-out, the RFG Program and the Oxygenated Fuel Program. Ashland Inc. further states that several government agencies have concluded that MTBE has contributed substantially to reducing air pollution.

Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning other defendants named in the MTBE lawsuits.

***Allegations Regarding Contamination of Groundwater and Gasoline Containing MTBE***

Ashland Inc. states that solubility and mobility are relative properties and that MTBE and other ethers may be more soluble and/or mobile in water than certain gasoline components. Ashland Inc. further states that MTBE's behavior in the environment -- and its behavior relative to BTEX -- is dependent on a variety of factors, including the nature or method of its release, the geological setting, and environmental and microbial factors.

Other than as expressed in expert reports filed by defendants, including Ashland Inc., in the MDL cases to date, Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning the nature, extent and persistence of leaks, spills, or releases of MTBE that reach groundwater.

Other than as expressed in expert reports filed by defendants, including Ashland Inc., in the MDL cases to date, Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning taste and odor concerns stemming from MTBE in water. Ashland Inc. states that responsible federal and state regulatory agencies have considered and adopted standards fully protective of MTBE taste and odor concerns.

Other than as expressed in expert reports filed by defendants, including Ashland Inc., in the MDL cases to date, Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning human health risks from MTBE. Ashland Inc. states that responsible federal and state regulatory agencies have considered and adopted standards fully protective of any alleged health concerns related to MTBE.

Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning other defendants named in the MTBE lawsuits.

5

***Allegations Regarding the Unintended Gasoline Discharges & Allegations Regarding Whether Defendants Knew that the Addition of MTBE to Gasoline May Result in Groundwater Contamination***

Ashland Inc. admits that gasoline is sometimes released into the environment from USTs and other sources.  Ashland, Inc. denies Plaintiffs' allegations that at all times relevant to this litigation it "w[as] aware that there is a national crisis involving gasoline leaking from multiple sources," or that any such crisis exists at all.

Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning industry reports, Congressional testimony, and EPA concerns regarding UST leaks.

Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning the quantity of gasoline entering the soil annually by consumer and jobber overfills and leaks.

Ashland Inc. states that it is aware that most adults understand that gasoline should be handled carefully and should not be spilled.

Ashland Inc. denies allegations concerning gasoline containing MTBE "exacerbat[ing] the threat to groundwater caused by leaking USTs" or otherwise threatening widespread contamination of soil or ground water.

Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning other defendants named in the MTBE lawsuits.

***Allegations Regarding Defendants' "Constructive Knowledge" of MTBE and "Threats Posed to Groundwater"***

Ashland Inc. states that while under certain conditions MTBE may biodegrade less readily than some other components of gasoline, MTBE has been found to naturally attenuate and biodegrade in numerous ways.  Furthermore, numerous remediation technologies and

strategies have been and are being developed to remediate, and to enhance natural attenuation and biodegradation of, MTBE in the environment.

Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning the American Petroleum Institute's Toxicology Committee.

Ashland Inc. denies that it had "early knowledge" of any "need to do low level, long term ingestion studies on the effects of MTBE." Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning whether such studies had been conducted by other persons, entities or organizations. Ashland Inc. admits that it did not undertake or complete any study on the effects of low level, long term ingestion of MTBE.

Ashland Inc. denies Plaintiffs' allegation that it "possess[es] and ha[s] always had knowledge, resources, experience and other advantages which are vastly superior to those of Plaintiffs" with respect to gasoline and MTBE. Ashland Inc. denies Plaintiffs' allegation that it at all times relevant to this litigation has "been in a position to know the threat which MTBE poses to groundwater".

Ashland Inc. denies Plaintiffs' allegations that it failed to state the "truth about MTBE" and "act in accordance with the truth about MTBE." Furthermore, Ashland Inc. states that Plaintiffs' allegation that it had "a duty to disclose" information about MTBE is a legal conclusion which does not require a response by Ashland Inc.

Ashland Inc. denies that it breached any duty to Plaintiffs, regulators, and the general public.

Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning other defendants named in the MTBE lawsuits.

### *Allegations Regarding Defendants' "Early Knowledge" of Specific Instances of MTBE Contamination of Groundwater"*

Ashland Inc. denies that it knew as early as 1980 of the impact of MTBE and its contamination of water.

