# McDermott
# Will & Emery

Boston Brussels Chicago Dusseldorf London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington, D C

Peter J Sacripanti
Attorney at Law
psacripanti@mwe.com
212 547 5583

November 13, 2013

**BY ELECTRONIC MAIL AND HAND DELIVERY**

The Honorable Shira A. Scheindlin
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1620
New York, New York 10007-1312

      Re:    Master File C.A. No. 1:00-1898 (SAS), M21-88, MDL No. 1358
               *Defendants' Pre-Conference Reply Letter for November 18, 2013 Conference*

Dear Judge Scheindlin:

      Defendants respectfully submit this reply letter ahead of the November 18 conference.[1]

## JOINT AGENDA ITEM

**I.    MDL 1358: CMO for Newly Filed MTBE Cases**

      The parties' joint proposed CMO is attached at Exhibit A.

## PLAINTIFFS' AGENDA ITEMS

**I.    New Jersey: Settlement Submission Protocol**

      Defendants are in agreement with the New Jersey Plaintiffs' proposed protocol for submission of settlements, with one exception. Defendants do not believe there is a legal basis for the "forfeiture" language contained in paragraph 2 ("Any defendant who does not comment during this period forfeits the right to object to settlement."). Comments provided during the regulatory comment period are intended, *inter alia*, to obtain the information necessary to make a subsequent determination as to whether the settlement itself is fair and adequate. Therefore, Defendants may not, at the time of comment, be aware of all arguments they may wish to make to the Court. If the Court is inclined to keep Plaintiffs' suggested language, Defendants request that the following language be added to the paragraph: "A defendant need not include all of its

---

[1] Due to the number of issues raised by Plaintiffs, Defendants respectfully request an extension of the page limitation for reply letters.

U.S. practice conducted through McDermott Will & Emery LLP.
340 Madison Avenue New York New York 10173 Telephone: 212.547.5400 Facsimile: 212.547.5444 www.mwe.com

The Honorable Shira A. Scheindlin
November 13, 2013
Page 2

arguments and/or objections to the settlement during the comment period, and does not waive objections to judicial approval on grounds not included in such comments."

## II.  Puerto Rico: Pending Motions of Idemitsu and Vitol Defendants

Vitol and Idemitsu Apollo Corporation ("IAC") have separately moved for summary judgment on the basis of the statute of limitations seeking rulings similar to those already issued by the Court in favor of Peerless and Trammo. In its pre-conference letter, Plaintiffs have joined the two motions and requested oral argument on an issue Plaintiffs' have raised in opposition to Vitol's summary judgment motion and will presumably also raise in response to the summary judgment motion of IAC, which is not yet fully briefed. Oral argument is not necessary for determination of these motions.

Vitol and IAC argue that the Commonwealth had constructive (Vitol) or actual (IAC) knowledge of their activities more than a year before bringing suit against them, which they did not do until after the Supreme Court of Puerto Rico abrogated the rule of indefinite tolling of the statute of limitations in *Fraguada Bonilla v. Hospital Auxilio Mutuo*, 186 D.P.R. 365, 2012 WL 365533 (2012). Plaintiffs now argue that solely for Count V of the Third Amended Complaint, the statute of limitations does not begin to run until the EQB has issued an administrative finding of an EPPA violation. In other words, the EQB argues that it can toll the statute of limitations indefinitely by declining to issue an administrative finding of contamination, even though it alleges such contamination in this lawsuit. The cases cited by Plaintiffs involved a private right of action brought by private individual plaintiffs (not the Commonwealth) who claimed damages as a result of gasoline leakage from underground storage tank. Those cases found that the statute of limitations should not run against **a private individual plaintiff** until there is some event that should give that private individual plaintiff notice of injury. In the case cited by Plaintiffs, that notice to private individual litigants came as a result of an administrative finding by EQB that there had been an EPPA violation and the court found that a private litigant should not be chargeable with notice of an EPPA violation before the EQB has identified such a violation. That has nothing to do with this case, in which the EQB knew of and alleged an EPPA violation in 2007 in the original Complaint. Whether case law relating to knowledge imputable to private litigants applies to this case brought by the EQB is not a complicated legal proposition. No oral argument on this issue is needed or would be helpful to the Court.

