| | |
|---|---|
| **UNITED STATES DISTRICT COURT** | ) **Master File C.A. No. 1:00-1898** |
| **SOUTHERN DISTRICT OF NEW YORK** | ) |
| _____ | ) **MDL 1358 (SAS)** |
| | ) **No. M21-88** |
| | ) |
| **In re Methyl Tertiary-Butyl Ether** | ) **TOTAL PETROCHEMICALS &** |
| **("MTBE") Products Liability Litigation** | ) **REFINING USA, INC.'S NINTH** |
| _____ | ) **AMENDED MASTER ANSWER AND** |
| | ) **AFFIRMATIVE DEFENSES** |
| | ) |

**This document relates to:**[1]

*City of Manning v. Ashland Inc. et al.*, Case No. 1:13-CV-07272 (SAS)
*City of Portageville v. Ashland Inc.*, Case No. 1:13-CV-07299 (SAS)
*Hinesburg, Town of v. Atlantic Richfield Company et al.*, Case No. 1:13-CV-07247 (SAS)
*Town of Brewster et al. v. Atlantic Richfield Company et al.*, Case No. 1:13-CV-07271 (SAS)
*New Jersey Dept. of Environmental Protection v. Amerada Hess Corp. et al.*, No. 08-CV-0312

_____

Pursuant to the Master Answer agreement among the parties, CMO #6, and the Court's instructions during the January 13, 2005 status conference, Total Petrochemicals & Refining USA, Inc. ("Total") answers the complaints in those MDL 1358 cases listed in the style of this pleading, as follows.

_____

[1] Total is not submitting repetitive motions to dismiss or strike in cases more recently consolidated in MDL 1358. However, Total expressly reserves the arguments set forth in motions to dismiss or strike previously filed in cases in this MDL proceeding.

## NINTH AMENDED MASTER ANSWER

I.   **ADMISSIONS AND STATEMENTS REGARDING SELECT ALLEGATIONS**

A.   **Basic Defendant Information**

Total is a Delaware corporation with its principal place of business in Houston, Texas. Total has been named in certain of the MDL 1358 cases under the names of various predecessor entities, including Fina Oil and Chemical Company, ATOFINA Petrochemicals, Inc. and TOTAL PETROCHEMICALS USA, INC.   Fina Oil and Chemical Company was renamed ATOFINA Petrochemicals, Inc. on June 19, 2000.   ATOFINA Petrochemicals, Inc. changed its name to TOTAL PETROCHEMICALS USA, INC. on October 1, 2004.   TOTAL PETROCHEMICALS USA, INC. changed its name to Total Petrochemicals & Refining USA, Inc. on January 13, 2012.

Since 1979, Total has operated two refineries in the United States.   Total purchased the Big Spring, Texas refinery in 1963 and operated it until August 2000, when it was sold to a third party.   In 1973, Total purchased a refinery in Port Arthur, Texas, which it continues to operate.

B.   **Allegations Regarding Sale or Distribution of Gasoline with MTBE or TBA to States in Question**

Total has not sold or distributed tertiary-butyl alcohol ("TBA") or gasoline containing TBA.   Total admits that it has sold reformulated gasoline containing MTBE at delivery points in New Jersey, North Carolina, Pennsylvania, and Texas at certain times during the relevant time period.   However, Total does not, in the ordinary course of business, track the ultimate destination of refined products it sells to its customers, nor does it dictate the retail outlets or distribution terminals to which its customers send gasoline containing MTBE, nor does it know whether any of those terminals actually supply gasoline or gasoline containing MTBE to any part of Iowa, Massachusetts, Missouri, New Jersey, or Vermont.

#1850121.19

### C.   Allegations Regarding Production of MTBE or TBA

Total has not manufactured TBA.

Total owned and operated a refinery in Big Spring, Texas from 1963 to August 2000. From approximately October 1985 to 1996, Total manufactured neat MTBE at the Big Spring, Texas refinery for octane enhancement purposes.  On information and belief, all MTBE manufactured was used by Total for gasoline blending at the Big Spring refinery; the market area in which gasoline containing MTBE manufactured by Total is distributed is limited to Arizona, New Mexico, Oklahoma, and Texas.

Beginning in approximately 1984, and continuing into 2007, Total sent a mixed butylenes stream from its Port Arthur, Texas refinery to a facility in Port Neches, Texas owned and operated by Huntsman Petrochemical Corporation or its predecessors ("Huntsman"), at which Huntsman extracts isobutylene from the stream and reacts it with methanol to produce MTBE.

### D.   Allegations Regarding Properties and Behavior of MTBE

Total admits that MTBE is an aliphatic ether that does not occur naturally.  Total admits that there are various methods for the production of MTBE and that one method of production involves the reaction of methanol and isobutylene.

Total states that solubility and mobility are relative properties and that while MTBE may be more soluble and mobile in water than certain gasoline components, such as the BTEX compounds, it is less soluble and mobile in water than other components sometimes blended into gasoline, such as ethanol.  Total further states that MTBE's behavior in the environment – and its behavior relative to BTEX – is dependent on a variety of factors, including, but not limited to, the nature or method of its release, the presence of other contaminants, the geological setting, and environmental and microbial factors.

