**UNITED STATES DISTRICT COURT**  )    **Master File C.A. No. 1:00-1898**
**SOUTHERN DISTRICT OF NEW YORK**  )
                                 )    **MDL 1358 (SAS)**
_____  )    **No. M21-88**
                                 )
                                 )    **VALERO DEFENDANTS' TENTH**
**In re Methyl Tertiary-Butyl Ether**  )    **AMENDED MASTER ANSWER AND**
**("MTBE") Products Liability Litigation**  )    **AFFIRMATIVE DEFENSES**
                                 )
_____  )

**This document refers to:**[*]

_All Cases in MDL 1358 in which the Valero_
_Defendants have been properly named and served,_
_and  for which an answer is due._
_____

        Pursuant to the Master Answer agreement among the parties and CMO #6, defendants Valero Energy Corporation, Valero Marketing and Supply Company, Valero Refining and Marketing Company, Valero Refining Company-California, Valero Refining Company-New Jersey, Valero Refining Company-Oklahoma, and Valero Refining Company-Texas, L.P. ("Valero Defendants")[†] answer the complaints in those MDL 1358 cases for which an answer is due, and in which they have been properly named and served.  Each Valero Defendant is not necessarily a defendant in each case in MDL 1358.  Therefore, by filing this answer jointly, the Valero Defendants do not intend to waive service of process or any applicable grounds for dismissal under Federal Rule of Civil Procedure 12 as to entities not currently named as defendants in each individual case.

---

[*] Valero Defendants are not submitting repetitive motions to dismiss or strike in cases more recently consolidated in MDL 1358.  However, Valero Defendants expressly reserve the arguments set forth in motions to dismiss or strike previously filed in cases in this MDL proceeding.

[†] Certain Plaintiffs' complaints also name Valero Refining Company and Valero Refining Company-Delaware, LLC, which are non-existent entities.

## TENTH AMENDED MASTER ANSWER

**I.     ADMISSIONS AND STATEMENTS REGARDING SELECT ALLEGATIONS**

### A.      Basic Defendant Information

Valero Energy Corporation ("VEC") is a Delaware corporation with its principal place of business in San Antonio, Texas.  VEC is a holding company that does not manufacture, blend, sell, distribute, or market MTBE or gasoline containing MTBE.  It does not own gasoline refineries, gasoline terminals, gasoline retail stations, or underground storage tanks.  Until May 1, 1997, the Valero Defendants owned and operated only one gasoline refinery, which was located in Corpus Christi, Texas.

Valero Marketing and Supply Company ("VMSC") is a Delaware corporation with its principal place of business in San Antonio, Texas. VMSC does not refine crude oil, manufacture or blend gasoline, or own gasoline refineries.  VMSC purchases, sells, distributes, and markets gasoline and gasoline containing MTBE.

Valero Refining and Marketing Company ("VRMC") is a Delaware corporation with its principal place of business in San Antonio, Texas.  VRMC is a holding company that does not manufacture, blend, sell, distribute, or market MTBE or gasoline containing MTBE.  It does not own gasoline refineries, gasoline terminals, gasoline retail stations, or underground storage tanks.

Valero Refining Company-California is a Delaware corporation with its principal place of business in San Antonio, Texas.  Since May 15, 2000, Valero Refining Company-California has owned and operated the Benecia Refinery located in Northern California.

Valero Refining Company-Louisiana is a Delaware corporation with its principal place of business in San Antonio, Texas.  Between May 1, 1997 and July 1, 2008, Valero

Refining Company-Louisiana owned and operated the Krotz Springs Refinery located in Louisiana.

Valero Refining Company-New Jersey was a Delaware corporation with its principal place of business in San Antonio, Texas.  On September 16, 1998, Valero Refining Company-New Jersey acquired and operated the Paulsboro Refinery located in New Jersey.  On December 17, 2010, Valero Refining Company-New Jersey was acquired by PBF Holding Company, a subsidiary of PBF Energy.

Valero Refining-Texas, L.P. was formerly known as Valero Refining Company. Effective January 1, 1998, Valero Refining Company was merged with and into Valero Refining Company-Texas.  Effective November 1, 2001, Valero Refining Company-Texas changed from a Texas corporation to a Texas limited partnership under the name "Valero Refining-Texas, L.P."

Valero Refining-Texas, L.P. has its principal place of business in San Antonio, Texas.  Since 1984, Valero Refining-Texas, L.P. (or its predecessors) has owned and operated the Corpus Christi Refinery located in Texas.  Since May 1, 1997, Valero Refining-Texas, L.P. has owned and operated the Houston and Texas City Refineries, all located in Texas.

**B.**     **Allegations Regarding Production, Sale, or Distribution of Gasoline with MTBE or TBA to States in Question**

Valero Defendants state that they have never manufactured, sold, distributed, or marketed gasoline containing TBA.

Valero Defendants admit that at certain times VMSC has marketed and sold gasoline containing MTBE in certain regions of the country.  Valero Defendants state that at certain times MTBE was blended into gasoline by Valero Refining Company-California, Valero Refining Company-Louisiana, Valero Refining Company-New Jersey, and Valero Refining-

Texas, L.P. at their respective refineries located in Benecia, Krotz Springs, Paulsboro, Corpus Christi, Houston, and Texas City.

Valero Defendants state that they do not, in the ordinary course of business, create or maintain data or records that track the ultimate destination of refined products sold to their customers, nor do they dictate the retail outlets or distribution terminals from which their customers sell gasoline containing MTBE.  Although Valero Defendants do not maintain records that track the final destination of refined products sold to their customers, they admit that gasoline can be traced from a contamination site to its terminal or refinery source.

C.      **Allegations Regarding Production of MTBE or TBA**

Valero Defendants state that they have never manufactured, sold, distributed, or marketed TBA.

Valero Defendants state that at certain times neat MTBE was manufactured by Valero Refining Company-California, Valero Refining Company-Louisiana and Valero Refining-Texas, L.P. at their respective refineries located in Benecia, Krotz Springs, Corpus Christi, Houston, and Texas City.  Valero Defendants, however, do not represent that neat MTBE manufactured at these refineries was delivered to any of the Relevant Geographic Areas.

