**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**IN RE METHYL TERTIARY BUTYL ETHER**
**PRODUCTS LIABILITY LITIGATION**

**Master File No. 1:00 – 1898**
**MDL 1358 (SAS)**
**M21-88**

**This document pertains to:**

*New Jersey Department of Environmental*
*Protection, et al. v. Atlantic Richfield Co., et al.*
*No. 08 Civ. 312*

**SHELL'S REPLY TO PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF MATERIAL**
**FACTS SUBMITTED IN OPPOSITION TO SHELL'S MOTION FOR PARTIAL**
**SUMMARY JUDGMENT ON PLAINTIFFS' CLAIM FOR PRIMARY RESTORATION**
**AT THE RIDGEWOOD TRIAL SITE**

SEDGWICK LLP
2900 K Street, NW
Harbourside, Suite 500
Washington, DC 20007
(202) 204-1000

Attorneys for Defendants Shell Oil Company, Shell Oil
Products Company LLC, Shell Trading (US) Company,
Equilon Enterprises LLC, and Motiva Enterprises LLC

On October 1, 2013, Defendants Shell Oil Company, Shell Oil Products Company LLC, Shell Trading (US) Company, Equilon Enterprises LLC, and Motiva Enterprises LLC (collectively "Shell") filed a Motion for Partial Summary Judgment on Plaintiffs' Claims for Primary Restoration at the Ridgewood Trial Site and a Statement of Material Facts as to which there is no genuine dispute in support of that motion.

Plaintiffs filed an Opposition to Shell's Motion and filed a Local Rule 56.1 Statement of Material Facts in Opposition to Shell's Motion.

Shell hereby respectfully submits its Reply to Plaintiffs' Response, Shell's Responses and Objections to the 'Additional Material Facts' submitted in Plaintiffs' Response.

| | SHELL'S STATEMENT OF FACTS | PLAINTIFFS' RESPONSE | SHELL'S REPLY |
|---|---|---|---|
| 1 | In 1987, a release of gasoline including MTBE was detected in the Village of Ridgewood's Walthery and Twinney drinking water wells.  (Declaration of Richard E. Wallace, Jr. in Support of Shell Defendants' Motion for Partial Summary Judgment ("Wallace Decl."), ¶1, Exh. 1 (Walthery and Twinney Well Sampling Results, NJDEP-SITE220-026052 to 026053;  NJDEP-SITE220-026055; and NJDEP-SITE220-026057; Wallace Decl., ¶8, Ex. 8 (Revised Site Summary, ID #11346 Shell Station #138490, Jan. 2013, at 52).) | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |
| 2 | In 1992, the Village installed a treatment system on the Walthery and Twinney drinking water wells.  (Wallace Decl. ¶1, Exh. 1 (June 1992 letter from William Mowell to John Horan, SH-NJ-WG012572 to SH-NJ-WG012577).) | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |
| 3 | The Village brought suit against Shell and several other companies, as well as the New Jersey Department of Transportation, to recover those treatment costs.  Shell and two other defendants settled the claims of the Village in 1994 and, as part of the settlement, paid for the Village's treatment costs. | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |

| | SHELL'S STATEMENT OF FACTS | PLAINTIFFS' RESPONSE | SHELL'S REPLY |
|---|---|---|---|
| | (Wallace Decl. ¶2, Exh. 2 (1994 Settlement Agreement SH-NJ-XX-081405 to SH-NJ-XX-081417).) | | |
| 4 | Additional gasoline release releases were reported in the years after the 1987 release, most recently in 1998.  (Wallace Decl., ¶8, Exh. 8 (Revised Site Summary , ID #11346 Shell Station #138490, Jan. 2013, at 52).) | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |
| 5 | The Village brought a second suit against Shell in 1998, this time seeking costs it incurred to upgrade a treatment system for a third water well, the Paramus well.  In 1999, Shell settled that case, too, and again paid the Village for its treatment costs, all at no cost to NJDEP.  (Wallace Decl. ¶3, Exh. 3 (1999 Settlement Order, SH-NJ-XX-048711 to SH-NJ-XX-048717); Wallace Decl. ¶4, Exh. 4 (Plaintiff's Amended Responses to Defendants' Requests for Admission Related to the Shell Ridgewood Trial Site ("RFAs") at No. 81).) | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |
| 6 | On August 31, 2000, NJDEP issued an Administrative Order and Notice of Civil Administrative Penalty Assessment against Shell for the Ridgewood Site.  In January 2007, NJDEP and Shell entered into an Administrative Consent Order which settled NJDEP's claims for alleged violations or shortcomings in the remedial work at Ridgewood, as well as NJDEP's claims for its oversight costs and a penalty.  (Wallace Decl., ¶5, Exh. 5 (January 9, 2007 Administrative Consent Order, SH-NJ-BB000058 to SH-NJ-BB000072).) | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |
| 7 | MTBE has not been detected in any Ridgewood supply wells at levels above the groundwater quality standards since 1998. (Wallace Decl. ¶1, Exh. 1 (VOR Municipal Well Sampling Results, SH-WK-RIDGEWOOD 009195 to 009198); Wallace Decl. ¶4, Exh. 4 (Amended Responses to RFAs Nos. 58, 59, 60).) | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |
| 8 | MTBE has not been detected in any Ridgewood supply wells at levels above the | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |

| | SHELL'S STATEMENT OF FACTS | PLAINTIFFS' RESPONSE | SHELL'S REPLY |
|---|---|---|---|
| | groundwater quality standards since 1998. (Wallace Decl. ¶1, Exh. 1 (VOR Municipal Well Sampling Results, SH-WK-RIDGEWOOD 009195 to 009198); Wallace Decl. ¶4, Exh. 4 (Amended Responses to RFAs Nos. 58, 59, 60).) | | |
| 9 | The Shell Defendants have already installed 85 monitoring and extraction wells at the Ridgewood Site to monitor the location and size of the MTBE plume.  (Declaration of Julian Davies in Support of Shell Defendants' Motion for Partial Summary Judgment ("Davies Decl."), ¶17, Exh. 2 (2012 Groundwater and Soil Remediation System Shutdown Approval, SH-NJ-SCI467567).) | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |
| 10 | With NJDEP approval, active remediation at the Ridgewood Site ended in 2009.  (Davies Decl. ¶¶11, 12, Exh. 2 (2012 Groundwater and Soil Remediation System Shutdown Approval, SH-NJ-SCI467567, at Attachment A (Remedial Action Progress Report Addendum Remediation System Shutdown Request, February 2009).) | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |
| 11 | The Licensed Site Remediation Professional-of-Record ("LSRP-of-Record") responsible for overseeing remediation at the Ridgewood Trial Site is Julian Davies. (Davies Decl. ¶2.) | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |
| 12 | Mr. Davies has been the LSRP-of-Record of the Ridgewood Site since 2010.  (Davies Decl. ¶2.) | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |
| 13 | As the LSRP-of-Record at the Ridgewood Site, Mr. Davies is responsible for oversight of the investigation and remediation of the Site, without direct supervision or prior approval of NJDEP's Site Remediation Program ("SRP"), and he has authority under the SRRA to conduct investigations, approve remedial alternatives, and determine when remedial action is complete.  (Davies Decl. ¶3.) | Admit that as the LSRP-of-Record at the Ridgewood Site, Mr. Davies is responsible for oversight of the investigation and remediation. The remaining portions of this paragraph are misleading in that although the LSRP is not directly supervised on a day to day basis, the LSRP is subject to the strictures of the Site Remediation and Reform Act ("SRRA") | Plaintiffs admit the fact stated.  Mr. Davies performs without direct supervision or required prior approval of NJDEP's Site Remediation Program ("SRP"), and he has authority under the SRRA to conduct investigations, approve remedial alternatives, and determine when remedial action is |

