UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In Re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

**This document pertains to:**

*New Jersey Department of Environmental Protection, et al. v. Atlantic Richfield Company, et al.*, Case No. 08-CV-00312

Master File No. 1:00-1898
MDL 1358 (SAS)
M21-88

# DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' PUBLIC NUISANCE CLAIM FOR DAMAGES AND TRESPASS CLAIM

## SUMMARY OF ARGUMENT

Nothing in Plaintiffs' Response papers changes the bottom line: the public nuisance claim for damages and trespass cause of action fail as a matter of law and must be dismissed.

As to public nuisance, the New Jersey Supreme Court could not have been more clear and unambiguous: a public entity has only the right to abate, and shall not recover damages unless it is (1) proceeding as a private litigant, and (2) can show special injury. This is New Jersey law. Plaintiffs have not come close to meeting it here.

As to trespass, Plaintiffs cannot establish even the most basic element for the claim: exclusive possession. They concede as much, but then try to contort the law in every way imaginable to evade dismissal. It is not this Court's responsibility to manipulate (and change) several decades of well-established New Jersey law to accommodate a cause of action that Plaintiffs have never possessed. Rather, the Court should uphold New Jersey law and dismiss the trespass claim.

## ARGUMENT

I.  **BECAUSE PLAINTIFFS ARE ACTING IN THE PLACE OF THE SOVEREIGN THEY MAY NOT RECOVER DAMAGES FOR PUBLIC NUISANCE.**

   A.  **New Jersey Law Limits a Public Entity's Remedy for Public Nuisance to Abatement.**

"[T]he public entity, as the modern representative of the sovereign in public nuisance litigation, has only the right to abate." *In re Lead Paint Litig.*, 924 A.2d 484, 498 (N.J. 2007). There is nothing confusing or ambiguous about this holding from the New Jersey Supreme Court. It is as simple and straightforward a statement of the law as could be written. A "public entity ... has only the right to abate."

1

Plaintiffs' two-point response is equally simple (or simplistic) but also is absolutely wrong. First, they contend that *Lead Paint* is inapplicable to the issue presented by Defendants' Motion.[1] To the contrary, *Lead Paint* dealt directly with the issue here – *i.e.*, the remedies available to public entities proceeding on a public nuisance theory. *In re Lead Paint*, 924 A.2d at 499. The Supreme Court reiterated the "time-honored element[] of the tort of public nuisance" that "a public entity which proceeds against the one in control of the nuisance may only seek to abate" (*id.*); and it affirmed the rule set forth in Restatement (Second) of Torts § 821C: "The only basis for a money damage remedy arises in the context of a **private action** for public nuisance." *Id.* at 498 (interpreting Restatement (Second) of Torts § 821C) (emphasis added). As detailed in the next section, this is **not** a "private action" for public nuisance.

Second, Plaintiffs argue that two decisions counsel for this Court to implement a wholesale change in New Jersey law. The first is a case from the Virgin Islands that, Plaintiffs contend, stands for the proposition that Restatement (Second) of Torts § 821C is not meant to prevent a governmental entity from obtaining damages. *Pls.' Opp'n* at 5 (citing *Comm'r of the Dep't of Planning and Natural Res. v. Century Alumina Co.*). Even assuming that Plaintiffs' interpretation of this case was correct, Virgin Islands law does not control in New Jersey – particularly on an issue that the New Jersey Supreme Court addressed so unequivocally just a few years ago. The second case, *Department of Environmental Protection v. Ventron Corporation*, 468 A.2d 150 (N.J. 1983), while originating "closer to home," simply misses the

---

[1] Plaintiffs attempt to distinguish *In re Lead Paint* by stating that "the court denied the municipal plaintiffs' right to sue under a public nuisance theory because the harm alleged was cognizable under the Product Liability Act." *Pls.' Opp'n* at 10. But that was only one of the New Jersey Supreme Court's reasons for finding as it did. *See In re Lead Paint*, 924 A.2d at 503 ("Our analysis of both traditional and modern concepts of the tort of public nuisance demonstrates that plaintiffs' complaints cannot be understood to state such a claim. Equally supportive of that conclusion, however, is the inescapable fact that carefully read, the claims asserted would instead be cognizable only as products liability claims.").

mark. The Court in *Ventron* was not asked to (and did not) address the question of what remedies are available for public nuisance, rather it addressed only liability issues. Thus, the mere fact that the word "damage" appears in the text of the decision cannot be read as the Supreme Court embracing monetary damages on public nuisance claims brought by public entities. And even if *Ventron* could be so read, that ruling obviously is no longer controlling New Jersey law in light of the Supreme Court's holding, 25 years later, in *Lead Paint*.

