UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation ) ) ) | **Master File No. 1:00 - 1898** **MDL 1358 (SAS)** **M21-88** |
| ) ) ) ) | **THE BP DEFENDANTS SIXTH AMENDED MASTER ANSWER AND AFFIRMATIVE DEFENSES, AND MASTER CROSS-COMPLAINT AND THIRD-PARTY COMPLAINT** |
| This document pertains to: ) ) | |
| *Orange County Water District v. Unocal Corporation, et al., No. 04 Civ. 04968* ) ) | |
| *New Jersey Dep't of Environmental Protection, et al. v. Atlantic Richfield Co., et al., No. 08 Civ. 00312* ) ) ) | |
| *City of Manning, An Iowa Municipality v. Ashland Inc., et al., No. 13 Civ. 03033* ) ) ) | |
| *City of Portageville v. Ashland, Inc., et al., No. 13 Civ. 00091* ) ) ) | |
| *Town of Brewster, et al. v. Atlantic Richfield Co., et al., No. 13 Civ. 11695* ) ) ) | |
| *Town of Hinesburg v. Atlantic Richfield Co., et al., No. 13 Civ. 00198* ) ) ) | |

## <u>BP DEFENDANTS' SIXTH AMENDED MASTER ANSWER AND AFFIRMATIVE DEFENSES, AND MASTER CROSS-COMPLAINT AND THIRD-PARTY COMPLAINT</u>

Pursuant to the Master Answer agreement among the parties, CMO #6, and the Court's instructions during the January 13, 2005 status conference, and Federal Rules of Civil Procedure 12, 13 and 14(a), BP Products North America Inc. ("BP Products"), BP Corporation North America Inc. ("BP Corporation), BP Amoco Chemical Company ("BP Amoco Chemical"), BP-

Husky Refining, LLC ("BP-Husky Refining"), BP West Coast Products LLC ("BP West Coast Products"), Atlantic Richfield Company ("Atlantic Richfield"), and any other properly named and served BP affiliates, if any (collectively, "BP Defendants"),[1] answer the complaints in MDL 1358 for all cases in which they have been properly named and served, as follows:

**MASTER ANSWER**

## I.     ADMISSIONS AND STATEMENTS REGARDING SELECT ALLEGATIONS

### A.     Basic Defendant Information

Atlantic Richfield is a Delaware corporation with its principal place of business in the State of Texas. Atlantic Richfield is currently a holding company that does not refine crude oil, own refineries, or make gasoline. Further, Atlantic Richfield has not refined crude oil or distributed gasoline east of the Rockies since the mid-1980s. Until April 2000, Atlantic Richfield was a separate entity with no corporate relationship with the BP group of companies. On April 18, 2000, the BP Amoco group of companies purchased Atlantic Richfield. On January 1, 2002, Atlantic Richfield transferred all of its retail and refining assets to BP West Coast Products.

Atlantic Richfield states that ARCO Chemical Company was, on June 9, 1987, spun off by Atlantic Richfield as a separate corporation, transferring substantially all the assets and liabilities of the company – including the MTBE business – to the new corporation. Prior to June 9, 1987, ARCO Chemical Company was an unincorporated operating division of Atlantic

---

[1]     Not all BP Defendants have been named and served in each of the above-listed cases. This Amended Master Answer only applies to a BP Defendant to the extent that it has been properly named and served in a case. BP Defendants expressly reserve the arguments that were rejected by the Court in its rulings on the motions to dismiss. BP Defendants request that this Court enter an order deeming the motions to dismiss to have been filed in all subsequently filed cases. *Compare* Manual for Complex Litigation § 11.32, at 43 (4th ed. 2004) ("The judge ... should consider ordering that specified pleadings, motions, and other court orders (unless specifically disavowed by a party) are 'deemed' filed in cases later brought, transferred, or removed, without actually filing the documents (see Sample Order, section 40.42).").  BP Defendants also request that the Court's order dated July 25, 2005 – denying the Rule 1292(b) motion to certify the Court's April 20, 2005 order for interlocutory appeal – be made applicable to subsequently filed cases as well.

Richfield.  On July 28, 1998, ARCO Chemical Company was acquired by Lyondell Chemical Company.  Therefore, all allegations in the Complaint concerning ARCO Chemical Company after June 9, 1987 are not directed at Atlantic Richfield, and no answer is required from Atlantic Richfield.

BP Corporation was formerly known as BP Amoco Corporation, which was formerly known as Amoco Corporation.  BP Corporation is an Indiana corporation with its principal place of business in the State of Texas.  BP Corporation is a holding company that does not refine crude oil, own refineries, or make gasoline.

BP Products was formerly known as Amoco Oil Company.  BP Products is incorporated in Maryland, and has its principal place of business in the State of Illinois.  BP Products does refine crude oil, own refineries and make gasoline.

BP-Husky Refining is a limited liability company incorporated in Delaware with its principal place of business in the State of Ohio.  BP-Husky Refining does refine crude oil, own refineries and make gasoline.

BP West Coast Products is a limited liability company incorporated in Delaware with its principal place of business in the State of Washington.  BP West Coast Products is a wholly owned subsidiary of BP Products.  On January 1, 2002, BP West Coast Products took over the retail and refining assets of Atlantic Richfield.

BP Amoco Chemical is a Delaware corporation with its principal place of business in the State of Illinois.  It was formerly known as Amoco Chemical Company until April 12, 1999, when it took its current name.  BP Amoco Chemical is not, and has never been, involved in the refining, distribution, or marketing of gasoline, including gasoline with MTBE.  It owns no

refineries, gasoline terminals, or service stations. It has never made, sold, or distributed gasoline or gasoline with MTBE.

**B.      Sale or Distribution of Gasoline with MTBE or TBA to States in Question**

Atlantic Richfield has not refined crude oil or distributed gasoline east of the Rockies since the mid-1980s. Atlantic Richfield admits that it has produced and delivered gasoline (for one or more time periods between 1979 and the mid-1980s) to the following states (in which one or more plaintiffs have pending cases in MDL 1358 requiring an answer at the present time): California, Iowa, Massachusetts, Missouri, New Jersey, and Vermont. Some gasoline blends delivered to these states may have contained MTBE or TBA; others did not. Atlantic Richfield states that it is possible that some gasoline it took on exchange for delivery to these states (before it left these markets in the mid-1980s) contained MTBE or TBA. Specifically, with regard to California, Atlantic Richfield did not add methyl tertiary butyl ether (MTBE) to any gasoline, either at its refineries or terminals, until the late summer/early fall of 1989, when it introduced its EC-1 gasoline. Atlantic Richfield never blended tertiary butyl alcohol (TBA), as a stand-alone component, into gasoline blends that supplied California.

BP Corporation is a holding company that does not refine crude oil, own refineries, or make gasoline. Therefore, it has not and does not produce gasoline containing MTBE or TBA for delivery to the states in question.

BP Products admits that it has produced and delivered gasoline (for one or more time periods between 1979 and the present) to the following states (in which one or more plaintiffs have pending cases in MDL 1358 requiring an answer at the present time): California, Iowa, Massachusetts, Missouri, New Jersey, and Vermont. Some gasoline blends delivered to these states may have contained MTBE; others did not. Upon information and belief, BP Products only briefly and sporadically used TBA at one of its refineries (Texas City, Texas), but this was

prior to 1979.  BP Products states that it is possible that some gasoline it took on exchange for delivery to these states contained MTBE or TBA.

BP-Husky Refining states that, although it does refine crude oil, own refineries, and make gasoline, it did not sell or distribute gasoline with MTBE or TBA.

BP West Coast Products, a wholly owned subsidiary of BP Products, admits that it has produced and delivered gasoline since January 1, 2002, when it took over the retail and refining assets of Atlantic Richfield.  BP West Coast Products admits that it has produced and delivered gasoline to California from 2002 to the present.  Some gasoline blends delivered to California may have contained MTBE before BP West Coast Products stopped blending MTBE into gasoline at the end of 2002.  BP West Coast Products states that it is possible that some gasoline it took on exchange for delivery to California contained MTBE.  BP West Coast Products states that it never blended tertiary butyl alcohol (TBA), as a standalone component, into gasoline blends delivered to California.

BP Amoco Chemical is not, and has never been, involved in the refining, distribution, or marketing of gasoline, including gasoline with MTBE or TBA.  It owns no refineries, gasoline terminals, or service stations.  It has never made, sold, or distributed gasoline or gasoline with MTBE or TBA.

