**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————

| | |
|---|---|
| **IN RE  METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION** | **Master File No. 1:00–1898 MDL 1358 (SAS) M21-88** |

———————————————————

**This document relates to:**

*All Cases in MDL 1358 in which the CITGO entities have been properly named and served and for which an answer is due, including:*

*City of Manning v. Ashland Inc., et al.,* Case No. 13-cv-07272

*City of Portageville v. Ashland Inc., et al.,* Case No. 13-cv-07299

*Town of Hinesburg v. Atlantic Richfield Company, et al.,* Case No. 13-cv-07271

*Town of Brewster  v. Atlantic Richfield Company, et al.,* Case No. 13-cv-07247

———————————————————

**EIGHTH AMENDED MASTER ANSWER, AFFIRMATIVE AND SEPARATE DEFENSES, MASTER THIRD-PARTY COMPLAINT, AND MASTER CROSS-CLAIMS OF DEFENDANTS CITGO PETROLEUM CORPORATION, CITGO REFINING AND CHEMICALS COMPANY L.P. AND PDV MIDWEST REFINING, L.L.C.[1]**

Pursuant to the Stipulation re Master Answers dated November 16, 2005, Case

Management Order #6, and the Court's instructions, CITGO Petroleum Corporation

("CITGO"), CITGO Refining and Chemicals Company L.P. ("CRCC") and PDV

---

[1] In accordance with Paragraph 3 of the Stipulation and Order regarding Master Answers dated November 16, 2005, this Amended Master Answer is deemed to cover all new complaints filed since the date of the CITGO entities' previous Amended Master Answer notwithstanding that the caption of this Amended Master Answer may not indicate that it applies to all such cases.

Midwest Refining, L.L.C. ("PDVMR"), collectively referred to as "the CITGO entities,"[2]

amend their MDL 1358 Master Answer, and answer the complaints as follows:[3]

## EIGHTH AMENDED MASTER ANSWER

I.     ADMISSIONS AND STATEMENTS REGARDING COMMON
       ALLEGATIONS

       A.     Basic Defendant Information

              1.     CITGO is a Delaware corporation with its principal place of

business in Houston, Texas.

              2.     CRCC is a Delaware limited partnership with its principal place of

business in Corpus Christi, Texas.  CITGO is the general partner; CITGO Investment

Company, a wholly-owned subsidiary of CITGO, is the limited partner.

              3.     PDVMR is a Delaware limited liability company with its principal

place of business in Lemont, Illinois.  PDVMR is wholly-owned by VPHI Midwest, Inc.

("VPHI"), a Delaware corporation, whose parent corporation is CITGO Petroleum

Corporation.

---

[2] Not all of the CITGO entities have been named and served in each of the cases in MDL 1358.  This Amended Master Answer only applies to a CITGO entity to the extent that it has been properly named and served in a case.

[3] The CITGO entities have not filed motions to dismiss in cases filed after the Court's Order dated April 20, 2005, denying in part and granting in part defendants' motions to dismiss.  The CITGO entities expressly reserve the arguments that were rejected by the Court in its rulings on the motions to dismiss. CITGO requests that this Court enter an order deeming the motion to dismiss to have been filed in all subsequently filed cases.  *Compare* Manual for Complex Litigation § 11.32, at 43 (4th ed. 2004) ("The judge . . . should consider ordering that specified pleadings, motions, and other court orders (unless specifically disavowed by a party) are 'deemed' filed in cases later brought, transferred, or removed, without actually filing the documents (see Sample Order, section 40.42).").  The CITGO entities also request that the Court's order dated July 25, 2005 denying the Rule 1292(b) motion to certify the Court's April 20, 2005 order for interlocutory appeal be made applicable to subsequently filed cases as well.

**B.** **Sale or Distribution of Gasoline with MTBE or TBA to States in Question**

CITGO admits that it has sold gasoline for resale (for one or more time periods between 1983 and the present) in the following states: California, Connecticut, Florida, Illinois, Indiana, Iowa, Kansas, Louisiana, Massachusetts, Missouri, New Hampshire, New Jersey, New Mexico, New York, Pennsylvania, Vermont, Virginia, West Virginia, and Wisconsin. Some gasoline products sold in these states may have contained methyl tertiary butyl ether ("MTBE"); others did not. Neither CRCC nor PDVMR market or distribute gasoline products. Although CITGO did not manufacture tertiary butyl alcohol ("TBA"), gasoline that CITGO purchased on exchange may have contained TBA.

**C.** **Allegations Regarding Production of MTBE**

CITGO manufactured MTBE at certain times at its refinery located in Lake Charles, Louisiana. CRCC manufactured MTBE at certain times at its refinery in Corpus Christi, Texas. PDVMR did not manufacture MTBE at its refinery in Lemont, Illinois.

**D.** **Allegations Regarding Properties and Behavior of MTBE**

1. The CITGO entities admit that MTBE is an aliphatic ether that does not occur naturally. The CITGO entities state that there are various methods for the production of MTBE and that one method of production is from methanol and isobutylene.

2. The CITGO entities state that solubility and mobility are relative properties and that while MTBE and other ethers may be more soluble and mobile in water than certain gasoline components, such as the BTEX compounds, they are less

3

soluble and mobile in water than other components sometimes blended into gasoline, such as ethanol.  The CITGO entities further state that MTBE's behavior in the environment – and its behavior relative to BTEX – is dependent on a variety of factors, including the nature or method of its release, the geological setting, and environmental and microbial factors.

        3.      The CITGO entities state that while under certain conditions MTBE may biodegrade less readily than some other components of gasoline, MTBE has been found to naturally attenuate and biodegrade in numerous ways.

      **E.**      **Allegations Regarding Taste and Odor**

        The CITGO entities state that individuals vary in their ability to detect the taste and odor of MTBE in water.  Responsible federal and state regulatory agencies have considered and adopted standards fully protective of MTBE taste and odor concerns.

      **F.**      **Allegations Regarding Motivation of Defendants to Add MTBE to Gasoline**

        1.      The CITGO entities admit that MTBE was added to certain gasoline products in varying concentrations to comply with a variety of federal fuel requirements and/or to improve the octane rating of these products.  The CITGO entities deny that MTBE is a "waste byproduct" of the process of refining intermediate feedstocks into gasoline.

        2.      The CITGO entities admit that the 1990 Amendments to the Clean Air Act ("CAAA") mandated an increase in the use of oxygenates.  The CITGO entities admit that the federal government mandated the use of reformulated gasoline ("RFG") containing at least 2% oxygen by weight in certain areas of the country that were non-attainment for ozone.  The CITGO entities admit that Congress mandated an increase in

the use of oxygenates (at least 2.7% oxygen by weight) in certain metropolitan areas to reduce carbon monoxide emissions during fall and winter months ("the Oxy Fuel Program").  The CITGO entities admit that RFG and Oxy Fuel may contain between 10% and 15% MTBE by volume, or up to 10% ethanol, to meet federal government mandates concerning oxygen content.  The CITGO entities deny that they chose MTBE as a "cheap method" to comply with the CAAA.

   3. The CITGO entities deny the plaintiffs' allegations that MTBE does not have air quality benefits and further answering, state that several government agencies have concluded that MTBE has contributed substantially to reducing air pollution.

   **G.** **Allegations Regarding Health Effects of MTBE**

   The CITGO entities deny plaintiffs' allegations that MTBE poses a dire threat to human health.  MTBE has been studied publicly by scientists and government agencies for many years.  MTBE has never been reliably linked to cancer; indeed, major world health organizations have long refused to list MTBE as a human carcinogen.  The CITGO entities admit that EPA has in the past classified MTBE as a possible human carcinogen.  The CITGO entities state that responsible federal and state regulatory agencies have considered and adopted standards fully protective of any alleged human health concerns related to MTBE.

   **H.** **Allegations Regarding Storage and Handling of Gasoline**

   The CITGO entities admit that gasoline may be released into the environment from leaks in underground storage tanks ("USTs") and other means.  Further answering, the CITGO entities state that the general public has long been aware

that gasoline should be handled carefully and should not be spilled or leaked, irrespective of the particular components used to make it.  The CITGO entities deny that they are responsible for mishandling of gasoline by others, or spills or leaks caused by others. The CITGO entities deny plaintiffs' allegations that MTBE contamination of groundwater is widespread or that contamination of groundwater was inevitable and foreseeable.

I.    **Allegations Regarding Defendants' Purported Constructive Knowledge Regarding MTBE and Groundwater**

1.    The CITGO entities deny that they were aware that MTBE contamination of groundwater was inevitable as a result of MTBE's characteristics and the spill or loss of product during the distribution process.  Further answering, the CITGO entities state that at all times they have fully supported and encouraged the safe handling and storage of gasoline in compliance with all laws, rules and regulations pertaining to same, irrespective of the constituents used in gasoline at the time.

2.    The CITGO entities are without knowledge or information sufficient to form a belief as to the truth of the allegations of plaintiffs' complaints concerning the Ad Hoc MTBE Group or the American Petroleum Institutes' Toxicology Committee.  The CITGO entities deny plaintiffs' allegations that they had "early knowledge" of a need to conduct low level, long term ingestion studies of the effects of MTBE.  The CITGO entities are without knowledge or information sufficient to form a belief as to the truth of plaintiffs' allegations that no such studies were conducted by others.

3.    The CITGO entities deny plaintiffs' allegations that they were aware that MTBE posed a threat to groundwater.  The CITGO entities deny that they

concealed or conveyed partial or incorrect information regarding the nature and impacts of MTBE.  The CITGO entities deny that they breached any duties to plaintiffs, regulators or the general public regarding MTBE or TBA or gasoline containing MTBE or TBA.

> **J.      Allegations Regarding Knowledge of MTBE Contamination at Particular Locations in the 1980s**

The complaints purport to describe various incidents of MTBE contamination in Maryland, New Jersey, New York, and Maine in the 1980s.  The CITGO entities state that they were not involved in any of these incidents and that they are without knowledge or information sufficient to form a belief as to the truth of these allegations.  The CITGO entities deny knowing more about these events than was publicly reported.

> **K.      Allegations Regarding the 1986 Garrett and Moreau Report**

The CITGO entities state that the 1986 Garrett and Moreau paper speaks for itself, and the CITGO entities therefore deny the allegations that purport to describe or characterize it.  The allegations in the complaints relating to various companies' reactions to the Garrett and Moreau paper do not relate to the CITGO entities, and the CITGO entities are without knowledge or information sufficient to form a belief as to the truth of those allegations and on that basis deny them.

> **L.      Allegations Regarding Defendants' Internal Documents Concerning MTBE**

The CITGO entities are without knowledge or information sufficient to form a belief as to the truth of plaintiffs' allegations regarding certain communications or documents authored by employees of companies other than the CITGO entities, or the

Ground Water Technical Task Force.  The CITGO entities deny that any other companies acted on their behalf.

**M.** **Allegations Regarding Representations to the Plaintiffs, the EPA and the Public about MTBE**

1.     The CITGO entities deny that they formed or participated in any task force or committee for the purpose of concealing information from the plaintiffs, the EPA or the public concerning MTBE. CITGO admits that it was a member of American Petroleum Institute ("API") from January 1994 – December 2002.  CITGO was not a member of the Oxygenated Fuels Association ("OFA").  Neither CRCC nor PDVMR were members of API or OFA.

2.     The complaints contain various allegations regarding alleged industry misrepresentations about MTBE.  The CITGO entities deny that they made any misrepresentations about MTBE to the plaintiffs, the EPA or any other government agency, or the public, either directly or indirectly through an industry organization or trade group.  The CITGO entities deny that MTBE or TBA or gasoline containing MTBE or TBA are defective products.

**N.** **Allegations Regarding Representations to EPA About Testing Under the Toxic Substances Control Act (TSCA) in the Late 1980s**

1.     The 1986 Notice published by the federal Interagency Testing Committee ("ITC") speaks for itself and therefore the CITGO entities deny the allegations of plaintiffs' complaints that purport to describe or characterize the Notice.

