**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

**Master File No. 1:00 - 1898**
**MDL 1358 (SAS)**
**M21-88**

**This Document Relates to:**

*New Jersey Department of Environmental*
*Protection, et al. v. Atlantic Richfield Co., et al.*
No. 1:08-cv-00312-SAS

**PLAINTIFFS' CONSOLIDATED OPPOSITION TO CHEVRON U.S.A. INC.'S**
**RULE 56.1 MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY**
**JUDGEMENT REGARDING THE SKYLINE SERVICE CENTER SITE**
**AND**
**PLAINTIFF'S RULE 56.1 MATERIAL FACTS IN SUPPORT OF**
**PLAINTIFFS' OPPOSITION TO CHEVRON U.S.A. INC.'S**
**RULE 56.1 STATEMENT OF MATERIAL FACTS**

In accordance with the Federal Rule of Civil Procedure 56, Southern District of New York's Local Civil Rule 56.1, and this Court's Individual Rules and Procedures IV.I, Plaintiffs file their Consolidated Response to Defendant Chevron U.S.A. Inc.'s (**CUSA**) Rule 56.1 Statement in Support of its Motion for Summary Judgment Regarding the Skyline Service Center Site, and also submits Plaintiffs' 56.1 Statement of Material Facts in Support of their Opposition to CUSA's 56.1 Statement of Material Facts.

### PLAINTIFF'S RESPONSE TO CUSA'S 56.1 MATERIAL FACTS

1.      Plaintiffs originally asserted claims against Chevron Corporation and CUSA regarding four trial sites identified in CMO 107.  See Docket Entry 3592.

**RESPONSE**

Admit that Plaintiffs asserted claims against Chevron Corporation and CUSA regarding the four trial sites identified in CMO 107.  Admit that CMO 107, entered on December 27, 2012, identifies "Chevron" as a defendant with respect to the Skyline Service Center.  Plaintiffs incorporate Material Fact Nos. 25 and 26, below.


2.      Those sites were: (1) The West Windsor Getty Service Station, Site ID 6187 ("Getty"); (2) The HP Delta Service Station, Site ID 41598 ("HP Delta"); (3) The Skyline Service Center, Site ID 2156 ("Skyline"); and (4) The Baker's Waldwick Gulf Service Station; Site ID 11126 ("Baker's Waldwick").  *Id.*

**RESPONSE:**

Plaintiffs admit that Chevron was identified as a defendant at these four sites in CMO 107.

**3.**     During discovery, Plaintiffs identified three of these four sites — Getty, HP Delta, and Skyline — with only Chevron Corporation, purportedly because Chevron Corporation is the successor-in-interest to non-party Texaco Inc.  See CUSA Mot. Summary Judgment, Ex. A-1, at pp. 8-10, 16-17 (Plaintiffs' Responses to Defendants' First Set of Contention Interrogatories).

## RESPONSE

Admitted in part and denied in part.   Admit that Plaintiffs identified Getty, HP Delta, and Skyline with "Chevron."   Deny that Plaintiffs associated these sites "only" with Chevron Corporation.   As noted in the Complaint, "Chevron" refers to both CUSA and Chevron Corporation.   (¶¶ 25, 26, below.)   The Chevron entities responded throughout discovery as "Chevron."   The Chevron Defendants filed their Master Answer collectively on behalf of Chevron U.S.A. Inc., Chevron Corporation (f/k/a ChevronTexaco Corporation), Texaco Inc., etc. (¶ 26, below; Docket No. 2561).   Chevron U.S.A. Inc. and ChevronTexaco (n/k/a Chevron Corporation) filed a joint response to CMO 45.   (Axline Decl. Ex. 8.)   Texaco Inc. responded to discovery by producing voluminous documents bate-stamped with a Chevron number.   (Barnhart Decl. Ex. 7 at 2 [Objections and Responses of Texaco Inc. to Plaintiffs First Set of Interrogatories].)   Chevron filed "The Chevron Defendants' Objections and Responses to Plaintiffs First Set of Request for Production of Documents" on behalf of Chevron U.S.A., Texaco Inc. and Unocal Corporation.   (Barnhart Decl. Ex. 8.)

For years Chevron maintained that "Chevron Corporation, Texaco, Inc., Chevron-Texaco, and Texaco Petroleum Company are for all relevant purposes the same entity . . ."   and Chevron's counsel even asked the United States Court of Appeals for the Second Circuit in 2011 to "take 'judicial notice' of this fact.'"  *Chevron Corp. v. Salazar*, 807 F.Supp.2d 189, 198 n.23 (S.D.N.Y. 2011) (quoting *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384 (2d Cir. 2011).

