**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------- X

IN RE: METHYL TERTIARY BUTYL            :
ETHER ("MTBE") PRODUCTS                  :
LIABILITY LITIGATION                     :
------------------------------------------------- :

This document relates to:                :
                                         :
*Commonwealth of Puerto Rico v. Shell Oil*  :
*Co. et al.*, 07 Civ. 10470              :
                                         :
------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/30/13

**OPINION AND ORDER**

**Master File No. 1:00-1898**
**MDL 1358 (SAS)**
**M21-88**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

**I.    INTRODUCTION**

This is a consolidated multi-district litigation ("MDL") relating to

contamination — actual or threatened — of groundwater from various defendants'

use of the gasoline additive methyl tertiary butyl ether ("MTBE") and/or tertiary

butyl alcohol, a product formed by the breakdown of MTBE in water.  In this case,

the Commonwealth of Puerto Rico ("the Commonwealth") alleges that defendants'

use and handling of MTBE has contaminated, or threatened to contaminate

groundwater within its jurisdiction.  Familiarity with the underlying facts is

presumed for the purposes of this Order.

Currently before the Court are two motions for summary judgment

brought by Vitol, Inc. and Vitol, S.A. (collectively "Vitol Defendants"), and by

Idemitsu Apollo Corporation ("IAC"), on the ground that the Commonwealth's

claims are time-barred.  For the reasons stated below, the motions are GRANTED.

## II.   BACKGROUND[1]

On June 12, 2007, the Commonwealth filed its initial complaint

against gasoline suppliers for supplying or trading in gasoline products containing

MTBE.[2]  On October 31, 2007, the case was transferred to this Court as part of the

MTBE MDL.  On December 3, 2012, the Commonwealth filed its Third Amended

Complaint ("TAC"), adding several defendants, including the Vitol Defendants

and IAC as "Refiner/Supplier Defendants."[3]  The TAC alleges that these

defendants "refined, marketed and/or otherwise supplied (directly or indirectly)

gasoline and/or other products containing MTBE that each such Defendant knew

or should have known would be delivered into Commonwealth."[4]  The TAC

alleges five causes of action against the Vitol Defendants and IAC on grounds of

---

[1]     The facts recited below are drawn from the pleadings, the parties' Local Civil Rule 56.1 Statements, the affidavits submitted in connection with this motion, and the exhibits attached thereto.  These facts are undisputed unless otherwise noted.  Where disputed, the facts are viewed in the light most favorable to the nonmoving party.  *See Beard v. Banks*, 548 U.S. 521, 529-30 (2006).

[2]     *See* IAC's Rule 56.1 Statement of Material Facts in Support of Motion for Summary Judgment ("IAC 56.1") ¶ 1.

[3]     *See* Third Amended Complaint ("TAC") ¶¶ 21, 66, 69, 70.

[4]     *Id.* ¶ 21.

(1) strict products liability for defective design and failure to warn; (2) public nuisance; (3) trespass; (4) negligence; and (5) violation of Puerto Rico Environmental Public Policy Act ("EPPA"), Water Pollution Control Act, and various underground storage tank control regulations.[5]

On July 16, 2013, I dismissed Counts I through V of the TAC alleged against Defendants Trammo Petroleum, Inc. and Trammo Caribbean, Inc. ("Trammo Defendants") as time-barred.[6]  On August 2, 2013, I denied the Commonwealth's Motion for Reconsideration.[7]

### A.    Vitol Defendants

Vitol, Inc. was formed in Delaware on October 16, 2006.[8]  On November 15, 2006, Vitol, Inc. filed an application for a certificate of authorization to do business as a foreign corporation in the Commonwealth.[9]  The

---

[5]    *See id.* ¶¶ 96–156.

[6]    *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, No. 07 Civ. 10470, 2013 WL 3733057, at *13 (S.D.N.Y. July 16, 2013).

[7]    *See  In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, No. 07 Civ. 10470, 2013 WL 4008632, at *3 (S.D.N.Y. Aug. 2, 2013).

[8]    *See* Vitol Defendants' Statement of Material Facts in Support of Motion for Summary Judgment ("Vitol 56.1") ¶ 10.

[9]    *See* Affidavit of John Zimmerman (Vitol's Vice President) in Support of Vitol Defendants' Motion for Summary Judgment ("Zimmerman Aff.") ¶ 2.

