UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation | Master File No. 1:00 - 1898 **MDL 1358 (SAS)** **M21-88** |

Civil Action

**This Document Relates To:**

*New Jersey Dept. of Envtl. Prot., et al. v.*
*Atlantic Richfield Co., et al.*, No. 08 Civ. 312

**PLAINTIFFS' LOCAL 56.1 STATEMENT IN OPPOSITION TO
DHANDI TRANSPORT, INC.'S RULE 56.1 STATEMENT OF MATERIAL FACTS
SUBMITTED IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGEMENT
REGARDING H.P. DELTA SITE
AND PLAINTIFFS' STATEMENT OF ADDITIONAL FACTS**

In accordance with Federal Rule of Civil Procedure 56, Southern District of New York's

Local Civil Rule 56.1, and this Court's Individual Rules and Procedures IV.I, Plaintiffs file their

Statement in Opposition to Dhandi Transport Inc.'s ("Dhandi") Rule 56.1 Statement of Material

Facts Submitted in Support of its Motion for Summary Judgment Regarding the H.P. Delta Site,

and Plaintiffs' Statement of Additional Facts.

**PLAINTIFFS' RESPONSE TO DHANDI'S 56.1 MATERIAL FACTS**

1.      The H.P. Delta site is located at 439 Lake Avenue in Colonia, New Jersey. See

Declaration of Kevin T. Bright in Support of Dhandi Transport, Inc.'s Motion for Summary

Judgment ("Bright Decl."), Exhibit 1 (Plaintiffs Site Specific Expert Report, Volume 1, dated

November 8, 2012), at 50.

1

**RESPONSE**: Undisputed.

2.      The H.P. Delta site is owned by Robert Melecci. See Bright Decl., Exhibit 1, at 50.

**RESPONSE**: Undisputed.

3.      Getty Properties Corp. ("Getty") and Melecci entered into a contract dealer relationship in 1985, pursuant to which Getty owned several underground storage tanks located on the H.P. Delta site, and sold Getty gasoline until the USTs were removed in 1987. See Bright Decl., Exhibit 2 (Expert Report of James A. Schaefer, Jr., of Kleinfelder, dated April 2, 2013), at 4.

**RESPONSE**: Disputed.  Melecci had an agreement with Getty starting in 1983.  The remaining paragraph is undisputed.  (Melecci Depo. at 19-22, 210.)

4.      The Getty USTs consisted of two 3,000-gallon tanks and two 4,000-gallon tanks. See Bright Decl., Exhibit 2, at 5.

**RESPONSE**: Undisputed.

5.      On June, 16, 1987 one of the 4,000-gallon USTs failed a tightness test. On June 18, 1987 a request was made by a Getty represented, Adel Hreiz, to remove, close, and backfill the two 3,000-gallon and two 4,000-gallon USTs. See Bright Decl., Exhibit 2, at 8.

**RESPONSE**: Undisputed.

6.   .   In a letter sent to the Woodbridge Public Health Center, dated June 22, 1987 Adel Hreiz stated that Getty would remove all USTs on the Site. See Bright Decl., Exhibit 2, at 8.

**RESPONSE**: Undisputed.

2

7.    An NJDEP case manager, Ralph Downs, inspected the UST removal activities.
See Bright Decl., Exhibit 2, at 8.

**RESPONSE**: Undisputed.

8.    Mr. Downs prepared a report dated July 2, 1987, which documented the removal
activities:

> Two tanks had already been removed from the ground and were being loaded
> onto a truck for disposal. One of these had at least six holes in it. There were no
> visible holes in the other. Rob [Melecci] informed me that the tank with the holes
> had been in use up until last week, the other two had been out of service for about
> two years.... soil from the excavation had a strong odor of gasoline.

See Bright Decl., Exhibit 2, at 8.

**RESPONSE**: Undisputed; Plaintiffs further state that the quoted language is not found in its
entirety at Bright Decl., Ex. 2, but can be found at Exhibit C (NJ-MTBE-RICHARDSPOST
DEP0000693) to the Getty's Expert Report of James A. Schaefer, Jr., served on 4/02/13 in this
case.

9.    Mr. Downs noted that the soil had been removed from the excavation, staged
on-site while the excavation occurred, and then put back into the hole "for safety reasons." See
Bright Decl., Exhibit 2, at 8.

**RESPONSE**: Undisputed.

10.    The NJDEP subsequently issued a Notice of Violation to Rob's Towing and
Service Center, dated July 7, 1987, for a "discharge of a hazardous substance (petroleum
hydrocarbon)." See Bright Decl., Exhibit 3 (Investigation Report, prepared by Ralph Downs, of
the NJDEP, dated July 8, 1987 (NJ-MTBE-RICHARDSPOSTDEP0000692)).

