UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------- X
                                                    :
IN RE: METHYL TERTIARY BUTYL                        :
ETHER ("MTBE") PRODUCTS                              :      OPINION AND ORDER
LIABILITY LITIGATION                                :
--------------------------------------------------- :      Master File No. 1:00-1898
                                                    :      MDL 1358 (SAS)
This document relates to:                           :      M21-88
                                                    :
*New Jersey Dep't of Envtl. Prot. v. Atlantic*      :
*Richfield Co.,* 08 Civ. 00312                       :
                                                    :
                                                    :
--------------------------------------------------- X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

**I.    INTRODUCTION**

        This is a consolidated multi-district litigation ("MDL") relating to

contamination — actual or threatened — of groundwater from various defendants'

use of the gasoline additive methyl tertiary butyl ether ("MTBE") and/or tertiary

butyl alcohol, a product formed by the breakdown of MTBE in water.  In this case,

the New Jersey Department of Environmental Protection, the Commissioner of the

New Jersey Department of Environmental Protection, and the Administrator of the

New Jersey Spill Compensation Fund allege that Chevron U.S.A., Inc.'s ("CUSA")

use and handling of MTBE has contaminated, or threatened to contaminate

groundwater within their jurisdiction.  Familiarity with the underlying facts is

1

presumed for the purposes of this Order.

Currently before the Court is a motion for summary judgment brought by CUSA on the ground that the previously undisclosed theory of liability supporting plaintiffs' claims against CUSA should be precluded pursuant to Federal Rule of Civil Procedure 37(c)(1).  For the reasons stated below, the motion is GRANTED.

## II.    BACKGROUND[1]

This case was filed in the District of New Jersey and was transferred to this Court as part of the MTBE MDL on January 14, 2008.  Plaintiffs originally asserted claims against Chevron Corporation or CUSA at four trial sites: (1) the West Windsor Getty Service Station ("Getty"); (2) the HP Delta Service Station; (3) the Skyline Service Center ("Skyline"); and (4) the Baker's Waldwick Gulf Service Station ("Baker's Waldwick").[2]  I dismissed all claims against CUSA at Baker's Waldwick on August 20, 2013.  On August 27, 2013, I dismissed all claims against Chevron Corporation.  Plaintiffs' only remaining claims against

---

[1]    The facts recited below are drawn from the pleadings, the parties' Local Civil Rule 56.1 Statements, the declarations submitted in connection with this motion, and the exhibits attached thereto.  These facts are undisputed unless otherwise noted.  Where disputed, the facts are viewed in the light most favorable to the nonmoving party.  *See Beard v. Banks*, 548 U.S. 521, 529–30 (2006).

[2]    *See* CUSA's Rule 56.1 Statement of Material Facts in Support of Motion for Summary Judgment ("CUSA 56.1") ¶¶ 1–2.

CUSA stem from CUSA's alleged connection with Skyline.

In contention interrogatories dated September 7, 2012 (the "Contention Interrogatories"), plaintiffs were asked to identify defendants alleged to be liable for damages at each delineated trial site.[3]  Plaintiffs were asked to "identify all facts" and documents that would prove each defendant's liability at each site.[4]  Plaintiffs identified Sunoco, "Texaco," Shell and CITGO with respect to Skyline.[5]  Although plaintiffs believed Chevron Corporation to be the successor-in-interest to Texaco, Inc. ("Texaco"),[6] plaintiffs only named "Chevron" in connection with Getty[7] and Baker's Waldwick.[8]  With regard to Skyline, plaintiffs

---

[3]    *See* Plaintiffs' Responses to Defendants' First Set of Contention Interrogatories ("Contention Interrogatories"), Ex. 1 to 10/15/13 Declaration of Jeremiah J. Anderson, counsel to CUSA, in Support of CUSA's Motion for Summary Judgment Regarding the Skyline Service Center Trial Site ("Anderson Decl."), at 4.

[4]    *See id.* at 7.

[5]    *See id.* at 4.

[6]    *See* Fourth Amended Complaint ¶ 25; Contention Interrogatories at 10.

[7]    *See* Contention Interrogatories at 5.

[8]    *See id.* at 13.  The parties dispute the meaning of the name "Chevron" in this interrogatory and elsewhere, but stipulate that "Chevron" has been used to describe both Chevron Corporation and CUSA in this litigation.  *See* CUSA's Reply Rule 56.1 Statement of Material Facts in Support of Motion for Summary Judgment ("CUSA Reply 56.1") ¶ 3.

contended that "Texaco supplied MTBE gasoline to Skyline from October 1991 to September 1997 pursuant to a branding agreement."[9]  Plaintiffs also provided theories of liability for Sunoco and CITGO at Skyline.[10]  Plaintiffs did not describe a theory of liability identifying "Chevron" or CUSA with Skyline.

