USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/18/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------ X
                                                  :
IN RE: METHYL TERTIARY BUTYL                      :
ETHER ("MTBE") PRODUCTS                           :     OPINION AND ORDER
LIABILITY LITIGATION                              :
------------------------------------------------  :     Master File No. 1:00-1898
                                                  :     MDL 1358 (SAS)
This document relates to:                         :     M21-88
                                                  :
*New Jersey Dep't of Envtl. Prot. v. Atlantic*    :
*Richfield Co.,* No. 08 Civ. 312 (SAS)            :
                                                  :
------------------------------------------------ X

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.      INTRODUCTION

        This is a consolidated multi-district litigation ("MDL") relating to

contamination — actual or threatened — of groundwater from various defendants'

use of the gasoline additive methyl tertiary butyl ether ("MTBE") and/or tertiary

butyl alcohol, a product formed by the breakdown of MTBE in water.  In this case,

the New Jersey Department of Environmental Protection ("NJDEP"), the

Commissioner of the New Jersey Department of Environmental Protection, and the

Administrator of the New Jersey Spill Compensation Fund allege that Shell Oil

Company, Shell Oil Products Company LLC, Shell Trading (US) Company,

Equilon Enterprises LLC, and Motiva Enterprises LLC's (collectively, "Shell") use

1

and handling of MTBE has contaminated, or threatened to contaminate groundwater surrounding the Village of Ridgewood, New Jersey (the "Ridgewood Site"). Familiarity with the facts of this is presumed for the purposes of this Order.

Currently before the Court is Shell's motion for partial summary judgment on the ground that plaintiffs have not presented sufficient evidence from which a reasonable jury could find Shell liable for primary restoration costs at the Ridgewood Site. For the reasons stated below, the motion is GRANTED.

## II.   BACKGROUND[1]

In 1987, MTBE was detected in groundwater at the Ridgewood Site.[2] Since that time, Shell has worked to remediate the groundwater contamination at the direction of the NJDEP.[3] "On August 31, 2000, the NJDEP issued an Administrative Order and Notice of Civil Administrative Penalty Assessment

---

[1]      The facts recited below are drawn from the pleadings, the parties' Local Civil Rule 56.1 Statements, the declarations submitted in connection with this motion, and the exhibits attached thereto. These facts are undisputed unless otherwise noted. Where disputed, the facts are viewed in the light most favorable to the nonmoving party. *See Beard v. Banks*, 548 U.S. 521, 529–30 (2006).

[2]      *See* Shell's Rule 56.1 Reply to Plaintiffs' Statement of Material Facts Submitted in Opposition to Shell's Motion for Summary Judgment ("Shell Reply 56.1") ¶ 1.

[3]      *See* Memorandum of Law in Support of Shell's Motion for Partial Summary Judgment on Plaintiffs' Claim for Primary Restoration at the Ridgewood Trial Site ("Shell Mem.") at 1.

against Shell for the Ridgewood Site."[4]  In 2007, Shell and the NJDEP entered into an Administrative Consent Order ("ACO"), settling the NJDEP's claims for alleged violations or shortcomings in remediation at the Ridgewood Site.[5]  The ACO provided that a remedial action work plan would be designed and implemented according to NJDEP standards and subject to NJDEP review.[6]  The ACO provided that "[t]he scope of the investigation and remediation required . . . [would] include all contaminants at the [Ridgewood Site], and all contaminants which are emanating from or which have emanated from the Site."[7] The ACO did not preclude the NJDEP from seeking further relief for "natural resource damages relating to the [Ridgewood] Site including, but not limited to, the cost of restoration and replacement, where practicable, of any natural resource damaged or destroyed . . . ."[8]

---

[4]     Shell Reply 56.1 ¶ 6.

[5]     *See id.*

[6]     *See* 1/9/07 Administrative Consent Order (SH-NJ-BB000058-000072) ("ACO"), Ex. 5 to Declaration of Richard E. Wallace, Jr., counsel for Shell, in Support of Shell's Motion for Partial Summary Judgment ("Wallace Decl.") ¶¶ 13–17.

