USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/14/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION

This document relates to:

*New Jersey Dep't of Envtl. Prot. v. Atlantic Richfield Co.*, No. 08 Civ. 312 (SAS)

**OPINION AND ORDER**

Master File No. 1:00-1898
MDL 1358 (SAS)
M21-88

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I. INTRODUCTION

This is a consolidated multi-district litigation ("MDL") relating to contamination — actual or threatened — of groundwater from various defendants' use of the gasoline additive methyl tertiary butyl ether ("MTBE") and/or tertiary butyl alcohol, a product formed by the breakdown of MTBE in water. In the instant case, the New Jersey Department of Environmental Protection ("NJDEP"), the Commissioner of the New Jersey Department of Environmental Protection, and the Administrator of the New Jersey Spill Compensation Fund allege that Getty Properties Corporation's ("Getty") use and handling of MTBE has contaminated, or threatened to contaminate groundwater under its jurisdiction. Familiarity with

the facts of this case is presumed for the purposes of this Opinion.

Getty seeks contribution from Robert Melecci, H.P. Delta, Inc. ("H.P. Delta"), and Dhandi Transport Inc. ("Dhandi") under the New Jersey Joint Tortfeasors Contribution Law,[1] the New Jersey Comparative Negligence Act,[2] and the New Jersey Spill Compensation and Control Act (the "Spill Act").[3] Getty also seeks common law indemnification from these parties. Dhandi and H.P. Delta each move for summary judgment on the ground that Getty cannot prove a causal nexus between their alleged discharges and the groundwater contamination at issue as required by New Jersey law.[4] For the reasons stated below, the motion for summary judgment is DENIED.

---

1 *See* N.J. Stat. Ann. § 2A:53A-1, *et seq*.

2 *See id.* § 2A:15-5, *et seq.*

3 *See id.* § 58:10-23f.a.(2)(a).

4 *See New Jersey Dep't of Envtl. Prot. v. Dimant*, 51 A.3d 816, 830–31 (N.J. 2012). H.P. Delta relies upon and incorporates by reference the arguments set forth in Dhandi's brief and supporting documentation. *See* Memorandum of Law in Support of H.P. Delta's Motion for Summary Judgment ("H.P. Delta Mem.") at 1.

## II.   BACKGROUND[5]

From 1985 through 1987, Getty owned four underground storage tanks ("USTs") at the H.P. Delta Site (the "Site") and supplied gasoline to the station at that Site.[6] In 1987, one of these tanks failed a tightness test, and as a result, all four tanks were removed.[7] Gasoline-contaminated soil was left stockpiled at the Site for four months after the tank excavation, leading the NJDEP to issue an administrative consent order directing Getty to submit "sampling results to the NJDEP within five days, properly dispose of the contaminated soil within seven days, and submit a receipt of the proper disposal" within two weeks.[8] The contaminated soil was subsequently removed, and the "NJDEP did not require further action regarding the removal of the USTs and subsequent disposal of stockpiled soil."[9]

---

[5]   The facts recited below are drawn from the pleadings, the parties' Local Civil Rule 56.1 Statements, the declarations submitted in connection with this motion, and the exhibits attached thereto. These facts are undisputed unless otherwise noted. Where disputed, the facts are viewed in the light most favorable to the nonmoving party. *See Beard v. Banks*, 548 U.S. 521, 529–30 (2006).

[6]   *See* Expert Report of James A. Schaefer, Jr. ("Schaefer Report"), Ex. 2 to Declaration of Kevin T. Bright, counsel for Dhandi, in Support of Dhandi's Motion for Summary Judgment ("Bright Decl."), at 4.

[7]   *See id.* at 8.

[8]   *Id.* at 10.

[9]   *Id.*

In 1988, Melecci, the Site's owner, installed new USTs as part of the gasoline dispensing system that is still in operation at the Site today.[10] There were no "regulatory reported environmental incidents" at the Site between 1989 and 2003.[11] In 2003, Melecci leased the station's operations to H.P. Delta.[12] Dhandi, a gasoline transport company, began delivering gasoline to the station that same year.[13] In 2004, the NJDEP issued a spill incident report after "[a] turbine spill containment sump on the UST containing regular gasoline was observed to be filled with gasoline."[14]

In 2005, MTBE was first detected in wells located southwest of the Site.[15] In 2006, the NJDEP conducted a compliance inspection of the Site's gasoline dispensing system.[16] "The inspection revealed soil contamination and

---

10 *See id.*

11 *Id.* at 11.

12 *See id.*

13 *See* Memorandum of Law in Support of Dhandi's Motion for Summary Judgment ("Dhandi Mem.") at 1.

14 Schaefer Report at 11.

15 *See id.* at 11–13.

