UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation

---

This Document Relates To:
*Commonwealth of Puerto Rico, et al. v.*

*Shell Oil Company, et al.,*
Case No. 07-CV-10470-SAS
Case No. 14-CV-1014-SAS

---

MDL No. 1358
C.A. No. 1:00-1898 (SAS)
M21-88

TAUBER OIL, COMPANY'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

COMES NOW Defendant Tauber Oil, Company ("Tauber Oil"), through undersigned attorneys and hereby submits this its Reply Brief in Support of its Motion to Dismiss for Lack of Personal Jurisdiction.

## I.
## Preliminary Statement

Plaintiffs reference nine (9) transactions involving defendant Tauber Oil (Tauber Oil) over a twelve year time span (1985-1997). Plaintiffs also ask the Court to consider transactions of non-party Tauber Petrochemical Company during the 1999-2000 timeframe and attribute those transactions to Tauber Oil[1] in determining whether Tauber Oil is subject to personal jurisdiction in the Commonwealth of Puerto Rico. Plaintiffs shuffle the deck of documents and submit a confusing mess of documents to create an illusion of more transactions than in truth

---

[1] Tauber Petroleum Company came into existence in 1999 as a wholly owned subsidiary of Tauber Oil Company. (See Reply Declaration of Kevin Wilson at ¶ 2). Tauber Oil had ten (10) transactions with Phillips Bartlesville between 1985-1997. (Wilson Reply Declaration at ¶ 3). Neither Tauber Oil nor Tauber Petroleum had sales of MTBE to any Phillips entity in 1998.

exist and to draw inferences that are not supported by the evidence.[2]  Paragraph 3 of the accompanying Reply Declaration of Kevin Wilson lists the ten (10) known Tauber Oil MTBE transactions with any Phillips related entity during the operation of the Phillips Puerto Rico Core facility.  Notwithstanding the confusion created by Plaintiffs' submission, there are essentially four (4) issues raised in Plaintiffs' response:

(1) When a Phillips corporation located in Bartlesville, Oklahoma voluntarily provides information[3] that it may be shipping MTBE to Puerto Rico, does the customer's act of providing such information for its own purposes satisfy the Constitution's Due Process requirement of "personal availment" to confer personal jurisdiction in Puerto Rico?

(2) Do the facts of the 1996 "Venezuela transaction"[4] provide a sufficient basis for jurisdiction?

(3) Are non-party Tauber Petroleum Corporation's transactions relevant and should they be considered for jurisdictional purposes?

(4) Did Tauber waive or forfeit its personal jurisdiction challenge?[5]

---

[2] Plaintiffs unnecessarily exceeded the total number of exhibits and total page count for exhibits, tossing over 300 pages of Exhibits at the Court, making vague references, and leaving the heavy-lifting to the Court to sort out whether Plaintiffs met their burden.

[3] At issue is information constituting the "nomination" by Phillips Petroleum//Chemical/or 66, all of Bartlesville, Oklahoma, of a vessel for transport and including information stating a destination of Puerto Rico.  The vessel nomination is done by the purchaser (i.e., Phillips Petroleum/Chemical/66) and takes place after the contract terms are delivered by Tauber to Phillips.

[4] All transactions, except one, were in Houston between Tauber Oil, a Texas corporation, and a Phillips corporation located in Oklahoma with title passing in Texas.  The exception is a transaction where Phillips 66 sought MTBE, Tauber Oil acquired the product in Venezuela from Ecofuels, sold it to Phillips 66 of Bartlesville, Oklahoma, title transferred simultaneously from Ecofuels to Tauber Oil to Phillips 66 in Venezuela, the MTBE was transported on Phillips 66's instruction on a vessel chartered by Ecofuels to Puerto Rico, either Ecofuels or Phillips 66 was the importer of record into Puerto Rico.  Phillips 66 resold the product to Phillips Puerto Rico Core, Phillips 66 transferred title to Phillips Puerto Rico Core at the loading flange in Puerto Rico and Phillips used its own laboratory to test the product when it arrived in Puerto Rico. (This transaction will be referred to as the Venezuela transaction) (*See* Wilson Reply Declaration at ¶ 5.)

