Law Offices of
# MILLER, AXLINE & SAWYER
A Professional Corporation

DUANE C. MILLER  
MICHAEL AXLINE

TRACEY L. O'REILLY  
DANIEL BOONE  
JUSTIN MASSEY  
BRYAN BARNHART  
DAVE E. BLUM  
MOLLY MCGINLEY HAN

April 11, 2014

**VIA ELECTRONIC MAIL AND FEDERAL EXPRESS**

Honorable Shira A. Scheindlin  
United States District Judge  
Southern District of New York  
Daniel Patrick Moynihan Courthouse  
500 Pearl Street, Room 1620  
New York, NY 10007-1312

Re: MDL No. 1358; *Orange County Water District v. Unocal Corp., et al.*  
**Plaintiff Orange County Water District's Pre-Conference Letter Regarding the Service Station Matrix for April 16, 2014 Conference**

Dear Judge Scheindlin:

Plaintiff Orange County Water District (the "District") submits this letter regarding the above matter in advance of the April 16, 2014 conference.

Pursuant to the Court's direction, the District attended an in-person meet and confer on April 8, 2014, and made substantive proposals to streamline disputed issues concerning the Service Station Matrix. The District had previously outlined its position in detail on these disputed issues in multiple letters to defendants. The District's efforts focused on issues which were applicable to all defendants, stations, and causes of action. As defendants' letter states, the District's proposals would resolve a number of issues with respect to the Service Station Matrix.

The District disputes that the District was supposed to be prepared to discuss the voluminous evidence assembled in this matter which supports the District's identification of defendants as refiners or suppliers in the Service Station Matrix. The evidence is voluminous and involves hundreds of discovery responses, documents produced in discovery, and deposition

1050 Fulton Avenue, Suite 100, Sacramento, CA 95825-4225; Telephone: (916) 488-6688  
Facsimile: (916) 488-4288; Email: toxictorts@toxictorts.org

Honorable Shira A. Scheindlin
Page 2
April 11, 2014

testimony, and it would not have been a fruitful exercise to walk through this evidence piece by piece, particularly as the District's proposal will likely resolve many of the issues related to this evidence. The District has previously identified evidence and discovery responses where the evidence is located, all of which is equally accessible to defendants.

### Tesoro and Lyondell

As an initial matter, the District objects to the efforts of Tesoro and Lyondell to raise legal objections and issues concerning the District's overall claims in a letter describing a meet and confer process. In particular, defendants request for a dismissal with prejudice, without full briefing and opportunity for the District to fully respond, is improper and contrary to the District's due process rights. Defendants mention only a limited portion of the discovery responses the District has referred to in its meet and confer letters. The District notes that Lyondell never served discovery requests seeking the evidence it now claims the District lacks, and only served a meet and confer letter requesting this evidence on Thursday, March 27, 2014. The District thus had inadequate time to respond. Tesoro only served discovery requests seeking evidence related to post May 6, 2000, releases at the Bellwether Stations and did not serve any other requests seeking the specific evidence Tesoro now claims the District lacks.

More importantly, Tesoro and Lyondell's reliance on *Fresno* is misplaced. The evidence establishes that Tesoro and Lyondell are exactly the type of defendants for whom the Court developed the commingled product theory of proof. As the Court's opinion in *Fresno* states, the commingled product theory was developed because it would be "contrary to . . . public policy that the defendants would be able to escape *all* liability by the expedient of contaminating New York's environment in an undifferentiated mass . . ." (Op. at 64.) The theory allows a plaintiff to prove "that each defendant's product was part of the commingled mass that injured the plaintiff." (Op. at 53.) As in the *County of Suffolk*, Lyondell and Tesoro did not sell gasoline directly to the Bellwether Stations, but there products were part of the "undifferentiated mass" of gasoline that was distributed and sold to Orange County, including the Bellwether Stations.

Lyondell sold millions of barrels of MTBE during a period of some thirteen years - from at least 1986 to at least 1999 - to refineries in Southern California which supplied gasoline to the Bellwether Stations in Orange County. Defendants Arco, Chevron, Exxon, Shell, Texaco, and Unocal previously identified these refineries and provided verified discovery responses that these refineries were used by them to supply MTBE gasoline to their Bellwether Stations in Orange County. Discovery responses by these same defendants also confirm that Lyondell was their primary, if not their only, supplier of MTBE during extended periods of time. Lyondell's MTBE was thus part of the "undifferentiated mass" of MTBe gasoline that was manufactured by the refiners and distributed to the relevant stations for more than a decade.

Defendants who owned, operated or supplied MTBE gasoline to the Bellwhether Stations have identified Tesoro in verified discovery responses as supplier of both neat MTBE and MTBE

Honorable Shira A. Scheindlin
Page 3
April 11, 2014

containing gasoline, including, but not limited to, Arco, Shell, and Unocal. Tesoro's own product supply expert George Schink produced extensive spreadsheets showing that Tesoro refined, marketed, sold, and distributed millions of barrels of finished gasoline to terminals from which gasoline was distributed to stations in Orange County over a period of years, including community terminals in Orange County itself. Tesoro's gasoline products were thus part of the "undifferentiated mass" of gasoline that was picked up from the terminal and delivered to the relevant stations. Defendants who owned, operated or supplied MTBE gasoline to the Bellwether Stations have confirmed that these terminals were the primary source of gasoline for their stations.

The gasoline distribution system in Southern California is far more complex, spread out, and less interconnected than the system in Northern California. As the Court saw in the *Fresno* matter, in Northern California, there are only five refineries, all located in the Bay Area, which all utilize the same single collection terminal (Concord) and three pipelines to distribute the majority of gasoline in Northern California. By contrast, there are approximately fifteen refineries, located all across Southern California, which utilize up to fifteen terminals and several dozen pipelines to distribute gasoline across Southern California.

The District has been able to assemble evidence and directly connect all defendants other than Lyondell and Tesoro to the Bellwether Stations. These two defendants did not have any supply contracts or direct relationship with the Bellwether Stations. There is substantial evidence, however, that these two defendants supplied significant amounts of MTBE and MTBE gasoline, over an extended period of time, to the defendants who owned, operated or supplied gasoline to the Bellwether Stations. Tesoro's and Lyondell's products were thus part of the "undifferentiated mass" of MTBE gasoline that was delivered to and released from the Bellwether Stations, and commingle product theory should apply to the District's claims against these defendants.

Respectfully submitted,

Michael Axline
Counsel for Orange County Water District

cc:   All Counsel via LNFS
      Liaison Counsel via email