# McDermott
# Will & Emery

Boston  Brussels  Chicago  Düsseldorf  Frankfurt  Houston  London  Los Angeles  Miami
Milan  Munich  New York  Orange County  Paris  Rome  Seoul  Silicon Valley  Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Peter John Sacripanti
Chairman
psacripanti@mwe.com
+1 212 547 5583

May 8, 2014

BY ELECTRONIC MAIL AND HAND DELIVERY

The Honorable Shira A. Scheindlin
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1620
New York, New York  10007-1312

Re:   Master File C.A. No. 1:00-1898 (SAS), M21-88, MDL No. 1358
      *Defendants' Pre-Conference Reply Letter for May 13, 2014 Conference*

Dear Judge Scheindlin:

Defendants respectfully submit this reply letter ahead of the May 13, 2014 conference.

## PLAINTIFFS' AGENDA ITEMS

### I.   *Puerto Rico I:* Defendants' Requests for Admissions

Having now conferred with Plaintiffs on this issue, we understand their concern to be less about the number of Defendants' Requests For Admissions ("RFAs") but rather about (a) possible "overlap" in the RFAs, and (b) Plaintiffs' ability to respond to all RFAs in the thirty days permitted under Fed. R. Civ. P. 36. As to the former, Defendants have asked Plaintiffs to identify those RFAs they believe "overlap" with others, and will consider withdrawing those requests.[1]  As to the latter, Defendants have communicated our willingness to work with Plaintiffs within the constraints of the Court-ordered case management schedule, and await a proposal from Plaintiffs as to a reasonable extension of time to respond.  As of the writing of this letter, Defendants have received neither from Plaintiffs.

Notwithstanding the above, Plaintiffs state that they intend to "report on this topic at the Conference" and possibly "seek the Court's assistance if the meet and confer process does not *result in a more reasonable set of RFA's*." First, this placeholder for what is effectively a motion for protective order is procedurally improper.  Second, Plaintiffs also fail to provide any

---

[1] Defendants are also reviewing the RFAs to see if there are any we may voluntarily withdraw.

U.S. practice conducted through McDermott Will & Emery LLP.

340 Madison Avenue New York New York 10173-1922  Telephone: +1 212 547 5400  Facsimile: +1 212 547 5444  www.mwe.com

The Honorable Shira A. Scheindlin
May 8, 2014
Page 2

explanation of why an aggregate 1,473 RFAs are "excessive" in the context of this litigation, which involves many factual issues concerning the 9 "Trial Sites" and over two dozen different Defendants' involvement or non-involvement at those sites. They are not excessive.

Importantly, the number of RFAs served on a party "is not in itself the basis for a protective order." *General Elec. Co. v. Prince*, No. 06-Civ.-0050 (SAS)(MHD), 2007 U.S. Dist. LEXIS 6029, at *6 (S.D.N.Y. Jan. 10, 2007). Rather, in a given case, extensive RFAs covering a variety of issues may be "entirely appropriate, 'since the purpose of [RFAs] is not necessarily to obtain information but to narrow issues for trial.'"[2] *Pasternak v. Kim*, No. 10 Civ. 5045 (LTS) (JLC), 2011 U.S. Dist. LEXIS 113998, at *14 (S.D.N.Y. Sept. 28, 2011) (*citing Diederich v. Dep't of the Army*, 132 F.R.D. 614, 616 (S.D.N.Y. 1990)). Further, while Plaintiffs cite the total number of RFAs served by Defendants, they conspicuously omit that these were served in various discrete sets by many *different* Defendants.[3] In a multi-defendant case involving multiple causes of action and complex issues, where a plaintiff is seeking millions of dollars in damages jointly and severally against the defendants, a large number of RFAs is neither surprising nor inappropriate. *See, e.g., Heartland Surgical Specialty Hosp. v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 U.S. Dist. LEXIS 80182, at **9-12 (D. Kan. Oct. 29, 2007) (denying plaintiff's motion for protective order on sole basis of defendants' total 1,351 RFAs in multi-defendant, complicated antitrust conspiracy case).

Additionally, the circumstances of *this* case make the number of RFAs even more appropriate. Plaintiffs' disclosures since 2008 have been rife with ostensibly missing documents, files, or other data gaps; and testimony from Plaintiffs' deponents has not otherwise filled or explained these gaps. Accordingly, Defendants' RFAs "are simple and straightforward recitations of fact which can be readily admitted or denied," and concern topics with which Plaintiffs should be quite familiar, including Plaintiffs' possession (or lack thereof) of certain documents or evidence. *Synthes (U.S.A.) v. Globus Medical, Inc.*, No. 04-1235, 2006 U.S. Dist. LEXIS 87151, at *4 (E.D. Pa. Nov. 29, 2006). As such, the supposed "burden or expense of responding to these requests at this late stage in the discovery process is far outweighed by the

---

[2] Indeed, Rule 36 contains no presumptive limits on the number of RFAs that may be served. Moreover, "Rule 36 is not a discovery device. The purpose of the rule is to reduce the costs of litigation by eliminating the necessity of proving facts that are not in substantial dispute, to narrow the scope of disputed issues, and to facilitate the presentation of cases to the trier of fact." *T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co., Inc.*, 174 F.R.D. 38, 42-43 (S.D.N.Y. 1997) (internal citations omitted).

