McDermott
Will & Emery

Boston Brussels Chicago Düsseldorf Frankfurt Houston London Los Angeles Miami
Milan Munich New York Orange County Paris Rome Seoul Silicon Valley Washington, D.C.
Strategic alliance with MWE China Law Offices (Shanghai)

James A. Pardo
Attorney at Law
jpardo@mwe.com
+1 212 547 5353

June 2, 2014

BY HAND DELIVERY AND ELECTRONIC MAIL

The Honorable Shira A. Scheindlin
United States District Judge
Southern District of New York
500 Pearl Street, Room 1620
New York, NY 10007-1312

Re: Master File C.A. No. 1:00-1898 (SAS), M21-88, MDL No. 1358
*Commonwealth of Puerto Rico, et al. v. Shell Oil Co., et al.*, No. 07-cv-10470
*Commonwealth of Puerto Rico, et al. v. Shell Oil Co., et al.*, No. 14-cv-01014

Dear Judge Scheindlin:

Defendants respectfully submit this letter in advance of the June 10 conference.[1]

As the Court is aware, the Puerto Rico Legislature recently passed Law No. 53 ("Act 53"), which purports to "clarify" the statute of limitations ("SOL") law that Your Honor previously applied in these matters. As explained below, the Commonwealth's efforts to retroactively legislate around the Court's prior rulings began soon after Your Honor's second statute of limitations decision in December 2013, with final passage of Act 53 rushed into place less than 24 hours before the last status conference on May 13. However, the Commonwealth's frantic efforts to bypass Your Honor's prior rulings and alter the applicable statute of limitations fail for several reasons, meaning that Act 53 has no impact on these cases.

First, Act 53 violates the separation of powers doctrine. Indeed, the Legislature's attempt to circumvent this Court's statute of limitations rulings in this instance is almost identical to a similar effort that it tried – and that the Puerto Rico Supreme Court struck down – in *Colón v. Pesquera*, 150 D.P.R. 724 (2000).

Second, the retroactive nature of Act 53 violates Puerto Rico's Civil Code and also deprives Defendants of their Constitutionally-guaranteed due process rights. To wit: unlike most common law jurisdictions, in Puerto Rico (and most civil law jurisdictions), statutes of limitations are deemed to confer substantive rights. Act 53 contradicts Puerto Rico's Civil Code

[1] Defendants respectfully request a two-page extension for this letter, due to the importance of the issue.

which forbids retroactive laws that deny acquired rights, and also operates to deny Defendants substantive due process rights that, in many cases, vested years ago.

Third, the express language of Act 53 suggests that this law does not apply to the claims at issue in these cases. In other words, even if Act 53 were found to be constitutional and consistent with well-settled Puerto Rico law (it is not), the exemption from prescription that Act 53 purports to create for the Commonwealth would, on its face, exclude, not include, the claims asserted in these actions.

Accordingly, Defendants respectfully request permission to move forward with dispositive motions based on limitations and other grounds.

## BACKGROUND

The Court has authored two statute of limitations decisions bearing on these two cases (hereinafter "PR1" and "PR2"). On July 16, 2013, the Court held that Plaintiffs' claims against Peerless and Trammo were time-barred because they were brought after the applicable one-year statute of limitations had run. *In re MTBE*, 959 F. Supp. 2d 476 (S.D.N.Y. 2013); *In re MTBE*, 2013 U.S. Dist. LEXIS 112296 (Aug. 2, 2013) (denying reconsideration). In a December 30, 2013 Opinion, the Court dismissed Plaintiffs' tort claims against Idemitsu and Vitol on the same grounds, rejecting Plaintiffs' new argument that *nullum tempus* exempted the Commonwealth from the statute of limitations. *In re MTBE*, 2013 U.S. Dist. LEXIS 181837 (S.D.N.Y. Dec. 30, 2013).

Shortly after the Court's second ruling, the Commonwealth – acting through the Governor's office and the Legislative Assembly – began to try to undo these rulings.

Based on the very limited public record that exists, it appears on or around March 14, 2014, the Executive Branch introduced Administration Bill 53-2014 in both the House and Senate chambers of the Legislative Assembly.[2] The Bill became S.B. 996 in the Senate (certified translation at Exh. A), and H.B. 1770 in the House. Both chambers assigned the Bills to their respective Judiciary Committees. Neither committee held public hearings on these Bills. The Senate Judiciary Committee, however, requested written comments from plaintiff Environmental Quality Board ("EQB") and the Commonwealth's Department of Natural and Environmental Resources ("DNER"). It does not appear that comments were sought from anyone else.[3]

---

[2] An administration bill is usually the result of an initiative spearheaded by an agency or agencies of the Executive Branch. However, the sponsor of the bill and the process that precedes the submittal of an administration bill to the Legislature is confidential, and there are rarely any documents associated with it.

[3] Neither the House nor Senate Judiciary Committee ever sought review by the Puerto Rico Department of Justice (or any other source) – a fact noted by several Legislators who objected that such a review was crucial for a bill that

On April 11, the EQB submitted its comments by letter from its executive director, Laura Vélez. On April 22, the DNER submitted its comments. (*See* certified translations attached as Exhs. C and D.) Notably, both sets of comments repeat – verbatim in places – the *nullum tempus* and other arguments relied on by the Commonwealth, and rejected by the Court, in connection with the statute of limitations motions previously decided in these cases. (*See* Exh. C at 2; Exh. D at 2-3). As for this Court's decisions, or the Puerto Rico case law relied on by this Court in its decisions, there is no mention of either in the EQB or DNER submissions. *Id.*

The Senate Judiciary Committee filed its Report on April 29, and the Bill was calendared for a full vote just two days later. When presented on May 1, several Senators voiced concern that the Legislature was trying to impact the outcome of a case pending in the courts, and noted that both DNER and EQB had previously expressed reservations about retroactive legislation, with EQB stating that it typically regarded retroactivity clauses with suspicion. (*See* Ex. B; *see also* excerpted Parliamentary Report, attached as Exh. E, at 15112). An amendment to eliminate the retroactive effect of the Bill was nevertheless defeated by the Majority Delegation without discussion and, moments later, the Bill was passed and referred over to the House. *Id.*

In the House, the Bill received its constitutionally required "First Reading" on May 5. That same day, the House Judiciary Committee filed a report recommending enactment of S.B. 996 "to reaffirm the already established norm." (Certified translation attached as Exh. F). The Committee also recommended that the law be applied retroactively, but offered no explanation why retroactive application was necessary for a bill that merely reaffirmed an "already established norm." *Id.* As in the Senate, objections were voiced to retroactive application. Nevertheless, three days later (on May 8) the House approved the Bill and sent it back to the Senate without amendments. Final approval came unusually quickly. The Senate President signed the Bill the following day (Friday, May 9), and the House Speaker signed it on Monday, May 12. The Bill immediately was sent to the Governor, who apparently signed it minutes later on the same day. The next day, at a status conference, Plaintiffs finally informed Defendants and the Court of what occurred a day earlier (and over the preceding weeks).

## DISCUSSION

### I. Act 53 Violates the Separation of Powers Doctrine

The intent and passage of Act 53 violates the separation of powers doctrine ingrained in the U.S. Constitution. Article III of the Constitution encompasses the doctrine that only courts have the "province and duty . . . to say what the law is" in particular cases or controversies. *Marbury v. Madison*, 5 U.S. 137, 2 L. Ed. 60 (1803). This Court has stated "what the law is."

purported to amend the Puerto Rico Civil Code. *See* Explanatory Vote of New Progressive Party (certified translation at Exh. B).

Now, the Legislature (at the behest of the Governor) purports to both review and overturn that decision.

