UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation | **Master File No. 1:00 – 1898**<br>**MDL 1358 (SAS)**<br>**M21-88** |
| This Document Relates To:<br><br>*Orange County Water District v. Unocal Corporation, et al.,* Case No. 04 Civ. 4968 (SAS) | The Honorable Shira A. Scheindlin |

# MEMORANDUM OF LAW IN SUPPORT OF
# BP, ATLANTIC RICHFIELD, AND THE SHELL DEFENDANTS'
# MOTION FOR SUMMARY JUDGMENT BASED ON *RES JUDICATA*

# **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. SUMMARY OF UNDISPUTED FACTS ...................................................................... 1

   A. The OCDA's Lawsuit Against BP ........................................................................... 1

   B. The OCDA's Lawsuit Against The Shell Defendants ............................................. 2

   C. The Entry of Final Judgments Against ARCO, BP and the Shell Defendants ....... 3

   D. OCWD's Lawsuit Against ARCO, BP, and the Shell Defendants .......................... 6

III. ARGUMENT .................................................................................................................. 7

   A. APPLICABLE LAW ............................................................................................... 7

   B. THE DOCTRINE OF RES JUDICATA PRECLUDES OCWD'S EFFORTS TO
RELITIGATE CLAIMS RESOLVED BY THE OCDA FINAL JUDGMENTS. ... 7

      1. The BP And Shell Final Judgments Are Final Judgments On The Merits. ..... 8

      2. The "Cause Of Action" Alleged By OCWD Here Is The Same As That Litigated In
The OCDA Cases. ............................................................................................. 9

      3. OCWD Is In Privity With The OCDA. ........................................................... 11

IV. CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

*Cases*

*Boeken v. Philip Morris USA, Inc.,*
   48 Cal. 4th 788 (2010) .................................................................................................. 9

*Citizens for Open Access to Sand & Tide, Inc. v. Seadrift Ass'n,*
   60 Cal. App. 4th 1053 (1998) ............................................................... 8, 10, 12, 15

*City of Simi Valley v. Super. Ct. [Bayer],*
   111 Cal. App. 4th 1077 (2003) .................................................................................... 8

*Consumer Advocacy Group, Inc. v. ExxonMobil Corp.,*
   168 Cal. App. 4th 675 (2008) .................................................................................. 15

*Ellena v. State,*
   69 Cal.App.3d 245 (1977) ........................................................................................ 14

*Fed'n of Hillside & Canyon Ass'ns v. City of Los Angeles,*
   126 Cal. App. 4th 1180 (2004) .................................................................................. 9

*Gates v. Super. Ct.,*
   178 Cal. App. 3d 301 (1986) ..................................................................................... 9

*In re MTBE,*
   209 F.R.D. 323 (S.D.N.Y. 2002) ......................................................................... 7, 14

*In re MTBE,*
   457 F. Supp. 2d 455 (S.D.N.Y. 2006) ..................................................................... 13

*In re MTBE,*
   824 F. Supp. 2d 524 (S.D.N.Y. 2011) ............................................................... 10, 13

*Johnson v. Am. Stand., Inc.*
   43 Cal.4th 56 (2008) ................................................................................................. 14

*Lerner v. Los Angeles City Bd. of Educ.,*
   59 Cal. 2d 382 (1963) ............................................................................................... 12

*Marrese v. Am. Acad. of Orthopaedic Surgeons,*
   470 U.S. 373 (1985) .................................................................................................... 7

*Matsushita Elec. Indus. Co. v. Epstein,*
   516 U.S. 367 (1996) .................................................................................................. 14

*McAlister v. Essex Prop. Trust,*
  504 F. Supp. 2d 903 (C.D. Cal. 2007) .................................................................. 7, 11

*Mycogen Corp. v. Monsanto Co.,*
  28 Cal. 4th 888 (2002) .............................................................................................. 8

*N. Cal. River Watch v. Humboldt Petroleum, Inc.,*
  162 Fed. Appx. 760 (9th Cir. 2006) ................................................................. 9, 11, 12

*People v. Dawkins,*
  241 Cal. Rptr. 456 (1987) ....................................................................................... 11

*People v. Sims,*
  32 Cal.3d 468 (1982) .............................................................................................. 13

*Pitchess v. Superior Court*
  2 Cal.App.3d 653 (1969) ........................................................................................ 12

