UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

**Master File No. 1:00 – 1898**
**MDL 1358 (SAS)**
**M21-88**

This Document Relates To:

The Honorable Shira A. Scheindlin

*Orange County Water District v. Unocal Corporation, et al.*,
Case No. 04 Civ. 4968 (SAS).

---

### DECLARATION OF PETER C. CONDRON IN SUPPORT OF BP AND THE SHELL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I, Peter C. Condron, declare as follows:

1.      I am an attorney admitted to practice before this Court and am a partner at Sedgwick LLP, attorneys of record for Shell Oil Company, Equilon Enterprises LLC, and Texaco Refining and Marketing Inc. (the "Shell Defendants"). This Declaration is based on my personal knowledge and, if called as a witness, I could testify competently thereto.

2.      Attached hereto as Exhibit A are true and correct copies of relevant portions of the First Amended Complaint filed by the The People of the State of California in *People v. Shell Oil Co., et al.*, No. 80-40-31 (Orange County Superior Court), dated April 2, 2001.

3.      Attached hereto as Exhibit B are true and correct copies of relevant portions of the Third Amended Complaint in this action, served on all parties on March 21, 2008.

4.      Attached hereto as Exhibit C are true and correct copies of relevant portions of the Final Judgment Pursuant to Stipulation and Order Thereon, entered by the Orange County Superior Court in *People v. Shell Oil Co., et al.* on January 5, 2005.

5.      Attached hereto as Exhibit D is a true and correct copy of an OCDA press release dated January 6, 2005 and posted on October 14, 2005 with the title "Shell Oil Company Agrees to Pay

Orange County Up To $14.5 Million Plus a "Blank Check" for Clean Up of More Than 170 Contaminated Sites," which was obtained from the OCDA website, http://www.orangecountyda.com/.

6.       Attached hereto as Exhibit E is a true and correct copy of a relevant excerpt from the 2007 Biennial Report of the Office of the Orange County District Attorney, which was obtained from the OCDA website, http://www.orangecountyda.com/.

7.       Attached hereto as Exhibit F are true and correct copies of relevant portions of the transcript of the January 5, 2005 hearing regarding settlement in *People v. Shell Oil Co., et al.*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at Washington, D.C. on this ___ day of June, 2014.



_____

Peter C. Condron

# Exhibit A

1  TONY RACKAUCKAS, District Attorney
   Orange County, State of California
2  BRUCE PATTERSON, Senior Assistant District Attorney
   ROBERT C. GANNON, JR., Assistant District Attorney
3  Consumer and Environmental Protection Unit
   BY:    MICHELLE M. LYMAN (State Bar #121780)
4          Deputy District Attorney
   401 Civic Center Drive
5  Santa Ana, California  92701-4575
   Telephone:   (714) 347-8706
6  Facsimile:   (714) 568-1250

7  Attorneys for Plaintiff

8

               SUPERIOR COURT OF THE STATE OF CALIFORNIA
9
                    FOR THE COUNTY OF ORANGE
10

11 | THE PEOPLE OF THE STATE OF        ) | **Case No. 80-40-31**
   | CALIFORNIA                        ) |
12 |                                   ) | [Assigned for All Purposes to the Hon. Stuart
   |            Plaintiff,             ) | Waldrip]
13 |                                   ) |
   |       vs.                         ) | **FIRST AMENDED COMPLAINT,**
14 |                                   ) | **COMPLAINT FOR INJUNCTION,**
   | SHELL OIL COMPANY, a Delaware     ) | **COMPLIANCE ORDER, CIVIL**
15 | corporation doing business as SHELL; and ) | **PENALTIES AND OTHER RELIEF**
   | DOES 1 through 100, inclusive,    ) |
16 |                                   ) |
   |            Defendants.            ) | Date Action Filed:   Jan. 6, 1999
17 |                                     | Trial Date:  None

18

19 _____

20

21       Plaintiff, the People of the State of California, by and through Tony Rackauckas, District

22 Attorney for the Orange County, alleges:

23                            **VENUE AND JURISDICTION**

24       1.      Tony Rackauckas, the District Attorney of the Orange County by Michelle M.

25 Lyman, bring this action to protect the public from health and safety hazards, and from unfair,

26 unlawful or fraudulent business practices, and to protect the environment of Orange County, and

27

28                                          1

          FIRST AMENDED COMPLAINT FOR INJUNCTION, CIVIL PENALTIES.
                          OTHER EQUITABLE RELIEF
SB 262184 v1, 08695-0001

1    brings this action in the public interest in the name of the People of the State of California and

2    Orange County.

3         2.      Plaintiff, by this action and pursuant to C.C.P. §731, Civil Code sections 3479 and

4    3480; *Health and Safety Code* sections 25299.01, 25299.37, 25299.76, 25249.5, 25249.7; *Water*

5    *Code* sections 13285, 13350, and 13375, *Fish and Game Code* section 5650; and *Business and*

6    *Professions Code* sections 17200, 17203, 17204, and 17206 and California Code of Regulations,

7    Title 23, Division 3, Chapter 16 inclusive, and other applicable laws, statutes, and regulations seek to

8    enjoin Defendant(s), and each of them, from engaging in further violations of the laws and

9    regulations alleged herein and seeks to obtain civil penalties for the violations of the above-

10   mentioned laws and regulations.

11        3.      Defendants, acting individually and/or together, herein conduct business within the

12   Orange County and elsewhere within the State of California and at all times mentioned herein, each

13   of the Defendants was the agent, employee or principal of each of the remaining Defendants, and

14   was acting within the scope of his agency and employment.

15        4.      The violations of law alleged herein were carried out wholly or in part in Orange

16   County.

17                              **PLAINTIFF**

18        5.      Plaintiff, the People, is the public located within the Orange County, as represented

19   by Tony Rackauckas, the District Attorney.

20        6.      Plaintiff, the People, does not include, and the District Attorney herein does not

21   represent, any water district or other municipality; the Orange County Health Care Agency

22   ("OCHCA"); the Santa Ana Regional Water Quality Control Board ("Regional Board"); the State

23   Water Resources Control Board; any city; any public or private well owner; or any other individual,

24   regulatory agency, corporation or other entity with an interest in or pertaining to groundwater or

25   production wells located within Orange County.

26

27

28                                    2

## DEFENDANT SHELL

7.     Plaintiff is informed and believes, and on such information and belief alleges that at all time relevant herein, Defendant SHELL OIL COMPANY (hereinafter referred to as SHELL) was and is a corporation duly organized under the laws of the state of Delaware with its principal place of business in Los Angeles, California.

8.     At all times relevant hereto, SHELL is, and was engaged in the business, and at times relevant herein was engaged in the business of exploration, development, production, refining of crude oil and/or the marketing and sale of petroleum products, including gasoline sold as motor vehicle fuel, on the West Coast of the United States, including Orange County.

9.     SHELL, and all other Defendants, market and/or distribute gasoline and other refined petroleum products to both consumers and retailers.  Gasoline is marketed under the SHELL trademark directly to motorists at SHELL branded retail outlets and through independent dealers and distributors within the state of California and elsewhere, including Orange County.

10.     SHELL, alone and/or in partnership or other types of business relationships with all other Defendants, as part of its gasoline marketing operations currently owns and/or operates, and did at all times relevant herein own and/or operate, numerous underground storage tank systems located within the Orange County used for the storage of gasoline offered for sale by SHELL to consumers.  SHELL, alone and/or in partnership or other types of business relationships with all other Defendants, currently owns and/or has owned certain real property located within Orange County used for the purpose of selling gasoline to the general public.

11.     The gasoline marketed by SHELL, alone and/or in partnership or other types of business relationships with all other Defendants, at all times relevant herein contains, among other chemicals, Benzene, CAS Number 71432, and Toluene, CAS Number 108883 which are chemicals known by the State of California to cause cancer or reproductive toxicity pursuant to Proposition 65. The gasoline marketed by SHELL, alone and/or in partnership or other types of business relationships with all other Defendants, at all time relevant herein, also contains the chemicals Ethylbenzene, Xylene and the gasoline additive Methyl Tertiary-Butyl Ether ("MTBE").

3

SB 262184 v1, 08695-0001

12.      Plaintiff is informed and believes and on such belief alleges that there have been numerous unauthorized releases of gasoline to the soil and groundwater of the Orange County from underground storage tanks currently or previously owned and/or operated and/or supplied by SHELL, alone and/or in partnership or other types of business relationships with all other Defendants, or onto land owned by SHELL, alone and/or in partnership or other types of business relationships with all other Defendants, which unauthorized releases have resulted in the contamination of County soil and groundwater with petroleum hydrocarbons, Benzene, Toluene, Ethybenzene and Xylene ("BTEX"), and MTBE. Defendants, and each of them, and the other Defendants as well individually and together, have failed to take appropriate corrective action to remedy the impact of these unauthorized releases and have knowingly allowed the continued migration of such releases through and into soil, groundwater and sources or potential sources of drinking water of Orange County and the State of California.

13.      SHELL, alone and/or in partnership or other types of business relationships with all other Defendants, owns and operates petroleum refineries on the West Coast. At all times relevant herein, SHELL, alone and/or in partnership or other types of business relationships with all other Defendants, added MTBE to its gasoline at its West Coast refineries prior to sale to the general public including the general public in Orange County.

14.      Plaintiff is informed and believes, and based upon such information and belief alleges, that at some time or times during the statutory period applicable to the offenses alleged herein, but at a time not specifically known to Plaintiff at this time, Defendants, and each of them, and the other Defendants individually and together, did violate and continue to violate the laws, statutes and regulations as alleged in the causes of action within this complaint. Plaintiff will amend this complaint to allege the specific date or dates of violations when they have been ascertained.

## DOE DEFENDANTS

15.      The names and capacities, whether individual, corporate or otherwise, of Defendants named herein as DOES 1 through 100, inclusive, are unknown to Plaintiff at this time, who, therefore, sues said Defendants by such fictitious names and Plaintiff will amend this complaint to

4

1   show their true names and capacities if and when they have been ascertained.  Plaintiff is informed

2   and believes, and on such information and belief alleges, that each of the Defendants named as a

3   Doe is responsible in some manner for events and occurrences about which this complaint is filed

4   and therefore is liable for the relief sought herein.

5                                          ALL DEFENDANTS

6           16.     When reference is made in this complaint to any act or omission of the Defendants, it

7   shall be deemed to mean that the officers, directors, agents, employees, or representatives of the

8   Defendants, who committed or authorized such act or omission, or failed to adequately supervise or

9   properly control or direct their employees while engaged in the management, direction, operation or

10  control of the affairs of the Defendants, and did so while acting within the scope of their

11  employment.

12          17.     At all times mentioned herein, each of the Defendants acted in concert with or

13  conspired with one or more of the remaining Defendants in committing the violation of law alleged

14  herein.  Each of the Defendants was the agent, employee or principal of and acting in concert with

15  each of the remaining Defendants, and was acting within the scope of his or her agency and

16  employment.

17                         ORANGE COUNTY'S GROUNDWATER BASIN

18          18.     The Santa Ana River Basin is a vast groundwater basin located primarily within

19  Orange County.  It provides approximately seventy-five (75) percent of the annual water supply for

20  more than two million (2,000,000) people in Orange County.  All water in the Santa Ana River

21  Basin has the highest possible designated beneficial use – municipal and domestic supply.  There are

22  thousands of active and inactive production wells located in Orange County, which are used or can

23  potentially be used to supply water to the public.  Each year more productions wells are installed in

24  order to meet the increasing waster supply needs of the County's growing population.  Discharges of

25  pollutants to groundwater within the Santa Ana River Basin are a threat to existing production wells

26  and to the potential future use of the basin as a water supply.

27

28                                                  5

                  FIRST AMENDED COMPLAINT FOR INJUNCTION, CIVIL PENALTIES,
                                  OTHER EQUITABLE RELIEF

SB 262184 v1, 08695-0001

1    ## GASOLINE AND ITS CHEMICAL CONSTITUENTS AND ADDITIVES

2          19.      As purchased at the pump, gasoline contains a number of constituents and additives

3    each of which separately, as well as in combination, present a significant risk to human health, safety

4    and to the environment.

5          20.      The gasoline marketed by SHELL, alone and/or in partnership or other types of

6    business relationships with all other Defendants, and Defendants and each of them, individually or

7    with other Defendants, at all times relevant herein, contains BTEX, petroleum hydrocarbons and the

8    chemical MTBE.

9

10    ## DEFENDANTS ORANGE COUNTY OPERATIONS CAUSE GROUNDWATER

11    ## CONTAMINATION

12

13          21.      There are numerous sites within Orange County where SHELL, alone and/or in

14    partnership or other types of business relationships with all other Defendants, and each of them,

15    individually and together, own, operate and/or supply and/or previously owned, operated and/or

16    supplied underground storage tanks, including but not limited to the sites specified in Exhibit "A".

17    Approximately 81 of these sites currently have soil and/or groundwater contamination caused by the

18    unauthorized release or releases of gasoline and/or MTBE to the environment from and surrounding

19    underground storage tank systems owned, operated and/or supplied by SHELL, alone and/or in

20    partnership or other types of business relationships with all other Defendants, and each of them

21    including, but not limited to the sites specified in Exhibit "B".  Additional sites upon which

22    underground storage tanks are or were owned, operated and/or supplied by SHELL, alone and/or in

23    partnership or other types of business relationships with all other Defendants, and each of them, may

24    currently be contaminated with gasoline and MTBE from undetected leaks and other releases from

25    underground storage tank systems, but are unknown to Plaintiff at this time.

26          22.      Records of the Regional Board and the OCHCA reveal numerous instances of

27    SHELL, alone and/or in partnership or other types of business relationships with all other

28                                                            6

SB 262184 v1, 08695-0001

1   Defendants, and each of them, and the other Defendants as well individually and together, resisting,

2   delaying and/or failing to follow agency directives calling for corrective action including but not

3   limited to investigation and/or cleanup activities at gasoline and MTBE release sites including but

4   not limited to the sites specified in Exhibit "B". SHELL, alone and/or in partnership or other types

5   of business relationships with all other Defendants, and each of them, and the other Defendants as

6   well individually and together, have failed to investigate, cleanup or otherwise take corrective action

7   in response to gasoline and MTBE releases with or without agency direction in violation of the law.

8         23.     The dilatory and ineffective response of SHELL, alone and/or in partnership or other

9   types of business relationships with all other Defendants, and each of them, and the other Defendants

10   as well individually and together, in addressing MTBE contaminant plumes has resulted in the

11   spread and migration of MTBE contamination away from the original source zone (underneath and

12   around underground storage tank systems) into deeper soil and groundwater, decreasing the

13   feasibility and increasing the cost of cleanup and placing drinking water supplies at risk. SHELL,

14   alone and/or in partnership or other types of business relationships with all other Defendants, and

15   each of them, and the other Defendants as well individually and together, responsiveness to agency

16   directives requiring site assessment and cleanup of their MTBE and gasoline contaminated sites

17   began to improve *only after* the District Attorney demanded their compliance with such directives

18   and notified them of the District Attorney's intention to seek the imposition of civil penalties for

19   their failure to do so.

20         24.     Records of the OCHCA and other local agencies responsible for the permitting and

21   inspection of gas station facilities and underground storage tank systems located in Orange County

22   reveal numerous instances where SHELL, alone and/or in partnership or other types of business

23   relationships with all other Defendants, and each of them, and the other Defendants as well

24   individually and together, have violated laws and regulations pertaining to the ownership and

25   operation of underground storage tank systems at sites, including, but not limited to, those specified

26   in Exhibit "A". These violations include but are not limited to failing to obtain appropriate permits;

27   failing to meet structural requirements for underground storage tanks including structural "upgrades"

28

7

SB 262184 v1, 08695-0001

1  required to be installed by December 22, 1998; failing to conduct required leak detection

2  monitoring; failing to conduct tank integrity testing or failing to submit the results of tank integrity

3  testing to the local regulatory agency; failing to properly close underground storage tanks no longer

4  in use; and failing to operate underground storage tank systems in a manner preventing unauthorized

5  releases.

6         25.     The failure of SHELL, alone and/or in partnership or other types of business

7  relationships with all other Defendants, and each of them, and the other Defendants as well

8  individually and together, to meet minimum mandatory state and federal requirements pertaining to

9  the ownership and operation of underground storage tanks under their control, increased the

10  likelihood that gasoline releases would occur and/or go undetected.

11         26.     Current and former state and federal requirements pertaining to construction,

12  maintenance, testing, leak detection monitoring and other operational requirements applicable to

13  underground storage tank systems are, and at all times relevant herein have been, unreliable and

14  ineffective in preventing, minimizing and detecting leaks from underground storage tank systems.

