UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

**Master File No. 1:00 – 1898**
**MDL 1358 (SAS)**
**M21-88**

This Document Relates To:

The Honorable Shira A. Scheindlin

*Orange County Water District v. Unocal Corporation,*
*et al.,* Case No. 04 Civ. 4968 (SAS)

**MEMORANDUM OF LAW OF DEFENDANTS
ATLANTIC RICHFIELD COMPANY, BP WEST COAST PRODUCTS LLC, BP
PRODUCTS NORTH AMERICA, INC., ARCO CHEMICAL COMPANY,
LYONDELL CHEMICAL COMPANY, SHELL OIL COMPANY, EQUILON
ENTERPRISES LLC, TEXACO REFINING AND MARKETING INC.,
TESORO CORPORATION, TESORO REFINING AND MARKETING COMPANY,
UNION OIL COMPANY OF CALIFORNIA, VALERO MARKETING AND SUPPLY
COMPANY, VALERO REFINING COMPANY—CALIFORNIA, AND ULTRAMAR
INC. IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT DUE TO
LACK OF INJURY AND DAMAGES AT CERTAIN TRIAL SITES**

## TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................... 1

II.     SUMMARY OF UNDISPUTED FACTS ................................................................ 2

        A.      Anthony Brown's Testimony ...................................................................... 2

        B.      At Four Focus Sites, Brown Could Not Testify That It Was More Likely
                Than Not That Further Remediation Was Necessary, Or That Each Site
                Was A Threat. .............................................................................................. 3

                1.      Beacon Bay FV ................................................................................ 3
                2.      Unocal #5399 ................................................................................... 4
                3.      Unocal #5123 ................................................................................... 5
                4.      Thrifty 368 ....................................................................................... 6

III.    ARGUMENT ......................................................................................................... 7

IV.     CONCLUSION ..................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Beck Dev. Co. v. S. Pac. Transp. Co.,* 44 Cal. App. 4th 1160, 52 Cal. Rptr. 2d 518 (Cal. Ct. App. 1996) ................................................................................................................. 8, 9

*California v. Kinder Morgan Energy Partners, L.P.*, 2013 U.S. Dist. LEXIS 10503 (S.D. Cal. Jan. 25, 2013) .......................................................................................................... 8, 10

*Caminetti v. Manierre*, 23 Cal. 2d 94 (1943) ............................................................... 11

*Frustuck v. City of Fairfax*, 212 Cal. App. 2d 345 (Cal. App. 1961) ........................... 11

*Garbell v. Conejo Hardwoods, Inc.,* 193 Cal. App. 4th 1563, 122 Cal. Rptr. 3d 856 (Cal. Ct. App. 2011)) ......................................................................................................... 8

*In re MTBE*, 2007 WL 700819 (S.D.N.Y., Mar. 7, 2007) ..................................... 1, 2, 7

*In re MTBE*, 2013 WL 4830965 (S.D.N.Y. Sept. 10, 2013) *(City of Fresno)* .......... 2, 7, 9, 10

*In re MTBE*, 2014 WL 630636 (S.D.N.Y. Feb. 18, 2014) ............................................ 10

*In re MTBE*, 824 F. Supp. 2d 524 (S.D.N.Y. 2011) *(OCWD)* ................................. 2, 8, 9

*McCoy v. Gustafson*, 180 Cal. App. 4th 56 (2009) ......................................................... 8

*Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958 (9th Cir. 2001) ............... 11

**Other Authorities**

Prosser & Keeton, Torts (5th ed.1984) § 41 ................................................................. 10

## I.   **INTRODUCTION**

Pursuant to the Court's instructions at the April 16, 2014 status conference, the individual Defendants listed below[1] submit this brief addressing Defendant-specific issues in further support of Defendants' motion for summary judgment on all of plaintiff Orange County Water District's ("OCWD") claims at four of the designated focus trial sites: (1) the former Beacon Bay Auto Wash at 10035 Ellis Avenue, Fountain Valley ("Beacon Bay FV"); (2) Unocal #5399, 9525 Warner Avenue, Huntington Beach ("Unocal #5399"); (3) Unocal #5123, 14972 Springdale Street, Huntington Beach ("Unocal #5123"); and (4) Thrifty 368, 6311 Westminster Boulevard, Westminster ("Thrifty 368").

