Law Offices of
# MILLER & AXLINE
A Professional Corporation

DUANE C. MILLER                                          TRACEY L. O'REILLY
MICHAEL AXLINE                                           DANIEL BOONE
                                                         JUSTIN MASSEY
                                                         BRYAN BARNHART
                                                         DAVE E. BLUM
                                                         MOLLY MCGINLEY HAN

June 24, 2014

**VIA EMAIL AND ECF**

Honorable Shira A. Scheindlin
United States District Judge
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1620
New York, NY 10007

> Re:   *Commonwealth of Puerto Rico, et al. v. Shell Oil Co., et al.*
>        1:00-cv-01898, Case No. 07 Civ. 10470
>        **Motion for an Order Compelling Production of Reliance Materials for Chevron**
>        **Defendants' Experts Anthony Daus and John Connor and To Strike Mr.**
>        **Connor as an Expert Witness.**

Dear Judge Scheindlin:

Plaintiffs respectfully request, pursuant to Case Management Order #112 and Federal Rules of Civil Procedure 26(e), 37(a)(3), (4), and 37(c)(1) that the Court order Chevron Defendants to produce materials in the possession of Chevron experts John Connor and Anthony Daus that formed the basis for three papers co-authored by Mr. Connor on the key topic of how long MTBE persists in groundwater. These articles constitute both work papers and reliance materials, as defined in CMO #112. As Plaintiffs have been harmed by the failure to produce these reliance materials and experts' work, Plaintiffs also seek to exclude expert John Connor and his testimony at any hearing or trial in this matter.

Plaintiffs' efforts to resolve this issue, up through yesterday, have failed. Worse, Plaintiffs learned today that Defendants will not be producing any documents requested in the notice of Mr. Connor's deposition. Instead, objections to all pertinent requests were received this morning. The Court's Suggested Rules of Discovery Practice No. 7 required that those documents *be produced*, at latest, yesterday, ten days before the July 2, 2014 deposition. Now, even if the Court orders these documents be produced, there is insufficient time to analyze the data before Mr. Connor's deposition on July 2. Thus, Plaintiffs seek an order excluding his testimony on any motion or at trial.

1050 Fulton Avenue, Suite 100, Sacramento, CA  95825-4225;  Telephone:  (916) 488-6688
Facsimile:  (916) 488-4288;  Email: toxictorts@toxictorts.org

Honorable Shira A. Scheindlin
June 24, 2014
Page 2

---

The Connor-Daus expert report for Trial Site #10 (Texaco 800) declares that there is no need to remediate the off-site MTBE plume, and that the plume does not threaten any wells. No calculations are provided to support these opinions. Rather, these opinions are made on the experts' professional judgment alone which, in large measure, relies on articles coauthored recently by expert John Connor. The articles state numerous conclusions to the effect that MTBE plumes do not migrate to wells, are immobile and attenuate. Plaintiffs now ask to see the documentation behind these unsupportable claims. Plaintiffs contend that the Daus-Connor opinions are based on flawed science, inadequate monitoring networks, and on the false premise that MTBE plumes are typically small, stable–or shrinking/biodegrading–and rarely move away from their source.

To cross-examine the witnesses effectively, Plaintiffs need the data for the sites discussed in Connor's articles. This information about site location, selection, exclusion, and contaminant data excluded from consideration, are all the experts' reliance materials and work product. The underlying data for these sites analyzed in the articles squarely meet the definition of "Reliance Materials" as defined in Case Management Order #112. Ex. A. The data also constitute Connor's "work" required to be produced under Par. I. Finally, under Rule 26(2)(B)(ii), information about the sites discussed in the articles constitutes "facts or data considered by the witness" in forming the expert opinions regarding Trial Site #10. These materials must be produced under CMO #112, Par. VII. A., and are needed to complete the deposition of Anthony Daus.

The documents sought include data behind three recent scientific papers:

1. *Long Term Behavior of MTBE Plumes of Exceptional Length*, McDade, et al. submitted for publication;

2. *Progress in Remediation of Groundwater at Petroleum Sites in California*, by McHugh *et al.* (2013); and

3. *Use of Long-Term Monitoring Data to Evaluate Benzene, MTBE and TBA Plume Behavior in Groundwater at Retail Gasoline Sites,* Kamath, et al. (2012).

Chevron's expert John A. Connor is a coauthor on each of these papers. His deposition was set for July 2, 2014. The Court was informed of his unavailability at the May 1, 2014 Case Management Conference and that his deposition would be set for "the week of June 30[th]." Ex. B.

Chevron's expert Anthony Daus is coauthor with Mr. Connor of Chevron Defendants' Expert Report for Trial Site No. 10 (Texaco # 800), served on April 7. Both experts signed that

Honorable Shira A. Scheindlin
June 24, 2014
Page 3

_____

report.  Ex. C.  Despite numerous written requests, and several attempts to resolve this matter by phone and in person, and at the deposition of Anthony Daus (coauthor on the Site #10 report), Defendants refuse to produce the missing documents.

