UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

Master File No. 1:00 - 1898
MDL 1358 (SAS)
M21-88

**This Document Relates to:**

*New Jersey Department of Environmental*
*Protection, et al. v. Atlantic Richfield Co., et al.*
No. 1:08-cv-00312-SAS

<u>CONFIDENTIAL</u>
<u>FILED UNDER SEAL BY ORDER OF THE COURT</u>

**PLAINTIFFS' MOTION TO ENFORCE WAIVER AND DECLASSIFICATION
PROVISIONS OF PROTECTIVE ORDERS**

As authorized by this Court on May 13, 2014, Plaintiffs hereby move, pursuant to the provisions of two protective orders, to declassify documents and data from The Hamner Institute (formerly the Chemical Industry Institute of Technology) ("**Hamner Data**") and Experimental Pathology Laboratories ("**EPL Data**"). Copies of the protective orders are attached as Exhibits 1 and 2. Plaintiffs file this Motion so that the Hamner and EPL Data can be provided to the United States Environmental Protection Agency (EPA) and other regulatory entities.

## I.   INTRODUCTION.

The Hamner Data undermines the reported conclusions of a study of the carcinogenic effects of MTBE on rats ("**Hamner Study**"). ████████████████

████████████████████████████████████

████████████████████████████████████

██

████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████

████████████████████████████████████

████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████

1



When defendants eventually provided the Study to EPA, they "[a]bsolutely" intended that EPA would "consider and rely on the [Study's] results in doing their assessment" of the "potential carcinogenicity" of MTBE. Declaration of Bryan Barnhart in Support of Plaintiffs' Motion to Enforce Protective Orders' Declassification Provisions ("**Barnhart Decl.**"), ¶ 5, Ex. 2 (p. 79). Defendants did not, however, provide the EPA with the Hamner Data that is the subject of this Motion.

Before filing this Motion plaintiffs sought Hamner and EPL's voluntary agreement to declassify the Hamner Data. Both Hamner and EPL refused.[1] Plaintiffs are filing this Motion so that they can provide the Hamner and EPL Data to EPA and other regulatory agencies. As this Court recognized at the pre-Motion hearing – the "EPA doesn't know what it doesn't have." Barnhart Decl., ¶ 2.

---

[1] At the May 13th hearing – based on a representation by EPL's counsel – Plaintiffs told this Court that they expected to dissolve the EPL protective order by stipulation. After the hearing, however, EPL declined to so stipulate. Barnhart Decl., ¶ 4. Plaintiffs filed this Motion two days after completing their compliance with the protective orders' meet-and-confer requirements. Barnhart Decl., ¶ 3, Exh. 1.

2



Dr. Stine – the Chevron toxicologist (and defense expert witness) who oversaw the Hamner Study – recently testified that it is his "personal and professional opinion that [a] pathology working group should be assembled and requested by the appropriate regulatory authority." *Id.*, ¶ 5, Exh. 2 (p. 96). In fact, Dr. Stine explained, the Hamner Data was preserved precisely "so any other scientist or academician or regulatory agency can come and review the data, come to their own conclusions. And in the case of a regulatory agency, they can make whatever appropriate conclusions they feel are appropriate relative to whether or not exposure to MTBE at very high doses in rodents causes cancer." *Id.* (pp. 93-94). Hamner, EPL, and defendants (collectively, **"Hamner Parties"**) have not refuted Dr. Stine's statements or provided any substantive reason for continuing to treat the Hamner Data as confidential. See Barnhart Decl., ¶ 3, Exh. 1.

It is the public – not Plaintiffs' litigation – that will benefit from declassifying this Data.[2] Plaintiffs are already free to use the Hamner Data in the litigation. See Exhibits 1 and 2 hereto. Regulators and the public should also be allowed to see and analyze the Data.

---

[2] Plaintiffs' cases may or may not benefit from EPA's response to the Hamner Data.

## II.    FACTS.

The Hamner Parties performed the Study with the intent of giving it to the EPA.  Barnhart

Decl., ¶¶ and 5, Exh. 2 (p. 75).  Hamner originally did not want to publicly disclose the Hamner

Data until after its final report was published.  That report, however, was published in December

2010.  EPL originally claimed that it was barred from disclosing its Data by a confidentiality

agreement.  That agreement, however, expired in December 2012.

### A.    The Hamner Data Is Relevant To Evaluating The Hamner Study's Reported Conclusions.



4







*Id.*





**B.    Defendants Have Stated That The Hamner Data Was Preserved Specifically So That It Can Be Provided To Regulatory Agencies.**

At a deposition on May 9, 2014, Chevron's toxicologist Dr. Eric Stine, one of the main supervisors of the Hamner Study, testified that the Hamner Study team preserved the Hamner Data <u>because</u> they wanted that Data available for the "EPA or any other governmental organization to review them." Barnhart Decl., ¶ 5, Exh. 2. Dr. Stine also testified that – in his "personal and professional opinion" – the Hamner Data "should be" reviewed by a "pathology working group [that is] assembled and requested by the appropriate regulatory authority." *Id.*

Dr. Stine was a leading member of the Hamner Study team. He was defendant Chevron's representative on the Study's Toxicology Committee, and he currently serves as the technical team leader for Chevron's Environmental Risk Assessment Team. *Id.,* ¶¶ 5 and 10, Exh. 2 (pp. 9-10 and 14). In this litigation, Chevron has designated Dr. Stine as its defense expert on, "among other things, the toxicological and health aspects of MTBE and the state and sufficiency

9

of Defendants' knowledge about those issues during the relevant time period; Defendants' participation in studies related to MTBE;" and "the current state of science concerning the toxicity of MTBE." *Id.*, ¶ 10.

During his May 9th deposition, Dr. Stine testified that it was the Hamner Study team's "intent all along that [their] data be provided to the EPA," and that they "Absolutely" wanted the EP "to consider and rely on the [Study's] results in doing their assessment" of the "potential carcinogenicity" of MTBE. *Id.* ¶ 5, Exh. 2 (pp. 75, 79-80). Dr. Stine made it crystal clear that "if EPA or NTP, or any other organization decides that it's appropriate to have a pathology working group review or data, we would welcome it." *Id.* ¶ 5, Exh. 2 (p. 87). When asked specifically about Hamner Data, Dr. Stine said that he "[c]ertainly" would "welcome" EPA's review. *Id.*

> [T]he fact that the [Hamner] study authors and the expert panel came to the conclusions they did, certain does not preclude other – other organizations or agencies who might review the data from coming to their own conclusions. Again, under good laboratory practices, virtually all of the data and study records related to the study are stored. The plan is to store them for a minimum of ten years so any other scientist or academician or regulatory agency can come and review the data, come to their own conclusions. And in the case of a regulatory agency, they can make whatever appropriate conclusions they feel are appropriate relative to whether or not exposure to MTBE at very high doses in rodents causes cancer.

