**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

**Master File No. 1:00 - 1898**
**MDL 1358 (SAS)**
**M21-88**

**This Document Relates to:**

*New Jersey Department of Environmental*
*Protection, et al. v. Atlantic Richfield Co., et al.*
No. 1:08-cv-00312-SAS

### DECLARATION OF MICHAEL AXLINE IN SUPPORT OF
### PLAINTIFFS' MOTION TO ENFORCE PROTECTIVE ORDERS' WAIVER AND
### DECLASSIFICATION PROVISIONS

I, Michael Axline, declare:

1.      I am a partner at Miller & Axline, A Professional Corporation, counsel of record for the plaintiffs in this action.  All facts stated herein are true, and they are supported by evidence in my office's files that I will provide if requested.  The exhibits attached to this Declaration are documents that are kept in the ordinary course of business in Miller & Axline's files.  They were copied by me, or by someone working under my supervision.

2.      At his June 1, 2011, deposition, Dr. Eric Stine testified that the Hamner Study was entirely paid for by defendants Chevron, Shell, and ExxonMobil.

3.      **Exhibit 1** is a true and correct copy of the relevant pages and exhibits from the transcripts of Dr. Eric Stine's June 1, 2011, and June 2, 2011, depositions.

4.      As of June 29, 2010, Hamner's website disclosed that it had been formed by "[v]isionary leaders of 11 major chemical companies . . . to address growing concerns about the effects of chemicals on environmental and human health.  Alarming reports about chemical pollution were threatening to overshadow the enormous benefits of chemicals to society, and industry's biggest challenge during that era was to overcome lack of knowledge about the health effects of chemicals."  The on-line web-page has since been changed.

5.      **Exhibit 2** is a true and correct copy of an email chain between myself and Hamner's attorney James Thornton.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 2nd day of July, 2014 at Sacramento, California.

_____

MICHAEL AXLINE, ESQ.

# EXHIBIT 1

Stine, Eric (Chevron-Hamner) (06-01-11)

00001
```
 1        IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
 2              IN AND FOR THE COUNTY OF CONTRA COSTA
 3
    CITY OF SANTA BARBARA,
 4
                 Plaintiff,
 5
         vs.                         Case No. CIVMSC10-00896
 6
 7  CHEVRON USA, INC.; CHEVRON,
    CORPORATION; ATLANTIC RICHFIELD
 8  COMPANY; BP PRODUCTS NORTH
    AMERICA, INC.; BP WEST COAST
 9  PRODUCTS, LLC; CONOCOPHILLIPS
    COMPANY; EQUILON ENTERPRISES, LLC;
10  EXXONMOBIL CORPORATION; EXXONMOBIL
    OIL CORPORATION; KERN OIL &
11  REFINING CO.; SHELL OIL COMPANY;
    SHELL OIL PRODUCT COMPANY, LLC;
12  TESORO REFINING AND MARKETING
    COMPANY; TMR COMPANY; ULTRAMAR,
13  INC.; UNION OIL COMPANY OF CALIFORNIA;
    UNOCAL CORPORATION; VALERO MARKETING
14  AND SUPPLY COMPANY; VALERO REFINING
    COMPANY - CALIFORNIA; AND
15  DOES 1 through 1000, inclusive,
16              Defendants.
    ----------------------------------------/
17
18
19     VIDEOTAPED DEPOSITION OF ERIC R. STINE, Ph.D., DABT
20                         Volume I
21                  San Francisco, California
22                  Wednesday, June 1, 2011
23
                    Reported by:
24  LORRIE L. MARCHANT, CSR No. 10523, RPR, CRR, CCRR, CLR
25           (Caption Continued on page 2)
```

00002
```
 1              UNITED STATES DISTRICT COURT
 2              SOUTHERN DISTRICT OF NEW YORK
 3
 4  In Re:                    Master File No.  1:00-1898
 5  Methyl Tertiary Butyl     MDL 1358 (SAS)
 6  Ether ("MTBE")
 7  Products Liability Litigation
 8  ----------------------------/
 9
10                      ---oOo---
11            THE STATE OF NEW HAMPSHIRE
12  MERRIMACK, SS.                      SUPERIOR COURT
13            Docket No.:  03-C-0550
14            State of New Hampshire
15                        v.
16            Hess Corporation, et al.
17                      ---oOo---
18
19
20
21
22
```

Page 1

Stine, Eric (Chevron-Hamner) (06-01-11)

00188
```
 1        A.   On the first -- yes, that's from me.
 2        Q.   And was it your practice when you drafted
 3   minutes to circulate them to the other members of the
 4   toxicology committee for their approval?
 5        A.   Yes.  As I think I indicated in Exhibit 22,
 6   Attached is a draft of the meeting minutes from our
 7   meeting last week at CIIT.  Please review and advise of
 8   any edits or if anything is unclear or differs from your
 9   understanding.
10        Q.   And if you'll look at the bottom of 22278,
11   there's an e-mail from Dr. Daughtrey to yourself.  It
12   says -- if you'll look at the very last sentence -- the
13   very last line on that page, there's a sentence that
14   begins, On the last page I also strongly recommend that
15   we delete the sentences referring to the JDG.
16        Do you have an understanding as to what "the
17   JDG" refers to?
18        A.   I believe that's the joint defense group.
19        Q.   And you noted at the beginning of your e-mail
20   at the top that you would incorporate Dr. Daughtrey's
21   comments; is that correct?
22        A.   I'm sorry.  Ask me again.
23        Q.   At the top of Exhibit 23, you've indicated that
24   you were planning to incorporate Dr. Daughtrey's
25   comments?
```

