

Boston  Brussels  Chicago  Düsseldorf  Frankfurt  Houston  London  Los Angeles  Miami

Milan  Munich  New York  Orange County  Paris  Rome  Seoul  Silicon Valley  Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Peter John Sacripanti
Chairman
psacripanti@mwe.com
+1 212 547 5583

July 7, 2014

BY HAND DELIVERY AND ELECTRONIC MAIL

The Honorable Shira A. Scheindlin
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1620
New York, New York  10007-1312

> Re:  Master File C.A. No. 1:00-1898 (SAS), M21-88, MDL No. 1358
> *Defendants' Pre-Conference Letter for July 15, 2014 Conference*

Dear Judge Scheindlin:

Defendants respectfully submit this letter in advance of the July 15, 2014 conference.

## DEFENDANTS' AGENDA ITEMS

### I.   *Puerto Rico*: Late Supplemental ESI Production

On June 4, five months after the close of fact discovery and with just days left in the extended expert deposition schedule, Defendants received a 60,000-page supplemental ESI production from Plaintiffs.  Plaintiffs have provided no explanation as to who the custodians were for this ESI or how it was suddenly uncovered.  Defendants requested this information from Plaintiffs on June 30, but have yet to receive a response.  Although Defendants are continuing to review this massive production, Defendants already have uncovered certain materials that are being produced for the very first time in this seven-year-old litigation. Defendants are making their best efforts to complete an initial review ahead of the July 15 conference, and may request that Plaintiffs be precluded from using this late-produced information, at minimum, in the first trial of this action.

### II.   *Puerto Rico*: Plaintiffs' Qualification of NRD Damages Sought

Plaintiffs' complaint alleges that the Commonwealth is entitled to the cost of reducing MTBE levels in groundwater to pre-discharge conditions ("primary restoration") and

The Honorable Shira A. Scheindlin
July 7, 2014
Page 2

compensation for the lost use, lost value, and lost existence value of such waters ("compensatory restoration"). However, Plaintiffs have submitted no expert opinions to either qualify the pre-discharge condition of allegedly impacted waters at the trial sites or quantify the lost use, lost value, and lost existence value of such waters.

Consequently, in an effort to avoid unnecessary motion practice, Defendants asked whether Plaintiffs intended to seek natural resource damages ("NRD") in the first trial as to the selected Trial Sites. In response, Plaintiffs confirmed that "the Commonwealth will not be seeking 'compensatory restoration damages' as understood in NRD terminology at the Phase I trial sites." However, the Plaintiffs then muddied the waters by stating that notwithstanding this position, the Commonwealth "may present evidence of values (including but not limited to passive use, existence, and option values) for waters of the Commonwealth."

By Plaintiffs' own admission, they are not seeking compensatory restoration damages for the Trial Sites and, even if they had not waived such damages, there is no dispute that they failed to submit any expert reports to support such a claim. Plaintiffs should not be permitted to "hedge their bets" by introducing island-wide "values" or damages in this first phase of the litigation, which is limited to particular Trial Sites.

### III.    *Puerto Rico*: A. Brown Late Report Addenda

Defendants request a briefing schedule to submit a motion to strike Plaintiffs' expert Anthony Brown's June 27, 2014 expert reports regarding the Texaco 800 and Shell 3042 Trial Sites. These new expert reports were filed in violation of Rule 26 and CMO 110. They were filed nearly two weeks after the close of expert discovery, without leave of Court, and after Defendants filed their pre-motion letters for summary judgment, including one pre-motion letter directed specifically at the expert report regarding Texaco 800 that Plaintiffs have now completely revised. The new expert reports are nothing more than a transparent attempt to address the critical errors in Mr. Brown's prior reports that Defendants identified during their cross-examination of Mr. Brown. His new report regarding Texaco 800 is also a blatant attempt to avoid Defendants' motion for summary judgment for that Trial Site.

