UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation | Master File No. 1:00-1989 MDL 1358 (SAS) |
| This Document Relates To: | The Honorable Shira A. Scheindlin |
| *Orange County Water District v. Unocal Corporation et al.*, Case No. 04 Civ. 4968 (SAS) | |

---

# PLAINTIFF ORANGE COUNTY WATER DISTRICT'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT DUE TO LACK OF INJURY AND DAMAGES AT CERTAIN TRIAL SITES

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A. There Is Substantial Evidence, Independent Of Mr. Brown, That The District Has Been Injured And Has Incurred Expenses As A Result Of MTBE Releases At The Four Stations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B. Mr. Brown Did Not Testify That The District Has Not Been Injured. . . . . . . . . . 8

    C. Defendants Are Estopped From Arguing Lack Of Injury. . . . . . . . . . . . . . . . . . 12

        1. Defendants' current position is clearly inconsistent with their earlier position.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        2. Defendants succeeded in persuading the Court to adopt their earlier position. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        3. Defendants' assertion of inconsistent positions would give them an unfair advantage. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

III. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

**CASES**                                                                   **PAGE**

*Aerojet-General Corp. v. Transport Indemnity Co.*
    17 Cal. 4th 38 (Cal. 1997) .................................................... 5

*In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*
    475 F.Supp.2d 286 (S.D.N.Y. 2006) ......................................... 12

*In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*
    676 F.Supp.2d 139 (S.D.N.Y.,2009). ............................ 2, 4, 10, 12, 14

*In re Methyl Tertiary Butyl Ether MTBE Products Liability Litigation*
    824 F.Supp.2d 524  (S.D.N.Y. 2011) ......................................... 11

*In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*
    980 F.Supp.2d 425 (S.D.N.Y. 2013) .................................... 4, 5, 14

*In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*
    725 F.3d 65 (2d Cir. 2013). .................................................. 15

*Mangini v. Aerojet-General Corp.*
    230 Cal.App.3d 1125 (1991) ................................................. 5

*New Hampshire v. Maine*
    532 U.S. 742 (2001) .................................................. 12, 13, 14

*Newhall Land and Farming Co. v. Sup. Ct.*
    19 Cal.App.4th 334 (Cal. App. 1993) ......................................... 5

**STATUTES**

Civ. Code § 3333 ............................................................. 1, 6

Civ. Code § 3493 ............................................................... 5

I.  **INTRODUCTION.**

Defendants' "lack of injury" motion asks the Court to find, as a matter of undisputed fact, that the District has not been injured at four stations where defendants previously argued that the District had been injured as a matter of undisputed fact. Defendants' motion should be denied, for three reasons.

First, the evidence establishes that the District has been injured, and has incurred costs, as a result of MTBE releases at the four stations. Defendants do not dispute that MTBE in groundwater at each station exceeded levels of 5 ppb (by orders of magnitude) for more than a decade. Defendants do not dispute that MTBE migrated off-site from these stations for years before remediation was initiated. Defendants ignore the testimony of the District's fate and transport expert, Dr. Wheatcraft, who concluded: "the MTBE transport model predicts . . . 108 district production wells [will] exceed 5.0 ug/l MTBE [originating from the focus plume stations, including these four stations] after 10 years . . . ." 56.1 ¶¶ 1 & 24.[1] And defendants also simply ignore the District's evidence that it has incurred significant costs as a result of MTBE releases at these stations. 56.1 ¶¶ 1 & 34. *See* California Civil Code Section 3333 (The "measure of damages [for torts] is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.")

Second, the statements from Mr. Brown excerpted by defendants do not establish that the District has not been injured and has not incurred costs. To the contrary, those statements support the conclusion that the District has been injured and has incurred costs. Although at one

---

[1] Plaintiff Orange County Water Districts' Local Rule 56.1 Statement of Disputed and Material Facts in Opposition to Defendants' Motion for Summary Judgment Due to Lack of Injury and Damages at Certain Trial Sites ("56.1").

