**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re:  Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

**MDL No. 1358**
**Master File C.A. No.**
**1:00-1898 (SAS)**

---

**This document relates to the following case:**
*Orange County Water District v. Unocal, et al.,*
Case No. 04 Civ. 4968

---

**PLAINTIFF ORANGE COUNTY WATER DISTRICT'S**
**OPPOSITION TO BP AND SHELL DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT BASED ON *RES JUDICATA***

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     OCDA COULD NOT HAVE LITIGATED – AND DID NOT IN FACT LITIGATE –
        THE DISTRICT'S CAUSE OF ACTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        A.   OCDA Cannot Pursue Civil Actions Unless Expressly Authorized By Statute. . . 2

        B.   OCDA Did Not Have Statutory Authority To Pursue The District's
             Common-Law Causes Of Action For Injuries To The District's Own
             Real-Property Interests.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

             1.   The District's Common-Law Causes Of Action Primarily Seek Remedies
                  For Harm To The District's Property Interests.. . . . . . . . . . . . . . . . . . . . 3

             2.   The District's Public-Nuisance Cause Of Action Is Entirely Different
                  From OCDA's.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        C.   OCDA Did Not Have Statutory Authority To Pursue – And Did Not Pursue –
             The District's Orange County Water District Act.. . . . . . . . . . . . . . . . . . . . . . . 9

        D.   *Northern California River Watch* Does Not Support Defendants' Motion . . . . . . 9

III.    THERE WAS NO PRIVITY BETWEEN OCDA AND THE DISTRICT.. . . . . . . . . . . 10

IV.     THE SETTLEMENT AGREEMENTS DEFENDANTS EXECUTED EXPRESSLY STATE
        THAT THEY DO NOT BAR THE DISTRICT'S CLAIMS . . . . . . . . . . . . . . . . . . . . . 12

V.      SHELL WAIVED ANY RIGHT TO ASSERT *RES JUDICATA* BY OPPOSING THE
        DISTRICT'S REQUEST TO INTERVENE IN THE OCDA CASE . . . . . . . . . . . . . . . 14

VI.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## TABLE OF AUTHORITIES

<u>CASES</u>                                                                    <u>PAGE</u>

*Aldelphia Recovery Trust v. Goldman, Sachs & Co.*
    748 F.3d 110 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*American Employers Group v. EDD*
    154 Cal.App.4th 836 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

*Burns v. United States*
    974 F.2d 1064 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*City of Alhambra v. Division of Water Resources*
    33 Cal.2d 908 (1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*City of Martinez v. Texaco Trading & Transportation*
    353 F.3d. 758 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12

*Consumer Advocacy Group v. ExxonMobil Corp.*
    168 Cal.App.4th 675 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*County of Santa Clara v. Atlantic Richfield Co.*
    137 Cal.App.4th 292 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*County of San Luis Obispo v. Abalone Alliance*
    178 Cal.App.3d 848 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Dodd v. Hood River County*
    59 F.3d 852 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Environmental Council of Sacramento v. City of Sacramento*
    (2006) 142 Cal.App.4th 1018 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hart v. Massanari*
    266 F.3d 1155 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*In Re MTBE*
    2005 WL 150893, *5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

*In Re MTBE*
    475 F.Supp.2d 455 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 6

*In re MTBE*
        824 F.Supp.2d 524 (S.D.N.Y. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Leslie Salt Co. v. San Francisco Bay Conservation and Development Commission*
        153 Cal.App.3d 605 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Light v. State Water Resources Control Board*
        2014 WL 3388661, *5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Lux v. Haggin*
        69 Cal. 255 (1886) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*National Audubon Society v. Sup. Ct.*
        33 Cal.3d 419 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Northern California River Watch v. Humboldt Petroleum*
        162 Fed. Appx. 760 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9, 10

*Orange County Water Dist. v. Arnold Engineering Co.*
        196 Cal.App.4th 1110 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 7, 8, 9

*Orange County Water District v. Bennett*
        (1958) 156 Cal.App.2d 745 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*People ex rel. Busch v. Projection Room Theater*
        17 Cal.3d 42 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8

*People v. Sup. Ct.*
        224 Cal.App.4th 33 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11

*Pitchess v. Sup. Ct.*
        2 Cal.App.3d 653 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Safer v. Sup. Ct.*
        15 Cal.3d 230 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 6, 13

