**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re:  Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

**MDL No. 1358**
**Master File C.A. No.**
**1:00-1898 (SAS)**

---

**This document relates to the following case:**
*Orange County Water District v. Unocal, et al.,*
Case No. 04 Civ. 4968

---

**PLAINTIFF ORANGE COUNTY WATER DISTRICT'S**
**RESPONSES IN OPPOSITION TO**
**BP AND SHELL DEFENDANTS' LOCAL RULE 56.1 STATEMENT IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT BASED ON *RES JUDICATA***

**AND**

**PLAINTIFF ORANGE COUNTY WATER DISTRICT'S**
**LOCAL RULE 56.1 STATEMENT IN SUPPORT OF ITS OPPOSITION TO**
**BP AND SHELL DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT BASED ON *RES JUDICATA***

## DEFENDANTS' FACTS

1.      In January 1999, the Orange County District Attorney ("OCDA") initiated two civil actions in Orange County Superior Court, each on behalf of "the People of the State of California": *People v. Atlantic Richfield Co., et al.* (Orange County Superior Court Case No. 80-40-30 ("*People v. ARCO*"), which named ARCO and Thrifty Oil Company ("Thrifty") as defendants; and *People v. Shell Oil Co., et al.* (Orange County Superior Court Case No. 80-40-31) ("*People v. Shell*"), which named Shell Oil Company as a defendant. (Request for Judicial Notice ("RJN") (citing original ARCO DA Complaint as Exh. A and original Shell DA Complaint as Exh. B). Both *People v. ARCO* and *People v. Shell* were filed "in the public interest in the name of the People of the State of California and the County of Orange" and alleged that defendants were responsible for unauthorized releases of MTBE gasoline from underground storage tanks they owned, operated, and/or supplied throughout Orange County, resulting in contamination of Orange County soil and groundwater. (RJN Exh. A ¶¶ 1, 10-12 and Exh. B ¶¶ 1, 10-12.)

1.      **RESPONSE:**

   A.      **Disputed That OCDA Brought Suit On The District's Behalf,**

   B.      **Disputed That OCDA Represented The District's Interest,**

   C.      **Disputed That OCDA Litigated The Causes Of Action That The District Litigates Here, And**

   D.      **Disputed That OCDA Settled Or Released Any Cause Of Action That The District Litigates Here**

   E.      **Disputed That OCDA's Settlements With Defendants Bars, Precludes, Or Otherwise Impacts The District's Causes Of Action Here**

1

Undisputed that cited documents contain the allegations described. Disputed that

Defendants have any <u>evidence</u> that OCDA ever had standing or statutory authority to initiate

civil actions – or that OCDA did in fact initiate such actions – to obtain redress for the harm that

Defendants' MTBE caused to the District's real-property water rights, or to obtain redress for the

costs that the District must incur to remediate Defendants' contamination. *See Safer v. Sup. Ct.*,

15 Cal.3d 230, 236 (1975); *see also* Cal. Code Civ. Proc. § 731; *see also* Declaration of Bryan

Barnhart in Support of Opposition to BP and Shell Defendants' Motion for Summary Judgment

Based on *Res Judicata* (**"Barnhart Decl."**), ¶¶ 3-6, Exh. 2-5.

Defendants' January 23, 2006 Memorandum of Law in Support of Motion for Summary

Judgment of Plaintiff's Claims for Damages Based on MTBE Detections Below the Secondary

MDL (**"MCL Motion"**) in the instant case concedes that the District "is seeking damages on

behalf of itself only."  MCL Motion, pg 4, fn. 1; *see also* Defendants' January 23, 2006

Memorandum of Law in Support of Motion for Summary Judgment of Plaintiff's Claims Based

on Plaintiff's Lack of Cognizable Interest[1] (**"Cognizable Interest Motion"**), pg. 6, fn. 6 (any

claims by the District on behalf of "another party" would not be "properly before [this] Court");

*see also* Plaintiff's 56.1 Statement of Material Facts (**"Plaintiff's Facts"**), No. 43 and 44.

Defendants also have conceded that this "Court has already determined that the OCWD

Act confers upon [the District] standing to pursue its public nuisance claim against Defendants."

Cognizable Interest Motion, pg. 7.

---

[1]The District respectfully requests that this Court take judicial notice of Defendants' MCL
Motion and Cognizable Interest Motion, which are part of the Court's file in this action.  Fed.
Rule. Evid. R. 201.

The District is not a "special district," or a "state agency." Cal. Gov. Code § 16271(d) ("Special District' does not include any agency which is not authorized to levy a property tax rate, except the Bay Area Pollution Control District."); *see also Santa Clara Valley Water District* v. *Olin Corp.*, 2007 WL 2890390, *5 (California County Water District "is not a state-wide agency, but a local political entity that falls outside the definition of 'State' in CERCLA."); *see also United States ex rel. Norton Sound Health Corp. V. Bering Strait School Dist.*, 138 F.3d 1281, 1284 (9th Cir. 1998) (a "local government unit, though established under state law, funded by the state, and ultimately under state control, with jurisdiction over only a limited area, is not a "State.'"); *see also Washington State Dept. Of Transp. V. Washington Natural Gas Co.*, F.3d 793, 800, fn. 5 ("a local government with authority over a limited area, is a different type of government than a state-wide agency that is part of the organized government of the state itself.")

OCDA only is "technically . . . a state officer," furthermore, when "he conducts prosecutions for the punishment of crimes denounced by act of the legislature." Here, OCDA's brought a civil action against Defendants, not a "prosecution[] for the punishment of crimes." *Pitchess v. Sup. Ct.*, 2 Cal.App.3d 653, 656-57 (1969).

Defendants have conceded that the State's "ownership" of California's groundwater "confers no powers of possession or use" -- "when it comes to removing or controlling the natural waters, the State is bound by the same rules applicable to private landowners." Cognizable Interest Motion, pg. 9; *State of California v. Sup. Ct.*, 78 Cal.App.4th 1019, 1026 (2000). As Defendants also have pointed out, their MTBE could cause the District to lose "pump tax revenue," a damage that OCDA has no right or interest in recovering. Cognizable Interest Motion, pg. 9.

3

OCDA's complaints against Defendants expressly state that OCDA did not bring or litigate any cause of action that belongs to the District,

> Plaintiff does not include, and the Orange County District Attorney does not represent, any water district . . . or other entity with an interest in or pertaining to groundwater or production wells located within the County of Orange.

Declaration of Peter C. Condron in Support of BP and the Shell Defendants' Motion for Summary Judgment ("**Condron Decl.**"), Exh. A, pg. 2; Declaration of Lawrence A. Cox in Support of BP Defendants' Motion for Summary Judgment Based on *Res Judicata* ("**Cox Decl.**"), Exh. B, pg. 2.

Disputed that cited documents are relevant or support defendants' *res judicata* argument, and incorporate by reference Plaintiff's Responses to 56.1 ¶¶ 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42.

2.    In October 2000, the OCDA filed a First Amended Complaint ("BP DAFAC") in *People v. ARCO*, which added BP Amoco as a defendant and contained additional allegations regarding the health and environmental risks of releases of MTBE gasoline into Orange County groundwater. (Declaration of Lawrence A. Cox In Support of BP's Motion for Summary Judgment ("Cox Decl.") 13 and Exh. B (BP DAFAC) ¶¶ 49 ("MTBE poses unique risks to groundwater and especially to drinking water"); ¶¶ 56-76 (entitled "DEFENDANTS LEARN OF YET DENY THE RISKS POSED BY MTBE"); ¶¶ 87 -91 (entitled "MTBE DESTROYS STATE WATER SUPPLIES"); ¶ 101 ("the Orange County Water District ("OCWD") ... conducts sampling and testing of groundwater in the Santa Ana River Basin" which shows MTBE concentrations): 113, 117 (defendants' release of MTBE gasoline "constitutes a continuing nuisance" in Orange County); ¶ 102 ("MTBE has migrated, and is migrating, from

the sources of release.-- underground storage tank systems and pipelines containing gasoline --
into deeper drinking water supplies in Orange County."); ¶ 104 (at "approximately sixty" of
ARCO's "owned and previously owned sites in Orange County," unauthorized releases of
gasoline had caused "groundwater contamination, including, but not limited to, MTBE."); ¶ 110
(defendants' "dilatory and ineffective response ... in addressing MTBE contaminant plumes"
had resulted in "the spread and migration of MTBE contamination ... into deeper soil and
groundwater ... placing drinking water supplies at risk.")).)

2.   **RESPONSE:**

Undisputed that the cited documents contain the allegations described.  Disputed that
cited documents are relevant or support defendants' *res judicata* argument, and incorporate by
reference Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42.


3.   The BP DAFAC alleged claims for equitable relief, damages and penalties under
theories of public nuisance, as well as violations of California's Health& Safety Code, Fish &
Game Code, and Business & Professions Code. (Cox Decl. Exh. B (BP DAFAC ¶ 3 (seeking to
(1) "enjoin defendants from ... further violations of the laws and regulations," (2) "compel
defendants to cleanup and abate soil and groundwater contamination caused by unauthorized
releases of gasoline and [MTBE]...," (3) recover damages from defendants where such
contamination cannot be cleaned up or abated...," (4) "penalize defendants with ... civil
penalties," and (5) require defendants to "disgorge the monetary profits [they had] obtained.");
¶¶ 116- 122 (public nuisance); 11123-126, 130-168 (Health & Safety Code); 11126-129 (Fish &
Game Code); ¶¶ 169-170 (Bus. & Prof. Code); Prayer ¶ 1 (defendants "be ordered to effectively
and expeditiously cleanup and abate contaminant plumes" at the listed stations"); Prayer ¶ 2

5

(defendants "be ordered to pay damages ... where cleanup and abatement of contaminated groundwater cannot be achieved")).)

