UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| IN RE: METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION | : : : : : | Master File No. 1:00–1898 MDL 1358 (SAS) M21-88 |
| This document relates to: | : : | |
| Orange County Water District v. Unocal Corp., et al., No. 04 Civ. 4968 | : : : | |

## DECLARATION OF DUANE C. MILLER IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I, Duane C. Miller, declare:

1. I am one of the attorneys of record in this case for plaintiff Orange County Water District. I make this declaration from personal knowledge.

2.     Attached as Exhibit 1 is a true and correct copy of excerpts from An MTBE Primer by the American Petroleum Institute, dated June 1994.

3.     Attached as Exhibit 2 is a true and correct copy of excerpts from the MTBE Health Effects Task Force Participation Agreement, dated August 1987.

4.     Attached as Exhibit 3 is a true and correct copy of the Gasoline Market Share in California from the Energy Almanac, accessed on July 6, 2011.

5.     Attached as Exhibit 4 is a true and correct copy of excerpts from MTBE Gasoline Blending Component, a Technical Bulletin by ARCO Chemical Company, dated 1982.

6.     Attached as Exhibit 5 is a true and correct copy of excerpts from ARCO Chemical MTBE.

7.     Attached as Exhibit 6 is a true and correct copy of excerpts of the Declaration of Defendant Lyondell Chemical Company Pursuant to Case Management Order #4, dated December 30, 2004.

8.     Attached as Exhibit 7 is a true and correct copy of excerpts from the Declaration of Alexander Blagojevic and Exhibit A in the *South Tahoe Public Utility District v. Atlantic Richfield Company, et al.*, dated May 4, 2000.

9.     Attached as Exhibit 8 is a true and correct copy of excerpts from the Declaration of Gregory B. Hammond in the *In re MTBE* case.

2

10.     Attached as Exhibit 9 is a true and correct copy of excerpts from the 1991 MTBE Sales Contract, dated January 31, 1991.

11.     Attached as Exhibit 10 is a true and correct copy of the Declaration of Charles R. Lines in Compliance with Case Management Order No. 4, Section III.B.2(a) [subsections (I) and (ix), category (1)], dated December 16, 2004, and excerpts from the Declaration of Karen Means in Compliance with Case Management Order No. 4, Section III.B.2(a) [subsections (iv), (viii) and (ix), category (2)].

12.     Attached as Exhibit 11 is a true and correct copy of excerpts from the Defendant Exxon Mobil Corporation's Responses and Objections to Plaintiffs' Preliminary Set of Interrogatories Regarding Defendant Identification, dated August 30, 2004.

13.     Attached as Exhibit 12 is a true and correct copy of excerpts from the Defendant Exxon Mobil Corporation's Responses to Plaintiff Orange County Water District's Third Set of Interrogatories to Defendants, dated November 7, 2008.

14.     Attached as Exhibit 13 is a true and correct copy of excerpts of the Declaration of David A. Sexton, in the above-reference case.

15.     Attached as Exhibit 14 is a true and correct copy of excerpts of the Declaration of Grace N. Chan, in the above-referenced case, dated July 13, 2011.

16.     Attached as Exhibit 15 is a true and correct copy of excerpts of the Declaration of Unocal Corporation and Union Oil Company of California in Compliance with Case Management Order No. 4.

17.     Attached as Exhibit 16 is a true and correct copy of excerpts from Defendant Exxon Mobil Corporation's Declaration on Behalf of the Former Mobil Corporation in Response to Case Management Order No. 4.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 21st day of July, 2014, at Sacramento, California.

DUANE C. MILLER

# EXHIBIT 1



**American Petroleum Institute**
1220 L Street, N.W.
Washington, D.C. 20005

# An MTBE Primer

*MTBE replaced lead in gasoline when it was recognized that using lead could pose health problems. At first, MTBE was used simply to boost octane ratings. Now, it is being used to make gasoline burn cleaner.*

*This primer presents the facts about MTBE: what it is, how it is used, and its role in reducing air pollution as the 1990 Clean Air Act envisions.*

*Editorial and Special Issues Department*
*Public Affairs Group*
*June 1994*

EQ 017636

### What is MTBE?

MTBE—methyl tertiary butyl ether—belongs to a class of chemical compounds known as ethers. They have an oxygen atom in each molecule and a characteristic smell. Some people think MTBE smells like turpentine.

MTBE is a petroleum product. It is made by combining isobutylene (from crude oil or natural gas liquids) and methanol. Though methanol is commonly called wood alcohol, it can be produced from many things—including wood, biomass, coal, and natural gas. For economic reasons, nearly all methanol is now made from natural gas.

### How is MTBE used?

MTBE has been used as a gasoline additive since 1979. At first, it was used largely as a replacement for lead—to raise the octane of gasoline. Now, MTBE is used in higher concentrations to raise the oxygen content of gasoline. MTBE has also been used to dissolve gallstones (now done with more advanced technology such as ultrasound).

### Why put more oxygen in gasoline?

In certain cars, more oxygen in gasoline results in more complete burning of fuel—a goal of the 1990 Clean Air Act amendments because it reduces carbon monoxide emissions. In addition, MTBE is expected to be a key ingredient of the more radically reformulated gasoline the law requires by 1995. Designed to reduce hydrocarbon emissions that contribute to summertime smog, this gasoline will be used in at least nine U.S. cities: Baltimore, Chicago, Hartford, Houston, Los Angeles, Milwaukee, New York, Philadelphia, and San Diego. Other cities may also choose to use reformulated gasoline.

### Why worry about carbon monoxide emissions?

Carbon monoxide is a colorless, odorless gas that inhibits the blood's capacity to carry oxygen to organs and tissues. People with chronic heart disease may experience chest pains when carbon monoxide levels are high. At very high levels, carbon monoxide impairs vision, manual dexterity, and learning ability—and can even cause death.

### How much carbon monoxide is too much?

Carbon monoxide is one of six "criteria" pollutants regulated under the 1970 Clean Air Act. As the law requires, EPA has set health-based standards for safe levels of carbon monoxide in the air. They are called National Ambient Air Quality Standards—NAAQS for short.

EQ 017637

pipeline, as commonly happens, that water will mix with the alcohol-blended fuel, rendering it unusable, but won't affect the MTBE-blended fuel.

While pipelines could be made water-free, it would be costly. Oxygenating gasoline with MTBE does not entail these costs, so it is a less expensive way to reduce carbon monoxide emissions.

*Could products other than MTBE and ethanol be used to oxygenate gasoline?*
Yes. According to the U.S. Department of Energy, MTBE now has the bulk of the oxygenated gasoline market and ethanol much of the rest. Other ethers such as ETBE (ethyl tertiary butyl ether) and TAME (tertiary amyl methyl ether) are also used.

*Who makes MTBE?*
Arco Chemical Americas Company is the biggest supplier of MTBE. It has several MTBE plants, including the world's largest on the Houston Ship Channel. Other major domestic producers—also located in Texas—include EGP Fuels Corporation (a subsidiary of Enron), Global Octane, Texas Petrochemicals, Texaco Chemical Company, and Valero Energy.

Alberta Envirofuels operates a Canadian plant in which Chevron has an interest (Neste Oy, a Finnish company, is the main partner). Belview Environmental is opening another plant in Texas (Enterprise is building it in partnership with Sun and Mitchell). In addition, Shell is planning a plant in Louisiana. Many refineries also have units that produce MTBE.

In all, more than a dozen new MTBE plants are in the works on this continent alone. Overseas, M.W. Kellogg, a Houston-based company, is building a plant in Malaysia and Saudi Arabia is building a plant in Jubail.

*How much MTBE is produced?*
According to the U.S. Department of Energy, MTBE production averaged 100,000 barrels per day in 1992. And demand for MTBE is expected to rise when the reformulated gasoline provisions of the Clean Air Act go into effect in 1995.

*How does gasoline oxygenated with MTBE differ from conventional gasoline?*
It generally costs more, since MTBE is more expensive than the blending components it replaces. Gasoline oxygenated with MTBE also smells different and contains less energy per gallon than conventional gasoline. So cars may get slightly lower mileage with it—how much lower depends on what kind of

3

EQ 017639

# EXHIBIT 2

*Segnal Copy*

August, 1987

## MTBE HEALTH EFFECTS TASK FORCE
## PARTICIPATION AGREEMENT

This agreement is entered into between the MTBE HEALTH EFFECTS TESTING TASK FORCE and the undersigned parties ("the Parties") and shall become effective on the date indicated in Article IV hereof.

WHEREAS, present and prospective producers, importers and processors of methyl tertiary butyl ether (MTBE) have formed an MTBE HEALTH EFFECTS TESTING TASK FORCE (the "Task Force");

WHEREAS, the Task Force is a group of companies acting under the auspices of the Oxygenated Fuels Association, Inc., a trade association, who have agreed to share certain testing costs as hereinafter provided; and

WHEREAS, each undersigned Party desires to fund an equitable share of certain health effects testing of MTBE required by the Environmental Protection Agency ("EPA") under Section 4 of the Toxic Substances Control Act ("TSCA");

EXHIBIT #9
Dominguez
9-12-00 mp

| Producer | Base Capacity[a] | Base Share (%) |
|---|---|---|
| Arco | 613 | 49.76 |
| Texas Petrochemical | 207 | 16.80 |
| Texaco | 97 | 7.87 |
| Amoco | 44 | 3.57 |
| Phillips | 43 | 3.49 |
| Exxon | 38 | 3.08 |
| Citgo | 35 | 2.84 |
| Diamond Shamrock | 31 | 2.52 |
| Sun Oil | 23 | 1.87 |
| Valero Refining | 23 | 1.87 |
| American Petrofina | 23 | 1.87 |
| Hill Petroleum | 23 | 1.87 |
| Champlin | 17 | 1.38 |
| Conoco Inc. | 15 | 1.22 |
| Total | 1232 | 100 |

---

[a]    Millions of gallons a year.

-12-

# EXHIBIT 3

**CA.GOV** Energy **ALMANAC** California ENERGY COMMISSION

# Gasoline Market Share in California

### 2010 GASOLINE MARKET SHARE

Source: California State Board of Equalization Monthly Motor Vehicle Fuel Distributions Report

### 2009 GASOLINE MARKET SHARE

Source: California State Board of Equalization Monthly Motor Vehicle Fuel distribution report

### 2008 GASOLINE MARKET SHARE

Source: California State Board of Equalization Monthly Motor Vehicle Fuel distribution report



### 2007 GASOLINE MARKET SHARE

### 2006 Gasoline Market Share

Source: California State Board of Equalization Monthly Motor Vehicle Fuel distribution report















| | Total 2005 | Total 2006 | Total 2007 | Total 2008 | Total 2009 | Total 2010 |
|---|---|---|---|---|---|---|
| ARCO (BP) | 3,098,955,189 | 3,151,128,307 | 3,022,554,036 | 2,994,302,242 | 3,005,286,349 | 2,994,865,141 |
| Chevron | 2,902,966,798 | 3,030,271,078 | 2,892,298,413 | 2,745,285,768 | 2,896,363,177 | 2,780,837,754 |
| Equilon/Equiva | 2,144,942,168 | 2,070,498,157 | 1,506,099,028 | 1,158,950,726 | 1,151,681,782 | 1,101,993,619 |
| ExxonMobil | 988,918,988 | 961,903,517 | 960,140,828 | 937,249,341 | 1,002,817,323 | 1,022,737,347 |
| Tesoro West Coast Company | 1,127,705,405 | 1,266,918,671 | 1,774,739,458 | 1,983,814,589 | 2,063,308,105 | 2,024,102,493 |
| Tosco/ConocoPhillips | 2,150,648,907 | 1,999,146,246 | 1,949,707,225 | 1,764,571,102 | 1,896,573,125 | 2,052,066,827 |
| Ultramar/Valero | 1,751,823,575 | 1,788,853,201 | 2,008,619,712 | 1,929,594,750 | 1,725,774,596 | 1,796,531,523 |
| Subtotal – Majors | 14,496,057,474 | 14,611,683,887 | 14,498,839,096 | 13,513,768,518 | 13,741,804,457 | 13,773,134,704 |
| All Others | 1,422,151,633 | 1,311,469,779 | 1,170,492,333 | 1,434,800,395 | 1,086,071,700 | 1,112,556,393 |
| Big West of California, LLC | 191,740,568 | 217,444,794 | 267,242,151 | | | |
| Kern Oil | 138,355,876 | 125,519,916 | 117,438,245 | | | |
| Total | 15,918,209,107 | 15,846,484,872 | 15,669,331,429 | 14,948,568,913 | 14,827,876,157 | 14,885,691,097 |

| 2004 | |
| --- | --- |
| Company | 2004 Gallons |
| BP WEST COAST PRODUCTS LLC | 3,079,832,017 |
| CHEVRON U.S.A., INC. | 2,910,858,984 |
| EQUILON ENTERPRISES, LLC | 2,310,094,796 |
| CONOCOPHILLIPS COMPANY | 2,235,896,981 |
| VALERO MARKETING & SUPPLY COMPANY | 1,693,335,340 |
| EXXONMOBIL CORPORATION | 1,050,894,058 |
| TESORO REFINING AND MARKETING CO | 915,684,803 |
| TOWER ENERGY GROUP | 379,335,149 |
| PETRO-DIAMOND INCORPORATED | 301,175,310 |
| NEW WEST PETROLEUM, INC. | 248,176,975 |
| ALL OTHERS | 816,448,499 |
| TOTAL | 15,941,732,912 |

| 2001 | |
| --- | --- |
| ARCO/BP-Amoco | 22.60% |
| ChevronTexaco (Chevron and Texaco from Equilon merged 10/9/01) | 19.91% |
| Equilon: Shell | 15.80% |
| ExxonMobil (merged 12/98) | 9.96% |
| Tosco/Unocal | 17.66% |
| Valero (Ultramar, Beacon) | 6.99% |
| Unbranded & Others | 7.08% |

| 1995 | |
| --- | --- |
| ARCO | 18.5% |
| Chevron | 16.9% |
| Exxon | 6.8% |
| Mobil | 8.9% |
| Shell | 13.2% |
| Texaco | 5.1% |
| Unocal | 11.0% |
| Independents & Others | 19.7% |
| Tosco | 6.4% |
| Ultramar | 6.5% |
| Unbranded | 6.8% |

| 1990 | |
| --- | --- |
| ARCO | 19.0% |
| Chevron | 16.2% |
| Exxon | 7.8% |
| Mobil | 6.1% |
| Shell | 14.4% |
| Texaco | 5.1% |

