USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/30/14

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------- X

IN RE: METHYL TERTIARY BUTYL
ETHER ("MTBE") PRODUCTS
LIABILITY LITIGATION

--------------------------------------------------

**This document relates to:**

*City of New York, et al. v. Amerada Hess*
*Corporation, et al.,* 04 Civ. 3417

-------------------------------------------------- X

**MEMORANDUM OPINION**
**AND ORDER**

**Master File No. 1:00-1898**
**MDL 1358 (SAS)**
**M21-88**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

     This is a consolidated multi-district litigation ("MDL") relating to

contamination — actual or threatened — of groundwater from various defendants'

use of the gasoline additive methyl tertiary butyl ether ("MTBE") and/or tertiary

butyl alcohol, a product formed by the breakdown of MTBE in water. In this case,

the City of New York, the New York City Water Board, and the New York City

Municipal Water Finance Authority (collectively, "the City") alleged that

Defendants' use and handling of MTBE has contaminated, or threatened to

contaminate groundwater at service stations, refineries, and terminals throughout

New York City. Familiarity with the facts of this case is presumed for the

purposes of this Order.

ExxonMobil Corporation, ExxonMobil Oil Corporation and Mobil Corporation (collectively, "Exxon") bring this motion asking the Court to establish a court-supervised trust for the funds that Exxon must pay to satisfy the $104.69 million judgment[1] rendered in favor of the City after an eleven week jury trial. The City objects on the grounds that Exxon's motion (1) is untimely; (2) violates the parties' tolling agreement; and (3) is unsupported by case law. The City also contends that Exxon lacks standing to request a trust. For the following reasons, Exxon's motion is DENIED.

## I.   BACKGROUND

On August 3, 2009, the City commenced a jury trial against Exxon on the claims alleged in their Fourth Amended Complaint ("FAC").[2] Those claims relate to past and future MTBE detections in five public water supply wells, located in Queens, New York, and owned and operated by the City.[3] During the trial, the City told the jury that it would build a water treatment facility within the

---

[1]     This amount does not include pre-judgment or post-judgment interest.

[2]     *See* 3/22/10 Tolling Agreement and Covenant Not to Sue between the City and Exxon ("Tolling Agreement"), Exhibit ("Ex.") A to the Declaration of Theodore E. Tsekerides, counsel for Exxon, ("Tsekerides Decl."), at 1.

[3]     *See id.*

next fifteen years to remove MTBE from groundwater in Queens.[4]

On October 19, 2009, the jury found Exxon liable on the City's claims of public nuisance, negligence, trespass, and product liability for failure to warn.[5] However, the jury found Exxon not liable on the City's claims of private nuisance and product liability for design defect.[6] The jury then awarded the City $104,690,000 in damages.[7] On September 17, 2010, the parties filed an Amended Judgment, stating:

> ORDERED, ADJUDGED AND DECREED: that [the City] recover from [Exxon] . . . for product liability (failure to warn or insufficient warning), trespass, public nuisance, and negligence . . . in the amount of $104,690,000; plus prejudgment interest . . . plus post-judgment interest . . . .[8]

---

[4]    *See, e.g*, 10/2/09 the City's Closing Argument, Ex. E to the Tsekerides Decl., at 6553:21-25 ("We are asking you to award the City the full [] costs of a [] facility capable of removing MTBE . . . [t]he cost[] of that . . . is $250.45 million."). Moreover, during Phase I of the trial, the "District Court's interrogatories to the jury instructed that, to recover on any theory, the City had to 'prove [ ], by a fair preponderance of the credible evidence, that it intends, in good faith, to begin construction of the Station 6 facility within the next fifteen (15) years' . . . ." *In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*, 725 F.3d 65, 83 (2d Cir. 2013) ("*MTBE II*") (quoting Phase I Interrogatory Sheet). However, the FAC does not state that the City sued in its *parens patriae* capacity or as trustee for its residents.

[5]    *See MTBE II*, 725 F.3d at 79.

[6]    *See id.*

[7]    *See id.*

[8]    9/17/10 Amended Judgment, Doc. No. 631.

The parties also entered a Tolling Agreement that required Exxon to "pay the judgment in full, including applicable accrued pre- and post-judgment interest, if any, within 60 days of the conclusion of all appeals."[9]

On October 13, 2010, Exxon filed its notice of appeal.[10]  On July 26, 2013, the Second Circuit affirmed the judgment.[11]  Exxon then filed a petition for certiorari with the Supreme Court.  On April 21, 2014, the Supreme Court denied the petition.[12]  On May 16, Exxon filed its motion to establish a court-supervised trust, which would ensure that the City uses the funds to construct and maintain the water treatment facility.[13]  Because Exxon requests a reversionary interest in the trust, which would return any funds not used for that purpose to Exxon.[14]  On June 20, 2014, in accordance with the Amended Judgment and Tolling Agreement,

---

[9]     Tolling Agreement at 4-5.

