IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN OF NEW YORK

| | |
|---|---|
| **In re:  Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation** | Master File No. 1:00-1898<br>MDL No. 1358 (SAS) |

### DECLARATION OF DAROL E. DODD, Ph.D, DABT

I, Darol E. Dodd, Ph.D, DABT, state and declare as follows:

1. My name is Darol E. Dodd, Ph.D, DABT. I am a competent adult over 18 years of age and have personal knowledge of the facts set forth in this Declaration.

2. I am the Senior Research Toxicologist at The Hamner Institutes, located in Research Triangle Park, North Carolina (the "**Hamner**"). I am also the Manager of Research Support Services at the Hamner. I received a doctorate in Pharmacology and Toxicology from the University of Kansas. I am a Diplomate of the American Board of Toxicology. I also serve or have previously served on several scientific journal editorial boards and government-funded grant review committees.

3. I served as the study director for the Hamner's two-year drinking water carcinogenicity study of methyl tertiary-butyl ether in Wistar rats (the "**MTBE Study**").

4. On or about December 23, 2010, the Hamner completed its final report on the MTBE Study, consisting of over 1,800 pages (including appendices) (the "**MTBE Study Report**"). The Hamner did not provide the MTBE Study Report to the EPA. It is my understanding that the Report was provided to the EPA by one or more of the Study's sponsors.

5. The MTBE Study was in compliance with the "Good Laboratory Practice" (or "**GLP**") standards of the United States Environmental Protection Agency ("**EPA**").

6. Since the MTBE Study was "GLP-compliant," the Hamner maintained, and

currently maintains, the records and all data for the Study in accordance with EPA standards (the "**Hamner Study Records**"). The Hamner Study Records in hard-copy format were, and are currently, maintained in approximately twenty (20) boxes at the Hamner and are comprised of approximately 30,000 pages (this is in addition to the numerous animal wet tissue boxes and boxes containing tissue slides). These records include, but are not limited to, analytical chemistry records, necropsy/histology/pathology records, animal clinical observations, animal feed/bedding records, animal room checklists, animal receipts, animal body weights, environmental records and environmental monitoring data, cage and rack rotations, room water quality reports, animal serology, and necropsy checklists. Additionally, the electronic Hamner Study Records were maintained in the Provantis electronic database ("**Electronic Data**"), the software data collection program used by the Hamner in conducting the MTBE Study. The Hamner Study Records have been, and are now, preserved under EPA standards.

7. In 2010, in response to a subpoena, the Hamner produced to Plaintiffs the raw data used to prepare the MTBE Study Report (the "**Critical Raw Data**").

8. Now that the MTBE Study Report has been released, the Hamner no longer considers the Hamner Study Records (which include the Electronic Data) and the Critical Raw Data to be confidential. The Critical Raw Data and most of the information contained in the Hamner Study Records are summarized in the MTBE Study Report.

9. The Hamner Study Records and the Critical Raw Data include all of the data collected by the Hamner during the MTBE Study, and all data relied upon in the compilation and publication of MTBE Study Report, as well as other study records used by the Hamner to conduct the MTBE Study. The extensive MTBE Study Report, along with the Hamner Study Records and the Critical Raw Data, would enable a toxicology researcher in the field, including

the toxicologists at the EPA, to fully evaluate the MTBE Study, including assessing the interpretation of, and conclusions drawn from, the data collected during the Study. The MTBE Study Report (including its appendices), as well as the Hamner Study Records and the Critical Raw Data, set out the Study's conclusions and interpretations, and all the data upon which such conclusions and interpretations were based.

10. In 2012, I was served with a deposition subpoena in the above-referenced matter. The subpoena also directed me to produce various categories of documents. Ultimately, I produced over 21,000 pages pursuant to that subpoena (the "**Dodd Production**"). Unlike the Hamner Study Records and the Critical Raw Data, the Dodd Production is replete with information that has been, and is currently, maintained by me and the Hamner as confidential. Such documents include preliminary, unreleased drafts of the MTBE Study Report; preliminary, unreleased drafts of potential or prospective journal articles; internal and confidential work product; and internal and confidential deliberations among the scientists during the conduct of the Study, including their internal reviews, critiques, and self-evaluative processes, all of which are fundamental to the robust exchange of ideas in the scientific process. As a research scientist and Diplomate of the American Board of Toxicology, I am very concerned that permitting the release of researchers' internal deliberations and internal reviews and critiques, without confidentiality protection, would have a damaging effect on the candid exchange of views, critiques, and opinions of the scientific panel conducting the study.

11. During my deposition in 2012, some of the exhibits used in that deposition were documents from the Dodd Production stamped as "HAMNER-CONFIDENTIAL" and, thus, were subject to the Protective Order. Both during and after the deposition, these exhibits continued to bear the "HAMNER-CONFIDENTIAL" stamp. It is my understanding that these

3

exhibits are subject to the Protective Order in this case (because they were stamped as "HAMNER-CONFIDENTIAL"), and it was certainly my intention for these documents to remain subject to the Protective Order.

12. The EPA has not requested any information or documentation from the Hamner, or me personally, related to the MTBE Study. Similarly, neither the Hamner nor I have been informed of any such request by the EPA to anyone else.

13. The MTBE Study is GLP-compliant in accordance with EPA standards. I understand that if the EPA wants or needs information from the Hamner related to the Study, there are procedures in place under federal regulations for the EPA to seek such information.

14. In their *Motion to Enforce Waiver and Declassification Provisions of Protective Orders*, Plaintiffs reference the deposition of Dr. Stine. Neither myself, nor anyone from the Hamner, was present at Dr. Stine's deposition. Dr. Stine is not an employee of the Hamner.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 4th day of August, 2014.

_____
DAROL E. DODD, PH.D.

4