# Exhibit B

E5drmtbc

1  set by your Honor for motions for summary judgment -- which
2  isn't set yet, there is no date on the calendar -- may drive
3  our ability to work with them. I am interested in talking with
4  Mr. Axline if he thinks we may get to a solution with your
5  involvement. We are not before you on motions for summary
6  judgment until the 10th of June, so there is time to talk with
7  them.
8      THE COURT: Good. I'll see you then on that.
9      Then there was an issue about Tauber Oil's expert
10 report. Tauber Oil is no longer in the case, so I assume that
11 is moot.
12     Then I was told the parties would update me on
13 settlement in the New Jersey case. You just sort of did.
14 There was no update other than what you gave or there is?
15     MR. KAUFMANN: No, there is not, your Honor.
16     THE COURT: The last item has to do with the
17 protective order. Sorry, there are two more items. One of the
18 last items has to do with lifting the protective order for the
19 Hamner Institute and the Experimental Pathology Laboratories,
20 Inc. records. I guess the question is why? What is the need
21 for the protective order to be listed?
22     The plaintiffs agreed that the materials would be
23 pursuant to a protective order. The Hamner order in particular
24 had a nontermination provision that said, "The provisions of
25 this order shall not terminate at the conclusion of this

```
                                                              37
     E5drmtbc
```

1  particular action," which was Crescenta Valley, "and shall
2  remain in place until 30 days after the conclusion of all
3  aspects of the last MDL 1358 lawsuit," which I don't really
4  expect to live to see. But be that as it may, that's a long
5  way off.
6           Why should I lift this? You agreed it would last
7  until the last MDL lawsuit is concluded.
8           MR. AXLINE: Your Honor, the results of the discovery
9  that followed from those protective orders included information
10 that we believe regulatory agencies will be interested in and
11 that are important to public health. We would like the
12 opportunity to brief to you the notion that that protective
13 order should now be lifted.
14          The real gravamen of the order was the Hamner report
15 had not come out.
16          THE COURT: I remember that, yes.
17          MR. AXLINE: They came in and said it's not final yet.
18 That was the main thing that you observed. We got together and
19 worked out some additional terms, and those went into what was
20 submitted.
21          THE COURT: I remember that. You did agree that it
22 would remain in place until the end of the MDL. Can you
23 backtrack on your agreement, much as Mr. Quinn tried to
24 backtrack?
25          MR. AXLINE: I think there are compelling reasons to

```
                                                             38
     E5drmtbc
```

1  do so involving public health at the time we entered into that
2  agreement. As I said, the real driving force behind this is we
3  believe there is some information that regulatory agencies
4  should have that relate to public health. That is the impetus
5  for it.
6        THE COURT: Is this something that the Hamner
7  Institute should be litigating or the defendants?
8        MR. AXLINE: We began by meeting and conferring with
9  EPL, the laboratory that analyzed the results and the Hamner
10 Institute. EPL has now been released from its confidentiality
11 agreement. The Hamner Institute, my understanding is, although
12 we don't have this in writing yet, has no objection to lifting
13 it.
14       THE COURT: Which is the interested party now, the
15 Hamner Institute or the defense lawyers here representing the
16 defendants? Why is it their issue as opposed to the Hamner
17 Institute? If there is a public health argument, I don't know
18 why the defendants would be fighting this battle. The Hamner
19 Institute should appear and fight.
20       MR. AXLINE: That is a very interesting question, your
21 Honor.
22       THE COURT: It is. Mr. Pardo, what is it to you, so
23 to speak?
24       MR. PARDO: First, let me say I think you're right, it
25 is an issue for the Hamner. They are not here. EPL is not

E5drmtbc

1   here.  I'm not even aware if they were told about this
2   conference.
3          THE COURT:  Not only were they told, they apparently
4   have said they have been released from their confidentiality
5   agreement with the Hamner so they don't really have a dog in
6   the fight and they take no position on releasing it.  It's all
7   Hamner.  Go ahead.
8          MR. PARDO:  I will take Mr. Axline at his word on
9   that.  I don't know that.
10         THE COURT:  Me neither.  I'm taking his word just like
11  you are.  Go ahead.
12         MR. PARDO:  I think from the defense standpoint, and
13  I'm a little bit hamstrung here because I'm not sure what he is
14  talking about when he talks about the public health concerns --
15         THE COURT:  Use your imagination.
16         MR. PARDO:  I really don't know.  I have an
17  imagination.
18         THE COURT:  There must be something in the report that
19  says a concentration of this amount of stuff in water isn't
20  good for humans.  That's what my imagination tells me.  Go
21  ahead.
22         MR. PARDO:  The report and most of the underlying data
23  has been turned over to the United States Environmental
24  Protection Agency already.
25         THE COURT:  To the United States what?

