# Exhibit F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

IN RE METHYL TERTIARY BUTYL
ETHER ("MTBE") PRODUCTS
LIABILITY LITIGATION

**OPINION AND ORDER**

00 Civ. 1898 (SAS)

------------------------------------------------------------ X

This Document Relates to:

------------------------------------------------------------ X

CRESCENTA VALLEY WATER
DISTRICT,

    Plaintiff,

- against -

EXXON MOBIL CORPORATION, *et al.*,

    Defendants.

07 Civ. 9453 (SAS)

------------------------------------------------------------ X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

**I. INTRODUCTION**

    In this consolidated multi-district litigation ("MDL"), plaintiffs seek relief from contamination, or threatened contamination, of groundwater from various defendants' use of the gasoline additive methyl tertiary butyl ether ("MTBE") and/or tertiary butyl alcohol, which is a product formed by the natural

-1-

degradation of MTBE in water. In 2007, Plaintiff Crescenta Valley Water District ("CVWD") filed an action in California – subsequently transferred to this Court as related to the MDL – alleging that defendants' conduct has caused MTBE to contaminate an aquifer from which CVWD obtains water to meet the domestic water needs of the residents of La Crescenta, California. In preparation for trial, CVWD recently issued a third-party subpoena in the Middle District of North Carolina to The Hamner Institute for Health Sciences ("Hamner Institute" or "Institute") seeking production of documents relating to an MTBE study being conducted by the Institute. CVWD also issued a subpoena in the Eastern District of North Carolina seeking to depose Darol E. Dodd, a Hamner Institute employee, about the study. The Hamner Institute and Dodd filed motions to quash these subpoenas in the respective federal district courts in North Carolina. However, these motions have been referred to this Court pursuant to Section 1407 of Title 28 of the United States Code – which allows a judge to whom an MDL has been assigned to exercise the powers of a district judge in any district for pretrial purposes.[1] Finally, CVWD has also requested by letter to this Court that I compel

---

[1] *See* 28 U.S.C. § 1407(b) ("The judge to whom such [MDL] actions are assigned . . . may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions in such coordinated or consolidated pretrial proceedings."); *In re Subpoeana Issued to Boies, Schiller & Flexner LLP*, No. M8-85, 2003 WL 1831426, at *1 (S.D.N.Y. Apr. 3, 2003) ("I am persuaded

two related defendants in this action – Exxon Mobil Corporation and Mobil Oil Corporation (together, "ExxonMobil") – to produce the study documents.

## II. BACKGROUND

The Hamner Institute is a research institution located in Research Triangle Park, North Carolina. Although the Hamner Institute was founded by several chemical companies in 1974 as the Chemical Institute Industry Institute of Toxicology, it asserts that today it is a non-profit, independent institution with a mission "to improve public health through better predictive assessments of chemical and drug safety."[2] CVWD disputes this characterization – suggesting instead that "the Institute's purpose is to protect the marketing of chemicals, in the face of [an] increasing number of reports about the threats of chemical pollution."[3]

---

that § 1407 gives Chief Judge Barbadoro [of the District of New Hampshire] the authority to hear this motion [to quash] by 'exercis[ing] the powers' of a judge of the Southern District of New York. Such a referral furthers the goal of judicial economy, one of the underlying purposes of § 1407, as Chief Judge Barbadoro is already familiar with this complex litigation, which has consolidated cases from districts throughout the country, including this one.").

[2] Declaration of Darol E. Dodd ("Dodd Decl."), Director of the Division of Toxicology and Preclinical Services at the Hamner Insitute, ¶ 3.

[3] CVWD's Memorandum in Opposition to the Hamner Institute's Motion to Quash ("CVWD Opp. Mem.") at 7. According to its web page, the Hamner Institute was formed in response to a concern that "[a]larming reports about chemical pollution were threatening to overshadow the enormous benefits of chemicals to society." Web Pages from the Hamner Institute, Ex. 1 to Declaration

