UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Joel G. MacMull (JM 8239)
GOETZ FITZPATRICK LLP
One Penn Plaza
New York, NY 10119
(212) 695-8100
jmacmull@goetzfitz.com

*Local Counsel for Non-Party Experimental Pathology Laboratories, Inc.*

| | |
|---|---|
| **In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation** | **MDL No. 1358** |
| New Jersey Dept. of Environmental Protection, *et al.* ) ) ) Plaintiffs, ) ) v. ) ) Atlantic Richfield Co., *et al.* ) ) Defendants. ) ) | Civil Action No.: 08 Civ. 00312(SAS); MDL 1358  Master File C.A. No. 1:00-1898 (SAS) |

**EXPERIMENTAL PATHOLOGY LABORATORIES, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE WAIVER AND DECLASSIFICATION <u>PROVISIONS OF PROTECTIVE ORDERS</u>**

As authorized by this Court on July 11, 2014, Non-Party Experimental Pathology Laboratories, Inc. ("EPL"), by and through counsel, submits its Opposition to Plaintiffs the New Jersey Department of Environmental Protection, the Commissioner of the New Jersey Department of Environmental Protection, and the Administrator of the New Jersey Spill Compensation Fund's (collectively, "Plaintiffs") Motion to Enforce Waiver and Declassification Provisions of Protective Orders ("Motion"), and states as follows:

I.   **INTRODUCTION**

As a subpoenaed non-party, EPL produced 786 pages of hard copy documents marked "CONFIDENTIAL," a CD containing approximately 614 emails, including attachments marked "CONFIDENTIAL," and 34 pages of hard copy documents not classified as confidential (the "EPL Documents"). The EPL Documents classified as confidential were marked as such in accordance with the agreed Confidentiality Agreement & Protective Order entered into by Plaintiffs and EPL on or about October 27, 2011, and was entered by the Court on October 28, 2011 (the "Protective Order"). The Protective Order remains in full force and effect, EPL's documents marked CONFIDENTIAL maintain their classified status, and any representations to the Court by Plaintiffs' counsel regarding EPL's consent to dissolution and/or release of the Protective Order are baseless and misleading.

Almost three years after production of the EPL Documents, Plaintiffs only recently attempted to challenge the confidential classification of the EPL Documents and now motion this Court to dissolve the Protective Order.

In the interest of judicial economy, to the extent not inconsistent herewith, EPL incorporates by reference herein the arguments set forth by The Hamner Institutes ("Hamner") in its opposition brief. EPL seeks to avoid needless duplication in the opposition briefs, as EPL is

in a similar position as Hamner - both EPL and Hamner are non-parties, have substantially similar confidentiality agreements and protective orders with Plaintiffs, and seek to protect the confidentiality of internal communications, communications between scientists and work product pertaining to the MTBE Study, including, but not limited to, unpublished and unreleased drafts of the MTBE Study.

Plaintiffs' Motion is without merit, and for the reasons set forth herein, Plaintiffs' Motion should be denied.

## II.     BACKGROUND FACTS

In 2007, EPL was retained by Hamner to provide pathology services, microscopic evaluation and pathology report preparation, peer review, and attending veterinary services.

On September 6, 2011, EPL was served with a subpoena duces tecum issued by New Jersey Department of Environmental Protection in the above captioned matter (the "Subpoena"). On September 16, 2011, in response to the Subpoena, EPL filed a Motion to Quash, Objections, and Alternative Motion for a Protective Order ("Motion to Quash") on the basis that the Subpoena (i) failed to allow a reasonable time to comply, (ii) requested confidential/protected information, and (iii) could subject EPL to undue burden and expense. On or about October 27, 2011, in order to resolve EPL's Motion to Quash, Plaintiffs and EPL entered into the Protective Order at issue in the pending Motion by Plaintiffs.

The Protective Order states, in relevant part:

> WHEREAS, Plaintiffs and EPL have agreed on the terms of this
> Confidentiality Agreement and Protective Order[.]
> …
>
> **I.     DEFINITIONS**
> …
> B.     <u>Confidential Document(s), Information, or Other Thing(s)</u>.  For
> purposes of this Order, "Confidential Documents" shall refer to Documents,

