1

E5drmtbc

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    IN RE:  METHYL TERTIARY BUTYL          MDL 1358
     ETHER ("MTBE") PRODUCTS
4    LIABILITY LITIGATION                   00 Civ. 1898 (SAS)

5    ------------------------------x

6                                           New York, N.Y.
                                            May 13, 2014
7                                           5:10 p.m.

8    Before:

9            HON. SHIRA A. SCHEINDLIN,

10                                          District Judge

11

12           APPEARANCES

13

     WEITZ & LUXENBERG, P.C.
14        Attorneys for Plaintiff La Susa
     BY:  ROBIN L. GREENWALD

15

16   MILLER AXLINE & SAWYER LLP
          Attorneys for NJ DEP
17   BY:  MICHAEL D. AXLINE

18

     COHN, LIFLAND, PEARLMAN, HERRMANN & KNOPF LLP
19        Attorneys for NJ American Water Company
     BY:  LEONARD Z. KAUFMANN

20

21   JACKSON GILMOUR & DOBBS P.C.
          Attorneys for Commonwealth of Puerto Rico
22   BY:  JOHN D.S. GILMOUR

23

     LEE VARTAN
24        Executive Assistant Attorney General
          State of New Jersey

25

                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300



E5drmtbc

```
 1              APPEARANCES

 2

   GWEN FARLEY
 3      Deputy Attorney General
        State of New Jersey

 4

 5 McDERMOTT, WILL & EMERY
        Attorneys for Defendant ExxonMobil Corp.
 6 BY:  JAMES A. PARDO
        STEPHEN J. RICARDELLI

 7

 8 SHEPPARD MULLIN RICHTER & HAMPTON LLP
        Attorneys for Defendant ExxonMobil
 9 BY:  JEFFREY J. PARKER

10

   KING & SPALDING LLP
11      Attorneys for Defendant ExxonMobil
   BY:  CHARLES C. CORRELL, JR.
12

13 ARCHER & GREINER, P.C.WILLIAM STACK
        Attorneys for Defendant ExxonMobil
14 BY:  WILLIAM J. STACK
        DAVID EDELSTEIN

15

16 WALLACE, KING, DOMIKE & BRANSON, PLLC
        Attorneys for Defendants Shell Oil Co.;
17      Texaco Refining and Marketing, Inc.;
        Chevron U.S.A. Inc.; Motiva Enterprises;
18      Equilon Enterprises, LLC
   BY:  RICHARD E. WALLACE, JR.
19

20 BEVERIDGE & DIAMOND
        Attorneys for Sunoco, Inc.
21 BY:  DANIEL M. KRAININ

22

   EIMER STAHL LLP
23      Attorney for CITGO Petroleum Corp.
   BY:  PAMELA R. HANEBUTT
24

25
```

