

Boston  Brussels  Chicago  Düsseldorf  Frankfurt  Houston  London  Los Angeles  Miami

Milan  Munich  New York  Orange County  Paris  Rome  Seoul  Silicon Valley  Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Peter John Sacripanti
Chairman
psacripanti@mwe.com
+1 212 547 5583

BY HAND DELIVERY AND ELECTRONIC MAIL                    August 6, 2014

The Honorable Shira A. Scheindlin
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1620
New York, New York  10007-1312

      Re:     <u>Master File C.A. No. 1:00-1898 (SAS), M21-88, MDL No. 1358</u>
            *Defendants' Pre-Conference Letter for August 14, 2014 Conference*

Dear Judge Scheindlin:

      Defendants respectfully submit this letter in advance of the August 14, 2014 conference.[1]

## I.    *Puerto Rico*: Update on Causation Matrix Meet and Confer

      At the July 16, 2014 conference, the parties jointly requested, and the Court granted, additional time to meet-and-confer in an effort to narrow the motions for summary judgment for lack of causation that may need to be filed.  Thereafter, on July 21 and 22, Defendants sent individual letters to Plaintiffs explaining the basis on which they would move.  In response, on August 1, Defendants received Plaintiffs' preliminary trial site matrix and a proposal for stipulation.  Defendants are reviewing this letter and matrix and will attempt to further confer with Plaintiffs ahead of the August 14 conference.  Defendants will be prepared to update the Court on the status of those discussions.

## II.    *Puerto Rico*: Anthony Brown Improper Addendum Reports

      At the July 15, 2014 status conference, Your Honor stated that whether Mr. Brown's new expert reports are admissible depends on whether Defendants timely produced certain information described by Plaintiffs as the "Alpha Engineering data," or whether Mr. Brown's new expert reports are just an attempt by Plaintiffs to re-write Mr. Brown's reports because his

---

[1] Defendants respectfully request a short extension of the Court's page limitation. Defendants have included only relevant pages of all exhibits.

The Honorable Shira A. Scheindlin
August 6, 2014
Page 2

deposition went poorly. *July 15, 2014 Conf. Tr.* at 30-31. Because the addenda are clearly the latter, the Court should strike them.

Your Honor instructed Defendants to provide Plaintiffs with evidence that the "Alpha Engineering data" was timely produced and not, as Plaintiffs claimed, produced on May 28, 2014 after Mr. Brown's deposition. *Id.* at 29. On July 22, 2014, Defendants sent a letter to Plaintiffs explaining and attaching proof that the "Alpha Engineering data" was produced on April 14, 2014 in accordance with CMO 112. *Ltr. from J. Anderson to D. Miller* (July 22, 2014) (at Ex. A). Defendants also explained that it was not even "data" from Alpha Engineering but, rather, photographs and notes. *Id.* Defendants renewed their request that Plaintiffs withdraw Mr. Brown's June 27, 2014 "Addenda" by July 25, 2014. As Defendants stated in their July 7, 2014 Pre-Conference Letter, this report was *not*, as Plaintiffs claim, necessitated by Defendants' production of new "data." Rather, the new report is a transparent attempt to correct critical errors in Mr. Brown's prior three reports that Defendants identified during their cross-examination of Mr. Brown.

Plaintiffs did not respond to Defendants' July 22 letter, presumably because they cannot contradict the facts Defendants provided. Accordingly, Defendants submit this supplemental letter to show that: (1) all reliance materials were timely produced on April 14, 2014; (2) no new "data" was produced by Defendants on May 28, 2014; and (3) the additional data actually considered by Mr. Brown in his "Addenda" is data that Plaintiffs produced to Defendants (and was available to Mr. Brown) long before expert discovery even began. The Court should therefore strike Mr. Brown's June 27, 2014 "Addenda."

A.     **The Alpha Engineering "Data" Was Produced on April 14, 2014.**

In Plaintiffs' July 10, 2014 Pre-Conference Reply Letter, Plaintiffs claim that Defendants used data gathered by Defendants' consultant Alpha Engineering to cross-examine Plaintiffs' expert Anthony Brown on May 22-23 and 26, 2014. Plaintiffs further claim that this Alpha Engineering "data" was not produced until May 28, 2014. Plaintiffs contend that:

By delaying production of this [Alpha Engineering] data, the defendants obtained a substantial unfair tactical advantage: they prevented Mr. Brown from responding to the data in his rebuttal report which was served on May 16, 2014, and surprised him with the data during his deposition, preventing plaintiffs from reviewing the data before Mr. Zeeb's deposition.

*Pls.' July 10, 2014 Pre-Conference Reply Ltr.*, at 3. The following facts prove otherwise.

(1) Alpha Engineering took photographs of well locations for Defendants. All of these photographs were produced to Plaintiffs on April 14, 2014 pursuant to CMO 112. These photographs are Bates-labeled SUN_PUERTO_ZEEB_004954-005212 and were included in the reliance materials of Peter Zeeb produced on April 14, 2014.

The Honorable Shira A. Scheindlin
August 6, 2014
Page 3

*See Ltr. from P. Schauwecker to M. Axline* (Apr. 14, 2014) (at Ex. B); *see also* photographs
Bates-labeled SUN_PUERTO_ZEEB_004954-005212 (exemplars at Ex. C).

> (2) The "Alpha Engineering data" that Plaintiffs describe is six pages of type-written
> notes taken by Robert Fuhrer of Alpha Engineering. These six pages of notes were
> also produced to Plaintiffs on April 14, 2014 pursuant to CMO 112. The notes are
> Bates-labeled SUN_PUERTO_ZEEB_000292-97 and were included in Peter Zeeb's
> reliance materials produced on April 14, 2014.

*See* Ex. B; *see also* notes Bates-labeled SUN_PUERTO_ZEEB_000292-97 (at Ex. D).

This is not the first time that Plaintiffs have incorrectly claimed that they did not have the
"Alpha Engineering data." On April 14, 2014, Plaintiffs wrote Defendants complaining that they
had not received this and other data. Defendants advised Plaintiffs the next day that they
produced the "Alpha Engineering data" on April 14, 2014, and Defendants provided the file
name to Plaintiffs so that they could easily locate it. *See Ltr. from L. Gerson to T. O'Reilly* (Apr.
15, 2014) (at Ex. E).[2] Your Honor will also recall that the issue of the "Alpha Engineering data"
and other materials was the subject of a pre-conference agreement between the parties that was
announced to the Court at the May 1, 2014 status conference. *See May 1, 2014 Conf. Tr.* at 4-5.

**B.    There Was No New "Data" Produced On May 28, 2014.**

Plaintiffs have complained that information was produced to them for the first time on
May 28, 2014. *Pls' Reply Ltr.* (July 10, 2014). The only such allegedly "late" information they
have identified is the "Alpha Engineering data," which was timely produced on April 14. Nor
was any other new "data" produced on May 28, as the following facts demonstrate:

> (1) On May 28, 2014, in accordance with Paragraph I of CMO 112, Defendants produced
> to Plaintiffs "additional reliance materials generated or first reviewed and relied upon
> by [Dr. Zeeb] subsequent to the initial [April 14, 2014] production of reliance
> materials but prior to [Dr. Zeeb's] deposition."

> (2) There is no new "data" in the materials produced on May 28, 2014. To the contrary,
> the materials produced on May 28, 2014 include outlines of information ("cheat
> sheets") prepared by Dr. Zeeb to facilitate his deposition testimony. The sources of
> the information in these "cheat sheets" are limited to:

> - Documents produced **by Plaintiffs** before the start of expert discovery;

---

[2] Defendants also provided Plaintiffs an index of the previously produced photographs as a
courtesy on April 21 so that Plaintiffs could easily cross reference the photos to particular sites.
*See Ltr. from P. Schauwecker to M. Axline* (Apr. 21, 2014) (at Ex. F).

The Honorable Shira A. Scheindlin
August 6, 2014
Page 4

- Mr. Anthony Brown's expert reports; and
- Dr. Zeeb's April 7, 2014 expert report.

*See Ltr. from P. Schauwecker to M. Axline* (May 28, 2014) (at Ex. G), and SUN_PUERTO_ ZEEB_019184-91, SUN_PUERTO_ZEEB_020108-19 (excerpts at Ex. H).   Contrary to Plaintiffs' claim, Defendants did not "surprise" Mr. Brown with this data during his deposition. The information was either in Plaintiffs' possession, in Mr. Brown's report, or provided to Plaintiffs and Mr. Brown in Dr. Zeeb's April 7, 2014 expert report. *See Source Material Charts for Zeeb Exhibits #23 and #26* (at Ex. I) (identifying the source of the information produced on May 28, 2014 and when this information was provided to Plaintiffs.)

**C.     Mr. Brown's "Addenda" Have Nothing to Do With The Alpha Engineering "Data" Produced on April 14, 2014 or Any Other So-Called "Data" Produced on May 28, 2014.**

While Mr. Brown claims his "Addenda" contain "slight changes to" his expert reports, the Addenda in fact contain entirely new and altogether different opinions and calculations from his prior expert reports, as described in Defendants' July 7 Pre-Conference Letter. Importantly, *none* of the changes made by Mr. Brown has anything to do with the information from Alpha Engineering or Dr. Zeeb's "cheat sheets." Mr. Brown stated his reasons for preparing these new reports, and they have nothing to do with the claims made by Plaintiffs' counsel:

(1)  Defendants' experts' reports relied on pumping rates for water supply wells that in some cases differed from those Brown used in his groundwater flow modeling presented in his revised expert report and revised rebuttal report; and

(2)  Additional field inspections were performed of nearby water supply wells at Texaco #800 and Shell #3042, by Mr. Brown or his consultant.

*See Addenda to Expert Report for Texaco 800 and Shell 3042*, at 1 (at Exs. J & K, respectively).

Neither excuse concerns "data" produced on May 28, 2014, and neither is valid.  The pumping rates that Defendants' experts used in their reports were provided by Plaintiffs in discovery responses long before expert discovery even began.  *See* PR-AAA_005518-20 (designated "Confidential" and will be provided to the Court by Defendants' counsel at the conference).  Mr. Brown was either not provided this information by Plaintiffs or, for whatever reason, chose not to use this data in his three prior reports.  And any field inspections by Plaintiffs, their consultants or Mr. Brown should have been completed before Mr. Brown issued his report, not after his deposition.  There is no provision in the CMO 112 expert protocol, in any federal procedural rule, or in any prior order of the Court that permits Plaintiffs' expert to revise his report because he learns that the Defendants' experts' reports are different in some respect, because Plaintiffs forgot to provide him with information, because he neglected to use information he was provided, because he failed to visit a site before issuing his report, or simply because he wants a do-over.

The Honorable Shira A. Scheindlin
August 6, 2014
Page 5

Mr. Brown also specifically identifies his additional reliance materials for his "Addenda:"

- PR-AAA_005518 - PR-AAA_005520;
- Puerto Rico Department of Health (PRDOH). (2007). Source Water Assessment Program Final Report 2007. December;
- U.S. Geological Survey (USGS). (2006). Surface-Water, Water-Quality, and Ground-Water Assessment of the Municipio of Ponce, Puerto Rico, 2002-2004;
- U.S. Geological Survey (USGS). (2011). Groundwater Site Inventory Database. May 26; and
- Zeeb, Peter. (2014). "Site-Specific Expert Report of Peter Zeeb." April.

*See* Ex. J, at 5; Ex. K, at 2.  None of these reliance materials were produced by Defendants on May 28, 2014.  Rather, the materials include:  (1) documents either provided to Mr. Brown by Plaintiffs or provided to Mr. Brown by an agency of the Commonwealth; (2) information that has been publicly available for years; and (3) Dr. Zeeb's expert report served on April 7, 2014.  In other words, Mr. Brown had all of this information before his April 28 Revised Report, his May 5 Rebuttal Report, his May 19 first "Addendum to Revised Report", and his May 23-24, 26 deposition.  Tellingly, there is no mention in Mr. Brown's new reliance materials of the "Alpha Engineering data" or Dr. Zeeb's "cheat sheets."  Mr. Brown's new reports and his new reliance materials clearly demonstrate that Mr. Brown's issuance of two new "Addenda" had nothing whatsoever to do with Defendants' supposed untimely production, as Plaintiffs now claim.

As Defendants detailed in their July 7 Preconference Letter:  (1) Mr. Brown's Addenda contain a new model, new calculations, new wells, and other new opinions; and, (2) allowing Mr. Brown's completely new model and opinions will be extremely prejudicial to Defendants, undermining months of expert discovery.  The Court should strike Mr. Brown's Addenda.

### III.    *Puerto Rico*: Plaintiffs' Responses to the Sunoco Defendants' RFAs

Plaintiffs have failed to respond to the Sunoco Defendants' Requests for Admission in good faith.  Defendants agreed to grant Plaintiffs a two-month extension of time (for a total of 90 days) to respond to Defendants' RFAs provided that Plaintiffs (i) prioritized the RFAs served by Sunoco and one other Defendant; and (ii) served their responses on a rolling basis rather than taking three full months for all or nearly all responses.  Plaintiffs expressly agreed to these conditions, (*Email from M. Axline to M. Dillon* (May 21, 2014)), but then failed to satisfy them.

