# Exhibit 2

Graham E. Fogg, Ph.D.

Page 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE:  METHYL TERTIARY BUTYL ETHER ("MTBE")
        PRODUCTS LIABILITY LITIGATION
Master File C.A. No. 1:00-1898(SAS) MDL 1358

_____

This Document Relates to:

        ORANGE COUNTY WATER DISTRICT
        v. UNOCAL CORPORATION, et al.,
        Case No. 04 CIV.4968 (SAS)

_____


                    --  --  --

        SATURDAY, JANUARY 21, 2012

                    --  --  --

    Videotaped Deposition of GRAHAM E. FOGG, Ph.D.,
Expert Witness, held at the Law Offices of Latham &
Watkins, 505 Montgomery Street Street, Suite 1900,
San Francisco, California, beginning at 9:03, before
Sandra Bunch VanderPol, FAPR, RMR, CRR, CSR #3032

                    --  --  --


_____

              GOLKOW TECHNOLOGIES, INC.
          877.370.3377 ph|917.591.5672 fax
                  Deps@golkow.com

Golkow Technologies, Inc. - 1.877.370.DEPS

Page 58

1  County Water District lawsuit?
2      MS. O'REILLY: Vague and ambiguous.
3      THE WITNESS: No.
4  BY MR. JON ANDERSON:
5      Q.  Are you working with Mr. Miller's
6  firm on any other Orange County Water District cases?
7      A.  Yes.
8      Q.  And has that case or cases -- have
9  those taken you away from your student teaching
10 duties?
11     A.  I have managed my time so that they
12 haven't. But, you know, I'm careful to make sure
13 that the students and the university duties are
14 getting due attention.
15     Q.  Has your appearance at depositions in
16 this or in any other MTBE case ever interfered with
17 your teaching duties?
18     MS. O'REILLY: Objection. Vague and
19 ambiguous. Overbroad.
20     THE WITNESS: Well, I have made -- I've had
21 makeup lectures in the cases where they have
22 interfered, and I have innovated with putting up
23 video lectures for my students when I cannot be
24 present. But even that has its limits, in my mind,
25 in terms of what's a legitimate way to backfill for

Page 59

1  those times when I have -- when I have to be away.
2      And there's other things that take me out of
3  town that are university business. So, you know,
4  it's -- professors do have to manage these kinds of
5  scheduling quirks. But it's -- I am aware that there
6  are times when defense attorneys want to conduct
7  multiday, perhaps even multiweek deposition.
8  BY MR. JON ANDERSON:
9      Q.  Have you ever participated in a
10 multiweek deposition?
11     A.  More than a week, I have.
12     Q.  Which case was that?
13     A.  Tahoe.
14     Q.  Was that your first deposition in an
15 MTBE case?
16     A.  Yes.
17     Q.  Were you asked to do any
18 site-specific work in this case?
19     A.  No.
20     Q.  Do you know what sites are involved
21 in this case?
22     A.  I -- you know, I've looked at some of
23 the site data from -- that have been written up in
24 other expert reports.
25     Q.  Other than looking at site data that

Page 60

1  was in other expert reports, have you done any
2  analysis of any individual gasoline site in this
3  case?
4      A.  No.
5      Q.  Have you looked at any specific well
6  locations of the wells that are involved in this
7  case?
8      A.  Well, I've made --
9      MS. O'REILLY: Vague and ambiguous.
10     THE WITNESS: I've made maps of
11 monitoring --
12 BY MR. JON ANDERSON:
13     Q.  Have you looked at --
14     A.  -- well data that include MTBE, as
15 well as other compounds. So many of those monitoring
16 wells are from the site investigations.
17     Q.  Have you looked at the sites or, for
18 example, pumping information of any of the drinking
19 water wells that are involved in this case?
20     MS. O'REILLY: Vague and ambiguous.
21     THE WITNESS: Have I looked at the data from
22 the drinking water wells; is that -- again, is that
23 the question?
24 BY MR. JON ANDERSON:
25     Q.  Well, that wasn't what I said, but I

