**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: Methyl *tertiary* Butyl Ether ("MtBE") Products Liability Litigation | MDL No. 1358 (SAS) |
| | M21-88 |
| This Document Relates To: *Orange County Water District v. Unocal Corporation, et al.,* Case No. 04 Civ. 4968 (SAS) | |

**CERTAIN DEFENDANTS' REPLY TO PLAINTIFF ORANGE COUNTY WATER DISTRICT'S LOCAL RULE 56.1 STATEMENT OF DISPUTED AND MATERIAL FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT DUE TO LACK OF INJURY AND DAMAGES AT CERTAIN TRIAL SITES**

On June 6, 2014, Certain Defendants filed a Motion for Partial Summary Judgment due to Lack of Injury and Damages at Certain Trial Sites ("Motion") and a Local Rule 56.1 Statement of Material Facts Submitted in Support of Defendants' Motion ("Defendants' Statement of Facts").

On July 21, 2014, Plaintiff Orange County Water District ("Plaintiff") filed its Opposition to Defendants' Motion ("Opposition" or "Opp.") and a Local Rule 56.1 Statement of Material Facts Submitted in Opposition to Defendants' Motion for Summary Judgment due to Lack of Injury and Damages at Certain Trial Sites ("Plaintiff's Response"). The Opposition incorporated additional arguments and material.

"[R]eply papers may properly address new issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party." *Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226-27 (2d Cir. 2000). Accordingly, defendants hereby respectfully submit their Reply to Plaintiff's Response, including the "Additional Material Facts" submitted by Plaintiff in opposition to Defendants' Motion for Summary Judgment.

