UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------x

In re:  Methyl Tertiary Butyl Ether ("MTBE")     :
Products Liability Litigation
                                                 :

This Document Relates To:                        :
*Orange County Water District v. Unocal*
*Corporation, et al.,* Case No. 04 Civ. 4968     :
(SAS)
                                                 :

                                                 :

                                                 :

---------------------------------------x

**Master File No. 1:00-1898**
**MDL No. 1358 (SAS)**
**M21-88**

The Honorable Shira A. Scheindlin

## BP AND SHELL DEFENDANTS' REPLY LOCAL RULE 56.1 STATEMENT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BASED ON *RES JUDICATA*

On June 6, 2014, Atlantic Richfield Company, BP West Coast Products LLC, and BP

Products North America Inc. (collectively, "BP"), and Shell Oil Company, Equilon Enterprises

LLC, and Texaco Refining and Marketing Inc. (the "Shell Defendants") filed a Motion for

Summary Judgment Based on *Res Judicata* ("Motion") and a Local Rule 56.1 Statement of

Material Facts Submitted in Support of Defendants' Motion ("Defendants' Statement of Facts").

On July 21, 2014, Plaintiff Orange County Water District ("OCWD") filed its Opposition

to Defendants' Motion ("Opposition" or "Opp."), Responses in Opposition to Defendants' Local

Rule 56.1 Statement ("OCWD's Response"), and its own Local 56.1 Statement in Support of its

Opposition.  The Opposition incorporated additional arguments and material.

"[R]eply papers may properly address new issues raised in the opposition papers so as to

avoid giving unfair advantage to the answering party." *Bayway Ref. Co. v. Oxygenated Mktg. &*

*Trading A.G.*, 215 F.3d 219, 226-27 (2d Cir. 2000).  Accordingly, Defendants hereby

respectfully submit their Reply to OCWD's Response, including the "Additional Material Facts"

submitted by OCWD in opposition to Defendants' Motion for Summary Judgment.

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| 1.   In January 1999, the Orange County District Attorney ("OCDA") initiated two civil actions in Orange County Superior Court, each on behalf of "the People of the State of California": *People v. Atlantic Richfield Co., et al.* (Orange County Superior Court Case No. 8040-30 *("People v. ARCO"),* which named ARCO and Thrifty Oil Company ("Thrifty") as defendants; and *People v. Shell Oil Co., et al.* (Orange County Superior Court Case No. 80-4031) *("People v. Shell"),* which named Shell Oil Company as a defendant. (Request for Judicial Notice ("RJN") (citing original ARCO DA Complaint as Ex. A and original Shell DA Complaint as Ex. B). Both *People v. ARCO* and *People v. Shell* were filed "in the public interest in the name of the People of the State of California and the County of Orange" and alleged that defendants were responsible for unauthorized releases of MTBE gasoline from underground storage tanks they owned, operated, and/or supplied throughout Orange County, resulting in contamination of Orange County soil and groundwater. (RJN Ex. A ¶¶ 1, 10-12 and Ex. B ¶¶ 1, 10-12.) | 1.<br><br>**A.    Disputed That OCDA Brought Suit On The District's Behalf,**<br><br>**B.    Disputed That OCDA Represented The District's Interest,**<br><br>**C.    Disputed That OCDA Litigated The Causes Of Action That The District Litigates Here, And**<br><br>**D.    Disputed That OCDA Settled Or Released Any Cause Of Action That The District Litigates Here**<br><br>**E.    Disputed That OCDA's Settlements With Defendants Bars, Precludes, Or Otherwise Impacts The District's Causes Of Action Here**<br><br>    Undisputed that cited documents contain the allegations described. Disputed that Defendants have <u>any</u> <u>evidence</u> that OCDA ever had standing or statutory authority to initiate civil actions — or that OCDA did in fact initiate such actions — to obtain redress for the harm that Defendants' MTBE caused to the District's real-property water rights, or to obtain redress for the costs that the District must incur to remediate Defendants' contamination. *See Safer v. Sup. Ct.,* 15 Ca1.3d 230, 236 (1975); *see also* Cal. Code Civ. Proc. § 731; *see also* Declaration of Bryan Barnhart in Support of Opposition to BP and Shell Defendants' Motion for Summary Judgment Based on *Res Judicata* (**"Barnhart Decl.), ¶¶** 3-6, Exh. 2-5.<br><br>    Defendants' January 23, 2006 Memorandum of Law in | 1.    **Fails to raise triable facts relevant to Defendants' Motion.**<br><br>OCWD admits the accuracy of Undisputed Material Fact No. 1. Indeed, OCWD's statement does not actually dispute the fact and admits that Defendants accurately recite the contents of the cited documents.<br><br>The existence of privity for *res judicata* is a question of law. *People v. Dawkins*, 241 Cal. Rptr. 456, 458 (1987); *McAlister v. Essex Prop. Trust*, 504 F. Supp. 2d 903, 912 (C.D. Cal. 2007). For *res judicata* purposes, the phrase "cause of action" means "the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced." *Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 814 (2010).<br><br>The remainder of OCWD's response is comprised of facts, argument, and conclusions that are irrelevant to Defendants' Motion.<br><br>OCWD's arguments regarding the OCDA's standing and the status of OCWD are legal conclusions and do not raise triable facts relevant to Defendants' Motion.<br><br>With respect to its discussion of the Cognizable Interest |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| | Support of Motion for Summary Judgment of Plaintiff's Claims for Damages Based on MTBE Detections Below the Secondary MDL (**"MCL Motion"**) in the instant case concedes that the District "is seeking damages on behalf of itself only." MCL Motion, pg 4, fn. 1; *see also* Defendants' January 23, 2006 Memorandum of Law in Support of Motion for Summary Judgment of Plaintiff's Claims Based on Plaintiff's Lack of Cognizable Interest[1] (**"Cognizable Interest Motion"),** pg. 6, fn. 6 (any claims by the District on behalf of "another party" would not be "properly before [this] Court"); *see also* Plaintiff's 56.1 Statement of Material Facts (**"Plaintiffs Facts"),** No. 43 and 44.<br><br>Defendants also have conceded that this "Court has already determined that the OCWD Act confers upon [the District] standing to pursue its public nuisance claim against Defendants." Cognizable Interest Motion, pg. 7.<br><br>The District is not a "special district," or a "state agency." Cal. Gov. Code § 16271(d) ("'Special District' does <u>not</u> include any agency which is not authorized to levy a property tax rate, except the Bay Area Pollution Control District"); *see also Santa Clara Valley Water District v. Olin Corp.,* 2007 WL 2890390, *5 (California County | Motion, OCWD improperly conflates the issue of legal standing to bring a claim with whether its claims are precluded under *res judicata*.<br><br>OCWD's attempt to incorporate by reference its response to Undisputed Material Fact Nos. 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34 , 36, 40, and 42, and its additional fact numbers 43 and 44 does not provide any triable facts to support its dispute of Defendants Undisputed Material Fact No. 1. |

---

[1] The District respectfully requests that this Court take judicial notice of Defendants' MCL Motion and Cognizable Interest Motion, which are part of the Court's file in this action. Fed. Rule. Evid. R. 201.

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| | Water District "is not a state-wide agency, but a local political entity that falls outside the definition of 'State' in CERCLA."); *see also United States ex rel. Norton Sound Health Corp. v. Bering Strait School Dist.,* 138 F.3d 1281, 1284 (9th Cir. 1998) (a "local government unit, though established under state law, funded by the state, and ultimately under state control, with jurisdiction over only a limited area, is not a "State."'); *see also Washington State Dept. Of Transp. V. Washington Natural Gas Co.,* F.3d 793, 800, fn. 5 ("a local government with authority over a limited area, is a different type of government than a state-wide agency that is part of the organized government of the state itself.")<br><br>OCDA only is "technically . . . a state officer," furthermore, when "he conducts prosecutions for the punishment of crimes denounced by act of the legislature." Here, OCDA's brought a <u>civil</u> action against Defendants, <u>not</u> a "prosecution[] for the punishment of crimes." *Pitchess v. Sup. Ct.,* 2 Cal.App.3d 653, 656-57 (1969).<br><br>Defendants have conceded that the State's "ownership" of California's groundwater "confers no powers of possession or use" — "when it comes to removing or controlling the natural waters, the State is bound by the same rules applicable to private landowners." Cognizable Interest Motion, pg. 9; *State of California v. Sup. Ct.,* 78 Cal.App.4th 1019, 1026 (2000). As Defendants also have pointed | |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| | out, their MTBE could cause the District to lose "pump tax revenue," a damage that OCDA has no right or interest in recovering. Cognizable Interest Motion, pg. 9.<br><br>OCDA's complaints against Defendants expressly state that OCDA did not bring or litigate any cause of action that belongs to the District,<br><br>Plaintiff does not include, and the Orange County District Attorney does not represent, any water district . . . or other entity with an interest in or pertaining to groundwater or production wells located within the County of Orange.<br><br>Declaration of Peter C. Condron in Support of BP and the Shell Defendants' Motion for Summary Judgment (**"Condron Decl."**), Exh. A, pg. 2; Declaration of Lawrence A. Cox in Support of BP Defendants' Motion for Summary Judgment Based on *Res Judicata* (**"Cox Decl."**), Exh. B, pg. 2.<br><br>Disputed that cited documents are relevant or support defendants' *res judicata* argument, and incorporate by reference Plaintiff's Responses to 56.1 ¶¶ 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42. | |
| 2.   In October 2000, the OCDA filed a First Amended Complaint ("BP DAFAC") in *People v. ARCO,* which added BP Amoco as a defendant and contained additional allegations regarding the health and | 2.   Undisputed that the cited documents contain the allegations described. Disputed that cited documents are relevant or support defendants' *res judicata* argument, and incorporate by reference | **2.   Fails to raise triable facts relevant to Defendants' Motion.**<br><br>OCWD does not actually dispute Defendants' Undisputed Material Fact |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| environmental risks of releases of MTBE gasoline into Orange County groundwater. (Declaration of Lawrence A. Cox In Support of BP's Motion for Summary Judgment ("Cox Decl.") ¶ 3 and Ex. B (BP DAFAC) ¶¶ 49 ("MTBE poses unique risks to groundwater and especially to drinking water"); ¶¶ 56-76 (entitled "DEFENDANTS LEARN OF YET DENY THE RISKS POSED BY MTBE"); ¶¶ 87 -91 (entitled "MTBE DESTROYS STATE WATER SUPPLIES"); ¶ 101 ("the Orange County Water District ("OCWD") …conducts sampling and testing of groundwater in the Santa Ana River Basin" which shows MTBE concentrations): ¶¶ 3, 117 (defendants' release of MTBE gasoline "constitutes a continuing nuisance" in Orange County); ¶ 102 ("MTBE has migrated, and is migrating, from the sources of release.-- underground storage tank systems and pipelines containing gasoline  into deeper drinking water supplies in Orange County."); ¶ 104 (at "approximately sixty" of ARCO's "owned and previously owned sites in Orange County," unauthorized releases of gasoline had caused "groundwater contamination, including, but not limited to, MTBE."); ¶ 110 (defendants' "dilatory and ineffective response ... in addressing MTBE contaminant plumes" had resulted in "the spread and migration of MTBE contamination ... into deeper soil and groundwater ... placing drinking water supplies at risk.")).) | Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42. | No. 2. |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| 3.   The BP DAFAC alleged claims for equitable relief, damages and penalties under theories of public nuisance, as well as violations of California's Health& Safety Code, Fish & Game Code, and Business & Professions Code. (Cox Decl. Ex. B (BP DAFAC ¶ 3 (seeking to (1) "enjoin defendants from ... further violations of the laws and regulations," (2) "compel defendants to cleanup and abate soil and groundwater contamination caused by unauthorized releases of gasoline and [MTBE]...," (3) recover damages from defendants where such contamination cannot be cleaned up or abated...," (4) "penalize defendants with ... civil penalties," and (5) require defendants to "disgorge the monetary profits [they had] obtained.");  ¶¶ 116- 122 (public nuisance); ¶¶ 123-126, 130-168 (Health & Safety Code); ¶¶ 126-129 (Fish & Game Code); ¶¶ 169-170 (Bus. & Prof. Code); Prayer ¶ 1 (defendants "be ordered to effectively and expeditiously cleanup and abate contaminant plumes" at the listed stations"); Prayer ¶ 2 (defendants "be ordered to pay damages ... where cleanup and abatement of contaminated groundwater cannot be achieved")).) | 3.   Undisputed that the cited documents contain the allegations described. Disputed that the BP DAFAC alleged claims for damages under a theory of public nuisance. OCDA did not claim any individualized injury to his own property, so it was legally impossible for OCDA to bring a public-nuisance claim for damages. 56.1 ¶ 45; Cal. Civ. Proc. Code § 731; Disputed that cited documents are relevant or support defendants' *res judicata* argument, and incorporate by reference Plaintiff's Responses to 56.1 ¶¶ 1, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42. | 3.   **Fails to raise triable facts relevant to Defendants' Motion.**

OCWD does not actually dispute Defendants' Undisputed Material Fact No. 3. The majority of OCWD's response is comprised of argument inappropriate for inclusion in a 56.1 statement.

The BP DAFAC alleged several theories of recovery, including public nuisance, and sought several remedies, including damages, under that theory. (Cox. Decl., Ex. B, ¶ 3, ¶¶ 116-122 [public nuisance], ¶¶ 123-125 [Proposition 65], ¶¶ 126-129 [Fish & Game Code], ¶¶ 130-168 [Health & Safety Code], ¶¶ 169-170 [Business & Professions Code], and pp. 39-40 [Prayer for Relief].) Both the OCDA case and the current case seek redress for the same harm. (*e.g., compare* Cox Decl. Ex. B, ¶ 1 [action brought to "prevent destruction of Orange County's groundwater resources and otherwise protect the environment"] *to* OCWD Third Amended Complaint ¶ 1 [action brought to "protect the groundwater resources of northern Orange County"].)

