

Boston  Brussels  Chicago  Düsseldorf  Frankfurt  Houston  London  Los Angeles  Miami
Milan  Munich  New York  Orange County  Paris  Rome  Seoul  Silicon Valley  Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Peter John Sacripanti
Chairman
psacripanti@mwe.com
+1 212 547 5583

BY ELECTRONIC MAIL AND HAND DELIVERY                    August 11, 2014

The Honorable Shira A. Scheindlin
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1620
New York, New York  10007-1312

Re:     Master File C.A. No. 1:00-1898 (SAS), M21-88, MDL No. 1358
        *Defendants' Pre-Conference Reply Letter for August 14, 2014 Conference*

Dear Judge Scheindlin:

        Defendants respectfully submit this reply letter ahead of the August 14 conference.[1]

**PLAINTIFFS' AGENDA ITEMS**

**I.      *Puerto Rico:* Defendant Sunoco's Responses to Discovery Requests**

        The Commonwealth's complaints about Defendants Sunoco, Inc.; Sunoco, Inc. (R&M); and Puerto Rico Sun Oil Company (collectively "Sunoco") are based on misstatements and misrepresentations.  It is Plaintiffs' own failure to timely review and respond to Sunoco's document productions and discovery responses that is the root cause of the current disputes.

        Based primarily on gaps in the Bates sequence of documents produced by Sunoco, Plaintiffs argue that Sunoco withheld "relevant documents."  As Sunoco explained to Plaintiffs nearly a year ago, the gaps are the result of a copy vendor having Bates-stamped a large universe of documents retrieved from storage prior to those documents being reviewed for responsiveness to document requests served in this matter.  *See Ltr. from D. Krainin to T. O'Reilly* (Sept. 27, 2013) (at Ex. A).  The former Puerto Rico Sun Oil Company ("PRSOC") facility in Yabucoa, Puerto Rico, which was only involved in the gasoline business from 1990-97 and which was sold by PRSOC in 2001, produced primarily non-gasoline petroleum products (such as diesel, jet fuel, kerosene, lubricants and waxes); those products were the subject of many of the Bates-stamped documents.  Just because a document was Bates-stamped does not mean it is responsive or was otherwise required to be produced during the fact discovery period.

---

[1] Defendants respectfully request an extension of the page limit for reply letters.

The Honorable Shira A. Scheindlin
August 11, 2014
Page 2

Plaintiffs also claim Sunoco produced a "substantial number" of documents as expert reliance materials rather than during fact discovery.  First, the "substantial number" at issue is a grand total of 12 of the 77 Sunoco documents cited as reliance materials by Sunoco's expert witnesses. Second, those 12 documents were identified based on specific requests from Sunoco's employee-experts, David Tropp and Neil Shah, regarding certain technical issues addressed in their disclosures.  Plaintiffs suffered no prejudice whatsoever because the documents were disclosed and produced in a timely manner – three months prior to the depositions of Sunoco's employee-experts.  As it turned out, Plaintiffs did not ask Messrs. Tropp and Shah a single question about any of the 12 documents about which Plaintiffs now complain.

Third, the Process Flow Diagram (one of those 12 documents) does not show "the very process by which Peerless supplied Sunoco with finished gasoline," as Plaintiffs claim.  Rather, it is a technical drawing that depicts the process by which benzene was removed from reformate, a high-octane product produced from crude oil, to comply with certain regulations under the 1990 Clean Air Act.  Nothing in the Process Flow Diagram or any other Sunoco document shows that MTBE was ever blended into any PRSOC product to make finished gasoline.[2] Indeed, the point of Sunoco's employee-expert testimony was that the octane levels in PRSOC's reformate were high relative to gasoline and, therefore, it would make no sense to add MTBE (also a high-octane product) to it to make finished gasoline.

Plaintiffs' representation that Sunoco "produced bills of lading showing deliveries of Sunoco's gasoline directly to the trial site Texaco #800 in Ponce" for the first time in February 2014 and "purposely withheld" these documents during fact discovery is false on two levels:  (i) the document at issue does not show a delivery to the Texaco #800 station, and (ii) the document was not withheld during fact discovery.  As to the first point, the document does not include any reference to "Texaco #800," nor is it clear from the document whether the gasoline was actually delivered to any station in Ponce, let alone the trial site in Ponce (as of 2011, there were seven Texaco stations in Ponce).  Other bills of lading that Sunoco has produced demonstrate that the "delivered to" notations do not necessarily indicate a location where gasoline was actually delivered.  *See, e.g.,* SUN_PUERTO_0005286 (at Ex. B) (bill of lading showing gasoline "delivered to" a post office box in San Juan).  As to the second point, the document was produced on November 15, 2013, well before the close of fact discovery (not in February 2014, as Plaintiffs claim).  Plaintiffs took the depositions of two Sunoco fact witnesses and one Rule 30(b)(6) witness after Sunoco produced this and other documents like it.  Plaintiffs had ample opportunity to ask Sunoco witnesses about this document before fact discovery closed in late December 2013, but failed to do so.

Finally, Plaintiffs claim that the Commonwealth has "assembled evidence that MTBE was utilized by Peerless to process and supply finished gasoline to Sunoco, and that Sunoco sold

---

[2] Sunoco has produced documents that show that certain finished gasoline that PRSOC purchased for resale did contain MTBE.

The Honorable Shira A. Scheindlin
August 11, 2014
Page 3

MTBE to refiners in Puerto Rico." Both parts of this statement are false. First, Sunoco is not aware of any evidence in its own documents or from any other source showing that MTBE was blended at the Peerless terminal into the finished gasoline sold by PRSOC. Plaintiffs have not provided any such evidence either in their letter to the Court or in their letter to counsel for Sunoco (dated August 1, 2014) to which they cite. If Plaintiffs do have such evidence, then they are free to use it in opposition to any summary judgment motion Sunoco may file. Second, Plaintiffs' claim that Sunoco "sold MTBE to refiners in Puerto Rico" is yet another misrepresentation. The document that Plaintiffs cite in support of this contention shows only that Sunoco, Inc. (R&M) sold MTBE to Phillips Chemical Company in Texas. After title and control of the shipment passed from Sunoco to Phillips, Phillips may have then shipped the MTBE to a refiner in Puerto Rico, but Sunoco did not sell, ship or supply any MTBE to any refiner in Puerto Rico. Plaintiffs should be well aware of this fact based on the testimony of two Sunoco witnesses (David Tropp and Debra Aron) and numerous communications from counsel for Sunoco. *See Ltrs. from N. Coppinger to D. Miller* (June 10 & July 11, 2014) (at Exs. C-D).[3]

Plaintiffs seek to parlay their trumped up allegations into a second bite at the discovery apple as to Sunoco. The root cause of Plaintiffs' complaints, however, is their own lack of diligence in reviewing the material Sunoco has produced during the Court-ordered fact and expert discovery periods. Sunoco respectfully requests that the Court allow Sunoco to file a summary judgment motion as it deems appropriate and allow Plaintiffs to respond with whatever material issues of disputed fact they may wish to raise at that time.

