UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

---

Master File No. 1:00 - 1898
MDL 1358 (SAS)
M21-88

**This Document Relates to:**

*New Jersey Department of Environmental*
*Protection, et al. v. Atlantic Richfield Co., et al.*
No. 1:08-cv-00312-SAS

---

## CONFIDENTIAL
## FILED UNDER SEAL BY ORDER OF THE COURT

### PLAINTIFFS' REPLY MEMORANDUM
### IN SUPPORT OF
### MOTION TO ENFORCE WAIVER AND DECLASSIFICATION PROVISIONS OF
### HAMNER PROTECTIVE ORDER

### [REDACTED VERSION]

## I.   <u>INTRODUCTION.</u>

Hamner's Opposition to Plaintiffs' Motion to Enforce Waiver and Declassification

Provisions of Protective Order is without merit.

Plaintiffs filed their Motion pursuant to Sections 6 and 8 of the Order.  Section 6

addresses documents used as exhibits in depositions.  This Section required Hamner to take

specific steps to maintain the confidentiality of Data used as a deposition exhibit.  Hamner did

not take those steps with respect to exhibits to the deposition of Dr. Dodd.  *See* Motion at 13.

Hamner argues that it was not obligated to complete Section 6's procedures with respect

to deposition exhibits already stamped "confidential."  Hamner Opp. at 14-15 .  This argument

would render Section 6 of that Order meaningless.  Pursuant to Section 3 of the Order, <u>all</u> Data

produced by Hamner was to be treated as "confidential" initially.  Motion, Ex. 1 at 2.  Section 6

imposed <u>additional</u> burdens on Hamner to <u>maintain</u> the confidentiality of documents used as

deposition exhibits.  *Id.* at 2.  Hamner does not dispute that it failed to satisfy Section 6's

requirements.

Section 8 provides that Plaintiffs "may request from the MDL 1358 Court a ruling that a

Document or deposition testimony is not entitled to continued protection under this Order."

Motion, Ex. 1, at 4.  During his May 9, 2014, post-Protective Order deposition, Hamner Study

team member Eric Stine testified that <u>all</u> Hamner documents and Data should be made available

to regulatory agencies, and that the Hamner Study team had "absolutely nothing to hide" and

"certainly" would provide regulatory agencies with "all possible documents and records related

to the study."  Declaration of Bryan Barnhart in Support of Plaintiffs' Motion to Enforce

Protective Orders' Declassification Provisions ("**Barnhart Motion Decl.**"), Ex. 2 (Stine Depo. at

1

88:1-9).  Plaintiffs subsequently asked Hamner – pursuant to Section 8 – to voluntarily withdraw its confidentiality claims.  Declaration of Bryan Barnhart in Support of Plaintiffs' Reply Memorandum in Support of Motion to Enforce Protective Orders' Declassification Provisions ("**Barnhart Reply Decl.**"), Ex. 1.  When Hamner declined, Plaintiffs filed this Motion.

Hamner's Opposition does not deny that there are "important or substantial government interest unrelated to the suppression of expression" with respect to the "highly relevant" Hamner Data.  *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 269 F.R.D. 360, 364 (S.D.N.Y. 2010); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 (1984).  Indeed, Hamner does not rebut any of Plaintiffs' evidence demonstrating that the Hamner Data is directly relevant to the work of regulatory authorities.

██████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████████████

█████████████████████████████████

█████████████████████████████████

█████████████████████████████████

██████████████████████████████████

███████████████████████████████

█████████████████████████████

In response, Hamner incorrectly asserts that Plaintiffs seek to "step into the shoes" of EPA. Opp. at 4. Plaintiffs, however, are themselves governmental agencies charged with protecting the public health. Declassifying the Hamner Data will advance the work of all the public health agencies, including plaintiffs and the EPA, and to "protect[] groundwater used to supply the public with drinking water." *In re MTBE*, 269 F.R.D. at 364.

Hamner also argues that "Plaintiffs attempt to skirt the agreed-upon declassification procedure and seek to dissolve the Protective Order." Opp. at 1. To the contrary, Plaintiffs seek to enforce Sections 6 and 8 of the Protective Order. *See* Motion at 11. "Plaintiffs have complied with the [Order's] procedural requirements," including all time limits and specificity requirements. Motion at 12; *see also* Barnhart Reply Decl., Ex. 1.

The information that Plaintiffs seek to declassify pursuant to the provisions of the Protective Order will provide regulatory agencies with critical insight on the human health risks posed by MTBE. Nothing in Hamner's Opposition disputes or rebuts this fundamental fact.

