UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation | Master File No. 1:00 - 1898 MDL 1358 (SAS) M21-88 |
| This Document Relates to: *New Jersey Department of Environmental Protection, et al. v. Atlantic Richfield Co., et al.* No. 1:08-cv-00312-SAS | |

PLAINTIFFS' REPLY MEMORANDUM
IN SUPPORT OF
MOTION TO ENFORCE WAIVER AND DECLASSIFICATION PROVISIONS IN
EXPERIMENTAL PATHOLOGY LABORATORIES, INC.'S
PROTECTIVE ORDER

I.  **INTRODUCTION.**

Experimental Pathology Laboratories, Inc.'s (EPL's) Opposition to Plaintiff's Motion to Enforce Waiver and Declassification Provisions of Protective Orders is without merit. EPL both incorporates and duplicates many of the arguments made in the Hamner Institute's separate brief. Plaintiffs explain in the opposition to the Hamner Brief why these arguments have no merit, and plaintiffs accordingly incorporate by reference their reply to Hamner's separate brief.

II.  **ARGUMENT.**

  A.  **This Court Should Declassify All Of The EPL Documents Because EPL Does Not Carry Its Burden Under Section II.K. Of The Protective Order.**

This Court should declassify all of the EPL Documents under Section K of the Protective Order. Motion at 15. Plaintiffs "complied with the [Section K's] procedural requirements" before filing their Motion. Motion at 12; Declaration of Bryan Barnhart in Support of Plaintiffs' Reply Memorandum in Support of Motion to Enforce Protective Orders' Declassification Provisions ("**Barnhart Reply Decl.**"), Ex. 4, 5.

Under Section K, EPL bears the burden to prove that its Documents "are or contain a trade secret or other confidential research, development, or commercial information as those terms are used in Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure." Motion, Ex. 2 at 2, 8-9. EPL does not carry this burden.

  1.  **Hamner Does Not Carry Its Burden To Prove That The EPL Documents Should Remain Confidential.**

The Protective Order expressly places the burden on EPL to prove that its Documents should remain confidential. Plaintiffs challenge EPL's confidentiality claims under Section K of the Protective Order. Motion at 15. Section K states: "This Order does not affect the burden of

1

proof which remains with the party seeking the confidential designation." EPL cannot escape its Section K burden by mischaracterizing Plaintiffs' Motion as an attempt to "lift the Protective Order." Opp. at 4. Plaintiffs ask the Court to enforce the Protective Order, not to lift it.

EPL's Section K burden is a heavy one. To keep its Documents secret, EPL had to prove that some "important or substantial government interest unrelated to the suppression of expression" overcomes the "presumption of admissibility" that applies to its highly relevant Data. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32, 37 (1984); *In re Fosamax Products Liability Litigation*, No. 06 Civ. 1789, 2009 WL 2395899, *2.

EPL does not carry this burden. EPL has submitted no evidence – none – to support a claim that any EPL Documents actually fall within the Protective Order's definition of "Confidential Document(s), Information, or Other Things." Motion, Ex. 2 at 2, 8. Although it relies heavily on *Fosamax*, EPL submits no evidence to show that its Data falls within *Fosamax*'s holding. EPL does not identify a single document that it alleges "contain[s] trade secret or confidential research and development information of EPL," or that "contain[s] the EPL's confidential internal work product and scientific communications that require continued protection." Opp. at 4. Nor does EPL respond to Plaintiffs' detailed showing that *Fosamax* supports declassification of EPL's Data. *See* Motion at 18-19. EPL also does not rebut Plaintiff's evidence that Dr. Willson was not an "independent" researcher, and that the Hamner Study was not "beneficial public research." Motion at 7-8; Opp. at 4.

Because Hamner failed to carry its burden under Section K, the EPL Documents should be declassified.

### 2. Plaintiffs Complied With Section K's Procedural Requirements.

2

Plaintiffs "complied with the [Section K's] procedural requirements" before filing their Motion. Motion at 12; Barnhart Reply Decl., Ex. 4, 5. On Junce 16, 2014, Plaintiffs notified EPL's counsel "in writing of the basis for their challenge to [EPL's confidentiality] claim." Motion, Exh. 2 at 8; Reply Decl. Ex. 4. EPL's counsel "respond[ed] in writing within ten (10) Days, and the parties [met and conferred] to resolve the dispute." *Id.* After more than two months of meet-and-confer efforts, it became clear that the parties could not "resolve the dispute," so Plaintiffs brought the matter "before the Court for resolution." Motion, Exh. 2 at 8; Reply Decl. Ex. 5.

