UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation | **Master File No. 1:00-1989** **MDL 1358 (SAS)** |
| This Document Relates To: *Orange County Water District v. Unocal Corporation et al.,* Case No. 04 Civ. 4968 (SAS) | The Honorable Shira A. Scheindlin |

**PLAINTIFF ORANGE COUNTY WATER DISTRICT'S OPPOSITION TO DEFENDANTS' OBJECTION TO AND MOTION TO STRIKE THE DECLARATION OF STEPHEN WHEATCRAFT SUBMITTED IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

1

I.  **INTRODUCTION**

Defendants seek to exclude the declaration of plaintiff Orange County Water District's (the "District's") hydrogeology and modeling expert, Stephen Wheatcraft, on the grounds that the declaration Dr. Wheatcraft submitted in opposition to defendants' summary judgment motion "directly contradicts" Dr. Wheatcraft's deposition testimony. (Mot. at 1.) Defendants' motion focuses on statements in paragraphs 4-6 and 8 of Dr. Wheatcraft's declaration relating to the modeling of MTBE released at each of the thirty-four stations which are the subject of defendants' summary judgment motion. (Mot. at 1.) Defendants' assert that Dr. Wheatcraft did not "link any particular station's gasoline to a production well" in his deposition, but his declaration now purports to supply this link. (Mot. at 2) Defendants' assertions are incorrect for two reasons.

First, Dr. Wheatcraft has consistently made clear that his model showed the migration of MTBE from all of the stations, and that the model showed MTBE from all of these stations reaching production wells. (*See* Axline Decl., Ex. 1, Comparison of Wheatcraft Declaration With Report and Deposition.) Dr. Wheatcraft's model tracked only MTBE released from focus plume stations, so any and all MTBE which reached production wells in the model came from these stations. (*Ibid.*)

Second, Dr. Wheatcraft testified, as defendants' excerpts show, that he did not run his model to "isolate" a particular station. He instead ran the model with MTBE from all of the 34 stations to show "that some MTBE from one or more of these stations has reached one or more production wells in the past." (Mot. at 2, Axline Decl., Ex. 4, Wheatcraft Depo. (Jan. 17, 2012) at 373:6-18.) Dr. Wheatcraft further testified that the model "is showing MTBE mass moving

2

from these stations towards -- towards the wells and, in some cases, having reached the wells." (*Id.* at 373:22-375:2.) Dr. Wheatcraft's declaration states, consistent with his deposition testimony, that "[t]he model thus depicts the transport of MTBE released at each focus plume station through the aquifer to production wells within the District's service area, although the model does not isolate each station." (Wheatcraft Decl., ¶ 4.)

Contrary to defendants' assertions, the District is not required to isolate each station and track each molecule of defendants' MTBE to a drinking water well. The focus plume stations are just that - stations that contributed MTBE to plumes that are impacting (or will impact) production wells. Dr. Wheatcraft determined that each station was contributing to a plume and each plume was contaminating (or would contaminate) one or more production wells. It is not plaintiffs' burden to allocate responsibility among defendants for the MTBE plumes that are contaminating the District's water supply and domestic water supply wells within the District. That is defendants' burden. *In Re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation* 643 F.Supp.2d 461, 469-470 ["The burden of proving apportionment is ordinarily placed on the culpable party."]. Dr. Wheatcraft's declaration, as well as his expert reports and deposition testimony, is consistent with the District's claims.

Since there is no contradiction between Dr. Wheatcraft's declaration and his prior expert reports and deposition, and Dr. Wheatcraft's declaration is consistent with the District's claims, defendants' motion should be denied.

## II. Legal Standard.

Defendants assert that Dr. Wheatcraft's declaration is a "sham affidavit" because it purportedly contradicts his expert reports and deposition testimony. The Second Circuit,

3

however, has plainly held, in a case cited by defendants, "that a sham issue of fact exists only when the contradictions in an expert witness's testimony are inescapable and unequivocal in nature." *In re Fosamax Products Liability Litigation* 707 F.3d 189, 194 (2nd Cir. 2013). As explained in *Rivera v. Rochester Genesee Regional Transp. Authority* 702 F.3d 685, 695-696 (2nd Cir. 2012), variances in testimony are insufficient to warrant striking testimony because such variances do not amount to a "real, unequivocal, and inescapable contradiction . . ." *Rivera,* 702 F.3d at 695-696.

Here, as demonstrated by the Comparison Chart, Dr. Wheatcraft's declaration is entirely consistent with his expert report and deposition testimony. Dr. Wheatcraft's declaration merely collects information from various parts of his expert reports and deposition into a single document. Dr. Wheatcraft's statements in the declaration are certainly not "new" or "inescapably and unequivocally" contradictory. *In re Fosamax Products Liability Litigation* 707 F.3d 189, 193 (2nd Cir. 2013).

