**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------- X
                                                   :
IN RE: METHYL TERTIARY BUTYL          :
ETHER ("MTBE") PRODUCTS              :
LIABILITY LITIGATION                  :
------------------------------------------------- :
                                                   :
This document relates to:             :
                                                   :
*Orange County Water District v. Unocal*   :
*Corporation, et al.*, 04 Civ. 4968   :
                                                   :
                                                   :
------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
9/16/14

<u>OPINION AND ORDER</u>

**Master File No. 1:00-1898**
**MDL 1358 (SAS)**
**M21-88**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

**I.     INTRODUCTION**

         This is a consolidated multi-district litigation ("MDL") relating to

contamination – actual or threatened – of groundwater from various defendants'

use of the gasoline additive methyl tertiary butyl ether ("MTBE") and/or tertiary

butyl alcohol, a product formed by the breakdown of MTBE in water.  In this case,

plaintiff Orange County Water District (the "District"), which is charged with

maintaining groundwater quality, alleges that defendants' use and handling of

MTBE has contaminated, or threatened to contaminate groundwater within its

jurisdiction.  Familiarity with the underlying facts is presumed for the purposes of

this Order.[1]

Currently before the Court is a motion for summary judgment brought by Atlantic Richfield Company ("ARCO"), BP West Coast Products LLC, and BP Products North America, Inc. (collectively, the "BP Defendants"), and Shell Oil Company, Equilon Enterprises LLC, and Texaco Refining and Marketing Inc. (collectively, the "Shell Defendants")[2] on the ground that the District's claims are precluded under the doctrine of res judicata.  For the reasons stated below, the motion is GRANTED.

## II.    BACKGROUND[3]

### A.    Prior Lawsuits Against Defendants

In January 1999, the Orange County District Attorney ("OCDA") initiated two civil actions in Orange County Superior Court, each on behalf of the State of California, alleging that defendants were responsible for unauthorized

---

[1]    For a thorough recitation of the District's factual allegations, *see, e.g.*, *In re MTBE*, 379 F. Supp. 2d 348, 364-67 (S.D.N.Y. 2005).

[2]    When referring to both the BP Defendants and the Shell Defendants, collectively, I use the term "defendants" for ease of reading.  The BP Defendants and Shell Defendants comprise only a small subset of the defendants in this action.

[3]    The facts recited below are drawn from the pleadings, the parties' Local Civil Rule 56.1 Statements, the declarations submitted in connection with this motion, and the exhibits attached thereto.  These facts are undisputed unless otherwise noted.  Where disputed, the facts are viewed in the light most favorable to the nonmoving party.  *See Beard v. Banks*, 548 U.S. 521, 529-30 (2006).

releases of MTBE gasoline from underground storage tanks they owned, operated, and/or supplied throughout Orange County, resulting in contamination of Orange County soil and groundwater.[4]  One suit named ARCO as a defendant; the other suit named Shell Oil Company as a defendant.[5]  In October 2000, the OCDA filed a First Amended Complaint in the action against ARCO ("BP FAC"), adding BP Amoco as a defendant.[6]  The BP FAC contained additional allegations regarding the health and environmental risks of releases of MTBE gasoline into Orange County groundwater.[7]  The BP FAC stated that the OCDA seeks to "compel defendants to cleanup . . . groundwater contamination . . . caused by . . . [MTBE] which contamination constitutes a continuing nuisance . . . recover damages . . . protect the environment and [] prevent the destruction of groundwater resources."[8] The BP FAC asserted claims for equitable relief, damages, and penalties, based on claims for public nuisance and violations of California's Health & Safety Code,

---

[4]      *See* BP and Shell Defendants' Local Rule 56.1 Statement in Support of Motion for Summary Judgment Based on Res Judicata ("Def. Rule 56.1 Statement") ¶ 1.

[5]      *See id.* ¶ 2.

[6]      *See id.*

[7]      *See id.*

[8]      BP FAC, Ex. B to 6/4/14 Declaration of Lawrence A. Cox, counsel for the BP Defendants, in Support of BP Defendants' Motion for Summary Judgment Based on Res Judicata ("Cox Decl.") ¶ 3.

Fish & Game Code, and Business & Professions Code.[9]  In April 2001, the OCDA filed a First Amended Complaint ("Shell FAC") in the action against Shell Oil Company containing similar additional allegations.[10]  The OCDA asserted the same claims in the Shell FAC as in the BP FAC.[11]

### B.    The District

The District "is a special water agency created . . . to maintain, replenish, and manage groundwater resources."[12]  The District does not own groundwater, but it does own "land overlying groundwater at various locations within the District" and claims to have "water rights therein."[13]

Though not a party to the OCDA's suits, the District was familiar with and actively monitored them.[14]  For instance, the District circulated a copy of the BP FAC, a press release from the OCDA, and newspaper articles about the lawsuit

---

[9]      *See* Def. Rule 56.1 Statement ¶ 3.

