Ea11mtbc

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   In Re: Methyl Tertiary Butyl
    Ether ("MTBE") Products
4   Liability Litigation
                                        00-CV-1898 (SAS)
5

6                                       Conference
    ------------------------------x
7
                                        New York, N.Y.
8                                       October 1, 2014
                                        2:42 p.m.
9

10  Before:

11                  HON. SHIRA A. SCHEINDLIN,

12                                       District Judge

13                          APPEARANCES

    WEITZ & LUXENBERG P.C.
14       Liaison Counsel for Plaintiffs
    BY:  WILLIAM A. WALSH, ESQ.
15

    MILLER & AXLINE LLP
16       Attorneys for Plaintiffs (PR, NJ, & PA)
    BY:  MICHAEL D. AXLINE, ESQ.
17

    JACKSON GILMOUR & DOBBS, PC
18       Attorneys for Plaintiffs (PR)
    BY:  JOHN D.S. GILMOUR, ESQ.
19

    LAW OFFICES OF JOHN K. DEMA, P.C.
20       Attorneys for Plaintiffs (PR)
    BY:  JOHN K. DEMA, ESQ.
21       NATHAN SHORT, ESQ.

22  COHN, LIFLAND, PEARLMAN, HERRMANN & KNOPF, L.L.P.
         Attorneys for Plaintiffs (NJ)
23  BY:  LEONARD Z. KAUFMANN, ESQ.

24

25

Ea11mtbc

APPEARANCES
(Continued)

MCDERMOTT, WILL & EMERY, LLP
      Attorneys for Defendants Esso/Exxon (and Liaison Counsel)
BY:  JAMES A. PARDO, ESQ.
      STEPHEN J. RICCARDULLI, ESQ.

ARCHER & GREINER PC
      Attorneys for Defendants Esso/Exxon
BY:  WILLIAM J. STACK, ESQ.

MOUND COTTON WOLLAN & GREENGRASS
      Attorneys for Defendant Trammo
BY:  BARRY R. TEMKIN, ESQ.
      CHRISTOPHER D. AMORE, ESQ.

THOMPSON & KNIGHT LLP
      Attorneys for Defendant Petrobras
BY:  DAVID C. SCHULTE, ESQ.

KING & SPALDING, LLP
      Attorneys for Defendants Chevron and Unocal
BY:  CHARLES C. CORRELL, ESQ.

EIMER STAHL LLP
      Attorneys for Defendant CITGO
BY:  LISA S. MEYER, ESQ.

SEDGWICK LLP
      Attorneys for Defendant Shell
BY:  PETER C. CONDRON, ESQ.
      DAVID M. COVEY, ESQ.

SEPULVADO & MALDONADO
      Attorneys for Total Petroleum Puerto Rico Corp.
BY:  ALBENIZ COURET-FUENTES, ESQ.

SÁNCHEZ-BETANCES, SIFRE & MUÑOZ-NOYA, PSC
      Attorneys for Defendant
BY:  ADRIAN SANCHEZ-PAGAN, ESQ.

Ea11mtbc

```
 1              (Case called)

 2              THE COURT:  Good afternoon, Mr. Walsh.

 3              MR. WALSH:  Good afternoon, your Honor.

 4              THE COURT:  Mr. Axline.

 5              MR. AXLINE:  Good afternoon, your Honor.

 6              THE COURT:  Mr. Gilmour.

 7              MR. GILMOUR:  Good afternoon, your Honor.

 8              THE COURT:  And Mr. Dema.

 9              MR. DEMA:  Good afternoon, your Honor.

10              THE COURT:  Mr. Pardo.

11              MR. PARDO:  Good afternoon, your Honor.

12              THE COURT:  And Mr. Riccardulli.

13              MR. RICCARDULLI:  Good afternoon.

14              THE COURT:  Mr. Stack.

15              MR. STACK:  Good afternoon, your Honor.

16              THE COURT:  Mr. Correll.

17              MR. CORRELL:  Good afternoon.

18              THE COURT:  Ms. Meyer.

19              MS. MEYER:  Good afternoon, your Honor.

20              THE COURT:  Mr. Schulte.

21              MR. SCHULTE:  Good afternoon, your Honor.

22              THE COURT:  Is it Mr. Couret?

23              MR. COURET FUENTES:  Couret, yes, your Honor.  Good

24  afternoon, your Honor.

25              THE COURT:  Mr. Sanchez?
```

Ea11mtbc

 1              MR. SANCHEZ PAGAN:  Good afternoon, your Honor.

 2              THE COURT:  Mr. Condron.

 3              MR. CONDRON:  Good afternoon, your Honor.

 4              THE COURT:  And all those who aren't on the seating

 5      chart, good afternoon to all of you.

 6              COUNSEL:  Good afternoon.

 7              THE COURT:  So we have a lot of submissions but maybe

 8      not a terribly long agenda.  I have of course the joint agenda

 9      that you submitted.  September 22nd, I received the

10      defendant's preconference letter; a September 22nd

11      plaintiff's preconference letter; September 24th, defendant's

12      preconference reply letter; and September 25th, plaintiff's

13      preconference reply letter; and then September 29th, another

14      defendant's reply letter, I guess having to do with the

15      certification issues.

16              So the agenda that I see is: first, the Puerto Rico

17      case, then the Pennsylvania case, and then the New Jersey case.

18      And the Pennsylvania and New Jersey cases really have no

19      contested issues to discuss, so we probably should just take

20      them out of order and be done with them.

21              One moment.  I just want to make sure what the issue

22      is.

23              Okay.  In Pennsylvania, the parties want to discuss

24      the proposal extending the deadline to answer or move to

25      October 31, 2014.  Is that still what the defense wants?

Ea11mtbc

1          MR. AXLINE:  Well, your Honor, we discussed this in

2     advance, and the Commonwealth now plans to file an amended

3     complaint, and that development occurred after the defendants

4     approached us with their answer time, so we worked out, subject

5     to the court's approval, a schedule which would give the

6     Commonwealth 30 days to file an amended complaint.

7          THE COURT:  30 days from now?

8          MR. AXLINE:  From now.  And the defendants 30 days to

9     file responsive pleadings or an additional 30 days if, after

10    seeing the amended complaint, they decide that they need that.

