UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

**Master File No. 1:00-1989**
**MDL 1358 (SAS)**

This Document Relates To:

The Honorable Shira A. Scheindlin

*Commonwealth of Puerto Rico, et al.  v. Shell*
*Oil Co., et al.,* Case No. 07 Civ. 1-470 (SAS)

---

## PLAINTIFF COMMONWEALTH OF PUERTO RICO AND COMMONWEALTH OF PUERTO RICO BY AND THROUGH THE ENVIRONMENTAL QUALITY BOARD'S OPPOSITION TO CHEVRON PUERTO RICO, LLC'S, MOTION FOR SUMMARY JUDGMENT RE NO INJURY AT TEXACO # 800

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    FACTS AND BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.    CHEVRON HAS CONTAMINATED CLASS SG (FORMERLY CLASS SG-1)
       GROUNDWATER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       A.    MTBE-Contaminated Groundwater Beneath Texaco #800 Is Class SG. . . . . . 4

       B.    Chevron's Argument That There Is No Evidence Of A Connection Between
             The Waters Contaminated With MTBE At The Texaco #800 Site And
             Deeper Groundwaters At The Site Is Simply Wrong . . . . . . . . . . . . . . . . . . . . . . 5

V.     EVIDENCE SUPPORTS THE EXISTENCE OF THE SAN ANTON NORTH AND
       BELGICA WELLS AS MODELED BY MR. BROWN. . . . . . . . . . . . . . . . . . . . . 8

       A.    The San Anton North Well . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

       B.    The Belgica Well . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

VI.    CHEVRON HAS OPENED THE DOOR FOR MR. BROWN TO ADDRESS
       WHETHER MTBE FROM TEXACO #800 WILL IMPACT ADDITIONAL
       PUBLIC WATER SUPPLY WELLS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

VII.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                                  <u>PAGE(S)</u>

*Bowles v. Seminole Rock & Sand Co.*,
    325 U.S. 410  (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re MTBE*,
    739 F.Supp.2d 576  (S.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## I.   INTRODUCTION

Chevron rests its Motion For Summary Judgment Regarding No Injury At Texaco #800 (the "Motion") on an argument that "[p]laintiffs have no evidence that MTBE from Texaco #800 has impacted or will impact the only waters for which they claim injury at this site - Class SG-1 Groundwater and its sources." Motion, p. 1.   Chevron argues: "The only relevant question is whether there is credible evidence that MTBE from Texaco #800 has reached, or will reach, Class SG-1 Groundwater or water that acts as a source." *Id.* (emphasis added).

Chevron submits no expert declarations or other proof to establish that MTBE from Texaco #800 has not impacted Class SG-1 Groundwater.  Perhaps this is because, contrary to the assertions in Chevron's brief, all available evidence establishes that MTBE from Texaco #800 (the "Site") is already impacting Class SG (formerly Class SG-1) Groundwater, and is impacting or will impact public water supply wells.

Chevron also argues that two of the wells discussed by plaintiff's expert Anthony Brown (the San Anton North well and the Belgica well)  do not exist.   Motion at pp. 6-7.  Both of these wells, however, have been identified for years in government data bases, and Chevron submits no supporting declarations or proof to support the assertion that the wells "do not exist."

Finally, Chevron argues that there is no evidence that MTBE from the shallow aquifer will migrate down into the deeper aquifer.  Motion at pp. 2-4.  This is both untrue and irrelevant. It is untrue because Mr. Brown testified repeatedly that there are no barriers to MTBE from the Texaco #800 Site migrating both down and away from the Site, and MTBE will therefore continue to migrate.  It is irrelevant because the shallow groundwater where MTBE is already

1

present is itself Class SG-1 groundwater.

Finally, while not necessary to address defendants' motion, plaintiff notes that Mr. Brown has expressed the opinion that if pumping were to stop at the two wells he modeled, MTBE from Texaco #800 will reach the next downgradient well. MTBE released from Texaco #800 has harmed or will harm the Commonwealth. Chevron's Motion should be denied.

