UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In Re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

Master File No. 1:00 - 1898
MDL 1358 (SAS)
M21-88

Civil Action

**This Document Relates To:**

*Commonwealth of Puerto Rico, et al. v.
Shell Oil Co., et al.*, No. 07 Civ. 10470

**PLAINTIFF'S OPPOSITION TO CERTAIN DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT BASED ON THE SOPHISTICATED INTERMEDIARY
DEFENSE**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.   THE REFINER DEFENDANTS FAIL TO DISTINGUISH BETWEEN
     SOPHISTICATED INTERMEDIARIES AND SOPHISTICATED USERS . . . . . . . . . . 2

II.  THERE IS NO EVIDENCE THAT THE REFINER DEFENDANTS REASONABLY
     RELIED ON INTERMEDIARIES TO ADEQUATELY WARN END USERS . . . . . . . 3

III. THE PUERTO RICO SUBSIDIARIES TO WHOM THE REFINER DEFENDANTS
     SOLD MTBE GASOLINE WERE NOT "SOPHISTICATED" WITH RESPECT TO
     THE HAZARDS OF MTBE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV.  THE PUERTO RICO SUBSIDIARIES TO WHOM THE REFINER DEFENDANTS
     SOLD MTBE GASOLINE WERE NOT "END USERS" OF MTBE GASOLINE . . . . . 7

V.   NO DEFENDANT, WHETHER A REFINER OR A SUBSIDIARY, WARNED
     ANYBODY ABOUT THE HAZARDS OF MTBE . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

VI.  THE SOPHISTICATED INTERMEDIARY DEFENSE IS NOT AVAILABLE WHEN
     THE MANUFACTURER AFFIRMATIVELY MISLEADS DOWNSTREAM
     CUSTOMERS WITH RESPECT TO THE HAZARDS OF A PRODUCT . . . . . . . . . . 11

VII. THE SOPHISTICATED INTERMEDIARY DEFENSE DOES NOT APPLY WHEN
     PLAINTIFF IS AN INNOCENT BYSTANDER RATHER THAN A USER OF THE
     PRODUCT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

**CASES**                                                                                                   **PAGE(S)**

*Adams v. Union Carbide Corp.*
    737 F.2d 1453 (6th Cir. 1984) *cert denied* 469 U.S. 1062 . . . . . . . . . . . . . . . . . . . . . . . 3, 5

*Adkins v. GAF Corp.*
    923 F.2d 1225 (6th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*D.J. Nelson v. Superior Court*
    144 Cal.App.4th 689 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12, 13

*Goodbar v. Whitehead Bros.*
    591 F. Supp. 552 (W.D. Va. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Johnson v. American Standard, Inc.*
    179 P.3d 905 (Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13

*Pfeifer v. John Crane, Inc.*
    220 Cal.App.4th 1270 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Schott Motorcycle Supply, Inc. v. American Honda Motor Co., Inc.*
    976 F.2d 58 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Torres v. National Starch and Chemical Corp.*
    896 F. Supp. 71 (D.P.R. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3-5, 12

**RULES AND STATUTES**

23 L.P.R.A. § 1104(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed.R.Civ.P. 8(e)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**OTHER AUTHORITIES**

*Dillard Dec.,* Ex. 06 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Dillard Dec.,* Ex. 18 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Restatement (Second) of Torts § 388 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

The refiner defendants' motion for summary judgment based on the "sophisticated intermediary" defense is without merit and should be denied.[1] To carry their heavy burden on this affirmative defense, the refiner defendants must establish as a matter of law and undisputed fact that they reasonably relied on sophisticated intermediaries to give adequate warnings to end users of their MTBE gasoline products. *Torres v. National Starch and Chemical Corp.*, 896 F. Supp. 71, 74 (D.P.R. 1995). The refiners' motion offers no evidence, much less undisputed evidence, that the refiner defendants met this requirement. In fact, the refiners' motion does not cite any evidence that the refiners or their intermediaries provided any warnings whatsoever (much less adequate warnings) to the end users of MTBE gasoline or to others, such as the Commonwealth, who would foreseeably be harmed by MTBE gasoline. This absence of evidence, alone, constitutes grounds for denying the motion.

