**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation | **Master File No. 1:00-1898** **MDL 1358 (SAS)** |
| This Document Relates To: | The Honorable Shira A. Scheindlin |
| *Commonwealth of Puerto Rico, et al.  v. Shell Oil Co., et al.,* Case No. 07 Civ. 1-470 (SAS) | |

**PLAINTIFF COMMONWEALTH OF PUERTO RICO AND COMMONWEALTH OF
PUERTO RICO BY AND THROUGH THE ENVIRONMENTAL QUALITY BOARD'S
OPPOSITION TO CERTAIN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
ON COUNTS I AND IV (STRICT PRODUCTS LIABILITY)**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.    DEENDANTS DO NOT ADDRESS KEY UNDISPUTED FACTS . . . . . . . . . . . . . . 5

    A.    MTBE Was Never Required Or Necessary For Gasoline In Puerto Rico . . . . . . 5

    B.    MTBE Was Not The Only Octane Enhancer Used In Puerto Rico . . . . . . . . . . 6

    C.    MTBE Was Added To Gasoline In Puerto Rico To Increase Profits . . . . . . . . . 6

    D.    MTBE Did Not Provide Any Air Quality Benefits to Puerto Rico . . . . . . . . . . 7

    E.    Warnings Would Have Prevented Harm But Were Not Given . . . . . . . . . . . . . 7

II.    DEFENDANTS DO NOT ADDRESS KEY PRIOR RULINGS AND VERDICTS . . . . 7

LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

I.    DEFENDANTS' PRODUCTS-LIABILITY ARGUMENTS ARE CONTRARY TO
    PUERTO RICO PRODUCTS-LIABILITY LAW . . . . . . . . . . . . . . . . . . . . . . . . . 10

II.    A REASONABLE JURY COULD FIND THAT THE COMMONWEALTH'S
    EVIDENCE SATISFIES THE CONSUMER-EXPECTATIONS TEST . . . . . . . . . . . 11

III.    A REASONABLE JURY COULD FIND THAT THE DEFENDANTS' MTBE
    GASOLINE IS DEFECTIVE UNDER THE RISK-BENEFIT TEST . . . . . . . . . . . . . 13

IV.    The Commonwealth's Failure-To-Warn Evidence Would Support A Verdict Against
    Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    A.    Mr. Moreau's Testimony Establishes That No Adequate Warnings Were Given .17

V.    A REASONABLE JURY COULD FIND THAT DEFENDANTS' NEGLIGENCE
    CAUSED THE COMMONWEALTH'S HARM. . . . . . . . . . . . . . . . . . . . . . . . . . 21

A.  The Second Circuit Held That Mr. Moreau's Testimony Is Sufficient To Establish The Standard Of Care. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

B.  Puerto Rico Did Not Permit Any MTBE In Gasoline, The MTBE Content In Defendants' Gasoline Was Not *De Minimis*, And It Never Was "Impossible" To Guarantee Delivery Of MTBE-Free Gasoline . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## TABLE OF AUTHORITIES

<u>CASES</u>                                                                                    <u>PAGE(S)</u>

*Acosta-Mestre v. Hilton Intern. of Puerto Rico, Inc.*
    156 F.3d 49 (1st Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Akers v. Kelley Co.*
    173 Cal.App.3d 633 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Barker v. Lull Engineering Co.*
    20 Cal.3d 413 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 10, 11, 14, 15

*Campbell v. General Motors Corp.*
    32 Cal.3d 112 (Cal.1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12

*Collazo-Santiago v. Toyota Motor Corp.*
    937 F.Supp. 134 (D. Puerto Rico, 1996) . . . . . . . . . . . . . . . . . . . . . . . . 4, 10, 16

*Fremaint v. Ford Motor Company*
    258 F.Supp.2d 24 (D.P.R. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Gonzales v. Carmenita Ford Truck Sales, Inc.*
    192 Cal.App.3d 1143 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Greenman v. Yuba Power Products, Inc.*
    59 Cal.2d 57 (Cal. 1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

*Heckler v. Chaney*
    470 U.S. 821 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*In Re MTBE*
    457 F.Supp.2d 324 (SDNY 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*In Re MTBE*
    488 F.3d 112 (2nd Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16, 22, 23

In Re MTBE
    591 F.Supp.2d 259 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

In Re MTBE
    739 F.Supp.2d 576 (SDNY 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In Re MTBE
    725 F.3d 65 (2nd Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8, 9, 12-14, 20, 22

*Prado-Alvarez v. R.J. Reynolds Tobacco Co.*
    313 F.Supp.2d 61  (D.P.R. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Punsoda-Diaz v. Ford Motor Co.*
    2006 U.S. Dist. LEXIS 94909, *8 (D.P.R. Apr. 4, 2006) . . . . . . . . . . . . . . . . . . . . . 15, 16

*Quintana-Ruiz v. Hyundai Motor Corp.*
    303 F.3d 62  (D.P.R. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

*Rivera v. Superior Packaging*
    132 D.P.R. 115 (P.R. 1992), 1992 WL 754830 . . . . . . . . . . . . . . . . . . 2, 8, 10, 11, 13, 15

*Stevens v. Parke, Davis & Co.*
    9 Cal.3d 51 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 22

## RULES AND STATUTES

10 L.P.R.A.  § 4172 Law 16-2012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## SUMMARY OF ARGUMENT

Defendants' Motion For Summary Judgment Re Products Liability asks the Court to find as a matter of law and undisputed fact that MTBE gasoline is not a defective product, despite the fact that four separate juries have now found that MTBE gasoline _is_ a defective product. The evidence that persuaded prior juries to find that MTBE gasoline is a defective product is certainly sufficient to establish triable issues of material fact in this case, and is even more compelling in light of two facts unique to Puerto Rico.

First, in Puerto Rico defendants cannot plausibly argue to a jury that they had to add MTBE to gasoline for environmental or regulatory purposes. Oxygenates such as MTBE have never been required in Puerto Rico. Rule 56.1 Opp., ¶¶ 25, 26. In Puerto Rico MTBE was in gasoline solely because defendants chose to add MTBE to gasoline for profit. Rule 56.1 Opp., ¶¶ 74-77.

