UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: Methyl Tertiary Butyl Ether Products Liability Litigation<br><br>This document pertains to:<br><br>*Commonwealth of Puerto Rico, et al. v. Shell Oil Co., et al.,* No. 07 Civ. 10470 (SAS) | Master File No. 1:00-1898<br>MDL 1358 (SAS)<br>M21-88<br><br>Civil Action |

**REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT OF THE SHELL DEFENDANTS**

November 26, 2014

Richard E. Wallace, Jr.
Peter C. Condron
Ruben F. Reyna
SEDGWICK LLP
2900 K Street, N.W.
Harbourside, Suite 500
Washington, D.C.  20007
Telephone:  202.204.1000
Facsimile:  202.204.1001

Attorneys for Defendants Shell Oil Company, Motiva Enterprises LLC, Equilon Enterprises LLC, Shell Trading (US) Company, TMR Company, Shell Chemical Yabucoa, Inc., Shell International Petroleum Company Limited, and Shell Western Supply and Trading Limited

**Table of Contents**

I. REMAINING CLAIMS ................................................................................................... 1

II. PLAINTIFFS DO NOT AND CANNOT REFUTE THE MATERIAL FACTS THAT SHOW THE SHELL DEFENDANTS ARE ENTITLED TO JUDGMENT ...................... 1

    A. Plaintiffs' Assertion that the Shell Defendants Were "Major Suppliers" of MTBE Gasoline Is Unsupported by the Evidence ................................................. 2

        1. SCYI and Motiva ........................................................................................ 2
        2. Shell West .................................................................................................. 2
        3. SIPC ........................................................................................................... 2
        4. SOC ............................................................................................................ 3

    B. A "Broker" Is Not a "Seller" and Is Not Within the Chain of Distribution ............. 4

    C. Plaintiffs' Assertion that SIPC "Controlled" Sol Is Without Merit ......................... 5

III. THE COMMONWEALTH PERMITS *DE MINIMIS* LEVELS OF MTBE IN GASOLINE SUPPLY ...................................................................................................... 7

IV. PLAINTIFFS' NUISANCE AND TRESPASS CLAIMS REMAIN DEFICIENT ........... 8

V. EPPA DOES NOT APPLY TO EVERY ENTITY IN CHAIN OF DISTRIBUTION ...... 8

VI. PLAINTIFFS FAIL TO IDENTIFY ANY TSCA VIOLATION BY SOC ..................... 10

**Table of Authorities**

**Cases**
Balczon v. Machinery Wholesalers Corp., 993 F.Supp. 900 (W.D. Pa. 1998).............................. 5
*Brown v. Eli Lilly & Co.,* 654 F.3d 347 (2d Cir. 2011) .................................................................... 2
*Burlington N.&S.F. Ry. v. United States*, 556 U.S. 599, 610 (2009)............................................... 9
*City of Bloomington v. Westinghouse Elec. Corp.*, 891 F.2d 611 (7th Cir. 1989).......................... 8
*Gwaltney v. Chesapeake Bay Found.*, 484 U.S. 49 (1987)............................................................ 10
*In re MTBE*, 2014 WL 494522, at *4 (S.D.N.Y. Feb. 6, 2014)....................................................... 6
*In re MTBE*, 2104 WL 4631416, Slip Copy at 5 (S.D.N.Y. Sept. 16, 2014)................................. 2
*In re MTBE*, 379 F.Supp. 2d 348, 417 (S.D.N.Y. 2005) ................................................................ 8
*In re MTBE*, 559 F. Supp. 2d 424, 428 n.17 (S.D.N.Y. 2008) ..................................................... 10
*In re MTBE*, 980 F.Supp.2d 425 (S.D.N.Y. 2013) ......................................................................... 8
*Morales v. Digital Equip. Corp.*, 669 F. Supp. 1173 (D.P.R. 1987), *aff'd*, 843 F.2d 613 (1st Cir. 1988) ........................................................................................................................................... 6
Oscar Mayer Corp. v. Mincing Trading Corp., 744 F.Supp. 79 (D.N.J. 1990) .............................. 5
*Prado Alvarez v. R.J. Reynolds Tobacco Co.*, 313 F.Supp.2d 61 (D.P.R. 2004) ........................... 7
*Rodriguez-Ortega v. Philip Morris, Inc.*, 2005 WL 2977795, at *6 (D.P.R.2005) ........................ 7
*United States v. Bestfoods*, 524 U.S. 51 (1998) ............................................................................. 6

