UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: METHYL TERTIARY BUTYL
ETHER ("MTBE") PRODUCTS
LIABILITY LITIGATION

Master File No. 1:00-1898
MDL    1358 (SAS)
M21-88

Civil Action

This document relates to:
*Commonwealth of Puerto Rico, et al.*
*v.*
*Shell Oil Co., et al.,*
*Case No. 07-CIV-10470 (SAS)*

**MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION TO EXXON MOBIL CORPORATION'S MOTION TO STRIKE PLAINTIFF'S EVIDENCE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR LACK OF CAUSATION**

0

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.     THE SALE/PURCHASE/EXCHANGE AGREEMENT IS EVIDENCE THAT EXXON SOLD AND SUPPLIED MTBE GASOLINE TO ESSO, AND IS NOT A "NOVEL" THEORY OF LIABILITY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II.    PLAINTIFF PUT DEFENDANTS ON NOTICE OF ITS INTENT TO USE THIS EVIDENCE OF EXXON'S SUPPLYING ESSO BY EXCHANGE WITH CORE. . . . 10

III.   PLAINTIFF'S RESPONSES TO CONTENTION INTERROGATORIES WERE SUFFICIENTLY EXPLICIT, AND THE INFORMATION CONCERNING EXXON'S EXCHANGE WAS MADE KNOWN TO ALL DEFENDANTS DURING THE DISCOVERY PROCESS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

IV.   IF PLAINTIFF'S RESPONSES TO INTERROGATORIES ARE INCOMPLETE IN ANY WAY, IT IS DUE TO EXXON'S FAILURE TO DISCLOSE IN DISCOVERY ITS SUPPLY ARRANGEMENTS WITH ESSO .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

V.    ANY OMISSION IS HARMLESS SINCE EXXON AND ESSO WERE PARTIES TO THE 1982 SALE/PURCHASE CONTRACT, HAD AMPLE NOTICE DURING DISCOVERY AND PROVIDED THEIR EXPERTS WITH THE EVIDENCE EXXON NOW WANTS STRICKEN. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## TABLE OF AUTHORITIES

**RULES AND STATUTES**

Fed.R.Civ.P. 26(e)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed.R.Civ.P. 37(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## INTRODUCTION

Exxon Mobil's (Exxon) motion to strike is based on two false premises. The first false premise is, that Plaintiff has at the eleventh hour, by citing to *evidence*, spun a "new theory of liability" that Exxon, through exchange agreements, supplied MTBE gasoline to Esso in Puerto Rico. The second false premise is that Plaintiff never disclosed this "theory of liability" to Exxon or Esso.

As Exxon is well aware, Plaintiff has since the inception of this litigation alleged that Exxon supplied MTBE gasoline to Esso in Puerto Rico. Neither Exxon nor Esso, however, was forthcoming in discovery with responses to discovery requests on this topic. Information on *how* Exxon ensured that MTBE gasoline was provided to Esso stations in Puerto Rico was not produced until late in discovery, and even then, not by Exxon. An exchange agreement produced in discovery for the first time in 2013 showed that Exxon provided Esso with all the gasoline Esso needed for Puerto Rico for a ten-year period through an exchange arrangement with CORE. Under this arrangement, Exxon delivered certain volumes of gasoline to Phillips Petroleum stateside, in exchange for Phillips providing gasoline of equivalent value to Esso stations in Puerto Rico.

As Exxon is also well aware, Plaintiff has pursued discovery on this topic throughout this litigation. When Exxon was less than forthcoming in discovery responses, Plaintiff's counsel pursued clarification through letters and attempted to explore the exchange arrangements at three separate depositions.

Exxon's motion seeks to strike the very agreement that sets out the sale/purchase/exchange arrangement for gasoline between Exxon (Exxon), Esso Standard Oil Company (Esso), and the Phillips Petroleum Company (now known as Chevron Phillips CORE,

1

or "CORE"). Exxon itself never produced this November 1, 1982, "SALES/PURCHASE CONTRACT. Esso produced this agreement on May 30, 2013, almost two years after Plaintiff requested all pertinent supply and exchange agreements. Esso, represented by the same counsel as Exxon Mobil, never disclosed in discovery responses that for ten years it obtained almost all the gasoline it sold in Puerto Rico through this arrangement with Exxon.

