**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation ) ) ) ) ) **This document relates to the following case:** ) *Commonwealth of Pennsylvania v. Exxon Mobil* ) *Corp., et al.* ) Case No. 1:14-cv-06228 ) ) ) ) ) | DECLARATION OF VINCENT DE LAURENTIS  MDL No. 1358 Master File C.A. No. 1:00-1898 (SAS) |

I, Vincent De Laurentis, am a citizen of the United States of America and a resident of the State of New York. I have attained the age of 18 and make the declaration set forth below in support of LUKOIL Americas Corporation's Motion to Dismiss for Lack of Personal Jurisdiction. The statements in this declaration are based on my personal knowledge and experience unless specifically noted otherwise.

**Background**

1.  I am an officer and former director of LUKOIL Americas Corporation ("LAC"), 505 Fifth Avenue, New York, New York 10017, which is named as a defendant in the above-referenced litigation.

2.  My personal residence is at 9 Ring Neck Ridge, Lloyd Harbor, New York, 11743.

3.  In 1972, I received a Bachelor of Science degree in management marketing science from St. Joseph's University, Philadelphia, Pennsylvania.

4.  Since graduating from college, I have worked virtually my entire professional career in the business of marketing and distributing petroleum products through outlets at the wholesale and retail level, including franchisee service stations and convenience stores.

5. In 1972, I began my career with the Atlantic Richfield Company and worked for that company until 1985, when it announced plans to divest itself of operations east of the Mississippi River and to focus exclusively on its operations in the western United States. I decided to remain in the eastern United States and therefore left Atlantic Richfield Company, taking a marketing manager position with Atlantic Refining & Marketing Corp., which was based in Philadelphia, Pennsylvania.

6. I was employed by Atlantic Refining until 1988, when it was purchased by Sunoco, also headquartered in Philadelphia. I remained at the company under Sunoco's ownership.

7. I was employed by Sunoco until 1996, when I left the petroleum marketing and distribution business for one year to take a position with a company named Safeguard Scientific, which was in the business of funding and managing internet start-up enterprises.

**Getty Petroleum Marketing Inc.**

8. In August 1997, I returned to the petroleum marketing and distribution business, joining Getty Petroleum Marketing Inc. ("GPMI"). My initial title at GPMI was President. In June 1998, my title changed to President and Chief Operating Officer. I continued to hold those titles until February 2011, when GPMI's stock was acquired by Cambridge Petroleum Holding Inc.

9. When I joined GPMI, it was a recent spin-off from Getty Petroleum Corporation; GPMI was incorporated under the laws of the State of Maryland in October 1996.

10. Getty Petroleum Corporation had transferred all of its retail and wholesale petroleum marketing and distribution business (retail service stations, terminals, and other operating assets) to the newly created GPMI and retained for itself the real estate holdings

2

associated with that business. Consistent with its decision to focus exclusively on real estate management, Getty Petroleum Corporation changed its name to Getty Realty Corporation. Getty Realty entered into a 15-year master lease with GPMI that covered the properties on which GPMI's terminals and service stations were located.

11.     As a result of the spin-off, GPMI became a free-standing, publicly traded company with a network of service stations and related assets in the mid-Atlantic and northeastern United States. GPMI was listed on the New York Stock Exchange under the symbol GPM.

### LUKOIL Americas Corporation's Acquisition of GPMI

12.     GPMI remained an independent publicly traded company until all of its stock was acquired by a special purpose vehicle owned by LAC.

13.     LAC has always been merely a holding company. It has officers and directors, but it has never had any non-officer employees.

14.     In the course of its regularly conducted activities, and as a regular practice of those activities, LAC keeps contemporaneous records of all transactions concerning its assets. Those records are made by persons with knowledge of the transactions. In some cases, the records are themselves effective legal instruments—that is, not simply records of what has happened, but legal documents with legal effect.

15.     My understanding of the acquisition, based on my personal knowledge and experience, is as follows. (I have reviewed LAC's records concerning its acquisition of GPMI, and refer to those records where relevant below.)

(a) LAC was incorporated under the laws of the State of Delaware in October 2000. A true and correct copy of LAC's Certificate of Incorporation is attached to this Declaration as Exhibit A.

(b) LAC created a special purpose vehicle solely for purposes of acquiring GPMI's stock: Mikecon Corp., which was a direct, wholly owned subsidiary of LAC. A true and correct copy of the Certificate of Merger between Mikecon Corp. and GPMI is attached to this Declaration as Exhibit B.

(c) LAC's Board of Directors regularly made decisions by unanimous consent rather than convening a meeting; doing so is a commonly conducted activity of the Board, as is creating and maintaining a record of actions taken by unanimous consent. Based on a record of Unanimous Consent in Lieu of Special Meeting of the Board of Directors of LAC, on October 27, 2000, the Board of LAC authorized the merger of Mikecon Corp. with and into GPMI, to be effectuated through a tender offer by Mikecon to purchase GPMI's stock. A true and correct copy of that record is attached to this Declaration as Exhibit C, and upon information and belief, the record was kept in the ordinary course of business. An excerpt of a true and correct copy of the Agreement and Plan of Merger, dated November 2, 2000, is attached to this Declaration as Exhibit D.

