# Exhibit D

Excerpt: Agreement and Plan of Merger
(November 2, 2000)

**AGREEMENT AND PLAN OF MERGER**

**DATED AS OF NOVEMBER 2, 2000**

**AMONG**

**OAO LUKOIL,**

**LUKOIL INTERNATIONAL GmbH,**

**LUKOIL AMERICAS CORPORATION,**

**MIKECON CORP.,**

**AND**

**GETTY PETROLEUM MARKETING INC.**

This AGREEMENT AND PLAN OF MERGER, dated as of November 2, 2000 (this "Agreement"), is by and among OAO LUKOIL, a Russian open joint stock company ("Parent"), LUKOIL International GmbH, an Austrian corporation and a direct, wholly owned subsidiary of Parent ("LUKOIL Austria"), LUKOIL Americas Corporation, a Delaware corporation and an indirect, wholly owned subsidiary of Parent ("LUKOIL Americas"), Mikecon Corp., a Delaware corporation and a direct, wholly owned subsidiary of LUKOIL Americas ("Merger Sub" and, together with Parent, LUKOIL Austria and LUKOIL Americas, the "LUKOIL Entities"), and Getty Petroleum Marketing Inc., a Maryland corporation (the "Company").

## WITNESSETH:

WHEREAS, the respective Boards of Directors of the LUKOIL Entities and the Company have each approved the acquisition of the Company by LUKOIL Americas upon the terms and subject to the conditions of this Agreement;

WHEREAS, in furtherance of such acquisition, LUKOIL Americas proposes to cause Merger Sub to commence a tender offer (as it may be amended from time to time as permitted under this Agreement, the "Offer") to purchase all of the issued and outstanding shares of the common stock, par value $0.01 per share, of the Company ("Company Common Stock") at a price per share of Company Common Stock of $5.00 net to the seller in cash (such price, as it may be increased in accordance with the terms of this Agreement, the "Price Per Share") upon the terms and conditions set forth in this Agreement, including Annex A hereto;

WHEREAS, in order to complete such acquisition, the respective Boards of Directors of LUKOIL Americas, Merger Sub and the Company have approved the merger of Merger Sub with and into the Company (the "Merger"), upon the terms and subject to the conditions of this Agreement and in accordance with the Maryland General Corporation Law (the "MGCL") and the Delaware General Corporation Law ("DGCL"), whereby each issued and outstanding share of Company Common Stock not owned directly or indirectly by the LUKOIL Entities, the Company or any of their Subsidiaries will be converted into the right to receive the Price Per Share in cash;

WHEREAS, the Board of Directors of the Company (the "Company Board") has (a) determined that each of this Agreement, the Offer and the Merger are fair to and in the best interests of the Company's stockholders, (b) approved this Agreement and the transactions contemplated hereby, including the Offer and the Merger, and (c) declared the advisability of this Agreement and resolved to recommend that the Company's stockholders accept the Offer, tender their shares of Company Common Stock thereunder and approve this Agreement and the Merger;

WHEREAS, the LUKOIL Entities and the Company desire to make certain representations, warranties, covenants and agreements in connection with the Offer and the Merger and also to prescribe various conditions to the Offer and the Merger; and

NOW, THEREFORE, in consideration of the foregoing and the respective representations, warranties, covenants and agreements set forth herein, and intending to be legally bound hereby, the parties hereto agree as follows:

