

Boston  Brussels  Chicago  Düsseldorf  Frankfurt  Houston  London  Los Angeles  Miami
Milan  Munich  New York  Orange County  Paris  Rome  Seoul  Silicon Valley  Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Peter John Sacripanti
Chairman
psacripanti@mwe.com
+1 212 547 5583

BY HAND DELIVERY AND ELECTRONIC MAIL                    January 12, 2015

The Honorable Shira A. Scheindlin
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1620
New York, New York  10007-1312

      Re:    Master File C.A. No. 1:00-1898 (SAS), M21-88, MDL No. 1358
               *Defendants' Pre-Conference Reply Letter for January 15, 2015 Conference*

Dear Judge Scheindlin:

Defendants respectfully submit this letter in advance of the January 15, 2015 conference.

## COURT'S AGENDA ITEMS

### Item 4. *Pennsylvania*: Overview of Issues and Arguments Presented in the Pending Motions

The Pennsylvania motions will not be fully briefed until March 20, 2015. However, Defendants very briefly address Plaintiffs' preconference letter below, and will be prepared to discuss these issue with the Court on Thursday.[1]

*A. The MTBE Defendants' Motion to Dismiss*

(i) *Public Nuisance* – Plaintiffs argue that a public nuisance claim may lie based on a defendants' manufacture or distribution of a product, absent control over the product at the time the nuisance occurs.  Plaintiffs' reliance on this Court's 2001 opinion ignores several more recent opinions of the Court finding just the opposite, as well as an opinion of the Third Circuit.[2] Plaintiffs' efforts to distinguish *Beretta* also are unavailing – for reasons too numerous to address in a preconference letter – but perhaps most notable is the Eastern District of Pennsylvania's

---

[1] Defendants respectfully request a short extension of the page limit to address these issues.

[2] A primary case on which Defendants rely was affirmed by the Third Circuit.  *City of Philadelphia v. Beretta*, 277 F.3d 415, 422 (3d Cir. 2002) (affirming dismissal where "gun manufacturers [did] not exercise significant control over the source of the interference with the public right").  Moreover, as the quoted language from the Third Circuit demonstrates, Plaintiffs are incorrect that "*Beretta* did not involve *any* public right[.]" *Pls.' Ltr.*, at 3 (emphasis in original).

U.S. practice conducted through McDermott Will & Emery LLP.

**340 Madison Avenue New York New York 10173-1922  Telephone: +1 212 547 5400  Facsimile: +1 212 547 5444    www.mwe.com**

The Honorable Shira A. Scheindlin
January 12, 2015
Page 2

recognition that no Pennsylvania court has expanded public nuisance law to impose liability on a party lacking control of the nuisance or so remotely connected as the refining/supplier defendants here.

  (ii) *Trespass* – Plaintiffs do not contest, and in effect re-emphasize, that exclusive possession is a prerequisite to the assertion of a trespass claim. Further, in Pennsylvania, private landowners are entitled to use groundwater themselves and can assert claims for trespass based on alleged injury to groundwater. Thus, even though Plaintiffs claim they are trustees for groundwater resources, they are not in exclusive possession of the groundwater and cannot assert a trespass claim.

  (iii) *UTPCPL* – Plaintiffs' blanket UTPCPL allegations about what a diverse group of over thirty Defendants allegedly knew and did are precisely the kind of "group pleading" that this Court and others have held is impermissible under Rule 8(a). *Targum v. Citrin Cooperman & Co.*, 2013 WL 6087400, *1 & n.20, *6 & n.99 (S.D.N.Y. 2013) (citations omitted). The Amended Complaint lacks specificity. Plaintiffs simply parrot the UTPCPL's elements and claim that these were violated by Defendants when they "disseminated, marketed, advertised and otherwise distributed information" to, among others, "gasoline refiners, distributors [and] retailers," (Am. Compl. ¶ 292(a)) – despite the fact that many of the Defendants *are* gasoline refiners, distributors and retailers. Given that Plaintiffs seek civil penalties, group pleading is particularly egregious.

  Likewise, three of the four UTPCPL sections under which Plaintiffs filed suit prohibit *false advertising*. Plaintiffs' suggestion that they are exempt from *Twombly's* and *Iqbal's* pleading requirements because the supposed evidence of Defendants' wrongdoing is solely in the hands of Defendants makes no sense. False advertising requires *publicly-made* misrepresentations of fact by a defendant regarding its product. *Comm. v. Hush-Tone Indus., Inc.*, 4 Pa. Commw. 1, 21 (1971). Plaintiffs do not identify a single false advertisement, so their claims under UTPCPL §§ 201-2(4)(v), (vii) and (ix) should be dismissed.

  Lastly, in seeking "restoration," Plaintiffs ignore the Pennsylvania Supreme Court's recent holding that "political subdivision agencies" are not "persons" under the UTPCPL because there is no evidence "to suggest, in enacting the UTPCPL, the General Assembly was concerned with and, thus, sought to eliminate unfair trade practices in the public sphere." *Meyer v. Beaver County Cmty. Coll.*, 93 A.3d 806, 814 (Pa. 2014). The decision Plaintiffs cite to support a restoration claim, *Comm. v. TAP Pharm. Prods., Inc.*, 36 A.3d 1112 (Pa. Comm. Ct. 2011), was vacated and remanded by the Supreme Court the same day it decided *Meyer*, with the Supreme Court stating that "many issues of concern have been raised about the Commonwealth's approach to this litigation and the judgment it obtained…." 94 A.3d 350, 352 (Pa. 2014).

