**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------- X
                                             :

**IN RE: METHYL TERTIARY BUTYL**    :
**ETHER ("MTBE") PRODUCTS**    :
**LIABILITY LITIGATION**    :
-------------------------------------------------- :
                                             :

**This document relates to:**    :
                                             :

*Commonwealth of Puerto Rico v.*    :
*Shell Oil Co., et al.*, 07 Civ. 10470    :
                                             :
-------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/2/15

**OPINION AND ORDER**

**Master File No. 1:00-1898**
**MDL 1358 (SAS)**
**M21-88**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

**I.     INTRODUCTION**

      This is a consolidated multi-district litigation ("MDL") relating to

contamination — actual or threatened — of groundwater from various defendants'

use of the gasoline additive methyl tertiary butyl ether ("MTBE") and/or tertiary

butyl alcohol, a product formed by the breakdown of MTBE in water.  In this case,

the Commonwealth of Puerto Rico ("the Commonwealth") alleges that defendants'

use and handling of MTBE has contaminated, or threatened to contaminate

groundwater within its jurisdiction.  Familiarity with the underlying facts is

presumed for the purposes of this Opinion.

      Currently before the Court is a motion for partial summary judgment

brought by certain defendants[1] pursuant to Rule 56 of the Federal Rules of Civil Procedure, on claims brought by the Commonwealth at five designated focus trial sites ("Phase 1 Trial Sites") .[2]  Specifically, defendants move for partial summary judgment on Counts I through IV of plaintiff's Third Amended Complaint on several grounds.[3]  For the reasons stated below, defendants' motion for partial summary judgment is **DENIED**.

## II.    BACKGROUND

### A.    Plaintiff's Claims

The Commonwealth brings Counts I through IV pursuant to its authority under the common law doctrine of *parens patriae*, "to recover damages and protect [its] citizens."[4]  Count V is brought by the Commonwealth, acting through the Environmental Quality Board ("EQB"), pursuant to "regulatory" and statutory authority vested in it by the Environmental Public Policy Act of 1970 ("EPPA").[5]

---

[1]    For a complete list of movants in this motion for partial summary judgment, *see* 9/26/14 List of Movants, Ex. A to Defendants' Motion for Partial Summary Judgment on Counts I-IV ("Def. Mot."), at 3.

[2]    *See* Def. Mot. at 1.

[3]    *See* Third Amended Complaint ("TAC") ¶¶ 96-156.

[4]    *Id.* ¶ 4; *see also id.* ¶ 13.

[5]    *Id.* ¶ 4.

### 1.    Count V: The EPPA Cause of Action

The Commonwealth, acting through the EQB,[6] asserts claims against certain defendants[7] for violating regulations promulgated by the EQB and laws incorporated by the EPPA, with respect to water pollution.[8]  The EQB identifies one defendant at each Phase 1 Trial Site.[9]  The EQB "seek[s] the total amount of damages caused to the environmental and natural resources of the Commonwealth caused by [] defendants' unlawful discharge of MTBE."[10]

### 2.    Counts II-IV: General Statutory Causes of Action

In its authority as *parens patriae*,[11] the Commonwealth asserts public

---

[6]    Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Partial Summary Judgment ("Pl. Mem.") at 2 ("EQB acts on behalf of, as an extension of, and as the alter ego of the Commonwealth.") (quotation marks and citation omitted).

[7]    9/12/14 Phase 1 Trial Site Matrix ("Matrix"), Ex. A to Case Management Order No. 117 ("CMO"), at 1–5.

[8]    24 Laws of Puerto Rico Annotated ("L.P.R.A.") § 599; *see also id*. §§ 591, 595.

[9]    Defendant Esso is a named defendant at two of the five Phase 1 Trial Sites.  *See* Matrix at 2-3.  Accordingly, there are four defendants named in Count V.  *See id.*

[10]    TAC ¶ 155.

[11]    *See id.* ¶¶ 4, 13.

nuisance, trespass, and negligence claims in Counts II, III, IV.[12]  The

Commonwealth seeks "administrative, investigation, remediation, cleanup,

restoration, removal, treatment and/or monitoring costs and expenses related to the

contamination of waters" that "the Commonwealth has incurred[,] is incurring[,]

and will continue to incur."[13]  The Commonwealth also prays for "other substantial

expenses and damages."[14]

### 3.   Count I: Common Law Cause of Action

Also in its authority as *parens patriae*, the Commonwealth claims that

certain defendants are liable for strict product liability under a theory of defective

design and failure to warn.[15]  This claim is brought pursuant to a "standard

common law cause of action [] universally recognized by Puerto Rico's courts."[16]

The Commonwealth seeks damages in the amount that it has expended and will

---

[12]     *See id.* ¶¶ 113, 125, 140.  Count II is brought pursuant to section 2761
of Title 32 of the Laws of Puerto Rico ("section 2761"), while Counts III and IV
are brought pursuant to section 5141 of Title 31 of the Laws of Puerto Rico
("section 5141").  *See* 32 L.P.R.A. 2761; 31 L.P.R.A. 5141.

