USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  3/16/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ X

IN RE: METHYL TERTIARY BUTYL       :
ETHER ("MTBE") PRODUCTS            :
LIABILITY LITIGATION               :

------------------------------------------------ :

This document relates to:          :

*Commonwealth of Puerto Rico v.*   :
*Shell Oil Co., et al.*, 07 Civ. 10470   :
                                   :
------------------------------------------------ X

**OPINION AND ORDER**

**Master File No. 1:00-1898**
**MDL 1358 (SAS)**
**M21-88**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

This is a consolidated multi-district litigation ("MDL") relating to

contamination — actual or threatened — of groundwater from various defendants'

use of the gasoline additive methyl tertiary butyl ether ("MTBE") and/or tertiary

butyl alcohol, a product formed by the breakdown of MTBE in water.  In this case,

the Commonwealth of Puerto Rico ("Commonwealth") alleges that defendants' use

and handling of MTBE has contaminated, or threatened to contaminate

groundwater within its jurisdiction.  Familiarity with the underlying facts is

presumed for the purposes of this Opinion.

Currently before this Court is a motion for summary judgment

brought by defendant, Chevron Puerto Rico, LLC ("CPR"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, on the ground that the Commonwealth has presented no evidence to support any claim of injury with respect to Texaco #800.[1] For the reasons stated below, CPR's motion for summary judgment is **DENIED**.

## II.    BACKGROUND

### A.    Texaco #800 Site

The Commonwealth brings this suit to recover damages for injuries inflicted upon "waters of the Commonwealth."[2]  Located beneath Texaco #800 is a shallow aquifer where "[g]roundwater is present . . . in alluvial sediments [beginning] at a depth of approximately 22 to 24 feet []."[3]  Situated at deeper depths is the South Coast Aquifer — "the singularly intended, and actual, source of drinking water for several nearby public supply wells that provide drinking and

---

[1]    *See* CPR's Notice of Motion and Motion for Summary Judgment ("Def. Mot.") at 1.  *See also* 4/1/14 Revised Expert Report of Anthony Brown ("Brown Model"), Ex. 3 to Declaration of Jeremiah J. Anderson ("Anderson Decl."), Attorney for CPR, at 109 (noting that a gasoline service station has been operated at this Site since 1972).  Texaco # 800 is located in the municipality of Ponce, Puerto Rico.  *See id*.

[2]    Complaint ("TAC") ¶ 5.

[3]    Brown Model, at 132.

irrigation water."[4]  It is unclear whether there is an "aquitard" that separates these two aquifers.[5]  CPR's expert testified that an "interbedded low-permeability strata" separates the shallow aquifer from the South Coast Aquifer "limit[ing] potential for impacts by gasoline constituents via vertical migration from the shallow [aquifer]."[6]  Conversely, the Commonwealth argues that "[n]o aquitard in the South Coast Aquifer has been identified" and that the shallow aquifer is actually part of the South Coast Aquifer.[7]

MTBE has been detected in groundwater samples taken from numerous monitoring wells that draw groundwater from the shallow aquifer.[8]  However, there is no evidence that South Coast Aquifer has been contaminated by

---

[4]      The Commonwealth's Memorandum of Law in Opposition to Motion for Summary Judgment ("Pl. Mem.") at 5 (citing Declaration of Wanda Garcia Hernandez ("Garcia Decl."), Acting Manager of the Water Quality Area of the Environmental Quality Board ("EQB"), ¶¶ 10–11).

[5]      An aquitard is an impermeable barrier that separates aquifers from one another. *See, e.g.* Brown Model, at 132.

[6]      CPR's Reply Rule 56.1 Statement in Support of Motion for Summary Judgment ("Reply 56.1") ¶ 10 ("Water supply wells screened at depths below the shallow impacted groundwater-bearing unit are protected from impacts by interbedded low-permeability strata . . . .").

[7]      Brown Model, at 129. *See* Garcia Decl. ¶ 9.

[8]      *See* Brown Model, at 109.  MTBE was first detected in the shallow aquifer at depths of twenty-three to twenty-five feet in October 2009.  *See* Pl. Mem. at 2.  MTBE has since been found in the shallow aquifer as deep as forty-nine feet.  *See also* Reply 56.1 ¶ 9.

