


**JAMES P. TUITE**
+1 202.887.4406/fax: +1 202.887.4288
jtuite@akingump.com

March 19, 2015

**VIA CM-ECF AND EMAIL**

The Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1620
New York, NY 10007-1312

Re: *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation* MDL No. 1358
*Commonwealth of Pennsylvania v. Exxon Mobil Corp., et al.*
Case No. 1:14-cv-06228-SAS
LUKOIL Americas Corporation's Response to Pennsylvania's Letter-Brief of March 12, 2015

Dear Judge Scheindlin:

The Commonwealth argues that the state-law claims it filed in state court are governed by the rules of "federal question litigation," and thus, it insists, by "federal common law." Br. 2. That is doubly wrong. This is not a "federal question" case in the relevant sense, and even if it were, state law would still apply. After briefly addressing the Commonwealth's only objection to applying Maryland law in a diversity case, this letter focuses on the core of the party's dispute: whether this is a "federal question" case in which federal common law controls.

## I. MARYLAND LAW CONTROLS A "DIVERSITY" CASE

The Commonwealth's position is not that federal law always applies to jurisdictional veil-piercing. Rather, it is that "*[u]nlike diversity cases*, when determining personal jurisdiction in a case removed to federal court based on federal question jurisdiction, federal law applies." Br. 5 (emphasis added). Thus, on the rules of diversity cases, the parties appear to agree. *See, e.g., In re Ski Train Fire In Kaprun, Austria on Nov. 11, 2000*, 257 F. Supp. 2d 717, 730 (S.D.N.Y. 2003) (Scheindlin, J) (applying state-law piercing analysis in a diversity case in which long-arm statute made "the jurisdictional analyses under state law and federal due process *** the same").

When this case was filed in the Court of Common Pleas of Philadelphia County, Pennsylvania choice-of-law rules unquestionably applied. As LUKOIL Americas Corp. ("LAC") has explained, those rules point toward evaluating the Commonwealth's effort to pierce





the corporate veil of LAC's former subsidiary Getty Petroleum Marketing Inc. ("GPMI") under the laws of the state in which GPMI was incorporated—*i.e.*, Maryland. *See, e.g.*, *In re Sch. Asbestos Litig.*, No. 83-0268, 1993 WL 209719, at *3 (E.D. Pa. June 15, 1993) (explaining, in an asbestos products-liability action, that "[b]ecause SK2 was a New Jersey corporation, we must apply New Jersey law to determine if Dana can be held vicariously liable as an alter-ego of SK2").

The Commonwealth does not dispute that Pennsylvania choice-of-law points toward the law of *a* state of incorporation. *See* Br. 4–5 & n.2. Its only objection is that a Pennsylvania court might apply the law of the state in which *LAC* was incorporated (Delaware) rather than the law of the state in which GPMI was incorporated (Maryland). But, where, as here, a plaintiff seeks to hold a shareholder liable for the alleged wrongs of a corporation it owns, a Pennsylvania court would not do what the Commonwealth suggests it might. *See, e.g.*, *Broderick v. Stephano*, 314 Pa. 408 (1934); *In re Sch. Asbestos Litig.*, 1993 WL 209719, at *3. Indeed, a choice-of-law rule pointing towards the law of the state in which the *shareholder* (LAC) was incorporated would be incomplete: there will always be a state of incorporation for the corporation whose veil is to be pierced, but sometimes the shareholder to be held liable will not be a corporation. Accordingly, the only real point of contention appears to be whether Pennsylvania's choice-of-law rules ceased to apply upon removal.

## II. REMOVAL DID NOT CONVERT THIS ACTION INTO A "FEDERAL QUESTION" CASE

**1.** Defendants removed this case to federal court based on Section 1503 of the Energy Policy Act of 2005. *See* Notice of Removal ¶ 7. That section does not provide a federal cause of action or declare that any matter arises under federal law: it instructs only that certain "[c]laims and legal actions *** may be removed." *Id.* (citation omitted). As this Court has explained, a statute that appears "to do nothing more than grant jurisdiction over a particular class of cases" may provide a *statutory* basis for the exercise of the federal judicial power, but that exercise must still be authorized by Article III of the federal constitution. *In re MTBE Prods. Liab. Litig.*, 674 F. Supp. 2d 494, 500 (S.D.N.Y. 2009) (citation omitted). With that latter requirement in mind, Defendants' notice of removal stressed the existence of minimal diversity among the parties, *see* Notice of Removal ¶ 9, and, separately, explained that the raising of a federal *defense* meant, in the constitutional sense, that the case "ar[ose] under" federal law, *id.* ¶ 10 (citation omitted). The Commonwealth latches on to the latter claim, suggesting that by referring to a federal defense in their notice of removal, Defendants transformed this state-law dispute into a "federal question" case subject to federal law.

