Law Offices of
# MILLER & AXLINE
A Professional Corporation

| | |
|---|---|
| DUANE C. MILLER | TRACEY L. O'REILLY |
| MICHAEL AXLINE | DANIEL BOONE |
| | JUSTIN MASSEY |
| | BRYAN BARNHART |
| | DAVE E. BLUM |
| | MOLLY MCGINLEY HAN |

March 24, 2015

**VIA CM-ECF AND EMAIL**

The Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street, Room 1620
New York, New York 10007

   Re: *In re MTBE Products Liability Litigation,* MDL No. 1358
      *Commonwealth of Pennsylvania v. Exxon Mobil Corp.,* No. 1:14-cv-06228-SAS

Dear Judge Scheindlin:

  Lukoil Americas Corporation's ("LAC") response to the Commonwealth's March 12, 2015, letter brief on personal jurisdiction argues that the Court is limited to applying Maryland veil piercing law when determining whether the Court has personal jurisdiction over LAC. Resp. at 1-2. LAC is simply incorrect. This Court, like all federal courts deciding personal jurisdiction in federal question cases, should apply federal law, including to veil piercing issues.

**I. Federal Law Determines Whether This Court Has Personal Jurisdiction Over LAC.**

  Personal jurisdiction in federal question cases is determined under federal law. LAC's Motion to Dismiss for Lack of Personal Jurisdiction ("Motion to Dismiss") asserted exactly that: "Federal courts, including the EDPA, may exercise personal jurisdiction over a defendant only if authorized to do so by federal law." Mot. at 5; *see also id.* at 6 & n. 4.

  LAC back-pedals from that position, attempting to limit the Court to LAC's favored forum: Maryland. LAC argues that removal "did not convert this action into a 'federal question' case." Resp. at 1. Yet, that is exactly what LAC claimed in its Notice of Removal: "Plaintiff's allegations . . . raise questions of federal law, namely . . . the Energy Policy Act." Not. of Rem. at ¶ 10; *see also id.* at ¶¶ 7-10 (emphasizing the Energy Policy Act as the basis for removal).

  LAC cites *Mesa v. California,* 489 U.S. 121 (1989), for the proposition that removal under section 1503 of the Energy Policy Act merely created jurisdiction, and did not transform this into a "federal question" case. Resp. at 1-2. LAC also cites the legislative history of section 1503 and this Court's statement in *In Re MTBE,* 674 F. Supp. 2d 494, 504

Hon. Shira A. Scheindlin
March 24, 2015
Page 2

(S.D.N.Y. 2009), that removal under section 1503 does not require a federal defense, to argue removal "does not change the nature of the plaintiff's claim or the law applicable to it." *Id.* at 3.

The nature of plaintiff's claim, however, does not dictate the law to apply in determining whether this Court has personal jurisdiction over LAC. This argument ignores the distinction between jurisdiction and liability and contradicts LAC's Notice of Removal and Motion to Dismiss, both of which argue that federal law governs the jurisdictional analysis. That analysis does not depend, as LAC now argues (Resp. at 5, n. 2), on where the suit is initially filed. Federal personal jurisdiction in federal question actions is determined by federal law.

LAC accuses the Commonwealth of "conflating" statutory and constitutional federal question jurisdiction (Resp. at 3), but it is *LAC* that conflates choice of law on liability with personal jurisdiction. "'The issue is personal jurisdiction, not choice of law.'" *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770 (1984) (quoting *Hanson v. Denckla*, 357 U.S. 235, 254 (1958)).[1]

It is true that in the diversity cases LAC cites (including *In Re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 257 F. Supp.2d 717 (S.D.N.Y. 2003)), the courts applied state veil piercing law. In diversity cases, however, the role of a federal court is to "stand in" for state courts to assure neutrality as between residents of different states. *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 330 n.1 (5th Cir. 1982). Here, in contrast, Congress decided that federal courts should be available to resolve certain disputes involving MTBE. Congress recognized that MTBE claims, regardless of where filed, have common elements because defendants marketed MTBE nationally and MTBE contaminated groundwater nationwide. To that end, this MDL, a central federal forum for resolving MTBE claims, had already been established by the JPML when Congress enacted section 1503 of the Energy Policy Act. A uniform, federal approach to personal jurisdiction in MTBE cases is consistent with section 1503.

