USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___3/30/15___

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------ X
           :
**IN RE: METHYL TERTIARY BUTYL**  :
**ETHER ("MTBE") PRODUCTS**    :
**LIABILITY LITIGATION**        :
------------------------------------------------ :
           :
**This document relates to:**      :
           :
*Commonwealth of Pennsylvania v. Exxon* :
*Mobil Corporation, et al.*, 14 Civ. 6228  :
           :
           :
------------------------------------------------ X

**MEMORANDUM OPINION**
**AND ORDER**

**Master File No. 1:00-1898**
**MDL 1358 (SAS)**
**M21-88**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

This is a consolidated multi-district litigation ("MDL") relating to

contamination – actual or threatened – of groundwater from various defendants'

use of the gasoline additive methyl tertiary butyl ether ("MTBE") and/or tertiary

butyl alcohol, a product formed by the breakdown of MTBE in water.  On

December 23, 2014, defendant Lukoil Americas Corporation ("LAC") moved to

dismiss the Commonwealth of Pennsylvania's (the "Commonwealth") complaint

for lack of personal jurisdiction.[1]

The overarching question presented in that motion is straightforward:

---

[1]     *See* Memorandum of Law in Support of Lukoil Americas
Corporation's Motion to Dismiss for Lack of Personal Jurisdiction, Dkt. 86.

can the Court exercise personal jurisdiction over LAC in this action?  Arguing in the affirmative, the Commonwealth intends to prove that at all relevant times, LAC was acting through its now-bankrupt subsidiary Getty Petroleum Marketing Inc. ("GPMI"), such that the Court should pierce the corporate veil between the two entities to establish personal jurisdiction over LAC (the "Veil-Piercing Theory"). In support of the Veil-Piercing Theory, the Commonwealth alleges that GPMI had significant contacts with Pennsylvania, where this action was originally filed.[2] Therefore, at a January 15, 2015 status conference, I directed LAC and the Commonwealth to engage in limited jurisdictional discovery relating to the Veil-Piercing Theory.[3]

Jurisdictional discovery is presently on hold because the parties dispute the applicable legal standard for veil-piercing, which necessarily bears on the sufficiency of LAC's responses to the Commonwealth's discovery requests.  At a March 5, 2015 conference, counsel for LAC asserted that the laws of Maryland, where GPMI was incorporated, govern the Veil-Piercing Theory.[4]  The Commonwealth countered that the federal common law of the Third Circuit should

---

[2]      *See* 1/15/15 Conference Transcript, Dkt. 4166 (Master File No. 00 Civ. 1898).

[3]      *See id.*

[4]      *See* 3/5/15 Conference Transcript, Dkt. 133.

2

apply.[5]  I then directed the parties to brief the choice-of-law issue, which is now fully submitted.[6]  For the following reasons, I conclude that Maryland law governs the Veil-Piercing Theory.

## II.    DISCUSSION

The central question before the Court – whether Maryland law or Third Circuit law applies to the Veil-Piercing Theory – requires the resolution of two subsidiary issues.  *First*, I must decide whether the appropriate source of law for evaluating jurisdictional veil-piercing in this action is *federal common law* or *the law of the forum state* (here, Pennsylvania).  This inquiry is unusually complex because in this case, where the Commonwealth has brought only *state law* claims, *federal* jurisdiction is premised neither on diversity of citizenship nor a violation of a specific federal statute, but instead on a federal statute providing for removal on the basis of a *federal defense*.  However, deciding between federal common law and state law is not the end of the matter.  *Second*, if I determine that Pennsylvania law applies, I must then review Pennsylvania's choice-of-law principles to determine whether the laws of Maryland, as opposed to those of Delaware,

---

[5]    *See id.*

[6]    *See* 3/12/15 Letter from Michael Axline, counsel for the Commonwealth, Dkt. 132 ("Opening Br."); 3/19/15 Letter from James P. Tuite, counsel for LAC, Dkt. 135 ("Opp. Br."); 3/24/15 Letter from Michael Axline, Dkt. 139 ("Reply Br.").

Pennsylvania, or New York, govern the Veil-Piecing Theory.

