

Boston  Brussels  Chicago  Düsseldorf  Frankfurt  Houston  London  Los Angeles  Miami
Milan  Munich  New York  Orange County  Paris  Rome  Seoul  Silicon Valley  Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Peter John Sacripanti
Chairman
psacripanti@mwe.com
+1 212 547 5583

April 16, 2015

BY HAND DELIVERY AND ELECTRONIC MAIL

The Honorable Shira A. Scheindlin
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1620
New York, New York  10007-1312

     Re:    <u>Master File C.A. No. 1:00-1898 (SAS), M21-88, MDL No. 1358</u>
           *Defendants' Pre-Conference Letter for April 24, 2015 Status Conference*

Dear Judge Scheindlin:

    Defendants respectfully submit this letter in advance of the April 24, 2015 conference.

## JOINT AGENDA ITEM

**I.**    <u>*OCWD*:  Remand of Focus Sites & Process to Address Non-Focus Sites in the MDL</u>

    Discovery and motion practice on the focus plume sites are complete.  The parties agree that the Court should remand the focus plume sites to the Central District of California for trial at this time.

    With respect to the non-focus plume sites, the parties are meeting and conferring about how to apply the Court's prior rulings to them in a streamlined manner.  For example, Defendants believe that the parties can quickly and without further discovery apply the Court's prior rulings on the statute of limitations, nuisance, trespass, and the OCWD Act.  At the next status conference, the parties will either propose a process and schedule for addressing the non-focus sites or raise any disagreements between them for the Court to resolve.

## DEFENDANTS' AGENDA ITEMS

**I.**    <u>*Commonwealth of Pennsylvania*: Proposed CMO Covering Initial Disclosures</u>

    The parties have held several meet-and-confers regarding an initial CMO in the *Pennsylvania* matter.  Although agreement has been reached on a number of topics, one main issue remains in dispute:  Plaintiffs' obligation to identify the sites and wells within the

The Honorable Shira A. Scheindlin
April 16, 2015
Page 2

Commonwealth at which MTBE has been detected, and to do so within a reasonable amount of time.[1]  Defendants' proposal would require Plaintiffs to produce a list of these sites and wells, along with some basic information on each (the "Site List Proposals"), by the end of August 2015 – *i.e.*, more than a year after Plaintiffs filed their complaint (and more than four years after Plaintiffs' outside counsel served a TSCA notice letter on several defendants).  *See Defs.' Proposed CMO*, § II (attached at Ex. A).  The parties cannot make any meaningful proposals for case management to the Court until the Plaintiffs identify what sites are at issue in the case.

The concept of Plaintiffs disclosing a "site list" (release and receptor sites) is in no way new to the MTBE litigation.  In the *Puerto Rico* and *New Jersey* statewide MTBE actions, the plaintiffs – also represented by Miller Axline – were required to produce such lists.  The Court will also recall that Plaintiffs in *Suffolk County Water Authority*, *City of New York*, and *United Water New York* all were required to provide lists of impacted wells that included the dates and levels at which MTBE had been first and most recently detected.  With the experiences of *Puerto Rico* and *New Jersey* in hand, Defendants believe that an MTBE site list, accompanied by certain minimal data, will aid the parties in moving efficiently through discovery in this case.[2]

Notwithstanding that such basic information – *i.e.*, the locations at which MTBE has been detected – presumably formed the basis for this lawsuit, and could have and should have been compiled by Plaintiffs before initiating this action, Defendants understand that Plaintiffs are only now in the process of scanning State files that they believe may contain some of this information.  Defendants further understand that Plaintiffs' scanning process will take at least through the end of July (possibly longer for another set of files Plaintiffs have identified), but have not received an estimate as to how long it will then take Plaintiffs to complete a review of that information.  Therefore, although Plaintiffs say that they cannot yet identify the locations at which MTBE gasoline has been released, it really is only a matter of committing the resources and effort necessary.[3]  Indeed, the Amended Complaint (¶¶ 232-33) identifies 73 locations at which the

---

[1] Defendants have provided Plaintiffs with additional revisions to the draft CMO exchanged between the parties but, as of the writing of this letter, do not know Plaintiffs' position on those additions.  Defendants will address them, if necessary in their reply letter.

