**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------- X
                               :

**IN RE: METHYL TERTIARY BUTYL**   :
**ETHER ("MTBE") PRODUCTS**       :
**LIABILITY LITIGATION**             :
-------------------------------------------------- :
                               :

**This document relates to:**          :
                               :
*Commonwealth of Pennsylvania v. Exxon*  :
*Mobil Corporation, et al.*, 14 Civ. 6228    :
                               :
-------------------------------------------------- X

**OPINION AND ORDER**

**Master File No. 1:00-1898**
**MDL 1358 (SAS)**
**M21-88**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

      This is a consolidated multi-district litigation ("MDL") relating to contamination – actual or threatened – of groundwater from various defendants' use of the gasoline additive methyl tertiary butyl ether ("MTBE") and/or tertiary butyl alcohol, a product formed by the breakdown of MTBE in water.  On December 23, 2014, certain defendants (collectively, "Insurance Defendants") moved to dismiss Counts VII through IX of the Commonwealth's Complaint.[1]  For

---

[1]     *See* Defendants' Motion to Dismiss Counts VII–IX ("Def. Mot.") at 1. For a complete list of moving defendants, *see id.* at 4.  Insurance Defendants also moved to sever Counts VII through IX, and remand these claims to the Eastern District of Pennsylvania. *See id.*  However, at a January 15 status conference, Insurance Defendants notified the Court that they were withdrawing their Motion to Sever. *See id.*

the reasons stated below, Insurance Defendants' motion to dismiss is **GRANTED** in part, and **DENIED** in part.

## II.    BACKGROUND

### A.    The Insurance Defendants

The Commonwealth alleges that the Insurance Defendants have wrongfully obtained a double-recovery for claims stemming from "environmental remediation costs" associated with releases from Insurance Defendants' underground storage tanks ("USTs").[2]  The Insurance Defendants have received payments from the Underground Storage Tank Indemnification Fund ("the Fund") — a program enacted by the Commonwealth in 1994 to provide "primary coverage" for such remediation costs.[3]  In addition, the Insurance Defendants have

---

[2]    Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss ("Pl. Mem.") at 1.  *See also* Defendants' Memorandum of Law in Support of Motion to Dismiss ("Def. Mem.") at 2.  The Insurance Defendants consist of a group of companies that own or operate retail service stations in the Commonwealth — including the USTs located at those stations.  *See id.*  The Commonwealth alleges that gasoline containing MTBE leaked from Insurance Defendants' USTs, causing environmental and property damage to the Commonwealth.  *See generally* Amended Complaint ("Compl.").

[3]    25 Pennsylvania Code ("Pa. Code") § 977.38(a) ("[The Fund provides] primary coverage for corrective action costs and eligible claims for personal injury and property damage due to a release from a UST . . . .").  *See also* Compl. ¶ 404 ("[The] Insurance Defendants' applications for corrective action payments with [the Fund] have either: (a) been paid; or (b) are currently awaiting payment.").

received payments from a number of insurance policies issued by other insurers.[4] Specifically, the Commonwealth alleges, "upon information and belief," that the Insurance Defendants — unbeknownst to the Commonwealth — "made claims against their various insurance policies seeking to recover the *very same [environmental] remediation costs* for which they received payments from the [Fund]."[5]  The Insurance Defendants neither disclosed these payments to the Fund, nor reimbursed the Fund from funds received from commercial, captive, and mutual insurers.[6]

The Commonwealth seeks reimbursement for the Insurance Defendants' alleged double-recovery.  The Commonwealth's primary legal theory is that the Insurance Defendants' conduct caused the Commonwealth to lose subrogation rights explicitly provided to it by the Underground Storage Tank Indemnification Fund Act ("USTIF Act").  The USTIF Act provides that once the Fund reimburses the Fund applicants for remediation costs, the Commonwealth steps into their shoes and inherits their legal rights against their insurance carriers.[7]

---

[4]        *See* Compl. ¶¶ 302–392.

