

Boston  Brussels  Chicago  Düsseldorf  Frankfurt  Houston  London  Los Angeles  Miami
Milan  Munich  New York  Orange County  Paris  Rome  Seoul  Silicon Valley  Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Peter John Sacripanti
Chairman
psacripanti@mwe.com
+1 212 547 5583

BY HAND DELIVERY AND ELECTRONIC MAIL                    June 10, 2015

The Honorable Shira A. Scheindlin
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1620
New York, New York  10007-1312

Re:    Master File C.A. No. 1:00-1898 (SAS), M21-88, MDL No. 1358
       *Defendants' Pre-Conference Letter for June 18, 2015 Status Conference*

Dear Judge Scheindlin:

Defendants respectfully submit this letter in advance of the June 18, 2015 conference.

## JOINT AGENDA ITEMS

**I.    *Commonwealth of Pennsylvania*: Proposed CMOs Covering Initial Disclosures**

In advance of the last status conference, held on April 24, the parties met-and-conferred regarding a CMO covering exchange of initial disclosures. While agreement was reached on a number of issues, certain items remained in dispute, requiring the parties to submit competing proposals. The Court addressed the disputed provisions on April 24. Therefore, following the conference, Defendants sent Plaintiff a redline of Defendants' initial proposed CMO, which Defendants had edited to reflect all of the Court's rulings at the April conference.[1] *See Email from A. Bongiorno to M. Axline, with Defs.' CMO Redline (May 14, 2015)* (at Ex. A).

Plaintiff responded with a redline of their own which, Defendants respectfully suggest, is an improper attempt to seek reconsideration of certain of the Court's April 24 bench rulings. In fact, it is Plaintiff's position that the Court did not resolve the disputed CMO issues at all, but rather only intended the parties to meet and confer further.

---

[1] *See Status Conf. Tr. (Apr. 24, 2015)*, at 18-19 (ruling on Defs.' proposed Section II regarding site and well lists and MTBE data); *id.* at 20 (ruling on Pl.'s proposed Section V regarding opening of general liability discovery); *id.* at 20-25 (ruling on Pl.'s proposed Section III.C regarding subpoenas to environmental consultants); *id.* at 25-30 (ruling on Pl.'s proposed Sections III.A.9-11); *id.* at 30-33 (ruling on Defs.' proposed Sections III.A.8-12).

The Honorable Shira A. Scheindlin
June 10, 2015
Page 2

While Defendants are continuing to confer with Plaintiff in advance of the June 18 conference, and are hopeful that a number of the open issues will be resolved, the parties have reached an impasse regarding Section II of the proposed CMO.  That section, as drafted by Defendants in advance of the last conference, and adopted by the Court on April 24, required Plaintiff to produce a list of MTBE release sites, a list of wells within the Commonwealth where MTBE has been detected, and data showing the highest and most recent MTBE detections at each such location.  *See* Ex. A, § II.A – II.C.

Specifically, discussing Defendants' CMO Section II, the Court agreed that Plaintiff should produce the requested information, but found that Defendants' suggested date was unrealistic.  Instead, the Court ordered Plaintiff to produce the information by December 31, 2015, stating:

> So the date proposed by the defendants is unrealistic, by the end of August.  I don't think the plaintiff can do the list of all sites and wells at which MTBE has been detected, and sampling.  It's beyond what they could possibly achieve in that amount of time. … So I think the right date is no later than the end of 2015.  So the identification of sites and sampling results and everything for all the sites in issue needs to be December 31st, 2015.

*Apr. 24, 2015 Status Conf. Tr.* at 19:9-22 (at Ex. B).  Nonetheless, Plaintiff now proposes to strike Sections II.B and II.C – requiring the list of wells at which MTBE has been detected and the MTBE highest and most-recent-detect data for each site and well – arguing that the Court did not "rule" on these issues.  Defendants respectfully request that the Court confirm its adoption of Defendants' Section II with the amended date.

## II.     *New Jersey***: Record on Remand**

Pursuant to JPML Rule 10.4(a), the parties have met and conferred regarding the record to be sent to the District of New Jersey on remand of the Trial Sites.  The parties have identified a number of materials, including CMOs, PTOs and letter briefs, that were never docketed in the *New Jersey* matter.  Therefore, the parties will provide these materials to the Court and jointly request that they be docketed in Case No. 08-cv-00312.

## III.    *OCWD***: Suggestion of Remand**

As the parties indicated at the last status conference, the focus stations are ready for remand to the Central District of California.  With the exception of the BP/Shell issue discussed below, the only issue that remains is finalizing the Suggestion of Remand.  The parties have met and conferred about the content of the Suggestion of Remand and have resolved all issues except for the issue of declaratory relief.  On this issue, the parties are at an impasse and request guidance from the Court.

