

Boston  Brussels  Chicago  Düsseldorf  Frankfurt  Houston  London  Los Angeles  Miami
Milan  Munich  New York  Orange County  Paris  Rome  Seoul  Silicon Valley  Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

James A. Pardo
Attorney at Law
jpardo@mwe.com
+1 212 547 5353

BY HAND DELIVERY AND ELECTRONIC MAIL                    June 15, 2015

The Honorable Shira A. Scheindlin
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1620
New York, New York  10007-1312

      Re:    <u>Master File C.A. No. 1:00-1898 (SAS), M21-88, MDL No. 1358</u>
              *Defendants' Pre-Conference Reply Letter for June 18, 2015 Status Conference*

Dear Judge Scheindlin:

      Defendants respectfully submit this reply letter in advance of the June 18 conference.[1]

## JOINT AGENDA ITEMS

**I.**    <u>***Commonwealth of Pennsylvania*: Proposed CMOs Covering Initial Disclosures**</u>

      <u>Section II.A – MTBE Release Sites List</u>:  The purpose of the MTBE Release Site List is to identify for Defendants the release sites at issue in this litigation.  *See, e.g., Apr. 24, 2015 Status Conf. Tr.* at 18:21-23 (COURT: "Well, that takes us to the Pennsylvania matter.  And this is a real problem because it has to do with identifying the site[s] at issue."); *see also id.* at 19:1-8 (recognizing it is Plaintiff's burden to identify the sites at issue).  To that end, Defendants' original proposed language for Section II.A, which Defendants understood the Court to have adopted at the April conference, required Plaintiff to identify "every 'release' site … within the Commonwealth at which Plaintiffs contends neat MTBE or gasoline with MTBE was released."

      Plaintiff now seeks to change Section II.A to require identification only of release sites "reported to the Commonwealth."  *See Pls.' Preconf. Ltr.* at 1.  Defendants explained to Plaintiff that the "reported to" language proposed by the Commonwealth arguably would exclude MTBE release sites discovered by the Commonwealth itself, either because the site is a Commonwealth-owned/operated site, or for some other reason we cannot presently foresee.  *See Email from L. Gerson to T. O'Reilly* (June 11, 2015) (at Ex. A).  Defendants respectfully request that the Court

---

[1] Due to the length of Plaintiffs' opening letter – 10 pages – Defendants respectfully request a short extension of the Court's page limit for reply letters.

The Honorable Shira A. Scheindlin
June 15, 2015
Page 2

adopt their language, which is clearer and more inclusive, for Section II.A.[2]  *See Defs.' Proposed CMO for Signature* (at Ex. B).

        <u>Section II.B – Potable Wells with MTBE Detections</u>:   Defendants' Section II.B would require Plaintiff to identify "every potable well … within the Commonwealth where MTBE was detected."  *See* Ex. B (*Defs' Proposed CMO for Signature*).  Defendants understood the Court to have adopted this section as well.  *See Defs.' Preconf. Ltr.* at 2 (citing April 24 status conference).  However, we address again the necessity of this production by Plaintiff.

        First, Plaintiff has alleged that "MTBE has been found throughout the Commonwealth … in both public water supply wells and private domestic wells."  *Am. Compl.* ¶ 229.  Plaintiff then seeks to recover, *inter alia*, the cost of "past and future treatment and remediation of all groundwater containing detectable levels of MTBE … including in both public and private water wells."  *Id.* at Prayer for Relief.  Defendants cannot conduct discovery into those claims unless the wells are identified.[3]

        Second, it is ***Plaintiff's*** obligation to identify the wells at issue. Put differently, Plaintiff has the obligation to define the scope of its case.  The Court previously has agreed with this concept.  In *Puerto Rico*, when plaintiffs argued that they did not know the location of wells at issue, the Court ordered them to make a non-party agency (PRASA) "send people out in trucks, with maps, [and] stick the pin in the map where the well is."  *Mar. 30, 2011 Status Conf. Tr.* at 58:23-59:4.  The Court emphasized the need for this information:

> They've got to do it if they want to bring this lawsuit.  They hope
> to recover damages.  They've got to be able to put a pin in a map.
> And they have to do it by July 1.  …  In fact, putting it differently,
> any place there's not a pin on a map is out of [the] case.

