**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation | **Master File No. 1:00-1989** **MDL 1358 (SAS)** |
| This Document Relates To: | The Honorable Shira A. Scheindlin |
| *Commonwealth of Puerto Rico, et al. v. Shell Oil Co., et al.,* Case No. 07 Civ. 1-470 (SAS) | |

## PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S ORDER RE DESIGN DEFECT AND NEGLIGENCE

## SUMMARY OF ARGUMENT

Pursuant to Local Rule 6.3 and Federal Rule of Civil Procedure Rule 52(b), Plaintiff the Commonwealth of Puerto Rico ("Commonwealth") seeks reconsideration of the Court's June 16, 2015, Opinion on Counts I and IV addressing the Commonwealth's strict products liability design defect and negligence claims.   The Commonwealth does not make this motion lightly, but believes that two of the criteria in Local Rule 6.3 for granting reconsideration are present in this instance: "manifest injustice" and "overlooked data."   *See In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*, 2013 WL 4008632, at *1 (S.D.N.Y. Aug. 2, 2013) ("A motion for reconsideration is appropriate where 'the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'")

With respect to the "manifest injustice" criteria for reconsideration, the Court's opinion cites to and relies upon excerpts from the reports of defense expert Mr. O'Brien which were not cited to or submitted by defendants.   Rather, the excerpts are from the full report submitted to the Court, at the Court's request, subsequent to briefing on the motion.   The Commonwealth therefore respectfully requests that the Court consider the discussion of these excerpts in this motion.

With respect to "overlooked data," the opinion does not reference the extensive evidence submitted by the Commonwealth that gasoline without MTBE was in widespread commercial use in Puerto Rico during the relevant time period.   *See, e.g.*, Commonwealth's Rule 56.1 Statement, ¶¶ 12; 66-71.   The opinion focuses on defendants' evidence related to the CORE facility, but the CORE facility was only one of a number of sources of gasoline in Puerto Rico.

1

For sources other than CORE, defendants themselves argued that gasoline without MTBE was the norm, and gasoline with MTBE the exception. *See, e.g.,* O'Brien Report, ¶ 51 ("Evidence also indicates that, during the Relevant Period, some Defendants routinely supplied gasoline to the island that contained little or not MTBE whatsoever."); ¶ 52 ("[E]vidence indicates that [HOVENSA LLC] *almost never* intentionally employed MTBE in conventional gasoline destined for Caribbean markets, including Puerto Rico.") (emphasis added).  With respect to the CORE facility, CORE's own employees testified consistently that MTBE was just one of several octane-enhancing options for gasoline production.  Rule 56.1 Opp., ¶ 66.

As the Court's opinion notes: "[i]t is not necessary for a plaintiff . . . to furnish the Court with expert witness testimony in order to have its case submitted to a jury." *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 2015 WL 3763645, *4 (S.D.N.Y. 2015).  This is particularly true where, as here, the evidence establishes that an alternative design (gasoline without MTBE) was not only theoretically feasible, but was in fact in widespread commercial use at the time the defectively designed product (gasoline with MTBE) caused injury.[1]  *See* Restatement (Third) of Torts, Product Liability, § 2, Comment f ("Furthermore, other products already available on the market may serve the same or very similar function at lower risk and at comparable cost.  Such products may serve as reasonable alternatives to the product in question.").

---

[1] In fact the Court granted summary judgment to Shell on the basis that there was insufficient evidence that batches of gasoline shipped to Puerto Rico from Louisiana contained MTBE.  *See, In Re MTBE*, 2015 WL 1931168, * 11 (S.D.N.Y. 2015) (noting "155 of the 187 batches [of gasoline] documented in the Norco Batch Report contained either *de minimus* amounts of MTBE or none at all").

