UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X
                           :

IN RE: METHYL TERTIARY BUTYL :
ETHER ("MTBE") PRODUCTS :
LIABILITY LITIGATION :

------------------------------------------------- :

                           :

This document relates to: :

                           :

*Commonwealth of Pennsylvania v. Exxon* :
*Mobil Corporation, et al.*, 14 Civ. 6228 :

                           :

------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/2/15

**OPINION AND ORDER**

**Master File No. 1:00-1898**
**MDL 1358 (SAS)**
**M21-88**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

This is a consolidated multi-district litigation ("MDL") relating to

contamination – actual or threatened – of groundwater from various defendants'

use of the gasoline additive methyl tertiary butyl ether ("MTBE") and/or tertiary

butyl alcohol, a product formed by the breakdown of MTBE in water.  On

December 23, 2014, certain defendants (collectively, "defendants") moved

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss

Counts V and VI of the Commonwealth of Pennsylvania's (the "Commonwealth")

Amended Complaint, as well as Count III to the extent it seeks to hold defendants

liable based on their alleged manufacture and/or distribution of MTBE or MTBE

-1-

gasoline.[1]  For the reasons stated below, defendants' motion to dismiss is
GRANTED.

## II.    BACKGROUND

The Commonwealth seeks to recover for alleged injury and threat of
future injury to the waters of the Commonwealth caused by MTBE.[2]  At issue in
this motion are claims of public nuisance (Count III), trespass (Count V), and
violations of the Pennsylvania Unfair Trade Practice and Consumer Protection Law
("UTPCPL") (Count VI).

### A.    Count III:  Public Nuisance

The Commonwealth alleges that defendants, who did not own or
operate MTBE release sites, nevertheless participated and assisted in the creation
of a nuisance by "intentionally and fraudulently promot[ing] MTBE for use as an
additive in gasoline despite their knowledge it had latent and far-reaching adverse
environmental consequences."[3]  The Commonwealth further alleges that
defendants "knew, or reasonably should have known, that (i) gasoline containing
MTBE would be placed into leaking gasoline storage and delivery systems; and (ii)

---

[1]      *See* MTBE Defendants' Notice of Motion to Dismiss at 1.
For a complete list of moving defendants, *see id.* at 2.

[2]      *See* Amended Complaint ("Am. Compl.") ¶ 1.

[3]      *Id.* ¶ 268.

when released into the subsurface . . . [would] be difficult and costly to remove from the water."[4]  Critical to this motion, the Commonwealth seeks to hold defendants liable based on "refin[ing], compound[ing], formulat[ing], market[ing], and/or otherwise supply[ing]" MTBE or MTBE gasoline.[5]  These defendants are not owners of stations or sites where MTBE was released, but are instead refiners, manufacturers, marketers, distributors, or suppliers of the released product.[6]

###    B.    Count V:  Trespass

The Commonwealth also alleges that defendants are liable for trespass to the "waters of the Commonwealth."[7]  In bringing this claim, the Commonwealth asserts that it is "the possessor and owner of rights and interests in the waters of the Commonwealth . . . which [it] holds in trust for the benefit of its citizens."[8]  The Amended Complaint does not allege that the Commonwealth "exclusively possess[es] the water at issue in this case."[9]

---

[4]    *Id.*

[5]    *Id.  See also* Memorandum of Law in Support of MTBE Defendants' Motion to Dismiss ("Def. Mem.") at 1.

[6]    *See* Def. Mem. at 6.

[7]    Am. Compl. ¶ 283.

[8]    *Id.* ¶ 282.

[9]    Def. Mem. at 7.

C.    **Count VI: UTPCPL Claim**

The Commonwealth contends that defendants violated the UTPCPL because they allegedly engaged in "unfair and deceptive actions" in their sale and marketing of MTBE gasoline.[10]  In support of this claim, the Commonwealth alleges generally that defendants "disseminated, marketed, advertised and otherwise distributed information to gasoline refiners, distributors, jobbers, retailers and consumers that MTBE was a safe . . . gasoline additive when in fact

---

[10]    Am. Compl. ¶ 292.  The Amended Complaint alleges that defendants violated four specific UTPCPL provisions:

> (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;
>
> . . .
>
> (vii) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;
>
> . . .
>
> (ix) Advertising goods or services with intent not to sell them as advertised;
>
> . . .
>
> (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

*Id.* ¶ 291; 73 Pa. Stat. §§ 201-2(4)(v), (viii), (ix), (xxi).

