

Boston  Brussels  Chicago  Düsseldorf  Frankfurt  Houston  London  Los Angeles  Miami

Milan  Munich  New York  Orange County  Paris  Rome  Seoul  Silicon Valley  Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

James A. Pardo
Attorney at Law
jpardo@mwe.com
+1 212 547 5353

August 12, 2015

BY HAND DELIVERY AND ELECTRONIC MAIL

The Honorable Shira A. Scheindlin
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1620
New York, New York  10007-1312

   Re: Master File C.A. No. 1:00-1898 (SAS), M21-88, MDL No. 1358
     *Defendants' Pre-Conference Letter for August 20, 2015 Status Conference*

Dear Judge Scheindlin:

   Defendants respectfully submit this letter in advance of the August 20, 2015 conference.

## JOINT AGENDA ITEM

**I.**  ***Commonwealth of Pennsylvania*: Report on CMO Negotiations**

   Since the last status conference, the parties held an in-person meet-and-confer session, and several by phone, regarding a joint proposed CMO. The parties have reached agreement on all but two sections of the proposed CMO. As detailed below, Defendants respectfully request that the Court adopt Defendants' proposal on these two outstanding issues.[1] *See* Ex. A.

   Section V(A): The parties have been unable to resolve a dispute regarding inclusion of Section V(A), which provides that Defendants may proceed to take discovery on Plaintiff's alleged damages. Until recently, this section was not in dispute. Indeed, when, in advance of the last two status conferences, Plaintiff submitted its version of the proposed CMO to the Court, its Section V mirrored that of the Defendants. Specifically, Plaintiff's submissions stated that discovery could proceed at this time on the following topics: "(A) ***damages Plaintiffs allege***; (B) general liability discovery; and (C) discovery related to Defendants' affirmative defenses."[2] *See*

---

[1] The parties will continue to confer and will inform the Court if additional issues are resolved ahead of the conference.

[2] Defendants have since offered to change Section V(A) to read "the factual basis for damages Plaintiff alleges," but Plaintiff has declined this compromise.

The Honorable Shira A. Scheindlin
August 12, 2015
Page 2

*Pls.' Preconf. Ltr.* (Apr. 16, 2015), Ex. A; *Pls.' Preconf. Ltr.* (June 10, 2015), Ex. 1.  Now, however, Plaintiff proposes to strike subsection (A), arguing that Plaintiff's damages will be the subject of expert testimony and/or should be postponed until next year.  Defendants disagree with this position; there is no need or justification for putting a blanket limitation on damages discovery.

First, Defendants do not believe it would be efficient or productive to wait 4-5 more months before they are able to begin taking discovery on Plaintiff's alleged damages or the factual basis for Plaintiff's alleged damages.  *See supra* n. 1.  While Defendants do not yet have a specific list of discovery requests they plan to serve before the end of the year, some exemplar topics that Defendants may seek to pursue – and which presumably would be precluded by Plaintiff's proposed limitation – include the following:  the Commonwealth's policies and/or procedures for addressing natural resource injury; non-site-specific information on Plaintiff's environmental funding sources and budgeting; and the Commonwealth's methods and procedures for tracking past costs.  All of this discovery has occurred in other statewide MTBE cases; none of it requires expert testimony or site-specific disclosure.

Second, to the extent that the Commonwealth finds any discovery served by Defendants objectionable – whether because it believes the discovery requires a site-specific response, necessitates expert opinion, or otherwise – such objections can and should be addressed on a request-by-request basis as they arise (hopefully through the meet-and-confer process but, if not, with assistance from the Court or Special Master).  They should not be addressed through a preemptive, wholesale refusal to participate in discovery on this topic.

Finally, the Commonwealth initially contemplated this litigation at least four years ago (when it served its first TSCA notice letter on a defendant), and filed its Complaint over a year ago.  The Commonwealth should not be surprised by the need to respond to discovery on alleged damages, and it should not be permitted to avoid or delay discovery on this critical topic.

