

Boston  Brussels  Chicago  Düsseldorf  Frankfurt  Houston  London  Los Angeles  Miami
Milan  Munich  New York  Orange County  Paris  Rome  Seoul  Silicon Valley  Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

James A. Pardo
Attorney at Law
jpardo@mwe.com
+1 212 547 5353

August 17, 2015

BY HAND DELIVERY AND ELECTRONIC MAIL

The Honorable Shira A. Scheindlin
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1620
New York, New York  10007-1312

> Re:   Master File C.A. No. 1:00-1898 (SAS), M21-88, MDL No. 1358
>       *Defendants' Pre-Conference Reply Letter for August 20, 2015 Status Conference*

Dear Judge Scheindlin:

Defendants respectfully submit this reply letter in advance of the August 20 conference.

## JOINT AGENDA ITEM

**I.    *Commonwealth of Pennsylvania*: Report on CMO Negotiations**

Section V(A) – Plaintiff writes that "Defendants wish to insert into the CMO … a provision allowing unrestricted discovery to commence immediately with respect to the damages claimed by the Commonwealth." Plaintiff seems to suggest that it should not be expected to respond to discovery related to damages more than a year after filing its Complaint. Plaintiff also seemingly ignores that Section V(A) has been an agreed-to section of the proposed CMO ever since the parties first exchanged drafts and that Plaintiff, not Defendants, changed positions.

Ignoring the last-minute nature of Plaintiff's objection, Defendants have assured Plaintiff that they have no intention of serving extensive discovery on damages before the end of the year. Specifically, Defendants will seek neither expert opinion nor site-specific damages evidence during that time (Plaintiff will not even have identified the sites at issue until December 31). Rather, Defendants will seek discovery only on discrete, non-site-specific issues. *See Email from S. Riccardulli to M. Axline* (Aug. 17, 2015) (providing list of topics Defendants may want to pursue in the next 4-5 months) (at Ex. A). Defendants object to efforts to word-smith the bounds of permissible damage discovery before any discovery is served. Such an effort is much less efficient than conferring if and when a concrete objection is made to a concrete request.

The Honorable Shira A. Scheindlin
August 17, 2015
Page 2

Accordingly, the Court should reject Plaintiff's request for an order requiring Defendants to preview whatever damage discovery they might serve before actually serving it. There is no justification for turning the discovery process on its head in this manner, or for putting a blanket limitation on Defendants' ability to take discovery on this vital topic. Defendants' topic V(A) is appropriate for discovery and should be adopted by the Court in the CMO.

CMO 4 Declarations – As it did with Section V(A), Plaintiff has changed its position. When it first asked Defendants to provide CMO 4-type declarations, it asked Defendants for a date by which Defendants could do so. In July, Plaintiff accepted Defendants' December 31 proposal for service of CMO 4 declarations. *See, e.g.*, *Email from M. Axline to T. Bongiorno* (July 22, 2015) ("Attached is a redline of your latest draft PA CMO. I just redlined a clean copy of your draft because we accepted most of your changes," including the December 31 date for CMO 4) (at Ex. B). Within the last week, however, Plaintiff went from requesting that Defendants roll responses to CMO 4 with a completion date of December 31, to (for the first time in its preconference letter) requesting that the Court order Defendants to complete the full declarations by October 1 – three  months earlier.[1]

However, Plaintiff has yet to provide a legitimate reason why it needs these signed declarations before the end of the year. Plaintiff claims that this information is "foundational" to the Commonwealth's case and that it somehow will assist in the formation of a release site list. As to the first rationale, December 31 already has been deemed an acceptable time for the parties to exchange "foundational" information – including, most critically, Plaintiff's list of sites at which MTBE has been released *in a case that was brought to remedy release of MTBE at sites*.

As to the second rationale, Defendants already have noted their disagreement with Plaintiff's position that the requested information – related to supply chains, refinery ownership, and purchase information – has anything to do with the identification of sites at which MTBE has been released. Nonetheless, what *Plaintiff's letter fails to acknowledge* is that Plaintiff served, and Defendants responded to, a set of interrogatories that in many ways mirror (at times, verbatim) the CMO 4 categories. Therefore, Plaintiff already has received and will continue to receive more of this information on a rolling basis, ahead of December 31. Despite the same, Plaintiff now wants Defendants to complete their investigation on the statewide distribution and supply chain in less than two months (and ask a corporate representative to swear to the completeness and veracity of that investigation). Defendants have said they can complete this investigation by December 31, and Plaintiff has not shown that they will be prejudiced by this schedule. Therefore, the Court should approve the parties' original agreement to provide CMO

---

[1] During a meet-and-confer on Friday, August 14, Defendants offered a compromise whereby certain CMO 4 information would be "rolled" to Plaintiff beginning no later than October 31, with a completion date of December 31. Defendants further suggested that Plaintiff identify the topics that it believes are relevant to creation of the MTBE release site list – Defendants are hard-pressed to see the connection – which then could be prioritized for disclosure. Plaintiff has not accepted this proposal.

