USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/19/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------- X
                                                  :
IN RE: METHYL TERTIARY BUTYL                      :
ETHER ("MTBE") PRODUCTS                           :   MEMORANDUM OPINION
LIABILITY LITIGATION                              :   AND ORDER
                                                  :
-------------------------------------------------:
                                                  :   Master File No. 1:00-1898
This document relates to:                         :   MDL 1358 (SAS)
                                                  :   M21-88
*Commonwealth of Puerto Rico, et al. v.*          :
*Shell Oil Co., et al.*, 07 Civ. 10470            :
                                                  :
------------------------------------------------- X

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I. INTRODUCTION

This is a consolidated multi-district litigation ("MDL") relating to contamination – actual or threatened – of groundwater from various defendants' use of the gasoline additive methyl tertiary butyl ether ("MTBE") and/or tertiary butyl alcohol, a product formed by the breakdown of MTBE in water. In this case, the Commonwealth of Puerto Rico (the "Commonwealth") alleges that defendants' use and handling of MTBE has contaminated, or threatened to contaminate groundwater within its jurisdiction.

Presently before the Court is the Commonwealth's motion for reconsideration of the design defect portion of the Court's June 16, 2015 Order and Opinion (the "June 16 Opinion"), which granted defendants' motion for summary

1

judgment on the Commonwealth's claims for defective design.[1]  The Commonwealth also moves for "clarification" of a separate ruling in the June 16 Opinion granting summary judgment to a subset of those defendants (the "Sophisticated Purchaser Defendants") on failure-to-warn claims.[2]  For the following reasons, the motion for reconsideration is GRANTED, and the motion for clarification is DENIED.[3]

## II. DISCUSSION

### A. Legal Standard

The standard for granting a motion for reconsideration is strict. "'[R]econsideration will generally be denied unless the moving party can point to

---

[1] *See* Plaintiff's Motion for Reconsideration of the Court's Order Re Design Defect and Negligence ("Pl. Mem.").  The facts pertinent to the instant reconsideration motion are recited in the June 16 Opinion (Dkt. 614). *See In re MTBE*, No. 07 Civ. 10470, 2015 WL 3763645, at *1-*3 (S.D.N.Y. June 16, 2015).

[2] Plaintiff's Motion for Clarification of the Court's Opinion on Defendants' Sophisticated Purchaser Motion for Summary Judgment ("Pl. Clarification Mem.") at 1.

[3] The Commonwealth's reconsideration motion requests that the Court "reconsider the design defect portion" of its June 16 Opinion.  Pl. Mem. at 10.  To be clear, the Court grants the Commonwealth's motion for reconsideration regarding the manufacture of gasoline blended with MTBE ("MTBE Gasoline").  However, today's Order does not apply to the Court's grant of summary judgment to defendants on the Commonwealth's claims regarding the design of *neat MTBE* – an issue not addressed in the Commonwealth's moving papers or worthy of reconsideration.

controlling decisions or data that the court overlooked.'"[4]  "Reconsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'"[5]  Typical grounds for reconsideration include "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."[6]  Granting a reconsideration motion relating to a summary judgment order is appropriate where the court has "overlooked [] pieces of evidence submitted by plaintiffs which create a material dispute of fact."[7]

### B. The Court Overlooked Evidence Regarding the Feasibility of Alternatives to MTBE

As the June 16 Opinion notes, under the risk-utility test for defective design, *defendants* have the burden "to establish, in light of the relevant factors,

---

[4] *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

[5] *Oji v. Yonkers Police Dep't*, No. 12 Civ. 8125, 2013 WL 4935588, at *1 (S.D.N.Y. Sept. 11, 2013) (quoting *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003)).

[6] *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quotation omitted).  *See also Shrader*, 70 F.3d at 257 (describing grounds for reconsideration as "matters, in other words, that might reasonably be expected to alter the conclusion reached by the court").

[7] *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 888 F. Supp. 2d 478, 487 (S.D.N.Y. 2012).

that, on balance, the benefits of the challenged design outweigh the risk of danger inherent in such design."[8]  In its initial review of the summary judgment record, the Court struggled to find sufficient evidence on either side of the risk-benefit equation to determine whether defendants had met their burden.  Curiously, the Commonwealth offered no expert testimony on the feasability of alternatives to MTBE Gasoline, while defendants' truncated expert reports on this issue seemed inconclusive.  Accordingly, the Court requested full versions of defendants' expert reports to fill the gaps in the record.  After reviewing these supplemental materials, the Court concluded that the Commonwealth lacked proof that safer octane enhancers were available to defendants in sufficient quantities for use in gasoline and granted summary judgment to defendants on the Commonwealth's design defect claims.

