UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------- X
                            :
IN RE: METHYL TERTIARY BUTYL   :
ETHER ("MTBE") PRODUCTS        :
LIABILITY LITIGATION               :
-------------------------------------------------- :
                            :
This document relates to:         :
                            :
*Orange County Water District v. Unocal*   :
*Corporation, et al.*, 04 Civ. 4968       :
                            :
-------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/26/15

MEMORANDUM OPINION
AND ORDER

Master File No. 1:00-1898
MDL 1358 (SAS)
M21-88

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

This is a consolidated multi-district litigation ("MDL") relating to

contamination – actual or threatened – of groundwater from various defendants'

use of the gasoline additive methyl tertiary butyl ether ("MTBE") and/or tertiary

butyl alcohol, a product formed by the breakdown of MTBE in water.  In this case,

plaintiff Orange County Water District ("OCWD"), which is charged with

maintaining groundwater quality, alleges that defendants' use and handling of

MTBE has contaminated, or threatened to contaminate groundwater within its

jurisdiction.  Familiarity with the underlying facts is presumed for the purposes of

this Order.

On September 16, 2014, this Court granted summary judgment to

Atlantic Richfield Company ("ARCO"), BP West Coast Products LLC, and BP Products North America, Inc. (collectively, the "BP Defendants"), and Shell Oil Company, Equilon Enterprises LLC, and Texaco Refining and Marketing Inc. (collectively, the "Shell Defendants")[1] on the ground that OCWD's claims against them were precluded under the doctrine of res judicata by judgments resolving substantially similar lawsuits filed years earlier by the Orange County District Attorney ("OCDA").[2]  On December 18, 2014, the Court granted in part and denied in part a separate, omnibus summary judgment motion brought by all of the defendants in OCWD's lawsuit, identifying a material factual dispute over whether

---

[1]     When referring to both the BP Defendants and the Shell Defendants, collectively, I frequently use the term "defendants" for ease of reading (unless I otherwise indicate "defendants" to apply to all of the defendants in the action). The BP Defendants and Shell Defendants comprise only a small subset of all the defendants in this case.

[2]     *See In re MTBE*, 46 F. Supp. 3d 440 (S.D.N.Y. 2014) (the "Res Judicata Opinion").  For the factual background of defendants' res judicata argument, relevant to this Opinion, *see id.* at 443-46.  The important point is that OCDA, which this Court held to be in privity with OCWD, settled MTBE-related claims, including nuisance claims, with defendants in the early 2000s.  The Orange County Superior Court entered substantially similar final judgments as to both the BP Defendants and the Shell Defendants (the "Consent Judgments"), which by their terms constituted "'final and binding judgment[s], release[s], resolution[s][,] and settlement[s] of all claims, violations[,] or causes of action that were alleged'" in the OCDA's original complaints, "'or could have been asserted based on the facts alleged'" in those complaints.  Shell and BP Defendants' Opposition to OCWD's Motion for Inclusion of Shell and BP in Remand Order ("Def. Mem.") at 8-9 (quoting Consent Judgments).

2

MTBE plumes – formed by defendants' MTBE releases – are presently continuing to migrate towards drinking-water wells.[3]

Now, all that is left to decide before remanding this case to the Central District of California for trial is OCWD's instant motion, which asks the Court to include the BP and Shell Defendants in the Remand Order on the theory that the Res Judicata Opinion does not bar claims for *continuing* nuisance.[4]  For the reasons stated below, OCWD's motion is DENIED.

## II.    DISCUSSION

To decide OCWD's motion, the Court must resolve the inherent tension between a continuing nuisance cause of action, which can effectively be renewed as "a separate claim" for "every continuation of the nuisance,"[5] and the preclusive effect of the Consent Judgments, which provided comprehensive releases of claims asserted in the OCDA's original complaints.  Those complaints included both continuing and permanent nuisance claims for the ongoing migration

---

[3]    *See In re MTBE*, 67 F. Supp. 3d 619, 633 (S.D.N.Y. 2014).

[4]    *See* Memorandum of Law in Support of Plaintiff Orange County Water District's Motion for Inclusion of Shell and BP in Remand Order ("Pl. Mem.") at 1.

[5]    *Mangini v. Aerojet-General Corp.*, 12 Cal. 4th 1087, 1093 (1996).

3

of MTBE from defendants' stations.[6]  Pursuant to the Consent Judgments resolving OCDA's claims, defendants implemented "Plume Delineation Programs" designed to combat the potential ongoing migration of MTBE plumes.[7]  Nonetheless, OCWD argues that res judicata cannot apply to its continuing nuisance claims, which it contends are *future* claims that were never covered by the Consent Judgments' specific releases of OCDA's "'*past or present* claims, violations, or causes of action that were or could have been asserted.'"[8]

### A.   Applicable Law

#### 1.   Continuing Nuisance

Under California law, "'[e]very repetition of [a] continuing nuisance is a separate wrong,' subject to a new and separate limitation period, 'for which the person injured may bring successive actions for damages until the nuisance is abated, even though an action based on the original wrong may be barred.'"[9]

---

[6]   *See* Def. Mem. at 2-4.

