| | |
|---|---|
| NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; THE COMMISSIONER OF THE NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; and THE ADMINISTRATOR OF THE NEW JERSEY SPILL COMPENSATION FUND, | UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK IN RE MTBE LITIGATION MASTER FILE No. 1:00-1898 MDL No. 1358 (SAS) |

:

Plaintiffs,                    :          Civil Action No. 08 Civ. 00312

v.                             :          ORDER APPROVING SETTLEMENT AS TO
                                          LYONDELL CHEMICAL COMPANY ONLY
ATLANTIC RICHFIELD CO., et     :
al.,

                               :

Defendants.                    :

                               :

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/9/15

This matter was opened to the Court by the Acting Attorney General of New Jersey, John J. Hoffman, Deputy Attorney General Gwen Farley appearing, and Leonard Z. Kaufmann, Esq. of Cohn Lifland Pearlman Herrmann & Knopf LLP, and Scott E. Kauff, Esq. of the Law Offices of John K. Dema, P.C., and Michael Axline, Esq. of Miller Axline & Sawyer, and Tyler Wren, Esq. of Berger & Montague P.C., Special Counsel to the Attorney General, appearing, as attorneys for plaintiffs New Jersey Department of Environmental Protection ("DEP" or "Department") and the Commissioner of the New Jersey Department of Environmental Protection ("Commissioner"), in their named capacity, as parens patriae, and as trustee of the natural resources of New Jersey, and the Administrator of the New Jersey Spill Compensation Fund ("Administrator"), and Frank Dante, Esq. of Blank Rome LLP appearing as attorneys for defendants Lyondell

Chemical Company; and these Parties having amicably resolved their dispute before trial, and having represented to the Court that there is no opposition to the proposed settlement:

It is on this ____9____ day of September, 2015,

ORDERED that the Settlement Agreement and Release attached hereto shall be and hereby is approved.

HON. SHIRA A. SCHEINDLIN, U.S.D.J.

## SETTLEMENT AGREEMENT AND RELEASE

This settlement agreement and release (the "Agreement") is made as of the last date signed below by and among New Jersey Department of Environmental Protection ("DEP" or "Department") and the Commissioner of the New Jersey Department of Environmental Protection ("Commissioner"), each in its named, individual, proprietary, governmental, and sovereign capacities, as *parens patriae*, and as trustee of the natural resources of New Jersey, and the Administrator of the New Jersey Spill Compensation Fund ("Administrator"), on the one hand (collectively, referred to as "Plaintiffs" (defined below)), and the Creditor Representative (defined below) and Lyondell Chemical Company ("Lyondell") on the other hand, regarding the settlement of certain claims. This Agreement relates to the litigation captioned *New Jersey Department of Environmental Protection, et al. v. Atlantic Richfield Co., et al.*, Civil Action No. 08 Civ. 00312 pending in the United States District Court for the District of New Jersey (the "Litigation") and related Multi-District Litigation (defined below).

### I. BACKGROUND

A.      The Plaintiffs initiated the Litigation on or around June 28, 2007 by filing a complaint against Lyondell and other defendants in the Superior Court of the State of New Jersey, Mercer County, Docket MER-L-1622-07, pursuant to the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 to -23.24 (the "Spill Act"), the Water Pollution Control Act, N.J.S.A. 58:10A-1 to -20, and the common law. The matter was removed to the United States District Court for the District of New Jersey, and later assigned to the multi-district litigation in the United States District Court for the Southern District of New York, MDL No. 1358 (SAS) ("Multi-District Litigation").

B.    The Plaintiffs filed amended complaints; the latest was the Fourth Amended Complaint, filed June 19, 2012 (the "Complaint").

C.    Plaintiffs, in their Complaint, seek past and future damages they allegedly have incurred and will incur as a result of alleged widespread contamination of the waters of New Jersey by MTBE (defined below).

D.    Plaintiffs, in their Complaint, seek past and future costs they have incurred and will incur as a result of alleged widespread contamination of the waters of New Jersey by MTBE.

E.    Plaintiffs, in their Complaint, seek injunctive relief concerning the remediation of MTBE discharges.

F.    Lyondell is a Delaware corporation with its principal place of business at 1221 McKinney Street, Suite 700, Houston, Texas.

G.    Lyondell filed responsive pleadings in the Litigation in which it denied liability and asserted various defenses to the allegations contained in the Complaint.

H.    On January 6, 2009, Lyondell and various of its affiliates commenced the jointly-administered Chapter 11 cases captioned *In re Lyondell Chemical Company, et al.*, Chapter 11, Case No. 09-10023 (REG) in the United States Bankruptcy Court for the Southern District of New York (the "Chapter 11 Case").

I.    On June 29, 2009, the Department filed a proof of claim, Claim No. 7822, in the Chapter 11 Case asserting, among others, the same claims as asserted in the Litigation (the "NJ POC").

J.    On March 12, 2010, the Debtors (defined below) filed their Third Amended Joint Plan of Reorganization for the LyondellBasell Debtors in the Chapter 11 Case (the "Plan" - docketed in the Chapter 11 Case as Exhibit A to the Confirmation Order (defined below), docket

2

number 4418). The Plan was confirmed by the Bankruptcy Court on April 23, 2010 and became effective on April 30, 2010 (the "Plan Effective Date"). As a result of confirmation of the Plan and the occurrence of the Plan Effective Date, the Reorganized Debtors (defined below) emerged from Chapter 11.

K.      On the Plan Effective Date, pursuant to the Plan and the Creditor Representative Plan Supplement, dated April 30, 2010, the Creditor Representative was appointed (the "Creditor Representative").

L.      On April 15, 2011, the Debtors filed the Debtors' One Hundred Fifty-Fifth Tier One Omnibus Objection to Certain Proofs of Claim Relating to the MTBE Actions (the "Claims Objection") [Docket No. 6602], objecting to, among others, the NJ POC.

M.      On September 11, 2012, the Creditor Representative filed the Motion of the Creditor Representative to Estimate Disputed Claims and to Establish a Distribution Reserve for Purposes of Making Distributions of Fixed Settlement Consideration (the "Reserve Motion") [Docket No. 7105].

N.      To allow the Creditor Representative to make additional distributions to other creditors in the Chapter 11 Case and to permit the administration of the Chapter 11 Case to continue toward final completion, and to avoid the cost, uncertainty, disruption, and inconvenience of proceeding to trial in the Litigation or on the Claims Objection and the Reserve Motion, after negotiations and compromise, and following a formal mediation involving Plaintiffs, Lyondell, and the Creditor Representative, the Creditor Representative and Plaintiffs separately and without Lyondell reached the economic resolution contained in this Agreement.

O.      Although Lyondell does not agree with the economic resolution contained in this Agreement as reached by the Creditor Representative and the Plaintiffs, at the request of the

3

Plaintiffs, Lyondell has agreed to become a Party (defined below) to this Agreement. All Parties (defined below) acknowledge that Lyondell believes that, based on the merits of the Plaintiffs' claims, the economic consideration being provided to the Plaintiffs pursuant to this Agreement exceeds Lyondell's position as to the justifiable settlement value for those claims.

P. Without any admission of liability by Lyondell or the Creditor Representative and solely to avoid the expense, burden and delay of future litigation and to facilitate additional distributions in the Chapter 11 Case, and prior to any verdict or finding of liability, the Parties now desire to settle the Litigation, the Claims Objection and the Reserve Motion, all disputes related to the Litigation, the Claims Objection and the Reserve Motion among the Parties, and any and all demands, actions, suits, claims, cross-claims, and counter claims on the terms set forth in this Agreement. In entering into this Agreement, none of the Parties makes any admission of any fact, responsibility, fault, or liability.

Q. The Plaintiffs have concluded that this Agreement is fair, reasonable, and in the public interest.

THEREFORE the Parties to this Agreement hereby stipulate and agree as follows:

## II. PARTIES BOUND

1. This Agreement applies to, and is binding upon, the Parties. The Parties agree and expressly intend that the Released Entities (defined below) that are not Parties to this Agreement are third party beneficiaries of this Agreement.

