```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   -------------------------------x

 3   In Re: METHYL TERTIARY BUTYL
            ETHER ("MTBE") PRODUCTS          00 CV  1898 (SAS)
 4          LIABILITY LITIGATION

 5   -------------------------------x

 6                                           New York, N.Y.
                                             August 20, 2015
 7                                           2:40 p.m.

 8   Before:

 9             HON. SHIRA A. SCHEINDLIN

10                                           District Judge

11

12             APPEARANCES

13

     MILLER AXLINE & SAWYER
14        Attorneys for Plaintiffs
     BY:  DUANE C. MILLER
15        MICHAEL AXLINE
          ROBIN GREENWALD
16
     McDERMOTT WILL & EMERY LLP
17        Attorneys for ExxonMobil
     BY:  TONY BONGIORNO
18        LISA GERSON
          STEPHEN J. RICCARDULLI
19
     SEDGWICK LAW
20        Attorneys for Shell Oil Company
     BY:  PETER CONDRON
21
     BEVERIDGE & DIAMOND
22        Attorneys for Sunoco, Inc.
     BY:  DANIEL M. KRAININ
23
     AKIN GUMP STRAUSS HAUER & FELD, LLP
24        Attorneys for Lukoil Americas Corporation
     BY:  KATHERINE M. KATCHEN
25
```

1                A P P E A R A N C E S (continued)

2

Observing for the Defendants:
3        WILLIAM STACK
         J. ANDREW LANGAN
4        COY CONNELLY
         STEPHANIE WEIRICK
5        BRIAN SULLIVAN
         JEREMIAH ANDERSON
6        PETER LEIGH
         CHRIS DANLEY
7        IRA BRAD MATESKY
         BRENT ALLEN
8        CARLOS BOLLAR
         THAO PHAM
9        JAMES MESSENGER
         PAULA SCHAUWECKER
10       ROBERT WILSON
         SHELLY GEPPERT
11
Observing by Telephone for Defendants:
12       JENNIFER ASPINALL
         NED DUNHAM
13       TODD MENSING
         JESSICA FARLEY
14

15

16

17

18

19

20

21

22

23

24

25

1           (In open court)

2           THE COURT:  Good afternoon, Ms. Greenwald, Mr. Axline,

3     Mr. Miller, Mr. Bongiorno, Mr. Riccardulli, Ms. Gerson,

4     Mr. Condron, Mr. Krainin, Ms. -- is it Katchen?

5           MS. KATCHEN:  It is, your Honor.  Good afternoon.

6           THE COURT:  And other folks who are here.

7           Oh, yes, there are phone people.  Good afternoon.  I

8     understand there's four people observing by phone:

9     Ms. Aspinal, Mr. Dunham, Mr. Mensing and Ms. Farley.  I do

10    understand that you won't be able to participate; it's too

11    difficult.  But you certainly are welcome to listen in.

12          So, so far, all I've done is greet the lawyers.  And I

13    was going to turn to the agenda, but my clerk tells me that

14    there are already updates to the agenda based on recent

15    continuing conversations.

16          So who would like to report on those items that are no

17    longer for me to determine?

18          MR. BONGIORNO:  I can start, your Honor.

19          THE COURT:  Okay.

20          MR. BONGIORNO:  Thank you.  Tony Bongiorno for the

21    defense group.

22          With regard to the dispute on damages, or damages

23    discovery for the next four months, we have reached agreement.

24    I think it's a very simple addition to the CMO, in addition to

25    a simple concept.

1        THE COURT:  So I don't have to discuss that at all?

2        MR. BONGIORNO:  Correct.

3        THE COURT:  The schedule.  Okay.  I'll just cross it

4   out on my notes.  Go ahead.

5        MR. BONGIORNO:  And we just agreed that section 5A

6   would read, nonsite-specific damages, period, full stop --

7   semicolon full stop.

8        And then with regard to the CMO, Mr. Riccardulli or

9   Mr. -- CMO for marathon disclosures, Mr. Riccardulli and

10  Mr. Axline, I think, just ironed that out.

11       MR. AXLINE:  We may have, but before we get to that,

12  your Honor, I did want to put on the record the damages

13  agreement that we reached was based upon a meet-and-confer just

14  before the status conference where we agreed to the language of

15  the CMO, based upon the list of potential topics that

16  Mr. Riccardulli sent to us on Monday, which we thought more

17  reasonable.  And we have agreed to continue meeting and

18  conferring, even after a written discovery is served.

