

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/28/15

| | | |
|---|---|---|
| NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; THE COMMISSIONER OF THE NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; and THE ADMINISTRATOR OF THE NEW JERSEY SPILL COMPENSATION FUND, | : : : : : : | UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK IN RE MTBE LITIGATION MASTER FILE No. 1:00-1898 MDL No. 1358 (SAS) |
| Plaintiffs, | : | Civil Action No. 08 Civ. 00312 (SAS) |
| v. | : | CONSENT DECREE AS TO |
| ATLANTIC RICHFIELD CO., et al., | : : | VITOL S.A. ONLY |
| Defendants. | : : | |

This matter was opened to the Court by the Attorney General of New Jersey, John J. Hoffman, Acting Attorney General, Gwen Farley, Deputy Attorney General appearing, and Leonard Z. Kaufmann, Esq. of Cohn Lifland Pearlman Herrmann & Knopf LLP, and Scott E. Kauff, Esq. of the Law Offices of John K. Dema, P.C., and Michael Axline, Esq. of Miller Axline & Sawyer, and Tyler Wren, Esq. of Berger & Montague P.C., Special Counsel to the Attorney General, appearing, as attorneys for plaintiffs New Jersey Department of Environmental Protection ("DEP" or "Department"), the Commissioner of the New Jersey Department of Environmental Protection ("Commissioner"), and the Administrator of the New Jersey Spill Compensation Fund

1

("Administrator")(collectively, "the Plaintiffs"), and David Langlois, Esq., Sutherland Asbill & Brennan LLP, appearing as attorney for defendant Vitol S.A. ("Vitol"); and these Parties having amicably resolved their dispute before trial:

## I.   BACKGROUND

A.       The Plaintiffs initiated this action on or around June 28, 2007 by filing a complaint against Vitol and other defendants in the Superior Court of the State of New Jersey, Mercer County, Docket MER-L-1622-07, pursuant to the New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 to -23.24 ("the Spill Act"), the New Jersey Water Pollution Control Act, N.J.S.A. 58:10A-1 to -20, and the common law. The action was removed to the United States District Court for the District of New Jersey, and later assigned to the multi-district litigation in the United States District Court for the Southern District of New York, MDL No. 1358 (SAS) ("Multi-District Litigation"), for coordinated pre-trial proceedings.

B.       The Plaintiffs filed amended complaints, the latest being the Fourth Amended Complaint, which was filed on June 19, 2012 (the "Complaint").

C.       Plaintiffs, in their Complaint, seek past and future damages they allegedly have incurred and will incur as a result

of alleged widespread contamination of the waters of New Jersey by methyl tertiary butyl ether ("MTBE").

D.      Plaintiffs, in their Complaint, seek past and future costs they allegedly have incurred and will incur as a result of alleged widespread contamination of the waters of New Jersey by MTBE.

E.      Plaintiffs, in their Complaint, seek injunctive relief concerning the remediation of MTBE discharges.

F.      Vitol is a Swiss corporation with its principal place of business at Boulevard du Pontd'Arve 28,CH1205, Geneva, Switzerland.

G.      Vitol filed responsive pleadings in which it denied liability on any and all claims asserted by Plaintiffs and asserted various defenses to the allegations and claims contained in the Complaint.

H.      Vitol represents and avers that it has not owned, operated, leased, or branded any service stations in New Jersey; that it has not owned or operated any underground storage tanks in New Jersey; that it has not owned or operated any pipelines, tankers, barges used to transport gasoline; that it has not transported gasoline by rail or road in New Jersey; that it has not manufactured MTBE; that it was not the ultimate seller of any gasoline within New Jersey; that it played no role in the decision to introduce the use of MTBE into the gasoline supply

3

in New Jersey; and that it has not leaked or spilled any gasoline containing MTBE into the waters of New Jersey; but acknowledges that at relevant times (from in or about May 1976 to in or about 2007), it acted as a middle market participant in the gasoline market and in that capacity, traded gasoline that contained MTBE.

