UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X

:

IN RE: METHYL TERTIARY BUTYL          :
ETHER ("MTBE") PRODUCTS               :
LIABILITY LITIGATION                  :

------------------------------------------------- :

:

This document relates to:             :

:

*Commonwealth of Puerto Rico, et al. v.*   :
*Shell Oil Co., et al.*, 07 Civ. 10470     :

:

------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/1/15

**OPINION AND ORDER**

**Master File No. 1:00-1898**
**MDL 1358 (SAS)**
**M21-88**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

This is a consolidated multi-district litigation ("MDL") relating to

contamination—actual or threatened—of groundwater from various defendants'

use of the gasoline additive methyl tertiary butyl ether ("MTBE") and/or tertiary

butyl alcohol, a product formed by the breakdown of MTBE in water.  In this case,

the Commonwealth of Puerto Rico ("the Commonwealth") alleges that defendants'

use and handling of MTBE has contaminated, or threatened to contaminate

groundwater within its jurisdiction.  Familiarity with the underlying facts is

presumed for the purposes of this Order.

1

Currently before the Court is certain defendants'[1] motion for partial summary judgment on the grounds that the Commonwealth's claims as to certain trial sites are time-barred.  For the reasons stated below, the motion is DENIED in part and GRANTED in part.

## II.     BACKGROUND

Pursuant to this Court's September 15, 2014 Case Management Order, five sites were selected for the Phase I trial: Esso CO-242, Esso CO-364, Shell 3042, Texaco 800, and Total 1012.[2]  Defendants challenge Causes of Action I-V of

---

[1]      Joining the motion are:
Esso Standard Oil Co. (Puerto Rico);
Shell Western Supply and Trading Limited;
Sunoco, Inc.;
Sunoco, Inc. (R&M);
Puerto Rico Sun Oil Company LLC;
CITGO International Puerto Rico Co.;
Chevron Puerto Rico LLC;
Chevron U.S.A. Inc.;
Chevron Corporation;
Total Petroleum Puerto Rico Corp.;
Sol Puerto Rico Limited f/k/a The Shell Company (Puerto Rico) Limited;
HOVENSA LLC;
Hess Oil Virgin Islands Corp.;
ConocoPhillips Company;
Chevron Phillips Chemical Puerto Rico Core LLC.

[2]      *See* Case Management Order No. 117 (Sept. 15, 2014), at 2.

the Third Amended Complaint ("TAC")[3] at all but the Texaco 800 site.  Of the four

challenged sites, defendants allege the Commonwealth possessed actual knowledge

sufficient to trigger the statute of limitations at the Esso CO-242 and Total 1012

sites and that the Commonwealth is deemed to have knowledge sufficient to trigger

the statute of limitations at the Esso CO-364 and Shell 3042 sites.

## III.   LEGAL STANDARD

Summary judgment is appropriate where, "viewing the record in the

light most favorable to the non-moving party . . . 'there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law.'"[4]  "In

making this determination . . . we resolve all ambiguities and draw all permissible

factual inferences in favor of the party against whom summary judgment is

sought."[5]  "A fact is material if it might affect the outcome of the suit under the

governing law, and an issue of fact is genuine if the evidence is such that a

---

[3]   Causes of Action I through V in the TAC are: (I) Strict Products
Liability; (II) Public Nuisance; (III) Trespass; (IV) Negligence; and (V) Puerto
Rico Environmental Public Policy Act ("EPPA").

[4]   *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir.
2015) (quoting Fed.R.Civ.P. 56(a)) (quotations omitted).

[5]   *Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015)
(quotations omitted).

reasonable jury could return a verdict for the nonmoving party."[6]

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact."[7]  To defeat a motion for summary judgment, the non-moving party must "'do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation.'"[8]

"'The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists.'"[9] "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"[10] "'Because the statute of limitations is an affirmative defense, the defendant bears

---

[6]     *Windsor v. United States*, 699 F.3d 169, 192 (2d Cir. 2012), *aff'd*, 133 S.Ct. 2675 (2013) (quotations and alterations omitted).

[7]     *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

[8]     *Robinson*, 781 F.3d at 44 (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)).

[9]     *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (quoting *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010)).

[10]    *Crawford*, 758 F.3d at 486 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

the burden of establishing by prima facie proof that the limitations period has

expired since the plaintiff's claims accrued.'"[11]

## IV.   APPLICABLE LAW

In Puerto Rico, Article 1802 of the Civil Code, L.P.R.A.[12] section

5141, governs obligations that "arise from fault or negligence."[13]  "The statute of

limitations for these actions is one year as provided by Art. 1868 of the Civil Code,

31 L.P.R.A. sec[tion] 5298."[14][15]  In Puerto Rico, the limitations period runs from

the time the aggrieved party has "notice of the injury, plus notice of the person who

caused it."[16]  Once the defendant has established that the injury occurred more than

---

[11]     *Szymanski v. Local 3, Int'l Bhd. of Elec. Workers*, 577 Fed. App'x 52, 53 (2d Cir. 2014) (quoting *Overall v. Estate of Klotz*, 52 F.3d 398, 403 (2d Cir. 1995)).

