```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   In Re: METHYL TERTIARY BUTYL
            ETHER ("MTBE") PRODUCTS        00 Civ. 1898 (SAS)
4           LIABILITY LITIGATION

5   ------------------------------x

6                                          New York, N.Y.
                                           October 15, 2015
7                                          3:00 p.m.

8   Before:

9            HON. SHIRA A. SCHEINDLIN

10                                         District Judge

11

12           APPEARANCES

13

14  JACKSON GILMOUR & DOBBS P.C.
            Attorneys for Plaintiff Commonwealth of Puerto Rico
15  BY:   JOHN D.S. GILMOUR
          VICTOR L. CARDENAS, JR.
16        ORLANDO MARTINEZ
          SCOTT KAUFF

17

18  SEDGWICK LLP
            Attorneys for Shell defendants
19  BY:   RICHARD E. WALLACE, JR.
          RUBEN F. REYNA

20

21  MCDERMOTT WILL & EMERY LLP
            Attorneys for ExxonMobil Defendants
22  BY:   JAMES PARDO
          MICHAEL DILLON

23

24  SANCHEZ-BETANCES, SIFRE & MUNOZ-NOYA PSC
            Attorneys for Defendant Peerless Oil & Chemicals
25  BY:   ADRIAN SANCHEZ-PAGAN
```

THOMPSON & KNIGHT LLP
     Attorneys for Defendant Petrobras America
BY:  JAMES B. HARRIS


KING & SPALDING LLC
     Attorneys for Defendants
BY:  JEREMIAH J. ANDERSON


SEPULVADO & MALDONADO, PSC
     Attorneys for Defendant Total Outre Mer
BY:  ALBENIZ COURET FUENTES


MOUND COTTON WOLLAN & GREENGRASS
     Attorneys for Trammo defendants
BY:  BARRY R. TEMKIN


Also Present:

     ROBERT WILSON
     MEGHANA SHAH
     STEPHAN DILLARD (tel.)
     LISA MEYER (tel.)
     RANDY GRAY (tel.)

1              (Case called)

2              THE COURT:  We are here today for oral argument on two

3    pending motions.  They both turn on the this question that's

4    been raised before and is being raised again about the tolling

5    rules and which case out of Puerto Rico applies.  These are

6    defense motions.

7              There is a motion in Puerto Rico I for summary

8    judgment, and two defendants, Shell Western Supply and Trading

9    and Shell International Petroleum Company Ltd., are added by

10   the third amended complaint, which was filed December 3, 2012.

11   They move for summary judgment on the basis the statute of

12   limitations had run by the filing of the third amended

13   complaint.

14             They make this argument because they say that the

15   Puerto Rico high court case of Fraguada, which was decided

16   August 13, 2012, controls and says there can't be the unlimited

17   tolling of the earlier case, Arroyo, but that going forward the

18   one-year period applies.

19             The other motion is in Puerto Rico II.  There has

20   never been a decision yet in the Puerto Rico II case.  The

21   Puerto Rico II case alleges injury of 36 new service station

22   sites.  It also requests islandwide relief similar to that

23   requested in Puerto Rico I.

24             The current motion in Puerto Rico II alleges that the

25   islandwide claims are duplicative of those that were raised in

1    Puerto Rico I and should be dismissed under the prior pending

2    action doctrine.  Defendants also say that the claims are

3    time-barred as to the Puerto Rico II defendants that were in

4    the Puerto Rico I complaint as well as the two defendants that

5    are added for the first time in Puerto Rico II.  So there are

6    two grounds to be argued.

7            Given that these are defense motions and that the

8    Puerto Rico I motions relate to Shell, would you like to begin

9    the argument, Mr. Wallace?

10           MR. WALLACE:  Thank you, your Honor, I would.  May I

11   begin with a question?  I don't want to take your time

12   rehashing the points that were presented in the papers.  Unless

13   you have questions, I presume that the chief issue that brings

14   us here today concerns the prospective application of the

15   Fraguada case.

16           THE COURT:  That's true.

17           MR. WALLACE:  Then let me start with that.  I know I'm

18   making a point that is altogether too familiar with you because

19   you have decided this issue now, as we view it, on three

20   different occasions:  Two motions to dismiss, which were

21   granted, and a motion for reconsideration.

22           It pleases me to be able to say as the first point of

23   my argument that we believe you are absolutely right and don't

24   see any reason to revisit, much less reverse, the decisions

25   that you made previously.

1          THE COURT:  Well, Mr. Wallace, it may trouble you to

2    hear, as opposed to please you to hear, that I now have doubts

3    that I was right on July 16, 2013, August 2, 2013, and December

4    30, 2013.  As I have read the developing cases coming down,

5    primarily in Puerto Rico, and the reasoning in those cases and

6    the consistency of those rulings, I now have reason to think

7    that I got it wrong and that maybe I have to revisit and vacate

8    and reverse my earlier rulings.  One question I have for you

9    is, I don't think any of them were reduced to final judgment.

10   Is that true?

11         MR. WALLACE:  To my knowledge, that's correct.

12         THE COURT:  If that's true, then under rule 54(b) this

13   Court would have power to revisit all of those rulings.

14         MR. WALLACE:  Your Honor, I'll leave it to the

15   defendants --

16         THE COURT:  Who are in those cases to talk about that,

17   right, I understand that.  But the opening is certainly there.

18   Since these motions raise the identical issue, I'm just saying

19   if I was wrong then, I have an opportunity to be right now both

20   on these motions and potentially with respect to those.  So I

21   do want to hear a full merits argument, so to speak, and not

22   have you just rely on the fact that, hey, you have ruled three

23   times, there is no need to do anything more but to say I agree

24   with myself, please sit down.

25         MR. WALLACE:  Understood.

 1              THE COURT:  That's not where I'm thinking.

 2              MR. WALLACE:  Understood.  I can appreciate that given

 3    the number of cases that have been presented, the Court would

 4    have some questions and, as you put it, perhaps doubts.  I hope

 5    that a thorough review of those cases will lead you to

 6    conclude, of course, that you were correct.

 7              I would like to begin not with the intervening cases

 8    but with Fraguada itself.  That is the only word we have from

 9    the Puerto Rico supreme court.  You may appreciate this

10    already, but I was somewhat surprised to learn myself that the

11    intermediate appellate courts in Puerto Rico have limited

12    authority, if you will.  I have asked Mr. Sanchez to be

13    prepared to address this if the Court has questions about this

14    point in particular.

15              My understanding is that the intermediate appellate

16    courts in Puerto Rico, which are creatures of relatively recent

17    origin, having been created in the '90s, are governed by a

18    judiciary act which expressly states that they do not have the

19    authority to essentially set the law in Puerto Rico, that their

20    decisions have whatever precedential effect other courts,

21    including even lower courts, in Puerto Rico choose to accord to

22    them, but they do not have stare decisis effect even in those

23    courts, much less in this court.

24              So, as we look at those intermediate appellate courts,

25    we should bear in my mind that they may be instructive, you

1    might find them useful, but you certainly are not bound by

2    them.

