

Boston  Brussels  Chicago  Düsseldorf  Frankfurt  Houston  London  Los Angeles  Miami

Milan  Munich  New York  Orange County  Paris  Rome  Seoul  Silicon Valley  Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

James A. Pardo
Attorney at Law
jpardo@mwe.com
+1 212 547 5353

BY HAND DELIVERY AND ELECTRONIC MAIL                    October 29, 2015

The Honorable Shira A. Scheindlin
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1620
New York, New York  10007-1312

> Re:    Master File C.A. No. 1:00-1898 (SAS), M21-88, MDL No. 1358
>         *Defendants' Pre-Conference Reply Letter for November 3, 2015 Conference*

Dear Judge Scheindlin:

    Defendants respectfully submit this reply letter in advance of the November conference.

## I. *OCWD*: Entry of Final Judgment Pursuant to Federal Rule of Civil Procedure 54(b)

    ***Judgment Defendants:***  As noted previously, the Judgment Defendants (*i.e.*, the Shell and BP Defendants) believe that entry of a Rule 54(b) final judgment as to them is appropriate. However, OCWD misinterprets the Judgment Defendants' objections to the proposed "Opinion and Order" that OCWD submitted to the Court.  The Judgment Defendants were not suggesting that the Court only needs to issue an order similar to the order it issued in the City of New York case or that such a document is sufficient to confer appellate jurisdiction.  Rather, as stated in Defendants' October 1 letter to the Court, "the Court must determine independently whether its orders granting summary judgment to the Shell and BP Defendants meet Rule 54(b)'s criteria for entry of final judgment."  The Judgment Defendants do not believe it is appropriate for the parties to draft the Court's findings for it, because appellate courts take a jaundiced view of a district court "autographing" such documents prepared by the parties.  *Boston Prop. Exch. Transfer Co. v. Iantosca,* 720 F.3d 1, 7-8 (1st Cir. 2013).

    The Judgment Defendants also take issue with certain of the statements contained in OCWD's proposed opinion and order, including that the upcoming "Focus Plume" trial was intended as a "bellwether" trial; that if OCWD were successful on any appeal it would have a right to reopen discovery as to the Shell and BP Defendants' Phase 1 sites, because discovery has been closed as to those sites, and all other Phase 1 sites, for years; and that the issuance of a Rule 54(b) final judgment here would not lead to piecemeal appeals.  All are factually and legally erroneous.

The Honorable Shira A. Scheindlin
October 29, 2015
Page 2

Finally, OCWD attempts to misconstrue comments by Shell's counsel about the scope of any appeal. Shell's counsel indicated to the Court that he "can't imagine" that the Judgment Defendants, the prevailing parties in the district court, would "affirmatively" cross-appeal any adversely-decided interlocutory orders. Generally, cross-appeals by the party that prevailed in the district court are deemed unnecessary and any issues decided adversely to the prevailing party may be raised as alternative grounds for affirmance. The Judgment Defendants reserve their right to raise such issues on appeal.

In short, the Judgment Defendants support entry of a Rule 54(b) final judgment, but they do not support entry of OCWD's proposed order and opinion.

***Non-Judgment Defendants***: The District's letter avoids the compelling reasons why a Rule 54(b) order is inappropriate here. The District begins by feigning surprise that the Non-Judgment Defendants are objecting to a Rule 54(b) order. But this should be no surprise. The Non-Judgment Defendants (and the Judgment Defendants) objected to a Rule 54(b) order the first time the District raised this issue in April 2015. *See Defs.' Apr. 21, 2015 Reply Ltr.*, at 7-8 (at Ex. 1). The Non-Judgment Defendants argued—as they argued again in their October 1, 2015 letter—that the District failed to show that there was no just reason for delay, the equities did not favor a Rule 54(b) order, and a Rule 54(b) order would result in disfavored piecemeal appeals. The issue was again on the agenda for the June 2015 status conference, but *the District* opposed a Rule 54(b) order, arguing that "[a]t the [April 24] status conference, the Court indicated that an appeal of all prior rulings at this time would not be desirable." *See Pls.' June 15, 2015 Reply Ltr.*, at 3-4 (at Ex. 2). BP and Shell represented that they were meeting and conferring to try to avoid some of the very issues on which the Non-Judgment Defendants are now objecting. *See Defs.' June 10, 2015 Preconference Ltr.*, at 4 n.3 (at Ex. 3). Those efforts failed, so the District should not be surprised now that the Non-Judgment Defendants are objecting to a Rule 54(b) order.

