UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

IN RE: METHYL TERTIARY BUTYL
ETHER ("MTBE") PRODUCTS LIABILITY
LITIGATION

----------------------------------------------------

This document relates to:

*Commonwealth of Puerto Rico, et al. v. Shell Oil Co., et al.*, 14 Civ. 01014

------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/4/15

**OPINION AND ORDER**

**Master File No. 1:00-1898
MDL 1358 (SAS)
M21-88**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.  INTRODUCTION

This is a consolidated multi-district litigation ("MDL") relating to contamination—actual or threatened—of groundwater from various defendants' use of the gasoline additive methyl tertiary butyl ether ("MTBE") and/or tertiary butyl alcohol, a product formed by the breakdown of MTBE in water. In this case, the Commonwealth of Puerto Rico ("the Commonwealth") alleges that defendants' use and handling of MTBE has contaminated, or threatens to contaminate, groundwater within its jurisdiction. Familiarity with the underlying facts is presumed for the purposes of this Order.

Currently before the Court are two motions. Certain defendants'

1

move to dismiss the Commonwealth's island-wide claims for relief on the grounds

that they are duplicative of those in the 2007 action brought by the Commonwealth

and, in any event, are time-barred.[1]   In response, the Commonwealth moves for

---

[1]      Joining the prior pending action ground are: Chevron Corporation; Chevron U.S.A. Inc.; Chevron International Oil Company, Inc.; Chevron Caribbean, Inc.; Chevron Estrella Puerto Rico, Inc.; Chevron Puerto Rico LLC; Chevron Phillips Chemical Puerto Rico Core LLC; CITGO Petroleum Corporation; CITGO Refining and Chemicals Company L.P.; CITGO International Puerto Rico Company; CITGO International Latin America, Inc. n/k/a CITGO International, Inc.; Colonial Caribbean, Inc.; Colonial Oil Industries, Inc.; ConocoPhillips Company; Esso Standard Oil Company (Puerto Rico); Exxon Mobil Corporation; Exxon Caribbean Sales, Inc.; Exxon Company USA; Exxon Mobil Sales and Supply LLC; Exxon Mobil Refining & Supply Corp.; HOVENSA LLC; Hess Oil Virgin Islands Corp.; Hartree Partners, LP f/k/a Hess Energy Trading Company, LLC; Idemitsu Apollo Corporation; Motiva Enterprises LLC; Shell Oil Company; Shell Chemical Yabucoa, Inc.; Shell International Petroleum Company Ltd.; Shell Western Supply and Trading Ltd.; Sol Puerto Rico Ltd. f/k/a Shell Company Puerto Rico Ltd.; Sunoco, Inc.; Sunoco, Inc. (R&M); Texaco Puerto Rico, Inc.; Texaco International Trader, Inc.; Total Petroleum Puerto Rico Corp.; Trammo Petroleum, Inc.; Trammo Caribbean, Inc.; Peerless Oil & Chemicals, Inc.; Petrobras America, Inc.; Puerto Rico Sun Oil Company, LLC; Vitol, S.A.; Vitol, Inc.; ENI USA R&M Co., Inc. f/k/a America Agip Company, Inc.

Joining the statute of limitations ground are: Chevron Corporation; Chevron U.S.A. Inc.; Chevron International Oil Company, Inc.; Chevron Caribbean, Inc.; Chevron Estrella Puerto Rico, Inc.; Chevron Puerto Rico LLC; Chevron Phillips Chemical Puerto Rico Core LLC; CITGO Petroleum Corporation; CITGO Refining and Chemicals Company L.P.; CITGO International Puerto Rico Company; CITGO International Latin America, Inc. n/k/a CITGO International, Inc.; Colonial Caribbean, Inc.; Colonial Oil Industries, Inc.; ConocoPhillips Company; Esso Standard Oil Company (Puerto Rico); Exxon Mobil Corporation; HOVENSA LLC; Hess Oil Virgin Islands Corp.; Idemitsu Apollo Corporation; Motiva Enterprises LLC; Shell Oil Company; Shell Chemical Yabucoa, Inc.; Shell International Petroleum Company Ltd.; Shell Western Supply

consolidation of this action with the 2007 action.  For the reasons stated below,

both motions are DENIED.

