```
FAS7MTBC
```

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IN RE MTBE LITIGATION                    11 Civ. 1898 (SAS)

------------------------------x
                                         New York, N.Y.
                                         October 28, 2015
                                         2:30 p.m.
Before:

                    HON. SHIRA A. SCHEINDLIN

                                         District Judge

                    APPEARANCES (via telephone)

NATHAN SHORT
SCOTT KAUFF
WILL PETIT
CARLA BURKE
     Attorneys for Plaintiffs

BARRY TEMKIN
JAMES PARDO
     Attorneys for Defendants

ROBERT GOODMAN
PETER LIGH
ADRIAN SANCHEZ PAGAN
     Observing for Defendants
```

1                (Telephone conference; in chambers)
2                THE COURT:  Good afternoon.  Is Mr. Short on the line?
3                MR. SHORT:  Yes, your Honor, this is Nathan Short with
4     the Commonwealth.
5                THE COURT:  Ms. Burke?
6                MS. BURKE:  Yes, your Honor.
7                THE COURT:  Mr. Kauff?
8                MR. KAUFF:  Yes, your Honor.  Good afternoon.
9                THE COURT:  And Mr. Petit?
10               MR. PETIT:  Yes, your Honor.  Good afternoon.
11               THE COURT:  Anybody else from the plaintiff?
12               OK.  Mr. Temkin?
13               MR. TEMKIN:  Yes, good afternoon.
14               THE COURT:  And Mr. Pardo?
15               MR. PARDO:  Good afternoon, your Honor.
16               THE COURT:  Good afternoon.  And then observers.  I
17    understand Mr. Goodman?
18               MR. GOODMAN:  Yes, your Honor.  And I would also
19    request the permission to speak if it's appropriate.
20               THE COURT:  We will see.
21               Mr. Ligh?
22               MR. LIGH:  Good afternoon, your Honor.
23               THE COURT:  Mr. Wilson?  Is there a Mr. Rob Wilson on
24    the call?  No.
25               Mr. Lutz?  No?

1           Mr. Pagan?
2           MR. SANCHEZ:  Sanchez.  Yes, your Honor.  Good
3 afternoon.
4           THE COURT:  Oh, Mr. Sanchez Pagan.  OK, very good.
5           Is there anybody whose name I didn't call?
6           MS. SHAH:  Yes, your Honor, Ms. Shah from Southerland
7 Haskell & Brennan.
8           THE COURT:  I'm sorry.  What's the name again?
9           MS. SHAH:  Pat Shah, S-H-A-H, from Southerland.
10          THE COURT:  Representing?
11          MS. SHAH:  Just an observer.
12          THE COURT:  OK, right, very good.
13          So we're having this telephone conference call today
14 with respect to the Trammo motion to dismiss in the Puerto Rico
15 II MTBE litigation.  Trammo has moved on the grounds that it
16 says it cannot be sued because it was dissolved according to
17 the laws of Delaware in 2007, and it can't be sued more than
18 three years after dissolution.
19          In support of that, Trammo has submitted an affidavit
20 demonstrating that it did dissolve in 2007.  At the time of
21 dissolution it had a net worth of negative $4.7 million.  It
22 also submitted a declaration of a Mr. Markstein, Mr. William
23 Markstein, and he explained that when the corporation dissolved
24 it assigned its remaining supply contract and sold its
25 remaining inventory to Colonial Caribbean -- I should say

1   before if dissolved, and that was in 2005.

2            The Commonwealth nonetheless believes that it can go
3   ahead with this lawsuit.  It says that assets must have been
4   distributed after both contracts, other than Trammo couldn't
5   have had a negative net worth at dissolution.  It also says
6   that Trammo never did dissolve because it failed to comply with
7   Delaware's wind-up procedures.

8            So the question now I suppose is whether any discovery
9   is needed now that this has been converted to a Rule 56 motion.
10  I would like to dispose of one of the arguments up front.
11  Delaware law is absolutely clear that dissolution is effective
12  on the filing of the certificate of dissolution, so it really
13  doesn't matter whether there was a failure to comply with
14  wind-up procedures.  If there was such a failure, that may lead
15  to liability of directors, I don't know, who may have breached
16  their fiduciary duty to creditors.  But even that argument
17  wouldn't have much meaning if there were no assets that were
18  set aside.

19           But, in any event, it's no argument that there wasn't
20  a dissolution.  There was a dissolution, and I'm ready to tell
21  you that now as a matter of law.  Because that is clear
22  Delaware law.  In the statute, Delaware Code Section 275(f)
23  states "Upon a certificate of dissolution becoming effective in
24  accordance with Section 103, the corporation shall be
25  dissolved."  And Section 103 says "Any instrument filed in

1   accordance with Subsection C shall be effective upon its filing
