FB3AMTBAps

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3                                        00 MDL 1358
    IN RE:  METHYL TERTIARY BUTYL        00-cv-01898 (SAS)
4   ETHER ("MTBE") PRODUCTS              04-cv-04968 (SAS)
    LIABILITY LITIGATION                 07-cv-10470 (SAS)
5                                        14-cv-06228 (SAS)

6   ------------------------------x

7                                        November 3, 2015
                                         2:45 p.m.
8
    Before:
9
                        HON. SHIRA A. SCHEINDLIN,
10
                                         District Judge
11
                            APPEARANCES
12
    MILLER, AXLINE & SAWYER
13        Attorneys for Plaintiffs
    BY:  MICHAEL D. AXLINE, ESQ.
14        DUANE MILLER, ESQ.

15  JACKSON GILMOUR & DOBBS, PC
          Attorneys for Plaintiffs
16  BY:  JOHN D.S. GILMOUR, ESQ.

17  SEDGWICK LLP
          Attorneys for Defendant Mobil Oil Corporation
18  BY:  PETER C. CONDRON, ESQ.

19  ARNOLD & PORTER
          Attorneys for Defendant BP
20  BY:  STEPHANIE B. WEIRICK, ESQ.

21  KING & SPALDING LLP
          Attorneys for Defendant Chevron
22  BY:  CHARLES CORRELL, ESQ.

23

24

25

FB3AMTBAps

1                          APPEARANCES (Cont'd)

2     BEVERIDGE & DIAMOND, P.C.
            Attorneys for Defendant Exxon Mobil Corporation
3     BY:  DANIEL MARK KRAININ, ESQ.

4     SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
            Attorneys for Defendant Exxon Mobil Corporation
5     BY:  JEFFREY J. PARKER, ESQ.

6     SUTHERLAND ASBILL & BRENNAN LLP
            Attorneys for Defendant Vitol
7     BY:  MEGHANA D. SHAH, ESQ.
            TRAVIS J. MOCK, ESQ.
8
9     LATHAM & WATKINS, LLP
            Attorneys for Defendant ConocoPhillips Company
      BY:  MICHAEL H. DREIBELBIS, ESQ.
10
11    LITTLETON JOYCE UGHETTA PARK & KELLY LLP
            Attorneys for Defendant Idemitsu Apollo Corporation
      BY:  ROBERT D. WILSON, ESQ.
12
13    MCDERMOTT, WILL & EMERY, LLP
            Attorneys for Defendant Exxon Mobil Corporation
      BY:  LISA A. GERSON, ESQ.
14
15    GORDON REES
            Attorneys for Defendant Coastal Eagle Point Oil Company
      BY:  JAMES L. MESSENGER, ESQ. (via speakerphone)
16
17    FULBRIGHT & JAWORSKI, LLP
            Attorneys for Defendant Chevron Phillips
            Chemical Puerto Rico Core, Inc.
18    BY:  JESSICA FARLEY, ESQ. (via speakerphone)

19    DOWD BENNETT LLP
            Attorneys for Defendant The Premcor Refining Group Inc.
20    BY:  JENNIFER L. ASPINALL, ESQ. (via speakerphone)

21    SAMANTHA KATZE, ESQ.
      D.J. CAMERON, ESQ. (via speakerphone)
22    OHIA AMADI, ESQ. (via speakerphone)
      STEPHANIE CHEN, ESQ. (via speakerphone)
23

24

25

FB3AMTBAps

```
 1              (In open court)
 2              THE COURT:  Mr. Walsh, good afternoon.
 3              MR. WALSH:  Good afternoon, your Honor.
 4              THE COURT:  Good afternoon, Mr. Miller.
 5              MR. AXLINE:  Good afternoon.
 6              THE COURT:  Mr. Miller, good afternoon.
 7              MR. MILLER:  Good afternoon.
 8              THE COURT:  Ms. Gerson, good afternoon.
 9              MS. GERSON:  Good afternoon.
10              THE COURT:  Mr. Correll, good afternoon.
11              MR. CORRELL:  Good afternoon.
12              THE COURT:  Mr. Parker, good afternoon.
13              MR. PARKER:  Good afternoon, your Honor.
14              THE COURT:  Ms. Weirick, good afternoon.
15              MS. WEIRICK:  Good afternoon.
16              THE COURT:  And Mr. Condron, good afternoon.
17              MR. CONDRON:  Good afternoon.
18              THE COURT:  Good afternoon.  Who's on the phone?
19              MS. ASPINALL:  Yes.  Jennifer Aspinall.
20              THE COURT:  Right.
21              MR. AMADI:  Ohia Amadi.
22              THE COURT:  Anybody else?
23              MR. GILMOUR:  Good afternoon, your Honor.  John
24      Gilmour, Puerto Rico.
25              THE COURT:  OK, Mr. Gilmour, right.
```

1              Anybody else?  My gosh, there should be a lot more

2     names.  Maybe not.  I'll let you go ahead.  Is there anybody

3     else who hasn't said their name yet?

4              No.  I guess some other people are in court who I

5     thought were on the phone.  So that's good.

6              I think this is an agenda of one item.  Is that right?

7              MR. CORRELL:  Yes, your Honor.

8              MR. AXLINE:  That's correct.

9              THE COURT:  We're just here to discuss what we've

10    already discussed.  We've been down this road already; we had a

11    long conversation about how to get appellate review for BP and

12    Shell, who I said were dismissed in two opinions that I wrote,

13    and therefore they weren't remanded for trial along with

14    everybody else.  I guess it's the plaintiff's table that wants

15    to appeal this now.  Is that right?

