**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW**
**YORK**

| | |
|---|---|
| In Re: Methyl Tertiary Butyl Ether ("MTBE")<br>Products Liability Litigation | Master File No. 1:00 – 1898<br>MDL 1358 (SAS) |

**This document refers to:**

*All Cases in MDL 1358 in which the Chevron*
*Defendants have been properly named and served,*
*and for which an answer is due.*

**THE CHEVRON DEFENDANTS' THIRTEENTH**
**AMENDED MASTER**
**ANSWER AND AFFIRMATIVE DEFENSES**

Pursuant to the Master Answer agreement among the parties and CMO #6, defendants Chevron U.S.A. Inc. (including its divisions Chevron Products Company and ChevronTexaco Global Trading), Chevron Corporation (f/k/a ChevronTexaco Corporation), Texaco Inc., TRMI-H LLC (f/k/a TRMI Holdings Inc., f/k/a Texaco Refining and Marketing Inc.), Kewanee Industries, Inc., Unocal Corporation, Union Oil Company of California, Chevron Puerto Rico, LLC (f/k/a Texaco Puerto Rico Inc., n/k/a PC Puerto Rico LLC), Chevron Estrella Puerto Rico Inc. (f/k/a Texaco Estrella Puerto Rico Inc.), Chevron International Oil Company, Inc., Chevron Caribbean Inc., Texaco International Trader Inc. and Four Star Oil and Gas Company (collectively, "the Chevron Defendants") answer the complaints in the MDL 1358 cases for which an answer is due, and in which they have been properly named and served, as follows:

**I.      STATEMENTS REGARDING SELECT ALLEGATIONS**

**A.             Basic Defendant Information**

Defendant Chevron U.S.A. Inc. (f/k/a Gulf Oil Corporation) is a Pennsylvania corporation headquartered in San Ramon, California.   Chevron U.S.A. Inc. (d/b/a

Chevron Products Company, d/b/a Chevron Chemical Company) is the only Chevron Defendant that currently refines, distributes, markets or sells gasoline products in the United States. Chevron U.S.A. Inc. notes, however, that it sold substantially all of its Chevron and legacy Gulf retail outlets and other marketing assets in the Northeast region of the United States in 1986 and it has not been involved at all in the retail market in that region of the country since 2010, if not earlier.  Chevron U.S.A. Inc. sold its refinery in Philadelphia, Pennsylvania in 1994.

Defendant Chevron Corporation (f/k/a ChevronTexaco Corporation)[1] is a Delaware corporation headquartered in San Ramon, California.  Chevron Corporation did not refine, market, distribute or sell gasoline or neat MTBE in the United States, or Puerto Rico, at any time during the time period relevant to this litigation.  Chevron Corporation does not conduct business in, or otherwise have any of the requisite contacts with, the Commonwealth of Puerto Rico or the States of Illinois, Indiana, Iowa, Missouri, Massachusetts, Pennsylvania, New Jersey, New York or Vermont. Consequently, the Court lacks personal jurisdiction over Chevron Corporation with regard to any MDL 1358 cases filed in these jurisdictions.   Nothing herein shall be deemed a waiver or relinquishment of Chevron Corporation's personal jurisdiction defense in such cases.

Four Star Oil & Gas Company ("Four Star") is a Delaware Corporation having offices in San Ramon, California.

Defendant Texaco Inc. is a Delaware corporation having offices in San Ramon, California.  Texaco Inc. no longer engages in active operations in the United States.  In or about December 1984, Texaco Inc. transferred substantially all of its domestic gasoline refining and marketing assets to an independent subsidiary then known as Texaco Refining and Marketing Inc. (n/k/a TRMI-H LLC).  Texaco Inc. has not refined or marketed gasoline in the United States

---

[1] From October 2001 until May 2005, Chevron Corporation was known as ChevronTexaco Corporation.

DMSLIBRARY01\27483292.v1

at any time since December 1984.

Defendant TRMI-H LLC (f/k/a TRMI Holdings Inc., f/k/a Texaco Refining and Marketing Inc.) is a Delaware corporation having offices in San Ramon, California.  TRMI-H LLC no longer engages in active operations in the United States.  Prior to 1985, TRMI-H LLC was known as Getty Refining and Marketing Company and refined and marketed Getty-branded gasoline in certain areas of the United States.  From approximately January 1985 until December 1988, TRMI-H LLC was known as Texaco Refining and Marketing Inc. and refined and marketed Texaco-branded gasoline in certain areas of the United States.  In or about December 1988, Texaco Refining and Marketing Inc. (n/k/a TRMI-H LLC) exited the U.S. gasoline market when it transferred all of its operating assets to Star Enterprise and an entity now known as TMR Company.  At that time, Texaco Refining and Marketing Inc.'s name was changed to TRMI Holding Inc.

Defendant Kewanee Industries, Inc. is a Delaware corporation having offices in San Ramon, California.  Kewanee Industries, Inc. did not refine, market or distribute gasoline (with or without MTBE) in the United States during the relevant time period for this case.

Defendant Unocal Corporation ("Unocal") is a Delaware corporation having offices in San Ramon, California.  Unocal is a holding company that no longer engages in active operations in the United States.  Unocal did not refine, market or distribute gasoline (with or without MTBE) in the United States during the relevant time period for these cases.

Unocal's former operating subsidiary, defendant Union Oil Company of California ("Union Oil"), is a California corporation headquartered in San Ramon, California.  Union Oil no longer engages in active operations in the United States. Union Oil refined, manufactured and/or distributed gasoline containing MTBE in certain areas of the United States from

approximately 1986 until 1997, when Union Oil exited the U.S. gasoline market.  At various times prior to 1997, Union Oil operated refineries in the following locations:  Wilmington, CA; San Francisco, CA; Beaumont, Texas; Lemont, Illinois; and Health, Ohio.   Union Oil began blending MTBE into gasoline at its California refineries in approximately 1986.  Union Oil did not blend MTBE into gasoline at its Illinois or Ohio refineries.  Upon information and belief, Union Oil may have blended MTBE into certain gasoline produced at its former Beaumont Refinery in approximately 1988, shortly before that refinery was closed in 1989.  On March 31, 1997, Union Oil sold all of its refining, marketing and distribution assets to Tosco Corporation and exited the U.S. gasoline market.

The following Chevron and Texaco entities not identified above are named as defendants in 07-CV-10470:  Chevron Puerto Rico, LLC (f/k/a Texaco Puerto Rico Inc., n/k/a PC Puerto Rico LLC), Chevron Estrella Puerto Rico Inc. (f/k/a Texaco Estrella Puerto Rico Inc.), Chevron International Oil Company, Inc., and Chevron Caribbean Inc.  These defendants are also named in 14-CV-1014, as well as the following Chevron and Texaco entities or divisions not identified above: ChevronTexaco Global Trading and Texaco International Trader Inc. (collectively the "Chevron Puerto Rico Defendants").  Chevron Estrella Puerto Rico, Inc. (f/k/a Texaco Estrella Puerto Rico, Inc.), Chevron International Oil Company Inc. and Chevron Caribbean Inc. never marketed or distributed gasoline or MTBE in the Commonwealth of Puerto Rico.  Chevron Estrella Puerto Rico, Inc. was a Delaware corporation and was properly dissolved under Delaware law on April 9, 2008.  ChevronTexaco Global Trading was division of Chevron U.S.A. Inc. and never issued stock.  Chevron Texaco Global Trading ceased to exist on June 30, 2004.  Texaco International Trader Inc. was a Delaware corporation and was properly dissolved under Delaware law on July 21, 2002.  Chevron Puerto Rico, LLC (f/k/a Texaco

Puerto Rico Inc.) marketed gasoline in the Commonwealth of Puerto Rico until July 31, 2012. The Chevron Puerto Rico Defendants, along with Chevron Corporation and Chevron U.S.A. Inc., deny any liability for the alleged damages, costs and other relief sought by Plaintiffs.

**B.        Allegations Regarding Production of MTBE or TBA**

Defendant Chevron U.S.A. Inc. (d/b/a Chevron Products Company) manufactured and blended MTBE for a period of time at its refineries in the following locations:  El Segundo, CA; Richmond, CA; Pascagoula, MS; Philadelphia, PA; and Port Arthur, TX.  Chevron U.S.A. Inc. no longer manufactures or blends MTBE at any of its refineries in the United States. Chevron U.S.A. Inc. has never manufactured or blended MTBE at any refinery in the Commonwealth of Puerto Rico.