The complaints purport to describe various general publicly reported incidents of MTBE contamination in New Jersey, New York and Maine in the 1980s. Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning contamination events in Rockaway, New Jersey; Jacksonville, Maryland; Liberty, New York; and East Patchogue, New York. Ashland Inc. states that the events did not involve Ashland Inc.

Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning other defendants named in the MTBE lawsuits.

### *Allegations Regarding Defendants' "Awareness of the 1986 Garrett Report"*

Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning the 1986 paper, written by Peter Garrett and Marcel Moreau of the Maine Department of Environmental Protection, entitled "Methyl Tertiary Butyl Ether as a Ground Water Contaminant" (the "Garrett Report"). . Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning Arco Chemical's statements to any entity. Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning the Groundwater Technical Task Force ("GTTF") and/or its communications with the National Well Association.

Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning other defendants named in the MTBE lawsuits.

### *Allegations Regarding Defendants' Internal Studies on MTBE and Contamination of Groundwater*

Ashland Inc. states that it is without sufficient knowledge or information as to the truth of the allegations concerning Arco Chemical's statements to any entity. Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning the Groundwater Technical Task Force ("GTTF") and its communications with the oil industry.

Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning certain documents produced by and/or certain communications of Arco Chemical, Mobil, ChevronTexaco, Chevron or Shell.

Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning other defendants named in the MTBE lawsuits.

### *Allegations Regarding Whether Defendants' Knowledge Concerning the Existence of MTBE Toxicity Studies*

Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning the existence or non-existence of long-term cancer studies on MTBE effects.

Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning the effect of MTBE on animals, and "common knowledge within the scientific community" regarding when toxicological tests must be performed. Ashland Inc. admits that it did not independently perform any toxicological tests on MTBE. However, Ashland Inc. states that it did follow environmental health and safety procedures when introducing MTBE into its product.

Ashland Inc. denies that it attempted to convince the EPA that health testing of MTBE was not needed.

Ashland Inc. denies that it exposed "millions of Americans to potential harm".

Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning other defendants named in the MTBE lawsuits.

### *Allegations Regarding Representations to the EPA and the General Public About MTBE and Contamination of Groundwater*

Ashland Inc. denies that it had any agreement with another defendant to withhold from plaintiffs, government regulators or the general public information concerning MTBE. Specifically, Ashland Inc. denies that in the early 1980's it formed or was a part of any formal or informal task-forces or committees created for the "purpose of concealing the actual threat of MTBE, facilitating the...use of MTBE without regard to its impact on Plaintiff(s) and convincing the general public and regulators that increasing concentrations of MTBE in gasoline was desirable."

Ashland Inc. admits it was at one or more times during the relevant time period a member of the American Petroleum Institute ("API"). Ashland Inc. denies that it was at any relevant time period a member of the Oxygenated Fuels Association ("OFA").

Ashland Inc. denies that its membership in API constituted "conspir[ing] to conceal the risk of MTBE contamination of groundwater" and Ashland Inc. further denies that its membership in API constituted "placing corporate profits" above harm to the environment and Plaintiffs.

Ashland Inc. denies that it "manufactured and distributed MTBE with actual knowledge of MTBE's defects and with actual knowledge that MTBE would cause harm in groundwater and production wells." Ashland Inc. further denies that it took "affirmative steps to conceal those effects."

10

Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning other defendants named in the MTBE lawsuits.

***Allegations Regarding Representations to EPA About Testing Under the Toxic Substances Control Act (TSCA) in the Late 1980's***

Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning representations by or communications of ARCO to the Interagency Testing Committee ("ITC") concerning MTBE. Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning the reliance of ITC on any representations or communications of ARCO.

Ashland Inc. denies that it was involved in any effort to "convince the EPA that additional testing of MTBE was not needed." Ashland Inc. denies that ARCO spoke on its behalf or with its explicit or implicit approval when making any representation to ITC.

Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning representations by ARCO and Exxon to the EPA at the EPA's December 17, 1986 General Public Focus Meeting.

Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning the formation of the MTBE Committee or the actions and/or pronouncements of such Committee members. Ashland Inc. denies that it was at any relevant time a member of the MTBE Committee or MTBE Technical Subcommittee.