## III.  Puerto Rico: CMO 4 Declarations

This is Plaintiffs' third bite at this now rotten apple. When previously raised, Plaintiffs were told, twice, to conduct individual meet and confers on the alleged deficiencies with each Defendant's discovery responses on the very issues covered by CMO 4. *See generally July 17, 2013 Status Conf. Tr.* at 28-33; *see also Sept. 10, 2013 Status Conf. Tr.* at 54:15-19 ("COURT: I agree with you, Mr. Gilmour, you're entitled to 41 answers, but I agree with the defendants you have to be defendant specific. If Esso is done, they're done. You don't have a problem. If somebody else isn't done, you do have a problem."); *id.* at 64:1-8 ("MR. RICCARDULLI: I

The Honorable Shira A. Scheindlin
November 13, 2013
Page 3

agree, your Honor. ... [W]hat I'm representing is ... I am certain that many defendants, all of the defendants responded to this discovery. ... THE COURT: Correct. It has to be done defendant by defendant."). To date, that has not been done.

The meet and confer process is crucial, because at the crux of this issue is Plaintiffs' apparent dissatisfaction with Defendants' responses to discovery served back in 2010. Specifically, on February 11, 2010 Plaintiffs served their *First Set of Interrogatories to Defendants* ("First Set"). When compared with the provisions of CMO 4, it is clear that Plaintiffs drafted the First Set to capture the same information. *See* Ex. B (comparison of CMO 4 to First Set). In other words, Defendants have provided the CMO 4 information, just in a different format. If Plaintiffs have concerns or issues with the content of those discovery responses, those should be identified to us, defendant by defendant. It certainly is not an efficient use of time to convert prior discovery responses into a declaration only to learn afterwards that Plaintiffs still believe Defendants have not sufficiently answered. Plaintiffs' repeated requests for declarations should be denied.

### IV. Puerto Rico: Sunoco's Refusal to Produce Duplicative Rule 30(b)(6) Witnesses

The Sunoco Defendants have moved the Special Master for entry of a protective order because (i) the additional Rule 30(b)(6) deposition testimony sought by Plaintiff is unreasonably duplicative of the Rule 30(b)(6) testimony Sunoco has already given, (ii) Plaintiff has already had ample opportunity to take the discovery on the topics at issue, and (iii) the burden of additional Rule 30(b)(6) testimony would substantially outweigh any benefits.[2] *See Ltr. from D. Krainin to Special Master* (Nov. 7, 2013) (at Ex. C). Under any of these circumstances (let alone all), a court "must" limit the use of the discovery method sought. *See Moore's Federal Practice* (3d Ed.), §26.60[2], [3], [5].[3]

Sunoco does not object to the Court resolving this dispute if it is so inclined but it respectfully suggests that resolution would require a detailed review of the Rule 30(b)(6) deposition notices at issue, as well as the relevant Rule 30(b)(6) testimony that Sunoco has given to date. Sunoco has provided a detailed summary in its submission to the Special Master, Ex. D, which shows the overwhelming extent to which the topics at issue in the new notices overlap

---

[2] The benefit of any additional Rule 30(b)(6) testimony by Sunoco would be extremely limited given that most of Plaintiff's topics are phrased as yes or no questions, and the answer to nearly all is "no." *See Comparison of Rule 30(b)(6) Deposition Notices to Sunoco* (at Ex. D).

[3] Sunoco filed its motion with the Special Master promptly after it became clear that Plaintiff would refuse to accept Sunoco's proposed compromises (i.e., a declaration, additional documents and fact witnesses). Sunoco filed with the Special Master because it was the procedurally proper thing to do in the face of objectionable notices and because the Court made clear during the telephonic hearing in October that such disputes, particularly when they involve detailed issues, should be submitted to the Special Master.

The Honorable Shira A. Scheindlin
November 13, 2013
Page 4

with the topics and testimony Sunoco has already given. *See id.*; *see also July 9, 2013 Deposition Notice* (at Ex. E); *Sept. 13, 2013 Deposition Notice* (at Ex. F); *Oct. 11, 2013 Deposition Notice* (at Ex. G).