#1850121.19

Total states that while under certain conditions, and at certain points in time, MTBE may biodegrade less readily than some other components of gasoline, MTBE has been found to naturally attenuate and biodegrade in numerous ways.

### E.    Allegations Regarding Properties, Behavior, and Health Effects of TBA

Total states that it has not manufactured TBA or sold or distributed gasoline containing TBA.

Total admits that TBA is used as a raw material in the production of isobutylene, that it can be an intermediate product of MTBE biodegradation, and that it has sometimes been added to gasoline as an oxygenate.  However, Total denies that it has ever added TBA to gasoline. Total admits that because TBA is an intermediate product of MTBE biodegradation, it may appear where MTBE is found in the environment.

Total denies Plaintiffs' claim that TBA has the "same characteristics as MTBE."  TBA and MTBE are clearly different chemicals, and thus their behaviors in the environment are not identical.  Total states that solubility and mobility are relative properties and that TBA may be more soluble and mobile in water than certain gasoline components, such as the BTEX compounds.  Total further states that TBA's behavior in the environment – and its behavior relative to BTEX – is dependent on a variety of factors, including, but not limited to, the nature or method of its release, the presence of other contaminants, the geological setting, and environmental and microbial factors.

Plaintiffs' allegations that TBA is a public health threat and is injurious to human health are unsubstantiated.  Total believes that the responsible federal and state regulatory agencies have considered and adopted standards fully protective of any alleged health concerns related to TBA.

Plaintiffs' claims that TBA is more expensive to cleanup than MTBE, and that the presence of TBA in water being treated for MTBE may generate compounds potentially of health and environmental concern, are unsubstantiated.

Total has not manufactured TBA, nor has it knowingly sold or distributed TBA or gasoline containing TBA. Total had no duty to warn Plaintiffs, regulators, and the general public of a chemical it neither manufactured, sold, nor distributed.

Total lacks sufficient information to either admit or deny Plaintiffs' claim that TBA is appearing in water supplies all over the country, where MTBE contamination exists.

**F.      Allegations Regarding Taste and Odor**

Total admits that individuals vary in their ability to detect the taste and odor of MTBE in water and that at certain concentrations the presence of MTBE in water may be perceived by taste and odor. Total states that the responsible federal and state regulatory agencies have considered and adopted standards fully protective of MTBE taste and odor concerns.

**G.      Allegations Regarding Health Effects of MTBE**

Plaintiffs' allegations of dire human health concerns from MTBE are unsubstantiated. MTBE has been studied publicly by scientists and government agencies for more than 20 years. MTBE has never been reliably linked to cancer, and there is no consensus in the scientific field that it is carcinogenic; indeed, major world health organizations have long refused to list MTBE as a human carcinogen. Total admits that the United States Environmental Protection Agency ("EPA") has in the past classified MTBE as a possible human carcinogen. Total states that the responsible federal and state regulatory agencies have considered and adopted standards fully protective of any alleged health concerns related to MTBE.

#1850121.19

**H.**     **Allegations Regarding Storage and Handling of Gasoline**

Total admits that it is commonly known that gasoline is sometimes unintentionally released into the environment from underground storage tanks and associated piping ("USTs") and by other means, and admits that millions of dollars and vast resources have been expended over the past 30 years by oil companies, retail site owners and operators, industry groups, and regulatory agencies to eliminate or reduce leaks and improve leak detection. Total states that it is likewise commonly known that all gasoline, regardless of its composition, should be handled carefully and should not be spilled.

**I.**     **Allegations Regarding Knowledge of MTBE Contamination at Particular Locations In 1980s**

The complaints purport to describe various publicly reported incidents of MTBE contamination in Maryland, New Jersey, New York, and Maine in the 1980s.

Total lacks sufficient information to either admit or deny that in the early 1980s there was publicity regarding a contamination event in Rockaway, New Jersey. Total denies any contemporaneous involvement in or knowledge of such event.

Total lacks sufficient information to either admit or deny that the 1986 Garrett and Moreau paper described MTBE presence in certain wells in Maine. Total denies any knowledge of the conclusions reached in the 1986 Garrett and Moreau paper. On information and belief, Total states that it was widely known among government regulators in the 1980s that various incidents involving MTBE contamination – including the incidents Plaintiffs' complaints regularly list – had occurred.

**J.**     **Allegations Regarding Participation in Industry Associations or Lobbying Activities**

The chemical properties of ethers like MTBE have been known in the public arena for many, many years. Plaintiffs' claim that defendants, including Total, somehow hid this

- 6 -

information from them, or from the U.S. government, is baseless. Total denies that it had any agreement with another defendant to withhold from Plaintiffs or government regulators information concerning MTBE.

Total admits that prior to 1990, Congress was preparing to take action to address the nation's smog problem. Total admits that federal government agencies were aware of MTBE's chemical characteristics in 1986 or earlier, and that EPA held public meetings about MTBE in 1986. Total denies it was a member of OFA or the MTBE Committee. Total admits it was a member of API for a certain time but denies that it participated in the EPA Testing Consent Order for MTBE.