MTBE was made at the Benecia, Krotz Springs, Corpus Christi, Houston, and Texas City refineries by reacting isobutylene with methanol in the presence of a catalyst.

D.      **Allegations Regarding Properties and Behavior of MTBE**

Valero Defendants admit that MTBE is an aliphatic ether that does not ordinarily occur as a constituent or fraction of refined gasoline.  Valero Defendants admit that there are various methods for the production of MTBE and that one method of production is from reacting methanol with isobutylene.

Valero Defendants state that solubility and mobility are relative properties and that while MTBE and other ethers may be more soluble and mobile in water than certain gasoline components, such as the BTEX compounds, they are less soluble and mobile in water than other components sometimes blended into gasoline, such as ethanol.  Valero Defendants further state that MTBE's behavior in the environment – and its behavior relative to BTEX – is dependent on a variety of factors, including but not limited to, the nature or method of its release, the presence of other contaminants, the geological setting, and environmental and microbial factors.

Valero Defendants state that while under certain conditions at certain points in time MTBE appeared to biodegrade less readily than some other components of gasoline, MTBE has been found to naturally attenuate and biodegrade in numerous ways.

### E.   Allegations Regarding Properties and Behavior of TBA

Valero Defendants admit that TBA is raw material in the production of isobutylene, which may have been used to produce MTBE.  Valero Defendants admit that TBA can be an intermediate product of MTBE biodegradation.

Valero Defendants state that solubility and mobility are relative properties and that TBA is more soluble and mobile in water than certain gasoline components, such as the BTEX compounds.  Valero Defendants further state that TBA's behavior in the environment – and its behavior relative to BTEX – is dependent on a variety of factors, including but not limited to, the nature or method of its release, the presence of other contaminants, the geological setting, and environmental and microbial factors.

### F.   Allegations Regarding Taste and Odor

Valero Defendants admit that individuals vary in their ability to detect the taste and odor of MTBE in water and that at certain concentrations the presence of MTBE in water may be perceived by taste or odor.  Valero Defendants state that responsible federal and state

regulatory agencies have considered and adopted standards fully protective of MTBE taste and odor concerns.

### G.   Allegations Regarding Health Effects of MTBE

Plaintiffs' allegations of dire human health concerns from MTBE are unsubstantiated.  MTBE has been studied publicly by scientists and government agencies for more than 20 years.  MTBE has never been reliably linked to cancer, and there is no consensus in the scientific field that it is carcinogenic; indeed, major world health organizations have long refused to list MTBE as a human carcinogen.  Valero Defendants admit that the United States Environmental Protection Agency ("EPA") has in the past classified MTBE as a possible human carcinogen.  Valero Defendants state that responsible federal and state regulatory agencies have considered and adopted standards fully protective of any alleged health concerns related to MTBE.

### H.   Allegations Regarding Storage and Handling of Gasoline

Valero Defendants admit that it is commonly known that gasoline is sometimes unintentionally released into the environment from underground storage tanks and associated piping ("USTs") and by other means, and admit that millions of dollars and vast resources have been expended over the past 30 years by oil companies, retail site owners and operators, industry groups, and regulatory agencies to eliminate or reduce leaks and improve leak detection.  Valero Defendants state that it is likewise commonly known that gasoline should be handled carefully and should not be spilled.

### I.   Allegations Regarding Knowledge of MTBE Contamination at Particular Locations In 1980s

The complaints purport to describe various publicly reported incidents of MTBE contamination in Maryland, New Jersey, New York, and Maine in the 1980s.

Valero Defendants deny they learned of a groundwater contamination event in Jacksonville, Maryland in the early 1980s, as alleged in the complaints.  Valero Defendants deny they learned of a groundwater contamination event in Rockaway, New Jersey in the early 1980s, as alleged in the complaints.  Valero Defendants deny they learned of certain groundwater contamination events in New York in the early 1980s, as alleged in the complaints.

Valero Defendants deny they learned of the 1986 Garrett and Moreau paper – which described MTBE presence in certain wells in Maine – at the time the report was issued, as alleged in the complaints.  Valero Defendants admit that information about MTBE was known to government and the scientific community, as the 1986 Garrett and Moreau paper illustrates.  On information and belief, Valero Defendants state that it was widely known among government regulators in the 1980s that various incidents involving MTBE contamination – including the incidents Plaintiffs' complaints regularly list – had occurred.

**J.  Allegations Regarding Participation in Industry Associations or Lobbying Activities**

The chemical properties of ethers like MTBE have been known in the public arena for many, many years.  Plaintiffs' claim that Defendants, including Valero Defendants, somehow hid this information from them, or from the U.S. government, is baseless.  Valero Defendants deny they acted in concert, conspired, or had any agreement with another defendant to withhold from Plaintiffs or government regulators information concerning MTBE.  Valero Defendants deny that they had any information about MTBE that was not known to federal, state, and local governments, the scientific community, and others.

Valero Defendants admit that prior to 1990, Congress was preparing to take action to address the Nation's smog problem.  Valero Defendants admit federal government agencies were aware of MTBE's chemical characteristics in 1986 or earlier and the EPA held

public meetings about MTBE in 1986.  Valero Defendants deny that they were members of the American Petroleum Institute ("API") or that they participated in any API committee dedicated to MTBE.  Valero Defendants deny that they entered into a Testing Consent Order with EPA in or about 1988, as alleged in the complaints.  Valero Defendants admit to participation in the Oxygenated Fuels Association ("OFA") for a portion of the relevant time periods.

In response to Plaintiffs' allegation that Congress adopted the Reformulated Gasoline ("RFG") Program as part of the 1990 Amendments to the Clean Air Act "[a]s a result of tremendous lobbying efforts by the industry, including Defendants," Valero Defendants admit, on information and belief, that representatives of major oil companies provided comments and testimony during the rulemaking process for the 1990 Amendments to the Clean Air Act, while other companies actively resisted the RFG Program's requirement of oxygen content levels.

**K.**     **Allegations Regarding Requirements and Effects of the 1990 Clean Air Act Amendments**

Valero Defendants admit that Congress adopted the Oxygenated Fuels Program and Reformulated Gasoline ("RFG") Program as part of the 1990 Clean Air Act Amendments ("CAAA").  Valero Defendants admit that the CAAA authorized the EPA to mandate that certain areas are designated as non-attainment for carbon monoxide and/or ozone; thereby requiring these designated areas to participate in the Oxygenated Fuels Program and/or Reformulated Gasoline Program, respectively.