3

| | SHELL'S STATEMENT OF FACTS | PLAINTIFFS' RESPONSE | SHELL'S REPLY |
|---|---|---|---|
| | | N.J.S.A. 58:10(c). Pursuant to that statute, the LSRP is responsible for reporting to NJDEP and his actions are subject to review by NJDEP. | complete. |
| 14 | Under the SRRA, LSRPs "'step into the shoes' of the Department of Environmental Protection (Department) to oversee the remediation of contaminated sites in most instances." (Davies Decl. ¶4, Exh. 1 (NJDEP SRP, *Overview of the Licensed Site Remediation Professional (LSRP) Program,* April 2011).) | Admit that the words quoted in this paragraph appear in the document cited. Plaintiffs deny that the LSRP "steps into the shoes" of NJDEP in all instances. Plaintiffs admit that the oversight of the remediation and contaminated sites is meant to be the initial responsibility of the LSRP. SRRA N.J.S.A. 58:10(c). | Plaintiffs' Response does not specifically controvert any of the facts in this paragraph, nor does it controvert the assertions contained in Mr. Davies's Declaration. Mr. Davies's declaration indicates that LSRPs "'step into the shoes' of the Department of Environmental Protection (Department) to oversee the remediation of contaminated sites in most instances." Mr. Davies does not aver that an LSRP 'steps into the shoes" of the DEP in all instances. |
| 15 | Mr. Davies is required to oversee the remediation of contaminated sites in accordance with NJDEP's applicable standards, regulations and technical guidance for responsible parties. (Davies Decl. ¶4.) | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |
| 16 | LSRPs are subject to a strict code of conduct contained in the SRRA at C.58:10C-16and must ensure that remediations are protective of human health, safety and the environment. (Davies Decl. ¶¶4, 7.) | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |
| 17 | Under the SRRA code of ethics, an LSRP's "highest priority in the performance of professional services shall be the protection of public health and safety and the environment." (Davies Decl. ¶7; C.58:10C-16.) | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |

4

| | SHELL'S STATEMENT OF FACTS | PLAINTIFFS' RESPONSE | SHELL'S REPLY |
|---|---|---|---|
| 18 | In his role as LSRP-of-Record at the Ridgewood Site, Mr. Davies has been responsible for making professional judgments pertaining to the investigation and remediation of environmental contamination at the Site.  In doing so, he has exercised independent professional judgment and reasonable care and diligence, and he has been mindful of the SRRA's requirement that an LSRP's highest priority is the protection of public health and safety and the environment. (Davies Decl. ¶9.) | The activities of Mr. Davies as an LSRP-of-Record at the Ridgewood Site have not yet been reviewed by NJDEP. Mr. Davies has not submitted the final remediation document to NJDEP. Until such time as he has done so, the NJDEP cannot determine the efficacy of his efforts. | Plaintiffs' Response does not specifically controvert any of the facts in this paragraph, nor does it controvert the assertions contained in Mr. Davies's Declaration. Moreover, the September 12, 2012 Groundwater and Soil Remediation System Shutdown Approval was forwarded to counsel for NJDEP on October 8, 2012. Therefore, the facts in this paragraph should be deemed admitted. |
| 19 | By the time Mr. Davies became the LSRP-of-Record for the Ridgewood Site, two active remediation systems, a soil vapor extraction ("SVE") system and a groundwater pump and treat system, had already been in place. (Davies Decl. ¶10.) | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |
| 20 | The SVE system at the Ridgewood Site, which was connected to 18 wells on and around the Ridgewood Site, ceased operation in February 2009.  (Davies Decl. ¶11; Exh. 2 (2012 Groundwater and Soil Remediation System Shutdown Approval, SH-NJ-SCI467567, at Attachment A (Remedial Action Progress Report Addendum Remediation System Shutdown Request, February 2009).) | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |
| 21 | The groundwater pump and treat system also ceased operation in 2009.  (Davies Decl. ¶12, Exh. 2 (2012 Groundwater and Soil Remediation System Shutdown Approval, SH-NJ-SCI467567, at Attachment A (Remedial Action Progress Report Addendum Remediation System Shutdown Request, February 2009).) | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |
| 22 | In 2009, NJDEP approved a Remedial Action Progress Report Addendum Remediation System Shutdown Request requesting a | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |

SHELL'S LOCAL RULE 56.1 STATEMENT

| | SHELL'S STATEMENT OF FACTS | PLAINTIFFS' RESPONSE | SHELL'S REPLY |
|---|---|---|---|
| | temporary active remediation shutdown at the Site.  (Davies Decl. ¶¶11, 12, Exh. 2 (2012 Groundwater and Soil Remediation System Shutdown Approval, SH-NJ-SCI467567, at Attachment A) (Remedial Action Progress Report Addendum Remediation System Shutdown Request, February 9, 2009); Attachment B (Remedial Action Progress Report Addendum Approval, July 13, 2009).) | | |
| 23 | NJDEP reiterated that approval in 2010. (Davies Decl. ¶¶11, 12, Exh. 2 (2012 Groundwater and Soil Remediation System Shutdown Approval, SH-NJ-SCI467567, at Attachment C) (Remedial Action Progress Report Addendum Approval and CEA Approval, February 25, 2010).) | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |
| 24 | The SVE system remained on the Site, but inactive, until 2012.   (Davies Decl. ¶11, Exh. 2 (2012 Groundwater and Soil Remediation System Shutdown Approval, SH-NJ-SCI467567).) | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |
| 25 | The groundwater pump and treat system remained on the site, but inactive, until 2012. (Davies Decl. ¶12, Exh. 2 (2012 Groundwater and Soil Remediation System Shutdown Approval, SH-NJ-SCI467567).) | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |
| 26 | On September 12, 2012, in his role as LSRP-of-Record, Mr. Davies approved the permanent shutdown and removal of the SVE and groundwater pump and treat equipment from the Ridgewood Site.  With NJDEP approval, neither system had been operated since 2009.  (Davies Decl. ¶13, Exh. 2 (2012 Groundwater and Soil Remediation System Shutdown Approval, SH-NJ-SCI467567, at 2).) | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |
| 27 | By letter dated March 28, 2006, NJDEP's SRP approved an Off-Site Remedial Action Workplan ("RAW") that proposed a Natural Remediation Compliance Program – Monitored Natural Attenuation – as the remedial action for off-site groundwater at Ridgewood.    (Davies Decl. ¶15, Exh. 3 (March 28, 2006 letter from William S. Hose | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |

| | SHELL'S STATEMENT OF FACTS | PLAINTIFFS' RESPONSE | SHELL'S REPLY |
|---|---|---|---|
| | Approving the Off-Site Remedial Action Workplan).) | | |
| 28 | The March 2006 approval letter specifically identified 36 wells that needed to be sampled, and the sampling frequency for those wells, as part of the Natural Remediation Compliance Program.  (Davies Decl. ¶15, Exh. 3 (March 28, 2006 letter from William S. Hose Approving the RAW).) | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |
| 29 | NJDEP's SRP approved removing certain of the wells at the Ridgewood Site from the sampling schedule because it determined that sampling them was no longer necessary. (Davies Decl. ¶15, Exh. 3 (March 28, 2006 letter from William S. Hose Approving the RAW).) | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |
| 30 | NJDEP's SRP did not require the installation of any additional monitoring wells as part of its RAW approval.  (Davies Decl. ¶15, Exh. 3 (March 28, 2006 letter from William S. Hose Approving the RAW).) | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |
| 31 | On September 12, 2012, in his role as LSRP-of-Record, Mr. Davies approved Monitored Natural Attenuation ("MNA") as the remedial strategy for on-site groundwater at the Ridgewood Site.  (Davies Decl. ¶16, Exh. 2 (2012 Groundwater and Soil Remediation System Shutdown Approval, SH-NJ-SCI467567, at 2).) | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |
| 32 | After examining the historical sampling results from 30 on-site and off-site groundwater wells, in his role as LSRP-of-Record, Mr. Davies determined that annual sampling of 18 groundwater wells should continue as part of the MNA remedial strategy and that annual sampling of these wells was appropriate for purposes of protecting public health and safety and the environment, including flora and fauna in the vicinity of the Ridgewood Site.  (Davies Decl. ¶16.) | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |
| 33 | Mr. Davies did not determine, in his role as LSRP-of-Record, that installation and/or sampling of any additional monitoring wells | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |

| | SHELL'S STATEMENT OF FACTS | PLAINTIFFS' RESPONSE | SHELL'S REPLY |
|---|---|---|---|
| | was necessary or appropriate. (Davies Decl. ¶16.) | | |
| 34 | The current approved remedial strategy at the Ridgewood Site is MNA. (Davies Decl. ¶15, Exh. 2 (2012 Groundwater and Soil Remediation System Shutdown Approval, SH-NJ-SCI467567, at 2).) | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |
| 35 | More than 50 monitoring wells are still in place at the Ridgewood Site.  (Davies Decl. ¶17.) | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |
| 36 | In his role as LSRP-of-Record at the Ridgewood Site, upon the exercise of reasonable care and diligence and by applying the knowledge and skill ordinarily exercised by licensed site remediation professionals in good standing practicing in the State at the time these professional services are performed, Mr. Davies has determined that no additional active remediation is needed at the Ridgewood site and that the current program of MNA is appropriate for purposes of protecting public health and safety and the environment, including flora and fauna in the vicinity of the Ridgewood Site.  (Davies Decl. ¶18, Exh. 2 (2012 Groundwater and Soil Remediation System Shutdown Approval, SH-NJ-SCI467567).) | Plaintiffs are not in the position to admit or deny what Mr. Davies may think. In his role as LSRP-of-Record at the Ridgewood Site, Mr. Davies has not submitted a final remediation document to NJDEP, thus the efficacy of his efforts cannot be evaluated. | The efficacy of Mr. Davies's efforts as LSRP-of-Record is not at issue in this paragraph.  Plaintiffs' Response does not specifically controvert any of the facts in this paragraph, nor does it controvert the assertions contained in Mr. Davies's Declaration. The September 12, 2012 Groundwater and Soil Remediation System Shutdown Approval was forwarded to counsel for NJDEP on October 8, 2012.  In addition, Mr. Davies's determinations as LSRP-of-Record are set forth in detail in his Declaration. Therefore, the facts in this paragraph should be deemed admitted. |
| 37 | Approximately 85 different wells have been in place at the Ridgewood Site at one time or another, some of which are located as far as 1,200 feet from the station itself.  (Davies Decl. ¶17.) | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |
| 38 | More than 2,000 groundwater samples from those 85 wells have been collected and analyzed for up to 15 different chemical | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |

| | SHELL'S STATEMENT OF FACTS | PLAINTIFFS' RESPONSE | SHELL'S REPLY |
|---|---|---|---|
| | constituents during the course of the 25-year investigation and remediation of the Ridgewood Site. (Davies Decl. ¶17.) | | |
| 39 | During the course of the 25-year investigation and remediation of the Ridgewood Site, additional sampling data has been collected from the Village of Ridgewood Water Department supply wells in the vicinity of the Ridgewood Site.  (Davies Decl. ¶17.) | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |
| 40 | The former NJDEP case manager assigned to the Ridgewood Site, Donna Plummer, testified in this case that her goal at this and other sites is to "protect municipal wells and clean up contaminated sites as quickly as possible." (Wallace Decl. ¶6, Exh. 6 (Mar. 14, 2012 Deposition of Donna Plummer, at 439:18-23).) | It is admitted that the words quoted in this paragraph appear in the deposition of Donna Plummer. | N/A.  Plaintiffs admit the fact stated. |
| 41 | Ms. Plummer directed the remediation of the Ridgewood Site beginning in 1988.  (Wallace Decl. ¶6, Exh. 6 (Mar. 13, 2012 Deposition of Donna Plummer, at 69:6-17).) | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |
| 42 | In 2006, Ms. Plummer was the case manager for the Ridgewood Site when NJDEP approved a final Remedial Action Workplan for the Site. (Wallace Decl. ¶6, Exh. 6 (Mar. 13, 2012 Deposition of Donna Plummer, at 70-71).) | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |
| 43 | By 2006, when NJDEP approved the final Remedial Action Workplan, Shell had installed enough wells to delineate contamination, and had achieved the goals of controlling the plume and reducing the levels of contamination. (Wallace Decl. ¶6, Exh. 6 (Mar. 13, 2012 Deposition of Donna Plummer, at 70-72, 193-94, 205-06).) | Denied. Although the referenced efforts of Shell related to the remediation of the plume, they did not relate to the restoration of the plume to its predischarge condition. Nor did Shell take any efforts to reduce the levels of contamination to the predischarge level. Shell has provided no  documentation in support of any claim that it has taken action to control the plume and reduce the level of contamination to the predischarge condition. | Donna Plummer testified at her March, 2012 deposition that by 2006, Shell had installed enough wells to delineate contamination, and had achieved the goals of controlling the plume and reducing the levels of contamination. (Mar. 13, 2012 Deposition of Donna Plummer, at 70-72, 193-94, 205-06.)  Therefore, the facts in this paragraph should be deemed admitted. |