### B. Plaintiffs Concede that They are Pursuing Public Nuisance as a Public Entity, Not as a Private Litigant.

Nowhere in their opposition papers do Plaintiffs actually claim to be acting as "private litigants." In fact, they concede precisely the opposite, by admitting that they are proceeding on all claims in the Complaint as a public entity. *Pls.' Rule 56.1 Statement*, at ¶ 1 (admitting that Plaintiffs bring **all** causes of action in their *parens patriae* capacity and pursuant to the public trust doctrine); *see also Decl. of Lisa A. Gerson in Support of Defs.' Mot. for Partial Summary Judgment on Plaintiffs' Trespass Claim and Public Nuisance Claim for Damages*, at Ex. 1 ("Damages plaintiffs seek to recover in their *parens patriae* capacity include all Past Costs and Future Costs to abate the nuisance....").[2]

Plaintiffs' reliance on footnote 8 of the *In re Lead Paint* opinion is misplaced and Plaintiffs' interpretation of it is fundamentally flawed. Defendants do not dispute that the footnote leaves open the possibility that, "under other circumstances, a public entity could sue under a public nuisance theory **as a private plaintiff**." *Pls.' Opp'n* at 5, 11 (citing *In re Lead*

---

[2] Moreover, Plaintiffs cannot genuinely suggest that they are proceeding as private litigants, as everything in their Complaint is to the contrary. *See, e.g., Fourth Amend. Compl.* ¶ 1 ("Plaintiffs ... bring this action ... in order to protect and to remedy important state interests...."), ¶ 14 ("[T]he State is the trustee, for the benefit of its citizens, of all natural resources...."), ¶ 17 ("[T]he State, through plaintiffs DEP and the Administrator, seeks damages as *parens patriae* and under the public trust doctrine."), ¶ 18 (Plaintiffs "seek the recovery of any costs and damages that any private or public well owner has incurred....").

3

*Paint*, 924 A.2d at 502 n.8) (emphasis added). However, defendants **do** dispute Plaintiffs' interpretation of that footnote as permitting "the possibility that a public entity could pursue [public] nuisance damages by identifying a 'special injury.'" *Pls.' Opp'n* at 11. That is not what the case law requires. To seek damages for public nuisance a public entity must (1) be acting as a private plaintiff, and (2) if that precondition is met, it must then show special injury. In short: there are **two** requirements. Because Plaintiffs are not, and never have been, proceeding as private litigants in this matter, merely establishing "special injury" is insufficient. *See, e.g., Restatement (Second) of Torts* § 821C; *see also New Jersey Dep't of Envtl. Prot. v. Exxon Mobil Corp.*, No. UNN-L-3026-04, 2008 WL 4177038, at *5 (N.J. Super. Aug. 29, 2008) (stating that the "[special injury] element only applies to private parties seeking to make a claim of public nuisance."). Plaintiffs are not "private litigants" and, therefore, cannot recover money damages on their public nuisance claim.

      **C.**     **Plaintiffs Also Have Not Demonstrated Special Injury.**

Even if the Court were to find that Plaintiffs are proceeding here as "private litigants" (again, *see Pls.' Rule 56.1 Statement*, at ¶ 1), they are not entitled to seek damages because they have failed to sufficiently plead or prove special injury. Plaintiffs spend most of their brief trying to convince the Court otherwise. Plaintiffs' arguments are *repetitively* incorrect.