### C.      Allegations Regarding Production of MTBE or TBA

Atlantic Richfield states that an unincorporated division of Atlantic Richfield manufactured MTBE and TBA at certain times prior to 1988, at facilities located in Channelview and Bayport, Texas.  On or about June 9, 1987, Atlantic Richfield transferred substantially all of the assets and liabilities of the oxygenates and polystyrenics businesses of its ARCO Chemical division to ARCO Chemical Company (now Lyondell Chemical Company), a Delaware corporation.  At that time, ARCO Chemical Company became a separately incorporated

company that was owned by Atlantic Richfield. Atlantic Richfield states that at various times after the 1987 transaction described above it produced MTBE at its Houston and Los Angeles refineries.

BP Corporation is a holding company that does not refine crude oil, own refineries, or make gasoline. Nor does it manufacture MTBE or TBA.

BP Products states that Amoco Oil Company (now BP Products) sporadically manufactured small amounts of MTBE for proprietary use at its Yorktown, Virginia refinery, which refinery was sold in 2003. In addition, BP Products' affiliate, Amoco Chemical Company (now BP Amoco Chemical Company), sporadically manufactured MTBE for proprietary use at its plant near BP Products' Whiting, Indiana crude oil refinery from 1985 to 1992, and for a short period during 1996. Specifically, Amoco Chemical Company primarily manufactured polyisobutylene at its Whiting plant, and sporadically manufactured MTBE at the same plant.

BP-Husky Refining states that, although it does refine crude oil, own refineries, and make gasoline, it did not manufacture MTBE or TBA.

BP West Coast Products states that it produced MTBE at its Los Angeles refinery at various times between January 1, 2002 and December 31, 2002, when it took over the retail and refining assets of Atlantic Richfield.

BP Amoco Chemical states that its predecessor, Amoco Chemical Company, sporadically manufactured MTBE for proprietary use at its plant near BP Products' Whiting, Indiana crude oil refinery from 1985 to 1992, and for a short period during 1996. Specifically, Amoco Chemical Company primarily manufactured polyisobutylene at its Whiting plant, and sporadically manufactured MTBE at the same plant.

### D.     Allegations Regarding Properties and Behavior of MTBE

BP Defendants admit that MTBE is an aliphatic ether that does not occur naturally. BP Defendants admit that there are various methods for the production of MTBE and that one method of production is from methanol and isobutylene.

BP Defendants state that solubility and mobility are relative properties and that while MTBE and other ethers may be more soluble and mobile in water than certain gasoline components, such as the BTEX compounds, they are less soluble and mobile in water than other components sometimes blended into gasoline, such as ethanol. BP Defendants further state that MTBE's behavior in the environment – and its behavior relative to BTEX – is dependent on a variety of factors, including the nature or method of its release, the geological setting, and environmental and microbial factors.

BP Defendants state that while under certain conditions MTBE may biodegrade less readily than some other components of gasoline, MTBE has been found to naturally attenuate and biodegrade in numerous ways.

### E.     Allegations Regarding Properties and Behavior of TBA

BP Defendants admit that TBA is the product of the hydrolysis of isobutylene and that TBA can be an intermediate product of MTBE biodegradation.

BP Defendants state that solubility and mobility are relative properties and that TBA is more soluble and mobile in water than certain gasoline components, such as the BTEX compounds. BP Defendants further state that TBA's behavior in the environment – and its behavior relative to BTEX – is dependent on a variety of factors, including the nature or method of its release, the geological setting, and environmental and microbial factors.

### F.   Allegations Regarding Taste and Odor

BP Defendants admit that individuals vary in their ability to detect the taste and odor of MTBE in water.  BP Defendants state that responsible federal and state regulatory agencies have considered and adopted standards fully protective of MTBE taste and odor concerns.

### G.   Allegations Regarding Health Effects of MTBE

Plaintiffs' allegations of dire human health concerns from MTBE are unsubstantiated. MTBE has been studied publicly by scientists and government agencies for more than 20 years. MTBE has never been reliably linked to cancer, and there is no consensus in the scientific field that it is carcinogenic; indeed, major world health organizations have long refused to list MTBE as a human carcinogen.  BP Defendants admit that EPA has in the past classified MTBE as a possible human carcinogen.  BP Defendants state that responsible federal and state regulatory agencies have considered and adopted standards fully protective of any alleged health concerns related to MTBE.

### H.   Allegations Regarding Storage and Handling of Gasoline

BP Defendants admit that it is commonly known that gasoline is sometimes released into the environment from USTs and other means, and state that it and, according to reports, other major oil companies have spent hundreds of millions of dollars or more over the past 30 years to eliminate or reduce leaks, and to improve leak detection.  BP Defendants state that they are aware that most adults understand that all gasoline should be handled carefully and should not be spilled.

### I.   Allegations Regarding Knowledge of MTBE Contamination at Particular Locations In the 1980s

The complaints purport to describe various publicly reported incidents of MTBE contamination in New Jersey, New York and Maine in the 1980s.  BP Defendants state that it

was widely known among government regulators in the 1980s that various incidents involving MTBE contamination -- including the ones plaintiffs' complaints regularly list – had occurred.

BP Defendants admit that in the early 1980s there was publicity regarding a contamination event in Rockaway, New Jersey that did not directly involve BP Defendants. BP Defendants admit they are aware of certain release events in New York, some of which involved MTBE.

BP Defendants admit that the 1986 Garrett and Moreau paper described MTBE presence in certain wells in Maine. BP Defendants admit that information about MTBE was known to the government and the scientific community, as the 1986 Garrett and Moreau paper illustrates.

## J.      Allegations Regarding Participation in Industry Associations or Lobbying Activities

The chemical properties of ethers like MTBE have been known in the public arena for many, many years. Plaintiffs' claim that Defendants somehow hid this information from them, or from the U.S. government, is baseless. BP Defendants deny they had any agreement with other defendants to withhold from plaintiffs or government regulators information concerning MTBE.

BP Defendants admit that prior to 1990 Congress was preparing to take action to address the Nation's smog problem. BP Defendants admit that federal government agencies were aware of MTBE's chemical characteristics in 1986 or earlier, and that EPA held public meetings about MTBE in 1986. BP Products and Atlantic Richfield admit that they, like the federal government, were aware of the Garrett and Moreau paper in or about 1986. BP Defendants state that at various times the following BP-related entities were members of the American Petroleum Institute ("API") and its MTBE Committee: Amoco Corporation (later known as BP Amoco Corporation, and later known as BP Corporation North America Inc.); Atlantic Richfield

Company; BP Exploration & Oil, Inc. (later merged into BP Products North America Inc.); and BP Products North America Inc. (formerly known as Amoco Oil Company). BP Defendants admit that Atlantic Richfield participated in an API committee called the Toxicology Committee. BP Defendants admit that a Testing Consent Order was entered with EPA in or about 1988 by various major oil companies.

In response to plaintiffs' allegation that Congress adopted the Reformulated Gasoline (RFG) Program as part of the 1990 Amendments to the Clean Air Act "[a]s a result of tremendous lobbying efforts by the industry, including Defendants," BP Defendants state that several major oil companies in fact actively resisted the RFG Program's requirement of oxygen content levels.

### K.   Allegations Regarding Requirements and Effects of the 1990 Clean Air Act Amendments

BP Defendants state that although the 1990 Clean Air Act Amendments ("CAAA") did not literally require use of MTBE as a gasoline additive, in practical terms the CAAA certainly did compel MTBE's use.  EPA and Congress knew that the oxygen requirements of the Act could not and would not be met without MTBE's use.

BP Defendants state that beginning in the late 1970s, following the U.S. EPA's mandate to reduce lead in gasoline, most U.S. refiners began evaluating oxygenates and octane enhancers such as ethanol and MTBE.  In 1990, with the amendments to the Clean Air Act, the federal government mandated an increase in the use of oxygenates (up to 2.7% oxygen content) to meet ambient carbon monoxide air requirements in winter gasoline in many cities (beginning in 1992). In 1995, various oxygenates were extended by regulation to year-round use for severe, non-attainment ozone areas in the United States.  Reformulated gasolines used since that time have

sometimes contained between 10% and 15% MTBE, or up to 10% ethanol, to meet government mandates on oxygenate content.

BP Defendants deny that ethanol was available in sufficient supply to meet the demand for oxygenated gasoline in the RFG and oxyfuel regions when the Amendments requiring 2% oxygen content in year-round gasoline in areas using RFG became effective.

BP Products, BP-Husky Refining, BP West Coast Products and Atlantic Richfield admit that for the time periods during which they refined crude oil, owned refineries, and made gasoline, they complied with the legal requirements of the lead phase-out, the RFG Program and the Oxygenated Fuel Program. BP Defendants further state that several government agencies have concluded that MTBE has contributed substantially to reducing air pollution.