2.     The CITGO entities are without knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations by or communications of ARCO to the ITC concerning MTBE.  The CITGO entities are without knowledge or information sufficient to form a belief as to the truth of the

allegations concerning the reliance of ITC on any representations or communications of ARCO.  The CITGO entities deny that ARCO's comments to the ITC were submitted on their behalf.

3.      The CITGO entities are without knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations by ARCO and Exxon to the EPA at the EPA's December 17, 1986 Public Focus Meeting. The CITGO entities deny that they assented to any representations made by ARCO and Exxon at the December 17, 1986 meeting.  The CITGO entities deny that they attempted to convince the EPA that additional testing of MTBE was not needed.

4.      Upon information and belief, CITGO denies that it was a member of the MTBE Committee.  PDVMR and CRCC also deny that they were members of the MTBE Committee.  The MTBE Committee documents that the complaints purport to describe or characterize speak for themselves, and on that basis the CITGO entities deny those allegations.

5.      The CITGO entities deny that they made any misrepresentations regarding MTBE testing to the ITC, the EPA during its Public Focus Meeting, or the EPA by way of MTBE Committee communications, directly or indirectly.  The CITGO entities deny that they obstructed health and environmental safety research concerning MTBE, or concealed information concerning MTBE and groundwater.  The CITGO entities deny that any industry group or any other defendant named in the MTBE lawsuits made any representations to the public or government officials on their behalf.

6.      The CITGO entities deny that they signed the January 21, 1988 "Testing Consent Order."

7.       The CITGO entities further deny that representations or communications of other defendants or industry trade associations are evidence of any improper act, omission or breach of any duty on the part of the CITGO entities.

**O.       Allegations Regarding Requirements and Effects of the 1990 Clean Air Act Amendments**

The CITGO entities admit that prior to 1990, Congress was preparing to take action to address the Nation's smog problem.  The CITGO entities state that although the CAAA did not mandate MTBE as the only oxygenate, in practical terms the CAAA did compel MTBE's use.  EPA and Congress knew that the oxygen requirements of the CAAA could not be met without MTBE's use.  The CITGO entities deny that they misled EPA or Congress during consideration and passage of the 1990 CAAA and implementing regulations.  The CITGO entities deny that ethanol was available in sufficient supply to meet the demand for oxygenated gasoline in the RFG and Oxy Fuel regions.  The CITGO entities deny plaintiffs' allegations that their use of MTBE as an oxygenate was solely based on cost considerations.  The CITGO entities deny that the other oxygenates authorized by the CAAA are "safer" or more "environmentally sound" than MTBE.  The CITGO entities further deny that they worked in concert to limit or block the use of ethanol as an alternative to MTBE as a permitted oxygenate.  CITGO was the leading ethanol gasoline supplier in the United States for a period of time, but it was forced to replace ethanol with MTBE in certain parts of the country due to tremendous obstacles it faced with ethanol.

P.      **Allegations Regarding Representations to Plaintiffs and the Public,
        Including Downstream Gasoline Handlers, About Gasoline With
        MTBE**

      1.      The CITGO entities deny that they "misrepresented the properties of MTBE" to plaintiffs or the public, or withheld information about MTBE.  The CITGO entities are without knowledge or information sufficient to form a belief as to the truth of the allegations concerning when the public "started to become aware of the dangers of MTBE."

      2.      The CITGO entities are without knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations made by George Dominguez in  April of 1987 to the Conference on Alcohols and Octane. Many of the complaints contain allegations concerning a letter purportedly authored by an API official in 1994 and a 1996 pamphlet published and distributed by the OFA. These documents speak for themselves, and the CITGO entities deny the allegations that purport to summarize and characterize these documents on that basis.

      3.      The CITGO entities deny that they have "judged" MTBE contamination "too costly to clean up."  The CITGO entities state that they lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning what alternatives Downstream Handlers and the general public would have sought or whether Downstream Handlers and the public would have demanded MTBE-free gasoline.

      4.      The CITGO entities deny that they breached any duty to warn or deprived plaintiffs or the public of any facts.

**Q.**     **Allegations Regarding Defendants' Use of MTBE in Gasoline After Creation of the RFG Program**

The CITGO entities lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning the production of MTBE nationally, and the use and concentrations of MTBE in gasoline by the oil industry after the creation of the RFG program.  With regard to the complaints' allegations that defendants sold gasoline "laced" with "elevated" or "high" concentrations of MTBE, the CITGO entities deny the implication that the use of or concentrations of MTBE in their gasoline products was illegal or improper.  Further answering, the CITGO entities state that their products fully comply with applicable state and federal requirements regarding fuel content.

**R.**     **Allegations Regarding Properties and Behavior of TBA**

1.     The CITGO entities admit that TBA is formed in the reaction of isobutylene and water.  The CITGO entities are without knowledge or information sufficient to form a belief as to the truth of the allegations in plaintiffs' complaints concerning the use of TBA as an oxygenate in gasoline.

2.     The CITGO entities state that solubility and mobility are relative properties and admit that TBA is more soluble and mobile in water than certain gasoline components, such as the BTEX compounds.  The CITGO entities further state that TBA's behavior in the environment – and its behavior relative to BTEX – is dependent on a variety of factors, including the nature or method of its release, the geological setting, and environmental and microbial factors.  The CITGO entities admit that TBA can be an intermediate product of MTBE biodegradation.

3.     The CITGO entities are without knowledge or information sufficient to form a belief as to the truth of the allegations in the complaints concerning

the properties, characteristics and persistence of TBA in groundwater, or its presence in water supplies.

4.      The CITGO entities deny plaintiffs' allegations that TBA poses a public health threat.

5.      The CITGO entities deny that they breached any duties to plaintiffs, regulators or the general public regarding TBA.

S.      **Allegations Pertaining to MTBE and Groundwater**

1.      The complaints contain a number of allegations regarding reports on the incidence of MTBE contamination of groundwater by the United States Geological Survey.  The CITGO entities are without knowledge or information sufficient to form a belief as to the truth of these allegations.

2.      The Report of the EPA Blue Ribbon Panel on MTBE speaks for itself, and therefore the CITGO entities deny the allegations of the complaints that purport to describe or characterize it.

3.      The CITGO entities admit that in 2001 EPA provided advance notice of its intent to initiate a rulemaking pursuant to the Toxic Substances Control Act ("TSCA") to eliminate or limit the use of MTBE as a fuel additive.  The CITGO entities admit that certain state legislatures or regulatory bodies have passed laws or adopted regulations to limit or eliminate the use of MTBE in gasoline.

T.      **Allegations Regarding Plaintiffs' Claimed Inability to Identify Relevant Sources of Gasoline Leaks or Spills Affecting a Given Site**

The CITGO entities admit that the distribution of petroleum products can sometimes be complex, and that refiners sometimes exchange product.  The CITGO entities deny that gasoline can never be traced from a contamination site to its terminal or

refinery source.  Further answering, the CITGO entities state that leaks of gasoline, whether containing MTBE or not, are almost always traceable to a specific source.  In the vast majority of leak incidents, a responsible party can be and is identified.

      **U.**      **Allegations Purporting to Quote or Summarize Documents**

      Numerous paragraphs in each complaint purport to quote from or summarize documents, statutes and regulations.  These written materials speak for themselves.  The documents, statutes and regulations referenced by plaintiffs, which are not attached to the complaints, are the best evidence of their content, and the CITGO entities therefore deny plaintiffs' attempts to summarize or characterize the contents of these written materials.

      **V.**      **Allegations Regarding Defendants Unrelated to the CITGO Entities**

      The CITGO entities are without knowledge or information sufficient to form a belief as to the truth of the matters averred in the complaints regarding the specific statements, acts or omissions of defendants unrelated to the CITGO entities.

      **W.**      **Allegations Regarding Particular Claims or Counts**

      In response to the portions of the complaints purporting to state particular common law or statutory claims, the CITGO entities incorporate each paragraph of this Eighth Amended Master Answer as if fully restated herein.  The CITGO entities deny they are liable for any legal claim in any MDL 1358 complaint.

      **X.**      **Allegations Regarding Claimed Injuries or Damages**

      1.      Some complaints make claims about contamination of specific wells or water resources, and others do not.  The CITGO entities are without knowledge or information sufficient to form a belief as to the truth of such allegations, and therefore deny same.  The CITGO entities believe that many of the wells or water resources at

14

issue have not been impacted by MTBE or TBA, or have been impacted only at levels well below State action standards for MTBE or TBA.

        2.      With regard to alleged damages, the allegations require no further answer. To the extent that further answer is deemed necessary, the CITGO entities admit that plaintiffs seek the relief mentioned in the complaints, but deny that plaintiffs are entitled to any relief.

        **Y.**      **Plaintiffs' Demands for Jury Trials**

        Plaintiffs in all actions have demanded a trial by jury of all claims asserted in the complaints. These jury demands require no answer. To the extent any answer is deemed necessary, the CITGO entities admit that the plaintiffs demand jury trials, but deny that they are entitled to them.

        **Z.**      **Plaintiffs' Allegations of Intentional, Willful, Deliberate, or Negligent Acts**

        The CITGO entities deny that they intentionally, willfully, deliberately, or negligently committed any acts that caused or foreseeably could have caused harm to plaintiffs or any other party.

        **AA.**      **Plaintiffs' Allegations of Representational Standing**

        Certain California plaintiffs have alleged a right to bring an action in a representative capacity. By orders dated June 9 and 22, 2005, the Court either struck all such allegations or confirmed that such allegations have been disavowed by the plaintiffs. On the basis of these Court orders, the CITGO entities decline to answer these allegations. To the extent any answer is deemed necessary, the CITGO entities deny that any plaintiff has standing to bring claims in a representational capacity.

**BB.**     <u>Certain Plaintiffs' Allegations of Ownership of the Groundwater Resources</u>

        To the extent that plaintiffs allege that they own or have the authority to protect groundwater, groundwater resources, water resources, water supplies, water rights, or drinking water wells, or any other right in and to water or groundwater, the CITGO entities deny these allegations and deny that these plaintiffs have standing to bring any claim based on allegations of property damage.

**CC.**     <u>Certain Plaintiffs' Allegations of Injury to Natural Resources</u>

        Certain plaintiffs' complaints contain allegations of damage to natural resources and seek compensation and other relief as the alleged trustee and/or owner of those natural resources. The CITGO entities admit that groundwater, surface waters, wetlands and other ecological resources exist within the states and Commonwealth at issue in MDL 1358 ("MDL states"); admit that some of those resources are privately owned and some are not; admit that some natural resources may and do provide commercial, industrial, recreational, and other services to the people of the MDL states and to the economies of the MDL states.

        The CITGO entities further admit that the police power of certain plaintiffs extends to the protection and conservation of certain natural resources which are not the private property of any person or entity; admit that by a longstanding legal fiction this proposition is sometimes inexactly expressed by saying that a State is the owner or trustee of natural resources for the benefit of its people or citizens; admit that certain governmental agencies have limited regulatory authority with respect to natural resources as provided by law. The CITGO entities deny that they are liable for natural resources damages.

### DD.    **Certain Plaintiffs' Allegations of Parens Patriae Status**

The CITGO entities deny that any plaintiff's assertion of alleged <u>parens patriae</u> status alleviates any common law burdens of proof or a plaintiff's need to meet required elements of common law and statutory claims.

### EE.    **Regulatory Powers of Other Agencies**

Certain California plaintiffs allege that they are entitled to assert claims to protect groundwater resources or the environment without regard to any impact on water supply wells owned or operated by them.  The CITGO entities deny that these plaintiffs possess any such right.  The CITGO entities further allege that, pursuant to statutes duly enacted by the California legislature, state agencies that are not parties to these lawsuits have been delegated the power and authority to (1) determine what maximum levels of contaminants, including MTBE and/or TBA, are permissible in potable water distributed in California and (2) manage activities to investigate, delineate, remediate and cleanup actual or suspected MTBE and/or TBA contamination, including determining when sufficient cleanup has been achieved.

## II.    **GENERAL DENIAL OF REMAINING ALLEGATIONS**

The CITGO entities deny each and every remaining allegation in the complaint identified in the caption above.

## III.    **RESERVATION OF RIGHT TO AMEND**

The CITGO entities reserve the right to further amend this Eighth Amended Master Answer.