Plaintiffs incorporate Plaintiffs' Material Facts ¶¶ 25-29, herein.

2

4.     Plaintiffs identified the fourth site, Bakers Waldwick, with CUSA. Id. at p. 13.

**RESPONSE**

Admitted in part and denied in part.  Plaintiffs' Responses to Contention Interrogatories use the term "Chevron" throughout the responses.  Plaintiffs incorporate their Response to No. 3, above, and Plaintiffs' Material Facts at ¶¶ 25-29, below.

5.     Plaintiffs have dismissed their claims against Chevron Corporation and Kewanee Industries, Inc., and are now attempting to proceed solely against CUSA. See Docket Entry 271.

**RESPONSE:**

Admitted in part and denied in part.  Plaintiffs admit that the claims against Chevron Corporation and Kewanee Industries, Inc. were voluntarily dismissed.  Plaintiffs deny that they are proceeding "only" against CUSA.

6.     But Plaintiffs are no longer attempting to pursue CUSA in connection with the Bakers Waldwick site.  See Docket Entry 268.

**RESPONSE**

Admitted.

7.     Plaintiffs are now attempting to assert claims against CUSA at the Skyline Service Center, despite the fact that Plaintiffs failed to make any mention of such a claim in response to CUSA's contention interrogatories that specifically called for such information. See Ex. A-2 (Aug. 9 response to pre-motion letter); Ex. A-3 (Sept. 4 court-ordered supplemental correspondence); see also Ex. A-1.

**RESPONSE**

Denied.  Plaintiffs have pursued claims against "Chevron" -- a term that as used by

Chevron itself -- includes CUSA, Chevron Corporation and Texaco Inc., throughout the

litigation.  (*See, e.g.,* Barnhart Decl. Ex. 8 at 1; Axline Decl. Ex. 14 [Second Amended

Complaint].)  CUSA has been aware of Plaintiffs' claims throughout the litigation.  See

Response to No. 3, above.  CMO 107 was entered in December, 2012 (Axline Decl. Ex. 11), and

clearly identified "Chevron" as a defendant for the Skyline site.  Defendant's own expert states

he reviewed and considered CMO 107 when rendering his opinion.  (CUSA Ex. A-4 at Appendix

C [M. Keeley Report].)

Chevron provided documents in discovery showing that it supplied MTBE gasoline to

Star Enterprises.  (*See, e.g.,* Wallace Decl. & Wallace Decl. Ex. 1 [Chevron documents reflecting

sales of MTBE gasoline to Star Enterprises].)  Chevron was provided with discovery showing

that its customer, Star Enterprises, was the sole supplier of gasoline to the Skyline Service

Station between 1991 and 1997.  (*See, e.g.,* Axline Decl. Ex. 6.)  Chevron participated in the

deposition of Joseph Costello, the owner/operator of the Skyline Service Center, wherein Mr.

Costello discussed his sales agreement with Star/Texaco.  (Axline Decl. Ex. 4 at 3 [Depo. of J.

Costello reflecting that Chevron counsel participated at the deposition of J. Costello] and Ex. 6

(which was produced in 2010 and was also Ex. 10 to the Deposition of J. Costello; and Barnhart

Decl. Ex. 12 [Skyline ledger reflecting purchases of gasoline from Star during the relevant time

period; which was Ex. 25 to 8/02/2011 Depo. of J. Costello].)  Mr. Costello's testimony and the

Sales Agreement were specifically cited in Plaintiff's Responses to the Contention

Interrogatories (Axline Decl. Ex. 9 at 8-9.)

Plaintiffs' experts provided reports discussing the presence of MTBE gasoline at the

Skyline station during the relevant time period.  (Axline Decl. Ex. 1 at 25.)  Chevron was also

provided with discovery showing that MTBE was in the groundwater near the Skyline Service

Center in 1998 – just one year after Skyline and Star Enterprises terminated their supply

agreement.   (Axline Decl. Exs. 1, 2, 3 & 6, and Defendants' Material Fact No. 10, below.)

Parties are not required to identify all information regarding every site in response to

contention interrogatories.   (Barnhart Decl. Ex. 6 [8/19/13 Trans at 68: 6-7].)

**8.**      When specifically asked which Defendants that Plaintiffs identified with the

Skyline Service Center, Plaintiffs gave detailed responses regarding Texaco and other

defendants, but made no mention whatsoever of CUSA. See Ex. A-1 at Resp. to Interrogatories

No. 1-2.