3

application listed "purchase and sale of petroleum products" as its stated purpose.[10]

In its application, Vitol, Inc. reported one thousand dollars in assets.[11]  In January

2007, the Puerto Rico Department of State issued the Certificate of Authorization,

and Vitol, Inc. began its operations.[12]  Vitol, Inc. has never owned, operated, or

leased an underground storage tank in the Commonwealth.[13]

Vitol, S.A. is an international trading company.[14]  In December 2006,

Vitol, S.A. closed its branch office in Houston, Texas and discontinued its business

in North America.[15]  On May 18, 1994, Vitol, S.A. filed an application for a

certificate of authorization to do business as a foreign corporation in the

Commonwealth.[16]  The application stated that Vitol, S.A.'s purpose is "to

purchase, distribute, and sell all kinds of fuel, refine oil products of any kind and

similar products.  The Company may also participate in industrial and commercial

---

[10]      Vitol, Inc. Certificate, Ex. A to Zimmerman Aff., at 1.

[11]      *See id.*

[12]      *See* Zimmerman Aff. ¶¶ 2-3.

[13]      *See* Vitol 56.1 ¶ 14.

[14]      *See id.* ¶ 15.

[15]      *See id.* ¶ 16.

[16]      *See* Affidavit of David Fransen (Managing Director of Vitol, S.A.) in
Support of Vitol Defendants' Motion for Summary Judgment ("Fransen Aff.") ¶ 4.

enterprises."[17]  On May 24, 1994, the Puerto Rico Department of State issued a

Certificate of Authority to Vitol, S.A.[18]  Vitol, S.A. has never owned, operated, or

leased an underground storage tank in Puerto Rico at any time.[19]

The Energy Information Administration ("EIA")[20] website lists

gasoline import activities by Vitol, S.A. in May 2003.[21]

**B.    IAC**

IAC was involved in the distribution of gasoline in the

Commonwealth from 1992 through 2001.[22]  From 1992 until 1997, IAC was a

---

[17]    *Id.*

[18]    *See* Vitol, S.A. Certificate, Ex. A to the Fransen Aff., at 3.

[19]    *See* Vitol 56.1 ¶ 19.

[20]    The EIA is a federal government agency responsible for collecting, analyzing, and disseminating data on energy sources, including natural gas.  *See id.* ¶ 20.  Since 1995, the EIA website has reported monthly data on imports of individual oxygenates, including MTBE, by port of entry.  *See id.* ¶¶ 21-22.

[21]    *See* Screenshot from EIA website, Ex. A to the Affidavit of David Langlois (Vitol's counsel) ("Langlois Aff."), at 1.  The Commonwealth disputes that any information was available on the website prior to September 2013.

[22]    *See* IAC's Response to Plaintiff's First Set of Interrogatories, Ex. A to the Affidavit of David Lutz (Vitol's counsel) in Support of IAC's Motion for Summary Judgment ("Lutz Aff."), pp. 1-5.  Although the Commonwealth objects that IAC's interrogatory response is neither sworn to nor signed as required by Rule 33, the same information is found in the Commonwealth's own interrogatory response.  *See* Plaintiff's Response to IAC's First Set of Interrogatories and Requests for Production, Ex. B to Lutz Aff., at No. 1.  Thus, the Court may rely

gasoline wholesaler and owner of 131 service stations in the Commonwealth.[23] From 1992 to 2001, IAC purchased over ten million barrels of gasoline from various suppliers or refiners.[24]

By its own admission, the Commonwealth first learned of MTBE contamination at fourteen sites linked to IAC between March 1998 and May 2008.[25]  In response to the Commonwealth's 2008 interrogatories, ConocoPhillips stated that IAC was a gasoline wholesaler in the Commonwealth.[26]  Additionally, ConocoPhillips noted that it had sold IAC close to eight million barrels of gasoline from 1992 to 2001, some of which may have contained MTBE.[27]

---

upon the information.  *See IBM v. BGC Partners, Inc.*, No. 10 Civ. 128, 2013 WL 1775367, at *8 n.8 (S.D.N.Y. Apr. 25, 2013) ("If a party relies upon an opposing party's answers to interrogatories, the answers are admissible as statements of a party opponent . . .") (internal citation omitted).