**RESPONSE**: Undisputed.

11. In August of 1987, the NJDEP observed that a plastic cover placed over the stockpiled soil had been removed, uncovering the contaminated soil. Thus, the NJDEP issued a second Notice of Violation. See Bright Decl., Exhibit 2, at 10.

**RESPONSE**:  Undisputed.

12.     The soil stockpiled soil remained on the H.P. Delta site for four months, resulting in NJDEP administering a consent order to Getty on December 15, 1987, which required Getty to submit all sampling results to the NJDEP within five days, properly dispose of the contaminated soil within seven days, and submit a receipt of the proper disposal to NJDEP within 14 days. See Bright Decl., Exhibit 2, at 10.

**RESPONSE**: Undisputed.

13.     In 1988 the owner of the property, Robert Melecci, installed a new gasoline dispensing system at a new location on the Site. This new gasoline UST dispensing system is currently in operation at the Site today and consists of three fiberglass-clad steel 6,000-gallon gasoline storage tanks, one fiberglass-clad steel 4,000-gallon gasoline storage tank, one fiberglass-clad steel 6,000-gallon diesel storage tank, and the associated steel product piping. See Bright Decl., Exhibit 2, at 10.

**RESPONSE**: Disputed that Melecci "installed a new gasoline dispensing system at a new location on the Site," because, the "new location" is in substantially the same location as the old tank fields.  Axline Decl., Ex. 15 (2/28/07 Notice at NJ-LBG-10863); Ex. 13, HCR Annual Site Update Report (3/2010) at NJDEP-SITE233-005316, map demonstrating the overlap of the old

4

and new tank fields.). The remaining paragraph is undisputed.

14.     Robert Melecci operated the new UST dispensing system from 1989 to 2003 with no regulatory reported environmental incidents. See Bright Decl., Exhibit 2, at 11.

**RESPONSE**: Undisputed that Melecci did not report any environmental incidents to the NJDEP between 1989 and 2003.

15.     In 2003, Mr. Melecci leased the gasoline station operations to H.P. Delta. See Bright Decl., Exhibit 2, at 11.

**RESPONSE:** Undisputed.

16.     Pursuant to that lease agreement Mr. Melecci continued to own the USTs and the associated piping system. See Bright Decl., Exhibit 2, at 11.

**RESPONSE:** Undisputed.

17. In December of 2004, the containment sump for the regular gasoline submersible pump was observed to be full of fuel during an inspection by the NJDEP. Moreau Report at 53. Spill Incident No. 04-12-071319-21, was issued by the NJDEP. See Bright Decl., Exhibit 2, at 11.

**RESPONSE**: Undisputed.

18.     Beginning in May of 2005, groundwater samples from domestic supply wells located to the west-southwest of the H.P. Delta site began testing positive for MTBE and other gasoline related contaminants. See Bright Decl., Exhibit 2, at 11.

**RESPONSE**: Dispute that MTBE and other gasoline related contamination "began" testing positive in May of 2005.  No testing of MTBE was performed prior to May, 2005.  MTBE was

5

detected during the first testing of domestic supply wells located to the west-southwest of its

H.P. Delta site, and therefore it evident that the gasoline related contaminates were present prior

to May of 2005. The remaining paragraph is undisputed. Plaintiffs further incorporate

Statement of Fact 59-60.

19. The first such supply well, located at 31 Morningside Road, revealed benzene at 45

µg/L and MTBE at 12,000 ug/L. This residence is located approximately 460 feet from the H.P.

Delta Site. See Bright Decl., Exhibit 2, at 11-12.

**RESPONSE**: Undisputed.

20.    Through early 2007, additional domestic wells to the west-southwest of the H.P.

Delta site tested positive for MTBE and other related contaminants. See Bright Decl., Exhibit 2,

at 1116.

**RESPONSE**: Undisputed.

21. On August 5, 2007, the NJDEP conducted a compliance inspection of the operating

UST system at the H.P. Delta site. The inspection revealed soil contamination and floating

product in observation wells. See Bright Decl., Exhibit 2, at 13.

**RESPONSE**: Plaintiffs state that the correct date is August 5, 2006; the remaining paragraph is

undisputed.

22.    On August 8, 2007, a subsequent inspection was conducted by the NJDEP.

Following the inspection, the NJDEP issued a UST Field Notice of Violation, Violation No.

06-08-081117-02. The violation noted deficiencies in tank overfill protection. A delivery ban

was subsequently imposed and an Order was given to cease use of the USTs. See Bright Decl.,

Exhibit 2, at 13.

**RESPONSE**:  Plaintiffs state that the correct date is August 8, 2006; the remaining paragraph is undisputed.

23.     On August 16, 2008, the NJDEP issued a Directive and Notice to Insurers (the "Directive") naming H.P. Delta, Inc., Rob's Service Center and Robert Melecci, as respondents. The Directive cited "several potable wells had exceedences of MTBE and/or benzene," and that "gross soil contamination and floating product was observed during an August 2006 compliance inspection." See Bright Decl., Exhibit 2, at 14.