Case Management Order 107 ("CMO 107"), issued December 27, 2012, limited plaintiffs' claims at Skyline to Sunoco, Texaco, CITGO, and "Chevron".  On the basis of the Contention Interrogatories and CMO 107, CUSA's expert witness, Dr. Michael Keeley, reported that plaintiffs "identified Chevron and Texaco with [Skyline] by virtue of an alleged supply agreement between Texaco and the station operator."[11]  Dr. Keeley stated, "There is no allegation that Chevron supplied gasoline to [Skyline]."[12]  Plaintiffs did not refute this statement prior to March 1, 2013 — the close of expert discovery.[13]

Plaintiffs now allege that CUSA is liable for MTBE contamination at

---

[9]     Contention Interrogatories at 8.

[10]     *See id.*

[11]     Expert Report of Michael C. Keeley, Ph.D. ("Keeley Report"), Ex. 4 to Anderson Decl. ¶ 29. This contention is disputed by the parties.

[12]     *Id.* ¶ 30.

[13]     *See* CUSA Reply 56.1 ¶ 13.  Although plaintiffs contest this fact, they do not assert that they refuted Dr. Keeley's statement.

Skyline due to its relationship with non-party Star Enterprise ("Star").[14]  Plaintiffs allege that CUSA sold MTBE gasoline to Star, and that Star was "the sole supplier of gasoline to Skyline during a time when MTBE releases occurred . . . ."[15] Plaintiffs did not disclose their current theory of liability (the "Star Theory") in their answers to the Contention Interrogatories or at any time prior to a pre-motion letter dated September 4, 2013,[16] almost a year after the close of fact discovery.

CUSA argues that plaintiffs should not be allowed to pursue a theory of liability they did not disclose in response to the Contention Interrogatories. Plaintiffs argue that failure to amend their contentions should not preclude use of the Star Theory for two reasons.  *First*, plaintiffs respond that CMO 107 gave CUSA notice of plaintiffs' claims against it at Skyline.  *Second*, plaintiffs argue that CUSA did not "suffer any prejudice" due to plaintiffs' contentions.[17]

---

[14]     *See* Plaintiffs' Memorandum of Law in Opposition to CUSA's Motion for Summary Judgment Regarding the Skyline Service Center Trial Site ("Opp. Mem.") at 1.

[15]     *Id.*

[16]     *See* CUSA Reply 56.1 ¶ 18.  Plaintiffs deny this fact, but do not cite evidentiary support that they previously disclosed the Star Theory.  A party cannot defeat summary judgment by relying "on conclusory allegations or unsubstantiated speculation."  *Northeast Research, LLC v. One Shipwrecked Vessel,* 729 F.3d 197, 214 (2d Cir. 2013) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (quotation marks omitted)).

[17]     Opp. Mem. at 13.

## III.   APPLICABLE LAW

### A.   Summary Judgment

Summary judgment is appropriate "only where, construing all the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in that party's favor, there is 'no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law.'"[18]  "A genuine dispute exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[19]  "A fact is material if it might affect the outcome of the suit."[20]

"The moving party bears the burden of establishing the absence of any genuine issue of material fact."[21]  To defeat a motion for summary judgment, the non-moving party "'must do more than simply show that there is some

---

[18]     *Rivera v. Rochester Genesee Regional Transp. Auth.*, 702 F.3d 685, 693 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)) (some quotation marks omitted).

[19]     *Finn v. N.Y. State Office of Mental Health-Rockland Psychiatric Ctr.*, 489 Fed. App'x 513, 514 (2d Cir. 2012) (quotation marks omitted).

[20]     *Windsor v. United States*, 699 F.3d 169, 192 (2d Cir. 2012).

[21]     *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  *Accord Powell v. Donahoe*, 519 Fed. App'x 21, 22 (2d Cir. 2013).

metaphysical doubt as to the material facts,'"[22] and "'may not rely on conclusory allegations or unsubstantiated speculation . . . .'"[23]

In deciding a motion for summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."[24] "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"[25]

## B.   Disclosure Under the Rules of Civil Procedure

In the Southern District, contention interrogatories "are designed to assist parties in narrowing and clarifying the disputed issues in advance of summary judgment practice or trial."[26]  Local Rule of Civil Procedure 33.3(c)

---

[22]   *Valenti v. Penn Mut. Life Ins. Co.*, 511 Fed. App'x 57, 58, (2d Cir. 2013) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586  (1986)).

[23]   *Northeast Research*, 729 F.3d at 214 (quoting *Scotto*, 143 F.3d at 114) (quotation marks omitted).

[24]   *Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.*, 677 F.3d 109, 119 (2d Cir. 2012).