[7]     *Id.* ¶ 12.

[8]     *Id.* ¶ 75.

3

In its efforts to remediate the Ridgewood Site, Shell employed two active remediation systems, both of which ceased operation in 2009 with the approval of the NJDEP.[9]  The NJDEP reiterated its approval of the active remediation shutdown in 2010.[10]  That same year, the Ridgewood Site's current Licensed Site Remediation Professional ("LSRP"), Julian Davies, took control of the remediation.[11]  Pursuant to New Jersey's 2009 Site Remediation Reform Act,[12] the party responsible for remediation of a contaminated site must pay for an independent LSRP, who is authorized "to conduct investigations, approve remedial alternatives, and determine when remedial action is complete."[13]  In 2012, Davies approved the permanent shutdown and removal of both active remediation systems.[14]  Davies — who is bound by NJDEP standards[15] — approved Monitored

---

[9]     *See* Shell Reply 56.1 ¶¶ 19–22.

[10]    *See id.* ¶ 23.

[11]    *See id.* ¶ 12.  Plaintiffs object to Davies' declaration in support of Shell's motion, in part because Davies has not been designated as an expert witness.  In ruling on this motion, the Court does not rely on Davies' opinions.

[12]    N.J. Stat. Ann. § 58:10C-1 *et seq.*

[13]    Shell Mem. at 4.

[14]    *See* Shell Reply 56.1 ¶ 26.

[15]    *See id.* ¶ 15 ("Mr. Davies is required to oversee the remediation of contaminated sites in accordance with NJDEP's applicable standards, regulations

4

Natural Attenuation as the ongoing remedial strategy at the Ridgewood Site.[16]

Plaintiffs' expert, hydrogeologist Anthony Brown, opines that it is necessary to add monitoring wells at the Ridgewood Site.[17]  He submits that "[r]emediation performed to date may have effectively addressed on-site water contamination[,]" but that it has not effectively stopped the "off-site migration of groundwater contamination . . . ."[18]  He "does not disagree with NJDEP's approval of the shutdown of the active remediation systems at the Ridgewood Site."[19]  However, Brown asserts that he cannot determine whether groundwater at the Ridgewood Site has been remediated to a "risked-based" contamination level of 70 parts per billion ("ppb")[20] because, in his opinion, the extent of the contamination

---

and technical guidance for responsible parties.").

[16]     *See id.* ¶ 31.

[17]     *See id.* ¶ 45.

[18]     Revised Site Summary, ID # 11346 Shell Service Station #138490, Jan. 2013 ("Brown Report"), Ex. B to Declaration of Anthony Brown in Support of Plaintiffs' Opposition to Shell's Motion for Partial Summary Judgment ("Brown Decl."), at 56.

[19]     *See* Shell Reply 56.1 ¶ 53.

[20]     Under the New Jersey Administrative Code, the lowest concentration of MTBE "that can be reliably achieved among laboratories within specified limits of precision and accuracy" is 1 ppb.  N.J. Admin. Code §§ 7:9C-1.4, 7:9C-1 App. Tbl. 1. The "ground water quality criteria," meaning "the designated levels or concentrations of [MTBE] that, when exceeded, will prohibit or significantly

has not been sufficiently delineated.[21]  Brown's analysis suggests that

contamination has spread beyond the ability of the current monitoring wells to

measure.[22]

Without providing a reason for the necessity of primary restoration,

Brown asserts that "the necessary first step in restoring the groundwater [at the

Ridgewood Site] . . . to its pre-discharge condition is to do [sic] delineate the extent

of contamination to . . . 1 ppb."[23]  He opines that "multiple data gaps" must be

addressed to "[a]ssist in the selection, design, and implementation of a restoration

approach, or support a determination that no further restoration is needed."[24]  The

increased monitoring measures Brown recommends — eighteen new wells and five

years of additional monitoring — would cost approximately $1.3 million.[25]  Brown

---

impair a designated use of water" is 70 ppb.  *Id.*  Plaintiffs submit that the standard
for "remediation" of groundwater contaminated by MTBE is 70 ppb, and the
standard for "restoration" is 1 ppb.  They effectively ask this Court to use
administrative groundwater quality criteria as a standard of liability.  I need not
find that these measurements constitute legal standards for remediation and
primary restoration under the New Jersey Spill Act.  Those legal standards are
discussed *infra* Part IV.