16 *See id.* at 13.

floating product in observation wells . . . at the Site among other violations."[17] The NJDEP issued a UST Field Notice of Violation to H.P. Delta, noting "deficiencies in tank overfill protection."[18] The NJDEP imposed a delivery ban, and ordered that the USTs be emptied within forty-eight hours.[19]

In response to the NJDEP's directive, H.P. Delta sued Melecci in New Jersey Superior Court, claiming that contamination at the Site came primarily from the former USTs.[20] H.P. Delta subsequently amended its complaint to include Getty as a defendant.[21] Melecci filed a third party complaint against Dhandi, claiming that Dhandi's negligence during gasoline deliveries contributed to the contamination.[22] On April 12, 2011, Getty sued Dhandi and H.P. Delta for indemnification and contribution as part of the MDL proceedings, resulting in the

---

17 *Id.*

18 *Id.*

19 *See id.*

20 *See* H.P. Delta's Complaint and Jury Demand (No. MID-L-7781-07), Ex. 4 to Bright Decl. ¶¶ 8–9.

21 *See* H.P. Delta's First Amended Complaint and Jury Demand (No. MID-L-7781-07), Ex. 6 to Bright Decl., ¶ 5.

22 *See* Melecci's Answer, Affirmative Defenses, Counterclaim and Third Party Complaint (No. MID-L-7781-07), Ex. 5 to Bright Decl., at 6–8.

stay of the state court proceedings.[23]

In the instant action, plaintiffs sue Getty, alleging that discharges at the Site caused contamination at off-site production wells.[24] NJDEP representative Gary Lipsius testified that the NJDEP believes that it is "likely" that MTBE contamination at the Site "is in some part responsible for the potable well contamination" at issue in this case.[25] The NJDEP's expert, Anthony Brown, concluded that discharges of MTBE gasoline occurred at the Site, and that "MTBE in groundwater extends at least 1,350 feet to the west-southwest of the Site . . . ."[26] Brown has further opined that while under natural conditions the regional groundwater in the area would flow to the northeast,

> the pumping of groundwater supply wells in the area has locally affected the groundwater flow patterns. It is likely that gradients in the bedrock in the vicinity of the Site were influenced by pumping at domestic supply wells. Given the distribution of these wells, groundwater in the bedrock likely flowed to the

---

23 *See* Dhandi's Local Rule 56.1 Statement of Material Facts in Support of Motion for Summary Judgment ("Dhandi 56.1") ¶ 32.

24 *See* Revised Site Summary ID # - 41958 H.P. Delta Service Station ("Site Summary"), Ex. 9 to Bright Decl., at 46. Plaintiffs have not brought direct claims against Dhandi or H.P. Delta.

25 08/02/12 Deposition of Gary Lipsius ("Lipsius Dep."), Ex. 13 to Declaration of Susan M. Dean, counsel for Getty ("Dean Decl."), at 21.

26 Site Summary at 46 ("Gasoline releases have been reported at the Site in December 2004 and August 2006.").

> west-southwest [of the Site] when the supply wells were actively pumping.[27]

Getty's expert, James Schaefer, has opined that MTBE contamination detected at the off-site wells resulted from releases at the Site that occurred between 2004 and 2006.[28] According to Schaefer, one of the causes of the MTBE contamination at the off-site production wells "appears to be reported overfilling or spills/releases during gasoline deliveries made by Dhandi Transport."[29] Melecci has testified that he saw Dhandi spill gasoline at the Site on multiple occasions.[30]

## III. APPLICABLE LAW

### A. Legal Standard

Summary judgment is appropriate "only where, construing all the

---

27 *Id.* at 26.

28 Schaefer Report at 23 ("The investigation, testing, available Site related and public data and analysis of the same, indicate that MTBE detected at the off-Site wells were the result of the 2004-2006 hydrocarbon spills/release(s) at the HP Delta Service Station from the new UST system.").

29 *Id.* Dhandi and H.P. Delta dispute Schaefer's opinion, calling this statement "pure speculation, completely unsupported by fact." Dhandi Mem. at 15.

30 In the state court action, Melecci testified that Dhandi spilled "every time" it made deliveries, and that he was present for "at least 60%" of the deliveries. 12/24/08 Deposition of Melecci ("12/24/08 Melecci Dep."), Ex. 3 to Dean Decl., at 54–55. In this action, Melecci testified that he saw Dhandi spill a total of six times. *See* 09/12/12 Deposition of Melecci ("09/12/12 Melecci Dep."), Ex. 12 to Dean Decl., at 96–97.

evidence in the light most favorable to the non-movant and drawing all reasonable inferences in that party's favor, there is 'no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law.'"[31] "A genuine dispute exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[32] "A fact is material if it might affect the outcome of the suit."[33]

"The moving party bears the burden of establishing the absence of any genuine issue of material fact."[34] To defeat a motion for summary judgment, the non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,'"[35] and "'may not rely on conclusory

---

31 *Rivera v. Rochester Genesee Regional Transp. Auth.*, 702 F.3d 685, 693 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)) (some quotation marks omitted).