[5] It is worth reminding the Court that Plaintiffs sought to hold this motion to dismiss in abeyance because, in their view, more discovery was needed. (*See* letter to Special Master Warner (LNFS #55114014) and Plaintiffs' agenda item no 1 for the March 19, 2014 status conference.)

## II.
## <u>Standard</u>

Plaintiffs bear the burden of establishing that the court has personal jurisdiction over the defendant. *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 567 (2d Cir. 1996). "[W]here the parties have conducted extensive discovery regarding the defendant's contacts with the forum state, but no evidentiary hearing has been held- the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Id.* "[W]hen an evidentiary hearing is held, the plaintiff must demonstrate the court's personal jurisdiction over the defendant by a preponderance of the evidence." *Id.* "[P]laintiff[s] may not rely on conclusory non-fact-specific jurisdictional allegations to overcome a motion to dismiss." *Commonwealth v. Shell Oil Co. (In re MTBE)*, No. 1:00-1898, MDL 1358 (SAS), 07-civ-10470, No. 2013 U.S. Dist. LEXIS 99288 (S.D.N.Y. July 12, 2013). Further, when a "defendant rebuts plaintiffs' unsupported allegations with direct highly specific, testimonial evidence regarding a fact essential to jurisdiction – and plaintiffs do not counter that evidence – the allegation may be deemed refuted." *In re Stillwater Capital Partners Inc. Litig.*, 851 F. Supp. 2d 556, 567 (S.D.N.Y. 2012). Plaintiffs must meet these evidentiary standards in sustaining an alter-ego or veil piercing theory of jurisdiction. *See Southern New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 138-139 (2d Cir. 2010).

## III.

1. **Tauber Oil does not purposefully avail itself of the laws of Puerto Rico when it receives information that its Oklahoma based purchaser may ship the MTBE product to Puerto Rico.**

Plaintiffs' cite no authority to support the conclusion that Tauber Oil's knowledge of subsequent transactions by its Oklahoma Phillips customer involving Puerto Rico establishes purposeful availment by Tauber Oil of the protections of Puerto Rico law. Plaintiffs offer

inference and innuendo and a confusing jumble of exhibits to conclude that Tauber Oil knew that MTBE it sold to Phillips Petroleum/Chemical/66 of Bartlesville, Oklahoma "would be purchased by Puerto Rico users" and "used by consumers [Puerto Rico]".  Plaintiffs' Opposition Brief at page 5.

### Tauber Oil's activities were not directed at Puerto Rico.

For each of the ten (10) MTBE transactions, the evidence shows that after reaching agreement on material terms, Phillips Petroleum/Chemical/or 66 of Bartlesville notified Tauber Oil of its nomination of a vessel for transport. (Wilson Reply Declaration at para. 3, Exhibits 1-10).  In five (5) of those transactions, Phillips Bartlesville voluntarily provided information identifying the shipment destination (*See* Walsh Declaration, Ex. A, 133:20-134:19).  This destination information was not material nor was it information that was customarily provided to Tauber Oil in transactions.  (*See id.*) From this information flow, Plaintiffs conclude that because Tauber Oil "knew" Phillips Bartlesville (or potentially some other intermediary) was reselling and shipping MTBE to Puerto Rico, that Tauber Oil's "activities" are directed at Puerto Rico. (See Plaintiffs' Opposition Memorandum at III B 1 at page 6).  The "activities" Plaintiffs rely on to show Tauber Oil directed its conduct and availed itself of the protections of Puerto Rico law is the voluntary unsolicited and immaterial transmission of information by its customer, Phillips Bartlesville's, Oklahoma, to Tauber Oil, and Tauber Oil not rescinding the contract.[6]