[3] For example, Defendants served a joint set of 11 RFAs on the topic of Puerto Rico's MTBE ban and a joint set of 65 RFAs covering *all* of the Defendant-selected Trial Sites. Certain Defendants also served company-specific RFAs, such as Defendant HOVIC's set of 22 RFAs and Defendant Lyondell's set of 44 RFAs; and those Defendants alleged to be liable as owner/operators of a Trial Site (or at multiple Trial Sites) served somewhat larger sets (as they address years of investigation/remediation and, in some cases, multiple Plaintiff-selected Trial Sites).

The Honorable Shira A. Scheindlin
May 8, 2014
Page 3

benefit of facilitating proof with respect to issues in the case, and of narrowing its triable issues."
*Id*; *see also T. Rowe Price Small-Cap Fund,* 174 F.R.D. at 43 (RFAs utilized at completion of
pretrial discovery phase serve to streamline the presentation of evidence at trial).  Thus, Plaintiffs
cannot be heard to complain only of the number of RFAs – nothing more – in the hope that this
Court will somehow blindly punish Defendants for the "sticker shock" of a total 1,473 RFAs.
Defendants are simply (and reasonably) pursuing their respective defenses against Plaintiffs and
streamlining the issues for trial.

## II.     *All Cases*: Lifting Protective Orders for Hamner Institute and EPL Documents

Distilled to its essence, Plaintiffs' argument is that the two Protective Orders Mr. Miller
negotiated (and Your Honor entered) in 2010 and 2011 have "outlived their usefulness" because
the final Hamner Study report was issued in December 2010.  Plaintiffs are wrong.

As the Court will recall, the Hamner Institute ("Hamner") opposed disclosure of its
underlying data and materials for the Hamner Study.  Your Honor ordered the disclosure of most
of the materials but, recognizing their confidential nature, issued two Protective Orders – one for
Hamner materials ("Hamner Order," September 2010, Exh. A) and one for a subcontractor who
performed statistical analyses ("EPL Order," entered October 2011, Exh. B) – designating the
documents "Confidential."  Mr. Miller negotiated and agreed to the terms of both Protective
Orders; received the confidential Hamner and EPL materials years ago; and his office and
experts have been relying on the materials ever since.

At the time the Hamner Order was issued in September 2010, it was known – and
disclosed to the Court and Mr. Miller – that the final Hamner report would be (and was) issued a
mere three months later, in December 2010.  Yet both protective orders were drafted by the
parties, and entered by the Court, to stay in effect long *after* that report went public.  Indeed, the
EPL protective order was not entered until many months later, in October 2011.  Both Orders
apply to all *MDL 1358* cases, including later filed cases and matters that remain before the Court
today. *See* Exh. A, ¶¶ 4, 7; Exh. B, ¶¶ I(A-C).  The Hamner Order includes an explicit "Non-
Termination" provision stating that "[t]he provisions of this Order shall not terminate at the
conclusion of this action [*Crescenta Valley*]" and keeping confidentiality protections in place
until "thirty (30) days after the conclusion of all aspects *of the last MDL 1358 lawsuit*[.]" ((Exh.
A, ¶14 (emphasis added); *see also* Exh. B, ¶J).

For all the reasons previously briefed to this Court in 2010 and 2011, the underlying
materials for the Hamner Study are no less confidential today simply because a final report was
issued in December 2010.  Both Orders allow for use of the materials in any *MDL 1358* matter,
including the cases being handled by Mr. Miller, and Plaintiffs have not identified a single
instance where the Orders have precluded them from using the materials as they need or wish.
Likewise, Plaintiffs' contention that the Orders *Mr. Miller negotiated* are now too burdensome is
advanced without any explanation whatsoever.  Finally, to the extent Mr. Miller or another
plaintiff believe that there are materials which no longer should be treated as "confidential," both

The Honorable Shira A. Scheindlin
May 8, 2014
Page 4


Orders state a simple process for challenging that designation.  Exh. A, ¶8; Exh. B, ¶K.  To date, no plaintiff has made such a challenge.

### III.     *Puerto Rico I*:  Defendant Tauber Oil's Expert Report

Plaintiffs' Agenda Item 2, concerning Tauber Oil's supply and distribution expert, is not included in the Joint Agenda, and Tauber requests the issue not be heard.[4]  The Court's May 5, 2014 Opinion and Order (Dkt. 3983) granting Tauber Oil Company's motion to dismiss for lack of personal jurisdiction has rendered this issue moot.  In the event Plaintiffs persist in having this issue heard, Tauber Oil requests that it be set for a subsequent hearing to allow Tauber an opportunity to respond and appear.

***

As always, we appreciate your Honor's attention this matter and ask that this letter be docketed by the Clerk's Office so that it is part of the Court's file.

Sincerely,

*Peter John Sacripanti*

Peter John Sacripanti


cc:  All Counsel of Record by LNFS, Service on Plaintiffs' Liaison Counsel

---

[4] Plaintiffs emailed counsel for Tauber on May 5, 2014 indicating that "[a]n amended pre-conference brief should be going out tomorrow" to remove the Tauber expert issue, but no amended letter has been filed.