With respect to the statute of limitations, the law in these cases was decided by this Court in two separate Opinions last July and December. Your Honor considered Articles 1802 and 1868 of the Puerto Rico Civil Code – and the case law relating to them – and held that the one-year statute of limitations applies to Plaintiffs' tort claims. In so holding, the Court rejected Plaintiffs' arguments that *nullum tempus* exempts the Commonwealth from "liberative prescription" on these claims. *In re MTBE*, 2013 U.S. Dist. LEXIS 181837 at *22 (Dec. 30, 2013) citing *Puerto Rico Ports Auth. v. P.M.J. Motors S.E.*, 916 F. Supp. 115, 117 (D.P.R. 1996); *Municipality de Cayey v. Soto Santiago*, 131 D.P.R. 304, 322-23, 1992 Juris P.R. 97 (1992). The Puerto Rico Supreme Court's decision in in *Ayala v. Puerto Rico Land Auth.*, 116 D.P.R. 337, 16 P.R. Offic. Trans. 414 (1985) makes clear that Your Honor correctly decided the statute of limitations issue: the Puerto Rico Supreme Court has flatly rejected the argument that *nullum tempus* is or was the law of Puerto Rico.

That Plaintiffs dislike Your Honor's statute of limitation rulings is not surprising. However, rather than exercising their right to appeal – *i.e.*, follow the *judicial* process mandated by Article III – Plaintiffs improperly seek to overturn the Court's decisions via the *legislative* process. Weeks after the Court's second statute of limitations decision on December 30, 2013, with Defendants poised to file additional limitations motions in both the PR1 and PR2 matters, the Puerto Rico Governor introduced, and the Legislature promptly rushed to pass, a bill to retroactively undo Your Honor's statute of limitations decisions and the holding of *Ayala*. As noted by several legislators who opposed Act 53, the Act's retroactivity is necessary only because it is aimed at pending litigation: *i.e.*, these two cases. *See, e.g.*, Exh. B at 3. In fact, based on our review of the other matters currently being pursued (or defended) by Plaintiffs, we believe there is not a single case *other than* these two matters to which Act 53's "clarification" of Civil Code 1802 and 1868 could apply retroactively. Simply put: Plaintiffs have manipulated the Legislative Branch to nullify an action taken by the Judicial – the decisions of Your Honor.

When presented with an earlier, remarkably similar effort by the Legislative Assembly, the Puerto Rico Supreme Court ruled that such manipulation violates the separation of powers and will not stand. The court deemed unconstitutional "the enactment of tailor-made legislation passed at the request of a losing party to a legal proceeding for the purpose of allowing said party" to evade that which the Judicial Branch held was the law. *Colón v. Pesquera*, 150 D.P.R. 724, P.R. Offic. Trans. at 17. The factual similarities to *Colón* compel the same result here. As in *Colón*, Act 53 patently contradicts Supreme Court precedent (*Ayala*) and the prior rulings of this Court. As in *Colón*, the legislative process was manipulated shortly after the targeted court decision was issued. As in *Colón*, the resulting legislation is substantively flawed – in this instance, based on arguments and cases previously rejected by this Court precisely because they do *not* support application of *nullum tempus* to exempt Plaintiffs from "liberative prescription" created by the Legislature in Civil Code 1802 and 1868. As in *Colón*, the subject

law is directed at specific litigation – these cases. As in *Colón*, the Legislature's actions here violate the separation of powers doctrine.

### II. Retroactive Application of Act 53 Would Violate Puerto Rico's Civil Code and the Due Process Clause

Puerto Rico's Civil Code forbids retroactive legislation that would change substantive rights. Indeed, Section 3 of the Puerto Rico Civil Code provides that "[i]n no case shall the retroactive effect of a law operate to the prejudice of rights acquired under previous legislative action." 31 L.P.R.A. § 3; *see also Asoc. Maestros v. Depto. Educacion*, 171 D.P.R. 640, 647-49, 2007 WL 1953609 (P.R. 2007). This provision codifies what Puerto Rico courts have called the doctrine of acquired rights. Where a party has acquired substantive (not merely procedural) rights under a former statutory scheme, new legislation may only change the substance of those rights prospectively. *Id.*; *see also Liquilux Gas Corp. v. Martin Gas Sales, Inc.*, 779 F. Supp. 665, 667 (D.P.R. 1991).

It is well-settled in Puerto Rico that the statute of limitations (*i.e.*, "liberative" or "extinctive" prescription) confers a *substantive* right – not a procedural right or entitlement. *Febo Ortega v. Superior Court*, 102 D.P.R. 405, 2 P.R. Offic. Trans. 506, 509 (1974); *Ortiz v. Puerto Rico Tel. Co.*, 162 D.P.R. 715 (2004). Accordingly, Act 53 is impermissibly retroactive in that it compromises Defendants' "acquired" (or vested) rights, at least in those instances where Defendants can demonstrate that the relevant statute of limitations has run on Plaintiffs' claims prior to the enactment of Act 53.

Moreover, it is equally well-settled that vested substantive rights cannot be taken away without due process of law. *See, e.g., Hutton v. Autoridad Sobre Hogares de la Capital*, 78 F. Supp. 988, 991-94 (D.P.R. 1948) (discussing the nature of "vested" rights). However, that is precisely what has occurred here. Although a legislature may in certain circumstances retroactively enlarge a statute of limitations without violating the Constitution, "where a statute . . . creating a liability also put[s] a period to its existence, a retroactive extension of the period after its expiration amount[s] to a taking of property without due process of law." *Chase Sec. Corp. v. Donaldson*, 325 U.S. 304, 311 n.8 (1945), *citing William Danzer & Co. v. Gulf & Ship Island R. Co.*, 268 U.S. 633, 635-37 (1925).[4] As the Court explained in *Danzer*, legislation purporting to deprive defendant of a vested, statutorily-created limitations defense is tantamount to taking from that party his *property right* without due process. *Danzer*, 268 U.S. at 637. This is because "the lapse of time not only barred the remedy but also destroyed the liability of defendant to plaintiff." *Id.* at 636. Because Act 53 purports to retroactively deprive Defendants

[4] Although the Court in *Chase* held that applying a Minnesota statute of limitations retroactively did not violate the U.S. Constitution, the ruling was predicated on the fact that Minnesota law does not treat statutes of limitations as a vested, substantive right. *See* 325 U.S. at 311 n.8; *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, (1985) (property rights are creations of state law). By contrast, under Puerto Rico law, statutes of limitation confer a vested, substantive right.

of a *substantive* right – *i.e.*, a statute of limitations defense that vested *years ago* for most of the sites at issue in PR1 and PR2 – its application here would violate Defendants' due process rights.

Further, Act 53's retroactivity clause is irrational. Act 53 purports to "clarify" that *nullum tempus* has always been the "norm" under Puerto Rico law. But were that true there would be no need to impose Act 53 retroactively. And the stated legislative intent that supposedly merits retroactivity – the "protection and defense of the public (non-patrimonial) goods of the People of Puerto Rico" – is also belied by existing Puerto Rico law. Indeed, Plaintiffs already have comprehensive statutes and regulations that empower them to compel cleanup and abatement to protect natural resources such as water. There is no temporal bar to these powers. Civil Code Articles 1802 and 1868 only function to bar *tort lawsuits* by the Commonwealth beyond one year of its notice of the "injury." Act 53's vague, conclusory incantation that the eradication of prescription as to the Commonwealth is "logical and necessary" does not make it so.

### III. Even If Valid, on Its Face Act 53 Does Not Operate To Exempt Plaintiffs From the One-Year Limitations Period for Tort Claims

Act 53 purports to exempt the Commonwealth from prescription solely with respect to "non-patrimonial public goods" that it seeks to protect. In the preamble of Act 53, these non-patrimonial interests are characterized as those that "are not the subject of commerce." This, in fact, was the holding of the Puerto Rico Supreme Court in *Ayala*. In *Ayala,* the Supreme Court rejected the argument that *nullum tempus* was the law of Puerto Rico, and also held that prescription *did* apply to the Commonwealth's "patrimony." 116 D.P.R. 337, 16 P.R. Offic. Trans. at 422-23 ("[a]ll things that are subject to commerce among men are susceptible to prescription, it being understood that the State's 'patrimony' is subject to commerce among men"). That said, we turn to the subject cases.