*Selma Pressure Treating Co. v. Osmose Wood Preserving Co.,*
  221 Cal.App.3d 1601 (1990) .................................................................................. 14

*Villacres v. ABM Indus., Inc.,*
  189 Cal. App. 4th 562 (2010) .......................................................................... 1, 8, 9

*Zapata v. Dep't of Motor Vehicles,*
  2 Cal.App.4th 108 (1991) ................................................................................... 13

**Statutes**

Cal. Health & Safety Code § 43013.1(a) ..................................................................... 11

Cal. Health & Safety Code §§ 3479 and 3480 ............................................................. 10

Cal. Water Code § 102 .................................................................................................. 13

Cal. Water Code § 11102 .............................................................................................. 12

**Treatises**

18 C. Wright, A. Miller & E. Cooper, Fed. Prac. & Proc. § 4405, p. 82 (2d ed. 2002) ........... 7, 14

7B C. Wright, A. Miller, & M. Kane, Fed. Prac. & Proc. Civ. 2d § 1789 & n.16 ................... 7, 14

## I. INTRODUCTION

Plaintiff Orange County Water District's ("OCWD") claims against defendants Atlantic Richfield Company ("ARCO"), BP West Coast Products LLC, and BP Products North America, Inc. (collectively, "BP"), and Shell Oil Company, Equilon Enterprises LLC, and Texaco Refining and Marketing Inc. (the "Shell Defendants") are barred under the doctrine of *res judicata*, because they are factually and legally indistinguishable from MTBE claims previously asserted by the Orange County District Attorney ("OCDA") "in the name of the People of the State of California and Orange County" in a lawsuit against ARCO and BP, and a separate lawsuit against the Shell Defendants, both of which resulted in the entry of final judgments by the Orange County Superior Court in December 2002 and January 2005, respectively (the "Final Judgments"). Those Final Judgments preclude OCWD's attempts to re-litigate the claims here.

Under California law, *res judicata* bars a subsequent lawsuit where "(1) the decision in the prior proceeding is final and on the merits; (2) the present proceeding is on the same cause of action as the prior proceeding; and (3) the parties in the present proceeding or parties in privity with them were parties to the prior proceeding." *Villacres v. ABM Indus., Inc.*, 189 Cal. App. 4th 562, 577 (2010). All three elements are present here. Defendants' motion should be granted.

## II. SUMMARY OF UNDISPUTED FACTS

### A. The OCDA's Lawsuit Against BP

In January 1999, the OCDA filed suit against ARCO "to protect the public ... and to protect the environment of the County of Orange" from "unauthorized releases of ARCO branded gasoline" containing MTBE, acting "in the public interest in the name of the People of the State of California and the County of Orange." (Rule 56.1 St. ¶¶1, 7.)

In October 2000, the OCDA filed a First Amended Complaint that included BP Amoco and Thrifty Oil Company ("Thrifty") (the "BP DAFAC;" Rule 56.1 St., ¶2), and contained

additional allegations regarding the health and environmental risks of releases of MTBE gasoline into Orange County groundwater. (*Id.*, citing BP DAFAC ¶ 49 ("MTBE poses unique risks to groundwater and especially to drinking water"); ¶ 101 ("the Orange County Water District ... conducts sampling and testing of groundwater in the Santa Ana River Basin" which shows MTBE concentrations): ¶¶ 3, 117 (defendants' release of MTBE gasoline "constitutes a continuing nuisance" in Orange County); ¶ 102 ("MTBE has migrated, and is migrating, from the sources of release -- underground storage tank systems and pipelines containing gasoline -- into deeper drinking water supplies in Orange County.").) The BP DAFAC alleged claims for equitable relief, damages and penalties under theories of public nuisance, as well as violations of California's Health & Safety Code, Fish & Game Code, and Business & Professions Code. (Rule 56.1 St., ¶3 citing BP DAFAC ¶ 3 (seeking to (1) "enjoin defendants from ... further violations of the laws and regulations," (2) "compel defendants to cleanup and abate soil and groundwater contamination caused by unauthorized releases of gasoline and [MTBE]...," (3) recover damages from defendants where such contamination cannot be cleaned up or abated...," (4) "penalize defendants with ... civil penalties," and (5) require defendants to "disgorge the monetary profits [they had] obtained."); ¶¶ 116- 122 (public nuisance); ¶¶ 123-126, 130-168 (Health & Safety Code); ¶¶ 126-129 (Fish & Game Code); ¶¶ 169-170 (Bus. & Prof. Code).)