15  SHELL, alone and/or in partnership or other types of business relationships with all other

16  Defendants, and each of them, and the other Defendants as well individually and together, were in

17  possession of information regarding extensive and widespread release of gasoline to the environment

18  from underground storage tank systems on a nationwide basis even when such systems were in

19  apparent compliance with minimum structural and operational requirements. SHELL, alone and/or

20  in partnership or other types of business relationships with all other Defendants, and each of them,

21  and the other Defendants as well individually and together knew or should have known that

22  compliance with the minimum former state and federal requirements pertaining to the construction

23  and operation of underground storage tank systems could not be relied upon to prevent, minimize or

24  detect widespread leaks from underground storage tank systems.

25         27.     Not only should SHELL, alone and/or in partnership or other types of business

26  relationships with all other Defendants, and each of them, and the other Defendants as well

27  individually and together, have complied with minimum state and federal requirements pertaining to

28

8

SB 262184 v1, 08695-0001

1    the ownership and operation of underground storage tanks within Orange County (which in

2    numerous instances they did not do), they should have taken additional leak prevention and detection

3    measures given the fact they were conducting business on top of one of the largest below-ground

4    drinking water sources in the state of California, given the unreliability of underground storage tank

5    systems meeting minimum mandatory requirements in preventing and detecting leaks and given the

6    risks posed by MTBE once released to groundwater.  SHELL, alone and/or in partnership or other

7    types of business relationships with all other Defendants, and each of them, and the other Defendants

8    as well individually and together, knew or should have known that many of the underground storage

9    tank systems they owned and/or operated in Orange County were (and are) located directly above

10    one of the largest below ground drinking water sources in Califor2nia, which should have prompted

11    them to take additional containment, leak detection and cleanup measures.

12                        **FIRST CAUSE OF ACTION**

13       **VIOLATION OF CIVIL CODE SECTIONS 3479 AND 3480**
                     **[Public Nuisance Against All Defendants]**

14         28.     The People reallege and incorporate by reference paragraphs 1 through 27, inclusive

15    as though set forth fully and at length herein.

16         29.     The unauthorized release of gasoline and/or MTBE to groundwater and to soil where

17    such releases are likely to reach groundwater, constitutes a nuisance. Each such gasoline and MTBE

18    release is a continuing nuisance unless and until the gasoline and/or MTBE has been removed from

19    groundwater and soil. Gasoline and MTBE contamination may be abated at the source of release

20    ("source zone"). Groundwater contaminated with gasoline and MTBE surrounding the source zone

21    may also be captured ("capture zone") and treated at the release site which is typically a gas station.

22    As MTBE contamination migrates away from the source and capture zones into deeper aquifers, it

23    becomes far more difficult if not impossible to abate, thereby changing from a continuing nuisance

24    to a permanent nuisance. Once MTBE contamination reaches a production well or the aquifer from

25    which such wells draw, the damage to water is complete. Abatement measures at this stage are

26    extremely difficult, costly and time consuming. As in Santa Monica, a treatment system may be

27    utilized at the wellhead in an attempt to clean MTBE contaminated water, but replacement water

28

9

SB 262184 v1, 08695-0001

1    must be obtained to make up for the lost water supply at a far greater expense (approximately three

2    and one half times the cost).

3          30.   At times relevant herein, Defendants SHELL, alone and/or in partnership or other

4    types of business relationships with all other Defendants, and each of them, and the other Defendants

5    as well individually and together, created and/or maintained a public nuisance at numerous gasoline

6    release sites in the Orange County where BTEX and/or MTBE have contaminated, continue to

7    contaminate and threaten to contaminate groundwater and soil in close proximity to groundwater in

8    violation of Civil Code sections 3479 and 3480, including, but not limited to, those sites specified in

9    Exhibit "B".

10         31.   At times relevant herein Defendants SHELL, alone and/or in partnership or other

11   types of business relationships with all other Defendants, and each of them, and the other Defendants

12   as well individually and together, aided, abetted, assisted and acted in concert with each other

13   Defendant in the creation and maintenance of the nuisances as described in paragraphs 29 and 30

14   herein.

15         32.   Each site where MTBE and/or gasoline (including its constituent BTEX)

16   contaminates, or threatens to contaminate, groundwater or drinking water supplies constitutes a

17   separate and continuing nuisance subject to abatement.

18         33.   Any site where MTBE and/or gasoline (including its constituent BTEX),

19   contaminates, or threatens to contaminate, groundwater or drinking water supplies constitutes a

20   separate and continuing nuisance subject to abatement constitutes a permanent nuisance justifying an

21   award of damages.

22         34.   In addition to the MTBE and gasoline contaminant plumes in groundwater

23   constituting a public nuisance, underground storage tank systems owned and/or operated by

24   Defendants including Defendants SHELL, alone and/or in partnership or other types of business

25   relationships with all other Defendants, and each of them, and the other Defendants as well

26   individually and together, which are not properly designed, constructed, installed, maintained or

27

28             **10**

FIRST AMENDED COMPLAINT FOR INJUNCTION, CIVIL PENALTIES,
OTHER EQUITABLE RELIEF

SB 262184 v1, 08695-0001

1   operated so as to adequately prevent the release of gasoline and MTBE to the environment constitute

2   a continuing public nuisance.

### SECOND CAUSE OF ACTION
### VIOLATION OF *HEALTH AND SAFETY CODE* SECTION 25249
**Proposition 65: Unlawful Discharge to Drinking Water Against All Defendants**

5       35.     The People reallege and incorporate by reference paragraphs I through 34 inclusive.

6   as though set forth fully and at length herein.

7       36.     Beginning at a time as yet unknown to Plaintiff, but occurring within the applicable

8   statutory period and continuing up to the time of the filing of this complaint, Defendants have

9   engaged in and continue to engage in certain acts in violation of *Health and Safety Code* section

10  25249.5, to wit, Defendants have in the course of doing business knowingly discharged or released a

11  chemical known by the State to cause cancer or reproductive toxicity into water or onto or into land

12  where such chemical passes or probably will pass into any source of drinking water including

13  Benzene and Toluene.

14      37.     Defendants violations of law as alleged in Paragraph 36, above have occurred and

15  continue to occur at specified locations within Orange County, including but not limited to, the site

16  locations listed on Exhibit "B" attached hereto and incorporated by reference as though set forth full

17  and at length herein.  Plaintiff will amend this complaint as Plaintiff becomes informed of other site

18  locations where Defendants have engaged in violations of *Health and Safety Code* §25249.5.

19  However, Plaintiff excludes from this cause of action the sites identified in Exhibit "C", which is

20  attached hereto and incorporated by reference as though set forth fully and at length herein.

21      38.     The actions of Defendants in committing and continuing to commit violations of

22  Health *and Safety Code* §25249.5 are inimical to the health and welfare of the public and a threat to

23  sources and potential sources of drinking water of this state and unless enjoined by order of this

24  court, there is a substantial threat that Defendants will continue to commit such actions and

25  violations of law.  As such, Defendants are liable to Plaintiff for civil penalties in an amount up to

26  $2,500 per day per each violation of *Health and Safety Code* section 25249.5

28                                          11

SB 262184 v1, 08695-0001

**THIRD CAUSE OF ACTION**
**VIOLATION OF FISH AND GAME CODE SECTION 6650**
Deposit of Petroleum and Other Substances Deleterious to Fish, Plant or Bird Life into Waters
of the State Against All Defendants

39.     The People reallege and incorporate by reference paragraphs 1 through 38 inclusive.
as though set forth fully and at length herein.

40.     Defendants SHELL, alone and/or in partnership or other types of business
relationships with all other Defendants, and each of them, and the other Defendants as well
individually and together, at times relevant herein deposited in and permitted to pass into, or placed
where it can pass into the waters of this state petroleum and/or residuary products of Petroleum,
including gasoline and its constituents BTEX, in violation of Fish and Game Code Section
5650(a)(1).

41.     Each of the Defendants at times relevant herein deposited in and permitted to pass
into, or placed where it can pass into the waters of this state MTBE, a substance deleterious to fish,
plant life, or bird life in violation of Fish and Game Code §5650(a)(6).

42.     Defendants SHELL, alone and/or in partnership or other types of business
relationships with all other Defendants, and each of them, and the other Defendants as well
individually and together, at times relevant herein deposited in and permitted to pass into, or placed
where it can pass into the waters of this state gasoline, including its constituents BTEX, which are
substances deleterious to fish, plant life, or bird life in violation of Fish and Game Code §5650(a)(6).

**FOURTH CAUSE OF ACTION**
**VIOLATION OF HEALTH AND SAFETY CODE SECTION 25299.37**
**AND REGULATIONS ENACTED PURSUANT TO HEALTH AND SAFETY**
**CODE SECTION 25299.7**
Failure to Take Corrective Action or Appropriate Corrective Action in Response to
Unauthorized Releases Against All Defendants

43.     The People reallege and incorporate by reference paragraphs 1 through 42, inclusive,
as though set forth fully and at length herein.

44.     Defendants SHELL, alone and/or in partnership or other types of business
relationships with all other Defendants, and each of them, and the other Defendants as well

12

SB 262184 v1, 08695-0001

1   individually and together, at times relevant herein violated Health and Safety Code §25799.37(a) by

2   failing to take corrective action in response to unauthorized releases of motor vehicle fuel from

3   underground storage tank systems owned, operated or leased by them as required by Article 4 of

4   Chapter 6.75 of Division 20 of the Health and Safety Code and the corrective action regulations

5   adopted pursuant to Health and Safety Code §25299.77.

6        45.    Defendants SHELL, alone and/or in partnership or other types of business

7   relationships with all other Defendants, and each of them, and the other Defendants as well

8   individually and together, at times relevant herein violated Health and Safety Code §25299.37(b) by

9   conducting corrective action which did not ensure protection of human health, safety, and the

10   environment or which was not consistent with applicable waste discharge requirements, state

11   policies for water quality control or water quality control plans.

12        46.    Defendants SHELL, alone and/or in partnership or other types of business

13   relationships with all other Defendants, and each of them, and the other Defendants as well

14   individually and together, at all times relevant here in violated Health and Safety Code

15   §25299.37(c)(1) by failing, upon oral or written order, direction, notification or approval of the local

16   agency or regional board, to prepare corrective action work plans that detail the actions they will

17   take at various sites to comply with Health and Safety Code §§25299.37(a) and 25299.37(b) and the

18   corrective action regulations adopted pursuant to Health and Safety Code §25299.77.

19        47.    Defendants SHELL, alone and/or in partnership or other types of business

20   relationships with all other Defendants, and each of them, and the other Defendants as well

21   individually and together, at times relevant herein violated Health and Safety Code §25299.37(c)(2)

22   by preparing work plans not in accordance with the corrective action regulations adopted pursuant to

23   §25299.77 or which did not include a schedule and timeline for corrective action.

24        48.    Defendants SHELL, alone and/or in partnership or other types of business

25   relationships with all other Defendants, and each of them, and the other Defendants as well

26   individually and together, at all times relevant herein violated Health and Safety Code

27   §25299.37(c)(5) by failing to conduct corrective action at various sites in accordance with work

28

13

SB 262184 v1, 08695-0001

1   plans approved by the local agency or regional board pursuant to Health and Safety Code

2   §25299.37(c).

3       49.    Defendants SHELL, alone and/or in partnership or other types of business

4   relationships with all other Defendants, and each of them, and the other Defendants as well

5   individually and together, at times relevant herein violated numerous sections of Title 23 of the

6   California Code of Regulations, Division 3, Chapter 16, Articles 5 and 11, of the California

7   Underground Storage Tank Regulations related to the assessment, mitigation and cleanup of leaking

8   underground storage tank sites by responsible parties. All further reference to these regulations shall

9   be by title and section number only.

10       50.    Defendants SHELL, alone and/or in partnership or other types of business

11   relationships with all other Defendants, and each of them, and the other Defendants as well

12   individually and together, at all times relevant herein violated Title 23, §2721(a) by failing to take

13   interim remedial action to abate or correct the actual or potential effects of unauthorized releases of

14   motor vehicle fuel from underground storage tank systems owned and/or operated by them or onto

15   land owned, leased, or controlled by them.

16       51.    Defendants SHELL, alone and/or in partnership or other types of business

17   relationships with all other Defendants, and each of them, and the other Defendants as well

18   individually and together, at all times relevant herein violated Title 23, section 2722(c) by failing to

19   by failing to submit corrective action plans to the regulatory agencies for review and concurrence or

20   to modify such corrective action plans in response to regulatory agencies.

21       52.    Defendants SHELL, alone and/or in partnership or other types of business

22   relationships with all other Defendants, and each of them, and the other Defendants as well

23   Individually and together, at all times relevant herein violated Title 23, section 2722(d) by failing to

24   submit work plans that include proposed corrective action or a proposed schedule for corrective

25   action, or by failing to modify work plans for corrective action as directed by the relevant regulatory

26   agencies.

27

28

FIRST AMENDED COMPLAINT FOR INJUNCTION, CIVIL PENALTIES,
OTHER EQUITABLE RELIEF

SB 262184 v1, 08695-0001

53.     Defendants SHELL, alone and/or in partnership or other types of business relationships with all other Defendants, and each of them, and the other Defendants as well individually and together at all times relevant herein violated Title 23, §2723(a) by failing in to conduct an initial site investigation, initial abatement actions or initial site characterization in accordance with Title 23, sections 2652, 2653 and 2654, or interim remedial action in accordance with Title 23, section 2722(b).

54.     Defendants SHELL, alone and/or in partnership or other types of business relationships with all other Defendants, and each of them, and the other Defendants as well individually and together, at all times relevant herein violated Title 23, section 2724 by failing to conduct investigations of the unauthorized releases, the release sites or the surrounding areas possibly affected by unauthorized releases of motor vehicle fuel as required by Title 23, section 2724.

55.     Defendants SHELL, alone and/or in partnership or other types of business relationships with all other Defendants, and each of them, and the other Defendants as well individually and together at all times relevant herein violated Title 23, §2725( ) by failing to collect and analyze data necessary to assess the nature and vertical and lateral extent of unauthorized releases of motor vehicle fuel from underground storage take systems owned and/or operated by them or onto land owned, leased, or controlled by them or to determine a cost effective method of cleanup for such unauthorized releases.

56.     Defendants SHELL, alone and/or in partnership or other types of business relationships with all other Defendants, and each of them, and the other Defendants as well individually and together at all times relevant herein violated Title 23, section 2725 (b) by failing to propose corrective action plans using information obtained during the Soil and Water Investigation Phase.

57.     Defendants SHELL, alone and/or in partnership or other types of business relationships with all other Defendants, and each of them, and the other Defendants as well individually and together at all times relevant herein violated Title 23, §2725( ) by failing to submit

15

SB 262184 v1, 08695-0001

1  corrective action plans to the regulatory agencies for review and concurrence or modify such

2  corrective action plans in response to regulatory agency directives.

3      58.    Defendants SHELL, alone and/or in partnership or other types of business

4  relationships with all other Defendants, and each of them, and the other Defendants as well

5  individually and together at all times relevant herein violated Title 23, section 2 25(d) by failing to

6  include in corrective action plans all required items and information.

7      59.    Defendants SHELL, alone and/or in partnership or other types of business

8  relationships with all other Defendants, and each of them, and the other Defendants as well

9  individually and together at all times relevant herein violated Title 23, section 2 75(a) by failing to

10  carry out the selected corrective action alternative for remediation or mitigation of the actual or

11  potential adverse effects of unauthorized releases.

12      60.    Defendants SHELL, alone and/or in partnership or other types of business

13  relationships with all other Defendants, and each of them, and the other Defendants as well

14  individually and together at all times relevant herein violated Title 23, section 2 26(b) by failing to

15  implement corrective action plans upon approval by the regulation agencies, or x implement them

16  as directed by the regulatory agencies, or to monitor, evaluate, or report the results of

17  implementation of corrective action to the regulatory agencies.

18      61.    Defendants SHELL, alone and/or in partnership or other types of business

19  relationships with all other Defendants, and each of them, and the other Defendants as well

20  individually and together at all times relevant herein violated Title 23, Section 27(a) by failing to

21  verify implementation of the corrective action plan or to evaluate the effectiveness of the site work.

22      62.    Defendants SHELL, alone and/or in partnership or other types of business

23  relationships with all other Defendants, and each of them, and the other Defendants as well

24  individually and together at all times relevant herein violated Title 23, section 727(b) by failing to

25  verify completion of the corrective action plans or to evaluate the effectiveness of site work.

26      63.    Defendants SHELL, alone and/or in partnership or other types of business

27  relationships with all other Defendants, and each of them, and the other Defendants as well

28

16

SB 262184 v1, 08695-0001

1 | individually and together at all times relevant herein violated Title 33, §2727(c) by failing to submit

2 | monitoring data or an evaluation of monitoring results in writing on a schedule and for a duration

3 | agreed to by the regulatory agencies.

4 | **FIFTH CAUSE OF ACTION**
**VIOLATION OF *HEALTH AND SAFETY CODE* SECTION 25299**
5 | **AND REGULATIONS ENACTED PURSUANT THERETO**
**Failure to Comply with Owner/Operator Requirements for Underground Tank Systems**
6 | **Against Defendants**

7 | 64. The People reallege and incorporate by reference paragraphs 1 through 63, inclusive,

8 | as though set forth fully and at length herein.