OCWD's claims in this case rest on its alleged need to remediate MTBE contamination that supposedly "escaped remediation" at the "focus plume" stations and, according to OCWD, threatens the deeper aquifers from which potable supply wells in OCWD's service area draw water. *In re MTBE*, 2007 WL 700819 at *6 (S.D.N.Y., Mar. 7, 2007). Yet for the four sites at issue in this motion, OCWD's designated expert in hydrogeology, Anthony Brown, was unable to testify that it was more likely than not that (1) additional on-site groundwater remediation is required; (2) additional off-site groundwater remediation is required; (3) releases at the sites pose a threat to aquifers that would be used for or potentially used for drinking water supply; or (4) releases at the sites pose a threat to water supply wells. As a result, OCWD cannot establish the

---

[1] Rather than each filing individual briefs to supplement Defendants' joint summary judgment motion with defendant-specific issues, Defendants Atlantic Richfield Company, BP West Coast Products LLC, and BP Products North America, Inc. (collectively, "BP"); ARCO Chemical Company and Lyondell Chemical Company (collectively, "Lyondell"); Shell Oil Company, Equilon Enterprises LLC, and Texaco Refining and Marketing Inc. (the "Shell Defendants"); Tesoro Corporation (formerly known as Tesoro Petroleum Corporation) and Tesoro Refining and Marketing Company (erroneously named as Tesoro Refining and Marketing Company, Inc.) (collectively, "Tesoro"); Union Oil Company of California ("Union Oil"); and Valero Marketing and Supply Company, Valero Refining Company-California, and Ultramar Inc. are submitting this single combined individual brief because their individual issues are related.

existence of any compensable injury at these sites, and summary judgment for Defendants is warranted. *In re MTBE*, 2013 WL 4830965 (S.D.N.Y. Sept. 10, 2013) (*City of Fresno*) (plaintiff must establish the existence of an injury or a threat of imminent injury as a prerequisite to recovering damages); *In re MTBE*, 824 F. Supp. 2d 524, 536 (S.D.N.Y. 2011) (*OCWD*); *In re MTBE*, 2007 WL 700819 at *6 (S.D.N.Y. Mar. 7, 2007) (*OCWD*).

## II.   SUMMARY OF UNDISPUTED FACTS

In its complaint, OCWD claims that it "must initiate a remedial program to assess, evaluate, investigate, monitor, abate, clean up, correct, contain, and/or take other necessary remedial action" at service stations in its service area.  (3d Am. Compl.  ¶105).  Among other relief, OCWD seeks "an order declaring that defendants are liable for the full cost of all remedial and other actions necessary to abate and remove MTBE and/or TBA which is contaminating and threatening the District's property...."  With regard to the "Focus Sites" at issue, OCWD claims it "will need to implement additional investigation and remediation activities . . . to mitigate the ongoing threat to the drinking water resources managed by the OCWD."  Local Rule 56.1 Statement on Damages ("LR 56.1") ¶ 1.

### A.   Anthony Brown's Testimony

OCWD's testifying hydrogeology expert Anthony Brown provided a lengthy expert report and a rebuttal report in this case, but he also produced a chart at his deposition, which was marked as Exhibit 36.  Exhibit 36 summarized Brown's most current opinions as to whether a series of 22 propositions are "more likely than not" true for each of the Focus Sites he examined. Brown testified that Exhibit 36 contained the opinions that he would offer at trial and, to the extent they differed from those in his expert report, the opinions expressed in Exhibit 36 and his deposition testimony superseded the opinions in his expert report.  LR 56.1 ¶¶ 2-3.