## Plaintiffs' Specific Requests for the Missing Data

Plaintiffs have been seeking "data, spreadsheets, databases and analysis" used for these scientific papers coauthored by expert Connor for six weeks.  *See* Ltr. from M. Axline to C. Correll (May 12, 2014, incorrectly dated March 12, 2014), Ex. D.  Defendants refused to produce the documents asserting that the papers cited in the Connor-Daus report are not "reliance materials" as defined in CMO #112 which include "all files, documents, texts and underlying data or manipulations of such data reviewed or relied upon by that expert in forming the basis for his or her opinion . . . ." CMO #112, par. I.  Ex. A.  Defendants contend that their experts need not provide data for articles merely "cited" in their experts' reports. *See* Ex. E;  Ltr. from J. Maher to M. Axline (May 19, 2014).

Mr. Connor, however, was *coauthor on each of the three studies.*  Statements and conclusions in those three articles are at the center of Mr. Connor's opinions regarding the persistence of MTBE in groundwater in this case.   Without the data, Plaintiffs' ability to examine Mr. Connor and Mr. Daus regarding their opinions on this topic is severely hindered.  The Connor-Daus  opinions are not in the mainstream on this topic.  Citing to a paper saying (in essence) *The World Is Flat,* experts Connor and Daus refuse to show the data and analyses supporting their world view.

These points were conveyed to Defendants in a further meet and confer letter which again demanded the underlying data for these articles.  *See* Ex. F ;  Ltr. M. Axline to J. Maher (May 20, 2014).  Defendants offered to provide *some* of the materials for one of the papers, but that offer was conditioned upon plaintiffs' withdrawing their request for the remainder of the materials.  Plaintiffs declined.  Ex. G ; Ltr.  J. Maher to M. Axline (May 30, 2014).  Again, Defendants very recently offered some of the McHugh data, but Plaintiffs' written questions on what exactly was being offered (and what was being held back) have gone unanswered.  Ex. H; email from D. Miller to C. Correll (June 20, 2014). Defendants' counsel, Mr. Correll has today, by email, promised a response to the June 20 email (Ex. P.).  Plaintiffs can wait no longer.

The Connor-Daus report  expressly cites to the McHugh and Kamath papers as "technical references."  Ex. C, at p. 47.  Without the underlying data for these papers, Plaintiffs are deprived of any meaningful ability to examine the basis for the conclusions stated in the two studies, or of the Connor-Daus opinions regarding the groundwater at Trial Site No. 10.

Honorable Shira A. Scheindlin
June 24, 2014
Page 4
_____

Defendants recognize that McHugh paper data sets are particularly important. These come from California's GeoTracker database, tracking information for over 10,000 leaking underground fuel tanks with less than 4,000 considered for detailed analysis.  The McHugh-Connor paper abstract states:

> *Overall, the evaluation of monitoring data shows a large decrease in groundwater concentrations of gasoline constituents.  For benzene, half of the sites showed a decrease in concentration of 85% or more.  For methyl tert-butyl ether (MTBE), this decrease was 96% and for TBE, 87%.*

Ex. I.

One of the main opinions in the Connor-Daus report is that the MTBE plume at or near Trial Site No. 10 "should increasingly be found to be in a stable or diminishing condition. " *See* Connor-Daus Report, April 7, 2014, Section 3.3, p. 16, (Ex. C).  Not surprisingly, the Report relies heavily on the McHugh-Connor paper:

> *McHugh et al. (2013) compiled data from over 4,000 UST sites from the California GeoTracker database to evaluate the overall trends of benzene, MTBE, and TBA concentrations in groundwater over time.  These monitoring data showed a large decrease in the groundwater concentrations of gasoline constituents over the period 2001 to 2011 (85% decrease for benzene, 96% for MTBE, and 87% for TBA), measured as the change in the median of the maximum site concentrations over time.  The study found that the temporary build-up and subsequent decrease in TBA concentrations could be closely matched by a sequential first-order degradation model, which accounted for the generation of TBA as a product of MTBE degradation, followed by the biodegradation of the TBA itself.*

*Id. (Ex. C).*

At  his deposition on June 12, 2014, Mr. Daus conceded that he considered the McHugh paper and that his joint report (with Connor) cited and relied on McHugh.  Daus Rough Draft Transcript, June 12, 2014 (Daus RT),  *RD*10:10 - *RD*11:3, pp  9-10 ( Ex. J).

When asked if the data set used in the McHugh paper ( the largest data set of which Mr. Daus was aware) supported the use of chemical oxidation or other technologies to remediate MTBE in groundwater, Mr. Daus testified, "I think you'd have to dive deeper into this site and the data [of the McHugh Study] and the comparison of different technologies against each other, and they didn't do that, at least not that I can tell, in a detailed way looking at the actual mitigation method." Daus RT, *RD*174:23 -*RD*175:15, p. 148 ( Ex. J).  Plaintiffs, too, want to dive

Honorable Shira A. Scheindlin
June 24, 2014
Page 5

into that data, to test the validity of the Connor-Daus opinions.