*Id.* (p. 93-94.)

Dr. Stine specifically agreed that he would "welcome" EPA's review of emails discussing discrepancies in the opinions of the Study team. *Id.* (p. 87).

Dr. Stine also opined that it should be non-industry actors who "pursue" the appointment of a Pathology Working Group:

10

>It's my personal and professional opinion that that pathology working group
>should be assembled and requested by the appropriate regulatory authority.  If the
>companies were to fund or otherwise pursue a pathology working group . . . others
>would view that as us trying to influence the results of the study or the results of
>the interpretation.  We would welcome a pathology working group.

*Id.* (p. 96).

Despite Dr. Stine's statements, neither Hamner nor EPL will authorize plaintiffs to

provide the Hamner Data to EPA or any regulatory agency.  No Hamner Party has provided a

substantive reason for withholding the Data from EPA, or explained how EPA can take

advantage of procedures in protective orders that it does not know about, in order to obtain Data

that the Hamner Parties refuse to disclose. As this Court concisely put it – "EPA doesn't know

what it doesn't have."  *Id.*, ¶ 2.

### III.   **ARGUMENT.**

Under the protective orders' waiver provisions, Hamner Data that are used as exhibits to

deposition transcripts are automatically declassified, unless the Hamner Parties comply with

specific procedures that are set forth in the orders.  See Exhibits 1 and 2 hereto.  No Hamner

Party followed those procedures as to Hamner Data documents that are made exhibits to the

depositions of Dr. Darol Dodd of the Hamner Institute, and of EPL's Gabrielle Willson.[7]

Barnhart Decl., ¶¶ 3, 7, and 11, Exh. 1 and 4.

Plaintiffs ask the Court to declassify the rest of the Hamner Data under the protective

orders' declassification provisions.  These provisions do not impose any time limitations on

Plaintiffs' rights to move for declassification, nor do they require Plaintiff s to limit their

---

[7] Although these documents are clearly no longer confidential under the terms of the
protective orders, in an abundance of caution plaintiffs seek this Court's authorization before
producing these declassified exhibits to the EPA.

confidentiality challenges to a certain number of documents or pages. Plaintiffs have complied with the provisions' procedural requirements. *Id.*, ¶ 3, Exh. 2.

Because the "highly relevant" Hamner Data "carries a presumption of admissibility," defendants bear the burden of proving that the Data should remain confidential. *In re Fosamax Products Liability Litigation*, No. 06 Civ. 1789, 2009 WL 2395899, *2 ("the burden of proof for a Rule 26c) order rests with the party seeking protection"); see also Exhibit 2 hereto ("This Order does not affect the burden of proof which remains with the party seeking the confidential designation.").

The Hamner Parties cannot carry this burden here.

### A.   The Exhibits To The Depositions Of Dr. Dodd And Dr. Willson Already Are Declassified Under The Terms Of The Protective Orders.

Both protective orders contain provisions that automatically declassify documents that are used at deposition, unless a party seeking confidentiality follows the specific requirements that are set out in sections 6 (Hamner) and H.b. (EPL) of the orders (see Exhibits1 and 2). Unless a party's counsel either requests on the record that such documents be marked confidential, or requests confidentiality within thirty (Hamner) or ten (EPL) days after receiving the transcript of the Court reporter, the documents are no longer to be treated as confidential. The same rules apply to testimony that a party considers confidential. Post-deposition confidentiality requests must be made in writing to the Court reporter, and the party seeking confidentiality must notify all other counsel to this MDL 1358. If these procedures are not followed, then all confidentiality claims are waived as to the deposition exhibits, and as to all testimony relating to those exhibits.

The waiver provision in the EPL Order (Exhibit 2 hereto) states in relevant part:

In the case of depositions upon oral examination, if counsel for a party has a reasonable and good faith belief that any question or answer contains or refers to Confidential Documents, counsel may state on the record, and request that all pages that include such Confidential Documents be marked "CONFIDENTIAL." . . . In addition to designating, during the deposition, any question or answer as "CONFIDENTIAL," counsel may designate any portion of the deposition transcript as a Confidential Document at any time within ten (10) Days of receiving the deposition transcript from the court reporter. Notice of such designation shall be made in writing to the court reporter, with copies to all counsel in This Action, specifying the portion(s) of the transcript and exhibits that constitute or contain Confidential Documents. Until expiration of the ten (10) Day period described above, all depositions shall be considered and treated as though containing Confidential Documents, unless otherwise agreed on the record at the deposition.

The waiver provision in the Hamner Order (Exhibit 1 hereto) reads in relevant part:

[6](c)   Parties and deponents may, within (thirty) 30 days after receiving a deposition transcript, designate pages of the transcript, and exhibits thereto which pertain specifically to the discussion and/or disclosure of the subject Documents, as confidential. Confidential information within the deposition transcript may be designated by underlining the portions of the pages that are confidential and stamping such pages: "HAMNER-CONFIDENTIAL." Until expiration of the thirty (30) day period, the entire deposition will be treated as subject to protection against disclosure under this Order. Parties and deponents, through their respective counsel, shall notify in writing all opposing counsel of the pages and exhibits which they have designated confidential information. If no party or deponent timely designates confidential information in a deposition, then none of the transcript or its exhibits will be treated as confidential. (Emphasis added.)

In July of 2012, Dr. Dodd and Dr. Willson were deposed in the offices of Hamner's counsel, Parker Poe. At the time of the depositions, Dr. Dodd was an employee of Hamner, and Dr. Willson was an employee of EPL. Hamner's attorney represented Dr. Dodd. EPL's attorney represented Dr. Willson. No one designated any testimony or exhibit as confidential on the record during either deposition. Sealed Barnhart Decl., ¶ 7, Exh. 6.

The court reporter subsequently provided copies of the deposition transcripts to Hamner's and EPL's attorneys. Barnhart Decl., ¶ 7, Exh. 4. Both Dr. Dodd and Dr. Willson sent back

Errata sheets.  No party, however, designated any deposition testimony or deposition exhibits as confidential according to the protective orders' governing provisions.  *Id.*, ¶¶ 7 and 11, Exh. 4. Under the protective order's plain language, therefore, the Hamner Parties have waived all confidentiality claims as to the exhibits to, and the testimony in, the transcripts of the depositions of Dr. Dodd and Dr. Willson.