00189
```
 1        A.   That's what I've indicated, yes.
 2        Q.   Do you know why Dr. Daughtrey wanted you to
 3   eliminate the reference to the joint defense group
 4   from the official minutes of the toxicology committee
 5   meeting?
 6        MS. BARNARD:  Objection.
 7        THE WITNESS:  I can't speculate to that.  I
 8   don't know.
 9        (Marked for identification purposes,
10        Exhibit 24.)
11        MR. CAMPINS:  For the record, Exhibit 24 begins
12   with a Bates No. XOM Daughtrey 22308.  The first page of
13   Exhibit 24 is an April 26th, 2006, e-mail from
14   Eric Stine to various individuals.  There's what appears
15   to be an image of a Microsoft Word icon on page 22309.
16   And beginning on 22310 there is additional copy of the
17   minutes.
18        THE WITNESS:  Okay.
19        BY MR. CAMPINS:
20        Q.   Sir, do you understand this -- did you draft
21   this -- the e-mail that begins on the page -- the first
22   page of Exhibit 24?
23        A.   Yes, I did.
24        Q.   And referring to the minutes attached at 22310,
25   did you, in fact, eliminate the reference to the joint
```

00190
```
 1   defense group from the minutes?
 2        A.   I don't know.  I guess I'd have to look.  It
 3   appears like I removed reference to the joint defense
 4   group that appeared in a draft on page 22183.  I don't
 5   see it on page 22314.
 6        Q.   Sir, why did -- why would you remove an item
 7   that was discussed at the meeting from the official
```
Page 83

Stine, Eric (Chevron-Hamner) (06-01-11)

8    minutes of the meeting?
9        A.   I simply removed it because Dr. Daughtrey
10   requested that I remove it.
11       Q.   Isn't it true that the -- that you wanted to
12   eliminate the appearance that the joint defense group
13   was influencing in any way this two-year chronic
14   bioassay study?
15           MR. CORRELL:  Objection.  Asked and answered.
16   Argumentative.
17           THE WITNESS:  No.  I would say that the reason
18   it was removed was simply because Dr. Daughtrey
19   requested that I remove it.  I can't speak to his
20   motives for asking me to remove it.
21           BY MR. CAMPINS:
22       Q.   Aren't you, in essence, making the minutes
23   inaccurate by deleting something that actually occurred
24   at the meeting?
25       A.   No.  Just to clarify what I mean by "no," when

00191
1    you suggest that I'm making the notes inaccurate, I'm
2    simply deleting something that had no real bearing on
3    the findings or the -- not the findings, but the
4    decisions that we made or the conduct of the study.  So
5    I don't see how it makes the notes inaccurate or the
6    minutes inaccurate.
7           (Marked for identification purposes,
8           Exhibit 25.)
9           MR. CAMPINS:  For the record, Exhibit 25 begins
10   with a Bates No. CHEVMDL13581057.  It's titled "Protocol
11   05011 Data Review.  February 26, 2007."
12          BY MR. CAMPINS:
13       Q.   Sir, referring to Exhibit 25, do you have an
14   understanding as to what it is?
15       A.   I believe that this is a presentation that was
16   made by the Hamner, summarizing the findings from the
17   90-day study.
18       Q.   Do you have an understanding of where the
19   animals are physically housed during the pendency of
20   these studies?
21       A.   At the Hamner Institute, in one of their
22   animal -- animal rooms.
23       Q.   Did you ever visit the location where the
24   studies took place?
25       A.   I visited the Hamner.  I never visited the

00192
1    animal room.
2        Q.   Where is the Hamner located?
3        A.   In Research Triangle Park, North Carolina.
4           (Marked for identification purposes,
5           Exhibits 26 and 27.)
6           MR. CAMPINS:  For the record, Exhibit 26 begins
7    with the Bates No. CHEVMDL_Yosemite-6638.  It's an
8    e-mail from Eric Stine to mtbelit, forwarding an e-mail
9    from Ed Bermudez to various individuals, including
10   Eric Stine.
11          Exhibit 27 is what appears to be a photograph,
12   CHEVMDL_Yosemite-6639.
13          I haven't had a chance to request that counsel
14   do this, but I would request that counsel see if they
15   can find -- or making a better copy of that photograph
16   that appears at 6639.