Mr. Brown's site-specific expert report was due on January 24, 2014. Mr. Brown then revised that report on April 28, 2014 because it violated this Court's prior orders regarding the Trial Site delineated areas. He then filed his first "Addendum" on May 19, 2014, ostensibly in order to include "new" information that Defendants had, in fact, provided to Plaintiffs prior to Mr. Brown's April 28, 2014 revised report. As the Court is aware, Plaintiffs raised the issue of this "new information" in their pre-conference letter for the May 1, 2014 status conference. Prior to the conference, the parties conferred and reached an agreement that experts could consider any data provided on or before April 14, 2014. The information about which Plaintiffs complained was all provided before that date. The agreement also provided an extension permitting Mr. Brown to file his first "Addendum" on May 19, 2014 so that he could address this

The Honorable Shira A. Scheindlin
July 7, 2014
Page 3

information, which he did.  The agreement was put on the record at the May 1 conference. Transcript of May 1, 2014 Status Conference, pp. 4-6.

The latest "Addenda" for Texaco 800 and Shell 3042, filed on June 27, 2014 were, according to Mr. Brown, prepared because he made mistakes and incorrect assumptions in his previous attempts.[1]  There is, however, no new data and no new information in Mr. Brown's new reports.  The information that Mr. Brown now includes was available to him when he filed his original report in January 2014, his revised report in April 2014, and his first "Addendum" in May 2014.  Mr. Brown's new reports are nothing short of impermissible "do-overs."

**A.  Mr. Brown's "Addendum" Regarding Texaco 800 Is A Completely New Report.**

What Mr. Brown describes as an "Addendum" resulting in "slight changes to some sections of the revised expert report" is, in fact, an entirely new and different expert report for the Texaco 800 trial site.  Importantly, Mr. Brown relocated wells in and around the delineated area of the site and ***increased the number of wells he identifies in the delineated area from eight to at least twenty-seven.***  Mr. Brown also completely changed his capture zone analysis, on which his opinions of threatened harm are based.  Mr. Brown's prior opinion, on which all expert discovery proceeded, was that only two wells were threatened by the release at Texaco 800.  One of them, an alleged public water supply well (Beljica), has now disappeared altogether from his conceptual site model and his maps, even though in the prior model it was "pumping" 100 gpm. And a well that Mr. Brown barely mentioned in his prior reports and admitted was not threatened by contamination now has an alleged capture zone that includes the modeled plume.

The foregoing changes are based on radically different assumptions in the "Addendum's" conceptual site model, including at the very least: (1) wells pumping at new assumed pumping rates; (2) a wholesale revision to the screen intervals of the wells in the delineated area; (3) a new assumption regarding the depth of the shallow aquifer in the vicinity of the site; (4) a new assumption regarding the hydraulic conductivity of the deeper regional aquifer; and (5) the complete removal of the "Beljica" alleged public water supply well.  In addition to the new wells and new assumptions, Mr. Brown also changed the nature of his conceptual site model, which now includes for the first time estimates capture times in his particle tracking.  This is not an "Addendum."  It is a completely new report.

---

[1] On July 1, 2014, Defendants requested that these new reports be withdrawn.  In their email response rejecting Defendants' request, Plaintiffs resurrected the issue of the "new information" that was raised and resolved by agreement at the May 1, 2014 status conference.  However, Mr. Brown addressed this supposedly "new information" in his April 28, 2014 Revised Report, and he makes no reference to any of this information in his new reports.  Clearly, Plaintiffs' claim is patently false and is made here again because Plaintiffs have no legitimate excuse to file these late expert reports.

The Honorable Shira A. Scheindlin
July 7, 2014
Page 4

### B.  Mr. Brown's "Addendum" Regarding Shell #3042 Significantly Alters the Basis for His Opinions.

As it relates to the Shell 3042 Trial Site, Mr. Brown's "Addendum" completely changes his modeling for the flow of MTBE from the site to the allegedly threatened or impacted wells. Mr. Brown's prior model relied on assumed pumping rate data for certain wells near the FAUT well – the farthest from the site and the only one with a single MTBE detection – to explain how the MTBE which may have been released at the site reached that well.  He has now changed the assumed pumping rate for all but one of the wells in his model, mostly, if not completely, based on information that was available to him prior to the end of expert discovery.  He also has altered the water flow direction in his model in order to place the capture zone of the FAUT well directly beneath the site.  This is a completely new theory that differs from the one in his previous reports and on which his deposition cross-examination was based.  Finally, he has for the first time included an estimate of travel time for the contamination to reach the FAUT well, even though he admitted during his deposition to not having performed such an exercise.  These new opinions are clearly untimely.