1

station (Unocal # 5399) Mr. Brown testified affirmatively that MTBE does not pose a threat to a drinking water well, he also testified that MTBE from this station <u>does</u> pose a threat to the deeper aquifer. Dr. Wheatcraft, based upon transport modeling (which Mr. Brown did not perform), concluded that MTBE from the station <u>does</u> pose a threat to drinking water wells. The jury may reach its own conclusion with respect to the fate of MTBE from this station. *In re MTBE*, 725 F.3d 65, 114 (2d Cir. 2013) ("the jury is 'free to accept or reject expert testimony, and [is] free to draw [its] own conclusion.'") (citations omitted).

Third, defendants previously persuaded this Court that the District <u>was</u> injured at the stations that are the subject of their motion. Remarkably, defendants' motion omits any reference to their prior argument or the Court's opinion agreeing with this argument. *See In re MTBE* 676 F.Supp.2d 139, 149, fn 58 (S.D.N.Y. 2009) (finding that the District was injured as a matter of law at Unocal #5399, Unocal #518 and Thrifty 368.)[2]

There is extensive, and indeed undisputed, evidence that the District has been injured as a matter of both fact and law at the four stations, and that the magnitude and likely danger from the MTBE at the stations poses a threat to domestic water supply wells that provide water to Orange County residents. There is also substantial evidence that the District has incurred costs in responding to the MTBE contamination at each of these stations. Mr. Brown himself has testified that additional work is necessary at each station to address MTBE contamination. At a minimum there are disputed issues of fact at each of these stations that preclude summary judgment.

---

[2] At the Beacon Bay station the Court denied defendants' motion, but only on the basis that there were "genuine issues of material fact" as to whether the District had been "appreciably harmed by releases occurring after May 6, 2000." *Id.*, 676 F.Supp.2d at 152 and n. 79.

## II.   ARGUMENT.

There is substantial evidence, independent of Mr. Brown, from which a jury could conclude that the District has suffered, and will continue to suffer, injury and damages from the MTBE released at the Unocal #5399, Beacon Bay Auto Wash, Fountain Valley, Unocal #5123, and Thrifty #368 sites. Defendants' motion ignores this evidence. Mr. Brown in any event did not testify that the District has not been injured or damaged at the four sites. To the contrary, at each site Mr. Brown testified that MTBE released at the site has contaminated groundwater and that additional testing is necessary to determine the precise location and extent of the MTBE contamination. And defendants, having convinced this Court to find that the District has been injured as a matter of law at these stations, should be judicially estopped from now arguing the contrary position that the District has not been injured.

### A.   There Is Substantial Evidence, Independent Of Mr. Brown, That The District Has Been Injured And Has Incurred Expenses As A Result Of MTBE Releases At The Four Stations.

Defendants' motion relies entirely upon excerpts from the testimony of the District's remediation expert Mr. Brown, and ignores the testimony of the District's fate and transport expert Dr. Wheatcraft, the testimony of the District's Chief Hydrogeologist Roy Herndon, and extensive additional evidence. Dr. Wheatcraft testified that MTBE from all of the focus plume stations, including the four that are the subject of defendants' "no injury" motion, will impact District production wells. 56.1 ¶¶ 1 & 21-25.

Defendants' motion simply ignores this testimony. At each of these focus plume stations, Dr. Wheatcraft concluded that MTBE has been released, has impacted soil and groundwater beneath the facility and off-site beyond the facility boundary, has been present in groundwater for

3

more than a decade, and continues to migrate beyond the facility boundary. 56.1 ¶¶ 1, 6, 11, 14, 18, & 26, .