*Santa Clara Valley Water District v. Olin Corp.*
        2007 WL 2890390, *5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Schimmel v. Martin*
        190 Cal. 429 (1923) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Selma Pressure Treating Co. v. Osmose Wood Preserving Co.*
    221 Cal.App.3d 1601 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7, 8

*State of California v. Sup. Ct.*
    78 Cal.App.4th 1019 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*United Bank & Trust Co. v. Hunt*
    1 Cal.2d 340 (1934) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States ex rel. Norton Sound Health Corp. V. Bering Strait School Dist.*
    138 F.3d 1281 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Washington State Dept. Of Transp. V. Washington Natural Gas Co.*
    F.3d 793, fn. 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## **STATUTES**

Civ. Code § 3493 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Civ. Proc. Code § 731 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8, 9, 10, 13

Civ. Proc. Code § 877.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Government Code §16271(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Water Code §§ 11100, 11102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Water Code § 1242, 1410-1410.2, 1455, 1675-1675.2 . . . . . . . . . . . . . . . . . . . . . . . . 5

Water Code § 1455 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Water Code Appen. § 40-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

Water Code Appen. § 40-8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Water Code Appen. §§ 40–21.22, 40-23, 40-24 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Water Code Appen. § 40-24 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## I.   INTRODUCTION.

Defendants ARCO, BP, and Shell (collectively, "**Defendants**"), argue that their

settlements with Orange County's District Attorney ("**OCDA**") bar the District's claims under the

doctrine of *res judicata* because: (1) The District's injuries here "are identical to those alleged in

the OCDA actions;" and (2) OCDA was the District's "virtual representative in [his] earlier

action" against Defendants. Motion at 11, 15 (internal punctuation omitted).

Both arguments are without merit.  The OCDA was legally barred from seeking redress

for the harms that the District claims here, and from acting as the District's representative. *See*

*Safer v. Sup. Ct.*, 15 Cal.3d 230, 236 (1975).  The settlement agreements themselves expressly

state that they do not bar the District's claims.  And Shell cannot assert *res judicata* in any event

because Shell successfully prevented the District from intervening in the litigation that produced

Shell's settlement with OCDA.

Defendants Motion should be denied.

## II.   OCDA COULD NOT HAVE LITIGATED – AND DID NOT IN FACT LITIGATE – THE DISTRICT'S CAUSE OF ACTION.

As Defendants concede, *res judicata* cannot bar the District's claims in this action unless

OCDA's claims were based on the same "primary right" the District seeks to vindicate here.

Motion at 9.  That is, *res judicata* cannot apply unless both OCDA and the District "'seek

compensation for the same harm.'"  Motion at 9.

Defendants cannot carry their burden to satisfy this test.  It would have been legally

impossible for OCDA to litigate or settle the District's cause of action.  The District seeks

remedies for injuries to its own private-property rights, and for costs that the District incurred (or

will incur) to contain and remediate Defendants' contamination.  See Plaintiff's Responses to

1

Defendant's Rule 56.1 Statement ("**56.1**"), ¶ 57. OCDA did not have standing to – and did not in fact – seek compensation for these harms.[1]

A.      **OCDA Cannot Pursue Civil Actions Unless Expressly Authorized By Statute.**

In California, a district attorney cannot prosecute causes of action that belong to other public entities. *People v. Sup. Ct.*, 224 Cal.App.4th 33, 43-44 (2014). In fact, "a district attorney has no authority to prosecute [any] civil actions absent *specific* legislative authorization." *Id.* at 41 (2014) (emphasis original); *Safer*, 15 Cal.3d at 236. Trial courts cannot waive this strict limitation on district attorneys' civil-action authority – a "superior court act[s] in excess of its jurisdiction" if it "permit[s] the district attorney to prosecute" civil litigation without express statutory authorization. *Safer*, 15 Cal.3d at 242.

To prevail, therefore, Defendants' Motion needed to identify a statute that specifically authorized OCDA to prosecute the District's common-law and statutory causes of action.

---

[1] If the Court finds that *res judicata* does bar some part of the District's claims, then the District respectfully requests leave to amend its complaint to add indemnity and contribution claims. Defendants' Motion does not show that they obtained "good faith settlement" approval under California law. See Cal. Civ. Proc. Code § 877.6. Even if their motion had some merit – which it does not – Defendants still are liable for some share of the costs that the District must incur to remediate Defendants' MTBE. Defendants themselves are responsible for any prejudice that such an amendment may cause them. The last of their settlements with OCDA was reduced to a judgment in 2005 – Defendants should have brought this Motion then. Defendants also failed to raise – or even mention – their settlements-related arguments in their Motion for Stay or Dismissal Without Prejudice Based on Primary Jurisdiction (January 27, 2006), or in their Motion for Summary Judgment Based on Plaintiff's Lack of Cognizable Interest (January 23, 2006). Instead, Defendants chose to wait thirteen years (ARCO), eleven years (Thrifty), and nine years (Shell) – the District should not be forced to file an entirely new contribution-and-indemnity lawsuit because of Defendants' delay.