**3.    RESPONSE:**

Undisputed that the cited documents contain the allegations described.  Disputed that the BP DAFAC alleged claims for damages under a theory of public nuisance.  OCDA did not claim any individualized injury to his own property, so it was legally impossible for OCDA to bring a public-nuisance claim for damages.  56.1 ¶ 45; Cal. Civ. Proc. Code § 731;  Disputed that cited documents are relevant or support defendants' *res judicata* argument, and incorporate by reference Plaintiff's Responses to 56.1 ¶¶ 1, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42.


4.    In April 2001, the OCDA filed a First Amended Complaint ("Shell DAFAC") in *People v. Shell*, which contained additional allegations regarding releases of MTBE gasoline. (Condron Decl., Exh. A (Shell DAFAC 121 (at least 81 service stations owned, operated and/or supplied by the Shell Defendants had "soil and/or groundwater contamination caused by the unauthorized release or releases of gasoline and/or MTBE to the environment from ... underground storage tank systems...."); 123 (releases "resulted in the spread and migration of MTBE contamination away from the original source zone (underneath and around underground storage tank systems) into deeper soil and groundwater, decreasing the feasibility and increasing the cost of cleanup and placing drinking water supplies at risk"); ¶ 12 (Shell "failed to take appropriate corrective action to remedy the impact" of the releases and "knowingly allowed the continued migration of such releases through and into soil, groundwater and sources or potential sources of drinking water of Orange County and the State of California.")).

6

4.    **RESPONSE:**

Undisputed that the cited documents contain the allegations described.  Disputed that cited documents are relevant or support defendants' *res judicata* argument, and incorporate by reference Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42.

Shell does not carry its burden to prove that there is any overlap between the stations that were at issue in its action against OCDA, and the stations that are at issue here.  According to Paragraph 21 of OCDA's First Amended Complaint, the stations at issue were listed in Exhibits A and B.  But Shell did not submit Exhibits A and B with its Motion.  *See* Condron Decl., Exh. A.  Shell's settlement agreement with OCDA also does not identify the covered stations.  *See* Condron Decl., Exh. C.  Nor does Shell submit any other evidence tending to show that the stations that the OCDA settlement released are the same as the stations that are at issue in this action.

5.    In December 2001, the OCDA amended the complaint in *People v. Shell* to identify Equilon Enterprises LLC as one of the "Doe" defendants it had sued. In October 2003, the OCDA added Texaco Refining and Marketing Inc, as another of the "Doe" defendants. (RJN, Exh. B.)

5.    **RESPONSE:**

Undisputed that the cited documents contain the allegations described.  Disputed that cited documents are relevant or support defendants' *res judicata* argument, and incorporate by reference Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42.

6.      The Shell DAFAC alleged claims for equitable relief, damages and penalties
under theories of public nuisance, and violations of California's Health & Safety Code, Water
Code, Fish & Game Code, and Business & Professions Code. (Condron Decl. Exh. A (Shell
DAFAC ¶¶ 28- 34 (public nuisance); ¶¶ 35-38, 43-76 (Health & Safety Code); ¶¶ 39-42 (Fish &
Game Code); ¶¶ 77-78 (Bus. & Prof. Code); Prayer ¶ 1 (defendants "be ordered to effectively
and expeditiously cleanup and abate contaminant plumes consisting of gasoline, its constituent
chemicals BTEX, and the chemical additive MTBE"); Prayer ¶ 2 (defendants "be ordered to pay
damages ... where cleanup and abatement of contaminated groundwater cannot be achieved")).)

6.      **RESPONSE:**

Undisputed that the cited documents contain the allegations described.  Disputed that the
BP DAFAC alleged claims for damages under a theory of public nuisance.  OCDA did not claim
any individualized injury to OCDA's own property, so it was legally impossible for OCDA to
bring a public-nuisance claim for damages.  56.1 ¶ 45; Cal. Civ. Proc. Code § 731; Disputed that
cited documents are relevant or support defendants' *res judicata* argument, and incorporate by
reference Plaintiff's Responses to 56.1 ¶¶ 1, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42.


7.      In both *People v, ARCO* and *People v. Shell*, the OCDA brought claims on behalf
of the public to protect the public's property interest in groundwater. (Cox Decl. Exh. B (BP
DAFAC ¶ 1 (OCDA "brings this action on behalf of the People of the State of California" to:
"protect the public from health and safety hazards" and "prevent destruction of Orange County's
groundwater resources. ..."); ¶ 6 ("Plaintiff, the People, is the public located within the County
of Orange, as represented by. .. the District Attorney."); ¶ 34 ("All water within the State,
including groundwater, is the property of the people of the State of California." (citing Cal.

8

Water Code §§ 102 & 104)); Condron Decl., Exh. A (Shell DAFAC ¶ 1 (DA "brings this action

in the public interest in the name of the People of the State of California and Orange County" to

"protect the public from health and safety hazards... and to protect the environment of Orange

County..."); ¶ 5 ("Plaintiff, the People, is the public located within the [sic] Orange County, as

represented by ... the District Attorney").

 7.   **RESPONSE:**

 Undisputed that the cited documents contain the allegations described.  Disputed that

cited documents are relevant or support defendants' *res judicata* argument, and incorporate by

reference Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42.


 8.   Both the OCDA and OCWD are agencies of the State of California.

 8.   **RESPONSE:**

 Disputed.  Water Districts, including the Orange County Water District, are not state

agencies. *Santa Clara Valley Water District* v. *Olin Corp.*, 2007 WL 2890390, *5 (Santa Clara

County Water District is not the "State");  Other Ninth Circuit precedent supports *Olin*'s

conclusion. *See United States ex rel. Norton Sound Health Corp. V. Bering Strait School Dist.*,

138 F.3d 1281, 1284 (9th Cir. 1998) (a "local government unit, though established under state

law, funded by the state, and ultimately under state control, with jurisdiction over only a limited

area, is not a "State.""); *see also Washington State Dept. Of Transp. V. Washington Natural Gas

Co.*, F.3d 793, 800, fn. 5 ("a local government with authority over a limited area, is a different

type of government than a state-wide agency that is part of the organized government of the state

itself.")

 Defendants misstate the plain language of the documents on which they rely.  See

9

Motion at 12.  Paragraph 4 of the District's Third Amended Complaint does not allege that the District is a "special district."  See Condron Decl., Exh. C.  California Government Code section 16271(d) – on which Defendants rely – expressly states that the term "Special District' does not include any agency whic is not authorized to levy a property tax rate, except the Bay Area Pollution Control District."  (Emphasis added.)  California's Water Code only includes water districts in the definition of "state agency" for the purposes of interpreting the statutory scheme governing the Central Valley Water Project, a federally owned water-infrastructure project that transports water from the Sacramento Delta to other parts of the state (mostly to agricultural areas in California's Central Valley).  Cal. Water Code §§ 11100 and 11102.  And *Pitchess v. Sup. Ct.*, 2 Cal.App.3d 653, 656-57 (1969) says that a district attorney is "technically . . . a state officer" only when "he conducts prosecutions for the punishment of crimes denounced by act of the legislature."  Here, OCDA brought a civil action against Defendants, not a "prosecution[] for the punishment of crimes."

Defendants' Motion concedes that *res judicata* cannot apply unless OCDA had "the right to obtain redress for [the] harm [that the District] suffered."  Motion, 9.  OCDA only has "the right to obtain redress for a harm" if a statute explicitly authorizes him to bring suit.  *Safer v. Sup. Ct.*, 15 Cal.3d 230, 236 (1975).  Defendants have not identified any statute that permits OCDA "to obtain redress for [the] harm" that Defendants' MTBE continues to cause to the District's Water Rights, or that permits OCDA "to obtain redress for" the costs that the District must incur to remediate Defendants' contamination.  Plaintiff's Facts, No. 43 and 44.  *See also* Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42.

9.    The OCDA acts as an officer of Orange County and the State of California in

exercising the powers for which he was elected. (See *Pitchess v. Superior Court*, 2 Cal.App.3d 653, 656-57 (1969), citing Cal. Govt. Code §§ 24000(a); 26500 - 26505).

    **9.**    **RESPONSE:**

Disputed that OCDA acts as an officer of the State fo California in civil cases. "powers for which [OCDA] was elected" are narrowly circumscribed by statute. OCDA only acts as an officer of the State in criminal prosecutions. OCDA does not have the power to pursue the District's causes of action here.

*See also* Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42.

    10.    OCWD is a special district within Orange County that acts as an agency of the State of California. (See *In re MTBE*, 522 F.Supp.2d 557, 559 n.9 (S.D.N.Y. 2007); *In re MTBE*, 522 F.Supp.2d 569, 574 (S.D.N.Y. 2007), citing Cal. Govt. Code § 16271 [d]).

    **10.**    **RESPONSE:**

Disputed. The District is not a special district under California law, nor is it a California agency. *See also* Plaintiff's Responses to 56.1 ¶¶ 1, 3, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42.