TES-SCHINK-MDL0002895

| Unocal | 11.5% |
|---|---|
| Independents & Others | 20.1% |

| 1980 | |
|---|---|
| ARCO | 11.6% |
| Chevron | 18.5% |
| Exxon | 5.4% |
| Mobil | 8.3% |
| Shell | 14.9% |
| Texaco | 8.5% |
| Unocal | 11.5% |
| Independents & Others | 22.3% |

| 1965 | | |
|---|---|---|
| Retailer | In 1,000 gallons of gasoline | Percent Market Share |
| Caminol | 57,309 | 0.80% |
| Coastal | 13,493 | 0.19% |
| Douglas | 145,096 | 2.02% |
| Fletcher | 43,442 | 0.60% |
| Gold Eagle | 97,284 | 1.35% |
| Gulf | 314,005 | 4.37% |
| Humble | 77,445 | 1.08% |
| Mohawk | 52,140 | 0.73% |
| Newhall | 7,546 | 0.11% |
| Powerine | 155,322 | 2.16% |
| Richfield | 648,771 | 9.03% |
| Seaside | 63,338 | 0.88% |
| Shell | 1,143,160 | 15.91% |
| Signal Oil-Gas | 281,005 | 3.91% |
| Soc.-Mobil | 609,964 | 8.49% |
| Standard Oil of Calif. | 1,684,072 | 23.44% |
| Sunland | 25,813 | 0.36% |
| Texaco | 589,515 | 8.21% |
| Tidewater | 406,341 | 5.66% |
| Time | 67,063 | 0.93% |
| Union | 706,345 | 9.83% |
| TOTAL CALIF. | 7,183,161 | |

Information from 1965 Pacific States Gasoline Sales Tax Report.
For more information, see: http://home.pacbell.net/lcobb/gas65rpt.htm

**Sources:**

1965, Pacific States Gasoline Sales Tax Report. For more information, see:

TES-SCHINK-MDL0002896

http://home.pacbell.net/lcobb/gas65rpt.htm

1980 & 1990, *The Sacramento Bee*, April 14, 1991, chart based on information supplied by the Lundberg Survey.

1995, California Energy Commission Fuels Office based on Fuel Taxes Paid compiled by California Board of Equalization.

2001, California Board of Equalization, 2000-2001 Annual Report, Statistical Appendix Tables, Table 25. (http://www.boe.ca.gov/annual/table25_01.doc)

Notes:

Distributors are companies or individuals who make the first distribution of gasoline in California, and are responsible for payment of the tax. (Aircraft manufacturers and certificated or licensed carriers by air may be included within the definition of distributor.) "Broker" includes every person, other than a distributor or a retailer, who deals in lots of 200 or more gallons of gasoline.

Adjustments include temperature-corrected gallonage from broker returns, late returns, audits, interest, and penalties.

---

| Gasoline Main Page | Commission Homepage | Site Index | Search Site | Glossary | Links | Contact Us |

Page Updated: July 8, 2008

TES-SCHINK-MDL0002897

# EXHIBIT 4

# MTBE
## Gasoline Blending Component

## Technical Bulletin

## ARCO Chemical Company   **ARCO** ⬦
Division of Atlantic Richfield Company

ARC 058645

1500 Market Street, Philadelphia  Pennsylvania 19101
4550 Post Oak Place Drive, Houston, Texas 77027

# EPA Substantially Similar Ruling

Under the Environmental Protection Agency's (EPA) revised definition of ''substantially similar,'' MTBE can be used in unleaded gasoline up to about 11 vol.% in finished gasoline.

# Contents

I.   Introduction

II.  Physical Properties

III. Advantages of MTBE

IV.  Blending Octane Values

V.   Engine Emissions

VI.  Material Safety Data Sheet

# I. Introduction

MTBE (methyl t-butyl ether) is a high octane gasoline blending component which is currently used commercially in the United States and in Europe.

The blending octane value of MTBE is greater than that of toluene and other commercially available high octane blending components.

ARCO Chemical Company's involvement with MTBE began in the early 1960's through the development of a patented process to remove branched olefins such as isobutylene from mixed hydrocarbon streams. Today, ARCO Chemical is operating a plant to produce high purity MTBE at Channelview, Texas, by the selective reaction of methanol with isobutylene contained in a mixed $C_4$ stream using a proprietary fixed bed catalyst system.

Although the primary initial use of MTBE is expected to be as a gasoline blending stock, it is anticipated that the commercial availability of high purity MTBE will promote new chemical and solvent applications.

The information in this bulletin is believed to be accurate but all recommendations are made without warranty, since the conditions of use are beyond the control of ARCO Chemical Company. The listed properties are illustrative only, and not product specifications. ARCO Chemical Company disclaims any liability in connection with the use of the information, and does not warrant against infringement by reason of the use of any of their products in combination with other material or in any process.

© 1982 Atlantic Richfield Company

2

# II. Physical Properties

MTBE (methyl t-butyl ether) is a colorless, clear, low viscosity liquid having a terpene-like odor. Chemically it is an organic ether containing 18.2% oxygen with properties consistent with other liquid hydrocarbons that are suitable for use as a gasoline blending component.

MTBE is only slightly soluble in water but is miscible with most organic solvents. The storage stability of MTBE is excellent and, in general, the compound is handled in the same manner as gasoline. Typical composition and physical properties of ARCO Chemical's MTBE are given in Table I. Current specifications for MTBE are listed in Table II.

$$CH_3 - O - C(CH_3)_2 CH_3$$

# EXHIBIT 5

ARCO Chemical ⬥

ARC 049825

# MTBE



**MTBE and ARCO Chemical Company**

Our involvement with MTBE dates from the early 1960's when ARCO Chemical developed a patented process to remove branched olefins like isobutylene from mixed hydrocarbon streams. ARCO Chemical's primary MTBE plant—on stream since 1979—uses a proprietary fixed bed catalyst system to produce high purity MTBE by the selective reaction of methanol with isobutylene.

As of the end of 1988, announced expansion will boost ARCO Chemical Company's worldwide MTBE capacity to over 60 thousand barrels per day.

And, as the largest producer and merchant marketer of MTBE, our commitment to serving your octane needs includes plans for further expansion of our production capacity. Unique among domestic sources of MTBE, ARCO Chemical's feedstock supply of isobutylene is not dependent on steam or catalytic cracking operations. So, you can depend on ARCO Chemical for the most reliable supply of MTBE in the volumes you need.

The following material discusses MTBE's physical properties, the blending properties of MTBE in gasoline, and the characteristics of fuels blended with MTBE. Additional information on MTBE and its benefits as an octane enhancer in your specific application may be obtained by calling ARCO Chemical Company, 1-800-321-7000 or 1-800-354-1660.

*Refiners need a cost-effective and dependable supply of a quality octane enhancer. MTBE is the easy and economical solution.*

## I. Introduction

**C**urrently in commercial use across the United States and Europe, MTBE (methyl t-butyl ether) has a blending octane value greater than that of toluene, reformate or alkylate. And, because it blends like any other hydrocarbon gasoline component, MTBE offers the refiner a source of octane requiring little or no capital investment. Blending MTBE is as easy as blending toluene.

Approved by the EPA* as an octane enhancer in gasoline and compatible with your existing distribution system, MTBE is the easy and economical solution to your octane needs.

*U S Environmental Protection Agency

1

ARC 049827

# EXHIBIT 6

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

In re: Methyl Tertiary Butyl Ether                  Master File No. 1:00-1898(SAS)
("MTBE") Products Liability Litigation              M.D.L. No. 1358

This Document Relates To:

ORANGE COUNTY WATER DISTRICT,

         Plaintiff,                                Case No. 04-CV-4968 (SAS)

    vs.                                        **DECLARATION OF DEFENDANT
                                                    LYONDELL CHEMICAL COMPANY**
UNOCAL CORPORATION, et al.                          **PURSUANT TO CASE MANAGEMENT
                                                    ORDER #4**
       Defendants.

---

     I, Karen M. Bowling, on behalf of defendant Lyondell Chemical Company, and pursuant

to the requirements of Case Management Order #4, Section III, Part B, Paragraph 2(a), herewith

declares as follows:

    1.    I am employed by Lyondell Chemical Company ("Lyondell"). Between April

2002 and November 2004 I was a Business Manager in its fuels organization. I am authorized to

make this declaration on Lyondell's behalf. The statements made herein are based upon my own

personal knowledge and the result of examination of records and inquiries made by and of

others. I am the Lyondell employee most qualified to testify with respect to the following

subjects.

    2.    Lyondell is and has been a manufacturer and seller of basic industrial chemicals,

including the gasoline additive MTBE, which it sells in bulk to refiners. Lyondell has not at any

time been either a refiner of petroleum or a manufacturer, blender, jobber, trader or seller of gasoline. Lyondell has not, at any time or place alleged to be relevant to this action, been a manufacturer or seller of gasoline-grade TBA.

3.     Any MTBE sold by Lyondell in or for the California marketplace has been manufactured by Lyondell's unit located at Channelview, Texas.

4.     All MTBE is made by means of a combination reaction between methanol and isobutylene. The isobutylene feedstock for Lyondell's Channelview unit is created by dehydrating a co-product of Lyondell's propylene oxide manufacturing process.

5.     It is Lyondell's understanding that until quite recently, California's demand for gasoline was entirely satisfied by production from refineries located in California and that even during the past five (5) years, refineries located elsewhere in the United States have provided no more, on average, than 2.7% of the total volume of gasoline consumed in California. It is Lyondell's further understanding that as a result of transportation costs, the California gasoline marketplace is essentially split such that Southern California is served by refineries located in the south, principally in and around Los Angeles, whereas Northern California's gasoline supply comes principally from refineries located in the San Francisco Bay region. Therefore, it is Lyondell's presumption that during the allegedly relevant time period, gasoline delivered in the Orange County Water District Service Area has been manufactured and supplied exclusively by refineries located in Southern California.

014580.00690/21340950v1

6.    The following is a list of the refiners who purchased MTBE from Lyondell, or its predecessor Arco Chemical Company[1], during the allegedly relevant time period which may have been added to gasoline for delivery in the Orange County Water District Service Area. In parentheses behind the name of each refiner appears an indication of the years in which such purchases were made.

> Arco Products Co. (1992–2003)
>
> Atlantic Richfield Co. (1988–1991)
>
> BP (2002–2003)
>
> Chevron (1987–1991, 1993, 1995, 1996)
>
> Exxon (1992–1993)
>
> Kern (1987–1989)
>
> Mobil Oil Corp. (1992–1996, 1998)
>
> Shell Oil Co. (1989–1993, 1997)
>
> Texaco Refining and Marketing Co. (1987, 1989–1997)
>
> Tosco Refining Co. (1997–1998)
>
> Ultramar Inc. (1996–1997)
>
> Unocal Corp. (1993, 1995–1997)
>
> Unocal Refining & Marketing (1987–1993)

---

[1] Arco Chemical Company was a division of Atlantic Richfield Co. until June 9, 1987, upon which date it became a separate corporation. It is assumed that information pertaining to sales and operations prior to that date will be made by Atlantic Richfield's successor, BP America Inc.