[10]    *See* 10/13/10 Notice of Appeal, Doc. No. 632.

[11]    *See MTBE II*, 725 F.3d at 130.

[12]    *See Exxon Mobil Corp. v. City of New York, N.Y.*, 134 S. Ct. 1877 (2014).

[13]    *See* Memorandum of Law in Support of Exxon's Motion to Establish a Court-Supervised Trust ("Exxon Mem.") at 5.

[14]    *See id.*

-4-

Exxon paid the judgment in full.[15]

## II.   DISCUSSION

At the outset, Exxon argues that it has "genuine concerns that the City will divert the judgment amount for [] purposes" other than the construction of a water treatment facility.[16]  Despite its purported "concerns," Exxon lacks standing to request a reversionary trust.  To have standing, a party must "demonstrate an imminent, concrete and particularized injury."[17]  "[T]he 'injury in fact' test requires . . . that the party seeking review be [it]self among the injured."[18]  Exxon has already paid the judgment amount to the City.[19]  Because Exxon will never be able to obtain the return of its money regardless of how the City spends the funds,

---

[15]    *See* 7/1/14 Email from Susan E. Amron ("Amron Email"), counsel for the City, to the Court.

[16]    Exxon Mem. at 2.  The City contends that Exxon's motion is untimely under Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure.  *See* The City's Memorandum of Law in Opposition to Exxon's Motion to Establish a Court-Supervised Trust ("City Opp.") at 3.  However, Rule 59(e) applies only to "motion[s] to alter or amend a judgment," and Rule 60(b) allows the court to "relieve a party . . . from a final judgment."  Exxon's motion for a trust is not an attempt to amend the judgment.  On the contrary, Exxon fully complied with the Amended Judgment and the Tolling Agreement when it paid the judgment plus all interest on June 20, 2014.  *See* Amron Email.

[17]    *Lee v. Board of Governors of the Fed. Reserve Sys.*, 118 F.3d 905, 912 (2d Cir. 1997).

[18]    *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563 (1992).

[19]    *See* Amron Email.

Exxon cannot show how *it* would be injured.[20]  A simple analogy may be helpful.

A plaintiff in a personal injury case may call an expert to testify that the plaintiff's

injuries require surgery, totaling ten thousand dollars.  If the jury awards the

plaintiff ten thousand dollars but the plaintiff declines the surgery or dies before

undergoing the surgery, the defendant is not entitled to a refund from the plaintiff

or the plaintiff's estate.  The defendant is still liable for the injury it caused.  Thus,

Exxon lacks standing to request a reversionary trust.[21]

Even if Exxon had standing, a trust would be inappropriate in this

case because the remedy for a "traditional tort law cause of action [is] lump-sum

damages."[22]  Exxon asks the Court to depart from this general rule, but provides no

basis for doing so.

---

[20]     Courts have established reversionary trusts only in special
circumstances, such as awards to injured minors whose parents brought claims on
their behalf under the Federal Tort Claims Act. *See Hull v. United States*, 971 F.2d
1499, 1505 (10th Cir. 1992) (imposing a trust with "reverter conditions to ensure
that the damage recovery is in the best interest of the victim"); *Cibula v. United
States*, 664 F.3d 428, 435 (4th Cir. 2012) (finding that "the district court [has] the
authority to fashion a reversionary trust that would allow [the victim's parents]
flexibility in paying for [the victim's] future care").

[21]     If, however, the residents of Queens later learn that the City has
broken its promise by using the funds for some purpose other than building a water
treatment facility, they may have standing to sue the City.

[22]     *Metro-North Commuter R.R. Co. v. Buckley*, 521 U.S. 424, 440
(1997).

*First*, Exxon argues that court-supervised trusts are "often required" in the environmental remediation context because "an unrestricted award of money damages does not restore or replace contaminated natural resources."[23] However, the cases cited by Exxon all involve trustee plaintiffs. In *New Mexico v. General Electric Co.*, the court noted that the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") provides that "[s]ums recovered by a State *as trustee* . . . shall be available for use only to restore, replace, or acquire the equivalent of such natural resources by the State."[24] Next, in *Puerto Rico v. SS Zoe Colocotroni*, the Commonwealth sued under CERCLA to recover natural resource damages after an oil spill contaminated the Commonwealth's beaches and mangrove forests.[25] The district court awarded natural resource damages based on the replacement value of over ninety-two million "destroyed organisms."[26] The First Circuit acknowledged that CERCLA, like the Clean Water Act, provides that

---

[23]     Exxon Mem. at 9-10 (citing *New Mexico v. General Elec. Co.*, 467 F.3d 1223, 1247 (10th Cir. 2006); *Puerto Rico v. SS Zoe Colocotroni*, 628 F.2d 652, 676 (1st Cir. 1980); *New Hampshire v. Hess Corp.*, No. 03-C-0550 (N.H. Super. Ct. Sept. 9, 2013) ("*New Hampshire*"), Ex. F to the Tsekerides Decl.).