E5drmtbc
40

| | |
|---|---|
| 1 | MR. PARDO: To the USEPA. They have it. That was the |
| 2 | whole point of issuing the report. |
| 3 | THE COURT: I kind of wondered about that. If it is |
| 4 | already with the EPA, that's the regulatory agency, who doesn't |
| 5 | have it? |
| 6 | MR. AXLINE: They do not have all the material that |
| 7 | was produced in discovery, your Honor. They have some of it. |
| 8 | THE COURT: EPA doesn't have it according Axline, does |
| 9 | have it according to Pardo. There is a way to get at that |
| 10 | fact. That's a fact. |
| 11 | MR. PARDO: I'm not sure we are saying something |
| 12 | completely different. |
| 13 | THE COURT: The report they may have. They don't have |
| 14 | the underlying raw data. They don't have everything. |
| 15 | MR. PARDO: OK, the data and everything. We |
| 16 | produced -- when I say "we," Hamner -- produced well over |
| 17 | a million pages of data, documents, reports. Pretty much |
| 18 | everything was made available to Mr. Axline's office and the |
| 19 | plaintiffs. |
| 20 | THE COURT: That may be. How about to the EPA? |
| 21 | MR. PARDO: I don't know that all of that would have |
| 22 | been shared with the EPA. |
| 23 | THE COURT: That's right. That's what he is saying is |
| 24 | the public health issue, everything that plaintiffs have should |
| 25 | be released to the regulatory agencies. |

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1            MR. PARDO:  I think before we go lifting a protective
2    order that your Honor put in place --
3            THE COURT:  I wasn't about to lift.  Why this your
4    issue, not the institute's?
5            MR. PARDO:  We have a right to know what he is talking
6    about.
7            THE COURT:  The million pages?  Everything you gave,
8    the pages?
9            MR. PARDO:  That is not specific enough, your Honor.
10           THE COURT:  It's not?  You gave it.  Not you.  The
11   Hamner Institute released all million pages.  Mr. Axline argues
12   all million pages go to the EPA.  That's specific.  Everything
13   the plaintiffs got they say should be in the hands of the
14   regulatory agencies at this point.  The work is no longer in
15   progress.  It's not a report that hasn't been released.
16           MR. PARDO:  But it is information that was designated
17   as confidential pursuant to this order.
18           THE COURT:  I understand that.  There are changed
19   circumstances, one of which, as you said, is the report is in
20   the hands of the EPA but not the underlying data.
21           MR. PARDO:  I'm not aware the EPA has made a request
22   for this data.  They have the data.  They have had the report
23   for several years.
24           THE COURT:  That is turning the argument around.  That
25   is saying why is the plaintiff representing the EPA.  I'm

E5drmtbc

1  saying why is the defendant representing the Hamner Institute.
2  What we really need is the EPA and the Hamner Institute and let
3  them duke it out, and both of you get out of this argument.
4       MR. PARDO:  Exactly.  I'm not sure what his interest
5  here is.
6       THE COURT:  I agree.  But the flip side of the
7  question, I'm not sure what yours is, either.  What are you
8  protecting?  It's not your issue, either.  It's Hamner versus
9  the EPA apparently.  Let the EPA put in an affidavit.
10      MR. AXLINE:  I can tell you what our interest is, your
11 Honor.  An affidavit from EPA might not be a bad idea.  But
12 they are shooting in the dark.  They don't know what they don't
13 know.  We know what they don't know.
14      THE COURT:  That's true, because you have all million
15 pages.
16      MR. AXLINE:  We don't think they are going to be
17 interested in a million pages, your Honor.  I appreciate the
18 breadth of what you are saying.  It would be much more targeted
19 than that.
20      THE COURT:  Then Mr. Pardo says identify it, if it is
21 much more targeted, identify what you think they need and let
22 them do an affidavit.  Even though I understand they don't know
23 what they don't know, they would say we have a public health
24 interest, we want to know the data that supports the report, it
25 has been shared with us that there is data that would be of

```
E5drmtbc
```