While this Court cannot determine the exact nature of the relationship between the Institute and the chemical industry, the undisputed evidence reveals that several gasoline companies, including ExxonMobil, began funding a series of Institute studies in 2005 to evaluate the carcinogenic potential of MTBE in drinking water.[4] The last of these studies – the one at issue here – is a 2-year bioassay to determine the carcinogenic effects of MTBE in rats.[5] Following the 104-week period, the study animals were sacrificed and the raw data is now being analyzed.[6] The Hamner Institute currently expects that the final report of the study will be complete by December 31, 2010.[7] The study sponsors intend to provide this report to the Environmental Protection Agency.[8]

On January 15, 2010, Special Master Kenneth Warner ordered ExxonMobil to produce any documents from the Hamner Institute study

---

of Michael Axline ("Axline Decl."), counsel for CVWD, at 1. The founding board of directors included James F. Mathis of Exxon Chemical Company and Paul F. Deisler, Jr., of Shell Chemical Company. *See id.* at 3.

[4]   *See* Dodd Decl. ¶ 4; 7/16/10 Letter to the Court from Jeffery J. Parker ("ExxonMobil Opp. Letter"), Counsel for ExxonMobil.

[5]   *See* Dodd Decl. ¶ 5.

[6]   *See id.* ¶ 7.

[7]   *See id.* ¶ 8.

[8]   *See id.*

-4-

containing the term "cancer," "carcinogen" or any similar terms.[9] Pursuant to this order, ExxonMobil provided responsive documents. However, according to CVWD, "[r]ecords of communications between ExxonMobil and the Institute . . . abruptly stop in the 94th week of the 104-week study."[10] ExxonMobil asserts that it does not have any further status update reports from the Hamner Institute, and thus, it has provided all responsive documents.[11]

Nevertheless, as stated, CVWD requests that this Court compel ExxonMobil to produce the remaining study documents. In addition, CVWD has issued a subpoena to the Hamner Institute in the Middle District of North Carolina seeking production of the study documents[12] and a subpoena in the Eastern District of North Carolina seeking to depose Dodd. The Hamner Institute and Dodd have filed motions to quash these subpoenas, or in the alternative, seek blanket protective orders prohibiting any discovery of information from the study until the Institute has issued its final report. These motions have now been

---

[9] *See* Pre-Trial Order #54.

[10] 7/12/10 Letter to the Court from Michael Axline, Counsel for CVWD.

[11] *See* ExxonMobil Opp. Letter.

[12] CVWD has also issued identical subpoenas to two Hamner Institute employees – Dodd and Ed Bermudez.

referred to this Court.

### III.  APPLICABLE LAW

The Federal Rules of Civil Procedure permit parties in a civil action to obtain relevant, non-privileged matter from both parties and non-parties.[13] Rule 34 directs that "[a] party may serve on any other party a request" seeking production of "items in the responding party's possession, custody, or control." If the responding party refuses to produce the requested items, the requesting party may file a motion to compel discovery pursuant to Rule 37. Rule 45 outlines the procedures by which a party may issue a subpoena seeking discovery from a non-party.

The Federal Rules, however, also provide protection for parties and non-parties from whom discovery is sought. Rule 45(c)(3)(i) permits a court to quash or modify a subpoena if it requires the disclosure of "a trade secret or other confidential research, development, or commercial information." Similarly, Rule 26(c) authorizes federal courts to issue protective orders "requiring that a trade secret or other confidential research, development, or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." In analyzing motions to quash and motions for a protective

---

[13]  *See* Fed. R. Civ. P. 26(b).

order,[14] "courts weigh the need of the party seeking the discovery against any undue hardships created by permitting it."[15] "Ultimately, if the court finds that undue hardships outweigh necessity, it may quash the subpoena altogether or enforce it on limited terms or with other conditions."[16]

## III. DISCUSSION

### A. Hamner Institute

CVWD asserts that it has not yet received much of the information – including pathological reports on the sacrificed animals – needed to analyze the results of the Hamner Institute study.[17] The Hamner Institute's motion to quash

---

[14] The Advisory Notes to Rule 45 instruct courts that Rule 45(c)(3) and Rule 26(c) should be read in conjunction with one another. *See* 1991 Advisory Committee Note to Rule 45 ("Paragraph (c)(3) explicitly authorizes the quashing of a subpoena as a means of protecting a witness from misuse of the subpoena power. It replaces and enlarges on the former subdivision (b) of this rule and tracks the provisions of Rule 26(c). While largely repetitious, this rule is addressed to the witness who may read it on the subpoena, where it is required to be printed by the revised paragraph (a)(1) of this rule.").