>CDs and/or DVDs which are stamped as "Confidential" or "Proprietary" and which are or contain a trade secret or other confidential research, development, or commercial information as those terms are used in Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, including any copies, summaries, portions or abstracts thereof… All Documents, CDs and/or DVDs which are stamped as "Confidential" or "Proprietary" shall be treated as Confidential subject to this Order pending further order of the Court.  The party asserting the confidentiality claim shall stamp, print, or write the term "Confidential" or "Proprietary" on at least the first page of any such document to be viewed only. …
>
>**II.     AGREEMENT AND PROTECTIVE ORDER**
>
>A.     This Order shall apply to all Documents Produced or Disclosed by EPL. …
>I.     No Person receiving Confidential Documents may use said Confidential Documents in any manner except in connection with This Action.
>
>J.     Within thirty (30) Days after the expiration of the last applicable deadline for the last permitted appeal, rehearing, or reconsideration related to This Action, Confidential Documents produced pursuant to this Order shall be returned to counsel of record of the party who provided the information, or the party receiving Confidential Documents shall have the option of destroying all Confidential Documents and providing an affidavit from its counsel of record to the designating party that the party in possession of the Confidential Documents has destroyed it.

Mullins Decl., ¶3, Ex. A.

On or about November 1, 2011, subject to the Protective Order, EPL produced the following documents to Plaintiffs: (1) CONFIDENTIAL - EPL 0001 thru CONFIDENTIAL - EPL 00786 in hard copy, (2) numerous emails on a CD labeled CONFIDENTIAL - EPL 00787 and (3) EPL 0788 thru EPL 0821.  As indicated on the CD, all emails and documents on the CD were deemed marked CONFIDENTIAL in accordance with the Order.  The EPL Documents classified as CONFIDENTIAL were clearly marked in accordance with the Protective Order.

### III. ARGUMENT

#### A. EPL's Documents Marked CONFIDNETIAL Were Properly Designated and Require Continued Protection.

In this case, the EPL Documents are properly designated as confidential because they contain trade secret and confidential research and development information of EPL that were part of a scientific study, including protected information regarding protocols and methodologies used by EPL to conduct the research. The EPL Documents also contain confidential preliminary research, work product, and communications relating to the MTBE Study, including unpublished and unreleased drafts. Such EPL Documents should maintain the protections of confidentiality established under the Protective Order because any opinion or conclusion which could be drawn from the research, preliminary findings and miscellaneous communications would be inconclusive. It would be improper and misleading to draw conclusions or develop opinions from the preliminary data. Disclosing incomplete and unconfirmed data to third parties in litigation risks chilling the participation of entities such as EPL in beneficial public research.

Plaintiffs, in seeking to lift the Protective Order, bear the burden of establishing the propriety of such dissolution. *See, e.g., H.L. Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc.*, 106 F.R.D. 551, 554 (S.D.N.Y. 1985); *Factory Mut. Ins. Co. v. Insteel Ind.,* 212 F.R.D. 301, 303 (M.D.N.C. 2002). Plaintiffs' burden of persuasion is particularly elevated because they stipulated to the Protective Order at its entry. *See, e.g., Jochims v. Isuzu Motors, Ltd.*, 145 F.R.D. 499, 501 (1992 S.D. Iowa). "The courts' rationale for this standard is that a party which in good faith negotiates a stipulated protective order and then proceeds to produce documents pursuant to that protective order is entitled to the benefit of its bargain; namely, to rely upon the terms of the stipulated protective order." *Id.* at 501-502. *See also Geller v. Branic Int'l Realty Corp.*, 212 F.3d 734, 738 (2nd Cir. 2000).

By seeking to dissolve the Protective Order, Plaintiffs improperly seek the disclosure of preliminary data from scientific study. Such disclosure would have a detrimental impact on scientific research. In their brief, Plaintiffs misapply the court's ruling in a similar argument for a motion to quash that was raised in *In re Fosamax Products Liability Litigation*, 2009 U.S. Dist. LEXIS 70246, 74 Fed. R. Serv. 3d (Callaghan) 190, which resulted in the District Court for the Southern District of New York quashing a subpoena served on a member for the National Academy of Sciences. The plaintiffs alleged that the prescription drug Fosamax caused adverse health effects. *Id.* at *26. The plaintiffs served the subpoena on a doctor that had been involved with and commented on a report issued by the National Academy of Science regarding drug safety. *Id.* at *27-28. The Court stated:

> <u>Compelling testimony from a third party researcher risks chilling participating in beneficial public research</u>. There is a serious danger that permitting discovery in these situations inevitably tends to check the ardor and fearlessness of scholars, qualities at once so fragile and so indispensable for fruitful academic labor.

*Id.* (emphasis added; internal citations omitted). The court ruled that the hardship to the subpoenaed party and the negative consequences outweighed the plaintiffs' need for discovery. *Id.* at *40.