3

E5drmtbc

```
 1          APPEARANCES

 2
     LATHAM & WATKINS LLP
 3        Attorneys for Defendant Conoco Phillips
     BY:  JON D. ANDERSON
 4

 5   MANATT, PHELPS & PHILLIPS LLP
          Attorneys for Defendant USA Gasoline Corp.
 6   BY:  SAMANTHA J. KATZE

 7   KIRKLAND & ELLIS LLP
          Attorneys for Defendant British Petroleum
 8   BY:  ANDREW RUNNING

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

36

E5drmtbc

1    set by your Honor for motions for summary judgment -- which

2    isn't set yet, there is no date on the calendar -- may drive

3    our ability to work with them.  I am interested in talking with

4    Mr. Axline if he thinks we may get to a solution with your

5    involvement.  We are not before you on motions for summary

6    judgment until the 10th of June, so there is time to talk with

7    them.

8            THE COURT:  Good.  I'll see you then on that.

9            Then there was an issue about Tauber Oil's expert

10   report.  Tauber Oil is no longer in the case, so I assume that

11   is moot.

12           Then I was told the parties would update me on

13   settlement in the New Jersey case.  You just sort of did.

14   There was no update other than what you gave or there is?

15           MR. KAUFMANN:  No, there is not, your Honor.

16           THE COURT:  The last item has to do with the

17   protective order.  Sorry, there are two more items.  One of the

18   last items has to do with lifting the protective order for the

19   Hamner Institute and the Experimental Pathology Laboratories,

20   Inc. records.  I guess the question is why?  What is the need

21   for the protective order to be listed?

22           The plaintiffs agreed that the materials would be

23   pursuant to a protective order.  The Hamner order in particular

24   had a nontermination provision that said, "The provisions of

25   this order shall not terminate at the conclusion of this

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

E5drmtbc

1    particular action," which was Crescenta Valley, "and shall

2    remain in place until 30 days after the conclusion of all

3    aspects of the last MDL 1358 lawsuit," which I don't really

4    expect to live to see.  But be that as it may, that's a long

5    way off.

6          Why should I lift this?  You agreed it would last

7    until the last MDL lawsuit is concluded.

8          MR. AXLINE:  Your Honor, the results of the discovery

9    that followed from those protective orders included information

10   that we believe regulatory agencies will be interested in and

11   that are important to public health.  We would like the

12   opportunity to brief to you the notion that that protective

13   order should now be lifted.

14         The real gravamen of the order was the Hamner report

15   had not come out.

16         THE COURT:  I remember that, yes.

17         MR. AXLINE:  They came in and said it's not final yet.

18   That was the main thing that you observed.  We got together and

19   worked out some additional terms, and those went into what was

20   submitted.

21         THE COURT:  I remember that.  You did agree that it

22   would remain in place until the end of the MDL.  Can you

23   backtrack on your agreement, much as Mr. Quinn tried to

24   backtrack?

25         MR. AXLINE:  I think there are compelling reasons to

E5drmtbc

1    do so involving public health at the time we entered into that

2    agreement.  As I said, the real driving force behind this is we

3    believe there is some information that regulatory agencies

4    should have that relate to public health.  That is the impetus

5    for it.

6            THE COURT:  Is this something that the Hamner

7    Institute should be litigating or the defendants?

8            MR. AXLINE:  We began by meeting and conferring with

9    EPL, the laboratory that analyzed the results and the Hamner

10   Institute.  EPL has now been released from its confidentiality

11   agreement.  The Hamner Institute, my understanding is, although

12   we don't have this in writing yet, has no objection to lifting

13   it.

14           THE COURT:  Which is the interested party now, the

15   Hamner Institute or the defense lawyers here representing the

16   defendants?  Why is it their issue as opposed to the Hamner

17   Institute?  If there is a public health argument, I don't know

18   why the defendants would be fighting this battle.  The Hamner

19   Institute should appear and fight.

20           MR. AXLINE:  That is a very interesting question, your

21   Honor.

22           THE COURT:  It is.  Mr. Pardo, what is it to you, so

23   to speak?

24           MR. PARDO:  First, let me say I think you're right, it

25   is an issue for the Hamner.  They are not here.  EPL is not

E5drmtbc

1    here.  I'm not even aware if they were told about this

2    conference.

3              THE COURT:  Not only were they told, they apparently