Plaintiffs' delayed responses to Sunoco's RFAs suffer from numerous infirmities that make them deficient on their face.  In addition, Plaintiffs have improperly relied on an irrelevant discovery dispute as an excuse for failing to admit or properly respond to numerous RFAs.  Plaintiffs' responses to Sunoco's RFAs suffer from the following deficiencies, a more detailed explanation of which is set forth in the letter attached as Ex. L. *See also Representative Excerpts from Plaintiffs' Responses to Sunoco's RFAs* (at Ex. M).

The Honorable Shira A. Scheindlin
August 6, 2014
Page 6

1.  <u>Double Negatives</u>:  Plaintiffs' responses to RFAs 1-27 and 50 are nonsensical in that they contain double-negatives that render the text of the response contrary to the purported admission.

2.  <u>"Facts Not in Evidence" Objections</u>:  Plaintiffs' responses to RFAs 28-29, 31-35, 37-41, 46-55 are improper because they rely on the objection that the request "assumes facts not in evidence which render the request argumentative and improper."  No facts are "in evidence" at this time, the requests do not assume facts at all but rather require Plaintiffs to admit or deny statements, and there is nothing about the requests that makes them argumentative or improper.

3.  <u>"Compound" Objections</u>:  Plaintiffs' responses to RFAs 33-35 are improper because they incorrectly conclude that the requests are compound when, in fact, they are not.  The requests at issue are all phrased in the disjunctive ("or"), not the conjunctive ("and").

4.  <u>"Beyond the Scope of the Trial Sites" Objections</u>:  Plaintiffs object to RFAs 28-32, 36-37, 42-45, 52 and 56-62 on the grounds that the requests "improperly seek[] information outside the scope of permissible discovery concerning the Trial Sites."  To the extent this objection is valid, then it renders moot nearly all of the objections Plaintiffs have raised regarding Sunoco's discovery responses given that they, too, go beyond the scope of the trial sites.

5.  <u>Improper Denials</u>:  Plaintiffs deny RFAs 29, 31, 37, 39, 41, 43, 45, 47, 49, 53, 55-62, which ask them to admit that they have no documents or sworn testimony in support of a particular proposition.  These denials violate Rule 36(a)(4) because no such documents exist, and Plaintiffs have failed to identify any such document or any good-faith basis for these denials.

6.  <u>Objections Based on Sunoco's Alleged "Refus[al]" to Produce A Document</u>:  Plaintiffs object and refuse to admit or deny to RFAs 28-31, 40, 42-45, and 56-62 on the purported grounds that the Sunoco Defendants "have refused to produce documents concerning sales of neat MTBE that were ultimately delivered to Puerto Rico."  First, the shipment at issue was sold by Sunoco to an entity that took title to it in Texas and Sunoco's sales information does not indicate the shipment was delivered to Puerto Rico.  Moreover, this objection is improper for at least three reasons: (a) the objection is based on a single document that Plaintiffs already have (and which does not indicate delivery to Puerto Rico) and therefore any copy in Sunoco's control is of no substantive consequence; (b) the objection is irrelevant to every RFA for which Plaintiffs assert it; and (c) Sunoco has taken numerous steps to address Plaintiffs' concerns regarding any relevant neat MTBE sales information, and has produced additional information.

In light of these deficiencies,  Sunoco respectfully requests that the Court offer guidance on the above issues and order Plaintiffs to serve amended responses to Sunoco's RFAs (consistent with that guidance) within 10 days, or refer this dispute to the Special Master for resolution.

The Honorable Shira A. Scheindlin
August 6, 2014
Page 7


Sincerely,

*Peter John Sacripanti*

Peter John Sacripanti


cc:  All Counsel of Record by LNFS, Service on Plaintiffs' Liaison Counsel

# EXHIBIT A



E-SERVICE
55769451
Jul 22 2014
04:46PM
File & ServeXpress

# KING & SPALDING

King & Spalding LLP
1100 Louisiana, Suite 4000
Houston, TX 77002-5213
Tel: +1 713 751 3200
Fax: +1 713 751 3290
www.kslaw.com

Jeremiah J. Anderson
Partner
Direct Dial: +1 713 276 7417
Direct Fax: +1 713 751 3290
jjanderson@kslaw.com

July 22, 2014

***VIA LNFS AND EMAIL***
Duane Miller
Miller, Axline & Sawyer
1050 Fulton Avenue, Suite 100
Sacramento, California  95825

Re:   *In Re MTBE Litigation*, MDL 1358; *Commonwealth of Puerto Rico, et al.*
*v. Shell Oil Co., et al.*; 14 CIV. 1014 (SAS)

Duane:

At the July 15 status conference, you told the Court that Defendants did not produce the Alpha Engineering "data" until May 28, 2014.  This is incorrect.

All Alpha Engineering materials were produced on April 14, 2014.  As an initial matter, and as you know, there is no Alpha Engineering "data," but rather only various photographs Alpha Engineering took and six-pages of notes from the conversation between Dr. Zeeb and Robert Fuhrer of Alpha Engineering.  In any event, both the photos and the notes were produced on April 14 as part of Dr. Zeeb's reliance materials:

- Alpha Engineering Notes:  SUN_PUERTO_ZEEB_000292-000297 (Ex. A); and

- Alpha Engineering Photographs:  SUN_PUERTO_ZEEB_004954-005212 (Ex. B (sample photo: SUN_PUERTO_ZEEB_004971)).[1]

*See also* April 14, 2014 P. Schauwecker Ltr. to D. Miller (Ex. C).  This is the only Alpha Engineering "data" considered or used by Dr. Zeeb.

Not only did Defendants produce these materials in April, but we specifically told your office the next day that the Alpha Engineering information was produced and identified the file

---

[1]   Mr. Correll inadvertently used non-bates stamped copies of several Alpha photographs at Mr. Brown's deposition, but these photos had already been produced back in April.  For example, Brown Exhibit 17 was produced on April 14 at SUN_PUERTO_ZEEB_004971.  *See* Ex. B.

Duane Miller
July 22, 2014
Page 2

name so that you could easily locate it.  *See* April 15, 2014 L. Gerson Ltr. to T. O'Reilly (Ex. D). And on April 21, we provided your office with an index of the photographs produced on April 14 so that you could easily cross reference the photos to particular sites.  *See* April 21, 2014 P. Schauwecker Ltr. to M. Axline (Ex. E).  Your representation to the Court that this information was not produced until May 28 is demonstrably wrong.  Not only was it produced on April 14 consistent with CMO 112, Defendants extended you various courtesies and favors with respect to this information.[2]

Because the Alpha Engineering "data" was timely produced, Mr. Brown cannot issue a new expert report based on his tardy review of it.  He had this information for more than a month before he issued his May 19 report and before he was deposed.  As a result, please let me know by July 25 whether you will withdraw Mr. Brown's June 27 Addendum.  If you do not withdraw the Addendum, we will file a supplemental letter brief seeking to strike it.

Very truly yours,

Jeremiah J. Anderson

JJA/mr

---

[2]  While your focus at the status conference was on the Alpha Engineering "data," I note that the spreadsheet that Dr. Zeeb produced on May 28 did not contain any "late" information either.  All of the information in the spreadsheet was produced prior to April 14.  Dr. Zeeb simply put all the data that had already been produced into one place, which he made clear at his deposition.  *See* P. Zeeb Dep. at 44 (Ex. F).

# EXHIBIT B





E-SERVICE
55296146
Apr 14 2014
02:22PM
File & ServeXpress

Paula Schauwecker
477 Madison Ave.
15th Floor
New York, NY 10022
Direct:(212) 702-5400
Fax:(212) 702-5450
pschauwecker@bdlaw.com

April 14, 2014

**VIA FEDEX AND LNFS**

Michael Axline, Esq.
Miller, Axline & Sawyer
1050 Fulton Avenue
Suite 100
Sacramento CA 95825-4272

      Re:    *Commonwealth of Puerto Rico, et al. v. Shell Oil Co., et al.,* 07-CV-10470
             Reliance Materials for Dr. Peter Zeeb

Dear Michael:

      Enclosed please find a disc containing reliance materials for the April 7, 2014 Expert Report of Dr. Peter Zeeb, Bates labeled SUN_PUERTO_ZEEB_000001 – 005212. In addition, Attachment A lists previously-produced or publically available reliance materials not included on the disc.

      Please contact me if you have any questions or wish to discuss.

             Sincerely,

             Paula Schauwecker

PJS/rcs

Enclosure (2)

cc:   All Counsel of Record (via LNFS)

# EXHIBIT C



SUN_PUERTO_ZEEB_004959



SUN_PUERTO_ZEEB_004960



SUN_PUERTO_ZEEB_004961



SUN_PUERTO_ZEEB_004962

# EXHIBIT D

# Well Information

*4-4-2014*

## 1. Hospital Auxilio Mutuo (HAM)                Outside delineation area     [Total #1012 Hato Rey]

Hospital Auxilio Mutuo (HAM), 3 wells, 2- Active, 1- closed
Ave. Ponce De Leon, PR-25, Km. 37.5
787-2000, Physical Plant X5014

- Hospital Auxilio Mutuo well reportedly built in 1928, closed & out-of-use
- HAM #1, (South Well) built on 10/1/1962, depth 180' bgs
- HAM #2, (North Well) depth 180' bgs

Site visit 4/3/2014 with Physical Plant Supervisor - Mr. Rafael Martin, who has worked at Auxilio Mutuo Hospital for the past 33 years. Physical Plant Dir., Eng. Wilson Colon authorized us to visit the wells after we signed a confidentiality agreement.

These 2 wells are located more than 3,300 feet east, north-east from the Total SS.

Pump capacity for each well is- 200 gpm.
Well Use: Wells not used simultaneously. One well will be used 24 hours per day, 7 days a week, to provide water for specifically evaporative cooling (the chillers). Water from well(s) sent exclusively to 50,000 gallon "*Cisterna ala Norte*" (North Cistern). This cistern is used exclusively for water chillers.

HAM has 2 additional cisterns, a south cistern of 50,000 gallons & another cistern of 500,000 gallons, used for drinking water & fire protection, sourced from the PRASA water system. They have a separate PRASA water meter for this water. The wells are not connected to these other 2 cisterns.

HAM has the ability to use their wells on an "emergency" basis when there is no water from PRASA.

The new flow meters show the PRASA symbol. PRASA replaced the flow meters within the past 2 months. PRASA 2 years ago repaired, re-cased and re-screened (stainless steel) these 2 wells. Alex Campos was the contractor. The 2 wells have been temporarily "out-of-use" for the past year (from 2013 until present), while the North Cistern has been closed for repairs. When the cistern has been repaired, the wells will become active again.

Mr. Martin said that these 2 wells are PRASA wells used specifically for HAM. However, during emergencies, i.e. drought, PRASA can send potable water trucks & fill up their trucks at these wells to provide potable water.

Mr. Martin said that the HAM wells have good quality, except for high levels of Mg & Ca.

SUN_PUERTO_ZEEB_000292

**2. Claro Well (*Puerto Rico Telephone Company, PRTC*)** [Total #1012 Hato Rey]

#562 Ave. Ponce de Leon, Stop #35
Latest Water Franchise- 12/27/2010, good for 5 years

| | |
|---|---|
| Permitted use- | 4,000 gpd; |
| Pump capacity- | 60 gpm; |
| Well depth- | 190' bgs |
| Well Use- | Emergency water use, used for evaporative cooling. |
| | PRTC has a 10K water storage tank on-site. |

**3. Pontifica Universidad Catholica (UCAT)**   Outside delineation area   [Esso #364 Ponce]

#2250 Ave. Las Americas, 00717, Ponce, Puerto Rico, 2 Wells, North well & South well.
787-834-5151 x1507 (*Dept. Coordinacion Ambiental*).
Spoke with Ms. Hilda Santiago on 2/28/14. Sent e-mail info. request on 3/3/14 to
(hilda_santiago@pucpr.edu). On 3/5/14, spoke with Lcda. Diaz, legal counsel for UCAT.
Response letter received on 3/11/14 stated that the wells are used for potable water supply
for up to 9,000 persons, irrigation of "green areas", cleaning & filling the pool.
125,000 gpd, [O-FA-FAINZ-SJ-00022-16052008]
Pumping rate: 86 gpm. Wells used alternately, never at the same time.

**4. CVS- Ponce** [Esso #364 Ponce]

#399 Calle Villa, PR-123 & PR-132
Ponce, PR 00728, 787-843-8431
Spoke with CVS Store Manager, Ms. Shelia Echevaria on 2/28/14. She told us that there
were no wells on-site. They knew there were monitoring wells on-site, when it was used as a
gas service station (SS). Spoke with Assistant Manager Mr. Jose Martinez on 3/4/14. He
said that he was there during the CVS construction & remembers they "put a new floor"
concrete (slab).

Visited the CVS site on 3/6/14. Spoke with another Assistant Manager, Mr. Ricardo Pabon.
He told us there was nothing in the "warehouse". He then took us to the fire pump house
(see photo). The fire pump house provides pressurized water for the emergency fire
sprinkler system. The CVS store was built approximately 2 years ago. Spoke with Ms. Mary
Spray, CVS Corporate on 3/13/14, 787-708-3490. She referred us to the CPH Construction,
the contractor who built the CVS Store.

Spoke with Eng. Carlos Gonzalez, CPH Construction on 3/28/14. He knew that there was a
Toral SS with monitoring wells, he understood that there was a remediation when the UST's
were removed before the CVS store was constructed. He stated that there are no monitoring
wells or other wells that would need a water franchise built on the CVS store site.

**5. Santa Maria Well PRASA** [Esso #364 Ponce]

Active PRASA Well, visited 12-2013, next to day care center, chlorine cylinder, wind sock &
eye wash station.