Page 61

1  will start with that since it sounds like you will be
2  able to answer it. Have you?
3      A.  Yes.
4      Q.  And for what purpose?
5      A.  To look at data on occurrence of MTBE
6  in the system using as many different kinds of well
7  data as we can get our hands on.
8      Q.  And that review of that data has
9  taken place between 2009 and today?
10     A.  Yes.
11     Q.  Okay. And when you looked at that
12 data for the drinking water wells, did you find any
13 wells with as much as a half a part per billion in
14 them currently?
15     MS. O'REILLY: Asked and answered.
16     THE WITNESS: Currently, I'm not sure what
17 the concentrations are.
18 BY MR. JON ANDERSON:
19     Q.  Did you meet with any owners or
20 operators of drinking water wells in Orange County?
21     A.  Well, my staff and I have been in
22 contact with Orange County Water District.
23     Q.  Orange County Water District is
24 actually not an owner or operator of drinking water
25 wells. I'm talking about the actual owners and

16 (Pages 58 to 61)

Graham E. Fogg, Ph.D.

|  | Page 78 |
|---|---|
| 1 | have some definition for this case, do you have an |
| 2 | opinion in this case with respect to any of the |
| 3 | 34 focus stations that that station or more than one |
| 4 | station has an inadequate monitoring well network? |
| 5 | A.   My opinion is of the sites as a |
| 6 | whole, based on what I just said. |
| 7 | Q.   Okay.  I'm not sure what you mean by |
| 8 | "the sites as a whole." |
| 9 | A.   The collection of sites in the -- |
| 10 | Q.   Do you believe that the 34 stations |
| 11 | are all part of a unified need for a monitoring |
| 12 | network? |
| 13 | MS. O'REILLY:  Vague and ambiguous. |
| 14 | THE WITNESS:  No, I don't think that's what |
| 15 | I said. |
| 16 | BY MR. JON ANDERSON: |
| 17 | Q.   Okay.  So are there any of the 34 |
| 18 | stations in this case that you have an opinion has an |
| 19 | inadequate monitoring well network? |
| 20 | MS. O'REILLY:  Misstates testimony. |
| 21 | Argumentative. |
| 22 | Go ahead. |
| 23 | THE WITNESS:  As I said earlier, I have not |
| 24 | investigated specific sites and provided a specific |
| 25 | opinion on adequacy of monitoring at specific sites. |

|  | Page 79 |
|---|---|
| 1 | But from what I see, what I see that's been |
| 2 | applied to these sites, the monitoring networks are |
| 3 | typical in their inadequacy to define the lateral and |
| 4 | vertical movement of MTBE. |
| 5 | BY MR. JON ANDERSON: |
| 6 | Q.   Okay.  So you believe that one or |
| 7 | more of the sites has what you call a typical and |
| 8 | inadequate monitoring network to define the lateral |
| 9 | and vertical extent of MTBE? |
| 10 | A.   Pretty much most of them -- |
| 11 | Q.   Okay. |
| 12 | A.   -- are inadequate. |
| 13 | Q.   All 34? |
| 14 | A.   That's for somebody else to opine on. |
| 15 | That's not -- that's not -- |
| 16 | Q.   I'm trying to find out what you're |
| 17 | going to say here. |
| 18 | A.   I've already -- |
| 19 | Q.   Are you going to opine that any one |
| 20 | or more of the 34 sites has an inadequate monitoring |
| 21 | well network with respect to MTBE? |
| 22 | MS. O'REILLY:  Asked and answered. |
| 23 | Argumentative. |
| 24 | Go ahead. |
| 25 | THE WITNESS:  I am not offering a specific |