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| 1. Four trial sites designated by Plaintiff Orange County Water District ("OCWD") are at issue in this motion: (1) the former Beacon Bay Auto Wash at 10035 Ellis Avenue, Fountain Valley ("Beacon Bay FV"); (2) Unocal #5399, 9525 Warner Avenue, Huntington Beach ("Unocal #5399"); (3) Unocal #5123, 14972 Springdale Street, Huntington Beach ("Unocal #5123"); and (4) Thrifty 368, 6311 Westminster Boulevard, Westminster ("Thrifty 368"). OCWD's testifying hydrogeology expert Anthony Brown states that, with regard to the "Focus Sites" at issue, it "will need to implement additional investigation and remediation activities ... to mitigate the ongoing threat to the drinking water resources managed by the OCWD." Declaration of Peter C. Condron ("Condron Decl."), Ex. 1 (Expert Report of Anthony Brown, at 2). | 1. Undisputed as to testimony, otherwise Disputed. The District designated Focus Plumes for trial in this matter, and each station at issue in this motion is associated with Focus Plume that contains other gasoline stations. (Declaration of David Bolin (July 21, 2014) ¶¶ 2-4 and Ex. 1 attached thereto (Bolin Decl.).) The District associated stations with "plumes" because "they are in proximity to one another and in proximity to the wells that are listed" and "because contamination, MTBE and TBA contamination identified at these sites are believed to have commingled or could commingle and consequently referred to as the focus plumes." (O'Reilly Decl., Ex. 1, Bolin Depo. (July 30, 2008) at 72:11-73:15.) Beacon Bay is associated with Plume No.3, Unocal #5399 is associated with Plume No.1, and Unocal #5123 and Thrifty #368 are associated with Plume No.9. (Bolin Decl. ¶¶2-4.) Mr. Brown confirmed that sufficient MTBE had migrated off-site from each of these four stations that additional remediation actions were warranted. (Condron Decl. Exh. 2 (Exhibit 36 to the | 1. **OCWD's dispute is illusory and immaterial.** Plaintiff does not dispute the testimony provided by Brown. None of the testimony cited by plaintiff in response to the undisputed fact cited by moving Defendants pertains to the four stations at issue on this motion. Brown's Exhibit 36 (Condron Decl. Ex. 2) and Brown's testimony indicate that Brown could *not* determine that it was "more likely than not" that additional remediation activities were required at any of the four stations at issue on this motion. Condron Decl, Ex. 3 (Brown Dep., at 1359:21-1360:8; 1364:13-1365: 17) (Beacon Bay FV); (Brown Dep. at 920:19-921:7) (Unocal #5399); (Brown Dep. at 1034:2-13; (Brown Dep. at 1036:3-14; Brown Dep. at 1037:13-18) (Unocal #5123); Condron Decl. Exh. 2 (Brown Exh. 36, for Thrifty 383: Q19, Q20) (indicating that no additional on-site or off-site remediation is necessary). The Bolin Declaration does not identify any additional remediation work or possible threat posed to drinking water wells or a deeper aquifer by any of the stations at issue on this motion. Likewise, the Bolin Declaration does not identify a single item of cost or expense incurred at any of the stations at issue on this |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | Deposition of Anthony Brown ("Brown Exh. 36").) Mr. Brown testified that the District would need to spend at least $80,000 per station to determine the nature and extent of any further remedial actions that may be needed. (O'Reilly Decl., Ex. 2, Expert Report of Anthony Brown and Robert Stollar (May 28, 2011) at Appendices B.6, B.l0, B.16, and B.18.)<br><br>The District has already incurred substantial costs to conduct CPT and other groundwater sampling at plumes associated with these stations, as well as other non-station specific costs. (Bolin Decl. ¶ 7.)<br><br>Mr. Brown "was asked to determine data gaps at the sites and what work would be necessary to complete investigation and remediation at these sites and determine the costs." (O'Reilly Decl., Ex. 3, Brown Depo. (Feb. 1, 2012) at 1192:20-1193:2.)<br><br>Dr. Wheatcraft was retained to prepare a groundwater contaminant transport model of the MTBE released from focus sites. (Declaration of Stephen W. Wheatcraft, Ph.D. in Support of Plaintiff's Opposition to Motion for Summary Judgment (July 21,2014) ¶¶ 1-3 (Wheacraft Decl.) Dr. Wheatcraft | motion. *See* Exh. 14 to the Declaration of Justin Massey, submitted in opposition to Defendants' Omnibus Motion for Summary Judgment (showing that OCWD paid consultant to perform CPT testing at 10 sites (A-J), none of which is at issue on this motion.)<br><br>Neither Wheatcraft's model nor his testimony identifies any need for remediation at these stations, and he testified that he was unable to make any connection between a release of MTBE gasoline from any of the stations at issue on this motion and any drinking water well or the deeper aquifer. (Jan. 16, 2012 Deposition of Stephen Wheatcraft), p. 115:23-24 ("I didn't breakdown any of the analysis that I did by station"); *Id.*, p. 116:22-117:20 ("Q. And did you, for purposes of the work that you performed in this case, at any time where there are several service stations potentially impacting grids, model the individual stations to determine what impact they may have in the future on potable water supplies? [Objection] THE WITNESS: We haven't done any models in which we isolated a particular source and ran only that source, no. BY MR. STACK: Q. Did you, in the course of your work, do any analysis in which you |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | testified: | allocated responsibility from several service stations impacting grid cells in your model to assign a percentage of the responsibility for contamination being detected at some future date in a potable water supply well? [Objection] THE WITNESS: No, we -- we did not analyze or isolate any particular station in the course of our analysis in modeling."); *Id.*, p. 122:1-4 ("[W]e didn't analyze, again, which – whether it was coming from this particular site or that site in terms of an origin. That wasn't a question we were looking at."); Roy Dec., Ex. 73 (Jan. 17, 2012 Wheatcraft Depo.), pp. 368:19-369:9 ("THE WITNESS: I haven't done any analysis. As we, again, talked about yesterday, that identifies MTBE from a specific station and whether it mingles or commingles with other plumes and whether or not MTBE from a particular station reaches a particular well."); *Id.*, p. 370:2-5 ("I haven't done any analysis to identify which station or stations is responsible or are responsible for MTBE concentrations in specific production wells."); *Id.*, p. 370:9-18 ("Is it true that you do not have an opinion whether or not gasoline containing MTBE from that site has in the past reached any drinking water well in Orange |
| | Q. Are you saying, basically, that your work is showing the potential consequences if action is not taken to remediate to take care of the plumes, and you understood that to be your primary purpose? | |
| | A. Yes. And, actually, that's exactly correct. | |
| | (O'Reilly Decl., Ex. 4, Wheatcraft Depo. (Jan. 17, 2012) 249:19-24; 250:10-15 [model "illustrate[s] a significant need for action"].) | |
| | "A significant amount of MTBE has been released to groundwater within" the District's service area, and "[t]his MTBE, if not remediated, will impact water production wells ... " (O'Reilly Decl., Ex.5, Expert Report of Stephen W. Wheatcraft, Ph.D. (June 22, 2011) at ¶¶ 2-3, p. 8.) Wheatcraft's model shows that MTBE has impacted or will impact all of the drinking water wells associated with plumes which contain the four focus sites at issue in this motion. (Wheatcraft Decl. ¶ 8.) Specifically, "the MTBE transport model predicts . . . 108 district production wells [will] exceed 5.0 ug/l MTBE [originating from the focus plume stations, including these four stations] after 10 years | |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | ...." (Id.) Sampling and vulnerability studies conducted by the District confirm that MTBE has been detected in over fifty-six drinking water wells throughout the District's service area since 2010. (Bolin Decl. ¶ 6.)<br><br>Dr. Fogg similarly concluded that "significant MTBE mass [is present] beyond the monitoring well networks ... " of the stations, and that the only way to prevent this MTBE from reaching public drinking water wells is to clean up the [MTBE] contamination before it gets to supply wells." (O'Reilly Decl., Ex. 6, Fogg Depo. (Jan. 21, 2012) at 110:9-24.)<br><br>The District's principle [sic] hydrogeologist confirmed:<br><br>"Each focus plume (with associated stations) is located within a pumping depression [of a major supply well or wells]. Based on the prevalent downward hydraulic gradient beneath each station, MTBE that has migrated off-site from each station will move downward into the principal aquifer and be carried to the pumping wells that created the pumping depressions."<br><br>(Declaration of Roy Herndon in Support of Plaintiff Orange County Water District's | County Water District? [Objection] THE WITNESS: I haven't formulated any opinion."); Id., pp. 371:20-372:5 ("I haven't performed any analysis to look at any individual station as to whether -- what the pathway is from that station to any ultimate well."); Id., p. 372:7-20 ("I don't have a specific opinion as to which station contributes MTBE to which production well. So I'm – I'm – that's stated a little differently than what you said, but that's my answer to your question."); Id., p. 405:11-405:21 ("I haven't done any analysis to isolate whether MTBE -- the MTBE from a specific station has reached any specific production well.")<br><br>Fogg provided no opinion as to whether any of the stations at issue on this motion require any additional remediation or whether they pose a threat to any drinking water well or aquifer.  Condron Reply Decl. Exh. 2 (Fogg Dep., Jan. 21, 2012, at 59:17-60:4 ("Q. Other than looking at site data that was in other expert reports, have you done any analysis of any individual gasoline site in this case?  A. No."); 78:23-25 ("As I said earlier, I have not investigated specific sites and provided a specific opinion on adequacy of monitoring at specific sites."); 91:19-92:3 (Q. Do you have an opinion, |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | Opposition to Omnibus Motion for Summary Judgment (July 21,2014) ¶ 3 ("Herndon Decl.").) | Dr. Fogg, that MTBE from any of the 34 stations in this case poses a short- or long-term threat of MTBE contamination to any particular well in Orange County Water District? [Objection] A. I – my opinions are not that specific."); 98:7-11 ("If you mean that I don't have an opinion that a specific contaminant site can be anticipated to contribute MTBE to a specific water supply well or wells, that's correct, that my opinion is not that specific."); 112:2-9 ("Q. Are there any specific sites where you have the opinion that the MTBE mass has migrated beyond the monitoring well network? {Objection} THE WITNESS: That's beyond the scope of my testimony."); 116:8-10 "Opinions on specific stations and plumes are beyond the scope of my opinions and testimony.")) <br><br> Herndon's declaration also fails to provide any information specific to these stations as to the need for further remediation or the existence of any threat to a water supply well or aquifer from the stations at issue on this motion. |
| 2.  Brown provided a lengthy expert report and a rebuttal report in this case, but he also produced a chart at his | 2.  Undisputed. | 3.  **Undisputed**. |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| deposition, which was marked as Exhibit 36.<br><br>Condron Decl. Exh. 2 (Exhibit 36 to the Deposition of Anthony Brown ("Brown Exh. 36"); Condron Decl. Exh. 3 (Deposition of Anthony Brown ("Brown Dep.") at 218: 15-219: 13' 257:24-258: 14.) | | |