OCWD's attempt to incorporate by reference its response to Undisputed Material Fact Nos. 1, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34 , 36, 40, and 42 does not provide any triable |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
|  |  | facts to support its dispute of Defendants Undisputed Material Fact No.3. |
| 4.    In April 2001, the OCDA filed a First Amended Complaint ("Shell DAFAC") in *People v. Shell,* which contained additional allegations regarding releases of MTBE gasoline. (Condron Decl., Ex. A (Shell DAFAC ¶ 21 (at least 81 service stations owned, operated and/or supplied by the Shell Defendants had "soil and/or groundwater contamination caused by the unauthorized release or releases of gasoline and/or MTBE to the environment from ... underground storage tank systems...."); ¶ 23 (releases "resulted in the spread and migration of MTBE contamination away from the original source zone (underneath and around underground storage tank systems) into deeper soil and groundwater, decreasing the feasibility and increasing the cost of cleanup and placing drinking water supplies at risk"); ¶ 12 (Shell "failed to take appropriate corrective action to remedy the impact" of the releases and "knowingly allowed the continued migration of such releases through and into soil, groundwater and sources or potential sources of drinking water of Orange County and the State of California.")). | 4.    Undisputed that the cited documents contain the allegations described. Disputed that cited documents are relevant or support defendants' *res judicata* argument, and incorporate by reference Plaintiffs Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42.<br><br>      Shell does not carry its burden to prove that there is any overlap between the stations that were at issue in its action against OCDA, and the stations that are at issue here. According to Paragraph 21 of OCDA's First Amended Complaint, the stations at issue were listed in Exhibits A and B. But Shell did not submit Exhibits A and B with its Motion. *See* Condron Decl., Exh. A. Shell's settlement agreement with OCDA also does not identify the covered stations. *See* Condron Decl., Exh. C. Nor does Shell submit any other evidence tending to show that the stations that the OCDA settlement released are the same as the stations that are at issue in this action. | 4.    **OCWD's dispute is illusory and immaterial.**<br><br>  The OCDA complaint extended to all USTs at service stations in Orange County that were "currently or previously owned and/or operated and/or supplied" by the Shell Defendants, which necessarily includes all USTs and stations at issue in this case, and included but were not limited to the stations listed on Exhibit A.  *See, e.g.,* Condron Decl. Exh. A, ¶ 12.  The OCDA Final Judgment likewise extends to all claims that were or could have been asserted in the OCDA's First Amended Complaint.  Condron Decl. Exh. C, ¶ 9.0.<br><br>To the extent the Court wishes to view the documents, Exhibit A from the OCDA Complaint and Exhibit A from the Shell Final Judgment are attached to the Condron Reply Declaration as Exhibits C and D, respectively. |
| 5.    In December 2001, the OCDA amended the complaint in *People v. Shell* to identify Equilon Enterprises LLC as one of the "Doe" defendants it had sued. In October 2003, the OCDA added Texaco Refining | 5.    Undisputed that the cited documents contain the allegations described. Disputed that cited documents are relevant or support defendants' *res judicata* argument, and incorporate by reference | 5.    **OCWD's dispute is illusory and immaterial.**<br><br>  OCWD's statement does not actually dispute the fact and admits that Defendants accurately recite the |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| and Marketing Inc, as another of the "Doe" defendants. (RJN, Ex. B.) | Plaintiffs Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42. | contents of the cited documents.<br><br>OCWD's attempt to incorporate by reference its response to Undisputed Material Fact Nos. 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, and 42 does not provide any triable facts to support its dispute of Defendants Undisputed Material Fact No.5. |
| 6.    The Shell DAFAC alleged claims for equitable relief, damages and penalties under theories of public nuisance, and violations of California's Health & Safety Code, Water Code, Fish & Game Code, and Business & Professions Code. (Condron Decl. Ex. A (Shell DAFAC ¶¶ 28- 34 (public nuisance); ¶¶ 35-38, 43-76 (Health & Safety Code); ¶¶ 39-42 (Fish & Game Code); ¶¶ 77-78 (Bus. & Prof. Code); Prayer ¶ 1 (defendants "be ordered to effectively and expeditiously cleanup and abate contaminant plumes consisting of gasoline, its constituent chemicals BTEX, and the chemical additive MTBE"); Prayer ¶ 2 (defendants "be ordered to pay damages ... where cleanup and abatement of contaminated groundwater cannot be achieved")).) | 6.    Undisputed that the cited documents contain the allegations described. Disputed that the BP DAFAC alleged claims for damages under a theory of public nuisance. OCDA did not claim any individualized injury to OCDA's own property, so it was legally impossible for OCDA to bring a public-nuisance claim for damages. 56.1 ¶ 45; Cal. Civ. Proc. Code § 731; Disputed that cited documents are relevant or support defendants' *res judicata* argument, and incorporate by reference Plaintiff's Responses to 56.1 ¶¶ 1, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42 | **6.    OCWD's dispute is illusory and immaterial.**<br><br>OCWD's statement does not actually dispute the fact and admits that Defendants accurately recite the contents of the cited documents. Moreover, OCWD refers to the BP FAC, which is not discussed in this numbered Undisputed Material Fact. |
| 7.    In both *People v, ARCO* and *People v. Shell*, the OCDA brought claims on behalf of the public to protect the public's property interest in groundwater. (Cox Decl. Ex. B (BP DAFAC ¶ 1 (OCDA "brings this action on behalf of the People of the State of California" to: "protect the public from health and safety hazards" and "prevent | 7.    Undisputed that the cited documents contain the allegations described. Disputed that cited documents are relevant or support defendants' *res judicata* argument, and incorporate by reference Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42 | **7.    Fails to raise triable facts relevant to Defendants' Motion.**<br><br>OCWD does not dispute Defendants' Undisputed Material Fact No. 7. Indeed, OCWD's statement does not actually dispute the fact and admits that Defendants accurately recite the contents of the |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| destruction of Orange County's groundwater resources. ..."); ¶ 6 ("Plaintiff, the People, is the public located within the County of Orange, as represented by. .. the District Attorney."); ¶ 34 ("All water within the State, including groundwater, is the property of the people of the State of California." (citing Cal. Water Code §§ 102 & 104)); Condron Decl., Ex. A (Shell DAFAC ¶ 1 (DA "brings this action in the public interest in the name of the People of the State of California and Orange County" to "protect the public from health and safety hazards... and to protect the environment of Orange County..."); ¶ 5 ("Plaintiff, the People, is the public located within the Orange County, as represented by ... the District Attorney"). | | cited documents.<br><br>The existence of privity for *res judicata* is a question of law. *People v. Dawkins*, 241 Cal. Rptr. 456, 458 (1987); *McAlister v. Essex Prop. Trust*, 504 F. Supp. 2d 903, 912 (C.D. Cal. 2007).<br><br>OCWD's attempt to incorporate by reference its response to Undisputed Material Fact Nos. 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, and 42 does not provide any triable facts to support its dispute of Defendants Undisputed Material Fact No. 7. |
| 8.    Both the OCDA and OCWD are agencies of the State of California | 8.   Disputed. Water Districts, including the Orange County Water District, are not state agencies. *Santa Clara Valley Water District v. Olin Corp.*, 2007 WL 2890390, *5 (Santa Clara County Water District is not the "State"); Other Ninth Circuit precedent supports *Olin's* conclusion. *See United States ex rel. Norton Sound Health Corp. V. Bering Strait School Dist.*, 138 F.3d 1281, 1284 (9[h] Cir. 1998) (a "local government unit, though established under state law, funded by the state, and ultimately under state control, with jurisdiction over only a limited area, is not a 'State.'"); *see also Washington State Dept. Of Transp. V. Washington Natural Gas Co.*, F.3d 793, 800, fn. 5 ("a local government with authority over a limited area, is a different type of government than a state-wide agency that is | 8.    **Disputed and fails to raise triable facts relevant to Defendants' Motion.**<br><br>The majority of OCWD's response is comprised of argument inappropriate for inclusion in a 56.1 statement.<br><br>This Court has previously determined that OCWD *acts* as an agency of the State of California. *In re MTBE*, 522 F.Supp.2d 557, 559 n.9 (S.D.N.Y. 2007) [treating OCWD as a "special district" of the state]; *In re MTBE*, 522 F.Supp.2d 569, 574 (S.D.N.Y. 2007 [referring to OCWD as "a service district [that] is a governmental unit under California law," *citing* Cal. Gov't Code § 16271(d)]. |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
|  | part of the organized government of the state itself.")<br><br>Defendants misstate the plain language of the documents on which they rely. See Motion at 12. Paragraph 4 of the District's Third Amended Complaint does <u>not</u> allege that the District is a "special district." See Condron Decl., Exh. C. California Government Code section 16271(d) — on which Defendants rely — expressly states that the term "Special District' does <u>not</u> include any agency whic is not authorized to levy a property tax rate, except the Bay Area Pollution Control District." (Emphasis added.) California's Water Code <u>only</u> includes water districts in the definition of "state agency" for the purposes of interpreting the statutory scheme governing the Central Valley Water Project, a <u>federally</u> owned water-infrastructure project that transports water from the Sacramento Delta to other parts of the state (mostly to agricultural areas in California's Central Valley). Cal. Water Code §§ 11100 and 11102. And *Pitchess v. Sup. Ct.,* 2 Cal.App.3d 653, 656-57 (1969) says that a district attorney is "technically . . . a state officer" <u>only</u> when "he conducts prosecutions for the punishment of crimes denounced by act of the legislature." Here, OCDA brought a <u>civil</u> action against Defendants, <u>not</u> a "prosecution[] for the punishment of crimes."<br><br>    Defendants' Motion concedes that *res* judicata cannot apply unless OCDA had "the right to obtain redress for [the] harm [that the District] suffered." Motion, 9. OCDA | OCWD has previously stated to a court in this District that "**OCWD is first and foremost a state environmental agency….**" *In re Mark IV Indus.*, No. 09BK12795 (Bankr. S.D.N.Y.), Response of Orange County Water District to Reorganized Debtor's Objection to Claim No. 1291, August 31, 2010, at 3, quoting *In re MTBE*, 2007 WL 700819, *3 (S.D.N.Y. 2007) (emphasis added). (Condron Reply Decl. Exh. A).  In any event, OCWD is in privity with OCDA for *res judicata* purposes irrespective of whether it is a state agency.  *See, e.g., Rynsburger v. Dairymen's Fertilizer Coop.*, 266 Cal.App.2d 269, 275-77 (1968).<br><br>*Res judicata* applies here even if OCWD's claims could not have been asserted by the OCDA in the prior litigations. *Villacres v. ABM Indus., Inc.,* 189 Cal.App.4th 562, 586 ["it has been held that even when the court does not have power to adjudicate a claim, it may still 'approve release of that claim as a condition of settlement of an action before it.' [Citation omitted.]"]<br><br>OCWD's attempt to incorporate by reference its response to Undisputed Material Fact Nos. 1, 3, 10, 13, 15-17, 20-22, 24-31, 33, 34 , 36, 40, and 42, and its additional fact numbers 43 |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| | only has "the right to obtain redress for a harm" if a statute explicitly authorizes him to bring suit. *Safer v. Sup. Ct.,* 15 Cal.3d 230, 236 (1975). Defendants have not identified any statute that permits OCDA "to obtain redress for [the] harm" that Defendants' MTBE continues to cause to the District's Water Rights, or that permits OCDA "to obtain redress for" the costs that the District must incur to remediate Defendants' contamination. Plaintiff's Facts, No. 43 and 44. *See also* Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42. | and 44, does not provide any triable facts to support its dispute of Defendants' Undisputed Material Fact No. 8. |
| 9.    The OCDA acts as an officer of Orange County and the State of California in exercising the powers for which he was elected. (See *Pitchess v. Superior Court,* 2 Cal.App.3d 653, 656-57 (1969), citing Cal. Govt. Code §§ 24000(a); 26500 - 26505). | 9.    Disputed that OCDA acts as an officer of the State fo California in civil cases. "powers for which [OCDA] was elected" are narrowly circumscribed by statute. OCDA only acts as an officer of the State in criminal prosecutions. OCDA does not have the power to pursue the District's causes of action here.    *See also* Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42. | 9.    **Disputed and fails to raise triable facts relevant to Defendants' Motion**.    OCWD does not identify any evidence to dispute Undisputed Material Fact No. 9.    OCWD fails to raise triable facts as to Undisputed Material No. 9 by failing to make "an affirmative showing on all matters placed in issue." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).    OCWD's attempt to incorporate by reference its response to Undisputed Material Fact Nos. 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, and 42 does not provide any triable facts to support its dispute of Defendants Undisputed Material Fact No. 9. |
| 10.  OCWD is a special district within Orange County that acts as an agency of the State of | 10.    Disputed. The District is not a special district under California law, nor is it a | 10.  **Disputed and fails to raise triable facts relevant to Defendants' Motion**. |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| California. (See *In re MTBE*, 522 F.Supp.2d 557, 559 n.9 (S.D.N.Y. 2007); *In re MTBE*, 522 F.Supp.2d 569, 574 (S.D.N.Y. 2007), citing Cal. Govt. Code § 16271 [d]). | California agency. *See also* Plaintiffs Responses to 56.1 ¶¶ 1, 3, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42. | OCWD does not identify any evidence to dispute Undisputed Material Fact No. 10 and fails to make "an affirmative showing on all matters placed in issue." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

This Court has previously determined that OCWD *acts* as an agency of the State of California.  *In re MTBE*, 522 F.Supp.2d 557, 559 n.9 (S.D.N.Y. 2007) [treating OCWD as a "special district" of the state]; *In re MTBE*, 522 F.Supp.2d 569, 574 (S.D.N.Y. 2007) [referring to OCWD as "a service district [that] is a governmental unit under California law," *citing Cal. Govt. Code § 16271*(d). OCWD's Complaint alleges that it is a "special water agency" (Condron Decl., Ex. B, ¶ 4) and OCWD has previously stated to a court in this District that "**OCWD is first and foremost a state environmental agency….**" *See In re Mark IV Indus*., No. 09BK12795 (Bankr. S.D.N.Y.), Response of OCWD to Reorganized Debtor's Objection to Claim No. 1291, August 31, 2010, at 3, quoting *In re MTBE*, 2007 WL 700819, *3 (S.D.N.Y. 2007) (emphasis added). (Condron Reply Decl. Exh. A).  In any event, OCWD is in privity with OCDA for *res judicata* purposes irrespective of whether it is a state agency. *Rynsburger* |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| | | *v. Dairymen's Fertilizer Coop.*, 266 Cal.App.2d 269, 275-77 (1968). OCWD's attempt to incorporate by reference its response to Undisputed Material Fact Nos. 1, 3, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, and 42 does not provide any triable facts to support its dispute of Defendants Undisputed Material Fact No. 10. |
| 11.  OCWD circulated a copy of the BP DAFAC, a press release from the OCDA, and newspaper articles about the lawsuit to its Water Producers and Board of Directors. (Cox Decl. Ex. ¶ 6, Ex. D (Oct. 20, 2000 Memorandum from J. Kennedy of OCWD to OCWD Water Producers (attaching (1) Oct. 19, 2000 OCDA Press Release ("alleg[ing] contamination at 116 gas stations countywide," that "[p]ollution of this nature caused by ARCO ... could cause Orange County to lose a substantial portion of its water supply," and that remediation at the sites cited in the lawsuit "could take years to complete");- (2) Stuart Pfeifer, County Seeks Millions From Oil Firms, L.A. Times, Oct. 20, 2000, at B 1 (defendants "blamed for contaminating groundwater underneath more than 100 gas stations across the county."); (3) Pat Brennan, Prosecutors Allege MTBE Conspiracy, Orange County Register, Oct. 20, 2000, at Local News p. (OCDA contends ARCO "has negligently allowed [MTBE] into Orange County's groundwater"); and (4) Pat Brennan, ARCO Sued Over Gas | 11.   Undisputed that the cited documents contain the allegations described. Disputed that cited documents are relevant or support defendants' *res judicata* argument, and incorporate by reference Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42. | 11.   **Fails to raise triable facts relevant to Defendants' Motion.** OCWD does not dispute Defendants' Undisputed Material Fact No. 11. Indeed, OCWD's statement does not actually dispute the fact and admits that Defendants accurately recite the contents of the cited documents.  The existence of privity for *res judicata* is a question of law.  *People v. Dawkins*, 241 Cal. Rptr. 456, 458 (1987); *McAlister v. Essex Prop. Trust*, 504 F. Supp. 2d 903, 912 (C.D. Cal. 2007). OCWD's attempt to incorporate by reference its response to Undisputed Material Fact Nos. 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34 , 36, 40, and 42 does not provide any triable facts to support its dispute of Defendants Undisputed Material Fact No. 11. |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| Additive Leak, Orange County Register, Oct. 20, 2000, at Local News p. 6 ("the contamination represents a potentially enormous impact on public funds if it seeps from shallow ground water into deeper aquifers.")).) | | |
| 12. OCWD, including many of its senior staff, were familiar with and actively monitored the OCDA's lawsuit against BP, and provided "technical assistance" to the District Attorney "to help in the enforcement of cleanup of MTBE and other petroleum contaminants from leaking gasoline storage tanks in Orange County." (Cox Decl. Ex. E (July 14, 2000 Ltr. From W. Mills to J. Miller noting that the OCDA "is involved in litigation against oil companies in an effort to address the MTBE problem."); Cox Decl. Ex. F (Wildermuth Dep. 216:24-217:17 ("And at the same time, this DA was ... doing the case on MTBE") & Ex. 24 (Oct. 10, 2001 email from R. Herndon to R. Wildermuth and J. Glasser discussing the District Attorney's lawsuit)); Cox Decl. Ex F; Cox Decl. Ex. J (A. Brown Dep., 1111:11-1112:12 ("I believe there may have been a meeting or maybe more than one meeting where the Orange County Water District was present, and they were involved as the agency responsible for managing and protecting the ... groundwater resources of the coastal plain of Orange County. And the service stations that were the subject of the Orange County District Attorney's case ... most, if not all, were located within the limits of the Orange | 12. Undisputed that certain members of the District's staff knew that OCDA sued Defendants. Disputed that the District monitored or assisted OCDA in any way that would create privity. The cited documents do not support the textual assertion. Object to the testimony of Anthony Brown, who is not a District employee, as hearsay and speculation. Disputed that cited documents are relevant or support defendants' *res judicata* argument, and incorporate by reference Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42. | 12. **Fails to raise triable facts relevant to Defendants' Motion.**<br><br>OCWD's statement does not actually dispute the fact and admits that Defendants accurately recite the contents of the cited documents. OCWD does not identify any evidence to dispute the fact, and thus fails to make "an affirmative showing on all matters placed in issue." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). OCWD's effort to characterize the existing evidence is unsupported by the documentation cited in Undisputed Material Fact No. 12. Indeed, the majority of OCWD's response is comprised of argument inappropriate for inclusion in a 56.1 statement.<br><br>The existence of privity for *res judicata* is a question of law. *People v. Dawkins*, 241 Cal. Rptr. 456, 458 (1987); *McAlister v. Essex Prop. Trust*, 504 F. Supp. 2d 903, 912 (C.D. Cal. 2007).<br><br>The testimony of Anthony Brown was based on his personal knowledge and recollection of meetings about the OCDA case. |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| County Water District.")); Cox Decl. Ex. K (Yamachika Dep. Ex. 38 ("Last month the OCDA ... received the go-ahead from the judge to proceed with his lawsuit against ARCO for contamination from numerous LUFT sites.... OCWD supports the efforts of the DA to expedite cleanup by the responsible parties.")); Cox Decl. Exh. L (OCWD-MTBE-001-038623-24 (Safe Drinking Water Subcommittee Meeting ACWA Fall Conference) (same quote as Yamachika Dep. Ex. 38)).) | | (*See* Cox. Decl., Ex. J, A. Brown Dep., 1111:11-1112:12.) The cited testimony is not objectionable as hearsay or speculation simply because he is not an OCWD employee.<br><br>OCWD's attempt to incorporate by reference its response to Undisputed Material Fact Nos. 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, and 42 does not provide any triable facts to support its dispute of Defendants Undisputed Material Fact No. 12. |
| 13.  On December 17, 2002, the Orange County Superior Court entered a Final Judgment Pursuant to Stipulation and Order Thereon ("BP Final Judgment"), wherein the OCDA settled all claims against Atlantic Richfield Company, BP West Coast Products LLC, and BP Products North America Inc. (Cox Decl. Ex. A (BP Final Judgment p. 1 (defining "Settling Defendants" as "defendants Atlantic Richfield Company, BP Amoco Corporation, and ARCO Chemical Company"); ¶ 6.0(i) (BP Final Judgment "is a final and binding resolution and settlement of all claims ... that were alleged by the First Amended Complaint ... or could have been asserted, based on the facts alleged in the First Amended Complaint... against: (i) each of the Settling Defendants and each of their subsidiaries, corporate parents, [and] Affiliates (including, without limitation, BP West Coast Products LLC, BP Products North America | 13.   Undisputed that OCDA's settlements with Defendants resolved OCDA's claims against those Defendants. Disputed that OCDA's settlements with Defendants had any impact on the District's causes of action against Defendants. *See Safer v. Sup. Ct.,* 15 Ca1.3d 230, 236 (1975); *see also* Cal. Code Civ. Proc. § 731; *see also* Barnhart Decl., ¶¶ 3-6, Exh. 2-5; see also 56.1 ¶¶ 43-60; Disputed that cited documents are relevant or support defendants' *res judicata* argument, and incorporate by reference Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42. | 13.  **Fails to raise triable facts relevant to Defendants' Motion.**<br><br>OCWD's response does not actually dispute the stated fact.<br>The argument that the settlements did not impact OCWD's causes of action is a legal conclusion that does not raise a triable fact relevant to Defendants' Motion.  The existence of privity for *res judicata* is a question of law.  *People v. Dawkins*, 241 Cal. Rptr. 456, 458 (1987); *McAlister v. Essex Prop. Trust*, 504 F. Supp. 2d 903, 912 (C.D. Cal. 2007).<br><br>OCWD's attempt to incorporate by reference its response to Undisputed Material Fact Nos. 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, and 42, and its additional fact numbers 43-60 does not provide any triable facts to support its dispute of |