## II.    *Puerto Rico*: Plaintiffs' Motion to Compel Chevron Expert John Connor

Plaintiffs' request that the Court order the Chevron Defendants' expert John Connor to produce additional data and documents flatly violates the parties' agreed-to expert protocol (CMO 112); is based on numerous misstatements; and ignores Mr. Connor's unequivocal testimony that he did not rely on the data and the documents at issue. At the outset, we note that Plaintiffs' counsel makes several erroneous statements about what Mr. Connor "admits," "freely admits", "denies" or "refuses to produce." Plaintiffs' provide no citation for any of these statements because they do not exist. Further, Mr. Connor did not make decisions about the document production; the Chevron Defendants did so in accordance with CMO 112. As detailed below, the instant dispute is governed by CMO 112, but the relief Plaintiffs seek is in direct violation of that order. As such, Plaintiffs' request must be denied.

Prior to the commencement of expert discovery, the parties negotiated and agreed that CMO 112 would govern and control what materials experts must produce and when. In particular, the parties agreed that each expert would produce his or her "Reliance Materials,"

---

[3] Plaintiffs' contention that Sunoco "opposed" discovery against Peerless is meritless. Counsel for Sunoco participated in a hearing with the Special Master to correct the record as it relates to Sunoco. Sunoco has no objections to Plaintiffs pursuing discovery from Peerless provided they do so consistent with applicable rules and without misrepresenting the record as to Sunoco.

The Honorable Shira A. Scheindlin
August 11, 2014
Page 4

which was defined as "all files, documents, texts and underlying data or manipulations of such data *reviewed or relied upon by that expert in forming the basis for his or her opinion*." CMO 112 (emphasis added) (at Ex. E). The Chevron Defendants produced all of this information for Mr. Connor on April 14, 2014 in compliance with CMO 112.

Importantly, CMO 112 does not require the production of data used to support conclusions in articles not relied upon, but coauthored, by the expert. And for good reason—most experts in this case have authored countless articles, so to produce all of the underlying data for each article would be unduly burdensome and oppressive. Instead, discovery is limited to data used in forming opinions *for this case*. CMO 112 also permits document requests to accompany expert deposition notices, but provides that such requests "*shall be limited to*" seven discrete categories of documents, none of which apply to the issues here. CMO 112, ¶ VII (emphasis added). Plaintiffs cannot point to any authority, rule or Court order that requires production of the documents they seek in their August 6 letter.

The parties agreed to this limited list of additional documents in Paragraph VII under the MAD Doctrine—Mutually Assured Discovery. Each side could have requested numerous documents and data from the other side's experts that are far afield from their work in this case, but then would have faced similar requests. Consistent with CMO 112, Defendants did not seek, and Plaintiffs did not produce, the underlying data used in articles that Plaintiffs' experts authored and reference as support for their opinions and conclusions. For example, Plaintiffs' expert Dr. Graham Fogg cites to numerous articles that he authored or coauthored as support for his opinions in this case. Defendants properly did not request, and Plaintiffs did not produce, any of the underlying data for these articles as reliance materials. But now Plaintiffs want to re-trade that deal and apply a different set of rules to Mr. Connor in direct violation of CMO 112. The Court should refuse to allow Plaintiffs to do so and should refuse to revisit the parties' prior agreements in CMO 112 at this late date.

There are two papers at issue in Plaintiffs' letter: (1) the "McDade Paper" (*Long Term Behavior of MTBE Plumes of Exceptional Length*, McDade, et al. (submitted for publication)); and (2) the "Kamath Paper" (*Use of Long-Term Monitoring Data to Evaluate Benzene, MTBE and TBA Plume Behavior in Groundwater at Retail Gasoline Sites*, Kamath, et al. (2012)). Regarding the former, the Connor/Daus report does not even cite the *unpublished* McDade Paper, let alone rely upon it. As such, Plaintiffs cannot and do not offer any justification for the production of the data underlying the McDade Paper. To be clear, Mr. Connor did not rely on the McDade Paper in his report or his deposition, and he will not rely on it at trial. The Chevron Defendants have explained this time and again to Plaintiffs,[4] but Plaintiffs contend that they are entitled to this data simply because Mr. Connor's opinions in this case are consistent with the opinions in an unpublished article that he co-authored. This is not the rule. Plaintiffs' contention is unreasonable and violates the parties' agreement in CMO 112. Nevertheless, *nearly all of the*

---

[4] *See, e.g.*, *J. Maher Ltrs. to M. Axline* (May 19 & 30, 2014) (at Exs. F & G).

The Honorable Shira A. Scheindlin
August 11, 2014
Page 5

*data has in fact already been produced.*  Table 3 of the Connor/Daus report lists all but one site discussed in the McDade Paper, and these site files were produced as part of the Connor/Daus reliance material.  It is this data, and these sites, on which Mr. Connor will rely, and Plaintiffs have all of that data.

Nor does CMO 112 require the Chevron Defendants or Mr. Connor to produce the data underlying the Kamath Paper.  While Mr. Connor cited the conclusions in Kamath, the mere fact that Mr. Connor cited a peer-reviewed and published article, like Kamath, as support for his opinions does not make the underlying data part of his reliance materials under CMO 112.  The question is whether the underlying data was relied upon for the opinions in the expert's report.  As repeatedly explained to Plaintiffs, Mr. Connor did not rely on the underlying Kamath data to prepare his report.  Indeed, as for the paper itself,  Mr. Connor provided high-level contributions to it, and Dr. Kamath actually reviewed and complied the data, not Mr. Connor.  He has not reviewed the underlying data, nor is he relying on it.  Instead, he is relying on the peer-reviewed, published paper, just as Plaintiffs' experts are. (Dr. Fogg in fact cites and relies upon this paper.)