## II. ARGUMENT.

### A. Plaintiffs' Motion Will Benefit All Public-Health Agencies, Including EPA And Plaintiffs.

Public consideration of the Hamner Data will advance the interests of all regulatory authorities – a category that includes Plaintiffs – in protecting the public's health, safety, and

---

[1] As Plaintiffs' Motion papers proved, Dr. Stine did not testify that only "The Hamner Study Records" should "be subjected to third-party review." Opp. at 9, fn. 3; Motion at 4. Dr. Stine testified that the Hamner Study Team "certainly" would provide regulatory agencies with "all possible documents and records related to the study." These documents and records include Data that is quoted in Plaintiffs' Motion. Barnhart Motion Decl., Ex. 3 at 87:18-88:9.

3

welfare.  Motion at 15-16.  Plaintiffs are not private litigants pressing "an individual agenda."

Opp. at 7.  Nor are Plaintiffs "assert[ing] any arguments or positions on behalf of the EPA."

Opp. at 4, 16 fn. 6.  Rather, Plaintiffs are themselves government agencies and public servants

charged with safeguarding the public's drinking-water supply.

Hamner does not deny that "the public . . . will benefit from declassifying [the Hamner]

Data." Motion at 3.  Hamner expresses a general concern for its own "professional and business

interests," but does not provide any specific reason why other public-health agencies should not

be provided with the information Hamner has produced to Plaintiffs in the context of this

litigation.  Opp. at 9.  Hamner concedes that it took three years to produce its Data to Plaintiffs.

Opp. At 5.  Hamner does not deny that "by slowing the EPA's ultimate reaction to the Hamner

Data, the Hamner Parties continue to risk the health of the water-drinking public."  Motion at

20.[2]

**B.**   **Hamner Did Not Take The Steps Required By Section 6 Of The Protective Order To Maintain The Confidentiality Of Documents Used As Deposition Exhibits.**

Hamner does not rebut Plaintiffs' showing that Hamner failed to take the steps required

by Section 6 to maintain the confidentiality of documents used as exhibits at depositions.  Rather,

Hamner argues that it was not required to comply with Section 6 because the deposition exhibits

had previously been stamped "confidential."  Opp. at 14.  The "HAMNER-CONFIDENTIAL"

stamps that were affixed at the time of production, however, were pursuant to Section 3 of the

---

[2]   Hamner's Opposition does not give any reason to believe that Hamner would voluntarily provide regulatory agencies with any Hamner Data beyond that which it has now agreed to declassify in response to Plaintiffs' Motion.  Hamner also does not provide any evidence that any non-MDL public-health agency knows to ask for Data beyond the "Declassified Documents."

Protective Order.  Motion, Exh. 1, at 2 and 3.  Section 3 authorized Hamner to designate as confidential <u>all</u> "Documents, CDs, and/or DVDs" that it produced.  *See id.* at 2.

Section 6 provides that, if a document is used in a deposition, the parties and deponent have 30 days <u>after</u> the deposition to designate pages of the transcript or exhibit thereto as confidential.  *Id.* at 3.  If there is a dispute about such a designation, any party could seek a ruling from the Court.  *Id.*  Nothing in the Protective Order suggests that Hamner's Section 3 stamps excused Hamner's failure to comply with Section 6.

Hamner's interpretation of the Protective Order would render Section 6 surplusage. *Garza v. Marine Transport Lines, Inc.*, 861 F.2d 23, 27 (2nd Cir. 1988) (an interpretation of a contract that has "the effect of rendering at least one clause superfluous or meaningless ... is not preferred and will be avoided if possible").  If marking a document as confidential prior to a deposition pursuant to Section 3 also satisfied Section 6's requirements for maintaining the confidentiality of documents used as deposition exhibits, then there would not have been any reason for the parties to include Section 6 in the Protective Order in the first place.

Hamner should not be heard to complain that it would "make[] no sense" for this Court to enforce the procedures that Sections 3 and 6 unambiguously require.  Opp. at 15.  Hamner negotiated and stipulated to the Protective Order.  *See* Opp. at 11.  Plaintiffs are "entitled to the benefit of [their] bargain; namely, to rely upon the terms of the stipulated protective order," including those terms that govern the declassification of Hamner Data.[3]  *See* Opp. at 11; *see also*

---

[3]  Hamner is bound by Section 6 whether it makes sense or not.  Section 6, however, makes perfect sense in the context of the Protective Order.  Section 3 of the Order authorized Hamner to make initial "blanket" claims of confidentiality to facilitate production of large volumes of documents without having to review each document to determine whether it was

(continued...)