These procedures were all that Section K requires. It is not true that Section K also required Plaintiffs to "raise . . . specific challenges to the designations of confidentiality for certain EPL documents." Opp. at 7-8. Furthermore, even if Section K did require Plaintiffs to raise "specific challenges" – it does not – Plaintiffs' challenges would satisfy that requirement. Plaintiffs ask this Court to declassify all of the Hamner Data that EPL produced pursuant to the Protective Order. As this Court explained when ExxonMobil's counsel opposed Plaintiffs' request to file this Motion: "That's specific:"

> Mr. Pardo: I think before we go lifting a protective order that your Honor put in place –
>
> The Court: I wasn't about to lift. Why is this your issue, not the institute's?
>
> Mr. Pardo: We have a right to know what he is talking about.
>
> The Court: The million pages? Everything you gave, the pages?
>
> Mr. Pardo: That is not specific enough, your Honor.
>
> The Court: It's not? Not you. The Hamner Institute released all million pages. Mr. Axline argues all million pages go to the EPA. That's specific. Everything the plaintiffs got they say should be in the hands of the regulatory agencies at this point. The work is

3

no longer in progress. It's not a report that hasn't been released.

Declaration of Alison R. Mullins in Support of Experimental Pathology Laboratories, Inc.'s Opposition to Plaintiff's Motion to Enforce Waiver and Declassification Provisions of Protective Orders, Ex. B at 41:1-15.

Plaintiffs complied with Section K's procedural requirements. EPL has not carried its Section K burdens of proof and persuasion. EPL's Data should be declassified.

### B. EPL Did Not Take The Steps Required By Section II.H.b. Of The Protective Order To Maintain The Confidentiality Of Documents Used As Deposition Exhibits.

Plaintiffs' Motion submitted evidence showing that no one designated the exhibits to Dr. Willson's deposition transcript as confidential under Section II.H.b. of the Protective Order. EPL's Opposition does not rebut Plaintiffs' showing. The undisputed evidence establishes, therefore, that the Dr. Willson's deposition exhibits are declassified.

EPL is incorrect when it argues that it was not required to comply with Section II.H.b.'s mandates. *See* Opp. at 14. The confidentiality of EPL Documents used at deposition is governed by two Sections of the Protective Order, Section I.B and Section II.H.b. Together, these two Sections required EPL to complete a series of procedural steps to maintain the confidentiality of Data used at deposition.

Section I.B. authorized EPL to identify which Data are subject to the Order. At the time of production, Section I.B. required EPL to "stamp, print, or write the term 'Confidential' or 'Proprietary'" on all of the Data to which the Order applies. Motion, Ex. 2 at 2. "Any documents which are produced by a party which are not stamped as 'Confidential' or 'Proprietary' will not be subject to [the] Order unless otherwise agreed by the parties." *Id.*

4

Section II.H.b., on the other hand, sets forth the confidentiality rules that apply to Section B-stamped Documents that are used in "depositions upon oral examination." Motion, Ex. 2 at 8. This Section required EPL to complete at least one of two alternative procedures to maintain the EPL Exhibits' confidentiality. Under the first procedure, EPL had the option to identify – on the record during the deposition itself – the testimony and exhibits that it believed should be treated as confidential under the Order. *Id.* If EPL had chosen this first option, then "persons not entitled to receive such information under the terms of [the Protective] Order [would] be excluded from the Deposition," and the court reporter would have marked "[t]ranscripts containing testimony or exhibits" that EPL identified "with the legend 'THIS TRANSCRIPT CONTAINS CONFIDENTIAL DOCUMENT(S), INFORMATION, OR OTHER THING(S),'" and the transcript would have been "treated in accordance with [the Protective] Order." *Id.*

In the alternative, Section II.H.b. gave EPL the option to wait until after the deposition, and to "designate any portion of the deposition transcript as a Confidential Document at any time within (10) Days of receiving the deposition transcript from the Court reporter." *Id.* If EPL had chosen this second option, then it would have needed to provide "[n]otice of such designation . . . in writing to the court reporter, with copies to all counsel in This Action, specifying the transcript and exhibits that constitute or contain Confidential Documents." *Id.*

EPL did not complete either of the alternative procedures. EPL did not identify any exhibits or testimony "on the record" as being confidential. *See* Sealed Declaration of Bryan Barnhart in Support of Plaintiffs' Motion to Enforce Protective Orders' Declassification Provisions ("**Sealed Barnhart Decl.**"), Ex. 6; see also Declaration of Bryan Barnhart in Support of Plaintiffs' Motion to Enforce Protective Orders' Declassification Provisions ("**Barnhart**

5

**Motion Decl."), ¶¶ 7 and 11, Ex. 4. EPL has not submitted evidence showing that "persons not entitled to receive such information under the terms of [the Protective] Order [were] excluded from [any] Deposition." Dr. Willson's deposition transcripts were not marked "with the legend 'THIS TRANSCRIPT CONTAINS CONFIDENTIAL DOCUMENT(S), INFORMATION, OR OTHER THING(S).'" Sealed Barnhart Decl., Ex. 6. EPL did not "designate any portion of [Dr. Willson's] deposition transcript as a Confidential Document at any time within (10) Days of receiving the deposition transcript from the Court reporter." Sealed Barnhart Decl., Ex. 6; Barnhart Motion Decl., ¶¶ 7 and 11, Ex. 4. Nor did EPL provide written "[n]otice of such designation" to the court reporter or to "all counsel in This Action." *Id.*