### III. Dr. Wheatcraft's Declaration And Deposition Testimony Are Not Contradictory At All, Much Less Inescapably and Unequivocally Contradictory.

The Comparison Chart submitted with this opposition demonstrates that the statements in paragraphs 4-6 and 8 of Dr. Wheatcraft's declaration are consistent with statements made in his expert reports and deposition. Dr. Wheatcaft states, for example, in paragraph 5 of his declaration that: "The MTBE that originated from defendants' stations is migrating off site and mixing with other MTBE from nearby stations to form MTBE plumes." Numerous statements in his expert report are entirely consistent with this statement:

> • "MTBE is highly mobile and persistent in groundwater and groundwater is continuously in motion. As a consequence, MTBE released <u>at the focus plume stations</u> would have

4

begun <u>migrating off site</u> as soon as it entered groundwater." (Axline Decl., Ex. 2, Expert Report at 8, ¶ 7 [emphasis added].)

- "Because MTBE is highly mobile, it is highly likely that large amounts of the releases from these sites [the 34 gasoline stations at issue] have moved off-site." (*Id.* at 9.)

- "If contamination plumes from two different sources are in close proximity to one another <u>the plume may mix or comingle</u> in the aquifer." (*Id.* at 19 [emphasis added].)

- "Due to the complex hydrogeological processes taking place in the aquifer beneath Orange County and the amount of time that lapsed between the known release and remediation action **many petroleum hydrocarbon releases that occurred at the 34 focus gas stations are comingling in the aquifer**." (*Ibid.* [emphasis added].)

The Comparison Chart contains additional deposition testimony which is also consistent with this statement from his declaration.

Defendants ignore Dr. Wheatcraft's expert reports and instead base their motion on out-of-context excerpts from Dr. Wheatcraft's deposition. As the chart demonstrates, however, when placed in context with deposition testimony defendants omitted from their motion, Dr. Wheatcraft's deposition is fully consistent with the statements in his declaration.

In addition to omitting key aspects of Dr. Wheatcraft's deposition testimony, defendants' comparison of Dr. Wheatcraft's declaration and his deposition testimony is simply inaccurate. Dr. Wheatcraft, for example, explained in his declaration that when analyzing the impacts of MTBE from the 34 focus plume stations on water production wells within the District, he considered all MTBE testing results from each station, and included in his modeling a separate MTBE source term for each of the focus plume stations. (Wheatcraft Decl., ¶ 4.) Dr. Wheatcraft explained, as he explained in his expert report and at his deposition, that "[t]he model thus depicts the transport of MTBE released at each focus plume station through the aquifer to production wells within the District's service area, although the model does not isolate each

5

station." (*Id.*; *see also* Axline Decl., Ex. 1.)

Defendants argue: "At his deposition, however, Dr. Wheatcraft made clear that he could not link any particular station's gasoline to a production well." (Mtn at 2.) This is not accurate. Dr. Wheatcraft testified at his deposition, as he testified in his expert report and in his declaration in opposition to defendants' summary judgment motion, that : "We haven't done any models in which we isolated a particular source and ran only that source, no." (Mtn at 2; Roy Decl., Ex. 73; Jan. 16, 2012, Wheatcraft Depo at 122:1-4). That does *not* mean that Dr. Wheatcraft "could not link any particular station's gasoline to a production well."[1] In fact, as Dr. Wheatcraft stated in his expert report, at his deposition, and in his declaration, he "linked" MTBE from *every* "particular station" to impacts on production wells. (Wheatcraft Decl. at ¶ 5 ["The MTBE that originated from defendants' stations is migrating off site and mixing with other MTBE from nearby stations to form MTBE plumes."]; ¶ 6 ["As the MTBE plumes migrate, they will intermix with each other in the subsurface of the aquifer."]; ¶ 8 ["When the model is run with the source terms from each individual focus plume station, the model predicts that MTBE will reach the following wells associated with Focus Plume numbers 1, 2. 3. 8 and 9."].)

Beacon Bay, Unocal #5399, Unocal #5123, and Thrifty #368

Defendants' assertions that Dr. Wheatcaraft's declaration and his deposition testimony as

---

[1] The fact that Dr. Wheatcraft's declaration is consistent with his deposition is also evidenced by the fact that defendants have the same complaint about both. Defendants complain, for example, that Dr. Wheatcraft's declaration "does not address . . . causation" and does not "link contamination from any particular defendant['s] station to a production well." (Mot. at 1.) Defendants further complain that "Dr. Wheatcraft's declaration attempts to side-ste the issue by . . . grouping stations together while not showing that any particular station's gasoline will more likely than not travel from the station to any production well." (Mot. at 1.) These are the same complaints that defendants assert against Dr. Wheatcraft's deposition testimony. (Mot. at 2.)