[10]     *See id.* ¶ 4.  The OCDA further amended its complaint in December 2001 to identify Equilon Enterprises LLC as one of the "Doe" defendants it had sued.  In October 2003, the OCDA added Texaco Refining and Marketing Inc. as another of the "Doe" defendants.  *See id.* ¶ 5.

[11]     *See id.* ¶ 6.

[12]     Third Amended Complaint ("Compl.") ¶ 4.

[13]     *Id.* ¶ 5.

[14]     *See* Def. Rule 56.1 Statement ¶¶ 11-12.

4

to its water producers and board of directors.[15]  The District also communicated with the OCDA regarding the suits and provided the OCDA with "technical assistance" to aid "in the enforcement of cleanup of MTBE and other petroleum contaminants from leaking gasoline storage tanks in Orange County."[16]  The District was present for at least one meeting, perhaps more, with the OCDA regarding the OCDA's suits[17] and, in a separate correspondence, stated that it "support[ed] the efforts of the DA to expedite cleanup actions by the responsible parties."[18]

### C.    Resolution of the OCDA's Litigation

On December 17, 2002, the Orange County Superior Court entered a Final Judgment Pursuant to Stipulation and Order Thereon ("BP Final Judgment"), settling all of the OCDA's claims against the BP Defendants.[19]  The settlement

---

[15]      *See id.*

[16]      7/14/00 Letter from William R. Mills Jr., general manager of the District, to Jack Miller, director of Environmental Health for Orange County, copying the OCDA ("Mills Letter"), Ex. E to Cox Decl., at 2.

[17]      *See* 2/1/12 Deposition of Anthony Brown, Ex. J to Cox Decl., at 1111:11-1112:12.

[18]      11/8/00 Safe Drinking Water Subcommittee Meeting ACWA Fall Conference ("Fall Conf."), Ex. L to Cox Decl.

[19]      *See* BP Final Judgment, Ex. A to Cox Decl. ¶ 6.0(i).

constituted "a release from any known or unknown past or present claims,
violations, or causes of action that were or could have been asserted in the First
Amended Complaint" with regard to MTBE contamination.[20]  Pursuant to the
terms of the BP Final Judgment, the BP Defendants agreed to reimburse OCDA's
investigation costs and to fund and implement a plume delineation program.[21]  The
BP Defendants also became subject to injunctive relief, which remained in effect
for five years following entry of the BP Final Judgment.[22]  BP stopped adding
MTBE to gasoline produced in California the same month that the BP Final
Judgment was entered.[23]

On January 5, 2005, the Orange County Superior Court entered a
Final Judgment Pursuant to Stipulation and Order Thereon in the action against the
Shell Defendants (the "Shell Final Judgment"), settling the OCDA's claims against
the Shell Defendants.[24]  The relief provided to the OCDA in the Shell Final
Judgment was similar to that of the BP Final Judgment, including compensation

---

[20]     *Id.* ¶ 6.1.

[21]     *See id.* ¶¶ 3.0-4.10.

[22]     *See id.* ¶¶ 5.0-5.6.

[23]     *See* Def. 56.1 Statement ¶ 19.

[24]     *See* Shell Final Judgment, Ex. C to 6/6/14 Declaration of Peter C.
Condron, counsel for the Shell Defendants, in Support of BP and the Shell
Defendants' Motion for Summary Judgment ("Condron Decl.").

for investigation costs, the funding of a plume delineation program, and injunctive relief.[25]  Unlike the BP Final Judgment, however, the Shell Final Judgment stated that "the Plaintiff does not intend for [the Shell] Final Judgment to serve to legally bar . . . any . . . action . . . of . . . the Orange County Water District . . . .  Plaintiff does not include, and the Orange County District Attorney does not represent, any water district . . . ."[26]

The day the Orange County Superior Court entered the Shell Final Judgment, counsel for the District appeared in court to oppose the entry of the judgment on the ground that the District had litigation pending over MTBE contamination against the Shell Defendants.[27]  Accordingly, the District requested time to brief a petition to intervene, but the Orange County Superior Court denied the District's request.[28]  The Shell Defendants opposed the intervention, stating on

---

[25]     *See id.*  Two years after the entry of the Shell Final Judgment, the OCDA's 2007 Biennial Report described the relief under both final judgments, noting that "[t]he oil companies were required to write a blank check to cover the cost of cleaning up the environment until the ground water is free of dangerous chemicals. . . . As a result, many of the polluted underground storage sites have been cleaned up and are free of . . . MTBE."  2007 Biennial Report of the Office of the Orange County District Attorney, Ex. E to Condron Decl.

[26]     Shell Final Judgment ¶ 9.6.

[27]     *See* Def. Rule 56.1 Statement ¶ 34.  I describe the District's litigation below.