11    We would have no objection.

12         THE COURT:  Is it a relatively new case?

13         MR. AXLINE:  Yes, it is.

14         THE COURT:  Okay.  So you would want until

15    October 30th to file the amended complaint.  That's a

16    Thursday.

17         MR. AXLINE:  Yes.

18         THE COURT:  And then they would have till

19    November 28th if they choose to answer, or December 23rd,

20    so it won't be Christmas Eve, to move if they wish to move.

21    That would be the schedule?

22         MR. AXLINE:  That's the proposed schedule, your Honor.

23         MR. PARDO:  Actually, that may be right.  I didn't

24    know that we were putting answers and responsive pleadings on I

25    guess separate tracks.

Ea11mtbc

1          THE COURT:  Well, we are.  In other words, if you're

2     going to answer, just do it.  It's not very hard to answer.  It

3     usually reads denied, denied, denied, and denied.  So it's

4     really not all that hard.  But seriously, if you're going to

5     move, then you want the two months to write it out.

6          MR. PARDO:  That's correct.

7          THE COURT:  But you'll know which it is within 30 days

8     from receiving it.  After all, it's an amended complaint.  And

9     you've all been doing MTBE litigation for a long time.  Surely

10    you can read the complaint and know whether you intend to move

11    or whether you intend to answer, or sometimes both.  Sometimes

12    you want to file an answer and do a 12(c) and I don't know.  So

13    we'll have dates set for that too.  So let's just say if you're

14    going to answer, it is November -- I think I said 28th but

15    that's the Friday after Thanksgiving, so again, to avoid that

16    problem, let's just call it the 25th.  So October 30th for

17    the amended complaint; November 25th for any answer; and

18    December 23rd for any motion.  That's done.

19         MR. PARDO:  That's fine.  We have master answers on

20    file as well.  I think we'll probably need to change those.

21         THE COURT:  Right.  I don't know what this amended

22    complaint looks like and how it would relate to the

23    consolidated amended complaint.  It may look different.  It's

24    many years later.  Maybe they're writing the complaints

25    differently.  I have no idea.

Ea11mtbc

1          MR. AXLINE:  If there is a surprise, your Honor, and

2     the defendants feel like they need more time, I don't think --

3          THE COURT:  Please don't be generous with my schedule.

4     I keep telling you I'd like to live through the MTBE

5     litigation.  Every time you add months, it gets less likely,

6     Mr. Axline.  And soon it may be your issue too, but right now

7     it's my issue.

8          So in any event, that takes care of Pennsylvania.

9          Now let's take a look at New Jersey.  I think you

10    wanted to do an update on settlements, but I've signed off on

11    the materials I received.  Yes, Mr. Axline?

12         MR. AXLINE:  If your Honor is saying you've signed

13    the --

14         THE COURT:  I did.  This morning.

15         MR. AXLINE:  Thank you very much.

16         THE COURT:  I read it all carefully.  I understand how

17    you resolved the issue I had before.  Defendants seemed ready

18    to sign and did, plaintiffs seemed ready to sign and did, I see

19    no reason for the court to stand in the way, so I signed, and

20    did, and docketed.  So it's done.

21         MR. AXLINE:  Fine.  I'll sit down.  Thank you.

22         THE COURT:  All right.  So the only items we have

23    today relate to Puerto Rico, right?  All right.

24         So the first one is the plaintiff's request for

25    certification of an interlocutory appeal of this issue of this

Ea11mtbc

 1    Law 53 order, and I'll be happy to hear you.  It seems like you

 2    want to be heard, Mr. Gilmour.

 3            MR. GILMOUR:  Yes, your Honor.  Your Honor, I think

 4    the standard for a 1292(b) is clear, and I believe the court's

 5    aware but just for purposes of stating it --

 6            THE COURT:  I'm surely aware of it because I get a

 7    request every two months on some case or another.

 8            MR. GILMOUR:  Yes, your Honor.  To guide my

 9    discussion, I'd just like to recite it.  One, you need to show

10    a controlling question of law; two, a substantial ground for

11    difference of opinion; and three, immediate appeal from the

12    order may materially advance the ultimate termination of the

13    case.  Our position, your Honor, is that the Commonwealth has

14    met all three of these factors regarding the court's August 29,

15    2014 order related to Law 53.

16            In preparing for this hearing, Judge, I went back and

17    I read through a lot of caselaw, a lot of motions, a lot of

18    letter briefing, transcripts, pretty much everything I could

19    get my hands on, and I came to one universal truth that I think

20    permeates this issue and it's that Puerto Rico, your Honor, is

21    truly a unique jurisdiction.  It is one of only two

22    jurisdictions in the United States that is based on the civil

23    code.  It is the only civil code jurisdiction in the United

24    States that is based on Spanish civil code.  It has a unique

25    Spanish history dating back hundreds of years.  That was only

Ea11mtbc

1   relatively, in terms of a country's history, relatively

2   recently impacted by Anglo-American influence after the

3   Spanish-American War.  The primary language spoken there is

4   English.  Cases are tried --

5          THE COURT:  Is English?

6          MR. GILMOUR:  I'm sorry, your Honor, Spanish.  Thank

7   you.  Cases are tried there in Spanish.  Laws are written in

8   Spanish.  The legislature is conducted in Spanish.  Orders are

9   written in Spanish.  And because of that, no other jurisdiction

10  in the United States is like Puerto Rico.

11         THE COURT:  And where would an interlocutory appeal be

12  heard?

13         MR. GILMOUR:  I believe it would be heard by the

14  Second Circuit, your Honor.

15         THE COURT:  Second.

16         MR. GILMOUR:  Yes, your Honor.

17         THE COURT:  Which Puerto Rico is in the First.

18         MR. GILMOUR:  Yes, your Honor, but arising out of the

19  MDL court, I believe it would go to the Second Circuit.

20         THE COURT:  Does defense counsel agree any such appeal

21  would be to the Second Circuit?