## II.    FACTS AND BACKGROUND

MTBE from Texaco #800 has been found at high levels in Class SG (formerly SG-1) Groundwater below Texaco #800 for years. 56.1 ¶¶ 1, 3, 10-11, 13, 26, 28-40; Declaration of Wanda Garcia Hernandez, ¶¶ 5-12 (hereinafter "Garcia Decl., ¶ _"); Declaration of Anthony Brown, ¶¶ 11, 11.1, 11.2, 11.3 (hereafter "Brown Decl., ¶ _"). That groundwater is part of a single aquifer – the South Coast Aquifer – that includes shallow and deep saturated zones that are in hydraulic communication. *Id.* MTBE from Texaco #800 has migrated off-Site and has been detected in the furthest off-site wells installed to date. 56.1 ¶ 4, 8-9, 37, 40.

Chevron does not dispute that its gasoline, containing MTBE, was released at Texaco #800 and has contaminated soil and groundwater. 56.1 ¶¶ 3-4, 8-9, 27-40. MTBE was first detected in groundwater located at 23 to 25 feet beneath the site at concentrations of 10,900 ug/L (ppb) in monitoring well 103 (MW-103) in October 2009. 56.1 ¶ 3. MTBE was detected at 15,500 ug/L in 2010. 56.1 ¶¶ 29-32. MTBE has been continuously detected in groundwater at the Site from the first time groundwater testing occurred. 56.1 ¶¶ 3-4; Brown Decl., ¶¶ 5-8.

The concentrations of MTBE in the groundwater beneath the Texaco #800 site have exceeded cleanup levels adopted by the Commonwealth every year since 2009. See 56.1 ¶ 32 (advising Chevron that MTBE exceeded cleanup levels). When Chevron's Rule 30(b)(6) witness

for Texaco #800 Site  (Jose De La Rosa) was deposed, Chevron had already concluded that the high concentrations of MTBE at MW-103 suggest that enough MTBE had been released that "free product" (i.e., pure MTBE gasoline) is floating on the groundwater at the Site.  56.1 ¶ 39.

An early site investigation by Chevron's consultant Environmental Resource Technologies ("ERTEC") expressed concern over impacts on groundwater at the Site:  "Soil impacts are not a significant concern at the site, groundwater impacts are the focus of interest at the Site."  56.1  ¶ 29.  ERTEC recommended moving to remediation as early as 2010, after MTBE was found in groundwater at high levels in 2009.  56.1 ¶ 31.  But Chevron did not start active remediation until 2013.  56.1 ¶ 34.  And, when Chevron finally tested off-Site (where it has made no cleanup effort), it detected MTBE as far and deep as it tested.  56.1 ¶¶ 35, 37-40.

The South Coast Aquifer that Texaco #800 has contaminated is the source of water for a long list of public water supply drinking and irrigation wells.  56.1 ¶¶ 7-26, 42-54; Garcia Decl., ¶¶ 5-12.  The Commonwealth's expert Anthony Brown modeled the capture zones of certain of those public water supply wells in the vicinity of Texaco #800 to demonstrate that MTBE from Texaco #800 extends beneath and into the capture zones of at least two of those public wells – the Belgica and San Anton North wells, respectively.  56.1 ¶ 11.  Mr. Brown testified that, given the hydrogeologic conditions in the South Coast Aquifer underlying Texaco #800 and the number of wells near the Site, "if the San Anton well wasn't pumping, then groundwater would flow to another well."  56.1 ¶¶ 10-12; Brown Decl., ¶¶ 16-18.  As Mr. Brown states in his declaration, "there is no question MTBE from Texaco #800 will reach the capture zone of a public water supply well.  The only question is which well(s)."  Brown Decl., ¶ 17.

3

## III.     LEGAL STANDARD

The standard applicable to the instant Motion "'mirrors'" the standard applied to defendants' unsuccessful, post-trial attacks on the City of New York verdict. *In re MTBE*, 739 F.Supp.2d 576, 593 (S.D.N.Y. 2010). "A court may not grant [summary judgment] unless (1) there is such a 'complete absence of evidence'" that a verdict in the non-movant's favor could result from "'sheer surmise and conjecture' or (2) there is 'such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it].'" *Id.* at 594.