It is not surprising that the refiner defendants do not point to evidence of warning because, as the Commonwealth's evidence shows, rather than warning of the hazards of MTBE the refiner defendants treated gasoline with MTBE no differently than gasoline without MTBE, and informed others that gasoline with MTBE should be handled in the same way as gasoline without MTBE. Plaintiff's Consolidated Rule 56.1 Statement in Opposition ("Rule 56.1 Opp."), ¶¶ 91-119.

The refiner defendants also ignore the fact that the Commonwealth was not itself a "user" of the product but rather was an innocent bystander injured as a result of the refiner defendants'

---

[1] The moving refiner defendants are ConocoPhillips Company, Chevron Phillips Chemical Puerto Rico Core LLC, Hess Oil Virgin Islands Corp., HOVENSA LLC., ExxonMobil Corporation, Shell Oil Company, Shell International Petroleum Company Limited, and Shell Western Supply and Trading Ltd.

1

sales of MTBE gasoline. The *Torres* court cited to the Restatement (Second) of Torts § 388, which states in relevant part that: "One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect . . . to be endangered by its probable use . . .." In *D.J. Nelson v. Superior Court* (2007) 144 Cal.App.4th 689, 696, the court in an MTBE case emphasized: "[I]f anything, bystanders should be given greater protection than consumers and users where harm to bystanders is reasonably foreseeable . . . [c]onsumers and users, at least, have the opportunity to inspect for defects . . . ." Again, the refiners point to no evidence that they warned the Commonwealth or any downstream users of the hazards of MTBE gasoline.

## ARGUMENT

### I. THE REFINER DEFENDANTS FAIL TO DISTINGUISH BETWEEN SOPHISTICATED INTERMEDIARIES AND SOPHISTICATED USERS.

The refiners' motion fails to distinguish between sophisticated <u>users</u> of a product and sophisticated <u>intermediaries</u> who are in the chain of commerce but not end users. The principal California case cited by refiners, *Johnson v. American Standard, Inc.*, 179 P.3d 905 (Cal. 2008) (Motion at 3), was a sophisticated <u>user</u> case involving a claim by an air conditioning repairman injured while repairing an air conditioner. The *Johnson* Court held: "sophisticated users need not be warned about dangers of which they are already aware or should be aware." 179 P.3d at 910.

In contrast, sophisticated <u>intermediary</u> cases involve whether a manufacturer may properly rely on downstream intermediaries to inform end users (often an employee of the intermediary) of a product's risk. The *Torres* case cited *supra* is an example of this type of case. In such cases the manufacturer must, as the *Torres* case held, provide evidence that it "reasonably

2

relied" on the intermediary to provide warnings to end users. On that issue defendants, despite their burden, offer not a single fact. In contrast, plaintiff's evidence in opposition establishes, *inter alia*, that the refiners were aware that the intermediaries were <u>not</u> warning end users. The refiner defendants certainly are not entitled to summary judgment as a matter of law on the sophisticated intermediary defense based on the evidence submitted on this motion.

## II. THERE IS NO EVIDENCE THAT THE REFINER DEFENDANTS REASONABLY RELIED ON INTERMEDIARIES TO ADEQUATELY WARN END USERS.

For the refiner defendants to employ the sophisticated intermediary defense, they must demonstrate as a matter of undisputed fact that they reasonably relied on a third party to provide warnings to end users regarding MTBE gasoline's dangerous propensities. *Torres v. National Starch and Chemical Corp., supra*. As the *Torres* court noted: "The focus of a sophisticated buyer defense analysis entails a 'fact specific evaluation of the reasonableness of the supplier's reliance on the third party to provide the warning.'" 896 F. Supp. at 74 (quoting *Adkins v. GAF Corp.*, 923 F.2d 1225, 1230 (6th Cir. 1991)). The refiner defendants' motion does not even attempt to satisfy this burden.