Second, in Puerto Rico defendants cannot plausibly argue to a jury that there were no alternatives to adding MTBE to gasoline. Defendants manufactured and sold gasoline without MTBE at the same time they manufactured and sold gasoline with MTBE throughout the relevant time period. Rule 56.1 Opp., ¶¶ 12, 66-73; _see also_ Shell Summary Judgment Motion at 4-5 (identifying gasoline refineries in Puerto Rico and Curacao that produced gasoline without MTBE).

Defendants argue the consumer-expectations test for product liability cannot apply in this case because the design of MTBE gasoline is so complex that experts must explain it to a jury, and plaintiff has no such expert. Motion at 5, 8-10. The consumer-expectations test, however, turns on "whether the product meets ordinary expectations as to its safety under the

circumstances," not on the complexity of the product's design. *See Campbell v. General Motors Corp.*, 32 Cal.3d 112, 126-127 (Cal.1982) (no expert testimony required to show that lack of safety bar on a public bus did not satisfy "safety expectations of . . . the ordinary consumer," despite the complexity of bus design). Expert testimony is not required to establish "the safety expectations of the general public as represented by the ordinary consumer." (*Id.*) "Indeed, it is difficult to conceive what testimony an "expert" could provide." (*Id.* at 126.) Here, a jury could easily conclude that ordinary consumers would not expect that small amounts of an ingredient (MTBE) in the gasoline they purchase at gas stations would also contaminate community water supplies.

Defendants next argue that the "design defect" products-liability test under Puerto Rico law imposes on the Commonwealth the burden of establishing (by expert testimony) that the risks posed by MTBE gasoline outweigh the benefits of MTBE gasoline. Motion at 8-10. This is simply wrong and the cases cited by defendants do not support this proposition. Under Puerto Rico law, a plaintiff prevails "in a case of a design defect if he proves that . . . 'the product's design proximately caused his injury and the *defendant* fails to establish [that] the benefits of the challenged design outweigh the risk of danger inherent in such design.'" *Rivera v. Superior Packaging*, 132 D.P.R. 115 (P.R. 1992), 1992 WL 754830 (P.R. Offic. Trans.) (emphasis added). One way that *defendants* can carry this burden is to prove the lack of a safer, feasible design. *Rivera* at fn. 9. Puerto Rico's design-defect test does not impose *any* burden on a *plaintiff* to prove that the defendant's design's risks outweighed its benefits, nor does Puerto Rico require a design-defect plaintiff to prove a safer, feasible design.

Puerto Rico's rule is consistent with California products-liability law, which (as

2

defendants concede) Puerto Rico follows. Motion at 9 ("Puerto Rico has accepted the tests for product or design defect set forth by the Supreme Court of California in *Barker v. Lull Engineering Co.*").

In *Barker v. Lull Engineering Co.*, 20 Cal.3d 413, 432 (1978) (*Barker*), the Court held: "a product may . . . be found defective in design if the plaintiff demonstrates that the product's design proximately caused his injury and the *defendant* fails to establish, in light of the relevant factors, that, on balance the benefits of the challenged design outweigh the risk of danger in inherent in such design." (Emphasis added.) And California's products-liability law's "fundamental public policies . . . dictate that a manufacturer who seeks to escape liability for an injury proximately caused by its product's design on a risk-benefit theory should bear the burden of persuading the trier of fact that its product should not be judged defective." (*Barker*, 20 Cal.3d at 431-432.) The "defendant's burden is one affecting the burden of proof, rather than simply the burden of producing evidence." (*Id.*)

Defendants do not dispute in their product liability motion that the Commonwealth has provided sufficient expert testimony and other evidence to support a jury finding that defendants' MTBE and TBA caused the Commonwealth's injury.[1] And defendants identify no evidence (much less undisputed evidence) that the benefits of MTBE gasoline outweighs its risks. In fact,

---

[1] Defendants' assertion that there is "no evidence in the record relating to [the Commonwealth's] claim that neat MTBE was defective" because it "contained 'impurities such as TBA'" is wrong. (Motion at 1 and 8.) TBA is an ingredient in and/or "toxic byproduct" of MTBE. Rule 56.1 Opp. ¶¶ 110 -114. And Anthony Brown's analysis specifically demonstrates that defendants' MTBE was released at the trial sites, that defendants' MTBE and TBA contaminate the Trial Site's soil and groundwater, that defendants' MTBE and TBA continue to migrate off-site, and that defendants' MTBE and TBA threaten Puerto's production wells. Rule 56.1 Opp. ¶¶ 60, 110.

defendants' own experts, employees, and documents prove that there always was a "safer, feasible alternative" to MTBE gasoline in Puerto Rico – gasoline *without* MTBE. Rule 56.1 Opp., ¶¶ 12, 25, 26, 66-73. .

Even if defendants were correct that the Commonwealth bears the burden on this issue – which they are not – they would be incorrect in arguing that the only type of evidence that can meet such a burden is expert testimony. Motion at 12. In Puerto Rico, as in California, expert witness testimony on the risk/benefit test is not a prerequisite but rather turns on the facts of each case. As the court held in *Collazo-Santiago v. Toyota Motor Corp.* 937 F.Supp. 134, 141 (D. Puerto Rico, 1996): "[I]t is not necessary for a plaintiff in a products-liability action to furnish the Court with expert witness testimony in order to have its case be submitted to a jury." In fact, the *Collazo-Santiago* court also held that, even if a defendant presents an expert and plaintiff does not present an expert, "plaintiff may . . . cross-examine the defendant's expert witness" and is not required to present rebuttal expert testimony. *Id.* at 140.

Finally, defendants argue that the Commonwealth's failure-to-warn and negligence evidence is not sufficient to establish triable issues of fact. Motion at 17-25. As this Court noted at the pre-motion hearing with respect to this issue: "I probably would have been more receptive to your [failure-to-warn] argument before the *City of New York* case and the Second Circuit's view on it, but they seem to accept it as a rather general theory that Moreau came up with and I think plaintiff[ is] relying on that." Rule 56.1 Opp., ¶ 118.

Mr. Moreau's testimony with respect to the adequacy of defendants' warnings (or lack thereof) is the same testimony he gave in the *City of New York* case, where this Court allowed the failure-to-warn claim to go to the jury, the jury found against the defendant, and this Court and

4

the Second Circuit upheld that verdict.  As the Second Circuit held, the "jury was entitled to credit [Mr. Moreau's] testimony and conclude that the exercise of reasonable care required [defendants] to implement the measures identified by Moreau."  *In Re MTBE*, 725 F.3d 65, 118 (2nd Cir. 2013).