**Statutes**
12 L.P.R.A. § 8004a................................................................................................................... 8, 9
12 L.P.R.A. § 8004i ......................................................................................................................... 9
15 U.S.C. § 2607(e) ...................................................................................................................... 10
24 L.P.R.A. § 595 ............................................................................................................................ 9
Puerto Rico Law 16-2012 ................................................................................................................ 7
TSCA § 8(e)................................................................................................................................... 10

**Other Authorities**
DACO Admin. Order No. 2012-020............................................................................................... 7

The Shell Defendants[1] submit this reply to *Plaintiff's Memorandum of Law in Opposition to Motion for Summary Judgment of the Shell Defendants* ("Opposition" or "Opp."). Plaintiffs' Opposition does not and cannot overcome the material facts requiring summary judgment.

I. REMAINING CLAIMS

Plaintiffs agreed to dismiss three Shell Defendants entirely (Equilon, TMR Company and STUSCO) and to dismiss certain claims against the remaining Shell Defendants. Opp. p. 16, n.7. As a result, only the following claims remain:

| Count | Claim | Remaining Shell Defendants |
|---|---|---|
| I | Strict Products Liability | SOC, SCYI, Motiva, SIPC, Shell West |
| II | Public Nuisance | SIPC |
| III | Trespass | SIPC |
| IV | Negligence | SOC, SCYI, Motiva, SIPC, Shell West |
| V | PR Statutory Claims | SOC, SCYI, Motiva, SIPC, Shell West |
| VI | CERCLA | None |
| VII | TSCA | SOC |
| VIII | RCRA | None |

II. **PLAINTIFFS DO NOT AND CANNOT REFUTE THE MATERIAL FACTS THAT SHOW THE SHELL DEFENDANTS ARE ENTITLED TO JUDGMENT**

The Shell Defendants submitted specific, irrefutable evidence showing that they did not supply MTBE gasoline in Puerto Rico, with the exception of some shipments containing *de minimis* levels, and a mere 10 shipments that one Shell Defendant (Shell West) supplied with MTBE levels slightly above the *de minimis* threshold, and that they did not own or control any facilities in Puerto Rico where a discharge of MTBE occurred. Plaintiffs disagree with the significance of this evidence, but they do not and cannot refute the accuracy of the evidence. By and large, plaintiffs try to evade the evidence by resorting to mischaracterization, speculation and conjecture. That will not suffice. As this Court recently observed: "To defeat a motion for summary judgment, the non-moving party must 'do more than simply show that there is some

---

[1] Shell Oil Company ("SOC"), Motiva Enterprises LLC, Equilon Enterprises LLC, Shell Trading (US) Company ("STUSCO"), TMR Company, Shell Chemical Yabucoa, Inc. ("SCYI"), Shell International Petroleum Company Limited ("SIPC"), and Shell Western Supply and Trading Limited ("Shell West").

metaphysical doubt as to the material facts,' and 'may not rely on conclusory allegations or unsubstantiated speculation.'" *In re MTBE*, 2104 WL 4631416, Slip Copy at 5 (S.D.N.Y. Sept. 16, 2014) (footnotes omitted), *quoting Brown v. Eli Lilly & Co.,* 654 F.3d 347, 358 (2d Cir. 2011). At the end of the day, Plaintiffs lack evidence necessary to support their claims, and therefore, the Shell Defendants' motion should be granted.

     A.     **Plaintiffs' Assertion that the Shell Defendants Were "Major Suppliers" of MTBE Gasoline Is Unsupported by the Evidence**

Confronted with documentary evidence that the Shell Defendants did *not* supply MTBE gasoline to Puerto Rico, with some isolated exceptions, Plaintiffs fail to respond with any meaningful evidence. Plaintiffs' contentions are dealt with in greater detail in the Shell Defendants' Reply Rule 56.1 Statement. Here, we address only the main points.