Contrary to Exxon's Statement of Facts, Plaintiff raised this very issue, that Exxon was supplying Esso with gasoline via exchanges with CORE, at three Rule 30(b)(6) depositions. At the first deposition of the Exxon and Esso 30(b)(6) designee on supply issues, defendants' counsel informed Plaintiff's counsel that questions about on-island supply to Esso needed to be asked of a different designee. When Plaintiff then attempted to get that supply information from the second designee at a subsequent deposition, the witness was unprepared and unable to answer dozens of questions concerning on-island supply. Exxon's experts, however, relied on this very agreement, to which Exxon is party, in the preparation of their reports and opinions.

Exxon cannot claim surprise or prejudice where the evidence it objects to is its own contract. Exxon's supply to Esso, far from a being "novel" issue, has been a hotly disputed issue from the beginning of this case.

Ironically, Exxon's experts included in their reliance materials the same sale/purchase/exchange agreement Exxon now effectively seeks to have stricken. Exxon and Esso's repeated omissions of this inconvenient evidence from their discovery responses is troubling to say the least. Worse, there is *another* agreement pertinent to this three-party sale/purchase/exchange arrangement. This additional agreement is referenced in the November 1, 1982 agreement, but has never been produced by any party. When Plaintiff specifically requested the additional exchange agreement on the record at the deposition of a Conoco Phillips

30(b)(6) designee, defendant's counsel informed Plaintiff, "We can't find it." Apparently neither could Exxon/Esso's counsel, because the document has never been produced.

Were the motion to strike granted, the anomalous and unfair result would be to allow Exxon's and Esso's experts to rely on this evidence while forbidding Plaintiff to use the evidence in opposing the summary judgment motions on the issue of Exxon's supply to Esso, despite the fact that Plaintiff made extensive efforts to obtain precisely such evidence and referred to such evidence in responses to contention interrogatories, in pleadings, and in depositions.

Plaintiff raised the three-party sale/purchase/exchange arrangement at three depositions that were conducted shortly after the exchange agreement surfaced in discovery. Plaintiff referred to those depositions and exhibits (one of which is the sale/purchase/exchange agreement between Exxon and Esso) in Plaintiff's responses to contention interrogatories.

Exxon, of course, a party to the 1982 agreement, has known all along about the exchange agreement, and even provided the agreement to its experts. Exxon can claim no harm or prejudice, and Plaintiff should be allowed to use that same evidence Exxon and Esso's experts have relied on. The motion should be denied in its entirety.

## STATEMENT OF FACTS

On July 8, 2011, Plaintiff served on all defendants a Second Set of Document Requests (Request No. 32) and sought "[a]ny and all DOCUMENTS, including but not limited to gasoline supply agreements and/or gasoline exchange agreements, which reflect or refer to the suppliers of gasoline which has been stored in UNDERGROUND STORAGE TANKS at each SITE. (*See* Dec. of Duane Miller ("Miller Dec."), ¶ 3, Ex. 1, Request No. 32.)

On March 26, 2013, Esso attorney Carlos Bollar (whose firm also represents Exxon in this action), served Esso's Supplemental Objections and Responses to Plaintiffs' Fourth Set of

3

Interrogatories and Request for Production of Documents, responding to Request No. 3, in pertinent part: "Defendant is unaware of any Agreement that specified 'gasoline containing MTBE' for supply or sale in Puerto Rico. Defendant has produced documents relating to Agreements with 'REFINERS, manufacturers, and/or DISTRIBUTORS' pursuant to which petroleum products were provided for supply and sale in Puerto Rico. Those shipments and their suppliers have been identified in Defendant's Answer to Interrogatory No. 1, ***Exhibit 'A.'***" (*See* Miller Dec., ¶ 4, Ex. 2, emphasis added.) (*Exhibit A is an attachment to Answers to Interrogatories which was compiled by counsel for Exxon/Esso* as a chronological listing of each refiner that supplied gasoline to Esso stations.)

Esso failed in Exhibit A ***to disclose any supply of MTBE gasoline by the CORE refinery***. Esso served its Second Amended Exhibit A on October 21, 2013. (*See* Miller Dec., ¶ 5, Ex. 3.) However, this version again fails even to mention the CORE refinery: the compilation does not commence until 1993, the year after the exchange is terminated.