(d) Mikecon Corp. made the tender offer on November 9, 2000. An excerpt of a true and correct copy of the Offer to Purchase is attached to this Declaration as Exhibit E. Also attached to this Declaration, as Exhibit F, is a true and correct copy of an announcement of the Offer published in the Wall Street Journal.

(e) In December 2010, through the tender offer, Mikecon obtained control of GPMI. *See* LUKOIL Americas Corp., Information to Be Included in Statements Filed

Pursuant to Rule 13d-1(a) and Amendments Thereto Filed Pursuant to Rule 13d-2(a) (Amendment No. 2) (Form SC-13D/A) (December 11, 2000), *available at* https://www.sec.gov/Archives/edgar/data/1025742/000092153000000263/0000921530-00-000263-0001.txt.

(f) In January 2011, Mikecon was merged with and into GPMI, and the merger was certified to the Delaware Secretary of State (*see* Exhibit B). GPMI was named as the surviving corporation. A true and correct copy of the Articles of Merger is attached to this Declaration as Exhibit G.

(g) After the merger, LAC held GPMI as a wholly owned subsidiary, possessing all 20 million shares of GPMI's common stock. A true and correct copy of a Certificate of Common Stock Ownership is attached to this Declaration as Exhibit H.

(h) LAC and GPMI at all times remained separate entities.

(i) LAC acquired stock in GPMI only; LAC did not acquire any assets of GPMI.

(j) LAC did not agree to take on GPMI's liabilities.

16. After the merger of LAC's special purpose vehicle with GPMI, I served as a member of LAC's Board of Directors until 2012 and have held various officer positions.

**Relationship between LAC and GPMI**

17. Consistent with LAC's status as a holding company with no physical operations of any kind, LAC has not produced, sold, or distributed goods or products, nor has LAC contracted for another party to do such things on its behalf.

18. LAC has never had any physical presence in Pennsylvania. It has neither owned nor leased any real property or office space in the Commonwealth of Pennsylvania, and it has

never had a mailing address or a telephone listing in Pennsylvania.  It has never contracted for services to be rendered in the state of Pennsylvania.

19.     Instead, to the extent that LAC engages in activities (*i.e.*, holding stock, facilitating financing for its subsidiaries), it does so exclusively from its principal place of business in New York.

20.     LAC has never tested, designed, manufactured, formulated, refined, set specifications for, exchanged, promoted, stored, marketed, sold, distributed, supplied, or used methyl tertiary butyl ether ("MTBE") or gasoline (with or without MTBE) in the Commonwealth of Pennsylvania or anywhere else, nor has LAC ever contracted for another party to do any of these things on its behalf.

21.     Indeed, because LAC has never had any non-officer employees or conducted any physical operations of any kind, it would have been impossible for LAC to have tested, designed, manufactured, formulated, refined, set specifications for, exchanged, promoted, stored, marketed, sold, distributed,  supplied, or used MTBE or gasoline (with or without MTBE) in Pennsylvania or anywhere else.

22.     Likewise, LAC has never owned or operated an underground storage tank or associated dispensing equipment; participated in Pennsylvania's Underground Storage Tank Indemnification Fund; or filed any claim to or sought any compensation from that Fund.

23.     By contrast to LAC, GPMI was an operating company with substantial physical assets and numerous employees.  When I started with GPMI in 1997, it was selling and distributing gasoline that may have contained the chemical additive MTBE, depending upon the source of the fuel.  The additive was used by refiners to meet the federal oxygenate requirement for reformulated gasoline established by the Environmental Protection Agency.  My

understanding is that Section 1504 of the Energy Policy Act of 2005 (P.L. 10958) eliminated the oxygen content requirement for reformulated gasoline effective no later than May 6, 2006.

24.     When LAC acquired GPMI's stock in 2001, GPMI had already been operating as an independent publicly traded company for several years.  LAC's acquisition of GPMI's stock did not result in any material change to the way in which GPMI operated its business; LAC did not make or influence GPMI's day-to-day operating decisions.  Many members of the GPMI management team and its operating personnel remained with the company, and the company continued to be run in accord with its historical policies and practices.

25.     Moreover, operational decisions were made at the operating company level.  Thus, decisions such as whether or not to sell or distribute (or market, etc.) MTBE or gasoline containing MTBE were made by GPMI, not its shareholder LAC.  GPMI's policy concerning the use of MTBE had been set before LAC acquired the company.  After the acquisition, LAC did not affect (or attempt to affect) GPMI's decisions concerning when, if ever, to use MTBE.

26.     GPMI continued to be a wholly owned subsidiary of LAC until February 28, 2011.  At that time, following a competitive bidding process in which several companies participated, LAC sold 100 percent of GPMI's stock to an unrelated third party named Cambridge Petroleum Holding Inc.  Thus, after February 2011, no LUKOIL entity had any financial interest in GPMI.

27.     During the time that LAC held GPMI's stock, the two companies observed all corporate formalities.  For example, the companies had separate bank accounts, separate corporate records, separate letterhead, and to the extent there were any shared officer(s), the shared officer(s) exercised particular care to make clear in external communications which company such officer was speaking for.

28. LAC has never represented itself as being GPMI and has never done business under the GPMI name. Nor has LAC ever been known as GPMI.

I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge, the foregoing is true and correct.

By: _____
Vincent De Laurentis

Date: __Dec. 23, 2014__