## ARTICLE I.
## THE TENDER OFFER

**1.1  The Offer.**

(a)  Provided that this Agreement shall not have been terminated in accordance with Article VII and subject to the conditions of this Agreement, then (i) not later than the first Business Day after execution of this Agreement, LUKOIL Americas and the Company shall issue mutually acceptable public announcements regarding the execution of this Agreement and file such announcement with the Securities and Exchange Commission (the "SEC") under cover of Schedule TO and (ii) Merger Sub shall, and LUKOIL Americas shall cause Merger Sub to, as soon as practicable, but in no event later than seven Business Days from and after the date of such announcement, including the date of announcement as the first Business Day in accordance with Rule 14d-2 under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), commence (within the meaning of Rule 14d-2(a) of the Exchange Act) the Offer to purchase all of the outstanding shares of Company Common Stock (other than as otherwise provided in this Agreement) at the Price Per Share. The initial expiration date of the Offer shall be the twentieth Business Day from and after the date the Offer is commenced, including the date of commencement as the first Business Day in accordance with Rule 14d-2 under the Exchange Act subject to extension as provided herein. The Offer shall be made pursuant to an Offer to Purchase and related Letter of Transmittal in form reasonably satisfactory to the Company and containing terms and conditions consistent with this Agreement. The obligation of Merger Sub to accept for payment and pay for shares of Company Common Stock tendered pursuant to the Offer in accordance with the terms of this Agreement shall be subject only to (x) there being at least that number of shares of Company Common Stock representing a majority of the total issued and outstanding shares of Company Common Stock on a fully diluted basis (the "Minimum Shares") validly tendered and not withdrawn prior to the expiration of the Offer (the "Minimum Condition") and (y) the satisfaction of the other conditions set forth in Annex A hereto, any of which conditions may be waived by Merger Sub in its sole discretion; provided, however, that Merger Sub shall not waive the Minimum Condition without the prior written consent of the Company. Each party agrees that no shares of Company Common Stock held by it or any of its Subsidiaries will be tendered to Merger Sub pursuant to the Offer.

(b)  Merger Sub expressly reserves the right to modify the terms of the Offer, except that, without the prior written consent of the Company, Merger Sub will not (i) decrease the Price Per Share payable in the Offer, (ii) decrease the number of shares of Company Common Stock sought pursuant to the Offer or change the form of consideration payable in the Offer, (iii) change or amend the conditions to the Offer set forth in Annex A hereto or impose additional conditions to the Offer, (iv) change the expiration date of the Offer or (v) otherwise amend or add any term or condition of the Offer in any manner adverse in any material respect to the holders of shares of Company Common Stock; provided, however, that if on any scheduled expiration date of the Offer all conditions to the Offer have not been satisfied or waived, Merger

2

Sub may, and upon the request of the Company the Merger Sub shall, from time to time extend the expiration date of the Offer for up to 10 additional Business Days for each such extension (but in no event shall Merger Sub extend the expiration date of the Offer beyond January 25, 2001); and provided, further, that Merger Sub may (x) extend the Offer for any period required by any rule, regulation, interpretation or position of the SEC or staff thereof applicable to the Offer and (y) extend the Offer for any reason not permitted above; provided, however, that in no event shall an extension permitted under the foregoing clause (y) exceed, in the aggregate, 10 Business Days or extend the expiration date of the Offer beyond January 25, 2001, and, during any such extension pursuant to clause (y), Merger Sub shall waive all conditions of the Offer set forth in Annex A other than (1) the Minimum Condition and (2) the condition in paragraph (b) of Annex A solely to the extent Parent or Merger Sub would violate any statute, rule, regulation, judgment, order or injunction. Assuming the prior satisfaction or waiver of all the conditions to the Offer set forth in Annex A hereto, and subject to the terms and conditions of this Agreement, Merger Sub shall, and the LUKOIL Entities other than Merger Sub shall cause Merger Sub to, accept for payment and pay for, in accordance with the terms of the Offer, all shares of Company Common Stock validly tendered and not withdrawn pursuant to the Offer as soon as permitted under applicable law. The LUKOIL Entities shall provide, or cause to be provided, to Merger Sub, on a timely basis, the funds necessary to purchase any shares of Company Common Stock that Merger Sub becomes obligated to purchase pursuant to the Offer.

(c) Notwithstanding the foregoing provisions of this Section 1.1, LUKOIL Americas and Merger Sub shall have the right to elect to provide one or more subsequent offering periods of up to an additional twenty (20) Business Days in the aggregate pursuant to Rule 14d-11 of the Exchange Act.

(d) Merger Sub shall be permitted to assign to any direct or indirect wholly owned subsidiary of LUKOIL Americas formed under the laws of any state or commonwealth of the United States the right to make payment for and accept delivery of all, but not less than all, of the tendered and not properly withdrawn shares of Company Common Stock pursuant to the Offer. In the event of any such election, the parties agree to execute an appropriate amendment to this Agreement in order to reflect such election.