B. <u>The Insurance Defendants' Motion to Sever and for Suggestion of Remand</u>

  Plaintiffs' only response to Defendants' motion to sever the Insurance Claims from MDL 1358, and for the Court to suggest remand to the Eastern District of Pennsylvania, is to point out that the Insurance Lawsuit was removed under the Energy Policy Act, which provides that "[c]laims and legal actions … related to allegations involving actual or threatened contamination of [MTBE] may

The Honorable Shira A. Scheindlin
January 12, 2015
Page 3

be removed to the appropriate United States district court." 42 U.S.C. § 7545 note. Under the removal statute, legal actions need only *relate to* allegations of MTBE contamination for removal to be proper, which is a very different inquiry from whether a claim falls within the narrow scope of the questions certified for centralization in this MDL proceeding. Transfer Order, *In re MTBE Products Liab. Litig.* (JPML Oct. 10, 2000) ("whether defendants knew about and misrepresented the nature of MTBE and conspired to market MTBE without disclosing its risks to downstream users, the federal government, or the public," or "whether plaintiffs sustained drinking water contamination as a result of MTBE contamination"). The Insurance Claims, which focus on reimbursement of remediation costs – and specifically whether those costs were covered by insurance – implicate neither of the common questions that define MDL 1358. Thus, while they are removable under 42 U.S.C. § 7545, because they "relate to" reimbursements addressing MTBE contamination, they do *not* belong in the same lawsuit as Plaintiffs' MTBE Claims—and certainly not in MDL 1358.

C. <u>The Insurance Defendants' Motion to Dismiss</u>

Plaintiffs assert that Defendants had a duty to disclose certain insurance policies, and that Defendants' argument to the contrary conflicts with Pennsylvania case law. But the case Plaintiffs quote proves Defendants' point. Indeed, Defendants quoted in their brief that very language from *Gnagey Gas & Oil Co. v. Pennsylvania Underground Storage Tank Indemnification Fund*, 82 A.3d 485, 504 (Pa. Commw. Ct. 2013). *Gnagey* makes clear that a USTIF applicant must disclose information in response to a "request" by the Fund. Nowhere in the Amended Complaint, however, do Plaintiffs allege that USTIF made any request to any Defendant that would have evoked a duty to disclose the allegedly withheld insurance information. The passage Plaintiffs quote from *Gnagey* in fact bolsters the necessary conclusion that Plaintiffs have not alleged any violation of a statutory or regulatory duty, and Count IX fails to state a claim.

Plaintiffs' arguments regarding Defendants' motion to dismiss the subrogation and unjust enrichment claims are not responsive. Whether styled as a common law or statutory subrogation claim, Count VII does not allege the necessary elements of subrogation. And while Defendants agree that Pennsylvania "recognizes unjust enrichment as an equitable doctrine," settled principles of Pennsylvania law establish that equitable relief is unavailable as a matter of law where statutory standards for recovery have been set by the legislature, as is the case here.

D. <u>LUKOIL Americas Corporation's Motion to Dismiss</u>

In an effort to overcome the complaint's failure to make a *prima facie* case for the exercise of personal jurisdiction over LUKOIL Americas Corporation ("LAC"), Pennsylvania seeks to conduct discovery on matters irrelevant to LAC's motion. Pennsylvania begins by misstating the facts of a recently settled bankruptcy claim (with no admission of wrongdoing), asserting that former LAC subsidiary Getty Petroleum Marketing Inc. ("GPMI") accused LAC of fraudulently transferring "all of GPMI's assets … for minimal value." *Pls.' Preconf. Ltr.* at 2. But the actual allegation was that, in a November 2009 corporate restructuring, GPMI did not receive fair consideration when it sold a

The Honorable Shira A. Scheindlin
January 12, 2015
Page 4

portion of its assets (less than half of its service stations) to a sibling corporation for $120 million.[3] Moreover, LAC's alleged involvement in a 2009 corporate reorganization has no bearing on whether it may be held liable for GPMI's alleged use of MTBE from 2001 to 2006—the period spanning LAC's acquisition of GPMI's stock and the discontinuance of MTBE use.

Pennsylvania also asserts that "Lukoil" (defined as LAC) "has been charged with fraudulent conduct in a RICO action filed in Colorado." *Pls.' Preconf. Ltr.* at 2. But in that case a private plaintiff accused LAC's *ultimate parent* (OAO LUKOIL in Moscow, not LAC) of wrongdoing, and lost in both state and federal court. *See Archangel Diamond Corp. Liquidating Trust v. OAO Lukoil*, No. 12-CV-00041, 2014 WL 7232341 (D. Colo. Dec. 18, 2014); *Archangel Diamond Corp. Liquidating Trust v. OAO Lukoil et al.*, No. 11CA2452 (Colo. App. Aug. 23, 2012). Allegations made in unrelated and unsuccessful litigation against a different entity provide no basis for subjecting LAC to broad and expensive discovery.

Pennsylvania should not be permitted to engage in unchecked jurisdictional discovery based on the January 7 letter's misleading and irrelevant assertions. LAC respectfully requests an opportunity to be heard through briefing on whether Pennsylvania can present an adequate factual and legal basis for jurisdictional discovery and, if so, the proper scope of such discovery.

Respectfully submitted,

*Peter John Sacripanti*

Peter John Sacripanti

cc:  All Counsel of Record by LNFS, Service on Plaintiffs' Liaison Counsel

---

[3] LAC is not aware of any basis for Pennsylvania's false suggestion that assets were transferred "to avoid environmental liabilities." *Pls.' Preconf. Ltr.* at 2.