[13]     TAC ¶¶ 114, 125, 140.

[14]     *Id.* ¶¶ 115, 126, 141.

[15]     *See id.* ¶¶ 96–107.

[16]     Pl. Mem. at 3.  Unlike the public nuisance, trespass, and negligence
claims, products liability claims are not codified by Puerto Rico's Civil Code.
However, Plaintiff argues that because it is such a commonly pled cause of action,
it cannot be an "implied" common law cause of action.  Pl. Mem. at 3.

continue to spend "on evalut[ing], investigat[ing], monitor[ing], abat[ing], clean[ing]-up, correct[ing], contain[ing], and remov[ing] MTBE from waters of the Commonwealth."[17]   The Commonwealth also seeks the recovery of attorneys' fees.[18]

**B.    Defendants' Motion for Summary Judgment**

Defendants' motion relies on three different but related arguments. *First*, the EPPA, evidenced by (1) its plain language and legislative intent, and (2) the First Circuit's holding in *Puerto Rico v. S.S. Zoe Colocotroni* ("*Zoe*"),[19] "displaced any implied common law *parens patriae* authority that [would allow] the Commonwealth to file for environmental-injury damages," as well as the common law and general statutory causes of action.[20]   *Second*, the Commonwealth cannot prevail as a matter of law on its trespass claim because it lacks "exclusive possession" of the groundwater at issue — an element of trespass under Puerto Rico law.[21]   *Third*, because the Commonwealth is a public agency that does not

---

[17]    TAC ¶ 104.

[18]    *See id*. ¶ 105.

[19]    628 F.2d 652 (1st Cir. 1980).

[20]    Defendants' Reply Memorandum in Support of Motion for Summary Judgment ("Reply Mem.") at 2.

[21]    Defendants' Memorandum of Law in Support of Motion for Partial Summary Judgment ("Def. Mem.") at 18 ("[T]he waters are the property of the

own the injured property, it may not recover damages on its nuisance claim, but is limited solely to the remedy of abatement.[22]

## III.   APPLICABLE LAW

### A.   Preemption

#### 1.   The EPPA

The EPPA reiterates the Commonwealth's "commitment to the most effective conservation of its resources."[23]  In adopting the EPPA in 1970, the Legislature sought to "establish a policy which [would] stimulate a desirable and convenient relationship between man and his environment; [] develop the efforts which might hinder or eliminate damages to the environment . . . [; and] enrich the comprehension of ecological systems and natural resources important to" the

---

people of Puerto Rico." citing 12 L.P.R.A. § 1115a).  "The Commonwealth's role as the government is to regulate [the groundwater]." *Id.* "Although the Puerto Rico Courts have not expressly ruled whether exclusive possession is a prerequisite to maintaining a trespass claim, such possessory rights are necessary under the Restatement of Torts, and that well accepted rule should apply here." *Id. See also* Reply Mem. at 8 ("[T]his Court should follow the longstanding practice of looking to the Restatement for guidance.").

[22]    *See* Def. Mem. at 20.

[23]    *Paoli Mendez v. Hernandez*, 138 D.P.R. 449, 464 (P.R. 1995) (citation omitted).

citizens of Puerto Rico.[24]  The policy statement of the EPPA provides that "all

persons responsible for polluting our soils, waters and atmosphere shall be

accountable for decontamination[] and restoration-related costs, and when

applicable, for compensating the people of Puerto Rico for harm inflicted."[25]

To implement these objectives, the EPPA: (1) created the EQB;[26] (2)

incorporated EQB regulations and Civil Code provisions governing the welfare of

Puerto Rico's environmental and natural resources;[27] and (3) vested in the EQB the

power to institute civil actions on behalf of the Commonwealth "to recover the

total value of the damages" caused by violations of the EPPA.[28]  The EQB also

provides a private cause of action against any "natural or juridicial person on the

---

[24]     9/26/14 Session Law from 1970 Approving EPPA ("Act No. 9"),
Ex. 1 to Declaration of James B. Harris ("Harris Decl."), Attorney for Defendant
Petrobras America Inc., at 1.

[25]     12 L.P.R.A. § 8001b.

[26]     *See id.* § 8002a.  The EQB is an environmental administrative agency
that "act[s] on behalf of, as an extension of, and as the alter ego of the
Commonwealth." *Padilla Cintron v. Rossello Gonzalez*, 247 F. Supp. 2d 48, 56
(D.P.R. 2003).

[27]     *See* 12 L.P.R.A. § 8006f.