3

MTBE.[9]  Moreover, MTBE has never been detected in any of the Puerto Rico

Aqueduct and Sewer Authority's ("PRASA") public supply wells in the vicinity of

Texaco #800 that draw from the South Coast Aquifer.[10]

   B.    **"Waters of the Commonwealth"**

        In its Complaint, the Commonwealth defines "waters of the

Commonwealth" pursuant to the Puerto Rico Water Quality Standards Regulation

in effect when the Commonwealth filed its first Complaint in 2007 ("Old

Regulation").[11]  Specifically, the Commonwealth claimed injury to three categories

of water: (1) Class SG-1 groundwater, (2) Class SD surface water, and (3) "source

waters that could impact the quality of Class SG-1 and/or Class SD waters."[12]

Under the Old Regulation, Class SG-1 waters were defined as groundwaters that

"serve or have the potential to serve as [a] source of drinking water supply and

---

[9]      *See* 5/22/14 Video Deposition of Anthony Brown, Volume 1
("Def. Brown Dep."), Ex. 5 to Anderson Decl., at 128.

[10]     *See* Def. Mem. at 5.  *See also* Def. Brown Dep., at 124 (stating
plaintiff's expert obtained samples from two wells within the vicinity of Texaco
#800 and that MTBE was not detected in either sample).

[11]     *See* 5/14/03 Puerto Rico Water Quality Standards Regulation ("Old
Regulation"), Ex. A to Garcia Decl., at 23.

[12]     TAC ¶ 5.  The Commonwealth concedes that "there are no SD waters
that have been or could have been impacted by MTBE from Texaco #800."  Reply
56.1 ¶ 6.

agricultural uses including irrigation."[13]  The Old Regulation also recognized a

different category of groundwater not represented in the Complaint — Class SG-2

groundwater, defined as "groundwaters which due to high total dissolved

concentration . . . are not fit as a source of drinking water supply even after

treatment."[14]

In 2010, the Environmental Quality Board ("EQB") revised the

regulatory scheme to eliminate any distinction between Class SG-1 and Class SG-2

ground water, establishing the current standard for groundwater quality ("Current

Regulation").[15]  The Current Regulation, which has remained in effect since 2010,

"broaden[ed] the protections previously provided only for [Class] SG-1 waters."[16]

Now, in addition to protecting groundwater used for public drinking and

agricultural purposes, Class SG incorporates groundwaters "that flow into coastal,

---

[13]     Garcia Decl. ¶ 6.  *See* Old Regulation § 2.3.1.1 ("Class SG[-]1 includes those groundwaters which serve as source of drinking water supply and agricultural uses including irrigation.  Also included under this class are those [bodies of] ground waters that flow into waters which support ecological communities of exceptional value . . . .").

[14]     Old Regulation § 2.3.1.2.

[15]     *See* Garcia Decl. ¶ 5.

[16]     *Id.*

5

surface, and estuarine waters and wetlands."[17]

The Commonwealth filed its third and most recent amended Complaint on November 30, 2012, nearly three years after the EQB changed the Old Regulation.[18]  However, the Commonwealth's third amended Complaint still tracked the language of the Old Regulation, expressly disclaiming any injury to "non-potable waters, such as estuarine and coastal waters or [groundwaters] with elevated total dissolved concentrations."[19]  These waters are protected as Class SG groundwaters under the Current Regulation.[20]

### C.    Theories of Contamination

The Commonwealth offers three ways to account for MTBE contamination at Texaco #800.[21]  *First*, the Commonwealth argues that groundwater located in the shallow aquifer is Class SG water and therefore constitutes "water of the Commonwealth."[22]  Consequently, the well-documented

---

[17]    3/31/2010 Puerto Rico Water Quality Standard ("Current Regulation"), Ex. 1 to Anderson Decl., at 40.

[18]    *See* TAC ¶ 5.

[19]    *Id*.

[20]    *See* Pl. Mem. at 5 (citing Garcia Decl. ¶¶ 10–11).

[21]    *See id*. at 4–10.

[22]    *Id*. at 4–5.

contamination of the shallow aquifer constitutes current and ongoing injury.[23]

*Second*, the shallow aquifer is actually part of the South Coast Aquifer due to a

"hydraulic connection" between the two aquifers.[24]  This hydraulic connection

permits the migration of contaminated groundwater from the shallow aquifer to the

South Coast Aquifer.[25]  Because groundwater located in the South Coast Aquifer

"serve[s] and ha[s] the potential to serve as [a] source of drinking water and

agricultural uses including irrigation," such migration from the shallow aquifer to

the South Coast aquifer would constitute injury to Class SG-1 groundwater.[26]

*Third*, well-bore leakage creates an additional point of entry through which

contaminated groundwater from the shallow aquifer can seep into the South Coast

Aquifer.[27]

---

[23]     *See id.*

[24]     *See id.* at 5–8.  For purposes of this theory, the Commonwealth
continuously refers to the shallow aquifer and the South Coast Aquifer as shallow
and deep zones of the same aquifer.  For the sake of clarity, I will continue to refer
to these aquifers as separate bodies of water.