**2.** That cannot be correct. In *Mesa v. California*, the Supreme Court considered the effect of a statute that authorizes federal officers to remove actions filed against them in state






court. 489 U.S. 121 (1989). The Supreme Court held that removal under the statute "require[s] the averment of a federal defense." *Id.* at 134. But the Court did not hold that the federal defense required for removal transformed the entire case into a matter of federal common law. Instead, it explained that the removal statute "*merely* serve[d] to overcome the 'well-pleaded complaint' rule which would otherwise preclude removal even if a federal defense were alleged." *Id.* at 136 (emphasis added).

This Court has already explained that removal under the Energy Policy Act does not require the assertion of a federal defense, and so in that sense is unlike the statute at issue in *Mesa*. *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 674 F. Supp. 2d at 504. But that makes LAC's argument even stronger. If a statute that *requires* a federal defense merely overcomes the well-pleaded complaint rule, a statute that *permits* a federal defense should not have the effect of converting state-law litigation into "federal question" litigation. Removal, in short, does not change the nature of the plaintiff's claim or the law applicable to it. *Cf. Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 491 (1983) (recognizing that, under a different statute authorizing removal, "the rule of decision may be provided by state law").

The legislative history, though "unclear" on other points, comports with that conclusion. *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 674 F. Supp. 2d at 503. When Senator Schumer explained his view that "nothing in the language [of Section 1503] will alter the substantive law that courts *** will apply to future claims," Senator Bingaman, the ranking member of the Energy and Natural Resources Committee, confirmed: "I share the understanding of the language expressed by my friend from New York." 151 CONG. REC. S9255 (daily ed. July 28, 2005).

**3.** The Commonwealth's contrary position is the product of conflating *statutory* "federal question" jurisdiction, *e.g.*, *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1085 (1st Cir. 1992) (citing 28 U.S.C. § 1331), with *constitutional* "federal question" jurisdiction. The statutory grant is found in 28 U.S.C. § 1331. In the "vast majority" of cases in which it applies, "federal law creates the cause of action." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986). And while federal piercing law may sometimes apply "where a federal cause of action is asserted," *Lumpkin v. Envirodyne Indus., Inc.*, 933 F.2d 449, 460 (7th Cir. 1991), the calculus is different when a state law cause of action is alleged, *see Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). After all, "it is the source of the right sued upon, and not the ground on which federal jurisdiction over the case is founded, which determines the governing law." *Maternally Yours v. Your Maternity Shop*, 234 F.2d 538, 540 n.1. (2d Cir. 1956); *accord Hamilton v. Roth*, 624 F.2d 1204, 1214 n.7 (3d Cir. 1980).

**4.** The same must be true in the choice-of-law context. In *Klaxon Co. v. Stentor Elec. Mfg. Co.*, the Supreme Court considered whether the familiar *Erie* doctrine required a





federal court, sitting in diversity, to apply the choice-of-law rules of the forum in which it sat. *See* 313 U.S. 487, 496 (1941). The Court squarely held that "[t]he conflict of laws rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts." *Id.* "Any other ruling," it explained, "would do violence to the principle of uniformity within a state upon which the [*Erie*] decision is based." *Id.*

To be sure, *Klaxon* explained that, if federal courts were permitted to invent choice-of-law rules, "the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side." *Id.* But nothing suggests that *Klaxon* approves of "disturb[ing] [the] equal administration of justice" within a state under a different jurisdictional statute that, by its terms, provides only for removal. *Id.*