LAC next argues that even if the Court agrees that this is a federal question case, "state law would still apply". Resp. at 1. There are several problems with this argument. First, LAC relies on a case involving veil piercing for liability purposes, not personal jurisdiction purposes. Resp. at 2 (citing *In Re Sch. Asbestos Litig.* No. 83-0268, 1993 WL 209719 (E.D. PA. June 15, 1993). That case is inapposite under *Keeton*. Second, LAC removed this case to federal court, and then to the MDL, to take advantage of this Court's federal powers and the benefits of a

---

[1] Pennsylvania courts and the Third Circuit recognize the distinction between "alter ego jurisdiction" and "alter ego liability." *See, e.g., Joseph Nazarewych, Adm. v. Bell Asbestos Mines, Ltd.*, 1989 WL 817136, 19 Phila.Co.Rptr. 429, 442 (Ct. Comm. Pleas Phila. 1989) (distinguishing "*alter ego jurisdiction*" and "*alter ego liability*" and noting a "completely different legal standard and a different burden of proof applies to the latter issue."); *see also Culbreth v. Amosa (PTY) Ltd.*, 898 F.2d 13, 15 (3d Cir. 1990) (distinguishing between sufficiency of the evidence to establish alter ego jurisdiction versus liability).

uniform federal MDL proceeding. Third, Pennsylvania's long arm statute nowhere points to Maryland law. 42 Pa.C.S.A. §5322. As this Court has held, where the state long arm statute is co-extensive with the 14th Amendment, as it is in Pennsylvania, the U.S. Constitution "solely" governs personal jurisdiction. *In Re Ski Train Fire, supra,* 343 F. Supp.2d at 213.

## II. In Determining Whether There Is Jurisdiction, This Court Should Apply *Keeton*.

LAC argues that the Commonwealth, in citing *Keeton*, glosses over the importance of analyzing the relationship between defendant, the forum and the litigation. To the contrary, the constitutional fairness of haling a defendant into court in another state is the sole consideration under federal common law and the Commonwealth's long arm statute. *See In Re Ski Train Fire, supra,* 343 F. Supp.2d at 213 ("the sole question is whether the exercise of personal jurisdiction in Texas would offend the Due Process Clause of the Fourteenth Amendment"). As *Keeton* put it, "the State's 'interest' in adjudicating the dispute is a part of the Fourteenth Amendment due process equation." *Keeton,* 465 U.S. at 776. Although LAC argues that the Court should leave Pennsylvania's interest out of the equation entirely, federal law requires that several factors be considered in the due process equation, including the interests of Pennsylvania.

The road map *Keeton* created for the inquiry into personal jurisdiction is not ambiguous. In contrast to the jurisdictional analysis, the application of state law to damages claims "presents itself in the course of litigation only after jurisdiction over respondent is established." *Id.* LAC's argument that the Court must *first* choose what law to apply in adjudicating those claims, and use that law to decide whether it has personal jurisdiction, is contrary to both *Keeton* and *Hanson*.

LAC asserts that *Keeton* and *Hanson* are "beside the point" (Resp. at 6), but in doing so contradicts its Motion to Dismiss. Motion to Dismiss at 6 (arguing that the single inquiry is "whether a Pennsylvania court could *constitutionally* exercise jurisdiction over LAC"). Having relied on both *Keeton* and *Hanson* in its Motion to Dismiss (*id.* at 7, 12), LAC now insists that single constitutional inquiry be answered under Maryland law.

LAC's authority for its new position that state law for liability veil piercing must be used for jurisdictional veil piercing, is unpersuasive. In *Inter-Med, Inc. v. ASI Medical, Inc.*, No. 09-CV-383, 2010 WL 3063014 (E.D.Wis. Aug. 2, 2010), the district court began its jurisdictional analysis under Federal Circuit law, deciding that Wisconsin's long arm statute is "coextensive with the limits of federal due process." *Id.* at *4. However, in considering the issue of veil piercing, the court relied on cases that ultimately rely on *IDS Life Ins. Co. v. SunAmerica Life. Ins. Co.*, 136 F.3d 537, 540. (7th Cir. 1998). Those cases are inapt because *IDS* held only that no alter ego allegations brought the matter under Illinois' long arm statute: "Although the complaint does not allege that SunAmerica itself committed any of the tortious acts that are charged, the plaintiffs argue that all they need allege is that SunAmerica controlled, directed, and supervised the three subsidiaries that actually did the acts. The complaint does not allege these things either, however." *Id.* Moreover, the primary authority on which *IDS* relied cites Illinois law rather than

Hon. Shira A. Scheindlin
March 24, 2015
Page 4

7th Circuit law because it was a *diversity case*, not a federal question case. *Id.* (citing *Hystro Products, Inc. v. MNP Corp.*, 18 F.3d 1384, 1388–92 (7th Cir.1994)).

LAC's reliance on another district court case, *Mega Tech Int'l Corp. v. Al-Sagahyir Establishment*, No. 96 CIV 8711 LBS, 1999 WL 269896 (S.D.N.Y. May 3, 1999), is equally unpersuasive. The district court first reviewed a subsection of New York's long-arm statute. Finding it satisfied as to one defendant, the court quickly moved to the federal due process analysis under federal law. *Id.* at *6. As to a different defendant, however, the district court again noted deficient piercing allegations: "Even assuming that New York law did govern, which it does not, Plaintiff's failure to plead any facts from which we might be able to infer domination or disregard of the corporate form is fatal to its claim." *Id.* at *8.