### A.     Federal Common Law Does Not Apply to the Veil-Piercing Theory

The main source of disagreement between the parties is whether this action's removal from Pennsylvania state court to federal court pursuant to Section 1503 of the Energy Policy Act of 2005 (the "EPA") essentially converted a state-law dispute into a federal question case requiring the application of federal common law to the jurisdictional analysis.[7]  Because the Notice of Removal in this action states that the case "arises under" federal law in the context of a potential federal preemption defense, the Commonwealth urges this Court to apply a federal common law standard of corporate separateness to the jurisdictional question.[8] LAC contends that, in the absence of any federal causes of action here, federal jurisdiction is premised on nothing more than a possible federal defense; as such, the action does not raise a federal question.

The Commonwealth dismisses the importance of LAC's distinction between traditional federal question cases and the instant federal case by relying heavily on *Keeton v. Hustler Magazine, Inc.* for a distinction of its own: that in all

---

[7]     *See generally* Opening Br.; Opp. Br; Reply Br.

[8]     *See* Opening Br. at 2.

4

"federal question" cases, personal jurisdiction must be evaluated separately from the question of a party's liability.[9]  As such, the Commonwealth contends that choice-of-law rules may be relevant to liability issues, but never to personal jurisdiction, which is always governed by federal law and decided *before* analyzing liability.  To fully comprehend the Commonwealth's position – and LAC's objection to it – it is helpful to review the facts and holding of *Keeton*.

    1.    ***Keeton v. Hustler Magazine***

In *Keeton*, plaintiff brought a defamation claim in federal court in New Hampshire – the only state in which (1) the statute of limitations had not run and (2) she could recover damages for nationwide harm.[10]  Affirming the trial court's ruling, the First Circuit refused to exercise personal jurisdiction, noting that to do so would be "unfair" to the defendant.[11]  The Supreme Court reversed, holding that "any potential unfairness in applying New Hampshire's statute of limitations to all aspects of this nationwide suit has nothing to do with the jurisdiction of the Court to adjudicate the claims."[12]  In so holding, the Supreme

---

[9]    *See id.* at 2-3 (citing 465 U.S. 770 (1984)).

[10]    *See* 465 U.S. at 773.

[11]    *Id.*

[12]    *Id.* at 778.

Court cautioned against choice-of-law concerns "complicat[ing] or distort[ing] the jurisdictional inquiry," explaining that "the chance duration of statutes of limitations in nonforum jurisdictions has nothing to do with the contacts among respondent, New Hampshire, and this multistate libel action."[13]

From *Keeton*, the Commonwealth leaps to the conclusion that choice-of-law analysis is irrelevant to the personal jurisdiction inquiry in a federal question case, which is decided under a federal law standard before any state-law liability issues are examined.[14]  Therefore, in analyzing veil-piercing rules in federal question cases when *personal jurisdiction is at issue*, state choice-of-law concerns cannot apply at the threshold – at most, they can inform the veil-piercing analysis relating to *liability* for any state-law claims at a later stage.[15]

However, the Commonwealth's interpretation of *Keeton* is a distortion of the Supreme Court's actual holding:  that "the chance duration of statutes of limitations in nonforum jurisdictions has nothing to do with the contacts among"

_____

[13]     *Id.* at 778-79.

[14]     *See* Opening Br. at 2-3.  The Commonwealth recognizes that resolving questions of personal jurisdiction in federal court often implicates state law elements – namely, a state's long-arm statute – but insists that those elements are unrelated to veil-piercing and merely folded into the governing federal law. *See id.* at 3.

[15]     *See id.* at 2.

the parties.[16]  As LAC points out, the Commonwealth overlooks important language the Supreme Court relied on in deciding *Keeton*, which is especially relevant here:  "[i]n judging minimum contacts, a court properly focuses on the relationship among the defendant, the forum, and the litigation."[17]  In this case, the relationship between LAC and GPMI has *everything* to do with the defendants' contacts with the forum state.  Analyzing the nature of that relationship requires a determination of the law governing veil-piercing.  In short, *Keeton* does not stand for the categorical proposition that choice of law cannot be addressed in concert with personal jurisdiction.[18]

## 2.  Pennsylvania Choice-of Law Rules Apply

Having concluded that choice-of-law considerations are relevant at this stage, the next question is whether the laws of the forum state or federal common law apply to this non-diversity *federal* case.  To begin, this is not a federal question case – the Commonwealth asserts only state-law claims.  As such,

---

[16]     465 U.S. at 778.  *See also* Opp. Br. at 6.