[2] Defendants' request for an **MTBE** Site List stems from experience gained in the *Puerto Rico* action.  As the Court may recall, it was several years into the litigation before defendants learned that for approximately one-third of the sites allegedly at issue, plaintiffs had no evidence of MTBE contamination – either because MTBE testing had not been conducted or because test results were negative – and that the "site list" the parties had been working from was instead a list of leaking underground storage tank sites.  As a result, the Court dismissed 377 sites from the case.  Defendants believe that all parties and the Court would be well-served to accomplish a similar process at the earliest possible stages of the *Pennsylvania* case.

[3] The Amended Complaint indicates that the Commonwealth is represented by five outside law firms, its Attorney General's office, and its Office of General Counsel.

The Honorable Shira A. Scheindlin
April 16, 2015
Page 3

Commonwealth claims that MTBE gasoline has been released, suggesting that such information must be available to the Commonwealth.  Defendants are requesting a hard deadline for Plaintiffs to compile the Site List.

Plaintiffs have suggested that Defendants should "participate" in the process of compiling their site list.  However, it is incumbent on the Plaintiffs, not the Defendants, to identify what sites are at issue in this case so that discovery can proceed.  This is certainly consistent with the obligation of a typical property damage plaintiff to determine the property allegedly injured by a defendant's conduct **before** bringing suit, and to identify that property in the complaint.  This case is no different just because the Commonwealth chose to allege injuries at hundreds, or thousands, of properties.  In any event, Defendants have agreed, at Plaintiffs' request, to produce lists of MTBE release sites in Pennsylvania to the extent such information is in their possession and maintained in a readily accessible electronic format (as defined in the proposed CMO).  *See* Ex. A, at § IV(A)(8); *see also id.* §§ IV(A)(5), (6).  It should be noted, however, that Defendants' data (much or all of which is likely already in the Commonwealth's possession) in all probability will relate only to sites that were owned or operated by a Defendant.  Defendants are not likely to have data pertaining to independently owned or operated stations, nor will they have data pertaining to other potential sources of gasoline releases such as municipal garages, state refueling facilities and the like.  Likewise, a list of "receptor sites," identifying wells where MTBE allegedly has been detected, can only be compiled by the Plaintiffs here.

Defendants' proposal also requires that for each site and well included on the Site List, Plaintiffs provide some very limited data:  the highest and most recent MTBE sampling results in their possession.  This information presumably will be available to Plaintiffs as they review the above-referenced files, and will substantiate each site's inclusion on the Site List.  Again, this is precisely the type of information that the Court required the water purveyor plaintiffs to identify in prior MTBE cases.  Furthermore, this data will provide the parties and the Court with a clearer picture of the universe of sites at issue in the case and, Defendants believe, may inform how the case should proceed and whether discovery of certain sites should be prioritized.[4]

Defendants' goal here is straightforward:  to manage this litigation efficiently going forward, and avoid years of expensive, extensive and potentially irrelevant discovery.  Setting some parameters up front, such as requiring Plaintiffs to produce the basic site identifications and sampling data described above, is a first step towards that goal.  For the foregoing reasons, Defendants respectfully request that the Court enter their proposed CMO.

---

[4] For example, the plaintiffs in *New Jersey* are no longer pursuing natural resource damages for eight of the nine Trial Sites selected by the defendants (sites generally with historically low-level or currently low-level detections).  This suggests to Defendants that early disclosure and analysis of key MTBE detection data may reveal avenues for potential efficiencies and streamlining of the discovery process and the case more generally.

The Honorable Shira A. Scheindlin
April 16, 2015
Page 4

II.     ***Puerto Rico I & II*: Request for Briefing Schedule & Proposed Order on Count VII**

Now that the Puerto Rico Supreme Court has issued a final order denying certification, Defendants will be prepared to discuss with the Court a briefing schedule for Defendants' motions for summary judgment in *Puerto Rico I* based on the one-year statute of limitations.

Similarly, Defendants will ask the Court to set a briefing schedule for motions to dismiss in *Puerto Rico II*.  As Your Honor may recall, the Court heard pre-motion argument on Defendants' motions to dismiss at the May 1, 2014 status conference; however, Defendants' deadline to move or answer was stayed *sine die* pending the outcome of certification.