[5]        Pl. Mem. at 4 (emphasis added).  *See also* Compl. ¶¶ 402–410.

[6]        *See* Pl. Mem. at 4.

[7]        *See* 25 Pa. Code § 977.40(a) ("The Fund, after any payment, shall be subrogated to all the rights of recovery of an owner or operator against any person

The Commonwealth complains that, by taking actions against their insurers without notifying the Commonwealth, the Insurance Defendants denied the Commonwealth its opportunity to exercise its subrogation rights.[8]

### B.    The Commonwealth's Claims

The Commonwealth asserts three claims to "seek recovery of amounts [the Insurance] Defendants received from their insurers for remediation costs that were also included in claims paid by [the Fund]."[9]

### 1.    Count VII: The Subrogation Claim

The Commonwealth argues that the Insurance Defendants' failure to disclose that they received, or were pursuing, coverage for environmental remediation costs from their commercial, captive, and mutual insurers, caused the Commonwealth to lose its subrogation rights expressly granted by Section 977.40 of Title 25 of the Pennsylvania Code ("Section 977.40").[10]  Accordingly, the Commonwealth asserts subrogation claims against the Insurance Defendants "for

---

for the cost of remediation").

[8]      *See* Compl. ¶ 408.

[9]      Pl. Mem. at 1–2.

[10]     *See* Compl. ¶¶ 400-409.  *See also* 25 Pa. Code § 977.40(a) ("The Fund, after any payment, shall be subrogated to all of the rights of recovery of an owner or operator against any person for the costs of remediation.").

the disgorgement of every dollar Defendants received from their environmental remediation costs which the [Fund] also paid."[11]  Although the Commonwealth recognizes its subrogation claim is atypical, it trumpets the equitable nature of subrogation claims.[12]  Therefore, the Commonwealth argues, it should not be precluded from bringing a subrogation claim simply because the Insurance Defendants have already "exercised the Commonwealth's subrogation rights by pursuing and collecting from [] their insurers."[13]  Rather, "considerations of unjust enrichment and unconscionable retention of property" should counsel in favor of permitting the Commonwealth to pursue a subrogation claim against the Insurance Defendants.[14]

The Insurance Defendants, in turn, argue that Pennsylvania law adheres to a longstanding "anti-subrogation rule," which prohibits a subrogee from recovering from its subrogor by means of subrogation.[15]  "The Commonwealth

---

[11]     Pl. Mem. at 9.  *See also* Compl. ¶ 409.

[12]     *See* Pl. Mem. at 9 (citing *In re Estate of Richard A. Devoe*, 74 A.3d 264, 268–269 (Pa. Super. 2013)).

[13]     *Id.*

[14]     *In re Estate of Richard A. Devoe*, 74 A.3d at 268.

[15]     Defendants' Reply Memorandum of Law in Support of Motion to Dismiss ("Reply Mem.") at 5 (citing *Remy v. Michael D's Carpet Outlets*, 571 A.2d 446, 452 (Pa. Super. 1990) ("By definition, subrogation can arise only . . . against third persons to whom the insurer owes no duty.").  The Insurance

purports to step into [the Insurance] Defendants' shoes and assert [the Insurance] Defendants' legal claim against *[the Insurance] Defendants*, and not third parties."[16]   Therefore, the Insurance Defendants claim that the Commonwealth does not assert a cognizable subrogation claim under Pennsylvania law.[17] Furthermore, the Insurance Defendants point to the lack of precedent supporting the Commonwealth's subrogation claim.[18]   The cases that the Commonwealth relies on, the Insurance Defendants argue, "do not relate in any way to whether a subrogee can pursue a subrogation claim against its subrogor" — they "merely recite general principles of subrogation."[19]   Consequently, the Insurance Defendants argue that Count VII should be dismissed.