The Honorable Shira A. Scheindlin
June 10, 2015
Page 3

The crux of the dispute is the distinction between declaratory relief as ***a cause of action*** and declaratory relief as ***a remedy***.  Despite clear adjudication and guidance from this Court years ago, OCWD insists that declaratory relief is still an available cause of action that should be remanded to California for trial.  Accordingly, OCWD insists that the Suggestion of Remand list declaratory relief as a remaining cause of action for each focus station.  This approach is improper and contrary to the Court's prior orders.  Defendants, therefore, object to all reference to declaratory relief as a remaining cause of action in the Suggestion of Remand.

In 2006, this Court dismissed the declaratory relief cause of action.  The Court explained that:

> Defendants argue that OCWD's claim for declaratory relief should be denied because it is duplicative of the other relief sought in this action.  Defendants' point is well taken.  Such relief is identical to that sought under OCWD's common law claims for products liability, negligence, trespass, and nuisance.  Declaratory relief is generally inappropriate where duplicative of other claims in the action as the 'object of the statute is to afford a new form of relief where needed and not to furnish a litigant with a second cause of action for the determination of identical issues.' ***Accordingly, defendants' motion to dismiss plaintiff's claims for declaratory relief is granted***.

*In re MTBE Prods. Liab. Litig*., 457 F. Supp. 2d 455, 466-67 (S.D.N.Y. 2006) (emphasis added).

In 2007, the Court clarified the ruling in response to OCWD's request, noting that the cause of action had been adjudicated against OCWD but that, if the remaining causes of action supported a remedy of declaratory relief, the prior adjudication would not bar pursuit of that remedy.  (March 6, 2007 Opinion and Order, p. 11, n.26 ("If any of OCWD's remaining causes of action, such as those for nuisance or trespass, are determined to require declaratory relief, such relief remains available under those causes of action."))  Notwithstanding this, OCWD claims that the declaratory relief cause of action is still at issue and should be remanded for trial.

Defendants' position is consistent with the Court's orders that the free-standing declaratory relief cause of action has been dismissed from the case leaving only the issue of remedy to be decided by the trial judge.  At the time of the March 2007 ruling, both permanent nuisance and continuing nuisance causes of action remained in the complaint.  Now—at 14 of the 16 sites[2]—they do not.  All that remains at those sites is continuing nuisance.  The time for the "determination" referenced by the Court is at trial because all motions have been decided.  Thus, if the trial judge determines at trial that the remedy of declaratory relief: (1) is allowed under the doctrine of "continuing nuisance" in California—an issue on which the parties

---

[2] If BP & Shell-related stations are included in this count, 25 of the 27 stations only have continuing nuisance at issue.

The Honorable Shira A. Scheindlin
June 10, 2015
Page 4

disagree—and (2) is warranted based on the evidence, that judge can issue an appropriate order. The Suggestion for Remand is not the place to decide what remedies are available. Rather, it is the place to state which causes of action the Court is suggesting be remanded for trial. Accordingly, Defendants request that declaratory relief be removed from the Suggestion of Remand.

### DEFENDANTS' AGENDA ITEMS

### I.    *Commonwealth of Puerto Rico II*: Report on Status of Rule 12 Motions

Defendants will report to the Court on the status of the Rule 12 motions discussed on the May 7th teleconference and the parties' meet-and-confer discussions regarding the need for the same.

Defendants believe that the island-wide or non-site specific claims asserted in PRII are duplicative of those same claims asserted in PRI, and are barred pursuant to either the prior pending action doctrine or the statute of limitations. Defendants have attempted to engage in a meet-and-confer with Plaintiffs to avoid unnecessary motion practice on this issue (*see Ltr. from M. Dillon to S. Kauff* (June 8, 2015), at Ex. C), but, to date, Plaintiffs have taken the position that they will not discuss this matter until after June 15, when the Commonwealth's opposition briefs are due to unrelated statute of limitations motions filed in PRI. Defendants believe that this issue should be addressed now, particularly given the June 29 deadline for filing briefs in support of Rule 12 motions directed to PR II.

Similarly, Defendants have also attempted to initiate meet-and-confer discussions with Plaintiffs in response to their "bill of particulars" served on May 22, with various Defendants having identified particular inaccuracies in this amplification of Plaintiffs' pleading. Plaintiffs have, again, stated that they will respond only "a reasonable time after" filing their opposition brief on June 15 in the separate PRI action.

### II.    *OCWD*: Shell and BP Defendants' Request for Rule 54(b) Certification

Having considered the Court's discussion of Rule 54(b) certification at the April 24, 2015 Status Conference, the Shell and BP Defendants believe that Rule 54(b) certification is the most appropriate method for resolving any perceived issues arising from the Court's September 16, 2014 Opinion and Order on the BP and Shell Defendants' res judicata summary judgment motion and join OCWD's April 16, 2015 request that the Court certify that Opinion and Order as a final judgment. *See Pl.'s April 16, 2015 Pre-Conference Ltr.*, at 5-7.[3]

---

[3] The Shell and BP Defendants have been meeting and conferring about possible agreement on procedural measures to address the issues raised by OCWD at the April 24, 2015 Status Conference. The parties are continuing to meet and confer and will inform the Court of any progress either in advance of or at the June 18 Status Conference.