*Id.* at 59:10-19; *see also CMO 89* (memorializing ruling).  Likewise, Plaintiff here should be required to identify to Defendants the wells at issue in the litigation and their locations.

        Finally, Plaintiff's argument that it should not be required to produce information not in its possession or create data that does not exist is misplaced for several reasons.  Obviously, a party cannot provide information it does not have.  That is no reason, however, to excuse Plaintiff from identifying the wells at which MTBE has been detected based on the information

---

[2] Defendants' Section II.A states:  "By December 31, 2015, Plaintiff shall identify every 'release' site (by name, address and site identification number) reported to the Commonwealth, or of which the Commonwealth is otherwise aware, at which Plaintiff contends neat MTBE or gasoline with MTBE was released."

[3] Whether Plaintiff may recover for the cost of searching out and sampling wells that may or may not be impacted by MTBE is another issue for another day.  *See Pls.' Ltr.* at 2.

The Honorable Shira A. Scheindlin
June 15, 2015
Page 3

in its possession, custody and control.  Nor is it accurate to say that the Commonwealth does not have at least some of this information.  The Pennsylvania Bureau of Safe Drinking Water regulates the nearly 9,200 public water systems in the state and receives, or has the ability to demand, submission of private well drilling records.[4]

     Section II.C – Maximum and Most-Recent MTBE Data:  Plaintiff appears to admit that the Court addressed Defendants' Section II.C at the last conference (*see Pls.' Preconf. Ltr.* at 2), but now suggests that the discussion related only to release sites, not wells, and objects to summarizing data.  Plaintiff seems to assume that the Court did not review Defendants' proposed CMO before discussing it with the parties at the last conference.  Regardless, as explained in advance of the April 24 conference, Plaintiff's identification of maximum and most-recent MTBE data will validate the inclusion of specific sites and wells in the case and, Defendants believe, stimulate fruitful discussion on efficient ways to streamline discovery and/or structure this action.  *See Defs.' Apr. 16 Preconf. Ltr.*, at 3 n.4; *Defs.' Apr. 21 Preconf. Reply*, at 2.

     Plaintiff's Proposal for CMO 4 Declarations:  Plaintiff now seeks to add a provision to the CMO that would require Defendants to produce so-called CMO 4 declarations.  Plaintiff's request ignores the fact that the CMO presently being submitted for signature requires Defendants to provide information regarding locations at which MTBE has been released (*see* Ex. B, § IV.A.8).  In addition, Plaintiff has propounded "special interrogatories" that request information regarding the locations at which MTBE has been detected in soil and groundwater (*see* No. 7).  This information will assist Plaintiff in developing its site list.

     By contrast, CMO 4 relates to supply generally and will not assist Plaintiff in the development of its site list.  CMO 4 does not require Defendants to identify the stations to which MTBE gasoline was delivered.  Instead, the CMO 4 responses would provide information which could be used (at most) to identify counties or geographic regions in which MTBE gasoline has been delivered.  And while that might provide some circumstantial evidence as to whether MTBE *may* have been delivered to the stations within those counties, such anecdotal evidence is insufficient to determine which release sites should be included on the MTBE Site List.[5]  Defendants respectfully submit that the most reliable way to identify the release sites at which MTBE has been detected is through a review of the DEP site remediation and USTIF files, which are within the Plaintiff's possession.

---

[4] *See, e.g.*, Bureau of Safe Drinking Water, *available at* http://www.portal.state.pa.us/portal/server.pt/community/bureau_of_safe_drinking_water/20891; 32 P.S. § 645.10.

[5] The Puerto Rico Plaintiffs' use of circumstantial evidence to create their site list resulted in the inclusion of more than 300 non-MTBE sites (one third of the total universe of sites) which ultimately had to be dismissed.  Like, Puerto Rico, RFG gasoline was not required for sale throughout Pennsylvania.  Instead, as explained at the last conference, RFG gasoline was required in only 5 counties.  Defendants did not suggest that MTBE gasoline was never distributed outside those counties, but only that it would be inappropriate to assume that MTBE gasoline was sold to all stations within Pennsylvania.