**DISCUSSION**

As the Court's opinion notes, defendants, not the Commonwealth, have the burden "'to

establish, in light of the relevant factors, that, on balance, the benefits of the challenged design

outweigh the risk of danger inherent in such design.'" *In re MTBE, supra*, 2015 WL 3763645 at

*5 (quoting *Barker v. Lull Engineering Co.*, 573 P.2d 443, 455 (Cal. 1978)). The opinion also

recognizes that "[t]he key factual inquiry in determining the existence of a design defect centers

on the availability of feasible alternatives to MTBE for use in gasoline supplied to Puerto Rico."

*Id.* at * 1. The opinion further states that "[i]t is not necessary for a plaintiff . . . to furnish the

Court with expert witness testimony in order to have its case submitted to a jury." *Id.* at *4.[2]

The opinion nevertheless grants defendants' motion for summary judgment on the

Commonwealth's design defect claims, finding that "testimony from experts and industry

insiders plays an important, if not indispensable, role in evaluating the design of MTBE gasoline

[and] [h]ere, based on defendants' experts' testimony – and the Commonwealth's complete

failure to rebut that testimony – it must be accepted that the utility of MTBE gasoline outweighed

its risks, especially given the lack of viable alternatives." *Id.* *5. The opinion emphasizes that its

"lack of viable alternatives" conclusion is *not* based upon a lack of expert testimony on the part

of the Commonwealth:

> The factual records in these cases were one-sided because defendants' evidence
> uniformly demonstrated that the benefits outweighed the risks, and plaintiffs
> submitted insufficient evidence to the contrary to create a factual dispute. For
> these reasons - and *not* because plaintiffs shouldered the burden of proof or were

---

[2] The opinion also recognizes: "There is no dispute over the sufficiency of evidence in
the record that MTBE Gasoline could have caused the Commonwealth's harm. *See In Re MTBE*,
488 F.3d 112, 131 (2d Cir. 2007) (noting that MTBE is 'a highly dangerous compound' that
poses threats to human health)." *In Re MTBE, supra,* 2015 WL 3763645, *5.

required to submit expert testimony on risk-benefit questions - defendants met *their* burden and prevailed.

*Id.* (emphasis supplied as to "not").[3]

The Commonwealth respectfully submits that it offered extensive rebuttal evidence showing gasoline without MTBE was not only a "viable alternative," but was in widespread commercial use in Puerto Rico. Rule 56.1 Opp. ¶¶ 12, 20 ("Puerto Rican refiners made gasoline that did not contain MTBE with notable exceptions such as CORE"); ¶¶ 66-73.

The *only* refinery specific discussion of MTBE benefits submitted by defendants was Mr. Stern's Report for the CORE facility. With respect to all other sources of gasoline for the Puerto Rico market the Commonwealth respectfully suggests that the evidence is undisputed that gasoline without MTBE was a feasible alternative to gasoline with MTBE. At all other facilities the primary testimony of defendants' own experts was that MTBE was *not* used in, or was incidental to, gasoline destined for the Puerto Rico market. At the CORE facility, the Commonwealth's evidence, including the deposition testimony of CORE's designated witness on blending operations, Juan Perez, at a minimum establishes disputed issue of material fact as to the feasibility of alternatives to MTBE.

## I.    Manifest Injustice

The Court's design defect opinion cites to the expert reports of John O'Brien at ¶¶ 47, 49,

---

[3] The Commonwealth respectfully notes that, as recognized by the Court itself, the Commonwealth *did* submit extensive rebuttal evidence regarding the risks of MTBE. *Id. See also* Commonwealth's Rule 56.1 Statement, ¶¶ 20, 58 - 65. This evidence was at a minimum sufficient to create a triable issue of fact for a jury with respect to the risks of MTBE. The Commonwealth also pointed out that defendants' air quality expert admitted in his deposition that he had *no* data to demonstrate that the use of MTBE in gasoline in Puerto Rico contributed to better air quality. Rule 56.1 Opp., ¶ 15.

and the expert report of Kenneth Stern, at ¶¶ 110, 111 as the basis for its "no viable alternative"

conclusion. *Id.*, fns. 61 and 62. The cited paragraphs from the O'Brien Report, however, were

not cited in defendants' moving papers, and were not included in the excerpted materials

submitted with defendants' moving papers. The Commonwealth therefore respectfully requests

that the Court reconsider its conclusion in light of the following discussion of the cited

paragraphs.