-4-

its environmental risks and hazards outweighed any benefits . . . ."[11]  In addition, the Amended Complaint states that defendants' use of MTBE did not have the "characteristics, benefits or qualities it was represented to possess in that when released into the environment it caused far reaching damage to air, property, water supplies and other natural resources of the Commonwealth . . . ."[12]

Despite accusing defendants of false advertising, the Amended Complaint references only one specific advertisement – a 1999 advertisement that Getty placed in the *New York Times* – which the Commonwealth acknowledges was true.[13]  The Amended Complaint identifies the following allegedly false statements:  (1) comments about an MTBE study made by the American Petroleum Institute ("API")  (of which some, but not all, defendants belonged);[14] (2) comments made by ARCO, Exxon, and a multi-company committee including certain defendants (the "MTBE Committee") in lobbying and regulatory proceedings;[15] (3) comments made by the MTBE Committee at an oil industry

---

[11]     Am. Compl. ¶ 292(a).

[12]     *Id.* ¶ 292(b).

[13]     *See id.*  ¶ 198.

[14]     *See id.* ¶¶ 174-178.

[15]     *See id.* ¶¶ 179-188, 190.

event;[16] (4) a product bulletin issued by ARCO;[17] and (5) a pamphlet issued by the Oxygenated Fuels Association ("OFA"), a "captive entity" of defendants.[18]

Finally, the Commonwealth seeks an order from the Court pursuant to Section 4.1 of the UTPCPL requiring defendants "to restore to the Commonwealth and other persons in interest any moneys or property, real or personal, lost as a result of defendants' violations of the UTPCPL."[19]

## III.   LEGAL STANDARD

### A.   Motion to Dismiss Under Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must "accept[] all factual allegations in the complaint as true and draw[] all reasonable inferences in the plaintiff's favor."[20]   The court evaluates the sufficiency of the complaint under the "two-pronged approach" set forth by the Supreme Court in *Ashcroft v. Iqbal*.[21]   Under the first prong, a court may "begin by identifying pleadings that, because they are no more than conclusions, are not

---

[16]     *See id.* ¶ 189.

[17]     *See id.*  ¶¶ 191-193.

[18]     *Id.* ¶ 194.

[19]     *Id.*  ¶ 298.  *See also* 73 Pa. Stat. § 201-4.1.

[20]     *Grant v. County of Erie*, 542 Fed. App'x 21, 23 (2d Cir. 2013).

[21]     *See* 556 U.S. 662, 678-79 (2009).

entitled to the assumption of truth."[22]  For example, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[23]  Under the second prong of *Iqbal*, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[24]  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[25]  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[26]  Additionally, "[w]here a complaint names multiple defendants, that complaint must provide a plausible factual basis to distinguish the conduct of each of the defendants."[27]

## B.   Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) provides that, other than

---

[22]    *Id.* at 679.

[23]    *Id.* at 678 (citation omitted).

[24]    *Id.* at 679.

[25]    *Id.* at 678 (citation omitted).

[26]    *Id.* (quotation marks omitted).

[27]    *Ochre L.L.C. v. Rockwell Architecture Planning & Design, P.C.*, No. 12 Civ. 2837, 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3, 2012), *aff'd*, 530 Fed. App'x 19 (2d Cir. 2013).

amendments as a matter of course, "a party may amend [its pleading] only by leave of court or by written consent of the adverse party."[28]  Although "[t]he Court should freely give leave when justice so requires,"[29] it is "within the sound discretion of the district court to grant or deny leave to amend."[30]  When a motion to dismiss is granted, "'[i]t is the usual practice . . . to allow leave to replead.'"[31]  Where a plaintiff inadequately pleads a claim and cannot offer additional substantive information to cure the deficient pleading, granting leave to replead is futile.[32]

## IV.   APPLICABLE LAW

### A.   Public Nuisance

Pennsylvania law provides for both statutory and common law causes of action for public nuisance.[33]  Pennsylvania courts generally apply Section 821B

---

[28]   *Slayton v. American Express Co.*, 460 F.3d 215, 226 n.10 (2d Cir. 2006) (citation and quotation marks omitted).