CMO 4 Declarations:  As directed by the Court at the June 18 conference, the parties have conferred regarding the Defendants' CMO 4-type declarations.  Defendants have proposed a revision to CMO 4 that clarifies the application of the Marathon Order categories to the relevant geographic area[3] – Pennsylvania – and postpones disclosure of one category of information until specific sites are in play.  We believe that the parties have reached agreement as to these case-specific revisions.  However, one issue remains in dispute: the timing for Defendants' declarations. Consistent with the Court's prior guidance, Defendants proposed that they would serve declarations by December 31.  *See June 18, 2015 Status Conf. Tr.* at 11:2-8 (recognizing that while Defendants would be required to provide CMO 4-type declarations at some point, it makes sense for those declaration to follow Plaintiff's production of DEP and

---

[3] Certain provisions required revision because the Marathon Order was drafted to apply to a single-county case, *County of Suffolk v. Amerada Hess Corp., et al.*, No. 04-cv-1321, as opposed to a statewide action.

The Honorable Shira A. Scheindlin
August 12, 2015
Page 3

USTIF files, which will comprise the first production of any MTBE site files). Plaintiff has now asked that Defendants "roll" some of the information ahead of December 31.

Defendants object to such a rolling response for two reasons. First, we believe the Court was clear that Defendants' declarations should follow certain disclosures/productions by the Commonwealth. *See id.* Second, Defendants need the time to do a thorough investigation prior to submitting sworn declarations. Defendants should be provided the time required to conduct a complete investigation before asking a representative to sign a binding declaration.

## DEFENDANTS' AGENDA ITEM

### I.   *Commonwealth of Pennsylvania*: Covered Persons Disclosure

On June 5, 2015, the Commonwealth of Pennsylvania served Defendants with its Covered Persons Disclosure. As the Court will recall, Covered Persons disclosures are required by the 2005 MDL 1358 Preservation Order and are intended to identify those persons who are in possession, custody or control of documents "that are relevant to, or may lead to the discovery of information relevant to, any claim or defense at issue in [MDL 1358]." *Order for Preservation of Documents* § 2. These disclosures generally have been required early in the MDL cases as they impact the course of discovery.

The Commonwealth's disclosure identified the Department of Environmental Protection, the Department of Conservation and Natural Resources and the Department of Insurance (Bureau of Special Funds) as Covered Persons. On June 17, Defendants wrote to Plaintiff to seek clarification on certain statements in the disclosure and to suggest that inclusions of certain additional State agencies is appropriate. *See Ltr. from J. Pardo to T. O'Reilly* (June 17, 2015), at Ex. B.[4] Nearly two months later, that letter remains unanswered. Therefore, Defendants respectfully request that the Court order the Commonwealth to add the suggested entities to its Covered Persons list or to explain why those entities should not be added, and to otherwise respond to the questions posed in Defendants' June 17 letter.

### II.   *Commonwealth of Pennsylvania*: Deadline for Amendment

On May 14, 2015, the Court partially dismissed Count IX of Plaintiff's First Amended Complaint with leave to replead. *See Opinion & Order* (May 14, 2015), at 18-19 (dismissing claim that Insurance Defendants violated Section 977.32 by failing to disclose additional insurance coverage). By Order dated July 2, 2015, the Court also dismissed Count VI (Unfair Trade Practices and Consumer Protection Law), again with leave to replead. *See Opinion & Order* (July 2, 2015), at 19. However, neither of the Court's Orders set a deadline by which Plaintiff must file its amended complaint or, alternatively, to inform the Court and Defendants that it will not be amending. Defendants respectfully request that the Court set such a deadline

---

[4] Defendants' letter identifies the Pennsylvania Departments of Health, Transportation, State Police, Public Works, and the Office of the Governor as likely to be in possession, custody or control of relevant documents, and provides Defendants' rationale for each.