The Honorable Shira A. Scheindlin
August 17, 2015
Page 3

4-type declarations by December 31.

      <u>Pre-Amendment UTPCPL Discovery</u> – Your Honor has ruled that Plaintiff failed to sufficiently plead a UTPCPL claim.  Although the Court granted leave to amend, it did not authorize a broad-based fishing expedition for Plaintiff to attempt to substantiate its cause of action.  Either Plaintiff has a good-faith basis – and supporting information – to allege a UTPCPL claim (as required by Rule 11), or it does not.  Its professed need for discovery is a tacit admission it does not.  Plaintiff should be given a short deadline to decide whether it will amend its complaint, after which the pleadings in this case should close.[2]

      Plaintiff's attempt to distinguish the case law prohibiting pre-claim discovery is unavailing.  Plaintiff provides no support for its contention that this prohibition hinges on a court's jurisdiction.  *See Pls.' Preconf. Ltr.*at 3. *Cf. Mixing & Mass Transfer Tech., LLC v. Lightnin, Inc.*, Case No. 4:05-CV-1519, 2006 WL 140414, at *3 (M.D. Pa. Jan. 18, 2006) (in context of order requiring more definite statement, *i.e.*, where court retained jurisdiction, recognizing that federal rules do not permit pre-complaint discovery).  To the contrary, the rationale for Rule 27's strict requirements is that discovery should not "enable parties to fish for some ground for bringing suit."  *See Marshal v. Madoff*, 2015 WL 2183939, at *2 (S.D.N.Y. May 11, 2015) (internal quotations omitted).  The same rationale applies here, where Plaintiff's stand-alone UTPCPL claim was dismissed for failure to state a claim.[3]  It is irrelevant that Plaintiff has remaining claims pending before the Court.

      Finally, Plaintiff contends that its proposed discovery is relevant to its failure to warn claim.  If so, this statement begs the question why Plaintiff sought leave to serve such discovery in the first place.  One answer is that the discovery clearly is intended to support Plaintiff's UTPCPL claim and is not relevant to a failure to warn.[4]  Nonetheless, if it is Plaintiff's position that the proposed discovery is not a fishing expedition intended to support its dismissed claim, but rather proper discovery relevant to a failure to warn claim, then there should be no problem with the Court setting a short deadline for amendment.

***

---

[2] Prompt action on any further amendment is particularly important because, although Defendants have yet to answer the Complaint, they are being asked to respond to substantial discovery.

[3] It is ironic that on a cause of action that the Court held requires false advertising **to the public**, Plaintiff is unable to substantiate its claim without taking discovery.

[4] Plaintiff's proposed document requests (which Plaintiff, not Defendants, suggested previewing) all seek production of advertising and promotional materials.  However, the issue on a strict liability failure to warn claim is whether the product was distributed with sufficient warnings – *i.e.*, it is a distinct issue from whether any product advertisements were fraudulent or misleading.

The Honorable Shira A. Scheindlin
August 17, 2015
Page 4


        As always, we appreciate your Honor's attention to this matter and ask that this letter be docketed by the Clerk's Office so that it is part of the Court's file.


Sincerely,

*James A. Pardo*

James A. Pardo

cc:  All Counsel of Record by LNFS, Service on Plaintiffs' Liaison Counsel

# EXHIBIT A

| | |
|---|---|
| **From:** | Riccardulli, Stephen |
| **Sent:** | Monday, August 17, 2015 1:40 PM |
| **To:** | maxline@toxictorts.org; Bongiorno, Anthony |
| **Cc:** | Gerson, Lisa; 'Miller & Axline' |
| **Subject:** | RE: PA Meet & Confer |

Mike,

I am writing as a follow up to our call on Friday.  As we discussed, below is a list of examples of the non-site specific discovery that Defendants may seek to complete in 2015.  Again, these are by way of example only, but should give you an idea of the types of damages requests we consider to be non-site specific.  Additionally, Defendants' willingness to preview these requests should not be construed as an agreement by Defendants to preview future discovery requests.

Here are the examples we promised:

1. The policies and practices of the Commonwealth in providing an alternate water supply to private well owners with contaminated wells and the source and total amount of State funds expended to provide private well owners with bottled water, well treatment, hookups to a public water supply or any other alternate drinking water source.