It is against this slightly unusual procedural backdrop that the Court evaluates the Commonwealth's reconsideration motion, which has enabled both the Commonwealth and defendants to address – for the first time – the portions of defendants' expert reports submitted after the close of summary judgment briefing.  Upon further review, the Court is now convinced that it overlooked or misinterpreted evidence that creates, at minimum, a genuine factual dispute on the

---

[8] *Barker v. Lull Eng'g Co.*, 573 P.2d 443, 455 (Cal. 1978).

4

risk-benefit question.

Significantly, the Court extrapolated too much from defendants' expert John O'Brien's report about specific defendants' needs or preferences for MTBE and overlooked relevant paragraphs highlighting the availability of alternative octane enhancers.  As the Commonwealth points out, O'Brien testified at his deposition that he "didn't look at any individual refineries and how they made their decisions as to how to make reformulated gasoline or conventional gasoline."[9]  Ignoring this important limitation to O'Brien's testimony, the Court overvalued his ultimately *generic* opinions about gasoline manufacturing and corresponding benefits of MTBE.  And the June 16 Opinion did not consider a portion of O'Brien's report that actually strengthens the Commonwealth's position that alternatives to MTBE were available in sufficient quantities.  O'Brien noted that "[t]here is no evidence that MTBE was ever continuously or regularly used by all gasoline suppliers to Puerto Rico during the Relevant Period."[10]  While this statement does not account for the unique circumstances of any particular defendant, it does inject a degree of uncertainty into the risk-benefit inquiry.  If, as O'Brien submitted, "some Defendants routinely supplied gasoline to [Puerto Rico]

---

[9]   Pl. Mem. at 5.

[10]   *Id.* at 6.

that contained little or no MTBE whatsoever," then using alternatives to MTBE may have been feasible for at least some, or even all, of the moving defendants.[11]

To that end, defendants' only refinery-specific evidence, addressed in the expert report of Kenneth Stern, relates to the CORE facility. And while Stern's report touts the benefits of MTBE over alternatives, the Court failed to consider countervailing testimony suggesting that other octane enhancers were equally effective and feasible. For instance, at his deposition, Juan Perez, the employee in charge of blending operations at the same CORE facility about which Stern opined, testified: "There was always the option of blendstock that could be available from different sources. That didn't have to be MTBE."[12] The summary judgment record contains similar testimony from other witnesses and defendant-employees with respect to other refineries, all of which cumulatively casts doubt on whether defendants needed to use MTBE, and on whether its benefits clearly outweighed its risks.[13] The Court should have addressed this evidence and given it substantial

---

[11] *Id.*

[12] *Id.* at 7. In fact, O'Brien's report identifies one such source of MTBE-free, external blendstock that was used at Puerto Rico Sun Oil Company's Yabucoa refinery, an on-island source. *See id.* at 7-8.

[13] *See id.* at 9 (citing testimony from employees of Shell, Esso, Exxon, and Peerless indicating that gasoline was refined at various facilities without MTBE, and that these companies viewed multiple octane enhancers, including alkylate, reformate, toulene, and mixed xylenes as acceptable). Further, the

weight in the June 16 Opinion.

At bottom, a searching reexamination of the factual record reveals important, unresolved questions about the competing risks and benefits of MTBE, including the feasability of using potentially-safer alternatives.  It was therefore inappropriate to hold that the risk-benefit issue was undisputed and grant summary judgment to defendants on the Commonwealth's design defect claims, especially considering that the burden of proof on that issue rests with defendants.  Without its own expert testimony, the Commonwealth likely faces an uphill battle at trial.  But the important point is that the testimony of defendants' own experts and employees has triggered material factual disputes that cannot be resolved as a matter of law.  For this reason, and because the Court overlooked and misconstrued portions of that testimony in its June 16 Opinion, the Commonwealth's motion for reconsideration is granted.[14]

---

dangers associated with MTBE are well-established.  *See, e.g.*, *In re MTBE*, 488 F.3d 112, 131 (2d Cir. 2007) (noting that MTBE "is a highly dangerous compound that poses threats to human health").