[7]   *Id.* at 5 n.5.

[8]   Pl. Mem. at 8 (emphasis added) (quoting Consent Judgments).

[9]   *Capogeannis v. Superior Ct.*, 15 Cal. Rptr. 2d 796, 800 (Cal. Ct. App. 1993) (quoting *Phillips v. City of Pasadena*, 27 Cal. 2d 104, 107 (1945)).  *Accord Mangini v. Aerojet-General Corp.*, 230 Cal. App. 3d 1125, 1147 (1991) (noting that "land may be subject to a continuing nuisance even though defendant's offensive conduct ended years ago . . . because the 'continuing' nature of the nuisance refers to the continuing damage caused by the offensive condition, not to

Throughout this MDL, the Court has often confronted the continuing nuisance/permanent nuisance distinction in evaluating the timeliness of a claim – the context in which the distinction most often arises.[10]  But the Court has not addressed the res judicata impact of a consent judgment on continuing nuisance claims, nor did OCWD raise that issue in its opposition to defendants' res judicata summary judgment motion.[11]

On this point, California law is somewhat unclear – only a small handful of cases discuss, even in general terms, the intersection between continuing nuisance claims and res judicata, and no California court has analyzed this issue in the context of a consent judgment.  The Ninth Circuit provides some

_____

the acts causing the offensive condition to occur").

[10]     *See, e.g.*, *In re MTBE*, 676 F. Supp. 2d 139, 152 & n.77 (S.D.N.Y. 2009) ("With respect to a permanent nuisance, the statute of limitations begins to run on the creation of the nuisance and bars all claims after its passage, while each repetition of a continuing nuisance is considered a separate wrong which commences a new period in which to bring an action for recovery based upon the new injury.").

[11]     Accordingly, in its Res Judicata Opinion, this Court stated: "Defendants also note, and the District does not dispute, that both the BP Defendants and the Shell Defendants stopped adding MTBE to gasoline made in California upon or before entering into final judgments in the prior actions.  Thus, the District has not suffered any new MTBE-related harm subsequent to the entry of the final judgments in the prior proceedings that would give rise to a new action not covered by the settlements." *In re MTBE*, 46 F. Supp. 3d at n.72.

guidance.  In *Arcade Water District v. United States*, plaintiff filed an

administrative complaint under the Federal Tort Claims Act for contamination to a

well.[12]  When that complaint was dismissed as time-barred, plaintiff commenced a

lawsuit in federal district court against the United States, which was dismissed with

prejudice.[13]  However, the Ninth Circuit reversed on the premise that plaintiff had a

right to "elect whether to proceed under a theory of permanent or continuing

nuisance."[14]  Under the latter theory, plaintiff's claim was timely, and the court

noted that res judicata could not bar "further actions for damages accruing after

resolution of one permanent nuisance claim."[15]  Similarly, in *Levy v. Wells Fargo*

*Asset Securities Corp.* – an unpublished state appellate court decision – the court

---

[12]     *See* 940 F.2d 1265, 1266-67 (9th Cir. 1991).

[13]     *See id.*

[14]     *Id.* at 1269.

[15]     *Id.*  Defendants point to a more recent Ninth Circuit case, in which the court held that a consent judgment between a district attorney and a defendant that resolved all claims arising from petroleum releases at three service stations precluded a second lawsuit alleging that the same releases were causing continuing harm.  *See Northern Cal. River Watch v. Humboldt Petroleum, Inc.*, 162 Fed. App'x 760, 762 (9th Cir. 2006).  However, that opinion did *not* address the distinction between permanent and continuing nuisance claims because no such claims were brought – plaintiffs sued under RICO and the Business and Professions Code.

6

held that a limited default judgment in a preliminary suit for nuisance[16] did not bar

a second suit for continuing nuisance against a different defendant.[17]

### 2.   Interpretation of Consent Judgments and Res Judicata

Neither *Arcade* nor *Levy* dealt with the specific issue here:  the

preclusive effect of a *consent judgment* that *specifically resolved claims for*

*continuing and permanent nuisance*, on a later-filed continuing nuisance claim

arising from the same contamination.[18]  Both OCWD and defendants therefore

dispute the breadth of the Consent Judgements' release provisions.

As a general matter, "[c]ontract principles apply when interpreting a

---

[16]   The court did not specify whether the nuisance cause of action in the preliminary suit was for permanent nuisance or continuing nuisance.