## III. DEFINITIONS

2. Unless otherwise expressly provided, terms used in this Agreement that are defined in the Spill Act or in the regulations promulgated under the Spill Act, shall have their statutory or regulatory meaning. Whenever the terms defined above are used in this Agreement, they shall

4

have the meanings set forth above.  Whenever the terms listed below are used in this Agreement, the following definitions shall apply:

"Allowed" shall have the meaning ascribed to it in the Plan.

"Allowed NJ GUC Claim" means the Allowed general unsecured claim under the Plan in the amount of $30,000,000.00, in full and final satisfaction of the NJ POC, to be provided under this Agreement and not subject to dispute under any provision of the Plan.

"Bankruptcy Code" shall mean the United States Bankruptcy Code, codified at 11 U.S.C. §§ 101 et seq.

"Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of New York, having jurisdiction over the Debtors' Chapter 11 cases.

"Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure.

"Bar Date Order" shall mean the order of the Bankruptcy Court dated April 16, 2009, as amended on May 14, 2009, and docketed in the Chapter 11 Case as docket numbers 1547 and 1741, establishing the deadlines by which proofs of claim were required to be filed against the Debtors in the Chapter 11 Case.

"Confirmation Order" shall mean the order of the Bankruptcy Court entered on April 23, 2010 and docketed in the Chapter 11 Case as docket number 4418, confirming the Plan.

"Damages" shall mean all damages caused by discharges of MTBE prior to the Effective Date of this Agreement (defined below), whether or not known or suspected to exist by Plaintiffs, that threaten or affect waters of New Jersey, including but not limited to natural resource damages, sought in the Complaint.  "Damages" do not include any obligation of the Debtors or Reorganized Debtors to perform remediation in compliance with all applicable statutes, regulations and orders, with respect to those matters specifically reserved by the Plaintiffs in Section VI below, unless the

obligations to perform remediation at such sites (i) would have been dischargeable in the Chapter 11 Case by the Debtors or Reorganized Debtors, (ii) are expressly released in this Agreement or (iii) are ones for which a covenant not to sue is granted in Section V below.  Damages also do not include Past Cleanup and Removal Costs or Future Cleanup and Removal Costs.

"Day" shall mean a calendar day unless expressly stated to be a "Business Day," meaning a day other than a Saturday, Sunday, or State of New Jersey holiday.  In computing time under this Agreement, where the last day would fall on a Saturday, Sunday, or State of New Jersey holiday, time shall run until the close of business of the next Business Day while counting days pursuant to the definition of "next day" in Bankruptcy Rule 9006(a)(5).

"Debtors" shall mean the Debtors as defined in the Plan.

"Effective Date of this Agreement" shall mean the first Business Day following the last to occur of the following: (1) the Rule 9019 Order becomes a Final Order; and (2) the Litigation Court Order becomes a Final Order.

"Final Order" means (A) with respect to the Bankruptcy Court, a Rule 9019 Order (defined below) entered by the Bankruptcy Court, and (i) the time to appeal or petition for certiorari has expired and no timely appeal or petition for certiorari shall then be pending; or (ii) if a timely appeal or writ of certiorari thereof has been sought, the order shall have been affirmed to the highest court to which such order was appealed, or certiorari shall have been denied or reargument or rehearing or remand shall have been denied or resulted in no modification of such order, and time to take any further appeal, petition for certiorari, or move for modification of such order, or move for reargument or rehearing, shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rules governing procedure in the Bankruptcy Court, may be filed with respect to such order shall not

6

cause the order not to be a Final Order; and (B) with respect to the Litigation Court, an order entered by the Litigation Court approving this Agreement, and (i) thirty-five (35) calendar days shall have elapsed without an appeal or request for interlocutory appeal or petition for certiorari or a motion for reconsideration having been filed, or (ii) if a timely appeal or request for interlocutory appeal or petition for certiorari or a motion for reconsideration has been filed and shall then be pending within thirty-five (35) calendar days of the Litigation Court's order, then the order shall have been affirmed to the highest court to which such order was appealed, or certiorari shall have been denied or reargument or rehearing or remand shall have been denied or resulted in no modification of such order, and time to take any further appeal, petition for certiorari, or move for modification of such order, or move for reargument or rehearing, shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rules governing procedure in the Litigation Court, may be filed with respect to such order shall not cause the order not to be a Final Order.

"Future Cleanup and Removal Costs" shall mean all direct and indirect costs of any kind for any purpose the Plaintiffs incur on or after the Effective Date of this Agreement, including oversight costs, with respect to MTBE that threatens or affects the waters of New Jersey for which any Released Entity could be responsible under any applicable federal or state statute, regulation or order.

"Litigation Court" shall mean the court having jurisdiction over the Litigation and from which the Litigation Court Order will be sought.

"Litigation Court Order" shall mean an order of the Litigation Court approving this Agreement.

7

"MTBE" shall mean methyl tertiary butyl ether, whether neat or as a part of gasoline or as a contaminant of other fuel, and the degradation byproducts of commercial grade MTBE, including tertiary butyl alcohol ("TBA").  In addition, MTBE shall include TBA when TBA is present in MTBE gasoline.

"Paragraph" shall mean a portion of this Agreement identified by an Arabic numeral or an upper case letter.

"Parties" shall mean the Plaintiffs, the Creditor Representative and Lyondell when referred to collectively in this Agreement.

"Party" shall mean the Plaintiffs, the Creditor Representative or Lyondell when referred to individually in this Agreement.

"Past Cleanup and Removal Costs" shall mean all direct and indirect costs of any kind for any purpose the Plaintiffs incurred before the Effective Date of this Agreement, including oversight costs, with respect to MTBE that threatens or affects the waters of New Jersey.

"Plaintiffs" shall mean plaintiffs DEP, the Commissioner, and the Administrator, including in their capacities as described in paragraphs 14 to 18 of the Complaint, and any successor department, agency or official.

"Released Entities" shall mean the Debtors, the Reorganized Debtors, Lyondell-Citgo Refining LP, a Delaware Limited Partnership, and the Creditor Representative, and includes their related entities, including predecessors, successors, and all past and present officers, directors, shareholders and employees (each, a "Related Entity"), but only to the extent that the alleged liability of the Related Entity is based on its status and in its capacity as a Related Entity, and not to the extent that the alleged liability of the Related Entity with respect to MTBE contamination arose independently of its status and capacity as a Related Entity.

8

"Reorganized Debtors" shall mean the Reorganized Debtors as defined in the Plan.

"Rule 9019 Order" means an order of the Bankruptcy Court approving this Agreement and allowing the Allowed NJ GUC Claim under Bankruptcy Rule 9019.

"Section" when used with reference to this Agreement shall mean a portion of this Agreement identified by a roman numeral.

"Upstream Activities" means the manufacture, sale, supply, distribution, exchange, transfer, purchase, trading, marketing, and/or branding of MTBE or gasoline with MTBE. This definition does not include a discharge of MTBE or gasoline with MTBE at or from a facility, as defined by N.J.A.C. 7:1E-1.6, in New Jersey that occurs at a time that the facility is owned or operated by a Released Entity while the Released Entity is engaged in the manufacture, sale, supply, distribution, exchange, transfer, purchase, trading, marketing, and/or branding of MTBE or gasoline with MTBE.

## IV. CREDITOR REPRESENTATIVE'S COMMITMENTS

3.      (a)  Within ten (10) Business Days of the Effective Date of this Agreement, the Creditor Representative shall (i) distribute to the Plaintiffs ninety-four thousand, one hundred and seventy-four (94,174) class A shares of LyondellBasell Industries NV common stock, and (ii) pay the Plaintiffs four million, six hundred and twenty six thousand, seven hundred and fifty seven dollars ($4,626,757) in cash. The amounts in this Paragraph 3(a) represent the total stock and cash (including any and all dividends declared on such stock) that the Plaintiffs would have received on account of the Allowed NJ GUC Claim in the two distributions made to holders of Allowed general unsecured claims prior to the date hereof. The Creditor Representative shall distribute and pay such consideration in accordance with the instructions provided by the Plaintiffs.