19       And the defendants have agreed that they are not

20  intending to serve us with unlimited, even written discovery.

21  So they agreed that they would allow me to put that on the

22  record, which I'm doing now.

23       THE COURT:  Okay.  With respect to CMO 4, who wants to

24  speak?

25       MR. AXLINE:  I'll go ahead and start, since I'm

1    standing, and Steve can correct me if I get it wrong.

2         CMO 4, as you know, is the information in the

3    Commonwealth's view that's going to allow us to -- help allow

4    us to complete our list of sites where releases occur, releases

5    of MTBE.  We have a problem, because a number of those releases

6    occurred prior to 1996, when they first began testing for MTBE.

7    So there's a black hole for the Commonwealth there in terms of

8    was MTBE in the gas when the release occurred or not?  We're

9    very interested in getting what the defendants have on that

10   topic, and the CMO 4 declarations will hopefully get us what

11   they have on that topic.

12        The defendants' concern is that before they signed a

13   declaration, they need time to triple check everything and make

14   sure the declaration is correct.  So I think what we agreed to

15   was that the defendants would begin providing information on a

16   rolling basis, but not through declarations, but for the

17   defendants who have been previously named in MTBE litigation

18   and been through this rodeo before, they're going to provide

19   the information, they're going to provide their initial

20   responses, by November 1st.

21        For the defendants who are new to the rodeo, they're

22   going to provide their initial responses December 1st.  And

23   then everybody will provide their declarations tying things up

24   in a nice bow hopefully December 31st.  So I think that's

25   the --

1          THE COURT:  Mr. Riccardulli, is that an accurate

2     representation with the agreement?

3          MR. RICCARDULLI:  It is, your Honor, with a couple

4     extra points for the record.  Between the date of the

5     defendants' initial providing of the November 1st or

6     December 1st, during that time, between then and when the

7     declarations are signed, we understood and discussed that the

8     defense would have the ability to supplement that information

9     as well.  So it wasn't just a matter of confirming that those

10    initial productions were accurate, but there is an ability to

11    supplement.  Folks may still be trying to wrap up their

12    investigations and due diligence during that time period.

13         Additionally, again, just for the record, many

14    defendants have already answered interrogatory responses served

15    by the Commonwealth that provide information related to -- in

16    some of its readily available lists of where MTBE sites have

17    been detected and other information regarding the movement of

18    gasoline within the Commonwealth.  So the information is

19    already being provided by at least some defendants in advance

20    of this November 1st date.  So that's already underway.

21         THE COURT:  So, once again, I don't need to discuss

22    the topic of CMO 4 declarations any further today, right?

23         MR. BONGIORNO:  Correct.

24         THE COURT:  All right.  This is going to be the

25    shortest conference on record of all the years of this MDL,

```
 1    which is very exciting.

 2              So let's see what is left.  Okay.  Covered persons

 3    disclosure dispute.  We haven't resolved that one, right?

 4              MR. AXLINE:  I actually think we have resolved it.

 5              THE COURT:  Oh, it got shorter.  What is the

 6    resolution of that one?

 7              MR. AXLINE:  Well, the Commonwealth has assured the

 8    defendants that we are not limiting our search for responsive

 9    information to the three entities that in total were listed

10    under covered persons.  And as we said in our letter, we find

11    information, we are adding it to the covered persons list.  So

12    I think we've agreed to meeting and conferring about that.  If

13    they think there's something we're missing, they'll let us

14    know.  And if we agree, we'll add them to the list.  If we find

15    something on our own that needs to be added to the list or

16    somebody, we'll add them to the list.  So I think that issue

17    doesn't need the Court's intervention today.

18              THE COURT:  Mr. Riccardulli?

19              MR. RICCARDULLI:  Your Honor, I think that that's

20    right.  We've agreed to continue to confer.  I think what we

21    did not ask for, and I'd ask now, though, is that we do get an

22    updated covered person designation.  I know they've already

23    identified additional entities that I think they've collected

24    search documents from, so we would ask we get that.

25              THE COURT:  By when?  Let's set a date.  I need to do
```

1    this work.