I.      The Parties to this Consent Decree recognize, and this Court by entering this Consent Decree finds, that the Parties to this Consent Decree have negotiated this Consent Decree in good faith; that the implementation of this Consent Decree will allow the Parties to this Consent Decree to avoid continued, prolonged and complicated litigation; and that this Consent Decree is fair, reasonable, and in the public interest.

        **THEREFORE**, with the consent of the Parties to this Consent Decree, it is hereby **ORDERED and ADJUDGED**:

## II.   JURISDICTION

1.      This case was removed to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1446(d) and the Energy Policy Act of 2005, 42 U.S.C. § 7545, *et seq.*, which expressly authorized the removal of legal actions related to allegations involving MTBE contamination, and then

assigned to the Southern District of New York ("S.D.N.Y.") as part of the Multi-District Litigation.

2.      For purposes of approving and implementing this Consent Decree, the Parties to this Consent Decree waive all objections and defenses they may have to the jurisdiction of this Court over the Parties and this Consent Decree.   The Parties shall not challenge the S.D.N.Y.'s jurisdiction to enforce this Consent Decree against the parties to this Consent Decree.

### III.   PARTIES BOUND

3.      This Consent Decree applies to, and is binding upon, the Plaintiffs and only the named Settling Defendants, as defined below (each, a "Party" and collectively, the "Parties").

### IV.   DEFINITIONS

4.      Unless otherwise expressly provided, terms used in this Consent Decree that are defined in the Spill Act or in the regulations promulgated under the Spill Act shall have their statutory or regulatory meaning.   Whenever the terms listed below are used in this Consent Decree, the following definitions shall apply:

"Consent Decree" shall mean this Consent Decree.

"Damages" shall mean all damages alleged in the Complaint for claims arising from discharges of MTBE into Waters

of the State, as defined below, that were reported to the Department pursuant to N.J.A.C. 7:1E-5 prior to the effective date of this Consent Decree or that occurred at any of the sites identified on the list included as Appendix A to this Consent Decree, including, but not limited to:

   a.    The Plaintiffs' costs of assessing injury to Waters of the State;

   b.    The costs of restoring the Waters of the State contaminated with MTBE to their pre-discharge quality, which, for the purpose of the Consent Decree, shall be at or below 1 part per billion;

   c.    Compensation for restoration of, the lost value of, injury to, and/or destruction of, Waters of the State;

   d.    Compensation for the treatment of well water containing MTBE to its pre-discharge condition; and

   e.    Attorneys' fees, consultants' and experts' fees, and other litigation costs.

"Damages" do not include:

   a.    Compliance, during any remediation, with any statutory or regulatory requirement that is not within this definition of damages, for example, without limitation, the mitigation of freshwater wetlands as required by N.J.A.C. 7:7A; and

6

b.   Past Cleanup and Removal Costs and Future Cleanup and Removal Costs, both as defined below.

"Day" shall mean a calendar day unless expressly stated to be a working day.  "Working day" shall mean a day other than a Saturday, Sunday, or State holiday.  In computing time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or State holiday, time shall run until the close of business of the next working day.

"Future Cleanup and Removal Costs" shall mean all direct and indirect costs the Plaintiffs will incur on or after the effective date of this Consent Decree, including oversight costs, to remediate MTBE discharges that were reported to the Department pursuant to N.J.A.C. 7:1E-5 prior to the effective date of this Consent Decree as set forth in Paragraph 28.

"MTBE" shall mean methyl tertiary butyl ether as well as tertiary butyl alcohol ("TBA") when TBA is a degradation product of MTBE in the environment or a contaminant in gasoline containing MTBE or in neat MTBE.

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper case letter.

"Past Cleanup and Removal Costs" shall mean all direct and indirect costs the Plaintiffs incurred before the effective

date of this Consent Decree, including oversight costs, to remediate MTBE discharges.

"Plaintiffs" shall mean plaintiffs DEP, the Commissioner, and the Administrator, and any successor department, agency or official.

"Section" shall mean a portion of this Consent Decree identified by a roman numeral.