[12]     I use the L.P.R.A. because it is readily available in translation.

[13]     *In re MTBE Prod. Liab. Litig.*, No. 07 Civ. 10470, 2013 WL 6869410, at *2 (S.D.N.Y. Dec. 30, 2013) (quoting a certified translation of *Fraguada Bonilla v. Hospital Auxilio Mutuo*, 186 D.P.R. 365 (P.R. Sup. Ct. 2012)).

[14]     *Id*.

[15]     The Commonwealth's argument that the injunctive relief requested under the EPPA claims does not fall within the statute of limitations is without merit.  I have already held that EPPA claims are subject to the one-year statute of limitations.  *See In re MTBE Prod. Liab. Litig.*, 2013 WL 6869410, at *5 (citing *In re MTBE Prod. Liab. Litig.*, 959 F. Supp. 2d 476 (S.D.N.Y. 2013)).

[16]     *Rodriguez–Suris v. Montesinos*, 123 F.3d 10, 13 (1st Cir. 1997) (quotation marks and citations omitted).

one year prior to the filing of the complaint, *i.e.*, June 12, 2006, the plaintiff "'bears the burden of proving that she lacked the requisite knowledge at the relevant times.'"[17]

Knowledge can be "true" or "deemed."[18]  True knowledge is just what it seems, "where a plaintiff is actually aware of all the necessary facts and the existence of a likelihood of a legal cause of action."[19]  Deemed knowledge is knowledge that the plaintiff may not have actually possessed but "having been put on notice as to certain facts and having exercised reasonable care regarding a potential claim, should have acquired."[20]  Finally, the statute of limitations may be tolled where the "plaintiff has proffered evidence sufficient to support a finding that representations and assurances by the defendant persuaded plaintiff to rely reasonably and delay institution of a civil action."[21]

## V.   DISCUSSION

### A.   Actual Knowledge Sites

---

[17]    *Alejandro-Ortiz v. Puerto Rico Elec. Power Auth.*, 756 F.3d 23, 27 (1st Cir. 2014) (quoting *Hodge v. Parke Davis & Co.*, 833 F.2d 6, 7 (1st Cir. 1987)).

[18]    *Rodriguez–Suris*, 123 F.3d at 14.

[19]    *Id.*

[20]    *Id.*

[21]    *Id*.

6

### 1.   Esso CO-242

The Commonwealth's Environmental Quality Board ("EQB") added CO-242 to its list of leaking underground storage tanks ("LUST List") in 1995 after being notified of a suspected gas leak by Esso Standard Oil Co. ("Esso").[22]  In 2004 and 2005, Esso submitted reports to EQB prepared by its consultants.[23]  The consultants analyzed soil and groundwater samples taken at the site.[24]  The finding of MTBE was not included in the body, figures, or tables of these reports,[25] but it was included in an attached gas chromatography report.[26]

The inclusion of the chromatography report, which the Commonwealth argues is essentially an appendix,[27] is insufficient to establish that

---

[22]    *See* Defendants' Rule 56.1 Statement in Support of Defendants' Motion for Partial Summary Judgment Based on Statute of Limitations ("Def. 56.1") ¶¶ 117-118 (citing Declaration of Michael J. Dillon ("Dillon Dec."), Exs. 10, 33).

[23]    *See* Def. 56.1 ¶¶ 120, 125 (citing Dillon Dec., Exs. 35, 37).

[24]    *See id*.

[25]    *See* Plaintiff's Rule 56.1 Counter-Statement to Certain Defendants' Motion for Partial Summary Judgment Based on Statute of Limitations ("Pl. 56.1") ¶ 77 (citing Declaration of John Gilmour ("Gilmour Dec."), Ex. 17).

[26]    *See* Def. 56.1 ¶¶ 121, 125 (citing Dillon Dec., Exs. 35, 37).

[27]    *See* The Commonwealth of Puerto Rico's Memorandum of Law in Opposition to Certain Defendants' Motion for Partial Summary Judgment Based on Statute of Limitations ("Pl. Mem.") at 31.

the Commonwealth had actual knowledge of the presence of MTBE.  The presence

of MTBE was not included in the main body of the report because it was not a

target analyte.[28]  Defendants do not dispute that the chromatograms are included

only for quality assurance purposes along with the entirety of the laboratory report

including "laboratory blanks, field blanks, trip blanks, equipment blanks, [and]

field duplicates for each sampling day."[29]  It is further undisputed that the

chromatogram reports would not ordinarily be reviewed by a case manager but

only by an EQB chemist validating the work done by Esso's consultants and only

as to the target analytes.[30]  The Commonwealth has successfully established an

issue of fact about whether it had actual knowledge of injury at this site prior to the

bar date.