3              THE COURT:  I accept that I am not bound.

4              MR. WALLACE:  Correct.  The Puerto Rico supreme court

5    decision in Fraguada itself, however, is quite different in

6    that that is the controlling decision.

7              THE COURT:  For sure.

8              MR. WALLACE:  I won't belabor your interpretation of

9    that decision.  But I will say, at least this was my

10   impression, on comparing your decisions, in particular the

11   August 2013 decision on reconsideration, with all the other

12   decisions that the plaintiffs have brought before you, yours, I

13   submit, contains the most thorough, incisive, and instructive

14   analysis.

15             Many of those other decisions from the intermediate

16   appellate courts simply say, almost in passing, Fraguada shall

17   have prospective effect, and then teach us nothing more about

18   what prospective effect means.  I think Fraguada teaches us

19   that prospective effect means that the rule announced in that

20   case, as distinct from the Arroyo rule, shall apply to --

21   paraphrasing, but I think I have this close to an exact

22   quote -- all causes of action filed after the date of the

23   Fraguada decision itself in August 2012.

24             THE COURT:  Even if that were right, and I'm not sure

25   that I agree with that any longer, but assuming it were right,

1    the third amended complaint was filed December 3rd, which is

2    three and a half months later.  If there is suddenly a one-year

3    statute of limitations after the tolling ends --

4         There was tolling under Arroyo, we agree with that?

5    When Arroyo existed, there was tolling.  When Arroyo was

6    controlling, there was tolling as to after-added defendants.

7    That was the whole rule of Arroyo.  Surely you agree with that.

8         MR. WALLACE:  Honestly, I have not thought about that.

9    I'm not sure I agree.

10        THE COURT:  That's what Arroyo held.  It was tolling.

11        MR. WALLACE:  Yes, indeed, so long as the Arroyo rule

12   remained in effect.

13        THE COURT:  Correct, it was tolling.  We are in

14   agreement.  The tolling doesn't end until Fraguada is issued.

15   If Fraguada is issued August 13th, you get a year.  So, even if

16   you're right that anything filed a day after Fraguada is

17   controlled by Fraguada, this third amended complaint is good

18   because it was filed within three and a half months.  So it is

19   within the one year.  That is something that occurred to me

20   when I studied these motion.

21        I wasn't sure I was right at all because of the

22   intervening Puerto Rico cases.  But then I said, even if I was

23   right, they get a year, they were tolled until Fraguada became

24   the controlling decision.  Up to then, Arroyo tolled.  The

25   tolling can't end when it was in effect.  It has to end when

 1  Fraguada comes down, and then you get a year.

 2          MR. WALLACE:  Unless you view it this way:  In

 3  Fraguada the court abrogated the rule of Arroyo and said it

 4  shall not apply henceforth.

 5          THE COURT:  There you go, henceforth.  You're tolled

 6  until it comes down.

 7          MR. WALLACE:  Perhaps you're reading more into

 8  Fraguada than the court intended.

 9          THE COURT:  I don't think so.  Otherwise, you would

10  have an injustice.  When you read the intervening cases, there

11  is this whole question of fairness and justice.  Arroyo was in

12  effect for a while there.  You can't be barred the minute

13  Fraguada comes down.  You have to get the year at that point;

14  otherwise, there is a complete unfairness.  So I'm troubled.

15          MR. WALLACE:  Two points.  I believe that Fraguada

16  instructed courts not to apply Arroyo again after the date of

17  that decision.  And, I submit, in granting the plaintiffs this

18  tolling period based on Arroyo, you are applying Arroyo

19  contrary to Fraguada.

20          THE COURT:  I don't think so.  I would be applying

21  Fraguada if I say you have only a year.  The next case we are

22  going to turn to is the Puerto Rico II complaint filed

23  September 4th.  That actually is just over a year because

24  Fraguada comes down August 13th.  I have to have a different

25  discussion with whichever counsel is going to argue Puerto Rico

1   II.  But any way you slice it, Fraguada gives you a year and

2   you are tolled until Fraguada comes down.  So there is a real

3   problem for you, Mr. Wallace.

4       MR. WALLACE:  I do take your point.  If you hold

5   firmly to that position, I want the opportunity to think more

6   about what the import is of that construction of Fraguada.  If

7   you permit me, perhaps we might submit a short letter following

8   the hearing.  And perhaps not.  Perhaps we will agree with you

9   if we accept the premise that Fraguada gives the plaintiffs the

10  benefit of another year of tolling.

11      THE COURT:  It virtually has to, because Arroyo gave

12  you unlimited tolling, and that doesn't end until Fraguada

13  comes down.  So you have to have the year Fraguada gives you.

14  I feel very strongly about this.  Otherwise, you would have an

15  injustice.

16      What I admire about you as a lawyer is at least you

17  are open to think about what I am saying and not deciding here

18  and now.  You need to think about this idea.  You may reject

19  it, you may write a letter, you may say, gosh, she may be right

20  about that.  I don't know.  But you need to think about it.

21      MR. WALLACE:  Allow me just one more point on this

22  particular subject.  I appreciate what the Court is saying

23  about fairness.  It must be.  But Fraguada also teaches us that

24  Arroyo was inequitable, that it was unfair.

25      THE COURT:  Yes, you're right.  But it was there, on

1    the books, and everybody relied on it.  That is the inter-

2    mediate decisions that you say have little or no reasoning.

3    I'm not sure I agree with a that.  But all of them talk about

4    the fairness of reliance, which is why they say when the

5    amended complaint is filed later on, those folks have relied on

6    Arroyo and can't be punished midstream, so to speak, for their

7    fair reliance on a case from the highest court of Puerto Rico.

8         It was a supreme court case, it was controlling, and

9    everybody had an opportunity to rely on the supreme court, just

10   like we all rely on the United States Supreme Court until it

11   overrules itself, which it has been prone to do lately.  It

12   shouldn't do that, but it has on very important issues.  But

13   OK.

14        MR. WALLACE:  Then the question becomes, is there some

15   sort of grace period?

16        THE COURT:  Fraguada says one year.

17        MR. WALLACE:  I don't recall that.  I understand that

18   is your construction.  But what Fraguada tells us expressly is

19   the Arroyo rule was unfair, it was unjust, and henceforth

20   Arroyo is abrogated.

21        THE COURT:  That's right, henceforth.

22        MR. WALLACE:  Which I construe to mean from now on the

23   plaintiff doesn't get the benefit of the extended tolling

24   period that Arroyo already granted them.  This commonwealth had

25   more than a year already to add the defendants.

1         THE COURT:  But they were operating it correctly,

2    relying on Arroyo, that there was no time limit, that they

3    could, whenever they learned of it or became aware of it, they

4    could then file.  They had the right to rely on Arroyo until

5    the highest court of Puerto Rico said you no longer have that

6    right.  Then they have a year.  At least that is my view.