More fundamentally, the District does not dispute that critical issues that affect the Non-Judgment Defendants will be decided by an appeal to the Second Circuit that does not involve them. Indeed, conspicuously absent from the District's letter is a statement or admission that it will not appeal the statute of limitations, OCWD Act, trespass, or nuisance rulings to the Second Circuit as part of its Rule 54(b) appeal. Defendants won these issues, and therefore the District would have to appeal them after entry of a Rule 54(b) judgment or risk a waiver argument later, as the District itself acknowledged in its June 15, 2015 Reply Letter. Although the District claims that Shell's counsel stated that Shell would not cross-appeal any issues, a prevailing party does not need to cross-appeal any issues when it is defending a judgment in the district court. It may simply assert those issues as alternative grounds for affirmance. *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 149 (5th Cir. 2010) ("'A successful party in the District Court may sustain its judgment on any ground that finds support in the record.' . . . No cross-appeal is required. . . .") (citation omitted); *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 741 (D.C. Cir. 1995) ("'Cross-appeals for the sole purpose of making an argument in support of the judgment are worse than unnecessary.'") (citations omitted). As a result, every important ruling

The Honorable Shira A. Scheindlin
October 29, 2015
Page 3

from this Court affecting the Non-Judgment Defendants may be presented to and decided by the Second Circuit in a proceeding in which they are not directly involved.

The potential ability to file an amicus brief does not remedy this glaring prejudice. Amici are given fewer words, do not get argument, and have no right to control the appeal or post-appeal process. Here, the appellate issues would be so intertwined with issues that directly affect the Non-Judgment Defendants that any limit on the Non-Judgment Defendants' participation in an appeal is both unfair and prejudicial.

As explained in Defendants' October 1, 2015 letter, the Second Circuit has rejected Rule 54(b) appeals based on the threat of prejudice just like this. *See Arlinghaus v. Ritenour*, 543 F.2d 461, 464 (2d Cir. 1976) ("determination of some issues involving the defendant against whom the complaint had been dismissed 'might result in prejudice to the other defendants who would not have had an opportunity before us to participate in the determination of those issues'" (citations omitted)). As the Second Circuit recognized, "[n]ot only would this court be required to review the same conduct twice, in defiance of the federal policy against piecemeal appeals, but our decision could have a profound effect on the appeal which [the remaining defendant] will almost certainly take from the judgment against him[.]" *Id*. By hearing the Rule 54(b) appeal, "we would, in effect, have decided the appeal [the remaining defendant] will take from the decision against him without having accorded him a right to be heard." *Id*. The District claims in passing that the *Arlinghaus* reasoning does not apply here, but it does not attempt to distinguish it. Nor can it. The prejudice identified by the Second Circuit in *Arlinghaus* is exactly the same type of prejudice the Non-Judgment Defendants face here. The inappropriateness of a Rule 54(b) appeal is more pronounced in this MDL because the second appeal would be to the Ninth Circuit, potentially creating a circuit split on the very same orders.

Remarkably, rather than explain why a Rule 54(b) order will not result in the type of piecemeal appeals that circuit courts categorically reject (and here, to different circuit courts, no less), the District embraces piecemeal appeals, apparently believing that a piecemeal appeal here will provide useful MDL-wide guidance. The District relies on the Court's 2010 Rule 54(b) ruling in *City of New York*, 2010 WL 1328249 (S.D.N.Y. April 5, 2010), for this position, but fails to note that only Exxon-related defendants remained at the time of that Rule 54(b) appeal. No other Defendants' rights were prejudiced by the Rule 54(b) appeal, which is far from the situation here. The District also forgets that there are no other California MTBE cases in the MDL or in state court at this time, so there would be no useful MDL guidance from a piecemeal appeal on California-specific issues.