## II.   BACKGROUND

The Commonwealth has filed two separate suits against oil and gas

companies for MTBE contamination.  The first action ("*Puerto Rico I*"), filed on

June 12, 2007 and amended on September 8, 2008 and December 3, 2012, names

forty-eight defendants allegedly responsible for MTBE contamination.[2]  After

identification of alleged contamination sites and completion of site-specific

discovery, five service stations were chosen – pursuant to this Court's September

15, 2014 Case Management Order – for a Phase I trial.[3]

The second action ("*Puerto Rico II*"), filed on September 4, 2013 and

amended on December 20, 2013, names sixty-three defendants and alleges MTBE

---

and Trading Ltd.; Sol Puerto Rico Ltd. f/k/a Shell Company Puerto Rico Ltd.;
Sunoco, Inc.; Sunoco, Inc. (R&M); Texaco Puerto Rico, Inc.; Total Petroleum
Puerto Rico Corp.; Trammo Petroleum, Inc.; Trammo Caribbean, Inc.; Peerless Oil
& Chemicals, Inc.; Petrobras America, Inc.; Puerto Rico Sun Oil Company, LLC;
Vitol, S.A.; Vitol, Inc.

[2]      *See Puerto Rico I* Third Amended Complaint, No. 07 Civ. 10470
(Dkt. No. 175).

[3]      *See* Case Management Order No. 117, No. 07 Civ. 10470 (Sept. 15,
2014) (Dkt. No. 457).  Four trial sites remain because one of the sites was
dismissed on statute of limitations grounds. *See In re MTBE Prods. Liab. Litig.*,
No. 07 Civ. 10470, 2015 WL 5775852 (S.D.N.Y. Oct. 1, 2015).

contamination at thirty-six additional sites.[4]  Of the sixty-three defendants named

in *Puerto Rico II*, forty-six were previously named in *Puerto Rico I*.[5]  Discovery

has not yet begun in *Puerto Rico II*.

       The Complaints in both cases allege seven of the same causes of

action.[6]  In each action the Commonwealth requests sweeping relief for sites not

specifically identified in either case.  While the precise wording of the relief

requested differs slightly in the two actions, the effect is the same.[7]  The

Commonwealth requests testing for MTBE at all suspected contamination sites and

testing for MTBE at all "public and private drinking water supplies" and wells.[8]  If

MTBE is detected, the Commonwealth requests treatment of waters "until restored

to non-detectable levels" as well as "present and future monitoring of surface and

---

[4]    *See Puerto Rico II* First Amended Complaint, No. 14 Civ. 01014 (Dkt. No. 5).  The Complaint initially alleged contamination at fifty-three sites, but seventeen were voluntarily dismissed by the Commonwealth because they were identified in *Puerto Rico I*.  *See* Stipulated Order on Dismissed Sites, No. 14 Civ. 01014 (Dkt. No. 99).

[5]    *See* Certain Defendants' Corrected Memorandum of Law in Support of Motion to Dismiss Island-Wide Claims and Relief ("Def. Mem."), Ex. C.

[6]    Each Complaint alleges eight causes of action.  In *Puerto Rico I*, the Commonwealth alleges violations of the Comprehensive Environmental Response, Compensation, and Liability Act (Count VI).  In *Puerto Rico II*, the Commonwealth alleges unjust enrichment (Count VII).

[7]    *See* Def. Mem., Ex. B.