2   date."  Then there is a Delaware chancery case, In Re
3   Transamerica, which says dissolution became effective upon the
4   filing of certificate of dissolution.  So, I think that
5   argument is not to be taken further.
6           So, I'd like to hear from the Commonwealth where you
7   really think you can go with this effort to keep Trammo in the
8   case and what if any discovery you need to oppose the motion to
9   dismiss, which is now --
10          MR. SHORT:  Your Honor, this is Nathan Short on behalf
11  of Commonwealth.  I think there are two avenues.  One we
12  discuss in our briefs is the appointment of a receiver. This
13  discovery --
14          THE COURT:  Which you haven't sought before.
15          MR. SHORT:  Correct.
16          THE COURT:  Right.
17          MR. SHORT:  We're hopeful that we will be able to
18  resolve any factual disputes and either make a determination
19  it's appropriate to seek the appointment of receiver in another
20  judicial forum or, where appropriate, to dismiss.
21          THE COURT:  Right.  So, what do we need to get that
22  accomplished.
23          MR. SHORT:  One would be whether or not assets were
24  distributed in advance of the filing of dissolution.
25          THE COURT:  So whether assets were distributed say

1       between 2005 and 2007?
2                MR. SHORT:  Right.
3                THE COURT:  Well, who is representing Trammo on this
4       call?
5                MR. TEMKIN:  Barry Temkin and Bob Goodman.
6                THE COURT:  OK.  So maybe you can answer that now, or
7       begin to.
8                MR. TEMKIN:  Yes.  Temkin here.  I will be happy to
9       give it a shot.  I think if I read their opposition to our
10      motion, on pages 8 and 9 what the plaintiffs seem to be saying
11      is that there is a 2005 transaction in which there was an
12      assignment assumption of Trammo Caribbean's assets to some
13      other company.
14               THE COURT:  Right.
15               MR. TEMKIN:  And we've asked our client to come up
16      with the documents --
17               THE COURT:  Right.
18               MR. TEMKIN:  -- for that transaction.  So it shows a
19      transfer from Trammo Caribbean to the supplier of that gas
20      shipment contemporaneously, so the money comes into Trammo
21      Caribbean and goes right out to I think it's called Atlantic is
22      the shipper.  So there is nothing that we found other than
23      contemporaneous payment for value, and we don't object to
24      providing that to the plaintiff.  I don't think they've
25      articulated anything else, and I think everything else is just

1    speculation and a fishing expedition.
2           THE COURT:  Well, I'm not interested in the word
3    "speculation" and "fishing expedition".  They've asked to
4    determine whether there was a transfer of any assets.  You've
5    mentioned one; you said you're willing to give them the
6    documents of that.  If you represent that you have searched and
7    there are no others, then that's that.  It's not a matter of a
8    fishing expedition; they say they have the right to know about
9    transfer of assets.  Are there any others?  Are there any
10   others that have to do before the filing of the dissolution,
11   before 2007?
12          MR. TEMKIN:  The only other transfer I'm aware of,
13   your Honor -- Temkin here -- is that at around the time of the
14   dissolution -- and I can give you the exact date -- but around
15   that time Trammo Caribbean had a negative net worth of about $4
16   million --
17          THE COURT:  Right.
18          MR. TEMKIN:  -- and it made a transfer I think on
19   August 21, 2007 to its parent of $99,000 to pay an antecedent
20   debt to the parent.
21          THE COURT:  OK.  And can you make those documents
22   available?
23          MR. TEMKIN:  Yes, we will provide that document to the
24   other side.
25          THE COURT:  All right.

1  MR. TEMKIN:  And we will talk to them about what other
2  documents they are seeking, to convince them that there is
3  nothing else.
4  THE COURT:  Right.
5  MR. TEMKIN:  No other transfers.
6  THE COURT:  That's right, we're looking for any other
7  transfers prior to the dissolution.  And these contracts that
8  occurred in 2005 when you sold the assigning of the supply
9  contract and selling remaining inventory to Colonial Caribbean,
10 do they have the documentation on that?
11 MR. TEMKIN:  Yes, we do, your Honor.
12 THE COURT:  I'm sorry.  You already produced that to
13 plaintiff?
14 MR. TEMKIN:  Of course, yes.
15 THE COURT:  You already have?
16 MR. TEMKIN:  I'm sorry.  I think we have produced --
17 there are three contracts involved in the deal; two of them, as
18 I recall, were attached to the Markstein declaration, and there
19 is a third called a frame agreement that we haven't produced,