16             MR. AXLINE:  That's correct, your Honor.

17             THE COURT:  On the theory that the trial will go

18    forward without them and then, if it was reversed some day, you

19    would have to try the whole thing with them in the case.  Is

20    that it?

21             MR. AXLINE:  That's correct.

22             THE COURT:  Right.  And I think when we talked it last

23    time -- I'm not sure when that conference was, it might have

24    been June -- I was sympathetic to your desire to get appellate

25    review and was just looking for the right procedural vehicle.

FB3AMTBAps

```
1    But now that letters have been coming in on the issue, now I'm
2    getting concerned that my instinct to afford you appellate
3    review is not going to work because the nonsettling defendants
4    say, well, if you do a 54(b), then all the issues will have to
5    be heard and that's not fair to us because we aren't in that
6    appeal, we won't be able to brief it and argue it, and, yes, we
7    can write an amicus brief but it's not the same thing, and
8    there may be decisions that come out of this that might not
9    have come if we had been on the appeal on our own behalf, so we
10   would be prejudiced.  And that is a point, I guess, I had not
11   fully considered.
12           From the point of view of Shell and BP, I don't
13   suppose they are in any hurry, it can wait, so really the
14   burden is on the plaintiff and solely on the plaintiff to see
15   if you can find a procedural way that won't unfairly harm other
16   parties.
17           The worst case is that there can't be an appeal now,
18   you go ahead with your trial, if there's a trial -- you know
19   what often happens, often there are settlements across the
20   board just before trial.  That may be the case.  But if there's
21   actually a trial, then you'll have some finality, have all
22   issues reviewed.  And it's not that far off.
23           Has the judge in California done anything yet?  Has it
24   reached that judge?  I only know where we are procedurally.
25           MR. AXLINE:  I'm glad you raised that, your Honor.
```

FB3AMTBAps

```
 1   It's something I wanted to bring to the Court's attention.  I
 2   don't believe that the judicial panel on multi-district
 3   litigation has received the suggestion to remand yet.  And I
 4   sent an e-mail to the Court a couple weeks ago asking if an
 5   inquiry could be made to the Clerk's Office.  I'm not sure if
 6   you received it.
 7             THE COURT:  I didn't receive that e-mail but my staff
 8   might have.  I didn't.
 9             MR. AXLINE:  I did consult with the defendants, and
10   all the parties would like that suggestion to be sent to the --
11             THE COURT:  I thought we had.  Apparently it fell
12   between the cracks, unfortunately.
13             MR. AXLINE:  Something like that happened in New
14   Jersey as well, and your intercession was very helpful.
15             THE COURT:  It wasn't an intercession.  I mean, I --
16   there, I had actually signed it but it didn't get there?
17             MR. AXLINE:  The suggestion is in the Clerk's Office
18   here.  It just hasn't been forwarded --
19             THE COURT:  So I signed it.
20             MR. AXLINE:  Yes.
21             THE COURT:  I didn't miss the beat.  They hadn't for
22   some reason forwarded it.  I have no idea why that is.  We'll
23   look into that right away.
24             MR. AXLINE:  Thank you, your Honor.
25             But on the substantive topic, if I may, I'd like to
```

FB3AMTBAps

```
 1    make a few points.  I know the defendants, in their latest
 2    letter, have maybe raised some things that haven't been fully
 3    vetted before.
 4              THE COURT:  Right.  Or at least I hadn't fully
 5    considered it.
 6              MR. AXLINE:  So your initial inclination was 54(b)
 7    certification, which is what you did in the City of New York
 8    case.
 9              THE COURT:  Right.  But I think that was the only one
10    left.
11              MR. AXLINE:  We're the only one left.  But as you
12    pointed out in that opinion and I think quite correctly,
13    appellate review of many of the issues would benefit the rest
14    of the MDL, and there were in fact six issues in that case that
15    had direct impacts on other parties.  And in fact I spearheaded
16    the efforts of some of the other plaintiffs to file an amicus
17    brief in the Second Circuit, which it accepted, on those issues
18    that were not specific to the City of New York case.  And here,
19    there are -- I think it's helpful to break down the issues.
20    First of all, the primary issue, the res judicata issue, I
21    think that issue --
22              THE COURT:  Well, that really only affects the two
23    people, BP and Shell.
24              MR. AXLINE:  Well, in terms of the legal briefing.
25    But in terms of the resolution of the case, it would be to the
```

```
 1    opposing defendants' benefit if that issue were resolved on
 2    appeal in favor of the plaintiffs.  So they don't have to
 3    participate in the briefing of it.  But since you're balancing
 4    the equities --
 5              THE COURT:  Look, that's where I think I went astray.
 6    If that were the only issue, which is probably why people
 7    originally talked about 1292, if that were the only issue, it
 8    would be of course the right thing to do, get that issue heard
 9    as quickly as possible.  But the point being made is, once the
10    54(b) is in, all issues, that is, all the opinions and rulings
11    along the way that affected these defendants, have to be heard.
12              MR. AXLINE:  I think it's useful to think about those
13    issues one at a time.  So one of them that's raised in the
14    defendants' letter is the Orange County Water District Act
15    issue, which they correctly say that the plaintiffs are going
16    to raise on appeal; I think we have to.  But that is a purely
17    legal issue.  That's not an issue that involves any facts
18    unique to any of the defendants.
19              THE COURT:  No, but they may want to see the counsel
20    who briefs it and who argues it.  I mean, each lawyer thinks
21    that they will do the best job.
22              MR. AXLINE:  But that's true in almost any 54(b)
23    certification.  54(b) cases are primarily concerned where you
24    have intertwining facts and law, such as the main case, the
25    Ritenour case the defendants rely on, where there was a
```