Defendant Chevron Corporation (f/k/a ChevronTexaco Corporation) has never manufactured or blended gasoline containing MTBE or neat MTBE in the United States or the Commonwealth of Puerto Rico.  Chevron Corporation exited the U.S. gasoline market in or about 1977, when it domestic operating assets were transferred to Chevron U.S.A. Inc.

Defendant Four Star Oil and Gas Company did not refine, manufacture, distribute or sell gasoline containing MTBE, or neat MTBE, in the United States during the relevant time period for these cases.

Defendant Texaco Inc. has never manufactured MTBE in the United States or the Commonwealth of Puerto Rico.  In the past, two former subsidiaries of Texaco Inc., Texaco Chemical Company (n/k/a Huntsman Chemical) and Texaco Chemical Inc., manufactured MTBE at facilities located in Port Neches, Texas.  Those facilities were sold to Huntsman Specialty Chemicals Corporation or related entities in 1994 and 1997, respectively. For a period of time prior to 1985, Texaco Inc. blended MTBE into some, but not all, premium grade

gasoline products at its former refinery located in Port Arthur, TX.

Defendant TRMI-H LLC (f/k/a TRMI Holdings Inc., f/k/a Texaco Refining and Marketing Inc.) has never manufactured neat MTBE in the United States or the Commonwealth of Puerto Rico.  For a period of time between 1985 and 1989, TRMI-H LLC (then known as Texaco Refining and Marketing Inc.) blended MTBE into certain gasoline products at its former refineries located in Port Arthur, TX and/or Convent, LA.   In or about January 1989, the Port Arthur, TX and Convent, LA refineries were sold to  Star Enterprise.

Defendant Kewanee Industries, Inc. did not refine, manufacture, distribute or sell gasoline containing MTBE, or neat MTBE, in the United States during the relevant time period for these cases.

Defendants Unocal and Union Oil never manufactured or sold neat MTBE in the United States.  As noted above, Union Oil produced gasoline containing MTBE at its two former California refineries for a period of time prior to its divestiture of all refining and marketing assets to Tosco Corporation in 1997.  Union Oil also may have produced gasoline containing MTBE at its former Beaumont, TX refinery for a short period of time in 1988 shortly before that refinery was closed in 1989.

The Chevron Puerto Rico Defendants have never produced or sold neat MTBE in the Commonwealth of Puerto Rico.

**C.        Allegations Regarding Properties and Behavior of MTBE**

The Chevron Defendants admit that MTBE is an aliphatic ether that does not occur naturally.  The Chevron Defendants admit that there are various methods for the production of MTBE and that one method of production is from methanol and isobutylene.

The Chevron Defendants state that solubility and mobility are relative properties and that while MTBE and other ethers may be more soluble and mobile in water than certain gasoline

6

components, such as the BTEX compounds, they are less soluble and mobile in water than other components sometimes blended into gasoline, such as ethanol.  The Chevron Defendants further state that MTBE's behavior in the environment -- and its behavior relative to other gasoline constituents -- is dependent on a variety of factors, including the nature or method of its release, the geological setting, and environmental and microbial factors.

The Chevron Defendants state that while under certain conditions MTBE may biodegrade less readily than some other components of gasoline, MTBE has been found to naturally attenuate and biodegrade in numerous ways.

**D.        Allegations Regarding Properties and Behavior of TBA**

The Chevron Defendants admit that TBA is the product of the hydrolysis of isobutylene. The Chevron Defendants admit that TBA can be an intermediate product of MTBE biodegradation.

The Chevron Defendants state that solubility and mobility are relative properties and that TBA is more soluble and mobile in water than certain gasoline components, such as the BTEX compounds.  The Chevron Defendants further state that TBA's behavior in the environment -- and its behavior relative to other components of gasoline -- is dependent on a variety of factors, including the nature or method of its release, the geological setting, and environmental and microbial factors.

**E.        Allegations Regarding Taste and Odor**

The Chevron Defendants admit that individuals vary in their ability to detect the taste and odor of MTBE in water.   The Chevron Defendants state that responsible federal and state regulatory agencies have considered and adopted standards fully protective of MTBE taste and odor concerns.

**F.        Allegations Regarding Health Effects of MTBE**

7

Plaintiffs' allegations of dire human health concerns from MTBE are unsubstantiated. MTBE has been studied publicly by scientists and government agencies for more than 20 years. MTBE has never been reliably linked to cancer, and there is no consensus in the scientific field that it is carcinogenic; indeed, major world health organizations have long refused to list MTBE as a human carcinogen. The Chevron Defendants state that responsible federal and state regulatory agencies have considered and adopted standards fully protective of any alleged health concerns related to MTBE.

**G.        Allegations Regarding Storage and Handling of Gasoline**

The Chevron Defendants admit that it is commonly known that gasoline is sometimes released into the environment from USTs and other means, and state that, according to reports, major oil companies have spent hundreds of millions of dollars or more over the past 30 years to eliminate or reduce leaks, and to improve leak detection. The Chevron Defendants state that they are aware that most adults understand that gasoline should be handled carefully and should not be spilled.

**H.        Allegations Regarding Knowledge of MTBE Contamination at Particular Locations In 1980s**

The complaints purport to describe various publicly reported incidents of MTBE contamination in New Jersey, New York and Maine in the 1980s. The Chevron Defendants state that it was widely known among government regulators in the 1980s that various incidents involving MTBE contamination – including the ones plaintiffs' complaints regularly list – had occurred.

The Chevron Defendants admit that the 1986 Garrett and Moreau paper described MTBE presence in certain wells in Maine. The Chevron Defendants admit that information about MTBE was known to government and the scientific community, as the 1986 Garrett and Moreau

paper illustrates.

I.       **Allegations Regarding Participation In Industry Associations or Lobbying Activities**

The chemical properties of ethers like MTBE have been known in the public arena for many years. Plaintiffs' claim that Defendants somehow hid this information from them, or from federal or state regulators, is baseless. The Chevron Defendants deny that they had any agreement with another defendant to withhold from plaintiffs or government regulators information concerning MTBE.

The Chevron Defendants state that prior to 1990, Congress was preparing to take action to address the Nation's smog problem. The Chevron Defendants admit that federal government agencies were aware of MTBE's chemical characteristics in 1986 or earlier, and that EPA held public meetings about MTBE in 1986. Like the federal government, one or more of the Chevron Defendants were aware of the Garrett and Moreau paper in or about 1986.

The Chevron Defendants admit that one or more employees of certain Chevron Defendants may have participated in an American Petroleum Institute ("API") committee called the Toxicology Committee. The Chevron Defendants admit that a Testing Consent Order was entered with EPA in or about 1988 by various major oil companies.

In response to plaintiffs' allegation that Congress adopted the Reformulated Gasoline (RFG) Program as part of the 1990 Amendments to the Clean Air Act "[a]s a result of tremendous lobbying efforts by the industry, including Defendants," the Chevron Defendants state that many major oil companies in fact actively resisted the RFG Program's requirement of oxygen content levels.

J.       **Allegations Regarding Requirements and Effects of the 1990 Clean Air Act Amendments**

The Chevron Defendants state that although the 1990 Clean Air Act Amendments

DMSLIBRARY01\27483292.v1

("CAAA") did not literally require use of MTBE as a gasoline additive, in practical terms the CAAA certainly did compel MTBE's use.   EPA and Congress knew that the oxygen requirements of the Act could not and would not be met without MTBE.   The Chevron Defendants state that beginning in the late 1970s, following the U.S. EPA's mandate to reduce lead in gasoline, most U.S. refiners began evaluating oxygenates and octane enhancers such as ethanol and MTBE.  In 1990, with the amendments to the Clean Air Act, the federal government mandated an increase in the use of oxygenates (up to 2.7% oxygen content) to meet ambient carbon monoxide air requirements in winter gasoline in many cities (beginning in 1992).   In 1995, various oxygenates were extended by regulation to year-round use for severe, non-attainment ozone areas in the United States.   Reformulated gasolines used since that time have sometimes contained between 10% and 15% MTBE by volume, or up to 10% ethanol, to meet government mandates on oxygenate content.

The Chevron Defendants deny that ethanol was available in sufficient supply to fully meet the demand for oxygenated gasoline in the RFG and oxyfuel regions when the Amendments requiring 2% oxygen content in year-round gasoline in areas using RFG became effective.

The Chevron Defendants state that they complied with the legal requirements of the lead phase-out, the RFG Program and the Oxygenated Fuel Program, to the extent applicable to their activities.   The Chevron Defendants further state that several government agencies have concluded that the use of MTBE in gasoline has contributed substantially to reducing air pollution.