Ashland Inc. further denies that it made any representations regarding MTBE testing to ITC, to the EPA during its General Public Focus Meeting, or to the EPA by way of MTBE Committee communications.

Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning some gasoline manufacturers and distributors entering into a January 21,

1988 Testing Consent Order with EPA, and any representations made by gasoline manufacturers and distributors to EPA with respect to that Order.

Ashland Inc. further denies that representations or communications of other defendants, committees or associations are evidence of any improper act, omission or breach of any duty on the part of Ashland Inc.

Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning other defendants named in the MTBE lawsuits.

### *Allegations Regarding Representations to Congress About the Reformulated Gasoline Program*

Ashland Inc. admits that prior to 1990, Congress was preparing to take action to address the Nation's smog problem.

Ashland Inc. admits that (1) in 1990, with the amendments to the Clean Air Act, the federal government mandated an increase in the use of oxygenates (up to 2.7% oxygen content) to meet ambient carbon monoxide air requirements in winter gasoline in many cities (beginning in 1992); and (2) in 1995, various oxygenates were extended by regulation to year-round use for severe, non-attainment ozone areas in the United States.

Ashland Inc. states that although the 1990 Clean Air Act Amendments ("CAAA") did not literally require use of MTBE as a gasoline additive, in practical terms the CAAA certainly did compel MTBE's use in certain areas of the country.  EPA and Congress knew that the oxygen requirements of the Act could not and would not be met without MTBE's use.  Reformulated gasolines used since that time have sometimes contained between 8.3% and 15% MTBE, or up to 10% ethanol, to meet government mandates on oxygenate content.

Ashland Inc. denies that Congress adopted the Reformulated Gasoline (RFG) Program as part of the 1990 Amendments to the Clean Air Act "[a]s a result of tremendous lobbying efforts by the industry, including Defendants."

Ashland Inc. further denies that ethanol was available in sufficient supply to meet the demand for oxygenated gasoline in one or more of the RFG and oxy-fuel regions when the Amendments requiring 2% oxygen content in year-round gasoline in areas using RFG became effective.

Ashland Inc. further denies that MTBE was its "oxygenate of choice" based solely on profitability considerations.

Ashland Inc. admits that at any time during the relevant time periods when it refined crude oil, owned refineries, and made gasoline, it complied with the legal requirements of the lead phase-out, the RFG Program and the Oxygenated Fuel Program.

Ashland Inc. further states that several government agencies have concluded that MTBE has contributed substantially to reducing air pollution.

Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning other defendants named in the MTBE lawsuits.

***Allegations Regarding Representations to Plaintiffs and the General Public, Including Downstream Gasoline Handlers, About Gasoline with MTBE***

Ashland Inc. denies that it "misrepresented the properties of MTBE" to Plaintiffs or the general public, or "withheld information" about "the dangers of MTBE." Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning when the general public "started to become aware of the dangers of MTBE."

Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning representations made by George Dominguez of the MTBE Committee on

April 1 and 2 of 1987.  Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning a letter written in 1994 by "an official with the API" regarding the use of MTBE.  Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning the publishing and distribution of a pamphlet on general public health issues and MTBE in April 1996 by an OFA agent.

Ashland Inc. denies that it at any relevant time "greenwashed shameful facts"; or "judged" MTBE contamination "too costly to clean up."  Ashland Inc. states that its policy consistently has been to promptly and effectively clean up any gasoline spill for which it was responsible, regardless of its MTBE content.

Ashland Inc. states that it is without sufficient knowledge or information as to the truth of the allegations concerning what alternatives Downstream Handlers and the general public would have sought or whether the Downstream Handlers and the general public would have demanded MTBE-free gasoline.

Ashland Inc. states that Plaintiffs' allegation that its "failure to warn of the hazards posed by MTBE contamination of groundwater...deprived [Plaintiffs] of facts from which its injury from MTBE contamination could reasonably have been inferred" is a legal conclusion which does not require a response by Ashland Inc.  Ashland Inc. denies that it breached any duty to warn or deprived Plaintiffs of any facts.

Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning other defendants named in the MTBE lawsuits.