The Court did suggest during the recent telephonic hearing that the topics at issue might be more conducive to a deposition than a declaration. That conclusion, however, was based on the following inaccurate or misleading statements by Plaintiff's counsel: (i) that the witness was "a [reme]diation person" (in fact, he was an environmental engineer responsible for permitting and other operational aspects of the Yabucoa facility); (ii) that "he admitted he didn't know how they manufactured reformate" (in fact, he made no such admission and is knowledgeable about the manufacture of reformate); and (iii) that he "did [not] know anything about ... how the gasoline is blended at Peerless" (but this information is not within Sunoco's control and therefore would not be addressed by a second or third 30(b)(6) deposition). *See Oct. 23, 2013 Hrg. Tr.* 13-16 (at Ex. H); *Ltr. from D. Krainin to T. O'Reilly* (Oct. 25, 2013) (at Ex. I); *Ltr. from D. Krainin to T. O'Reilly* (Nov. 1, 2013) (at Ex. J).

Sunoco has agreed to produce additional documents[4] and to facilitate the appearance of former employees as fact witnesses, but Plaintiffs' request for a second and third bite at the Rule 30(b)(6) apple would be unduly burdensome. Sunoco spent hundreds of hours of attorney and witness time to prepare for the two days of Rule 30(b)(6) deposition testimony it has already given (not to mention the dozens of witnesses Sunoco has produced in prior MTBE actions regarding general liability issues). Sunoco objects to Plaintiff's demands for duplicative deposition testimony on topics that were or could have been covered in the earlier deposition, and respectfully suggests that, as the Court has said, it is time for Plaintiff to "get efficient" and accept written answers to these questions, as the Court has directed in similar situations.[5]

V. **Puerto Rico: Declarations Regarding Authenticity of Documents**

On December 6—one week ago—the Esso and ExxonMobil Defendants provided a draft declaration on authentication of documents to Plaintiffs. To date, we have received no response as to whether that draft is acceptable, and a number of Defendants have indicated that they were

---

[4] Plaintiff's allegations that Sunoco "withheld" documents are without merit. Sunoco has objected for years to the scope of Plaintiff's document requests and proactively raised the issue months before the recent Rule 30(b)(6) deposition. Plaintiff did nothing in response for years, only demanding an opportunity to review certain documents after the deposition had concluded. In the spirit of compromise, Sunoco has agreed to produce the documents electronically, notwithstanding that they are either non-responsive or subject to timely objections.

[5] In reviewing a substantially identical deposition notice served on Chevron, the Court concluded, "Plaintiff had the opportunity to ask the ten questions and didn't ... . That doesn't give them a right to do this deposition again. They are limited to written questions." *Oct. 22, 2013 Hrg. Tr.*, at 26:12-19 (at Ex. K).

also awaiting such response to use as guidance for their own (or a joint) declaration. That said, Liaison counsel has reached out to Defendants who have not yet provided a declaration regarding authentication of documents. Although we have not yet received responses from all Defendants, we understand that a number of Defendants are willing to provide such drafts and will speak with Plaintiffs directly about the content and timing.

### VI. Puerto Rico: Deposition Dates for Individuals Associated with Shell/Sol

The issue with the fact witnesses Plaintiffs claim are associated with Sol was submitted to the Special Master on November 8, 2013 in accordance with the Court's instructions during the October 23 telephone conference. A copy of Sol's filing was submitted to the Court's chambers and a copy, without exhibits, is attached as Exhibit L. Thus, Sol understands the matter should be addressed by the Special Master. Nevertheless, Sol will respond to Plaintiffs' continued efforts to mislead the Court to Sol's detriment. Sol incorporates herein all arguments made in their letter to the Special Master.

As an initial matter, Plaintiffs' reference to the Toraño and Cintrón depositions is unwarranted and intended solely to prejudice Sol. The issue with those witnesses was not Sol's failure to produce them, but rather Plaintiffs' unrepentant effort to take ex-parte depositions of Sol's former employees without notice to any of the defendants, even to Sol. After the Court excused Plaintiffs' "clerical error," Sol assisted in the production of both witnesses.