In response to Plaintiffs' allegation that Congress adopted the Reformulated Gasoline ("RFG") Program as part of the 1990 Amendments to the Clean Air Act "[a]s a result of tremendous lobbying efforts by the industry, including Defendants," Total admits on information and belief that representatives of major oil companies provided comments and testimony during the rulemaking process for the 1990 Amendments to the Clean Air Act, while other companies actively resisted the RFG Program's requirement of oxygen content levels.

### K. Allegations Regarding Requirements and Effects of the 1990 Clean Air Act Amendments

Total states that although the 1990 Clean Air Act Amendments ("CAAA") did not literally require use of MTBE as a gasoline additive, in practical terms the CAAA compelled MTBE's use. EPA and Congress knew that the oxygen requirements of the Act could not and would not be met without MTBE's use.

Total states that beginning in the late 1970s, following the EPA's mandate to reduce lead in gasoline, most U.S. refiners began evaluating oxygenates and octane enhancers such as ethanol and MTBE. In 1990, with the amendments to the Clean Air Act, the federal government

mandated an increase in the use of oxygenates (up to 2.7% oxygen content) in winter gasoline in many cities to meet ambient carbon monoxide air requirements to be effective beginning in 1992.  In 1995, various oxygenates were extended by regulation to year-round use for severe ozone non-attainment areas in the United States.  Reformulated gasolines ("RFG") used to meet these oxygenate standards time have sometimes contained between 10% and 15% MTBE, or up to 10% ethanol.

Total denies that ethanol was available in sufficient supply to meet the national demand for oxygenated gasoline in the RFG and oxyfuel regions when the CAAA provisions requiring 2% oxygen content in year-round gasoline in areas using RFG became effective.

Total admits that, at all times when it has refined crude oil, owned refineries, and manufactured gasoline, it has undertaken to comply with the legal requirements of the lead phase-out, the RFG Program, and the Oxygenated Fuel Program.  Total further states that several government agencies have concluded that MTBE has contributed substantially to reducing air pollution.

### L.   Allegations Regarding MTBE-Related Actions Taken By State or Federal Governmental Bodies

Total admits that in 2000, the EPA provided advance notice of its intent to initiate a rulemaking pursuant to the Toxic Substances Control Act ("TSCA") to eliminate or limit the use of MTBE as a fuel additive.  No such rulemaking was ever initiated.  Total admits that certain proposed legislation in the U.S. Congress may limit the use of MTBE in gasoline in the future.  Total admits that certain state legislatures or regulatory bodies have passed laws or adopted regulations to limit or eliminate the use of MTBE in gasoline.  The details of such laws are a matter of public record.

#1850121.19

**M.**    **Allegations Regarding Plaintiffs' Claimed Inability to Identify Relevant Sources of Gasoline Leaks or Spills Affecting a Given Site**

Gasoline leaks, whether containing MTBE or not, are almost always traceable to a specific source, limited to the immediate geographic area of the source, and remediable.  In the vast majority of leak incidents, a responsible party can be and is identified.  Total denies that gasoline can never be traced from a contamination site to its terminal or refinery source.

**N.**    **Allegations Purporting To Quote or Summarize Documents**

Numerous paragraphs in each complaint purport to quote from or summarize documents, statutes, and regulations.  These written materials speak for themselves.  The documents, statutes, and regulations referenced by Plaintiffs, which are not attached to the complaints, are the best evidence of their content, and Total therefore denies Plaintiffs' attempts to summarize or characterize the contents of these written materials.

**O.**    **Allegations Regarding Defendants Unrelated To Total**

Total is without knowledge or information sufficient to form a belief as to the truth of the matters averred in the complaints regarding the specific statements, acts, or omissions of defendants unrelated to Total.

**P.**    **Allegations Regarding Particular Claims or Counts**

In response to the portions of the complaints purporting to state particular common law or statutory claims, Total incorporates each paragraph of this Master Answer as if fully restated herein.  Total denies it is liable for any claim or cause of action in any MDL 1358 complaint.

**Q.**    **Allegations Regarding Claimed Injuries or Damages**

Some complaints make claims about contamination to specific wells, and others do not. Total is without knowledge or information sufficient to form a belief as to the truth of the matters averred in the complaints regarding specific incidents of alleged contamination.  Total believes

publicly available documents regarding Plaintiffs will demonstrate that many of the wells at issue have not been impacted by MTBE, or have been impacted historically but are not currently impacted, or have been impacted only at levels well below state action standards for MTBE.

With regard to alleged damages, the allegations require no further answer.  To the extent that further answer is deemed necessary, Total admits that Plaintiffs seek the relief mentioned in the complaints, but denies that Plaintiffs are entitled to any relief.

        **R.**     **Plaintiffs' Demands for Jury Trials**

Plaintiffs in all actions have demanded a trial by jury of all claims asserted in the complaints.  These jury demands require no answer.  To the extent any answer is deemed necessary, Total admits that Plaintiffs demand jury trials but denies that they are entitled to them.

        **S.**     **Plaintiffs' Allegations of Intentional, Willful, Deliberate, or Negligent Acts**

Total denies that it intentionally, willfully, deliberately, or negligently committed any acts that caused or foreseeably could have caused harm to Plaintiffs or any other party.