Valero Defendants state that beginning in the late 1970s, following the EPA's mandate to reduce lead in gasoline, many U.S. refiners began utilizing oxygenates and octane enhancers such as ethanol and MTBE.  It was at this time the EPA approved the use of MTBE as a gasoline additive.  In 1990, with the amendments to the Clean Air Act, the federal government mandated an increase in the use of oxygenates (up to 2.7% oxygen content) to meet ambient

carbon monoxide air requirements in winter gasoline in many cities (beginning in 1992).  In 1995, various oxygenates were extended by regulation to year-round use for severe, ozone non-attainment areas in the United States.  Reformulated gasolines used to meet these oxygenate standards have sometimes contained between 10% and 15% MTBE or up to 10% ethanol.

Valero Defendants state that although the CAAA did not literally require use of MTBE as a gasoline additive, in practical terms, the oxygen requirements of the Act could not and would not be met without the use of MTBE as an oxygenate, a fact known by Congress and the EPA.  Valero Defendants deny that ethanol was available in sufficient supply to meet the national demand for oxygenated gasoline in the RFG and oxyfuel regions when the CAAA provisions requiring 2% oxygen content in year-round gasoline in areas using RFG became effective.

Valero Defendants state that, at all times when they have refined crude oil, owned refineries, and manufactured, marketed, and sold gasoline, they have undertaken to comply with the legal requirements of the lead phase-out, the Oxygenated Fuel Program, and the RFG Program.  Valero Defendants further state that several government agencies have concluded that MTBE has contributed substantially to reducing air pollution.

**L.**     **Allegations Regarding MTBE-Related Actions Taken By State or Federal Governmental Bodies**

Valero Defendants admit that in 2001, the EPA provided advance notice of its intent to initiate a rulemaking pursuant to the Toxic Substances Control Act ("TSCA") to eliminate or limit the use of MTBE as a fuel additive.  No such rulemaking was ever initiated. Valero Defendants admit that certain proposed legislation in the U.S. Congress may limit the use of MTBE in gasoline in the future.  Valero Defendants admit that certain state legislatures or

regulatory bodies have passed laws or adopted regulations to limit or eliminate the use of MTBE in gasoline.  The details of such laws are a matter of public record.

**M.    Allegations Regarding Plaintiffs' Claimed Inability To Identify Relevant Sources of Gasoline Leaks Or Spills Affecting a Given Site**

Gasoline leaks, whether containing MTBE or not, are almost always traceable to a specific source, limited to the immediate geographic area of the source, and remediable.  In the vast majority of leak incidents, a responsible party can be and is identified.

Valero Defendants deny that gasoline can never be traced from a contamination site to its terminal or refinery source.

**N.    Allegations Purporting To Quote Or Summarize Documents**

Numerous paragraphs in each complaint purport to quote from or summarize documents, statutes, and regulations.  These written materials speak for themselves.  The documents, statutes, and regulations referenced by Plaintiffs, which are not attached to the complaints, are the best evidence of their content, and Valero Defendants therefore deny Plaintiffs' attempts to summarize or characterize the contents of these written materials.

**O.    Allegations Regarding Defendants Unrelated To Valero Defendants**

Valero Defendants are without knowledge or information sufficient to form a belief as to the truth of the matters averred in the complaints regarding the specific statements, acts, or omissions of defendants unrelated to Valero Defendants.

**P.    Allegations Regarding Particular Claims or Counts**

In response to the portions of the complaints purporting to state particular common law or statutory claims, Valero Defendants incorporate each paragraph of this Master Answer as if fully restated herein.  Valero Defendants deny they are liable for any legal claim in any MDL 1358 complaint.

**Q.     Allegations Regarding Claimed Injuries or Damages**

Some complaints make claims about contamination to specific wells or water resources, and others do not.  Valero Defendants are without knowledge or information sufficient to form a belief as to the truth of the matters averred in the complaints regarding specific incidents of alleged contamination.  Valero Defendants believe publicly available documents regarding Plaintiffs will demonstrate that many of the wells or water resources at issue have never been impacted by MTBE, have been impacted historically but are not currently impacted, and/or have been impacted only at levels well below state action standards for MTBE.  Further, Valero Defendants believe that the wells that are alleged to be "threatened" are not likely to ever be impacted by MTBE.

With regard to alleged damages, the allegations require no further answer.  To the extent that further answer is deemed necessary, Valero Defendants admit that Plaintiffs seek the relief mentioned in the complaints, but deny that Plaintiffs are entitled to any relief.

**R.     Plaintiffs' Demands for Jury Trials**

Plaintiffs in all actions have demanded a trial by jury of all claims asserted in the complaints.  These jury demands require no answer.  To the extent any answer is deemed necessary, Valero Defendants admit that Plaintiffs demand jury trials but deny that they are entitled to them.

**S.     Plaintiffs' Allegations of Intentional, Willful, Deliberate, or Negligent Acts**

Valero Defendants deny that they intentionally, willfully, deliberately, or negligently committed any acts that caused or foreseeably could have caused harm to Plaintiffs or any other party.

**T.     Plaintiffs' Allegations of Representational Standing**

Certain California plaintiffs have alleged a right to bring an action in a representative capacity. By orders dated June 9 and 22, 2005, the Court either struck all such allegations or confirmed that such allegations have been disavowed by the plaintiff. On the basis of these Court orders, Valero Defendants decline to answer these allegations. To the extent any answer is deemed necessary, Valero Defendants deny that any plaintiff has standing to bring claims in a representational capacity.

**U.**      **Certain Plaintiffs' Allegations of Ownership of the Groundwater Resources**

To the extent Plaintiffs allege that they own or have the authority to protect groundwater, groundwater resources, water resources, water supplies, water rights, or drinking water wells, or any other right in and to water or groundwater, Valero Defendants deny these allegations and deny that these plaintiffs have standing to bring any claim based on allegations of property damage.