9

|   | SHELL'S STATEMENT OF FACTS | PLAINTIFFS' RESPONSE | SHELL'S REPLY |
|---|---|---|---|
|   |   | See November 1, 2013 Declaration of Anthony Brown ("Brown Dec.") ¶¶ 3-4. |   |
| 44 | Shell was "very responsive" to NJDEP's requests to conduct investigation and remediation.  (Wallace Decl. ¶6, Exh. 6 (Mar. 13, 2012 Deposition of Donna Plummer, at 126:18-20).) | Plaintiffs admit that the words "very responsive" appear at the citation set forth in this paragraph. Plaintiffs deny that Shell was always "very responsive" to NJDEP requests. Ms. Plummer's statement in her deposition where she says Shell was responsive refers to a particular activity in 2006 for which she believed Shell was responsive. This does not mean Shell had a good track record of compliance in general at the Site. If it had, NJDEP would not have had to issue an Administrative Order and Notice of Civil Administrative Penalty Assessment against Shell or enter into an Administrative Consent Order pursuant to which Shell paid a $1,200,000 civil penalty. See Shell's Rule 56.1 Statement -,¶6, Wallace Exhibit 5). Further, Shell submitted several reports to the Department, which the Department found to be deficient. Those reports were described by NJDEP as "technically incomplete," non responsive," and "unacceptable." (Brown Report Sec. 4.2, Exhibit "B" to the Brown Dec.) | Shell complied with all requirements of the technical regulations at the Ridgewood site.  In addition, many of the alleged delays by Shell were actually due to delays by the Village of Ridgewood and the NJDEP.  Shell had to wait over one year to obtain the appropriate permits from the Village of Ridgewood necessary to operate the SVE system.  Shell applied for the permits in March of 1994, but the Village of Ridgewood did not issue the permits which delayed the activation of the SVE system until August 9, 1996.<br><br>Following the 1987 release, Shell installed a pump & treat system at the Ridgewood site in July, 1989.  Shell subsequently applied for a New Jersey Pollutant Discharge Elimination System ("NJPDES") permit to discharge to surface water in order to conduct pump tests to use in designing a P&T system to remediate the groundwater contamination at the Shell Ridgewood site on February 24, 1989. However it took over |

| | SHELL'S STATEMENT OF FACTS | PLAINTIFFS' RESPONSE | SHELL'S REPLY |
|---|---|---|---|
| | | | two years for the NJDEP Bureau of Industrial Discharge Permits to issue the permit, which it did on April 21, 1991.<br><br>In addition, Shell's NJPDES permit to discharge to groundwater, necessary to operate its P&T system to remediate the groundwater contamination at the Ridgewood site, was not approved until November 1, 1991 which is at least one year and four months after the application for the permit was submitted. |
| 45 | Plaintiffs' expert, Anthony Brown, a California hydrogeologist, has opined that additional monitoring wells (*i.e.*, in addition to the 85 wells that Shell previously installed on the site) are needed for the Ridgewood Site.  (Wallace Decl. ¶ 8, Exh. 8 (Revised Cost Summary, ID # 11346 Shell Service Station #138490, Jan. 2013, § A, pp. 1-4, Jan. 2013).) | Admitted | N/A.  Plaintiffs admit the fact stated. |
| 46 | Mr. Brown has opined that additional investigation should be conducted to determine whether more remediation "may" be needed.  He offers the following opinions, among others, about the Ridgewood Site<br><br>   13. "Remediation performed to date may have effectively addressed on-site groundwater contamination."  …<br><br>   18. "Additional on-site remediation of groundwater is possibly required."<br><br>   19. "Additional off-site remediation of groundwater may be required.  … The | It is admitted that the cited portions in this paragraph appear in Mr. Brown's report. | N/A.  Plaintiffs admit the fact stated. |

11

| | SHELL'S STATEMENT OF FACTS | PLAINTIFFS' RESPONSE | SHELL'S REPLY |
|---|---|---|---|
| | most recent contaminant concentrations detected off-site would not warrant the implementation of an off-site groundwater remediation system.  However, based upon the results of additional investigation, particularly in the transmissive Z4 bedrock unit, an off-site groundwater remediation system may be required." (Wallace Decl. ¶ 8, Exh. 8 (Revised Site Summary, ID # 11346 Shell Service Station #138490, Jan. 2013, § 10.0, p. 56).) | | |
| 47 | Mr. Brown recommends additional active remediation at all but two of Plaintiffs' 10 Trial Sites, Ridgewood and one other. (Wallace Decl. ¶ 7, Exh. 7 (Revised Expert Report of Anthony Brown, January 2013, § 1.8, p. 15).) | Admitted | N/A.  Plaintiffs admit the fact stated. |
| 48 | Mr. Brown opines that 18 new wells, as well as five additional years of monitoring, are needed at the Ridgewood site, at a total cost of more than $1.3 million.  (Wallace Decl. ¶ 8, Exh. 8 (Revised Cost Summary, ID # 11346 Shell Service Station #138490, Jan. 2013, § A, pp. 1-4, Jan. 2013).) | Admitted | N/A.  Plaintiffs admit the fact stated. |
| 49 | Mr. Brown does not identify any cleanup or removal costs necessary to accomplish "primary restoration" at the Ridgewood Trial Site.  Instead, Mr. Brown states that "[t]he need for remediation would be reevaluated at th[is] site[ ] as additional data are generated from the proposed site investigations." (Wallace Decl. ¶ 7, Exh. 7 (Revised Expert Report of Anthony Brown, January 2013, § 1.8, p. 15).) | Denied. The entirety of Mr. Brown's report is focused on what is necessary to accomplish "primary restoration" at the Ridgewood Trial Site. He states in that report that since Shell did not delineate the contaminated ground water plume to its predischarge level, that further investigation is the necessary first step in that process. See Brown Dec. ¶¶3-4; 14-20 | Notwithstanding Plaintiff's denial, Mr. Brown does not identify any cleanup or removal costs necessary to accomplish "primary restoration" at the Ridgewood Trial Site. Mr. Brown's advice to conduct additional investigation does not identify any actual cleanup or removal costs.  Therefore, the facts in this paragraph should be deemed admitted. |
| 50 | Mr. Brown does not present any evidence that the MNA program currently in place at the | Denied. See Brown Dec. | Mr. Brown's report does not contain any evidence |