First, Plaintiffs repeatedly rely on this Court's statements in *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*. 457 F. Supp. 2d 455 (S.D.N.Y. 2006); *Pls.' Opp'n* at 6, 9-10. There, discussing a New Mexico federal district court opinion, the Court wrote that "in order to recover for property damage, the State would have to show that it 'suffered some discrete physical harm or pecuniary loss apart from the more generalized injury to the public's interest' resulting from the groundwater contamination." *In re MTBE*, 457 F. Supp. 2d at 466 (quoting *New Mexico v. General Electric*, 335 F. Supp. 2d 1185, 1240 (D.N.M. 2004)).

4

Continuing to quote *General Electric*, the Court stated: "'[P]ecuniary losses arising from existing and future response and remediation costs ... **may** be recoverable as damages reflecting a 'special injury' to the State's property interests,' **but ... because the State had not established its usufructuary interests, it was barred from recovering damages.**" *Id.* (quoting *General Electric*, 335 F. Supp. 2d at 1240-41) (emphasis added) ("OCWD has established a valid usufructuary interest.... Accordingly, OCWD may seek damages on its public nuisance claim to the extent that the alleged nuisance has interfered with that right." (emphasis added)).

Plaintiffs' position here is aligned with the State of New Mexico in that, like the State of New Mexico, Plaintiffs have not established a usufructuary interest in ground water. Indeed, Plaintiffs state just the opposite: "Members of the public use groundwater for drinking, bathing, recreational, and similar uses, and their injuries arise from unreasonable interferences with these uses. The State does not drink or bathe in the water; it owns, controls, manages and regulates the water." *Pls.' Opp'n* at 9. This statement reveals the putative "interest" that Plaintiffs allege has been unreasonably interfered with – *i.e.*, their (supposed) ownership, control, management and regulation of the water. And what is the alleged "special injury" that Plaintiffs attribute to that interference? The State claims that it "has incurred, and will continue to incur, significant costs and expenses to address this nuisance." *Id.* But this is not the special injury that the Court recognized in *OCWD*. It is simply a set of costs (allegedly) borne by the State and, ultimately, its citizens.

Second, Plaintiffs list cases that they contend stand for the proposition that money damages are available to the State on a public nuisance claim because damages to natural resources are "*per se* separate, distinct, and independent" of individual damages of New Jersey citizens. *See Pls.' Opp'n* at 7-8, 9 n.4. Notably, these cases largely are from other jurisdictions –

5

e.g. the *Century Alumina*[3] case from the Virgin Islands, and the *Selma*[4] case from California – and the two New Jersey cases they cite, neither of which was a public nuisance action, simply do not support the State's proposition. *See New Jersey v. Ctr. Power & Light Co.*, 336 A.2d 750 (N.J. 1975) (action brought under N.J.S.A. §§ 23:5-28, 58:10-23.6); *Lansco, Inc. v. New Jersey Dep't of Envtl. Prot.*, 350 A.2d 520 (N.J. Super. 1975) (declaratory judgment action). These decisions stand for nothing more than the general proposition that the State may maintain an action pursuant to the public trust doctrine and as *parens patriae*, and may seek damages.[5] These cases do not establish "special injury," nor do they address the relevant issue. The issue is not whether the State may obtain damages for injury to the environment—there are statutes that say it may (including the New Jersey Spill Act under which Plaintiffs sue here). Rather, the issue is whether it may do so through a public nuisance cause of action. The answer is clearly "no."

## II. PLAINTIFFS' TRUSTEESHIP INTEREST IN GROUNDWATER IS ANTITHETICAL TO THE EXCLUSIVE POSSESSION REQUIRED FOR A TRESPASS CLAIM.

Plaintiffs argue that because the New Jersey Legislature has explicitly granted the State the right to bring a trespass claim as to State navigable waters, it follows that a similar right also must exist for groundwater. *Pls.' Opp'n* at 14 (citing N.J.S.A. § 12:5-2). Plaintiffs' argument,

---

[3] As explained in Section I.A., *supra*, the Virgin Islands District Court has interpreted and applied Restatement (Second) of Torts § 821C in a way that is diametrically opposed to the way this same provision has been interpreted and applied by the Supreme Court of New Jersey. Accordingly, the conclusory public nuisance holding in *Century Alumina* – which is not binding in this case under any theory that we might imagine – should not be followed.