**L.  Allegations Regarding MTBE-Related Actions Taken By State or Federal Governmental Bodies**

BP Defendants admit that in 2001, EPA provided advance notice of its intent to initiate rulemaking pursuant to TSCA to eliminate or limit the use of MTBE as a fuel additive. No such rulemaking has been initiated. BP Defendants admit that certain proposed legislation in the U.S. Congress may limit the use of MTBE in gasoline in the future. BP Defendants admit that certain state legislatures or regulatory bodies have passed laws or adopted regulations to limit or eliminate the use of MTBE in gasoline. The details of such laws are a matter of public record.

**M.  Allegations Regarding Plaintiffs' Claimed Inability To Identify Relevant Sources of Gasoline Leaks Or Spills Affecting a Given Site**

BP Defendants state that gasoline leaks, whether containing MTBE or not, are almost always traceable to a specific source, limited to the immediate geographic area of the source, and remediable. In the vast majority of leak incidents, a responsible party can be and is identified.

BP Defendants deny that gasoline can never be traced from a contamination site to its terminal or refinery source.

### N.      Allegations Purporting To Quote Or Summarize Documents

Numerous paragraphs in each complaint purport to quote from or summarize documents, statutes and regulations.  These written materials speak for themselves.  The documents, statutes and regulations referenced by plaintiffs, which are not attached to the complaints, are the best evidence of their content, and BP Defendants therefore deny plaintiffs' attempts to summarize or characterize the contents of these written materials.

### O.      Allegations Regarding Defendants Unrelated To BP Defendants

BP Defendants are without knowledge or information sufficient to form a belief as to the truth of the matters averred in the complaints regarding the specific statements, acts or omissions of defendants unrelated to BP Defendants.

### P.      Allegations Regarding Particular Claims or Counts

In response to the portions of the complaints purporting to state particular common law or statutory claims, BP Defendants incorporate each paragraph of this Master Answer as if fully restated herein.  BP Defendants deny they are liable for any legal claim in any MDL 1358 complaint.

### Q.      Allegations Regarding Claimed Injuries or Damages

Some complaints make claims about contamination to specific private or public water wells or water resources, and others do not.  BP Defendants are without knowledge or information sufficient to form a belief as to the truth of the matters averred in the complaints regarding specific incidents of alleged contamination.  BP Defendants believe publicly available documents regarding plaintiffs will demonstrate that many of the wells or water resources at issue in the Complaints have not been impacted by MTBE, or have been impacted only at levels well below state action standards for MTBE, and that many other identified wells are not subject to an imminent threat of harm from MTBE contamination.

With regard to alleged damages, the allegations require no further answer. To the extent that further answer is deemed necessary, BP Defendants admit that plaintiffs seek the relief mentioned in the complaints, but deny that plaintiffs are entitled to any relief.

**R.**   **Plaintiffs' Demands for Jury Trials**

Plaintiffs in all actions have demanded a trial by jury of all claims asserted in the complaints. These jury demands require no answer. To the extent any answer is deemed necessary, BP Defendants admit that the plaintiffs demand jury trials, but deny that they are entitled to them.

**S.**   **Plaintiffs' Allegations of Intentional, Willful, Deliberate, or Negligent Acts**

BP Defendants deny that they intentionally, willfully, deliberately, or negligently committed any acts that caused or foreseeably could have caused harm to plaintiffs or any other party.

**T.**   **Plaintiffs' Allegations of Representational Standing**

To the extent that plaintiffs allege that they own or have the authority to protect groundwater, groundwater resources, water resources, water supplies, water rights, or drinking water wells, or any other right in and to water or groundwater, BP Defendants deny these allegations and deny that these plaintiffs have standing to bring any claim based on allegations of property damage or natural resource damage.

**U.**   **Plaintiff Orange County Water District's Allegations of Ownership and Rights Respecting Groundwater Resources**

To the extent that plaintiff Orange County Water District alleges that it owns groundwater, groundwater resources, water resources, water supplies, water rights, or drinking water wells or any other right in and to water or groundwater, BP Defendants deny these allegations and deny that Orange County Water District has standing to bring any claim based on

allegations of property damage. Further, BP Defendants allege that Orange County Water District's claims and rights are precluded and/or extinguished, in whole or in part, by the judgment entered in *The People of the State of California, etc. v. Atlantic Richfield Company, etc. et al.,* Superior Court of the State of California for the County of Orange No. 80-40-30 (RJI).

### V.      **Regulatory Powers of Other Agencies**

To the extent plaintiff Orange County Water District alleges that it is entitled to assert claims to protect groundwater resources or the environment without regard to any impact on water supply wells owned or operated by them, BP Defendants deny that plaintiff possesses any such right. BP Defendants further allege that, pursuant to statutes duly enacted by the California legislature, state agencies that are not parties to these lawsuits have been delegated the power and authority to (1) determine what maximum levels of contaminants, including MTBE and/or TBA, are permissible in potable water distributed in California, and (2) manage activities to investigate, delineate, remediate and cleanup actual or suspected MTBE and/or TBA contamination, including determining when sufficient cleanup has been achieved. Finally, BP Defendants allege that plaintiff Orange County Water District's claims and rights are barred, in whole or in part, by prior settlement(s) and release(s) reached with BP Defendants by applicable regulatory agencies in the County of Orange and/or State of California.

### II.      **GENERAL DENIAL OF REMAINING ALLEGATIONS**

BP Defendants deny the remaining allegations in the complaints in MDL 1358 cases for which an answer is presently required, and in which they have been properly named and served.

### III.      **RESERVATION OF RIGHT TO AMEND**

BP Defendants reserve the right to amend this Master Answer.

IV.    **AFFIRMATIVE DEFENSES APPLICABLE TO ALL CASES**

For its separate defenses to the complaints in MDL 1358 cases for which an answer is presently required, and in which it has been properly named and served, BP Defendants state as follows:

1.    Plaintiffs' claims are barred in whole or in part by the doctrine of federal preemption.

2.    At all relevant times, BP Defendants' actions and their products complied with and were undertaken pursuant to applicable federal, state, and local laws, rules, regulations and specifications.

3.    Plaintiffs' claims are barred in whole or in part because federal, state and/or local authorities and agencies have mandated, directed, approved and/or ratified the alleged actions or omissions of BP Defendants.

4.    All acts and conduct of BP Defendants, as alleged in the complaints, conformed to and were pursuant to statutes, government regulations and industry standards, and were based upon the state of knowledge existing at all material times alleged in the complaints.

5.    The relief sought by plaintiffs' complaints is, in whole or in part, within the particular expertise of and is being addressed by federal and state governments, and their relevant agencies, and thus this Court should decline to exercise jurisdiction over this matter pursuant to the doctrine of primary jurisdiction.

6.    Plaintiffs have failed to exhaust their administrative remedies.

7.    Plaintiffs have a plain, common, adequate and speedy remedy at law.  The equitable causes of action alleged in the complaints are thus barred.

8.    Plaintiffs are barred from seeking strict liability for design defect as any attempt to reexamine the mandatory cost-benefit analysis delegated to and performed by the EPA

pursuant to its obligations under the Clean Air Act ("CAA") would be impermissible given that Congress, through Section 211 of the CAA, authorized the EPA, and not the courts, to perform the cost-benefit analysis.

9.    If it is determined that plaintiffs or anyone on whose behalf plaintiffs are allegedly suing, was injured, as set forth in the complaints, which BP Defendants deny, BP Defendants allege that such hardship is outweighed by the convenience and public service rendered by BP Defendants' actions.

10.    Each purported cause of action asserted in the complaints is barred under the doctrine of primary assumption of risk in that the general public, by and through its elected representatives and their appointees, knew and understood the alleged risks of harm presented by the use of MTBE, if any, and elected nevertheless to proceed to require the use of gasoline oxygenates and to specifically permit the use of MTBE as a gasoline oxygenate.

11.    To the extent that plaintiffs have received or may receive the requested relief from a governmental agency, BP Defendants assert their entitlement to an appropriate set-off or reduction of any judgment(s) against them.

12.    The appropriate forum for plaintiffs' claims is an administrative agency, and therefore all proceedings before this Court should be stayed pending administrative resolution of the issues.

13.    The claims set forth in the complaints fail, in whole or in part, based on the doctrine of election of remedies.

14.    Each purported cause of action of the complaints as applied to BP Defendants is barred because the relief sought therein would pose unreasonable barriers and

substantial burdens on interstate and/or international commerce in violation of the Commerce Clause of the United States Constitution and/or the North American Free Trade Agreement.

15.    The complaints fail to state a claim upon which relief may be granted and should, therefore, be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

16.    Because plaintiffs have not suffered any cognizable harm and have not incurred any present damages, there is no current case or controversy, and thus, plaintiffs' claims are not ripe for adjudication.