## IV.    **AFFIRMATIVE AND SEPARATE DEFENSES APPLICABLE TO ALL CASES**

By stating these affirmative and separate defenses, the CITGO entities do not assume the burden of proving any facts, issues, or element of a cause of action that they

would not otherwise bear.  Furthermore, all such defenses are pled in the alternative and do not constitute an admission of liability or that plaintiffs are entitled to any relief whatsoever.  For their separate defenses to the complaint in the cases identified in the caption above, the CITGO entities state as follows:

1.      Plaintiffs' claims are barred in whole or in part by the doctrine of federal preemption.

2.      At all relevant times, the CITGO entities' actions and products complied with and were undertaken pursuant to applicable federal, state, and local laws, rules, regulations and specifications.

3.      Plaintiffs' claims are barred in whole or in part because federal, state and/or local authorities and agencies have mandated, directed, approved and/or ratified the alleged actions or omissions of the CITGO entities.

4.      All acts and conduct of the CITGO entities, as alleged in the complaints, conformed to and were pursuant to statutes, government regulations and industry standards, and were based upon the state of knowledge existing at all material times alleged in the complaints.

5.      The relief sought by plaintiffs' complaints is, in whole or in part, within the particular expertise of and is being addressed by federal and state governments, and their relevant agencies, and thus this Court should decline to exercise jurisdiction over this matter pursuant to the doctrine of primary jurisdiction.

6.      Plaintiffs' claims are barred in cases in which the TSCA claim is the only basis for federal jurisdiction because the TSCA claim is not asserted against the CITGO entities and supplemental subject matter jurisdiction does not exist.

7.      Plaintiffs have failed to exhaust their administrative remedies.

8.      Plaintiffs have a plain, common, adequate and speedy remedy at law.  The equitable causes of action alleged in the complaints are thus barred.

9.      Plaintiffs are barred from seeking liability for design defect as any attempt to reexamine the mandatory cost-benefit analysis delegated to and performed by the EPA pursuant to its obligations under the CAAA would be impermissible given that Congress, through Section 211 of the CAAA, authorized the EPA, and not the courts, to perform the cost-benefit analysis.

10.     If it is determined that plaintiffs, or anyone on whose behalf plaintiffs are allegedly suing, were injured, as alleged in the complaints, which the CITGO entities deny, such hardship is outweighed by the convenience and public service rendered by the CITGO entities' actions.

11.     Each purported cause of action asserted in the complaints is barred by the doctrine of primary assumption of risk in that the general public, by and through its elected representatives and their appointees, knew and understood the alleged risks of harm presented by the use of MTBE, if any, and elected nevertheless to proceed to require the use of gasoline oxygenates and to specifically authorize the use of MTBE as a gasoline oxygenate.

12.     To the extent that plaintiffs have received or may receive the requested relief from a governmental agency, the CITGO entities assert their entitlement to an appropriate set-off or reduction of any judgment against them.

13.     The appropriate forum for plaintiffs' claims is an administrative agency, and therefore all proceedings before this Court should be stayed pending

administrative resolution of the issues.

14.     The claims set forth in the complaints fail, in whole or in part, based on the doctrine of election of remedies.

15.     Each purported cause of action alleged in the complaints, as applied to the CITGO entities, is barred because the relief sought therein would pose unreasonable barriers and substantial burdens on interstate and/or international commerce in violation of the Commerce Clause of the United States Constitution and/or the North American Free Trade Agreement.

16.     The complaints fail to state a claim upon which relief may be granted and should, therefore, be dismissed pursuant Fed. R. Civ. P. 12(b)(6).

17.     Certain plaintiffs are public entities and/or authorities seeking compensation for damages to natural resources under their jurisdiction or purview.  These public entity/authority plaintiffs have improperly delegated the power to prosecute these cases to private attorneys on a contingent fee basis.  Such delegation is against public policy.

18.     Because plaintiffs have not suffered any cognizable harm and have not incurred any present damages, there is no current case or controversy and thus, plaintiffs' claims are not ripe for adjudication.

19.     Plaintiffs suffered no losses or injuries that were proximately caused by the CITGO entities.

20.     The CITGO entities' conduct was not the cause in fact of any injuries alleged by plaintiffs.

21.     Plaintiffs have failed to state a cause of action for nuisance because

they have neither alleged nor suffered any particularized injury.

22.     The alleged injuries and damages, if any, suffered as a result of conduct legally attributable to the CITGO entities is *de minimis* and therefore any injunction would pose a disproportionate hardship on the CITGO entities, as well as on the public, in comparison to the injury and or damages allegedly suffered by plaintiffs. Accordingly, plaintiffs are not entitled to injunctive relief as to the CITGO entities as a matter of law.  Further, such claims cannot give rise to liability under the *de minimis non curat lex* doctrine.

23.     Plaintiffs do not have a legally cognizable injury unless or until the alleged MTBE contamination exceeds state action levels.

24.     Plaintiffs may not seek attorneys' fees as an element of relief.

25.     Plaintiffs have failed to properly present any claim for attorneys' fees.

26.     Because plaintiffs have sued multiple parties, under multiple causes of action, with divisible damages, the claim for attorneys' fees must be apportioned between same.

27.     The claims set forth in the complaints are barred, in whole or in part, by the mootness doctrine.

28.     The complaints and each purported cause of action are barred, in whole or in part, by the doctrine of laches.  Plaintiffs' unreasonable and inexcusable delay in filing these actions caused substantial prejudice to the CITGO entities.

29.     The complaints fail to allege a conspiracy because plaintiffs have failed to allege sufficient facts demonstrating that the CITGO entities entered an unlawful

agreement with the other defendants to participate in a tortious act and/or that they took affirmative steps to achieve the result of any common plan to commit a tortious act.

30.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations.

31.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of repose.

32.     Plaintiffs are estopped by their conduct from asserting any of the purported claims alleged against the CITGO entities in the complaints.

33.     Plaintiffs have not investigated the cause of the alleged harm or attempted to identify the actual responsible party or parties.

34.     Plaintiffs cannot establish the required predicates for their theories of collective liability, and therefore their defendant-identification burden remains.  In the event that the defendant-identification burden were to be shifted in the future, the CITGO entities deny that they contributed to the contamination at issue.

35.     Plaintiffs' claims are barred in whole or in part by the doctrine of waiver.

36.     Plaintiffs assumed the risk of all acts, injuries, and damages that plaintiffs now assert against the CITGO entities.

37.     The CITGO entities are entitled to total or partial indemnity from those individuals or entities who are responsible for plaintiffs' injuries or damages, if any, in an amount in direct proportion to their relative culpability.

38.     Plaintiffs lack the capacity to sue.

39.     Plaintiffs lack standing to sue.

22

40.     Plaintiffs' claims are barred because the CITGO entities' conduct caused no physical impact to plaintiffs' property.

41.     The potential for harm to the environment when gasoline, including gasoline containing MTBE, is released into the environment is open and obvious and generally known.

42.     There is a defect or misjoinder of parties, in that plaintiffs have failed to join indispensable or necessary parties.

43.     Plaintiffs have failed to name the party or parties responsible for the alleged harm.

44.     The claims set forth in the complaints fail, in whole or in part, because of the failure to identify which defendant, if any, proximately caused the alleged harm.

45.     Plaintiffs' efforts to impose liability on the CITGO entities without proof of causation violate the Due Process and other clauses of the U.S. Constitution and state constitutions.

46.     Plaintiffs' claimed injuries were caused in whole or in part by others, whose actions were not controlled by or caused by the CITGO entities.  Such actions are the superseding, supervening and/or intervening cause of plaintiffs' injuries and therefore plaintiffs may not recover from the CITGO entities as a matter of law.

47.     Plaintiffs' claims must be dismissed because they have failed to identify the particular defendant that is responsible for the harms alleged by plaintiffs.

48.     At no time did the CITGO entities exercise control over the persons or entities responsible for actual or threatened releases of MTBE or TBA, or

gasoline containing MTBE or TBA, if any, alleged in the complaints.  At all times, the CITGO entities acted with due care with respect to any petroleum products used and took reasonable precautions against foreseeable acts or omissions of any such third parties and any foreseeable consequences.

49.     The CITGO entities did not own, control or release any of the petroleum products that are alleged to have caused or threatened contamination of plaintiffs' wells, nor did the CITGO entities own, operate or control the gasoline service stations or underground storage tanks from which releases are alleged to have occurred.

50.     Any gasoline products sold or distributed for resale by the CITGO entities were properly designed, formulated, prepared and otherwise not defective in any respect.

51.     The CITGO entities are not responsible for any releases into the environment that are attributable to the failure of third parties to comply with applicable federal, state and local requirements regulating the handling and storage of gasoline.

52.     To the extent required, the CITGO entities provided proper warnings, information, and instructions relating to their products pursuant to generally recognized and prevailing standards in existence at the time.

53.     Plaintiffs have failed to allege that the CITGO entities' alleged failure to provide an adequate warning proximately caused their injuries.

54.     There is no duty to warn against the release of gasoline, including gasoline containing MTBE, into the environment because it is common knowledge that gasoline (with or without MTBE) should not be released into the environment.

55.     Any gasoline product containing MTBE manufactured, sold, or distributed for resale by the CITGO entities was not unreasonably dangerous when made.

56.     The plaintiffs' claims against the CITGO entities are barred by the bulk supplier doctrine.

57.     The CITGO entities sold their products to knowledgeable and sophisticated purchasers, and any injury alleged by plaintiffs was caused by such purchasers' failure to observe known standards of care.

58.     Any injury, damage or loss sustained by the plaintiffs was proximately caused by and/or contributed to by their own negligence, carelessness, and/or omissions.

59.     Plaintiffs' claims are barred pursuant to the learned intermediary doctrine.

60.     If any damages or injuries alleged in the complaints occurred because of leaks in gasoline storage tanks and associated piping, the CITGO entities are not liable for those damages and/or injuries because the gasoline storage tanks and associated piping, when manufactured and distributed, conformed to the then current state of scientific and industrial knowledge, and the tanks and associated piping were used for their intended purpose.  Further, the CITGO entities are not liable for any quality issues befalling the gasoline storage tanks and associated piping of third parties.

61.     Plaintiffs' public nuisance claims should be dismissed because there were no acts or omissions by or on behalf of any of the defendants constituting an intentional, unreasonable interference with the plaintiffs' interest in the use and enjoyment of their property, or that constituted statutory or regulatory violations that

could support a claim for public nuisance.

62.     Plaintiffs' public nuisance claims must be dismissed because plaintiffs have failed to allege "special damages," an absolute prerequisite to the assertion of a public nuisance claim.

63.     Plaintiffs' private nuisance claims must be dismissed because plaintiffs cannot establish that the alleged interference was substantial or unreasonable, or that it resulted from conduct that was intentional, negligent, reckless or ultrahazardous.

64.     Plaintiffs' trespass claims should be dismissed because plaintiffs cannot establish that they have ownership rights to or are in possession of the property at issue, that the CITGO entities entered the property illegally or wrongfully, or that the CITGO entities committed any affirmative voluntary act constituting trespass relative to the property.

65.     The CITGO entities owed no duty of care to plaintiffs in connection with the matter alleged in the complaints.

66.     The complaints fail to plead the elements of negligence claims with sufficient clarity, specificity, and particularity.

67.     Plaintiffs' claims are barred to the extent the conduct complained of is protected by the First Amendment to the United States Constitution.

68.     The complaints and each cause of action are barred based on the valid exercise of the right of petition to the federal government, state government(s), and/or their respective deliberative bodies and agencies.

69.     Plaintiffs' claims are barred, in whole or in part, based on plaintiffs' actual or constructive notice of reported spills or releases, if any, from publicly

available records.

70.     There is no legal relationship upon which any duty could possibly be owed by the CITGO entities to plaintiffs, and therefore, plaintiffs' causes of action fail as a matter of law.

71.     The injuries and damages, if any, alleged by plaintiffs are caused in whole or in part by the presence of compounds other than MTBE (e.g., the BTEX compounds).  Under plaintiffs' own legal theories, the CITGO entities are not liable for damages caused by compounds other than MTBE.  In the event liability is assessed against the CITGO entities, such liability must be reduced where, and to the extent that, other compounds – about which plaintiffs do not complain – contributed to the alleged injury.