**RESPONSE**

Denied.  See Response to Material Fact No. 3.  Texaco was identified by Chevron itself

as one of the "Chevron" defendants.  In addition, Chevron produced documents showing it

provided MTBE gasoline to Star during the relevant time period.  (Wallace Decl. Ex. 1.)

Plaintiffs' Responses to the Contention Interrogatories stated that MTBE was found in the wells

in the vicinity of Skyline in 1998, just after the Star Enterprises (Texaco) supply agreement

ended.   (Axline Decl. Ex. 9 at 8-9.)  Plaintiffs identified "Chevron" as a defendant at the Skyline

station in CMO 107 (Axline Decl. Ex. 11).  Plaintiffs were not required to reveal their entire case

in their Responses to the contention interrogatories.  (Barnhart Decl. Ex. 6 at 68:6-7 [8/19/13

Trans.].)

**9.**      Plaintiffs responded to CUSA's first contention interrogatory, stating as follows:

INTERROGATORY NO. 1:

Identify the Defendants YOU contend caused the alleged DAMAGES at each of
the DELINEATED TRIAL SITE AREAS at issue in this action.

5

RESPONSE TO INTERROGATORY NO. 1:

Subject to and without waiving its objections, Plaintiffs respond as follows:

Plaintiffs' Trial Sites

1. Skyline Service Center: Site ID No. 2156.

Sunoco; Texaco; Shell; Citgo.

Id. at Resp. to Interrogatory No. 1.

**RESPONSE**

Admitted.  Plaintiffs incorporate paragraph 3, above, and Plaintiffs' Material Facts ¶¶ 25-

29, below, herein.


10.    In response to Contention Interrogatory No. 2, which requested Plaintiffs to

"IDENTIFY all facts and all DOCUMENTS that YOU contend prove, establish, show or

demonstrate that the particular Defendant caused the alleged DAMAGES at each DELINEATED

TRIAL SITE AREA," Plaintiffs provide this information in response:

1. Skyline Service Center: Site ID No. 2156.

Sunoco supplied MTBE to Skyline from November of 1985 to September 1991
pursuant to a branding agreement. (Sunoco Resp 2nd Rogs, nos. 5, 10; Deposition
of Joseph Costello ("Costello Depo") at 26:20-28:15 and Exhs. 2, 9.). See also
Sunoco Response to CMO 45. Station owner Joe Costello testified that prior to
the requirement of over-fill containment sumps, Sunoco commonly spilled
approximately 10 gallons of gasoline each time it delivered gasoline to the station.
(Costello Depo. at 41:3-42:20 and Exh. 8.) Mr. Costello testified that the amount
of product spilled by Sunoco came to approximately 1,300 gallons over time. (Id.)

Texaco supplied MTBE gasoline to Skyline from October 1991 to September
1997 pursuant to a branding agreement. (SKYLINE 003560; Costello Depo. at
52:5-54:3; 68:19-69:17; and Exhs. 10, 16.)

CITGO, through its agent, supplied MTBE gasoline to Skyline from November,
1997 to June, 2008, including from CITGO's Linden Terminal. (CITGO
Supplemental Response to Plaintiffs' Second Interrogatories, No. 5; Costello
Depo. at 76:10-24; CITGO-NJ-003331.) Citgo also conducted on-site, in-tank
testing of its MTBE gasoline products at this site during this time period. (Id.)

MTBE was detected during the first tests for MTBE at Skyline, on May 13, 1998 at concentrations of 207 ppb. (SKYLINE002375-002376.) MTBE and TBA were detected in 16 of 18 domestic wells during a limited investigation conducted by the Passaic County Department of Health in 1998. (NJ-LBG-07788-07789; NJDEPSITE249-007146-007279.) Preliminary investigations identified Skyline as the likely source of the contamination. (Id.)

On or about August 5, 2003, three USTs and associated piping were removed at the Skyline station. (Id.) In addition to the discovery of contaminated soil, approximately 725 gallons of free product was observed floating on top of groundwater, and contaminated groundwater was observed flowing into the excavation from bedrock sidewalls. (NJDEP-SITE249-002219-002245; Costello Depo. at 95:6-97:11.) A broken containment sump was found at the time of removal. (Id.)

MTBE has continued to be detected at the Skyline station. MTBE was detected at the site at concentrations as high as 175 ppb in 2009. (NJDEP-SITE249-007146-007280.) MTBE was detected in potable wells near the Skyline station at levels as high as 360 ppb on June 18, 2004. (NJDEP-SITE249-002432-002433.) There are 95 potable wells within 1,000 feet of the impacted potable well. (Id.)

See Ex. A-1, Resp. to Interrogatory No. 2.