[23]    *See* Plaintiff's Response to IAC's First Set of Interrogatories and Requests for Production, at No. 1.

[24]    *See id.*

[25]    *See id.* at No. 8.  The Commonwealth objects that its response does not indicate how much MTBE was detected at each site, who detected it, or when the Commonwealth first attributed each site to IAC.  *See* Plaintiff's Opposition to IAC's Rule 56.1 Statement of Material Facts in Support of Motion for Summary Judgment ("Pl. Opp. to IAC 56.1") ¶¶ 23-27.

[26]    *See* Defendant ConocoPhillips' Responses to Plaintiff's First Set of Interrogatories, Ex. D to Lutz Aff., at No. 5, Ex. A.

[27]    *See id.*

## III.   LEGAL STANDARD

### A.    Summary Judgment

Summary judgment is appropriate "only where, construing all the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in that party's favor, there is 'no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law.'"[28]   "A genuine dispute exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[29]   "A fact is material if it might affect the outcome of the suit."[30]

"The moving party bears the burden of establishing the absence of any genuine issue of material fact."[31]   To defeat a motion for summary judgment, the non-moving party "'must do more than simply show that there is some

---

[28]    *Rivera v. Rochester Genesee Regional Transp. Auth.*, 702 F.3d 685, 692 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)) (some quotation marks omitted).

[29]    *Finn v. N.Y. State Office of Mental Health-Rockland Psychiatric Ctr.*, 489 Fed. App'x 513, 514 (2d Cir. 2012) (quotation marks omitted).

[30]    *Windsor v. United States*, 699 F.3d 169, 192 (2d Cir. 2012).

[31]    *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (citing *Celotex Corp. Catrett*, 477 U.S. 317, 322 (1986)).  *Accord Powell v. Donahoe*, 519 Fed. App'x 21, 22 (2d Cir. 2013).

metaphysical doubt as to the material facts,'"[32] and "'may not rely on conclusory allegations or unsubstantiated speculation.'"[33]

In deciding a motion for summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."[34] "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"[35]

## B.   Puerto Rico Law

### 1.   Statute of Limitations for Tort Claims

In Puerto Rico, Article 1802 of the Civil Code, L.P.R.A.[36] section 5141, governs obligations that "arise from fault or negligence."[37] "The statute of

---

[32]     *Gioia v. Forbes Media LLC*, 501 Fed. App'x 52, 54 (2d Cir. 2012) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[33]     *Robinson v. Allstate Ins. Co.*, 508 Fed. App'x 7, 9 (2d Cir. 2013) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).

[34]     *Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.*, 677 F.3d 109, 119 (2d Cir. 2012).

[35]     *Redd v. New York Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

[36]     I use the L.P.R.A. because it is readily available in translation.

[37]     *Fraguada Bonilla v. Hospital Auxilio Mutuo*, 186 D.P.R. 365, 2012 WL 3655336 (cert. translation by Juan E. Segarra, USCII/translator), Ex. E to Lutz

8

limitations for these actions is one year as provided by Art. 1868 of the Civil Code, 31 L.P.R.A. sec[tion] 5298."[38]   In Puerto Rico, the limitations period runs from the time the aggrieved party has "notice of the injury, plus notice of the person who caused it."[39]   "This does not require actual knowledge; it is enough that the would-be plaintiff had notice that would have led a reasonable person to investigate and so uncover the needed information."[40]   The one year statute of limitations for a continuous tort "begins to run when the tortious conduct ceases, not when it first takes place."[41]

### 2.      Tolling of the Statute or Limitations

In 1992, the Supreme Court of Puerto Rico held that plaintiffs could add jointly and severally liable defendants to a complaint that was timely filed.[42]

---

Aff., at 3. IAC has supplied a stipulated certified translation of *Fraguada* that I cite as: "*Fraguada* at [page in certified translation]."

[38]      *Id.*

[39]      *Rodriguez-Suris v. Montesinos*, 123 F.3d 10, 13 (1st Cir. 1997) (quotation marks and citations omitted).

[40]      *Lopez-Flores v. Cruz-Santiago*, 526 F. Supp. 2d 188, 190 (D.P.R. 2007) (citing *Rodriguez-Suris,* 123 F.3d at 14–17) (citations omitted)).

[41]      *Torres v. Hosp. San Cristobal*, 831 F. Supp. 2d 540, 544 (D.P.R. 2011) (citations omitted).