**RESPONSE**:  Plaintiffs state that the correct date is August 16, 2006; the remaining paragraph is undisputed.

24.     In response to the Directive, H.P. Delta filed a lawsuit in state court in the State of New Jersey, against Robert Melecci (hereinafter, the "State Court Litigation"). See Bright Decl., Exhibit 4 (Complaint filed by H.P. Delta against Robert Melecci, in the Superior Court of New Jersey, Middlesex County, Docket No. MID-L-7781-07, filed September 11, 2007).

**RESPONSE**: Undisputed.

25.     The H.P. Delta Complaint alleged that the "primary source of gasoline and other contaminants were found to come from a former tank field which previously existed at the site until approximately 1987." See Bright Decl., Exhibit 4, at 4.

**RESPONSE**: Undisputed.

26.     The H.P. Delta Complaint sought, inter alia, an Order "(1) compelling [Robert Melecci] to arrange and pay for the investigation and remediation of the [] contamination and/or

(2) compelling [Robert Melecci] to cleanup [sic] the [] contamination." See Bright Decl., Exhibit 4, at 6.

**RESPONSE**: Undisputed.

27.     In response, Robert Melecci filed an Answer and Counterclaim, and a Third-Party Complaint against Dhandi Transport, Inc. See Bright Decl., Exhibit 5 (Third-Party Complaint by Robert Melecci against Dhandi, filed in the Superior Court of New Jersey, Middlesex County, Docket No. MID-L-7781-07, on December 10, 2007).

**RESPONSE**: Undisputed.

28.     The stated basis of the Third-Party Complaint was that "Dhandi was negligent in it [sic] delivery of gasoline." See Bright Decl., Exhibit 5, at 6.

**RESPONSE**: Undisputed.

29.     In July of 2009, H.P. Delta amended its Complaint to assert a claim against Getty Petroleum Marketing, Inc. See Bright Decl., Exhibit 6 (Amended Complaint, filed by H.P. Delta, against Getty Petroleum Marking, Inc., in the Superior Court of New Jersey, Middlesex County, Docket No. MID-L-7781-07, filed August 21, 2009).

**RESPONSE**: Undisputed.

30.     On September 24, 2008, the NJDEP filed this case in the United States District Court for the Southern District of New York (the "MDL"), "in order to protect and remedy important state interests affected by widespread contamination of the waters of the State of New Jersey with ... MTBE, a chemical used in some gasoline." See Bright Decl., Exhibit 7 (Complaint filed by the NJDEP in the United States District Court for the Southern District of

New York, under Case Number 08-civ-00312(SAS), filed September 24, 2008), at 3.

**RESPONSE**: Undisputed.

31.     One of the sites identified by the plaintiff in the MDL was the H.P. Delta site.

**RESPONSE**: Undisputed.

32.     On April 15, 2011, the State Court Litigation was stayed, based upon Getty's

filing of the Third-Party Complaint against H.P. Delta, Robert Melecci and Dhandi Transport in

the MDL. See Bright Decl., Exhibit 2, at 4.

**RESPONSE**: Undisputed.

33.     Getty's Third-Party Complaint against H.P. Delta, Robert Melecci and Dhandi

Transportation was based upon contribution under the Spill Compensation and Control Act,

N.J.S.A. 58:10-23.11, et seq., as well as common law contribution and indemnification. See

Bright Decl., Exhibit 8 (Third-Party Complaint filed by Getty against H.P. Delta, Robert Melecci

and Dhanid [sic] in the United States District Court for the Southern District of New York, under

Case Number 08-civ-00312(SAS), filed April 12, 2011).

**RESPONSE**: Undisputed.

34.     The plaintiff, the NJDEP, never asserted issued [sic] a Notice of Violation, or

took any other administrative actions against Dhandi in the State Court Litigation. See Bright

Decl., Exhibit 4.

**RESPONSE**: Undisputed.

35.     Additionally, the NJDEP never amended its Complaint to assert a direct claim

against Dhandi Transport in the MDL. See Bright Decl., Exhibit 7.

**RESPONSE:** Undisputed.

36.     In the MDL, the Plaintiff alleged that the H.P. Delta site was the source of contamination of the off-site wells, located in the vicinity of Lancaster Road (the "Lancaster Road Wells"). See Bright Decl., Exhibit 9 (Revised Site Summary Report, prepared by Anthony Brown of Auqilogic, [sic] Inc., on behalf of the NJDEP, dated January 2013), at 46.

**RESPONSE**: Undisputed.

37.     Plaintiff's expert, Anthony Brown, of Aquilogic, Inc., prepared a Revised Site Summary pertaining to the alleged groundwater contamination at the H.P. Delta Site (the "Revised Site Summary").