[25]   *Redd v. New York Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

[26]   *Pasternak v. Kim*, No. 10 Civ. 5045, 2011 WL 4552389, at *3 (S.D.N.Y. Sep. 28, 2011) (citing *Erchonia Corp. v. Bissoon,* No. 07 Civ. 8696, 2011 WL 3904600, at *8 (S.D.N.Y. Aug. 26, 2011), *aff'd*, 458 Fed. App'x 58 (2d Cir. 2012)) (quotation marks omitted).

"anticipates that in the normal course, responses to contention interrogatories will be due at the very end of the fact discovery period."[27]  A party is not "required to review documents that have already been produced nor will a party be required to identify witnesses and documents where that information will subsequently be supplied in a pretrial order."[28]  However, "[a] party answering a contention interrogatory is obligated to respond truthfully and completely."[29]  Contention interrogatories are treated as judicial admissions which usually estop the responding party from later asserting positions not included in its answers.[30]

Federal Rule of Civil Procedure 26(e) provides that a party who has responded to an interrogatory

> must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the

---

[27]  *Erchonia*, 2011 WL 3904600, at *8 (citing Local R. Civ. P. 33.3(c)).

[28]  *Pasternak*, 2011 WL 4552389, at *3.

[29]  *Wechsler v. Hunt Health Sys., Ltd.*, No. 94 Civ. 8294, 1999 WL 672902, at *2 (S.D.N.Y. Aug. 27, 1999) (quoting *Weiss v. Chrysler Motors Corp.*, 515 F.2d 449, 456 (2d Cir. 1975)) (quotation marks omitted).

[30]  *See Prince Group, Inc. v. MTS Prods.*, No. 95 Civ. 1160, 1998 WL 273099, at *3 (S.D.N.Y. May 27, 1998) ("[J]udicial admissions, such as stipulations or answers to contention interrogatories, [. . .] have the effect of precluding entire legal issues from a case.") (citations omitted).  *See also Wechsler*, 1999 WL 672902, at *2 ("[F]ailure to disclose a position in response to a contention interrogatory can result in preclusion of that position.").

additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . .[31]

Pursuant to Rule 37(c)(1), failure to follow Rule 26(e) will warrant preclusion of omitted information, "unless the failure was substantially justified or is harmless."[32]  Failure to timely amend a contention interrogatory can bar use of a theory of liability, especially when such failure results in prejudice to the adverse party.[33]  However, prejudice is not required for preclusion under Rule 37(c)(1).[34]

---

[31]    Fed. R. Civ. P. 26(e)(1)(A).

[32]    Fed. R. Civ. P. 37(c)(1).

[33]    *See Unigene Labs. v. Apotex, Inc.*, No. 06 Civ. 5571, 2010 WL 2730471, at *6 (S.D.N.Y. July 7, 2010), *aff'd*, 655 F.3d 1352 (Fed. Cir. 2011) ("[W]here there is substantial prejudice to the Plaintiffs — namely, not being advised of the contours of [a] claim until long after the termination of discovery and the filing of dispositive motions — the Defendants' failure to amend their contentions results in [a] claim being deemed waived.").  *See also Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006) (upholding district court's exclusion of evidence where defendant would have been prejudiced by having to obtain additional expert testimony after the close of discovery).

[34]    *See Wechsler,* 1999 WL 672902, at *3 ("[P]roof of unfair prejudice . . . is not a prerequisite to preclusion.  The estoppel principles applied in [the Second] Circuit to contention interrogatory responses implicitly presume unfair prejudice will result if the responding party subsequently alters his position.") (citing *Prince Group*, 1998 WL 273099, at *3; *Guadagno v. Wallack Ader Levithan Assoc.*, 950 F. Supp 1258, 1261, (S.D.N.Y. 1997), *aff'd*, 125 F.3d 844 (2d Cir. 1997)).

Nor, in the Second Circuit, does Rule 37(c)(1) necessitate a showing of bad faith.[35]

## IV.   DISCUSSION

Plaintiffs did not mention the Star Theory, or identify CUSA with Skyline in any way in their response to the Contention Interrogatories.  Plaintiffs did not amend their contentions to reflect their current theory, nor do they provide justification for this failure.  Furthermore, plaintiffs have not shown that this omission was harmless.  Because plaintiffs have not asserted substantial justification for their omission, or proven that failure to amend will not harm CUSA, plaintiffs cannot be permitted to pursue their current theory of liability against CUSA at Skyline.