[21]     Brown Decl. ¶ 4.

[22]     *Id.* ¶ 16.

[23]     *Id.* ¶ 4.

[24]     *Id.* ¶ 20.

[25]     *See* Shell Reply 56.1 ¶ 48.

6

does not identify clean up or removal costs aside from the costs of investigation.[26]

## III.   APPLICABLE LAW

### A.   Summary Judgment

Summary judgment is appropriate "only where, construing all the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in that party's favor, there is 'no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law.'"[27] "A genuine dispute exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[28] "A fact is material if it might affect the outcome of the suit."[29]

"The moving party bears the burden of establishing the absence of any genuine issue of material fact."[30]  To defeat a motion for summary judgment, the non-moving party "'must do more than simply show that there is some

---

[26]     *See id.* ¶ 49.

[27]     *Rivera v. Rochester Genesee Regional Transp. Auth.*, 702 F.3d 685, 693 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)) (some quotation marks omitted).

[28]     *Finn v. N.Y. State Office of Mental Health-Rockland Psychiatric Ctr.*, 489 Fed. App'x 513, 514 (2d Cir. 2012) (quotation marks omitted).

[29]     *Windsor v. United States*, 699 F.3d 169, 192 (2d Cir. 2012).

[30]     *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  *Accord Powell v. Donahoe*, 519 Fed. App'x 21, 22 (2d Cir. 2013).

metaphysical doubt as to the material facts,'"[31] and "'may not rely on conclusory allegations or unsubstantiated speculation. . . .'"[32]

In deciding a motion for summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."[33] "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"[34]

## B.    The New Jersey Spill Act

The New Jersey Spill Compensation and Control Act (the "Spill Act") provides, in pertinent part: "[A]ny person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance, shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and

---

[31]    *Valenti v. Penn Mut. Life Ins. Co.*, 511 Fed. App'x 57, 58, (2d Cir. 2013) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[32]    *Northeast Research, LLC v. One Shipwrecked Vessel,* 729 F.3d 197, 214 (2d Cir. 2013) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).

[33]    *Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.*, 677 F.3d 109, 119 (2d Cir. 2012).

[34]    *Redd v. New York Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

8

removal costs no matter by whom incurred."[35]   Under the Spill Act — which is to

be "liberally construed"[36] — a discharger may be liable for the costs of

"remediation" and "primary restoration."[37]   "[R]emediation involves the cleanup of

contaminants to 'risk-based' levels, whereas 'restoration' [. . .] requires return of

the natural resource to its pre-discharge condition (primary restoration) . . . ."[38]

      The right to recover primary restoration costs under the Spill Act is

well established.[39]  However, the Superior Court of New Jersey, Appellate Division

has held that primary restoration costs may be denied where the plaintiff has not

shown that its "proposed [restoration] plan would justify the cost, or that the public

would be harmed if [the defendant's plan were implemented]."[40]  Thus, plaintiffs

---

[35]    N.J. Stat. Ann. § 58:10–23.11g.c.(1).

[36]    *Id.* § 58:10-23.11x ("This act, being necessary for the general health, safety, and welfare of the people of this State, shall be liberally construed to effect its purposes."). *Accord New Jersey Dep't of Envtl. Prot. v. Dimant*, 51 A.3d 816, 820–21 (N.J. 2012).

[37]    *New Jersey Dep't of Envtl. Prot. v. Exxon Mobil Corp.*, 923 A.2d 345, 348 (N.J. Super. Ct. App. Div. 2007).