32 *Finn v. N.Y. State Office of Mental Health-Rockland Psychiatric Ctr.*, 489 Fed. App'x 513, 514 (2d Cir. 2012) (quotation marks omitted).

33 *Windsor v. United States*, 699 F.3d 169, 192 (2d Cir. 2012).

34 *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). *Accord Powell v. Donahoe*, 519 Fed. App'x 21, 22 (2d Cir. 2013).

35 *Valenti v. Penn Mut. Life Ins. Co.*, 511 Fed. App'x 57, 58, (2d Cir. 2013) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

allegations or unsubstantiated speculation . . . .'"[36]

"'The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution.'"[37] "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"[38]

**B. Contribution Under the New Jersey Spill Act**

The Spill Act provides, in pertinent part: "[A]ny person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance, shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs no matter by whom incurred."[39] Under the Spill Act, dischargers "shall have a right of contribution against all other dischargers and

---

[36] *Northeast Research, LLC v. One Shipwrecked Vessel,* 729 F.3d 197, 214 (2d Cir. 2013) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).

[37] *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 601 (S.D.N.Y. 2004) (quoting *Gallo v. Prudential Residential Servs. Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994)).

[38] *Redd v. New York Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

[39] N.J. Stat. Ann. § 58:10-23.11g.c.(1).

persons in any way responsible for a discharged hazardous substance or other persons who are liable for the cost of the cleanup and removal of that discharge of a hazardous substance."[40]

A party seeking contribution under the Spill Act must demonstrate a causal nexus between the discharge and the discharger.[41] "A nexus also must be demonstrated to exist between the discharge for which one is responsible — in any way — and the contaminated site for which cleanup and other related authorized costs are incurred."[42] Although "some causal link is undoubtedly required to impose liability for damages resulting from a discharge," courts should not "import[] a proximate-cause analysis into the calculus when assessing the bases for relief [under the Spill Act]."[43] There need only be a demonstrable nexus between "the discharger [and] the discharge that is alleged to be the, or a, culprit in the

---

40 *Id.* § 58:10-23.11f.a.(2)(a).

41 *See Dimant*, 51 A.3d at 830 ("[T]he phrase 'in any way responsible' requires some connection between the discharge complained of and the alleged discharger . . . .").

42 *Id.* at 831 (citing *New Jersey Tpk. Auth. v. PPG Indus.*, 197 F.3d 96, 106 (3d Cir. 1999)).

43 *Id.* at 833 ("Liability for post-discharge removal naturally exists independent of damages arising from a discharge itself. As a result, it appears that all liability under the Spill Act is not tied to a static causation nexus.").

environmental contamination in issue."[44]

## IV.  DISCUSSION

Dhandi and H.P. Delta allege that Getty is unable to prove either of the causal links necessary to sustain liability under the Spill Act.  *First*, they claim that there is not sufficient evidence for a reasonable finder of fact to conclude that they were responsible for discharges at the Site.  *Second*, they claim that Getty cannot link contamination at the Site to contamination in the off-site wells.  However, based on the record before the Court, there are triable issues of material fact as to both causal links.

Getty has produced evidence that both Dhandi and H.P. Delta were responsible for spills at the Site.  Schaefer has opined that MTBE contamination at the Site was the result of spills from the USTs in use when H.P. Delta operated the station, as well as Dhandi's overfilling during deliveries.[45]  Melecci's testimony supports that Dhandi spilled gasoline at the Site on multiple occasions.[46]  Getty has also produced evidence linking contamination at the Site to the off-site wells.  Both

---

[44]    *Id.* at 830.

[45]    *See* Schaefer Report at 23.

[46]    *See* 12/24/08 Melecci Dep. at 54–55. Melecci's conflicting testimony creates a triable issue of fact as to whether — and how often — Dhandi discharged MTBE gasoline at the Site.  *See* 09/12/12 Melecci Dep. at 95.

Schaefer's expert report and Brown's Site Summary link discharges that occurred at the Site to the off-site contamination.[47] The NJDEP believes it is "likely" that contamination at the Site contributed to the off-site contamination.[48] Getty has therefore submitted evidence of both causal links.