Plaintiffs further, and erroneously, conclude that Tauber Oil knew "its MTBE was blended into gasoline and then distributed to service stations throughout the island." (*See id.*)  To

---

[6] While it is conceivable that knowledge coupled with something more, such as other conduct directed at the MTBE gasoline market in Puerto Rico.  For example, advertising or on-island transport, distribution, marketing or other on-island sales or conduct.  Here it is merely the transmission of information that was not requested by Tauber Oil, was not material to the agreement, and was not customarily provided by Tauber Oil's customers.  The only additional conduct on Tauber Oil's part was performing on its agreement.

support this contention, Plaintiffs cite Tauber Oil's Memorandum of Law in support of its Motion to Dismiss at page 8, but what Tauber Oil cited in its Memorandum was what Phillips Puerto Rico Core disclosed in discovery that it had sales of gasoline on and off the island of Puerto Rico. This information was cited by Tauber Oil to confirm that, even assuming arguendo that the MTBE Tauber sold to Phillips Bartlesville Oklahoma was actually delivered to Puerto Rico and blended into gasoline (a fact Plaintiffs conclude but do not prove), Philips Puerto Rico Core's discovery responses state that the gasoline may not have remained in Puerto Rico. The exhibits Plaintiffs cite to suggest that Core did not export MTBE gasoline reference only two (2) transactions (*See* Arenas Dec., Ex. 9, January 1996 CPCPR033170-172 and August 1996 CPCPR 032529-30; 032522-23). Plaintiffs offer no evidence to show that two transactions they reference were the only shipments off-island. Based on the discovery provided by Phillips Puerto Rico Core, it is unclear whether any MTBE that may have been sold by Tauber is at issue in this case. Thus, Plaintiffs response does not sufficiently refute the information provided by Phillips Puerto Rico Core that its "gasoline" may not have remained in Puerto Rico.

At page 7 of their response, Plaintiffs simply conclude without any factual showing that MTBE sold by Tauber Oil was "blended at the Core facility, distributed throughout the island and contaminated Puerto Rico's groundwater." Plaintiffs' conclusory statements are not supported by the evidence they proffer.

### 2. The 1996 "Venezuela transaction" does not provide a sufficient basis for jurisdiction.

The 1996 Venezuela transaction differs from the others because Phillips 66 of Bartlesville, Oklahoma purchased MTBE from Tauber Oil outside the United States. The following facts are set forth in the Wilson Reply Declaration at para 5. Tauber Oil acquired MTBE from Ecofuel through Ecofuel's marketing representative American Agip located in New

York. The MTBE was produced in Venezuela, stored in tanks there and was simultaneously purchased and resold by Tauber Oil to Phillips 66 under incoterms "CIF" (cargo, insurance and freight) Guayama, Puerto Rico.  Inchcape Testing was retained for testing conducted in Venezuela and, remittance was to be made to Inchcape to First National Bank of Chicago, in Chicago, Illinois.   (See Wilson Reply Dec., Ex. 11 at TAUBER002096).  Inchcape documents show addresses in Dallas and Venezuela. (*Id.* at TAUBER02096, TAUBER002106).  Based on the transaction file documents, including those referenced in Plaintiffs' response papers, it does not appear that Tauber Oil was the importer of record and either Ecofuel or Phillips 66 was the importer of record into Puerto Rico. (*See* Wilson Reply Declaration at ¶ 5, Ex. 11 at TAUBER002068, and Ex. 12, 91:1-94:11).