The PR1 and 2 actions seek to "protect the citizens" and recover for alleged harm to "the waters of the Commonwealth" – which Plaintiffs have limited to "potable waters," *i.e.*, "Class SG1 ground waters and Class SD surface waters . . . intended for use as sources of drinking water supply" in Puerto Rico. *See, e.g.*, Plaintiffs' Third Am. Compl. ¶¶ 4, 5. It is unavoidable that such waters *are* the subject of commerce – indeed, one need only appreciate that the Puerto Rico Aqueduct and Sewer Authority ("PRASA") operates "in commerce," independent of the Commonwealth's executive branch, to provide potable water to customers throughout the Commonwealth, drawing from these "waters of the Commonwealth." Moreover, the U.S. Supreme Court has held that ground water is "an article of commerce" even where the state claims ownership. *Sporhase v. Nebraska*, 458 U.S. 941, 954 (1982); accord *Tarrant Reg'l Water Dist. v. Herrmann*, No. CIV-07-0045-HE, 2009 U.S. Dist. LEXIS 107520 at * 13-14 (W.D. Okla. Nov. 18, 2009) ("water, regardless of its status as property or non-property under state law, is an article of commerce"); *U.S. v. King*, 660 F.3d 1071, 1080 (9th Cir. 2011) ("drinking water is an economic commodity . . . an article of commerce"). Nothing in the three Articles of Act 53

contradicts these facts, or, tellingly, even expressly addresses potable water resources. Thus, it is entirely rational to conclude that Act 53 does not apply to the claims in this case.

Act 53 also cannot apply to Plaintiffs' strict product liability and negligence claims for an entirely separate reason. These causes of action are not brought to vindicate "public rights," as alluded to in Article 2; rather, they are vehicles for individual relief where it can be shown that injury occurred when either (a) a product was unreasonably unsafe, or (b) a tortfeasor acted toward plaintiff without the requisite care under the circumstances. Nevertheless, here, the Commonwealth seeks to recover for "the People of Puerto Rico" under these legal theories, acting "pursuant to its regulatory and *parens patriae* authority." *See* Third Am. Compl. ¶ 4.

Inasmuch as the Commonwealth brings these tort claims in its *parens patriae* capacity, they are outside the ambit of Act 53, as they are essentially "private," not "public," claims. In *State of Rhode Island v. Lead Indus. Ass'n*, the court addressed this very issue when the state sought to rely on *nullum tempus* to avoid the statute of limitations with regard to its negligence and strict liability claims – which had been advanced under its *parens patriae* power. *See* No. 99-5226, 2001 R.I. Super. LEXIS 37 (Sup. Ct. R. I. Apr. 2, 2001). The court stated that these were "common law tort claims," and "to the extent that these torts are alleged to affect consumers, the general public or residents of the State, they could have been filed by any private litigant against the defendants. Accordingly, the State is not making a claim in its governmental capacity to preserve a public right." Thus, the court held, the state could not "invoke the *nullum tempus* doctrine for such a purpose…" *Id.* at **41-42. The same result should obtain here.

## CONCLUSION

Act 53 has no impact on the present litigation(s). Act 53 violates the separation of powers doctrine, Puerto Rico statutory law, and constitutional due process. Even if Act 53 were constitutionally valid, on its face it does not apply to the water resources at issue in these cases. Nor would it exempt Plaintiffs from a one-year statute of limitations with respect to their negligence and strict product liability claims against Defendants. Accordingly, Defendants respectfully request permission to proceed with dispositive motions based on limitations and other grounds.

Respectfully submitted,

*James A. Pardo*

James A. Pardo

cc: All Counsel Via LNFS, Service on Plaintiffs' Liaison Counsel

# Exhibit A

COMMONWEALTH OF PUERTO RICO

17th Legislative Assembly

3rd Ordinary Session

**PUERTO RICO SENATE**

# S. B. 996

March 14, 2014

Presented by messrs. *Bhatia Gautier, Dalmau Santiago, Torres Torres;* misses *López León;* messrs. *Nadal Power, Rosa Rodríguez;* misses *González López;* messrs. *Nieves Pérez, Pereira Castillo, Rivera Filomeno, Rodríguez González, Rodríguez Otero, Rodríguez Valle, Ruiz Nieves, Suárez Cáceres, Tirado Rivera, and Vargas Morales*

*Referred to the Commission on the Juridical, Security, and Veterans*

# ACT

To amend Articles 1830 and 1832 of the Civil Code of 1930, as amended, to clarify and specify the Indefeasibility of the rights and acts of the Commonwealth of Puerto Rico regarding public, non-patrimonial assets of the State.

## STATEMENT OF MOTIVES

The indefeasibility of the State's rights over public, non-patrimonial assets is a principle well established in our law. Early last century, the Supreme Court conceptualized as an aspect of the Anglo-American doctrine of *nullum tempus ocurrit regit*, pursuant to which prescription does not run against the State. Subsequently, adopting an analytical methodology and a civilist focus, the Supreme Court acknowledged the principle of indefeasibility over public, non-patrimonial assets of the State, originating in our Civil Code. The Court held that the patrimonial assets of the State are subject to prescription, but not the assets of public domain or those of general public use, on which a fundamental consensus exists as to their indefeasibility.

The rule on indefeasibility of public, non-patrimonial assets and rights is commonly recognized in jurisdictions of civilist junctures such as ours. For example, in Spain the Forest Act provides that an action for remediation of damages caused to forest public domain is indefeasible.

In Ecuador, the country's Constitution contains the rule in connection with the indefeasibility of actions to require remediation of environmental damages.

In our legal system, prescription is amply regulated in the last title of the Civil Code, which is divided into three different chapters, to wit: the first contains general provisions regarding prescription and its applicability; the second one provides for special issues of the so-called acquisitive prescription of domain and other real rights; and the third one on particular issues of so-called extinctive prescription. As commentator Manresa explains, although prescription has two forms (acquisitive and prescriptive), prescription is nothing more than "a single thing in its essence, since it constitutes a sole title of law derived from a circumstance or reason of time, amending the legal state of a specific person's rights; and this concept thereof imposes the need for a general treaty and for a doctrine common to its two possible forms."

The basic norm is contained in Article 1830 of the Civil Code, which provides that "through prescription one acquires, in the manner and with the conditions specified in the law, the domain and other real rights. The rights and actions are also extinguished in that same way, whatever kind they may be."

This Article refers to both the so-called acquisitive prescription of the domain and real rights (in its first sentence) and the extinctive or liberating prescription of rights or actions (in its second sentence). As a limitation to the scope of the prescription, Article 1836 of the Civil Code limits the objective scope of prescription to things that are in man's commerce, it being understood universally by negative implication that prescription does not operate when dealing with that which is beyond man's commerce. In light of the foregoing, it has been expressly held that prescription does not apply to things in the public domain, those of general public use, and things and rights not susceptible to individual appropriation, since the assets of public domain are assets derived from commercial activity that satisfy collective needs, sustain the common well being, and are, therefore, inalienable and indefeasible.

Among the public assets that sustain the common good included in our Code are "those whose property does not belong to anyone in particular and which all men are free to use, in accordance with their very nature: these are the air, rainwater, the sea and its shores," Article 254; "those intended for public use, such as roads, canals, rivers, torrents, and other analogous ones,"

Article 255; and "state and neighborhood roads, squares, streets, fountains, and public waters, promenades, and public works of general services, paid by the people themselves or with funds from the Puerto Rico treasury," Article 256.

There are also a number of assets and rights of the People that are beyond human commerce and therefore are indefeasible, including, among others, the legal provisions on natural resources and the environment, which are an inescapable dimension of constitutional order. For example, we have Law No. 136 of June 3, 1976, as amended, known as the "Puerto Rico Conservation, Development and Use of Water Resources," which declares all waters and bodies of water in Puerto Rico as property and wealth of the People of Puerto Rico and it imposes on the Commonwealth an unavoidable duty to manage and protect the waters of our country, in the name and on behalf of the Puerto Rican population.

We also have various environmental public policy laws: Law No. 9 of June 18, 1970, repealed and replaced by Act No. 416-2004 , both known as the " Environmental Public Policy Act," and none of which has established any prescriptive term for actions that the State, through its Environmental Quality Board , files in protection of the waters and resources of the People of Puerto Rico. These are rights derived from the entrenched public policy on natural resources stated in Article VI, Section 19 of our Constitution, which provides that "[t]he most effective conservation of natural resources will be a public policy of the Commonwealth, as well as the further development and use of the same for the general benefit of the community." *Const. of the Comm. of P.R., Article VI, Section 19.* It is a protection of the rights of the People "against the State, society, government, and even man, who in the contemporary world, without realizing that he is undermining his own existence, destroys nature for the sake of materialism and rampant consumerism creating irreversible systemic imbalances ." *Paoli Méndez v. Rodríguez*, 138 D.P.R. 449, 462 (1995 ) .