### B. The OCDA's Lawsuit Against The Shell Defendants

Likewise, in January 1999, the OCDA, again acting "in the name of the People of the State of California and Orange County," initiated a similar civil action against the Shell Defendants in Orange County Superior Court, *People v. Shell Oil Co.,* No. 80-40-31. (Rule 56.1 St., ¶¶ 1, 7.) The OCDA amended that complaint ("Shell DAFAC") to allege that the Shell Defendants were responsible for unauthorized releases of gasoline containing MTBE from USTs they owned, operated and/or supplied with gasoline, resulting in contamination of Orange

2

County's soil and groundwater (Rule 56.1 St., ¶¶ 4-6; Shell DAFAC at ¶ 12); that Shell failed to take "appropriate corrective action to remedy the impact" of the gasoline and MTBE releases; and that Shell "knowingly allowed the continued migration of such releases through and into soil, groundwater and sources or potential sources of drinking water of Orange County...." (*Id.*) Like OCWD in this action, the OCDA asserted a claim for nuisance under California Civil Code §§ 3479 and 3480, as well as a claim for the alleged discharge of petroleum into the waters of the State (Rule 56.1 St., ¶ 6), and a variety of other statutory causes of action. (*Id.*) Based on these allegations, the OCDA requested that the Shell Defendants "be ordered to effectively and expeditiously cleanup [sic] and abate contaminant plumes consisting of gasoline, its constituent chemicals BTEX, and the chemical additive MTBE...." (*Id.*)

Both OCDA lawsuits were widely known and well-publicized. (Rule 56.1 St., ¶¶ 11, 12.) OCWD, including many of its senior staff, knew of the lawsuits, and OCWD representatives attended meetings at which the litigation was discussed by the OCDA's office. (*Id.*, ¶12.) OCWD employees commented upon the lawsuits at public meetings, stating that "OCWD supports the efforts of the DA to expedite cleanup actions by responsible parties" (*id.*), and even provided "technical assistance" to the OCDA. (*Id.*)

### C. The Entry of Final Judgments Against ARCO, BP and the Shell Defendants

Nearly four years after his lawsuit was filed, the OCDA settled all claims against ARCO, BP and "each of their subsidiaries, corporate parents, [and] Affiliates (including ... BP West Coast Products LLC, BP Products North America Inc....)" by entering into a Final Judgment and Release (the "BP Final Judgment;" Cox Decl. Ex. A), which was approved and entered on consent by the Orange County Superior Court on December 17, 2002. (Rule 56.1 St., ¶ 13.)

The relief provided in the BP Final Judgment is comprehensive, and falls into three principal categories. First, ARCO and BP agreed to reimburse the OCDA's "cost of

3

investigation," amounting to $5 million. (Rule 56.1 St., ¶ 14.) Second, ARCO and BP agreed to fund and implement a "Plume Delineation Program," under which an "independent, third party environmental consultant" selected by the OCDA would evaluate the investigation and corrective action at the service stations covered by the Final Judgment and identify whether further action should be taken to remediate the MTBE and gasoline releases found there. (*Id.*, ¶15.) ARCO and BP agreed to fund this program with an additional $3 million. (*Id.*) Third, ARCO and BP became subject to extensive injunctive relief, which remained in effect for five years following entry of the Final Judgment. (Rule 56.1 St., ¶ 16.)

The BP Final Judgment incorporated a comprehensive release which applied to an attached list of 183 ARCO branded service station sites. (Rule 56.1 St., ¶ 17; BP Final Judgment ¶ 6.1 ("This Final Judgment also constitutes a release from any known or unknown past or present claims, violations, or causes of action that were or could have been asserted in the First Amended Complaint" with regard to any "unauthorized release of petroleum product ... or additive or constituent of such product ...; the use of MTBE and/or other fuel oxygenates in gasoline, or any alleged failure to assess, remediate, or otherwise take corrective action in response to any such authorized release at the sites listed in Exhibit A [thereto], whether asserted or unasserted or known or unknown"); Rule 56.1 St., ¶ 17; BP Final Judgment Exs. A & B (listing 183 ARCO Owned/Leased Sites.))