9 | 65. Defendants SHELL, alone and/or in partnership or other types of business

10 | relationships with all other Defendants, and each of them, and the other Defendants as well

11 | individually and together at all times relevant herein violated *Health and Safety Code* section

12 | 25299(a)(1) by operating underground tank systems which had not been issued permits.

13 | 66. Defendants SHELL, alone and/or in partnership or other types of business

14 | relationships with all other Defendants, and each of them, and the other Defendants as well

15 | individually and together at all times relevant herein violated *Health and Safety Code* section

16 | 25299(a)(2) by failing to comply with all applicable permit requirements for the operation of

17 | underground tank systems.

18 | 67. Defendants SHELL, alone and/or in partnership or other types of business

19 | relationships with all other Defendants, and each of them, and the other Defendants as well

20 | individually and together at all times relevant herein violated *Health and Safety Code* section

21 | 25299(a)(3) by failing to maintain records as required by Chapter 6.7 of Division 20 of the *Health*

22 | *and Safety Code* and/or the regulations adopted pursuant to *Health and Safety Code* section 25299.3.

23 | 68. Defendants SHELL, alone and/or in partnership or other types of business

24 | relationships with all other Defendants, and each of them, and the other Defendants as well

25 | individually and together at all times relevant herein violated Health and Safety Code section

26 | 25299(a)(4) by failing to report unauthorized releases from their underground storage tanks systems.

27 |

28 | 

17

SB 262184 v1, 08695-0001

69.    Defendants SHELL, alone and/or in partnership or other types of business relationships with all other Defendants, and each of them, and the other Defendants as well individually and together at all times relevant herein violated *Health and Safety Code* section 25299(a)(5) by failing to properly close underground tank systems as required *Health and Safety Code* Section 25298.

70.    Defendants SHELL, alone and/or in partnership or other types of business relationships with all other Defendants, and each of them, and the other Defendants as well individually and together at times relevant herein violated Health and Code section 25299(a)(6) by violating applicable requirements of Chapter 6.7 of Division 20 the *Health and Safety Code* and/or the regulations adopted pursuant to *Health and Safety Code* section 25299.3.

71.    Defendants SHELL, alone and/or in partnership or other types of business relationships with all other Defendants, and each of them, and the other Defendants as well individually and together at all times relevant herein violated Health and Code section 25292.1 (a) by failing to operate underground tank systems to prevent unauthorized releases of motor vehicle fuel.

72.    Defendants SHELL, alone and/or in partnership or other types of business relationships with all other Defendants, and each of them, and the other Defendants as well individually and together at all times relevant herein violated *Health and Safety Code* section 25299(b)(1) by failing to obtain permits as required by law.

73.    Defendants SHELL, alone and/or in partnership or other types of business relationships with all other Defendants, and each of them, and the other Defendants as well individually and together at times relevant herein violated *Health and Safety Code* section 25299(b)(2) by failing to repair or upgrade underground tank systems as required by law.

74.    Defendants SHELL, alone and/or in partnership or other types of business relationships with all other Defendants, and each of them, and the other Defendants as well individually and together at times relevant herein violated *Health and Safety Code* section 25299(b)(3) by abandoning or improperly closing underground tank systems.

18

SB 262184 v1, 08695-0001

75. Defendants SHELL, alone and/or in partnership or other types of business relationships with all other Defendants, and each of them, and the other Defendants as well individually and together at times relevant herein violated *Health and Safety Code* section 25299(b)(4) by their knowing failure to take reasonable and necessary steps to assure compliance with applicable laws and regulations by the operators of an underground storage tank systems.

76. Defendants SHELL, alone and/or in partnership or other types of business relationships with all other Defendants, and each of them, and the other Defendants as well individually and together, at all times relevant herein violated *Health and Safety Code* section 25299(b)(6) by failing to comply with applicable requirements of Chapter 6.7 of Division 20 of the *Health and Safety Code* and/or the regulations adopted pursuant to *Health and Safety Code* Section 25299.3.

## SIXTH CAUSE OF ACTION
### VIOLATION OF BUSINESS AND PROFESSION CODE SECTION 17200
#### Acts of Unlawful, Unfair and Fraudulent Business Practice Against All Defendants

77. The People reallege and incorporate by reference paragraphs 1 through 76 inclusive, as though set forth fully and at length herein.

78. Defendants, and each of them, and the other Defendants as well individually and together, at times relevant herein committed business acts and practices which are unlawful, unfair or fraudulent in violation of *Business and Professions Code* section 17200. These acts and practices include, but are not limited to, the following:

a. All of the acts, practices and violations of law as alleged in paragraphs 28 through 76 of the First through Fifth Causes of Action, inclusive, which the People reallege and incorporate by reference as though set forth fully and at length herein.

b. Defendants, and each of them, and the other Defendants as well individually and together, at times relevant herein have not cleaned up discharges of MTBE which pose a threat to drinking water, or to groundwater that may reasonably be used for drinking water, as required by *Water Code* §13285.

19

SB 262184 v1, 08695-0001

1    c.  Defendants, and each of them, and the other Defendants as well individually

2 and together, at times relevant herein and in violation of a prohibition issued by the regional board or

3 state board intentionally or negligently discharged MTBE waste, or caused or permitted MTBE

4 waste to be deposited where it discharged, into the waters of the state and create a condition of

5 pollution or nuisance in violation of Section 13350(a)(2) of the *Water Code*.

6    d.  Defendants, and each of them, at all times relevant herein and in violation of a

7 prohibition issued by the regional board or state board intentionally or negligently discharged BTEX

8 and gasoline waste or cause or permitted BTEX and gasoline waste to be deposited where it

9 discharged, into the waters of the state and created a condition of pollution or nuisance in violation

10 of section 13350(a)(2) of the *Water Code*.

11    e.  Defendants, and each of them, and the other Defendants as well individually

12 and together, at all times relevant herein caused or permitted residuary, product of petroleum to be

13 deposited in or on waters of the state in violation of Section 13350(a)(3) of the *Water Code*.

14    f.  Defendants, and each of them, and the other Defendants as well individually

15 and together, at times relevant herein caused or permitted a hazardous substance (MTBE) to be

16 discharged in or on waters of the state where it created a condition of pollution or nuisance in

17 violation of Section 13350(b)(1) of the *Water Code*.

18    g.  Defendants, and each of them, and the other Defendants as well individually

19 and together, at times relevant herein caused or permitted hazardous substances (Benzene, Toluene,

20 Ethylbenzene, Xylene and gasoline) to be discharged in or on waters of the state where they created

21 a condition of pollution or nuisance in violation of Section 13550(b)(1) of the *Water Code*.

22    h.  Defendants, and each of them, and the other Defendants as well individually

23 and together, at times relevant herein caused the degradation of groundwater quality in the Santa

24 Ana River Basin to the detriment of the peace, health, safety and welfare of the people of the state of

25 California and the Orange County in contravention of the express intent of the Legislature to prevent

26 such degradation and protect the waters of the state as declared in Sections 102 04, 12922,

27 12922.1, 13000 and other sections of the *Water Code*.

                      20

28

SB 262184 v1, 08695-0001

1        i.     Defendants, and each of them, and the other Defendants as well individually

2    and together, at all times relevant herein violated the State Board antidegradation policy established

3    for waters of the state in Resolution No. 68-16 "Statement of Policy with Respect to Maintaining

4    High Quality Waters of California."

5        j.     Defendants, and each of them, and the other Defendants as well individually

6    and together, at all times relevant herein violated the State Board policy established for the

7    investigation and cleanup of releases from underground storage tanks in Resolution No. 92-49

8    "Policies and Procedures for Investigation and Cleanup and Abatement of Discharges."

9        k.     Defendants, and each of them, and the other Defendants as well individually

10   and together, at all times relevant herein violated the Regional Board policy contained in the 1995

11   Water Quality Control Plan for the Santa Ana River Basin which establishes that ground waters of

12   the region shall not contain, as a result of controllable water quality factors, taste or odor-producing

13   substances at concentrations which cause a nuisance or adversely affect beneficial uses.

14       l.     Defendants, and each of them, at all times relevant herein violated the

15   Regional Board policy contained in the 1995 Water Quality Control Plan for the Santa Ana River

16   Basin which establishes that all waters of the region shall be maintained free of substances in

17   concentrations which are toxic, or that produce detrimental physiological responses in human, plant

18   or aquatic life.

19       m.     Defendants, and each of them, and the other Defendants as well individually

20   and together, at all times relevant herein conspired to commit an act or acts injurious to the public

21   health in violation of Section 182(a)(5) of the Penal Code.

22       n.     Defendants, and each of them, and the other Defendants as well individually

23   and together, at all times relevant herein should have but did not begin cleanup of soil and water

24   after submitting a corrective action plan but before such plan had been approved by the regulatory

25   agency as authorized by Section 25299.37(c)(5) of the *Health and Safety Code* in the interest of

26   minimizing environmental contamination and promoting prompt cleanup.

27

28

                 21

SB 262184 v1, 08695-0001

**WHEREFORE PLAINTIFF PRAYS THAT:**

1.     Pursuant to Civil Code sections 3479 and 3480, *Code of Civil Procedure* section 731, *Business and Professions Code* section 17203, *Health and Safety Code* sections 25299.01 and 25249.7, and *Fish and Game Code* section 5650.1, Defendants, and each of them be ordered to effectively and expeditiously cleanup and abate contaminant plumes consisting of gasoline, its constituent chemicals BTEX, and the chemical additive MTBE declared by the court to constitute a public nuisance or which were otherwise caused by their violation of the laws, statutes and policies set forth in the First through Seventh Causes of Action herein.

2.     Pursuant to *Code of Civil Procedure* section 731, Defendants, and each of them, and the other Defendants as well individually and together, be ordered to pay damages according to proof where cleanup and abatement of contaminated groundwater cannot be achieved and has resulted in the creation of a permanent nuisance.

3.     Pursuant to *Code of Civil Procedure* section 731, *Business and Professions Code* section 17203, *Health and Safety Code* sections 25299.01 and 25249.7, and *Fish and Game Code* section 5650.1, Defendants, and each of them be temporarily, preliminarily, and thereafter restrained and enjoined from engaging in the acts alleged in this complaint which violate the laws, regulations and policies as set forth herein.

4.     Pursuant to *Health and Safety Code* sections 25299 and 25249.7, *Business and Professions Code* section 17206, and *Fish and Game Code* section 5650.1, Defendants, and each of them, and the other Defendants as well individually and together, be assessed and plaintiff recover civil penalties for each violation of law proved at trial.

5.     Pursuant to *Business and Professions Code* section 17203 and the inherent equitable powers of the Court, the Court order Defendants, and each of them, to disgorge profits obtained as a result of their unlawful, unfair and fraudulent business practices.

6.     The Court order such other and further relief as the Court deems proper to fully and successfully dissipate the adverse effects of Defendants unlawful acts and to prevent Defendants and each of them from committing such unlawful acts in the future.

22

SB 262184 v1, 08695-0001

1    7.    Plaintiff to recover its attorney fees and costs, including the cost of investigation.

2

3                                TONY RACKAUCKAS, DISTRICT ATTORNEY
                                 STATE OF CALIFORNIA
4

5

6
    Dated: *April 2, 2001*        BY: *Michelle M. Lyman*
7
                                 MICHELLE M. LYMAN
8                                DEPUTY DISTRICT ATTORNEY

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                       23

        FIRST AMENDED COMPLAINT FOR INJUNCTION, CIVIL PENALTIES,
                       OTHER EQUITABLE RELIEF

SB 262184 v1, 08695-0001

# Exhibit B



Mar 21 2008
8:01PM

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

In re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

This Document Relates To:

ORANGE COUNTY WATER DISTRICT,

               Plaintiff,

    vs.

UNOCAL CORPORATION, INDIVIDUALLY AND
FORMERLY KNOWN AS UNION OIL COMPANY
OF CALIFORNIA; UNION OIL COMPANY OF
CALIFORNIA, INDIVIDUALLY AND DBA
UNOCAL [DOE 1]; TOSCO CORPORATION;
CONOCOPHILLIPS COMPANY; CHEVRON
U.S.A. INC., individually and doing business as
CHEVRON PRODUCTS COMPANY AND
CHEVRON CHEMICAL COMPANY;
CHEVRONTEXACO
CORPORATION; TEXACO REFINING AND
MARKETING INC., now known as TMR
COMPANY; EQUILON ENTERPRISES
LLC; SHELL OIL COMPANY, individually and doing
business as SHELL OIL PRODUCTS US; EXXON
MOBIL CORPORATION, individually and formerly
known as EXXON CORPORATION, and doing
business as EXXONMOBIL REFINING AND
SUPPLY COMPANY, EXXON CHEMICAL U.S.A.,
and EXXONMOBIL CHEMICAL CORPORATION;
MOBIL CORPORATION; ULTRAMAR, INC;
VALERO REFINING
COMPANY - CALIFORNIA; VALERO
MARKETING AND SUPPLY COMPANY [DOE 2];
ATLANTIC RICHFIELD COMPANY, individually
and doing business as ARCO PRODUCTS
COMPANY (formerly known as ARCO
PETROLEUM COMPANY) and also known as

Master File C.A. No. 1:00-Civ.
1898

MDL No 1358 (SAS)

Case No. 04 Civ. 4968 (SAS)

Transferred from:
United States District Court for
the Central District of California,
Santa Ana Division,
Case No. SACV 03-1742 JVS
(ANx)

Removed from:
Superior Court of California,
County of Orange,
Case No. 03CC00176

**THIRD AMENDED**
**COMPLAINT**

**JURY TRIAL DEMANDED**

ARCO; BP PRODUCTS NORTH AMERICA, INC.;
BP WEST COAST LLC [DOE 3]; TESORO
PETROLEUM CORPORATION [DOE 4]; TESORO
REFINING AND MARKETING COMPANY, INC.
[DOE 5]; PETRO-DIAMOND, INC. [DOE 6];
SOUTHERN COUNTIES OIL CO. [DOE 7];
CITGO PETROLEUM CORPORATION [DOE 8];
ARCO CHEMICAL COMPANY [DOE 201];
LYONDELL CHEMICAL COMPANY,
INDIVIDUALLY AND FORMERLY KNOWN AS
ARCO CHEMICAL COMPANY; G&M OIL
COMPANY, INC.; 7-ELEVEN, INC.; USA
GASOLINE CORPORATION; DOES 9-200, AND
DOES 202-1000, INCLUSIVE.

Plaintiff Orange County Water District (the "District") alleges that at all relevant times:

## I. SUMMARY OF THE CASE.

1.      By this action the District seeks to protect the groundwater resources of northern

Orange County from oil industry pollution. The California State Legislature has charged the

District with preventing pollution and contamination of the water supply of the District. The

groundwater resources managed by the District supply approximately 75 percent of the water

needs to more than 2 million residents in the cities of Anaheim, Buena Park, Cypress, Costa

Mesa, Fountain Valley, Fullerton, Garden Grove, Huntington Beach, Irvine, La Palma, Los

Alamitos, Newport Beach, Orange, Placentia, Santa Ana, Seal Beach, Stanton, Tustin, Villa Park,

Westminster and Yorba Linda. However, expanding plumes of methyl tertiary butyl ether and its

degradation byproducts ("MTBE") and tertiary butyl alcohol ("TBA") contaminate the District's

groundwater resources, including various aquifers in various sub-basins, polluting in dispersed

locations, substantial portions of the common water supply managed by the District.

Groundwater typically occurs in the District service area at 20 to 100 feet or more below the

2

surface. Because of the distance, relatively low precipitation rates, and potential presence of intermittent clay layers which retard downward movement, there may be a significant delay between the release of gasoline and its occurrence in groundwater.

2.      The defendants in this action are the designers, formulators, manufacturers, refiners, promoters, marketers, distributors, suppliers, and retailers of the MTBE and TBA and gasoline containing MTBE and TBA that contaminates and pollutes groundwater resources replenished and managed by the District. Defendants knowingly and willfully promoted and marketed MTBE and TBA and gasoline containing MTBE and TBA, when they knew or reasonably should have known that these compounds would reach groundwater, pollute public water supplies, render drinking water unusable and unsafe, and threaten the public health and welfare as they have done within the District.

3.      The District files this lawsuit to recover compensatory and all other damages, including all necessary funds to investigate, monitor, prevent, abate, or contain any contamination of, or pollution to, groundwaters within the District from MTBE and TBA; to protect the quality of the common water supplies of the District; to prevent pollution or contamination of that water supply; and to assure that the responsible parties -- and not the District nor the public -- bear the expense.