2

For each of the 22 propositions, as applied to each Focus Site, Brown indicated "Y" if the proposition was more likely than not true; "N" if the proposition was likely not true; or "P" (for "possible") "[i]f we could not determine that it was more likely than not ...." LR 56.1 ¶ 4. According to Brown, the term "threat" "would be defined as the contamination that has resulted from a release at a particular facility could potentially either impact aquifers that would be used for or potentially used for drinking water supply, and that's reflected in question or opinion 21 on my summary table." LR 56.1 ¶ 5. Brown added that a "threat" would include "contamination [that] could potentially impact [a] water supply well." LR 56.1 ¶ 5.

### B.   At Four Focus Sites, Brown Could Not Testify That It Was More Likely Than Not That Further Remediation Was Necessary, Or That Each Site Was A Threat.

As to four of the "Focus Sites" – Beacon Bay FV, Unocal #5399, Unocal #5123, and Thrifty 368 – Brown was unable to opine that it was more likely than not that these sites required additional on-site or off-site remediation, or that releases from the sites threatened drinking water wells or drinking water aquifers.

#### 1.   Beacon Bay FV

Brown could not testify that it was more likely than not that further on-site or off-site remediation was needed at Beacon Bay FV, or that the station posed a threat to water supply wells or water supply aquifers. LR 56.1 ¶ 6. Brown elaborated on his opinions at his deposition:

> Q.   Do you have an opinion that the alleged MTBE or TBA from Beacon Bay, Fountain Valley is a threat to any specific drinking water walls in Orange County?
> ***
> A.   I've only been able to conclude that the release at Beacon Bay Auto Wash, Fountain Valley is a possible threat to water supply wells, but I've been able to -- unable to conclude that it's more likely than not that the release poses a threat to a water supply. (LR 56.1 ¶ 7)

Brown opined that "[w]ith respect to water supply wells, I could only conclude that the release poses a possible threat. I could not conclude that it was more likely than not." LR 56.1 ¶ 8.

Likewise, Brown was unable to conclude that any additional off-site remediation was necessary at Beacon Bay FV, or that the site posed a threat to deeper drinking water aquifers:

> Q.  Okay.  Question 20, you think it's possible that off-site remediation will be needed at this site, but you don't know whether it's more likely than not.  Is that right -- fair?
>
> A.  That is correct.
>
> Q.  And looking at your chart again, you think it's possible that contamination from this site poses a threat to deeper aquifers, but you don't have an opinion as to whether it's more likely than not?
>
> A.  That is correct.  (LR 56.1 ¶ 9)

In addition, Brown concluded that no further on-site remediation was needed at Beacon Bay FV:

> Q.  And Question 19, it's your opinion that it's more likely than not that no additional on-site delineation is needed -- excuse me -- no additional on-site remediation of groundwater is needed, correct?
>
> A.  That is correct.
>
> Q.  It's your opinion that on-site remediation has effectively controlled the contamination, correct?
> ***
> A.      Correct.  Question 14 would indicate that the remediation performed has effectively addressed the on-site groundwater contamination.  (LR 56.1 ¶ 10)

### 2.    Unocal #5399

Brown could not opine that alleged releases from Unocal #5399 posed any threat to water supply wells or deep aquifers in Orange County.  To the contrary, Brown testified that it was more likely than not that Unocal #5399 did *not* pose a threat to water supply wells:

> Q.      And you do not think that the alleged MTBE released from Unocal 5399 is a threat to any specific drinking water wells in Orange County, correct?

4

A.    If you refer to Exhibit 35 for Unocal station 5399, question 22.

Q.    I think you meant 36.

A.    Sorry, yes. Excuse me, 36. Question 22 states, "Releases at the facility pose a threat to water supply wells?" I have concluded that it is more likely than not that they do not pose such a threat. (LR 56.1 ¶ 11)

Likewise, Brown could not testify that it was more likely than not that an alleged release of MTBE from Unocal #5399 posed any threat to deep aquifers. LR 56.1 ¶ 12 (Q. "Again, you think it's possible that contamination from Unocal 5399 is a threat to deep aquifers, but you can't say whether or not it's more likely than not that's the case, correct?  A. That's correct.").