There is enormous overlap between the main conclusions of these papers and the Connor-Daus opinions regarding Trial Site # 10:

**McDade, Connor, et al.:** "The results of this study confirm that MTBE plumes, like BTEX plumes, diminish significantly over time due to natural attenuation." (Abstract and excerpts at Ex.K).

**Kamath, Connor, et al.:** "In summary, in terms of plume stability, MTBE plumes closely match the behavior of benzene plumes, with the vast majority of the MTBE plumes investigated (>90%) being in a stable or diminishing condition."(Abstract and excerpts at Ex. L.).

**McHugh, Connor, et al.:** " The effectiveness of MNA as remediation technology could not be directly evaluated . . . However, an earlier study based on a more detailed evaluation of a smaller number of sites found no significant difference in attenuation rates between MNA [monitored natural attenuation or biodegradation] sites and sites with active groundwater remedies (Kamath, et al. 2011). (Abstract and excerpts at Ex. I, p. 8)

**CONNOR-DAUS EXPERT REPORT:** "[S]urveys across the nation show that over 80% of both benzene and MTBE plumes are presently stable, diminishing in size and concentration, or are exhausted (Ex. C, at p. 14)" and  "MTBE plumes should increasingly be found to be in a stable or diminishing condition with time." *Id.*

Analysis of the data behind the three articles (two of which were funded by the American Petroleum Institute) may or may not support the optimistic conclusions stated.  Only with the data can the soundness of these Connor-Daus opinions be explored and the strength of Plaintiffs' experts' opinions be tested.

## Plaintiffs' Document Requests

Defendants argue that although Chevron's experts cited the papers that relied upon these materials, Chevron's experts did not rely upon the underlying data, but only on the papers themselves.  If all an expert needs to do to avoid cross-examination is to publish his work product, and claim the supporting data are not important to his opinions, then  no meaningful discovery will occur. In other words, Chevron's experts want to be able to rely upon the self-serving conclusions of the papers they coauthored but without having to tackle tough questions about the information behind the conclusions.  Case Management Order #112 requires that reliance materials and experts' work specifically requested be produced. Ex. A. Plaintiffs have, in their letters and in their requests for production, been very specific.

Honorable Shira A. Scheindlin
June 24, 2014
Page 6

_____

      Plaintiffs' proper demands for the data behind the published McHugh and Kamath papers, by specific document requests in the deposition notices of John Connor ( Ex. M) and Anthony Daus (Ex. N), are Requests 24 - 30.  CMO #112 allows requests for production of "Reliance Materials" as defined in the Order, including the expert's work. Defendants, under Rule 26(a)(2)(B), must also produce "facts or data considered by the witness in forming [all opinions]."  Unless expert Connor disavows consideration of any of the data for the three papers he authored in forming any of Connor-Daus Trial Site #10 opinions, all the data behind Connor's articles must be produced. Such an assertion would not be credible: the Kamath and McHugh articles are discussed and cited in the Connor-Daus report.

      Defendants objected to the Daus document requests by citing to CMO #112.  Defendants' Resp. To Requests for Prod. (Daus) (June 6, 2014) (Ex. O).   Defendants, this morning served a response for the Connor requests making similar, if not identical objections. Ex. Q.  Regardless, under CMO # 112, Par. IV, all reliance materials were required to be served  within five business days after the disclosure of the experts' opinions, or by April 14, 2014.  The missing materials are long overdue.

      The missing data is voluminous, and receiving it on the eve of Mr. Connor's deposition will do Plaintiffs little good.  Plaintiffs respectfully request the data be provided now to assist with preparation for the conclusion of the Daus deposition, commenced on June 12, 2014.

      Plaintiffs request that Mr. John Connor be stricken as an expert witness for failure to cooperate with discovery, to wit, to provide all reliance materials and work,  and because his opinions duplicate those of Mr. Daus who cosigned the expert report.  Chevron had two hydrogeologists sign one report with completely overlapping opinions for a single gas station, Texaco #800, Trial Site #10.

      Plaintiffs request that this Court order production of the data, documents, including those specified in the notices of deposition of Connor and Daus, and work materials described in this motion within seven (7) days of the Court's Order so that Plaintiffs may conclude expert Daus' deposition.  Plaintiffs also request that the Court strike John Connor as an expert witness.  His opinions duplicate those of Mr. Daus.  Mr. Connor's, and Chevron's, failure to cooperate in discovery have now made a meaningful deposition impossible.

                        Respectfully submitted,

                        Duane Miller
                        Counsel for Commonwealth of Puerto Rico

cc: All Counsel via LNF&S