**B.      The Hamner Parties Cannot Carry Their Burden To Overcome The Federal Rules' "Presumption Of Admissibility."**

As this Court already has held, the Hamner Data is "highly relevant" to "the potential dangers of MTBE in general, and more specifically, the levels of exposure at which MTBE is dangerous." *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 269 F.R.D. 360, 364 (S.D.N.Y. 2010).  The Hamner Parties cannot carry their burden to prove that secrecy is necessary to accomplish "an important or substantial government interest unrelated to the suppression of expression," and that "undue hardships outweigh necessity." *Seattle Times Co. V. Rhinehart*, 467 U.S. 20, 32, 37 (1984); *In re Fosamax Products Liability Litigation*, No. 06 Civ. 1789, 2009 WL 2395899, *2.  Indeed, Hamner Study team member (and defense expert) Dr. Stine's testified that the Hamner Study team preserved the Hamner Data precisely "so any other scientist or academician or regulatory agency can come and review the data, come to their own conclusions."  Barnhart Decl., ¶ 5, Exh. 2.  Plaintiffs, on the other hand, have a "compelling need" to serve the public interest by providing the the Hamner Data to the EPA and other regulators.

**1.      Legal Standard – The Burden Is On The Hamner Parties To Overcome Rule 26(c)'s "Presumption Of Admissibity."**

The Hamner Parties' confidentiality claims are governed by Rule 26(c) of the Federal

14

Rules of Civil Procedure. *Fosamax*, 2009 WL 2395899 at *2; *In re MTBE*, 269 F.R.D. 360 (following *Fosamax*). "Because relevant evidence carries a presumption of admissibility, the burden of proof for a Rule 26(c) order rests with the party seeking protection." *Id.* A protective order can issue only to protect "an important or substantial government interest unrelated to the suppression of expression," and where "the court finds that undue hardships outweigh necessity." *Seattle Times*, 467 U.S. at 37; *Fosamax*, WL 2395899 at *2. The scope of a protective order, furthermore, can be "no greater than is necessary or essential to the protection of the particular governmental interest involved." *Seattle Times*, 467 U.S. at 32, 37-38.

Nothing in the Hamner order relieves Hamner of its Rule 26(c) burden. The EPL order expressly recognizes that it "does not affect the burden of proof which remains with the party seeking confidential designation." See Exhibit 2 hereto at p. 8.

### 2. Plaintiffs Have A "Compelling Need" To Provide The Hamner Data To Regulatory Agencies And The Public.

Plaintiffs do not bring this Motion to gain any direct litigation advantage. Plaintiffs already have the Hamner Data. Plaintiffs' experts already have used that Data in forming their opinions. See, e.g., Sealed Barnhart Decl., ¶ 4, Exh. 3. And the existing Orders already allow Plaintiffs to use the Hamner Data at trial (although the Orders do require the Trial Courts to jump through burdensome hoops). See Exhibit 1 hereto, § 7. Indeed – as shown above – the Dodd and Willson deposition exhibits that will be most crucial to Plaintiffs' presentation to the jury already are declassified under the protective orders' terms.

The Hamner Data's importance, however, is not limited to this case. Plaintiffs are – first and foremost – "government agencies charged with protecting groundwater used to supply the

public with drinking water." *In re MTBE*, 269 F.R.D. at 364. And MTBE-contaminated

groundwater is a nationwide public-health hazard. To perform its regulatory function, the EPA

needs <u>all</u> relevant information – including the Hamner Data. The Hamner Study is one of only a

handful of studies of the link between MTBE exposure and cancer. Sealed Barnhart Decl., ¶ 4,

Exh. 3 (p. 5). ██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████

    Because of the protective orders, EPA does not know to ask for the Hamner Data. Even

if the EPA did know about the Data, furthermore, Plaintiffs question whether the EPA could

devote the resources that would be necessary to chase down the data that the EPA most needs to

see. It took Plaintiffs almost three years of persistent efforts to extract the Hamner Data from the

Hamner Parties. Now that plaintiffs have that Data assembled, however, they could hand it over

to the EPA today. There simply is no reason to require the EPA to slog through the same

arduous process that the Hamner Parties put Plaintiffs through. This Court should declassify the

Hamner Data pursuant to the protective order's provisions, so the EPA and the public can benefit

from the Hamner Data.

      **3.    <u>The Protective Orders Already Have Served Their Purposes.</u>**

    The Court and Plaintiffs only intended the Protective Orders to temporarily delay public

disclosure to address Hamner's and EPL's short-term concerns. Those short-term concerns have

now been resolved. As this Court noted when it initially granted the Hamner Protective Order:

> However, the Hamner Institute (at least with respect to its requested protective
> order) is not seeking to prevent [Plaintiffs] from gaining access to this information
> forever. Instead, the Institute has indicated that it is willing to provide documents

relating to the study when that study is completed, which will occur within the
next four months. The real question, therefore, is whether [Plaintiff] need to
receive this information immediately.

*In re MTBE*, 269 F.R.D. at 364. Similarly, EPL's Motion to Quash represented that EPL was

bound by a five-year Confidentiality Agreement that prohibited disclosure of its Hamner Data.

Barnhart Decl., ¶ 6, Exh. 3. That agreement expired, however, in December 2012. *Id.*

Although Hamner and EPL continue to assert that the Hamner Data is the confidential

work product of "independent institutions" (*Id.*, ¶ 3, Exh. 2), this Court already has held that the

Hamner cannot reasonably have expected its Data would remain confidential:

> The study at issue was commissioned by a company that has been heavily
> involved as a defendant in a MDL focusing on the chemical product being tested.
> ExxonMobil has already turned over a series of internal ExxonMobil
> communications as well as communications between the Hamner Institute and
> ExxonMobil [that] establish that ExxonMobil [was] actively involved in the
> study. . . . While it is necessary to ensure that the values of academic freedom are
> protected, the Hamner Institute, by virtue of its connection to ExxonMobil, is not
> entitled to the same level of protection ordinarily accorded to non-party research
> institutions. **The Institute commenced its MTBE study with the knowledge
> that ExxonMobil was a defendant in this MDL and that the study was likely
> to play a role in this litigation. It cannot therefore claim that it was unaware
> that its results would be scrutinized by the plaintiffs who are now seeking
> information relating to the study.**

*In re MTBE*, 269 F.R.D. at 364, 365 (emphasis added).

This Court's rejection of Hamner's claim that it had a reasonable expectation of

confidentiality applies with equal force to EPL. It also is consistent with Dr. Stine's testimony

that the Hamner Study team preserved their work for analysis by other scientists, and with Dr.

Willson's written request for third-party review by a Pathology Working Group.

### 4.   The Hamner Parties Do Not Have Any "Important Or Substantial Governing Interest" Or "Undue Hardship" That Justifies Withholding The Hamner Data From Regulatory Agencies.