Page 84

Reporter: Lorrie L. Marchant, RPR CRR, CCRR, CLR, CSR NO. 10523

EXHIBIT: _____ ZZ

Witness: _____ Stine

Date: 6-1-2011    # pages: 20

| From: | Stine, Eric (EStine) |
|---|---|
| Sent: | Friday, April 21, 2006 6:15 PM |
| To: | david.steup@shell.com; wayne.c.daughtrey@exxonmobil.com |
| Cc: | Stine, Eric (EStine) |
| Subject: | Draft Minutes of 4/12/06 Meeting for your Review and Comment |

| Importance: | High |
|---|---|

| Attachments: | MTBE Meeting Minutes 4-12-06.doc |
|---|---|

Gentlemen,

Attached is a draft of the meeting minutes from our meeting last week at CIIT. Please review and advise of any edits, or if anything is unclear or differs from your understanding.

<<MTBE Meeting Minutes 4-12-06.doc>>

Thanks,

Eric R. Stine, PhD, DABT
Staff Toxicologist
Toxicology & Health Risk Assessment
Chevron Energy Technology Company
Phone: (510) 242-4349
Fax: (510) 242-7022
E-mail: estine@chevron.com

Statement of Confidentiality & Privilege: This electronic message and any attachments are intended for the exclusive use of the addressee(s) and may contain information that is confidential or privileged in nature. Delivery of this message to any person other than the intended recipient(s) is not intended in any way to waive privilege or confidentiality. If you are not the intended recipient (or authorized to receive for the intended recipient), you are directed not to read, disclose, reproduce, distribute or otherwise use this transmission or its attachments, and are on notice that any unauthorized disclosure, copying, distribution or taking of any action in reliance on the contents of the electronically transmitted materials is prohibited. If you have received this message in error, please notify me immediately by reply e-mail and delete this message and attachments. Thank you.

XOM-DAUGHTREY 22176

**Draft Meeting Minutes: MTBE Testing Consortium
April 12, 2006 Meeting at CIIT**

On Wednesday, April 12, 2006 a meeting was held at CIIT to review the status of the on-going MTBE toxicology testing program. Attendees consisted of representatives of the Consortium's Expert Panel, the Toxicology Committee, and involved members of the Staff of CIIT. The meeting took place from approximately 9:00 A.M. to 2:00 P.M. The goals of this meeting were to:

1. Discuss the transitioning of CIIT Staff supporting the program, and the process for communication to the members of the Expert Panel and Toxicology Committee following Susan Borghoff's departure from CIIT,
2. Review and discuss the data that had been generated in the pharmacokinetic strain comparison (Protocol 05007),
3. Review the status of the palatability study, and define key decision points (Protocol 05008),
4. Review the approach and objectives for the alpha2u nephropathy positive control study (Protocol 05015), and
5. Discuss the draft protocol for the 90-day study (Protocol 05011).

The full list of attendees was as follows:

| | |
|---|---|
| Expert Panel: | Jack Moore (Chair) |
| | Gene McConnell |
| Toxicology Committee: | Dave Steup, Shell (Chair) |
| | Wayne Daughtrey, ExxonMobil |
| | Eric Stine, Chevron |
| CIIT: | Susan Borghoff |
| | David Dorman |
| | Ed Bermudez |
| | Teresa Leavens |

**Significant Issues Requiring Follow-Up:**

- The question was raised regarding the possibility that the testing program could generate data that might be considered reportable under TSCA Section 8(e). This issue should be raised with the Legal Committee to determine the appropriate process for addressing any such finding.
- Monthly, time-and-materials invoices received from CIIT are inconsistent with the contractual agreement in-place. This invoicing was done in error. CIIT has issued a letter (to Dave Steup) revising the billing to be consistent with the contractual agreement. Dave Dorman wants to be kept "in the loop."
- Better communication/coordination is required of the various industry-sponsored activities that are on-going concerning MTBE. In particular, communication to EPA Staff should be coordinated, and the Expert Panel should be made aware of communications developed and/or presented under these additional efforts.

XOM-DAUGHTREY 22178

The question was raised if pharmacokinetic data could be used to document an MTD (saturation of a metabolic pathway). There was discussion that this may only apply under the pesticides program.

The Expert Panel will plan to try to meet with EPA Staff again once the doses are tentatively selected for the 90-day study (likely in early June). Jack's primary contact is John Vandenberg, who is the Division Head for NCEA. Jack is planning to write to John Vandenberg to advise him of our status. The issue of the need to coordinate our efforts with those of the "Joint Defense Group" was discussed. We should all be talking to the same EPA Staff, and be aware of what's being discussed. The Toxicology Committee will check with the Legal Committee to see if the Expert Panel can get a copy of Barbara Beck's presentation materials.

A revised draft protocol for study 05015 will be prepared and distributed within a couple of weeks.

With the increasing numbers of animals/study in the room, CIIT Staff will continue to monitor the airborne concentration of MTBE at various locations in the room.

The issue of the sponsor's name was raised, and it was decided to list the participating companies by name, consistent with the MOU.

Susan will email everyone her updated contact information, and will attach a copy of the Douglas MacGregor review article that has been submitted to Critical Reviews in Toxicology, for publication.