### C.  Significant Harm Will Be Done If Mr. Brown's New Reports Are Permitted

Under the Federal Rules of Civil Procedure, any disclosures pursuant to Rule 26(a) – including expert testimony – must be supplemented or corrected pursuant to Rule 26(e)(1) in a timely manner.[2]   Failure to follow the strictures of Rule 26(a) and (e) precludes the use of the newly disclosed information or testimony unless the failure was substantially justified or is harmless. Such exclusion is automatic unless the non-disclosing party sustains its burden of showing that the failure to disclose by the expert disclosure deadline was either substantially justified or harmless.  See *Williams v. County of Orange*,  No. 03 Civ. 5182, 2005 WL 6001507, at *3-5 (S.D.N.Y. Dec. 13, 2005).

Mr. Brown's new reports are not justified and are extremely prejudicial to Defendants.  If allowed, Mr. Brown's new reports will turn six months of work by Defendants and their experts into six months of wasted time and effort.  Defendants' expert reports responded to Mr. Brown's prior reports.  Defendants cross-examined Mr. Brown on May 23-24, 2014 on the opinions and conceptual site models from the reports served prior to his deposition.  And Defendants' experts testified regarding Mr. Brown's opinions and conclusions as they were presented in his prior

---

[2] Plaintiffs' counsel admitted that it is too late for new opinions in this case. At the deposition of certain Defendants' expert John Connor, Plaintiffs' counsel, Duane Miller, asked Mr. Connor if he had an opinion about seepage rates, an opinion that is not in Mr. Connor's report and one that he had no intention to provide until asked.  But, when Mr. Connor answered Mr. Miller's question affirmatively, Mr. Miller refused to allow Mr. Connor to state that opinion, stating: "We are not going to put a new opinion on the record at this point in the case."  *See J. Connor Dep. Tr.*, at 192.

The Honorable Shira A. Scheindlin
July 7, 2014
Page 5

reports and deposition testimony.  All of this work would be of little or no value because it addresses opinions, assumptions and conclusions that Mr. Brown has now completely changed.

The extended deadline for expert depositions expired on June 15, 2014.  Therefore, Defendants cannot test the opinions, assumptions or conclusions in Mr. Brown's new reports, nor is there an opportunity to disclose opinions of their own experts in response to those reports. This is clearly prejudicial to Defendants, and is even worse because it relates to key issues in the litigation. For example, Defendants will have no opportunity to test Mr. Brown's new assumptions or his new conceptual site model for Texaco 800.  Defendants will have no opportunity to disclose their experts' new opinions, based on Mr. Brown's new opinions, as Defendants are required to do under Rule 26.  Defendants will have no opportunity to cross-examine Mr. Brown on his new reports.

The parties are in the dispositive motion stage of this lawsuit.  Prior to service of Mr. Brown's new reports, Defendants served a pre-motion letter specifically based on the conceptual site model and threatened well analysis in Mr. Brown's first "Addendum" for Texaco 800. Plaintiffs cannot defend against summary judgment by turning their expert's report into an endlessly moving target.  There is no federal rule or order from the Court in this case that allows Plaintiffs open-ended opportunities to fill the flaws and gaps in Mr. Brown's prior reports that were identified by Defendants during Mr. Brown's cross-examination.  *See, e.g.*, *Point Productions A.G. v. Sony Music Entertainment, Inc.*, No. 93 Civ. 4001, 2004 WL 345551, at *7-13 (S.D.N.Y Feb. 23, 2004).  Plaintiffs' experts are not free to continually bolster or improve their reports by endlessly researching issues that they already opined upon, or to continually supplement their opinions. *Advanced Analytics, Inc., v. Citigroup Global Markets, Inc.*, No. 04 Civ. 3531, 2014 WL 1243685, at *8-12 (S.D.N.Y. March 26, 2014); *Sandata Techs., Inc. v. Infocrossing, Inc.*, 05 Civ. 09546, 2007 WL 4157163 at *6 (S.D.N.Y. Nov. 16, 2007).  The Court should strike Mr. Brown's latest "addenda" as untimely and improper.

***

As always, we appreciate your Honor's attention this matter and ask that this letter be docketed by the Clerk's Office so that it is part of the Court's file.

Sincerely,

*Peter John Sacripanti*

Peter John Sacripanti

cc:  All Counsel of Record by LNFS, Service on Plaintiffs' Liaison Counsel