Dr. Wheatcraft prepared a separate MTBE source term for each of these four stations which was then added to the model at the location of each individual station. 56.1 ¶ 21. The MTBE source term for each station was calculated using the actual MTBE groundwater data from monitoring wells and other sampling conducted at the station. *Id.* The MTBE source term thus represents the MTBE actually released to groundwater at each site. *Id.*

When the model is run, the model depicts the transport of MTBE released at each of these sites through the aquifer to production wells within the District's service area. The model shows that MTBE from these focus plume stations, if not remediated, will impact water production wells in OCWD's service area. 56.1 ¶ 1, 7, 11, 14, 18, & 22-25. In fact, MTBE has already been detected in a number of wells. 56.1 ¶ 27. MTBE was detected, for example, in the City of Newport Beach drinking water well NB-TAMD in 2005 and 2008. 56.1 ¶ 11. NB-TAMD is associated with the District's Plume No. 1, and Unocal #5399 is one of the focus sites that are part of that plume. 56.1 ¶ 11. As the District's Chief Hydrogeologist Roy Herndon explains: "Each focus plume (with associated stations) is located within a pumping depression [of a major supply well or wells]. Based on the prevalent downward hydraulic gradient beneath each station, MTBE that has migrated off-site from each station will move downward into the principal aquifer and be carried to the pumping wells that created the pumping depressions." 56.1 ¶¶ 1 & 29.

Defendants cite this Court's opinion in *In re MTBE* 980 F.Supp.2d 425 (S.D.N.Y. 2013) (*Fresno)* and assert that the District must show that specific wells are threatened by specific

4

stations. Mot. at 7-8. Defendants then ignore the testimony of Dr. Wheatcraft, which <u>does</u> establish that MTBE from each of the focus plume stations will impact specific production wells. Defendants also ignore the difference between the District's interests in groundwater and the City of Fresno's interests in groundwater. In *Fresno*, the Court emphasized: "Fresno's judicial admission that its claims arise solely from threats to its production wells limits the scope of the Limitations Motion to a consideration of whether the deeper aquifers that serve Fresno's production wells are threatened by the groundwater or soil contamination at the seven stations at issue." 980 F. Supp.2d at 440. Here, the Court has already held that the District's interests are appreciably harmed whenever MTBE exceeds 5 ppb, even in an on-site shallow monitoring well at a service station, regardless of whether there is evidence of a threat to a drinking water well.

The District's costs to investigate contamination of its groundwaters at each station is itself a recoverable expenses under California law. *See, e.g., Newhall Land and Farming Co. v. Sup. Ct.*, 19 Cal.App.4th 334, 341 (Cal. App. 1993) (nuisance damages include money spent *investigating* groundwater contamination); *Mangini v. Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125, 1138 ("*testing costs* are sufficient to constitute 'special injury' to plaintiffs under [Civil Code] section 3493 [remedies for public nuisance]"). These expenses include the cost of drilling wells to determine the precise location of MTBE that has migrated off-site from each station, and of Mr. Brown's own site specific work at each station. See *Aerojet-General Corp. v. Transport Indemnity Co.*, 17 Cal.4th 38, 65-66 (Cal. 1997) ("[T]he insured's site investigation expenses for identifying the hazardous substance discharged may be 'response costs' insofar as they promote removal and remediation, by enabling it to determine how to neutralize the substance in question. They may also be defense costs insofar as they are

reasonable and necessary to avoid or at least minimize liability, by making it possible for it to show that it was not in fact the source of the discharge. Any assumption that site investigation expenses cannot do double duty is unsupported and hence must be rejected.").[3] *See* California Civil Code Section 3333 (The "measure of damages [for torts] is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.")

Defendants themselves argued, in their statute of limitations motion, that the District had incurred a long list of costs and expenses associated with MTBE contamination at <u>all sites</u> within the District's service area. *See* Defendants' Motion for Summary Judgment Based on the Statute of Limitations (Feb. 15, 2006) at pp. 10-14; *see also* Reply Memorandum of Law in Support of Defendants' Motion for Summary Judgment Based On The Statute of Limitations (April 14, 2006) at pp. 4-5. Having relied upon these costs to assert the statute of limitations defense, defendants should be estopped from now arguing that they are not recoverable expenses. The District's costs incurred in responding to MTBE contamination at these focus stations, include, inter alia the costs of Cone Penetration Testing of off-site groundwater for MTBE and TBA . 56.1 ¶¶ 1 & 34.