**B.    OCDA Did Not Have Statutory Authority To Pursue The District's Common-Law Causes Of Action For Injuries To The District's Own Real-Property Interests.**

Defendants have not carried their burden to prove that a statute authorized OCDA to prosecute the District's causes of action here.  Motion at 9 (*res judicata* cannot apply unless OCDA had "right to obtain redress for [the District's] harm").  Shell's evidence does not establish that Shell's settlement even applied to any of the stations that are at issue in this case.  56.1 ¶ 48.  And the only case that Defendants discuss at length – *Northern California River Watch v. Humboldt Petroleum*, 162 Fed. Appx. 760 (9th Cir. 2006)[2] – only highlights the flaws in Defendants' arguments.

**1.    The District's Common-Law Causes Of Action Primarily Seek Remedies For Harm To The District's Property Interests.**

The District is a public agency, but it filed this action based on injuries to the District's own property interests.  *See* 56.1, ¶ 57.  It is settled that a public agency can bring tort claims on its own behalf for injury to its own property.  *See Selma Pressure Treating Co. v. Osmose Wood Preserving Co.*, 221 Cal.App.3d 1601, 1616 (1990).

This Court already has found that the District "has sufficient legal interests in the groundwater to seek [common-law] damages allegedly sustained from contamination of the groundwater." *In Re MTBE*, 475 F.Supp.2d 455, 461 (S.D.N.Y. 2006).

---

[2] Because it is an unpublished opinion, *River Watch* "do[es] not have precedential effect." Second Circuit Local Rule 32.1.1(a); see also Ninth Circuit Rule 36-3(a).  In the Ninth Circuit, citing *River Watch* would be a sanctionable offense.  *Hart v. Massanari*, 266 F.3d 1155, 1180 (9th Cir. 2001).  Because this case will be tried in California, the District respectfully submits that it was not appropriate for defendants to center their motion around a case that the Ninth Circuit holds "could not be properly understood as establishing a rule, so a citation to it could have no force." *Burns v. United States*, 974 F.2d 1064, 1067-1068  (9th Cir. 1992).

OCWD's enabling Act specifically charges it with the power to "[a]ppropriate and acquire water and water rights within or outside of the district." In accordance with this mandate, OCWD has acquired a usufructuary right through its replenishment activities under California law. Because OCWD has a "possessory property right" that it alleges has been damaged by defendants' conduct, neither its negligence nor products liability claims are barred for lack of a cognizable interest.[3]

*Id.*[4]

Defendants are mistaken when they suggest that the District's interest in its own water rights are "inferior to" those of OCDA or the State. Motion at 13. The District's water rights are the District's separate property. *State of California v. Sup. Ct.*, 78 Cal.App.4th 1019, 1025 (2000) ("a water right itself has been considered an interest in real property"); *Schimmel v. Martin*, 190 Cal. 429, 432 (1923). They are protected by permits from the State Water Resources Control Board. 56.1 ¶ 52; Cal. Water Code § 1455.[5] The District cannot lose its permit rights in the

_____

[3] Because it owns substantial amounts of real estate that overlies the Basin, the District also owns the right to extract and use as much of the Basin's groundwater as it can put to reasonable and beneficial uses. *In Re MTBE*, 475 F.Supp.2d at 460, fn. 24; *City of Alhambra v. Division of Water Resources*, 33 Cal.2d 908, 925 (1949).

[4] *See also In Re MTBE*, 2005 WL 150893, *5 (District has sufficient interest in groundwater to assert a nuisance claim); *see also Orange County Water Dist. v. Arnold Engineering Co.*, 196 Cal.App.4th 1110, 1125-1126 (2011) (Orange County Water District can pursue Property Owner Action for damages and abatement of groundwater contamination); *see also* 56.1 ¶ 51 (Defendants have conceded that "[t]his Court has already determined that the OCWD Act confers upon OCWD standing to pursue its public nuisance claim against Defendants."), 52 (discussion of District's private-property water rights).