    11.    OCWD circulated a copy of the BP DAFAC, a press release from the OCDA, and newspaper articles about the lawsuit to its Water Producers and Board of Directors. (Cox Decl. Exh. ¶ 6, Exh. D (Oct. 20, 2000 Memorandum from J. Kennedy of OCWD to OCWD Water Producers (attaching (1) Oct. 19, 2000 OCDA Press Release ("alleg[ing] contamination at 116 gas stations countywide," that "[p]ollution of this nature caused by ARCO ... could cause Orange

County to lose a substantial portion of its water supply," and that remediation at the sites cited in

the lawsuit "could take years to complete");-(2) Stuart Pfeifer, <u>County Seeks Millions From Oil</u>

<u>Firms</u>, L.A. Times, Oct. 20, 2000, at B 1 (defendants "blamed for contaminating groundwater

underneath more than 100 gas stations across the county."); (3) Pat Brennan, <u>Prosecutors Allege</u>

<u>MTBE Conspiracy</u>, Orange County Register, Oct. 20, 2000, at Local News p.  (OCDA contends

ARCO "has negligently allowed [MTBE] into Orange County's groundwater"); and (4) Pat

Brennan, <u>ARCO Sued Over Gas Additive Leak</u>, Orange County Register, Oct. 20, 2000, at Local

News p. 6 ("the contamination represents a potentially enormous impact on public funds if it

seeps from shallow ground water into deeper aquifers.")).)

    **11.**   **RESPONSE:**

Undisputed that the cited documents contain the allegations described.  Disputed that

cited documents are relevant or support defendants' *res judicata* argument, and incorporate by

reference Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42.


    12.    OCWD, including many of its senior staff, were familiar with and actively

monitored the OCDA's lawsuit against BP, and provided "technical assistance" to the District

Attorney "to help in the enforcement of cleanup of MTBE and other petroleum contaminants

from leaking gasoline storage tanks in Orange County." (Cox Decl. Exh. E (July 14, 2000 Ltr.

From W. Mills to J. Miller noting that the OCDA "is involved in litigation against oil companies

in an effort to address the MTBE problem."); Cox Decl. Exh. F (Wildermuth Dep.

216:24-217:17 ("And at the same time, this DA was ... doing the case on MTBE") & Exh. 24

(Oct. 10, 2001 email from R. Herndon to R. Wildermuth and J. Glasser discussing the District

Attorney's lawsuit)); Cox Decl. Ex F; Cox Decl. Exh. J (A. Brown Dep., 1111:11-1112:12 ("I

believe there may have been a meeting or maybe more than one meeting where the Orange

County Water District was present, and they were involved as the agency responsible for

managing and protecting the ... groundwater resources of the coastal plain of Orange County.

And the service stations that were the subject of the Orange County District Attorney's case ...

most, if not all, were located within the limits of the Orange County Water District.")); Cox

Decl. Exh. K (Yamachika Dep. Exh. 38 ("Last month the OCDA ... received the go-ahead from

the judge to proceed with his lawsuit against ARCO for contamination from numerous LUFT

sites.... OCWD supports the efforts of the DA to expedite cleanup by the responsible parties."));

Cox Decl. Exh. L (OCWD-MTBE-001 -03 8623 -24 (Safe Drinking Water Subcommittee

Meeting ACWA Fall Conference) (same quote as Yamachika Dep. Exh. 38)).)

12. **RESPONSE:**

Undisputed that certain members of the District's staff knew that OCDA sued

Defendants.  Disputed that the District monitored or assisted OCDA in any way that would

create privity. The cited documents do not support the textual assertion.  Object to the testimony

of Anthony Brown, who is not a District employee, as hearsay and speculation. Disputed that

cited documents are relevant or support defendants' *res judicata* argument, and incorporate by

reference Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42.


13.     On December 17, 2002, the Orange County Superior Court entered a Final

Judgment Pursuant to Stipulation and Order Thereon ("BP Final Judgment"), wherein the OCDA

settled all claims against Atlantic Richfield Company, BP West Coast Products LLC, and BP

Products North America Inc. (Cox Decl. Exh. A (BP Final Judgment p. 1 (defining "Settling

Defendants" as "defendants Atlantic Richfield Company, BP Amoco Corporation, and ARCO

13

Chemical Company"); ¶ 6.0(i) (BP Final Judgment "is a final and binding resolution and

settlement of all claims ... that were alleged by the First Amended Complaint ... or could have

been asserted, based on the facts alleged in the First Amended Complaint... against: (i) each of

the Settling Defendants and each of their subsidiaries, corporate parents, [and] Affiliates

(including, without limitation, BP West Coast Products LLC, BP Products North America

Inc....").)

### 13.   **RESPONSE:**

Undisputed that OCDA's settlements with Defendants resolved OCDA's claims against

those Defendants.  Disputed that OCDA's settlements with Defendants had any impact on the

District's causes of action against Defendants.  *See Safer v. Sup. Ct.*, 15 Cal.3d 230, 236 (1975);

*see also* Cal. Code Civ. Proc. § 731; *see also* Barnhart Decl., ¶¶ 3-6, Exh. 2-5; see also 56.1 ¶¶

43-60; Disputed that cited documents are relevant or support defendants' *res judicata* argument,

and incorporate by reference Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31,

33, 34, 36, 40, 42.


14.     Pursuant to the terms of the BP Final Judgment, ARCO and BP Amoco agreed to

pay $5 million to reimburse the OCDA's cost of investigation. (Cox Decl. Exh. A (BP Final

Judgment 13).)


### 14.   **RESPONSE:**

Undisputed that the document says that Defendants agreed to pay OCDA $5 million.

Disputed that this amount was paid.  Defendants cite no evidence that they actually paid OCDA

anything.  Disputed that cited documents are relevant or support defendants' *res judicata*

14

argument, and incorporate by reference Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17,

20-22, 24-31, 33, 34, 36, 40, 42.


15.    Pursuant to the terms of the BP Final Judgment, ARCO and BP Amoco agreed to

pay $3 million to fund a "Plume Delineation Program," under which an "independent third party

environmental consultant" selected by the OCDA would evaluate the investigation and

corrective action conducted at the service stations covered by the BP Final Judgment and

identify what further action should be taken to remediate the MTBE and gasoline releases found

there. (Cox Decl. Exh. A (BP Final Judgment ¶¶ 4.0-4.10; ¶ 4.4 (OCDA's consultant was

expressly called upon to "determine if the delineation of the PLUME at each of the Subject Sites

provides the information needed to identify ... corrective actions that are appropriate in light of

any potential impacts the PLUME may pose to human health, the groundwater resource, and the

environment. "); ¶ 4.2(b)(A) (consultant authorized to identify additional actions required if

needed at the sites in question, "including, but not limited to," the "drilling and installation of

new wells and/or boring to further analyze and delineate the PLUME at the Subject Sites,...

which may potentially include delineation in both the lateral and vertical direction that

approximates the 5 ppb MTBE contour line in groundwater."))).

### 15.    **RESPONSE:**

Undisputed that the cited documents contains the alleged words. Disputed that this

amount was paid. Defendants cite no evidence that they actually paid anyone anything.

Disputed also that there ever was any connection between Defendants' alleged Plume

Delineation Programs, on the one hand, and any interest or property of the District, on the other

hand. Defendants do not provide any specific statements or evidence about what their Plume

Delineation Programs actually entailed, nor do Defendants assert or prove that the Programs

actually benefitted the District (or anyone else, for that matter).

Defendants' settlements did not give the District any right to participate in the vaguely

defined "Plume Delineation" programs. See Cox Decl. Exh. A and H. The settlements did not

require anyone to report to the District about anything. The settlements did not give the District

the power to enforce the settlements. Nor did the settlements solve the District's problem.

Almost five years after the last Defendant's settlement obligations expired, MTBE plumes that

have migrated off-site from defendants' stations continue to migrate towards the District's water

production wells. *See* Declaration of Stephen Wheatcraft, submitted with the District's

Opposition to Defendants' Omnibus Motion for Summary Judgment.

*See also* Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36,

40, 42.


16.      Pursuant to the terms of the BP Final Judgment, ARCO and BP Amoco become

subject to significant injunctive relief which remained in effect for five years following entry of

the BP Final Judgment. (Cox Decl. Exh. A (BP Final Judgment ¶¶ 5.0-5.6).)

**16.   RESPONSE:**

Disputed. The cited documents do not contain the word significant. The word

"significant" is simply Defendants' characterization unsupported by any citation to evidence.

The injunctive relief only required defendants to do what they already were legally required to

do – to begin the process of delineating their plumes, to comply with agency directives, and to

refrain from continuing to break the law. See, e.g., Cox Decl., Exh. A, pg. 9 (enjoining

16

Defendants from continuing to "violate the corrective action requirements of the Barry Keene Underground Storage Tank Cleanup Trust Fund Act of 1989").

According to the Declaration of Henry Winsor that Defendants offered in support of their Motion ("**Winsor Decl.**"), the settlements' allegedly "significant injunctive relief" did not cause Defendants to make any "substantial" changes to the demonstrably inadequate remediation that they already were doing. "To the best of my recollection, the independent consultant provided some <u>minor</u> <u>suggestions</u> to enhance the ongoing remedial work, however, <u>none of those</u> <u>suggestions were substantial or contrary to the course of corrective action that had been</u> <u>proposed by BP</u>." Winsor Decl, ¶ 4 (emphasis added).

The settlement's "injunctive relief" was not "significant" enough to solve the MTBE-contamination problem that Defendants created. Defendants' plumes remain undelineated. Defendants' contamination remains unremediated. *See* Declaration of Stephen Wheatcraft, submitted with the District's Opposition to Defendants' Omnibus Motion for Summary Judgment.

*See also* Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42.