7. This list was extracted from Lyondell's computerized customer service data base. A general disclaimer as to the accuracy of this information is necessary: As to the California marketplace, the majority of MTBE sales have been made on an "F.O.B. Houston" basis, with the customer taking title to the product in tankage located in Houston and making its own shipment and delivery arrangements. Therefore, although the Lyondell computerized customer service data base certainly contains customer addresses listing Southern California locations, those addresses are often simply the place to which invoices were sent. Given the fungibility of the product and the nature of the market for gasoline components, one cannot determine based upon Lyondell's records alone whether or not MTBE manufactured by Lyondell was ever actually added to gasoline for delivery in the Orange County Water District Service Area.

I declare, being mindful of the penalty for perjury, that the foregoing is true and correct to the best of my knowledge, information and belief.

By: _____
      Karen M. Bowling

Dated:  December 30, 2004
          Houston, Texas

014580.00690/21340950v1

# EXHIBIT 7

## DECLARATION OF ALEXANDER BLAGOJEVIC



I, ALEXANDER BLAGOJEVIC, declare:

1.   I am employed by Lyondell Chemical Company as marketing manager for the Oxyfuels Business Group.  My duties specifically include the marketing and sales of MTBE to refining customers in the Americas.  Having previously been employed by Arco Chemical Company,  I have held my current position since November 1992. I believe I am the person most knowledgeable presently in the employ of Lyondell Chemical Company with regard to the history of sales of MTBE by Arco Chemical Company to customers on the U.S. West Coast.

2.   This Declaration is based upon both my personal knowledge and upon a review of certain sales records.

3.   Given the nature of our sales and transportation arrangements with various customers, the ultimate location and use of a parcel of MTBE was not always known to us.  Largely because our company's MTBE manufacturing units are located in Channelview, Texas, most of our sales contracts for MTBE have included the shipping term "FOB HOUSTON".  We did enter into contracts with some customers by which we agreed to arrange for shipment to terminals in California.  In many instances, however, the customer arranged shipment for itself and we delivered into the customer's rail cars, tankships, barges, storage tanks or pipelines at Houston. Although in those circumstances we had no way to be certain whether or not the

1

product was eventually delivered to the West Coast, our Customer Service employees made attempts to obtain and record that information.

4.     In answer to Questions 13 and 14 of the "Notice of Taking Deposition of Arco Chemical", dated March 10, 2000, the first sales and deliveries of MTBE in and to California were made on a spot basis to Oxbow Resources (April 1986), Union Chemical (April 1986), Chevron Research (July 1986) and Kern Oil (October 1986).

5.     Question 20 attached to the Notice asked whether or not Arco Chemical Company had sold MTBE, directly or indirectly, to certain companies.  The answer to that question is "yes" as to the following companies (or their affiliates):  Shell Oil Company; Shell Oil Products Company; Equilon Enterprises, LLC; Exxon Corporation; Tosco Corporation (both directly and as the assignee of certain sales contracts originally negotiated with Unocal Corporation); Chevron U.S.A. Inc.; Atlantic Richfield Co.; Texaco Inc.; BP America Inc.; BP Exploration & Oil Inc.; Ultramar, Inc.; Ultramar Diamond Shamrock Corporation; Unocal Corporation and Wickland Oil Company.  I have no recollection and have found no record indicating that Arco Chemical Company ever made sales of MTBE to "Pacific Refining". However, the sales records do show a sale in 1992 of less than 500 gallons to a company in Los Angeles referred to as "PRC".

6.     I attach a spreadsheet derived from our sales records showing MTBE sales by Arco Chemical Company to certain customers at destinations within

2

California between 1986 and 1999, inclusive. See Exhibit "A". The destinations identified on our sales records are in most cases either the port or place of delivery by Arco Chemical or the port or place to which the customer had indicated an intention to ship the product. As shown by the spreadsheet, the answer to Question 15 of the Notice is "yes".

7.    The answers to Questions 16 and 17 of the Notice are "yes", as indicated above.

8.    The types of documents which were generally created by Arco Chemical Company pertaining to the sale, transport, delivery, supply and/or exchange of MTBE to or with any of the defendants in the South Tahoe Public Utility District ("STPUD") case and any Northern California refineries were:

> Invoices to customers;
>
> Product Purchase Agreements;
>
> MTBE Sales Contracts;
>
> Exchange Agreements;
>
> Telexes or Letters confirming spot orders;
>
> Shipping Contracts with customers;
>
> Shipping bills of lading;
>
> Charter Parties or other contracts with transport providers; and
>
> Invoices from transport providers.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration is made this 4th day of May, 2000 at Houston, Texas.

_____
Alexander Blagojevic

EXHIBIT "A"

## SALES OF MTBE BY ARCO CHEMICAL COMPANY TO
## SPECIFIED CALIFORNIA CUSTOMERS BY DESTINATIONS, 1986-1999

(Volume in Gallons rounded to nearest thousand)[1]

| CUSTOMER | 1986 | 1987 | 1988 | 1989 | 1990 | 1991 | 1992 | 1993 | 1994 | 1995 | 1996 | 1997 | 1998 | 1999 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ARCO PRODUCTS CO. | | | | | | | | | | | | | | |
| EL SEGUNDO | | | | | | | | | 6604 | | | | | |
| MARTINEZ | | | | | | | | 2098 | | | | | | |
| ANAHEIM | | | | | | | 0 | | | | | | | |
| CARSON | | | | | | | | 2068 | | | | | | |
| CROCKETT | | | | | | | 3576 | 12252 | | | | | | |
| LONG BEACH | | | | | | 34137 | 35631 | 111551 | 79469 | 9441 | 11150 | 47928 | 59934 | 52126 |
| LOS ANGELES | | | | | | 1259 | 6347 | 18685 | 1051 | 2100 | | 47 | | |
| SAN PEDRO | | | | | | 2077 | 11456 | 10868 | | | | | | |
| ATLANTIC RICHFIELD | | | | | | | | | | | | | | |
| LOS ANGELES | | | 2985 | 15207 | 2966 | | | | | | | | | |
| LONG BEACH | | | | | 14478 | | | | | | | | | |

[1]Blank box indicates no sales in given year;
"0" indicates sales of at least 1 gallon but less
than 500 gallons.

| CUSTOMER | 1986 | 1987 | 1988 | 1989 | 1990 | 1991 | 1992 | 1993 | 1994 | 1995 | 1996 | 1997 | 1998 | 1999 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CHEVRON, USA (INCLUDING CHEVRON RESEARCH) | | | | | | | | | | | | | | |
| CROCKETT | | | | | | | | | | | | | | |
| EL SEGUNDO | | 3578 | 8320 | 5472 | 25763 | 36302 | | 8586 | | 3318 | 5460 | 5521 | | |
| RICHMOND | | | 1252 | | 6448 | 8073 | 0 | 2051 | 11130 | 0 | 16580 | 22499 | | |
| LONG BEACH | | | | | | | | | | 3732 | | | | |
| WALNUT CREEK | | | | | | 3024 | | | | | | | | |
| LOS ANGELES | | | | | | | | | | | 2330 | 2700 | | |
| EQUILON ENTERPRISES | | | | | | | | | | | | | | |
| MOPF;:? | | | | | | | | | | | | | | 38605 |
| BAKERSFIELD | | | | | | | | | | | | | | 392 |
| EQUIVA TRADING CO. | | | | | | | | | | | | | | |
| MOPECO | | | | | | | | | | | | | 35022 | |
| LONG BEACH | | | | | | | | | | | | | 3780 | |
| EXXON CO. USA | | | | | | | | | | | | | | |
| BENICIA | | | | | | | 3053 | | | | | | | |
| CARSON | | | | | | | 3282 | | | | | | | |
| CROCKETT | | | | | | | 39362 | | 15457 | | 35239 | | | |
| HERCULES | | | | | | | 506 | | | | | | | |

2

| CUSTOMER | 1986 | 1987 | 1988 | 1989 | 1990 | 1991 | 1992 | 1993 | 1994 | 1995 | 1996 | 1997 | 1998 | 1999 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EXXON CO. USA (CONT.) | | | | | | | | | | | | | | |
| LONG BEACH | | | | | 6182 | 1010 | 3248 | | | | | | | |
| SIGNAL HILL | | | | 8169 | 3150 | | 125 | | | | | | | |
| EXXON SUPPLY CO. | | | | | | | | | | | | | | |
| CROCKETT | | | | | | | | 34000 | | | | | | |
| EL SEGUNDO | | | | | | | | 9783 | | | | | | |
| LONG BEACH | | | | | | | | 755 | | | | | | |
| KERN | | | | | | | | | | | | | | |
| BAKERSFIELD | 49 | 76 | 383 | | | | | | | | | | | |
| LONG BEACH | | 2049 | 5680 | 6262 | | | | | | | | | | |
| EL SEGUNDO | | | | 174 | | | | | | | | | | |
| PRC | | | | | | | 0 | | | | | | | |
| LOS ANGELES | | | | | | | | | | | | | | |
| SHELL OIL CO. | | | | | | | | | | | | | | |
| SEBASTOPOL | | | | | | | | | | | 5072 | | | |
| CARSON | | | | | | | 2847 | 1760 | | | | 2280 | | |
| MARTINEZ | | | | | | | | 2432 | | | | | | |
| SELBY | | | | | 1673 | | | | | | | | | |
| WILMINGTON | | | | 1034 | 26583 | 8986 | | | | | | | | |
| LONG BEACH | | | | | 3871 | | | | | | | | | |

3

| CUSTOMER | 1986 | 1987 | 1988 | 1989 | 1990 | 1991 | 1992 | 1993 | 1994 | 1995 | 1996 | 1997 | 1998 | 1999 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TEXACO REFINING & MARKETING | | | | | | | | | | | | | | |
| BAKERSFIELD | | | | | | | 318 | | | | | | | |
| EL SEGUNDO | | | | | | 3822 | | | | | | | | |
| SIGNAL HILL | | | | 7768 | 9822 | 5327 | | | | | | | | |
| SAN FRANCISCO | | | | 1966 | | | | | | | | | | |
| WILMINGTON | | 669 | | | | 1531 | | | | | | | | |
| CROCKETT | | | | | | | 2112 | | 6183 | | 10219 | | | |
| LONG BEACH | | | | 11207 | 9054 | 17140 | 11790 | 5411 | 12241 | 12453 | 14776 | 8968 | | |
| LOS ANGELES | | | | | | | | 672 | | | | | | |
| MOPICO | | | | | | 2721 | 10762 | 14830 | 12212 | 14682 | 33620 | 41520 | | |
| RICHMOND | | | | | | | 2076 | | | | | | | |
| SAN PEDRO | | | | | 11182 | 2940 | 1655 | 3937 | 2662 | | 15217 | 7654 | | |
| SIGNAL HILL | | | | | | | 8668 | 14906 | 6300 | | | | | |
| UNIVERSITY CITY | | | | | | | 1483 | 9008 | | 3310 | | | | |
| TOSCO REFINING CO. | | | | | | | | | | | | | | |
| MARTINEZ | | | | | | | | | | 0 | | | | |
| CROCKETT | | | | | | | | | | | | 3088 | | |
| LOS ANGELES | | | | | | | | | | | | 47132 | 68319 | |
| SAN FRANCISCO | | | | | | | | | | | | 3212 | | |
| LONG BEACH | | | | | | | | | | | | | 2062 | |

4

| CUSTOMER | 1986 | 1987 | 1988 | 1989 | 1990 | 1991 | 1992 | 1993 | 1994 | 1995 | 1996 | 1997 | 1998 | 1999 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ULTRAMAR, INC. | | | | | | | | | | | | | | |
| WILMINGTON | | | | | | | | | | | 1680 | 5852 | | |
| LONG BRANCH | | | | | | | | | | | | 2108 | | |
| ULTRAMAR DIAMOND SHAMROCK | | | | | | | | | | | | | | |
| WILMINGTON | | | | | | | | | | | | 2100 | | |
| UNION CHEMICALS | | | | | | | | | | | | | | |
| LOS ANGELES | 7131 | | | | | | | | | | | | | |
| LONG BEACH | 790 | | | | | | | | | | | | | |
| SAN FRANCISCO | 1307 | | | | | | | | | | | | | |
| UNOCAL (CHEMICAL or REFINING) | | | | | | | | | | | | | | |
| LOS ANGELES | 6276 | 25460 | 34114 | 20772 | 14059 | 30669 | 27616 | 42653 | 14423 | 101951 | 83949 | 23201 | | |
| LONG BEACH | | | | | | | | | | 2315 | | | | |
| BREA | | | | 0 | 1 | 1 | 1 | | | | | | | |
| SAN FRANCISCO | | 2242 | 8971 | 9 | 1687 | 5148 | | | | | 7324 | 6276 | | |
| WICKLAND OIL CO | | | | | | | | | | | | | | |
| SELBY | | | | 453 | | | | | | | | | | |

5

EXHIBIT 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

In re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation


This Document Relates To

*People of the State of California, et al. v.*
*Atlantic Richfield Company, et al,*
*Quincy Community Services District v. Atlantic*
*Richfield Company et al.*
*City of Roseville v. Atlantic Richfield Company*
*et al.*
*California-American Water Company v.*
*Unocal Corp., et al.*
*City of Fresno v. Chevron USA Inc., et al.*
*City of Riverside v. Atlantic Richfield Company*
*et al.*
*Orange County Water District v. Unocal*
*Corp., et al*
*Martin Silver, et al. v. Alon USA Energy, Inc.*
*et al.*


------------------------------------------------------X

MDL NO. 1358 (SAS)
Master File C.A. No. 1:00-1898


**DECLARATION OF GREGORY B.
HAMMOND**


1.     My name is Gregory B. Hammond. I am over eighteen years of age, and I am

competent to submit this declaration. If called to testify, I could competently testify to the

following facts.