[24]     *New Mexico*, 467 F.3d at 1234 (citing 42 U.S.C. § 9607(f)(1)) (emphasis added).

[25]     *See Puerto Rico*, 628 F.2d at 656-657.

[26]     *Id.* at 677.

"the [Commonwealth], acting as public trustee, could 'recover for the costs of replacing or restoring (natural) resources.'"[27]  However, the First Circuit vacated the award because the Commonwealth had no intention of purchasing such "organisms" to restore the area, which was now contaminated with oil.[28]  Both cases are inapplicable because the City's claims are based on New York common law, not a federal statute.  Moreover, while CERCLA and the Clean Water Act limit how a state may spend its damages award, neither mandates the imposition of a court-supervised trust.[29]

Second, Exxon relies on several medical monitoring cases, where courts imposed trusts to cover future costs.[30]  These cases are inapposite.  Courts that have established medical monitoring trusts have done so in the "absence of

---

[27]     Id. at 675 (quoting 33 U.S.C. § 1321(f)(5)).

[28]     Id. at 677.

[29]     Exxon also cites New Hampshire v. Hess Corp., where the court imposed a court-supervised trust to administer the state's damages award. However, in that case, the state sued in its "parens patriae/trustee capacity." New Hampshire at 2.  Here, the City sued on its own behalf, not as a trustee for its customers.  See MTBE II, 725 F.3d at 81 (stating that the City supplies water to "customers within City limits, and . . . in upstate New York").  Accord In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig., 739 F. Supp. 2d 576, 603 n.172 (S.D.N.Y. 2010) ("MTBE I") ("[U]nder New York law, the City 'may recover for interference with use of [its] property provided that it actually intends, in good faith, to make such use of the property.'") (internal citations omitted).

[30]     See Exxon Mem. at 11-14.

physical injury."[31]  In this case, the City has suffered an actual injury.[32]  As the Second Circuit held, "[t]he City's suit was ripe because the City demonstrated a present injury."[33]  Exxon has failed to prove that this Court should establish a trust for the City's lump-sum damages award, which Exxon has already paid.

## III.  CONCLUSION

For the foregoing reasons, Exxon's motion is DENIED.  The Clerk of the Court is directed to close this motion (Doc. No. 697).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            July 30, 2014

---

[31]      See Metro-North, 521 U.S. at 440.  See also Exxon Mobil Corp. v. Albright, 433 Md. 303, 385 (2013) ("[E]vidence of physical injury is not required to support costs for medical surveillance."); Burns v. Jaquays Min. Corp., 156 Ariz. 375, 380 (Ct. App. 1987) (establishing a "a fund to administer medical-surveillance payments" in "the absence of physical manifestation of any [] disease[].").

[32]      MTBE I, 739 F. Supp. 2d at 605 n.187 ("[B]ecause the MTBE is already in the groundwater, the City has suffered an injury even though it has not yet turned on the Station 6 wells.").

[33]      MTBE II, 725 F.3d at 130.

## -Appearances-

**Liaison Counsel for Plaintiffs:**

Robin Greenwald, Esq.
Robert Gordon, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
(212) 558-5500

**Counsel for Plaintiff City of New York:**

Zachary W. Carter
Corporation Counsel of the City of New York
Susan E. Amron
Elizabeth Harris
Assistant Corporation Counsel
100 Church Street, Room 6-146
New York, NY 10007

Victor M. Sher, Esq.
Sher Leff LLP
450 Mission Street, Suite 400
San Francisco, CA 94105

Robert Chapman, Esq.
Eisner Jaffe Gorry Chapman & Ross, P.C.
9601 Wilshire Blvd., Suite 700
Beverly Hills, CA 90210

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
McDermott Will & Emery LLP
340 Madison Avenue
New York, NY  10173

(212) 547-5583

**Counsel for Exxon Mobil Corporation:**

James W. Quinn, Esq.
David J. Lender, Esq.
Theodore E. Tsekerides, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10151
(212) 310-8000