1  interest, so we want it. Whatever they can say in general
2  terms at least inserts them into the argument.
3         By the same token, defendants should tell me why it is
4  their issue to brief in response at all as opposed to Hamner.
5  At one time we had lawyers for Hamner on the phone or in
6  person. I remember that.
7         MR. PARDO: There still are.
8         THE COURT: They aren't here, though. There is nobody
9  here representing Hamner today. Mr. Wallace.
10        MR. WALLACE: My client Shell was one of the sponsors
11 of the agreement. We don't have any interest in this. We
12 would prefer to see you decide the plaintiffs' motion.
13        THE COURT: Who is opposing it? If you have no
14 interest, who is writing the other brief?
15        MR. WALLACE: With Hamner responding.
16        THE COURT: I agree.
17        MR. WALLACE: As I recall it, they raised some concern
18 about --
19        THE COURT: I am happy to have Hamner respond. Does
20 any defendant present wish to respond also? Shell apparently
21 doesn't. Does any defendant wish to respond?
22        MR. PARDO: To the motion they are going to bring?
23        THE COURT: To the motion to lift this protective
24 order to allow the Hamner data to be made available to the
25 regulatory agencies.

```
                                                              44
     E5drmtbc
```

1     MR. PARDO: My client was also one of the --

2     THE COURT: I know. That wasn't my question. Do you
3  wish to oppose the motion?

4     MR. PARDO: I don't know until I see it.

5     THE COURT: Mr. Wallace does. It's been described to
6  you. It is to lift the protective order and allow the data to
7  be turned over to the regulatory agencies. You should know
8  whether you wish to oppose that or not. Mr. Wallace says he
9  doesn't wish to oppose it. Hamner will, I assume.

10    MR. PARDO: I believe we will oppose that, your Honor.

11    THE COURT: There you go.

12    MR. WALLACE: My only concern, your Honor, is that the
13 plaintiffs go to EPA and get them involved in a court
14 proceeding over some secretive material regarding a study that
15 my client sponsored that is being withheld contrary to public
16 interest. I'm not sure you need EPA weighing in on what they
17 don't know.

18    THE COURT: Mr. Pardo suggests that I do, and I
19 thought so, too. He is saying I don't really see what the
20 plaintiffs' interest is, why isn't the EPA asking for this. I
21 said that's interesting, we really should have the EPA
22 litigating with Hamner. Then Mr. Axline correctly said, I'm
23 the only one who knows what is in the material, EPA doesn't
24 know what it doesn't have.

25    I think it could make general statements of its

E5drmtbc 45

1 regulatory purpose and why it has a need for fuller
2 understanding, etc., without knowing what the data is. Go
3 ahead and make this motion. I can't stop this one and it is of
4 interest.
5          Notice it to the Hamner Institute as well as
6 defendants. If they do not choose to oppose it, then I will
7 note that in the decision, that they have offered no
8 opposition. That will weigh heavily in my thinking, I assure
9 you, if they choose not to oppose it.
10          You can make the motion, Mr. Axline. Be sure that
11 they get notice of it as well as all the liaison, Mr. Pardo,
12 and that it gets circuited, and we will see who opposes.
13          MR. WALLACE: I only hope that Mr. Axline does not go
14 to the agency and say I got it directly from a federal judge in
15 New York, Judge Scheindlin.
16          THE COURT: Why don't you worry about your part of
17 this, not Mr. Axline's part, not the EPA's part, not the Hamner
18 Institute. Worry about Shell. That's enough to worry about.
19 You stay with that. You told me you weren't opposing it. I
20 don't think you have more to add.
21          The last item on the agenda is the OCWD station
22 matrix. The defendants report that the parties are drafting a
23 CMO reflecting a workable station matrix and this new matrix is
24 going to narrow the number of defendants at each station. I
25 was told the parties will update me on this at the conference.

          SOUTHERN DISTRICT REPORTERS, P.C.
                  (212) 805-0300