[15] *In re Fosomax Prods. Liab. Litig.*, No. 06 Civ. 1789, 2009 WL 2395899, at *2 (S.D.N.Y. Aug. 4, 2009) (citing *In re Initial Pub. Offering Secs. Litig.*, 220 F.R.D. 30, 36 (S.D.N.Y.2003); *Apex Oil Co. v. DiMauro*, 110 F.R.D. 490, 496 (S.D.N.Y.1985)).

[16] *Id.* (citing Fed. R. Civ. P. 26(c); *American High-Income Trust v. AlliedSignal Inc.*, No. 02 Civ. 2506, 2006 WL 3545432, at *2 (S.D.N.Y. Dec. 8, 2006)).

[17] *See* CVWD Opp. Mem. at 3.

and its motion for a protective order rely on a single inquiry: does the hardship of producing the study documents outweigh CVWD's need for this information?

### 1. CVWD's Need

The Hamner Institute study is highly relevant to issues that will undoubtedly be raised during the remainder of this litigation. Throughout the MTBE MDL, plaintiffs and defendants have disputed the potential dangers of MTBE in general, and more specifically, the levels of exposure at which MTBE is dangerous. Many of the plaintiffs are government agencies charged with protecting groundwater used to supply the public with drinking water and may be required to prove at trial whether a reasonable government agency in their position would take actions to reduce the concentration of MTBE in that groundwater.

However, the Hamner Institute (at least with respect to its requested protective order) is not seeking to prevent CVWD from gaining access to this information forever. Instead, the Institute has indicated that it is willing to provide documents relating to the study when that study is completed[18] – which, according to the Hamner Institute, will occur within the next four months. The real question,

---

[18] See Memorandum of Law in Support of the Hamner Institute's Motion to Quash ("Hamner Institute Mem.") at 6 ("Alternatively, the Court should enter a blanket protective order under Rule 26(c) prohibiting any discovery of information from the Study until the final report is issued.").

therefore, is whether CVWD needs to receive this information immediately.

CVWD has not provided detailed information demonstrating why it requires this information now rather than in four months time. It has, however, pointed out that fact discovery in this case closed in July and that expert discovery closes in December.[19] Potentially dispositive motions are likely to be made during the next several months and the case will then be returned to the transferor court. As such, there is little doubt that CVWD will benefit form having documents relating to this study sooner rather than later.

### 2. Undue Burden

The Hamner Institute, in arguing that requiring it to produce documents relating to the study will create an undue burden, does not focus on its own hardship. Instead, it argues that requiring the Institute to disclose documents relating to the study will have damaging social effects.[20] It is not uncommon for courts to quash subpoenas seeking discovery from research institutions out of a concern "that permitting discovery in these situations 'inevitably tend[s] to check

---

[19]   See Case Management Order #56 (fact discovery completed on June 30, 2010 and expert discovery completed on November 12, 2010); 5/26/10 Order (granting a 30-day extension to all remaining discovery deadlines in Case Management Order #56).

[20]   See Hamner Institute Mem. at 3-5; Reply Memorandum in Support of the Hamner Institute's Motion to Quash at 1-7.

the ardor and fearlessness of scholars, qualities at once fragile and so indispensible for fruitful academic labor.'"[21] Indeed, this concern is at its peak when a party seeks, as CVWD does here, the *internal communications or work product*[22] of the research body – as revealing these discussions may discourage researchers from freely expressing positions that, although controversial, need to be tested.[23]

This case presents some special circumstances, however. The study at issue was commissioned by a company that has been heavily involved as a defendant in a MDL focusing on the chemical product being tested. ExxonMobil has already turned over a series of internal ExxonMobil communications as well as communications between the Hamner Institute and ExxonMobil. While these communications do not conclusively demonstrate, as CVWD suggests, that

---

[21]   *In re Fosamax Prods. Liab. Litig.*, 2009 WL 2395899, at *4 (quoting *Sweezy v. New Hampshire*, 354 U.S. 234, 262 (1957)). *Accord Dow Chem. Co. v. Allen*, 672 F.2d 1262, 1276 (7th Cir. 1982).