In this case, the Subpoena sought and EPL produced under the protections of the Protective Order "preliminary data", "draft" narratives, communications "referring to, or transmitting" the draft narrative and/or preliminary data. Applying the logic of *Fosamax*, to avoid the chilling effect that allowing such discovery would have on the scientific community, the Protective Order should not be dissolved and the EPL documents should remain confidential.

Further, Plaintiffs' attempt to distract this Court from the Protective Order by referencing, and attaching as an Exhibit to one of their Declarations filed with the Motion, a copy of EPL's Motion to Quash. The Motion to Quash was not ruled on by the Court. Instead the Plaintiffs and

EPL agreed to the terms of the Protective Order. As a result, Plaintiffs cannot now rely on facts and arguments set forth in EPL's Motion to Quash as their basis for requesting the Protective Order be lifted. The Protective Order – which Plaintiffs agreed to – supersedes any confidentiality agreement between EPL and Hamner, and specifically states that the confidentiality protections afforded by it do not expire until "thirty (30) Days after the expiration of the last applicable deadline for the last permitted appeal, rehearing, or reconsideration related to This Action," at which time the confidential documents should be returned to the producing party or destroyed. Mullins Decl., ¶3, Ex. A at II. J. In fact the Court pinpointed this very fact when it stated during the May 13, 2014 status conference that "The plaintiffs agreed that the materials would be [produced] pursuant to a protective order," and in speaking to Plaintiffs' counsel, "You did agree that it [the Protective Order] would remain in place until the end of the MDL." Mullins Decl., ¶4, Ex. B at 36:22-23, and 37:21-22.

In sum, EPL's documents that are marked "CONFIDENTIAL" continue to need confidentiality protection to this day. Accordingly, Plaintiffs' request for dissolution of the Protective Order and a blanket declassification of all documents should be denied.

### B. The Exhibits to Dr. Willson's Deposition Marked CONFIDENTIAL Have Not Been Declassified.

Plaintiffs allege that EPL waived its right to the confidentiality of the EPL Documents. Dr. Willson's deposition was taken on July 26, 2012. Now, more than two years later, Plaintiffs allege that exhibits which were used as allowed by the terms of the Protective Order and marked "CONFIDENTIAL" in the official exhibits provided by the court reporter were declassified as confidential because counsel for EPL and/or Hamner did not request the deposition exhibits receive a second "CONFIDENTIAL" designation.

As with the deposition of Dr. Dodd, the copies of exhibits used at Dr. Willson's

deposition continued to bear the "CONFIDENTIAL" stamp and, thus, continued to be subject to the Protective Order. Mullins Decl., ¶6. When the deposition was completed, and the court reporter provided the official copy of the exhibits, these exhibits bore the "CONFIDENTIAL" stamp. *Id*.

Regarding the use of EPL's Documents at other depositions, EPL is not a party to the litigation and, as such, do not know what exhibits were marked as confidential in the depositions of other MTBE litigation deponents, including that of Dr. Dodd at Hamner, and have not reviewed any of those deposition transcripts (nor have they been afforded any opportunity to do so). Needless to say, EPL has certainly not waived its rights as to such matters since it received no notice, did not participate in, and were in fact unaware of what transpired.

**C.    Plaintiffs' Failed to Follow the Procedures Set Forth in the Protective Order to Declassify Confidential Documents.**

Plaintiff failed to follow the proper procedure set forth in the Protective Order to declassify documents marked CONFIDENTIAL by EPL. *See*, Mullins Decl., ¶3, Ex. A at II.K. Plaintiffs' Motion does not raise any specific challenges to the designations of confidentiality for certain EPL Documents in compliance with the terms of the Protective Order, nor can it. Instead, Plaintiffs made a blanket request to EPL to lift the Protective Order and declassify all of the documents EPL produced as a non-party to this litigation. In the same vein, Plaintiffs' Motion refers to all EPL and Hamner documents in broad strokes, and requests the dissolution of the Protective Order and the applicable protective order covering Hamner's documents.

As noted above, the Protective Order requires that "Any party hereto may challenge the claim of confidentiality of any materials by notifying counsel for the party claiming confidentiality in writing of the basis of their challenge to the claim." Mullins Decl., ¶3, Ex. A at II.K. Plaintiffs' Motion does not raise any specific challenges to the designations of

7

confidentiality for certain EPL documents in compliance with the terms of the Protective Order.