4    have said they have been released from their confidentiality

5    agreement with the Hamner so they don't really have a dog in

6    the fight and they take no position on releasing it.  It's all

7    Hamner.  Go ahead.

8              MR. PARDO:  I will take Mr. Axline at his word on

9    that.  I don't know that.

10             THE COURT:  Me neither.  I'm taking his word just like

11   you are.  Go ahead.

12             MR. PARDO:  I think from the defense standpoint, and

13   I'm a little bit hamstrung here because I'm not sure what he is

14   talking about when he talks about the public health concerns --

15             THE COURT:  Use your imagination.

16             MR. PARDO:  I really don't know.  I have an

17   imagination.

18             THE COURT:  There must be something in the report that

19   says a concentration of this amount of stuff in water isn't

20   good for humans.  That's what my imagination tells me.  Go

21   ahead.

22             MR. PARDO:  The report and most of the underlying data

23   has been turned over to the United States Environmental

24   Protection Agency already.

25             THE COURT:  To the United States what?

E5drmtbc

1       MR. PARDO:  To the USEPA.  They have it.  That was the

2   whole point of issuing the report.

3       THE COURT:  I kind of wondered about that.  If it is

4   already with the EPA, that's the regulatory agency, who doesn't

5   have it?

6       MR. AXLINE:  They do not have all the material that

7   was produced in discovery, your Honor.  They have some of it.

8       THE COURT:  EPA doesn't have it according Axline, does

9   have it according to Pardo.  There is a way to get at that

10  fact.  That's a fact.

11      MR. PARDO:  I'm not sure we are saying something

12  completely different.

13      THE COURT:  The report they may have.  They don't have

14  the underlying raw data.  They don't have everything.

15      MR. PARDO:  OK, the data and everything.  We

16  produced -- when I say "we," Hamner -- produced well over

17  a million pages of data, documents, reports.  Pretty much

18  everything was made available to Mr. Axline's office and the

19  plaintiffs.

20      THE COURT:  That may be.  How about to the EPA?

21      MR. PARDO:  I don't know that all of that would have

22  been shared with the EPA.

23      THE COURT:  That's right.  That's what he is saying is

24  the public health issue, everything that plaintiffs have should

25  be released to the regulatory agencies.

41

E5drmtbc

1          MR. PARDO:  I think before we go lifting a protective

2     order that your Honor put in place --

3          THE COURT:  I wasn't about to lift.  Why this your

4     issue, not the institute's?

5          MR. PARDO:  We have a right to know what he is talking

6     about.

7          THE COURT:  The million pages?  Everything you gave,

8     the pages?

9          MR. PARDO:  That is not specific enough, your Honor.

10          THE COURT:  It's not?  You gave it.  Not you.  The

11     Hamner Institute released all million pages.  Mr. Axline argues

12     all million pages go to the EPA.  That's specific.  Everything

13     the plaintiffs got they say should be in the hands of the

14     regulatory agencies at this point.  The work is no longer in

15     progress.  It's not a report that hasn't been released.

16          MR. PARDO:  But it is information that was designated

17     as confidential pursuant to this order.

18          THE COURT:  I understand that.  There are changed

19     circumstances, one of which, as you said, is the report is in

20     the hands of the EPA but not the underlying data.

21          MR. PARDO:  I'm not aware the EPA has made a request

22     for this data.  They have the data.  They have had the report

23     for several years.

24          THE COURT:  That is turning the argument around.  That

25     is saying why is the plaintiff representing the EPA.  I'm

42

E5drmtbc

1  saying why is the defendant representing the Hamner Institute.

2  What we really need is the EPA and the Hamner Institute and let

3  them duke it out, and both of you get out of this argument.

4       MR. PARDO:  Exactly.  I'm not sure what his interest

5  here is.

6       THE COURT:  I agree.  But the flip side of the

7  question, I'm not sure what yours is, either.  What are you

8  protecting?  It's not your issue, either.  It's Hamner versus

9  the EPA apparently.  Let the EPA put in an affidavit.

10       MR. AXLINE:  I can tell you what our interest is, your

11  Honor.  An affidavit from EPA might not be a bad idea.  But

12  they are shooting in the dark.  They don't know what they don't

13  know.  We know what they don't know.

14       THE COURT:  That's true, because you have all million

15  pages.

16       MR. AXLINE:  We don't think they are going to be

17  interested in a million pages, your Honor.  I appreciate the