SUN_PUERTO_ZEEB_000293

6. Coco Well (*school*)           **[Esso #364 Ponce]**

During site visit (12/13), the rector of the school told us that the well is "not-in-use". They get their water from the UCAT Wells. UCAT is located immediately to the east of this school. The UCAT wells are outside the delineation area.

7. Maldonado Well           **[Esso #364 Ponce]**

Ismael Maldonado Well
Cortada St., Bo. San Anton, AAA said out-of-use for 10 years.
"Hole in the ground" was seen by Tony Doss (GSI) 2/14.

8. Belgica (PRASA-inactive) / *Beljica*       **[Texaco #800 Ponce]**

Belgica Well – was not seen, but its location was identified in the Belgica Ward (or Barrio Belgica) corner of Bolivia & Paseo Belgica Streets, immediately west of the Rio Portugués.

Other PRASA Wells that continue west along the same road (Paseo Belgica) from the location of the Belgica Well are: Febles 1, then Atomica (see photo). The Atomica well is located immediately north of the Dr. Pila Hospital.

In the park, on the other side, the "Beljjca Well", supposedly located at the corner of Coloso & Conquista Streets in Urb. Constancia was not seen or identified. Intersections of Coloso & Conquista Streets.

Inside the Urb. Constancia Park, we found an un-locked bathroom that had PRASA water. There was a locked bathroom SSE of the un-locked bathroom inside the same park (see photo).

No well was found. The neighborhood is hooked up to PRASA.

9. a. Atomica (?) [*Brown Report*]     **Outside delineation area**     **[Texaco #800 Ponce]**

PR-1, Ponce by-pass, National Lumber & Hardware
San Rafael Industrial Park, *(787) 284-6840*
1 well, 2 large fire water tanks, PWS-PRDOH.
Supervisor Mr. Carlos Sosa told us on 3/6/14, that the water is used for fire sprinkler system only, Browns' report also says "fire sprinkler use only", Sample taken by CRI.

*Called and left message with Mr. Jose Morro at the National Lumber & Hardware corporate office, at 787-641-8200.*

9. b. Atomica [PRASA]           **[Texaco #800 Ponce]**

This is a PRASA well west of the **Febles 1** PRASA Well [*located on corner of Caracas & Costa Rica Sts.*] & immediately north of Hospital Dr. Pila (see photo).

**10. San Anton 1**           **[Texaco #800 Ponce]**

San Anton #1, out-of-use, supposed "*irrigation well*".
Corner of San Francisco & Fortuna.
Urb. Constancia, AAA metal cover opened (see photo).

11. <u>San Anton North</u>                                                                 [Texaco #800 Ponce]
    San Anton North (well).
    PR-133, Ave. Enita Nazario, Urb. Constancia
    No well was seen (see photo).
    BROWN: "Small shack behind church Pastor indicates no wells on the property"


12. <u>NCHA 1 Well</u>                                                                     [Texaco #800 Ponce]
    1813 Marginal Road, PR-2, Urb. Constancia Gardens,
    Visited this private well on 12/13.Out-of-use, private well.


13. <u>UPR Cayey Wells</u>                                                                 [Esso #242 Cayey]
    University of Puerto Rico, Cayey Campus
    #205 Antonio R. Barceló Street, PR-14
    787-738-2161 X 2221 ossopa@cayey.upr.edu
    2 non-PRASA wells, UPR-1 (USA-5), UPR-2 (USA-7)
    Wells originally drilled by U.S. Army, Property transferred in 1969 to UPR.
    UPR-1 pumping rate 100 gpm (hypochlorite).
    UPR-2 pumping rate 100 gpm (hypochlorite).
    They maintain in operation just one (1) well, never use two (2) wells at the same time.

    UPR-1 screen depth approximately 80' to 100' bgs.
    UPR-2 screen depth approximately 80' to 100' bgs.

    Institutional Water Franchise from DNER, RO27-09-00-FIN-70269 (PR-MTBE-TSWells_001517).

    1 water storage tank 121,550 gal.
    Professor Felix Velasquez is the responsible officer. Request made for information on
    3/5/14. Consent to request given on 3/7/2014. Visited with Professor Velasquez & staff
    3/13/14.

    Stated that USA-4 & USA-6 are sealed closed & out-of-service.

    Actual Population in the UPR-Cayey: Approximately: 3,800 persons

    EPA responded to an information request made in 11/13 under CERCLIS, Re; UPR-Cayey
    wells. It said that the Commonwealth conducted a Preliminary Assessment (PA) & site
    inspection (SI) in 2006. The EPA led an expanded SI in 2010.


14. <u>BOS Well</u>                                                                        [Esso #242 Cayey]
    #88 Matias Soto Street, Baseball stadium owned & operated by the Municipality of Cayey.
    No evidence found for a "BOS Well".
    PRASA water is used for fire water for the sprinkler system, bathrooms & drinking water
    fountains. There is a cistern built under the stadium seats.

    Site visits 3/6/14 & 3/13/14

SUN_PUERTO_ZEEB_000295

- Contact person: Mr. Hipolito Morales.
- The Pedro Montañes Park, baseball stadium, has a PRASA water connection.
- During the inspection it was observed that the facility has a water storage tanks or cistern.
- Water cistern: Approximately 40,000 gallon, under the baseball park stands, used for potable water & fire water.
- CRI sample point: The water sample was obtained for the water cistern (see photo). By using the ladder, CRI took a sample from the cistern above the bathroom sinks.
- Mr. Hipolito, the Administrator of the baseball stadium said he does not know about a well located at the baseball stadium.
- 2 PRASA meters, 1 for the baseball stadium & 1 for Bella Artes.
- Baseball stadium is 4 years old.
- Spoke with Eng. Antonio Gonzalez's secretary, Ms. Paola Santiago on 3/25/14.
- Eng. Gonzalez is the boss of Mr. Hipolito Morales.
- Spoke with Eng. Antonio Gonzalez, Director of the Municipality of Cayey Planning Office, on 3/31/14. He said that there is no well or well system located in, on, or near the Pedro Montañes Baseball Stadium. He said all the water used is from PRASA.


15. CVS [**HTACAR Well**]                                              [Shell #3042 Caguas]
#191 Gautier Benitez Ave.
Contact persons: Manager- Rene Alicea; Asst. Manager- Idoel Pereira
787-209-5205
Site visit 3/17/14
- Cistern used for fire water protection supplied by emergency well (see photo).
- 2nd cistern reportedly sourced by PRASA, used for outside irrigation & water supply.
- There used to be a **Hi-Tech Auto Care** [*HTACAR*] car wash located here before the CVS store was built about ±2 years ago.

16) **Pep Boys, CVDMAT Well**                                          [Shell #3042 Caguas]
#260 Gautier Benitez Ave. {Km. 375}
Site visit 3/17/14
- Contact person: Ms. Neysa Sotomayor, Manager, 787-747-2700
- No knowledge of well, fire water pump used for fire sprinkler system, (emergency use).
- It appeared that the fire water pump is "out-of-use".
- It appeared that the well has been disconnected from the fire water pump & is also "out-of-use" (see photo).
- PRASA water connection used for site.

17) **Consolidated Mall - Piezo Caguas-**                               [Shell #3042 Caguas]
#202 Gautier Benitez Ave., corner of San Carlos Ext. & San Felipe.
Site Visit, 3/17/14
Contact person: Ms. Alodia Carrion, Mall Administrator Secretary
787-703-6065

- Fire water pump used for fire sprinkler system throughout mall (emergency use).
- Large, vertical water tank next to fire water pump
- USGS Piezometer [*Caguas-Juncos 11*] next to large, vertical water tank, as mentioned above.
- Large number of potentially hazardous materials drums on site.
- PRASA provides water service to mall.


18) **Angora 4 Well** (*Dept. of Justice & Dept. of Family*) **Caguas**          [Shell #3042 Caguas]

  #162 Gautier Benitez Ave., Bo. Cañabon, Sector San Alfonso
  Site Visit, 3/1714, (see photo).
- Private well used for drinking water on an emergency basis, when PRASA cannot supply water.
- 20 gpm.
- 4,000 gallon, horizontal emergency water storage tank.
  Water Franchise 3-31-2010, O-FA-FACO3 SJ-00036 2603 2009
  Permitted 1,710 gpd. Rafael Hernandez Barreras-owner. (PR_MTBE-TSWELLS-00751).

# EXHIBIT E



McDermott
Will & Emery

Boston  Brussels  Chicago  Düsseldorf  Frankfurt  Houston  London  Los Angeles  Miami

Milan  Munich  New York  Orange County  Paris  Rome  Seoul  Silicon Valley  Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Lisa Gerson
Attorney at Law
lgerson@mwe.com
+1 212 547 5769

April 15, 2014

BY ELECTRONIC MAIL AND LNFS

Tracey O'Reilly, Esq.
Miller, Axline & Sawyer PC
1050 Fulton Avenue, Suite 100
Sacramento, CA 95825

**Re:    Master File C.A. No. 1:00-1898 (SAS), M21-88, MDL No. 1358 (SAS)**
*Commonwealth of Puerto Rico, et al. v. Shell Oil Co., et al.* No. 07-CIV-10470

Dear Ms. O'Reilly,

This letter is in response to your April 14, 2014 letter regarding certain expert reliance materials for Peter Zeeb and Raul Colon Vicenty.  The materials identified in your letter were provided by CD to Plaintiffs yesterday – *i.e.*, the date for production of reliance materials pursuant to CMO 112.  Your requests are addressed in more detail below.

In addition, your letter states that "many of defendants' site specific experts" have received reports not produced in discovery.  However, your letter identifies materials only for Mr. Zeeb and Mr. Colon Vicenty.  If there are additional reliance materials that Plaintiffs believe have not been produced, please identify them and we will respond promptly.

Defendants respond below to your specific requests:

Vicenty (Shell 3042)

- The Corrective Action Plan for Site 3042 is included among Mr. Colon Vicenty's reliance materials and was included on a CD sent from McConnell Valdes to Plaintiffs yesterday.

Zeeb (Esso 242)

- Documents related to the personal communication with Alpha Engineering were included among Mr. Zeeb's reliance materials and included on a CD sent from Beveridge & Diamond to Plaintiffs yesterday. The file is named Alpha Engineering Well Reliance Information Update.pdf.

Tracey O'Reilly, Esq.
April 15, 2014
Page 2

Zeeb (Esso 364)

- The personal communication with ERTEC was by telephone; there is no documentation to produce.

- The ERTEC HVE progress report is included among Mr. Zeeb's reliance materials and was included on a CD sent from Beveridge & Diamond to Plaintiffs yesterday.  It also was produced separately to Plaintiffs today by Archer & Greiner.

Zeeb (Shell 3042)

- Documents related to the personal communication with Alpha Engineering were included among Mr. Zeeb's reliance materials and included on a CD sent from Beveridge & Diamond to Plaintiffs yesterday. The file is named Alpha Engineering Well Reliance Information Update.pdf.

- The Anderson-Mullholland Supplemental Environmental Site Assessment Report was attached to the report of R. Colon Vicenty as Appendix 3, served April 7, 2014. (LNFS No. 55264152).  There is a typo in Mr. Zeeb's references listing this report as dated June 2014.  The correct date is April 2014.  This report also is included on the CDs sent to Plaintiffs yesterday by both McConnell Valdes and Beveridge & Diamond.

- As noted above, the Corrective Action Plan for Site 3042 was included on the CD sent to Plaintiffs yesterday by McConnell Valdes.  It also is included on the CD sent to Plaintiffs by Beveridge & Diamond.

Zeeb (Texaco 800)

- The GSI Environmental Supplemental Groundwater Investigation Report was produced to Plaintiffs by Chevron Puerto Rico, LLC on February 14, 2014, and a courtesy copy was sent by email to Mr. Axline on the same day.  The report also was included among the reliance materials sent to you from King and Spalding yesterday for the expert report of Mssrs. Connor and Daus on behalf of Chevron Puerto Rico, LLC, as well as included in Mr. Zeeb's reliance materials and included on a CD sent from Beveridge & Diamond to Plaintiffs yesterday.

Finally, your letter requests the above-listed reports and "any drafts and associated sampling data."  To the extent such materials comprise any defense expert's reliance materials, we believe they have been produced.  Defendants also are aware of our continuing obligation to supplement discovery, and will continue to do so as needed.

Please let me know if you have any question.

# EXHIBIT F



E-SERVICE
55329605
Apr 21 2014
03:39PM
File & ServeXpress



Paula Schauwecker
477 Madison Ave.
15th Floor
New York, NY 10022
Direct:(212) 702-5400
Fax:(212) 702-5450
pschauwecker@bdlaw.com

April 21, 2014

**VIA FEDEX AND LNFS**

Michael Axline, Esq.
Miller, Axline & Sawyer
1050 Fulton Avenue
Suite 100
Sacramento, CA 95825-4272

Re:   *Commonwealth of Puerto Rico, et al. v. Shell Oil Co., et al.,* 07-CV-10470
      Reliance Materials for Non-Site-Specific Expert Report of Dr. Peter Zeeb

Dear Michael:

Enclosed please find a disc containing the reliance materials for the April 14, 2014 Non-Site-Specific Expert Report of Dr. Peter Zeeb, Bates labeled SUN_PUERTO_ZEEB_005213 – 018683.  In addition, please find enclosed Attachment A, a list that provides descriptions for the photographs produced on April 14, 2014 as part of Dr. Zeeb's Reliance Materials for his April 7, 2014 Site-Specific Expert Report. Please note that there were certain photographs in the production that were blurry, camera misfires or not related to the trial sites or Dr. Zeeb's report. Those were inadvertently produced and are denoted as "Produced in Error" on Attachment A and may be disregarded. All of the relevant photographs are properly cross-referenced on Attachment A.