|  | Page 80 |
|---|---|
| 1 | opinion of that nature. |
| 2 | BY MR. JON ANDERSON: |
| 3 | Q.   Are you offering any opinion from |
| 4 | which you expect the listener to conclude that there |
| 5 | are problems with the extent of the monitoring well |
| 6 | networks at any or all of the stations involved in |
| 7 | this case? |
| 8 | MS. O'REILLY:  Argumentative.  Misstates |
| 9 | testimony. |
| 10 | THE WITNESS:  I think I've already given the |
| 11 | opinion on the adequacy of the monitoring networks -- |
| 12 | BY MR. JON ANDERSON: |
| 13 | Q.   You told me that -- |
| 14 | A.   -- that they are typical of what is |
| 15 | done at gasoline release sites, in that -- and we can |
| 16 | argue about why people do it this way, but I see it |
| 17 | over and over again.  They are typical in that the |
| 18 | well placements are not enough, not enough wells, not |
| 19 | far enough from the source, and not deep enough. |
| 20 | Q.   Okay. |
| 21 | A.   And I'm -- I don't need to have an |
| 22 | encyclopedic knowledge of what's done at each site to |
| 23 | know that the way most of these sites has been |
| 24 | handled is typical, in that there's not enough data |
| 25 | to track the off-site movement of the plume, and the |

|  | Page 81 |
|---|---|
| 1 | plumes in many cases are clearly moving on. |
| 2 | Q.   Okay.  If you believe that one or |
| 3 | more of the stations here is typical and, therefore, |
| 4 | inadequate, let's just go down the list. |
| 5 | Let's just start.  Pick out any station. |
| 6 | Give me one that's inadequate? |
| 7 | A.   I am not -- |
| 8 | MS. O'REILLY:  Object -- |
| 9 | THE WITNESS:  I'm not providing an opinion |
| 10 | on that. |
| 11 | BY MR. JON ANDERSON: |
| 12 | Q.   Okay.  Not providing opinion that any |
| 13 | station of the 34 has an inadequate monitoring |
| 14 | network for monitoring MTBE, right? |
| 15 | MS. O'REILLY:  Objection.  Misstates |
| 16 | testimony.  Argumentative.  Purposely misstates |
| 17 | facts. |
| 18 | Go ahead. |
| 19 | THE WITNESS:  That's mischaracterizing what |
| 20 | I said.  And, Jon, I don't know how else to say it to |
| 21 | you. |
| 22 | BY MR. JON ANDERSON: |
| 23 | Q.   Well, let's just make it very, very |
| 24 | fundamental. |
| 25 | Dr. Fogg, do you have an opinion with |

21 (Pages 78 to 81)

Graham E. Fogg, Ph.D.

|  | Page 90 |  | Page 92 |
|---|---|---|---|
| 1 | months. So -- but I -- I don't need to have looked | 1 | Overbroad. |
| 2 | at the site data in the last 10 months or 12 months | 2 | THE WITNESS: I -- my opinions are not that |
| 3 | or 24 months to -- to know that, you know, the way | 3 | specific. |
| 4 | that these sites have been characterized is | 4 | BY MR. JON ANDERSON: |
| 5 | inadequate to determine the position of the MTBE | 5 | Q. Are your opinions confined to the |
| 6 | plumes laterally and vertically. | 6 | 34 stations or are your opinions broader than the |
| 7 | The nature of my opinion it's about, you | 7 | 34 stations as potential sources of MTBE |
| 8 | know, the way the compound has been monitored and the | 8 | contamination? |
| 9 | way the monitoring networks have been constructed and | 9 | MS. O'REILLY: Vague and ambiguous. |
| 10 | conducted. | 10 | THE WITNESS: My opinions apply to both the |
| 11 | BY MR. JON ANDERSON: | 11 | 34 and to the broader picture as well. |
| 12 | Q. But, as you sit here today, you can't | 12 | BY MR. JON ANDERSON: |
| 13 | identify a single station that fits into that | 13 | Q. Okay. So let's focus on the 34. In |
| 14 | category, right? | 14 | your opinion -- we will start collectively. |
| 15 | A. Well, if you want to put forth a | 15 | The collective 34 stations involved in this |
| 16 | single station with data, we could discuss it, and I | 16 | case, do they present a short- or long-term threat of |
| 17 | could explain to you why the monitoring well network | 17 | MTBE contamination to any drinking water wells in |
| 18 | is problematic. | 18 | Orange County Water District? |
| 19 | Q. I'm here to get your opinions. And | 19 | MS. O'REILLY: Vague. Ambiguous. |
| 20 | I'm asking you if you can identify a single station | 20 | Overbroad. |
| 21 | where you believe that the monitoring well network is | 21 | THE WITNESS: Yes. |
| 22 | problematic or inadequate? | 22 | BY MR. JON ANDERSON: |
| 23 | A. Well, if you want to provided me with | 23 | Q. Okay. Which of the 34 goes into that |
| 24 | the data -- | 24 | threat? Which of those presents a threat? |
| 25 | MS. O'REILLY: Asked -- | 25 | MS. O'REILLY: Objection. Misstates -- |