| 3.  Exhibit 36 summarized Brown's most up-to-date opinions as to whether a series of 22 propositions are "more likely than not" true for each of the Focus Sites he examined. Exhibit 36 contained the opinions that Brown would offer at trial and, to the extent they differed from those in his expert report, the opinions expressed in Exhibit 36 and his deposition testimony superseded the opinions in his expert report.<br><br>Condron Decl. Exh. 3 (Brown Dep. at 668:5-6,639:19-20). | 3.  Disputed<br><br>The detailed analysis, assessment, and basis for opinions set forth in Mr. Brown's expert report and deposition testimony is not reflected in Exhibit 36. (O'Reilly Decl., Ex. 2, Expert Report of Anthony Brown and Robert Stollar (May 28, 2011) at Appendix B.6.)<br><br>Brown Exh. 36 does not "summarize" Mr. Brown's opinions. His opinions include his reasoning and analysis. Exhibit 36 simply uses a single symbol to reflect Mr. Brown's conclusions in 22 different categories. Brown Exh. 36 does not discuss the relationship between the categories or the reasons for the conclusions. (O'Reilly Decl., Ex. 3, Brown Depo. (Dec. 29, 2011) at 30:20-30:24.) Brown Exh. 36 is merely a roadmap or key to the opinions.<br><br>As demonstrated below, Mr. Brown's opinions are specific | 3.  **OCWD's dispute is illusory and immaterial.** Brown testified that the opinions expressed in Ex. 36 were his "current opinions," that they modified the opinions in his expert report to the extent they conflicted, and that the opinions expressed in Exhibit 36 would be the opinions he would offer at trial.  Condron Decl. Exh. 3 (Brown Dep. at 668:5-6, 639:19-20).  Condron Reply Decl. Exh. 3 (Brown Dep. 1065:16-1066:16) ("And I've made the clarification that where an  opinion that's presented on Exhibit 36 is perhaps in conflict with an opinion in the report, the opinion on Exhibit 36 takes precedence and essentially 'trumps' -- I think the word was used -- any opinion within the reports"); 1325:5-12 ("the only caveat I would provide is if there are any conflicts between the opinions I've provided in Exhibit 36, and anything that can be construed as an opinion in my summary report, the Exhibit 36 |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | to each station and take into consideration a multitude of station specific factors. Mr. Brown's opinions are, therefore, not as generic as presented by defendants. | opinions, would be the most current and would take precedence over any conflicting opinions presented in the summary report"); 1413:16-21 ("Where the opinions expressed within Exhibit 36 are in conflict or could be perceived as being in conflict with any opinion or comment made in the expert report, the opinions on Exhibit 36 are my current opinions and would take precedence over any of -- conflicting statements made in my opinion report.") |
| 4.  For each of the 22 propositions in Exhibit 36, as applied to each Focus Site, Brown indicated "Y" if the proposition was more likely than not true; "N" if the proposition was likely not true; or "P" (for "possible") "[i]f we could not determine that it was more likely than not .... "<br><br>Condron Decl. Exh. 3 (Brown Dep. at 639:7-10). | 4.  Disputed<br><br>The "Yes" and "Possible" symbols in Brown Exh. 36 are not as absolute or conclusive as suggested by defendants. The "Notes" on Brown Exh. 36 clearly indicate that some of the "Y" and "P" symbols are qualified or tentative because of important gaps in the data needed to affirm the opinion. (O'Reilly Decl., Ex. 3, Brown Depo. (Dec. 29, 2011) at 30:20-30:24.) With respect to Unocal #5123, for example, virtually all of Mr. Brown's "Yes" or "Possible" entries are qualified due to the fact that MTBE has not been analyzed for since 1997. | 4.  **OCWD's dispute is illusory and immaterial.** Brown's testimony speaks for itself, and the testimony from Brown that plaintiff submits does not contradict or controvert Defendants' undisputed fact.  Expert testimony that merely states that an injury or damages are "possible" is insufficient to carry plaintiff's burden.  Cal. Civ. Code § 3283.  *Accord Vestar Dev. II, LLC v. General Dynamics Corp.*, 249 F.3d 958, 961 (9th Cir. 2001) ("[i]t has long been settled in California that 'the proof must establish with reasonable certainty and probability that damages will result in the future to the person wronged'"), quoting *Caminetti v. Manierre*, 23 Cal.2d 94, 101, 142 P.2d 741, 745 (1943); *Frustuck v. City of* |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | | *Fairfax*, 212 Cal. App. 2d 345, 367-68 (1st Dist. 1963) ("damages which are speculative … or merely possible cannot serve as a legal basis for recovery"). |
| 5.  Brown testified that the term "threat" "would be defined as the contamination that has resulted from a release at a particular facility could potentially either impact aquifers that would be used for or potentially used for drinking water supply, and that's reflected in question or opinion 21 on my summary table." Condron Decl. Exh. 3 (Brown Dep, at 638:2-8). Brown testified that a "threat" would include "contamination [that] could potentially impact [a] water supply well." Condron Decl. Exh. 3 (Brown Dep. at 638:14-15). | 5.  Undisputed as to text of testimony, otherwise Disputed.<br><br>Defendants fail to include important testimony from Mr. Brown indicating the limits of the "threat" analysis that he performed which was preliminary and limited:<br><br>In evaluating each of the specific service stations, I would obviously look at the historical and current contaminant concentration data, groundwater flow direction, the remediation activities that have occurred at the site. And based upon that and potential data gaps that exist, I would attempt to reach a conclusion that it is more likely than not that the contaminants do pose a threat to water supply wells.<br><br>(O'Reilly Decl., Ex. 3, Brown Depo (Jan. 2, 2012) at 441:8-442:1.) Mr. Brown further explained that:<br><br>As I have discussed in response to earlier questions, if we believe | 5.  **OCWD's dispute is illusory and immaterial.** Plaintiff fails to controvert the undisputed testimony Defendants cite.  Expert testimony that merely states that an injury or damages are "possible" is insufficient to carry plaintiff's burden.  Cal. Civ. Code § 3283.  *Accord Vestar Dev. II, LLC v. General Dynamics Corp.*, 249 F.3d 958, 961 (9th Cir. 2001) ("[i]t has long been settled in California that 'the proof must establish with reasonable certainty and probability that damages will result in the future to the person wronged'"), quoting *Caminetti v. Manierre*, 23 Cal.2d 94, 101, 142 P.2d 741, 745 (1943); *Frustuck v. City of Fairfax*, 212 Cal. App. 2d 345, 367-68 (1st Dist. 1963) ("damages which are … merely possible cannot serve as a legal basis for recovery"). |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | that it was more likely than not the contamination posed a threat, then in response to question No. 22, the answer would be "Yes." | |
| | If we believe that the contamination did not pose a threat, then the answer would be "No." | |
| | If we could not determine that it was more likely than not that the contamination posed a threat, but also not determine that it was more likely than not that it did not pose a threat, then it was left as a "Possible." | |
| | (O'Reilly Decl., Ex. 3, Brown Depo (Jan. 3, 2012) 638:25-639:11 [emphasis added].) | |
| | Mr. Brown also testified that the lack of "vertical delineation" of MTBE contamination "at almost every site" was a significant impairment to his ability to formulate opinions concerning threats to deeper aquifers. (O'Reilly Decl., Ex. 3, Brown Depo. (Jan. 25 12) at 924:12-19.) | |
| BEACON BAY FV | | |
| 6.  Brown could not testify that it was more likely than not that further on-site or | 6.  Disputed.<br><br>With respect to the Beacon | 6.  **OCWD's dispute is illusory and immaterial.** Plaintiff fails to controvert the |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| offsite remediation was needed at Beacon Bay FV, or that releases from that station posed a threat to water supply wells or water supply aquifers.<br><br>Condron Decl., Exh. 2 (Brown Exh. 36). | Bay, FV station, Brown testified that<br><br>• Sufficient MTBE has been released to impact groundwater off-site.<br><br>• MTBE contamination has migrated off-site<br><br>• MTBE contamination has commingled offsite with Thrifty #383 and Arco #1912<br><br>• Remediation failed to prevent MTBE contamination from migrating off-site<br><br>• Remediation failed to clean up MTBE contamination that migrated off-site<br><br>• Additional off-site assessment is required, including assessment of deeper groundwater<br><br>• It is "possible" that remediation of off-site MTBE contamination will be required, and that this contamination poses a threat to deeper aquifers and wells.<br><br>(Condron Decl., Exh. 2 (Brown Exh. 36).)<br><br>Defense witnesses, including expert Anthony Daus, agree that MTBE contamination at the Beacon Bay, FV site has migrated off-site and commingled with other stations in Plume 3. (O'Reilly Decl., Ex. 7, Luka Depo. | undisputed evidence Defendants cite. Expert testimony that merely states that an injury or damages are "possible" is insufficient to carry plaintiff's burden. Cal. Civ. Code § 3283. *Accord Vestar Dev. II, LLC v. General Dynamics Corp.*, 249 F.3d 958, 961 (9th Cir. 2001) ("[i]t has long been settled in California that 'the proof must establish with reasonable certainty and probability that damages will result in the future to the person wronged'"), quoting *Caminetti v. Manierre*, 23 Cal.2d 94, 101, 142 P.2d 741, 745 (1943); *Frustuck v. City of Fairfax*, 212 Cal. App. 2d 345, 367-68 (1st Dist. 1963) ("damages which are … merely possible cannot serve as a legal basis for recovery"). |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | (March 27,2009) at 281:23-282:10; Ex. 8, Daus Depo. (Feb. 2, 2012) at 395:14-396:2,397:10-17.) Mr. Daus admitted that he does not know how much MTBE migrated off-site from Beacon Bay, FV or how far it has gone. (Daus Depo. (Feb. 2, 2012) at 395:14-396:2, 397:10-17.) | |
| 7.  Brown testified at his deposition:<br><br>Q. Do you have an opinion that the alleged MTBE or TBA from Beacon Bay, Fountain Valley is a threat to any specific drinking water wells in Orange County?<br><br>***<br><br>A. I've only been able to conclude that the release at Beacon Bay Auto Wash, Fountain Valley is a possible threat to water supply wells, but I've been able to -unable to conclude that it's more likely than not that the release poses a threat to a water supply.<br><br>Condron Decl. Exh. 3 (Brown Dep. at 1333:7-16). | 7.  Undisputed as to text of Mr. Brown's testimony, otherwise Disputed.<br><br>Mr. Brown explained during his deposition that a "possible" means that he was unable to reach a conclusion and that a "possible" does not mean the station does not pose a threat to deeper aquifers or wells. (O'Reilly Decl., Ex. 3, Brown Depo (Jan. 2, 2012) at 441:8-442:1; Brown Depo (Jan. 3,2012) 638:25-639:11 [emphasis added].)<br><br>MTBE was detected in groundwater at Beacon Bay, FV at 4,770 ppb when it was first sampled for in April 1996. (Wheatcraft Decl. ¶ 12.) MTBE was subsequently detected in groundwater as high as 100,000 ppb. (Id.) Groundwater off-site has not been sampled for contamination. (Id.) Where no off-site sampling has occurred, transport modeling is the best method of determining the likely fate of MTBE found in | 7.  **OCWD's dispute is illusory and immaterial.** Plaintiff fails to controvert the undisputed testimony Defendants cite.  Expert testimony that merely states that an injury or damages are "possible" is insufficient to carry plaintiff's burden.  Cal. Civ. Code § 3283. *Accord Vestar Dev. II, LLC v. General Dynamics Corp.*, 249 F.3d 958, 961 (9th Cir. 2001) ("[i]t has long been settled in California that 'the proof must establish with reasonable certainty and probability that damages will result in the future to the person wronged'"), quoting *Caminetti v. Manierre*, 23 Cal.2d 94, 101, 142 P.2d 741, 745 (1943); *Frustuck v. City of Fairfax*, 212 Cal. App. 2d 345, 367-68 (1st Dist. 1963) ("damages which are … merely possible cannot serve as a legal basis for recovery").<br><br>Neither Wheatcraft's model nor his testimony identifies any need for remediation at |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | groundwater on-site. (Id.)