- 16 -

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| Inc....").) | | Defendants Undisputed Material Fact No. 13. |
| 14.  Pursuant to the terms of the BP Final Judgment, ARCO and BP Amoco agreed to pay $5 million to reimburse the OCDA's cost of investigation. (Cox Decl. Ex. A (BP Final Judgment ¶ 3).) | 14.    Undisputed that the document says that Defendants agreed to pay OCDA $5 million. Disputed that this amount was paid. Defendants cite no evidence that they actually paid OCDA anything. Disputed that cited documents are relevant or support defendants' *res judicata* argument, and incorporate by reference Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42. | **14.  Fails to raise triable facts relevant to Defendants' Motion.**

OCWD does not identify any evidence or information to dispute Undisputed Material Fact No. 14, and thus fails to make "an affirmative showing on all matters placed in issue."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The BP Final Judgment is "expressly conditioned on the Settling Defendants' full payment of the amount specified in Section 3 above by the deadlines specified Section 3 above and their full satisfaction of the Plume Delineation Program."  (Cox. Decl., Ex. A, ¶ 6.0.)

OCWD's attempt to incorporate by reference its response to Undisputed Material Fact Nos. 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, and 42 does not provide any triable facts to support its dispute of Defendants Undisputed Material Fact No. 14. |
| 15.  Pursuant to the terms of the BP Final Judgment, ARCO and BP Amoco agreed to pay $3 million to fund a "Plume Delineation Program," under which an "independent third party environmental consultant" selected by the OCDA would evaluate the investigation and corrective action conducted at the service stations covered by | 15.    Undisputed that the cited documents contains the alleged words. Disputed that this amount was paid. Defendants cite no evidence that they actually paid anyone anything.

Disputed also that there ever was any connection between Defendants' alleged Plume Delineation Programs, on the | **15.  Fails to raise triable facts relevant to Defendants' Motion.**

OCWD's response does not actually dispute the stated fact, which is established in the Windsor Declaration, (at ¶¶ 2-4)  Moreover, OCWD fails to raise triable facts by failing to make "an |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| the BP Final Judgment and identify what further action should be taken to remediate the MTBE and gasoline releases found there. (Cox Decl. Ex. A (BP Final Judgment ¶¶ 4.0-4.10; ¶ 4.4 (OCDA's consultant was expressly called upon to "determine if the delineation of the PLUME at each of the Subject Sites provides the information needed to identify ... corrective actions that are appropriate in light of any potential impacts the PLUME may pose to human health, the groundwater resource, and the environment."); ¶ 4.2(b)(A) (consultant authorized to identify additional actions required if needed at the sites in question, "including, but not limited to," the "drilling and installation of new wells and/or boring to further analyze and delineate the PLUME at the Subject Sites,... which may potentially include delineation in both the lateral and vertical direction that approximates the 5 ppb MTBE contour line in groundwater.")).) | one hand, and any interest or property of the District, on the other hand. Defendants do not provide any specific statements or evidence about what their Plume Delineation Programs actually entailed, nor do Defendants assert or prove that the Programs actually benefitted the District (or anyone else, for that matter).<br><br>Defendants' settlements did not give the District any right to participate in the vaguely defined "Plume Delineation" programs. See Cox Decl. Exh. A and H. The settlements did not require anyone to report to the District about anything. The settlements did not give the District the power to enforce the settlements. Nor did the settlements solve the District's problem. Almost five years after the last Defendant's settlement obligations expired, MTBE plumes that have migrated off-site from defendants' stations continue to migrate towards the District's water production wells. *See* Declaration of Stephen Wheatcraft, submitted with the District's Opposition to Defendants' Omnibus Motion for Summary Judgment.<br><br>*See also* Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42. | affirmative showing on all matters placed in issue." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Therefore, its evidence is not inconsistent with Undisputed Material Fact No. 15. Indeed, the majority of OCWD's response is comprised of argument inappropriate for inclusion in a 56.1 statement.<br><br>The BP Final Judgment describes the terms of the settlement, including the Plume Delineation Program and the work of the "independent third party environmental consultant" selected by the OCDA. (*See* Cox Decl. Ex. A (BP Final Judgment) ¶¶ 4.0-4.10.) The BP Final Judgment is "expressly conditioned on the Settling Defendants' . . . full satisfaction of the Plume Delineation Program." (Cox. Decl., Ex. A, ¶ 6.0.) BP carried out the required Plume Delineation Program, which resulted in reports that were submitted to the OCDA and its independent consultant. Winsor Decl. ¶¶ 2-3. Following the independent consultant's review of the Plume Delineation reports, BP implemented the suggestions of the independent consultant. *Id.* ¶ 4. Application of *res judicata* does not require providing any direct or indirect benefit to the party to be precluded. |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| | | The allegations in OCWD's response that its "problem" is not "solve[d]" are not relevant to Defendants' Motion.<br><br>OCWD's attempt to incorporate by reference its response to Undisputed Material Fact Nos. 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, and 42 does not provide any triable facts to support its dispute of Defendants Undisputed Material Fact No. 15. |
| 16.  Pursuant to the terms of the BP Final Judgment, ARCO and BP Amoco become subject to significant injunctive relief which remained in effect for five years following entry of the BP Final Judgment. (Cox Decl. Ex. A (BP Final Judgment ¶¶ 5.0-5.6).) | 16.    Disputed. The cited documents do not contain the word significant. The word "significant" is simply Defendants' characterization unsupported by any citation to evidence. The injunctive relief only required defendants to do what they already were legally required to do — to begin the process of delineating their plumes, to comply with agency directives, and to refrain from continuing to break the law. See, e.g., Cox Decl., Exh. A, pg. 9 (enjoining Defendants from continuing to "violate the corrective action requirements of the Barry Keene Underground Storage Tank Cleanup Trust Fund Act of 1989").<br><br>    According to the Declaration of Henry Winsor that Defendants offered in support of their Motion (**"Winsor Decl."**), the settlements' allegedly "significant injunctive relief" did not cause Defendants to make any "substantial" changes to the demonstrably inadequate remediation that they already were doing. "To the best of my recollection, the independent | 16.  **Disputed and fails to raise triable facts relevant to Defendants' Motion.**<br><br>OCWD quibbles with the word "significant," but not the fact that the BP Defendants were subject to injunctive relief for five years following the entry of the BP Final Judgment. (*See* Cox Decl. Ex, A (BP Final Judgment) ¶¶ 5.0-5.6; *e.g.*, ¶5.1 [ARCO and BP Amoco "shall accept and comply with the written findings and recommendations of the CONSULTANT for further PLUME delineations and/or for corrective action of the PLUME]; ¶5.2 [ARCO and BP AMOCO "shall . . . promptly. . . rectify any and all existing violations of the regulatory compliance requirements . . . as indicated by said agencies."].)<br><br>OCWD's characterization of the Winsor Declaration is irrelevant to the stated fact because the substance |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| | consultant provided some <u>minor suggestions</u> to enhance the ongoing remedial work, however, <u>none of those suggestions were substantial or contrary to the course of corrective action that had been proposed by BP</u>." Winsor Dec1,¶ 4 (emphasis added).<br><br>    The settlement's "injunctive relief" was not "significant" enough to solve the MTBE-contamination problem that Defendants created. Defendants' plumes remain undelineated. Defendants' contamination remains unremediated. *See* Declaration of Stephen Wheatcraft, submitted with the District's Opposition to Defendants' Omnibus Motion for Summary Judgment. *See also* Plaintiffs Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42. | and/or volume of the suggestions offered by the consultant have no bearing on whether ARCO and BP Amoco were subject to continuing injunctive relief for five years after the entry of the Final Judgment. Moreover, the Winsor Declaration indicates that BP took part in and completed the Plume Delineation Program required under the BP Final Judgment.  (Winsor Decl. ¶¶ 3-4.)<br><br>OCWD fails to raise triable facts by failing to make "an affirmative showing on all matters placed in issue." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).<br><br>OCWD's response does not actually dispute the stated fact, but rather the results of the injunctive relief identified in the BP Final Judgment.  However, these allegations are not relevant to Defendants' Motion or the application of *res judicata* here.<br><br>The majority of OCWD's response is comprised of argument inappropriate for inclusion in a 56.1 statement.<br><br>OCWD's attempt to incorporate by reference its response to Undisputed Material Fact Nos. 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, and 42 does not provide any triable facts to support its dispute of Defendants Undisputed Material Fact No. 16. |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| 17.  The BP Final Judgment also incorporated a comprehensive release which applied to an attached list of 183 ARCO service station sites. (Cox Decl. Ex. A (BP Final Judgment ¶ 6.1 ("This Final Judgment also constitutes a release from any known or unknown past or present claims, violations, or causes of action that were or could have been asserted in the First Amended Complaint" with regard to any "unauthorized release of petroleum product ... or additive or constituent of such product ...; the use of MTBE and/or other fuel oxygenates in gasoline, or any alleged failure to assess, remediate, or otherwise take corrective action in response to any such authorized release at the sites listed in Exhibit A, whether asserted or unasserted or known or unknown ."); BP Final Judgment Exs. A & B (listing 183 ARCO Owned/Leased Sites)).) | 17.   Disputed. The BP Final Judgment release was not comprehensive. The release was strictly limited to causes of action that OCDA could have brought — which did not include the District's cause of action here. See Cox Decl. Exh. A, ¶ 6.0(i) (BP Final Judgment "is a final and binding resolution and settlement of all claims ... that were alleged by the First Amended Complaint ... or could have been asserted, based on the facts alleged in the First Amended Complaint"); see also Cox Decl., Exh. H, pg. 11 (same); *see also Safer v. Sup. Ct.,* 15 Ca1.3d 230, 236 (1975); *see also* Cal. Code Civ. Proc. § 731; *see also* Barnhart Decl., ¶¶ 3-6, Exh. 2-5; *see also* Plaintiff's Facts, No. 43-60.<br><br>OCDA's complaints against Defendants expressly state that OCDA did not bring or litigate any cause of action that belongs to the District:<br>Plaintiff does not include, and the Orange County District Attorney does not represent, any water district . . . or other entity with an interest in or pertaining to groundwater or production wells located within the County of Orange.<br><br>Condron Decl., Exh. A, pg. 2; "Cox Decl.", Exh. B, pg. 2.<br><br>*See also* Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42. | 17.  **Disputed.**<br><br>OCWD does not identify any evidence that actually disputes Undisputed Material Fact No. 17, and thus fails to make "an affirmative showing on all matters placed in issue." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).<br><br>The groundwater and MTBE that was at issue in the OCDA litigations is the same *public* water resource that is at issue here, and OCDA and OCWD are in privity for *res judicata* purposes.  The releases of MTBE gasoline at issue existed at the time the BP Final Judgment and Release was entered in the OCDA litigation (*see* Declaration of Erik Alson) and regardless of the common law or statutory basis for OCWD's claims, they are barred by entry of the BP Final Judgment and Release in the OCDA litigation.<br><br>That "Plaintiff" is defined in the OCDA's First Amended Complaints as "the public" but *not* including "any water district" which the "District Attorney does not represent" establishes nothing more than the identity of the parties in the OCDA action.  It has never been Defendants' contention that OCWD *was a party* to the OCDA action, or that *res judicata* depended upon OCWD's |