Furthermore, the underlying Kamath data is highly confidential and subject to multiple confidentiality agreements.  Mr. Connor was not the lead author of the Kamath article and simply has no authority to produce the data. This was explained to counsel for Plaintiffs two years ago when they requested this same data in the *Orange County Water District* case.

Finally, Plaintiffs' request for API correspondence also violates CMO 112.  Plaintiffs request that the Court order the Chevron Defendants to produce documents "concerning communications with the American Petroleum Institute (API) and its committees which funded the McHugh study…."  *Pls.' Preconf. Ltr.* (Aug. 6, 2014), at 5 (stating that API funded studies on MTBE have generated a number of documents which were used at the *City of New York* trial). Tellingly, Plaintiffs do not cite to any provision of CMO 112 requiring the production of these documents, because Plaintiffs' request is a blatant violation of Paragraph VII of CMO 112. There is nothing in CMO 112 that authorizes Plaintiffs to request, or obligates the Chevron Defendants to produce, documents simply because Plaintiffs found them useful in the *City of New York* trial.  Whatever the reason they were produced in that case, CMO 112 controls this case, and CMO does not authorize Plaintiffs to request these documents.  Plaintiffs' motion to compel the Chevron Defendants to produce these materials is in conscious disregard of their agreement, which was presented to and signed by the Court, to limit document requests in accordance with Paragraph VII of CMO 112.  The Chevron Defendants lived by the parameters of CMO 112 when conducting discovery on Plaintiffs' experts, and Plaintiffs must do the same.

For all of these reasons, the Chevron Defendants respectfully request that the Court deny the relief sought in Plaintiffs' August 6, 2014 letter.

The Honorable Shira A. Scheindlin
August 11, 2014
Page 6


Sincerely,

*Peter John Sacripanti*

Peter John Sacripanti


cc:  All Counsel of Record by LNFS, Service on Plaintiffs' Liaison Counsel

# **<u>EXHIBIT A</u>**

DM_US 35481469-1.T13305.0010





Daniel M. Krainin
15th Floor
477 Madison Avenue
New York, NY 10022-5802
Direct:(212) 702-5417
Fax:(212) 702-5450
dkrainin@bdlaw.com

September 27, 2013

**VIA FEDEX AND E-MAIL**

Tracey O'Reilly, Esq.
Miller, Axline & Sawyer, P.C.
1050 Fulton Ave., Suite 100
Sacramento, CA 95825-4225

  Re: *Commonwealth of Puerto Rico v. Shell Oil Co., et al.*
    Plaintiffs' Rule 30(b)(6) Deposition Notice and Discovery Requests to Sunoco

Dear Ms. O'Reilly:

  This letter provides a further response to your letter dated September 18, 2013 regarding certain positions taken and discovery responses provided by Defendants Sunoco, Inc., Sunoco, Inc. (R&M) and Puerto Rico Sun Oil Company (collectively "Sunoco").

  As noted in my letter dated September 20, 2013, Sunoco contacted Plaintiffs by letters dated August 5 and August 9, 2013 to affirmatively address potential issues and to begin any necessary meet-and-confer process relating to the deposition notice directed to Sunoco.  By waiting approximately six weeks to respond to those letters, Plaintiffs have unnecessarily delayed resolution of these issues.  Your letter also raises for the first time issues regarding discovery responses that Sunoco served months or years ago, as well as issues regarding discovery responses that are not yet due (in response to the Rule 30(b)(6) notice to Sunoco). Nevertheless, and without waiving objections to the timing of Plaintiffs' communications, this letter addresses each of the issues raised in your letter.

  Deposition Dates

  Your letter incorrectly implies that Sunoco unilaterally withdrew the deposition dates that it had offered (September 18 and 19, 2013).  As you know, the deposition did not proceed on those dates because Plaintiffs failed to respond to Sunoco's repeated inquiries seeking to confirm them.  Sunoco offered those dates on August 9, 2013, and contacted Plaintiffs at least three times thereafter, including providing notice that we could no longer hold the dates if Plaintiffs failed to confirm them by September 5th (less than two weeks prior to the proposed deposition dates), but

**BEVERIDGE & DIAMOND**PC

Tracey O'Reilly, Esq.
September 27, 2013
Page 3

2010); Sunoco's Answers and Objections to Plaintiffs' Second Set of Document Requests to Defendants (Aug. 8, 2011); Sunoco's Answers and Objections to Plaintiffs' First Set of Interrogatories to Defendants Regarding Plaintiffs' Trial Sites (May 29, 2012); Sunoco's Answers and Objections to Plaintiffs' Fourth Set of Interrogatories and Request for Production of Documents to Defendants (Aug. 30, 2012).

In the spirit of compromise, Sunoco is prepared to offer Plaintiffs information from a Sunoco database regarding the sale of gasoline in Puerto Rico by Puerto Rico Sun Oil Company ("PRSOC") (such as the customer name and address, product, and quantity shipped), as well as gasoline sales agreements. In addition, Sunoco's Rule 30(b)(6) designee will be prepared to testify regarding Sunoco's operations involving gasoline in Puerto Rico and Sunoco will, of course, produce all documents reviewed by the witness to prepare for the deposition.[4]

<u>"Missing" Production</u>

Your letter assumes that the gaps Plaintiffs have identified in the Bates sequences of documents produced by Sunoco months or years ago represent "missing" productions that must be remedied either by privilege log entries or supplemental productions. *See* T. O'Reilly Letter to N. Coppinger (Sept. 18, 2013) ("O'Reilly Letter") at 2-3. Your letter omits a third explanation, which is the case here: the documents are non-responsive. For control purposes, Sunoco Bates-stamped a large set of documents relating to its operations in Puerto Rico prior to reviewing and producing them in response to specific sets of discovery requests. Because, as noted above, Sunoco did not own or operate gasoline stations in Puerto Rico and did not produce finished gasoline at the Yabucoa refinery, it should not be surprising that the volume of documents actually produced by Sunoco is considerably smaller than the volume reviewed.