5

*LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2nd Cir. 2005) (a "contract 'should be construed as to give full meaning and effect to all of its provisions'").

It is undisputed that Hamner did not comply with Section 6's requirements as to the Hamner Data that are exhibits to Dr. Dodd's deposition transcripts.   Plaintiffs respectfully request that the Court find that those exhibits have been declassified under Section 6's plain language.

### C.   All Of The Hamner Data Should Be Declassified Under Section 8 Of The Protective Order.

Hamner argues that Plaintiffs "made no effort to follow the agreed-upon procedure to declassify documents as set forth in Section 8 of the Protective Order."  Opp. at 8.  That is not true.  Plaintiffs, in an email entitled "Hamner Protective Order – Section 8 Request," raised seven specific "challenges to [Hamner's] claim" that the Hamner Data is confidential.  Barnhart Reply Decl., Ex. 1.  Hamner gave a blanket denial.  *Id.*, Ex. 3.  Hamner has now, in response to Plaintiffs' Motion, belatedly agreed that some of the Data should not be treated as confidential, while arbitrarily insisting that information most useful to public-health agencies continue to be withheld as confidential.  Public-health agencies, however, should be allowed to decide for themselves which Hamner documents are relevant to the health risks posed by MTBE.

### 1.   Hamner Has Not Overcome The "Presumption Of Admissibility" That Applies To The Hamner Data.

Hamner – as the party asserting confidentiality – bears the burden to prove that some

---

[3](...continued)
truly confidential.  Sections 6 of the Order, however, required Hamner to make specific confidentiality determinations as to Data that the parties considered important enough to make exhibits to deposition transcripts.  Opp. at 1.

"important or substantial government interest unrelated to the suppression of expression"

overcomes the "presumption of admissibility" that governs its "highly relevant" Hamner Data.

*In re MTBE*, 269 F.R.D. at 364; *Seattle Times Co.*, 467 U.S. 20 at 32, 37; *Fosamax*, No. 06 Civ.

1789, 2009 WL 2395899 at *2.  While Section 3 of the Order authorized Hamner to assert

blanket claims of confidentiality in order to speed production of a large volume of information,

this in no way shifted the burden to Plaintiffs to disprove confidentiality when acting pursuant to

Sections 6 and 8.

Hamner cites a series of cases for the proposition that when there is a protective order the

burden can be shifted to the party seeking disclosure.  Opp. at 11-12.  These cases, however,

involved attempts to modify or dissolve protective orders, not efforts such as those of Plaintiffs

here to enforce specific provisions of the Order providing for declassification of documents.

Hamner cites to *Fosamax, supra*, but does not submit any arguments or evidence to rebut

the detailed showing in Plaintiffs' Motion that the Hamner "Data is not the type of data that the

*Fosamax* Court would treat as confidential."  Motion at 18.  Hamner, citing the declaration of

Darol Dodd, argues that information "maintained as confidential" by Hamner includes

documents which are "fundamental to the robust exchange of ideas in the scientific process."

Opp at 10.  Hamner, however, does not point to a single document that fits that description.  Opp.

at 10.  Hamner does not provide any evidence that the Hamner Study team actually expected their

work to remain confidential.  Hamner does not attempt to establish that it is an "independent"

research institution.  Hamner does not deny that every single participant in the Study, including

the so-called "advisory board," was paid by defendants Shell, Chevron and ExxonMobil.  *See*

Motion at 19.  ████████████████████████████████████████████



Because Hamner has not carried its burden to prove that its Data actually is confidential, the Hamner Data should be declassified so that it can be considered by public-health agencies.

### 2.   Plaintiffs Complied With Section 8's Procedural Requirements.

Plaintiffs "complied with the provisions' procedural requirements" before filing their Motion. Motion at 12; Barnhart Reply Decl., Ex. 1; Barnhart Motion Decl., Ex. 1. On June 13, 2014, Plaintiffs sent a formal Section 8(a) notification to Hamner's counsel, raising seven detailed challenges to Hamner's confidentiality designations. Barnhart Decl., Ex. 1. On June 17, 2014, Plaintiffs summarized its challenges in a notification letter to all defense counsel. *Id.* Plaintiffs also provided a copy of its Section 8 notification to Liaison Counsel. *Id.* In all of these communications, Plaintiffs made it clear that their challenges extend to all of the Hamner Data. It therefore is not true that "Plaintiffs' Motion does not contest" Hamner's attempt to keep some of the Hamner Data secret. Opp. at 1.