The Protective Order's text does not support EPL's argument that stamps that it affixed to the EPL Exhibits pursuant to Section I.B excused EPL from complying with the additional procedures set forth in Section II.H.b. Indeed, adopting EPL's interpretation of the stipulated Protective Order would render Section H.b. surplusage. *Garza v. Marine Transport Lines, Inc.*, 861 F.2d 23, 27 (2nd Cir. 1988) (an interpretation of a contract that has "the effect of rendering at least one clause superfluous or meaningless ... is not preferred and will be avoided if possible"). If EPL's Section I.B stamps also satisfied Section H.b., then there would not have been any reason for the parties to include Section II.H.b. in the Protective Order in the first place.

Because the undisputed evidence establishes that EPL did not comply with Section II.H.b., this Court should find that the exhibits to the transcripts of Dr. Willson's depositions have been declassified pursuant to the terms of the Protective Order.

### C.    Plaintiffs Bring This Motion To Advance The Public-Health Mission Of Regulatory Agencies, Not "On Behalf Of The EPA."

Plaintiffs bring its Motion on their own behalf to promote their own governmental interests in protecting the public's health, safety, and welfare. Motion at 15-16. EPL errs when it claims that Plaintiffs "assert any arguments or positions on behalf of the EPA." Opp. at 4, 16 fn. 6.

Plaintiffs are government agencies and public servants who, like EPA, safeguard the public's drinking-water supply. Together with other public servants who share Plaintiffs' mission to "protect[] groundwater used to supply the public with drinking water," Plaintiffs have spent more than five years tracking down EPL's Data, and gathering deposition testimony about EPL's Data from Hamner Study team members. *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 269 F.R.D. 360, 364.

EPL does not deny that "the public . . . will benefit from declassifying [the Hamner] Data" that includes the EPL Documents. Motion at 3. EPL does not deny that, "by slowing the EPA's ultimate reaction to the Hamner Data, the Hamner Parties continue to risk the health of the water-drinking public." Motion at 20. Nor does EPL identify any reason why any public-health agency should have to duplicate Plaintiffs' labors. *See* Opp. at 9. Those labors have been significant. Although they address critical pathology data – and even though Dr. Willson performed her work inside Hamner's facility – the Hamner Study team did not keep the EPL Documents with the other Hamner Data. It took multiple MDL plaintiffs more than three years of dogged discovery and motion practice to track the EPL Documents down, and to extract them from EPL. EPL does not provide any reason to believe that it would make things any easier for the EPA or other public-health agencies.

Although EPL insists that Plaintiffs should have involved the EPA "at the front . . . of this

7

discussion," EPL does not authorize Plaintiffs to tell the EPA that the EPL Documents exist, much less to ask the EPA which of those Documents it wants. Opp. at 8. Plaintiffs agree that regulatory agencies are not likely "to be interested in a million pages." Opp. at 9. But the only way to find out which Data those agencies *are* interested in would be to ask them. And the Protective Order state that the EPL Documents "may not be used, disseminated or disclosed outside of this Action." Motion, Ex. 2 at 4. EPL has the power to waive this restriction. *Id.* at 5. To date, however, EPL's counsel has refused to permit Plaintiffs' counsel from making any disclosure about those Documents to anyone. Barnhart Reply Decl., Ex. 4.

In any event, EPA and other regulatory agencies should be allowed to decide for themselves which of the EPL Documents are most relevant to their analyses of the Hamner Study's reported findings. This Court should declassify all of the Hamner Data – including the EPL Documents – so Plaintiffs can work with their sister agencies to protect the public health.

### III. CONCLUSION.

For all of the reasons that are set forth above, this Court should grant Plaintiffs' Motion.

Dated: August 20, 2014

MICHAEL AXLINE, State Bar # 229840
Attorneys for Plaintiffs
Miller & Axline
A Professional Corporation
1050 Fulton Avenue, Suite 100
Sacramento, CA  95825-4225
Telephone:  (916) 488-6688
Facsimile:  (916) 488-4288

8

**PROOF OF SERVICE VIA LEXISNEXIS FILE & SERVE**

*New Jersey Department of Environmental Protection, et al. v. Atlantic Richfield Co., et al.*
United States District Court, Southern District of New York, Case No. 08 Civ. 00312 (SAS)

I, the undersigned, declare that I am, and was at the time of service of the paper(s) herein referred to, over the age of 18 years and not a party to this action. My business address is 1050 Fulton Avenue, Suite 100, Sacramento, CA 95825-4225.

On the date below, I served the following document on all counsel in this action electronically through LexisNexis File & Serve:

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE WAIVER AND DECLASSIFICATION PROVISIONS IN EXPERIMENTAL PATHOLOGY LABORATORIES, INC.'S PROTECTIVE ORDER**

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on August 20, 2014, at Sacramento, California.

_____
KATHY HERRON