6

to these stations is contradictory is incorrect. Dr. Wheatcraft did testify that he did not individually model the MTBE molecules released from a particular station to a production well: "We haven't done any models in which we isolated a particular source [i.e. a station] and ran only that source, no." (Mot. At 2.) Dr. Wheatcraft's declaration, however, does not purport to *separately* track MTBE molecules from any of these stations to a particular production well. Instead, consistent with his expert reports and deposition testimony, Dr. Wheatcraft opined that all of the stations, including these four, "contributed" MTBE to a plume "that will impact production wells within the District." (Wheatcraft Decl. at ¶ 12.) This is entirely consistent with his deposition testimony:

>     What is the basis for you to say that one or
> 14 more of the 34 stations released MTBE that has gotten
> 15 into one or more drinking water wells?
>
> 18     THE WITNESS: The overall behavior of the
> 19 model, it is showing MTBE mass moving from these
> 20 stations towards -- towards the wells and, in some
> 21 cases, having reached the wells. And there are wells
> 22 that have had detections. Some of these detections
> 23 are in the vicinity of these stations and so-called
> 24 plumes.
> 25     So it seems certainly more likely than not
> 1 that some of these stations have, in fact, impacted
> 2 production wells already.

(Axline Decl., Ex. 4, Wheatcraft Depo. (Jan. 17, 2012) at 374:13-375:2.) Wheatcraft confirmed that the only MTBE contamination entered into his model came from the thirty-four stations that are the subject of defendants' motion for summary judgment:

> 18     A.    The mass that was introduced in our
> 19 model came from those 34 sites and the monitoring --
> 20 and the concentrations from the monitoring wells on
> 21 and around those sites. And those were the only ones

7

Case 1:00-cv-01898-VSB-VF   Document 4076   Filed 08/25/14   Page 8 of 9

22   that we considered.

(Axline Decl., Ex. 3, Wheatcraft Depo. (Jan. 16 2012) at 120:12-22.)  It is thus clear that while Dr. Wheatcraft did not track molecules from an individual station to a production well, Dr. Wheatcraft specifically modeled the fate and transport MTBE released from each of these four sites to show impacts to production wells within the District.

Finally, the District is not required to track a molecule of MTBE from each defendants' station to a particular drinking water well.  The District is only required to show that each defendants' station contributed MTBE contamination to the aquifer and that this MTBE contamination has or will impact drinking water wells and resources within the District's service area.  (*See* Plaintiff Orange County Water District's Opposition to Defendants' Motion for Summary Judgment due to Lack of Injury and Damages at Certain Trial Sites.)  Dr. Wheatcraft's declaration, as well as his expert reports and deposition testimony, more than adequately establish that MTBE contamination from each service station contributes to a plume, and that these plumes impact (or will impact) drinking water wells and resources.  (*See* Axline Decl., Ex. 1.)

## IV.   CONCLUSION.

For the foregoing reasons, defendants' motion to strike the declaration of Dr. Wheatcraft submitted in opposition to defendants' motions for summary judgment should be denied.

DATED: August 25, 2014          Respectfully submitted

                                                      /s/
                                   Michael D. Axline
                                   MILLER & AXLINE
                                   A Professional Corporation
                                   1050 Fulton Avenue, Suite 100
                                   Sacramento, California 95825-4225
                                   Telephone: (916) 488-6688
                                   Counsel for Plaintiff Orange County Water District

*In Re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation:*
*Orange County Water District v. Unocal Corp., et al.*, Case No. 04 Civ. 4968

**PROOF OF SERVICE VIA LEXISNEXIS FILE AND SERVE**

I am a citizen of the United States and an employee in the County of Sacramento. I am over the age of eighteen (18) years and not a party to this action. My business address is Miller, Axline, & Sawyer, 1050 Fulton Avenue, Suite, 100, Sacramento, California 95825.

On the date executed below, I electronically served the document(s) via LexisNexis File & Serve, described below, on the recipients designated on the Transaction Receipt located on the LexisNexis File & Serve website:

**PLAINTIFF ORANGE COUNTY WATER DISTRICT'S OPPOSITION TO DEFENDANTS' OBJECTION TO AND MOTION TO STRIKE THE DECLARATION OF STEPHEN WHEATCRAFT SUBMITTED IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

I declare under penalty of perjury that true and correct copies of the above document(s) were served via LexisNexis File & Serve on August 25, 2014.

_____
KATHY HERRON