[28]     *See id.* ¶ 35.

the record that the intervention attempt was untimely.[29]  The OCDA opposed the

District's intervention as well but stated that the OCDA "[does not] believe that

we're in privity with the Water District."[30]  In denying the District's request and

entering the Shell Final Judgment, the judge made no factual findings, stating:  "I

make no findings about the effect of this settlement on any other action.  I'll let an

appropriate court at an appropriate time make those determinations."[31]

### D.    The District's Lawsuit Against Defendants

The District filed suit against a number of oil companies, including

the BP Defendants and the Shell Defendants, in May 2003, shortly after the entry

of the BP Final Judgment.[32]  The District alleges that it suffered injury by having

"to expend funds to investigate, clean up, abate, and/or remediate the MTBE

---

[29]    1/5/05 Hearing Transcript ("Hearing Tr."), Ex. B to Reply Declaration of Peter C. Condron in Support of BP and the Shell Defendants' Motion for Summary Judgment ("Condron Reply Decl."), at 11:12-11:26.

[30]    Hearing Tr., Ex. A to Declaration of Bryan Barnhardt, counsel for the District, in Support of Plaintiff Orange County Water District's Opposition to BP and Shell Defendants' Motion for Summary Judgment Based on Res Judicata ("Barnhardt Decl."), at 21:5-21:6 (the parties submitted three different sets of pages from the transcript, attached to three different declarations).

[31]    *Id.* at 28:18-28:21

[32]    *See* Def. Rule 56.1 Statement ¶ 22.  The District's operative complaint is the Third Amended Complaint, filed on January 31, 2008 ("Compl.").

and/or TBA contamination caused by Defendants."[33]  The District asserts common law claims, primarily sounding in public nuisance, and requests injunctive relief.[34] The District seeks "to recover compensatory and all other damages, including all necessary funds to investigate, monitor, prevent, abate, or contain any contamination of, or pollution to, groundwaters within the District from MTBE and TBA."[35]  The District also seeks "to protect the quality of the common water supplies of the District; to prevent pollution or contamination of that water supply; and to assure that the responsible parties – and not the District nor the public – bear the expense."[36]

## III.   LEGAL STANDARD

Summary judgment is appropriate "only where, construing all the evidence in the light most favorable to the non-movant and drawing all reasonable

---

[33]    Compl. ¶ 4.

[34]    *See* Plaintiff Orange County Water District's Responses in Opposition to BP and Shell Defendants' Local Rule 56.1 Statement in Support of Motion for Summary Judgment Based on Res Judicata and Plaintiff Orange County Water District's Local Rule 56.1 Statement in Support of Its Opposition to BP and Shell Defendants' Motion for Summary Judgment Based on Res Judicata ("Pl. 56.1 Statement") ¶ 22.  The District also asserts a claim under the Orange County Water District Act.

[35]    Compl. ¶ 3.

[36]    *Id.*

inferences in that party's favor, there is 'no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law.'"[37]  "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[38]

"[T]he moving party has the burden of showing that no genuine issue of material fact exists and that the undisputed facts entitle [it] to judgment as a matter of law."[39]  To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts,"[40] and "may not rely on conclusory allegations or unsubstantiated speculation."[41]

In deciding a motion for summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual

---

[37]   *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F. 3d 11, 19 (2d Cir. 2014) (quoting Fed. R. Civ. P. 56(c)) (some quotation marks omitted).

[38]   *Windsor v. United States*, 699 F.3d 169, 192 (2d Cir. 2012), *aff'd*, 133 S. Ct. 2675 (2013) (quotations and alterations omitted).

[39]   *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012) (citations omitted).

[40]   *Brown v. Eli Lilly & Co.,* 654 F.3d 347, 358 (2d Cir. 2011) (quotation marks and citations omitted).

[41]   *Id.* (quotation marks and citations omitted).

10

issues to be tried."[42]  "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"[43]

## III.   APPLICABLE LAW

The doctrine of res judicata "gives certain *conclusive effect* to a *former judgment* in a subsequent litigation involving the same controversy."[44]  The doctrine "rests upon the ground that the party to be affected, or some other with whom [it] is in privity, has litigated, or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of [its] opponent."[45]  Courts will apply res judicata to preclude subsequent litigation if three elements are met:  "(1) A claim . . . raised in the present action is identical to a claim . . . litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment

---

[42]     *Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.*, 677 F.3d 109, 119 (2d Cir. 2012).

[43]     *Barrows v. Seneca Foods Corp.*, 512 Fed. App'x 115, 117 (2d Cir. 2013) (quoting *Redd v. New York Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012)).

[44]     *Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 797 (2010) (citation and quotation omitted).

[45]     *Villacres v. ABM Indus. Inc.*, 189 Cal. App. 4th 562, 575 (2010) (citation and quotation omitted).

on the merits; and (3) the party against whom the doctrine is being asserted was a party *or in privity with* a party to the prior proceeding."[46]

The first element requires courts to determine whether the former and subsequent proceedings involve identical claims, or causes of action.  "'In California the phrase 'cause of action' is often used indiscriminately . . . to mean counts which state [according to different legal theories] the same cause of action . . . .'"[47]  "But when applying res judicata, courts define 'cause of action' more precisely:  '[t]he cause of action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced.'"[48]  Accordingly, for the purposes of res judicata, courts look not to the parties' specific legal theories, but to whether the claims "are based on the same primary right."[49]  "Thus, under the primary rights theory, the

---

[46]     *Boeken*, 48 Cal. 4th at 797 (emphasis added) (citation and quotation omitted).