22         MR. PARDO:  I believe so, your Honor, yes.

23         MR. GILMOUR:  Because of the uniqueness of Puerto

24  Rico, Judge, as you know, Law 53 itself had to be translated.

25  I stood before you at one of our case management conferences

Ea11mtbc

1   and said I did not have a translation for you yet, I had to get

2   it translated.  We had to translate the legislative history, we

3   had to translate every possible case that might apply to it, we

4   had to translate agency's comments on Law 53, and all of this

5   to be done within a time frame that was understandable but

6   difficult to deal with, so to comply with that, I know that on

7   the Commonwealth side, we employed multiple translation

8   companies from Puerto Rico, Texas, and California.  And I know

9   that defendants employed at least one if not more translation

10  companies to do that.  At the end of the day none of these

11  translations -- nobody was able to compare them.  We had

12  originally talked about sharing translations and trying to get

13  it done and compare them, but it just was not possible.  I say

14  that because what we have all been tasked with doing is parsing

15  the words of this law, Law 53, and the cases that apply to it

16  and --

17          THE COURT:  Let me understand.  Whether you win or

18  whether you lose an appeal, the case would not be over, right?

19  There's going to be a case to be tried.

20          MR. GILMOUR:  Yes, your Honor.

21          THE COURT:  It's just that some defendants may be in

22  it, some defendants may not be in it, but there has to be a

23  case to be tried, right?

24          MR. GILMOUR:  Yes, your Honor.

25          THE COURT:  So at the end of that case, some day,

Ea11mtbc

1   there would be an appeal and that appeal could raise this Law

2   53 issue in the First Circuit, right?

3           MR. GILMOUR:  Yes, your Honor, if the case is remanded

4   to the District of Puerto Rico for trial.

5           THE COURT:  Not if.  It will be if anybody's left.

6   Unless all defendants have settled, that's exactly where it

7   will be tried and any appeal would be in the First Circuit,

8   including this issue, which deals with issues in Puerto Rico

9   all the time on appeal.  I mean, there's a certain efficiency

10  to say the case won't end by whatever happens in the Second

11  Circuit.  There will just be more or less defendants.  At the

12  end of the day, at the end of the trial, all issues would go to

13  the First Circuit and the First Circuit would interpret Puerto

14  Rico law, which apparently it's familiar with doing and has

15  dealt with this Spanish issue before, and there's really no

16  grounds for difference of opinion in the sense that nobody else

17  is going to talk about this particular law.  There's not going

18  to be a circuit split or anything like that.  At the end of the

19  day, appellate review will be appropriate in the First Circuit.

20  I sort of like that idea.

21          MR. GILMOUR:  Yes, your Honor, and in fact --

22          THE COURT:  Why involve the Second Circuit, which

23  knows nothing about Puerto Rico in particular?

24          MR. GILMOUR:  In preparing for this, your Honor, I

25  looked at a number of First Circuit Court of Appeals opinions

Ea11mtbc

1   that dealt with Puerto Rico as well as United States Supreme

2   Court opinions that dealt with Puerto Rico, and in each of

3   those instances, your Honor, due to the very issues that we've

4   just been talking about, every one of those cases, the

5   appellate court certified the issue to Puerto Rico Supreme

6   Court because of these issues.

7           THE COURT:  Which I didn't have the option of doing.

8           MR. GILMOUR:  We did request that it be certified,

9   your Honor, back after the December 30th --

10          THE COURT:  I could have certified this to the Puerto

11  Rico Supreme Court?

12          MR. GILMOUR:  Yes, your Honor.

13          THE COURT:  I must have missed that beat, or at least

14  I don't recall it.

15          The defense is looking at each other and deciding

16  whether that was really requested.  Do you recall that being

17  requested, Mr. Pardo?

18          MR. PARDO:  I have no recollection of such an

19  application, your Honor.

20          MR. GILMOUR:  If I may be clear, your Honor, there was

21  not a separate motion to certify the issues to the Puerto Rico

22  Supreme Court.  It was raised as an alternative I believe in

23  the motion to reconsider your December 30, 2013 order, and it

24  was also raised I believe in the letter briefing on Law 53 that

25  preceded the oral argument on Law 53 prior to your Honor's

Ea11mtbc

1   29th of 2014 order.  But Mr. Pardo is correct that there was

2   not a separate motion to certify the issue.

3             THE COURT:  Could you still do that and bypass the

4   Second Circuit?

5             MR. GILMOUR:  Yes, your Honor, but it would be at your

6   discretion.

7             THE COURT:  Right.  I got that.  That would be a

8   better court to look at this than the Second Circuit, in my

9   opinion.

10            MR. GILMOUR:  Yes, your Honor.

11            THE COURT:  My order of preference would be Puerto

12  Rico Supreme Court, First Circuit, last of all, the Second

13  Circuit.  That is my order of preference for review if there's

14  going to be review.

15            MR. GILMOUR:  If it would be permissible by your

16  Honor, then we would move to have the issue certified to the

17  Puerto Rican Supreme Court from your Honor's court.  I think

18  that would be the fastest resolution of the issue.

19            THE COURT:  That's another issue.  I think it would

20  take a really long time in the Second Circuit.  Really long

21  time.  And maybe this Puerto Rico Supreme Court would have a

22  good reason to do it faster.

23            MR. GILMOUR:  I think so, your Honor, and in fact,

24  because again -- and forgive me for a moment, but in looking at

25  all of these cases, particularly from the First Circuit, the

Ea11mtbc

1     Puerto Rico Supreme Court, and I quote, your Honor, it says,

2     "We have recently and repeatedly welcomed the federal court's

3     willingness to resort to this court by way of a certification

4     mechanism when addressing unresolved questions of Puerto Rican

5     law.  We have stated that the respect shown by federal courts

6     for Puerto Rico law and caselaw contributes to the improvement

7     of the relationship between federal and Puerto Rican

8     jurisdictions."  So --

9               THE COURT:  Well, I sort of like that idea.  I haven't

10    heard from the defense, and I'm sorry I missed that beat that

11    you raised in letters and reconsiderations briefing, but if I

12    were to do that now, we would continue to prepare this case for

13    trial and remand.  I mean, my other issue is that I'm about to

14    have summary judgment motions that could moot this issue, isn't

15    that right?  Theoretically.

16              MR. GILMOUR:  Theoretically I believe it could moot

17    the issue as to certain defendants, your Honor, but not as to

18    all defendants.

19              THE COURT:  Not as to all.  But there's no reason they

20    couldn't go forward simultaneously.