## IV.     CHEVRON HAS CONTAMINATED CLASS SG (FORMERLY CLASS SG-1) GROUNDWATER

### A.     MTBE-Contaminated Groundwater Beneath Texaco #800 Is Class SG

The groundwater under Texaco #800 is Class SG Groundwater. Garcia Decl., ¶¶ 5-12. Chevron argues that Class SG-1 Groundwater is groundwater that has been, is being, or is intended to be "used for drinking water or irrigation." Motion, p. 10; 56.1 ¶ 1. This argument mis-states the definition of Class SG-1 groundwater, ignores the uses of the South Coast Aquifer, and ignores the MTBE in Class SG Groundwater beneath Texaco #800.

Chevron's narrow definition of Class SG-1 waters is contrary to the regulatory definition of Class SG (and SG-1) waters. When the complaint was initially filed in this case, SG-1 waters were defined in Puerto Rico's water quality regulations as "those groundwaters which *serve or have the potential to* serve as [a] source of drinking water supply and agricultural uses including irrigation." Garcia Decl., ¶ 4 (emphasis added). In 2010, the Commonwealth eliminated the distinction between SG-1 and SG-2 waters, broadening the protections previously provided only

for SG-1 waters. *Id.* at ¶ 5.

The current classification of groundwaters is simply SG, and protects "all groundwaters as defined in this regulation." Garcia Decl., ¶ 5 and Ex. B-C. The regulations in turn define "Ground Waters," in pertinent part, as all "sub-surface waters present at or beneath the water table." *Id.* The shallow aquifer now contaminated by MTBE from Texaco #800 meets both the old and new definitions of protected SG waters. 56.1 ¶¶ 1, 10, 26; Garcia Decl., ¶¶ 3, 6.

Even under the narrowest definition advanced by Chevron ("Ground waters intended for use as source of drinking water supply and agricultural uses including irrigation") (Declaration of Jeremiah Anderson, Ex. 1, p. 40), the South Coast Aquifer – the aquifer Chevron has contaminated – is the singular intended, and actual, source of drinking water for several nearby public supply wells that provide drinking and irrigation water . Garcia Decl., ¶¶ 10-11; 56.1 ¶¶ 7, 15, 18, 42, 44-45, 47-54; Brown Decl., ¶¶ 11, 11.2, 11.3, 16-18. The groundwater contaminated by MTBE from Texaco #800 is Class SG (and formerly Class SG-1) Groundwater.[1]

**B.**    **Chevron's Argument That There Is No Evidence Of A Connection Between The Waters Contaminated With MTBE At The Texaco #800 Site And Deeper Groundwaters At The Site Is Simply Wrong**

Chevron argues that "[t]he only relevant question is whether there is credible evidence that MTBE from Texaco #800 has reached, or will reach, Class SG-1 Groundwater or water that acts as a source." Motion, p. 1. That being the question, Chevron loses the Motion.

First, Chevron's claim that "there is no evidence that any water in the delineated area for

---

[1]    The Puerto Rico Environmental Quality Board's interpretation of its Water Quality Standards Regulation is entitled to deference unless it is plainly erroneous or inconsistent with the regulation. *See Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945) ("[T]he ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation.").

Texaco #800 is source water for either Class SG-1 or Class SD waters, or that non-potable water in and around Texaco #800 is being treated or blended and used as a source of drinking water" (Motion, p. 2) is simply wrong. Both EQB and USGS use the same descriptions and delineations of Puerto Rico aquifers for regulatory purposes. Garcia Decl., ¶ 7. The evidence establishes that USGS and EQB consider the shallow and deep zones under Texaco #800 to be part of the same, hydraulically connected aquifer (the South Coast Aquifer). *Id.* at ¶ 9; 56.1 ¶ 10, 46; Brown Decl. ¶¶ 11, 11.1.