The Puerto Rico Supreme Court has yet to rule on the sophisticated intermediary defense. In *Torres*, however, the court anticipated that the Puerto Rico Supreme Court would adopt the doctrine as summarized in *Adams v. Union Carbide Corp.*, 737 F.2d 1453, 1456 (6th Cir. 1984) *cert denied* 469 U.S. 1062: "[T]he manufacturer's duty to warn may be discharged by providing information of the dangerous propensities of the product to a third person . . . *upon whom it can reasonably rely to communicate the information to the ultimate users of the product or those who will be exposed to its hazardous effects.*" *Adams*, at 1456 (emphasis added). The *Adams* court

3

went on to explain that, to determine if the manufacturer's reliance was reasonable, the finder of fact must balance:

   1) the dangerous nature of the product;
   2) the burdens imposed by requiring warnings to the ultimate users;
   3) the likelihood that a warning will be communicated to end users;
   4) the intensity and form of the warnings given; and
   5) the form in which the product is used.

*Torres, supra,* at 74. Defendants' motion does not address a single one of these factors, much less all of them as undisputed facts.

California has adopted a near-identical approach on this affirmative defense. When a manufacturer provides hazardous goods even to a "sophisticated" intermediary, the manufacturer is liable for failure to warn the intermediary's employees and servants of the hazards unless there is *some basis* for the manufacturer to believe the ultimate users know or should know of the hazards. *Pfeifer v. John Crane, Inc.,* 220 Cal.App.4th 1270, 1292 (2013). The manufacturer is obliged to show that it "reasonably relied" on the intermediary to pass the information on the hazards to the end users. *Id.* Again, moving defendants offer no evidence that they in fact relied on the subsidiary defendants to give such warnings to the operators, much less that any such reliance was justified.

Apart from the instant motion, the refiners have repeatedly emphasized the corporate separateness between themselves and their subsidiaries. For purposes of the instant motion, however, the refiners ask the Court to simply assume that they are one and the same with their subsidiaries, and their subsidiaries knew what they knew. There is no evidence of or basis for such an assumption, and the refiner defendants may not rely on such an assumption in any event when moving for summary judgment.

4

The refiners' motion does not cite to <u>any</u> warnings, given to anyone, at <u>any</u> point in the stream of commerce, about the hazards of MTBE gasoline.[2] The refiners made no attempt to inform their subsidiaries of the hazards of MTBE gasoline <u>or</u> to determine whether their subsidiaries were independently aware of the hazards of MTBE gasoline. In fact, the subsidiaries affirmatively testified that they were <u>not</u> aware of the hazards of MTBE gasoline and were <u>not</u> informed by the refiner defendants of any such hazards. Rule 56.1 Opp., ¶¶ 53-71. And the refiners certainly made no effort to assure themselves that the subsidiaries were educating end users about those hazards.

In the cases cited by the refiner defendants, product suppliers went to great lengths to assure themselves that the intermediaries to whom they were supplying their products (1) were aware of the product's hazards, and (2) could be reasonably relied upon to pass that knowledge along to end users. *See, e.g., Torres v. National Starch and Chem. Corp., supra,* 896 F.Supp. at 73 (manufacturer supplied intermediary with information on hazards, met with intermediary to discuss hazards and training of employees with respect to those hazards and affixed information to product itself to be seen by end user); *Adams v. Union Carbide, supra,* 737 F.2d at 1454 (supplier emphasized to intermediary both the risks of product and the need to inform end users).

///

///

---

[2] Defendants' Rule 56.1 Statement contains a reference by ConocoPhillips to Material Safety Data Sheets (MSDSs) that were "supplied to customers when a new contract was signed." Rule 56.1 Statement ¶ 6. The only relevance of these MSDSs, however, is that they "identified MTBE as one of the ingredients potentially present in all grades of gasoline sold under the Phillips brand worldwide." *Id.* ¶ 7. Defendants' motion does not identify or attach any warnings, much less attempt to explain why, as a matter of undisputed fact, any warnings were "adequate."