Defendants' Motion omits both facts and law directly relevant to defendants' arguments, including prior rulings of this Court.  These omissions are summarized below to provide context for discussing the arguments defendants <u>do</u> make.

## FACTS

### I.   <u>DEENDANTS DO NOT ADDRESS KEY UNDISPUTED FACTS.</u>

Defendants do not dispute that the Commonwealth has been injured by gasoline containing MTBE and TBA.  Defendants also do not dispute that gasoline without MTBE was sold in Puerto Rico during the entire time that gasoline with MTBE was sold.  And defendants do not argue that there were any regulatory requirements that any oxygenate, much less MTBE, be added to gasoline in Puerto Rico.   Undisputed evidence that defendants fail to address includes the following.

#### A.   <u>MTBE Was Never Required Or Necessary For Gasoline In Puerto Rico.</u>

Defendants expert John O'Brien admitted that MTBE was never required for gasoline distributed to and within Puerto Rico.  Rule 56.1 Opp., ¶¶ 25, 26.  Puerto Rico was not subject to the reformulated gasoline program.  *Id*.  MTBE was only utilized as an octane enhancer in Puerto Rico, and was but one of many octane enhancers available to refiners who supplied gasoline to Puerto Rico.  *Id*.

///

**B.    MTBE Was Not The Only Octane Enhancer Used In Puerto Rico.**

Mr. O'Brien, defendants' refining expert, could not identify a single U.S. based refiner

who "had to use MTBE as an octane enhancer to manufacture conventional gasoline exported to

Puerto Rico." Rule 56.1 Opp., ¶ 72.  In fact, numerous refiners who supplied gasoline to the

Puerto Rican market – both on-island and off-island – had a number of octane enhancers

available to them. Rule 56.1 Opp. ¶¶ 66-73.  Indeed, these same refiners assert in other summary

judgment motions they were more than capable of providing non-MTBE gasoline to Puerto Rico.

Rule 56.1 Opp., ¶¶ 12, 25, 26, 66-73 .

**C.    MTBE Was Added To Gasoline In Puerto Rico To Increase Profits.**

Even though they knew that MTBE gasoline posed unacceptable risks to Puerto Rico's

groundwater – and even though they knew that the Puerto Rico market did not need or require

MTBE gasoline – defendants chose to manufacture and sell MTBE gasoline in Puerto Rico

because it was defendants' most profitable option.  Defendants' expert Mr. O'Brien testified that

blending MTBE into Puerto Rico's gasoline allowed defendants to convert a waste product into a

money maker.  Because of "EPA limitations on gasoline volatility had forced refiners to greatly

reduce the butane content of gasoline. . . .  Manufacturing of MTBE using these butanes

effectively brought them back into the gasoline pool." Rule 56. 1 Opp. ¶ 74.  Refiners could not

manufacture gasoline without creating butanes.  *Id.*  Making MTBE allowed refiners to realize

the full value of the butanes while at the same time increasing the amount of gasoline they could

make from the pool of materials.  *Id.*

Phillips CORE refinery located in Guayama Puerto Rico utilized MTBE as an octane

enhancer and to extend Phillips's gasoline supply – even though it had toluene, mixed xylenes

and other ingredients readily available – so defendants could use their toluene and other ingredients more profitably to make petrochemicals rather than gasoline. Rule 56.1 Opp. ¶ 76. Phillips CORE's expert testified that MTBE was used because "there are potentially higher-values uses for mixed xylenes and even toluene than gasoline." Rule 56.1 Opp. ¶ 76.

### D.   <u>MTBE Did Not Provide Any Air Quality Benefits to Puerto Rico.</u>

Defendants' air-quality expert, Thomas Austin, admitted that he did not have a single piece of data to demonstrate that the use of MTBE in gasoline distributed to Puerto Rico had contributed to better air quality. Rule 56.1 Opp. ¶ 15.

### E.   <u>Warnings Would Have Prevented Harm But Were Not Given.</u>

Operators of the Trial Sites testified that they did not know that MTBE could contaminate drinking water wells – in fact, they did not even know that MTBE was present in the gasoline. Rule 56.1 Opp. ¶ 78. Many, if not all, of these operators testified that they would have taken additional steps to prevent MTBE contamination of drinking water supplies if they had been warned. Rule 56.1 Opp. ¶ 87.

Local personnel responsible for the upgrade and maintenance of defendants' UST systems and for remediation of releases at defendants' stations similarly testified that they did not know about MTBE or its ability to contaminate drinking water wells. Rule 56.1 Opp. ¶ 88. Mr. Munoz, Esso's manager of all USTs at Esso stations in Puerto Rico, explicitly testified that he would have undertaken additional precautions with the USTs if he had known that they would prevent MTBE contamination of drinking water wells. Rule 56.1 Opp. ¶ 90.

## II.   <u>DEFENDANTS DO NOT ADDRESS KEY PRIOR RULINGS AND VERDICTS.</u>

In addition to ignoring the above facts, defendants' Motion also fails to address numerous

prior rulings and jury verdicts rejecting the same arguments that defendants make here. In fact, all but one of defendants' arguments (that expert testimony on world gasoline markets is required) already have been rejected by courts, juries, or both.

Both this Court and the Second Circuit, for example, have joined Puerto Rico's Supreme Court in holding that "states may impose liability under their products liability statutes even if the manufacturer or seller meets the minimum [regulatory] standards." *Rivera v. Superior Packaging*, 132 D.P.R. 115 (P.R. 1992) (P.R. Offic. Trans.) 1992 WL 754830; *see also In Re MTBE*, 725 F.3d 65, 106 (2d Cir. 2013).

Defendants, without mentioning these opinions, nevertheless argue that they are entitled to summary judgment because the Commonwealth permits the importation of gasoline containing less than 0.5% per volume of MTBE. Motion at 2, 16. This is both incorrect as a matter of fact (the Commonwealth has banned MTBE at all levels; its 0.5% regulatory-enforcement threshold does not "permit" MBTE at any level), and as a matter of law. *In Re MTBE, supra*, 725 F.3d at 106.