     1.     **SCYI and Motiva**

Regarding SCYI and Motiva, Plaintiffs merely recite the same facts that the Shell Defendants presented with their motion – that these entities supplied just a small number of shipments containing trace levels of MTBE well below the *de minimis* threshold. Thus, Plaintiffs do not refute that Motiva supplied just two shipments to SCYI which contained 0.11% and 0.04% MTBE.

     2.     **Shell West**

Similarly, for Shell West, Plaintiffs offer nothing beyond what the Shell Defendants already acknowledge – that 75% of the shipments Shell West arranged did not contain any MTBE at all, and of the remainder, all but 10 shipments contained only trace levels of MTBE below the *de minimis* threshold permitted by Puerto Rico law.

     3.     **SIPC**

There is no evidence to support Plaintiffs' suggestion that SIPC supplied "substantial volumes" of MTBE gasoline to Sol, formerly known as Shell Company Puerto Rico Limited (SCPRL). Opp. p. 6. The only evidence Plaintiffs cite are SIPC supply contracts which contained specifications that *permitted* MTBE up to 10% by volume, but did not *require* MTBE

to be added.  *Id.*  Those contracts do not demonstrate that the gasoline SIPC supplied actually contained MTBE.  Reply LR 56.1 ¶ 3.  Maraven, which operated the Curaçao refinery, was an affiliate of Petróleos de Venezuela S.A., and there is no evidence to support Plaintiffs' contention that "MTBE was generally known to be present" in Maraven gasoline.  *Id.*

Likewise, Plaintiffs have no evidence to support their allegation that SIPC supplied Sol with gasoline containing MTBE from HOVIC in the 1995-97 time period.  Opp. pp. 5-6.  To the contrary, the evidence shows indisputably that HOVIC and Sol entered into direct supply contracts that did not involve the Shell Defendants during that time period.  Reply LR 56.1 ¶¶ 3, 6.  Thus, while Plaintiffs show that Sol acquired gasoline with MTBE from HOVIC between 1995 and 1997, that fact is immaterial.  Neither SIPC nor other Shell Defendants participated in that supply and thus are not liable for it.

   **4.**  **SOC**

Plaintiffs also try to implicate SOC in the 1995-97 supply from HOVIC to Sol by alleging that an entity not named as a defendant, which Plaintiffs identify as a "division of Shell Oil, known as Shell Atlantic Services Company ('Shell Atlantic'), … negotiated and arranged for the supply of gasoline from the HOVIC refinery in St. Croix for Shell PR [Sol]."  Opp. p. 9.  As noted, the evidence demonstrates that HOVIC and Sol entered into direct supply contracts during that time period.  Reply LR 56.1 ¶¶ 3, 6.  Plaintiffs do not provide any evidence linking "Shell Atlantic" to SOC or any other named Shell Defendant, and do not provide any evidence to support the assertion that Shell Atlantic was "a division of Shell Oil."  More importantly, Plaintiffs acknowledge, as they must, that the supply contracts for this period were directly between HOVIC and Sol, and that the supply was likewise direct from HOVIC to Sol.  The most that can be concluded from these allegations, therefore, is that a third party called Shell Atlantic acted as a broker in negotiating a direct supply from HOVIC to Sol.  As explained later, mere brokerage services do not place one in the chain of distribution for products liability purposes and thus would not subject Shell Atlantic to liability.  Moreover, absent any evidence that would

subject SOC or any of the other Shell Defendants to liability for conduct of Shell Atlantic, these allegations are immaterial.[2]

That aside, the only evidence Plaintiffs cite regarding SOC concerns shipments from SOC's Deer Park and Norco refineries. Plaintiffs do not, and cannot, rebut the evidence that only two shipments from Deer Park contained MTBE, and those shipments in 2004 contained merely 0.02% MTBE by volume, which is 25 times less than the *de minimis* level of 0.5% by volume. LR 56.1 ¶¶ 53-54. With regard to the shipments from Norco, of which there may have been just six or fewer shipments in the mid-1990s, Plaintiffs invoke merely conjecture. They ignore the evidence SOC provided, including batch reports for that time which show that Norco produced mostly conventional gasoline without MTBE, and that there was no reason for Norco to send MTBE gasoline to Puerto Rico. Reply LR ¶¶ 3, 45. Instead, Plaintiffs twist testimony from Shell declarant and witness Patrick Bloomer. They say Mr. Bloomer "admitted … that he cannot deny" that shipments from Norco in the 1990s might have contained MTBE. Opp. p. 8. In fact, in the deposition Plaintiffs cite, Mr. Bloomer simply acknowledged that he cannot determine which batch of gasoline from Norco was shipped to Puerto Rico. Reply LR ¶¶ 3, 43. That is not evidence that gasoline from Norco contained MTBE, and thus does not overcome the affirmative evidence SOC presented.