On December 3, 2012, Plaintiff filed its Third Amended Complaint (TAC). Paragraph 95 (a) alleges:

> The Manufacturer/Supplier Defendants, and each of them, sold, exchanged, supplied, distributed, delivered and/or otherwise provided MTBE to the Refiner/Supplier Defendants, and each of them, ***sold, exchanged, supplied, distributed, delivered and/or otherwise provided gasoline containing MTBE to retail gasoline stations*** and/or other gasoline delivery systems in the Commonwealth. Upon information and belief, the Commonwealth alleges that such ***sales, exchanges, supplies, distributions, deliveries and/or other provisions of gasoline containing MTBE*** to such facilities occurred over time, up to and including the present . . .

(Emphasis added.)

On May 30, 2013, Esso made a supplemental production of documents which for the first time disclosed the sale/purchase/exchange agreement between Exxon, Esso and CORE. (*See* Miller Dec., ¶ 6, Ex. 4.) The document entitled "SALES/PURCHASE CONTRACT," dated June 1, 1982, is at bates range at XOM-PR-FILES-SUPP-715058 through 715084. The agreement references another exchange agreement, dated February 8, 1982. (*Id.* at Ex. 4, p. 3.) No defendant has ever produced this agreement. (*See* Miller Dec., ¶ 6.)

On August 22, 2013, at the deposition of Hector Antonio Marin-Diaz, Rule 30 (b)(6) designee for ConocoPhillips (CORE), Plaintiff's counsel inquired about an email that referenced an exchange agreement between CORE, Esso and Exxon. (*See* Miller Dec., ¶ 7, Ex. 5.) The deponent acknowledged that there was such an agreement but could not give the particulars. (*See* Miller Dec., ¶ 7, Ex. 5, p. 2) Plaintiff's counsel then had the following exchange with ConocoPhillips' counsel:

> Mr. Petit: Steve [Dillard], have you guys ever uncovered that exchange agreement? Do you know?
>
> Mr. Dillard: No, sir. Do I know? Yeah. We've looked high and low and we can't find it.
>
> Mr. Petit: I haven't seen it.

(*See* Miller Dec., ¶ 7, Ex. 5, at p. 3.)

On October 21, 2013, attorney Bollar, on behalf of Esso, served Esso's Second Amended Exhibit A in response to Plaintiffs' Fourth Set of Interrogatories and Request for Production of Documents which sought information on Esso's supply of gasoline in the Commonwealth. (*See* Miller Dec., ¶ 5., Ex. 3.) The Second Amended Exhibit A fails to mention that Esso was supplied by the CORE refinery.

On October 22, 2013, Plaintiff took the deposition of Paul Goldberg, Exxon's 30(b)(6) designee. After the sale/purchase/exchange agreement was marked as Exhibit 21 to that deposition, Plaintiff's counsel, Mr. Miller, attempted to question the deponent about the agreement. Exxon's counsel, Mr. Stack, informed Mr. Miller that a different 30 (b)(6) designee, Mr. Arturo Hernandez, would testify about "on-island" supply. (*See* Miller Dec, ¶ 8, Ex. 6, at p. 3.)

On December 13, 2013, Mr. Miller deposed Mr. Hernandez. Despite attorney Stack's representations at the Goldberg deposition that Mr. Hernandez would be prepared to address the exchange agreement, Mr. Hernandez was not so prepared:

MR. MILLER: We showed Mr. Goldberg an exhibit, and we were told that you would answer the questions [about gasoline supply to the Commonwealth]. He gets to nominate you, or at least his attorney does. Notice his attorney didn't show up here today. He had a different attorney at that deposition.

Mr. BOLLAR: Mr. Stack is otherwise engaged.

(*See* Miller Dec., ¶ 9, Ex. 7 at p. 10. )

Mr. Hernandez was unprepared, answering "I don't know" dozens of times. Attorney for the 30(b)(6) designee, Mr. Bollar, objected numerous times to questions regarding on-island supply despite reminding him that his colleague, Mr. Stack, agreed that Mr. Hernandez would cover this topic. (*See* Miller Dec., ¶ 9, Ex. 7, at p. 10.)