1.2  SEC Filings.

(a) As soon as reasonably practicable on the date the Offer is commenced, Merger Sub and LUKOIL Americas shall file with the SEC a Tender Offer Statement on Schedule TO (together with all amendments and supplements thereto, the "Schedule TO") with respect to the Offer. The Schedule TO will contain (including as an exhibit) or incorporate by reference the offer to purchase and forms of the related letter of transmittal (which documents, together with any supplements or amendments thereto, are referred to collectively herein as the "Offer Documents"), and shall also include the notice contemplated by Section 3-106(d)(1) of the MGCL, which shall be mailed to the holders of Company Common Stock with the Offer Documents. The LUKOIL Entities and the Company shall each provide promptly such information as is necessary to the preparation of the Schedule TO and the Offer Documents, including, without limitation, the exhibits and schedules thereto, which the respective party responsible therefor shall reasonably request. The Company and its outside legal counsel shall

3

be given a reasonable opportunity to review and comment upon the Offer Documents and any amendment or supplement thereto prior to the filing thereof with the SEC, and Merger Sub and LUKOIL Americas shall consider any such comments in good faith. Merger Sub and LUKOIL Americas shall provide to the Company and its outside legal counsel any comments which Merger Sub or LUKOIL Americas or their counsel may receive from the Staff of the SEC with respect to the Offer Documents promptly after receipt thereof and consult in good faith with the Company and its outside legal counsel with respect thereto. Merger Sub and LUKOIL Americas shall promptly correct the Schedule TO and the Offer Documents if and to the extent that they shall have become false or misleading in any material respect (and each of Parent, LUKOIL Austria and the Company, with respect to information supplied by it specifically for use in the Schedule TO or the Offer Documents, shall promptly notify Merger Sub and LUKOIL Americas of any required corrections of such information and shall cooperate with Merger Sub and LUKOIL Americas with respect to correcting such information) and to supplement the Schedule TO or the Offer Documents to include any information that shall become necessary in order to make the statements therein, in light of the circumstances under which they were made, not misleading, and to take all steps necessary to cause the Schedule TO, as so corrected or supplemented, to be filed with the SEC and the Offer Documents, as so corrected or supplemented, to be disseminated to holders of Company Common Stock, in each case to the extent required by applicable federal securities laws.

(b)   The Company shall file with the SEC a Solicitation/Recommendation Statement on Schedule 14D-9 (together with all amendments and supplements thereto, the "Schedule 14D-9") on the date that the LUKOIL Entities file the Schedule TO with the SEC pursuant to Section 1.2(a). The Schedule 14D-9 will contain the recommendation of the Company Board described in Section 5.1(a), subject to the right of the Company Board to withdraw or modify such recommendation in accordance with the terms of this Agreement. The Company hereby consents to the reference by LUKOIL Americas and Merger Sub to the Company Board's recommendation in the Schedule TO filed pursuant to Section 1.2(a). The LUKOIL Entities and the Company shall each provide promptly such information as is necessary to the preparation of the Schedule 14D-9, including, without limitation, the exhibits and schedules thereto, which the respective party responsible therefor shall reasonably request. Merger Sub, LUKOIL Americas and their outside legal counsel shall be given a reasonable opportunity to review and comment upon the Schedule 14D-9 and any amendment or supplement thereto prior to the filing thereof with the SEC, and the Company shall consider any such comments in good faith. The Company will cooperate with Merger Sub and LUKOIL Americas in mailing or otherwise disseminating the Schedule 14D-9 with the appropriate Offer Documents to the holders of Company Common Stock. The Company agrees to provide to Merger Sub, LUKOIL Americas and their outside legal counsel any comments which the Company or its counsel may receive from the Staff of the SEC with respect to the Schedule 14D-9 promptly after receipt thereof and consult in good faith with Merger Sub, LUKOIL Americas and their outside legal counsel with respect thereto. The Company agrees to promptly correct the Schedule 14D-9 if and to the extent that it shall have become false or misleading in any material respect (and the LUKOIL Entities, with respect to information supplied by them specifically for use in the Schedule 14D-9, shall promptly notify the Company of any required corrections of such information and shall cooperate with the Company with respect to correcting such information)

and to supplement the Schedule 14D-9 to include any information that shall become necessary in order to make the statements therein, in light of the circumstances under which they were made, not misleading, and to take all steps necessary to cause the Schedule 14D-9, as so corrected or supplemented, to be filed with the SEC and, as so corrected or supplemented, to be disseminated to holders of Company Common Stock, in each case to the extent required by applicable federal securities laws.