[28]     *Id*. § 8002c(a)(11).  The EQB is the only governmental entity
that may pursue an EPPA created cause of action.  *See id*. § 8002c; *Zoe*, 628 F.2d
at 671.

grounds of damages sustained on account of violations of this chapter."[29]

The EPPA gives the EQB power to institute a civil action to collect damages resulting from the violation of the provisions of the Federal Clean Water Act[30] and the Commonwealth's pollution standards.[31]  These provisions specify who the EQB can sue for environmental damages.  The EPPA limits liability to those defendants that are "directly or indirectly" responsible for "throw[ing], discharg[ing], pour[ing] or dump[ing] . . . any organic or inorganic matter capable of polluting or of leading to the pollution of [waters] in such manner as to place them out of the minimum standards of purity that the Secretary of Health may establish. . . ."[32]

The EPPA is silent with respect to whether it displaces non-EPPA causes of action for environmental damages.  The Puerto Rico Supreme Court has held that in a private civil action under the EPPA, the private litigant may complement its EPPA claims with non-EPPA claims to recover damages for injury

---

[29]     12 L.P.R.A. § 8002m ("Such civil action shall be independent and different from administrative procedures conducted by the Board.").

[30]     *Id.* § 1131(13)(A)(I).

[31]     24 L.P.R.A. §§ 591, 595, 599.

[32]     *Id.* § 595.

8

to natural resources on his or her property.[33]   However, Puerto Rico's highest court has yet to resolve whether the EPPA displaces alternate common law and general statutory causes of action to recover environmental injury damages, or whether the Commonwealth may utilize its *parens patriae* authority to institute such a suit.

### 2.      The First Circuit's Holding in *Zoe*

At issue in *Zoe* were damages caused to Puerto Rico's coastline after the captain of a tramp oil tanker, the SS Zoe Colocotroni, "ordered the dumping of more than 5,000 tons of crude oil onto the surrounding waters."[34]   The EQB and the Commonwealth brought suit as two separate and distinct plaintiffs.[35]   The EQB brought suit pursuant to the EPPA.[36]   "[A]s the owner of the real property primarily effected by the oil spill," the Commonwealth could have brought suit pursuant to a cause of action in admiralty "like any private landowner."[37]   Instead, the

---

[33]      *See Rivera Colon v. Diaz Arocho*, 165 D.P.R. 408 (P.R. 2005) (holding that a private litigant bringing a claim pursuant to the EPPA could also bring a claim of negligence pursuant to section 5141 for damages caused by injury to environmental resources located on her property).

[34]      *Zoe*, 628 F.2d at 656.

[35]      *See id*. at 659.

[36]      *See id*. at 670.

[37]      *Id*. at 670–71 (citing 48 U.S.C. § 749).   *See also* P.R. Federal Relations Act § 8 ("[T]he harbor areas . . . in and around the Island of Puerto Rico . . . now owned by the United States . . . are hereby placed under the control of the Government of Puerto Rico . . . .").

Commonwealth sought relief under an implied common law cause of action, whereby it "asserted a right to recover as a governmental entity on behalf of its people for the loss of living natural resources on the land such as trees and animals."[38]  This implied common law cause of action brought by the Commonwealth and the cause of action brought by the EQB under the EPPA overlapped significantly.[39]  The First Circuit held that the EPPA displaced this cause of action asserted by the Commonwealth as "public trustee" of Puerto Rico's natural resources.[40]

> [W]e think that where the Commonwealth of Puerto Rico legislatively authorized the bringing of suits for environmental damages and has earmarked funds so recovered to a special fund, such an action must be construed as taking the place of any implied common law action the Commonwealth as trustee might have brought.  Any other construction would invite the risk of double recovery and lead to confusion as to the rights of the two plaintiffs in their identical or nearly identical actions.[41]

### 3.    Alternative Pleading and Displacement of State Law

Rule 8 of the Federal Rules of Civil Procedure states that a "party may

---

[38]    *Zoe*, 628 F.2d at 671.  The Commonwealth argued that its "status as public trustee of its natural resources is sufficient in itself to support an action for damages to those resources."  *Id*.

[39]    *See id*. at 672.

[40]    *See id*. at 671.

[41]    *Id*.

10

set out [two] or more statements of a claim . . . alternatively or hypothetically."[42]

Further, "[a] party may state as many separate claims or defenses as it has,

regardless of consistency."[43]  A "plaintiff may plead both statutory and common

law grounds for relief for the same conduct by the same defendant."[44]  While Rule

8 allows a plaintiff to plead in the alternative, the Rule does not allow it to plead a

claim pursuant to a cause of action that has been statutorily displaced; however,

"the legislative grant of a new right does not ordinarily cut off or preclude other

non-statutory rights in the absence of clear language to that effect."[45]

Under Puerto Rico law, "a special law governing a specific matter

prevails over a general law."[46]  However, this statutory construction is applied only

when the two statutes are in conflict with each other.[47]  Where legislation is silent

---

[42]     Fed. R. Civ. P. 8(d)(2).

[43]     Fed. R. Civ. P. 8(d)(3).

[44]     5 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus, & Adam N. Steinman,  Federal Practice & Procedure § 1282 (3d ed).

[45]     *Federal Marine Terminals v. Burnside Shipping Co.*, 394 U.S. 404, 412 (1969).