[25]     *See id.*

[26]     Garcia Decl. ¶ 6.  *See* Old Regulation § 2.3.1.1 ("Class SG[-]1
Includes those groundwaters which serve as source of drinking water supply and
agricultural uses including irrigation.  Also included under this class are those
[bodies of] ground waters that flow into waters which support ecological
communities of exceptional value . . . .").

[27]     *See* Pl. Mem. at 8–10.

### 1.      Contamination of the Shallow Aquifer

MTBE has been detected via monitoring wells drawing water from the shallow aquifer beneath Texaco #800.  CPR has "employed, and continues to employ, active remediation technologies to address the MTBE remaining at the site."[28]  However, some monitoring wells indicate an increase in the level of MTBE in the shallow aquifer as of 2013.[29]  The Commonwealth argues that under the Current Regulation, this contamination constitutes an injury because the shallow aquifer contains Class SG water.[30]  However, the Complaint only alleges injury to Class SG-1 groundwater as defined in the Old Regulation, which does not cover water of the type found in the shallow aquifer.[31]

### 2.      Contamination Via Hydraulic Connection

The Commonwealth claims that the shallow aquifer beneath Texaco #800 is "hydraulically connected to the deeper [aquifer], and [is] part of one

---

[28]      Reply 56.1 ¶ 4.

[29]      *See id.*

[30]      *See* Pl. Mem. at 5 ("The current classification of groundwaters is simply SG, and protects all groundwaters as defined in this regulation.") (quotation marks and citation omitted).

[31]      *See* CPR's Reply Memorandum in Support of Motion for Summary Judgment ("Reply Mem.") at 3.

aquifer system" — the South Coast Aquifer.[32]  The Commonwealth asserts that there is no evidence of any aquitard or "shield" that would prevent the shallow aquifer's contaminated waters from migrating to the deeper aquifer.[33]  In support of this argument, the Commonwealth points to a report produced by the United States Geological Survey ("USGS"), with assistance from the EQB.[34]  Specifically, according to the "descriptions and delineations of Puerto Rico aquifers,"

> [t]he surficial deposits between Rio Portugues at Ponce and Rio Coamo are underlain by carbonate units of Tertiary age with permeable limestone units that are hydraulically connected with the surficial deposits, *thus both hydrogeologic units are considered as one aquifer in this area*.[35]

---

[32]     Garcia Decl. ¶ 8 (quotation marks and citation omitted).

[33]     *See* Pl. Mem. at 6 ("CPR's motion essentially asks the Court to assume a protective shield separates the shallow aquifer beneath Texaco #800 from the deeper aquifer, but no such shield exists.").

[34]     *See id*. ("The evidence establishes that the USGS and EQB consider the shallow and deep zones under Texaco #800 to be part of the same hydraulically connected aquifer (the South Coast Aquifer).").

[35]     5/30/07 USGS Groundwater-Quality Survey of the South Coast Aquifer ("USGS Report"), Ex. D to Garcia Decl., at 2 (emphasis in original).  *See* Garcia Decl. ¶ 9 ("[T]he shallow and deep saturated zones at the location of Texaco #800 site are hydraulically connected and considered a single aquifer by USGS.").  *See also* Brown Model, at 129 ("No aquitard within the South Coast Aquifer has been identified. Therefore . . . the vertical migration of contaminants, notably MTBE [], into deeper portions of the South Coast Aquifer will continue unabated."); *id*. at 132 ("Groundwater in the sediments beneath the Site is likely in communication with the South Coast Aquifer.").

The Commonwealth claims that this hydraulic connection is the source of MTBE contamination in the South Coast Aquifer.[36]

Furthermore, according to the model submitted by Anthony Brown, the Commonwealth's expert, there are eight "receptor" water supply wells within the vicinity of Texaco #800 that draw directly from the South Coast Aquifer.[37] Brown hypothesizes that these wells will eventually capture contaminated groundwater that has migrated from the shallow aquifer to the South Coast Aquifer.[38]  Although MTBE has never been detected in these wells,[39] Brown identifies two wells — the San Anton North well and the Beljica well — as having "capture zones that extend beneath [and into] the known area of contamination."[40] The San Anton North and Beljica wells are located 100 feet and 1,200 feet south south-east of Texaco #800, respectively.[41]  There is a downward vertical hydraulic

---

[36]     *See* Garcia Decl. ¶ 9.

[37]     *See* Brown Model, at 130.

[38]     *See id*. at 129, 132,

[39]     *See* Def. Brown Dep., at 124 ("The data that I have reviewed to date does not indicate that MTBE . . . ha[s] impacted those wells.").