Instead, as the D.C. Circuit has explained, "[t]he *Erie* doctrine is not simply a rule of convenience for diversity cases"; it is "an acknowledgment of the powers of the several states and of the limited nature of the federal government." *A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1464 (D.C. Cir. 1995). In *Petra Int'l*, the court considered whether a statute providing that a certain type of claim "shall be deemed to arise under the laws of the United States" called for the application of federal common law. *Id.* at 1459 (quoting 12 U.S.C. § 632). It held that "it would make little sense" to apply a federal choice-of-law rule at the expense of "uniformity between the state and federal courts sitting within a given jurisdiction." *Id.* at 1464; *see also id.* at 1463–65 (rationale); *cf. Van Gemert v. Boeing Co.*, 553 F.2d 812, 813 (2d Cir. 1977) (holding, in a federal question case, that for supplemental jurisdiction purposes, "[i]t is the source of the right, not the basis of federal jurisdiction, which determines the controlling law."). Accordingly, in *Petra Int'l* the court concluded, "where the 'federal question' giving rise to federal jurisdiction need not appear upon the face of a well-pleaded complaint, there is no reason for the federal court to conduct any different choice-of-law inquiry than would a court of the forum state in deciding the same issue." 62 F.3d at 1463.[1]

The case for such a rule is even stronger here. The Act under which this case was removed does not deem a plaintiff's claims to "arise under" federal law: it only authorizes removal. Thus, to allow removal under the Act to change applicable law would impermissibly

---

[1] Although *Petra Int'l* purported to diverge from Second Circuit law concerning the particular federal statute at issue in that case, *see* 62 F.3d at 1465, the Second Circuit has since retreated from its earlier approach, *see Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 5 & n.3, 12 (2d Cir. 1996). The Commonwealth's passing reliance on *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 89 (2d Cir. 1999), is not to the contrary. That case concerned an effort to enforce a federal right to a litigation stay arising from a federal treaty, and statutory jurisdiction was not limited to cases of removal. Regardless, *Smith* is no longer good law. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009).






allow *defendants* "to gain the benefits of the laws of another jurisdiction" over plaintiffs' objections. *Van Dusen v. Barrack*, 376 U.S. 612, 638 (1964). The fact that here it is a defendant that opposes a change in law should not affect the general rule.[2]

**5.** Finally, even if federal law did apply, it would incorporate state law (and state choice-of-law). Federal common law can be applied instead of a state rule only in the "'few and restricted' *** situations" in which "there is a 'significant conflict between some federal policy or interest and the use of state law.'" *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 87–89 (1994) (citations omitted). An asserted need for "[u]niformity" is of little import in this case, and it is "danger[ous]" to suggest that "tort liability" should be governed by judge-made law. *Id.* at 88–89. The Commonwealth's plea for uniformity (Br. 5) rings particularly hollow because the basis for its attempted exercise of jurisdiction is a federal rule that is not nationally uniform: it expressly conditions federal jurisdiction on state law. *See* FED. R. CIV. P. 4(k)(1)(A) (authorizing the exercise of "jurisdiction over a defendant *** who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located").

Indeed, even where federal law provides a cause of action, courts have fractured over whether "in enforcing [an environmental statute's] indirect liability, courts should borrow state law, or instead apply a federal common law of veil piercing." *United States v. Bestfoods*, 524 U.S. 51, 63 n.9 (1998); *cf. Carlisle*, 556 U.S. at 630 (holding that state veil-piercing law applied to "substantive federal law regarding the enforceability of arbitration agreements"). In any event, "[s]ince state, rather than federal, substantive law is at issue" in this case, "there is no need for a uniform federal rule." *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001).[3]

---

[2] By contrast, the Puerto Rico case on which Pennsylvania relies included three federal-law causes of action, *see* Third Am. Compl. at 41–48, *Commonwealth of P.R. v. Shell Oil Co.*, No. 07-cv-10470-SAS, and was filed in—not removed to—federal court, *see* Compl., *Commonwealth of Puerto Rico v. Shell Oil Company*, No. 3:07-cv-01505-CCC. Moreover, in that case, this Court refused to pierce the corporate veil for jurisdictional purposes. Thus, while the case may mean that satisfaction of the federal standard is *necessary* for piercing to be appropriate, it cannot mean that satisfying a federal standard is *sufficient* even when a stricter state-law standard is in play. In that sense, the case does not speak to choice of law at all.

[3] Consistent with the Court's instructions at the recent March 5 hearing, the current briefing focuses on whether Maryland law or federal common law controls—not the proper interpretation and application of federal common law. Accordingly, despite the Commonwealth's suggestion to the contrary (Br. 4), choosing between the interpretations of the Second and Third Circuits is premature. If this Court holds that federal common law applies, LAC intends to argue that, even under that common law, piercing (and the broad discovery the Commonwealth seeks) would be inappropriate.