Finally, both of LAC's cases, *Inter Med* and *Mega Tech*, cite *Fletcher v. Atex, Inc.*, 68 F.3d 1451(2d Cir. 1995) in considering personal jurisdiction. But *Fletcher* was, again, a diversity case that involved New York's choice of law rules for *liability* veil piercing: "[T]he law of the state of incorporation determines when the corporate form will be disregarded and *liability* will be imposed on shareholders." *Fletcher,* 68 F.3d at 1456 (internal quotes and citations omitted) (emphasis added). As noted above, the instant case is not a diversity case and the inquiry here is about jurisdiction, not liability. *Keeton, supra,* 465 U.S. at 778.

### III. Maryland Corporate Law Should Not Trump Federal or Pennsylvania Interests In Resolving Claims That Arise in Pennsylvania.

It is telling that LAC's Motion to Dismiss never suggested that Maryland law controls or that Maryland has any interest in determining whether LAC can be "haled into [Pennsylvania] court based on the alleged conduct" of GPMI. Motion to Dismiss at 11-14. In fact, LAC cited no Maryland *or* Pennsylvania cases. Assuming for the sake of argument that there is some substantive choice of law analysis to be made at this point in this case, LAC ignores the interests of both federal courts and Pennsylvania courts in determining personal jurisdiction.

To determine jurisdiction, federal courts examine the true nature of the defendant and its conduct in the state where the injury occurred. While the jurisdictional analysis has some overlap with the liability criteria considered in a veil piercing analysis, the approach is a practical one. *See, e.g., Foster v. Berwind Corp.*, No. 90-0857, 1991 WL 21666 (E.D.Pa. Feb. 13, 1991) ("'under Pennsylvania choice-of-law principles, the place having the most interest in the problem and which is the most intimately concerned with the outcome is the forum whose law should be applied.'" (Citation omitted.)); *Barber v. Pittsburgh Corning Corp.*, 317 Pa.Super. 285, 299-300 (1983) (courts should not "blindly exalt form over substance" when choosing jurisdictional law).

LAC incorrectly presumes that Pennsylvania courts look only at the place of incorporation of the subsidiary when determining choice of law. That approach is "misguided." *Wheeling-Pittsburgh Steel Corp. v. Intersteel, Inc.*, 758 F.Supp. 1054, 1057 (W.D.Pa. 1990).

Hon. Shira A. Scheindlin
March 24, 2015
Page 5

When choosing the law to apply under the Pennsylvania long arm statute, courts are not overly concerned with the "technical requirements for the formation of a corporate entity." *Id.*[2] As stated by the *Wheeling-Pittsburgh* court:

> A corporation that wishes to do business in the State of Pennsylvania and avail itself of the laws of Pennsylvania is certainly aware that Pennsylvania has an acute interest in any corporation that intends to use the corporate entity to defraud or cause injustice to citizens or corporations within Pennsylvania. In the determination of whether one is acting as an alter ego of a corporation, the Court is weighing the conduct of the corporation and those behind the corporation. The Court is not looking at the technical requirements for the formation of a corporate entity. It is black letter law that incorporation is a shield to personal liability. One attempting to use such shield must be aware of the conduct necessary to maintain its protection in every forum in which it plans to do business.

*Id.* at 1057-58.

### IV. Conclusion

The Commonwealth respectfully asks this Court to follow its precedent in this MDL (*In re MTBE, supra*, 959 F.Supp.2d 476 at 488) and apply federal common law from the Circuit Court of the transferor court (Third Circuit) to the veil piercing aspect of this Court's determination of whether it has personal jurisdiction over LAC.

Respectfully Submitted,

Michael Axline
Counsel for Plaintiffs

MA/kh
cc: All counsel via LNF&S

---

[2] LAC narrowly focuses on GPMI's state of incorporation, arguing that protecting shareholders' liability expectations is the only consideration, even in the personal jurisdiction context, but LAC has no such expectation here. LAC has been GPMI's sole shareholder since 2001 (Ex. H, Dec. of DeLaurentis, LAC's Motion to Dismiss) and took the company private. LAC has no evidence it expected any state law to apply other than that of the state where its businesses operated – which was not in Maryland. LAC and GPMI had their principal places of business in New York and, *by their choice*, their service station leases, sales agreements and supply contracts are expressly governed by New York law. Additionally, Pennsylvania is where the alleged torts occurred. In short, Pennsylvania and New York have greater interests than Maryland in forcing LAC to answer for its misuse of GPMI's corporate form.