[17]     *Keeton*, 465 U.S. at 775.

[18]     Indeed, other courts have conducted a choice-of-law analysis to guide a personal jurisdiction inquiry while relying on *Keeton* for other propositions in the *same opinion.  See, e.g.*, *In re DES Cases*, 789 F. Supp. 552, 568-69 (E.D.N.Y. 1992) (Weinstein, J.) (conducting choice-of-law analysis before examining personal jurisdiction, and later relying on *Keeton* in evaluating purposeful availment).

the *Erie* Doctrine requires federal courts to defer to the forum state's choice-of-law rules.  LAC reaches this conclusion through a complex but carefully-structured argument premised on the Supreme Court's holding in *Mesa v. California*:  a statute that permits or requires a federal defense does not have the effect of transforming a state-law case into a federal question one.[19]

Where a claim arises under state law, and the statute authorizing removal "merely serves to overcome the 'well-pleaded complaint' rule which would otherwise preclude removal even if a federal defense were alleged," a case retains its state-law identity.[20]  As LAC observes, the "Commonwealth's contrary position is the product of conflating *statutory* "federal question" jurisdiction . . . with *constitutional* federal question jurisdiction."[21]  This difference is crucial:

----

[19]     *See* Opp. Br. at 2-3 (citing 489 U.S. 121 (1989)).

[20]     *Mesa*, 489 U.S. at 136.  It is important to note that this case differs from *In re MTBE*, 959 F. Supp.2d 476, 488 (S.D.N.Y. 2013), a Puerto Rico MTBE MDL case in which the Commonwealth claims I applied federal common law to veil-piercing in a personal jurisdiction challenge.  *See* Opening Br. at 1.  In that case, some of the underlying claims were in fact federal-law causes of action, and the case was *filed in*, not *removed to*, federal court.  *See* Opp. Br. at 5 n.2.  To this end, I have stressed the importance of *Mesa* in a different MTBE opinion in this MDL:  "'Pure jurisdictional statutes which seek to do nothing more than grant jurisdiction over a particular class of cases cannot support Article III arising under jurisdiction.'"  *In re MTBE*, 674 F. Supp. 2d 494, 500 (S.D.N.Y. 2009) (quoting *Mesa*, 489 U.S. at 136).

[21]     Opp. Br. at 3 (emphasis in original).

where a federal cause of action is asserted, federal common law may apply to veil-piercing, but not when the "source of the right sued upon" is found in state law.[22] It is for this reason courts are warned about applying federal common law, even when there is a sufficient legal justification for doing so, absent a "significant conflict between some federal policy or interest and the use of state law."[23]

Further, it is well-established, and logically flows from *Mesa*, that "[t]he Erie case and the Supreme Court decisions following it apply in federal question cases as well [as diversity cases]."[24]  The *Erie* doctrine also permeates choice-of-law rules.[25]  For these reasons, as LAC stresses, the District of Columbia Circuit Court of Appeals has held that "where the 'federal question' giving rise to

---

[22]      *Maternally Yours v. Your Maternity Shop*, 234 F. 2d 538, 540 n.1 (2d Cir. 1956).  *Accord Hamilton v. Roth*, 624 F.2d 1204, 1214 n.7 (3d Cir. 1980).  *Cf. United States v. Dakota Wings Corp.*, No. 04 Civ. 4002, 2005 WL 2218881, at *2 (D.S.D. Sept. 12, 2005) (applying federal common law veil-piercing standard to lawsuit predicated on the violation of a federal statute).  As noted above, this case was removed to federal court pursuant to Section 1503 of the EPA, which does not provide a federal cause of action or declare that any matter arises under federal law.  *See* Opp. Br. at 2 (noting that Section 1503 provides only that certain "[c]laims and legal actions . . . may be removed").

[23]      *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 87 (1994) (quotations and citations omitted).

[24]      19 Charles A. Wright, et al., Federal Practice and Procedure § 4520.

[25]      *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (noting that conflict of law rules applied by a federal court, under *Erie*, must "conform to those prevailing in [] state courts"); Opp Br. at 4.