Finally, during the May 1 pre-motion argument, the Court dismissed Plaintiffs' unjust enrichment claim (Count VII) in *Puerto Rico II* based on the Court's prior ruling in *Puerto Rico I*.  *See May 1, 2014 Hrg. Tr.* at 14:19-15:9, 26:24-27:2 (at Ex. B); *see also June 10, 2014 Hr. Tr.* at 50:4-52:12 (at Ex. C).  A proposed Order memorializing that ruling is attached at Exhibit D.

III.    ***Puerto Rico I & II*: Status of Petrobras Stipulation Regarding Statute of Limitations or Need for MSJ**

By email dated September 9, 2014, from the Court's Law Clerk to counsel for the parties, the Court, in response to a draft pre-motion letter from Petrobras America Inc., stated that its rulings on statute of limitations in the Trammo/Vitol matter applied to Petrobras, and suggested that Plaintiffs and Petrobras consider entering into a stipulation that applies the Court's statute of limitations and Law 53 rulings regarding Trammo/Vitol to Petrobras:

> The Court has considered each of your letters and suggests the following approach in light of the Commonwealth's planned immediate appeal of the Law 53 ruling.  Because the Second Circuit will not decide whether to take the Commonwealth's appeal before the September 26 deadline for summary judgment motions, defendants should refrain at this time from submitting motions on statute of limitations grounds.  Such motions will be permitted, if necessary, pending the outcome of the appeal.  However, *the Court believes that Petrobras America Inc. is in a similar position to Trammo and Vitol and that the parties should consider entering into a stipulation that applies the ruling in the Trammo/Vitol matter and the Law 53 ruling to Petrobras so that it can be treated in the same way as those defendants.  In short, any ruling already made by this Court or to be made by the Court of Appeals will apply to Petrobras.*

*Email from A. Todres to Liaison Counsel* (Sept. 9, 2014) (emphasis added).  In response, and at Plaintiffs' request, Petrobras' counsel supplied to Plaintiffs on Monday, September 15, 2014, its draft motion for summary judgment on statute of limitations, including proposed exhibits in support of the motion.  Discussion on any stipulations was put on hold until a final

The Honorable Shira A. Scheindlin
April 16, 2015
Page 5

decision was received from the Puerto Rico Supreme Court regarding certification.  As noted above, that decision has now been rendered.

Therefore, on March 11, 2015, counsel for Petrobras sent counsel for Plaintiffs a draft of a proposed stipulation. There has been no formal response from the Plaintiffs. Informal discussions suggest that agreement may not be reached, although Plaintiffs have indicated an intent to provide revised stipulations.

If a stipulation cannot be reached by May 8, 2015, Petrobras respectfully requests that it be allowed to file a motion for summary judgment on statute of limitations in PR I and PR II, no later than May 15, 2015. With regard to a proposed briefing schedule on the motion, Petrobras proposes that Plaintiffs have 14 days to file their opposition, and that Petrobras have 7 days to file its reply.

***

As always, we appreciate your Honor's attention this matter and ask that this letter be docketed by the Clerk's Office so that it is part of the Court's file.

Sincerely,

*Peter John Sacripanti*

Peter John Sacripanti

cc:  All Counsel of Record by LNFS, Service on Plaintiffs' Liaison Counsel

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE METHYL TERTIARY BUTYL ETHER
("MTBE") PRODUCTS LIABILITY
LITIGATION

This document relates to:

*Commonwealth of Pennsylvania, etc. v. Exxon Mobil Corporation, et al.*, Case No. 1:14-cv-06228 SAS

Master File No. 1:00-1898
MDL 1358 (SAS) M21-88

SHIRA A. SCHEINDLIN, U.S.D.J.

## [PROPOSED] CASE MANAGEMENT ORDER NO.

This Case Management Order ("CMO") defines the scope of initial disclosures in the above-captioned case (hereinafter the "*Pennsylvania case*"). Additional discovery will be addressed in subsequent CMOs.

## I.  IDENTIFICATION OF COVERED PERSONS

By May 29, 2015, parties who have not yet done so in MDL 1358 shall identify "covered persons" in accordance with Sections 2(b) and 2(c) of the Court's 2005 Order for Preservation of Documents.

## II.  INITIAL DISCLOSURES BY PLAINTIFFS:

A.  By August 30, 2015, Plaintiffs shall identify every "release" site (by name, address and site identification number) within the Commonwealth at which Plaintiffs contend neat MTBE or gasoline with MTBE was released.