### 2.    Count VIII: Unjust Enrichment

The Commonwealth also advances a claim — in the alternative[20] —

---

Defendants concede that, if the Commonwealth had brought suit against the commercial, captive, and mutual insurers, the anti-subrogation rule would not apply.  *See* Def. Mem. at 16.

[16]    Reply Mem. at 5 (emphasis in original).

[17]    *See id.*

[18]    *See id.* at 5 n.2.

[19]    *Id.*

[20]    *See* Fed. R. Civ. P. 8(a)(3).

on the basis of the equitable, common law doctrine of unjust enrichment.[21]  Under

Pennsylvania law, the Commonwealth argues that a claim of unjust enrichment is

cognizable so long as a plaintiff alleges: "(1) [the] plaintiff conferred a benefit on

the defendant; (2) the defendant appreciated the benefit; and (3) . . . retention by

the defendant of the benefits, under the circumstances, would make it inequitable

for the defendant to retain the benefit without paying for the value of the benefit."[22]

Here, the Insurance Defendants (1) received the benefit of Fund payments for

environmental remediation costs; (2) pursued claims against their commercial,

captive, and mutual insurers for those same environmental remediation costs; and

(3) were unjustly enriched by retaining double recovery of those costs, at the

expense of the Fund.[23]  Therefore, the Commonwealth claims its unjust enrichment

claim complies with Pennsylvania law.[24]

The Insurance Defendants "agree that, as a general matter, a plaintiff

can plead in the alternative."[25]  However, they dispute that a plaintiff may assert a

---

[21]     *See* Compl. ¶¶ 410–419.

[22]     Pl. Mem. at 10 (citing *Pappert v. TAP Pharm. Prods., Inc.*, 885 A.2d
1127 (Pa. Commw. Ct. 2005))

[23]     *See id.* at 11.

[24]     *See id.*

[25]     Reply Mem. at 6.

claim for equitable relief "when the plaintiff has an adequate remedy at law."[26] Here, the STSPA's "Enforcement" chapter, which governs "when and how suits may be brought to 'restrain violations' of the statute," provides an adequate remedy at law.[27]   Therefore, the Insurance Defendants argue that the Commonwealth should be precluded from asserting an unjust enrichment claim.[28]

### 3.   Count IX: Storage Tank and Spill Prevention Act Claim

The Commonwealth claims that the Insurance Defendants were required to abide by the Storage Tank and Spill Prevention Act ("STSPA"), including the eligibility and minimum cooperation requirements set forth by the regulations promulgated pursuant to the STSPA.[29]   The Commonwealth alleges two violations of the STSPA in Count IX.[30]   *First*, the Commonwealth claims the Insurance Defendants fraudulently "submitted claims for releases that occurred

---

[26]     Def. Mem. at 16 (citing *Dunn v. Board of Prop. Assessment, Appeals & Review of Allegheny Cnty.*, 877 A.2d 504, 515 n. 18 (Pa. Commw. Ct. 2005), *aff'd*, 936 A.2d 487 (Pa. 2007) and *Goadby v. Philadelphia Elec. Co.*, 639 F.2d 117, 122 (3d Cir. 1981)).

[27]     *Id.* at 17 (citing 35 P.S. § 6021.1301 *et seq.*).

[28]     *See id.* at 16–17.

[29]     *See* Compl. ¶ 422.  *See also* Pa. Code § 977.32 (setting forth the minimum cooperation requirements for participation in Fund coverage); *id.* at § 977.33(b)(3) (restricting Fund coverage for any release prior to February 1, 1994); *id*. at § 977.40 (setting forth the Commonwealth's subrogation rights).