The Honorable Shira A. Scheindlin
June 10, 2015
Page 5

      The Shell and BP Defendants believe that Rule 54(b) certification provides the most expedient and appropriate method to challenge the Court's September 16, 2014 Order, should OCWD so desire. Rule 54(b) certification would also eliminate the need for the Shell and BP Defendants to expend time and resources on remand to and a trial in the Central District of California, when this Court has already granted summary judgment on all claims against those defendants.

***

      As always, we appreciate your Honor's attention to this matter and ask that this letter be docketed by the Clerk's Office so that it is part of the Court's file.

Sincerely,

*Peter John Sacripanti*

Peter John Sacripanti

cc:  All Counsel of Record by LNFS, Service on Plaintiffs' Liaison Counsel

# EXHIBIT A

**Gerson, Lisa**

---

| | |
|---|---|
| **From:** | Bongiorno, Anthony |
| **Sent:** | Thursday, May 14, 2015 6:38 PM |
| **To:** | maxline@toxictorts.org; Pardo, James; Riccardulli, Stephen; Gerson, Lisa; cbollar@archerlaw.com; wstack@tmo.blackberry.net; wstack@archerlaw.com; peter.condron@sedgwicklaw.com |
| **Cc:** | 'Tyler Wren'; 'Michael Coren'; scorr@stark-stark.com; DKrainin@bdlaw.com; 'Miller & Axline' |
| **Subject:** | RE: PA CMO |
| **Attachments:** | 2015-05 PA Proposed CMO With Bench Rulings v.2.docx |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Mike: I hope this email finds you well. Please see the CMO defendants have put together, embodying the Court's rulings from the status conference.  We intend to submit the same to the Court by Wednesday of next week. If you would like to discuss, please advise at your earliest convenience.

Best  --  Tony

**Anthony A. Bongiorno**
Partner

**McDermott**
**Will & Emery**

McDermott Will & Emery LLP  |  28 State Street  |  Boston, MA 02109-1775
Tel +1 617 535 4044  |  Mobile +1 617 877 7736  |  Fax +1 617 535 3800

**Biography** | **Website** | **vCard** | **E-mail** | **Twitter** | **LinkedIn** | **Blog**

DEFENDANTS' 5/14/15 REDLINE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>*Commonwealth of Pennsylvania, et al. v. Exxon Mobil Corporation, et al.*, Case No. 1:14-cv-06228 SAS | Master File No. 1:00-1898<br>MDL 1358 (SAS) M21-88 |

SHIRA A. SCHEINDLIN, U.S.D.J.

### [PROPOSED] CASE MANAGEMENT ORDER NO.

This Case Management Order ("CMO") defines the scope of initial disclosures in the above-captioned case (hereinafter the "*Pennsylvania case*"). Additional discovery will be addressed in subsequent CMOs.

**I.    IDENTIFICATION OF COVERED PERSONS**

By May 29, 2015, parties who have not yet done so in MDL 1358 shall identify "covered persons" in accordance with Sections 2(b) and 2(c) of the Court's 2005 Order for Preservation of Documents.

**II.    INITIAL DISCLOSURES BY PLAINTIFFS:**

A.    By December 31, 2015, Plaintiffs shall identify every "release" site (by name, address and site identification number) within the Commonwealth at which Plaintiffs contend neat MTBE or gasoline with MTBE was released.

[Deleted: August 30]

B.    By December 31, 2015, Plaintiffs shall identify every potable well (by name, address, GIS coordinates, and Public Well System identification number) within the Commonwealth where MTBE was detected.

[Deleted: August 30]

1

DEFENDANTS' 5/14/15 REDLINE

C.     By December 31, 2015, for each site or well identified in response to    |Deleted: August 30|

Sections II.A and II.B above, Plaintiffs shall identify:

    1.     The most recent date MTBE was detected in groundwater at each site or well, and the concentration of MTBE detected on such date; and

    2.     The maximum concentration of MTBE detected, at any time, at each site or well, and the date of such detection.

D.     In responding to Sections II.A through II.C, Plaintiffs shall not limit their responses to information contained in readily accessible electronic data (as defined below).

**III.    INITIAL PRODUCTION OF SITE FILES AND ELECTRONIC DATA**

A.     By July 30, 2015, Plaintiffs shall produce to Defendants any and all readily accessible electronic data (*i.e.*, databases or other files created for the purpose of centralizing or aggregating storage of information) in their possession, custody or control, or in the possession, custody or control of any agency or department of the Commonwealth, regarding the following:

    1.     The presence and concentration of MTBE or TBA in any public water supply wells in Pennsylvania, including, but not limited to, any detections reported in any Safe Drinking Water Information System (SDWIS) database;