The Honorable Shira A. Scheindlin
June 15, 2015
Page 4

Moreover, while Defendants produced CMO 4 information in certain prior cases, they were not required to do so until the "Relevant Geographic Area" ("RGA") had been defined for each case. *See* CMO 4 § II.C (limiting RGA to specific counties, zip codes or water supply distribution areas). Here, Plaintiff seeks to require Defendants to provide CMO 4 information for the entire state of Pennsylvania over a 35-year time period. The geographic and temporal scope of the requests would present a substantial burden on Defendants. Defendants respectfully submit that this information should not be required until after the parties and Court have discussed a trial structure for this case. Only then can the parties and Court assess whether this state-wide exercise is necessary or "foundational" to future statewide discovery. This will ensure also that Defendants do not spend considerable resources providing information that will not be needed for the "eventual resolution of the case." *Pls.' Preconf. Ltr.* at 3.

## II.    *OCWD*: Suggestion of Remand

Reference to Completed Discovery - OCWD's revised language in the draft Suggestion of Remand regarding completion of discovery is acceptable to Defendants.

Reference to Resolution of Claims and Parties - Defendants request that a sentence be included in the Suggestion of Remand explaining to the Judicial Panel that, other than the claims being remanded, with respect to the Focus Sites,

> All other claims for relief were either decided against Plaintiff or stipulated as dismissed on the terms set forth in the application stipulations, subject to the right of appeal, so no other claims or defendants remain at these sites for purposes of trial after remand.

This sentence is essential to the Suggestion of Remand in order to fully apprise the Judicial Panel of the status of case. It is an accurate statement and, without it, the Suggestion of Remand could be read to erroneously suggest that there are other claims and/or defendants at the focus sites that remain in the case but are not being remanded. OCWD's argument that this sentence would create confusion rings hollow, and OCWD fails to offer any legitimate reason for not including it. Defendants therefore request that the sentence be included in order to give clarity to the order.

Declaratory Relief - OCWD appears to be suggesting that reference to declaratory relief in CMO 116 somehow undoes this Court's 2006 summary judgment ruling disposing of the declaratory relief cause of action. This is incorrect. As noted in Defendants' 72-Hour letter, this Court dismissed the declaratory relief cause of action in 2006. The Court explained that:

> Defendants argue that OCWD's claim for declaratory relief should be denied because it is duplicative of the other relief sought in this action. Defendants' point is well taken. Such relief is identical to that sought under OCWD's common law claims for products liability, negligence, trespass, and nuisance. Declaratory relief is generally inappropriate where duplicative of other claims in the

The Honorable Shira A. Scheindlin
June 15, 2015
Page 5

> action as the 'object of the statute is to afford a new form of relief where needed and not to furnish a litigant with a second cause of action for the determination of identical issues.' ***Accordingly, defendants' motion to dismiss plaintiff's claims for declaratory relief is granted***.

*In re MTBE Prods. Liab. Litig.*, 457 F. Supp. 2d 455, 466-67 (S.D.N.Y. 2006) (emphasis added).

In 2007, the Court clarified the ruling in response to OCWD's request, noting that the ***cause of action*** had been adjudicated against OCWD but that, if the remaining causes of action supported a ***remedy*** of declaratory relief, the prior adjudication would not bar pursuit of that remedy. *Opinion and Order* (Mar. 6, 2007), at 11 n.26 ("If any of OCWD's remaining causes of action, such as those for nuisance or trespass, are determined to require declaratory relief, such relief remains available under those causes of action.").

When the parties set out to negotiate the content of CMO 116 in order to prepare for summary judgment, OCWD repeatedly insisted that reference to declaratory relief be included in the document, conflating declaratory relief as a remedy and declaratory relief as a cause of action. Although frustrated with OCWD's insistence, Defendants did not press their objection at the time because the point of CMO 116 was to produce a clear list of the claims and defendants that *OCWD intended to pursue* at each of the focus sites so that Defendants could focus their summary judgment motions accordingly. CMO 116 did not, in any way, validate the viability of any of OCWD's asserted claims nor can it be read to suggest that the Defendants consented to OCWD's renewed assertion of the dismissed cause of action.