Paragraphs 46, 47, and 49 of Mr. O'Brien's report relate to MTBE's use as an octane

enhancer (¶ 46-47) and an oxygenate (¶ 49). As the Commonwealth noted in its Rule 56.1

Statement, at his deposition Mr. O'Brien testified that he did not intend to offer opinions in this

case that MTBE was necessary in gasoline, or as to decision making at specific refineries:

> 4     Q.   Do you intend to offer any opinions in
> 5   this matter that any of the U.S. Gulf Coast
> 6   refineries which supplied Puerto Rico had to use
> 7   MTBE as an octane enhancer to manufacture
> 8   conventional gasoline exported to Puerto Rico?
>
> 9     A.   I don't intend to offer any opinions
> 10   with respect to that and I didn't look at any
> 11   individual refineries and how they made their
> 12   decisions as to how to make reformulated gasoline
> 13   or conventional gasoline.

Plaintiff's Rule 56.1 at ¶ 25 (emphasis supplied). Perhaps this is why the sections of Mr.

O'Brien's Report cited by defendants in their moving papers discuss only the generic history of

gasoline manufacturing in the United States[4].

To the extent that Mr. O'Brien discusses MTBE in Puerto Rico specifically, his testimony

---

[4] Defendants cite to Sections III and IV of Mr. O'Brien's report which generically discuss "How Motor Gasoline is Produced" and the "History of Gasoline Regulation." *See* Decl. of M. Dillon at Ex. 3.

affirms that gasoline without MTBE was perfectly feasible in Puerto Rico. *See* O'Brien Report,
¶ 51 ("Evidence also indicates that, during the Relevant Period, some Defendants routinely
supplied gasoline to the island that contained little or not MTBE whatsoever."); ¶ 52 ("Even
though CORE at times used MTBE when blending gasoline, it was not used in all gasoline
produced at the facility."); *Id.* ("[E]vidence indicates that [HOVENSA LLC] *almost never*
intentionally employed MTBE in conventional gasoline destined for Caribbean markets,
including Puerto Rico.") (emphasis added); *Id.* ("There is no evidence that MTBE was ever
continuously or regularly used by all gasoline suppliers to Puerto Rico during the Relevant
Period.").[5]

Mr. Stern's opinions were limited to evaluation of the specific gasoline manufacturing
decisions undertaken at the CORE facility. Stern Expert Report at ¶ 29. The Court's opinion
cites ¶ 110 of Mr. Stern's Report for the proposition that "it would be infeasible for refiners to
use alternatives because they were not available in sufficient quantities in Puerto Rico." *In re
Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation, supra,* 2015 WL 3763645,
*5. Mr. Stern's testimony in the cited paragraph, however, was not that it was not feasible to use
alternatives to MTBE in gasoline in Puerto Rico generally, but rather that the use of MTBE was
"*preferable* to increased use of internally produced aromatics in terms of optimizing the
production *of the Core facility*." *Id.* (emphasis added).

Mr. Stern did state that "[i]f MTBE was not available for use at the Core facility,

---

[5] Mr. O''Brien also did not address or weigh any of the environmental risks of MTBE.
At most, Mr. O'Brien makes passing remarks about the potential health risks of alternatives.
O'Brien Expert Report at ¶ 49.