[29]   Fed. R. Civ. P. 15(a)(2).

[30]   *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citation omitted).

[31]   *Schindler v. French*, 232 Fed. App'x 17, 19 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)).

[32]   *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

[33]   *See* 35 Pa. Stat. § 6021.1304 ("A violation of [the Pennsylvania Storage Tank and Spill Prevention Act ("PSTSPA")] . . . shall constitute a public

of the Restatement (Second) of Torts to "guide [their] determinations as to whether a use of property constitutes a public nuisance."[34]  The Restatement defines a public nuisance as "an unreasonable interference with a right common to the general public."[35]

Pennsylvania law does not explicitly limit public nuisance liability to property owners or users, but the PSTSPA and the PCSL evince such an intent. For instance, Section 6021.1303(b) of the PSTPSA provides that "[a]ny *owner or operator* of a storage tank who affects or diminishes a water supply as a result of a release shall restore or replace the affected supply."[36]  Similarly, Section 691.401 of the PCSL states that "[i]t shall be unlawful for any person . . . [to] allow or permit [a] discharge[] from *property owned or operated by such person*."[37]

---

nuisance."); 35 Pa. Stat. § 691.3 (noting that under the Pennsylvania Clean Stream Law ("PCSL"), "[t]he discharge of sewage or industrial waste or any substance into the waters of this Commonwealth, which causes or contributes to pollution . . . is hereby declared . . . to be against public policy and to be a public nuisance"); *Commonwealth v. MacDonald*, 374 A.2d 290, 303 (Pa. 1975) ("A thing may be a public nuisance because it is so declared by statute . . . alternatively, it may be declared a nuisance as a matter of common law . . . if it unreasonably interferes with the rights of the public.").

[34]     *Machipongo Land & Coal Co. v. Commonwealth*, 799 A.2d 751, 773 (Pa. 2002).

[35]     Restatement (Second) of Torts § 821B.

[36]     35 Pa. Stat. § 6021.1303(b) (emphasis added).

[37]     *Id.* § 691.401 (emphasis added).

Pennsylvania courts have repeatedly constrained liability for public nuisance specifically to an owner or operator of a nuisance source.[38]  In *City of Philadelphia v. Beretta*, the court declined to hold gun manufacturers liable in public nuisance based on their product distribution practices.[39]  This principle has been upheld in the environmental context, as well.[40]  In *Diess v. Pennsylvania Department of Transportation*, the court agreed with defendant that plaintiff must "establish that the party charged with creating a public nuisance had possession or control over the site from which the nuisance [(here, an environmental contaminant)] originates."[41]

**B.    Trespass**

Under Pennsylvania law, trespass – exclusively a common law cause of action – "is defined as an 'unprivileged, intentional intrusion upon land in

---

[38]    *See, e.g.*, *City of Phila. v. Beretta U.S.A. Corp.*, 126 F. Supp. 2d 882, 910 (E.D. Pa. 2000), *aff'd*, 277 F.3d 415 (3d Cir. 2002) ("The refusal of many courts to expand public nuisance law to the manufacturing, marketing, and distribution of products conforms with the elements of public nuisance law.").

[39]    *See id.* at 910-11 ("If I must choose between an interpretation of Pennsylvania law which reasonably restricts liability, and another which expands it, prudence dictates I choose the narrower path.").

[40]    *See, e.g.*, *Diess v. Pennsylvania Dep't of Transp.*, 935 A.2d 895, 904-05 (Pa. Commw. Ct. 2007) (relying on *Beretta* to dismiss a public nuisance claim against the generator of fly ash, an environmental contaminant).

[41]    *Id.* at 904.