The Honorable Shira A. Scheindlin
August 12, 2015
Page 4

now.  Plaintiff's time to amend the complaint should not extend indefinitely, particularly where Defendants already have started to respond to discovery.

***

As always, we appreciate your Honor's attention to this matter and ask that this letter be docketed by the Clerk's Office so that it is part of the Court's file.

Sincerely,

*James A. Pardo*

James A. Pardo

cc:  All Counsel of Record by LNFS, Service on Plaintiffs' Liaison Counsel

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION

Master File No. 1:00-1898
MDL 1358 (SAS) M21-88

This document relates to:

*Commonwealth of Pennsylvania, et al. v. Exxon Mobil Corporation, et al.*, Case No. 1:14-cv-06228 SAS

SHIRA A. SCHEINDLIN, U.S.D.J.

### [PROPOSED] CASE MANAGEMENT ORDER NO.

This Case Management Order ("CMO") defines the scope of initial disclosures in the above-captioned case (hereinafter the "*Pennsylvania case*").  Additional discovery will be addressed in subsequent CMOs.

## I.    IDENTIFICATION OF COVERED PERSONS

By June 5, 2015, parties who have not yet done so in MDL 1358 shall identify "covered persons" in accordance with Sections 2(b) and 2(c) of the Court's 2005 Order for Preservation of Documents.  Any parties added subsequent to the date of this Order shall identify "covered persons" within sixty (60) days from the later of the defendant's answer date or, as applicable, a decision on the defendant's motion to dismiss.

## II.    INITIAL DISCLOSURES BY PLAINTIFF:

A.    By December 31, 2015, Plaintiff shall identify every "release" site (by name, address and site identification number) reported to the Commonwealth or which the Commonwealth discovered through its own investigation at which Plaintiff contends neat MTBE or gasoline with MTBE was released.  Plaintiff shall not limit its responses to

information contained in readily accessible electronic data (as defined below).  Also by December 31, 2015, for each such site, Plaintiff shall (1) identify the maximum MTBE detection in groundwater and the date of such detection, and (2) identify by bates number the most recent report in which the detection appears.  Plaintiff shall provide the information described in this paragraph on a rolling basis.

B.     Within one week from the entry of this CMO, Plaintiff shall produce to Defendants any and all readily accessible electronic data (*i.e.*, databases or other files created for the purpose of centralizing or aggregating storage of information) in their possession, custody or control, or in the possession, custody or control of any agency or department of the Commonwealth, regarding the following:

1.     The presence and concentration of MTBE or TBA in any public water supply wells in Pennsylvania, including, but not limited to, any detections reported in any Safe Drinking Water Information System (SDWIS) database;

2.     The presence and concentration of MTBE or TBA in any groundwater or surface waters in Pennsylvania;

3.     The presence and concentration of MTBE or TBA in any private water supply well(s) or potable spring(s) in Pennsylvania, including, but not limited to, data (if any) in the Commonwealth's possession compiled by Bucks, Chester, Delaware, Montgomery and Philadelphia Counties (and all other counties which may also compile such data);

4.     The payment of public funds for the investigation, removal, remediation, monitoring or treatment of MTBE or TBA in Pennsylvania (to the extent that data related to the payment of public funds is not maintained so as to identify MTBE and/or TBA, Plaintiff shall produce such data for reformulated gasoline or gasoline containing MTBE);

5.     The amount of public funds used to pay for the remediation, cleanup or treatment of MTBE or TBA in Pennsylvania, the locations at which such public funds were expended, and any costs, damages or injury allegedly sustained by Plaintiff as a result of the presence of MTBE or TBA in Pennsylvania (to the extent that data

related to the expenditure of public funds is not maintained so as to identify MTBE and/or TBA, Plaintiff shall produce such data for reformulated gasoline or gasoline containing MTBE);

6.      The concentration of gasoline constituents in groundwater at any release site identified in response to Section II.A above including, but not limited to, MTBE or TBA; and