2. The policies  and practices of the Commonwealth regarding the use of damages recovered for contamination of natural resources, the sums recovered and used for resource restoration or compensation for lost services and the projects undertaken by the Trustee to restore or replace damaged natural resources.

3. Policies and practices of the Natural Resource Trustee for the Commonwealth regarding the assessment of Natural Resource Damages to groundwater;

4. Methods utilized by the Natural Resource Trustee for the Commonwealth to assess and quantify the cost of lost uses or lost ecological services for natural resources impacted by contamination;

5. Methods utilized by the Natural Resources Trustee of the Commonwealth to assess and quantify the loss in value of natural resources impacted by contamination;

6. Methods utilized by the Natural Resource Trustee of the Commonwealth in other claims or lawsuits to quantify damages to natural resources; and

7. The use of Contingent Value Methods and/or Surveys by the Trustee of Natural Resources  or any other agency, board or commission to quantify the value of natural resources of the Commonwealth.

Lastly, we also discussed the deadline for CMO 4 declarations.  Defendants are still discussing Plaintiffs' requests and will provide a  responses as soon as we have a consensus.  To the extent Plaintiffs have identified the specific CMO 4 categories they believe necessary to complete Plaintiffs' year-end disclosure of MTBE release sites, we request that you identify them for Defendants so that we can consider whether  the responses to these categories could be front-loaded.

Regards,


**Stephen J. Riccardulli**
Partner

# EXHIBIT B

| | |
|---|---|
| **From:** | Michael Axline <maxline@toxictorts.org> |
| **Sent:** | Wednesday, July 22, 2015 5:40 PM |
| **To:** | Gerson, Lisa; Bongiorno, Anthony; Riccardulli, Stephen |
| **Cc:** | 'Tyler Wren'; 'Michael Coren'; 'T. O'Reilly'; Miller & Axline |
| **Subject:** | Draft PA CMO |
| **Attachments:** | PA Proposed CMO (Defendants' 7-17-15 proposal with Plaintiff's redlines).docx |
| | |
| **Importance:** | High |

Lisa, Tony and Steve

Attached is a redline of your latest draft PA CMO.  I just redlined a clean copy of your draft because we accepted most of your changes.

We altered the hyperlink language because, after looking into it more following our meet and confer we realized that it was not going to be technically feasible to create such hyperlinks.  Our alternative language would accomplish the same thing, with a little less efficiency.

We would also like to discuss the "max detection" language.  Since both parties will be identifying release sites we think either both parties should identify max detections or neither should.  The benefit of both parties identifying max detections is that everyone can get on the same page about those numbers, and we can work to resolve any discrepancies.  The cost of both parties identifying max detections is that it seems both duplicative and unnecessary.  Perhaps you can elaborate on why you want this info (which you should already have) from the Commonwealth in the first instance.

Let me know when your side has had a chance to review and you are ready to talk.

Mike

Miller & Axline / phone (916) 488-6688 / fax (916) 488-4288 This private communication may be confidential or privileged. If you are not the intended recipient, any disclosure, distribution, or use of information herein or attached is prohibited.

distributed, stored, blended, supplied to or sold in the Commonwealth of Pennsylvania; and

8.      Lists of Pennsylvania MTBE release sites.

C.      On June 9, 2015, Plaintiff provided Defendants with a list of sites at which Plaintiff contends gasoline was released.  By August 30, 2015, each Defendant shall produce to Plaintiff any and all readily accessible electronic data (*i.e.*, databases or other files created for the purpose of centralizing or aggregating storage of information) in its possession, custody or control regarding licensing, branding, and franchise agreements for gasoline sales in Pennsylvania for every site (by name, address and site identification number) within the Commonwealth at which Plaintiff contends gasoline was released.

D.      Plaintiff intends to serve subpoenas on Defendants' current or former environmental consultants to obtain readily available electronic data concerning: (1) concentrations of MTBE and/or BTEX in soil and groundwater at release sites, and (2) consulting reports regarding release sites.  Plaintiff will provide Defendants with advance notice of such subpoenas as required by Federal Rule of Civil Procedure 45(D)(4).  Upon receiving such notice, each Defendant agrees to inform the subpoenaed consultant that it does not object to the consultant producing responsive, non-privileged documents and expects the consultant to comply with its obligations under by Federal Rule of Civil Procedure 45..

E.      The parties have met and conferred regarding the content of CMO 4.III.B.2 declarations as applied to the *Pennsylvania* action.  The revised CMO 4 is incorporated herein and attached at Exhibit A.  As stated therein, Defendants will provide the required declarations by December 31, 2015.