[14]   It bears mentioning that defendants' opposition to the Commonwealth's motion for reconsideration does not grapple with the substance of the Commonwealth's arguments.  Instead, without addressing the specific evidence the Commonwealth identified as having been overlooked, defendants harp on the strictness of the legal standard for reconsideration.  *See* Defendants' Opposition to Plaintiff's Motions for Reconsideration of Court's Order Re Design Defect and Negligence, and for Clarification of the Court's opinion on Defendants' Sophisticated Purchaser Motion for Summary Judgment ("Def. Opp.") at 1-2, 4-7.

### C. The Sophisticated Purchasers' Order Requires No Clarification Because Failure-to-Warn Claims Against the CORE and HOVENSA Defendants Are Barred

In its clarification motion, the Commonwealth asks the Court to "clarify" that its ruling regarding the Sophisticated Purchaser Defendants does not apply to two groups of those defendants: (1) Chevron Phillips Chemical Puerto Rico Core LLC ("CORE") and Conoco Phillips Company ("COP") (collectively, the "CORE Defendants") and (2) Hess Oil Virgin Islands Corporation ("HOVIC") and HOVENSA LLC ("HOVENSA") (collectively, the "HOVENSA Defendants"). In support of its request, the Commonwealth reiterates an argument it advanced both at the July 15, 2014 pre-motion conference and in its opposition to summary judgment: that sophisticated manufacturers have a separate duty to ensure that purchasers of their products – whether or not they were sophisticated – warn end users about the hazards of those products. But this argument has been explicitly rejected. If the purchaser is sophisticated, the manufacturer's duty terminates. If the purchaser is unsophisticated, the manufacturer may indeed retain its duty to warn.

The Commonwealth's request for clarification is denied, as the Court

---

Although that standard is high, it is met where, as here, the court has "overlooked [] pieces of evidence submitted by plaintiffs which create a material dispute of fact." *Abu Dhabi Commercial Bank*, 888 F. Supp. 2d at 487.

barred failure-to-warn claims against the CORE and HOVENSA defendants in its June 16 Opinion, which considered – and rejected – the Commonwealth's argument.  *First*, clarification is unnecessary because the Court's ruling – "the Sophisticated Purchaser Motion is GRANTED" – is unambiguous.[15]  It plainly applies to *all* of the Sophisticated Purchaser Defendants: their motion, and the Court's opinion, clearly defined the movants as including the CORE and HOVENSA defendants.[16]  *Second*, even if the Court were to treat the Commonwealth's request for "clarification" as a separate motion for reconsideration, the result would be the same.  The Commonwealth's clarification motion simply rehashes the same argument regarding sophisticated, intermediary purchasers that it raised at the pre-motion conference and in summary judgment opposition papers – an argument the Court concluded was "a red herring" in its June 16 Opinion.[17]  Although the June 16 Opinion did not single out the CORE and HOVESNA defendants by name, implicit in the Court's discussion, if not obvious, was that *all* of the Sophisticated Purchaser Defendants – including the CORE and HOVENSA defendants – were relieved of failure-to-warn liability when title to

---

[15] *In re MTBE*, 2015 WL 3763645, at *7.

[16] *See id.* at *1 n.3

[17] *Id.* at *6.

MTBE Gasoline passed directly from them to similarly-sophisticated purchasers.

## III. CONCLUSION

For the foregoing reasons, the motion for reconsideration is GRANTED, and the motion for clarification, and the relief sought therein, is DENIED. The Clerk of the Court is directed to close these motions (Dkt. Nos. 616, 621).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         August 19, 2015

- Appearances -

**Liaison Counsel for Plaintiffs:**

Robert J. Gordon, Esq.
Robin L. Greenwald, Esq.
William A. Walsh, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
(212) 558-5500

**Liaison Counsel for Defendants, and Appearing on Behalf of All Defendants:**

Peter J. Sacripanti, Esq.
James A. Pardo, Esq.
Michael J. Dillon, Esq.
McDermott Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
(212) 547-5583

**Counsel for the Commonwealth**:

Michael Axline, Esq.
Duane C. Miller, Esq.
Tracey L. O'Reilly, Esq.
Miller, Axline & Sawyer
1050 Fulton Avenue, Suite 100
Sacramento, CA 95825