[17]   No. DO61617, 2013 WL 5786104, at *5 (Cal. Ct. App. Oct. 28, 2013).  In *Arcade*, the first action was not a formal lawsuit, but an administrative complaint, and in *Levy*, the defendant in the second suit was not named in the prior suit.  Here, by contrast, the defendants shielded by res judicata are the same defendants with whom OCDA settled in the prior lawsuits.

[18]   The OCDA complaints state that "'[(1)] [a]s MTBE contamination migrates away from the source . . . it becomes far more difficult if not impossible to abate, thereby changing the nuisance from continuing to permanent,'" [(2)] that "'[e]ach site where MTBE . . . contaminates or threatens to contaminate [] groundwater or drinking water supplies constitutes *a separate and continuing nuisance subject to abatement*,'" and [(3)] that "'[a]ny site where MTBE . . . contamination has migrated off-site . . . to a location . . . where such contamination is not subject to abatement constitutes a permanent nuisance.'"  Def. Mem. at 3 (quoting OCDA complaints).

release."[19]  Courts "should adopt that construction which will make the contract

reasonable, fair[,] and just . . . [and] should avoid an interpretation which will

make the contract unusual, extraordinary, harsh, unjust[,] or inequitable [] or which

would result in absurdity."[20]  "To be effective, [a release] must be clear,

unambiguous, and explicit in expressing the intent of the subscribing parties."[21]  In

determining the parties' intent, it is well-settled policy in California that consent

judgments "conclude[] all matters put into issue by the pleadings" unless parties

"agree to restrict [their] scope by expressly withdrawing an issue from the consent

judgment."[22]

---

[19]      *Cohen v. Five Brooks Stable*, 159 Cal. App. 4th 1476, 1483 (2008).
*Accord Benedek v. PLC Santa Monica, LLC*, 104 Cal. App. 4th 1351, 1356 (2002)
("If an ambiguity as to the scope of the release exists, it should normally be
construed against the drafter.").

[20]      *Wright v. Coberly-West Co.*, 250 Cal. App. 2d 31, 35-36 (1967)
(citations omitted).

[21]      *Benedek*, 104 Cal. App. 4th at 1356.

[22]      *Ellena v. State*, 69 Cal. App. 3d 245, 260 (1977).  *Accord Villacres v.
AMB Indus. Inc.*, 189 Cal. App. 4th 562, 589 (2010) ("If parties intend to leave
some things open and unsettled their intent to do so should be made manifest.").
Pointing to a related settlement in the *Cresenta Valley* case, which included the
word "future" in the release provision, OCWD urges the Court to interpret the
Consent Judgments in accord with the statutory construction principle of *expressio
unius est exclusio alterius* (the expression of one thing is the exclusion of another).
*See* Pl. Mem. at 8; Reply Memorandum in Support of Plaintiff Orange County
Water District's Motion for Inclusion of Shell and BP in Remand Order ("Reply
Mem.") at 7 (citing *White v. Western Title Ins. Co.*, 40 Cal. 3d. 870, 881 n.4

8

Further, "[i]t is well established that if the plaintiff receives an injunction against the defendant which requires the defendant to abate the nuisance, the plaintiff can recover past and present damages, but not future damages, since the abatement order will terminate the nuisance for the future."[23] Finally, as noted in the Res Judicata Opinion, California courts have embraced the relatively expansive "'primary right' theory," whereby later claims that address the "same primary right" at issue in the prior suit are precluded, regardless of how the claims are styled.[24]

**B.     The Consent Judgments Preclude OCWD's Continuing Nuisance Claims**

This dispute boils down to whether California's continuing nuisance law, which frequently breathes life into otherwise outdated nuisance claims, trumps the language of consent judgments that were designed to release those claims.  I

---

(1985)).  However, central to the holding in *White* – which addressed the interpretation of an insurance policy – was the notion that "the court may not look to the words of the policy alone, but must also consider the reasonable expectations of the public."  *White*, 40 Cal. 3d at 881.

[23]     *Alexander v. McKnight*, 7 Cal. App. 4th 973, 979 (1992) (citations and quotation marks omitted).  In this case, defendants posit that the Consent Judgments, pursuant to which Plume Delineation Programs were established to address existing MTBE contamination and migration, "are properly viewed as containing *abatement injunctions*."  Def. Mem. at 12.

[24]     *Villacres*, 189 Cal. App. 4th at 576.