(b) The Plaintiffs shall be entitled to receive such other and further distributions by the Creditor Representative on account of the Allowed NJ GUC Claim as may be made generally to the holders of Allowed general unsecured claims under and pursuant to the Plan.

## V. PLAINTIFFS' COVENANTS AND RELEASES

4.  (a) In consideration of the payments and distributions described in Section IV above, and upon receipt of the payment of cash and distribution of stock described in Paragraph 3(a) above, and except as otherwise provided in Section VI below but nonetheless subject to Section VII below, the Plaintiffs, fully and forever release, discharge, covenant not to sue, and agree not to otherwise take judicial, administrative, or other action against the Released Entities, pursuant to Section 106 or 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. 9607(a), Section 58:10-23.11f of the Spill Act, or any other statute or regulation for recovery of Damages, Past Cleanup and Removal Costs, or injunctive relief sought in the Complaint (but not injunctive relief for any substance other than MTBE or gasoline containing MTBE), including attorneys' fees, consultants' and experts' fees, and other litigation costs related to Damages, Past Cleanup and Removal Costs, or injunctive relief sought in the Complaint (but not injunctive relief for any substance other than MTBE or gasoline containing MTBE).

(b) Notwithstanding any other provision of this Agreement, in consideration of the payments and distributions described in Section IV above, and upon receipt of the payment of cash and distribution of stock described in Paragraph 3(a) above, the Plaintiffs fully and forever release, discharge, covenant not to sue, and agree not to otherwise take judicial, administrative, or other action against the Released Entities for either or both of the following: (i) any and all causes of action, demands, actions, suits, claims, cross-claims, and counter claims based upon the Released

Entities' liability to Plaintiffs under the common law or theories of products liability with respect to MTBE discharges that threaten or affect the waters of New Jersey, or based solely upon the Released Entities' liability (to the extent such liability exists) under any applicable federal or state statute, regulation or order, premised upon Released Entities' Upstream Activities; and (ii) any and all causes of action, demands, actions, suits, claims, cross-claims, and counter claims for discharges of MTBE or gasoline with MTBE that occurred prior to the Plan Effective Date except for Released Entities' obligations, if any, pursuant to N.J.S.A. 58:10B-1.3, to clean up (a) sites they owned, at the time of the discharge, if prior to April 30, 2010, and (b) sites that they owned or operated prior to April 30, 2010 if the site was subject to the Industrial Site Recovery Act, N.J.S.A. 13:1K-6 et seq., unless such causes of action, demands, actions, suits, claims, cross-claims, and counter claims for discharges of MTBE or gasoline with MTBE were dischargeable in the Chapter 11 Case by the Debtors or Reorganized Debtors.

(c) In consideration of the payments and distributions described in Section IV above, and upon receipt of the payment of cash and distribution of stock described in Paragraph 3(a) above, the Plaintiffs fully and forever release, discharge, covenant not to sue, and agree not to otherwise take judicial, administrative, or other action relating to the NJ POC or the Allowed NJ GUC Claim against the Creditor Representative, subject to the Creditor Representative's obligations in Section IV.

5.   The covenants and releases contained in this Section V shall take effect upon the Plaintiffs receiving the payment of cash and distribution of stock described in Paragraph 3(a) above.

6.   The covenants and releases contained in this Section V extend only to Released Entities, and not to any other defendant, party, person, or entity.

11

7.      The covenants and releases contained in this Section V do not pertain to any matters other than those expressly stated.

## VI. PLAINTIFFS' RESERVATIONS

8.      Except as set forth in Paragraph 4(b) but nonetheless subject to Section VII below, (a) nothing in this Agreement precludes Plaintiffs from taking judicial, administrative, or other action against the Released Entities to require any of the Released Entities to perform remediation in compliance with all applicable statutes, regulations, and orders and (b) Lyondell agrees (and to the extent that it can do so, it agrees for all Debtors and Reorganized Debtors) that all investigation and remediation of hazardous substances that any of them perform under State oversight (as opposed to federal oversight), if any, will be performed pursuant to the Site Remediation Reform Act, N.J.S.A. 58:10C-1 et seq., and the accompanying regulations and guidance, notwithstanding N.J.S.A. 58:10C-27(e).

9.      Subject to Section VII below, the Plaintiffs reserve, and this Agreement is without prejudice to, all rights against the Released Entities, except those expressly released (including, for the avoidance of doubt, the release of any and all claims against the Creditor Representative) or for which there is a covenant not to sue in Section V. This reservation of rights includes, but is not limited to, the following:

a.  liability arising from the Debtors and Reorganized Debtors being in any way responsible for a hazardous substance other than MTBE that is discharged into the waters of New Jersey. The Debtors and Reorganized Debtors shall not be entitled to an offset or reduction in such liability or damages where hazardous substances other than MTBE are the basis for such liability or damages, except as provided by Paragraph 4(b);

b. liability for Future Cleanup and Removal Costs, except as provided by Paragraph 4(b);

c. liability for all claims paid in the future by the Spill Fund concerning the discharge of MTBE threatening or affecting the waters of New Jersey for which any of the Debtors and Reorganized Debtors is responsible under the statutes of New Jersey, except as provided by Paragraph 4(a) or 4(b);

d. criminal liability; and

e. liability for any discharge of any substance by any of the Released Entities in violation of federal or state law that occurs after the Effective Date of this Agreement.

## VII. NO LIMITATION ON BANKRUPTCY DISCHARGE

10. Nothing in this Agreement, the Rule 9019 Order or the Litigation Court Order shall limit or alter, or is intended to limit or alter, the benefits, rights, defenses to claims, the discharge of debt or claims, or injunctions, afforded to or for the benefit of the Debtors and Reorganized Debtors pursuant to the Plan (including, without limitation, pursuant to Article XI of the Plan), the Confirmation Order (including, without limitation, pursuant to paragraphs 34 and 35 of the Plan), the Bankruptcy Code (including, without limitation, pursuant to section 524(a)(2) and section 1141(d)(1) of the Bankruptcy Code), the Bar Date Order (including, without limitation, page 9 of the Bar Date Order) or otherwise in or in connection with the Chapter 11 Case.

11. Without limiting the generality of Paragraph 10 above, and for the avoidance of doubt, if the pursuit of any right or claim is otherwise barred or enjoined by, or any right or claim has otherwise been discharged by or by the operation of, the Plan, the Confirmation Order, the Bankruptcy Code or the Bar Date Order, the Parties agree that the Plaintiffs are not preserving

(a) such barred, enjoined, or discharged right or claim and may not pursue such right or claim even if nominally excluded from the releases provided in Section V above, (b) such barred, enjoined, or discharged right or claim nominally reserved by the Plaintiffs under Section VI above, including, without limitation, a claim for remediation, or (c) such barred, enjoined, or discharged claim for Past Cleanup or Removal Costs or Future Cleanup or Removal Costs.

## VIII. LYONDELL'S COVENANT NOT TO SUE

12.    Lyondell, for itself and, to the fullest extent possible, for all of the Released Entities, covenants not to sue or assert any claim or cause of action against Plaintiffs with respect to claims, causes of action and other claims or requests for relief for which the Released Entities are being released or are receiving a covenant not to sue as set forth in Section V of this Agreement.

13.    The covenant in Paragraph 12 above does not apply (i) where the Plaintiffs sue or take judicial, administrative, criminal or other action against a Released Entity pursuant to Section VI above or related to MTBE or gasoline containing MTBE; or (ii) in any action to enforce or obtain the benefits and rights provided by this Agreement.

## IX. NO FINDINGS OR ADMISSIONS OF LIABILITY

14.    Nothing contained in this Agreement shall be considered an admission by the Debtors or Reorganized Debtors of any wrongdoing or liability of the Debtors or Reorganized Debtors.

## X. EFFECT OF SETTLEMENT AND CONTRIBUTION PROTECTION

15.    Nothing in this Agreement shall be construed to create any rights in, or grant any cause of action to, any person other than Plaintiffs, Released Entities, and the Creditor Representative. The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this Agreement may have under applicable law.