2              MR. RICCARDULLI:  Two weeks, your Honor.

3              THE COURT:  Mr. Axline, is that acceptable?

4              MR. AXLINE:  Yes, your Honor.

5              THE COURT:  So that would be September 3rd.  Please

6    update your covered person by September 3rd, your covered

7    person list.  So that took care of that topic, which I just

8    crossed off.

9              The next topic -- and I think the last -- has to do

10   with the deadline for amending the complaint, whether there

11   should be any preamendment discovery.  Have we resolved that?

12             MR. BONGIORNO:  No, your Honor.

13             THE COURT:  All right.  Do you want to be heard on

14   that?  Anybody want to be heard, or do you just want to hear

15   from me?

16             MR. AXLINE:  We said what we had to say in our letter,

17   your Honor.  We're happy to respond to any --

18             MR. BONGIORNO:  Likewise, your Honor.

19             THE COURT:  I guess the only question I have is for

20   the plaintiff.  Can you be any more specific as to what you say

21   you need in terms of your unfair trade practices claim?

22   Because maybe what you need is so readily available and so

23   simple that defendants can produce it to you quickly.

24             But as a general matter, I agree with the defendants'

25   position that we really don't allow precomplaint discovery.

1   And this is peculiar here, where you're saying it's false

2   advertising to the public.  One would think you'd have a pretty

3   good handle on it.  But what is it specifically that you say

4   you need on that one claim?  Because I think you said on the

5   other claim you're ready to amend.

6          MR. AXLINE:  Yes.

7          THE COURT:  Yes, and you would do that within a month

8   from now?

9          MR. AXLINE:  Yes.

10          THE COURT:  So that would be pretty much by the end of

11   September?

12          MR. AXLINE:  Yes.

13          THE COURT:  So we don't even need to talk about that.

14   I'll set that as the date to amend the complaint tentatively

15   for one claim, but really I want one date for both.  So why

16   don't I do that after you answer the question.

17          MR. AXLINE:  The unfair trade practices claim is not

18   limited to information that was published to the public.  It

19   includes information that was shared among the defendants not

20   available to the Commonwealth that was used to promote their

21   products.

22          So, for example, if one company told another company,

23   "hey, our MTBE gasoline is the best thing since sliced bread.

24   By the way, there are no groundwater problems with it," that is

25   a communication that is important to us to be more specific in

1    our unfair trade practices claim.  We don't have access to it

2    without discovery.  So a lot --

3         THE COURT:  But do you need that information to make

4    an unfair trade practices claim?  In other words, that adds to

5    the claim, but you already have a claim, based on the public

6    information.  And so once you complete it, once you file an

7    amended pleading repleading the claim, you're entitled to that

8    discovery, all communications, whether public or private.

9         MR. AXLINE:  That is true, but we think --

10        THE COURT:  It's especially true because I just said

11   it.

12        MR. AXLINE:  Sorry, your Honor.  The specificity that

13   we're now needing to add to the complaint, however, I think it

14   is going to need to include examples of -- and I think a lot of

15   the promotion occurred between companies, and we don't have

16   that --

17        THE COURT:  You don't have to plead every intercompany

18   communication to state a claim.  That can't be the problem.  I

19   don't recall any longer the dismissal ground.  This is one that

20   I dismissed with leave to replead?

21        MR. AXLINE:  Yes.

22        THE COURT:  What was the basis for the dismissal?

23        MR. AXLINE:  Yes.

24        THE COURT:  That was the question:  What was the basis

25   for the dismissal?

1          MR. AXLINE:  The basis was we hadn't been sufficiently

2     specific in pleading the claim.  There was a discussion about

3     the distinction between fraud allegations and unfair trade

4     practices allegations and --

5          THE COURT:  All right.  So based on the public filings

6     alone, you should be able to add enough specificity to pass the

7     *Iqbal* test and proceed to discovery.  I don't think that giving

8     you prefiling discovery of these communications between

9     companies is a good precedent, frankly, to set.  I don't

10    believe in precomplaint prefiling discovery.  If you have a

11    claim, I think you now know in what way it was previously

12    deficient.  It's just a matter, I would think, of pleading now.