"Settling Defendants" shall mean defendant Vitol S.A., Vitol, Inc., and shall also include all subsidiaries directly or indirectly 100% owned by Vitol Holding B.V., none of which are named defendants in the Complaint, successors, past and present officers, directors, and employees (each, a "Related Entity"), but only to the extent that the alleged liability of any Related Entity is based on its or his or her status and in its capacity as a Related Entity, and not to the extent that the alleged liability of the Related Entity with respect to MTBE contamination arose independently of its or his or her status and capacity as a Related Entity of Settling Defendants.

"Vitol's Representations" shall mean Settling Defendants' representation, affirmation, and declaration subject to penalties of perjury that it is true and correct that Vitol (i) has not owned, operated, leased, or branded any service stations in New Jersey; (ii) has not owned or operated any underground storage tanks in New Jersey; (iii) has not owned or operated any

8

pipelines, tankers, barges used to transport gasoline in New Jersey (other than the time charter of tankers and/or barges, to the extent that is deemed "operation" of the vessels); (iv) has not transported gasoline by rail or road in New Jersey; (v) has not manufactured MTBE; (vi) was not the ultimate retail seller of any gasoline within New Jersey; (vii) has played no role in the decision to introduce the use of MTBE gasoline in New Jersey; and (viii) that it has not leaked or spilled any gasoline containing MTBE into the waters of New Jersey.

"Waters of the State" are the ocean and its estuaries, all springs, streams and bodies of surface or ground water, whether natural or artificial, within the boundaries of the State of New Jersey or subject to its jurisdiction.

## V.   SETTLING DEFENDANTS' COMMITMENTS

5.   (a) Within fourteen (14) days after the effective date of this Consent Decree, Vitol shall pay the Plaintiffs Two Million and One Hundred Fifty Thousand Dollars ($2,150,000).

(b) Vitol shall pay the amount specified in Paragraph 5(a) above by certified check made payable to "Treasurer, State of New Jersey" or by wire transfer of immediately available funds pursuant to instructions provided by Plaintiffs. Vitol shall mail or otherwise deliver the payment and any payment invoice if previously received from Plaintiffs to, or in the event of a

wire transfer Vitol shall contemporaneously send notice of payment to:

John N. Sacco, Chief

Office of Natural Resource Restoration

Green Acres Program

New Jersey Department of Environmental Protection

501 East State Street, 1st Floor

Mail Code 501-01

Trenton, New Jersey 08625;

with a photocopy thereof to:

Section Chief,

Cost Recovery and Natural Resource Damages Section,

Division of Law,

Department of Law and Public Safety,

Richard J. Hughes Justice Complex,

25 Market Street,

P.O. Box 093,

Trenton, New Jersey 08625-0093.

## VI.  PLAINTIFFS' COVENANTS AND RELEASES

6.    (a) In consideration of, and upon receipt of, the payment required in Section V above, and except as otherwise provided in Section VII below, the Plaintiffs covenant not to sue, or to take judicial, administrative or other action against the

10

Settling Defendants for reimbursement of Past Cleanup and Removal Costs.

(b)    Notwithstanding any other provision of this Consent Decree, in consideration of, and upon receipt of, the payment required in Section V above, the Plaintiffs covenant not to sue, or to take judicial, administrative or other action against the Settling Defendants based upon Settling Defendants' liability under the (i) common law and (ii) statutory or other theories of products liability with respect to MTBE discharges into Waters of the State that occurred prior to the effective date of this Consent Decree as set forth in Paragraph 28.

7.     In further consideration of, and upon the receipt of, the payment required in Section V above, and except as otherwise provided in Section VII below, the Plaintiffs fully and forever release, covenant not to sue, and agree not to otherwise take judicial, administrative or other action against the Settling Defendants for Damages.

8.     The covenants and releases contained in this Section VI shall take effect upon the Plaintiffs receiving the payment that Settling Defendants are required to make pursuant to Section V above, in full, and in compliance with the terms of this Consent Decree.

9.      The covenants and releases contained in this Section VI extend only to Settling Defendants and not to any other defendant, party, person or entity.

10.     The covenants and releases contained in this Section VI do not pertain to any matters other than those expressly stated herein.