### 2.    Total 1012

EQB added the Total 1012 site to its LUST List in March 2004 after

being notified of a potential gasoline release in January of that year.[31]  On May 12,

---

[28]      *See* Pl. 56.1 ¶¶ 77-81.

[29]      Pl. Mem. at 31.

[30]      *See* Pl. 56.1 ¶ 85 (citing Gilmour Dec., Ex. 6); Defendants' Response
to Plaintiffs' [sic] Rule 56.1 Counter-Statement in Opposition to Certain
Defendants' Motion for Partial Summary Judgment Based on Statute of
Limitations ("Def. Reply 56.1") ¶ 85.

[31]      *See* Def. 56.1 ¶ 134 (citing Dillon Dec., Ex. 42).

2005, EQB received a Corrective Action Plan ("CAP") from Gasolinas de Puerto

Rico Corporation/Total Petroleum Puerto Rico Corp. ("Total") indicating the

highest concentrations of MTBE to date were detected in groundwater at the site.[32]

       Defendants have sufficiently demonstrated that the Commonwealth

had both notice of the injury and notice of the tortfeasor.  This Court has

previously held that the detection of *de minimis* MTBE at a site puts the plaintiff

on notice of injury at that site.[33]  The Commonwealth now contends that mere

detection in groundwater is not proof of an injury to the "waters of the

commonwealth" within the meaning of the TAC,[34] because the "waters of the

commonwealth" are defined specifically as (1) Class SG–1 groundwater, (2) Class

SD surface water, and (3) "'source waters that could impact the quality of Class

---

[32]    *See id.* ¶¶ 141-142 (citing Dillon Dec., Exs. 44-46).  The Commonwealth contests that inclusion in the report is sufficient notice of injury because the finding was not included in the executive summary.  *See* Pl. Mem. at 37-38. Unlike the Esso CO-242 sampling reports, the finding of MTBE appears conspicuously in the body of the report, and the Commonwealth offers no reason why this was insufficient notice.  The fact that the Corrective Action Plan included statements about corrective action does not diminish this notice or make it so misleading as to toll the statute of limitations.

[33]    *See In re MTBE Prod. Liab. Litig.*, 2013 WL 6869410, at *4.

[34]    Pl. Mem. at 34-35.

9

SG–1 and/or Class SD waters.'"[35]

>To prove the existence of the injury, the Commonwealth posits, would require a "lengthy and complex" analysis by hydrogeologists about each particular site that "would be prohibitively expensive."[36]  The Commonwealth essentially argues that in order to succeed on this motion defendants must perform this complex analysis at every trial site to prove the injury and that the injury occurred before the bar date.  Puerto Rican law has no such requirement.  Absent any evidence from the Commonwealth that the injury occurred after the bar date, there is no triable issue of fact to preclude summary judgment for this site.[37]

### B.     Deemed Knowledge Sites

### 1.     Esso CO-364

On July 13, 1998, ninety gallons of gasoline were spilled during a

---

[35]     *In re MTBE Prod. Liab. Litig.*, No. 07 Civ. 10470, 2015 WL 1190048, at *1 (S.D.N.Y. Mar. 16, 2015) (quoting TAC ¶ 5).

[36]     Pl. Mem. at 39.

[37]     The Commonwealth's argument that it was misled as to the hazards of MTBE also fails.  *See* Pl. Mem. at 11-14.  Simply because the Commonwealth was allegedly misled by the statements from suppliers about the content of MTBE does not mean that the statements were misleading within the meaning of Puerto Rican law.  Once defendants establish that the injury occurred more than one year before the Complaint was filed, the plaintiff must demonstrate that it lacked notice.  The Commonwealth has failed to present any evidence that any statement was sufficiently misleading to toll the statute of limitations.

delivery at CO-364.[38]  EQB received notice of this spill and the potential for environmental damage in October 1998.[39]  EQB added the site to the LUST List sometime before March 31, 2004.[40]  Importantly, MTBE was only detected at this site in October 2006, after the bar date.[41]  From this, defendants conclude that MTBE "surely was present before that date."[42]

Defendants not only have failed to prove that the Commonwealth had knowledge of the injury prior to the bar date, they have failed to present evidence that the injury occurred before June 12, 2006.  Defendants are effectively asking the Court to draw an inference in favor of the *moving* party, when their own expert disputes that the 1998 spill is responsible for the presence of MTBE at the site.[43]  I cannot conclude as a matter of law that the statute of limitations had run prior to the filing of the Complaint.