7         MR. WALLACE:  Understood.

8         THE COURT:  But that is only one argument.  We could

9    also go back to the other argument that those intermediate

10   courts in Puerto Rico are right:  That even if it was more than

11   a year, the Arroyo rule applies to cases that were filed before

12   Fraguada; even as they proceed over the years post-Fraguada,

13   they have a right to continue under the Arroyo rule because

14   they were filed under Arroyo.  We need to cover that, too.

15        MR. WALLACE:  As I construe the total of 19 cases the

16   plaintiffs cited, there are 5 that fit the description you just

17   provided.

18        THE COURT:  There are almost none the other way.  You

19   counted mine three times.  So you said there are five going the

20   other way.  But three were mine.  If I'm wrong once, I'm wrong

21   three times.  The other two, they really had no reasoning.

22   They didn't say a word.  They just said it's post-Fraguada, so

23   it's time-barred, and didn't explain the reasoning at all.

24   Those two are pretty weak.  And I think they were by the same

25   judge.

```
 1              Again, it was three of mine and two of one other
 2    judge, so only two judges took that position.  All the other
 3    judges who have read it said it would be fundamentally unfair
 4    for a case that was filed under the Arroyo regime to midstream
 5    come under the Fraguada regime.  Interestingly, that doesn't
 6    apply to Puerto Rico II because Puerto Rico II is a newly filed
 7    case, filed post-Fraguada.
 8              MR. WALLACE:  Absolutely.
 9              THE COURT:  That's a different story.  Are you arguing
10    the Puerto Rico II motion also?
11              MR. WALLACE:  On the Fraguada point.
12              THE COURT:  Good.  I think that is a different case.
13    That is not an amended complaint.  That is not an Arroyo filed
14    case.  That is a Fraguada filed case.  Either it is timely or
15    it is not within the one-year statute of limitations.
16              My only question on Puerto Rico is II is when the
17    commonwealth knew or should have known about those 36 new
18    sites.  If it's timely within the year, it's got nothing to do
19    with Arroyo or Fraguada; it's a statute of limitations argument
20    under a one-year statute of limitations, no problem about that.
21    But there I'm confronted with the islandwide claim.
22              MR. WALLACE:  Exactly.  That is the focus of the
23    motion.
24              THE COURT:  It doesn't talk about the 36 new claims?
25              MR. WALLACE:  I don't believe so.  I think we conceded
```

1   those --

2           THE COURT:  I thought it said if the defendants are in

3   Puerto Rico I and they are now in Puerto Rico II, even if it's

4   on new sites --

5           MR. WALLACE:  I believe that the defendants are

6   reserving the right after discovery to move for summary

7   judgment on limitations if it turns out that the evidence shows

8   the commonwealth was aware of those sites.

9           THE COURT:  Then it is barred because it was more than

10  one year.  But it is not because they were defendants in Puerto

11  Rico I?

12          MR. DILLON:  Your Honor, Michael Dillon.  One of the

13  points that we made in the Puerto Rico II motion to dismiss was

14  that inasmuch as the commonwealth claims islandwide relief,

15  they claimed that against the defendants in Puerto Rico I as

16  well.  So if you were on notice of your injury, you were also

17  on notice of the amendment.  Therefore, that islandwide relief

18  claim is time-barred in Puerto Rico II as to the original

19  defendants.

20          THE COURT:  Because you knew of it for more than a

21  year.

22          MR. DILLON:  Right.

23          THE COURT:  It has nothing to do with the Arroyo/

24  Fraguada problem, it's because it's beyond the one-year statute

25  of limitations.

1          MR. DILLON:  That's right.

2          THE COURT:  Do we have a Fraguada issue in Puerto Rico

3    II for you to talk about?

4          MR. WALLACE:  We don't really think so, for precisely

5    the reason you suggested.  The commonwealth might argue that

6    the islandwide claims in Puerto Rico II were tolled by the

7    assertion of those claims in Puerto Rico I.

8          THE COURT:  But under my interpretation, they would

9    have to lose that because it is more than one year after the

10   Fraguada decision that they filed.

11         MR. WALLACE:  Yes.  Let me say just a few more words

12   on the two cases that ruled consistent with --

13         THE COURT:  The one judge, two cases.

14         MR. WALLACE:  Well, two panels in two cases.  In one,

15   you are quite right that they didn't articulate much in the way

16   of a rationale or reasoning.  But in the Ocasio Nieves case,

17   the first of the two, the amended complaint in that case was

18   filed in May 2013.

19         THE COURT:  Give me a minute to find it.  I have notes

20   on each of those.  I want to get to that one.  I'm sorry.  Go

21   ahead.

22         MR. WALLACE:  In that case, as your notes may reflect,

23   the amended complaint --

24         THE COURT:  That's the Ocasio Nieves one?

25         MR. WALLACE:  Yes.

1          THE COURT:  Go ahead.

2          MR. WALLACE:  The amended complaint at issue was filed

3    in 2013.  That's within one year of Fraguada.  Nevertheless,

4    the court held there that the claims were timed barred.

5          THE COURT:  But it didn't consider the prospective

6    language at all.  It just said, we're applying Fraguada and

7    that's the end of it.

8          MR. WALLACE:  I think that's right fair, although it

9    would be unfair to say they didn't mention whether --

10         THE COURT:  They didn't mention it.

11         MR. WALLACE:  Right.  The other case, Cubero Aponte,

12   this was October 2014, it's against the so-called triple A, the

13   AAA.

14         THE COURT:  I've got it.

15         MR. WALLACE:  In that case, interestingly, it was the

16   commonwealth, this very party, that sought and received

17   dismissal based on Fraguada in a case where the original

18   complaint and the amended complaint were both filed before

19   Fraguada.  So, the commonwealth's position in that case must

20   have been that Fraguada applies to all questions of limitations

21   presented after the date of that decision, even where the

22   defendant was added to the case prior to Fraguada.  They would

23   go further, indeed they did go further, and obtain the benefit

24   of that argument in this other case than we submit you need to

25   go, further than you did go in the prior decisions.

1          THE COURT:  Further in what sense?

2          MR. WALLACE:  In holding that Fraguada can apply even

3     where the newly added defendant was added before the date of

4     Fraguada.

5          THE COURT:  I have that issue?

6          MR. WALLACE:  That's what the commonwealth argued.

7          THE COURT:  But I don't have that issue.

8          MR. WALLACE:  No, it's not before you.  That's why I

9     say they went further than you did before or you need to now.

10    In urging that Fraguada applies, they must have construed

11    "prospectively" to mean --

12         THE COURT:  That's quite the leap, since they didn't

13    mention the word "prospective."  Again, they just didn't do it.

14    I agree with you that you never know what a court considered in

15    the privacy of its chambers.  But the decision does not reflect

16    any consideration of that language in either the Ocasio Nieves

17    or Cubero Aponte case.

18         MR. WALLACE:  Right.  While we are still on the

19    subject of these intermediate appellate decisions post yours,

20    let me correct my earlier math.  There are three cases that we

21    previously construed as irrelevant because the original

22    complaint and the amended complaint were both filed before

23    Fraguada, and therefore it is unremarkable that the Court would

24    conclude that Fraguada did not apply.