Sincerely,

*James A. Pardo*

James A. Pardo


cc: All Counsel of Record by LNFS, Service on Plaintiffs' Liaison Counsel

# **EXHIBIT 1**



Boston  Brussels  Chicago  Düsseldorf  Frankfurt  Houston  London  Los Angeles  Miami

Milan  Munich  New York  Orange County  Paris  Rome  Seoul  Silicon Valley  Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Peter John Sacripanti
Chairman
psacripanti@mwe.com
+1 212 547 5583

**BY HAND DELIVERY AND ELECTRONIC MAIL**                    April 21, 2015

The Honorable Shira A. Scheindlin
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1620
New York, New York  10007-1312

> Re:     Master File C.A. No. 1:00-1898 (SAS), M21-88, MDL No. 1358
> *Defendants' Pre-Conference Reply Letter for April 24, 2015 Status Conference*

Dear Judge Scheindlin:

Defendants respectfully submit this reply letter in advance of the April 24 conference.[1]

## PLAINTIFFS' AGENDA ITEMS

**I.**     ***Commonwealth of Pennsylvania*: Initial Case Management Order**

Attached at Exhibit A is a side-by-side comparison of the parties' proposals which highlights the disputed issues.  The most substantive of those issues are discussed below.

The Site List Proposals: During the course of a meet-and-confer, Plaintiffs' counsel represented that the universe of **gasoline** release sites in the Commonwealth is roughly comparable to the *New Jersey* case – *i.e.*, several thousand sites.  However, unlike in New Jersey, reformulated gasoline was not required throughout Pennsylvania.  As such, it cannot be assumed that every gasoline release site is also an MTBE release site.  And, it is clear from meet-and-confer conversations that **Plaintiffs have no meaningful understanding of the number of sites or wells in the state that have actually been impacted by MTBE.**[2]  Despite the fact that the

---

[1] Defendants respectfully request an extension of the page limits for reply letters given the length of Plaintiffs' opening letter and Plaintiffs' inclusion of what amounts to two pre-motion letters.

[2] Plaintiffs state that they should not have to identify impacted wells because "the costs of identifying all such wells that have been impacted by MTBE is an element of the Commonwealth's damages, and not a component of the Commonwealth's discovery obligations."  *Pls.' Ltr.*  at 3.  This statement ignores Plaintiffs' allegation that "MTBE has been found throughout the Commonwealth … in both public water supply wells and private domestic wells," (*Am. Compl.* ¶ 229), and the request to recover past costs of treating such wells (*see generally Prayer for Relief*).  Defendants are justifiably asking Plaintiffs to identify such

The Honorable Shira A. Scheindlin
April 21, 2015
Page 7

*Id*. at 349-50. This is exactly what happened here. All claims for nuisance asserted by the OCDA against BP and Shell were subsumed by and merged into the Consent Judgments, and res judicata bars OCWD's belated efforts to revive such claims now in any form whatsoever.

Finally, OCWD falls far short of establishing a basis for Rule 54(b) certification, which requires the Court to make an express finding that there is "no just reason for delay." *Capitol Dist. Physician's Health Plan v. O'Higgins*, 951 F. Supp. 352, 364 (N.D.N.Y. 1997), *citing Ginett v. Computer Task Group, Inc.*, 962 F.2d 1058, 1091 (2d Cir. 1992). Nothing in the record supports "expressly determin[ing] that there is no just reason for delay" under Rule 54(b).

On the contrary, OCWD delayed some seven months in seeking Rule 54(b) certification. Although Rule 54(b) contains no precise time frame for seeking certification, a leading treatise explains: "Prudent practitioners will seek a Rule 54(b) determination promptly, and within the 28-day period allotted for alterations or amendments to 'judgments' … as prompt action… comports with the Rule 54(b) objective of permitting some piecemeal appeals where delay would be unduly harsh or unjust." *Federal Civil Rules Handbook* (2015 ed.) at p. 1091. *Cf. Bank of N.Y. v. Hoyt,* 108 F.R.D. 184, 185-86 (D.R.I. 1985) (declining to adopt "inflexible" time limit, but noting that "thumb-twiddling is itself some evidence that the disappointed suitor considers delay in seeking appellate review to be a tolerable circumstance"). OCWD proffers no reason for its lengthy delay, which alone is a sufficient basis for denial of OCWD's request.