[8]    *Puerto Rico II* First Amended Complaint, Request for Relief ¶ C.

ground waters to detect the presence of MTBE."[9]

Because the parties dispute whether to classify these requests as claims or requests for relief, it is worth elaborating on the nature of the Commonwealth's allegations. The Commonwealth alleges that certain oil and gas companies caused injury to the waters of the Commonwealth by leaking gasoline containing MTBE at sites throughout the island.[10] Because "MTBE has unique characteristics that cause extensive environmental contamination," the Commonwealth alleges that MTBE contaminated both "waters located directly beneath the release sites, and waters that are hydrogeologically connected to waters beneath the sites."[11] The alleged injury is a dispersed injury to the waters of the Commonwealth, the extent of which is unknown.[12]

The Commonwealth avers that because "[a] very high percentage of

---

[9]     *Id*.

[10]    *See Puerto Rico I* Third Amended Complaint; *Puerto Rico II* First Amended Complaint.

[11]    *Puerto Rico I* Third Amended Complaint ¶¶ 6, 7; *Puerto Rico II* First Amended Complaint ¶¶ 6, 9.

[12]    The extent to which MTBE contamination at a given site may contaminate water via underground aquifers is a fact intensive inquiry that requires extensive study by hydrogeologists. *See In re MTBE Prods. Liab. Litig.*, No. 07 Civ. 10470, 2015 WL 1190048 (S.D.N.Y. Mar. 16, 2015) (finding a triable question of fact about whether contamination of a shallow aquifer resulted in contamination of a larger aquifer).

gasoline release sites where MTBE has been tested for had MTBE present . . . an order requiring testing or damages to pay for testing of all potable wells and gasoline release sites in the Commonwealth [and] . . . an injunction . . . or damages for . . . restoration [of the waters of the Commonwealth]" is warranted.[13]  In essence, the Commonwealth seeks island-wide relief for injuries not yet known – justified by a finding of liability at the named sites.  Thus when the defendants refer to the "island-wide claims" made by the Commonwealth, they refer to *prayers for relief* relating to injuries not yet known to the Commonwealth.

## III.   LEGAL STANDARD

### A.   Rule 12(b)(6) Motion to Dismiss

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must "accept[ ] all factual allegations in the complaint as true and draw[ ] all reasonable inferences in the plaintiff's favor."[14]  The court evaluates the sufficiency of the complaint under the "two-pronged approach" set forth by the Supreme Court in *Ashcroft v. Iqbal*.[15]  Under the first prong, a court may "begin by identifying pleadings that, because they are no more than conclusions, are not

---

[13]     *Puerto Rico II* First Amended Complaint ¶ 8.

[14]     *Grant v. County of Erie*, 542 Fed. App'x 21, 23 (2d Cir. 2013).

[15]     *See* 556 U.S. 662, 678-79 (2009).

entitled to the assumption of truth."[16]  For example, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[17] Under the second prong of *Iqbal*, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[18] A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[19]  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[20] When deciding a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[21]  In addition, "[t]he Court may take judicial notice of filings in other courts 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related

---

[16]     *Id*. at 679.

[17]     *Id*. at 678 (citation omitted).

[18]     *Id*. at 679.

[19]     *Id*. at 678 (citation omitted).

[20]     *Id*. (quotations omitted).

[21]     *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

7

filings.'"[22]

## B.    Rule 42 Consolidation

Rule 42(a)(2) allows for the consolidation of cases involving "a common question of law or fact."  District courts have "broad discretion" in determining whether to consolidate cases.[23]  The party moving for consolidation bears the burden of showing the commonality of factual and legal issues.[24] "Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation."[25]  Although consolidation may enhance judicial economy, "[c]onsiderations of convenience and economy must yield to a paramount concern for a fair and impartial trial."[26]

## IV.    APPLICABLE LAW

[22]      *Brandon v. Musoff*, No. 10 Civ. 9017, 2012 WL 135592, at *3 (S.D.N.Y. Jan. 17, 2012) (quoting *Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 157 (2d Cir. 2006)).

[23]      *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).

[24]      *In re Repetitive Stress Injury Litig.*, 11 F.3d 368, 373 (2d Cir. 1993) ("A party moving for consolidation must bear the burden of showing the commonality of factual and legal issues in different actions[.]").