20 but we do not object to producing it, if it moves the case
21 along.
22 THE COURT:  It does.  So you will produce all the
23 three things that we have discussed during this call.
24 MR. TEMKIN:  Yes, your Honor.
25 THE COURT:  So then back to -- I'm sorry, who was the

1      plaintiff counsel who spoke earlier?
2              MR. SHORT:  This is Nathan Short.
3              THE COURT:  Yes, sorry, so back to Mr. Short.  So
4      assuming that you have that, what is left to do?
5              MR. SHORT:  There is one other category, that would be
6      a declaration that Caribbean does not have either any general
7      liability policies -- well, specifically general liability
8      insurance policies.  The declaration isn't particularly clear
9      that they do not have it.  It seems to state that they are not
10     being indemnified currently.
11             THE COURT:  You are talking about Trammo Caribbean
12     that filed dissolution in 2007.
13             MR. SHORT:  Correct.  That would be considered an
14     asset under Delaware case law.
15             THE COURT:  Well, I don't know about that.  I mean you
16     still are stuck with the three year deadline to file following
17     dissolution.  We're here in 2015.  I guess you filed Puerto
18     Rico II when?
19             MR. SHORT:  We filed Puerto Rico II in 2013.
20             THE COURT:  Yeah, right.  So I mean that was six years
21     after dissolution.  It's hard to understand how you can get
22     around that problem no matter what, since I've rejected your
23     argument about the wind-up procedure, that it doesn't matter.
24     It may give you another avenue against individuals, but it
25     gives you nothing against Trammo.  So whether they had that

1  policy at one time or not doesn't seem to me to have a lot of
2  relevance.  But if Mr. Short knows the answer and is willing to
3  discuss that, that's all for the best too.
4        Do you know the answer to that question?
5        MR. TEMKIN:  This is Temkin.  You said Mr. Short.  Do
6  you mean me?
7        THE COURT:  Yes, I'm sorry, I mean Trammo's lawyers.
8  Do you know the answer to that?  I apologize.  I'm traveling,
9  so it's a little harder to get the names of people when I'm not
10 in the office, but, yes, Trammo's counsel.
11       MR. TEMKIN:  No problem.  Yeah, we do know Trammo
12 received a denial of coverage from its insurance carrier.
13       THE COURT:  When was that?
14       MR. TEMKIN:  Two years ago.
15       THE COURT:  And the carrier had a policy when?  What
16 did it cover?  In other words, what was the policy year and
17 what years did it cover?
18       MR. TEMKIN:  I will have to get you that.
19       THE COURT:  OK.
20       MR. TEMKIN:  But my understanding, we have the
21 declination letter.
22       THE COURT:  I know.
23       MR. TEMKIN:  And my understanding is that the letter
24 says this is not a covered event.
25       THE COURT:  Right.  All right.  But I think if you can

1    find information about the policy, and the policy period
2    covered, and the declination letter, you can turn that over
3    too.
4             Because at the end of all that, I don't know what more
5    Mr. Short could ask for to resolve this.  It may be that he
6    needs to concede to this particular and see if he has another
7    avenue to pursue.
8             Mr. Short, when you get this information that has been
9    agreed to on this call, what else do you need?
10            MR. SHORT:  Understanding your Honor's position on the
11   other argument, I believe those are the two items that speak to
12   assets that Caribbean might have.
13            THE COURT:  Right.  And we have discussed the
14   insurance coverage issue.  So I said I think this motion needs
15   to be resolved.  I think it will be resolved in Trammo's favor.
16   You may have a couple other avenues, but they're not part of
17   this motion.
18            So when will you be able to produce the material,
19   Mr. Temkin, that you agreed to produce on this call?
20            MR. TEMKIN:  I would request that we produce it by the
21   end of next week, by Friday the 6th.
22            THE COURT:  All right, that's acceptable to the court.
23   I do want to get this motion, so to speak, off my docket, and I
24   think it can be resolved.  So after you receive it, I would
25   like to reconvene either by phone or in person, or receive a

1    letter from the plaintiff that having received the materials
2    they're prepared to concede on this motion.
3             So we need to find a mechanism for getting together
4    again after the 6th.  So maybe my clerk will e-mail you after
5    this call and suggest a date after the 6th, a week or two weeks
6    after that to convene a telephone conference.  Is that
7    acceptable?