FB3AMTBAps

 1    challenge by a widow to three individuals and I think an entity

 2    that gave her bad advice on the sale of stock, and so findings

 3    with respect to the effect of one of those parties'

 4    communications having implications for the others.  We don't

 5    have that here.  We've got a lot of separate stations, each one

 6    of which is considered on its own for purposes of the statute

 7    of limitations.  So for statute of limitations principles,

 8    there are certain overarching rules, but each site is decided

 9    on its own.  And the BP and Shell sites are not going back for

10    trial.  They're done.  They have been completely decided.  If

11    we address the statute of limitations with respect to those

12    sites, it will have implications in terms of the legal ruling

13    that comes out for the other sites, but it's not going to

14    determine any of the facts that apply --

15              THE COURT:  No, but it is important to them,

16    obviously, very important.  And, again, they feel the best they

17    can hope for is permission to file an amicus brief, which isn't

18    the same as filing a full brief, having oral argument.  And the

19    outcome of these issues has a deep effect on them.

20              Who is here representing not Shell or BP?

21              MR. CORRELL:  Your Honor, Charles Correll, Chevron.

22              THE COURT:  Maybe it's better for you to respond than

23    for me.

24              MR. CORRELL:  Your Honor, we do think we would be

25    prejudiced.  In the case that we cite, the *Arlinghaus* case, the

FB3AMTBAps

1    co-defendants didn't even object and the Second Circuit on its

2    own found want of jurisdiction, saying that it would prejudice

3    defendants if they ruled on those issues and it would be abuse

4    of discretion to do Rule 54(b).  And we do, we want to be heard

5    on these key legal issues such as the OCWD Act, such as the

6    legal standards for limitations.  And so we think this is a

7    case in which you have two choices really: either wait until a

8    final judgment in the case to take this up or, as we talked

9    about in a meet-and-confer, they can stipulate that the only

10   thing they're going to appeal is --

11            THE COURT:  "They"?  Wait.  Who's the "they"?  Oh, the

12   plaintiff.

13            MR. CORRELL:  The district.  If the plaintiff said,

14   you know, we know under law we have to take everything up, but

15   because we want to get this issue heard first, we'll just

16   stipulate that that's the only thing we're going to appeal,

17   they can get appellate --

18            THE COURT:  What would they be waiving if they did

19   that?

20            MR. CORRELL:  Their right to appeal, as to BP and

21   Shell, these other issues.

22            THE COURT:  As to those two companies.

23            MR. CORRELL:  Yes.

24            THE COURT:  Only.  Not as to you.

25            MR. CORRELL:  That's right.

FB3AMTBAps

```
 1              THE COURT:  Or anybody else.  Just as to BP and Shell.
 2              I guess you don't want to accept that invitation,
 3    Mr. Axline?
 4              MR. AXLINE:  No, we don't, your Honor.
 5              And if I can just follow up on my point about the
 6    distinction between fact issues and legal issues: in your *City*
 7    *of New York* opinion you correctly pointed out that appellate
 8    review is actually going to help, on legal issues, the other
 9    parties to the proceedings.  In any MDL proceeding where there
10    is any appeal, whether it's to the *Exxon v. City of New York* or
11    *Orange County Water District*, will have some implications for
12    other parties in the other proceedings.  But if they're legal
13    issues, what does it matter?  They are legal issues.
14              THE COURT:  Only because of what Mr. Correll said,
15    which is that he and his firm think they would be the best one
16    to brief and argue it.  That's all.
17              MR. CORRELL:  Your Honor --
18              MR. AXLINE:  Everybody always feels that way.
19              THE COURT:  Sorry, Mr. Correll?
20              MR. CORRELL:  I just wanted to add one point.  Think
21    about BP and Shell.  They're going to have, what is it, a
22    50-page limit or whatever.  They are going to probably want to
23    spend most of their time on res judicata, it's a complete win
24    for them, whereas we would take a different approach and would
25    lead with the OCWD Act and limitations and things like that.
```

FB3AMTBAps

1          MR. AXLINE:  Which is the exact predicament that we

2     found ourselves in with your *City of New York* opinion, your

3     Honor.  That opinion had enormous ramifications for everybody

4     else in the MDL, as you recognized.  And we sought and received

5     permission to file an amicus brief.  We have told these parties

6     that we would not oppose them filing an amicus brief, and if

7     they feel they need more pages, we wouldn't oppose that either.

8     We're happy to let them participate.  What is inequitable is if

9     we have to sit back, not be able to settle the case, with these

10    defendants, because BP and Shell aren't there and these guys

11    are thinking, well, we're going to have to pay more than our

12    fair share or whatever their strategy is, and not be able to

13    ultimately get all the parties that should ultimately be there

14    at the trial, to have the case tried as a whole.

15         THE COURT:  Well, turning black the clock to our

16    original argument on this, is there any procedural vehicle that

17    would allow the pinpoint appeal, in other words, just the res

18    judicata issue?  Because I know we discussed this.  We went

19    down the road and were talking about 1292(b).  I was worried it

20    wouldn't meet standard, that the Circuit would say, no, we

21    wouldn't get anywhere without a 54(b), without judgment.  They

22    don't have too much choice.  But is there any other option that

23    wouldn't present the problem that Mr. Correll is worried about?