## K.        Allegations Regarding MTBE-Related Actions Taken By State or Federal Governmental Bodies

The Chevron Defendants state that in 2000, EPA provided advance notice of its intent to

DMSLIBRARY01\27483292.v1

initiate a rulemaking pursuant to the Toxic Substances Control Act ("TSCA") to eliminate or limit the use of MTBE as a fuel additive.  No such rulemaking was ever initiated.  The Chevron Defendants state that certain proposed legislation in the U.S. Congress may limit the use of MTBE in gasoline in the future.  The Chevron Defendants state that certain state legislatures or regulatory bodies have passed laws or adopted regulations to limit or eliminate the use of MTBE in gasoline.  The details of such laws are a matter of public record.

**L.        Allegations Regarding Plaintiffs' Claimed Inability To Identify Relevant Sources of Gasoline Leaks Or Spills Affecting a Given Site**

Gasoline leaks, whether containing MTBE or not, are frequently traceable to a specific "point source," limited to the immediate geographic area of the source, and remediable.  The Chevron Defendants deny that gasoline can never be traced from a contamination site to its terminal or refinery source.

**M.        Allegations Purporting To Quote Or Summarize Documents**

Numerous paragraphs in each complaint purport to quote from or summarize documents, statutes and regulations.  These written materials speak for themselves.  The documents, statutes and regulations referenced by plaintiffs, which are not attached to the complaints, are the best evidence of their content, and the Chevron Defendants therefore deny plaintiffs' attempts to summarize or characterize the contents of these written materials.

**N.        Allegations Regarding Defendants Unrelated To The Chevron Defendants**

The Chevron Defendants are without knowledge or information sufficient to form a belief as to the truth of the matters averred in the complaints regarding the specific statements, acts or omissions of defendants unrelated to the Chevron Defendants.

**O.        Allegations Regarding Particular Claims or Counts**

In response to the portions of the complaints purporting to state particular common law or

DMSLIBRARY01\27483292.v1

statutory claims, the Chevron Defendants incorporate each paragraph of this Master Answer as if fully restated herein.  The Chevron Defendants deny they are liable for any legal claim in any MDL 1358 complaint.

**P.          Allegations Regarding Claimed Injuries or Damages**

Some complaints make claims about contamination of specific wells or water resources, and others do not.  The Chevron Defendants are without knowledge or information sufficient to form a belief as to the truth of the matters averred in the complaints regarding specific incidents of alleged contamination.  The Chevron Defendants believe publicly available documents and discovery to be supplied by plaintiffs will demonstrate that many of the wells or water resources at issue have not been impacted by MTBE, or have been impacted only at levels well below state action standards for MTBE.

With regard to alleged damages, the allegations require no further answer.  To the extent that further answer is deemed necessary, the Chevron Defendants admit that plaintiffs seek the relief mentioned in the complaints, but deny that plaintiffs are entitled to any relief.

**Q.          Plaintiffs' Demands for Jury Trials**

Plaintiffs in all actions have demanded a trial by jury of all claims asserted in the complaints.   These jury demands require no answer.   To the extent any answer is deemed necessary, the Chevron Defendants admit that the plaintiffs demand jury trials, but deny that they are entitled to them on some or all of their claims.

**R.          Plaintiffs' Allegations of Intentional, Willful, Deliberate, or Negligent Acts**

The Chevron Defendants deny that they intentionally, willfully, deliberately, or negligently committed any acts that caused or foreseeably could have caused harm to plaintiffs or any other party.

DMSLIBRARY01\27483292.v1

**S.**            **Plaintiffs' Allegations of Representational Standing**

Certain California plaintiffs have alleged a right to bring an action in a representative capacity.  By orders dated June 9 and 22, 2005, the Court either struck all such allegations or confirmed that such allegations have been disavowed by the plaintiff.  On the basis of these Court orders, the Chevron Defendants decline to answer these allegations.  To the extent any answer is deemed necessary, the Chevron Defendants deny that any plaintiff has standing to bring claims in a representative capacity.

**T.**            **Certain Plaintiffs' Allegations of Ownership of Groundwater Resources**

To the extent that plaintiffs allege that they own or have the authority to protect groundwater, groundwater resources, water resources, water supplies, water rights, or drinking water wells, or any other right in and to water or groundwater, the Chevron Defendants deny these allegations and deny that these plaintiffs have standing to bring any claim based on allegations of property damage on behalf of themselves or any other person or entity.

**U.**            **Regulatory Powers of Other Agencies**

Certain California plaintiffs allege that they are entitled to assert claims to protect groundwater resources or the environment without regard to any impact on water supply wells owned or operated by them.  The Chevron Defendants deny that these plaintiffs possess any such right.  The Chevron Defendants further allege that, pursuant to statutes duly enacted by the California legislature, state agencies that are not parties to these lawsuits have been delegated the power and authority to (1) determine what maximum levels of contaminants, including MTBE and/or TBA, are permissible in potable water distributed in California and (2) manage activities to investigate, delineate, remediate and cleanup actual or suspected MTBE and/or TBA contamination, including determining when sufficient cleanup has been achieved.

DMSLIBRARY01\27483292.v1

**V.**         **California Civil Code Section 1882 Claims**

Certain California plaintiffs have alleged causes of action and/or prayers for treble damages and attorneys' fees based on California Civil Code § 1882 et seq.  By order dated May 31, 2005, the Court dismissed and struck these allegations from the complaints.  On the basis of the Court order, the Chevron Defendants decline to answer these allegations.  To the extent any answer is deemed necessary, the Chevron Defendants deny that any plaintiff is entitled to recovery under California Civil Code § 1882 et seq.

**W.**         **Response To TSCA Allegations**

The Chevron Defendants generally deny that they have violated TSCA.  TSCA does not require submission of the sort of data that plaintiffs allege the Chevron Defendants should have submitted to EPA regarding incidences of releases of gasoline or the occurrence of MTBE.  The Chevron Defendants have submitted extensive information and data about releases of gasoline to the proper authorities.  EPA's 2000 Advance Notice of Proposed Rulemaking placed no legal obligation of disclosure on the Chevron Defendants.  Moreover, an Advance Notice of Proposed Rulemaking is not a rule promulgated under TSCA and therefore cannot provide the basis for a TSCA citizen suit.

Even if information about gasoline releases or the occurrence of MTBE were within the scope of TSCA, there could be no violation for failure to submit such information because EPA already has extensive information on those topics, and under EPA guidelines there is no need to report information to EPA under TSCA when EPA already is aware of essentially the same information.  EPA is well-informed about releases from service stations and the occurrence of MTBE.  EPA has a special department, the Office of Underground Storage Tanks, which gathers and publishes information about the extent of releases of gasoline and the occurrence of MTBE.  Likewise, EPA receives voluminous data on those subjects from other federal agencies.

14

The Chevron Defendants further deny that plaintiffs have complied with the statutory requirements for filing a citizen suit under TSCA.

## X.        Plaintiffs' Allegations Regarding MTBE's Degredation Product:  TBA

The Chevron Defendants admit that TBA is the product of the hydrolysis of isobutylene.  The Chevron Defendants admit that TBA can be an intermediate product of MTBE biodegradation.   The Chevron Defendants are without sufficient knowledge or information as to the truth of the remaining allegations concerning the use of TBA as an oxygenate in gasoline.

The Chevron Defendants state that solubility and mobility are relative properties and that TBA is more soluble and mobile in water than certain gasoline components.  The Chevron Defendants further state that TBA's behavior in the environment -- and its behavior relative to BTEX -- is dependent on a variety of factors, including the nature or method of its release, the geological setting, and environmental and microbial factors.

The Chevron Defendants are without sufficient knowledge or information as to the truth of the remaining allegations concerning the properties, characteristics, persistence, and remediation of TBA in groundwater, or its presence in water supplies.

The Chevron Defendants are without sufficient knowledge or information as to the truth of the allegations concerning the health effects of TBA.

## II.             GENERAL DENIAL OF REMAINING ALLEGATIONS

The Chevron Defendants deny the remaining allegations in the complaints in MDL 1358 cases for which an answer is presently required, and in which they have been properly named and served.

## III.             RESERVATION OF RIGHT TO AMEND

The Chevron Defendants reserve the right to amend this Master Answer.

DMSLIBRARY01\27483292.v1

IV.          **AFFIRMATIVE DEFENSES APPLICABLE TO ALL CASES**

For their separate defenses to the complaints in MDL 1358 cases for which an answer is presently required, and in which they have been properly named and served, the Chevron Defendants state as follows:

1.       Plaintiffs' claims are barred in whole or in part by the doctrine of federal preemption.

2.       At all relevant times, the Chevron Defendants' actions and products complied with and were undertaken pursuant to applicable federal, state, and local laws, rules, regulations and specifications.