### *Allegations Regarding Defendants' Use of MTBE in Gasoline Post-Creation of the RFG Program*

Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning historical or recent trends of MTBE use and content of MTBE in gasoline by the oil industry after the creation of the RFG program.

Ashland Inc. denies that "MTBE [was] its oxygenate of choice," and deny that it "decided to forego" use of ethanol.

Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning other defendants named in the MTBE lawsuits.

### *Allegations Regarding MTBE's Degradation Product: TBA*

Ashland Inc. admits that TBA is the product of the hydrolysis of isobutylene. Ashland Inc. admits that TBA can be an intermediate product of MTBE biodegradation. Ashland Inc. is without sufficient knowledge or information as to the truth of the remaining allegations concerning the use of TBA as an oxygenate in gasoline.

Ashland Inc. states that solubility and mobility are relative properties and that TBA is more soluble and mobile in water than certain gasoline components. Ashland Inc. further states that TBA's behavior in the environment -- and its behavior relative to BTEX -- is dependent on a variety of factors, including the nature or method of its release, the geological setting, and environmental and microbial factors.

Ashland Inc. is without sufficient knowledge or information as to the truth of the remaining allegations concerning the properties, characteristics, persistence, and remediation of TBA in groundwater, or its presence in water supplies.

Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning the health effects of TBA.

15

Ashland Inc. denies that it breached any duty to Plaintiffs, regulators, and the general public.

Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning other defendants named in the MTBE lawsuits.

### *Allegations Regarding MTBE's Effect Upon Groundwater and Groundwater Wells*

Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning frequency and extent of MTBE contamination in groundwater.

Ashland Inc. admits that in 2001, EPA provided advance notice of its intent to initiate a rulemaking pursuant to TSCA to eliminate or limit the use of MTBE as a fuel additive. No such rulemaking was ever initiated. Ashland Inc. admits that certain proposed legislation in the U.S. Congress may limit the use of MTBE in gasoline in the future. Ashland Inc. admits that certain state legislatures or regulatory bodies have passed laws or adopted regulations to limit or eliminate the use of MTBE in gasoline. The details of such laws are a matter of general public record.

Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning other defendants named in the MTBE lawsuits.

### *Allegations Regarding Plaintiffs' Inability to Identify "Which Manufacturer's Gasoline Poses a Threat of MTBE Contamination or Has Already Caused MTBE Contamination of Any Particular Aquifer or Well"*

Gasoline leaks, whether containing MTBE or not, are almost always traceable to a specific source, limited to the immediate geographic area of the source, and remediable. In the vast majority of leak incidents, a responsible party can be and is identified.

Ashland Inc. denies that gasoline can never be traced from a contamination site to a terminal or refinery source.

Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning other defendants named in the MTBE lawsuits.

### *Allegations in Causes of Actions*

In response to the portions of the complaints purporting to state any common law or statutory claims, Ashland Inc. incorporates each paragraph of this Second Amended Master Answer as if fully restated herein. Ashland Inc. denies it is liable for any legal claim in any MDL 1358 complaint.

Ashland Inc. is without sufficient knowledge or information as to the truth of the allegations concerning other defendants named in the MTBE lawsuits.

### *Allegations Purporting To Quote Or Summarize Documents*

Numerous paragraphs in each complaint purport to quote from or summarize documents, statutes and regulations. These written materials speak for themselves. The documents, statutes and regulations referenced by plaintiffs, which are not attached to the complaints, are the best evidence of its content, and therefore Ashland Inc. denies plaintiffs' attempts to summarize or characterize the contents of these written materials.

### *Allegations Regarding Claimed Injuries or Damages*

Some complaints make claims about contamination to specific wells, and others do not. Ashland Inc. is without knowledge or information sufficient to form a belief as to the truth of the matters averred in the complaints regarding specific incidents of alleged contamination. Ashland Inc. believes general publicly available documents regarding plaintiffs will demonstrate that many of the wells at issue have not been impacted by MTBE, or have been impacted only at levels below state action standards for MTBE.

With regard to alleged damages, the allegations require no further answer. To the extent that further answer is deemed necessary, Ashland Inc. admits that plaintiffs seek the relief mentioned in the complaints, but deny that plaintiffs are entitled to any relief.