As to the current list of witnesses, Plaintiffs continue to insist that Sol produce a witness by the name of Carlos Rodriguez, who they have not in any way identified with Sol. Plaintiffs have so far submitted two different deposition notices for a Carlos Rodríguez: one is associated with the operation of the trial site related to defendant Total Petroleum Puerto Rico Company, the other is associated with Shell Chemical Yabucoa, Shell Oil Company, Shell Trading (US) Company, Shell Western Supply & Trading, and Shell International Petroleum Company.[6] Neither of these witnesses, assuming they are indeed two different people, is anywhere alleged to be associated with Sol. It is simply absurd that Plaintiffs continue to insist that Sol must produce a witness related to other Defendants in this case.

Furthermore, Sol has exhausted its efforts to produce the other three witnesses. Mr. Luis Fernandez ceased being an employee in September 2002 and is not a resident of Puerto Rico or the United States. His last known telephone number is in the Dominican Republic. Sol's concerted attempts to contact Mr. Fernandez have been to no avail. Sol further attempted to contact Mr. José Marrero, who retired on August 31, 2010, and Ms. Eneida Hernandez, who ceased being an employee in January 1999, at their last known addresses and telephone numbers, with no success. Sol further inquired if any current employees kept in contact with any of them, also to no avail. Thus, having exhausted these efforts, Sol provided Plaintiffs with their last

---

[6] The Shell Defendants note that they have examined their records and found no reference to or contact information for a current or former employee named Carlos Rodriguez.

known addresses as directed by the Court. It is now Plaintiffs' burden to locate and subpoena these witnesses for deposition pursuant to the Court's order during the October 22, 2013, telephone conference.

### VII. Puerto Rico: Idemitsu's Motion to Delay Deposition Past Close of Discovery Date

IAC asked Plaintiffs and the Special Master to hold the IAC corporate deposition, noticed for November 25-26, in abeyance pending a Court ruling on IAC's summary judgment motion. In response, Plaintiffs on November 11 issued a subpoena on IAC for a corporate deposition. In light of the subpoena, IAC understands that the deposition will go forward whether or not it remains a party. The November 25-26 dates noticed by Plaintiff are not convenient. IAC has offered dates during December 2-6, which Plaintiffs have declined. IAC has offered December 19, but Plaintiffs do not agree to move the date from November 25-26. IAC may be filing a motion for protective order to address these issues.

## DEFENDANTS' AGENDA ITEMS

### III. Puerto Rico: Defendants' Proposed Expert Protocol

The parties' joint proposed Expert Protocol is attached at Exhibit M.

### IV. Puerto Rico: Deadline for Plaintiffs to Produce Budget Information

The parties are continuing to meet and confer on this issue. However, if not resolved prior to the Status Conference, Defendants will request a date certain for the production of these materials and leave to take the 30(b)(6) on Public Funds—originally served on July 30—after the close of fact discovery, if necessary.[7]

### VI. Puerto Rico: Preparation for Plaintiffs' Corporate Witness on MTBE Knowledge

For not the first time, Defendants come to Your Honor with concerns regarding Plaintiffs' paid consultant and 30(b)(6) witness, Bruce Green. Last week, Mr. Green was again presented as Plaintiffs' corporate representative, this time on Knowledge of MTBE. Pursuant to the parties' jointly submitted Protocol Governing Rule 30(b)(6) Depositions:

> [T]he responding party will use good faith efforts to prepare the witness(es) to testify as to each of the identified topics contained in the notice. Good faith efforts include, but are not limited to, having the witness review the relevant

---

[7] The deposition currently is schedule for November 21. However, pursuant to CMO 107, Plaintiffs' production of documents reviewed by the witness and/or otherwise responsive to the notice were due yesterday. They have not yet been received.

> documents and speak to other people with knowledge of the notices topics who are/were employed by the responding party.