        **T.**     **Certain Plaintiffs' Allegations of Ownership of Groundwater Resources**

To the extent that Plaintiffs allege that they own or have the authority to protect groundwater, groundwater resources, water resources, water supplies, water rights, or drinking water wells, or any other right in and to water or groundwater, Total denies these allegations and denies that these Plaintiffs have standing to bring any claim based on allegations of property damage on behalf of themselves or any other person or entity.

## II.    GENERAL DENIAL OF REMAINING ALLEGATIONS

Total denies the remaining allegations in the complaints in those MDL 1358 cases for which an answer is presently required.

## III.    RESERVATION OF RIGHT TO AMEND

Total reserves the right to amend this Master Answer.

#1850121.19

**IV.    AFFIRMATIVE DEFENSES APPLICABLE TO ALL CASES**

For its separate defenses to the complaints in those MDL 1358 cases for which an answer is presently required, Total states as follows:

1.      Plaintiffs' claims are barred in whole or in part by the doctrine of federal preemption.

2.      At all relevant times, Total's actions were undertaken pursuant to, and its products complied with, applicable federal, state, and local laws, rules, regulations, and specifications.

3.      Plaintiffs' claims are barred in whole or in part because federal, state, and/or local authorities and agencies have mandated, directed, approved, and/or ratified the alleged actions or omissions of Total.

4.      All acts and conduct of Total, as alleged in the complaints, conformed to and were undertaken pursuant to statutes, government regulations, and industry standards and were based upon the state of knowledge existing at all material times alleged in the complaints.

5.      The relief sought by Plaintiffs' complaints is, in whole or in part, within the particular expertise of, and is being addressed by, federal and state governments and their relevant agencies, thus this Court should decline to exercise jurisdiction over this matter pursuant to the doctrine of primary jurisdiction.

6.      Plaintiffs have failed to exhaust their administrative remedies.

7.      Plaintiffs have a plain, common, adequate, and speedy remedy at law.  The equitable causes of action alleged in the complaints are thus barred.

8.      Plaintiffs are barred from claiming strict liability for design defect, as any attempt to reexamine the mandatory cost-benefit analysis delegated to and performed by the EPA pursuant to its obligations under the Clean Air Act (CAA) would be impermissible given that

Congress, in Section 211 of the CAA, authorized the EPA, and not the courts, to perform the cost-benefit analysis.

9.      If it is determined that Plaintiffs, or anyone on whose behalf Plaintiffs are allegedly suing, were injured as set forth in the complaints, which Total denies, Total alleges that such hardship is outweighed by the convenience and public service rendered by Total's actions.

10.      Each purported cause of action asserted in the complaints is barred under the doctrine of primary assumption of risk in that the general public, by and through its elected representatives and their appointees, knew and understood the alleged risks of harm presented by the use of MTBE, if any, and elected nevertheless to proceed to require the use of gasoline oxygenates and to specifically permit the use of MTBE as a gasoline oxygenate.

11.      To the extent that Plaintiffs have received or may receive the requested relief from a government agency, Total asserts its entitlement to an appropriate set-off or reduction of any judgment against it.

12.       Plaintiffs' claims are barred in whole or in part by the doctrine of accord and satisfaction.

13.      The appropriate forum for Plaintiffs' claims is an administrative agency, and therefore all proceedings before this Court should be stayed pending administrative resolution of the issues.

14.      The claims set forth in the complaints fail, in whole or in part, based on the doctrine of election of remedies.

15.      Each purported cause of action in the complaints as applied to Total is barred because the relief sought therein would pose unreasonable barriers to and substantial

burdens on interstate and/or international commerce in violation of the Commerce Clause of the United States Constitution and/or the North American Free Trade Agreement.

16.    The complaints fail to state a claim upon which relief may be granted and should, therefore, be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

17.    Because Plaintiffs have not suffered any cognizable harm and have not incurred any present damages, there is no current case or controversy and thus, Plaintiffs' claims are not ripe for adjudication.

18.    Plaintiffs have suffered no losses or injuries that were proximately caused by Total.

19.    Total's conduct was not the cause in fact of any injuries alleged by Plaintiffs.

20.    Plaintiffs have failed to state a cause of action for nuisance because they have neither alleged nor suffered any particularized injury.

21.    The alleged injuries and damages, if any, suffered as a result of conduct legally attributable to Total is *de minimis* and therefore any injunction would impose a disproportionate hardship on Total, as well as on the public, relative to the injury and damages allegedly suffered by Plaintiffs.  Accordingly, Plaintiffs are not entitled to injunctive relief as to Total as a matter of law.

22.    Plaintiffs do not have a legally cognizable injury.

23.    Alternatively, where MTBE contamination is below state action levels, Plaintiffs do not have a legally cognizable injury.

24.    Plaintiffs may not seek attorneys' fees as an element of relief.

25.    Plaintiffs have failed to properly present any claim for attorneys' fees.

- 13 -

26.     Because Plaintiffs have sued multiple parties, under multiple causes of action, with divisible damages, the claim for attorneys' fees must be proportioned among such parties.

27.     The claims set forth in the complaints are barred, in whole or in part, by the mootness doctrine.

28.     The complaints and each purported cause of action are barred, in whole or in part, by the doctrine of laches.  Plaintiffs' unreasonable and inexcusable delay in filing these actions caused substantial prejudice to Total.