**V.**      **Regulatory Powers of Other Agencies**

Certain California plaintiffs allege that they are entitled to assert claims to protect groundwater resources or the environment without regard to any impact on water supply wells owned or operated by them. Valero Defendants deny that these plaintiffs possess any such right. Valero Defendants further allege that, pursuant to statutes duly enacted by the California legislature, state agencies that are not parties to these lawsuits have been delegated the power and authority to (1) determine what maximum levels of contaminants, including MTBE and/or TBA, are permissible in potable water distributed in California and (2) manage activities to investigate, delineate, remediate and cleanup actual or suspected MTBE and/or TBA contamination, including determining when sufficient cleanup has been achieved.

**W.** **California Civil Code Section 1882 Claims**

Certain California plaintiffs have alleged causes of action and/or prayers for treble damages and attorneys' fees based on California Civil Code § 1882 et seq. By order dated May 31, 2005, the Court dismissed and struck these allegations from the complaints. On the basis of the Court order, Valero Defendants decline to answer these allegations. To the extent any answer is deemed necessary, Valero Defendants deny that any plaintiff is entitled to recovery under California Civil Code § 1882 et seq.

**II.    GENERAL DENIAL OF REMAINING ALLEGATIONS**

Valero Defendants deny the remaining allegations in the complaints in MDL 1358 cases for which an answer is presently required.

**III.    RESERVATION OF RIGHT TO AMEND**

Valero Defendants reserve the right to amend this Master Answer.

**IV.    AFFIRMATIVE DEFENSES APPLICABLE TO ALL CASES**

For separate defenses to the complaints in those MDL 1358 cases for which an answer is presently required, Valero Defendants state as follows:

1.      Plaintiffs' claims are barred in whole or in part by the doctrine of federal preemption.

2.      At all relevant times, Valero Defendants' actions and their products complied with and were undertaken pursuant to applicable federal, state, and local laws, rules, regulations, and specifications.

3.      Plaintiffs' claims are barred in whole or in part because federal, state, and/or local authorities and agencies have mandated, directed, approved, and/or ratified the alleged actions or omissions of Valero Defendants.

4.      All acts and conduct of Valero Defendants, as alleged in the complaints, conformed to and were pursuant to statutes, government regulations, and industry standards, and were based upon the state of knowledge existing at all material times alleged in the complaints.

5.      The relief sought by Plaintiffs' complaints is, in whole or in part, within the particular expertise of and is being addressed by federal and state governments, and their relevant agencies, and thus this Court should decline to exercise jurisdiction over this matter pursuant to the doctrine of primary jurisdiction.

6.      Plaintiffs have failed to exhaust their administrative remedies.

7.      Plaintiffs have a plain, common, adequate, and speedy remedy at law.  The equitable causes of action alleged in the complaints are thus barred.

8.      Plaintiffs are barred from claiming strict liability for design defect, as any attempt to reexamine the mandatory cost-benefit analysis delegated to and performed by the EPA pursuant to its obligations under the Clean Air Act ("CAA") would be impermissible given that Congress, through section 211 of the CAA, authorized the EPA, and not the courts, to perform the cost-benefit analysis.

9.      If it is determined that Plaintiffs, or anyone on whose behalf Plaintiffs are allegedly suing, were injured, as set forth in the complaints, which Valero Defendants deny, Valero Defendants allege that such hardship is outweighed by the convenience and public service rendered by Valero Defendants' actions.

10.     Each purported cause of action asserted in the complaints is barred under the doctrine of primary assumption of risk in that the general public, by and through its elected representatives and their appointees, knew and understood the alleged risks of harm presented by

the use of MTBE, if any, and elected nevertheless to proceed to require the use of gasoline oxygenates and to specifically permit the use of MTBE as a gasoline oxygenate.

11.    To the extent that Plaintiffs have received or may receive the requested relief from a governmental agency, Valero Defendants assert their entitlement to an appropriate set-off or reduction of any judgment against them.

12.    The appropriate forum for Plaintiffs' claims is an administrative agency, and therefore all proceedings before this Court should be stayed pending administrative resolution of the issues.

13.    The claims set forth in the complaints fail, in whole or in part, based on the doctrine of election of remedies.

14.    Each purported cause of action in the complaints as applied to Valero Defendants is barred because the relief sought therein would pose unreasonable barriers and substantial burdens on interstate and/or international commerce in violation of the Commerce Clause of the United States Constitution and/or the North American Free Trade Agreement.

15.    The complaints fail to state a claim upon which relief may be granted and should, therefore, be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

16.    Because Plaintiffs have not suffered any cognizable harm and have not incurred any present damages, there is no current case or controversy and thus, Plaintiffs' claims are not ripe for adjudication.

17.    Plaintiffs suffered no losses or injuries that were proximately caused by Valero Defendants.

18.    Valero Defendants' conduct was not the cause in fact of any injuries alleged by Plaintiffs.

19.     Plaintiffs have failed to state a cause of action for nuisance because they have neither alleged nor suffered any particularized injury.

20.     The alleged injuries and damages, if any, suffered as a result of conduct legally attributable to Valero Defendants is *de minimis* and therefore any injunction would pose a disproportionate hardship on Valero Defendants, as well as on the public, in comparison to the injury and damages allegedly suffered by Plaintiffs.  Accordingly, Plaintiffs are not entitled to injunctive relief as to Valero Defendants as a matter of law.

21.     Plaintiffs do not have a legally cognizable injury.

22.     Alternatively, where MTBE contamination is below state action levels, Plaintiffs do not have a legally cognizable injury.

23.     Plaintiffs may not seek attorneys' fees as an element of relief.

24.     Plaintiffs have failed to properly present any claim for attorneys' fees.

25.     Because Plaintiffs have sued multiple parties, under multiple causes of action, with divisible damages, the claim for attorneys' fees must be proportioned between same.

26.     The claims set forth in the complaints are barred, in whole or in part, by the mootness doctrine.

27.     The complaints and each purported cause of action are barred, in whole or in part, by the doctrine of laches.  Plaintiffs' unreasonable and inexcusable delay in filing these actions caused substantial prejudice to Valero Defendants.

28.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations.

29.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of repose.

30.     Plaintiffs are estopped by their conduct from asserting any of the purported claims alleged against Valero Defendants in the complaints.

31.     Plaintiffs have not investigated the cause of the alleged harm or attempted to identify the actual responsible party or parties.