|  | SHELL'S STATEMENT OF FACTS | PLAINTIFFS' RESPONSE | SHELL'S REPLY |
|---|---|---|---|
|  | Ridgewood site is inappropriate or insufficient, or that anything more is required:<br><br>[T]he current off-site contaminant concentrations in groundwater do not justify implementation of an active remediation system. Additional investigation proposed at these sites may indicate that off-site remediation of groundwater contamination is required. However, until such time, the MNA alternative is effective in the short-term, and may be effective in the long-term….<br><br>(Wallace Decl. ¶ 9, Exh. 9 (Revised Feasibility Study, January 2013, § 4.1.2, p. 19).) |  | that the MNA program currently in place at the Ridgewood site is inappropriate or insufficient, or that anything more is required. Indeed, Plaintiffs say that any opinion he could offer to the contrary would be "mere speculation." (Opp. at 2). |
| 51 | At three of the other trial sites at issue in this litigation, Plaintiffs performed "limited additional site investigations" during discovery to determine whether remediation to achieve primary restoration was necessary. The Ridgewood Trial Site was not among them. (Wallace Decl. ¶ 7, Exh. 7 (Revised Expert Report of Anthony Brown, January 2013, § 1.9, p. 16).) | Admit the fact stated but dispute its materiality. | N/A. Plaintiffs admit the fact stated. |
| 52 | N/A | Admit the fact stated but dispute its materiality. | Due to an oversight, Shell's 56.1 Statement did not contain a paragraph number 52. Despite this, Plaintiffs replied to the missing paragraph in its Reply. |
| 53 | Mr. Brown does not disagree with NJDEP's approval of the shutdown of the active remediation systems at the Ridgewood Site. (Wallace Decl. ¶ 11, Exh. 11 (Deposition of Anthony Brown, June 3, 2013, at 881:19-22).) | Admit the fact stated but dispute its materiality. | N/A. Plaintiffs admit the fact stated. |
| 54 | Mr. Brown is not an LSRP. (Wallace Decl. ¶ 11, Exh. 11 (Deposition of Anthony Brown, May 28, 2013, at 68:25-69:2).) | Admit the fact stated but dispute its materiality. | N/A. Plaintiffs admit the fact stated. |
| 55 | No one has indicated to Mr. Brown that the LSRP's work at the Ridgewood Site has been in any way inadequate. (Wallace Decl. ¶ 11, | Plaintiffs admit the fact stated but dispute its materiality. Plaintiffs admit | N/A. Plaintiffs admit the fact stated. |

| | SHELL'S STATEMENT OF FACTS | PLAINTIFFS' RESPONSE | SHELL'S REPLY |
|---|---|---|---|
| | Exh. 11 (Deposition of Anthony Brown, June 3, 2013, at 898:12-20).) | that no one has indicated to Mr. Brown that the LSRP's work at the Ridgewood Site has been inadequate related to remediation. However since the LSRP's work at the Ridgewood Site is not related in any way to restoration of the contaminated ground water to predischarge condition, and since the restoration to this predischarge condition is the focus of Mr. Brown's report, the facts in this paragraph are not relevant or material. See Brown Declaration. | |
| 56 | Mr. Brown has never made any attempt to discuss the Ridgewood Site with the LSRP for the Site. (Wallace Decl. ¶ 11, Exh. 11 (Deposition of Anthony Brown, June 3, 2013, at 880:22-25).) | Admit the fact stated but dispute its materiality. | N/A.  Plaintiffs admit the fact stated. |
| 57 | NJDEP Deputy Commissioner Irene Kropp was deposed on June 6, 2013, and admitted, "I think primarily the money that ONRR, whatever you call it, received through natural resource damage claims was spent on projects and acquisitions.  I'm not aware of when we've gone back in and said to somebody we're taking your NRD contribution and moving your site from cleanup standards to predischarge, if that's your question." (Wallace Decl. ¶ 6, Exh. 6 (Deposition of Irene Kropp, June 6, 2013, at 224:9-19).) | It is admitted that the words cited were spoken by Irene Kropp at her deposition. Plaintiffs deny that money recovered is not for used for primary or compensatory restoration. As set forth in the annual budget appropriation approved by the New Jersey Legislature: "All natural resource and other associated damages recovered by the state shall be deposited into the Hazardous Discharge Site Clean Up Fund established pursuant to Section 1 of P.L. 1985, c.247 (C.58:10-23.34), and are appropriated for: direct and indirect costs of remediation, restoration and clean up; costs for consulting, expert and legal | N/A.  Plaintiffs admit the fact stated. |

| | SHELL'S STATEMENT OF FACTS | PLAINTIFFS' RESPONSE | SHELL'S REPLY |
|---|---|---|---|
| | | services incurred in pursing claims for damages; and grants to local governments and non-profit organizations to further implement restoration activities of the Office of Natural Resource Restoration." <u>See</u> Kaufmann Dec. Exhibit "D" | |
| 58 | The NJDEP does not recommend or require any additional investigation or remediation at the Site. (Davies Decl. ¶18, Exh. 2 (2012 Groundwater and Soil Remediation System Shutdown Approval, SH-NJ-SCI467567).) | Denied. While Plaintiffs do not deny the authenticity of the documents cited, the conclusion reached in this paragraph is too broad to be supported by that one document. NJDEP certainly recommends and requires additional investigation to restore the contaminated ground water to its predischarge condition. Hence this lawsuit. See also expert report of Anthony Brown, Brown Dec. Exhibit "B." | There is no additional investigation recommended or required by NJDEP at this site. The State of New Jersey LSRP for the Site has approved the current monitoring network, which includes a reduction of the number of monitoring wells sampled and the frequency by which those wells are sampled. Overall onsite groundwater concentrations have decreased and all wells are below GWQS onsite. (SH-NJ-SCI467567) |