[4] The *Selma* case interprets California statutes, including statutory nuisance (California Code of Civil Procedure § 731) and the California Water Code. As such, it is neither binding nor persuasive here where the New Jersey Supreme Court has so squarely addressed the issue. *See Selma Pressure Treating Co. v. Osmose Wood Preserving Co.*, 221 Cal. App. 3d 1601 (Cal. Ct. App. 1990).

[5] The remaining cases cited in Plaintiffs' footnote 4 also do not support awarding damages based on public nuisance. Rather, they stand for the proposition that a state may proceed in its *parens patriae* capacity.

however, proves exactly the opposite. The fact that it took an express grant from the Legislature to vest the State with a right to assert a trespass claim for navigable waters proves that such a right **did not otherwise exist under New Jersey law**. It follows, therefore, that such a right does not exist for groundwater – which, as discussed below, is supported by New Jersey law. The Legislature clearly knows how to grant a "trespass" claim to the State for groundwater. It clearly has not done so here.

### A. Exclusive Possession Is Required to Maintain a Cause of Action for Trespass.

Despite Plaintiffs' unsupported statement to the contrary (*Pls.' Opp'n* at 13), New Jersey law **does** require exclusive possession as a necessary element for a trespass cause of action. *See, e.g.*, *Newark v. Eastern Airlines, Inc.*, 159 F. Supp. 750, 761 (D.N.J. 1958) (dismissing trespass claim where plaintiff was neither the owner nor in exclusive possession of the property); *New Jersey Dep't of Envtl. Prot. v. Exxon Mobil Corp.*, 2008 WL 4177038, at *9 (citing *Ventron*, 468 A.2d at 158 ("[A]ny actual invasion that … interfered with the plaintiff's exclusive possession of his land constituted an actionable trespass[.]")). Plaintiffs simply cannot establish exclusive possession of the groundwater in New Jersey. In fact, although repeatedly stating that they "own" the groundwater, their brief admits that groundwater, in fact, is owned by the citizens of New Jersey, and held in trust by the State.[6] *See Pls.' Opp'n* at 4 ("water resources of the state are public assets of the State held in trust for its citizens"); *id.* at 18 ("[u]ltimate ownership rests

---

[6] Plaintiffs also cite to N.J.S.A. 58:10-23.11b for the proposition that it "controls" the State's natural resources. That provision reads: "'natural resources' means all land, fish, shellfish, wildlife, biota, air, waters and other such resources owned, managed, held in trust or otherwise controlled by the State." Of course, that the definition of natural resources **includes** all waters controlled by the State does not mean that the State controls all waters. Indeed, the plain language of this definition highlights that the State has made a distinction between ownership and trusteeship. It also makes clear that whatever "control" the State has, it is not "exclusive"— no one could suggest that the State has exclusivity over the air, land, and water to the exclusion of all others.

7

in the people and ... is held by the State in trust for the public's benefit.'"). It is axiomatic that one cannot "own" something that, by law (and here, by admission), is held in trust for someone else. It is exactly because Plaintiffs are trustees of groundwater that they cannot, as a matter of law and fact, have "exclusive possession" and, therefore, cannot assert a cognizable trespass claim here. *New Jersey Dep't of Envtl. Prot. v. Exxon Mobil Corp.*, 2008 WL 4177038, at *10 (land held in trust for the public is not in the exclusive possession of the State).[7]

### B. Plaintiffs Do Not Have "Exclusive" (or "Superior") Control Over Groundwater Sufficient to Maintain Their Cause of Action for Trespass

Impliedly conceding that they cannot prove exclusive possession, Plaintiffs fall back to a request that the Court loosen this fundamental element of trespass. *Pls.' Opp'n* at 13, 15. This request is, at best, odd given that New Jersey courts have been moving away "from such common law claims as trespass and nuisance in environmental pollution cases." *Player v. Motiva Enters. LLC*, No. 02-3216 (RBK), 2006 U.S. Dist. LEXIS 2288, at *42 (D.N.J. Jan. 20, 2006) (internal quotations omitted) (citing *Mayor and Council of Rockaway v. Klockner & Klockner*, 811 F. Supp. 1039, 1053 (D.N.J. 1993); *Kenney v. Scientific, Inc.*, 497 A.2d 1310