17.    Plaintiffs suffered no losses or injuries that were proximately caused by BP Defendants.

18.    BP Defendants' conduct was not the cause in fact of any injuries alleged by plaintiffs.

19.    Plaintiffs have failed to state a cause of action for nuisance because they have neither alleged nor suffered any particularized injury.

20.    The alleged injuries and damages, if any, suffered as a result of conduct legally attributable to BP Defendants is *de minimis* and therefore any injunction would pose a disproportionate hardship on BP Defendants, as well as on the public, in comparison to the injury and/or damages allegedly suffered by plaintiffs.   Accordingly, plaintiffs are not entitled to injunctive relief against BP Defendants as a matter of law.

21.    Plaintiffs do not have a legally cognizable injury unless or until the alleged MTBE contamination exceeds state action levels.

22.    Plaintiffs may not seek attorneys' fees as an element of relief.

23.    Plaintiffs have failed to properly present any claim for attorneys' fees.

24.    Because plaintiffs have sued multiple parties, under multiple causes of action, with divisible damages, the claim for attorneys' fees must be proportioned between same.

25.    The claims set forth in the complaints are barred, in whole or in part, by the mootness doctrine.

26.    The complaints and each purported cause of action are barred, in whole or in part, by the defense of laches.  Plaintiffs' unreasonable and inexcusable delay in filing these actions caused substantial prejudice to BP Defendants.

27.    The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations.

28.    The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of repose.

29.    Plaintiffs are estopped by their conduct from asserting any of the purported claims alleged against BP Defendants in the complaints.

30.    Plaintiffs have not investigated the cause of the alleged harm or attempted to identify the actual responsible party or parties.

31.    Plaintiffs cannot establish the required predicates for their theories of collective liability, and therefore their defendant-identification burden remains.  In the event that the defendant-identification burden was shifted in the future, BP Defendants deny that they contributed to the contamination at issue.

32.    Plaintiffs' claims are barred in whole or in part by the doctrine of waiver.

33.    Plaintiffs assumed the risk of all acts, injuries, and damages that plaintiffs now assert against BP Defendants.

34.    BP Defendants are entitled to total or partial indemnity from those individuals or entities who are responsible for plaintiffs' injuries or damages, if any, in an amount in direct proportion to their relative culpability.

35.    Plaintiffs lack the capacity to sue.

36.    Plaintiffs lack standing to sue.

37.    Plaintiffs' claim is barred because BP Defendants' conduct caused no physical impact to plaintiffs' property.

38.    There is a defect or misjoinder of parties, in that plaintiffs have failed to join indispensable or necessary parties.

39.    Plaintiffs have failed to name the party or parties responsible for the alleged harm.

40.    The claims set forth in the complaints fail, in whole or in part, because of the failure to identify which defendant, if any, proximately caused the alleged harm.

41.    Plaintiffs' claimed injuries were caused in whole or in part by others, whose actions were not controlled by or related to BP Defendants.  Such actions are the superseding, supervening and/or intervening cause of plaintiffs' injuries and therefore plaintiffs may not recover from BP Defendants as a matter of law.

42.    Plaintiffs' claims must be dismissed because they have failed to identify the particular defendant that is responsible for the harms alleged by plaintiffs.

43.    At no time did BP Defendants exercise control over the persons or entities responsible for actual or threatened releases of MTBE, if any, alleged in the complaints.  At all times, BP Defendants acted with due care with respect to any petroleum or petroleum products

used and took reasonable precautions against foreseeable acts or omissions of any such third parties and any foreseeable consequences.

44.     BP Defendants did not own, control or release any of the petroleum products that are alleged to have caused or threatened contamination of plaintiffs' wells.

45.     Any gasoline product sold or distributed for resale by BP Defendants was properly designed, formulated, prepared and otherwise not defective in any respect.

46.     To the extent required, BP Defendants provided proper warnings, information, and instructions relating to its products pursuant to generally recognized and prevailing standards in existence at the time.

47.     Plaintiffs have failed to allege that BP Defendants' alleged failure to provide an adequate warning proximately caused their injuries.

48.     Any gasoline product containing MTBE manufactured, sold, or distributed for resale by BP Defendants was not unreasonably dangerous when made.

49.     The plaintiffs' claims against BP Defendants are barred by the bulk supplier doctrine.

50.     BP Defendants sold their products to knowledgeable and sophisticated purchasers, and any injury alleged by plaintiffs was caused by such purchasers' failure to observe known standards of care.

51.     Any injury, damage or loss sustained by the plaintiffs was proximately caused by and/or contributed to by their own negligence, carelessness, and/or omissions.

52.     Plaintiffs' claims are barred pursuant to the learned intermediary doctrine.

53.     If any damages or injuries alleged in the complaints occurred because of leaks in the gasoline storage tanks and associated piping, BP Defendants are not liable for those

damages and/or injuries because the gasoline storage tanks and associated piping, when manufactured and distributed, conformed to the then current state of scientific and industrial knowledge, and the tanks and associated piping were used for their intended purpose.

54. Plaintiffs' public nuisance claims should be dismissed because there were no acts or omissions by or on behalf of any of the defendants constituting an intentional, unreasonable interference with the plaintiffs' interest in the use and enjoyment of their property.

55. Plaintiffs' public nuisance claims must be dismissed because plaintiffs have failed to allege "special damages," an absolute prerequisite to the assertion of a public nuisance claim.

56. BP Defendants allege that they owed no duty of care to plaintiffs in connection with the matter alleged in the complaints.

57. The complaints fail to plead the elements of negligence claims with sufficient clarity, specificity, and particularity.

58. Plaintiffs' claims are barred to the extent the conduct complained of is protected by the First Amendment to the United States Constitution.

59. The complaints and each cause of action are barred based on BP Defendants' valid exercise of the right of petition to the federal government, state government(s), and/or their respective deliberative bodies and agencies.

60. Plaintiffs' claims are barred, in whole or in part, based on plaintiffs' actual or constructive notice of reported spills or releases, if any, from publicly available records.

61. There is no legal relationship upon which any duty could possibly be owed by BP Defendants to plaintiffs, and therefore, plaintiffs' causes of action fail as a matter of law.

62.     The injuries and damages, if any, alleged by plaintiffs are caused in whole or in part to the presence of compounds other than MTBE (*e.g.*, the BTEX compounds).  Under plaintiffs own legal theories, BP Defendants are not liable for damages caused by compounds other than MTBE.  In the event liability is assessed against BP Defendants, such liability must be reduced where, and to the extent that, other compounds – about which plaintiffs do not complain – contributed to the alleged injury.

63.     BP Defendants are not liable for contamination where chemical compounds other than MTBE exceed state action levels or standards, requiring cleanup regardless of the presence of MTBE (particularly, but not exclusively, where MTBE is present below state action levels or standards).

64.     Any injury, damage or loss sustained by plaintiffs in connection with the subject matter of this action was not reasonably foreseeable.

65.     If it is determined that plaintiffs or anyone on whose behalf plaintiffs are allegedly suing, was injured, as set forth in the complaints, which BP Defendants deny, BP Defendants allege that any award of damages shall be reduced in proportion to the percentage of fault attributable to plaintiffs.

66.     If it is determined that plaintiffs or anyone on whose behalf plaintiffs are allegedly suing, was injured, as set forth in the complaints, which BP Defendants deny, BP Defendants allege that any award of damages shall be reduced in proportion to the percentage of fault attributable to third parties (including, but not limited to, persons or entities responsible for gasoline leaks or spills).

67.     The injuries alleged in the complaints, if any, may be reasonably apportioned among the defendants, as each defendant's alleged acts and omissions, including BP

Defendants', is divisible and distinct. Therefore, no defendant is jointly and severally liable to plaintiffs for any claim alleged in the complaints.

68.     Plaintiff has unreasonably failed to mitigate its damages, if any.

69.     To the extent that any party has settled or may settle in the future with plaintiffs, BP Defendants assert their entitlement to an appropriate credit or reduction of any judgment(s) against them.

70.     Plaintiffs' claims for relief are barred, in whole or in part, by prior settlement(s) and release(s) reached with BP Defendants by applicable governmental and regulatory agencies

71.     Plaintiffs' claims for punitive damages violate the provisions of the U.S. Constitution, including but not limited to those provisions requiring due process of law and prohibiting excessive fines.

72.     Plaintiffs are public entities and/or authorities seeking compensation for alleged damages to natural resources allegedly under their jurisdiction or purview. These public entity/authority plaintiffs have improperly delegated the power to prosecute these cases to private attorneys on a contingent fee basis. Such delegation is against public policy.

73.     BP Defendants incorporate by reference any affirmative defense, whether general or specific to a specific State, alleged by other defendants in MDL 1358.