72.     Plaintiffs' claims should be dismissed for failure to join all possible tortfeasors.

73.     The CITGO entities are  not liable for contamination where chemical compounds other than MTBE exceed state actions levels or standards and require cleanup,  regardless of the presence of MTBE (particularly, but not exclusively, where MTBE is present below state action levels or standards).

74.     Any injury, damage or loss sustained by the plaintiffs in connection with the subject matter of this action was not reasonably foreseeable.

75.     If it is determined that plaintiffs, or anyone on whose behalf plaintiffs are allegedly suing, were injured, as alleged in the complaints, which the CITGO entities expressly deny, any award of damages shall be reduced in proportion to the percentage of fault attributable to the plaintiffs.

76.     If it is determined that plaintiffs, or anyone on whose behalf plaintiffs are allegedly suing, were injured, as alleged in the complaints, which the CITGO entities expressly deny, any award of damages shall be reduced in proportion to the percentage of fault attributable to third parties (including but not limited to persons or entities responsible for gasoline leaks or spills).

77.     The injuries alleged in the complaints, if any, may be reasonably apportioned among the defendants, as each defendant's alleged acts and omissions, including the CITGO entities', is divisible and distinct.  Therefore, no defendant is jointly and severally liable to plaintiffs for any claim alleged in the complaints.

78.     Plaintiffs have unreasonably failed to mitigate their damages, if any.

79.     To the extent that any party has settled or may settle in the future with plaintiffs, or that any person or entity has actually paid for any of the injuries, costs, damages and expenses alleged by plaintiffs, the CITGO entities assert their entitlement to an appropriate credit or reduction of any judgment(s) against them.

80.     Plaintiffs' claims for punitive damages violate the provisions of the U.S. and State Constitutions, including but not limited to the Commerce Clause and principles of federalism as well as those provisions requiring due process of law and prohibiting excessive fines.

81.     Plaintiffs' claims for punitive damages must fail because the CITGO entities did not engage in any conduct that was reckless, willful, wanton, malicious, outrageous or that otherwise could support such a claim.

82.     Plaintiffs' claims under TSCA cannot be sustained because the

claims are based upon wholly past instances of conduct rather than ongoing violations.

83.     Plaintiffs cannot state a cause of action under TSCA because, at all relevant times, the CITGO entities complied with, satisfied, and discharged any and all obligations under TSCA.

84.     The CITGO entities have never had any information in their possession, custody or control which shows that MTBE actually poses a substantial risk of injury to health or the environment such as to necessitate a report to the EPA Administrator under TSCA.

85.     Plaintiffs' claims under TSCA are barred, in whole or in part, because the Advance Notice of Intent to Initiate Rulemaking under the Toxic Substances Control Act to Eliminate or Limit the Use of MTBE as a Fuel Additive in Gasoline, which was published by the U.S. EPA in the Federal Register on March 24, 2000, did not require or otherwise obligate the CITGO entities to report to the EPA Administrator any information concerning MTBE.

86.     Plaintiffs' claims under TSCA are barred to the extent that Plaintiffs seek to impose civil fines or penalties upon the CITGO entities or recover monetary damages from the CITGO entities for alleged violations of TSCA.

87.     Plaintiffs' claims under TSCA cannot be sustained because Plaintiffs' notice(s) to the CITGO entities and the EPA Administrator of the alleged violations of TSCA under 15 U.S.C. §2619 and/or 40 C.F.R. §§ 702.60-702.62 is deficient and inadequate.

88.     Plaintiffs, as non-injured parties, lack sufficient standing to assert any claims under TSCA against the CITGO entities.

89.     Plaintiffs' claims under TSCA are barred because Plaintiffs have failed to comply with the statutory requirements or jurisdictional prerequisites for asserting a claim under TSCA.

90.     The information plaintiffs claim that the CITGO entities should have disclosed under TSCA is not reportable under the TSCA statute or under EPA's guidance interpreting TSCA.

91.     Plaintiffs cannot demonstrate that EPA was unaware of information plaintiffs allege should have been disclosed under TSCA when plaintiffs' TSCA claim was brought.

92.     The damages sought by plaintiffs are wholly speculative and conjectural.

93.     Plaintiffs' claims are barred by reason of the fact that all actions of the CITGO entities were performed in keeping with the state of the art, all technology utilized by the CITGO entities was state of the art, and/or the product at issue in this case was state of the art.

94.     Plaintiffs' claims for natural resource damages are barred, in whole or in part, because plaintiffs do not own or have a trusteeship interest in the property and/or natural resources allegedly impacted.

95.     Plaintiffs have not incurred "clean-up and removal" costs or "response costs" as those terms are defined in the applicable statutes.

96.     The CITGO entities incorporate by reference any affirmative defense, whether general or specific to a specific State or Territory, alleged by other defendants in MDL 1358.

97.     The pleading of the defenses described above shall not be construed as an undertaking by the CITGO entities of any burden which would otherwise be the responsibility of plaintiffs.

## V.     AFFIRMATIVE AND SEPARATE DEFENSES APPLICABLE TO PARTICULAR STATES AND TERRITORIES

By stating these affirmative and separate defenses, the CITGO entities do not assume the burden of proving any facts, issues, or element of a cause of action that they would not otherwise bear.  Furthermore, all such defenses are pled in the alternative and do not constitute an admission of liability or that plaintiffs are entitled to any relief whatsoever.  For their separate defenses to the complaint in the cases identified in the caption above, the CITGO entities state as follows:

## CALIFORNIA

1.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, California Code of Civil Procedure §§ 337, 337.1, 337.2, 337.15, 338, 340, 340.8 and 343.

2.     California Civil Code §§ 1431.1 through 1431.5, commonly known as "Proposition 51," provide that the liability of each defendant for non-economic damages, if any, shall be several only and shall not be joint, and the CITGO entities therefore assert that each defendant may be held liable only for the amount of non-economic damages, if any, allocated to that defendant in direct proportion to its percentage of fault, if any.

3.     The CITGO entities allege that their liability, if any, for non-economic loss be pro-rated according to the provisions of California Civil Code § 1431.2.

31

4.      The complaints and each purported cause of action are barred because plaintiffs and/or their predecessors-in-interest and assignors are guilty of unclean hands due to, among other things, taking actions that have increased and/or prolonged the contamination, if any, of the aquifer with MTBE and/or other contaminants.

5.      Plaintiffs' claims fail, in whole or in part, based on the doctrine of unjust enrichment.

6.      As to each cause of action in the complaints, the CITGO entities allege that the release of MTBE and/or hazardous substances, if any, and the damages resulting therefrom, if any, were caused by an act of God.

7.      The complaints and each purported cause of action are barred because they are ambiguous and uncertain.

8.      Plaintiffs did not reasonably rely on any representation, disclaimer, warning, or other act or omission of the CITGO entities.

9.      The CITGO entities had no duty to warn plaintiff or third-parties about the potential dangers, if any, of the product or products manufactured, packaged, labeled, used, applied and/or removed by said third parties.

10.     The CITGO entities had no duty to warn because the risks of injury and damages inherent in utilizing the products described in the complaints, if any, were open, obvious or known.

11.     Any express or implied warranties alleged by plaintiffs to have been made by the CITGO entities, if made at all, were expressly disclaimed and excluded by product labels, pursuant to the laws of the State of California, which provided that the CITGO entities made no warranties, express or implied, concerning the products or the

use of said products that extended beyond the description on the label, and that all statements made concerning said products applied only when used as directed.

12.     Plaintiffs are sophisticated water purveyors or managers and were, at all relevant times, fully aware of the nature and risks of injury and damages described in the complaints that could arise in the operations or management of a public drinking water supply system.

13.     If there was a less dangerous alternate design, without admitting that there was and without assuming the burden of proof on this issue, the CITGO entities did not and could not have known of such an alternate design at the time.

14.     If there was a less dangerous alternate design, without admitting that there was and without assuming the burden of proof on this issue, such an alternate design was not feasible at the time.

15.     Plaintiff and/or others modified, altered, or changed the CITGO entities products or materials referred to in the complaints, if any, so that such changes in any said products or materials proximately caused plaintiffs' injuries, loss and damages, if any.

16.     If the CITGO entities provided the products alleged to have been defective, and without admitting that it did so or that any product was defective and without assuming the burden of proof on these issues, the products were misused or abused by others without the knowledge or consent of the CITGO entities and in a manner not reasonably foreseeable by the CITGO entities prior to their receipt of notice of the circumstances described in the complaints.  Such misuse or abuse was the sole cause of or a contributing cause to the injuries, losses, and/or damages, if any, suffered by

plaintiffs as alleged in the Complaint, and by reason thereof, plaintiffs are barred from

recovering some or all of any damages suffered

17.     The CITGO entities are not liable for any alleged wrongful entry

upon land because plaintiffs and/or plaintiffs' predecessors in interest or assignors

expressly or impliedly consented to or had knowledge of all such activities or conditions.

18.     The CITGO entities allege that to the extent plaintiffs are claiming

damages for the cost of remediation due to plaintiffs' alleged compliance with primary or

secondary drinking water standard or other regulations enacted by the State of California

or any other governmental body, those claims are unconstitutional because they constitute

an ex post facto application of a regulation disallowed by Art. 1, sec. 9 of the U.S.

Constitution.

19.     The complaints and each purported cause of action are barred, in

whole or in part, by federal and state law, including but not limited to, the Supremacy

Clause of the United States Constitution, U.S. Const. art. VI, cl. 2; the Clean Air Act, 42

U.S.C. § 7401, et seq.; the Toxic Substances Control Act, 15 U.S.C. § 2601, et seq; and

rules, regulations, and decisions thereunder.

20.     The CITGO entities allege that the maximum contaminant level or

other drinking water standard, to the extent they form the bases of plaintiffs' claims

against the CITGO entities, were arbitrarily and unreasonably enacted without due

process and, therefore, cannot be enforced against the CITGO entities.

21.     The complaints and each purported cause of action are barred

because plaintiffs do not own or have abandoned, lost, waived, given up, or otherwise

failed to perfect any rights, including but not limited to use rights related to any water

that is the subject of the complaints.  Plaintiffs' claims are also barred because under California law, the water that is the subject of the complaints is the property of the State of California, not of plaintiffs.

22.     The complaints and each purported cause of action are barred to the extent that such claims have been satisfied by payments or provision of alternate water supplies by defendants or third-parties.

23.     The complaints and each purported cause of action are barred to the extent that plaintiffs have assigned rights and claims for certain damages and other relief, if any, to the CITGO entities, other defendants or third-parties.

24.     If plaintiffs sustained any injury under the circumstances alleged in the complaints or in any other respect, their recovery against the CITGO entities, if any, is barred because the alleged conduct and conditions resulted from a necessity.

25.     Plaintiffs' claims for trespass are barred because the CITGO entities are immune to liability for plaintiffs' damages, if any, caused by earth movement.

26.     Plaintiffs' claims are barred, in whole or in part, as the result of their own knowing or negligent conduct that caused or contributed to MTBE and/or TBA contamination giving rise to these claims.

27.     The complaints and each purported cause of action are barred because plaintiffs do not own or have abandoned, lost, waived, given up, or otherwise failed to perfect any rights, including but to limited to use rights related to any water that is the subject of the complaints.  Plaintiffs' claims are also barred because under California law, the water that is the subject of the complaints is the property of the State of California, not of plaintiffs.

**CONNECTICUT**

       1.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, Conn. Gen. Stat. Ann. §§ 52-577, 52-777a.

       2.     Plaintiffs' product liability claims are barred because the plaintiffs' alleged harm is outside the scope of allowable product liability claims pursuant to Connecticut's Product Liability Act, as set forth in Conn. Gen. Stat. Ann. §§ 52-572m and 52-572n.

       3.     Plaintiffs' failure to warn claims are barred in whole or in part because the alleged failure to provide adequate warnings for which plaintiffs seek redress does not give rise to liability within the ambit of the Connecticut Product Liability Act, as the plaintiffs' injuries did not arise by reason of any alleged violation of adequate warnings or instructions pursuant to Conn. Gen. Stat. Ann. § 52-572q.