**RESPONSE**

Admitted.  Plaintiff incorporates Plaintiffs' Material Facts ¶¶ 30-51, herein.


**11.**     Chevron Corporation and CUSA retained expert Michael Keeley to specifically address Plaintiffs' four trial site specific claims, and Dr. Keeley relied on Plaintiffs' discovery responses in preparing his opinions. See Ex. A-4 ¶¶ 9, 29 & n.41, Appendix C; see also Ex. A-5 ¶ 4 (Declaration of Dr. Keeley).

**RESPONSE**

Admitted that Michael Keeley was retained by Chevron Corporation and CUSA. Admitted that Michael Keeley referenced Plaintiffs' discovery responses in his opinions.  Dr. Keeley stated he relied upon multiple sources in preparing his opinion, including CMO 107

which states that Plaintiffs are pursuing Chevron for the Skyline site. (CUSA Motion at Ex. A-4 at p.10 n.41)

     **12.**     In his report, Dr. Keeley specifically noted that "Plaintiffs have identified Chevron and Texaco with the Skyline Service Center site by virtue of an alleged supply agreement between Texaco and the station operator" and that "there is no allegation that Chevron supplied gasoline to this station."  See Ex. A-4 ¶¶ 29-30

**RESPONSE**

     Admitted in part and denied in part.  Plaintiffs admit that the above-quoted language was in the report of CUSA's Expert, Michael Keeley.  Plaintiffs deny the substance of the statement, which is internally inconsistent.  Identifying Chevron as having a supply agreement with the station is an allegation that Chevron supplied gasoline to the station.   Plaintiffs incorporate its response to Nos. 9 and 10, herein, and Plaintiffs' Material Facts ¶¶ 25-51, herein.

     **13.**     At no time did Plaintiffs or their experts ever respond to that report and assert that they were in fact asserting a claim against CUSA in connection with the Skyline Service Center. See Ex. A-5 ¶ 5.

**RESPONSE**

     Denied.  CMO 107 identifies Chevron as a defendant at the Skyline station, and Dr. Keeley relied on CMO 107 when preparing his report.  His report acknowledges that, "Plaintiffs have identified Chevron and Texaco with the Skyline Service Center site by virtue of an alleged supply agreement between Texaco and the station operator."  (See Ex. A-4 ¶¶ 29-30.)  Plaintiffs associated both Texaco and Chevron with this station, and Chevron itself has responded jointly on behalf of both Chevron and Texaco in this litigation.

8

14.     Had Plaintiffs or their experts ever asserted such a claim during the discovery period, Dr. Keeley would have analyzed such a claim and responded to it. Id. ¶ 6.

**RESPONSE**

Denied.  Defendants' Expert, Michael Keeley, stated he reviewed CMO 107 and Plaintiffs' Responses to the Contention Interrogatories, so he was aware of Plaintiffs claims.  In addition, Mr. Keeley had every opportunity to revise his report after the exchange of letters between counsel in August and September, 2013, but did not do so.

15.     In reliance on Plaintiffs' discovery responses, and the absence of any other indication to the contrary, Chevron Corporation and CUSA addressed Plaintiffs' allegations in connection with the Skyline Service Center in their pre-motion letter only in the context of Plaintiffs' erroneous claim that Chevron Corporation is the successor to Texaco. See Ex. A-6 (pre-motion letter).

**RESPONSE**

Admitted in part and denied in part.  Admitted that counsel for Chevron submitted a pre-motion letter which is attached to Defendant's Motion as Ex. A-6.  Denied that there is an absence of allegations other than in the context of Chevron Corporation as a successor to Texaco. See Response to Material Fact Nos. 3 and 7, and Plaintiffs' Material Facts Nos. 25-29, below, and Axline Decl. Ex. 11 [CMO 107].

16.     The pre-motion letter included no argument that CUSA had no relationship with the Skyline Service Center because there was no such claim against CUSA at the time. Id.

**RESPONSE**

Admitted in part and denied in part.  Admitted that Defendants' pre-motion letter did not address all claims regarding CUSA at the Skyline Service Center.  Denied that there was no such claim against CUSA at that time.  See Response to Material Fact Nos. 3 and 7, and Plaintiffs' Material Facts Nos. 25-29, below, and Axline Decl. Ex. 11 [CMO 107].

17.  The first time that Plaintiffs made any mention that they were pursuing CUSA in connection with the Skyline Service Center was in Plaintiffs' response to this pre-motion letter.  See Ex. A-2.

**RESPONSE**

Denied.  See Response to Material Fact Nos. 3 and 7, and Plaintiffs' Material Facts Nos. 25-29, below, and Axline Decl. Exs. 1, 2, 9, and 11.