[42]      *See Fraguada* at 4 (citing *Arroyo v. Hosp. La Concepcion*, 130 D.P.R. 596, 605 (1992)).

In explaining the 1992 decision, the *Fraguada* court stated:

> [W]e decided [in *Arroyo v. Hosp. La Concepcion*] that timely filing of a complaint by an injured party against a joint and several co-tortfeasor automatically tolls the statute of limitations against all of the other co-tortfeasors. We stated that the alleged joint and several co-tortfeasors can be incorporated into the litigation through an amendment to the complaint or a third-party complaint, and that claimant merely must allege well and sufficiently that the new defendant is jointly and severally liable for the harm.[43]

In 2008, the Supreme Court expanded the reach of the *Arroyo* rule, holding that it allowed a plaintiff to add a joint and severally liable defendant who would otherwise be barred by the statute of limitations even though the "plaintiff knew beforehand the identity and elements necessary to exercise his cause of action against [that defendant]."[44]

In 2012, the Supreme Court of Puerto Rico abrogated *Arroyo* and its progeny, holding that "the timely filing of a complaint against a supposed co-tortfeasor does not toll the statute of limitations against the rest of the alleged co-tortfeasors."[45] In considering the retroactivity of the new rule, the court decided

---

[43]    *Id.*

[44]    *Id.* at 4 (citing *Garcia Perez v. Corporation Service Mujer*, 174 D.P.R. 138, 155 (2008)).

[45]    *Id.* at 9-10.

that it should have prospective effect.[46]  The court reasoned:

> The foregoing [decision that *Fraguada* should have prospective effect] is based on the fact that the rule is a new rule and so applying it to this case would have substantially unfair results for the respondents, who relied on the prior rule that has been set aside by the new rule that we are establishing today.  Public policy and social considerations have made us decide that this rule shall have prospective effects, since the purpose sought is to award fair and equitable relief resulting in a better social coexistence.[47]

The court concluded by stating that, "[A]ll causes of action filed according to Art. 1802 of the Civil Code [] shall be adjudicated in accordance with the rules established herein."[48]  Thus, the *Fraguada* rule should apply to cases filed after August 13, 2012, the date of the court's opinion.[49]

## IV.    DISCUSSION

### A.    Notice of Vitol Defendants

In support of their motion, the Vitol Defendants offer the following documents:[50] (1) a 2006 certificate authorizing Vitol, Inc. to do business in Puerto

---

[46]     *See id.* at 11.

[47]     *Id.*

[48]     *Id.* at 12.

[49]     *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab.*, 2013 WL 4008632, at *2.

[50]     I take judicial notice of these documents pursuant to Federal Rule of Evidence 201.  *See In re Brooklyn Navy Yard Asbestos Litig.*, 971 F. 2d 831, 839

Rico,[51] (2) a 1994 certificate authorizing Vitol, S.A. to do business in Puerto Rico,[52] and (3) an EIA website report stating that Vitol, S.A. was importing gasoline into Puerto Rico as early as May 2003.[53]  The certificates — official documents issued by the Puerto Rico Department of State — are substantially the same as the certificate issued to Trammo Operating in 2002.[54]  As with the Vitol Defendants and IAC, the Commonwealth first asserted claims against the Trammo Defendants in 2012 when it filed the TAC.[55]  In granting the Trammo Defendants' motion to dismiss, this Court held that "knowledge of Trammo Operating's business is imputed to the Commonwealth" because a reasonable investigation by

---

(2d Cir. 1992) ("[A]ny facts subject to judicial notice may be properly considered in a motion for summary judgment.") (internal citation omitted); *American Cas. Co. of Reading, PA v. Lee Brands, Inc.*, No. 05 Civ. 6701, 2010 WL 743839, at *4 (S.D.N.Y. Mar. 3, 2010) (taking judicial notice of business documents that "show evidence of having been filed with the California Secretary of State"); *Magnoni v. Smith & Laquercia, LLP*, 701 F. Supp. 2d 497, 501 (S.D.N.Y. 2010) ("It is generally proper to take judicial notice of articles and websites published on the Internet.") (internal citations and quotation marks omitted).

[51]     *See* Vitol, Inc. Certificate.

[52]     *See* Vitol, S.A. Certificate.