**RESPONSE**: Undisputed.

38.     According to the plaintiff's expert, Anthony Brown, the MTBE contamination plume emanating from the H.P. Delta site was "not fully delineated, but extends at least 1,350 feet to the west-southwest of the Site ...." See Bright Decl., Exhibit 9, at 35.

**RESPONSE**: Undisputed that the quote identified in this paragraph was excerpted from Mr. Brown's Report.

39.     In his report, Mr. Brown provided a scale diagram of the H.P. Delta site and its relation to the off-site, Lancaster Road Wells:



See Bright Decl., Exhibit 9, at Fig. 8b.

**RESPONSE**:  Undisputed that the figure identified in this paragraph was excerpted from

Mr. Brown's Report.

40. Based upon the diagram, many of the wells located much farther away from the H.P.

Delta site registered much higher levels of MTBE, than those located much closer to the site. See

Bright Decl., Exhibit 9, at Fig. 8b.

**RESPONSE**: Disputed.  The MTBE detections range vary, and the wells located at the site

itself, in fact, contain the highest levels of MTBE detection.  Axline Decl., Ex. 4 (Aquilogic Report at 15-20.)

41. For example, domestic supply wells located at 20, 30 and 40 Lancaster Road, registered levels of 14.8, 1.8 and 0.0 µg/L of MTBE, respectively. These wells are located 300 feet from the H.P. Delta site. See Bright Decl., Exhibit 9, at Fig. 8b.

**RESPONSE**: Disputed; argumentative.  Plaintiffs are unable to respond because it is unknown what the information recited in paragraph 41 is an "example" of.  Further, Plaintiffs incorporate its Response to No. 40.

42.     Conversely, domestic supply wells located at 49 Morningside Drive, 35 Morningside Drive, and 170 Jordan Road, tested at 1,600 ug/L, 8,000 µg/L and 1,472 µg/L of MTBE, respectively. The farthest away, 170 Jordan Road, is approximately 1,500 feet from the H.P. Delta site. See Bright Decl., Exhibit 9, at Fig. 8b.

**RESPONSE**: Disputed as vague and argumentative.  Plaintiffs are unable to respond because it is unknown what the information recited in paragraph 42 is "conversely" to.

43. The Revised Site Summary also discussed groundwater flow direction at the site. According to the Report, groundwater flows to the northwest  in the unconsolidated sediments (shallower) zone, and to southeast  in the bedrock aquifer (deeper) zone:

> Based on a review of local topography, shallow groundwater would be interpreted to flow southwest toward Pumpkin Patch Brook (LBG, 2010; 008322) near the Site. **However, based on recent water levels from monitoring wells near the Site, groundwater in the unconsolidated sediments flows in a northwesterly direction**....
>
> Groundwater flow in the bedrock aquifer zone (i.e., fractured bedrock wells completed from 50 to 64 feet bgs), as monitored by wells MW-01, MW-02 and

MW-03, has been reported to be to the **south and southeast** (LBG, 2010; 006945, 006947 and 006949).

See Bright Decl., Exhibit 9, at 24, 26.

**RESPONSE**: Undisputed that this paragraph recites an excerpt from Mr. Brown's Report.

Dispute that the paragraph represents, or even purports to represent, groundwater flow direction

at all times. Mr. Brown's Report explains that groundwater flow can be impacted by the

pumping of nearby wells. Axline Decl., Ex. 4 (Aquilogic Report at 6, 26, 41, 43). He states:

* "[D]omestic supply wells in the area locally affect groundwater flow." (*Id.* at 6.)
* "[T]he pumping of groundwater supply wells in the area has locally affected the groundwater flow patterns." (*Id.* at 26.)
* "Historically, the flow of groundwater (and COCs dissolved therein) was likely "controlled" by the pumping at domestic WSWs to the west-southwest of the Site." (*Id.* at 41.)

Brown explains that groundwater flow patterns in the area were altered and the groundwater

flowed west-southwest towards the residential wells while the pumps were in operation. (*Id.* at

6, 26, 41.) The pumps are now shut down due to contamination, and the groundwater flow is

currently in the southeast direction. (*Id.* at 41, 43.)

44.     Yet the MTBE plume that is the subject of the MDL, according to the very same

report, extends to the west-southwest A,,"" of the H.P. Delta site:

> The plume of MTBE contamination is not fully delineated, but extends at least
> 1,350 feet to the west-southwest of the Site.

See Bright Decl., Exhibit 9 at 35.

**RESPONSE:** Disputed. Argumentative. Plaintiffs are unable to respond because it is unknown

what "yet" references. Further, Plaintiffs incorporate its Response to No. 43.

45.     During discovery, the defendants served a Rule 30(b)(6) Notice of Deposition,

seeking a representative of the NJDEP with knowledge of "Any investigation or planned investigation of the source(s) of MTBE and/or TBA in monitoring well(s), SUPPLY WELLS and/or WATER RESOURCES located at or in proximity to the SITE" (capitalization in original)." See Bright Decl., Exhibit 10.