Plaintiffs argue that CUSA was aware of claims against it at Skyline because "Chevron" was listed beside Skyline in CMO 107.  As plaintiffs concede, the term "Chevron" has been used to refer to both Chevron Corporation and CUSA in various litigation documents.[36]  Nonetheless, plaintiffs argue that CUSA should have inferred from CMO 107 that plaintiffs were seeking damages against CUSA at Skyline.  The Court accepts that plaintiffs believed "Chevron," as used in CMO

---

[35]      *See Design Strategy*, 469 F.3d at 296 (holding, as a matter of first impression, that Rule 37(c)(1) does not require a showing of bad faith).

[36]      *See* CUSA Reply 56.1 ¶ 3.

-10-

107, encompassed CUSA.[37]  However, given the term's ambiguity, I cannot hold that CUSA's acknowledgment of CMO 107 constituted an admission that CUSA knew that plaintiffs had claims against it at Skyline.

In any event, CMO 107 cannot relieve plaintiffs of their responsibility to amend interrogatory responses.  Plaintiffs failed to "truthfully and completely" assert that they were pursuing damages against CUSA at Skyline in their contentions.[38]  Plaintiffs' contentions distinguish between Texaco and "Chevron," and make no mention of either "Chevron" or Star in connection with Skyline. Plaintiffs' contentions do not disclose facts supporting claims against CUSA at Skyline.  Their response does not describe — or even hint at — the Star Theory. Furthermore, plaintiffs should have been aware of this omission given Dr. Keeley's report.[39]  Plaintiffs were obligated to timely amend their contentions, or otherwise notify CUSA of their intention to pursue claims against CUSA at Skyline.[40]

Plaintiffs also argue that they should not be barred from pursuing

---

[37]    *See Rivera*, 702 F.3d at 693 (on summary judgment, the court must draw all reasonable inferences in favor of the non-movant).

[38]    *See Wechsler*, 1999 WL 672902, at *2.

[39]    *See* Keeley Report, Ex. 4 to Anderson Decl. ¶ 29 ("There is no allegation that Chevron supplied gasoline to [Skyline].").

[40]    See Fed. R. Civ. P. 26(e)(1)(A).

these claims because CUSA has not proven bad faith or prejudice.  But bad faith is not a prerequisite for Rule 37(c) sanctions in the Second Circuit,[41] and CUSA does not have the burden of proving prejudice.[42]  On the contrary, an undisclosed theory will be precluded "*unless* the failure [to disclose] was substantially justified or is harmless."[43]  Plaintiffs have not substantiated their claim that the omission will not prejudice CUSA, while CUSA has submitted evidence of prejudice.[44]

   In light of the importance of site-specificity in this case, the omission of a defendant's name in an interrogatory identifying defendants with trial sites is material.  Plaintiffs' omission was no mere procedural technicality, and advancing a new theory of liability after the close of discovery is not presumptively harmless.[45]  Given the likelihood of prejudice to CUSA, plaintiffs cannot be

---

[41] *See Design Strategy*, 469 F.3d at 296.

[42] *See Wechsler*, 1999 WL 672902, at *3.

[43] *See* Fed. R. Civ. P. 37(c)(1) (emphasis added).

[44] *See, e.g.*, Declaration of Dr. Michael Keeley, Ex. 5 to Anderson Decl. ¶¶ 5–6 (declaring that, due to plaintiffs' omission, CUSA's expert report did not analyze a theory of liability against CUSA at Skyline).

[45] *See Unigene Labs.*, 2010 WL 2730471, at *6 (failure to disclose a claim until after discovery constituted "substantial prejudice"); *Wechsler*, 1999 WL 672902, at *3 (finding that "defendants would likely be unfairly prejudiced" if plaintiffs were allowed to present an argument they had not disclosed until after the close of discovery).

allowed to assert their current theory of liability.[46]

## V.   CONCLUSION

For the foregoing reasons, CUSA's motion for summary judgment is

GRANTED.  The Clerk of the Court is directed to close this motion (Doc. No.

289).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.


Dated:         New York, New York
               February 12, 2013

_____

[46]    CUSA also claims that plaintiffs do not have sufficient evidence from
which a reasonable fact finder could infer CUSA's liability.  The Court need not
address this claim because plaintiffs' theory of liability is barred by the Federal
Rules of Civil Procedure.

**- Appearances -**

**For Plaintiffs:**

Michael Axline, Esq.
Miller, Axline & Sawyer
1050 Fulton Avenue, Suite 100
Sacramento, California  95825
(916) 488-6688

**For Defendant Chevron, U.S.A., Inc.:**

Robert E. Meadows, Esq.
James J. Maher, Esq.
Jeremiah J. Anderson, Esq.
King & Spalding LLP
1100 Louisiana, Suite 4000
Houston, Texas  77002
(713) 751-3200

Charles C. Correll, Jr., Esq.
King & Spalding LLP
101 Second Street, Suite 2300
San Francisco, California  94015
(415) 318-1200