[38]    *Id.*

[39]    *See id.* at 354 (citing *In re Kimber Petroleum Corp.*, 539 A.2d 1181 (N.J. 1988)) (observing that "clean up and removal costs" include "the costs of natural resource physical restoration").

[40]    *New Jersey Dep't of Envtl. Prot. v. Essex Chem. Corp.*, No. A-0367-10T4, 2012 WL 913042, at *7 (N.J. Super. Ct. App. Div. Mar. 20, 2012). Although the trial court recognized an injury to the groundwater itself, it observed

bear the "burden of proof on primary restoration damages."[41]

## IV.   DISCUSSION

Although Shell must prove it is entitled to summary judgment, this does not relieve plaintiffs of their burden to prove that they are entitled to primary restoration damages at the Ridgewood Site.  Plaintiffs assert that they should be able to recover primary restoration costs because Shell has not restored the groundwater surrounding the Ridgewood Site to its pre-discharge condition.  But plaintiffs do not seek to recover the costs of primary restoration.  Rather, they want Shell to pay for more investigation.  Plaintiffs' claims rest on an expert report which states that further investigation "may" reveal the necessity of additional remediation or for primary restoration — or may reveal nothing.[42]  Thus, plaintiffs do not present evidence from which a reasonable jury could conclude that Shell is liable for primary restoration costs at Ridgewood.

Plaintiffs assert that they are entitled to seek restoration damages regardless of any remediation Shell has already undertaken.  Under New Jersey

---

that primary restoration costs were not appropriate, in part because "contamination [had] not affected any flora or fauna nor [had] it affected the health and/or safety of the people of [New Jersey]." *Id.* at * 4.

[41]     *Id.* at *8.

[42]     *See* Brown Decl. ¶¶ 16, 20.

law, the NJDEP is entitled to recover the costs of restoring a natural resource to its

pre-discharge state.[43]  But New Jersey courts have granted restoration costs in cases

of particularized environmental injury,[44] and denied recovery where no such injury

was demonstrated.[45]  Moreover, plaintiffs have not cited a single case in which the

NJDEP has recovered "primary restoration costs" for investigation alone.

Plaintiffs have not alleged any specific deleterious environmental impact, or

suggested what restoration measures would eventually need to be performed.  The

Court cannot allow plaintiffs to seek costs incidental to primary restoration where

there is no evidence that restorative measures are necessary or will even be

implemented.

## V.    CONCLUSION

For the foregoing reasons, Shell's motion for partial summary

judgment is GRANTED.  The Clerk of the Court is directed to close this motion

---

[43]    *See Exxon Mobil*, 923 A.2d at 354.

[44]    *See id.* at 350 (granting primary restoration costs where measures such as dredging and replanting were necessary to restore tidal flow to salt marshes).

[45]    *See Essex Chem.*, 2012 WL 913042, at *7 .  Plaintiffs object to this unpublished case based on a New Jersey Rule of Court which states that unpublished cases do not have binding or precedential weight.  This Court is not bound by the New Jersey Rules of Court, and only gives persuasive weight to this case. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 111–12 (2d Cir. 2013).

(Doc. No. 284).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            February 18, 2014

12

# - Appearances -

**For Plaintiffs:**

John J. Hoffman
Gwen P. Farley
Office of the Attorney General of the State of New Jersey
P.O. Box 080
Trenton, New Jersey  08625
(609) 292-4925

Leonard Z. Kaufmann, Esq.
Cohn, Lifland, Pearlman, Herrmann & Knopf LLP
Park 80 Plaza West One
Saddle Brook, New Jersey  07663
(201) 845-9600

**For Shell:**

Richard E. Wallace, Jr., Esq.
Michael L. Williams, Esq.
Marie S. Dennis, Esq.
Sedgwick LLP
2900 K Street, NW
Harbourside, Suite 500
Washington, D.C.  20007
(202) 204-1000

13