The moving parties rely heavily on *New Jersey Department of Environmental Protection v. Dimant*, citing factual similarities with this case and asserting that Getty has not proven a causal nexus as a matter of law.[49] However, the facts and procedural posture of *Dimant* are markedly different from this case. In *Dimant*, the New Jersey Supreme Court affirmed that a third party defendant was not liable for contribution under the Spill Act where the contamination at issue preceded that defendant's operations, and where a discharge had only been observed on one occasion.[50] After a trial, the lower court concluded that the

---

47 *See* Schaefer Report at 23; Site Summary at 26. Dhandi alleges that Brown's analysis of the groundwater flow demonstrates that the off-site contamination could not have originated at the Site. *See* Dhandi Mem. at 8–9. Because Brown opines otherwise, this is a disputed material fact not properly decided on summary judgment. *See Ebewo*, 309 F. Supp. 2d at 601.

48 *See* Lipsius Dep. at 21.

49 *See* Dhandi Mem. at 16.

50 *See Dimant*, 51 A.3d at 824–26, 835 ("[The NJDEP] never presented sufficient proof of a reasonable, tenable basis for how the drip of fluid . . . observed at [the defendant's business] one day in 1988 resulted in the contamination of the groundwater [off site].").

plaintiff had failed to link the defendant's discharge with the contamination for which the defendant was supposedly liable.[51] In contrast to *Dimant*, there are multiple discharges alleged in this case that are temporally consistent with the contamination at issue,[52] and my task on summary judgment "is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them."[53] This case is thus readily distinguishable from *Dimant*.

Moreover, *Dimant* clarified that a causal nexus inquiry under the Spill Act is not equivalent to a proximate cause analysis.[54] Getty need not prove that discharges by Dhandi or H.P. Delta at the Site were the primary or proximate cause of the contamination at the off-site wells. Evidence regarding other potential sources of contamination is not relevant. Getty has produced evidence from which a fact finder could reasonably conclude that Dhandi and H.P. Delta discharged gasoline at the Site,[55] and that discharges at the Site contaminated the off-site

---

[51] *See id.* at 835 ("In the end, the trial court here did what courts must do. It found the facts and, having found them, determined them lacking. The [NJ]DEP's proofs were inadequate to obtain the relief it sought from [the defendant].").

[52] *See* Schaeffer Report at 23; Site Summary at 46; 12/24/08 Melecci Dep. at 54–55.

[53] *Ebewo*, 309 F. Supp. 2d at 601.

[54] *See Dimant*, 51 A.3d at 833.

[55] *See* Schaeffer Report at 23; 12/24/08 Melecci Dep. at 54–55.

wells.[56] The Court cannot weigh this evidence, or decide whether it supports an inference of Dhandi's or H.P. Delta's liability at this time.[57]

## V. CONCLUSION

For the foregoing reasons, the motions for summary judgment are DENIED. The Clerk of the Court is directed to close these motions (Doc. Nos. 318, 324).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
March 14, 2014

---

[56] *See* Schaeffer Report at 23; Site Summary at 46.

[57] *See Redd,* 678 F.3d at 174. Given the issues of disputed fact raised by Getty, the Court need not consider plaintiffs' opposition papers. *See* Plaintiffs' Response to Third Party Motion for Summary Judgment; Plaintiffs' Local Rule 56.1 Statement of Material Facts in Opposition to Third Party Motion for Summary Judgment.

**- Appearances -**

**For Getty:**

John C. McMeekin II, Esq.
Susan M. Dean, Esq.
Rawle & Henderson LLP
1 South Penn Square
Philadelphia, Pennsylvania 19107
(215) 575-4200

**For Dhandi**:

Kevin T. Bright, Esq.
Lila Wynne, Esq.
Marshall, Dennehey, Warner, Coleman & Goggin
200 Lake Drive East, Suite 300
Cherry Hill, New Jersey 09002
(856) 414-6000

**For Plaintiffs:**

Michael Axline, Esq.
Miller, Axline & Sawyer
1050 Fulton Avenue, Suite 100
Sacramento, California 95825
(916) 488-6688

Gwen Farley
Assistant Attorney General
Office of the Attorney General of the State of New Jersey
25 Market Street, P.O. Box 093
Trenton, New Jersey 08625
(609) 985-2845

**For H.P. Delta:**

Stuart J. Lieberman, Esq.
Michael G. Sinkevich, Esq.
Lieberman & Blecher, P.C.
10 Jefferson Plaza, Suite 400
Princeton, New Jersey 09540
(732) 355-1311

**Liaison Counsel for Plaintiffs:**

Leonard Z. Kaufmann, Esq.
Cohn, Lifland, Pearlman, Herrmann & Knopf LLP
Park 80 Plaza West One
Saddle Brook, New Jersey 07663
(201) 845-9600

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
McDermott Will & Emery LLP
340 Madison Avenue
New York, New York 10017
(212) 547-5400