>    **3.    Non-party Tauber Petrochemical Company's transactions are not relevant and should not be considered for jurisdictional purpose.**

Plaintiffs seek to support a claim of jurisdiction over Tauber Oil by citing the actions of a wholly-owned subsidiary, Tauber Petrochemical. Plaintiffs have not named Tauber Petrochemical as a party in either PR MTBE I or PR MTBE II and they have raised no allegations as to Tauber Petrochemical in any Complaint. In the Second Circuit, "[a] court may exercise personal jurisdiction over a subsidiary based on its jurisdiction over the parent company only when the subsidiary is an "alter ego" or "mere department" of the parent company." *Fagan v. Republic of Aus.*, 08 Civ. 6715 (LTS) (JCF), 2011 U.S. Dist. LEXIS 32058, at *58-60 (S.D.N.Y. March 25, 2011) Four factors should be considered in determining whether a subsidiary and a parent are alter egos: (1) whether there exists common ownership and the presence of an interlocking directorate and executive staff, (2) the degree of financial dependency of the subsidiary on the parent, (3) the degree to which the parent interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate

formalities, and (4) the degree of the parent's control of the subsidiary's marketing and operational policies." *Id*. (citing *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,* 751 F.2d 117, 120-22 (2d Cir.1984)). "A parent cannot assume the jurisdictional status of its subsidiary unless factors beyond common ownership suggest that their separate corporate identities are a mere facade," *Reers v. Deutsche Bahn AG*, 320 F. Supp. 2d 140, 156 (S.D.N.Y. 2004). Instead, there must be a finding of "extraordinary control." *Id*. at 158.

Puerto Rico courts require Plaintiffs to prove a higher standard for exercising jurisdiction over a subsidiary or related corporate entity. "Litigants who insist that the corporate veil be brushed aside" in measuring evidence of minimum contacts "must first prove three things: lack of corporate independence, fraudulent intent, and manifest injustice." *Velazquez v. P.D.I. Enterprises*, 141 F. Supp. 2d 189,192 (D.P.R. 1999).

Plaintiffs undertake no effort to establish even the most fundamental facts such as where Tauber Petrochemicals was formed, what its business is, who its employees are, when those employees were employed, and Plaintiffs make no showing whatsoever of the *Velazquez* factors. Plaintiffs' evidentiary submissions and jurisdictional allegations are insufficient to make out a prima facie demonstration of the requisite degree of control, lack of corporate independence, fraudulent intent, or manifest injustice necessary to establish jurisdiction over Tauber Oil through any actions of Tauber Petrochemical. Moreover, Plaintiffs failed to prove by a preponderance of the evidence that the Court has jurisdiction over Tauber Oil by and through any actions of Tauber Petrochemical.

> 4. **Tauber preserved its jurisdiction challenge and engaged in discovery of Plaintiff's jurisdictional claims.**

"In determining whether waiver or forfeiture of objections to personal jurisdiction has occurred, the court considers all relevant circumstances*." City of New York v. Mickalis Pawn*

*Shop, LLC,* 645 F.3d 114, 133 (2d Cir. 2011). "Although the passage of time alone is generally not sufficient to indicate forfeiture of a procedural right, the time period provides the context in which to assess the significance of the defendant's conduct, both the litigation activity that occurred and the opportunities to litigate the jurisdictional issue that were forgone." *Hamilton v. Atlas Turner, Inc.,* 197 F.3d 58, 61 (2d Cir. 2011).

In their analysis of the waiver/forfeiture argument, Plaintiffs rely on *Atlas Turner* in claiming Tauber Oil forfeited its properly raised defense. In *Atlas Turner*, however, the Second Circuit stated that the defendant could have moved for dismissal during the three years the case pended in the MDL court or even later, during the seven months it was pending in the original court after being transferred from the MDL court. *Id*. at 61-62. Instead, the defendant in that case waited until the eve of trial, four years after originally raising the personal jurisdiction defense, to move for dismissal. *Id*. at 62.

Tauber Oil preserved its personal jurisdiction defense and raised it during a time that the Second Circuit has recognized as proper and timely. *See id*. at 61-62. Moreover, as recent as March 7, 2014, it was Plaintiffs' position that Tauber Oil's Motion to Dismiss PR MTBE I for lack of personal jurisdiction was "premature." On March 7, 2014, the Commonwealth wrote Special Master Warner stating that "Tauber's recently filed motion to dismiss for lack of personal jurisdiction is improper and premature . . ." Although Plaintiffs presented to Special Master Warner that it was their position that Tauber Oil's Motion to Dismiss was premature because additional jurisdictional discovery was required. Plaintiffs also urged this issue in its March 7, 2014 preconference submission. Plaintiffs now purport a contradicting position that Tauber Oil's participation in discovery to this point is a forfeiture of Tauber Oil's properly raised and preserved personal jurisdiction defense.