The intent of this legislation is to reaffirm and clarify that prescription does not apply in any way to the Commonwealth of Puerto Rico when the latter acts in protection and defense of the public (non-patrimonial) assets of the People of Puerto Rico, including the People's natural resources, and the rights of the People of Puerto Rico over the same. Doing so in that manner is not only consonant with the rest of the provisions of our legal system as explained above, but that it is logical and necessary for the protection of such important public assets. This amendment clearly and

unequivocally establishes the non-applicability of prescription to the rights, interests, actions, and claims of the Commonwealth of Puerto Rico over the assets of public use as part of the public policy of the Government of the Commonwealth of Puerto Rico in protection of the assets of the People that support the common good.

**BE IT DECREED BY THE PUERTO RICO LEGISLATIVE ASSEMBLY:**

Article 1.- Article 1830 of the Civil Code of 1930, as amended, is amended to read as follows:

"Article 1830.- Acquisition of domain and other real rights; extinction of rights and actions.

Domain and other real rights are acquired through prescription, in the manner and with the conditions determined in the law.

The rights and actions, whatever kind they may be, are also extinguished in the same way.

Prescription does not operate over the rights, interest, actions, and claims of the Commonwealth of Puerto Rico in connection with the public, non-patrimonial assets that the State has and maintains in the name and on behalf of the Puerto Rican population."

Article 2.- Article 1832 of the Civil Code of 1930, as amended, is amended to read as follows:

"Article 1832. -Extinction of rights and actions through prescription.

Rights and actions are extinguished through prescription in detriment to all kinds of persons, including juridical persons, under the terms provided by the law.

The rights, interests, actions, and claims of the Commonwealth of Puerto Rico over the public, non-patrimonial assets that the State has and maintains in the name and on behalf of the Puerto Rican population are not subject to prescription."

Article 3.- Effectiveness.

This Law will enter into effect immediately after its enactment and will be applicable retroactively, including all active cases pending before the courts in which a final, firm, and non-appealable judgment has not yet been entered.

CERTIFICATION

I, Olga M. Alicea, an English-Spanish Interpreter and Translator certified to that effect by the Administrative Office of the U.S. Courts and by the National Association of Judiciary Interpreters & Translators, and member in good standing of the American Translators Association, do hereby certify that I have personally translated the foregoing document from Spanish to English and that the translation is true and accurate to the best of my knowledge and abilities.

S/ Olga M. Alicea
Olga M. Alicea, fccl, njitcs-s (Fed. Cert. No. 98-005)

May 16, 2014
Date

# Exhibit B

COMMONWEALTH OF PUERTO RICO

17th Legislative Assembly

3rd Ordinary Session

# SENATE OF PUERTO RICO

## EXPLANATORY VOTE
## SENATE PROJECT 996

May 15, 2014

Presented by Mr. *Seilhamer Rodríguez and Delegation of the New Progressive Party*

TO THE SENATE OF PUERTO RICO:

During the ordinary Session of May 1, 2014, the Senate of Puerto Rico had for its consideration Senate Project 996 (S. P. 996) whose purpose is to amend Articles 1830 and 1832 of the Civil Code of 1930, as amended, in order to clarify and specify the imprescriptibility of the rights and actions of the Commonwealth of Puerto Rico on the non-patrimonial public assets of the State.

The delegation of the New Progressive Party voted "**AGAINST**" on S. P. 996, indicating that it would be accompanied by an explanatory vote. In order to establish a legislative history that would be complete and consistent with our positions, we issue the following Explanatory Vote.

**A.**

As indicated above, Senate Project 996 has the purpose of amending Articles 1830 and 1832 of the Civil Code of 1930, as amended, in order to clarify and specify the imprescriptibility of the rights and actions of the Commonwealth of Puerto Rico on the non-patrimonial public assets of the State.

Before entering into the substantive analysis of the measure, we must indicate that, as appears from the Report, we see that a presentation was not requested from the Department of Justice. We do not undervalue the capacity of the Department of Natural and Environmental Resources or the Environmental Quality Board, which did appear at the request of the Informing Commission. However, in a measure whose main objective is to amend the Civil Code of Puerto Rico, it seems important to us to always obtain the legal opinion of the Department of Justice.

As to the measure in its substantive aspect, the proposed amendment does not present a real change in the imprescriptibility rule concerning public domain assets. As clearly appears in the measure, what is done is to clarify and rectify the current rule.

However, as it was our position at the time, we do not support the inclusion of retroactivity clauses in the application of the law and we consider them with a lot of suspicion and apprehension.

Article 3 of the Civil Code of Puerto Rico, 31 L.P.R.A. sec. 3, establishes that the laws will not have retroactive effect unless they expressly indicate the opposite. In other words, our system considers the retroactivity of the laws an exceptional act.    Torres Rodríguez v. Carrasquillo Nieves, 177 D.P.R. 728, 758 (2009); Asoc. Maestros v. Depto. Educación, 171 D.P.R. 640, 648 (2007).

Establishing a retroactivity clause in legislative measures to make them applicable to cases pending before the courts is a way of intervening in the judicial function, violating our system of weights and counterweights, guaranteed by the separation of powers contained in our Constitution.

The clause of separation of powers between the Legislative and Executive Branch is also required for the Judicial Branch. Thus, the Constitution guaranteed that it would be the Judicial Branch that would have the power to resolve the cases and disputes presented in the courts of Puerto Rico. Such being the case, the Supreme Court made it clear decades ago that "the essence of the Judiciary cannot be destroyed, converting the power to decide into a weak opportunity to consult and recommend". Alvarado Pacheco v. E.L.A., 2013 T.S.P.R. 64 (Quotes Omitted).

In turn, the Supreme Court decided several times that, if the clear and specific intent of a law is to affect the result of a particular lawsuit, said legislative action infringes the principle of separation of powers and consequently, it was declared unconstitutional. See Misión Ind. P.R. v. J.P., 146 D.P.R. 64 (1998); Colón Cortes v. Pesquera, 150 D.P.R. 724 (2000); Márquez y otros v. P.R.T.C., 2011 T.S.P.R. 183, 183D.P.R. 666 (2011).

And this is precisely what this Senate has done when approving an Act whose effects are to be applied to cases that are pending in the Court.

The accelerated legislative processing of the measure confirms our conclusion that the true legislative intent is to intervene in a lawsuit pending before the Courts. We must stress that the measure was presented to vote in the Senate on May 1, 2014 and on the date of presentation of this Explanatory Vote, which means in less that fifteen days, it became Act No. 53-2014, approved on May 12, 2014.

Given the above, the Delegation of the New Progressive Party reaffirms its vote **AGAINST** Senate Project 996.

Respectfully submitted,

**LARRY SEILHAMER RODRÍGUEZ Y**
**NEW PROGRESSIVE PARTY DELEGATION**
**SPOKESMAN**
**NEW PROGRESSIVE PARTY DELEGATION**
**SENATE OF PUERTO RICO**

# Exhibit C

CERTIFIED TRANSLATION by: Olga M. Alicea, fccI, nJItce-s

[Logo and Letterhead of the
Commonwealth of Puerto Rico
Environmental Quality Board ]

April 11, 2014

Hon. Miguel A. Pereira Castillo
*Chair*
Commission on the Juridical,
Security, and Veterans
Puerto Rico Senate
P.O. Box 9023431
San Juan, PR 00902-3431

**Re: Comments on Senate Bill No. 996
Environmental Quality Board**

Honorable Senator:

Our compliments. We acknowledge receipt of the communication dated April 1, 2014, sent by the Commission on the Juridical, Security, and Veterans of the Puerto Rico Senate (hereinafter, the "Commission") pursuant to which you request the evaluation and comments of the Environmental Quality Board (hereinafter, the "EQB") with respect to the above-referenced Senate Bill (hereinafter, the "Bill"). Specifically, the Bill intends to amend Articles 1830 and 1832 of the Puerto Rico Civil Codeine order to clarify and specify the indefeasibility o the rights and acts of the Commonwealth of Puerto Rico regarding public, non-patrimonial assets of the stated.