The BP DAFAC was the operative complaint when the BP Final Judgment was entered on December 17, 2002 -- the same month in which BP stopped adding MTBE to gasoline made in California. (Rule 56.1 St., ¶¶ 18, 19.) BP complied fully with its obligations under the Final Judgment. (Rule 56.1 St., ¶20) Neither the OC DA nor OCWD have ever voiced any concerns about the terms of the settlement or BP's adherence to those terms, nor was the dispute

4

resolution process identified in paragraph 5.7 of the BP Final Judgment ever invoked. (*Id.*)

Similarly, on January 5, 2005, the Orange County Superior Court entered a Final Judgment (the "Shell Final Judgment") in *People v. Shell Oil Co.,* ending that litigation. The settlement terms were substantially similar to those of the BP Final Judgment. The Shell Defendants were required, among other things, to implement a "Plume Delineation Program" supervised by a consultant selected by the OCDA, and take corrective and/or remedial actions to clean up soil and groundwater. (Rule 56.1 St., ¶¶ 26 -28.) The Shell Defendants were also required to pay into OCDA's "Consumer and Environmental Prosecution Trust Fund" and make payments to regulatory agencies for investigation and enforcement activities. (Rule 56.1 St., ¶ 27.) Like BP, the Shell Defendants were also subject to additional injunctive relief, which remained in place for five years. (Rule 56.1 St., ¶ 29.) The Shell Defendants fulfilled all their obligations under the Final Judgment. (Rule 56.1 St., ¶ 36.)

The Final Judgment resolved all of the OCDA's pending claims against the Shell Defendants and explicitly released, *inter alia*, any and all claims and causes of action that were or could have been asserted in the OCDA lawsuit with regard to UST systems and releases of gasoline and/or its additives, including MTBE, from USTs owned, operated and/or supplied by the Shell Defendants, and the use of MTBE in gasoline. *See* Rule 56.1 St., ¶ 31.

Prior to entry of the Shell Final Judgment, counsel for OCWD appeared in the Superior Court to oppose its entry on the grounds that "[w]e have an action that is pending over MTBE contamination against the Shell defendants as well." (Rule 56.1 St., ¶ 34.) After denying OCWD's request to intervene and stating, "I make no findings about the effect of this settlement on any other action. I'll let an appropriate court at an appropriate time make those determinations," the Superior Court entered the Final Judgment on January 5, 2005. (*Id.*, ¶35.)

5

> The OCDA's 2007 Biennial Report described the relief under both Final Judgments:
>
> > As a result of People v. Arco, Shell and Thrifty et al., clean-up work and remediation of numerous polluted underground storage tank sites are being funded by the major oil companies.... The oil companies were required to write a blank check to cover the cost of cleaning up the environment until the ground water is free of dangerous chemicals.... As a result, many of the polluted underground storage sites have been cleaned up and are free of a dangerous chemical compound called MTBE. Approximately 300 sites are being cleaned up as a result of this lawsuit.

(Rule 56.1 St., ¶ 42.)

### D. OCWD's Lawsuit Against ARCO, BP, and the Shell Defendants

OCWD filed this lawsuit seeking alleged damages resulting from MTBE contamination caused by UST releases in May 2003, shortly after entry of the OCDA's Final Judgment with BP, nearly 18 months prior to the entry of the OCDA's Final Judgment with the Shell Defendants, and more than four years after the OCDA filed his lawsuits. OCWD's lawsuit purports to have the same objective as the OCDA lawsuit – "to protect the groundwater resources of northern Orange County from oil industry pollution." (Rule 56.1 St., ¶ 22.) Comparison of OCWD's complaint with those of the OCDA demonstrates that the factual allegations of the actions and the alleged bases for recovery are virtually identical: OCWD seeks recovery based on alleged harm to drinking water resources in Orange County resulting from the release of MTBE gasoline from service station USTs and the use of MTBE in gasoline. (Rule 56.1 St., ¶¶ 22, 23.) OCWD's complaint contains many of the same allegations about MTBE that were made in the OCDA lawsuits. While not determinative for purposes of *res judicata*, OCWD is also seeking nearly identical remedies. (Rule 56.1 St., ¶ 23.)