## II. PLAINTIFF.

4.      The District is a special water agency created by the Legislature in 1933 to maintain, replenish, and manage groundwater resources. The Legislature expressly granted the District the right, and duty, among other things, to conduct any investigations of the quality of the groundwaters within the district to determine whether those waters are contaminated or polluted,

and to perform any necessary investigation, cleanup, abatement, or remedial work to prevent, abate, or contain any threatened or existing contamination or pollution of the surface or groundwaters of the district, and recover the costs of any such activities from the persons responsible for the contamination or threatened contamination. (Cal. Water Code App. § 40-8). The District has suffered injury in fact, including expending funds necessary to investigate, clean up, abate, and/or remediate the MTBE and/or TBA contamination caused by Defendants.

5.     The Legislature has also expressly granted the District the right, and duty, among other things, to litigate in order to protect groundwater resources and to represent the rights of water users within its territory. In particular, the District has the right, and duty, to commence, maintain, intervene in and compromise any and all actions and proceedings to prevent interference with water or water rights used or useful to lands within the district, or diminution of the quantity or pollution or contamination of the water supply of the district, or to prevent any interference with the water or water rights used or useful in the district which may endanger or damage the inhabitants, lands or use of water in the district. (Cal. Water Code App. § 40-2). The District owns land overlying groundwater at various locations within the District and has water rights therein. Water users within the District pump at least 320,000 acre-feet of groundwater each year. There are over four hundred confirmed MTBE release sites in the District contaminating and threatening the water supplies of overlying owners and other water users within the District. The District and the water users it represents have suffered injury in fact as a result of MTBE and/or TBA contamination and threat of contamination in water supply wells in the District's groundwater resources.

6.     The District has protectable legal interests in the groundwaters within the District's territory, including the right to extract groundwater, which have been injured as a result of contamination of such groundwaters by MTBE and/or TBA. The relief sought in this action will remedy the injury suffered by the District.

### III. DEFENDANTS.

7.     The defendants in this action are all corporate members of the petroleum industry. As described below, defendants include refiners of gasoline containing MTBE and/or TBA that contaminates and pollutes groundwaters within the District; manufacturers and promoters of MTBE and/or TBA; suppliers of gasoline containing MTBE and/or TBA that contaminates and pollutes groundwaters within the District; and owners and operators of gasoline facilities that have released MTBE and/or TBA that contaminates and pollutes groundwaters within the District;.

8.     When reference in this complaint is made to any act or omission of the defendants, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of defendants, and did so while acting within the scope of their employment or agency.

9.     Plaintiff is ignorant of the true names and/or capacities of the defendants sued herein under the fictitious names DOES 9 through 200 and 202 through 1000, inclusive.

A.     **Refiner Defendants.**

10.    The following defendants owned and operated gasoline refineries in Southern California that have provided, at all times relevant to this complaint, gasoline containing MTBE and/or TBA to areas affecting the District's groundwater supplies:

11.    Unocal Corporation ("Unocal"), individually and formerly known as Union Oil Company of California, is a Delaware corporation with its principal place of business in El Segundo, California, doing business in California.  Plaintiff is informed and believes that Unocal Corporation is a successor in interest to Union Oil Company of California.  Plaintiff is informed and believes that Unocal holds a patent for reformulated gasoline containing MTBE used in California.

12.    Union Oil Company of California ("Union Oil") is a California corporation with its principal place of business in El Segundo, California.  Plaintiff is informed and believes that since approximately 1985 this defendant has done business under the name "Unocal," and that Unocal is a wholly-owned, operating subsidiary of Unocal Corporation, a holding company incorporated in Delaware. Union Oil Company of California is named in place of DOE 1.

13.    Tosco Corporation ("Tosco") is a Nevada corporation with its principal place of business in Bartlesville, Oklahoma, and doing business in California.

14.    ConocoPhillips Company ("ConocoPhillips Co.") is a Delaware corporation with its principal place of business in Houston, Texas, and doing business in California.  Plaintiff is informed and believes that ConocoPhillips Co. is the successor in interest to Tosco.

15.    Chevron U.S.A. Inc., individually and doing business as Chevron Products Company and Chevron Chemical Company ("Chevron U.S.A."), is a Pennsylvania corporation

6

with its principal place of business in San Ramon, California, and doing business in California.

16.     ChevronTexaco Corporation ("ChevronTexaco") is a Delaware corporation with its principal place of business in San Ramon, California, doing business in California.

17.     Texaco Refining and Marketing Inc., now known as TMR Company ("Texaco"), is a Delaware corporation with its principal place of business in Houston, Texas, and doing business in California.

18.     Equilon Enterprises LLC, ("Equilon") is a Delaware company with its principal place of business in Houston, Texas and doing business in California.  Plaintiff is informed and believes that Equilon is a successor in interest to certain Shell-related and Texaco-related entities.

19.     Shell Oil Company, individually and doing business as Shell Oil Products US ("Shell") is a Delaware corporation with its principal place of business in Houston, Texas, and doing business in California.

20.     Exxon Mobil Corporation, individually and formerly known as Exxon Corporation and doing business as ExxonMobil Refining and Supply Company, Exxon Chemical U.S.A., and ExxonMobil Chemical Corporation ("Exxon Mobil"), is a New Jersey corporation with its principal place of business in Houston, Texas and doing business in California.  Plaintiff is informed and believes that Exxon Mobil was formed as a result of a merger in 1999 of Mobil Corporation and Exxon Corporation.  Plaintiff is informed and believes that Exxon Mobil Corporation is the successor corporation to Exxon Corporation, which prior to the merger with Mobil Corporation in 1999 supplied, exchanged and/or otherwise provided gasoline containing MTBE and/or TBA to gasoline stations in Southern California.

7

28. Tesoro Petroleum Corporation ("Tesoro") is a Delaware corporation with its principal place of business in San Antonio, Texas, and doing business in California. Tesoro is named in place of DOE 4.

29. Tesoro Refining and Marketing Company, Inc. ("Tesoro Refining"), is a wholly owned subsidiary of Tesoro, is a Delaware corporation with its principal place of business in San Antonio, Texas, doing business in California. Tesoro Refining is named in place of DOE 5.

**B.   Supplier Defendants.**

30. At all times relevant herein the following defendants supplied gasoline containing MTBE and/or TBA which affected the District's groundwater supplies:

31. Petro-Diamond, Inc., ("Petro-Diamond") is a Delaware Corporation with its principal place of business in Irvine, California. Petro Diamond is named in place of DOE 6.

32. Southern Counties Oil Co. ("Southern Counties"), is a California Corporation with its principal place of business in Orange, California. Southern Counties is named in place of DOE 7.

33. Citgo Petroleum Corporation ("Citgo") is a Delaware corporation with its principal place of business in Tulsa, Oklahoma, and doing business in California. Citgo is named in place of DOE 8.

34. The defendants identified in paragraphs 10 through 33 and DOES 9 through 200 will be collectively referred to as the "Refiner/Supplier Defendants." Among other things, these defendants (1) designed, formulated, manufactured, compounded, refined, provided product information and/or instructions for use, packaged, promoted, marketed, distributed, transported, exchanged and/or sold gasoline containing MTBE and/or TBA in the State of California that is

9

contaminating and polluting groundwaters within the District;  (2) negligently designed, constructed, fabricated, installed, owned, operated, controlled, inspected, and/or repaired gasoline delivery systems (defined wherever used in this Complaint as including, but not limited to, gasoline stations and other gasoline storage, transfer, delivery and dispensing systems) from which MTBE and/or TBA is contaminating or polluting groundwaters within the District;  (3) were legally responsible for and committed each of the multiple tortious and ongoing wrongful acts alleged in this Complaint;  (4) participated in one or more enterprises to promote MTBE and/or TBA and/or gasoline containing MTBE and/or TBA;  (5) negligently and/or intentionally failed and refused to take appropriate remediation action to abate MTBE and/or TBA plumes formed after MTBE and/or TBA escaped from their gasoline delivery systems;  and (6) in doing the tortious and wrongful acts alleged in this Complaint, acted in the capacity of aider, abettor, co-conspirator, joint-venturer, partner, agent, principal, successor-in-interest, surviving corporation, fraudulent transferee, fraudulent transferor, controller, alter-ego, licensee, licensor, patent holder and/or indemnitor of each of the other defendants.

C.   **MTBE/TBA Manufacturer and Supplier Defendants.**

35.   The following defendants manufactured and/or supplied MTBE and/or TBA which was added to gasoline that was distributed to and sold in areas affecting the District's groundwater resources:

36.   ARCO Chemical Company is a corporation with its principal place of business in Los Angeles, California.  ARCO Chemical Company is named in place of DOE 201.

37.   Lyondell Chemical Company, individually and formerly known as ARCO Chemical Company (collectively, "Lyondell") is a corporation with its headquarters in Houston,

10

## IV.  ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION.

### A.   The Contaminants:  MTBE and TBA.

46.     MTBE is an additive to gasoline.  As used herein, MTBE consists not only of methyl tertiary butyl ether, but also the contaminants in commercial grade MTBE as well as the following oxygenates and ethers, including, but not limited to, TAME, DIPE, and ETBE.

47.     TBA is present in some gasoline.  TBA is variously a gasoline constituent, an impurity in commercial grade MTBE, and a degradation or breakdown product of MTBE.

48.     MTBE and TBA contaminate the environment through leaks and spills from gasoline delivery systems.  Once released to the environment from gasoline delivery systems, MTBE and TBA have unique characteristics that cause extensive environmental contamination and a corresponding threat to the public health and welfare.  In particular, the fate and transport of MTBE and TBA in the subsurface differs significantly from that of gasoline constituents that have historically been of environmental and/or toxicological concern, specifically the "BTEX compounds" (benzene, toluene, ethylbenzene, and xylene).

49.     Once released into the subsurface, MTBE and TBA separate from other gasoline constituents in the presence of moisture.  In contrast to the BTEX compounds, MTBE and TBA have a strong affinity for water.  If MTBE and/or TBA are released into the environment in sufficient quantities, MTBE and/or TBA have the capacity to migrate through the soil, the groundwater, penetrate deeper within the aquifer, and cause persistent contamination that can threaten the potability of drinking water wells.  There is a potentially lengthy delay, based on site specific factors, between the time MTBE and/or TBA are released and the time they accumulate

13

in potentially usable ground water in sufficient quantities to contaminate public drinking water resources.

50.    MTBE and TBA spread farther and faster than other components of gasoline, resist biodegradation, and are difficult and costly to remove from groundwater and drinking water supplies.

**B.    Regulatory Standards Applicable to MTBE and TBA.**

51.    No federal or state agency has approved either MTBE or TBA as an additive to drinking water.  No federal or state agency has approved releasing MTBE or TBA to groundwater.

52.    Along with its other vile properties, MTBE can render water supplies undrinkable by changing the taste and odor of water into a foul smelling liquid with a turpentine odor and chemical taste unfit for human consumption.  The State of California has established a Secondary Maximum Contaminant Level ("MCL") for MTBE of 5 parts per billion ("ppb").  This means that the law prohibits using water containing MTBE at or above this level for public drinking water systems because of MTBE's aesthetic properties.  Some individuals, however, can smell and taste MTBE in water at significantly lower levels.

53.    MTBE also presents a significant public health threat.  Because of MTBE's potential for causing cancer, the State of California has established a Primary (health) MCL for MTBE of 13 ppb.  This means that the law prohibits using water containing MTBE at or above this level for public drinking water systems because of MTBE's threat to public health.

54.    TBA also presents a significant threat to public health.  The State of California has set an Action Level for TBA of 12 parts per billion in water, based on an interim assessment

be handled the same as ordinary gasoline, and required no special measures to protect against or respond to suspected releases to the subsurface.

60.     The manufacturers, refiners, and suppliers of MTBE, TBA, and gasoline containing MTBE and/or TBA had a duty (which they breached) to test MTBE and TBA thoroughly to determine their environmental fate and transport characteristics, and potential human health impacts before they sold MTBE, TBA and/or gasoline containing MTBE and/or TBA, and had a further duty (which they also breached) to take precautions necessary to assure that gasoline containing MTBE and/or TBA was properly stored and instituted all necessary measures to contain and promptly abate the inevitable spills and leaks.  Nonetheless, the defendants, and each of them, failed adequately to test, store, warn about, or control gasoline containing MTBE and/or TBA, and, among other things, failed to abate groundwater contamination caused by MTBE and/or TBA, including contamination in and pollution to the District's groundwater resources.

61.     The Refiner/Supplier and Manufacturer/Supplier Defendants, their agents and employees created, participated in, and/or facilitated the flow of MTBE, TBA and/or gasoline containing one or more such compounds into gasoline distribution, storage, and dispensing systems that they knew could not safely contain such products. The widespread problems of leaking gasoline delivery systems were well known to the defendants prior to the introduction of MTBE and TBA.  At least as early as the mid-1960's, these defendants knew, or reasonably should have known, that gasoline delivery systems suffer significant and widespread leaks and failures, and release gasoline products into the environment, including into groundwater.

17

62.    Before introducing MTBE and/or TBA into gasoline delivery systems, the Refiner/Supplier and Manufacturer/Supplier Defendants knew, or reasonably should have known, among other things, that MTBE and/or TBA released into the environment would mix easily with groundwater, move great distances, resist biodegradation and/or bioremediation, render drinking water unsafe and/or non-potable, cause significant expenses to remove from public drinking water supplies, and otherwise threaten the public health and welfare. The defendants knew, or they reasonably should have known, that the gasoline distribution and retail system statewide – and in the vicinity of the District – contained leaking gasoline delivery systems. They knew, or they reasonably should have known, that gasoline facilities, including those in the vicinity of the District, commonly lacked adequate storage facilities for gasoline containing MTBE and/or TBA, and that the operators of these facilities were unaware of either the special hazards of MTBE and/or TBA or the steps necessary to eliminate or mitigate those hazards.

63.    At all times relevant to this action:

(a)    the Manufacturer/Supplier Defendants, and each of them, sold, exchanged, supplied, distributed, delivered and/or otherwise provided MTBE and/or TBA to the Refiner/Supplier Defendants, the Refiner/Supplier Defendants, and each of them, sold, exchanged, supplied, distributed, delivered and/or otherwise provided gasoline containing MTBE and/or TBA to retail gasoline stations and/or other gasoline delivery systems within or near the District's boundaries. Such sales, exchanges, supplies, distributions, deliveries and/or other provisions of gasoline containing MTBE and/or TBA to such facilities occurred over time through the

end of 2002 and, for at least certain defendants, beyond;

(b)     gasoline containing MTBE and/or TBA was released to the subsurface from retail

gasoline facilities owned and/or operated by the Owner/Operator Defendants, and

each of them, and from other facilities at dispersed locations within or near the

District's boundaries.  Such releases of gasoline containing MTBE and/or TBA

have occurred over time, have been discovered or have become discoverable at

various times, and are still occurring, all in varying amounts at different locations,

impacting various aquifers in various sub-basins within the District; and

(c)     MTBE and TBA take time to migrate from release points to locations within the

subsurface at which they have an appreciable impact on groundwater resources.

MTBE and TBA have over time migrated in the subsurface from dispersed release

points at or near the surface at retail gasoline facilities within or near the District's

boundaries, causing pollution, contamination, and substantial damage to the

District's groundwater resources, causing appreciable injury to the District

within the three years before the filing of this Complaint, and damaging the

District at such times and in amounts to be proved at trial.

## FIRST CAUSE OF ACTION

### (Strict Liability Against All Defendants)

64.     The District refers to paragraphs 1 through 63 above, and by this reference

incorporates them as though set forth in full.

65.     The Refiner/Supplier Defendants, and each of them, designed, formulated,

manufactured, compounded, refined, provided product information and/or instructions for use,

provision of product information and/or instructions for use of gasoline containing MTBE and/or TBA and gasoline delivery systems.

78.     The defendants named herein so negligently, carelessly, and/or recklessly designed, formulated, manufactured, handled, controlled (or the lack thereof), disposed, promoted, marketed, distributed, sold, tested (or the lack thereof), labeled, used, provided product information and/or instructions for use, released and/or spilled MTBE and/or TBA, and/or so negligently, carelessly and recklessly dispensed, spilled, and released gasoline containing MTBE and/or TBA and/or so negligently, carelessly, and recklessly dispensed MTBE and/or TBA into gasoline delivery systems, and/or so negligently, carelessly and/or recklessly designed, installed, operated and/or maintained gasoline pipelines and/or gasoline delivery systems for use with gasoline containing MTBE and/or TBA, that they breached their duties and directly and proximately caused MTBE and/or TBA to contaminate and pollute groundwater resources within the District resulting in the compensatory and punitive damages alleged in this complaint.

79.     Defendants, and each of them, among other things, negligently, carelessly, and/or recklessly failed to: (1) prevent leaks of MTBE and/or TBA through the use of appropriate technology; (2) install and maintain gasoline delivery systems that prevented leaks and facilitated prompt detection and containment of any leaks; (3) monitor and discover leaks as soon as possible; (4) warn those who may be injured as a result of the leak(s); and (5) clean up and abate MTBE and/or TBA spill(s) as thoroughly and as soon as reasonably possible and in a manner necessary to prevent harm and injury.