Nor could Brown opine that off-site remediation is necessary, and in fact, he specifically stated that remedial activities at Unocal #5399 had addressed alleged on-site impacts:

Q.    Now, you do think that the current remediation has effectively addressed the on-site MTBE contamination, correct?  And that's question 14.

A.    Yes.  And, as indicated, the only remediation activities was [sic] an excavation performed at this facility back in late 1994.

Q.    It's your opinion that no more on-site remediation is needed at this site, correct?

A.    That's correct.

Q.    And in terms of question 20, the off-site remediation, again, it may need it, but you can't say whether it's more likely than not it's needed, correct?

A.    That's correct.  (LR 56.1 ¶ 13)

### 3.    Unocal #5123

As with the previous stations, Brown was unable to opine that Unocal #5123 posed any threat to drinking water wells:

Q.    Mr. Brown, you do not have an opinion that the alleged MTBE from Unocal 5123 is a threat to any specific drinking water wells in Orange County, do you?

5

> A.     I have only been able to conclude that it poses a possible threat.  I have not been able to conclude that that threat is more likely than not. (LR 56.1 ¶ 14)

Indeed, Brown simply cannot state with any reasonable degree of certainty that an alleged release from Unocal #5123 poses a threat to the water supply in Orange County—either to the deep aquifers or to water supply wells:

> Once again, I cannot conclude that the releases more than likely than not pose a threat to deeper aquifers, only that they possibly pose such a threat.
>
> ***
>
> Yes, I'm of the same opinion, that I could not conclude that it's more likely than not that the releases pose a threat to water supply wells, only that they pose a possible threat. (LR 56.1 ¶ 15)

Brown likewise could not say whether additional on-site remediation was even needed at Unocal #5123:

> Q.     And you think it is possible that additional on-site remediation of groundwater is required at this site, but you do not have an opinion that it's more likely than not that additional on-site remediation will be required at this site, correct?
>
> A.     Based upon the information I have reviewed to date, I cannot conclude that it's more likely than not that additional on-site remediation of groundwater will be required. (LR 56.1 ¶ 16)

The same is true for whether off-site remediation is necessary at Unocal #5123:  "I cannot conclude that its more likely than not that additional off-site remediation of groundwater will be required, only that it is possible . . . ."  LR 56.1 ¶ 17 ("Q.  And you have not concluded that it is more likely than not that additional remediation is necessary at this site?  A.  That is correct. Only that additional remediation may possibly be required.").

### 4.     Thrifty 368

Exhibit 36 confirms Brown's conclusions that actionable injury could not be attributed to Thrifty 368.  Specifically, this station received an "N" (not more likely than not) on both

additional on-site remediation required (Q19) and additional off-site remediation required (Q20); and a "P" (possible but doesn't meet the threshold of more likely than not) on both posing a threat to deeper aquifers (Q21) and posing a threat to water supply wells (Q22).  LR 56.1 ¶ 18. As Brown explained, he gave a site a "P" even if he felt it "unlikely" that it posed a threat to drinking water:

> Q.  Let's assume that you concluded that it was unlikely that [a site] was a threat to drinking water, you would still give [the site] a "P" correct?
> * * *
> THE WITNESS:  It actually could get a "P" or an "N."  We're talking generically across all of the potential sites.

LR 56.1 ¶ 19 (Brown cannot conclude that it is more likely than not that Thrifty 368 presents a threat to wells in the vicinity of the station).