When this Court first granted Hamner's request for a Protective Order, it relied on *Fosamax*. At that time, neither the Court nor Plaintiffs had any way of knowing whether the Hamner Data would be the type of information that the *Fosamax* Court would treat as confidential. Now that the Hamner Parties have produced the Data, however, it is clear that the Data is not the type of data that the *Fosamax* Court would treat as confidential.

In *Fosamax,* the Court quashed a deposition subpoena to Dr. Psaty – a member of the National Academy of Science's Drug Safety Committee – where:

1)      The Drug Safety Committee "did not study Fosamax," the drug that was the subject of the litigation.

2)      The plaintiffs need for Dr. Psaty's testimony was "virtually nil," because all of the information that they sought from Dr. Patsy already was publicly available, and was, "[a]t best, . . . tangentially related to the plaintiffs' allegations."

3)      "Personal hardship would [have resulted] if he [had been] compelled to testify."

4)      Dr. Psaty had "no interest in the litigation," he served on the Drug Safety Committee "knowing that, like all Committee members, he would not be compensated for his work," and the Academy had "assured" Dr. Psaty that his "research and reviews [would be] confidential."

5)      The Academy was "a private, non-profit corporation chartered by Congress" that was "dedicated to furthering science, the general welfare, and public health."

6)      Requiring Dr. Psaty to testify would have harmed the public interest because "it

18

would [have] handicap[ped] the Academy's ability to recruit participants," and might chill "the candor of its committee members to ensure the free exchange of ideas paramount to producing the best reports."

*Foxamax*, 2009 WL 2395899 at **1-5.

Here, in contrast:

1)    Hamner and EPL did study MTBE, very the chemical that is at the heart of this litigation.

2)    The Hamner Data is not publicly available, and Plaintiffs need to provide the critical Data to the EPA is central to Plaintiffs' public-health missions.

3)    Plaintiffs' production of the Hamner Data to the EPA will not cause any Hamner Party to suffer any hardship. The Data-gathering and -production process already is complete – Plaintiffs will take responsibility for placing the Data into the EPA's hands.

4)    Hamner and EPL cannot reasonably have expected that their work product would remain secret. See *In re MTBE*, 269 F.R.D. at 364, 365; see also Barnhart Decl., ¶ 5, Exh. 2.

5)    Neither Hamner nor EPL was created by Congress to serve the public interest. Rather, Hamner was created by the petroleum companies – three of which are defendants here – to counter "[a]larming reports about chemical pollution." Axline Decl., ¶ 4.

6)    There is no evidence that declassifying the Hamner Data now will harm the public interest, will make it more difficult for the petroleum industry to recruit scientists, or will chill anyone's candor or discourage anyone from producing the best reports. To the contrary, Hamner Study team member Dr. Stine testified last month that he would "welcome" third-party review. Barnhart Decl., ¶ 5, Exh. 2 (p. 87).

19

**C.**   **Declassification Will Avoid Overburdening Trial Courts With Unnecessary Procedures.**

Plaintiffs will use the Hamner Data extensively to cross-examine defense experts and witnesses on the stand.  Once they have been admitted into evidence, the Hamner Data will become judicial documents to which the public will have the right of access.  *SEC v. TheStreet.Com*, 273 F.3d 222, 232 (2d Cir. 2001) ("the 'public has an "especially strong" right of access to evidence introduced in trials.'").

The Hamner Parties' refusal to declassify the Hamner Data now, however, does prejudice two important constituencies.  First, by slowing the EPA's ultimate reaction to the Hamner Data, the Hamner Parties continue to risk the health of the water-drinking public.

Second, maintaining the Hamner Data's confidentiality will impose onerous and unnecessary procedural burdens on every Trial Court that tries a case coming out of this MDL.  The Hamner Parties never have articulated any rationale for keeping the Hamner Data from the jury.  Indeed – as demonstrated above – the only specific reasons that the Hamner Parties ever have offered to support their request for Protective Orders no longer apply.

20

## V.    CONCLUSION.

Defendants represented to the EPA that Hamner's and EPL's scientists had found no significant correlation between MTBE and cancer in rats. ▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ There is no legally or morally defensible reason to keep the Hamner Data from the EPA and other regulatory agencies.   Accordingly, plaintiffs respectfully request that the Court grant this Motion and declassify the Hamner Data.

Dated: July 2, 2014

MICHAEL AXLINE, State Bar # 229840
BRYAN BARNHART
Attorneys for Plaintiffs
Miller & Axline
A Professional Corporation
1050 Fulton Avenue, Suite 100
Sacramento, CA  95825-4225
Telephone:  (916) 488-6688
Facsimile:  (916) 488-4288

21

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Civil Action No. 07-CV-9453 (SAS)

| | |
|---|---|
| CRESCENTA VALLEY WATER DISTRICT, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| EXXON MOBIL CORPORATION, et al., | ) ) ) ) |
| Defendants | ) ) ) |

STIPULATION AND PROTECTIVE ORDER
RELATING TO DOCUMENTS AND
DEPOSITION TESTIMONY PRODUCED BY
THE HAMNER INSTITUTES FOR HEALTH
SCIENCES

WHEREAS, Plaintiff has sought, through multiple subpoenas, the production of documents, raw data and deposition testimony from The Hamner Institutes for Health Sciences ("The Hamner");

WHEREAS, The Hamner is not a party to this proceeding;

WHEREAS, such documents, raw data and/or deposition testimony contain scientific and research information related to a 2-year chronic bioassay performed by The Hamner regarding the carcinogenic potential of methyl tertiary butyl ether ("MTBE") when administered in drinking water to rats;

WHEREAS, The Hamner has objected to and moved to quash Plaintiff's subpoenas and the Court has ordered production of certain specific documents and raw data and allowed the deposition of Dr. Darol Dodd;

WHEREAS, it has been ordered by the Court, that a Protective Order preserving the confidentiality of The Hamner's documents, raw data and deposition testimony should be entered by the Court;

WHEREAS, the parties have agreed on the terms of this Protective Order; and

WHEREAS, the Court has reviewed the terms and conditions of the Protective Order submitted and stipulated to by the parties, and has found that good cause exists to preserve the confidentiality of these documents;

IT IS HEREBY ORDERED AS FOLLOWS:

1.     **Production.** Pursuant to the Court's Order of August 19, 2010, the Hamner will produce all raw data from the MTBE 2-year chronic bioassay study, its final report (upon

PPAB 1723048v3

completion) and relevant, non-privileged e-mail communications between ExxonMobil and The Hamner regarding the 2-year chronic bioassay MTBE study.