The meeting was adjourned at approximately 2:00 PM.

XOM-DAUGHTREY 22183

From:       Stine, Eric (EStine)
Sent:       Tuesday, April 25, 2006 7:34 AM
To:         wayne.c.daughtrey@exxonmobil.com; Stine, Eric (EStine)
Cc:         david.steup@shell.com; Stine, Eric (EStine)
Subject:    RE: Draft Minutes of 4/12/06 Meeting for your Review and Comment

Wayne,

Thanks for your comments.  In retrospect, I can see where I got a little
over-zealous.  I will incorporate your comments, as provided, and revise
the draft.

Once I hear from Dave, I'll make any additional changes, if necessary,
and issue the final version.

Cheers,

Eric R. Stine
Staff  Toxicologist
Toxicology & Health Risk Assessment
Chevron Energy Technology Company
Phone: (510) 242-4349
Fax: (510) 242-7022
E-mail: estine@chevron.com

>Statement of Confidentiality & Privilege:  This electronic message and
any attachments are intended for the exclusive use of the addressee(s)
and may contain information that is confidential or privileged in
nature.  Delivery of this message to any person other than the intended
recipient(s) is not intended in any way to waive privilege or
confidentiality.  If you are not the intended recipient (or authorized
to receive for the intended recipient), you are directed not to read,
disclose, reproduce, distribute or otherwise use this transmission or
its attachments, and are on notice that any unauthorized disclosure,
copying, distribution or taking of any action in reliance on the
contents of the electronically transmitted materials is prohibited.  If
you have received this message in error, please notify me immediately by
reply e-mail and delete this message and attachments.  Thank you.
>
>

-----Original Message-----
From: wayne.c.daughtrey@exxonmobil.com
[mailto:wayne.c.daughtrey@exxonmobil.com]
Sent: Monday, April 24, 2006 12:33 PM
To: Stine, Eric (EStine)
Cc: david.steup@shell.com; Stine, Eric (EStine)
Subject: Re: Draft Minutes of 4/12/06 Meeting for your Review and
Comment

Eric,

The minutes are very comprehensive. Nice job.

I only have a few suggestions; namely, deleting paragraphs 4 and 7 on
the
fourth page. These discuss EPA's position on alpha 2u-nephropathy and
Gene's view of the Maltoni lab, respectively.  On the last page I also

Reporter: Lorrie L. Marchant, RPR CRR, CCRR, CLR, CSR NO. 10523

EXHIBIT: _____ 23 _____

Witness: _____ Stine _____

Date: __10-1-2011__  # pages: __6__

XOM-DAUGHTREY 22278

strongly recommend that we delete the sentences referring to the JDG.

My suggestions are shown in red in the Tracking mode on the attached. Call
if you would like further explanation on the last point. I left you a phone
mesage about that.

regards,
wayne

(See attached file: MTBE Meeting Minutes 4-12-06.doc)

Wayne C. Daughtrey, Ph.D., DABT
Toxicology & Environmental Sciences Division
ExxonMobil Biomedical Sciences, Inc.
(Telephone) 908-730-1062
(Fax) 908-730-1199
wayne.c.daughtrey@exxonmobil.com

|  |  |  |
|---|---|---|
| | "Stine, Eric (EStine)" <EStine@chevron.com> | |
| To | | david.steup@shell.com, wayne.c.daughtrey@exxonmobil.com |
| cc | | |
| 04/21/06 08:15 PM | "Stine, Eric (EStine)" <EStine@chevron.com> | |
| Subject | | Draft Minutes of 4/12/06 Meeting for your Review and Comment |

XOM-DAUGHTREY 22279

Reporter: Lorrie L. Marchant, RPR CRR, CCRR, CLR, CSR NO. 10523

EXHIBIT: _____ 24

Witness: _____ Stine

Date: 6-1-2011 __ # pages: 20

| | |
|---|---|
| **From:** | Stine, Eric (EStine) |
| **Sent:** | Wednesday, April 26, 2006 4:08 PM |
| **To:** | david.steup@shell.com; wayne.c.daughtrey@exxonmobil.com; estine@chevron.com; hollyhouse@att.net; loxpathmcc@bellsouth.net; sborghoff@ils-inc.com |
| **Cc:** | Dave Dorman; Ed Bermudez |
| **Subject:** | Minutes from April 12, 2006 Meeting of the MTBE Testing Program at CIIT |

**Attachments:**     MTBE Meeting Minutes 4-12-06.doc

All,

Attached, please find the minutes from our recent meeting at CIIT, where
we discussed the status of the MTBE toxicology testing program.  The
Toxicology Committee has reviewed the minutes; however, please feel free
to follow-up with me if anything is unclear, or if you have any
questions.