The District, through its extensive study of the basin over decades, estimates that the shallow aquifer holds approximately 5 million acre-feet of groundwater which can supply approximately sixteen years of groundwater pumping from the basin. 56.1 ¶¶ 1 & 29. The shallow aquifer is thus a body of "percolating water" that is replenished from above and

---

[3] As the District explains in response to Issue 4 in defendants' omnibus summary judgment motion, the site specific costs associated with assessing MTBE contamination at each station are also recoverable under the Orange County Water District Act.

discharges to the principal aquifer below. 56.1 ¶¶ 1 & 29. Water budgets prepared by the District as part of their groundwater management plans thus show that up to 98% of the water in the basin, including the water in the shallow aquifer, exits to production wells. 56.1 ¶ 30. This is why, as admitted by defense expert John Connor, the State of California has designated the shallow aquifer in the District's service area for "beneficial use" as a drinking water source. 56.1 ¶ 31.

Defense expert John Wilson confirmed that MTBE contamination in drinking water wells comes from releases at gasoline stations, and that virtually all drinking water aquifers are vulnerable to contamination released to shallow aquifers. 56.1 ¶ 32. By 2003 when this suit was filed, MTBE had only been detected in eight public drinking water wells. 56.1 ¶ 27. By 2010, a vulnerability assessment conducted by the District detected MTBE in fifty-six drinking water wells. 56.1 ¶ 27. This evidence supports the conclusion that MTBE contamination is in fact migrating from shallow aquifers to deeper aquifers and drinking water resources.

The shallow aquifer is itself used directly in some areas for drinking water supplies. Both Newport Beach and Huntington Beach, for example, have active drinking water wells that withdraw water from the "shallow" aquifer. 56.1 ¶ 33. Dr. Wheatcraft's model shows that Newport Beach's shallow well NB-TAMS is or will be impacted by MTBE. 56.1 ¶¶ 1 & 11. This well is associated with Plume No. 1 and the Unocal #5399 station. 56.1 ¶ 11. Beacon Bay is associated with Plume No. 3, Unocal #5123 and Thrifty #368 are associated with Plume 9. 56.1 ¶¶ 1. Wheatcraft's model also shows that MTBE impacts or will impact all of the drinking water wells associated with these plumes. 56.1 ¶ 1, 9, 11, 14, & 18.

Relying on a prior declaration from Mr. Herndon, defendants' assert that MTBE

7

contamination in the shallow aquifer does not cause harm because the shallow aquifer is "unusable." Mot. at 7. Mr. Herndon's statement, however, was specifically limited to "shallow groundwater at service station sites . . .," and did not address all "shallow' groundwater within the District's service area. Mot. at 7-8. Defendants, in any event, submit no evidence that the MTBE contamination from their stations is limited to the "shallow" groundwater "at" these sites.[4] Mr. Brown's testimony, in fact, is that MTBE contamination has migrated off-site from these focus stations and must be further assessed. At a minimum, the District will need to spend approximately $80,000 per focus station to better delineate the off-site plume at each station. Contrary to defendants' assertions, the District's claims are not limited to or based on "fear of future harm."

### B.     Mr. Brown Did Not Testify That The District Has Not Been Injured.

Defendants' "no injury" argument relies exclusively on carefully excerpted statements from Mr. Brown, and ignores other relevant parts of Mr. Brown's testimony as well as the testimony of Dr. Wheatcraft and defense experts' opinions. At each of the four stations, Mr. Brown testified that MTBE has been released, has contaminated groundwater, and requires further investigation to determine the extent of MTBE contamination, either off-site or vertically beneath the station. 56.1 ¶¶ 1, 6, 11, 14, & 18. This testimony does not establish, as asserted by defendants, that there is "no injury" to the District.