[5] Before 1914, water rights were acquired by putting water to beneficial use, and they were lost when the beneficial use stopped. *See Lux v. Haggin*, 69 Cal. 255 (1886). Since 1914, however, California has regulated water rights through a permitting system. *Light v. State Water Resources Control Board*, 2014 WL 3388661, *5 (July 11, 2014). A permitted right remains valid until the permit is revoked. Cal. Water Code § 1455; *National Audubon Society*, 33 Cal.3d at 445-447 (1983). California law continues to recognize both pre-1914 (common-law) rights and post-1914 (permitted) rights. A pre-1914 rights holder can chose to apply to the State Board for a permit protecting a water right, in which case that right remains valid unless and until the permit is revoked according to the State Board's due-process procedures. Cal. Water Code §

4

water that it uses to recharge the Basin unless they are revoked by the State Board, after the District is afforded due process according to procedures that are set forth in statutes and regulations. 56.1 ¶ 52; Cal. Water Code §§ 1242, 1410-1410.2, 1455, 1675-1675.2; *see also* Cal. Code Regs., tit. 23, §§ 850-852; *National Audubon Society v. Sup. Ct.*, 33 Cal.3d 419, 445-447 (1983).[6]

The Orange County Water District Act empowers the District to extract permit water from anywhere in the Basin, and to sell it, transfer it, or otherwise use it for any purpose that the District concludes will promote "the beneficial use [by] persons or property within the district" and "improve and protect the quality of the groundwater supplies within the district." See Cal. Water Code Appen. §§ 40–2, 40-24. No one else can extract or use the District's permit water without paying the District a fee. See Cal. Water Code Appen. §§ 40–21.22, 40-23, 40-24.

OCDA has no interest in the District's water rights and cannot represent the District with respect to the District's interests. While the District's water rights are subject to the State's *regulatory* authority under the public-trust doctrine, the State has no *ownership* interest in those rights.[6] The State's regulatory authority does not diminish the District's cause of action for "damages [that the District's property rights] sustained from contamination of the [Basin's]

---

1455; *National Audubon Society*, 33 Cal.3d at 445-447 (1983). Alternatively, the pre-1914 rights holder can choose not to apply for a permit, in which case that rights holder's right can be lost or abandoned through non-use. Here, the District's water rights are protected by current and valid State Board permits. 56.1 ¶ 52.

[6] Although California's waters are owned by "The People of the State," that term expresses "a regulatory or supervisory power rather than anything even approaching a proprietary interest or the right to exercise *physical* dominion." *State of California*, 78 Cal.App.4th at 1025-1026 (emphasis original). When it comes to acquiring water rights for its *own* use, "the State is bound by the same rules applicable to private landowners." *Id.* at 1026.

groundwater." *In Re MTBE*, 475 F.Supp.2d at 461.  Neither OCDA nor the State has common-law rights to the District's water.

Defendants have not identified any statute that authorized OCDA to prosecute the District's cause of action for harm to the District's real-property water rights.  56.1 ¶ 43. Defendants have not carried their burden to show, therefore, that OCDA sought "redress for [the] harm suffered" by the District here.  *Id.*; Motion at 9-10; *Safer*, 15 Cal.3d at 236.

> ### 2.    The District's Public-Nuisance Cause Of Action Is Entirely Different From OCDA's.

Defendants' assertion that the District "is pursuing precisely the same nuisance legal theory" as OCDA is simply wrong.  Motion at 10.  OCDA was barred by statute from pursuing the District's public-nuisance cause of action, just as the District is statutorily barred from pursuing OCDA's public-nuisance claim.

Public-nuisance actions are authorized by section 731 of California's Code of Civil Procedure.  Section 731 creates two different and mutually exclusive types of causes of action. *See Orange County Water Dist.*, 196 Cal.App.4th at 1125, fn. 4.  OCDA brought the first type of nuisance action ("**Public Officer Action**").  *See id.*  The District brought the second type of nuisance action ("**Property Owner Action**").  *See id.* at 1125-1126.  OCDA could not have brought a Property Owner Action, because OCDA did not allege that his own property interests had been harmed by a nuisance that "affects at the same time an entire community or neighborhood, or any considerable number of persons."  Cal. Civ. Proc. Code § 731.  The District could not have brought a Public Officer Action – those Actions only can be brought by city attorneys, county counsels, and district attorneys.  Cal. Civ. Proc. Code § 731; *People ex rel. Busch v. Projection Room Theater*, 17 Cal.3d 42, 57 (1976); 56.1 ¶ 46.