17. The BP Final Judgment also incorporated a comprehensive release which applied to an attached list of 183 ARCO service station sites. (Cox Decl. Exh. A (BP Final Judgment ¶ 6.1 ("This Final Judgment also constitutes a release from any known or unknown past or present claims, violations, or causes of action that were or could have been asserted in the First Amended Complaint" with regard to any "unauthorized release of petroleum product ... or additive or constituent of such product ...; the use of MTBE and/or other fuel oxygenates in

gasoline, or any alleged failure to assess, remediate, or otherwise take corrective action in

response to any such authorized release at the sites listed in Exhibit A, whether asserted or

unasserted or known or unknown ."); BP Final Judgment Exs. A & B (listing 183 ARCO

Owned/Leased Sites)).)

17.   **RESPONSE:**

Disputed.  The BP Final Judgment release was not comprehensive.  The release was

strictly limited to causes of action that OCDA could have brought – which did <u>not</u> include the

District's cause of action here.  See Cox Decl. Exh. A, ¶ 6.0(i) (BP Final Judgment "is a final

and binding resolution and settlement of all claims ... that were alleged by the First Amended

Complaint ... or could have been asserted, based on the facts alleged in the First Amended

Complaint"); see also Cox Decl., Exh. H, pg. 11 (same); *see also Safer v. Sup. Ct.*, 15 Cal.3d

230, 236 (1975); *see also* Cal. Code Civ. Proc. § 731; *see also* Barnhart Decl., ¶¶ 3-6, Exh. 2-5;

*see also* Plaintiff's Facts, No. 43-60.

OCDA's complaints against Defendants expressly state that OCDA did not bring or

litigate any cause of action that belongs to the District:

> Plaintiff does not include, and the Orange County District Attorney does not represent,
> any water district . . . or other entity with an interest in or pertaining to groundwater or
> production wells located within the County of Orange.

Condron Decl., Exh. A, pg. 2; "Cox Decl.", Exh. B, pg. 2.

*See also* Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36,

40, 42.

18.   The BP DAFAC was the operative complaint when the BP Final Judgment was

entered on December 17, 2002 (Cox Decl. ¶ 2 and Exh. A (BP Final Judgment, Recitals A &

18

B).)

18.     **RESPONSE:**

Disputed.  Defendants provide no evidence that supports this allegation.  *See also*

Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42.


19.     The BP Final Judgment was approved and entered by the Court in December

2002 – the same month in which BP stopped adding MTBE to gasoline produced in California.

(Cox Decl. Exh. A (BP Final Judgment); Alson Decl. 1 3.)

19.     **RESPONSE:**

Undisputed that cited document says that it was approved and entered by the Court in

December 2002.  Disputed that Defendants' evidence proves that any of these allegations are

true.  Disputed that cited documents are relevant or support defendants' *res judicata* argument,

and incorporate by reference Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31,

33, 34, 36, 40, 42.


20.     BP complied fully with its obligations under the BP Final Judgment. (Winsor

Decl. ¶¶ 2, 3.)  Neither the OCDA nor the OCWD have ever voiced any concerns about the

terms of the settlement or BP's adherence to those terms, nor was the dispute resolution process

identified in paragraph 5.7 of the BP Final Judgment ever invoked. (Winsor Decl. ¶ 4.)

20.     **RESPONSE:**

Disputed.  Defendants' provide no evidence that BP complied with its obligations, or that

OCDA never voiced any concerns.

The District was not a party to the settlement agreements, and the settlement agreements

do not permit the District to invoke those agreements' dispute-resolution procedures.

The settlements did not involve the District in the Plume Delineation Programs, nor did they require anyone to report to the District about anything. The District expressed its "concerns" with the impact of ongoing MTBE contamination on the District's interests in groundwater in the Basin by filing this lawsuit and prosecuting it for the last eleven years. Nothing that occurred as a result of the settlement has alleviated the District's concerns or the harm to the District. *See* Declaration of Stephen Wheatcraft, submitted with the District's Opposition to Defendants' Omnibus Motion for Summary Judgment.

*See also* Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42.


21.     In *People v. ARCO*, following the BP Final Judgment (i.e., as to Thrifty), OCWD appeared as an "interested party," and unsuccessfully moved to stay or continue the hearing on final judgment. (Cox Decl. Exh. I (Jan. 5, 2005 Minute Order (denying OCWD's motion for stay or continuance and signing Thrifty Final Judgment Pursuant to Stipulation and Order Thereon)); Cox Decl. Exh. H (Feb. 11, 2003 Thrifty Final Judgment) (16.6 (no estoppel or interference with rights or action of listed regulatory agencies overseeing the Thrifty sites including OCWD)).).

**21.   Response:**

Disputed. This statement confuses the Thrifty judgment with the Shell judgment.

The Thrifty settlement was the second settlement that occurred in *People v. ARCO*. The Thrifty settlement was not reduced to a judgment on January 5, 2005. The Shell settlement was reduced to a judgment on that date.

The Thrifty settlement was reduced to a judgment on February 11, 2003.

OCDA's settlement with Thrifty states that it does not bar the District's cause of action here. Specifically, that judgment says:

> **This Final Judgment shall not serve to bar**, estop, alter, supercede, or interfere with, any investigation, action, order, request, demand or directive of any regulatory agency, person or entity having jurisdiction over . . . the groundwater or production wells within the County of Orange, including **any** investigation, **action**, order, request, demand, or directive **of** . . . **the Orange County Water District** pursuant to any of the laws and regulations pertaining to underground storage tanks or water. . . . **Plaintiff does not include**, and the Orange County District Attorney does not represent, **any water district** . . . or other entity with an interest in or pertaining to groundwater or production wells located within the County of Orange.

Cox Decl., Exh. H, pg. 15 (emphasis added).

On January 5, 2005, Shell successfully opposed the District's request for leave to file a motion to intervene to protect its interests.

On January 5, 2005, both OCDA and the Superior Court concluded that the Shell settlement did not bar the District's cause of action here. OCWD represented to the Court:

> The Water District's claims are common-law based; they are damage based; they are independent of our claims; and we have always taken the position, and the Court has read in the document we have taken the position, that there's nothing we're doing in this settlement that has anything to do with precluding the Water District from pursuing their case in Federal Court.

Barnhart Decl., ¶ 2, Exh. 1, pg. 21. Although the Superior Court was not asked to make any formal findings, the Court agreed with OCDA's analysis:

> But I understand different causes of action are being sought in the matter removed to Federal Court. And I have not seen the – any – or heard any prejudice to the parties in the other action . . .

Barnhart Decl., ¶ 2, Exh. 1, pg. 27, see also pg. 14 ("The Court: . . . The Court has not heard a request for this Court to make any findings, whether advisory or otherwise.").

Shell's counsel never disputed OCDA's or the Superior Court's conclusions that OCDA's action did not prejudice the District's cause of action here. In fact, Shell's counsel

21

impliedly represented that he did <u>not</u> think that the Shell settlement barred the District's cause of action, because he told the Court that it was his understanding that the Shell settlement was the same as the second settlement in the ARCO case (which was the settlement that had terminated the *People v. ARCO* case approximately two years before the Shell settlement):

> I think [OCDA] will confirm that the structure of this settlement was presented to Shell on a non-negotiable basis. In other words, the format I was told from day one was going to be the format of the ARCO settlement.[2] And indeed the entire injunctive provision, the plume delineation program, all of that is identical to the structure of the ARCO settlement, which again has been of public record for, I believe, more than two years.

Barnhart Decl., ¶ 2, Exh. 1, pg. 23.

If Shell did <u>not</u> agree with OCDA that the settlement did not have "anything to do with precluding the Water District from pursuing their case in Federal Court," then there never was any settlement for the Superior Court to approve. *American Employers Group v. EDD*, 154 Cal.App.4th 836, 846 (2007) ("the failure to reach a meeting of the minds on all material points prevents the formation of a [settlement] contract"); Barnhart Decl., ¶ 2, Exh. 1, pg. 21.

Having persuaded the Superior Court to refuse the District's request to file a motion to intervene, and having persuaded the Superior Court to reduce the Shell settlement to a judgment without giving the District an opportunity to be heard, Shell has waived any right to, and is judicially estopped from, contradicting Shell's implicit representation to the Superior Court that

---

[2]The ARCO settlement to which Shell's counsel was referring was plainly the second settlement that released OCDA's claims against Thrifty Oil in the *People v. ARCO* litigation. As noted above, *People v. ARCO* produced two separate settlements. The first settlement occurred in December, 2002, between OCDA and Atlantic Richfield Company, BP Amoco Corporation, and ARCO Chemical Company. Cox Decl., Exh. A. Mr. Cox's Declaration refers to this settlement as "The BP Final Judgment." *Id.* The BP Final Judgment's release language was very different from OCDA's January, 2005, settlement with Shell. The January 2005 Shell settlement's language is almost <u>identical</u> to that in the second ARCO (Thrifty) settlement, which is dated February 11, 2003. Cox Decl., Exh. H; Barnhart Decl., Exh. 1. Shell cannot plausibly represent that its counsel was referring to any settlement other than this February, 2003, settlement.

22

the settlement did not have "anything to do with precluding the Water District from pursuing their case in Federal Court." Barnhart Decl., ¶ 2, Exh. 1, pg. 21 and 23; *Aldelphia Recovery Trust v. Goldman, Sachs & Co.*, 748 F.3d 110, 116 (2d Cir. 2012); *Dodd v. Hood River County*, 59 F.3d 852, 862 (1994); *Consumer Advocacy Group v. ExxonMobil Corp.*, 168 Cal.App.4th 675, 690 (2008).