2.     I am a Financial Systems Consultant with Clover Global Solutions, LP. My

current assignment is with BP West Coast Products LLC at which I am a System Analyst for the

International Supply & Trading and Retail Organizations. My position involves, among other

things, developing tracking systems for petroleum products, converting affiliate systems into

BP's financial and inventory system, and data retrieval for major litigations.

*Purchase and Exchange Data for Gasoline Containing MTBE and Neat MTBE*

3.      At the request of BP's counsel, I, assisted by others, have undertaken an investigation of: (1) the identity of parties that have sold gasoline that contained or may have contained MTBE to BP or its affiliates, and (2) the identity of parties that have sold neat MTBE to BP or its affiliates. This investigation continues.

4.      I, along with those working with me on this matter, conducted this investigation by consulting computer databases kept in the ordinary course of business, as well as by making inquiries to knowledgeable BP personnel. Because BP and its affiliates have changed and modified computer databases over time, not all data is readily available.

5.      The investigation conducted has resulted in the good faith compilation of a substantially complete report, based on reasonably available information, about parties that sold gasoline containing MTBE since 1989 or neat MTBE since 1989 to BP and/or it affiliates, which may have been supplied to the Relevant Areas as defined by plaintiffs. However, I cannot be sure that the investigation has resulted in absolutely complete information. Conducting the investigation necessary to assure an absolutely complete report would have taken excessive resources and time that were not available to me or those working with me. I plan to continue BP's investigation and provide supplemental information as it becomes available.

6.      Attachment A is a preliminary chart that lists the parties who sold to BP or its affiliates gasoline that contained or may have contained MTBE during the time period from 1989 to 2003, or with whom there may have been exchange agreements for the same time period. These sellers may themselves be manufacturers of gasoline or merchant sellers of gasoline. The investigation of these matters continues and the information presented in Attachment A to Exhibit 1 is preliminary and subject to substantial revision. The responses will be supplemented if additional information is located.

7.      The records of BP make it difficult to determine when individual purchases of or exchanges for gasoline containing MTBE occurred. Without manually reviewing each of the individual agreements, it cannot be readily determined at this point whether the transactions that

- 15 -

**ATTACHMENT B TO EXHIBIT 1**
Entities that sold neat MTBE to BP or its affiliates from 1989 through 2003.

| Supplier | 1989 | 1990 | 1991 | 1992 | 1993 | 1994 | 1995 | 1996 | 1997 | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AMERICAN AGIP | | | | | | | | | | | | Y | Y | Y | |
| AMOCO OIL CO | | | | | | | | | Y | | | Y | Y | Y | |
| ARCO CHEMICAL | | | | Y | Y | | | Y | Y | Y | Y | | | | |
| BP NORTH AMERICA INC | | | | | | | | | | | | | Y | Y | Y |
| BP OIL CO | | | | | | | | Y | Y | | | | | | |
| BP PRODUCTS NORTH AMERICA | | | | | | | | | | | | | | Y | Y |
| BP SINGAPORE | | | | | | | | | | | | | Y | | |
| CHEVRON USA INC | | | | | | | | Y | Y | | | | | | |
| CITGO CORP | | | | | | | | | Y | | | | | | |
| CLARK REF & MKTG | | | | | | | | | | | Y | | | | |
| CONOCOPHILLPS | | | | | | | | | | | | | | | Y |
| ECOFUEL | | | | | | | Y | Y | Y | Y | Y | Y | Y | Y | |
| ~RON | | | | | | | | Y | Y | Y | Y | Y | Y | | |
| ~RON CLEAN FUELS | | | | | | | | | | | | | Y | | |
| EOTT ENERGY CORP | | | | | | | | | | | | | Y | Y | |
| EQUILON | | | | | | | | | | | Y | | | | |
| EQUIVA TRADING | | | | | | | | | | | Y | Y | Y | Y | |
| EXXON CO USA | | | | | | | | | | Y | | | | | |
| EXXON MOBIL | | | | | | | | | | | | | Y | | |
| G.E. WARREN | | | | | | | | | | | | | Y | | |
| GLENCORE LTD | | | | | | | | | | | Y | | | | |
| GLOBAL PETROLEUM | | | | | | | | Y | | | | | | | |
| GLOBAL OCTANE CORP | | | | | | | | Y | Y | Y | Y | Y | | Y | |
| INTERCHEM AMERICAS | | | | | | | | | Y | | | | | | |
| KOCH OIL | | | | | | | | | Y | | | | | | |
| KOLMAR PETROCHEMICAL | | | | | | | | | | | | | Y | | |
| LTC LIMITED | | | | | | | | | | | | | Y | | |
| LYONDELL | | | | | | | | | | | Y | Y | Y | Y | |
| MIECO INC | | | | | | | | | | | | | Y | | |
| MITSUI | | | | | | | | | | Y | | | | | |
| MOBIL OIL CORP | | | | | | | | Y | Y | Y | Y | | | | |
| MORGAN STANLEY | | | | | | | | Y | | | | | | | |
| NESTE OY | | | | | | | | Y | Y | Y | Y | Y | Y | Y | |
| ~BAL GROUP LTD | | | | | | | | | | Y | Y | Y | Y | Y | |
| ~EANA PETROCHEMICAL | | | | | | | | | | | | | Y | | |
| OXYGENATED MKTG & TR | | | | | | | | | | Y | | | | | |
| PDI EXPORT DSL | | | | | | | | | | | | | | Y | |
| PHIBRO ENERGY INC | | | | | | | Y | Y | Y | Y | | | | | |
| PMI TRADING INC | | | | | | | | Y | | | Y | | | | |
| SABIC | | | | | | | | Y | | Y | Y | Y | Y | Y | |
| SHELL OIL PRODUCTS | | | | | | | | | | Y | | | | Y | |
| SK GLOBAL | | | | | | | | | | | Y | | | | |
| TAUBER | | | | | | | | Y | Y | Y | Y | Y | | | |
| TEXACO REF & MKTG | | | | | | | | Y | Y | | | | | | |
| TEXAS PETROCHEMICALS | | | | | | | | Y | Y | Y | Y | Y | Y | | |
| TRADAX ENERGY | | | | | | | | | | | | | | Y | |
| TRAMMO PETROLEUM | | | | | | | | | | | | | | Y | |
| TRAMMOCHAM | | | | | | | | Y | Y | Y | | | Y | Y | |
| ULTRAMAR INC. | | | Y | | | | | Y | | | | | | | |
| VALERO REF & MKTG | | | | | | | | Y | Y | Y | | | Y | Y | Y |
| VITOL | | | | | | | | | Y | Y | Y | Y | Y | Y | Y |

Transactions involving BP predecessor and affiliate
companies may not always be included on Attachment B.

- 23 -

# EXHIBIT 9

## MTBE SALES CONTRACT

This Contract, which is dated and made effective as of January 1, 1991, and is by and between **ARCO Chemical Company**, a Delaware corporation having a place of business at 3801 West Chester Pike, Newtown Square, Pennsylvania 19073 ("SELLER") and **ARCO Products Company**, a Division of Atlantic Richfield Company, a Delaware corporation having a place of business at 1055 West Seventh Street, Los Angeles, California 90051-0570 ("BUYER"),

Witnesseth that, in consideration of the rights conferred and obligations assumed herein, and intending to be legally bound, the parties hereby agree as follows.

1. **Sale, Product, and Quality** - SELLER shall sell and deliver to BUYER and BUYER shall purchase and accept from SELLER, and pay for, during the term of this Contract and in the quantities provided in Article 4 below Methyl Tertiary Butyl Ether ("MTBE") gasoline blending component ("Product") meeting the specifications set forth in Article 14 hereto.

2. **Term** - The term of this Contract shall be from January 1, 1991, through December 31, 1991.

3. **Price** - The price for Product, expressed in cents per gallon, shall be determined as set forth in Appendix "A" hereto.

4. **Quantity** - BUYER shall order and accept delivery of, and SELLER shall sell and deliver to BUYER, Product at the rate of 70,000 barrels per calendar month. The monthly volumes may vary plus or minus ten percent at SELLER's option or greater than ten percent with BUYER's and SELLER's agreement but over any calendar quarter the volume delivered by SELLER and received by BUYER shall be within plus or minus ten percent of 210,000 barrels. The foregoing notwithstanding the annual volume of Product to be delivered to BUYER shall be 840,000 barrels plus or minus five percent.

5. **Government Action Affecting Price** - In the event of any governmental action substantially affecting SELLER's right to maintain the price or terms of payment, then, at any time such governmental action is in effect, the parties shall negotiate in good faith to agree upon a price or terms of payment. SELLER may terminate this Contract upon 30 days' notice if no agreement is reached.

6. **Payment: Credit** - BUYER shall pay SELLER for Product purchased under this Contract in accordance with the following terms: net 10 days from date of invoice. **Payments for Product shall be made to SELLER by wire transfer to such account as SELLER may notify BUYER.** If BUYER fails to pay SELLER in accordance with the above terms, then SELLER, at its option and without prejudice to its other rights and remedies, may **(A)** terminate this Contract forthwith and without notice, **(B)** suspend deliveries until all indebtedness is paid in full, and/or (C) place BUYER on a cash-on-delivery basis. In the event of default in payment, BUYER shall pay SELLER's costs of collection, if any, including, but not limited to, reasonable attorney fees. If SELLER reasonably believes that the financial responsibility of BUYER is impaired or unsatisfactory, deliveries may be suspended or BUYER may be placed on cash-on-delivery status until arrangements are made for security satisfactory to SELLER or, at SELLER's option, until all indebtedness to SELLER is paid in full. All payments under this Contract shall be made at the full invoiced amount; no prompt payment or other type of discount shall apply.

91Jan31                                                                 Page 1

EXHIBIT "A"

# MTBE SALES CONTRACT — TOLL BASED

This Contract, which is dated and made effective as of May 1, 1991, and is by and between ARCO Chemical Company, a Delaware corporation having a place of business at 3801 West Chester Pike, Newtown Square, Pennsylvania 19073 ("SELLER") and ARCO Products Company, a division of Atlantic Richfield Company, a Delaware corporation having a place of business at 1055 West Seventh Street, Los Angeles, California 90017 ("BUYER").

In consideration of the rights conferred and obligations assumed herein, and intending to be legally bound, the parties hereby agree as follows.

1. <u>Sale, Product and Quality</u>: SELLER shall sell and deliver to BUYER and BUYER shall purchase and accept from SELLER, and pay for, during the term of this Contract and in the quantities provided in Article 4 below Methyl Tertiary Butyl Ether ("Product") meeting the specifications set forth in Article 14 below for blending into BUYER's gasoline.

2. <u>Term</u>: The term of this Contract shall be from January 1, 1993, through December 31, 2002, and shall continue thereafter from year to year unless and until terminated by either party as of the end of the year 2002 or any calendar year thereafter upon not less than one hundred eighty (180) days prior notice.