[22]   In this context, "work product" simply refers to more formalized internal communications – *e.g.*, a *preliminary* report analyzing raw data.

[23]   *See Plough Inc. v. National Acad. of Scis.*, 530 A.2d 1152, 1157 (D.C. App. Ct. 1987) ("Even limited disclosure of the preliminary conclusions, hypotheses, thoughts and ideas ventured by Committee members prior to their being tested and criticized would not only embarass [sic] those members, it would discourage members of NAS committees in the future from expressing themselves freely during their deliberations, and might cause some potential volunteers to refrain from participating in NAS studies altogether.")).

ExxonMobil is "influencing (at a minimum) the direction that the study is to take," they do establish that ExxonMobil is actively involved in the study.[24]

### 3. Conclusion

While it is necessary to ensure that the values of academic freedom are protected, the Hamner Institute, by virtue of its connection to ExxonMobil, is not entitled to the same level of protection ordinarily accorded to non-party research institutions. The Institute commenced its MTBE study with the knowledge that ExxonMobil was a defendant in this MDL and that the study was likely to play a role in this litigation. It cannot therefore claim that it was unaware that its results would be scrutinized by the plaintiffs who are now seeking information relating to the study.

Accordingly, rather than quashing CVWD's subpoena, I will modify it as follows:[25] The Hamner Institute is required to produce any raw data from its MTBE study, the final report of the study when completed, and any

---

[24] *See* Emails Produced by ExxonMobil, Ex. 14 to Axline Decl.

[25] For the same reasons, the subpoenas issued to Dodd and Bermudez shall be modified consistent with the modifications to the Hamner Institute subpoena.

communications between ExxonMobil and the Institute relating to the study.[26] The Institute has indicated that it is willing to provide this raw data when the study is completed but there is no compelling reason that CVWD should have to wait four months to receive the raw data. Moreover, because it was aware of ExxonMobil's role in this MDL when it agreed to conduct the study, it is not unduly burdensome to require the Institute to turn over its communications with ExxonMobil. In contrast, requiring the Hamner Institute to turn over its *internal* communications or work product would risk impeding the freedom of thought that is essential to scientific progress. Thus, the Hamner Institute is not required to produce either its internal communications or any internal work product relating to the study. To the extent that documents contain both work product and raw data, the Institute must produce the documents, but may redact the internal communications and work product.

### B. Dodd

In his motion to quash, Dodd makes essentially the same arguments as the Hamner Institute. However, because questioning Dodd about the study before it is complete would require him to communicate his preliminary views on

---

[26] The raw data shall be subject to a protective order which restricts the use of the data underlying the final report to this litigation and to lawyers and other individuals, such as experts, engaged to work on this matter.

the meaning of the raw data collected by the Hamner Institute (and thus, would be akin to requiring the Institute to produce its internal communications), CVWD may not depose Dodd until the Hamner Institute has completed its final report.[27] At that time, CVWD may depose Dodd about the final report and any communications he has had with ExxonMobil related to the study.

### C.  ExxonMobil

ExxonMobil has stated that it does not have any other documents relating to the Hamner Institute study.[28] Moreover, while it is undisputed that ExxonMobil is a sponsor of the study, there is no evidence that ExxonMobil has the legal right to require the Institute to produce the requested documents.[29] Accordingly, I deny CVWD's motion to compel ExxonMobil to turn over further documents relating to the study. However, ExxonMobil remains under a continuing obligation to produce any documents relating to the study that come

---

[27]  However, if the Institute does not complete the final report by the end of this year, CVWD should inform this Court so that appropriate action may be taken.

[28]  *See* 7/26/10 Letter to the Court from Parker.

[29]  *See In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995) ("[F]ederal courts have consistently held that documents are deemed to be within the 'possession, custody or control' for purposes of Rule 34 if the party has actual possession, custody or control, or *has the legal right to obtain the documents on demand*." (emphasis added)).

into its possession in the future.

## V. CONCLUSION

For the aforementioned reasons, the Hamner Institute's motion is granted in part and denied in part, Dodd's motion is granted in part and denied in part, and CVWD's motion to compel ExxonMobil to produce the requested documents is denied. CVWD and the Hamner Institute shall submit a jointly proposed protective order in accordance with this Opinion.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           August 18, 2010