Again, many of the EPL documents do in fact contain the EPL's confidential internal work product and scientific communications that require continued protection.  EPL is not a party to this action, and its confidential internal work product, produced to Plaintiffs *via* third-party subpoenas, should be used only for purposes of this litigation and should otherwise be kept confidential in accordance with the terms of the Protective Order.  *See*, Mullins Decl., ¶3, Ex. A at II. I.  As EPL stated in its June 24, 2014 letter to Plaintiffs:

> We [EPL] also would like to resolve any legitimate disagreements concerning the classification of specific documents without burdening the court.  A blanket request is not appropriate or called for.  If you are requesting specific documents to be declassified, please provide us with the Bates number and/or copy of the document for which you are requesting declassification.  Upon receipt of the same, we will review the request and provide a response specific to the identified document(s).

Mullins Decl., ¶5, Ex. C.  EPL continues to be willing to work with Plaintiffs to resolve these issues, if and when Plaintiffs comply with the terms of the Protective Order.  To date, Plaintiffs have failed to comply with the terms of the Protective Order regarding declassification of EPL's confidential documents; as a result, Plaintiffs' Motion must be denied.

    **D.**    **Plaintiffs Fail to Establish Standing to Request Declassification of EPL's Confidential Documents on Behalf of the EPA.**

From a review of the transcript of the May 13, 2014 status conference, it appears that the Court understood that if the United States Environmental Protection Agency ("EPA") sought to review the MTBE Study and/or supporting data that the EPA should be involved – at the front – of this discussion, and stated, in relevant part, "What we really need is the EPA and the Hamner Institute and let them duke it out, and both of you [Plaintiffs and Defendants in the litigation] get out of this argument," and "It's Hamner versus the EPA apparently. Let the EPA put in an affidavit." Mullins Decl., ¶4, Ex. B at 42:2-3, and 42:8-9.

8

In response to the Court's comments, it appears from the transcript that the following discussion occurred between Plaintiffs' counsel and the Court, in relevant part:

> MR. AXLINE: We don't think they [the EPA] are going to be interested in a million pages, your Honor. I appreciate the breadth of what you are saying. It would be much more targeted than that.
>
> THE COURT: Then Mr. Pardo [Defendant's counsel] says identify it, if it is much more targeted, identify what you [Plaintiffs] think they [the EPA] need and let them do an affidavit. Even though I understand they don't know what they don't know, they would say we have a public health interest, we want to know the data that supports the report, it has been shared with us that there is data that would be of interest, so we want it. Whatever they can say in general terms at least inserts them into the argument.

Mullins Decl., ¶4, Ex. B at 42:16-43:1.

First, in contrast to Plaintiffs' representations to the Court, as set forth above, Plaintiffs' Motion fails to narrow the scope of the declassification of confidential documents – and instead seeks dissolution of the agreed Protective Orders.

Second, the Plaintiffs fail to involve the EPA at all in its Motion. The reality is, the EPA has <u>not</u> requested any information or documentation from EPL related to the MTBE Study. Mullins Decl., ¶7. Similarly, EPL has not been informed of any such request by the EPA to any party to this litigation (or to anyone else). *Id.* Plaintiffs' Motion is void of any evidence supporting their contention that the EPA has made a request for such information to anyone, as well as failed to include the recommended affidavit suggested by the Court.

Plaintiffs failed to establish standing to request on behalf of the EPA the declassification of EPL's Documents classified as confidential in accordance with the terms of the Protective Order, and as a result, the Motion must be denied.

## IV.     CONCLUSION

EPL is not a party to this action, and its confidential documents and communications, produced to Plaintiffs via third-party subpoenas, should be used only for purposes of this litigation and should otherwise be kept confidential in accordance with the terms of the Protective Order.  See, Mullins Decl., ¶3, Ex. A at II. I.  Based on the foregoing[1], EPL respectfully requests that his Court deny Plaintiffs' Motion.

Dated:  August 6, 2014                                                      **GOETZ FITZPATRICK LLP**

By:   /s/ Joel G. MacMull
Joel G. MacMull (JM 8239)
One Penn Plaza
New York, NY 10119
(212) 695-8100
jmacmull@goetzfitz.com

*Local Counsel for Non-Party Experimental Pathology Laboratories, Inc.*

**OF COUNSEL:**

**REES BROOME, P.C.**
Robert J. Cunningham, Jr. (*Not admitted*)
Alison R. Mullins (*Not admitted*)
1900 Gallows Road, Seventh Floor
Tysons Corner, Virginia 22182
(703) 790-1911
rcunningham@reesbroome.com
amullins@reesbroome.com

*Co-Counsel for Non-Party Experimental Pathology Laboratories, Inc.*

---

[1] Again, to the extent not inconsistent herewith, EPL incorporates by reference herein the arguments set forth by Hamner in its opposition brief.