18  breadth of what you are saying.  It would be much more targeted

19  than that.

20       THE COURT:  Then Mr. Pardo says identify it, if it is

21  much more targeted, identify what you think they need and let

22  them do an affidavit.  Even though I understand they don't know

23  what they don't know, they would say we have a public health

24  interest, we want to know the data that supports the report, it

25  has been shared with us that there is data that would be of

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

43

E5drmtbc

1    interest, so we want it.  Whatever they can say in general

2    terms at least inserts them into the argument.

3          By the same token, defendants should tell me why it is

4    their issue to brief in response at all as opposed to Hamner.

5    At one time we had lawyers for Hamner on the phone or in

6    person.  I remember that.

7          MR. PARDO:  There still are.

8          THE COURT:  They aren't here, though.  There is nobody

9    here representing Hamner today.  Mr. Wallace.

10         MR. WALLACE:  My client Shell was one of the sponsors

11   of the agreement.  We don't have any interest in this.  We

12   would prefer to see you decide the plaintiffs' motion.

13         THE COURT:  Who is opposing it?  If you have no

14   interest, who is writing the other brief?

15         MR. WALLACE:  With Hamner responding.

16         THE COURT:  I agree.

17         MR. WALLACE:  As I recall it, they raised some concern

18   about --

19         THE COURT:  I am happy to have Hamner respond.  Does

20   any defendant present wish to respond also?  Shell apparently

21   doesn't.  Does any defendant wish to respond?

22         MR. PARDO:  To the motion they are going to bring?

23         THE COURT:  To the motion to lift this protective

24   order to allow the Hamner data to be made available to the

25   regulatory agencies.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

E5drmtbc

1          MR. PARDO:  My client was also one of the --

2          THE COURT:  I know.  That wasn't my question.  Do you

3  wish to oppose the motion?

4          MR. PARDO:  I don't know until I see it.

5          THE COURT:  Mr. Wallace does.  It's been described to

6  you.  It is to lift the protective order and allow the data to

7  be turned over to the regulatory agencies.  You should know

8  whether you wish to oppose that or not.  Mr. Wallace says he

9  doesn't wish to oppose it.  Hamner will, I assume.

10          MR. PARDO:  I believe we will oppose that, your Honor.

11          THE COURT:  There you go.

12          MR. WALLACE:  My only concern, your Honor, is that the

13  plaintiffs go to EPA and get them involved in a court

14  proceeding over some secretive material regarding a study that

15  my client sponsored that is being withheld contrary to public

16  interest.  I'm not sure you need EPA weighing in on what they

17  don't know.

18          THE COURT:  Mr. Pardo suggests that I do, and I

19  thought so, too.  He is saying I don't really see what the

20  plaintiffs' interest is, why isn't the EPA asking for this.  I

21  said that's interesting, we really should have the EPA

22  litigating with Hamner.  Then Mr. Axline correctly said, I'm

23  the only one who knows what is in the material, EPA doesn't

24  know what it doesn't have.

25          I think it could make general statements of its

45

E5drmtbc

1  regulatory purpose and why it has a need for fuller

2  understanding, etc., without knowing what the data is.  Go

3  ahead and make this motion.  I can't stop this one and it is of

4  interest.

5       Notice it to the Hamner Institute as well as

6  defendants.  If they do not choose to oppose it, then I will

7  note that in the decision, that they have offered no

8  opposition.  That will weigh heavily in my thinking, I assure

9  you, if they choose not to oppose it.

10      You can make the motion, Mr. Axline.  Be sure that

11 they get notice of it as well as all the liaison, Mr. Pardo,

12 and that it gets circuited, and we will see who opposes.

13      MR. WALLACE:  I only hope that Mr. Axline does not go

14 to the agency and say I got it directly from a federal judge in

15 New York, Judge Scheindlin.

16      THE COURT:  Why don't you worry about your part of

17 this, not Mr. Axline's part, not the EPA's part, not the Hamner

18 Institute.  Worry about Shell.  That's enough to worry about.

19 You stay with that.  You told me you weren't opposing it.  I

20 don't think you have more to add.

21      The last item on the agenda is the OCWD station

22 matrix.  The defendants report that the parties are drafting a

23 CMO reflecting a workable station matrix and this new matrix is

24 going to narrow the number of defendants at each station.  I

25 was told the parties will update me on this at the conference.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300