Please contact me if you have any questions or wish to discuss.

Sincerely,

*Paula J. Schauwecker*

Paula Schauwecker

# EXHIBIT G




E-SERVICE
55509662
May 28 2014
03:34PM
File & ServeXpress

Paula Schauwecker
477 Madison Ave.
15th Floor
New York, NY 10022
Direct:(212) 702-5400
Fax:(212) 702-5450
pschauwecker@bdlaw.com

May 28, 2014

**VIA FEDEX AND LNFS**

Michael Axline, Esq.
Miller, Axline & Sawyer
1050 Fulton Avenue
Suite 100
Sacramento, CA 95825-4272

      Re:    *Commonwealth of Puerto Rico, et al. v. Shell Oil Co., et al.,* 07-CV-10470
              Defendants' Responses to Plaintiffs' Notice of Deposition of Dr. Peter Zeeb

Dear Michael:

      Enclosed please find Defendants' Responses to Plaintiffs' April 25, 2014 Notice of
Deposition of Dr. Peter Zeeb with Requests for Production of Documents and Videotaping, and a
disc containing certain documents referenced therein, Bates labeled
SUN_PUERTO_ZEEB_018684 – 020173. Plaintiffs did not serve a revised Notice with the
agreed-upon dates for the deposition of June 2-3, 2014, so we are responding to the original
Notice even though the date noticed is incorrect.

      Please contact me if you have any questions or wish to discuss.

                  Sincerely,

                  Paula Schauwecker

PJS/rcs

Enclosure

cc:   All Counsel of Record (via LNFS)

# EXHIBIT H

| Is Well Pumping in Revised BROWN Model? | Is Well Creating Capture Zone? | Trial Site | PWS Information | | Well Identification Information | | Location in Relation to Trial Site | | Well Construction | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | PWS Name | Well Name | Other alias names | Distance from Trial Site | Direction | Hole Depth (ft) | Well Depth (ft) | Screen Interval | Producing Formation | Pumping rates |
| Y (10 gpm) | Y (within capture zone of FAUT Well) | Caguas 3042 | N/A - Commercial | ANGORA 4 WELL, CAGUAS, P | RAFAEL HERNANDEZ BARRERAS, " | 4590 ft | NE | 125' | 103' | 63'-103' | Med. Brown to light brown sand stone | 2400 GPD / 2182 GPD [PR-MTBE-DNER_0000001] |
| Y (10 gpm) | Y | Caguas 3042 | N/A - Commercial | CVDMAT | VDA. MATANZOS C. WELL | 3210 ft | NE | 80 | | | | Discharge=20 (no unit) |
| Y (10 gpm) | Y | Caguas 3042 | N/A - Commercial | FAUT WELL, CAGUAS, PR | Furiel Auto Corp | 4790 ft | NE | 535 | 535 | | | 1750 GPD [PR-MTBE-DNER_0000001] |
| No (Brown uses it to demonstrate leakage for Shallow GW Flow Model "Off-Site Leakage Rate = 0.25 gpm at HREG-1 well") | No | Caguas 3042 | N/A - Unused | HREG-1 well | HOSP. REGIONAL 1 WELL | 1040 ft | N | | | | | |
| Y (1 gpm) | N (outside capture zone) | Caguas 3042 | N/A - Commercial | HTACAR CAGUAS, PR | Hi-Tech Auto Care | 4390 ft | NE | | | | | 3367 GPD [PR-MTBE-DNER_0000001] |
| Y (10 gpm) | N (outside capture zone) | Caguas 3042 | N/A - Observation | PIEZOMETER CAGUAS | PIEZOMETER CAGUAS-JUNCOS 11 | 3210 ft | E | | 110 | 66-96 | | |
| N (0 gpm) | Y (within capture zone) | Caguas 3042 | N/A - Domestic | RDIE WELL, CAGUAS, PR | DIEZ R. WELL/ Ramon | 4520 ft | NE | 265 | 265 | 38'-265' | Igneous rock | 0.015 MGD/ |
| Y (10 gpm) | Y | Caguas 3042 | N/A - Commercial | SIZ WELL, CAGUAS, PR | Multisystems Realty of Caguas S.E. and/or Multisystems Restaurants | 3720 ft | NE | | | | | 7200 GPD [PR-MTBE-DNER_0000001] |
| | | Cayey 242 | N/A - Unused | BAR 1 WELL, CAVEY, PR | | 1780 ft | NE | | | | | |
| | | Cayey 242 | N/A - Unused | BAR 2 WELL, CAVEY, PR | | 2460 ft | NE | | | | | |
| | | Cayey 242 | Cayey Urbano/ Cayey Farallon? ROGs identified as non-PRASA Public well | BOS WELL, CAYEY, PR | BOSH WELL (or Finca Bosch) | 1870 ft | NW | 100 | | | | |
| | | Cayey 242 | N/A - Non Public | Cayey Site | | 230 ft | NNW | | | | | |



SUN_PUERTO_ZEEB_019184

| | MTBE Sampling | | From 1092 list/USGS/BROWN_00000001 | | DNER | DOH "Availibility" | Well Status | |
|---|---|---|---|---|---|---|---|---|
| Well Name | Highest MTBE Well Detection | 2013 Sampling MTBE PIW Detection (ug/L) | Site Use | Well Type | DNER Well Type [PR-MTBE--DNER_0000001] | (as of 2007) [PR-MTBE_ESI_0038757] | Well Status | Well Status Source |
| ANGORA 4 WELL, CAGUAS, P | ND (2/18/04) | - | Withdrawal | Commercial | Commercial/Commercial - Emergency | | In service | USGS |
| CVDMAT | ND (11/13) | ND (11/13) | Destroyed | Unused (Commercial per Brown) | | | Unused per USGS; In Service (Per Brown supply well at a PepBoys) | USGS; Brown |
| FAUT WELL, CAGUAS, PR | 10 ug/L (12/17/07) | - | Withdrawal | Commercial | Commercial (described as "car washing and restaurant") | | In service per USGS, however did not observe evidence of a supply well on this property. | USGS, Site Visit |
| HREG-1 well | | | Unused | Unused | | | Unused | USGS |
| HTACAR CAGUAS, PR | ND | ND (12/13) | Withdrawal | Commercial | Commercial | | In service | USGS, Site Visit |
| PIEZOMETER CAGUAS | ND (12/13) | ND (12/13) | Observation | Unused | | | | |
| RDIE WELL, CAGUAS, PR | - | - | Withdrawal | Domestic | Commercial | | In service per USGS, however did not observe | USGS, Site Visit |
| SIZ WELL, CAGUAS, PR | ND | ND (12/13) | Withdrawal | Commercial | Commercial | | In service (emergency use only per site operator) | Site Visit |
| BAR 1 WELL, CAVEY, PR | - | - | Unused | Unused | | | Unused | USGS |
| BAR 2 WELL, CAVEY, PR | - | - | Unused | Unused | | | Unused | USGS |
| BOS WELL, CAYEY, PR | ND | ND (12/13) | Withdrawal | Public Supply | | other | In service per USGS, however did not observe evidence of a supply well on this property. Listed as "Other" in SWAP | USGS, Site Visit; PR-MTBE_ESI_0038531; PR-MTBE_ESI_0038757 |
| Cayey Site | ND | ND (12/13) | Not Listed | Unknown (per Brown) | | | Unknown | Brown |

SUN_PUERTO_ZEEB_019185

| Is Well Pumping In Revised BROWN Model? | Is Well Creating Capture Zone? | Trial Site | PWS Information | | Well Identification Information | | Location in Relation to Trial Site | | Well Construction | | | | |
| | | | PWS Name | Well Name | Other alias names | Distance from Trial Site | Direction | Hole Depth (ft) | Well Depth (ft) | Screen Interval | Producing formation | Pumping rates |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Y (1 gpm) | Y | Ponce 364 | N/A - Non Public | COCO WELL, PONCE, PR | | 5150 ft | SE | 135 | 125 | 30 to 125 | | |
| Y (100 gpm) | Y | Ponce 364 | Ponce Urbano | SANTA MARIA WELL, PONCE, | PZ SANTA MARIA; Santa Maria | 5090 ft | SE | | | | | 0.01 MGD (PR-MTBE_345512) 117 GPM (PR-AAA_005520) |
| Y (shallow: 0.25 gpm; regional: 1 gpm) | Y | Ponce 364 | N/A - Commercial | CVS Well | | 170 ft | SSW | | | | | |
| | | Ponce 364 | N/A - Unused | Reparada Domestic Well | | 3470 ft | SSE | | | | | |
| | | Ponce 364 | N/A - Industrial | Sprague Well | | 5110 ft | S | 220 | 218 | 158-218 | | Discharge=150 (no unit) |
| | | Ponce 800 | Ponce Urbano | Belgica | Pozo Belgica | 2690 ft | SW | | | | | |
| Y (10 gpm) | Y (within capture zone of Beljica Well) | Ponce 800 | Ponce Urbano | FEBLES 1 WELL, PONCE, PR | PZ FEBLES | 3040 ft | WSW | 135 | | | | 0.30 MGD |
| Y (1 gpm) | N (outside capture zone) | Ponce 800 | N/A - Domestic | NCHA 1 WELL, PONCE, PR | N.Chardon 1 Well, (PR-MTBE_ESI_0024731) | 2890 ft | S | 130 | 130 | 90 to 130 | | Discharge(unknown unit)=15 |
| Y (100 gpm) | Y | Ponce 800 | N/A | Beljica Well | | 1120 ft | SSE | | | | | |
| Y (5 gpm) | N (outside capture zone) | Ponce 800 | N/A - Irrigation | Estancia Well | | 2770 ft | SE | 150 | 149.2 | | | Discharge=1442 (no unit) |
| Y (5 gpm) | N (outside capture zone) | Ponce 800 | N/A - Irrigation | Isabela BTR Well | | 2770 ft | SE | | | | | |
| N (0 gpm) | Y (within capture zone of Beljica Well) | Ponce 800 | Ponce Urbano | Ismael Maldonado | PZ ISMAEL MALDONADO | 1310 ft | SW | | | | | |
| Y (10 gpm) | Y (within capture zone of Beljica Well) | Ponce 800 | N/A - Industrial | Luciano 1 Well | | 2580 ft | WSW | 90 | 90 | | | Discharge=40 (no unit) |
| Y (shallow: 1 gpm; regional: 5 gpm) | Y | Ponce 800 | N/A - Irrigation | San Anton North Well | | 260 ft | SSE | 85 | 61 | | | Discharge=800 (no unit) |

SUN_PUERTO_ZEEB_019188

| Well Name | MTBE Sampling | | From 1092 list/USGS/BROWN_00000001 | | DNER | DOH "Availibility" | Well Status | |
|---|---|---|---|---|---|---|---|---|
| | Highest MTBE Well Detection | 2013 Sampling  MTBE PIW Detection (ug/L) | Site Use | Well Type | DNER Well Type [PR-MTBE-DNER_0000001] | (as of 2007) [PR-MTBE_ESI_0038757] | Well Status | Well Status Source |
| COCO WELL, PONCE, PR | - | - | Withdrawal | Domestic per USGS, at secondary school per site visit | | | Emergency (per site visit) | USGS, Site Visit |
| SANTA MARIA WELL, PONCE, | ND in 2006 | - | Withdrawal | Public Supply | | permanent | In service; Permanent | PR-MTBE_ESI_0038531; PR-MTBE_ESI_0038757; Site Visit |
| CVS Well | ND (12/13) | ND (12/13) | Not Listed | Commercial (per CRI) | | | Active (per CRI) | Brown |
| Reparada Domestic Well | ND (12/13) | ND (12/13) | Destroyed | Unused | Domestic | | Unused | USGS |
| Sprague Well | - | - | WITHDRAWAL | Industrial | | | In Service | USGS |
| Belgica | ND | - | Unused | Unused | | other | Unused | USGS; PR-MTBE_ESI_0038531; PR-MTBE_ESI_0038757 |
| FEBLES 1 WELL, PONCE, PR | ND | ND (12/13) | WITHDRAWAL | PUBLIC SUPPLY | | permanent | In service; Permanent | PR-MTBE_ESI_0038531; PR-MTBE_ESI_0038757 |
| NCHA 1 WELL, PONCE, PR | - | - | WITHDRAWAL | DOMESTIC | | | Unused | Site Visit |
| Beljica Well | ND (12/13) | ND (12/13) | Not Listed | Public Supply (per Brown) | | | Unknown; did not observe evidence of a supply well on this property. | Site Visit |
| Estancia Well | - | - | WITHDRAWAL | Irrigation | | | In Service | USGS |
| Isabela BTR Well | - | - | Withdrawal | Irrigation | | | In Service | USGS |
| Ismael Maldonado | - | - | Not Listed | Public (per Brown) | | other | Abandoned; Closed as of 2005 | PR-MTBE_ESI_0038531; PR-MTBE_ESI_0038757; Brown |
| Luciano 1 Well | - | - | WITHDRAWAL | INDUSTRIAL | | | In Service | USGS |
| San Anton North Well | - | - | WITHDRAWAL | Irrigation | | | In Service | USGS |