|  | Page 91 |  | Page 93 |
|---|---|---|---|
| 1 | BY MR. JON ANDERSON: | 1 | purposefully misstates testimony. Argumentative. |
| 2 | Q. That's not my job. | 2 | Go ahead. |
| 3 | A. -- I can identify stations. | 3 | THE WITNESS: My -- my opinion is not that |
| 4 | MS. O'REILLY: Asked and answered. | 4 | specific. |
| 5 | BY MR. JON ANDERSON: | 5 | BY MR. JON ANDERSON: |
| 6 | Q. Dr. Fogg, you've been retained and | 6 | Q. Are you able to tell me whether or |
| 7 | you've been put forth as an expert in this case, and | 7 | not some of the 34 stations do not pose a threat of |
| 8 | I'm trying to find out your opinions. | 8 | MTBE contamination to a well in Orange County Water |
| 9 | Do you have an opinion with respect to any | 9 | District? |
| 10 | identifiable station of the 34 that are involved in | 10 | MS. O'REILLY: Misstates testimony and |
| 11 | this case that that station has an inadequate | 11 | opinions. |
| 12 | monitoring network for MTBE? | 12 | Go ahead. |
| 13 | MS. O'REILLY: Asked and answered. Abusive. | 13 | THE WITNESS: No. |
| 14 | Misstates his testimony purposefully. Misstates the | 14 | BY MR. JON ANDERSON: |
| 15 | scope of his opinion purposefully. Harassing. | 15 | Q. Okay. Your opinion would be -- |
| 16 | Answer again. | 16 | you're saying two levels. |
| 17 | THE WITNESS: I can't answer any other way. | 17 | One level is that the 34 taken together pose |
| 18 | MR. JON ANDERSON: Okay. | 18 | a threat; the other is that those 34 stations, plus a |
| 19 | Q. Do you have an opinion, Dr. Fogg, | 19 | broader collection of sites, poses a threat, right? |
| 20 | that MTBE from any of the 34 stations in this case | 20 | MS. O'REILLY: Misstates testimony. |
| 21 | poses a short- or long-term threat of MTBE | 21 | Go ahead. |
| 22 | contamination to any particular well in Orange County | 22 | THE WITNESS: Yes. The 34 plus a broader |
| 23 | Water District? | 23 | set of sites are potential sources of contamination. |
| 24 | MS. O'REILLY: Purposefully misstates | 24 | BY MR. JON ANDERSON: |
| 25 | testimony, opinions, and report. Vague. Ambiguous. | 25 | Q. Okay. And do you know how many |

24 (Pages 90 to 93)

Page 94

1  potential sources exist as part of your broader
2  opinion on top of those 34?
3       MS. O'REILLY:  Vague.  Ambiguous.  Overbroad
4  as to "potential source."
5       Go ahead.
6       THE WITNESS:  I believe in my report
7  there's -- there are some numbers on -- you know,
8  total number of underground tank sites that, you
9  know, are potential sources.  So, you know, it's --
10 BY MR. JON ANDERSON:
11      Q.   It would be hundreds, right?
12      A.   Or thousands.
13      Q.   Or thousands?
14      A.   Yeah.
15      Q.   All right.  And the 34 is a subset of
16 that hundreds or thousands of potential sources,
17 right?
18      A.   Yes.
19      Q.   Can you quantify between the 34, on
20 one hand, and the X minus 34, on the other hand, as
21 to the relative contribution to the threat?
22      MS. O'REILLY:  Misstates testimony.  Vague.
23 Ambiguous.  Overbroad.  Purposefully misstates his
24 opinion.
25      Go ahead.