<br><br>Dr. Wheatcraft modeled the MTBE released from Beacon Bay, FV. (Wheatcraft Decl. ¶ 4.) The modeling showed that the MTBE released from Beacon Bay, FV has migrated off-site and mixed with MTBE from other stations, and contributed to focus plumes. (Id. ¶ 5.) The modeling showed the MTBE contributed by Beacon Bay, FV will converge with MTBE released by other stations to impact deeper aquifers and drinking water wells. (Id. ¶¶ 6-7.)<br><br>The District's Chief Hydrogeologist, Roy Herndon, also concluded that this station posed a threat to drinking water resources and wells because the station is located within the "pumping depression" of a major supply well or wells. (Herndon Decl. ¶ 3.) | these stations, and he testified that he was unable to make any connection between a release of MTBE gasoline from any of the stations at issue on this motion and any drinking water well or the deeper aquifer.  (Jan. 16, 2012 Deposition of Stephen Wheatcraft), p. 115:23-24 ("I didn't breakdown any of the analysis that I did by station"); *Id.*, p. 116:22-117:20 ("Q. And did you, for purposes of the work that you performed in this case, at any time where there are several service stations potentially impacting grids, model the individual stations to determine what impact they may have in the future on potable water supplies? [Objection]  THE WITNESS: We haven't done any models in which we isolated a particular source and ran only that source, no. BY MR. STACK: Q. Did you, in the course of your work, do any analysis in which you allocated responsibility from several service stations impacting grid cells in your model to assign a percentage of the responsibility for contamination being detected at some future date in a potable water supply well? [Objection] THE WITNESS: No, we -- we did not analyze or isolate any particular station in the course of our analysis in modeling."); *Id.*, p. 122:1-4 |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | | ("[W]e didn't analyze, again, which – whether it was coming from this particular site or that site in terms of an origin. That wasn't a question we were looking at."); Roy Dec., Ex. 73 (Jan. 17, 2012 Wheatcraft Depo.), pp. 368:19-369:9 ("THE WITNESS: I haven't done any analysis. As we, again, talked about yesterday, that identifies MTBE from a specific station and whether it mingles or commingles with other plumes and whether or not MTBE from a particular station reaches a particular well."); *Id.*, p. 370:2-5 ("I haven't done any analysis to identify which station or stations is responsible or are responsible for MTBE concentrations in specific production wells."); *Id.*, p. 370:9-18 ("Is it true that you do not have an opinion whether or not gasoline containing MTBE from that site has in the past reached any drinking water well in Orange County Water District? [Objection] THE WITNESS: I haven't formulated any opinion."); *Id.*, pp. 371:20-372:5 ("I haven't performed any analysis to look at any individual station as to whether -- what the pathway is from that station to any ultimate well."); *Id.*, p. 372:7-20 ("I don't have a specific opinion as to which station contributes MTBE to which |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | | production well. So I'm – I'm – that's stated a little differently than what you said, but that's my answer to your question."); *Id.*, p. 405:11-405:21 ("I haven't done any analysis to isolate whether MTBE -- the MTBE from a specific station has reached any specific production well.")<br><br>Bolin's and Herndon's declarations fail to provide any information specific to these stations as to the need for further remediation or the existence of any threat to a water supply well or aquifer from the stations at issue on this motion. |
| 8.  Brown testified that "[w]ith respect to water supply wells, I could only conclude that the release [at Beacon Bay FV] poses a possible threat. I could not conclude that it was more likely than not."<br><br>Condron Decl, Exh. 3 (Brown Dep, at 1375:17-20) | 8.  Undisputed as to text of testimony, otherwise Disputed for the same reasons as set forth in Response to Paragraphs 6 and 7 supra. | 8.  See Defendants' Reply to Paragraphs 6 and 7 *supra*. |
| 9.  Brown was unable to conclude that any additional off-site remediation was necessary at Beacon Bay FV, or that the site posed a threat to deeper drinking water aquifers:<br><br>Q. Okay. Question 20, you think it's possible that off-site remediation will be needed at this site, but you | 9.  Undisputed as to testimony, otherwise Disputed for the same reasons set forth in Response to Paragraphs 3-5 and 6-7 supra.<br><br>Beacon Bay, FV is part of Plume No.3 which is associated with District monitoring wells OCWD-Ml0, OCWD-M11, and OCWDM45. (Bolin Decl. | 9.  See Defendants' Reply to Paragraphs 3, 5, 6 and 7 *supra*.  Neither Bolin nor Wheatcraft provides any evidence that Beacon Bay FV is responsible for any past, present or future MTBE detections in any wells. |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| don't know whether it's more likely than not. Is that right -- fair? <br><br> A. That is correct. <br><br> Q. And looking at your chart again, you think it's possible that contamination from this site poses a threat to deeper aquifers, but you don't have an opinion as to whether it's more likely than not? <br><br> A. That is correct. <br><br> Condron Decl. Exh. 3 (Brown Dep. at 1364:13-1365: 17). | ¶ 3.) MTBE has been detected in OCWD-M45. (Id.) Dr. Wheatcraft's model also predicts that all of these wells will be impacted by MTBE. (Wheatcraft Decl. ¶ 8.) | |
| 10.  Brown concluded that no further on-site remediation was needed at Beacon Bay FV, Condron Decl. Exh. 2 (Brown Exh. 36, Opinion 19): <br><br> Q. And Question 19, it's your opinion that it's more likely than not that no additional on-site delineation is needed -- excuse me –no additional on-site remediation of groundwater is needed, correct? <br><br> A. That is correct. <br><br> Q. It's your opinion that on-site remediation has effectively controlled the contamination, correct? | 10.  Undisputed as to testimony, otherwise Disputed. <br><br> The fact that no further on-site remediation is needed does not establish that the District has not been harmed by off-site MTBE from Beacon Bay, FV as set forth in Response to Paragraphs 6, 7, and 9 supra. <br><br> Mr. Brown testified that on-site remediation at Beacon Bay, FV, failed to prevent MTBE contamination from migrating off-site, and failed to clean up MTBE contamination that migrated off-site. Thus, Mr. Brown concluded that additional off-site assessment is required, including assessment of | 10.  **OCWD's dispute is illusory and immaterial.** Plaintiff fails to controvert the undisputed testimony Defendants cite.  Expert testimony that merely states that an injury or damages are "possible" is insufficient to carry plaintiff's burden. Cal. Civ. Code § 3283.  *Accord Vestar Dev. II, LLC v. General Dynamics Corp.*, 249 F.3d 958, 961 (9th Cir. 2001) ("[i]t has long been settled in California that 'the proof must establish with reasonable certainty and probability that damages will result in the future to the person wronged'"), quoting *Caminetti v. Manierre*, 23 Cal.2d 94, 101, 142 P.2d 741, 745 (1943); *Frustuck v. City of* |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| *** <br><br> A. Correct. Question 14 would indicate that the remediation performed has effectively addressed the on-site groundwater contamination. <br><br> Condron Decl. Exh. 3 (Brown Dep. at 1359:21-1360:8) | deeper groundwater. <br><br> (Condron Decl, Exh. 2 (Brown Exh. 36).) | *Fairfax*, 212 Cal. App. 2d 345, 367-68 (1st Dist. 1963) ("damages which are … merely possible cannot serve as a legal basis for recovery"). <br><br> The Orange County Health Care Agency issued a Remedial Action Completion Certification to Beacon Bay on April 19, 2006, stating that "no further action related to the petroleum release(s) at the site is required." Condron Reply Decl. Exh. 4. |
| | UNOCAL #5399 | |
| 11.  Brown testified at his deposition that it was more likely than not that Unocal #5399 did not pose a threat to water supply wells: <br><br> Q. And you do not think that the alleged MTBE released from Unocal 5399 is a threat to any specific drinking water wells in Orange County, correct? <br><br> A. If you refer to Exhibit 35 for Unocal station 5399, question 22. <br><br> Q. I think you meant 36. <br><br> A. Sorry, yes. Excuse me, 36. Question 22 states, "Releases at the facility pose a threat to water supply wells?" I have concluded that it is more | 11.  Undisputed as to testimony, otherwise Disputed <br><br> Brown testified that <br><br> • Sufficient MTBE has been released to impact groundwater off-site. <br><br> • MTBE contamination has migrated off-site <br><br> • MTBE contamination has possibly commingled with Texaco #121681 <br><br> • Remediation failed to prevent MTBE contamination from migrating off-site <br><br> • Remediation failed to clean up MTBE contamination that migrated off-site <br><br> • Additional off-site assessment is required, | 11.  **OCWD's dispute is illusory and immaterial.** Plaintiff fails to controvert the undisputed testimony Defendants cite.  Expert testimony that merely states that an injury or damages are "possible" is insufficient to carry plaintiff's burden.  Cal. Civ. Code § 3283.  *Accord Vestar Dev. II, LLC v. General Dynamics Corp.*, 249 F.3d 958, 961 (9th Cir. 2001) ("[i]t has long been settled in California that 'the proof must establish with reasonable certainty and probability that damages will result in the future to the person wronged'"), quoting *Caminetti v. Manierre*, 23 Cal.2d 94, 101, 142 P.2d 741, 745 (1943); *Frustuck v. City of Fairfax*, 212 Cal. App. 2d 345, 367-68 (1st Dist. 1963) |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| likely than not that they do not pose such a threat.<br><br>Condron Decl. Exh. 3 (Brown Dep. at 915:7-22). | including assessment of deeper groundwater<br><br>• It is "possible" that remediation of off-site MTBE contamination will be required.<br><br>Condron Decl, Exh. 2 (Brown Exh. 36).<br><br>Mr. Brown explained during his deposition that a "possible" means that he was unable to reach a conclusion and that a "possible" does not mean the station does not pose a threat to deeper aquifers. (O'Reilly Decl., Ex. 3, Brown Depo (Jan. 2,2012) at 441:8-442: 1; Brown Depo (Jan. 3,2012) 638:25-639:11 [emphasis added].)<br><br>Mr. Brown's ability to form conclusions about off-site contamination at Unocal #5399 was impaired because MTBE had not been sampled for at the site since 1997. (O'Reilly Decl., Ex. 3, Brown Depo. (Jan. 25,2012) at 919:23-920: 13.)<br><br>MTBE was detected in groundwater at 310 ppb when it was first sampled for in March 1996. (Wheatcraft Decl. ¶ 13.) MTBE was subsequently detected in groundwater as high as 2,000 ppb. (Id.) Groundwater off-site has not been sampled for contamination. (Id.) Where no | ("damages which are speculative … or merely possible cannot serve as a legal basis for recovery").<br><br>Neither Wheatcraft's model nor his testimony identifies any need for remediation at these stations, and he testified that he was unable to make any connection between a release of MTBE gasoline from any of the stations at issue on this motion and any drinking water well or the deeper aquifer.  (Jan. 16, 2012 Deposition of Stephen Wheatcraft), p. 115:23-24 ("I didn't breakdown any of the analysis that I did by station"); *Id.*, p. 116:22-117:20 ("Q. And did you, for purposes of the work that you performed in this case, at any time where there are several service stations potentially impacting grids, model the individual stations to determine what impact they may have in the future on potable water supplies? [Objection]  THE WITNESS: We haven't done any models in which we isolated a particular source and ran only that source, no. BY MR. STACK: Q. Did you, in the course of your work, do any analysis in which you allocated responsibility from several service stations impacting grid cells in your model to assign a percentage of the responsibility for contamination being detected |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | off-site sampling has occurred, transport modeling is the best method of determining the likely fate of MTBE found in groundwater on-site. (Id.)