- 21 -

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| | | status *as a party* to that case.<br><br>OCWD's attempt to incorporate by reference its response to Undisputed Material Fact Nos. 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, and 42, and its additional facts 43-60 does not provide any triable facts to support its dispute of Defendants Undisputed Material Fact No. 17. |
| 18.  The BP DAFAC was the operative complaint when the BP Final Judgment was entered on December 17, 2002 (Cox Decl. ¶ 2 and Ex. A (BP Final Judgment, Recitals A & B).) | 18.    Disputed. Defendants provide no evidence that supports this allegation. *See also* Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42. | 18.  **Disputed.**<br><br>OCWD does not identify any evidence to dispute Undisputed Fact No. 18, which is supported in the underlying documents: "Plaintiff and Settling Defendants have agreed to settle this action on the terms set forth in this Final Judgment.  Plaintiff believes that the resolution of the violations alleged in the First Amended Complaint is fair and reasonable. . . ."  (Cox Decl. Ex. A, Recital B.)<br><br>OCWD fails to raise triable facts by failing to make "an affirmative showing on all matters placed in issue." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).<br><br>OCWD's attempt to incorporate by reference its response to Undisputed Material Fact Nos. 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, and 42 does not provide any triable facts to support its dispute of Defendants Undisputed |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| | | Material Fact No. 18. |
| 19.  The BP Final Judgment was approved and entered by the Court in December 2002 — the same month in which BP stopped adding MTBE to gasoline produced in California. (Cox Decl. Ex. A (BP Final Judgment); Alson Decl. ¶ 3.) | 19.   Undisputed that cited document says that it was approved and entered by the Court in December 2002. Disputed that Defendants' evidence proves that any of these allegations are true. Disputed that cited documents are relevant or support defendants' *res judicata* argument, and incorporate by reference Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42. | 19.   **Fails to raise triable facts relevant to Defendants' Motion.**<br><br>OCWD admits that the Final Judgment is stamped as filed with the court on December 17, 2002 and does not challenge the admissibility of the statements in the declaration of Erik Alson or the competency of the declarant. OCWD does not identify any evidence or information to dispute the stated fact<br><br>OCWD's attempt to incorporate by reference its response to Undisputed Material Fact Nos. 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, and 42 does not provide any triable facts to support its dispute of Defendants Undisputed Material Fact No. 19. |
| 20.  BP complied fully with its obligations under the BP Final Judgment. (Winsor Decl. ¶¶ 2, 3.) Neither the OCDA nor the OCWD have ever voiced any concerns about the terms of the settlement or BP's adherence to those terms, nor was the dispute resolution process identified in paragraph 5.7 of the BP Final Judgment ever invoked. (Winsor Decl. ¶ 4.) | 20.   Disputed. Defendants' provide no evidence that BP complied with its obligations, or that OCDA never voiced any concerns.<br><br>The District was not a party to the settlement agreements, and the settlement agreements do not permit the District to invoke those agreements' dispute-resolution procedures.<br><br>The settlements did not involve the District in the Plume Delineation Programs, nor did they require anyone to report to the District about anything. The District expressed its "concerns" with the impact of ongoing MTBE contamination on the | 20.   **Disputed and fails to raise triable facts relevant to Defendants' Motion.**<br><br>The Declaration of Henry C. Winsor describes BP's compliance with the terms of the BP Final Judgment and the failure of any parties to invoke the dispute resolution process in paragraph 5.7 of the BP Final Judgment.  (Winsor Decl. ¶¶ 2-4.)  OCWD does not identify any evidence or information to dispute and thus fails to make "an affirmative showing on all matters placed in issue." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| | District's interests in groundwater in the Basin by filing this lawsuit and prosecuting it for the last eleven years. Nothing that occurred as a result of the settlement has alleviated the District's concerns or the harm to the District. *See* Declaration of Stephen Wheatcraft, submitted with the District's Opposition to Defendants' Omnibus Motion for Summary Judgment.<br><br>*See also* Plaintiffs Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42. | Undisputed Material Fact No. 20.<br><br>Application of *res judicata* does not require providing any direct or indirect benefit to the party to be precluded.<br><br>OCWD's attempt to incorporate by reference its response to Undisputed Material Fact Nos. 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, and 42 does not provide any triable facts to support its dispute of Defendants Undisputed Material Fact No.20. |
| 21.  In *People v. ARCO,* following the BP Final Judgment (i.e., as to Thrifty), OCWD appeared as an "interested party," and unsuccessfully moved to stay or continue the hearing on final judgment. (Cox Decl. Ex. I (Jan. 5, 2005 Minute Order (denying OCWD's motion for stay or continuance and signing Thrifty Final Judgment Pursuant to Stipulation and Order Thereon)); Cox Decl. Ex. H (Feb. 11, 2003 Thrifty Final Judgment) (16.6 (no estoppel or interference with rights or action of listed regulatory agencies overseeing the Thrifty sites *including* OCWD)).). | 21.   Disputed. This statement confuses the Thrifty judgment with the Shell judgment.<br><br>The Thrifty settlement was the second settlement that occurred in *People v. ARCO.* The Thrifty settlement was <u>not</u> reduced to a judgment on January 5, 2005. The Shell settlement was reduced to a judgment on that date.<br><br>The Thrifty settlement was reduced to a judgment on February 11, 2003.<br><br>OCDA's settlement with Thrifty states that it does not bar the District's cause of action here. Specifically, that judgment says:<br><br>**This Final Judgment shall not serve to bar,** estop, alter, supercede, or interfere with, any investigation, action, order, request, demand or directive of any regulatory agency, person or entity having jurisdiction over . . . the groundwater or | 21.  **Fails to raise triable facts relevant to Defendants' Motion.**<br><br>Shell did not oppose OCWD's intervention because it consented to a later action by OCWD, but rather because, despite knowing of the OCDA action for years, OCWD waited until the last minute to seek intervention: "I submit, Your Honor, that this [attempt to intervene] is untimely and should be rejected out of hand." (Condron Reply Decl. Exh. B, Hearing Trans. at 12). Shell's counsel's reference to this case was solely to recognize the legal principle, which was also recognized by the Orange County Superior Court, that it is for this Court to determine the preclusive effect of the OCDA Consent Judgment. (Condron Reply Decl. Exh. B, Hearing Trans. at 13-14, 28). Moreover, an |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| | production wells within the County of Orange, including **any** investigation, **action,** order, request, demand, or directive **of . . . the Orange County Water District** pursuant to any of the laws and regulations pertaining to underground storage tanks or water. . . . **Plaintiff does not include,** and the Orange County District Attorney does not represent, **any water district** . . . or other entity with an interest in or pertaining to groundwater or production wells located within the County of Orange.<br><br>Cox Decl., Exh. H, pg. 15 (emphasis added).<br><br>   On January 5, 2005, Shell successfully opposed the District's request for leave to file a motion to intervene to protect its interests.<br><br>   On January 5, 2005, both OCDA and the Superior Court concluded that the Shell settlement did not bar the District's cause of action here. OCWD represented to the Court:<br><br>   The Water District's claims are common-law based; they are damage based; they are independent of our claims; and we have always taken the position, and the Court has read in the document we have taken the position, that there's nothing we're doing in this settlement that has anything to do with | unsuccessful attempt to intervene in a prior action does not negate the *res judicata* effect of the judgment. *See COAST,* 60 Cal. App. 4th at 1073-74 (*res judicata* barred citizen's group action even where it had unsuccessfully sought to intervene in prior litigation, and court entering prior judgment had told citizen's group it retained a right to pursue separate litigation).<br><br>What the OCDA "intended" regarding the effect of the Final Judgments on future claims is of no import; the law dictates that these claims have already been resolved and cannot be brought again.  The parties did not agree, expressly or otherwise, to except OCWD's claims.  When the parties agreed to remove claims from the scope of the Final Judgment, they did so explicitly.  *Compare* Condron Decl. Exh. C, ¶ 9.1 (providing that the "Final Judgment does not release any claims, violations, or causes of action against Defendant Texaco, Inc.") *with* ¶ 9.4 (stating the OCDA alone "does not intend" the Final Judgment to bar other claims).  Nor did Shell's counsel express any views on the effect of the OCDA settlement on OCWD's claims; to the contrary, he expressed the view that this Court would need to make that determination, as the |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| | precluding the Water District from pursuing their case in Federal Court.<br><br>Barnhart Decl., ¶ 2, Exh. 1, pg. 21. Although the Superior Court was not asked to make any formal findings, the Court agreed with OCDA's analysis:<br><br>But I understand different causes of action are being sought in the matter removed to Federal Court. And I have not seen the — any — or heard any prejudice to the parties in the other action . . .<br><br>Barnhart Decl., 112, Exh. 1, pg. 27, see also pg. 14 ("The Court: . . . The Court has not heard a request for this Court to make any findings, whether advisory or otherwise.").<br><br>Shell's counsel never disputed OCDA's or the Superior Court's conclusions that OCDA's action did not prejudice the District's cause of action here. In fact, Shell's counsel impliedly represented that he did not think that the Shell settlement barred the District's cause of action, because he told the Court that it was his understanding that the Shell settlement was the same as the second settlement in the ARCO case (which was the settlement that had terminated the *People v. ARCO* case approximately two years before the Shell settlement):<br><br>I think [OCDA] will confirm that the structure of this settlement was presented to Shell on a | judge of the Orange County Superior Court agreed. (Condron Reply Decl. Exh. B, Hearing Trans. at 13-14, 28).<br><br>OCWD's attempt to incorporate by reference its response to Undisputed Material Fact Nos. 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, and 42 does not provide any triable facts to support its dispute of Defendants Undisputed Material Fact No. 21. |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| | non-negotiable basis. In other words, the format I was told from day one was going to be the format of the ARCO settlement.[2] And indeed the entire injunctive provision, the plume delineation program, all of that is identical to the structure of the ARCO settlement, which again has been of public record for, I believe, more than two years.<br><br>Barnhart Decl., ¶ 2, Exh. 1, pg. 23.<br><br>    If Shell did not agree with OCDA that the settlement did not have "anything to do with precluding the Water District from pursuing their case in Federal Court," then there never was any settlement for the Superior Court to approve. *American Employers Group v. EDD,* 154 Cal.App.4th 836, 846 (2007) ("the failure to reach a meeting of the minds on all material points prevents the formation of a [settlement] contract"); Barnhart Decl., ¶ 2, Exh. 1, pg. 21. | |

---

[2] The ARCO settlement to which Shell's counsel was referring was plainly the second settlement that released OCDA's claims against Thrifty Oil in the *People v. ARCO* litigation. As noted above, *People v. ARCO* produced two separate settlements. The first settlement occurred in December, 2002, between OCDA and Atlantic Richfield Company, BP Amoco Corporation, and ARCO Chemical Company. Cox Decl., Exh. A. Mr. Cox's Declaration refers to this settlement as "The BP Final Judgment" (*id.*), upon which BP's *res judicata* motion is based The BP Final Judgment's release language was very different from OCDA's January, 2005, settlement with Shell. The January 2005 Shell settlement's language is almost <u>identical</u> to that in the second ARCO (Thrifty) settlement, which is dated February 11, 2003. Cox Decl., Exh. H; Barnhart Decl., Exh. 1. Shell cannot plausibly represent that its counsel was referring to any settlement other than this February, 2003, settlement with Thrifty, as opposed to the December 2002 BP settlement.

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| | Having persuaded the Superior Court to refuse the District's request to file a motion to intervene, and having persuaded the Superior Court to reduce the Shell settlement to a judgment without giving the District an opportunity to be heard, Shell has waived any right to, and is judicially estopped from, contradicting Shell's implicit representation to the Superior Court that the settlement did not have "anything to do with precluding the Water District from pursuing their case in Federal Court." Barnhart Decl., ¶ 2, Exh. 1, pg. 21 and 23; *Aldelphia Recovery Trust v. Goldman, Sachs & Co.,* 748 F.3d 110, 116 (2d Cir. 2012); *Dodd v. Hood River County,* 59 F.3d 852, 862 (1994); *Consumer Advocacy Group v. ExxonMobil Corp.,* 168 Cal.App.4th 675, 690 (2008). <br><br> *See also* Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42. | |
| 22.  OCWD filed its initial complaint in this action in 2003. OCWD alleges that it and the "water users it represents" were injured due to MTBE and/or TBA contamination and/or threat of contamination in water supply wells and OCWD's groundwater resources, allegedly caused by ARCO, BP, the Shell Defendants and others, and seeks to "protect the groundwater resources of northern Orange County from oil industry pollution." (Condron Decl. Ex. B (OCWD 3d Am. Compl. ¶¶ 1, 5, 79).) | 22.   Undisputed that the cited document contains the quoted words. Disputed that the District's cause of action is identical to OCDA's, or that OCDA and the District ever have been in privity for the purposes of the District's cause of action here. <br><br> While the District's ultimate goal is to benefit its ratepayers and the water-drinking public, the specific harms that its causes of action target are injuries to the District's own property interests, and costs that the District has incurred. *See Selma Pressure Treating Co. v. Osmose Wood Preserving Co.,* 221 Cal.App.3d 1601, 1616 | 22.  **Fails to raise triable facts relevant to Defendants' Motion. OCWD's dispute is illusory and immaterial.** <br><br> OCWD's statement does not actually dispute Undisputed Material Fact No. 22, OCWD admits that Defendants accurately recite the contents of the cited documents, and its effort to characterize its evidence is not inconsistent with the stated fact. <br><br> OCWD fails to raise triable facts by failing to make "an affirmative showing on all matters placed in issue." |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| | (1990); Water Code Appen. § 40-8; Barnhart Decl., Exh. 6, ¶¶ 4 ("The District has suffered injury in fact, including expending funds necessary to investigate, clean up, abate, and/or remediate the MTBE and/or TBA contamination caused by Defendants."), 102-108 (cost-recovery cause of action under Orange County Water District Act), and pp. 35-36 (Prayer seeking compensation and an injunction requiring abatement of "MTBE and/or TBA which is contaminating and threatening the District's property"). In its Third Amended Complaint, the District alleges: "The District owns land overlying groundwater at various locations within the District and has water rights therein." Condron Decl., Exh. B, ¶ 5. The District further alleges: "The District owns, holds and/or represents property rights and interests damaged by the nuisance. The District's injury is separate and distinct from that of the public." Condron Decl., Exh. B, ¶ 30; *see also State of California v. Sup. Ct.,* 78 Cal.App.4th 1019, 1025 (2000) ("a water right itself has been considered an interest in real property."); *see also* Cal. Civ. Code § 3493 ("A private person may maintain an action for a public nuisance, if it is specially injurious to himself, but not otherwise."); *see also* In Re MTBE, 2005 WL 150893, *5 (District has sufficient interest in groundwater to assert a nuisance claim). The District further' alleged that it "has been damaged within the past three years and is entitled to the compensatory and exemplary damages alleged herein, or to such other appropriate relief the District | *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).<br><br>The majority of OCWD's response is comprised of argument inappropriate for inclusion in a 56.1 statement.<br><br>The existence of privity for *res judicata* is a question of law. *People v. Dawkins*, 241 Cal. Rptr. 456, 458 (1987); *McAlister v. Essex Prop. Trust*, 504 F. Supp. 2d 903, 912 (C.D. Cal. 2007). For *res judicata* purposes, the phrase "cause of action" means "the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced." *Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 814 (2010). Application of *res judicata* does not turn on whether both cases involve the same common law or statutory causes of action.<br><br>OCWD's Third Amended Complaint is replete with allegations that OCWD is seeking to represent others within the district, and to conduct investigations and remediate groundwater irrespective of any usufructuary right. *See, e.g.,* Condron Decl. Ex. B (OCWD 3d Am. Compl. ¶¶ 1,3, 5, 88). The groundwater and MTBE that was at issue in the OCDA litigations is the same *public* water resource that is at issue here. |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
|  | may elect at trial, including, but not limited to, equitable relief in the form of an order requiring Defendants to abate the nuisance properly as to the District." Barnhart Decl., Exh. 6, ¶ 100; see also Barnhart Decl., Exh. 6, pp. 35-36 (Prayer seeking compensation and an injunction requiring abatement of "MTBE and/or TBA which is contaminating and threatening the District's property"); *see also State of California v. Sup. Ct.*, 78 Cal.App.4th 1019, 1025 (2000) ("a water right itself has been considered an interest in real property.")<br><br>California's Court of Appeal has specifically held that the District here can bring a Property Owner Action for damages and an order requiring abatement of groundwater contamination, and that such an action by the District is "'qualitatively different' from a Public Officer Action. *Orange County Water Dist. v. Arnold Engineering Co.*, 196 Cal.App.4th 1110, 1120, 1125-1126 (2011).<br><br>See also Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42. | In addition, this Court has recognized that OCWD's purported usufructuary right is "subordinate to the State (acting pursuant to the public trust), any overlying right holders… and the purveyors that actually pump the water out of the ground and provide it to customers" *In re MTBE*, 824 F.Supp.2d 524, 546-547 (S.D.N.Y. 2011).<br><br>OCWD's attempt to incorporate by reference its response to Undisputed Material Fact Nos. 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, and 42 does not provide any triable facts to support its dispute of Defendants Undisputed Material Fact No. 22. |
| 23.  The alleged factual underpinnings of the OCDA actions against BP and Shell, and of this lawsuit, and the bases for recovery asserted in all three actions, are virtually identical.[3] | 23.   Disputed. The facts are not the same. The bases for recovery are not the same. The causes of action are not the same. The interests are not the same. The lawsuits are not the same. | 23.  **Fails to raise triable facts relevant to Defendants' Motion.**<br><br>OCWD's statement does not actually dispute the fact and admits that Defendants |

---

[3] The chart below was included in BP and Shell Defendants' Local Rule 56.1 Statement in Support of Motion for Summary Judgment Based on *Res Judicata*, but was omitted from OCWD's Response to the 56.1 Statement.  Defendants have moved it to the footnote for ease of reading the 56.1 Reply Statement.