Further, the fact that other Defendants may have produced documents that refer to Sunoco but Sunoco may not have produced duplicates of those same documents is not evidence of documents "missing" from Sunoco's production. PRSOC ceased operations in Puerto Rico approximately 12 years ago, which was approximately six years before Plaintiffs filed the instant action. Following its sale of the Yabucoa facility, Sunoco had no obligation to maintain many of the documents that Plaintiffs now seek.[5] Having said that, Sunoco has identified certain

---

[4] Your letter contends that Sunoco has "refus[ed] to confirm whether or not" it has produced certain documents relating to the deposition notice. O'Reilly Letter at 2. First, I am not aware of Sunoco making any such refusal. Second, the time for Sunoco to produce documents responsive to the deposition notice has not yet lapsed.

[5] For these same reasons, as Sunoco has repeatedly informed Plaintiffs, Sunoco has not identified any ESI custodians in Puerto Rico. *See* N. Coppinger letter to N. Short dated Jan. 4, 2013; N. Coppinger letter to N. Short dated July 3, 2013. Sunoco has searched its general collection of MTBE-related ESI for documents responsive to the Puerto Rico Plaintiffs' discovery requests.

**BEVERIDGE & DIAMOND** PC

Tracey O'Reilly, Esq.
September 27, 2013
Page 4

documents that may be responsive to the requests served with the pending deposition notice or that were reviewed by Sunoco's 30(b)(6) designee, and Sunoco will produce those documents.

Plaintiffs' allegations that Sunoco has "entirely failed to produce any documents regarding its manufacture of gasoline in Puerto Rico" (O'Reilly Letter at 3) and that "Sunoco operated a gasoline refinery in Yabucoa up until the early 2000s" (*id.*) are entirely misguided and inaccurate or based on false premises.  No Sunoco entity manufactured or refined finished gasoline in Puerto Rico.  When Sunoco owned the Yabucoa facility, it was not a gasoline refinery but a fuel oils and lubricants refinery.  Sunoco did not manufacture, use or store MTBE at the facility, nor was MTBE present in any Sunoco products when they left the Yabucoa facility.  The fact that another entity may have converted the Yabucoa facility to a gasoline refinery after purchasing it from Sunoco does not "clearly show" (*id.*) that the Yabucoa facility was a gasoline refinery when Sunoco owned it.

Sunoco acknowledges, as noted in your letter, that certain documents produced by Sunoco indicate the presence of MTBE in a small number of shipments of gasoline that PRSOC may have received or sold at the Peerless Terminal in Guayanilla.  *Id.* at 4.  To the extent that some of Sunoco's early discovery responses in this action indicate that Puerto Rico Sun Oil Company did not sell gasoline containing MTBE, Sunoco will amend those responses.

<u>References to Prior MDL Productions</u>

Plaintiffs, for the first time in your letter, raise an objection to discovery responses served by Sunoco more than one year ago.  Specifically, Plaintiffs claim that Sunoco's "inadequate identification" of a set of its prior discovery responses served in the *County of Suffolk* matter, "including the lack of a specific date" has rendered Plaintiffs unable to locate these responses. *Id.* at 4.  This objection is entirely ill-founded.  Sunoco fully defined and identified the discovery responses at issue from the *Suffolk* matter – including by date – in the very responses it served on Plaintiffs one year ago that are cited in your letter.  *See* Sunoco's Answers and Objections to Plaintiffs' Fourth Set of Interrogatories and Requests for Production to Defendants (Aug. 30, 2012) at 5 (providing the full title and date of Sunoco's Supplemental Responses to Suffolk Plaintiffs' First Interrogatories and Document Requests (October 31, 2007)).

With respect to the Index of Sunoco's Supplemental Production of Documents from 2007, Sunoco declines Plaintiffs' invitation to more specifically correlate those documents with Plaintiffs' document requests for two main reasons:  (i) the index contains more than adequate specificity by identifying categories of documents by Bates range; and (ii) the documents at issue relate to MTBE generally, not to Puerto Rico issues specifically.  Plaintiffs have had their opportunity to take such MDL-wide discovery of Sunoco, and Sunoco will not agree to reopen depositions, reproduce documents, or otherwise engage in duplicative discovery.  Indeed, nearly all prior general liability discovery of Sunoco was taken by Miller, Axline & Sawyer.  As such, Plaintiffs are in at least as good a position as Sunoco to make any connections they desire

# EXHIBIT B

**SUN'S ID #5105**
**Detergent - Additized Gasoline**
**Conventional Gasoline:  This Product does not meet**
**the requirements for Reformulated Gasoline,**
**and may not be used in any Reformulated Gasoline Covered Area.**

```
    *** BILL OF LADING ***   IN CASE OF EMERGENCY CALL (787)-836-1280
DELIVERED TO: 001001            DELIVERED FROM: 01    READER # 02
IDEMITZU APOLLO                 PEERLESS REFINING
BOX 10672 CAPARRA STA           BO. TALLABOA,SECTOR PUNTILLA
SAN JUAN PR 00922               PENUELAS, PUERTO RICO 00624

CUSTOMER ACCOUNT:        8       ORDER NO.(S):     7282
IDEMITZU APOLLO                 DELIVERY DATE: 10/29/97    TIME: 10:52:14
SAN JUAN P R 00922              B-O-L NO.: 017511    DART LOAD NO.: 3062
BOX 10672 CAPARRA STA.          DRIVER : 000952   PABLO RIVERA 583 66 7532

VIA: IDEMITZU APOLLO

PRODUCT DESCRIPTION                                  GRAV   TEMP    NET   GROSS
===================================================  ====   ===== ====== ======
HM * GASOLINE 3 UN-1203 PGII REGULAR UNLEADED - 87 OCTANES - (R+M)/2
        IDEMITSU REGULAR 87 GASOLINE                 54.8 + 91.0   2939   3000

HM * GASOLINE 3 UN-1203 PGII REGULAR UNLEADED - 87 OCTANES - (R+M)/2
        IDEMITSU REGULAR 87 GASOLINE                 54.8 + 90.8   2939   3000

HM * GASOLINE 3 UN-1203 PGII PREMIUM UNLEADED - 91 OCTANES - (R+M)/2
        IDEMITSU PREMIUM 91 GASOLINE                 53.1 + 86.3   1966   2000

HM * GASOLINE 3 UN-1203 PGII PREMIUM UNLEADED - 91 OCTANES - (R+M)/2
        IDEMITSU PREMIUM 91 GASOLINE                 53.1 + 86.7   1966   2001
```