Subsequent meet-and-confer efforts reached an impasse on June 30, 2014. Barnhart Motion Decl., Ex. 1. Plaintiffs filed their Motion on July 2, well before Section 8(d)'s 10-day deadline. *Id.* These procedures were all that Section 8 required. Section 8 did not set a deadline

8

for confidentiality challenges. *See* Opp. at 1. Nor did Section 8 require Plaintiffs "to identify the specific document or documents at issue." *See* Opposition at 12. Instead, the Order expressly authorizes Plaintiffs to raise a wholesale confidentiality challenge to "the information produced in this litigation."[4]

Hamner is wrong, therefore, when it asserts that Plaintiffs seek to "skirt" Section 8's procedural requirements. Plaintiffs scrupulously complied with Section 8's requirements, and now seek to have the Hamner Data declassified by the Court pursuant to Section 8's terms.[5]

### 3.   Public-Health Agencies Should Decide For Themselves Which Hamner Data Are Most Relevant To Their Analyses Of The Hamner Study's Reported Findings.

Plaintiffs welcome Hamner's concession that eight percent of the Hamner Data – approximately 80,000 pages out of over 1,000,000 – "are no longer confidential and may be declassified."[6] Opp. at 9. For at least two reasons, however, Hamner's "Declassified Documents" are not sufficient.

First, it simply is not true that Hamner's "Declassified Documents" include "all data relied upon in the compilation and publication of [the] MTBE Study Report." Opposition at 10.

---

[4] The Court rejected this same "specificity" argument when ExxonMobil raised it at the pre-Motion hearing: "Mr. Axline argues all million pages go the EPA. That's specific. . . ." Mullins Decl. In Support of EPL Opposition, Ex. B, Tr. at 41:10-12.

[5] In April, 2014, Plaintiffs did ask Hamner's counsel to stipulate to dissolve the Protective Order. Barnhart Reply Decl., Ex. 3. Hamner refused, so Plaintiffs proceeded under Section 8 instead.

[6] Plaintiffs met and conferred with Hamner for two months, attempting to narrow this Motion. Hamner never identified a single document it was willing to declassify. Barnhart Reply Decl., Ex. 1, 3; Barnhart Motion Decl., Ex. 1.

9

Second, Hamner's "Declassified Documents" do not include the Hamner Data that public-health regulators most need to see – i.e., the Data which the Hamner Study team chose <u>not</u> to disclose or discuss.  Plaintiffs agree with Hamner that the Study Data must be reviewed in context, rather than in "an isolated and haphazard manner."  Opposition at 7.  That is why Plaintiffs seek to declassify <u>all</u> Study Data.  To fully evaluate the Study "in accordance with an established scientific process," public-health agencies need access to all of the Hamner Data.  *Id.* Those agencies can then determine which Data they think is most relevant, rather than Hamner making that decision unilaterally and in its own self-interest.

III.   <u>CONCLUSION.</u>

For the foregoing reasons, Plaintiffs respectfully request that their Motion to enforce waiver and declassification provisions of the Protective Order be granted.

Dated: August 20, 2014

MICHAEL AXLINE, State Bar # 229840
Attorneys for Plaintiffs
Miller & Axline
A Professional Corporation
1050 Fulton Avenue, Suite 100
Sacramento, CA  95825-4225
Telephone:  (916) 488-6688
Facsimile:  (916) 488-4288

1

**PROOF OF SERVICE VIA LEXISNEXIS FILE & SERVE**
2
*New Jersey Department of Environmental Protection, et al. v. Atlantic Richfield Co., et al.*
United States District Court, Southern District of New York, Case No. 08 Civ. 00312 (SAS)

3
     I, the undersigned, declare that I am, and was at the time of service of the paper(s) herein
referred to, over the age of 18 years and not a party to this action.  My business address is 1050
4
Fulton Avenue, Suite 100, Sacramento, CA  95825-4225.

5
     On the date below, I served the following document on all counsel in this action
electronically through LexisNexis File & Serve:
6

7
**[REDACTED] PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION
TO ENFORCE WAIVER AND DECLASSIFICATION PROVISIONS OF HAMNER
PROTECTIVE ORDER**
8

9
     I declare under penalty of perjury under the laws of the United States of America and the
State of California that the foregoing is true and correct.

10
     Executed on August 20,  2014, at Sacramento, California.

11

12
                            *Kathy Herron*
KATHY HERRON

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28