[47]     *Id*. at 798 (quoting *Eichler Homes of San Mateo, Inc. v. Superior Court of San Mateo Cnty.*, 55 Cal. 2d 845, 847 (1961)).

[48]     *Id.* (quoting *Bay Cities Paving and Grading, Inc. v. Lawyers Mut. Ins. Co.*, 5 Cal. 4th 854, 860 (1993)).

[49]     *Federation of Hillside & Canyon Ass'ns v. City of Los Angeles*, 126 Cal. App. 4th 1180, 1204 n.6 (2004).  *Accord Boeken*, 48 Cal. 4th at 798 ("Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief.").

12

determinative factor is the harm suffered.  When two actions involving the same

parties seek compensation for the same harm, they generally involve the same

primary right."[50]

   The second element requires the result of the prior proceeding to be a

final judgment on the merits.  Under California law, consent judgments are

considered final and on the merits for res judicata purposes.[51]

   The final element requires the party in the subsequent proceeding to

be the same as, or in privity with, the party in the prior proceeding.  Under

California law, privity exists between parties to prior and subsequent proceedings

when they have a "mutual or successive relationship to the same rights of property,

or to such an identification in interest of one person with another as to represent the

same legal rights."[52]  California courts have held that this rights-oriented approach

creates privity between agents of the same government because "they represent not

---

[50] *Boeken*, 48 Cal. 4th at 798.

[51] *See Villacres*, 189 Cal. App. 4th at 569 (holding that court-approved
settlement in prior litigation precludes subsequent litigation on same cause of
action); *Gates v. Super. Ct.*, 178 Cal. App. 3d 301, 311 (1986) (same).

[52] *Citizens for Open Access to Sand & Tide, Inc. v. Seadrift Ass'n
(COAST)*, 60 Cal. App. 4th 1053, 1069 (1998).

their own rights but the right of the government."[53]  Still, res judicata applies only "if a party's interests are so similar to another party's interests that 'the latter was the former's virtual representative in the earlier action.'"[54]

## IV.   DISCUSSION

The District contends that its current suit cannot be precluded under res judicata because (1) the District is pursuing a private property owner nuisance action, which OCDA did not have standing to pursue, and (2) the settlement agreements in the prior actions did not release the District's current or future claims.[55]  Accordingly, the District argues that its claims are not identical to the OCDA's claims in the prior suits, and that the two parties are not in privity.[56]  Defendants counter that the BP Final Judgment and the Shell Final Judgment bar relitigation of the District's claims because the OCDA pursued the same interests

---

[53]     *Lerner v. Los Angeles City Bd. of Educ.*, 59 Cal. 2d 382, 398 (1963). *Accord COAST*, 60 Cal. App. 4th at 1073 n.12.

[54]     *City of Martinez v. Texaco Trading & Transp., Inc.*, 353 F.3d 758, 764 (9th Cir. 2003) (quoting *COAST*, 60 Cal. App. 4th at 1070)).

[55]     *See generally* Plaintiff Orange County Water District's Opposition to BP and Shell Defendants' Motion for Summary Judgment Based on Res Judicata ("Opp. Mem.").

[56]     *See generally id.*

-14-

and relief as the District now seeks in its suit against the same defendants.[57]   In

support of their motion, defendants offer the final judgments entered in the prior

cases,[58] as well as various documents and correspondence detailing both the

District's interest and involvement in the prior suits and settlements and

defendants' compliance with those settlements.[59]

## A.   Identical Causes of Action

The "primary rights" analysis California courts use to determine

whether causes of action are identical under res judicata favors defendants.[60]   This

is because primary rights involve the underlying harm being litigated, not the

specific legal theory or remedy being sought.[61]   Here, the underlying harm is the

---

[57]     *See generally* Memorandum of Law in Support of BP, Atlantic Richfield, and the Shell Defendants' Motion for Summary Judgment Based on Res Judicata ("Def. Mem.").

[58]     *See* Shell Final Judgment, Ex. C to Condron Decl.; BP Final Judgment Ex. A to Cox Decl.  The Court also takes judicial notice of the complaints in the prior actions.  *See* Shell Defendants' Request for Judicial Notice in Support of Motion for Summary Judgment.

[59]     *See, e.g.*, 2007 Biennial Report of the Office of the Orange County District Attorney, Ex. E to Condron Decl.; 7/14/00 Correspondence Between OCWD and OCDA, Ex. E to Cox Decl.; Declaration of Karen A. Lyons, Auditor for Shell Global Solutions (US) Inc., in Support of the Shell Defendants' Motion for Summary Judgment ¶¶ 3-7.