21              MR. GILMOUR:  Agreed, your Honor.

22              THE COURT:  I like that idea.

23              Let me hear from the defense.  Why shouldn't I certify

24    this question to the Puerto Rico Supreme Court, which really

25    would have been the best jurisdiction to interpret its own law

Ea11mtbc

1    anyway and you go ahead with your seven summary judgment

2    motions or whatever it is and while you'd be getting that

3    briefing done and getting those issues decided, you could

4    hopefully move promptly in the Supreme Court, get it briefed

5    and maybe decide, if there's going to be a trial, it doesn't

6    turn out to be piecemeal, it would have all the available

7    defendants.  If the Puerto Rico Supreme Court agrees with me,

8    then we know there will be less defendants at trial; if they

9    disagree, there will be more defendants at trial.  Why isn't

10   this sort of a good idea?  Because waiting to the end of the

11   trial and then an appeal to the First Circuit, which will

12   probably only certify to the Puerto Rico Supreme Court, seems

13   amazingly inefficient, especially if the Puerto Rico Supreme

14   Court says, given Law 53, these defendants are back in and you

15   have to try it again, the plaintiffs have to try it again

16   against those defendants.  That does seem somewhat nutty.

17          MR. PARDO:  With the caveat that this was not part of

18   the application so I have not looked at any of this --

19          THE COURT:  I understand that, it's come up today, but

20   I like it.  I like it.  It's the right place for the issue.  I

21   knew the Second Circuit was the wrong place for the issue.  But

22   this sounds like the right place for the issue.

23          MR. PARDO:  Well, I don't practice regularly in Puerto

24   Rico.  I'm told that this process takes a great deal of time.

25          THE COURT:  Oh.  Mr. Gilmour said he thought it would

Ea11mtbc

1   happen rapidly.

2            MR. GILMOUR:  Yes, your Honor.  It's my understanding

3   that the Puerto Rico Supreme Court is amenable to receiving

4   certain certified questions, and I can't tell you an exact time

5   frame.

6            THE COURT:  No, no one can tell an exact time frame.

7   We'd all like to find that out for all our appellate issues,

8   but there should be estimates.  Mr. Pardo seems to know that it

9   takes a very long time.  I thought you indicated you thought it

10  wouldn't.  There are some lawyers here from Puerto Rico today.

11  They may have more of a sense of how long an appeal takes once

12  it's presented.  I will say, this is a narrow appeal.  There's

13  no record.  This is not like a record of an eight-week trial or

14  something.  There's no transcript.  I mean, this is easy.  This

15  is easy.  It's pure law.

16           MR. COURET FUENTES:  Your Honor, if I may.  Having

17  practiced before the Puerto Rico Supreme Court, I can tell you

18  usually it takes between six months to a year for certified

19  questions to be answered, sometimes more.  You will find cases

20  from the First Circuit actually saying that the Supreme Court

21  took too long and that delayed the litigation.

22           Let me just also point out that the first step, which

23  would also take several months, is that after you issue an

24  order certifying the case, if you do so, under Rule 25 of the

25  Puerto Rico Supreme Court, they would have to decide first and

Ea11mtbc

1    there will be briefing on whether they should accept the

2    certification, and then after that, go through the whole

3    court --

4            THE COURT:  But if they turn it down, we'll get that

5    answer fairly promptly.  If they take it, the parties could ask

6    for expedited briefing on the theory that there's a number of

7    other defendants and an imminent trial and maybe they'll get

8    it.  So I still think it sounds like a good idea.

9            MR. COURET FUENTES:  Right.  That would be part of the

10   time frame that it would take before the certification and

11   final decision.

12           THE COURT:  Right.  I understand that.  I get that.

13   But if they turn it down, that idea is done.  And I think once

14   they turn it down, if they do, I'm not going to be certifying

15   to the Second Circuit.  I know that.  And that's the only

16   circuit I can certify to, so that's that.  That's going to get

17   denied.  But I like this idea.  If they take it, then it's six

18   months to a year, but by the time this case is really scheduled

19   for trial, it's probably six months to a year, and all these

20   other motions are coming in.  Do we have a briefing schedule on

21   the seven?

22           MR. GILMOUR:  We do, your Honor.

23           THE COURT:  When is it fully briefed?

24           MR. RICCARDULLI:  It's scheduled for the 28th.  It's

25   the Friday after Thanksgiving, the reply papers.

Ea11mtbc

1        THE COURT:  That's the final brief would be end of

2   November.

3        MR. RICCARDULLI:  Yes, your Honor.

4        THE COURT:  So if I do this fast, you may have a

5   declination within three months.

6        MR. COURET FUENTES:  I've filed for petitions for

7   cert, and it can take up to six months and usually the whole

8   process will take over a year.  So that's for your

9   consideration.

10        THE COURT:  That's helpful but that's not

11   unanticipated.  It's not going to be any faster any other way.

12        Did you want to add something?

13        MR. SANCHEZ PAGAN:  No, thank you.

14        THE COURT:  No.  Back to you, Mr. Pardo.  I'm inclined

15   to give this a try to get this issue of Puerto Rico law

16   finalized because it would be inefficient, as I say, to try

17   this case to verdict, take an appeal to the First Circuit, have

18   the First Circuit certify the Law 53 question to the state

19   court.  I mean, it's not going to be good.  And they may not

20   take it and I think that will be the end of the road for the

21   plaintiffs, but if they take it, might as well know what they

22   have to say, in time for the trial.

23        MR. PARDO:  I understand your inclination.  I think

24   that this approach falls potentially victim to the same issues

25   that we'd have if we typically did this under 1292.  I would

Ea11mtbc

```
 1   like the opportunity, though, because I haven't looked at this,
 2   to go and look at the cases that Mr. Gilmour is referring to --
 3           THE COURT:  He's got a notebook of them where the
 4   First Circuit --
 5           MR. PARDO:  -- and send you a letter.
 6           THE COURT:  Why?
 7           MR. PARDO:  Because we haven't been heard on it.
 8           THE COURT:  I don't want to waste very much time on
 9   it.  I'll give you a week, but the bottom line is, he's got the
10   stack of cases that he can give you.  You don't have to go on
11   your own research machine.  He can give you his stack.
12           MR. PARDO:  I don't have a research machine.
13           THE COURT:  I know, but you don't need it.  Take a
14   look at his stack.  You'll see that the First Circuit often
15   says this is an issue of Puerto Rican law.  Let the Puerto
16   Rican court tell us what their view is, we'll take it back from
17   there.  Obviously the Second Circuit does that too on New York
18   questions.  But it is a question of Puerto Rico law.  The
19   legislature passed this act.  I have my views on whether it
20   should apply to this case or not, but they did pass it.  So
21   it's going to end up there, through the First Circuit, at the
22   end of the day, and it just seems efficient to start the
23   process now.
24           So all I can say for this oral argument is, I'm going
25   to sign this order, which you'll draft the language.  I want to
```