Second, as discussed in section III.A. above, the groundwater contaminated by Texaco #800 is itself Class SG groundwater. That fact alone defeats Chevron's Motion. Chevron nonetheless claims, with no supporting evidence, that the groundwater beneath Texaco #800 is isolated from the aquifer in which it is located. The evidence contradicts that assumption. 56.1 ¶¶ 10, 13, 46; Garcia Decl., ¶¶ 7-9; Brown Decl., ¶¶ 11, 11.1. Chevron's motion essentially asks the Court to assume a protective shield separates the shallow aquifer beneath Texaco #800 from the deeper aquifer, but no such shield exists. Chevron submits no evidence to support its central assumption because there is no such evidence. Rather, the evidence establishes that a contiguous plume of MTBE has migrated off-Site from Texaco #800 as far and as deep as Chevron has bothered to test – into the South Coast Aquifer. 56.1 ¶¶ 35, 37; Brown Decl. ¶¶ 5-8.

The evidence further establishes that several public drinking water and irrigation supply wells in the vicinity of the Texaco #800 station draw from the South Coast Aquifer, including Restaurada 7, Restaurada P8, Costa Caribe, Camino Del Sur, Febles 1 and Santa Maria. 56.1 ¶ 7-8, 12, 50-54; Garcia Decl., ¶ 10. Chevron has contaminated Class SG Groundwater.

Third, Chevron's "evidence" with respect to the groundwater beneath Texaco #800 is not

evidence at all, but rather argument by Chevron's counsel quarreling with the Commonwealth's expert Anthony Brown and his description of wells and hydrogeologic function in the vicinity of Texaco #800.   E.g., 56.1 ¶¶ 10, 13, 46, 50.   Chevron submits no competent expert or other evidence to support its argument about the South Coast Aquifer because there is none.

The critique of Mr. Brown's opinion by Chevron's counsel is itself deeply flawed. Counsel, for example, asserts that "Brown . . . concedes in his reports and in his testimony he has no evidence that MTBE from Texaco #800 has reached the 'South Coast Aquifer.'" Motion, p. 3 (citing 56.1 ¶ 10).   The transcript Chevron cites for this argument, however, shows Mr. Brown said no such thing.   The cited quote from Mr. Brown states simply that for MTBE to migrate to "deeper groundwater," there must be "some form of communication between the contaminated shallow zone and the deeper zone."   Mr. Brown did not say that the shallow and deeper zones are not part of the South Coast Aquifer.   Indeed, as Mr. Brown explains in his declaration:

> As noted in the Brown Report (April 2014) and at my deposition, the shallow and deeper saturated zones beneath Texaco #800 are hydraulically connected.   In fact, shallow and deeper groundwater beneath Texaco #800 are part of the same aquifer system – the South Coast Aquifer.   There are no contiguous aquicludes or aquitards that divide the South Coast Aquifer into discrete water bearing strata or isolate deeper groundwater from shallow groundwater in the vicinity of Texaco #800.

Brown Decl., ¶ 11.1; see Axline Decl., Ex. 3 (Brown Report (April 2014), p. 132 ["No distinct aquitard is present between the Site alluvial sediments and the South Coast Aquifer."]).

Additionally, while the movement of MTBE from the shallow zone into the deeper aquifer can be accelerated by the presence of wells, Mr. Brown has not said it was dependent on the presence of wells.   To the contrary, Brown reported: "In the absence of a defined aquitard between the shallow aquifer and regional aquifer, it is likely that groundwater in the shallow

7

aquifer (and any contamination therein) is in communication with, and recharges, the regional aquifer." Axline Decl., Ex. 3 (Brown Report (April 2014), p. 132); 56.1 ¶ 10, 46.  Mr. Brown concluded, as the USGS and EQB have concluded, that "[g]roundwater in the sediments beneath the Site is likely in communication with the South Coast Aquifer." *Id.*

## V.   EVIDENCE SUPPORTS THE EXISTENCE OF THE SAN ANTON NORTH AND BELGICA WELLS AS MODELED BY MR. BROWN

Rather than address the evidence showing that groundwater contaminated with MTBE from Texaco #800 is itself Class SG Groundwater and part of the South Coast Aquifer, Chevron focuses on Mr. Brown's consideration of two wells – the San Anton North and Belgica wells. Chevron argues these wells "do not exist" (Motion, p. 1) and that, "[o]ther than the San Anton North well and Beljica well, Brown does not identify any wells that capture MTBE from Texaco #800 . . . .  Thus Brown's entire opinion rests on the existence of the Beljica and San Anton North wells, which as demonstrated below, do not exist."  Motion, p. 4.