## III. THE PUERTO RICO SUBSIDIARIES TO WHOM THE REFINER DEFENDANTS SOLD MTBE GASOLINE WERE NOT "SOPHISTICATED" WITH RESPECT TO THE HAZARDS OF MTBE.

A key assumption in the refiner defendants' motion is that their Puerto Rico subsidiaries were in fact "sophisticated" about the hazards of MTBE. If the subsidiaries were not sophisticated with respect to MTBE, the refiner defendants' reliance on them to provide warnings to end users could not be reasonable. The refiner defendants, however, submit <u>no</u> evidence (much less undisputed evidence) to establish that their subsidiaries were in fact aware of the hazards of MTBE. The evidence developed in discovery revealed that the subsidiaries were not only <u>not</u> sophisticated, but knew little to nothing about the hazards of MTBE, or even what was in the gasoline being sold at their stations. Rule 56.1 Opp., ¶¶ 53-71.[3]

The station operators at the trial site stations knew even less, repeatedly testifying that they were not told that MTBE was in the gasoline they were selling, much less that MTBE posed a hazard to drinking water. Rule 56.1 Opp., ¶¶ 72-84. Some operators testified that, had they known of MTBE gasoline's hazards, they would have changed their behavior. Rule 56.1 Opp., ¶¶ 74, 77, 84. Most operators testified to their ignorance of MTBE and its risks to groundwater. Rule 56.1 Opp., ¶¶ 72-84.

///

///

---

[3] Of course at some point, and certainly by the time of this litigation, the subsidiaries began to acquire knowledge of the hazards of MTBE. To establish the affirmative defense, however, defendants must at a minimum show as a matter of undisputed fact that downstream users were fully informed as of the time of the injury. Defendants have not met this burden, and of course they may not attempt to do so by submitting new evidence with their reply brief.

## IV. THE PUERTO RICO SUBSIDIARIES TO WHOM THE REFINER DEFENDANTS SOLD MTBE GASOLINE WERE NOT "END USERS" OF MTBE GASOLINE.

Rather than submitting evidence that they "reasonably relied" on their subsidiaries to warn end users of the hazards of MTBE gasoline, the refiner defendants assert that their subsidiaries were themselves the end users of MTBE gasoline, because they owned the gas stations where the MTBE was sold. Motion at 5-6. While subsidiaries did own stations during at least some of the relevant time period, it is not true that they were the "end users" of the MTBE gasoline sold by the refiner defendants.[4]

In 1998, Puerto Rico adopted 23 L.P.R.A. § 1104a, which requires owners of gasoline service stations to divest themselves of retail operations at stations. The retail operators of the stations, and not the station owners, are the ones who purchased, received and dispensed MTBE gasoline at the station on a day-to-day basis. Rule 56.1 Opp. ¶¶ 85-90. The refiner defendants do not deny this, but instead argue: "notwithstanding the 1998 legislation, the ultimate customers [for MTBE gasoline] were still stations owned by major oil companies." Motion at 5.

The refiners' subsidiaries, however, <u>sold</u> MTBE gasoline to the station operators, and were therefore clearly <u>not</u> the "end users." Rule 56.1 Opp., ¶¶ 85-90. The refiners' motion does not address at all whether the refiners reasonably relied on their intermediaries to educate station operators about the hazards of MTBE. This Court has previously noted that it is the operators to whom adequate warnings must be given:

---

[4] If defendants' subsidiaries *were* end users (they are not), defendants would have to provide evidence that they took affirmative steps to either inform those subsidiaries as end users or to assure themselves that the subsidiaries were already fully aware of MTBE's hazards. Defendants provide no such evidence.