Both this Court and the Second Circuit, as well as the court in *City of Merced*, have also rejected defendants' arguments that plaintiff's failure-to-warn evidence is insufficient to support a jury verdict. *See In re MTBE, supra*, 725 F.3d 65, 117-118 and 123-125 (2d Cir. 2013) (Mr. Moreau's testimony sufficient to establish that defendants breached the "standard of ordinary care" and defendants' "known risks" arguments have no merit). As the *City of Merced* court found:

> Mr. Moreau's testimony provides sufficient evidence of what types of precautions needed to be taken to prevent or reduce spills and releases, to allow this question to go to the jury. Further the types of precautions he

8

> recommended would have prevented many of the types of releases that are
> alleged in this case. As Plaintiff pointed out, the adequacy of a warning is
> a question of fact for the jury. . . . [E]xpert testimony is not always
> required and a layperson can evaluate if the warnings were adequate or
> not.

Rule 56.1 Opp., ¶ 116 (*Merced* Ruling on Defendants' Motions for Nonsuit, at 4).

Juries in four separate MTBE cases, *South Tahoe*, *City of Merced*, *New Hampshire*, and

*City of New York,* all determined that gasoline with MTBE was either defectively designed,

defective because defendants failed to warn of its dangers, and/or negligently sold into systems

from which it would inevitably leak. Rule 56.1 Opp., ¶ 115.. The *City of New York* verdict was

affirmed a by the Second Circuit.[2]   *In re MTBE*, *supra*, 725 F.3d 65.  None of these authorities

are mentioned in defendants' motion.

## LEGAL STANDARD.

The legal standard that applies to defendants' Motion "'mirrors'" the standard that

applied to defendants' unsuccessful, post-trial attacks on the *City of New York* verdict. *In Re*

*MTBE*, 739 F.Supp.2d 576, 593 (S.D.N.Y. 2010). "A court may not grant [summary judgment]

unless (1) there is such a 'complete absence of evidence'" that a verdict in the non-movant's

favor could result from "'sheer surmise and conjecture' or (2) there is 'such an overwhelming

amount of evidence in favor of the movant that reasonable and fair minded [persons] could not

arrive at a verdict against [it].'" *In Re MTBE*, 739 F.Supp.2d 576, 594 (S.D.N.Y. 2010).

///

///

---

[2] Defendants settled *South Tahoe* and *City of Merced* after the jury's verdict. *New Hampshire* is on appeal.

9

## ARGUMENT

**I.**    **DEFENDANTS' PRODUCTS-LIABILITY ARGUMENTS ARE CONTRARY TO PUERTO RICO PRODUCTS-LIABILITY LAW.**

Defendants correctly concede that Puerto Rico follows California law on the issue of strict products liability, including the tests for product or design defect set forth by the Supreme Court of California in *Barker v. Lull Engineering Co.*" Motion at 9. As the court noted in *Collazo-Santiago v. Toyota Motor Corp.* 937 F.Supp. 134, 138-139 (D.P.R. 1996): "The pattern is unmistakable. The Supreme Court of Puerto Rico has consistently approved of the Supreme Court of California's formulations of the law of products liability." *See also Acosta-Mestre v. Hilton Intern. of Puerto Rico, Inc.*, 156 F.3d 49, 55 (1st Cir. 1998) ("the Supreme Court of Puerto Rico has consistently relied upon California Supreme Court precedent when considering issues raised by the doctrine of strict product liability."); *Rivera v. Superior Packaging*, 132 D.P.R. 115, 1992 WL 75830 (P.R. Eng. 1992) (Courts have "cited with approval the strict liability in torts rule set down by the California Supreme Court in *Greenman* v. *Yuba Power Products, Inc.* 59 Cal.2d 57 (Cal. 1962)").

Courts in Puerto Rico have specifically adopted California's cardinal products-liability principle that: "[A] manufacturer is strictly liable in tort when an article [it] places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." *Collazo-Santiago v. Toyota Motor Corp.* 149 F.3d 23, 25 (D.P.R. 1998) (quoting *Greenman, supra*, 59 Cal.2d at 62). This doctrine was designed to "insure that the cost of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect

themselves." *Greenman*, 59 Cal.2d at 63.

*Barker, supra,* established two alternative tests for products-liability claims alleging design defects:

> [A] product may be found defective in design, so as to subject a manufacturer to strict liability for resulting injuries, under either of two alternative tests. First, a product may be found defective in design if the plaintiff establishes that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner. Second, a product may alternatively be found defective in design if the plaintiff demonstrates that the product's design proximately caused his injury and the defendant fails to establish, in light of the relevant factors, that, on balance, the benefits of the challenged design outweigh the risk of danger inherent in such design.

*Barker,* 20 Cal.3d at 432; *Rivera,* 132 D.P.R. at fn. 9 (following and quoting *Barker*).

Despite defendants' recognition of the applicability of California law, defendants' Motion asks the Court to apply products-liability rules inconsistent with both Puerto Rico and California products-liability law.

## II.   A REASONABLE JURY COULD FIND THAT THE COMMONWEALTH'S EVIDENCE SATISFIES THE CONSUMER-EXPECTATIONS TEST.

Under Puerto Rico's consumer-expectations test, "the plaintiff would prevail in a case of design defect if he proves that: . . . 'the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.'" *Rivera,* 132 D.P.R. 115 (1992 WL 754830); *Barker,* 20 Cal.3d at 432.

The consumer-expectations test applies where "the average juror, upon hearing the particulars [of the plaintiff's injury], might reasonably think: 'Whatever the user may have expected from that [product], it certainly wasn't that.'" *Akers v. Kelley Co.* 173 Cal.App.3d 633, 651 (1985).

The complexity of the product's design is irrelevant to the consumer-expectations analysis – this test does not require the plaintiff to prove *why* the product is defective. Rather, the consumers-expectations test asks "whether the product meets ordinary expectations as to its safety under the circumstances." *Campbell*, 32 Cal.3d at 126-127. The jury answers this question based on their own life experiences. Where "the product is one within the common experience of ordinary consumers, it is generally sufficient if the plaintiff provides evidence concerning (1) his or her use of the product; (2) the circumstances surrounding the injury; and (3) the objective features of the product which are relevant to an evaluation of its safety." *Campbell*, 32 Cal.3d at 127 (Cal.1982). The jury does not need expert testimony to make these findings. "Indeed, it is difficult to conceive what testimony an 'expert' could provide." *Id.* at 126.