### B.   A "Broker" Is Not a "Seller" and Is Not Within the Chain of Distribution

As noted already, Plaintiffs' assertions about the role of Shell Atlantic in the supply of MTBE gasoline directly from HOVIC to Sol are inaccurate and immaterial. Even if they were true, those allegations would not support claims against any Shell Defendant for numerous reasons, not least because the conduct Plaintiffs allege by Shell Atlantic is not actionable. In essence, Plaintiffs assert that Shell Atlantic "conducted all contractual negotiations" between

---

[2] The allegations are also demonstrably wrong. As an example, Plaintiffs contend that before Sol acquired gasoline directly from HOVIC, a Sol employee, Ivan Cintrón, "'got on the phone and called people in Houston …' to essentially obtain approval." Opp. p. 9. In fact, Mr. Cintrón specifically denied that he "[needed] approval to buy from [HOVIC]" and testified that he only called Houston for assistance in arranging inspection of tankers used in the supply. Reply LR 56.1 ¶ 3. While this evidence is immaterial, the Plaintiffs' distortion bears noting.

HOVIC and Sol.  As a matter of law, such negotiation services, or brokerage services, which facilitate a transaction between a seller and purchaser, would not subject the negotiating party to liability, at least not without evidence that the party exercised control over the product.  *See Oscar Mayer Corp. v. Mincing Trading Corp.,* 744 F.Supp. 79 (D.N.J. 1990) (broker who never had title to, possession of, or control over goods was not in the "chain of distribution" and not subject to strict liability); *Balczon v. Machinery Wholesalers Corp.,* 993 F.Supp. 900 (W.D. Pa. 1998) (broker who sold press, but had no control or involvement in manufacture or design, made no representations as to quality or soundness and never physically possessed product was not seller subject to strict liability).

Here, the most Plaintiffs allege is that Shell Atlantic acted as a go-between for Sol, the purchaser, in negotiations with HOVIC, the seller.  There is no evidence or indication that Shell Atlantic ever held title to or otherwise exercised control over the product, and affirmative evidence shows that it was never a party to the supply agreements.  Reply LR 56.1 ¶¶ 3, 6.

        C.        **Plaintiffs' Assertion that SIPC "Controlled" Sol Is Without Merit**

Plaintiffs also seek to subject SIPC to liability for operations of Sol by alleging that SIPC "exercised substantial control over environmental matters at Shell-branded service stations throughout the Commonwealth."  Opp. pp. 11-16.  Plaintiffs present no evidence of such control.

Plaintiffs rely heavily on the Shell Retail International Franchise Agreement ("Franchise Agreement") between Shell Retail International ("SRI"), a division of SIPC, and SCPRL (n/k/a Sol), which provides that SRI will offer "comprehensive advice and business support."  Reply LR 56.1 Resp. to Addl. Mat. Facts ¶ 1.  The Franchise Agreement does not state or imply that SIPC would or could control any aspect of SCPRL's business.  To the contrary, at Article 7(1), the Franchise Agreement states that "[SCPRL] continues to be responsible for the day to day and financial management of its Retail Business …."  *Id.*

Plaintiffs also rely on mischaracterizations of deposition testimony.  For example, Plaintiffs suggest that Brenda Toraño and her predecessor, Vanessa Rodriguez, worked for both SCPRL and an entity known as the Shell Caribbean and Central American Cluster ("SCCA").