On March 14, 2014, Plaintiff served its Supplemental Responses to Defendants First Set of Contention Interrogatories and Requests for Production of Documents. (*See* Miller Dec., ¶ 10, Ex. 8.) There, in response to Interrogatory No. 1, Plaintiff identified Exxon as responsible for damages, *inter alia*, at both Esso trial sites, Esso CO-364 and Esso CO-242. (*See* Miller

6

Dec., ¶ 10, Ex. 8, pp. 4-5.) In response to Interrogatory No. 2, seeking facts and documents establishing liability as to each defendant, Plaintiff specified evidence for each of the Esso stations, including the "[d]eposition of Hector Marin and exhibits thereto . . ." (Exhibit 42 to the Marin Deposition is the email that discusses the sale/purchase/exchange agreement between Exxon, Esso and CORE.) Plaintiff also specified the deposition of Paul Goldberg (Exhibit 21 is the exchange agreement) and that of Arturo Hernandez. (*See* Miller Dec., ¶ 10, Ex. 8, pp. 7-9.)

On April 14, 2014, Esso experts, including C. David Millican (who is also Exxon's expert), submitted their Amended Expert Report conceding that the CORE refinery was the source of essentially 100% of the gasoline supplied to Esso stations, including Trial Sites Esso CO-364 and Esso CO-242, for eight years during the relevant time period and of at least 96% of the supply for two additional years. (*See* Miller Dec., ¶ 11, Ex. 9 at pp 2-4.)

On August 1, 2014, Plaintiff counsel corresponded with counsel for Exxon/Esso, regarding earlier, inadequate responses to discovery requests regarding on-island supplies. Again, Plaintiff sought more information and relevant documents regarding Exxon's exchanges with CORE. (*See* Miller Dec., ¶ 12, Ex. 10.) Plaintiff's counsel stated:

> The two spreadsheets [provided by Exxon/Esso] . . . are inadequate because (1) the[y] only cover exchanges and do not address receipt of product from CORE, and (2) the spreadsheet . . . does not identify the exchange partner by name, but only states 'Intercompany Purchase' . . . Please forward . . . an appropriate spreadsheet which includes shipments received from CORE (both at Catano and CORCO) and which identifies the exchange partner who provided Esso with gasoline . . . .

Despite this specific request, Exxon/Esso did not provide any additional exchange information. (*See* Miller Dec., ¶ 12.)

## ARGUMENT

### I. THE SALE/PURCHASE/EXCHANGE AGREEMENT IS EVIDENCE THAT EXXON SOLD AND SUPPLIED MTBE GASOLINE TO ESSO, AND IS NOT A "NOVEL" THEORY OF LIABILITY.

Plaintiff has contended from the beginning of this litigation that Exxon sold and supplied Esso with MTBE gasoline. The operative pleading alleges that each of the defendants "sold, exchanged, supplied, distributed, delivered and/or otherwise provided gasoline containing MTBE to retail gasoline stations. . . ." (TAC, ¶ 95(a).) Plaintiff's discovery requests in 2011 were explicit about exchange arrangements, including "[a]ny and all DOCUMENTS, including but not limited to gasoline supply agreements and/or gasoline exchange agreements, which reflect or refer to the suppliers of gasoline . . . ." (*See* Miller Dec., ¶ 3, Ex. 1, Request No. 32.)

About two years later, Esso finally produced a document reflecting a sale/purchase/exchange arrangement between Exxon, Esso and CORE. (*See* Miller Dec., ¶ 4, Ex. 2.) Plaintiff immediately attempted to explore the three-party arrangement by taking three separate depositions, including 1) ConocoPhillips Rule 30(b)(6) designee on August 22, 2013 (Hector Antonio Marin-Diaz); 2) Exxon's designee Paul Goldberg; and 3) Exxon/Esso's designee Arturo Hernandez. (*See* Miller Dec., ¶¶ 7-9.)

When Plaintiff attempted to gather more information at the deposition of Exxon's witness Mr. Goldberg about Exxon's exchange arrangement with CORE to supply gasoline to Esso with gasoline for Puerto Rico, Exxon's counsel advised Plaintiff that a different designee, Mr. Hernandez would testify about on-island supply issues. (*See* Miller Dec., ¶ 8, Ex. 6 at p. 3.) When, less than two months later, Plaintiff took the deposition of Mr. Hernandez, the deponent was unprepared, answering "I don't recall" dozens of times as counsel for Exxon/Esso objected "outside scope" a similar number of times. (*See* Miller Dec., ¶ 9, Ex. 7.)