   1.3   **Company Action.**

   (a)   The Company hereby approves of and consents to the Offer and the Merger and represents, warrants and covenants to the LUKOIL Entities that (i) the Company Board (at a meeting duly called and held) has by the unanimous vote of all directors present and voting (A) determined that each of this Agreement, the Offer and the Merger are fair to and in the best interests of the Company's stockholders, (B) approved this Agreement and the transactions contemplated hereby, including the Offer and the Merger, and such approval is sufficient to render the restrictions on "business combinations" (as defined in Section 3-601 of the MGCL) set forth in Section 3-602 of the MGCL inapplicable to this Agreement and the transactions contemplated hereby, including the Offer and the Merger, (C) declared the advisability of this Agreement and resolved to recommend acceptance of the Offer and approval of the Merger by the holders of Company Common Stock and resolved to present the Merger to the stockholders of the Company if so required under the MGCL in order to complete the Merger, and (D) resolved to elect not to be subject to any "moratorium", "control share acquisition", "business combination", "fair price" or other form of anti-takeover laws and regulations of any jurisdiction that may purport to be applicable to this Agreement or the transactions contemplated hereby, (ii) the Company Board or any committee of the Company Board that administers any of the Company Equity Plans has resolved that the provisions of each Company Equity Plan that cause all Company Options thereunder to be cancelled and converted at the Effective Time shall be given full force and effect and shall not be waived, and the Company Board has further authorized and directed each of the executive officers of the Company to take all actions reasonably necessary or appropriate to ensure that, on and after the Effective Time, there will be no Company Options outstanding that may be exercised for shares of capital stock of the Surviving Corporation, which actions, if requested by LUKOIL Americas, shall include the giving of written notice to holders of Company Options that such Company Options will be cancelled and converted at the Effective Time, (iii) the by-laws of the Company contain provisions opting out of the Maryland Control Share Acquisition Act, and (iv) ING Barings LLC ("ING Barings") has delivered to the Company Board its written opinion dated November 2, 2000, to the effect that, based upon and subject to the matters set forth therein and as of the date thereof, the Merger Consideration to be received by the holders of shares of Company Common Stock pursuant to the Offer and the Merger is fair to such holders from a financial point of view. The Company has been advised that all of its directors and executive officers who own shares of Company Common Stock intend to tender their shares of Company Common Stock pursuant to the Offer.

   (b)   Promptly upon execution of this Agreement and in connection with the Offer, the Company shall furnish Merger Sub with such information (including a list of the stockholders of the Company, mailing labels and a list of securities positions, each as of a recent

5

date), and shall thereafter render such additional assistance as Merger Sub may reasonably request in communicating the Offer to the Company's stockholders (including updated lists of stockholders, mailing labels and lists of security positions).

### 1.4 Composition of the Company Board.

(a) Promptly upon the acceptance for payment of, and payment by Merger Sub in accordance with the Offer for, shares of Company Common Stock in accordance with the Offer, Merger Sub shall be entitled to designate such number of members of the Company Board, rounded up to the next whole number, equal to that number of directors which equals the product of the total number of directors on the Company Board (giving effect, if applicable, to (i) the number of newly created directorships if the size of the Company Board is increased pursuant to this Section 1.4(a) and (ii) the number of vacancies if the resignation of any directors is secured pursuant to this Section 1.4(a)) multiplied by the percentage of such number of shares of Company Common Stock then owned beneficially or of record in the aggregate by the LUKOIL Entities of the total issued and outstanding shares of Company Common Stock on a fully diluted basis; provided, however, that until the Effective Time there shall be at least two Continuing Directors serving as directors of the Company, and the LUKOIL Entities shall use their reasonable best efforts to ensure that at least two Continuing Directors serve as directors of the Company until the Effective Time. Upon the written request of Merger Sub, the Company shall, on the date of such request, either increase the size of the Company Board or use its reasonable best efforts to secure the resignations of such number of its incumbent directors as is necessary to enable Merger Sub's designees to be so elected or appointed to the Company Board. The Company Board shall take no action from the time that Merger Sub has accepted for payment shares of Company Common Stock in accordance with the Offer until the Company Board has been reconstituted in accordance with this Section 1.4(a), unless otherwise directed by the Merger Sub.