[46]     *Cordova & Simonpietri Ins. Agency v. Crown Am.*, 112 D.P.R. 797, 12 Puerto Rico Official Translator ("P.R. Offic. Trans.") 1003, 1007 (P.R. 1982). *See also* 31 L.P.R.A. § 12 ("In matters which are the subject of special laws, any deficiency in such law shall be supplied by the provisions of this title.").

[47]     *See, e.g.*, *Cordova & Simonpietri*, 12 P.R. Offic. Trans. at 1007 (holding that there is no conflict between the Insurance Code and Act No.

11

with respect to whether it preempts or displaces state law remedies, the court must look for a heightened standard of "evidence of clear and manifest legislative purpose" that is otherwise not required in determining the displacement of federal common law.[48]  Federal courts must tread carefully when interpreting comprehensive statutory schemes adopted by state legislatures — silent on the issue of displacement — as preempting existing state law remedies.[49]  Here, principles of federalism counsel against a federal court's displacing established state law.[50]

### B.      Trespass and Exclusive Possession

Under Puerto Rico law, only the people of Puerto Rico can own water, not the Commonwealth.[51]  Nevertheless, the Commonwealth has a

75 with respect to "termination of agency contracts" where the more comprehensive Insurance Code is "in fact, silent on this matter").

[48]      *American Elec. Power Co., Inc. v. Connecticut*, 564 U.S. ___, 131 S.Ct. 2527, 2537 (2011) (citing *City of Milwaukee v. Illinois and Mich.*, 451 U.S. 304, 317 (1981)).

[49]      *See Railroad Commission of Tex. v. Pullman Co.*, 312 U.S. 496, 499-500 (1941).

[50]      *See American Elec. Power Co., Inc.*, 131 S.Ct. at 2537 (citation omitted).

[51]      *See* 12 L.P.R.A. § 1115a ("The waters and bodies of water of Puerto Rico are the property and wealth of the people of Puerto Rico."). *See also Hernandez*, 138 D.P.R. at 468 ("[T]he ownership of the waters . . . are and shall always be public . . . .").

12

constitutional and statutory duty to conserve, protect and administer the groundwater on behalf of the citizens of Puerto Rico.[52]  Section 19 of Article VI of Puerto Rico's Constitution mandates that "it shall be the public policy of the Commonwealth to conserve, develop and use its natural resources for the general welfare of the community.[53]  Puerto Rico law "imposes on the Commonwealth the unavoidable duty to administer and protect [Puerto Rico's] waters, in the name and the benefit of the Puerto Rican population."[54]  This duty includes the Commonwealth's mandate to establish a permit and franchise system for the public use of such waters.[55]  The Commonwealth has authorized the Puerto Rico Aqueduct and Sewer Authority ("PRASA") to assume the "administration, operation, maintenance and conservation" of the Class SG-1 groundwater at issue in the Complaint.[56]

It is unclear whether Puerto Rico law requires a plaintiff to show

---

[52]     *See* P.R. Const. art. VI, § 19; 12 L.P.R.A. § 1115a ("The waters and bodies of water of Puerto Rico are the property and wealth of the people of Puerto Rico. The Commonwealth Government shall administer and protect this patrimony in the name and on behalf of the Puerto Rican people.").

[53]     P.R. Const. art. VI, § 19.

[54]     *Paoli Mendez*, 138 D.P.R. at 464–65.

[55]     *See* 12 L.P.R.A. §§ 1115d(j), 1115h(a).

[56]     22 L.P.R.A. § 171.

exclusive possession in order to prevail on a trespass claim.[57]  Under Puerto Rico law, possession is recognized in "one of two different aspects: in that of the owner, or in that of the holder of the thing."[58]  In other words a corporeal thing can be exclusively possessed by two distinct and separate possessors: (1) the owner of the thing that possesses a legal right to that thing, and (2) the holder of the thing, who despite not having any vested legal right in it, has exclusive use or custody of that thing.[59]

### C.   Nuisance

Section 2761 of Title 32 of the Laws of Puerto Rico ("section 2761") authorizes both private parties and government agencies to seek damages for

---

[57]    *See* 31 L.P.R.A § 1461 ("Every possessor has a right to be respected in his possession; and if he be disturbed therein, he shall be protected in such possession by the means established in the laws of procedure.").  *Compare. Miranda v. Ritch*, 176 D.P.R. 951, 960–61 (P.R. 2009) (holding that plaintiff who used, but did not own, a path to access the shore was entitled to bring a claim to enjoin the owner of the path because the plaintiff had non-exclusive possession of the path as a holder through his continuous use) *with* Restatement (Second) of Torts § 821D *cmt. d* (1979) ("A trespass is an invasion of the interest in the exclusive possession of land, as by entry upon it.").

[58]    12 L.P.R.A. § 1423.  *See also* 31 L.P.R.A. § 1448.