[40]     *See id*. at 125.

[41]     *See* Brown Model, at 132.

gradient that directs groundwater to flow in the same direction.[42]  The
Commonwealth argues that these two wells are likely to draw contaminated
groundwater that has migrated from the shallow aquifer to the South Coast
Aquifer.[43]

    PRASA has no documentation demonstrating that either of the wells
exists, and the USGS most recently collected data on the San Anton North well
fifty-six years ago.[44]  Brown relied on other data in determining the existence and
location of both wells.[45]  However, Brown could not locate the wells during a visit
to Texaco #800.[46]  Furthermore, Brown stated that only wells that are active and
pumping have capture zones.[47]  According to the Brown Model, the Beljica and

---

[42]    *See id.*

[43]    *See id.*

[44]    *See* Def. Mem. at 6–8.

[45]    Brown stated that information regarding the existence of the Beljica
well was provided to him either by the Puerto Rico Department of Health or the
USGS, "but [the Beljica well] . . . was not in the PRASA database."  Def. Brown
Dep., at 141.  Brown's "understanding is the [that] the location of [the San Anton
North well] came from the USGS database," but he "just drove around the
neighborhood" and "did not identify the specific location of the well."  *Id.* at 147.

[46]    *See id.*

[47]    *See* Video Deposition of Anthony Brown Volume 1 ("Pl. Brown
Dep."), Ex. 1 to Declaration of Michael Axline ("Axline Decl."), Attorney for the
Commonwealth, at 172 ("If the well is not pumping, then there is no capture
zone.").

San Anton North wells' capture zones are beneath and within the contaminated portion of the South Coast Aquifer.[48]  However, Brown acknowledges that he does not know whether either well is "pumping or is not pumping."[49]

### 3.    Contamination Through Well-Bore Leakage

According to the Brown Model, leakage within the well bores of the wells in the vicinity of Texaco #800 creates a supplemental point of contamination to the South Coast Aquifer.[50]  Brown has not collected any "data as it relates to specific leakage at certain wells."[51]  However, Brown hypothesizes that contaminated groundwater migrates through leaks within the well bore between the well casing and the well hole, to the South Coast Aquifer. Well-bore leaks occur when there is either no sanitary seal of concrete in the well pack protecting the casing of the well, or because the seal, if constructed, "does not bond to the native formation such that it . . . allows a small area of leakage."[52]  Brown has not

---

[48]    *See* Pl. Brown Dep. at 125.  According to Brown's most recent testimony, he now believes that the San Anton's capture zone extends *into* the known area of contamination.  *See* Def. Brown Dep., at 172.

[49]    *Id*., at 152–153.

[50]    *See* Video Deposition of Brown, Volume 2 ("Pl. Brown Dep. Vol. 2"), Ex. 11 to Axline Decl., at 361–362.

[51]    *Id*. at 362.

[52]    *Id*. at 361.

collected any data with respect to the existence or conditions of sanitary seals at these wells.[53]

## III.   LEGAL STANDARD

Summary judgment is appropriate "only where, construing all the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in that party's favor, there is 'no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law.'"[54]  "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[55]

"[T]he moving party has the burden of showing that no genuine issue of material fact exists and that the undisputed facts entitle [it] to judgment as a matter of law."[56]  To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the

---

[53]     *See id*. at 362.

[54]     *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 19 (2d Cir. 2014) (quoting Fed. R. Civ. P. 56(c)) (some quotation marks omitted).

[55]     *Windsor v. United States*, 699 F.3d 169, 192 (2d Cir. 2012), *aff'd*, 133 S. Ct. 2675 (2013) (quotations and alterations omitted).

[56]     *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012) (citations omitted).

material facts,"[57] and "may not rely on conclusory allegations or unsubstantiated speculation."[58]

In deciding a motion for summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."[59] "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"[60]

## IV.   DISCUSSION

Whether the "waters of the Commonwealth" have been contaminated with MTBE at Texaco #800 requires resolution of a disputed issue of material fact. The parties disagree over whether there is a hydraulic connection between the shallow aquifer and the South Coast Aquifer.  Such a connection would allow contaminated groundwater to flow into the South Coast Aquifer, and from there, to

---

[57]   *Brown v. Eli Lilly & Co.,* 654 F.3d 347, 358 (2d Cir. 2011) (quotation marks and citations omitted).

[58]   *Id.* (quotation marks and citations omitted).

[59]   *Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.*, 677 F.3d 109, 119 (2d Cir. 2012).