## III. THE COMMONWEALTH MISINTERPRETS *KEETON*

The Commonwealth separately relies on *Keeton v. Hustler Magazine, Inc.* for the proposition that "[t]he issue is personal jurisdiction, not choice of law." 465 U.S. 770, 778 (1984) (quoting *Hanson v. Denckla*, 357 U.S. 235, 254 (1958)). That statement will not bear the weight the Commonwealth foists upon it.

In *Keeton*, a plaintiff filed a defamation suit in the only state in which the statute of limitations on such a claim had not run, and in which she could recover damages for nationwide harm. *Id.* at 773. A lower court refused to exercise personal jurisdiction, concluding "that it would be 'unfair' to assert jurisdiction over" the defendant. *Id.* The Supreme Court reversed, holding that "any potential unfairness in applying New Hampshire's statute of limitations to all aspects of this nationwide suit has nothing to do with the jurisdiction of the Court to adjudicate the claims." *Id.* at 778. But, in reaching that conclusion, the Supreme Court did not simply rely on some categorical proposition that because "[t]he issue is personal jurisdiction, not choice of law," choice of law could *never* be addressed before personal jurisdiction. *Id.* (citation omitted). Instead, it explained that "the chance duration of statutes of limitations in nonforum jurisdictions has nothing to do with the contacts among respondent, New Hampshire, and this multistate libel action," *id.* at 779, a reference to its earlier statement that "[i]n judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation,'" *id.* at 775 (citation omitted).

This case is, of course, quite different. Here, determining whether LAC may be charged with the contacts of GPMI goes to the core question of the relationship between the defendant (LAC) and the forum (Pennsylvania). And, as the Commonwealth implicitly acknowledges by claiming over and over again that this is a "federal question" case, it is impossible to determine whether LAC can be charged with GPMI's contacts without first determining whose law supplies the answer to that question. The facts here have even less in common with *Hanson v. Denckla*, in which the Court's distinction between choice of law and personal jurisdiction was an elaboration on the principle that a forum "does not acquire *** jurisdiction by being the 'center of gravity' of the controversy, or the most convenient location for litigation." 357 U.S. at 254. Those cases are, in short, beside the point. *See, e.g., Mega Tech Int'l Corp. v. Al-Saghyir Establishment*, No. 96 CIV 8711 LBS, 1999 WL 269896, at *8 (S.D.N.Y. May 3, 1999) (deciding whether to pierce the corporate veil, for jurisdictional purposes, based on the law of the state in which the defendant was incorporated); *Inter-Med, Inc. v. ASI Med., Inc.*, No. 09-CV-383, 2010 WL 3063014, at *7 (E.D. Wis. Aug. 2, 2010) (same); *United States v. Kolon Indus., Inc.*, 926 F. Supp. 2d 794, 814–15 (E.D. Va. 2013) (same concerning service).





## IV. LAC DOES NOT CONTEND THAT FEDERAL LAW IS IRRELEVANT

Federal law is undoubtedly relevant to the resolution of this controversy: for example, whether LAC has a valid preemption defense is, of course, a question concerning the scope of federal law. But the fact that *a* federal question is at issue does not mean that, upon removal, *only* federal questions are at issue. The Commonwealth would surely bristle at the suggestion that federal common law determines the merits of its state-law claims in this action. Just as federal law does not set out the elements of those claims, it does not determine whether LAC may be required to account for the alleged acts of a former subsidiary. Simply put, in a state-law action, state veil-piercing law determines whether two corporations should be treated as one. That does not change upon removal.

Likewise, no matter whose law controls the veil-piercing inquiry, any exercise of jurisdiction must still comport with the federal constitution's guarantee of due process. LAC maintains, for example, that any exercise of jurisdiction based on alleged 2009 conduct unrelated to using MTBE or putting MTBE gasoline into the stream of commerce would violate due process, particularly an exercise based on a theory of specific (*i.e.*, arising-out-of) jurisdiction. As that point is outside the scope of the briefing requested, LAC merely notes it here to clarify its position on the applicability of federal law.[4]

* * *

In sum, when filed, this was not a "federal question" case, and removal did not make it one. The state law that would determine whether LAC is responsible for GPMI's alleged torts also determines whether LAC is responsible for GPMI's alleged contacts—subject, as is federal piercing law, to the constitutional due process guarantee.

Sincerely,

James P. Tuite

James P. Tuite

cc: All Counsel of Record via LNF&S

---

[4] Likewise, LAC maintains that, under federal law concerning discovery, the meager and wholly conclusory allegations in the Commonwealth's complaint are inadequate to justify compelled discovery.