9

federal jurisdiction need not appear upon the face of a well-pleaded complaint, there is no reason for the federal court to conduct any different choice-of-law inquiry than would a court of the forum state in deciding the same issue."[26] Accordingly, I find that Pennsylvania's choice-of-law rules apply to the Veil-Piercing Theory.

### B.    Under Pennsylvania Choice-of-Law Rules, Maryland Law Applies to the Veil-Piercing Theory

Under Pennsylvania law, "the court having jurisdiction of the action or proceeding shall apply the law of the jurisdiction under which the foreign domiciliary corporation was incorporated."[27]  Thus, the important question is whether the relevant state of incorporation is GPMI's (Maryland) or LAC's

---

[26]    *A.I. Trade Fin.*, *Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1463 (D.C. Cir. 1995); Opp. Br. at 4.  It is not even clear that federal common law prevails over state law for jurisdictional veil-piercing in all standard federal question cases under 28 U.S.C. § 1331.  *See Ritchie Capital Mgmt., L.L.C. v. Coventry First LLC*, No. 07 Civ. 3494, 2007 WL 2044656 (S.D.N.Y. July 17, 2007) (relying on New York choice-of-law rules in conducting a jurisdictional veil-piercing inquiry to ancillary breach of contract claims where federal jurisdiction was premised on federal RICO claims).  This conforms with the long line of precedent establishing that "source of the right sued upon" should be the paramount consideration in deciding the governing law.  *Maternally Yours*, 234 F.2d at 540 n.1.  *See also supra* note 22.

[27]    Pa. Cons. Stat. § 4145(a).

(Delaware).[28]  In the veil-piercing context, Pennsylvania courts apply "the

corporate law of the *targeted entity's* state of incorporation," which is defined in

most cases as the defendant's subsidiary.[29]

Here, the targeted entity is GPMI, which was incorporated in

Maryland.  Therefore, Maryland law governs the Veil-Piercing Theory.

## III.   CONCLUSION

For the foregoing reasons, Maryland law governs the Veil-Piercing

Theory.  The Court directs the Commonwealth and LAC to meet and confer, in

light of this ruling, about outstanding jurisdictional discovery requests and, if

necessary, to contact chambers to schedule a teleconference regarding any

---

[28]     The Commonwealth argues that New York (the primary place of
business of GPMI and LAC) or Pennsylvania (the forum state) may have a greater
interest in supplying the relevant law.  *See* Reply Br. at 4-5 (citing
*Wheeling Pittsburgh Steel Corp. v. Intersteel, Inc.*, 758 F. Supp. 1054, 1057 (W.D.
Pa. 1990)).  But the interest analysis conducted in *Wheeling Pittsburgh* amounts to
unsupported dicta – the court applied Pennsylvania law instead of the law of
Georgia – defendant's state of incorporation – because there was "no conflict
between the alter ego laws of the State of Georgia and that of Pennsylvania."
*Wheeling Pittsburgh Steel Corp.*, 758 F. Supp. at 1057.  The other case on which
the Commonwealth relies, *Foster v. Berwind Corp.*, is also distinguishable.  *See*
No. 90 Civ. 0857, 1991 WL 21666 (E.D. Pa. Feb. 13, 1991) (applying
Pennsylvania veil-piercing law with respect to a Bermuda corporation because its
"exempt" status prevented it from actually doing business in Bermuda).

[29]     *Panthera Rail Car LLC v. Kasgro Rail Corp.*, No. 13 Civ. 679, 2013
WL 4500468, at *6 (W.D. Pa. Aug. 21, 2013) (emphasis added) (citing *In re
School. Asbestos Litig.*, No. 83 Civ. 0268, 1993 WL 209719, at *3 (E.D. Pa. June
15, 1993)).

remaining objections.

SO ORDERED:

_____

Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              March 30, 2015

12

**- Appearances -**

**Liaison Counsel for Plaintiffs:**

Robin Greenwald, Esq.
Robert Gordon, Esq.
William A. Walsh, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
(212) 558-5500

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
Lisa A. Gerson, Esq.
Stephen J. Riccardulli, Esq.
McDermott Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
(212) 547-5583

**Counsel for the Commonwealth:**

Michael Axline, Esq.
Miller, Axline, & Sawyer
1050 Fulton Avenue, Suite 10
Sacramento, CA 95825
(916) 488-6688

**Counsel for LAC:**

James P. Tuite, Esq.
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 997-4406

13