B.  By August 30, 2015, Plaintiffs shall identify every potable well (by name, address, GIS coordinates, and Public Well System identification number) within the Commonwealth where MTBE was detected.

1

C.     By August 30, 2015, for each site or well identified in response to Sections II.A and II.B above, Plaintiffs shall identify:

1.     The most recent date MTBE was detected in groundwater at each site or well, and the concentration of MTBE detected on such date; and

2.     The maximum concentration of MTBE detected, at any time, at each site or well, and the date of such detection.

D.     In responding to Sections II.A through II.C, Plaintiffs shall not limit their responses to information contained in readily accessible electronic data (as defined below).

## III.    INITIAL PRODUCTION OF SITE FILES AND ELECTRONIC DATA

A.     By July 30, 2015, Plaintiffs shall produce to Defendants any and all readily accessible electronic data (*i.e.*, databases or other files created for the purpose of centralizing or aggregating storage of information) in their possession, custody or control, or in the possession, custody or control of any agency or Department of the Commonwealth, regarding the following:

1.     The presence and concentration of MTBE or TBA in any public water supply wells in Pennsylvania, including, but not limited to, any detections reported in any Safe Drinking Water Information System (SDWIS) database;

2.     The presence and concentration of MTBE or TBA in any groundwater or surface waters in Pennsylvania;

3.     The presence and concentration of MTBE or TBA in any private water supply well(s) or potable spring(s) in Pennsylvania, including, but not limited to, data (if any) in the Commonwealth's possession compiled by Bucks, Chester, Delaware, Montgomery and Philadelphia Counties (and all other counties which may also compile such data);

4.     The payment of public funds for the investigation, removal, remediation, monitoring or treatment of MTBE or TBA in Pennsylvania (to the extent that data related to the payment of

public funds is not maintained so as to identify MTBE and/or TBA, Plaintiffs shall produce such data for reformulated gasoline or gasoline containing MTBE);

5. The amount of public funds used to pay for the remediation, cleanup or treatment of MTBE or TBA in Pennsylvania, the locations at which such public funds were expended, and any costs, damages or injury allegedly sustained by Plaintiffs as a result of the presence of MTBE or TBA in Pennsylvania (to the extent that data related to the expenditure of public funds is not maintained so as to identify MTBE and/or TBA, Plaintiffs shall produce such data for reformulated gasoline or gasoline containing MTBE);

6. The concentration of gasoline constituents in groundwater at any release site identified in response to Section II.A above including, but not limited to, MTBE or TBA; and

7. Any site remediation reports related to releases of MTBE, TBA or gasoline containing MTBE or TBA where such releases allegedly caused impacts to soils and/or groundwater in the Commonwealth.

8. The location and ownership interest, including leases, that the Commonwealth, including any agency or department thereof, has or had in any underground storage tank which stored gasoline and any terminal or refinery which was engaged in the refining, distribution, storage or sale of neat MTBE, reformulated gasoline, or gasoline containing MTBE;

9. The location and ownership, including leases, interest that the Commonwealth, including any agency or department thereof, has or had in any pipeline or delivery system (*e.g.,* railcar, barge, tanker or tank truck) engaged in the delivery of neat MTBE, reformulated gasoline, or gasoline containing MTBE for distribution or sale in Pennsylvania;

10. The identity of parties with whom the Commonwealth, including any agency or department thereof, had supply contracts to deliver gasoline containing MTBE, reformulated gasoline, or neat MTBE to Pennsylvania, including exclusive supply contracts, and contracts with delivery services, franchisees, lessees, lessors, jobbers, common carriers (including, but not limited to, pipelines), distributors, terminals, other refiners, or any other entities;

11. The location, dates, volumes, sources and causes of any releases of gasoline containing MTBE, reformulated gasoline, or neat MTBE, by the Commonwealth, including any agency or department

thereof, into soil, ground water or surface water within Pennsylvania; and

12.     Any site remediation reports related to releases of MTBE, reformulated gasoline, or gasoline containing MTBE at sites that are or were owned and/or operated by the Commonwealth, including any agency or department thereof, at the time of release and where such releases caused MTBE impacts to soils and/or groundwater.

B.      Production of the electronic data shall be made on a "rolling" or continuing basis starting no later than  May 29, 2015.