[30]     *See* Compl. ¶¶ 424–425.

before February 1, 1994" in violation of Section 977.33(b)(3) of Title 25 of the Pennsylvania Code ("Section 977.33").[31]  *Second*, the Insurance Defendants failed to protect the Commonwealth's subrogation rights expressly granted by Section 977.32, in violation of the duty to cooperate imposed by Section 977.32.[32]  The Commonwealth argues that it is "entitled to recover all payments made to [Insurance] Defendants by the Fund and to cease payment of further payments on any claim filed."[33]

With respect to the *first* alleged violation, the Insurance Defendants argue that the Commonwealth has failed to plead sufficient facts that show the Insurance Defendants engaged in any proscribed conduct.[34]  Fund claimants "bear a 'heavy burden of proof' of demonstrating . . . that a given release occurred after February 1, 1994."[35]  Because the Commonwealth does not suggest the Insurance Defendants were exempt from this requirement, it is uncontested that Insurance

---

[31]     *Id.*

[32]     *See id.  See also* 5 Pa. Code § 977.32(b) ("The participant shall cooperate in all respects with the Fund . . . including . . . any subrogation action as provided in [Section] 977.40.").

[33]     Compl. ¶¶ 424–425.

[34]     *See* Def. Mem. at 18 ("[The] naked assertion about release dates is not accompanied by any well-pleaded allegations, and should be disregarded on a motion to dismiss.").

[35]     Reply Mem. at 7 (quoting 35 P.S. § 6021.706).

Defendants satisfied their burden of proof when submitting claims which the Commonwealth now alleges were fraudulent.[36]

With respect to the *second* alleged violation of the STSPA, the Insurance Defendants claim that neither the STSPA, nor its underlying regulations, impose an affirmative duty "to protect the Commonwealth's subrogation rights in the abstract."[37] Rather this duty is contingent on the presence of a subrogation action initiated by the Fund. [38] Because the Commonwealth does not allege it pursued a subrogation action, Sections 977.32 and 977.40 are inapposite.[39]

## III. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court evaluates the sufficiency of the complaint under the "two-pronged approach" dictated by the Supreme Court in *Ashcroft v. Iqbal*.[40] *First*, a court "can choose to begin by identifying the pleadings that, because they are no more than conclusions,

---

[36] *See id.*

[37] Def. Mem. at 17.

[38] *See id.* at 18.

[39] *See id.*

[40] *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

are not entitled to the assumption of truth."[41]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to withstand a motion to dismiss.[42]  *Second*, "accept[ing] as true all factual allegations contained in the complaint"[43] and "drawing all reasonable inferences in the plaintiff's favor,"[44] a court must find that the plaintiff's complaint has "nudged" his or her claims "across the line from the conceivable to plausible."[45]  "A claim has facial plausibility when the pleaded content allows the reasonable inference that the defendant is liable for the misconduct alleged."[46]

## IV.   APPLICABLE LAW

### A.   Subrogation Under Pennsylvania Law

Under Pennsylvania law, "it is well settled that an insurer cannot

---

[41]   *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). *Accord WC Capital Mgmt. LLC v. UBS Secs., LLC*, 711 F.3d 322, 328 (2d Cir. 2013).

[42]   *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[43]   *Id.*

[44]   *Barrows v. Burwell*, —F.3d—, No. 13-4179-V, 2015 WL 264727, at *4 (2d Cir. Jan. 22, 2015) (citing *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 232 (2d Cir. 2014)).

[45]   *Iqbal*, 566 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570).

[46]   *Id.* at 663 (citing *Twombly*, 550 U.S. at 556).

recover by means of subrogation against its own insured."[47]  "'By definition, subrogation can arise only with respect to the rights of an insured against third persons *to whom the insurer owes no duty*.'"[48]  Rather, the equitable doctrine of subrogation "permits an insurer that 'pays on a claim of its insured [to] assume[] any rights which the insured would have against any other person responsible for the loss.'"[49]  This limitation on the applicability of subrogation claims is referred to as Pennsylvania's "anti-subrogation rule."[50]

## B.   Unjust Enrichment Under Pennsylvania Law

"[T]o sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that it would be unconscionable for [him or] her to retain."[51]  "[T]he essential elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by the defendant, and acceptance and

---

[47]     *Complete Healthcare Res.-E., Inc. v. Pacific Life Ins. Co.*, No. 06 Civ. 2490, 2007 WL 1437466, at *3 (E.D. Pa. May 11, 2007) (citation omitted).