    2.     The presence and concentration of MTBE or TBA in any groundwater or surface waters in Pennsylvania;

    3.     The presence and concentration of MTBE or TBA in any private water supply well(s) or potable spring(s) in Pennsylvania, including, but not limited to, data (if any) in the Commonwealth's possession compiled by Bucks, Chester, Delaware, Montgomery and Philadelphia Counties (and all other counties which may also compile such data);

    4.     The payment of public funds for the investigation, removal, remediation, monitoring or treatment of MTBE or TBA in Pennsylvania (to the extent that data related to the payment of

DEFENDANTS' 5/14/15 REDLINE

public funds is not maintained so as to identify MTBE and/or TBA, Plaintiffs shall produce such data for reformulated gasoline or gasoline containing MTBE);

5.      The amount of public funds used to pay for the remediation, cleanup or treatment of MTBE or TBA in Pennsylvania, the locations at which such public funds were expended, and any costs, damages or injury allegedly sustained by Plaintiffs as a result of the presence of MTBE or TBA in Pennsylvania (to the extent that data related to the expenditure of public funds is not maintained so as to identify MTBE and/or TBA, Plaintiffs shall produce such data for reformulated gasoline or gasoline containing MTBE);

6.      The concentration of gasoline constituents in groundwater at any release site identified in response to Section II.A above including, but not limited to, MTBE or TBA; and

7.      Any site remediation reports related to releases of MTBE, TBA or gasoline containing MTBE or TBA where such releases allegedly caused impacts to soils and/or groundwater in the Commonwealth.

B.      By the June 18, 2015 status conference, Plaintiffs will report to the Court regarding (i) the number of sites implicated by the below categories and (ii) the availability of information on the below categories in readily accessible electronic format. The Court will then set a date for production of such readily accessible electronic data (to the extent so maintained by the Commonwealth).

1.      The location and ownership interest, including leases, that the Commonwealth, including any agency or department thereof, has or had in any underground storage tank which stored gasoline and any terminal or refinery which was engaged in the refining, distribution, storage or sale of neat MTBE, reformulated gasoline, or gasoline containing MTBE;

2.      The location and ownership interest, including leases, that the Commonwealth, including any agency or department thereof, has or had in any pipeline or delivery system (*e.g.,* railcar, barge, tanker or tank truck) engaged in the delivery of neat MTBE, reformulated gasoline, or gasoline containing MTBE for distribution or sale in Pennsylvania;

3.      The identity of parties with whom the Commonwealth, including any agency or department thereof, had supply contracts to deliver

3

> gasoline containing MTBE, reformulated gasoline, or neat MTBE to Pennsylvania, including exclusive supply contracts, and contracts with delivery services, franchisees, lessees, lessors, jobbers, common carriers (including, but not limited to, pipelines), distributors, terminals, other refiners, or any other entities;

4.      The location, dates, volumes, sources and causes of any releases of gasoline containing MTBE, reformulated gasoline, or neat MTBE, by the Commonwealth, including any agency or department thereof, into soil, ground water or surface water within Pennsylvania; and

5.      Any site remediation reports related to releases of MTBE, reformulated gasoline, or gasoline containing MTBE at sites that are or were owned and/or operated by the Commonwealth, including any agency or department thereof, at the time of release and where such releases caused MTBE impacts to soils and/or groundwater.

C.      Production of the electronic data described in Section III.A shall be made on a "rolling" or continuing basis starting no later than May 29, 2015.

D.      If any of the foregoing electronic data or files also contains data or information about chemicals or substances other than MTBE, such data or information shall be produced and not withheld or redacted.

E.      For each site that Plaintiffs do or may contend is implicated in this matter, Plaintiffs shall produce to Defendants any site files from the Underground Storage Tank Indemnity Fund (USTIF) on or before July 30, 2015.

## IV.     INITIAL DISCLOSURES BY DEFENDANTS

A.      By July 30, 2015, each Defendant shall produce to Plaintiffs any and all readily accessible electronic data (*i.e.*, databases or other files created for the purpose of centralizing or aggregating storage of information) in its possession, custody or control regarding the following:

1.      The location and ownership interest, including leases, that responding Defendant has or had in any service station,

underground storage tank system ("USTs") motor fuel terminal or refinery in Pennsylvania which was engaged in the refining, distribution, storage or sale of neat MTBE, reformulated gasoline, or gasoline containing MTBE;

2.   The location and ownership interest, including leases, that responding Defendant has or had in any pipeline or delivery system (*e.g.*, railcar, barge, tanker or tank truck) engaged in the delivery of neat MTBE, reformulated gasoline, or gasoline containing MTBE for distribution or sale in Pennsylvania;

3.   The identity of parties with whom the responding Defendants had supply contracts to deliver gasoline containing MTBE, reformulated gasoline, or neat MTBE to Pennsylvania, including exclusive supply contracts, and contracts with delivery services, franchisees, lessees, lessors, jobbers, common carriers (including, but not limited to, pipelines), distributors, terminals, other refiners, or any other entities;

4.   The name, grade, product codes, blend information and other identifying information for gasoline containing MTBE, reformulated gasoline, or neat MTBE that was distributed by the responding Defendant in Pennsylvania;