OCWD also argues that Defendants should have included a challenge to declaratory relief in the 2014 summary judgment motions. However, there was no need for Defendants to move against the declaratory relief cause of action in the 2014 summary judgment motions because the Court had already disposed of that cause of action in 2006.

OCWD next takes issue with Defendants' position that declaratory relief is not an available remedy for continuing nuisance in California. This argument misses the point. The purpose of the Suggestion of Remand is to tell the Judicial Panel which causes of action should be sent back to California trial. The Defendants know that OCWD intends to ask for declaratory relief *as a remedy*, and OCWD knows that Defendants intend to argue that such a remedy is not available under the remaining causes of action and/or is not warranted under the evidence. It is for the trial court to determine what, if any, remedies are available to OCWD should it prevail on its continuing nuisance claim after the trial court has heard the evidence and the parties have had the opportunity to brief the issue. It is not necessary for this Court to make that determination and, indeed, such a determination would be premature.

The Honorable Shira A. Scheindlin
June 15, 2015
Page 6

## DEFENDANTS' AGENDA ITEMS

**I.**   **_OCWD_: Shell and BP Defendants' Request for Rule 54(b) Certification**

In its preconference letter for the April 24, 2015 status conference, OCWD proposed two alternatives to the Court for raising a continuing nuisance argument it had not previously made when opposing the Shell and BP Defendants' res judicata summary judgment motion: (1) a motion for "clarification" or reconsideration here, an alternative this Court rejected (Apr. 24, 2015 Tr. at 6:8-13) ("My sense is that a motion for reconsideration or whatever you want to call it would not make sense at the district court level.  I think I did clearly address the issue already…"); or (2) certification of the Court's dismissal of the Shell and BP Defendants as a Rule 54(b) final judgment, relief this Court was inclined to grant.  At the April 24 status conference, the Court suggested a third alternative, involving OCWD raising its new argument in the Central District of California.

Although the Shell and BP Defendants believe that OCWD's application for any relief is improper and untimely, as between the alternatives proposed, the Shell and BP Defendants believe that Rule 54(b) certification is more appropriate.  All claims against the Shell and BP Defendants were dismissed by the September 16, 2014 Opinion and Order on summary judgment, thereby bringing the decision within the scope of Rule 54(b), as OCWD previously acknowledged.  There is no just reason for delay because, with all claims against them having been dismissed, the Shell and BP Defendants should not have to incur the costs and burdens of remand.  Moreover, although Rule 54(b) theoretically allows the transferor court to revise this Court's September 16, 2014 Opinion and Order, doing so would run counter to well-settled authority in the MDL context that requires transferor courts to respect prior orders of the MDL court.  _In re Zyprexa Prods. Liab. Litig._, 467 F.Supp.2d 256, 273 (E.D.N.Y. 2006) ("[o]rders issued by a federal transferee court remain binding if the case is sent back to the transferor court"), citing Manual for Complex Litigation § 20.133; _Deutsch v. Novartis Pharms. Corp._, 768 F.Supp.2d 420, 429 (E.D.N.Y. 2011).  Likewise, arguments not raised in opposition to a motion in the MDL court cannot be raised following remand.  _McKay v. Novartis Pharm. Corp._, 751 F.3d 694, 703-05 (5th Cir. 2014).  And finally, OCWD provides no factual or legal basis for its continuing nuisance argument.  As this Court observed in its September 16, 2014 Opinion and Order, neither Shell nor BP sold MTBE gasoline in Orange County after entry of the OCDA Consent Judgments, and OCWD presented no evidence of any alleged continuing nuisance or harm when opposing the Shell and BP Defendants' motion.  _In re MTBE Prods. Liab. Litig._, 46 F. Supp. 3d 440, 450, n.72 (S.D.N.Y. 2014).  Legally, the OCDA lawsuits resolved all nuisance claims against Shell and BP – permanent and continuing – and there is no question that a permanent nuisance judgment extinguishes all future nuisance liability.  _See, e.g., Spaulding v. Cameron_, 38 Cal.2d 265 (1952).  Allowing OCWD to challenge the dismissal of the Shell and BP Defendants would amount to giving OCWD a belated and meritless second bite at the apple.