6

diverting an increased amount of aromatics from petrochemical production to replace the volume

and octane supplied by MTBE would have essentially abandoned the very purpose of the

facility." *Id.* (emphasis added). Mr. Stern also stated, however, that: "The Core facility was a

petrochemical facility and *only produced gasoline as an efficient and economical method to*

*dispose of material that it could not convert into its slate of higher value petrochemical*

*products.*" Stern Report, ¶ 14 (emphasis added). *See also* Stern Report, ¶ 135. Surely a jury

should be allowed to determine whether these two self-contradictory statements establish that the

Core facility had no choice but to sell gasoline with MTBE.

Mr. Stern did not testify in any event that "alternatives to MTBE were not available to

CORE at all in Puerto Rico," but rather that "[s]ome form of octane enhancer would have to be

obtained *externally.*" *Id.* (emphasis added). As the Commonwealth noted in its opposition, Juan

Perez, the person in charge of blending operations at the CORE facility, testified in his

deposition: "There was always the option of blendstock that could be available from different

sources. That didn't have to be MTBE. It could be a so-called blendstock." Rule 56.1 Opp. ¶

30; Axline Decl., Ex. 5.[6] Evidence of one source of external blendstock was provided by John

---

[6] The Commonwealth respectfully offers to make the entire deposition of Mr. Perez
available for the Court's review. At no point in his deposition did Mr. Perez testify that MTBE
was the only viable octane enhancer, or that there was an insufficient supply of alternatives. To
the contrary he consistently testified, as in the excerpt included in the Commonwealth's Rule
56.1 Opp., that "[t]here was always the option of blendstock that could be available from
different sources. That didn't have to be MTBE. Mr. Stern also does not controvert or address
the testimony by other Core employees that other octane enhancers were available and were
utilized by CORE. *See* Rule 56.1 Opp, ¶ 66 (Mark Scharre testified that CORE could utilize
toluene, mixed xylenes, or MTBE to enhance the octane of gasoline and that CORE *would* utilize
the toluene or mixed xylenes because they didn't "have any other place to put" them). Freddy
Flores, a former CORE employee, testified that CORE had numerous options for octane
enhancement including the use of toluene and mixed xylenes. *Id.*

O'Brien, who testified that the Puerto Rico Sun Oil Company's Yabucoa refinery, an on-island source, was producing high octane, non-MTBE blending components for use in gasoline during most of the relevant time period.  O'Brien Report, ¶ 61.  At a minimum this evidence should be sufficient to establish disputed issues of fact for a jury to consider as to whether CORE had no feasible alternatives to producing MTBE gasoline.

Mr. Stern discusses generally the relative toxicity of aromatics in air emissions, but this is rebutted by the extensive evidence of MTBE's environmental risks.[7]  Mr. Stern concludes his discussion by summarily stating: "Given regulatory trends requiring reductions in the level of aromatics in gasoline, as well as the fact that the Core facility was a petrochemical facility built for the purpose of using aromatics to make higher value petrochemicals, further increasing the aromatics content of the gasoline produced at the Core facility was not a viable option."  *Id.* ¶ 116.

Mr. Stern does not testify that alternatives are not "feasible," but only that alternatives were not "viable" (in the economic sense) at the CORE facility.  And his "not viable" testimony refers only to gasoline that CORE was admittedly making "as an efficient and economical method to dispose of material that it could not convert into its slate of higher value petrochemical products."  Stern Report, ¶ 14.  Certainly there are disputed issues of fact to be submitted to a jury as to whether the benefits to CORE of disposing of material that could not be converted to higher value products by adding MTBE to those materials and selling them as gasoline

---

[7]  Mr. Stern relies on references to generic reports that the use of "aromatics" should generally be curtailed, and does not cite any specific evidence that the increased use of aromatics as an octane enhancer in Puerto Rico would result in greater environmental risks than the increased use of MTBE.

outweighed the evidence that MTBE "is 'a highly dangerous compound' that poses threats to human health)." *In Re MTBE, supra,* 2015 WL 3763645, *5 (quoting *In Re MTBE*, 488 F.3d 112, 131 (2d Cir. 2007).