-10-

possession of another.'"[42]  "In order to maintain an action in trespass, 'a plaintiff must have had exclusive use and possession of the property at issue.'"[43] Pennsylvania courts have clearly conferred on *private* litigants the right to bring trespass claims for damage to groundwater under their land.[44]  But neither the parties nor the Court can identify any reported cases granting the Commonwealth the right to sue for trespass to groundwater, or stating that the Commonwealth has "exclusive possession" of such water as a trustee.  In another case in this MDL, the Court rejected a similar argument raised by New Jersey as a state trustee, holding that the state's lack of exclusive possession of groundwater foreclosed its claim for trespass.[45]

---

[42]     *Boring v. Google Inc.*, 362 Fed. App'x 273, 280 (3d Cir. 2010) (quoting *Graham Oil Co. v. BP Oil Co.*, 885 F. Supp. 716, 725 (W.D. Pa.1994)).

[43]     *Roth v. Cabot Oil & Gas Corp.*, 919 F. Supp. 2d 476, 492 (M.D. Pa. 2013) (quoting *Graham*, 885 F. Supp. at 725).

[44]     *See, e.g.*, *Dombrowski v. Gould Elec., Inc.*, 954 F. Supp. 1006, 1013 (M.D. Pa. 1996) (noting that groundwater contamination may support a private party's trespass claim); *Burr v. Adam Eidemiller, Inc.*, 126 A.2d 403, 408 (Pa. 1956) (holding defendant liable in trespass for contaminating private landowners' spring).  Article I, Section 27 of the Pennsylvania Constitution states that "Pennsylvania's public natural resources are the common property of all the people," and "as trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of the people."

[45]     *In re MTBE*, No. 08 Civ. 312, 2014 WL 840955, at *3 (S.D.N.Y. Mar. 3, 2014).

### C.    UTPCPL

At issue in this motion are four alleged violations of the UTPCPL.

Specifically, the UTPCPL proscribes the following "[u]nfair methods of

competition" and "unfair or deceptive acts or practices":

> (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;
>
> . . .
>
> (vii) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;
>
> . . .
>
> (ix) Advertising goods or services with intent not to sell them as advertised;
>
> . . .
>
> (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.[46]

---

[46]    73 Pa. Stat. §§ 201-2(4)(v), (viii), (ix), (xxi).  There is some conflict in Pennsylvania federal courts regarding whether UTPCPL claims are governed by the heightened pleading requirements of Rule 9(b), as opposed to the *Twombly* plausibility standard under Rule 8(a)(2).  *Compare, e.g.*, *Kee v. Zimmer Inc.*, 871 F. Supp. 2d 405, 412 (E.D. Pa. 2012) (applying Rule 9(b)); *with Goleman v. York Int'l Corp.*, No. 11 Civ. 1328, 2011 WL 3330423 (E.D. Pa. Aug. 3, 2011) (dismissing claim for lack of sufficient factual allegations under Rule 8(a)(2)).  I find that the better approach is to apply Rule 8(a)(2) for two principal reasons.  *First*, in 1996, the Pennsylvania legislature amended the so-called "catchall" provision of the UTPCPL – subsection 2(4)(xxii) – to add "*deceptive* conduct" as a ground for finding a violation, relieving plaintiffs of the burden to allege plainly *fraudulent* conduct.  *See* Plaintiff's Memorandum of Law in Opposition to MTBE Defendants' Motion to Dismiss ("Pl. Mem.") at 16 n.14.  As several courts have

"Deception . . . is defined as intentional misleading by falsehood spoken or acted."[47]

Separately, Section 4.1 of the UTPCPL contains a restoration

provision, which provides that

> [w]henever any court issues a permanent injunction to restrain and prevent violations of this act as authorized in section 4 [], the court may in its discretion direct that the defendant or defendants *restore to any person in interest any moneys or property, real or personal, which may have been acquired by means of any violation of this act*, under terms and conditions to be established by the court.[48]