C.      To the extent not already produced, within one week of the entry of this CMO, Plaintiff shall produce readily accessible electronic data (to the extent so maintained by the Commonwealth) regarding the following:

1.      The location and ownership interest, including leases, that the Commonwealth, including any agency or department thereof, has or had in any underground storage tank which stored gasoline and any terminal or refinery which was engaged in the refining, distribution, storage or sale of neat MTBE, reformulated gasoline, or gasoline containing MTBE;

2.      The location and ownership interest, including leases, that the Commonwealth, including any agency or department thereof, has or had in any pipeline or delivery system (*e.g.,* railcar, barge, tanker or tank truck) engaged in the delivery of neat MTBE, reformulated gasoline, or gasoline containing MTBE for distribution or sale in Pennsylvania;

3.      The identity of parties with whom the Commonwealth, including any agency or department thereof, had supply contracts to deliver gasoline containing MTBE, reformulated gasoline, or neat MTBE to Pennsylvania, including exclusive supply contracts, and contracts with delivery services, franchisees, lessees, lessors, jobbers, common carriers (including, but not limited to, pipelines), distributors, terminals, other refiners, or any other entities;

4.      The locations, dates, volumes, sources and causes of any releases of gasoline containing MTBE, reformulated gasoline, or neat MTBE, by the Commonwealth, including any agency or department thereof, into soil, ground water or surface water within Pennsylvania; and

5.      Any site remediation reports related to releases of MTBE, reformulated gasoline, or gasoline containing MTBE at sites that are or were owned and/or operated by the Commonwealth, including any agency or department thereof, at the time of release

and where such releases caused MTBE impacts to soils and/or groundwater.

D.      Production of readily accessible electronic data as described in this Section shall be made on a "rolling" or continuing basis starting no later than May 29, 2015.

E.      If any of the foregoing electronic data or files also contains data or information about chemicals or substances other than MTBE, such data or information shall be produced and not withheld or redacted.

F.      For each site that Plaintiff does or may contend is implicated in this matter, Plaintiff shall produce to Defendants all site files from the Underground Storage Tank Indemnity Fund (USTIF) on a rolling basis, as the documents are processed and reviewed for privilege, with such production completed by December 31, 2015. Defendants will not unreasonably object should a short extension be necessary to complete production due to circumstances not foreseen at the time of the CMO.

## III.    INITIAL DISCLOSURES BY DEFENDANTS

A.      By December 31, 2015, each Defendant shall identify every "release site" (by name, address and, if applicable, site identification number) where that Defendant's records and/or the records of its environmental consultant in Defendant's possession, report, indicate or show a release of MTBE or a detection of MTBE.  Defendants shall not limit their responses to information contained in readily accessible electronic data (as defined above).

B.      Within one week of the entry of this CMO, each Defendant shall produce to Plaintiff any and all readily accessible electronic data (*i.e.*, databases or other files

4

created for the purpose of centralizing or aggregating storage of information) in its possession, custody or control regarding the following:

1.    The location and ownership interest, including leases, that responding Defendant has or had in any service station, underground storage tank system ("USTs") motor fuel terminal or refinery in Pennsylvania which was engaged in the refining, distribution, storage or sale of neat MTBE, reformulated gasoline, or gasoline containing MTBE;

2.    The location and ownership interest, including leases, that responding Defendant has or had in any pipeline or delivery system (*e.g.,* railcar, barge, tanker or tank truck) engaged in the delivery of neat MTBE, reformulated gasoline, or gasoline containing MTBE for distribution or sale in Pennsylvania;

3.    The identity of parties with whom the responding Defendants had supply contracts to deliver gasoline containing MTBE, reformulated gasoline, or neat MTBE to Pennsylvania, including exclusive supply contracts, and contracts with delivery services, franchisees, lessees, lessors, jobbers, common carriers (including, but not limited to, pipelines), distributors, terminals, other refiners, or any other entities;