9

conclude that the Consent Judgments must prevail.  OCWD's position is not unreasonable – under California law, a plaintiff may bring a claim for continuing nuisance every day until the nuisance is abated.[25]  But the cases permitting that course of action, such as *Arcade* and *Levy*, are inapposite because the preclusive lawsuits at issue here specifically asserted claims for both *continuing* and permanent nuisance and were resolved favorably for plaintiff pursuant to *consent judgments that expressly released those claims*.  OCWD even acknowledges that it is possible to settle "'future continuing nuisance claims arising out of conditions that existed prior to settlement,'" hence the need to interpret the language of the Consent Judgments.[26]  By contrast, the *Arcade* plaintiff's initial administrative complaint was dismissed rather than settled, and in *Levy*, the two suits contained no overlap in defendants, with the first suit culminating in a default judgment against defendants not named in the second suit and not addressing plaintiff's request for injunctive relief.[27]

---

[25]    *See Levy*, 2013 WL 5786104, at *5.  In this case, the Court has held that there is a material dispute of fact over the abatability of the nuisance.  *See In re MTBE*, 824 F. Supp. 2d 524, 545 (S.D.N.Y. 2011).

[26]    Pl. Mem. at 2 (quoting *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 350 (6th Cir. 2009)).

[27]    *See Levy*, 2013 WL 5786104, at *2.  As noted above, the second suit was brought against a party not named in the original suit.

Here, the Consent Judgments resolving OCDA's claims for continuing and permanent nuisance provided injunctive relief against the same BP and Shell defendants named in OCWD's action in the form of Plume Delineation Programs, which were implemented to address the *same ongoing contamination* giving rise to OCWD's instant continuing nuisance claims.[28]  That relief leaves little doubt as to the parties' intent in negotiating a resolution of OCDA's lawsuits.[29]  Nor does the broad language of the Consent Judgments leave any doubt as to the parties' intent.  The Consent Judgments stated that they constituted "'final and binding judgment[s], release[s], resolution[s][,] and settlement[s] of all claims, violations[,] or causes of action that were alleged'" in the OCDA's original complaints, "'or could have been asserted based on the facts alleged'" in those complaints.[30]

At bottom, OCWD is in privity with OCDA, which unambiguously released continuing nuisance claims against defendants in exchange – among other

---

[28]    *See* Def. Mem. at 5 n.5.  Indeed, the injunctive relief to which defendants agreed in the Consent Judgments was premised on the conclusion that MTBE may already have been part of a migrating plume at the relevant sites.  *See id.*

[29]    This reason alone counsels against awarding OCDA or its privies, such as OCWD, future damages.  *See Alexander*, 7 Cal. App. 4th at 979.

[30]    Def. Mem. at 8-9 (quoting Consent Judgments).

11

things – for their implementation of programs designed to address the same contamination on which OCWD bases its continuing nuisance claims here.  On these facts, to permit OCWD to maintain continuing nuisance claims against defendants would defeat the purpose of consent judgments, which "conclude[] all matters put into issue by the pleadings" unless the parties "agree to restrict [their] scope by expressly withdrawing an issue."[31]  The absence of the word "future" in the Consent Judgments' release of "past and present claims" does not constitute an *express* withdrawal – nothing in the Consent Judgments suggests, even remotely, that OCDA intended to reserve the right, for itself or its privies, to assert new continuing nuisance claims for the harm defendants specifically agreed to address via the Plume Delineation Programs.   The contrary interpretation of the Consent Judgments that OCWD advances would create the very type of unfair and absurd result that courts strive to avoid when construing contracts.[32]

## III.   CONCLUSION

For the foregoing reasons, OCWD's motion to include the BP and Shell Defendants in the Remand Order is DENIED.  The Clerk of the Court is

---

[31]    *Ellena*, 69 Cal. App. 3d at 260.

[32]    *See Wright*, 250 Cal. App. 2d at 35-36 (citations omitted).  It would also remove any and all incentives for a defendant to settle a lawsuit involving continuing nuisance claims.

directed to close the motion (Dkt. No. 453).  The parties are directed to submit a

proposed Remand Order to the Court, consistent with this Order, by September 30,

2015.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             August 26, 2015

13

**- Appearances -**

**Liaison Counsel for Plaintiffs:**

Robin Greenwald, Esq.
Robert Gordon, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
(212) 558-5500

**Counsel for OCWD:**

Michael Axline, Esq.
Miller, Axline, & Sawyer
1050 Fulton Avenue, Suite 10
Sacramento, CA 95825
(916) 488-6688

**Liaison Counsel for Defendants:**

Peter John Sacripanti, Esq.
James A. Pardo, Esq.
McDermott Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
(212) 547-5583

**Counsel for Shell Defendants:**

Richard E. Wallace, Jr., Esq.
Peter C. Condron, Esq.
Amanda Gilbert, Esq.
Sedgewick LLP
29 K Street, N.W.
Harbourside — Suite 500
Washington, D.C. 20007
(202) 204-1000

**Counsel for BP Defendants**:

Matthew T. Heartney, Esq.
Lawrence A. Cox, Esq.
Stephanie B. Weirick, Esq.
Arnold & Porter  LLP
777 South Figueroa Street
Los Angeles, CA 90017
(213) 243-4150