14

16.   All rights, including, but not limited to, any right to indemnification and contribution, defenses, claims, demands, and causes of action that any of the Released Entities may have concerning any matter, transaction, or occurrence, whether or not arising out of the subject matter of the Complaint, against any person not a Party to this Agreement are expressly reserved.

17.   Upon entry of the Rule 9019 Order and the Litigation Court Order, this Agreement shall constitute a judicially approved settlement within the meaning of N.J.S.A. 58:10-23.11f.a.(2)(b) and 42 U.S.C. § 9613(f)(2), and will resolve the liability of the Released Entities to the Plaintiffs for the purpose of providing contribution protection to the Released Entities from contribution actions under CERCLA, the Spill Act, the Joint Tortfeasors Contribution Law, N.J.S.A. 2A:53A–1 et seq., the Comparative Negligence Act, N.J.S.A. 2A:15-5.1 to -5.8, or any other statute, regulation or common law principle related to the causes of action pleaded in the Complaint or matters addressed in this Agreement. The Parties agree, and by entering the Rule 9019 Order and the Litigation Court Order the Bankruptcy and Litigation Courts find, that, upon receipt of the payment of cash and distribution of stock described in Paragraph 3(a) above, the Released Entities are entitled to protection from contribution actions pursuant to Sections 113(f)(2) of CERCLA, 42 U.S.C. §§ 9613(f)(2), the Spill Act, N.J.S.A. 58:10-23.11f.a.(2)(b), and any other statute, regulation, or common law principle that provides contribution rights against the Released Entities with regard to the subject matter of the Complaint or matters addressed in this Agreement.

18.   In accordance with N.J.S.A. 58:10-23.11e2, the Plaintiffs published a copy of the draft Agreement on Plaintiffs' website, published notice of this Agreement in the New Jersey Register, and arranged for notice, as described in the following paragraph, to other parties in the

Litigation and to the other potentially responsible parties.  Such notice included the following

information:

    a.     the caption of this Litigation and the Multi-District Litigation;

    b.     the names of the Released Entities, and for these purposes the names of the Debtors

           shall be as set forth on the attached Exhibit "A" and the names of the Reorganized

           Debtors shall be as set forth on the attached Exhibit "B";

    c.     a summary of the terms of this Agreement; and

    d.     that a copy of the draft Agreement is available on the Plaintiffs' website.

    19.    In fulfillment of N.J.S.A. 58:10-23.11e2, the Plaintiffs and Lyondell have provided

written notice of this Agreement to all other parties in the Litigation and to other potentially

responsible parties by:

    a.     Lyondell sending a letter to liaison defense counsel in the Litigation and serving a

           copy of such letter on counsel of record in the Litigation via LexisNexis File and

           Serve;

    b.     Lyondell publishing notice in the following newspapers, and the Creditor

           Representative reimbursing Lyondell for the out of pocket cost of such publication

           within 30 days of Lyondell invoicing the Creditor Representative:

           i. Asbury Park Press;

           ii. Atlantic City Press;

           iii. Bergen Record;

           iv. Burlington County Times;

           v. New Jersey Herald;

           vi. South Jersey Times; and

vii. Star Ledger; and

c. Plaintiffs distributing a copy of the New Jersey Register Notice via the Site Remediation Program's listserv which the public can access at http://nj.gov/dep/srp.

This notice is deemed compliant with the notice requirement of N.J.S.A. 58:10-23.11e2.

20. a. As soon as practicable after the deadline for receipt of comments sought in the notice to be provided by the Plaintiffs pursuant to Paragraph 18 above, the Plaintiffs shall inform the Reorganized Debtors and the Creditor Representative whether the Department intends to withdraw or withhold its consent to the entry of the Rule 9019 Order and the Litigation Court Order based on such comments.

b. Within seven (7) Business Days of Plaintiffs informing the Reorganized Debtors and the Creditor Representative as required in Paragraph 20(a), the Creditor Representative, with the consent of the Plaintiffs, will move the Bankruptcy Court for entry of the Rule 9019 Order.

c. As soon as practical after the entry of the Rule 9019 Order, the Plaintiffs will move the Litigation Court for entry of the Litigation Court Order.

d. Upon the Effective Date of this Agreement, the Claims Objection and the Reserve Motion shall be deemed withdrawn with respect to the NJ POC and the NJ POC shall be reduced and allowed as the Allowed NJ GUC Claim. Within five (5) Business Days of the Effective Date, the Creditor Representative shall file a notice in the Chapter 11 Case that the Claims Objection and the Reserve Motion have been withdrawn with respect to the NJ POC.

21. In any subsequent administrative or judicial proceeding initiated by the Plaintiffs relating to matters not addressed in this Agreement, the Debtors and Reorganized Debtors shall not assert, and may not maintain, any defense or claim based upon the principles of the entire

17

controversy doctrine; provided, however, that nothing in this Paragraph affects the enforceability of this Agreement.

## XI.  GENERAL PROVISIONS

22.    Nothing in this Agreement shall be deemed to constitute preauthorization of a claim against the Spill Fund within the meaning of N.J.S.A. 58:10-23.11k or N.J.A.C. 7:1J.

23.    This Agreement shall be governed and interpreted under the laws of the State of New Jersey.

24.    If any provision of this Agreement or the application thereof to any person or circumstance, to any extent, is held to be invalid or unenforceable, the remainder of this Agreement or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby and each provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

## XII.  RETENTION OF JURISDICTION

25.    The Bankruptcy Court and the Litigation Court retain jurisdiction over both the subject matter of this Agreement and the Parties for the duration of the performance of the terms and provisions of this Agreement for the purpose of enabling any of the Parties to apply to the Bankruptcy Court or the Litigation Court at any time for such further order, direction, or relief as may be necessary or appropriate for the construction or any agreed modification of this Agreement, or to effectuate or enforce compliance with its terms.  The Parties hereby consent to any request to reopen the Chapter 11 Case, to the extent that is necessary to enable any of the Parties to apply to the Bankruptcy Court for such relief. Nothing in this Agreement shall impair the right or the ability of any Party to enforce this Agreement or seek redress for the breach thereof.

## XII.  NO OBJECTION

18

26.     Provided that (a) the Agreement for which Bankruptcy Court approval is sought by the Creditor Representative is in form and substance exactly the same as this Agreement, (b) the Rule 9019 Motion filed by the Creditor Representative is substantially in form and substance the same as the Rule 9019 Motion attached as Exhibit "C", (c) the Rule 9019 Order entered by the Bankruptcy Court is in substance exactly the same as the Rule 9019 Order attached as Exhibit "D", and (d) neither the Creditor Representative nor the Plaintiffs assert that, by not challenging the Agreement or objecting to the Rule 9019 Motion or the entry of the Rule 9019 Order or the Litigation Court Order, Lyondell is taking, or has taken, any position other than the position that the economic consideration being paid to the Plaintiffs under the Agreement exceeds Lyondell's position as to the justifiable settlement value for those claims, Lyondell will not (i) challenge, object to, or contest the validity of this Agreement, (ii) object to the entry of the Rule 9019 Order or the Litigation Court Order, or (iii) appeal from, or otherwise contest the validity of the Rule 9019 Order or the Litigation Court Order.  Nothing in this paragraph is intended to prevent, nor does it prevent, Lyondell from submitting a statement or response to the Rule 9019 Motion provided it does not challenge, object to, or contest the validity of the Agreement or object to the entry of the Rule 9019 Order, and, if made in accordance with this Paragraph, such statement or response will not be treated as a violation by Lyondell of this Agreement.

### XIII. MODIFICATION

27.     This Agreement may only be modified by written agreement between the Parties with approval by the Bankruptcy Court or the Litigation Court and represents the entire integrated agreement between the Plaintiffs and the Released Entities, and supersedes all prior negotiations, representations or agreements, either written or oral.