13    You must have some of the specifics from the public filings or

14    public statements.

15         MR. AXLINE:  Your Honor's decision also said that we

16    need to do this for each defendant.  Some of the defendants are

17    newly added, and not all of the defendants are going to have

18    the same truly public published information that we can make

19    specific allegations for those defendants on.  So we have to do

20    this defendant by defendant.  We already --

21         THE COURT:  Maybe you're both right in a certain

22    sense.  If and when you have such information, you move for

23    leave to file an amended complaint as to that particular

24    defendant.  That's nothing new.  It happens in many of my

25    cases.  We've now discovered that there was a defendant we

1    hadn't previously named who was there on the day of the

2    incident and who was involved in the incident.  We want to add

3    a person or defendant to our case, and usually the answer is,

4    sure.

5             So I still think that you should be able to replead

6    the unfair trade practices claim as a general matter against

7    some number of defendants pretty much at the same time that you

8    do the insurance claim so that they're both done at once.  And

9    then as things proceed, if you add a defendant, you add a

10   defendant.  You move for leave to amend and you do it.  There

11   are cases with nine amended complaints.  It's not pretty, but

12   it works out.

13            MR. AXLINE:  Understood, your Honor.

14            THE COURT:  I don't want to hold off this initial

15   repleading response to the Court's decision while you take

16   months of discovery.  I don't think that's right.  As I said,

17   it's a bad precedent.

18            MR. AXLINE:  Can I request, then, that we amend our

19   suggestion of the date for filing the amended complaint, since

20   we are now going to have to add specificity on this claim?

21            THE COURT:  Yes.

22            MR. AXLINE:  For an additional 30 days?

23            THE COURT:  Yes.  And you would amend once for these

24   two claims by, say, October 23rd.

25            MR. AXLINE:  Yes.

1          THE COURT:  Which is two months from today, more or

2     less.  Okay.  So that's the date for amending.

3          And try to gather enough information so that the claim

4     passes muster and it's stated against as many defendants as you

5     can at this time.  And if you learn that other defendants

6     should be named, you'll move for leave to amend.

7          MR. AXLINE:  Thank you, your Honor.

8          THE COURT:  So I think that was the one and only

9     issue, then, that required the Court; because the new case, I

10    understand you resolved that, too, and the time to respond is

11    now September 29th.

12         So that just completed the agenda, as I said, in

13    record time, 25 minutes.

14         MR. BONGIORNO:  Congratulations.

15         THE COURT:  It took all these years for an MTBE

16    conference to last 25 minutes, but as long as you're here, I

17    should say, is there anything else anybody needs to raise?

18         Oh, wait.  Puerto Rico 2, yes?  I did have a note from

19    my clerk here that with respect to Puerto Rico 2, the plaintiff

20    has made a motion to consolidate Puerto Rico 2 with Puerto

21    Rico 1.  And I'm told that there is a briefing schedule.

22    Defendants oppose that, and I thought, why do we need briefing?

23    Why can't we just discuss that issue as an agenda item?

24         So what's the reason not to consolidate the two?  Can

25    somebody from the defendants' side explain to me why I needed a

1    motion?

2              MR. RICCARDULLI:  Yes, your Honor, I can try.  Counsel

3    that normally would have addressed Puerto Rico is not here

4    because it wasn't on the agenda.