## VII.  PLAINTIFFS' RESERVATIONS

11.     The Plaintiffs' willingness to settle with the Settling Defendants is subject to the Settling Defendants' compliance with all remediation requirements set forth in any applicable statute, regulation, or rule, and any agreement, order or other document, including the Site Remediation Reform Act, N.J.S.A. 58:10C-1, et seq.  The Settling Defendants agree that all investigation and remediation of hazardous substances they perform under State oversight (as opposed to federal oversight) will be performed pursuant to the Site Remediation Reform Act, N.J.S.A. 58:10C-1 et seq., and the accompanying regulations and guidance notwithstanding N.J.S.A. 58:10C-27(e).  The Plaintiffs reserve their rights to enforce such compliance.  Failure to comply with any remediation requirement may give rise to additional liability for Damages to the extent that noncompliance increases the scope or duration of injuries to Waters of the State, and the Plaintiffs expressly reserve their rights to pursue the Settling Defendants for such increased scope or duration of injuries to

Waters    of    the    State    caused    by    Settling    Defendants'
noncompliance.

12.        The Plaintiffs reserve, and this Consent Decree is
without prejudice to, all rights against the Settling Defendants
concerning any matter not addressed in this Consent Decree,
including, but not limited to, the following:

     a. claims based on a Settling Defendants' failure to
       satisfy any term or provision of this Consent Decree;

     b. liability arising from the Settling Defendants being
       in any way responsible for a hazardous substance other
       than MTBE that is discharged into the Waters of the
       State;

     c. liability    for    cleanup    and    removal    costs    for
       remediation    of    discharges    not    reported    to    the
       Department pursuant to N.J.A.C. 7:1E-5 prior to the
       effective date of this Consent Decree as provided in
       Paragraph 28;

     d. liability for any future discharge or unsatisfactory
       storage or containment of any hazardous substance by a
       Settling Defendant, other than as provided for in an
       administrative consent order or as otherwise ordered
       or approved by plaintiff DEP;

     e. criminal liability;

    f. liability for any violation by a Settling Defendant of federal or state law that occurs after the effective date of this Consent Decree; and

    g. liability for any claim pending or filed on or after the effective date of this Consent Decree against the Spill Fund concerning the discharge of MTBE into the Waters of the State.

### VIII.  SETTLING DEFENDANTS' COVENANT

13. The Settling Defendants covenant not to sue or assert any claim or cause of action against the State, including any department, agency or instrumentality of the State, concerning the matters addressed in the Complaint and this Consent Decree.

14. The Settling Defendants' covenant in Paragraph 13 above does not apply where the Plaintiffs sue or take administrative action against the Settling Defendants pursuant to Section VII above.

### IX.  FINDINGS AND ADMISSIONS OF LIABILITY

15. Nothing contained in this Consent Decree shall be considered an admission by the Settling Defendants, or a finding by the Plaintiffs or by the Court, of any wrongdoing or liability on the Settling Defendants' part.

### X.  EFFECT OF SETTLEMENT AND CONTRIBUTION PROTECTION

14

16.      Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree.   The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this Consent Decree may have under applicable law.

17.      Settling Defendants expressly reserve all rights, including any right to contribution, defenses, claims, demands, and causes of action that the Settling Defendants may have concerning any matter, transaction, or occurrence against any person not a Party to this Consent Decree.

18.      When entered, this Consent Decree will constitute a judicially approved settlement within the meaning of N.J.S.A. 58:10-23.11f.a.(2)(b) and 42 U.S.C. § 9613(f)(2) for the purpose of providing contribution protection to the Settling Defendants from contribution actions related to the causes of action pled in the Complaint. The Parties agree, and by entering this Consent Decree this Court finds, that the Settling Defendants are entitled, upon fully satisfying their obligations under this Consent Decree, to protection from contribution actions or claims for matters addressed in the Complaint and this Consent Decree.