### 2.   Shell 3042

---

[38]    *See* Def. 56.1 ¶ 144 (citing Dillon Dec., Ex. 47).

[39]    *See id.* ¶ 146 (citing Dillon Dec., Ex. 48).

[40]    *See id.* ¶ 147 (citing Dillon Dec., Ex. 49).

[41]    *See id.* ¶ 148 (citing Dillon Dec., Ex. 39).

[42]    Memorandum of Law in Support of Certain Defendants' Motion for Partial Summary Judgment Based on Statute of Limitations ("Def. Mem.") at 26.

[43]    *See* Pl. 56.1 ¶ 76 (citing Gilmour Dec., Ex. 15).

In 2002, after replacing the USTs at the site, Sol reported to EQB that benzene, toluene, ethylbenzene, and xylenes ("BTEX") and total petroleum hydrocarbons ("TPH") were detected in the sampled soil and water around the UST pit area.[44]  Upon receiving the report, EQB requested Sol prepare a characterization plan to assess the extent of potential contamination.[45]  EQB did not, however, specifically request that Sol test for the presence of MTBE.[46] Nonetheless, Sol did discover the presence of MTBE in May and August of 2005, but neglected to report this information to EQB.[47]

Defendants must show that with knowledge of these facts and through due diligence the Commonwealth would have gained actual knowledge of the injury.  Defendants have failed to meet this high standard.

The Commonwealth points out that the presence of BTEX and TPH in a soil sample does not necessarily mean that MTBE is also present; all this establishes is "that a release of petroleum occurred into or in the vicinity of the sampled water or soil."[48]  To conclude that this is sufficient to trigger the statute of

---

[44]   *See* Def. 56.1 ¶¶ 151-158 (citing Dillon Dec., Exs. 50-52).

[45]   *See id.* ¶ 159 (citing Dillon Dec., Ex. 52).

[46]   *See id.* ¶ 160 (citing Dillon Dec., Ex. 52).

[47]   *See id.* ¶ 166 (citing Dillon Dec., Ex. 5).

[48]   Pl. 56.1 ¶ 67 (citing Gilmour Dec., Ex. 12).

12

limitations would be tantamount to concluding that a claim regarding any site on the LUST List is barred because the *site* was on the list prior to the bar date. While a reasonable jury may so find, I cannot so as a matter of law.

To find that knowledge of any gasoline leak at a certain point in time necessarily put the Commonwealth on notice of the presence of MTBE requires a determination of, at least, (1) what the Commonwealth knew about MTBE and when it knew it, (2) what the Commonwealth knew about the existence of MTBE in gasoline provided by each individual gasoline supplier, (3) how a "reasonable sovereign" with the Commonwealth's resources would have interpreted that information and acted on it, and (4) how soon, with the exercise of due diligence, the Commonwealth would have been actually aware of its injury. This would require the court to impermissibly weigh the evidence.[49]

## VI.   CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is DENIED in part and GRANTED in part. The Clerk of the Court is directed to close this motion (Dkt. No. 597).

---

[49]    *See In re MTBE Prod. Liab. Litig.*, No. 04 Civ. 2389, 2007 WL 1601491, at *7 (S.D.N.Y. June 4, 2007) (reconsideration granted on other grounds) ("Some of defendants' facts are disputed, and others require assessments of weight and credibility which this Court may not decide in addressing a motion seeking summary judgment.").

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             October 1, 2015

14

**- Appearances -**

**Counsel for Plaintiff:**

John D.S. Gilmour, Esq.
Jackson Gilmour & Dobbs, P.C.
3900 Essex, Suite 700
Houston, TX 77027
(713) 355-5000

Jorge L. Flores, Esq.
Legal Counsel
Puerto Rico Department of Justice
Olimpo Street, Pda. 11
San Juan, Puerto Rico 00907

John K. Dema, Esq.
Law Offices of John K. Dema, P.C.
1236 Strand Street, Suite 103
Christiansted, St. Croix
U.S. Virgin Islands 00820

Orland H. Martinez, Esq.
Orland H. Martinez Law Offices
Centra de Seguros, Suite 413
701 Ponce de Leon Avenue
San Juan, Puerto Rico 00907

Michael Axline, Esq.
Miller Axline
1050 Fulton Avenue, Suite 100
Sacramento, CA 95825

**Liaison Counsel for Defendants, and Appearing on Behalf of Defendants:**

Peter J. Sacripanti, Esq.
James A. Pardo, Esq.
Michael J. Dillon, Esq.

McDermott Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
(212) 547-5583