25         THE COURT:  Correct.

1          MR. WALLACE:  But in these three cases, the Court in

2     its analysis addressed not merely the filing of the original

3     complaint but also the date when the amended complaints were

4     filed as, though there was some significance that attached to

5     that.  I think their analysis is consistent with both the

6     position we are advancing and the decisions that you made

7     previously.

8          THE COURT:  I don't think so.  I think they were just

9     saying that's such an easy case, it shouldn't detain us any

10    longer, that obviously Fraguada applies prospectively, it's

11    this, and it can't apply to what happened before it issued.  I

12    think they were just saying those are so easy, there is not

13    much to talk about.

14         MR. WALLACE:  I agree with you.  I'm not sure the

15    commonwealth does, and I'm quite sure the commonwealth did not

16    in that Cubero Aponte case.  In any event, let me reiterate

17    that these decisions, informative as they are, may be useful to

18    you in your analysis, but they do not, in our view at least,

19    constitute an intervening change of the law.  Indeed, I don't

20    think you would conclude that they constitute an intervening

21    change in the law.

22         THE COURT:  That is to say that is not a standard I

23    need to meet.  I don't have to prove an intervening change in

24    the law in order to vacate and reverse my earlier decisions,

25    which is not your argument today anyway because you are leaving

1   that to those lawyers.  But I don't need to prove that.  That

2   is not my burden.  The lawyers have to prove that in certain

3   instances, but I don't.  So that is not relevant to me.

4           A change in the law would have to come, as you said,

5   from the legislature or the highest court, not from this non-

6   binding intermediate court.  I get that.  But when you see the

7   weight of authority developing, a judge -- I say "you."  When a

8   judge sees the weight of authority developing and you see five,

9   seven, nine, whatever, cases all disagreeing with you, it's

10  like a jury.  When eleven people disagree with you, you stop

11  and think.

12          We tell that to jurors all the time:  When the

13  majority disagrees with you, you should at least stop and

14  think, could I be wrong?  That is a standard charge of ours.

15  That's what I'm doing.  I'm stopping and thinking:  You know,

16  maybe I did that too quickly and too easily and I just said

17  anything that happens after Fraguada is controlled by Fraguada;

18  but it may not be that simple because you, the party, relied on

19  Arroyo at least up until Fraguada issued, at least until then.

20          Some would argue if you are a pre-Arroyo filing there

21  is not even a one-year statute, you're just tolled forever, as

22  you were under Arroyo, and you may add parties today and it

23  wouldn't matter.  I may reach the intermediate notion that when

24  Fraguada comes down, you are on notice your tolling years are

25  over, now you get your one year; you had no reason to sue until

1     then because you were open and covered by the Arroyo ruling.

2                MR. WALLACE:  I do appreciate, of course, your

3     sensitivity to the fairness as you have described it that must

4     be accorded to the commonwealth.  But I hope you, too,

5     appreciate that, as Fraguada itself teaches us, applying the

6     Arroyo rule giving the commonwealth the benefit of tolling from

7     2007 until 2012 plus another year works an injustice as well,

8     this to the defendants.

9                THE COURT:  I'm not sure that's fair.  Arroyo

10    controlled.  Much as you might not have liked that rule, that

11    was the law of the land in Puerto Rico.

12               MR. WALLACE:  Understood.

13               THE COURT:  Whether you liked it or not, were it being

14    dealt an injustice, that was the law and everybody had a right

15    or an obligation to live under it.  What you find troubling is

16    yet another year.

17               MR. WALLACE:  Yes, exactly.

18               THE COURT:  To me, to shut it down when you had no

19    notice that you were under a limit seems unfair, too.  You had

20    no reason to act.  You had Arroyo.  You thought you were tolled

21    until you decided to add parties.  That was the law.

22               MR. WALLACE:  I do appreciate it, but a couple of

23    points to put this fairness issue in context.  Arroyo, of

24    course, applies, and Fraguada itself, only in the instance of

25    joint and several liability --

1           THE COURT:  Correct.

2           MR. WALLACE:  -- among different defendants, and it's

3    so.  In this case, for example, on the Shell motion, if you

4    were to decide that Arroyo does not apply in any respect and

5    from the date of Fraguada on there is no benefit of tolling,

6    that's how we construe it, the commonwealth would be deprived

7    of the ability, based on the time-barred defense, to assert the

8    claims against these two defendants who are allegedly jointly

9    and severally liable for several sites.  But they still have,

10   by definition, other jointly and severally liable defendants

11   responsible for the claims they assert; otherwise, we wouldn't

12   even be talking about Arroyo applying any tolling.

13          THE COURT:  I understand.  You're saying they at least

14   have one defendant, why do they need three.

15          MR. WALLACE:  Exactly.

16          THE COURT:  There is such an obvious answer to that, I

17   won't bother explaining it to you.

18          MR. WALLACE:  Let me spend just a moment or two on the

19   cases, the five cases.  I think I'm correct in saying five

20   cases --

21          THE COURT:  Oh, yes.

22          MR. WALLACE:  -- by other courts, the one in Puerto

23   Rico federal court and four intermediate appellate decisions,

24   that, to put it in shorthand, go the commonwealth's way.  I

25   believe that the federal court did not really provide any

1    analysis that is useful to you, and comparing your decisions

2    with it is hardly a fair comparison because your decisions

3    include that thoughtful analysis and they do not.

4              THE COURT:  Which one was that, by the way?

5              MR. WALLACE:  Santiago-Lampon.

6              THE COURT:  Thank you.  Hold on, I want to read it.

7    Go ahead.

8              MR. WALLACE:  Then there are these that I will

9    describe as similar in an important respect:  Davis Davis, Diaz

10   Diaz, and Lozada Maldonado.  Diaz Diaz was one of the earlier

11   ones, in September 2013.

12             THE COURT:  I see it.  Go ahead about those three.

13             MR. WALLACE:  In each of those three, I submit the

14   court conflated important terms that we believe actually

15   dictate the result here.  I have in mind the terms that

16   Fraguada used when it said that henceforth or subsequently

17   causes of action filed shall be decided in accordance with the

18   rules that case announced.

19             Causes of action.  As I construe that term, a cause of

20   action is a claim, if you prefer, that is asserted, and in the

21   instance of my clients asserted for the first time post-

22   Fraguada.  Those courts, each of them, construed the term to

23   mean something different.

24             In Diaz Diaz, for example, the court actually quoted

25   Fraguada and said that "The intention of Fraguada when stating

1   that," quote, 'hereinafter all causes of action according to

2   article 1802 shall be adjudicated in accordance with the rules

3   established herein,'" and now the Court goes on, "was to

4   establish that this rule would apply to suits for damages filed

5   after August 13th."

6          Therefore, it concluded that since no new suit had

7   been filed in that case, the fact that the amended complaint

8   was filed subsequently to Fraguada did not exempt it from the

9   Arroyo rule.  The court again construed causes of action to

10  mean suits as though Fraguada would only apply in a case such

11  as PR II, that is, a completely new suit.