More fundamentally, OCWD's delay is antithetical to any determination that no just reason for delay exists. In this context, the Court is to act as a "dispatcher," taking "into account judicial administrative interests as well as the equities involved." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980). Given OCWD's delay, no equities favor certification. Contrary to OCWD's assertion, it is unlikely that immediate appellate review would allow for inclusion of Shell and BP in upcoming proceedings following remand even if OCWD were somehow successful.[9] Immediate appeal is unlikely to avoid judicial hardship or have any other positive effect at the trial court level. *See Litton Indus., Inc. v. Lehman Bros.*, 1989 WL 162315, *9 (S.D.N.Y. 1989) ("The only claim of hardship alleged… is that expensive pre-trial discovery and litigation may be avoided… [but] this is not the type of hardship contemplated by Rule 54(b)").

OCWD's request is also at odds with federal judicial policy disfavoring "piecemeal litigation" – "delaying appeal is favored where 'the adjudicated and pending claims are closely related and stem from essentially the same factual allegations.'" *Cullen v. Margiotta*, 618 F.2d 226, 228 (2d Cir. 1980). Here, there is a close relationship between the Summary Judgment and the Court's prior rulings, cited in that Order, which would not be subject to appellate review if Rule 54(b) certification were granted. *See, e.g.,* 46 F. Supp. 3d at 450 n.69 (primary injury that OCWD must show to establish public nuisance is injury to the *public* rather than "special" injury to its property) (*citing In re MTBE,* 824 F.Supp.2d 524, at 539 (S.D.N.Y. 2011)); *id.* at 452 n.90

---

[9] In *City of New York*, for example, Exxon filed its notice of appeal on October 13, 2010. The Second Circuit did not issue its decision until July 26, 2013.

The Honorable Shira A. Scheindlin
April 21, 2015
Page 8

("As explained above and in my prior ruling, the District's usufructuary rights are appropriative and therefore subordinate to the state," citing *In re MTBE,* 824 F. Supp. 2d at 546-47).  In other words, OCWD cannot overcome the policy disfavoring piecemeal litigation as required in order to obtain Rule 54(b) certification.  *See Brunswick Corp. v. Sheridan*, 582 F.2d 175, 183-85 (2d Cir. 1978) (reflecting "general policy disfavoring piecemeal appeals" in reversing judgment improperly certified under Rule 54(b)).

## IV.    *Puerto Rico I & II*: Request for Briefing Schedule on Prescription

Plaintiffs' proposal regarding Defendants' prescription summary judgment motion(s) requires comment for several reasons, not the least of which is that they never raised their proposal in the parties' discussions concerning prescription and summary judgment briefing. Also missing from Plaintiffs' two-page request is that Plaintiffs are unwilling to concede that *any* site at issue in either *Puerto Rico* action is time-barred.[10]  Both of these facts inform Defendants' response to Plaintiffs' proposal.

First, with regard to Plaintiffs' request for a single summary judgment motion on prescription:  one size does not fit all.   As addressed in Defendants' opening letter, Defendant Petrobras will move for summary judgment on the grounds that this Court's ruling on the Trammo/ Vitol limitations motions requires Petrobras' dismissal.  (At least one other Defendant may join this motion.)[11]  Other Defendants have different limitations arguments, premised on different facts.  While an "omnibus" summary judgment motion (with enhanced page limits) might serve to present *certain* Defendants' arguments, all Defendants should not be required to combine disparate motions into one to ease Plaintiffs' "burden" in responding.

Second, Plaintiffs' proposed briefing schedule is entirely unrealistic and objectionable. Plaintiffs would require Defendants to file their initial brief on May 1, 2015 – a week after the conference – while also asking Defendants to merge their respective "complex" legal arguments and "myriad" facts into a single brief.  Defendants propose the following:  the remaining Defendants (*i.e.*, not Petrobras) will agree to submit an "omnibus" brief so long as the page-extension proposed by Plaintiffs is acceptable to the Court; and will submit initial papers on May 15; Plaintiffs' Response due on June 15; Defendants' Reply on June 29.  No sur-reply is warranted.[12]   As to Puerto Rico II, Defendants propose that Rule 12 motion practice proceed with Defendants' initial papers due on May 22; Plaintiffs' Responses due on June 5; and Defendants' Reply papers on June 19.