[25]      *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007).

[26]      *Johnson*, 899 F.2d at 1285.

A.      **Statute of Limitations**

In Puerto Rico, Article 1802 of the Civil Code, L.P.R.A. section 5141, governs obligations that "arise from fault or negligence."[27]  "The statute of limitations for these actions is one year as provided by Art. 1868 of the Civil Code, 31 L.P.R.A. sec[tion] 5298."[28]  In Puerto Rico, the limitations period runs from the time the aggrieved party has "notice of the injury, plus notice of the person who caused it."[29]  Once the defendant has established that the injury occurred more than one year prior to the filing of the complaint, the plaintiff "'bears the burden of proving that she lacked the requisite knowledge at the relevant times.'"[30]  "In some circumstances, awareness of the existence of an injury, on its own, will not be enough to trigger the running of the limitation period."[31]  The statute of limitations is tolled when the plaintiff is not "aware of some level of reasonable likelihood of

---

[27]     *Fraguada Bonilla v. Hospital Auxilio Mutuo*, 186 D.P.R. 365, at *3 (2012) (cert. translation Dkt. No. 277).

[28]     *Id*. (brackets in original).

[29]     *Rodriguez-Suris v. Montesinos*, 123 F.3d 10, 13 (1st Cir. 1997) (quotations and citations omitted).

[30]     *Alejandro-Ortiz v. Puerto Rico Elec. Power Auth.*, 756 F.3d 23, 27 (1st Cir. 2014) (quoting *Hodge v. Parke Davis & Co.*, 833 F.2d 6, 7 (1st Cir. 1987)).

[31]     *Rodriguez-Suris*, 123 F.3d at 13.

9

legal liability."[32]

**B.     Prior Pending Action Doctrine**

The prior pending action doctrine is not a 12(b)(6) defense, but "[a] district court may stay or dismiss a suit that is duplicative of another federal court suit as part of its general power to administer its docket."[33]  The doctrine does not lend itself to a "rigid test" but instead requires the district court to "consider the equities of the situation when exercising its discretion."[34]  At its core, the doctrine is one of "judicial economy" and is meant to "protect parties from 'the vexation of concurrent litigation over the same subject matter.'"[35]

**V.     DISCUSSION**

**A.     Prior Pending Action Doctrine**

Defendants argue that the prior pending action doctrine bars duplicative requests for relief.  Yet defendants have not identified and this Court is unaware of any case where the prior pending action doctrine was applied to

---

[32]     *Id.* at 13-14.

[33]     *Ziemba v. Clark*, 167 Fed. App'x 831, 832 (2d Cir. 2006) (citing *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000)).

[34]     *Curtis*, 226 F.3d at 138.

[35]     *Id.*

dismiss requests for relief.[36]  The only cases cited by the defendants where a court actually dismissed or struck relief did so, not on the basis of the prior pending action doctrine but, because the relief was "plainly prohibited by . . . law."[37] Indeed, the actual duplicative claims, the sites identified in *Puerto Rico I*, have already been voluntarily dismissed from this action.[38]  Therefore, the prior pending action doctrine is not an appropriate ground to strike the Commonwealth's request for relief.

### B.    Statute of Limitations

Defendants argue that because the Commonwealth sought the same relief from the same defendants in *Puerto Rico I*, the Commonwealth necessarily had the requisite knowledge to trigger the statute of limitations when the *Puerto*

---

[36]    The only case that the defendants cite for the proposition that the prior pending action doctrine may be used to dismiss requests for relief, *Lopez v. McGill*, No. 08 Civ. 01931, 2009 WL 179787 (D. Conn. Jan. 21, 2009), used relief as a proxy to help determine if a pro se litigant's claim was duplicative.  The court then dismissed the duplicative claim, not the relief.  *See id.* at *3.