8             MR. TEMKIN:  Yes, your Honor.
9             MR. SHORT:  I just want to note that --
10            THE COURT:  Wait.  Who is speaking?
11            MR. SHORT:  Sorry, this is Nathan Short.
12            THE COURT:  OK, go ahead.
13            MR. SHORT:  Your current order requires submissions by
14   November 20, so we would reconvene on the 20th and we would be
15   making submissions.  I just want to bring that to your
16   attention.
17            THE COURT:  That's right.  So I will still ask my
18   clerk to set up a date following the 6th, maybe a week or two
19   after, which would include the 20th, in which we can have a
20   conversation that might result in resolving the motion without
21   the need for -- okay?
22            MR. TEMKIN:  Your Honor, this is Barry Temkin.
23   Counsel, we did reach out, meet and confer with counsel for the
24   claimant yesterday.
25            THE COURT:  Right.

1       MR. TEMKIN:  And, by the way, I thank the court and
2  counsel for accommodating my schedule; I had a funeral to
3  attend on Monday.  But we did speak on Monday, and we indicated
4  that in the event there is significant discovery, that we would
5  agree that we would request of you, if you think it's
6  appropriate, your Honor, to consider extending the November 20
7  date.
8       THE COURT:  There is not significant discovery.  I
9  have just ruled on the very limited discovery that is needed.
10      MR. SHORT:  OK.
11      THE COURT:  Let's not overcomplicate it.
12      MR. TEMKIN:  Got it.
13      THE COURT:  Let's get a date for a telephone
14 conference before the 20th.
15      MR. TEMKIN:  That week is fine with me, your Honor.
16 I'm sorry.
17      THE COURT:  All right.  So I think we have done what
18 we can on this call, and a date will be set through my clerk
19 for some day close to the 20th but before it in the hope of
20 alleviating the need for any further briefing.  We shall see.
21      MR. TEMKIN:  Thank you, your Honor.
22      THE COURT:  Now, do I understand another attorney,
23 maybe Mr. Pardo, wanted to make a statement for the record?
24      MR. PARDO:  Yes, your Honor. Good afternoon.  It's
25 Jim Pardo.  I understand you're traveling with a tight

1    schedule, so I will try to be quick.  I hope you're somewhere
2    nice.
3              THE COURT:  OK.  Go ahead.
4              MR. PARDO:  The parties in the Breaux Bridge case have
5    reached a settlement in principle.  We have agreed on an amount
6    and terms to resolve all claims, all wells, the case in its
7    entirety.
8              THE COURT:  Great.
9              MR. PARDO:  I wanted to report that to you.  It is
10   subject to obviously the usual caveats.  The town of Breaux
11   Bridge needs to convene and approve the settlement.
12             THE COURT:  OK.
13             MR. PARDO:  They will next meet I believe it's
14   November 10.  Ms. Burke may correct me on that, but it's a
15   couple weeks from today.
16             We, the defendants, are running the deal -- it's an
17   attorney recommended by everyone -- out to our clients.  I am
18   confident at the numbers we are dealing with that we will get
19   complete group approval.  I'm also confident we will get an
20   agreement on allocation among the defendants.  So, I am very
21   confident, and I am reporting that I believe we will have a
22   deal and that we can have it papered by the end -- at the
23   latest, by the end of next month.
24             THE COURT:  Excellent.  So by 2016 I won't see this
25   case alive.  That's good.  So I look forward to receiving the

1   papers that will result in resolving this particular case.  Now
2   if you could resolve the whole MDL, that would be good too.
3               MR. PARDO:  I'm working on it.
4               THE COURT:  Very good.  Is there anything further for
5   today's call?
6               MS. BURKE:  Yes.  Your Honor, this is Carla Burke on
7   behalf of Breaux Bridge.  We are in the middle of a briefing
8   schedule on the motion to dismiss.  So, the plaintiff has an
9   opposition that is due next Tuesday.  I share Mr. Pardo's
10  confidence that this case will be fully settled by the middle
11  or end of November, but we are stuck with this briefing
12  schedule unless your Honor postpones it or kicks it off a bit.
13              THE COURT:  Right.  I think that I was asked to and
14  said no, because if they want to settle this case, get it done.
15  But given the statement on the record today of the confidence
16  of both sides, I will reluctantly but realistically just
17  adjourn the response sine die.
18              MR. PARDO:  Thank you, your Honor.
19              MS. BURKE:  Thank you.
20              THE COURT:  Anything further?
21              MR. PARDO:  No.  Thank you for your time.
22              THE COURT:  Thank you.
23              (Adjourned)
24
25