24    Because really I don't think you need to fight for appeal on

25    all these issues.  You really, supposedly, are concerned about

FB3AMTBAps

 1    the res judicata opinion.  That's the one you really would

 2    like --

 3            MR. AXLINE:  Yes.  That's the deal killer.

 4            THE COURT:  Sure.  That's the one you would like to

 5    appeal.  So is there any other way to get that issue there

 6    without the opportunity to file a notice as to all the issues?

 7            MR. AXLINE:  We had felt all along, your Honor, that

 8    that issue does meet the 1292(b) standard.  And we would be

 9    happy to brief that.

10            THE COURT:  Let's go back.  Would any defendant oppose

11    that?  Maybe I am the only one who is standing in the way.  I

12    didn't think at the time that it was the best vehicle.  I was

13    worried about meeting the standard.

14            Yes.

15            MS. WEIRICK:  Your Honor, Stephanie Weirick for BP.

16            It's unclear to us at this point what part of the res

17    judicata ruling that OCWD would want to be appealing.  Does it

18    have to do with the continuing nuisance piece that was recently

19    decided by you in our favor?  That was the issue that they had

20    presented to the Court as what they wanted to have certified

21    under 1292(b).  We don't know at this point and aren't able to

22    evaluate whether 1292(b) is an appropriate vehicle.

23            THE COURT:  Well, what other issue are you worried

24    that they're thinking of?

25            MS. WEIRICK:  Other standards under your res

FB3AMTBAps

judicata -- I'm not sure what else they would want to appeal
under res judicata.

             MR. AXLINE:  Well, I can clarify that.  I think for
1292(b) purposes it would be both of your summary judgment
opinions, the initial one and then the additional one on
continuing nuisance.  So they both involve res judicata and the
scope of the same consent decrees that were --

             THE COURT:  Right.  That's what I thought.  It's not
beyond that issue, just that there are two opinions that
address the same issue.

             MS. WEIRICK:  Your Honor, this case has been pending
for 12 years, again.

             THE COURT:  I'm aware.

             MS. WEIRICK:  I know you don't need to be reminded of
that.

             THE COURT:  I don't like to be reminded of it.

             MS. WEIRICK:  And certainly if a 1292(b) procedure is
the way to go, then my client is still remaining in the case
without a final judgment being entered.  So we would be in this
limbo where we could be facing an appeal without the benefit of
having a final judgment entered.

             THE COURT:  But that's not the worst, because if it
was done under 54(b) and it was reversed you would be back in
anyway.  I don't see how you're any worse off under 1292(b).
The plaintiff is simply saying, we really want appellate review

FB3AMTBAps

1   of your decision on res judicata.  If the cleanest way to get

2   it is 1292(b) and I was the only one standing in the way

3   because I didn't think it would meet the standard, I'll revise

4   those views.

5           MR. AXLINE:  Could I say one thing about the equities

6   here?  Yes, this case had been pending for 12 years.  That res

7   judicata motion could have and should have been brought when

8   the case was first filed.

9           THE COURT:  Yes.  Well, that's a different point.  I

10  don't know why it was made so late in the game.

11          If that certification was done, by me, promptly, let's

12  say in the next week, what happens then?  Doesn't the Circuit

13  get the chance to say no?

14          MR. CONDRON:  Your Honor, Peter Condron.

15          Yes, it absolutely does.  And we don't think it meets

16  the standard, your Honor.

17          THE COURT:  Right.  So if they deem it violated, they

18  can turn it away.  Then we would be back.

19          MR. AXLINE:  I have gone around and around on this,

20  your Honor, as I know we all have.

21          THE COURT:  Let me try this.  Is there anything else,

22  other than 1292(b) and 54(b)?

23          MR. AXLINE:  Not that the district seeks, your Honor.

24          THE COURT:  Could you do it in a mandamus?

25          MR. AXLINE:  Well in the hierarchy of likelihood to be

FB3AMTBAps

```
 1    granted, mandamus is at the bottom, and I would say 54(b) is at
 2    the top.
 3         THE COURT:  I know 54(b) is at the top.  That I
 4    realize.  There's no other procedural vehicle you can think of?
 5    Can anybody else think of one?  The whole idea is to pinpoint
 6    appeal of this issue, I think.  I do sympathize with the
 7    defendants who say, all issues, it's just a bad idea, we want
 8    our turn, and we'll get our turn at the end of these
 9    proceedings, and probably get our turn in a different circuit,
10    by looking at the Ninth Circuit.  And you are in the Second and
11    all that is confusing too.  I have sympathy for that.  So maybe
12    I should go down the 1292(b) route and see what the Circuit
13    does.  Then we can reconvene.  I mean, it's a slow boat, but I
14    don't know what else to do.
15         And we should have done this long ago.  I agree we
16    lost a lot of time.
17         MR. AXLINE:  I would make one more pitch for 54(b),
18    your Honor.  After having read all the 54(b) cases, including
19    your opinion in the *City of New York*, it's clear that it's a
20    balancing test.  You said that yourself.  It's seems clear that
21    the trend, especially in large, complex litigation like
22    multi-district litigation, the trend is to be more generous in
23    accepting 54(b) certifications in the court of appeal.
24         THE COURT:  I think that's right.  That's not what
25    worries me.  I think they'll take it.  But it's just that all
```

FB3AMTBAps

1    the issues that affect all the co-defendants would be litigated

2    without them really being present.

3            MR. AXLINE:  But they are legal issues, which can be

4    adequately addressed in an amicus brief.