3.       Plaintiffs' claims are barred in whole or in part because federal, state and/or local authorities and agencies have mandated, directed, approved and/or ratified the alleged actions or omissions of the Chevron Defendants.

4.       All acts and conduct of the Chevron Defendants, as alleged in the complaints, conformed to and were pursuant to statutes, government regulations and industry standards, and were based upon the state of knowledge existing at all material times alleged in the complaints.

5.       The relief sought by plaintiffs' complaints is, in whole or in part, within the particular expertise of and is being addressed by federal and state governments, and their relevant agencies, and thus this Court should decline to exercise jurisdiction over this matter pursuant to the doctrine of primary jurisdiction.

6.       Plaintiffs have failed to exhaust their administrative remedies.

7.       Plaintiffs have a plain, common, adequate and speedy remedy at law.   The equitable causes of action alleged in the complaints are thus barred.

8.       Plaintiffs are barred from seeking strict liability for design defect as any

DMSLIBRARY01\27483292.v1

attempt to reexamine the mandatory cost-benefit analysis delegated to and performed by the EPA pursuant to its obligations under the Clean Air Act (CAA) would be impermissible given that Congress, through Section 211 of the CAA, authorized the EPA, and not the courts, to perform the cost-benefit analysis.

9.      If it is determined that plaintiffs or anyone on whose behalf plaintiffs are allegedly suing, was injured, as set forth in the complaints, which the Chevron Defendants deny, the Chevron Defendants allege that such hardship is outweighed by the convenience and public service rendered by the Chevron Defendants' actions.

10.      Each purported cause of action asserted in the complaints is barred under the doctrine of primary assumption of risk in that the general public, by and through its elected representatives and their appointees, knew and understood the alleged risks of harm presented by the use of MTBE, if any, and elected nevertheless to proceed to require the use of gasoline oxygenates and to specifically permit the use of MTBE as a gasoline oxygenate.

11.      To the extent that plaintiffs have received or may receive the requested relief from a governmental agency, the Chevron Defendants assert their entitlement to an appropriate set-off or reduction of any judgment against them.

12.      The appropriate forum for plaintiffs' claims is an administrative agency, and therefore all proceedings before this Court should be stayed pending administrative resolution of the issues.

13.      The claims set forth in the complaints fail, in whole or in part, based on the doctrine of election of remedies.

14.      Each purported cause of action of the complaints as applied to the Chevron Defendants is barred because the relief sought therein would pose unreasonable barriers and

DMSLIBRARY01\27483292.v1

substantial burdens on interstate and/or international commerce in violation of the Commerce Clause of the United States Constitution and/or the North American Free Trade Agreement.

15.     The complaints fail to state a claim upon which relief may be granted and should, therefore, be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

16.     Because plaintiffs have not suffered any cognizable harm and have not incurred any present damages, there is no current case or controversy and thus, plaintiffs' claims are not ripe for adjudication.

17.     Plaintiffs suffered no losses or injuries that were proximately caused by the Chevron Defendants.

18.     The Chevron Defendants' conduct was not the cause in fact of any injuries alleged by plaintiffs.

19.     Plaintiffs have failed to state a cause of action for nuisance because they have neither alleged nor suffered any particularized injury.

20.     The alleged injuries and damages, if any, suffered as a result of conduct legally attributable to the Chevron Defendants is *de minimus* and therefore any injunction would pose a disproportionate hardship on the Chevron Defendants, as well as on the public, in comparison to the injury and or damages allegedly suffered by plaintiffs.  Accordingly, plaintiffs are not entitled to injunctive relief as to the Chevron Defendants as a matter of law.

21.     Plaintiffs do not have a legally cognizable injury unless or until the alleged MTBE contamination exceeds state action levels.

22.     Plaintiffs may not seek attorneys' fees as an element of relief.

23.     Plaintiffs have failed to properly present any claim for attorneys' fees.

24.     Because plaintiffs have sued multiple parties, under multiple causes of action, with divisible damages, any claim for attorneys' fees must be proportioned between same.

25.     The claims set forth in the complaints are barred, in whole or in part, by the mootness doctrine.

26.     The complaints and each purported cause of action are barred, in whole or in part, by the defense of laches.   Plaintiffs' unreasonable and inexcusable delay in filing these actions caused substantial prejudice to the Chevron Defendants.

27.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations.

28.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of repose.

29.     Plaintiffs are estopped by their conduct from asserting any of the purported claims alleged against the Chevron Defendants in the complaints.

30.     Plaintiffs have not investigated the cause of the alleged harm or attempted to identify the actual party or parties responsible for their alleged injuries.

31.     Plaintiffs cannot establish the required predicates for their theories of collective liability, and therefore their defendant-identification burden remains.  In the event that the defendant-identification burden is shifted in the future, the Chevron Defendants deny that it contributed to the contamination at issue.

32.     Plaintiffs' claims are barred in whole or in part by the doctrine of waiver.

33.     Plaintiffs assumed the risk of all acts, injuries, and damages that plaintiffs now assert against the Chevron Defendants.

34.     The Chevron Defendants are entitled to total or partial indemnity from those individuals or entities who are responsible for plaintiffs' injuries or damages, if any, in an amount in direct proportion to their relative culpability.

35.     Plaintiffs lack the capacity to sue.

19

36.     Plaintiffs lack standing to sue.

37.     Plaintiffs' claim is barred because the Chevron Defendants' conduct caused no physical impact to plaintiffs' property.

38.     There is a defect or misjoinder of parties, in that plaintiffs have failed to join indispensable or necessary parties.

39.     Plaintiffs have failed to name the party or parties responsible for the alleged harm.

40.     The claims set forth in the complaints fail, in whole or in part, because of the failure to identify which defendant, if any, proximately caused the alleged harm.

41.     Plaintiffs' claimed injuries were caused in whole or in part by others, whose actions were not controlled by or related to the Chevron Defendants.   Such actions are the superseding, supervening and/or intervening cause of plaintiffs' injuries and therefore plaintiffs may not recover from the Chevron Defendants as a matter of law.

42.     Plaintiffs' claims must be dismissed because they have failed to identify the particular defendant that is responsible for the harms alleged by plaintiffs.

43.     Any gasoline product sold or distributed for resale by the Chevron Defendants was properly designed, formulated, prepared and otherwise not defective in any respect.

44.     To the extent required, the Chevron Defendants provided proper warnings, information, and instructions relating to their products pursuant to generally recognized and prevailing standards in existence at the time.

45.     Plaintiffs have failed to allege that the Chevron Defendants' alleged failure to provide an adequate warning proximately caused their injuries.

46.     Any gasoline product containing MTBE manufactured, sold, or distributed for

resale by the Chevron Defendants was not unreasonably dangerous when made.

47.     The plaintiffs' claims against the Chevron Defendants are barred by the bulk supplier doctrine.

48.     The products at issue were sold to knowledgeable and sophisticated purchasers, and any injury alleged by plaintiffs was caused by such purchasers' failure to observe known standards of care.

49.     Any injury, damage or loss sustained by the plaintiffs was proximately caused by and/or contributed to by their own negligence, carelessness, and/or omissions.

50.     Plaintiffs' claims are barred pursuant to the learned intermediary doctrine.

51.     Plaintiffs' public nuisance claims should be dismissed because there were no acts or omissions by or on behalf of any of the defendants constituting an intentional, unreasonable interference with the plaintiffs' interest in the use and enjoyment of their property.

52.     Plaintiffs' public nuisance claims must be dismissed because plaintiffs have failed to allege "special damages," an absolute prerequisite to the assertion of a public nuisance claim.

53.     The Chevron Defendants owed no duty of care to plaintiffs in connection with the matter alleged in the complaints.

54.     The complaints fail to plead the elements of negligence claims with sufficient clarity, specificity, and particularity.

55.     Plaintiffs' claims are barred to the extent the conduct complained of is protected by the First Amendment to the United States Constitution.

56.     The complaints and each cause of action are barred based on the Chevron Defendants' valid exercise of the right of petition to the federal government, state government(s), and/or their respective deliberative bodies and agencies.

57.     Plaintiffs' claims are barred, in whole or in part, based on plaintiffs' actual or constructive notice of reported spills or releases, if any, from publicly available records.

58.     There is no legal relationship upon which any duty could possibly be owed by the Chevron Defendants to plaintiffs, and therefore, plaintiffs' causes of action fail as a matter of law.