### *Plaintiffs' Demands for Jury Trials*

Plaintiffs in all actions have demanded a trial by jury of all claims asserted in the complaints. These jury demands require no answer.

## II.     GENERAL DENIAL OF REMAINING ALLEGATIONS

Ashland Inc. denies each and every one of the remaining allegations in the complaints in MDL 1358 cases for which an answer is presently required, and in which it has been properly named and served.

## III.    RESERVATION OF RIGHT TO AMEND

Ashland Inc. reserves the right to amend this Second Amended Master Answer.

## IV.    AFFIRMATIVE DEFENSES APPLICABLE TO ALL CASES

For its separate defenses to the complaints in MDL 1358 cases for which an answer is presently required, and in which it has been properly named and served, Ashland Inc. states as follows:

1.     Plaintiffs' claims are barred in whole or in part by the doctrine of federal preemption.

2.     At all relevant times, Ashland Inc.'s actions and its products complied with and were undertaken pursuant to applicable federal, state, and local laws, rules, regulations and specifications.

3.      Plaintiffs' claims are barred in whole or in part because federal, state and/or local authorities and agencies have mandated, directed, approved and/or ratified the alleged actions or omissions of Ashland Inc.

4.      All acts and conduct of Ashland Inc., as alleged in the complaints, conformed to and were pursuant to statutes, government regulations and industry standards, and were based upon the state of knowledge existing at all material times alleged in the complaints.

5.      The relief sought by plaintiffs' complaints is, in whole or in part, within the particular expertise of and is being addressed by federal and state governments, and its relevant agencies, and thus this Court should decline to exercise jurisdiction over this matter pursuant to the doctrine of primary jurisdiction.

6.      Plaintiffs have failed to exhaust its administrative remedies.

7.      Plaintiffs have a plain, common, adequate and speedy remedy at law.   The equitable causes of action alleged in the complaints are thus barred.

8.      Plaintiffs are barred from seeking strict liability for design defect as any attempt to reexamine the mandatory cost-benefit analysis delegated to and performed by the EPA pursuant to its obligations under the Clean Air Act, as amended, ("CAA") would be impermissible given that Congress, through Section 211 of the CAA, authorized the EPA, and not the courts, to perform the cost-benefit analysis.

9.      Each purported cause of action asserted in the complaints is barred under the doctrine of primary assumption of risk in that the general public, by and through its elected representatives and its appointees, knew and understood the alleged risks of harm presented by the use of MTBE, if any, and elected nevertheless to proceed to require the use of gasoline oxygenates and to specifically permit the use of MTBE as a gasoline oxygenate.

10.     To the extent that plaintiffs have received or may receive the requested relief from a governmental agency, Ashland Inc. asserts its entitlement to an appropriate set-off or reduction of any judgment against it.

11.     The appropriate forum for plaintiffs' claims is an administrative agency, and therefore all proceedings before this Court should be stayed pending administrative resolution of the issues.

12.     The claims set forth in the complaints fail, in whole or in part, based on the doctrine of election of remedies.

13.     Each purported cause of action of the complaints as applied to Ashland Inc. is barred because the relief sought therein would pose unreasonable barriers and substantial burdens on interstate and/or international commerce in violation of the Commerce Clause of the United States Constitution and/or the North American Free Trade Agreement.

14.     The complaints fail to state any claim upon which relief may be granted and should, therefore, be dismissed pursuant Fed. R. Civ. P. 12(b)(6).

15.     Because plaintiffs have not suffered any cognizable harm and have not incurred any present damages, there is no current case or controversy and thus plaintiffs' claims are not ripe for adjudication.

16.     Plaintiffs suffered no losses or injuries that were proximately caused by Ashland Inc.

17.     Ashland Inc.'s actions were not the causes in fact of any injuries alleged by plaintiffs.

18.     Plaintiffs have failed to state a cause of action for nuisance because they have neither alleged nor suffered any particularized injury.

20

19.    The alleged injuries and damages, if any, suffered as a result of conduct legally attributable to Ashland Inc. are *de minimis* and therefore any injunction would pose a disproportionate hardship on Ashland Inc., as well as on the general public, in comparison to the injury and or damages allegedly suffered by plaintiffs.   Accordingly, plaintiffs are not entitled to injunctive relief as to Ashland Inc. as a matter of law.