CMO 107, at ¶ 4 (emphasis added). Mr. Green was undeniably unprepared to testify as a 30(b)(6) witness at this deposition. Mr. Green did not speak to any current or former employees of the Commonwealth to prepare. *See Rough Tr. of 30(b)(6) on MTBE Knowledge* (Nov. 7, 2013), at 30-34 (at Ex. N). When asked if he spoke to "anyone at all to assist [] in giving testimony relative to the topics identified in [the deposition notice]," Mr. Green responded that he spoke only "with [outside] counsel and their staff." *Id.* at 34:9-35:1.[8] Further, Mr. Green confirmed that he did not independently search for documents (other than some searches of the U.S. E.P.A. and U.S.G.S. websites), but relied exclusively on documents selected for him by counsel. *Id.* at 39:23-40:6, 50:9-52:7. This lack of preparation is particularly troubling because Mr. Green has absolutely no personal knowledge of these issues—he has never worked for the Commonwealth. In other words, what Defendants got from this deposition was nothing more than the lawyers' interpretation of what the Commonwealth knew about MTBE and when.

For example, Mr. Green was asked about a 1997 letter addressed to the former EQB Director of Water Quality containing information on the characteristics of MTBE. Mr. Green stated that he could not confirm whether this document even was received by the Director, as it was not bates stamped. Mr. Green also acknowledged that he did not attempt to confirm receipt with Mr. Ayala or anyone else in the Commonwealth. *Id.* at 96:4-97:14. Similarly, Mr. Green was presented with a comprehensive, 400+ page EPA training document on MTBE, including sign-in sheets listing EQB personnel who apparently attended the three-day training.[9] In a previous deposition, where Mr. Green was presented as a 30(b)(6) on one of the Trial Sites, he was presented with a document indicating a list of employees invited to attend that the 1999 training. At the time, he testified that he did not make an effort to confirm who had attended that seminar as it was not a designated topic for the deposition. For the 30(b)(6) on Early Knowledge, however, Topic 18 specifically requested testimony on this seminar. *See Defs.' Notice of 30(b)(6) Depo. of Plaintiffs Concerning Knowledge of MTBE*, at Topic 18 (at Ex. O).[10]

---

[8] Mr. Green also testified that he reviewed certain deposition transcripts. While that may be one task for preparation, it is not sufficient. Such transcripts would be helpful only to the extent the witness was asked about the designated topics and, even if asked, would depend on whether that witness had an independent memory of the topic or, if not, was presented with documents to refresh his or her recollection.

[9] This document was obtained directly from the U.S. E.P.A. immediately prior to this deposition. Plaintiffs maintain that it cannot be located in their files but, again, Mr. Green did not speak with any one of the listed invitees to investigate.

[10] Defendants requested to hold the deposition open to address the 1999 MTBE training. Plaintiffs' counsel's response was that we should address it with the Court. *See Rough Tr. of 30(b)(6) on MTBE Knowledge* (Nov. 8, 2013), at 304:18-21 ("[I]f anyone wants to keep this

The Honorable Shira A. Scheindlin
November 13, 2013
Page 8

Again, however, Mr. Green did not speak with any employees, including those identified as possible attendees, to confirm attendance. *See Rough Tr. of 30(b)(6) on MTBE Knowledge* (Nov. 7, 2013), at 137-39. When Mr. Green was asked about this document he stated that he had not seen it before and that in the depositions he had reviewed employees had not recalled attending. *See id.* (Nov. 8, 2013), at 185:9-21; *see also supra* note 8.

Defendants are entitled to a properly prepared witness who has thoroughly investigated Plaintiffs' knowledge of MTBE throughout the relevant time period, including, but not limited to, testimony regarding the 1999 EPA training.

***

As always, we appreciate your Honor's attention to this matter and ask that the letter be docketed by the Clerk's Office so that it is a part of the record.

Respectfully submitted,

*Peter John Sacripanti*

Peter John Sacripanti

cc:   All Counsel By LNFS, Service on Plaintiffs' Liaison Counsel

---

open, plea[se] address [J]udge [Scheindlin] because that's the only way it's going to happen."). Therefore, Defendants did not believe that a meet and confer would be fruitful.