29.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations.

30.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of repose.

31.     Plaintiffs are estopped by their conduct from asserting any of the purported claims alleged against Total in the complaints.

32.     Plaintiffs have not investigated the cause of the alleged harm or attempted to identify the actual responsible party or parties.

33.     Plaintiffs cannot establish the required predicates for their theories of collective liability, and therefore their defendant-identification burden remains.  In the event that the defendant-identification burden is shifted in the future, Total denies that it contributed to the contamination at issue.

34.     Plaintiffs' claims are barred in whole or in part by the doctrine of waiver.

35.     Plaintiffs assumed the risk of all acts, injuries, and damages that Plaintiffs now assert against Total.

- 14 -

36.     Total is entitled to total or partial indemnity from those individuals or entities who are responsible for Plaintiffs' injuries or damages, if any, in an amount directly proportionate to their relative culpability.

37.     Plaintiffs lack the capacity to sue.

38.     Plaintiffs lack standing to sue.

39.     Plaintiffs' trespass claims are barred because Total's conduct caused no physical impact to Plaintiffs' property.

40.     There is a defect or misjoinder of parties, in that Plaintiffs have failed to join indispensable or necessary parties.

41.     Plaintiffs have failed to name the party or parties responsible for the alleged harm.

42.     The claims set forth in the complaints fail, in whole or in part, because of the failure to identify which defendant, if any, proximately caused the alleged harm.

43.     Plaintiffs' claimed injuries were caused in whole or in part by others, whose actions were not controlled by or related to Total.  Such actions are the superseding, supervening, and/or intervening causes of Plaintiffs' injuries, and therefore Plaintiffs may not recover from Total as a matter of law.

44.     Plaintiffs' claims must be dismissed because they have failed to identify the particular defendant, if any, that is responsible for the harms alleged by Plaintiffs.

45.     At no time did Total exercise control over the persons or entities responsible for actual or threatened releases of MTBE, if any, alleged in the complaints.  At all times, Total acted with due care with respect to any petroleum or petroleum products used and

- 15 -

took reasonable precautions against foreseeable acts or omissions of any such third parties and any foreseeable consequences.

46.    Total did not own, control, or release any of the petroleum products that are alleged to have caused actual or threatened contamination of Plaintiffs' wells at the time such petroleum products were allegedly released.

47.    Any Total gasoline product sold or distributed for resale was properly designed, formulated, prepared, and otherwise not defective in any respect.

48.    To the extent required, Total provided proper warnings, information, and instructions relating to its products pursuant to generally recognized and prevailing standards in existence at the time.

49.    Plaintiffs have failed to allege that Total's alleged failure to provide an adequate warning proximately cause their injuries.

50.    Any gasoline product containing MTBE manufactured, sold, or distributed for resale by Total was not unreasonably dangerous when made.

51.    The Plaintiffs' claims against Total are barred by the bulk supplier doctrine.

52.    Total sold its products to knowledgeable and sophisticated purchasers, and any injury alleged by Plaintiffs was caused by such purchasers' failure to observe known standards of care.

53.    Any injury, damage, or loss sustained by the Plaintiffs was proximately caused by and/or contributed to by their own negligence, carelessness, and/or omissions.

54.    Plaintiffs' claims are barred pursuant to the learned intermediary doctrine.

- 16 -

#1850121.19

55.     If any damages or injuries alleged in the complaints occurred because of leaks in the USTs, Total is not liable for those damages and/or injuries because the USTs, when manufactured and distributed, conformed to the then current state of scientific and industrial knowledge, and the USTs were used for their intended purpose.

56.     If any damages or injuries alleged in the complaints occurred because of leaks in the USTs, Total is not liable for those damages and/or injuries because Total did not own or exercise any control over the operation of such USTs.

57.     Plaintiffs' public nuisance claims should be dismissed because there were no acts or omissions by or on behalf of any of the defendants constituting an intentional, unreasonable interference with the Plaintiffs' interest in the use and enjoyment of their property.

58.     Plaintiffs' public nuisance claims must be dismissed because Plaintiffs have failed to allege "special damages," an absolute prerequisite to the assertion of a public nuisance claim.

59.     Total alleges that it owed no duty of care to Plaintiffs in connection with the matter alleged in the complaints.

60.     The complaints fail to plead the elements of negligence claims with sufficient clarity, specificity, and particularity.

61.     Plaintiffs' claims are barred to the extent the conduct complained of is protected by the First Amendment to the United States Constitution.

62.     The complaints and each cause of action are barred based on Total's valid exercise of the right of petition to the federal government, state government(s), and/or their respective deliberative bodies and agencies.

#1850121.19

63.     Plaintiffs' claims are barred, in whole or in part, based on Plaintiffs' actual or constructive notice of reported spills or releases, if any, from publicly available records.

64.     There is no legal relationship upon which any duty could possibly be owed by Total to Plaintiffs, and therefore, Plaintiffs' causes of action fail as a matter of law.

65.     The injuries and damages, if any, alleged by Plaintiffs are caused in whole or in part by the presence of compounds other than MTBE (e.g., the BTEX compounds).  Under Plaintiffs' own legal theories, Total is not liable for damages caused by compounds other than MTBE.  In the event liability is assessed against Total, such liability must be reduced where, and to the extent that, other compounds – about which Plaintiffs do not complain – contributed to the alleged injury.