32.     Plaintiffs cannot establish the required predicates for their theories of collective liability, and therefore their defendant-identification burden remains.  In the event that the defendant-identification burden is shifted in the future, Valero Defendants deny that they contributed to the contamination at issue.

33.     Plaintiffs' claims are barred in whole or in part by the doctrine of waiver.

34.     Plaintiffs' claims are barred in whole or in part by the doctrine of estoppel.

35.     Plaintiffs' claims are barred in whole or in part by the doctrine of accord and satisfaction.

36.     Plaintiffs assumed the risk of all acts, injuries, and damages that Plaintiffs now assert against Valero Defendants.

37.     Valero Defendants are entitled to total or partial indemnity from those individuals or entities who are responsible for Plaintiffs' injuries or damages, if any, in an amount in direct proportion to their relative culpability.

38.     Plaintiffs lack the capacity to sue.

39.     Plaintiffs lack standing to sue.

40.     Plaintiffs' claim for trespass is barred because Valero Defendants' conduct caused no physical impact to Plaintiffs' property.

41.     There is a defect or misjoinder of parties, in that Plaintiffs have failed to join indispensable or necessary parties.

42.    Plaintiffs have failed to name the party or parties responsible for the alleged harm.

43.    The claims set forth in the complaints fail, in whole or in part, because of the failure to identify which defendant, if any, proximately caused the alleged harm.

44.    Plaintiffs' claimed injuries were caused in whole or in part by others, whose actions were not controlled by or related to Valero Defendants.  Such actions are the superseding, supervening, and/or intervening cause of Plaintiffs' injuries and therefore Plaintiffs may not recover from Valero Defendants as a matter of law.

45.    Plaintiffs' claims must be dismissed because they have failed to identify the particular defendant, if any, that is responsible for the harms alleged by Plaintiffs.

46.    At no time did Valero Defendants exercise control over the persons or entities responsible for actual or threatened releases of MTBE, if any, alleged in the complaints. At all times, Valero Defendants acted with due care with respect to any petroleum or petroleum products used and took reasonable precautions against foreseeable acts or omissions of any such third parties and any foreseeable consequences.

47.    Valero Defendants did not own, control, or release any of the petroleum products that are alleged to have caused or threatened contamination of Plaintiffs' wells.

48.    Any Valero Defendants gasoline product sold or distributed for resale was properly designed, formulated, prepared, and otherwise not defective in any respect.

49.    To the extent required, Valero Defendants provided proper warnings, information, and instructions relating to its products pursuant to generally recognized and prevailing standards in existence at the time.

50.     Plaintiffs have failed to allege that Valero Defendants' alleged failure to provide an adequate warning proximately caused their injuries.

51.     Any gasoline product containing MTBE manufactured, sold, or distributed for resale by Valero Defendants was not unreasonably dangerous when made.

52.     Plaintiffs' claims against Valero Defendants are barred by the bulk supplier doctrine.

53.     Valero Defendants sold their products to knowledgeable and sophisticated purchasers, and any injury alleged by Plaintiffs was caused by such purchasers' failure to observe known standards of care.

54.     Any injury, damage, or loss sustained by the Plaintiffs was proximately caused by and/or contributed to by their own negligence, carelessness, and/or omissions.

55.     Plaintiffs' claims are barred pursuant to the learned intermediary doctrine.

56.     If any damages or injuries alleged in the complaints occurred because of leaks in the gasoline storage tanks and associated piping, Valero Defendants are not liable for those damages and/or injuries because the gasoline storage tanks and associated piping, when manufactured and distributed, conformed to the then current state of scientific and industrial knowledge, and the tanks and associated piping were used for their intended purpose.

57.     If any damages or injuries alleged in the complaints occurred because of leaks in the gasoline storage tanks and associated piping, Valero Defendants are not liable for those damages and/or injuries because Valero Defendants did not own or exercise any control over such tanks or associated piping.

58.     Plaintiffs' public nuisance claims should be dismissed because there were no acts or omissions by or on behalf of any of the defendants constituting an intentional, unreasonable interference with Plaintiffs' interest in the use and enjoyment of their property.

59.     Plaintiffs' public nuisance claims must be dismissed because Plaintiffs have failed to allege "special damages," an absolute prerequisite to the assertion of a public nuisance claim.

60.     Valero Defendants allege that they owed no duty of care to Plaintiffs in connection with the matter alleged in the complaints.

61.     The complaints fail to plead the elements of negligence claims with sufficient clarity, specificity, and particularity.

62.     Plaintiffs' claims are barred to the extent the conduct complained of is protected by the First Amendment to the United States Constitution.

63.     The complaints and each cause of action are barred based on Valero Defendants' valid exercise of the right of petition to the federal government, state government(s), and/or their respective deliberative bodies and agencies.

64.     Plaintiffs' claims are barred, in whole or in part, based on Plaintiffs' actual or constructive notice of reported spills or releases, if any, from publicly available records.

65.     There is no legal relationship upon which any duty could possibly be owed by Valero Defendants to Plaintiffs, and therefore, Plaintiffs' causes of action fail as a matter of law.

66.     The injuries and damages, if any, alleged by Plaintiffs are caused in whole or in part by the presence of compounds other than MTBE (e.g., the BTEX compounds).  Under Plaintiffs own legal theories, Valero Defendants are not liable for damages caused by compounds

other than MTBE.  In the event liability is assessed against Valero Defendants, such liability must be reduced where, and to the extent that, other compounds – about which Plaintiffs do not complain – contributed to the alleged injury.

67.      Valero Defendants are not liable for contamination where chemical compounds other than MTBE exceed state action levels or standards, requiring cleanup regardless of the presence of MTBE (particularly, but not exclusively, where MTBE is present below state action levels or standards).

68.      Any injury, damage, or loss sustained by Plaintiffs in connection with the subject matter of this action was not reasonably foreseeable.

69.      If it is determined that Plaintiffs, or anyone on whose behalf Plaintiffs are allegedly suing, were injured, as set forth in the complaints, which Valero Defendants deny, Valero Defendants allege that any award of damages shall be reduced in proportion to the percentage of fault attributable to Plaintiffs.

70.      If it is determined that Plaintiffs, or anyone on whose behalf Plaintiffs are allegedly suing, were injured, as set forth in the complaints, which Valero Defendants deny, Valero Defendants allege that any award of damages shall be reduced in proportion to the percentage of fault attributable to third parties (including but not limited to persons or entities responsible for gasoline leaks or spills).