| THE SHELL DEFENDANTS' RESPONSE TO THE STATEMENT OF ADDITIONAL FACTS BY PLAINTIFFS | | | |
|---|---|---|---|
| 1 | N/A | Shell Oil Company, Shell Oil Products Company LLC, Shell Trading (US) Company, Equilon Enterprises, LLC, and Motiva Enterprises LLC ("Shell') "has accepted responsibility for discharges at the [Shell Ridgewood] Site." (Memorandum of Law in Support of Shell's Motion for Partial Summary Judgment on Plaintiffs' Claim for Primary Restoration at the Ridgewood Trial Site - page 3.) | Admit that these words appear in the Shell Defendants' Motion. |
| 2 | N/A | Shell has undertaken no activity designed to restore the MTBE contaminated plume emanating from the Site to its pre-discharge condition. (November 1, 2013 Declaration of Anthony Brown - the "Brown Dec." ¶¶3-4) | Shell installed a P & T system in 1989 and SVE system in 1996 at the site that were designed to reduce the level of MTBE contamination at the site. Shell has engaged in MNA at the site since 2009, with the approval of the NJDEP. (SH-NJ-SCI446313) (SH-NJ-SCI440979) |
| 3 | N/A | The New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 *et seq.*<br><br>(the "Spill Act") provides: "[A]ny person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance, shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs no matter by whom incurred." (N.J.S.A. 58:10- 23.llg.c(l). | This is not a fact, but a quote from a New Jersey statute. Admit that Plaintiffs accurately quote language from the statute. |
| 4 | N/A | Among the items explicitly encompassed within "cleanup and removal costs" is<br><br>"the cost of restoration and replacement, where practical, of any natural resource damaged or destroyed by a discharge." N.J.S.A. 58:10-23.11u.b(4); *see also NJDEP* v. *ExxonMobil*, 923 A.2d 345,393 N.J. Super. 388, 404 (App. Div. 2007). | This is not a fact, but a quote from a New Jersey statute. Admit that Plaintiffs accurately quote language from the statute. |
| 5 | N/A | The definition of "remediation" in the Spill Act excludes "payment of compensation for damage to, or loss of, natural resources." (N.J.S.A. 58:10-23.11b.) | Deny.  58:10-23.11b does not contain a definition of remediation.  The definition of "remediation" is found in N.J.S.A.58:10-23.11f10: "Remediation" means the cleanup, removal, mitigation, control or management of a discharge" of a hazardous substance. |
| 6 | N/A | The Groundwater Quality Standard for MTBE is 70 ppb. (N.J.A.C. *7:9C-1.4* and Appendix Table 1.) | Admit. |
| 7 | N/A | New Jersey's Practical Quantitation Level, or | Admit. |

16

| | | | |
|---|---|---|---|
| | | PQL, for MTBE is I ppb. (N.J.A.C. 7 :9C-I.4 and Appendix Table I). | |
| 8 | N/A | The Site Remediation Program ("SRP") within NJDEP oversees remediation of contamination to a regulated Ground Water Quality Standard. (Deposition Testimony of Donna Plummer, March 13, 2012. 200:2-6 - attached to the November 1, 2013 Declaration of Leonard Z. Kaufmann, Esq. ("Kaufmann Dec.") as Exhibit "A"). | Admit. |
| 9 | N/A | The Office of Natural Resource Restoration within the NJDEP is responsible for restoration of injured natural resources. (Kaufmann Dec. Exhibit "B") | Admit. |
| 10 | N/A | Shell reported in its initial assessment of the Site that MTBE was present in the groundwater at the Site in concentrations up to 163,912 ppb. (Expert Report of Anthony Brown, attached as Exhibit "B" to the Brown Dec. (hereinafter, the "Brown Report) Section 4.2,entry for June 25, 1987 citing Handex 1988a, 13602) | Admit. |
| 11 | N/A | As a result of MTBE contamination, two of the Village of Ridgewood's potable water supply wells were shut down. ("Brown Report Section 4.2, entry for June 25, 1987). | The Walthery and Twinney wells were shut down in 1987 due to customer complaints of taste and odor issues with their drinking water.  (NJDEP-SITE220-026090, NJDEP-SITE220-026093) At that point, MTBE had not been detected in the Walthery or Twinney wells, but PCE had been detected.  (NJ-WK-RIDGEWOOD-009195-009196)  MTBE was not detected in the wells until a month after the wells were shut down. (SH-NJ-XX-053539) |
| 12 | N/A | Shell did not install any monitoring wells on the down-gradient leading edge of the plume. (Brown Report Section 4.2, entry for June 25, 1987). | Shell is unable to admit or deny this statement as phrased, as the statement does not indicate a time frame applicable to the assertion.

The following S-SE wells (located on Jeffers Street) have never recorded MTBE above the GWQS: MW-43 / MW-43Z7 (S) / MW-43Z5 (D) / MW-58B / MW-58Z7. These are furthest offsite wells in S-SE direction, downgradient. (SH-NJ-SCI467404) |
| 13 | N/A | Shell conducted pumping tests in 1988 and 1989. (Brown Report Section 4.2, entry for August 1988 - March 1989, citing Handex 1999, 013164). | Shell consultants also conducted pumping test on the Paramus well in 1996. (SH-NJ-SCI433934) |
| 14 | N/A | There is a hydraulic connection between the | Admit that this opinion appears in Mr. Brown's |

| | | shallow water table and bedrock aquifers at the Site. (Brown Report Section 4.2; entry for August 1988 - March 1989, citing Handex 1989, 013165) | report.  Only relatively small volumes of shallow MTBE- containing groundwater were drawn from the overburden into the bedrock aquifer as a result of the nature of the hydraulic connection between the two groundwater zones.  (Gillespie Report, p. 26) |
|---|---|---|---|
| 15 | N/A | In 1990, Shell began to operate a groundwater pump and treat remediation system at the site. However, Shell only operated this system in the shallow water table aquifer. Shell failed to put any of the extraction wells in the deeper, bedrock aquifer, despite the fact that Shell knew that this aquifer was contaminated with MTBE. (Brown Report Section 4.2, entry for September 28, 1990) | Deny.  Bedrock well, MW-28, installed across bedrock zones B & C, was connected to GW P&T system in May 1998. GW extraction from MW-28 continued during P&T operational periods from June 1998 through January 1990. (July 1998 Remedial Action Progress Report (RAPR); P&T Operational Period Summary in February 2009 RAPR Addendum – Remediation System Shutdown Request Report) |
| 16 | N/A | In 1991, NJDEP requested that Shell install four off-site monitoring wells. (Brown Report, Section 4.2, entry for October 18, 1991). | Admit. |
| 17 | N/A | Shell did not install these wells until five years later. (Brown Report Section 4.2; entry for November 1996, citing EnviroTrac 1997;013930). | Admit, but deny Plaintiff's implication that Shell ignored NJDEP's directive from 1992.  The necessity, location and number of wells changed over time as Shell and NJDEP negotiated the need for the wells and site conditions changed due to subsequent releases.  NJDEP requested that Shell install four wells in August 1996 and Shell did so in November 1996, after obtaining rights of entry from the owners of the two properties where the wells were to be installed. (NJDEP-SITE220-016363; NJDEP-SITE220-016325; SH-NJ-XX-041346; NJDEP-SITE220-016387; NJDEP-SITE220-016384; SH-NJ-XX-014500; NJDEP-SITE220-016317; NJDEP-SITE220-016332; NJDEP-SITE220-009082; SH-NJ-XX-041541; and NJDEP-SITE220-016212) |
| 18 | N/A | Shell submitted a report to NJDEP in which Shell claimed that groundwater contamination from the Site could not impact the Paramus well, which was owned and used by the Village of Ridgewood as a source of drinking water. (Brown Report Section 4.2, entry for August and November 1997, citing Michalski 1997b, 014553). | Admit. |
| 19 | N/A | NJDEP disagreed with *this* claim. (Brown Report Section 4.2; entry for August and November 1997, citing NJDEP 1997,014228). | Admit that Mr. Brown's report contains this opinion. |