---

[7] Plaintiffs' attempt to distinguish *New Mexico v. General Electric*, 335 F. Supp. 2d 1185 (D.N.M. 2004), and in turn discredit the *Exxon Mobil* decision on which Defendants' rely, is unavailing. First, Defendants are at a loss to locate the New Mexico court's alleged finding that "[New Mexico] did not own the marketable water rights [because] ... the water rights had been fully appropriated." *Pls.' Opp'n*, at 17. Nor, however, do we see the relevance. Second, *General Electric* is not "entirely inapposite," because Plaintiffs' distinction between New Jersey and New Mexico water law is a red herring. Regardless of New Jersey's riparian system, as under New Mexico law, the water of New Jersey is held "in trust for the purpose of making it available for appropriation by users who will put it to a beneficial use." *General Electric*, 335 F. Supp. 2d at 1195. Finally, the *Century Alumina* court, which Plaintiffs cite in support of their public nuisance claim, had no trouble relying on *General Electric* in dismissing the government's trespass claim. *Century Alumina*, 2008 WL 4809897, at *10 ("Nor does guardianship of the public trust give the Government of the Virgin Islands sufficient possessory interest in any water or land to maintain a trespass claim." (citing *New Mexico v. General Electric*, 467 F.3d, 1223, 1248 (10th Cir. 2006)). Like New Jersey, the Virgin Islands follow a riparian system. *See generally Red Hook Marina Corp. v. Antilles Yachting Corp.*, 478 F.2d 1273 (3d Cir. 1973).

(1985)), *aff'd* 2007 U.S. App. LEXIS 16914 (3d Cir. July 13, 2007). At worst, Plaintiffs' argument simply misses the point on the law.

Plaintiffs suggest that instead of "exclusive possession," the proper inquiry is whether the State "controls" the groundwater "as against all others." *See Pls.' Opp'n* at 14. While Defendants disagree with that contention,[8] whether Plaintiffs call it "possession" or "control," it is undisputed that Plaintiffs' claim to groundwater is not exclusive. That was exactly the finding in *New Jersey DEP v. Exxon Mobil Corp.* 2008 WL 4177038, at *10 ("Moreover, the land in the public trust is held by the State on behalf of a second party, the people. This court cannot find that land subject to the public trust is in the 'exclusive possession' of the State."). This **must** be the case because the resource is held in trust for others. If Plaintiffs had exclusive "control" (or "possession"), they could prevent the entire population from using or enjoying groundwater. That cannot be what the law holds.

Finally, Plaintiffs contend that their possession or control need not be exclusive, but only "superior." Plaintiffs rely heavily on this Court's 2011 opinion in *In re MTBE Products Liability Litigation*, 824 F. Supp. 2d 524 (S.D.N.Y. 2011), and particularly the holding that OCWD's usufructuary rights were subordinate to the State of California's rights. Focusing exclusively on this part of the decision, however, Plaintiffs ignore the other crucial part of this Court's conclusion: *i.e.*, that OCWD's rights also were subordinate to **"any overlying right holders** (such as the defendants as owners of the sites[.])" *In re MTBE Prods. Liab. Litig.*, 824 F. Supp.

---

[8] Plaintiffs cite to one New Jersey case that relies on Restatement § 157's definition of "possession." *See Marden v. Realty Constr. Co.*, 202 A.2d 175 (N.J. App. 1964). Indeed, this is the **only** New Jersey case that Defendants have found that even remotely discusses section 157 in the context of trespass. That is not to say, however, that *Marden* is a trespass case. Rather, the case was brought pursuant to N.J.S.A. 2A:35-1, the statutory replacement for the common law action of ejectment. *See id.* at 180. Plaintiffs' claim that the "proper" inquiry is in a trespass claim is "control," is unsupported.

9

2d at 546-47. Plaintiffs, therefore, make an incorrect and unwarranted leap when they claim that "the State's interests in its groundwater are most assuredly superior to, and exclusive as to, any other persons," including the owners of the Trial Sites. *Pls.' Opp'n* at 16. That was **not** the Court's holding in OCWD.