74.     The pleading of the defenses described above shall not be construed as an undertaking by BP Defendants of any burden which would otherwise be the responsibility of plaintiffs.

## V.    AFFIRMATIVE DEFENSES APPLICABLE TO PARTICULAR STATES

For their separate defenses to the complaints in MDL 1358 cases from particular states (for which an answer is presently required, and in which BP Defendants have been properly named and served), BP Defendants state as follows:

**CALIFORNIA**

1.    The complaint and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, California Code of Civil Procedure §§ 337, 337.1, 337.2, 337.15, 338, 340, 340.8 and California Business and Professions Code § 17208.

2.    California Civil Code §§ 1431.1 through 1431.5, commonly known as "Proposition 51," provide that the liability of each defendant for non-economic damages, if any, shall be several only and shall not be joint, and BP Defendants therefore assert that each defendant may be held liable only for the amount of non-economic damages, if any, allocated to that defendant in direct proportion to its percentage of fault, if any.

3.    BP Defendants allege that their liability, if any, for non-economic loss be pro rated according to the provisions of California Civil Code § 1431.2.

4.    The complaint and each purported cause of action are barred because Plaintiff and/or its predecessors-in-interest and assignors are guilty of unclean hands.

5.    Plaintiff's claims fail, in whole or in part, based on the doctrine of unjust enrichment.

6.    As to each cause of action in the complaint, BP Defendants allege that the release of MTBE and/or hazardous substances, if any, and the damages resulting therefrom, if any, was caused by an act of God.

7.     The complaint and each purported cause of action are barred because they are ambiguous and uncertain.

8.     Plaintiff did not reasonably rely on any representation, disclaimer, warning, or other act or omission of BP Defendants.

9.     BP Defendants had no duty to warn plaintiff or third parties about the potential dangers, if any, of the product or products manufactured, packaged, labeled, used, applied and/or removed by said third parties.

10.     BP Defendants had no duty to warn because the risks of injury and damages inherent in utilizing the products described in the complaints, if any, were open, obvious, or known.

11.     Any express or implied warranties alleged by plaintiffs to have been made by BP Defendants, if made at all, were expressly disclaimed and excluded by product labels, pursuant to the laws of the State of California, which provided that BP Defendants made no warranties, express or implied, concerning the products or the use of said products that extended beyond the description on the label, and that all statements made concerning said products applied only when used as directed.

12.     Plaintiff is a sophisticated water purveyor or manager and was, at all relevant times, fully aware of the nature and risks of injury and damages described in the complaints that could arise in the operations or management of a public drinking water supply system.

13.     If there was a less dangerous alternate design, without admitting that there was and without assuming the burden of proof on this issue, BP Defendants did not and could not have known of such an alternate design at the time.

25

14.     If there was a less dangerous alternate design, without admitting that there was and without assuming the burden of proof on this issue, such an alternate design was not feasible at the time.

15.     Plaintiff and/or others modified, altered, or changed the BP Defendants' products or materials referred to in the complaints, if any, so that such changes in any said products or materials proximately caused plaintiff's injuries, losses and damages, if any.

16.     If BP Defendants provided the products alleged to have been defective, and without admitting that it did so or that any product was defective and without assuming the burden of proof on these issues, the products were misused or abused by others without the knowledge or consent of BP Defendants and in a manner not reasonably foreseeable by BP Defendants prior to its receipt of notice of the circumstances described in the complaints.  Such misuse or abuse was the sole cause of or a contributing cause to the injuries, losses, and/or damages, if any, suffered by plaintiff as alleged in the Complaint, and by reason thereof, plaintiff is barred from recovering some or all of any damages suffered.

17.     BP Defendants are not liable for any alleged wrongful entry upon land because plaintiff and/or plaintiff's predecessors in interest or assignors expressly or impliedly consented to or had knowledge of all such activities or conditions.

18.     BP Defendants allege that to the extent plaintiff is claiming damages for the cost of remediation due to plaintiff's alleged compliance with primary or secondary drinking water standard or other regulations enacted by the State of California or any other governmental body, those claims are unconstitutional because they constitute an ex post facto application of a regulation disallowed by Art. 1, sec. 9 of the U.S. Constitution.

19.     The complaint and each purported cause of action are barred, in whole or in part, by federal and state law, including but not limited to, the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2; the Clean Air Act, 42 U.S.C. § 7401, *et seq.*; the Toxic Substances Control Act, 15 U.S.C. § 2601, *et seq.*; and rules, regulations, and decisions thereunder.

20.     BP Defendants allege that the maximum contaminant level or other drinking water standard, to the extent they form the bases of plaintiff's claims against BP Defendants were arbitrarily and unreasonably enacted without due process, and therefore, cannot be enforced against BP Defendants.

21.     The complaint and each purported cause of action are barred to the extent that federal and/or California state agencies have exonerated BP Defendants and/or determined that any BP Defendants' facility did not contribute to the presence of MTBE in the relevant groundwater for which plaintiff is asserting damages.

22.     The complaint and each purported cause of action are barred to the extent that federal and/or California state agencies have settled with and/or released BP Defendants from any further liability respecting the presence of MTBE in the relevant groundwater for which plaintiff is asserting damages.

23.     The complaint and each purported cause of action are barred because plaintiff does not own or has abandoned, lost, waived, given up, or otherwise failed to perfect any rights, including but not limited to use rights related to any water that is the subject of the complaints.  Plaintiff's claims are also barred because under California law, the water that is the subject of the complaints is the property of the State of California, not of plaintiff.

24.     The complaint and each purported cause of action are barred to the extent that such claims have been satisfied by payments or provision of alternate water supplies by BP Defendants, defendants, or third parties.

25.     The complaint and each purported cause of action are barred to the extent that plaintiff has assigned rights and claims for certain damages and other relief, if any, to BP Defendants, other defendants, or third parties.

26.     If plaintiff sustained any injury under the circumstances alleged in the complaints or in any other respect, their recovery against BP Defendants, if any, is barred by the alleged conduct and conditions resulting from a necessity.

27.     Plaintiff's claims for trespass are barred because the BP Defendants are immune to liability for plaintiff's damages, if any, caused by earth movement.

28.     Plaintiff's claims are barred, in whole or in part, as the result of their own knowing or negligent conduct that caused or contributed to MTBE and/or TBA contamination giving rise to these claims.

## IOWA

1.     The complaint and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to Iowa Code Ann. §§ 614.1(2) and 614.1(4).

2.     Plaintiff's recovery is barred by their contributory fault, which is greater than the fault of all persons whose fault may have proximately contributed to plaintiff's damages.  Iowa Stat. Ann. § 668.3.

3.     Recovery is barred or must be reduced, in whole or in part, based on the doctrine of comparative negligence.

4.      Each BP Defendant is not jointly and severally liable because it bears less than fifty percent of the total fault of all parties.  Iowa Stat. Ann. § 668.4

5.      Plaintiff's assumed the risk of any alleged injury.

6.      BP Defendants' products "conformed to the state of the art in existence at the time."  Iowa Stat. Ann. § 668.12(1).

7.      BP Defendants cannot be liable for failure to warn because the alleged "risks and risk-avoidance measures . . . should be obvious to, or generally known by, foreseeable product users."  Iowa Stat. Ann. § 668.12(3).

8.      BP Defendants cannot be liable because "a product bearing or accompanied by a reasonable and visible warning or instruction that is reasonably safe for use if the warning or instruction is followed shall not be deemed defective or unreasonably dangerous on the basis of failure to warn or instruct."  Iowa Stat. Ann. § 668.12(4).

**MASSACHUSETTS**

1.      The complaint and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to Mass. Gen. Laws Ann. Ch. 260 § 2A.

2.      Plaintiffs' claims are barred because their negligence is greater than the alleged negligence of each BP Defendant.  Mass. Gen. Laws Ann. Ch. 231 § 85.

3.      Plaintiffs are not entitled to injunctive relief because they failed to provide written notice to the Massachusetts Attorney General and the BP Defendants as required by Mass. Gen. Laws Ann. Ch. 214 § 7A.

**MISSOURI**

1.     The complaint and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to Mo. Ann. Stat. §§ 516.100, 516.120 and 516.010.

2.     Plaintiff's recovery is barred or must be reduced, in whole or in part, based on the doctrine of comparative fault. Mo. Ann. Stat. § 537.765.

3.     Any duty to warn, if one existed at all, was discharged pursuant to Mo. Ann. Stat. § 537.760, because the alleged defects, if any, were open and obvious to plaintiff.

4.     Plaintiff's product liability claims fail because the BP Defendants had no duty to warn plaintiff, as plaintiff knew or should have known of the alleged danger. Mo. Ann. Stat. § 537.760.

5.     Plaintiff's product liability claims fail because the BP Defendants' products were in conformity with generally recognized state of the art. Mo. Ann. Stat. §§ 537.764 and 537.760.