**FLORIDA**

       1.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, Fla. Stat. Ann. § 95.11.

       2.     Plaintiffs' strict liability claims are barred in whole or in part by the Government Rules Defense as set forth in Fla. Stat. Ann. § 768.1256.

       3.     Plaintiffs' strict liability claims are barred in whole or in part by the State-of-the-Art Defense for products liability as set forth in Fla. Stat. Ann. § 768.1257.

       4.     Plaintiffs' strict liability claims fail, in whole or in part, because

Florida law only permits such claims when a product is used as intended.

5.      Plaintiffs' claims are barred, in whole or in part, by Fla. Stat. Ann. § 376.308(5), if they relate to any discharge or contamination eligible for restoration funding from the Inland Protection Trust Fund.

6.      Recovery is barred or must be reduced, in whole or in part, based on the doctrine of comparative negligence.

7.      Plaintiffs' claims fail, in whole or in part, based on the doctrine of *in pari delicto*.

8.      Plaintiffs' claims fail, in whole or in part, based on the doctrine of unjust enrichment.

## ILLINOIS

1.      The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, 735 Ill. Comp. Stat. Ann. 5/13-205.

2.      Plaintiffs' recovery is barred, in whole or in part, due to their contributory fault, pursuant to 735 Ill. Comp. Stat. Ann. 5/2-1116.

## INDIANA

1.      The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, Ind. Code. Ann. § 34-20-3-1.

2.      Plaintiffs' product liability design defect claims are barred, in whole or in part, because no alleged act or omission by the CITGO entities gave rise to design defect liability pursuant to Indiana's Product Liability Act, as set forth in Ind.

Code. Ann. § 34-20-2-1.

3.     Plaintiffs' product liability claims fail because the CITGO entities had no duty to warn plaintiffs, as plaintiffs knew or should have known of the alleged danger.  Ind. Code. Ann. §§ 34-20-6-1, 34-20-6-3.

4.     Plaintiffs' product liability claims fail because the CITGO entities manufactured their products in conformity with generally recognized state of the art.  Ind. Code. Ann. §§ 34-20-5-1, 34-20-6-1.

5.     Any duty to warn, if one existed at all, was discharged pursuant to Ind. Code. Ann. §§ 34-20-6-1 and 34-20-6-3 because the alleged defects, if any, were open and obvious to plaintiffs.

6.     Plaintiffs voluntarily and unreasonably assumed the risk of injury, thereby relieving the CITGO entities of liability.  Ind. Code. Ann. §§ 34-20-6-1 and 34-20-6-3.

7.     Any alleged design defect was not the proximate cause of the plaintiffs' injuries or harm.

8.     Plaintiffs' alleged injuries, if any, resulted from the misuse of the product by the plaintiffs or other persons, and such misuse was not reasonably expected by the CITGO entities at the time that they sold or otherwise conveyed the product to the other party.  Ind. Code. Ann. § 34-20-6-4.

9.     Plaintiffs' claims for public nuisance should be dismissed because at no time did any act or omission attributable to the CITGO entities or their products interfere with the plaintiffs' comfortable enjoyment of life or property.  Ind. Code. Ann. § 32-30-6-6.

38

10.     Plaintiffs have failed to state a cause of action for public nuisance because the CITGO entities' alleged conduct is not unreasonable upon comparison of their alleged conduct with plaintiffs' competing interests.  Ind. Code. Ann. § 32-30-6-6.

11.     Plaintiffs' recovery is barred by their contributory fault, which is greater than the fault of all persons whose fault may have proximately contributed to plaintiffs' damages.  Ind. Code. Ann. § 34-51-2-6.

## IOWA

1.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations and repose, including but not limited to, Iowa Code Ann. §§ 614.1(2), 614.1(2A), and 614.1(4).

2.     Plaintiffs' recovery is barred by their contributory fault, which is greater than the fault of all persons whose fault may have proximately contributed to plaintiffs' damages.  Iowa Code Ann. § 668.3.

3.     Recovery is barred or must be reduced, in whole or in part, based on the doctrine of comparative negligence.

4.     The CITGO entities are not jointly and severally liable because they bear less than fifty percent of the total fault of all parties.  Iowa Code Ann. § 668.4.

5.     Plaintiffs assumed the risk of any alleged injury.

6.     The CITGO entities' products "conformed to the state of the art in existence at the time."  Iowa Code Ann. § 668.12(1).

7.     The CITGO entities cannot be liable for failure to warn because the alleged "risks and risk-avoidance measures…should be obvious to, or generally known by, foreseeable product users."  Iowa Code Ann. § 668.12(3).

8.      The CITGO entities cannot be liable because "a product bearing or accompanied by a reasonable and visible warning or instruction that is reasonably safe for use if the warning or instruction is followed shall not be deemed defective or unreasonably dangerous on the basis of failure to warn or instruct."  Iowa Code Ann. § 668.12(4).

9.      Plaintiffs' recovery is barred by the intermediary defense.

10.      The claims against PDVMR, which has not been served, should be dismissed for insufficient service of process.

**<u>KANSAS</u>**

1.      The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations and statutes of repose, including but not limited to, Kan. Stat. Ann. §§ 60-513, 60-3303.

2.      Plaintiffs' recovery is barred by their contributory fault, which is greater than the fault of all persons whose fault may have proximately contributed to plaintiffs' damages.  Kan. Stat. Ann. § 60-258a.

3.      Recovery is barred or must be reduced, in whole or in part, based on the doctrine of comparative negligence.

4.      Recovery is barred because the CITGO entities' products were, "at the time of manufacture, in compliance with legislative regulatory standards or administrative regulatory safety standards relating to design or performance…."  Kan. Stat. Ann. § 60-3304.

5.      The CITGO entities are not liable because they had no duty to warn, protect against or instruct "with regard to those safeguards, precautions and actions

which a reasonable user or consumer of the product, with the training, experience, education and any special knowledge the user or consumer did, should or was required to possess, could and should have taken for such user or consumer or others, under all the facts and circumstances." Kan. Stat. Ann. § 60-3305(a).

6.     The CITGO entities are not liable because they had no duty to warn "where the safeguards, precautions and actions would or should have been taken by a reasonable user or consumer of the product similarly situated exercising reasonable care, caution and procedure." Kan. Stat. Ann. § 60-3305(b).

7.     The CITGO entities are not liable because they had no duty to warn, protect against or instruct "with regard to dangers, hazards or risks which are patent, open or obvious and which should have been realized by a reasonable user or consumer of the product." Kan. Stat. Ann. § 60-3305(c).

## LOUISIANA

1.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to La. Civ. Code Ann. art. 3492.

2.     The CITGO entities are not liable because "[t]he product is not dangerous to an extent beyond that which would be contemplated by the ordinary user or handler of the product, with the ordinary knowledge common to the community as to the product's characteristics." La. Rev. Stat. Ann. § 9:2800.57.

3.     The CITGO entities are not liable because "[t]he user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic." La. Rev.

41

Stat. Ann. § 9:2800.57.

4.      The CITGO entities are not liable because they "did not know and, in light of then-existing reasonably available scientific and technological knowledge, could not have known of the design characteristic that caused the damage or the danger of such characteristic."  La. Rev. Stat. Ann. § 9:2800.59(1).

5.      The CITGO entities are not liable because they "did not know and, in light of then-existing reasonably available scientific and technological knowledge, could not have known of the alternative design identified by the claimant under R.S. 9:2800.56(1)."  La. Rev. Stat. Ann. § 9:2800.59(2).

6.      The CITGO entities are not liable because "[t]he alternative design identified by the claimant under R.S. 9:2800.56(1) was not feasible, in light of then-existing reasonably available scientific and technological knowledge or then-existing economic practicality."  La. Rev. Stat. Ann. § 9:2800.59(3).

7.      Punitive damages are not authorized by the Louisiana Products Liability Act.  La. Rev. Stat. Ann. § 9:2800.53(5).

8.      Attorneys' fees are not recoverable under the Louisiana Products Liability Act.  La. Rev. Stat. Ann. § 9:2800.53(5).

## MASSACHUSETTS

1.      The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to Mass. Gen. Laws Ann. Ch. 260, § 2A; Ch. 106, § 2-318; and Ch. 21E, § 11A(4).

2.      Plaintiffs' claims are barred because their negligence is greater than the alleged negligence of the CITGO entities.  Mass. Gen. Laws Ch. 231, § 85.

3.      Plaintiffs' damages, if any, must be reduced in proportion to the percentage of negligence attributable to their own conduct.  Mass. Gen. Laws Ch. 231, § 85.

4.      Plaintiffs are not entitled to injunctive relief because they failed to provide written notice to the Massachusetts Attorney General and the CITGO entities as required by statute.  Mass. Gen. Laws Ann. Ch. 214, § 7A.

5.      Plaintiffs' claim for multiple damages pursuant to Mass. Gen. Laws Ann. Ch. 40, § 39G fails because CITGO did not willfully, wantonly or otherwise corrupt, pollute or divert water or injure property owned or used by the plaintiffs pursuant to Mass. Gen. Laws Ch. 40, § 39A-E.

6.      Plaintiffs' warranty claims fail under Massachusetts law because plaintiffs cannot establish that the CITGO entities reasonably could have expected the plaintiff to be affected by their products pursuant to Mass. Gen. Laws Ann. Ch. 106, § 2-318.

7.      Plaintiffs' claims are barred under Mass. Gen. Laws Ann. Ch. 21E because the CITGO entities did not cause or contribute to the release or threat of release of hazardous materials at or from plaintiffs' property.

8.      Plaintiffs' claims are barred under Mass. Gen. Laws Ann. Ch. 21E because the CITGO entities are not "person[s] liable" as defined under Mass. Gen. Laws Ann. Ch. 21E, § 5.

9.      Plaintiffs' claims under Mass. Gen. Laws Ann. Ch. 21E, § 5(a)(3) and (4) are barred because they do not apply to releases or threats of release of oil.

10.      To the extent plaintiffs' complaint is interpreted to seek recovery

43

of past or future costs of necessary and appropriate response actions regarding the release or threat of release of oil or hazardous material, the plaintiffs' claims fail under Mass. Gen. Laws Ann. Ch. 21E because plaintiffs did not comply with the requirements for investigation and remediation under the MCP, 310 CMR 40.000 et seq.

11.     If the CITGO entities are liable for any costs or damages pursuant to Mass. Gen. Laws Ann. Ch. 21E, which the CITGO entities deny, then the CITGO entities are liable only for a portion of such costs and damages and others are liable for the remainder.  Mass. Gen. Laws Ch. 21E, § 5(b).

12.     Plaintiffs' claims fail because any alleged costs or damages were caused solely by acts or omissions of a third party who was not an employee or agent of, or otherwise in a direct or indirect contractual relationship with, the CITGO entities.  The CITGO entities have exercised due care and taken all reasonable precautions against such acts or omissions of any such third party and consequences that reasonably could result from such acts or omissions.   Mass. Gen. Laws Ann. Ch. 21E, § 5(c)(3).

13.     Plaintiffs' claims under Mass. Gen. Laws Ann. Ch. 21E fail to the extent that any alleged release or threatened release does not represent a long or short term danger to the public health, safety, welfare or the environment.   Mass. Gen. Laws Ann. Ch. 21E, § 5(c)(4).

14.     Plaintiffs failed to follow the procedures required under Mass. Gen. Laws Ann. Ch. 21E, § 4A, which are a prerequisite to filing suit.

15.     To the extent plaintiffs' complaint is interpreted to seek recovery of past or future costs of necessary and appropriate response actions regarding the release or threat of release of oil or hazardous material, the plaintiffs' claims under Mass. Gen.

Laws Ch. 21E are barred to the extent that plaintiffs incurred costs that were neither necessary nor appropriate.

   16. The Court lacks personal jurisdiction over PDVMR.

## MISSOURI

   1. The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to  Mo. Ann. Stat. §§ 516.100, 516.120 and 516.010 (West).

   2. Plaintiffs' recovery is barred or must be reduced, in whole or in part, based on the doctrine of comparative fault.  Mo. Ann. Stat. § 537.765 (West).