18.  Plaintiffs then disclosed in their court-ordered supplemental conference letter of September 4, 2013 that they are now attempting to connect CUSA with the Skyline Service Center based on sales of gasoline by a former CUSA facility in Philadelphia, Pennsylvania from 1992-1994 to certain companies in New Jersey.  See Ex. A-3.

**RESPONSE**

Admitted in part and denied in part.  Admitted that counsel for Plaintiffs submitted a pre-motion letter on September 4, 2013, responding to Defendant CUSA' pre-motion letter.  Denied that Plaintiffs "are now attempting to connect CUSA with Skyline Service Center based on sales of gasoline by a former CUSA facility in Philadelphia, Pennsylvania from 1992-1994 to certain companies in New Jersey," because the content of the letter was not new information and

Chevron had the information for years.  See Response to Material Fact Nos. 3 and 7, and

Plaintiffs' Material Facts Nos. 25-29, below, and Axline Decl. Ex. 11.

19.    In the 1992 to 1994 time period, CUSA was required to use MTBE as an

oxygenate under the Federal Wintertime Program. See Ex. A-5 ¶ 7.

**RESPONSE**

Admitted in part and denied in part.  Admit that CUSA chose to use MTBE as an

oxygenate under the Federal Wintertime Program between at least 1992 and 1994 and that

CUSA was required to use an oxygenate under the Federal Wintertime Program.  Deny that

CUSA was required to use MTBE.  *In re MTBE Products Liability Litigation*, 457 F.Supp.2d

324, 335 (S.D.N.Y. 2006) ("the federal law did not *require* the use of MTBE").

20.    It is undisputed that (1) CUSA sold the Philadelphia Refinery in August 1994 and

(2) since then, CUSA refined gasoline containing MTBE has not been sold in the State of New

Jersey. See Ex. A-4 ¶ 14; Ex. A-5 ¶ 7 see also Ex. A-3 (making no claim that CUSA gas

containing MTBE was sold after 1994).

**RESPONSE**

Admit that Plaintiffs do not have evidence that contradicts CUSA's Fact Number 20.

21.    During the limited time that the Philadelphia Refinery sold gasoline containing

MTBE to companies in New Jersey, CUSA's expert Dr. Michael Keeley calculated that CUSA's

market share in New Jersey between 1992 and 1994 was below three percent. See Ex. A-4, Ex-

1; Ex. A-5 ¶ 8.

**RESPONSE**

Admit that CUSA's expert calculated CUSA's market share in New Jersey between 1992 and 1994 was below three percent. Deny any relevance of this fact with respect to the amount of CUSA MTBE gasoline supplied to the Skyline station.

22.    Plaintiffs' expert essentially agreed with Dr. Keeley's calculations, making only one minor change, which Dr. Keeley accepted in his amended calculations. See Ex. A-4, Amended Ex. 1; Ex. A-5 ¶ 9; see also Ex. A-7 at p. 42 (Second Rebuttal Report of Martin R. Tallett).

**RESPONSE**

Admitted in part and denied in part. Admit that Defendant's expert M. Keeley amended his report to be consistent with Mr. Tallett's opinion. Denied that Mr. Tallett "essentially agreed" with Mr. Keeley.

23.    Plaintiffs have claimed only that between 1992 and 1994, (1) CUSA delivered gasoline from the Philadelphia refinery to a number of New York Harbor terminals in New Jersey, including the Bayway, Linden, Carteret, Trembly Point, Sewaren, Bayonne and Perth Amboy terminals; (2) one of the customers who purchased gasoline from CUSA during this time period was Star Enterprise, which purchased gasoline from CUSA at the Carteret, Perth Amboy, Linden and Bayway terminals; and (3) Star Enterprise is alleged to have had a supply contract with the Skyline Service Center during this time period. See Ex. A-3.

## PLAINTIFFS' 56.1 STATEMENT OF MATERIAL FACTS

25.     In the Complaint filed in this matter, Plaintiffs specified that, "[t]he term "Chevron" as used in this Complaint refers to Chevron Corp. and Chevron U.S.A." (Axline Decl. Ex. 14.)

**RESPONSE**


26.     The "Chevron" Defendants filed their Master Answer jointly on behalf of Chevron U.S.A. Inc. and Chevron Corporation (f/k/a ChevronTexaco Corporation), Texaco Inc., etc. (Docket No. 2561)

**RESPONSE**


27.     Chevron U.S.A. Inc. and ChevronTexaco (n/k/a Chevron Corporation) filed a joint response to CMO 45. (Axline Decl. Ex. 8.)