[53]     *See* Screenshot from EIA website.

[54]     *See* Trammo Certificate, Ex. 3 to Declaration of William E. Markstein (former Assistant Secretary at Trammo), Dkt. No. 209.

[55]     *See* TAC ¶¶ 67-68.

the Commonwealth would have revealed these certificates.[56]  Thus, the

Commonwealth had actual knowledge that MTBE caused an injury and

constructive knowledge of the Trammo Defendants as alleged tortfeasors when it

filed its initial Complaint in 2007.[57]  Applying the *Fraguada* rule, I dismissed the

Commonwealth's suit against the Trammo Defendants as time-barred.[58]

　　　　The Commonwealth offers no compelling reason why I should not

apply the law of the case here.[59]  The Vitol Defendants present the same persuasive

evidence as the Trammo Defendants and more.  The Commonwealth argues that

Vitol Inc.'s certificate — which lists its assets as only $1000 — does not prove that

Vitol Inc. was actually doing business.[60]  But Trammo Operating's stated assets

were the same.[61]  By issuing the certificates, the Commonwealth had notice that the

---

[56]    *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 2013
WL 3733057, at *13.

[57]    *See id.*

[58]    *See id.*

[59]    *See Jackson v. New York State*, 523 Fed. App'x 67, 69 (2d Cir. 2013)
(The law of the case doctrine "counsels a court against revisiting its prior rulings in
subsequent stages of the same case absent cogent and compelling reasons such as
an intervening change of controlling law, the availability of new evidence, or the
need to correct a clear error or prevent manifest injustice.").

[60]    *See* Plaintiff's Opposition to Motion for Summary Judgment by Vitol
Defendants ("Pl. Opp. to Vitol") at 7.

[61]    *See* Trammo Certificate at 2.

Vitol Defendants could be importing gasoline.  Thus, the certificates are sufficient to connect the Vitol Defendants to the Commonwealth's injury.

Moreover, a review of the EIA website reports would have revealed that Vitol S.A. was importing gasoline in Puerto Rico as early as 2003.[62]  The Commonwealth argues that the EIA reports are inadmissible, improperly authenticated, and irrelevant if, in fact, they were not publicly available before counsel for Vitol downloaded them in September 2013.[63]  The Commonwealth is incorrect.  Courts routinely take judicial notice of data on government websites because it is presumed authentic and reliable.[64]  A search for the relevant EIA reports using an internet archive shows that they were available at least as early as November 2009.[65]  As such, I take judicial notice of the EIA reports.  Thus, the

---

[62]     *See* Screenshot from EIA website at 1.

[63]     *See* Pl. Opp. to Vitol at 5-6.

[64]     *See Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003) (concluding that a district court may take judicial notice of information on an official government website); *Kramer v. Time Warner Inc.,* 937 F.2d 767, 774 (2d Cir. 1991) (holding that district courts may take judicial notice of the contents of certain public records); *Brooklyn Heights Ass'n, Inc. v. National Park Service*, 777 F. Supp. 2d 424, 432 n.6 (E.D.N.Y. 2011) (taking judicial notice of a city park website).

[65]     *See* Vitol Defendants' Reply Memorandum of Law in Support of Motion for Summary Judgment and Objection to Summary Judgment Evidence ("Vitol Reply") at 4 (citing website known as the "Internet Archive").  Courts have taken judicial notice of the contents of internet archives.  *See Juniper Networks,*

-14-

Commonwealth's claims against the Vitol Defendants are barred by the one year statute of limitations because the Commonwealth had sufficient knowledge of both the alleged injury and the identity of the alleged tortfeasors as of 2007.

**B.    Notice of IAC**

In support of its motion, IAC offers: (1) the Commonwealth's own admission that it learned of MTBE contamination at fourteen sites attributed to IAC between March 1998 and May 2008;[66] and (2) ConocoPhillips' 2008 interrogatory response, stating that IAC was a gasoline wholesaler in the Commonwealth.[67]  These documents show that the Commonwealth had knowledge of the alleged injury and of the identity of the alleged tortfeasor since at least 2008. Thus, as with the Vitol Defendants, the one year statute of limitations bars the Commonwealth's action against IAC, which was initiated four years too late.