**RESPONSE**: Undisputed.

46.     The term "site" was defined to mean "HP Delta (a.k.a. Lancaster Road Groundwater Contamination Site ...."). See Bright Decl., Exhibit 10.

**RESPONSE:** Undisputed.

47.     In response, the NJDEP produced Gary Lipsius. Mr. Lipsius is employed by the NJDEP in the Bureau of Investigation, Design and Construction. See Bright Decl., Exhibit 11, at 1.

**RESPONSE**: Undisputed that Mr. Lipsius is employed by NJDEP and testified in response to certain categories, identified in the "Defendants' Second Amended Notice of Rule 30(b)(6) Deposition of Plaintiff New Jersey Department of Environmental Protection Regarding HP Delta," as identified during the deposition of Mr. Lipsius.  Disputed that Mr. Lipsius testified as to all categories.  DEP employee Akshay Parikh also testified in response to that deposition notice.

48. Mr. Lipsius testified that NJDEP was unable to state whether the H.P. Delta site was the sole source of contamination with regard to the Lancaster Road wells. See Bright Decl., Exhibit 11, at 42:19-44:9.

**RESPONSE**: Disputed.  This mischaracterizes Mr. Lipsius' testimony and the testimony of the

14

designated 30(b)(6) witness on this issue.  DEP witness Akshay Parikh was designated to discuss

this issue and he testified unequivocally that HP Delta was "the only source of groundwater

contamination or private well contamination in this area."  Axline Decl. Ex. 7 (9/11/12 Parikh

Depo. at 34.)

As indicated in the deposition, counsel for Plaintiffs objected to the inquiry to Mr.

Lipsius because it called for expert opinion and was beyond the scope for what that witness was

being produced.  Axline Decl., Ex. 6 (Lipsius Depo. at 43:17-20, 45:13-25.)  Disregarding

counsel's admonitions that Mr. Parikh, not Mr. Lipsius, was the designated witness on that issue,

counsel continued the inquiry, and Mr. Lipsius testified consistently that the MTBE

contamination found at the HP Delta site is responsible for the potable well contamination at the

Lancaster site.  *Id.* at 43:21-44:9; see also *id.* at 63:21-65:6,where counsel again objected

because the inquiry called for expert opinion and is beyond the scope of the witness (see counsel

objections lodged *id.* at pp.61-65, *passim*).)  Finally, Mr. Lipsius testified that he was not tasked

with determining the source of contamination of the wells.  (*Id.* at 138:13-16.)

Neither Dhandi nor any other third party defendant have submitted any evidence of any

leak, release or spill at "other possible sources," that could have resulted in the contamination.

49.    Mr. Lipsius further admitted that the NJDEP was "not certain" that the H.P. Delta

site was the source of the impacts to the Lancaster Road wells. See Bright Decl., Exhibit 11, at

63:21-65:6.

**RESPONSE**; Disputed.  This mischaracterizes Mr. Lipsius' testimony and the testimony of the

designated 30(b)(6) witness on this issue.  DEP witness Akshay Parikh was designated to discuss

this issue and he testified unequivocally that HP Delta was "the only source of groundwater

contamination or private well contamination in this area." Axline Decl. Ex. 7 (9/11/12 Parikh

Depo. at 34.)

As indicated in the deposition, counsel for Plaintiffs objected to the inquiry to Mr.

Lipsius because it called for expert opinion and was beyond the scope for what that witness was

being produced. Axline Decl., Ex. 6 (Lipsius Depo. at 43:17-20, 45:13-25.) Disregarding

counsel's admonitions that Mr. Parikh, not Mr. Lipsius, was the designated witness on that issue,

counsel continued the inquiry, and Mr. Lipsius testified consistently that the MTBE

contamination found at the HP Delta site is responsible for the potable well contamination at the

Lancaster site. (Id. at 43:21-44:9; *see also id.* 63:21-65:6,where counsel again objected because

the inquiry called for expert opinion and is beyond the scope of the witness (see counsel

objections lodged *id.* at 61-65, *passim*).) Finally, Mr. Lipsius testified that he was not tasked

with determining the source of contamination of the wells. (Lipsius Depo. at 138:13-16.)

Neither Dhandi nor any other third party defendant have submitted any evidence of any

leak, release or spill at "other possible sources," that could have resulted in the contamination.

50.    Mr. Lipsius specifically testified that other possible sources included two nearby

gas stations, and a convenience store that used to be a gas station, located literally right across

the street from the H.P. Delta station. See Bright Decl., Exhibit 11, at 310:20-312:21.