At all times, Plaintiffs were aware or should have been aware of Tauber Oil's personal jurisdiction defense. Tauber Oil's discovery sought Plaintiffs' evidence that Tauber Oil had minimum contacts with Puerto Rico. (*See* Walsh Dec., Ex. H). To the extent that Tauber Oil served merit-based discovery, Plaintiffs' dilatory conduct naming Tauber Oil as a party five years into the litigation required Tauber Oil to comply with expedited discovery deadlines. The depositions of Tauber Oil that was taken focused on questions related to Tauber Oil's lack of knowledge that MTBE was being shipped to or used in Puerto Rico. (*See, eg. ,*Walsh Dec., Ex. A at 69:18-21, 73:13-75:6, 103:1-105:3, 133:13-23, 13:7-19). Finally, Tauber Oil noticed a single deposition, although it never took this deposition, requesting jurisdictional information such as Plaintiffs' knowledge of Tauber Oil's delivery or supply of any MTBE to Puerto Rico. (*See* Arenas Dec., Ex. 14). For example, designated issues included topics such as Plaintiffs' "knowledge concerning Tauber conducting any business-related purpose or activity in the RGA" and Plaintiffs' "knowledge that Tauber has solicited, advertised or marketed the sale of gasoline, gasoline containing MTBE or MTBE in the RGA and has ever taken any actions to create a market for gasoline, gasoline containing MTBE or MTBE in Puerto Rico." (*Id.* at 8.) This type of jurisdictional discovery does not waive a personal jurisdiction defense.

Waiver is an equitable doctrine. Plaintiffs cannot claim that on the one hand Tauber Oil's motion is premature and on the other hand claim that Tauber Oil has forfeited its personal jurisdiction defense by its limited participation in obtaining jurisdictional discovery from Plaintiffs. Despite Tauber Oil's serving jurisdictional discovery, Plaintiffs never provided any

responsive documents.[7]  *See* Tauber's Memorandum of Law at p. 8-9.  As such, Tauber Oil's jurisdictional defense was preserved and timely raised.

WHEREFORE, PREMISES CONSIDERED, Defendant Tauber Oil Company respectfully requests that this Court dismiss Plaintiffs' Third Amended Complaint filed in Case No. 07-CV-10470-SAS and Plaintiffs' First Amended Complaint filed in Case No. 14-CV-1014-SAS pursuant to Federal Rule of Civil Procedure 12(b)(2).

Respectfully submitted,

_____
MICHAEL A. WALSH
NYS Bar No. 20132191
Strasburger & Price, LLP
901 Main Street, Suite 4300
Dallas, Texas 75202-3794
(214) 651-4459
(214) 651-4330 (Facsimile)
michael.walsh@strasburger.com

**ATTORNEYS FOR DEFENDANT
TAUBER OIL COMPANY**

---

[7] Requiring Tauber Oil to have filed this Motion to Dismiss before receiving Plaintiffs' responses to Tauber Oil's jurisdictional discovery would leave Tauber Oil in the untenable position of potentially filing its Motion to Dismiss prematurely and receiving Plaintiffs' jurisdictional discovery, if ever, for the first time in response to the Motion to Dismiss.

## **CERTIFICATE OF SERVICE**

      I certify that on March 25th, 2014, a true and correct copy of this Reply Brief in Support of its Motion to Dismiss for Lack of Personal Jurisdiction by Tauber Oil Company was electronically served on counsel of record via LexisNexis File & Serve.

_____
      MICHAEL A. WALSH