From the outset, we must emphasize that the EQB endorses and is totally in agreement with the enactment of the Bill, which specifies a norm already established with respect to the fact that the rights and acts of the state regarding public, non-patrimonial assets do not prescribe. The Bill merely reiterates, for clarification purposes, the establishment of such norm in our legal system. With respect to the EQB, the Bill provides, free of ambiguities, that the causes of action filed by the EQB pursuant to Law No. 416-2004, as amended, known as the "*Environmental Public Policy Act*," (hereinafter, "Law No. 416-2004") in protection of the natural resources of Puerto Rico does not have a prescriptive term.

In particular, said norm on indefeasibility of the public, non-patrimonial assets and rights – as are causes of action for environmental damages – is commonly recognized in civilist jurisdictions such as ours. In Spain, for example, the Forestry Act provides that an action for remediation of damages caused to forest public domain is indefeasible. To those effects, the Forestry Act, Law 43/2003 of November 21, provides in its Article 77 that, "[w]ithout prejudice of the penal or administrative sanctions that may be warranted in each case, the violator must remedy the damage cause in the form and conditions fixed by the sanctioning organ. This obligation is *indefeasible in the case of damages to the forestry public domain*." In Equador, its Constitution contains the norm with respect to the indefeasibility of actions to require remediation of environmental damages. To those effects, the Constitution of the Republic of Equador, in its Article 396, provides that, "... Any damage to the environment, in addition to the corresponding sanctions, will also imply the obligation to restore in its entirety the ecosystems and to indemnity ... *The legal actions to pursue and sanction for environmental damages will be indefeasible*." (Emphasis ours.)

Moreover, the Bill is consonant with the findings of the Puerto Rico Supreme Court, which has expressly held that prescription does not apply to things of public domain, those of general public use, and things and rights not susceptible to individual appropriation, since assets of public domain are assets derived from commercial activity that satisfy collective needs, support the common well-beings, and are, therefore, inalienable and indefeasible. *See*, San Gerónimo Caribe Project v. Commonwealth of P.R., 174 D.P.R. 518, 621 (2008). Initially, the Puerto Rico Supreme Court conceptualized the indefeasibility of the rights of the state over public, non-patrimonial assets as an aspect of the Anglo-American doctrine of *nullum tempus ocurrit legit*, pursuant to which prescription does not run against the state. *See*, People v. Dimas, 18 D.P.R. 1061 (1912); People v. Municipality of San Juan, 19 D.P.R. 656,666-667 (1913). Subsequently, using a civilist analysis and focus, our Highest Forum recognized the principle of indefeasibility over public, non-patrimonial assets of the state, derived from our Civil Code. *See*, Commonw. of P.R. v. P.R. Superior Court, 97 D.P.R. 644, 669-670 (1969) (the "*patrimonial assets*" of the state are subject to prescription, but not so the assets of public domain or those of general public use); Ayala v. Lands Authority, 116 D.P.R. 337 (1985) (recognizing fundamental agreement with respect to the indefeasibility of assets of public use).

Specifically, included among the assets and rights of the People that are beyond human commerce is the legal norm regarding natural resources and the environment, conservation, use, and

development which are of a constitutional nature. To those effects, Article VI, Section 19 of our Constitution, which provides that "[t]he most effective conservation of its natural resources, as well as the greatest development and use of the same for the general benefit of the community will be public policy of the Commonwealth of Puerto Rico." *Commonw. of P.R. Const., Art. VI, Sec. 19.* That is why the various environmental public policy laws: Law No. 9 of June 18, 1970, repealed and substituted by Law No. 416-2004, both known as the "Environmental Public Policy Act," have never established any prescriptive term for actions that the state through the EQB pursues in protection of the waters and the natural resources of the People of Puerto Rico.

Pursuant to the foregoing, the EQB is in agreement with the enactment of the Bill as it understand that it is consonant with the environmental public policy outlines in Law No. 416-2004.

Certainly, the EQB submits that – regardless of the time transpired – any persons or entities who cause damages to our environment must assume their responsibility and it must be them, not the People of Puerto Rico, who pay for all of the costs of the remediation and/or restoration of our natural resources.

We trust that our comments contribute to the analysis of the Bills carried out by the Commission. We are at your disposal should you have any question or require additional information.

Cordially,

(Signed)
Laura M. Vélez Vélez
Executive Director

# Exhibit D

TRANSLATION by: Olga M. Alicea, fccl, njitce-s

[Logo and Letterhead of the
Commonwealth of Puerto Rico
Department of Natural and Environmental Resources]

April 22, 2014

Hon. Miguel A. Pereira Castillo
Commission on the Juridical,
Puerto Rico Senate
The Capitol
San Juan, Puerto Rico

**Re: S. B. 996 To Amend Articles 1830 and 1832 of the Civil Code of 1930, as amended, to clarify and specify the Indefeasibility of the rights and acts of the Commonwealth of Puerto Rico regarding public, non-patrimonial assets of the State.**

Dear Senator Pereira Castillo:

Receive cordial greetings from the entire team at the Department of Natural and Environmental Resources (DNER). The Commission on Government requested our comments regarding Senate Bill 996, which intends to amend Articles 1830 and 1832 of the Puerto Rico Civil Code.

The mission of the Department of Natural and Environmental Resources (DNER), as set forth in Law No. 23 of June 20, 1972, as amended ("Organic Act of the Department of Natural and Environmental Resources"), is to implement the environmental public policy contained in our Constitution. Therefore, the area of action of the DNER responds to the handling, conservation, preservation maintenance, improvement, acquisition, and protection of the natural and environmental resources; important and vital elements of societies.

Our system of law regarding property, of a civilist juncture, recognizes as a fundamental precept that assets of public domain may not be alienated, they are inalienable and indefeasible. Such recognition is both remote and secured, being recognized even since the Ottoman and Roman Empire under Justinian's mandate (527-565 A.D.), who is credited with the legacy of the uniform compilation of Roman law in the work of *Corpus Juris Civil is*. Equally, the principle was included in ***Las Siete Partidas de Alfonso X "El Sabio,"*** a body of laws written in Castille, during his reign between 1252-1284, with the purpose of obtaining certain legal uniformity in the Kingdom.

Before discussing the prescription of public assets one should distinguish between assets that are susceptible to appropriation and those that are beyond commerce of man. It is understood that common assets (the sea and its coastline, water, air) by their very nature or physical configuration, may not be controlled by any individual person. Thus, the State, through legislation, establishes its

affectation[1] and it may only be un-affected if it loses its nature. Its affectation is the means of ensuring compliance of the destiny that has been allocated to it and justifies establishing a juridical regime to protect it. The affectation figure, inasmuch as [it is] an essential prerequisite for [assets to be designated as public], has preeminently attracted the interest of the juridical doctrine, so that the dis-affectation [figure] has started to be viewed negatively, that is, as the opposite figure of affectation and not as a proper juridical entity. When affectation is studied – it is affirmed most of the time – that dis-affectation, that is precisely the act contrary to that one, "is automatically configured by simply placing the inverse conclusion as had been reached [in the former]." It produces, then, juridical effects opposite to those of affectation: if the latter entails the incorporation of an asset to a concrete juridical category – public domain –, dis-affectation entails the loss of its nature as [public property]. Dis-affectation can thus be defined as "[separating] a specific asset from the public domain."[2]

As to the indefeasibility of patrimonial assets of public domain, in the context of acquisitive prescription, the Puerto Rico Supreme Court (PRSC) has already expressed itself. Affirming the aforementioned indefeasibility, in *Figueroa v. Municipality of San Juan*, 98 D.P.R. 534 (1970), the PRSC emphasizes that one of the adoptions carried out in the Louisiana Civil Code, thereby separating itself from the Napoleonic and the Spanish Code, was to provide that among the things that are not susceptible to appropriation are those that cannot be an individual's property by reason of their object, such as things in common, that is, those whose use and enjoyment belongs to all men. In Puerto Rico, an identical civil order prevails.