As it relates to BP, OCWD's lawsuit is based on alleged MTBE releases at a group of BP service station sites that were listed in, and already released by, the BP Final Judgment. (Rule 56.1 St., ¶ 40.) Similarly, with respect to the Shell Defendants, OCWD asserts claims for injury

6

caused by MTBE gasoline released from USTs owned, operated and/or supplied by the Shell Defendants and for the Shell Defendants' use of MTBE in gasoline (Rule 56.1 St., ¶ 23), the same allegations that formed the basis for the OCDA's complaint and that were resolved in the Shell Final Judgment. (Rule 56.1 St., ¶ 23.)

### III. ARGUMENT

#### A. APPLICABLE LAW

California's law of *res judicata* governs the preclusive effect of the OCDA Final Judgments against BP and the Shell Defendants. *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (full faith and credit statute "directs a federal court to refer to the preclusion law of the State in which the judgment was rendered");. The preclusive effect of a prior judgment can only be determined by subsequent courts. *In re MTBE*, 209 F.R.D. 323, 340 (S.D.N.Y. 2002), citing 7B C. Wright, A. Miller, & M. Kane, Fed. Prac. & Proc. Civ. 2d § 1789 & n.16 (2002); 18 C. Wright, A. Miller & E. Cooper, Fed. Prac. & Proc. § 4405, p. 82 (2d ed. 2002) ("[t]he first court does not get to dictate to other courts the preclusion consequences of its own judgment"). Thus, it is for this Court to determine the preclusive effect of the OCDA Final Judgments.

#### B. THE DOCTRINE OF RES JUDICATA PRECLUDES OCWD'S EFFORTS TO RELITIGATE CLAIMS RESOLVED BY THE OCDA FINAL JUDGMENTS.

The object of res judicata "is to cut down on expense to and effort by litigants and courts by eliminating redundant litigation." *McAlister v. Essex Prop. Trust*, 504 F. Supp. 2d 903, 907 (C.D. Cal. 2007). The doctrine "bars not only issues that were raised in the prior suit but related issues that could have been raised." *Villacres*, 189 Cal. App. 4th at 569. "A clear and predictable *res judicata* doctrine promotes judicial economy. Under this doctrine, all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be

7

raised at a later date." *Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 897 (2002); *see also City of Simi Valley v. Super. Ct. [Bayer]*, 111 Cal. App. 4th 1077, 1083 (2003) ("*Res judicata* precludes piecemeal litigation caused by splitting a single cause of action or relitigating the same cause of action on a different legal theory"). *Res judicata* applies where "the party to be affected, or some other with whom he is in privity, has litigated, or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent. Public policy and the interest of litigants alike require that there be an end to litigation." *Citizens for Open Access to Sand & Tide, Inc. v. Seadrift Ass'n*, 60 Cal. App. 4th 1053, 1065 (1998) ("*COAST*").

Three criteria must be met for *res judicata* to bar further litigation: "(1) the decision in the prior proceeding is final and on the merits; (2) the present proceeding is on the same cause of action as the prior proceeding; and (3) the parties in the present proceeding or parties in privity with them were parties to the prior proceeding." *Villacres*, 189 Cal. App. 4th at 577 (citations and quotations omitted). Here, the OCDA Final Judgments squarely meet all three criteria and preclude OCWD's claims against ARCO, BP, and the Shell Defendants.

### 1. The BP And Shell Final Judgments Are Final Judgments On The Merits.

Under California law, consent judgments like the Final Judgments in the OCDA cases constitute valid and enforceable final judgments on the merits and are entitled to *res judicata* effect. *COAST*, 60 Cal. App. 4th at 1065 (judgment entered by consent or stipulation is as conclusive a bar as judgment after trial); *Villacres*, 189 Cal. App. 4th at 569 (court-approved settlement in a prior suit precludes subsequent litigation on same cause of action); *Gates v. Super. Ct.*, 178 Cal. App. 3d 301, 311 (1986) (settlement and final judgment bars "subsequent litigation of all issues which were or could have been raised in the original suit").

### 2. The "Cause Of Action" Alleged By OCWD Here Is The Same As That Litigated In The OCDA Cases.

Comparison of the complaints shows that OCWD is asserting the same "cause of action" here as was asserted in the OCDA lawsuits. For *res judicata* purposes, the phrase "cause of action" means "the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced." *Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 814 (2010). California courts construe the identity of the cause of action requirement broadly: "Under the doctrine of res judicata, if the matter raised in the subsequent suit was within the *scope* of the prior action, related to the *subject matter* and *relevant* to the issues, so that it *could* have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged." *Villacres*, 189 Cal. App. 4th at 583 (citations and quotations omitted).