## FOURTH CAUSE OF ACTION

### (Nuisance Against All Defendants)

93.    The District realleges paragraphs 1 through 92 of this complaint and incorporates them herein by reference.

94.    The negligent, reckless, intentional and ultrahazardous activity of the defendants, and each of them, alleged herein has resulted in the contamination of and pollution of groundwaters within the District as alleged herein and constitutes a nuisance.  The contamination and pollution of such groundwaters with gasoline and MTBE and/or TBA is a public nuisance as defined in Civil Code section 3479, Civil Code section 3480, Health and Safety Code section 5410, and Water Code section 13050, and is abatable.  The defendants, and each of them, caused, created, and/or assisted in the creation of the nuisance alleged herein.

95.    The Manufacturer/Supplier and Refiner/Supplier Defendants, their agents and employees marketed, distributed, promoted, and/or sold their products with reckless disregard for human health, the environment, and for the peace, tranquility, and economic well-being of the public, resulting in the nuisance alleged herein.

96.    The District is specially and adversely affected by the nuisance.

97.    The nuisance caused by defendants, and each of them, has substantially interfered with and obstructed the District's ability to provide a water supply free from unacceptable health risk, taste, odor, color, pollution and contamination, and to protect groundwaters within its territory from such harm.

98.    The District owns, holds and/or represents property rights and interests damaged by the nuisance.  The District's injury is separate and distinct from that of the public.

District by MTBE and/or TBA.

115.   In order to resolve this controversy, Plaintiff seeks an adjudication of the respective rights and obligations of the parties, in conjunction with an award of damages, to the extent necessary to provide full relief to the plaintiff.

### PRAYER

WHEREFORE, the District requests judgment against defendants, and each of them, for:

1.   Compensatory damages according to proof;

2.   Exemplary damages in an amount sufficient to punish defendants Chevron U.S.A. Inc.; ChevronTexaco Corporation; Texaco Refining and Marketing Inc.; Equilon Enterprises LLC; Shell Oil Company; ConocoPhillips Company; Unocal Corporation; Union Oil Company of California; Tosco Corporation; Exxon Mobil Corporation; Mobil Corporation; Ultramar, Inc.; Valero Refining Company - California; Valero Marketing and Supply Company; Atlantic Richfield Company; BP Products North America, Inc.; ARCO Chemical Company; and Lyondell Chemical Company, and to deter those defendants from ever committing the same or similar acts;

3.   An order declaring that defendants are liable for the full cost of all remedial and other actions necessary to abate and remove MTBE and/or TBA which is contaminating and threatening the District's property, and for such orders as may be necessary to provide full relief to the plaintiff;

4.   An Order declaring that the Owner/Operator Defendants' gasoline delivery systems constitute a nuisance in the manner they are maintained and operated, and compelling them to abate that nuisance;

5. An Order compelling Defendants and each of them to abate the public nuisance proximately caused by their conduct as alleged herein;

6. Attorneys' fees to the full extent permitted by law;

7. Costs incurred in prosecuting this action, and prejudgment interest to the full extent permitted by law; and

8. For such and other further relief as the court may deem just and proper.

Dated: January 31, 2008

MILLER, AXLINE & SAWYER
A Professional Corporation

By:

MICHAEL AXLINE (CA SBN #229840)
Attorneys for Plaintiff
ORANGE COUNTY WATER DISTRICT

# Exhibit C

1 │ ORANGE COUNTY DISTRICT ATTORNEY
    │ Tony Rackauckas, District Attorney
2 │ Bill Feccia, Senior Assistant District Attorney
    │ Joe D'Agostino, Assistant District Attorney
3 │ Consumer and Environmental Protection Unit
    │ Aleta Bryant; Bar No. 125381, Deputy District Attorney
4 │ 401 Civic Center Drive
    │ Santa Ana, CA 92701-4575
5 │ (714) 347-8720, FAX (714) 568-1250

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

JAN 0 5 2005

ALAN SLATER, Clerk of the Court
C. Carr
BY C. CARR

6 │ Attorneys for Plaintiff
    │ THE PEOPLE OF THE STATE OF CALIFORNIA

7

8 │ SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 │ FOR THE COUNTY OF ORANGE - CENTRAL JUSTICE CENTER

10

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA | Case No. 80-40-31 |
| Plaintiff, | Reassigned for all purposes to: Judge David C. Velasquez Department CX104 |
| vs. | |
| SHELL OIL COMPANY, a Delaware corporation doing business as SHELL; TEXACO REFINING AND MARKETING, INC.; EQUIVA SERVICES LLC; and EQUILON ENTERPRISES LLC | Complaint filed 1/6/99 First Amended Complaint filed 5/9/01 |
| | [~~PROPOSED~~] FINAL JUDGMENT PURSUANT TO STIPULATION AND ORDER THEREON |
| Defendants. | |

28 │ 1049605.1

[PROPOSED] FINAL JUDGMENT PURSUANT TO
STIPULATION AND ORDER THEREON

1       This Final Judgment Pursuant to Stipulation ("Final Judgment") is made between the

2   Plaintiff, People of the State of California, by and through its attorney Tony Rackauckas, the

3   District Attorney of the County of Orange ("Plaintiff"), and defendants Shell Oil Co., Texaco

4   Refining and Marketing, Inc., Equiva Services LLC and Equilon Enterprises LLC (hereinafter

5   collectively referred to as "Settling Defendants").

6

7                       **RECITALS**

8       A.    In this action, Plaintiff filed a civil complaint ("First Amended Complaint") in the

9   Orange County Superior Court against Settling Defendants and Texaco, Inc.

10      B.    Plaintiff and Settling Defendants have agreed to settle this action on the terms set

11  forth in this Final Judgment.  Plaintiff believes that the resolution of the violations alleged in the

12  First Amended Complaint is fair and reasonable and fulfills the Plaintiff's enforcement

13  objectives, that no further action is warranted concerning the specific violations alleged in the

14  First Amended Complaint except as provided pursuant to the Final Judgment, and that this Final

15  Judgment is in the best interests of the general public.  Notwithstanding the foregoing, Plaintiff

16  may bring an action or file a motion with the Court to enforce this Final Judgment pursuant to the

17  terms and conditions hereof.

18

19                      **JURISDICTION**

20      1.0    This Court has jurisdiction of the subject matter and the parties hereto.

21

22              **SETTLEMENT OF DISPUTED CLAIMS**

23      2.0    Settling Defendants expressly deny the allegations raised by the Plaintiff in the

24  First Amended Complaint in the above-referenced matter.  This Final Judgment is not an

25  admission by Settling Defendants of any issue of law or fact in the above-captioned matter or any

26  violation of any law.  The parties enter into this Final Judgment pursuant to a compromise and

27  settlement of disputed claims set forth in the First Amended Complaint for the purpose of

28  furthering the public interest.  This Final Judgment encompasses and relates to the current and

1   former Shell and Texaco gasoline station sites located in Orange County identified in Exhibit A

2   attached hereto (hereinafter the "Released Sites").

3

4   **PLUME DELINEATION PROGRAM**

5         3.0     Settling Defendants shall implement the program described in Sections 3.0 through

6   3.10 (the "Plume Delineation Program") for a cost of up to Ten Million Five Hundred Thousand

7   Dollars ($10,500,000), of which up to One Million Five Hundred Thousand Dollars ($1,500,000)

8   shall be used, if necessary, exclusively for compensation of the CONSULTANT selected

9   pursuant to Section 3.2 below, and up to Nine Million Dollars ($9,000,000) shall be used, if

10   necessary, to carry out the other terms, obligations and conditions of the Plume Delineation

11   Program as herein described.

12         3.1     The obligations of Settling Defendants under the Plume Delineation Program

13   described in Sections 3.0 through 3.10 of this Final Judgment are separate, distinct and apart from

14   the remediation and cleanup obligations of Settling Defendants, as more fully set forth in Sections

15   4.0 through 4.2 below.

16         3.2     Plaintiff shall select an independent, impartial third party environmental consultant

17   to serve as "CONSULTANT." The CONSULTANT selected by Plaintiff pursuant to this Final

18   Judgment is England Geosystem, Inc. The CONSULTANT will be reasonably compensated by

19   Settling Defendants in an amount not to exceed One Million Five Hundred Thousand Dollars

20   ($1,500,000) for the term of this Final Judgment. This amount shall be paid by Settling

21   Defendants to the CONSULTANT upon receipt of CONSULTANT's invoices for work

22   reasonably and necessarily related to CONSULTANT's services rendered pursuant to the terms

23   of the Plume Delineation Program as described herein. The CONSULTANT shall report in

24   writing the CONSULTANT's findings and recommendations in regards to the presence of

25   petroleum hydrocarbon compounds (including: TPHG, BTEX, and the oxygenates MTBE, TBA,

26   DIPE, ETBE, and TAME) in the soil and groundwater (hereinafter: "PLUME"), and the

27   recommended assessment and delineation of the PLUME to be undertaken by Settling Defendants

28   at the current and former Shell and Texaco gas station sites identified in Exhibit B (hereinafter the

1  "Subject Sites"), pursuant to the procedure set forth in Sections 3.0 through 3.10. The Subject

2  Sites to be reviewed by the CONSULTANT as part of the Plume Delineation Program exclude

3  any gas station sites identified in Exhibit A which received from the appropriate regulatory

4  agency a contamination case closure date prior to January 1, 1991 or subsequent to December 31,

5  2000 (the "Time Exempt Sites"), as identified in Exhibit C, and exclude those former Texaco gas

6  station sites identified in Exhibit D (the "Texaco Exempt Sites"). Copies of all such written

7  reports of the CONSULTANT shall be submitted to Settling Defendants, Plaintiff, the appropriate

8  regulatory agency having jurisdiction over the Subject Site and the Santa Ana Regional Water

9  Quality Control Board.

10        3.3     (a) CONSULTANT shall determine whether the assessment and delineation of the

11  PLUME at each of the Subject Sites is consistent with the standards set forth in the Corrective

12  Action Guidelines. As used herein, the "Corrective Action Guidelines" means either: (i) the State

13  Water Resources Control Board's "Final Draft Guidelines for Investigation and Cleanup of

14  MTBE and other Ether-Based Oxygenates," dated March 27, 2000, prepared pursuant to

15  Executive Order D-5-99 and Senate Bill 989, which provide guidelines and time frames for

16  corrective action at sites impacted by releases of gasoline containing MTBE and other

17  oxygenates, as supplemented by the final version of the "Supplemental Guidance for the

18  Prioritization of Investigation and Cleanup of Underground Storage Tank Releases Containing

19  MtBE" adopted by the Santa Ana Regional Water Quality Control Board on June 1, 2001; or (ii)

20  a new or updated guidance document adopted at some future date by the State Water Resources

21  Control Board that provides guidelines and time frames for corrective action at sites impacted by

22  gasoline or petroleum releases, and any new or updated version of the "Supplemental Guidance

23  for the Prioritization of Investigation and Cleanup of Underground Storage Tank Releases

24  Containing MtBE" as adopted by the Santa Ana Regional Water Quality Control Board on June

25  1, 2001.

26        (b) Based on CONSULTANT's detailed review of the Plume Delineation Report

27  described in Section 3.4 below and the results of any additional assessment work described in

28  Section 3.6 below, CONSULTANT shall evaluate whether the assessment and delineation of the

1   PLUME at the Subject Sites is consistent with the standards of the Corrective Action Guidelines

2   and, if not, shall recommend in writing additional actions that the CONSULTANT reasonably

3   believes are necessary to meet such standards.  The CONSULTANT may recommend in writing

4   additional actions, including, but not limited to, the following tasks, where reasonably necessary

5   to make the assessment and delineation of the PLUME at the Subject Sites consistent with the

6   Corrective Action Guidelines:

7           A.     The drilling and installation of new wells and/or borings to further

8           analyze and delineate the PLUME at the Subject Sites pursuant to Sections 3.4 to

9           3.7, which may potentially include delineation in both the lateral and vertical

10          direction that approximates the 5 ppb MTBE contour line in groundwater, if

11          reasonably necessary to make the assessment and delineation of the PLUME at the

12          Subject Sites consistent with the Corrective Action Guidelines;

13          B.     The additional collection of soil samples at the Subject Sites, and

14          the additional collection of groundwater samples on a quarterly basis, and testing

15          data as needed, from existing and any newly installed wells at the Subject Sites;

16          C.     The additional analysis of soil and groundwater samples for the

17          presence of petroleum hydrocarbon compounds, including but not limited to:

18          TPHG, BTEX, and the oxygenates MTBE, TBA, DIPE, ETBE, TAME, and other

19          gasoline derived compounds;

20    (c) The CONSULTANT shall submit written reports to Settling Defendants, a copy of

21  which shall also be submitted to the appropriate regulatory agency having jurisdiction over the

22  Subject Site, the Santa Ana Regional Water Quality Control Board and to the Plaintiff, which

23  shall include the findings and recommendations of the CONSULTANT concerning the

24  assessment and delineation of the PLUME at the Subject Sites which, in the opinion of the

25  CONSULTANT, is reasonably necessary to make the assessment and delineation of the PLUME

26  at the Subject Sites consistent with the Corrective Action Guidelines.

27    (d) Subject to Section 3.3(e) below, Settling Defendants shall perform all assessment and

28  delineation of the PLUME that are reasonably necessary to make the assessment and delineation

1049605.1               -4-       [PROPOSED] FINAL JUDGMENT PURSUANT TO
STIPULATION AND ORDER THEREON

1    of the PLUME at the Subject Sites consistent with the Corrective Action Guidelines, as

2    recommended in writing by the CONSULTANT, in accordance with: (i) a time table consistent

3    with the Corrective Action Guidelines; and (ii) cleanup levels for petroleum hydrocarbons,

4    BTEX, and the oxygenates MTBE, TBA, DIPE, ETBE, TAME, or other gasoline-derived

5    compounds, determined pursuant to a corrective action procedure or guidance document adopted

6    or approved by the State Water Resources Control Board, Santa Ana Regional Water Quality

7    Control Board, federal Environmental Protection Agency, or ASTM.  To the extent that the

8    CONSULTANT's written reports may contain comments or suggestions regarding the

9    appropriateness or adequacy of remediation or cleanup techniques at the Subject Sites, such

10   comments or suggestions are advisory only, and need not be implemented by Settling Defendants,

11   unless otherwise required by applicable law.

12          (e) In the event of a reasonable and bona fide dispute presented by any of the parties to

13   this Final Judgment as to any written recommendations by the CONSULTANT related to

14   assessment and delineation of the PLUME at any of the Subject Sites, including any time table

15   consistent with the Corrective Action Guidelines and/or cleanup levels determined pursuant to the

16   procedure set forth above, the dispute shall be resolved pursuant to the dispute resolution

17   procedures of Section 8.0.  Notwithstanding anything to the contrary in this Final Judgment, if the

18   regulatory agency with jurisdiction over a Subject Site refuses to approve any work recommended

19   by the CONSULTANT, Settling Defendants shall have no obligation under this Final Judgment

20   to conduct such unapproved work.

21          (f) Settling Defendants' obligations under the Plume Delineation Program shall require

22   delineation and assessment with regard to any and all PLUMES at the Subject Sites for which

23   Settling Defendants are a responsible party, whether heretofore known or unknown, discovered or

24   undiscovered, determined to exist during the course of implementation of and compliance with

25   the Plume Delineation Program as set forth in Sections 3.0 through 3.10 herein.

26          3.4     Settling Defendants will prepare a comprehensive report providing a detailed

27   description of the extent of assessment and delineation of the PLUME at each of the Subject Sites

28   (the "Plume Delineation Report").  The Plume Delineation Report will be prepared by Settling

1   Defendants' employees or consultants, with appropriate California certifications, who are retained

2   by Settling Defendants, and will be based on: (i) a thorough review of relevant prior assessments

3   of the Subject Sites; (ii) any additional assessment and investigation work that may be conducted

4   by Settling Defendants at their election, with the concurrence of the relevant regulatory agencies,

5   to further refine the data available to delineate the PLUME; and (iii) other relevant data identified

6   by Settling Defendants' employees or consultants.  All underlying reports and analytical data on

7   which the conclusions in the Plume Delineation Report are based will be made available to the

8   CONSULTANT upon request.  Settling Defendants will submit the Plume Delineation Report to

9   the CONSULTANT no later than 180 days after the entry of this Final Judgment.  At the time of

10  submission of the Plume Delineation Report, and on an ongoing basis thereafter, Settling

11  Defendants shall also provide to the CONSULTANT copies of all written and/or electronically-

12  transmitted (e.g., e-mail) correspondence between the Settling Defendants, their employees

13  and/or consultants, on the one hand, and the relevant regulatory agencies, on the other hand,

14  related to each of the Subject Sites.  The CONSULTANT shall likewise provide to Settling

15  Defendants on an ongoing basis copies of all written and/or electronically-transmitted (e.g., e-

16  mail) correspondence between CONSULTANT, on the one hand, and either the relevant

17  regulatory agencies or Plaintiff, on the other hand, related to each of the Subject Sites.