## III.  **ARGUMENT**

In this case and others, this Court has made clear that to state a claim, a plaintiff must prove that it suffered an "appreciable injury" or is facing a threat of appreciable injury.  *See In re MTBE*, 2013 WL 4830965, *16-*17 (S.D.N.Y., Sept. 10, 2013).  The entire premise of OCWD's complaint is that MTBE gasoline releases at all Focus Sites represent threats to Orange County's drinking water:  "OCWD asks this Court for monetary relief necessary to proactively identify and remediate or contain MTBE *plumes* that have already escaped a spill site and may eventually make their way into the groundwater basins served by OCWD."  *In re MTBE*, 2007 WL 700819 at *6 (S.D.N.Y., Mar. 7, 2007) (emphasis in original).  This is because, as OCWD concedes, "'virtually all drinking water wells within the District's area draw from several hundred feet below ground surface, and certainly none draw water from shallow depths close to service stations."  824 F. Supp. 2d at 539 & nn.80, 81 (quoting Declaration of Roy Herndon, 2/28/07: "[S]hallow groundwater at service station sites… is simply not useable drinking water").

Thus, OCWD has conceded, as it must, that detections of MTBE in shallow groundwater beneath gasoline stations do not represent an injury to drinking water resources, since OCWD admits that such water is "already unusable." 824 F. Supp. 2d at 539. And as this Court has made clear, when a plaintiff pursues claims based on a fear of future harm, "'the burden must be on the plaintiff to establish some measure of such things as the magnitude and likelihood of the danger and *it cannot be enough to merely suggest a danger and assert that it has not been ruled out.*'" *In re MTBE*, 824 F. Supp. 2d at 541, quoting *Beck Dev. Co. v. S. Pac. Transp. Co.,* 44 Cal. App. 4th 1160, 52 Cal. Rptr. 2d 518, 549 (Cal. Ct. App. 1996) (emphasis added). Yet at best, all Brown does for the four Focus Sites at issue is raise the specter of future harm, and then assert that the danger has not been conclusively ruled out. His testimony makes it clear that he cannot say that the danger he suggests is more likely than not to materialize, rendering his opinions, at most, mere speculation. Indeed, Brown affirmatively found that one of the sites – Unocal #5399 – did *not* present a threat to any drinking water well. LR 56.1 ¶ 11.

This lack of expert support for OCWD's claims is fatal, because under California law, "a plaintiff must support a claim with expert testimony on any issue that is beyond the common experience of laymen," and "if the matter involves a 'complex scientific issue such as the migration of chemicals through land,' expert evidence is required." *California v. Kinder Morgan Energy Partners, L.P.*, 2013 U.S. Dist. LEXIS 10503, at *29, *103 (S.D. Cal. Jan. 25, 2013), quoting *McCoy v. Gustafson*, 180 Cal. App. 4th 56 (2009); *see also Kinder Morgan*, at *28 ("[t]he migration of subsurface material is not a subject about which laypersons can testify based on their personal observations because the required technical inquiries are beyond the scope of a layperson's experience") (citing *Garbell v. Conejo Hardwoods, Inc.,* 193 Cal. App. 4th 1563, 122 Cal. Rptr. 3d 856, 861-62 (Cal. Ct. App. 2011)).

8

Brown's testimony demonstrates that OCWD cannot establish the existence of any compensable injury, or any claim for damages, at any of the four Focus Sites that are the subject of this motion. OCWD has no evidence "that the contamination at [these four Focus Sites] has prevented the public from using the District's water, or has offended the senses of a substantial number of individuals in the district." *In re MTBE*, 824 F. Supp. 2d at 539. Similarly, for the four Focus Sites, OCWD has not presented any "evidence of 'the potential for future contamination of public water supplies.'" *Id.* at 541, quoting *Beck*, 52 Cal. Rptr. 2d at 549 (rejecting trial court finding that "oil contamination beneath Beck's property is a nuisance per se"). All OCWD provides is speculation.