2.    **Copies and Costs of Production.** If any party to this litigation requests copies of documents from The Hamner that cannot be produced at a nominal cost to The Hamner, the requesting party shall bear the cost of the copies. The fee is intended and construed only as payment for reproduction, and shall not result in any transfer of ownership of the reproduced records. The requesting party further agrees to pay The Hamner for all costs and expenses (both past and future) incurred by The Hamner in producing the Documents to the requesting party, including the cost of employee time, administrative expenses, and reasonable attorneys' fees incurred in the retrieval, identification, and review of the Documents to be produced. If the requesting party disputes the amount of costs or fees claimed by The Hamner for producing Documents, the Documents shall be produced, and shall not be withheld, pending resolution of the dispute.

3.    **Non-Disclosure of Documents.** No document, e-mail communication, or raw data, or any portion thereof, produced by The Hamner in any form (such documents, e-mails, and raw data are collectively referred to as "Document" or "Documents" herein), may be disclosed to any person, except as permitted in Paragraphs 4, 5, and 13 below.

Documents, CDs, and/or DVDs produced by The Hamner shall be stamped "HAMNER-CONFIDENTIAL" to signify they are subject to protection by this Order. Interrogatory answers, responses to Requests for Admission, deposition transcripts and exhibits, pleadings, motions, affidavits, briefs, summaries, notes, computer-generated material, computer discs or retrievable data, other means of storage or duplication and oral statements or communications that quote, summarize or contain information from the Documents are subject to protection by this Order.

4.    **Disclosure of Documents to Counsel and Parties.** The Documents and/or any portion of any Document deemed confidential may be disclosed to (a) outside counsel for the plaintiffs in the above-styled action who are actively engaged in the conduct of this litigation; (b) outside counsel for defendants in the above-styled action who are actively engaged in the conduct of this litigation; (c) in-house counsel for plaintiffs or defendants in the above-styled action; (d) outside or in-house counsel of record who are actively engaged in the conduct of other MTBE matters, which have been consolidated by the Judicial Panel on Multi-District Litigation ("JPML") as a part of the MDL 1358 proceedings, provided that all such counsel agree prior to production to execute this Protective Order and agree to be bound by its terms, including those in Paragraph 2 above, as necessary; (e) to the partners, associates, secretaries, paralegals, and employees of such outside counsel to the extent reasonably necessary to render professional services in the above-styled action; (f) employees and officers of plaintiff with a need to know; (g) employees and officers of defendants with a need to know; and (h) the Court and Court personnel.

5.    **Disclosure of Documents to Witnesses, Consultants, and Experts.** The Documents and/or any portion of any Document deemed confidential may be disclosed to (a) persons noticed for depositions or designated as trial witnesses to the extent reasonably necessary in preparing to testify; and (b) to outside consultants or experts retained by plaintiff,

defendants or their counsel for the purpose of assisting counsel in the litigation or to testify at trial; provided, however, that any individual to whom disclosure is to be made has signed the Confidentiality Agreement, attached to this Order, containing a statement that the signatory has read and understands this Order, understands that disclosure of Documents constitutes contempt of court, and consents to the exercise of personal jurisdiction by this Court.  A copy of each signed Confidentiality Agreement shall be served upon The Hamner's counsel, William G. Pappas (telephone: 919-890-4164; facsimile: 919-834-4564; email: billpappas@parkerpoe.com).

6.    Documents at Depositions.

(a)    A deponent who is a current employee of The Hamner may, during deposition, be shown and examined about the Documents.

(b)    A deponent who is not a current employee of The Hamner may, during deposition, be shown and examined about the Documents if the provisions of Paragraphs 4 and 5 are complied with.  Deponents shall not retain or copy portions of the transcript of their depositions that contain confidential information not provided by them or the entities they represent unless they sign the Confidentiality Agreement and applicable Affidavit.

(c)    Parties and deponents may, within (thirty) 30 days after receiving a deposition transcript, designate pages of the transcript, and exhibits thereto which pertain specifically to the discussion and/or disclosure of the subject Documents, as confidential. Confidential information within the deposition transcript may be designated by underlining the portions of the pages that are confidential and stamping such pages: "HAMNER-CONFIDENTIAL."  Until expiration of the thirty (30) day period, the entire deposition will be treated as subject to protection against disclosure under this Order.  Parties and deponents, through their respective counsel, shall notify in writing all opposing counsel of the pages and exhibits which they have designated confidential information.  If no party or deponent timely designates confidential information in a deposition, then none of the transcript or its exhibits will be treated as confidential.  If a timely designation is made, the stamped pages and exhibits shall be treated like a Confidential Document under this Order.  If there is uncertainty or a dispute as to whether the pages and/or exhibits have been properly designated as confidential information, any party may seek a ruling from the Court.

7.    Documents in Court.  The Documents and deposition testimony may be offered in evidence at trial or any court hearing which may take place in any case presently consolidated by the JPML as part of MDL 1358, including any case remanded by the MDL 1358 judge to another court for purposes of trial.  Any party that reasonably believes it will disclose confidential Documents at any such proceeding before the relevant Court shall so inform the Court and The Hamner at least forty-eight (48) hours in advance of actual disclosure so that the Court can decide what precautions, if any, are appropriate to protect the confidential Documents, including (i) how exhibits containing confidential information should be introduced at the proceeding in order to maintain their confidentiality, (ii) how any references to those exhibits or other confidential information should be made on the record, (iii) how witnesses should be instructed on their confidentiality obligations, (iv) whether persons who are not authorized to receive confidential information should be excluded from those portions of the proceeding that

3

concern such information, and (v) how the pertinent portions of a transcript of the proceeding should be designated.

    **8.**    **Declassification.** Plaintiff or defendants may request from the MDL 1358 Court a ruling that a Document or deposition testimony is not entitled to continued protection under this Order. Any such challenges shall follow the following procedure:

        (a)    If a party reasonably believes that the information produced in this litigation should not have been designated as "Confidential", it must notify counsel for The Hamner, in writing, of the basis for its challenge to the claim. A copy of said notification shall also be provided to plaintiffs' and defendants' designated Liaison Counsel for the MDL 1358 proceedings.

        (b)    Counsel for The Hamner must respond in writing within ten (10) business days of receipt of said written challenge, unless that time is extended by court order or agreement of the parties.

        (c)    Counsel for the objecting party and The Hamner shall then promptly confer to attempt to resolve the dispute.

        (d)    If the parties cannot resolve the dispute, the objecting party has ten (10) business days after the parties fail to resolve to dispute to file a written motion with the court objecting to the designation.

        (e)    The confidentiality designation shall remain in effect unless and until the Court rules that the information is not confidential.

    **9.**    **Subpoena by Other Courts or Agencies.** If another court or an administrative agency subpoenas or orders production of the Documents which plaintiff or defendants have obtained under the terms of this Order, plaintiff or defendants shall promptly notify The Hamner's counsel of the pendency of such subpoena or order. In the event that a subpoena, demand or request purports to require production of such confidential Documents on less than five (5) days notice, the party to whom the subpoena, demand or request is directed shall give immediate telephonic and electronic notice to counsel for The Hamner, William G. Pappas (telephone: 919-890-4164; facsimile: 919-834-4564; email: billpappas@parkerpoe.com), and forthwith send a copy of the subpoena, demand or request to counsel for The Hamner via facsimile or electronic mail.