Best Regards,

Eric R. Stine, PhD, DABT
Staff Toxicologist
Toxicology & Health Risk Assessment
Chevron Energy Technology Company
Phone: (510) 242-4349
Fax: (510) 242-7022
E-mail: estine@chevron.com

Statement of Confidentiality & Privilege:  This electronic message and
any attachments are intended for the exclusive use of the addressee(s)
and may contain information that is confidential or privileged in
nature.  Delivery of this message to any person other than the intended
recipient(s) is not intended in any way to waive privilege or
confidentiality.  If you are not the intended recipient (or authorized
to receive for the intended recipient), you are directed not to read,
disclose, reproduce, distribute or otherwise use this transmission or
its attachments, and are on notice that any unauthorized disclosure,
copying, distribution or taking of any action in reliance on the
contents of the electronically transmitted materials is prohibited.  If
you have received this message in error, please notify me immediately by
reply e-mail and delete this message and attachments.  Thank you.

XOM-DAUGHTREY 22308

## Draft Meeting Minutes: MTBE Testing Consortium
## April 12, 2006 Meeting at CIIT

On Wednesday, April 12, 2006 a meeting was held at CIIT to review the status of the on-going MTBE toxicology testing program. Attendees consisted of representatives of the Consortium's Expert Panel, the Toxicology Committee, and involved members of the Staff of CIIT. The meeting took place from approximately 9:00 A.M. to 2:00 P.M. The goals of this meeting were to:

1. Discuss the transitioning of CIIT Staff supporting the program, and the process for communication to the members of the Expert Panel and Toxicology Committee following Susan Borghoff's departure from CIIT,
2. Review and discuss the data that had been generated in the pharmacokinetic strain comparison (Protocol 05007),
3. Review the status of the palatability study, and define key decision points (Protocol 05008),
4. Review the approach and objectives for the alpha2u nephropathy positive control study (Protocol 05015), and
5. Discuss the draft protocol for the 90-day study (Protocol 05011).

The full list of attendees was as follows:

| | |
|---|---|
| Expert Panel: | Jack Moore (Chair) |
| | Gene McConnell |
| Toxicology Committee: | Dave Steup, Shell (Chair) |
| | Wayne Daughtrey, ExxonMobil |
| | Eric Stine, Chevron |
| CIIT: | Susan Borghoff |
| | David Dorman |
| | Ed Bermudez |
| | Teresa Leavens |

### Significant Issues Requiring Follow-Up:

- The question was raised regarding the possibility that the testing program could generate data that might be considered reportable under TSCA Section 8(e). This issue should be raised with the Legal Committee to determine the appropriate process for addressing any such finding.
- Monthly, time-and-materials invoices received from CIIT are inconsistent with the contractual agreement in-place. This invoicing was done in error. CIIT has issued a letter (to Dave Steup) revising the billing to be consistent with the contractual agreement. Dave Dorman wants to be kept "in the loop."
- Better communication/coordination is required of the various industry-sponsored activities that are on-going concerning MTBE. In particular, communication to EPA Staff should be coordinated, and the Expert Panel should be made aware of communications developed and/or presented under these additional efforts.

XOM-DAUGHTREY 22310

chronic bioassay. Jack agreed that we should evaluate bone marrow, if for no other reason than to document a lack of toxicity. Dave Dorman will discuss the particulars of adding bone marrow with his hematology contacts. An intermediate approach would be to collect bone marrow smears at necropsy, but leave the full analysis contingent on other findings.

A variety of hormone parameters will be evaluated at 4-weeks, including TSH, LH, T3, T4 and testosterone). Concurrent thyroid histopathology should be included; thyroid tumors were seen in TBA treated mice, and based on the pharmacokinetic modeling, drinking water exposure should result in higher blood concentrations of TBA. Gene will also check with C. Capen regarding the potential value of looking at labelling in the thyroids.

Full clinical chemistries will be run at days 4, 21 and 90, with trunk blood collected for hormone analysis on day 28. Gene mentioned that NTP no longer does clinical chemistries at the end of a 2-year study. They rely exclusively on the 90-day data.

A statement will be added to the protocol describing why Core Group tissues will be examined by light microscopy.

Additional Miscellaneous Program Issues
The issue was discussed of multiple listings in the CFR for GLP Guidelines. The decision was made to specify the TSCA GLP Guidelines, at 40 CFR Part 792.

The TSCA 8(e) issue was discussed, as listed above, and will be raised to the Legal Committee. Gene advised that pathology data are not considered TSCA reportable until they are peer reviewed.

Aldrich was confirmed as the source for test material.

The question was raised if pharmacokinetic data could be used to document an MTD (saturation of a metabolic pathway). There was discussion that this may only apply under the pesticides program.

The Expert Panel will plan to try to meet with EPA Staff again once the doses are tentatively selected for the 90-day study (likely in early June). Jack's primary contact is John Vandenberg, who is the Division Head for NCEA. Jack is planning to write to John Vandenberg to advise him of our status.

A revised draft protocol for study 05015 will be prepared and distributed within a couple of weeks.

With the increasing numbers of animals/study in the room, CIIT Staff will continue to monitor the airborne concentration of MTBE at various locations in the room.