At Beacon Bay, FV for example, Mr. Brown concluded that MTBE had migrated off-site and that additional off-site investigation was warranted. Defendants Local Rule 56.1 Statement

---

[4] Defendants notably fail to define what they mean by the "shallow" aquifer. The shallow aquifer in the basin is extensive and complex. 56.1 ¶ 29.

on Damages ("Ds 56. 1") ¶¶ 2-3. Mr. Brown also opined that contamination at Beacon Bay had commingled with contamination from two other stations in Plume 3. Ds 56.1 ¶¶ 2-3.[5] He testified that additional testing may show that additional remediation is warranted and that MTBE from the station poses a threat to deeper aquifers and drinking water supply wells. Ds 56.1 ¶¶ 2-3. Dr. Wheatcraft, along with the District's Chief Hydrogeologist Roy Herndon, concluded that MTBE from this station <u>does</u> pose a threat to drinking water supply wells. 56.1 ¶ 1 & 7.

At Unocal #5399, Mr. Brown concluded that MTBE releases had migrated off-site and additional off-site investigation was warranted, but he also concluded, based upon currently available information, that MTBE from this station did not pose a threat to drinking water production wells. Ds 56.1 ¶¶ 2-3. Dr. Wheatcraft, however, along with the District's Chief Hydrogeologist Roy Herndon, concluded that MTBE from this station <u>does</u> pose a threat to drinking water supply wells. 56.1 ¶ 1 & 11.

At Unocal #5123 no off-site testing had occurred and Mr. Brown testified that MTBE may have migrated off-site and additional off-site investigation was warranted. Ds 56.1 ¶¶ 2-3. Based upon site conditions he also stated that additional <u>vertical</u> investigation was warranted to determine how far down into the aquifer MTBE had migrated. Ds 56.1 ¶¶ 2-3. Dr. Wheatcraft, along with the District's Chief Hydrogeologist Roy Herndon, concluded that MTBE from this station <u>does</u> pose a threat to drinking water supply wells. 56.1 ¶ 1 & 14.

At Thrifty 368 Mr. Brown testified that MTBE had migrated off-site, that additional

---

[5] Defense witnesses, including an expert, agree that MTBE contamination at the Beacon Bay site has migrated off-site and commingled with other stations in Plume 3. 56.1 ¶ 6.

9

vertical investigation was warranted, and that the results of such an investigation may show that MTBE poses a threat to deeper aquifers and drinking water supply wells. Ds 56.1 ¶¶ 2-3. Dr. Wheatcraft, along with the District's Chief Hydrogeologist Roy Herndon, concluded that MTBE from this station <u>does</u> pose a threat to drinking water supply wells. 56.1 ¶ 1 & 18.

Defendants ignore this testimony, as well as the rest of Mr. Brown's substantive opinions regarding these focus sites. Defendants focus instead on a limited subset of Mr. Brown's opinions to assert: "at best, all Brown does for the four Focus Sites at issue is to raise the specter of future harm, and then assert that the danger has not been conclusively ruled out." Mr. Brown, however, was not the District's primary expert on "future harm." Defendants acknowledge in their omnibus brief that Mr. Brown "did not conduct any station-to-well-specific analysis . . . ." Omnibus Mot. at 20, fn 13. Mr. Brown also made it clear that his conclusion that a site posed a "possible" threat to drinking water aquifers or wells did not mean that there was not a threat, only that he was unable to reach such a conclusion himself. 56.1 ¶ 5. With respect to Thrifty #368, for example, Mr. Brown affirmatively testified that the "absence of . . . information" concerning "the potential vertical migration of contaminants" impaired his ability to reach a conclusion concerning threats to the aquifer and drinking water wells. 56.1 ¶ 18. Mr. Brown also confirmed that he was primarily asked "to determine data gaps at the sites, and what work would be necessary to complete investigation and remediation at these sites and determine the costs." 56.1 ¶ 1. Finally, Mr. Brown's opinions that no further *on-site* remediation is necessary are irrelevant since the District's claims relate to MTBE which has escaped remediation and traveled off-site. *In Re MTBE*, 676 F.Supp.2d 139, 147 (S.D.N.Y. 2009).