6

A Public Officer Action – such as OCDA's against Defendants – is an exercise of the government's traditional power to regulate public nuisances. *See People ex rel. Busch*, 17 Cal.3d at 51; *Leslie Salt Co. v. San Francisco Bay Conservation and Development Commission*, 153 Cal.App.3d 605, 618 (1984). It vindicates the right of all of California's residents to be free of substantial and unreasonable offenses against "*rights common to the public*," whether those rights involve property or not. *County of Santa Clara v. Atlantic Richfield Co.*, 137 Cal.App.4th 292, 305 (2006) (italics original). Because it is not based on property rights, a Public Officer Action plaintiff cannot recover money damages – abatement is the <u>only</u> available remedy.[7] *Selma Pressure Treating Co.*, 221 Cal.App.3d at 1613; *County of San Luis Obispo v. Abalone Alliance*, 178 Cal.App.3d 848, 859-860 (1986); 56.1 ¶ 45.

The District's Property Owner Action, in contrast, seeks to remedy harms to the District's own property that also happen to impact a "considerable number of [other] persons." *See Orange County Water Dist.*, 196 Cal.App.4th at 1125 (Orange County Water District public-nuisance suit to obtain compensation for, and abatement of, groundwater contamination is Property Owner Action, not Public Officer Action); Cal. Civ. Proc. Code § 731. The fact that the District must show that Defendants' MTBE injures the public in addition to showing that it injures the District does not change the District's private rights into public rights.[8] *Orange County Water Dist.*, 196

---

[7] It is not clear why OCDA's complaint seeks money damages. It is black letter law that OCDA could not recover such damages under California's Public Officer Action law. *County of San Luis Obispo*, 178 Cal.App.3d at 859-860.

[8] Although Defendants do not challenge the District's ability to make this showing, the District notes that it has strong evidence that Defendants' MTBE "affects at the same time [a] considerable number of persons." Cal. Civ. Proc. Code § 731. "A significant amount of MTBE has been released to groundwater within the Orange County Water District's service area. . . . This MTBE, if not remediated, will impact water production wells in OCWD's service area.

Cal.App.4th at 1125; *see also In re MTBE*, 824 F.Supp.2d 524, 539 (S.D.N.Y. 2011). The harm that Defendants' MTBE causes to the public is incidental to the harm cause to the District's interests. Cal. Civ. Code § 3493 ("A private person may maintain an action for a public nuisance, if it is specially injurious to himself, but not otherwise."). The District's Property Owner Action can only seeks damages for Defendants' injuries to the District's own property interests. Cal. Civ. Proc. Code § 731; *see also In re MTBE*, 2005 WL 1500893 at *4. And the District only can seek abatement of Defendants' contamination if it can show that Defendants' MTBE is "specially injurious to" the District's own interests. Cal. Civ. Code § 3493; *see People ex rel. Busch*, 17 Cal.3d at 51.

In sum, the District brings a Property Owner Action (an action that OCDA could not bring) to recover damages (a remedy that OCDA could not seek) for harm to the District's own property rights (rights that OCDA did not share).[9] The only overlap between the District's action

_____

MTBE has already been detected in a number of wells." After ten years, MTBE levels will exceed 5ppb in more than 100 production wells. 56.1 ¶ 53. The District's Board of Directors has determined that prompt and urgent action is necessary to abate the current and threatened MTBE in the Basin. 56.1 ¶ 54; *see* (See *Environmental Council of Sacramento v. City of Sacramento* (2006) 142 Cal.App.4th 1018, 1042 (California's Courts "exercise the required deferential standard of review" of agency decisions); *see also Orange County Water District v. Bennett* (1958) 156 Cal.App.2d 745, 750-751 (where District has made discretionary decisions on matters "committed to its care, the courts cannot enter the board room nor interfere at all with its action unless the board is exceeding its legislative powers, or its judgment or discretion is being fraudulently or corruptly exercised.").

[9] Section 371's distinction between Public Officer Actions and Property Owner Actions can seem strange where – as here – a public agency brings a Property Owner Action. But this distinction is both necessary and well established in California law. *See Selma Pressure Treating Co.*, 221 Cal.App.3d at 1616 ("[w]here a public entity can show it has a property interest injuriously affected by the nuisance," it is entitled "to pursue the full panoply of tort remedies available to private persons"). In fact, California's Court of Appeal has specifically held that the District here can bring a Property Owner Action for damages and an order requiring abatement of groundwater contamination, and that such an action by the District is "'qualitatively different'"

and OCDA's is that an abatement order is an available remedy in both.  Cal. Civ. Proc. Code §

731.  And – as Defendants concede – the remedies that are available in two separate actions "is

not determinative for purposes of *res judicata*."  Motion at 6.