See also Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42.


22.    OCWD filed its initial complaint in this action in 2003.  OCWD alleges that it and the "water users it represents" were injured due to MTBE and/or TBA contamination and/or threat of contamination in water supply wells and OCWD's groundwater resources, allegedly caused by ARCO, BP, the Shell Defendants and others, and seeks to "protect the groundwater resources of northern Orange County from oil industry pollution." (Condron Decl. Exh. B (OCWD 3d Am. Compl. ¶¶ 1, 5, 79).)

22.   **RESPONSE:**

Undisputed that the cited document contains the quoted words.

Disputed that the District's cause of action is identical to OCDA's, or that OCDA and the District ever have been in privity for the purposes of the District's cause of action here.

While the District's ultimate goal is to benefit its ratepayers and the water-drinking public, the specific harms that its causes of action target are injuries to the District's own property interests, and costs that the District has incurred. *See Selma Pressure Treating Co. v. Osmose Wood Preserving Co.*, 221 Cal.App.3d 1601, 1616 (1990); Water Code Appen. § 40-8; Barnhart Decl., Exh. 6, ¶¶ 4 ("The District has suffered injury in fact, including expending funds

necessary to investigate, clean up, abate, and/or remediate the MTBE and/or TBA contamination

caused by Defendants."), 102-108 (cost-recovery cause of action under Orange County Water

District Act), and pp. 35-36 (Prayer seeking compensation and an injunction requiring abatement

of "MTBE and/or TBA which is contaminating and threatening the District's property").   In its

Third Amended Complaint, the District alleges: "The District owns land overlying groundwater

at various locations within the District and has water rights therein."   Condron Decl., Exh. B, ¶ 5.

The District further alleges: "The District owns, holds and/or represents property rights and

interests damaged by the nuisance.   The District's injury is separate and distinct from that of the

public."   Condron Decl., Exh. B, ¶ 30; *see also State of California v. Sup. Ct.*, 78 Cal.App.4th

1019, 1025 (2000) ("a water right itself has been considered an interest in real property."); *see

also* Cal. Civ. Code § 3493 ("A private person may maintain an action for a public nuisance, if it

is specially injurious to himself, but not otherwise."); *see also* In Re MTBE, 2005 WL 150893,

*5 (District has sufficient interest in groundwater to assert a nuisance claim).   The District

further alleged that it "has been damaged within the past three years and is entitled to the

compensatory and exemplary damages alleged herein, or to such other appropriate relief the

District may elect at trial, including, but not limited to, equitable relief in the form of an order

requiring Defendants to abate the nuisance properly as to the District."   Barnhart Decl., Exh. 6, ¶

100; see also Barnhart Decl., Exh. 6, pp. 35-36 (Prayer seeking compensation and an injunction

requiring abatement of "MTBE and/or TBA which is contaminating and threatening the

District's property"); *see also State of California v. Sup. Ct.*, 78 Cal.App.4th 1019, 1025 (2000)

("a water right itself has been considered an interest in real property.").

California's Court of Appeal has specifically held that the District here can bring a

24

Property Owner Action for damages and an order requiring abatement of groundwater contamination, and that such an action by the District is "'qualitatively different'" from a Public Officer Action. *Orange County Water Dist. v. Arnold Engineering Co.*, 196 Cal.App.4th 1110, 1120, 1125-1126 (2011).

*See also* Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42.

23.    The alleged factual underpinnings of the OCDA actions against BP and Shell, and of this lawsuit, and the bases for recovery asserted in all three actions, are virtually identical.

**23.    RESPONSE:**

Disputed.  The facts are not the same.  The bases for recovery are not the same.  The causes of action are not the same.  The interests are not the same.  The lawsuits are not the same.

*See also* Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42; *see also* 65.1 ¶¶ 43-60.

24.    Because of the alleged injuries to groundwater in Orange County, OCWD says that it seeks to recover "all necessary funds to investigate, monitor, prevent, abate, or contain any contamination of, or pollution to, groundwaters within the District from MTBE and TBA; to protect the quality of the common water supplies of the District; to prevent pollution or contamination of that water supply; and to assure that the responsible parties - and not the District nor the public - bear the expense." (Condron Decl. Exh. B (OCWD 3d Am. Compl. ¶ 3).)

**24.    RESPONSE:**

Undisputed that cited document contains the quoted text.

25

Disputed that the District's cause of action is identical to OCDA's, or that OCDA and the District ever have been in privity for the purposes of the District's cause of action here. *See* Plaintiff's Response to 56.1 ¶¶ 22; Disputed that cited documents are relevant or support defendants' *res judicata* argument, and incorporate by reference Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-21, 24-31, 33, 34, 36, 40, 42; *see also* 65.1 ¶¶ 43-60.

25.     OCWD seeks "an order declaring that defendants are liable for the full cost of all remedial and other actions necessary to abate and remove MTBE and/or TBA which is contaminating and threatening the District's property, and for such orders as may be necessary to provide full relief to the plaintiff." (Condron Decl. Exh. B (OCWD 3d Am. Compl., Prayer 13).)

25.     **RESPONSE:**

Undisputed that cited document contains the quoted text.

Disputed that the District's cause of action is identical to OCDA's, or that OCDA and the District ever have been in privity for the purposes of the District's cause of action here. *See* Plaintiff's Response to 56.1 ¶¶ 22; Disputed that cited documents are relevant or support defendants' *res judicata* argument, and incorporate by reference Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-21, 24-31, 33, 34, 36, 40, 42; *see also* 65.1 ¶¶ 43-60.

26.     On January 5, 2005, the Orange County Superior Court entered a Final Judgment Pursuant to Stipulation and Order Thereon (the "Shell Final Judgment"), which represented a settlement, between the People of the State of California and the Shell Defendants, of the claims asserted in *People v. Shell.* (Condron Decl. Exh. C (Shell Final Judgment).)

26

26.   **Response – Disputed In Part:**

Undisputed that Exh. C to the Condron Decl. purports to be a final judgment representing a settlement of OCDA's action against Defendants.

Disputed that the allegedly settled action was identical to the District's here, or that OCDA and the District ever have been in privity for the purposes of the District's cause of action here. *See* Plaintiff's Response to 56.1 ¶¶ 22; Disputed that cited documents are relevant or support defendants' *res judicata* argument, and incorporate by reference Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-21, 24-31, 33, 34, 36, 40, 42; *see also* 65.1 ¶¶ 43-60.


27.   The terms of the Shell Final Judgment were substantially similar to those of the BP Final Judgment. Pursuant to the terms of the Shell Final Judgment, the Shell Defendants agreed to pay $3.5 million to the OCDA's "Prosecution Trust Fund." (Condron Decl. Exh. C (Shell Final Judgment ¶¶ 7.0-7.4).)

Disputed.  As Shell told the Judge at the time that the 2005 settlement was reduced to a judgment, the terms of the Shell Final Judgment are "substantially similar" to those of the February 2003 Thrifty judgment, <u>not</u> the 2002 ARCO judgment:

> I think [OCDA] will confirm that the structure of this settlement was presented to Shell on a non-negotiable basis.  In other words, the format I was told from day one was going to be the format of the ARCO settlement.[3]  And indeed the entire injunctive provision, the plume delineation program, all of that is identical to the structure of the ARCO settlement, which again has been of public record for, I believe, more than two years.

Barnhart Decl., ¶ 2, Exh. 1, pg. 23.

─────────────────────

[3]As noted in footnote 2 above, the ARCO settlement to which Shell's counsel was referring must have been the settlement that released OCDA's claims against Thrifty Oil in the *People v. ARCO* litigation.

The Thrifty settlement to which Shell's counsel was referring expressly states that it does not resolve, settle, or preclude the District's cause of action here:

> **This Final Judgment shall not serve to bar**, estop, alter, supercede, or interfere with, any investigation, action, order, request, demand or directive of any regulatory agency, person or entity having jurisdiction over . . . the groundwater or production wells within the County of Orange, including **any** investigation, **action**, order, request, demand, or directive of . . . **the Orange County Water District** pursuant to any of the laws and regulations pertaining to underground storage tanks or water. . . . **Plaintiff does not include**, and the Orange County District Attorney does not represent, **any water district** . . . or other entity with an interest in or pertaining to groundwater or production wells located within the County of Orange.

Cox Decl., Exh. H, pg. 15.

The Shell settlement modified these first few words to read: "In entering into this Final Judgment, the parties understand that Plaintiff does not intend for this Final Judgment to serve to legally bar, estop . . ." Condron Decl., Exh. C, ¶ 9.6.  As noted above, OCDA and the Superior Court concluded – and Shell did not deny – that this modification confirmed what was already the case - that the agreement did not bar the District's claims.  Barnhart Decl., ¶ 2, Exh. 1, pp. 14, 21, 23, 27.

Undisputed that the cited document indicates that "the Shell Defendants agreed to pay $3.5 million to the OCDA's "Prosecution Trust Fund." Disputed that defendants have provided any evidence that this amount actually was paid.

*See also* Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42; *see also* 65.1 ¶¶ 43-60.


28.    Pursuant to the terms of the Shell Final Judgment, the Shell Defendants agreed to pay up to $10.5 million to fund a "Plume Delineation Program," under which an "independent third party environmental consultant" selected by the OCDA would evaluate the investigation

28

and corrective action conducted at the service stations covered by the Shell Final Judgment and identify what further action should be taken to remediate the MTBE and gasoline releases found there. (Condron Decl. Exh. C (Shell Final Judgment 113.0-3.10; 13.5; ¶ 3.3(b) (consultant authorized to identify additional actions required if needed at the sites in question, "including, but not limited to," the "drilling and installation of new wells and/or borings to further analyze and delineate the PLUME at the Subject Sites,... which may potentially include delineation in both the lateral and vertical direction that approximates the 5 ppb MTBE contour line in groundwater.").))