3. <u>Price</u>: The price for Product, expressed in cents per gallon, shall be determined as set forth in Appendix "A" hereto, subject to the following:

   a) The price for Product shall be determined in accordance with the contract pricing provisions which are most favorable to BUYER among SELLER's other Product toll based contracts with customers that (1) compete with BUYER in BUYER's marketing area, (2) are considered trading companies, or (3) purchase their Product F.O.B. U.S. Gulf Coast. For the purpose of price comparison, any favorable credit or payment terms, price discount or rebate extended to other customers, capital payment or other payments made by customers to SELLER shall be taken into consideration.

   b) If SELLER shall sell Product under any other toll based contract to customers, as described in Article 3(a), at a price lower than the price offered to BUYER, that same quantity sold at the lower price shall be extended to BUYER at BUYER's next Product lifting. If the quantity of the lower priced Product exceeds BUYER's next lifting capacity, then credit shall be given for any subsequent liftings.

   c) SELLER shall promptly notify BUYER of any reduction in the price of Product as determined pursuant to this Article. Price adjustment shall be made so as to ensure that the contract pricing provisions to BUYER

tang/27a
4/23/91

*a. P.*

**EXHIBIT** "B"

LAN0410932

## MTBE SALES CONTRACT

This Contract, which is dated and made effective as of September 1, 1991, and is by and between

ARCO Chemical Company, a Delaware corporation having a place of business at 3801 West Chester Pike, Newtown Square, Pennsylvania 19073 ("SELLER") and

Chevron U.S.A., Inc., a Pennsylvania corporation having a place of business at 1350 Treat Boulevard, Walnut Creek, California 94596 ("BUYER").

Witnesseth that: in consideration of the rights conferred and the obligations assumed herein and intending to be legally bound, the parties hereby agree as follows.

### 1. Sale, Product, Quantity, and Quality

(A) SELLER shall sell and deliver to BUYER and BUYER shall purchase and accept from SELLER, and pay for, during the term of this Contract methyl tertiary butyl ether ("Product") at the rate of 90,000 barrels per calendar month, meeting the specifications set forth in Article 13 below.  SELLER shall (i) maintain terminal facilities in the Houston, Texas area which will be able to load Product in vessel parcels of up to 260,000 barrels and (ii) endeavor to allow BUYER to accumulate Product under this Contract from such terminals to load vessel parcels of up to 260,000 barrels.  However, the quantity delivered in any calendar month shall not exceed 90,000 barrels without the agreement of both parties.  Specific monthly quantities shall be established in accordance with Article 7 below, "Order Notification".

(B) The parties recognize that unexpected difficulties may arise in the production, transportation, storage, or use of Product, and agree that the quantity delivered hereunder may deviate plus or minus on a monthly basis from the ratable quantity specified in Article 1(A).  However, such net deviation, cumulatively from the beginning of the term hereof to the end of any calendar month, shall not exceed one month's contract quantity as specified above in Article 1(A), except for (i) deviations subject to mutual agreement, (ii) deviations subject to Article 10, and (iii) deviations due to SELLER.

(C) If the net cumulative deviation referred to in Article 1(B) above is negative and, at the end of any such calendar month, exceeds the monthly quantity specified in Article 1(A) above, BUYER shall, at SELLER's option, pay SELLER an amount equal to the quantity by which such net cumulative deviation exceeds such monthly quantity multiplied by the difference between the Price provided in Article 3 below and the "Spot Price" defined in Appendix A hereto, using averages of the respective prices calculated for each business day in such calendar month.  If SELLER exercises this option, (i) the outstanding net cumulative quantity shortfall shall be reduced by the quantity subject to such compensatory payment to SELLER, (ii) any shortfall quantity so reduced shall be permanently cancelled from SELLER's obligation to deliver, and (iii) such payment by BUYER shall be SELLER's sole and exclusive remedy for the BUYER's quantity shortfall thus compensated.

(D) All quantity measurements shall be temperature adjusted by use of ASTM Table 6B – "Generalized Products, Correction of Volume to 60°F against API Gravity at 60°F", or the latest revision thereof.  The term "barrel" as used herein shall mean 42 U.S. gallons of 231 cubic inches per gallon.

(E) For deliveries to or from vessels – Quantity and quality determinations shall be made at the time of title transfer to BUYER, and the results thereof certified, by an independent inspector acceptable to both parties, who shall be selected, and engaged by either party, subject to billing by the inspector of

91Aug12                                                                    Page 1

EXHIBIT "C"



## MTBE SALES CONTRACT

This Contract, which is dated and made effective as of September 1, 1991, and is by and between

**ARCO Chemical Company**, a Delaware corporation having a place of business at 3801 West Chester Pike, Newtown Square, Pennsylvania 19073 ("SELLER") and

**Exxon Supply Company**, a Delaware corporation having a place of business at 800 Bell, PO Box 4769, Houston, Texas 77210-4769 ("BUYER"),

**Witnesseth that:** in consideration of the rights conferred and the obligations assumed herein and intending to be legally bound, the parties hereby agree as follows.

### 1. Sale, Product, Quantity, and Quality

(A) SELLER shall sell and deliver to BUYER and BUYER shall purchase and accept from SELLER, and pay for, during the term of this Contract methyl tertiary butyl ether ("Product") at the rate of <u>150,000 barrels per calendar month</u>, meeting the specifications set forth in Article 13 below. The specific quantities delivered in each calendar month shall be established in accordance with Article 6 below, "Order Notification and Delivery", but shall not exceed 250,000 barrels without the agreement of both parties.

(B) The parties recognize that unexpected difficulties may arise in the production, transportation, storage, or use of Product, and agree that the quantity delivered hereunder may deviate plus or minus on a monthly basis from the ratable quantity specified in Article 1(A). However, such net deviation, cumulatively from the beginning of the term hereof to the end of any calendar month, shall not exceed one month's contract quantity as specified in Article 1(A) above, except for (i) deviations subject to mutual agreement, and (ii) deviations subject to Article 10.

(C) If the net cumulative deviation referred to in Article 1(B) above is negative and, at the end of any such calendar month, exceeds the monthly quantity specified in Article 1(A) above, BUYER shall, at SELLER's option, pay SELLER an amount equal to the quantity by which such net cumulative deviation exceeds such monthly quantity multiplied by the difference between the Price provided in Article 3 below and the "Spot Price" defined in Appendix A hereto, using averages of the respective prices calculated for each business day in such calendar month. If SELLER exercises this option, (i) the outstanding net cumulative quantity shortfall shall be reduced by the quantity subject to such compensatory payment to SELLER, (ii) any shortfall quantity so reduced shall be permanently cancelled from SELLER's obligation to deliver, and (iii) such payment by BUYER shall be SELLER's sole and exclusive remedy against BUYER's shortfall thus compensated.

(D) All quantity measurements shall be temperature adjusted by use of ASTM Table 6B - "Generalized Products, Correction of Volume to 60°F against API Gravity at 60°F", or the latest revision thereof. The term "barrel" as used herein shall mean 42 U.S. gallons of 231 cubic inches per gallon.

(E) <u>For deliveries to or from vessels</u> - Quantity and quality determinations shall be made at the time of title transfer to BUYER, and the results thereof certified, by an independent inspector acceptable to both parties, who shall be selected, and engaged by either party, subject to billing by the inspector of one-half to SELLER and one-half to BUYER of such inspector's charges, unless otherwise agreed in writing by the parties. The inspector's determinations as to quantity and quality of Product delivered shall be conclusive and binding on the parties, absent fraud or manifest error. BUYER may attend and witness all transfer operations. All measurements shall meet the guidelines set out in

91Aug21

**EXHIBIT**

WC0662287

## MTBE CONTRACT

This Contract, which is dated and made effective as of January 1, 1990, and is by and between ARCO Chemical Company, a Delaware corporation having a place of business at 3801 West Chester Pike, Newtown Square, Pennsylvania 19073 ("SELLER") and Shell Oil Company, a Delaware corporation having a place of business at One Shell Plaza, P.O. Box 2463, Houston, Texas 77252 ("BUYER"),

WITNESSETH THAT, in consideration of the rights conferred and obligations assumed herein, and intending to be legally bound, the parties hereby agree as follows.

1. SALE, PRODUCT, AND QUALITY

SELLER shall sell and deliver to BUYER and BUYER shall purchase and accept from SELLER, and pay for, during the term of this Contract and in the quantities provided in Article 3 below methyl tertiary butyl ether (MTBE) gasoline blending component (hereinafter referred to as "Product") meeting the specifications set forth in Appendix "A".

2. TERM

The term of this Contract shall be from January 1, 1990, through December 31, 1992, and shall continue thereafter from year to year unless terminated at any time after the third year by either party upon not less than ninety days' prior notice.

EXHIBIT "E4"

## MTBE SALES CONTRACT

This Contract, which is dated and made effective as of September 1, 1991, and is by and between

ARCO Chemical Company, a Delaware corporation having a place of business at 3801 West Chester Pike, Newtown Square, Pennsylvania 19073 ("SELLER") and

Texaco Refining and Marketing Inc., a Delaware corporation having a place of business at 10 Universal City Plaza, Universal City, California 91608 ("BUYER").

Witnesseth that: in consideration of the rights conferred and the obligations assumed herein and intending to be legally bound, the parties hereby agree as follows.

### 1. Sale, Product, Quantity, and Quality

(A) SELLER shall sell and deliver to BUYER and BUYER shall purchase and accept from SELLER, and pay for, during the term of this Contract methyl tertiary butyl ether ("Product") at the rate of 150,000 barrels per calendar month, meeting the specifications set forth in Article 13 below. The specific quantities delivered in each calendar month shall be established in accordance with Article 6 below, "Order Notification and Delivery", but shall not exceed the calendar monthly rate specified above without the agreement of both parties.

(B) The parties recognize that unexpected difficulties may arise in the production, transportation, storage, or use of Product, and agree that the quantity delivered hereunder may deviate plus or minus on a monthly basis from the ratable quantity specified in Article 1(A). However, such net deviation, cumulatively from the beginning of the term hereof to the end of any calendar month, shall not exceed one month's contract quantity as specified in Article 1(A) above, except for (i) deviations subject to mutual agreement, and (ii) deviations subject to Article 10.

(C) If the net cumulative deviation referred to in Article 1(B) above is negative and, at the end of any such calendar month, exceeds the monthly quantity specified in Article 1(A) above, BUYER shall, at SELLER's option, pay SELLER an amount equal to the quantity by which such net cumulative deviation (except any portion thereof caused solely by SELLER) exceeds such monthly quantity multiplied by the difference between the Price provided in Article 3 below and the "Spot Price" defined in Appendix A hereto, using averages of the respective prices calculated for each business day in such calendar month. SELLER shall notify BUYER in writing by the 15th of each month of (i) the total quantity of Product BUYER must purchase in such month to maintain a net cumulative deviation below that specified in Article 1(B) above and (ii) any action SELLER anticipates taking regarding any net cumulative deviation that exceeds the monthly quantity specified in Article 1(A) above. If SELLER exercises this option, (i) the outstanding net cumulative quantity shortfall shall be reduced by the quantity subject to such compensatory payment to SELLER, (ii) any shortfall quantity so reduced shall be permanently cancelled from SELLER's obligation to deliver, and (iii) such payment by BUYER shall be SELLER's sole and exclusive remedy against BUYER for the shortfall thus compensated.

(D) All quantity measurements shall be temperature adjusted by use of ASTM Table 6B – "Generalized Products, Correction of Volume to 60°F against API Gravity at 60°F", or the latest revision thereof. The term "barrel" as used herein shall mean 42 U.S. gallons of 231 cubic inches per gallon.

(E) For deliveries to or from vessels or via pipeline – Quantity and quality determinations shall be made at the time of title transfer to BUYER as specified

EXHIBIT 34

## MTBE SALES CONTRACT

This Contract, which is dated and made effective as of August 1, 1991, and is by and between **ARCO Chemical Company**, a Delaware corporation having a place of business at 3801 West Chester Pike, Newtown Square, Pennsylvania 19073 ("SELLER") and **Union Oil Company of California**, a California corporation having a place of business at 1201 West Fifth Street, Los Angeles, California 90017 ("BUYER"),

**Witnesseth that:** in consideration of the rights conferred and the obligations assumed herein and intending to be legally bound, the parties hereby agree as follows.

### 1. Sale, Product, Quantity, and Quality

(A) SELLER shall sell and deliver to BUYER and BUYER shall purchase and accept from SELLER, and pay for, during the term of this Contract methyl tertiary butyl ether ("Product") at the rate of **120,000 barrels per calendar month**, meeting the specifications set forth in Article 13 below.

(B) The parties recognize that unexpected difficulties may arise in the production, transportation, storage, or use of Product, and agree that the quantity delivered hereunder may deviate on a monthly basis. However, such deviation (other than deviation subject to Article 10 below) shall not cumulatively exceed one month's contract quantity as specified above. Specific monthly quantities shall be established in accordance with Article 7 below, "Order Notification".

(C) If BUYER's purchases of Product during any calendar month in the entire term hereof are less than the quantity provided in Articles 1(A) and 1(B) above BUYER shall, at SELLER's option, pay SELLER, as provided in Article 5, an amount equal to the shortfall quantity times the difference between the Price provided in Article 3 below and the "Spot Price" defined in Appendix A hereto, using averages of the respective prices calculated for each business day in such calendar month.