SUN_PUERTO_ZEEB_019189

**Caguas Trial Site**

## Hydrogeology

| | |
|---|---|
| OB: | Alluvial sediment overlying weathered and competent bedrock. 20-180 ft thick, avg of ~80 ft |
| BR: | not encountered at site. Underlying formations reported to be San Lorenzo Batholith, Caguas Pluton.<br>Also Robles Fm (ash and lapilli-sized tuff). |
| Typ Producing Fm: | Alluvial overburden and underlying zone of weathered bedrock. Alluvium is layered and anisotropic.<br>Regionally characterized by clay unit up to ~40 ft thick; underlying sandier sub-unit is GW source. |
| GW Flow: | Regionally towards the northeast. Perched GW exists on site with DTW < 13 ft bgs.<br>Ignoring perched GW, on-site water-level measurements suggest northeast flow. |
| NAPL: | NAPL observed periodically at MW-1 and MW-2 between 2004 and 2008. Thickness ranged from a film to 0.08 ft.<br>NAPL observed at GP-3 (thickness = 0.1 ft) in 2013. |

| MTBE Detections: | Max | MR Max |
|---|---|---|
| | (concentration and date and location) | |
| Soil | 615 ug/kg (S-14, 19.2-20.4 ft bgs, 12/2/13 - also MR Max) | |
| GW | 48700 ug/L (B-02, 8/17/05) | 5842 ug/L (GW-7, 12/20/13) |

| TBA Detections: | Max | MR Max |
|---|---|---|
| | (concentration and date and location) | |
| Soil | 2541 ug/kg (S-14, 19.2-20.4 ft bgs, 12/2/13 - also MR Max) | |
| GW | 28650 ug/L (GW-14, 12/18/13) | also MR Max |

## Releases

| | |
|---|---|
| July 1988: | Release of unknown quantity of unleaded gasoline. Two drums of water and gasoline collected, approx 10 gal gas. |
| June 1998: | Accidental rupture in product line during anode install. Less than 1 gal of product estimated to spill onto soil |
| November 1998: | TPHo detected in 2/6 soil samples after removal of 1000-gal waste oil UST |
| August 1999: | Based on results of tank removal report from above UST, site placed on LUST list |
| November 2001: | TPHg and total BTEX detected in 3/4 soil samples and 1 water sample after removal of three gasoline USTs |
| July - Sept 2004: | NAPL detected in MW-1 during well gauging activities |
| 2004 - 2008: | NAPL detected periodically in MW-1 and MW-2. Thickness ranged from film to 0.08 ft |
| 2004 - 2013: | Leaks in and around the fuel dispensers from hoses, o-rings, and filters |
| August 2005: | MTBE detected in a grab groundwater sample at 48700 ug/l from B-02 |
| January 2011: | MTBE detected in a soil sample from the boring of GW-5 at 7.5 - 8 ft bgs at 11.0 ug/kg |
| April 2013: | MTBE detected in groundwater samples at 109-9470 ug/l from 3 MWs. TBA not detected. |
| December 2013: | MTBE detected in 13/18 groundwater samples (2/3 dups), max 5842 ug/L. TBA in 11/17 (2/3 dups), max 28650 ug/L |

## Remediation

| | |
|---|---|
| July 1998: | 10 gal of gasoline recovered with water in 2 drums. 20 drums removed by Clear Ambient (contents unclear) |
| 1998: | Closure and removal of waste oil UST. |
| November 2001: | Closure/removal of 3 gas/diesel USTs. 375 yd$^3$ soil disposed off-site. 6418 gal gas+water disposed/recycled. |

## Plaintiff Identified Receptors

| Supply Wells: | Angora 4 | screen 63-103 ft. approved to pump 2400 gpd, 5 d/wk; 20 gpm pump. MTBE ND in 2004. In service. |
|---|---|---|
| | FAUT | depth 535 ft. planned 12 gpm, 5 hr/d, 5 d/wk; 20 gpm pump. MTBE 10 ug/L in 2007. Not in service. |
| | HTACAR | no depth/screen info. Emergency fire suppression supply. MTBE, TBA, BTEX ND in 2013. In service. |
| | SIZ | no depth/screen info. Emergency use; can pump 7200 gpd. MTBE, TBA, BTEX ND in 2013. In service. |
| | RDIE | depth 265 ft. authorized 500 gpd. Unclear water use. Not sampled. |
| | CVDMAT | depth 80 ft. permitted 20 gpm. Emergency fire suppression, disconnected. MTBE, TBA, BTEX ND in 2013. |
| Piezometer Caguas | | depth 110 ft. USGS monitoring well, not a production well. MTBE, TBA, BTEX ND in 2013. |
| | HREG-1 wel | no depth/screen info. Unused well. |

SUN_PUERTO_ZEEB_020108

**Caguas Trial Site**

### Water Resources

PRASA delivers water mainly from surface water

Caguas Sur has only 2 GW sources, neither listed as sources in 2012 in CCRs.

Caguas Norte has several GW sources, but <1% of safe yield

ID-ed receptor wells do not represent significant extraction volume, nor does any well supply potable water to large populations

PRASA systems have interconnections w/ other public water supplies

One MTBE detection (10 ug/L, FAUT well, 2007) but no other detections. Multiple PWS samples 2002-2006 in Caguas Sur, all ND for MTBE.

### Surface Water

Rio Turabo is ultimate discharge zone (Southeast portion of delineation).

Closest surface water body to Site is an unnamed creek approx 790 ft northwest (sidegradient) of Site.

SUN_PUERTO_ZEEB_020109

Ponce 800 Trial Site

<div style="border:1px solid">

### Hydrogeology

OB:                     alluvial fan-delta sediments. 200-2000 ft thick, thickening towards the coast.
                        Discrete and discontinuous lenses of sand and gravel (fan-delta, up to 70 ft thick) within fines (inter-fan deposits)

BR:                     not encountered at Site. Underlying sequences are Ponce Limestone, underlain by Juana Diaz Fm (carbonate)

Typ Producing Fm:      Site and areas north: Ponce Limestone
                        South (including southern portion of Delineation): sand and gravel lenses within the alluvium. Anisotropic

GW Flow:                Regionally towards the south (coast) and southeast. On-site between southwest and southeast.

NAPL:                   has not been observed

| MTBE Detections: | Max | MR Max |
|---|---|---|
| | (concentration and date and location) | |
| Soil | 1.37 mg/kg (SB-104 25-27 ft bgs 10/22/09) | 0.11 mg/kg (SB-202, 25-27 ft bgs, 8/26/10) |
| GW | 15500 ug/L (MW-103, 9/8/10) | 5450 ug/L (MW-103, 2/25/14) |
| TBA Detections: | Max | MR Max |
| | (concentration and date and location) | |
| GW | 1870 ug/L (GP3 P, 9/12/13) | <10 ug/L (B-1 through B-7, 1/2014) |

### Releases

February 1985:          Three leaks found during replacement of product piping. Operator estimates loss of 15000 gal in 2 yrs.
Apr 1989 - May 1991:   Operator reports fueling related spills and problems with leaking hoses
April 2006:             Removal of 2 gas USTs. Soil samples contained TPHg, BTEX.
October 2009:           Three soil samples with MTBE (max 1.37 mg/kg). Max MTBE in groundwater = 10900 ug/L
September 2013:         3 discrete depth groundwater samples with MTBE (max 11.5-18.9 ug/L). TBA in two samples (max 1730-1870 ug/L)

### Remediation

April 2006:             after removal of 2 USTs, unidentified volume of excavated soil disposed off-site in BFI Industrial landfill, Ponce
April 2011:             Application of ORC socks in 6 wells. ORC socks replaced in Sept 2011; ORC sock installed in 7th well in Sept 2011.
April 2012:             HVE event (3.5 hrs). Estimated removal of 2.90 lbs VOCs, 495 gal contact water. No NAPL detected.
August 2013:            Implementation of May 2013 CAP. 4 injection events at 31 locations of RegenOx/PetroCleanze, along with HVE.

### Plaintiff Identified Receptors

Supply Wells:

| | | |
|---|---|---|
| Ismael Maldonado | no depth/screen/pump info. Not sampled. Out of service. |
| Beljica | no depth/screen/pump info. Location/presence unconfirmed. MTBE and TBA ND in 2013 |
| Febles 1 | depth 135 ft. pump up to 0.3 MGD. MTBE ND in Jan, Apr, Jul 2002. MTBE and TBA ND in 2013. In service. |
| NCHA 1 | depth 130 ft, screen 90-130 ft. no pump info. Not sampled. Apparently out of service. |
| Isabela BTR | no depth/screen/pump info. Irrigation well. Not sampled. In service. |
| Estancia | depth 149.2 ft. no pump info. Irrigation well. Not sampled. In service. |
| San Anton North | depth 61 ft. no pump info. Irrigation well. Not sampled. In service. |
| Luciano 1 | depth 90 ft. no pump info. Industrial well. Not sampled. In service. |

### Water Resources

PRASA delivers water primarily from surface water sources.
Ponce Urbano  has 2 filtration plants. Several GW sources have contributed water, but in total = 10% of safe yield
Several wells within delineation have been IDed for public supply, all > 1000 ft from Site.
Ponce Urbano transfers out 0.72 MGD to Guayanes Service area, planned transfers in from two and out from two others.
No MTBE detections.

</div>

SUN_PUERTO_ZEEB_020116

**Ponce 800 Trial Site**

**Surface Water**

Rio Bucana (east) and Rio Portugues (west) are nearby and converge south of the Site (just outside delineation)

Both rivers have flood-prevention works installed - limited hydraulic communication w/ subsurface.

nearest SW body is an unnamed tributary to Rio Portugues

SUN_PUERTO_ZEEB_020117

# EXHIBIT I

**Source Material for Peter Zeeb "Cheat Sheet" Exhibit #23**

| P. Zeeb Exhibit #23 Column Headings | Source of Information for Exhibit #23 At Texaco 800 and Shell 3042 Trial Sites[1] | Date Information Provided to Plaintiffs, if Applicable, or Provided By Plaintiffs or Their Expert A. Brown |
|---|---|---|
| Is Well Pumping in Revised BROWN Model? | **Texaco 800**<br>April 28 A. Brown Revised Expert Report, p. 131<br><br>**Shell 3042**<br>April 28 A. Brown Revised Expert Report, Appendix E-4 | This information is contained in A. Brown's April 28, 2014 report and was obtained by P. Zeeb from A. Brown.<br><br>This information is contained in A. Brown's April 28, 2014 report and was obtained by P. Zeeb from A. Brown. |
| Is Well Creating Capture Zone? | **Texaco 800**<br>April 28 A. Brown Revised Expert Report, pp 131-32<br><br>**Shell 3042**<br>April 28 A. Brown Revised Expert Report, Appendix E-4 | This information is contained in A. Brown's April 28, 2014 report and was obtained by P. Zeeb from A. Brown.<br><br>This information is contained in A. Brown's April 28, 2014 report and was obtained by P. Zeeb from A. Brown. |

---

[1] The wells at issue at each trial site include:

Shell #3042:  Angora, VDA. Matanzos C. Well (CVDMAT Well), Furiel Auto Corp. Well (Faut Well), Hospital Regional 1 Well (HREG 1 Well), High Tech Auto Care Well (HTACAR Well), Piezometer Caguas-Juncos 11, Diez R. Well/ Ramon Rosario Diaz (RDIE Well), Multisystems Realty of Caguas S.E. and/or Multisystems Restaurants Inc. (Sizzler) (SIZ Well).  Note that the HREG 1 Well was not mentioned in the 4/7/2014 P. Zeeb Expert Report but was mentioned by A. Brown in his 4/28/2014 Revised Expert Report on page 192 and Figure 4.3.