Page 95

1       THE WITNESS:  I cannot quantify that right
2  now.  It possibly could be done.  But that hasn't
3  been part of my --
4  BY MR. JON ANDERSON:
5       Q.   Do you know whether the 34 stations
6  on an average basis, a per capita basis, pose a
7  greater threat than the average threat of the other
8  hundreds or thousands of sites in Orange County that
9  you believe pose a threat?
10      MS. O'REILLY:  Vague.  Ambiguous.
11 Overbroad.  Purposefully misstates testimony.
12      THE WITNESS:  I don't know that the 34 would
13 be greater or lesser effect.
14 BY MR. JON ANDERSON:
15      Q.   Okay.  Do you have any knowledge
16 about how the 34 sites were selected?
17      MS. O'REILLY:  And I'm going to instruct the
18 witness not to answer to the extent he would reveal
19 any attorney-client privileged communication.
20      THE WITNESS:  I don't know how they were
21 selected.
22 BY MR. JON ANDERSON:
23      Q.   I represent a company called
24 ConocoPhillips.  And ConocoPhillips's business within
25 California, certainly in the 1990s, would have been a

Page 96

1  predecessor company called Tosco.  Do you remember
2  that company?
3       A.   Yes.
4       Q.   And they are generally associated
5  with the 76 brand in terms of gasoline stations.  Is
6  that something you're generally familiar with?
7       MS. O'REILLY:  Objection.  Assumes facts.
8       THE WITNESS:  Yes.
9  BY MR. JON ANDERSON:
10      Q.   Okay.  And among the 34 stations that
11 are part of this case, there are some 76 stations.
12 Did you notice that?
13      A.   You know, I don't recall exactly
14 which stations are part of the -- on the list of 34,
15 but, yeah, it wouldn't surprise me.
16      Q.   Can you tell me, with respect to any
17 of the 76 stations -- I'm talking about the brand
18 they carry -- whether any of those stations poses a
19 threat of MTBE contamination to any particular wells
20 within the Orange County Water District?
21      MS. O'REILLY:  Exceeds the scope of his
22 opinions.  Purposefully misstates his report.  Vague.
23 Ambiguous.  Overbroad.
24      THE WITNESS:  That's beyond the scope of my
25 opinions.

Page 97

1  BY MR. JON ANDERSON:
2       Q.   Can you tell me the identity of any
3  of the 34 stations involved in this case where you
4  have formed an opinion that at least that particular
5  station poses a threat to a drinking water well or
6  more than one drinking water well within Orange
7  County Water District?
8       MS. O'REILLY:  Purposefully misstates the
9  scope of his opinions.  Vague.  Ambiguous.
10 Overbroad.
11      THE WITNESS:  Well, given that all of the
12 focus sites are potential sources of MTBE into the
13 greater groundwater system, and given that about
14 98 percent of the groundwater recharged into the
15 system exits by well, then all of those sites
16 potentially can contaminate public supply wells.
17      But the specific supply wells connected to
18 specific sites, again, is beyond the scope of my
19 testimony.
20 BY MR. JON ANDERSON:
21      Q.   I understand the term "potential,"
22 but I think I heard within that last answer that you
23 don't have an opinion that any particular station
24 itself poses a threat to any one or more Orange
25 County drinking water wells, right?

25 (Pages 94 to 97)

Graham E. Fogg, Ph.D.