Dr. Wheatcraft modeled the MTBE released from the Unocal #5399 station. (Wheatcraft Decl. ¶ 4.) The modeling showed that the MTBE released from Unocal #5399 has migrated off-site and mixed with MTBE from other stations, and contributed to focus plumes. (ld. ¶ 5.) More importantly, Wheatcraft's modeling showed the MTBE contributed by Unocal #5399 will converge with MTBE released by other stations to impact deeper aquifers and drinking water wells. (Id. ¶¶ 6-7.)

The District's Chief Hydrogeologist, Roy Herndon, also concluded that this station posed a threat to drinking water resources and wells because the station is located within the "pumping depression" of a major supply well or wells. (Herndon Decl. ¶ 3.)

Unocal #5399 is part of Plume No.1, and City of Newport Beach drinking water well MB-TAMD is associated with this plume. (Bolin Decl., ¶ 2.) MTBE was detected twice, in 2005 and 2008, in NB-TAMD. (Bolin Decl., ¶ 2.) | at some future date in a potable water supply well? [Objection] THE WITNESS: No, we -- we did not analyze or isolate any particular station in the course of our analysis in modeling."); *Id.*, p. 122:1-4 ("[W]e didn't analyze, again, which – whether it was coming from this particular site or that site in terms of an origin. That wasn't a question we were looking at."); Roy Dec., Ex. 73 (Jan. 17, 2012 Wheatcraft Depo.), pp. 368:19-369:9 ("THE WITNESS: I haven't done any analysis. As we, again, talked about yesterday, that identifies MTBE from a specific station and whether it mingles or commingles with other plumes and whether or not MTBE from a particular station reaches a particular well."); *Id.*, p. 370:2-5 ("I haven't done any analysis to identify which station or stations is responsible or are responsible for MTBE concentrations in specific production wells."); *Id.*, p. 370:9-18 ("Is it true that you do not have an opinion whether or not gasoline containing MTBE from that site has in the past reached any drinking water well in Orange County Water District? [Objection] THE WITNESS: I haven't formulated any opinion."); *Id.*, pp. 371:20-372:5 ("I haven't performed any analysis to look at any |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | Additionally, NB-TAMS, HB-9, NB-DOLD and NB-DOLS drinking water wells are associated with Plume No.1. (Bolin Decl., ¶ 2.) Dr. Wheatcraft's model also predicts that all of these wells will be impacted by MTBE. (Wheatcraft Decl. ¶ 8.) | individual station as to whether -- what the pathway is from that station to any ultimate well."); *Id.*, p. 372:7-20 ("I don't have a specific opinion as to which station contributes MTBE to which production well. So I'm – I'm – that's stated a little differently than what you said, but that's my answer to your question."); *Id.*, p. 405:11-405:21 ("I haven't done any analysis to isolate whether MTBE -- the MTBE from a specific station has reached any specific production well.")<br><br>Bolin's and Herndon's declarations fail to provide any information specific to these stations as to the need for further remediation or the existence of any threat to a water supply well or aquifer from the stations at issue on this motion. |
| 12.  Brown could not testify that it was more likely than not that an alleged release of MTBE from Unocal #5399 posed any threat to deep aquifers.<br><br>Condron Decl. Exh. 3 (Brown Dep. at 924:1-5 (Q. "Again, you think it's possible that contamination from Unocal 5399 is a threat to deep aquifers, but you can't say whether or not it's more likely than not that's the case, | 12.  Disputed for the reasons set forth in<br><br>Response to Paragraph 11 supra. | 12.  **OCWD's dispute is illusory and immaterial.** Plaintiff fails to controvert the undisputed testimony Defendants cite.  Expert testimony that merely states that an injury or damages are "possible" is insufficient to carry plaintiff's burden.  Cal. Civ. Code § 3283.  *Accord Vestar Dev. II, LLC v. General Dynamics Corp.*, 249 F.3d 958, 961 (9th Cir. 2001) ("[i]t has long been settled in California that 'the proof must establish with reasonable |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| correct? A. That's correct.")). | | certainty and probability that damages will result in the future to the person wronged'"), quoting *Caminetti v. Manierre*, 23 Cal.2d 94, 101, 142 P.2d 741, 745 (1943); *Frustuck v. City of Fairfax*, 212 Cal. App. 2d 345, 367-68 (1st Dist. 1963) ("damages which are … merely possible cannot serve as a legal basis for recovery").<br><br>See Reply to Paragraph 11. |
| 13.  Brown could not opine that off-site remediation is necessary, and he stated that remedial activities at Unocal #5399 had addressed alleged on-site impacts:<br><br>Q. Now, you do think that the current remediation has effectively addressed the on-site MTBE contamination, correct? And that's question 14.<br><br>A. Yes. And, as indicated, the only remediation activities was [sic] an excavation performed at this facility back in late 1994.<br><br>Q. It's your opinion that no more on-site remediation is needed at this site, correct?<br><br>A. That's correct.<br><br>Q. And in terms of question 20, the off-site | 12  [sic]. Disputed for the reasons set forth in Response to Paragraphs 3-5, and 11 supra and as follows:<br><br>Mr. Brown testified that on-site remedial activities had not addressed or contained MTBE contamination which had migrated offsite. Condron Decl. Exh. 2, Brown Exh. 36. Mr. Brown testified that it is "possible" that off-site remediation is necessary as additional off-site assessment is required, including assessment of deeper groundwater. (Id.) | 13.  **OCWD's dispute is illusory and immaterial.** Plaintiff fails to controvert the undisputed testimony Defendants cite.  Expert testimony that merely states that an injury or damages are "possible" is insufficient to carry plaintiff's burden.  Cal. Civ. Code § 3283.  *Accord Vestar Dev. II, LLC v. General Dynamics Corp.*, 249 F.3d 958, 961 (9th Cir. 2001) ("[i]t has long been settled in California that 'the proof must establish with reasonable certainty and probability that damages will result in the future to the person wronged'"), quoting *Caminetti v. Manierre*, 23 Cal.2d 94, 101, 142 P.2d 741, 745 (1943); *Frustuck v. City of Fairfax*, 212 Cal. App. 2d 345, 367-68 (1st Dist. 1963) ("damages which are … merely possible cannot serve as a legal basis for recovery"). |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| remediation, again, it may need it, but you can't say whether it's more likely than not it's needed, correct?<br><br>A. That's correct.<br><br>Condron Decl. Exh. 3 (Brown Dep. at 920:19-921:7). | | |