Footnote continued on next page

Footnote continued from previous page

| BP and Shell DAFAC Allegations | OCWD Allegations (3d Am. Compl.) |
|---|---|
| "ARCO added the chemical Methyl Tertiary-Butyl Ether (MTBE) to its gasoline at its West Coast refineries prior to sale to the general public."  BP DAFAC, ¶ 13<br>"SHELL…added MTBE to its gasoline at its West Coast refineries prior to sale to the general public including the general public in Orange County."  Shell DAFAC¶ 13 | "The defendants in this action are the …refiners…., marketers, distributors, suppliers, and retailers of…gasoline containing MTBE that contaminates and pollutes groundwater resources managed by [OCWD]."  ¶ 2<br>Defendants "owned and operated gasoline refineries in Southern California that have provided... gasoline containing MTBE and/or TBA to areas affecting the District's groundwater supplies."  ¶¶ 10, 17-19 |
| "Of the ninety (90) or more ARCO owned and previously owned sites in Orange County, approximately sixty (60) have groundwater contamination including, but not limited to, MTBE and/or BTEX contamination, caused by the prior or continuing unauthorized release, or releases, of gasoline to the environment from and surrounding underground storage tank systems." BP DAFAC ¶ 104<br>"Plaintiff is informed…that there have been numerous unauthorized releases of gasoline to the soil and groundwater of Orange County from underground storage tanks currently or previously owned and/or operated and/or supplied by Shell…that have resulted in the contamination of County soil and groundwater with…MTBE [and] have knowingly allowed the continued migration of such releases through and into soil, groundwater and sources or potential sources of drinking water of Orange County and the State of California." Shell DAFAC ¶ 12<br>"Approximately 81…sites currently have soil and/or groundwater contamination caused by the unauthorized release or releases of gasoline and/or MTBE to the environment from and surrounding underground storage tank systems owned, operated and/or supplied by SHELL…." Shell DAFAC ¶ 21 | "There are over four hundred confirmed MTBE release sites in the District contaminating and threatening the water supplies of overlying owners and other water users within the District. The District and the water users it represents have suffered injury in fact as a result of MTBE and/or TBA contamination and threat of contamination in water supply wells in the District's groundwater resources."  ¶ 5<br>Defendants "negligently…owned, operated, [and/or] controlled gasoline delivery systems…from which MTBE and/or TBA is contaminating or polluting groundwaters within the District…."  ¶ 34 |

Footnote continued on next page

Footnote continued from previous page

| | |
|---|---|
| "The dilatory and ineffective response of ARCO… has resulted in the spread and migration of MTBE contamination away from the original source zone (underneath and around underground storage tank systems) into deeper soil and groundwater, decreasing the feasibility and increasing the cost of cleanup and placing drinking water supplies at risk."  BP DAFAC¶ 110<br>"The dilatory and ineffective response of SHELL…in addressing MTBE contamination plumes has resulted in the spread and migration of MTBE contamination away from the original source zone…into deeper soil and groundwater, decreasing the feasibility and increasing the cost of cleanup and placing drinking water supplies at risk."  Shell DAFAC ¶ 23 | Defendants "negligently and/or intentionally failed and refused to take appropriate remediation action to abate MTBE and/or TBA plumes formed after MTBE and/or TBA escaped from their gasoline delivery systems…." ¶ 34<br>"If MTBE and/or TBA are released into the environment in sufficient quantities, MTBE and/or TBA have the capacity to migrate through soil, the groundwater, penetrate deeper within the aquifer, and cause persistent contamination…." ¶ 49<br>"MTBE and TBA have over time migrated in the subsurface from the dispersed release points at or near the surface at retail gasoline facilities within or near the District's boundaries, causing pollution, contamination and substantial damage to the District's groundwater resources…."  ¶63<br>Defendants "failed to… clean up and abate MTBE and/or TBA spills as thoroughly and as soon as reasonably possible…."  ¶ 79 |
| "Defendants at all times relevant herein were in possession of information regarding extensive and widespread releases of gasoline to the environment from underground storage tank systems on a nationwide basis even when such systems were in apparent compliance with minimum structural and operational requirements. ARCO [and] BP… knew or should have known that compliance with minimum state and federal requirements pertaining to the construction and operation of underground storage tank systems could not be relied upon to prevent, minimize or detect widespread leaks from underground storage tank systems."  BP DAFAC ¶ 113<br>"SHELL…w[as] in possession of information regarding extensive and widespread release of gasoline to the environment from underground storage tank systems on a nationwide basis even when such systems were in apparent compliance with minimum structural and operational requirements.  SHELL…knew or should have known that compliance with minimum former state and federal requirements pertaining to the construction and operation of underground storage tank systems could not be relied upon to prevent, minimize or detect widespread leaks from underground storage tank systems."  Shell DAFAC¶ 26 | Defendants "created, participated in, and/or facilitated the flow of MTBE, TBA and/or gasoline containing one or more such compounds into gasoline distribution, storage and dispensing systems that they knew could not safely contain such products.  The widespread problems of leaking gasoline delivery systems were well known to the defendants prior to the introduction of MTBE and TBA."  ¶ 61 |

Footnote continued on next page

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| | *See also* Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42; *see also* 65.1 ¶¶ 43-60. | accurately recite the contents of the cited documents.  Moreover, OCWD does not identify any evidence to dispute the stated fact.<br><br>The alleged factual underpinnings of the OCDA actions against BP and Shell are virtually identical to the facts alleged by OCWD in this lawsuit.  *See* footnote 3.<br><br>The existence of privity for *res judicata* is a question of law.  *People v. Dawkins*, 241 Cal. Rptr. 456, 458 (1987); *McAlister v. Essex Prop. Trust*, 504 F. Supp. 2d 903, 912 (C.D. Cal. 2007).<br><br>OCWD's attempt to |

---

Footnote continued from previous page

| | |
|---|---|
| "Defendants were in a unique position to know of the special characteristics of MTBE and the risks it poses to groundwater including, but not limited to, insolubility, resistance to biodegradation, migration potential, low odor and taste threshold, and the difficulties associated with its removal from groundwater."  BP DAFAC ¶ 61. "As MTBE contamination migrates away from the source and capture zones into deeper aquifers, it becomes far more difficult if not impossible to abate…. Abatement measures at this stage are extremely difficult, costly and time consuming."  Shell DAFAC ¶ 29 | "If MTBE and/or TBA are released into the environment in sufficient quantities, MTBE and/or TBA have the capacity to migrate through the soil, the groundwater, penetrate deeper within the aquifer, and cause persistent contamination that can threaten the potability of drinking water wells."  ¶ 49 "MTBE and/or TBA spread farther and faster than other components of gasoline, resist biodegradation, and are difficult and costly to remove from groundwater and drinking water supplies."  ¶ 50 |
| "The unauthorized release of gasoline and/or MTBE to groundwater, and to soil where such releases are likely to reach groundwater constitutes a nuisance." BP DAFAC ¶ 117 "The unauthorized release of gasoline and/or MTBE to groundwater and to soil where such releases are likely to reach groundwater, constitutes a nuisance."  Shell DAFAC ¶ 29 | "The contamination and pollution of such groundwaters with gasoline and MTBE and/or TBA is a public nuisance…."  ¶ 94 |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| | | incorporate by reference its response to Undisputed Material Fact Nos. 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, and 42, and its additional facts 43-60 does not provide any triable facts to support its dispute of Defendants Undisputed Material Fact No. 23. |
| 24.  Because of the alleged injuries to groundwater in Orange County, OCWD says that it seeks to recover "all necessary funds to investigate, monitor, prevent, abate, or contain any contamination of, or pollution to, groundwaters within the District from MTBE and TBA; to protect the quality of the common water supplies of the District; to prevent pollution or contamination of that water supply; and to assure that the responsible parties - and not the District nor the public - bear the expense." (Condron Decl. Ex. B (OCWD 3d Am. Compl. ¶ 3).) | 24.   Undisputed that cited document contains the quoted text.<br><br>    Disputed that the District's cause of action is identical to OCDA's, or that OCDA and the District ever have been in privity for the purposes of the District's cause of action here.  *See* Plaintiff's Response to 56.1 ¶¶ 22; Disputed that cited documents are relevant or support defendants' *res judicata* argument, and incorporate by reference Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-21, 24-31, 33, 34, 36, 40, 42; *see also* 65.1 ¶¶ 43-60. | 24.  **Fails to raise triable facts relevant to Defendants' Motion.**<br><br>OCWD does not actually dispute Defendants' Undisputed Material Fact No. 24 and admits that Defendants accurately recite the contents of the cited documents.  OCWD does not identify any evidence to dispute the stated fact or support its dispute and thus fails to make "an affirmative showing on all matters placed in issue."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).<br><br>The existence of privity for *res judicata* is a question of law.  *People v. Dawkins*, 241 Cal. Rptr. 456, 458 (1987); *McAlister v. Essex Prop. Trust*, 504 F. Supp. 2d 903, 912 (C.D. Cal. 2007).<br><br>For *res judicata* purposes, the phrase "cause of action" means "the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced."  *Boeken v.* |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| | | *Philip Morris USA, Inc.*, 48 Cal. 4th 788, 814 (2010). Application of *res judicata* does not turn on whether both cases involve the same common law or statutory causes of action.<br><br>OCWD's attempt to incorporate by reference its response to Undisputed Material Fact Nos. 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, and 42, and its additional facts 43-60 does not provide any triable facts to support its dispute of Defendants Undisputed Material Fact No. 24. |
| 25.  OCWD seeks "an order declaring that defendants are liable for the full cost of all remedial and other actions necessary to abate and remove MTBE and/or TBA which is contaminating and threatening the District's property, and for such orders as may be necessary to provide full relief to the plaintiff." (Condron Decl. Ex. B (OCWD 3d Am. Compl., Prayer ¶ 3).) | 25.   Undisputed that cited document contains the quoted text.<br><br>   Disputed that the District's cause of action is identical to OCDA's, or that OCDA and the District ever have been in privity for the purposes of the District's cause of action here. *See* Plaintiff's Response to 56.1 ¶¶ 22; Disputed that cited documents are relevant or support defendants' *res judicata* argument, and incorporate by reference Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-21, 24-31, 33, 34, 36, 40, 42; *see also* 65.1 ¶¶ 43-60. | 25.  **Fails to raise triable facts relevant to Defendants' Motion.**<br><br>OCWD does not actually dispute Defendants' Undisputed Material Fact No. 25 and admits that Defendants accurately recite the contents of the cited documents. OCWD does not identify any evidence to dispute the stated fact or support its dispute, and thus fails to make "an affirmative showing on all matters placed in issue." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).<br><br>The existence of privity for *res judicata* is a question of law.  *People v. Dawkins*, 241 Cal. Rptr. 456, 458 (1987); *McAlister v. Essex Prop. Trust*, 504 F. Supp. 2d 903, 912 (C.D. Cal. 2007). |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| | | For *res judicata* purposes, the phrase "cause of action" means "the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced." *Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 814 (2010). Application of *res judicata* does not turn on whether both cases involve the same common law or statutory causes of action.<br><br>OCWD's attempt to incorporate by reference its response to Undisputed Material Fact Nos. 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, and 42, and its additional facts 43-60 does not provide any triable facts to support its dispute of Defendants Undisputed Material Fact No. 25. |
| 26.  On January 5, 2005, the Orange County Superior Court entered a Final Judgment Pursuant to Stipulation and Order Thereon (the "Shell Final Judgment"), which represented a settlement, between the People of the State of California and the Shell Defendants, of the claims asserted in *People v. Shell.* (Condron Decl. Ex. C (Shell Final Judgment).) | 26.    Undisputed that Exh. C to the Condron Decl. purports to be a final judgment representing a settlement of OCDA's action against Defendants.<br><br>    Disputed that the allegedly settled action was identical to the District's here, or that OCDA and the District ever have been in privity for the purposes of the District's cause of action here. *See* Plaintiff's Response to 56.1 ¶¶ 22; Disputed that cited documents are relevant or support defendants' *res judicata* argument, and incorporate by reference Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-21, 24-31, 33, 34, 36, 40, 42; *see also* 65.1 ¶¶ 43-60. | 26.  **OCWD's dispute is illusory and immaterial.**<br><br>OCWD's statement does not actually dispute the fact and admits that Defendants accurately recite the contents of the cited documents.  The existence of privity for *res judicata* is a question of law.  *People v. Dawkins*, 241 Cal. Rptr. 456, 458 (1987); *McAlister v. Essex Prop. Trust*, 504 F. Supp. 2d 903, 912 (C.D. Cal. 2007). |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| 27.  The terms of the Shell Final Judgment were substantially similar to those of the BP Final Judgment. Pursuant to the terms of the Shell Final Judgment, the Shell Defendants agreed to pay $3.5 million to the OCDA's "Prosecution Trust Fund." (Condron Decl. Ex. C (Shell Final Judgment ¶¶ 7.0-7.4).) | 27.    Disputed. As Shell told the Judge at the time that the 2005 settlement was reduced to a judgment, the terms of the Shell Final Judgment are "substantially similar" to those of the February 2003 Thrifty judgment, not the 2002 ARCO judgment:<br><br>I think [OCDA] will confirm that the structure of this settlement was presented to Shell on a non-negotiable basis. In other words, the format I was told from day one was going to be the format of the ARCO settlement.[4] And indeed the entire injunctive provision, the plume delineation program, all of that is identical to the structure of the ARCO settlement, which again has been of public record for, I believe, more than two years.<br><br>Barnhart Decl., ¶ 2, Exh. 1, pg. 23.<br><br>The Thrifty settlement to which Shell's counsel was referring expressly states that it does not resolve, settle, or preclude the District's cause of action here:<br><br>**This Final Judgment shall not serve to bar,** estop, alter, supercede, or interfere with, any investigation, action, order, request, demand or directive of any regulatory agency, person or entity | 27.  **OCWD's dispute is illusory and immaterial.**<br><br>OCWD's statement does not actually dispute the fact and admits that Defendants accurately recite the contents of the cited documents.  The existence of privity for *res judicata* is a question of law.  *People v. Dawkins*, 241 Cal. Rptr. 456, 458 (1987); *McAlister v. Essex Prop. Trust*, 504 F. Supp. 2d 903, 912 (C.D. Cal. 2007). |

[4] As noted in footnote 2 above, the ARCO settlement to which Shell's counsel was referring must have been the settlement that released OCDA's claims against Thrifty Oil, rather than the December 2002 BP settlement in the *People v. ARCO* litigation.