Confidential Materials Per 2004 MDL 1358 Order

SUN_PUERTO_0005286

# EXHIBIT C





Nessa Horewitch Coppinger
1350 I Street, N.W.
Suite 700
Washington, D.C. 20005-7202
Direct:(202) 789-6053
Fax:(202) 789-6190
ncoppinger@bdlaw.com

June 10, 2014

**VIA E-MAIL AND LNFS**

Duane C. Miller, Esq.
Miller, Axline & Sawyer
1050 Fulton Avenue, Ste. 100
Sacramento, CA 95825-4272

  Re:  Sunoco's Discovery Responses in *Puerto Rico* and *New Jersey*

Dear Duane:

  I write on behalf of Sunoco, Inc., Sunoco, Inc. (R&M), and Puerto Rico Sun Oil Company LLC ("PRSOC") (collectively, "Sunoco") in response to your letter dated June 6, 2014. In that letter you allege that Sunoco's CMO 4 response for the *Commonwealth of Puerto Rico, et al. v. Shell, et al.* ("the *Puerto Rico*" case), and potentially other discovery responses, is inaccurate because it fails to "disclose" that Sunoco sold MTBE to third parties. This allegation contains at least three key factual errors. These errors are particularly troubling given that you personally elicited testimony that explains how the allegations in your letter are incorrect, and that your letter combines numerous different issues in order to create an appearance of impropriety on Sunoco's part.

  First, the language cited from CMO 4 itself demonstrates the most fundamental error in Plaintiffs' allegations. The section of CMO 4 quoted relates to "manufacturers of neat MTBE" and requests information regarding sale of neat MTBE they manufactured. Sunoco's response clearly indicates that Sunoco, Inc. (R&M) did manufacture MTBE, but that "Sunoco, Inc. (R&M) used all of the MTBE it 'manufactured' …and did not sell such MTBE to third parties." The MTBE that Sunoco, Inc. (R&M) manufactured at the small-scale MTBE plant at the Marcus Hook refinery was used entirely at that refinery. Sunoco has made this statement clearly in numerous discovery responses throughout the MDL, and, indeed, David Tropp testified to this very fact the week before Plaintiffs' letter.[1] *See e.g.,* Sunoco's Responses to Plaintiffs' First Set

---

[1] Q. You mentioned that you started or helped with the start-up of the MTBE facility in Marcus Hook?
A. Yes.
Q. Do you recall whether any shipments were

# BEVERIDGE & DIAMOND pc

Duane C. Miller, Esq.
June 10, 2014
Page 2

of Interrogatories (*New Jersey*) at Response to Interrogatory No. 4 ("Sunoco, Inc. (R&M) did not sell MTBE manufactured at its Marcus Hook refinery to third-parties. All MTBE manufactured at Marcus Hook was blended into gasoline at the refinery.").

Plaintiffs' letter takes Sunoco's statement about the sale of MTBE that it manufactured and applies it to all MTBE. This is a blatant mischaracterization of Sunoco's response to CMO 4. Sunoco, Inc. (R&M) did not sell MTBE that it manufactured to third parties, but it did re-sell MTBE that it purchased to third parties.

Plaintiffs then add another mischaracterization by implying that the document attached to your letter shows a shipment by Sunoco of "more than 2,000,000 gallons of neat MTBE delivered to Phillips Puerto Rico Core, Inc…." *See* D. Miller Letter Dated June 6, 2014. Plaintiffs have persisted in making this implication despite two Sunoco witnesses (Dr. Debra Aron and David Tropp) testifying that the document does not show that Sunoco, Inc. (R&M) sold MTBE to Phillips Puerto Rico Core, Inc., and despite the contents of the document itself.

The document plainly shows that Sunoco, Inc. (R&M) sold MTBE to Phillips Chemical Company, based in Bartlesville, Oklahoma. CPCPR-072057. The "shipped to" location for that sale was Beaumont, Texas. *Id.* Another page in that document shows what appears to be an invoice from Phillips Chemical Company to Phillips Puerto Rico Core Inc. for sale of MTBE to Puerto Rico Core purchased from "Sun." CPCPR-072055. Finally, a third page in that document is a journal entry from Phillips 66 Company indicating a sale of MTBE to Puerto Rico Core that had been purchased from "Sun." CPCPR-072056.

Plaintiffs attempted to characterize this document as a sale of MTBE from Sunoco, Inc. (R&M) to Phillips Puerto Rico Core Inc. during the depositions of both David Tropp on May 28, 2014 and Dr. Debra Aron on May 27, 2014. Both witnesses testified that Plaintiffs' characterization was incorrect.

Mr. Tropp testified as follows:

Q.  So this appears to be a sale of MTBE
    from Sun or at least Sun Company, Inc. RM of more than

---

made from that facility to Puerto Rico with MTBE?
A.  My recollection is they did not ship
MTBE out of the facility by vessel. The MTBE produced
at the refinery was blended into the gasoline at that
refinery. I don't know of any MTBE shipments going out
of the refinery. I don't think that occurred.

Tropp Rough Tr. at 23:3-12 (May 28, 2014).

BEVERIDGE & DIAMOND PC

Duane C. Miller, Esq.
June 10, 2014
Page 3

> 2 million net gallons of MTBE for over $1.5 million to
> be sent to Puerto Rico core, correct?
> > MR. KRAININ:  Objection, objection,
> > misstates the record, misstates the document
> > and assumes facts.
> THE WITNESS:  No, it looks to me like
> > Sunoco sold it to Phillips Chemical Company
> > and it was in Beaumont, Texas.
> BY MR. CARDENAS:
> Q.   To be delivered to Core?
> > MR. KRAININ:  Objection, assumes facts.
> THE WITNESS:  No, this is to be
> > delivered to Phillips Chemical at Beaumont,
> > Texas is the way it looks to me.