[60]     *See Boeken*, 48 Cal. 4th at 814 (noting that under the primary rights theory, identity of causes of action is determined by the harm suffered).

[61]     *See id.*

-15-

same harm the OCDA sought to remedy in its earlier suits:  MTBE contamination of groundwater in Orange County.

In an effort to evade claim preclusion, the District portrays its suit as distinct from the OCDA's prior proceedings by emphasizing its pursuit of "common-law causes of action" to "primarily seek remedies for harm to the [D]istrict's [own private] property interests."[62]  In so doing, the District stresses the difference between the type of nuisance action it brings here – a property owner action – with the public officer nuisance action brought by the OCDA in its prior suits.[63]  This is a distinction without a difference for res judicata purposes.

*First*, the District cannot escape res judicata simply by restyling what is essentially the same cause of action.[64]  Many of the specific allegations and claims the District brings in its complaint mirror those in the prior suits, as do the remedies sought.[65]  The third paragraph alone of the District's complaint reflects

---

[62]     Opp. Mem. at 4.

[63]     *Id*. at 6 (noting that the OCDA was not empowered to bring a property owner nuisance action, while the District lacked standing to bring a public officer action).

[64]     *See Villacres*, 189 Cal. App. 4th at 585 (applying res judicata where the second suit was based on a different statute than the first suit, which was resolved by a settlement agreement).

[65]     *Compare* BP FAC ¶ 117 ("The unauthorized release of gasoline and/or MTBE to groundwater, and to soil where such releases are likely to reach

this unavoidable reality:

> The District files this lawsuit to recover compensatory and
> all other damages, including all necessary funds to
> investigate, monitor, prevent, abate, or contain any
> contamination of, or pollution to, groundwaters within the
> District from MTBE and TBA; to protect the quality of the
> common water supplies of the District; to prevent pollution
> or contamination of that water supply; and to assure that the
> responsible parties – and not the District nor the public –
> bear the expense.[66]

In the same vein, the objective of the OCDA's prior suits was to "compel

defendants to cleanup . . . groundwater contamination . . . caused by . . . [MTBE]

which contamination constitutes a continuing nuisance . . . recover damages . . .

protect the environment and [] prevent the destruction of groundwater resources."[67]

Although the District's public nuisance theory is slightly different from the

OCDA's, under res judicata, "[e]ven when there are multiple legal theories upon

which recovery might be predicated, one injury gives rise to only one claim of

---

groundwater constitutes a nuisance), *with* Compl. ¶ 94 ("The contamination and
pollution of such groundwaters with gasoline and MTBE and/or TBA is a public
nuisance . . . and is abatable."). *See also* Def. Rule 56.1 Statement ¶ 23 (charting
the similar, and in some cases, nearly identical, allegations in OCDA's and the
District's complaints).

[66]    Compl. ¶ 3.

[67]    BP FAC ¶ 3.

relief."[68]  And, under California law, the District's legal theory distinction is particularly futile because the type of harm plaintiffs must show to state a public nuisance claim is the same in public officer actions as it is in private property actions.[69]

Second, that the OCDA could not bring a common law property owner's action is of no consequence because, as I have previously ruled, the District's usufructuary right is "subordinate to the State (acting pursuant to the public trust), any overlying right holders . . . and the purveyors that actually pump the water out of the ground and provide it to customers."[70]  At issue in both this case and the prior suits is the contamination of Orange County groundwater, which

---

[68]    Boeken, 48 Cal. 4th at 814.  For the same reason, the District's OCWD Act claim cannot escape preclusion, regardless of the OCDA's standing to bring it.  See Northern Cal. River Watch v. Humboldt Petroleum, Inc. (River Watch), 162 Fed. App'x 760 (9th Cir. 2006) (holding that environmental group's lawsuit regarding damages from petroleum releases was barred because the district attorney entered into a consent judgment with the same defendant three years earlier on claims stemming from the same harm, but under a different statute and legal theory).

[69]    See Cal. Civ. Code §§ 3479-3480; Cal. Civ. Proc. Code § 731.  See also in re MTBE, 824 F. Supp. 2d 524, 539 (S.D.N.Y. 2011) ("Although a required element of [the District's] public nuisance claim (given its prayer for damages) is a showing of special injury to its property interest . . . the primary 'injury' that it must show . . . is an injury to the public . . . .") (emphasis in original).

[70]    In re MTBE, 824 F. Supp. 2d at 547.

-18-

the District manages but does not own.[71]  The District's ownership of land

overlying groundwater it does not own is immaterial here – the District has not

alleged that its land has been impacted, nor does its land ownership give the

District an enforceable property interest or right in the groundwater that the OCDA

did not already address in the prior suits regarding the same groundwater.[72]  Thus,

whatever right the District seeks to enforce is necessarily the same right, or an

inferior one, to the right the OCDA litigated in its prior suits.  The final judgments

in the prior suits provided relief to the OCDA and, by extension, the District

because "the state's property interest in groundwater . . . is no less usufructuary

than that of private ownership, and public waters may be duly used, regulated and

controlled in the public interest."[73]

### B.    Privity

Because the District and the OCDA were both acting on behalf of the

---

[71]    *See* Compl. ¶¶ 1, 4-5.