Ea11mtbc

```
 1    do it as fast as possible, so if you want a week to look at
 2    his, he's happy to give you all the citations that he put
 3    together.  Take a look.  But really, why oppose it?  I mean, if
 4    they're going to say no, good, that will be done.  If they're
 5    going to say yes, I have all your motions to decide, lots of
 6    little discovery things that are still in today's conference
 7    we've got to get to and it's got to get remanded, then some
 8    fortunate or unfortunate judge has to clear three months to
 9    figure out a trial date.  You know it's going to take time.
10    That's just life.
11              MR. PARDO:  It's just issues of Puerto Rican law come
12    up all the time in federal courts and they're not all referred
13    to the First Circuit.
14              THE COURT:  But this isn't just any issue.  This is
15    the legislature of a Commonwealth.  Anyway, this is a
16    legislature of a Commonwealth passing a law and some judge
17    unrelated to Puerto Rico sitting in New York, you know, says
18    what it means or doesn't mean and how it applies to this case
19    or not.  That's pretty unique.  Of course the First Circuit
20    doesn't send every issue to the Puerto Rican courts just like
21    Second Circuit doesn't send every issue of New York law to New
22    York courts.  But the ones they do send tend to be first
23    impression that they feel, in deference, the state court should
24    decide.  We get issues of New York law every day, but none of
25    them are certified because there's reams and reams of history.
```

Ea11mtbc

1    This is not true here.  This is a new statute.

2              MR. PARDO:  But the applicability of prescription is

3    not a new issue, your Honor, as you know.  You've seen these

4    cases.  We believe you decided this issue correctly.  I think,

5    again, with the caveat I haven't looked at any of the cases on

6    this, I think we're talking about piecemeal -- we've been

7    focused on their application for 1292 --

8              THE COURT:  I know.

9              MR. PARDO:  I think we're talking about piecemeal

10   appeal and delay.

11             THE COURT:  I don't think there's going to be any

12   delay, actually, and I think that whether it's the First or the

13   Second Circuit, they're going to send it to Puerto Rico, and

14   I'm not inclined to give a 1292(b) anyway.  I don't think it

15   really meets the standard, but I look at it as my failure.  I

16   didn't pick up on the request earlier to send it to the Puerto

17   Rico Supreme Court.  My oversight.  If I'd really noticed that,

18   I might have done it.

19             MR. PARDO:  I frankly don't recall it either, your

20   Honor.

21             THE COURT:  So you're forgiving me then.  I appreciate

22   that.  I appreciate that.

23             MR. PARDO:  I'm also suggesting, I'm not sure it was

24   made as clearly as it might have been.  I don't know.

25             THE COURT:  That may be too.  Maybe not as clearly as

Ea11mtbc

```
 1   it might have been, but if they say it was in the papers

 2   somewhere, it probably was and it was my oversight.  But it

 3   does seem the right place for the issue to me.

 4          So I'm not going to grant it today but I want to move

 5   very quickly.  To lose time back and forth with long briefs

 6   here doesn't make any sense.  So Mr. Gilmour, you don't need to

 7   write a brief.  You've made the application quite formally

 8   today.  And will you share your list of cases of First Circuit,

 9   all of them, with the defense, right after the meeting, today?

10          MR. GILMOUR:  Yes, your Honor.

11          THE COURT:  Take a look.  Do you want to have a

12   letter, Mr. Pardo?  Do you want to have a letter or brief to me

13   in a week?

14          MR. PARDO:  A week.  We need a week.

15          THE COURT:  Sure.  I just said would you have a letter

16   or brief to me.  Today is October 1$^{st}$, so by October 8$^{th}$, a

17   letter or brief, whichever you prefer.

18          MR. PARDO:  I think it would be easier for your Honor

19   if we did a letter.

20          THE COURT:  That's fine.  Then double-space it,

21   though, out of pity.

22          And Mr. Gilmour, while you're not having to write a

23   brief, would you consider writing a proposed order?

24          MR. GILMOUR:  Yes, your Honor, I will.

25          THE COURT:  So I can see the language.  And of course
```

Ea11mtbc

1    send it to your adversary of what such a certification order

2    would look like.

3              MR. GILMOUR:  Yes, your Honor.

4              THE COURT:  And copy to the defendants, of course.

5              MR. GILMOUR:  Of course.

6              THE COURT:  Mr. Riccardulli?

7              MR. RICCARDULLI:  Yes, your Honor.  Just one thing,

8    because we talked about the summary judgment motions.  The one

9    motion though that we contemplated filing did deal with statute

10   of limitations.  If we're going to certify it down to Puerto

11   Rico, we'd have to wait for that decision before we could then

12   file the motion --

13             THE COURT:  Because it's a motion that replicates the

14   two I've already decided?

15             MR. RICCARDULLI:  Similarly.  I think that was based

16   on the Commonwealth's knowledge about certain defendants.  This

17   is more knowledge that relates to MTBE and the use in the

18   Commonwealth.  So they're not identical but that motion is

19   waiting, so, you know, we're prepared to file that.  I think we

20   said that before.