Having lost the central and essential premise of its Motion – that Texaco #800 has not contaminated Class SG Groundwater – Chevron's secondary argument about the San Anton North and Belgica wells is largely irrelevant.  It is also wrong, however.  And Chevron, by asserting there is no evidence of impacts to any public water supply wells, has opened the door to Mr. Brown rebutting that assertion with testimony about impacts from Texaco #800 on additional wells.

### A.   The San Anton North Well

San Anton North is identified in both USGS and Puerto Rico Department of Health databases as an active irrigation well.  56.1 ¶ 15.  Chevron's experts concede the San Anton

North well is part of the USGS database. 56.1 ¶¶ 18, 20-24. The well is located immediately

south-southeast of Texaco #800 and there is no evidence it has been abandoned or destroyed.

San Anton North is the public supply well closest to and most threatened by MTBE from

Texaco #800. 56.1 ¶¶ 41, 43-47 . MTBE has already been detected in groundwater deeper and

farther away from Texaco #800 than San Anton North. 56.1 ¶ 9, 44, 49-50. MTBE beneath

Texaco #800 is within the capture zone of the San Anton North well. 56.1 ¶ 11, 47; Brown

Decl., ¶ 11 (citing Axline Decl., Ex. 1 (Brown Depo., May 22, 2014, p. 172:2-19)).

Defendants seize upon the fact that no obvious surface indicator of the precise location of

San Anton North was located in brief attempts to visually locate the well to argue that the well

"does not exist." That fact, however, is not evidence that the well "does not exist," particularly

given the fact that the well is documented in multiple databases and the fact that its location may

be in a private yard or other concealed area. Chevron's expert John Connor conceded that San

Anton North is in the USGS database and testified that the location could be "in a street, or

plugged and abandoned, or underneath a building. We just – we just don't know." 56.1 ¶ 43.

**B.    The Belgica Well**

Defendants state there is "no evidence that the Beljica well exists now or has ever

existed," and that Anthony Brown "admitted that the Beljica well does not exist." Motion, pp. 5-

6. These statements are incorrect.  The Belgica well (not "Beljica") is included in two

government databases:  The USGS and Puerto Rico Department of Health ("PRDOH") database.

The USGS (2011) data base locates the Belgica well at Northing: 18.003605 and Easting:

66.607895, placing the well 2,500 feet southwest of the Texaco #800 Site.  The PRDOH

database locates the well at Northing: 18.004133 and Easting: 66.599895, placing it

approximately 1,000 feet south-southeast of the Site, where Mr. Brown initially modeled it.

The fact that the two databases give different locations for the Belgica well is not evidence that the well does not exist. Rather, it is evidence that the well exists but is not properly located in one of the databases. Mr. Brown's consultant CRI visited the PRDOH database location for the Belgica well and collected a water sample from a spigot in that approximate location. 56.1 ¶ 16. While Mr. Brown testified at deposition that the spigot is not a well, he did not testify that the presence of the spigot means there is no well, particularly in light of the listing of the well in the PRDOH database and absence of evidence that it has been abandoned or destroyed. 56.1 ¶ 15. There is evidence that the Belgica well exists.

## VI.   CHEVRON HAS OPENED THE DOOR FOR MR. BROWN TO ADDRESS WHETHER MTBE FROM TEXACO #800 WILL IMPACT ADDITIONAL PUBLIC WATER SUPPLY WELLS

Mr. Brown made clear in his deposition that if the wells he modeled are not pumping, the MTBE from Texaco #800 will still reach a public water supply well:

> [G]iven the scenario or the situation at the site, there will be a capture zone of a well that extends beneath the area of contamination given the pumping in the area. It's just a matter of which well would that be if the San Anton well was not pumping.