7

> THE COURT : "If C [the end user] is the local operator, B has an obligation [to warn]. That's it."
>
> MR. DILLARD : "I cannot affix a warning to a gallon of gasoline that will reach that service station where I don't even know where the product is going."
>
> THE COURT : "But you can't rely on the intermediary if you know the intermediary is not giving warnings. That was Mr. Miller's only point. It all depends who C is. You cannot rely. If you're perfectly aware that none of these big ones are giving warnings, there's no reliance. You can only rely if you have reason to believe that that person is doing what they're supposed to do."

(*Dillard Dec.*, Ex.18, Transcript of Status Conference (July 15, 2014), at 71:14-25.)

In any event, regardless of how broadly or narrowly the term "end user" is construed, neither the subsidiaries nor the station operators were warned about the hazards of MTBE. Rule 56.1 Opp., ¶¶ 53- 84.

Defendants argue that plaintiff conceded the sophistication of co-defendant trial site owners both during the pre-motion hearing and in the Third Amended Complaint (TAC). Plaintiff made no such concession. As the hearing transcript quoted by defendants makes clear, the referenced concession at that hearing was that plaintiff would not argue that a refiner defendant needed to warn another refiner defendant:

> THE COURT : " . . . But if the proof is that Conoco only sold to Exxon or Shell or Total or Texaco, whatever, big companies, then you concede they had no duty to warn them because you plead over and over that those people knew."
>
> MR. MILLER : "The point is it's a matrix issue, so we would not make that contention."
>
> THE COURT : "Which contention?"

///

8

> MR. MILLER : "I'm not going to stand up and tell the jury that Hess should have told Exxon and Exxon didn't know."

(*Dillard Dec.*, Ex.18, Transcript of Status Conference (July 15, 2014), at 64:17 - 65:01.)

With respect to the Third Amended Complaint, plaintiff alleges against each Refiner/Supplier Defendant" that "Defendant knew *or should have known*. . .." TAC, ¶¶ 21, 71, 88, 94 (emphasis added). The TAC makes no allegation of sophistication against "Owner/Operator Defendants." *Id.*, at ¶74.

Alternative and hypothetical pleading is specifically allowed under the federal rules. Fed.R.Civ.P. 8(e)(2). The rule of judicial admissions should not be applied to undermine the right to allege inconsistent facts in alternative pleadings. *Schott Motorcycle Supply, Inc. v. American Honda Motor Co., Inc.*, 976 F.2d 58, 61-62 (1992). Plaintiff's alternative pleading does not allege solely that the subsidiaries knew, but rather that they knew or should have known. In discovery, the subsidiaries asserted that they did not know about the hazards of MTBE gasoline. Rule 56.1 Opp. ¶¶ 53-71. At a minimum, this creates a disputed issue of fact as to whether the intermediaries were fully aware of MTBE's dangers at the time that MTBE was being released from their service stations.

## V. NO DEFENDANT, WHETHER A REFINER OR A SUBSIDIARY, WARNED ANYBODY ABOUT THE HAZARDS OF MTBE.

The refiner defendants' Rule 56.1 Statement and accompanying declaration contain <u>no</u> warnings about the hazards of MTBE. In fact, neither the refiner defendants nor the refiner defendants' subsidiaries, co-defendant trial site owners, provided any warnings to anybody about the hazards of MTBE. 56.1 Opp., ¶¶ 72-84, 91-118.

9

Rather than pointing to warnings about the hazards of MTBE, the refiner defendants' Rule 56.1 Statement identifies circumstances in which "customers were notified that the gasoline may contain MTBE." Rule 56.1 Statement, ¶ 4 (Conoco Phillips); ¶ 15 (HOVIC and HOVENSA); ¶ 29 (ExxonMobil) ("The presence of MTBE was confirmed in only one shipment of gasoline supplied by ExxonMobil to Esso over the thirty five year period since 1979.") Only Conoco Phillips points to anything beyond mere (limited) disclosure that MTBE was in gasoline, and that is only to Material Safety Data Sheets, without any discussion of whether those disclosed the hazards of MTBE, much less adequately disclosed those hazards. *Id.* ¶ 6. That Material Safety Data Sheet (dated March 31, 1990), offered in support of defendants' motion, contains no warnings whatsoever on the threat MTBE gasoline poses to groundwater. Defendants' Rule 56.1 Statement, ¶ 8 (*Dillard Dec.*, Ex. 06).