The Commonwealth's evidence amply demonstrates that the average consumer would not anticipate that small amounts of MTBE in the gasoline they purchase at a gas station will contaminate community drinking-water supplies. As the Second Circuit recently recognized, MTBE gasoline poses dangers that would not be known even to station operators who are accustomed to working with ordinary gasoline. "MTBE has an unusual propensity to spread widely in groundwater if spilled, and . . . is especially difficult to clean up. The harmful effects of spilling gasoline containing MTBE are therefore different (and more severe) than the effects of spilling untreated gasoline." *In Re MTBE*, 725 F.3d 65, 124 (2nd Cir. 2013).

Because even "[s]mall leaks of gasoline (1 teaspoon) can translate into MTBE ground water concentrations above the taste and odor detectable threshold levels" (Rule 56.1 Opp. ¶ 106), the fact that "the dangers of spilling gasoline are common knowledge" cannot establish that MTBE gasoline's dangers fall within ordinary consumers' expectations. *In Re MTBE*, 725 F.3d

12

65, 124 (2nd Cir. 2013). "'Without MTBE, a-gallon-a-day leak most of the time isn't going to get you in very big trouble. But a-gallon-a-day leak with MTBE is a whole different animal; it changes the game. You are now in a whole different ballpark.'" *Id.* (quoting Marcel Moreau).

At trial, the Commonwealth will present evidence that even the Trial Site operators who were the direct customers for defendants' MTBE gasoline did not know or expect that MTBE gasoline posed unique risks to groundwater, or that MTBE gasoline needed to be handled differently from conventional gasoline. Rule 56.1 Opp. ¶ 78. In fact, most of the operators will testify that they did not know that MTBE was in their gasoline at all. *Id.*.

At the very least, this testimony raises triable issues of fact about whether defendants' MTBE "product[s] failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.'" *Rivera*, *supra*, 132 D.P.R. at fn. 9 (1992 WL 754830).

## III.   A REASONABLE JURY COULD FIND THAT THE DEFENDANTS' MTBE GASOLINE IS DEFECTIVE UNDER THE RISK-BENEFIT TEST.

Puerto Rico's alternative test for design defect claims – the risk-benefit test – imposes liability on the defendant where: (1) "the plaintiff demonstrates that the product's design proximately caused his injury;" and (2) the *defendant* fails to establish, in light of the relevant factors, that, on balance, the benefits of the challenged design outweigh the risk of danger inherent in such design." *Barker,* 20 Cal.3d at 432; *Rivera*, 132 D.P.R. at fn. 9 (1992 WL 754830) (following and quoting *Barker*); Motion at 9 (Puerto Rico follows *Barker*); *Quintana-Ruiz v. Hyundai Motor Corp.* 303 F.3d 62, 69 (D.P.R. 2002) ("Under Puerto Rican tort law governing design defect claims, if the plaintiff proves that "the product's design is the proximate

cause of the damage," the burden shifts to the defendant to prove that "'the benefits of the design at issue outweigh the risk of danger inherent in such a design.'").

Here, defendants do not dispute that the Commonwealth's evidence – which includes expert testimony – would support a jury finding that defendants' MTBE gasoline caused the Commonwealth's harm. *See* Rule 56.1 Opp. ¶¶ 58-65. MTBE is "a highly dangerous compound, like tar or nicotine, poses a threat to human health if ingested." *In Re MTBE*, 488 F.3d 112, 131 (2nd Cir. 2007). Indeed, it is undisputed in this case that defendants MTBE gasoline caused the Commonwealth's "harm, *i.e.*, the release of MTBE gasoline to groundwater from [the] Trial Sites." Motion at 25; *see also In Re MTBE*, 725 F.3d at 78 ("MTBE causes water to assume a foul smell and taste, and has been identified as an animal carcinogen and a possible human carcinogen."); *In Re MTBE*, 591 F.Supp.2d 259, 269 (2008) ("it is beyond cavil that some release of gasoline must have caused the MTBE contamination in these wells. . . . '[w]hile the source of the release cannot be identified with sufficient certainty, the MTBE in the well is not naturally occurring.'"); *see also* Rule 56.1 Opp. ¶ 60.

Under Puerto Rico's design-defect test, therefore, the burden is on *defendants* to prove that their MTBE gasoline's benefits outweighed its risks. *See Barker*, 20 Cal.3d at 432 ("a product may . . . be found defective in design if the plaintiff demonstrates that the product's design proximately caused his injury and the *defendant* fails to establish . . . the benefits of the challenged design outweigh the risk of danger inherent in such design).

When determining whether a design-defect defendant has carried its burden to prove that its harmful product's benefits outweigh its risks, "a jury may consider, among other relevant factors, the gravity of the danger posed by the challenged design, the likelihood that such danger

14

would occur, the mechanical feasibility of a safer alternative design, the financial cost of an improved design, and the adverse consequences to the product and to the consumer that would result from an alternative design." *Barker*, 20 Cal. 3d at 431; *Rivera*, 132 D.P.R. at fn. 9.

The burden of proof, however, remains always with defendants – i.e., the Commonwealth does *not* need to prove that there ever was a safer, feasible design. *Barker*, 20 Cal. 3d at 430; *Rivera*, 132 D.P.R. at fn. 9 (1992 WL 754830).

Despite this clear authority, defendants argue that it is *the plaintiff's* burden to establish that the risks of MTBE gasoline outweigh its benefits. Motion at 12. The cases defendants cite, however, do not support this assertion. Indeed, those cases expressly confirm that, under Puerto Rico law, "the defendant bears the burden of proving that the utility of a product's design outweighs its risks." *Quintana-Ruiz v. Hyundai Motor Corp.*, 303 F.3d 62, 64 (1st Cir. 2002) (Motion at 11-12); *Fremaint v. Ford Motor Company*, 258 F.Supp.2d 24, 29 (D.P.R. 2003) (Puerto Rico's risk-benefit test requires the defendant "to prove [that] the benefits of the challenged design outweigh the risk of danger inherent in such design."); *Punsoda-Diaz v. Ford Motor Co.*, 2006 U.S. Dist. LEXIS 94909, *8 (D.P.R. Apr. 4, 2006) (same); *Prado-Alvarez v. R.J. Reynolds Tobacco Co.*, 313 F.Supp.2d 61, 74 (D.P.R. 2004) (Puerto Rico follows California's products-liability law).