That suggestion is wrong.  When questioned at her deposition, Ms. Toraño testified that she worked for SCPRL and not the SCCA.  Reply LR 56.1 Resp. to Addl. Mat. Facts ¶ 4.  This was confirmed by David Lewis, HSSE Manager for the SCCA.  *Id.*  Plaintiffs' own evidence supports the fact that SCPRL controlled environmental matters at retail sites because Ms. Toraño and Ms. Rodriguez, both SCPRL employees, operated as "the local environmental expert[s]."  *Id*.  Additionally, Ms. Toraño testified that the SCCA only provided support to SCPRL.  *Id.*  No witness supports Plaintiffs' implication that SIPC controlled operations of SCPRL.

Plaintiffs also seem to imply that SIPC is vicariously liable for operations of SCPRL, though they neither pled any such theory of liability and never disclosed such a theory in response to Defendants' First Set of Contention Interrogatories.  *See* Reyna Decl. ¶ 6, Ex. 15.  An undisclosed theory of liability will be precluded unless the failure to disclose was substantially justified or harmless, and "advancing a new theory of liability after the close of discovery is not presumptively harmless."  *In re MTBE*, 2014 WL 494522, at *4 (S.D.N.Y. Feb. 6, 2014) (neither bad faith nor prejudice are prerequisites for preclusion); *see also id.* at *2 ("Contention interrogatories are treated as judicial admissions which usually estop the responding party from later asserting positions not included in its answers").

Furthermore, Plaintiffs' suggestion of vicarious liability is unsupported by the facts or law.  In Puerto Rico, the "common control" doctrine is used to determine whether to impose liability on a parent corporation for the acts of its subsidiary (here, it must be noted that SIPC was *not* the parent of SCPRL in any case).  *Morales v. Digital Equip. Corp.*, 669 F.Supp. 1173, 1182 (D.P.R. 1987), *aff'd*, 843 F.2d 613 (1st Cir. 1988).  Plaintiffs fail to set forth any facts to support their contention that SIPC controlled SCPRL's environmental operations.  *See id.* at 1181 ("The mere fact that a parent corporation may assert authority to approve or reject plans of its subsidiary does *not* establish that the parent plans, implements or in any way controls the subsidiary's policies.") (emphasis in original).  *Cf. United States v. Bestfoods*, 524 U.S. 51, 72 (1998) ("[A]ctivities that involve [a] facility but which are consistent with the parent's investor status, such as monitoring of the subsidiary's performance, supervision of the subsidiary's

finance and capital budget decisions, and articulation of general policies and procedures, should not give rise to direct liability").

### III. THE COMMONWEALTH PERMITS *DE MINIMIS* LEVELS OF MTBE IN GASOLINE SUPPLY

Plaintiffs argue that Puerto Rico Law 16-2012 ("PR 16") bans MTBE gasoline "completely" and that the Department of Consumer Affairs ("DACO") regulation implementing PR 16 only reflects DACO's "exercise of enforcement discretion." Opp. pp. 16-18. Plaintiffs miss the point. Either way, the Commonwealth expressly acknowledges that *de minimis* levels of MTBE are unavoidable and it codified that acknowledgment in DACO Admin. Order No. 2012-020, which limited the MTBE ban to gasoline shipments with "a level of methyl tertiary-butyl ether higher than 0.50% per volume." Reply LR 56.1 ¶ 113.

Plaintiffs argue that applying this threshold for determining liability would be tantamount to giving the Shell Defendants a "license to pollute." Nothing could be further from the truth. Plaintiffs seek to impose liability on the Shell Defendants not because they spilled or polluted, but merely because they sent a limited number of gasoline shipments to Puerto Rico with unavoidable *de minimis* levels of MTBE. Thus, decisions such as *City of New York*, *Suffolk County*, *United Water*, *Adifolfe*, and *Martinez de Jesus,* which address whether MCLs or other regulations set minimum standards for tort liability, are inapposite. Here, DACO expressly permits gasoline with *de minimis* MTBE to be sold or distributed in Puerto Rico because it recognizes "the reality of the fuel industry" is that "MTBE residues [may] remain in barge tanks." Reply LR 56.1 ¶ 113. An unavoidable characteristic of a product is not a design defect if it cannot be removed or abated by commercially feasible means. *See Prado Alvarez v. R.J. Reynolds Tobacco Co.*, 313 F.Supp.2d 61, 75 (D.P.R. 2004); *Rodriguez-Ortega v. Philip Morris, Inc.*, 2005 WL 2977795, at *6 (D.P.R.2005). Hence, gasoline shipments with only *de minimis* levels of MTBE should not be actionable, and the Shell Defendants should not be held liable solely for supplying gasoline that fully complied with regulations Plaintiffs promulgated.