8

Without the benefit of additional information about Exxon's supply of gasoline to Esso through exchanges of gasoline with CORE, and with at least one exchange agreement relating to the three-party exchange arrangement between Exxon, Esso and CORE *still missing*, Plaintiff responded to contention interrogatories. It identified Exxon as responsible for damages, *inter alia*, at both Esso trial sites. When asked to specify evidence for liability at each site, Plaintiff referenced and cited specifically to the three depositions regarding supply (Marin, Goldberg, Hernandez). Plaintiff also listed several exchange agreements between the different defendants. (*See* Miller Dec., ¶ 10, Ex. 8.)

After Exxon/Esso's experts revealed in an April 14, 2014, report that Esso had obtained nearly all its gasoline supplies from the CORE refinery from approximately 1982 through 1992, Plaintiff analyzed Exxon/Esso's prior inconsistent discovery responses, brought the inadequate responses to defendants' shared counsel's attention, and demanded clarification of prior references to exchanges of enormous volumes of MTBE gasoline. On August 1, 2014, Plaintiff counsel sought from Esso's counsel (also counsel to Exxon) additional information on the identity of the "exchange partner" who provided Esso with gasoline. (*See* Miller Dec., ¶ 12, Ex. 10.) Plaintiff never received any additional information or clarification. (*See* Miller Dec., ¶ 12.)

Plaintiff, since the filing of this action, has asserted, alleged and contended that Exxon sold Esso gasoline for Puerto Rico. Information on *how* Exxon sold and supplied gasoline to Esso was not disclosed by Exxon or Esso in any of their written discovery responses to Plaintiff's interrogatories on supply issues. Only on May 30, 2013, did Esso's production include a document that explained the three-party sale/purchase/exchange arrangement by which Exxon sold gasoline to Esso. Exxon then delivered that sold gasoline to Phillips Petroleum in

9

the States, in exchange for Phillips' allowing Esso to retrieve equal volumes in Puerto Rico at the CORE refinery. Another agreement exists. It is referenced in the lone contract that was produced, but no defendant has ever produced it.

Plaintiff could not have made it plainer that it intended to prove that Exxon sold Esso MTBE gasoline for Puerto Rico. It did so by its pleadings, pointed written discovery requests seeking supply and exchange agreements on July 1, 2011, repeated depositions on supply, by deficiency letter, and by its responses to contention interrogatories. Exxon's cry of surprise borders on the absurd. The 1982 contract memorializing the three-party arrangement, which Exxon never produced, carries *Exxon's* bates stamp.

What Exxon wants stricken is proof of a disputed *fact*, that Exxon supplied MTBE gasoline to Puerto Rico, and was Esso's sole supplier (through exchange with the CORE refinery) for a decade. Plaintiff, in opposition to the motion for summary judgment on lack of causation by Exxon and other defendants, should be allowed to use the same information already relied upon by Exxon and Esso's experts. This contract between Exxon and Esso was included in their joint experts' reliance materials. (*See* Miller Dec., ¶ 13, Ex. 11.)

## II. PLAINTIFF PUT DEFENDANTS ON NOTICE OF ITS INTENT TO USE EVIDENCE OF EXXON'S SUPPLYING ESSO BY EXCHANGE WITH CORE.

Plaintiff's discovery requests in 2011 required disclosure and production of all supply and exchange agreements. Esso did not produce the "SALES/PURCHASE CONTRACT" (by which Exxon would supply Esso with nearly all the gasoline for Esso stations for a ten-year period) **until May 30, 2013**. (*See* Miller Dec., ¶ 3, Ex. 1, Request No. 32.) No other defendant, including Exxon, a party to that agreement, produced this contract.

Less than three months after the contract came to light, Plaintiff attempted to explore the arrangement described in the document at the deposition of a Conoco Phillips 30(b)(6) witness,

10

Mr. Marin-Diaz.  Specifically, the witness was questioned about an email between two Chevron employees dated September 20, 2000, that described gasoline "swaps" between Exxon and CORE.  (*See* Miller Dec., ¶ 7, Ex. 5, p. 2 and p. 5-6 [Depo Ex. 42].)  The witness acknowledged the existence of an exchange agreement between Exxon and CORE, but did not know when the exchanges were made.  (*See* Miller Dec., ¶ 7, Ex. 5, p.2.)  When Plaintiff's counsel, on the record, asked counsel for Conoco Phillips, Mr. Dillard, about the agreement, Mr. Dillard responded , "We can't find it."  (*See* Miller Dec., ¶ 7, Ex. 5 at p.3.)