(b) The Company's obligations under this Section 1.4 shall be subject to Section 14(f) of the Exchange Act and Rule 14f-1 promulgated thereunder. The Company shall promptly take all actions required pursuant to Section 14(f) of the Exchange Act and Rule 14f-1 promulgated thereunder in order to fulfill its obligations under this Section 1.4, and shall include in the Schedule 14D-9 such information with respect to the Company and its officers and directors as is required under Section 14(f) of the Exchange Act and Rule 14f-1 promulgated thereunder. The LUKOIL Entities will supply to the Company in writing and be solely responsible for any information with respect to any of them and their nominees, officers, directors and affiliates as may be required by Section 14(f) of the Exchange Act and Rule 14f-1 promulgated thereunder and applicable rules and regulations.

(c) After the time that Merger Sub's designees constitute at least a majority of the Company Board and until the Effective Time, any (i) amendment or termination of this Agreement by the Company or (ii) action by the Company with respect to amendments to the Organizational Documents of the Company or this Agreement and the transactions contemplated hereby which in either case materially and adversely affects the interests of the stockholders of the Company, shall require, in addition to any other affirmative vote required under the MGCL, the affirmative vote of not less than a majority of, as determined by the Company Board, either

6

(1) the entire Company Board, which majority shall include the concurrence of all Continuing Directors or (2) to the extent permitted under the MGCL, a committee of the Company Board consisting of only Continuing Directors; provided, however, that if the foregoing provisions of this subsection (c) relating to the concurrence of a majority of Continuing Directors or approval by a committee consisting of Continuing Directors are invalid or incapable of being enforced under applicable law, then none of the LUKOIL Entities shall approve (either in its capacity as a stockholder or as a party to this Agreement, as applicable), and the LUKOIL Entities shall use their reasonable best efforts to prevent the occurrence of, any of the actions referred to in clauses (i) and (ii) above unless such actions shall have received the unanimous approval of the entire Company Board. For purposes of this Section 1.4, the term "Continuing Director" shall mean a director then serving, if any, who (x) as of the date hereof and as of the date of determination, is neither an employee or consultant of or holder of greater than a 1% beneficial interest in the Company or Getty Properties Corp. nor a director of Getty Properties Corp. ("Independent") and (y) is a director of the Company as of the date hereof. If there is more than one Continuing Director and prior to the Effective Time, the number of Continuing Directors is reduced for any reason, the remaining Continuing Director or Directors shall be entitled to designate persons who are Independent to fill such vacancies who shall be deemed Continuing Directors for purposes of this Agreement, and the Company, Merger Sub and LUKOIL Americas shall, upon such designation, cause such designee(s) to be so elected. In the event there is only one Continuing Director and he or she resigns or is removed or if all Continuing Directors resign or are removed, he, she or they, as applicable, shall be entitled to designate his, her or their successors who are Independent, as the case may be, each of whom shall be deemed a Continuing Director for purposes of this Agreement, and the Company, Merger Sub and LUKOIL Americas shall, upon such designation, cause such designee(s) to be so elected. In the event that there are no Continuing Directors able to continue to serve in such capacity due to death or mental incapacity, then a majority of the directors then remaining on the Company Board shall be entitled to designate their successors, each of whom shall be Independent and shall be deemed a Continuing Director for the purposes of this Agreement, and the Company, Merger Sub and LUKOIL Americas shall, upon such designation, cause such designees to be elected or appointed. The Company Board shall not delegate any matter set forth in this Section 1.4 to any committee of the Company Board unless such committee consists only of Continuing Directors.

## ARTICLE II.
## THE MERGER

### 2.1   The Merger.

Upon the terms and subject to the conditions set forth in this Agreement, and in accordance with the MGCL and the DGCL, as soon as practicable following completion of the Offer, Merger Sub shall be merged with and into the Company. Following the Merger, the separate corporate existence of Merger Sub shall cease, and the Company shall continue as the surviving corporation (the "Surviving Corporation"). At LUKOIL Americas's election, any direct or indirect domestic subsidiary of LUKOIL Americas other than Merger Sub may be merged with and into the Company instead of the Merger Sub. In the event of such an election, the parties agree to execute an appropriate amendment to this Agreement in order to reflect such election.