[59]    *See Serenity By the Sea Inc. v. Scotiabank de Puerto Rico*, No. DPE2012-1233, 2014 WL 3818678, at *2 (P.R. Cir. June 24, 2014) ("Whoever takes control of a thing without having any right whatsoever to proceed that way, has the *fact* of possession .  On the other hand, when the person has the thing pursuant to the legal system he/she has the *right* to possession.") (emphasis in original) (citation omitted).

14

nuisance.[60]  Section 2761 provides that a nuisance claim "may be brought by any person, public agency, or municipality whose property is injuriously affected or whose personal enjoyment is lessened by the nuisance, and by the judgment the nuisance may be enjoined or abated, as well as damages recovered."[61]  Under Puerto Rico law, nuisance "has a dual purpose: the abatement of the nuisance by way of injunction and the compensation of the damages caused by nuisance."[62]

## IV.    DISCUSSION

### A.    The EPPA Does Not Displace Non-EPPA State Law Remedies

Defendants point to a number of varied authorities and policy rationales in an effort to demonstrate that the EPPA displaces Counts I through IV.[63]  However, defendants' interpretation of the EPPA and the holding in *Zoe*, would create a public policy that cannot be reconciled with the legislative intent expressed in the EPPA's plain language, legislative history, and application.

#### 1.    Plain Language and Legislative Intent of the EPPA

Defendants argue that the EQB's power to "recover the total

---

[60]    *See* 32 L.P.R.A. § 2761.

[61]    *Id*.

[62]    *Ortega Cabrera v. Tribunal Superior*, 101 D.P.R. 612, 1 P.R. Offic. Trans. 842, at *3 (1973).

[63]    *See* Def. Mem. at 4.

15

value of damages inflicted on the environment and/or the natural resources by the commission of any violation of the provisions of [the EPPA] or its regulations,"[64] "enables the EQB to recover *all* environmental-injury damages"[65] and prohibits the Commonwealth from recovering such damages under non-EPPA claims. Defendants reach this conclusion based on two primary policy goals of the EPPA — resolving uncertainty and preventing double recovery.

Defendants argue that the Legislature intended to replace dubious, "possible" claims brought under the Commonwealth's *parens patriae* authority, with "known" claims brought pursuant to the EPPA.[66]  The Legislature accomplished this by identifying the EQB as the proper plaintiff, identifying the proper defendants, identifying the essential elements the EQB must prove, and designating the recipients of any recovery.[67]  Defendants further argue that by recognizing the EPPA as the only cause of action for the recovery of environmental damages, the Legislature of the Commonwealth sought to avoid double recovery or windfalls.[68]  However, in asserting these public policy aims

---

[64]     12 L.P.R.A. § 8002c(a)(11).

[65]     Def. Mem. at 6 (emphasis in original).

[66]     *Id*. at 9.

[67]     *See id*.

[68]     *See id.* at 16.

defendants disregard the spirit of the EPPA and the context in which it was passed.

Puerto Rico has a rich history and tradition of environmental conservation and activism.  The EPPA was passed in 1970 during a period of burgeoning environmental legislation in the United States.[69]  However, Puerto Rico's concern for the environment and natural resources of the territory was prevalent before these issues were nationally recognized.  Puerto Rico's environmental concerns began with the 1952 Constitutional Assembly for the Commonwealth, where the Assembly revised Article VI of the Constitution to add that "it shall be the public policy of the Commonwealth to conserve, develop and use its natural resources for the general welfare of the community."[70]  A majority

---

[69]    Congress passed the National Environmental Policy Act in 1969 ("NEPA"), ushering in a decade of environmental reform.  From 1970 to 1980, Congress enacted legislation aimed at protecting the quality of air, water, and other natural public resources.  *See*, *e.g.*, the Clean Air Act Amendments of 1970; the Marine Protection, Research, and Sanctuaries Act of 1972; the Endangered Species Act of 1973; the Safe Drinking Water Act of 1974; the Resource Conservation and Recovery Act of 1976; the Clean Water Act of 1977; the Superfund Act of 1980.  State legislatures also passed laws that established administrative agencies committed to environmental conservation and protection and promulgated regulations and provisions regulating environmental torts.  *See*, *e.g.*, California Environmental Quality Act of 1970, Cal. Pub. Res. Code §§ 21000-21176 (as amended 1983); Connecticut Environmental Policy Act of 1973, Conn. Gen. Stat. Ann. §§ 22a-1 to 7 (1981); Massachusetts Environmental Policy Act, Mass. Ann. Laws ch. 30 §§ 62-62H (1981 as amended).