[60]   *Barrows v. Seneca Foods Corp.*, 512 Fed. App'x 115, 117 (2d Cir. 2013) (quoting *Redd v. New York Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012)).

14

wells in the vicinity of Texaco #800.[61] At least two of these wells are public water supply wells, as documented by PRASA.[62]

CPR argues that the Commonwealth's well-bore leakage theory of contamination is in direct conflict with its theory that "the two [wells] are seamlessly connected."[63]  If the wells are hydraulically connected, CPR contends that Brown would be able to either identify MTBE contamination in nearby wells that draw from the South Coast Aquifer or "opine[] that all eight of the wells that he identified in his report are threatened by MTBE."[64]  Brown has done neither.[65] CPR also argues that there cannot be a hydraulic connection because, according to its expert, the South Coast Aquifer is protected from the shallow aquifer by an aquitard.[66]  Therefore, contaminated water could not flow from the shallow aquifer to the South Coast Aquifer.

CPR's first argument is unavailing.  The Commonwealth's well-bore leakage theory derives from the Brown Model, in which Brown posits that there is

---

[61]     *See* Brown Model, at 130.

[62]     *See id.*

[63]     Reply Mem. at 6.

[64]     *Id.*

[65]     *See id*.

[66]     Reply 56.1 ¶ 10.

no evidence of an aquitard, and that the two aquifers are hydraulically connected.[67] Specifically, the Brown Model states that, "[g]iven the absence of a defined aquitard between the shallow aquifer and the regional aquifer, it is likely that the shallow aquifer (and any contamination therein) is in communication with and recharges the regional aquifer."[68]  The Brown Model actually supports the hydraulic connection between the two aquifers, while asserting that well-bore leakage can provide an additional point of entry.

Relying on its expert's testimony, CPR argues that the groundwater of the South Coast Aquifer is protected from the contaminated groundwater located in the shallow aquifer by a "low-permeability" aquitard.[69]  The Commonwealth disputes CPR's expert by pointing to the USGS Report which states that the two aquifers are separated by a permeable layer of limestone deposits, through which contaminated groundwater migrates from the shallow aquifer to the South Coast Aquifer.[70]  In addition, the EQB and the USGS both recognize the shallow aquifer and the South Coast Aquifer as a single body of groundwater.[71]

---

[67]     *See* Brown Model, at 132

[68]     *Id.*

[69]     Def. Reply 56.1 St. ¶ 10.

[70]     *See* USGS Report, at 2.

[71]     *See* Garcia Decl. ¶ 10.

This issue is material because any contamination of the South Coast Aquifer is contamination of "waters of the Commonwealth" under both the Old Regulation and the Current Regulation.  Notwithstanding the questionable existence of the San Anton North and Beljica wells, there are six other water supply wells in the vicinity of Texaco #800 — two public water supply wells, one domestic water supply well, and two irrigation water supply wells — that draw from the South Coast Aquifer.[72]  As a result, groundwater in the South Coast Aquifer "serve[s] or ha[s] the potential to serve as [a] drinking water supply or agricultural uses including irrigation" and is Class SG-1 groundwater.[73]  The Commonwealth has proffered sufficient evidence to create a material issue of fact with respect to whether the shallow aquifer is hydraulically connected to the South Coast Aquifer.

## V.    CONCLUSION

For the foregoing reasons, CPR's motion for summary judgment is DENIED.  The Clerk of Court is directed to close this motion (Docket No. 463).

---

[72]    See Brown Model, at 130.

[73]    Garcia Decl. ¶ 6 (stating the Old Regulation's definition of Class SG-1 groundwater).

SO ORDERED:

_____

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            March 16, 2015

**- Appearances -**

**Liaison Counsel for Plaintiffs:**

Robert J. Gordon, Esq.
Robin L. Greenwald, Esq.
William A. Walsh, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
(212) 558-5500

**Counsel for Chevron Puerto Rico, LLC:**

Robert E. Meadows, Esq.
Jeremiah J. Anderson, Esq.
James J. Maher, Esq.
King & Spalding LLP
1100 Louisiana, Suite 4000
Houston, TX 77002
(713) 751-3200

Charles C. Correll, Jr., Esq.
King & Spalding LLP
101 Second Street, Suite 2300
San Francisco, CA 94015
(415) 318-1200

**Liaison Counsel for Defendants:**

Peter J. Sacripanti, Esq.
James A. Pardo, Esq.
Lisa A. Gerson, Esq.
McDermott Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
(212) 547-5583

**Counsel for the Commonwealth:**

Michael Axline, Esq.
Miller & Axline
1050 Fulton Avenue, Suite 100
Sacramento, CA 95825-4425
(916) 488-4288