C.      If any of the foregoing electronic data or files also contain data or information about chemicals or substances other than MTBE, such data or information shall be produced and not withheld or redacted.

D.      For each site that Plaintiffs do or may contend is implicated in this matter, Plaintiffs shall produce to Defendants any site files from the Underground Storage Tank Indemnity Fund (USTIF) on or before July 30, 2015.

## IV.     INITIAL DISCLOSURES BY DEFENDANTS

A.      By July 30, 2015, each Defendant shall produce to Plaintiffs any and all readily accessible electronic data (*i.e.*, databases or other files created for the purpose of centralizing or aggregating storage of information) in its possession, custody or control regarding the following:

1.      The location and ownership interest, including leases, that responding Defendant has or had in any service station, underground storage tank system ("USTs") motor fuel terminal or refinery in Pennsylvania which was engaged in the refining, distribution, storage or sale of neat MTBE, reformulated gasoline, or gasoline containing MTBE;

2.      The location and ownership, including leases, interest that responding Defendant has or had in any pipeline or delivery system (*e.g.,* railcar, barge, tanker or tank truck) engaged in the

delivery of neat MTBE, reformulated gasoline, or gasoline containing MTBE for distribution or sale in Pennsylvania;

3. The identity of parties with whom the responding Defendants had supply contracts to deliver gasoline containing MTBE, reformulated gasoline, or neat MTBE to Pennsylvania, including exclusive supply contracts, and contracts with delivery services, franchisees, lessees, lessors, jobbers, common carriers (including, but not limited to, pipelines), distributors, terminals, other refiners, or any other entities;

4. The name, grade, product codes, blend information and other identifying information for gasoline containing MTBE, reformulated gasoline, or neat MTBE that was distributed by the responding Defendant in Pennsylvania;

5. The location, dates, volumes, sources and causes of any releases of gasoline containing MTBE, reformulated gasoline, or neat MTBE, by Defendant, into soil, ground water or surface water within Pennsylvania;

6. Any site remediation reports related to releases of MTBE, reformulated gasoline, or gasoline containing MTBE at sites that are or were owned and/or operated by the responding Defendants at the time of release and where such releases caused MTBE impacts to soils and/or groundwater;

7. The volumes of neat MTBE, reformulated gasoline, and gasoline containing MTBE that the responding Defendant refined, distributed, stored, blended, supplied to or sold in the Commonwealth of Pennsylvania.

8. Lists of Pennsylvania MTBE release sites.

B. In responding to paragraphs (A)(1)-(A)(7), above, Defendants need produce readily accessible electronic data for "reformulated gasoline" only where the requested information is not available specifically for gasoline containing MTBE.

C. Production of the electronic data described above shall be made on a "rolling" or continuing basis starting no later than May 29, 2015.

**V.     ELECTRONIC LOOSE FILES**

A.     With respect to the readily accessible electronic data to be produced pursuant to Parts III and IV of this Order, the parties need not produce Electronic Loose Files ("ELF").

B.     For purposes of this Order, ELF includes any electronic files that do not consist of files or data from systems created to centralize or aggregate storage of a party's information (*i.e.* databases).   Discrete word processed documents (*e.g.* memoranda, correspondence), PDFs, images, emails and their attachments, and the like are considered ELF.

**VI.    FUTURE DISCOVERY**

The parties shall meet and confer after August 30, 2015 to discuss:

A.     The timing for completion of the production of electronic files that are not readily available pursuant to Parts III and IV, and any further discovery the parties propose, taking account of the electronic data the parties produce pursuant to section III and IV of this CMO;

B.     Production of paper or non-electronic site remediation files; and

C.     Methods for management of future discovery.

SO ORDERED

DATED:  New York, New York
   April ___, 2015

_____
Shira A. Scheindlin
U.S.D.J.

6

# EXHIBIT B

E51PMTBC1

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   In Re: METHYL TERTIARY BUTYL        00 MDL 1358 (SAS)
            ETHER ("MTBE") PRODUCTS      00 CV  1898 (SAS)
 4         LIABILITY LITIGATION          07 CV  10470 (SAS)

 5   ------------------------------x

 6                                       New York, N.Y.
                                         May 1, 2014
 7                                       5:00 p.m.