[48]     *Id.* (quoting *Remy*, 391 Pa. Super. at 447) (emphasis in original).

[49]     *Id.* at *2 (quoting *Banks Towers Commc'ns Ltd. v. Home Ins. Co.*, 590 F. Supp. 1038, 1040 (E.D. Pa. 1984)).

[50]     *Fidelity and Guar. Ins. Underwriters, Inc. v. American Bldgs. Co., Inc.*, 14 F. Supp. 2d 704, 707 (M.D. Pa. 1998) ("It is well settled that an insurer may not assert a subrogation claim against one of its insureds.").

[51]     *Torchia v. Torchia*, 499 A.2d 581, 582 (Pa. Super. 1985).

retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of the value."[52]  Under Pennsylvania law, intent is irrelevant to the unjust enrichment inquiry.[53]  Rather, the "polestar" of unjust enrichment is equity and fairness.[54]

### C.      Disclosure Under the USTIF Act and Its Regulations

The Pennsylvania State Legislature created the Fund in 1994, with the intent of providing owners and operators of gasoline retail service stations with "primary coverage" for environmental remediation costs.[55]  The Fund operates by charging owners and operators of USTs with a fee, "assessed by the Commonwealth for every gallon [of gasoline] that enters a UST."[56]  In the event that gasoline is released from a UST, owners and operators may file a claim with the Fund for reimbursement.[57]

---

[52]     *Grode v. Mutual Fire, Marine and Inland Ins. Co.*, No. 91 Civ. 1179, 1991 WL 245007, at *7 (E.D. Pa. Nov. 15, 1991) (citation omitted).  *Accord Pappert*, 885 A.2d at 1127.

[53]     *See Limbach v. City of Phila.*, 905 A.2d 567, 577 (Pa. Commw. Ct. 2006).

[54]     *Id.*

[55]     *See* Reply Mem. at 3.

[56]     Def. Mem. at 3.

[57]     *See id.*

Under the STSPA, there are two primary regulations governing the standard of conduct that applicants must adhere to in order to receive payments from the Fund.  *First*, Section 977.33 lays out eligibility requirements.[58]  Under this provision, applicants must show that the UST release for which they are claiming reimbursement occurred after February 1, 1994.[59]  *Second*, the Fund's minimum cooperation requirements enumerated in Section 977.32 require that owners and operators provide "all information . . . pertinent to the claim" upon *request* by the Fund.[60]  In the recent case of *Gnagey Gas & Oil Co., Inc. v. Pennsylvania Underground Storage Tank Indemnification Fund*, ("*Gnagey*") the Commonwealth Court of Pennsylvania held, in interpreting Section 977.32, that:

> [T]he import of 25 Pa. Code § 977.32(a)(1) and (b) mandates that during the *investigation of a claim*, a claimant must "cooperate" by revealing all information in its possession that falls within the scope of the *request* and additional information that is generally associated with the request and is reasonably likely to be germane to the claim. To interpret 25 Pa. Code § 977.32(a)(1) in a more restrictive manner . . . would eviscerate the terms "including," "other," and "pertinent," which connote that in a request for information, a claimant will not only disclose . . . the precise information requested, but also supplemental and related information that is relevant to the request

---

[58]  *See* 25 Pa. Code § 977.33.  *See also* Compl. ¶¶ 421–425.

[59]  *See* 25 Pa. Code § 977.33(b)(3).

[60]  *Id.* at § 977.32 (a)(1).