5.   The location, dates, volumes, sources and causes of any releases of gasoline containing MTBE, reformulated gasoline, or neat MTBE, by Defendant, into soil, ground water or surface water within Pennsylvania;

6.   Any site remediation reports related to releases of MTBE, reformulated gasoline, or gasoline containing MTBE at sites that are or were owned and/or operated by the responding Defendants at the time of release and where such releases caused MTBE impacts to soils and/or groundwater;

7.   The volumes of neat MTBE, reformulated gasoline, and gasoline containing MTBE that the responding Defendant refined, distributed, stored, blended, supplied to or sold in the Commonwealth of Pennsylvania; and

8.   Lists of Pennsylvania MTBE release sites.

B.   Plaintiffs will provide to Defendants the list of sites at which Plaintiffs contend gasoline was released. (*Apr. 24, 2015 Tr.* at 30).  Within sixty (60) days after that production by Plaintiffs, each Defendant shall produce to Plaintiffs any and all readily

5

**DEFENDANTS' 5/14/15 REDLINE**

accessible electronic data (*i.e.*, databases or other files created for the purpose of centralizing or aggregating storage of information) in its possession, custody or control regarding licensing branding and franchise agreements for gasoline sales in Pennsylvania for every site (by name, address and site identification number) within the Commonwealth at which Plaintiffs contend gasoline was released.

  C. In responding to paragraphs (A)(1)-(A)(7), above, Defendants need produce readily accessible electronic data for "reformulated gasoline" only where the requested information is not available specifically for gasoline containing MTBE.

  D. Production of the electronic data described in Section IV.A above shall be made on a "rolling" or continuing basis starting no later than May 29, 2015.

  E. Plaintiffs intend to serve subpoenas on Defendants' current or former environmental consultants to obtain readily available electronic data concerning: (1) concentrations of MTBE and/or BTEX in soil and groundwater at release sites, and (2) consulting reports regarding release sites. Plaintiffs shall provide all Defendants with an advance courtesy copy of any such subpoena two (2) weeks prior to service on a Defendant's current or former environmental consultant. Any Defendants' consent for a current or former consultant to respond to such subpoena does not prejudice Defendants' or consultants' right to assert attorney-client privilege, attorney work product or any other privileges or objections in responding to Plaintiffs' subpoena(s).

**V. ELECTRONIC LOOSE FILES**

  A. With respect to the readily accessible electronic data to be produced pursuant to Parts III and IV of this Order, the parties need not produce Electronic Loose Files ("ELF").

6

DEFENDANTS' 5/14/15 REDLINE

B.      For purposes of this Order, ELF includes any electronic files that do not consist of files or data from systems created to centralize or aggregate storage of a party's information (*i.e.* databases).  Discrete word processed documents (*e.g.* memoranda, correspondence), PDFs, images, emails and their attachments, and the like are considered ELF.

VI.     **OTHER DISCOVERY PERMITTED**

Beginning on May 29, 2015, the parties may engage in written discovery, subject to any and all appropriate objections, as to the following:

A.      Damages Plaintiffs allege;

B.      General liability discovery; and

C.      Discovery related to Defendants' affirmative defenses.

VII.    **FUTURE DISCOVERY**

The parties shall meet and confer after August 30, 2015 to discuss:

A.      The timing for completion of the production of electronic files that are not readily available pursuant to Parts III and IV, and any further discovery the parties propose, taking account of the electronic data the parties produce pursuant to section III and IV of this CMO;

B.      Production of paper or non-electronic site remediation files; and

C.      Methods for management of future discovery.


SO ORDERED

*D R A F T*


_____
DATED:  New York, New York          Shira A. Scheindlin
        May ___ , 2015              U.S.D.J.

| Deleted: April |

# EXHIBIT B

1

F4OAMTBCps

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x
 3                                           00 MDL 1358
      IN RE:  METHYL TERTIARY BUTYL          00-cv-01898 (SAS)
 4    ETHER ("MTBE") PRODUCTS                04-cv-04968 (SAS)
      LIABILITY LITIGATION                   07-cv-10470 (SAS)
 5                                           14-cv-06228 (SAS)

 6    ------------------------------x
 7                                           April 24, 2015
                                             2:30 p.m.
 8
      Before:
 9
                         HON. SHIRA A. SCHEINDLIN,
10
                                             District Judge
11
                              APPEARANCES
12
      MILLER, AXLINE & SAWYER
13         Attorneys for Plaintiffs
      BY:  MICHAEL D. AXLINE, ESQ.
14         DUANE MILLER, ESQ.

15    JACKSON GILMOUR & DOBBS, PC
           Attorneys for Plaintiffs
16    BY:  JOHN D.S. GILMOUR, ESQ.
           WILLIAM J. JACKSON, ESQ.
17
      WEITZ & LUXENBERG, P.C.
18         Plaintiffs' Liaison Counsel
      BY:  ROBIN GREENWALD, ESQ.
19
      McDERMOTT, WILL & EMERY
20         Attorneys for Defendants Exxon Mobil Corp.
           and Defendants' Liaison Counsel
21    BY:  JAMES A. PARDO, ESQ.
           ANTHONY A. BONGIORNO, ESQ.
22         STEPHEN J. RICCARDULLI, ESQ.