To the extent the Court is inclined to grant any relief to OCWD, Rule 54(b) certification would be the appropriate vehicle.

The Honorable Shira A. Scheindlin
June 15, 2015
Page 7

## PLAINTIFFS' AGENDA ITEMS

### I & II. _New Jersey & Pennsylvania_: Motions for Leave to Amend

      LUKOIL Americas Corporation ("LAC") does not consent to the Commonwealth's request to re-amend the complaints in the Pennsylvania and New Jersey actions.  In particular, LAC opposes (as futile) the addition of any fraudulent conveyance claims.  Among other things, those claims are foreclosed by the fraudulent conveyance action filed by the Liquidating Trustee in the Getty Petroleum Marketing Inc. ("GPMI") bankruptcy.  Because the Trustee had the exclusive right to bring such an action, the Commonwealth may not do so here, regardless of the remedy it seeks.  _See_ 11 U.S.C. § 544(b); _see also, e.g._, _In re Tessmer_, 329 B.R. 776, 779 (Bankr. M.D. Ga. 2005) ("Creditors who are dissatisfied with the results [of a Trustee's § 544(b) action] cannot file a separate suit."); _cf. Sears Petroleum & Transp. Corp. v. Burgess Constr. Servs., Inc._, 417 F. Supp. 2d 212, 221 (D. Mass. 2006).

      In addition, LAC is not aware of any authority suggesting that LAC's 2011 sale to an unrelated third-party of _LAC's interest_ in GPMI could be fraudulent to _GPMI_'s creditors.  Put differently, a transfer _of_ a debtor (GPMI) is not a transfer "_by_ a debtor," as fraudulent conveyance law requires.  12 Pa. Cons. Stat. §5104; N.J. Stat. Ann. § 25:2-25.

      Thus, for those reasons and others, the Commonwealth has "fail[ed] to *** state a claim," and its effort to add a new count to the complaint is futile.  _Panther Partners Inc. v. Ikanos Commc'ns, Inc._, 681 F.3d 114, 119 (2d Cir. 2012).  Accordingly, notwithstanding the liberal standard governing the amendment of pleadings, the Commonwealth's "request to replead should be denied."  _Absolute Activist Value Master Fund Ltd. v. Ficeto_, 677 F.3d 60, 71 (2d Cir. 2012).  That denial should also bar the addition of Vincent De Laurentis and Vadim Gluzman, proposed individual defendants who are relevant only to the (futile) fraudulent conveyance claims.  Finally, with the exception of LUKOIL North America, neither Akin Gump nor Bleakley Platt is currently authorized to accept service on behalf of any proposed defendant, including the Russian corporation OAO Lukoil.

***

      As always, we appreciate your Honor's attention to this matter and ask that this letter be docketed by the Clerk's Office so that it is part of the Court's file.

Sincerely,

_James A. Pardo_

James A. Pardo

cc:  All Counsel of Record by LNFS, Service on Plaintiffs' Liaison Counsel

# **<u>EXHIBIT A</u>**

| From: | Gerson, Lisa |
|---|---|
| To: | Tracey O'Reilly; maxline@toxictorts.org; Bongiorno, Anthony; mdl1358@weitzlux.com |
| Cc: | "Tyler Wren"; "Michael Coren"; "Duane Miller"; "Daniel Berger"; "Miller & Axline"; cbollar@archerlaw.com; Pardo, James; DKrainin@bdlaw.com; peter.condron@sedgwicklaw.com; wstack@tmo.blackberry.net; Molly Han |
| Subject: | RE: PA CMO - Proposed Language |
| Date: | Thursday, June 11, 2015 2:08:23 PM |
| Attachments: | image001.gif |

Tracey,

Regarding Section II.A, we include the "otherwise aware" language to capture information that the Commonwealth has obtained other than through the regulatory process. The "reported to" language is overly narrow and arguably omits information obtained from the Commonwealth other than from a site owner/operator reporting under the regulatory scheme. It also arguably omits release sites discovered by the Commonwealth itself, either because the site is a Commonwealth-owner/operated site or for some other reason we cannot foresee. Finally, Plaintiff's counsel has represented that they will use information produced by Defendants in this litigation to assist in creating the site list; "reported to the Commonwealth" arguably does not capture that information. If you have alternative language to suggest that addresses these concerns, please let us know.