## II.    <u>Overlooked Data</u>.

With respect to "[t]he key factual inquiry in determining the existence of a design defect center[ed] on the availability of feasible alternatives to MTBE for use in gasoline supplied to Puerto Rico" (*In re MTBE, supra*, 2015 WL 3763645 at *5), the Commonwealth submitted substantial (and uncontroverted) evidence that multiple refiners who supplied gasoline to the trial sites primarily manufactured gasoline <u>without</u> using MTBE.    Although this evidence goes directly to feasibility, it is not addressed in the Court's opinion.  For example, Juan Lopez, Shell's most knowledgeable person concerning Shell's refinery at Yabuoca, Puerto Rico, confirmed that "the gasoline reformer at Shell Yabucoa was able to make a conventional gasoline without ethanol or MTBE . . ."  Plaintiff's Rule 56.1 at ¶ 67.  Ricardo Casas, 20-year employee of Esso, testified that Caribbean Oil Refining Company (CORCO) was able to "refine the quality of product that was required, [including both regular and premium gasoline], and so it [MTBE] was not used."  Plaintiff's Rule 56.1 at ¶ 68.  Patrick Bloomer of Shell, also designated as an employee expert, testified that he would compare the cost of multiple octane enhancers such as MTBE, alkylate, reformate, and toluene to manufacture gasoline, and that any of these would be acceptable.  Plaintiff's Rule 56.1 at ¶ 69.  Both of Exxon's Rule 26(a)(2)(C) witnesses designated on the need for MTBE, Victor Dugan and Thomas Eizember, testified that Exxon had numerous choices for octane enhancement of gasoline, including toluene, mixed xylenes, and MTBE. Plaintiff's Rule 56.1 at ¶ 70.  Edward Maciula, designated by Peerless as its Rule 30(b)(6)

9

witness on Peerless' manufacture of gasoline for Sunoco, testified that MTBE was never needed by Peerless to manufacture gasoline for Sunoco.  Plaintiff's Rule 56.1 at ¶ 71.  Defendant Esso Puerto Rico's expert David Millican stated that "after 1992, the gasoline blended by the Bayamon Refinery is indicated to have contained no MTBE."  Plaintiff's Rule 56.1 at ¶ 12.  Mr. Millican also stated that from "1995 through 1999 the gasoline production by CAPECO contained 0.0% MTBE and less than 0.5% by volume in the first half of 2000."

Plaintiff's Rule 56.1 at ¶ 12.

As noted in Part I, *supra*, the Expert Report of John O'Brien, submitted subsequent to the briefing on defendants' motion and at the Court's request, confirms that, apart from the CORE facility, gasoline without MTBE was in widespread commercial use in Puerto Rico, and gasoline with MTBE was the exception rather than the rule.  The Commonwealth respectfully suggests that this evidence at a minimum establishes disputed issues of material fact for a jury to resolve as to the feasibility of alternatives to gasoline with MTBE.

### CONCLUSION

For the above reasons the Commonwealth respectfully requests that the Court reconsider the design defect portion of its June 16, 2015, ruling on summary judgment

DATED: June 30, 2015                     Respectfully submitted,

By:

Michael Axline
Counsel for the Commonwealth

## PROOF OF SERVICE VIA LEXISNEXIS FILE & SERVE

*Commonwealth of Puerto Rico, et al. v. Shell Oil Co., et al.*, United States District Court, Southern District of New York Case No. No. 07 Civ. 10470 (SAS)

     I, the undersigned, declare that I am, and was at the time of service of the paper(s) herein referred to, over the age of 18 years and not a party to this action.  My business address is 1050 Fulton Avenue, Suite 100, Sacramento, CA  95825-4225.

     On the date below, I served the following document on all counsel in this action electronically through LexisNexis File & Serve:

### PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S ORDER RE DESIGN DEFECT AND NEGLIGENCE

     I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

     Executed on June 30, 2015, at Sacramento, California.

TONYA L. ZIMMERMAN