---

recently observed, this amendment counsels in favor of applying the lesser Rule 8(a)(2) pleading standard to allegations of deceptive conduct under the catchall provision. *See, e.g.*, *Fingles v. Continental Cas. Co.*, No. 08 Civ. 05943, 2010 WL 1718289, at *7 (E.D. Pa. Apr. 28, 2010) (noting that "[f]rom a procedural standpoint, Rule 9(b) is not implicated by allegations of deceptive conduct"). *Second*, some of the cases applying the Rule 9(b) standard after the passage of the amendment predate *Twombly* or otherwise fail to consider its impact in requiring plaintiffs to plead with particularity. *See, e.g.*, *Grant v. Kingswood Apts.*, No. 01 Civ. 1523, 2001 WL 1178796 (E.D. Pa. Oct. 2, 2001) (applying Rule 9(b) six years before *Twombly* was decided). Because the Rule 8(a)(2) standard under *Twombly* and *Iqbal* imposes a higher bar than it once did during the "notice pleading" regime, it can be applied more appropriately to claims similar to, but not sounding in, fraud. Accordingly – and without objection by defendants, who note the conflict but insist that the Commonwealth cannot satisfy the lesser standard – the Court applies Rule 8(a)(2) to the UTPCPL claim.

[47]    *Montanez v. HSBC Mortgage Corp. (USA)*, 876 F. Supp. 2d 504, 519 (E.D. Pa. 2012).

[48]    73 Pa. Stat. § 201-4.1 (emphasis added).  Section 4 permits the Attorney General to "bring an action in the name of the Commonwealth" to restrain violations of the statute.

"Person" is defined in the UTPCPL to mean "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entities."[49]

## V.   DISCUSSION

### A.   Count III:  The Commonwealth's Public Nuisance Claim Fails Because Defendants Did Not Own or Operate the Release Sites

The Commonwealth's public nuisance claim fails against these defendants because they did not have "possession or control over the site[s] from which the nuisance originate[d]."[50]  In Pennsylvania, courts do not impose liability for public nuisance "in the context of injuries caused by defective product design and distribution."[51]  In fact, the Commonwealth's expansive interpretation of nuisance liability is contradicted by the very cases on which it relies.[52]  This Court

---

[49]    *Id.* § 201-2(2).

[50]    *Diess*, 935 A.2d at 904.

[51]    *See Beretta*, 126 F. Supp. 2d at 909 (citing *Tioga Pub. Sch. Dist. v. U.S. Gypsum Co.*, 984 F.2d 915, 920 (8th Cir. 1993) (noting that such an extension of public nuisance law would make it "a monster that would devour in one gulp the entire law of tort"))).

[52]    *See Machipongo Land & Coal v. Commonwealth*, 799 A.2d 751, 775 (Pa. 2002) (imposing liability on *property owners*); *Commonwealth v. Barnes & Tucker Co.*, 319 A.2d 871 (Pa. 1974) (imposing liability on a former mine *operator*); *William J. McIntire Coal Co. v. Department of Envtl. Res.*, 530 A.2d 140 (Pa. Commw. Ct. 1987) (same).

-14-

has ruled repeatedly in this MDL that nuisance actions cannot lie against

defendants who allegedly contribute to MTBE contamination merely as refiners,

manufacturers, marketers, distributers, or suppliers.[53]  Because Pennsylvania's law

is no different, the result is the same.  The Commonwealth's public nuisance claim

is dismissed with prejudice to the extent it is premised on defendants' *manufacture*

or *distribution* of MTBE or MTBE gasoline.[54]

> **B.    Count V:  The Commonwealth Cannot Sustain a Trespass Claim Because It Lacks Exclusive Possession of the Groundwater**

To prevail on a trespass claim, the Commonwealth must allege that it

exclusively possessed the groundwater at issue.  But it has not made such an

allegation, nor could it as a matter of law.  Indeed, no Pennsylvania court has

permitted the Commonwealth to sue for trespass to groundwater, or stated that the

Commonwealth has "exclusive possession" of such water.  Trespass claims for

---

[53]    *See, e.g.*, *In re MTBE*, No. 04 Civ. 4968, 2014 WL 7232280 (S.D.N.Y. Dec. 18, 2014) (dismissing public nuisance claim brought by Orange County Water District where defendants "did not own or have any significant control over the stations"); *In re MTBE*, 980 F. Supp. 2d 425 (dismissing public nuisance claims brought by the town of Fresno where plaintiff "essentially described a product liability action . . . not a nuisance action"); *In re MTBE*, 379 F. Supp. 2d 348, 417 (S.D.N.Y. 2005) (dismissing nuisance claim under New Hampshire law where "plaintiffs [sought] to recover from defendants in their capacity as manufacturers, and not as property owners or users").