4.    The name, grade, product codes, blend information and other identifying information for gasoline containing MTBE, reformulated gasoline, or neat MTBE that was distributed by the responding Defendant in Pennsylvania;

5.    The location, dates, volumes, sources and causes of any releases of gasoline containing MTBE, reformulated gasoline, or neat MTBE, by Defendant, into soil, ground water or surface water within Pennsylvania;

6.    Any site remediation reports related to releases of MTBE, reformulated gasoline, or gasoline containing MTBE at sites that are or were owned and/or operated by the responding Defendants at the time of release and where such releases caused MTBE impacts to soils and/or groundwater;

7.    The volumes of neat MTBE, reformulated gasoline, and gasoline containing MTBE that the responding Defendant refined, distributed, stored, blended, supplied to or sold in the Commonwealth of Pennsylvania; and

8.    Lists of Pennsylvania MTBE release sites.

C.      On June 9, 2015, Plaintiff provided Defendants with a list of sites at which Plaintiff contends gasoline was released.  By August 30, 2015, each Defendant shall produce to Plaintiff any and all readily accessible electronic data (*i.e.*, databases or other files created for the purpose of centralizing or aggregating storage of information) in its possession, custody or control regarding licensing, branding, and franchise agreements for gasoline sales in Pennsylvania for every site (by name, address and site identification number) within the Commonwealth at which Plaintiff contends gasoline was released.

D.      Plaintiff intends to serve subpoenas on Defendants' current or former environmental consultants to obtain readily available electronic data concerning: (1) concentrations of MTBE and/or BTEX in soil and groundwater at release sites, and (2) consulting reports regarding release sites.  Plaintiff will provide Defendants with advance notice of such subpoenas as required by Federal Rule of Civil Procedure 45(D)(4).  Upon receiving such notice, each Defendant agrees to inform the subpoenaed consultant that it does not object to the consultant producing responsive, non-privileged documents and expects the consultant to comply with its obligations under by Federal Rule of Civil Procedure 45.

E.      The parties have met and conferred regarding the content of CMO 4.III.B.2 declarations as applied to the *Pennsylvania* action.  The revised CMO 4 is incorporated herein and attached at Exhibit A.

## IV.     ELECTRONIC LOOSE FILES

A.      With respect to the readily accessible electronic data to be produced pursuant to Parts III and IV of this Order, the parties need not produce Electronic Loose Files ("ELF").  This subsection shall not affect Plaintiff's obligation under Section II.A (regarding production of hyperlinked documents).

B.      For purposes of this Order, ELF includes any electronic files that do not consist of files or data from systems created to centralize or aggregate storage of a party's information (*i.e.* databases).   Discrete word processed documents (*e.g.* memoranda, correspondence), PDFs, images, emails and their attachments, and the like are considered ELF.

## V.      OTHER DISCOVERY PERMITTED

The parties may engage in written discovery, subject to any and all appropriate objections, as to the following:

A.      Damages Plaintiff alleges;

B.      General liability;

C.      Defendants' affirmative defenses; and

D.      Identification of additional defendants.

## VI.      FUTURE DISCOVERY

The parties shall meet and confer after December 31, 2015 to discuss:

A.      The timing for completion of the production of electronic files that are not readily available pursuant to Parts III and IV, and any further discovery the parties propose, taking account of the electronic data the parties produce pursuant to sections II and III of this CMO;

B.      Production of paper or non-electronic site remediation files; and

C.      Methods for management of future discovery.

                                        SO ORDERED

                                        _____

DATED:  New York, New York             Shira A. Scheindlin
               August ___, 2015              U.S.D.J.