28.     Nothing in this Agreement shall be deemed to alter the Bankruptcy Court's or the Litigation Court's power to enforce, supervise, or approve modifications to this Agreement.

29.     If for any reason the Bankruptcy Court or the Litigation Court should decline to approve this Agreement in the form presented, this Agreement is voidable at the sole discretion of any Party upon a reasonably timely written notice thereof and the terms of the Agreement may not be used as evidence in any litigation among the Parties or third parties; provided, however, that in such event, the Parties shall negotiate in good faith and use best efforts to enter into a revised agreement and to seek approval thereof from the Bankruptcy Court and Litigation Court.

30.     Within thirty (30) Days of the Plaintiffs' receipt of the consideration described in Paragraph 3(a) above, Plaintiffs shall file the appropriate papers with the Litigation Court requesting that the Court dismiss the Complaint as to Lyondell and Lyondell-Citgo Refining LP with prejudice pursuant to Fed. R. Civ. P. 41(a)(2).

## XIV. SIGNATORIES/SERVICE

31.     Each undersigned representative of the Parties to this Agreement certifies that he or she is authorized to enter into the terms and conditions of this Agreement, and to execute and legally bind each such Party to this Agreement.

32.     This Agreement may be signed and dated in any number of counterparts, each of which shall be an original, and such counterparts shall together be one and the same Agreement.

33.     In this paragraph, each of the Parties identifies agents who are authorized to accept service of process by mail on their respective behalf with respect to all matters arising under or relating to this Agreement, and each agrees to accept service in this manner, and to waive the formal service requirements set forth in the New Jersey Rules of Court or Federal Rules of Civil Procedure, including service of a summons. To the fullest extent possible, Lyondell identifies this

agent and agrees to accept service in this manner and to waive the formal service requirements set forth in the New Jersey Rules of Court or Federal Rules of Civil Procedure, including service of a summons, not only for itself but for all Reorganized Debtors.

> For Lyondell:
>
> > CT Corporation System
> > 1999 Bryan Street
> > Suite 900
> > Dallas, TX 75201-3136
>
> For Creditor Representative:
>
> > Steven D. Pohl, Esq.
> > Brown Rudnick LLP
> > One Financial Center
> > Boston, Massachusetts 02111
> > (617) 856-8200
> > spohl@brownrudnick.com

34.     The Parties to this Agreement agree that it was negotiated fairly between them at arm's length and that the final terms of this Agreement shall be deemed to have been jointly and equally drafted by them, and that the provisions of this Agreement therefore should not be construed against a Party to it on the grounds that such Party drafted or was more responsible for drafting the provision(s).

[SIGNATURES ON FOLLOWING PAGES]

NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION

By: _____
    Anthony J. Farro, Director
    Publicly Funded Site Remediation
    Site Remediation Program

    Dated: ___7/27/15___


By: _____
    Rich Boornazian, Assistant Commissioner
    Natural & Historic Resources

    Dated: ___7/27/15___


NEW JERSEY SPILL COMPENSATION FUND

By: _____
    Anthony J. Farro, Administrator
    New Jersey Spill Compensation Fund

    Dated: ___7/27/15___

22

John J. Hoffman,
Acting Attorney General of New Jersey
Attorney for Plaintiffs

By: _____
     Gwen Farley
     Deputy Attorney General

     Dated: 7/27/15


THE CREDITOR REPRESENTATIVE,
APPOINTED PURSUANT TO THE THIRD
AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION FOR LYONDELLBASELL
DEBTORS AND CREDITOR
REPRESENTATIVE PLAN SUPPLEMENT


By:_____
     Steven D. Pohl, Counsel to the
     Creditor Representative

     Dated: _____


LYONDELL CHEMICAL COMPANY


By:_____
     Mark A. Waite
     Lead Counsel, Disputes & HSE

     Dated: _____

23

John J. Hoffman,
Acting Attorney General of New Jersey
Attorney for Plaintiffs


By: _____

     Gwen Farley
     Deputy Attorney General

        Dated: _____


THE CREDITOR REPRESENTATIVE,
APPOINTED PURSUANT TO THE THIRD
AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION FOR LYONDELLBASELL
DEBTORS AND CREDITOR
REPRESENTATIVE PLAN SUPPLEMENT

By: _____

     Steven D. Pohl, Counsel to the
     Creditor Representative

     Dated: July 28, 2015


LYONDELL CHEMICAL COMPANY


By: _____

     Mark A. Waite
     Lead Counsel, Disputes & HSE

        Dated: _____


23

John J. Hoffman,
Acting Attorney General of New Jersey
Attorney for Plaintiffs


By: _____
      Gwen Farley
      Deputy Attorney General

             Dated: _____



THE CREDITOR REPRESENTATIVE,
APPOINTED PURSUANT TO THE THIRD
AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION FOR LYONDELLBASELL
DEBTORS AND CREDITOR
REPRESENTATIVE PLAN SUPPLEMENT


By:_____
      Steven D. Pohl, Counsel to the
      Creditor Representative

      Dated: _____


LYONDELL CHEMICAL COMPANY

By: _____
      Mark A. Waite
      ~~Lead Counsel, Disputes & HSE~~
      Associate General Counsel, Commercial, Disputes & HSE
      Dated: August 3, 2015

23

# EXHIBIT "A"

# TO

# SETTLEMENT AGREEMENT and RELEASE

## EXHIBIT A

### The Debtors

Basell Capital Corporation
Basell Finance USA Inc.
Basell Germany Holdings GmbH
Basell Impact Holding Company
Basell North America Inc.
Basell USA Inc.
Circle Steel Corporation
Duke City Lumber Company, Inc.
Equistar Bayport, LLC
Equistar Chemicals, LP
Equistar Funding Corporation
Equistar Polypropylene, LLC
Equistar Transportation Company, LLC
Glidco Leasing, Inc.
Glidden Latin America Holdings Inc.
H.W. Loud Co.
HOISU Ltd.
Houston Refining LP
HPT 28 Inc.
HPT 29 Inc.
IMWA Equities II, Co., L.P.
ISB Liquidating Company
LBI Acquisition LLC
LBIH LLC
LeMean Property Holdings Corporation
LPC Partners Inc.
Lyondell (Pelican) Petrochemical L.P. 1, Inc.
Lyondell Asia Pacific, Ltd.
Lyondell Bayport, LLC
Lyondell Chemical Company
Lyondell Chemical Delaware Company
Lyondell Chemical Espana Co.
Lyondell Chemical Europe, Inc.
Lyondell Chemical Holding Company
Lyondell Chemical International Co.
Lyondell Chemical Nederland, Ltd.
Lyondell Chemical Products Europe, LLC
Lyondell Chemical Properties, L.P.
Lyondell Chemical Technology 1 Inc.
Lyondell Chemical Technology Management, Inc.
Lyondell Chemical Technology, L.P.
Lyondell Chemical Wilmington, Inc.
Lyondell Chimie France LLC
Lyondell Europe Holdings Inc.
Lyondell General Methanol Company
Lyondell Greater China, Ltd.
Lyondell Houston Refinery Inc.

Lyondell Intermediate Holding Company
Lyondell LP3 GP, LLC
Lyondell LP3 Partners, LP
Lyondell LP4 Inc.
Lyondell Petrochemical L.P. Inc.
Lyondell Refining Company LLC
Lyondell Refining I LLC
LyondellBasell Advanced Polyolefins USA Inc.
LyondellBasell AF GP S.à.r.l.
LyondellBasell Finance Company
LyondellBasell Industries AF S.C.A.
Lyondell-Equistar Holdings Partners
MHC Inc.
Millennium America Holdings Inc.
Millennium America Inc.
Millennium Chemicals Inc.
Millennium Holdings, LLC
Millennium Petrochemicals GP LLC
Millennium Petrochemicals Inc.
Millennium Petrochemicals LP LLC
Millennium Petrochemicals Partners, LP
Millennium Realty Inc.
Millennium Specialty Chemicals Inc.
Millennium US Op Co LLC
Millennium Worldwide Holdings I Inc.
MWH South America LLC
National Distillers & Chemical Corporation
NDCC International II Inc.
Nell Acquisition (US) LLC
Penn Export Company, Inc.
Penn Navigation Company
Penn Shipping Company, Inc.
Penntrans Company
PH Burbank Holdings, Inc.
Power Liquidating Company, Inc.
Quantum Acceptance Corporation
Quantum Pipeline Company
SCM Chemicals Inc.
SCM Plants, Inc.
Suburban Propane GP, Inc.
Tiona, Ltd.
UAR Liquidating Inc.
USI Chemicals International, Inc.
USI Credit Corp.
USI Puerto Rico Properties, Inc.
Walter Kidde & Company, Inc.
Wyatt Industries, Inc.