5              But at least one of the initial concerns that the

6    defendants have is that with the statute of limitations issue

7    being unresolved, that we are concerned about -- and you've got

8    another motion.  The original motion where this came up

9    obviously triggers the SOL filing dates.  And we are concerned

10   about, with the cases being consolidated, that this is really

11   an attempt to sort of have a relation back argument to the

12   original filing date.  And that --

13             THE COURT:  What if I assure you that that argument

14   would not be welcome?  In other words, it's just an

15   administrative convenience to consolidate the two, but it does

16   not lead to a relation back argument.  One case is filed in

17   2007; one, in 2014.  The 2014 case doesn't become the 2007

18   case.  In other words, in response to a statute of limitations

19   motion, plaintiff can argue relation back regardless of whether

20   it's consolidated or not consolidated.  So if they make such an

21   argument, they can't base it on, well, you, the Court, agreed

22   to consolidate; therefore, you must amend relation back.  That

23   would be rejected.  But they're welcome to argue, you should

24   relate back whether or not it had been consolidated.  That's

25   our argument on statute of limitations.  I don't mind them

1    making that argument.  But they can't say that's a good

2    argument because you allowed consolidation.  You will not be

3    able to make that argument.  If that's out of the way --

4           MR. RICCARDULLI:  That may resolve it, your Honor.

5    I'd like a chance to talk to our group --

6           THE COURT:  I don't --

7           MR. RICCARDULLI:  The other is issue is there's

8    parties -- there might be, again, issues with regard to parties

9    that were dismissed from Puerto Rico 1 and 2.  So there's --

10          THE COURT:  And 2?

11          MR. RICCARDULLI:  I'm sorry.  There's different

12   defendants.  Some that were dismissed in 2 are now being added

13   back in -- dismissed from 1 who are being joined in 2.  And we

14   want to make sure that, again, so it's clear as to which dates

15   and which sites are at issue.

16          THE COURT:  I think that would be clear.  And again,

17   the only argument that can't be made is, the outcome of our

18   motion is known because you agreed to consolidate.  That's the

19   only argument they give up.  They can still make arguments

20   about relation back, or generally timeliness, but not because I

21   agreed to the consolidation.

22          Do you understand what I'm saying, Mr. Axline?

23          MR. AXLINE:  I do, your Honor.

24          THE COURT:  Both of you?  You can't say, because you

25   agreed to consolidate, we win.  That argument will not be

1   accepted.

2           MR. RICCARDULLI:  And the only other issue, Judge, I

3   can flag at this time is that certain discovery was completed

4   already in Puerto Rico 1.  Obviously the island-wide claims

5   were filed, and that's the subject of the second motion.  As to

6   Puerto Rico 2, we don't want to see -- the Puerto Rico 2

7   survives a motion to dismiss and discovery gets open, that

8   we're now reopening discovery that was completed in Puerto

9   Rico --

10          THE COURT:  We only completed certain sites.

11          MR. RICCARDULLI:  Site specific, but nonsite-specific

12  was completed, right?  We took nonsite-specific discovery.

13          THE COURT:  Yes, but not the remainder of the

14  site-specific areas.  That's still to be opened in Puerto

15  Rico 1.

16          MR. RICCARDULLI:  That's true, but we don't want to

17  say that because it's a new case, Puerto Rico 2, there's

18  island-wide claims, now we're reopening claims as to the more

19  general claims they have as opposed to the specific sites.

20          THE COURT:  I will need a response to that, what you

21  just said to me, from one of the attorneys.  Did you think that

22  allowed you to reopen island-wide discovery?