19.      In order for the Settling Defendants to obtain protection    under    N.J.S.A.    58:10-23.11f.a.(2)(b)    from

15

contribution actions or claims for matters addressed in the Complaint and this Consent Decree, the Plaintiffs published a copy of the draft Consent Decree on Plaintiffs' website and published notice of this Consent Decree in the New Jersey Register, and arranged for notice, as described in the following paragraph, to the other parties in this case and to the other potentially responsible parties in accordance with N.J.S.A. 58:10-23.11e2. Such notice included the following information:

   a.      the caption of this case;

   b.      the name of the Settling Defendants;

   c.      a summary of the terms of this Consent Decree; and

   d.      that a copy of the draft Consent Decree is available on the Plaintiffs' website.

20.       In fulfillment of N.J.S.A. 58:10-23.11e2, the Parties have provided written notice of this Consent Decree to all other parties in the case and to other potentially responsible parties by:

       a. Vitol sending a letter to liaison defense counsel and serving a copy of such letter on counsel of record in the above captioned litigation via LexisNexis File and Serve; and

       b. Vitol publishing notice in the following newspapers:

              i. Asbury Park Press;

              ii. Atlantic City Press;

              iii. Bergen Record;

16

iv. Burlington County Times;

v. New Jersey Herald;

vi. South Jersey Times; and

vii. Star Ledger; and

c. Plaintiffs distributing a copy of the New Jersey Register Notice via the Site Remediation Program's listserv which the public can access at http://nj.gov/dep/srp.

This notice is deemed compliant with the notice requirement of N.J.S.A. 58:10-23.11e2.

21. The Plaintiffs will submit this Consent Decree to the Court for entry pursuant to Paragraph 35 below unless, as a result of the notice of this Consent Decree pursuant to Paragraphs 19 and 20 above, the Plaintiffs receive information that discloses facts or considerations that indicate to Plaintiffs, in their sole discretion, that the Consent Decree is inappropriate, improper or inadequate.

22. In any subsequent administrative or judicial proceeding initiated by the Plaintiffs for injunctive relief, recovery of costs, and/or damages, or other appropriate relief not alleged in the Complaint, the Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of the entire controversy doctrine; provided, however, that nothing in this Paragraph affects the enforceability of this Consent Decree.

17

## XI.  GENERAL PROVISIONS

23.      Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim against the Spill Fund within the meaning of N.J.S.A. 58:10-23.11k or N.J.A.C. 7:1J.

24.      The Plaintiffs enter into this Consent Decree pursuant to the police powers of the State of New Jersey for the enforcement of the laws of the State and the protection of the public health and safety and the environment.  All obligations imposed upon the Settling Defendants by this Consent Decree are continuing regulatory obligations pursuant to the police powers of the State of New Jersey.

25.      No payment owed or made pursuant to this Consent Decree is intended to constitute a debt, damage claim, penalty or other claim that may be limited or discharged in a bankruptcy proceeding.

26.      This Consent Decree shall be governed and interpreted under the laws of the State of New Jersey.

27.      If any provision of this Consent Decree or the application thereof to any person or circumstance, to any extent, be invalid or unenforceable, the remainder of this Consent Decree or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby and each

18

provision of this Consent Decree shall be valid and enforced to the fullest extent permitted by law.

## XII.   EFFECTIVE DATE

28.      The effective date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court.

## XIII.   RETENTION OF JURISDICTION

29.      This Court retains jurisdiction over both the subject matter of this Consent Decree and the Parties for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms.

## XIV.   COOPERATION AND DOCUMENT RETENTION

30.      The Settling Defendants agree to make current and former employees available for interviews and to testify at or prior to trial without the need to serve subpoenas so long as Plaintiffs provide reasonable notice and pay the costs of such employees' travel for the purpose of providing testimony.  The Settling Defendants further agree to provide documents in

19

response to reasonable requests by Plaintiffs without requiring the use of a subpoena.

31.     The Settling Defendants shall preserve so long as this case is pending in the S.D.N.Y., the United States District Court for the District of New Jersey, the state courts of New Jersey, or on appeal in the federal or state courts, all data and information, including technical records, potential evidentiary documentation and contractual documents, in the Settling Defendants' possession or in the possession of their parent companies, subsidiary companies, successors, divisions, past and present officers, directors, employees, agents, accountants, contractors, or attorneys, which in any way concern the issues raised by the Complaint. However, Settling Defendants may discard back-up tapes that contain relevant information duplicated in other materials to be preserved pursuant to this Consent Decree.