12         THE COURT:  Actually, I never found a date for the

13  amended complaint in Diaz Diaz.  The complaint was 2010, but I

14  don't know that we have a date for the amended complaint.

15         MR. MARTINEZ:  Your Honor, if I may, we went into the

16  docket and found them.  The dates are the original complaint on

17  May 2010 and then the amended complaint on October 2012.

18         THE COURT:  As you can see, it wasn't in the opinion,

19  so you wouldn't have known when it was anyway.

20         MR. WALLACE:  Right.

21         THE COURT:  That would have been, within my

22  interpretation, under the year.  It was two months after

23  Fraguada.  Go ahead.

24         MR. WALLACE:  Similarly, in that Lozada Maldonado

25  case, the original complaint was 2011, the amended complaint

1    was 2013.  The court again cites Fraguada, says that causes of

2    action prosecuted on subsequent dates would be subject to

3    Fraguada, but then goes on to say that in the case before it,

4    the claim was filed before the supreme court established the

5    new doctrine.  I take it that reference to "claim" must mean

6    the suit, that is, the original complaint, because it's plain

7    from the facts that the amended complaint was filed after

8    Fraguada.

9         THE COURT:  But it may have added parties to a

10   preexisting claim.

11        MR. WALLACE:  Perhaps.  But in that event I would

12   consider that claim as asserted against the defendants to have

13   been a new cause of action.

14        THE COURT:  You are adding a parenthetical that isn't

15   there.  The claim may well have preexisted the filing of the

16   amended complaint.  What you are doing now is adding defendants

17   to a preexisting claim.

18        MR. WALLACE:  I think that is a fair construction.

19   What is the cause of action?  When was that filed?  That's what

20   Fraguada tells us determines whether Arroyo applies or

21   Fraguada.

22        THE COURT:  I think a cause of action and a claim are

23   synonymous.  It still raises the question of as against whom.

24   There is a claim, let's say, of a defective product.  The claim

25   is there.  It has one defendant.  Now it suddenly has two more.

1    But the claim existed prior to Fraguada.  Not as against the

2    two new defendants, but it existed.  It was claim three or

3    claim seven in a complaint.

4            MR. WALLACE:  That is a fair point.  Now, if we look

5    at that claim being amended to bring in new defendants, at that

6    point I submit is when the cause of action against those new

7    defendants was filed.

8            THE COURT:  For sure.

9            MR. WALLACE:  This court, I submit, was badly mistaken

10   when it construed Fraguada to mean that it only applies to

11   cases that are filed after Fraguada and not causes of action.

12   That's how I interpret that case.

13           Likewise, if you look at the Davis Davis case, it says

14   that Fraguada does not apply because the complaint was filed

15   two years earlier, in 2010.  I submit that, too, was an

16   improper construction of Fraguada.

17           Granted, insofar as I can recall, none of these cases

18   addressed the important point that you have raised, whether

19   Fraguada allows yet another year after it is decided.  I would

20   be grateful if, as you think through this, you read the

21   language at the end of Fraguada, which I take to mean the Court

22   intended that its rule would apply from that date forward in

23   all cases.

24           I understand it would help the commonwealth maybe

25   reduce some what might otherwise be considered injustice to the

1    commonwealth.  But likewise, it would work what the supreme

2    court tells us was an injustice and inequity to the defendants.

3            THE COURT:  Yes, but one that existed and that

4    everyone relied on.  It was the law of the land.  Whether it

5    was an unjust law or not, it was on the books and everybody

6    relied on it during that time.

7            Once we get to repeating ourselves, that's a bad sign.

8    I understand your arguments.  How long would you like to submit

9    this supplemental letter?  Please don't say very long.

10           MR. WALLACE:  It shouldn't take but a week for us to

11   decide in reviewing the cases whether to submit one at all.

12           THE COURT:  Next Friday, the 23rd?

13           MR. WALLACE:  Perfect.

14           THE COURT:  Maximum.

15           MR. WALLACE:  Thank you.

16           THE COURT:  Does anybody else from the defense side

17   wish to be heard before I hear from the plaintiff's lawyer.

18           MR. DILLON:  Michael Dillon.  Your Honor, only if you

19   wanted to hear more about the Puerto Rico II action or the

20   motion to dismiss.

21           THE COURT:  I do primarily with regard to the

22   islandwide claim.

23           MR. DILLON:  My question for your Honor is do you want

24   to wrap up the Shell West motion first?

25           THE COURT:  No.

1          MR. DILLON:  Your Honor, I will quickly summarize at

2    least our position on the islandwide relief sought in the

3    Puerto Rico II complaint.  The Court possesses the power to

4    dismiss relief, not just claims.  The relief sought here is

5    duplicative to the extent they seek islandwide relief, prophy-

6    lactic relief on an islandwide basis predicated on specific

7    relief sites or receptor sites.  They are seeking the same

8    thing in Puerto Rico II only in this case for 36 sites, again

9    seeking islandwide relief.

10         THE COURT:  You're saying if somebody was a defendant

11   in Puerto Rico I and is now a defendant in Puerto Rico II, that

12   defendant was already the subject of a request for islandwide

13   relief based on other sites but it's the same relief?

14         MR. DILLON:  That is certainly the case, even for new

15   defendants, your Honor.  The prior pending action doctrine

16   doesn't just apply to defendants in an original action.  What

17   the prior pending action doctrine says is that so long as there

18   are not significant differences, in other words, between the

19   claims, the relief sought, and the defendants --

20         THE COURT:  There are by definition significant

21   differences among the defendants if they weren't a defendant in

22   a lawsuit, because no one knew they were potentially liable.

23   If now they are a defendant because a new release at a new site

24   was located, there is not overlap as to those new defendants.

25         MR. DILLON:  Granted your Honor.  Except that the case

1    law informing the prior pending action doctrine says as long as

2    their interests were represented in the prior suit.

3            THE COURT:  How could they be?  They weren't a

4    potentially liable party, so how were their interests

5    represented?

6            MR. DILLON:  I think in this instance plaintiffs seek

7    islandwide relief.  That will be defended against.  Right?

8            THE COURT:  Yes.

9            MR. DILLON:  In the same action, the same relief is

10   sought, just on a smaller section of sites.  The doctrine says

11   that you don't get to seek that relief twice.

12           THE COURT:  I can see that as to the prior named

13   defendants.  I'm not sure I see it as to the newly named

14   defendants.

15           MR. DILLON:  Maybe I can say it better this way, your

16   Honor.  The prior pending action doctrine holds that the thing,

17   in this case islandwide relief, will be adjudged in the first

18   instance; therefore, it's duplicative in the second, it need

19   not be addressed.

20           THE COURT:  I don't understand how that can be so

21   against defendants who were not exposed to liability the first

22   time around.  Why should the commonwealth be precluded from

23   seeking that relief against new and different parties?