---

[10] The Court may recall directing the parties to confer to determine if "some of these motions are even necessary" and "what's barred and what's not barred."  *Jan. 15, 2015 Conf. Tr.* at 37.

[11]   As to Defendant Petrobras's motion for summary judgment, Plaintiffs have agreed to the briefing schedule proposed in Defendants' opening preconference letter.  *Defs.' Ltr. at 5*.

[12]  Plaintiffs have offered no legitimate grounds to merit a sur-reply at this juncture – the "complexity" of the issues or the possible "impact" of this Court's decision do not suffice.

# **EXHIBIT 2**



700 BROADWAY   •   NEW YORK, NY 10003
TEL. 212-558-5500   •   FAX 212-344-5461
WWW.WEITZLUX.COM

June 15, 2015

**VIA HAND DELIVERY**
**& ELECTRONIC MAIL**

The Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007-1312

  Re: <u>MDL 1358 / MTBE – June 18, 2015 Status Conference</u>

Dear Judge Scheindlin:

   Plaintiffs respectfully submit this reply letter in advance of the scheduled June 18, 2015 Status Conference.  Plaintiffs wish to address certain issues identified for the agenda.

**Defendants' Agenda Item No. 1**
  **Puerto Rico: PR MTBE II Report on Status of Rule 12 Motions**

   Subsequent to the May 7, 2015 telephonic hearing, plaintiff has engaged with various defendants in an effort to avoid unnecessary motions practice.  To wit, plaintiff, in conformity with the June 2, 2015 telephonic hearing, has submitted to the Court dismissal papers for several Shell defendants.  Plaintiff is also engaged in negotiations with two Colonial defendants and Hartree Partners LP (f/k/a Hess Energy Trading Company, LLC) concerning requests for dismissal.

   Also at the May 7, 2015 hearing, the Court explained that

   what you need to do is a kind of bill of particulars here before this defense-
   specific motion where you identify for each of the 50 the theory under which
   you are you are certainly prosecuting so you can say, Defendant So and So,
   owner/operator. … But Defendant So and So, I don't know what you call it,

Honorable Shira A. Scheindlin
June 15, 2015
Page 3

**Defendants' Agenda Item No. 2**
**OCWD:  Shell & BP Defendants' Request for Rule 54(b) Certification**

This Court already has authorized the District to ask the trial court to determine whether this Court's ruling on the Shell and BP Defendants' *res judicata* summary-judgment motion should bar continuing-nuisance causes of action that only accrued after the Consent Judgments on which the motion was based.  April 24, 2015 Trans. at 15.

As the District's 72-hour letter noted – and as the BP and Shell Defendants do not deny – "[t]he doctrine of *res judicata* does not apply to an ongoing dispute over a continuing nuisance." *Levy v. Wells Fargo Asset Securities Corp.*, 2013 WL 5786104, at * 5.  "Election of a continuing nuisance theory thus permits plaintiffs to pursue successive actions without threat of claim preclusion."  *Arcade Water Dist. v. U.S.*, 940 F.2d 1265, 1269 (9th Cir. 1991).

When the District drafted its proposed suggestion of remand, the District followed this Court's suggestion and included the *res judicata*/continuing-nuisance issue among the remanded issues.  If the issue is not remanded, the trial court may not have jurisdiction to resolve it.

During the meet-and-confer process, however, the BP and Shell Defendants refused to agree to include the *res judicata*/continuing nuisance issue in the suggestion of remand, even after the District reminded them that this Court expressly authorized the District to present the issue to the trial court.

Instead, the Shell and BP Defendants – who opposed the District's alternative request for a Rule 54(b) Judgment at the last status conference – have reversed course and now ask the Court to enter a Rule 54(b) Judgment.  *See* Defendants' June 10, 2015, pre-conference letter at 4-5.