[37]    *P.E.A. Films, Inc. v. Metro-Goldwyn-Mayer, Inc.*, No. 14 Civ. 7263, 2014 WL 6769377, at *3 (S.D.N.Y. Nov. 12, 2014).  *Accord In re MTBE Prods. Liab. Litig.*, No. 08 Civ. 312, 2014 WL 840955, at *3 (S.D.N.Y. Mar. 3, 2014) (dismissing claims for relief because "a public entity may recover damages only when acting as a private litigant . . . [and] plaintiffs—by their own admission—are not proceeding as 'private litigants'").

[38]    *See supra* note 4.

*Rico I* Complaint was filed in 2007.[39]  The injury that the Commonwealth had knowledge of and that forms the basis for the island-wide relief – according to defendants – is "'widespread pollution of groundwater with MTBE.'"[40]

This argument fails for two reasons.  *First*, Rule 12(b)(6) only allows for dismissal on the basis that the plaintiff "fail[ed] to state a claim upon which relief can be granted."  Relief may not be struck through a 12(b)(6) motion.[41]  Correspondingly, the statute of limitations is a defense that may be asserted under 12(b)(6), but it only serves to bar causes of action, not relief.[42]  Defendants apparently concede this point in their Reply and only counter that the prior pending action doctrine "is grounded in the Court's 'general power to administer its docket,' not in Rule 12."[43]

---

[39]     *See* Def. Mem. at 10.  The defendants also argue that claims against certain defendants named only in *Puerto Rico II* are time-barred, but that argument fails for the same reasons.

[40]     *Id*. (quoting *Puerto Rico II* First Amended Complaint ¶ 107).

[41]     Rule 12(f) would support striking relief, but the statute of limitations would be an improper ground.

[42]     *See* Restatement (Second) of Torts § 899 (1979) ("A cause of action for a tort may be barred through lapse of time because of the provisions of a statute of limitations.").

[43]     Reply Memorandum of Law in Support of Certain Defendants' Motion to Dismiss Island-Wide Claims and Relief at 2-3 (quoting *Curtis*, 226 F.3d at 138).

*Second*, "widespread pollution of groundwater with MTBE" is a description of the aggregated injury caused by contamination at individual sites. Knowledge of contamination at a particular site is necessary for "aware[ness] of some level of reasonable likelihood of legal liability" sufficient to trigger the running of the statute of limitations.[44]  For this precise reason, this Court has repeatedly required site-specific knowledge of MTBE contamination in order to find the statute of limitations has run.[45]

### C.    Consolidation

This Court has "broad discretion" when determining whether consolidation is appropriate, and the Commonwealth has failed to convince this Court that consolidation would benefit judicial economy.[46]  On the contrary, this Court is concerned that consolidation may prejudice the defendants.

The Commonwealth argues that consolidation would alleviate

---

[44]     *Rodriguez-Suris*, 123 F.3d at 13-14.

[45]     *See, e.g.*, *In re MTBE Prods. Liab. Litig.*, No. 07 Civ. 10470, 2015 WL 5775852 (S.D.N.Y. Oct. 1, 2015) (discussing whether the Commonwealth had knowledge of MTBE at particular service stations for statute of limitations purposes); *In re MTBE Prods. Liab. Litig.*, 676 F. Supp. 2d 139, 149 (S.D.N.Y. 2009) ("For statute of limitations purposes contamination sites must be analyzed on a site-by-site basis.").

[46]     *Barkley v. Olympia Mortg. Co.*, 557 Fed. App'x 22, 25 (2d Cir. 2014) (quotations omitted).

confusion about whether orders in *Puerto Rico I* apply in *Puerto Rico II* and would prevent the need for duplicative briefing.  These arguments miss the mark.  The consolidation advocated whereby both actions maintain "separate case identities although consolidated"[47] and "the status quo is maintained with respect to all arguments on timeliness"[48] would still require this Court to consider the same arguments separately as to both actions.  Defendants correctly point out that because both cases are in front of the same court, a case management order would suffice to prevent duplicative briefing.[49]  Additionally, decisions in *Puerto Rico I*, while not law of the case, are still controlling precedent to the extent that the same issues arise in *Puerto Rico II*.