5            THE COURT:  You're making a lot of assumptions here.

6    You're assuming the Circuit will allow that amicus brief.

7    You're assuming that that amicus brief is long enough to fit

8    the page limit.  When was the last time amicus was granted at

9    oral argument time?  I actually know one case, but we don't

10   want to go there.  Very, very rare.

11           MR. AXLINE:  The Second Circuit's amicus ruling, your

12   Honor, says if no party objects or all parties agree, they will

13   allow an amicus brief, so that's not discretionary.

14           THE COURT:  How about at argument?

15           MR. AXLINE:  Oral argument, I actually have seen that

16   happen on a number of occasions, especially important

17   occasions.  And we would not oppose these defendants'

18   participating and being given some oral argument time.  So I

19   think that would up the chance of that happening.

20           So the statute of limitations issue, you know, it's,

21   first of all, the fact parts of it are specific to Shell and

22   BP.  To the extent there is a legal component, that can be

23   addressed and will be addressed in the briefing.  The primary

24   jurisdiction issue, that is something that Shell and BP have

25   disavowed, and I'm not sure that these defendants would want to

FB3AMTBAps

 1    address it anyway, but they can certainly do it if they want to

 2    in an amicus brief.

 3          And finally, the Orange County Water District Act,

 4    that act is being addressed by a variety of courts already.

 5    You've addressed it once.  It's been raised in California.  So

 6    because it's a legal issue, you're going to get multiple

 7    opinions on it.  That's already happened.  An appellate opinion

 8    would be helpful.  And earlier would be better than later, I

 9    think for all parties, as long as the nonjudgment defendants'

10    procedural rights are sufficiently protected.  Nobody in a

11    54(b) appeal who isn't absolutely in the appeal is going to be

12    fully protected.  That's the way the judicial system works.

13    Some things that affect you are decided without your full

14    participation.  At least here, there's a certainty of an amicus

15    participation in the Second Circuit for these parties.  The

16    issues are relatively legal and narrow and tailored.

17          So I'm nervous about a 1292(b).  That was my initial

18    instinct as well.  I do appreciate what you're saying and if

19    that's the way you would like to go, that's the way you would

20    like to go, and we would be happy to brief it.

21          THE COURT:  Now, let's talk about the 54(b).  If in

22    fact I'm persuaded after this oral argument and I give it a

23    shot despite the nonparticipating defendants' views, what about

24    the need for an opinion?  Wasn't there some discussion,

25    somebody submitted a proposed opinion?

FB3AMTBAps

1          MR. AXLINE:  You do, you have to write an opinion,

2     your Honor.  In the *Ritenour* case that Mr. Correll referred to,

3     his principal point was, you can't just toss off as a formality

4     a 54(b) certification.  You have to think it through and

5     explain your reason.  As long as you do that, the likelihood of

6     it being accepted by the Court of Appeals is very, very high.

7     They didn't even question yours in the *City of New York* case.

8          And we submitted a draft opinion, not for you to sign

9     but to get you started and as a convenience.  But I think all

10    the parties agree that you would have to make the findings

11    yourself independently.

12         THE COURT:  What's the position of BP and Shell?  Are

13    they here?  Oh, right.  I'm sorry.  Of course you were here a

14    few minutes ago.  Right.  So you're still here.

15         MS. WEIRICK:  Our position, we are in agreement with

16    Mr. Axline to the extent that an opinion would have to be

17    written in order to --

18         THE COURT:  No.  Are you anxious to get this up there?

19    Or for you the timing is not urgent one way or the other?

20         MS. WEIRICK:  I would say that, again, we would like

21    to get some resolution to a 12-year-old case.  However, we want

22    to do it with the most appropriate procedural method.

23         THE COURT:  But you want to do it now.

24         MS. WEIRICK:  We would like to do it, yes.

25         MR. CONDRON:  Your Honor, if I may for Shell:  Just to

FB3AMTBAps

1    put a little bit of a finer point on it, we're in agreement

2    with 54(b) if that's the direction the Court chooses to go.  We

3    do want finality.  In the event that you find 54(b) isn't

4    appropriate, we don't believe that it meets the 1292(b)

5    standard.

6              THE COURT:  You already said that.  And you wrote in

7    your preconference letters, I shouldn't simply sign their

8    opinion.  I've never signed anybody's opinion but my own.

9              MR. CONDRON:  Understood.

10             THE COURT:  But on the other hand, what they are

11   really are saying is, like a brief, they are essentially

12   submitting a draft opinion for the purpose of starting the ball

13   rolling as to what might be an initial opinion.  You could do

14   that too.

15             MR. CONDRON:  Understood, your Honor.  We just, when

16   that initially was submitted to the Court, it was on relatively

17   short notice.

18             THE COURT:  I understand.  But you could do it now.

19             MR. CONDRON:  Yes.

20             THE COURT:  You can call it a draft opinion or a

21   brief.  I don't care what you call it.  I'm not going to sign

22   either version.  It's just like a brief.  It's just useful to

23   have your views of how the issues should be framed.  And if you

24   could do that promptly, that would be helpful.

25             So that takes us back to Mr. Correll.  I would prefer

FB3AMTBAps

1    appellate review of the issue.  I wish it could be just the

2    issue.  But it can't.  So then the question is, in balancing

3    things, how badly are you prejudiced, when Mr. Axline said, we

4    will not oppose an amicus brief and therefore it has to be

5    accepted by the Circuit, we will not oppose the idea of oral

6    argument.  In fact they will write a letter saying it was

7    discussed with the trial judge and if the court of appeals can

8    accommodate it all parties agree to that.  We may be able to

9    give you almost as many safeguards as you would have in an

10   ideal world.