59.     The injuries and damages, if any, alleged by plaintiffs are caused in whole or in part by the presence of compounds other than MTBE (e.g., the BTEX compounds).  Under plaintiffs' own legal theories, the Chevron Defendants are not liable for damages caused by compounds other than MTBE.  In the event liability is assessed against the Chevron Defendants, such liability must be reduced where, and to the extent that, other compounds – about which plaintiffs do not complain – contributed to the alleged injury.

60.     The Chevron Defendants are not liable for contamination where chemical compounds other than MTBE exceed state actions levels or standards, requiring cleanup regardless of the presence of MTBE (particularly, but not exclusively, where MTBE is present below state action levels or standards).

61.     Any injury, damage or loss sustained by the plaintiffs in connection with the subject matter of this action was not reasonably foreseeable.

62.     If it is determined that plaintiffs or anyone on whose behalf plaintiffs are allegedly suing, was injured, as set forth in the complaints, which the Chevron Defendants deny, any award of damages must be reduced in proportion to the percentage of fault attributable to the plaintiffs.

63.     If it is determined that plaintiffs or anyone on whose behalf plaintiffs are allegedly suing, was injured, as set forth in the complaints, which the Chevron Defendants deny,

The Chevron Defendants allege that any award of damages shall be reduced in proportion to the percentage of fault attributable to third parties (including but not limited to persons or entities responsible for gasoline leaks or spills).

64.     The injuries alleged in the complaints, if any, may be reasonably apportioned among the defendants, as each defendant's alleged acts and omissions, including those of the Chevron Defendants, are divisible and distinct.  Therefore, no defendant is jointly and severally liable to plaintiffs for any claim alleged in the complaints.

65.     Plaintiffs' claims are barred to the extent that they have unreasonably failed to mitigate their damages, if any.

66.     To the extent that any party has settled or may settle in the future with plaintiffs, the Chevron Defendants assert their entitlement to an appropriate credit or reduction of any judgment(s) against them.

67.     Plaintiffs' claims for punitive damages violate the provisions of the U.S. Constitution, including but not limited to those provisions requiring due process of law and prohibiting excessive fines.

68.     The Court does not have personal jurisdiction over Chevron Corporation and/or other Chevron Defendants.

69.     Plaintiffs are public entities and/or authorities seeking compensation for damages to natural resources under their jurisdiction or purview.  These public entity/authority plaintiffs have improperly delegated the power to prosecute these cases to private attorneys on a contingent fee basis.  Such delegation is against public policy.

70.     The Chevron Defendants incorporate by reference any affirmative defense, whether general or specific to a specific State, alleged by other defendants in MDL 1358.

71.     The pleading of the defenses described above shall not be construed as an

DMSLIBRARY01\27483292.v1

undertaking by the Chevron Defendants of any burden which would otherwise be the responsibility of plaintiffs.

72.   Plaintiffs lack standing to bring a citizen suit under TSCA.

73.   The information plaintiffs claim that the Chevron Defendants should have disclosed under TSCA is not reportable under the TSCA statute or under EPA's guidance interpreting TSCA.

74.   Plaintiffs have failed to comply with the jurisdictional prerequisites for bringing a claim under TSCA.

75.   Plaintiffs cannot demonstrate that EPA was unaware of information plaintiffs allege should have been disclosed under TSCA when plaintiffs' TSCA claim was brought.

76.   The damages sought by plaintiffs are wholly speculative and conjectural.

77.   Some or all of the injury or damages suffered by plaintiffs were the product of conduct for which the Chevron Defendants cannot have liability to plaintiffs, since it is lawfully undertaken by the Chevron Defendants and their predecessors in the exercise of their rights as owner(s) of real property.

## V.        **DEFENSES APPLICABLE TO PARTICULAR JURISDICTIONS**

For their separate defenses to the complaints in MDL 1358 cases from particular jurisdictions (for which an answer is presently required, and in which the Chevron Defendants have been properly named and served), the Chevron Defendants state as follows:

### CALIFORNIA

1.   The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to California Code of Civil Procedure §§ 337, 337.1, 337.2, 337.15, 338, 340, 340.8, 343 and California Business and Professions Code § 17208..

2.      California Civil Code §§ 1431.1 through 1431.5, commonly known as "Proposition 51," provide that the liability of each defendant for non-economic damages, if any, shall be several only and shall not be joint, and the Chevron Defendants therefore assert that each defendant may be held liable only for the amount of non-economic damages, if any, allocated to that defendant in direct proportion to its percentage of fault, if any.

3.      The Chevron Defendants allege that its liability, if any, for non-economic loss be pro-rated according to the provisions of California Civil Code § 1431.2.

4.      The complaints and each purported cause of action are barred because Plaintiffs and/or their predecessors-in-interest and assignors are guilty of unclean hands.

5.      Plaintiffs' claims fail, in whole or in part, based on the doctrine of unjust enrichment.

6.      As to each cause of action in the complaints, the Chevron Defendants allege that the release of MTBE and/or hazardous substances, if any, and the damages resulting there from, if any, were caused by an act of God.

7.      The complaints and each purported cause of action are barred because they are ambiguous and uncertain.

8.      Plaintiffs did not reasonably rely on any representation, disclaimer, warning, or other act or omission of the Chevron Defendants.

9.      The Chevron Defendants had no duty to warn plaintiff or third parties about the potential dangers, if any, of the product or products manufactured, packaged, labeled, used, applied and/or removed by said third parties.

10.     The Chevron Defendants had no duty to warn because the risks of injury and damages inherent in utilizing the products described in the complaints, if any, were open, obvious or known.

25

11.     Any express or implied warranties alleged by plaintiffs to have been made by the Chevron Defendants, if made at all, were expressly disclaimed and excluded by product labels, pursuant to the laws of the State of California, which provided that the Chevron Defendants made no warranties, express or implied, concerning the products or the use of said products that extended beyond the description on the label, and that all statements made concerning said products applied only when used as directed.

12.     Plaintiffs are sophisticated water purveyors or managers and were, at all relevant times, fully aware of the nature and risks of injury and damages described in the complaints that could arise in the operations or management of a public drinking water supply system.

13.     If there was a less dangerous alternate design, without admitting that there was and without assuming the burden of proof on this issue, the Chevron Defendants did not and could not have known of such an alternate design at the time.

14.     If there was a less dangerous alternate design, without admitting that there was and without assuming the burden of proof on this issue, such an alternate design was not feasible at the time.

15.     Plaintiff and/or others modified, altered, or changed the Chevron Defendants' products or materials referred to in the complaints, if any, so that such changes in any said products or materials proximately caused plaintiffs' injuries, loss and damages, if any.

16.     If the Chevron Defendants provided the products alleged to have been defective, and without admitting that it did so or that any product was defective and without assuming the burden of proof on these issues, the products were misused or abused by others without the knowledge or consent of the Chevron Defendants and in a manner not reasonably foreseeable by the Chevron Defendants prior to their receipt of notice of the circumstances described in the

DMSLIBRARY01\27483292.v1

complaints.  Such misuse or abuse was the sole cause of or a contributing cause to the injuries, losses, and/or damages, if any, suffered by Plaintiffs as alleged in the Complaint, and by reason thereof, Plaintiffs are barred from recovering some or all of any damages suffered

17.     The Chevron Defendants are not liable for any alleged wrongful entry upon land because plaintiffs and/or plaintiffs' predecessors in interest or assignors expressly or impliedly consented to or had knowledge of all such activities or conditions.

18.     The Chevron Defendants allege that to the extent plaintiffs are claiming damages for the cost of remediation due to plaintiffs' alleged compliance with primary or secondary drinking water standard or other regulations enacted by the State of California or any other governmental body, those claims are unconstitutional because they constitute an ex post facto application of a regulation disallowed by Art. 1, sec. 9 of the U.S. Constitution.

19.     The complaints and each purported cause of action are barred, in whole or in part, by federal and state law, including but not limited to, the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2; the Clean Air Act, 42 U.S.C. § 7401, et seq.; the Toxic Substances Control Act, 15 U.S.C. § 2601, et seq; and rules, regulations, and decisions there under.

20.     Chevron Defendants allege that the maximum contaminant level or other drinking water standard, to the extent they form the bases of plaintiffs' claims against the Chevron Defendants were arbitrarily and unreasonably enacted without due process and, therefore, cannot be enforced against Chevron Defendants.

21.     The complaints and each purported cause of action are barred to the extent that federal and/or California state agencies have exonerated the Chevron Defendants and/or determined that any Chevron Defendants' facility did not contribute to the presence of MTBE in

27

the relevant groundwater for which plaintiffs are asserting damages.