20.    Plaintiffs do not have a legally cognizable injury unless or until the alleged MTBE contamination exceeds state action levels.

21.    Plaintiffs may not seek attorneys' fees as an element of relief.

22.    Plaintiffs have failed to properly present any claim for attorneys' fees.

23.    Because plaintiffs have sued multiple parties, under multiple causes of action, with divisible damages, the claim for attorneys' fees must be proportioned between same.

24.    The claims set forth in the complaints are barred, in whole or in part, by the mootness doctrine.

25.    The complaints and each purported cause of action are barred, in whole or in part, by the defense of laches.  Plaintiffs' unreasonable and inexcusable delay in filing these actions caused substantial prejudice to Ashland Inc.

26.    The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations.

27.    The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of repose.

28.    Plaintiffs are estopped by its conduct from asserting any of the purported claims alleged against Ashland Inc. in the complaints.

29.     Plaintiffs have not adequately investigated the cause of the alleged harm or attempted to identify the actual responsible party or parties.

30.     Plaintiffs cannot establish the required predicates for its theories of collective liability, and therefore its defendant-identification burden remains.   In the event that the defendant-identification burden is shifted in the future, Ashland Inc. denies that it contributed to the contamination at issue.

31.     Plaintiffs' claims are barred in whole or in part by the doctrine of waiver.

32.     Ashland Inc. is entitled to total or partial indemnity from those individuals or entities who are responsible for plaintiffs' injuries or damages, if any, in an amount in direct proportion to its relative culpability.

33.     Plaintiffs lack the capacity to sue.

34.     Plaintiffs lack standing to sue.

35.     Plaintiffs' claims are barred because Ashland Inc.'s conduct caused no physical impact to Plaintiffs' property.

36.     There is a defect or misjoinder of parties, in that plaintiffs have failed to join indispensable or necessary parties.

37.     Plaintiffs have failed to name the party or parties responsible for the alleged harm.

38.     The claims set forth in the complaints fail, in whole or in part, because of the failure to identify which defendant, if any, proximately caused the alleged harm.

39.     Plaintiffs' claimed injuries were caused in whole or in part by others, whose actions were not controlled by or related to Ashland Inc.  Such actions are the superseding, supervening and/or intervening cause of plaintiffs' injuries and therefore plaintiffs may not recover from Ashland Inc. as a matter of law.

40.     Plaintiffs may not maintain theories of collective or alternative liability given the facts alleged in the complaints.

41.     At no time did Ashland Inc. exercise control over the persons or entities responsible for actual or threatened releases of MTBE, if any, alleged in the complaints.  At all times, Ashland Inc. acted with due care with respect to any petroleum or petroleum products used and took reasonable precautions against foreseeable acts or omissions of any such third parties and any foreseeable consequences.

42.     Ashland Inc. did not own, control or release any of the petroleum products that are alleged to have caused or threatened contamination of plaintiffs' wells.

43.     Any Ashland Inc. gasoline product sold or distributed for resale was properly designed, formulated, prepared and otherwise not defective in any respect.

44.     To the extent required, Ashland Inc. provided proper warnings, information, and instructions relating to its products pursuant to generally recognized and prevailing standards in existence at the time.

45.     Plaintiffs have failed to allege that Ashland Inc.'s alleged failure to provide an adequate warning proximately caused its injuries.

46.     Any gasoline product containing MTBE manufactured, sold, or distributed for resale by Ashland Inc. was not unreasonably dangerous when made.

47.     The plaintiffs' claims against Ashland Inc. are barred by the bulk supplier doctrine.

48.     Ashland Inc. sold its products to knowledgeable and sophisticated purchasers, and any injury alleged by plaintiffs was caused by such purchasers' failure to observe known standards of care.

23

49.    Any injury, damage or loss sustained by the plaintiffs was proximately caused and/or contributed to by its own negligence, carelessness, and/or omissions.

50.    Plaintiffs' claims are barred pursuant to the learned intermediary doctrine.

51.    If any damages or injuries alleged in the complaints occurred because of leaks from the gasoline storage tanks and associated piping, Ashland Inc. is not liable for those damages and/or injuries because the gasoline storage tanks and associated piping, when manufactured and distributed, conformed to the then current state of scientific and industrial knowledge, and the tanks and associated piping were used for its intended purpose.