66.     Total is not liable for contamination where chemical compounds other than MTBE exceed state action levels or standards requiring cleanup, regardless of the presence of MTBE (particularly, but not exclusively, where MTBE is present below state action levels or standards).

67.     Any injury, damage, or loss sustained by the Plaintiffs in connection with the subject matter of this action was not reasonably foreseeable.

68.     If it is determined that Plaintiffs, or anyone on whose behalf Plaintiffs are allegedly suing, were injured as set forth in the complaints, which Total denies, Total alleges that any award of damages shall be reduced in proportion to the percentage of fault attributable to the Plaintiffs.

69.     If it is determined that Plaintiffs, or anyone on whose behalf Plaintiffs are allegedly suing, were injured as set forth in the complaints, which Total denies, Total alleges that any award of damages shall be reduced in proportion to the percentage of fault attributable to

- 18 -

third parties (including but not limited to persons or entities responsible for gasoline leaks or spills).

70.     The injuries alleged in the complaints, if any, may be reasonably apportioned among the defendants, as each defendant's alleged acts and omissions, including Total's, are divisible and distinct.  Therefore, no defendant is jointly and severally liable to Plaintiffs for any claim alleged in the complaints.

71.     Plaintiffs have unreasonably failed to mitigate their damages, if any.

72.     To the extent that any party has settled or may settle in the future with Plaintiffs, Total asserts its entitlement to an appropriate credit or reduction of any judgment(s) against it.

73.     Plaintiffs' claims for punitive damages violate the provisions of the U.S. Constitution, including but not limited to those provisions requiring due process of law and prohibiting excessive fines.

74.     Plaintiffs are public entities and/or authorities seeking compensation for damages to natural resources under their jurisdiction or purview.  These public entity/authority Plaintiffs have improperly delegated the power to prosecute these cases to private attorneys on a contingent fee basis.  Such delegation is against public policy.

75.     Total incorporates by reference any affirmative defense, whether general or specific to a particular State, alleged by other defendants in MDL 1358.

76.     The pleading of the foregoing defenses shall not be construed as an undertaking by Total of any burden which would otherwise rest upon Plaintiffs.

77.     The damages sought by Plaintiffs are wholly speculative and conjectural.

#1850121.19

## V.    AFFIRMATIVE DEFENSES APPLICABLE TO PARTICULAR STATES

For its separate defenses to the complaints in those MDL 1358 cases from particular states for which an answer is presently required, Total states as follows:

## IOWA

1.    The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including, but not limited to, Iowa Code Ann. §§ 614.1(2) and 614.1(4).

2.    Plaintiff's recovery is barred by its contributory fault, which is greater than the fault of all persons whose fault may have proximately contributed to Plaintiff's damages.  *See* Iowa Stat. Ann. § 668.3.

3.    Recovery is barred or must be reduced, in whole or in part, based on the doctrine of comparative negligence.

4.    Total is not jointly and severally liable because it bears less than fifty percent of the total fault of all parties.  *See* Iowa Stat. Ann. § 668.4.

5.    Plaintiff assumed the risk of any alleged injury.

6.    Total's products "conformed to the state of the art in existence at the time."  Iowa Stat. Ann. § 668.12(1).

7.    Total cannot be liable for failure to warn because the alleged "risks and risk-avoidance measures … should be obvious to, or generally known by, foreseeable product users."  Iowa Stat. Ann. § 668.12(3).

8.    Total cannot be liable because "a product bearing or accompanied by a reasonable and visible warning or instruction that is reasonably safe for use if the warning or

- 20 -

instruction is followed shall not be deemed defective or unreasonably dangerous on the basis of failure to warn or instruct."  Iowa Stat. Ann. § 668.12(4).

9.     Plaintiff's efforts to impose liability on Total without proof of causation violate the Due Process and other clauses of federal and state constitutions.


**MASSACHUSETTS**

10.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to Mass. Gen. Laws Ann. Ch. 260 § 2A.

11.     Plaintiffs' claims are barred because their negligence is greater than the alleged negligence of Total.  Mass. Gen. Laws Ann. Ch. 231 § 85.

12.     Total is not liable for damages because any contamination resulted from the acts or omissions of third parties and Total exercised due care with regard to its products and took reasonable precautions against foreseeable acts or omissions of third parties and the consequences that could foreseeably result therefrom.  Mass. Gen. Laws Ann. Ch. 21E § 5(c)(3).

13.     Plaintiffs are not entitled to injunctive relief because they failed to provide written notice to the Massachusetts Attorney General and Total as required by Mass. Gen. Laws Ann. Ch. 214 § 7 A.

14.     Plaintiffs' efforts to impose liability on Total without proof of causation violate the Due Process and other clauses of federal and state constitutions.

**MISSOURI**

15.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to Mo. Ann. Stat. §§ 516.100, 516.120 and 516.010 (West).

16.     Plaintiff's recovery is barred or must be reduced, in whole or in part, based on the doctrine of comparative fault.  Mo. Ann. Stat. § 537.765 (West).