71.      The injuries alleged in the complaints, if any, may be reasonably apportioned among Defendants, as each defendant's alleged acts and omissions, including Valero Defendants', are divisible and distinct.  Therefore, no defendant is jointly and severally liable to Plaintiffs for any claim alleged in the complaints.

72.      Plaintiffs have unreasonably failed to mitigate their damages, if any.

73.     To the extent that any party has settled or may settle in the future with Plaintiffs, Valero Defendants assert their entitlement to an appropriate credit or reduction of any judgment(s) against them.

74.     Plaintiffs' claims for punitive damages violate the provisions of the U.S. Constitution, including but not limited to those provisions requiring due process of law and prohibiting excessive fines.

75.     Valero Defendants incorporate by reference any affirmative defense, whether general or specific to a specific State, alleged by other defendants in MDL 1358.

76.     The pleading of the defenses described above shall not be construed as an undertaking by Valero Defendants of any burden which would otherwise be the responsibility of Plaintiffs.

## V.     AFFIRMATIVE DEFENSES APPLICABLE TO PARTICULAR STATES

For their separate defenses to the complaints in the MDL 1358 cases from particular states for which an answer is presently required, the applicable Valero Defendant(s) state as follows:

**CALIFORNIA**

1.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, California Code of Civil Procedure §§ 337, 337.1, 337.2, 337.15, 338, 340, 340.8, and 343.

2.     California Civil Code §§ 1431.1 through 1431.5, commonly known as "Proposition 51," provide that the liability of each defendant for non-economic damages, if any, shall be several only and shall not be joint, and Valero Defendants therefore assert that each defendant may be held liable only for the amount of non-economic damages, if any, allocated to that defendant in direct proportion to its percentage of fault, if any.

3.     Valero Defendants allege that their liability, if any, for non-economic loss be pro rated according to the provisions of California Civil Code § 1431.2.

4.     The complaints and each purported cause of action are barred because Plaintiffs and/or their predecessors-in-interest and assignors are guilty of unclean hands.

5.     Plaintiffs' claims fail, in whole or in part, based on the doctrine of unjust enrichment.

6.     As to each cause of action in the complaints, to the extent that any release of MTBE and/or of hazardous substances were the result of an act of God, Valero Defendants are not liable for any damages resulting therefrom.

7.     Plaintiffs did not reasonably rely on any representation, disclaimer, warning, or other act or omission of Valero Defendants.

8.     Valero Defendants had no duty to warn Plaintiffs or third parties about the potential dangers, if any, of the product or products manufactured, packaged, labeled, used, applied, altered, and/or removed by said third parties.

9.     Valero Defendants had no duty to warn because the risks of injury and damages inherent in utilizing the products described in the complaints, if any, were open, obvious, or known.

10.     Any express or implied warranties alleged by Plaintiffs to have been made by Valero Defendants, if made at all, were expressly disclaimed and excluded by product labels, pursuant to the laws of the State of California, which provided that Valero Defendants made no warranties, express or implied, concerning the products or the use of said products that extended beyond the description on the label, and that all statements made concerning said products applied only when used as directed.

11.     Plaintiffs are sophisticated water purveyors or managers and were, at all relevant times, fully aware of the nature and risks of injury and damages described in the complaints that could arise in the operations or management of a public drinking water supply system.

12.     If there was a less dangerous alternate design, without admitting that there was and without assuming the burden of proof on this issue, Valero Defendants did not and could not have known of such an alternate design at the time.

13.     If there was a less dangerous alternate design, without admitting that there was and without assuming the burden of proof on this issue, such an alternate design was not feasible at the time.

14.     Plaintiffs and/or others modified, altered, or changed the Valero Defendants' products or materials referred to in the complaints, if any, so that such changes in any said products or materials proximately caused Plaintiffs' injuries, losses, and/or damages, if any.

15.     If Valero Defendants provided the products alleged to have been defective, and without admitting that they did so or that any product was defective and without assuming the burden of proof on these issues, the products were misused or abused by others without the knowledge or consent of Valero Defendants and in a manner not reasonably foreseeable by Valero Defendants prior to its receipt of notice of the circumstances described in the complaints.  Such misuse or abuse was the sole cause of or a contributing cause to the injuries, losses, and/or damages, if any, suffered by Plaintiffs as alleged in the complaints, and by reason thereof, Plaintiffs are barred from recovering some or all of any damages suffered.

16.    Valero Defendants are not liable for any alleged wrongful entry upon land because Plaintiffs and/or Plaintiffs' predecessors in interest or assignors expressly or impliedly consented to or had knowledge of all such activities or conditions.

17.    Valero Defendants allege that to the extent Plaintiffs are claiming damages for the cost of remediation due to Plaintiffs' alleged compliance with primary or secondary drinking water standards or other regulations enacted by the State of California or any other governmental body, those claims are unconstitutional because they constitute an ex post facto application of a regulation disallowed by Article 1, section 9 of the United States Constitution.

18.    The complaints and each purported cause of action are barred, in whole or in part, by federal and state law, including but not limited to, the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2; the Clean Air Act, 42 U.S.C. § 7401, et seq.; the Toxic Substances Control Act, 15 U.S.C. § 2601, et seq; and rules, regulations, and decisions thereunder.

19.    The complaints and each purported cause of action are barred to the extent that federal and/or California state agencies have exonerated Valero Defendants and/or determined that no facility owned by Valero Defendants contributed to the presence of MTBE in the relevant groundwater for which Plaintiffs are asserting damages.

20.    The complaints and each purported cause of action are barred because Plaintiffs do not own or have abandoned, lost, waived, given up, or otherwise failed to perfect any rights, including but not limited to use rights related to any water that is the subject of the complaints.  Plaintiffs' claims are also barred because under California law, the water that is the subject of the complaints is the property of the State of California, not of Plaintiffs.

21.     The complaints and each purported cause of action are barred to the extent that such claims have been satisfied by payments or provision of alternate water supplies by third parties.

22.     The complaints and each purported cause of action are barred to the extent that Plaintiffs have assigned rights and claims for certain damages and other relief, if any, to Valero Defendants, other defendants, or third parties.