| 20 | N/A | Shell's own data indicated that contamination could migrate to the highly transmissive Bedrock Unit Z4. (Brown Report Section 4.2, entry for August and November 1997). | Deny. The cited report does not support this assertion. |
|---|---|---|---|
| 21 | N/A | Shell has not fully delineated the Bedrock Unit Z4. (Brown Report Section 4.2, entry for August and November 1997). | Admit that Mr. Brown's report contains this opinion. |
| 22 | N/A | In 1998, Shell detected a new MTBE discharge at the Site. (Brown report Section 4.2; entry for June 17, 1998, citing EnviroTrac 2000,017728). | Admit. |
| 23 | N/A | Shell delayed the soil investigation related to this release for two years. (Brown Report Section 4.2; entry for March 2001, citing NewFields 2001b,017871). | SVE and P&T systems were already running at the site at the time of this release. (SH-NJ-SCI446313) |
| 24 | N/A | In December 1998, Shell submitted a Remedial Action Workplan Addendum. (Brown Report Section 4.2; entry for December 9, 1998, EnviroTrac 1998c, 009789). | Admit. |
| 25 | N/A | NJDEP determined that *this* submission was "administratively deficient, technically incomplete, non-responsive and does not satisfy the basic requirements of the Department's [prior demands]." (Brown Report Section 4.2; entry for March 15, 1999, citing NJDEP 1999a, 009786). | Admit that the quoted language appears in that document. |
| 26 | N/A | On July 12, 1999, NJDEP determined that the two additional reports were "unacceptable." (Brown Report Section 4.2; entry for July 12, 1999, citing NJDEP 199b, 009738) | Deny. The cited document does not support this statement. |
| 27 | N/A | Shell submitted a soil sampling plan in July 1999. NJDEP determined that this plan was also unacceptable. (Brown Report Section 4.2; entry for July 14, 1999 citing NJDEP 1999c,009732). | Admit that Shell submitted a soil sampling plan in July 1999. |
| 28 | N/A | On November 21, 1995 MTBE was detected in groundwater off site at a concentration of 4,500,000 ppb. (Brown Report Section 4.2; entry for November 21, 1995, citing Handex, 1996; 016277) | Admit. |
| 29 | N/A | In 1996, concentrations of MTBE were detected in at municipal supply wells at concentrations ranging up to 689 ppb. (Brown Report Section 4.2, entry for September 1996, citing NJDEP-SITE220-0 14380.) | Admit. |
| 30 | N/A | Concentrations of MTBE detected in samples collected off site in 1998 ranged as high as | Admit. |

| | | 6,020 ppg. (Brown Report Section 4.2, entry for June 17, 1998, citing Leggette, 1999; 009612) | |
|---|---|---|---|
| 31 | N/A | Concentrations of MTBE detected in samples collected in 1999 ranged as high as 4,520 ppb (Brown Report Section 4.2; entry for April 29, 1999, citing Sovereign, 2012; SOVCON299066-299223). | Admit. |
| 32 | N/A | When an LSRP completes the remediation at a site, he issues a Response Action Outcome form. It is the final remediation document. The RAO must include the following language:<br><br>"In concluding that this remediation has been completed, I am offering no opinions concerning whether either primary restoration (restoring natural resources to their pre-discharge condition) or compensatory restoration (compensating the citizens of New Jersey for the lost interim value of the natural resources) has been completed. (Kaufmann Dec. Exhibit "C") | Admit. |
| 33 | N/A | N.J.A.C. 7:26C-6.5 states that the covenant not to sue contained in the RAO is: "without prejudice to any rights that [the Plaintiffs] may have against [Shell] ... with respect to liability for:<br><br>1. Cleanup and removal costs, damages (including primary and compensatory restoration damages and the costs of any natural resource damage assessments) and injunctive relief, for injury to, destruction of, or loss of natural resources;<br><br>2. Cleanup and removal costs, damages, and injunctive relief available to the Plaintiffs in the United States District Court for the District of New Jersey, in the case captioned *NJDEP et al.* v. *Amerada Hess Corp. et al., C.*A. No. 3:07-5284, and subsequently pending in the United States District Court for the Southern District of New York, captioned as *In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation,* MDL No. 1358; and<br><br>3. Cleanup and removal costs, damages, and injunctive relief available to the Department, the Commissioner, and the Administrator of the New Jersey Spill | This is not a fact, but a quote from a New Jersey statute. Admit that Plaintiffs accurately quote language from the statute. |

20

| | | | |
|---|---|---|---|
| | | Compensation Fund in any litigation or claim pending as of the date of a final remediation document." | |
| 34 | N/A | Davies was not named as a testifying expert in this litigation. (Kaufmann Dec. ¶4). | Admit.  Mr. Davies is not an expert witness. |
| 35 | N/A | Plaintiffs' expert, Anthony Brown, is an expert in groundwater hydrology, contaminant fate and transport, remediation of contaminated sites, and drinking water treatment. (Brown Dec. ¶l) | Admit that Mr. Brown holds himself out to be such an expert. |
| 36 | N/A | His experience includes contaminated site investigations, hydrogeologic characterization studies, the fate and transport of contaminants, their regulatory standards, other regulations pertaining to contamination of groundwater, and the design, planning, permitting, costing, and implementation of remedial actions, aquifer restoration programs, and drinking water treatment systems. (Brown Dec. ¶1). | Admit that Mr. Brown has described his experience as Plaintiffs allege. |
| 37 | N/A | In his expert report, Brown opined that the investigation of the contamination emanating from the site was deficient. The delineation was not sufficient to ensure that the groundwater was, or would be restored (Brown Dec. ¶¶4-5; 14-18). | Admit that Mr. Brown has opined as detailed by Plaintiffs; Shell disputes the accuracy of that opinion. |
| 38 | N/A | In his report, Brown sets forth in that report the specific deficiencies in the prior delineation activities undertaken by or on behalf of Shell, and the specific actions necessary to correct these deficiencies. Specifically, Sub-section 9.2.2 Contamination Groundwater, states the following:<br><br>**• The lateral and vertical extent of MTBE and TBA in bedrock groundwater in the direction of the Twinney Well has not been fully investigated.** Depth discrete groundwater samples should be collected at regular intervals from a number of borings advanced in this area to evaluate water quality conditions. Based on the results of this investigation, groundwater monitoring wells should be installed at various depth intervals. Groundwater analysis in this area should include PCE, TCE and lead, as these constituents have been reported in groundwater in this area.<br><br>**• The lateral and vertical extent of MTBE** | Admit that Mr. Brown has opined as detailed by Plaintiffs; Shell disputes the accuracy of that opinion. |