This case, moreover, is a Trial Site case. Plaintiffs do not have "the right as against all persons to immediate occupancy," where the groundwater in question is underlying private land.[9] *See Pls.' Opp'n* at 14; *see also New Jersey Dep't of Envtl. Prot. v. Union Carbide Corp.*, No. MID-L-5632-07, *Opinion of Court*, at *14 (N.J. Super. Mar. 29, 2011) ("The groundwater in question is under private property and has never been available to the public"). Indeed, if we are comparing interests, the State must lose out to the citizen property owners on whose behalf the State holds groundwater in trust. If the opposite were true, the State could grant itself or any other third party the right to extract groundwater from any Defendant's property.[10] The State does not have that power, nor, as Defendants have demonstrated, does it have the power to proceed on its trespass claim.

---

[9] Plaintiffs concede that they do not own the land at sixteen of the nineteen Trial Sites. *See Pls.' Rule 56.1 Statement*, at ¶ 2. As for the three State-owned Trial Sites, Plaintiffs' trespass claims fail because Plaintiffs consented to the delivery of gasoline containing MTBE to their property. *See Defs.' Mem. of Law*, at 5 n.4. Plaintiffs' Opposition brief does not seek to distinguish the case law to which Defendants cite for this rule. Rather, Plaintiffs stubbornly insist that despite that case law **they** did not and could not consent to contamination because such contamination is illegal. This fact did not dissuade the District Court in *New Jersey Turnpike Authority* from finding consent. *See New Jersey Tpk. Auth. v. PPG Indus.*, 16 F. Supp. 2d 460, 476 (D.N.J. 1998) (explicitly recognizing that the Spill Act prohibits the discharge of hazardous substances). And, of course, here, the State or one of its agencies has been identified by DEP itself as the responsible polluter at those three sites.

[10] It also is instructive that the State, like any other person, must obtain permission to use the groundwater. *See, e.g.*, N.J.A.C. 7:19-1.3 (defining "person" for purposes of water permitting regulations to include all subdivisions of the State and any state); *see also New Mexico v. General Electric*, 335 F. Supp. 2d at 1202 (finding it relevant that if the State wishes to use the water, it must make an application like all other citizens).

10

## CONCLUSION

For the foregoing reasons, and as a matter of law, Plaintiffs' public nuisance claim must be dismissed to the extent it seeks recovery beyond abatement, and Plaintiffs' trespass claim must be dismissed because Plaintiffs cannot prove exclusive possession.

November 15, 2013
New York, New York

Respectfully submitted,

Peter John Sacripanti
James A. Pardo
Stephen J. Riccardulli
Lisa A. Gerson
McDermott Will & Emery LLP
340 Madison Avenue
New York, NY 10017-4613
Tel. (212) 547-5400
Fax 212) 547-5444

*Counsel for Defendants Exxon Mobil Corporation, ExxonMobil Oil Corporation, and Mobil Corporation and on behalf of all Defendants listed in Attachment A*

11

## ATTACHMENT A

Atlantic Richfield Company;
BP America, Inc.;
BP Amoco Chemical Company;
BP Amoco Corporation;
BP Products North America Inc.;
Chevron Corporation;
Chevron U.S.A. Inc.;
Coastal Eagle Point Oil Company;
ConocoPhillips Company;
Cumberland Farms, Inc.;
Duke Energy Merchants, LLC;
El Paso Corporation (n/k/a El Paso LLC);
Exxon Mobil Corporation;
ExxonMobil Oil Corporation;
Equilon Enterprises LLC;
Getty Petroleum Marketing Inc.;
Getty Properties Corp.;
Gulf Oil Limited Partnership;
Hess Corporation;
Kewanee Industries, Inc.;
Lyondell Chemical Company;
Mobil Corporation;
Motiva Enterprises LLC;
Shell Oil Company;
Shell Oil Products Company LLC;
Shell Trading (US) Company;
Sunoco, Inc.;
Sunoco, Inc. (R&M);
Unocal Corporation