6.     Plaintiff's product liability claims fail because the BP Defendants' products, at the time they were sold, were not in a defective condition or unreasonably dangerous when put to a reasonably anticipated use. Mo. Ann. Stat. § 537.760.

7.     Any alleged defective condition, of the BP Defendants' products at the time they were sold, was not the proximate cause of plaintiff's injuries or harm. Mo. Ann. Stat. § 537.760.

8.     Plaintiff's alleged injuries, if any, resulted from use of the product that was not reasonably anticipated by the BP Defendants at the time that they sold or otherwise conveyed the product. Mo. Ann. Stat. § 537.760.

9.     Plaintiff's recovery of punitive damages arising out of their alleged injury is limited under Mo. Ann. Stat. § 510.265.

**NEW JERSEY**

1.     The complaint and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, N.J.S.A. § 2A:14-2 and N.J.S.A. § 58:10B-17.1.

2.     BP Defendants' conduct did not meet the minimum requirements of culpability with respect to each material element of the alleged offenses of civil conspiracy, public nuisance, and negligence, according to the applicable provision of N.J.S.A. § 2C:2-2, and, therefore, plaintiffs' claims on these counts should be dismissed.

3.     The complaint fails to state a claim upon which relief may be granted under common law or statute, including but not limited to the New Jersey Spill Compensation and Control Act, N.J.S.A. § 58:10-23.11 *et seq.* (the "Spill Act") or the Water Pollution Control Act, N.J.S.A. § 58:10A-1 *et seq.* (the "WPCA").

4.     Insofar as there has been any discharge of hazardous substances or pollutants causing injury to a natural resource of the State of New Jersey, which BP Defendants deny, there are no damages for lost use (or otherwise) to the extent that alleged impacted groundwater is or was within property owned by BP Defendants or their predecessors or successors in interest.

5.     To the extent the damages sought by plaintiffs are based, in whole or in part, upon a formula for calculating natural resource damages for groundwater contamination, those damage claims are confiscatory and the calculation methodology is arbitrary, capricious and unreasonable, and not rationally related to the extent of actual injury.

31

6.     Plaintiffs' claims are barred to the extent that they seek to recover costs, damages, and expenses including, but not limited to, cleanup and/or removal costs that plaintiffs incurred improperly, or that are not related to natural resource restoration or replacement.

7.     Plaintiffs' claims are barred to the extent that plaintiffs did not comply with the requirements of the Spill Act or the WPCA.

8.     Plaintiffs' claims are barred to the extent that they seek to recover costs, damages, and expenses other than those specifically enumerated and defined in the Spill Act or WPCA.

9.     Plaintiffs' claims are barred to the extent that no BP Defendant is a person who has "discharged" a hazardous substance (Spill Act) or pollutant (WPCA) and/or a person "in any way responsible" for the discharge of hazardous substances (Spill Act), as those terms are defined.

10.     Any recovery against BP Defendants for alleged cleanup and removal costs and alleged damage to or destruction of natural resources is barred because it would be an unlawful double recovery and/or multiple compensation for the same injuries or damages.

11.     Plaintiffs' purported assessment of natural resource damages is an *ultra vires* act, contravenes protections afforded to BP Defendants under the Constitutions of the State of New Jersey and the United States, and is not recoverable.

12.     Plaintiffs' claims for natural resource damages are an unlawful taxation.

13.     Plaintiffs' claims for damages are barred because plaintiffs' method of assessing damages was not adopted in a manner consistent with the Administrative Procedures Act, N.J.S.A. § 52:14B-2(e).

14.    Plaintiffs' claims are barred to the extent that no persons or entities, including the State of New Jersey, are currently using or have any plans to use certain groundwater or other natural resources at issue in the complaint.

15.    Plaintiffs' claims are barred because no actions or inactions by BP Defendants have resulted in any permanent impairment or damage to a natural resource.

16.    Plaintiffs' claims are barred because they have not incurred "costs of restoration and replacement … of any natural resources damaged or destroyed by a discharge" under N.J.S.A § 58:10-23.11u, or costs to prevent or mitigate damage to the public health, safety, or welfare, including, but not limited to, … natural resources" under N.J.S.A. § 58:10-23.11b.

17.    Plaintiffs are not the trustee for groundwater located within the property owned or operated by BP Defendants or their predecessors or successors in interest.

18.    Plaintiffs fail to meet the requirements of N.J.S.A. § 58:10-23.11u.a(1)(a) entitling them to bring a civil action under N.J.S.A. § 58:10-23.11u.a(1)(b) because BP Defendants are not in violation of a provision of the Spill Act, "including any rule, regulation, plan, information request, access request, order or directive promulgated or issued pursuant thereto."

19.    Without admitting the applicability of the statutes relied upon by plaintiffs, any recovery against BP Defendants is barred due to the statutory defenses afforded pursuant to the Spill Act or WPCA.

20.    Plaintiffs' claims are barred or limited insofar as they seek to recover costs, damages, expenses and any type of relief incurred before the effective date of the Spill Act generally, N.J.S.A. § 58:10-23.11u.b.(4) specifically, or WPCA.

21.     BP Defendants are entitled to offset against any liability on its part, if any, for the greatest of (1) any amounts actually paid by any person or entity heretofore or hereafter for any of the injuries, costs, damages, and expenses alleged; or (2) any amounts stipulated or otherwise agreed to in any release of or covenant not to sue any person or entity heretofore or hereafter for any of the injuries, costs, damages, and expenses alleged; or (3) the equitable share of liability of any person or entity that heretofore received, or hereafter receives, any release from liability or covenant not to sue with respect to any of the injuries, costs, damages, and expenses alleged.

22.     Neither the Spill Act nor the WPCA authorize plaintiffs to seek or receive an award of legal fees.

**VERMONT**

1.     The complaint and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, 12 Vermont Stat. Ann. §§ 511, 512(4), 512(5).

2.     Plaintiff's recovery is barred by their contributory fault, which is, greater than the causal total negligence of the defendant or defendants.  12 Vermont Stat. Ann. § 1036.

3.     Recovery is barred or must be reduced, in whole or in part, based on the doctrine of comparative negligence.  12 Vermont Stat. Ann. § 1036.

\*   \*   \*

For each State described above, BP Defendants incorporate by reference any affirmative defense, whether general or specific to another State, alleged herein or by other defendants in MDL 1358.

The pleading of the defenses described above shall not be construed as an undertaking by BP Defendants of any burden which would otherwise be the responsibility of plaintiffs.

**WHEREFORE**, BP Defendants request entry of judgment dismissing the complaints with prejudice, and awarding BP Defendants their costs and attorneys' fees, and such other relief as the Court may deem just and proper.

## BP DEFENDANTS' MASTER CROSS-CLAIMS AGAINST JOHN AND JANE DOES NOS. 501-1000[2]

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, BP Products North America Inc. ("BP Products"), BP Corporation North America Inc. ("BP Corporation), BP Amoco Chemical Company ("BP Amoco Chemical"), BP-Husky Refining, LLC ("BP-Husky Refining"), BP West Coast Products LLC ("BP West Coast Products"), Atlantic Richfield Company ("Atlantic Richfield"), and any other properly named and served BP affiliates, if any (collectively, "BP Defendants"), by their undersigned counsel, hereby bring these Cross-Claims against Cross-Defendants John and Jane Does Nos. 501-1000, presently Defendants in this action but whose identity is unknown, in MDL 1358 for all cases in which an answer is presently required, and in which they have properly named and served, and in support thereof, aver as follows:

**Background**

1.      Plaintiffs commenced civil actions in Iowa, Massachusetts, Missouri, New Jersey, and Vermont against BP Defendants and other purported manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and marketers of the gasoline additive

---

[2]      In an email dated July 20, 2005, Judge Scheindlin stated that cross-claims relating to the California actions did not have to be asserted with this Master Answer.  Accordingly, BP Defendants are not asserting cross-claims in the California actions at this time.  BP Defendants reserve the right to assert such cross-claims in the future in accordance with the schedule set by the Court or the parties.

MTBE and/or gasoline products containing MTBE for alleged damages resulting from the contamination or threatened contamination of plaintiffs' groundwater or water systems by MTBE and/or gasoline containing MTBE. Certain of the complaints also contain allegations relating to TBA.

2.      Specifically, plaintiffs allege negligence, public and private nuisance, trespass, civil conspiracy, breach of warranty, violation of state environmental/spill acts, strict liability due to abnormally dangerous activity, and a variety of product liability theories against BP Defendants (and related entities) and the other named Defendants.