   3. Any duty to warn, if one existed at all, was discharged pursuant to Mo. Ann. Stat. § 537.760 (West), because the alleged defects, if any, were open and obvious to plaintiffs.

   4. Plaintiffs' product liability claims fail because the CITGO entities had no duty to warn plaintiffs, as plaintiffs knew or should have known of the alleged danger.  Mo. Ann. Stat. § 537.760 (West).

   5. Plaintiffs' product liability claims fail because the CITGO entities' products were in conformity with generally recognized state of the art.  Mo. Ann. Stat. §§ 537.764 and 537.760  (West).

   6. Plaintiffs' product liability claims fail because the CITGO entities' products, at the time they were sold, were not in a defective condition or unreasonably dangerous when put to a reasonably anticipated use.  Mo. Ann. Stat. § 537.760 (West).

   7. Any alleged defective condition of the CITGO entities' products at the time they were sold was not the proximate cause of plaintiffs' injuries or harm.  Mo.

Ann. Stat. § 537.760 (West).

8.      Plaintiffs' alleged injuries, if any, resulted from use of the product that was not reasonably anticipated by the CITGO entities at the time that they sold or otherwise conveyed the product.  Mo. Ann. Stat. § 537.760 (West).

9.      Plaintiffs' recovery of punitive damages arising out of their alleged injury is limited under Mo. Ann. Stat. §§ 510.265 and 537.067 (West).

10.     The CITGO entities are not jointly and severally liable because they bear less than fifty-one percent of the fault.  Mo. Ann. Stat. § 537.067 (West).

**NEW HAMPSHIRE**

1.      The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to N.H. Rev. Stat. Ann. § 507-D:2.

2.      Plaintiffs' product liability claims are barred in whole or in part by the State-of-the-Art Defense.  N.H. Rev. Stat. Ann. § 507:8-g.

3.      The CITGO entities' conduct did not meet the minimum requirements of culpability with respect to each material element of the alleged offenses of civil conspiracy, public nuisance, and negligence, according to the applicable provision of N.H. Rev. Stat. Ann. § 626:2, and therefore, plaintiffs' claims on these counts should be dismissed.

**<u>NEW JERSEY</u>**

1.      The complaint and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, N.J. Stat. Ann. § 2A:14-2.

2.      The CITGO entities' conduct did not meet the minimum requirements of culpability with respect to each material element of the alleged offenses of civil conspiracy, public nuisance, and negligence, according to the applicable provision of N.J. Stat. Ann. § 2C:2-2, and, therefore, plaintiffs' claims on these counts should be dismissed.

3.      Plaintiffs' claims are barred by the doctrine of primary jurisdiction in that the New Jersey Department of Environmental Protection ("NJDEP") is responsible for directing and allocating responsibility for investigation and remediation of the environmental condition alleged in the Complaint.

4.      Plaintiffs' claims are barred in that the CITGO entities have complied with, and satisfied, all applicable laws, regulations, rules, orders, directives and/or other requirements of the NJDEP and/or other state or federal agencies regarding the environmental condition alleged in the Complaint.

5.      Plaintiffs were contributorily and comparatively negligent and therefore their claims are barred or diminished by such negligence under the Comparative Negligence Act and common law.

6.      Plaintiffs' claims are frivolous.  The CITGO entities reserve the right to move at any time for attorneys' fees and costs in accordance with the New Jersey Frivolous Claims Statute, or pursuant to R. 1:4-8.

7.      Plaintiffs' method of assessing natural resource damages was not adopted in a manner consistent with the Administrative Procedures Act, N.J. Stat. Ann. § 52:14B-2(e).

8.      Plaintiffs' claims are barred, in whole or in part, by the statutory defenses to liability provided by the Spill Act.

9.      Plaintiffs' claims under the Spill Act are not ripe, since clean up and remediation have not been completed.

10.     Plaintiffs' claims under the Spill Act are barred, in whole or in part, because the claims asserted are preempted by federal law, including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq.

11.     Any injury or damages suffered by plaintiffs have been increased by plaintiffs' failure to mitigate their damages, in that (1) the policies and activities of the State of New Jersey and its agencies during the period of time for which plaintiffs seek damages have caused damage to natural resources greater than that which would otherwise have occurred; and (2) the State and its agencies have failed to take reasonable measures available to them to reduce damages.

12.     Plaintiffs' claims under the Spill Act are barred to the extent plaintiffs seek relief for conduct occurring or damages incurred prior to the effective date of the Spill Act.

13.     Plaintiffs have failed to join parties needed for the just adjudication of the plaintiffs' claims, in whose absence complete relief cannot be afforded the existing parties pursuant to N.J.Ct.R. 4:28-1.

14.     Plaintiffs' claims are barred, in whole or in part, by plaintiffs' failure to comply with the prerequisites to liability under the Spill Act, including without limitation plaintiffs' incurring of costs not authorized by the Spill Act and plaintiffs' failure to direct clean up and remediation operations in accordance with the National Contingency Plan to the greatest extent possible.

15.     The CITGO entities did not "discharge" any hazardous substance within the meaning of the Spill Act.

16.     The CITGO entities are not "in any way responsible" for any discharges of hazardous substance within the meaning of the Spill Act.

17.     The costs and damages sought by plaintiffs do not constitute "cleanup and removal costs" under the Spill Act, or they are not otherwise recoverable under the Spill Act.

18.     Any claim for treble damages under the Spill Act is barred because plaintiffs have failed to comply with the requirements set forth in the Spill Act.

19.     Plaintiffs' claims are barred by the defenses available to the CITGO entities under the New Jersey Product Liability Act, N.J. Stat. Ann. § 2A:58C-1 et seq.

20.     To the extent that plaintiffs' Complaint seeks damages for which payment was received or may be received from collateral sources, such damages are barred by the collateral source rule and the provisions of N.J. Stat. Ann. § 2A:15-97.

## NEW MEXICO

1.      The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to N.M. Stat. Ann. §§ 37-1-4 and 37-1-7 (2006)

2.      Barring application of any statutory exception to the comparative fault doctrine, the CITGO entities assert that they may be held liable only for the amount of damages, if any, allocated in direct proportion to their percentage of fault.  N.M. Stat. Ann. § 41-3A-1.

3.      Should defendants be found liable for the manufacture and sale of a defective product, the CITGO entities assert that defendants may only be held liable for the amount of damages allocated to them in direct proportion to their collective percentage of fault, taking into consideration the acts and omissions of all relevant third parties and any failure on the part of the plaintiffs to mitigate their own damages.  N.M. Stat. Ann. § 41-3A-1(C)(3).

4.      Plaintiffs' trespass claim, private nuisance claim and the monetary damages portion of their common law  public nuisance claim are barred to the extent plaintiffs are seeking damages to recover for MTBE contamination allegedly affecting property or wells not actually owned by the State.

5.      Plaintiffs' statutory public nuisance claim fails because defendants did not "knowingly and unlawfully introduce any object or substance into any body of public water causing it to be offensive or dangerous for human or animal consumption or use."  N.M. Stat. Ann. § 30-8-2 (2006).

6.      Plaintiffs' statutory public nuisance claim fails in whole or in part

because the statute does not provide for the recovery of monetary damages.  N.M. Stat.

Ann. § 30-8-2- (2006).

7. Plaintiffs' trespass claim fails in whole or in part to the extent

plaintiffs are seeking damages to the groundwaters of the State of New Mexico because

the State does not have an exclusive possessory interest in such groundwaters.

**NEW YORK**

1. The complaints and each purported cause of action are barred by

the applicable provisions of the pertinent statutes of limitations, including but not limited

to, N.Y.C.P.L.R. § 214.

2. Plaintiffs' claims pursuant to New York General Business Law

§ 349 should be dismissed for failure to plead facts sufficient to show that defendants

engaged in "consumer-oriented" conduct that had a broad impact on consumers at large

which injured the plaintiffs as within the intended ambit of the statute.

3. Plaintiffs' claims pursuant to New York General Business Law

§ 349 should be dismissed because plaintiffs are not consumers under § 349.

4. Plaintiffs' claims pursuant to New York General Business Law

§ 349 should be dismissed because the alleged deceptive conduct for which the plaintiffs

seek redress does not fall within the ambit of the statute, as the plaintiffs' injuries did not

arise by reason of any alleged violation of N.Y. Gen. Bus. Law § 349.

5. Plaintiffs' claims pursuant to New York General Business Law

§ 349 should be dismissed as compliance with the Federal Trade Commission Act, 15

U.S.C.A. § 45 is a complete defense to an action brought under N.Y. Gen. Bus. Law

§ 349.

6.      Plaintiffs' claims pursuant to New York General Business Law § 349 should be dismissed because any act or practice of the CITGO entities complied with the rules and regulations of, and the statutes administered by, the Federal Trade Commission, or any official department, division, commission or agency of the United States.

7.      Plaintiffs' claims pursuant to New York General Business Law § 349 should be dismissed because the CITGO entities do not sell petroleum products directly to consumers in New York.

8.      If the CITGO entities are found liable for any non-economic loss allegedly suffered by plaintiffs, and such liability equals fifty percent or less of the total liability of all persons liable, and the aggregate liability of such other persons equals or exceeds fifty percent of the total liability, then, pursuant to Civil Practice Law and Rules Article 16, the CITGO entities' liability to plaintiffs for non-economic loss shall not exceed the CITGO entities' equitable share determined in accordance with the relative culpability of each person causing or contributing to the total liability for such non-economic loss.

**PENNSYLVANIA**

1.      The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, 42 Pa. Cons. Stat. Ann. § 5524.

2.      The CITGO entities' conduct did not meet the minimum requirements of culpability with respect to each material element of the alleged offenses of civil conspiracy, public nuisance, and negligence in order to be found liable according

to the applicable provision of 18 Pa. Cons. Stat. Ann. § 302, and, therefore, plaintiff's claims on these counts should be dismissed.

3.     Plaintiff's claims for public nuisance are barred because at all relevant times, neither the CITGO entities nor their products violated any orders or regulations adopted by the Pennsylvania Department of Environmental Resources.  35 Pa. Cons. Stat. Ann. § 691.503.

4.     The CITGO entities did not contribute to Plaintiff's claimed damages, contamination or pollution, and therefore the CITGO entities cannot be presumed liable pursuant to 35 Pa. Cons. Stat. Ann. § 6021.1311.

5.     Plaintiff is precluded from bringing this action as primary jurisdiction rests with the Pennsylvania Department of Environmental Protection ("DEP") and other applicable governmental authorities.

6.     Plaintiff's claims against the CITGO entities must fail to the extent that the Court determines that recovery against the CITGO entities based on strict liability for design defect is not justified.  *See Azzarello v Black Brothers Co., Inc.*, 480 Pa. 547, 558, 391 A.2d 1020, 1026 (1978).

7.     Any claims for punitive damages fail to state a claim upon which relief may be granted, violate various provisions of the Constitutions of the United States and the State of Pennsylvania, and violate various statutory provisions thereof.

## PUERTO RICO

1.     Plaintiffs may not pursue their claim unless they first exhaust the financial assurance instruments put in place by underground storage owners and operators pursuant to the Puerto Rico Environmental Quality Board's (EQB) Regulation

for the Control of Underground Storage Tanks of November 7, 1990, Part IX.

2.      Plaintiffs may not pursue their claim unless they first exhaust the funds available in the petroleum cleanup fund established by the EQB to pay for cleanup or restoration of groundwater caused by petroleum releases from USTs and/or to compensate for injuries to third parties.

3.      Plaintiffs may not file any claim unless they first exhaust the funds available under the Leaking Underground Storage Tank (LUST) Trust Fund for investigation and cleanup of areas alleged impacted.

4.      The Commonwealth's authority is limited by those powers conferred by the Constitution of the Commonwealth, the legislature in the laws of Puerto Rico and the Congress of the United States of America in federal legislation.

5.      The EQB's authority is limited by those powers delegated to it through its Organic act and other enabling legislation.

6.      The Commonwealth is not exempted from meeting the same burden of proof as any other plaintiff in an action for damages, in accordance with Art. 1802 of the Puerto Rico Civil Code.