**RESPONSE**


28.     Texaco Inc. responded to discovery by producing voluminous documents bate-stamped with a Chevron number. (Barnhart Decl. Ex. 7 at 2 [Objections and Responses of Texaco Inc. To Plaintiffs First Set of Interrogatories at 2].).

**RESPONSE**

29.     The "Chevron" defendants filed joint responses to discovery requests.  (Barnhart

Decl. Ex. 8 ["The Chevron Defendants' Objections and Responses to Plaintiffs First Set of

Request for Production of Documents" filed on behalf of Chevron U.S.A., Chevron Corporation,

Texaco Inc., Unocal Corporation and Kewanee Industries."]).

**RESPONSE**

30.     In May 1998, MTBE contamination was discovered in wells in the vicinity of the

Skyline station.  (Axline Decl. Ex. 1 at 10 [Aquilogic Revised Site Summary Report], Ex. 2 at 98

[Excerpts of New Jersey Site-Specific Report of M. Moreau]; and Ex. 3 at 2-1 [Draft

Remediation Investigation Report by The Louis Berger Group Inc.; Barnhart Decl. Ex. 3

[7/24/1998 Letter from J. Duerbig to J. Costello].)  The New Jersey Department of Health

sampled wells in the Oakwood Drive area, which is in the vicinity of Skyline Service Center.

Skyline is situated upgradient of the wells, and within 1,000 feet of Oakwood Drive.  (Barnhart

Ex. 3.)  Of the wells tested, one potable well exceeded Safe Drinking Water Standards and 16

wells had low levels of MTBE in them.  (*Id.*)

**RESPONSE**

31.     The 1998 contamination "likely occurred sometime between the Fall of 1984,

when the fuel station was constructed, and 1998 when contamination was discovered in private

wells." (Axline Decl. Ex. 1 at 25; Ex. 2 at 98; Ex. 3 at 2-1; Barnhart Ex. 3.)

**RESPONSE**

15

32.   A NJDEP investigation determined, and there is no contrary evidence, that Skyline was the source of MTBE contamination in the private wells.  (Axline Decl. Ex. 1 at 11, 25 [Aquilogic Revised Site Summary Report]; Ex. 3 [Louis Berger Report], and Ex. 7 at 77-78 [5/28/2013 Depo. of A. Brown].)

**RESPONSE**

33.   In July, 1998, Skyline was determined to be the source of the contamination, and no other known MTBE releases occurred in Skyline's vicinity "between the Fall of 1984 . . . and 1998 when contamination was discovered in private wells."  (Axline Decl. Ex. 1 at 11, 25; Ex. 3 at Table 1 [Louis Berger Report]; and Ex. 7 at 77-78 [5/28/2013 Depo. of A. Brown].)

**RESPONSE**

34.   MTBE-gasoline releases occurred regularly at Skyline until, at least, late 1993. (Axline Decl. Ex. 4 at -44, 48-49, 54-55, 259-261, 293-94 [8/02/11 Depo. of Joseph Costello]; Ex. 5 at 51:4, 54, 106:8 [7/20/11 Depo. of Mike Costello].)

**RESPONSE**

35.   The owner/operator of Skyline testified that prior to spill buckets being in place, he observed drivers "disconnect the hose at the fill port, take it off because it was open at that time, and just dump the effluent to the ground . . . ."  (Axline Decl. Ex. 4 at 42 [8/2/2011 Depo. of J. Costello]; Axline Decl. Ex. 2 at 98.)  The owner/operator further stated, "If the man disconnected the hose and there was still gasoline in the hose, he didn't bother to bring it over here, he would just let it sit here, drain out into the ground, shake it, rattle it, whatever he would

do, and then he'd put it back on to the truck, all right. " (Axline Decl. Ex. 4 at 48 [8/2/2011 Depo. of J. Costello].)

**RESPONSE**


36.     Skyline's MTBE-gasoline releases occurred both above and below ground, and on an ongoing basis. "Anyone familiar with gas station operations [is] aware that small gasoline spills—of cups to quarts—are relatively frequent events." Barnhart Decl. Ex. 10 at V-10. Skyline did not use spill buckets while filling its tanks until late 1993 at the earliest, and it was "common practice" for the tanker-truck drivers to spill gasoline onto the ground where it was absorbed. Axline Decl. at Ex. 4 at 42-44, 258-66, 293-94 [Depo. of J. Costello]; Ex. 5 at 51:4, 54, 106:8 [Depo. of M. Costello]. Skyline's operator also testified that customers often spilled gasoline while filling up. Axline Decl. Ex. 4 at 88 [8/2/2011 Depo. of J. Costello]; *see also* Ex. 2 at 100 [M. Moreau Site-Specific Report]. Prior to that time, gasoline was regularly "being dumped into the ground" by the drivers delivering gasoline. (Axline Decl. Ex. 4 at 48-49 [8/2/2011 Depo. of J. Costello].) Each of these releases had a straight shot to the station's groundwater. *Id.*