The Commonwealth argues that its interrogatory response reveals

---

*Inc. v. Shipley,* 394 Fed.  App'x 713, at *1 (Fed. Cir. 2010) (indicating that the Internet Archive may be an appropriate source for judicial notice); *Martins v. 3PD, Inc.*,  No. 11 Civ. 11313, 2013 WL 1320454, at *16 n.8 (D. Mass. Mar. 28, 2013) (taking judicial notice of "the various historical versions of a website available on the Internet Archive at Archive.org as facts readily determinable by resort to a source whose accuracy cannot reasonably be questioned").

[66]    *See* Plaintiff's Response to IAC's First Set of Interrogatories and Requests for Production, at No. 8.

[67]    *See* Defendant ConocoPhillips' Responses to Plaintiff's First Set of Interrogatories, at No. 5, Ex. A.

only that it detected some *de minimis* amount of MTBE, which by itself fails to establish injury.[68]  The Commonwealth relies on California and New York MTBE cases for support.[69]  In Puerto Rico, however, the limitations period runs from the time the aggrieved party has "notice of the injury, plus [actual or constructive] notice of the person who caused it."[70]  Here, the Commonwealth clearly knew of the MTBE contamination by 2007 when it filed its Complaint.  Moreover, the Commonwealth knew that IAC was a gasoline wholesaler in November 2008 when it received the ConocoPhillips interrogatory response.  Despite the Commonwealth's contentions, there was nothing ambiguous about ConocoPhillips' identification of IAC.[71]  Because the Commonwealth was aware of both the injury and IAC's identity as an alleged tortfeasor at least four years before bringing suit, the claims are time-barred as well.

---

[68]    *See* Plaintiff's Opposition to Motion for Summary Judgment by Defendant IAC ("Pl. Opp. to IAC") at 10-11.

[69]    *See id.* (citing *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 475 F. Supp. 2d 286, 293 (S.D.N.Y. 2006) (applying California law); *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 725 F.3d 65, 112 (2d Cir. 2013) (applying New York law)).

[70]    *Lopez-Flores*, 526 F. Supp. 2d at 190 (citing *Rodriguez-Suris,* 123 F.3d at 14–17 (internal citations omitted)).

[71]    *See* Defendant ConocoPhillips' Responses to Plaintiff's First Set of Interrogatories, at No. 5, Ex. A.

## C.     Applicability of the Statute of Limitations

Nevertheless, the Commonwealth contends that its claims are exempt from the statute of limitations as a matter of law.[72]  *First*, the Commonwealth argues that Puerto Rico's law of "prescription" enables it to bring claims concerning public property at any time.[73]  Under Puerto Rico law, the term "prescription" has dual meanings.  Prescription can refer to the statute of limitations.[74]  But in the real property context, prescription refers to acquiring title by adverse possession.[75]  The Commonwealth relies on the *nullum tempus ocurrit regi* doctrine[76] — a common law doctrine adopted in Puerto Rico — which originally meant that prescription, or limitations periods, do not run against the government.[77]  Although courts apply the doctrine narrowly today, the

---

[72]      *See* Pl. Opp. to IAC at 2-10; Pl. Opp. to Vitol at 1-4.

[73]      *See* Pl. Opp. to Vitol at 1-2.

[74]      *See U.S. Fidelity and Guar. Co. v. Maldonado-Lopez*, No. 11 Civ. 1179, 2012 WL 262730, at *5 (D.P.R. Jan. 30, 2012) (referring to the "period of prescription (statute of limitations) for [] an action").

[75]      *See Garcia-Monagas v. W. Holding Co. Inc.*, No. 07 Civ. 1217, 2009 WL 483146, at *15 (D.P.R. Feb. 25, 2009) (stating that "prescription" under Puerto Rico law is "analogous to the U.S. common law concept of adverse possession").

[76]      In English, the phrase means "No time runs against the king."

[77]      *See* Pl. Opp. to Vitol at 2-3 (citing *People v. Dimas, et al.*, 18 P.R.R. 1061 (1912)).