**RESPONSE**: Disputed. This mischaracterizes Mr. Lipsius' testimony. In fact, Mr. Lipsius

simply acknowledges that during the investigation, there were other potential sources <u>prior to the</u>

<u>litigation</u>. "To answer your question, <u>prior to this litigation</u>, yes, it was the gas station – potential

sources could be that or the convenience store across the street." Axline Decl. Ex. 6 (Lipsius Depo. at 312:7-12 (Emphasis added.)).

Moreover, the testimony of the designated 30(b)(6) Akshay Parikh was unequivocal that HP Delta was "the only source of groundwater contamination or private well contamination in this area." Axline Decl. Ex. 7 (9/11/12 Parikh Depo. at 34.)

As indicated in the deposition, counsel for Plaintiffs objected to the inquiry to Mr. Lipsius because it called for expert opinion and was beyond the scope for what that witness was being produced. Axline Dec., Ex. 6 (Lipsius Depo. at 43:17-20, 45:13-25.)  Disregarding counsel's admonitions that Mr. Parikh, not Mr. Lipsius, was the designated witness on that issue, counsel continued the inquiry, and Mr. Lipsius testified consistently that the MTBE contamination found at the HP Delta site is responsible for the potable well contamination at the Lancaster site. (*Id.* at 43:21-44:9; *see also id.* 63:21-65:6,where counsel again objected because the inquiry called for expert opinion and is beyond the scope of the witness (see counsel objections lodged *id.* at 61-65, *passim*).)  Finally, Mr. Lipsius testified that he was not tasked with determining the source of contamination of the wells. (*Id.* at 138:13-16.)

Neither Dhandi nor any other third party defendant have submitted any evidence of any leak, release or spill at "other possible sources," that could have resulted in the contamination.

51. Mr. Lipsius further acknowledged that although the NJDEP was aware of other possible sources for the off-site, Lancaster Road contamination, it had done nothing to investigate those other sources. See Bright Decl., Exhibit 11, at 54:1-56:5.

**RESPONSE**: Disputed.  This mischaracterizes Mr. Lipsius' testimony.  Mr. Lipsius explained

17

that there were multiple divisions of the DEP and his specific division did not investigate other

sources. His work was specific to the remedial investigation. Axline Decl., Ex. 6 (Lipsius Depo.

at 32.)

As indicated in the deposition, counsel for Plaintiffs objected to the inquiry because it

called for expert opinion and was beyond the scope for what that witness was being produced.

Axline Decl. Ex. 6 (Lipsius Depo. at 43:17-20.) Mr. Lipsius testified that the MTBE

contamination found at the HP Delta site is responsible for the potable well contamination at the

Lancaster site. (*Id.* at 43:21-44:9; *see also id.* 63:21-65:6,where counsel again objected because

the inquiry called for expert opinion and is beyond the scope of the witness, See counsel

objections lodged *id.* at 61-65, *passim.*) Finally, Mr. Lipsius testified that he was not tasked with

determining the source of contamination of the wells. (*Id.* at 138:13-16.)

Neither Dhandi nor any other third party defendant have submitted any evidence of any

leak, release or spill at "other possible sources," that could have resulted in the contamination.

52. In support of its Third-Party Complaint, Getty served an expert report, prepared

by James A. Schafer, Jr, *[sic.]* of Kleinfelder. See Bright Decl., Exhibit 2.

**RESPONSE**: Undisputed that Getty served an expert report prepared by James A. Schaefer, Jr.

53. The only opinion offered in the Kleinfelder Report regarding Dhandi is Opinion

No. 12, which only states, "One of the causes of this hydrocarbon release appears to be reported

overfilling or spills/release during gasoline deliveries made by Dhandi Transport." See Bright

Decl., Exhibit 2, at 23.

**RESPONSE**: Undisputed that the Kleinfelder Report states the quoted language; Plaintiffs state

that there may be additional opinions contained in the Report that are relevant to Dhandi

Transport.

54.     The ultimate conclusion of the Kleinfelder Report is that the release in 1987 was

confined to the area immediately surrounding the tank excavation and did not cause or contribute

to the off-site, Lancaster Road contamination. See Bright Decl., Exhibit 2, at 24-25.

**RESPONSE**: Disputed.  Argumentative.  The Kleinfelder Report does not identify an "ultimate

conclusion."  Plaintiffs also dispute the substance of this opinion.

55.     Thus, while the Kleinfelder Report attempts to exculpate Getty for liability for the

offsite, Lancaster Road contamination, it does not offer any explanation of how the limited

insurances *[sic.]* in which Dhandi allegedly spilled gasoline at the H.P. Delta site could have

resulted in contaminating of the off-site domestic supply wells, located hundreds of feet from the

H.P. Delta site. See Bright Decl., Exhibit 2, at 24-25.

**RESPONSE**: Disputed as vague; Plaintiffs are unable to respond because it is unknown what

"limited insurances" refers to.  See also Bright Decl., Exhibit 2, at 24-25.