Real rights are one of the principal branches of patrimonial rights. Between property rights and creditor's rights there is, from a strictly analytical point of view, the [same] critical difference as between relative rights and absolute rights.[3] (. *[sic]* In real law, the owner can reach directly the interest he has protected based on acting immediately on the thing. *Id.* José Puig Brutau states that "all things that are in commerce of man are susceptible to prescription."[4]

Early last century, the PRSC conceptualized the indefeasibility of the rights of the state over public, non-patrimonial assets as an aspect of the Anglo-American doctrine of *nullum tempus ocurrit legit*, pursuant to which prescription does not run against the state. *See, (People v. Dimas*, 18 D.P.R. 1061 (1912); *People v. Municipality of San Juan*, 19 D.P.R. 656,666-667 (1913). Subsequently, using a civilist analysis and focus, the PRSC recognized the principle of indefeasibility over public, non-patrimonial assets of the state, derived from our Civil Code. *See, Commonw. of P.R. v. P.R. Superior Court*, 97 D.P.R. 644, 669-670 (1969) (establishing that the *"patrimonial assets"* of the state are subject to prescription, but not so the assets of public domain or those of general public use). *See*

---

1 "In the civil law tradition the **patrimony of affectation** is a patrimony, or legal entitlement, that can be divided for a purpose, as being distinct from the general patrimony of the person. It is similar to the common law concept of the trust in some aspects where property is held by an administrator for the benefit of third parties. The property remains outside the patrimony of the grantor, thus if the grantor become bankrupt or has liabilities, the property remains untouchable and may continue to benefit the intended beneficiaries." See, http://en.wikipedia.org/wiki/Patrimony_of_affectation

2 http:/libros-revista-derecho.vlex.es/vid/desafectación-servicio-cese-demanio-57620875

3 Vélez Torres, José, Derechos Reales, Curso de Derecho Civil *[Real Rights, Course of Civil Law]*, Tome III, Vol. 2, 3rd Ed.

4 José Puig Brutau, Fundamentos del Derecho Civil *[Fundamentals of Civil Law]*, Tome III, Vol. 1, 4th Ed.

*also, Ayala v. Lands Authority*, 116 D.P.R. 337 (1985) (recognizing fundamental agreement with respect to the indefeasibility of assets of public use).

Prescription is amply regulated in the last title of the Civil Code, which is divided into three different chapters. The first one contains general provisions regarding prescription and its applicability. The second one dedicated to special issues of the so-called acquisitive prescription of domain and other real rights; and the third one on particular issues of so-called extinctive prescription.[5] As commentator Manresa explains, although prescription has two forms (acquisitive and prescriptive), prescription is nothing more than "a single thing in its essence, since it constitutes a sole title of law derived from a circumstance or reason of time, amending the legal state of a specific person's rights; and this concept thereof imposes the need for a general treaty and for a doctrine common to its two possible forms."[6]

The basic norm is contained in Article 1830, which provides as follows: "Through prescription one acquires, in the manner and with the conditions specified in the law, the domain and other real rights. [...] **The rights and actions are also extinguished in that same way, whatever kind they may be.**" This article refers to both the so-called acquisitive prescription of domain and real rights (in its first sentence) and to extinctive or liberating prescription of rights or actions (in its second sentence).[7] As a limitation to the scope of the prescription, the Code limits the objective scope [of] prescription to things that are in man's commerce, Civil Code, Art. 1836, it being understood universally by negative implication that prescription does not operate when dealing with that which is beyond man's commerce.[8] *See also, Commonw. of P.R. v. P.R. Superior Court*, 97 D.P.R. 644 (1969).

In light of the foregoing, it has been expressly held that prescription does not apply to things in the public domain, those of general public use, and things and rights not susceptible to individual appropriation, since the assets of public domain are assets derived from commercial activity that satisfy collective needs, sustain the common well being, and are, therefore, inalienable and indefeasible. *See, San Gerónimo Caribe Project v. Commonwealth of P.R.*, 174 D.P.R. 518, 621 (2008).

Among the public assets that sustain the common good included in our Code are "those whose property does not belong to anyone in particular and which all men are free to use, in accordance with their very nature: these are the air, rainwater, the sea and its shores," Article 254 [31 L.P.R.A. § 1023]; "those intended for public use, such as roads, canals, rivers, torrents, and other analogous ones," Article 255 [31 L.P.R.A. § 1024]; and "state and neighborhood roads, squares, streets, fountains, and public waters, promenades, and public works of general services, paid by the people themselves or with funds from the Puerto Rico treasury," Article 256 [31 L.P.R.A. § 1025]. *See, Commonw. of P.R. v. Superior Court*, 97 D.P.R. 644-669 (1959).

---

5 Manresa, Comentarios al Código Civil Español *[Commentaries on the Spanish Civil Code]*, Tome XII, 6th Ed. 1973, p. 1018.

6 *Id.*, at p. 1014.

7 *Id.*, at p. 1020.

8 *Id.*, at p. 1023.

There are also a number of assets and rights of the People that are beyond human commerce and therefore are indefeasible, including the norms regarding natural resources and the environment, which are an inescapable dimension of constitutional order. For example, we have the Water Act of 1976, the Puerto Rico Conservation, Development and Use of Water Resources, which declares all "waters and bodies of water in Puerto Rico as property and wealth of the People of Puerto Rico" and it imposes on the Commonwealth an unavoidable duty to "manage []and protect [] the waters of our country, in the name and on behalf of the Puerto Rican population." *See, Water Act of 1976, Articles 2 and 4 [12 L.P.R.A. §§ 1115a and 1115c]. See also, Paoli Méndez v. Rodríguez*, 138 D.P.R. 449, 464 (1995). These are rights that are irradiated with the strongest public policy on natural resources stated in Article VI, Section 19 of our Constitution, which provides that "[t]he most effective conservation of natural resources will be a public policy of the Commonwealth, as well as the further development and use of the same for the general benefit of the community." *Const. of the Comm. of P.R., Article VI, Section 19.*

**Another issue of S. B. 996 that might result in some controversy is its "Term," when it provides that** "[t]his law will enter into effect immediately after its application and it will be retroactive application, including, any active case pending before the courts on which a final, firm, and non-appealable judgment has not yet been entered."

Although the general rule is non-retroactivity of laws, the legislature has the authority to prescribe the retroactive application of a law. *See, Márquez v. P.R.*, 183 D.P.R. 666 (2011) ("Laws shall not have a retroactive effect, if the contrary is not expressly provided [Article 3 of the Puerto Rico Civil Code], the intention of the legislator to give a retroactive effect to a law may be express or tacit"). *See also, Plaut v. Spendthrift Farm*, 514 U.S. 211 (1995) ("the traditional rule [is] that statutes do not apply retroactively unless Congress expressly states that they do").

The PRSC has recognized the validity and effectiveness of retroactive legislation in various scenarios. The PRSC has indicated that when a "new norm has the effect of correcting or improving a former one to conform it more adequately to the statute it purports to amend, the retroactivity of the new norm does not make it null in itself." *See, Márquez v. P.R.*, 183 D.P.R. 666 (2011) (*citing Licorería Trigo Inc. v. Sec. of the Treasury*, 94 D.P.R. 270, 281 (1967)). On its part, the U.S. Supreme Court held in *Plaut v. Spendthrift Farm, supra*, that the legislature may validly establish a retroactive statute extending prescriptive terms, even to cases pending and even on appeal, with the sole limitation that it may not apply to reopen cases in which the has been a final adjudication. The norm established by the U.S. Supreme Court is that while the term of appeal have not expired and the judgment has not become final, the federal courts, even at the appeal level, are obligated to apply the norm in effect at the time judgment is entered. Once judgment has been entered and has become final the reopening of the case cannot be legislatively ordered, since that violates separation of powers.

The retroactivity proposed in the amendment does not present conflicts with the legal framework outlined for its effective enactment. The norm that is proposed improves and clarifies without ambiguities the extent of the prescription within the limited framework of the public, non-patrimonial assets of the state, which is consistent with the state of law outlined for more than one hundred years by the PRSC and it is important that there be no doubt as to the State's authority to

obtain reparation and compensation for the People, the legitimate owner of the assets of public domain, when damages are caused to such assets.