California courts look not to the legal theories presented by the parties, but to whether the claims are "based on the same primary right." *Fed'n of Hillside & Canyon Ass'ns v. City of Los Angeles*, 126 Cal. App. 4th 1180, 1204 n.6 (2004); *Villacres,* 189 Cal. App. 4th at 576. Under the primary rights theory, "the determinative factor is the harm suffered. When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right." *Boeken*, 48 Cal.4th at 814. Thus, "[e]ven when there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim of relief." *Id.* (citations and quotations omitted); *see also N. Cal. River Watch v. Humboldt Petroleum, Inc.*, 162 Fed. Appx. 760, 764 (9th Cir. 2006) ("[t]he law under which a party files suit does not affect res judicata if the underlying harm is the same as was previously litigated"). To determine whether "causes of action" are the same, the court "must compare the two actions, looking at the rights which are sought to be vindicated and the harm for which redress is

9

claimed." *COAST*, 60 Cal.App.4th at 1067.

In the instant case, the "cause of action" analysis is straightforward. Both the OCDA and OCWD seek to enforce the same "primary right" – to protect groundwater in Orange County from MTBE contamination on behalf of the public.[1] Both OCDA actions and this action seek redress for the same alleged releases of MTBE gasoline from the same leaking USTs and other sources into the soil and groundwater in Orange County that, according to both OCWD and the OCDA, impacted or threatened Orange County's drinking water supplies. OCWD is pursuing precisely the same nuisance legal theory, Cal. Health & Safety Code §§ 3479 and 3480, that the OCDA utilized for its nuisance claims. Further, in its complaint and at the hearing on the Shell Final Judgment in the OCDA action, OCWD purported to represent the public and the very same water users on whose behalf the OCDA prosecuted his action. Though not essential to the analysis, OCWD also seeks the same relief – investigation and remediation of MTBE contamination – that was sought and obtained in the OCDA action.

The Ninth Circuit's decision in *Northern California River Watch* is instructive here. In that case, some three years after a consent judgment between the Humboldt County District Attorney and the defendant resolved claims for petroleum releases at three service stations, River Watch, an environmental group, brought a new lawsuit under federal and state law alleging that petroleum releases at the sites were continuing to cause harm. In dismissing the claim on *res judicata* grounds, the Ninth Circuit held: "River Watch's claims are the same as those covered by the Consent Agreement. They stem from the same wrong, the release of petroleum from tanks,

---

[1] As this Court has noted, OCWD's nuisance claim is one for "public nuisance," and so rests upon the allegation that "MTBE contamination 'substantially and unreasonably' interfered with *the public*'s collective social interests." *In re MTBE*, 824 F. Supp. 2d 524, 539 (S.D.N.Y. 2011) (emphasis in original). As such, "the primary 'injury' that [OCWD] must show to sustain its public nuisance claim is an injury to the *public*." *Id.* (emphasis in original).

10

pipes, and other sources." *N. Cal. River Watch*, 162 Fed. Appx. at 763. Because those claims, like the ones asserted here, arose from the same alleged wrong as the claims in the prior suit, and no new injuries were alleged, the claims were plainly barred by *res judicata*. *Id.*

The injuries alleged here – MTBE impacts to Orange County groundwater – are identical to those alleged in the OCDA actions, and OCWD cannot avoid the preclusive effect of the Final Judgments by alleging "new" injuries. The BP Defendants ceased using MTBE in California in December 2002, the same month the BP Final Judgment was entered; the Shell Final Judgment was entered more than a year after California's ban on using MTBE took effect. *See* Cal. Health & Safety Code § 43013.1(a). Thus, no new releases of MTBE gasoline, and no new injuries, could have occurred after the entry of either Final Judgment. As a result, OCWD necessarily seeks relief for the same alleged injuries that were the subject of both the OCDA's lawsuits and the Final Judgments that resolved those matters. The claims asserted by OCWD constitute the same "cause of action" as the claims asserted in the OCDA lawsuits.