18         3.5    The CONSULTANT will conduct a detailed review of the Plume Delineation

19  Report prepared by the employees or consultants retained by the Settling Defendants and any

20  other data the CONSULTANT deems relevant, and will recommend or request in writing further

21  analysis, testing or assessment the CONSULTANT reasonably believes is appropriate in order to

22  determine if the assessment and delineation of the PLUME at each of the Subject Sites is

23  consistent with the Corrective Action Guidelines.  This review and determination will be based on

24  appropriate scientific and technical reasoning and knowledge of regulatory objectives.

25  Ultimately, the discretion for making this determination shall be in the hands of the

26  CONSULTANT subject to the approval of the Court, provided that if Settling Defendants object,

27  then any disputes will be resolved pursuant to the dispute resolution procedures of Section 8.0.

28

3.6     Subject to the provisions of Section 3.7 below, if the CONSULTANT recommends in writing additional assessment and delineation work at a Subject Site that is consistent with the Corrective Action Guidelines, and the regulatory agency with jurisdiction over the Subject Site approves such additional work, Settling Defendants will conduct such work under the supervision of the relevant regulatory agency within a time limit determined to be reasonable by the CONSULTANT.  If either party disagrees with the time limit determined by the CONSULTANT, the dispute shall be resolved pursuant to the dispute resolution procedures of Section 8.0.  Settling Defendants will submit to CONSULTANT and Plaintiff copies of all reports that are prepared in connection with completing such additional work.

3.7     Notwithstanding the foregoing, if Settling Defendants conclude that the additional work recommended in writing by the CONSULTANT is not reasonably necessary to assess and delineate the PLUME in a manner consistent with the Corrective Action Guidelines, the dispute will be resolved pursuant to the dispute resolution procedures of Section 8.0.

3.8     As necessary, face-to-face meetings between the CONSULTANT and Settling Defendants' employees and/or consultants may be scheduled to discuss issues raised by the Plume Delineation Report or a written recommendation by CONSULTANT.  Settling Defendants shall provide Plaintiff with seventy-two (72) hours advance written (e.g., e-mail) notice of any such face-to-face meeting scheduled by Settling Defendants, so that a representative or designee of Plaintiff can participate or attend.  Settling Defendants and CONSULTANT shall also provide to Plaintiff copies of any substantive written and/or electronically-transmitted (e.g., e-mail) correspondence or communications between Settling Defendants, their employees and/or consultants, on the one hand, and the CONSULTANT, on the other hand, related to this Plume Delineation Program.  Similarly, Plaintiff shall provide Settling Defendants with seventy-two (72) hours advance written (e.g., e-mail) notice of any face-to-face meetings between CONSULTANT and Plaintiff's employees and/or representatives to discuss issues relating to the Plume Delineation Program so that a representative or designee of the Settling Defendants can participate or attend.  Plaintiff and CONSULTANT shall also provide to Settling Defendants copies of any substantive written and/or electronically-transmitted (e.g., e-mail) correspondence

1   or communications between Plaintiff, its employees and/or representatives, on the one hand, and

2   the CONSULTANT, on the other hand, related to the Plume Delineation Program.  Settling

3   Defendants shall provide or make arrangements for access to the Subject Sites or to off-site

4   locations for the CONSULTANT and the regulatory agency with jurisdiction over each site,

5   provided that Settling Defendants have such access or such access can be obtained on

6   commercially reasonable terms, for the purpose of observing site conditions or observing

7   investigation, assessment or delineation activities taking place on such Subject Site.  The

8   CONSULTANT (and any other designee or representative of Plaintiff) will comply with Settling

9   Defendants' health and safety requirements when observing the Subject Sites or such off-site

10  locations.

11         3.9       Settling Defendants shall maintain an accounting of all expenditures that Settling

12  Defendants incur pursuant to this Plume Delineation Program.  Settling Defendants shall provide

13  Plaintiff with semi-annual statements of such expenditures, including costs incurred by Settling

14  Defendants: (i) for preparation of the Plume Delineation Report by their employees and/or

15  consultants; (ii) to compensate CONSULTANT; (iii) to review the CONSULTANT's written

16  recommendations and to attend meetings or communicate with CONSULTANT regarding such

17  recommendations; (iv) to assist CONSULTANT, including by providing information requested

18  by CONSULTANT, responding to CONSULTANT's requests, accompanying CONSULTANT

19  on site visits, and the like; and (v) to perform tasks of the sort that would reasonably be

20  undertaken by third party environmental consultants in order to respond to the CONSULTANT's

21  written recommendations for further assessment and delineation of the PLUME to be undertaken

22  by Settling Defendants at the Subject Sites pursuant to this Final Judgment, including without

23  limitation preparing work plans, implementing such work plans, and preparing any necessary

24  reports.  Any costs incurred by Settling Defendants prior to the effective date of this Final

25  Judgment shall not be deemed to be expenditures incurred pursuant to this Plume Delineation

26  Program.  Any future costs incurred by Settling Defendants in carrying out regulatory agency-

27  directed remediation and cleanup of petroleum hydrocarbon compound contamination at the

28  Subject Sites shall not be included in calculating the expenditures incurred by Settling Defendants

1   pursuant to implementing the Plume Delineation Program.   Similarly, any costs necessarily

2   incurred by Settling Defendants to maintain the Subject Sites in routine compliance with statutory

3   and regulatory requirements related to the ownership or operation of underground gasoline

4   storage tank systems ("USTs") and/or the investigation and cleanup of UST releases shall also not

5   be included in calculating expenditures incurred under the Plume Delineation Program.   If the

6   parties have a bona fide dispute regarding whether any of the costs reported in the Settling

7   Defendants' statement of expenditures were incurred pursuant to the Plume Delineation Program,

8   the dispute shall be resolved pursuant to the dispute resolution procedures of Section 8.0 or, if

9   both parties so elect, pursuant to the auditing procedure described in Section 3.10 below.

10   Attorneys' fees and costs incurred by Settling Defendants, and costs associated with preparing for

11   and participating in mediations pursuant to Section 8.0 or the auditing procedure described in

12   Section 3.10, shall not be deemed to be expenditures incurred pursuant to this Plume Delineation

13   Program.  Records of the accounting of claimed Plume Delineation Program expenditures,

14   including invoices, work orders or other documentation evidencing these expenditures, shall be

15   maintained by Settling Defendants and shall be subject to review by Plaintiff on an annual basis.

16   These records shall remain available for review by Plaintiff for a period of 12 months after the

17   termination of Settling Defendants' obligation under the Plume Delineation Program.  These

18   records shall also be made available by Settling Defendants for use in any mediation or auditing

19   procedure related to Plume Delineation Program costs.  Nothing in this Final Judgment shall be

20   construed to preclude Settling Defendants from seeking reimbursement for any funds expended

21   under the Plume Delineation Program from any State or Federal clean-up fund, including, but not

22   limited to, the Underground Storage Tank Cleanup Fund created pursuant to California Health &

23   Safety Code §§ 25299.50, et seq., and the implementing regulations in 23 C.C.R. §§ 2810, et seq.

24        3.10     Notwithstanding anything to the contrary herein, Settling Defendants' obligations

25   under the Plume Delineation Program shall terminate the earlier of:  (a) when CONSULTANT

26   determines it has completed its  tasks under the Plume Delineation Program, (b) five years after

27   the date of entry of this Final Judgment, or (c) the date Settling Defendants have incurred costs of

28   Ten Million Five Hundred Thousand Dollars ($10,500,000) in the implementation of the Plume

1    Delineation Program, as demonstrated pursuant to Section 3.9.  If the parties have a bona fide

2    dispute regarding whether Settling Defendants have incurred costs of Ten Million Five Hundred

3    Thousand Dollars ($10,500,000) in implementation of the Plume Delineation Program, the

4    dispute shall be resolved pursuant to the dispute resolution procedures of Section 8.0.  Prior to or

5    instead of initiating the dispute resolution procedures of Section 8.0, the parties may jointly elect

6    to submit for review by an independent auditor the matter of determining whether costs reported

7    in the Settling Defendants' statement of expenditures were incurred pursuant to the Plume

8    Delineation Program or whether Settling Defendants have incurred costs totaling Ten Million

9    Five Hundred Thousand Dollars ($10,500,000) in implementation of the Plume Delineation

10   Program.  The costs of any such audit shall be borne by Settling Defendants.   If agreed upon by

11   the parties, the CONSULTANT may perform the functions of the auditor.  The costs associated

12   with any such audit, including Settling Defendants' administrative costs of participating in the

13   audit and the cost of having the CONSULTANT perform any such auditing functions, shall not

14   be included or considered as an expenditure by Settling Defendants under the Plume Delineation

15   Program.

16

17                                  **CLEAN-UP**

18         4.0      Aside from their obligations pursuant to the Plume Delineation Program, Settling

19   Defendants shall comply with all legal obligations they have pursuant to the statutory and

20   regulatory requirements of the Barry Keene Underground Storage Tank Cleanup Trust Fund Act

21   of 1989, as codified in Chapter 6.75 of Division 20 of the Health and Safety Code, and the

22   corrective action requirements set forth in Title 23 of the California Code of Regulations,

23   Division 3, Chapter 16, Article 11, sections 2720 through 2727, to commence and complete all

24   appropriate corrective and/or remedial action to clean up any petroleum hydrocarbon compound

25   contamination, or other contamination, to soil and/or groundwater, whether on or off the Subject

26   Sites, that is determined to have been caused (or contributed to), in whole or in part, by the

27   unauthorized release or releases of product from underground storage tank systems owned or

28   operated by Settling Defendants or for which Settling Defendants are otherwise a  responsible

1  party. This Final Judgment shall not diminish any statutory or legal obligations Settling

2  Defendants have.

3      4.1    Settling Defendants shall comply with all legal obligations they have to take

4  reasonable and appropriate interim corrective and/or remedial actions at the Subject Sites, as may

5  be deemed necessary by the regulatory agencies having jurisdiction over cleanup at the Subject

6  Sites, notwithstanding any ongoing assessment or delineation activities of Settling Defendants at

7  the Subject Sites pursuant to the Plume Delineation Program.

8      4.2    The amount of money required to be spent by Settling Defendants in carrying out

9  their cleanup obligations at the Subject Sites under Sections 4.0 and 4.1 above is in no way

10  limited by any of the provisions or agreements contained in this Final Judgment. The amount of

11  money required to be spent by Settling Defendants in carrying out their cleanup obligations at the

12  Subject Sites under Sections 4.0 and 4.1 above is separate and apart from, and in addition to, any

13  payments that Settling Defendants are obligated to make for the implementation of and

14  compliance with the Plume Delineation Program set forth in Sections 3.0 through 3.10 above, for

15  UST Program Payments under Section 6 below, or for payment into the PROSECUTION TRUST

16  FUND under Sections 7.0 through 7.4 below.

17  

18                                  **INJUNCTIVE RELIEF**

19      5.0    Pursuant to the provisions of Health and Safety Code Section 25299.01, Business

20  and Professions Code Section 17203, and the Court's equitable powers, Settling Defendants shall

21  take the following actions:

22      5.1    Settling Defendants shall accept and comply with the written findings and

23  recommendations of the CONSULTANT for further assessment and delineation of the PLUME at

24  the Subject Sites pursuant to the terms and conditions of the Plume Delineation Program

25  (including without limitation the termination of Settling Defendants' obligations under the Plume

26  Delineation Program pursuant to Section 3.10 above) that are reasonably necessary to make the

27  assessment and delineation at the Subject Sites consistent with the Corrective Action Guidelines;

28  in the event, however, that Settling Defendants present a reasonable and bona fide dispute as to

1    any of the written findings or recommendations of the CONSULTANT, the dispute will be

2    resolved pursuant to the dispute resolution procedures of Section 8.0.

3        5.2    Settling Defendants shall be required to work promptly with the appropriate

4    regulatory agencies to rectify any and all existing violations of the regulatory compliance

5    requirements found in Chapter 6.7 of Division 20 of the Health and Safety Code and Title 23 of

6    the California Code of Regulations, Division 3, Chapter 16 as indicated by said agencies.

7        5.3    Effective upon entry of this Final Judgment, Settling Defendants, and each of their

8    subsidiaries, corporate parents and Affiliates, and all successors and assigns of the Settling

9    Defendants, are hereby permanently enjoined and restrained under California Health and Safety

10   Code Sections 25299.01 and 25299.04, in the County of Orange, from violating the following

11   requirements regulating underground storage tanks:

12            (1)  Engaging in any acts or practices which violate the corrective action

13   requirements of the Barry Keene Underground Storage Tank Cleanup Trust Fund Act of 1989, as

14   codified in Chapter 6.75 of Division 20 of the Health and Safety Code, and the corrective action

15   requirements set forth in Title 23 of the California Code of Regulations, Division 3, Chapter 16,

16   Article 11, sections 2720 through 2727;

17            (2)  Failing to implement, comply with or respond to, within the time

18   required by law, any request, directive or demand issued to Settling Defendants by the Orange

19   County Health Care Agency, or by any other agency, board, department or entity charged by law

20   with the implementation or enforcement of such laws, regarding the ownership, operation,

21   installation, maintenance, upgrade, repair, permitting, closure, investigation, monitoring or testing

22   of any underground storage tank or related underground storage tank system owned or operated

23   by Settling Defendants, or for which Settling Defendants are otherwise a responsible party, or any

24   recording, reporting or abatement activities related to any such underground storage tanks or

25   underground storage tank systems, in each case to the extent required by applicable law.

26       5.4    The provisions in this Final Judgment, including this Section 5, shall be

27   enforceable only by the parties hereto and only in accordance with the procedure set forth in this

28   Section 5.4.  If Plaintiff reasonably believes that Settling Defendants are deficient in the

1   performance of the requirements in this Final Judgment, Plaintiff shall send Settling Defendants a

2   notice of deficiency pursuant to Section 9.2 below.  If Plaintiff sends Settling Defendants such a

3   notice of deficiency, Plaintiff and Settling Defendants shall meet and confer in good faith in an

4   effort to resolve any alleged violation of this Final Judgment.  If the parties cannot reach a

5   resolution, the parties agree to submit the dispute to Judge Daniel Weinstein for resolution.  The

6   costs of said mediator in connection with the resolution of said matter shall be borne by Settling

7   Defendants; provided, however, that after the parties have mediated three separate disputes

8   hereunder, the mediator can allocate the costs of mediation to Plaintiff if the mediator determines

9   that such an allocation is equitable considering the reasonableness or unreasonableness of the

10  Plaintiff's position on the matter that was the subject of the dispute pursuant to the dispute

11  resolution procedures of Section 8.0.  If, after this dispute resolution procedure, the dispute

12  remains and Plaintiff reasonably believes that Settling Defendants are still deficient in the

13  performance of the requirements in this Final Judgment, and if Settling Defendants have failed to

14  commence to cure such deficiency within sixty days after the Plaintiff has notified Settling

15  Defendants in writing of this alleged deficiency pursuant to Section 9.2 below, Plaintiff may

16  pursue any and all remedies Plaintiff may have against Settling Defendants at law or in equity to

17  enforce this Final Judgment, including but not limited to filing a motion with the Court to compel

18  Settling Defendants to comply with the terms and conditions of this injunction.  In such an event,

19  Settling Defendants reserve and retain all rights and defenses to oppose such a motion or other

20  action by Plaintiff (on grounds other than a challenge based on the efficacy or enforceability of

21  this Final Judgment), including the right to contest that Settling Defendants are in violation of this

22  injunction.  The Court shall determine after such proceedings whether the Settling Defendants are

23  in violation of this Final Judgment and shall have the power to impose whatever remedies are

24  appropriate and authorized under the law in light of the Court's determination.

25      5.5     Notwithstanding the provisions of Section 5.4 herein, Settling Defendants shall not

26  be considered deficient in the performance of the requirements as set forth in Sections 5.2 and

27  5.3(2) above for a period of six (6) months following entry of this Final Judgment, during which

28  time Settling Defendants shall be engaged in the process of creating and/or implementing a

1   database for their active Orange County service station sites to be used by them to identify, track

2   and comply with the statutory and regulatory requirements found in Chapter 6.7 of Division 20 of

3   the Health and Safety Code and Title 23 of the California Code of Regulations, Division 3,

4   Chapter 16, related to the ownership, operation, installation, maintenance, upgrade, repair,

5   permitting, closure, investigation, monitoring or testing of any underground storage tank or

6   related underground storage tank system owned or operated by Settling Defendants, or for which

7   Settling Defendants are otherwise a responsible party, or any recording, reporting or abatement

8   activities related to any such underground storage tanks or underground storage tank systems.