In the *City of Fresno* case, this Court, in granting Defendants' motion for summary judgment, found that the City's expert Graham Fogg did not "provide a sufficient basis for a reasonable jury to conclude" that its wells were threatened by contamination at the sites at issue. *In re MTBE*, 2013 WL 4830965 at *18. In so finding, this Court noted that Fogg's report, which plaintiff claimed established the existence of an injury, did not contain "specific evidence tying a release at a station to the threat of harm to [Plaintiff's] production wells," and that at his deposition Fogg "admitted that he could not opine that any particular well was more likely than not threatened by MTBE contamination at" the sites at issue. *Id.*

Fresno also sought to rely on the testimony of another expert, Richard Haberman, who opined that a utility may find it more effective to treat a plume of contaminants "before it eventually spreads to water supply wells." *Id.* at *18. However, the Court found that testimony inadequate because "Haberman [wa]s silent on the question of whether the plumes under discussion are likely to spread to Fresno's water supply wells in the first instance." *Id.* Here, Brown's testimony is no better; he provides no evidence that the releases from the four Focus

9

Sites are likely to impact water supply wells, and in the case of Unocal #5399, he finds it likely that they will not.

In granting Defendants' motions in *Fresno*, this Court found: "Fresno has presented no evidence from which a reasonable jury could find that the groundwater and soil contamination at the sites at issue in this motion threaten its production wells." *Id.* Likewise, OCWD has presented no such evidence here. No reasonable jury could find that releases at the four Focus Sites at issue here threaten drinking water wells, because OCWD's own expert cannot reach that conclusion himself. *See Kinder Morgan*, 2013 U.S. Dist. LEXIS 10503, at *29, *103.

Nor can OCWD show the need for any further remediation. To the contrary, OCWD's expert Brown affirmatively opined that one of the Focus Sites –Thrifty 368 – does *not* require additional on-site or off-site remediation. LR 56.1 ¶ 18. And at the other three sites, he cannot say such remediation is more likely than not needed. Even with his alleged expertise and review of the relevant materials for these sites, he simply does not know. In turn, neither can the jury.

Brown's rank speculation is insufficient to establish the existence of any injury. Indeed, his opinion here sounds remarkably like his opinion on the purported need for further investigation at Shell's Ridgewood site in the *NJDEP* litigation, which this Court recently held was insufficient to withstand summary judgment. *In re MTBE*, 2014 WL 630636 (S.D.N.Y. Feb. 18, 2014) (granting summary judgment for defendants where "[p]laintiffs' claims rest on [Brown's] expert report which states that further investigation 'may' reveal the necessity of additional remediation or for primary restoration – or may reveal nothing"). *Cf.* Prosser & Keeton, Torts (5th ed.1984) § 41, p.269 ("when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant"). OCWD's evidence is wholly insufficient under the well-

10

established standard this Court previously articulated and that California law requires. *See*

*Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 961 (9th Cir. 2001) ("[i]t has long

been settled in California that 'the proof must establish with reasonable certainty and probability

that damages will result in the future to the person wronged"), citing *Caminetti v. Manierre*, 23

Cal. 2d 94, 101 (1943); *Frustuck v. City of Fairfax*, 212 Cal. App. 2d 345, 368 (Cal. App. 1961)

(damages that are "merely possible cannot serve as a legal basis for recovery").

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion should be granted.

Dated:  June 6, 2014

Respectfully submitted,

_____

Richard E. Wallace, Jr.
Peter C. Condron
Amanda Gilbert
SEDGWICK LLP
2900 K Street, N.W.
Harbourside – Suite 500
Washington, D.C. 20007
Telephone:  (202) 204-1000
Facsimile:  (202) 204-1001

Attorneys for Defendants
Shell Oil Company, Equilon Enterprises LLC, and
Texaco Refining and Marketing Inc.

And on behalf of the Defendants listed on
Attachment A

11

# ATTACHMENT A

Atlantic Richfield Company

ARCO Chemical Company

BP Products North America, Inc.

BP West Coast Products LLC

Equilon Enterprises LLC

Lyondell Chemical Company

Shell Oil Company

Tesoro Corporation (formerly known as Tesoro Petroleum Corporation)

Tesoro Refining and Marketing Company (erroneously named as Tesoro Refining and Marketing

Company, Inc.)

Texaco Refining and Marketing Inc.

Ultramar Inc.

Union Oil Company of California

Valero Marketing and Supply Company

Valero Refining Company-California