    **10.**    **Filing.** The Documents are not to be filed with the Clerk of the Court. If the Documents need to be referenced or utilized in any way by the parties and/or the Court in connection with motions, briefs or other matters pending before the Court, the relevant documents will be hand-delivered to the presiding Judge, under seal, and promptly returned upon resolution of the pending matter.

    **11.**    **Client Consultation.** Nothing in this Order shall prevent or otherwise restrict counsel for plaintiffs or defendants from rendering advice to, or consulting with, their clients. However, plaintiffs and defendants are bound by the terms of this Order and shall not disclose the Documents.

12.    **Use.** The Documents, deposition testimony, and information contained in the Documents shall be used only for preparation and trial of the above-styled action, including appeals and retrials. Persons described in and/or encompassed by this Order shall not, under any circumstances, sell, offer for sale, advertise, publicize, publish or use in any manner for competitive purposes the protected Documents and/or confidential information contained therein. All persons described in and/or encompassed by this Order shall not, under any circumstances, change, delete, or otherwise alter the raw data.

However, nothing herein shall prevent The Hamner or any sponsor of the 2-year chronic bioassay study from publishing or otherwise releasing the Final Report or any other information related to the study.

13.    **Public.** Any information that is produced pursuant to this Protective Order that is subsequently released by The Hamner or a study sponsor, so that the information becomes publicly available, shall thereafter be available for use without the constraints of this Protective Order.

14.    **Non-Termination.** The provisions of this Order shall not terminate at the conclusion of this action. Within thirty (30) days after final conclusion of all aspects of the last MDL 1358 lawsuit, the Documents and all copies of them (other than exhibits of record) shall be returned to counsel for The Hamner, or destroyed. Notes, summaries, memos, computer data bases and other information compilations from the Documents shall be destroyed. Plaintiff, plaintiff's counsel, defendants, and defendants' counsel shall make certification of compliance herewith and shall deliver the same to counsel for The Hamner not more than forty-five (45) days after final termination of the last MDL 1358 lawsuit.

15.    **Prior Agreements.** The restrictions set forth in this Order supplement any restrictions set forth in other agreements between the parties. Nothing in this Order relieves any party from any of its obligations pursuant to prior agreements and/or court orders. The parties may execute this Order in any number of counterparts and signature delivered by facsimile or email constitutes an original signature.

Duane C. Miller
Miller, Axline & Sawyer
1050 Fulton Avenue, Suite 100
Sacramento, CA  95825-4225

James C. Thornton
Parker Poe Adams & Bernstein LLP
1400 Wachovia Capitol Center
150 Fayetteville Street
P.O. Box 389
Raleigh, NC  27602-0389

5

IT IS SO ORDERED:

The Honorable Shira A. Scheindlin
United States District Court Judge

Date: _____9/29/10_____

6

# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: Methyl Tertiary Butyl Ether ("MTBE")<br>Products Liability Litigation | | MDL No. 1358 |
| New Jersey Dept. of Environmental<br>Protection, *et al.* | ) | |
| Plaintiffs, | )<br>)<br>) | Civil Action No.:<br>08 Civ. 00312(SAS); MDL 1358 |
| v. | )<br>) | Master File C.A. No. 1:00-1898 (SAS) |
| Atlantic Richfield Co., *et al.* | )<br>) | |
| Defendants. | ) | |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/31/11

## CONFIDENTIALITY AGREEMENT & PROTECTIVE ORDER

WHEREAS, Plaintiffs have sought, through a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action ("Subpoena"), the production of documents, preliminary data, and draft narratives from Experimental Pathology Laboratories, Inc. ("EPL");

WHEREAS, EPL is not a party to this litigation;

WHEREAS, EPL objected to and moved to quash the Subpoena; and

WHEREAS, Plaintiffs and EPL have agreed on the terms of this Confidentiality Agreement and Protective Order ("Order");

IT IS HEREBY STIPULATED AND AGREED by the parties hereto, including parties who sign Exhibit A, that with respect to Documents Produced or Disclosed by EPL, the following terms, conditions, and restrictions shall govern:

I.    **DEFINITIONS**

    A.    <u>This Action.</u> As used in this Order, the term "This Action" shall refer to MDL 1358,

In re: Methyl Tertiary Butyl Ether Products Liability Litigation, *New Jersey Dept. of*

*Environmental Protection, et al. v. Atlantic Richfield Co., et al.* (Civil Action No. 08 Civ.

00312(SAS)), *City of Merced v. Chevron U.S.A, et al.* (Case No. 148451), and cases to be

consolidated under MDL 1358 including any retrial or appeal of the cases.

    B.    <u>Confidential Document(s), Information, or Other Thing(s).</u> For purposes of this

Order, "Confidential Documents" shall refer to Documents, CDs and/or DVDs which are stamped

as "Confidential" or "Proprietary" and which are or contain a trade secret or other confidential

research, development, or commercial information as those terms are used in Rule 26(c)(1)(G) of

the Federal Rules of Civil Procedure, including any copies, summaries, portions or abstracts

thereof. Confidential Documents do not include Documents (i) which are available or become

available to the public other than through violation of this Order; (ii) that, at the time of production,

the receiving party already possesses (for documents and things) or knows (for information), as

evidenced by then-existing written documentation, and were obtained by that party without an

obligation of confidentiality; (iii) that the receiving party rightfully received from a third party

without an obligation of confidence; or (iv) that the receiving party develops independently through

Persons who have had no access to Confidential Documents. All Documents, CDs and/or DVDs

which are stamped as "Confidential" or "Proprietary" shall be treated as Confidential subject to this

Order pending further order of the Court. The party asserting the confidentiality claim shall stamp,

print, or write the term "Confidential" or "Proprietary" on at least the first page of any such

document to be viewed only. With respect to documents selected and to be sent to the document

2

depository, every page of such "Confidential" or "Proprietary" documents shall be so stamped, printed or written.

Any documents which are produced by a party which are not stamped as "Confidential" or "Proprietary" will not be subject to this Order unless otherwise agreed by the parties. The producing party shall make a good faith effort to notify the propounding party in writing of the production of Confidential Documents and the location of such materials if possible to denote.