XOM-DAUGHTREY 22314

Stine, Eric (Chevron-Hamner) (06-02-11)
```
00211
 1        IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
 2             IN AND FOR THE COUNTY OF CONTRA COSTA
 3
     CITY OF SANTA BARBARA,
 4
                Plaintiff,
 5
          vs.                        Case No. CIVMSC10-00896
 6
 7   CHEVRON USA, INC.; CHEVRON,
     CORPORATION; ATLANTIC RICHFIELD
 8   COMPANY; BP PRODUCTS NORTH
     AMERICA, INC.; BP WEST COAST
 9   PRODUCTS, LLC; CONOCOPHILLIPS
     COMPANY; EQUILON ENTERPRISES, LLC;
10   EXXONMOBIL CORPORATION; EXXONMOBIL
     OIL CORPORATION; KERN OIL &
11   REFINING CO.; SHELL OIL COMPANY;
     SHELL OIL PRODUCT COMPANY, LLC;
12   TESORO REFINING AND MARKETING
     COMPANY; TMR COMPANY; ULTRAMAR,
13   INC.; UNION OIL COMPANY OF CALIFORNIA;
     UNOCAL CORPORATION; VALERO MARKETING
14   AND SUPPLY COMPANY; VALERO REFINING
     COMPANY - CALIFORNIA; AND
15   DOES 1 through 1000, inclusive,
16             Defendants.
     ---------------------------------/
17
18
19        VIDEOTAPED DEPOSITION OF ERIC STINE, Ph.D., DABT
20                      Volume II
21               San Francisco, California
22               Thursday, June 2, 2011
23
                Reported by:
24   LORRIE L. MARCHANT, CSR No. 10523, RPR, CRR, CCRR, CLR
25            (Caption Continued on page 2)

00212
 1             UNITED STATES DISTRICT COURT
 2             SOUTHERN DISTRICT OF NEW YORK
 3
 4   In Re:                   Master File No.  1:00-1898
 5   Methyl Tertiary Butyl    MDL 1358 (SAS)
 6   Ether ("MTBE")
 7   Products Liability Litigation
 8   ---------------------------/
 9
10                  ---oOo---
11         THE STATE OF NEW HAMPSHIRE
12   MERRIMACK, SS.                    SUPERIOR COURT
13            Docket No.:  03-C-0550
14            State of New Hampshire
15                      v.
16            Hess Corporation, et al.
17                  ---oOo---
18
19
20
21
22
                        Page 1
```

Stine, Eric (Chevron-Hamner) (06-02-11)

```
 9          THE WITNESS:  She was compensated by the Hamner
10   Institute.  I can't speak to how they paid Dr. Borghoff.
11   I know that she was a scientist at the Hamner Institute.
12   She was initially the study director for some of the
13   preliminary studies that we did.  And that the member
14   companies paid the Hamner Institute for the conduct of
15   those studies.
16          BY MR. AXLINE:
17     Q.   Okay.  Fair enough.
18          And then as -- after she left the Hamner
19   Institute she joined the expert panel; correct?
20     A.   Correct.
21     Q.   And while she was on the expert panel, she was
22   also paid by Shell, Chevron and Exxon; correct?
23          MR. CORRELL:  Object to the word "also."
24          THE WITNESS:  While she was a member of the
25   expert panel, she was compensated for her time as a --
```

♀
00288
```
 1   as a member of the expert panel.
 2          BY MR. AXLINE:
 3     Q.   By Chevron, Shell and Exxon; correct?
 4     A.   Correct.
 5     Q.   Thank you.
 6          If you could get Exhibit 13, Dr. Stine.
 7          This is a February 18, 2005, e-mail discussing
 8   a meeting at CIIT to discuss the planned MTBE drinking
 9   water study; correct?
10     A.   When you say plan -- to plan the MTBE drinking
11   water study, I think we -- we were planning the entire
12   research program.  So as I indicated earlier, there was
13   some -- some preliminary studies that we did prior to
14   the actual two-year cancer bioassay with drinking water.
15     Q.   Correct.
16          But at the top of this e-mail, there's a
17   sentence that says, This notice is to provide a brief
18   overview of yesterday's meeting at CIIT to discuss the
19   planned MTBE drinking water study.
20          Do you see that?
21     A.   Yes, I do.
22     Q.   And after that there's a sentence that says,
23   John Kampman will be sending out a meeting summary with
24   agreed-upon action items next week.
25          Do you see that?
```