Defendants also assert Mr. Brown's testimony and opinions do not establish "the

10

magnitude and likelihood of the danger," and that the District therefore cannot establish that MTBE from these four stations has prevented the public from using the District's water, or has offended the senses of a substantial number of individuals. Mot. at 8. The District notes that the "offend the senses of a substantial number of individuals" standard is relevant only to the District's public nuisance claims, but that standard is, in any event, easily satisfied here.[6]

This Court found the District can establish its public nuisance claim by (1) "proving that 'significant amounts [] of MTBE moved off-site long before groundwater remediation efforts began, and that on site remediation efforts have been too little, too late . . .,'" or (2) showing that the MTBE contamination has reached property of others, or (3) drinking water has been contaminated, or (4) that there is a potential for future contamination of public water supplies ("fear of future harm"). *In re MTBE* 824 F.Supp.2d 524, 539-541 (S.D.N.Y. 2011). Defendants address only the "fear of future harm" standard in the Court's opinion, ignoring all other bases for demonstrating the "substantial and unreasonable harm element of [a] public nuisance claim." *Id* at 541. Mr. Brown's opinions that defendants' remediation efforts failed to prevent off-site migration of MTBE contamination at each of these sites ("too little, too late"), and that sufficient MTBE contamination has migrated off-site to warrant further remedial action by the District, is exactly the type of evidence this Court found would be sufficient to establish a public nuisance.

In addition, Dr. Wheatcraft's model shows significant impacts to drinking water wells from MTBE releases at focus stations, including Unocal #5399, Beacon Bay Auto Wash,

---

[6] There is no such requirement with respect to the District's strict liability, negligence, OCWD Act, and declaratory relief claims. The standards for public nuisance claims are also addressed in the District's response to defendants separate nuisance argument in their omnibus brief.

11

Fountain Valley, Unocal #5123, and Thrifty #368. This is more than adequate to establish that there is a potential for future contamination of water supplies. 56.1 ¶¶ 1 & 22-25. The District's toxicology expert, Dr. Rudo, opined that "[b]ased on the information in scientific literature, MTBE is a genotoxic carcinogen and as such, has no safe level of exposure, especially in drinking water." 56. 1 ¶ 36. As explained in more detail in the District's opposition to defendants separate causation argument in their omnibus brief, this evidence is more than sufficient to demonstrate that MTBE releases at these sites were a substantial factor in causing the District's harm and injuries.

### C. Defendants Are Estopped From Arguing Lack Of Injury.

Defendants' assert in the "no injury" motion that the District is injured only by MTBE detections in deeper aquifers and drinking water wells. Mot. at 7-8. Defendants, however, previously persuaded this Court to rule that: "OCWD's Complaint is not limited to injuries arising from contamination of the deep aquifers or of the drinking water." *In re MTBE,* 475 F.Supp.2d 286, 294 (S.D.N.Y. 2006). The Court also held, at defendants urging: "OCWD was appreciably harmed as a matter of law when MTBE was detected in monitoring wells at or above California's Maximum Contaminant Level (MCL)." *In re MTBE,* 676 F.Supp.2d at 149.

In *New Hampshire v. Maine* 532 U.S. 742 (2001), the Supreme Court recognized that the purpose of judicial estoppel is to protect the integrity of the judicial process. *New Hampshire v. Maine* 532 U.S. 742, 749-750 (U.S. 2001) [citations and quotes omitted]. Mort importantly, the Supreme Court confirmed that judicial estoppel "'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *New Hampshire v. Maine* 532 U.S. 742, 749 (U.S. 2001) The Supreme Court

12

indicated that there are "several factors which typically inform the decision whether to apply the doctrine in a particular case:

> First, a party's later position must be "clearly inconsistent" with its earlier position. [citations omitted] Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled," [citations omitted] . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*New Hampshire v. Maine* 532 U.S. 742, 750-751,(U.S. 2001). It is clear that consideration of these factors in this matter warrants application of judicial estoppel to defendants' motion concerning the Unocal #5399, Unocal #5123, Beacon Bay and Thrifty #368 stations.