What matters here is that OCDA could not have brought the District's nuisance cause of

action against Defendants, so *res judicata* cannot bar the District's suit against Defendants here.

### C.  OCDA Did Not Have Statutory Authority To Pursue – And Did Not Pursue – The District's Orange County Water District Act Claims.

The District's Fifth Cause of Action exercises the District's statutory authority to recover

costs the District "incurred in cleaning up or containing [Defendants'] contamination or pollution,

abating the effects of [Defendants'] contamination or pollution, or taking other remedial action."

Cal. Water Code Appen. §§ 40-2, 40-8.

Defendants do not identify any statute that authorized OCDA to bring suit to recover the

District's remedial-action costs.  56.1 ¶ 44.  Defendants have not carried their burden to prove,

therefore, that OCDA could have litigated the District's cause of action under the Orange County

Water District Act, and *res judicata* cannot bar the District's claim.  Motion at 9 (*res judicata*

cannot apply unless OCDA had "the right to redress [the] harm" that the District suffered).

### D.  *Northern California River Watch* Does Not Support Defendants' Motion.

To the extent that it has any relevance here, the unpublished *Northern California River*

*Watch* decision undermines Defendants' arguments.  Unlike the District, the *Northern California*

*River Watch* plaintiff did not claim any harm to its own interests.  *Northern California River*

*Watch*, 162 Fed. Appx. at 763.  Instead, that plaintiff sued to remedy the exact same harm that had

---

from a Public Officer Action.  *Orange County Water Dist.*, 196 Cal.App.4th at 1120, 1125-1126.

been the subject of an earlier suit by the district attorney. *Id.*

The *River Watch* Court expressly recognized that *"[r]es judicata* does not apply to bar claims if the later suit seeks to assert interests of a different sort in the same transaction, such as private instead of public interests." *Id.* That is precisely why *res judicata* does <u>not</u> apply here – the District seeks remedies for injuries to its *own* interests, whereas OCDA's cause of action was limited to public interests.[10] See Cal. Civ. Proc. Code § 731; Motion at 9.

## III.   <u>THERE WAS NO PRIVITY BETWEEN OCDA AND THE DISTRICT.</u>

Defendants "privity" argument fails for the same reasons that their "primary right" argument fails. It was impossible for OCDA to prosecute the District's cause of action. It was also impossible, therefore, for OCDA to serve as the District's "virtual representative." *City of Martinez v. Texaco Trading & Transportation*, 353 F.3d. 758, 763-764 (2003).[11]

Defendants are mistaken when they argue that the District and OCDA are both state agencies. Indeed, Defendants misstate the language of every authority on which they rely. *See* Motion at 12. Paragraph 4 of the District's Third Amended Complaint does <u>not</u> allege that the District is a "special district." *See* 56.1 ¶ 59. California Government Code §16271(d) specifically <u>excludes</u> agencies like the District from its definition of "Special District:" "'Special

---

[10] The other "identical issues" cases that Defendants cite are irrelevant here. In all of those cases, the same person brought a second action to recover damages for the same harm. The District and OCDA are not the same person. And OCDA was statutorily prohibited from recovering damages for the harms that the District seeks to remedy here.

[11] OCDA recognized this reality when OCDA filed his actions against Defendants. Both Complaints expressly note that "Plaintiff does not include, and the District Attorney does not represent, any water district . . ., or any other individual, regulatory agency, corporation or other entity with an interest in or pertaining to groundwater . . . located within the County of Orange." 56.1, ¶ 58.

District' does not include any agency which is not authorized to levy a property tax rate, except the Bay Area Pollution Control District." *See id.* (emphasis added). California's Water Code only includes water districts in the definition of "state agency" for the purposes of interpreting the statutory scheme governing the Central Valley Water Project, a federally owned water-infrastructure project that transports water from the Sacramento Delta. Cal. Water Code §§ 11100 and 11102. And *Pitchess v. Sup. Ct.*, 2 Cal.App.3d 653, 656-57 (1969) says that a district attorney is "technically . . . a state officer" only when "he conducts prosecutions for the punishment of crimes denounced by act of the legislature." Here, OCDA brought a civil action against Defendants, not a "prosecution[] for the punishment of crimes." *Id.*