28.   **RESPONSE:**

Undisputed that the cited document contains those words.

Disputed that Defendants have provided any evidence that any Defendant spent any money to fund a "Plume Delineation Program," or for any other settlement-related purpose.  See Defendants' Supporting Declarations.  Defendants evidence is that – other than preparing "plume delineation reports" – Shell did not take any additional or different remedial actions as a result of Shell's settlement with OCDA.  *See* Declaration of Karen A. Lyons, ¶ 4 ("The Shell Defendants received limited comments on two sites from [the environmental consultant] that did not require the Shell Defendants to take actions.").  Defendants evidence does not show even that they submitted those reports.  Defendants do not submit or describe a single report or communication to or from the environmental consultant.  They do not provide a specific description of what those alleged reports contained.  Nor do Defendants assert or provide evidence that the Programs actually benefitted the District (or anyone else).

*See also* Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42; *see also* 56.1 ¶¶ 43-60.

29.     Pursuant to the terms of the Shell Final Judgment, the Shell Defendants became subject to significant injunctive relief which remained in effect for five years following entry of the Final Judgment. (Condron Decl, Exh. C (Shell Final Judgment 115.0-5.8).)

**29.     RESPONSE:**

Disputed.

The cited documents to not contain the word "significant." The word "significant" is simply Defendants' characterization unsupported by any citation to evidence. The injunctive relief only required Defendants to do what they already were legally required to do – to begin the process of remediating their plumes, to comply with agency directives, and to refrain from continuing to break the law. *See* Condron Decl., Exh. C.

Defendants do not carry their burden to prove that the settlement's "injunctive relief" was "significant." "Significant" is an extremely ambiguous word. But no one would consider injunctive relief to be "significant" where, as here, it does not require a defendant to do anything that they should already have done at the time that the settlements were entered.

Defendants do not carry their burden to prove that any Defendant spent any money to fund a "Plume Delineation Program," or for any other settlement-related purpose. See Defendants' Supporting Declarations.

According to the Declaration of Karen A. Lyons that Defendants offered in support of their Motion ("**Lyons Decl.**"), Shell did not spend <u>any</u> additional money for clean up as a result of its settlement with OCDA. *See* Declaration of Karen A. Lyons, ¶ 4 ("The Shell Defendants received limited comments on two Sites from [the environmental consultant] **that did not require the Shell Defendants to take actions**.").

The settlement's "injunctive relief" was not "significant" enough to cause Defendants to

30

solve the MTBE-contamination problem that Defendants created. Shell was not required to clean up its MTBE. Shell's plumes remain undelineated. Shell's contamination remains unremediated. *See* Declaration of Stephen Wheatcraft, submitted with the District's Opposition to Defendants' Omnibus Motion for Summary Judgment.

*See also* Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42; *see also* 56.1 ¶¶ 43-60.

30.     The OCDA described this portion of the relief as a "blank check" for cleanup. (Condron Decl. Ex, D (OCDA 1/6/05 Press Release) (available at www.orangecountyda.com); Condron Decl. Exh. E (2007 Biennial Report of the Office of the Orange County District Attorney (the `Biennial Report"), p. 25).)

**30.     RESPONSE:**

Undisputed that the cited document contains those words.

Disputed that the "Plume Delineation Program" was a "blank check" for cleanup. *See* Plaintiff's Response to 56.1 ¶ 29; Disputed that cited documents are relevant or support defendants' *res judicata* argument, and incorporate by reference Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-28, 30, 31, 33, 34, 36, 40, 42; *see also* 56.1 ¶¶ 43-60.

31.     The Shell Final Judgment specified that it was a "release from any known or unknown, past or present claims, violations, or cause`s of action that were or could have been asserted in the First Amended Complaint against the [Shell Defendants] with regard to:.. . underground storage tank systems, the unauthorized release of petroleum product, additive or

31

constituent of such petroleum product (including but not limited to TPH, BTEX, MTBE and

other fuel oxygenates), the use of MTBE and/or other fuel oxygenates in gasoline...." (Condron

Decl. Exh. C (Shell Final Judgment § 9.1).)

**31.   RESPONSE:**

Undisputed that Shell's settlement with OCDA was limited to claims that OCDA could

have brought in that action – which did not include the District's causes of action here.  *See*

*Safer v. Sup. Ct.*, 15 Cal.3d 230, 236 (1975); *see also* Cal. Code Civ. Proc. § 731; *see also*

Barnhart Decl.,  ¶¶ 3-6, Exh. 2-5; Disputed that cited documents are relevant or support

defendants' *res judicata* argument, and incorporate by reference Plaintiff's Responses to 56.1 ¶¶

1, 3, 8, 10, 13, 15-17, 20-22, 24-30, 33, 34, 36, 40, 42; *see also* 56.1 ¶¶ 43-60.


32.     The Final Judgment was "a final and binding judgment, release, resolution and

settlement of all claims, violations, or causes of action that were alleged in the First Amended

Complaint against Settling Defendants, or could have been asserted based on the facts alleged in

the First Amended Complaint...." (Condron Decl. Exh. C (Shell Final Judgment § 9.0).)

**32.   RESPONSE:**

See Response 31.


33.     The Shell Final Judgment contained a provision stating that "the parties

understand that the Plaintiff does not intend for [the Shell] Final Judgment to serve to legally

bar, estop, release, alter or supersede" actions by others, including OCWD.  However, the Shell

Defendants did not agree to carve out or exempt any such actions from the broad release

provided to the Shell Defendants by the Shell Final Judgment and there is no such provision in

32

the Final Judgment or elsewhere. (Condron Decl. Exh. C (Shell Final Judgment 19.6).)

33.     **RESPONSE:**

Disputed.

In California, there cannot be a valid settlement contract "'until there has been a meeting of the minds on *all* material points.'" *American Employers Group v. EDD*, 154 Cal.App.4th 836, 846 (2007) (emphasis original). If Shell did not agree with OCDA that the settlement did not have "anything to do with precluding the Water District from pursuing their case in Federal Court," then there never was any settlement for the Superior Court to approve. *American Employers Group v. EDD*, 154 Cal.App.4th 836, 846 (2007) ("the failure to reach a meeting of the minds on all material points prevents the formation of a [settlement] contract"); Barnhart Decl., ¶ 2, Exh. 1, pg. 21.

In addition, Shell's counsel impliedly represented to the Orange County Superior Court that Shell did <u>not</u> think that the Shell settlement barred the District's cause of action, because Shell's counsel told the Court that it was his understanding that the Shell settlement was "identical to the structure of" the second ARCO settlement (which was the settlement that had terminated the *People v. ARCO* case approximately two years before the Shell settlement):

> I think [OCDA] will confirm that the structure of this settlement was presented to Shell on a non-negotiable basis. In other words, the format I was told from day one was going to be the format of the ARCO settlement.[4] And indeed the entire injunctive provision, the plume delineation program, all of that is identical to the structure of the ARCO settlement, which again has been of public record for, I believe, more than two years.

Barnhart Decl., ¶ 2, Exh. 1, pg. 23.

---

[4] As noted in footnote 2, above, Shell's counsel must have been referring to the February 11, 2003 settlement which settled OCDA's claims against Thrifty Oil Company. Cox Decl., Exh. H; Barnhart Decl., Exh. 1.

33

The Thrifty settlement to which Shell's counsel was referring expressly states that it does not resolve, settle, or preclude the District's cause of action here:

> **This Final Judgment shall not serve to bar**, estop, alter, supercede, or interfere with, any investigation, action, order, request, demand or directive of any regulatory agency, person or entity having jurisdiction over . . . the groundwater or production wells within the County of Orange, including **any** investigation, **action**, order, request, demand, or directive **of** . . . **the Orange County Water District** pursuant to any of the laws and regulations pertaining to underground storage tanks or water. . . . **Plaintiff does not include**, and the Orange County District Attorney does not represent, **any water district** . . . or other entity with an interest in or pertaining to groundwater or production wells located within the County of Orange.

Cox Decl., Exh. H, pg. 15.

The Shell settlement modified these first few words to read: "In entering into this Final Judgment, the parties understand that Plaintiff does not intend for this Final Judgment to serve to legally bar, estop . . ." Condron Decl., Exh. C, ¶ 9.6. As noted above, OCDA and the Superior Court concluded – and Shell did not deny – that this modification confirmed what was already the case - that the agreement did not bar the District's claims . Barnhart Decl., ¶ 2, Exh. 1, pp. 14, 21, 23, 27.

Having persuaded the Superior Court to refuse the District's request to file a motion to intervene, and having persuaded the Superior Court to reduce the Shell settlement to a judgment without giving the District an opportunity to be heard, Shell has waived any right to – and is judicially estopped from – contradicting Shell's implicit representation to the Superior Court that the settlement did not have "anything to do with precluding the Water District from pursuing their case in Federal Court." Barnhart Decl., ¶ 2, Exh. 1, pg. 21 and 23; *Aldelphia Recovery Trust v. Goldman, Sachs & Co.*, 748 F.3d 110, 116 (2d Cir. 2012); *Dodd v. Hood River County*, 59 F.3d 852, 862 (1994); *Consumer Advocacy Group v. ExxonMobil Corp.*, 168 Cal.App.4th 675, 690 (2008).