(D) All quantity measurements shall be temperature adjusted by use of ASTM Table 6B - "Generalized Products, Correction of Volume to 60°F against API Gravity at 60°F". For deliveries to or from vessels, quantity and quality determinations shall be made at the time of title transfer to BUYER, and the results thereof certified, by an independent inspector acceptable to both parties, who shall be selected, engaged, and paid by either party, subject to reimbursement by the other party of one-half of the such inspector's charges, unless otherwise agreed in writing by the parties. The inspector's determinations as to quantity and quality of Product delivered shall be conclusive and binding on the parties, absent fraud or manifest error.

### 2. Term - The initial term of this Contract shall be from April 1, 1992 through March 31, 1997, and shall continue thereafter from contract year to contract year unless and until terminated (i) by either party as of the end of any contract year ending March 31, 1997, or any March 31 thereafter, upon not less than 360 days' prior notice, or (ii) as otherwise provided herein.

### 3. Price

(A) The total quantity of each delivery shall be divided among the following two pricing bases:

   75% **Raw Material Based Price** as set forth in Appendix "A" hereto, and
   25% **Market Based Price** as determined in Article 3(B) below.

EXHIBIT " G "

91Jul26

Page 1

# EXHIBIT 10

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: Methyl *tertiary* Butyl Ether ("MtBE") Products Liability Litigation<br><br>This Document Relates To:<br>*Orange County Water District v. Unocal Corporation, et al.,*<br>Case No. 04 Civ. 4968 (SAS)<br>*County of Suffolk and Suffolk County Water Authority v. Amerada Hess Corp., et al.,*<br>Case No. 04 Civ 5424<br>*City of New York v. Amerada Hess Corp., et al.,*<br>Case No 04 Civ. 3417 | MDL No. 1358 (SAS)<br><br>**DECLARATION OF CHARLES R. LINES IN COMPLIANCE WITH CASE MANAGEMENT ORDER NO. 4, SECTION III.B.2(a) [subsections (i) and (ix), category (1)]**<br><br>The Honorable Shira A. Scheindlin |

## DECLARATION OF CHARLES R. LINES

I, Charles R. Lines, under penalty of perjury, hereby declare as follows:

1.    I am Manager – Policies, Legislation and Regulation for ChevronTexaco Products Company, a subsidiary of Chevron U.S.A. Inc. I submit this declaration on behalf of Chevron U.S.A. Inc. ("Chevron"), pursuant to Case Management Order No. 4. Except as otherwise stated, I have personal knowledge of the facts set forth herein.

2.    Orange County, California is a "direct-served market." This means that Chevron-branded service stations in this geographic area are supplied from Chevron-operated facilities utilizing tanker trucks operated by Chevron or its contractors. Based upon my personal knowledge and discussions with knowledgeable Chevron employees, Orange County has been a direct-served market since 1986. Accordingly, Chevron has not supplied jobbers or other wholesalers with motor fuel for distribution to Chevron-branded facilities within Orange County from 1986 to the present.

3.    I have reviewed a list derived from Chevron databases which contains information regarding service stations operated by Chevron Stations Inc. within the State of

California. Based upon this information, I have determined that Chevron Stations Inc. sells gasoline at the following locations within Orange County:

23022 ALISO CREEK RD., ALISO VIEJO, CA 92656

13501 HARBOR BLVD., GARDEN GROVE, CA 92643

1240 BISON AVE., NEWPORT BEACH, CA 92660

27112 ORTEGA HWY., SAN JUAN CAPISTRANO, CA 92675

2961 E YORBA LINDA BLVD., FULLERTON, CA 92831

5425 ALTON PARKWAY, IRVINE, CA 92604

80 CORPORATE PARK, IRVINE, CA 92606

2740 BRYAN AVE., TUSTIN, CA 92680

8000 E SANTA ANA CANYON RD., ANAHEIM, CA 92802

2844 SANTIAGO BLVD., ORANGE, CA 92867

17241 17TH STREET, TUSTIN, CA 92680

17561 MACARTHUR BLVD., IRVINE, CA 92614

1950 W IMPERIAL HWY., LA HABRA 90631

3921 IRVINE BLVD., IRVINE, CA 92602

1702 NORTH TUSTIN, ORANGE, CA 92865

16221 LAKE FOREST DRIVE, IRVINE, CA 92618

5241 BEACH BLVD., BUENA PARK, CA 90621

3190 HARBOR BLVD., COSTA MESA, CA 92627

3000 FAIRVIEW STREET, COSTA MESA, CA 92627

6972 WARNER AVE., HUNTINGTON BEACH, CA 92647

10020 WARNER AVE., FOUNTAIN VALLEY, CA 92708

26302 OSO PARKWAY, MISSION VIEJO, CA 92691

17980 MAGNOLIA, FOUNTAIN VALLEY, CA 92708

15425 CULVER DRIVE, IRVINE, CA 92604

105 E KATELLA AVE., ORANGE, CA 92867

23631 ROCKFIELD, LAKE FOREST, CA 92630

19751 YORBA LINDA BLVD., YORBA LINDA, CA 92886

18501 BEACH BLVD., HUNTINGTON BEACH, CA 92648

2160 HARBOR, COSTA MESA, CA 92627

18002 CULVER DRIVE, IRVINE, CA 92612

3801 S. BRISTOL, SANTA ANA, CA 92704

18692 MACARTHUR BLVD., IRVINE, CA 92612

1801 S. HARBOR BLVD., ANAHEIM, CA 92802

4.      Chevron does not directly sell or market motor fuel in the State of New

York.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 16 day of December, 2004 at San Ramon, California.

_____
Charles R. Lines

DAVID L. SCHRADER (State Bar No. 149638)
MICHAEL T. ZARRO (State Bar No. 110171)
ALLISON N. SHUE, State Bar No. 193527)
MORGAN, LEWIS & BOCKIUS LLP
300 South Grand Avenue, Twenty-Second Floor
Los Angeles, California 90071-3132
Telephone: 213.612.2500
Facsimile: 213.612.2501

Attorneys for Defendants Chevron U.S.A. Inc.,
Chevron Products Company, a division of
Chevron U.S.A. Inc., ChevronTexaco Corporation
and Chevron Chemical Company

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re: Methyl *tertiary* Butyl Ether ("MtBE") Products Liability Litigation <br><br> This Document Relates To: <br> *Orange County Water District v. Unocal Corporation, et al.,* <br> Case No. 04 Civ. 4968 (SAS) | MDL No. 1358 (SAS) <br><br> **DECLARATION OF KAREN MEANS IN COMPLIANCE WITH CASE MANAGEMENT ORDER NO. 4, SECTION III.B.2(a) [subsections (iv), (viii) and (ix), category (2)]** <br><br> The Honorable Shira A. Scheindlin |

## DECLARATION OF KAREN MEANS

I, Karen Means, under penalty of perjury, hereby declare as follows:

1.      I am Section Head, Operations Coordination for ChevronTexaco Products Company, a division of ChevronTexaco Corporation. I submit this declaration on behalf of Chevron U.S.A. Inc. ("Chevron"), pursuant to Case Management Order No. 4. Except as otherwise stated, I have personal knowledge of the facts set forth herein.

2.      Through my work at Chevron, I am familiar with Chevron's refinery practices at its El Segundo Refinery.

3.      Chevron-branded service stations in the Orange County area are served with motor fuels refined at Chevron's El Segundo Refinery, which is located in Los Angeles County.

4.      Attached hereto as Exhibit A is the Declaration of Kenneth M. Lawlor made on behalf of Chevron U.S.A. Inc. in the case of *Plavan Petroleum, Inc. v. Chevron U.S.A. Inc.* (San Diego Superior Court Case No. 677238). Mr. Lawlor is retired from Chevron. Using Individual Blend Summaries, which he helped to create, Mr. Lawlor determined that he first

# EXHIBIT 11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In Re:  Methyl Tertiary Butyl Ether ("MTBE")          Master File C.A. No.
Products Liability Litigation                                       1:00-1898 (SAS)
                                                                            MDL No. 1358

------------------------------------------------------------X
This Document Relates to:

California-American Water Company v. Atlantic Richfield Co., et al.
City of Fresno, et al. v. Chevron U.S.A., Inc., et al.
City of Riverside v. Atlantic Richfield Co., et al.
City of Roseville v. Atlanta Richfield, et al.
Martin Silver, et al. v. Alon USA Energy, Inc., et al.
Orange County Water District v. Unocal, et al.
People of the State of California, et al. v. Atlantic Richfield Co., et al.
Quincy Community Services District v. Atlantic Richfield Co., et al.

------------------------------------------------------------X

### DEFENDANT EXXON MOBIL CORPORATION'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' PRELIMINARY SET OF INTERROGATORIES REGARDING DEFENDANT IDENTIFICATION

Defendant Exxon Mobil Corporation ("ExxonMobil"), by and through its attorneys,

McDermott Will & Emery, LLP, makes the following Responses and Objections to Plaintiffs

Preliminary Set of Interrogatories Regarding Defendant Identification, dated August 30, 2004,

pursuant to the Federal Rules of Civil Procedure and the Local Rules of the Southern District of

New York.

### PRELIMINARY STATEMENT AND DISCLOSURES

Plaintiffs' counsel has stated and the Court has acknowledged that, at this time, the

purpose of these Interrogatories is to identify additional Defendants.  Furthermore, Plaintiffs'

counsel has made clear their interest in fully complying with Rule 11 by emphasizing the need to

have reliable and accurate information concerning the identity of non-parties whose products

were delivered into geographic areas at issue in the lawsuits.

ordinary course of business, prepare or maintain data in a form that readily permits it to answer this Interrogatory as asked.

RESPONSE:

In addition to the attached "**EXXONMOBIL'S SPECIFIC GEOGRAPHIC RESPONSES,**" ExxonMobil also provides a listing of relevant refinery addresses in Attachment A to these Responses.  The responses in the attached "**EXXONMOBIL'S SPECIFIC GEOGRAPHIC RESPONSES**" are specifically limited to gasoline refined by Exxon, Mobil and ExxonMobil, except where specifically provided for therein.

INTERROGATORY NO. 2 – Please identify the name and address of each entity from which You obtained neat MTBE for use at any Refinery owned or operated by You that supplied gasoline for ultimate delivery into the *identified geographical region*; the date or date ranges when MTBE was acquired from each supplier, and the name and address of Your refinery(ies).

OBJECTION:

ExxonMobil objects to this Interrogatory as seeking information outside the restricted scope of discovery permissible under Rule 33.3 of the Local Civil Rules of this Court. ExxonMobil further objects to this Interrogatory on the grounds that it is vague, ambiguous, overbroad and unduly burdensome.  Further, ExxonMobil objects that the request for "dates or dates ranges" is specifically overbroad, unduly burdensome, and oppressive.  Additionally, ExxonMobil objects to the extent that this Interrogatory calls for ExxonMobil to speculate as to which of its refining entities provides MTBE Product for delivery into the identified geographical region because ExxonMobil does not track the ultimate destination of product manufactured by ExxonMobil.  Lastly, ExxonMobil does not, in the ordinary course of business, prepare or maintain data in a form that readily permits ExxonMobil to answer this Interrogatory as asked.

8

RESPONSE:

ExxonMobil provides a listing of relevant suppliers of neat MTBE in Attachment B to these Responses.

INTERROGATORY NO. 3 – Please identify each Terminal You use or used to supply gasoline for ultimate delivery into the *identified geographical region*; at any time since the date of first MTBE use in the identified geographical region, and the dates or date ranges when You have used such Terminal.  For each Terminal You use or used, please also state whether You owned or operated such Terminal or were a Terminaling Partner at such Terminal.

**OBJECTION:**

ExxonMobil objects to this Interrogatory as seeking information outside the restricted scope of discovery permissible under Rule 33.3 of the Local Civil Rules of this Court. ExxonMobil further objects to this Interrogatory on the grounds that it is vague, ambiguous, overbroad and unduly burdensome.  Further, ExxonMobil objects that the request for "dates or dates ranges" is specifically overbroad, unduly burdensome, and oppressive.  Lastly, ExxonMobil does not, in the ordinary course of business, prepare or maintain data in a form that readily permits ExxonMobil to answer this Interrogatory as asked.

RESPONSE:

ExxonMobil provides a listing of relevant terminal addresses in Attachment C to these Responses.

ExxonMobil is unaware of the identity of suppliers of neat MTBE blended into gasoline refined by others and/or identity of the refiners of gasoline containing MTBE obtained from others.

C.   Orange County *(Orange County Water District v. Unocal, et al.)*

With respect to Exxon, ExxonMobil is unaware of any Exxon proprietary terminal that would have routinely supplied Exxon locations in Orange County with gasoline or with gasoline containing MTBE. Exxon locations in Orange County may have been supplied gasoline or gasoline containing MTBE via exchange agreement(s) with GATX and Shell at their terminals in Carson.