Texaco #800:  Ismael Maldonado, Belgica, Febles 1, NCHA 1, Beljica, Estancia, Isabela BTR, Luciana 1, San Anton North

| P. Zeeb Exhibit #23 Column Headings | Source of Information for Exhibit #23 At Texaco 800 and Shell 3042 Trial Sites[1] | Date Information Provided to Plaintiffs, if Applicable, or Provided By Plaintiffs or Their Expert A. Brown |
|---|---|---|
| Distance from Trial Site / Direction | **Texaco 800**<br>April 28 A. Brown Revised Report<br>Figures 5.3, 5.4<br><br>April 7 P. Zeeb Report<br>Appendix A-4, pp. 4-6<br><br>**Shell 3042**<br>April 28 A. Brown Revised Report<br>Figure 4.3<br><br>April 7 P. Zeeb Report<br>Appendix A-3, pp. 5-6 | This information is contained in Mr. Brown's April 28, 2014 Report.<br><br>This information was also provided to Plaintiffs on April 7, 2014.<br><br><br>This information is contained in Mr. Brown's April 28, 2014 Report.<br><br>This information was also provided to Plaintiffs on April 7, 2014. |
| Hole Depth (ft) / Well Depth (ft) / Screen Interval / Producing Formation / Pumping Rates | **Texaco 800**<br>April 7 P. Zeeb Expert Report, Appendix A-4<br><br>PR-MTBE_ESI_0027431<br><br><br>**Shell 3042**<br>April 7 P. Zeeb Expert Report, Appendix A-3<br><br>PR-MTBE-TSWells_000949 – 954<br>PR-MTBE-DNER_0000001 | This information was provided to Plaintiffs on April 7, 2014.<br><br>This document was produced by Plaintiffs to Defendants prior to the start of expert discovery.<br><br>This information was provided to Plaintiffs on April 7, 2014.<br><br>These documents were produced by Plaintiffs to Defendants prior to the start |

| P. Zeeb Exhibit #23 Column Headings | Source of Information for Exhibit #23 At Texaco 800 and Shell 3042 Trial Sites[1] | Date Information Provided to Plaintiffs, if Applicable, or Provided By Plaintiffs or Their Expert A. Brown |
|---|---|---|
| | PR-MTBE-TSWells_000727 | of expert discovery. |
| Highest MTBE Well Detection / 2013 Sampling  MTBE PIW Detection (µg/L) | **Texaco 800** April 7 P. Zeeb Expert Report, Appendix A-4, pp. 6 | This information was provided to Plaintiffs on April 7, 2014. |
| | **Shell 3042** April 7 P. Zeeb Expert Report, Appendix A-3, pp. 5-6 | This information was provided to Plaintiffs on April 7, 2014. |
| Site Use / Well Type | **Texaco 800** April 28 A. Brown Revised Report pp. 86 | This information is contained in Mr. Brown's  April 28, 2014 Report. |
| | BROWN_00000001 USGS 2011 Well Inventory | This access database containing information obtained from USGS was produced to Defendants by Plaintiffs with A. Brown's reliance materials on January 31, 2014. |
| | April 7 P. Zeeb Expert Report, Appendix A-4, p. 5-6 | This information was also provided to Plaintiffs on April 7, 2014. |
| | **Shell 3042** April 28 A. Brown Revised Report p. 51 | This information is contained in Mr. Brown's  April 28, 2014 Report. |

DMSLIBRARY01:23369037.1

| P. Zeeb Exhibit #23 Column Headings | Source of Information for Exhibit #23 At Texaco 800 and Shell 3042 Trial Sites[1] | Date Information Provided to Plaintiffs, if Applicable, or Provided By Plaintiffs or Their Expert A. Brown |
|---|---|---|
| | BROWN_00000001 USGS 2011 Well Inventory | This access database containing information obtained from USGS was produced to Defendants by Plaintiffs with A. Brown's reliance materials on January 31, 2014. |
| | April 7 P. Zeeb Expert Report, Appendix A-3, p. 5-6 | This information was also provided to Plaintiffs on April 7, 2014. |
| DNER Well Type | **Texaco 800** PR-MTBE-DNER_0000001 | This document was produced by Plaintiffs to Defendants prior to the start of expert discovery. |
| | **Shell 3042** PR-MTBE-DNER_0000001 | This document was produced by Plaintiffs to Defendants prior to the start of expert discovery. |
| DOH "Availability" | **Texaco 800** PR-MTBE_ESI_0038757 | This document was produced by Plaintiffs to Defendants prior to the start of expert discovery. |
| | **Shell 3042** PR-MTBE_ESI_0038757 | This document was produced by Plaintiffs to Defendants prior to the start |

| P. Zeeb Exhibit #23 Column Headings | Source of Information for Exhibit #23 At Texaco 800 and Shell 3042 Trial Sites[1] | Date Information Provided to Plaintiffs, if Applicable, or Provided By Plaintiffs or Their Expert A. Brown |
|---|---|---|
| | | of expert discovery. |
| Well Status<br><br>Well Status Source | **Texaco 800**<br>April 7 P. Zeeb Report,<br>Appendix A-5, pp. 4-6 | This information was provided to Plaintiffs on April 7, 2014. |
| | BROWN_00000001<br>USGS 2011 Well Inventory | This access database containing information obtained from USGS was produced to Defendants by Plaintiffs with A. Brown's reliance materials on January 31, 2014. |
| | PR-MTBE_ESI_0038531<br>PR-MTBE_ESI_0038757 | These documents were produced by Plaintiffs to Defendants prior to the start of expert discovery. |
| | April 28 A. Brown Revised Report,<br>p. 103, Figure 4.3 | This information is contained in Mr. Brown's  April 28, 2014 Report. |
| | **Shell 3042**<br>PR-MTBE_ESI_0024731 | This document was produced by Plaintiffs to Defendants prior to the start of expert discovery. |
| | April 7 P. Zeeb Report,<br>Appendix A-3, pp. 5-6 | This information was provided to Plaintiffs on April 7, 2014. |
| | April 28 A. Brown Revised Report, | This information is contained in Mr. |

DMSLIBRARY01:23369037.1

| P. Zeeb Exhibit #23 Column Headings | Source of Information for Exhibit #23 At Texaco 800 and Shell 3042 Trial Sites[1] | Date Information Provided to Plaintiffs, if Applicable, or Provided By Plaintiffs or Their Expert A. Brown |
|---|---|---|
| | p. 77, Figure 3.3<br><br>BROWN_00000001<br>USGS 2011 Well Inventory | Brown's  April 28, 2014 Report.<br><br>This access database containing information obtained from USGS was produced to Defendants by Plaintiffs with A. Brown's reliance materials on January 31, 2014. |
| | | |

DMSLIBRARY01:23369037.1

**Source Material for Peter Zeeb "Cheat Sheet" Exhibit #26**

| Zeeb Exhibit # 26 Information Headings | Source of Information for Exhibit # 26 for Texaco 800 | Source of Information for for Exhibit # 26 for Shell 3042 | Date Information Provided to Plaintiffs |
|---|---|---|---|
| Hydrogeology<br><br>OB<br><br>BR<br><br>Typ Producing Fm<br><br>GW Flow<br><br>NAPL<br><br>MTBE Detections<br><br>TBA Detections | April 7 P. Zeeb Report, Appendix A-4 | April 7 P. Zeeb Report, Appendix A-3 | April 7, 2014 |
| Releases | April 7 P. Zeeb Report, Appendix A-4 | April 7 P. Zeeb Report, Appendix A-3 | April 7, 2014 |
| Remediation | April 7 P. Zeeb Report, Appendix A-4 | April 7 P. Zeeb Report, Appendix A-3 | April 7, 2014 |
| Plaintiff Identified Receptors | April 7 P. Zeeb Report, Appendix A-4 | April 7 P. Zeeb Report, Appendix A-3 | April 7, 2014 |
| Water Resources | April 7 P. Zeeb Report, Appendix A-4 | April 7 P. Zeeb Report, Appendix A-3 | April 7, 2014 |

| Surface Water | April 7 P. Zeeb Report, Appendix A-4 | April 7 P. Zeeb Report, Appendix A-3 | April 7, 2014 |

# EXHIBIT J



E-SERVICE
55655852
Jun 27 2014
03:51PM
File & ServeXpress

245 Fischer Avenue, Suite D-2
Costa Mesa, CA 92626
Tel. +1.714.770.8040
Web: www.aquilogic.com

## ADDENDUM

To:      Mr. Scott E. Kauff, Law Offices of John K. Dema, P.C.

From:    Mr. Anthony Brown

Date:    June 23, 2014

Project: PR MTBE Litigation (Project # 007-02)

**Re:      Addendum to Revised Expert Report**

         ID # 86-1825 Texaco Service Station #800, Ponce, Puerto Rico

---

### INTRODUCTION

In the expert reports of Dr. Zeeb and Mr. Daus/Mr. Connor, pumping rates for water supply wells were provided. In some cases, these pumping rates differed from those used in the groundwater flow modeling presented in my revised expert report (Appendix E) and revised rebuttal report (Appendix F). At Texaco Service Station #800, additional field inspections were performed of nearby water supply wells. These inspections identified pumping rates for selected wells that are more representative than those used in the groundwater flow modeling, and in some cases, confirmed the rates provided by defense experts. We also identified that the databases for water supply wells in Puerto Rico had mapped certain wells in the wrong location (e.g. Belgica Well). In addition, the nearby water supply wells are screened across shallower depths than previously assumed in the groundwater modeling (e.g. in general, 30 to 150 feet below ground surface [bgs] versus 100 to 200 feet bgs). Therefore, we have re-run the groundwater modeling using the correct well locations for selected wells, a shallower top of aquifer (50 feet bgs), and the more appropriate pumping rates at nearby water supply wells (output attached hereto). Finally, we had to increase the hydraulic conductivity slightly for the deeper (regional) aquifer to accommodate the pumping at the water supply wells. This has resulted in the following slight changes to some sections of the revised expert report:

### 5.1.4   Receptors (Errata)

**p. 111, paragraph 2**

The following eight public water supply wells (two are not in use), four domestic water supply wells, eight irrigation water supply wells, three institutional water supply wells, and three industrial water supply wells are located within the court-ordered delineation boundaries at the Site (Figure 5.3):

- Atomica Well - public water supply well (PR-AAA_005520);
- Belgica Well - public water supply well; coordinates are incorrect in the PRDOH database; however, correct in the USGS database; well is not in use;



**References**

PR-AAA_005518.

PR-AAA_005520.

Puerto Rico Department of Health (PRDOH). (2007).  Source Water Assessment Program Final Report 2007.  December.

U.S. Geological Survey (USGS). (2006).  Surface-Water, Water-Quality, and Ground-Water Assessment of the Municipio of Ponce, Puerto Rico, 2002-2004.

U.S. Geological Survey (USGS). (2011). Groundwater Site Inventory Database. May 26.

Zeeb, Peter. (2014). "Site-Specific Expert Report of Peter Zeeb." April.

# EXHIBIT K



**aqui**logic, **Inc.**

environment ● water ● strategy

245 Fischer Avenue, Suite D-2
Costa Mesa, CA 92626
Tel. +1.714.770.8040
Web: www.aquilogic.com

E-SERVICE
55655852
Jun 27 2014
03:51PM
File & ServeXpress

## ADDENDUM

To:     Mr. Scott E. Kauff, Law Offices of John K. Dema, P.C.

From:   Mr. Anthony Brown

Date:   June 26, 2014

Project: PR MTBE Litigation (Project # 007-02)

**Re:      Addendum to Revised Expert Report**

ID # 86-0948, Shell #3042 Service Station, Caguas, Puerto Rico

## INTRODUCTION

In the expert report of Dr. Peter Zeeb, pumping rates for water supply wells were provided.  In some cases, these pumping rates differed from those used in the groundwater flow modeling presented in my revised expert report (Appendix E) and revised rebuttal report (Appendix F).  At Shell #3042 Service Station, additional field inspections were performed of nearby water supply wells.  These inspections identified pumping rates for selected wells that are more representative than those used in the groundwater flow modeling, and in some cases, confirmed the rates provided by Dr. Zeeb.  Therefore, we have re-run the groundwater modeling using the more appropriate pumping rates at nearby water supply wells (output attached hereto).  This has resulted in the following slight changes to some sections of the revised expert report:

### 4.1.4     Potential Receptors (Errata)

**Pg. 86, fourth paragraph, first sentence, change text**

The following five commercial groundwater supply wells, one domestic well, and one monitoring well are located within the court-ordered delineation boundaries at the Site (Figure 4.3):

### 4.1.4     Potential Receptors (Errata)

**Pg. 86, bullets 1 and 2, delete text; bullets 2, 5, and 6 add text**

- CVDMAT – listed as an unused well by USGS (2011);
- Piezometer Caguas – this is a USGS monitoring well, listed as an unused well (USGS, 2011);
- Angora 4 Well – commercial water supply well (USGS, 2011);
- FAUT Well – commercial water supply well (USGS, 2011) at a car dealership;
- HTACAR – commercial water supply well (USGS, 2011) – operates as an emergency fire suppression system (Zeeb, 2014);



- SIZ Well – commercial water supply well at a Sizzler restaurant (USGS, 2011) – operates on an emergency basis (Zeeb, 2014); and,
- RDIE Well – domestic water supply well (USGS, 2011).

### 4.6.4    Receptors (Errata)

**Pg. 103, seventh paragraph, second sentence, delete text**

There are six water supply wells in the vicinity of the Site still considered active.  Piezometer Caguas is a monitoring well used by USGS.  Five water supply wells are identified as commercial supply wells (Angora 4, FAUT, CVDMAT, HTACAR, and SIZ Wells) and one well (RDIE Well) is identified as a domestic supply well.

### 4.6.5    Water Supply Well Modeling (Errata)

**Pg. 105, second paragraph**

The regional groundwater flow modeling results indicate that pumping from the FAUT Well, located northeast of the Site, would create a groundwater capture zone that extends beneath the known area of contamination at the Site.  Given the absence of a defined aquitard between the shallow aquifer and regional aquifer, it is likely that groundwater in the shallow aquifer (and any contamination therein) is in communication with, and recharges, the regional aquifer.  Forward particle tracking indicates that particles released in the regional aquifer directly beneath the known area of contamination at the Site will ultimately reach the FAUT Well.

### 4.6.6    Conceptual Site Model (Errata)

**Pg. 105, fourth paragraph, last two sentences**

Six water supply wells are located within a one-mile radius of the Site. Based upon groundwater flow modeling, groundwater contamination beneath the Site lies within the capture zone of the FAUT water supply well.

### Enclosures

- Appendix E, Shell 3042 Groundwater Model

### References

U.S. Geological Survey (USGS). (2011). Groundwater Site Inventory Database. May 26.

Zeeb, Peter. (2014). "Site-Specific Expert Report of Peter Zeeb." April.