| Page 98 | Page 100 |
|---|---|
| 1    MS. O'REILLY: Misstates testimony.<br>2  Vague --<br>3    THE WITNESS: If you --<br>4    MS. O'REILLY: -- ambiguous. Overbroad.<br>5  Argumentative.<br>6    Go ahead.<br>7    THE WITNESS: If you mean that I don't have<br>8  an opinion that a specific contaminant site can be<br>9  anticipated to contribute MTBE to a specific water<br>10 supply well or wells, that's correct, that my opinion<br>11 is not that specific.<br>12 BY MR. JON ANDERSON:<br>13   Q.   Were you instructed, as part of your<br>14 engagement in this, case that you did not need to<br>15 focus on particular stations or particular defendants<br>16 in forming your opinions?<br>17    MS. O'REILLY: Vague and ambiguous.<br>18 Overbroad. And potentially calls for attorney-client<br>19 privileged communication.<br>20    Go ahead.<br>21    THE WITNESS: I didn't receive specific<br>22 instructions like that. The -- the agreement was to<br>23 provide investigation and opinions on the topics that<br>24 I -- we laid out in the first half hour here.<br>25 /// | 1    A.   On --<br>2    MS. O'REILLY: Vague. Ambiguous.<br>3  Overbroad. Misstates testimony.<br>4    Go ahead.<br>5    THE WITNESS: Yes. And that's -- that's<br>6  stated in my reports that there is remediation that<br>7  is cutting down on the source concentrations on-site<br>8  at these sites.<br>9  BY MR. JON ANDERSON:<br>10   Q.   Okay. And do you also give some<br>11 credit to the men and women at the Orange County<br>12 Health Care Agency and the Santa Ana Regional Water<br>13 Quality Control Board for their efforts in overseeing<br>14 the remediation activities at various sites in Orange<br>15 County Water District?<br>16    MS. O'REILLY: Vague. Ambiguous.<br>17 Overbroad.<br>18    THE WITNESS: Well, in my opinion, I don't<br>19 give specific credit. But --<br>20 BY MR. JON ANDERSON:<br>21   Q.   I'm not asking about your written<br>22 report. I'm asking you if you give credit to those<br>23 people who work in those agencies and who oversee the<br>24 remediation efforts of the -- those who are working<br>25 at the individual stations for reducing the magnitude |

| Page 99 | Page 101 |
|---|---|
| 1  BY MR. JON ANDERSON:<br>2    Q.   Now, when we -- we talked about<br>3  alternative hypotheses on the reasons for the<br>4  monitoring wells going down in number and going down<br>5  in concentration for MTBE. One of the potential<br>6  contributors to that trend that we haven't talked<br>7  about is station remediation activities.<br>8    Now, in your opinion, do station remediation<br>9  activities sometimes reduce the mass of MTBE in the<br>10 subsurface?<br>11   A.   Yes. And that's -- that's in my<br>12 opinion reports, and I neglected to mention that one.<br>13 But that's the other reason that concentrations have<br>14 gone down on-site. Those -- those remediation<br>15 activities are local to the site as -- and certainly<br>16 many of the decreases in monitoring well<br>17 concentrations are due to those activities. And in<br>18 my opinion reports, it's a dual explanation.<br>19   Q.   So you do --<br>20   A.   It's primarily off-site migration and<br>21 local remediation activities.<br>22   Q.   So you do give credit to the efforts<br>23 of the men and women who work on these remediation<br>24 projects that they actually are having a positive<br>25 impact on -- on dealing with the problem, right? | 1  of the problem?<br>2    MS. O'REILLY: Same objection. Overbroad.<br>3  Vague and ambiguous. Misstates testimony.<br>4    Go ahead.<br>5    THE WITNESS: Well, certainly, in my -- I<br>6  give credit to them. I also can empathize with their<br>7  predicament for the difficulty of staying on top of<br>8  large caseloads with inadequate data to define what's<br>9  going on.<br>10 BY MR. JON ANDERSON:<br>11   Q.   You say "inadequate data." Are you<br>12 referring to the monitoring well networks?<br>13   A.   Yes.<br>14   Q.   Okay. Have you ever contacted either<br>15 of the agencies that I just mentioned to give them<br>16 the benefit of your expertise on how they could do a<br>17 better job getting, perhaps, something called<br>18 "adequate data"?<br>19    MS. O'REILLY: Objection. Misstates<br>20 testimony. Argumentative.<br>21    Go ahead.<br>22    THE WITNESS: Well, if my job were to be a<br>23 cooperative extension specialist at U.C. Davis, then<br>24 it might make sense for me to spend much of my time<br>25 going around the state giving workshops to all the |

26 (Pages 98 to 101)

Golkow Technologies, Inc. - 1.877.370.DEPS

Graham E. Fogg, Ph.D.