| UNOCAL #5123 | | |
|---|---|---|

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| 14.  Brown was unable to opine that Unocal #5123 posed any threat to drinking water wells:<br><br>Q. Mr. Brown, you do not have an opinion that the alleged MTBE from Unocal 5123 is a threat to any specific drinking water wells in Orange County, do you?<br><br>A. I have only been able to conclude that it poses a possible threat. I have not been able to conclude that that threat is more likely than not.<br><br>Condron Decl. Exh. 3 (Brown Dep, at 1021:15-23). | 14.  Undisputed as to testimony, otherwise disputed.<br><br>Brown testified that<br><br>• Sufficient MTBE has been released to impact groundwater off-site.<br><br>• MTBE contamination has migrated off-site<br><br>• MTBE contamination has possibly commingled off-site with Huntington Beach Arco<br><br>• Remediation failed to prevent MTBE contamination from migrating off-site<br><br>• Remediation possibly failed to clean up MTBE contamination that migrated off-site<br><br>• Additional off-site assessment is required, including assessment of deeper groundwater<br><br>• It is "possible" that | 14. **OCWD's dispute is illusory and immaterial.** Plaintiff fails to controvert the undisputed testimony Defendants cite.  Expert testimony that merely states that an injury or damages are "possible" is insufficient to carry plaintiff's burden.  Cal. Civ. Code § 3283.  *Accord Vestar Dev. II, LLC v. General Dynamics Corp.*, 249 F.3d 958, 961 (9th Cir. 2001) ("[i]t has long been settled in California that 'the proof must establish with reasonable certainty and probability that damages will result in the future to the person wronged'"), quoting *Caminetti v. Manierre*, 23 Cal.2d 94, 101, 142 P.2d 741, 745 (1943); *Frustuck v. City of Fairfax*, 212 Cal. App. 2d 345, 367-68 (1st Dist. 1963) ("damages which are … merely possible cannot serve as a legal basis for recovery").<br><br>Neither Wheatcraft's model |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | remediation of off-site MTBE contamination will be required, and that this contamination poses a threat to deeper aquifers and wells.<br><br>Condron Decl, Exh. 2 (Brown Exh. 36).<br><br>Mr. Brown explained during his deposition that a "possible" means that he was unable to reach a conclusion and that a "possible" does not mean the station does not pose a threat to deeper aquifers or wells. (O'Reilly Decl., Ex. 3 Brown Depo (Jan. 2 2012) at 441:8-442:1; Brown Depo (Jan. 3, 2012) 638:25-639:11 [emphasis added].)<br><br>MTBE was detected in groundwater at 32,000 ppb when it was first sampled for in February 1996. (Wheatcraft Decl. ¶ 14.) This was the highest detection of MTBE at this site. (Id.) The MTBE sampling data for this site does not indicate what happened to the MTBE when it migrated off-site. (Id.) Transport modeling is the best method of determining the likely fate of MTBE found in groundwater on-site. (Id.)<br><br>Dr. Wheatcraft modeled the MTBE released from Unocal #5123. (Wheatcraft Decl. at ¶ 4.) Dr. Wheatcraft's modeling showed that the MTBE released from Unocal | nor his testimony identifies any need for remediation at these stations, and he testified that he was unable to make any connection between a release of MTBE gasoline from any of the stations at issue on this motion and any drinking water well or the deeper aquifer.  (Jan. 16, 2012 Deposition of Stephen Wheatcraft), p. 115:23-24 ("I didn't breakdown any of the analysis that I did by station"); *Id.*, p. 116:22-117:20 ("Q. And did you, for purposes of the work that you performed in this case, at any time where there are several service stations potentially impacting grids, model the individual stations to determine what impact they may have in the future on potable water supplies? [Objection]  THE WITNESS: We haven't done any models in which we isolated a particular source and ran only that source, no. BY MR. STACK: Q. Did you, in the course of your work, do any analysis in which you allocated responsibility from several service stations impacting grid cells in your model to assign a percentage of the responsibility for contamination being detected at some future date in a potable water supply well? [Objection] THE WITNESS: No, we -- we did not analyze or isolate any particular station |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | #5123 has migrated off-site and mixed with MTBE from other stations, and contributed to focus plumes. (Wheatcraft Decl. ¶ 5.) Wheatcraft's modeling showed the MTBE contributed by Unocal #5123 will converge with MTBE released by other stations to impact deeper aquifers and drinking water wells. (Wheatcraft Decl. ¶¶ 6-7.)<br><br>The District's Chief Hydrogeologist, Roy Herndon, also concluded that this station posed a threat to drinking water resources and wells because the station is located within the "pumping depression" of a major supply well or wells. (Herndon Decl. ¶ 3.)<br><br>Unocal #5123 is part of Plume No.9, and City of Huntington Beach drinking water wells HB-1, HB-13, HB-4, and HB-7 are associated with this plume. (Bolin Decl. ¶ 4.) Dr. Wheatcraft's model predicts that all of these wells will be impacted by MTBE. (Wheatcraft Decl. ¶ 8.) | in the course of our analysis in modeling."); *Id.*, p. 122:1-4 ("[W]e didn't analyze, again, which – whether it was coming from this particular site or that site in terms of an origin. That wasn't a question we were looking at."); Roy Dec., Ex. 73 (Jan. 17, 2012 Wheatcraft Depo.), pp. 368:19-369:9 ("THE WITNESS: I haven't done any analysis. As we, again, talked about yesterday, that identifies MTBE from a specific station and whether it mingles or commingles with other plumes and whether or not MTBE from a particular station reaches a particular well."); *Id.*, p. 370:2-5 ("I haven't done any analysis to identify which station or stations is responsible or are responsible for MTBE concentrations in specific production wells."); *Id.*, p. 370:9-18 ("Is it true that you do not have an opinion whether or not gasoline containing MTBE from that site has in the past reached any drinking water well in Orange County Water District? [Objection] THE WITNESS: I haven't formulated any opinion."); *Id.*, pp. 371:20-372:5 ("I haven't performed any analysis to look at any individual station as to whether -- what the pathway is from that station to any ultimate well."); *Id.*, p. 372:7-20 ("I don't have a specific |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | | opinion as to which station contributes MTBE to which production well. So I'm – I'm – that's stated a little differently than what you said, but that's my answer to your question."); *Id.*, p. 405:11-405:21 ("I haven't done any analysis to isolate whether MTBE -- the MTBE from a specific station has reached any specific production well.")<br><br>Bolin's and Herndon's declarations fail to provide any information specific to these stations as to the need for further remediation or the existence of any threat to a water supply well or aquifer from the stations at issue on this motion. |
| 15.  Brown cannot state with any reasonable degree of certainty that an alleged release from Unocal #5123 poses a threat to the water supply in Orange County- either to the deep aquifers or to water supply wells:<br><br>Once again, I cannot conclude that the releases more than likely than not pose a threat to deeper aquifers, only that they possibly pose such a threat.<br><br>***<br><br>Yes, I'm of the same opinion, that I could not conclude that it's more likely than not that the releases pose a threat to | 15.  Undisputed as to testimony, otherwise Disputed as set forth in Response to Paragraph 14. | 15.  **OCWD's dispute is illusory and immaterial.**  See Defendants' Reply to Paragraph 14. |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| water supply wells, only that they pose a possible threat.<br><br>Condron Decl. Exh. 3 (Brown Dep: at 1036:22-25; 1037:8-11). | | |
| 16.  Brown could not determine whether additional on-site remediation was needed at Unocal #5123:<br><br>Q. And you think it is possible that additional on-site remediation of groundwater is required at this site, but you do not have an opinion that it's more likely than not that additional on-site remediation will be required at this site, correct?<br><br>A. Based upon the information I have reviewed to date, I cannot conclude that it's more likely than not that additional on-site remediation of groundwater will be required.<br><br>Condron Decl. Exh. 3 (Brown Dep. at 1034:2-13) (noting further that the need additional on-site remediation was only "possible"). | 16.  Undisputed as to testimony, otherwise Disputed.<br><br>The fact that no further on-site remediation is needed does not establish that the District has not been harmed by off-site MTBE from Beacon Bay, FV as set forth in Response to Paragraph 14 supra.<br><br>Mr. Brown testified that on-site remediation at failed to prevent MTBE contamination from migrating off-site.<br><br>(Condron Decl, Exh. 2 (Brown Exh. 36).) | 16. **OCWD's dispute is illusory and immaterial.** Plaintiff fails to controvert the undisputed testimony Defendants cite.  Expert testimony that merely states that an injury or damages are "possible" is insufficient to carry plaintiff's burden.  Cal. Civ. Code § 3283.  *Accord Vestar Dev. II, LLC v. General Dynamics Corp.*, 249 F.3d 958, 961 (9th Cir. 2001) ("[i]t has long been settled in California that 'the proof must establish with reasonable certainty and probability that damages will result in the future to the person wronged'"), quoting *Caminetti v. Manierre*, 23 Cal.2d 94, 101, 142 P.2d 741, 745 (1943); *Frustuck v. City of Fairfax*, 212 Cal. App. 2d 345, 367-68 (1st Dist. 1963) ("damages which are … merely possible cannot serve as a legal basis for recovery"). |
| 17.  Brown could not conclude whether off-site remediation is necessary at Unocal #5123: " ...I cannot conclude that its [sic] more likely than not that | 17.  Undisputed as to testimony, otherwise Disputed as set forth in Response to Paragraphs 3-5, and 14 supra. | 17. **OCWD's dispute is illusory and immaterial.** Plaintiff fails to controvert the undisputed testimony Defendants cite.  Expert |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| additional off-site remediation of groundwater will be required, only that it is possible .... " Condron Decl. Exh. 3 (Brown Dep. at 1036:3-14; Brown Dep. at 1037:13-18 ("Q. And you have not concluded that it is more likely than not that additional remediation is necessary at this site? A. That is correct. Only that additional remediation may possibly be required.")). | Mr. Brown testified that on-site remediation at failed to prevent MTBE contamination from migrating off-site. Thus, Mr. Brown concluded that additional off-site assessment is required, including assessment of deeper groundwater. Mr. Brown testified that it is "possible" that off-site remediation is necessary as additional off-site assessment is required.<br><br>(Condron Decl, Exh. 2 (Brown Exh. 36).) | testimony that merely states that an injury or damages are "possible" is insufficient to carry plaintiff's burden.  Cal. Civ. Code § 3283.  *Accord Vestar Dev. II, LLC v. General Dynamics Corp.*, 249 F.3d 958, 961 (9th Cir. 2001) ("[i]t has long been settled in California that 'the proof must establish with reasonable certainty and probability that damages will result in the future to the person wronged'"), quoting *Caminetti v. Manierre*, 23 Cal.2d 94, 101, 142 P.2d 741, 745 (1943); *Frustuck v. City of Fairfax*, 212 Cal. App. 2d 345, 367-68 (1st Dist. 1963) ("damages which are … merely possible cannot serve as a legal basis for recovery"). |
| THRIFTY 368 | | |
| 18.  For Thrifty 368, Brown entered an "N" (not more likely than not) on both additional on-site remediation required, Condron Decl. Exh. 2 (Brown Exh. 36, Q 19), and additional off-site remediation required, Condron Decl. Exh. 2 (Brown Exh. 36, Q20); and a "P" (possible but does not meet the threshold of more likely than not) on both posing a threat to deeper aquifers, Condron Decl. Exh. 2 (Brown Exh. 36, Q21), and posing a threat to water supply wells. | 18.  Undisputed as to entries on Exhibit 36, otherwise disputed.<br><br>Brown testified that<br><br>• Sufficient MTBE has been released to impact groundwater off-site.<br><br>• MTBE contamination has migrated off-site<br><br>• MTBE contamination has commingled offsite with Unocal #5226 | 18.  **OCWD's dispute is illusory and immaterial.** Plaintiff fails to controvert the undisputed testimony Defendants cite.  Expert testimony that merely states that an injury or damages are "possible" is insufficient to carry plaintiff's burden.  Cal. Civ. Code § 3283.  *Accord Vestar Dev. II, LLC v. General Dynamics Corp.*, 249 F.3d 958, 961 (9th Cir. 2001) ("[i]t has long been settled in California that 'the proof must establish with reasonable certainty and probability that |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| Condron Decl. Exh. 2<br><br>(Brown Exh. 36, Q22). | • Remediation possibly failed to prevent MTBE contamination from migrating off-site<br><br>• Additional off-site assessment of deeper groundwater is required<br><br>• It is "possible" that remediation of off-site MTBE contamination will be required, and that this contamination poses a threat to deeper aquifers and wells.<br><br>Condron Decl, Exh. 2 (Brown Exh. 36).<br><br>Mr. Brown explicitly testified that he could not formulate an opinion as to possible threats to wells at Thrifty #368 because of inadequate investigations done by defendants:<br><br>    While releases of MTBE and TBA have occurred, the lateral extent of the contaminants both historically and currently is delineated, in my opinion; however, there has been no investigation of the potential vertical migration of contaminants.<br><br>    Therefore, given the absence of that information, it is possible that the release at this facility may have migrated vertically and could, thus, pose a possible | damages will result in the future to the person wronged'"), quoting *Caminetti v. Manierre*, 23 Cal.2d 94, 101, 142 P.2d 741, 745 (1943); *Frustuck v. City of Fairfax*, 212 Cal. App. 2d 345, 367-68 (1st Dist. 1963) ("damages which are … merely possible cannot serve as a legal basis for recovery").<br><br>Neither Wheatcraft's model nor his testimony identifies any need for remediation at these stations, and he testified that he was unable to make any connection between a release of MTBE gasoline from any of the stations at issue on this motion and any drinking water well or the deeper aquifer.  (Jan. 16, 2012 Deposition of Stephen Wheatcraft, p. 115:23-24 ("I didn't breakdown any of the analysis that I did by station"); *Id.*, p. 116:22-117:20 ("Q. And did you, for purposes of the work that you performed in this case, at any time where there are several service stations potentially impacting grids, model the individual stations to determine what impact they may have in the future on potable water supplies? [Objection]  THE WITNESS: We haven't done any models in which we isolated a particular source and ran only that source, no. BY MR. STACK: Q. Did you, in the course of your work, do |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | risk to water supply wells in the immediate vicinity. But I have not been able to conclude that it is more likely than not that the releases at this facility pose a threat to these water supply wells.<br><br>(O'Reilly Decl. ,Ex. 3 Brown Depo. (Jan. 2, 2012) at 451:3-452:22 [emphasis added].)<br><br>Mr. Brown explained during his deposition that a "possible" means that he was unable to reach a conclusion and that a "possible" does not mean the station does not pose a threat to deeper aquifers or wells. (O'Reilly Decl., Ex. 3, Brown Depo (Jan. 2, 2012) at 441:8-442:1; Brown Depo (Jan. 3,2012) 638:25-639:11 [emphasis added].)<br><br>MTBE was detected in groundwater at Thrifty #368 at 410 ppb when it was first sampled for in February 1996. (Wheatcraft Decl. ¶ 13.) MTBE was subsequently detected in groundwater as high as 10,000 ppb. (Id.) Groundwater off-site has not been sampled for contamination. (Id.) Where no off-site sampling has occurred, transport modeling is the best method of determining the likely fate of MTBE found in groundwater on-site. (Id.)<br><br>Dr. Wheatcraft modeled the | any analysis in which you allocated responsibility from several service stations impacting grid cells in your model to assign a percentage of the responsibility for contamination being detected at some future date in a potable water supply well? [Objection] THE WITNESS: No, we -- we did not analyze or isolate any particular station in the course of our analysis in modeling."); *Id.*, p. 122:1-4 ("[W]e didn't analyze, again, which – whether it was coming from this particular site or that site in terms of an origin. That wasn't a question we were looking at."); Roy Dec., Ex. 73 (Jan. 17, 2012 Wheatcraft Depo.), pp. 368:19-369:9 ("THE WITNESS: I haven't done any analysis. As we, again, talked about yesterday, that identifies MTBE from a specific station and whether it mingles or commingles with other plumes and whether or not MTBE from a particular station reaches a particular well."); *Id.*, p. 370:2-5 ("I haven't done any analysis to identify which station or stations is responsible or are responsible for MTBE concentrations in specific production wells."); *Id.*, p. 370:9-18 ("Is it true that you do not have an opinion whether or not gasoline containing MTBE from that site has in the past reached any |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | MTBE released from Thrifty #368. (Wheatcraft Decl. at ¶ 4.) The modeling showed that the MTBE released from Thrifty #368 has migrated off-site and mixed with MTBE from other stations, and contributed to focus plumes. (Id. ¶ 5.) The modeling showed the MTBE contributed by Thrifty #368 will converge with MTBE released by other stations to impact deeper aquifers and drinking water wells. (Id. ¶¶ 6-7.)<br><br>The District's Chief Hydrogeologist, Roy Herndon, also concluded that this station posed a threat to drinking water resources and wells because the station is located within the "pumping depression" of a major supply well or wells. (Herndon Decl. ¶ 3.)<br><br>Thrifty #368 is part of Plume No. 9, and City of Huntington Beach drinking water wells HB-1, HB-13, HB-4, and HB-7 are associated with this plume. (Bolin Decl. ¶ 4.) Dr. Wheatcraft's model predicts that all of these wells will be impacted by MTBE. (Wheatcraft Decl. ¶ 8.) | drinking water well in Orange County Water District? [Objection] THE WITNESS: I haven't formulated any opinion."); *Id.*, pp. 371:20-372:5 ("I haven't performed any analysis to look at any individual station as to whether -- what the pathway is from that station to any ultimate well."); *Id.*, p. 372:7-20 ("I don't have a specific opinion as to which station contributes MTBE to which production well. So I'm – I'm – that's stated a little differently than what you said, but that's my answer to your question."); *Id.*, p. 405:11-405:21 ("I haven't done any analysis to isolate whether MTBE -- the MTBE from a specific station has reached any specific production well.")<br><br>**Disputed** that groundwater has not been sampled off-site at Thrifty #368. Off-site groundwater monitoring has been conducted at Thrifty #368. Condron Reply Decl. Exh. 5 (Anthony Brown Deposition, Ex. 50); *see also* Declaration of Bryan Barnhart in support of Plaintiff's Opposition to Defendants' [Omnibus] Motion for Summary Judgment, ¶ 3, Ex. 6, pp. 15-16 [Expert Report of Anthony Brown, Appx. B.18 Facility Summary Report for Thrifty Oil #368, p.1] ("Groundwater analytical results for samples collected at |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | | on- and off-site locations are provided in Appendix A…"). Bolin's and Herndon's declarations fail to provide any information specific to these stations as to the need for further remediation or the existence of any threat to a water supply well or aquifer from the stations at issue on this motion. |
| 19.  Brown testified at his deposition that he gave a site a "P" even if he felt it "unlikely" that it posed a threat to drinking water:<br><br>Q. Let's assume that you concluded that it was unlikely that [a site] was a threat to drinking water, you would still give [the site] a "P" correct?<br><br>***<br><br>THE WITNESS: It actually could get a "P" or an "N." We're talking generically across all of the potential sites.<br><br>Condron Decl. Exh. 3 (Brown Dep. at 442:12-24). Brown could not conclude that it is more likely than not that Thrifty 368 presents a threat to wells in the vicinity of the station. Condron Decl. Exh. 3 (Brown Dep. at 473:2-476:3). | 19.  Disputed<br><br>As explained above, Mr. Brown testified that:<br><br>As I have discussed in response to earlier questions, if we believe that it was more likely than not the contamination posed a threat, then in response to question No. 22, the answer would be "Yes."<br><br>If we believe that the contamination did not pose a threat, then the answer would be "No."<br><br>If we could not determine that it was more likely than not that the contamination posed a threat, but also not determine that it was more likely than not that it did not pose a threat, then it was left as a "Possible."<br><br>(O'Reilly Decl., Ex. 3, Brown Depo (Jan. 3, 2012) 638:25-639:11 [emphasis added].) In | 19.  **OCWD's dispute is illusory and immaterial.** Plaintiff fails to controvert the undisputed testimony Defendants cite.  Expert testimony that merely states that an injury or damages are "possible" is insufficient to carry plaintiff's burden.  Cal. Civ. Code § 3283.  *Accord Vestar Dev. II, LLC v. General Dynamics Corp.*, 249 F.3d 958, 961 (9th Cir. 2001) ("[i]t has long been settled in California that 'the proof must establish with reasonable certainty and probability that damages will result in the future to the person wronged'"), quoting *Caminetti v. Manierre*, 23 Cal.2d 94, 101, 142 P.2d 741, 745 (1943); *Frustuck v. City of Fairfax*, 212 Cal. App. 2d 345, 367-68 (1st Dist. 1963) ("damages which … merely possible cannot serve as a legal basis for recovery"). |