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| | having jurisdiction over . . . the groundwater or production wells within the County of Orange, including **any** investigation, **action,** order, request, demand, or directive **of . . . the Orange County Water District** pursuant to any of the laws and regulations pertaining to underground storage tanks or water. . . . **Plaintiff does not include,** and the Orange County District Attorney does not represent, **any water district . . .** or other entity with an interest in or pertaining to groundwater or production wells located within the County of Orange.<br><br>Cox Decl., Exh. H, pg. 15.<br><br>    The Shell settlement modified these first few words to read: "In entering into this Final Judgment, the parties understand that Plaintiff does not intend for this Final Judgment to serve to legally bar, estop . . ." Condron Decl., Exh. C, ¶ 9.6. As noted above, OCDA and the Superior Court concluded — and Shell did not deny — that this modification confirmed what was already the case - that the agreement did not bar the District's claims. Barnhart Decl., ¶ 2, Exh. 1, pp. 14, 21, 23, 27.<br>    Undisputed that the cited document indicates that "the Shell Defendants agreed to pay $3.5 million to the OCDA's "Prosecution Trust Fund." Disputed that defendants have provided any evidence that this amount actually was paid.<br>    *See also* Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42; *see also* 65.1 ¶¶ 43-60. | |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| 28.  Pursuant to the terms of the Shell Final Judgment, the Shell Defendants agreed to pay up to $10.5 million to fund a "Plume Delineation Program," under which an "independent third party environmental consultant" selected by the OCDA would evaluate the investigation and corrective action conducted at the service stations covered by the Shell Final Judgment and identify what further action should be taken to remediate the MTBE and gasoline releases found there. (Condron Decl. Ex. C (Shell Final Judgment ¶¶ 3.0-3.10; ¶ 3.5; ¶ 3.3(b) (consultant authorized to identify additional actions required if needed at the sites in question, "including, but not limited to," the "drilling and installation of new wells and/or borings to further analyze and delineate the PLUME at the Subject Sites,... which may potentially include delineation in both the lateral and vertical direction that approximates the 5 ppb MTBE contour line in groundwater.").)) | 28.   Undisputed that the cited document contains those words.<br><br>    Disputed that Defendants have provided any evidence that any Defendant spent any money to fund a "Plume Delineation Program," or for any other settlement-related purpose. See Defendants' Supporting Declarations. Defendants evidence is that — other than preparing "plume delineation reports" — Shell did not take any additional or different remedial actions as a result of Shell's settlement with OCDA. See Declaration of Karen A. Lyons, ¶ 4 ("The Shell Defendants received limited comments on two sites from [the environmental consultant] that did not require the Shell Defendants to take actions."). Defendants evidence does not show even that they submitted those reports. Defendants do not submit or describe a single report or communication to or from the environmental consultant. They do not provide a specific description of what those alleged reports contained. Nor do Defendants assert or provide evidence that the Programs actually benefitted the District (or anyone else).<br><br>    See also Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42; see also 56.1 ¶¶ 43-60. | 28.  **OCWD's dispute is illusory and immaterial.**<br><br>OCWD's statement does not actually dispute the fact and admits that Defendants accurately recite the contents of the cited documents. The Lyons Declaration states that Shell fully complied with the terms of the settlement and consent judgment with the OCDA.  See generally Lyons Decl.  OCWD presents no evidence to the contrary.  See also Condron Decl. Exhs. D and E.  Nor can OCWD challenge the scope or validity of the Final Judgment here.  See 28 U.S.C. § 1738; Mitchell v. Nat'l Broad. Co., 553 F.2d 265, 273 (2d Cir. 1977) ("Federal courts do not sit to review the determinations of state courts"). |
| 29.  Pursuant to the terms of the Shell Final Judgment, the Shell Defendants became subject to significant injunctive relief which remained in effect for five years following entry of the Final Judgment. (Condron Decl, Ex. C (Shell Final Judgment ¶¶ 5.0-5.8).) | 29.   Disputed.<br><br>    The cited documents to not contain the word "significant." The word "significant" is simply Defendants' characterization unsupported by any citation to evidence. The injunctive relief only required Defendants to do | 29.  **OCWD's dispute is illusory and immaterial.**<br><br>OCWD's statement does not actually dispute the fact and admits that Defendants accurately recite the contents of the cited documents.  The Lyons |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| | what they already were legally required to do — to begin the process of remediating their plumes, to comply with agency directives, and to refrain from continuing to break the law. *See* Condron Decl., Exh. C.<br><br>Defendants do not carry their burden to prove that the settlement's "injunctive relief" was "significant." "Significant" is an extremely ambiguous word. But no one would consider injunctive relief to be "significant" where, as here, it does not require a defendant to do anything that they should already have done at the time that the settlements were entered.<br><br>Defendants do not carry their burden to prove that any Defendant spent any money to fund a "Plume Delineation Program," or for any other settlement-related purpose. See Defendants' Supporting Declarations.<br><br>According to the Declaration of Karen A. Lyons that Defendants offered in support of their Motion **("Lyons Decl.")**, **Shell** did not spend <u>any</u> additional money for clean up as a result of its settlement with OCDA. *See* Declaration of Karen A. Lyons, ¶ 4 ("The Shell Defendants received limited comments on two Sites from [the environmental consultant] **that did not require the Shell Defendants to take actions.").**<br><br>The settlement's "injunctive relief" was not "significant" enough to cause Defendants to solve the MTBE-contamination problem that Defendants created. | Declaration states that Shell fully complied with the terms of the settlement and consent judgment with the OCDA. *See generally* Lyons Decl. OCWD presents no evidence to the contrary. *See also* Condron Decl. Exhs. D and E. Nor can OCWD challenge the scope or validity of the Final Judgment here. *See* 28 U.S.C. § 1738; *Mitchell v. Nat'l Broad. Co.*, 553 F.2d 265, 273 (2d Cir. 1977) ("Federal courts do not sit to review the determinations of state courts"). |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| | Shell was not required to clean up its MTBE. Shell's plumes remain undelineated. Shell's contamination remains unremediated. *See* Declaration of Stephen Wheatcraft, submitted with the District's Opposition to Defendants' Omnibus Motion for Summary Judgment.<br><br>*See also* Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42; *see also* 56.1 ¶¶ 43-60. | |
| 30.  The OCDA described this portion of the relief as a "blank check" for cleanup. (Condron Decl. Ex, D (OCDA 1/6/05 Press Release) (available at www.orangecountyda.com); Condron Decl. Ex. E (2007 Biennial Report of the Office of the Orange County District Attorney (the 'Biennial Report"), p. 25).) | 30.   Undisputed that the cited document contains those words.<br><br>Disputed that the "Plume Delineation Program" was a "blank check" for cleanup. *See* Plaintiff's Response to 56.1 ¶ 29; Disputed that cited documents are relevant or support defendants' *res judicata* argument, and incorporate by reference Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-28, 30, 31, 33, 34, 36, 40, 42; *see also* 56.1 ¶¶43-60. | 30.  **OCWD's dispute is illusory and immaterial.**<br><br> OCWD's statement does not actually dispute the fact and admits that Defendants accurately recite the contents of the cited documents.  *See also* Condron Decl. Exhs. D and E. Nor can OCWD challenge the scope or validity of the Final Judgment here.  *See* 28 U.S.C. § 1738; *Mitchell v. Nat'l Broad. Co.*, 553 F.2d 265, 273 (2d Cir. 1977) ("Federal courts do not sit to review the determinations of state courts"). |
| 31.  The Shell Final Judgment specified that it was a "release from any known or unknown, past or present claims, violations, or causes of action that were or could have been asserted in the First Amended Complaint against the [Shell Defendants] with regard to: … underground storage tank systems, the unauthorized release of petroleum product, additive or constituent of such petroleum product (including but not limited to TPH, BTEX, MTBE and other fuel | 31.   Undisputed that Shell's settlement with OCDA was limited to claims that OCDA could have brought in that action — which did not include the District's causes of action here. *See Safer v. Sup. Ct.*, 15 Ca1.3d 230, 236 (1975); *see also* Cal. Code Civ. Proc. § 731; *see also* Barnhart Decl., ¶¶ 3-6, Exh. 2-5; Disputed that cited documents are relevant or support defendants' *res judicata* argument, and incorporate by reference Plaintiff's Responses to 56.1¶¶ 1, 3, 8, 10, 13, 15-17, | 31.  **OCWD's dispute is illusory and immaterial.**<br><br>OCWD's statement does not actually dispute the fact and admits that Defendants accurately recite the contents of the cited documents.  For *res judicata* purposes, the phrase "cause of action" means "the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| oxygenates), the use of MTBE and/or other fuel oxygenates in gasoline...." (Condron Decl. Ex. C (Shell Final Judgment § 9.1).) | 20-22, 24-30, 33, 34, 36, 40, 42; *see also* 56.1 ¶¶ 43-60. | statutory) advanced." *Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 814 (2010). The Lyons Declaration states that Shell fully complied with the terms of the settlement and consent judgment with the OCDA. *See generally* Lyons Decl. OCWD presents no evidence to the contrary. *See also* Condron Decl. Exhs. D and E. Nor can OCWD challenge the scope or validity of the Final Judgment here. *See* 28 U.S.C. § 1738; *Mitchell v. Nat'l Broad. Co.*, 553 F.2d 265, 273 (2d Cir. 1977) ("Federal courts do not sit to review the determinations of state courts"). |
| 32. The Final Judgment was "a final and binding judgment, release, resolution and settlement of all claims, violations, or causes of action that were alleged in the First Amended Complaint against Settling Defendants, or could have been asserted based on the facts alleged in the First Amended Complaint...." (Condron Decl. Ex. C (Shell Final Judgment § 9.0).) | 32. See Response 31. | 32. **See reply to No. 31.** |
| 33. The Shell Final Judgment contained a provision stating that "the parties understand that the Plaintiff does not intend for [the Shell] Final Judgment to serve to legally bar, estop, release, alter or supersede" actions by others, including OCWD. However, the Shell Defendants did not agree to carve out or exempt any such actions from the broad release provided to the Shell Defendants by the Shell Final Judgment and there is no such | 33. Disputed.<br><br>In California, there cannot be a valid settlement contract "'until there has been a meeting of the minds on *all* material points.'" *American Employers Group v. EDD*, 154 Cal.App.4th 836, 846 (2007) (emphasis original). If Shell did not agree with OCDA that the settlement did not have "anything to do with precluding the Water District from pursuing their case in Federal Court," then there | 33. **OCWD's dispute is illusory and immaterial.**<br><br>OCWD's statement does not actually dispute the fact and admits that Defendants accurately recite the contents of the cited documents. OCWD mischaracterizes Shell's opposition to its attempt to intervene in the OCDA lawsuit. Shell did not oppose OCWD's intervention because it |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| provision in the Final Judgment or elsewhere. (Condron Decl. Ex. C (Shell Final Judgment ¶ 9.6).) | never was any settlement for the Superior Court to approve. *American Employers Group v. EDD*, 154 Cal.App.4th 836, 846 (2007) ("the failure to reach a meeting of the minds on all material points prevents the formation of a [settlement] contract"); Barnhart Decl., ¶ 2, Exh. 1, pg. 21.<br><br>In addition, Shell's counsel impliedly represented to the Orange County Superior Court that Shell did not think that the Shell settlement barred the District's cause of action, because Shell's counsel told the Court that it was his understanding that the Shell settlement was "identical to the structure of the second ARCO settlement (which was the settlement that had terminated the *People v. ARCO* case approximately two years before the Shell settlement):<br><br>I think [OCDA] will confirm that the structure of this settlement was presented to Shell on a non-negotiable basis. In other words, the format I was told from day one was going to be the format of the ARCO settlement.[5] And indeed the entire injunctive provision, the plume delineation program, all of that is identical to the structure of the ARCO settlement, which again has been of public record for, I believe, more than two years. Barnhart Decl., ¶ 2, Exh. 1, pg. 23. | consented to a later action by OCWD, but rather because, despite knowing of the OCDA action for years, OCWD waited until the last minute to seek intervention: "I submit, Your Honor, that this [attempt to intervene] is untimely and should be rejected out of hand." (Condron Reply Decl. Exh. B, Hearing Trans. at 12). Shell's counsel's reference to this case was solely to recognize the legal principle, which was also recognized by the Orange County Superior Court, that it is for this Court to determine the preclusive effect of the OCDA Consent Judgment. (Condron Reply Decl. Exh. B, Hearing Trans. at 13-14, 28). Moreover, an unsuccessful attempt to intervene in a prior action does not negate the *res judicata* effect of the judgment. *See COAST*, 60 Cal. App. 4th at 1073-74 (*res judicata* barred citizen's group action even where it had unsuccessfully sought to intervene in prior litigation, and court entering prior judgment had told citizen's group it retained a right to pursue separate litigation). What the OCDA "intended" regarding the effect of the Final Judgments on future claims is of no import and was not material to the |

---

[5] As noted in footnote 2, above, Shell's counsel must have been referring to the February 11, 2003 settlement which settled OCDA's claims against Thrifty Oil Company. Cox Decl., Exh. H; Barnhart Decl., Exh. 1.