Tropp Rough Tr. at 154:21-155-12 (May 28, 2014).  *See also id.* at 155: 13- 157:16 (including
testimony that "…my interpretation of this document Sun Company sold Phillips Chemical
Company, MTBE at Beaumont, Texas.  Phillips Chemical Company then sold it to Puerto Rico
Core…").  Likewise, Dr. Aron testified that:

> > Well, I don't think
> what you said about the document we were
> discussing before does what you have just
> described.
> > I've had a little bit more time to
> look at it over the break and what I
> understand it to be saying, just looking at
> it, and I'm referring now to Exhibit 12, is
> that Phillips chemical company shipped MTBE
> to Phillips chemical company in Texas.
> > So, there is this bill of lading,
> sorry, that Sunoco Sun company R&M sold MTBE
> to Phillips chemical company and shipped it
> to Texas.
> > And then it appears -- and so that
> I'm looking at the last page which is Bates
> stamped CPCPR 072057, and then it appears on
> this earlier Page 72055 that Phillips
> chemical company then sold that MTBE to
> Phillips Puerto Rico Core.
> > And that is identified here as the
> MTBE that was sold to Phillips chemical

BEVERIDGE & DIAMOND PC

Duane C. Miller, Esq.
June 10, 2014
Page 4

> company by Sun.
>       So, I don't think that this says, I
> mean I don't think it shows or says that
> Sunoco sold MTBE to Phillips Core in Puerto
> Rico.

Debra Aron Rough Tr. at 97:3-98:4 (May 27, 2014).  *See also id* at 101:17-20 ("…it appears to be an amount to be paid by Phillips Puerto Rico Core to Phillips chemical company.  Phillips chemical company appears to be the party selling the product."); 102:1-7 ("Yes, that is the way I read it that Sun Company Inc. R&M of Philadelphia sold product to Phillips chemical company Oklahoma which was shipped to Texas.  That purchaser Phillips chemical company of Oklahoma sold this produce to Phillips Puerto Rico Core in Puerto Rico.").

Plaintiffs add one final mischaracterization by claiming that the MTBE described above was "used to manufacture at least 20,000,000 to 50,000,000 gallons of MTBE gasoline."  That statement is without any basis in either the document or the witnesses' testimony.  These mischaracterizations culminate in Plaintiffs' conclusion that Sunoco failed "to disclose information concerning neat MTBE sales in Puerto Rico…."  That statement is entirely without merit and is based on the series of misleading implications and mischaracterizations outlined above.

For all of these reasons, Sunoco declines to amend its responses to CMO 4 for the *Puerto Rico* case.  Sunoco's current responses are accurate.  Sunoco will review its responses to discovery in the *State of New Jersey* action and supplement if appropriate, but currently Sunoco has not identified any basis to do so.  If Plaintiffs have some basis other than the document attached to your letter to believe that Sunoco's discovery responses are deficient, Sunoco will meet and confer with Plaintiffs to resolve the issue.  Plaintiffs' representations regarding the document included at Attachment 1 are, at minimum, misleading.  If Plaintiffs represent to the Court that this document shows a shipment by Sunoco, Inc. (R&M) to Phillips Puerto Rico Core, Inc., Sunoco reserves its right to move for sanctions.

Very truly yours,

Nessa Horewitch Coppinger

# EXHIBIT D





Nessa Horewitch Coppinger
1350 I Street, N.W.
Suite 700
Washington, D.C. 20005-7202
Direct:(202) 789-6053
Fax:(202) 789-6190
ncoppinger@bdlaw.com

July 11, 2014

**VIA E-MAIL AND LNFS**

Duane C. Miller, Esq.
Miller & Axline, P.C.
1050 Fulton Avenue, Ste. 100
Sacramento, CA 95825-4272

      Re:    *Commonwealth of Puerto Rico v. Shell Oil Co., et al.*
                   Plaintiffs' Request for Information Regarding Sunoco's MTBE Sales

Dear Duane:

      I write to follow up on my letter to you dated June 27, 2014 regarding Sunoco's sales of neat MTBE in connection with the *Puerto Rico* matter. As I noted in that letter, Sunoco, Inc. and Puerto Rico Sun Oil Company LLC do not have any information regarding sales of neat MTBE. I can also confirm, again, that Sunoco, Inc. (R&M) does not have any information indicating any sales of neat MTBE in Puerto Rico.

      As I indicated in my June 27th letter, Sunoco does not believe its discovery obligations, either in response to CMO 4, or in response to other discovery served by Plaintiffs, require disclosure of any additional information regarding sales of MTBE outside of Puerto Rico and where Sunoco does not have information regarding the ultimate destination of the MTBE once blended into gasoline by another party. Nonetheless, Sunoco, Inc. (R&M) reviewed the discovery responses of other Defendants in the *Puerto Rico I* case to identify refineries outside Puerto Rico that supplied gasoline containing MTBE to the island. Sunoco, Inc. (R&M) did not have any sales of neat MTBE to CITGO or HOVIC/HOVENSA at all, and the only sale of neat MTBE to Exxon Company, USA was years after the only shipment of gasoline containing MTBE that Exxon Company, USA indicated it had supplied to Puerto Rico. Sunoco, Inc. (R&M) has not identified any other relevant refineries based on Defendants' discovery responses.

      In short, Sunoco does not have any information indicating that it sold andy neat MTBE directly to Puerto Rico, and Sunoco, Inc. (R&M) has not identified any sales of neat MTBE to refineries outside Puerto Rico that supplied gasoline containing MTBE to the island. Sunoco

BEVERIDGE & DIAMOND PC

Duane C. Miller, Esq.
July 11, 2014
Page 2

believes it has gone well beyond what was required by the applicable CMOs and discovery
requests and therefore considers this issue to be resolved.  If Plaintiffs disagree, please let me
know promptly.

   I trust that there will be no further delays in providing Sunoco with Plaintiffs' responses
to the Sunoco-specific Requests for Admission served more than two months ago.  I look
forward to receiving your responses shortly.