[72]    Defendants also note, and the District does not dispute, that both the
BP Defendants and the Shell Defendants stopped adding MTBE to gasoline made
in California upon or before entering into final judgments in the prior actions.  *See*
Def. Rule 56.1 Statement ¶ 19.  Thus, the District has not suffered any new MTBE-
related harm subsequent to the entry of the final judgments in the prior proceedings
that would give rise to a new action not covered by the settlements.

[73]    *Selma Pressure Treating Co. v. Osmose Wood Preserving Co.*, 221
Cal. App. 3d 1601, 1617 (1990) (citations and quotations omitted).

-19-

public to enforce the same primary right, the parties are in privity.  Whether privity

exists between two parties depends on their "closeness."[74]  For this reason, courts

have held that "agents of the same government are in privity with each other, since

they represent not their own rights but the right of the government."[75]  Both the

District and the OCDA act as agents of the same government, and both act on

behalf of the people of California.[76]  As noted above, the District's claim that, in

this case, it is acting on behalf of its own private interests, is unpersuasive.  In

short, the OCDA represented the District's interests in litigating and resolving the

same cause of action at issue in the District's case.

The record before the Court reflects an identity of interests between

the District and the OCDA.  The District knew of OCDA's lawsuits, attended

meetings at which the OCDA discussed those suits, and offered the OCDA

assistance in pursuing them.[77]  The District's own correspondence reveals that it

"provide[d] assistance to . . . the [OCDA] to help in the enforcement of cleanup of

---

[74]    *People v. Sims*, 32 Cal. 3d 468, 487 (1982), *superseded by statute on other grounds*.

[75]    *Lerner*, 59 Cal. 2d 382, 398 (1963).

[76]    *See* Def. Rule 56.1 Statement ¶¶ 7-10.

[77]    *See id.* ¶¶ 11-12.

MTBE and other petroleum contaminants from leaking gasoline storage tanks in Orange County."[78]  The District's senior staff actively discussed the District's suits and monitored them, and at a meeting after the suit against the BP defendants was filed, the District stated that it "supports the efforts of the DA to expedite cleanup actions by the responsible parties."[79]  The District does not dispute these statements.[80]

The District offers three arguments against it being in privity with the OCDA.  *First*, it relies on an extremely technical statutory interpretation of the term "state agency" in an effort to show that the District is not one, and thus cannot be bound by the weight of authority holding that agents of the same government are in privity with each other.[81]  *Second*, the District argues that the OCDA lacked standing to pursue the District's common law claims.[82]  *Third*, the District asserts that the settlement agreements between the OCDA and defendants contain express

---

[78]    Mills Letter, Ex. E to the Cox Decl., at 2.

[79]    Fall Conf.

[80]    *See* Pl. 56.1 Statement ¶¶ 11-12.

[81]    *See* Opp. Mem. at 10-11.

[82]    *See id.* at 11-12.

language permitting the District's own claims.  I discuss each of these arguments in turn.

The District has represented on numerous occasions, including in its complaint in this case, that the District is an agency.[83]  Indeed, California's Water Code includes water districts in the definition of "state agency."[84]  Nonetheless, the District takes the Court through a murky analysis of statutory schemes and legislative intent to prove that a statutorily-defined "state agency" is not in fact a state agency.[85]  This semantic exercise is not helpful.  Whether the District is technically a "state agency" or something different is not determinative.  What matters is that the interests of the District and the OCDA are aligned.[86]  California courts have considered agents of the same state to be in privity with each other because they are "so identified in interest with [each other] that [they] represent[]

---

[83]      *See* Compl. ¶ 4 ("The District is a special water *agency* . . . .") (emphasis added).

[84]      *See* Cal. Water Code. § 11100 ("State agency includes any . . . water district . . . .").

[85]      *See* Opp. Mem. at 10-11.

[86]      *See Lusardi Constr. Co. v. Aubry*, 1 Cal. 4th 976, 995 (1992) (holding that "[t]he acts of one public agency will bind another public agency only when there is . . . an identity of interests between the agencies").

the same legal right."[87]

State agency or not, the District seeks to enforce the same legal right the OCDA addressed in its prior suits.  In suing defendants, the District aims to protect its own interests and those of the public – interests that are necessarily intertwined.[88]  The OCDA brought its suits "on behalf of the People of the State of California and Orange County," namely, "to prevent destruction of Orange County's groundwater resources and otherwise protect the environment."[89]  In the prior suits and the current one, the objectives of the OCDA and the District are the same.  The District's interests in this suit are in fact the public's interests, which the OCDA represented.[90]  Because "[a] party is adequately represented for

---

[87]   *Lerner*, 59 Cal. 2d at 398 (citations and quotations omitted).  *Accord COAST*, 60 Cal. App. 4th at 1072 n.12.