21             THE COURT:  But it might turn on the --

22             MR. RICCARDULLI:  It definitely turns on it.

23             THE COURT:  Let me finish the sentence for the record.

24   It turns on the applicability of this Law 53.

25             MR. RICCARDULLI:  It does.  And the other point I'm

Ea11mtbc

```
 1   making is, that's still going to be sitting around.  We can't

 2   work this case up truly for trial.  That may need to be dealt

 3   with.  If it's not accepted in the first instance or denied or

 4   your decision's upheld, we'd have to come back to the summary

 5   judgment phase.

 6            THE COURT:  That's fine.  I mean, I understand that.

 7            MR. PARDO:  What is the issue that will be certified?

 8            THE COURT:  I just said this.  You were maybe

 9   conferring and didn't hear.  I said while you're taking the

10   week to write the letter, Mr. Gilmour should immediately

11   consider how he would draft the order and propose an order that

12   defines the issue to be certified.  He will do that.  Promptly.

13   Very promptly.

14            MR. GILMOUR:  Yes, your Honor.

15            THE COURT:  Maybe by this Friday.

16            MR. PARDO:  Can we get that before we have to put our

17   letter in?

18            THE COURT:  Could you do that?  You need to just frame

19   that order.  It would be top priority.  Maybe close of business

20   this Friday, Mr. Gilmour.

21            MR. GILMOUR:  Yes, your Honor.  I think I can have it

22   by this Friday.

23            MR. PARDO:  By this Friday would be fine.

24            THE COURT:  Okay.  I think that's where we stand on

25   the certification right now.
```

Ea11mtbc

1          All right.  The next issue seems to be requests for

2    admissions.  Mr. Stack?

3          MR. STACK:  Yes, your Honor.  There are three issues

4    embedded in that.  One deals with requests for admissions that

5    we served on the Commonwealth, the other with responses to

6    discovery that the Commonwealth served on Esso or Exxon.  I

7    spoke to my colleague Mr. Axline.  We have worked out an

8    agreement and we do not have to submit that to the court.

9    There is a separate issue concerning PRASA though that will

10   have to be addressed by the court.

11         THE COURT:  So that's the only one.  You worked out

12   the --

13         MR. STACK:  Yes.

14         THE COURT:  All right.  So we're just at the PRASA

15   one.  Okay.  So defendants here are asking the plaintiffs to

16   admit that PRASA has not taken certain actions related to MTBE.

17   For example, admit that to date, PRASA has not performed

18   remedial activities due to MTBE at any wells within the

19   plaintiff's delineation of the Shell No. 3042 trial site.

20   Defendants got an answer but they don't like the answer.  They

21   qualified their answer by claiming they're unaware of certain

22   information, right?

23         MR. RICCARDULLI:  Yes, your Honor.

24         THE COURT:  And I know the argument is that they've

25   been working together and that they've turned over discovery

Ea11mtbc

1    previously on behalf of PRASA, and you also think that PRASA's

2    been cooperative and mined its data, so to speak, to aid the

3    plaintiff's case, so for them to say they're unaware of

4    information relating to all of PRASA's activities you say

5    really can't be credible since they're working together and

6    since they've answered other discovery requests with respect to

7    PRASA.  And along those lines, PRASA is a covered person, as

8    we've defined it here, and plaintiffs have produced documents,

9    coordinated depositions, etc.  But it's not a party.

10          So maybe I should hear from the plaintiffs first,

11   Mr. Riccardulli.  What does it mean when you write, "Plaintiffs

12   admit that they are unaware of any activities undertaken by

13   PRASA due specifically to MTBE at the referenced wells, and

14   it's plaintiff's understanding that no testing or very limited

15   testing for MTBE or TBA has occurred at the referenced wells"?

16   How can you be qualifying things by saying "unaware" and "my

17   understanding"?  I think as a matter of law, Mr. Axline, you

18   have a good argument that they're not a party and you really

19   cannot be compelled, so to speak, to answer for a party, but

20   having chosen to, what's with all these qualifications?

21          MR. AXLINE:  Well, what the Commonwealth chose to do,

22   your Honor, was to facilitate responses from PRASA, but

23   Rule 36, request for admission is very different.  As you know,

24   it binds a party and it makes much more serious consequences.

25          THE COURT:  Right.

Ea11mtbc

1          MR. AXLINE:  We do not represent PRASA, and PRASA has

2     its own attorneys, its own internal mechanisms, and it's a huge

3     organization.  So, you know, we have tried to give the

4     defendants as complete an answer as we can, given the fact that

5     we're answering on behalf of the Commonwealth, and I think, you

6     know, for trial purposes, they can make what they will of this

7     request for admissions, but it is a complete admission with

8     respect to the state of the Commonwealth's knowledge.

9          THE COURT:  So when you say you're unaware of

10    something, you mean what you say; you mean "not to our

11    knowledge."  "They may have done it but not to our knowledge."

12    What investigation did you undertake to make that statement?

13         MR. AXLINE:  We went through all of the Commonwealth's

14    files.  We looked for communications.  I mean, it's sort of the

15    standard search that we did for all of the responses to

16    requests for admissions to see if we had anything to allow us

17    to answer it definitively and unequivocally.

18         THE COURT:  But did you request PRASA's cooperation by

19    saying, look through your files to give us the answer?

20         MR. AXLINE:  We have asked PRASA for what it has on

21    the subject, and I guess we could add that to the response, but

22    what we can't do is respond on behalf of PRASA and say

23    definitively, this is an admission, because we know everything

24    that PRASA knows, that this didn't happen.  Because the

25    Commonwealth doesn't know everything --

Ea11mtbc

1           THE COURT:  All right.  But you're saying you did make

2      an effort to obtain the information from them, so when you

3      wrote a phrase like, "It's our understanding that no testing or

4      very limited testing occurred at the referenced wells," what do

5      you mean by, "It's our understanding"?  That means that's based

6      on our communications with PRASA?

7           MR. AXLINE:  Yes.  And the defendants have submitted

8      other discovery on this topic so we've given them documents

9      from PRASA, we've facilitated witnesses from PRASA.  But now

10     they seem intent on us answering on behalf of PRASA, and we

11     simply can't do that.

12          THE COURT:  Okay.  Mr. Riccardulli?

13          MR. RICCARDULLI:  Yes, your Honor, and I think you

14     touched on it when you said, you know, you choose to stand in

15     sort of the shoes of that third party, that nonparty.  This is

16     a little bit different.  This sort of process dates back to

17     2010 when the defendants served a third-party subpoena, a

18     nonparty subpoena, on PRASA.  We then sought to enforce that

19     subpoena when there was a lack of a response from PRASA, and

20     that's when plaintiff's counsel stepped in and said, wait a

21     minute, let us facilitate this.  We're going to help PRASA out.

22     There was a little bit of back-and-forth in terms of, well, are

23     you representing them or are you not?  And ultimately it landed

24     where the Commonwealth said, we'll treat them as a covered

25     person.  They answered interrogatories on behalf of PRASA,

Ea11mtbc

1    document requests, privilege logs.  They prepped witnesses.