56.1 ¶ 12 (quoting Axline Decl., Ex. 1 (Brown Depo., May 22, 2014, p. 193:7-13)). Chevron nonetheless asserts: "Other than the San Anton North well and the Beljica well, Brown does not identify any wells that capture MTBE from Texaco #800." Motion, p. 4.

Prior to Chevron arguing that MTBE from Texaco #800 will not reach <u>any</u> water supply wells, the Court cautioned that if Chevron made this argument, it would open the door for the Commonwealth to respond with evidence of MTBE impacts on other wells. *In Re MTBE*, April

11, 2014, Slip Op. at 3, n. 4 ("I don't think [Defendants] would open the door . . . and say, you haven't named any places that it might hurt in the next ten miles, have you? They wouldn't do that because if they did, the trial judge I am sure would say, go for it.").

By arguing that no wells will be impacted, Chevron has opened that door. *See* Motion, p. 10 ("[T]he Belgica and San Anton North wells . . . do not exist. Plaintiffs therefore have no evidence that MTBE from Texaco #800 has impacted or will impact Class SG-1 Groundwater or any 'waters of the Commonwealth.'"). In fact, Chevron's Rule 56.1 statement relies heavily on characterizing Brown's deposition testimony and reports as not addressing impacts of MTBE beyond the San Anton North and Belgica wells. 56.1 ¶¶ 11-25.

Chevron cannot first ask the Court to exclude plaintiff's evidence of impacts on additional wells (as it did in seeking to exclude Mr. Brown's June 2014 Addendum regarding Texaco #800) and then move for summary judgment on the basis that the Commonwealth has presented no evidence of impacts on wells (an argument that cannot win, in any event, given the impacts on Class SG Groundwater). Accordingly, the declaration from the Commonwealth's expert Anthony Brown submitted with this opposition addresses the misstatements and incorrect assumptions in Chevron's Motion, and identifies the well (Costa Caribe) that MTBE from Texaco #800 will impact if, for example, Belgica is not pumping. Brown Decl., ¶ 17.

## VII.    CONCLUSION

In sum, plaintiff has ample evidence that MTBE from Texaco #800 has impacted or will impact Class SG (formerly Class SG-1) Groundwater, and has impacted or will impact public water supply wells. The evidence on either point is sufficient to defeat the Motion. Chevron's Motion For Summary Judgment Regarding No Injury At Texaco #800 should be denied.

Dated: November 7, 2014   Respectfully submitted,

By:               

Michael Axline
Counsel for the Commonwealth of Puerto Rico

12

1        **PROOF OF SERVICE VIA LEXISNEXIS FILE & SERVE**

2    *Commonwealth of Puerto Rico, et al. v. Shell Oil Co., et al.*, United States District Court,
     Southern District of New York Case No. No. 07 Civ. 10470 (SAS)

3

4        I, the undersigned, declare that I am, and was at the time of service of the paper(s) herein
     referred to, over the age of 18 years and not a party to this action.  My business address is 1050
     Fulton Avenue, Suite 100, Sacramento, CA  95825-4225.

5

6        On the date below, I served the following document on all counsel in this action
     electronically through LexisNexis File & Serve:

7        **PLAINTIFF COMMONWEALTH OF PUERTO RICO AND COMMONWEALTH OF
         PUERTO RICO BY AND THROUGH THE ENVIRONMENTAL QUALITY BOARD'S**

8        **OPPOSITION TO CHEVRON PUERTO RICO, LLC'S, MOTION FOR SUMMARY
         JUDGMENT RE NO INJURY AT TEXACO # 800**

9

10

11        I declare under penalty of perjury under the laws of the United States of America and the
     State of California that the foregoing is true and correct.

12

13        Executed on November 7, 2014, at Sacramento, California.

14

15                                                                      KATHY HERRON

16

17

18

19

20

21

22

23

24

25

26

27

28