Even if merely disclosing the presence of MTBE in gasoline were somehow sufficient to establish as a matter of law that adequate warnings were given about the hazards of MTBE, there are disputed issues of fact as to whether such disclosures occurred with all shipments of gasoline containing MTBE. For example:

TPPRC, owner of Trial Site No. 9, Total 1012, was not aware of the content of the gasoline being delivered to its service stations in the Commonwealth or even the origin of that gasoline. Rule 56.1 Opp., ¶ 60.

TPPRC's expert testified that GPR/TPPRC, as a reseller, was not aware of any MTBE content in the gasoline that would be supplied to service stations. Rule 56.1 Opp., ¶ 62.

Sol, owner of Trial Site No. 3, Shell #3042, was just as ignorant. One employee, Mr. Amadeo-Cedo, was responsible for overseeing Sol's safety programs. He testified that, as of the

10

date of his deposition in this case, he had no knowledge whether Sol was purchasing gasoline with MTBE. When asked who at Sol might have such information, he testified, "I don't believe that anyone at Sol is able to answer such questions." He himself had never heard MTBE being discussed, or even having heard the term "MTBE." Rule 56.1 Opp., ¶ 54.

Three separate Esso employees testified that they did not know that MTBE could contaminate groundwater; none of them received any training specific to MTBE gasoline—not even the Esso employee responsible for implementing Esso's storage tank upgrade program. Rule 56.1 Opp., ¶¶ 66-68.

CPRLLC, owner of Trial Site No. 10 (Texaco # 800), shows even less sophistication than Esso on the hazards of MTBE gasoline. A former employee from 1991 through 2004, who is now working for Chevron Environmental Management Company, testified that he was not aware of the components in the CPRLLC's gasoline sold in Puerto Rico: "[f]rankly, I was under the impression that MTBE was not being used . . . " It was not until preparing for his deposition in this case that he became aware that MTBE was in gasoline being sold in Puerto Rico: "I wasn't expecting to find MTBE." Rule 56.1 Opp., ¶¶ 69-71.

## VI. THE SOPHISTICATED INTERMEDIARY DEFENSE IS NOT AVAILABLE WHEN THE MANUFACTURER AFFIRMATIVELY MISLEADS DOWNSTREAM CUSTOMERS WITH RESPECT TO THE HAZARDS OF A PRODUCT.

Neither the "sophisticated intermediary" nor the "sophisticated user" defense is available when, as here, the manufacturer itself does not acknowledge the hazards of the product. Here, refiner defendants acknowledge that they did not treat gasoline with MTBE any differently than gasoline with MTBE, and communicate that policy to others. Rule 56.1 Opp. ¶ 119. This is the

11

opposite of warning intermediaries and end users about the hazards of the product. As the court explained in another MTBE case involving a failure to warn claim against some of the same refiner defendants, the refiners:

> represented to purchasers of gasoline containing MTBE, the public, and government agencies that [MTBE gasoline] was environmentally sound and appropriate for widespread distribution, sale and use . . . [and] represented that gasoline containing MTBE could be handled the same as ordinary gasoline, and required no special measures to protect against or respond to suspected releases to the subsurface.

*Nelson v. Superior Court*, 144 Cal.App.4th 689, 693 (2007). *See* Rule 56.1 Opp., ¶ 119.

Here, the refiner defendants had extensive information about the hazards of MTBE in the early 1980's, but told downstream intermediaries and the public that gasoline with MTBE was no more hazardous than gasoline without MTBE. See Rule 56.1 Opp., ¶¶ 67, 73, 74, 91, 118-119.

### VII. THE SOPHISTICATED INTERMEDIARY DEFENSE DOES NOT APPLY WHEN PLAINTIFF IS AN INNOCENT BYSTANDER RATHER THAN A USER OF THE PRODUCT.