Defendants' cases are distinguishable factually as well. Three of the four cases hold that a defendant can satisfy its burden of proof where the "uncontradicted evidence" proves "that the benefits outweighed the risks." *Quintana-Ruiz*, 303 F.3d at 70; *Fremaint* at 30; *Prado-Alvarez v. R.J. Reynolds Tobacco Co.*, 313 F.Supp.2d 61, 74 (D.P.R. 2004). That truism is irrelevant here – defendants' Motion does not point to any "uncontradicted evidence" proving that MTBE

15

gasoline's benefits outweighed its risks.  To the contrary – as detailed above – defendants' own experts, employees, and documents agree that there always were safer, feasible alternatives to MTBE gasoline in Puerto Rico.  "That it may have been more convenient or less expensive for the defendants to use MTBE does not mean it would have been impossible for them to use other, less-polluting additives." *In Re MTBE*, 488 F.3d 112, 130 (2nd Cir. 2007).

Defendants' remaining case – *Punsoda-Diaz v. Ford Motor Co.* – is equally inapplicable to this case.  The court in *Punsoda* merely reaffirmed that a products-liability plaintiff must prove that the defendant's product caused harm before the burden can shift to the defendant to prove that the product's benefits outweighed its risks.  *Punsoda-Diaz v. Ford Motor Co.*, 2006 U.S. Dist. LEXIS 94909, *24 (D.P.R. Apr. 4, 2006) ("Having found that, as a matter of law, the first prong of the test was not satisfied in this case, it is not necessary to address the issue regarding the second prong, that is, the risk-utility balancing test.").  Here, the Commonwealth's experts provide ample evidence that defendants' MTBE caused harm to the Commonwealth.  Rule 56.1 Opp. ¶ 60, 110.  As noted above, defendants do not deny that this evidence is sufficient to create triable issues of fact.

## IV.    The Commonwealth's Failure-To-Warn Evidence Would Support A Verdict Against Defendants.

In a failure-to-warn claim, "expert testimony is not always required and a layperson can evaluate if the warnings were adequate or not." Rule 56.1 Opp. ¶ 60, 117; *see also Gonzales v. Carmenita Ford Truck Sales, Inc.*, 192 Cal.App.3d 1143 (1987); *Collazo-Santiago v. Toyota Motor Corp.* 937 F.Supp. 134, 141(D. Puerto Rico, 1996) ("it is not necessary for a plaintiff in a products liability action to furnish the Court with expert witness testimony in order to have its

16

case be submitted to a jury."); *see also Stevens v. Parke, Davis & Co.*, 9 Cal.3d 51, 67-69 (1973).

The need for and adequacy of a warning is a question of fact for the jury to resolve based on their own life experiences. *See id.*; *see also* Motion at 9 (Puerto Rico follows California's failure-to-warn law). Indeed, a jury can impose liability on a failure-to-warn defendant even in the face of uncontradicted expert testimony that the warning was adequate. *See Gonzales*, 192 Cal.App.3d 1143 (1987).

Nevertheless, the Commonwealth will support its failure-to-warn claim at trial with testimony from its expert Marcel Moreau, a "nationally recognized expert in underground petroleum storage systems" who has dedicated his career to "the petroleum storage field, chiefly in the areas of regulation, storage system design, leak detection technology, and regulatory compliance assessment." Rule 56.1 Opp. ¶ 42.

### A. Mr. Moreau's Testimony Establishes That No Adequate Warnings Were Given.

Mr. Moreau's expert opinions in this case mirror those which this Court, the Second Circuit, and the *City of Merced* trial court all found sufficient to support failure-to-warn verdicts against defendants. Indeed, the *City of Merced* court – applying the same failure-to-warn law that applies in this case – rejected the exact same "warnings expert" argument that defendants recycle here.

As he did in *City of Merced* and *In Re MTBE (City of New York)*, Mr. Moreau will explain that the jury's analysis of the "training and education [that] would have been required to convey the complete 'warning' message" necessary to minimize MTBE contamination must go far beyond the "position, lettering, coloring, and language" of warning stickers. *Compare*

Motion at 19 *with* Rule 56.1 Opp. ¶ 43.  "A concise statement of the issue such as the "Don't

spill a drop" slogan . . . would have been useful as a concise statement of the goal of the

program, but such a slogan would not convey the information required to meet that goal." *Id.*  "It

is the science of 'learning' that is much more relevant to the challenge of teaching UST workers

how to properly store, handle and dispense MTBE gasoline."  *Id.*

Mr. Moreau's expertise is unsurpassed in the "science of learning" about best practices to

avoid MTBE releases.  As the *City of Merced* court observed when it rejected defendants'

"warnings expert" argument:

> I don't think you necessarily need an expert  in psychology, et cetera,
> especially when you have someone like Mr. Moreau who is very familiar
> with MTBE and its possible dangers.  I think he could testify as to what
> certain mitigation measures could have been taken or what could have
> been warned of.  And then it would be up to the jury to decide if those
> warnings are adequate or not . . . [S]ometimes it is just a matter of
> common sense on the part of the jury.

Rule 56.1 Opp., ¶ 117.

Defendants' own documents and witnesses establish that defendants knew – long before

the public or the regulators –  about the hazards that Mr. Moreau's "training and education" is

designed to address.  Rule 56.1 Opp., ¶¶ 58-118.  As Mr. Moreau noted during his deposition, it

does not take a "warnings expert" to understand that defendants should have shared their

knowledge with the consumers of their products:

> The method, it seems to me, is one of logic.  All right?  We identify a
> problem.  We identify some solutions.  The people who identify the
> solutions happen to be the ones who are making and selling this stuff.
> Then doesn't it make sense that the people making and selling this stuff
> should be telling the people they're providing it to how to use it?

Rule 56.1 Opp., ¶ 43.

As in *City of New York* and *City of Merced*, the evidence here shows that defendants did not warn downstream users about MTBE's hazards or provide training on how to effectively prevent those hazards from occurring. Rule 56.1 Opp. ¶ 43. The Trial Site operators testified that they did not know that MTBE was in the gasoline that they received from defendants, or that MTBE could contaminate drinking-water wells. Rule 56.1 Opp. ¶ ¶ 78 -86. . Indeed, defendants did not even warn or instruct the local personnel who were responsible for the upgrade and maintenance of defendants' own UST systems, and for the remediation of releases at the Trial Sites. Rule 56.1 Opp., ¶¶ 88 and 90.