The significance of the point is illustrated by the examples of SOC and Motiva: Plaintiffs seek to hold both of them liable merely because two shipments from each contained mere trace levels of MTBE well below the *de minimis* threshold (0.02%, 0.04% and 0.11%). Plaintiffs cannot trace these shipments to releases, and cannot show that these shipments amount to a substantial factor in causing any alleged damages. These shipments should be deemed not actionable under any circumstances.

## IV. PLAINTIFFS' NUISANCE AND TRESPASS CLAIMS REMAIN DEFICIENT

The only remaining Shell Defendant against whom Plaintiffs assert nuisance and trespass claims is SIPC. Plaintiffs admit that SIPC never owned, operated, or controlled any facility in Puerto Rico. *See* Reply LR 56.1 ¶ 108. Plaintiffs fail to proffer any evidence of "affirmative acts" by SIPC that caused or allowed a discharge of gasoline, as would be necessary to support the claims. *See In re MTBE*, 980 F.Supp.2d 425, 460 (S.D.N.Y. 2013) (use of a product liability theory to prove nuisance "would allow nuisance to become a monster that would devour in one gulp the entire law of tort"); *see also In re MTBE*, 379 F.Supp.2d 348, 417 (S.D.N.Y. 2005) (dismissing nuisance claims where "plaintiffs seek to recover from defendants in their capacity as manufacturers, and not as property owners or users"). Plaintiffs similarly fail to demonstrate the requisite intent by SIPC required for trespass. *See, e.g.*, *City of Bloomington v. Westinghouse Elec. Corp.*, 891 F.2d 611, 615 (7th Cir. 1989) ("courts do not impose trespass liability on sellers for injuries caused by their product after it has left the ownership and possession of the sellers"). Plaintiffs' nuisance and trespass claims against SIPC cannot be sustained.

## V. EPPA DOES NOT APPLY TO EVERY ENTITY IN CHAIN OF DISTRIBUTION

Plaintiffs claim that all of the Shell Defendants are liable under the Environmental Public Policy Act ("EPPA") based on the conclusory assertion that the Shell Defendants are "persons responsible" for polluting Puerto Rico's "soil, waters and atmosphere" under 12 L.P.R.A. § 8004a. Opp. p. 22.[3] Plaintiffs lack any evidence to support this contention. Rather, they seek to

---

[3] Plaintiffs do not even attempt to argue that the Shell Defendants violated the Water Pollution Control Act, which requires that a defendant "throw, discharge, pour or dump" pollutants into

stretch the law beyond any rational limits by contending that a mere supplier is liable for a discharge by a third party. The interpretation that Plaintiffs urge is nonsensical, and its implications would not be limited to MTBE. Under Plaintiffs' proffered interpretation, any manufacturer, distributor, transporter, or anyone else associated in any way with a product that incorporated a potentially hazardous substance, anywhere in the world and at any time, would be liable if that product ever found its way to Puerto Rico and was disposed of or spilled, regardless of whether that entity had anything to do with the item's disposal or spillage.

Plaintiffs' interpretation is also inconsistent with the statute. Like CERCLA, Puerto Rico's EPPA imposes liability on those who own, operate or control "establishments, transfer or final disposal stations, facilities or services that generate, store, transport, distribute or otherwise handle" hazardous substances. 12 L.P.R.A. § 8004a (definition of "person responsible"). Such liability does not extend to manufacturers of useful products who merely place them into commerce. As the Supreme Court has held in interpreting analogous provisions of CERCLA, liability for spills does not extend to a manufacturer "merely for selling a new and useful product if the purchaser of that product later, and unbeknownst to the seller, disposed of the product in a way that led to contamination." *Burlington N.&S.F. Ry. v. United States*, 556 U.S. 599, 610 (2009). Knowledge that some of the product might be spilled during distribution "is insufficient to prove that an entity 'planned for' the disposal, particularly when the disposal occurs as a peripheral result of the legitimate sale of an unused, useful product." *Id*. at 612. Those who spill gasoline are liable under the law; those who make or distribute the product are not. Some actual nexus between the defendant and the spill, release or discharge itself is required. *Cf*. 12 L.P.R.A. § 8004i ("person responsible" must be the "cause of [an] environmental emergency"). No such nexus exists here.