Plaintiff again attempted to obtain more information about the sale/purchase/exchange arrangement between Exxon, Esso and CORE at the October 22, 2013, deposition of Paul Goldberg, Exxon's 30(b)(6) designee.  The "SALES/PURCHASE CONTRACT" was made Exhibit 21 to that deposition.  However, when the deponent was asked about the agreement, Exxon's counsel informed Plaintiff's counsel, Mr. Miller, that a different 30(b)(6) designee, Mr. Arturo Hernandez, would be testifying on that issue. (*See* Miller Dec., ¶ 8, Ex. 6 at p.3.)  However, when Plaintiff took the deposition of that designee on December 13, 2013, Mr. Hernandez was not prepared, answering "I don't recall" numerous times.  The deponent's counsel, Mr. Bollar, did not facilitate inquiry into supply issues and objected to many questions on supply issues as being "outside the scope," even though at Mr. Goldberg's deposition, Mr. Bollar's colleague, Mr. Stack, had promised Mr. Hernandez would be prepared.

At three depositions of  30 (b)(6) witnesses, Plaintiff's  attempts to gather additional information and facts about Exxon's supply arrangements to Esso involving the CORE refinery were unsuccessful.  Defendants, including Exxon, were certainly on notice of Plaintiff's interest in the three-party supply arrangement, and of Plaintiff's right to use the evidence in precisely the manner that Plaintiff <u>did use the evidence </u>- to establish that Exxon supplied gasoline to Esso

11

through an exchange agreement with Phillips that provided Esso with the right to retrieve equal volumes of gasoline at CORE.

### III. PLAINTIFF'S RESPONSES TO CONTENTION INTERROGATORIES WERE SUFFICIENTLY EXPLICIT, AND THE INFORMATION CONCERNING EXXON'S EXCHANGE WAS MADE KNOWN TO ALL DEFENDANTS DURING THE DISCOVERY PROCESS.

Federal Rule of Civil Procedure 26 (e) provides that a party who has responded to an interrogatory:

"[M]ust supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ."
Fed. R.Civ. P. 26(e)(1)(A).

Neither Esso nor Exxon complied with the spirit of this provision, yet they now accuse Plaintiff of playing "hide the ball." Plaintiff, despite being hampered by the very late production of evidence of Exxon's supply arrangement with Esso, and by the nonproduction of another key agreement (referenced in the "SALES/PURCHASE CONTRACT"), identified the information it did have, and the sources for that information.

In its March 14, 2014, Supplemental Responses to Defendants' First Set of Contention Interrogatories and Requests for Production of documents, Plaintiff identified Exxon as responsible for damages at both Esso trial sites. (*See* Miller Dec., ¶ 10, Ex. 8.) When asked for facts and documents establishing liability of defendants, Plaintiff listed specific depositions "and exhibits thereto." (*Id.*) These included: 1) Hector Marin deposition (Exhibit 42 to which is the email that discusses the sale/purchase/exchange agreement between Exxon, Esso and CORE; 2) Paul Goldberg deposition (Exhibit 21 being the actual agreement between Exxon and Esso); and 3) Arturo Hernandez deposition .

These interrogatory responses, which are rife with references to gasoline exchanges, taken with the three depositions where this issue was raised, the deficiency letter, and the charging allegations of the Third Amended Complaint, were more than adequate to apprise defendants of Plaintiff's intent to use all available evidence of Exxon's gasoline sales to Esso, including supply and exchange arrangements. Exxon in particular was on notice where, at two different depositions of its 30(b)(6) witnesses, Plaintiff attempted to explore the arrangement, and made the sole supply agreement produced in discovery an exhibit to Mr. Goldberg's deposition. (*See* Miller Dec., ¶ 8, Ex. 6, Depo Ex. 21.)

Exxon's motion seeks to strike its own contract with Esso. Exxon cannot argue in good faith that the evidence now offered by Plaintiff on a disputed fact was not known to it, or that Exxon was "sandbagged" by Plaintiff's contention that Exxon sold gasoline to Esso: the contract, signed by Exxon and Esso, is entitled "SALE/PURCHASE CONTRACT."