[70]    P.R. Const. art. VI, § 19. In a session of the Constitutional Convention, the Commission for Transitory Provisions and General Matters stated "'[s]ince Puerto Rico is an island with few natural resources, the State should be

of the Assembly voted that this language would better serve the people of Puerto Rico if it were expressed as a constitutional mandate, rather than a law.[71] Moreover, the EPPA was not the only environmental legislation Puerto Rico passed during the 1970s.  The Organic Law of the Department of Natural Resources and the Water Law were passed shortly after the EPPA in 1972 and 1976 respectively, in light of the concern that "[t]he magnitude of the demographic, economic and geographic forces that unite in Puerto Rico tend to accelerate environmental deterioration."[72]

While neither the political landscape when the EPPA was passed nor Puerto Rico's historical commitment to environmental conservation is dispositive of legislative intent, other provisions of the EPPA weigh heavily against construing the EPPA's silence on the matter of displacement as barring non-EPPA remedies. The EPPA's primary purpose is to institute a policy of protecting and conserving Puerto Ricans' environmental and natural resources from dangers presented by increased population growth, development and industry on the Island and

---

constantly worried about their use, development, and conservation. The preservation of [our natural resources] should be one of the main functions of our government.'" *Paoli Mendez*, 138 D.P.R. at 461 (citing *4 Diario de Sesiones de la Convención Constituyente 2622* (1952)).

[71]    *See Paoli Mendez*, 138 D.P.R. at 460–61.

[72]    *Id*. at 463, n.15 (quotation marks and citations omitted).

compensating the public for any environmental harm.[73]  While implementing this

policy is the EQB's essential function, the Legislature recognized that relying

exclusively on the EQB would not be "effective."[74]  Consequently, the Legislature

included provisions in the EPPA that evince an intent to create a broad remedial

scheme.

        *First*, the Legislature incorporated a citizen suit provision that vested

in citizens of Puerto Rico the power to sue and seek damages for harm to precious

natural resources.  Puerto Rico's courts have explicitly held that this cause of

action may be supplemented by other more general tortious claims, including

negligence.[75]  This provision recognizes the public's interest in the environmental

resources of Puerto Rico, and while it does not speak directly to the

Commonwealth's authority as *parens patriae* to supplement an EPPA cause of

action with general statutory and common law tort claims, the clear intent of the

---

[73]    *See* 12 L.P.R.A. § 8001(a) (recognizing "the profound impact [that] human activities . . . especially the far-reaching influence of population growth, high urban density, industrial expansionism" have on the vital and limited natural resources of Puerto Rico).

[74]    P.R. Const. art. VI, § 19 ("It shall be the public policy of the Commonwealth to conserve, develop and use its natural resources in the most effective manner possible for the general welfare of the community . . . .").

[75]    *See Rivera Colon*, 165 D.P.R. at 426 n.19 (holding that a private landowner's negligence claim was not preempted by her assertion of an EPPA cause of action).

provision is to ensure the people of Puerto Rico are not limited in their potential causes of action against environmental tortfeasors. To permit a private litigant to plead in the alternative when damage occurs on a small scale to environmental resources located on his or her property, but to prevent the Commonwealth from utilizing all causes of actions when suing for damages to environmental resources which impact the entire population of Puerto Rico, is inconsistent with the EPPA.

*Second*, the language of section 8001b of Title 12 of the Laws of Rico Annotated ("section 8001") makes clear that the EPPA's policies "are complementary to those established in the already existing authorizations for agencies."[76]  This provision also states that "the Government of Puerto Rico and its political subdivisions shall, to the broadest extent possible, interpret, apply, and administer all laws and regulatory bodies, as well as those instituted in the future in strict conformance with the public policy set forth in [the EPPA]."[77]  Although this provision refers to the rights and obligations of agencies, rather than the Commonwealth's *parens patriae* authority, it demonstrates that the intent behind the EPPA is not to create a sophisticated and limited body of law that displaces all non-EPPA remedies in pursuit of "certainty" and resolving potential double

---

[76]     12 L.P.R.A. § 8001b.

[77]     *Id*.

recovery issues at the outset of litigation.  Rather, the EPPA's purpose is to supplement existing state law causes of action — including the Commonwealth's *parens patriae* authority to seek damages pursuant to common law and general statutory provisions — with a clear, sophisticated, and complex statutory scheme governing environmental torts.[78]

### 2.   Defendants Misinterpret the First Circuit's Holding in *Zoe*

Additionally, Defendants argue that because *Zoe* held that the EPPA "must be construed as taking the place of any implied common law action [that] the Commonwealth as trustee, might have brought,"[79] this Court must find that the

---

[78]   The Court need not determine whether the EPPA, a complex and specific law, prevails over the common law and general statutory causes of action brought in Counts I through IV.  *See* 31 L.P.R.A. § 12.  The product liability, trespass, nuisance, and negligence claims, although applicable to the tortious conduct complained of by plaintiff, are not in conflict with the EPPA.  *See id.* Defendants also cite *Senator Linie Gmbh and Co., v. Sunway Line, Inc.*, 291 F.3d 145, 167 (2d Cir. 2002), in arguing that where a statute is silent on the issue of displacement, common law remedies are nevertheless displaced unless they can overcome a four pronged test.  The underlying principle, defendants state, is that where the Legislature has spoken on a particular subject, common law governing the subject must be displaced.  While Defendants may have accurately illustrated the standard for Congressional preemption of federal common law, this argument is unavailing here.  An entirely different formula, taking into account principles of federalism and sovereignty, must be applied when displacing state common law. *See Boyle v. United Techs. Corp*, 487 U.S. 500 (1988); *Erie R. Co., v. Tompkins*, 304 U.S. 58 (1938).  A federal court must determine the legislative intent and purpose behind the statute.  *See American Elec. Power Co., Inc.*, 564 U.S. at ___, 131 S.Ct. at 2537.