 8   Before:

 9           HON. SHIRA A. SCHEINDLIN

10                                       District Judge

11

12           APPEARANCES

13
     MILLER AXLINE & SAWYER
14       Attorneys for Plaintiffs
     BY:  TRACEY L. O'REILLY
15


16
     McDERMOTT WILL & EMERY LLP
17       Attorneys for ExxonMobil
     BY:  LISA GERSON
18       STEPHEN J. RICCARDULLI
         JAMES A. PARDO
19


20
     BEVERIDGE & DIAMOND
21       Attorneys for Sunoco, Inc.
     BY:  DANIEL M. KRAININ
22


23
     MCCONNELL VALDES LLC
24       Attorneys for Shell Oil
     BY:  ALEJANDRO J. CEPEDA-DIAZ
25       (Present via telephone)
```

14

E51rmtb2

1          THE COURT:  Let's start talking about it.  Trammo and

2     Peerless, who is representing them?

3          MR. TEMKIN:  Barry Temkin for Trammo.

4          MR. SANCHEZ:  Adrian Sanchez for Peerless.

5          THE COURT:  These two defendants say that the claims

6     are time-barred by the one-year statute of limitations.  I have

7     already ruled on unjust enrichment.  They say that should be

8     stricken.  I have seen the plaintiffs' response.

9          Let me go back.  Trammo's letter was March 20th and

10    Peerless's letter was April 29th.  The response was written by

11    plaintiffs on March 25th.  The plaintiffs' response is

12    essentially that these are now site-specific with regard to

13    certain sites.  The dismissal was without prejudice.

14         There is really no response in unjust enrichment other

15    than to say I wouldn't allow it in the first Puerto Rico case,

16    but that doesn't mean I wouldn't allow it on the second.  I

17    have to start this conference by saying that makes no sense to

18    me.

19         I dismissed unjust enrichment on legal grounds.  There

20    is nothing changed about the legal grounds.  For the same

21    reason I said there couldn't be an unjust enrichment claim in

22    Puerto Rico one, I don't see how there could be an unjust

23    enrichment claim in Puerto Rico II.

24         I wrote on July 17, 2013, and I quote, "Under the

25    civil law system of Puerto Rico, unjust enrichment is permitted

E51rmtb2

1    as either a claim or a remedy only when positive law supplies

2    an injured plaintiff with no other means of redress," from that

3    opinion.

4            It seems to me that plaintiffs again have available

5    claims under the civil code of Puerto Rico.  So, for the same

6    reasons I dismissed it in Puerto Rico I, I'm going to dismiss

7    it here.  You have a record and preserve the ruling.  From what

8    I said just now, there is really no reason for them to rebrief

9    the unjust enrichment issue.

10           As to the other issue, however, just to give you a

11   setting for your argument, I think there the plaintiffs have

12   the better argument.  If I said without prejudice, it has to

13   have some meaning.  Otherwise, they are all with prejudice

14   because it covered the waters of Puerto Rico, the very broad

15   ruling on July 16th.

16           That can't have meant with respect to site-specific

17   places where evidence is now appearing within the one-year

18   statute of limitations and that were specifically dismissed

19   without prejudice previously.  Where I'm going to come out is

20   unjust enrichment is going to go, but I think these claims are

21   probably not time-barred.

22           Having that said that that is my preliminary ruling, I

23   am happy to hear from whichever one of you wants to speak

24   first.

25           MR. SANCHEZ:  Your Honor, Adrian Sanchez for Peerless.

E51rmtb2

1           Again, confer with Ms. O'Reilly and tell her what you

2       would put in, which you're saying is public records so it

3       wouldn't really violate the four corners.  But if she comes

4       back and says but here is how I'm going to contest it, then we

5       are outside the four corners of the complaint and I can't do

6       it.

7           MR. PARDO:  We'll talk.  Some of this goes back to

8       2001.

9           THE COURT:  Right.

10          MR. PARDO:  Which is more than ten years before.

11          THE COURT:  I don't know why you think those 36 are

12      new, Ms. O'Reilly, if there was evidence ten years ago.

13          MS. O'REILLY:  Your Honor, they haven't presented us

14      with the evidence, but my understanding is that these sites

15      were tested and MTBE was detected within the statute of

16      limitations period.

17          THE COURT:  For the first time?