-14-

and resolution of the claim.[61]

## IV.    DISCUSSION

### A.    Count VII: The Commonwealth's Subrogation Claim Is Dismissed

As a matter of Pennsylvania law, the Commonwealth is precluded from asserting a subrogation claim against the Insurance Defendants.  The anti-subrogation rule prohibits an insurer from bringing a subrogation claim against its own insureds.  Here, the Commonwealth is the insurer and the Insurance Defendants are the insured.  Although the Commonwealth accurately characterizes the doctrine of subrogation as equitable in nature, allowing the Commonwealth to bring this subrogation claim would "turn the equitable doctrine of subrogation on its head" and contravene well-settled Pennsylvania law.[62]  For that reason, Count VII of the Complaint is dismissed, with prejudice.[63]

### B.    Count VIII: The Commonwealth's Unjust Enrichment Claim Is Properly Pled

---

[61]     82 A.3d 485, 504 (Pa. Commw. Ct. 2005) (quoting 25 Pa. Code § 977.32(a), (b)) (emphasis added).

[62]     *Healthcare Res.-E., Inc.*, 2007 WL 1437466, at *3.  *See also* Def. Mem. at 15.

[63]     No reformulation of the Commonwealth's subrogation claim could cure the defect that it violates well-settled principles of Pennsylvania law — that an insurer may not recover from its insured by means of subrogation.

The Commonwealth has alleged — consistent with Pennsylvania law — that the Insurance Defendants obtained a double-recovery by receiving money from both the Fund and their insurance companies covering the same releases.  If true, this would be a textbook example of unjust enrichment.  The Insurance Defendants do not necessarily disagree with this – instead, their argument is technical:  that Pennsylvania law precludes the Commonwealth from asserting this common law cause of action, because the STSPA "Enforcement" provision sets a statutory standard for recovery to the exclusion of any equitable claims.

The law is not so restrictive.  The Commonwealth may plead in the alternative under Federal Rule of Civil Procedure 8(a)(3).   "Moreover, causes of action that are inconsistent are permitted so long as they are plead in separate counts."[64]  Thus, the Insurance Defendants' motion to dismiss the unjust enrichment claim is denied.

## C.   Count IX:

### 1.   The Commonwealth Has Not Adequately Pled that the Insurance Defendants Failed to Comply With a Request for Information

The central legal dispute between the parties is whether the Insurance

---

[64]    *Lugo v. Farmers Pride, Inc.*, 967 A.2d 963 (Pa. Super. 2009) (citing Pa. R. Civ. P. 1020(c)) ("We find that appellants may, indeed, plead [statutory] causes of action . . . and breach of contract, in the alternative with a cause of action under a theory of unjust enrichment." ).

-16-

Defendants had a legal duty to disclose their insurance policies to the Fund, when they sought reimbursement from the Fund.  In order to resolve the first alleged violation in the  Commonwealth's statutory claim, it is important to determine whether Sections 977.32 and 977.40 collectively impose an *implied* duty on the Insurance Defendants to protect the Commonwealth's subrogation rights. The regulatory scheme was created to allow the Commonwealth to pursue subrogation claims against the Insurance Defendants' insurance companies.[65]  To enable the Commonwealth to do that, the USTIF Act requires applicants to the Fund to cooperate very broadly with any information requests pursuant to an investigation stemming from their claims.[66]  Conceivably, this could include information regarding applicants' insurance policies so that the Fund could protect the subrogation rights that are specifically provided for in Sections 977.32 and 977.40.

But *Gnagey* makes clear that this duty to cooperate is not triggered until the Fund makes a request for information or an investigation has been commenced.[67]  The Commonwealth has not alleged either of these events.  It is

---

[65]     Specifically, Section 977.40 provides that, "[t]he Fund, after any payment, shall be subrogated to all of the rights of recovery of an owner or operator against any person for the costs of remediation."  25 Pa. Code § 977.40(a).

[66]     *See id.* § 977.32(a)(1).

[67]     *See Gnagey Gas & Oil Co., Inc.*, 82 A.3d at 485.  As the Insurance Defendants correctly note, *Gnagey* does not hold that a Fund applicant must

possible that in granting the Insurance Defendants' claims for reimbursement, the Fund may have investigated and requested insurance information.  However, nothing in the Complaint supports the notion that it is plausible that the Insurance Defendants concealed the existence of additional insurance in response to a request by the Fund.