23    SEDGWICK LLP
           Attorneys for Defendant Mobil Oil Corporation
24    BY:  PETER C. CONDRON, ESQ.

25
```

                                                                18
F4OAMTBCps

1   Court.  If there are any issues with it, we'll raise it at the

2   next conference.

3           THE COURT:  All right.  But we've managed to do this

4   in New Jersey.

5           MR. PARKER:  Yes.

6           THE COURT:  It took some work, it took some thinking,

7   but we got it done.

8           MR. PARKER:  I'm very hopeful that will happen here.

9           THE COURT:  And the MDL panel went along with it.  So

10  there's a corrective in this MDL for splitting the case between

11  the portion that can be remanded and the portion that

12  remains -- which of course raises another issue in the OCWD

13  case, and that is, what is the mechanism for continuing to move

14  the remainder of the case along, here in the district court?

15          MR. AXLINE:  We're meeting and conferring on that

16  topic also, your Honor.  And I think we'll have either a

17  suggestion or a reply and dispute to present to you at the next

18  conference.

19          THE COURT:  But that's not ready for today.

20          MR. AXLINE:  No.

21          THE COURT:  OK.  Well, that takes us to the

22  Pennsylvania matter.  And this is a real problem because it has

23  to do with identifying the site at issue.  And defendants say

24  plaintiffs have an obligation to do it and plaintiff should do

25  it, plaintiff should do it very promptly and certain other

                   SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

F4OAMTBCps

1    discovery shouldn't proceed until plaintiff has done it.  And

2    plaintiffs say, well, it may be our burden, but it's always

3    required us to obtain information from defendants before we are

4    able to identify all of the sites.  So I have sort of sympathy

5    for both sides on this.  I realize it's plaintiff's obligation

6    but plaintiff can't do it until they get the cooperation of

7    defendants in providing the material they need to identify all

8    those sites.

9         So the date proposed by the defendants is unrealistic,

10   by the end of August.  I don't think the plaintiff can do the

11   list of all sites and wells at which MTBE has been detected,

12   and sampling.  It's beyond what they could possibly achieve in

13   that amount of time.

14        (Pause)

15        THE COURT:  I think somebody hung up on us.  Some of

16   you are still on the phone, though, I assume.

17        So in any event, I think there has to be a date, but

18   there has to be a schedule within the time frame as to what

19   plaintiff will need in order to get to that goal.  So I think

20   the right date is no later than the end of 2015.  So the

21   identification of sites and sampling results and everything for

22   all the sites in issue needs to be December 31st, 2015.  But

23   within the months remaining, May through whatever, November, to

24   be ready to put it all together in December is to identify what

25   is still needed from defendants to make this viable.

# EXHIBIT C

# McDermott
# Will & Emery

Boston  Brussels  Chicago  Dallas  Düsseldorf  Frankfurt  Houston  London  Los Angeles  Miami
Milan  Munich  New York  Orange County  Paris  Rome  Seoul  Silicon Valley  Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Michael J. Dillon
Attorney at Law
mdillon@mwe.com
+1 212 547 5677

June 8, 2015

BY ELECTRONIC MAIL AND LNFS

Scott E. Kauff, Esq.
Law Offices of John K. Dema
11300 Rockville Pike, Suite 112
Rockville, MD  20852

Re:    Commonwealth of Puerto Rico, et al. v. Shell Oil Co., et al.: No. 14-cv-01014 (SAS)
       *Defendants' Motion to Dismiss Island-Wide Claims for Relief*

Dear Scott:

Defendants in the above-referenced action write pursuant to Rule IV.B of Judge Scheindlin's Individual Rules and Procedures.  As discussed at the May 7, 2015 teleconference with the Court, all Defendants intend to move for dismissal of Plaintiffs' claims for "island-wide" relief in this second *Puerto Rico* action, if necessary.  However, Defendants respectfully submit that there is no need to burden the Court with this motion.  Plaintiffs' island-wide claims are duplicative of those presented in their first action, and are therefore barred by the "prior pending action" doctrine, the relevant statute of limitations, and this Court's prior rulings.  Accordingly, based on the reasons below, Plaintiffs' island-wide claims should be voluntarily dismissed, with prejudice, and left for resolution in the first *Puerto Rico* action.[1]