Regarding Section III.E, Defendants are fine with the "processed" language. Will Plaintiff agree to language that the production will be "substantially complete by October 31, 2015"? We would like some commitment that this process will not drag on indefinitely. In addition, although we do not need to include it in the CMO, please provide an estimate as to when this production will start to roll to Defendants.

Thank you for your agreement on Section IV.E.

Finally, please let us know if Plaintiff agrees that Section V ("Other Discovery Permitted") includes depositions.

Thank you,
Lisa

**Lisa A. Gerson**
Partner



McDermott Will & Emery LLP    340 Madison Avenue    New York, NY 10173-1922
Tel +1 212 547 5769    Fax +1 646 224 8675

Biography | Website | vCard | E-mail | Twitter | LinkedIn | Blog

**Satara Richards,** Assistant to Lisa A. Gerson
Tel  +1 212 547 5569

---

**From:** Tracey O'Reilly [mailto:toreilly@toxictorts.org]
**Sent:** Wednesday, June 10, 2015 4:33 PM
**To:** Gerson, Lisa; maxline@toxictorts.org; Bongiorno, Anthony; mdl1358@weitzlux.com

# **EXHIBIT B**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION | Master File No. 1:00-1898 MDL 1358 (SAS) M21-88 |
| This document relates to: | |
| *Commonwealth of Pennsylvania, et al. v. Exxon Mobil Corporation, et al.*, Case No. 1:14-cv-06228 SAS | |

SHIRA A. SCHEINDLIN, U.S.D.J.

### [PROPOSED] CASE MANAGEMENT ORDER NO.

This Case Management Order ("CMO") defines the scope of initial disclosures in the above-captioned case (hereinafter the "*Pennsylvania case*"). Additional discovery will be addressed in subsequent CMOs.

### I.  IDENTIFICATION OF COVERED PERSONS

By May 29, 2015, parties who have not yet done so in MDL 1358 shall identify "covered persons" in accordance with Sections 2(b) and 2(c) of the Court's 2005 Order for Preservation of Documents.

### II.  INITIAL DISCLOSURES BY PLAINTIFF:

A.      By December 31, 2015, Plaintiff shall identify every "release" site (by name, address and site identification number) reported to the Commonwealth, or of which the Commonwealth is otherwise aware, at which Plaintiff contends neat MTBE or gasoline with MTBE was released.

1

B.    By December 31, 2015, Plaintiff shall identify every potable well (by name, address, GIS coordinates, and Public Well System identification number) within the Commonwealth where MTBE was detected.

C.    By December 31, 2015, for each site or well identified in response to Sections II.A and II.B above, Plaintiff shall identify:

      1.    The most recent date MTBE was detected in groundwater at each site or well, and the concentration of MTBE detected on such date; and

      2.    The maximum concentration of MTBE detected, at any time, at each site or well, and the date of such detection.

D.    In responding to Sections II.A through II.C, Plaintiff shall not limit its responses to information contained in readily accessible electronic data (as defined below).

## III.    INITIAL PRODUCTION OF SITE FILES AND ELECTRONIC DATA

A.    By July 30, 2015, Plaintiff shall produce to Defendants any and all readily accessible electronic data (*i.e.*, databases or other files created for the purpose of centralizing or aggregating storage of information) in its possession, custody or control, or in the possession, custody or control of any agency or department of the Commonwealth, regarding the following:

      1.    The presence and concentration of MTBE or TBA in any public water supply wells in Pennsylvania, including, but not limited to, any detections reported in any Safe Drinking Water Information System (SDWIS) database;

      2.    The presence and concentration of MTBE or TBA in any groundwater or surface waters in Pennsylvania;

      3.    The presence and concentration of MTBE or TBA in any private water supply well(s) or potable spring(s) in Pennsylvania, including, but not limited to, data (if any) in the Commonwealth's possession compiled by Bucks, Chester, Delaware, Montgomery

2

and Philadelphia Counties (and all other counties which may also compile such data);