[54]    The Commonwealth remains free to litigate its public nuisance claim against *owners*, *operators*, or *users* of the MTBE release sites.

damage to groundwater belong instead to private plaintiffs in exclusive possession of that water.[55]   Lacking the requisite exclusive possession, the Commonwealth's trespass claim is futile and therefore dismissed with prejudice.

### C.    Count VI:  Violations of the UTPCPL

#### 1.    The Allegations in the Amended Complaint Are Insufficient to Support a Claim Under the UTPCPL

The allegations in the Amended Complaint forming the basis of the Commonwealth's UTPCPL claim lack specificity and fail to differentiate among defendants.[56]   The Commonwealth defends its vague group-wide allegations as sufficient under Rule 8(a)(2), insisting that the Court allowed "virtually the same" allegations to survive in two prior MTBE MDL rulings regarding consumer protection statutes.[57]   But both of those rulings predated the heightened pleading standard established by *Twombly* and *Iqbal*, under which, in multiple-defendant

---

[55]     *See, e.g.*, *Dombrowski*, 954 F. Supp. at 1013; *Burr*, 126 A.2d at 408; *Gambo v. Commw.*, No. 04 Civ. 3318, 2005 WL 4346598, at *3 (Pa. Com. Pl. Aug. 26, 2005).  As defendants point out in their reply brief, none of the cases on which the Commonwealth relies actually held that it could bring claims for trespass to groundwater.  *See* Reply Memorandum of Law in Further Support of MTBE Defendants' Motion to Dismiss at 4 n.4.  The Commonwealth's argument that it "controls" the groundwater for trespass purposes is not supported by Pennsylvania case law.  Pl. Mem. at 11.

[56]     *See* Am. Compl. ¶¶ 172-198.

[57]     *See* Pl. Mem. at 14.

cases, "the complaint [(1)] must provide a plausible factual basis to distinguish the conduct of each of the defendants,"[58] and, more generally, (2) set forth allegations that "plausibly give rise to an entitlement for relief."[59]

The Amended Complaint fails to satisfy either of these intertwined requirements.  The only specific defendant the Amended Complaint almost plausibly alleges to have violated any section of the UTPCPL is ARCO, which is accused of having published a bulletin containing allegedly false statements regarding the proper handling of MTBE during storage and shipping.[60]  It is conceivable that the publication of this bulletin could constitute "deceptive conduct" under the catchall provision, but to "nudge[] the[] claim across the line from conceivable to plausible,"[61] the Commonwealth would also need to allege specific information about how the bulletin "create[d] [for consumers, Pennsylvania residents, or the Commonwealth] a likelihood of confusion or of misunderstanding" under the catchall provision.[62]  The other defendant-specific allegations in the Amended Complaint relate to comments made in lobbying and

---

[58]   *Ochre L.L.C.*, 2012 WL 6082387, at *6.

[59]   *Iqbal*, 556 U.S. at 679.

[60]   *See* Am. Compl. ¶ 191.

[61]   *Twombly*, 550 U.S. at 570.

[62]   73 Pa. Stat. § 201-2(4)(xxi).

regulatory proceedings, which alone cannot give rise to a UTPCPL claim, and which the Commonwealth does not allege were directed at consumers.[63]   Further, while at least two of the four UTPCPL provisions at issue require allegations of false advertising, the Amended Complaint references only one advertisement, which the Commonwealth admits does not contain any false information.[64]

The remaining allegations accusing defendants – as a group – of engaging in deceptive conduct or otherwise violating the UTPCPL are simply too vague as to each defendant under *Twombly* and its progeny to state a claim. However, leave to replead the UTPCPL claim is merited because, unlike with the public nuisance and trespass claims, "additional substantive information [could] cure the deficient pleading" with respect to the UTPCPL.[65]   Accordingly, the UTPCPL claim is dismissed without prejudice.