<u>EXHIBIT A to CMO No. ___</u>

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**IN RE: METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION**

**Master File No. 1:00-1898**
**MDL 1358 (SAS)**
**M21-88**

**This document relates to:**

*Commonwealth of Pennsylvania, etc. v. Exxon Mobil Corporation, el al*, No. 1:14-cv-06228-SAS

---

<u>CMO 4(III)(B)(2) DECLARATIONS BY DEFENDANTS</u>

(a)  Except as otherwise indicated below, on or before December 31, 2015, each defendant shall provide declarations, applicable to *Commonwealth of Pennsylvania, et al. v. Exxon Mobil Corporation, et al.*, 14 Civ. 6228 (from 1979-present), based upon all non-privileged information, including documents, within the possession, custody or control of a defendant and retrievable through reasonable effort. The declarations shall identify databases and categories of documents that were used to gather the information contained in the declarations. For purposes of this Order, the Relevant Geographic Area is the Commonwealth of Pennsylvania. The declarations shall contain the following information:

    i.  defendants will identify wholesalers and jobbers supplied by them that provide gasoline containing MTBE within the Relevant Geographic Area;

    ii.  manufacturers of neat MTBE and/or TBA will disclose how and where it is made;

    iii.  manufacturers of neat MTBE and/or TBA will identify each refiner to whom it has sold or delivered neat MTBE and/or TBA, during the relevant time period, that may have been added to gasoline for delivery in the Relevant Geographic Area;

    iv.  each refiner will provide a history of ownership, during the relevant time period, including changes in corporate structure, of each refinery it owns or has owned that serve(d) the Relevant Geographical Area;

<u>EXHIBIT A to CMO No. ___</u>

v.   each refiner will disclose the date it first blended MTBE and/or TBA into gasoline for deliveries to terminals that supplied the Relevant Geographical Area;

vi.   each refiner shall describe the records, which include the name, contents and location of records, including electronically stored records, that record the batch number for batches of gasoline delivered from defendants' refineries to terminals in the Relevant Geographical Areas;

vii.   for each petroleum product containing MTBE refined and/or marketed by the defendant into the Relevant Geographical Area, the Defendant shall disclose the name and grade (if applicable) of the product, the product and product code;

viii.   each refiner will disclose the date it last blended MTBE and/or TBA into gasoline for deliveries into the Relevant Geographical Area; and

ix.   each defendant will respond to the seven categories identified by Judge Scheindlin in her Order to Marathon Ashland Petroleum, LLC, dated June 22, 2004, and reproduced below, as that information pertains to Pennsylvania during the relevant time period.

<u>MARATHON ASHLAND ORDER CATEGORIES</u>

1)   all locations, by city in Pennsylvania, in which defendant directly sells or markets gasoline;

2)   all locations, by city and state, in which defendant owns or operates refineries that serve(d) the Relevant Geographic Area;

3)   all routes along which defendant owns or operates gasoline pipelines, terminals, or other distribution facilities that serve(d)/deliver(ed) gasoline to the Relevant Geographic Area; Indicate, by city and state, any and all primary origin points, secondary origin points, ending points, and breakout terminals along the routes;

4)   all routes along which defendant ships gasoline through a common carrier pipeline that serve(d)/deliver(ed) gasoline to the Relevant

<u>**EXHIBIT A to CMO No. ___**</u>

Geographic Area; Indicate, by city and state, any and all primary and secondary origin points where defendant inputs gasoline, and any and all ending points, breakout terminals, and off-take points where defendant takes out gasoline;

5)   all locations, by city and state, in which defendant owns or operates marine tankers, barges, and tank trucks that are used to transport gasoline to the Relevant Geographic Area;

6)   all waterway routes along which defendant transports gasoline within the Relevant Geographic Area; Indicate, by city and state, the origin and ending points;

7)   all rail routes along which defendant transports gasoline within the Relevant Geographic Area; Indicate, by city and state, the origin points, ending points, and all delivery points along the route;

8)   after selection of specific sites, the parties will confer regarding defendants' identification of all road routes along which defendant transports gasoline within the Relevant Geographic Area.