# EXHIBIT "B"

# TO

# SETTLEMENT AGREEMENT and RELEASE

## EXHIBIT B

### The Reorganized Debtors

Basell Capital Corporation
Basell Finance USA Inc.
Basell Germany Holdings GmbH
Basell Impact Holding Company
Basell North America Inc.
Basell USA Inc.
Equistar Bayport, LLC
Equistar Chemicals, LP
Houston Refining LP
LBI Acquisition LLC
LBIH LLC
Lyondell (Pelican) Petrochemical L.P. 1, Inc.
Lyondell Asia Pacific, Ltd.
Lyondell Bayport, LLC
Lyondell Chemical Company
Lyondell Chemical Delaware Company
Lyondell Chemical Espana Co.
Lyondell Chemical Europe, Inc.
Lyondell Chemical Holding Company
Lyondell Chemical International Co.
Lyondell Chemical Nederland, Ltd.
Lyondell Chemical Products Europe, LLC
Lyondell Chemical Properties, L.P.

Lyondell Chemical Technology 1 Inc.
Lyondell Chemical Technology Management, Inc.
Lyondell Chemical Technology, L.P.
Lyondell Chemical Wilmington, Inc.
Lyondell Chimie France LLC
Lyondell Europe Holdings Inc.
Lyondell General Methanol Company
Lyondell Greater China, Ltd.
Lyondell Houston Refinery Inc.
Lyondell Intermediate Holding Company
Lyondell LP3 GP, LLC
Lyondell LP3 Partners, LP
Lyondell LP4 Inc.
Lyondell Petrochemical L.P. Inc.
Lyondell Refining Company LLC
Lyondell Refining I LLC
LyondellBasell Advanced Polyolefins USA Inc.
LyondellBasell AF GP S.à.r.l.
LyondellBasell Finance Company
LyondellBasell Industries AF S.C.A.
Lyondell-Equistar Holdings Partners
Nell Acquisition (US) LLC

# EXHIBIT "C"

# TO

# SETTLEMENT AGREEMENT and RELEASE

Steven D. Pohl
Brian T. Rice
**BROWN RUDNICK LLP**
One Financial Center
Boston, Massachusetts 02111
(617) 856-8200

- and -

Seven Times Square
New York, New York 10036
(212) 209-4800

*Counsel to the Creditor Representative*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| LYONDELL CHEMICAL CO., *et al.*, | Case No. 09-10023 (REG) |
| Reorganized Debtors. | Jointly Administered |

**NOTICE OF PRESENTMENT OF MOTION OF THE CREDITOR
REPRESENTATIVE FOR ENTRY OF AN ORDER APPROVING
SETTLEMENT RELATING TO THE CLAIM OF THE
NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION**

PLEASE TAKE NOTICE that upon the attached Motion of the Creditor Representative

for Entry of an Order Approving Settlement Relating to the Claim of the New Jersey Department

of Environmental Protection  (the "**Motion**"), the undersigned will present the proposed order,

attached to the Motion, approving the Motion, for signature on _____, **2015 at 1:00 p.m.**

(Eastern Time).

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion must comply

with the Federal Rules of Bankruptcy Procedures and the Local Rules of the Bankruptcy Court,

must be set forth in a writing describing the basis therefor and must be filed with the Bankruptcy

Court electronically in accordance with General Order M-242, as amended by General Order M-269, by registered users of the Bankruptcy Court's electronic case filing system (the User's Manual for the Electronic Case Filing System can be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court) and, by all other parties in interest, on a 3.5-inch disk or CD-ROM, preferably in Portable Document Format (PDF), Word Perfect or any other Windows-based word processing format (with a hard copy delivered directly to Chambers) and served upon each of the following so as to be actually received no later than _____, 2015 **at 12:00 p.m.** (Eastern Time): (i) Brown Rudnick LLP, One Financial Center, Boston, Massachusetts 02111, Attn: Steven D. Pohl, Esq.; (ii) Cohn Lifland Pearlman Herrmann & Knopf, LLP, Park 80 West-Plaza One, 250 Pehle Avenue, Suite 401, Saddle Brook, New Jersey 07663, Attn: Leonard Z. Kaufmann, Esq.; (iii) Pillsbury Winthrop Shaw Pittman LLP, 1540 Broadway, New York, New York 10036, Attn: Andrew M. Troop, Esq.; and (iv) Blank Rome LLP, One Logan Square, 130 N. 18th Street, Philadelphia, Pennsylvania 19103, Attn: Frank A. Dante, Esq.

PLEASE TAKE FURTHER NOTICE that if a written objection is timely filed, a hearing will be held at the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004, at a date and time to be established by the Court. The moving and objecting parties are required to attend the hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: _____, 2015

**BROWN RUDNICK LLP**

_____

Steven D. Pohl
Brian T. Rice
One Financial Center
Boston, Massachusetts 02111
(617) 856-8200

 - and -

Seven Times Square
New York, New York 10036
(212) 209-4800

*Counsel to the Creditor Representative*

3

# EXHIBIT "D"

# TO

# SETTLEMENT AGREEMENT and RELEASE

Steven D. Pohl
Brian T. Rice
**BROWN RUDNICK LLP**
One Financial Center
Boston, Massachusetts 02111
(617) 856-8200

- and -

Seven Times Square
New York, New York 10036
(212) 209-4800

*Counsel to the Creditor Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| LYONDELL CHEMICAL CO., *et al.*, | Case No. 09-10023 (REG) |
| Reorganized Debtors. | Jointly Administered |

**MOTION OF THE CREDITOR REPRESENTATIVE FOR ENTRY OF AN
ORDER APPROVING SETTLEMENT RELATING TO THE CLAIM OF
THE NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION**

The Creditor Representative, appointed under the Third Amended and Restated Joint Plan of Reorganization for the LyondellBasell Debtors [Docket No. 4418, Exhibit A] (the "**Plan**"), hereby moves the Court for entry of an order approving the settlement it has reached relating to the claim of the New Jersey Department of Environmental Protection ("**New Jersey**").[1]  As grounds therefor and in support hereof, the Creditor Representative respectfully states as follows:

### PRELIMINARY STATEMENT

1.    The Settlement (defined below) brokered by the Creditor Representative with New Jersey is the result of a years-long effort at resolution, which culminated in a day-long mediation session ordered by the Court and led by Chief Bankruptcy Judge Morris.

2.    Under the Settlement, the $100 million face amount claim of New Jersey will be allowed at $30 million.  The resolution of this claim will facilitate the Creditor Representative's making a third (and, likely, final) distribution to holders of Allowed General Unsecured Claims from the Fixed Settlement Plan Consideration currently held in reserve for Disputed Claims.

3.    With nearly five years having passed since the Plan was confirmed, the interests of finality counsel in favor of resolving the claim of New Jersey – the largest remaining Disputed Claim.  Although the Settlement provides for the allowance of this claim at a higher percentage than the other MTBE Claims (defined below) previously resolved and supported by the Reorganized Debtors, approval of the Settlement (i) will permit unsecured creditors to make their own important hold-or-sell decisions with respect to the highly appreciated Class A Shares of LyondellBasell Industries held by the Creditor Representative (currently trading at more than four times their original "Plan value") and (ii) will do nothing to disrupt expectations for

---

[1]    Capitalized terms used but not defined herein have the meanings given them in the Plan.

recoveries on Allowed General Unsecured Claims, the holders of which will still receive distributions in excess of what was forecast in the Debtors' Disclosure Statement.