23          MR. AXLINE:  I'm similarly handicapped.  I'm not the

24  attorney who briefed this, but I will give you my immediate

25  response, which is that I'm not entirely sure what he means by

```
1    island-wide discovery.  But whatever island-wide discovery is,
2    I think that if it's already been completed, we're not going to
3    redo it.  If there is more that falls into that category, it
4    would happen in Puerto Rico 2 anyway.  So my view of it is
5    we've completed the discovery for the sites that are going to
6    trial.  We're not --
7              THE COURT:  He's not talking about trial sites.  He
8    really isn't.  He's talking about, I guess, general liability
9    issues, I would call it.
10             MR. BONGIORNO:  Yes.
11             THE COURT:  I got it right.
12             MR. RICCARDULLI:  Or knowledge of the Commonwealth.
13             THE COURT:  That's right, as a whole.  Right.  In
14   other words, nothing you do with a particular release.
15             MR. AXLINE:  Understood.  But both sides, I think, are
16   going to be in Puerto Rico 2 in any event, conducting --
17             THE COURT:  Yeah, but that's his whole point.  Maybe
18   so, but you can't reopen the general liability discovery which
19   has been completed just because a second action was filed.  To
20   that extent it's redundant anyway.  I wouldn't allow redundant
21   discovery, so it doesn't allow to you reopen general liability
22   issues just because you filed a new complaint and brought in
23   new defendants.
24             MR. AXLINE:  Your Honor, I respectfully don't think
25   that general liability discovery, even in Puerto Rico 1, has
```

```
 1    been concluded.  It's been --
 2              THE COURT:  I wouldn't know.  Mr. Riccardulli said it
 3    was completed.  I wouldn't know.  What do you think is still
 4    open, Mr. Axline?  Since you say you don't agree it's
 5    concluded, what's open?
 6              MR. AXLINE:  We completed general liability discovery
 7    as relevant to the stations that are going to be tried.  But
 8    for example, we talked about in the last conference with your
 9    Honor different ways to solve statewide claims, like
10    statistical evidence.  We talked about the New Hampshire case
11    that's pending before the New Hampshire Supreme Court.  We may
12    get to that point in front of your Honor when we conduct
13    additional nonsite-specific discovery in Puerto Rico 2.  I
14    think we've always anticipated that.  That's the way New Jersey
15    was set up.  That's the way OCWD was set up.
16              We've been through this in some detail with the remand
17    orders, where the defendant said, we want discovery that
18    doesn't have to do with site-specific sites that are being sent
19    back to remain in this courtroom so we can continue that.  And
20    so I wouldn't want to be precluded from, for example,
21    conducting discovery in Puerto Rico 1 that's relevant to
22    putting on a statistical case with respect to the remainder of
23    the island.  So we're not going to duplicate discovery we've
24    already taken, but I can't predict all of the additional
25    discovery that may --
```

1          THE COURT:  I must say, this is a more interesting

2     motion than consolidation was.  This may require some briefing

3     as to whether or not indeed there are open areas for what you

4     might call general liability discovery or not, if it was

5     completed.

6          So if you can negotiate, please, the consolidation,

7     I'll allow to you brief this one, because this one may really

8     be worth my studying.  The other one truly isn't.  It's an

9     administrative convenience matter.  And I understand what the

10    original fears were, because you are were going to say because

11    you consolidated, there's automatically relation back.  We've

12    gotten rid of that.  That one, I would rather see you withdraw

13    that motion and basically resolve it on the record today.  I'd

14    allow the consolidation with the copy that's on the record.

15         This one is of more concern, because I can't know what

16    you completed and what you didn't complete and whether there

17    really are still open items, so to speak, on general liability

18    discovery, even of Puerto Rico 1.  So it doesn't matter whether

19    it's called 1 or 2, whether it's a consolidated case.  They're

20    just areas they say they haven't had a chance to discover yet,

21    such as a statistical case.

22         MR. RICCARDULLI:  Your Honor --

23         THE COURT:  Did the New Hampshire Supreme Court happen

24    upon a rule?  How long has it been up there?

25         MR. AXLINE:  It's been up there about six months, your

1    Honor.

2              THE COURT:  Since argument?

3              MR. AXLINE:  Since argument was done in --

4              MR. CONDRON:  Your Honor, Peter Condron for the

5    defense.  I believe the argument was at the end of May.

6              THE COURT:  Not that long.  In any event, maybe you

7    should resolve one, brief the other.

8              MR. RICCARDULLI:  Your Honor, again, we'd like to talk

9    to our -- we can certainly -- just, again, for the record,

10   Puerto Rico 2 is unresolved.  And your Honor may recall this,

11   but there came a time when you closed the site list in Puerto

12   Rico 1 and said, if you find additional sites, bring a lawsuit.

13   And that second lawsuit did occur.  And obviously the motions

14   that we filed were not as to the new sites -- we did not file a

15   site-specific motion.  The motion to dismiss we filed in

16   respect to Puerto Rico 2 dealt with the island-wide claims.  We

17   said, these are completely duplicative of what --

18             THE COURT:  That may be, but that doesn't answer the

19   question being raised here.  Mr. Axline just said, whether you

20   call it one or two doesn't matter.  There are open discovery

21   issues that we still would want to complete before a trial.

22             MR. RICCARDULLI:  Sure, although not before the trial

23   of the focus cases.  I assume that's what he means.