## XV.  MODIFICATION

32.     This Consent Decree may be modified only by written agreement between the Parties approved by the Court.

33.     Nothing in this Consent Decree shall be deemed to alter the Court's power to enforce, supervise or approve modifications to this Consent Decree.

## XVI. ENTRY OF THIS CONSENT DECREE

34. The Settling Defendants consent to the entry of this Consent Decree without further notice after the comment period specified in Paragraphs 19 and 20 above.

35. Upon conclusion of the Plaintiffs' review of any public comment received as a result of the notice described in Paragraphs 19 and 20 above, the Plaintiffs shall promptly submit this Consent Decree to the Court for entry.

36. If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation among the Parties or third parties.

37. Within thirty days of the Plaintiffs' receipt of payment as set forth in Section V above, Plaintiffs shall request that the Court dismiss this action as to the Settling Defendants with prejudice pursuant to Fed. R. Civ. P. 41(a)(2).

## XVII. SIGNATORIES/SERVICE

38. Each undersigned representative of a Party to this Consent Decree certifies that he or she is authorized to enter into the terms and conditions of this Consent Decree, and to execute and legally bind such Party to this Consent Decree.

39.     This Consent Decree may be signed and dated in any number of counterparts, each of which shall be an original, and such counterparts shall together be one and the same Consent Decree.

40.     Settling Defendants shall identify on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on their behalf with respect to all matters arising under or relating to this Consent Decree. Settling Defendants agree to accept service in this manner, and to waive the formal service requirements set forth in Fed. R. Civ. P. 4 and/or R. 4:4-4, including service of a summons.

41.     The Parties to this Consent Decree agree that it was negotiated fairly between them at arms' length and that the final terms of this Consent Decree shall be deemed to have been jointly and equally drafted by them, and that the provisions of this Consent Decree therefore should not be construed against a Party to it on the grounds that the Party drafted or was more responsible for drafting the provision(s).

SO ORDERED this 28 day of September, 2015.

Shira A. Scheindlin, U.S.D.J.

22

NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION

By: _____
     Anthony J. Farro, Director
     Publicly Funded Site Remediation
     Site Remediation Program

Dated: _____

By: _____
     Rich Boornazian, Assistant
     Commissioner
     Natural & Historic Resources

Dated: _____

NEW JERSEY SPILL COMPENSATION FUND

By: _____
     Anthony J. Farro, Administrator
     New Jersey Spill Compensation Fund

Dated: _____

     John J. Hoffman,
     Acting Attorney General of New
     Jersey
     Attorney for Plaintiffs

By: _____
     Gwen Farley
     Deputy Attorney General

23

NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION

By: _____
Anthony J. Farro, Director
Publicly Funded Site Remediation
Site Remediation Program

Dated: _____

By: _____
Rich Boornazian, Assistant
Commissioner
Natural & Historic Resources

Dated: _____

NEW JERSEY SPILL COMPENSATION FUND

By: _____
Anthony J. Farro, Administrator
New Jersey Spill Compensation Fund

Dated: _____

John J. Hoffman,
Acting Attorney General of New
Jersey
Attorney for Plaintiffs

By: _____
Gwen Farley
Deputy Attorney General

23

Dated: _____8/17/15_____

24

**Vitol S.A.**

By: _____

David B. Fransen
Director

Dated: _____13 August 2015_____

Person or Entity Authorized to Accept Service on Behalf of
Vitol S.A. solely and exclusively with respect to this Consent
Decree and for no other purpose:
John D. Zimmerman
Secretary
Vitol, Inc.
1100 Louisiana Ave.
Suite 5500
Houston, TX 77002-5255

**With a copy to:**

David Langlois, Esq.
Sutherland Asbill & Brennan LLP
The Grace Building, 40th Floor
1114 Avenue of the Americas
New York, NY 10036-7703