24           MR. DILLON:  Your Honor, speaking for ExxonMobil, my

25   client, who was in the initial suit --

 1               THE COURT:  I get that.

 2               MR. DILLON:  -- that is obviously not an issue for us.

 3               THE COURT:  No.

 4               MR. DILLON:  The prior pending action doctrine,

 5    however, holds that to the extent that plaintiffs' interests

 6    were represented in the first suit, and defendants are

 7    obviously defending against those claims to the extent that

 8    they are now in the second action --

 9               THE COURT:  New defendants?

10               MR. DILLON:  New defendants.  -- their interests will

11    be represented as well as in the first as to the islandwide

12    relief claim.

13               THE COURT:  OK.  Thank you.

14               Who is arguing for the plaintiffs?  Mr. Gilmour?

15               MR. GILMOUR:  John Gilmour, your Honor.  Your Honor, I

16    would like to begin, if I may, by addressing the concerns

17    regarding the two cases that don't go the commonwealth way, to

18    use the defendants' quote.

19               THE COURT:  From Puerto Rico?

20               MR. GILMOUR:  Yes, your Honor.

21               THE COURT:  OK.  Remind me of which two those are.

22               MR. GILMOUR:  Yes, your Honor.  It's Ocasio and

23    Cubero.

24               THE COURT:  Cubero Aponte.

25               MR. GILMOUR:  Yes, your Honor.

 1            THE COURT:  OK.

 2            MR. GILMOUR:  The Puerto Rico appellate court, as I

 3    understand it, has 39 justices, and they are divided into 7

 4    geographic regions, judicial regions.  These opinions all came

 5    out of the Bayamon region.  As you noted, your Honor, it is the

 6    exact same panel.  It's not just a single judge.  It's the

 7    exact same three-judge panel.

 8            Two weeks after the Cubero decision, the exact same

 9    panel decided Gonzalez Rivera, in which they did analyze Arroyo

10    versus Fraguada, and they did hold that the date of the

11    original complaint controlled and they did hold that Arroyo

12    controlled.  So they changed their mind, your Honor.

13            THE COURT:  I'm sorry.  You lost me.  So, that same

14    panel.

15            MR. GILMOUR:  That exact same panel, yes, your Honor.

16            THE COURT:  What is the name of that case?

17            MR. GILMOUR:  Gonzalez Rivera.  We provided it to the

18    Court, your Honor.  It is 2014 WL 7370134, and it was October

19    22, 2014.

20            THE COURT:  That same panel then said?

21            MR. GILMOUR:  They analyzed Fraguada versus Arroyo and

22    said that Arroyo applies.

23            THE COURT:  Give me a moment.  I had Gonzalez Rivera

24    here.  This was a case where there was a voluntary dismissal

25    based on improper service of the summons, there was a new

1  summons, and the court applies Arroyo to find a refiled claim

2  not barred because the original case was filed before Fraguada.

3         MR. GILMOUR:  Yes, your Honor.  Although we can talk

4  about Puerto Rico II after this, I just wanted to put a

5  bookmark here because this is an instance where the complaint

6  after the new summons was issued was filed post-Fraguada.  The

7  issue is that because the original complaint was pre-Fraguada,

8  Arroyo applied even though --

9         THE COURT:  So this isn't an amend complaint at all.

10        MR. GILMOUR:  This is a new complaint, your Honor,

11  yes.

12        THE COURT:  They are essentially relating it back.

13  They are saying there was improper service, here is a new

14  summons, it's a refiling, so we are going to use the earlier

15  filed date.  That's almost a relation back type argument.

16        MR. GILMOUR:  Yes, your Honor.  As we will discuss,

17  the commonwealth's position is that the vast majority of these

18  cases, and this is not disputed by the defendants, is not only

19  that five cases hold that the original complaint filing date

20  controls, it's in excess of a dozen that state that rule.

21        THE COURT:  Factually, all dozen are not on point.

22  Some of those dozen, the original complaint and the amended,

23  are before Fraguada, for example, so they don't factually fall

24  into the same pattern.

25        MR. GILMOUR:  That's correct, your Honor.  If you look

1    through the variety of cases, there are about six different

2    procedural postures that are before the judges.

3         THE COURT:  Correct.  Even in Gonzalez Rivera, is it

4    really fair to say that that same panel reversed itself?  Did

5    it say and we look back on our two decisions in Ocasio Nieves

6    and Cubero Aponte and say they are wrong?

7         MR. GILMOUR:  No, your Honor.  If I used the word

8    "reversed" --

9         THE COURT:  I don't think you did.  I'm just asking

10   you.  You are saying they took a different position but not on

11   identical facts.  I think there one filing predated Fraguada.

12   The summons was bad, they refiled it and said essentially it

13   relates back.

14         Is that what you are going stand and say, Mr. Wallace?

15         MR. WALLACE:  Yes, your Honor.  I don't read the cases

16   even involving filing a new complaint.  I think you're quite

17   right that the court simply issued a new summons to the correct

18   address.

19         THE COURT:  Correct.

20         MR. WALLACE:  None of these cases concern the issue

21   before you where cause of action is first asserted after

22   Fraguada.

23         THE COURT:  Go ahead, Mr. Gilmour.

24         MR. GILMOUR:  Your Honor, I can go through them if you

25   want, but I think the most important thing is to focus on the

1    five that are procedurally and factually similar to our case.

2          THE COURT:  Correct.

3          MR. GILMOUR:  Mr. Wallace stated that he had concern

4    about the use of the phrase "cause of action" in Fraguada and

5    afterwards.  Judge, you and I have had this discussion before.

6    I don't want to belabor the point.  But part of the challenge

7    that we all face in this case is that these cases are all in

8    Spanish.  They are being translated.

9          Early on we tried to reach agreement amongst the

10   parties to use a single translator or translation service.  We

11   were unable to reach that agreement.  So we have multiple

12   translations going back and forth.  I don't want to get into

13   the factual challenge of one translation versus another, but I

14   would say I think what we are seeing here is an issue of

15   translation.

16         What clarifies that for us is the post-Fraguada cases

17   that we have given your Honor -- again not universally, there

18   are some outliers that we discussed -- the vast majority state

19   the rule that the date of the original complaint controls

20   whether Arroyo applies or whether Fraguada applies.  It states

21   in those five that are in our favor according to defendants

22   that that is so even where the complaints filed pre-Fraguada

23   and the amended complaint is filed post-Fraguada.

24         THE COURT:  I think you gathered from my discussion

25   with Mr. Wallace that I would be troubled if five years after

1   Fraguada you file an amended complaint relying on Arroyo.  That

2   would be troubling to me.  But within that one year, as of now,

3   waiting to see what I might get in the letter, thinking about

4   Mr. Wallace's argument, I'm inclined to say you have to at

5   least get that year.  Which, frankly, covers you.  If you win,

6   you win, you don't really care how you win.  So that's that.

7         With respect to Puerto Rico II, I think we must all

8   agree that's a new case filed post-Fraguada, so it's not really

9   part of this discussion.  It's either time-barred or not time-

10  barred other than issue where there is this duplicative relief

11  and the prior pending action controls, which has nothing to do

12  with Fraguada or Arroyo, it is just unrelated.  So the Puerto

13  Rico II argument is really not an Arroyo/Fraguada argument, is

14  it?