At the status conference, the Shell and BP Defendants' counsel argued that the Court could not enter a Rule 54(b) Judgment limited to the *res judicata*/continuing-nuisance issue.  If such a Judgment is entered, the Shell and BP Defendants' counsel insisted, then an appeal necessarily would address all of this Court's rulings as to these Defendants.

After reflection and additional research, the District agrees with counsel for the BP and Shell Defendants that a Rule 54(b) Judgment would trigger an appeal of all prior rulings, not just the continuing-nuisance/*res judicata* issue.  At the status conference, the Court indicated that an appeal of all prior rulings at this time would not be desirable.  April 24, 2015 Trans. at pp. 7-10.

Remanding the continuing-nuisance issue to the trial court – as the District has requested at the Court's suggestion – would avoid an appeal of all prior rulings.  Should the Court conclude that the continuing-nuisance/*res judicata* issue should be resolved by the Second Circuit,

Honorable Shira A. Scheindlin
June 15, 2015
Page 4

however, then the District respectfully submits that the proper procedural device for presenting this discrete issue to the Circuit would be a certification pursuant to 28 U.S.C. § 1292(b), rather than a Rule 54(b) Judgment.

**Joint Agenda Item No. 2**
**Pennsylvania:  Proposed CMO on Initial Disclosures**

Defendants' 72-hour letter incorrectly "suggest[s]," that the Commonwealth of Pennsylvania (the "Commonwealth") is seeking reconsideration of the Court's April 24 bench rulings. *See* Letter from Peter Sacripanti to Hon. Shira Scheindlin, Dated June 10, 2015 at 1. The Commonwealth is seeking no such thing.  A review of the entire transcript shows that the Court focused exclusively on the timing of the Commonwealth's obligation to identify MTBE release sites.  Although the Court referenced wells, there was no discussion of the Commonwealth's substantial objections to defendants' unprecedented request that the Commonwealth identify "every potable well ... within the Commonwealth where MTBE was detected," and identify the most recent and maximum concentrations of MTBE at release sites and in wells.

As the Commonwealth previously explained, the Commonwealth does not own, operate, or even regulate "every potable well ... within the Commonwealth ...."   Requiring the Commonwealth to identify "every potable well" impacted by MTBE would obligate the Commonwealth to search out data and information not within its possession, custody or control, including from third parties not associated with the Commonwealth.  The Commonwealth also explained that identifying the extent of MTBE contamination of potable wells is a specific element of the Commonwealth's damages.  Defendants have never addressed these undisputed facts.

Defendants assert that other MDL plaintiffs were required to provide this information, but ignore the fact that plaintiffs required to provide detailed information concerning MTBE impacted wells were plaintiffs who owned, operated, regulated, and sampled such wells. The Commonwealth should not be required to create information or data not currently in its possession, and certainly not at this early stage of the litigation.  The Commonwealth has already produced readily electronic data to defendants concerning MTBE sampling of public water supply wells regulated by the Bureau of Safe Drinking Water, as well as MTBE sampling information collected by the Department of Environmental Protection's laboratory.  Defendants thus now have most of the information on wells that is in the Commonwealth's possession, custody or control.

Defendants also ignore the fact that in other MTBE cases where lists of impacted wells were provided in connection with trial sites, such lists were not provided until much later in discovery.   In 2004, for example, defendants agreed to provide substantial information concerning their ownership and remediation of stations as well as information on the distribution

# **EXHIBIT 3**

# McDermott
# Will & Emery

Boston  Brussels  Chicago  Düsseldorf  Frankfurt  Houston  London  Los Angeles  Miami

Milan  Munich  New York  Orange County  Paris  Rome  Seoul  Silicon Valley  Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Peter John Sacripanti
Chairman
psacripanti@mwe.com
+1 212 547 5583

BY HAND DELIVERY AND ELECTRONIC MAIL                    June 10, 2015

The Honorable Shira A. Scheindlin
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1620
New York, New York  10007-1312

> Re:    Master File C.A. No. 1:00-1898 (SAS), M21-88, MDL No. 1358
> *Defendants' Pre-Conference Letter for June 18, 2015 Status Conference*

Dear Judge Scheindlin:

Defendants respectfully submit this letter in advance of the June 18, 2015 conference.