        The risk of confusion and delay as well as possible prejudice to defendants counsels against consolidation.  For example, additional discovery in a consolidated case could delay moving forward with the trial sites already selected in *Puerto Rico I*.  While the Commonwealth asserts that it is "nonsense" to think consolidation would re-open the door for non-site-specific discovery, it

---

[47]    Commonwealth of Puerto Rico's Reply to Defendants' Opposition to Plaintiffs' Motion to Consolidate ("Reply Mem.") at 8.

[48]    Memorandum of Law in Support of the Commonwealth of Puerto Rico's Motion to Consolidate at 3.

[49]    Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Consolidate ("Opp. Mem.") at 4.

simultaneously maintains that such discovery may be warranted because "not all defendants were fully cooperative with respect to non-site-specific discovery" in *Puerto Rico I*.[50]  At trial the already complex task of delineating the separate sites, claims, defendants, affirmative defenses, and relief requested would become more cumbersome and confusing with the additional dimension of "separate case identities" proceeding simultaneously.  The Commonwealth's failure to demonstrate improved judicial economy and the potential prejudice to defendants compel denial of the motion to consolidate.[51]

## VI.    CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss and the Commonwealth's motion to consolidate are DENIED.  The Clerk of the Court is directed to close these motions (Dkt. Nos. 143, 154).

---

[50]    Reply Mem. at 4-5.

[51]    Defendants also argue that this Court only has the power to consolidate cases for pretrial proceedings – but not for trial itself – because 28 U.S.C. section 1407(a) only allows for the transfer of cases for "coordinated or consolidated pretrial proceedings."  *See* Opp. Mem. at 3.  The only cases cited for this proposition declined to consolidate MDL cases because they were transferred from different district courts.  *See In re Penn Cent. Comm'l Paper Litig.*, 62 F.R.D. 341 (S.D.N.Y. 1974); *In re Prempro Prods. Liab. Litig.* Nos. 03 Civ. 01507, 15 Civ. 01041, 2008 WL 5274323 (E.D. Ark. Dec. 18, 2008).  While a creative argument, a motion to consolidate for trial purposes is necessarily a part of *pretrial* proceedings and within the power of this Court.  The fact that consolidation may impact how a trial actually proceeds does not distinguish a motion to consolidate from any other dispositive pretrial motion.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              November 4, 2015

16

**- Appearances -**

**Liaison Counsel for Plaintiff:**

Robin Greenwald, Esq.
Robert Gordon, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane
New York, NY 10038
(212) 558-5500

**Counsel for Plaintiff:**

William J. Jackson, Esq.
John D.S. Gilmour, Esq.
Jackson Gilmour & Dobbs, P.C.
3900 Essex, Suite 700
Houston, TX 77027
(713) 355-5000

Jorge L. Flores, Esq.
Legal Counsel
Puerto Rico Department of Justice
Olimpo Street, Pda. 11
San Juan, Puerto Rico 00907

John K. Dema, Esq.
Scott E. Kauff, Esq.
Law Offices of John K. Dema, P.C.
1236 Strand Street, Suite 103
Christiansted, St. Croix
U.S. Virgin Islands 00820

Orland H. Martinez, Esq.
Orland H. Martinez Law Offices
Centra de Seguros, Suite 413
701 Ponce de Leon Avenue
San Juan, Puerto Rico 00907

Michael Axline, Esq.
Duane C. Miller, Esq.
Miller & Axline
1050 Fulton Avenue, Suite 100
Sacramento, CA 95825

**Liaison Counsel for Defendants:**

James A. Pardo, Esq.
Lisa A. Gerson, Esq.
Stephen J. Riccardulli, Esq.
Michael J. Dillon, Esq.
McDermott Will & Emery LLP
50 Rockefeller Plaza, 11th Floor
New York, NY 10020
(212) 547-5769