11            MR. CORRELL:  Well, your Honor, we may not get

12   argument in the Second Circuit.

13            THE COURT:  You may not.  But I just described the way

14   I can do the best I can to try to help that you do.

15            MR. CORRELL:  And we wouldn't have the right for

16   reconsideration or a cert.  Our rights would still be limited.

17   And that's why the cases we cite --

18            THE COURT:  But, as Mr. Axline points out, that's

19   always a problem with a 54(b) when there are multiple

20   defendants.

21            MR. CORRELL:  Right.  And that's why in the case that

22   we submitted to you they said the general rule is that that

23   fact pattern isn't sufficient to satisfy Rule 54(b).

24            THE COURT:  What fact pattern?

25            MR. CORRELL:  The one you just said.  It says, "This

FB3AMTBAps

 1    case clearly demonstrates the validity of the proposition that

 2    the mere existence of multiple parties and the dismissal of

 3    some do not afford sufficient warrant for entry of final

 4    judgment under Rule 54(b)."

 5         And as Mr. Axline stated, that case in part was, the

 6    judge didn't do a full order.  But the Second Circuit said, "We

 7    are confident that if the district judge had endeavored to put

 8    pen to paper, it would have concluded that it would be an abuse

 9    of discretion to find that there was no just reason for delay."

10         THE COURT:  I think here I can be more convincing than

11    that and say that there is no just reason for delay.  I mean,

12    it's important not to have delay here.  It is a 12-year-old

13    case.  There are many defendants.  If it's going to be a

14    reversal, the sooner we know that the better.  Hopefully I can

15    make the case.  If I fail, I fail.  But if I don't try, I fail

16    without starting.

17         MR. CORRELL:  The one thing, though, is that when

18    you're balancing these equities, why would it be to the

19    prejudice of the nonsettling defendants?

20         THE COURT:  I'm not sure it is to the prejudice.

21    That's what I'm trying to say.  Having had this oral argument,

22    having heard what Mr. Axline is willing to do in representing

23    the plaintiff Orange County Water District, I'm not so sure you

24    would be prejudiced.  You will be able to brief the issue.  You

25    will be supported in your request for oral argument.  As far as

FB3AMTBAps

 1    the next three steps of worrying about reconsideration and

 2    certiorari, it seems to me that's speculative at best.  It may

 3    be that these defendants will be back in, which is in your

 4    favor.  If they're not --

 5            MR. CORRELL:  I'm not sure that "they are back in" is

 6    in our favor.  If you look at the remand order, for example --

 7            THE COURT:  No, no, when you talk about res judicata,

 8    why do you care if they win res judicata?

 9            MR. CORRELL:  I'm not saying that if they lose it

10    we're any better off.  I thought that's what you said, your

11    Honor.

12            THE COURT:  Yes.  In other words, if they lose and

13    there are two more defendants in the case, the more defendants

14    the better, from the defendants' perspective.

15            MR. CORRELL:  But if you look at the way the case is

16    being tried, it's each site against one defendant.  And so --

17            THE COURT:  Each site?

18            MR. CORRELL:  Yes, your Honor.

19            So if you look at the stations in the remand order in

20    the matrix, where Chevron is a defendant, Shell and BP aren't,

21    and so really what happens to them is independent to what

22    happens to my client.

23            MR. PARKER:  Your Honor, Jeff Parker, representing

24    Exxon Mobil.  I just wanted to note, Mr. Correll has taken the

25    lead on this, but your Honor had asked -- kind of setting it up

FB3AMTBAps

1   as Shell and BP on one side and Chevron.  Exxon Mobil is also

2   one of the nonjudgment defendants.

3          THE COURT:  Sure.

4          MR. PARKER:  One additional point I wanted to raise is

5   the unique circumstance we're in here with the case that's been

6   remanded back to the Ninth Circuit.  An appeal would be taken

7   of the Ninth Circuit there, so it's not even --

8          THE COURT:  After a final judgment, after a trial.

9          MR. PARKER:  After a trial, correct.  So we would not

10  even be in the situation that the Second Circuit has said is a

11  bad situation, where they have to essentially prejudge the

12  issues that are pending in their circuit.  We're going to have

13  the Second Circuit and the Ninth Circuit both judging not just

14  same or similar issues but the same exact opinion.  So you

15  definitely have piecemeal appeals.

16         THE COURT:  I don't know about that either.  There is

17  no such thing as res judicata there.

18         If an appellate issue on the OCWD Act is ruled upon in

19  this 54(b) appeal, Mr. Axline, one way or the other, would it

20  bind the Ninth Circuit?  They couldn't raise it again at the

21  end of trial?  It seems to me it's decided.

22         MR. AXLINE:  I don't think that it would bind the

23  Ninth Circuit, your Honor, but it obviously would be

24  instructive, just as your opinion will be instructive, just as

25  other opinions from state courts in California will be

FB3AMTBAps

1     instructive.

2                  THE COURT:  But literally the same opinion, the same

3     opinion can be done twice?  I don't know if that's right.

4     There's an MDL here.  If they take a 54(b), if they decide the

5     issue, that might be dispositive of that issue.  I'm not sure

6     that the defendants so-called are entitled to a second bite at

7     that.

8                  MR. AXLINE:  You may be right on -- frankly I don't

9     know the answer to that.

10                 THE COURT:  Right.  I don't know either.  I'm thinking

11    out loud.  Maybe you are too.

12                 MR. AXLINE:  I do know that your opinions are going to

13    be binding on the trial court on remand.