22.    The complaints and each purported cause of action are barred to the extent that federal and/or California state agencies have settled with and/or released Chevron Defendants from any further liability respecting the presence of MTBE in the relevant groundwater for which plaintiffs are asserting damages.

23.    The complaints and each purported cause of action are barred because plaintiffs do not own or have abandoned, lost, waived, given up, or otherwise failed to perfect any rights, including but not limited to use rights related to any water that is the subject of the complaints. Plaintiffs' claims are also barred because under California law, the water that is the subject of the complaints is the property of the State of California, not of plaintiffs.

24.    The complaints and each purported cause of action are barred to the extent that such claims have been satisfied by payments or provision of alternate water supplies by the Chevron Defendants, defendants, or third parties.

25.    The complaints and each purported cause of action are barred to the extent that plaintiffs have assigned rights and claims for certain damages and other relief, if any, to the Chevron Defendants, other defendants, or third parties.

26.    If plaintiffs sustained any injury under the circumstances alleged in the complaints or in any other respect, their recovery against the Chevron Defendants, if any, is barred by the alleged conduct and conditions resulted from a necessity.

27.    Plaintiffs' claims for trespass are barred because the Chevron Defendants are immune to liability for plaintiffs' damages, if any, caused by earth movement.

28.     Plaintiffs' claims are barred, in whole or in part, as the result of their own knowing or negligent conduct that caused or contributed to MTBE and/or TBA contamination

giving rise to these claims.

29.     Plaintiffs' claims for violations of California Proposition 65 are barred because MTBE and/or TBA are not listed on any published list of chemicals referenced in California Proposition 65.

30.     The complaints fail to plead the elements of fraud claims with sufficient clarity, specificity, and particularity.

31.     Plaintiffs' claims for violations of California Bus. & Prof. Code § 17200 *et seq.* (unfair competition) are barred by the provisions of California Proposition 64.

32.     Plaintiffs' efforts to impose liability on the Chevron Defendants without proof of causation violate the Due Process and other clauses of the federal and state constitutions.

**ILLINOIS**

1.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, 735 ILCS 5/13-205.

2.     Plaintiffs' recovery is barred, in whole or in part, due to their contributory fault, pursuant to 735 ILCS 5/2-1116.

3.     Plaintiffs' efforts to impose liability on the Chevron Defendants without proof of causation violate the Due Process and other clauses of the federal and state constitutions.

**INDIANA**

1.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, Ind. Code. Ann. § 34-20-3-1.

2.     Plaintiffs' product liability design defect claims are barred, in whole or in part,

because no alleged act or omission by the Chevron Defendants gave rise to design defect liability pursuant to Indiana's Product Liability Act, as set forth in Ind. Code. Ann. § 34-20-2-1.

3.      Plaintiffs' product liability claims fail because the Chevron Defendants had no duty to warn plaintiffs, as plaintiffs knew or should have known of the alleged danger. Ind. Code. Ann. § 34-20-6-1.

4.      Plaintiffs' product liability claims fail because the Chevron Defendants manufactured their products in conformity with generally recognized state of the art.  Ind. Code. Ann. § 34-20-6-1.

5.      Any duty to warn, if one existed at all, was discharged pursuant to Ind. Code. Ann. § 34-20-6-1 and § 34-20-6-3 because the alleged defects, if any, were open and obvious to plaintiffs.

6.      Plaintiffs voluntarily and unreasonably assumed the risk of injury, thereby relieving the Chevron Defendants of liability.  Ind. Code. Ann.§ 34-20-6-1 and § 34-20-6-3.

7.      Any alleged design defect was not the proximate cause of the plaintiffs' injuries or harm, pursuant to Ind. Code. Ann. § 34-20-6-1 (West 2001).

8.      Plaintiffs' alleged injuries, if any, resulted from the misuse of the product by the plaintiffs or other persons, and such misuse was not reasonably expected by the Chevron Defendants at the time that they sold or otherwise conveyed the product to the other party.  Ind. Code. Ann. § 34-20-6-4.

9.      Plaintiffs' claims for public nuisance should be dismissed because at no time did any act or omission attributable to the Chevron Defendants or their products interfere with the plaintiffs' comfortable enjoyment of life or property.  Ind. Code. Ann. § 34-19-1-1.

10.     Plaintiffs have failed to state a cause of action for public nuisance because the

DMSLIBRARY01\27483292.v1

Chevron Defendants' alleged conduct is not unreasonable upon comparison of its alleged conduct with plaintiffs' competing interests. Ind. Code. Ann. § 34-19-1-1.

11.     Plaintiffs' recovery is barred by their contributory fault, which is greater than the fault of all persons whose fault may have proximately contributed to plaintiffs' damages. Ind. Code. Ann. § 34-51-2-6.

12.     Plaintiffs' claims under the Indiana Environmental Legal Action statute fail because the Chevron Defendants did not "cause or contribute to the release" of gasoline.

13.     Plaintiffs' efforts to impose liability on the Chevron Defendants without proof of causation violate the Due Process and other clauses of the federal and state constitutions.

**IOWA**

1.     The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, Iowa Code Ann. §§ 614.1(2) and 614.1(4).

2.     Plaintiffs' recovery is barred by their contributory fault, which is greater than the fault of all persons whose fault may have proximately contributed to plaintiffs' damages.  Iowa Stat. Ann. § 668.3.

3.     Recovery is barred or must be reduced, in whole or in part, based on the doctrine of comparative negligence.

4.     The Chevron Defendants are not jointly and severally liable because they bear less than fifty percent of the total fault of all parties.  Iowa Stat. Ann. § 668.4.

5.     Plaintiffs assumed the risk of any alleged injury.

6.     The Chevron Defendants' products "conformed to the state of the art in existence at the time."  Iowa Stat. Ann. § 668.12(1).

7.      The Chevron Defendants cannot be liable for failure to warn because the alleged "risks and risk-avoidance measures…should be obvious to, or generally known by, foreseeable product users."  Iowa Stat. Ann. § 668.12(3).

8.      The Chevron Defendants cannot be liable because "a product bearing or accompanied by a reasonable and visible warning or instruction that is reasonably safe for use if the warning or instruction is followed shall not be deemed defective or unreasonably dangerous on the basis of failure to warn or instruct."  Iowa Stat. Ann. § 668.12(4).

9.      Plaintiffs' efforts to impose liability on the Chevron Defendants without proof of causation violate the Due Process and other clauses of the federal and state constitutions.

**MASSACHUSETTS**

1.      The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to Mass. Gen. Laws Ann. Ch. 260 § 2A.

2.      Plaintiff's claims are barred because its negligence is greater than the alleged negligence of the Chevron Defendants.  Mass. Gen. Laws Ann. Ch. 231 § 85.

3.      The Chevron Defendants are not liable for damages because any contamination resulted from the acts or omissions of third parties and the Chevron Defendants exercised due care with regard to its products and took reasonable precautions against foreseeable acts or omissions of third parties and the consequences that could foreseeably result therefrom.  Mass. Gen. Laws Ann. Ch. 21E § 5(c)(3).

4.      Plaintiff is not entitled to injunctive relief because it failed to provide written notice to the Massachusetts Attorney General and the Chevron Defendants as required by Mass. Gen. Laws Ann. Ch. 214 § 7A.

5.      Plaintiff's efforts to impose liability on the Chevron Defendants without proof of

DMSLIBRARY01\27483292.v1

causation violate the Due Process and other clauses of the Massachusetts constitution and federal constitution.

**MISSOURI**

1.      The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to  Mo. Ann. Stat. §§ 516.100, 516.120 and 516.010 (West).

2.      Plaintiffs' recovery is barred or must be reduced, in whole or in part, based on the doctrine of comparative fault.  Mo. Ann. Stat. § 537.765 (West).

3.      Any duty to warn, if one existed at all, was discharged pursuant to Mo. Ann. Stat.
§ 537.760 (West), because the alleged defects, if any, were open and obvious to plaintiffs.

4.      Plaintiffs' product liability claims fail because the Chevron Defendants had no duty to warn plaintiffs, as plaintiffs knew or should have known of the alleged danger.  Mo. Ann. Stat. § 537.760 (West).

5.      Plaintiffs' product liability claims fail because the Chevron Defendants' were in conformity with generally recognized state of the art.  Mo. Ann. Stat. §§ 537.764 and 537.760 (West).