52.    Plaintiffs' general public nuisance claims should be dismissed because there were no acts or omissions by or on behalf of any of the defendants constituting an intentional, unreasonable interference with the plaintiffs' interest in the use and enjoyment of its property.

53.    Plaintiffs' general public nuisance claims must be dismissed because plaintiffs have failed to allege "special damages," an absolute prerequisite to the assertion of a general public nuisance claim.

54.    Ashland Inc. alleges that it owed no duty of care to plaintiffs in connection with the matters alleged in the complaints.

55.    The complaints fail to plead the elements of negligence claims with sufficient clarity, specificity, and particularity.

56.    Plaintiffs' claims are barred to the extent the conduct complained of is protected by the First Amendment to the United States Constitution.

57.    The complaints and each cause of action are barred based on Ashland Inc.'s valid exercise of the right of petition to the federal government, state government(s), and/or its respective deliberative bodies and agencies.

58.     Plaintiffs' claims are barred, in whole or in part, based on plaintiffs' actual or constructive notice of reported spills or releases, if any, from general publicly available records.

59.     There is no legal relationship upon which any duty could possibly be owed by Ashland Inc. to plaintiffs, and therefore, plaintiffs' causes of action fail as a matter of law.

60.     The injuries and damages, if any, alleged by plaintiffs are caused in whole or in part by the presence of compounds other than MTBE (e.g., the BTEX compounds).   Under plaintiffs own legal theories, Ashland Inc. is not liable for damages caused by compounds other than MTBE.  In the event liability is assessed against Ashland Inc. such liability must be reduced where, and to the extent that, other compounds – about which plaintiffs do not complain – contributed to the alleged injury.

61.     Ashland Inc. is not liable for contamination where chemical compounds other than MTBE exceed state actions levels or standards, thereby requiring cleanup regardless of the presence of MTBE (particularly, but not exclusively, where MTBE is present below state action levels or standards).

62.     Any injury, damage or loss sustained by the plaintiffs in connection with the subject matter of this action was not reasonably foreseeable.

63.     If it is determined that plaintiffs, or anyone on whose behalf plaintiffs are allegedly suing, was injured as set forth in the complaints, which Ashland Inc. denies, Ashland Inc. alleges that any award of damages shall be reduced in proportion to the percentage of fault attributable to the plaintiffs.

64.     If it is determined that plaintiffs, or anyone on whose behalf plaintiffs are allegedly suing, was injured as set forth in the complaints, which Ashland Inc. denies, Ashland Inc. alleges that any award of damages shall be reduced in proportion to the percentage of fault

attributable to third parties (including but not limited to persons or entities responsible for gasoline leaks or spills).

65. The injuries alleged in the complaints, if any, may be reasonably apportioned among the defendants, as each defendant's alleged acts and omissions are divisible and distinct. Therefore, no defendant is jointly and severally liable to plaintiffs for any claim alleged in the complaints.

66. Plaintiffs have unreasonably failed to mitigate their damages, if any.

67. To the extent that any party has settled or may settle in the future with plaintiffs, Ashland Inc. asserts its entitlement to an appropriate credit or reduction of any judgment(s) against it.

68. Plaintiffs' claims for punitive damages violate the provisions of the U.S. Constitution, including but not limited to those provisions requiring due process of law and prohibiting excessive fines.

69. Ashland Inc. incorporates by reference any affirmative defense, whether general or specific to a specific State, alleged by other defendants in MDL 1358.

70. The pleading of the defenses described above shall not be construed as an undertaking by Ashland Inc. of any burden which would otherwise be the responsibility of plaintiffs.

71. Plaintiffs are public entities and/or authorities seeking compensation for damages to natural resources under their jurisdiction or purview. These public entity/authority plaintiffs have improperly delegated the power to prosecute these cases to private attorneys on a contingent fee basis. Such delegation is against public policy.