17.     Any duty to warn, if one existed at all, was discharged pursuant to Mo. Ann. Stat. § 537.760 (West), because the alleged defects, if any, were open and obvious to Plaintiff.

18.     Plaintiff's product liability claims fail because Total had no duty to warn Plaintiff, as Plaintiff knew or should have known of the alleged danger.  Mo. Ann. Stat. § 537.760 (West).

19.     Plaintiff's product liability claims fail because Total's products were in conformity with generally recognized state of the art.  Mo. Ann. Stat. §§ 537.764 and 537.760 (West).

20.     Plaintiff's product liability claims fail because Total's products, at the time they were sold, were not in a defective condition or unreasonably dangerous when put to a reasonably anticipated use.  Mo. Ann. Stat. § 537.760 (West).

21.     Any alleged defective condition, of Total's products at the time they were sold, was not the proximate cause of Plaintiff's injuries or harm.  Mo. Ann. Stat. § 537.760 (West).

22.     Plaintiff's alleged injuries, if any, resulted from use of the product that was not reasonably anticipated by Total at the time that they sold or otherwise conveyed the product.  Mo. Ann. Stat. § 537.760 (West).

23.     Plaintiff's recovery of punitive damages arising out of their alleged injury is limited under Mo. Ann. Stat. § 510.265 (West).

24.     Plaintiff's trespass claim, private nuisance claim and the monetary damages portion of its common law public nuisance claim are barred to the extent Plaintiff is seeking damages to recover for MTBE contamination allegedly affecting property or wells not actually owned by the Plaintiff.

25.     Plaintiff has failed to state a claim for public nuisance because Total's alleged conduct does not constitute an interference with a right common to the general public under Missouri law.

26.     Plaintiff has failed to state a claim for private nuisance because it has neither alleged nor suffered substantial interference with the use and enjoyment of its properties.

27.     Plaintiff has failed to state a claim for private nuisance because Total's alleged conduct was not an unreasonable, an unusual, or an unnatural use of property under Missouri law.

28.     Plaintiff has failed to state a claim for trespass because it has neither alleged nor suffered an invasion of an exclusive possessory interest in its properties.

29.     Plaintiff has failed to state a claim for trespass because it has neither alleged nor suffered a direct and actual interference with the possession of its land under Missouri law.

30.     Total's conduct did not meet the minimum requirements of culpability with respect to each material element of the alleged offense of civil conspiracy in order to be found liable under Missouri law.

31.     Plaintiff has failed to state a claim for civil conspiracy because Total's alleged conduct does not meet any of the elemental requirements for that claim under Missouri law.

#1850121.19

**NEW JERSEY**

32.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, N.J. Stat. Ann. § 2A:14 2 and N.J. Stat. Ann § 58:10B-17.1(a), which requires the State to commence any civil action concerning the remediation of a contaminated site within three years after the accrual of the cause of action.

33.     Plaintiffs' claims for natural resource damages under either the New Jersey Spill Compensation and Control Act ("Spill Act") or the Water Pollution Control Act ("WPCA") are specifically barred by the applicable provisions of N.J. Stat. Ann. 58:10B-17.1(b), which requires the State to commence any action "concerning the payment of compensation for damage to, or loss of, natural resources due to the discharge of a hazardous substance . . .within five years and six months next after the cause of action shall have accrued."

34.     Plaintiffs' claim for relief under the Spill Act is barred to the extent Plaintiffs have already received "compensation for damages or cleanup costs pursuant to any other State or Federal Law."  N.J. Stat. Ann. § 58:10-23.11v (2008).

35.     Plaintiffs' claims are barred by the statutory defenses to liability provided by the Spill Act and the WPCA.

36.     Plaintiffs' claims under the Spill Act and WPCA are barred to the extent Plaintiffs seek relief for conduct occurring or damages incurred prior to the effective date of the Spill Act and/or WPCA.

37.     Plaintiffs' claims for natural resource damages under either the Spill Act or WPCA are barred in whole or in part to the extent the New Jersey Department of Environmental Protection has already recovered damages from or otherwise released the responsible parties.

38.    Plaintiffs' claims under the Spill Act are not ripe, since clean up and remediation have not been completed.

39.    Total did not "discharge" any hazardous substance within the meaning of the Spill Act.

40.    Total is not "in any way responsible" for any discharges of hazardous substance within the meaning of the Spill Act.

41.    The costs and damages sought by Plaintiffs do not constitute "cleanup and removal costs" under the Spill Act, or they are not otherwise recoverable under the Spill Act.

42.    Plaintiffs' claim for treble damages under the Spill Act is barred because Plaintiffs have failed to comply with the requirements set forth in the Spill Act.

43.    Plaintiffs were contributorily and comparatively negligent, and therefore their claims are barred or diminished by such negligence under the Comparative Negligence Act and New Jersey common law.

44.    Plaintiffs' claims against Total are barred by the New Jersey entire controversy doctrine, doctrine of *res judicata* and/or similar doctrines, and because of Plaintiffs' failure to comply with New Jersey Court Rule 4:5-1 in prior litigations.

45.    Plaintiffs' claims are barred by the doctrine of primary jurisdiction insofar as the NJDEP is responsible for directing and allocating responsibility for investigation and remediation of the environmental condition alleged in the complaints.