23.     If Plaintiffs sustained any injury under the circumstances alleged in the complaints or in any other respect, their recovery against Valero Defendants, if any, is barred by the alleged conduct and conditions resulting from a necessity.

24.     Plaintiffs' claims are barred, in whole or in part, as the result of their own knowing or negligent conduct that caused or contributed to MTBE and/or TBA contamination giving rise to these claims.

## ILLINOIS

1.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, 735 ILCS 5/13-205.

2.     Plaintiffs' recovery is barred, in whole or in part, due to their contributory fault, pursuant to 735 ILCS 5/2-1116.

## INDIANA

1.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, Ind. Code. Ann. 34-20-3-1.

2.    Plaintiffs' product liability design defect claims are barred, in whole or in part, because no alleged act or omission by Valero Defendants gave rise to design defect liability pursuant to Indiana's Product Liability Act, as set forth in Ind. Code. Ann. 34-20-2-1.

3.    Plaintiffs' product liability claims fail because Valero Defendants had no duty to warn Plaintiffs, as Plaintiffs knew or should have known of the alleged danger.  Ind. Code. Ann. 34-20-6-1.

4.    Plaintiffs' product liability claims fail because Valero Defendants manufactured their products in conformity with generally recognized state of the art.  Ind. Code. Ann. 34-20-6-1.

5.    Any duty to warn, if one existed at all, was discharged pursuant to Ind. Code. Ann. 34-20-6-1 because the alleged defects, if any, were open and obvious to Plaintiffs.

6.    Plaintiffs voluntarily and unreasonably assumed the risk of injury, thereby relieving Valero Defendants of liability.  Ind. Code. Ann. 34-20-6-1 and 34-20-6-3.

7.    Any alleged design defect was not the proximate cause of Plaintiffs' injuries or harm, pursuant to Ind. Code. Ann. 34-20-6-1 (West 2001).

8.    Plaintiffs' alleged injuries, if any, resulted from the misuse of the product by Plaintiffs or other persons, and such misuse was not reasonably expected by Valero Defendants at the time they sold or otherwise conveyed the product to the other party.  Ind. Code. Ann. 34-20-6-4.

9.    Plaintiffs' claims for public nuisance should be dismissed because at no time did any act or omission attributable to Valero Defendants or their products interfere with Plaintiffs' comfortable enjoyment of life or property.  Ind. Code. Ann. 34-19-1-1.

10.    Plaintiffs have failed to state a cause of action for public nuisance because Valero Defendants' alleged conduct is not unreasonable upon comparison of their alleged conduct with Plaintiffs' competing interests.  Ind. Code. Ann. 34-19-1-1.

11.    Plaintiffs' recovery is barred by their contributory fault, which is greater than the fault of all persons whose fault may have proximately contributed to Plaintiffs' damages.  Ind. Code. Ann. § 34-51-2-6.

12.    Plaintiffs are public entities and/or authorities seeking compensation for damages to natural resources under their jurisdiction or purview.  These public entity/authority plaintiffs have improperly delegated the power to prosecute these cases to private attorneys on a contingent fee basis.  Such delegation is against public policy.

## IOWA

1.    The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, Iowa Code Ann. §§ 614.1(2) and 614.1(4).

2.    Plaintiffs' recovery is barred by their contributory fault, which is greater than the fault of all persons whose fault may have proximately contributed to plaintiffs' damages.  Iowa Stat. Ann. § 668.3.

3.    Recovery is barred or must be reduced, in whole or in part, based on the doctrine of comparative negligence.

4.    Valero Defendants are not jointly and severally liable because they bear less than fifty percent of the total fault of all parties.  Iowa Stat. Ann. § 668.4.

5.    Plaintiffs assumed the risk of any alleged injury.

6.    Valero Defendants' products "conformed to the state of the art in existence at the time."  Iowa Stat. Ann. § 668.12(1).

7.      Valero Defendants cannot be liable for failure to warn because the alleged "risks and risk-avoidance measures…should be obvious to, or generally known by, foreseeable product users."  Iowa Stat. Ann. § 668.12(3).

8.      Valero Defendants cannot be liable because "a product bearing or accompanied by a reasonable and visible warning or instruction that is reasonably safe for use if the warning or instruction is followed shall not be deemed defective or unreasonably dangerous on the basis of failure to warn or instruct."  Iowa Stat. Ann. § 668.12(4).

9.      Plaintiffs' efforts to impose liability on the Valero Defendants without proof of causation violate the Due Process and other clauses of the federal and state constitutions.

**MASSACHUSETTS**

1.      The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to Mass. Gen. Laws Ann. Ch. 260 § 2A.

2.      Plaintiffs' claims are barred because their negligence is greater than the alleged negligence of Valero Defendants.  Mass. Gen. Laws Ann. Ch. 231 § 85.

3.      The Valero Defendants are not liable for damages because any contamination resulted from the acts or omissions of third parties and the Valero Defendants exercised due care with regard to its products and took reasonable precautions against foreseeable acts or omissions of third parties and the consequences that could foreseeably result therefrom.  Mass. Laws Ann. Ch. 21E § 5(c)(3).

4.      Plaintiffs are not entitled to injunctive relief because it failed to provide written notice to the Massachusetts Attorney General and the Valero Defendants as required by Mass. Gen. Laws Ann. Ch. 214 § 7A.

5.      Plaintiffs' efforts to impose liability on the Valero Defendants without proof of causation violate the Due Process and other clauses of the federal and state constitutions.

**MISSOURI**

1.      The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to Mo. Ann. Stat. §§ 516.100, 516.120 and 516.010 (West).

2.      Plaintiffs' recovery is barred or must be reduced, in whole or in part, based on the doctrine of comparative fault.  Mo. Ann. Stat. § 537.765 (West).

3.      Any duty to warn, if one existed at all, was discharged pursuant to Mo. Ann. Stat. § 537.760 (West), because the alleged defects, if any, were open and obvious to plaintiffs.

4.      Plaintiffs' product liability claims fail because the Valero Defendants had no duty to warn Plaintiffs, as Plaintiffs knew or should have known of the alleged danger.  Mo. Ann. Stat. § 537.760 (West).