SHELL'S LOCAL RULE 56.1 STATEMENT

| | | | |
|---|---|---|---|
| | | **and TBA in bedrock groundwater southeast of well nest MW-58 in the direction of the Paramus Well and beyond has not been investigated.** Depth discrete groundwater samples should be collected at regular intervals from a number of boreholes advanced in this area to evaluate water quality conditions. Based on the results of this investigation, groundwater monitoring wells should be installed at various depth intervals. This should include monitoring wells within Bedrock Zone Z4.<br><br>**• The lateral and vertical extent of MTBE and TBA in bedrock groundwater in the direction of the East Saddle River Well has not been investigated.** Depth discrete groundwater samples should be collected at regular intervals from a number of borings to evaluate water quality conditions. Based on the results of this investigation, groundwater monitoring wells should be installed at various depth intervals in this direction. This should include monitoring wells within Bedrock Zone Z4.<br><br>• Surface water samples should be collected from the Saddle River to evaluate potential COC surface water impacts.<br><br>(Brown Dec. ¶15) (emphasis added) | |
| 39 | N/A | 39. Section 10.0 of the Brown Report states the opinions pertinent to the need for off-site investigation and further restoration work. These include:<br><br>7. Investigations have failed to delineate the current extent of MTBE contamination in groundwater laterally. MTBE contamination is not delineated in groundwater to the south and southwest of the Site. See Section 6.4.3.<br><br>8. Investigations have failed to delineate MTBE in groundwater vertically. Only one groundwater monitoring well has been installed in the transmissive Z4 Bedrock Unit and the water quality in deeper bedrock units has not investigated. See Section 6.4.3.<br><br>9. Investigations have failed to delineate the current extent of TBA contamination in groundwater laterally. TBA contamination is | Admit that Mr. Brown has opined as detailed by Plaintiffs; Shell disputes the accuracy of that opinion. |

SHELL'S LOCAL RULE 56.1 STATEMENT

SHELL'S LOCAL RULE 56.1 STATEMENT

not delineated in groundwater to the south and southwest of the Site. See Section 6.4.3.

10. Investigations have failed to delineate TBA in groundwater vertically. TBA contamination has been detected in Zone C bedrock groundwater monitoring wells and no deeper bedrock zones have been investigated south and southwest of the current plume extent. See Section 6.4.3.

13. Remediation performed to date may have effectively addressed on-site groundwater contamination. See Sections 6.4.3, 7.0, and 9.2.1.

16. Additional off-site investigation is required. The groundwater plume is not delineated to the south, southwest, east, and northeast of the Site. See Section 6.4.3.

17. Investigation of deeper groundwater zones is required. Contamination has been detected in the transmissive Z4 Bedrock Unit; however, only one groundwater monitoring well has been installed in this unit. Additional monitoring wells within the Z4 Bedrock Unit and deeper bedrock units are required. See Section 6.4.3.

18. Additional on-site remediation of groundwater is possibly required. See Section 9.2.1.

19. Additional off-site remediation of groundwater may be required. No off-site groundwater remediation has been conducted at the Site. The most recent contaminant concentrations detected off-site would not warrant the implementation of an off-site groundwater remediation system. However, based upon the results of additional investigation, particularly in the transmissive Z4 bedrock unit, an off-site groundwater remediation system may be required. See Section 6.4.3.

20. Releases pose a threat to deeper aquifers. Contaminants have been detected in the transmissive Z4 Bedrock Unit.

However, only one monitoring well has been installed in this unit and deeper bedrock water quality conditions have not been

| | | investigated. See Sections 6.4.3, 8.3, and 8.4. (Brown Dec. ¶16). | |
|---|---|---|---|
| 40 | N/A | Brown's opinions with respect to this matter were reiterated in response to the following questions posed by defense counsel during his expert deposition. (Brown Dec. ¶7). | Shell is unable to admit or deny this point; Plaintiffs did not list any questions in this paragraph. |
| 41 | N/A | Brown provided rebuttal to the expert report of defense expert Peter Zeeb that addressed the need for additional off-site investigation. Those opinions included:<br><br>• As previously discussed, the lateral and vertical extent of MTBE and TBA contamination in the area of the Shell Site has not been delineated. Therefore, any conclusion that there is no impact or threat to local WSW is premature.<br><br>Additional investigation of hydrogeologic conditions, including bedrock structure and flow pathways, and contaminant distribution is required.<br><br>• Additional investigation activities are required to delineate the lateral and vertical extent of MTBE and TBA in the bedrock aquifer, particularly the transmissive Z4 area. Depending on the results of additional off-site assessment, off-site remediation might also be required to protect local WSWs and restore the aquifer to pre-discharge conditions.<br><br>(Brown Dec. ¶18). | Admit that Mr. Brown has opined as detailed by Plaintiffs; Shell disputes the accuracy of that opinion. |
| 42 | N/A | Brown also provided rebuttal to the expert report of defense expert Thomas Gillespie that addressed the need for additional off-site investigation. (Brown Dec. ¶_ and Exhibit "19"). | Admit that Mr. Brown has opined as detailed by Plaintiffs; Shell disputes the accuracy of that opinion. |
| 43 | N/A | In his rebuttal report, Brown also addressed the model for proper investigation and subsequent work to be performed. (Brown Dec. ¶20). | Admit that Mr. Brown has opined as detailed by Plaintiffs; Shell disputes the accuracy of that opinion. |

SHELL'S LOCAL RULE 56.1 STATEMENT

Dated: November 15, 2013                 Respectfully submitted,


                                         ____/s/ Richard E. Wallace, Jr._____
                                         Richard E. Wallace, Jr.
                                         Michael L. Williams
                                         Marie S. Dennis
                                         **SEDGWICK LLP**
                                         2900 K Street, NW
                                         Harbourside, Suite 500
                                         Washington, DC 20007
                                         (202) 204-1000

                                         Attorneys for Defendants
                                         Shell Oil Company, Shell Oil Products Company LLC,
                                         Shell Trading (US) Company, Equilon Enterprises LLC,
                                         and Motiva Enterprises LLC

SHELL'S LOCAL RULE 56.1 STATEMENT

## **PROOF OF SERVICE VIA LEXIS/NEXIS FILE & SERVE AND E-MAIL**

I, Kristin McCormick, hereby declare under penalty of perjury under the laws of the United

States of America that a true and accurate copy of the foregoing was served via Lexis/Nexis File

& Serve and ECF on all parties on this 15th day of November 2013.



_____/s/ Kristin McCormick_____
Kristin McCormick