3.      In virtually all instances, plaintiffs' complaints fail to identify – or name as defendants – the entities or persons responsible for spilling, leaking or otherwise releasing into the environment the MTBE, TBA, tert-amyl methyl ether ("TAME"), or gasoline containing MTBE, TBA, or TAME that led to the contamination or threatened contamination they allege. Nor have plaintiffs identified the locations of each well they allege is contaminated or threatened with contamination.

**Parties, Jurisdiction, and Venue**

4.      BP Products is a Maryland corporation with its principal place of business in the State of Illinois.  BP Corporation is an Indiana corporation with its principal place of business in the State of Texas.  BP Amoco Chemical is a Delaware corporation with its principal place of business in the State of Illinois.  BP-Husky Refining is a limited liability company incorporated in Delaware with its principal place of business in the State of Ohio.  BP West Coast Products is a limited liability company incorporated in Delaware with its principal place of business in the State of Washington.   Atlantic Richfield is a Delaware corporation with its principal place of business in the State of Texas.

5.     Cross-Defendants are individuals and/or entities, Defendants in this action but whose exact identities, locations, and actions are presently unknown to BP Defendants, and who are responsible for any and all damages allegedly sustained by plaintiffs. The exact identities, locations and actions of the Defendants also named as Cross-Defendants depend on further discovery and/or determinations regarding, among other things, the locations of the wells plaintiffs allege are contaminated or threatened with contamination.

6.     Cross-Defendants' offending conduct, as described herein, took place in substantial part in Iowa, Massachusetts, Missouri, New Jersey, and Vermont in relative proximity to the contaminated or threatened groundwater or water systems in which plaintiffs claim to have an interest.

7.     Jurisdiction is proper in this Court under 28 U.S.C. § 1367, in that the claims set forth herein are so related to the claims in plaintiffs' complaints that they form part of the same case or controversy.

8.     Venue is proper in this Court under 28 U.S.C. § 1391 and Federal Rule of Civil Procedure 13.

**Cross-Defendants' Unlawful Conduct**

9.     Plaintiffs allege that BP Defendants and the other named Defendants caused the contamination or threatened contamination of plaintiffs' groundwater or water systems in manufacturing, designing, refining, formulating, distributing, supplying, selling, or marketing MTBE or gasoline containing MTBE and are liable to plaintiffs for the damages allegedly resulting therefrom. Certain of the complaints also contain allegations relating to TBA and TAME.

10.     BP Defendants deny any and all liability whatsoever for plaintiffs' alleged damages and incorporate their Master Answer and Amended Master Answers to plaintiffs' complaints by reference.

11.     BP Defendants are not responsible for the actual or threatened releases, spills, or leaks of MTBE or gasoline containing MTBE into plaintiffs' groundwater or water systems.  BP Defendants own or operate few, if any, of the service stations, the land on which they operate, USTs, or other instrumentalities, from which gasoline was leaked or spilled.

12.     The harm allegedly sustained by plaintiffs is a direct result of the actions and inaction of Cross-Defendants, Defendants to this action, the exact identities of which are unknown to BP Defendants at this time, and over whom BP Defendants have no control and for whom BP Defendants are not responsible.  If BP Defendants have or had any relationship, contractual or otherwise, with one or more Cross-Defendants, such relationships required Cross-Defendants to refrain from the offending activity described herein, and/or to assume full responsibility for it.

13.     Cross-Defendants owed a duty to BP Defendants to safely and properly use, handle, or store MTBE or gasoline containing MTBE; install, remove, or inspect USTs containing such products; and remediate or mitigate contamination caused by MTBE or gasoline containing MTBE.

14.     Cross-Defendants breached their aforementioned duty in, *inter alia,* the following regards:

    a.     By failing to safely and properly handle, use, or store MTBE or gasoline containing MTBE;

    b.     By failing to safely and properly transport, haul, deliver, or transfer MTBE or gasoline containing MTBE;

c.   By failing to safely and properly receive or accept delivery or transfers of MTBE or gasoline containing MTBE;

d.   By failing to safely and properly remediate, mitigate, clean-up, eliminate, or control releases, spills, or leaks of MTBE or gasoline containing MTBE, including by, *inter alia,* failing to timely commence remediation or mitigation efforts, or improperly drilling or establishing monitoring wells during remediation or mitigation, thereby causing cross-contamination;

e.   By failing to safely and properly service, repair, maintain, monitor, inspect, test, or examine USTs or any associated piping or equipment;

f.   By failing to safely and properly install, replace, excavate, or remove USTs or any associated piping or equipment;

g.   By failing to safely and properly dispense or pump gasoline into trucks, tankers, automobiles, or any other vehicles;

h.   By failing to adhere to applicable laws, rules, regulations, guidelines, or procedures relating to the use, handling, or storage of MTBE or gasoline containing MTBE; the installation, removal, or inspection of USTs; or the remediation or mitigation of contamination caused by MTBE or gasoline containing MTBE; and

i.   By otherwise failing to act with due care in using, handling, or storing MTBE or gasoline containing MTBE; installing, removing, or inspecting USTs; or remediating or mitigating contamination caused by MTBE or gasoline containing MTBE.

15.   The actions and inactions of Cross-Defendants were negligent, careless, reckless, and in derogation of their duty to BP Defendants.

16.   As a direct and proximate result of Cross-Defendants' actions and inaction, Cross-Defendants were the sole cause of and/or contributed to the alleged contamination or threatened contamination of plaintiffs' groundwater or water systems and any and all resulting damages to plaintiffs alleged in the Complaints, and are directly liable to plaintiffs.   Alternatively, Cross-Defendants are liable to BP Defendants for all or part of plaintiffs' claims against BP Defendants.

17.     Without admitting any of the allegations made against BP Defendants in plaintiffs' complaints, BP Defendants incorporate plaintiffs' allegations and legal claims by reference and assert them against Cross-Defendants.   Without limitation, BP Defendants specifically assert that Cross-Defendants are liable to plaintiffs on, among other claims, their negligence, trespass and nuisance claims, and any claims premised on state statutes or regulations which apply, in whole or in part, to owners and operators of gasoline stations, USTs or other gasoline storage facilities.

18.     If the allegations contained in plaintiffs' complaints are correct, which is specifically denied, then Cross-Defendants are liable solely and directly to plaintiffs for the incidents complained of and any and all damages sought by plaintiffs.

19.     Alternatively, if the allegations contained in plaintiffs' complaints are correct, which is specifically denied, and it is judicially determined that plaintiffs are entitled to damages from BP Defendants, then Cross-Defendants are liable to BP Defendants, and BP Defendants are entitled to express, implied, or equitable indemnification and/or contribution from Cross-Defendants for all losses, damages, and costs, including attorneys' fees, that BP Defendants incur as a result of this action.

**WHEREFORE,** Defendants and Cross-Plaintiffs BP Defendants demand entry of judgment in their favor and against Cross-Defendants John and Jane Does nos. 501-1000 for all sums that may be awarded in favor of plaintiffs and against BP Defendants, together with interest, costs, reasonable attorneys' fees, and such other relief as this Court deems just and proper.

## BP DEFENDANTS' MASTER THIRD-PARTY COMPLAINT AGAINST JOHN AND JANE DOES NOS. 1-500

Pursuant to Rule 14(a) of the Federal Rules of Civil Procedure, BP Products North America Inc. ("BP Products"), BP Corporation North America Inc. ("BP Corporation), BP Amoco Chemical Company ("BP Amoco Chemical"), BP-Husky Refining, LLC ("BP-Husky Refining"), BP West Coast Products LLC ("BP West Coast Products"), Atlantic Richfield Company ("Atlantic Richfield"), and any other properly named and served BP affiliates, if any (collectively, "BP Defendants"), by their undersigned counsel, hereby bring this Third-Party Complaint against Third-Party Defendants John and Jane Does Nos. 1-500 ("Third-Party Defendants") in MDL 1358 for all cases in which an answer is presently required, and in which they have been properly named and served, and in support thereof, avers as follows:

**Background**

1.    Plaintiffs commenced civil actions in California, Iowa, Massachusetts, Missouri, New Jersey, and Vermont, against BP Defendants and other purported manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and marketers of the gasoline additive methyl tertiary butyl ether ("MTBE") and/or gasoline products containing MTBE for alleged damages resulting from the contamination or threatened contamination of plaintiffs' groundwater or water systems by MTBE and/or gasoline containing MTBE.

2.    Specifically, plaintiffs allege negligence, public and private nuisance, trespass, civil conspiracy, breach of warranty, violation of state environmental/spill acts and a variety of product liability theories against BP Defendants (and related entities) and the other named Defendants.

3.    In virtually all instances, plaintiffs' complaints fail to identify – or name as defendants – the entities or persons responsible for spilling, leaking or otherwise releasing into

the environment the MTBE or gasoline containing MTBE that led to the contamination or threatened contamination they allege. Nor have plaintiffs identified the locations of each well they allege is contaminated or threatened with contamination.