7.      Insofar as the Commonwealth seeks to recover damages through the action authorized by the Public Policy Environmental Act, it is barred from recovering under Common law theories, such as public nuisance, trespass, strict products liability and negligence.

8.      No public nuisance exists because no act or omission by or on behalf of any of the defendants caused or will cause injury to health or offense to the senses, or is a nuisance to the well being of any neighborhood, or to a large number of

persons as required by P.R. Laws Ann. tit. 32 § 2761.

9.      Plaintiffs' public nuisance claim fails because they have not alleged, and cannot show, any "special damages" under Puerto Rico law.

10.     Future costs are not authorized by P.R. Laws Ann. tit. 32 § 2761.

11.     Trespass is not an acknowledged cause of action under the Puerto Rico Civil Code or as an equitable cause of action for acts or omissions occurring within the jurisdiction of Puerto Rico.

12.     The Commonwealth's complaint fails to plead the elements of a negligence claim under Art. 1802 of the Puerto Rico Civil Code with sufficient clarity, specificity, and particularity, including the alleged damages sustained by the Commonwealth, the alleged acts or omissions of the CITGO entities and the causal nexus.

13.     The Commonwealth lacks standing to bring a citizen suit under Puerto Rico Public Policy Environmental Act ("PPEA"), P.R. Laws Ann. tit. 12 § 8001 *et seq.*

14.     The CITGO entities are not liable under the PPEA because they have followed and complied with any applicable dispositions and regulations promulgated under the PPEA.

15.     The CITGO entities are not liable under the PPEA because their actions have not, in any manner, contributed or created any damage or degradation to any of the Commonwealth's natural resources.

16.     The CITGO entities are not liable under the PPEA because releases, if any, were caused by an act or omission of a third party and the CITGO

entities exercised due care and took precautions against foreseeable acts of a third party.

17.     The Commonwealth lacks standing to bring a suit for alleged violations to the Water Pollution Control Act, hereinafter WPCA.  P.R. Laws Ann. tit. 24 § 591 *et seq.*

18.     MTBE is not considered an "other" pollutant as defined in the WPCA.  P.R. Laws Ann. tit. 24 § 591(h).

19.     The CITGO entities are not liable under the WPCA because the prohibitions, as well as the definitions contained in the WPCA, are unconstitutionally vague.

20.     MTBE is not considered a "Pollutant" by the Commonwealth's Water Quality Standards Regulations, Department of State Regulation No. 6616.

21.     The CITGO entities are not liable under the Water Quality Standards Regulations because MTBE is not regulated nor limited under the Water Quality Standards Regulations.

22.     The CITGO entities are not liable under the Water Quality Standards Regulations because releases, if any, were caused by an act or omission of a third party and the CITGO entities exercised due care and took precautions against foreseeable acts of a third party.

23.     MTBE is not considered a "Regulated Substance" as defined in the Commonwealth's Underground Storage Tank Regulations, Department of State Regulation No. 4362.

24.     The CITGO entities are not liable under the Underground Storage Tank Regulations because MTBE is not regulated or limited under such regulations.

25.     The Commonwealth's claim must be decreased by the proportion of harm for which the Commonwealth is liable due to its concurrent imprudence.  The Commonwealth's award, if any, must be reduced in proportion to the damages for which purchasers of gasoline are liable due to their concurrent imprudence.

26.     The complaint and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to Article 1868 of the Puerto Rico Civil Code.

27.     Plaintiffs' public nuisance claim is barred because the alleged activity does not constitute an "ultra-hazardous activity" or "illegal hazardous activity" under Puerto Rico law.

28.     Plaintiffs have failed to state a claim for relief against the CITGO entities under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901, et seq. ("RCRA"), including but not limited to the CITGO entities' lack of ownership or operation of any facilities or regulated facilities in Puerto Rico.

29.     Plaintiffs' claims under RCRA are barred to the extent plaintiffs seek relief for conduct occurring or damages incurred prior to the effective date of RCRA.

30.     Plaintiffs' claims under RCRA are barred because MTBE and gasoline containing MTBE are not "solid wastes" and/or "hazardous wastes" under RCRA.

31.     Plaintiffs' RCRA claims fail because Plaintiffs failed to allege, and they cannot show, that the CITGO entities have violated RCRA Subchapter III, if applicable.

32.     Plaintiffs' RCRA claims are barred because Plaintiffs have failed to comply with the jurisdictional prerequisites for bringing a claim under RCRA.

## VERMONT

1.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, Vt. Stat. Ann. tit. 12, §§ 511, 512(4), 512(5).

2.     Plaintiffs' recovery is barred by their contributory fault, which is greater than the causal total negligence of the defendant or defendants.  Vt. Stat. Ann. tit. 12, § 1036.

3.     Recovery is barred or must be reduced, in whole or in part, based on the doctrine of comparative negligence.  Vt. Stat. Ann. tit. 12, § 1036.

4.     The Court lacks personal jurisdiction over PDVMR.

## VIRGINIA

1.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, Va. Code Ann. §§ 8.01-243, 8.01-248.

## WEST VIRGINIA

1.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, W. Va. Code Ann. § 55-2-12.

## WISCONSIN

1.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited

to Wisc. Stat. Ann. § 893.52.

2.      Plaintiffs' recovery is barred or must be reduced, in whole or in part, based on the doctrines of contributory and/or comparative fault, pursuant to Wisc. Stat. Ann. § 895.045.

*      *      *

For each State described above, the CITGO entities incorporate by reference any affirmative defense, whether general or specific to another State, alleged herein or by other defendants in MDL 1358.

The pleading of the defenses described above shall not be construed as an undertaking by the CITGO entities of any burden which would otherwise be the responsibility of plaintiffs.

**WHEREFORE**, CITGO Petroleum Corporation, CITGO Refining and Chemicals Company L.P., and PDV Midwest Refining, L.L.C. request entry of judgment dismissing the complaints with prejudice, and awarding them their costs and attorneys' fees, and such other relief as the Court may deem just and proper.

### THE CITGO ENTITIES' MASTER THIRD-PARTY COMPLAINT AGAINST JOHN AND JANE DOES NOS. 1-500

Pursuant to Rule 14(a) of the Federal Rules of Civil Procedure, Defendant and Third-Party Plaintiffs CITGO Petroleum Corporation, CITGO Refining and Chemicals Company L.P., and PDV Midwest Refining, L.L.C., by their undersigned counsel, hereby bring this Third-Party Complaint against Third-Party Defendants John and Jane Does nos. 1-500 ("Third-Party Defendants") in MDL 1358 for the cases identified in the caption above, and in support thereof, aver as follows:

1.      Plaintiffs commenced civil actions in California, Connecticut, Florida,

59

Illinois, Indiana, Iowa, Kansas, Louisiana, Massachusetts, Missouri, New Hampshire, New Jersey, New Mexico New York, Pennsylvania, Vermont, Virginia, West Virginia, Wisconsin and the Commonwealth of Puerto Rico against the CITGO entities and other purported manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and marketers of the gasoline additive MTBE and/or gasoline products containing MTBE for alleged damages resulting from the contamination or threatened contamination of plaintiffs' wells and groundwater or water resources or systems by MTBE and/or gasoline containing MTBE.  Certain of the complaints also contain allegations relating to TBA.

2.      Specifically, plaintiffs allege negligence, public and private nuisance, trespass, civil conspiracy, breach of warranty, and a variety of product liability theories against the CITGO entities and the other named Defendants.

3.      In virtually all instances, plaintiffs' complaints fail to identify – or name as defendants – the entities or persons responsible for spilling, leaking or otherwise releasing into the environment the MTBE or TBA or gasoline containing MTBE or TBA that led to the contamination or threatened contamination they allege.

4.      CITGO is a Delaware corporation with its principal place of business in Houston, Texas.  CRCC is a Delaware limited partnership with its principal place of business in Corpus Christi, Texas.  PDVMR is a Delaware limited liability company with its principal place of business in Lemont, Illinois.

5.      Third-Party Defendants are individuals and/or entities, the exact identities and locations of which are presently unknown, consisting of: (a) retail gasoline service station owners and operators; (b) jobbers and wholesalers; (c) trucking and tanking

companies; (d) drivers and operators of vehicles used by trucking and tanking companies; (e) contractors, excavators, and others engaged in the installation, removal, repair, or examination of USTs or associated piping or equipment; and (f) others whose actions or inaction caused or threatens to cause releases, spills, or leaks of MTBE or gasoline containing MTBE impacting plaintiffs' wells and groundwater or water resources or systems, and who are thereby responsible for any and all damages allegedly sustained by plaintiffs.

6.    Third-Party Defendants' offending conduct, as described herein, took place in substantial part in California, Connecticut, Florida, Illinois, Indiana, Iowa, Kansas, Louisiana, Massachusetts, Missouri, New Hampshire, New Jersey, New Mexico, New York, Pennsylvania, Vermont, Virginia, West Virginia, Wisconsin and the Commonwealth of Puerto Rico, in relative proximity to the contaminated or threatened wells and groundwater or water resources or systems in which plaintiffs claim to have an interest.

7.    Jurisdiction is proper in this Court under 28 U.S.C. § 1367, in that the claims set forth herein are so related to the claims in plaintiffs' Complaints that they form part of the same case or controversy.

8.    Venue is proper in this Court under 28 U.S.C. § 1391 and Fed. R. Civ. P. 14.

9.    Plaintiffs allege that the CITGO entities and the other named Defendants caused the contamination or threatened contamination of plaintiffs' wells and groundwater or water resources or systems in manufacturing, designing, refining, formulating, distributing, supplying, selling, or marketing MTBE or gasoline containing

MTBE and are liable to plaintiffs for the damages allegedly resulting therefrom.  Certain of the complaints also contain allegations relating to TBA.

10.    The CITGO entities deny any and all liability whatsoever for plaintiffs' alleged damages and incorporate their Eighth Amended Master Answer to plaintiffs' Complaints by reference.

11.    The CITGO entities are not responsible for the actual or threatened releases, spills, or leaks of MTBE or gasoline containing MTBE into plaintiffs' groundwater or water systems.  The CITGO entities do not own, control or operate gasoline service stations, the land on which they operate, or USTs at the stations.

12.    The harm allegedly sustained by plaintiffs is a direct result of the actions and inaction of Third-Party Defendants, the exact identities of which are unknown to the CITGO entities at this time, and over whom the CITGO entities have no control and for whom CITGO entities are not responsible.  If the CITGO entities have or had any relationship, contractual or otherwise, with one or more Third-Party Defendants, such relationships required Third Party Defendants to refrain from the offending activity described herein, and/or to assume full responsibility for it.

13.    Third-Party Defendants owed a duty to the CITGO entities to safely and properly use, handle, or store MTBE or gasoline containing MTBE; install, remove, or inspect USTs containing such products; and remediate or mitigate contamination caused by MTBE or gasoline containing MTBE.

14.    Third-Party Defendants breached their aforementioned duty in, *inter alia*, the following regards:

        a.    By failing to safely and properly handle, use, or store MTBE or

gasoline containing MTBE;

   b.      By failing to safely and properly transport, haul, deliver, or transfer MTBE or gasoline containing MTBE;

   c.      By failing to safely and properly receive or accept delivery or transfers of MTBE or gasoline containing MTBE;

   d.      By failing to safely and properly remediate, mitigate, clean-up, eliminate, or control releases, spills, or leaks of MTBE or gasoline containing MTBE, including by, *inter alia*, failing to timely commence remediation or mitigation efforts, or improperly drilling or establishing monitoring wells during remediation or mitigation, thereby causing cross-contamination;

   e.      By failing to safely and properly service, repair, maintain, monitor, inspect, test, or examine USTs or any associated piping or equipment;

   f.      By failing to safely and properly install, replace, excavate, or remove USTs or any associated piping or equipment;

   g.      By failing to safely and properly dispense or pump gasoline into trucks, tankers, automobiles, or any other vehicles;

   h.      By failing to adhere to applicable laws, rules, regulations, guidelines, or procedures relating to the use, handling, or storage of MTBE or gasoline containing MTBE; the installation, removal, or inspection of USTs; or the remediation or mitigation of contamination caused by MTBE or gasoline containing MTBE; and

   i.      By otherwise failing to act with due care in using, handling, or storing MTBE or gasoline containing MTBE; installing, removing, or inspecting

USTs; or remediating or mitigating contamination caused by MTBE or gasoline containing MTBE.