**RESPONSE**


37.     Spills are common during vehicle fueling activities and Joseph Costello, the owner/operator of Skyline Service Center, testified that such spills did, in fact, occur. (Axline Decl. Ex. 4 at 88 [8/2/2011 Depo. of J. Costello]; Axline Ex. 2 at 98, 100 [M. Moreau Site-Specific Report]; Barnhart Decl. Ex. 10 at V-10.)

**RESPONSE**

38.     In the November 2, 2011 report from Plaintiffs' expert Marcel Moreau, he states,

"[l]eaks from UST systems have long been recognized by petroleum marketers and were

considered 'inevitable.'"  (Barnhart Decl., Ex. 10 at III-25.)  In fact, Shell's storage system

engineer noted in 1996 that Shell's own investigation found that – in addition to leaks from tanks

themselves – "each tank fill connection, submerged turbine, and under every single island pump

or dispenser was a leak source that required containment."  (*Id.* at I-9.)

**RESPONSE**

39.     Ongoing releases at Skyline were discovered when Skyline's tanks were removed

in August 2003.  (Axline Decl. Ex. 1 at 11-12 [Aquilogic Revised Site Summary Report]; Ex. 2

at 98-99 [Report of M. Moreau].)

**RESPONSE**

40.     MTBE was found in soil samples at 49,000ppb and 160 ppb.  (Axline Decl. Ex 2

at 98, 100 [Report of M. Moreau].)  "[F]ree product was floating on the groundwater that

infiltrated the base of the excavation," and 429 tons of petroleum -- and fuel-impacted soil was

excavated and transported off-site for disposal, as well approximately 725-gallons of gasoline

and water mixture . . . . was vacuumed from the extraction.  (Axline Decl. Ex. 1 at 11-12, 25

[Revised Aquilogic Site Summary Report]

**RESPONSE**

**41.**     In 2004, NJDEP-mandated testing found MTBE in 29 residential potable wells in the Skyline station's vicinity.  (Axline Decl. Ex. 1 at 13 [Revised Aquilogic Site Summary Report].)  Some of those wells could not be saved – eventually, their owners were forced to destroy them and connect to a municipal supply.  (Axline Decl. Ex. 7 at 349-350 [5/29/13 Depo. of A. Brown.])

**RESPONSE**


**42.**     From 1992 through 1994, Chevron sold more than 9,000,000 barrels (one barrel is the equivalent of 42 U.S. gallons) of MTBE gasoline into New Jersey through New York Harbor's Carteret, Perth Amboy, Linden/Bayway terminals.  (Axline Decl. Ex. 8 at 2 [Defendant Chevron U.S.A. Inc. and ChevronTexaco Corporation's CMO 45 Responses]; Wallace Decl. Ex. 1-C at ChevMDL1358_NJDEP-C00000000119-120]; Barnhart Ex. 2 at 58 [6/19/07 Depo. of Bruce Beyaert].)

**RESPONSE**


**43.**     Chevron identified terminals and approximate barrels of MTBE gasoline delivered to the following terminals:

- The Amoco Terminal at 760 Roosevelt Ave., Carteret, NJ (162,647 in 1993); 237,350 in 1994);
- The Bayway Terminal at Linden, NJ (255,156 in 1993);
- The Chevron Terminal at Gulfport, NY (25,000 in 1993; 59,999 in 1994);
- CITGO terminal at Linden, NJ (1,044,729 in 1992; 1,394,652 in 1993; 144,915 in 1994).

(Barnhart Decl. Ex. 4 [Expert Report of Bruce Burke at 92-93].)

**RESPONSE**

19

44.     Documents produced by Chevron in discovery show Chevron sales in New Jersey, during the applicable time period, was over 5,000,000 gallons of MTBE gasoline to Star Enterprises. (Wallace Decl. Ex. 1-A [ChevMDL1358_NJDEP-C00000000469-471 (with header and notations added)].)  The gasoline was supplied to Star Enterprises by Chevron's supplier New Jersey S&D Marine, Supplier #3983793, at the Bayway and Linden exchange terminals. (*Id.*)

**RESPONSE**


45.     Chevron's documents evidence Chevron's use of "New Jersey S&D Marine" Supplier #3983793, for "Chevron U.S.A. Inc." sales to New Jersey.  (Wallace Decl. Ex. 1-C [ChevMDL1358_NJDEP-C000000004119-120 (with header and notations added].)  A Chevron representative testified that S&D refers to Chevron's supply and distribution.  (Barnhart Decl. Ex. 2 at 58.)