Commonwealth argues that *nullum tempus* still applies to its claims against the Vitol Defendants and IAC.[78]

However, the cases cited by the Commonwealth are inapposite. *Ayala*, *Commonwealth v. Superior Court*, and *People v. Dimas* all involve adverse possession claims made *against* the Commonwealth. For example, *Ayala* holds the Commonwealth is almost never immune from adverse possession claims.[79] But the cases say nothing about *the statute of limitations* for tort claims brought *by* the Commonwealth.[80]

*Second*, the Commonwealth argues that the statute of limitations does not apply to claims brought by the Commonwealth in its sovereign capacity.[81] The Commonwealth relies on non-binding federal cases that discuss either (1) general

---

[78]   *See id.* at 3 (citing *Ayala v. Puerto Rico Land Auth.*, 116 D.P.R. 337, 16 P.R. Off. Trans. 414, 419 (1985); *Commonwealth v. Superior Court*, 97 P.R.R. 629, 655-56 (1969)).

[79]   *See Ayala*, 16 P.R. Off. Trans. at 423.  The one exception relates to the adverse possession of the Commonwealth's insular wastelands.  *See id.*

[80]   Despite the Commonwealth's invitation, I decline to read these cases — which explicitly involve adverse possession — to apply to the limitations context.  *See Kathios v. General Motors Corp.*, 862 F.2d 944, 949 (1st Cir. 1988) ("Our function is not to formulate a tenet which we, as free agents, might think wise, but to ascertain, as best we can, the rule that the state's highest tribunal would likely follow.").

[81]   *See* Pl. Opp. to IAC at 6-9.

principles of sovereign immunity; or (2) the application of *nullum tempus* under

federal law and certain states' laws.[82]

But sovereign immunity is not relevant because the Commonwealth

is not being sued.  Moreover, none of the cases addressing *nullum tempus* apply

Puerto Rico law.  Some hold that the statute of limitations does not bar the federal

government's suit unless Congress expressly so states.[83]  Others hold that the

statute of limitations will not bar a suit by a state that applies *nullum tempus*.[84]

However, the question is whether *Puerto Rico* applies *nullum tempus*

in the limitations context.  It does not.[85]  Puerto Rico's civil code provides that the

statute of limitations shall run against "all kinds of persons."[86]  Case law confirms

---

[82]     *See id.*

[83]     *See id.* at 6 (citing, *e.g.*, *Guaranty Trust Co. of New York v. United States*, 304 U.S. 126, 132-33 (1938); *United States v. Banks*, 115 F.3d 916, 919 (11th Cir. 1997); *United States v. Telluride Co.*, 146 F.3d 1241, 1244 (10th Cir. 1998)).

[84]     *See id.* at 7 (citing *District of Columbia v. Owens-Corning Fiberglas Corp.*, 572 A.2d 394, 403 (D.C. 1989)).

[85]     *See Ayala*, 16 P.R. Off. Trans. at 424-25 (holding that "the *nullum tempus* doctrine does not apply beyond [] Art[icle] 9 of the Political Code," which allows for the adverse possession of Commonwealth wastelands).

[86]     31 L.P.R.A. § 5243.  An exception is made for minors and the mentally disabled.  *See* 32 L.P.R.A. § 254.

that statutes of limitations apply to suits by the Commonwealth.[87]

Finally, the Commonwealth argues that, if nothing else, its claims for abatement and its claims under the EPPA should survive.[88]   This argument is unavailing.   First, the Commonwealth's argument that the limitations period begins only once abatement is complete is a repackaging of its continuing harm argument, which has been twice rejected by this Court.[89]   In Puerto Rico, a defendant's last act triggers the statute of limitations.[90]   To toll the limitations period, the Commonwealth must prove "ongoing unlawful conduct, not a continuing harmful effect."[91]   The Commonwealth does not allege ongoing

---

[87]      See, e.g., Puerto Rico Ports Auth. v. P.M.J. Motors S.E., 916 F. Supp. 115, 117 (D.P.R. 1996) (applying statute of limitations to action by Puerto Rico Ports Authority); Municipality De Cayey v. Soto Santiago, 131 D.P.R. 304, 322-23 (1992) (holding that applicable statute of limitations runs against municipality's action to recover misappropriated funds).

[88]      See Pl. Opp. to Vitol at 13-14; Pl. Opp. to IAC at 9-10; 12-15.

[89]      See id. at *12; In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig, 2013 WL 4008632, at *2.

[90]      See Bonilla v. Trebol Motors Corp., 913 F. Supp. 655, 659-60 (D.P.R. 1995) (citation omitted).