56.     Plaintiff's expert report is similarly lacking. The only reference to fuel spills

found in the Plaintiff's expert report is that "Small spills are common during vehicle fueling

activities and no doubt occurred throughout the time this facility was in operation. Such spills

may have contributed to the contamination observed in the dispenser area." See Bright Decl.,

Exhibit 1, at 54.

**RESPONSE:** Disputed.  There is ample evidence of Dhandi's release of fuel at the site both in

Plaintiffs' expert report, in eyewitness testimony and other documents.  See, e.g., Axline Decl,

Ex. 4 (Aquilogic Report at 12; Ex. 1 (Melecci Depo. at 94-97); Ex. 9 (Administrative Order at

NJDEP-SITE233-006497); and Ex. 14 (M. Singh Depo. at 40)

## PLAINTIFFS' STATEMENT OF ADDITIONAL FACTS

57.  Prior to 2005, wells located, off-site, in the vicinity of the HP Delta site were not

tested for MTBE.

58.  Prior to 2006, wells located at the HP Delta site were not tested for presence of

MTBE.

59.  MTBE test results taken between 2005 until early 2007, of the domestic water supply

wells in the proximity of the HP Delta site, showed high levels of MTBE.

| DATE | * | LOCATION | * | MTBE DETECTION |
|------|---|----------|---|----------------|
| 5/11/05 | | 31 Morningside Road | | MTBE at 12,000 ug/L |
| 6/02/05 | | 31 Morningside Road | | MTBE at 19,000 ug/L |
| 12/05/05 | | 49 Morningside Road | | MTBE at 1,600 ug/L |
| 1/05/06 | | 49 Morningside Road | | MTBE at 120 ug/L |
| 3/13/06 | | 62 Lancaster Road | | MTBE at .95 ug/L |
| 3/14/06 | | 164 Jordan Road | | MTBE at 220 ug/L |
| 4/13/06 | | 164 Jordan Road | | MTBE at 220 ug/L |
| 5/11/06 | | 100 Lancaster Road | | MTBE at 6.2 ug/L |
| 5/18/06 | | 85 Lancaster Road | | MTBE at 110 ug/L |
| 5/18/06 | | 86 Lancaster Road | | MTBE at 720 ug/L |
| 5/18/06 | | 99 Lancaster Road | | MTBE at 210 ug/L |
| 5/25/06 | | 95 Lancaster Road | | MTBE at 420 ug/L |
| 5/25/06 | | 94 Lancaster Road | | MTBE at 70 ug/L |
| 6/15/06 | | 86 Lancaster Road | | MTBE at 610 ug/L |
| 6/15/06 | | 99 Lancaster Road | | MTBE at 150 ug/L |
| 8/2/06 | | 85 Lancaster Road | | MTBE at 240 ug/L |
| 8/17/06 | | 170 Jordan Road | | MTBE at 990 ug/L |
| 10/05/06 | | 170 Jordan Road | | MTBE at 1,472 ug/L |

| 1/31/07 | 35 Morningside Road | MTBE at 8,000 ug/L |
| 2/11/07 | 5 Morningside Road | MTBE at 791 ug/L |

Axline Decl., Ex. 4 (Aquilogic Report at 10-13, 15)

60. MTBE test results taken wells on the HP Delta site taken after 2006 show levels of MTBE even higher than in nearby domestic water supply wells.

| DATE * | LOCATION                                                              * | MTBE DETECTION |
|--------|------------------------------------------------------------------------|----------------|
| 9/01/06 | HP Delta Site | MTBE at 1,440 ug/L |
| 10/06 | Temporary monitoring well located north of existing UST at the HP Delta Site | MTBE at 242,000 ug/L |
| 12/1/06 | Temporary monitoring well located at the HP Delta Site | MTBE at 2,690 ug/L |
| 5/11/07 | MW-8 at the HP Delta Site | MTBE at 276,000 ug/L |
| 7/11/07 | MW-1 and MW-2 at the HP Delta Site | MTBE at 253,000 ug/L |

Axline Decl., Ex. 4 (Aquilogic Report at 14-15, 17-18).

61. Dhandi has not produced expert or other evidence of a source of the MTBE contamination in the domestic supply wells in the vicinity of the HP Delta site in gasoline other than the HP Delta site.

62. MTBE was used as an octane enhancer in New Jersey in the 1970s and throughout the 1980s. Axline Decl., Ex. 4 (Aquilogic Report at 3; Ex. 11 (Triassic Technology Report at 6, stating, "MTBE is an additive used in gasoline since about 1980 and was present in leaded gasoline in the mid-1980s.").

63. Getty does not deny that it supplied Melecci's gas station with gasoline containing

MTBE between 1985 and 1987.  Axline Decl., Ex. 10 (Defendant Getty Properties Corp.'s

Answers and Objections to Plaintiffs' First Set of Requests for Admissions at p.5, No. 3).