Finally, and as Secretary of the DNER, it seems timely and adequate to us that the State not have limits – as the applicability of a prescriptive period would imply – to exercise a cause of action as plaintiff, in light of situations such as the ones lived recently with the oil spill at the Condado Lagoon's Estuarine National Reserve. As custodian of the assets of public domain, it is necessary to count on a cause of action to compel the damaging party to compensate the damage it may cause to our natural resources and the environment.

Should you require any additional data or information, we are here to assist you.

Cordially,

(Signed)
Plan. Carmen R. Guerrero Pérez
Secretary

# Exhibit E



# SENATE OF PUERTO RICO

## PARLIAMENTARY REPORT

*PROCEEDINGS AND DEBATES OF THE SEVENTEENTH LEGISLATIVE ASSEMBLY*
*THIRD ORDINARY SESSION*
*YEAR 2014*

**VOL. LXII San Juan, Puerto Rico Thursday, May 1, 2014 No. 26**

At eleven twenty-three minutes in the morning (11:23 a.m.) today, Thursday, May 1, 2014, the Senate resumes its work under the Presidency of Mr. Eduardo Bhatia Gautier.

**ATTENDANCE**

Senators:

José L. Dalmau Santiago, Antonio J. Fas Alzamora, María T. González López, Rossana López León, Ángel R. Martínez Santiago, José R. Nadal Power, Ramón L. Nieves Pérez, Margarita Nolasco Santiago, Migdalia Padilla Alvelo, Itzamar Peña Ramírez, Miguel A. Pereira Castillo, José O. Pérez Rosa, Carmelo J. Ríos Santiago, Luis D. Rivera Filomeno, Thomas Rivera Schatz, Pedro A. Rodríguez González, Ángel M. Rodríguez Otero, Gilberto Rodríguez Valle, Ángel R. Rosa Rodríguez, Ramón Ruiz Nieves, María de L. Santiago Negrón, Lawrence N. Seilhamer Rodríguez, Jorge I. Suárez Cáceres, Cirilo Tirado Rivera, Aníbal J. Torres Torres, Martín Vargas Morales and Eduardo Bhatia Gautier, PRESIDENT.

MR. PRESIDENT: Good morning, today is May 1, 2014, eleven twenty-three in the morning (11:23 a.m.). The Senate of Puerto Rico resumes its work.

Mr. Spokesman, good morning, Senators, friends, we have a series of friends – who will tell us who they are, from the various schools of Puerto Rico-, Counselors.

Today is a very special day for the Senate of Puerto Rico. We are going to consider not only a series of measures, but we are going to have before us the confirmation, the attention to the possible confirmation of the Secretary of Justice of Puerto Rico.

Mr. Spokesman.

MR. TORRES TORRES: Mr. President, a very good morning, greetings for all, for all the members of the Senate of the Commonwealth and guests who share this House. To begin the work of today's session, Mr. President, we want to welcome young Stephanie Sepúlveda. Stephanie is a student at the Ivosai College of the Town of Vega Baja, welcome, they are in the stands, and they share with us.

MR. PRESIDENT: Are the students, before Stephanie comes up, are the students of Vega Baja here? Would the students of Vega Baja stand? Welcome, welcome to the Capitol, here we make the laws, here the Senators represent each of their towns, each of their communities, and the idea is that here we meet to debate, to talk, to [original text ends here]

PRESIDENT PRO-TEMPORE (MR. NADAL POWER): Before the consideration of the Body is the appointment of Franklin Avilés Santa as Property Registrar, those in favor say yes. Those against say no. Approved the appointment of Attorney Franklin Avilés Santa as Property Registrar.

Please communicate to the Governor the approval of the appointment.

MR. TORRES TORRES: Many thanks, President, and we acknowledge the presence during the session, in the part of their appointments, of Attorney Eliezer Reyes Ramos, Attorney Gretchen Camacho Rossy, Attorney Clara Lergier and Attorney Franklin Avilés. We acknowledge their presence, Mr. President.

We request to continue with the Agenda.

PRESIDENT PRO-TEMPORE (MR. NADAL POWER): Go ahead...

- - - -

As the next item in the Calendar of Special Agendas, Senate Project 996 is announced, titled:

"To amend Articles 1830 and 1832 of the Civil Code of 1930, as amended, to clarify and specify the imprescriptibility of the rights and actions of the Commonwealth of Puerto Rico on the non-patrimonial public assets of the state."

MR. TORRES TORRES: Mr. President, Senate Project 996 amends Articles 1830 and 1832 of the Civil Code, as amended, and clarifies and specifies the rights and actions of the Commonwealth on the non-patrimonial public assets of the state.

The Commission of Legal Affairs, Security and Veterans, presided over by Mr. Pereira Castillo, recommends the approval of this measure, and suggests amendments contained in the electronic draft. We request, Mr. President, to approve the amendments in the draft.

PRESIDENT PRO-TEMPORE (MR. NADAL POWER): Any objection to approve the amendments proposed in the draft? Since there is no objection, they are approved.

MR. TORRES TORRES: Mr. President, there are amendments in the Chamber. We request to read them at this time.

PRESIDENT PRO-TEMPORE (MR. NADAL POWER): Go ahead.

**AMENDMENTS IN THE CHAMBER**

In the Preliminary Recitals:

| | |
|---|---|
| Page 4, first paragraph, line 2, | after "Commonwealth" add "of Puerto Rico" |

In the Decision:

| | |
|---|---|
| Page 5, line 15, | write "act" with initial capital letter"; on the same line eliminate "application" and replace by "approval" |

MR. TORRES TORRES: Mr. President, for the approval of the amendments in the Chamber that were read by the Registrar.

PRESIDENT PRO-TEMPORE (MR. NADAL POWER): Any objection to approve the amendments read in the Chamber by the Registrar? Since there is no objection, they are approved.

MR. SEILHAMER RODRIGUEZ: Mr. President.

PRESIDENT PRO-TEMPORE (MR. NADAL POWER): Senator Seilhamer.

MR. SEILHAMER RODRIGUEZ: Mr. President, Senate Project 996 is to clarify and specify the imprescriptibility. And then, if that is the objective and the purpose, simply to clarify and specify, the fact that it is retroactive makes it highly suspicious to us. So we don't know whether there is a pending case before the Court and honestly if you want the vote in favor of our Delegation, I suggest approving the following amendment which we are going to submit before the Body.

In the Decision, on Page 5, line 15, after "their" eliminate the entire content and replace by "approval."

On Page 5, lines 16 and 17, eliminate the entire content.

These are the amendments, Mr. President.

MR. TORRES TORRES: Mr. President, we object to the amendments presented by the Spokesman.

PRESIDENT PRO-TEMPORE (MR. NADAL POWER): There is an objection to the amendments. Those in favor of the amendments please say yes. Those against, say no. The amendments proposed were defeated.

MR. TORRES TORRES: Mr. President, for the approval of Senate Project 996, as amended.

PRESIDENT PRO-TEMPORE (MR. NADAL POWER): Before the consideration of the Body Senate Project 996, those in favor say yes. Those against, say no. Senate Project 996 is approved.

MR. TORRES TORRES: Next item, President.

PRESIDENT PRO-TEMPORE (MR. NADAL POWER): Go ahead.

- - - -

As the next item in the Calendar of Special Agendas, the Joint Resolution of the Senate 365 is announced, titled:

"To reassign to the Municipality of San Juan the amount of forty-nine thousand one hundred thirteen dollars and fifty cents ($49,113.50) originating from R.C. 547-2001, R.C. 1499-2004, R.C. 356-2005, Section 1, Part B, Paragraph A, Subparagraph 1 of R.C. 67-2006, and Section 1 Paragraphs 2, 4, 6 and 7 of R.C. 163-2009 in order to carry out the works and improvements described in Section 1 of this Joint Resolution; to authorize the contracting of the works; and to authorize the matching of the reassigned funds."

MR. TORRES TORRES: The measure is a reassignment of funds to the Municipality of San Juan, Mr. President, authored by Messrs. Nadal Power and Nieves Pérez.

The Commission of the Treasury and Public Finance recommends the approval of the measure, suggesting the amendments contained in the draft. We request to approve the amendments in the draft.