### 3. OCWD Is In Privity With The OCDA.

Finally, for purposes of *res judicata*, OCWD is in privity with the OCDA. In California, "[t]he existence of the relationship of privity is a question of law." *People v. Dawkins*, 241 Cal. Rptr. 456, 458 (1987); *McAlister*, 504 F. Supp. 2d at 912. For privity to exist, the parties to the prior and successive suits need not be identical. Rather, "[t]he concept of privity for the purposes of res judicata or collateral estoppel refers to a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights." *COAST*, 60 Cal.App.4th at 1069 (citations and quotations omitted); *see also N. Cal. River Watch*, 162 Fed. Appx. at 762 (DA and public interest group in privity where both sought to enforce legal rights for petroleum spills). By either measure,

OCWD and the OCDA are in privity.

Here, both the OCDA and OCWD are agencies of the State of California that represent the same interest in protecting the public from MTBE contamination, both initiated actions to stop and remediate such alleged contamination, and both seek indistinguishable relief. OCWD alleges that it is a special district (3d Am. Compl. ¶ 4), which, under California law, is defined as "any *agency of the state* for the local performance of governmental or proprietary functions within limited boundaries." (Cal. Govt. Code §16271 [d]) (emphasis added). Similarly, under California's Water Code § 11102, any water district is considered to be a "state agency." *See also* OCWD 3d Am. Compl. ¶ 1 ("[t]he California State Legislature has charged the District with preventing pollution and contamination of the water supply of the District"). Likewise, the OCDA was acting "in the name of the People of the State of California and Orange County." (OCDA Compls. ¶1; *Pitchess v. Superior Court* 2 Cal.App.3d 653, 656-57 (1969) (County DA acts as officer of the County and the State citing Cal. Govt. Code §§ 24000(a); 26500 - 26505).) Thus, both the OCDA and OCWD are "agents" of the State of California seeking to protect the very same interests. (*See* Rule 56.1 St., ¶¶ 7-10.)

California courts have been clear and consistent in recognizing that "agents of the same government are in privity with each other, since they represent not their own rights but the right of the government." *Lerner v. Los Angeles City Bd. of Educ.*, 59 Cal. 2d 382, 398 (1963); *COAST*, 60 Cal.App.4th at 1073, n.12 (citations and quotations omitted) ("where one governmental agency represents the interests of the State of California in prior litigation, and another subsequently seeks to pursue the same issue[, t]he agents of the same government are in privity with each other, since they represent not their own rights but the right of the government"); *Zapata v. Dep't of Motor Vehicles*, 2 Cal.App.4th 108, 114 (1991) (DA's office

12

and Department of Motor Vehicles found to be in privity in actions arising from DWI incident, since both "acted as agents of the same government, the State of California, at the respective proceedings, and each represented not their own rights but the right of the government").

The Supreme Court of California, too, has found that regardless of whether two state entities agree that they are in privity, their "closeness" is what determines whether privity exists. *See People v. Sims*, 32 Cal.3d 468, 487 (1982), *superseded by statute on other grounds* (finding district attorney's office and Sonoma County Social Services Department were "sufficiently close" for privity to be found and collateral estoppel to apply). Here, the "closeness" between the primary rights OCDA and OCWD assert further requires a finding of privity. OCWD's own groundwater rights, if any, are in fact subsumed within and inferior to the groundwater rights asserted by the OCDA and OCWD on behalf of the State. As this Court has found: "To the extent the District has *any* usufructuary rights, those rights are appropriative, and are therefore subordinate to the State (acting pursuant to the public trust), any overlying right holders (such as the defendants as owners of the sites), and the purveyors that actually pump the water out of the ground and provide it to customers." *In re MTBE*, 824 F.Supp.2d 524, 546-547 (S.D.N.Y. 2011); *see also In re MTBE*, 457 F. Supp. 2d 455, 460 (S.D.N.Y. 2006) (groundwater in California is owned by "the people of the State"); Cal. Water Code § 102 ("[a]ll water within the State is the property of the people of the State"). The OCDA has already litigated and resolved the People's cause of action with respect to MTBE in groundwater at Orange County ARCO and Shell gasoline stations. This necessarily included whatever subordinate usufructuary right in that groundwater OCWD might possess. *See Selma Pressure Treating Co. v. Osmose Wood Preserving Co.*, 221 Cal.App.3d 1601, 1617 (1990) (citations and quotations omitted) ("The state's property interest in groundwater, as established by Water Code section 102 ... is no less

13

usufructuary than that of private ownership, and public waters may be duly used, regulated and controlled in the public interest"), *disapproved on other grounds in Johnson v. Am. Stand., Inc.* 43 Cal.4th 56, 70 (2008).