9        5.6    To further assist Settling Defendants in their efforts to comply with the statutory

10   and regulatory UST compliance requirements, and Settling Defendants' efforts in implementing

11   the above-described database, Settling Defendants have asked Plaintiff to communicate to the

12   relevant regulatory agencies in Orange County Settling Defendants' desire to receive notification

13   of any UST compliance-related issues at a centralized location as specified by Settling

14   Defendants, as well as a proposed procedure for accomplishing this request.  Plaintiff's

15   communication to the regulatory agencies in this regard is summarized in the Statement Re

16   Regulatory Agency Notification of Compliance-Related Issues attached hereto as Exhibit E.

17        5.7    Notwithstanding anything to the contrary herein, it will not be a breach of Settling

18   Defendants' obligations under this Final Judgment if Settling Defendants are unable to perform

19   (including, without limitation, by meeting a time limit set by the CONSULTANT hereunder) due

20   to a force majeure event, such as a physical condition of the site that makes work materially more

21   difficult than anticipated or makes it impossible to proceed with the planned work, inability to

22   obtain required surface entry rights and access upon commercially reasonable terms necessary for

23   the conduct of work, or inability to obtain reasonable governmental permits or approval of work.

24   Settling Defendants must use reasonable efforts to anticipate, and avoid delay that may be caused

25   by, a force majeure event.

26        5.8    Settling Defendants' obligations hereunder shall terminate five years after the date

27   of entry of this Final Judgment.

28

---

## UST PROGRAM PAYMENTS

6.0    Settling Defendants shall make payments totaling Five Hundred Thousand Dollars ($500,000) to the regulatory agencies for investigation and enforcement in this matter.  Within fourteen business days after the entry of this Final Judgment, Settling Defendants will make said payments as follows:

A.    Three Hundred Thousand Dollars ($300,000) to the Orange County Health Care Agency to be used for the implementation and enforcement of the UST Program for items including, but not limited to, program enhancements, educational materials, training, compliance investigations, and program equipment.  Said payment shall be made in the form of a check made payable to the **County of Orange/Auditor-Controller**; and

B.    A total of Two Hundred Thousand Dollars ($200,000) for costs of investigation and enforcement to the City of Anaheim Fire Department, the City of Fullerton Fire Department, the City of Orange Fire Department and the City of Santa Ana Fire Department.  Said payments shall be made in the form of four separate checks, each in the amount of Fifty Thousand Dollars ($50,000), made payable to **The City of Anaheim; The City of Fullerton Fire Department; The City of Orange Fire Department [Reference: Hazardous Materials Program Account No. 100-3012-277501]; and The City of Santa Ana**, respectively.

## PROSECUTION TRUST FUND

7.0    Within fourteen business days after the entry of this Final Judgment, Settling Defendants will make a payment of Three Million Five Hundred Thousand Dollars ($3,500,000) to the Orange County District Attorney's "Consumer and Environmental Protection/ Economic Crimes Prosecution Trust Fund [2AH]" (hereinafter the "PROSECUTION TRUST FUND").

1  Said payment shall be in the form of a check made payable to the **Orange County District**

2  **Attorney's Consumer and Environmental Protection/ Economic Crimes Prosecution Trust**

3  **Fund [2AH]**.

4        7.1     Settling Defendants shall mail or deliver the payment set forth in Section 7.0 to

5  the following address:

      Orange County District Attorney's Office

6        Consumer and Environmental Protection Unit

7        401 Civic Center Drive, 5th Floor
      Santa Ana, California  92701

8        Attention: Joe D'Agostino, Assistant District Attorney

9        7.2     The monies placed in the PROSECUTION TRUST FUND hereunder shall be held

10  in trust solely and exclusively for the purpose of enhancing the investigation and prosecution of

11  criminal and civil actions brought by the Orange County District Attorney's Office. "Criminal

12  and civil actions" shall include any investigation or prosecution of environmental protection,

13  consumer protection, fraud or economic crimes or civil enforcement actions, including, but not

14  limited to, violations of Chapters 6.7 and 6.75 of Division 20 of the California Health and Safety

15  Code, violations of Title 23 of the California Code of Regulations, Division 3, Chapter 16, and

16  violations of California Business and Professions Code section 17200.

17        7.3     The types and natures of expenditures that may be made from the PROSECUTION

18  TRUST FUND include, but are not limited to, the following:

19                          5145

20        A.     Providing funds for attorney positions, investigative

21        positions and support staff positions;

22

23        B.     Purchasing equipment for use by attorneys, investigators, and

24        support staff, including but not limited to computers, software, optical

25        scanners, copying machines, books, reference materials, furniture, supplies,

26        photographic equipment, audio and video equipment, surveillance

27        equipment, printers, and any and all other equipment or materials intended

28        to facilitate the investigation and/or litigation of criminal and civil cases;

1

2      C.      Establishing and maintaining a computerized database and modems;

3

4      D.      Providing funds for consultants, experts, litigation expenses,

5      and evidence testing;

6

7      E.      Providing funds for undercover operations and investigative

8      expenses;

9

10     F.      Providing funds for training and necessary travel for

11     attorneys, investigators, and support staff;

12

13     G.      Providing funds for training for members of law

14     enforcement and regulatory agencies in Orange County;

15

16     H.      Providing funds for equipment used for the purpose of

17     collecting, storing, and testing evidentiary materials;

18

19     I.      Providing funds to establish, implement, and maintain task

20     forces to deal with environmental protection, fraud, consumer

21     protection, economic crimes and other criminal or civil enforcement

22     issues, including, but not limited to, regulatory compliance and

23     cleanup requirements related to underground gasoline storage tank

24     systems;

25

26     J.      Providing funds for research studies and statistical analyses;

27     and

28

K. Providing funds for the publication and distribution of written and audio/video materials to be used for recruitment purposes or other purposes by attorneys, investigators, and support staff.

7.4 The Prosecution Trust Fund shall be administered by three trustees consisting of the Chief Assistant District Attorney, the Senior Assistant District Attorney in charge of Felony Operations 2, and the Chief Investigator, Bureau of Investigation, Orange County District Attorney's Office, or their delegates.

## DISPUTE RESOLUTION

8.0 Except as otherwise expressly stated herein, in the event of a reasonable and bona fide dispute presented by any of the parties to this Final Judgment, the parties agree that the dispute will be mediated by Judge Daniel Weinstein.  The costs of said mediator in connection with the resolution of said dispute shall be borne by Settling Defendants; provided, however, that after the parties have mediated three separate disputes hereunder, the mediator can allocate the costs of mediation to Plaintiff if the mediator determines that such an allocation is equitable considering the reasonableness or unreasonableness of the Plaintiff's (or CONSULTANT's) position on the matter that was the subject of the dispute.  If the parties cannot reach resolution through the mediator, the dispute shall be submitted by noticed motion to the Honorable David C. Velasquez or his Court-appointed judicial successor for resolution.  Jurisdiction is retained over the parties to enforce this Final Judgment until performance in full of the terms of the Final Judgment, pursuant to California Code of Civil Procedure section 664.6.

## MATTERS COVERED BY THIS FINAL JUDGMENT

9.0 Except for the retained jurisdiction of the Court as set forth in Section 9.3 below, this Final Judgment is a final and binding judgment, release, resolution and settlement of all

claims, violations, or causes of action that were alleged in the First Amended Complaint against Settling Defendants, or could have been asserted based on the facts alleged in the First Amended Complaint, including all claims, violations, or causes of action in regards to the sites listed on Exhibit A.  This Final Judgment and the releases contained herein shall be final and binding against and shall inure to the benefit of each of the Settling Defendants and each of their subsidiaries, corporate parents, Affiliates, successors, heirs, assigns, and their respective officers, directors, partners, shareholders, members, employees, representatives, agents, dealers, franchisees, facility owners and facility operators of the sites listed on Exhibit A with the exception of Texaco, Inc. ("Covered Defendant Parties") as to all sites listed on Exhibit A.

This Final Judgment is subject to, and expressly conditioned upon, the following exceptions and limitations: (a) this Final Judgment shall not operate as a release, dismissal or retraxit as to any party not specifically identified as one of the Covered Defendant Parties; (b) Plaintiff's causes of action against Defendant Texaco, Inc., as set forth in the First Amended Complaint, shall not be affected by this Final Judgment, and are hereby expressly preserved; (c) Plaintiff does not dismiss, release, discharge or diminish any of its claims and actions against Defendant Texaco, Inc.; and (d) this Final Judgment shall not operate as a release, dismissal or retraxit with respect to any of Settling Defendants' obligations arising under this Final Judgment, including, but not limited to, Settling Defendants' obligations for the implementation of and compliance with the Plume Delineation Program set forth in Sections 3.0 through 3.10 above, payment of UST Program Payments under Section 6 above, payment into the PROSECUTION TRUST FUND under Sections 7.0 through 7.4 above, and injunctive relief as set forth in Sections 5.0 through 5.8 above.

The release set forth in this Section 9.0 shall become effective upon Settling Defendants' full payment of the amounts specified in Section 3.0, Section 6, and Section 7.0 above by the

deadline specified in those sections; provided, however, that Plaintiff shall retain the right to enforce Settling Defendants' full compliance with all the provisions of this Final Judgment pursuant to Section 9.3 below.

As used herein, "Affiliate" means a person or entity that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, the person or entity specified.

9.1     This Final Judgment also constitutes a release from any known or unknown, past or present claims, violations, or causes of action that were or could have been asserted in the First Amended Complaint by Plaintiff against the Covered Defendant Parties with regard to: any and all existing or potential demands, causes of action, equitable or legal claims, obligations, damages, losses, fines, penalties and liabilities related to underground storage tank systems, the unauthorized release of petroleum product, or additive or constituent of such petroleum product (including but not limited to TPH, BTEX, MTBE and other fuel oxygenates), the use of MTBE and/or other fuel oxygenates in gasoline, or any alleged failure to assess, remediate, or otherwise take corrective action in response to any such unauthorized release, whether asserted or unasserted, or known or unknown, arising out of or connected with any act, cause, matter, or thing stated, claimed, alleged, or that could have been alleged in any pleading, records, or other papers filed in this lawsuit or that may be based upon, related to or connected with any of the matters referred to in any such pleadings, records, or other papers.  This Final Judgment does not release any claims, violations, or causes of action against Defendant Texaco, Inc.

The release in this Section 9.1 is subject to all the exceptions and limitations set forth in Section 9.0 above, and to all the other provisions contained in this Final Judgment setting out Settling Defendants' obligations hereunder, including, but not limited to Sections 3.0 through

3.10, 4.0 through 4.2, and 5.0 through 5.6 above.  The release in this Section 9.1 does not include future violations relating to the facilities listed in Exhibit A.


### NOTICE

9.2     All submissions and notices required by this Final Judgment shall be sent to:

For Plaintiff:

Tony Rackaukas, Esq.
District Attorney
Orange County District Attorney's Office
Consumer and Environmental Protection Unit
401 Civic Center Drive
Santa Ana, CA 92701-4575
Attention:  Joe D'Agostino, Assistant District Attorney

and copies of all submissions and notices hereunder to:

Mark P. Robinson, Jr., Esq.
Robinson, Calcagnie & Robinson
620 Newport Center Drive, 7th Floor
Newport Beach, CA 92660


For Settling Defendants:

Cynthia W. Brooks, Esq.
Shell Oil Company
910 Louisiana
One Shell Plaza, Room 4824
Houston, TX  77002

and copies of all submissions and notices hereunder to:

William D. Temko, Esq.
Munger, Tolles & Olson LLP
355 South Grand Avenue, Suite 3500
Los Angeles, CA  90071

1    Any party may change the address for purpose of notices to that party by a notice

2  specifying a new address, but no such change is effective until it is actually received by the party

3  sought to be charged with its contents.  All notices and other communications required or

4  permitted under this Final Judgment which are addressed as provided in this Section 9.2 are

5  effective upon receipt by Plaintiff or Settling Defendants.

6

7                              **JURISDICTION RETAINED**

8    9.3    Jurisdiction is retained for the purpose of enabling any party to this Final Judgment

9  to apply to the Court at any time for such further orders and directions as may be deemed

10  necessary to enforce this Final Judgment, pursuant to California Code of Civil Procedure section

11  664.6.

12    9.4    This Final Judgment will go into effect immediately upon entry hereto.  Entry is

13  authorized immediately upon filing.

14    9.5    This Final Judgment may be executed by the parties in counterpart, and when a

15  copy is signed by an authorized representative of each party, the stipulation shall be effective as if

16  a single document were signed by all parties.

17    9.6    In entering into this Final Judgment, the parties understand that the Plaintiff does

18  not intend for this Final Judgment to serve to legally bar, estop, release, alter, or supersede any

19  investigation, action, order, request, demand or directive of any regulatory agency, person or

20  entity having jurisdiction over the underground storage tank systems at any of the Released Sites

21  or the groundwater or production wells within the County of Orange, including any investigation,

22  action, order, request, demand or directive of the Orange County Health Care Agency, the

23  applicable Regional Water Quality Control Board, the State Water Resources Control Board or

24  the Orange County Water District pursuant to any of the laws and regulations pertaining to

25  underground storage tanks or water.  Plaintiff does not include, and the Orange County District

26  Attorney does not represent, any water district or other municipality; the Orange County Health

27  Care Agency; the Santa Ana Regional Water Quality Control Board; the State Water Resources

28  Control Board; any city; any public or private well owner; or any other individual, regulatory

agency, corporation or other entity with an interest in or pertaining to groundwater or production wells located within the County of Orange.  This Final Judgment shall not alter or affect the obligations of Settling Defendants to comply with all laws and regulations pertaining to underground storage tanks, including, but not limited to (in each case to the extent applicable): Health and Safety Code, Chapters 6.7 and 6.75; Water Code sections 13285 and 13350; Fish and Game Code sections 5650 and 5650.1; California Code of Regulations, Title 23, Division 3, Chapter 16; the underground storage tank regulations; and any other applicable laws, statutes, and regulations, and any directive or order of a regulatory agency pursuant to such laws, statutes and regulations.

     9.7    The provisions of this Final Judgment shall be construed as though all parties engaged in drafting this Final Judgment.

     9.8    This Final Judgment supersedes all previous negotiations and agreements and constitutes the entire Final Judgment between or among the parties, and no oral statement or prior written material not specifically incorporated herein shall be of any force or effect.

Dated:  January  _5_, 2005

OFFICE OF THE ORANGE COUNTY DISTRICT ATTORNEY

By _Tony Rackauckas_

Tony Rackauckas
Attorney for Plaintiff The People of the State of California

Dated: December 10, 2004

SHELL OIL COMPANY
By Shell Oil Products Company LLC,
its authorized agent


By _David A. Sexton_
David A. Sexton
Vice President

Dated: December 10, 2004

TEXACO REFINING AND MARKETING, INC.,
now known as TMR COMPANY


By _David A. Sexton_
David A. Sexton
Vice President

Dated: December 10, 2004

EQUILON ENTERPRISES LLC,
d/b/a Shell Oil Products US


By _David A. Sexton_
David A. Sexton
Vice President – Strategy & Portfolio

Dated: December 10, 2004

EQUIVA SERVICES LLC, predecessor in interest to
EQUILON ENTERPRISES LLC, d/b/a Shell Oil
Products US


By _David A. Sexton_
David A. Sexton
Vice President – Strategy & Portfolio

Dated: December 14, 2004

Approved as to Form:
MUNGER, TOLLES & OLSON LLP


By _William D. Temko_
William D. Temko
Attorneys for Settling Defendants

1049605.1                                    -24-              [PROPOSED] FINAL JUDGMENT PURSUANT TO
                                                              STIPULATION AND ORDER THEREON

1

## ORDER

It appearing to the Court that the Plaintiff and Settling Defendants have stipulated and consented to the entry of this Final Judgment, and the Court having considered the matter, the pleadings, and this stipulation, and **GOOD CAUSE APPEARING THEREFOR, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT JUDGMENT BE ENTERED ACCORDINGLY.  IT IS SO ORDERED.**

**DAVID C. VELASQUEZ**

Dated:   _1 - 5 - 05_

_____
The Honorable David C. Velasquez
Judge of the Superior Court

# Exhibit D

Orange County DA Office

 

# DISTRICT ATTORNEY
### Office of the
### Tony Rackauckas, Orange County DA

## SHELL OIL COMPANY AGREES TO PAY ORANGE COUNTY UP TO $14.5 MILLION PLUS A "BLANK CHECK" FOR CLEAN UP OF MORE THAN 170 CONTAMINATED SITES

THE PEOPLE OF ORANGE C

Posted Date: 10/14/2005 9:18:49 AM



# Orange County District Attorney
## *Press Release*

Tony Rackauckas, District Attorney

401 Civic Center Drive West

Santa Ana, CA 92701

| **For Immediate Release** | **Contact:** | Mark Macaulay |
| --- | --- | --- |
| January 6th, 2005 | | Media Relations Spokesperson |
| | | (714) 347-8405 |

Santa Ana – District Attorney Tony Rackauckas has announced the settlement of a multi-million dollar environmental protection lawsuit against Shell Oil Company and related entities Texaco Refining and Marketing, Inc., Equiva Services LLC, and Equilon Enterprise LLC. This follows successful litigation against the Atlantic Richfield Company (ARCO) in 2002 and Thrifty Oil Co. in 2003. These lawsuits represent the first civil litigation of this kind in the nation to be prosecuted by a local district attorney.