C.    Days. As used in this Order, the terms "Day" or "Days" shall mean calendar days.

D.    Defendants. As used in this Order, the term "Defendants" shall mean Defendants in This Action.

E.    Document(s), Information, or Other Thing(s). As used in this Order, the terms "Document" or "Documents" shall refer to and include, but is not limited to document(s), information, or other thing(s); CDs and/or DVDs; interrogatory responses; responses to requests for production of documents and things; responses to requests for admissions; deposition testimony upon oral or written examination; deposition testimony upon oral or written examination; deposition exhibits; motions; affidavits; exhibits; and any other writings made available or produced by the parties and/or submitted to the Court during This Action.

F.    Persons. The terms "Person" or "Persons" include a natural person, firm, association, organization, partnership, business trust, corporation, or public entity.

G.    Plaintiffs. As used in this Order, the term "Plaintiffs" shall mean Plaintiffs in This Action.

H.    Produced or Disclosed. As used in this Order, the term "Produced or Disclosed" includes, without limitation, all Documents made available or produced by any party and/or submitted to the Court in This Action.

3

II.    AGREEMENT AND PROTECTIVE ORDER

    A.    This Order shall apply to all Documents Produced or Disclosed by EPL.

    B.    The parties and any counsel who execute this Order or agrees to be bound to its terms, hereby agree that all Confidential Documents may not be used, disseminated or disclosed outside of This Action except as set forth in Paragraph C, subsection b, below.

    C.    Confidential Documents produced in This Action shall not be disseminated or disclosed to any Person except:

        a.    Plaintiffs, their respective counsel (both counsel of record and in-house counsel) and employees including stenographic and clerical personnel, whose advice, consultation or assistance are being or will be used by Plaintiffs in connection with the prosecution and preparation for trial of This Action, or Defendants, their respective counsel (both counsel of record and in-house counsel) and employees, including stenographic and clerical personnel, whose advice, consultation or assistance are being or will be used by Defendants in connection with the defense and preparation for trial of This Action, or The Hamner Institutes for Health Sciences ("Hamner"), its counsel (both counsel of record and in-house counsel) and employees, including stenographic and clerical personnel, whose advice, consultation or assistance are being or will be used by Hamner in connection with This Action;

        b.    To counsel (both counsel of record and in-house counsel) for a party in an action where the complaint alleges that the manufacture, distribution or sale of gasoline containing MTBE violates statutory or common law ("Other MTBE Action(s)") and where the attorney provides written notice to counsel representing the party whose Confidential Documents are being reviewed that: (i) he has read this Order and agrees to be bound by its terms by executing a separate copy of this Order; (ii) identifies each Confidential Documents reviewed; (iii) he agrees to submit

to the jurisdiction of the Court in the Southern District of New York should any disputes arise under this Order; (iv) in the event that Other MTBE Actions continue after this MDL terminates, the Court in the Southern District of New York shall maintain continuing jurisdiction to enforce this Order until the end of the Other MTBE Action(s); and (v) he agrees to comply with the return or destroy provision of Paragraph J of the Order at the conclusion of the Other MTBE Action(s). Such attorney may then make use of the Confidential Documents consistent with all limitations and controls set forth herein;

        c.    The Court, and those employed by the Court, in which event the Confidential Documents shall be filed under seal consistent with this Order, and kept under seal until further order of the Court;

        d.    Court reporters who record the depositions or other testimony in This Action;

        e.    Outside experts, consultants, witnesses or potential witnesses for Plaintiffs or Defendants, including their stenographic and clerical personnel, whose advice and consultation are being or will be used by any party in connection with the prosecution or defense of This Action, or their preparation for trial of This Action, and who have agreed in writing to be bound by this Order by executing a copy of Exhibit A attached hereto;

        f.    A deponent and the deponent's counsel who have agreed in writing to be bound by this Order by executing a copy of Exhibit A attached hereto, but only during the course of the deposition in This Action, or to the extent reasonably necessary in the preparation for such deposition; and

        g.    Any other Person or entity upon order of the Court, upon stipulation of the parties, or upon the express written agreement of the producing party.

h.     A copy of this Order and/or Exhibit A each and every time it is executed by an additional person agreeing to be bound by this Order shall be served upon EPL's counsel, Alison R. Mullins, Rees Broome, PC, 8133 Leesburg Pike, Ninth Floor, Vienna, VA 22182, telephone 703-790-1911, facsimile 703-848-2530, email amullins@reesbroome.com.

D.     If any party to this litigation requests copies of documents from EPL that cannot be produced at a nominal cost to EPL, the requesting party shall bear the cost of the copies. The fee is intended and construed only as payment for reproduction, and shall not result in any transfer of ownership of the reproduced records. The requesting party further agrees to pay EPL for all costs and expenses (both past and future) incurred by EPL in producing the Documents and/or Confidential Documents to the requesting party, including the cost of employee time, administrative expenses, and reasonable attorneys' fees incurred in the retrieval, identification, and review of the Documents and/or Confidential Documents to be produced. If the requesting party disputes the amount of costs or fees claims by EPL for producing Documents and/or Confidential Documents, the Documents and/or Confidential Documents shall be produced, and shall not be withheld, pending resolution of the dispute.

E.     Nothing in this Order shall require EPL, or its respective counsel (both counsel of record and in-house counsel) and employees, including stenographic and clerical personnel, to execute a copy of Exhibit A when testifying as to its own Confidential Documents.

F.     Nothing in this Order shall prohibit EPL from releasing its own Confidential Documents as it sees fit, and such release shall not constitute a waiver of any of the terms of this Order unless the release is made to the public domain.

6

G.    No Person receiving Confidential Documents produced pursuant to this Order shall disclose said Confidential Documents to any other Person, except as permitted by and in accord with this Order.

H.    The following Court procedures shall apply with respect to use of Confidential Documents:

a.    Said Confidential Documents which are submitted to the Court shall be filed with the Court in sealed envelopes or other appropriate sealed containers on which shall be endorsed the title of this action, an indication of the nature of the contents of the sealed envelope or other container, the word "CONFIDENTIAL," and a statement substantially in the following form: "This envelope is sealed pursuant to order of this Court, contains confidential information, and is not to be opened or the contents revealed except by order of the Court."