♀
00289
```
 1     A.   I do.
 2     Q.   Do you know who John Kampman is?
 3     A.   John Kampman is an attorney.
 4     Q.   And is he an attorney for Shell; do you know?
 5     A.   I can't -- I don't know who he represents.
 6     Q.   Is he at this deposition today?  Do you
 7   recognize him?
 8     A.   Yes, I do.
 9     Q.   So one of the attorneys representing a
10   defendant in this litigation who's attending this
11   deposition also attended the meeting at CIIT to discuss
12   the planned MTBE drinking water study; correct?
13     A.   Yes.
14     Q.   And he was assigned the task of sending out a
15   meeting summary with agreed-upon action items next week;
16   correct?
17     A.   According to Dr. Daughtrey's memorandum, that
```
Page 35

```
                      Stine, Eric (Chevron-Hamner) (06-02-11)
18   was the case.  I don't have specific recollection of
19   that.
20        Q.   So in addition to this meeting that took place
21   at CIIT in 2005, I believe you testified to at least two
22   other meetings that took place at CIIT, in -- one in
23   April of 2006 and then a closeout meeting in May of this
24   year.  By my count that's three face-to-face meetings
25   that took place at CIIT.
```
♀
00290
```
 1             Were there more meetings than that, or is that
 2   your recollection of the total number of meetings that
 3   occurred physically at CIIT?
 4        MR. CORRELL:  Objection.  Misstates testimony.
 5        THE WITNESS:  I believe there might have been
 6   one or two other meetings, but I don't recall the
 7   specific dates.
 8        BY MR. AXLINE:
 9        Q.   Were minutes kept whenever there was a meeting
10   at CIIT?
11        A.   I think we kept minutes when there were
12   specific decisions that we wanted to document or
13   specific questions or -- and/or resolution of those
14   questions that we wanted to -- to keep copies of.  We
15   did not keep minutes or make -- take minutes from that
16   last meeting last month because there was -- there were
17   no decisions made.  The study was over.  The two-year
18   bioassay was over.
19        Q.   But I think we looked at some handwriting notes
20   of yours --
21        A.   Those were my personal notes.
22        Q.   Okay.  So those weren't intended to be minutes?
23        A.   No.
24        Q.   If you could take a look at Exhibit 15 [sic]
25   now.  That's the draft -- this is the draft meeting
```
♀
00291
```
 1   minutes, MTBE chronic study consortium, involving a
 2   meeting with representatives from EPA that was discussed
 3   with Mr. Campins yesterday.
 4        Do you see that?  Dr. Stine, do you have that
 5   in front of you, Exhibit 19?
 6        A.   Yes, I do.
 7        Q.   If you'll look down to the paragraph on the
 8   first page that begins "John Vandenberg."
 9        Do you see that paragraph?
10        A.   Yes, I do.
11        Q.   The last sentence in that paragraph states, In
12   particular, it was pointed out that EPA has not created
13   a, quote, research needs document, close quote, for MTBE
14   as part of the review process, indicating that they
15   believe the data needed for a valid assessment are
16   already available.
17        Do you see that?
18        A.   I do.
19        Q.   This meeting took place in 2005; correct?
20        A.   Correct.
21        Q.   Does this indicate to you that EPA had
22   confidence in the research that had been conducted to
23   date and its utility for making a finding with respect
24   to the carcinogenicity of MTBE?
25        MR. CORRELL:  Objection.  Calls for
```
♀

Page 36

Wayne C
Daughtrey/East-US/Exxo
nMobil

02/18/2005 11:15 AM

To   Robert W Biles/Houston/ExxonMobil@xom, Jessica R
     Nacherman/East-US/ExxonMobil@xom
cc   Dennis J Devlin/East-US/ExxonMobil@xom, James J
     Freeman/East-US/ExxonMobil@xom, Patricia T
     Sparrell/East-US/ExxonMobil@xom
bcc

Subject   PROP: Meeting to Discuss Drinking Water Study

● ExxonMobil Proprietary



This note is to provide a brief overview of yesterday's meeting at CIIT to discuss the planned MTBE
drinking water study. John Kampmen will be sending out a meeting summary with agreed upon action
items next week.

- **Attendees**
  >Expert Panel members; Jack Moore, Gary Williams, Gene McConnell
  >Susan Borghoff and CIIT staff
  >Company representatives; Daughtrey, Dave Steup (Shell toxicologist), Eric Stine (ChevTex
  toxicologist), Tom Morrell (BP attorney)
  >John Kampman

- John distributed a copy of the Panel Member retention letter and asked for review and feedback from
  the panel. He hopes to distribute a revised version next week.

- There was unanimous agreement that the study should be placed at CIIT. Prime reasons were
  Susan Borghoff's extensive research background on MTBE toxicity & pharmacokinetics, their past
  work on evaluating the feasibility of conducting an MTBE drinking water study, and their commitment
  to the project. The panel felt that these positive considerations more than outweighed any downsides
  (eg; not routinely doing chronic studies).  Since the study will be done at CIIT with Susan acting as
  Principal Investigator, she will not be a member of the Panel.

- Jack Moore agreed to serve as Chair of the Panel.

- **EPA contact:** Jack agreed to continue making contacts at EPA to determine what office (water, air,
  OPTS) has most interest in MTBE. Preliminary contacts have been made but more needs to be done.
  A meeting between the EPA, the Panel, and company reps is envisioned at some future date. A basic
  study protocol will be needed for that meeting

- **Study Design**
  Much of the meeting was spent discussing the actual design of the study. As tentatively envisioned:
  > 1 species; rat (the panel felt there was little to be gained by also including mice).  This will need
  buy-in from EPA.
  > The Panel would like to see 4 dose levels and 2 separate control groups. Gary Williams stated that
  2 control groups are common in pharmaceutical studies and can be a huge benefit in statistical
  analysis of tumor incidence.
  > Additional discussion and data analysis is needed before selecting dose levels. Gene McConnell
  felt strongly that the lowest dose should have relevance to actual human exposures (ie; not to exceed
  maximum human exposures by more than a factor of 10 to 100.)
  > Will need 90-day study before initiating chronic study.
  > Chronic study to include a 1 year interim sac and select "add-ons".