### 1. **Defendants' current position is clearly inconsistent with their earlier position.**

Defendants' position that the District has not suffered any injury is "clearly inconsistent" with defendants' earlier position that the District was injured three-years prior to the filing of the Complaint at the four stations that are the subject of the instant motion. Defendants earlier asserted that OCWD was injured when (1) MTBE contaminated groundwater resources managed by the District and (2) the District "expended resources" responding to this contamination. *See* Defendants' Motion for Summary Judgment Based on the Statute of Limitations (Feb. 15, 2006) at 17 ("SOL MSJ I"). Defendants also argued that the District was injured <u>not</u> simply when MTBE was detected in the deep aquifer or in production wells, but <u>also</u> by "MTBE-impacted groundwater inside the stations' boundaries." *See* Defendants Further Supplemental Memorandum in Support of Summary Judgment Motion Based on Statute of Limitations (May 4, 2009) at 4. Defendants explicitly argued that "OCWD's claims are time-barred under California

13

law because, more than three years before it filed suit, OCWD already had suffered "actual and appreciable" harm of the kind on which it bases its lawsuit . . ." See SOL MSJ I at 16.[7]

### 2. **Defendants succeeded in persuading the Court to adopt their earlier position.**

Defendants were successful in persuading the Court to adopt their earlier position that the District was injured prior to May 6, 2000. Based on defendants' arguments, the Court held: "OCWD was appreciably harmed as a matter of law when MTBE was detected in monitoring wells at or above California's Maximum Contaminant Level (MCL)." *In re MTBE*, 676 F.Supp.2d at 149. With respect to Unocal #5399, Unocal #5123, and Thrifty #368, the Court found that there was no dispute of material fact that the District suffered injury at all three stations prior to May 6, 2000, and granted summary judgment to defendants at these stations. *Id* at 149-150, fn 58.

### 3. **Defendants' assertion of inconsistent positions would give them an unfair advantage.**

Defendants would clearly derive an unfair advantage if they are allowed to assert the inconsistent positions that the District has been injured for statute of limitation purposes but has <u>not</u> been injured for purposes of recovering damages. Perhaps it is for this reason that defendants' motion simply ignores their prior argument and this Court's prior rulings on the statute of limitations.

---

[7] This Court has recognized that statements in briefs can be treated as "binding judicial admissions of fact," (*Fresno* at 24.) Where, as here, a party obtains relief from a Court based upon a particular argument, that party will be estopped from seeking further relief from the Court based upon an argument inconsistent with the first argument. *New Hampshire v. Maine* 532 U.S. 742, 750-751 (2001).

## III. CONCLUSION.

Defendants' carefully excerpted statements from Mr. Brown do not provide a basis for precluding a jury from considering all of the evidence and making its own determination as to whether MTBE releases at the four stations that are the subject of defendants' motion injured the District. As the Second Circuit noted in affirming this Court's opinion in the City of New York case: "The role of an expert is not to displace the jury but rather to 'provid[e] the groundwork . . . to enable the jury to make its own informed determination. . . . the jury is 'free to accept or reject expert testimony, and [is] free to draw [its] own conclusion.'" *In re MTBE*, 725 F.3d 65, 114 (2d Cir. 2013).

For all the foregoing reasons, the District respectfully requests that defendants' motion for summary judgment based upon lack of injury or damages be denied.

Date: July 21, 2014

Respectfully submitted,

By: _____
Tracey L. O'Reilly
Miller & Axline
A Professional Corporation
1050 Fulton Avenue, Suite 100
Sacramento, CA 95825-4225
Telephone: (916) 488-6688
Counsel for Plaintiff
Orange County Water District

15