In an analogous case, California's Northern District Court held that a California water agency "is not a state-wide agency, but a local political entity that falls outside the definition of 'State' . . .." *Santa Clara Valley Water District v. Olin Corp.*, 2007 WL 2890390, *5 (Santa Clara County Water District is not the "State").[12]

Even if the District and OCDA were both state agencies – which they are not – OCDA still would not have had standing to enter into a settlement that could preclude the District's cause of action for harm to the District's own property rights. *People*, 224 Cal.App.4th at 43-44. In *City of Martinez*, the City sued an oil company after a oil spill damaged land across which the City owned an easement. The oil company raised *res judicata* as a defense, asserting that an

---

[12] Other Ninth Circuit precedent supports *Olin*'s conclusion. *See United States ex rel. Norton Sound Health Corp. V. Bering Strait School Dist.*, 138 F.3d 1281, 1284 (9th Cir. 1998) (a "local government unit, though established under state law, funded by the state, and ultimately under state control, with jurisdiction over only a limited area, is not a "State.""); *see also Washington State Dept. Of Transp. V. Washington Natural Gas Co.*, F.3d 793, 800, fn. 5 ("a local government with authority over a limited area, is a different type of government than a state-wide agency that is part of the organized government of the state itself.")

earlier compromise with California's Department of Fish and Game barred the City's claims.

The *City of Martinez* Court held that *res judicata* could not apply because – while the City and the Department shared an interest in abating the oil spill – the Department "did not act as the City's 'virtual representative' regarding the private easement claim because [the Department] did not share in the City's private property easement and thus had no interest in ensuring the City be compensated for damage to the easement." *City of Martinez*, 353 F.3d. at 764. The Court also found that *res judicata* could not apply because the Department "did not have authority to settle the City's damage claims, nor is there any evidence that the [Department] represented the City's interests in actuality." *City of Martinez v. Texaco Trading & Transportation*, 353 F.3d. 758, 764 (2003).

*City of Martinez*'s analysis applies with equal force here, and the same result should obtain. OCDA's and the District's interests were not the same, so OCDA did not – and could not – represent the District's interests in OCDA's litigation against Defendants.

## IV.   THE SETTLEMENT AGREEMENTS DEFENDANTS EXECUTED EXPRESSLY STATE THAT THEY DO NOT BAR THE DISTRICT'S CLAIMS.

Even if it was possible for *res judicata* to apply here – which it is not – Defendants signed away any right to assert res judicata when they settled with OCDA.

OCDA's actions against Defendants were resolved by three separate settlements: one with Atlantic Richfield Company, BP Amoco Corporation, and ARCO Chemical Company; one with Thrifty Oil Company; and one with Shell.[13] All three make it clear that they do not resolve or

---

[13] Defendants' Motion does not allege – much less prove – that any of OCDA's settlements with Defendants provided even indirect benefits to the District. Both Declarations submitted by Defendants say that Defendants did not do any additional or different remediation work as a result of the settlements. Neither Declaration establishes that any Defendant spent any

preclude causes of action that belong to other agencies, including the District. Each settlement

limited its scope to "claims, violations, or causes of action" that OCDA could have pursued,

which did not include the District's causes of action here. 56.1 ¶ 60; *Safer*, 15 Cal.3d at 236;

Cal. Code Civ. Proc. § 731. Not surprisingly, the settlement agreement that was executed *before*

the District filed this action did not specifically mention the District. But the two settlements

(Thrifty and Shell) that occurred *after* the District filed this action made it clear OCDA was not

the District's representative:

> **This Final Judgment shall not serve to bar**, estop, alter, supercede, or interfere with,
> any investigation, action, order, request, demand or directive of any regulatory agency,
> person or entity having jurisdiction over . . . the groundwater or production wells within
> the County of Orange, including **any** investigation, **action**, order, request, demand, or
> directive **of** . . . **the Orange County Water District** pursuant to any of the laws and
> regulations pertaining to underground storage tanks or water. . . . **Plaintiff does not
> include**, and the Orange County District Attorney does not represent, **any water district** .
> . . or other entity with an interest in or pertaining to groundwater or production wells
> located within the County of Orange.[14]

---

money on their Plume Delineation Program – in which the District was not entitled to participate
– or gives any details as to what those Programs entailed. The District received no compensation
for its injuries, and the settlements gave the District no power to enforce the settlement terms.
The settlements did not require anyone to report to the District about anything. And the
settlements certainly did not solve the District's problem. Almost five years after the last
Defendant's settlement obligations expired, MTBE plumes that have migrated off-site from
defendants' stations continue to migrate towards the District's water production wells. 56.1 ¶¶
16, 29, 40, 50, 55.