*See also* Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42; *see also* 56.1 ¶¶ 43-60.


34.      Prior to entry of the Shell Final Judgment, OCWD's counsel appeared in the Orange County Superior Court to oppose its entry, stating: "We have an action that is pending over MTBE contamination against the Shell defendants as well."  (Condron Decl. Exh. F (Transcript at 4).)

**34.      RESPONSE:**

Undisputed that Shell successfully opposed the District's request for leave to file a motion to intervene to protect its interests in Shell's litigation against OCDA, and specifically to protect the District's interests regarding Shell's settlement agreement with OCDA.  Having successfully prevented the District from participating in Shell's action against and/or settlement with OCDA, Shell has waived any right to raise that settlement as a basis for *res judicata* here. Barnhart Decl., ¶ 2, Exh. 1, pg. 21 and 23; *Aldelphia Recovery Trust v. Goldman, Sachs & Co.*, 748 F.3d 110, 116 (2d Cir. 2012); *Dodd v. Hood River County*, 59 F.3d 852, 862 (1994); *Consumer Advocacy Group v. ExxonMobil Corp.*, 168 Cal.App.4th 675, 690 (2008).

*See also* Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42; *see also* 56.1 ¶¶ 43-60.


35.      OCWD's counsel requested time to brief a petition to intervene, which the Orange County Superior Court denied, stating, "I make no findings about the effect of this settlement on any other action. I'll let an appropriate court at an appropriate time make those determinations." (Condron Decl. Exh. F (Transcript at 28).)

35. **RESPONSE:**

Undisputed that the Superior Court was not asked to make any formal findings. The

Court did say, however, that he did not see anything in the Shell settlement that would

"prejudice . . . the parties in the other action:"

> But I understand different causes of action are being sought in the matter removed to
> Federal Court. And I have not seen the – any – or heard any prejudice to the parties in
> the other action . . .

Barnhart Decl., ¶ 2, Exh. 1, pg. 27, see also pg. 14 ("The Court: . . . The Court has not heard a

request for this Court to make any findings, whether advisory or otherwise.").

Shell's counsel did not dispute the Court's stated understanding. Having successfully

prevented the District from participating in Shell's action against and/or settlement with OCDA,

Shell has waived any right to raise that settlement as a basis for *res judicata* here. Barnhart

Decl., ¶ 2, Exh. 1, pg. 21 and 23; *Aldelphia Recovery Trust v. Goldman, Sachs & Co.*, 748 F.3d

110, 116 (2d Cir. 2012); *Dodd v. Hood River County*, 59 F.3d 852, 862 (1994); *Consumer

Advocacy Group v. ExxonMobil Corp.*, 168 Cal.App.4th 675, 690 (2008).

*See also* Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36,

40, 42; *see also* 56.1 ¶¶ 43-60.


36.     The Shell Defendants have fulfilled their obligations under the Shell Final

Judgment. (Declaration of Karen Lyons in Support of the Shell Defendants Motion for Partial

Summary Judgment ("Lyons Decl.") 113-6.)

36. **RESPONSE:**

Disputed.

Defendants evidence does not establish that they fulfilled their obligations under the

settlements. The Declaration of Karen Lyons confirms that Shell did not perform <u>any</u> additional or different clean up actions as a result of Shell's settlement with OCDA. *See* Declaration of Karen A. Lyons, ¶ 4 ("The Shell Defendants received limited comments on two sites from [the environmental consultant] that **did not require the Shell Defendants to take actions.**"). While Lyons alleges that Shell prepared reports and communicated with the environmental consultant, she does not attach a single example of a report, or a single communication. Indeed, she does not even describe – except in the vaguest of terms – what those alleged reports and communications contained. Defendants do not provide any evidence that any Defendant spent any money to fund a "Plume Delineation Program," or for any other settlement-related purpose. See Defendants' Supporting Declarations.

Defendants' settlements did not give the District any right to participate in the settlements' vaguely defined "Plume Delineation" programs. See Condron Decl., Exh. C. The settlements did not require anyone to report to the District about anything. The settlement did not give the District the power to enforce the settlements. And the settlements certainly did not solve the District's problem. Almost five years after Shell's settlement obligations expired, MTBE plumes that have migrated off-site from defendants' stations continue to migrate towards the District's water production wells. *See* Declaration of Stephen Wheatcraft, submitted with the District's Opposition to Defendants' Omnibus Motion for Summary Judgment.

*See also* Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42; *see also* 56.1 ¶¶ 43-60.

37.     The OCDA has never invoked the dispute resolution clause of the Shell Final Judgment, nor has it ever informed the Shell Defendants that they have not complied with the requirements of the Shell Final Judgment.  (Lyons Decl. 16.)

**37.**     **RESPONSE:**

Disputed.

Shell provides no evidence that OCDA never invoked the dispute resolution clause of the Shell Final Judgment or that OCDA never informed the Shell Defendants that they have not complied with the requirements of the Shell Final Judgment.

The District was not a party to the settlement agreements, and the settlement agreements do not permit the District to invoke those agreements' dispute-resolution procedures.

*See also* Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42.

38.     In April 2007, OCWD identified a list of 127 service stations giving rise to its claims, at which MTBE releases allegedly threatened groundwater supplies. Of these listed stations, a total of 60 were owned and/or operated by the BP defendants as "ARCO branded" locations. (Cox Decl. 1 4.)

**38.**     **Response**

**Undisputed** that the BP defendants owned and/or operated <u>at least</u> 60 of the service stations at which the District has claims "as 'ARCO branded' locations."  Disputed that there were <u>only</u> 60 such stations.

Disputed that the District identified only "127 service stations giving rise to its claims." *See, e.g.*, Cox Decl., ¶ 4.

38

Disputed that Defendants' Motion applies to any stations other than those which are at issue in this phase of this action.

Disputed that cited documents are relevant or support defendants' *res judicata* argument, and incorporate by reference  Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42.

39.     In subsequent proceedings, OCWD further limited its claims by dismissing certain of the listed stations at which its claims allegedly were not ripe. (Cox Decl. 1 4.)

**39.    Response – Disputed:**

Disputed.

The Cox Declaration does not say "dismiss."  It says that the District "dropped various stations."  Defendants do not define "dismiss," and the Cox Declaration does not define "drop."

Disputed that cited documents are relevant or support defendants' *res judicata* argument, and incorporate by reference Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42.

40.     All of the subject stations identified in the pending OCWD litigation for which the BP Defendants are allegedly responsible for MTBE contamination were subject to, and released by, the OCDA BP Final Judgment.  (Cox Decl. 15, Exh. C (identifying each BP station in OCWD's lawsuit by station number, address, city, and reference in the BP Final Judgment); Cox Decl. Exh. A (BP Final Judgment Exs. A & B).)

**40.    Response**

**Disputed.**  The OCDA's settlement did not release any of the District's claims here.

39

*See also* Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42.


41.     After settling with the Shell Defendants, the OCDA issued a press release describing the litigation, stating in part:

> **Threat to Supply of Drinking Water Discovered**
> District Attorney Rackauckas made the decision to file this environmental protection lawsuit based upon reports filed by the Orange County Health Care Agency and investigations by the Anaheim, Fullerton, Orange and Santa Ana Fire Departments... The necessity of this decision was shown in reports that indicated that gasoline leaking from improperly maintained storage tanks had contaminated surrounding soil and groundwater. The presence of the gasoline additive called MTBE (methyl tertiary-butyl ether) in the leaking fuel added to this problem. MTBE is more soluble and moves further and faster through groundwater than other components of gasoline. Because MTBE can be detected in very small amounts, even a small amount of MTBE can contaminate and render undrinkable large volumes of water. It makes the contaminated water taste and smell like turpentine. More over [sic], MTBE is extremely difficult and expensive to remove from water once contaminated. (Condron Decl. Exh. D (1/6/05 OCDA Press Release).)

**41.**     **Response:**

Undisputed that the cited document contains those words.

Otherwise, disputed.  Disputed that cited documents are relevant or support defendants' *res judicata* argument, and incorporate by reference Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42.


42.     The OCDA subsequently described its lawsuits as follows:

> As a result of *People v. Arco*, Shell and Thrifty et al., clean-up work and remediation of numerous polluted underground storage tank sites are being funded by the major oil companies.... The oil companies were required to write a blank check to cover the cost of cleaning up the environment until the ground water is free of dangerous chemicals.... As a result, many of the polluted underground storage sites have been cleaned up and are free of a dangerous

chemical compound called MTBE. (Condron Decl. Exh. E (OCDA 2007 Biennial Report at 25).)

**42.   RESPONSE:**

Undisputed that the cited document contains those words.

Otherwise, disputed. Disputed that cited documents are relevant or support defendants' *res judicata* argument, and incorporate by reference Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42.


**PLAINTIFF'S RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS**

43.    No statute authorizes OCDA to seek redress for injuries to water rights owned by the Orange County Water District.


44.    No statute authorizes OCDA to seek recovery of the costs that the District claims under section 40-8 of the Orange County Water District Act.


45.    In his actions against Defendants, OCDA did not claim that Defendants' MTBE caused any individualized injury to OCDA's own property. *See* Cox Decl., Exh. B; *see also*, Condron Decl., Exh. A.


46.    The District is not a district attorney, county counsel, or city attorney.


47.    On January 5, 2005, the Shell defendants' counsel William D. Temko successfully opposed the District's request for leave to file a motion to intervene in Shell's

41

action against OCDA.  *See* Condron Decl., Exh. F; *see also* Barnhart Decl., Exh. 1.