With respect to Mobil, Mobil would have routinely supplied Orange County with gasoline or with gasoline containing MTBE from its terminals at Atwood and Vernon, California. Mobil's Vernon and Atwood terminals were supplied from Mobil's Torrance refinery via pipeline. On occasion, Mobil would receive at its Atwood and Vernon terminals, sometimes via the Shell Carson terminal, gasoline containing MTBE on exchange or purchased from ARCO, Ultramar Diamond Shamrock, Equilon, C&N, Inc., Shell, Texaco, Mieco Inc., Equiva, Tower Energy Resources, Tosco, Ultramar, Shell, Chevron and TR Trading. Additionally, on occasion, Mobil received gasoline containing MTBE from Hess at its terminal in the Los Angeles Harbor for distribution to Mobil's Vernon and Atwood terminals.

With respect to ExxonMobil, ExxonMobil would have routinely supplied Orange County with gasoline or with gasoline containing MTBE from Mobil's terminals at Atwood and Vernon, California. Mobil's Vernon and Atwood terminals were supplied from Mobil's Torrance refinery via pipeline. On occasion, ExxonMobil would receive at its Atwood and Vernon terminals, sometimes via the Shell Carson terminal, gasoline containing MTBE on exchange or purchased from BP West Coast, Equiva, Ultramar Diamond Shamrock, Valero, Tower Energy Resources, ARCO, Mieco, Inc. and Shell. Additionally, on occasion, ExxonMobil received gasoline containing MTBE from Amerada Hess and Vitol S.A., Inc., at its terminal in the Los Angeles Harbor for distribution to Mobil's Vernon and Atwood terminals.

Accordingly, ExxonMobil refers Plaintiffs to Attachment B for a listing of suppliers that may have provided neat MTBE to the above identified Exxon, Mobil and ExxonMobil refineries. ExxonMobil is unaware of the identity of suppliers of neat MTBE blended into gasoline refined by others and/or identity of the refiners of gasoline containing MTBE obtained from others.

D.   Placer County *(City of Roseville v. Atlantic Richfield, et al.)*

With respect to Exxon, ExxonMobil is unaware of any Exxon proprietary terminal that would have routinely supplied Exxon locations in Placer County with gasoline or with gasoline containing MTBE. Exxon locations in Placer County may have been supplied gasoline or gasoline containing MTBE from the now current Kinder Morgan terminal in Sacramento.

Attachment A

| Property Refinery Addresses |
|---|
| Torrance Refinery<br>3700 West 190th Street<br>Torrance, California |
| Benicia Refinery<br>3400 East Second Street<br>Benicia, California |

Attachment B

| MTBE Suppliers to CanadaRefinery | Years |
|---|---|
| ARCO Chemical | 1994, 1995, 1996, 1998, 1999 |
| Neste Canada | 1994, 1995, 1996, 1997 |
| SABIC Marketing Americas | 1994, 1995, 1996, 1997, 1998, 1999, 2001, 2002, 2003 |
| Enron Clean Fuels Co. | 1997, 1998, 1999, 2001, 2002, 2003 |
| EcoFuel, S.P.A. | 1995 |

| MTBE Suppliers to Exxon's California | Years |
|---|---|
| ARCO Products Company | 1995 |
| Chevron Products Company | 1996 - 1998 |
| Coastal Chemical, Inc. | 1994, 1997 - 1998 |
| EcoFuel, S.P.A. | 1996-1999 |
| Enron Clean Fuels Company | 1999 |
| Lyondell Chemical Worldwide, Inc. | 1989, 1990-1994, 1996, 1998 |
| Noble Americas Corp. | 1998 |
| Neste Canada, Inc. | 1994 - 1999 |
| SABIC Americas, Inc. | 1994 - 1999 |
| Shell Oil Company | 1997 |
| Trammochem | 1996 |
| Vitol S.A., Inc. | 1999 |

Attachment C

| Property/Terminal Address |
|---|
| Atwood Terminal<br>1477 Jefferson Street<br>Anaheim, California |
| Mission Valley Terminal<br>9950 San Diego Mission Road<br>San Diego, California |
| Vernon Terminal<br>2709 East 37th Street<br>Vernon, California |
| Torrance Refinery Rack<br>3700 West 190th Street<br>Torrance, California |
| Benicia Terminal<br>3410 East Second Street<br>Benicia, California |

14015v1

EXHIBIT 12



22391242

Nov 7 2008
7:24PM

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

---

This Document Relates To:

*Orange County Water District v. Unocal Corp.,
et al.* 04 Civ. 4968 (SAS)

---

**MDL No 1358 (SAS)**

**DEFENDANT EXXON MOBIL
CORPORATION'S RESPONSES TO
PLAINTIFF ORANGE COUNTY
WATER DISTRICT'S THIRD SET OF
INTERROGATORIES TO
DEFENDANTS**

Defendant Exxon Mobil Corporation ("ExxonMobil"), by and through counsel and

pursuant to the Federal Rules of Civil Procedure and the Local Rules of the Southern District of

New York, hereby responds to Plaintiff's Third Set of Interrogatories to Defendants

("Interrogatories") as follows:

### PRELIMINARY STATEMENT

The following response and objections state ExxonMobil's knowledge, information and

belief as of the date of such response and objections. Further investigation, discovery and

analysis may uncover additional information, add meaning to known facts and/or support new

factual conclusions and legal contentions, all of which may lead to changes in ExxonMobil's

responses herein. Such investigation and discovery are continuing, and ExxonMobil specifically

reserves the right to supplement this response and the right to rely at trial on subsequently

discovered information inadvertently omitted from this response as a result of mistake, error or

oversight.

**INTERROGATORY NO. 8:**

IDENTIFY each terminal at which YOU have or had a position which served the RELEVANT GEOGRAPHIC AREA since 1979.

a.     State the dates of during which YOU maintained a position for each terminal YOU identified.

**RESPONSE TO INTERROGATORY NO. 8:**

In addition to its General Objections, which are incorporated herein as if set forth in full, ExxonMobil objects to this interrogatory on the ground that it is overbroad with respect to time, as the Court's CMO No. 4 limits discovery to 1986, and MTBE was phased out of gasoline sold in California no later than December 31, 2003. ExxonMobil objects to these discovery requests to the extent they seek information relating to events that occurred prior to the initial manufacture, sale, or distribution by ExxonMobil of gasoline containing MTBE on the grounds that those discovery requests are overbroad, unduly burdensome and oppressive, and on further grounds that they seek information not relevant to the subject matter of this case and not reasonably calculated to lead to the discovery of admissible evidence. ExxonMobil also objects on the grounds that this interrogatory generally seeks information not relevant to the subject matter of this case and not reasonably calculated to lead to the discovery of admissible evidence.

ExxonMobil further objects to the defined terms "RELEVANT GEOGRAPHICAL AREA," "IDENTIFY" and "YOU" on the grounds that they deviate from or purport to impose requirements other than or in addition to those required by Local Civil Rule 26.3, and therefore, this interrogatory is vague and ambiguous, burdensome, overbroad, and seeks information not relevant to the allegations asserted in Plaintiff's complaint.

ExxonMobil also objects to this interrogatory on the grounds that the undefined term "position" is vague, ambiguous and unintelligible, in that it fails to describe with specificity or reasonably particularize the information requested, and is thus overbroad, unduly burdensome and oppressive, and not reasonably calculated to lead to the discovery of admissible evidence.

-16-

Subject to and without waiving the foregoing objections, ExxonMobil responds the chart below identifies the respective years for each terminal used by the pre-merger Exxon to supply gasoline and/or gasoline containing MTBE to stations in Orange County.

| Year | Source Name |
|------|-------------|
| 1987 | COLTON CA TERM |
| 1987 | 7-571 CARSON TERM CA |
| 1987 | BENICIA CA TERM |
| 1987 | WATSON  1840CHM706CA |
|      |                |
| 1988 | COLTON CA TERM |
| 1988 | 7-571 CARSON TERM CA |
|      |                |
| 1989 | 7-571 CARSON TERM CA |
| 1989 | SAN JOSE TERMINAL CA |
| 1989 | SO PACIFIC PL FRESNO |
| 1989 | WATSON  6415ULT700CA |
|      |                |
| 1990 | SGNL HIL5460SHL714CA |
| 1990 | VERNON  4220MBL579CA |
| 1990 | LONG BEACH  T/A  CA |
| 1990 | 7-571 CARSON TERM CA |
| 1990 | WATSON  6415ULT700CA |
|      |                |
| 1991 | GATX-CARSON CA |
| 1991 | LONG BEACH  T/A  CA |
| 1991 | 7-571 CARSON TERM CA |
| 1991 | WATSON  6415ULT714CA |
|      |                |
| 1992 | SIGNAL H5460SHL714CA |
| 1992 | SIGNAL H5460SHL762CA |
| 1992 | GATX-CARSON CA |
| 1992 | LONG BEACH  T/A  CA |
| 1992 | 7-571 CARSON TERM CA |
| 1992 | WATSON  6415ULT714CA |
|      |                |
| 1993 | SIGNAL H5460SHL762CA |

-17-

EXHIBIT 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE: METHYL TERTIARY BUTYL
ETHER ("MTBE") PRODUCTS LIABILITY
LITIGATION

This document relates to:

*Orange County Water District v. Atlantic
Richfield Co., et al.*

Master File C.A.
No. 00 Civ. 1898

MDL No. 1358 (SAS)

---

## DECLARATION OF DAVID A. SEXTON

David A. Sexton, under penalty of perjury, declares as follows:

1.     I am Vice President of Strategy and Portfolio of Equilon Enterprises LLC, doing business as Shell Oil Products US ("Equilon"). I make this declaration on behalf of Equilon pursuant to Case Management Order No. 4 in this litigation. Equilon was formed as a Delaware limited liability company in January 1998 and combined the so-called "downstream assets" of Shell and Texaco in a number of states, including the State of California.

2.     This declaration contains information relating to those assets as they pertain to the "Relevant Geographic Area" of the Orange County Water District case, which is defined under Case Management Order No. 4 as the Orange County Water District's service area. In compiling the information contained in this declaration, I have relied upon persons within Equilon who are knowledgeable regarding the subject areas addressed.

## CMO § III.B.2(a)(i)

**Defendants in each focus case will identify jobbers supplied by them that provide gasoline containing MTBE to the Orange County Water District service area.**

Marketing Inc., now known as TMR Company ("New TRMI").  In 1998, the Bakersfield
Refinery was transferred to Equilon Enterprises LLC.

### 2.    Los Angeles, California

Equilon operates a refinery in Los Angeles, California, that refined gasoline that was sent
to service stations in the Orange County Water District service area.  During the relevant time
frame, that refinery was owned by Texaco Refining and Marketing Inc., which upon information
and belief is now known as TRMI Holdings, Inc. ("Old TRMI") (1986-89).  From 1989 through
1998, the Los Angeles Refinery was owned by Texaco Refining and Marketing Inc., now known
as TMR Company ("New TRMI").  In 1998, the Bakersfield Refinery was transferred to Equilon
Enterprises LLC.

### 3.    Wilmington, California

Shell operated a refinery in Wilmington, California that refined gasoline that was sent to
service stations in the Orange County Water District service area.  That refinery was sold to
Unocal in 1991.

Upon information and belief, the person most qualified to testify on this topic is Armand
Abay.


### CMO § III.B.2(a)(v)

**Each refiner will disclose the date it first blended MTBE and/or TBA into gasoline
for deliveries to terminals that supplied the Orange County Water District service
area.**

The Bakersfield Refinery first blended MTBE into gasoline in October 1992.  Some of
that gasoline may have been delivered to terminals that supplied the Orange County Water
District service area.  The Los Angeles Refinery first blended MTBE into gasoline on August 11,

4

# EXHIBIT 14



38680803

Jul 13 2011
6:41PM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re: Methyl *tertiary* Butyl Ether ("MtBE")
Products Liability Litigation

This Document Relates To:

*Orange County Water District v. Unocal
Corporation, et al.,*
Case No. 04 Civ. 4968 (SAS)

Master File No. 1:00-1898
MDL No. 1358 (SAS)

DECLARATION OF
GRACE N. CHAN

Grace N. Chan hereby declares and states as follows:

1.      I am the Assistant Secretary for Union Oil Company of California ("Union Oil").

2.      No one person for Union Oil knows all of the matters stated herein, and therefore this Declaration was prepared with the assistance and advice of representatives of, and counsel for, Union Oil upon whose assistance and advice I have relied. This Declaration is limited by the records and information still in existence, presently recollected and thus far discovered.