# EXHIBIT L





55824235
Aug 01 2014
05:30PM

Daniel M. Krainin
15th Floor
477 Madison Avenue
New York, NY 10022-5802
Direct:(212) 702-5417
Fax:(212) 702-5450
dkrainin@bdlaw.com

August 1, 2014

**BY ELECTRONIC MAIL AND LNFS**

Duane C. Miller, Esq.                    Victor L. Cardenas, Esq.
Miller & Axline, P.C.                    Jackson, Gilmour & Dobbs, PC
1050 Fulton Avenue, Ste. 100             3900 Essex, Suite 700
Sacramento, CA 95825-4272               Houston, TX 77027

Re:     *Commonwealth of Puerto Rico, et. al. v. Shell Oil Co., et. al.,* No. 07-CV-10470
        Master File C.A. No. 1:00-1898 (SAS), M21-88, MDL No. 1358
        *Plaintiffs' Responses to Sunoco's Requests for Admission and Related Issues*

Dear Counsel:

       We write to meet and confer regarding Plaintiffs' responses to the Sunoco Defendants' Requests for Admission ("RFAs") and related discovery issues. Plaintiffs' responses to Sunoco's RFAs fail to meet the standards of the Federal Rules and are deficient in numerous respects. *See* Fed. R. Civ. P. 36(a)(4). Sunoco reserves its right to file appropriate motions if Plaintiffs fail to revise their responses to cure the deficiencies described below.

    1.  <u>Double Negatives</u>

       Plaintiffs' responses to RFAs 1-27 and 50 are nonsensical in that they all contain double-negatives that render the text of the response contrary to the admission contained with it. *See. e.g.,* Plaintiffs' Response to Sunoco Defendants' RFA No. 1 ("Plaintiffs admit that as of the close of discovery, Plaintiffs are *not* in possession of any information indicating that Sunoco, Inc. has *never* OWNED ANY UST at ANY of the TRIAL SITES during the Relevant Time Period") (italicized emphasis added). Plaintiffs should correct the text of the responses so that they are intelligible and consistent with the admissions contained therein.

    2.  <u>"Facts Not in Evidence" Objections</u>

       Plaintiffs' responses to RFAs 28-29, 31-35, 37-41, 46-55 are improper because they rely on the objection that the request "assumes facts not in evidence which render the request argumentative and improper." First, no facts are "in evidence" in this action given that it is not in trial. Second, the requests do not assume facts at all but rather require Plaintiffs to admit or

**BEVERIDGE & DIAMOND**PC

Duane C. Miller, Esq.
Victor L. Cardenas, Esq.
August 1, 2014
Page 2

deny each statement asserted. *See, e.g.,* RFA 29 ("Admit that YOU have no document or sworn testimony showing that Sunoco, Inc. has designed, manufactured, refined, distributed or marketed MTBE or gasoline containing MTBE.") Third, Plaintiffs have failed to explain how their misplaced "facts not in evidence" objection renders any request argumentative or improper. Indeed, the requests are not argumentative or improper, they are factual statements. In sum, Plaintiffs have no good faith basis for this objection and it should be withdrawn.

3. "Compound" Objections

Plaintiffs' responses to RFAs 33-35 are improper because they incorrectly conclude that the requests are compound when, in fact, they are not. The requests at issue are all phrased in the disjunctive ("or"), not the conjunctive ("and"). Thus, for example, RFA 33 asks Plaintiffs to "Admit that Sunoco, Inc. did not release, discharge or spill gasoline at ANY of the TRIAL SITES." Plaintiffs' denial of this request is in bad faith given that there is not a shred of evidence to suggest that Sunoco, Inc. released, discharged or spilled gasoline at a trial site or anywhere else. (Indeed, Sunoco, Inc. is a parent holding company that did not undertake any activities that could have resulted in a spill, release or discharge in Puerto Rico or anywhere else.) These responses violate Rule 36(a)(4) in that they do not fairly respond to the substance of the request and they therefore should be revised.

4. "Beyond the scope of the Trial Sites" Objections

Plaintiffs object to RFAs 28-32, 36-37, 42-45, 52 and 56-62 on the grounds that the requests "improperly seek[] information outside the scope of permissible discovery concerning the Trial Sites." This objection is misplaced.[1] Plaintiffs cite to no Case Management Order or any other authority in support of their narrow interpretation of the scope of permissible discovery. Moreover, if any such limitation existed, then it would render each and every discovery request Plaintiffs have served on Sunoco in this action – as well as Plaintiffs' complaints about Sunoco's alleged "refus[al] to produce documents concerning sales of neat MTBE" (*see* Section 6, below) – impermissible and moot because Sunoco has had no dealings with, and has no information regarding, any of the trial sites. Accordingly, unless Plaintiffs are prepared to voluntarily dismiss all Sunoco Defendants because of their lack of connection to any of the trial sites, there is no good-faith basis for this objection and it should be withdrawn.[2]

---

[1] Plaintiffs' objection on these grounds to RFA 52 is particularly egregious because that request is expressly and exclusively related to the trial sites.

[2] Plaintiffs also object as to numerous RFAs on the grounds that they are "not properly limited in time or scope." Plaintiffs have defined the relevant timeframe as 1979 to the present and have demanded discovery responses of Defendants for that period. If Plaintiffs believe in good faith a different time or

BEVERIDGE & DIAMOND PC

Duane C. Miller, Esq.
Victor L. Cardenas, Esq.
August 1, 2014
Page 3

5.   Improper Denials

Plaintiffs deny RFAs 29, 31, 37, 39, 41, 43, 45, 47, 49, 53, 55-62, which ask them to admit that they have no documents or sworn testimony in support of a particular proposition. These denials violate Rule 36(a)(4) because no such documents exist and Plaintiffs have failed to identify a single document or any other good-faith basis to support these denials.[3]

6.   Objections Based on Sunoco's Alleged "Refus[al]" to Produce A Single Document That Plaintiffs Already Have

Plaintiffs object to RFAs 28-31, 40, 42-45, and 56-62 on the purported grounds that the Sunoco Defendants "have refused to produce documents concerning sales of neat MTBE that were ultimately delivered to Puerto Rico … and [Plaintiffs] cannot admit or deny this request until a proper discovery response is served and the documents are produced."  This objection is improper for at least three reasons: (a) the objection is based on a single document that Plaintiffs already have and therefore any copy in Sunoco's control is of no substantive consequence; (b) the objection is irrelevant to every RFA for which Plaintiffs have asserted it; and (c) Sunoco has already taken numerous steps to address Plaintiffs' concerns regarding any relevant neat MTBE sales information.

a.   Plaintiffs Already Have the Document at Issue

Plaintiffs not only claim they cannot admit or deny this request until the "documents" at issue are produced, they also threaten to file motions.  Plaintiffs have made much ado about a single bill of lading showing a single sale of neat MTBE by Sunoco, Inc. (R&M) to Phillips Chemical Company ("Phillips") that was delivered to Phillips in Texas.  Sunoco had no knowledge, information or reason to believe that this sale of neat MTBE had any connection to Puerto Rico until Plaintiffs introduced, at recent expert depositions, documents produced by another Defendant that purport to show this product being sent to Puerto Rico at some point after Sunoco, Inc. (R&M) ceased to have ownership of, title to, or control over it.  Plaintiffs already have a copy of the bill of lading at issue and have offered no reason why they require a duplicate copy – if it even exists – from Sunoco's files.  Moreover, as discussed in Part 6.c below, Sunoco is producing information about this shipment from its sales database, which is consistent with the information Plaintiffs already have.

---

scope should apply to these RFAs, then they may limit their responses accordingly provided they explain their basis for limiting their responses in such a fashion.  *See* Rule 36(a)(4).

[3] A relative handful of these RFA responses do include a vague reference to the deposition of Michael Colavita.  These general references – without citations to particular exhibits or portions of the transcript – do not satisfy Plaintiffs' burden to fairly respond to the substance of the matter to support a denial.

**BEVERIDGE & DIAMOND**pc

Duane C. Miller, Esq.
Victor L. Cardenas, Esq.
August 1, 2014
Page 4

      b.   The Objection Is Irrelevant to Every RFA at Issue

     Plaintiffs assert this objection in response to 16 of the 62 RFAs served by Sunoco. Plaintiffs' objection is irrelevant and inapplicable to every one of those RFAs. The document at issue shows a shipment of neat MTBE from Sunoco, Inc. (R&M) to a non-party entity that received it in Texas. Sunoco, Inc. (R&M) is the only Sunoco Defendant that had any involvement in the manufacture, sale or supply of neat MTBE; we have already confirmed in writing that neither Sunoco, Inc. nor PRSOC have any information regarding sales of neat MTBE. *See* Letter from N. Coppinger to D. Miller (June 27, 2014). Fourteen of the 16 RFAs at issue (Nos. 28-29, 40, 42-45, and 56-62) relate to Sunoco, Inc. or Puerto Rico Sun Oil Company ("PRSOC"), not Sunoco, Inc. (R&M). Objections based on information relating to Sunoco, Inc. (R&M)'s sales of neat MTBE cannot justify Plaintiffs' refusal to answer these RFAs.

     The remaining two RFAs (Nos. 30-31) relate to the years in which Sunoco, Inc. (R&M) designed, manufactured or refined gasoline containing MTBE, namely, 1984-2006. Sunoco, Inc. (R&M) has provided sworn interrogatory responses in this action verifying that it only designed, manufactured or refined gasoline containing MTBE from 1984-2006. *See* Sunoco Defendants' Answers and Objections to Plaintiffs' First Set of Interrogatories to Defendants (Nov. 7, 2008), Response to Interrogatory No. 6. There is no evidence to the contrary. Documents or information regarding a sale of neat MTBE to Phillips Chemical Company in 1997 have no bearing on these two RFAs. As such, there is no good-faith basis for Plaintiffs' refusal to admit all 16 of these RFAs or for their threatened motions.

      c.   Sunoco Has Already Taken Numerous Steps to Address Plaintiffs' Concerns

     Sunoco has already taken numerous steps to address the concerns expressed by Plaintiffs about allegedly missing information regarding neat MTBE sales. First, Sunoco confirmed to Plaintiffs in writing that it does not have any information showing any sales of neat MTBE directly to Puerto Rico. *See* Letters from N. Coppinger to D. Miller dated June 27, 2014 and July 11, 2014. Second, Sunoco has searched the discovery record for information regarding which Defendants shipped MTBE to Puerto Rico and confirmed that it had no relevant sales of neat MTBE to those Defendants. *See* Letter from N. Coppinger to D. Miller (July 11, 2014). Third, Sunoco has also already informed Plaintiffs that it located the sale of neat MTBE at issue in its sales database and the database contains no information about the sale beyond that which is reflected on the bill of lading that Plaintiffs already have. *See* E-Mail from N. Coppinger to D. Miller (July 15, 2014). Finally, Sunoco invited Plaintiffs to explain in writing if they believed Sunoco had not satisfied its discovery obligations regarding any relevant neat MTBE sales (*see id.*); Plaintiffs have not done so.

     Notwithstanding all of the above, Sunoco, Inc. (R&M) is producing, together with this letter, a copy of the relevant entries from its database for all neat MTBE sales (a total of two) to

BEVERIDGE & DIAMOND PC

Duane C. Miller, Esq.
Victor L. Cardenas, Esq.
August 1, 2014
Page 5

the Phillips Chemical Company. *See* Exhibit 1 hereto. One of these entries is for the sale that Plaintiffs have identified as ultimately being delivered to Puerto Rico in 1997. Sunoco has no reason to believe that the other sale was ultimately delivered to Puerto Rico but is nevertheless producing this information without waiving any objections. We trust this satisfies Plaintiffs' concerns about the alleged discovery deficiency that is repeated in response to RFAs 28-31, 40, 42-45, and 56-62, and forms the basis of Plaintiffs' threatened motions.[4] If it does not, then Plaintiffs should explain, in writing, what specifically they believe Sunoco is obligated to do that it has not yet done.

      7.   <u>Plaintiffs Did Not Fulfill their Agreement Regarding the Extension to Respond</u>

Defendants agreed to grant Plaintiffs a two-month extension of time (for a total of 90 days) to respond to Defendants' RFAs provided that Plaintiffs (i) prioritized the RFAs served by Sunoco and one other Defendant; and (ii) served their responses on a rolling basis rather than taking the full two months for all or nearly all responses. *See* E-Mail from M. Axline to M. Dillon (May 21, 2014). Plaintiffs expressly agreed to these conditions, *id.*, but then failed to satisfy them. Plaintiffs waited until the very last day of the extended period to respond to 11 of the 13 sets of RFAs at issue. Among the responses served on the final day of the extension were those responding to Sunoco's RFAs. Plaintiffs' failure to abide by the terms of the extension and their thoroughly improper responses demonstrate their failure to respond to Sunoco's RFAs in good faith.

In light of the foregoing and the upcoming summary judgment briefing schedule, please provide revised RFA responses promptly that cure the deficiencies noted above. Should Plaintiffs fail to do so, Sunoco reserves its right to file appropriate motions, including to have these RFAs deemed admitted. We remain available to meet and confer in an effort to resolve some or all of these issues without burdening the Court or Special Master.

Sincerely,

Daniel M. Krainin

Enclosures

cc:     All Counsel (via LNFS)

---

[4] Sunoco has not engaged in any remotely sanctionable conduct. Indeed, Sunoco has repeatedly responded to Plaintiffs' accusations in good faith, and has satisfied its discovery obligations. If anything, Plaintiffs' misguided threats to move for sanctions may themselves constitute sanctionable conduct.