Page 110

1  network, then -- then that would indicate that people
2  are -- the companies are already doing as much as
3  they can or as much as should be done to protect the
4  groundwater resources.
5      BY MR. JON ANDERSON:
6         Q.   My question is a little bit different
7  than that.  And I'm focusing on the 34 stations that
8  are part of this case.
9         Do you have an opinion that something more
10 than local site cleanup is needed with respect to all
11 or any of those stations?
12        MS. O'REILLY:  Objection.  Misstates
13 testimony.  Misstates reports.  Exceeds the scope of
14 designation.
15        THE WITNESS:  My opinion is not with respect
16 to specific stations.  But my opinion is that there
17 is significant MTBE mass beyond the monitoring well
18 networks, and what one chooses to do about that is
19 dependent on other factors that are not part of my
20 scope of work or my opinions.
21        So you either try and clean up the
22 contamination before it gets to supply wells or you
23 clean it up at the supply wells or you find another
24 source of water.  Right.
25        So, basically, there's three choices.  Those

Page 111

1  are logistical and economic choices that I am not --
2  you know, not the one to decide how -- you know,
3  which -- which path or paths to take.
4      BY MR. JON ANDERSON:
5         Q.   At which of the 34 sites, if any, do
6  you have an opinion that a significant MTBE mass has
7  migrated beyond the monitoring well network?
8         MS. O'REILLY:  Misstates opinions.
9  Purposefully misstates opinions.  Vague.  Ambiguous.
10 Overbroad.
11        THE WITNESS:  I have already answered.
12     BY MR. JON ANDERSON:
13        Q.   I haven't asked that question before.
14 So I don't know how you could have answered it.
15        MS. O'REILLY:  Same objections.
16     BY MR. JON ANDERSON:
17        Q.   Do you have an opinion that at one or
18 more of the 34 sites that a significant MTBE mass has
19 migrated beyond the monitoring well network?
20        MS. O'REILLY:  Same objections.
21        THE WITNESS:  My opinion is that at most of
22 the sites MTBE has migrated beyond the monitoring
23 network because the monitoring networks are small
24 relative to the typical footprint of MTBE plumes.
25 ///

Page 112

1      BY MR. JON ANDERSON:
2         Q.   Are there any specific sites where
3  you have the opinion that the MTBE mass has migrated
4  beyond the monitoring well network?
5         MS. O'REILLY:  Asked and answered multiple
6  times.  Argumentative.  Abusive.
7         Go ahead.
8         THE WITNESS:  That's beyond the scope of my
9  testimony.
10     BY MR. JON ANDERSON:
11        Q.   I don't know what that means.  I have
12 asked you questions about the adequacy of the
13 monitoring well networks.  I haven't asked you about
14 mass migrating from these stations.
15        And you've testified in a broad sense that
16 you believe that there's MTBE contamination that is
17 migrating beyond the monitoring well networks.  And
18 all I'm trying to do is find out if you can tell me
19 if that condition exists at any particular station.
20        A.   Well, the adequacy of the
21 monitoring --
22        Q.   No, that's not my question.
23        A.   -- is -- that I -- we have talked
24 about before, is the same thing as the -- this aspect
25 of mass migrating off-site.

Page 113

1         If the monitoring well is inadequate, that
2  means that it's not adequate to show where the mass
3  is beyond the existing monitoring well networks.
4  So --
5         Q.   I understand this concept, Dr. Fogg.
6         A.   -- so, therefore, inadequacy of
7  monitoring networks means that mass has moved beyond
8  those networks.
9         Q.   You know that doesn't follow,
10 Dr. Fogg.
11        MS. O'REILLY:  Hold on.
12     BY MR. JON ANDERSON:
13        Q.   The fact that I have an inadequate
14 measuring device doesn't mean that the event has
15 occurred.  It simply means I'm not able to tell if it
16 has or not.
17        A.   Not --
18        MS. O'REILLY:  Object -- hold on.
19        First of all, you need to let him finish his
20 answer.  You're interrupting him in the middle of his
21 answer.  Your abusive tone.  Argumentative.  Just
22 because you don't like his answer doesn't mean you
23 need -- you need to speak to him in that tone or
24 manner.  He's trying to answer your question.
25        Go ahead.