| DEFENDANTS' STATEMENT OF FACTS | PLAINTIFF'S RESPONSE | DEFENDANTS' REPLY |
|---|---|---|
| | the page just before the testimony quoted by defendants, Mr. Brown clearly explained that:<br><br>In evaluating each of the specific service stations, I would obviously look at the historical and current contaminant concentration data, groundwater flow direction, the remediation activities that have occurred at the site. And based upon that and potential data gaps that exist, I would attempt to reach a conclusion that it is more likely than not that the contaminants do pose a threat to water supply wells. And that would be indicated by a "Y" in the column for that particular question... or it's more likely than not they don't. In which case that would be indicated by an "N," that I have reached that conclusion that it's more likely than not that they don't.<br><br>However, for most of them I could not reach a conclusion either way, and it's simply possible that they do. And, conversely, possible that they don't.<br><br>(O'Reilly Decl., Ex. 3, Brown Depo (Jan. 2, 2012) at 441:8-442:1.) | |

| ADDITIONAL MATERIAL FACTS ASSERTED BY PLAINTIFF | DEFENDANTS' RESPONSE AND OBJECTIONS |
| --- | --- |
| 20.  Dr. Stephen Wheatcraft was retained to prepare a contaminant transport model based on the geological characteristics of the aquifer in the Orange County basin. (Wheatcraft Decl. ¶¶ 1-3) | 20.  Admitted.  Defendants, however, dispute the reliability and accuracy of Wheatcraft's work and will challenge it at an appropriate time. |
| 21.  Dr. Wheatcraft utilized a separate MTBE source term for each focus plume station that was calculated utilizing actual MTBE groundwater data collected from monitoring wells and other sampling by defendants' consultants at each site. (Wheatcraft Decl. ¶ 4.) The MTBE source term thus represents the MTBE released to groundwater at each focus plume station. (Id.) The transport model prepared by Dr. Wheatcraft thus depicts the transport of MTBE released at each focus plume station through the aquifer to production wells within the District service area, although the model does not isolate each station. (Id.) | 21. Disputed.  Neither Wheatcraft's model nor his testimony identifies any need for remediation at these stations, and he testified that he was unable to make any connection between a release of MTBE gasoline from any of the stations at issue on this motion and any drinking water well or the deeper aquifer.  (Jan. 16, 2012 Deposition of Stephen Wheatcraft), p. 115:23-24 ("I didn't breakdown any of the analysis that I did by station"); *Id.*, p. 116:22-117:20 ("Q. And did you, for purposes of the work that you performed in this case, at any time where there are several service stations potentially impacting grids, model the individual stations to determine what impact they may have in the future on potable water supplies? [Objection]  THE WITNESS: We haven't done any models in which we isolated a particular source and ran only that source, no. BY MR. STACK: Q. Did you, in the course of your work, do any analysis in which you allocated responsibility from several service stations impacting grid cells in your model to assign a percentage of the responsibility for contamination being detected at some future date in a potable water supply well? [Objection] THE WITNESS: No, we -- we did not analyze or isolate any particular station in the course of our analysis in modeling."); *Id.*, p. 122:1-4 ("[W]e didn't analyze, again, which – whether it was coming from this particular site or that site in terms of an origin. That wasn't a question we were looking at."); Roy Dec., Ex. 73 (Jan. 17, 2012 Wheatcraft Depo.), pp. 368:19-369:9 ("THE WITNESS: I haven't done any analysis. As we, again, talked about yesterday, that identifies MTBE from a specific station and whether it mingles or |

| ADDITIONAL MATERIAL FACTS ASSERTED BY PLAINTIFF | DEFENDANTS' RESPONSE AND OBJECTIONS |
|---|---|
| | commingles with other plumes and whether or not MTBE from a particular station reaches a particular well."); *Id.*, p. 370:2-5 ("I haven't done any analysis to identify which station or stations is responsible or are responsible for MTBE concentrations in specific production wells."); *Id.*, p. 370:9-18 ("Is it true that you do not have an opinion whether or not gasoline containing MTBE from that site has in the past reached any drinking water well in Orange County Water District? [Objection] THE WITNESS: I haven't formulated any opinion."); *Id.*, pp. 371:20-372:5 ("I haven't performed any analysis to look at any individual station as to whether -- what the pathway is from that station to any ultimate well."); *Id.*, p. 372:7-20 ("I don't have a specific opinion as to which station contributes MTBE to which production well. So I'm – I'm – that's stated a little differently than what you said, but that's my answer to your question."); *Id.*, p. 405:11-405:21 ("I haven't done any analysis to isolate whether MTBE -- the MTBE from a specific station has reached any specific production well.") |
| 22.  Dr. Wheatcraft's model shows that as MTBE migrates off-site from a station, that MTBE mixes with MTBE from other nearby stations to form MTBE plumes. (Wheatcraft Decl. ¶ 5; see also O'Reilly Decl., Ex. 4, Wheatcraft Depo. (Jan 17, 2012) at 374: 13-375:2.) The model thus shows that MTBE from each focus plume station has contributed to a focus plume. (Id.) | 22.  Disputed.  Neither Wheatcraft's model nor his testimony identifies any need for remediation at these stations, and he testified that he was unable to make any connection between a release of MTBE gasoline from any of the stations at issue on this motion and any drinking water well or the deeper aquifer.  *See* Response to ¶ 21, *supra*. |
| 23.  Dr. Wheatcraft's model shows that as the MTBE plumes migrate deeper into the aquifer, the contamination will converge in the subsurface. (Wheatcraft Decl. ¶¶ 6-7.) | 23.  Disputed as to accuracy, and irrelevant to the issues on this motion. Wheatcraft admitted that the model does not tie these stations to any purported future contamination in any well. *See* Response to ¶ 21, *supra*. |
| 24.  Dr. Wheatcraft's model predicts that 108 district production wells will exceed 5 ppb | 24.  Disputed as to accuracy, and irrelevant to the issues on this motion.  Wheatcraft admitted |