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| | The Thrifty settlement to which Shell's counsel was referring expressly states that it does <u>not</u> resolve, settle, or preclude the District's cause of action here:<br><br>**This Final Judgment shall not serve to bar,** estop, alter, supercede, or interfere with, any investigation, action, order, request, demand or directive of any regulatory agency, person or entity having jurisdiction over . . . the groundwater or production wells within the County of Orange, including **any** investigation, **action,** order, request, demand, or directive **of . . . the Orange County Water District** pursuant to any of the laws and regulations pertaining to underground storage tanks or water. . . . **Plaintiff does not include,** and the Orange County District Attorney does not represent, **any water district . . .** or other entity with an interest in or pertaining to groundwater or production wells located within the County of Orange.<br><br>Cox Decl., Exh. H, pg. 15.<br><br>The Shell settlement modified these first few words to read: "In entering into this Final Judgment, the parties understand that Plaintiff does not intend for this Final Judgment to serve to legally bar, estop . . ." Condron Decl., Exh. C, ¶9.6. As noted above, OCDA and the Superior Court concluded — and Shell did not deny — that this modification confirmed what was already the case - that the | settlement; the law dictates that these claims have already been resolved and cannot be brought again. The parties did not agree, expressly or otherwise, to except OCWD's claims. When the parties agreed to remove claims from scope of the Final Judgment, they did so explicitly. *Compare* Condron Decl. Exh. C, ¶ 9.1 (providing that the "Final Judgment does not release any claims, violations, or causes of action against Defendant Texaco, Inc.") *with* ¶ 9.4 (stating the OCDA alone "does not intend" the Final Judgment to bar other claims). Nor did Shell's counsel express any views on the effect of the OCDA settlement on OCWD's claims; to the contrary, he expressed the view that this Court would need to make that determination, as the judge of the Orange County Superior Court agreed. (Condron Reply Decl. Exh. B, Hearing Trans. at 13-14, 28).<br><br>The existence of privity for *res judicata* is a question of law. *People v. Dawkins*, 241 Cal. Rptr. 456, 458 (1987); *McAlister v. Essex Prop. Trust*, 504 F. Supp. 2d 903, 912 (C.D. Cal. 2007). OCWD cannot challenge the scope or validity of the Final Judgment here. *See* 28 U.S.C. § 1738; *Mitchell v. Nat'l Broad. Co.*, 553 F.2d 265, 273 (2d Cir. 1977) ("Federal courts do not sit to review the |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| | agreement did not bar the District's claims . Barnhart Decl., ¶ 2, Exh. 1, pp. 14, 21, 23, 27.<br><br>    Having persuaded the Superior Court to refuse the District's request to file a motion to intervene, and having persuaded the Superior Court to reduce the Shell settlement to a judgment without giving the District an opportunity to be heard, Shell has waived any right to — and is judicially estopped from — contradicting Shell's implicit representation to the Superior Court that the settlement did not have "anything to do with precluding the Water District from pursuing their case in Federal Court." Barnhart Decl., ¶ 2, Exh. 1, pg. 21 and 23; *Aldelphia Recovery Trust v. Goldman, Sachs & Co.,* 748 F.3d 110, 116 (2d Cir. 2012); *Dodd v. Hood River County,* 59 F.3d 852, 862 (1994); *Consumer Advocacy Group v. ExxonMobil Corp.,* 168 Cal.App.4th 675, 690 (2008)<br><br>    *See also* Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42; *see also* 56.1 ¶¶ 43-60. | determinations of state courts"). |
| 34.  Prior to entry of the Shell Final Judgment, OCWD's counsel appeared in the Orange County Superior Court to oppose its entry, stating: "We have an action that is pending over MTBE contamination against the Shell defendants as well." (Condron Decl. Ex. F (Transcript at 4).) | 34.   Undisputed that Shell successfully opposed the District's request for leave to file a motion to intervene to protect its interests in Shell's litigation against OCDA, and specifically to protect the District's interests regarding Shell's settlement agreement with OCDA. Having successfully prevented the District from participating in Shell's action against and/or settlement with OCDA, Shell has waived any right to raise that settlement as a basis for *res* | **34.   OCWD's dispute is illusory and immaterial.**<br><br>OCWD's statement does not actually dispute the fact and admits that Defendants accurately recite the contents of the cited documents.   See response to No. 33. |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| | *judicata* here. Barnhart Decl., ¶ 2, Exh. 1, pg. 21 and 23; *Aldelphia Recovery Trust v. Goldman, Sachs & Co.,* 748 F.3d 110, 116 (2d Cir. 2012); *Dodd v. Hood River County,* 59 F.3d 852, 862 (1994); *Consumer Advocacy Group v. ExxonMobil Corp.,* 168 Cal.App.4th 675, 690 (2008).<br><br>*See also* Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42; *see also* 56.1 ¶¶ 43-60. | |
| 35.  OCWD's counsel requested time to brief a petition to intervene, which the Orange County Superior Court denied, stating, "I make no findings about the effect of this settlement on any other action. I'll let an appropriate court at an appropriate time make those determinations." (Condron Decl. Ex. F (Transcript at 28).) | 35.   Undisputed that the Superior Court was not asked to make any formal findings. The Court did say, however, that he did not see anything in the Shell settlement that would "prejudice . . . the parties in the other action:"<br><br>But I understand different causes of action are being sought in the matter removed to Federal Court. And I have not seen the — any — or heard any prejudice to the parties in the other action . . .<br><br>Barnhart Decl., ¶ 2, Exh. 1, pg. 27, see also pg. 14 ("The Court: . . . The Court has not heard a request for this Court to make any findings, whether advisory or otherwise.").<br><br>Shell's counsel did not dispute the Court's stated understanding.  Having successfully prevented the District from participating in Shell's action against and/or settlement with OCDA, Shell has waived any right to raise that settlement as a basis for *res judicata* here. Barnhart Decl., ¶ 2, Exh. 1, pg. 21 and 23; *Aldelphia Recovery Trust v. Goldman, Sachs & Co.,* 748 F.3d | 35.  **OCWD's dispute is illusory and immaterial.**<br><br>OCWD's statement does not actually dispute the fact and admits that Defendants accurately recite the contents of the cited documents.  OCWD mischaracterizes Shell's opposition to its attempt to intervene in the OCDA lawsuit.  Shell did not oppose OCWD's intervention because it consented to a later action by OCWD, but rather because, despite knowing of the OCDA action for years, OCWD waited until the last minute to seek intervention: "I submit, Your Honor, that this [attempt to intervene] is untimely and should be rejected out of hand."  (Condron Reply Decl. Exh. B, Hearing Trans. at 12).  Moreover, an unsuccessful attempt to intervene in a prior action does not negate the *res judicata* effect of the judgment.  *See COAST,* 60 Cal. App. 4th at 1073-74 (*res judicata* barred citizen's group action even |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| | 110, 116 (2d Cir. 2012); *Dodd v. Hood River County,* 59 F.3d 852, 862 (1994); *Consumer Advocacy Group v. ExxonMobil Corp.,* 168 Cal.App.4th 675, 690 (2008).<br><br>*See also* Plaintiff's Responses to 56.1 ¶¶ 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42; *see also* 56.1 ¶¶ 43-60. | where it had unsuccessfully sought to intervene in prior litigation, and court entering prior judgment had told citizen's group it retained a right to pursue separate litigation).  What the OCDA "intended" regarding the effect of the Final Judgments on future claims is of no import; the law dictates that these claims have already been resolved and cannot be brought again.  The parties did not agree, expressly or otherwise, to except OCWD's claims.  When the parties agreed to remove claims from scope of the Final Judgment, they did so explicitly.  *Compare* Condron Decl. Exh. C, ¶ 9.1 (providing that the "Final Judgment does not release any claims, violations, or causes of action against Defendant Texaco, Inc.") *with* ¶ 9.4 (stating the OCDA alone "does not intend" the Final Judgment to bar other claims).  Nor did Shell's counsel express any views on the effect of the OCDA settlement on OCWD's claims; to the contrary, he expressed the view that this Court would need to make that determination, as the judge of the Orange County Superior Court agreed. (Condron Reply Decl. Exh. B, Hearing Trans. at 13-14, 28).  The existence of privity for *res judicata* is a question of law.  *People v. Dawkins*, 241 Cal. Rptr. 456, 458 (1987); *McAlister v. Essex Prop. Trust*, 504 F. Supp. 2d 903, 912 (C.D. |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| | | Cal. 2007). OCWD cannot challenge the scope or validity of the Final Judgment here. *See* 28 U.S.C. § 1738; *Mitchell v. Nat'l Broad. Co.*, 553 F.2d 265, 273 (2d Cir. 1977) ("Federal courts do not sit to review the determinations of state courts"). |
| 36. The Shell Defendants have fulfilled their obligations under the Shell Final Judgment. (Declaration of Karen Lyons in Support of the Shell Defendants Motion for Partial Summary Judgment ("Lyons Decl.") ¶¶ 3-6.) | 36. Disputed.<br><br>Defendants evidence does not establish that they fulfilled their obligations under the settlements. The Declaration of Karen Lyons confirms that Shell did not perform **any** additional or different clean up actions as a result of Shell's settlement with OCDA. *See* Declaration of Karen A. Lyons,¶ 4 ("The Shell Defendants received limited comments on two sites from [the environmental consultant] that **did not require the Shell Defendants to take actions.").** While Lyons alleges that Shell prepared reports and communicated with the environmental consultant, she does not attach a single example of a report, or a single communication. Indeed, she does not even describe — except in the vaguest of terms — what those alleged reports and communications contained. Defendants do not provide any evidence that any Defendant spent any money to fund a "Plume Delineation Program," or for any other settlement-related purpose. See Defendants' Supporting Declarations.<br><br>Defendants' settlements did not give the District any right to participate in the settlements' vaguely defined "Plume Delineation" programs. See | 36. **OCWD's dispute is illusory and immaterial.**<br><br>OCWD's statement does not actually dispute the fact. The Lyons Declaration is competent evidence and OCWD does not dispute the admissibility of it on summary judgment. OCWD provides no evidence to contest the facts stated therein. |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| | Condron Decl., Exh. C. The settlements did not require anyone to report to the District about anything. The settlement did not give the District the power to enforce the settlements. And the settlements certainly did not solve the District's problem. Almost five years after Shell's settlement obligations expired, MTBE plumes that have migrated off-site from defendants' stations continue to migrate towards the District's water production wells. *See* Declaration of Stephen Wheatcraft, submitted with the District's Opposition to Defendants' Omnibus Motion for Summary Judgment.<br><br>*See also* Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42; *see also* 56.1 ¶¶ 43-60. | |
| 37.  The OCDA has never invoked the dispute resolution clause of the Shell Final Judgment, nor has it ever informed the Shell Defendants that they have not complied with the requirements of the Shell Final Judgment. (Lyons Decl. ¶ 6.) | 37.   Disputed.<br><br>Shell provides no evidence that OCDA never invoked the dispute resolution clause of the Shell Final Judgment or that OCDA never informed the Shell Defendants that they have not complied with the requirements of the Shell Final Judgment.<br><br>The District was not a party to the settlement agreements, and the settlement agreements do not permit the District to invoke those agreements' dispute-resolution procedures.<br><br>*See also* Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42. | 37.  **OCWD's dispute is illusory and immaterial.**<br><br>OCWD's statement does not actually dispute the fact.  The Lyons Declaration is competent evidence and OCWD does not dispute the admissibility of it on summary judgment. OCWD provides no evidence to contest the facts stated therein. |
| 38.  In April 2007, OCWD identified a list of 127 service stations giving rise to its claims, at which MTBE releases allegedly threatened | 38.   **Undisputed** that the BP defendants owned and/or operated <u>at least</u> 60 of the service stations at which the District has claims "as 'ARCO | 38.  **Disputed and fails to raise triable facts relevant to Defendants' Motion**.<br><br>OCWD does not identify |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| groundwater supplies. Of these listed stations, a total of 60 were owned and/or operated by the BP defendants as "ARCO branded" locations. (Cox Decl. ¶ 4.) | branded' locations." Disputed that there were <u>only</u> 60 such stations.<br><br>    Disputed that the District identified only "127 service stations giving rise to its claims." *See, e.g.,* Cox Decl., ¶ 4.<br><br>    Disputed that Defendants' Motion applies to any stations other than those which are at issue in this phase of this action.<br><br>    Disputed that cited documents are relevant or support defendants' *res judicata* argument, and incorporate by reference Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 2431, 33, 34, 36, 40, 42. | any evidence or information to materially dispute the stated fact. OCWD fails to raise triable facts by failing to make "an affirmative showing on all matters placed in issue." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).<br><br>In April 2007, OCWD identified a list of 213 service stations that it alleged had contributed MTBE to 127 "focus plumes" giving rise to its claims.  60 of those service stations were owned and/or operated by the BP defendants as "ARCO branded" locations. (Cox Decl. ¶ 4.)  The BP Final Judgment incorporated a comprehensive release which applied to an attached list of 183 ARCO service station sites, and included all of the "ARCO branded" locations at issue in this case. (Cox Decl. Ex. A [BP Final Judgment] ¶ 6.1, Exs. A & B (listing 183 ARCO Owned/Leased Sites); Cox Decl. Ex. C; *see also* UMF 17.)<br><br>OCWD's attempt to incorporate by reference its response to Undisputed Material Fact Nos. 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, and 42 does not provide any triable facts to support its dispute of Defendants Undisputed Material Fact No. 38. |
| 39.  In subsequent proceedings, OCWD further limited its claims by dismissing certain of the listed stations at which its | 39.    Disputed.<br><br>    The Cox Declaration does not say "dismiss." It says that the | **39.  Fails to raise triable facts relevant to Defendants' Motion.** |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| claims allegedly were not ripe. (Cox Decl. ¶ 4.) | District "dropped various stations." Defendants do not define "dismiss," and the Cox Declaration does not define "drop."<br><br>Disputed that cited documents are relevant or support defendants' *res judicata* argument, and incorporate by reference Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42. | OCWD quibbles with the terms "dismiss" and "drop," but does not dispute the basis of the stated fact that, OCWD removed from the case certain of the stations it initially identified because it identified claims at those sites as "non-ripe." Nor does OCWD provide any evidence or information to dispute Undisputed Material Fact No. 39, and thus fails to make "an affirmative showing on all matters placed in issue." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).<br><br>OCWD's attempt to incorporate by reference its response to Undisputed Material Fact Nos. 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, and 42 does not provide any triable facts to support its dispute of Defendants Undisputed Material Fact No.39. |
| 40.  All of the subject stations identified in the pending OCWD litigation for which the BP Defendants are allegedly responsible for MTBE contamination were subject to, and released by, the OCDA BP Final Judgment. (Cox Decl. ¶5, Ex. C (identifying each BP station in OCWD's lawsuit by station number, address, city, and reference in the BP Final Judgment); Cox Decl. Ex. A (BP Final Judgment Exs. A & B).) | 40.   **Disputed.** The OCDA's settlement did not release <u>any</u> of the District's claims here.<br><br>*See also* Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42. | 40.   **Disputed and fails to raise triable facts relevant to Defendants' Motion.**<br><br>OCWD does not identify any evidence to dispute the stated fact, nor does OCWD's statement actually dispute Undisputed Material Fact No. 40, and thus fails to make "an affirmative showing on all matters placed in issue." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).<br><br>The UST releases of MTBE at "ARCO branded" locations that were at issue in the OCDA litigation |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| | | involve the same harm to the same public water resource that is at issue here, and OCDA and OCWD are in privity for *res judicata* purposes. Regardless of the common law or statutory basis for OCWD's claims, they are barred by entry of the BP Final Judgment and Release in the OCDA litigation.<br><br>OCWD's attempt to incorporate by reference its response to Undisputed Material Fact Nos. 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, and 42 does not provide any triable facts to support its dispute of Defendants Undisputed Material Fact No. 40. |
| 41.  After settling with the Shell Defendants, the OCDA issued a press release describing the litigation, stating in part:<br>**Threat to Supply of Drinking Water Discovered**<br>District Attorney Rackauckas made the decision to file this environmental protection lawsuit based upon reports filed by the Orange County Health Care Agency and investigations by the Anaheim, Fullerton, Orange and Santa Ana Fire Departments... The necessity of this decision was shown in reports that indicated that gasoline leaking from improperly maintained storage tanks had contaminated surrounding soil and groundwater. The presence of | 41.   Undisputed that the cited document contains those words.<br><br>Otherwise, disputed. Disputed that cited documents are relevant or support defendants' *res judicata* argument, and incorporate by reference Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42 | 41.  **Fails to raise triable facts relevant to Defendants' Motion.**<br><br>OCWD does not actually dispute Defendants' Undisputed Material Fact No. 41.<br><br>OCWD's attempt to incorporate by reference its response to Undisputed Material Fact Nos. 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, and 42 does not provide any triable facts to support its dispute of Defendants Undisputed Material Fact No. 41. |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| the gasoline additive called MTBE (methyl tertiary-butyl ether) in the leaking fuel added to this problem. MTBE is more soluble and moves further and faster through groundwater than other components of gasoline. Because MTBE can be detected in very small amounts, even a small amount of MTBE can contaminate and render undrinkable large volumes of water. It makes the contaminated water taste and smell like turpentine. More over [sic], MTBE is extremely difficult and expensive to remove from water once contaminated. (Condron Decl. Ex. D (1/6/05 OCDA Press Release).) | | |
| 42.  The OCDA subsequently described its lawsuits as follows: As a result of *People v. Arco, Shell and Thrifty et al.,* clean-up work and remediation of numerous polluted underground storage tank sites are being funded by the major oil companies.... The oil companies were required to write a blank check to cover the cost of cleaning up the environment until the ground water is free of dangerous chemicals.... As a result, many of the polluted underground storage sites have been cleaned up and are free of a dangerous chemical compound called MTBE. (Condron Decl. Ex. E (OCDA 2007 Biennial | 42.   Undisputed that the cited document contains those words.      Otherwise, disputed. Disputed that cited documents are relevant or support defendants' *res judicata* argument, and incorporate by reference Plaintiff's Responses to 56.1 ¶¶ 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34, 36, 40, 42 | 42.  **Fails to raise triable facts relevant to Defendants' Motion.**  OCWD does not actually dispute Defendants' Undisputed Material Fact No. 42.  OCWD's attempt to incorporate by reference its response to Undisputed Material Fact Nos. 1, 3, 8, 10, 13, 15-17, 20-22, 24-31, 33, 34 , 36, 40, and 42 does not provide any triable facts to support its dispute of Defendants Undisputed Material Fact No. 42. |

| Defendants' Undisputed Material Facts | OCWD's Response | Defendants' Reply |
|---|---|---|
| Report at 25).) | | |

| Additional Material Facts Asserted by OCWD | Defendants' Response and Objections |
|---|---|
| 43. No statute authorizes OCDA to seek redress for injuries to water rights owned by the Orange County Water District. | 43. **This is a legal conclusion, not a fact, and is irrelevant to Defendants' Motion.** |
| 44. No statute authorizes OCDA to seek recovery of the costs that the District claims under section 40-8 of the Orange County Water District Act. | 44. **This is a legal conclusion, not a fact, and is irrelevant to Defendants' Motion.** |
| 45. In his actions against Defendants, OCDA did not claim that Defendants' MTBE caused any individualized injury to OCDA's own property. *See* Cox Decl., Exh. B; *see also,* Condron Decl., Exh. A. | 45. **This is a legal conclusion, not a fact, and is irrelevant to Defendants' Motion.** |
| 46. The District is not a district attorney, county counsel, or city attorney. | 46. **This is a legal conclusion, not a fact, and is irrelevant to Defendants' Motion.** |
| 47. On January 5, 2005, the Shell defendants' counsel William D. Temko successfully opposed the District's request for leave to file a motion to intervene in Shell's action against OCDA. *See* Condron Decl., Exh. F; *see also* Barnhart Decl., Exh. 1. | 47. **Irrelevant to Defendants' Motion.** The Shell Defendants opposed OCWD's motion to intervene on the ground that it was untimely, given that OCWD had been aware of the OCDA's pending litigation against the Shell Defendants for more than two years before seeking to intervene. Condron Decl. Exh. F at 22, 27-28. |
| 48. Shell's evidence does not establish that Shell's settlement even applied to any of the stations that are at issue in this case. *See* Condron Declaration (no stations identified). According to Paragraph 21 of OCDA's First Amended Complaint, the stations at issue were listed in Exhibits A and B. Condron Decl., Exh. A. But Shell did not submit Exhibits A and B with its Motion. *See generally* Condron Decl. Shell's settlement | 48. **Disputed**. The Shell Defendants' consent judgment with the OCDA was a "final and binding judgment, release, resolution and settlement of all claims, violations, or causes of action that were alleged in the First Amended Complaint against Settling Defendants, or could have been asserted based on the facts alleged in the First Amended Complaint, *including* all claims, violations, or causes |

| Additional Material Facts Asserted by OCWD | Defendants' Response and Objections |
|---|---|
| agreement with OCDA also does not identify the covered stations. *See* Condron Decl., Exh. C.  Nor does Shell submit any other evidence tending to show that the stations that the OCDA settlement released are the same as the stations that are at issue in this action. | of action in regards to the sites listed on Exhibit A.".  Condron Decl. Exh. C, ¶ 9.0.  Thus, the judgment was not limited solely to the stations listed on Exhibit A.  By definition, the judgment and release would extend to all claims placed at issue by OCWD's First Amended Complaint, purported to assert claims as to all underground storage tank locations in Orange County "currently owned and/or operated and/or supplied by Shell Defendants."  Condron Decl. Exh. A, ¶¶ 12, 21.  The OCDA Complaint, like OCWD's, also asserts claims against Shell based on its use of MTBE in gasoline.  *Id.* at ¶¶ 13, 20, 27.  Exhibits A and B to the consent judgment were not included due to limitations on the size and number of exhibits set forth in this Court's rules.  To the extent the Court needs to consult those lists, they are provided herewith. |
| 49.  Defendants' Motion papers do not contain any evidence that any Defendant spent any money to fund a "Plume Delineation Program," or for any other settlement-related purpose.  See Defendants' Supporting Declarations.  *See* Defendants' Supporting Declarations. | 49.  **Disputed and fails to raise triable facts relevant to Defendants' Motion**.<br><br>BP participated in the required Plume Delineation Program, which resulted in reports that were submitted to the OCDA and its independent consultant.  Winsor Decl. ¶¶ 2-3.  Following the independent consultant's review of the Plume Delineation reports, BP implemented the suggestions of the independent consultant.  *Id.* ¶ 4.<br><br>The Declaration of Karen A. Lyons states that Shell fulfilled all of its obligations under the Plume Delineation Program, which included payment of money and conducting a Plume Delineation Program.  Condron Decl. Exh. C ¶¶ 3.0-3.10; Lyons Decl. ¶¶ 3-6.<br><br>OCWD fails to raise triable facts by |