       Very truly yours,

       Nessa Horewitch Coppinger

cc: All Counsel of Record (via LNFS)

# **<u>EXHIBIT E</u>**

DM_US 35481469-1.T13305.0010

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In Re: Methyl Tertiary Butyl Ether
("MTBE") Products Liability Litigation

Master File No. 1:00 – 1898
MDL 1358 (SAS): M21-88

This Document Relates To:

*Commonwealth of Puerto Rico, et al. v. Shell
Oil Co., et al.*, No. 07 CV 10470

SHIRA A. SCHEINDLIN, U.S.D.J.:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/15/13

[PROPOSED] CASE MANAGEMENT ORDER NO. 112

(EXPERT DISCOVERY PROTOCOL)

With respect to testifying experts in this litigation:

   I.  The parties shall produce the required expert reliance materials (hereinafter, the "Reliance Materials") no later than five business days after the deadline to serve each relevant expert report pursuant to Case Management Order entered September 30, 2013. The Reliance Materials to be produced shall include all files, documents, texts and underlying data or manipulations of such data reviewed or relied upon by that expert in forming the basis for his or her opinion, including all computer software programs, models, computer simulations on which the expert's opinions are based, and work papers. Any additional reliance materials generated or first reviewed and relied upon by the expert subsequent to the initial production of reliance materials but prior to the deposition shall be produced promptly and no later than 48 hours before the commencement of the deposition. Reliance materials that are publicly available and have been cited in full by the expert need not be produced absent a specific request.

   II.  With respect to experts who rely on computer-based modeling, the following illustrate the nature or content of the modeling-related Reliance Materials to be produced:

   A.  All electronic executable copies and operating instructions for modeling programs and pre- and post-processor programs that are not public domain models and cannot reasonably be purchased by the requesting party. In all cases, the requesting party shall be responsible for obtaining any necessary licenses.

1

V.      Nothing in this Protocol may be used by any party to establish the relevance or lack of relevance of any materials or information referenced herein.

VI.     The parties shall meet and confer by February 1, 2014 for the purpose of addressing and formulating a plan for the scheduling, duration, location and other details regarding the proposed depositions of the parties' designated experts. The parties shall use best efforts to finalize a schedule for the depositions of the parties' non-site-specific experts by not later than March 10, 2014 and site-specific experts by not later than April 21, 2014. To the extent a non-site-specific expert also will provide site-specific testimony or opinion, such experts may be scheduled in accordance with the site-specific schedule contained in this paragraph. To the extent not already scheduled, the parties will use best efforts to finalize the schedule for deposition of Rule 26(a)(2)(C) witnesses by not later than May 2, 2014.

VII.    Requests for Production contained in expert deposition notices shall be limited to:

   A.     Materials required to be produced by Rule 26(a)(2)(B), to the extent not already produced;

   B.     Reliance Materials, as defined herein and to the extent not already produced;

   C.     Documents concerning retention and compensation in the above-captioned action;

   D.     Articles, studies or reports authored by the expert that relate to the subject matter of the expert's opinion(s) in the above-captioned action, MTBE, TBA and/or ethanol, to the extent published within the last ten years;

   E.     Expert reports and transcripts of deposition and/or trial testimony provided by the expert in any civil lawsuit or administrative matter that relate to the subject matter of the expert's opinion(s) in the above-captioned action, MTBE, TBA and/or ethanol, to the extent provided within the last four years;

   F.     Hearing transcripts, orders, decisions or other rulings limiting or barring all or part of the expert's prior testimony or opinions that relate to the subject matter of the expert's opinion(s) in the above-captioned action, MTBE, TBA and/or ethanol, to the extent provided within the last four years; and

   G.     To the extent permitted by Rule 26(b)(4)(C), communications between the expert and counsel for any party in the above-captioned action that: (i) relate to compensation in the above-captioned action; (ii) identify facts or data that counsel provided and that the expert considered in forming his/her opinions; and (iii) identify assumptions that counsel provided and that the expert relied on in informing his/her opinions.

SO ORDERED.

_____
Hon. Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York

November 15, 2013

# EXHIBIT F


E-SERVICE
55467543
May 19 2014
02:32PM
File & ServeXpress

# King & Spalding

King & Spalding LLP
1100 Louisiana Street, Suite 4000
Houston, Texas 77002-5213
www.kslaw.com

James J. Maher
Counsel
Direct Dial: 713/276-7403
Direct Fax: 713/751-3290
jmaher@kslaw.com

May 19, 2014

*VIA LNFS*

Michael Axline
Miller & Axline
1050 Fulton Avenue, Suite 100
Sacramento, California 95825

> **Re:** ***In Re MTBE Litigation*, MDL 1358; *Commonwealth of Puerto Rico, et al.***
> ***v. Shell Oil Co., et al.*; 07 CIV. 10470 (SAS)**

Dear Mike:

This letter responds to your May 12, 2014 letter (incorrectly dated March 12, 2014) to Mr. Charles Correll and Ms. Lisa Gerson requesting documents you describe as missing from John Connor's and Peter Zeeb's reliance materials. You request that we immediately produce "all the data, spreadsheets, databases, and analysis used to produce":

- Long Term Behavior of MTBE Plumes of Exceptional Length, McDade, et al. submitted for publication.
- Progress in Remediation of Groundwater at Petroleum Sites in California, McHugh, et al. (2013).
- Use of Long-Term Monitoring Data to Evaluate Benzene, MTBE, and TBA Plum Behavior in Groundwater at Retail Gasoline Site, Kamath, et al. (2012).

Briefly, there are no documents missing from the reliance materials produced in connection with Mr. Connor's and Mr. Zeeb's expert reports. The "data, spreadsheets, databases and analysis used" by McDade *et al*, McHugh *et al* and Kamath *et al* to write their articles are not reliance materials for the Puerto Rico expert reports submitted by Mr. Connor and Mr. Zeeb. Rather, Mr. Connor's and Mr. Zeeb's reliance materials are the articles written by McDade *et al*, McHugh *et al* and Kamath *et al*., and those articles have been produced.