[88]   The complaint states:
"The District files this lawsuit to recover compensatory and all other damages, including all necessary funds to . . . investigate, monitor, prevent, abate, or contain any contamination of . . . groundwaters within the District from MTBE . . . and to assure that the responsible parties – and not the District *nor the public* – bear the expense."
Compl. ¶ 3 (emphasis added).

[89]   BP FAC ¶ 1.

[90]   As explained above and in my prior ruling, the District's usufructuary rights are appropriative and therefore subordinate to the state.  *See In re MTBE*, 824 F. Supp. 2d at 546-47.

-23-

purposes of the privity rule if his or her interests are so similar to a party's interest

that the latter was the former's virtual representative in the earlier action,"[91] the

District and the OCDA are in privity.

The District's separate but related argument that it could not be in

privity with the OCDA because the OCDA did not have standing to pursue the

District's common law claims is without merit.  A former party need not have

standing to bring a latter party's claims for both parties to be in privity.[92]

Finally, the District argues that the BP Final Judgment and Shell Final

Judgment preclude a finding of privity and thus bar the application of res judicata

to the District's claims.  At first blush, this argument is compelling because the

factual record before the Court indicates that the OCDA did not intend for its

settlements with defendants to bind the District.[93]  But this argument fails as a

---

[91]     *COAST*, 60 Cal. App. 4th at 1070.

[92]     *See Rynsburger v. Dairymen's Fertilizer Coop.*, 266 Cal. App. 2d 269, 276-77 (1968) (holding that a judgment against municipalities in a public nuisance litigation barred second, private nuisance suit brought by individual homeowners because, even though municipality lacked standing to bring private nuisance claims, homeowners "allegations . . . are substantially the same contentions set forth in the People's actions").  *See also Villacres*, 189 Cal. App. 4th at 586 ("[E]ven when the court does not have power to adjudicate a claim, it may still approve release of that claim as a condition of settlement of [an] action [before it].") (citation and quotation omitted).

[93]     *See* Shell Final Judgment, Ex. C to Condron Decl. ¶ 9.6 ("Plaintiff does not intend for this Final Judgment to legally bar . . . any . . . action . . . of . . .

matter of law.

       Under California law, privity does not turn on one party's intent:  all parties to a final judgment must agree to withdraw an issue from the scope of the final judgment to limit its preclusive reach. [94]  Further, courts are reluctant to construe narrowly a general release of claims in a consent judgment, such as the releases the OCDA and defendants agreed to in their final judgments here.[95]  "If parties intend to have some things open and unsettled their intent so to do should be made manifest."[96]  Finally, "even when the court does not have power to adjudicate a claim, it may still approve release of that claim as a condition of settlement of [an] action [before it]. "[97]

       Here, both final judgments at issue contained general releases "from

---

the Orange County Water District."); Hearing Tr., Ex. A to Barnhardt Decl, at 21:5-21:6 ("In essence, [the OCDA] . . . [does not] believe that we're in privity with the Water District.").

[94]    *See Ellena v. State*, 69 Cal. App. 3d 245, 260-61 (1977) (noting that a consent judgment remains preclusive unless all parties expressly agree to withdraw an issue, claim, or party from the scope of the agreement).

[95]    *See Villacres*, 189 Cal. App. 4th at 589.

[96]    *Id.* (citation and quotations omitted).  *Cf. Louie v. BFS Retail & Commercial Operations, LLC*, 178 Cal. App. 4th 1544, 1560 (2009) (declining to apply res judicata to a second suit when "there was express language in the stipulated judgment withdrawing" the relitigated issue in question).

[97]    *Villacres*, 189 Cal. App. 4th at 586 (citation and quotation omitted).

any known or unknown past or present claims, violations, or causes of action that were or could have been asserted" in regard to the unauthorized releases of and the use of MTBE and alleged failures to take corrective action in response.[98]  The BP Final Judgment makes no mention of the District, while the similar Shell Final Judgment memorializes the OCDA's intention for the judgment not to have a binding effect on the District.  However, neither the BP Defendants nor the Shell Defendants agreed to exclude the District from the scope of the final judgments in any way – and not by accident:  when the OCDA and Shell Defendants agreed to remove claims from the Shell Final Judgment, the terms of such agreements were explicit.[99]  In fact, upon entering the Shell Final Judgment, the Orange County Superior Court Judge implied to the OCDA and the District that, regardless of the OCDA's intent, another court could later rule that the judgment precluded the

---

[98]     BP Final Judgment ¶ 6.1.  *Accord* Shell Final Judgment, Ex. C to Condron Decl. ¶ 9.0 (containing an almost identically-worded general release). Further, as defendants accurately note in their reply brief, the language "could have been asserted" does not carve out the District's common law claims.  *See Villacres*, 189 Cal. App. 4th at 586; Reply Memorandum of Law in Support of BP and Shell Defendants' Motion for Summary Judgment Based on Res Judicata at 6 n.2.