2    They even tried to use the Commonwealth's paid litigation

3    consultant as the 30(b)(6) for PRASA.  When we tried to take

4    that deposition, which would have dealt with what remediation

5    was done at these focus sites.

6          THE COURT:  Would have dealt with?  You didn't take

7    that deposition?

8          MR. RICCARDULLI:  We didn't take it because we were a

9    little bit concerned about the fact that we were getting the

10   litigation consultant --

11         THE COURT:  But if it would have bound PRASA --

12         MR. RICCARDULLI:  We weren't sure.  We were

13   uncomfortable with this process.  We raised that with you, your

14   Honor, that we were uncomfortable with it.  But the answer

15   isn't just that the Commonwealth is not aware of any

16   activities.  They continually say, it's our understanding that

17   no or very little.  So the qualification isn't just, you know,

18   we're not aware of anything.  They go on by saying a little bit

19   may have been done.  And that's really a problem here.  I mean,

20   we're asking them to admit that no --

21         THE COURT:  They're not going to admit that.  They're

22   not going to admit that it's none because they already wrote,

23   "or very limited."  Look, I think the problem is, it's not a

24   great question for a request to admit anyways.  And if it is,

25   it really has to be directed to PRASA.  Now why you didn't take

Ea11mtbc

1    the deposition that would have pinned this down, that would

2    have bound the defendant, I don't know.  30(b)(6) binds an

3    entity.  That's why the rule makers invented 30(b)(6), to bind

4    an entity.  So maybe you need to go back and take the

5    deposition that you didn't take and bind PRASA to its answer,

6    but I really do think it's a separate entity from the plaintiff

7    and the plaintiff can't be compelled to give you a better or

8    different RFA.

9            I'm going to have to interrupt this all very briefly

10   for what I think will be a five-minute or less criminal matter.

11   Let me just double-check and see if that's true.

12           (Discussion off the record)

13           (Recess)

14           THE COURT:  Okay.  Now we were talking about PRASA and

15   I was giving you some preliminary thoughts that really I don't

16   see that plaintiff can bind PRASA to an answer.  Even though I

17   understand that it has chosen to treat PRASA as a covered

18   person, respond to discovery, and has stated here in court

19   today on the record that it has inquired of PRASA to try to

20   move this along, but to actually make it a binding admission as

21   to the Commonwealth, I don't think that's appropriate.  So if

22   you want an opportunity, given my ruling, to reopen a

23   deposition or take a deposition of PRASA that does bind them to

24   the very questions you're talking about, so be it, but you do

25   have documents, you do have interrogatory responses, you have

Ea11mtbc

1   this somewhat-in-between answer here.  Now you need to pin

2   PRASA down.  And I can't do it as a request for admission.

3            MR. RICCARDULLI:  Understood, your Honor.  Just one

4   thing here that might I think get us halfway.  I understand

5   when plaintiff's counsel stood up and said, you know, we're

6   saying our understanding is, or we don't know, right, whether

7   or not they did it --

8            THE COURT:  That's not quite what he said.  He said we

9   actually made efforts to learn and it is our understanding that

10  no testing or very limited testing has occurred.  I realize the

11  phrase "very limited" is not --

12           MR. RICCARDULLI:  I don't know what that means.

13           THE COURT:  It means pretty rare.  Once in a long

14  while.  Not very much.  Not everywhere every time.  That's the

15  best they can do.  But it is an answer.  If you want to pin it

16  down, you need to go to PRASA, and you can't do it by Rule 36,

17  so go ahead and try to pin it down with a deposition.

18           MR. RICCARDULLI:  Your Honor, here's the thing.  I

19  guess that we're a little bit -- I mean, for me, I sort of see

20  this as, you know, plaintiffs sort of injected themselves where

21  they thought it benefited them to sort of work with PRASA, and

22  now when I'm trying to get a request so I don't have to call

23  PRASA witnesses to trial, I'm trying to narrow issues for our

24  phase --

25           THE COURT:  I understand that.  Get the proper person

Ea11mtbc

1    to commit the proper party.  PRASA is not a party to the

2    litigation.

3              MR. RICCARDULLI:  I understand.  I guess the concern

4    I've got is that I'm going to serve this notice on PRASA and

5    I'm going to get the Commonwealth's 30(b)(6) witness.

6              THE COURT:  Doesn't matter because it will bind PRASA.

7    At that point at least you've bound PRASA to an answer that it

8    can't move from at trial.  That's the whole point.  You want to

9    pin down what people are going to say at trial.  If you leave

10   it open, then PRASA could produce a witness at trial and

11   surprise you and say things that you've never heard before, so

12   you might as well pin them down.

13             MR. RICCARDULLI:  Understood, your Honor.  I'll confer

14   with my group and we'll confer with plaintiff's counsel.

15             THE COURT:  Okay.  Good.  So I'm leaving that

16   opportunity open even if the time has run because you couldn't

17   know the answer.

18             Yes, Mr. Axline?

19             MR. AXLINE:  I'm sorry, your Honor, but just to

20   clarify, I assume that that deposition's going to be limited to

21   the questions that are being asked in the RFA and it's not

22   going to --

23             THE COURT:  It should, because they waived any other

24   opportunity.  They had the chance to depose PRASA all along.

25   They did what they did and they didn't what they didn't, but

1    now if they want answers to these questions, I'm giving them

2    the opportunity to bind PRASA by a 30(b)(6) witness.  Not that

3    this is a narrow question, because if the answer is little or

4    none, the little could take a day of deposition.  What does

5    little mean?  So yes, it's limited, but it's not so limited,

6    because I don't know if they've done one test or a hundred

7    tests, I don't know at what locations, I don't know how many

8    times, I don't know the results, so it kinds of depends on the

9    answers, doesn't it, Mr. Axline?

10            MR. AXLINE:  Yes.

11            THE COURT:  But, yes, it's limited to these requests,

12    but that could be broader than we think.