The sophisticated intermediary defense is available to manufacturers or suppliers when they reasonably rely on intermediate purchasers to give adequate warnings to the ultimate user and consumer. *Torres, supra*, at 74. In this case the refiner defendants were aware that the risk posed by their MTBE gasoline products included risks to innocent bystanders, such as the Commonwealth, whose groundwater would be contaminated with MTBE. The refiner defendants provide no evidence of any warnings whatsoever regarding these risks, by the refiners or by their subsidiaries, to end users or to innocent bystanders (such as the Commonwealth).

In *Nelson v. Superior Court*, 144 Cal.App. 4th 689 (2007), the court found that a water district whose water supply was contaminated with MTBE could assert product liability against

the manufacturer of the MTBE gasoline even though the water district was not an ultimate user or consumer of the gasoline. The *Nelson* court reviewed California product liability law and held:

> [S]trict liability broadly extends to products that have left control of the manufacturer and are placed on the market. Thus, foreseeable uses of gasoline reasonably include storing it at a gas station, transferring it through gas pumps into a vehicle, and storing it in a vehicle's tank before it is actually burned as fuel. Permitting injured third parties or 'bystanders' to recover for damages associated with any of these uses is consistent with strict liability doctrine . . . .

*Nelson*, 144 Cal.App.4th at 694-95.

If the product is defectively designed, and the bystander harmed, the focus is on the condition of the product and not on the conduct of the manufacturer. If plaintiff can prove the product defective, the sophisticated purchaser defense has no application.

In *Johnson v. American Standard, Inc.*, *supra*, a case cited by the refiner defendants, the court held: "The rationale supporting the [sophisticated intermediary] defense is that 'the failure to provide warnings about risks already known to a sophisticated purchaser usually is not the proximate cause of harm resulting from those risks suffered by the buyer's employees or downstream purchasers.'" *Id.* at 911 (citation omitted) (emphasis added). Here, the Commonwealth is not an employee or downstream purchaser, but rather an innocent bystander who was foreseeably injured by defendants' product. The refiner defendants provide no evidence that either they or their subsidiaries warned either users or bystanders of the risks posed by MTBE.

*Goodbar v. Whitehead Bros.*, 591 F. Supp. 552 (W.D. Va. 1984), also cited by the refiner defendants, held that if a supplier of a defective product sells to a sophisticated purchaser, that

13

purchaser's <u>employees'</u> failure to warn claims against the supplier are barred. "[I]t becomes the employer's responsibility to guard against the known danger by either warning its employees or otherwise providing the necessary protection." *Id.*, at 560-561.

*Goodbar* is inapplicable here. The Commonwealth is not an employee whom the refiner defendants could conceivably believe would be warned by an employer. Rather, the Commonwealth is an innocent bystander foreseeably injured by the refiner defendants' product, and the refiner defendants provide no evidence of warnings by anyone in the chain of commerce about the risks to such bystanders.

## CONCLUSION

For the foregoing reasons, the Commonwealth respectfully requests that the refiner defendants' motion for summary judgment based on the sophisticated intermediary defense be denied.

DATED: November 7, 2014

Respectfully submitted,

By: /s/ Michael Axline

Michael Axline
Counsel for the Commonwealth

## PROOF OF SERVICE VIA LEXISNEXIS FILE & SERVE

*Commonwealth of Puerto Rico, et al. v. Shell Oil Co., et al.*, United States District Court, Southern District of New York Case No. No. 07 Civ. 10470 (SAS)

  I, the undersigned, declare that I am, and was at the time of service of the paper(s) herein referred to, over the age of 18 years and not a party to this action. My business address is 1050 Fulton Avenue, Suite 100, Sacramento, CA 95825-4225.

  On the date below, I served the following document on all counsel in this action electronically through LexisNexis File & Serve:

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BASED ON THE SOPHISTICATED INTERMEDIARY DEFENSE**

  I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

  Executed on November 7, 2014, at Sacramento, California.

_____
KATHY HERRON