The station operators' testimony also shows that they would have changed their behavior to avoid MTBE releases if defendants had provided adequate warnings and instructions. The operators testified that they relied on defendants to provide training about how to handle gasoline, and that they followed defendants' instructions. Rule 56.1 Opp., ¶ 78-88 . The operators further testified that they would have taken additional steps to prevent MTBE contamination of drinking-water supplies if they had been warned. *Id*.

This evidence – i.e., Mr. Moreau's testimony, coupled with that of station operators – has supported at least three failure-to-warn verdicts against defendants. Rule 56.1 Opp. ¶ 115. Defendants' motion does not establish as a matter of undisputed fact or law that a jury in Puerto Rico would reach a different result.

Defendants also misunderstand Mr. Moreau's testimony when they claim that they cannot be liable for failing-to-warn operators of Trial Sites where defendants owned the tanks. As Mr. Moreau explains, properly trained Trial Site operators can avoid surface leaks, which also can contaminate groundwater. Because even a teaspoon of MTBE can render water undrinkable,

19

defendants needed to train Trial Site operators to detect and report even minuscule subsurface leaks. As noted above, the Trial Site operators testified that defendants did not provide this training. Rule 56.1 Opp., ¶ 78-88

A reasonable jury also could find that defendants did not adequately warn the Commonwealth about the hazards of MTBE. Defendants knew that MTBE posed unacceptable risks to groundwater in the mid-1980's. As defendants concede, the Commonwealth did not learn that MTBE could contaminate drinking water until "the late 1990's." Motion at 2. Defendants, however, ask this Court to hold that the Commonwealth's knowledge in the late 1990's retroactively absolved defendants of all failure-to-warn liability.

Exxon made the same argument in its appeal of the *City of New York* verdict. The Second Circuit's rejection of Exxon's argument in that case is equally applicable here:

> We also reject Exxon's argument that it had no duty to warn the City about the dangers of MTBE because, by 1997, the City was aware of these dangers. Exxon began using MTBE in its gasoline long before 1997, and the City's eventual knowledge did not relieve Exxon of its duty to provide adequate warnings before 1997 (to say nothing of its continuing duty to warn gas station owners).

*In Re MTBE*, *supra*, 725 F.3d at 124, fn. 45.

In any event, the documents that defendants cite do not show that the Commonwealth learned that MTBE contaminated *Puerto Rico*'s water in "the late 1990's." Motion at 2. Instead, defendants' documents show only that the Commonwealth learned that MTBE posed risks to groundwater *in general*. To obtain information about "MTBE contamination of drinking water resources" within Puerto Rico, the Commonwealth turned to defendants. Rule 56.1 Opp. ¶ 47; *see also* Declaration of Michael J. Dillon in Support of Motion, Ex. 17.

Rather than sharing with the Commonwealth their internal concerns and knowledge with

20

respect to the hazards of MTBE, defendants used misleading responses to reassure the Commonwealth that further action was unnecessary.  This was consistent with defendants' representations to the U.S. Environmental Protection Agency that "there is no evidence that MTBE poses any significant risk of harm to health or the environment," and "that testing is therefore not needed to develop such data."  Rule 56.1 Opp. ¶ 20.  Defendants similarly (and falsely) reassured the Commonwealth that MTBE "does not pose a danger or risk to the public," and the only "viable alternatives" to MTBE would increase releases of "components [that] cause cancer in humans."  Rule 56.1 Opp. ¶ 47.  Defendants also falsely assured the Legislature that "underground tanks are practically encapsulated," that releases only occurred at "a few" facilities, and that they had "systems designed to minimize the risk of groundwater contamination throughout their storage and distribution network, including from retail sites."  *Id.*  Based in part on these misrepresentations, the Legislature concluded in 2002 that it was "not necessary to take additional measures for now, except continue with periodic legislative monitoring."  *Id.*.

## V.   A REASONABLE JURY COULD FIND THAT DEFENDANTS' NEGLIGENCE CAUSED THE COMMONWEALTH'S HARM.

Defendants argue that the Commonwealth's expert testimony and other evidence cannot establish the applicable standard of care for a negligence claim.  Motion at 17.  Here again defendants ignore directly applicable authority.  In *In Re MTBE, supra,* the Second Circuit flatly denied the same argument that defendants' rehash here.  Defendants do not discuss or attempt to distinguish the Second Circuit's decision, and the cases defendants do cite are not on point.

### A.   The Second Circuit Held That Mr. Moreau's Testimony Is Sufficient To Establish The Standard Of Care.

At trial, the Commonwealth will rely on the same standard-of-care evidence that

21

supported the *City of New York* jury's negligence verdict against Exxon. *See generally* Rule 56.1

Opp. The Second Circuit's opinion affirming this Court's denial of Exxon's post-trial challenges

to that verdict effectively refutes defendants' attacks on that evidence here:

> The jury was entitled to credit this testimony and conclude that the exercise of
> reasonable care required Exxon to implement the measures identified by Moreau. .
> . . Moreau testified that vapor detection technology was available in the 1980s,
> and that, in a 1986 paper recognized by at least one petroleum trade group, he and
> others warned about the dangers of MTBE and emphasized the importance of
> effective leak-detection systems. [Citation.] An internal Exxon memorandum
> from 1984 explained that MTBE migrated farther in groundwater than other
> contaminants and had lower 'odor and taste thresholds.' [Citation.] A
> memorandum dated two years later observed that federal and state authorities had
> identified MTBE as a health concern. [Citation.] Evidence of Exxon's timely
> knowledge of the particular dangers of MTBE, combined with evidence about
> remedial measures available as early as the 1980s, was sufficient to allow the jury
> to determine that Exxon breached the standard of ordinary care.

*In Re MTBE,* 725 F.3d at 118-119; *see also Stevens v. Parke, Davis & Co.*, 9 Cal.3d 51, 65

(expert testimony not required to prove negligent failure to warn).

　　　　The cases cited by defendants found that, under the facts present in those cases,

defendants were required to provide expert testimony as to the standard of care. Even assuming

that expert testimony is required in this case, however, defendants' cases are irrelevant here. The

Commonwealth *has* experts (and other evidence) "sufficient to allow a jury to determine that

[defendants] breached the standard of ordinary care." *In Re MTBE,* 725 F.3d at 118-119.