---

water, 24 L.P.R.A. § 595, or Puerto Rico's Underground Storage Tank regulations, which require a defendant to own or operate USTs.

*Reply ISO the Shell Defendants' Motion for Summary Judgment*                                                                 *Page 9*

## VI. PLAINTIFFS FAIL TO IDENTIFY ANY TSCA VIOLATION BY SOC

Plaintiffs claim that SOC "has been in violation of [Section 8(e) of the Toxic Substances Control Act ("TSCA")] for decades," allegedly because SOC did not inform the EPA that, as a result of a release of gasoline in Rockaway, New Jersey in 1981, Shell learned that MTBE was "detectable (by drinking) in 7 to 15 parts per billion…." Opp. p. 24. Plaintiffs do not identify any other "substantial risk information" that Shell allegedly failed to disclose.

Even assuming disclosure was required by TSCA, Plaintiffs' claim fails because EPA has been in possession of data from the Rockaway spill suggesting that MTBE might be detectable in water at 7-15 parts per billion for over a quarter-century. In 1987, pursuant to its authority under TSCA, EPA compiled a docket of materials in connection with the MTBE Testing Consent Order that Plaintiffs reference in their brief. Opp. at 24-25. One of the articles contained in that docket was published in the Journal of the American Water Works Association in May 1984, and it described the very information about the Rockaway incident that Plaintiffs say Shell is obliged to disclose. Thus, since EPA demonstrably has long had the very information at issue, SOC cannot be held liable under TSCA for failing to disclose it. *See* 15 U.S.C. § 2607(e) (TSCA obligations are satisfied where, as here, "the Administrator [EPA] has been adequately informed of [substantial risk] information"). *Accord In re MTBE*, 559 F.Supp.2d 424, 428 n.17 (S.D.N.Y. 2008) (citing *Gwaltney v. Chesapeake Bay Found*., 484 U.S. 49 (1987)) (TSCA only authorizes prospective relief for an ongoing failure to submit risk information to EPA).[4]

---

[4] EPA's TSCA Section 8(e) Reporting Guide further provides that "[t]here are several kinds of information about which the Agency considers itself to be adequately informed for purposes of Section 8(e) of TSCA," including information "published in the open scientific literature." Reply LR 56.1 Resp. to Addl. Mat. Facts ¶ 23. Thus, even if it had not possessed a copy of the McKinnon & Dyksen article, EPA considered itself to be "adequately informed" of its contents.

November 26, 2014                            Respectfully submitted,

            By:   /s/  Ruben Reyna
              Richard E. Wallace, Jr.
              Peter C. Condron
              Ruben F. Reyna
              SEDGWICK LLP
              2900 K Street, N.W.
              Harbourside, Suite 500
              Washington, D.C.  20007
              Telephone:  202.204.1000
              Facsimile:  202.204.1001

              Attorneys for Defendants:
              Shell Oil Company, Motiva Enterprises LLC,
              Equilon Enterprises LLC (d/b/a Shell Oil Products
              US), Shell Trading (US) Company, TMR
              Company (f/k/a Texaco Refining and Marketing
              Inc.), Shell Chemical Yabucoa, Inc., Shell
              International Petroleum Company Limited, and
              Shell Western Supply and Trading Limited

# CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of November 2014, I caused a true and correct copy of the following to be served on all counsel of record via File&ServeXpress and the Court's ECF system:

Reply in Support of Motion for Summary Judgment of the Shell Defendants;

Reply Local Rule 56.1 Statement of material Facts in Support of Motion for Summary Judgment of the Shell Defendants; and

Reply Declaration of Ruben F. Reyna in Support of the Shell Defendants' Motion for Summary Judgment attaching Exhibits 11-20.


    /s/ Keith Kaider
Keith Kaider