## IV.   IF PLAINTIFF'S RESPONSES TO INTERROGATORIES ARE INCOMPLETE IN ANY WAY, IT IS DUE TO EXXON'S FAILURE TO DISCLOSE IN DISCOVERY ITS SUPPLY ARRANGEMENTS WITH ESSO.

Even if the Court were to determine that Plaintiff's responses were somehow inadequate under Rule 26(e) (they are not), any such deficiency would not warrant preclusion of the omitted information if "the failure was substantially justified or is harmless." Fed R.Civ. P. 37(c)(1).

In 2011, Plaintiff sought out, with precisely-worded discovery, all supply and exchange agreements. (*See* Miller Dec., ¶ 3, Ex. 1, Request No. 32.) Exxon <u>never</u> produced during discovery any documents or information concerning the three-party sale/purchase/exchange agreements whereby Exxon supplied nearly all of the gasoline for Esso's Puerto Rico operations for ten years. *Esso* produced a single agreement, but only on May 30, 2013. Exxon <u>never</u> made available any 30(b)(6) witness that could/would answer questions about this arrangement. (*See*

Miller Dec., ¶¶ 8-9, Exs. 6-7.) Only after fact discovery closed, and expert reports were exchanged, did Plaintiff learn that Exxon, through these exchange agreements with CORE, supplied close to 100% of Esso's gasoline needs for about ten years.

If Plaintiff failed to include in its interrogatory responses information regarding the scale and scope of these exchanges, it was due to Exxon's disturbing discovery omissions and repeated failures–still—to produce any documents regarding these supply arrangements developed by Exxon itself over thirty years ago.

## V.   ANY OMISSION IS HARMLESS SINCE EXXON AND ESSO WERE PARTIES TO THE 1982 SALES/PURCHASE CONTRACT, HAD AMPLE NOTICE DURING DISCOVERY AND PROVIDED THEIR EXPERTS WITH THE EVIDENCE EXXON NOW WANTS STRICKEN.

A party seeking to exclude evidence based upon failure to comply with Rule 26(e) bears the burden of establishing that the alleged failure resulted in harm or prejudice to the moving party. Fed.R.Civ.P. 37(c)(1). Exxon's motion makes no such showing.

Exxon cannot show prejudice here because the specifics of Exxon's arrangements with Esso, which Plaintiff supposedly omitted in its responses to contention interrogatories, ***were already known to Exxon, a party to the agreement.*** Plaintiff disclosed the information, and its intent to use it, to all defendants during the discovery process by tackling the issue at three separate depositions. Exxon/Esso's shared experts relied on the information in preparing expert reports and opinions, having expressly included the agreement in their reliance materials. (*See* Miller Dec., ¶ 13, Ex. 11.) Plaintiff first learned through Exxon/Esso's expert report, on April 14, 2014, long after the close of fact discovery, that Exxon supplied very nearly all of Esso's gasoline for Puerto Rico through these exchange agreements with CORE from 1982 through 1992.

Exxon and Esso should not be rewarded for their late production of key evidence by granting their meritless motion to strike "new theories." The evidence Exxon seeks to strike shows *how* Exxon supplied Esso for at least a decade with all the gasoline it needed

## CONCLUSION

For the reasons given above, Exxon's motion to strike should be denied in its entirety.

DATED: December 12, 2014              Respectfully submitted,

                                      By: _____
                                      DUANE C. MILLER
                                      MILLER & AXLINE, P.C.
                                      1050 Fulton Ave., Ste. 100
                                      Sacramento, CA 95825
                                      (916) 488-6688
                                      Counsel for the Commonwealth

**PROOF OF SERVICE VIA LEXISNEXIS FILE & SERVE**

*Commonwealth of Puerto Rico, et al. v. Shell Oil Co., et al.*, United States District Court, Southern District of New York Case No. No. 07 Civ. 10470 (SAS)

    I, the undersigned, declare that I am, and was at the time of service of the paper(s) herein referred to, over the age of 18 years and not a party to this action. My business address is 1050 Fulton Avenue, Suite 100, Sacramento, CA 95825-4225.

    On the date below, I served the following document on all counsel in this action electronically through LexisNexis File & Serve:

**MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION TO EXXON MOBIL CORPORATION'S MOTION TO STRIKE PLAINTIFF'S EVIDENCE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR LACK OF CAUSATION**

    I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

    Executed on December 12, 2014, at Sacramento, California.

_____
KATHY HERRON