[79]   *Zoe*, 628 F.2d at 671.

21

Commonwealth is barred from instituting a suit under its *parens patriae* authority. "Any other construction," the First Circuit reasoned, "would invite the risk of double recovery and . . . confusion as to the rights of two state plaintiffs in their identical or nearly identical actions."[80]   However, *Zoe* is inapposite.

In *Zoe,* the Commonwealth claimed to have standing under a "public trustee" theory analogous to *parens patriae*.  The First Circuit explicitly stated that although "the parties and the district court [spoke] in terms of 'standing'" the relevant issue in the case "is more properly [described as] whether plaintiffs have stated a cognizable cause of action."[81]  The First Circuit took issue with the implied cause of action that was "identical or nearly identical" to the cause of action provided by the EPPA, but not with the Commonwealth's "public trustee" doctrine.  There is nothing in *Zoe* that supports defendants' contention that it requires the preclusion of the Commonwealth's ability to sue under its *parens patriae* authority.

The EPPA provides a cause of action to the EQB to institute a suit to recover "the total value of the damages inflicted on the environment and/or natural

---

[80]     *Id*.

[81]     *Id*.

resources" of Puerto Rico.[82]   The EPPA exclusively vested this power and duty in the EQB.  The implied common law cause of action brought by the Commonwealth in *Zoe* was "identical or nearly identical"[83] to the cause of action provided to the EQB in the EPPA. The Commonwealth sought relief "under an asserted right to recover as a governmental entity on behalf of its people for the loss of living natural resources on the land such as trees and animals."[84]   In precluding the Commonwealth from asserting such a claim, the First Circuit held that only the EQB could bring an action pursuant to the EPPA.[85]   *Zoe* re-emphasized that where a cause of action has been legislated for the exclusive use of a particular governmental agency — in this case, the EQB — the Commonwealth acting as public trustee is precluded from asserting that statutory cause of action.  The implied cause of action asserted in *Zoe* by the Commonwealth, as public trustee, was the functional equivalent of an EPPA cause of action, and was preempted because the claim was an end-run around this rule.

---

[82]      12 L.P.R.A. § 8002c(a)(11).

[83]      *Zoe*, 628 F.2d at 671.

[84]      *Id*.

[85]      *See id*. at 672 ("We read this statute both as creating a cause of action of the type described by its terms and as designating the EQB as the proper party to bring such an action.").

23

In contrast, the claims brought in Counts I through IV of the Commonwealth's Complaint here bear no resemblance to the cause of action provided to the EQB in the EPPA.  The product liability, trespass, nuisance, and negligence claims have a broader purpose and goal than protecting the public's interest in natural resources.  Because the claims brought in Counts I through IV are different from the EPPA claim, this Court's determination that the EPPA does not displace the non-EPPA claims does not conflict with *Zoe*.

Finally, there is no risk of double recovery here as there was in *Zoe*. In *Zoe*, the Commonwealth and EQB filed separate suits and asserted identical claims against the defendants, creating a substantial risk that plaintiffs would recover "double awards for the same injury."[86]  Here, there is only one plaintiff — the Commonwealth of Puerto Rico.[87]  One of the most important components of the holding in *Zoe*, was upholding the constitutionality of the EPPA.  This disposed of the need for the EQB and Commonwealth to file separate lawsuits.  Because there is only one plaintiff in this suit — the Commonwealth — acting pursuant to both its *parens patriae* and regulatory authority, there is no risk of double recovery that warrants displacement of non-EPPA remedies as in *Zoe*.  Although defendants

---

[86]     *Acevedo-Garcia v. Monroig*, 351 F.3d 547, 567 (1st Cir. 2003).

[87]     The EQB is an arm of the Executive Branch of the Commonwealth, "attached to the Office of the Governor of Puerto Rico."  12 L.P.R.A. § 8002a.

have repeatedly claimed there are two plaintiffs in this suit, there is only one

plaintiff, the Commonwealth, asserting claims pursuant to different powers and

authorities.[88]

### B.   The Commonwealth Enjoys Exclusive Possession of Groundwater

Defendants argue that under Puerto Rico law a plaintiff is required to

show exclusive possession to prevail on a trespass claim.  Assuming this is so, the