18          MS. O'REILLY:  For the first time.

19          THE COURT:  They are just saying no, and they are

20      going to show you.  I think a meet-and-confer is in order

21      before that more general motion is made.  Show her what you

22      have, as they say.  Put your cards out, Mr. Pardo, and take it

23      from there.

24          I understood with respect to the defendants other than

25      Peerless and Trammo that again there was a motion under unjust

E51rmtb2

1   enrichment.  I'm already granting that.  It does not need to be

2   briefed.  You were going to bring this claim of time bar up, I

3   knew that, both for nonsite-specific time bar and site-

4   specific.  That's a little confusing to me.  What is the

5   nonsite-specific time bar?

6           MS. HANEBUTT:  Again, Pamela Hanebutt on behalf of

7   Citgo Petroleum.  To the extent that the 2013 complaint

8   purports to bring island-wide claims --

9           THE COURT:  I see.  I already dismissed in the July

10  2013 opinion?

11          MS. HANEBUTT:  Right.

12          THE COURT:  Then that's res judicata.

13          MS. HANEBUTT:  No, they haven't been dismissed in

14  that.  They are either barred in the 2013 action on the grounds

15  of statute of limitations because surely they knew by the time

16  they brought the case in 2007, or by a prior pending case that

17  is being litigated.

18          THE COURT:  I agree.  That's what I'm saying.  It

19  really is covered by my July 2013 opinion because it did talk

20  in general terms about the waters of Puerto Rico, generally

21  speaking.  If it is not site-specific, I have already ruled and

22  I dismissed it.

23          MS. HANEBUTT:  Thank you.

24          THE COURT:  I agree with you again.  I think that

25  given the issues we discussed at this conference, and you of

# EXHIBIT C

                                                        1

        E6AMMTBC

1       UNITED STATES DISTRICT COURT
        SOUTHERN DISTRICT OF NEW YORK
2       ------------------------------x

3       COMMONWEALTH OF PUERTO RICO,
        et al.,
4
                      Plaintiffs,          07 Cv. 10470 (SAS)
5
                 v.
6
        SHELL OIL CO., et al.,
7
                      Defendants.
8
        ------------------------------x
9                                          New York, N.Y.
                                           June 10, 2014
10                                         2:30 p.m.

11      Before:

12               HON. SHIRA A. SCHEINDLIN,
                                           District Judge
13

14                            APPEARANCES

15      MILLER & AXLINE LLP
              Attorneys for Plaintiffs
16      BY:  MICHAEL D. AXLINE
              -and-
17      JACKSON GILMOUR & DOBBS
        BY:   JOHN D.S. GILMOUR
18            WILLIAM J. JACKSON
              -and-
19      ORLANDO H. MARTINEZ-ECHEVERRIA
              -and-
20      JOHN K. DEMA

21      McDERMOTT, WILL & EMERY
              Attorneys for Defendant ExxonMobil Corp.
22      BY:  JAMES PARDO
              MICHAEL J. DILLON
23            STEPHEN J. RICCARDULLI
              LISA GERSON
24

25

                         SOUTHERN DISTRICT REPORTERS, P.C.
                               (212) 805-0300

50

E6AMMTBC

1   want to do that now until I decide the applicability of this

2   new clarification/amendment.

3           MR. RICCARDULLI:  That's fine, your Honor.

4           THE COURT:  On the unjust enrichment, if you submit a

5   separate order, I can sign it.

6           MR. RICCARDULLI:  There is a dispute, your Honor.

7   I'll carve out that section.  I think there is still a dispute

8   about the way this should be worded.  We think you decided that

9   on the merits, that a claim doesn't exist because they have

10  other relief under the civil code.  Plaintiffs seems to suggest

11  that it was without prejudice, it was really a dismissal or a

12  denial of a motion to amend the complaint or bar discovery.  We

13  think you were pretty career at the May 1 conference that this

14  was a dismissal, a substantive dismissal --

15          THE COURT:  To the best of my memory, it was a

16  substantive dismissal with prejudice on the unjust enrichment

17  claims.

18          MR. GILMOUR:  Your Honor, if I may, I was the one who

19  wrote the letter.  What I did, I did not have the benefit of

20  being at the May 1 conference.  I read the transcript.

21          In the transcript I read your Honor to say, it was