For this reason, the Commonwealth's claim that the Insurance Defendants violated Section 977.32 — the USTIF Act's cooperation provision — fails as a matter of law.  Section 977.32 does not impose any affirmative legal duty upon applicants to protect the subrogation rights of the Commonwealth.  Because it is conceivable that the Commonwealth did make such requests, or commence such investigations, an amendment would not necessarily be futile if the Commonwealth can allege that the Insurance Defendants refused to cooperate.  For that reason, the Commonwealth's claim that the Insurance Defendants violated Section 977.32 by failing to disclose additional insurance coverage for environmental remediation

disclose pertinent information "each time [an applicant] submit[s] a claim to the [Fund]."  Def. Mem. at 8.  Rather, *Gnagey* merely confirms what the plain language of Section 977.32 states — disclosure is required upon a *"request"* from the Fund.  *Gnagey Gas & Oil Co., Inc.* 82 A.3d at 485.  If anything, *Gnagey* is useful precedent for the notion that, upon a request, an applicant must provide not just "the precise information requested [but also] related information that is relevant to the request."  *Id.*

costs is dismissed with leave to replead.[68]

> **2.    The Commonwealth Has Sufficiently Pled that the Insurance Defendants Filed Claims for Fund Reimbursement for Releases that Occurred Prior to February 1, 1994**

The Commonwealth claims that all Insurance Defendants "submitted claims for releases that occurred before February 1, 1994," and failed to disclose records and documentation that "would have established the date of releases."[69] Such conduct would violate Section 977.33, which requires that all claims to the Fund must be for UST releases that occurred after February 1, 1994.[70] This is not the time to test the veracity of the Commonwealth's allegations. Whether these allegations are true will become apparent during discovery, but here I must view them in the light most favorable to the Commonwealth.[71] Because the Commonwealth has adequately pled that the Insurance Defendants submitted claims for releases that occurred prior to February 1, 1994, the claim that Insurance

---

[68]    *See Richardson v. Allied Interstate, Inc.*, No. 09 Civ. 2265, 2010 WL 3404978, at *3 (D.N.J. Aug. 26, 2010) ("[L]eave to amend may be denied 'if . . . the amendment would be futile.'" (quoting *Hill v. City of Scranton*, 411 F.3d 118, 134 (3d Cir. 2005)).

[69]    Compl. ¶ 424.

[70]    *See* 25 Pa. Code § 977.33(b)(3).

[71]    *See Twombly*, 550 U.S. at 544.

Defendants violated Section 977.33(b) cannot be dismissed at this time.

## V.   CONCLUSION

For the foregoing reasons, the Insurance Defendants' motion to dismiss is **GRANTED** as to the Commonwealth's subrogation claim, but is **DENIED** with respect to the Commonwealth's unjust enrichment and STSPA claims.  The Commonwealth is **DENIED** leave to replead its subrogation claim, but is **GRANTED** leave to replead its STSPA claim.  The Clerk of Court is directed to close this motion (Dkt. No. 83).

SO ORDERED

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           May 14, 2015

-20-

**- Appearances -**

**Liaison Counsel for Plaintiffs:**

Robin Greenwald, Esq.
Robert Gordon, Esq.
William A. Walsh, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
(212) 558-5500

**Counsel for the Commonwealth:**

Stephen A. Corr, Esq.
John A. Corr, Esq.
Stark & Stark
777 Twp. Line Rd., Suite 120
Yardley, PA 19067
(267) 907-9600

Dennis G. Pantazis, Esq.
Wiggins, Childs, Pantazis, Fisher
& Goldfarb, LLC
301 19th St. North
Birmingham, AL
(205) 314-0500

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
Lisa A. Gerson, Esq.
Stephen J. Riccardulli, Esq.
McDermott Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
(212) 547-5583

**Counsel for Insurance Defendants:**

Mark S. Lillie, P.C.
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000