As you know, in this second *Puerto Rico* action concerning MTBE (the "Puerto Rico II action"), Plaintiffs allege a generalized "island-wide" harm due to MTBE and seek island-wide relief for the same.  However, these claims mirror those raised in their 2007 complaint, *i.e.*, the "Puerto Rico I action."  *See* Ex. A (comparing allegations in the 2007 and 2013 complaints).  This duplication is inappropriate.  This Court has not authorized seriatim actions designed to recover generalized, non-site-specific relief already sought in a prior action (which action is still pending before this Court).  Rather, the Court has only allowed for the possibility of a subsequent lawsuit premised on <u>new</u> detections of MTBE at <u>specific sites</u> not previously known to Plaintiffs.  *See, e.g., July 12, 2012 Status Conf. Tr.* at 55-57.  In other words, Plaintiffs' second *Puerto Rico* action concerning MTBE  should be limited solely to claims concerning allegedly "new" site-specific injuries due to MTBE, and cannot re-hash general issues or claims that have been or will be decided in the first action.  Indeed, Plaintiffs' counsel appears to have previously

---

[1] Defendants do not concede that the Commonwealth's island-wide claims in that action are valid, and reserve the right to contest such claims if and when they are litigated in *Puerto Rico I*.

Scott Kauff
June 8, 2015
Page 2

acknowledged this fact.  *See Ltr. From M. Axline to P. Hanebutt* (Mar. 17, 2014) ("The PRMTBE II litigation asserts claims with respect to *specific sites* that were dismissed without prejudice from PRMTBE I by CMO 109.") (emphasis added); *May 1, 2014 Status Conf. Tr.* at 21 (Ms. O'Reilly:  "Puerto Rico could not have had notice of the injury that is alleged in PR II, the second cause of action, second case, until those wells were contaminated.").

Further, this Court has already sided with Defendants on this matter.  With regard to Plaintiffs' duplicative island-wide claims in the Puerto Rico II action, the Court stated:

> THE COURT:  I have already ruled on that in the first case.  You can't, Ms. O'Reilly, ignore the Court's rulings, refile, and pretend we are starting all over again on a clean slate.  We are not.  The only part of the new case I'm interested in is the 53 site-specific places where there is new evidence of new injury.  The rest is *res judicata*, it's done.  The motion is going to be granted on anything except for the 53 new sites.

*See May 1, 2014 Status Conf. Tr.* at 24.  This conclusion as to the inappropriateness of Plaintiffs' reintroduction of broad, island-wide allegations and/or claims for relief in a second action was unequivocal.  Indeed, during the same 2014 hearing, the Court reiterated:

> THE COURT:  To the extent that the 2013 complaint purports to bring island-wide claims – I see.  I already dismissed in the July 2013 opinion?
>
> MS. HANEBUTT:  Right.
>
> THE COURT:  Then that's *res judicata*.
>
> MS. HANEBUTT:  No, they haven't been dismissed in that.  They are either barred in the 2013 action on the grounds of statute of limitations because surely they knew by the time they brought the case in 2007, or by a prior pending case that is being litigated.
>
> THE COURT:  I agree.  That's what I'm saying.  It really is covered by my July 2013 opinion because it did talk in general terms about the waters of Puerto Rico, generally speaking.  If it is not site-specific, I have already ruled and I dismissed it.
>
> MS. HANEBUTT:  Thank you.
>
> THE COURT:  I agree with you again.  I think that given the issues we discussed at this conference, and you of course will have this record, this briefing should be quite limited.  It really comes down to the individual motions I heard and then possibly, if you need to – and I don't think you do, because you have already won

Scott Kauff
June 8, 2015
Page 3

> it on the defense side, the repetitive ones, that's the 17, the island-wide damage to
> the water or whatever, that was done on the first Puerto Rico case.

*Id.* at 27-28.

The Court's directive is well-supported by the relevant law.  The "prior pending action"
principle – which derives from a district court's general power to administer its docket – prompts
a district court to stay or dismiss a suit that is duplicative of another suit in federal court.  *Curtis
v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000).  The Second Circuit has determined that this
power should be exercised by giving priority to the first-filed suit absent a showing of "special
circumstances" or the "balance of convenience" that merits giving priority to the second.  *See
First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989).  No such
circumstances exist here – in fact, these considerations counsel <u>in favor</u> of the application of the
prior pending action doctrine.

Importantly, this doctrine bars duplicative claims for relief as against <u>all</u> Defendants in
the Puerto Rico II action – not solely those Defendants named in the Puerto Rico I action.
Identical defendants are not requisite for the application of the doctrine.  *See Howard v. Klynveld
Peat Marwick Goerdeler*, 977 F. Supp. 654, 664 (S.D.N.Y. 1997) ("For a second action to be
duplicative, it is not necessary that the parties be identical."); *Dragon Capital Partners L.P. v.
Merrill Lynch Capital Servs. Inc.*, 949 F. Supp. 1123, 1127 (S.D.N.Y. 1997) ("Courts have
repeatedly ruled that parties and issues need not be identical in order for one action to be stayed
or dismissed in deference to an earlier action." (internal quotations omitted)).  Rather, the parties