4.  The payment of public funds for the investigation, removal, remediation, monitoring or treatment of MTBE or TBA in Pennsylvania (to the extent that data related to the payment of public funds is not maintained so as to identify MTBE and/or TBA, Plaintiff shall produce such data for reformulated gasoline or gasoline containing MTBE);

5.  The amount of public funds used to pay for the remediation, cleanup or treatment of MTBE or TBA in Pennsylvania, the locations at which such public funds were expended, and any costs, damages or injury allegedly sustained by Plaintiff as a result of the presence of MTBE or TBA in Pennsylvania (to the extent that data related to the expenditure of public funds is not maintained so as to identify MTBE and/or TBA, Plaintiff shall produce such data for reformulated gasoline or gasoline containing MTBE);

6.  The concentration of gasoline constituents in groundwater at any release site identified in response to Section II.A above including, but not limited to, MTBE or TBA; and

7.  Any site remediation reports related to releases of MTBE, TBA or gasoline containing MTBE or TBA where such releases allegedly caused impacts to soils and/or groundwater in the Commonwealth.

B.  By the June 18, 2015 status conference, Plaintiff will report to the Court regarding (i) the number of sites implicated by the below categories and (ii) the availability of information on the below categories in readily accessible electronic format. The Court will then set a date for production of such readily accessible electronic data (to the extent so maintained by the Commonwealth).

1.  The location and ownership interest, including leases, that the Commonwealth, including any agency or department thereof, has or had in any underground storage tank which stored gasoline and any terminal or refinery which was engaged in the refining, distribution, storage or sale of neat MTBE, reformulated gasoline, or gasoline containing MTBE;

2.  The location and ownership interest, including leases, that the Commonwealth, including any agency or department thereof, has or had in any pipeline or delivery system (*e.g.,* railcar, barge,

3

tanker or tank truck) engaged in the delivery of neat MTBE, reformulated gasoline, or gasoline containing MTBE for distribution or sale in Pennsylvania;

3.   The identity of parties with whom the Commonwealth, including any agency or department thereof, had supply contracts to deliver gasoline containing MTBE, reformulated gasoline, or neat MTBE to Pennsylvania, including exclusive supply contracts, and contracts with delivery services, franchisees, lessees, lessors, jobbers, common carriers (including, but not limited to, pipelines), distributors, terminals, other refiners, or any other entities;

4.   The location, dates, volumes, sources and causes of any releases of gasoline containing MTBE, reformulated gasoline, or neat MTBE, by the Commonwealth, including any agency or department thereof, into soil, ground water or surface water within Pennsylvania; and

5.   Any site remediation reports related to releases of MTBE, reformulated gasoline, or gasoline containing MTBE at sites that are or were owned and/or operated by the Commonwealth, including any agency or department thereof, at the time of release and where such releases caused MTBE impacts to soils and/or groundwater.

C.   Production of the electronic data described in Section III.A shall be made on a "rolling" or continuing basis starting no later than May 29, 2015.

D.   If any of the foregoing electronic data or files also contains data or information about chemicals or substances other than MTBE, such data or information shall be produced and not withheld or redacted.

E.   For each site that Plaintiff does or may contend is implicated in this matter, Plaintiff shall produce to Defendants all site files from the Underground Storage Tank Indemnity Fund (USTIF) on a rolling basis as the documents are processed, with such production completed by October 30, 2015.

## IV.    INITIAL DISCLOSURES BY DEFENDANTS

A.    By July 30, 2015, each Defendant shall produce to Plaintiff any and all readily accessible electronic data (*i.e.*, databases or other files created for the purpose of centralizing or aggregating storage of information) in its possession, custody or control regarding the following:

1.    The location and ownership interest, including leases, that responding Defendant has or had in any service station, underground storage tank system ("USTs") motor fuel terminal or refinery in Pennsylvania which was engaged in the refining, distribution, storage or sale of neat MTBE, reformulated gasoline, or gasoline containing MTBE;

2.    The location and ownership interest, including leases, that responding Defendant has or had in any pipeline or delivery system (*e.g.,* railcar, barge, tanker or tank truck) engaged in the delivery of neat MTBE, reformulated gasoline, or gasoline containing MTBE for distribution or sale in Pennsylvania;