**2.  The Commonwealth Is Not Entitled to Restoration Under the UTPCPL**

---

[63]      *See Zwiercan v. General Motors Corp.*, No. 3235, 2002 WL 31053838, at *6 (Pa. Com. Pl. Sept. 11, 2002) ("[I]n so far as Plaintiff's UTPCPL claim seeks redress for misstatements to [a federal agency], it is a 'fraud on the agency' claim, which is properly preempted by federal law.").

[64]      *See* Am. Compl. ¶ 198.  Subsections 2(4)(v) and (ix) of the UTPCPL "apply *only* to false advertising."  *Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 566 (E.D. Pa. 2009) (emphasis added).

[65]      *Cuoco*, 222 F.3d at 112.

The Commonwealth's entitlement to restoration under the UTPCPL turns on whether it qualifies as a "person" under the restoration provision of the statute.  The Pennsylvania courts have not provided a clear answer to this question. In *Commonwealth v. TAP Pharmaceutical Products*, the trial court analyzed the term "person" and concluded that the Commonwealth was a public entity entitled to restoration under the statute.[66]  This decision was later vacated and remanded by the Pennsylvania Supreme Court because the Commonwealth failed at trial to provide a rational accounting of the relevant state agency's damages.[67]  The Pennsylvania Supreme Court did not, in remanding *TAP*, address the Commonwealth's entitlement to restoration as a "person" under the statute.[68]

The very day that it remanded *TAP*, the Pennsylvania Supreme Court issued a decision in another case, *Meyer v. Beaver County Community College*, holding that "political subdivision agencies" do not constitute "persons" under the UTPCPL.[69]  In *Meyer*, the court confronted the definition of "person" under the UTPCPL in a slightly different context:  whether a public entity was a "person"

---

[66]     *See* 36 A.3d 1112, 1158-59 (Pa. Comm. Ct. 2011), *vacated and remanded*, 94 A.3d 350 (Pa. 2014).

[67]     *See* 94 A.3d 350.

[68]     *See id.*

[69]     93 A.3d 806 (Pa. 2014).

-19-

that could be sued under the statute, not whether a public entity was a "person" entitled to restoration.[70]  Context aside, the statutory provision the *Meyer* court interpreted – which defines "person" under the UTPCPL –  was the same one at issue in *TAP*.

The Commonwealth urges the Court to ascribe different meanings to the word "person" across different sections of the UTPCPL, arguing principally that the Commonwealth's broad enforcement power under the statute militates in favor of an expansive definition of "person" in the context of *recovering damages*, and a narrower definition of "person" in deciding whether to hold a public entity *liable* under the statute.[71]  For additional support, the Commonwealth juxtaposes section 4 of the statute, which permits the Attorney General to "bring an action in the name of the Commonwealth" to restrain violations of the statute, with the restoration provision – section 4.1 – which gives the court discretion to direct that defendants "restore *any person in interest*" whenever a court "issues a permanent injunction . . . *as authorized in section 4*."[72]  Reading these contiguous provisions of the statute together and accounting for its overall purpose of "policing the

---

[70]      *Id.* at 815.

[71]      *See* Pl. Mem. at 21-23.

[72]      73 Pa. Stat. §§ 201-4, 4.1 (emphasis added); *see also* Pl. Mem. at 21.

-20-

marketplace and remedying unfair and deceptive conduct," the Commonwealth concludes that restoration must be available to it as a remedy under the statute.[73]

This is a fair interpretation – and perhaps a more appealing one from a policy perspective – but still remains at odds with the Pennsylvania Supreme Court's pronouncement in *Meyer*.  Further, as defendants point out, counting the Commonwealth as a "*person* in interest" would stretch the statutory definition beyond its plain meaning.  It is even more troubling to give "person" different meanings in different sections of the same statute, especially after the Pennsylvania Supreme Court recently defined the term without explicitly limiting its meaning.[74] After considering various statutory interpretation arguments, the *Meyer* Court excluded the Commonwealth and its agencies as "persons" under the UTPCPL and gave no indication that the result would or should be different in the enforcement

---

[73]    Pl. Mem. at 22 n.18.