# EXHIBIT B



Boston  Brussels  Chicago  Dallas  Düsseldorf  Frankfurt  Houston  London  Los Angeles  Miami
Milan  Munich  New York  Orange County  Paris  Rome  Seoul  Silicon Valley  Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

James A. Pardo
Attorney at Law
jpardo@mwe.com
+1 212 547 5353

June 17, 2015

BY ELECTRONIC MAIL AND LNFS

Tracey O'Reilly, Esq.
Miller & Axline P.C.
1050 Fulton Avenue, Suite 100
Sacramento, CA 95825

> **Re:** ***Commonwealth of Pennsylvania v. Exxon Mobil Corp., et al.*, No. 14-cv-06228**
> Commonwealth's June 5, 2015 Designation of Covered Persons

Dear Ms. O'Reilly:

I am writing on behalf of Defendants in the above-captioned case regarding Plaintiff's June 5, 2015 Designation of Covered Persons.

As you know, the March 15, 2005 Order for the Preservation of Documents provides that the parties are required to provide a list of "Covered Persons" – *i.e.*, persons who are in the possession, custody or control of documents "that are relevant to, or may lead to the discovery of information relevant to, any claim or defense at issue…." *Preservation Order* § 2(a)-(b).

The Commonwealth of Pennsylvania has thus far designated three Departments as Covered Persons: the Department of Conservation and Natural Resources (DCNR), the Department of Environmental Protection (DEP), and the Department of Insurance (Bureau of Special Funds).

First, we seek to clarify the scope of these designations. As we understand Plaintiff's designation, the DCNR and DEP have been designated in their totality, including all offices, bureaus, divisions, boards, commissions, committees, and authorities that are depicted on the accompanying organizational charts. If our understanding is incorrect, please advise.

Second, it appears that the Commonwealth has designated the Bureau of Special Funds as a Covered Person, but has not designated the individuals/offices to which it reports – *i.e.*, the Deputy Insurance Commissioner for the Liquidations, Rehabilitations and Special Funds; the Executive Deputy Insurance Commissioner; and the Insurance Commissioner. Defendants

Ms. Tracey O'Reilly
June 17, 2015
Page 2

believe that these additional individuals/offices also are likely to have Covered Documents and should be designated.  If we have misinterpreted Plaintiff's designation, please let us know.

Third, there are a number of departments or agencies that Defendants believe are likely to have possession, custody or control of Covered Documents but have not been designated by Plaintiff.  We list each of these below and request that Plaintiff amend its Covered Persons designation to include these entities (or any appropriate offices within those entities) or provide an explanation as to why it does not believe such designation is appropriate.

- **Department of Health (DOH)** - based on Defendants' investigation, certain employees of the DOH are likely to have Covered Documents because, *inter alia*, the DOH has published reports and fact sheets regarding MTBE and air quality, and has responsibility for reviewing and investigating complaints related to water, soil and air.

- **Department of Transportation (DOT)** - based on Defendants' investigation, certain employees of the DOT are likely to have Covered Documents because, *inter alia*, the DOT owns/operates underground storage tanks; has investigated/responded to releases at its facilities; and regulates transportation of certain underground storage tanks.

- **Pennsylvania State Police** - based on Defendants' investigation, the State Police is likely to have Covered Documents because, *inter alia*, it has or had responsibility for enforcing closure regulations for storage tanks containing flammable and combustible liquids.

- **Office of the Governor** - based on Defendants' investigation, the Office of the Governor is likely to have Covered Documents because, *inter alia*, it has made public statements regarding MTBE and the use and supply of RFG gasoline in Pennsylvania.

- **Department of Public Works (DPW)** – based on an initial review of Plaintiff's June 9, 2015 production, it appears that the DPW is likely to have Covered Documents because, *inter alia*, it may be the owner or operator of a site or sites at which MTBE has been detected.

The list is not intended to be exhaustive, as Defendants' investigation of potential Covered Persons within the Commonwealth is ongoing.

We look forward to hearing from you.

Sincerely,

*James A. Pardo*

James A. Pardo

cc: All counsel of record by LNFS