4.     For these reasons, and the others set forth below, the Creditor Representative submits that approval of the Settlement by the Court is warranted.

## BACKGROUND

**I.     The Lender Litigation Settlement and Effective Date Distributions.**

5.     The instant motion has its origins in the Lender Litigation Settlement reached in advance of the Effective Date of the Debtors' Plan.  Pursuant thereto, the Settling Defendants agreed to provide $450 million of Fixed Settlement Plan Consideration – $300 million in cash and $150 million in Class A Shares – for distribution to holders of Allowed General Unsecured Claims.  Based on a "Plan value" of $17.61 per share, this amounted to approximately 8.5 million Class A Shares.

6.     On or shortly after the Effective Date, the Reorganized Debtors made distributions of Fixed Settlement Plan Consideration on account of approximately $1.91 billion in Allowed General Unsecured Claims, representing an approximately 15.4% recovery to holders of such claims.  In their Disclosure Statement, the Debtors had estimated that holders of Allowed General Unsecured Claims entitled to share in the Fixed Settlement Plan Consideration would receive a 16.8% distribution.  See Disclosure Statement § I.B.

**II.    Appointment of the Creditor Representative.**

7.     The Creditor Representative was appointed under the Plan and Creditor Representative Plan Supplement to administer the portion of Fixed Settlement Plan Consideration not distributed on the Effective Date.  See Plan § 7.2.  In this capacity, the Creditor Representative is responsible for, *inter alia*, making distributions to holders of Disputed Claims as they become allowed.  See id. § 8.4.

8.     The Plan vests the Reorganized Debtors with the authority to "settle, compromise or otherwise resolve any Disputed Claim without further order of the Bankruptcy Court," id. § 8.2(a),[2] and provides further for the Reorganized Debtors to "consult with the Creditor Representative concerning the Reorganized Debtors' proposed compromise, settlement, resolution or withdrawal of any objection to a General Unsecured Claim that is disputed," id. § 8.2(c).[3]

9.     As Disputed Claims are resolved, the Creditor Representative is responsible for making additional distributions to holders of Allowed General Unsecured Claims from the reserve of Fixed Settlement Plan Consideration held on account of those Disputed Claims (the "**Disputed Claims Reserve**"). See Creditor Representative Plan Supplement § 3.3(a) ("[T]he Creditor Representative shall act as Disbursing Agent for the Disputed Claims Reserve in accordance with Article VIII of the Plan."). In December 2012, the Creditor Representative made a second distribution – comprising an additional approximately $20.6 million in cash and 470,100 Class A Shares (with a "Plan value" of approximately $8.3 million) – which added another approximately 1.1% to total recoveries for creditors.

## III.     **Resolution of the MTBE Claims.**

10.     Since 2012, among the largest remaining of the Disputed Claims has been that of New Jersey, submitted in a face amount of $100 million. The New Jersey claim was one of five submitted against Debtor Lyondell Chemical Co. – in the aggregate face amount of $170 million

---

[2]     The Reorganized Debtors' position on the Settlement is set forth in a separate statement, to be submitted contemporaneously herewith.

[3]     See also Creditor Representative Plan Supplement § 3.1(b) (powers and rights of the Creditor Representative include "participat[ing] in the resolution of Disputed General Unsecured Claims as provided for in the Plan").

3

– relating to alleged prepetition groundwater contamination by the gasoline additive methyl tertiary butyl ether (the "**MTBE Claims**").[4]

11.     In September 2012, the Creditor Representative moved the Court to estimate the MTBE Claims for purposes of the Disputed Claims Reserve, to permit additional distributions of cash and Class A Shares to be made on account of Allowed General Unsecured Claims.[5]   To allow out-of-court negotiations relating to the MTBE Claims to progress, the Creditor Representative adjourned the hearing of the Estimation Motion.

12.     In July 2013, the Court approved the Reorganized Debtors' settlements of the MTBE Claims of Fresno and Crescenta Valley.[6]   Fresno's ($5 million face amount) claim was allowed in the amount of $450,000, and the Reorganized Debtors paid Fresno an additional $325,000.   Crescenta Valley's ($10 million face amount) claim was allowed in the amount of $900,000, and the Reorganized Debtors paid Crescenta Valley an additional $525,000.[7]

## IV.   The Court-Ordered Mediation of the Remaining MTBE Claims.

13.     To allow settlement discussions relating to the three then-remaining MTBE Claims – those of New Jersey, Orange County, and Puerto Rico – to continue, the Creditor

---

[4]     The MTBE Claims are evidenced by proof of claim numbers 7822 ($100 million, submitted by New Jersey), 11851 ($25 million, submitted by the Commonwealth of Puerto Rico ("**Puerto Rico**")), 11852 ($5 million, submitted by the City of Fresno ("**Fresno**")), 11853 ($30 million, submitted by the Orange County Water District ("**Orange County**"), and 11854 ($10 million, submitted by the Crescenta Valley Water District ("**Crescenta Valley**")).

The Reorganized Debtors objected to each of the MTBE Claims as being unenforceable against the Debtors.   See Reorganized Debtors' One Hundred Fifty-Fifth Tier I Omnibus Objection to Certain Proofs of Claim Relating to MTBE Actions [Docket No. 6602].

[5]     See Motion of the Creditor Representative to Estimate Disputed Claims and to Establish a Distribution Reserve for Purposes of Making Distributions of Fixed Settlement Consideration [Docket No. 7105] (the "**Estimation Motion**").

[6]     See Order Pursuant to Bankruptcy Rule 9019 Approving Settlement Agreements with (A) City of Fresno and (B) Crescenta Valley Water District [Docket No. 7216].

[7]     See Reorganized Debtors' Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 Approving Settlement Agreements with (A) City of Fresno and (B) Crescenta Valley Water District [Docket No. 7207] ¶ 28.

Representative again adjourned the hearing of the Estimation Motion.   To advance these discussions further, in July 2014, the Reorganized Debtors and Creditor Representative sought, and this Court entered, an order assigning the remaining MTBE Claims to mediation.[8]

14.     During the mediation session led by Chief Bankruptcy Judge Morris, the Reorganized Debtors finalized a settlement with Puerto Rico, under which its $25 million face amount claim would be allowed at $1,150,000 and Puerto Rico would receive a cash payment from the Reorganized Debtors bringing the current value of its settlement to $1,000,000.[9]

15.     The Creditor Representative (without the involvement of Lyondell) reached an agreement in principle with New Jersey, under which its $100 million face amount claim would be allowed at $30 million.   After lengthy negotiation among New Jersey, the Creditor Representative, and the Reorganized Debtors, a final settlement agreement has been reached among these parties (as memorialized in the agreement attached hereto as **Exhibit A**, the "**Settlement**").

16.     The Creditor Representative now seeks this Court's approval of the Settlement.[10]

## RELIEF REQUESTED

17.     The Creditor Representative respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit B**, approving the Settlement.

---

[8]     See Stipulated Order Assigning the Disputed MTBE Claims to Mediation and Appointing Mediator [Docket No. 7302].

[9]     The Court subsequently approved the Reorganized Debtors' settlement with Puerto Rico.  See Order Pursuant to Bankruptcy Rule 9019 Approving Settlement Agreement with Commonwealth of Puerto Rico [Docket No. 7340].

[10]    The Settlement contains additional preconditions (beyond approval by this Court) to its effectiveness, in particular entry of an order from the Litigation Court (as defined therein) approving the same.

## GROUNDS FOR RELIEF

18.     The relief sought by the Creditor Representative is grounded in Federal Rule of Bankruptcy Procedure 9019(a), which provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).[11] In deciding the proper exercise of this authority, courts evaluate "whether the settlement falls below the lowest point in the range of reasonableness." Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983).