24             THE COURT:  I'm not sure.

25             MR. AXLINE:  No, that is what I mean, your Honor.

```
1              THE COURT:  That, what, you don't have to do this
2      before the trial on the individual sites, or you do?
3              MR. AXLINE:  We don't need to do this before the trial
4      on the individual sites.
5              MR. RICCARDULLI:  I think what he's talking about is
6      after the first focus site trial were completed --
7              THE COURT:  Where are we up to on that, then?  First
8      focus site trial, where are we up to?
9              MR. AXLINE:  We're waiting for your Honor's ruling on
10     pending statute of limitations motions.  And hopefully we'll
11     get to the remand issue.
12             THE COURT:  Okay.  So we're almost at the remand
13     stage?
14             MR. AXLINE:  Yes.
15             THE COURT:  Is that an issue, or that would be time to
16     do that?
17             MR. AXLINE:  Well, I would think, given our experience
18     with New Jersey and Orange County Water District, we're going
19     to be able to get that figured out pretty quickly.  But it has
20     been an issue with New Jersey and OCWD.  We've worked through a
21     number of issues --
22             THE COURT:  Okay.
23             MR. AXLINE:  -- on remand.
24             THE COURT:  You mean to get to the point of remand?
25             MR. AXLINE:  To get to the point of remand.  So the
```

1   big issue was:  Is this Court going to retain jurisdiction to

2   supervise discovery remaining?

3        THE COURT:  But having now done that twice, one would

4   think that's a known answer.

5        MR. AXLINE:  One would think.  An issue came up in

6   Orange County Water District, for example.  And I think we're

7   still waiting for an opinion from the Court on that, on the

8   question of Shell and BP and whether they're going to be part

9   of the remand order.

10       THE COURT:  Right.  Okay.  All right.  So we managed

11   to get to 33 minutes.

12       But is there anything further you want to raise?  All

13   right.  Thank you.

14       To you folks on the phone, thank you.

15       MR. BONGIORNO:  Maybe one thing.

16       THE COURT:  One more.  Mr. Bongiorno just spoke.

17       MR. BONGIORNO:  Scheduling.  Should we set another

18   conference?

19       THE COURT:  I don't know.  This was such a small

20   agenda, maybe I should wait for you to ask for one.

21       MR. BONGIORNO:  That's fine.  I didn't know your

22   practice.

23       THE COURT:  My practice was to set the next one all

24   the time, and then if you don't need it, you could write.  But

25   I'm wondering if that's the most efficient.  A lot of folks

1    travel for this and might not have, if it hadn't been done

2    quite this way.

3              So do you want to just ask for one if and when you

4    need it, or would you rather I set it, as we have always done?

5              MR. AXLINE:  I think it might be useful to set one,

6    your Honor.  We accomplished a lot today, just because --

7              THE COURT:  Because you had to be here.  That's true.

8              MR. AXLINE:  There are discovery responses flying back

9    and forth.  And this question that we've just gotten into a

10   little bit about general discovery after trial sites have been

11   completed is --

12             THE COURT:  Okay.  So when should I be looking at?

13             MR. AXLINE:  End of September, early October?

14             THE COURT:  Okay.  The week of the 5th of October is a

15   good week.  There's a criminal trial scheduled, but you know I

16   always tell you this:  Criminal trials have a way of pleading

17   out because nobody really wants to face the consequences of the

18   sentence they'll get if it doesn't, if they get convicted.  So

19   I can say 4:30, but I can move it up in the day, if it's better

20   for everybody.

21             MR. BONGIORNO:  Sorry, your Honor.  What is the day?

22             THE COURT:  I'm going to say Monday, October 5th at

23   4:30, just because it's got the least other 4:30 matters that

24   week.  Monday may not be your favorite day.  The only other one

25   that's available is Friday, equally not your favorite day for

1    the travelers.  Monday and Friday happen to be the best for me

2    that week.

3              Do you have a preference between those two?

4              MR. AXLINE:  Monday, your Honor, is better for me.

5              THE COURT:  Let's do the Monday, then.  Let's say

6    Monday, October 5th at 4:30, which I could move up if the

7    criminal trial cancels.  And we always know way in advance.

8    They do tend to plead well before the trial date.  I'll put it

9    down for 4:30 and let you know.

10             Okay.  Thank you.

11             (Adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25