15        MR. GILMOUR:  It is, your Honor, as far as limitations

16  is concerned.

17        THE WITNESS:  Why?

18        MR. GILMOUR:  Because under Arroyo the filing of an

19  original complaint against even, say, one co-tort feasor tolls

20  the claims against all tort feasors that are jointly and

21  severally liable, even those that are not joined in that suit.

22  Under Arroyo, the First Circuit addressed an issue in the

23  Suzuki case where there was a suit filed against two

24  defendants, it was voluntarily dismissed, it was later filed as

25  to a completely different defendant, and Arroyo was applied and

1    said that the limitations were tolled as to that later-added

2    defendant by the date of the original complaint against the

3    other two defendants.

4           THE COURT:  Even though the new case was not an

5    amended complaint, was it was a new case against a different

6    defendant, but for the same injury?

7           MR. GILMOUR:  Yes, your Honor.

8           THE COURT:  That court obviously had no Fraguada issue

9    to contend with.

10          MR. GILMOUR:  Yes, your Honor.

11          THE COURT:  That was that court's interpretation of

12   the Arroyo at the time.

13          MR. GILMOUR:  Yes, your Honor.

14          THE COURT:  I understand that.

15          MR. GILMOUR:  The commonwealth's position is that by

16   filing the initial complaint in 2007, it tolled limitations as

17   to all co-tort feasors for that injury.

18          THE COURT:  Basically ad infinitum, for eternity.

19          MR. GILMOUR:  Yes, your Honor.

20          THE COURT:  I can't believe that is a fair

21   interpretation of Fraguada, either.  Fraguada henceforth, in

22   other words, from the date of its assurance, takes effect.  The

23   real issue to me is that year given the reliance for the toll

24   period.  Fairness tells me you get a year.  To think that you

25   get in perpetuity under the Arroyo rule would make a bit of a

 1    mockery out of the Fraguada decision, which meant to eliminate

 2    Arroyo.

 3              After you get that year, then it is certainly fair to

 4    shut it down.  But it is not much of an issue in Puerto Rico II

 5    except for the duplicative relief issue.  If you found new

 6    people and the statute didn't run until you knew or should have

 7    known of them and you're timely within a year, you're OK

 8    anyway.

 9              It's the islandwide relief claim, which is not a

10    Fraguada argument.  Mr. Dillon argues the prior pending action

11    doctrine says that if your interests were represented as

12    plaintiff, and they are, and the interests of the new

13    defendants are the same as the interests of the old defendants,

14    and so they are fairly represented, you don't get to seek that

15    relief in a second action.  That's how he summarized the prior

16    pending action doctrine.

17              MR. GILMOUR:  I agree with that summary, your Honor.

18    What I would disagree with, my understanding is that defendants

19    are complaining claims versus relief.

20              THE COURT:  Yes.  He says you sought the same relief

21    in Puerto Rico I; it doesn't matter that you are adding timely

22    defendants in the sense of new sites, but you are seeking the

23    same relief that you sought in the first case and their

24    interests are protected by the original group of defendants.

25    Your interests are surely represented, you are the same

```
1    plaintiff.

2            MR. GILMOUR:  A few things, your Honor.  One, we have

3    seen in prior cases in this very MDL that the relief cannot be

4    dismissed, it's the claim.  So the conversation that we have

5    been having for some time is claim versus relief.  I would

6    argue that the prior pending action doctrine is applicable to a

7    claim, not to sought relief.  The relief is at the discretion

8    of the trial judge at the end of the day, what relief is

9    granted.

10           So I think there is certainly protection there that

11   there will not be double recovery.  In this case they say

12   islandwide relief, your Honor.  We prefer to call it nonsite-

13   specific remedies.

14           THE COURT:  I understand.

15           MR. GILMOUR:  We are looking to clean it up.  The

16   issue is that it is not going to be duplicative.  I assure you,

17   and I'm stating it on the record, we do not want to try any

18   issues twice.  To the extent the issue is in Puerto Rico I as

19   to all relevant defendants, we are done with that issue.  To

20   the extent that it is not and Puerto Rico II remains a separate

21   triable case, especially as to new defendants, then we have to

22   preserve that.  Defendants, as they have moved, have sought the

23   dismissal of the entire case or the entire claim against all

24   the defendants, which greatly prejudices the commonwealth,

25   particularly as to the 17 newly added defendants.
```

```
 1                THE COURT:  Anything further, Mr. Gilmour?

 2                MR. GILMOUR:  Not unless you have any questions.

 3                THE COURT:  What is your view of my evolving thought

 4      that once Fraguada comes down, you are subject to the end of

 5      the tolling from Arroyo but now you are getting a year?

 6                MR. GILMOUR:  Your Honor, the way that I read the

 7      cases is that there is a bright-line rule and it's the date of

 8      filing of the original complaint.  I hear you, your Honor, that

 9      you feel that there is some unfairness that that would allow

10      tolling ad infinitum.  But the Court has procedural rules in

11      place to prevent unjustice.  For example, we could not amend

12      tomorrow without seeking permission from the Court.  We would

13      have to state our bases for amending the complaint tomorrow in

14      Puerto Rico I.  Your Honor at the end of the day can agree or

15      disagree.

16                THE COURT:  When you amended Puerto Rico I on December

17      3, 2012, how did you get to do that procedurally?  Was it

18      stipulated?  Was there a contested motion?  How did you get the

19      Court's permission then?

20                MR. GILMOUR:  It was requested, your Honor.  I know it

21      was discussed in some of the case management conferences.

22      That, unfortunately, is slightly prior to my involvement in the

23      case.

24                THE COURT:  The only reason I asked is I wondered

25      whether it was contested and I wrote a decision or the
```

1   defendants just went along at that point in time.  Under Arroyo

2   they knew the argument.  I don't remember.  Do any of the

3   defense counsel remember?

4          MR. WALLACE:  As I recall it, your Honor, the

5   plaintiffs requested it in a letter exchange, and at a

6   conference and you indicated that if the defendants

7   contested --

8          THE COURT:  They could always move to dismiss.

9          MR. WALLACE:  Exactly.

10          THE COURT:  I always say that on amended complaint

11   cases.  I say there are two ways to do it procedurally:  Either

12   propose to amend or get it filed and then move to dismiss.  So

13   I don't think there is any waiver there, that's for sure.

14          With respect to your argument about protection, it

15   doesn't really apply because I didn't consider the merits of

16   this argument at that time but reserved the defendants' right

17   to move, which they now have.

18          MR. GILMOUR:  Yes, your Honor.  I mean going into the

19   future.

20          THE COURT:  I understand.  You're saying this time

21   around if we want to amend next week, they would again say it's

22   time-barred, and I would be where I am today hearing argument

23   on that issue.  Since I have always said procedurally it's the

24   same to me whether they oppose leave to amend or just move to

25   dismiss it, procedurally I have always preferred the latter:

 1    Get the thing filed, make your argument, you haven't waived

 2    anything, and I'll rule.  So that doesn't impress me as a major

 3    argument.