## JOINT AGENDA ITEMS

**I.    *Commonwealth of Pennsylvania*: Proposed CMOs Covering Initial Disclosures**

In advance of the last status conference, held on April 24, the parties met-and-conferred regarding a CMO covering exchange of initial disclosures.  While agreement was reached on a number of issues, certain items remained in dispute, requiring the parties to submit competing proposals.  The Court addressed the disputed provisions on April 24.  Therefore, following the conference, Defendants sent Plaintiff a redline of Defendants' initial proposed CMO, which Defendants had edited to reflect all of the Court's rulings at the April conference.[1]  *See Email from A. Bongiorno to M. Axline, with Defs.' CMO Redline (May 14, 2015)* (at Ex. A).

Plaintiff responded with a redline of their own which, Defendants respectfully suggest, is an improper attempt to seek reconsideration of certain of the Court's April 24 bench rulings.  In fact, it is Plaintiff's position that the Court did not resolve the disputed CMO issues at all, but rather only intended the parties to meet and confer further.

---

[1] *See Status Conf. Tr. (Apr. 24, 2015)*, at 18-19 (ruling on Defs.' proposed Section II regarding site and well lists and MTBE data); *id.* at 20 (ruling on Pl.'s proposed Section V regarding opening of general liability discovery); *id.* at 20-25 (ruling on Pl.'s proposed Section III.C regarding subpoenas to environmental consultants); *id.* at 25-30 (ruling on Pl.'s proposed Sections III.A.9-11); *id.* at 30-33 (ruling on Defs.' proposed Sections III.A.8-12).

The Honorable Shira A. Scheindlin
June 10, 2015
Page 4

disagree—and (2) is warranted based on the evidence, that judge can issue an appropriate order. The Suggestion for Remand is not the place to decide what remedies are available. Rather, it is the place to state which causes of action the Court is suggesting be remanded for trial. Accordingly, Defendants request that declaratory relief be removed from the Suggestion of Remand.

## DEFENDANTS' AGENDA ITEMS

### I.    *Commonwealth of Puerto Rico II*: Report on Status of Rule 12 Motions

Defendants will report to the Court on the status of the Rule 12 motions discussed on the May 7th teleconference and the parties' meet-and-confer discussions regarding the need for the same.

Defendants believe that the island-wide or non-site specific claims asserted in PRII are duplicative of those same claims asserted in PRI, and are barred pursuant to either the prior pending action doctrine or the statute of limitations. Defendants have attempted to engage in a meet-and-confer with Plaintiffs to avoid unnecessary motion practice on this issue (*see Ltr. from M. Dillon to S. Kauff* (June 8, 2015), at Ex. C), but, to date, Plaintiffs have taken the position that they will not discuss this matter until after June 15, when the Commonwealth's opposition briefs are due to unrelated statute of limitations motions filed in PRI. Defendants believe that this issue should be addressed now, particularly given the June 29 deadline for filing briefs in support of Rule 12 motions directed to PR II.

Similarly, Defendants have also attempted to initiate meet-and-confer discussions with Plaintiffs in response to their "bill of particulars" served on May 22, with various Defendants having identified particular inaccuracies in this amplification of Plaintiffs' pleading. Plaintiffs have, again, stated that they will respond only "a reasonable time after" filing their opposition brief on June 15 in the separate PRI action.

### II.    *OCWD*: Shell and BP Defendants' Request for Rule 54(b) Certification

Having considered the Court's discussion of Rule 54(b) certification at the April 24, 2015 Status Conference, the Shell and BP Defendants believe that Rule 54(b) certification is the most appropriate method for resolving any perceived issues arising from the Court's September 16, 2014 Opinion and Order on the BP and Shell Defendants' res judicata summary judgment motion and join OCWD's April 16, 2015 request that the Court certify that Opinion and Order as a final judgment. *See Pl.'s April 16, 2015 Pre-Conference Ltr.*, at 5-7.[3]

---

[3] The Shell and BP Defendants have been meeting and conferring about possible agreement on procedural measures to address the issues raised by OCWD at the April 24, 2015 Status Conference. The parties are continuing to meet and confer and will inform the Court of any progress either in advance of or at the June 18 Status Conference.