14                 THE COURT:  Right.

15                 MR. AXLINE:  With some very limited exceptions.  So it

16    may be that principle applies, so I think it would, with

17    respect to appellate opinions as well.

18                 MR. PARKER:  So in that circumstance, your Honor, it

19    actually creates more prejudice for the remanded defendants,

20    because we're going back there with limited appellate rights in

21    the Second Circuit, maybe some amicus.

22                 THE COURT:  That may be.  We have apparently solved

23    the amicus issue.  You're going to be allowed to brief it.

24    Mr. Axline said he definitely investigated that and if there's

25    no opposition they have to take it.  But go ahead.

FB3AMTBAps

1          MR. PARKER:  But argument we're not sure on.  I

2     understand that they can say they don't oppose and we may get

3     that.

4          THE COURT:  Right.  You may.

5          MR. PARKER:  But in the meantime, I know that the

6     length that it will take the Second Circuit may vary

7     significantly, but we may be in the middle of trial back in the

8     Central District of California on those matters when the Second

9     Circuit issues an opinion here.  I mean, it's -- and then --

10          THE COURT:  Not ideal.

11          MR. PARKER:  Or we maybe even finish trial and be

12     briefing in the Ninth Circuit there.  I mean, it just seems to

13     create all of these problems and magnifies them over a single

14     circuit dealing with this because of the multiple, which I

15     think leads us full circle back to the 1292 of the discrete

16     issue, because your Honor made a good point just a second ago,

17     and that is, the res judicata doesn't affect the other

18     defendants who are being remanded for trial, so no matter what

19     the Second Circuit did on that, it wouldn't wreak havoc on the

20     rest of the case, whereas a 54(b) --

21          THE COURT:  Yes.  It may end up in a two-step dance

22     there because if it's the wrong vehicle it will be turned down

23     anyway and we will be back here having the same 54(b)

24     conversation four months from now, and that's not efficient.

25     I'd rather try for the one that's going to work.

FB3AMTBAps

1          MR. CORRELL:  Two letters ago the district took the

2     position --

3          THE COURT:  Two what?

4          MR. CORRELL:  The two conference letters ago the

5     district took the position that 1292 --

6          THE COURT:  I know, but they're allowed to think and

7     rethink.  Mr. Condron thinks it doesn't meet the standard.

8     Mr. Axline now thinks that 54(b) is preferable.  I've been

9     swinging back and forth myself as to which was the right away

10    to go.  I wasn't convinced the 1292(b) standard was met.  I

11    think 54(b) is.  I think they're more likely to agree with

12    Mr. Axline on that.  In weighing the balancing test that

13    Mr. Axline refers to, it's not ideal for anybody.  So I just

14    have to weigh the interests of, essentially, three different

15    groups here: the plaintiff, the dismissed defendants, and the

16    nonjudgment defendants.  I have to weigh it all out and go one

17    way or the other and move on.

18         MR. CORRELL:  I've never heard the district take the

19    position that the standard in 1292(b) hasn't been met.  They

20    may say 54 is better, but once again --

21         THE COURT:  I think they have said this much.  It's

22    iffier, as to whether the Circuit will take it.  That much

23    they've said.  He's not going to stand up and say it's not

24    going to meet the standard because he would like this to get up

25    there.  He doesn't want to say that because if that's the one I

FB3AMTBAps

```
 1    prefer he wants me to do it.  But I think he's saying it's an
 2    iffier question with respect to whether they'll take it; we
 3    could lose four or five months while they figure it out, while
 4    I figure it out and they figure it out -- although I'm going to
 5    go fast after this.  I want to get something signed.
 6             So I think there should be appellate review on this
 7    res judicata issue.  Maybe I should have done this months ago.
 8    I feel guilty.
 9             MR. CORRELL:  But what I would say as the nonsettling
10    defendants is --
11             THE COURT:  You mean nonjudgment.
12             MR. CORRELL:  Nonjudgment, yes.  -- nonjudgment
13    defendants is that if there's going to be a risk taken here, I
14    think Orange County should bear it.  I think if they want to
15    get this issue up on appeal, instead of prejudicing our rights
16    they should take the risk that 1292(b) is granted.
17             THE COURT:  I don't know if there's more to say.
18             Mr. Condron.
19             MR. CONDRON:  Your Honor, Mr. Axline said something
20    earlier that I just don't want to leave hanging out on the
21    record, which was that if we forwent the right to raise issues
22    under appeal, what the Court had asked --
23             THE COURT:  I don't remember that.  You gave up --
24             MR. CONDRON:  Yes.  What had happened was, your Honor
25    had asked me whether we were planning to raise any issues on
```

FB3AMTBAps

1   appeal when we having this discussion at a prior conference.

2   My point was that we're not going to be cross-appealing any

3   issues.

4              THE COURT:  Right.

5              MR. CONDRON:  We reserve the right to raise any issue

6   as we can as an alternative ground for affirmance on appeal.

7   That probably wouldn't be an issue if you were to grant 1292(b)

8   because it is a discrete issue.  But on 54(b) we absolutely

9   reserve the right to raise any and all issues that support the

10  judgment on appeal.  I just want to make that clear on the

11  record.

12             THE COURT:  Would Shell and BP submit a proposed

13  opinion in a short amount of time?  I don't care if you call it

14  a brief or an opinion.  It really doesn't matter.  As I said,

15  I'm not going to sign anybody else's opinion anyway.  But I

16  would like to hear the opposing framing of the issue.  But I'm

17  talking about quite quickly, like a week from Friday?