6.      Plaintiffs' product liability claims fail because the Chevron Defendants products, at the time they were sold, were not in a defective condition or unreasonably dangerous when put to a reasonably anticipated use.  Mo. Ann. Stat. § 537.760 (West).

7.      Any alleged defective condition, of the Chevron Defendants' products at the time they were sold, was not the proximate cause of plaintiffs' injuries or harm.  Mo. Ann. Stat. § 537.760 (West).

8.      Plaintiffs' alleged injuries, if any, resulted from use of the product that was not

33

reasonably anticipated by the Chevron Defendants at the time that they sold or otherwise conveyed the product.  Mo. Ann. Stat. § 537.760 (West).

9.     Plaintiffs' recovery of punitive damages arising out of their alleged injury is limited under Mo. Ann. Stat. § 510.265 (West).

**NEW JERSEY**

1.     Plaintiffs' claims against the Chevron Defendants are barred by the Natural Resource Damages Settlement Agreement between the New Jersey Department of Environmental Protection ("NJDEP") and certain Chevron Defendants dated November 16, 2005.

2.     Plaintiffs have released the Chevron Defendants from their claims for natural resource damages and/or other damages, costs and relief sought in this action.

3.     Plaintiffs' claims against the Chevron Defendants are barred by the New Jersey entire controversy doctrine, doctrine of *res judicata* and/or similar doctrines.  Without limiting the foregoing, Plaintiffs' claims are barred to the extent that Plaintiff or its affiliates or subdivisions have brought or are bringing claims against the Chevron Defendants or others for the same or similar conduct, the same or similar transactions, the same or similar damages, or the same or similar relief.

4.     Plaintiffs' claims against the Chevron Defendants are barred by the applicable New Jersey statutes of limitation, including but not limited to, N.J. Stat. Ann. § 2A:14-2.

5.     Plaintiffs' claims under the New Jersey Compensation and Control Act ("Spill Act") are barred by one or more of the statutory defenses to liability provided in the Spill Act.

6.     The Chevron Defendants did not "discharge" any hazardous substance within the meaning of the Spill Act.

7.     The Chevron Defendants are not "in any way responsible" for any discharges of

34

hazardous substance within the meaning of the Spill Act.

8.     The costs and damages sought by Plaintiffs do not constitute "cleanup and removal costs" under the Spill Act, or they are not otherwise recoverable under the Spill Act.

9.     Plaintiffs' claim for treble damages under the Spill Act is barred because Plaintiffs have failed to comply with the requirements set forth in the Spill Act.

10.     Plaintiffs' claims are barred by the doctrine of primary jurisdiction insofar as the NJDEP is responsible for directing and allocating responsibility for investigation and remediation of the environmental condition alleged in the Complaint.

11.     Plaintiffs' claims are barred because the Chevron Defendants have complied with, and satisfied, all applicable laws, regulations, rules, orders, directives and/or other requirements of the NJDEP and/or other state or federal agencies regarding the environmental condition alleged in the Complaint.

12.     Plaintiffs' claims under the Spill Act are barred to the extent Plaintiffs seek relief for conduct occurring or damages incurred prior to the effective date of the Spill Act.

13.     Plaintiffs' claims are barred, in whole or in part, by plaintiffs' failure to comply with the prerequisites to liability under the Spill Act, including without limitation plaintiffs' incurring of costs not authorized by the Spill Act and plaintiffs' failure to direct clean up and remediation operations in accordance with the National Contingency Plan to the greatest extent possible.

14.     Plaintiffs were contributorily and comparatively negligent, and therefore their claims are barred or diminished by such negligence under the Comparative Negligence Act and New Jersey common law.

15.     Plaintiffs' claims for natural resource damages are barred because the State's

method of assessing natural resource damages was not adopted in a manner consistent with the Administrative Procedures Act, N.J.S.A. § 52:14B-2(e).

16.    Plaintiffs' claims under the Spill Act are not ripe, since clean up and remediation have not been completed.

17.    Plaintiffs' claims under the Spill Act are barred, in whole or in part, because the claims asserted are preempted by federal law, including, without limitation the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq.

18.    Any injury or damages suffered by Plaintiffs have been increased by Plaintiffs' failure to mitigate their damages, in that (1) the policies and activities of the State of New Jersey and its agencies during the period of time for which plaintiffs seek damages have caused damage to natural resources greater than that would otherwise have occurred; and (2) the State and its agencies have failed to take reasonable measures available to them to reduce damages.

19.    The Chevron Defendants' conduct did not meet the minimum requirements of culpability with respect to each material element of the alleged offenses of civil conspiracy, public nuisance, and negligence, according to the applicable provision of N.J. Stat. Ann. § 2C:2-2, and, therefore, plaintiffs' claims on these counts should be dismissed.

20.    Plaintiffs' claims against the Chevron Defendants are barred, in whole or in part, by the prior settlement with certain MDL plaintiffs in New Jersey under the entire controversy doctrine, the doctrine of res judicata, and the defenses of recoupment, and accord and satisfaction.

21.    Plaintiffs have failed to join parties needed for the just adjudication of the Plaintiffs' claims, in whose absence complete relief cannot be afforded the existing parties

DMSLIBRARY01\27483292.v1

pursuant to *N.J.Ct.R.* 4:28-1.

22.     Plaintiffs' injuries and damages, if any, were directly and proximately caused by the intervening, superseding and/or fault of other persons and entities for which the Chevron Defendants bear no responsibility.  The Chevron Defendants are entitled to apportionment of the relative degrees of fault to such other persons or entities, whether they are parties herein or not, in accordance with New Jersey law and New Jersey Joint Tortfeasors Contribution Law, N.J. Stat. Ann. 2A-53A-1 et seq.

23.     The Chevron Defendants deny that Plaintiffs are entitled to punitive damages in this case.  The Chevron Defendants did not have any intent to injure plaintiffs.  The Chevron Defendants incorporate and assert all defenses regarding the imposition of punitive damages created by N.J. Stat. Ann. 2A:15-5.9 et seq.

24.     The imposition of punitive damages in this action would violate the Chevron Defendants' rights under the due process clause, equal protection clause, excessive fines clause, and other clauses of the Constitution of the United States and the Constitution and laws of the State of New Jersey.

25.     The legal standards regarding punitive damages are inadequate, vague and ambiguous, further violating the due process clause of the United States Constitution and the Constitution of the State of New Jersey.

26.     Plaintiffs' claims for relief associated with the rights, interests or properties of private parties, including claims for treatment of private wells or alleged damages to private property, are barred to the extent plaintiff lacks standing or the legal authority to assert such claims.

### PUERTO RICO

1.     The complaint and each purported cause of action are barred by the applicable

provisions of the pertinent statutes of limitations, including but not limited to Article 1868 of the Puerto Rico Civil Code.

2.    Plaintiffs' common law claims are barred, in whole or in part, by the Public Policy Environmental Act.

3.    Plaintiffs' public nuisance claim is barred because no act or omission by the Chevron Defendants has caused, or will cause, any alleged injury recognized by P.R. Laws Ann. tit. 32 § 2761.

4.    Plaintiffs' public nuisance claim is barred because the alleged activity does not constitute an "ultra-hazardous activity" or "illegal hazardous activity" under Puerto Rico law.

5.    Plaintiffs' public nuisance claim fails because they have not alleged, and cannot show, any "special damages" under Puerto Rico law.

6.    Plaintiffs' claim for future costs is barred by P.R. Laws Ann. tit. 32 § 2761.

7.    Plaintiffs' claim for trespass is barred because it is not a recognized cause of action under the Puerto Rico Civil Code.

8.    Plaintiffs' negligence claim fails because they have to plead, and they cannot establish, the elements of a negligence claim under Art. 1802 of the Puerto Rico Civil Code.

9.    Plaintiffs lack standing to bring a citizen suit under Puerto Rico Public Policy Environmental Act ("PPEA"), P.R. Laws Ann. tit. 12 § 8001 et seq.

10.    The  Chevron Puerto Rico Defendants, Chevron Corporation and Chevron U.S.A. Inc. are not liable under the PPEA because they have followed and complied with all applicable dispositions and regulations promulgated under the PPEA, if any.

11.    The Chevron Puerto Rico Defendants, Chevron Corporation and Chevron U.S.A. Inc. are not liable under the PPEA because their actions have not, in any manner, contributed or created any damage or degradation to any of the Commonwealth's natural resources.

38

12.     The Chevron Puerto Rico Defendants, Chevron Corporation and Chevron U.S.A. Inc. are not liable under the PPEA because the alleged releases, if any, were caused by an act or omission of a third party, and the Chevron Defendants exercised due care and took precautions against foreseeable acts of a third party.