## V.   <u>AFFIRMATIVE DEFENSES APPLICABLE TO PARTICULAR STATES</u>

For its separate defenses to the complaints in MDL 1358 cases from particular states (for which an answer is presently required, and in which Ashland Inc. has been properly named and served), Ashland Inc. states as follows:

**IOWA**

1.    The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, Iowa Code Ann. §§ 614.1(2) and 614.1(4).

2.    Plaintiffs' recovery is barred by their contributory fault, which is greater than the fault of all persons whose fault may have proximately contributed to plaintiffs' damages.  Iowa Stat. Ann. § 668.3.

3.    Recovery is barred or must be reduced, in whole or in part, based on the doctrine of comparative negligence.

4.    Ashland Inc. is not jointly and severally liable because it bears less than 50% of the total fault of all parties.  Iowa Stat. Ann. § 668.4.

5.    Plaintiffs assumed the risk of any alleged injury.

6.    Ashland Inc.'s products "conformed to the state of the art in existence at the time." Iowa Stat. Ann. § 668.12(1).

7.    Ashland Inc. cannot be liable for failure to warn because the alleged "risks and risk-avoidance measures . . . should be obvious to, or generally known by, foreseeable product users." Iowa Stat. Ann. § 668.12(3).

8.    Ashland Inc. cannot be liable because "a product bearing or accompanied by a reasonable and visible warning or instruction that is reasonably safe for use if the warning or

instruction is followed shall not be deemed defective or unreasonably dangerous on the basis of failure to warn or instruct." Iowa Stat. Ann. § 668.12(4).

9.      Plaintiffs' efforts to impose liability on Ashland Inc. without proof of causation violates the Due Process and other clauses of the federal and state constitutions.

**MISSOURI**

1.      The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to,  Mo. Ann. Stat. §§ 516.100, 516.120 and 516.010 (West).

2.      Plaintiffs' recovery is barred or must be reduced, in whole or in part, based on the doctrine of comparative fault.  Mo. Ann. Stat. § 537.765 (West).

3.      Any duty to warn, if one existed at all, was discharged pursuant to Mo. Ann. Stat. § 537.760 (West), because the alleged defects, if any, were open and obvious to Plaintiffs.

4.      Plaintiffs' product liability claims fail because Ashland Inc. had no duty to warn Plaintiffs, as Plaintiffs knew or should have known of the alleged danger.  Mo. Ann. Stat. § 537.760 (West).

5.      Plaintiffs' product liability claims fail because Ashland Inc.'s products were in conformity with generally recognized state of the art.  Mo. Ann. Stat. §§ 537.764 and 537.760 (West).

6.      Plaintiffs' product liability claims fail because Ashland Inc.'s products, at the time they were sold, were not in a defective condition or unreasonably dangerous when put to a reasonably anticipated use.  Mo. Ann. Stat. § 537.760 (West).

7.     Any alleged defective condition, of Ashland Inc.'s products at the time they were sold, was not the proximate cause of plaintiffs' injuries or harm.  Mo. Ann. Stat. § 537.760 (West).

8.     Plaintiffs' alleged injuries, if any, resulted from use of the product that was not reasonably anticipated by Ashland Inc. at the time that it sold or otherwise conveyed the product. Mo. Ann. Stat. § 537.760 (West).

9.     Plaintiffs' recovery of punitive damages arising out of their alleged injury is limited under Mo. Ann. Stat. § 510.265 (West).

          *          *          *

For each State described above, Ashland Inc. incorporates by reference any affirmative defense, whether general or specific to another State, alleged herein or by other defendants in MDL 1358.

The pleading of the defenses described above shall not be construed as an undertaking by Ashland Inc. of any burden which would otherwise be the responsibility of plaintiffs.

**WHEREFORE**, Ashland Inc. requests entry of judgment dismissing the complaints with prejudice, and awarding Ashland Inc. its costs and attorneys' fees, and such other relief as the Court may deem just and proper.

Dated:  November 11, 2013

Respectfully submitted,

Steven L. Leifer
Baker Botts LLP
1299 Pennsylvania Avenue NW
Washington, D.C.  20004-2400
202-639-7723
sleifer@bakerbotts.com

*Attorneys for Ashland Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 11, 2013, a true and correct copy of DEFENDANT ASHLAND INC.'S THIRD AMENDED MASTER ANSWER AND AFFIRMATIVE DEFENSES was electronically served on counsel of record for Plaintiffs and Defendants in MDL No. 1358 via LexisNexis File & Serve.

Christopher Danley