46.    Plaintiffs' claims are barred because Total has complied with, and satisfied, all applicable laws, regulations, rules, orders, directives and/or other requirements of the New Jersey Department of Environmental Protection and/or other state or federal agencies regarding the environmental condition alleged in the complaints.

- 25 -

47.    Plaintiffs' claims under the Spill Act are barred, in whole or in part, because the claims asserted are preempted by federal law, including, without limitation the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.*

48.    Total's conduct did not meet the minimum requirements of culpability with respect to each material element of the alleged offenses of civil conspiracy, public nuisance, and negligence, according to the applicable provision of N.J. Stat. Ann. § 2C:2-2, and, therefore, Plaintiffs' claims on these counts should be dismissed.

49.    Plaintiffs have failed to join parties needed for the just adjudication of the Plaintiffs' claims, in whose absence complete relief cannot be afforded the existing parties pursuant to *NJ. Ct.R.* 4:28-1.

50.    Plaintiffs' injuries and damages, if any, were directly and proximately caused by the intervening, superseding and/or fault of other persons and entities for which Total bears no responsibility.  Total is entitled to apportionment of the relative degrees of fault to such other persons or entities, whether they are parties herein or not, in accordance with New Jersey law and New Jersey Joint Tortfeasors Contribution Law, N.J. Stat. Ann. 2A-53A-1 *et seq.*

51.    Total denies that Plaintiffs are entitled to punitive damages in this case. Total did not have any intent to injure Plaintiffs.  Total incorporates and asserts all defenses regarding the imposition of punitive damages created by N.J. Stat. Ann. 2A:15-5.9 *et seq.*

52.    The imposition of punitive damages in this action would violate Total's rights under the Due Process clause, Equal Protection clause, Excessive Fines clause, and other clauses of the Constitution of the United States and the Constitution and laws of the State of New Jersey.

- 26 -

53.     The legal standards regarding punitive damages are inadequate, vague and ambiguous, further violating the Due Process clause of the United States Constitution and the Constitution of the State of New Jersey.

54.     Plaintiffs' claims for relief associated with the rights, interests or properties of private parties, including claims for treatment of private wells or alleged damages to private property, are barred to the extent Plaintiffs lack standing or the legal authority to assert such claims.

55.     Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' failure to comply with the prerequisites to liability under the Spill Act, including without limitation Plaintiffs' incurring of costs not authorized by the Spill Act and Plaintiffs' failure to direct clean up and remediation operations in accordance with the National Contingency Plan to the greatest extent possible.

56.     Plaintiffs' claims for natural resource damages are barred because the State's method of assessing natural resource damages was not adopted in a manner consistent with the Administrative Procedures Act, N.J. Stat. Ann. § 52:14B-2(e).

57.     Any injury or damages suffered by Plaintiffs have been increased by Plaintiffs' failure to mitigate its damages, in that (1) the policies and activities of the State of New Jersey and its agencies during the period of time for which Plaintiffs seek damages have caused damage to natural resources greater than that would otherwise have occurred; and (2) the State and its agencies have failed to take reasonable measures available to them to reduce damages.

58.     Plaintiffs' claims against Total are barred, in whole or in part, by the prior settlement with certain MDL plaintiffs in New Jersey.

- 27 -

**VERMONT**

59.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including, but not limited to, 12 Vermont Stat. Ann. §§ 511, 512(4), 512(5).

60.     Plaintiff's recovery is barred by its contributory fault, which is greater than the causal total negligence of the defendant or defendants.  *See* 12 Vermont Stat. Ann. § 1036.

61.     Recovery is barred or must be reduced, in whole or in part, based on the doctrine of comparative negligence.  *See* 12 Vermont Stat. Ann. § 1036.

62.     Plaintiffs' efforts to impose liability on Total without proof of causation violate the Due Process and other clauses of the federal and state constitution.

For each State above, Total incorporates by reference any affirmative defense, whether general or specific to another State, alleged herein or by any other defendant in MDL 1358.

The pleading of the foregoing defenses shall not be construed as an undertaking by Total of any burden which would otherwise rest upon Plaintiffs.

**WHEREFORE**, Total requests entry of judgment dismissing the complaints with prejudice and awarding Total its costs, attorneys' fees, and such other relief as the Court may deem just and proper.

Dated:    November 15,  2013

                                                      s/M. Coy Connelly
                                                 M. Coy Connelly
                                                 Amy E. Parker
                                                 Kimberly G. Alberts

                                                 *Admitted pro hac vice*

- 28 -

#1850121.19

BRACEWELL & GIULIANI LLP
711 Louisiana St., Suite 2300
Houston, Texas 77002-2770
Telephone:  (713) 221-1335
Telecopier:  (713) 221-2159

ATTORNEYS FOR DEFENDANT
TOTAL PETROCHEMICALS &
REFINING USA, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendant Total Petrochemicals & Refining USA, Inc.'s Ninth Amended Master Answer and Affirmative Defenses was served upon counsel for MDL Plaintiffs and to all other counsel of record via CM/ECF on the 15th day of November, 2013.

s/M. Coy Connelly
M. Coy Connelly

- 29 -

#1850121.19