5.      Plaintiffs' product liability claims fail because the Valero Defendants' products were in conformity with generally recognized state of the art.  Mo. Ann. Stat. §§ 537.764 and 537.760 (West).

6.      Plaintiffs' product liability claims fail because the Valero Defendants' products, at the time they were sold, were not in a defective condition or unreasonably dangerous when put to a reasonably anticipated use.  Mo. Ann. Stat. § 537.760 (West).

7.      Any alleged defective condition, of the Valero Defendants' products at the time they were sold, was not the proximate cause of Plaintiffs' injuries or harm.  Mo. Ann. Stat. § 537.760 (West).

8. Plaintiffs' alleged injuries, if any, resulted from use of the product that was not reasonably anticipated by the Valero Defendants at the time that they sold or otherwise conveyed the product. Mo. Ann. Stat. § 537.760 (West).

9. Plaintiffs' recovery of punitive damages arising out of their alleged injury is limited under Mo. Ann. Stat. § 510.265 (West).

10. Plaintiffs' recovery is barred or must be reduced, in whole or in part, based on the doctrine of contribution. Mo. Ann. Stat. § 537.060 (West).

11. Plaintiffs' efforts to impose liability on the Valero Defendants without proof of causation violate the Due Process and other clauses of the federal and state constitutions.

**NEW JERSEY**

1. The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, N.J. Stat. Ann. § 2A:14-2 and N.J. Stat. Ann § 58:10B-17.1(a), which requires the State to commence any civil action concerning the remediation of a contaminated site within three years after the accrual of the cause of action.

2. Plaintiffs' claims for natural resource damages under either the New Jersey Spill Compensation and Control Act ("Spill Act") or the Water Pollution Control Act ("WPCA") are specifically barred by the applicable provisions of N.J. Stat. Ann. 58:10B-17.1(b), which requires the State to commence any action "concerning the payment of compensation for damage to, or loss of, natural resources due to the discharge of a hazardous substance . . .within five years and six months next after the cause of action shall have accrued."

3.      Plaintiffs' claim for relief under the Spill Act is barred to the extent Plaintiffs have already received "compensation for damages or cleanup costs pursuant to any other State or Federal Law."  N.J. Stat. Ann. § 58:10-23.11v. (2008).

4.      Plaintiffs' claims are barred by the statutory defenses to liability provided by the Spill Act and the WPCA.

5.      Plaintiffs' claims under the Spill Act and WPCA are barred to the extent plaintiff seeks relief for conduct occurring or damages incurred prior to the effective date of the Spill Act and/or WPCA.

6.      Plaintiffs' claims for natural resource damages under either the New Jersey Spill Compensation and Control Act or the Water Pollution Control Act are barred in whole or in part to the extent the New Jersey Department of Environmental Protection has already recovered damages from or otherwise released the responsible parties.

7.      Plaintiffs' claims against Valero Defendants are barred by the New Jersey entire controversy doctrine, doctrine of *res judicata* and/or similar doctrines, and because of Plaintiffs' failure to comply with New Jersey Court Rule 4:5-1 in prior litigations.

8.      Plaintiffs' claims are barred by the doctrine of primary jurisdiction insofar as the NJDEP is responsible for directing and allocating responsibility for investigation and remediation of the environmental condition alleged in the complaints.

9.      Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' failure to comply with the prerequisites to liability under the Spill Act, including without limitation plaintiff's incurring of costs not authorized by the Spill Act and plaintiff's failure to direct clean up and remediation operations in accordance with the National Contingency Plan to the greatest extent possible.

10.     Plaintiffs' claims for natural resource damages are barred because the State's method of assessing natural resource damages was not adopted in a manner consistent with the Administrative Procedures Act, N.J. Stat. Ann. § 52:14B-2(e).

11.     Any injury or damages suffered by plaintiff have been increased by Plaintiffs' failure to mitigate its damages, in that (1) the policies and activities of the State of New Jersey and its agencies during the period of time for which plaintiff seeks damages have caused damage to natural resources greater than that would otherwise have occurred; and (2) the State and its agencies have failed to take reasonable measures available to them to reduce damages.

12.     Plaintiffs' claims against Valero Defendants are barred, in whole or in part, by the prior settlement with certain MDL Plaintiffs in New Jersey.

**PENNSYLVANIA**

1.     The complaint and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, 42 Pa. Cons. Stat. Ann. § 5524.

2.     Valero Defendants' conduct did not meet the minimum requirements of culpability with respect to each material element of the alleged offenses of civil conspiracy, public nuisance, and negligence in order to be found liable according to the applicable provision of 18 Pa. Cons. Stat. Ann. § 302, and, therefore, Plaintiff's claims on these counts should be dismissed.

3.     Plaintiffs' claims for public nuisance are barred because at all relevant times, neither Valero Defendants nor their products violated any orders or regulations adopted by the Pennsylvania Department of Environmental Resources.  35 Pa. Cons. Stat. Ann. § 691.503.

**VERMONT**

1.      The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, 12 Vermont Stat. Ann. §§ 511, 512(4), 512(5).

2.      Plaintiffs' recovery is barred by their contributory fault, which is greater than the causal total negligence of the defendant or defendants.  12 Vermont Stat. Ann. § 1036.

3.      Recovery is barred or must be reduced, in whole or in part, based on the doctrine of comparative negligence.  12 Vermont Stat. Ann. § 1036.

4.      Plaintiffs' efforts to impose liability on the Valero Defendants without proof of causation violate the Due Process and other clauses of the federal and state constitutions.

Dated:  November 15, 2013                    **DOWD BENNETT LLP**

By:  ____/s/ James F. Bennett_____
       James F. Bennett
       Willie J. Epps, Jr.
       Selena L. Evans

       7733 Forsyth Boulevard, Suite 1900
       St. Louis, Missouri 63105
       Telephone: (314) 889-7300
       Facsimile: (314) 863-2111
       jbennett@dowdbennett.com
       wepps@dowdbennett.com
       sevans@dowdbennett.com
       *Admitted pro hac vice*

       ATTORNEYS FOR VALERO

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of Valero Defendants' Tenth Amended Master Answer was served upon counsel for MDL Plaintiffs and to all other MDL 1358 counsel of record via CM/ECF and LexisNexis File & Serve on the 15th day of November, 2013.

/s/ James F. Bennett

James F. Bennett