**Parties, Jurisdiction, and Venue**

4.    BP Products is a Maryland corporation with its principal place of business in the State of Illinois. BP Corporation is an Indiana corporation with its principal place of business in the State of Texas. BP Amoco Chemical is a Delaware corporation with its principal place of business in the State of Illinois. BP-Husky Refining is a limited liability company incorporated in Delaware with its principal place of business in the State of Ohio. BP West Coast Products is a limited liability company incorporated in Delaware with its principal place of business in the State of Washington. Atlantic Richfield is a Delaware corporation with its principal place of business in the State of Texas.

5.    Third-Party Defendants are individuals and/or entities, the exact identities and locations of which are presently unknown, consisting of: (a) retail gasoline service station owners and operators; (b) jobbers and wholesalers; (c) trucking and tanking companies; (d) drivers and operators of vehicles used by trucking and tanking companies; (e) contractors, excavators, and others engaged in the installation, removal, repair, or examination of underground storage tanks ("USTs") or associated piping or equipment; and (f) others whose actions or inaction caused or threatens to cause releases, spills, or leaks of MTBE or gasoline containing MTBE impacting plaintiffs' groundwater or water systems, and who are thereby responsible for any and all damages allegedly sustained by plaintiffs.

6.    Third-Party Defendants' offending conduct, as described herein, took place in substantial part in California, Iowa, Massachusetts, Missouri, New Jersey, and Vermont,

in relative proximity to the contaminated or threatened groundwater or water systems in which plaintiffs claim to have an interest.

7.    Jurisdiction is proper in this Court under 28 U.S.C. § 1367, in that the claims set forth herein are so related to the claims in plaintiffs' complaints that they form part of the same case or controversy.

8.    Venue is proper in this Court under 28 U.S.C. § 1391 and Fed. R. Civ. P. 14.

**Third-Party Defendants' Unlawful Conduct**

9.    Plaintiffs allege that BP Defendants and the other named Defendants caused the contamination or threatened contamination of plaintiffs' groundwater or water systems in manufacturing, designing, refining, formulating, distributing, supplying, selling, or marketing MTBE or gasoline containing MTBE and are liable to plaintiffs for the damages allegedly resulting therefrom.

10.    BP Defendants deny any and all liability whatsoever for plaintiffs' alleged damages and incorporates their Master Answer and Amended Master Answers to plaintiffs' complaints by reference.

11.    BP Defendants are not responsible for the actual or threatened releases, spills, or leaks of MTBE or gasoline containing MTBE into plaintiffs' groundwater or water systems.  BP Defendants own or operate few, if any, of the service stations or USTs, or other instrumentalities, from which gasoline was leaked or spilled by Third Party Defendants, and which allegedly impacted plaintiffs' wells.

12.    The harm allegedly sustained by plaintiffs is a direct result of the actions and inaction of Third-Party Defendants, the exact identities of which are unknown to BP

Defendants at this time, and over whom BP Defendants have no control and for whom BP Defendants are not responsible. If BP Defendants have or had any relationship, contractual or otherwise, with one or more Third-Party Defendants, such relationships required Third Party Defendants to refrain from the offending activity described herein, and/or to assume full responsibility for it.

13.     Third-Party Defendants owed a duty to plaintiffs and/or BP Defendants to safely and properly use, handle, or store MTBE or gasoline containing MTBE; install, remove, or inspect USTs containing such products; and remediate or mitigate contamination caused by MTBE or gasoline containing MTBE.

14.     Third-Party Defendants breached their aforementioned duty in, *inter alia,* the following regards:

a.     By failing to safely and properly handle, use, or store MTBE or gasoline containing MTBE;

b.     By failing to safely and properly transport, haul, deliver, or transfer MTBE or gasoline containing MTBE;

c.     By failing to safely and properly receive or accept delivery or transfers of MTBE or gasoline containing MTBE;

d.     By failing to safely and properly remediate, mitigate, clean-up, eliminate, or control releases, spills, or leaks of MTBE or gasoline containing MTBE, and/or by failing to properly consult or advise plaintiffs regarding same, including by, *inter alia,* failing to timely commence remediation or mitigation efforts, or improperly drilling or establishing monitoring wells during remediation or mitigation, thereby causing cross-contamination;

e.     By failing to safely and properly service, repair, maintain, monitor, inspect, test, or examine USTs or any associated piping or equipment;

f.     By failing to safely and properly install, replace, excavate, or remove USTs or any associated piping or equipment;

g.     By failing to safely and properly dispense or pump gasoline into trucks, tankers, automobiles, or any other vehicles;

h.   By failing to adhere to applicable laws, rules, regulations, guidelines, or procedures relating to the use, handling, or storage of MTBE or gasoline containing MTBE; the installation, removal, or inspection of USTs; or the remediation or mitigation of contamination caused by MTBE or gasoline containing MTBE; and

i.   By otherwise failing to act with due care in using, handling, or storing MTBE or gasoline containing MTBE; installing, removing, or inspecting USTs; or remediating or mitigating contamination caused by MTBE or gasoline containing MTBE.

15.   The actions and inactions of Third-Party Defendants were negligent, careless, reckless, and in derogation of their duty to plaintiffs and/or BP Defendants.

16.   As a direct and proximate result of Third-Party Defendants' actions and inactions, Third-Party Defendants were the sole cause of and/or contributed to the alleged contamination or threatened contamination of plaintiffs' groundwater or water systems and any and all resulting damages to plaintiffs alleged in the complaints, and are directly liable to plaintiffs.  Alternatively, Third Party Defendants are liable to BP Defendants for all or part of plaintiffs' claims against BP Defendants.

17.   Without admitting any of the allegations made against BP Defendants in plaintiffs' complaints, BP Defendants incorporate plaintiffs' allegations and legal claims by reference and asserts them against Third-Party Defendants.  Without limitation, BP Defendants specifically assert that Third Party Defendants are liable to plaintiffs on, among other claims, their negligence, trespass and nuisance claims, and any claims premised on state statutes or regulations which apply, in whole or in part, to owners and operators of gasoline stations, USTs or other gasoline storage facilities.

18.   If the allegations contained in plaintiffs' complaints are correct, which is specifically denied, then Third-Party Defendants are liable solely and directly to plaintiffs for the incidents complained of and any and all damages sought by Plaintiffs.

19.    Alternatively, if the allegations contained in plaintiffs' complaints are correct, which is specifically denied, and it is judicially determined that plaintiffs are entitled to damages from BP Defendants, then Third-Party Defendants are liable over to BP Defendants, and BP Defendants are entitled to express, implied, or equitable indemnification and/or contribution from Third-Party Defendants for all losses, damages, and costs, including attorneys' fees, that BP Defendants incur as a result of this action.

**WHEREFORE,** Defendants and Third-Party Plaintiffs BP Defendants demand entry of judgment in their favor and against Third-Party Defendants John and Jane Does nos. 1-500 for all sums that may be awarded in favor of plaintiffs and against BP Defendants, together with interest, costs, reasonable attorneys' fees, and such other relief as this Court deems just and proper.

Dated: November 15, 2013

Respectfully submitted,

_____
J. Andrew Langan, P.C.
Andrew A. Kassof, P.C.
Andrew R. Running
Sylvia Nichole Winston
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Phone: (312) 862-2000
Facsimile: (312) 862-2200

*Of Counsel*
Marsha L. Montgomery
Managing Attorney
BP America Inc.
501 Westlake Park Blvd.
Houston, TX 77079
Phone: (281) 366-2879
Facsimile: (281) 366-3491

Matthew T. Heartney
Lawrence A. Cox
ARNOLD & PORTER LLP
777 South Figueroa Street
Los Angeles, CA 90017
Phone: (213) 243-4150
Facsimile: (213) 243-4199

*Counsel for Atlantic Richfield Company, BP America, Inc., BP Products North America Inc., BP Corporation North America Inc., BP-Husky Refining, LLC, BP West Coast Products LLC, BP Amoco Chemical Company, and any other BP entity properly named and served*

47

## CERTIFICATE OF SERVICE

I, <u>Sylvia Winston</u>, an attorney, hereby certify that on this <u>15th</u> day of <u>November, 2013</u>, a copy of **THE BP DEFENDANTS SIXTH AMENDED MASTER ANSWER AND AFFIRMATIVE DEFENSES, AND MASTER CROSS-COMPLAINT AND THIRD-PARTY COMPLAINT** was electronically served by counsel of record by electronic filing via LexisNexis File & Serve for Plaintiffs and Defendants in MDL 1358 Master File C.A. No. 1:00-1898 (SAS).