15.     The actions and inaction of Third-Party Defendants were negligent, careless, reckless, and in derogation of their duty to the CITGO entities.

16.     As a direct and proximate result of Third-Party Defendants' actions and inaction, Third-Party Defendants were the sole cause of and/or contributed to the alleged contamination or threatened contamination of plaintiffs' groundwater or water systems and any and all resulting damages to plaintiffs alleged in the Complaints, and are directly liable to plaintiffs.  Alternatively, Third Party Defendants are liable to the CITGO entities for all or part of plaintiffs' claims against the CITGO entities.

17.     Without admitting any of the allegations made against the CITGO entities in plaintiffs' Complaints and expressly denying the same as to the CITGO entities, the CITGO entities incorporate plaintiffs' allegations and legal claims by reference and assert them against Third-Party Defendants.  Without limitation, the CITGO entities specifically assert that Third Party Defendants are liable to plaintiffs on, among other claims, their negligence, trespass and nuisance claims, and any claims premised on federal or state statutes or regulations which apply, in whole or in part, to owners and operators of gasoline stations, USTs or other gasoline storage facilities.

18.     If the allegations contained in plaintiffs' Complaints are correct, which is specifically denied, then Third-Party Defendants are liable solely and directly to plaintiffs for the incidents complained of and any and all damages sought by plaintiffs.

19.     Alternatively, if the allegations contained in plaintiffs' Complaints are correct, which is specifically denied, and it is judicially determined that plaintiffs are

entitled to damages from the CITGO entities, then Third-Party Defendants are liable over

to the CITGO entities, and the CITGO entities are entitled to express, implied, or

equitable indemnification and/or contribution from Third-Party Defendants for all losses,

damages, and costs, including attorneys' fees, that the CITGO entities incur as a result of

this action.

      **WHEREFORE**, Defendant and Third-Party Plaintiffs CITGO Petroleum

Corporation, CITGO Refining and Chemicals Company L.P., and PDV Midwest

Refining, L.L.C. demand entry of judgment in their favor and against Third-Party

Defendants John and Jane Does nos. 1-500 for all sums that may be awarded in favor of

plaintiffs and against the CITGO entities, together with interest, costs, reasonable

attorneys' fees, and such other relief as this Court deems just and proper.

### THE CITGO ENTITIES' MASTER CROSS-CLAIMS
### AGAINST JOHN AND JANE DOES NOS. 501-1000

      Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Defendants

and Cross-Plaintiffs CITGO Petroleum Corporation, CITGO Refining and Chemicals

Company L.P., and PDV Midwest Refining, L.L.C., by their undersigned counsel, hereby

bring these Cross-Claims against Cross-Defendants John and Jane Does nos. 501-1000,

presently Defendants in this action but whose identity is unknown, in MDL 1358 for the

cases identified in the caption above, and in support thereof, aver as follows:

      1.    Plaintiffs commenced civil actions in California, Connecticut, Florida,

Illinois, Indiana, Iowa, Kansas, Louisiana, Massachusetts, Missouri, New Hampshire,

New Jersey, New Mexico, New York, Pennsylvania, Vermont, Virginia, West Virginia,

Wisconsin and the Commonwealth of Puerto Rico against the CITGO entities and other

purported manufacturers, designers, refiners, formulators, distributors, suppliers, sellers,

and marketers of the gasoline additive MTBE and/or gasoline products containing MTBE for alleged damages resulting from the contamination or threatened contamination of plaintiffs' wells, groundwater or water resources or systems by MTBE and/or gasoline containing MTBE.  Certain of the complaints also contain allegations relating to TBA.

2.      Specifically, plaintiffs allege negligence, public and private nuisance, trespass, civil conspiracy, breach of warranty, and a variety of product liability theories against the CITGO entities and the other named Defendants.

3.      In virtually all instances, plaintiffs' complaints fail to identify – or name as defendants – the entities or persons responsible for spilling, leaking or otherwise releasing into the environment the MTBE or TBA or gasoline containing MTBE or TBA that led to the contamination or threatened contamination they allege.

4.      CITGO is a Delaware corporation with its principal place of business in Houston, Texas.  CRCC is a Delaware limited partnership with its principal place of business in Corpus Christi, Texas.  PDVMR is a Delaware limited liability company with its principal place of business in Lemont, Illinois.

5.      Cross-Defendants are individuals and/or entities, Defendants in this action but whose exact identities, locations, and actions are presently unknown to the CITGO entities, and who are responsible for any and all damages allegedly sustained by plaintiffs.  The exact identities, locations and actions of the Defendants also named as Cross-Defendants depend on further discovery and/or determinations regarding, among other things, the locations of the wells plaintiffs allege are contaminated or threatened with contamination.

6.      Cross-Defendants' offending conduct, as described herein, took place in

substantial part in California, Connecticut, Florida, Illinois, Indiana, Iowa, Kansas, Louisiana, Massachusetts, Missouri, New Hampshire, New Jersey, New Mexico, New York, Pennsylvania, Vermont, Virginia, West Virginia, Wisconsin, and the Commonwealth of Puerto Rico, in relative proximity to the contaminated or threatened groundwater or water systems in which plaintiffs claim to have an interest.

7.      Jurisdiction is proper in this Court under 28 U.S.C. § 1367, in that the claims set forth herein are so related to the claims in plaintiffs' Complaints that they form part of the same case or controversy.

8.      Venue is proper in this Court under 28 U.S.C. § 1391 and Federal Rule of Civil Procedure 13.

9.      Plaintiffs allege that the CITGO entities and the other named Defendants caused the contamination or threatened contamination of plaintiffs' wells and groundwater or water resources or systems in manufacturing, designing, refining, formulating, distributing, supplying, selling, or marketing MTBE or gasoline containing MTBE and are liable to plaintiffs for the damages allegedly resulting therefrom.  Certain of the complaints also contain allegations relating to TBA.

10.      The CITGO entities deny any and all liability whatsoever for plaintiffs' alleged damages and incorporate their Eighth Amended Master Answer to plaintiffs' Complaints by reference.

11.      The CITGO entities are not responsible for the actual or threatened releases, spills, or leaks of MTBE or gasoline containing MTBE into plaintiffs' groundwater or water systems.  The CITGO entities do not own, control or operate gasoline service stations, the land on which they operate, or USTs at the stations.

12.     The harm allegedly sustained by plaintiffs is a direct result of the actions and inaction of Cross-Defendants, Defendants to this action, the exact identities of which are unknown to the CITGO entities at this time, and over whom the CITGO entities have no control and for whom CITGO entities are not responsible.  If the CITGO entities have or had any relationship, contractual or otherwise, with one or more Cross-Defendants, such relationships required Cross-Defendants to refrain from the offending activity described herein, and/or to assume full responsibility for it.

13.     Cross-Defendants owed a duty to the CITGO entities to safely and properly use, handle, or store MTBE or gasoline containing MTBE; install, remove, or inspect USTs containing such products; and remediate or mitigate contamination caused by MTBE or gasoline containing MTBE.

14.     Cross-Defendants breached their aforementioned duty in, *inter alia*, the following regards:

    a.      By failing to safely and properly handle, use, or store MTBE or gasoline containing MTBE;

    b.      By failing to safely and properly transport, haul, deliver, or transfer MTBE or gasoline containing MTBE;

    c.      By failing to safely and properly receive or accept delivery or transfers of MTBE or gasoline containing MTBE;

    d.      By failing to safely and properly remediate, mitigate, clean-up, eliminate, or control releases, spills, or leaks of MTBE or gasoline containing MTBE, including by, *inter alia*, failing to timely commence remediation or mitigation efforts, or improperly drilling or establishing monitoring wells during

68

remediation or mitigation, thereby causing cross-contamination;

e.      By failing to safely and properly service, repair, maintain, monitor, inspect, test, or examine USTs or any associated piping or equipment;

f.      By failing to safely and properly install, replace, excavate, or remove USTs or any associated piping or equipment;

g.      By failing to safely and properly dispense or pump gasoline into trucks, tankers, automobiles, or any other vehicles;

h.      By failing to adhere to applicable laws, rules, regulations, guidelines, or procedures relating to the use, handling, or storage of MTBE or gasoline containing MTBE; the installation, removal, or inspection of USTs; or the remediation or mitigation of contamination caused by MTBE or gasoline containing MTBE; and

i.      By otherwise failing to act with due care in using, handling, or storing MTBE or gasoline containing MTBE; installing, removing, or inspecting USTs; or remediating or mitigating contamination caused by MTBE or gasoline containing MTBE.

15.     The actions and inaction of Cross-Defendants were negligent, careless, reckless, and in derogation of their duty to the CITGO entities.

16.     As a direct and proximate result of Cross-Defendants' actions and inaction, Cross-Defendants were the sole cause of and/or contributed to the alleged contamination or threatened contamination of plaintiffs' groundwater or water systems and any and all resulting damages to plaintiffs alleged in the Complaints, and are directly liable to plaintiffs.  Alternatively, Cross-Defendants are liable to the CITGO entities for

all or part of plaintiffs' claims against the CITGO entities.

17.     Without admitting any of the allegations made against the CITGO entities in plaintiffs' Complaints and expressly denying the same as to the CITGO entities, the CITGO entities incorporate plaintiffs' allegations and legal claims by reference and assert them against Cross-Defendants.  Without limitation, the CITGO entities specifically assert that Cross-Defendants are liable to plaintiffs on, among other claims, their negligence, trespass and nuisance claims, and any claims premised on federal or state statutes or regulations which apply, in whole or in part, to owners and operators of gasoline stations, USTs or other gasoline storage facilities.

18.     If the allegations contained in plaintiffs' Complaints are correct, which is specifically denied, then Cross-Defendants are liable solely and directly to plaintiffs for the incidents complained of and any and all damages sought by plaintiffs.

19.     Alternatively, if the allegations contained in plaintiffs' Complaints are correct, which is specifically denied, and it is judicially determined that plaintiffs are entitled to damages from the CITGO entities, then Cross-Defendants are liable over to the CITGO entities, and the CITGO entities are entitled to express, implied, or equitable indemnification and/or contribution from Cross-Defendants for all losses, damages, and costs, including attorneys' fees, that the CITGO entities incur as a result of this action.

**WHEREFORE**, Defendants and Cross-Plaintiffs CITGO Petroleum Corporation, CITGO Refining and Chemicals Company L.P., and PDV Midwest Refining, L.L.C. demand entry of judgment in their favor and against Cross-Defendants John and Jane Does nos. 501-1000 for all sums that may be awarded in favor of plaintiffs

and against the CITGO entities, together with interest, costs, reasonable attorneys' fees, and such other relief as this Court deems just and proper.

Dated: November 15, 2013

Respectfully submitted,

CITGO PETROLEUM CORPORATION, CITGO REFINING AND CHEMICALS COMPANY L.P., AND PDV MIDWEST REFINING, L.L.C.

By: *Pamela R Hanebutt*
    Nathan P. Eimer (neimer@eimerstahl.com)
     (New York Bar No. 1976067)
    Pamela R. Hanebutt
     (phanebutt@eimerstahl.com)
    Lisa S. Meyer (lmeyer@eimerstahl.com)
    EIMER STAHL LLP
    224 S. Michigan Ave., Suite 1100
    Chicago, IL 60604
    Ph.  312-660-7600
    Fax  312-692-1718

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on this 15th day of November, 2013, a copy of the EIGHTH AMENDED MASTER ANSWER, AFFIRMATIVE AND SEPARATE DEFENSES, MASTER THIRD-PARTY COMPLAINT, AND MASTER CROSS-CLAIMS OF DEFENDANTS CITGO PETROLEUM CORPORATION, CITGO REFINING AND CHEMICALS COMPANY, L.P. AND PDV MIDWEST REFINING, L.L.C. was served upon all parties of record via LexisNexis File and Serve.

*Pamela R Hanebutt*