**RESPONSE**


46.     Chevron's documents identify Star Enterprises as a customer with eight separate accounts at four terminals, including accounts at the Bayway and Linden exchange terminals. (Wallace Decl. Ex. 1-B [ChevMDL1358_NJDEP-C00000000115-116 (with header and notations added).)

**RESPONSE**


47.     Chevron's documents identify sales of MTBE gasoline to Star Enterprises as follows:
- On November 1, 1993, Chevron sold to Star Enterprises 2,105,811 gallons of gasoline that was destined for the Bayway terminal in New Jersey;

20

- On December 1, 1993, Chevron sold 1,056,783 gallons of gasoline to Star Enterprises that was destined for the Bayway terminal in New Jersey;
- On December 1, 1993, Chevron sold 2,100,000 gallons of gasoline to Star Enterprises that was destined for the Linden terminal in New Jersey.

(Wallace Decl. ¶¶ 3-11 & Ex. 1 (1-A, 1-B and 1-C).

**RESPONSE**


48.     The Linden/Bayway exchange terminals in Linden, New Jersey, are

approximately 40 miles from Skyline Service Center.  (Wallace Decl. Ex. 2.)

**RESPONSE**


49.     Star Enterprises was Skyline Service Center's sole supplier between 1992 and

1994.  (Axline Decl. Ex. 6; Ex. 4 at 55.)

**RESPONSE**


50.     Between 1992 and 1994, Star Enterprises supplied approximately one million

gallons of gasoline annually to Skyline.  (Axline Decl. Ex. 4 at 55:11-13, 99 [Depo. of J.

Costello]; Barnhart Decl. Ex. 12.)

**RESPONSE**


51.     Star Enterprises delivered gasoline to Skyline 10-11 times each month.  (Axline

Decl. Ex. 4 at 55:11-13 [Depo. of J. Costello].)

**RESPONSE**

52.     Chevron did not produce in discovery any documents to show that the millions of gallons of gasoline Star Enterprises delivered to Skyline between 1992 and 1994 came from any source other than the 9,000,000 barrels of gasoline that Chevron sold to its New Jersey customers, including Star Enterprises.  (Axline Decl. Ex. 4 at 55:11-13 [Depo. of J. Costello]; Ex. 6; Ex. 8 at 2 [Defendant Chevron U.S.A. Inc. and ChevronTexaco Corporation's CMO 45 Responses] and Wallace Decl. Ex. 1).

**RESPONSE**


53.     The Court entered Plaintiffs' proposed CMO 107 on December 27, 2012, identifying "Chevron" as a defendant at the Skyline Service Center.  (Axline Decl. Ex. 11.)

**RESPONSE**


54.     At the December 5, 2012, Status Conference, Defendants agreed with and accepted Plaintiffs' proposed CMO 107, which identifies the trial sites and corresponding defendants.  (Barnhart Decl. at Ex. 91-92 (12/05/12 Trans. of Status Conference).)

**RESPONSE**


55.     In confirming correspondence dated 12/21/12, Defendants again agreed with and accepted Plaintiff's proposed CMO 107.  (Axline Decl. at Ex. 13 (12/21/12 E-mail from Lisa Gerson to Stephen Schweizer).)

**RESPONSE**

56.     Plaintiffs Responses to Defendants' Contention Interrogatories included the contention that Texaco supplied the Skyline Service Center from 1991 to 1997, that MTBE was found in wells near Skyline Service Center in 1998, and that Skyline was the source of contamination.  (Axline Decl. Ex. 1 at 9.)

**RESPONSE**

Dated this 2nd day of December, 2013.

Respectfully submitted,

MICHAEL AXLINE, State Bar #229840
Attorneys for Plaintiffs
MILLER, AXLINE & SAWYER
A Professional Corporation
1050 Fulton Avenue, Suite 100
Sacramento, CA  95825-4225
Telephone:  (916) 488-6688
Facsimile:  (916) 488-4288

*Special Counsel to the Attorney General*

JOHN J. HOFFMAN
Acting Attorney General

_____/S/_____
GWEN FARLEY
Acting Attorney General
25 Market Street
P.O. Box 093
Trenton, NJ 08625-0093
Telephone:  (609) 984-2845