[91]      M.R. (Vega Alta), Inc. v. Caribe Gen. Elec. Prods., Inc., 31 F. Supp. 2d 226, 240 (D.P.R. 1998) (emphasis added) ("[P]ollutants themselves are not [d]efendants [and] their constant action . . . is not a continuous action on the part of the [d]efendants.").

conduct, only that abatement is not complete.[92]

   *Second,* this Court has already found that the one year-statute of limitations applies to Court V of the TAC, which encompasses the EPPA claim.[93] Nevertheless, the Commonwealth argues that its EPPA claim should not be subject to any limitations period.[94]  The Supreme Court of Puerto Rico has held that where a statute is silent as to its limitations period, a court should borrow from analogous

---

[92]    Although the District Court of Puerto Rico once read *Vega Alta* to apply to abatement, it admitted in the same case that "[N]o Puerto Rico Supreme Court case squarely addresses the issue" [of whether the tolling abatement doctrine should extend to toxic spills].  *Marrero Hernandez v. Esso Standard Oil De Puerto Rico, Inc.*, No. 03 Civ. 1485,  2005 WL 1213664, at *3 (D.P.R. May 20, 2005) ("*Marrero I*"), *judgment vacated in part on reconsideration*, 2005 WL 1653736 (D.P.R. July 13, 2005) ("*Marrero II*").

[93]    *See  In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 2013 WL 3733057 at *13 (granting Peerless and Trammo Defendants' motions to dismiss Counts I through V of the TAC as time-barred).

[94]    *See* Pl. Opp. to IAC at 12-15.  Alternatively, the Commonwealth asks the Court to apply Article 1864, which employs a fifteen year limitations period where no other statute is applicable.  Because this case involves neither a pre-existing relationship nor a breach of contract, Article 1864 does not apply.  *See Cayey*, 131 D.P.R. at 312-13.

-21-

statutes.[95]  Here, the EPPA claim involves the tort of property damage.[96]  Thus, the

claim is governed by the one year statute of limitations under Article 1802, the

most analogous statutory provision.[97]  Like the other claims, it is time-barred.

## V.   CONCLUSION

For the foregoing reasons, both motions are GRANTED.  The Clerk

of the Court is directed to close these motions (Doc. Nos. 332 and 342).


SO ORDERED:


Shira A. Scheindlin
U.S.D.J.


Dated:        New York, New York
              December 30, 2013

---

[95]     *See Maldonado Vega v. Russe Santiago*, 153 D.P.R. 342, 347-48
(2001); *Suárez Ruiz v. Figueroa Colón*, 145 D.P.R. 142, 148 (1998).

[96]     *See Marrero I*, 2005 WL 1213664, at *2 (applying the one-year
limitations period under Article 1802 to alleged violations of the EPPA because the
damages were "the same as those caused by a common law breach of duty" given
that "[b]oth instances ultimately involve a tort.").

[97]     The Commonwealth argues the prescription period for its EPPA claim
commences only after the Environmental Quality Board ("EQB") has found a
violation. *See* Pl. Opp. to Vitol at 13 (citing *Marrero II*, 2005 WL 1653736, at *1).
But in *Marrero II*, undated medical reports created a fact issue regarding when the
plaintiffs discovered their injury. *See id.*  No such fact issue exists here.

-22-

## - Appearances -

**Liaison Counsel for Plaintiffs:**

Robin Greenwald, Esq.
Robert Gordon, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
(212) 558-5500

**Counsel for Commonwealth**:

Michael Axline, Esq.
Miller, Axline, & Sawyer
1050 Fulton Avenue, Suite 10
Sacramento, CA 95825
(916) 488-6688

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
McDermott Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
(212) 547-5583

**Counsel for Vitol Defendants:**

David Peter Langlois, Esq.
Sutherland Asbil & Brennan, LLP
1114 Avenue of the Americas
40th Floor
New York, NY 10036
(212) 389-5007

**Counsel for IAC**:

David N. Lutz, Esq.
Dustin Fossey, Esq.
Mary T. Novacheck, Esq.
Bowman & Brooke, LLP
150 South Fifth Street, Suite 3000
Minneapolis, MN 55406
(612) 339-8682

Robert Dickerson Wilson, Jr., Esq.
Littleton Joyce Ughetta Park & Kelly, LLP
4 Manhattanville Road, Suite 202
Purchase, NY 10577
(914) 417-3408