64.  Getty Properties had a contract dealer agreement to supply gasoline to Melecci from

February 1, 1985 until June, 1987, when the leaking tanks (which were owned by Getty) were

removed.  Upon removal, one tank was observed to have at least six (6) holes and a strong odor

of gasoline was noted in the excavated soil. As a result, the NJDEP determined that there was "a

discharge of a pollutant in to the waters and/or onto the land of the State." Axline Decl., Ex. 12

(12/15/87 Administrative Order at GPC-HPDELTA-0014.)  A notice of violation was issued to

Getty.

65.  When Getty removed the underground storage tanks in 1987, the soil was excavated,

but remained at the site, uncontained and untreated and although Getty was ordered to dispose of

the soil, six months after the tanks were removed, the NJDEP noted that "Getty had not made

any effort to remove and properly dispose of any contaminated soil." Thus, it is impossible to

differentiate the current tank field from the prior tank field.  Axline Decl., Ex. 13 (HCR Annual

Site Update Report at NJDEP-SITE233-005316); Axline Decl. Ex. 12 (12/15/87 Administrative

Order at GPC-HPDELTA-0014).

66.  At the HP Delta site, the location of the current tank field, installed in 1988, is in

substantially the same location as the underground tanks owned by Getty.  Axline Decl. Ex. 15

(2/28/07 Notice at NJ-LBG-10863);  Axline Decl., Ex. 13 (HCR Annual Site Update Report at

NJDEP-SITE233-005316).

67. Dhandi's owner and President admitted Dhandi Transport's spilled fuel at the HP

Delta site.  Axline Decl., Ex. 14 (M. Singh Depo. at 40).

68.  Third party defendant, Mr. Melecci, testified he witnessed Dhandi delivery drivers on numerous occasions spill gasoline at the HP Delta site.  Axline Decl., Ex. 1 (Melecci Depo. at 94-97).  On at least two of those occasions, Melecci informed HP Delta of the releases.  Axline Decl., Ex.  5 (8/28/06 Letter from A. Ambrosio to H.P.Delta) and Axline Decl. Ex. 2 (1/22/07 Letter from A. Ambrosio to S. Lieberman).

69.  On August 5, 2006, an inspection of the UST system at the HP Delta site, "revealed gross oil contamination and floating product in observation wells at the site."  Axline Decl., Ex. 4 (Aquilogic Report at 12).

70.  Dhandi changed its name and reincorporated as Jersey Gas, and Jersey Gas did the identical work of Dhandi Transport starting in 2007.  Axline Decl. Ex. 14 (M. Singh Depo. at 75-76).

71.  In January, 2007, NJDEP recorded that "A total of 2800 gallons of floating product and product contaminated water was removed."  Axline Decl., Ex. 3 (1/23/07 E-mail from M. Herzberg to V. Morone).

72.  In 2007, the NJDEP informed HP Delta that "the existing tank field has most likely contributed to the contamination at this site."  Axline Decl. Ex. 15 (2/28/07 Administrative Order at NJ-LBG-10864.

Dated this 10th day of January, 2014.          Respectfully submitted,


_____/s/_____
MICHAEL AXLINE, State Bar #229840
Attorneys for Plaintiffs
MILLER, AXLINE & SAWYER
A Professional Corporation
1050 Fulton Avenue, Suite 100
Sacramento, CA  95825-4225
Telephone:  (916) 488-6688
Facsimile:  (916) 488-4288
*Special Counsel to the Attorney General*


John J. Hoffman, Esq.
Acting Attorney General

_____/s/_____
GWEN  FARLEY
Deputy Attorney General
25 Market Street
P.O. Box 093
Trenton, NJ 08625-0093
Telephone:  (609) 984-2845


24

1

### PROOF OF SERVICE VIA LEXISNEXIS FILE & SERVE
*New Jersey Department of Environmental Protection, et al. v. Atlantic Richfield Co., et al.*

2
United States District Court, Southern District of New York, Case No. 08 Civ. 00312 (SAS)

3
    I, the undersigned, declare that I am, and was at the time of service of the paper(s) herein referred to, over the age of 18 years and not a party to this action.  My business address is 1050

4
Fulton Avenue, Suite 100, Sacramento, CA  95825-4225.

5
    On the date below, I served the following document on all counsel in this action electronically through LexisNexis File & Serve:

6

7
**PLAINTIFFS' LOCAL 56.1 STATEMENT IN OPPOSITION TO DHANDI TRANSPORT, INC.'S RULE 56.1 STATEMENT OF MATERIAL FACTS SUBMITTED IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGEMENT**

8
**REGARDING H.P. DELTA SITE AND PLAINTIFFS' STATEMENT OF ADDITIONAL FACTS**

9

10
    I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

11

12
    Executed on January 10, 2014, at Sacramento, California.

13

14
KATHY HERRON

15

16

17

18

19

20

21

22

23

24

25

26

27

28