PRESIDENT PRO-TEMPORE (MR. NADAL POWER): Any objection to the amendments contained in the draft? Since there is no objection, they are approved.

MR. TORRES TORRES: Mr. President, for the approval of the Joint Resolution of the Senate 365, as amended.

# Exhibit F

ORIGINAL

# Commonwealth of Puerto Rico

17th Legislative Assembly

3rd Ordinary Session

**HOUSE OF REPRESENTATIVES**

# S. B. 996

**POSITIVE REPORT**

May 5, 2014

**TO THE PUERTO RICO HOUSE OF REPRESENTATIVES:**

The House of Representative's Commission on the Juridical, after evaluation and consideration, recommends the enactment of S. B. 996 without amendments.

**SCOPE OF THE BILL**

The Commission on the Juridical evaluated Senate Bill 996, which intends to amend Articles 1830 and 1832 of the Civil Code of 1930, as amended, to clarify and specify the indefeasibility of the rights and acts of the Commonwealth of Puerto Rico regarding public, non-patrimonial assets of the state.

As stated in its Statement of Motives, in our legal system prescription is regulated in the last title of the Civil Code. The latter, in turn, is divided into three different chapters: (1) the one that contains the general provisions on prescription and its applicability; (2) the one that provides for special issued of the so-called acquisitive prescription of domain and other real rights; and (3) the one that provides for particular issues of the so-called extinctive prescription.

It also states that the basic norm is contained in Article 1830 of our Civil Code, and said article refers to both the so-called acquisitive prescription of domain and real rights and extinctive prescription or prescription of release from rights or acts. As a limitation to the scope of

prescription, Article 1836 of the Civil Code limits the objective scope of prescription to things that are in commerce of man, it being universally understood by negative implication that prescription does not operate when dealing with that which is beyond the commerce of man. That is why prescription does not apply to things of public domain, those of general public use, and things and rights not susceptible to individual appropriation, since assets of public domain are assets derived from commercial activity that satisfy collective needs, support the common well-beings, and are, therefore, inalienable and indefeasible.

**SUMMARY OF THE POSITION PAPERS PRESENTED**

**Position Paper of the Department of Natural and Environmental Resources ("DNER")**

By Explanatory Memorandum before the Senate's Commission on the Juridical, Security, and Veterans, the DNER appeared to express its position regarding Senate Bill 996. The DNER endorsed S.B. 996 without reservations.

The DNER commenced its memorandum acknowledging that our system of law regarding property, of a civilist tradition, recognizes as a fundamental precept that the assets of public domain cannot be alienated, they are indefeasible, and cannot be appropriated. They discuss the indefeasibility of the patrimonial assets of public domain, in the context of acquisitive prescription, since our Supreme court has held in Figueroa v. Municipality of San Juan, 98 D.P.R. 534 (1970), emphasizing that one of the adoptions made in the Louisiana Civil Code departing from the Napoleonic and the Spanish Code was to provide that comprised among things that are not susceptible to appropriation are those that cannot be individual property by reason of their object, such as things in common or those whose usufruct belongs to all men.[1]

Finally, the DNER recognized that the retroactivity that the Bill presents does not present conflicts with the juridical framework outlined by its effective enactment and that the norm that is proposed improves and clarifies without ambiguities the extent of prescription within the limited framework of public, non-patrimonial assets of the state, which is consistent with the state of law

[1] *Explanatory Memorandum of the Department of Natural and Environmental Resources regarding Senate Bill 996.* Dated April 22, 2014, p. 2.

outlined for more than one hundred years by our Supreme Court.[2] In addition, they pointed out that it is important that there be no doubt as to the State's authority to obtain reparation and compensation for the People, the legitimate owners of the assets of public domain, when damages are caused to such assets.[3] It concluded stating that it seems "timely and adequate that the State not have limits to exercise a cause of action as plaintiff [...] and as custodian of the assets of public domain, needs to count on a cause of action to compel the damaging party to offset the damages it may cause to our natural resources and to the environment."[4]

**Position Paper of the Environmental Quality Board ("EQB")**

Through explanatory memorandum before the Senate's Commission on the Juridical, Security, and Veterans, the Environmental Quality Board expressed itself in favor of Senate Bill 996. The EQB stated that S. B. 996 specifies a norm already established with respect to the fact that the rights and acts of the state regarding public, non-patrimonial assets do not prescribe.[5] In addition, they stated that the Bill "merely reiterates for purposes of clarity the establishment of such norm in our legal system [and...] provides free of ambiguities that the causes of action filed by the EQB pursuant to Law No. 416-2004, as amended, known as the 'Environmental Public Policy Act' in protection of the natural resources of Puerto Rico do not have a prescriptive term."[6]

They reiterated further on in their position paper that "the Bill is consonant with the findings of the Puerto Rico Supreme Court, which has expressly held that prescription does not apply to things of public domain, those of general public use, and things and rights not susceptible to individual appropriation, since assets of public domain are assets derived form commercial activity that satisfy collective needs, support the common well-beings, and are, therefore, inalienable and indefeasible."[7] *San Gerónimo Caribe Project v. Commonw. of P.R.*, 174 D.P.R. 518, 621 (2008).

---

[2] *Id.*, p. 5.

[3] *Id.*

[4] *Id.*

[5] *Explanatory Memorandum of the Department of Natural and Environmental Resources regarding Senate Bill 996.* Dated April 11, 2014, p. 1.

[6] *Id.*

[7] *Id.*, p. 2.

Finally, the EQB stated that it endorses the enactment of S. B. 996 as it understand that it is consonant with the environmental public policy outlined in Law No. 416-2004, and they submit that, regardless of the time transpired, any persons or entities that cause damages to our environment must assume their responsibility and they, not the People of Puerto Rico, must be the ones who pay for all the costs of remediation and restoration of our natural resources.[8]

**ANALYSIS AND RECOMMENDATIONS**

Having addressed and evaluated the position paper of the Environmental Quality Board and the position paper of the Department of Natural and Environmental Resources, and according to the study conducted by the legislators and the technical personnel, the House of Representatives' Commission on the Juridical is in a position to recommend the enactment of S. B. 996 based on the analysis that is presented as follows.

From the explanatory memoranda presented to the Senate's Commission on the Juridical, Security, and Veterans, we find the endorsement by both the Environmental Quality Board and the Department of Natural and Environmental Resources of Puerto Rico of S. B. 996 since what such Bill purports is to reaffirm the already established norm.

This amendment clearly establishes the non-applicability of prescription to the rights, interests, acts, and claims of the Commonw. of P.R. regarding the assets of public use as part of the public policy of the Government of the Commonwealth of Puerto Rico in protection of the assets of the People that support the common well-being. According to the foregoing, this Commission coincides with what is stated in S. B. 996 and considers wise the purposes thereof.

Moreover, we coincide with the position of the EQB and the DNER with respect to the need for the proposed amendment in S. B. 996, and that such amendment is merely aimed at clarifying and specifying the indefeasibility of the rights and acts of the Commonw. of P.R. regarding non-patrimonial assets of public domain that belong to the State.

Finally, this Commission, as well as the EQB and the DNER, find pertinent the importance of the retroactive application of this law, since it deals with compelling the laudable intention of the

---

[8] *Id.*, p. 3.

Commonwealth of Puerto Rico to act in order to protect and defend the public, non-patrimonial assets of the People of Puerto Rico, including the natural resources and the rights of the People of Puerto Rico thereon.

**CONCLUSION**

For the reasons described herein, the House of Representatives' Commission on the Juridical recommends favorably the enactment of S. B. 996 without amendments.

**RESPECTFULLY SUBMITTED.**

(Signed)

**Hon. Luis Vega Ramos**

*Chair*

*Commission on the Juridical*

CERTIFICATION

I, Olga M. Alicea, an English-Spanish Interpreter and Translator certified to that effect by the Administrative Office of the U.S. Courts and by the National Association of Judiciary Interpreters & Translators, and member in good standing of the American Translators Association, do hereby certify that I have personally translated the foregoing document from Spanish to English and that the translation is true and accurate to the best of my knowledge and abilities.

S/ Olga M. Alicea
Olga M. Alicea, fccl, njitca-s (Fed. Cert. No. 98-005)

May 16, 2014
Date