OCWD will undoubtedly assert that it did not intend to be bound by the OCDA's prior actions, and that the OCDA did not intend for its lawsuits to preclude OCWD's subsequent lawsuit. That, however, is of no consequence, absent express agreement by *all* parties to withdraw an issue from the scope of the consent judgment; privity does not turn on a single party's intent. *See Ellena v. State*, 69 Cal.App.3d 245, 260-61 (1977). Otherwise, the concept of privity would be rendered meaningless. Privity and the *res judicata* effect of a prior judgment turn on legal questions that can only be determined by subsequent courts. *In re MTBE Prods. Liab. Litig.*, 209 F.R.D. 323 at 340 (S.D.N.Y. 2002); 7B C. Wright, A. Miller, & M. Kane, Fed. Prac. & Proc. Civ. 2d § 1789 & n.16 (2002); 18 C. Wright, A. Miller & E. Cooper, Fed. Prac. & Proc. § 4405, p. 82 (2d ed. 2002); *Matsushita Elec. Indus. Co. v. Epstein,* 516 U.S. 367, 396 (1996) (Ginsburg, J., concurring in part and dissenting in part). Indeed, in approving the Shell Final Judgment, the Orange County Superior Court explicitly acknowledged this bedrock principle. Rule 56.1 St., ¶ 35 ("I make no findings about the effect of this settlement on any other action. I'll let an appropriate court at an appropriate time make those determinations").

What matters for *res judicata* purposes is whether a subsequent plaintiff seeks to pursue rights and interests that have already been litigated. Courts "'measure the adequacy of "representation by inference, examining whether ... the party in the suit ... asserted to have a preclusive effect had the same interest as the party to be precluded, and whether that ... party had a strong motive to assert that interest.'"" *COAST,* 60 Cal. App. 4th at 1071 (citations omitted). "A party is adequately represented for purposes of the privity rule 'if his or her interests were so

14

similar to a party's interest that the latter was the former's virtual representative in the earlier action.'" *Id.* at 1070 (citations omitted). Courts are particularly likely to find adequate representation when the party to the prior action was a government "agenc[y] vested with authority to litigate the issue" in question. *Id.*

Here, the complaints demonstrate that the OCDA pursued the prior lawsuits with the "same interest" as OCWD, and that the OCDA "had a strong motive to assert that interest." *See COAST*, 60 Cal App. 4th at 1071. The substantial relief afforded by Final Judgments – which mirrors what OCWD seeks here – further supports this conclusion. *See Consumer Advocacy Group, Inc. v. ExxonMobil Corp.*, 168 Cal. App. 4th 675, 692 (2008) (that "the settlement agreement itself involved remedial measures to be taken by ExxonMobil at the alleged violation sites ... indicates that CBE was representing the interest of the general public"). Once a sovereign has finally resolved a cause of action involving sovereign interests, subsequent actions by other state agencies are barred by *res judicata*.

## IV.   CONCLUSION

For all the foregoing reasons, OCWD's claims are barred by *res judicata* and summary judgment should be entered in favor of ARCO, BP, and the Shell Defendants.

Dated: June 6, 2014              Respectfully submitted,

_/s/_____
Richard E. Wallace, Jr.
Peter C. Condron
Amanda Gilbert
SEDGWICK LLP
2900 K Street, N.W.
Harbourside – Suite 500
Washington, D.C. 20007
Telephone: (202) 204-1000
Facsimile: (202) 204-1001

Attorneys for Defendants
Shell Oil Company, Equilon Enterprises LLC, and
Texaco Refining and Marketing Inc.

Matthew T. Heartney
Lawrence A. Cox
Stephanie B. Weirick
ARNOLD & PORTER LLP
777 South Figueroa Street
Los Angeles, California 90017
Telephone: (213) 243-4150
Facsimile: (213) 243-4199

Attorneys for Defendants
Atlantic Richfield Company, BP Products North
America Inc., and BP West Coast Products LLC