### Judgment Achieves Total Recovery of Costs, Complete Cleanup and Full Compliance

Shell must pay up to $10.5 million for a Plume Delineation program to determine the scope and extent of the contamination at former and existing gasoline station sites throughout the county.

- Shell is required to clean up and remediate the contamination at each of the former and existing 184 Shell and Texaco sites in Orange County. There is no limit on the amount that may be required to be spent by the defendants for cleanup.

- Shell must pay $3.5 million to a Prosecution Trust Fund for the Consumer and Environmental/Economic Crimes divisions of the Orange County District Attorney's office. This money will be used to reimburse costs associated with the prosecution of this case and will finance future investigations and prosecutions.

- Shell will make payments totaling $500,000 to the Orange County Health Care Agency, Anaheim Fire Department, Fullerton Fire Department, Orange Fire Department and Santa Ana Fire Department for investigation and enforcement of underground storage tank programs in the county.

- Shell must attain and remain in full compliance with all statutory and regulatory requirements related to the ownership and operation of underground gasoline storage tanks at all of its gasoline station sites throughout Orange County.

## Orange County District Attorney Takes Preventive Steps

**"Orange County gets about half of its drinking water from our groundwater. If it were to be polluted it would be virtually impossible to get that precious commodity back,"** said District Attorney Tony Rackauckas. **"Water is what sustains our life, our lifestyles. By cleaning up the ground, thus preventing the drinking water from becoming contaminated, we can all feel safe that the water we drink, cook with and bathe in is free of harmful chemicals."**

## Threat to Supply of Drinking Water Discovered

Orange County DA Office

District Attorney Rackauckas made the decision to file this environmental protection lawsuit based upon reports filed by the Orange County Health Care Agency and investigations by the Anaheim, Fullerton, Orange and Santa Ana Fire Departments. These reports indicated numerous violations of state laws regulating the installation and operation of underground gasoline storage tanks. Attempts by local agencies to secure appropriate compliance with these laws had not succeeded. The district attorney concluded that, in view of this, an enforcement action by his prosecutors was both necessary and warranted.

The necessity of this decision was shown in reports that indicated that gasoline leaking from improperly maintained storage tanks had contaminated surrounding soil and groundwater. The presence of the gasoline additive called MTBE (methyl tertiary-butyl ether) in the leaking fuel added to this problem. MTBE is more soluble and moves further and faster through groundwater than other components of gasoline. Because MTBE can be detected in very small amounts, even a small amount of MTBE can contaminate and render undrinkable large volumes of water. It makes the contaminated water taste and smell like turpentine. More over, MTBE is extremely difficult and expensive to remove from water once contaminated.

### OCDA Case against Shell Oil sets a Precedent

To accomplish these goals, District Attorney Rackauckas put together a team of deputy district attorneys and a paralegal in the Environmental Protection unit.  Joe D'Agostino is in charge of this unit.  Due to the invaluable assistance provided by the law firms of Robinson, Calcagnie and Robinson and Lopez, Hodes, Restaino, Milman and Skikos in earlier cases, against Arco and Thrifty Oil, the district attorney's office was able to do the great majority of the work on the Shell case in-house. These firms continued to provide valuable consultation and assistance which allowed the district attorney to proceed in this most cost effective manner, at great savings and benefit to the People of Orange County.

### UPDATES ON ARCO

*Two years ago, ARCO had agreed to similar terms as Shell.  So far, the clean-up for ten sites have been completed.  That is approximately 1/6 of the total sites.  ARCO has spent approximately $8.5 million thus far on clean-up.  As they continue to clean up – their costs will be far greater.

###

# Exhibit E



# 2007

## OFFICE OF THE ORANGE COUNTY DISTRICT ATTORNEY





BIENNIAL REPORT

# Environmental Protection

The Environmental Protection Unit is committed to protecting the health and safety of Orange County citizens and ensuring the integrity of the County's natural resources for present and future generations. The Unit investigates and prosecutes a wide variety of complex environmental crimes including violations of laws regarding regulating the handling, storage, and disposal of hazardous waste and underground storage tanks. The Unit is also dedicated to protecting natural resources, monitoring worker safety, and preventing air and water pollution. The Unit works with federal, state and local environmental agencies and health departments to investigate these cases and pursues criminal complaints and/or civil actions. The Orange County District Attorney's priority is to stop illegal polluting and require the polluters to pay for the clean-up of toxic and polluted sites.



## People v. Markland Industries Inc.

Markland Manufacturing Inc., a chrome and nickel plater for motorcycle parts companies, was convicted of three felony violations for unlawfully disposing of hazardous waste in Orange County. Hazardous waste, including nickel, was found in residue filters that had been discarded in dumpsters and its wastewater being discharged into the sewer system. This waste was discharged at a facility that did not have a permit from the Department of Toxic Substance Control. Markland Manufacturing Inc. was ordered to pay $351,629 in fines, restitution, and the cost of the investigation.

## People v. Ultra Wheel, et al.

Buena Park custom wheels manufacturer, Ultra Wheel, was convicted of three felony counts of illegally disposing of hazardous waste. Ultra Wheel admitted to discharging acidic waste containing dangerous metals such as copper and nickel into the public sewer system. They also admitted to dumping similar waste into the storm drain system, which flowed directly into the environment through Coyote Creek in Buena Park. Ultra Wheel was ordered to pay $425,000 in fines and cases, and served three years probation. As a result of the guilty verdicts, the manufacturer spent $500,000 upgrading its facility to prevent future contamination of the environment and cleared the public storm drain and sewer system that serviced the facility.





## People v. Arco, Shell, and Thrifty, et al.

The Unit has successfully prosecuted worldwide oil companies for violations of numerous state statutes and regulations governing gas stations' underground storage tanks. As a result of People v. Arco, Shell and Thrifty et al., clean-up work and remediation of numerous polluted underground storage tank sites are being funded by the defendant major oil companies. Past violations of these environmental laws led to the contamination of Orange County's groundwater and aquifer, threatening the County's drinking water. Orange County residents obtain approximately half of their drinking water from local underground wells. If polluted, the water would be almost impossible to replace. These prosecutions were the first of their kind to be brought by any district attorney's office in the nation.

The oil companies were required to write a blank check to cover the cost of cleaning up the environment until the ground water is free of dangerous chemicals. The lawsuits were prosecuted at no cost to the taxpayer. As a result, many of the polluted underground storage sites have been cleaned up and are free of a dangerous chemical compound called MTBE. Approximately 300 sites are being cleaned as a result of this lawsuit. The successful settlements against these corporations required these oil companies to pay more than $25 million in penalties and an unlimited amount, which may exceed $100 million, for clean up of contaminated sites.





24

# Exhibit F

DO NOT DUPLICATE - PURSUANT TO GOVERNMENT CODE 69954(d)

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ORANGE, COMPLEX JUSTICE CENTER

DEPARTMENT CX104

THE PEOPLE OF THE
STATE OF CALIFORNIA,          )
                             )   **ORIGINAL**
                 Plaintiff,   )
                             )
      vs.                     )   No. 804031
                             )
SHELL OIL COMPANY, *etc.*, *et al.*,  )
                             )
                 Defendants.  )
                             )
_____)

HONORABLE DAVID C. VELASQUEZ, JUDGE PRESIDING

REPORTER'S TRANSCRIPT

JANUARY 5, 2005

(Appearances on the following page:)

DO NOT DUPLICATE - PURSUANT TO GOVERNMENT CODE 69954(d)

4

1   County Water District.

2   **THE COURT:**  Counsel indicated to the Court a few

3   minutes ago that your client has -- believes it has an

4   interest in the case and would like to be heard; and

5   that you had not received a copy for review of the

6   proposed final judgment.

7       The Court has read an earlier version which I

8   think was tinkered with a little bit but is in

9   substantially the same form as what was just given to

10   the Court as a proposed final judgment, which I think

11   is the most recent version.

12       And that counsel thought you wanted opportunity

13   to review the proposed final judgment, and then you

14   wished an opportunity to be heard.

15       Is that correct so far?

16   **MR. MILLER:**  We to need an opportunity to review

17   it, Your Honor, to determine its potential impact on

18   our client's rights.  We have an action that is pending

19   over MTBE contamination against the Shell defendants as

20   well.

21   **THE COURT:**  Is that the case that was originally

22   assigned to this Court and then removed to the Federal

23   Court?

24   **MR. MILLER:**  Yes, Your Honor.  It's currently in

25   Manhattan.

26   **THE COURT:**  So what I'm -- what I would suggest is

DO NOT DUPLICATE - PURSUANT TO GOVERNMENT CODE 69954(d)

10

1    that it would not have an effect on our claims and
2    rights.  And this particular --
3        **THE COURT:**  Which lawsuit was that?
4        **MR. MILLER:**  A lawsuit by the People of the State
5    of California brought by the Orange County district
6    attorney's association.  And the defendant in that
7    action was principally the Atlantic Richfield Company
8    and related defendants.
9        **THE COURT:**  So that's not the case in which your
10   client is involved in Federal Court?  It's a third
11   action?
12       **MR. MILLER:**  It's a third action.
13       **THE COURT:**  All right.
14       **MR. MILLER:**  And my point is we do not take lightly
15   requests to intervene or objecting to settlements.
16   That's why I was grateful to have an opportunity to, at
17   least, read it before I made the decision I did to
18   recommend to my client to proceed as I have described.
19       We have not had an opportunity to do full
20   meaningful legal research on this, so I'm not
21   suggesting that the grounds I've stated are the only
22   ones we would later potentially brief or assert.
23       **THE COURT:**  What's the People's position?
24       **MR. D'AGOSTINO:**  Your Honor, the People -- the
25   District Attorney signed the judgment today based on
26   the belief that that settlement is fair and is in the

DO NOT DUPLICATE - PURSUANT TO GOVERNMENT CODE 69954(d)

11

best interests of the People of Orange County.

The Court's read the judgment, and the Court has seen that the People have taken pains to make it clear that it's the People's intention not to prejudice the Water District's suit in any way; and also the People have made it clear that People are not in privity with the Water District and continue to maintain that there is no privity of interests that would put the Water District suit in jeopardy.  And we'd ask the Court to sign the judgment today.

**THE COURT:**  Mr. Temko, on behalf of the defendant?

**MR. TEMKO:**  Yes, Your Honor.  Thank you.

I think it's interesting that Mr. Miller purported to quote to you or characterize for you his right to intervene, as he put it, a right to intervene at any time under -- of the C.C.P. Section 387.  What he conspicuously left out was the phrase, *upon timely application.*

And I guess my first argument, Your Honor, would be I haven't heard anything from Mr. Miller, because I don't think he has an answer, as to why at the 11th and a half hour, or indeed the 12th hour, the Orange County Water District is trying to come in and upset a settlement between these parties, a settlement that both parties think is in the best interests of the parties and both parties want you to enter.

DO NOT DUPLICATE - PURSUANT TO GOVERNMENT CODE 69954(d)

20

1   you the shorthand version -- any polluter within its

2   service area.

3           In addition to that, we have common-law claims

4   for trespass, nuisance, products liability, and other

5   common-law theories.

6           Now, I understand the District Attorney pled in

7   the First Amended Complaint public nuisance but, with

8   that exception, there's no crossover in the claims as

9   opposed to other aspects of the pleading.

10          To the extent that the District Attorney

11  proceeded with his claim using his authority, virtually

12  most of what he is doing, there's no overlap between

13  his claim and mine; but the settlement purports to go

14  broader than that, if you read it the way I believe

15  Mr. Temko is reading it.

16          So there is a disconnect between the way the

17  case was filed and prosecuted and what I'm seeing in

18  the final judgment.

19      **THE COURT:**  All right.  Mr. D'Agostino, did you

20  take that into consideration in your negotiations with

21  the defendant?

22      **MR. D'AGOSTINO:**  Your Honor, as the Court has read

23  in a document, the relief that is being sought here is

24  all statutorily based.  The key component is the

25  injunctive relief, which Mr. Miller has indicated, as

26  we have limited powers to seek injunctive relief, and

DO NOT DUPLICATE - PURSUANT TO GOVERNMENT CODE 69954(d)

21

1   we have statutory rights to seek injunctive relief.  We

2   have, under that statutory right, simply put in the

3   statutory obligation we have to pursue that injunctive

4   relief.  They're asking to Court to sign off on that.

5          In essense, we agree with Mr. Miller; that we

6   don't believe we're in privity with the Water District.

7   We have put that in the agreement.  We don't believe

8   that there's anything that we did in the ARCO case,

9   which the Water District has never contested, or this

10  case that would affect any of their rights.

11         Therefore there is nothing in this settlement

12  that goes beyond the District Attorney's powers that

13  are statutorily codified and rest with the District

14  Attorney's office.  The Water District's claims are

15  common-law based; they are damage based; they are

16  independent of our claims; and we have always taken the

17  position, and the Court has read in the document we

18  have taken the position, that there's nothing we're

19  doing in this settlement that has anything to do with

20  precluding the Water District from pursuing their case

21  in Federal Court.

22         And that was taken into account obviously in

23  the agreement because, as the Court has read in the

24  agreement, there is language put in by the District

25  Attorney to say we don't represent the Water District;

26  we're not in privity with the Water District; and we do

DO NOT DUPLICATE - PURSUANT TO GOVERNMENT CODE 69954(d)

22

1    not believe it has any *res judicata* effect.

2         **THE COURT:**  And any last reply from the defendant?

3         **MR. TEMKO:**  Yes, please, briefly, Your Honor.

4              With all due respect to Mr. Miller, his

5    response on the untimeliness was somewhat sort of

6    double-talk.  He made some reference to the fact that

7    Shell has consistently taken the position that he can

8    proceed only in Federal Court.  Yes, we did remove

9    their action into Federal Court.  That doesn't answer

10   the fundamental question about where has he been for

11   the last two years?  He could have filed the motion to

12   intervene.

13             It is some possibility -- if you ask what the

14   effect would be if he in this untimely fashion were to

15   allowed to intervene, I guess there is some risks that

16   the whole thing will be removed to Federal Court, will

17   be transferred to back to the MDL, which I think does

18   go to the factors that you're allowed to consider in

19   your discretion the effect on the existing parties.

20   Don't think that's what the people of Orange County,

21   the District Attorney want to do.  They want to settle

22   the case.  We want to settle the case.

23             But it's -- it's disingenuous to say that

24   because we removed his other lawsuit, he couldn't have

25   filed a motion for leave to intervene two years ago.

26             When he talks about due process, I think, Your

DO NOT DUPLICATE - PURSUANT TO GOVERNMENT CODE 69954(d)

27

1   which is what he represented to the Court about 10

2   minutes ago.  It simply says, *settling defendant's*

3   *obligations hereunder* -- that is the separate

4   obligations under the settlement -- *will terminate in*

5   *five years.*

6      **THE COURT:**  All right.  The Court will deny the

7   request of the purported intervenor to decline to sign

8   this settlement judgment or to stay proceedings or

9   continue today's hearing on the settlement.

10       387 provides that permitting intervention would

11   allow the intervenor to join the plaintiff in claiming

12   what is being sought in the Complaint.

13      But I understand different causes of action are

14   being sought in the matter removed to Federal Court.

15      And I have not seen the -- any -- or heard

16   anything showing that there would be prejudice to the

17   parties in the other action, especially based upon the

18   fact that the statutory obligations of the defendant

19   are not affected, notwithstanding that their

20   obligations under the proposed settlement may terminate

21   in five years.

22      The Court -- cited by purported third-party

23   intervenor, *People versus Superior Court* at 737, I

24   believe, makes clear that this Court has all the same

25   discretion it would have in ruling upon the

26   appropriateness of intervention, including the right to

DO NOT DUPLICATE - PURSUANT TO GOVERNMENT CODE 69954(d)

28

1   consider the timeliness of the request.

2           This is a very late request.  In fact, the

3   Court now has basically pen to paper with respect to

4   approving the settlement agreement.

5           And the case, *People versus Superior Court*,

6   does say that trial Court possesses its discretion to

7   deny intervention, even if direct interest is shown by

8   the purported third-party intervenor where the original

9   litigant rights or interests outweigh the intervenor's

10  concern, potential delay, multiplicity of actions,

11  which the Court sees great prejudice to these parties,

12  having worked very hard on the settlement and also

13  worked very hard of getting the case ready for trial

14  before settlement discussions were made known to this

15  Court.

16          So the Court would exercise its discretion not

17  to take any action to delay proceedings.

18          I make no findings about the effect of this

19  settlement on any other action.  I'll let an

20  appropriate Court at the appropriate time make those

21  determinations.

22          The Court had earlier at a prior hearing met

23  with the parties in this action, has reviewed the

24  proposed final judgment; and but for a couple of

25  provisions which -- which I think are now corrected

26  concerning the manner in which the provisions would be