A copy of this Order shall be submitted to the Court, together with any materials submitted under seal. Any Confidential Documents filed with or submitted to the Court pursuant to this section shall be returned to the submitting party or destroyed in compliance with Paragraph J herein if the Court does not remove the confidential status from the Documents.

b.    In the case of depositions upon oral examination, if counsel for a party has a reasonable and good faith belief that any question or answer contains or refers to Confidential Documents, counsel may state on the record, and request that all pages that include such Confidential Documents be marked "CONFIDENTIAL." When testimony designated "CONFIDENTIAL" is elicited during a deposition, persons not entitled to receive such information under the terms of this Order shall be excluded from the deposition.  Transcripts containing testimony or exhibits designated as containing Confidential Documents shall be marked by the court reporter, prior to transcript distribution, with the legend "THIS TRANSCRIPT CONTAINS

CONFIDENTIAL DOCUMENT(S), INFORMATION, OR OTHER THING(S)," and shall be treated in accordance with the provisions of this Order. In addition to designating, during the deposition, any question or answer as "CONFIDENTIAL," counsel may designate any portion of the deposition transcript as a Confidential Document at any time within ten (10) Days of receiving the deposition transcript from the court reporter. Notice of such designation shall be made in writing to the court reporter, with copies to all counsel in This Action, specifying the portion(s) of the transcript and exhibits that constitute or contain Confidential Documents. Until expiration of the ten (10) Day period described above, all deposition transcripts shall be considered and treated as though containing Confidential Documents, unless otherwise agreed on the record at the deposition.

I.    No Person receiving Confidential Documents may use said Confidential Documents in any manner except in connection with This Action.

J.    Within thirty (30) Days after the expiration of the last applicable deadline for the last permitted appeal, rehearing, or reconsideration related to This Action, Confidential Documents produced pursuant to this Order shall be returned to counsel of record of the party who provided the information, or the party receiving Confidential Documents shall have the option of destroying all Confidential Documents and providing an affidavit from its counsel of record to the designating party that the party in possession of the Confidential Documents has destroyed it.

K.    Any party hereto may challenge the claim of confidentiality of any materials by notifying counsel for the party claiming confidentiality in writing of the basis of their challenge to the claim. Counsel for the party claiming confidentiality will respond in writing within ten (10) Days, and the parties will meet and confer to resolve the dispute. If the parties cannot resolve the dispute, the matter will be brought before the Court for resolution. Until the Court issues a ruling

on the dispute, and until any and all proceedings and interlocutory appeals challenging such

decision have been concluded, the Confidential Documents shall continue to be deemed

"CONFIDENTIAL" under the terms of this Order. This Order does not affect the burden of proof

which remains with the party seeking the confidential designation.

     L.     No party shall disclose any Confidential Documents to any other party except as

provided herein, and except as may be required by applicable law or legal process. All parties shall

take reasonable steps to keep an accurate record of the location of and insure proper and secure

storage of all Confidential Documents.

     M.     Any inadvertent disclosure of any Confidential Documents shall not be a violation

of this Order. The inadvertent disclosure of a Confidential Documents shall not constitute a waiver

of any otherwise applicable privilege, either as to the Confidential Documents so produced or

as to any other Confidential Documents withheld under a claim of privilege. If any party is

responsible for any inadvertent disclosure, that party will take all reasonable steps to remedy the

inadvertent disclosure, including, but not limited, to retrieving all copies of Confidential

Documents, and informing the recipients of such Documents of its "CONFIDENTIAL" nature.

     N.     Any party hereto that has the claim of alleged improper disclosure or use of

Confidential Documents or any other alleged violation of this Order shall notify counsel for the

party making the alleged improper disclosure or other alleged violation of this Order in writing of

the basis of their claim. Counsel for the party making the alleged improper disclosure or other

alleged violation of this Order will respond in writing within ten (10) Days and the parties will

meet and confer to resolve the dispute. If the parties cannot resolve the dispute, the matter will be

brought before the Court for resolution. Until the Court issues a ruling on the dispute, and until any

and all proceedings and interlocutory appeals challenging such alleged violations have been

concluded, the Confidential Documents at issue in the dispute shall continue to be deemed "CONFIDENTIAL" under the terms of this Order. This Order does not affect the burden of proof which remains with the party seeking to protect the confidential designation and/or otherwise remedy the alleged violation of this Order.

O.    It will be in the Court's sole discretion to award costs and appropriate attorneys' fees to the prevailing party in any dispute over alleged improper and knowing and/or intentional disclosure of Confidential Documents; alleged erroneous designations of documents as "Confidential" or "Proprietary"; or any other matters arising under this Order which constitute knowing and/or intentional violations.

P.    The Court shall retain jurisdiction over the enforcement of this Order notwithstanding the termination of MDL No. 1358.

Dated 10/26/11

Michael Axline
Miller, Axline & Sawyer
1050 Fulton Avenue, Suite 100
Sacramento, CA 95825-4225
*Attorneys for Plaintiffs, New Jersey Department of Environmental Protection, et al.*

Dated 10·27·11

Alison Mullins
Rees Broome, PC
8133 Leesburg Pike, Suite 900
Vienna, VA 22182
*Attorneys for Experimental Pathology Laboratories, Inc.*

Dated 10/27/11

Marc-Philip Ferzan, Acting Attorney General

By:
Richard F. Engel, Deputy Attorney General

10

IT IS SO ORDERED:

Dated _Oct 28, 2011_

_____
The Honorable Shira A. Scheindlin
United States District Court Judge

## EXHIBIT A

### TO THE CONFIDENTIALITY AGREEMENT & PROTECTIVE ORDER

I, _____, have read the Confidentiality Agreement Protective Order ("Order") originally entered into by Experimental Pathology Laboratories, Inc. ("EPL") and New Jersey Dept. of Environmental Protection.

I agree to be bound by its terms by executing this Exhibit A to the Order.

I agree to submit to the jurisdiction of the Court in the Southern District of New York should any disputes arise under this Order.

I agree that in the event that Other MTBE Actions continue after MDL 1358 terminates, the Court in the Southern District of New York shall maintain continuing jurisdiction to enforce this Order until the end of the Other MTBE Action(s).

Further, I agree to comply with the return or destroy provision of Paragraph J of the Order at the conclusion of the Other MTBE Action(s).

I shall only make use of the Confidential Documents consistent with all limitations and controls set forth in the Order.

Dated _____

Signature: _____

Name: _____

Company: _____

Telephone No.: _____

K:\05\05007\0000\N110906 Subpoena\111025 Confidentiality Agreement and Order.doc

12

1

## PROOF OF SERVICE VIA LEXISNEXIS FILE & SERVE

2

*New Jersey Department of Environmental Protection, et al. v. Atlantic Richfield Co., et al.*
United States District Court, Southern District of New York, Case No. 08 Civ. 00312 (SAS)

3

4

     I, the undersigned, declare that I am, and was at the time of service of the paper(s) herein referred to, over the age of 18 years and not a party to this action.  My business address is 1050 Fulton Avenue, Suite 100, Sacramento, CA  95825-4225.

5

     On the date below, I served the following document on all counsel in this action electronically through LexisNexis File & Serve:

6

7

## PLAINTIFFS' MOTION TO ENFORCE WAIVER AND DECLASSIFICATION PROVISIONS OF PROTECTIVE ORDERS [redacted]

8

     I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

9

10

     Executed on July 2,  2014, at Sacramento, California.

11

KATHY HERRON

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28