- Susan agreed to develop a study outline based on the discussion and to distribute it to the Panel and
  Tox Committee for review and feedback. She will develop a cost estimate after everyone agrees to

# EXHIBIT 2

**Bryan Barnhart**

| | |
|---|---|
| **From:** | Mike Axline [maxline@toxictorts.org] |
| **Sent:** | Monday, September 20, 2010 11:38 AM |
| **To:** | 'Thornton, James C.' |
| **Cc:** | dmiller@toxictorts.org; dboone@toxictorts.org |
| **Subject:** | RE: Crecsenta Valley -- Hamner Subpoena |

James

Thanks for the update.   Expert replies are due in the CVWD case on October 1, 2010.  We must have the information that Judge Scheindlin ordered the Institute to produce no later than the end of this week in order to provide time for our expert to review and account for that information.  This means that we should have the protective order prepared to submit to Judge Scheindlin by no later than Wednesday.   I appreciate you assembling the information in advance of a protective order being entered, and I assume this means that you will be able to provide the information as soon as the protective order is signed. If that is not the case, please let me know ASAP. So that there is no misunderstanding, if the information is stored in both electronic and hard copy form, we would expect to receive both.

As for Dr. Dodd's deposition, since that will not occur until after the final report is produced, I think it is premature to attempt to determine the circumstances under which that deposition will take place.  The economies of scale that make it beneficial to both sides to have a single protective order that would allow all MDL plaintiffs' counsel access to the study information may or may not apply to the deposition of Dr. Dodd.  Those economies of scale are not, however, dependent upon the deposition – they stand on their own merits.  If the Institute insists on being served with multiple subpoenas and fighting the access issue before Judge Scheindlin on a case by case basis, that will be its choice.  We cannot, however, hold up the protective order or production of the information pending negotiations over the deposition of Dr. Dodd.

Mike

Miller, Axline & Sawyer / phone (916) 488-6688 / fax (916) 488-4288 This private communication may be confidential or privileged. If you are not the intended recipient, any disclosure, distribution, or use of information herein or attached is prohibited.

**From:** Thornton, James C. [mailto:jamesthornton@parkerpoe.com]
**Sent:** Monday, September 20, 2010 10:52 AM
**To:** Mike Axline
**Subject:** Crecsenta Valley -- Hamner Subpoena

Mike: I just wanted to give you a status report.  I have reached out to counsel for Exxon regarding revisions/comments to the draft protective order, and also provided your newest request to broaden the scope of the order to allow disclosure of documents to other MDL counsel.  I expect to hear back from them very soon on these issues.  I have also reached out to our client regarding the disclosure to other MDL counsel.  They had many questions about the logistics of this proposal.  One question (that you and I did not discuss) was how to handle Dr. Dodd's deposition.  If the Hamner documents are shared with other MDL counsel, we would insist that Dr. Dodd only be subjected to one deposition setting.  Finally, we are in the process of accumulating the raw data and email communications.  I will let you know when I hear from Exxon's counsel.

-- James

**James Thornton**
Partner



Wachovia Capitol Center | 150 Fayetteville Street | Suite 1400 | Raleigh, NC 27601
Phone: 919.890.4165 | Fax: 919.834.4564 | www.parkerpoe.com | vcard | map

**IRS CIRCULAR 230 NOTICE:** To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

**PRIVILEGED AND CONFIDENTIAL:** This electronic message and any attachments are confidential property of the sender. The information is intended only for the use of the person to whom it was addressed. Any other interception, copying, accessing, or disclosure of this message is prohibited. The sender takes no responsibility for any unauthorized reliance on this message. If you have received this message in error, please immediately notify the sender and purge the message you received. Do not forward this message without permission.

## PROOF OF SERVICE VIA LEXISNEXIS FILE & SERVE

*New Jersey Department of Environmental Protection, et al. v. Atlantic Richfield Co., et al.*
United States District Court, Southern District of New York, Case No. 08 Civ. 00312 (SAS)

I, the undersigned, declare that I am, and was at the time of service of the paper(s) herein referred to, over the age of 18 years and not a party to this action.  My business address is 1050 Fulton Avenue, Suite 100, Sacramento, CA  95825-4225.

On the date below, I served the following document on all counsel in this action electronically through LexisNexis File & Serve:

**DECLARATION OF MICHAEL AXLINE IN SUPPORT OF PLAINTIFFS'  MOTION TO ENFORCE PROTECTIVE ORDERS' WAIVER AND DECLASSIFICATION PROVISIONS**

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on July 2,  2014, at Sacramento, California.

KATHY HERRON