[14] As Defendants' Motion notes, the Shell settlement modified these first few words to
read: "In entering into this Final Judgment, the parties understand that Plaintiff does not intend
for this Final Judgment to serve to legally bar, estop . . ." Motion at 14. OCDA and the Superior
Court concluded that since the judgment did not preclude the District in any event, this
modification was superfluous – a conclusion Shell's counsel never disputed or denied. In fact,
Shell's counsel impliedly agreed with OCDA's understanding by telling the Court that it was his
understanding that the structure of the Shell settlement was "identical to the structure" the Thrifty
settlement. 56.1 ¶ 56. This shared understanding by OCDA and Shell was critical to the
settlement's success – without a "meeting of the minds" about the agreement's scope, there
would not have been any settlement for the Superior Court to approve. *American Employers*

13

56.1 ¶ 56 (emphasis added).

When OCDA settled with Shell, the District appeared before the Orange County Superior Court, and requested leave to file a motion to intervene to ensure that the District's interests were protected. Both Shell and OCDA successfully opposed the District's request. 56.1 ¶ 47. OCDA's argument to the Superior Court reaffirmed that OCDA had not brought, litigated, or settled the District's cause of action:

> The Water District's claims are common-law based; they are damage based; they are independent of our claims; and we have always taken the position, and the Court has read in the document we have taken the position, that there's nothing we're doing in this settlement that has anything to do with precluding the Water District from pursuing their case in Federal Court.

Although the Superior Court was not asked to make any formal findings, the Court agreed with OCDA's analysis:

> But I understand different causes of action are being sought in the matter removed to Federal Court. And I have not seen the – any – or heard any prejudice to the parties in the other action . . .

Shell's counsel successfully argued that it would be "entirely inappropriate" for the Superior Court to allow the District to intervene, and never disputed OCDA's or the Superior Court's conclusions that OCDA's action did not bar the District's claims here. 56.1 ¶ 56.

## V.  SHELL WAIVED ANY RIGHT TO ASSERT *RES JUDICATA* BY OPPOSING THE DISTRICT'S REQUEST TO INTERVENE IN THE OCDA CASE.

Shell waived its right to raise *res judicata* as a defense when it blocked the District's

---

*Group v. EDD*, 154 Cal.App.4th 836, 846 (2007) ("the failure to reach a meeting of the minds on all material points prevents the formation of a [settlement] contract"). Having obtained the relief sought in the Superior Court, Shell is judicially estopped from unilaterally narrowing the settlement's scope in its argument to this Court. *Aldelphia Recovery Trust v. Goldman, Sachs & Co.*, 748 F.3d 110, 116 (2d Cir. 2012).

request to be heard before the Shell settlement was reduced to a judgment. *United Bank & Trust Co. v. Hunt*, 1 Cal.2d 340, 345 (1934) ("'counsel who were successful in preventing the consolidation of the issues cannot be heard later to object to a trial of the related matters upon the ground of *res judicata*.'"). "Because a primary purpose of claim preclusion is to protect defendants from being harassed by repetitive actions based on the same claim," *res judicata* does not apply where a defendant has "implicitly consented to the splitting of [the] plaintiff's claim." *Dodd v. Hood River County*, 59 F.3d 852, 862 (1994); *United Bank & Trust Co.*, 1 Cal.2d at 345.

Here, Shell "implicitly consented to the splitting" of the District's claim from OCDA's by successfully preventing the District from participating in the process that produced the settlement on which Shell now seeks to rely. "'The opportunity to be heard is an essential requisite of due process of law,' and the party bringing suit may not be deprived of that right." *Consumer Advocacy Group v. ExxonMobil Corp.*, 168 Cal.App.4th 675, 690 (2008). Having rebuffed the District's request to join in the OCDA action, Shell cannot complain about litigating that claim in this case instead.

## VI.   CONCLUSION.

For the foregoing reasons, the defendants' motion for summary judgment based on *res judicata* should be denied.

Date: July 19, 2014

Respectfully submitted,

By: _____
Michael Axline
Bryan Barnhart
Miller & Axline
1050 Fulton Avenue, Suite 100
Sacramento, CA  95825-4225
Telephone:  (916) 488-6688
Counsel for Orange County Water District

15