48.     Shell's evidence does not establish that Shell's settlement even applied to any of the stations that are at issue in this case.  *See* Condron Declaration (no stations identified). According to Paragraph 21 of OCDA's First Amended Complaint, the stations at issue were listed in Exhibits A and B.  Condron Decl., Exh. A.  But Shell did not submit Exhibits A and B with its Motion.  *See generally* Condron Decl.  Shell's settlement agreement with OCDA also does not identify the covered stations.  *See* Condron Decl., Exh. C.  Nor does Shell submit any other evidence tending to show that the stations that the OCDA settlement released are the same as the stations that are at issue in this action.

49.     Defendants' Motion papers do not contain any evidence that any Defendant spent any money to fund a "Plume Delineation Program," or for any other settlement-related purpose. See Defendants' Supporting Declarations.  *See* Defendants' Supporting Declarations.

50.     Defendants' Motion papers do not contain any evidence that any Defendant spent any money for any settlement-related purpose.  *See* Defendants' Supporting Declarations.

51.     In their January 23, 2006 Memorandum of Law in Support of Motion for Summary Judgment of Plaintiff's Claims Based on Plaintiff's Lack of Cognizable Interest, Defendants conceded that "[t]his Court has already determined that the OCWD Act confers upon OCWD standing to pursue its public nuisance claim against Defendants."  Barnhart Decl., Exh. 7, pg. 7.

52.     Pursuant to its statutory authority, the District has acquired rights to millions of acre feet of surface water that it has recharged into the Orange County Groundwater Basin. Current and valid permits from the State Water Resources Control Board entitle the District to divert hundreds of thousands of acre feet of surface water each year from various sources, to store that water in the Orange County Groundwater Basin, and to withdraw and use an equivalent amount of water for any purpose from anywhere within the Basin.  Barnhart Decl., ¶¶ 3-6, Exh. 2-5.

53.     A significant amount of MTBE has been released to groundwater within the Orange County Water District's service area.  This MTBE, if not remediated, will impact water production wells in OCWD's service area. MTBE has already been detected in a number of wells.  After ten years, MTBE levels will exceed 5ppb in more than 100 production wells. Barnhart Decl., Exh. 8 (pg. 8).

54.     The District's Board of Directors has determined that prompt and urgent action is necessary to abate the current and threatened MTBE in the Basin.  Barnhart Decl., Exh. 9, pg. 9.

55.     Defendants' Motion does not allege or prove that any of OCDA's settlements with Defendants provided even indirect benefits to the District.  Both Declarations submitted by Defendants say that Defendants did not do any additional or different remediation work as a result of the settlements.  Neither Declaration establishes that any Defendant spent any money on their Plume Delineation Program – in which the District was not entitled to participate – or gives

43

any details as to what those Programs entailed.  The settlements do not provide any

compensation to the District for its injuries, and the settlements gave the District no power to

enforce the settlement terms.  The settlements did not require anyone to report to the District

about anything.  The settlements did not solve the District's problem.  Almost five years after the

last Defendant's settlement obligations expired, MTBE plumes that have migrated off-site from

defendants' stations continue to migrate towards the District's water production wells.  Barnhart

Decl., Exh. 7 and 8 (pg. 8); Lyons Decl.; Winsor Decl.; Condron Decl., Exh. C; Cox Decl., Exh.

A and H; Declaration of Stephen Wheatcraft, submitted with the District's Opposition to

Defendants' Omnibus Motion for Summary Judgment.


56.     During the January 5, 2005, hearing on Shell's settlement with OCDA, both

OCDA and the Superior Court concluded that the Shell settlement did not bar the District's

cause of action here.  OCWD represented to the Court:

> The Water District's claims are common-law based; they are damage based; they are
> independent of our claims; and we have always taken the position, and the Court has read
> in the document we have taken the position, that there's nothing we're doing in this
> settlement that has anything to do with precluding the Water District from pursuing their
> case in Federal Court.

Barnhart Decl., ¶ 2, Exh. 1, pg. 21.

> The Superior Court was not asked to make any formal findings, but the Court said:

> But I understand different causes of action are being sought in the matter removed to
> Federal Court.  And I have not seen the – any – or heard any prejudice to the parties in
> the other action . . .

Barnhart Decl., ¶ 2, Exh. 1, pg. 27, see also pg. 14 ("The Court: . . . The Court has not heard a

request for this Court to make any findings, whether advisory or otherwise.").

Shell's counsel never disputed OCDA's or the Superior Court's conclusions that

44

OCDA's action did not prejudice the District's cause of action here.  In fact, Shell's counsel

impliedly represented that he did not think that the Shell settlement barred the District's cause of

action, because he told the Court that it was his understanding Shell's counsel did tell the Court

that it was his understanding that the Shell settlement was "identical to the structure of" the

second settlement in the ARCO case (which was the settlement that had terminated the *People v.*

*ARCO* case approximately two years before the Shell settlement):

> I think [OCDA] will confirm that the structure of this settlement was presented to Shell
> on a non-negotiable basis.  In other words, the format I was told from day one was going
> to be the format of the ARCO settlement.[5]  And indeed the entire injunctive provision,
> the plume delineation program, all of that is identical to the structure of the ARCO
> settlement, which again has been of public record for, I believe, more than two years.

Barnhart Decl., ¶ 2, Exh. 1, pg. 23.

The Thrifty settlement to which Shell's counsel was referring expressly states that it does

not resolve, settle, or preclude the District's cause of action here:

> **This Final Judgment shall not serve to bar**, estop, alter, supercede, or interfere with,
> any investigation, action, order, request, demand or directive of any regulatory agency,
> person or entity having jurisdiction over . . . the groundwater or production wells within
> the County of Orange, including **any** investigation, **action**, order, request, demand, or
> directive **of** . . . **the Orange County Water District** pursuant to any of the laws and
> regulations pertaining to underground storage tanks or water. . . . **Plaintiff does not
> include**, and the Orange County District Attorney does not represent, **any water district**
> . . . or other entity with an interest in or pertaining to groundwater or production wells
> located within the County of Orange.

Cox Decl., Exh. H, pg. 15.

The Shell settlement modified these first few words to read: "In entering into this Final

Judgment, the parties understand that Plaintiff does not intend for this Final Judgment to serve to

_____

[5]As noted in footnote 2 above, the ARCO settlement to which Shell's counsel was referring must
have been the settlement that released OCDA's claims against Thrifty Oil in the *People v. ARCO*
litigation.

legally bar, estop . . ." Condron Decl., Exh. C, ¶ 9.6. As noted above, OCDA and the Superior

Court concluded – and Shell did not deny – that this modification confirmed what was already

the case - that the agreement did not bar the District's case. Barnhart Decl., ¶ 2, Exh. 1, pp. 14,

21, 23, 27.

57.     The District seeks remedies for injuries to its own private-property rights, and for

costs that the District incurred (or will incur) to contain and remediate Defendants'

contamination. Barnhart Decl., Exh. 6, ¶¶ 4 ("The District has suffered injury in fact, including

expending funds necessary to investigate, clean up, abate, and/or remediate the MTBE and/or

TBA contamination caused by Defendants."), 102-108 (cost-recovery cause of action under

Orange County Water District Act), and pp. 35-36 (Prayer seeking compensation and an

injunction requiring abatement of "MTBE and/or TBA which is contaminating and threatening

the District's property"). In its Third Amended Complaint, the District alleges: "The District

owns land overlying groundwater at various locations within the District and has water rights

therein." Condron Decl., Exh. B, ¶ 5. The District further alleges: "The District owns, holds

and/or represents property rights and interests damaged by the nuisance. The District's injury is

separate and distinct from that of the public." Condron Decl., Exh. B, ¶ 30. otherwise.").

58.     Both of OCDA's complaints against Defendants[6] expressly note that "Plaintiff

does not include, and the District Attorney does not represent, any water district . . ., or any other

---

[6]As noted in footnote 2, OCDA filed two actions that produced three settlements that are relevant
here. *People v. ARCO* produced what Defendants call "The BP Final Judgment" and the
February, 2003 Thrifty settlement. *People v. Shell* produced the Shell settlement.

individual, regulatory agency, corporation or other entity with an interest in or pertaining to groundwater . . . located within the County of Orange."  Condron Decl., Exh. A, pg. 2; Cox Decl., Exh. B, pg. 2.  Also

59.     Paragraph 4 of the District's Third Amended Complaint does not allege that the District is a "special district."  Barnhart Decl., Exh. 6.

60.     OCDA's settlements with Defendants were limited in scope to "claims, violations, or causes of action" that OCDA could have pursued, which did not include the District's causes of action here.  *See* Cox Decl. Exh. A, ¶ 6.0(i) (BP Final Judgment "is a final and binding resolution and settlement of all claims ... that were alleged by the First Amended Complaint ... or could have been asserted, based on the facts alleged in the First Amended Complaint"); *see also* Cox Decl., Exh. H, pg. 11 (same); *see also* Barnhart Decl., ¶¶ 3-6, Exh. 2-5; *see also* Plaintiff's Facts, No. 43-45.

Date: July 21, 2014

Respectfully submitted,

By: _____
Michael D. Axline
Bryan Barnhart
Miller & Axline
A Professional Corporation
1050 Fulton Avenue, Suite 100
Sacramento, CA  95825-4225
Telephone:  (916) 488-6688
Counsel for Plaintiff
Orange County Water District

47