3.      As a result of the 1997 divesture to Tosco and the passage of time, Union Oil no longer has access to certain information and documents. For example, Union Oil has very few records pertaining to the following service stations that were acquired by Tosco Corporation in 1997: Unocal station #5226 and Unocal station #5792. Upon information and belief, certain records pertaining to these sites may be in the possession of Tosco or its successors. Union Oil's records pertaining to Unocal station #5399, Unocal station #5376, and Unocal station #5123 are similarly limited, as Union Oil closed these service stations in the early 1990's.

4.      Union Oil maintains a legacy database that contains certain limited electronic records of gasoline deliveries to retail gasoline stations. True and correct copies of relevant entries from this database can be found at CHEVMDL135800000706763 – 706813 and CHEVMDL135800000707183 – 707204, which have been produced in this case. Additionally,

Union Oil is producing with this Declaration additional entries from this database (CHEVMDL135800000710101 – 710222) that relate to the two stations identified below.

5.      Representatives for the company have reviewed Union Oil's electronic records and determined that in addition to the stations previously identified in Hongyan Xun's September 8, 2010 Declaration, Union Oil also delivered gasoline to the stations at 10035 Ellis Avenue, Fountain Valley and 1501 West MacArthur Blvd., Santa Anna.

6.      The dates and amounts of Union Oil's deliveries to the station at 10035 Ellis Avenue, Fountain Valley are set forth in the spreadsheet that can be found at CHEVMDL135800000710165 – 710222, which is being produced with this Declaration. Those records indicate that Union Oil delivered some gasoline containing MTBE to this station from 1986 to August 1994. Union Oil's delivery records prior to March 1992 do not indicate which gasoline contained MTBE and which did not. In general, however, Union Oil first began blending MTBE in certain premium gasoline at its Los Angeles Refinery in the spring of 1986. Prior to that time it did not deliver gasoline containing MTBE to this station. After 1992, deliveries of MTBE gasoline are indicated on the spreadsheets referenced above by the designation "w/MTBE". In addition, Union Oil has also identified the following Union Oil product codes as reflecting deliveries of gasoline containing MTBE to the extent they relate to gasoline produced after 1992: 002310000000, 004670000000, 004680000000, 004730000000, 004740000000, 004830000000, 004840000000, 009720000000, 009730000000, and 009740000000. For sales after 1992, to the extent these product codes are reflected in the sales data indicated in the spreadsheet referenced above, they represent deliveries of gasoline containing MTBE.

True and correct copies of certain lease and related agreements concerning the station at 10035 Ellis Avenue, Fountain Valley can be found at CHEVMDL1358 00000709373 -- 709377, 709357 -- 709372, 709340 -- 709343, 709379 -- 709388, 709605 -- 709623, and 709588 - 709604, which are being produced with this Declaration.

7.     The dates and amounts of Union Oil's deliveries to the station at 1501 West MacArthur Blvd., Santa Anna are set forth in the spreadsheet that can be found at CHEVMDL1358 00000710101 - 710164, which are being produced with this Declaration. Those records indicate that Union Oil delivered some gasoline containing MTBE to this station from 1986 to August 1994. Union Oil's delivery records prior to March 1992 do not indicate which gasoline contained MTBE and which did not. In general, however, Union Oil first began blending MTBE in certain premium gasoline at its Los Angeles Refinery in the spring of 1986. Prior to that time it did not deliver gasoline containing MTBE to this station. After 1992, deliveries of MTBE gasoline are indicated on the spreadsheets referenced above by the designation "w/MTBE". In addition, Union Oil has also identified the following Union Oil product codes as reflecting deliveries of gasoline containing MTBE to the extent they relate to gasoline produced after 1992: 002310000000, 004670000000, 004680000000, 004730000000, 004740000000, 004830000000, 004840000000, 009720000000, 009730000000, and 009740000000. For sales after 1992, to the extent these product codes are reflected in the sales data indicated in the spreadsheet referenced above, they represent deliveries of gasoline containing MTBE.

True and correct copies of certain lease and related agreements concerning the station at 1501 West MacArthur Blvd., Santa Anna can be found at CHEVMDL1358 00000709448 --

# EXHIBIT 15

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: *Methyl Tertiary Butyl Ether ("MTBE")* *Products Liability Litigation* )<br>)<br>)<br>)<br>) | MDL NO. 1358<br>C.A. No. 1:00-1898 (SAS) |
| This Document Relates To: )<br>) | |
| *County of Suffolk and Suffolk County* *Water Authority v. Amerada Hess* *Corp*; )<br>)<br>) | **DECLARATION OF UNOCAL** |
| *City of New York v. Amerada Hess* *Corp.*; and )<br>)<br>)<br>) | **CORPORATION and UNION OIL** **COMPANY OF CALIFORNIA IN** **COMPLIANCE WITH CASE** **MANAGEMENT ORDER NO. 4** |
| *Orange County Water District v.* *Unocal Corp.* )<br>)<br>) | |

I, Morgan Clark, an authorized representative of Defendants Union Oil Company of California ("Union Oil") and Unocal Corporation ("Unocal"), make the following declaration under penalty of perjury.

1.      I am employed by Union Oil as General Manager of Commercial Affairs, and I am familiar with the operations of Union Oil and Unocal.

2.      I am authorized to declare the information set forth herein for and on behalf of Union Oil and Unocal. To the extent any of these facts are not within my personal knowledge, I am informed by authorized agents of Union Oil and Unocal that the facts stated herein are true.

3.      The facts contained herein relate to the categories of information Union Oil and Unocal are required to provide under the Case Management Order No. 4, dated October 19, 2004. These facts are based upon all non-privileged information, including documents, within the possession, custody or control of Union Oil and Unocal and retrievable through reasonable effort.

1

20.     Unocal did not supply any jobbers with gasoline containing MTBE in the Relevant Geographic Area of the *Orange County Water District* case.

21.     Union Oil supplied gasoline that may have contained MTBE in the Relevant Geographic Area for the *Orange County Water District* case (1986 to present) to the following jobber: Southern Counties Oil Co., P.O. Box 4159, Orange, CA 92613. Union Oil has not supplied any jobbers with gasoline that may have contained MTBE in the Relevant Geographic Area for the *Orange County Water District* case since March 31, 1997.

22.     Databases and categories of documents used to gather information for this subtopic of the declaration include archived records, including sales files, accounts payable files, customer files and general ledger files.

23.     The person most knowledgeable regarding this subtopic is Rosemary Fallabeck, Accounting Advisor/Discontinued Operations, Comptroller Department.

**III.    How and Where Neat MTBE and/or TBA is or Was Manufactured by Union Oil and Unocal**

24.     Neither Union Oil nor Unocal manufactured MTBE or TBA during the relevant time periods of any of the focus cases addressed by this declaration.

25.     No databases or documents were used to gather the information set forth in paragraph 24 of this declaration.

26.     The person most knowledgeable regarding this subtopic is Morgan Clark, General Manager, Commercial Affairs.

**IV.    Union Oil and Unocal's History of Ownership (1986 to Present), Including Changes in Corporate Structure, of each Refinery They Own or Have Owned that Serves or Served the Relevant Geographical Area.**

27.     Neither Union Oil nor Unocal owns or has owned any refineries that served the Relevant Geographical Areas for the *Suffolk County* case (from 1979 to present) or the *City of New York* case (from 1979 to present).

5

28.     Unocal has never owned any refinery during the time period from 1986 to present that served the Relevant Geographical Area for the *Orange County Water District* case.

29.     Union Oil owned the former Union Oil Los Angeles Refinery, located at 1660 West Anaheim Street, Wilmington, CA 90744, which, in part, served the Relevant Geographic Area in the *Orange County Water District* case, from before 1986 until March 31, 1997, when it was sold to Tosco Corporation.

30.     Documents used to gather information for this subtopic of the declaration include publicly available information regarding the sale of the former Union Oil Los Angeles Refinery, chain of title documents, and the Sale and Purchase Agreement for 76 Products Company Between Union Oil Company of California and Tosco Corporation, dated December 14, 1996.

31.     The person most knowledgeable regarding this subtopic is Brian Kelly, Manager, Investment Properties/Real Estate & Remediation Services..

## V.     The Date Union Oil or Unocal First Blended MTBE and/or TBA Into Gasoline for Deliveries to Terminals that Supplied the Relevant Geographic Area

32.     Neither Union Oil nor Unocal ever blended MTBE or TBA into gasoline for deliveries to terminals that supplied the Relevant Geographic Areas for the *Suffolk County* case (from 1979 to present) or the *City of New York* case (from 1979 to present).

33.     Unocal never blended MTBE or TBA into gasoline for deliveries to terminals that supplied the Relevant Geographic Areas in the *Orange County Water District* case.

34.     Based on available records, Union Oil is unable to provide a precise date on which it first blended MTBE into gasoline for delivery to a terminal that may have supplied the Relevant Geographic Area in the *Orange County Water District* case. Based on available records, Union Oil believes it first blended MTBE into gasoline at its former Los Angeles Refinery in the spring of 1986. It is not known whether gasoline containing MTBE, even if it was blended at Union Oil's former Los Angeles Refinery beginning in approximately the spring

# EXHIBIT 16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In Re:  Methyl Tertiary Butyl Ether ("MTBE")          MDL 1358 (SAS)
Products Liability Litigation

This document relates to:

Orange County Water District v. Unocal, et al.
-------------------------------------------------------------X

### DEFENDANT EXXON MOBIL CORPORATION'S DECLARATION
### ON BEHALF OF THE FORMER MOBIL CORPORATION
### IN RESPONSE TO CASE MANAGEMENT ORDER NO. 4

In compliance with this Court's October 19, 2004 Case Management Order No. 4

(CMO#4), Exxon Mobil Corporation ("ExxonMobil") submits this declaration in

response to Subsection III(B)(2) of that Order pertaining to discovery of the former

Mobil Corporation's ("Mobil") production, use and distribution of gasoline containing

MTBE/TBA as it relates to Orange County.

Preliminarily, ExxonMobil notes that no one employee of ExxonMobil today can

provide complete responses to each and every request made in Subsection III(B)(2).

Moreover, given the time period of ExxonMobil's supply of gasoline to the geographic

region in question, individuals knowledgeable about this region have, over time,

transferred, relocated or retired.  Additionally, refineries and terminals are often sold or

eliminated from logistical documents, thus making it difficult to determine earlier supply

routes.  Nonetheless, ExxonMobil responds below by providing the combined declaration

of multiple employees, each knowledgeable about various aspects of the information

requested by Plaintiffs.  Responsive information is provided herein to correspond to the

format and presentation of the issues as they exist in CMO#4.

**Subsection III(B)(2)(iv) – Each refiner to provide a history of ownership from 1986, including changes in corporate structure of each refinery it owns or has owned that serve Orange County**

Torrance, California Refinery:

As of 1986, Mobil Oil Corporation, a wholly-owned subsidiary of Mobil Corporation, owned the Torrance Refinery.  Following the 1999 merger of the Exxon and Mobil organizations, Mobil Oil Corporation changed its name to ExxonMobil Oil Corporation, but remained (and remains) a wholly-owned subsidiary of Mobil Corporation, which is wholly-owned by Exxon Mobil Corporation.  The Torrance Refinery is now directly owned by ExxonMobil Oil Corporation.  Although this response is not based upon the personal knowledge of Barbara A. Patocka, she understands this response to be true, and has no reason to believe that this information is inaccurate.

Beaumont, Texas Refinery:

As of 1986, Mobil Oil Corporation, a wholly-owned subsidiary of Mobil Corporation, owned the Beaumont refinery.  Following the 1999 merger that created Exxon Mobil Corporation, Mobil Oil Corporation changed its name to ExxonMobil Oil Corporation, but remained (and remains) a wholly-owned subsidiary of Mobil Corporation, which is wholly-owned by Exxon Mobil Corporation.  The Beaumont refinery is now directly owned by ExxonMobil Oil Corporation.  Although this response is not based upon the personal knowledge of Barbara A. Patocka, she understands this response to be true, and has no reason to believe that this information is inaccurate.

**Subsection III(B)(2)(v) – Each refiner shall disclose the date it first blended MTBE and/or TBA into gasoline for deliveries to terminals that supplied Orange County**

Mobil blended MTBE into gasoline at its Torrance, California Refinery for deliveries to terminals that supplied Orange County for compliance with the oxygenated fuels requirements in November 1992.  Mobil did not use MTBE as a blending component at its Torrance refinery in California prior to this requirement.  This response is based upon the personal knowledge of Raymond McGraw as well as a review of information out of Mobil's Manufacturing Historic Database.

Mobil did not use TBA as a blending component in gasoline that was refined at the Torrance refinery.  This response is based upon the personal knowledge of Raymond McGraw.

**Subsection III(B)(2)(vi) - The name, content and location of records that record the batch number for batches of gasoline delivered from defendants' refineries to terminals**

From 1994 through the merger that created Exxon Mobil Corporation ("ExxonMobil"), Mobil used a program named PACE-CTR which contained information