# EXHIBIT M



55797365
Jul 28 2014
06:04PM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS | : Master File No.   1:00-1898<br>: MDL                        1358 (SAS)<br>: |
| M21-88 | : **PLAINTIFFS' OBJECTIONS AND**<br>: **RESPONSES TO DEFENDANTS**<br>: **SUNOCO, INC., SUNOCO, INC. (R&M)** |
| LIABILITY LITIGATION | : **AND PUERTO RICO SUN OIL**<br>: **COMPANY, LLC'S FIRST SET OF**<br>: **REQUESTS FOR ADMISSION** |
| This document relates to: | : |
| *Commonwealth of Puerto Rico, et al.*<br>*v.*<br>*Shell Oil Co., et al.,*<br>*Case No. 07-CIV-10470 (SAS)* | :<br>:<br>:<br>: |

**PLAINITFFS' OBJECTIONS AND RESPONSES TO DEFENDANTS SUNOCO, INC.,
SUNOCO, INC. (R&M) AND PUERTO RICO SUN OIL COMPANY, LLC'S
<u>FIRST SET OF REQUESTS FOR ADMISSION</u>**

Plaintiffs Commonwealth of Puerto Rico and Commonwealth of Puerto Rico through the

Environmental Quality Board ("Plaintiff," "Commonwealth," or "PREQB"), by and through its

attorneys, make the following Objections and Responses and General Objections to Defendants

Sunoco, Inc., Sunoco, Inc. (R&M) and Puerto Rico Sun Oil Company, LLC's First Set of

Requests for Admission.

<u>**GENERAL OBJECTIONS AND COMMENTS**</u>

1.      The Commonwealth objects to the Requests to the extent they seek information or

documents outside the scope of discovery permissible under the Federal Rules of Civil

Procedure.

2.      The Commonwealth objects to the Requests to the extent they seek information

covered by the attorney-client privilege, the work product doctrine, or any other applicable

privilege or immunity. The Commonwealth's responses are not intended as, nor should be

## OBJECTIONS AND RESPONSES TO REQUESTS FOR ADMISSION

### Request for Admission No. 1:

Admit that Sunoco, Inc. has never OWNED ANY UST at ANY of the TRIAL SITEs.

### Response:

Plaintiffs admit that as of the close of discovery, Plaintiffs are not in possession of any information indicating that Sunoco, Inc. has never OWNED ANY UST at ANY of the TRIAL SITES during the Relevant Time Period.

### Request for Admission No. 2:

Admit that Sunoco, Inc. (R&M) has never OWNED ANY UST at ANY of the TRIAL SITEs.

### Response:

Plaintiffs admit that as of the close of discovery, Plaintiffs are not in possession of any information indicating that Sunoco, Inc. (R&M) has never OWNED ANY UST at ANY of the TRIAL SITES during the Relevant Time Period.

### Request for Admission No. 3:

Admit that PRSOC has never OWNED ANY UST at ANY of the TRIAL SITES.

### Response:

Plaintiffs admit that as of the close of discovery, Plaintiffs are not in possession of any information indicating that PRSOC has never OWNED ANY UST at ANY of the TRIAL SITES during the Relevant Time Period.

### Request for Admission No. 4:

Admit that Sunoco, Inc. has never OPERATED ANY UST at ANY of the TRIAL SITEs.

### Response:

Plaintiffs admit that as of the close of discovery, Plaintiffs are not in possession of any information indicating that Sunoco, Inc. has never OPERTED ANY UST at ANY of the TRIAL SITES during the Relevant Time Period.

### Request for Admission No. 5:

Admit that Sunoco, Inc. (R&M) has never OPERATED ANY UST at ANY of the TRIAL SITEs.

**Request for Admission No. 24:**

Admit that PRSOC has never OPERATED ANY of the TRIAL SITEs.

**Response:**

Plaintiffs admit that as of the close of discovery, Plaintiffs are not in possession of any information indicating that PRSOC has never OPERATED ANY of the TRIAL SITES during the Relevant Time Period.

**Request for Admission No. 25:**

Admit that Sunoco, Inc. has never LEASED ANY of the TRIAL SITEs.

**Response:**

Plaintiffs admit that as of the close of discovery, Plaintiffs are not in possession of any information indicating that Sunoco, Inc. has never LEASED ANY of the TRIAL SITES during the Relevant Time Period.

**Request for Admission No. 26:**

Admit that Sunoco, Inc. (R&M) has never LEASED ANY of the TRIAL SITEs.

**Response:**

Plaintiffs admit that as of the close of discovery, Plaintiffs are not in possession of any information indicating that Sunoco, Inc. (R&M) has never LEASED ANY of the TRIAL SITES during the Relevant Time Period.

**Request for Admission No. 27:**

Admit that PRSOC has never LEASED ANY of the TRIAL SITEs.

**Response:**

Plaintiffs admit that as of the close of discovery, Plaintiffs are not in possession of any information indicating that PRSOC has never LEASED ANY of the TRIAL SITES during the Relevant Time Period.

**Request for Admission No. 28:**

Admit that Sunoco, Inc. has not designed, manufactured, refined, distributed or marketed MTBE or gasoline containing MTBE.

**Response:**

Plaintiffs object to this request because it is overbroad in that the request is not limited in time or scope. Plaintiffs also object to this request because it improperly seeks information outside the

scope of permissible discovery concerning the Trial Sites and is not limited to Puerto Rico. Plaintiffs further object that the request assumes facts not in evidence which render the request argumentative and improper. Defendants Sunoco, Inc., Sunoco, Inc. (R&M) and Puerto Rico Sun Oil Company LLC have refused to produce documents concerning sales of neat MTBE that were ultimately delivered to Puerto Rico. Attempts to resolve this discovery dispute have been unsuccessful. Plaintiffs intend to bring a motion for discovery of the documents and sanctions, as may be appropriate, and cannot admit or deny this request until a proper discovery response is served and the documents are produced.

**Request for Admission No. 29:**

Admit that YOU have no document or sworn testimony showing that Sunoco, Inc. has designed, manufactured, refined, distributed or marketed MTBE or gasoline containing MTBE.

**Response:**

Plaintiffs object to this request because it is overbroad in that the request is not limited in time or scope. Plaintiffs also object to this request because it improperly seeks information outside the scope of permissible discovery concerning the Trial Sites and is not limited to Puerto Rico. Plaintiffs further object that the request assumes facts not in evidence which render the request argumentative and improper. Defendants Sunoco, Inc., Sunoco, Inc. (R&M) and Puerto Rico Sun Oil Company LLC have refused to produce documents concerning sales of neat MTBE that were ultimately delivered to Puerto Rico. Attempts to resolve this discovery dispute have been unsuccessful. Plaintiffs intend to bring a motion for discovery of the documents and sanctions, as may be appropriate, and cannot admit or deny this request until a proper discovery response is served and the documents are produced.

**Request for Admission No. 30:**

Admit that Sunoco, Inc. (R&M) did not design, manufacture or refine gasoline containing MTBE prior to May 1984 or after May 2006.

**Response:**

Plaintiffs object that the request assumes facts not in evidence which render the request argumentative and improper. Plaintiffs also object to this request because it improperly seeks information outside the scope of permissible discovery concerning the Trial Sites and is not limited to Puerto Rico. Defendants Sunoco, Inc., Sunoco, Inc. (R&M) and Puerto Rico Sun Oil Company LLC have refused to produce documents concerning sales of neat MTBE that were ultimately delivered to Puerto Rico. Attempts to resolve this discovery dispute have been unsuccessful. Plaintiffs intend to bring a motion for discovery of the documents and sanctions, as may be appropriate, and cannot admit or deny this request until a proper discovery response is served and the documents are produced.

**Request for Admission No. 31:**

Admit that YOU have no document or sworn testimony showing that Sunoco, Inc. (R&M) designed, manufactured or refined gasoline containing MTBE prior to May 1984 or after May 2006.

**Response:**

Plaintiffs object to this request because it is overbroad in that the request is not limited in time or scope. Plaintiffs also object to this request because it improperly seeks information outside the scope of permissible discovery concerning the Trial Sites and is not limited to Puerto Rico. Plaintiffs further object that the request assumes facts not in evidence which render the request argumentative and improper. Defendants Sunoco, Inc., Sunoco, Inc. (R&M) and Puerto Rico Sun Oil Company LLC have refused to produce documents concerning sales of neat MTBE that were ultimately delivered to Puerto Rico. Attempts to resolve this discovery dispute have been unsuccessful. Plaintiffs intend to bring a motion for discovery of the documents and sanctions, as may be appropriate, and cannot admit or deny this request until a proper discovery response is served and the documents are produced.

**Request for Admission No. 32:**

Admit that YOU are not seeking ANY damages from Sunoco, Inc.(R&M) for ANY release, discharge or spill of gasoline which occurred prior to Sunoco, Inc.(R&M)'s initial refining of gasoline containing MTBE in May 1984 or after Sunoco, Inc. (R&M) last manufactured, sold, or distributed gasoline containing MTBE.

**Response:**

Plaintiffs object to this request because it is overbroad in that the request is not limited in time or scope. Plaintiffs also object to this request because it improperly seeks information outside the scope of permissible discovery concerning the Trial Sites and is not limited to Puerto Rico. Plaintiffs further object that the request assumes facts not in evidence which render the request argumentative and improper. Subject to and without waiving the foregoing objections, denied.

**Request for Admission No. 33:**

Admit that Sunoco, Inc. did not release, discharge or spill gasoline at ANY of the TRIAL SITEs.

**Response:**

Objection. The requirement of Federal Rule of Civil Procedure 36(a)(2) that "each matter must be separately stated" prohibits compound questions. That rule is particularly applicable here, where it would be impossible to determine whether or not an affirmative response applies to a portion of the request, or all of it. Plaintiffs further object that the request assumes facts not in evidence which render the request argumentative and improper. Subject to and without waiving the foregoing objections, denied.

**Request for Admission No. 34:**

Admit that Sunoco, Inc. (R&M) did not release, discharge or spill gasoline at ANY of the TRIAL SITEs.

**Response:**

Objection. The requirement of Federal Rule of Civil Procedure 36(a)(2) that "each matter must be separately stated" prohibits compound questions. That rule is particularly applicable here, where it would be impossible to determine whether or not an affirmative response applies to a portion of the request, or all of it. Plaintiffs further object that the request assumes facts not in evidence which render the request argumentative and improper. Subject to and without waiving the foregoing objections, denied.

**Request for Admission No. 35:**

Admit that PRSOC did not release, discharge or spill gasoline at ANY of the TRIAL SITEs.

**Response:**

Objection. The requirement of Federal Rule of Civil Procedure 36(a)(2) that "each matter must be separately stated" prohibits compound questions. That rule is particularly applicable here, where it would be impossible to determine whether or not an affirmative response applies to a portion of the request, or all of it. Plaintiffs further object that the request assumes facts not in evidence which render the request argumentative and improper. Subject to and without waiving the foregoing objections, denied.

**Request for Admission No. 36:**

Admit that Sunoco, Inc. (R&M) did not supply any gasoline containing MTBE to Puerto Rico other than segregated race fuel.

**Response:**

Plaintiffs object to this request because it is overbroad in that the request is not limited in time or scope. Plaintiffs also object to this request because it improperly seeks information outside the scope of permissible discovery concerning the Trial Sites. Plaintiffs further object that the request assumes facts not in evidence which render the request argumentative and improper. Subject to and without waiving the foregoing objections, denied. (*See* deposition of Michael Colavita).

**Request for Admission No. 37:**

Admit that YOU have no document or sworn testimony showing that Sunoco, Inc. (R&M) supplied any gasoline containing MTBE to Puerto Rico other than segregated race fuel.

**Response:**

Plaintiffs object to this request because it is overbroad in that the request is not limited in time or scope. Plaintiffs also object to this request because it improperly seeks information outside the scope of permissible discovery concerning the Trial Sites. Plaintiffs further object that the request assumes facts not in evidence which render the request argumentative and improper. Subject to and without waiving the foregoing objections, denied. (*See* deposition of Michael Colavita).

**Request for Admission No. 38:**

Admit that race fuel containing MTBE manufactured by Sunoco, Inc. (R&M) was never sold at any of the TRIAL SITEs.

**Response:**

Plaintiffs object that the request assumes facts not in evidence which render the request argumentative and improper. Subject to and without waiving the foregoing objections, Plaintiffs lack sufficient information and knowledge to either admit or deny this request. To the extent a response is required denied.

**Request for Admission No. 39:**

Admit that YOU have no document or sworn testimony showing that race fuel containing MTBE manufactured by Sunoco, Inc. (R&M) was ever sold at any of the TRIAL SITEs.

**Response:**

Plaintiffs object that the request assumes facts not in evidence which render the request argumentative and improper. Subject to and without waiving the foregoing objections, Plaintiffs lack sufficient information and knowledge to either admit or deny this request. To the extent a response is required denied.

**Request for Admission No. 40:**

Admit that PRSOC never manufactured finished gasoline at the Yabucoa refinery.

**Response:**

Plaintiffs object that the request assumes facts not in evidence which render the request argumentative and improper. Defendants Sunoco, Inc., Sunoco, Inc. (R&M) and Puerto Rico Sun Oil Company LLC have refused to produce documents concerning sales of neat MTBE that were ultimately delivered to Puerto Rico. Attempts to resolve this discovery dispute have been unsuccessful. Plaintiffs intend to bring a motion for discovery of the documents and sanctions, as may be appropriate, and cannot admit or deny this request until a proper discovery response is served and the documents are produced.