29 (Pages 110 to 113)

Page 114

1     MR. JON ANDERSON:  Let's get some foundation
2  here, then.
3     Q.   Is it your expert view, Dr. Fogg,
4  that the absence of an adequate monitoring well
5  network necessarily means that MTBE has migrated
6  off-site?
7     MS. O'REILLY:  Misstates testimony.
8     Go ahead.
9     THE WITNESS:  Yes.  If the monitoring well
10 network is inadequate and there's MTBE in the distal,
11 the most distal wells, and the end of the MTBE plume
12 has not been found -- or like in many MTBE plumes,
13 the plumes are complex, with multiple bifurcating
14 plumes, perhaps, which can happen, and you're trying
15 to define that with a handful of wells, yeah, it's
16 inadequate.
17    We know from the behavior of the chemical
18 that it can move quite extensively.  We have data
19 from other systems on big plumes.  There are systems
20 in California that indicate big plumes.  There's
21 systems in Orange County where I've seen, you know,
22 plumes on the order of thousands of feet, up to a
23 mile.
24    But, again, my testimony is not on specific
25 sites and specific plumes.  It's more of a general

Page 115

1  characterization of, you know, how the chemical has
2  been dealt with and where -- what's likely happening
3  to the MTBE in the system now.
4  BY MR. JON ANDERSON:
5     Q.   Okay.  So I just want to clarify so
6  there's no doubt on the record.  Dr. Fogg, is there
7  any specific station of the 34 where you have an
8  opinion that a significant amount of MTBE has
9  migrated off-site?
10    MS. O'REILLY:  Asked and answered.
11 Argumentative.  Abusive.
12    THE WITNESS:  Again, I've answered.
13 BY MR. JON ANDERSON:
14    Q.   You've done a lot of things, but you
15 haven't given me a "yes" or "no" to that question.
16    MS. O'REILLY:  Objection.  Misstates --
17 BY MR. JON ANDERSON:
18    Q.   Do you have an opinion --
19    A.   It's not answerable with a "yes" or
20 "no."
21    MS. O'REILLY:  Hold on.
22 BY MR. JON ANDERSON:
23    Q.   Okay.  If it's not answerable with a
24 "yes" or "no," then tell me the name of one station
25 where you hold that opinion?

Page 116

1     MS. O'REILLY:  Objection.  Misstates
2  testimony.  Argumentative.
3     THE WITNESS:  Specifics --
4     MS. O'REILLY:  Hold on.
5     And it's been asked and answered multiple
6  times.  It's vague.  Ambiguous.  Overbroad.
7     Go ahead.
8     THE WITNESS:  Opinions on specific stations
9  and plumes are beyond the scope of my opinions and
10 testimony.
11 BY MR. JON ANDERSON:
12    Q.   And I want to make sure there's no
13 doubt about what you mean by that statement.  Is
14 there any station among the 34 where you have formed
15 the opinion that MTBE has migrated off-site?
16    A.   My opinion is that --
17    MS. O'REILLY:  Same objections.
18    THE WITNESS:  -- it's migrated off-site at
19 most of them.
20 BY MR. JON ANDERSON:
21    Q.   I have heard that.  Is there any
22 identifiable station where you have formed that
23 opinion?
24    MS. O'REILLY:  Same objections.  Asked and
25 answered.  Argumentative.

Page 117

1     THE WITNESS:  Same answer.  I mean, I could
2  look at the site data again and give you some site
3  names.  But, again, that's not -- that is not
4  relevant to my opinion.
5     So -- yeah.  I haven't, you know, provided
6  those kinds of details as part of my opinion.
7  BY MR. JON ANDERSON:
8     Q.   It may or may not be relevant to your
9  opinion, Dr. Fogg, but I just want to be very, very
10 clear.
11    Is there any identifiable station where you
12 have formed the opinion that MTBE has migrated
13 off-site?
14    MS. O'REILLY:  Asked and answered.
15    MR. JON ANDERSON:  It's really important
16 that I know that.
17    MS. O'REILLY:  Asked and answer -- asked and
18 answered multiple times.  Purposefully misstating
19 testimony.  Abusive.  Argumentative.
20    Go ahead.
21    THE WITNESS:  I've answered the question.  I
22 don't know how else to answer it.
23 BY MR. JON ANDERSON:
24    Q.   How about "no"?
25    A.   It would be misleading for me to