| ADDITIONAL MATERIAL FACTS ASSERTED BY PLAINTIFF | DEFENDANTS' RESPONSE AND OBJECTIONS |
|---|---|
| MTBE after 10 years. (Wheatcraft Decl. ¶ 7.) | that the model does not tie these stations to any purported future contamination in any well. *See* Response to ¶ 21, *supra*. |
| 25.  Dr. Wheatcraft's model predicts that a total of 155 district production wells will be contamination with MTBE above 5 parts per billion in the next 50 years. (Wheatcraft Decl. ¶ 7.) | 25.  Disputed as to accuracy, and irrelevant to the issues on this motion.  Wheatcraft admitted that the model does not tie these stations to any purported future contamination in any well. *See* Response to ¶ 21, *supra*. |
| 26.  MTBE was not sampled for at any of these stations until 1996. (Wheatcraft Decl. ¶¶ 12-15.) MTBE was detected in groundwater the first time it was sampled for at these stations. (Id.) No sampling of groundwater outside the station property was conducted at Beacon Bay, Fountain Valley, Unocal #5399, and Thrifty #368. (Id.) Where there is no off-site data or other data showing what happened to MTBE once it migrated off-site, transport modeling is the best method of determining the likely fate of MTBE released at these stations. (Id.) | 26.  Irrelevant to the issues on this motion. Wheatcraft admitted that the model does not tie these stations to any purported future contamination in any well. *See* Response to ¶ 21, *supra*.<br><br>**Disputed** that groundwater has not been sampled off-site at Thrifty #368.  Off-site groundwater monitoring has been conducted at Thrifty #368.  Condron Reply Decl. Exh. 5 (Anthony Brown Deposition, Ex. 50); *see also* Declaration of Bryan Barnhart in support of Plaintiff's Opposition to Defendants' [Omnibus] Motion for Summary Judgment, ¶ 3, Ex. 6, pp. 15-16 [Expert Report of Anthony Brown, Appx. B.18 Facility Summary Report for Thrifty Oil #368, p.1] ("Groundwater analytical results for samples collected at on- and off-site locations are provided in Appendix A…"). |
| 27.  Prior to 2003, MTBE had been detected in only eight water production wells. (Bolin Decl. ¶ 5.) By the time the District conducted a second vulnerability assessment in 2010, MTBE was detected for the first time in fifty-six public drinking water wells. (Bolin Decl., ¶ 6.) | 27.  Irrelevant to the issues on this motion. OCWD provides no evidence that any of these alleged detections can be tied to the stations at issue on this motion. |
| 28.  "Each focus plume (with associated stations) is located within a pumping depression [of a major supply well or wells]. Based on the prevalent downward hydraulic gradient beneath each station, MTBE that has | 28.  Irrelevant.  Herndon provides no testimony from which a reasonable jury could conclude that OCWD will incur damages at any of the stations at issue on this motion. *In re MTBE*, 824 F. Supp. 2d 524, 541 (S.D.N.Y. 2011) |

| ADDITIONAL MATERIAL FACTS ASSERTED BY PLAINTIFF | DEFENDANTS' RESPONSE AND OBJECTIONS |
|---|---|
| migrated off-site from each station will move downward into the principal aquifer and be carried to the pumping wells that created the pumping depressions." (Herndon Decl. (July 21, 2014) ¶ 3.) | ("'the burden must be on the plaintiff to establish some measure of such things as the magnitude and likelihood of the danger and "it cannot be enough to merely suggest a danger and assert that it has not been ruled out'"); *Vestar Dev. II, LLC v. General Dynamics Corp.*, 249 F.3d 958, 961 (9th Cir. 2001) ("[i]t has long been settled in California that 'the proof must establish with reasonable certainty and probability that damages will result in the future to the person wronged'"). |
| 29.  The District, through its extensive study of the basin over decades, estimates that the shallow aquifer holds approximately 5 million acre-feet of groundwater which can supply approximately sixteen years of groundwater pumping from the basin. (Herndon Decl. (July 21, 2014) at ¶¶ 2 & 4.) The shallow aquifer is thus a body of "percolating water" that is replenished from above and discharges to the principal aquifer below. (Id.) The shallow aquifer in the basin is extensive and complex. (Id. at 1-2. & 4) | 29.  Irrelevant to the issues on this motion. |
| 30.  Water budgets prepared by the District as part of their groundwater management plans thus show that up to 98% of the water in the basin, including the water in the shallow aquifer, exits to production wells. (Wheatcraft Decl. ¶ 9.) | 30.  Irrelevant to the issues on this motion. |
| 31.  Defense expert John Connor, admitted the State of California has designated the shallow aquifer in the District's service area for "beneficial use" as a drinking water source. (O'Reilly Decl., Ex. 9, Connor Depo. (Jan. 27, 2012) at 41:9-43:23,45:18-46:11.) | 31.  Irrelevant to the issues on this motion. |
| 32.  Defense expert John Wilson confirmed that MTBE contamination in drinking water wells comes from releases at gasoline stations, and that virtually all drinking water aquifers are vulnerable to contamination released to | 32.  Irrelevant to the issues on this motion. |

| ADDITIONAL MATERIAL FACTS ASSERTED BY PLAINTIFF | DEFENDANTS' RESPONSE AND OBJECTIONS |
|---|---|
| shallow aquifers. (O'Reilly Decl., Ex. 10, Wilson Depo. (May 18,2012) at 38:12-17,198:1-11 Fresno). | |
| 33.  The shallow aquifer is itself used directly in some areas for drinking water supplies. Both Newport Beach and Huntington Beach, for example, have active drinking water wells that withdraw water from the "shallow" aquifer. (O'Reilly Decl., Ex. 11, Johnson Depo. (Aug. 24, 2010) at 120:15-121:11 [Huntington Beach]; Ex. 12, Murdoch Depo. (May 3, 2010) at 161:7-12 [Newport Beach].) Dr. Wheatcraft's model shows that Newport Beach's shallow well NB-TAMS is or will be impacted by MTBE. (Wheatcraft Decl. ¶ 7.) This well is associated with Plume No. 1 and the Unocal #5399 station. (Bolin Decl. ¶ 2.) | 33.  Disputed.  Wheatcraft admitted that the model does not tie these stations to any purported future contamination in any well. *See* Response to ¶ 21, *supra*. |
| 34.  "The District has incurred substantial costs to conduct Cone Penetration Testing and groundwater sampling of stations associated with Bellwether Plume Nos. 1,3, and 9, as well as non-station specific costs ... " (Bolin Decl. ¶ 7.) | 34.  Disputed and irrelevant. The Court has already ruled that OCWD may not rely on these costs because they were incurred after the discovery cut-off (*In re MTBE*, 279 F.R.D. 131, 138 & nn.61-62 (S.D.N.Y. 2011). Moreover, Bolin never says that those alleged "substantial costs" were incurred *at the stations at issue on this motion* – because they were not.  *See* Exh. 14 to the Declaration of Justin Massey, submitted in opposition to Defendants' Omnibus Motion for Summary Judgment (showing that OCWD paid consultant to perform CPT testing at 10 sites (A-J), none of which is at issue on this motion.) |
| 35.  Dr. Fogg concluded that "significant MTBE mass [is present] beyond the monitoring well networks ... " of the stations, and that the only way to prevent this MTBE from reaching public drinking water wells is to clean up the [MTBE] contamination before it gets to supply wells." (O'Reilly Decl., Ex. 6, Fogg Depo. (Jan. 21, 2012) at 110:9-24.) | 35.  Disputed.  Fogg provided no opinion as to whether any of the stations at issue on this motion require any additional remediation or whether they pose a threat to any drinking water well or aquifer.  Condron Reply Decl. Exh. 2 (Fogg Dep., Jan. 21, 2012, at 59:17-60:4 ("Q. Other than looking at site data that was in other expert reports, have you done any analysis of any individual gasoline site in this |

| ADDITIONAL MATERIAL FACTS ASSERTED BY PLAINTIFF | DEFENDANTS' RESPONSE AND OBJECTIONS |
|---|---|
| | case?  A. No."); 77:11-12 ("Again, I'm not prepared to talk about specific sites today."); 78:23-25 ("As I said earlier, I have not investigated specific sites and provided a specific opinion on adequacy of monitoring at specific sites."); 91:19-92:3 (Q. Do you have an opinion, Dr. Fogg, that MTBE from any of the 34 stations in this case poses a short- or long-term threat of MTBE contamination to any particular well in Orange County Water District?  [Objection] A. I – my opinions are not that specific."); 98:7-11 ("If you mean that I don't have an opinion that a specific contaminant site can be anticipated to contribute MTBE to a specific water  supply well or wells, that's correct, that my opinion is not that specific."); 112:2-9 ("Q. Are there any specific sites where you have the opinion that the MTBE mass has migrated beyond the monitoring well network?  {Objection} THE WITNESS:  That's beyond the scope of my testimony."); 116:8-10 "Opinions on specific stations and plumes are beyond the scope of my opinions and testimony.")) |
| 36.  The District's toxicology expert, Dr. Rudo, opined that "[b]ased on the information in scientific literature, MTBE is a genotoxic carcinogen and as such, has no safe level of exposure, especially in drinking water." (O'Reilly Decl., Ex. 13, Expert Report of Kenneth Rudo (May 31, 2011) at Key Opinions, A, p. 3.) | 36.  Admitted that Rudo provided that opinion, disputed as to its accuracy, and irrelevant to the issues presented by the motion. |

Dated:    August 11, 2014

Respectfully submitted,

Peter C. Condron
SEDGWICK LLP
2900 K Street, NW
Harbourside, Suite 500
Washington, DC 20007
Telephone: (202) 204-1000
Facsimile: (202) 204-1001

Attorneys for Defendants
SHELL OIL COMPANY, TMR
COMPANY, AND EQUILON
ENTERPRISES, LLC