| Additional Material Facts Asserted by OCWD | Defendants' Response and Objections |
|---|---|
| | failing to make "an affirmative showing on all matters placed in issue." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). |
| 50.  Defendants' Motion papers do not contain any evidence that any Defendant spent any money for any settlement-related purpose. *See* Defendants' Supporting Declarations. | 50.  **Disputed and fails to raise triable facts relevant to Defendants' Motion**.<br><br>BP participated in the required Plume Delineation Program, which resulted in reports that were submitted to the OCDA and its independent consultant.  Winsor Decl. ¶¶ 2-3.  Following the independent consultant's review of the Plume Delineation reports, BP implemented the suggestions of the independent consultant. *Id.* ¶ 4.<br><br>The Declaration of Karen A. Lyons states that Shell fulfilled all of its obligations under the Plume Delineation Program. Condron Decl. Exh. C ¶¶ 3.0-3.10; Lyons Decl. ¶¶ 3-6.<br><br>OCWD fails to raise triable facts by failing to make "an affirmative showing on all matters placed in issue." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). |
| 51.  In their January 23, 2006 Memorandum of Law in Support of Motion for Summary Judgment of Plaintiff's Claims Based on Plaintiff's Lack of Cognizable Interest, Defendants conceded that "[t]his Court has already determined that the OCWD Act confers upon OCWD standing to pursue its public nuisance claim against Defendants." Barnhart Decl., Exh. 7, pg. 7. | 51.  **Fails to raise triable facts relevant to Defendants' Motion.**  OCWD improperly conflates the issue of legal standing to bring a claim with whether its claims are precluded under *res judicata*. |
| 52.  Pursuant to its statutory authority, the District has acquired rights to millions of acre feet of surface water that it has recharged into the Orange County Groundwater Basin.  Current and valid permits from the State Water | 52.  **This is a legal conclusion, not a statement of fact.**  It is further irrelevant to Defendants' Motion as the releases of MTBE gasoline, for which OCWD claims regulatory responsibility, existed |

| Additional Material Facts Asserted by OCWD | Defendants' Response and Objections |
|---|---|
| Resources Control Board entitle the District to divert hundreds of thousands of acre feet of surface water each year from various sources, to store that water in the Orange County Groundwater Basin, and to withdraw and use an equivalent amount of water for any purpose from anywhere within the Basin. Barnhart Decl., ¶¶ 3-6, Exh. 2-5. | at the time the BP and Shell Final Judgments and Releases were entered in the OCDA litigations. *See e.g.* Defendants' Undisputed Material Fact No. 19. |
| 53.  A significant amount of MTBE has been released to groundwater within the Orange County Water District's service area.  This MTBE, if not remediated, will impact water production wells in OCWD's service area.  MTBE has already been detected in a number of wells.  After ten years, MTBE levels will exceed 5ppb in more than 100 production wells.  Barnhart Decl., Exh. 8 (pg. 8). | 53.  **Irrelevant to Defendants' Motion.**  The releases of MTBE gasoline, for which OCWD claims regulatory responsibility, existed at the time the BP and Shell Final Judgments and Releases were entered in the OCDA litigations.  *See e.g.* Defendants' Undisputed Material Fact No. 19. |
| 54.  The District's Board of Directors has determined that prompt and urgent action is necessary to abate the current and threatened MTBE in the Basin.  Barnhart Decl., Exh. 9, pg. 9. | 54.  **Irrelevant to Defendants' Motion.**  The releases of MTBE gasoline, for which OCWD claims regulatory responsibility, existed at the time the BP and Shell Final Judgments and Releases were entered in the OCDA litigations.  *See e.g.* Defendants' Undisputed Material Fact No. 19. |

| Additional Material Facts Asserted by OCWD | Defendants' Response and Objections |
|---|---|
| 55.  Defendants' Motion does not allege or prove that any of OCDA's settlements with Defendants provided even indirect benefits to the District.  Both Declarations submitted by Defendants say that Defendants did not do <u>any</u> additional or different remediation work as a result of the settlements.  Neither Declaration establishes that any Defendant spent <u>any</u> money on their Plume Delineation Program — in which the District was not entitled to participate — or gives any details as to what those Programs entailed.  The settlements do not provide any compensation to the District for its injuries, and the settlements gave the District no power to enforce the settlement terms.  The settlements did not require anyone to report to the District about anything.  The settlements did not solve the District's problem.  Almost five years after the last Defendant's settlement obligations expired, MTBE plumes that have migrated off-site from defendants' stations continue to migrate towards the District's water production wells.  Barnhart Decl., Exh. 7 and 8 (pg. 8); Lyons Decl.; Winsor Decl.; Condron Decl., Exh. C; Cox Decl., Exh. A and H; Declaration of Stephen Wheatcraft, submitted with the District's Opposition to Defendants' Omnibus Motion for Summary Judgment. | 55.  **Fails to raise triable facts relevant to Defendants' Motion.**<br><br>Application of *res judicata* does not require providing any direct or indirect benefit to the party to be precluded. Regardless, the Declaration of Karen A. Lyons states that Shell fulfilled all of its obligations under the Plume Delineation Program.  Lyons Decl. ¶¶ 3-6.  Likewise, the Consent Judgments provide extensive details about the requirements of the Plume Delineation Program.  Condron Decl. Exh. C ¶¶ 3.0-3.10.<br><br>BP completed the Plume Delineation Program and transmitted all reports to the OCDA's office pursuant to the Final Judgment.  Windsor Decl. ¶ 3.  The independent consultant provided suggestions that enhanced ongoing work, but were not contrary to the course of action BP had proposed.  *Id.* ¶ 4.  The BP Final Judgment provides extensive details about the requirements of the Plume Delineation Program.  Cox Decl. Ex. A ¶¶ 4.0-4.10.<br><br>OCWD fails to raise triable facts by failing to make "an affirmative showing on all matters placed in issue."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).<br><br>In any event, these alleged facts are not relevant as the releases of MTBE gasoline, for which OCWD claims regulatory responsibility,  existed at the time the BP and Shell Final Judgments and Releases were entered in the OCDA litigations.  *See e.g.* Defendants' Undisputed Material Fact No. 19. |

| Additional Material Facts Asserted by OCWD | Defendants' Response and Objections |
|---|---|
| 56. During the January 5, 2005, hearing on Shell's settlement with OCDA, both OCDA and the Superior Court concluded that the Shell settlement did not bar the District's cause of action. OCWD represented to the Court: | 56. **Disputed.** |

56. During the January 5, 2005, hearing on Shell's settlement with OCDA, both OCDA and the Superior Court concluded that the Shell settlement did not bar the District's cause of action. OCWD represented to the Court:

> The Water District's claims are common-law based; they are damage based; they are independent of our claims; and we have always taken the position, and the Court has read in the document we have taken the position, that there's nothing we're doing in this settlement that has anything to do with precluding the Water District from pursuing their case in Federal Court.

Barnhart Decl., 112, Exh. 1, pg. 21.

> The Superior Court was not asked to make any formal findings, but the Court said:

> But I understand different causes of action are being sought in the matter removed to Federal Court. And I have not seen the — any — or heard any prejudice to the parties in the other action . . .

Barnhart Decl., ¶ 2, Exh. 1, pg. 27, see also pg. 14 ("The Court: . . . The Court has not heard a request for this Court to make any findings, whether advisory or otherwise.").

Shell's counsel never disputed OCDA's or the Superior Court's conclusions that OCDA's action did not prejudice the District's cause of action here. In fact, Shell's counsel impliedly represented that he did <u>not</u> think that the Shell settlement barred the District's cause of action, because he told the Court that it was his understanding Shell's counsel did tell the Court that it was his understanding that the

56. **Disputed.**

OCWD made no such representation to the Court. The OCDA made that statement to the Court. However, the Shell Defendants did not agree, and the res judicata effect of a prior lawsuit is a matter of law, not a matter of one party's statements or representations. *Ellena v. State*, 69 Cal.App.3d 245, 260-61 (1977). Privity and the *res judicata* effect of a prior judgment turn on legal questions that can only be determined by subsequent courts. *In re MTBE Prods. Liab. Litig.*, 209 F.R.D. 323, 340 (S.D.N.Y. 2002).

The Shell Defendants' counsel did not "impliedly represent" that *res judicata* would not apply or make any representations, implied or explicit, about the effect of the consent judgment on OCWD's claims. The Shell Defendants' counsel opposed OCWD proposed intervention as untimely, given that OCWD had been aware of the OCDA's pending litigation against the Shell Defendants for more than two years before seeking to intervene. Shell's counsel told the Orange County Superior Court that the issue of *the preclusive effect of the OCDA settlement* would need to be litigated later by the parties. Condron Decl. Exh. F at 22, 27-28.

The terms of the Thrifty settlement with the OCDA are entirely irrelevant to the Shell Defendants' settlement with the OCDA. The terms differ between the two settlements.

The Orange County court made no finding regarding the preclusive effect of the Shell Defendants' settlement with the OCDA, stating "I make no findings about

| Additional Material Facts Asserted by OCWD | Defendants' Response and Objections |
|---|---|
| Shell settlement was "identical to the structure of the second settlement in the ARCO case (which was the settlement that had terminated the *People v. ARCO* case approximately two years before the Shell settlement): | the effect of this settlement on any other action.  I'll let an appropriate court at an appropriate time make those determinations," the Superior Court entered the Final Judgment on January 5, 2005.  (Rule 56.1 St., ¶36) |
| I think [OCDA] will confirm that the structure of this settlement was presented to Shell on a non-negotiable basis.  In other words, the format I was told from day one was going to be the format of the ARCO settlement.[6] And indeed the entire injunctive provision, the plume delineation program, all of that is identical to the structure of the ARCO settlement, which again has been of public record for, I believe, more than two years. | |
| Barnhart Decl., ¶ 2, Exh. 1, pg. 23. | |
| The Thrifty settlement to which.  Shell's counsel was referring expressly states that it does not resolve, settle, or preclude the District's cause of action here: | |
| **This Final Judgment shall not serve to bar,** estop, alter, supercede, or interfere with, any investigation, action, order, request, demand or directive of any regulatory agency, person or entity having jurisdiction over . . . the groundwater or production wells within the County of Orange, including **any** investigation, **action,** order, request, demand, or directive **of . . . the Orange County Water District** pursuant to any of the laws and regulations pertaining to | |

---

[6] As noted in footnote 2 above, the ARCO settlement to which Shell's counsel was referring must have been the settlement that released OCDA's claims against Thrifty Oil in the *People v. ARCO* litigation, and not the December 2002 BP Final Judgment and Release upon which BP's *res judicata* motion is based.

| Additional Material Facts Asserted by OCWD | Defendants' Response and Objections |
|---|---|
| underground storage tanks or water. . . . **Plaintiff does not include,** and the Orange County District Attorney does not represent, **any water district . . .** or other entity with an interest in or pertaining to groundwater or production wells located within the County of Orange.<br><br>Cox Decl., Exh. H, pg. 15.<br><br>The Shell settlement modified these first few words to read: "In entering into this Final Judgment, the parties understand that Plaintiff does not intend for this Final Judgment to serve to legally bar, estop . . ." Condron Decl., Exh. C, ¶ 9.6.  As noted above, OCDA and the Superior Court concluded — and Shell did not deny — that this modification confirmed what was already the case - that the agreement did not bar the District's case. Barnhart Decl., ¶ 2, Exh. 1, pp. 14, 21, 23, 27. | |
| 57.   The District seeks remedies for injuries to its own private-property rights, and for costs that the District incurred (or will incur) to contain and remediate Defendants' contamination. Barnhart Decl., Exh. 6, ¶¶ 4 ("The District has suffered injury in fact, including expending funds necessary to investigate, clean up, abate, and/or remediate the MTBE and/or TBA contamination caused by Defendants."), 102-108 (cost-recovery cause of action under Orange County Water District Act), and pp. 35-36 (Prayer seeking compensation and an injunction requiring abatement of "MTBE and/or TBA which is contaminating and threatening the District's property").  In its Third Amended Complaint, the District alleges: "The District owns land overlying groundwater at various locations within the District and has water rights therein." Condron Decl., Exh. B, ¶ 5.  The District further alleges: "The District owns, holds and/or represents property rights and interests | 57.   **This is a legal conclusion, not an issue of fact, and in any event is irrelevant to Defendants' Motion**.  The groundwater and MTBE that was at issue in the OCDA litigations is the same *public* water resource that is at issue here, and OCDA and OCWD are in privity for *res judicata* purposes  Moreover, as stated in its Complaint, OCWD does not "own" groundwater in Orange County; it manages such groundwater.  (Condron Decl. Exh. B ¶¶ 1, 4, 5.)  Although the Complaint alleges that OCWD owns land overlying groundwater, there is no allegation that the land OCWD owns or the groundwater underlying it is impacted or threatened in any way. To the extent OCWD has any usufructuary rights in MTBE impacted groundwater, "those rights are appropriative, and are therefore subordinate to the State (acting pursuant to the public trust)…."  *In re MTBE*, 824 |

| Additional Material Facts Asserted by OCWD | Defendants' Response and Objections |
|---|---|
| damaged by the nuisance.  The District's injury is separate and distinct from that of the public." Condron Decl., Exh. B, ¶ 30. otherwise."). | F. Supp. 2d 524, 547 (S.D.N.Y. 2011).  Therefore, regardless of the common law or statutory basis for OCWD's claims, they are barred by entry of the BP and Shell Final Judgments and Releases in the OCDA litigations. |
| 58.   Both of OCDA's complaints against Defendants[7] expressly note that "Plaintiff does not include, and the District Attorney does not represent, any water district . . ., or any other individual, regulatory agency, corporation or other entity with an interest in or pertaining to groundwater . . . located within the County of Orange." Condron Decl., Exh. A, pg. 2; Cox Decl., Exh. B, pg. 2.  Also | 58.   **Irrelevant to Defendants' Motion.**<br><br>That "Plaintiff" is defined in the OCDA's First Amended Complaints as "the public" but *not* including "any water district" which the "District Attorney does not represent" establishes nothing more than the identity of the parties in the OCDA action.  It has never been Defendants' contention that OCWD *was a party* to the OCDA action, or that *res judicata* depended upon OCWD's status *as a party* to that case. |
| 59.   Paragraph 4 of the District's Third Amended Complaint does not allege that the District is a "special district." Barnhart Decl., Exh. 6. | 59.   **Irrelevant to Defendants' Motion.**<br><br>OCWD's Complaint (at ¶4) alleges that it is a "special water agency"  OCWD characterizes itself as "first and foremost a state environmental agency."  *In re Mark IV Indus*., No. 09BK12795 (Bankr. S.D.N.Y.), Response of Orange County Water District to Reorganized Debtor's Objection to Claim No. 1291, August 31, 2010.  (Condron Reply Decl. Exh. A).  In any event. OCWD is in privity with OCDA for *res judicata* purposes irrespective of whether it is a state agency.  *Rynsburger v. Dairymen's Fertilizer Coop.*, 266 Cal.App.2d 269, 275-277 (1968). |

---

[7] As noted in footnote 2, OCDA filed two actions that produced three settlements that are relevant here.  *People v. ARCO* produced what Defendants call "The BP Final Judgment" and the February, 2003 Thrifty settlement.  *People v. Shell* produced the Shell settlement.

| Additional Material Facts Asserted by OCWD | Defendants' Response and Objections |
|---|---|
| 60.  OCDA's settlements with Defendants were limited in scope to "claims, violations, or causes of action" that OCDA could have pursued, which did not include the District's causes of action here. *See* Cox Decl. Exh. A, ¶ 6.0(i) (BP Final Judgment "is a final and binding resolution and settlement of all claims ... that were alleged by the First Amended Complaint ... or could have been asserted, based on the facts alleged in the First Amended Complaint"); *see also* Cox Decl., Exh. H, pg. 11 (same); *see also* Barnhart Decl., ¶¶ 3-6, Exh. 25; *see also* Plaintiff's Facts, No. 43-45. | 60.  **This is a legal conclusion, not a statement of fact.**  For *res judicata* purposes, the phrase "cause of action" means "the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced." *Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 814 (2010). Application of *res judicata* does not turn on whether both cases involve the same common law or statutory causes of action.  And *res judicata* applies here even if the OCWD's claims could not have been asserted by the OCDA in the prior litigations. *Villacres v. ABM Indus., Inc.*, 189 Cal.App.4th 562, 586 ["it has been held that even when the court does not have power to adjudicate a claim, it may still 'approve release of that claim as a condition of settlement of an action before it.' [Citation omitted.]"] |

Dated:  August 11, 2014

Respectfully submitted,

Richard E. Wallace, Jr.
Peter C. Condron
SEDGWICK LLP
2900 K Street, N.W.
Harbourside - Suite 500
Washington, D.C. 20007
Telephone:  (202) 204-1000
Facsimile:  (2020) 204-1001

Attorneys for Defendants
Shell Oil Company, Equilon Enterprises
LLC, and Texaco Refining and Marketing
Inc.

Matthew T. Heartney
Lawrence A. Cox
Stephanie B. Weirick
ARNOLD & PORTER LLP
777 South Figueroa Street
Los Angeles, California  90017
Telephone:  (213) 243-4000
Facsimile:  (213) 243-4199

Attorneys for Defendants
Atlantic Richfield Company, BP Products
North America Inc., and BP West Coast
Products LLC