As you know, "Reliance Materials" is defined in CMO 112 and includes "all files, documents, texts and underlying data or manipulations of such data <u>reviewed or relied upon by that expert in forming the basis for his or her opinion</u>" (emphasis added). CMO 112 does not

Mike Axline
May 19, 2014
Page 2

include as Reliance Materials "data used to produce certain articles cited in their expert reports". Consistent with the foregoing, Plaintiffs' experts did not produce the underlying data used in articles that they referenced as support for their opinions and conclusions. Nor is there a requirement that any expert obtain underlying data for cited articles.

Mr. Connor relied on the articles written by McHugh *et al* and Kamath *et al* as support for certain opinions in his report. Mr. Connor did not review or rely upon the "files, documents, texts and underlying data or manipulations of such data" used by McHugh *et al* or Kamath *et al*. Mr. Connor did not even reference the McDade *et al* article. Rather, he includes in his expert report selected references also used by McDade *et al*. Those selected references are listed in Table 3 of the Connor/Daus Puerto Rico report, and those references were produced to Plaintiffs as part of Connor/Daus's reliance materials.

Mr. Zeeb relied on the articles written by McDade *et al* and Kamath *et al* as support for certain opinions in his report. Mr. Zeeb did not review or rely upon the "files, documents, texts and underlying data or manipulations of such data" used by McDade *et al* or Kamath *et al*. Mr. Mr. Zeeb did not rely on the McHugh *et al* article. The McDade *et al* and Kamath *et al* articles were produced to Plaintiffs as part of Mr. Zeeb's reliance materials.

In short, Defendants have produced the reliance materials that CMO 112 requires. Further, to clear up any lingering confusion, a supplemental Connor/Daus report is being served today which includes new Tables 1.A, 1.B and 1.C.

Please let me know if you have any questions.

Very truly yours,

James J. Maher

cc: Ms. Lisa Gerson

# **<u>EXHIBIT G</u>**

E-SERVICE
55523863
May 30 2014
05:09PM
File & ServeXpress

# King & Spalding

King & Spalding LLP
1100 Louisiana Street, Suite 4000
Houston, Texas 77002-5213
www.kslaw.com

James J. Maher
Counsel
Direct Dial: 713/276-7403
Direct Fax: 713/751-3290
jmaher@kslaw.com

May 30, 2014

*VIA LNFS*

Michael Axline
Miller & Axline
1050 Fulton Avenue, Suite 100
Sacramento, California 95825

> **Re:** *In Re MTBE Litigation*, **MDL 1358;** *Commonwealth of Puerto Rico, et al.*
> *v. Shell Oil Co., et al.*; **07 CIV. 10470 (SAS)**

Dear Mike:

This letter responds to your May 22, 2014 voice mail and your May 20, 2014 reply to my May 19, 2014 letter regarding documents you describe as missing from John Connor's and Peter Zeeb's reliance materials. This letter also follows our discussion on May 24, 2014 regarding these issues and the compromise agreement I offered with respect thereto. I have been waiting on your return call which I expected on May 25 or May 26, 2014. Today, I understand that Mr. Miller raised this issue at the deposition of Ms. Barbara Mickelson, and I am, therefore, writing this letter to memorialize my prior offer of compromise and to request that you call me on Monday, June 2, 2014 to discuss.

Briefly, Plaintiffs have requested that we produce "all the data, spreadsheets, databases, and analysis used to produce":

- Long Term Behavior of MTBE Plumes of Exceptional Length, McDade, et al. submitted for publication.
- Progress in Remediation of Groundwater at Petroleum Sites in California, McHugh, et al. (2013).
- Use of Long-Term Monitoring Data to Evaluate Benzene, MTBE, and TBA Plum Behavior in Groundwater at Retail Gasoline Site, Kamath, et al. (2012).

I have informed you that, as I stated in my May 19, 2014 letter, Mr. Connor did not even make reference to the McDade article. It is not published. Neither the article nor the underlying data is part of Mr. Connor's reliance materials. We have no obligation to produce it.

Mike Axline
May 30, 2014
Page 2

As for the Kamath article, the fact that Mr. Connor cites to a peer-reviewed and published article, like Kamath, as support for his opinions in his Puerto Rico expert report does not make the underlying data part of his reliance materials under either Federal Rule 26 or CMO 112. Neither Rule 26 nor CMO 112 make any special exception for articles that are authored or co-authored by the expert. The question is whether the underlying data was relied upon for the opinions of the expert's report in the lawsuit at issue. I have told you that Mr. Connor did not rely on the underlying data to prepare his Puerto Rico report.

Your firm previously requested the underlying data for the Kamath article in the Orange County case. You are, therefore, aware that the underlying data that you seek is confidential, and you are aware that Mr. Connor simply has no authority to produce it.

I note that Dr. Graham Fogg cites to a number of articles that he authored or co-authored as support for his opinions in this case. Dr. Fogg also cites to both McHugh and McDade as support for his opinions regarding plume stability and migration. Plaintiffs did not produce "all the data, spreadsheets, databases, and analysis used to produce" Dr. Fogg's articles, and Plaintiffs also did not produce the data for McHugh and McDade. Under Federal Rule 26 and CMO 112, you have no obligation to do so unless Dr. Fogg relied on the data for his opinions in his Puerto Rico report. We presume that he did not or you would have produced them with his reliance materials. We presume that he relied on the articles.

Further, Plaintiffs have no obligation to produce the data from Dr. Fogg's authored or co-authored articles simply because he has the data "readily available." That is not a requirement of the Rule or the Court's order. And, similarly, Mr. Connor has no obligation to produce the underlying data from his authored or co-authored reports, like the McHugh article, simply because it is "readily available." The issue is, as stated above, a question a reliance.

With respect to Mr. Zeeb, he did not rely on the McHugh article. The McDade and Kamath articles were produced to Plaintiffs as part of Mr. Zeeb's reliance materials. Mr. Zeeb does not have "all the data, spreadsheets, databases, and analysis used to produce" those two articles. Because he does not have that data, he could not and did not rely upon it.

As we discussed during our call on May 24, 2014, however, in order to resolve this issue, we have offered a compromise. If you will agree to drop your request to us for the Kamath data, we will agree to produce the Geotracker data used in the McHugh article. As Mr. Miller only raised the McHugh data today, I assume you are agreeable to this. Please let me know if you will agree or call me at your earliest convenience so that we may continue our discussion.

Very truly yours,

James J. Maher

JM/