[99]     *See, e.g.*, Shell Final Judgment ¶ 9.1 (stating that the "Final Judgment does not release any claims, violations, or causes of action against Defendant Texaco, Inc.").

-26-

District's claims.[100]

        To that point, the District's failed attempt to intervene in the OCDA's settlement with the Shell Defendants at the eleventh hour does not mitigate the preclusive effect of the Shell Final Judgment.  Under California law, an unsuccessful attempt to intervene in a prior action involving the same interests does not negate the res judicata effect of a judgment.[101]  Here, the OCDA adequately represented the District's interests, and the District could have attempted to intervene formally in the action, which the District knew about and monitored for years (and about which it even communicated and met with the OCDA), prior to settlement negotiations.[102]  Instead, the District waited until the

---

[100]   *See* Hearing Tr., Ex. A to Barnhardt Decl, at 28:18-28:21 ("I make no findings about the effect of this settlement on any other action.  I'll let an appropriate court at an appropriate time make those determinations.").

[101]   *See COAST*, 60 Cal. App. 4th at 1072-74 (barring citizen's group action after its unsuccessful intervention attempt in a prior action, even though the court entering the prior judgement had told the citizen's group that it retained a right to pursue separate litigation).  *Cf. City of Martinez*, 353 F.3d at 764 ("[Where city's] interests were not adequately represented by the DFG and it was told not to participate, it would be patently unfair to bar the City's claims based on res judicata.").

[102]   The District does not offer any evidence that the OCDA instructed the District not to intervene or otherwise participate in the prior actions until the eve of the second settlement, six years after the District first knew about and started to monitor the OCDA's litigation, and two years after the District filed its own action.

eleventh hour to seek extra protection for its interests, which the settlement already adequately protected.

### C.  Final Judgment on the Merits

The District and defendants do not dispute that the BP Final Judgment and Shell Final Judgment are final judgments on the merits for res judicata purposes.[103]  Under California law, consent judgments such as the final judgments

---

[103]  The District and the Shell Defendants dispute whether the Shell Defendants' settlement applied to the stations at issue in this case.  *See* Pl. 56.1 Statement ¶ 48 (arguing that the Shell Defendants do not offer evidence demonstrating that the stations the Shell Final Judgment released are the same ones at issue in this action).  Even viewing the facts in the light most favorable to the District, the plain language of the settlement shows that there is no genuine dispute here – the stations released in the Shell Final Judgment are the same stations at issue here.  The Shell Final Judgment states:

> [T]his Final Judgment is a final and binding judgment, release, resolution and settlement of all claims, violations, or causes of action that were alleged in the First Amended Complaint against Settling Defendants, or could have been asserted based on the facts alleged in the First Amended Complaint, including all claims, violations, or causes of action in regards to the sites listed on Exhibit A.

Shell Final Judgment ¶ 9.0.  Therefore, the Shell Final Judgment covered all claims at issue in the Shell FAC, which applied to all underground storage tank locations in Orange County "own[ed], operate[d] and or/suppl[ied]" by Shell Defendants, "including but not limited to the sites specified in Exhibit 'A'."  Shell FAC ¶ 21. That the Shell Defendants failed to attach "Exhibit A" to their original motion papers is of no consequence because the release applied to all of the Shell Defendants' stations – the same stations at issue in the District's suit.  In any event, the Shell Defendants did submit Exhibits A and B to the Shell Final Judgment in their reply declaration, supplying the District with the evidence it argued the Shell

at issue here constitute valid and enforceable final judgments on the merits and may be given res judicata effect.[104]

## V.    CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED.  The Clerk of the Court is directed to close the motions (Doc. No. 333).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              September 16, 2014

---

Defendants lacked.  *See* Exs. C and D to Condron Reply Decl.

[104]        *See, e.g.*, *COAST*, 60 Cal. App. 4th at 1065; *Villacres*, 189 Cal. App. 4th at 569.

**- Appearances -**

**Liaison Counsel for Plaintiffs:**

Robin Greenwald, Esq.
Robert Gordon, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
(212) 558-5500

**Counsel for the District**:

Michael Axline, Esq.
Miller, Axline, & Sawyer
1050 Fulton Avenue, Suite 10
Sacramento, CA 95825
(916) 488-6688

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
McDermott Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
(212) 547-5583

**Counsel for Shell Defendants:**

Richard E. Wallace, Jr., Esq.
Peter C. Condron, Esq.
Amanda Gilbert, Esq.
Sedgewick LLP
29 K Street, N.W.
Harbourside — Suite 500
Washington, D.C. 20007
(202) 204-1000

**Counsel for BP Defendants**:

Matthew T. Heartney, Esq.
Lawrence A. Cox, Esq.
Stephanie B. Weirick, Esq.
Arnold & Porter  LLP
777 South Figueroa Street
Los Angeles, California 90017
(213) 243-4150