13            And the only other thing I had on the agenda was the

14    Petrobras issue about statute of limitations but in a certain

15    way, we may have already begun to cover that by this potential

16    process of raising statute of limitations to a new court in a

17    new way.  What I had suggested there, as you know, because you

18    were following up on my suggestion, was rather than do a motion

19    again, you should basically try to work out a stipulated set of

20    facts and saying:  Based on your prior rulings, you would reach

21    the same ruling.  Of course we all reserve our rights to appeal

22    that ruling as we do other statute of limitations ruling in

23    the appropriate time and in the appropriate place.  Whether

24    that's now by certification, whether it's at the end of the day

25    by appeal to the First Circuit, I don't know, but I just didn't

Ea11mtbc

1    think it was worth briefing an entire new motion when I'm going

2    to come out the same way on the legal issue.  Now if the fact

3    issues are so different, that's a different point, but I

4    thought you could try to work a stipulation out, and I

5    understood from the letter exchange that you were trying to.

6            Where were we up to?  Your name again?

7            MR. SCHULTE:  My name is David Schulte, your Honor, on

8    behalf of Petrobras.  My understanding is that my partner Jim

9    Harris and Will Petit, counsel for the plaintiffs, have been

10   working for some time now on a stipulation, and so I think that

11   everything that your Honor has suggested is under way and I

12   don't anticipate any issues.  I think the only issue would be a

13   reservation by the parties of all their rights.

14           THE COURT:  Of course.  And the plaintiffs must know

15   that too.  Of course everybody's reserving their rights.

16           MR. GILMOUR:  Your Honor, I would need to check with

17   Mr. Petit, but I was under the impression that this issue had

18   been resolved.

19           THE COURT:  Okay.  Maybe it has, but I haven't been

20   presented with a stipulation yet.

21           MR. GILMOUR:  No, your Honor.  That's correct.

22   Mr. Harris and Mr. Petit have been working on it, and it was my

23   understanding from Mr. Petit that it had all been resolved or

24   99 percent resolved.

25           MR. SCHULTE:  Just to be clear, your Honor, we have an

Ea11mtbc

```
 1   understanding.  We are just ironing out the details of the

 2   stipulation.

 3         THE COURT:  Good.  So actually, I had nothing else on

 4   the agenda today, but if there's any other items, I'm happy to

 5   do it.

 6         Mr. Riccardulli?

 7         MR. RICCARDULLI:  Yes, your Honor.  Just one date, and

 8   again, it relates to the Law 53 or the certification issue.

 9   The Puerto Rico II complaint, our responsive date, there was

10   some indication that the defendants would move for statute of

11   limitations.  You had stayed the response and pleading date in

12   Puerto Rico II I think until we spoke today.  It sounds like it

13   needs to get further extended, but we just wanted to make sure

14   that we don't have a deadline in which our responsive pleading

15   to a complaint is due.

16         THE COURT:  If one of the responses is a motion based

17   on statute of limitations and it is the plaintiff's request

18   that we build in delay by trying to get this certification

19   process going, then clearly they're going to have to agree to

20   adjourn your time to answer *sine die*.  I mean, you can't

21   default them for not answering if they know that it depends on

22   the statute of limitations issue.

23         MR. GILMOUR:  We'd agree, your Honor.

24         THE COURT:  So you'll need to work out, again, a

25   stipulation extending time to answer.  And it might have to
```

Ea11mtbc

```
 1   read sine die.  When does it expire now, your time to answer?
 2              MR. RICCARDULLI:  I think it's already run, but we
 3   talked about that we would again address it today, and that's
 4   why I'm raising it now.
 5              THE COURT:  I will say on the record that nobody's in
 6   default.  You're not to take a default, of course.  But when we
 7   work out whether or not I'm going to be certifying, then the
 8   stipulation will follow suit.  If I certify, it will be sine
 9   die depending on the outcome of that.  If I deny certification
10   anywhere, then we need to fix a new date, but right now I will
11   say, for the transcript record here, your time to answer is
12   stayed pending further order of this court.  That protects you.
13              MR. RICCARDULLI:  It does.  Thank you.
14              THE COURT:  Anything further today?
15              Should we be setting any other conference date?  I
16   don't know what's going on in other cases.  Where are we in New
17   Jersey?
18              MR. AXLINE:  There are a few more settlements, your
19   Honor, that are in the works that we anticipate submitting to
20   you very rapidly.  After that I think the case is going to be
21   ready to be remanded.
22              THE COURT:  Okay.  So that will take it off my docket.
23              MR. RICCARDULLI:  Your Honor, we spoke before the
24   conference.  The parties are going to talk about whether or not
25   the case is ready for remand or not.  You know, there's still a
```

Ea11mtbc

1    very large portion of this case that has remained untouched in

2    many ways, so we do want to have a conversation.  We spoke

3    before this conference and said that we would talk and then be

4    prepared to address this issue at the next conference.

5              MR. AXLINE:  So we did agree to talk about that, your

6    Honor.  Our view is that the case is ready to be remanded.  The

7    defense may have some other ideas.

8              THE COURT:  Which court is it going to?  There's one

9    court, District of New Jersey?

10             MR. AXLINE:  Yes.

11             MR. RICCARDULLI:  Yes, your Honor.

12             THE COURT:  Are there different divisions?  Does it go

13   to one place as opposed to another place?

14             MR. STACK:  Trenton.

15             THE COURT:  Why does it go there?

16             MR. STACK:  That's where it was filed because of the

17   removal by the state bringing the action in Mercer County, New

18   Jersey, I believe, your Honor.

19             THE COURT:  Okay.  All right.  So do we need a new

20   date?  Because it doesn't sound like there's going to be much

21   of an agenda for New Jersey and I don't know what else is

22   active besides New Jersey and Puerto Rico now.  I mean,

23   Pennsylvania is too new to be active.  What else is there in

24   the MDL docket?  Anything?

25             MR. CORRELL:  Your Honor, Charles Correll.  In the

Ea11mtbc

1   OCWB case, there are some motions still pending.

2            THE COURT:  Still pending?  I think we're working on

3   that.  And that's it.

4            MR. PARDO:  Other than that, your Honor, we're in the

5   middle of papering some settlements with some of the

6   plaintiffs.  I think that's it.

7            THE COURT:  Maybe this is one of the few times I'm not

8   going to set another conference date because it doesn't sound

9   like we have any agenda.  I think I'll just wait until I hear

10  from any of you as to whether we need a conference and, if so,

11  on what.  So I'll let you go without a conference date.  Okay?

12           All right.  Thank you.

13           ALL COUNSEL:  Thank you, your Honor.

14                              o0o

15

16

17

18

19

20

21

22

23

24

25