Defendants' only remaining case, *Prado-Alvarez,* held that the plaintiff's negligence claim was

barred by the doctrine of conflict preemption – an argument that this Court and the Second

Circuit both have rejected in this MDL. *See In Re MTBE*, 488 F.3d 112, 130 (2nd Cir)(2007).

///

///

22

**B.      Puerto Rico Did Not Permit Any MTBE In Gasoline, The MTBE Content In Defendants' Gasoline Was Not _De Minimis_, And It Never Was "Impossible" To Guarantee Delivery Of MTBE-Free Gasoline.**

Defendants' argument that the Commonwealth "permitted small amounts of MTBE in gasoline is both wrong and irrelevant. As discussed in more detail in the Commonwealth's Opposition to Shell's separate summary judgment motion, it is not true that MTBE levels of 0.5% per volume are "expressly permitted" by Puerto Rico law. Puerto Rico's law bans <u>all</u> MTBE. "No natural or legal person shall import, sell, dispense or offer for sale gasoline containing _methyl tertiary butyl ether_ (known in English as "_methyl tertiary butyl ether_" or by its English acronym, 'MTBE')." 10 L.P.R.A. § 4172; Law No. 16-2012.

The Commonwealth's 0.5% enforcement threshold does not abrogate this total ban. Instead, it reflects a determination by Puerto Rico's Department of Consumer Affairs' that – despite the "exhaustive" ban adopted by the Legislature – DACO's limited resources are "best spent" prosecuting more-flagrant violations. DACO Regulation 8198; see _Heckler v. Chaney_, 470 U.S. 821, 831 (1985) (agencies have wide discretion when considering how to use limited resources when implementing laws).

Even if the Commonwealth's regulations had "permitted" some MTBE in gasoline, that would not absolve defendants of tort liability for harm that their products cause. _Stevens, supra_, 9 Cal.3d at 65. As this Court explained long ago, "'tort law has an entirely separate function – compensating victims – that sets it apart from direct forms of regulation.'" _In re: MTBE_, 457 F.Supp.2d 324, 333 (S.D.N.Y. 2006). A regulator's decision not to prevent the sale of a product does not give manufacturers license to cause injuries. _See In Re MTBE_, 488 F.3d 112, 131 (2nd Cir. 2007). Indeed, if defendants' argument was correct, then products-liability law only would

23

apply to black-market products; i.e., to products that are both defective and illegal to manufacture or sell. That is not the law.

Defendants also err by characterizing 0.5% MTBE levels as *de minimis*. Black's Law Dictionary (7th Edition) defines "*de minimis*" as "trifling" or "minimal." Here, each of defendants' MTBE-gasoline shipments typically contained tens or even hundreds of thousands of barrels of gasoline. *See, e.g.*, Declaration of Ruben F. Reyna in Support of the Shell Defendants' Motion for Summary Judgment, Ex. 5. There are 42 gallons to a barrel. A 100,000-barrel shipment that complied with the Commonwealth's 0.5% enforcement threshold, therefore, still would contain 21,000 gallons of MTBE, a single teaspoon of which could "translate into MTBE ground water concentrations above the taste and odor detectable threshold levels." Rule 56.1 Opp. ¶ 106. And that is just one shipment – defendants shipped enormous volumes of MTBE-gasoline during the relevant time period.

As this Court acknowledged at the pre-Motion hearing, furthermore, the Commonwealth's 0.5% enforcement threshold never permitted *any* release of MTBE to groundwater:

> The Court: . . . [T]he Commonwealth . . . allows people to sell material that will harm the island?
>
> Mr. Kauff: It's not supposed to get out of their tanks.
>
> The Court: That's true.
>
> Mr. Kauff: It's when it's out of the tanks that it harms the environment. If it stays in their tanks and it's handled properly, it wouldn't harm the environment.

Axline Decl., Ex. 11 at 41:5-13.

Finally, it is not true that "it is impossible to guarantee the delivery of gasoline without

24

trace levels of MTBE." Motion at 16, fn. 6. As defendants' Motion papers show, defendants exercise tremendous control over the ingredients that go into the gasoline that they manufacture, and over the ships on which that gasoline is transported to Puerto Rico. Defendants' Rule 56.1 ¶¶ 2-35; *see also* Declaration of Ruben F. Reyna in Support of the Shell Defendants' Motion for Summary Judgment, Ex. 5. And defendants have the technology to detect even minuscule amounts of MTBE – at least to the hundredth of a percent – in the shipments of gasoline that they import. *See id.* If MTBE is in gasoline that defendants manufacture, then it is because defendants chose to put it there. If MTBE is in shipments of gasoline that defendants import, it is because defendants chose to accept MTBE gasoline. Defendants are responsible for the MTBE contamination in Puerto Rico's groundwater. A reasonable jury could find that defendants are liable for the harm that their MTBE continues to cause.

## CONCLUSION

For all the reasons that are set forth above, defendants motion should be denied.


DATED: November 7, 2014                    Respectfully submitted,


                                           By: _____

                                           Michael Axline
                                           Counsel for the Commonwealth

1

## PROOF OF SERVICE VIA LEXISNEXIS FILE & SERVE

2

*Commonwealth of Puerto Rico, et al. v. Shell Oil Co., et al.*, United States District Court, Southern District of New York Case No. No. 07 Civ. 10470 (SAS)

3

4

  I, the undersigned, declare that I am, and was at the time of service of the paper(s) herein referred to, over the age of 18 years and not a party to this action.  My business address is 1050 Fulton Avenue, Suite 100, Sacramento, CA  95825-4225.

5

6

  On the date below, I served the following document on all counsel in this action electronically through LexisNexis File & Serve:

7

8

**PLAINTIFF COMMONWEALTH OF PUERTO RICO AND COMMONWEALTH OF PUERTO RICO BY AND THROUGH THE ENVIRONMENTAL QUALITY BOARD'S OPPOSITION TO CERTAIN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON COUNTS I AND IV (STRICT PRODUCTS LIABILITY)**

9

10

11

  I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

12

13

  Executed on November 7, 2014, at Sacramento, California.

14

15

KATHY HERRON

16

17

18

19

20

21

22

23

24

25

26

27

28