Commonwealth enjoys exclusive possession in one of the two cognizable aspects

of possession under Puerto Rico Law.  The Commonwealth exclusively holds, and

therefore possesses, the Class SG-1 groundwater that is the subject of this suit.  It

is the Commonwealth's affirmative constitutional and statutory duty to "administer

and protect the waters of Puerto Rico on behalf of the people."[89]  That the

Commonwealth must buy its water from PRASA does not disrupt this exclusive

possession.  Rather, the Commonwealth granted PRASA its permit and franchising

---

[88]     In *Zoe*, the Commonwealth filed suit and asserted an implied common
law cause of action because the constitutionality of the EPPA and, by implication,
the EQB were challenged.  *See id*.  Had the EPPA and the EQB been struck down,
the Commonwealth would have no way to protect and conserve Puerto Rico's
environmental resources in pursuit of its constitutionally vested duties.  Therefore,
the filing of suit by the Commonwealth was used as a strategy in the event the
EPPA was invalidated.  When the First Circuit upheld the constitutionality of the
EPPA and the cause of action it provided to the EQB, the Commonwealth's
alternative cause of action was dismissed.

[89]     *Paoli Mendez*, 138 D.P.R. at 464–68.

rights pursuant to its "unavoidable" duty to the people of Puerto Rico to take custody and control of the groundwater at issue.[90]  Because the Commonwealth enjoys exclusive possession of the Class SG-1 groundwater, defendants' partial motion for summary judgment on the trespass claims is denied.

## C.   The Commonwealth's Recovery for Its Nuisance Claim Is Not Limited to Abatement

Defendants argue that the Commonwealth's only available remedy for nuisance is abatement, not damages.  This argument relies on *California* law, which provides that where a public agency lacks an ownership interest in the property affected by the nuisance, it is limited to abatement as a remedy.[91]  This analogy to California law is inapposite, however, because the relevant *Puerto Rico* statute, section 2761, articulates a clear intent to give public agencies two types of available remedies when pursuing a public nuisance claim — abatement *and* compensation.[92]  Unlike the California nuisance statute, section 2761 explicitly

---

[90]     *See id.*

[91]     *See* Cal. Code Civ. Proc. § 731 ("An action may be brought by any person whose property is injuriously affected, or whose personal enjoyment is lessened by a nuisance . . . and by judgment in that action the nuisance may be enjoined or abated as well as damages recovered therefore.").  *See also id.* ("A civil action may be brought in the name of the people of the State of California to abate a public nuisance.").

[92]     *See* 32 L.P.R.A. § 2761.

26

states that "public agenc[ies]" are entitled to damages for a nuisance claim.

Accordingly, defendants' motion for summary judgment seeking to limit the

remedy for nuisance claims is denied.[93]

## V.   CONCLUSION

For the foregoing reasons, defendants' motion for partial summary

judgment is DENIED. The Clerk of Court is directed to close this motion (Docket

No. 481).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            March 2, 2015

---

[93]     *Id.*

**- Appearances -**

**Liaison Counsel for Plaintiffs:**

Robert J. Gordon, Esq.
Robin L. Greenwald, Esq.
William A. Walsh, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
(212) 558-5500

**Counsel for the Commonwealth**:

Scott E. Kauff, Esq.
John K. Dema Esq.
Law Offices of John K. Dema,
P.C.
Rockville Maryland 20852
(301) 881-5900

Jorge L. Flores De Jesus, Esq.
Puerto Rico Department of Justice
Olimpo Street, Pda. 11
San Juan, Puerto Rico 00907
(787) 721-7700

Orlando H. Martinez, Esq.
Orlando H. Martinez Law Offices
Centro de Seguros, Suite 413
701 Ponce de Leon Avenue
San Juan, Puerto Rico
(787) 724-0353

William J. Jackson, Esq.
John D.S. Gilmour, Esq.
John D.S. Gilmour & Dobbs P.C.

**Liaison Counsel for Defendants:**

Peter J. Sacripanti, Esq.
James A. Pardo, Esq.
Lisa A. Gerson, Esq.
McDermott Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
(212) 547-5583

**Counsel for Defendant Petrobras
America Inc.:**

James B. Harris, Esq.
David C. Schulte, Esq.
Thompson & Knight LLP
1772 Routh Street, Suite 1500
Dallas, Texas 75201
(214) 969-1751

**Counsel for Defendant Sol Puerto Rico
Limited:**

Juan A. Marques-Diaz, Esq.
McConnell Valdes LLC
P.O. Box 364225
San Juan, PR 00936-4225
(787) 250-2619

**Counsel for Defendants Sunoco Inc.,
Sunoco Inc. (R&M), and Puerto Rico
Sun Oil Company LLC:**

John S. Guttman, Esq.
Daniel M. Krainin, Esq.
Beveridge & Diamond P.C.
477 Madison Avenue, 15th Floor

3900 Essex, Suite 700                      New York, NY 10022
Houston, Texas 77027                        (212) 702-5400
   (713) 355-5001

Michael Axline, Esq.
Miller & Axline
1050 Fulton Avenue, Suite 100
Sacramento, CA 95825-4225
   (916) 488-4288