22  dismissed to the same extent that you had in your prior orders.

23  Your prior orders on that issue was, one, when the commonwealth

24  requested leave to amend to add a claim of unjust enrichment,

25  you said that the case was too old and the parties would be

51

E6AMMTBC

1   prejudiced.  We agreed that if you were using that same

2   reasoning, then you could state that in the order, but we did

3   not think that was applicable to Puerto Rico 2, which had just

4   been filed.

5          The other was in the context of when the commonwealth

6   requested discovery on unjust enrichment as a remedy.  And in

7   that, your Honor denied us discovery on that issue and our

8   point was that we agreed with the language that said, to the

9   same extent they were dismissed in Puerto Rico 1, we would

10  agree that it was dismissed to that extent in Puerto Rico 2.

11  But that is where the meet and confer bogged down and ceased.

12  That was an e-mail and letter writing campaign.  If you see the

13  letters there before you, I tried to revive the meet and confer

14  and it did not happen.  I think that's the dispute Mr.

15  Riccardulli is talking about.

16         THE COURT:  If it did not happen, you're welcome to

17  continue it.  But if the letter briefs are before me, I am

18  going to decide in the way I remember it.  And now, subject to

19  review of all of that paperwork that you are going to put in

20  front of me, it is on a substantive ground.

21         MR. RICCARDULLI:  Your Honor, I'll refer you to the

22  May 1 transcript, page 34, beginning at line 16.  After hearing

23  argument similar to what Mr. Gilmour just stated to you, you

24  said:  The law remains the same.  As long as there is an action

25  under the civil code, there is no action under Puerto Rico law

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

52

E6AMMTBC

1  and unjust enrichment.  I continue to rule that unjust

2  enrichment is dismissed.

3          THE COURT:  Right.

4          MR. GILMOUR:  To the extent there is an existing

5  claim, your Honor, under Puerto Rico law, we agree with that

6  statement, if that helps.

7          THE COURT:  It doesn't help much.  There either is or

8  isn't a claim under Puerto Rico law.  I assume there is.  You

9  pressed that there is.  It's going forward.  So the unjust

10  enrichment claim is dismissed on substantive grounds.  Some day

11  you can appeal that dismissal.  Submit the order.

12          MR. GILMOUR:  Yes, your Honor.

13          THE COURT:  We just need a briefing schedule.  The

14  sooner the better, while this oral argument is fresh.  Some of

15  you said today, in our brief we cited.  If you feel like you

16  already briefed it, it shouldn't be hard to take that letter

17  brief, expand it just a little, and be done with it.

18          The moving party, I suppose, is the plaintiff.  The

19  defendant has already been dismissed.  It's the plaintiffs who

20  seek to reinstate them, so to speak.

21          MR. PARDO:  There are defendants who haven't yet.

22          THE COURT:  Of course.  But there are four who have

23  been.  I understand.  There is some defendants who seek

24  dismissal.  That's a strange thing to do just after this new

25  clarification/amendment has passed.  The real fact of the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In Re: Methyl Tertiary Butyl Ether ("MTBE")
Products Liability Litigation

**This document related to:**

*Commonwealth of Puerto Rico, et al. v.*
*Shell Oil Co., et al.*, Case No. 14-CV-01014

Master File No. 1:00 – 1898
MDL 1358 (SAS): M21-88

### [PROPOSED] CASE MANAGEMENT ORDER #___

This Order memorializes the Court's rulings at the May 1 and June 10, 2014 status conferences.

WHEREAS Defendants have advised the Court that they intend to move to dismiss Count VII, Restitution for Unjust Enrichment, *inter alia*, on the grounds enumerated in the Court's amended July 17, 2013 Opinion and Order, in which I concluded that Puerto Rico authority would not permit Plaintiffs to pursue unjust enrichment as either a separate cause of action or remedy. *Commonwealth of Puerto Rico v. Shell Oil Co*., No. 07 Civ. 10470, Amended Opinion and Order (July 17, 2013) (hereinafter "July 17, 2013 Order");

NOW THEREFORE IT IS ORDERED that Plaintiffs' Count VII, Restitution for Unjust Enrichment, is dismissed with prejudice on the same grounds set forth in the July 17, 2013 Order, which apply equally here.

SO ORDERED:

_____          _____
Shira A. Scheindlin, U.S.D.J.          Date