need only represent the same interests.  *Howard*, 977 F. Supp. at 664 (citing *The Haytian
Republic*, 154 U.S. 118, 124 (1894)).  This is exactly the case here.  With regard to Plaintiffs'
claims for island-wide relief, the newly added Defendants (most of which are subsidiaries,
predecessors or affiliates of Defendants named in the Puerto Rico I action) do not present any
different activity or interest than those presented by the Defendants named in Puerto Rico I (most
of whom are named again in this second action).

The relevant one-year statute of limitations bars Plaintiffs' duplicative island-wide claims
as well.  Indeed, prescription serves as an alternative basis for dismissal – Plaintiffs' non-site-
specific claims (which do not require any site-specific detection) are untimely under well-settled
Puerto Rico law.  To wit:  under Puerto Rico law the limitations period begins to run from the
time the aggrieved party has "notice of the injury, plus notice of who caused it."  *In re MTBE
Prods. Liab. Litig.*  2013 U.S. Dist. LEXIS 181837 at *10 (S.D.N.Y. Dec. 30, 2013).  The Court
has already decided that the Puerto Rico I complaint, filed on June 12, 2007, demonstrates that
the Commonwealth had notice as of that date "of the injury that MTBE had allegedly caused."
*In re MTBE Prods. Liab. Litig.*, 959 F. Supp. 2d 476, 496 (S.D.N.Y. 2013).  Notably, that initial
complaint alleges that the Commonwealth believes MTBE to be widespread in the "waters of the
Commonwealth," and therefore seeks damages for testing throughout the Commonwealth – the
very same relief that is sought again in PR II.  *Compare, e.g.*, Puerto Rico I Compl. ¶ 5, Request
for Relief ¶ B (June 12, 2007) with Puerto Rico II First Am. Compl. Request for Relief ¶ C(1)-

Scott Kauff
June 8, 2015
Page 4

(2).  Further, Plaintiffs obviously had notice on June 12, 2007 of the alleged involvement of the original Defendants that were named in the Puerto Rico I complaint.[2]  Thus, at minimum, island-wide claims against these twice-named Defendants are time-barred.  Common sense dictates that the Court need not wait until it rules on Defendants' site-specific summary judgment motion on limitations in Puerto Rico I to find Plaintiffs' island-wide claims in the Puerto Rico II action untimely or impermissibly duplicative with regard to the twice-named Defendants.

As to the Defendants named for the first time in the Puerto Rico II action, if those entities can establish Plaintiffs had "notice" of their participation in the Puerto Rico gasoline market more than a year before Plaintiffs filed their second complaint on September 4, 2013, then all island-wide claims against those Defendants should be dismissed as well, just as the Court did for certain newly added Defendants in Puerto Rico I.  *See In re MTBE Prods. Liab. Litig.*, 959 F. Supp. 2d at 497-99, *reconsideration denied*, 2013 WL 4008632 (Aug. 2, 2013); *In re MTBE Prods. Liab. Litig.*, No. 07 CIV, 10470, 2013 WL 6869410, at *4 (S.D.N.Y, Dec. 30, 2013).  At least the following newly-added Defendants will provide Plaintiffs with such evidence:

- CITGO International Latin America;
- Colonial Caribbean, Inc.;
- Chevron Texaco Global Trading;
- Texaco International Trading Inc.;
- ExxonMobil Sales & Supply LLC.

In sum, Defendants respectfully submit that no motion should be necessary to address Plaintiffs' repetitive allegations.  However, if Plaintiffs do not stipulate to a voluntary dismissal, with prejudice, of these island-wide claims, Defendants will file our motion pursuant to Fed. R. Civ. P. 12 on the schedule set by the Court.

Finally, Defendants must address Mr. Short's June 5, 2015 letter to Defendants, wherein Plaintiffs state that they will only engage in a meet-and-confer with Defendants on issues pertaining to possible Fed. R. Civ. P. 12 motions in the Puerto Rico II action "within a reasonable time" <u>after</u> the Commonwealth files its opposition to Defendants' summary judgment motion (in the Puerto Rico I action) on June 15, 2015.  There is no reason for such delay, particularly given the June 29 deadline for Defendants to file Rule 12 motions.  The Puerto Rico II action is a separate case, and the summary judgment briefing schedule in Puerto Rico I should not impede a dialogue on the issues raised above (or in Defendants' letters responding to Plaintiffs' bill of particulars).  Plaintiffs have engaged numerous outside counsel to assist them in the above-referenced lawsuit, and there is no reason at least one of those counsel cannot meet-and-confer with Defendants on these issues in a more timely fashion.

---

[2] Plaintiffs also had notice prior to September 4, 2013 (when Puerto Rico II was filed) of the Defendants named in the Puerto Rico I Third Amended Complaint that have been dismissed on extinctive prescription grounds, *e.g.*, Defendants Peerless, Trammo, Vitol, Petrobras America Inc., and Idemitsu – as evidenced in the Court's limitations rulings in the prior action.

Scott Kauff
June 8, 2015
Page 5


As always, Defendants are available to discuss the above with you.


Sincerely,

*Michael J. Dillon*

Michael J. Dillon


cc:     All Counsel via LNFS

Attachments (1)