3.    The identity of parties with whom the responding Defendant had supply contracts to deliver gasoline containing MTBE, reformulated gasoline, or neat MTBE to Pennsylvania, including exclusive supply contracts, and contracts with delivery services, franchisees, lessees, lessors, jobbers, common carriers (including, but not limited to, pipelines), distributors, terminals, other refiners, or any other entities;

4.    The name, grade, product codes, blend information and other identifying information for gasoline containing MTBE, reformulated gasoline, or neat MTBE that was distributed by the responding Defendant in Pennsylvania;

5.    The location, dates, volumes, sources and causes of any releases of gasoline containing MTBE, reformulated gasoline, or neat MTBE, by Defendant, into soil, ground water or surface water within Pennsylvania;

6.    Any site remediation reports related to releases of MTBE, reformulated gasoline, or gasoline containing MTBE at sites that are or were owned and/or operated by the responding Defendant at the time of release and where such releases caused MTBE impacts to soils and/or groundwater;

5

7.      The volumes of neat MTBE, reformulated gasoline, and gasoline containing MTBE that the responding Defendant refined, distributed, stored, blended, supplied to or sold in the Commonwealth of Pennsylvania; and

8.      Lists of Pennsylvania MTBE release sites.

B.      Plaintiff will provide to Defendants the list of sites at which Plaintiff contends gasoline was released. (*Apr. 24, 2015 Tr.* at 30).  Within sixty (60) days after that production by Plaintiff, each Defendant shall produce to Plaintiff any and all readily accessible electronic data (*i.e.*, databases or other files created for the purpose of centralizing or aggregating storage of information) in its possession, custody or control regarding licensing branding and franchise agreements for gasoline sales in Pennsylvania for every site (by name, address and site identification number) within the Commonwealth at which Plaintiff contends gasoline was released.

C.      In responding to paragraphs (A)(1)-(A)(7), above, Defendants need produce readily accessible electronic data for "reformulated gasoline" only where the requested information is not available specifically for gasoline containing MTBE.

D.      Production of the electronic data described in Section IV.A above shall be made on a "rolling" or continuing basis starting no later than May 29, 2015.

E.      Plaintiff intends to serve subpoenas on Defendants' current or former environmental consultants to obtain readily available electronic data concerning: (1) concentrations of MTBE and/or BTEX in soil and groundwater at release sites, and (2) consulting reports regarding release sites.  Plaintiff will provide Defendants with advance notice of such subpoenas as required by Federal Rule of Civil Procedure 45(D)(4).  Upon receiving such notice, each Defendant agrees to inform the subpoenaed consultant that it does not object to the consultant producing responsive, non-privileged

6

documents and expects the consultant to comply with its obligations under Federal Rule of Civil Procedure 45.

## V.    ELECTRONIC LOOSE FILES

A.    With respect to the readily accessible electronic data to be produced pursuant to Parts III and IV of this Order, the parties need not produce Electronic Loose Files ("ELF").

B.    For purposes of this Order, ELF includes any electronic files that do not consist of files or data from systems created to centralize or aggregate storage of a party's information (*i.e.* databases).   Discrete word processed documents (*e.g.* memoranda, correspondence), PDFs, images, emails and their attachments, and the like are considered ELF.

## VI.    OTHER DISCOVERY PERMITTED

Beginning on May 29, 2015, the parties may engage in written discovery, subject to any and all appropriate objections, as to the following:

A.    Damages Plaintiff alleges;

B.    General liability discovery; and

C.    Discovery related to Defendants' affirmative defenses.

## VII.    FUTURE DISCOVERY

The parties shall meet and confer after August 30, 2015 to discuss:

A.    The timing for completion of the production of electronic files that are not readily available pursuant to Parts III and IV, and any further discovery the parties propose, taking account of the electronic data the parties produce pursuant to Parts III and IV of this CMO;

B.    Production of paper or non-electronic site remediation files; and

7

C.      Methods for management of future discovery.

SO ORDERED

DATED:  New York, New York          _____
        June ___, 2015               Shira A. Scheindlin
                                      U.S.D.J.