[74]    *See, e.g.*, *King v. Burwell*, No. 14-114, 2015 WL 2473448, at *8 (U.S. June 25, 2015) (Roberts, C.J.) (noting, in interpreting ambiguous language in a statute, that "[o]ur duty, after all, is 'to construe statutes, not isolated provisions.'") (quoting *Graham Cnty. Soil and Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 290 (2010))); *Auburn Hous. Auth. v. Martinez*, 277 F.3d 138, 144 (2d Cir. 2002) (Katzmann, C.J.) ("The preferred meaning of a statutory provision is one that is consonant with the rest of the statute."); *Board of Revision of Taxes v. City of Phila.*, 4 A.3d 610, 622 9 (Pa. 2010) (noting that when a term has a particular meaning in one section of a statute, that word "will be construed to mean the same thing in another section of the same statute").

context.[75]  A contrary ruling in this case would appear to defy *Meyer* and do

violence to the UTPCPL's statutory scheme.  Accordingly, I hold that the

Commonwealth is not entitled to restoration under the statute.

However, this issue is an important one that the Pennsylvania

Supreme Court should squarely address.  Only adding to the confusion of the

conflict in authorities is the court's decision to remand *TAP* on unrelated grounds

on the same day it issued *Meyer*, without any mention in *TAP* of the overlapping

issue at the heart of *Meyer*.[76]  The upshot is two rulings, issued on the same day,

that may contradict each other.  I would certify this issue to the Pennsylvania

Supreme Court if I could, but it will not accept certification petitions from federal

district courts.[77]  What I may be willing to do, at the request of one or more of the

parties, is certify this order for interlocutory appeal pursuant to 28 U.S.C. §

1292(b), as the Pennsylvania Supreme Court does entertain certification petitions

---

[75]     *See Meyer*, 93 A.3d at 815 ("In sum, we hold the UTPCPL is
ambiguous as to whether political subdivision agencies constitute 'persons.'
However, based on our consideration of the law prior to the UTPCPL's enactment,
the UTPCPL's purpose, and the consequences of a holding that it applies to such
agencies, we conclude the legislature did not intend for the definition of 'person' to
include political subdivision agencies.").

[76]     This is likely because the definition of "person" under the statute was
not – for reasons unknown to me – an issue before the court on appeal in *TAP*.

[77]     *See* 210 Pa. Code § 63.8.

from the federal courts of appeals.[78]

## V.   CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is

GRANTED.  The Clerk of Court is directed to close this motion (Dkt. No. 81) and

enter judgment in favor of the moving defendants.


SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            July 2, 2015

_____

[78]      *See id.*

**- Appearances -**

**Liaison Counsel for Plaintiffs:**

Robert J. Gordon, Esq.
Robin L. Greenwald, Esq.
William A. Walsh, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
(212) 558-5500

**Counsel for the Commonwealth:**

Daniel Berger, Esq.
Tyler Wren, Esq.
Berger & Montague, P.C.
Special Counsel to the Commonwealth
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000

Michael Axline, Esq.
Duane C. Miller, Esq.
Tracey L. O'Reilly, Esq.
Miller, Axline & Sawyer
1050 Fulton Avenue, Suite 100
Sacramento, CA 95825
(916) 488-6688

Stewart L. Cohen, Esq.
Robert L. Pratter, Esq.
Michael Coren, Esq.
Cohen, Placitella & Roth, P.C.
Special Counsel to the Commonwealth
Two Commerce Square, Suite 29000
Philadelphia, PA 19103
(215) 567-3500

James A. Donahue, III
Executive Deputy Attorney General
Pennsylvania Office of Attorney General
Strawberry Square
Harrisburg, PA 17120
(717) 705-0418

Linda C. Barrett
Deputy General Counsel
Pennsylvania Governor's Office of General Counsel
333 Market Street
Harrisburg, PA 17101
(717) 787-9347

**Liaison Counsel for Defendants and on behalf of Defendants:**

Peter J. Sacripanti, Esq.
James A. Pardo, Esq.
Stephen J. Riccardulli, Esq.
Lisa A. Gerson, Esq.
McDermott Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
(212) 547-5583