19.     "[T]o that end, courts in this Circuit have set forth factors for approval of settlements based on the original framework announced in TMT Trailer Ferry." Motorola, Inc. v. Official Comm. of Unsecured Creditor (In re Iridium Operating LLC), 478 F.3d 452, 462 (2d Cir. 2007) (citing Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)). These Iridium factors include:

- The balance between the litigation's possibility of success and the settlement's future benefits;

- The likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment;

- The paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement;

---

[11]     The Creditor Representative acknowledges that Rule 9019(a) speaks of "the trustee," and, by operation of section 1107(a), applies as well to a motion by the debtor in possession. Consideration of the Settlement is nevertheless properly before the Court, whether pursuant to the Creditor Representative's right to be heard under Bankruptcy Code section 1109(b) or the Court's authority to "sua sponte, tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a); accord Adelphia Business Solutions, Inc. v. Abnos, 482 F.3d 602, 609 (2d Cir. 2007) ("A bankruptcy judge 'must not be shackled with unnecessarily rigid rules when exercising the undoubtedly broad administrative power granted him under the Code,' but rather 'must have substantial freedom to tailor his orders to meet differing circumstances.'") (quoting Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1069 (2d Cir. 1983)); In re Ira Haupt & Co., 361 F.2d 164, 168 (2d Cir. 1966) (Friendly, J.) ("The conduct of bankruptcy proceedings not only should be right but must seem right.").

- Whether other parties in interest support the settlement;

- The competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement;

- The nature and breadth of releases to be obtained by officers and directors; and

- The extent to which the settlement is the product of arm's-length bargaining.

Iridium, 478 F.3d at 462; see also In re WorldCom, Inc., 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006). The Creditor Representative submits that each of the Iridium factors implicated by the Settlement supports its approval.

20.     First – with respect to the paramount interests of the creditors – nearly five years after the initial distributions of Fixed Settlement Plan Consideration were made by the Debtors, and more than two years after the Creditor Representative was able to make a modest, additional distribution, the interests of holders of Allowed General Unsecured Claims in receiving distributions of the highly appreciated Class A Shares cannot be overstated. Only then will these creditors be able to make their own important sell-or-hold decisions. Moreover, allowance of the claim of New Jersey in the amount set forth above will not disrupt the recovery expectations of holders of Allowed General Unsecured Creditors.     Rather, the third distribution that the Settlement facilitates is expected to bring total recoveries to or above the 16.8% estimated provided in the Debtors' Disclosure Statement. This Iridium factor therefore supports approval of the Settlement.

21.     Second – regarding the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay – the Settlement satisfies this Iridium factor for at least two independent reasons:

7

(i)      The multi-district litigation in which the merits of New Jersey's claim are being tried has been pending for more than ten years.  New Jersey's original complaint was filed in 2007 and has since been amended four times.  Although the MDL court has granted summary judgment against New Jersey on certain of its claims against Lyondell, the balance of claims relating to other sites are nowhere near ready for resolution by dispositive motion, or if they survive a further dispositive motion, what likely will be a lengthy, highly complex trial following remand.  More significantly, from the perspective of holders of Allowed General Unsecured Claims, the consummation of the Settlement avoids the need for the Creditor Representative to pursue the relief sought in the Estimation Motion, avoiding the delay and considerable cost that would attend an estimation proceeding; and

(ii)      In light of the current market value of the Class A Shares (and the attendant risk, at any time, of a loss of some of the very material post-exit gains), there can be no overstating the future benefits that resolving the claim of New Jersey today may have for creditors.  Indeed, even if, *arguendo*, the claim of New Jersey should be allowed at a lower percent of its face amount (*e.g.*, 15%), a drop in the market price of the Class A Shares of only 10% would do more to reduce recoveries for other holders of Allowed General Unsecured than any "excess" reflected in the Settlement.

22.      Third – regarding whether parties in interest support the settlement – the Creditor Representative was designated under the Plan as a post-confirmation "voice" for holders of Allowed General Unsecured Claims.[12]  Although the Reorganized Debtors do not "support" the Settlement, they are not opposing its approval in deference to the Creditor Representative's

---

[12]      The Creditor Representative is made up of a "Manager" and a five-person "Advisory Board," whose members reflect the diversity of the pool of holders of Allowed General Unsecured Claims: (i) Wilmington Trust Company; (ii) Law Debenture Trust of New York; (iii) BASF Corporation; (iv) James F. Schorr; and (v) Paul N. Silverstein.

assessment of the benefits of accelerating a distribution to holders of Allowed General Unsecured Claims that will result from the fixing of New Jersey's MTBE Claim.[13] This Iridium factor therefore supports approval of the Settlement.

23.     Fourth – with respect to the balance between the litigation's possibility of success and the settlement's future benefits – allowing the claim of New Jersey at 30% of its asserted face amount may, in fact, reflect a reasonable estimate of the likelihood of success on the merits of its claims. The Creditor Representative does not have the Reorganized Debtors' history with and own knowledge of these claims, and acknowledges that the Reorganized Debtors have resolved other of the MTBE Claims in the past by allowing them at lower percentages of their submitted face amount; however, in light of future benefits that unsecured creditors will realize from the resolution of New Jersey's claim (see ¶ 21(ii), supra), the Creditor Representative submits that this Iridium factor supports approval of the Settlement.

24.     Fifth – with respect to the competency and experience of counsel supporting the settlement – the Settlement was reached following a day-long mediation session led by Chief Bankruptcy Judge Morris. At the mediation and in subsequent negotiations, New Jersey has been represented by its own experienced trial, bankruptcy, and (either or both) outside and in-house counsel. This Iridium factor therefore supports approval of the Settlement.

25.     Thus, upon a weighing of the relevant Iridium factors, the Settlement more than satisfies Bankruptcy Rule 9019(a). Its approval by the Court is warranted.

---

[13]     The Creditor Representative understands that the Reorganized Debtors' lack of opposition to the Creditor Representatives' authority to settle the claim of New Jersey, and separately the claim of Orange County, is limited to these two MTBE Claims.

WHEREFORE, the Creditor Representative respectfully requests that the Court (i) enter an order, substantially in the form attached hereto as **Exhibit B**, approving the Settlement and (ii) grant the Creditor Representative such other and further relief as is just and equitable.

Dated: _____, 2015                **BROWN RUDNICK LLP**

_____

Steven D. Pohl
Brian T. Rice
One Financial Center
Boston, Massachusetts 02111
(617) 856-8200

- and -

Seven Times Square
New York, New York 10036
(212) 209-4800

*Counsel to the Creditor Representative*

10

# Exhibit A

# Exhibit B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| LYONDELL CHEMICAL CO., *et al.*, | Case No. 09-10023 (REG) |
| Reorganized Debtors. | Jointly Administered |

## ORDER APPROVING SETTLEMENT RELATING TO THE CLAIM OF
## THE NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION

The Court having considered the Motion of the Creditor Representative for Entry of an Order Approving Settlement Relating to the Claim of the New Jersey Department of Environmental Protection [Docket No. ____] (the "**Motion**"),[1] as well as the statement of the Reorganized Debtors filed contemporaneously therewith, and good cause appearing therefor, it is hereby ORDERED that:

1.    The Motion is granted on the terms set forth herein;

2.    The Settlement, as memorialized in the agreement attached as **Exhibit A** to the Motion, is approved;

3.    The Creditor Representative is authorized, without further order of the Court, to consummate the transactions contemplated by the Settlement and to take such other and further action as may be reasonably necessary to effectuate the terms thereof;

4.    Nothing in this Order shall be deemed a finding or conclusion by the Court that the Settlement is reasonable based solely on the strength of the claims asserted or that the Creditor Representative has the authority or power to settle or resolve general unsecured claims. Furthermore, approval of the Motion and the entry of this Order will not have any precedential

---

[1]    Capitalized terms used but not defined herein have the meanings given them in the Motion.

value on the merits of New Jersey's or any other entity's MTBE Claim or on the Creditor

Representative's authority or power to settle or resolve general unsecured claims; and

     5.     The Court shall retain jurisdiction to resolve disputes in connection with this

Order.


Dated: _____, 2015                    _____

                                               The Honorable Robert E. Gerber
                                               United States Bankruptcy Judge