 4              MR. GILMOUR:  If I may, your Honor, it wouldn't have

 5    to be a time bar argument.

 6              THE COURT:  No, right.

 7              MR. GILMOUR:  The Court could simply find that it's

 8    unfair to defendants, it's prejudicial to them, etc., and deny

 9    leave to amend.  It's an entirely different legal issue than

10    tolling.

11              THE COURT:  Yes and no.  It could be a laches

12    argument, which is very similar.

13              MR. GILMOUR:  Yes, your Honor.

14              THE COURT:  It raises all the same fairness issues of

15    whether you waited too long.  I think it is two sides of the

16    same coin, but I appreciate your point.

17              I asked your response to that position.  Your response

18    is we don't like that one, either, we think we have Arroyo

19    tolling continually because our original complaint was filed

20    prior to Fraguada.

21              MR. GILMOUR:  In sum, your Honor, yes.

22              THE COURT:  Thank you.

23              Anybody else?  Mr. Dillon.

24              MR. DILLON:  Your Honor, just one point on Puerto Rico

25    II with regard to filing of a new complaint.  I know that

```
 1   several of the cases plaintiffs have cited suggest that

 2   Fraguada applies to bar new actions -- Soto Lopez, Torres

 3   Rodriguez, Ramos Miranda, and the Tartak case -- and we submit

 4   so does Fraguada itself.

 5             THE COURT:  Say that again.  You lost me.

 6             MR. DILLON:  Sure.  The order issued by the court in

 7   Fraguada also bars those prospectively, a new action.

 8             THE COURT:  The order in Fraguada?

 9             MR. DILLON:  At the end of Fraguada, your Honor.

10             THE COURT:  Says what?  I don't really know what we

11   are talking about.  It can't be right on the 36 new sites.

12   That's not joint and several, either.  Those are new sites, new

13   defendants, are they not?  Or is that a matter of old sites,

14   new defendants?  What is the 36 new sites?

15             MR. DILLON:  17 were old, your Honor.

16             THE COURT:  17 what?

17             MR. DILLON:  17 sites were old.

18             THE COURT:  They are now new defendants?

19             MR. DILLON:  They were separated and actually poured

20   back into the Puerto Rico I case.  So it is not truly 36 new

21   sites.  There were also new defendants in Puerto Rico II and

22   old defendants.

23             THE COURT:  I'm sorry.  There are sites in Puerto Rico

24   II that were in Puerto Rico I, but now they are adding

25   defendants, is that what you are saying?
```

```
 1              MR. DILLON:  That's correct.

 2              THE COURT:  That would be a joint and several issue

 3     that you would say would be controlled by Fraguada.  There are

 4     also new sites that were not in Puerto Rico I.

 5              MR. DILLON:  That's right.

 6              THE COURT:  I don't see that that can be a Fraguada

 7     issue.  OK, I understand.  There are both fact scenarios in the

 8     new complaint.

 9              MR. HARRIS:  If I might be heard very briefly on the

10     tolling grace period issue.  We will probably cover this in the

11     letter, but I think it is important to focus on the fact that

12     the rule of Fraguada was you look at when the cause of action

13     accrues and you have a year.

14              THE COURT:  I know, but it can't be in the tolled

15     year.  There was tolling in place.  That's what tolling is.

16              By the way, this has all been hashed out in class

17     action litigation.  When the class is not certified, you get

18     the year.  You know that.  When the toll is in place, the year

19     isn't running.  I don't think I want further argument.  Think

20     about the together analogy.

21              I forget the controlling case, but everybody knows it.

22     I just forget the name.  I wouldn't have forgotten ten years

23     ago, darn it.  Then, I remembered all names.  But no longer.

24     Who knows the name of that case?  Nobody?  It's a very famous

25     case.  When it was tolled, it was tolled.  Then if you don't
```

1    certify, you get the year.  Somebody will think of it.  Not

2    important.  It just shows we are all in the same shape.  Mr.

3    Pardo, even you.

4         MR. PARDO:  I'm right there with you.

5         THE COURT:  Is there anything further on this

6    argument?  Mr. Gilmour?

7         MR. GILMOUR:  Your Honor, if I might ask, I just have

8    to ask, I don't know that a letter would be required, but if

9    defendants are going to file a letter in the week, may the

10   commonwealth be afforded the opportunity to respond if it feels

11   necessary?

12        THE COURT:  Yes but.  You have already told me your

13   position.  You have already said, you're on the wrong track,

14   Judge, it's not a matter of a year or not a year, if the

15   complaint was filed pre-Fraguada, we're tolled in perpetuity,

16   that's our position.

17        I suppose you could argue alternatively, yes, we were

18   entitled to the year and then you will site that class action

19   case I can't think of and say under that analogous rule we

20   should get the year.  I can imagine what the letter will say.

21   It will be one paragraph citing one case, but that's fine.  You

22   can have it, too.

23        If you get a letter and you want to say what I just

24   said, as an alternative we get the year, please get it in the

25   at the absolute latest October 30th.  Although I don't think it

1    takes a week to write that, since I just dictated it.

2            MR. GILMOUR:  Understood.  Thank you, your Honor.

3            THE COURT:  Is now is there anything else?

4            MR. KAUFF:  Your Honor, I want to ask the Court, Mr.

5    Dillon spoke about the prior pending action arguments.

6            THE COURT:  Yes, he did.

7            MR. KAUFF:  I wanted to ask, do you want our argument

8    on that point or only on the statute of limitations aspects of

9    it?

10           THE COURT:  You mean now, your oral argument?

11           MR. KAUFF:  Right.

12           THE COURT:  Do you mean do you want to hear argument

13   now?

14           MR. KAUFF:  Correct.

15           THE COURT:  Sure, go ahead.

16           MR. KAUFF:  He went beyond the statute of limitations.

17   First, I want to point out the distinction between a claim and

18   relief as was discussed before.  But in addition, the

19   defendants, in their prior pending action doctrine argument,

20   ignored the Second Circuit's decision in Devlin, where the

21   Second Circuit said there's an exception to the prior pending

22   action doctrine.

23           THE COURT:  That exception is?

24           MR. KAUFF:  The exception is where the two cases are

25   before the same judge, that judge should consider consolidation

1    in lieu of dismissal.  It remanded that case back and the

2    court, this court, did consolidate the action.  That same

3    Devlin decision has now been followed by the Southern District

4    of New York in subsequent cases where the same judge is hearing

5    those cases.

6          In lieu of dismissal, which is what the defendants are

7    requesting, in this extreme case where we have 17 new defendant

8    and new sites, the solution here is consolidation.  That's why

9    we have a pending motion to consolidate, as your Honor

10   discussed at the last case management conference.  I just

11   wanted to bring that to the Court's attention.

12         THE COURT:  Thank you, Mr. Kauff.

13         Now is there anything further from anyone?  No.  Thank

14   you.

15         (Adjourned)

16

17

18

19

20

21

22

23

24

25