18             MS. WEIRICK:  Yes, your Honor, we can do that.

19             THE COURT:  This Friday.  So, what, the 13th of

20  November?

21             MR. CONDRON:  Yes, your Honor.

22             THE COURT:  I assume that nonjudgment defendants don't

23  want to do that.  They wanted me to do it.  They're not going

24  to submit a proposed opinion and brief.

25             MR. CORRELL:  Well, your Honor, all we've had is the

FB3AMTBAps

1    preconference letters on this.

2           THE COURT:  I don't need briefing.  I'm going to

3    decide what I want to do.  I've been over this issue twice.

4    It's been months.  It's time for me to act.

5           MR. CORRELL:  I understand, your Honor.

6           THE COURT:  So I'm not taking briefing on it.  If you

7    want oral argument, you want to argue more, talk more.  I don't

8    need full briefing on whether to enter a 54(b) or a 1292(b).

9    We've been over and over it.

10           MR. CORRELL:  I understand, your Honor.  All I ask is

11    the ability to file a formal objection or something like that

12    so that we have actually something in the record.

13           THE COURT:  You do.  You have this argument on the

14    record.  You have the previous argument on the record.  You can

15    docket your letter, you probably have, your conference letter.

16    I don't think everything is entitled to what's formally called

17    a memorandum of law.  I mean, you've gotten your letters.

18    You've gotten your oral argument.  If there's anything you want

19    to add, I'm here.  I'm happy to listen further.  You've cited

20    the case you relied on.  You've argued the case you relied on.

21    You quoted it to me.  What more do you want to say?

22           MR. CORRELL:  Well Mr. Axline for the first time

23    raised this argument that it's a balancing test under Rule --

24           THE COURT:  He did say that.

25           MR. CORRELL:  But I haven't seen that in the case law.

FB3AMTBAps

1   So I do want to go back and look and --

2            THE COURT:  All right.  You can submit something too

3   on the 13th, in opposition.

4            MR. AXLINE:  To help Mr. Correll, we pointed to your

5   opinion in the *City of New York* case, where you said there was

6   balancing.

7            THE COURT:  Where I said it.

8            MR. AXLINE:  Yes.

9            THE COURT:  Did I cite anything for that proposition?

10  You seem to have it in front of you.  Do you have it in front

11  of you?

12           MR. AXLINE:  Yes.

13           THE COURT:  Did I have any citation for that

14  principle?  Or I did just say it?

15           MR. AXLINE:  I'm quoting from the opinion.  This is

16  the Westlaw version, so I don't have a page cite, but:

17  "Importantly, a district court should consider the efficiency

18  interests of both the district and appellate courts as well as

19  the balance of equities as to the parties."

20           THE COURT:  And no citation.

21           MR. AXLINE:  No, there is a citation.

22           THE COURT:  Well, that's what I was asking.

23           MR. AXLINE:  I'm sorry.  That's citing *Curtiss-Wright*,

24  446 U.S. at 8.

25           THE COURT:  That's a higher court.

FB3AMTBAps

| | |
|---|---|
| 1 | All right, Mr. Correll.  So you have that.  It may be |
| 2 | that the Supreme Court has set a balancing test.  Check it out. |
| 3 | MR. CORRELL:  Yes, your Honor. |
| 4 | THE COURT:  All right.  This letter or brief, whatever |
| 5 | you call it, not more than ten pages double-spaced.  Same for |
| 6 | you.  I'll just have to make a decision one way or another and |
| 7 | move on. |
| 8 | All right.  Anybody want to say anything further?  No? |
| 9 | We're all set? |
| 10 | OK.  Thank you. |
| 11 | MR. CORRELL:  Thank you, your Honor. |
| 12 | MR. WALSH:  Your Honor, thank you. |
| 13 | Your Honor, do you want early next year for another |
| 14 | conference date, while we're here? |
| 15 | THE COURT:  Sure.  You're thinking January?  Do you |
| 16 | want December or January? |
| 17 | MR. WALSH:  I think to allow everyone to get through |
| 18 | the holidays makes a little more sense. |
| 19 | MR. CORRELL:  We have one case, we have a lot of |
| 20 | filings due at the end of the year anyway, so it probably makes |
| 21 | sense a couple weeks into January to give people time to digest |
| 22 | that. |
| 23 | THE COURT:  OK.  We may have to open the calendar and |
| 24 | look for a January date. |
| 25 | What day of the week do you travel, or -- I've |

FB3AMTBAps

1   forgotten.  Do you like early in the week?

2          MR. AXLINE:  Tuesday, Wednesdays, or Thursdays is

3   equally --

4          THE COURT:  How about Wednesday the 13th of January at

5   4:30?

6          MR. AXLINE:  I'm going to be out of the country then,

7   your Honor, not necessarily that I have to be here, but if it

8   could be a week later I would be back.

9          THE COURT:  How about a week earlier?

10          MR. AXLINE:  I'm leaving on the 6th of January.

11          THE COURT:  How about if we do it without you?

12          MR. AXLINE:  That would actually be something of a

13   relief, your Honor.

14          THE COURT:  That is really the right week, so let's --

15          MR. CORRELL:  You had to put up a good fight for

16   Mr. Miller.

17          THE COURT:  So it's the 13th at 4:30.

18          COUNSEL:  Thank you, your Honor.

19          THE COURT:  And of course if it turns out there is no

20   agenda, you know how to cancel it.

21          MR. WALSH:  Thank you, your Honor.

22          THE COURT:  Folks on the phone, I'm going to hang up

23   now.

24          Thank you.

25                              o0o