13.     Plaintiffs lack standing to bring a suit for alleged violations of the Water Pollution Control Act ("WPCA"), P.R. Laws Ann. tit. 24 § 591 et seq.

14.     Plaintiffs cannot recover under the WPCA because MTBE is not a "pollutant" within the meaning of the WPCA, P.R. Laws Ann. tit. 24 § 591(h).

15.     The Chevron Puerto Rico Defendants, Chevron Corporation and Chevron U.S.A. Inc. are not liable under the WPCA because the prohibitions, as well as the definitions contained in the WPCA, are unconstitutionally vague.

16.     Plaintiffs' claims are barred because MTBE is not considered a "pollutant" by the Commonwealth's Water Quality Standards Regulations, Department of State Regulation No. 6616.

17.     The Chevron Puerto Rico Defendants, Chevron Corporation and Chevron U.S.A. Inc. are not liable under the Water Quality Standards Regulations because MTBE is not regulated or limited under the Water Quality Standards Regulations.

18.     The Chevron Puerto Rico Defendants, Chevron Corporation and Chevron U.S.A. Inc. are not liable for alleged violations of the Water Quality Standards Regulations because the releases, if any, were caused by an act of God.

19.     The Chevron Puerto Rico Defendants, Chevron Corporation and Chevron U.S.A. Inc. are not liable under the Water Quality Standards Regulations because the releases, if any, were caused by an act or omission of a third party and the Chevron Puerto Rico Defendants, Chevron Corporation and Chevron U.S.A. Inc. exercised due care and took precautions against

DMSLIBRARY01\27483292.v1

foreseeable acts of such third party.

20.     The Chevron Puerto Rico Defendants, Chevron Corporation and Chevron U.S.A. Inc. are not liable for alleged violations of the Underground Storage Tank Regulations because MTBE is not considered a "Regulated Substance" under Department of State Regulation No. 4362 or other applicable regulations.

21.     The Chevron Puerto Rico Defendants, Chevron Corporation and Chevron U.S.A. Inc. are not liable for alleged violations of the Underground Storage Tank Regulations because the alleged releases, if any, were caused by an act of God.

22.     The  Chevron Puerto Rico Defendants, Chevron Corporation and Chevron U.S.A. Inc. complied with all applicable law and regulations in Puerto Rico governing MTBE, including but not limited to all applicable laws and regulations regarding investigation, reporting and/or remediation of MTBE in the environment.

23.     Plaintiffs' claim for exemplary and/or punitive damages is barred because such relief is not available under Puerto Rico law.

24.     Plaintiffs' claim for "restitution for unjust enrichment" and/or "disgorgement of profits" is barred because such relief is not available in these cases under Puerto Rico law.

25.      Texaco International Trading Inc. was dissolved properly under Delaware law more than three years before the Commonwealth of Puerto Rico and the Commonwealth of Puerto Rico, by and through the Environmental Quality Board, filed their complaint in 14-CV-1014.  As such, Texaco International Trader Inc. lacks the capacity to be sued in 14-CV-1014.

26.     ChevronTexaco Global Trading was never a corporation and it ceased to exist on June 30, 2004.  ChevronTexaco Global Trading lacks the capacity to be sued in 14-CV-1014.

DMSLIBRARY01\27483292.v1

**VERMONT**

1.      The complaints and each purported cause of action are barred by the applicable provisions of the pertinent statutes of limitations, including but not limited to, 12 Vermont Stat. Ann. §§ 511, 512(4), 512(5).

2.      Plaintiffs' recovery is barred by their contributory fault, which is greater than the causal total negligence of the defendant or defendants.  12 Vermont Stat. Ann. § 1036.

3.      Recovery is barred or must be reduced, in whole or in part, based on the doctrine of comparative negligence.  12 Vermont Stat. Ann. § 1036.

4.      Plaintiffs' efforts to impose liability on the Chevron Defendants without proof of causation violate the Due Process and other clauses of the federal and state constitutions.

**FEDERAL CERCLA AND RCRA CLAIMS**

1.      Plaintiffs have failed to state a claim for relief against the Chevron Defendants under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601, et seq. ("CERCLA").

2.      The Chevron Defendants are not liable parties under CERCLA as defined in 42 U.S.C. § 9607(a)(1)-(4).

3.      Plaintiffs' claims under CERCLA are barred by 42 U.S.C. § 9607(b)(3), because the alleged releases or threatened releases of hazardous substances, and alleged damages resulting therefrom, if any, were caused solely by acts or omissions of third parties.

4.      Plaintiffs' claims under CERCLA are barred and/or untimely under the applicable provisions of the pertinent statute of limitations, including, but not limited to, those set forth in 42 U.S.C. § 9613.

5.      To the extent that any or all of the defendants are found liable under CERCLA,

41

joint and several liability is inappropriate as to the Chevron Defendants because the damages are divisible, there are distinct harms, or there is a reasonable basis for apportionment of the alleged harms suffered.

6.      Plaintiffs' claims under CERCLA are barred because petroleum products, including gasoline containing MTBE, are excluded from the definition of "hazardous substances" under CERCLA.

7.      Plaintiffs' claims under CERCLA are barred because any past or future costs, if any, incurred by Plaintiffs in responding to an alleged release or threatened release of hazardous substances are inconsistent with the National Contingency Plan or otherwise not recoverable under CERCLA.

8.      Plaintiffs' claims under CERCLA are subject to either the exclusive jurisdiction or the primary jurisdiction of the United States Environmental Protection Agency ("USEPA").

9.      Plaintiffs are unable to recover their alleged natural resource damages under CERCLA.

10.     Plaintiffs' claims under CERCLA are barred because Plaintiffs have failed to satisfy each and every condition precedent necessary to recover for past and/or future response costs under CERCLA.

11.     The costs and damages allegedly incurred or to be incurred by Plaintiffs, if any, are unreasonable, duplicative, not cost effective and, therefore, are not recoverable under CERCLA.

12.     Plaintiffs' claims under CERCLA for natural resource damages are barred, in whole or in part, because the alleged damages constitute irreversible and irretrievable commitments of natural resources.

DMSLIBRARY01\27483292.v1

13.     Plaintiffs' claims under CERCLA are barred by 42 U.S.C. § 9607(b)(1)-(2) because the alleged releases or threatened releases of hazardous substances, and alleged damages resulting therefrom, if any, were caused solely by acts of God and/or acts of war.

14.     Without admitting any liability, if it is determined that the Chevron Defendants engaged in any of the activities alleged by Plaintiffs, such activities on the part of the Chevron Defendants were *de minimis.*

15.     Plaintiffs' CERCLA claim is barred because Plaintiffs have failed to comply with the jurisdictional prerequisites for bringing a claim under CERCLA.

16.     The Chevron Defendants are not liable under CERCLA because Plaintiffs' claims are barred by the doctrines of estoppel, unclean hands, and/or laches.

17.     Plaintiffs' CERCLA claims are barred, in whole or in part, because the sites at issue are not listed on the NPL.

18.     Plaintiffs have failed to state a claim for relief against the Chevron Defendants under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901, et seq. ("RCRA").

19.     Plaintiffs' claims under RCRA are barred to the extent plaintiffs seek relief for conduct occurring or damages incurred prior to the effective date of RCRA.

20.     Plaintiffs' claims under RCRA are barred because MTBE and gasoline containing MTBE are not "solid wastes" and/or "hazardous wastes" under RCRA.

21.     Plaintiffs' RCRA claim fails because Plaintiffs failed to allege, and they cannot show, that the Chevron Defendants have violated RCRA Subchapter III, if applicable.

22.     Plaintiffs' RCRA claim is barred because Plaintiffs have failed to comply with the jurisdictional prerequisites for bringing a claim under RCRA.

DMSLIBRARY01\27483292.v1

Respectfully submitted,


s/ *Jeremiah J. Anderson*
Robert E. Meadows
Jeremiah J. Anderson
James J. Maher
KING & SPALDING LLP
1100 Louisiana, Suite 4000
Houston, Texas 77002
Telephone: (713) 751-3200
Facsimile: (713) 751-3290

Charles C.  Correll, Jr.
King & Spalding LLP
101 Second Street, Suite 2300
San Francisco, California 94015
Telephone:  (415) 318-1200
Facsimile:  (415) 318-1300

**Attorneys for the Chevron Defendants**


## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2015 a true, correct, and exact copy of the foregoing document was served on all counsel via LexisNexis File & Serve.


s/ *Jeremiah J. Anderson*
Jeremiah J. Anderson

DMSLIBRARY01\27483292.v1